# EXHIBIT H
## (Summary Judgment Motion)

Christopher F. Graham (CG-2455)
McKENNA LONG & ALDRIDGE LLP
230 Park Avenue
New York, NY 10169
Tel.: (212) 905-8300
Fax: (212) 922-1819
E-mail: cgraham@mckennalong.com

*Attorneys for Plaintiff MM Arizona Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MM Arizona Holdings LLC, | Case No.: **08 Civ. 5353 (CM) (AJP)** |
| Plaintiff, | |
| v. | |
| Nicholas W. Bonanno, Jr., et al., | |
| Defendants. | |

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

McKENNA LONG & ALDRIDGE LLP
230 Park Avenue, Suite 1700
New York, NY 10169
Tel.: (212) 905-8300
Fax: (212) 922-1819

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ....................................................................................................................... 8

    A.    Summary Judgment Standard ................................................................................ 8

    B.    No Genuine Issue of Material Fact Exists and
           MMAZ is Entitled to Judgment as a Matter of Law ....................................... 9

    C.    Defendants' Affirmative Defenses Fail as a Matter of
           Law and Fail to Raise Any Genuine Issue of Material Fact .......................... 11

           1.    Defendants Have Failed to Plead Fraud
                 with the Particularity Required by Rule 9(b) ................................... 13

           2.    Defendants Cannot Establish the Elements of Fraud ....................... 14

           3.    Defendants Waived Their Right to Assert They Were
                 Fraudulently Induced into Executing the Forbearance Agreement. ........ 16

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

Acito v. Imcera Group. Inc.,
    47 F.3d 47 (2d Cir. 1995) ................................................................. 13, 14

Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,
    57 F.3d 146 (2d. Cir. 1995) ..................................................................... 15

Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey,
    85 F.3d 970 (2d Cir. 1996) ....................................................................... 16

Export - Import Bank of the United States v. Agricola Del Mar BCS, S.A. de C.V.,
    536 F. Supp. 2d 345, (2008) ..................................................................... 12

Lakhaney v. Anzelone,
    788 F. Supp. 160 (S.D.N.Y. 1992) ......................................................... 9, 10

Lumbermens Mut. Cas. Ins. Co. v. Darel Group U.S.A. Inc.,
    253 F. Supp. 2d 578 (S.D.N.Y. 2003) ................................................. 8-9, 15, 16

Manufacturers Hanover Trust Co. v. Yanakas,
    7 F.3d 310 (2d Cir. 1993) ......................................................................... 17

Pampillonia v. RJR Nabisco, Inc.,
    138 F.3d 459 (2d Cir. 1998) ..................................................................... 12

Turtur v. Rothschild Registry Int'l, Inc.,
    26 F.3d 304 (2d Cir. 1994) ......................................................................... 9

Valley Nat'l Bank v. Greenwich Ins. Co.,
    254 F. Supp. 2d 448 (S.D.N.Y. 2003) ..................................................... 18

**STATE CASES**

Brookman & Brookman, P.C. v. Schiavoni,
    245 A.D.2d 93, 665 N.Y.S.2d 419 (N.Y. App. Div. 1st Dep't 1997) ......................... 9

Citibank, N.A. v. Plapinger,
    66 N.Y.2d 90, 485 N.E.2d 974 (1985) ........................................... 17, 18, 19

Gateway State Bank v. Shangri-La Private Club for Women, Inc.,
    113 A.D.2d 791, 493 N.Y.S.2d 226 (N.Y. App. Div. 2d Dep't 1985), aff'd, 67 N.Y.2d
    627, 490 N.E.2d 546, 499 N.Y.S.2d 679 ......................................... 9, 10

Katz v. Katz,
    55 A.D.3d 680, 867 N.Y.S.2d 100 (N.Y. App. Div. 2d Dep't 2008) ......................................16

Rong Rong Jiang v. Tan,
    11 A.D.3d 373, 783 N.Y.S.2d 557 (N.Y. App. Div. 1st Dep't 2004) ......................................19

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 9 ...................................................................................................12, 13, 14, 19

Fed. R. Civ. P. 36 ...........................................................................................................5-6

**STATE STATUTES**

N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2007) .........................................................9

N.Y. U.C.C. §3-104 (McKinney 2001) .......................................................................9, 10

Plaintiff MM Arizona Holdings LLC ("MMAZ") files this Brief in support of its Motion for Summary Judgment.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its Motion for Summary Judgment, MMAZ requests that this Court grant judgment in its favor and against Defendants Nicholas W. Bonanno, Jr., and Rita Bonanno, ("Bonanno Defendants") and Tamera R. Jenkins[1] (together with the Bonanno Defendants, "Defendants") on the first, second, and fourth causes of action alleged in the Complaint and on Defendants' affirmative defenses. [2]

This is a simple suit on a guaranty. Lehman Brothers Holdings Inc., d/b/a Lehman Capital, a division of Lehman Brothers Holdings Inc. ("Lehman" or "Lender") made a loan to Middle Mountain 156, LLC ("Borrower"). The loan was guaranteed by Defendants. Lehman assigned the loan to MMAZ. MMAZ seeks payment from Defendants due to payment and other defaults by Borrower and Defendants under the loan and guaranty. Defendants asserted affirmative defenses and counterclaims against MMAZ based on allegations of fraudulent inducement and other typical lender liability theories. However, all of Defendants' affirmative defenses were affirmatively waived and released by Defendants' entry into a heavily negotiated forbearance agreement between sophisticated parties represented by counsel. All of Defendants' defenses are therefore without merit, and MMAZ is entitled to summary judgment on its first, second and fourth Causes of Action.

---

[1]    Ms. Jenkins is now deceased. She and her estate, as appropriate, are referred to herein as "Ms. Jenkins" or "Jenkins Executor."

[2]    The third cause of action is directed at defendant, Allen Jenkins, who filed for personal bankruptcy on September 19, 2008. In re Allen D. Jenkins, Chapter 11 Case No. 2:08-bk-12618-SSC (Bankr. D. Az.). This Court has stayed this action against Allen Jenkins. (Docket No. 35), Therefore, MMAZ does not seek judgment on the third cause of action alleged in the Complaint, which relates to Mr. Jenkins.

## STATEMENT OF FACTS

On or about July 13, 2006, Borrower entered into a loan transaction (the "Loan"), in the original principal sum of Forty-Four Million and 00/100 Dollars ($44,000,000.00), with Lehman, as lender, as evidenced by that certain Loan Agreement dated as of July 13, 2006 (the "Loan Agreement").[3]    Affidavit of Bryan Collins in Support of MMAZ's Motion for Summary Judgment dated December 22, 2008 ("Collins Aff.") at ¶ 4. The Loan is further evidenced by that certain Promissory Note dated July 13, 2006 executed and delivered by Borrower in favor of Lehman (the "Note").[4]    Id. at ¶ 5.    Pursuant to, among other documents, that certain Allonge dated May 19, 2008 (the "Allonge")[5] and that certain Assignment of Loan Documents dated May 19, 2008 (the "Assignment"),[6] Lehman assigned to MMAZ all of its right, title, and interest in the Loan, Note, and Guaranty, among other documents evidencing the Loan. Id. at ¶ 7. MMAZ is the current holder and owner of the Loan. Id.

Also on or about July 13, 2006, each of the Defendants executed and delivered that certain Guarantor Full Repayment Guaranty effective as of July 13, 2006 in favor of Lehman (the "Guaranty").[7] Id. at ¶ 6.  Pursuant to the Guaranty, Defendants agreed, jointly and severally and absolutely and unconditionally, as primary obligors and not merely as sureties, to guarantee to Lehman the prompt and unconditional payment of the obligations of Borrower to Lehman under the Loan and Note. *Guaranty*, ¶¶ 1(a), 2(c) & 3(a).  The Guaranty is a guaranty of payment and not of collection. Id. at ¶ 18. Defendants' obligations under the Guaranty cannot in

---

[3]    A copy of the Loan Agreement is attached to the Collins Aff. as Exhibit A.

[4]    A copy of the Note is attached to the Collins Aff. as Exhibit B.

[5]    A copy of the Allonge is attached to the Collins Aff. as Exhibit D.

[6]    A copy of the Allonge is attached to the Collins Aff. as Exhibit E.

[7]    A copy of the Guaranty is attached to the Collins Aff. as Exhibit C.

any way be affected, diminished, released, terminated, discharged, or impaired by any decision of Lehman to exercise or exhaust, or not to exercise or exhaust, any right or remedy against Borrower or any other collateral or security available to Lehman. Id., ¶ 2(c)(ii) & 2(c)(iii). In the Guaranty, Defendants further waived any and all substantive and procedural defenses to enforcement of the Guaranty, id. at ¶¶ 7(a)-(j), other than prior payment of the Loan, id. at ¶ 7(e). Defendants also agreed to pay all expenses of Lehman, including reasonable attorneys fees, in collecting on any and all obligations under the Guaranty, id. at ¶ 1(b), and waived the requirement that Lender make presentment and demand for payment under the Guaranty, id. at ¶ 7(b). Defendants further agreed in the Guaranty that the Guaranty is governed by New York law and that jurisdiction and venue is proper in this Court. Id. at ¶ 14(a) & 14(b).

The Loan matured on August 1, 2007 (the "Maturity Date"). On the Maturity Date, the Loan became due and payable in full together with interest, fees, and charges. *Loan Agreement*, at 16, ¶ 2.2.4. Borrower failed and refused to make payment in full or otherwise satisfy its obligations to Lehman on or prior to the Maturity Date or at any time thereafter (the "Maturity Default"). *Collins Aff.*, at ¶ 8. By way of letter dated August 3, 2007, Lehman notified Borrower and Defendants, among others, that Borrower was in default under the Loan due to the Maturity Default (the "August 2007 Demand Letter").[8] In the August 2007 Demand Letter, Lehman also made demand on Borrower for immediate payment in full of the entire outstanding balance of the Loan, including principal, interest, and all other amounts due and payable to the full extent provided under the Loan. In response to the August 2007 Demand Letter, neither Borrower nor Defendants made any payment on the Loan. Id. at ¶ 9. By way of letter dated October 18, 2007, Lehman made demand on Defendants for immediate payment in full of all of the Defendants'

---

[8]     A copy of the August 2007 Demand Letter is attached to the Collins Aff. as Exhibit F.

obligations under the Guaranty, to the full extent provided under the Loan Documents and the Guaranty (the "October 2007 Demand Letter").[9]  In response to the October 2007 Demand Letter, Defendants failed and refused to make any payment on their obligations to Lehman. Id. at ¶ 10.

