Hearing Date and Time: May 16, 2012 at 10:00 a.m. (Eastern Time)
Response Deadline: May 15, 2011 at 4:00 p.m. (Eastern Time)

Craig J. Albert
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, NY 10022
Tel.:   (212) 209-3050
Fax:   (212) 371-5500
*Attorneys for Edward J. Agostini Living Trust
Dated May 12, 2000, Sylvia Agostini Living
Trust Dated May 12, 2000, and
Edward J. Agostini and Sylvia Agostini
as Joint Tenants with Right of Survivorship*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                              Chapter 11

LEHMAN BROTHERS HOLDINGS INC., et al.,                              Case No. 08-13555 (JMP)

                           Debtors.                                  (Jointly Administered)

------------------------------------------------------------x

## REPLY OF THE AGOSTINI PARTIES IN FURTHER SUPPORT OF THEIR MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 362

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Agostini Parties respectfully submit this reply in further support of their motion for relief from the automatic stay and for an order directing Debtor Lehman Brothers OTC Derivatives, Inc. ("LOTC") to release and return certain nonestate property, and respectfully represent as follows:

1.   The Debtor is not doing its job. The Agostini Parties' properly-filed claims against LOTC have not been scheduled for a hearing, and the Agostini Parties have had no communications whatsoever with LOTC regarding the closeout of the Forward Contracts. While

136335

other creditors have received substantial initial payments under the Reorganization Plan, the Agostini Parties have received nothing and LOTC has unilaterally adjourned a hearing on its objection without setting a date. Far from resolving these claims, LOTC seems to be delaying them.

2. Since the Agostini Having had no communication whatsoever with respect to the collateral at issue, they sought to compel delivery. LOTC's Objection marks the first time in which LOTC has revealed in any filing that the Agostini Parties' UPS-B shares and the associated dividends are not in LOTC's possession.[1] (It first raised the issue during settlement negotiations *after* the Agostini Parties made their motion, and the suggestion in LOTC Objection ¶ 7 that the Agostini Parties' motion was made with knowledge of the arrangement between LBI and LOTC is false.) Regardless of whether or not that assertion is true, it in no way detracts from the fact that LOTC has constructive possession of the Agostini Parties' property, and that it does not have a superior right to the Agostinis' property that LOTC placed into the hands of LBI under the terms of some agreement that it has not chosen to reveal here. LOTC cites no authority for the proposition that it cannot be forced to turn over property that it has placed in the hands of another, and there is no reason to infer such a rule. Constructive possessors are subject to turnover orders under 11 U.S.C. § 542 and there is no logical reason why the same result should not apply when the debtor is in constructive possession of a creditor's property. *See, e.g., In re De Berry*, 59 B.R. 891, 895 (Bankr. E.D.N.Y. 1986) (actual or constructive possession by defendant required under section 542); *In re Gailey, Inc.*, 119 B.R. 504, 514 (Bankr. W.D. Pa. 1990) (same).

---

[1] LOTC's Objection does not include any documentation of the transfer of the shares to LBI or of the status of those shares in the SIPA proceeding.

2

3. LOTC does not dispute the Agostini Parties' analysis of their rights under the relevant contract documents. LOTC necessarily concedes that UPS B shares and the dividends are the Agostini Parties' property. LOTC also does not dispute the analysis showing that the Forward Contracts were executory at the time that LOTC's Chapter 11 case was filed, and that the obligations under the Forward Contracts became fixed in May 2011. With those property rights firmly fixed in the hands of the Agostini Parties, LOTC instead seeks to shift blame to Lehman Brothers Inc. ("LBI"), an entity with which the Agostini Parties have no relationship, while maintaining the fiction that (as between LOTC and LBI) the UPS B shares and dividends actually belong to LOTC.

4. LOTC's Objection is nothing but a wholesale attempt to claim the Agostini shares and the dividends for itself. It does so by a roundabout process. First, LOTC claims that the UPS B shares are no longer in its possession because they have somehow been placed with LBI and that the dividends associated with those shares have been retained by LBI (Objection ¶ 9). Second, it argues that it filed its own claim in the SIPA proceeding with respect to those shares and dividends (Objection ¶¶ 5, 10). Third, it claims that it alone controls the proceedings both with respect to claims against LOTC (under the Procedures Order and the applicable orders regarding resolution of claims) and that the ultimate resolution of LOTC's claim to the UPS B shares and dividends held by LBI depends on what LOTC receives in its own capacity as a customer of LBI (Objection ¶ 10). It recognizes no right of the Agostini Parties to participate in the SIPA action or to participate in any settlement discussions with the SIPA Trustee. It recognizes no obligation to account to the Agostini Parties for whatever it receives in that action. At best, therefore, it demands the right refuse the Agostini Parties a hearing on the objections lodged against the Agostini's claims and the right to claim for itself anything that it receives in

the SIPA action in respect of the UPS B shares and dividends that belong to the Agostini Parties but were delivered by LOTC to LBI. Nothing in the contracts or in the law permits that result.

