**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                :

                                :

     In re:                     :     Chapter 11

                                :

LEHMAN BROTHERS HOLDINGS INC., et al.,  :     Case No. 08-13555 (JMP)

                                :

             Debtors.       :     (Jointly Administered)

                                :

-------------------------------------------------------------x

### TENTH INTERIM APPLICATION OF FTI CONSULTING, INC. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012

| | |
|---|---|
| Name of Applicant: | <u>FTI Consulting, Inc.</u> |
| Authorized to Provide Professional Services to: | <u>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS, INC., et al.</u> |
| Date of Retention: | <u>September 17, 2008</u> |
| Period for which compensation and reimbursement is sought: | <u>October 1, 2011 to March 6, 2012</u> |

Amount requested in this fee app [(a)]
    Compensation requested:    <u>$11,296,688.79</u>
    Expense reimbursement requested:  <u>$48,337.14</u>

This is an (a): __X__ Interim ____Final Application

---

[(a)]  Refer to Exhibit C for previous fee requests.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                      :

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

---------------------------------------------------------------x

## TENTH INTERIM APPLICATION OF FTI CONSULTING, INC. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012

FTI Consulting, Inc. ("FTI" or "Applicant"), as financial advisor to the Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc., et al, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors" or the "Company") and, together with their non-debtor affiliates, ("Lehman"), hereby submits its tenth application pursuant to 11 U.S.C. §§330 and 331 for an interim allowance of compensation for services rendered and for reimbursement of expenses incurred in these cases.

## INTRODUCTION

1.      By this application, FTI seeks a tenth interim allowance of compensation for professional services rendered as financial advisors to the Committee for the period October 1, 2011 through and including March 6, 2012 (the "Tenth Interim Period") in the amount of $6,296,688.79 of fees, representing 11,599.2 hours in professional services, $5,000,000

representing the Completion Fee and actual and necessary expenses of $48,337.14. In support of this application, the Applicant represents as follows:

2.      This application is submitted pursuant to the terms of the Fourth Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses for Professionals and Committee Members dated April 14, 2011 (the "Administrative Fee Order"). FTI is seeking the interim award and the full payment, without any holdback of fees, of $11,296,688.79 in fees and $48,337.14 for reimbursement of its expenses relating to services rendered on behalf of the Committee during the Tenth Interim Period.

## BACKGROUND

3.      On September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries (collectively the "Debtors") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to 1107(a) and 1108 of the Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

5.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6.    By an Order dated November 21, 2008 ("Retention Order"), the United States Bankruptcy Court for the Southern District of New York authorized and approved the Committee's retention of FTI *nunc pro tunc* to September 17, 2008. FTI also filed its First Supplemental Affidavit of Michael Eisenband in Support of Application for an Order for Retention of FTI Consulting, Inc. as Financial Advisors for the Official Committee of Unsecured Creditors on January 23, 2009, a Second Supplemental Affidavit on April 6, 2009, a Third Supplemental Affidavit on June 19, 2009, a Fourth Supplemental Affidavit on April 15, 2010, a Fifth Supplemental Affidavit on November 23, 2010, a Sixth Supplemental Affidavit dated April 29, 2011 and a Seventh Supplemental Affidavit dated March 7, 2012.

7.    On December 6, 2011, the Court entered an Order confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. And Its Affiliated Debtors. The Plan became effective on March 6, 2012.

8.    On April 17, 2012, the Debtors completed their first distribution to unsecured creditors.

9.    Under FTI's retention order, FTI shall be paid monthly for the services it renders on an hourly basis according to FTI's customary hourly rates. In addition, FTI shall receive a Completion Fee of $5.0 million which will be considered earned and payable, subject to Bankruptcy Court approval, upon the earliest occurrence of the following: (a) the confirmation of a plan of reorganization or liquidation; (b) the sale or liquidation of all or substantially all of the Company's assets; and (c) the conversion of the case to a case under Chapter 7 of the Bankruptcy code (in which event the Completion Fee, to the extent approved, will be payable in the same order of priority as other allowed Chapter 11 administrative expenses). As the Debtors

Modified Third Amended Plan was confirmed on December 6, 2011, the Completion Fee is now earned and payable.

      10.    FTI has expended a considerable number of hours on behalf of the Official Committee of Unsecured Creditors for the last three-plus years. The sheer magnitude of matters in these Chapter 11 cases has required substantial effort on the part of the Committee and its professional advisors to address the many issues that were presented by these complex cases. The Committee and its advisors have also worked cooperatively and productively with the Debtors over the years in order to bring about the best results for creditors in these cases. We were intimately involved in many key focus areas for the Debtors and the Committee, including: (A) Preservation, Management and Monetization of Assets, (B) Administration of the Estates, (C) Assistance to the Debtors, (D) Mitigation/Maximization of Claims & Recovery, and (E) Consensual Plan Process. Some of FTI's significant achievements and contributions during the case, which warrant approval of the Completion Fee, include:

A. **Preservation, Management and Monetization of Assets** – FTI has been significantly involved in both the real estate and derivatives asset work streams, working alongside the Debtors to monetize assets, determine the benefits of holding vs. selling assets (and the corresponding impact on creditor recoveries), and minimize claims.

  a. **Real Estate**

    o  FTI provided a valuable independent "portfolio level" perspective to complement the detail perspective that the Debtors maintained when managing the Real Estate Portfolio ("Portfolio"). FTI independently assessed the Debtors' discrete plans and potential creditor impact for (i) the

individual assets making up the $23.1B Portfolio and (ii) the real estate collateralizing a further $20.1B of financial assets.

o  Specifically, FTI:

   i.  Acquired in-depth knowledge of the Portfolio, including an understanding of the intricacies of each asset, the role/ relationships with sponsors/ co-lenders and local market dynamics.

   ii. Visited and toured many of the major US and European real estate investments in-person to obtain a first-hand appreciation of the challenges that encumbered the Portfolio and prohibiting its immediate liquidation.

   iii. Reviewed and/ or provided input regarding operational and financial plans for >90% of the underlying real estate assets to harvest longer-term value for creditors; and

   iv. Developed independent financial models to analyze time-based return on investment (i.e. IRR), hold versus sell economics, and financial restructuring implications on returns of cash to creditors.


o  Examples of where FTI's input increased value to the estate include:

| Asset (1) | Description / Background |
|---|---|
| A | • FTI proposed an alternative strategy to investing significant additional Estate dollars in developing the property.<br><br>• FTI encouraged the Estate to go to market as a "for sale" property, resulting in bids that were well in excess of the Debtors' estimate of the property's current market value. |
| B | • In order to avoid loss of the Estate's mezzanine investment in this asset, FTI introduced the concept of selling the position to a party who was prepared to engage in a strategy that the Estate was reluctant to follow (i.e. filing involuntary bankruptcy against the owner). |
| C | • FTI did not believe it was prudent to make an additional investment in the property which led the estate to consider alternatives for funding the investment via a public private partnership. |
| D | • FTI advised the Committee to invest preferred equity to provide additional time to lease up and stabilize the property. Based on current market pricing, the new investment will likely result in future incremental proceeds upon sale of the property. |
| E | • FTI advised the Committee to forgive certain debts of the partnership in order to obtain the Borrower's consent to foreclose upon the property, resulting in unencumbered control of the property to the Estate. |
| F | • In order to reduce risk, FTI provided feedback on the Debtors' proposal to include multiple JV partners in any solution, as opposed to contributing all assets to one JV platform. |
| G | • FTI worked with the Debtors on a creative solution to "table finance" mortgages for buyers of condominiums at above market rates, which helped Lehman diversify risk, earn income, and reduce future carry costs on the unsold units. |
| H | • FTI advised the Committee to support an investment of additional capital to re-margin third party debt to prevent foreclosure by the senior lender and to stabilize the liquidity profile of the portfolio. Current valuations indicate that Lehman will recover significant value from the assets, versus minimal zero return under a foreclosure scenario. |

| Asset (1) | Description / Background |
|---|---|
| I | • FTI advised the Committee to support an additional investment in the property to purchase the senior loan that encumbered the properties.<br>• FTI recommended that the Debtors should utilize this property's management team for other assets in the Lehman portfolio to benefit both Lehman's investment as well as improve the management of other assets. |
| J | • FTI introduced the idea to the Committee of making substantial investments in this asset in order to preserve and enhance enterprise value and ultimate return to creditors. |

