WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                            :

In re                       :        **Chapter 11 Case No.**

                            :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**

                            :

              **Debtors.**     :        **(Jointly Administered)**

                            :

------------------------------------------------------------------x

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT AGREEMENT WITH THE INSOLVENCY ADMINISTRATOR OF LEHMAN BROTHERS CAPITAL GMBH

        PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of a settlement agreement with the insolvency administrator of Lehman Brothers Capital GmbH (the "LB Capital InsAdmin"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **June 13, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that any responses to the Motion must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General

Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow, Esq. and Lee J. Goldberg, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.); (iv) the attorneys for the LB Capital InsAdmin; and (v) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than **June 5, 2012 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 21, 2012
      New York, New York

      /s/ Richard P.Krasnow
      Richard P. Krasnow

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Lehman Brothers Holdings Inc.
      and Certain of Its Affiliates

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                  :

**In re**                           :        **Chapter 11 Case No.**
                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                  :

             **Debtors.**     :        **(Jointly Administered)**
                  :
-------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND**
**RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR APPROVAL OF SETTLEMENT AGREEMENT WITH THE**
**INSOLVENCY ADMINISTRATOR OF LEHMAN BROTHERS CAPITAL GMBH**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this motion (the "Motion") pursuant to

section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a

settlement agreement (the "Settlement Agreement") between the chapter 11 estates of LBHI and

certain of its affiliates (the "Chapter 11 Estates")[1] and Claudia C.E. Jansen in her capacity as

---

[1] The Chapter 11 Estates are defined as the Settlement Agreement as the "Debtors."

Insolvency Administrator (*Insolvenzverwalter*) (the "LB Capital InsAdmin," and, together with the Chapter 11 Estates, the "Parties") of Lehman Brothers Capital GmbH ("LB Capital"), and respectfully represents:

### Preliminary Statement

1.      LB Capital, a German affiliate of the Chapter 11 Estates currently in an insolvency proceeding, was created for the purpose of engaging in trading relationships with third parties in the ordinary course business.  LB Capital's trades, which occurred around 2003 and 2004,[2] generated cash that was placed with Lehman Brothers Bankhaus AG ("Bankhaus") and LBHI, respectively.  In exchange for such cash, LB Capital received intercompany receivables from Bankhaus and LBHI, which give rise to a guarantee claim by LB Capital against LBHI (the "LBHI Guarantee Claim") and a direct claim by LB Capital against LBHI (the "LBHI Direct Claim," and, together with the LBHI Guarantee Claim, the "LBHI Claims").

2.      In addition to holding the LBHI Claims, LB Capital is the holder of a claim against Lehman Brothers Special Financing Inc. ("LBSF").  Lehman Commercial Paper Inc. ("LCPI") is the holder of a claim against LB Capital.

3.      Consistent with the Chapter 11 Estates' approach to settlement of claims by and against most of their foreign affiliates, the Parties engaged in arm's-length, good faith negotiations in an attempt to resolve their claims without litigation.  Thus, in order to avoid the expense and uncertainty attendant to such litigation, the Parties have agreed to resolve their respective claims in accordance with the terms set forth in the Settlement Agreement, which is attached hereto as Exhibit A.  The Parties have executed the Settlement Agreement.

---

[2] LB Capital was operationally dormant from 2005 onward.

4.      The Plan Administrator believes that the compromise embodied in the Settlement Agreement, which, if approved, will result in LB Capital having allowed unsecured claims against LBHI in the aggregate amount of $36,944,872 and against LBSF in the amount of $209,132, and LCPI having an allowed (*festgestellt*) unsecured claim against LB Capital in the amount of €72,998.69, is a reasonable resolution of the claims between the Parties.  The settlement is the result of extensive due diligence by the Parties and arm's-length, good faith negotiations, and it resolves the claims with appropriate allowances by both Parties commensurate with the approach taken by the Chapter 11 Estates in settling claims by and against their foreign affiliates.

## Background

5.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012 (the "Effective Date").

## Jurisdiction

7.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

8.      The Plan Administrator seeks approval of the Settlement Agreement

pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  The Plan

Administrator has determined, in the exercise of its sound business judgment, that the Settlement

Agreement is in the best interests of the Chapter 11 Estates and their creditors and should be

approved.

