UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
In re                                            :   Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,           :   08-13555 (JMP)
                                                 :
                             Debtors.            :   (Jointly Administered)
-------------------------------------------------------x
```

**TENTH INTERIM APPLICATION OF LAZARD FRÈRES & CO. LLC,
DEBTORS' INVESTMENT BANKER FOR ALLOWANCE OF
COMPENSATION AND FOR THE REIMBURSEMENT OF ACTUAL AND
NECESSARY EXPENSE INCURRED FOR THE PERIOD FROM
OCTOBER 1, 2011 THROUGH MARCH 6, 2012**

| | |
|---|---|
| Name of Applicant: | **Lazard Frères & Co. LLC** |
| Authorized to Provide Professional Services to: | **Debtors and Debtors-in-Possession** |
| Date of Retention: | **December 17, 2008 *nunc pro tunc* September 15, 2008** |
| Period for which compensation and/or reimbursement is sought: | **October 1, 2011 through March 6, 2012** |
| Amount of Compensation Requested: | **$18,538,709.68** |
| Amount of Expenses Reimbursement Requested: | **$283,270.70** |
| Total Compensation and Expense Reimbursement Requested: | **$18,821,980.38** |
| Less: Amounts Paid to Date: | **($480,209.28)** |
| Net Amount of Compensation Requested: | **$18,341,771.10** |

This is a(n): _____ monthly    X    interim    _____ final application

**UNITED STATES BANKRUPTCY COURT**

## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

-------------------------------------------------------------x

### TENTH INTERIM APPLICATION OF LAZARD FRÈRES & CO. LLC, DEBTORS' INVESTMENT BANKER FOR ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSE INCURRED FOR THE PERIOD FROM OCTOBER 1, 2011 THROUGH MARCH 6, 2012

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lazard Frères & Co. LLC, ("Lazard"), Investment Banker to Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors" and together with certain of their non-debtor affiliates, "Lehman"), hereby submits its Tenth Interim Fee Application (the "Interim Application") pursuant to sections 328, 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code) for an allowance of compensation for professional services rendered to the Debtors and for reimbursement of actual and necessary expenses incurred in connection with such services from October 1, 2011 through and including March 6, 2012 (the "Compensation Period") as set forth in their engagement letter (the "Engagement Letter"), attached hereto as **Exhibit A**.

## BACKGROUND

1.     On September 15, 2008, the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On December 17, 2008, this Court entered that certain order pursuant to section 328 authorizing the retention and employment of Lazard Frères & Co. LLC as investment bankers to the Debtors *nunc pro tunc* to September 15, 2008, attached hereto as **Exhibit B**.

3.     On February 5, 2010, Lazard filed its Second Supplemental Affidavit of Barry W. Ridings in Connection with the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors (the "Second Supplemental Affidavit"). Pursuant to the Second Supplemental Affidavit, Lazard has agreed to reduce its Monthly Compensation to $200,000.00 per month effective as of December 1, 2009.

4.     On March 22, 2011, this Court entered that certain order approving Lazard's Supplemental Application and Modified Engagement Letter pursuant to section 328, attached hereto as **Exhibit C**. Pursuant to Lazard's Modified Engagement Letter, Lazard has billed $900,000 in Monthly Compensation ($150,000 per month effective June 1, 2010 through November 30, 2010) related to Lazard's LAMCO work.

5.     On March 6, 2012, Lehman announced that its Modified Third Amended Joint Chapter 11 Plan, which had been confirmed by the U.S. Bankruptcy Court for the Southern District of New York on December 6, 2011, had become effective. Therefore,

3

pursuant to section 2(c) of the Engagement Letter, Lazard is billing a fee in the amount of $17,500,000 in this Interim Application.

6.    Pursuant to section 2(c) of the Engagement Letter, "upon effectiveness of the plan of reorganization" Lazard is entitled to a fee of 0.5% of any cash and property distributed or distributable to the Stakeholders as that term is defined in the Engagement Letter, subject to a maximum fee of $17,500,000. The maximum fee Lazard is entitled to would be obtained if the value of distributable cash and property were to equal or exceed $3.5 billion ($3.5 billion x .5% equals $17.5 million). According to Exhibit B of the Notice Regarding Initial Distributions Pursuant to the Modified Third Amended Join Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Initial Distribution Notice", Docket No. 27312) filed on April 11, 2012, Non-Priority General Unsecured claimholders will receive approximately $22.5 billion in the first distribution, excluding any cash reserve for disputed claims. Therefore, the distributable value to Stakeholders far exceeds the $3.5 billion threshold necessary for Lazard to be entitled to its maximum fee under the Engagement Letter.

7.    All services for which Lazard requests compensation were performed for or on behalf of the Debtor.

## COMPENSATION REQUEST

8.    This Application is submitted pursuant to the terms of that certain third amended order establishing procedures for interim compensation and reimbursement of expenses of professionals dated June 25, 2009 (the "Administrative Order"). Pursuant to the Administrative Order, Lazard is seeking interim allowance and full payment, without any

4

holdback of fees, of $18,538,709.68 for professional services rendered to the Debtors, comprised of the $17,500,000.00 fee indicated in sections 5 and 6 of this Interim Application pursuant to the Engagement Letter between Lazard and LBHI and $1,038,709.68 as compensation for professional services rendered for the period from October 1, 2011 through March 6, 2012. In addition, Lazard is seeking interim allowance and full payment, without any holdback of fees, of $283,270.70 for reimbursement of expenses relating to services rendered on behalf of the Debtors during the Compensation Period, for a total award $18,821,980.38 (the "Compensation Amount"). The services provided are detailed below.

9.    For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary setting forth the name of each professional for whose work on these reorganization cases compensation is sought.

10.    Prior Monthly Applications for the Compensation Period:

| Date Filed | Period Covered | Requested | | Amounts Paid | | Net Requested |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | |
| 12/15/11 | 10/01/11 - 10/31/11 | $200,000.00 | $103.65 | $160,000.00 | $103.65 | $40,000.00 |
| 12/15/11 | 11/01/11 - 11/30/11 | 200,000.00 | 105.63 | 160,000.00 | 105.63 | 40,000.00 |
| 01/23/12 | 12/01/11 - 12/31/11 | 200,000.00 | 0.00 | 160,000.00 | 0.00 | 40,000.00 |
| Current | 01/01/12 - 03/06/12 | 17,938,709.68 | 283,061.42 | 0.00 | 0.00 | 18,221,771.10 |
| **TOTAL** | | **$18,538,709.68** | **$283,270.70** | **$480,000.00** | **$209.28** | **$18,341,771.10** |

## SUMMARY OF SERVICES

11.    During the Compensation Period, the Debtors relied heavily on the experience and expertise of Lazard's professionals in dealing with matters described in Paragraph 12.  Since the bankruptcy filing of LBHI on September 15, 2008, and through the Compensation Period, Lazard's highly skilled restructuring and mergers and acquisitions professionals devoted significant time and effort to perform properly and expeditiously the required professional services.  Lazard professionals based in the United States worked on various Lehman related matters, including but not limited to real estate funds and comprehensive financial analysis in connection with the plan of reorganization.

12.    A summary of some of the services rendered by Lazard during the Compensation Period are as follows:

> a) *Financial Analyses Related to the Debtors' Plan of Reorganization:*
> During the Compensation Period, Lazard professionals continued to work closely with A&M and counsel to the Debtors to refine financial analyses related to Lehman's Third Amended Plan and Disclosure Statement. Lazard continually updated the recovery model used to estimate ultimate creditor recoveries under a multitude of scenarios and assumptions discussed with A&M and Debtors' counsel. These analyses required that Lazard professionals create numerous presentations and participate in multiple calls and meetings over the course of the compensation period.

> b) *Review of Strategic Alternatives Regarding the Estate's Remaining Preferred and Common Equity Positions in Neuberger Berman*:
> During the Compensation Period, Lazard professionals devoted significant time to assist the Estate in evaluating and negotiating strategic alternatives related to the Estate's preferred and common equity ownership of Neuberger Berman. Lazard conducted extensive financial analysis, including capital structure and transaction analyses, valuation and benchmarking analyses, and cash flow and return analyses.  Lazard individuals worked closely with A&M during the process to refine assumptions.  Further, Lazard assisted the Estate in several negotiation sessions, including various in-person meetings with A&M and the counsel to the debtors, the UCC advisors, an ad-

6

hoc group of Lehman Brothers creditors and Neuberger management and its advisors. Lazard individuals also reviewed and analyzed financial projections provided by Neuberger management and valuation materials produced by third-party valuation agents, valuing Neuberger Berman's common equity.

c)  *Oversight of the Aurora Sale Process:* During the Compensation Period Lazard professionals continued to monitor the Debtors' ongoing efforts to monetize their interests in the assets of Aurora Bank. This oversight required Lazard professionals to review documents related to the sale process and participate in numerous calls with the Debtor's management to discuss the sale process.