Prior and subsequent to the Maturity Default, Lehman, Borrower, and Defendants engaged in negotiations regarding a possible payment or restructuring of the Loan. Id. at ¶ 11. On or about September 6, 2007, Lehman, Borrower, and Defendants, among other parties, entered into a pre-negotiation agreement (the "Pre-Negotiation Agreement").[10]  The Pre-Negotiation Agreement provides, among other things, that Lehman, Borrower, and Defendants agree that no compromise, agreement, or understanding with respect to the Loan, and no rights, claims, obligations or liabilities of any kind, shall arise in favor of any party to the Pre-Negotiation Agreement except to the extent set out in a written agreement. *Pre-Negotiation Agreement* at 2, ¶ 2.

On or about April 16, 2008, Lehman entered into a Forbearance Agreement (the "Forbearance Agreement")[11] with Borrower and Defendants, among others.  The Forbearance Agreement was the result of months of extensive negotiations between the parties, by and through their respective counsel, in accordance with the Pre-Negotiation Agreement.  None of Lehman, its servicer Trimont Real Estate Advisors, Inc. ("Trimont"), or any of their respective employees, officers, or agents (other than counsel) had contact with Borrower or Defendants regarding the negotiation of or entry into the Forbearance Agreement. *Collins Aff.,* at ¶ 12.

---

[9]    A copy of the October 2007 Demand Letter is attached to the Collins Aff. as Exhibit G.

[10]    A copy of the Pre-Negotiation Agreement is attached to the Collins Aff. as Exhibit H.

[11]    A copy of the Forbearance Agreement is attached to the Collins Aff. as Exhibit I.

Borrower and Defendants were represented by counsel during the entire course of negotiations regarding the Forbearance Agreement. Id. Defendants each admit that they signed the Forbearance Agreement, that they never met personally with a Lehman employee while the Forbearance Agreement was being negotiated, that all oral and written negotiations between each of them and Lehman regarding the Forbearance Agreement were conducted through and between their counsel and Lehman's counsel, and that they were represented by counsel in connection with negotiation of the Forbearance Agreement, including their counsel's review of the Forbearance Agreement they signed. See *Defendant Nicholas W. Bonanno, Jr.'s Response to MM Arizona Holdings LLC's First Request for Admissions* (the "N. Bonanno Admissions"), attached to the Declaration of Christopher F. Graham dated December 23, 2008 ("Graham Decl.") as Exhibit 1, Response Nos. 19, 22, 31 & 32; *Defendant Rita Bonanno's Response to MM Arizona Holdings LLC's First Request for Admissions* (the "R. Bonanno Admissions), attached to the Graham Decl. as Exhibit 2, Response Nos. 19, 22, 31 & 32;[12] *MM Arizona Holdings First Request for Admissions to Allen D. Jenkins, as Personal Representative of the Estate of Tamera R. Jenkins* (the "T. Jenkins Request for Admissions"), attached to the Graham Decl. as Exhibit 3, Request Nos. 19, 22, 31 & 32.[13]

---

[12]    While the Bonanno Defendants admitted to signing the Forbearance Agreement, which expressly acknowledges the validity of the Guaranty, inexplicably, when asked to admit that they signed the Guaranty, the Bonanno Defendants each indicated they were without sufficient information or belief to admit or deny this fact. See *N. Bonanno Admissions*, Response No. 10; *R. Bonanno Admissions*, Response No. 10. Further, such a response is inadequate under Rule 36(a)(4) of the Federal Rules of Civil Procedure (stating an "answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny"). MMAZ reserves the right to seek attorneys' fees and pursue any and all other remedies against the Bonanno Defendants for their non-compliant responses.

[13]    Defendant Tamera R. Jenkins failed to respond to the T. Jenkins Request for Admissions within 30 days of service of the same. See Graham Decl. ¶ 4. Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, Defendant Tamera R. Jenkins is deemed to have admitted to each of the matters raised in the T. Jenkins Request for Admissions, including having signed the Guaranty. *T. Jenkins Request for Admissions*, Request No. 10. Similarly,
*(footnote continued on next page)*

In the Forbearance Agreement, Borrower and Defendants acknowledged that, as of February 29, 2008, the outstanding unpaid principal balance of the Loan was $42,649,554.02 (excluding protective advances of $132,854.14 made by Lehman) and that the Loan matured on August 1, 2007. *Forbearance Agreement*, at 6, ¶ 2.03(b). Borrower and Defendants reaffirmed the validity and legally binding nature of their obligations under the Loan Documents and expressly waived and released any defenses, setoffs, claims, and counterclaims, among other things, whether known or unknown, of any kind or nature, with respect to the Loan, including those of the nature asserted in Defendants' affirmative defenses and counterclaims.[14] Id. at 6, ¶ 2.03(a), 15-16, at ¶ 5.01. These waivers and releases apply not only to Lehman, as original Lender, but to all "Lender Parties" which is defined to include Lehman, TriMont, participants, and all of their affiliates and assigns, including MMAZ. Id. at 4, ¶ 1.01. The Forbearance Agreement includes a merger and integration clause wherein Borrower and Defendants agreed that that "no representations or warranties have been made by or on behalf of Lender, or relied upon by the Borrower Parties" and that it was entered into without fraud or duress. Id. at 19, ¶ 7.06.

In the Forbearance Agreement, Defendants also reaffirmed their Guaranties. Id. at 8, ¶ 2.03(e). Defendants agreed that "each of the Guaranties constitutes the valid, legally binding obligation of the applicable Guarantor who is a party thereto and of the estate of T. Jenkins, enforceable against such Guarantor in accordance with its terms . . . ." Id. Defendants further agreed that:

---

Rita Bonanno failed to sign the R. Bonanno Admissions. Therefore, all matters in those Requests for Admissions are deemed admitted pursuant to Rule 36 (a)(3).

[14]    The Court granted MMAZ's motion to dismiss Defendants' counterclaims (Docket No. 27), by Order entered December 10, 2008 (Docket No. 49).

> the Payment Guarantee is and remains a full recourse guarantee of payment by the Guarantors of the entire Debt of the Loan; that no Guarantor has any defense, setoff, claim, counterclaim, or cause of action of any kind or nature whatsoever with respect to the Loan, any Guaranty, or any of the other Loan Documents, or with respect to any other documents or instruments now or heretofore evidencing, securing, guarantying, or otherwise in any way relating to the Loan, or with respect to the administration or funding of the Loan, or the acquisition, ownership, development, improvement, operation, or financing of any of the Properties; that each Guarantor has waived, released, and relinquished and does hereby waive, release, and relinquish, any and all such defenses, setoffs, claims, counterclaims, and causes of action, whether know or unknown, if any . . . .

Id.

One specific Termination Event under the Forbearance Agreement was the occurrence of the Termination Date (May 15, 2008) without the Loan being paid in full or having been restructured on or before that date. *Forbearance Agreement*, at 17, § 6.01(k). The Loan was not paid in full on the Termination Date, nor was it restructured prior to the Termination Date. *Collins Aff.*, at ¶ 13. Upon the occurrence of a Termination Event, Lender was free to exercise its rights and remedies. *Forbearance Agreement*, at 17-18, § 6.02.

Borrower and Defendants each remain in default under the Loan. The defaults include, without limitation: (a) failure to make interest payments when due on June 1, July 1, and August 1, 2007 (the "Interest Payment Defaults"); (b) failure to pay the debt in full on the Maturity Date; (c) failure to pay real property taxes when due from 2006 to the present or to fund the tax impound account (the "Tax Defaults");[15] and (d) causing the transfer of an easement on the collateral property and failure to pay over to Lehman or MMAZ proceeds in the approximate

---

[15] Lender made $110,652.57 in property tax payments on behalf of Middle Mountain in April of 2007, $132,854.14 in property tax payments on behalf of Middle Mountain in October of 2007, $107,506.09 in property tax payments in April of 2008, and $101,195.75 in property tax payments on behalf of Middle Mountain in October of 2008. *Collins Aff.*, at 5, n.2.

amount of $1,993,512.00 received (improperly) on account of the easement in a condemnation proceeding. *Collins Aff.*, at ¶ 14.

The total amount outstanding under the Loan Documents as of December 1, 2008, exclusive of attorneys fees and other expenses was $54,277,881.83, consisting of $42,991,110 in principal[16]; $1,075,645.23 in pre-maturity interest; $10,160,954.70 in post-maturity interest, and $50,171,90 in late fees. <u>Id.</u> at ¶ 15. Interest and other charges continue to accrue at a daily rate of $20,898.46 in accordance with the terms of the Loan. <u>See</u> *Loan Agreement*, §§ 2.2.5, 2.2.6, 5.1.12; *Guaranty*, ¶ 1(a). As of December 19, 2008, approximately $935,893.86 in attorneys fees and expenses have been incurred in connection with attempting to collect the amounts due under the Loan. *Collins Aff.*, at ¶ 15.

## ARGUMENT

### A.    Summary Judgment Standard

This Court has articulated the standard by which a court should determine whether to grant summary judgment as follows:

> A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

> The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made such a showing, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on

---

[16] Lender made protective advances totaling $474,410.12 to pay property taxes on behalf Middle Mountain. These payments have been applied to principal pursuant to the terms of the Loan.

conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248.

Lumbermens Mut. Cas. Ins. Co. v. Darel Group U.S.A. Inc., 253 F. Supp.2d 578, 581 (S.D.N.Y. 2003).