5.   This is not, as LOTC claims, "a mere academic exercise". (Objection ¶ 10). The Agostini Parties have filed claims against LOTC and against LBHI. The debtors have objected to those claims but have refused to bring the claims up for a hearing. If the Court allows those claims and the Agostini Parties receive payments on those claims, then those payments can credited against the value of any securities or payments that are ultimately made by LBI to LOTC, with the balance going to the Agostini Parties. If the Court does not allow those claims, then all of the shares held by LBI ought to go to the Agostini Parties, and not to LOTC. One thing, however, is certain: LOTC has no right to treat the UPS B shares as its own, especially if claims of LOTC in its capacity as a customer are being treated in the SIPA proceeding in any way different from the claims of customers who are not Lehman affiliates.

6.   LOTC argues in its Point B that section 362(d)(2) does not apply to the instant dispute. The statute says otherwise. Section 362(a) provides the general stay language with respect to actions against the debtor and actions against certain designated property. Section 362(d)(2) specifies certain conditions under which that stay may be lifted as to an "act against property under subsection (a)". Among the types of stay listed in section 362(a) are those preventing

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

11 U.S.C. § 362(a).

4

7. Section 362(a) extends to a variety of actions taken against property "of" the estate as well as property "from" the estate. Here, LOTC now contends that it has filed a claim against LBI in the SIPA proceeding claiming that the UPS B shares and the dividends are *LOTC property*. In essence, it asserts that those shares and money are property of the estate. And if it disclaims that ownership interest, it nevertheless seeks to exercise dominion over that property by filing a claim against LBI on its own behalf, when in fact those items are actually the property of the Agostini Parties. Under that interpretation, it is property to be obtained "from" the estate.

8. LOTC argues that relief under section 362(d)(2) is available only to "enforce a security interest in a debtor's property". (Objection ¶ 14). That language does not appear in any statute or case cited by LOTC. Although motions under section 362(d)(2) typically arise in foreclosure proceedings (because in those cases a debtor holds property in which a creditor has a competing security interest), the statute is not limited. The cases do not state that the section is *only* available in foreclosure actions. Indeed, cases that do not involve foreclosure present a stronger argument for lifting the stay, since the movant seeks possession alone, and not possession for the purpose of satisfying a debt.

9. There is no argument in favor of LOTC retaining the property. LOTC does not argue that it has "equity" in the UPS B shares or dividends, even though it has filed a claim against LBI based upon those shares. LOTC does not argue that the UPS B shares and dividends are necessary to an effective reorganization. In sum, as between the Agostini Parties (which own the shares and the dividends) and LOTC (which owns nothing), it is the Agostini Parties who are entitled to the property, and the automatic stay must be lifted in order to allow them to access to that property.

10. LOTC's argument with respect to lifting the stay under section 362(d)(1) – which contemplates competing interests of the debtor and the movant in property – is utterly irrelevant.

5

There are no competing interests, and therefore no need to engage in a "for cause" balancing inquiry. Section 362(d)(1) is an alternative procedure to section 362(d)(2), not a supplemental procedure. The Agostini Parties do not seek relief under that section and LOTC's argument is therefore misplaced.

11.    Finally, LOTC argues in its Point D that the motion is procedurally defective because the relief sought requires an adversary proceeding. Even if an adversary proceeding were required, the Court must lift the stay in order to permit the adversary proceeding to commence. To the extent that there are any issues that need to be resolved in such a proceeding, the Agostini Parties can certainly file such a proceeding. We submit, however, that the record as to the Agostini Parties' undisputed ownership of the property at issue will present no factual issue that needs to be resolved in a plenary adversary proceeding.

## CONCLUSION

WHEREFORE the Agostini Parties respectfully requests that the Court grant the relief requested herein and (i) direct the Debtor to deliver immediately to the Agostini Parties' a total of 3,592 UPS-B shares and $209,687.79, plus interest and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
       May 14, 2012

Respectfully submitted,
REITLER KAILAS & ROSENBLATT LLC
/s/ Craig J. Albert

By: _____
Craig J. Albert
885 Third Avenue, 20th Floor
New York, New York 10022
(212) 209-3050
*Attorneys for Edward J. Agostini Living Trust Dated May 12, 2000, Sylvia Agostini Living Trust Dated May 12, 2000, and Edward J. Agostini and Sylvia Agostini as Joint Tenants with Right of Survivorship*

6