(1) Specific project names withheld for confidentiality purposes.

    o   FTI believes that our in depth involvement working with the Debtors on the real estate portfolio resulted in, or will result in, hundreds of millions of dollars in incremental value.

**b. Derivatives**

    o   FTI served a value enhancing control and oversight function for the Derivatives portfolio. FTI attended and participated in regular settlement adjudication committee ("SAC") meetings (sometimes daily) with the A&M and Lehman Derivative teams in connection with the analysis of proposed derivatives settlements. FTI was involved with analyzing both the Lehman Special Purpose Vehicle ("SPV") recoveries and the review of numerous derivatives portfolios of counterparties that have been designated for Alternative Dispute Resolution ("ADR"). In connection with derivative claim objections, FTI has reviewed the valuation of the underlying derivatives portfolio and appropriateness of closeout process. In addition,

FTI was involved in reviewing valuations of numerous intercompany and "big bank" derivative relationships.

o   FTI also loaned three employees on a full time basis to work directly with the Debtors on the derivatives analyses.  The first worked in the Debtors' front office and was focused on the valuation of interest rate derivatives. The second worked on the Debtors' "Big Bank" derivative team and was focused on the reconciliation and valuation of Big Bank derivative populations.  The third assisted the Debtors' intercompany team with the analysis of intercompany derivative settlements.  Please refer to Section C. Assistance to the Debtor for further detail on these employee's contributions.

o   Through its review process, FTI worked to identify arguments that would (i) increase the value of receivables to the Estate and/or (ii) reduce the level of claims against the Estate.  FTI added incremental value through:

    i.   Identifying commercially unreasonable valuations

    ii.  Rejecting proposed settlements that included excessive credit discounts

    iii. Pushing for greater value for proposed settlements where FTI believed there was too significant of a discount for legal risk included in the settlement.

    iv. Convincing Debtors to pursue higher default interest when appropriate

    v. Rejecting guarantee claims in the case of non-executed guarantees

    vi. Identifying cases of potential improper termination

    vii. Discovering errors in the counterparty's market quotation process and/or FX conversion date

    viii. Finding various errors in settlement value calculations

    ix. Contributing to the formulation of note purchase strategies to maximize recovery for certain special purpose vehicles ("SPV").

o FTI believes that our in depth involvement with the derivatives portfolio resulted in incremental value to the estate of at least $80 million.

o Further, FTI added value by (i) reducing reliance on outside counsel and advisors needed with respect to ADR sessions; and (ii) forcing the Estate to follow a disciplined review process, as settlements were subject to a critical review by FTI.

B. **<u>Administration of the Estates</u>** – FTI has played a significant role in providing a creditor perspective to various financial and administrative functions including:

    a. **Investment of excess cash**

    o FTI worked with the Debtors to ensure that excess cash was invested in a safe and reasonable manner in order to balance the need for safety of funds

with the creditors' desire for investment return on billions of dollars. In addition, FTI developed a cash advances model, ultimately used by the Debtors, to track the intercompany advances and the cash interest due on such advances.

**b.    Financial reporting/Monthly Operating Reports ("MOR's")**

o    FTI met with the Debtors to review drafts of the MOR's before they were filed to ensure the disclosures were informative and met the creditors' desire for information.

**c.    Cost allocation methodology**

o    Since the beginning of the bankruptcy, LBHI was funding the overhead and professional fee costs of all of the Lehman Debtors and Non Debtor entities under A&M's control. FTI worked closely with the Debtors to establish a cost allocation methodology to fairly allocate expenses from LBHI to the other subsidiaries. FTI assessed the methodology periodically as inventory, headcount and focus shifted and provided recommendations to the Debtors to readjust the methodology (e.g. include additional legal entities, include liabilities in inventory balance, use square feet for rent allocation, etc.).

**d.    Employee Matters**

o    FTI played a significant role in the development of the compensation structure for the Debtors' employees within each of the asset management and back office teams including base salary levels, annual salary increases, incentive bonus targets, and the development of appropriate metrics for

the incentive bonuses. The work also entailed monitoring the Debtors'

employee staffing model to ensure staffing levels were appropriate and

commensurate with the numerous tasks involved in liquidating the estate.

We also monitored compliance with the incentive bonus plans to ensure

that the predetermined performance metrics were achieved before bonus

payments were approved. FTI worked closely with the Debtors to balance

the need to retain a motivated workforce at a liquidating company, with

the creditors desire to rationalize the cost structure.

C. **Assistance to the Debtor** – In addition to the areas covered above, FTI provided

further assistance to the Debtors/A&M in many other work-streams, including:

   a. **LBI Allocation Motion -** Given FTI's experience with accounting and

   regulatory issues for broker/dealers, FTI was asked to represent both the

   Committee and Debtors in investigating and performing due diligence on the

   proposed allocation of property of the LBI estate as presented in the

   Allocation Motions. The Allocation Motions sought to allocate approximately

   $14.0 billion from LBI's general estate to a segregated bank account

   containing funds exclusively for the benefit of LBI's brokerage customers.

   FTI provided alternative methodologies for Reserve Formula calculations that

   were deemed more appropriate and fair.   Of the approximately $14.0 billion

   sought by the Trustee, FTI concluded that approximately $7.2 billion should

   remain in the general estate, of which the Trustee has agreed to approximately

$3.3 billion so far. FTI is also assisting with the potential litigation of the remaining unresolved issues.

b.  **Additional Resources** – At the Debtors' request, numerous FTI employees were "loaned" on a full time basis to assist the Debtors' asset and back office teams in various projects.

o   Information Technology - FTI provided a team of 5-15 consultants to work with the Debtors' and A&M's data preservation team in identifying, acquiring, and analyzing data held within the LBHI systems. FTI was involved with application and database preservation; reviewing and cataloging contents of LBHI legacy databases; acquiring and analyzing all data owned and accessed by custodians; and the aggregation, normalization and analysis of data associated with collateral investigations. FTI designed and built approximately 12 parsing and search tools and managed and analyzed over 400,000 backup tapes (including reconciling this data to 20 million text files). FTI was also involved with the continued migration of more than 3 terabytes of data which encompassed over 400 applications and 200 databases.

o   Intercompany Accounts – FTI provided four employees to assist the Debtors with intercompany work streams. The Debtors undertook a tremendous effort to reconcile and settle several thousand intercompany derivative and financing trades (stock lending and borrowing and repurchase and reverse repurchase transactions) post bankruptcy. Two individuals from FTI assisted