## The Claims and the Settlement Agreement[3]

### LB Capital Claims Against LBHI

9.      On August 21, 2009, LB Capital filed a proof of claim against LBHI

(Claim No. 8871) in the amount of $14,759,385 on account of LBHI's purported guarantee of

amounts due from Bankhaus relating to an intercompany receivable for LB Capital's deposit of

certain cash receipts (*i.e.*, the LBHI Guarantee Claim).  The LBHI Guarantee Claim is being

allowed as a non-priority, senior, non-subordinated general unsecured claim against LBHI in

Class 4B under the Plan in an amount equal to $6,641,723.  The LBHI Guarantee Claim is being

allowed at a discounted amount that is consistent with the Chapter 11 Estates' allowance of other

guarantee claims asserted by its foreign affiliates which arise from that certain Guarantee, dated

November 21, 2002, pursuant to which LBHI purportedly guaranteed Bankhaus's obligations to

certain counterparties, including LB Capital.

10.      On August 21, 2009, LB Capital filed a proof of claim against LBHI

(Claim No. 8869) in the amount of $30,303,149 relating to an intercompany receivable for LB

Capital's placement of certain cash receipts (*i.e.*, the LBHI Direct Claim).  The LBHI Direct

---

[3] The terms described below are provided as a summary of the terms of the Settlement Agreement, including the Consent (as defined below).  In the case of an inconsistency between the terms set forth in this summary and the terms of the Settlement Agreement or the Consent, the terms of the Settlement Agreement and the Consent shall control.

Claim is being allowed as a non-priority, non-subordinated general unsecured claim against LBHI in Class 4A under the Plan in an amount equal to $30,303,149.

11.     The LB Capital InsAdmin has represented to the Plan Administrator that on January 11, 2001, the LB Capital InsAdmin entered into certain agreements (the "LB Capital Agreements") with CVI GVF (LUX) Master S.à.r.l. of 11 – 13 Boulevard de la Foire, L-1528 Luxembourg (the "Purchaser") pursuant to which the LB Capital InsAdmin sold, and the Purchaser purchased and the LB Capital InsAdmin assigned the LBHI Claims to the Purchaser, subject to a certain condition precedent which the Purchaser may waive at any time.  Based on the rights acquired by the Purchaser under the LB Capital Agreements, the Plan Administrator required the Purchaser to execute a consent to the Settlement Agreement (the "Consent").  The Purchaser executed the Consent, which is attached to the Settlement Agreement as Schedule B. Pursuant to the Consent, the Purchaser agreed, among other things, that upon acquisition *in rem* of either or both LBHI Claims, it will become a party to the Settlement Agreement and be fully bound by the Settlement Agreement as though it were an original Party thereto.

**LB Capital Claim Against LBSF**

12.     In addition, on August 21, 2009, LB Capital filed a proof of claim against LBSF (Claim No. 8870) in the amount of $208,720 relating to non-trading general intercompany accounts.  Such claim is being allowed as a non-priority, non-subordinated general unsecured claim against LBHI in Class 5C under the Plan in an amount equal to $209,132.  The allowed amount of such claim reflects the addition of accrued interest from September 14, 2008 through LBSF's Commencement Date of October 3, 2008.

**LCPI Claim Against LB Capital**

13.    On April 8, 2009, LCPI filed a proof of claim against LB Capital in the amount of €72,998.69 relating to non-trading general intercompany accounts.  Such claim is being allowed (*festgestellt*) as a non-priority, non-subordinated unsecured claim against LB Capital in an amount equal to €72,998.69.  The filed and allowed amount of such claim reflects the addition of accrued interest from September 14, 2008 through the commencement of LB Capital's insolvency proceedings on October 2, 2008.

### The Settlement Agreement Meets The Legal Standard Established Under Bankruptcy Rule 9019 and Is in the Best Interests of the Chapter 11 Estates

14.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

15.    The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness.  *Drexel Burnham Lambert Group*, 134 B.R. at

505; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re*

*Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its

discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown &*

*Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the

question of whether a particular compromise is "fair and equitable, and in the best interest of the

estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

        16.    While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134

B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact. . . .  The court need only canvass the settlement to determine whether it is within the

accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

        17.    The court may give weight to the "informed judgments of the . . . debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." *Drexel Burnham Lambert*

*Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness. . . .  If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have

selected the other.").