d)  *Valuation Analyses Related to the sale of the Debtor's stake in Wilton Re:* During the Compensation Period, Lazard bankers conducted a range of valuation and other financial analyses for the Estate with respect to the Debtor's equity stake in Wilton Re. In the context of Lazard's analysis, Lazard individuals reviewed the financial terms and conditions of the share purchase agreement and analyzed certain historical business and financial information relating to Wilton Re. Lazard individuals conducted due diligence calls with the Debtor's management and conducted in-person due diligence with Wilton Re's senior management. Lazard individuals reviewed certain financial forecasts prepared by Wilton Re and reviewed public information of relevant comparable companies and considered certain economic and industry information relevant to the operating business. In addition, Lazard bankers reviewed and drafted certain court filings in relation to the sale of the Debtor's interest in Wilton Re.

e)  *Other:* During the Compensation Period, Lazard professionals also provided assistance on several additional matters.

13.  In support of the $17,500,000 fee indicated in sections 5 and 6 of this Interim Application, a summary of some of the services rendered by Lazard during the course of the entire case are as follows:

a)  *Sale of Lehman's North American Banking Operations*: Lazard represented LBHI in the sale of the North American investment banking operations to Barclays, which was approved on September 20, 2008. Lazard acted as the primary financial negotiator in the transaction, which was completed under tremendous time pressure during an extremely volatile market. Lazard participated in around-the-clock negotiations during which the deal was tenuous. Lazard worked diligently, creating presentations and attending meetings with the Lehman Board of Directors and senior management, to find a

7

solution that worked for both parties. Failure to reach an agreement on a transaction would have resulted in a liquidation of the investment bank and significantly reduced proceeds to the Estate. Additionally, Lazard provided proffered testimony in connection with the transaction.

b) *Sale of Lehman's CDO Fund*: Lazard led the sale process of Lehman's CDO fund. Between November 2008 and January 2009, Lazard contacted 26 parties. Lazard managed the electronic data room, coordinated management presentations and devoted considerable time in discussions with management to understand the business and worked with management, Alvarez & Marsal ("A&M"), counsel and advisors to the creditors' committee to understand and evaluate the bids that were received.

c) *Sale of Lehman Trust*: Lazard was actively involved in the sale process for Lehman's trust business. Lazard, together with A&M, had discussions and meetings with a number of potential buyers, as well as reviewed financial information. In addition, Lazard attended meetings, evaluated proposals, reviewed legal documents and negotiated terms with key constituents.

d) *Evaluation of Strategic Alternatives for Lehman Brothers Bank*: Lazard was actively engaged in the sale process of Lehman Brothers Bank ("LBB"), a Delaware thrift comprised of three businesses: mortgage servicing, small business finance and student lending. Senior Lazard professionals, in consultation with A&M and LBB's management, initiated a sale process for the assets and liabilities of LBB during which Lazard contacted many potential strategic and financial buyers. From the marketing process, Lazard worked to try and consummate a transaction with several parties. However, based on analysis performed by A&M and Lazard, none of the alternatives were in the best interests of the Estate. Lazard then worked with LBB and A&M to consider other alternatives.

Lazard professionals conducted a thorough and comprehensive sale process for the small business finance unit of LBB on a standalone basis. Lazard contacted a number of potential buyers, sent confidentiality agreements, facilitated due diligence, scheduled and attended management presentations and held numerous discussions with management, counsel, regulators and other interested parties. Lazard worked with management to negotiate deal terms, draft a purchase agreement and obtain finalized documentation. In March and April of 2009, LBB closed the sale of a substantial portion of the assets of the small business finance division.

e) *Sale of Lehman's Merchant Banking & Venture Capital funds*: Since October 2008, Lazard has been actively engaged in the sale of Lehman's interest in its Merchant Banking and Venture Capital funds.

8

Lazard has run a full sale process for both funds, during which Lazard professionals contacted over 200 potential buyers and sent out over 80 confidentiality agreements.

Following the extensive work that went into running the sale process for Merchant Banking, which ultimately led to six final proposals, Lazard continued to dedicate considerable time structuring the final sale transaction and ensuring its successful execution. Lazard continued to work closely with the counsel to the Debtors to finalize the purchase agreement and all related documents. During the process, Lazard communicated regularly with the Estate and the advisors to the creditors. Additionally, Lazard assisted in drafting a presentation that the Estate delivered to the Lehman Board of Directors for their approval of the transaction. The transaction ultimately closed in April 2009.

f) *Sale of Lehman's SkyPower Assets*: Lazard professionals were involved in the sale process for SkyPower, a renewable energy company. Lazard performed financial analysis and facilitated due diligence requests. Lazard professionals also discussed valuation and the sale process strategy with the Estate.

g) *Investment in Alternative Asset Managers*: Lazard worked closely with Lehman to evaluate the status of an equity position in a U.S. alternative asset manager. Lazard met with the management of the alternative asset manager several times to conduct extensive due diligence and review financial and other information. Lazard performed financial analysis and shared its findings with A&M.

h) *Sale of Lehman Brothers Real Estate Private Equity Business:* Lazard conducted a strategic review with the Estate of alternatives for the Lehman Brothers Real Estate Private Equity Business, whose assets included asset management contracts and general and limited partner interests in five funds. As part of its strategic review, Lazard ran a three-round marketing process in which over 100 parties were contacted and 40 parties executed confidentiality agreements and reviewed dataroom materials. The multiple-round auction process resulted in two executed sale transactions, (i) the sale of GP interests in Lehman Brothers Real Estate Mezzanine Partners Funds I and II to PCCP, LLC that closed in December of 2009 and (ii) the sale of management contracts for Lehman Brothers Real Estate Partners Funds I, II and III to current management and third parties organized as Silverpeak Real Estate Partners in May 2010.

Throughout the marketing process the Lazard team maintained discussions, facilitated diligence and held negotiations with interested parties, working to determine interest levels and develop actionable transaction alternatives for the Estate while maintaining a competitive dynamic among potential acquirers. Specifically, the Lazard team

performed the following tasks: (i) assisted in creating marketing materials and business projection models, (ii) facilitated management meetings and collaborated in the drafting management presentations; (iii) responded to diligence questions from potential sponsors, which required significant Lazard resources given the specificity of the questions and large size of the real estate portfolio; (iv) facilitated and chaperoned diligence calls, including lengthy portfolio reviews with regional asset managers; (v) participated in structuring discussions with legal counsel; (vi) negotiated terms with potential buyers; (vii) collaborated with financial advisors to third-party limited partners to secure transaction approvals and (viii) prepared materials for and provided regular in-person updates to the Estate, the Board, creditor committees and other key constituents. Significant Lazard senior resources were required to review term sheets and proposals with potential sponsors and ultimately negotiate transaction terms and purchase agreements with multiple parties.

i)  *Assistance in LAMCO Process:* Pursuant to Lazard's Supplemental Application and Modified Engagement Letter, Lazard conducted a comprehensive marketing process on behalf of the estate in order to obtain a strategic investor in LAMCO. As part of this process, Lazard conducted numerous first and second-round meetings with potential strategic partners, reviewed and analyzed term sheet proposals from potential strategic investors, conducted, and assisted LAMCO management with, negotiations with potential strategic investors and provided periodic updates to the Creditors Committee. This marketing process was terminated by management, in consultation with the Creditors Committee.

j)  *International Transactions*: Internationally, Lazard professionals devoted significant time and resources providing strategic advice relating to the various Lehman businesses overseas. Lazard ran a full sale process on Lehman's interest in an alternative asset manager based in the United Kingdom and Lehman's banking units in France and Brazil. In addition, senior Lazard professionals provided strategic advice in connection with the European Mezzanine fund and other Lehman-related businesses in Asia, France, Germany, Italy and the United Kingdom.

k)  *Sale of Lehman's Investment Management Division and Subsequent Review of Strategic Alternatives Regarding the Estate's Remaining Preferred and Common Equity Positions in Neuberger Berman*: Lazard acted as the sell-side advisor to the Estate in the management buyout of the Estate's investment management division. In 2008, Lazard ran a comprehensive sale process for the investment management division and worked with the Debtors to negotiate a management buyout bid, which was ultimately determined to be the winner at an auction held on December 3, 2008. As part of the sale

process, Lazard contacted various potential buyers, helped negotiate confidentiality agreements, facilitated due diligence, negotiated purchase agreements and maintained ongoing communication with the Debtors, the Debtor's counsel and the advisors of the creditors' committee. Lazard also provided proffered testimony in connection with the transaction and was involved in the closing process of the transaction. The sale subsequently closed in May 2009. As part of the sale, the Estate retained 93% of $875 million of preferred equity and 49% of the common equity of Neuberger Berman. Additionally, Lazard negotiated the purchase of the European and Asian divisions of Lehman Brothers Asset Management as part of the transaction, which required that Lazard review purchase agreements, verify financial statements and participate in calls to facilitate the processes.