> B.    No Genuine Issue of Material Fact Exists and
> MMAZ is Entitled to Judgment as a Matter of Law

Defendants are in default under the Guaranty. Under New York law,[17] a plaintiff establishes a prima facie case of default on a promissory note by providing: (1) proof of a valid note, (2) proper demand for payment, and (3) failure to pay. See Gateway State Bank v. Shangri-La Private Club for Women, Inc., 113 A.D.2d 791, 791-92, 493 N.Y.S.2d 226, 226 (N.Y. App. Div. 2d Dep't 1985), aff'd, 67 N.Y.2d 627, 490 N.E.2d 546, 499 N.Y.S.2d 679. The same is true with respect to a Guaranty. See Brookman & Brookman, P.C. v. Schiavoni, 245 A.D.2d 93, 93, 665 N.Y.S.2d 419, 419 (N.Y. App. Div. 1st Dep't 1997). A promissory note is a negotiable instrument governed by Article 3 of the Uniform Commercial Code ("UCC"). Lakhaney v. Anzelone, 788 F. Supp. 160, 163 (S.D.N.Y. 1992). The UCC, as adopted by the State of New York, provides that a promissory note must be signed by the maker, contain an unconditional promise to pay a sum certain upon demand or at a definite time, be supported by consideration, and be payable to order or bearer. N.Y. U.C.C. LAW § 3-104 (McKinney 2001).

A guaranty is governed by the rules generally applicable to contracts. Lakhaney, 788 F. Supp. at 163. For a guaranty to be valid, it must be in writing, provide for the payment of

---

[17]    The Note, Guaranty, and Forbearance Agreement contain choice of law provisions providing that they are governed by New York law. Note, p. 3-6, Art. 9; Guaranty, p. 10, ¶ 14(a); Forbearance Agreement, p. 21, ¶ 7.09. These choice of law provisions are valid and enforceable under New York law. See Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 310 (2d Cir. 1994); see also N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2007) (requiring enforcement of parties' selection of New York law in commercial contracts of $250,000 or more).

another's debt, describe with precision the obligation to which the guarantor is bound, recite either expressly or impliedly the consideration for which it was given, and be delivered to and accepted by the guarantor. Id. Further, the underlying obligation covered by the guaranty, in this case the Note and other Loan Documents, must be valid. Id.

The Note and Guaranty are valid and enforceable. The Note evidencing the Loan is signed by Borrower, contains an unconditional promise to pay a sum certain at definite time, is supported by the Loan, and is payable to Lender or holder. *Note*, p. 1; see N.Y. U.C.C. LAW § 3-104 (McKinney 2001). The Guaranty is in writing, provides for the payment of Borrower's debt, describes the Note and Loan with precision, recites the Loan as the consideration for which it was given, and is signed by Defendants. *Guaranty*, pp. 1-2, 13; Lakhaney, 788 F. Supp. at 163. Having established a valid obligation, MMAZ need only show proper demand for payment and Defendants' failure to pay in order to establish its claim as a matter of law. See Gateway State Bank, 113 A.D.2d at 791-92, 493 N.Y.S.2d at 226. Although Defendants waived their right to demand for payment in the Guaranty,[18] *Guaranty*, at ¶ 7(b), Lender nevertheless made demand for payment in the August 2007 Demand Letter and the October 2007 Demand Letter. *Collins Aff.*, at ¶¶ 9-10. Defendants failed and refused to make payment or otherwise satisfy their obligations under the Guaranty. Id. As such, there is no genuine issue of material fact as to Defendants' liability under the Guaranty. Therefore, MMAZ is entitled to judgment against Defendants a matter of law.

---

[18] Such waiver is valid and enforceable. Lakhaney, 788 F. Supp. at 164.

C.    Defendants' Affirmative Defenses Fail as a Matter of
Law and Fail to Raise Any Genuine Issue of Material Fact

Defendants' affirmative defenses fail as a matter of law because Defendants waived these

defenses in the Forbearance Agreement.  Further, there is no genuine issue of material fact with

respect to Defendants' affirmative defenses because Defendants each admit that they signed the

Forbearance Agreement.    See *N. Bonanno Admissions*, Response No. 19; *R. Bonanno

Admissions*, Response No. 19; *T. Jenkins Request for Admissions*, Request No. 19.

In the Forbearance Agreement, Defendants agreed:

> The Borrower Parties [including Defendants] and each of them, jointly and
> severally, on behalf of themselves and all of their respective heirs, successors, and
> assigns, do hereby remise, release, acquit, waive, satisfy, and forever discharge
> the Lender Parties from any and all manner of debts, accountings, bonds,
> warranties, representations, covenants, promises, contracts, controversies,
> agreements, liabilities, obligations, expenses, damages, judgments, executions,
> objections, defenses, setoffs, actions, claims, demands, and causes of action of
> any nature whatsoever, whether at law or in equity, whether known or unknown,
> either now accrued or hereafter maturing, which the Borrower Parties, or any of
> them, now have or hereafter can, shall, or may have by reason of any matter,
> cause, or thing from the beginning of the world to and including the Effective
> Date of this Agreement, arising out of or relating to (a) the Loan, including, but
> not limited to, the administration or funding thereof, (b) the Loan Documents or
> the indebtedness evidenced and secured thereby, (c) the acquisition, ownership,
> development, financing, and/or operation of any Property or any part thereof, and
> (d) any other agreement or transaction between any of the Borrower Parties or any
> of their respective affiliates and any of the Lender Parties; and the Borrower
> Parties, jointly and severally, for themselves and all of their respective heirs,
> successors, and assigns, hereby covenant and agree never to institute or cause to
> be instituted or continue prosecution of any suit or other form of action or
> proceeding of any kind or nature whatsoever against any of the Lender Parties by
> reason of or in connection with any of the foregoing matters, claims, or causes of
> action. Lender acknowledges and agrees that the foregoing release and covenant
> not to sue do not apply to any breach by Lender of Lender's obligations under this
> Agreement or the Loan Documents which may occur after the Effective Date of
> this Agreement.

*Forbearance Agreement*, p. 15-16, at ¶ 5.01.  Despite these explicit waivers and releases,

knowingly and intentionally given after months of negotiations between sophisticated parties

represented by counsel, Defendants now raise allegations of fraud, fraudulent inducement,

11

breach of contract, failure to fund, and other typical lender liability theories in a last ditch effort to avoid their obligations under the Guaranty.

The Forbearance Agreement constitutes a legally binding, unconditional waiver of Defendants' claims and defenses under New York law. "An unconditional waiver of defenses is valid and enforceable when entered into voluntarily." Export - Import Bank of the United States v. Agricola Del Mar BCS, S.A. de C.V., 536 F. Supp. 2d 345, 350 (2008) (citing Citicorp Leasing, Inc. v. United Am. Funding, Inc., No. 03 Civ. 1856 WHP, 2005 WL 1847300, *6 (S.D.N.Y. Aug. 6, 2005); The Bank of New York v. Tri Polyta Fin., B.V., No. 01 Civ. 9104(LTS) (DFE), 2003 WL 1960587, *4 (S.D.N.Y. Apr. 25, 2003)); accord Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998). Defendants admit they signed the Forbearance Agreement. Due to the waivers and releases in the Forbearance Agreement, Defendants' affirmative defenses fail as a matter of law.

Defendants have asserted the defense that they were fraudulently induced into entering into the Forbearance Agreement itself. This argument fails because: (1) Defendants have failed to plead their fraud defenses with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) Defendants cannot establish the elements of fraud; and (3) Defendants waived their right to assert they were fraudulently induced into executing the Forbearance Agreement by the terms of the Forbearance Agreement itself. The Forbearance Agreement is therefore valid, enforceable, and binding upon Defendants.

Further, no genuine issue of material fact exists with respect to Defendants' fraudulent inducement theory. Defendants have failed to allege any specific fraudulent statement by Lehman, Trimont, MMAZ, or any of their agents or employees with respect to the Forbearance Agreement. Defendants further admit they never met personally with a Lehman employee while

the Forbearance Agreement was being negotiated, that all oral and written negotiations between each of them and Lehman regarding the forbearance agreement was by their counsel and Lehman's counsel, and that they were represented by counsel in connection with negotiation of the Forbearance Agreement. *N. Bonanno Admissions*, Response Nos. 22, 31 & 32; *R. Bonanno Admissions*, Response Nos. 22, 31 & 32; *T. Jenkins Request for Admissions*, Request Nos. 22, 31 & 32. Because Defendants explicitly and knowingly waived all of the affirmative defenses they now assert in the instant action, each of those affirmative defenses fails as a matter of law. MMAZ is entitled to summary judgment.

1. Defendants Have Failed to Plead Fraud
   with the Particularity Required by Rule 9(b)

The Court should not reach the merits of Defendants' affirmative defense that they were fraudulently induced into executing the Forbearance Agreement because Defendants have failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, or even approach that level of particularity. To plead fraud with the particularity required by Rule 9(b), Defendants must allege both scienter, meaning malice, intent, knowledge, or other state of mind, and also "(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Acito v. Imcera Group. Inc., 47 F.3d 47, 51 (2d Cir. 1995).

Defendants did not plead fraud with particularity in their Amended Answer. As pointed out by MMAZ in a detailed memorandum of law in support of its motion to dismiss counterclaims and certain affirmative defenses, Defendants have identified <u>no</u> specific fraudulent statement by Lehman, Trimont, MMAZ, or any of their agents or employees with respect to the Forbearance Agreement. *Memorandum of Law in Support of Motion of Plaintiff MM Arizona*

13

*Holdings LLC to Dismiss Counterclaims and Certain Affirmative Defenses of Defendants Pursuant To Rules 9(b), 12(b)(6) and 14 of the Federal Rules of Civil Procedure, and To Strike Unsigned Verification Pursuant to Rule 11(a)*, pp. 6-12 (Docket No. 28). Defendants failed to offer a substantive response to MMAZ's argument or identify any specific statement in their response to memorandum of law in support of its motion to dismiss counterclaims and certain affirmative defenses. *Memorandum of Law in Opposition to Motion of Plaintiff MM Arizona Holdings LLC to Dismiss Counterclaims and Certain Affirmative Defenses of Defendants Pursuant To Rules 9(b), 12(b)(6) and 14 of the Federal Rules of Civil Procedure, and To Strike Unsigned Verification Pursuant to Rule 11(a)*. (Docket No. 40).