LBHI personnel in the reconciliation and settlement of these derivatives and financing trades and with reporting and special projects. The two other individuals assisting with intercompany projects helped develop the data needed for the negotiations and settlements with foreign affiliates; including the roll forward of intercompany interest accruals and the calculation of foreign currency exchange adjustments from September 14, 2008 to the respective filing dates of each Debtor entity.

o   Derivatives - FTI had one individual who worked directly with the Debtors' "Big Bank" derivatives settlement team. As part of the review of proposed derivative settlements, he identified any termination date issues, interest calculation errors, and commercially unreasonable valuations within the settlement amounts initially proposed by the Debtors. He worked directly with the estate's Derivative Management team on the unwinding of the estate's derivative portfolios of major counterparties including Bank of America, Credit Suisse, and JP Morgan to maximize recovery for the estate. This individual was also involved in preparation of the "Netting Machine" which allowed the Estate to propose and finalize a blanket settlement of the derivative claims with 8 out of the top 13 Big Bank counterparties as part of the Settlement Framework proposal.

o  Transition Services Agreement ("TSA")/LAMCO – FTI had one individual at the Debtors assisting A&M with the TSA and the development of the LAMCO model.

   i.  TSA - FTI played a significant role in identifying and negotiating the services required under the TSA with Barclays.  Along with Barclays, FTI created the initial schedule to document the services, participated in meetings to validate the services and ultimately assisted in coming to agreement on the final schedule of services that were needed.   FTI also worked with a team to help benchmark the cost of such services in preparation for pending TSA invoices and to support negotiations over pricing and allocation methodologies.   FTI assisted the Debtors in transitioning dependency on the Barclays Transition Services Agreement ("TSA") to an either an outsourced provider, LBHI personnel, or to wind-down the services altogether to significantly reduce costs.  FTI also led the effort to migrate LBHI off the non IT portion of the TSA services and to coordinate the migration of services for entities that spun out of LBHI, including Neuberger Berman and Venture Capital Funds.

   ii.  LAMCO – In the Fifth Interim Compensation period, the Court approved the formation of an asset management company for the Debtors, LAMCO.  FTI worked on developing the business plan for LAMCO, analyzing the asset management costs for each of the four product classes and the various functional requirements for LAMCO.

D. **Mitigation/Maximization of Claims & Recovery** – This case involved a significant amount of claims related issues which needed to be resolved in a timely and cost effective manner. Over $1.3 trillion of claims were filed against all Debtors of which $353 million was estimated to ultimately be allowed. FTI was actively involved in monitoring the claims resolution process and participating in the review of claim settlements. FTI worked with the Debtors to establish claim settlement procedures, to review omnibus claims objections in advance of filing with the court and to review and provide input on proposed claim settlements (e.g., derivatives, foreign affiliate, Main Street, third party guarantee claims related to Bankhaus, etc.). FTI's role as it related to specific claims areas included:

a. **Intercompany** – As part of the evaluation of direct intercompany claims and affiliate guarantee claims, FTI performed extensive analysis of the intercompany transactions and relationships among the Lehman affiliates. FTI created a comprehensive intercompany matrix based on voluminous detail provided by Debtor personnel. The intercompany matrix served as a vital input to the Committee's creditor recovery model and was updated numerous times for revised pre- and post-petition intercompany balances. FTI worked extensively with the Debtors' personnel to review intercompany balances and reconcile the intercompany matrix to the Debtors' monthly balance sheets and Disclosure Statements. During this process, FTI identified discrepancies that resulted in modifications to the balances.

**b. Structured Securities Claims**

o   More than 21,000 proofs of claim asserting claims of approximately $55 billion were filed against the Debtors arising from the sale of Structured Securities. Such claims arose from certain structured securities issued or guaranteed by LBHI, including Lehman Brothers Treasury Co., B.V. European Medium Term Note program. Many of these securities were complex structured notes providing that the return to investors at maturity and/or the periodic payment of interest be linked to the performance of an underlying asset or group of assets including global indices, single stocks, currencies, interest rates, derivatives, etc. Given the number of claims and the complexity of the valuation, the Debtors sought Court approval of a methodology to reconcile and value the claims. At the direction of the Committee, FTI, along with Committee Counsel, conducted an independent analysis of this methodology and any alternatives thereto. As a result of our work, and the Debtors' concurrent re-valuations of the Structured Securities, the Debtors changed the values of the claims on approximately 10% of the 3,000 Structured Securities. Upon completion of FTI' s valuation work, the Committee filed a statement to provide claimants with relevant information regarding the Debtors' valuation methodologies so that each holder could make an informed decision about whether to accept the values to be provided by the Debtors. With additional input from FTI, the Debtors amended the valuation methodology, which the Court approved on August 10, 2011.

c.  **Litigation** - In connection with forensic analyses requested by Committee

Counsel, FTI was asked to assist with the assessment of the viability of potential

litigation claims against certain parties, compute damages under various legal

theories, evaluate settlement offers related to potential avoidance actions, and

draft presentations used in settlement discussions. This included research and

analysis of issues identified from the Report of Anton R. Valukas, Examiner.  In

connection with this analysis, FTI examined numerous documents that had been

produced to the Examiner; researched relevant accounting and auditing

literature; drafted memos on various potential claims that could be brought

against third parties; computed damages under different damages theories; and

drafted presentations for and participated in settlement discussions.  The

potential litigation is still ongoing.

E.  **Consensual Plan Process** – The Committee was one of the key constituents involved

in developing the Plan of Reorganization ("Plan") construct that was ultimately

approved by the diverse constituents in this case.  Over the course of the case, FTI

worked along with Committee Counsel and other advisors to evaluate key plan issues.

The Plan was constructed as a compromise and dealt with the following primary

issues, which FTI was heavily involved with, among others:

a.  **Sub Con analysis** - The debate surrounding substantive consolidation

("SubCon") warranted detailed investigation by the Creditors' Committee and

their advisors regarding the arguments both for and against SubCon of the

Debtors and/or non Debtors.  At the direction of Committee counsel, FTI

embarked on a comprehensive analysis of the critical factors for SubCon and

undertook an extensive factual investigation focused on the hopeless

entanglement and creditor reliance arguments.  The results of our factual

investigation were integral to the formulation of a Committee proposal premised

on a global compromise.  Such proposal ultimately led to the formulation of the

Debtors' First Amended Plan.

b.  **Characterization of Intercompany Transactions** - FTI initiated and led a

detailed sample testing project with the Debtors to determine whether certain

intercompany transactions among Debtor-controlled entities were subject to re-

characterization (i.e., should be treated as equity interests rather than debt

claims).  The results of our work were utilized by Committee counsel to develop

the intercompany claim settlement embodied in the Intercompany Funding

Balance adjustment per section 6.5.c of the Debtors' Plan.

c.  **LBHI Guarantees** - In an effort to substantiate the 3rd party transaction

guarantee claims and affiliate guarantee claims filed against LBHI, FTI

undertook a detailed analysis of said claims.  FTI determined through its

analysis that, certain guarantee claims were overstated and estimated the actual

value of those claims, based largely on its review and understanding of pre-

petition intercompany balances and the nature of the guarantee, taking into

account subrogation setoff and potential litigation discounts.  FTI prepared

numerous presentations to the Committee on this topic and engaged in many

discussions with the Debtors regarding the appropriate guarantee claim estimates to be included in the Disclosure Statement.

d. **Foreign Affiliate Settlements** - FTI performed due diligence on the intercompany and guarantee claim components of proposed settlement agreements between the Debtors and foreign affiliate estates including, but not limited to, Bankhaus, Singapore, Hong Kong, Japan, Luxembourg, LBIE & UK affiliates, LBT, LBSN, and LBF. FTI reviewed and challenged the proposed settlements based on our work, which included a significant level of sample testing of intercompany derivative trades, as well as analyzing the treatment of intercompany claims arising from repurchase agreement transactions. There were a number of instances in which FTI recommended that revisions be made to the Debtors' settlement proposals. Examples of such recommendations related to the unnecessary omission of intercompany receivables, inadequate valuation of derivative trades and unapplied litigation risk. This effort resulted in a multi-billion reduction of foreign affiliate claims against Debtor entities.