18.     Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

19.     The compromise set forth in the Settlement Agreement is fair and equitable, in the best interests of the Chapter 11 Estates and their creditors, and an appropriate exercise of the Plan Administrator's sound business judgment.  The Settlement Agreement resolves the claims with appropriate allowances by both Parties commensurate with the approach taken by the Chapter 11 Estates in settling claims by and against their foreign affiliates.

20.     For the reasons stated above, and in the Plan Administrator's informed business judgment, the compromise set forth in the Settlement Agreement is a "fair and equitable" resolution of the issues described herein, is well within the "range of reasonableness," and is in the best interests of the Chapter 11 Estates and their creditors.  Accordingly, the Plan Administrator requests that the Chapter 11 Estates' entry into the Settlement Agreement be approved.

## Notice

21.     No trustee has been appointed in these chapter 11 cases.  The Plan Administrator has served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the LB Capital InsAdmin;

(vi) the attorneys for the Purchaser; and (vii) all parties who have requested notice in these

chapter 11 cases.  The Plan Administrator submits that no other or further notice need be

provided.

22.    No previous request for the relief sought herein has been made by the Plan

Administrator to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.

Dated: May 21, 2012
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

## Exhibit A

## The Settlement Agreement

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "<u>Agreement</u>") is made and entered into as of May 11, 2012 (the "<u>Execution Date</u>"), by and among the Debtors[1] and Claudia C.E. Jansen in her capacity as Insolvency Administrator (*Insolvenzverwalter*) (the "<u>LB Capital InsAdmin</u>") of Insolvenzverfahren Lehman Brothers Capital GmbH ("<u>LB Capital</u>"). The Debtors and LB Capital, acting through the LB Capital InsAdmin, shall each be referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "<u>Chapter 11 Cases</u>" and each a "<u>Chapter 11 Case</u>");

WHEREAS, on October 2, 2008, LB Capital filed for opening insolvency proceedings (the "<u>LB Capital Proceeding</u>"), and on February 19, 2009, the local court (*Amtsgericht*) of Frankfurt am Main (the "<u>German Insolvency Court</u>") opened insolvency proceedings and appointed Claudia C.E. Jansen as the LB Capital InsAdmin;

WHEREAS, LB Capital has filed the proofs of claim listed on <u>Schedule A</u> attached hereto against certain Debtors (collectively, the "<u>Proofs of Claim</u>");

WHEREAS, LCPI has filed a claim against LB Capital in the amount of €72,998.69 (the "<u>LCPI Claim</u>");

WHEREAS, on December 6, 2011, the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "<u>Plan</u>") [ECF No. 23023];

WHEREAS, on March 6, 2012, the Plan became effective in accordance with its terms; and

WHEREAS, the Parties are desirous of resolving all disputes and all other outstanding issues between the Parties and avoiding extensive and expensive litigation;

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

---

[1]     As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("<u>LBHI</u>"); Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"); Lehman Commercial Paper Inc. ("<u>LCPI</u>"); Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

1.      ***Definitions***

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"9019 Order" has the meaning ascribed to it in section 6.

"Allowed LB Capital Claims" has the meaning ascribed to it in section 2.1(d).

"Allowed LCPI Claim" has the meaning ascribed to it in section 2.1(d).

"Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Consent" means that certain Consent attached hereto as Schedule B.

"Effective Date" has the meaning ascribed to it in section 6.

"German Insolvency Court" has the meaning ascribed to it in the Recitals.

"LB Capital Agreements" means those certain agreements, each dated January 11, 2011, between the LB Capital InsAdmin and CVI GVF (LUX) Master S.à.r.l. of 11 – 13 Boulevard de la Foire, L-1528 Luxembourg (the "Purchaser") pursuant to which the LB Capital InsAdmin has sold, and the Purchaser has purchased (*gekauft*) and the LB Capital InsAdmin has assigned (*abgetreten*) to the Purchaser, subject to a certain condition precedent which the Purchaser may waive at any time, Claim Nos. 8871 and 8869 (such rights (*Anwartschaftsrechte*) acquired under the LB Capital Agreements, the "Purchased Rights").