Starting in the fourth quarter of 2010, and throughout 2011 and the beginning of 2012, Lazard professionals devoted significant time to assist the Estate in evaluating and negotiating strategic alternatives related to the Estate's remaining preferred and common equity ownership of Neuberger Berman. Lazard performed due diligence on Neuberger, including due diligence sessions with Neuberger senior management and Neuberger's financial advisors. Lazard conducted extensive financial analysis, including capital structure and transaction analyses, valuation and benchmarking analyses, and cash flow and return analyses, under various transaction scenarios. Lazard individuals worked closely with A&M during the process to refine assumptions. Further, Lazard assisted the Estate in several negotiation sessions and presentations, including various in-person meetings with A&M and the counsel to the debtors, the UCC advisors, an ad-hoc group of Lehman Brothers creditors and Neuberger management and its advisors. As part of the discussions and negotiations with Neuberger, Lazard assisted the Estate in drafting various term sheets that were used for discussion purposes and negotiations. Lazard individuals also assisted the Estate in the valuation agent selection process, participating in a series of interview sessions with various candidates. Lazard individuals also reviewed and analyzed financial projections provided by Neuberger management and valuation materials produced by third-party valuation agents, valuing Neuberger Berman's common equity.

l)  *Financial Analyses Related to the Debtors' Plan of Reorganization*: Lazard professionals devoted significant time and resources to the development of a comprehensive financial analysis for the plan of reorganization. Lazard worked closely with A&M and the counsel to the debtors to define assumptions and discuss possible scenarios. Lazard conducted numerous iterations of the analysis and examined various outputs under a multitude of scenarios. Additionally, Lazard and A&M met with the advisors to the committee of unsecured creditors and other key parties on several occasions to discuss the

11

assumptions supporting the analyses and answer any questions. These meetings necessitated that Lazard prepare numerous presentations and gather the supporting background materials. The analyses Lazard produced as a result of this work was used in each of the Debtors filed disclosure statements.

m) *PIK Note Analysis*: Lazard worked on the valuation of the PIK note provided by Lehman ALI Inc., a wholly-owned direct subsidiary of LBHI, to Lehman Brothers Inc. ("LBI"). Lazard prepared numerous presentations and analyses for meetings with the Debtors and their advisors to discuss the PIK note and the appropriate steps for the estate to take in negotiating the ultimate value of the PIK note with LBI.

n) *Aurora Bank Sale Process*: Lazard professionals conducted a sale process related to the Estate's ownership of Aurora Bank, which required that Lazard professionals prepare numerous presentations and analyses, and contact multiple potential buyers. In addition, Lazard professionals provided oversight and assistance related to subsequent sale processes run by the Estate in connection with the Aurora Bank assets. This oversight and assistance necessitated that Lazard professionals review key documents and participate in numerous calls and meetings.

o) *Work Related to the Debtors' Equity Stake in Wilton Re:* Lazard professionals worked closely with the Estate to evaluate and negotiate an amended and restated subscription agreement related to LBHI's investment in Wilton Re. As a part of this process, Lazard bankers analyzed Wilton Re's business and prepared various materials, all culminating in the successful approval of the amended and restated agreement and LBHI's additional equity funding of Wilton Re. Following LBHI's additional equity funding, Lazard bankers advised Lehman on the sale of Lehman's entire equity interest in Wilton Re. As relates to the sale of Lehman's equity position, Lazard individuals reviewed the financial terms and conditions of the share purchase agreement, analyzed projected and historical business and financial information, and conducted a review of relevant industry and economic information. Lazard professionals also conducted several due diligence calls and meetings with the Debtor's management and Wilton Re's management. In addition, Lazard bankers reviewed and drafted certain court filings in relation to the sale of the Debtor's interest in Wilton Re.

## ACTUAL AND NECESSARY DISBURSEMENTS OF LAZARD

14.    As set forth on **Exhibit E** annexed hereto, Lazard has disbursed

$283,270.70 as expenses incurred in providing professional services during the

12

Compensation Period. Lazard has maintained detailed records of actual and necessary expenses incurred during the Compensation Period. With respect to expenses, it should be noted that Lazard has absorbed certain expenses customarily charged by other professionals in bankruptcy cases. For example, Lazard does not allocate office telephonic charges by client and thus these costs are absorbed by Lazard in its overhead and not charged to the Debtors' estate. Lazard respectfully submits that the expenses for which it seeks allowance during the Compensation Period are necessary and reasonable both in scope and amount.

## CONCLUSION

15.    It is respectfully submitted that the amount requested by Lazard is fair and reasonable given (a) the complexity of the issues presented, (b) the time and labor required, (c) the skill necessary to perform the financial advisory services, (d) the preclusion of other employment, and (e) the customary fees charged to clients in bankruptcy and non-bankruptcy situations.

WHEREFORE Lazard respectfully requests (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $18,538,709.68 and reimbursement for actual and necessary expenses Lazard incurred during the Compensation Period in the amount of $283,270.70; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Lazard's right to seek additional compensation for services performed and expenses incurred to during the Compensation Period which were not processed at the time of this Application; and (iii) such other and further relief as is just.

13

| | |
|---|---|
| Total Amount of Compensation Requested: | **$18,821,980.38** |
| Less: Amounts Paid to Date: | **($480,209.28)** |
| Net Amount of Compensation Requested: | **$18,341,771.10** |

Dated:  New York, New York
      May 18, 2012

Matthew Hart
Director
LAZARD FRÈRES & CO. LLC
30 Rockefeller Plaza
New York, New York 10020
(212) 632-6000
Investment Banker for the Debtors and
Debtors in Possession

14

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re                                          :    Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :    08-13555 (JMP)
                                               :
                           Debtors.            :    (Jointly Administered)

----------------------------------------------------------x

### CERTIFICATION OF LAZARD FRÈRES & CO. LLC

STATE OF NEW YORK        )
                         )        ss:
COUNTY OF NEW YORK       )

I, Matthew Hart, declare as follows:

1.     I am a Director with Lazard Frères & Co. LLC, an investment bank with principal offices located at 30 Rockefeller Plaza, New York, New York 10020. I am authorized to execute this Certification in connection with Lazard's Tenth Interim Fee Application in the above-referenced bankruptcy cases.

2.     To the best of my knowledge and belief, Lazard is in compliance with Fee Review Committee's recommendations for internal and external photocopy expense reimbursement, and the US Trustee's guidelines regarding over-time related expenses for meals and transportation.

Matthew Hart
Managing Director

Dated: 5/18/12

# EXHIBIT A

# Retention Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                              :
**In re**                                     :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*   :    **08-13555 (JMP)**
                                              :
        **Debtors.**                          :    **(Jointly Administered)**
                                              :
------------------------------------------------------------x

**ORDER UNDER 11 U.S.C. §§ 328(a)**
**AND 1103, FED. R. BANKR. P. 2014, AND S.D.N.Y. LBR 2014-1**
**AUTHORIZING EMPLOYMENT AND RETENTION OF LAZARD**
**FRERES & CO. LLC AS INVESTMENT BANKER TO LEHMAN BROTHERS**
**HOLDINGS INC., ET AL., EFFECTIVE AS OF SEPTEMBER 15, 2008**

Upon the Application, dated November 13, 2008 (the "Application")[1] of

Lehman Brothers Holdings Inc. and its affiliated debtors (collectively, the "Debtors") for

an order, pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and rule 2014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing

the Debtors to retain and employ Lazard Frères & Co. LLC ("Lazard") as investment

banker for the Debtors, effective as of September 15, 2008 (the "Effective Date"),

pursuant to the terms of the engagement letter between the Debtors and Lazard, dated

October 20, 2008 (the "Engagement Letter"), and the related indemnification agreement

between the Debtors and Lazard, dated as of September 12, 2008 (the "Indemnification

Letter" and, together with the Engagement Letter, the "Engagement Agreement"); and

---

[1] Capitalized terms that are used but not defined in this order have the meaning ascribed to them in the Application.