Defendants cannot identify any such statement, because none of Lehman, Trimont, MMAZ, or any of their respective employees, officers, or agents (other than counsel) had contact with Borrower or Defendants regarding the negotiation of or entry into the Forbearance Agreement. *Collins Aff.*, at ¶ 12. Borrower and Defendants were represented by counsel during the entire course of negotiations regarding the Forbearance Agreement. Id.; *N. Bonanno Admissions*, Response No. 32; *R. Bonanno Admissions*, Response No. 32. Because Defendants have failed to identify any specific, fraudulent statement made by Lehman, Trimont, MMAZ, or any of their agents or employees, Defendants have failed as a matter of law to plead fraud with the particularity required by Rule 9(b) and no genuine issue of material fact exists. See Acito, 47 F.3d at 51. Consequently, the Court should not reach the merits of Defendants' affirmative defense they were fraudulently induced into executing the Forbearance Agreement.

2.    Defendants Cannot Establish the Elements of Fraud

Assuming the Court were to reach the merits of Defendants' claim that they were fraudulently induced into executing the Forbearance Agreement, Defendants cannot prevail as a matter of law because Defendants cannot establish the elements of fraudulent inducement under

14

New York law. "To prove fraudulent inducement under New York law, a plaintiff must show that:

    (i)     the defendant made a material false representation;

    (ii)    the defendant intended to defraud the plaintiff thereby;

    (iii)   the plaintiff reasonably relied on the representation; and

    (iv)   the plaintiff suffered as a result of such reliance."

Lumbermans Mut. Cas. Ins. Co. v. Darel Group U.S.A. Inc., 253 F. Supp. 2d 578, 583 (S.D.N.Y. 2003) (emphasis added). "Under New York law, each element of a fraud claim must be shown by clear and convincing evidence." Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 153 (2d. Cir. 1995).

    First, as discussed above, Defendants cannot show that any of Lehman, Trimont, MMAZ, or any of their agents or employees made a material false representation to them with the intent to defraud them.

    Second, Defendants cannot establish the element of justifiable reliance. Defendants each executed the Pre-Negotiation Agreement more than seven months prior to entering into the Forbearance Agreement. *Collins Aff.*, at ¶ 11. In the Pre-Negotiation Agreement, Defendants all agreed that no compromise, agreement, or understanding with respect to the Loan, and no rights, claims, obligations, or liabilities of any kind, shall arise in favor of any party to the Pre-Negotiation Agreement except to the extent set out in a written agreement. *Pre-Negotiation Agreement* at 2, ¶ 2. Defendants agreed they would not rely on any statement other than a written statement, yet Defendants have failed to assert reliance on any written statement in support of their fraudulent inducement claim in their original, Answer, Amended Answer, or response to MMAZ's motion to dismiss counterclaims and certain affirmative defenses, granted by the Court by decision and order dated December 10, 2008 (Docket #49). Therefore even

assuming Defendants could allege that Lehman, Trimont, MMAZ, or any of their agents or employees made some specific, fraudulent statement, Defendants could not establish that they reasonably relied upon any such statement to their detriment because, having previously agreed that any compromise, agreement, or understanding with respect to the Loan must be in writing, reliance upon an oral statement would not be reasonable. Further, Defendants do not allege they were fraudulently induced into entering into the Pre-Negotiation Agreement, therefore no genuine issue of material fact exists. Without establishing the element of justifiable reliance, Defendants' fraudulent inducement claims fail as a matter of law. See Lumbermans Mutual, 253 F. Supp. 2d at 583.

Finally, Defendants cannot establish the fourth factor of their fraudulent inducement claim -- that they suffered as a result of their reliance on a false representation. In their affirmative defenses, Defendants do not allege any personal damage; they allege only damages in an amount Middle Mountain *anticipated* receiving upon achieving a successful development of the Real Property. These damages, however, are damages suffered by Middle Mountain, not Defendants. Defendants lack standing to seek redress for an injury suffered by non-party Middle Mountain. See Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey, 85 F.3d 970, 973 (2d Cir. 1996); Katz v. Katz, 55 A.D.3d 680, 867 N.Y.S.2d 100, 104 (N.Y. App. Div. 2d Dep't 2008). Because Defendants lack standing to pursue the damages they seek, they cannot establish they suffered any harm as a result of their reliance on a false representation.

     3.    **Defendants Waived Their Right to Assert They Were Fraudulently Induced into Executing the Forbearance Agreement.**

Defendants cannot prevail on their claims that they were fraudulently induced into entering into the Forbearance Agreement because, in the Forbearance Agreement itself, Defendants specifically waived any such claim. The Forbearance Agreement provides:

16

that no representations or warranties have been made by or on behalf of Lender, or relied upon by the Borrower Parties, or any of them, pertaining to the subject matter of this Agreement, and all prior statements, representations, and warranties, if any, are totally superseded and merged into this Agreement, which represents the final and sole agreement of the parties with respect to the matters which are the subject hereof and thereof; that all of the terms of this Agreement were negotiated at arm's-length and that this Agreement were [sic] prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the parties upon the others; and that the execution and delivery of this Agreement constitute the free and voluntary act of each of the Borrower Parties.

*Forbearance Agreement*, p. 19, at ¶ 7.06. The enforceability of this type of clause was addressed by the U.S. Court of Appeals for the Second Circuit in Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310 (2d Cir. 1993). There, the court acknowledged the general rule that a party may escape contractual liability by establishing it was fraudulently induced to enter into the contract even in the face of "'an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made . . . .'" Yanakas, 7 F.3d at 315 (quoting Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598-99 (1959)). The court then stated "[w]hen, however, the contract states that a contracting party disclaims the existence of or reliance upon specific representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." Id. (citing Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 94-95, 485 N.E.2d 974, 976 (1985); Danaan, 5 N.Y.2d at 320-21, 157 N.E.2d at 599).

The cases cited by the court in Yanakas are illustrative of the types of specific representations that can be disclaimed. In Plapinger, the New York Court of Appeals considered Danann in the context of an absolute and unconditional guaranty of a company's debts by a company's corporate officers, which was made "irrespective of . . . any lack of validity . . . of the . . . Restated Loan Agreement . . . or any other agreement or instrument relating thereto, or . . .

any other circumstance which might otherwise constitute a defense to the guarantee." Plapinger,
66 N.Y.2d at 95. When the company defaulted on the loan, its officers sought to defend the
guaranty suit by alleging they had been induced to enter into the guaranty agreement by the
banks' fraudulent representation that the banks had committed themselves to providing the
corporation with an additional line of credit. The New York Court of Appeals affirmed the
dismissal of the officers' attempted fraud defense because of the waiver in the guaranty and
because the guaranty was signed "following extended negotiations between sophisticated
business people" and was not "generalized boilerplate." Id. at 92.

The U.S. District Court for the Southern District of New York has interpreted Yanakas as
identifying three "significant differences between valid and invalid waivers" of fraudulent
inducement claims: (1) whether the exclusion in question is a boilerplate exclusion or was the
product of negotiation; (2) whether the agreement in question purports to waive any defenses to
its own validity; and (3) whether the agreement contains a "blanket disclaimer," such as the one
in Plapinger, as to "any other circumstance which might otherwise constitute a defense." Valley
Nat'l Bank v. Greenwich Ins. Co., 254 F. Supp. 2d 448, 457-58 (S.D.N.Y. 2003) (holding claim
of fraudulent inducement waived where guaranty in question was "the product of negotiations
among sophisticated businessmen that produced custom-crafted instruments.").

Because it is specific, the waiver of affirmative defenses made by Defendants in ¶ 7.06 of
the Forbearance Agreement is effective. In executing the Forbearance Agreement, Defendants
acknowledged that Lender made no representations to Defendants other than those found in the
written agreement. *Forbearance Agreement*, p. 19, at ¶ 7.06. Defendants further acknowledged
that the Forbearance Agreement was negotiated at arm's-length, without fraud, duress, undue

influence, or coercion of any kind, and that entering into the Forbearance Agreement was the free and voluntary act of each of the Defendants. Id.

The waiver of affirmative defenses made by Defendants in ¶ 7.06 of the Forbearance Agreement is also effective because the Forbearance Agreement is not boilerplate, but instead was the product of lengthy negotiations among sophisticated parties represented by counsel. *Collins Aff.*, at ¶ 12. Where an agreement is heavily negotiated between sophisticated parties, the specificity of the waivers contained in the agreement becomes less important. See Plapinger, 66 N.Y.2d at 95. Having entered into the Forbearance Agreement knowingly and voluntarily after months of negotiation, and having acknowledged in the Forbearance Agreement that they relied on no representations other than those contained therein, Defendants cannot now argue that they were fraudulently induced into executing the Forbearance Agreement. Defendants' fraudulent inducement claim as to the Forbearance Agreement fails as a matter of law.[19]

## CONCLUSION

The debt evidenced by the Loan Agreement and Note is a valid obligation. Defendants are in default under the Guaranty. The Forbearance Agreement constitutes a valid and binding waiver of all Defendants' affirmative defenses. Defendants cannot prevail on their fraudulent inducement affirmative defenses because Defendants: (1) failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) cannot establish the elements of fraudulent inducement; and (3) waived their right in the Forbearance Agreement itself to assert that they were fraudulently induced into entering into the Forbearance Agreement.

---

[19] Because the Forbearance Agreement is an unambiguous, fully integrated document, parol evidence is inadmissible in interpreting its terms. Rong Rong Jiang v. Tan, 11 A.D.3d 373, 373, 783 N.Y.S.2d 557, 557 (N.Y. App. Div. 1st Dep't 2004). Even were parol evidence admissible, however, Defendants would be without any evidence of fraud to present because, as discussed at length above, Defendants have failed to allege any specific, fraudulent statement by Lehman or anyone else in connection with the execution and delivery of the Forbearance Agreement.

For the foregoing reasons, this Court should enter judgment in MMAZ's favor on the First, Second and Fourth Causes of Action in its Complaint and on Defendants' Affirmative Defenses, and enter judgment against Defendants in the amount of $55,213,775.69 plus $20,898.46 in interest and late fees per day from December 1, 2008 through and including the date of the judgment, plus post-judgment interest at the legal rate.