## SUMMARY OF SERVICES RENDERED DURING THE TENTH INTERIM PERIOD

11.    The Debtors' chapter 11 cases have presented numerous complex issues that had to be addressed in order to preserve and maximize value for unsecured creditors. The Retention Order authorizes FTI to render essential financial advisory services to the Committee which included, but were not limited to the following services during the Tenth Interim Period:

**PCD 0800 Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee**

FTI worked with Committee counsel in the preparation and presentation of extensive materials for weekly calls with both the full Committee and the Committee co-chairs to discuss, among other things, updates on the Plan of Reorganization ("POR"), derivative positions, real estate positions, cash balances, intercompany balances, claim levels, proposed affiliate settlements, litigation, and other key issues. FTI also attended one in person meeting with the Debtor, the Committee and the new Board of Directors during this period on January 19, 2012.

**PCD 1100 LBI/SIPC Coordination and Issues**

FTI devoted time to monitoring, evaluating, and analyzing LBI's claim reconciliation process, as well as, proposed settlements. This included a review of the customer and general estate claims filed by the Debtors against LBI and related characterization, netting and priority of claims issues and a review of the capital reserve as it relates to potential asset allocations from the general estate to customer assets. FTI also analyzed LBI's claims (including repurchase claims) filed against the Debtors to determine whether there were duplicates, erroneous filings, and whether amounts should be netted down. All of this information assisted the Committee in assessing ranges of estimated recoveries on both customer and general estate claims.

Given FTI's experience with accounting and regulatory issues for broker/dealers, FTI was asked to represent both the Committee and Debtors in investigating and performing due diligence on the proposed allocation of property of the LBI estate as presented in the Allocation Motions. The Allocation Motions sought to allocate approximately $14.0 billion from LBI's general estate to a segregated bank account containing funds exclusively for the benefit of LBI's brokerage customers. FTI provided alternative methodologies for Reserve Formula calculations that were deemed more appropriate and fair. Of the approximately $14.0 billion sought by the

Trustee, FTI concluded that approximately $7.2 billion should remain in the general estate, of which the Trustee has agreed to approximately $3.3 billion so far. FTI is also assisting with the potential litigation of the remaining unresolved issues.

## PCD 1200 Cash Management

FTI reviewed the Company's cash and short-term investment position on a periodic basis. FTI attended regular meetings with Alvarez & Marsal to discuss the actual cash flow results and prepared reports to the Committee with details of the Debtors' current cash and short-term investment position. During this period, FTI performed the review of the September 2011 through January 2012 monthly cash reports and presented a summary of the cash activities to the Committee. FTI also reviewed the status of the hedging program and the cash movements related to the Company's intercompany cost allocations. These services aided the Committee in obtaining a complete understanding of the Company's cash flows by entity, and areas that needed to be evaluated further (e.g., potential capital calls, hedging opportunities, etc.) in order to ensure that sufficient liquidity was maintained.

## PCD 1800 Tax Issues

FTI's tax work was focused on the prosecution of the IRS ruling, ongoing tax examinations and providing advice regarding proposed settlements and negotiations with LBI on the allocation of prior period federal and state income tax liabilities and tax refunds. FTI also participated in weekly tax conference calls with the Debtors.

## PCD 2100 Intercompany Issues

FTI analyzed the intercompany and guarantee claim components of proposed settlement agreements between the Debtors and certain foreign affiliate estates including, but not limited to LBSNV, Japan, Hong Kong, Luxembourg and LBF.

FTI performed sample testing of intercompany derivative trades between the Debtors and LBJ, LBF, LBI and LBCC. FTI participated in meetings with the Lehman and A&M intercompany teams to discuss the reasonableness of proposed intercompany derivative settlements. FTI assisted Lehman's valuation team before and after Settlement Adjudication Committee meetings by providing (i) strategic guidance for negotiations with other Lehman entities, (ii) independent valuations of certain derivative products and assessment of proposed settlement levels, (iii) analysis of disputed issues, and (iv) feedback to Committee counsel and the Derivatives Sub-Committee, as necessary

## PCD 2300 Real Estate Matters

The Lehman Real Estate Portfolio ("Portfolio") includes positions in hundreds of financial assets encumbering properties and development projects located in North America, Europe, and Asia. The Portfolio, which has invested capital in the tens of billions of dollars, has many significant and complex projects, some of which have more than a billion invested in them individually. The investment positions that the Debtors maintain are extremely varied across all levels of the projects' capital structure.

FTI met with A&M and legacy Lehman real estate employees ("Asset Managers") on a regular basis to review mandates, proposals, and strategies aimed at maximizing recovery from the wind down of the Portfolio. The most pressing issues typically pertained to the various motions that had been filed in bankruptcy court requiring the Committee's endorsement with respect to funding certain operating shortfalls, restructuring legacy capital structures, and implementing sales/marketing procedures. Toward that end, FTI met with the Asset Managers to validate relevant property-level and overall financial assumptions used in projecting cash flows

and recoveries; and, presented its findings on a regular basis to both the Committee's Real Estate Sub-Committee and, where appropriate, the full Committee. Most notably, FTI reviewed, analyzed and presented to the real estate subcommittee the implications of the SunCal bankruptcy proceedings, the Debtors' business plan for the Ritz Kapalua hotel, and the settlement of certain repurchase transactions with third parties (including Lehman Re and Danske). FTI also completed a full and detailed review of Lehman's re-underwriting of the Portfolio, as marked December 31, 2011, to determine the validity of the Debtors' marks.

## PCD 2500 Derivatives/SWAP Agreement Issues

FTI participated in regular Settlement Adjudication Committee meetings with the A&M and Lehman Derivative teams to discuss proposed derivatives settlements, and met regularly with Derivatives Co-Heads, counterparty teams and front office valuation employees to discuss strategies in connection with managing the wind-down of the derivatives portfolio. FTI worked with the applicable transactors and traders before and after the settlement adjudication meetings to discuss relevant settlement issues, provide strategic guidance in negotiations with counterparties and independently assess the value of the derivative products and appropriate settlement amounts for certain transactions. FTI also reviewed numerous derivative portfolios of derivative counterparties that have been designated for Alternative Dispute Resolution ("ADR"). This review entails analysis of the disputed issues, valuation, and providing feedback to Committee counsel and the Derivatives Sub-Committee, as necessary. In connection with derivative claim objections, FTI reviewed the valuation of the underlying derivatives portfolio and appropriateness of the closeout process.

FTI also had one employee working directly with the Debtors' Big Bank derivative team, focused on reconciliation and valuation of Big Bank derivative populations.