"LB Capital Proceeding" has the meaning ascribed to it in the Recitals.

"LCPI Claim" has the meaning ascribed to it in the Recitals.

"Plan" has the meaning ascribed to it in the Recitals.

"Proofs of Claim" has the meaning ascribed to it in the Recitals.

"Purchaser" has the meaning ascribed to it in the definition of "LB Capital Agreements" above.

"Purchased Rights" has the meaning ascribed to it in the definition of "LB Capital Agreements" above.

2.      ***Settlement of Claims***.

2.1.    *The LB Capital InsAdmin's Claims Against the Debtors.*

(a)      *The LB Capital InsAdmin's Claims Against LBHI.*

(1)      *The LB Capital InsAdmin's Guarantee Claim Against LBHI.*  Subject to section 8.13 of the Plan, the LB Capital InsAdmin will have an allowed, non-priority, senior, non-subordinated general unsecured claim against LBHI in Class 4B under the Plan in an amount equal to $6,641,723 on account of amounts receivable from Lehman Brothers Bankhaus AG.

(2)      *The LB Capital InsAdmin's Direct Claim Against LBHI.*  Subject to section 8.13 of the Plan, the LB Capital InsAdmin will have an allowed, non-priority, senior, non-

2

subordinated general unsecured claim against LBHI in Class 4A under the Plan in an amount equal to $30,303,149.

(b)      *The LB Capital InsAdmin's Claim Against LBSF.*  Subject to section 8.13 of the Plan, the LB Capital InsAdmin will have an allowed, non-priority, non-subordinated general unsecured claim against LBSF in Class 5C under the Plan in an amount equal to $209,132.

(c)      Other than the claims to be allowed as set forth in section 2.1(a)-(b) hereof, all other claims asserted or held by LB Capital or the LB Capital InsAdmin against the Debtors, including without limitation, those claims that are reflected in <u>Schedule A</u> annexed hereto, will be deemed expunged.

(d)      The allowed claims of the LB Capital InsAdmin as set forth in this section 2.1 (the "<u>Allowed LB Capital Claims</u>") shall not, except as otherwise specifically provided for herein, be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors; *provided* that in the event that any party objects to the claim of LCPI that is allowed pursuant to this Agreement (the "<u>Allowed LCPI Claim</u>"), until such time as such Allowed LCPI Claim is allowed by the German courts or otherwise settled in a manner acceptable to the Parties, the Debtors shall be entitled to withhold from distributions that would otherwise be made under the Plan in respect of the Allowed LB Capital Claims an amount that is equal to the amount of distributions that would otherwise be made with respect to the Allowed LCPI Claim that is the subject of an objection.

2.2.      *The Debtors' Claim Against LB Capital.*

(a)      *LCPI's Claim Against LB Capital.*  The claim asserted by LCPI against LB Capital will be allowed as a non-priority, non-subordinated unsecured claim (§ 38 German Insolvency Code (*Insolvenzordnung*)) in an amount equal to €72,998.69 (*i.e.*, the Allowed LCPI Claim).

(b)      Other than the Allowed LCPI Claim, all other claims asserted or held by the Debtors against LB Capital or the LB Capital InsAdmin will be deemed expunged.

(c)      The Allowed LCPI Claim as set forth in this section 2.2 shall not be subject to further objections or defenses by the LB Capital InsAdmin, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim that would have the effect of subordinating such claims to the claims of other general unsecured creditors.

3.      ***The LB Capital InsAdmin's Representations and Warranties.***  In order to induce the Debtors to enter into and perform their obligations under this Agreement, the LB Capital InsAdmin hereby represents, warrants and acknowledges as follows:

3.1.      *Authority.*  (i) The LB Capital InsAdmin has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein, and (ii) the execution, delivery and performance by the LB Capital InsAdmin of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the LB Capital InsAdmin and no other proceedings on the part of the LB Capital InsAdmin are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

3.2.      *Validity.*  This Agreement has been duly executed and delivered by the LB Capital InsAdmin and constitutes the legal, valid and binding agreement of the LB Capital InsAdmin, enforceable against the LB Capital InsAdmin in accordance with its terms.

3.3.    *Authorization of Governmental Authorities and Creditors*.    No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by the LB Capital InsAdmin pursuant to this Agreement.