the Court having jurisdiction to consider the Application and the relief requested therein

pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy

Judges of the United States District Court for the Southern District of New York (Ward,

Acting C.J.), dated July 10, 1984; and consideration of the Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C § 1408 and 1409; and due and proper

notice of the Application having been provided, and it appearing that no other or further

notice of the Application having been provided, and it appearing that no other or further

notice need be provided; and the Court having reviewed the Application and determined

that the employment of Lazard by the Debtors is necessary and in the best interest of the

Debtors' estate, creditors, and other parties in interest and that the terms of compensation

being sought by the Application as set forth in the Engagement Agreement are

reasonable; and the Court having considered the Affidavit of Barry W. Riddings,

Managing Director and Vice Chairman of Lazard, sworn to on November 13, 2008 (the

"Ridings Affidavit") filed in support of the Application; and the Court being satisfied

based on the representations in the Application and the Ridings Affidavit that Lazard

does not represent any other entity having an adverse interest in connection with the case;

and the Court having determined that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and the Office of the United States Trustee for Region

2 (the "United States Trustee") having no objection to certain modifications of the terms

and conditions of retention set forth in the Final Order Pursuant to 11 U.S.C. §327(a) and

328(a) Authorizing the Employment and Retention of the Blackstone Group L.P. as

2

Financial Advisor for the Debtors and Debtors-In-Possession, entered in *In re Global Crossing, Ltd.*, Case No 02-40187 (REG), because of the exceptional circumstances caused by the scope and magnitude of these chapter 11 cases; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that in accordance with sections 328(a) and 1103 of the Bankruptcy Code, the Debtors are authorized to employ and retain Lazard as of September 15, 2008 as its investment banker in the chapter 11 cases on the terms set forth in the Application and the Engagement Letter, as modified hereby; and it is further

ORDERED that all compensation and reimbursement of expenses to be paid to Lazard shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review, including under section 330 of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding the proceeding paragraph, all monthly fees and all fees payable in connection with any Sale Transaction, any Financing, or any Restructuring (collectively, the "Deferred Fees") and reimbursement of expenses to be paid to Lazard shall be subject to prior approval of this Court pursuant to the standard of review described above, and the United States Trustee shall retain the right to object to the monthly fees and Deferred Fees payable pursuant to the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court shall consider any such objection by the United States Trustee under section 330 of the Bankruptcy Code; and it is further

3

ORDERED that all Lazard financial restructuring personnel employed in domestic U.S. offices of Lazard who provide services to or on behalf of the Debtors as authorized hereby shall keep contemporaneous records of the work performed by them in hourly increments; and it is further

ORDERED that all other personnel of Lazard or its affiliates who provide services to or on behalf of the Debtors as authorized hereby shall keep detailed descriptions of the work performed by them and Lazard shall prepare a weekly summary of such detailed descriptions and provide same to the United States Trustee; and it is further

ORDERED that to the extent the United States Trustee has any objection to the scope, completeness or adequacy of the time records or summaries thereof described in the preceeding paragraph the United States Trustee shall notify Lazard with thirty (30) days of receipt thereof or the United States Trustee shall be deemed to have waived any such objection; and it is further

ORDERED that upon submission of the foregoing time records to the United States Trustee, Lazard shall also provide the United States Trustee with schedules of the Lazard personnel who provided services to or on behalf of the Debtors identifying (i) which individuals are financial restructuring personnel employed in domestic U.S. offices of Lazard and (ii) which are not; provided, however, that Lazard shall not be required to maintain neither time records nor summaries of work performed by Lazard personnel for services rendered to or on behalf of the Debtors through and including the date on which this Order is entered; and it is further

4

ORDERED that in the event Lazard seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Lazard's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that none of the fees hereunder, including the Deferred Fees, shall constitute a "bonus" or "fee enhancement" under applicable law; and it is further

ORDERED that the Debtors will be bound by the indemnification, contribution, reimbursement and exculpation provisions of the Engagement Agreement and will indemnify and hold harmless Lazard and its affiliates, and its and their respective directors, officers, members, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons"), pursuant to the Engagement Agreement and, during the pendency of these chapter 11 cases, subject to the following conditions:

  (i)    all requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Engagement Agreement shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense has resulted in the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or

5

willful misconduct on the party of that or any other Indemnified Person;

(ii)      in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Agreement if the Debtors, their estates or the Committee assert a claim, to the extent that the Court determines by final order that such claim resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person; and

(iii)      in the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be annexed to Lazard's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code; and it is further

ORDERED that to the extent this Order is inconsistent with the Engagement Agreement or the Application, this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated: New York, New York
       December 17, 2008

                     *s/ James M. Peck*
                     UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

# Summary of Hours Expended

**Lehman Brothers Holdings, Inc.**
**Lazard Frères & Co.  LLC**
**Summary of Services Rendered by Project**

**January 1, 2012 - March 6, 2012**

| Project # | Project Description | Total |
|---|---|---|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Interest | 23.0 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projections | 7.8 |
| 3 | Preparation and/or Review of Court Filings | 7.5 |
| 4 | Court Testimony/Deposition and Preparation | 0.0 |
| 5 | Valuation Analysis | 0.0 |
| 6 | Capital Structure Review and Analysis | 4.5 |
| 7 | Merger & Acquisition Activity | 0.0 |
| 8 | Financing Including DIP and Exit Financing | 0.0 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligence | 319.8 |
| 10 | Fee Application, Engagement | 3.0 |
| 11 | Employee Retention Program | 0.0 |
| **TOTAL** | | **365.6** |

**Summary of Services Rendered by Professional**

| Name | Total |
|---|---|
| David Descoteaux, Managing Director | 12.0 |
| Adam Preiss, Associate | 63.5 |
| Christian Tempke, Associate | 1.0 |
| Kevin Mahony, Analyst | 289.1 |
| **TOTAL** | **365.6** |

**Lehman Brothers Holdings, Inc.**
Time Detail
Lazard Frères & Co. LLC
David Descoteaux, Managing Director

| Date: | Description of Work: | Hours: | Code |
|---|---|---|---|
| 01/10/12 | Prep fpr Wilton Re: Hearing | 1.5 | 3 |
| 01/11/12 | Lehman/Wilton hearing | 3.0 | 3 |
| 02/07/12 | Review of financing term sheet | 0.5 | 3 |
| 02/13/12 | Review and comments on financing term sheet | 2.5 | 6 |
| 02/22/12 | Capital Structure Analysis | 0.5 | 6 |
| 02/23/12 | Review of Description of Notes | 1.5 | 6 |
| 02/23/12 | Call on DON with A&M | 0.5 | 1 |
| 02/27/12 | Call with NB management and A&M | 0.5 | 1 |
| 02/28/12 | Review of DON comments | 0.5 | 1 |
| 03/02/12 | Misc. calls and emails | 1.0 | 1 |

**JANUARY - MARCH HOURS**  **12.0**

**Lehman Brothers Holdings, Inc.**

Time Detail

Lazard Frères & Co. LLC

Adam Preiss, Associate

| Date: | Description of Work: | Hours: | Code |
|-------|---------------------|--------|------|
| 01/19/12 | Hours preparation | 1.0 | 10 |
| 01/24/12 | Review of court filings and recovery model | 1.0 | 3 |
| 01/24/12 | Calls with professionals to discuss potential revisions to recovery model | 0.5 | 1 |
| 01/27/12 | Review of recovery model and potential changes | 1.5 | 9 |
| 01/27/12 | Calls and emails with professionals to discuss potential changes to recovery model | 1.0 | 1 |
| 02/02/12 | Review of revised intercompany matrix | 1.0 | 9 |
| 02/03/12 | Call and meetings with professionals to discuss revised intercompany matrix | 1.5 | 1 |
| 02/06/12 | Internal discussion of revised recovery model | 1.0 | 9 |
| 02/07/12 | Review of prior recovery model | 1.5 | 9 |