Dated: December 23, 2008
      New York, New York

                    McKENNA LONG & ALDRIDGE LLP

                By: /s/ Christopher F. Graham
                    Christopher F. Graham (CG-2455)
                    230 Park Avenue, Suite 1700
                    New York, NY 10169
                    Tel.: (212) 905-8300
                    Fax: (212) 922-1819
                    E-mail: cgraham@mckennalong.com

                    Of Counsel:

                    Gary W. Marsh
                    Georgia Bar No. 471290
                    E-mail: gmarsh@mckennalong.com
                    David A. Geiger
                    Georgia Bar No. 288898
                    E-mail: dgeiger@mckennalong.com
                    MCKENNA LONG & ALDRIDGE LLP
                    303 Peachtree Street, NE
                    Suite 5300
                    Atlanta, Georgia 30308
                    Tel.: (404) 527-4000
                    Fax: (404) 527-4198

                    *Attorneys for Plaintiff MM Arizona Holdings LLC*

# **EXHIBIT I**
## **(Bonannos' Response)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| MM Arizona Holdings LLC, | : Case No.: 08 Civ. 5353 |
| | : (Hon. Colleen McMahon, D.J.) |
| Plaintiff, | : (Hon. Andrew J. Peck, M.J.) |
| | : |
| -against- | : BRIEF IN SUPPORT OF BONANNO |
| | : DEFENDANTS' RESPONSE TO |
| Nicholas W. Bonanno, Jr., Rita Bonanno, Allen | : PLAINTIFF'S MOTION FOR |
| D. Jenkins, individually, and Allen D. Jenkins both | : SUMMARY JUDGMENT AND |
| Individually and as a personal representative of | : REQUEST FOR RULE 56(f) RELIEF |
| the estate of Tamera R. Jenkins, | : |
| | : |
| Defendants, | : |
| | : |

------------------------------------------------------------x

Defendants Nicholas W. Bonanno, Jr. and Rita Bonanno (collectively, the "Bonannos"),

by and through undersigned counsel, herewith respond to Plaintiff MM Arizona Holdings, LLC's

("Arizona Holdings") Motion for Summary Judgment. The court should deny the motion,

because genuine issues of material fact exist regarding Plaintiff's claims. The court should allow

the Bonannos to conduct discovery relating to their affirmative defenses before considering the

pending summary judgment motion.

This Response is supported by the following Memorandum of Points and Authorities and

the entire file in this matter, all of which are incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND FACTS

The Bonannos respectfully refer the court to their Amended Answer dated August 27,

2008 (the "Answer") and to their papers opposing dismissal of the counterclaims contained in

that pleading. Those submissions contain a more complete recitation of the surrounding facts

and circumstances, which the Bonannos will not repeat here at length.

1

In summary, this case concerns the development of real property in Maricopa County, Arizona, and a Loan Agreement and Guaranty (the "Loan") extended by Plaintiff's predecessor-in-interest to Defendants Nicholas W. Bonanno ("Bonanno") and Allen D. Jenkins ("Jenkins"). Prior to the involvement of Plaintiff or Plaintiff's predecessor-in-interest, Bonanno and Jenkins, acting through an entity named Middle Mountain 156, LLC ("Middle Mountain"), invested approximately $6 million in personal funds and borrowed approximately $35.5 million (from other non-party lenders) in order to acquire and assemble various real property parcels (the "Property"). Bonanno and Jenkins, acting through Middle Mountain, intended to acquire and assemble the Property to develop, subdivide and re-sell the underlying parcels as residential and commercial sites at a substantial net profit. Bonanno has substantial experience in similar developments, with particular expertise as to the complications unique to America's desert southwest. Principal among these unique considerations are the acquisition and delivery of water and disposal of sewage (the "Water and Sewer Services").

After Bonanno and Jenkins cobbled together the various parcels composing the Property, they decided to re-finance the development loan package then existing on the Property. In order to help facilitate that re-financing, their prior lenders introduced Bonanno and Jenkins to Investors Mortgage Holdings, Inc., which represented to them that it had a loan originating relationship with Plaintiff's predecessor-in-interest. At all relevant times, the Property was "raw land" and lacked infrastructure to provide: (a) the Water and Sewer Services; (b) transportation by paved roads; (c) electricity; (d) natural gas; (e) telecommunications services; and/or (f) other utilities and services necessary to any residential and/or commercial development. Plaintiff's predecessor-in-interest knew these limitations and conducted their own independent evaluation of the Property and its proposed development plan. Plaintiff's predecessor also knew that the

2

Water and Sewer Services necessary to the development could be obtained only from a location situated northeast of the Property and that in order to provide Water and Sewer Services to the Property, Middle Mountain, Bonanno and Jenkins would need to construct dedicated water and sewer lines north of the Property to a boundary road, along with a utility sleeve running beneath the adjacent interstate highway. Plaintiff's predecessor-in-interest knew that the legal permitting and construction processes attendant such an undertaking would be complex and expensive.

Taking into consideration these additional complexities and expenses, Middle Mountain sought a $37.2 million loan from Plaintiff's predecessor-in-interest to buy-out the existing development-related loan package. After reviewing the proposed development plan and appraisals of the underlying Property, Plaintiff's predecessor-in-interest concluded that the Property in its unimproved state was inadequate to secure such a loan. As an alternative, Plaintiff's predecessor-in-interest proposed a $44 million loan, including various multi-million dollar reserves set aside specifically to finance the permitting and construction processes necessary to install the indispensable Water and Sewer Services. In addition, Plaintiff's predecessor-in-interest demanded the Bonannos and Jenkins execute the Guaranty and pledge as additional security approximately 80 acres situated elsewhere in Arizona with an appraised value exceeding $4.7 million.

After execution of the Loan, Plaintiff's predecessor-in-interest disbursed loan proceeds adequate to take-out the non-party lenders mentioned above. However, despite repeated demands by Middle Mountain, Plaintiff's predecessor-in-interest refused to release the multi-million dollar reserve it had agreed would be set aside to finance the permitting and construction processes necessary to install the Water and Sewer Services. This deliberate refusal to disburse reserve funds undermined Middle Mountain's efforts to procure the Water and Sewer Services.

3

This failure by Plaintiff's predecessor to abide by the terms of the Loan and to disburse the funds set aside for the development of the Water and Sewer Services undermined Middle Mountain's plan to develop the Property and caused its default under the Loan. Such actions by Plaintiff's predecessor did in fact cause Middle Mountain's default under the Loan and this subsequent action against the Bonannos as guarantors of said Loan.

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party would be entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, a court must construe all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505 (1986).

## III.   ARGUMENT

### A.   Bonannos Are Entitled To Conduct Discovery On Their Affirmative Defenses

As a preliminary matter, it should be noted that while this Court has dismissed the Bonannos's counterclaims on grounds unrelated to their facial merit or evidentiary substance, their affirmative defenses remain in place. The court should consider permitting them to conduct at least limited discovery designed to elucidate the facts behind those affirmative defenses, which track their dismissed counterclaims. Setting aside for a moment whether the court was correct in dismissing those counterclaims, the thematically identical affirmative defenses contained in the Amended Answer are good against Arizona Holdings as assignee of the Guaranty.

It is axiomatic that Arizona Holdings, as assignor, can occupy no better position vis-à-vis the Bonannos than did Lehman Brothers, as assignor of the Guaranty. *In the Matter of Trans-*

4

*United Indus., Inc. (Rywelle Assocs. Inc. v. Cohn)*, 351 F.2d 605 (2[d] Cir. 1965). As this court once observed, "the assignee stands in the shoes of the assignor and is subject to the 'equities between the original parties.'" *Export-Import Bank of the United States v. Agricola del Mar BCS, S.A. de C.V.*, 536 F.Supp.2d 345, 349 (S.D.N.Y. 2008) (Hon. Colleen McMahon, D.J.).

It matters not in this regard that Lehman Brothers has declared bankruptcy. That bankruptcy proceeding notwithstanding, whatever viable affirmative defenses the Bonannos had against Lehman Brothers are equally good against Arizona Holdings. Having been deprived of the opportunity to conduct discovery on their counterclaims, which mirror in substance their affirmative defenses, the Bonannos face the pending summary judgment motion without supporting evidence beyond their own sworn statements and those reasonable inferences supported by the very limited testimonial and documentary evidence in the record.

Allowing the Bonannos to conduct at least narrow discovery on these affirmative defenses, prior to granting any motion for summary judgment, is necessary and appropriate under the Federal Rules of Civil Procedure. Rule 56(f), Fed.R.Civ.P. states that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f), Fed.R.Civ.P. (2008). Such a rule provides that when a party is facing a motion for summary judgment, if that party advises the court that it needs discovery to be able to defend against the motion, the court should defer decision on the request for summary judgment until discovery has been conducted. *Seven Corners Shopping Center Fall Church, V.A. v. Chesapeake Enterprises*, USA LLC, 2008 WL 1766617 (W.D.N.Y. 2008).

5

Accordingly, "summary judgment is strongly disfavored where the non-moving party has had no opportunity to conduct discovery." *Trammell v. Keane*, 338 F.3d 155, 161 (2d. Cir. 2003). Indeed, "only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Id.* Moreover, Second Circuit decisions indicate that a request to conduct discovery prior to summary judgment being granted should "ordinarily be granted, and discovery allowed," and that summary judgment should only be granted if **after** discovery, the non-moving party has failed to establish a genuine issue of material fact. *Chesapeake Enterprises, supra* at 2.