**PCD 3500 Plan of Reorganization/Plan Confirmation/Plan Implementation**

FTI continued its extensive review of POR issues.    The Debtors Second Amended Plan was filed on June 30, 2011.  During the Tenth Interim Period, FTI reviewed the Plan Supplement filed by the Debtors.  FTI also reviewed and provided comments on the Debtors' allocation agreement prior to its inclusion in the Plan Supplement.  FTI performed due diligence on potential Board candidates and corporate governance issues.  FTI reviewed objections to the Disclosure Statement and assisted with the preparation of the Committee statement in support of confirmation.  The Disclosure Statement was approved on December 6, 2011.   FTI assisted with the preparation of a joint advisors presentation to the new Board of Directors in January of 2012 describing all of the areas in which the Committee has been involved in the case.  Finally, FTI reviewed the estimates of the potential first distribution to creditors and was involved in numerous meetings with the Debtors to assess the level of secured, administrative, priority and post confirmation operating reserves needed, the amount of these distributions, the issues related to timing of the distributions, and the concept of using the Plan provision to reserve for disputed claims with non cash assets.

**PCD 3700 Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative**

**Dispute Resolution and Bar Date Issues**

FTI worked with the Debtors' Claims Resolution Team to understand their efforts to reconcile, object, estimate, and resolve proofs of claims filed against the Debtors in these Chapter 11 proceedings.   During this period, FTI analyzed significant disputed claims to determine status of claim reconciliation and the appropriateness of claims estimates in the Disclosure Statement.   FTI also reviewed materials related to the reconciliation of the Residential Mortgage Backed Securities ("RMBS") claims and held meetings with A&M to discuss the same.  FTI reviewed draft stipulations related to the RMBS claims and performed a review of the Debtors' and the Trustee's methodologies to estimate these claims.  FTI also reviewed proposed claim settlements (including Main Street, Aozora, 3rd party guarantee claims) and participated in discussions with A&M regarding the status of the resolution of significant claims for distribution purposes.  FTI prepared a claims update presentation to the Committee and prepared a summary of claims issues for the January 2012 presentation to the Board.

FTI performed an analysis of the disputed claims reserve during this period to assess whether disputed claimants would be harmed by the use of non cash assets for reserve purposes. FTI participated in numerous meetings with A&M to discuss and review the available cash, claims and operating reserves, and the reserve methodology.  FTI prepared a presentation for the Committee which resulted in the Committee's support of the non cash asset reserve motion.

With regards to the structured securities claims, claims that are based on structured securities issued or guaranteed by LBHI, FTI monitored the note holder inquiries and the Debtors' responses to such inquiries relating to the valuations and/or proposed claim allowances.

**PCD 4600 Firms Own Billing/Fee Application**

FTI expended necessary resources to ensure the timely filing of monthly fee statements in accordance with the Administrative Order. Time in this category includes preparing the Monthly Fee Statements for the fee periods of September 2011 through January 2012, as well as the time spent preparing the Ninth Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses.

**ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

12.    All of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee, and not on behalf of any other entity. FTI respectfully submits that the professional services rendered were necessary, appropriate and have contributed to the effective administration of the Debtors' chapter 11 cases and maximization of value. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically.

13.    During the Tenth Interim Period, FTI professionals expended an aggregate of 11,599.2 hours in rendering services on behalf of the Committee for a total fee of $6,296,688.79. FTI also earned the Completion Fee of $5,000,000. FTI submits that its fee is reasonable for the work performed in these cases and the results obtained.

14.    FTI incurred out-of-pocket expenses of $48,337.14 in connection with the rendition of the professional services described above during this Tenth Interim Period. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Committee in these Chapter 11 cases.

All air travel to and from the Debtors' locations were necessary and billed at coach rates.

Additionally, FTI voluntarily reduced all travel time by 50% during the Tenth Interim Period.

## APPLICATION

15.     This Application is made by FTI in accordance with the Guidelines

adopted by the Executive Office for the United States Trustees and the Administrative Order.

Pursuant to this application, FTI has attached the following exhibits:

A.     Exhibit A -- – Certification Under Guidelines for Fees and Disbursements

for Professionals in Respect of Tenth Application of FTI Consulting, Inc;

B.     Exhibit B -- Retention Order dated November 21, 2008 authorizing the

employment and retention of FTI Consulting, Inc. effective as of September 17, 2008 to

provide professional services as Financial Advisors to the Official Committee of

Unsecured Creditors;

C.     Exhibit C -- Summary of billings and collections for the First through

Tenth Interim Periods;

D.     Exhibit D -- Summary of time and fees by professional;

E.     Exhibit E -- Summary of time by task code;

F.     Exhibit F -- Summary of out of pocket expenses by category;

G.     Exhibit G[1]  --  Detail of time by task codes, including detailed time entry

by professional with description of task performed;

H.     Exhibit H[1] – Detail of expenses by category and professional incurred.

16.     No prior application has been made to this or any other Court for the relief

requested herein for the Tenth Interim Period.

---

[1] Due to the volume of the time and expense records, and consistent with the Interim Compensation Order, materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court;(ii) the U.S. Trustee; (iii) the Debtors; (iv) counsel for the Debtors; and (v) the Fee Committee

## **CONCLUSION**

**WHEREFORE,** FTI respectfully requests that this Court enter an order:

    a. approving the allowance of $6,296,688.79 for compensation for services rendered during the Tenth Interim Period, $5,000,000 for the Completion Fee and reimbursement of $48,337.14 for out of pocket expenses,

    b. directing the payment of such fees by the Debtors, and

    c. granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 14, 2011

FTI Consulting, Inc.
Financial Advisors to the Official Committee of
Unsecured Creditors

By:_____

Samuel Star
Senior Managing Director
Three Times Square
New York, NY  10036
(212) 841-9368