3.4.    *No Reliance*.    The LB Capital InsAdmin (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any Debtor or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as the LB Capital InsAdmin has deemed appropriate, made her own analysis and decision to enter into this Agreement, except that the LB Capital InsAdmin has relied upon each Debtor's express representations, warranties and covenants in this Agreement, the LB Capital InsAdmin acknowledges that she has entered into this Agreement voluntarily and of her own choice and not under coercion or duress.

3.5.    *Title; No Prior Transfer of Claims*.

(a)    Except for the Purchased Rights, the LB Capital InsAdmin (i) owns the Proofs of Claim free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by the LB Capital InsAdmin, (ii) is not aware of any third party rights with respect to the Proofs of Claim as of the Execution Date, and (iii) has not transferred or assigned to any other person any of the Proofs of Claim, in whole or in part.

(b)    Except for the Purchased Rights, the LB Capital InsAdmin may not convey, transfer, assign, or participate any of the claims that are the subject of this Agreement, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date.

4.    **The Debtors' Representations and Warranties**.    In order to induce the LB Capital InsAdmin to enter into and perform its obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

4.1.    *Authority*.    Subject to the occurrence of the Effective Date, (i) each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

4.2.    *Validity*.    Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

4.3.    *Authorization of Governmental Authorities*.    No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor of this Agreement, other than entry of the 9019 Order (as defined below).

4.4.    *No Reliance*.    Each Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon the LB Capital InsAdmin, and based on such information as such Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor has relied upon the LB Capital

4

InsAdmin's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

        4.5.    *Title; No Transfer of Claims*.

        (a)    LCPI (i) owns the LCPI Claim free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by LCPI, (ii) is not aware of any third party rights with respect to the LCPI Claim as of the Execution Date, and (iii) has not transferred or assigned to any other person the LCPI Claim, in whole or in part.

        (b)    LCPI may not convey, transfer, assign, or participate the LCPI Claim, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date.

      5.    **Releases.**

        5.1.    *The Debtors' Releases*.  Upon the occurrence of the Effective Date, and except as to (i) the Allowed LCPI Claim, (ii) LCPI's distribution entitlements in the LB Capital Proceeding, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) the duties and obligations of the LB Capital InsAdmin as Insolvency Administrator (*Insolvenzverwalter*) of LB Capital, and subject to the effectiveness of this Agreement in accordance with section 6 below, and in consideration of the foregoing and the LB Capital InsAdmin's execution of this Agreement, each Debtor on behalf of itself, its estate, its successors and assigns, will fully and forever release, discharge and acquit the LB Capital InsAdmin, and her respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent.

        5.2.    *The LB Capital InsAdmin's Releases*.  Upon the occurrence of the Effective Date, and except as to (i) the Allowed LB Capital Claims, (ii) the LB Capital InsAdmin's distribution entitlements in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and (iv) the performance of the obligations set forth herein, and subject to the effectiveness of this Agreement in accordance with section 6 below, and in consideration of the foregoing and each Debtor's execution of this Agreement, the LB Capital InsAdmin, the LB Capital estate, and their successors and assigns, will fully and forever release, discharge and acquit each Debtor, and their respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent.

      6.    **Effectiveness of Agreement**.

        6.1.    *Effective Date*.  Other than with respect to the provisions of sections 3 and 4 hereof, which shall become effective upon the Execution Date, this Agreement shall become effective (the "Effective Date") only upon the last to occur of (i) the entry of a final order by the Bankruptcy Court in the Debtors' Chapter 11 Cases authorizing the Debtors to enter into this Agreement, which order shall provide that the Debtors' obligations under this Agreement are assumed by the Plan Administrator (as defined in the Plan), Liquidating Trustee (as defined in the Plan), or any other successor or assignee of the Debtors, or administrator or trustee under the Plan, and which order shall no longer be subject to any appeal and as to which the time to file an appeal has expired (the "9019 Order"); and (ii) the Purchaser's

execution and delivery to the Debtors of the Consent in the form attached hereto as Schedule B; *provided*, *however*, that if this entire Agreement does not become effective as provided in this section 6, it shall be null and void, and each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, except as to this section 6.