| 02/09/12 | Updates to recovery model | 2.0 | 9 |
| 02/13/12 | Updates to recovery model | 2.5 | 9 |
| 02/15/12 | Updates to recovery model and review of outputs | 2.0 | 9 |
| 02/17/12 | Updates to recovery model | 2.0 | 9 |
| 02/18/12 | Updates to recovery model and review of new inputs | 4.0 | 9 |
| 02/20/12 | Review of new recovery model | 1.5 | 9 |
| 02/21/12 | Updates to recovery model and calls with professionals to discuss | 4.0 | 9 |
| 02/21/12 | Call with professionals to discuss potential asset dispositions | 1.0 | 1 |
| 02/23/12 | Review of new inputs into recovery model | 0.5 | 9 |
| 02/24/12 | Review of revised recovery model | 1.0 | 9 |
| 02/26/12 | Review of revised recovery model | 3.0 | 9 |
| 02/27/12 | Call with professionals to discuss potential asset dispositions | 1.5 | 1 |
| 02/27/12 | Updates to recovery model | 2.0 | 9 |
| 02/28/12 | Review of new recovery model inputs | 1.0 | 9 |
| 02/29/12 | Call with professionals to discuss recovery model updates | 0.5 | 1 |
| 02/29/12 | Review of revised recovery model | 3.0 | 9 |
| 03/01/12 | Review of revised recovery model | 1.0 | 9 |
| 03/02/12 | Updates to recovery model | 4.5 | 9 |
| 03/03/12 | Updates to and review of recovery model | 5.5 | 9 |
| 03/04/12 | Review of recovery model | 3.5 | 9 |
| 03/05/12 | Review of recovery model | 2.5 | 9 |
| 03/06/12 | Updates to recovery model | 5.0 | 9 |

**JANUARY - MARCH HOURS**                                              **63.5**

**Lehman Brothers Holdings, Inc.**
Time Detail
Lazard Frères & Co. LLC
Christian Tempke, Associate

| Date: | Description of Work: | Hours: | Code |
|---|---|---|---|
| 01/31/12 | Review of budget | 1.0 | 2 |
| | **JANUARY - MARCH HOURS** | **1.0** | |

**Lehman Brothers Holdings, Inc.**
Time Detail
Lazard Frères & Co. LLC
Kevin Mahony, Analyst

| Date: | Description of Work: | Hours: | Code |
|---|---|---|---|
| 01/05/12 | Compile court filings from docket | 0.3 | 1 |
| 01/11/12 | Compile court filings from docket | 0.5 | 1 |
| 01/18/12 | Hours preparation | 1.0 | 10 |
| 01/19/12 | Hours preparation | 1.0 | 10 |
| 01/25/12 | Compile court filings from docket | 0.5 | 1 |
| 01/30/12 | Work on recovery model | 1.5 | 2 |
| 01/30/12 | Work on intercompany model | 2.5 | 2 |
| 01/31/12 | Work on intercompany model | 2.8 | 2 |
| 02/01/12 | Update intercompany model to prepare for new figures | 3.5 | 9 |
| 02/02/12 | Work on intercompany model to prepare for new figures | 2.5 | 9 |
| 02/02/12 | Review new intercompany matrix | 2.0 | 9 |
| 02/02/12 | Call to discuss new intercompany matrix | 1.0 | 1 |
| 02/02/12 | Update intercompany model with new matrix | 5.3 | 9 |
| 02/03/12 | Analyze new intercompany matrix | 2.8 | 9 |
| 02/03/12 | Interface (calls and emails) with A&M regarding new intercompany matrix | 1.5 | 1 |
| 02/03/12 | Update intercompany model for new matrix | 3.8 | 9 |
| 02/04/12 | Update intercompany model for new matrix | 4.3 | 9 |
| 02/05/12 | Update intercompany model | 4.5 | 9 |
| 02/06/12 | Work on intercompany model | 5.5 | 9 |
| 02/06/12 | Internal meeting regarding intercompany matrix | 0.5 | 1 |
| 02/06/12 | Work on intercompany model | 2.5 | 9 |
| 02/07/12 | Review old recovery model | 2.0 | 9 |
| 02/07/12 | Work on intercompany model | 4.5 | 9 |
| 02/08/12 | Work on intercompany model - LBHI | 6.3 | 9 |
| 02/08/12 | Work on new recovery/distribution model | 3.0 | 9 |
| 02/09/12 | Work on intercompany model | 7.3 | 9 |
| 02/09/12 | Work on new recovery/distribution model | 0.8 | 9 |
| 02/10/12 | Work on intercompany model - LBHI | 2.3 | 9 |
| 02/10/12 | Work on new recovery/distribution model - plan adjustments | 5.5 | 9 |
| 02/11/12 | Work on new recovery/distribution model outputs | 5.5 | 9 |
| 02/12/12 | Work on new recovery/distribution model - incorporating intercos | 5.5 | 9 |
| 02/12/12 | Work on intercompany model - LBHI | 2.0 | 9 |
| 02/13/12 | Work on intercompany netting | 4.3 | 9 |
| 02/14/12 | Work on new recovery/distribution model outputs | 3.0 | 9 |
| 02/14/12 | Work on new recovery/distribution model asset assumptions | 3.5 | 9 |
| 02/15/12 | Work on new recovery/distribution model | 4.8 | 9 |
| 02/15/12 | Review revised intercompany matrix | 1.5 | 9 |
| 02/15/12 | Interface (calls and emails) with A&M regarding new intercompany matrix | 1.0 | 1 |
| 02/16/12 | Work on intercompany model | 3.3 | 9 |
| 02/16/12 | Work on new recovery/distribution model | 2.0 | 9 |
| 02/17/12 | Work on new recovery/distribution model outputs | 5.8 | 9 |
| 02/18/12 | Interface (calls and emails) with A&M regarding new intercompany matrix | 1.0 | 1 |
| 02/18/12 | Call with A&M to discuss intercompany matrix | 1.0 | 1 |
| 02/18/12 | Work on intercompany model | 5.8 | 9 |
| 02/19/12 | Review revised asset input for recovery model | 1.0 | 9 |
| 02/19/12 | Work on recovery/distribution model | 4.8 | 9 |
| 02/20/12 | Work on recovery/distribution model | 3.3 | 9 |
| 02/20/12 | Work on intercompany model | 2.8 | 9 |
| 02/21/12 | Work on recovery/distribution model | 6.8 | 9 |
| 02/22/12 | Work on recovery/distribution model | 5.5 | 9 |
| 02/22/12 | Internal meeting regarding intercompany matrix | 0.5 | 1 |
| 02/23/12 | Work on recovery/distribution model | 5.5 | 9 |

**Lehman Brothers Holdings, Inc.**

Time Detail

Lazard Frères & Co. LLC

Kevin Mahony, Analyst

| Date: | Description of Work: | Hours: | Code |
|---|---|---|---|
| 02/23/12 | Review new inputs from A&M on recovery/distribution model | 1.0 | 9 |
| 02/23/12 | Internal meeting regarding intercompany matrix | 0.5 | 1 |
| 02/23/12 | Interface (calls and emails) with A&M regarding new inputs | 0.5 | 9 |
| 02/23/12 | Work on intercompany model | 3.3 | 9 |
| 02/24/12 | Work on recovery/distribution model | 7.8 | 9 |
| 02/24/12 | Review new intercompany matrix | 1.0 | 9 |
| 02/24/12 | Internal meeting regarding intercompany matrix | 0.3 | 1 |
| 02/25/12 | Work on recovery/distribution model | 7.0 | 9 |
| 02/25/12 | Work on intercompany model | 2.0 | 9 |
| 02/25/12 | Internal meeting regarding plan outputs | 0.5 | 1 |
| 02/25/12 | Work on intercompany model | 2.0 | 9 |
| 02/26/12 | Work on recovery/distribution model | 4.8 | 9 |
| 02/26/12 | Work on recovery/distribution model - interco inputs | 8.8 | 9 |
| 02/27/12 | Work on recovery/distribution model | 7.8 | 9 |
| 02/27/12 | Internal meeting regarding plan outputs | 0.5 | 1 |
| 02/27/12 | Review and analyze recovery model input materials | 1.8 | 9 |
| 02/28/12 | Review recovery model input materials | 1.3 | 1 |
| 02/28/12 | Work on recovery/distribution model - outputs | 9.3 | 9 |
| 02/28/12 | Compile court filings from final plan | 1.5 | 3 |
| 02/28/12 | Internal meeting regarding plan outputs | 0.5 | 1 |
| 02/29/12 | Review recovery model input materials | 1.0 | 9 |
| 02/29/12 | Work on recovery/distribution model - new claim inputs | 2.5 | 9 |
| 02/29/12 | Work on recovery/distribution model - intercos | 7.3 | 9 |
| 03/01/12 | Review and analyze new intercompany matrix from A&M | 1.0 | 9 |
| 03/01/12 | Internal meeting regarding intercompany matrix | 0.5 | 1 |
| 03/01/12 | Work on intercompany model | 3.3 | 9 |
| 03/01/12 | Work on recovery/distribution model - outputs | 3.8 | 9 |
| 03/01/12 | Internal meeting regarding model outputs | 0.5 | 1 |
| 03/02/12 | Work on recovery/distribution model - new claim inputs from A&M | 1.8 | 9 |
| 03/02/12 | Work on recovery/distribution model - intercos | 3.5 | 9 |
| 03/02/12 | Work on recovery/distribution model - model checking | 4.8 | 9 |
| 03/03/12 | Work on recovery/distribution model - intercos | 2.8 | 9 |
| 03/03/12 | Work on recovery/distribution model - model checking | 5.5 | 9 |
| 03/03/12 | Internal meeting regarding model checking | 0.5 | 1 |
| 03/03/12 | Internal meeting regarding plan outputs | 0.3 | 1 |
| 03/04/12 | Work on recovery/distribution model - model checking | 6.3 | 9 |
| 03/04/12 | Internal meeting regarding model checking | 0.5 | 1 |
| 03/05/12 | Review intercompany model regarding considerations for non-controlled entities | 0.8 | 9 |
| 03/05/12 | Work on recovery/distribution model - model checking | 4.8 | 9 |
| 03/05/12 | Work on intercompany model regarding non-controlled entities | 1.8 | 9 |
| 03/05/12 | Internal meeting regarding model checking | 0.5 | 1 |
| 03/05/12 | Work on recovery/distribution model - outputs | 2.8 | 9 |
| 03/06/12 | Work on recovery/distribution model - outputs | 2.5 | 9 |
| 03/06/12 | Internal meeting regarding model checking | 0.5 | 1 |
| 03/06/12 | Work on recovery/distribution model - model checking | 7.5 | 9 |

**JANUARY - MARCH HOURS**                                    **289.1**

# EXHIBIT C

# Order Granting Supplemental Application

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                              :        **Chapter 11 Case No.**

LEHMAN BROTHERS HOLDINGS INC.,  *et al.*,  :        **08-13555 (JMP)**

Debtors.                               :        **(Jointly Administered)**

------------------------------------------------------------x

**ORDER GRANTING SUPPLEMENTAL
APPLICATION OF THE DEBTORS PURSUANT
TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY
CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE TO AMEND THE ENGAGEMENT LETTER BETWEEN
THE DEBTORS AND LAZARD FRÈRES & CO. LLC AS  INVESTMENT
BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO JUNE 1, 2010**

Upon the supplemental application, dated October 15, 2010 [Docket No.