In this case, the Bonannos are entitled to conduct discovery to support their affirmative defenses prior to any award of summary judgment in favor of the Plaintiff. As set forth in the Amended Answer, which Mr. Bonanno verified, and his affidavit in opposition to summary judgment filed contemporaneously herewith, the Bonannos should be allowed to conduct discovery on, *inter alia*, the following disputed issues of fact which provide valid defenses to Plaintiff's claims:

1) That the Guarantor Full Payment Guaranty dated July 13, 2006 (the "Guaranty") is void and unenforceable against the Bonannos, because Plaintiff's predecessor-in-interest fraudulently induced the Bonannos to execute the Guaranty and non-party Middle Mountain to execute the Loan documents dated July 13, 2006;

2) That Plaintiff and its predecessor-in-interest breached the Loan before any default was allegedly committed by Middle Mountain when they, *inter alia*: a) diverted and/or otherwise refused to release funds necessary to procure the Water and Sewer Services which Plaintiff and its predecessor knew was absolutely indispensable to the development of the Property; b) deliberately undermined Middle Mountain's good

6

faith efforts to bring Water and Sewer Services to the Property by intervening in a
condemnation action brought by the Arizona Department of Transportation
("ADOT"); and c) by deliberately undermining the mediated resolution reached
between Middle Mountain and ADOT by moving to terminate the over-arching
condemnation proceeding . These breaches of the Loan excuses any default by
Middle Mountain and the Guaranty executed by the Bonannos;

3)  That the Forbearance Agreement dated April 16, 2008 (the "Forbearance
Agreement") is void and unenforceable, because Plaintiff and its predecessor-in-
interest fraudulently induced the Bonannos to execute that document; and

4)  That Plaintiff, through its predecessor-in-interest, exercised or sought to exercise such
dominion and/or effective control over the development of the Property that it became
a partner and/or co-venturer of Middle Mountain and the Bonannos.

Each of the above-described allegations warrants discovery. With respect to the conduct
addressed in sub-section "2" above in particular, the Bonannos respectfully suggest that no
legitimate or otherwise good faith motivation explains the behavior in which Lehman Brothers
engaged. It withheld necessary disbursements and interfered in condemnation proceedings,
thereby breaching its contractual obligations, in order to advance its fraudulent scheme to
precipitate a default by the Bonannos. In any event, these issues of fact remain to be resolved via
discovery. The Bonannos are entitled to conduct discovery into the actions of the Plaintiff and
its predecessor-in-interest to establish the facts necessary to support their affirmative defenses.

Moreover, Arizona Holdings has argued that it is entitled to summary judgment because
the Bonannos have allegedly failed to establish the elements of fraud or fraudulent inducement or
plead same with particularity. The Bonannos addressed this argument already in their papers

7

opposing dismissal of the counterclaims contained in their Amended Answer. Rather than repeat their arguments here, they respectfully refer this court to pages 8-19 of the brief they filed on October 16, 2008. Their fraud allegations are more than adequate to withstand dismissal at the pleading stage and, as previously discussed, the Bonannos have been deprived of the opportunity to conduct discovery in order to elucidate those allegations.

In any event, without allowing the Bonannos to conduct discovery to support their affirmative defenses, the court cannot reasonably expect them to present evidence to support those defenses. Accordingly, the Bonannos respectfully request that this Court deny the Plaintiff's Motion for Summary Judgment and provide them an opportunity to conduct discovery relating to their affirmative defenses.

> B.  Bonannos Are Not Barred From Asserting Their Affirmative Defenses By
>     Terms Of Forbearance Agreement

Plaintiff's argument that the Bonannos are barred from asserting their affirmative defenses because those defenses were allegedly waived by the terms of the Forbearance Agreement is without merit. While the Bonannos recognize that guarantees are usually acceptable in loan contracts, and that in such guarantees a party may waive defenses he would otherwise have available, any waiver of defenses must be clear and unambiguous and the soliciting party cannot have engaged in activities that would have resulted in a fraudulently-induced contract or the default of one of the parties under same. *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 2008 WL 465169 (S.D.N.Y. 2008).

That is exactly what happened here. As alleged above, the actions of the Plaintiff and its predecessor-in-interest make the Loan Agreement, and its attendant documents, void or voidable. This made the Forbearance Agreement, and any waiver of defenses, inapplicable to the

8

Bonannos. In addition, as established above, the Bonannos are entitled to conduct discovery into the above-mentioned disputed facts to establish the voidable nature of the Forbearance Agreement.

The fraudulent conduct of the Plaintiff and its predecessor-in-interest in the execution of the Forbearance Agreement is also evident from the Agreement itself. In that Agreement, at § 4.01(a), Plaintiff's predecessor-in-interest agreed that it would not, until a Termination Event,

> (i) commence any foreclosure proceedings against any Property or any other collateral of the Loan, (ii) seek any monetary judgment against or otherwise seek to impose personal liability on any Guarantor with respect to such Guarantor's obligations under any Guaranty, (iii) seek to impose personal liability on Borrower with respect to its obligation under, and subject to the nonrecourse limitations as set forth in, the Loan Documents…

[*See Forbearance Agreement*, p. 14, § 4.01(a), attached as Exhibit I to Affidavit of Bryan Collin in Support of Plaintiff's Motion for Summary Judgment]. The Termination Event listed by Plaintiff in its Motion for Summary Judgment was the arrival of the Termination Date which, pursuant to the Forbearance Agreement, was scheduled for May 15, 2008. It should be noted that the Forbearance Agreement was not executed until April 16, 2008. Thus, Plaintiff's predecessor-in-interest only agreed to not foreclose on the Property and pursue the Bonanno and other Defendants personally for twenty-eight (28) days. This does not constitute valid consideration for a claim and affirmative defense relinquishment of the sort Arizona Holdings contends occurred. Instead, Middle Mountain and the Bonannos were fraudulently induced to enter into the Forbearance Agreement because of the representations of the Plaintiff's predecessor-in-interest and the extremely disproportionate amounts of negotiating power between the parties. Because of this disproportionate bargaining power and fraudulent actions, any waiver of the Bonannos's defenses is inapplicable.

9

Further, it is established law that if a contract provision is added simply to secure

performance of a contract and serves as a penalty, such a provision is unenforceable. Indeed,

such penalties are void *ab initio* as a matter of public policy and any waiver of defenses in such a

clause is unenforceable. *Wells Fargo Northwest Bank, National Association v. Varig-S.A.*, 2003

WL 21508341 (S.D.N.Y. 2003). Here, the waiver of defenses clause cited by Plaintiffs is

unenforceable. It was added to the Forbearance Agreement as a penalty to the Bonannos and

was solicited from them fraudulently. As such, it violates public policy and is unenforceable.

## IV.   CONCLUSION

Based on the foregoing, the Bonannos respectfully request that this Court deny Plaintiff's

Motion for Summary Judgment and Order that the Bonannos are entitled to conduct discovery to

support their affirmative defenses.

Dated:  New York, New York
        January 23, 2009

Law Offices of Stephen L. Cohen
Counsel to defendants Nicholas W. Bonanno, Jr. and
Rita Bonanno

By:

Mark D. Marderosian (MDM-8116)

The Riverbank West Building
560 West 43rd Street, Suite 34d
New York, New York  10036
(212) 564-1106 / telephone
e-mail:  mark.marderosian@gmail.com

32 Main Street
Chatham, New York  12037
(518) 392-3131 / telephone

10

**EXHIBIT J**
**(Summary Judgment Order)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————x

MM ARIZONA HOLDINGS LLC,

                              Plaintiff,

against

NICHOLAS W. BONANNO, JR. et. al.,

                              Defendants.