# EXHIBIT

## "A"
## Certification

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                                               :
In re:                                                         :       Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,                         :       08-13555 (JMP)
                                                               :
                        Debtors.                               :       (Jointly Administered)
                                                               :
------------------------------------------------------------- x
```

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS
FOR PROFESSIONALS IN RESPECT OF TENTH INTERIM FEE APPLICATION OF
FTI CONSULTING, INC., FINANCIAL ADVISOR TO
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND
FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM
OCTOBER 1, 2011 THROUGH MARCH 6, 2012**

Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (together, the "Local Guidelines"), and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines" and,

together with the Local Guidelines, the "Guidelines"), the undersigned, a senior managing

director of FTI Consulting, Inc. ("FTI"), financial advisors to the Official Committee of

Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. and its affiliated

debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby certifies

with respect to FTI's tenth interim application for allowance of compensation for services

rendered and for reimbursement of expenses, dated May 14, 2012 (the "Application"), for the

period of October 1, 2011 through March 6, 2012 (the "Tenth Interim Period") as follows:

1.    I am the professional designated by FTI in respect of compliance with the

Guidelines.

2.    I make this certification in support of the Application, for interim

compensation and reimbursement of expenses for the Tenth Interim Period, in accordance with

the Local Guidelines.

3.    In respect of section B.1 of the Local Guidelines, I certify that:

a.    I have read the Application.

b.    To the best of my knowledge, information and belief formed after
      reasonable inquiry, the fees and disbursements sought fall within
      the Guidelines.

c.    Except to the extent that fees or disbursements are prohibited by
      the Guidelines, the fees and disbursements sought are billed at
      rates in accordance with practices customarily employed by FTI
      and generally accepted by FTI's clients.

d.    In providing a reimbursable service, FTI does not make a profit on
      that service, whether the service is performed by FTI in-house or
      through a third party.

4.    In respect of section B.2 of the Local Guidelines, I certify that FTI has

provided statements of FTI's fees and disbursements previously accrued, by filing and serving

monthly statements in accordance with the Administrative Fee Order (as defined in the

Application).

5.    In respect of section B.3 of the Local Guidelines, I certify that copies of

the Application are being provided to (a) the Court, (b) the Debtors, (c) counsel for the Debtors,

(d) counsel for the Committee (e) the Office of the United States Trustee and the (f) the Fee

Committee.

Dated:    New York, New York
          May 14, 2012

                         FTI Consulting, Inc.
                         Financial Advisors to the Official Committee
                         Of Unsecured Creditors

                         By:_____


                         Sam Star
                         Senior Managing Director
                         Three Times Square
                         New York, NY  10036
                         (212) 499-3647

# EXHIBIT

## "B"
## Retention Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                            :    Chapter 11
                                                  :
    LEHMAN BROTHERS HOLDINGS INC., et al., :    08-13555 (JMP)
                                                  :
                        Debtors.                  :    (Jointly Administered)
------------------------------------------------------------x

## FINAL ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P. 2014, AND S.D.N.Y. LBR 2014-1 AUTHORIZING EMPLOYMENT AND RETENTION OF FTI CONSULTING INC., AS FINANCIAL ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL., EFFECTIVE AS OF SEPTEMBER 17, 2008

Upon the application, dated October 21, 2008 (the "Application"), of the

Official Committee of Unsecured Creditors (the "Creditors' Committee"), appointed in the

above-captioned jointly administered chapter 11 cases of Lehman Brothers Holdings Inc., and

its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order

authorizing the Creditors' Committee to retain and employ FTI Consulting Inc. ("FTI"),

effective as of September 17, 2008, as financial advisor for the Creditors' Committee in the

above-captioned cases, pursuant to sections 328(a) and 1103(a) of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local

Bankruptcy Rules for the District of New York (the "Local Rules"); and the Court having

considered the Affidavit of Michael Eisenband, sworn to October 21, 2008 (the "Eisenband

Affidavit"), in connection with the Application; and the Court being satisfied based on the

representations in the Application and the Eisenband Affidavit, that FTI does not represent any

other entity having an adverse interest in connection with the case within the meaning of

section 1103(b) of the Bankruptcy Code and is "disinterested" as defined in section 101(14) of

the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the

relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the time for objections to the Application having expired on October 31, 2008, except for the United States Trustee and the Debtors, whose respective time to object was extended on consent until November 13, 2008; and, with no objections having been timely filed by any party; and the Court having entered an Interim Order (the "Interim Order") dated November 5, 2008 (Docket No. 1405), approving the Application on an interim basis without objection; and no objection having been timely made or filed by either the Debtors, the United States Trustee, or any other party; and due and proper notice of the Application, the Interim Order, and the hearing to consider entry of a final order approving the Application having been provided as approved in the Interim Order; and it appearing that no other or further notice need be provided; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

ORDERED, that all compensation and reimbursement of expenses to be paid to FTI, shall be subject to prior approval of this Court in accordance with the requirements under

§§ 330 and 331 of the Bankruptcy Code and the order of this Court which establishes

procedures for monthly compensation and reimbursement of expenses; and it is further

ORDERED, that without limiting the rights of the United States Trustee to

object to FTI's interim or final fee applications and without limiting the requirement that all

compensation and reimbursement of expenses to be paid to FTI shall be subject to prior

approval of this Court, in each instance as set forth in this Order, the Completion Fee (as

defined in the Application), to the extent approved by the Court, shall be an expense of the

administration of the above-captioned chapter 11 cases, payable, following conversion of such

cases to a case under Chapter 7 of Title 11 of the United States Code, in the same order of