6.2.    *9019 Order*.  The Debtors shall file a motion with the Bankruptcy Court seeking entry of the 9019 Order as promptly as practicable following the Execution Date and the Debtors' receipt of the executed Consent.

7.    ***Termination***.

7.1.    *The Debtors' Right to Terminate*.  Each Debtor shall have the right, at its election, to terminate this Agreement by written notice to the LB Capital InsAdmin if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the LB Capital InsAdmin hereunder, taken as a whole, and the LB Capital InsAdmin shall fail to cure such breach within ten (10) days following written notice of such breach from the Debtors, or (b) the Debtors' motion requesting entry of the 9019 Order is denied with prejudice by final and non-appealable order.

7.2.    *The LB Capital InsAdmin's Right to Terminate*.  The LB Capital InsAdmin shall have the right, at her election, to terminate this Agreement by written notice to the Debtors if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Debtors hereunder, taken as a whole, and the Debtors shall fail to cure such breach within ten (10) days following written notice of such breach from the LB Capital InsAdmin, or (b) the Debtors' motion requesting entry of the 9019 Order is denied with prejudice by final and non-appealable order of the Bankruptcy Court.

7.3.    *Effect of Termination*.  In the event that this Agreement is terminated in accordance with its terms by any Party, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

8.    ***Venue and Choice of Law***.

8.1.    *Venue*.  To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court; *provided* that, any actions or proceedings arising out of disputes in the amount or validity of the LCPI Claim shall be the exclusive jurisdiction of the German courts.  Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.  If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction.  Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, or with the German courts, solely relating to any actions or proceedings arising out of

6

disputes in the amount or validity of the LCPI Claim, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.  Each Party irrevocably consents to service of process in the manner provided for notices in section 9 hereof.  Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

8.2.    *Choice of Law*.  This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code; *provided, however*, that any claims and disputes arising out of the LCPI Claim shall be governed by and construed in accordance with German law except as otherwise provided in the underlying agreements.

9.    **Notices**.    All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To any Debtor at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Richard P. Krasnow, Esq. and Lee J. Goldberg, Esq.
Facsimile: (212) 310-8007

To the LB Capital InsAdmin at:

Insolvenzverfahren Lehman Brothers Capital GmbH i. Ins.
Claudia C. E. Jansen
c/o Brinkmann & Partner
Lyoner Str. 14
60528 Frankfurt am Main
Germany
Facsimile: +49 (69) 370022111

With a copy (which shall not constitute notice) to:

Rechtsanwalt Robert Hung
c/o Ettrich Sturmfels
Annastraße 7
60322 Frankfurt am Main

7

Germany
Facsimile: +49 (69) 15050440

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

10. **Expenses**.  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

11. **No Admission of Liability**.  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

12. **Entire Agreement**.  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Plan and the terms of this Agreement, the terms of this Agreement shall control.  The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

13. **No Oral Modifications**.  This Agreement may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of the Debtors must be provided in a writing signed by the LB Capital InsAdmin.  Any waiver of compliance with any term or provision of this Agreement on the part of the LB Capital InsAdmin must be provided in a writing signed by each Debtor.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

14. **Construction**.  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

15. **Binding Effect; Successor and Assigns**.  Any declaration or statement of the LB Capital InsAdmin shall only be made in her capacity and function as LB Capital InsAdmin as Insolvency Administrator (*Insolvenzverwalter*) of LB Capital, and shall in no circumstance be construed as being a declaration or statement of the LB Capital InsAdmin on her own and personal behalf.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; *provided*, *however*, that, except for the Purchased Rights, no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

16. **Counterparts**.  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

17. **Headings; Schedules and Exhibits**.  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to sections, unless otherwise indicated, are references to sections of this Agreement.  All Schedules to this Agreement are hereby made a part hereof and

incorporated herein by reference for all purposes.  Reference to any Schedule herein shall be to the Schedules attached hereto.