12041] (the "Supplemental Application"),[1] of Lehman Brothers Holdings Inc. and its

affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in

possession (together, the "Debtors"), pursuant to sections 327(a) and 328(a) of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to amend the

engagement letter between the Debtors and Lazard Frères & Co. LLC ("Lazard"), *nunc*

*pro tunc* to June 1, 2010, all as more fully described therein, and as modified by the

amendment thereto, dated February 24, 2011 [Docket No. 14652] (the "Amendment"),

and the third supplemental affidavit of Barry W. Ridings [Docket No. 12041] and the

fourth supplemental declaration of Barry W. Ridings [Docket No. 14653] (collectively,

---

[1]  Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the
    Supplemental Application.

the "<u>Affidavits</u>"), in support thereof; and the Court being satisfied, based on the

representations made in the Supplemental Application, the Amendment and the

Affidavits that (a) Lazard does not hold or represent an interest adverse to the Debtors'

estates, and (b) Lazard is a "disinterested person" within the meaning of section 101(14)

of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; and the

Court having jurisdiction to consider the Supplemental Application and Amendment and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New

York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Supplemental Application and Amendment and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Supplemental Application and Amendment having been provided in

accordance with the procedures set forth in the second amended order entered on June 17,

2010 governing case management and administrative procedures for these cases [Docket

No. 9635] to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and after due deliberation and

sufficient cause appearing therefor, it is

       ORDERED that the Supplemental Application, as modified by the

Amendment, is approved as set forth herein; and it is further

2

ORDERED that pursuant to sections 327(a) and 328(a) of the Bankruptcy

Code, the Debtors are hereby authorized to enter into the Modified Engagement Letter to

amend the Engagement Letter effective *nunc pro tunc* to June 1, 2010; and it is further

ORDERED, that Lazard shall be compensated in accordance with and will

file interim and final fee applications for allowance of its compensation and expenses and

shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules, the Amended Order Establishing Procedures for Monthly Compensation

and Reimbursement of Expenses of Professionals, dated November 25, 2009, the

Amended Guidelines for Fees and Disbursements for Professionals in the Southern

District of New York, dated November 25, 2009, and the United States Trustee Fee

Guidelines (collectively, the "Fee Guidelines"), and the Third Amended Order

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals [Docket No. 4165]; and it is further

ORDERED, that Lazard shall be reimbursed only for reasonable and

necessary expenses as provided by the Fee Guidelines; and it is further

ORDERED, that Lazard is hereby authorized to keep reasonably detailed

time records in half-hour increments and will submit, with any interim or final fee

application, together with the time records, a narrative summary, by project category (if

applicable), of services rendered and will identify each professional rendering services,

the category of services rendered and the amount of compensation requested; and it is

further

ORDERED that the United States Trustee retains all rights to object to

Lazard's interim and final fee applications (including without limitation any Monthly

3

Fees and any fees paid in connection with a LAMCO Sale) on all grounds including, but

not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy

Code, and the Court retains the right to review the interim and final applications pursuant

to section 330 of the Bankruptcy Code; and it is further

   ORDERED that to the extent this Order is inconsistent with the

Supplemental Application or Amendment, this Order shall govern; and it is further

   ORDERED that the Court shall retain jurisdiction to hear and determine

all matters arising from the implementation of this Order.


Dated:  New York, New York
   March 22, 2011

           _s/ James M. Peck_____
           Honorable James M. Peck
           United States Bankruptcy Judge

# EXHIBIT D

## Engagement Letter
## &
## Modified Engagement Letter

LAZARD

BARRY W. RIDINGS
VICE CHAIRMAN OF US
INVESTMENT BANKING

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6896
FAX 212-332-1757
barry.ridings@lazard.com

October 20, 2008

Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, New York 10019

Attention:    Bryan Marsal
              Chief Restructuring Officer

Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms, subject to the approval of the Bankruptcy Court, the understanding and agreement, effective as of September 15, 2008, between Lazard Frères & Co. LLC ("Lazard") and Lehman Brothers Holdings Inc. ("LBHI"), on behalf of itself and its controlled subsidiaries, other than Lehman Brothers International (Europe) and its subsidiaries (collectively with LBHI, the "Company").

*Assignment Scope:*

The Company has retained Lazard as its investment banker to advise it in connection with any Restructuring, any Sale Transaction and any Financing (each as defined below) on the terms and conditions set forth herein, subject to the approval of the Bankruptcy Court. As used in this Agreement, the term "Restructuring" shall mean, any transaction or series of transactions involving the restructuring, reorganization and/or recapitalization of any portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, funding obligations or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through amendments, waivers and/or consents from the holders or beneficiaries of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates; repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions; or any plan of reorganization approved by the Bankruptcy Court. As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving an acquisition, purchase, sale, merger, consolidation, exchange, business combination or other transaction pursuant to which all or any portion of the assets, voting power, securities or other interests or other obligations of the Company or any Company entity or business are, directly or indirectly, combined with, transferred to or assumed by another entity or group, except for (i) the sales of Eagle Energy, the Indian processing center, R/3 and

# LAZARD

any other transaction with respect to which LBHI and Lazard mutually agree that Lazard shall not provide services (it being understood that Lazard shall not unreasonably withhold its agreement not to provide services for transactions where it would not be appropriate for Lazard to advise). As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly issued (or treasury) equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any exit financing in connection with a case under the Bankruptcy Code.

By signing this Agreement, subject to the approval of the Bankruptcy Court, we hereby accept our appointment as your investment banker under the terms hereof.

*Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as LBHI may reasonably request, including:

    (a)    Reviewing and analyzing the business, operations and financial projections of the Company;

    (b)    Assisting the Company in identifying and evaluating candidates for potential Sale Transactions and advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

    (c)    Assisting the Company in the development of a Restructuring plan;

    (d)    Advising and assisting the Company in evaluating potential Financing transactions by the Company, and subject to Lazard's agreement to act (and if requested by Lazard the execution of appropriate agreements), contacting potential sources of capital and assisting the Company in implementing such a Financing;

    (e)    Advising the Company on tactics and strategies for negotiating with Stakeholders;

    (f)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders or other appropriate parties in connection with any Restructuring, Sale Transaction or Financing;

    (g)    Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring, Sale Transaction or Financing;

    (h)    Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring, Sale Transaction or Financing;

LAZARD

(i)     Attending meetings of the Company's Board of Directors and rendering advice with respect to matters on which we have been engaged to advise the Company;

(j)     Providing testimony, as necessary, with respect to matters on which we have been engaged in any proceeding before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

(k)     Providing the Company with other financial restructuring advice.