——————————————————————x

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:   9/17/09            │
└─────────────────────────────────┘
```

08 Civ. 5353 (CM)

### DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS EXCEPT ALLEN D. JENKINS

McMahon, J.:

### I.    Background

Plaintiff MM Arizona Holdings LLC (hereinafter "MMAZ") brought this suit against defendants Nicholas W. Bonanno, Jr., Rita Bonanno, Allen D. Jenkins, and the Estate of Tamera R. Jenkins (hereinafter "Defendants"), for judgment on a guaranty. Plaintiff now moves for summary judgment on its first, second, and fourth claims for relief and for dismissal of all of Defendants' affirmative defenses. Nicholas W. Bonanno and Rita Bonanno (hereinafter, "Bonannos") in turn ask that summary judgment be denied, or, alternately, that the Court allow the Bonannos an opportunity to conduct discovery under Federal Rule of Civil Procedure 56(f) before considering the summary judgment motion.

This dispute stems from a loan (hereinafter "the Loan"), for the sum of $44 million given on July 13, 2006 to non-party Middle Mountain 156, LLC (hereinafter "Borrower") by non-party Lehman Brothers Holding Inc., d/b/a Lehman Capital (hereinafter "Lender", or "Lehman"). The loan, which is evidenced by a promissory note (hereinafter "the Note"), was to be used for development of property in Arizona. (Pl.'s Rule 56.1 Stmt. ¶1.)[1] On the same date, Defendants

---

[1] Defendants failed to file a Rule 56.1 Statement in opposition to plaintiff's motion for summary judgment, and so all the averments of fact in Plaintiff's Rule 56.1 Statement—though not the conclusions plaintiff draws therefrom—are

executed and delivered a Guarantor Full Repayment Guaranty (hereinafter "the Guaranty"), pursuant to which they agreed to guarantee to Lender the payment of the obligations of Borrower to Lender under the Loan. (Id. ¶¶3-6). MMAZ is the current holder and owner of the Loan and Guaranty. (Id. ¶7).

The Loan matured on August 1, 2007, and became due and payable in full, together with interest, fees, and charges. (Id. ¶8). Borrower failed to satisfy its obligations to Lender under the Loan, and neither Borrower nor Defendants made any payment on the Loan after its maturity date. (Id. ¶¶9-10).

On April 16, 2008 (denoted in the Agreement as the "Effective Date"), Lender entered into a Forbearance Agreement (hereinafter "Forbearance Agreement") with Borrower and Defendants, among others (Id. ¶11). The Forbearance Agreement included definitions of certain key terms. 'Borrower Parties' was the term designated to refer collectively to the Borrower, the Guarantors, and certain corporate entities controlled by the Guarantors. (Forbearance Agreement, at 1). The term 'Lender Parties' was designated to refer collectively to, among other entities, Lehman Brothers and any successors or assigns of Lehman Brothers (which includes Plaintiff). (Id. §1.01). The Agreement provided, *inter alia*, that the Lender would not seek to enforce the obligations of the Borrower or Defendants under the Loan unless and until one of a number of specified Termination Events shall have occurred. (Forbearance Agreement §4.01(a)). Among the Termination Events listed was the failure of Borrower to repay the debt in full by May 15, 2008 (the Termination Date), unless the Loan was restructured before then. (Id. §§1.01, 6.01(k)).

In the Forbearance Agreement, as signed, the Borrower Parties (including Defendants) agreed, among other things, that the Loan and Guaranty constituted valid and legally binding obligations, and that:

> The Borrower Parties and each of them, jointly and severally, on behalf of themselves and all of their respective heirs, successors, and assigns, do hereby remise, release, acquit, waive, satisfy and forever discharge the Lender Parties from any and all manner of…defenses, setoffs, actions, claims, demands, and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, either now accrued or hereafter maturing, which the Borrower Parties, or any of them, now have or hereafter can, shall, or may have

deemed admitted. Holtz v. Rockefeller & Co., Inc., 258 F. 3d 62, 72 (2d Cir. 2001); Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004).

by reason of any matter, cause, or thing from the beginning of the world to and
including the Effective Date of this Agreement, arising out of or relating to [the
Loan].

Id. §§2.03(a), 5.01, Pl.'s Rule 56.1 Stmt. ¶15. The Defendants were represented by counsel
during negotiation of the Forbearance Agreement, and all oral and written negotiations between
Lender and the Defendants were conducted through counsel. (Pl.'s Rule 56.1 Stmt. ¶¶ 13, 14).

    The Loan was not paid in full by the Termination Date, nor was it restructured. (Id. ¶17).
On June 11, 2008, Plaintiff filed its Complaint for judgment on the guaranty. Plaintiff now
moves for summary judgment against the Bonannos and the Estate of Tamera R. Jenkins.[2]

## II.    Standard of Review for Motions for Summary Judgment

    A party is entitled to summary judgment when there is no "genuine issue of material fact"
and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ.
P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for
summary judgment, "the court must view the evidence in the light most favorable to the party
against whom summary judgment is sought and must draw all reasonable inferences in [its]
favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
Whether any disputed issue of fact exists is for the Court to determine. Balderman v. United
States Veterans Admin., 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial
burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477
U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present
"specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party
opposing summary judgment "may not rely on conclusory allegations or unsubstantiated
speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every
disputed factual issue is material in light of the substantive law that governs the case. "Only
disputes over facts that might affect the outcome of the suit under the governing law will
properly preclude summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving
party "must do more than simply show that there is some metaphysical doubt as to the material
facts." Matsushita Elec. Industries Co., 475 U.S. at 586. To withstand a summary judgment
motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the
nonmovant.

---

[2] Defendant Allen Jenkins has filed for personal bankruptcy, and the Court has stayed this action as against that
defendant. (Docket No. 35).

### III.    Discussion

#### A.    Plaintiff's *prima facie* case of default on the Guaranty

All of the documents at issue in this dispute (the Note, the Guaranty, and the Forbearance
Agreement) contain choice of law provisions providing that they will be governed by New York
law. "In New York, with exceptions not relevant here, a choice of law provision in a contract is
valid and enforceable." Schiavone Const. Co. v. City of New York, 99 F.3d 546, 548 (2d Cir.
1996); *see also* Turtur v. Rothschild Registry Int'l. Inc., 26 F.3d 302, 310 (2d Cir. 1994); N.Y.
Gen. Oblig. Law §5-1401 (McKinney 2007).

Under New York law, to establish a *prima facie* case of default on a promissory note,
plaintiff must provide proof of the valid note and of defendant's failure, despite proper demand,
to make payment. Export-Import Bank of U.S. v. Agricola Del Mar BCS, 536 F.Supp.2d 345,
344 (S.D.N.Y. 2008). A *prima facie* case of default on a guaranty is likewise made out by proof
of a valid guaranty and proof of the defendant's failure, despite proper demand, to make
payment. Id. at 350. Guaranties are governed by the rules of contracts. Id.

> A valid guaranty must be a written instrument guaranteeing payment of another's
> debt, describing with precision the obligation to which the person is bound.
> Consideration for the guaranty must be expressly or impliedly stated in the
> instrument, and the instrument must be delivered to, and accepted by, the
> guarantor. Further, liability under a guaranty depends on the terms of the
> underlying promissory note.

Id.

The Bonannos do not contend that the Guaranty fails to meet these requirements, nor do
they contend that the underlying Note is invalid.   The Bonannos also do not challenge the
assertion that proper demand for payment was made,[3] nor do they dispute that they failed to pay.
Therefore, Plaintiff has made out its *prima facie* case.

#### B.    Affirmative defenses

The Bonannos assert four affirmative defenses in their response—(1) that the Guaranty is
void because Lehman fraudulently induced the Bonannos to execute the Guaranty and Borrower
to execute the Loan; (2) that Lehman and Plaintiff breached the Loan before any default by

---

[3] In this case, the Guaranty contained a clause waiving Defendants right to demand for payment. This kind of
waiver is generally enforceable. *See* Lakhaney v. Anzelone, 788 F.Supp. 160, 164 (S.D.N.Y. 1992).  In any event,
Lender made demands for payment, through a demand letter sent August 2007, and a second demand letter sent
October 2007.

Borrower; (3) that the Forbearance Agreement is void because Plaintiff and Lehman fraudulently
induced the Bonannos to execute it; and (4) that Plaintiff, through Lehman, exercised such
dominion and/or effective control over the property at issue that it became a partner and/or co-
venturer of Borrower and the Bonannos. None withstands scrutiny.

    (i) Plaintiffs are entitled to summary judgment dismissing Bonannos' Affirmative
Defense that the Forbearance Agreement is void and unenforceable

    In their third affirmative defense, the Bonannos allege that the Forbearance Agreement
itself is void and unenforceable. They assert two reasons why this is so.

    First, they contend that the length of the forbearance period was insufficient
consideration for the relinquishment of all claims or defenses agreed upon. The Bonannos cite
no authority for this point, because there is none. Under New York law, forbearance of any
length can constitute valid consideration. *See* Sun Forest Corp. v. Shvili, 152 F.Supp.2d 367,
392 (S.D.N.Y. 2001). Further, it is a settled principle of New York contract law that courts will
rarely if ever investigate the adequacy of the consideration exchanged.

> "Under the traditional principles of contract law, the parties to a contract are free
> to make their bargain, even if the consideration exchanged is grossly unequal or
> of dubious value. Absent fraud or unconscionability, the adequacy of
> consideration *is not a proper subject for judicial scrutiny*. It is enough that
> something of 'real value in the eye of the law' was exchanged."

Apfel v. Prudential-Bache Securities, Inc., 81 N.Y.2d 470, 475-76 (N.Y. 1993) (citations
omitted). The agreement by Lender to forbear from pursuing its rights under the Guaranty is
something of real value in the eye of the law. *See e.g.* Rogowsky v. McGarry, 55 A.D.3d 815,
816 (N.Y.A.D. 2nd Dept. 2008) ("[F]orbearance from the assertion of a legal right has long been
held to constitute valid consideration"). Therefore, the agreed-upon forbearance period
contained in the Forbearance Agreement is sufficient consideration for the release contained in
that Agreement.

    Second, the Bonannos also claim that they were fraudulently induced to enter into the
Forbearance Agreement. However, they offer not a scintilla of evidence to support the claim.

    "To prove fraudulent inducement under New York law, a plaintiff must show: "(i) the
defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff
thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered
damage as a result of such reliance." Lumbermans Mut. Casualty Ins. Co. v. Darel Group U.S.A.

Inc., 253 F.Supp.2d 578, 583 (S.D.N.Y. 2003). "Under New York law, the…elements of a fraud claim must be shown by clear and convincing evidence." Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006).

Even at the pleading state, "[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit "has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (citations omitted). This requirement "must be met even in suits in which subject matter jurisdiction is based, as here, on diversity of citizenship and in which state law controls the elements of the fraud claim." Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007). The requirements of 9(b) apply to affirmative defenses alleging fraud. Yurman Design, Inc. v. Chaindom Enterprises, Inc., 2002 WL 31358991, at *2 (S.D.N.Y. Sept. 30, 2002); Park & Lexington 25th Street Corp. v. Federal Ins. Co., 1995 WL 217552, at *1 (S.D.N.Y. Apr. 13, 1995). At the summary judgment stage, a party must come forward with evidence to support the particularized allegations of fraudulent inducement.

As stated *supra*, Plaintiff has made out a *prima facie* case that the Guaranty is valid and enforceable. The burden now is on the Bonannos to show that there exists a genuine issue of material fact as to why Plaintiff should not have judgment against them. In meeting this burden, "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

The Bonannos have not met this burden regarding their claim of fraudulent inducement. Nowhere in the record is there any evidence to support the Bonannos' contention that they were fraudulently induced to execute the Forbearance Agreement.

In the affidavit of Nicholas Bonanno (hereinafter "Bonanno Affidavit"), no facts are alleged regarding the alleged fraudulent inducement; there is only the conclusory statement, "[T]hat the Forbearance Agreement dated April 16, 2008 is void and unenforceable, because Plaintiff and its predecessor-in-interest fraudulently induced the Bonannos to execute that document." (Bonanno Affidavit ¶9C).