priority as other allowed chapter 11 administrative expenses; and it is further

ORDERED, that all requests of FTI for payment of indemnity pursuant to the

Engagement shall be made by means of an application (interim or final as the case may be) and

shall be subject to review by the Court to ensure that payment of such indemnity conforms to

the terms of the Engagement and is reasonable based upon the circumstances of the litigation

or settlement in respect of which indemnity is sought, provided, however, that in no event shall

FTI be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if

any), gross negligence or willful misconduct; and it is further

ORDERED, that in no event shall FTI be indemnified if the Debtor or a

representative of the estate, asserts a claim for, and a court determines by final order that such

claim arose out of, FTI's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross

negligence, or willful misconduct; and it is further

ORDERED that in the event FTI seeks reimbursement for attorneys' fees

pursuant to the terms of the Engagement, the invoices and supporting time records from such

3

attorneys shall be included in FTI's own application and such invoices and time records shall

be subject to the United States Trustee's guidelines for compensation and reimbursement of

expenses and the approval of the Bankruptcy Court under the standards of sections 330 and

331 of the Bankruptcy Code; and it is further

        ORDERED that to the extent this Order is inconsistent with the Engagement or

the Application, this Order shall govern; and it is further

        ORDERED that this court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.

Dated:  New York, New York
       November 21, 2008

                         *s/ James M. Peck*
                        UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT

## "C"
### Monthly Billing and Collection Summary

**EXHIBIT C**
**LEHMAN BROTHERS HOLDING, INC., CASE NO. 08 - 13555**
**SUMMARY OF FEES & EXPENSES BY MONTH**
*FOR THE TENTH INTERIM PERIOD OCTOBER 1, 2011 TO MARCH 6, 2012*

| | October 1, 2012 - October 31, 2012 | November 1, 2012 - November 30, 2012 | December 1, 2011 - December 31, 2011 | January 1, 2012 - January 31, 2012 | February 1, 2012 - March 6, 2012 | Total |
|---|---|---|---|---|---|---|
| **FEES** | | | | | | |
| Incurred | $ 1,805,925.79 (1) | $ 1,066,233.00 (2) | $ 879,215.50 | $ 1,335,878.50 | $ 1,215,023.50 | 6,302,276.29 |
| Travel Reduction (50%) | (5,587.50) | | | | | (5,587.50) |
| Fees Sub Total | $ 1,800,338.29 | $ 1,066,233.00 | $ 879,215.50 | $ 1,335,878.50 | $ 1,215,023.50 | 6,296,688.79 |
| Completion Fee | | $ 5,000,000.00 | $ 5,000,000.00 | | $ | 5,000,000.00 |
| Billed | $ 1,800,338.29 | $ 1,066,233.00 | $ 5,879,215.50 | $ 1,335,878.50 | $ 1,215,023.50 | 11,296,688.79 |
| Paid | (1,367,055.80) | (852,986.41) | (665,669.20) | (1,068,702.80) | - | (2,885,711.41) |
| Unpaid | $ 433,282.49 | $ 213,246.59 | $ 5,213,546.30 | $ 267,175.70 | $ 1,215,023.50 | 8,410,977.38 |
| | | | | | | |
| **EXPENSES** | | | | | | |
| Incurred & Billed | $ 19,968.81 | $ 4,575.29 | $ 6,757.07 | $ 10,424.25 | $ 6,611.72 | 48,337.14 |
| Paid | (19,968.81) | (4,575.29) | (6,757.07) | (10,424.25) | - | (41,725.42) |
| Unpaid | $ - | $ - | $ - | $ - | $ - | 6,611.72 |
| | | | | | | |
| **TOTAL** | | | | | | |
| Incurred | $ 1,825,894.60 | $ 1,070,808.29 | $ 5,885,972.57 | $ 1,346,302.75 | $ 1,221,635.22 | 11,350,613.43 |
| Travel Reduction | (5,587.50) | | | | | (5,587.50) |
| Billed | $ 1,820,307.10 | $ 1,070,808.29 | $ 5,885,972.57 | $ 1,346,302.75 | $ 1,221,635.22 | 11,345,025.93 |
| Paid | (1,387,024.61) | (857,561.70) | (672,426.27) | (1,079,127.05) | - | (3,996,139.63) |
| Unpaid | $ 433,282.49 | $ 213,246.59 | $ 5,213,546.30 | $ 267,175.70 | $ 1,221,635.22 | 7,348,886.30 |

(1) *Reflects an adjustment of ($1,415.00) due to overbill in September 2011 fee statement.*

(2) *Includes additional fees for J. Wang in the amount of $175,032.00 due to incorrectly stated bill rate for the period June 2010 through September 2011.*

EXHIBIT C

LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08 - 13555

SUMMARY OF FEES & EXPENSES

FOR THE FIRST THROUGH NINTH INTERIM PERIODS

| | Total Fees Requested | Total Expenses Requested | Total Fees Awarded | Total Expenses Awarded | Total Requested | Total Awarded |
|---|---|---|---|---|---|---|
| First Interim Period | $ 5,261,715.61 | $ 148,515.81 | $ 5,218,571.36 | $ 148,329.28 | $ 5,410,231.42 | $ 5,566,900.64 |
| *FOR THE SECOND INTERIM PERIOD FEBRUARY 1, 2009 TO MAY 31, 2009* | | | | | | |
| Second Interim Period | $ 6,690,011.59 | $ 231,881.68 | $ 6,654,303.20 | $ 231,539.58 | $ 6,921,893.27 | $ 6,885,842.78 |
| *FOR THE THIRD INTERIM PERIOD JUNE 1, 2009 TO SEPTEMBER 30, 2009* | | | | | | |
| Third Interim Period | $ 7,684,069.40 | $ 211,418.60 | $ 7,673,489.59 | $ 210,974.27 | $ 7,895,488.00 | $ 7,884,463.86 |
| *FOR THE FOURTH INTERIM PERIOD OCTOBER 1, 2009 TO JANUARY 31, 2010* | | | | | | |
| Fourth Interim Period | $ 9,500,022.29 | $ 199,398.23 | $ 9,456,017.76 | $ 147,441.07 | $ 9,699,420.52 | $ 9,603,458.83 |
| *FOR THE FIFTH INTERIM PERIOD FEBRUARY 1, 2010 TO MAY 31, 2010* | | | | | | |
| Fifth Interim Period | $ 9,684,055.45 | $ 89,869.95 | $ 9,658,001.00 | $ 83,174.45 | $ 9,773,925.40 | $ 9,741,175.45 |
| *FOR THE SIXTH INTERIM PERIOD JUNE 1, 2010 TO SEPTEMBER 30, 2010* | | | | | | |
| Sixth Interim Period | $ 13,364,786.17 | $ 65,183.44 | $ 13,319,253.77 | $ 64,826.28 | $ 13,429,969.61 | $ 13,384,080.05 |
| *FOR THE SEVENTH INTERIM PERIOD OCTOBER 1, 2010 TO JANUARY 1, 2011* | | | | | | |
| Seventh Interim Period | $ 12,727,735.75 | $ 186,351.60 | $ 12,649,858.95[1] | $ 185,994.82 | $ 12,914,087.35 | $ 12,835,853.77[1] |
| *FOR THE EIGHTH INTERIM PERIOD FEBRUARY 1, 2011 TO MAY 31, 2011* | | | | | | |
| Eighth Interim Period | $ 12,195,343.08 | $ 189,309.44 | $ 12,122,806.33[1] | $ 188,876.77 | $ 12,384,652.52[1] | $ 12,311,683.10[1] |
| *FOR THE NINTH INTERIM PERIOD JUNE 1, 2011 TO SEPTEMBER 30, 2011* | | | | | | |
| Ninth Interim Period | $ 8,474,924.15 | $ 123,107.37 | $ -[2] | $ -[2] | $ 8,598,031.52 | $ -[2] |

(1) Fees and Expenses Awarded are per the Stipulations between the Fee Committee and FTI that have been filed with the Court related to the 7th and 8th interim fee periods. Order approving the Stipulations for the Eighth Interim period has not been entered yet.

(2) Pending discussions with the Fee Committee.

# EXHIBIT

## "D"
## Summary of Time and Fees by Professional

**EXHIBIT D**
**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**
**SUMMARY OF FEES BY PROFESSIONAL**

*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Appell, Wesley | Director | $605.00 | 44.5 | $26,922.50 |
| Baumkirchner, Michael | Managing Director | $695.00 | 327.5 | $227,612.50 |
| Baumkirchner, Michael | Managing Director | $715.00 | 121.8 | $87,087.00 |
| Bertelsen, Eric | Senior Consultant | $460.00 | 29.0 | $13,340.00 |
| Bertelsen, Eric | Senior Consultant | $495.00 | 11.5 | $5,692.50 |
| Bossard, Kelly | Managing Director | $585.00 | 14.3 | $8,365.50 |
| Brodwin, Jahn | Senior Managing Director | $750.00 | 14.8 | $11,100.00 |
| Broxson, John | Managing Director | $570.00 | 10.0 | $5,700.00 |
| Chan, Stanley | Director | $500.00 | 258.3 | $129,150.00 |
| Chertok, Mark | Senior Managing Director | $750.00 | 1.0 | $750.00 |
| Chin, Clara | Senior Director | $520.00 | 166.0 | $86,320.00 |