18.    ***No Personal Liability***.  The Parties (and solely for the purposes of this section 18, including the LB Capital InsAdmin also acting on her own and personal behalf) accept and agree that this Agreement and all actions and measures contained herein do not give rise to any personal liability on the part of the LB Capital InsAdmin, her firm and its partners and employees, and her representatives or other professional advisors, and to the extent any such personal liability existed, the Parties explicitly waive any and all potential rights and claims against her, her firm and its partners and employees, and her representatives and other professional advisors, personally.  The LB Capital InsAdmin further accepts and agrees that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, asset managers, representatives or professional advisors of the Debtors and to the extent any such personal liability existed, the LB Capital InsAdmin explicitly waives any and all potential rights and claims against all of the aforementioned persons.  Any claim by a Party against the LB Capital InsAdmin or LB Capital arising under or relating to this Agreement shall only be satisfied out of the assets of the insolvency estate of LB Capital, and any claim by a Party against the Debtor arising under or relating to this Agreement shall only be satisfied out of the assets of such Debtor.

19.    ***Severability and Construction***.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

20.    ***Waiver of Jury Trial.***  EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 20 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by her or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC, as Debtors

By: _____
Name: John Suckow
Title:  Authorized Signatory

LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtors

By: _____
Name:  Daniel Ehrmann
Title:  Authorized Signatory

Claudia C.E. Jansen in her capacity as Insolvency Administrator (*Insolvenzverwalter*) of Insolvenzverfahren Lehman Brothers Capital GmbH

By: _____

Name:  Claudia C.E. Jansen

Title:  Insolvency Administrator (*Insolvenzverwalter*)

10

IN WITNESS WHEREOF, each Party by her or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI
STATLER ARMS LLC, CES AVIATION LLC,
CES AVIATION V LLC, CES AVIATION IX
LLC, LEHMAN SCOTTISH FINANCE L.P.,
BNC MORTGAGE LLC, LB ROSE RANCH
LLC, STRUCTURED ASSET SECURITIES
CORPORATION, LB 2080 KALAKAUA
OWNERS LLC, MERIT LLC, LB PREFERRED
SOMERSET LLC, LB SOMERSET LLC, as
Debtors


By: _____
Name: John Suckow
Title: Authorized Signatory


LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST DOVER
LIMITED, LUXEMBOURG RESIDENTIAL
PROPERTIES LOAN FINANCE S.A.R.L., as
Debtors


By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory


Claudia C.E. Jansen in her capacity as Insolvency Administrator (*Insolvenzverwalter*) of Insolvenzverfahren Lehman Brothers Capital GmbH


By: _____
Name: Claudia C.E. Jansen        *May 11, 2012*

Title: Insolvency Administrator (*Insolvenzverwalter*)


CLAUDIA C. E. JANSEN
IN BÜROGEMEINSCHAFT
BRINKMANN & PARTNER
RECHTSANWÄLTE • STEUERBERATER
WIRTSCHAFTSPRÜFER
LYONER STRASSE 14
60528 FRANKFURT AM MAIN
TELEFON: (069) 37 00 22-0 FAX: (069) 37 00 22-111

10

Schedule A

Proofs of Claim

| Claim Number | Claimant | Debtor against which claim was filed | Amount (USD) |
|---|---|---|---|
| 8869 | GMBH (LEHMAN BROTHERS CAPITAL GMBH) | Lehman Brothers Holdings Inc. | $ 30,303,149 |
| 8870 | GMBH (LEHMAN BROTHERS CAPITAL GMBH) | Lehman Brothers Special Financing Inc. | 208,720 |
| 8871 | GMBH (LEHMAN BROTHERS CAPITAL GMBH) | Lehman Brothers Holdings Inc. | 14,759,385 |

## **Schedule B**

**Consent**

*Execution Version*

## CONSENT

## Dated as of May 11, 2012

THIS CONSENT (the "Consent") is made and entered into as of the date hereof by and among the Debtors,[1] Claudia C.E. Jansen in her capacity as Insolvency Administrator (*Insolvenzverwalter*) (the "LB Capital InsAdmin") of Insolvenzverfahren Lehman Brothers Capital GmbH ("LB Capital"), and CVI GVF (LUX) Master S.à.r.l. of 11 – 13 Boulevard de la Foire, L-1528 Luxembourg (the "Purchaser"). All capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Settlement Agreement by and among the Debtors and the LB Capital InsAdmin, dated as of May 11, 2012 (the "Settlement Agreement").