*Fees:*

2.  As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)     A monthly fee (the "Monthly Fee"), payable on the 1st of each month of our engagement hereunder, of $400,000 per month for the 24-month period commencing on October 1, 2008 through (and including) September 1, 2010 and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a plan of reorganization or termination pursuant to Section 10;

(b)     With respect to Sale Transactions:

(i)     A fee equal to $5,000,000, payable upon consummation of a Sale Transaction pursuant to which certain North American assets are sold to Barclays Capital, Inc. or any of its affiliates (the "Barclays Sale Fee");

(ii)    A fee, payable upon consummation of a Sale Transaction pursuant to which the Company's Investment Management Division, which includes Neuberger Berman and the fixed income and certain alternative asset management businesses of the Company, is sold, equal to $5,000,000 plus 1% of the amount, if any, by which the Aggregate Consideration (as defined on Schedule A) for such transaction exceeds that proposed in the purchase agreement submitted by Bain Capital and Hellman & Friedman on September 29, 2008 (the "Neuberger Berman Sale Fee"); and

(iii)   A fee, payable upon consummation of any Sale Transaction (other than those described in clauses (b)(i) and (ii) above), equal to the sum of (A) 85% of the applicable percentage, as set forth on Schedule A, of the Aggregate Consideration involved in such transaction; plus, (B) .1% of the aggregate amount of any unfunded obligations or commitments, if any, that are reduced, eliminated or transferred, directly or indirectly, in connection with the transaction, up to a maximum payment of $1,000,000 pursuant to

LAZARD

this clause (B) (each, together, an "Other Sale Fee"); The Company agrees to direct any buyer to pay the Other Sale Fee directly to Lazard upon consummation of the applicable transaction as a deduction from the proceeds of the Sale Transaction; provided, that, for the avoidance of any doubt, the foregoing shall only limit the Company's obligation to pay Lazard to the extent that the Other Sale Fee is actually so paid by the buyer;

(c)     If a plan of reorganization is approved by the Bankruptcy Court whereby any Stakeholders receive a distribution (whether from an operating company, liquidating trust or otherwise), a fee, payable upon effectiveness of the plan of reorganization, equal to .5% of any cash and the fair market value of any property distributed or distributable to the Stakeholders in connection with the plan of reorganization (adjusted as appropriate so as not to double count any consideration received by the Stakeholders from any Sale Transaction), subject to a maximum fee of $17,500,000.

(d)     A fee, payable upon consummation of any Financing (for which Lazard has provided services), equal to the amount set forth in Schedule B (the "Financing Fee").

(e)     To the extent that LBHI requests, and Lazard agrees to provide, services other than those set forth in Section 1 above, customary fees with respect thereto shall be mutually agreed by LBHI and Lazard in good faith and subject to approval by the Bankruptcy Court;

(f)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of outside counsel retained with the prior consent of LBHI (not to be unreasonably withheld), if any; and

(g)     As part of the compensation payable to Lazard hereunder, the Company agrees that the indemnification, contribution and related provisions entered into by the Company and Lazard dated September 12, 2008 (the "Indemnification Letter") shall also apply hereto and are incorporated herein in their entirety.

(h)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3.  LBHI agrees that it will use its reasonable best efforts to obtain prompt authorization

LAZARD

from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Lazard agrees that during the pendency of LBHI's bankruptcy proceedings, it shall file interim and final applications for allowance of the fees and expenses payable to it by LBHI under the terms of this Agreement, pursuant to the applicable Federal Rules of Bankruptcy Procedure and the local rules and order of the Bankruptcy Court. LBHI shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention in advance of the filing to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this Agreement unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, LBHI acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of LBHI in pursuing any transaction, that the value to LBHI of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Sale Transaction fees, Financing Fees and the Restructuring fee are reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder.

*Other:*

4. No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business and assets of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position. Unless required by subpoena or other regulatory process, we will not disclose to any third party (other than our counsel or other agents under a duty of confidentiality or as otherwise agreed by you) any portion of the information provided by the Company that is not publicly available, and we will not use such information for any purpose other than pursuant to our engagement hereunder. You also agree to use reasonable efforts to cause each potential counterparty to provide us with such information as we reasonably deem necessary for our financial review and analysis. In performing its services pursuant to this Agreement, including in connection with any analysis, Lazard shall be entitled to rely upon information furnished to it by the Company, any counterparty or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any

LAZARD

business strategy or to effect (or not to effect) any Sale Transaction, any Restructuring, any Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of its affiliates or related parties to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. On September 12, 2008, the Company and Lazard entered into an engagement agreement (the "Pre-Filing Engagement") and the Indemnification Letter. This Agreement supersedes in entirety the Pre-Filing Engagement, which is terminated in its entirety. Lazard waives payment of any fee or expense amounts payable pursuant to the Pre-Filing Engagement. Notwithstanding the foregoing, the Indemnification Letter remains in full force and effect and shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of LBHI during the period of our engagement hereunder, LBHI will promptly inform Lazard of any discussions, negotiations, or inquiries regarding any potential Sale Transaction, Financing or Restructuring.

10. Our engagement hereunder will automatically expire upon effectiveness of a plan of reorganization and may be earlier terminated by you or us at any time without liability or continuing obligation to you or us, except that following such termination and any expiration of this Agreement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by LBHI or any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Sale Transaction, any Financing, and any Restructuring announced or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. LBHI recognizes that Lazard has been engaged only by LBHI and that the engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of LBHI is authorized to rely upon the engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered to LBHI's Board of Directors or management in the course of the engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of LBHI in evaluating any Sale Transaction, any Financing, and any Restructuring and does not constitute a recommendation to any stakeholder of the Company in connection with any Sale Transaction, any Financing, or Restructuring. Any advice, written or oral, rendered by Lazard may not be disclosed publicly or made available to third parties without the prior written consent

LAZARD

of Lazard.  Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.  Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Boards of Directors.

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and related parties and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to non-public information.  Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

13. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter.  Lehman Brothers Holdings Inc. is executing this agreement on behalf of the Company and agrees that the Company's obligations hereunder shall be joint and several.  This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law.  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts.  The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding.  The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

LAZARD

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
Barry Ridings
Vice Chairman of US Investment Banking

AGREED TO AND ACCEPTED
as of the date first above written:

LEHMAN BROTHERS HOLDINGS INC. on behalf of itself
and its controlled subsidiaries, other than Lehman Brothers
International (Europe) and its subsidiaries

By_____
Bryan Marsal
Chief Restructuring Officer

# LAZARD

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By_____
   Barry Ridings
   Vice Chairman of US Investment Banking

AGREED TO AND ACCEPTED
as of the date first above written:

LEHMAN BROTHERS HOLDINGS INC. on behalf of itself
and its controlled subsidiaries, other than Lehman Brothers
International (Europe) and its subsidiaries

By_____
   Bryan Marsal
   Chief Restructuring Officer

LAZARD

Schedule A

| Aggregate Consideration Involved in Sale Transaction (Millions) | Amount (Thousands) | Percent of Aggregate Consideration |
|---|---|---|
| $20,000 or higher | $34,000 or higher | 0.170 |
| 15,000 | 30,000 | 0.200 |
| 12,500 | 28,750 | 0.230 |
| 10,000 | 25,000 | 0.250 |
| 9,000 | 24,300 | 0.270 |
| 8,000 | 23,200 | 0.290 |
| 7,500 | 22,500 | 0.300 |
| 7,000 | 22,400 | 0.320 |
| 6,000 | 20,100 | 0.335 |
| 5,000 | 17,500 | 0.350 |
| 4,000 | 16,000 | 0.400 |
| 3,000 | 13,500 | 0.450 |
| 2,000 | 10,000 | 0.500 |
| 1,000 | 7,000 | 0.700 |
| 900 | 6,660 | 0.740 |
| 800 | 6,240 | 0.780 |
| 700 | 5,740 | 0.820 |
| 600 | 5,160 | 0.860 |
| 500 | 4,500 | 0.900 |
| 400 | 4,000 | 1.000 |
| 300 | 3,300 | 1.100 |
| 200 | 2,600 | 1.300 |
| 100 | 1,750 | 1.750 |
| 50 or lower | 1,100 or lower | 2.200 |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, and the Company's pro rata portion (based on its ownership) of any indebtedness for borrowed money or other liabilities of any other entity in which the Company has an ownership interest, in each case, that is eliminated, reduced or transferred, directly or indirectly, in connection with a Sale Transaction. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends and, in the case of a sale of assets, the value of any related

---

[1] For a transaction size in between the aggregate considerations specified above, the fee would be determined by interpolating between the two closest percentages.

LAZARD

current assets that are not sold by the Company or relevant Company entity, as applicable.  For purposes of calculating Aggregate Consideration, the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock.  Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed directly or indirectly by the third party.  If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE B

### Fees for Financings

The following table outlines the Financing Fees. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee |
| --- | --- |
| Senior Secured Debt | 1.50% |
| Senior Debt | 3.00% |
| Subordinated Debt | 3.50% |
| Convertible Debt | 3.75% |
| Convertible Preferred Stock | 5.00% |
| Common Stock | 6.00% |

# LAZARD

BARRY W. RIDINGS
VICE CHAIRMAN OF US
INVESTMENT BANKING

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6896
FAX 212-332-1757
barry.ridings@lazard.com

December 21, 2010

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
45th Floor
New York, New York 10020

Attention:    Bryan Marsal
              **Chief Restructuring Officer**

Dear Ladies and Gentlemen:

Reference is made to the engagement letter between Lazard Frères & Co. LLC ("Lazard") and Lehman Brothers Holdings Inc. ("LBHI"), on behalf of itself and its controlled subsidiaries (collectively with LBHI, the "Company") dated as of October 20, 2008, as modified by that certain second supplemental affidavit of Barry W. Ridings sworn to on February 3, 2010 and filed with the Court on February 5, 2010 [Docket No. 6992] (the "Engagement Letter"), pursuant to which Lazard was engaged as investment banker to the Company, and that certain letter between Lazard and LBHI dated as of October 11, 2010 (the "Amended Engagement Letter").

This letter supersedes and replaces the Amended Letter in its entirety.

We hereby confirm that Lazard is assisting the Company with respect to a possible Sale Transaction (as that term is defined in the Engagement Letter) involving primarily all or a portion of LAMCO LLC or its assets, voting power, securities, or other interests or obligations (a "LAMCO Sale") and, in connection therewith, agree to the following amendments to the Engagement Letter:

(i)    The following shall be added to the end of clause 2(a) of the Engagement Letter:

"provided, however, that the Monthly Fee shall be increased by $150,000 solely for the time period beginning on June 1, 2010 and ending on November 30, 2010, in which Lazard provides services in connection with a possible LAMCO Sale, and thereafter decrease to $200,000 per month thereafter;"

(ii)   The following shall be added as a new clause 2(b)(iv):

PARIS    LONDON    NEW YORK    AMSTERDAM    ATLANTA    BERLIN    BOMBAY    CHICAGO    FRANKFURT    HAMBURG    HONG KONG    HOUSTON
LOS ANGELES    MADRID    MILAN    MONTREAL    NEW DELHI    ROME    SAN FRANCISCO    SEOUL    SINGAPORE    STOCKHOLM    SYDNEY    TOKYO    TORONTO

LAZARD

"(iv) Notwithstanding anything to the contrary in clause (b)(iii) above, and in lieu of any amount otherwise payable under clause (b)(iii) above in connection with the consummation of a LAMCO Sale, a fee, payable upon consummation of a LAMCO Sale, equal to $1,250,000."

Except to the extent provided above, the Engagement Letter and related indemnification letter, as modified by the order, dated December 17, 2008, authorizing the Company's employment and retention of Lazard as investment banker [Docket No. 2275], remain in full force and effect. If the foregoing correctly sets forth the understanding between us, please so indicate on the enclosed signed copy of this letter in the space provided therefor and return it to us, whereupon this letter shall constitute a binding agreement between us.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
     Barry Ridings
     Vice Chairman of US Investment Banking

AGREED TO AND ACCEPTED
as of the date first above written:

LEHMAN BROTHERS HOLDINGS INC. on behalf of itself
and its controlled subsidiaries

By_____
    William J. Fox
    Executive Vice President

2

# EXHIBIT E

## Fee Calculation and
## Summary of Out-of-Pocket Expenses

**Lehman Brothers Holding Inc.**
**Monthly Statement**
**Lazard Frères & Co. LLC**

**January 1, 2012 - March 6, 2012**

### Fee Calculation

| Item | Amount Incurred |
|---|---|
| Monthly Fees: January 1, 2012 - January 31, 2012 | $200,000.00 |
| Monthly Fees: February 1, 2012 - February 29, 2012 | 200,000.00 |
| Monthly Fees: March 1, 2012 - March 6, 2012 | 38,709.68 [1] |
| Fee | 17,500,000.00 [2] |
| **TOTAL** | **$17,938,709.68** |

### Summary of Out-of-Pocket Expenses [3]

| Item | Amount Incurred |
|---|---|
| Car Services and Taxis | $106.59 |
| Courier/Shipping | 89.43 |
| Electronic Information Service | 25.32 |
| Legal Expenses [4] | 49,108.58 |
| Legal Fees [4] | 233,731.50 |
| **TOTAL** | **$283,061.42** |

[1]  *Amount reflects a pro-rated Monthly Fee for the 6-day period from March 1, 2012 through March 6, 2012.*

[2]  *Pursuant to section 2(c) of its Engagement Letter, Lazard shall be paid a fee if a plan of reorganization is approved by the Bankruptcy Court, equal to 0.5% of any cash and the fair market value of any property distributed or distributable to the Stakeholders in connection with the plan of reorganization, subject to a maximum fee of $17,500,000.*

[3]  *Additional expense detail will be furnished upon request.*

[4]  *Legal representation of Lazard. See attached invoices.*

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC03766 - Lehman Brothers

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| OPENING BALANCE | 1/1/1900 | | 0.00 |
| **Car Services and Taxis** | | | |
| | 3/7/2012 | Mahony-O 02/28/2012 22:15 Origin: 30 ROCK Dest: home M / MES CAR LLC | 35.00 |
| | 3/15/2012 | Mahony-O 03/06/2012 23:00 Origin: 30 ROCK Dest: home M / MES CAR LLC | 35.00 |
| | | Subtotal: | 70.00 |
| **Legal Expenses** | | | |
| | 4/20/2012 | Cravath, Swaine & Moore LLP - Lazard/Lehman Securities Litiagation 03/28/2012 | 16,397.86 |
| | 4/20/2012 | Cravath, Swaine & Moore LLP - Lazard/Lehman DOJ Tax Case 03/29/2012 | 32,710.72 |
| | | Subtotal: | 49,108.58 |
| **Legal Fees** | | | |
| | 4/20/2012 | Cravath, Swaine & Moore LLP - Lazard/Lehman Securities Litiagation 03/28/2012 | 111,722.50 |
| | 4/20/2012 | Cravath, Swaine & Moore LLP - Lazard/Lehman DOJ Tax Case 03/29/2012 | 122,009.00 |
| | | Subtotal: | 233,731.50 |
| | | **CLOSING BALANCE as of 3/16/2012** | **282,910.08** |

FEDERAL AND NY STATE TAX
ID NUMBER 13-5015405

Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10020

Attention of Stephen Pearl

IF REMITTANCE IS BY WIRE TRANSFER, PLEASE DIRECT TO:
JPMorgan Chase Bank, ABA #021000021
1211 Avenue of the Americas, New York, NY 10036
Cravath, Swaine & Moore llp, A/C #001-020056

WHEN REMITTING, PLEASE REFERENCE:

BILL NO.  149110

March 29, 2012

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

212-474-1000

---

### Lazard/Lehman DOJ Tax Case

For professional services rendered through March 29, 2012
in connection with responses to discovery and information requests
made by the United States Attorney in connection with a dispute
involving the Lehman estate                                      $122,009.00

### Disbursements

| | | |
|---|---|---|
| Special Disbursements | 32,305.41 | |
| Local Transportation | 126.54 | |
| Postage | 3.04 | |
| | | 32,434.99 |

### Other Charges

| | | |
|---|---|---|
| Duplicating | 168.11 | |
| Long Distance Telephone | 6.00 | |
| Computerized Legal Research/Database Research | 89.62 | |
| Messenger-Firm/Bulk Deliveries | 12.00 | |
| | | 275.73 |

Total                                                            $154,719.72

FEDERAL AND NY STATE TAX
ID NUMBER 13-5015405

Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10020

Attention of Stephen Pearl

IF REMITTANCE IS BY WIRE TRANSFER, PLEASE DIRECT TO:
JPMORGAN CHASE BANK, ABA #021000021
1211 AVENUE OF THE AMERICAS, NEW YORK, NY 10036
CRAVATH, SWAINE & MOORE LLP, A/C #001-020056

WHEN REMITTING, PLEASE REFERENCE:

BILL NO.  149095

March 28, 2012

# CRAVATH, SWAINE & MOORE LLP

### WORLDWIDE PLAZA
### 825 EIGHTH AVENUE
### NEW YORK, NY 10019-7475

212-474-1000

---

### Lazard/Lehman Securities Litigation

For professional services rendered through March 22, 2012 in connection with various ongoing actions arising out of the Lehman Brothers' Bankruptcy including responses to discovery requests, attendance at interviews with Lazard personnel and counsel for various entities involved in ongoing litigations and investigations relating to Lehman Brothers and preparation for, and attendance at, the depositions of Messrs. Parr and Ridings

$111,722.50

### Disbursements

| | | |
|---|---|---|
| Special Disbursements | 14,097.10 | |
| Local Transportation | 208.11 | |
| | | 14,305.21 |

### Other Charges

| | | |
|---|---|---|
| Duplicating | 338.93 | |
| Binding/Graphics/Video | .90 | |
| Long Distance Telephone | 3.81 | |
| Computerized Legal Research/Database Research | 1,584.64 | |
| Messenger-Firm/Bulk Deliveries | 52.00 | |
| Expenses Incident to Overtime | 112.37 | 2,092.65 |

Total   $128,120.36