In their brief opposing Plaintiff's motion, the Bonannos do no more than repeat this bare, conclusory statement. They do not identify a single speaker, a single statement, or a single action taken by Lehman Brothers, Plaintiff, or any Lender Party that fraudulently induced them to execute the Forbearance Agreement.

On a motion for summary judgment, where a party may not rest on conclusions but must offer evidence to support a claim, this lack of evidence is fatal.

In the brief opposing dismissal of their counterclaims (Docket No. 40), the Bonannos devote several pages to discussing some scheme involving the Loan and the Guaranty. However, they offer no evidence to support the allegations in the brief. A brief is not evidence, and the Bonanno Affidavit, which is (or ought to be) evidence, says nothing about the so-called scheme.

Furthermore, this brief barely mentions the Forbearance Agreement, except to say, "Lehman Brothers induced the Bonannos and Middle Mountain to execute the Forbearance Agreement as a component of the same fraudulent scheme described above." (Id. at 19). In no way do the Bonannos explain how the Forbearance Agreement fits in with the scheme they describe. They fail to identify a speaker or a specific concrete statement or action, made on a specific day, that constituted a fraud. Nor have they explained how they relied on the unidentified fraudulent representations or why their reliance was reasonable.

Defendants have failed to raise a genuine issue of material fact with regards to their claim of "fraud.". The third affirmative defense—that the Forbearance Agreement is void and unenforceable—must be and is dismissed.

(ii).  The Forbearance Agreement precludes the Bonannos' first, second, and fourth affirmative defenses

Of the Bonannos' affirmative defenses, the first, second, and fourth involve claims about events that occurred before the parties entered into the Forbearance Agreement. The Bonnanos have waived their right to these defenses.

"A release is a type of contract and is governed by contract law. Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not the product of fraud, duress, or undue influence." Hummel v. AstraZeneca LP, 575 F.Supp.2d 568, 570 (S.D.N.Y. 2008); see also Difilippo v. Barclays Capital, Inc., 552 F.Supp.2d 417, 426 (S.D.N.Y. 2008); Skluth v. United Merchants & Mfrs., Inc., 163 A.D.2d 104, 106 (N.Y. A.D. 1st Dept. 1990). "An unconditional

7

waiver of defenses is valid and enforceable when entered into voluntarily." Export-Import Bank
of U.S. v. Agricola Del Mar BCS, 536 F.Supp.2d 345, 350 (S.D.N.Y. 2008).

The Bonannos do not contest that the Forbearance Agreement was negotiated and
reviewed by counsel prior to the Defendants signing the document. The Bonnanos do not dispute
that they signed the Forbearance Agreement, or that they were represented by counsel during the
negotiation of the Agreement. Their counsel reviewed the Agreement before the Bonnanos
signed it, and all negotiations between the Defendants and Lehman regarding the Agreement
were conducted by counsel for each party. (Pl.'s Rule 56.1 Stmt. ¶¶12-14). Nowhere do they
claim that they unknowingly or involuntarily entered into the Agreement.

Section 5.01, titled "Release and Covenant Not to Sue Lender Parties," clearly and
unambiguously states that Defendants release the Lender Parties (including Plaintiff, as assignee
of Lehman), from any and all of their defenses relating to the Loan that they have up to and
including the date on which they signed the Agreement (the Effective Date—April 16, 2008).
(Forbearance Agreement §5.01). The Bonannos' first, second, and fourth affirmative defenses
all relate to events that occurred prior to the effective date of the Agreement. For example, the
first affirmative defense alleges fraud in the signing of the Loan and Guaranty, which took place
on July 13, 2006, nearly two years before the execution of the Forbearance Agreement. The
second affirmative defense alleges that Lehman breached the Loan prior to default by the
Borrower. Borrower defaulted on August 1, 2007, and so any alleged breach by Lehman would
have occurred prior to the execution of the Forbearance Agreement. Finally, the fourth
affirmative defense—that Lehman became a co-venturer or partner of the Borrower and the
Bonannos—necessarily involves events that would have taken place prior to the Forbearance
Agreement.

The release in the Forbearance Agreement is enforceable, so the Bonannos' first, second,
and fourth affirmative defenses are precluded by the doctrine of release.

C. The Bonannos' Request for Additional Discovery Under Rule 56(f)

The Bonannos contend that they should be permitted to conduct additional discovery
before their affirmative defenses are dismissed. They rely on Federal Rule of Civil Procedure
56(f), which reads:

> If a party opposing the motion [for summary judgment] shows by affidavit that,
> for specified reasons, it cannot present facts essential to justify its opposition, the
> court may: (1) deny the motion; (2) order a continuance to enable affidavits to be

obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue
any other just order.

Fed. R. Civ. P. 56(f).[4]

A district court's decision whether to grant a motion for a continuance under Rule 56(f) is
discretionary. *See e.g.* Alcantara v. City of New York, 2009 WL 1767624, at *13 (S.D.N.Y.
2009). The Second Circuit has established a four-part test for evaluating the sufficiency of an
affidavit submitted pursuant to Rule 56(f). The affidavit must include, "1) the nature of the
uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and
2) how those facts are reasonably expected to create a genuine issue of material fact; and
3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were
unsuccessful." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926
(2d Cir. 1985).

"Defendant's Rule 56(f) affidavit must establish a reasonable expectation that the
proposed discovery will provide evidence to support the insufficient elements of his affirmative
defenses." Continental Airlines, Inc. v. Lelakis, 943 F.Supp. 300, 310 (S.D.N.Y. 1996). Rule
56(f) is designed to allow a party to fill in evidentiary gaps in support of its claims, not engage in
a 'fishing expedition' or search for evidence that might provide a claim. *See* Paddington Partners
v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) (collecting cases).

The Bonnano Affidavit does not meet the standard for Rule 56(f) relief. The affidavit,
though claiming to describe facts expected to be established through discovery, merely states,
"[F]acts supporting the Defendants' affirmative defenses will be obtained through depositions,
interrogatories, requests for production, requests for admissions and other discovery devices."
(Bonnano Affidavit ¶10). The affidavit does not state specifically what facts are sought from the
plaintiff. As established *supra*, the only affirmative defense that was not necessarily wiped out
by the Forbearance Agreement is the claim that the Bonannos were fraudulently induced into
executing that Agreement. The Bonnano Affidavit fails to explain why additional discovery is
needed to support that claim, since presumably the Bonannos know what they were told (and by
whom) that induced them to enter into the Agreement.

---

[4] In 2007, the language of Rule 56(f) was changed as part of the general restyling of the Rules of Civil Procedure.
Defendants' Brief and much of the caselaw refers to the previous language of the Rule; however, as the 2007
changes were intended to be stylistic only, this does not affect the analysis. *See* Advisory Committee Notes, Fed. R.
Civ. P. 56.

A conclusory accusation accompanied by a generalized request for additional discovery is the type of fishing expedition under 56(f) disfavored by the courts. *See* Paddington, 34 F.3d at 1138. Having already failed to come forward with evidence supporting their affirmative defenses, the Bonannos cannot simply reassert those defenses generally in an affidavit and claim that if established through further discovery, the defenses will create a genuine issue of material fact. They must provide some sort of indication of the facts they are seeking and how their proposed discovery will support those facts. Burlington Coat Factory, 769 F.2d at 926.

Further, the Bonanno Affidavit contains no mention of any efforts by the Bonannos to obtain the 'facts' they seek, or why those efforts were unsuccessful. In fact, it appears that the Bonannos have made no efforts to conduct any discovery in this case, despite an endorsed letter entered by the Court on September 26, 2008 informing the Bonannos' counsel that, "[B]y the time you show up [for a scheduled pre-trial conference] your 6 months to take discovery will be over, so I hope you are starting now—do not wait for December." (Docket No. 34). While the Court stayed discovery on October 24, 2008 pending its ruling on Plaintiff's motion to dismiss counterclaims, that motion was decided December 10, 2008 (Docket No. 49). This means that for close to four months—from the time the Bonannos filed their Amended Answer on August 27, 2008, to the October 24 stay of discovery, and then from the December 10 decision until the Bonannos' response to the summary judgment motion—the Bonannos have not attempted to obtain any discovery in this case.

While it is true that "failure to comply with the third and fourth requirements is not automatically fatal to a Rule 56(f) affidavit", Paddington, 34 F.3d at 1139, the failure in this case to attempt to conduct any discovery or to explain why no attempts were made does weigh in favor of denying Rule 56(f) relief. *See* id. ("Requests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored, and [the party opposing summary judgment] has offered very little in the way of support for its claim that its access to discovery was denied or diligently pursued.").

This is not a case where the Bonannos have had no opportunity to conduct discovery, or where their attempts at discovery have been thwarted or delayed by opposing parties. The fact that the Bonannos have not attempted any discovery so far, coupled with the lack of any specific facts named in the Bonanno Affidavit that discovery would be expected to establish, lead to the

conclusion that allowing further time for discovery would not show the existence of any genuine issues of material fact.

    D. The Estate of Tamera R. Jenkins

    The Estate of Tamera R. Jenkins did not respond to Plaintiff's motion for summary judgment, and is in default. Allen Jenkins is the personal representative of the Estate. Jenkins is in bankruptcy and this action is stayed as to him personally. However, it is not stayed as to the Estate or as to Jenkins in his capacity as personal representative of the Estate, as far as the Court knows.

    The record reveals that Tamera Jenkins was also a guarantor of the Note. The Estate is liable on the Note. Thus, Plaintiff's motion for summary judgment is granted on default.

**IV.    Conclusion**

    MMAZ has sufficiently established a *prima facie* case for summary judgment on the Guaranty. In turn, the Bonannos have not made a showing that there are any genuine issues of material fact, nor have they shown that they should be entitled to conduct further discovery under Rule 56(f). For the foregoing reasons, plaintiff's motion for summary judgment against the Bonannos and the Estate of Tamera Jenkins is GRANTED. Plaintiff shall submit a proposed judgment within 5 days. Once judgment is entered as to the Bonannos and the Estate of Tamera Jenkins, the Clerk of the Court will place this action on the suspense calendar until Allen Jenkins' bankruptcy is concluded.

    This constitutes the decision and order of the Court.

Dated: September 17, 2009

_____
U.S.D.J.

# EXHIBIT K
## (Middle Mountain Claim)

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Lehman Brothers Holdings, Inc. | Case Number:<br>08-13555 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Middle Mountain 156, LLC**

Name and address where notices should be sent:

Franklyn D. Jeans, Esq.
4800 N. Scottsdale Road, Suite 6000 Scottsdale, Arizona 85251

Telephone number:
(480) 429-3038

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $    76,004,383.40

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**    Loss of profit/lender default
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property:$_____    Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as ~~~~ssory notes, purchase orders, invoices, itemized statem~~~~    security agreements.
You may also attach a summary.    ~~~~rfection of
a security interest. You may als~~~~    ~~~~tle.)

DO NOT SEND ORIGINAL DC
SCANNING.

If the documents are not availabl~~~~    ~~~~s explain:

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000002974

OYED AFTER

Date:
02/20/2009

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*[signature]*

FOR COURT USE ONLY

FILED / RECEIVED

FEB 2 3 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/07) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

_____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# EXHIBIT A

::ODMA\PCDOCS\BGD\45069\1

## Proof of Claims - Middle Mountain 156, LLC

| | | |
|---|---|---|
| Appraised Value with water and sewer entitlements | | $72,000,000.00 |
| Interest | 203 days, prorated from date of default | $4,004,383.40 |
| Total Claim Amount | | $76,004,383.40 |