| Conversano, James | Senior Director | $520.00 | 2.7 | $1,404.00 |
| Darefsky, Robert J. | Senior Managing Director | $895.00 | 123.5 | $110,532.50 |
| Dean, Christopher | Director | $675.00 | 354.3 | $239,152.50 |
| Diaz, Matthew | Senior Managing Director | $845.00 | 1.5 | $1,267.50 |
| Djordjevic, Nikola | Director | $500.00 | 216.4 | $108,200.00 |
| Eisenband, Michael | Senior Managing Director | $895.00 | 301.3 | $269,663.50 |

**EXHIBIT D**
**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**
**SUMMARY OF FEES BY PROFESSIONAL**

*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Foo, Sandy | Senior Consultant | $530.00 | 11.2 | $5,936.00 |
| French, Jennifer | Director | $675.00 | 662.9 | $447,457.50 |
| Friedland, Scott D. | Senior Managing Director | $660.00 | 6.4 | $4,224.00 |
| Friedland, Scott D. | Senior Managing Director | $675.00 | 352.2 | $237,735.00 |
| Gosselin, Patrick | Senior Consultant | $500.00 | 316.2 | $158,100.00 |
| Greenberg, Mark | Managing Director | $745.00 | 101.6 | $75,692.00 |
| Gregory, Lauren | Consultant | $315.00 | 597.7 | $188,275.50 |
| Gregory, Lauren | Consultant | $365.00 | 429.6 | $156,804.00 |
| Hain, Danielle | Managing Director | $745.00 | 470.0 | $350,150.00 |
| Hedden, Michael | Managing Director | $675.00 | 5.5 | $3,712.50 |
| Heinz, Peter | Senior Consultant | $455.00 | 310.1 | $141,095.50 |
| Heinz, Peter | Senior Consultant | $500.00 | 311.0 | $155,500.00 |
| Hellmund-Mora, Marili | Associate | $250.00 | 65.1 | $16,275.00 |
| Hofstad, Ivo J | Director | $450.00 | 0.5 | $225.00 |
| Holzinger, Richard | Senior Managing Director | $800.00 | 6.8 | $5,440.00 |
| Joffe, Steven | Senior Managing Director | $895.00 | 45.4 | $40,633.00 |
| Johnston, Bonnie | Paraprofessional | $210.00 | 306.6 | $64,386.00 |

**Page 2 of 5**

**EXHIBIT D**
**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**
**SUMMARY OF FEES BY PROFESSIONAL**
*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Kim, Hansol | Managing Director | $695.00 | 296.6 | $206,137.00 |
| Kim, Jae | Director | $425.00 | 449.5 | $191,037.50 |
| Koch, Rachel | Director | $500.00 | 63.4 | $31,700.00 |
| Kwak, Michael | Director | $440.00 | 39.7 | $17,468.00 |
| Kwak, Michael | Director | $460.00 | 1.4 | $644.00 |
| Leka, Florian | Director | $500.00 | 8.4 | $4,200.00 |
| Lyman, Scott | Director | $640.00 | 530.5 | $339,520.00 |
| Lyman, Scott | Director | $675.00 | 427.9 | $288,832.50 |
| McDonagh, Timothy | Managing Director | $695.00 | 2.7 | $1,876.50 |
| Mikulka, Gregory | Consultant | $280.00 | 330.5 | $92,540.00 |
| Mordecai, David K.A. | Economic Consultant | $1,000.00 | 4.5 | $4,500.00 |
| Ng, William | Director | $605.00 | 234.6 | $141,933.00 |
| Ng, William | Director | $640.00 | 44.8 | $28,672.00 |
| Oh, Eun | Senior Consultant | $400.00 | 250.3 | $100,120.00 |
| Rauch, Adam | Consultant | $315.00 | 231.2 | $72,828.00 |
| Rauch, Adam | Consultant | $365.00 | 2.7 | $985.50 |
| Rees, Thomas | Managing Director | $550.00 | 9.0 | $4,950.00 |

**EXHIBIT D**
**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**
**SUMMARY OF FEES BY PROFESSIONAL**

*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Rickelton, Lisa | Managing Director | $779.10 | 6.9 | $5,375.79 |
| Rizvi, Tabish | Managing Director | $675.00 | 352.4 | $237,870.00 |
| Sampath, Vijay | Managing Dir | $585.00 | 15.6 | $9,126.00 |
| Shah, Mili | Consultant | $280.00 | 307.5 | $86,100.00 |
| Sloane, Raymond | Senior Managing Director | $675.00 | 7.2 | $4,860.00 |
| Spinner, Joseph | Consultant | $290.00 | 5.0 | $1,450.00 |
| Star, Samuel | Senior Managing Director | $895.00 | 177.6 | $158,952.00 |
| Swetz, Michael | Consultant | $315.00 | 37.7 | $11,875.50 |
| Szymik, Filip | Senior Consultant | $460.00 | 350.5 | $161,230.00 |
| Szymik, Filip | Senior Consultant | $495.00 | 405.8 | $200,871.00 |
| Tantleff, Alan | Managing Director | $745.00 | 40.0 | $29,800.00 |
| Tso, Glenn | Senior Managing Director | $800.00 | 3.0 | $2,400.00 |
| Tully, Connor | Senior Managing Director | $845.00 | 14.8 | $12,506.00 |
| Tully, Conor | Senior Managing Director | $800.00 | 35.7 | $28,560.00 |
| Wang, Jennifer | Senior Consultant | $290.00 | 160.1 | $46,429.00 |
| Wang, Jennifer | Senior Consultant | $375.00 | 357.5 | $134,062.50 |
| Worth, Tristram | Consultant | $210.00 | 241.6 | $50,736.00 |

**Page 4 of 5**

**EXHIBIT D**
**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**
**SUMMARY OF FEES BY PROFESSIONAL**

*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Worth, Tristram | Consultant | $220.00 | 154.1 | $33,902.00 |
| Yozzo, John | Managing Director | $545.00 | 1.3 | $708.50 |
| | | **Grand Total** | **11,599.2** | **$6,128,659.29** |

*Additional Fees for J. Wang due to
incorrectly stated bill rate for the periods
June 2010 through October 2011*      $  175.032.00

*Less: 50% Travel Reduction*      ($  5,587.50)

*Less: Overbill in September 2011 Fee Statement*      ($  1,415.00)

**Net Grand Total**      **$6,296,688.79**

# EXHIBIT

## "E"
## Summary of Time by Task Code

**EXHIBIT E**
**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**
**SUMMARY OF FEES BY TASK DESCRIPTION**
*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| TASK NUMBER | TASK DESCRIPTION | TOTAL HOURS | TOTAL FEES |
|---|---|---|---|
| 0100 | General Case Administration | 18.5 | $14,980.00 |
| 0300 | Project Monitoring/Court Calendar & Docket Maintenance | 2.6 | $2,080.00 |
| 0500 | Non-Working Travel | 15.0 | $11,175.00 |
| 0700 | Communications with Debtors | 5.5 | $4,383.50 |
| 0800 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 180.0 | $148,130.50 |
| 1100 | LBI/SIPC Coordination and Issues | 860.7 | $514,260.50 |
| 1200 | Cash Management | 110.2 | $69,322.00 |
| 1400 | Employee/ERISA/Benefits/Pension Issues | 47.3 | $40,920.00 |
| 1800 | Tax Issues | 48.4 | $43,318.00 |
| 2100 | Intercompany Issues | 1,271.9 | $523,778.50 |
| 2300 | Real Estate Matters | 2,313.8 | $1,244,017.00 |
| 2400 | Private Equity | 60.9 | $35,505.50 |
| 2500 | Derivatives/SWAP Agreement Issues (Including Derivatives-Related Adversary Proceedings, Alternative Dispute Resolution, and Claims Reconciliation and Litigation) | 5,024.3 | $2,520,495.50 |
| 2600 | Loans/Investments | 1.5 | $1,200.00 |
| 2800 | International Insolvency Issues | 15.1 | $11,302.79 |
| 2900 | Schedules/Statement of Financial Affairs/Other Reporting Issues | 32.3 | $23,079.00 |
| 3500 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 211.6 | $165,853.50 |
| 3700 | Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues | 794.1 | $533,627.00 |
| 3900 | Non-Derivative Adversary Proceedings Preparation and Litigation | 60.6 | $41,748.00 |
| 4600 | Firm's Own Billing/Fee Applications | 518.0 | $174,072.50 |
| 4700 | Firm's Own Retention Issues | 6.9 | $5,410.50 |
| | **Grand Total** | **11,599.2** | **$6,128,659.29** |

*Additional Fees for J. Wang due to incorrectly stated bill rate for the periods June 2010 through October 2011*     $  175.032.00

*Less: 50% Travel Reduction*     ($  5,587.50)

*Less: Overbill in September 2011 Fee Statement*     ($  1,415.00)

**Net Grand Total**     **$6,296,688.79**

# EXHIBIT

## "F"
## Expenses by Category

**EXHIBIT F**
**LEHMAN BROTHERS HOLDING, INC. CASE NO. 08-13555**
**SUMMARY OF EXPENSES BY CATEGORY**
*FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012*

| *Expense Category* | *Total Expenses* |
|---|---|
| Airfare | $10,367.78 |
| Lodging | $9,352.00 |
| Meals | $2,968.52 |
| Transportation | $3,658.11 |
| Other | $21,990.73 |
| **Total** | **$48,337.14** |