## W I T N E S S E T H :

WHEREAS, the LB Capital InsAdmin has filed a proof of claim, Claim No. 8871, against LBHI in the amount of $14,759,385 (the "Guarantee Claim"); and

WHEREAS, the LB Capital InsAdmin has filed a proof of claim, Claim No. 8869, against LBHI in the amount of $30,303,149 (the "Direct Claim," and, together with the Guarantee Claim, the "Claims"); and

WHEREAS, pursuant to those certain agreements (together, the "LB Capital Agreements"), each dated January 11, 2011, between the LB Capital InsAdmin and the Purchaser, LB Capital InsAdmin has sold, and the Purchaser has purchased (*gekauft*) and the LB Capital InsAdmin has assigned (*abgetreten*) to the Purchaser, subject to a certain condition precedent which the Purchaser may waive at any time, Claim Nos. 8871 and 8869 (such rights (*Anwartschaftsrechte*) acquired under the LB Capital Agreements, the "Purchased Rights"); and

WHEREAS, the Debtors and the LB Capital InsAdmin have agreed, in accordance with the Settlement Agreement, to the allowance and treatment of the Claims pursuant to the terms and conditions of the Settlement Agreement; and

WHEREAS, the Purchaser, as the owner of the Purchased Rights, has agreed to the allowance and treatment of the Claims in accordance with the terms and provisions set forth below.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Consent hereby agree as follows:

1.    Consent.    The Purchaser acknowledges that it has received a copy of the Settlement Agreement and hereby agrees and consents to the LB Capital InsAdmin's entry into the Settlement Agreement.

---

[1]    As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

2.    Title. The Purchaser warrants and represents that it owns and has good title to the Purchased Rights, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by or against the Purchaser as of the date hereof and has not transferred or assigned to any other person the Purchased Rights, in whole or in part.

3.    Agreement to Be Bound. The Purchaser hereby agrees that upon acquisition *in rem* (*dinglicher Erwerb*) of either or both Claims, with respect to the Claim(s) acquired *in rem*, it shall become a party to the Settlement Agreement and shall be fully bound by, and subject to, all of the covenants, terms, obligations and conditions of the Settlement Agreement as though it were an original Party thereto. The Purchaser shall not be bound to or subject to the covenants, terms, obligations and conditions of the Settlement Agreement with respect to any claims that the Purchaser may hold from time to time other the Claim(s) which it has acquired *in rem*.

4.    Termination. This Consent shall terminate automatically upon termination of the Settlement Agreement pursuant to the terms thereof and shall be of no force and effect.

5.    Notices. All notices and other communications given or made to the Purchaser pursuant to this Consent shall be deemed given if in writing and if sent by confirmed electronic mail, facsimile, courier, or by registered or certified mail (return receipt requested) to the following address:

> CVI GVF (LUX) Master S.à.r.l.
> c/o CarVal Investors UK Limited
> 3rd Floor
> 25 Great Pulteney Street
> London W1F 9LT
> Attention: David Short / Annemarie Jacobsen
> Telephone: +44 20 7292 7721
> Email: david.short@carval.com

or to such other address as may be furnished by the Purchaser. Any notice given by delivery, mail or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral or machine confirmation of transmission.

5.    This Consent shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

6.    This Consent may be executed in counterparts, each such counterpart shall be deemed an original and all such counterparts shall together constitute one instrument.

This Consent shall be effective as of the date first set forth above.

CVI GVF (LUX) Master S.à.r.l.:
BY CARVAL INVESTORS UK LIMITED

By: _____

Name: _____DAVID SHORT_____
_____OPERATIONS MANAGER_____

Title: _____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
In re                                         :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :    **08-13555 (JMP)**
                                              :
                              **Debtors.**    :    **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT AGREEMENT WITH THE INSOLVENCY ADMINISTRATOR OF LEHMAN BROTHERS CAPITAL GMBH

Upon the motion, dated May 21, 2012 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors (the "Plan"), pursuant to section 105(a) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for approval of the Settlement Agreement,[1] all as more fully described in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

amended order entered June 17, 2010 governing case management and administrative procedures [ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the LB Capital InsAdmin; (vi) the attorneys for the Purchaser; and (vii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted; and it is further

ORDERED that, pursuant section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement Agreement, dated as of May 11, 2012 and attached to the Motion as Exhibit A, is approved; and it is further

ORDERED that the Plan Administrator and the Chapter 11 Estates are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: June __, 2012
     New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE