**Hearing Date: To Be Determined**
**Objection Date: To Be Determined**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor

Special Litigation Counsel
for the Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| —————————————————————— x | | Chapter 11 |
| In re: | : | |
| | | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | |
| Debtors. | : | |
| —————————————————————— x | | |

**SUMMARY STATEMENT FOR FOURTH INTERIM FEE APPLICATION OF WOLLMUTH MAHER & DEUTSCH LLP AS SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012**

### SUMMARY OF FEE APPLICATION

| | |
|---|---|
| Name of Applicant: | Wollmuth Maher & Deutsch LLP |
| Authorized to Provide Professional Services to: | Debtors and Debtors-in-Possession |
| Role in the Case: | Special Litigation Counsel |
| Date of Retention: | Order Entered October 20, 2010 [Docket No. 12406] *Nunc Pro Tunc* to September 9, 2010 |

| | |
|---|---|
| Compensation Period: | October 1, 2011 through March 6, 2012[1] |
| Amount of Compensation Sought: | $550,376.25 |
| Amount of Expense Reimbursement Sought: | $44,558.74 |
| Total Compensation and Expense Reimbursement Sought: | $594,934.99 |

This is a:          ___ Monthly   _X_ Interim   ___ Final Application

This is Wollmuth Maher & Deutsch LLP's <u>fourth</u> interim fee application in this case.

---

[1] Pursuant to the Notice of Occurrence of Effective Date of the Debtors' Third Amended Reorganization Plans [Docket No. 26039], the Effective Date was declared as of March 6, 2012, at 12:01 a.m.  Accordingly, this last interim fee application reflects fees and expenses incurred through March 6, 2012, at 12:01 a.m.

## TIMEKEEPER SUMMARY

| Timekeeper | Position | Year of Admission | Rate | Hours | Amount |
|---|---|---|---|---|---|
| William A. Maher | Senior Partner | Area of Expertise: Litigation.  Member of the New York Bar (1986), New Jersey Bar (1998).  Joined the firm in 1998. | 650.00 | 44.6 | $28,990.00 |
| Sandip Bhattacharji | Partner | Area of Expertise: Litigation.  Member of the New York Bar (1991).  Joined the firm in 2006. | 595.00 | 23.2 | $13,804.00 |
| Randall Rainer | Partner | Area of Expertise: Litigation.  Member of the New York Bar (1995).  Joined the firm in 2000. | 595.00 | 54.8 | $32,606.00 |
| James N. Lawlor | Partner | Area of Expertise: Litigation, Bankruptcy. Member of the New York Bar (1993), New Jersey Bar (1992). Joined the firm in 2002. | 595.00 | 24.4 | $14,518.00 |
| Vince Change | Partner | Area of Expertise: Litigation.  Member of the New York Bar (1990).  Joined the firm in 2002. | 595.00 | 90.6 | $53,907.00 |
| William F. Dahill | Partner | Area of Expertise: Litigation.  Member of the New York Bar (1992).  Joined the firm in 1998. | 595.00 | 55.6 | $33,082.00 |

| Adam M. Bialek[2] | Counsel | Area of Expertise: Litigation. Member of the New York Bar (2002), New Jersey Bar (2002). Joined the firm in 2005. | 450.00 | 219.9 | $98,955.00 |
| | | | 525.00 | 110.7 | $58,117.50 |
| Paul R. Weber | Associate | Area of Expertise: Corporate. Member of the New Jersey Bar (2007), New York Bar (2008) Joined the firm in 2008 | 325.00 | 0.9 | $292.50 |
| Serena Parker | Associate | Area of Expertise: Litigation. Member of the New York Bar (2002). Joined the firm in 2004. | 425.00 | 32 | $13,600.00 |
| Christopher G. Passavia | Associate | Area of Expertise: Litigation. Member of the New York Bar (2010). Joined the firm in 2010. | 295.00 | 3.2 | $944.00 |
| John D. Giampolo | Associate | Area of Expertise: Litigation, Bankruptcy. Member of the New York Bar (2005), New Jersey Bar (2005). Joined the firm in 2010. | 395.00 | 26.8 | $10,586.00 |
| | | | 425.00 | 55.3 | $23,502.50 |
| Fletcher W. Strong | Associate | Area of Expertise: Litigation, Bankruptcy. Member of the New York Bar (2010). Joined the firm in 2011. | 275.00 | 66 | $18,150.00 |
| | | | 295.00 | 28 | $8,260.00 |
| Melissa A. Finkelstein | Associate | Area of Expertise: Litigation. Membership to New York Bar currently pending. Joined the firm in 2011. | 250.00 | 162.4 | $40,600.00 |

---

[2] Pursuant to the ordinary course of Wollmuth Maher & Deutsch LLP's business, the billing rates of some of the professionals reflected on this chart were increased during this compensation period due to such professionals' increase in seniority and experience level. All such rate increases that took place during this compensation period are reflected accordingly on this chart for any such professional. Any such increases in rates were consistent with the firm's existing range of billing rates, which have only been adjusted once since the firm's retention in 2010, and do not reflect any additional adjustment to the firm's range of billing rates.

| Alexis Castillo | Associate | Area of Expertise: Litigation. Member of the New York Bar (2010). Joined the firm in 2009. | 275.00 | 190.2 | $52,305.00 |
| | | | 295.00 | 102.2 | $30,149.00 |
| Rahil Kamran-Rad | Associate | Area of Expertise: Litigation. Member of the New York Bar (2010), Massachusetts Bar (2009). Joined the firm in 2011. | 250.00 | 6.15 | $1,537.50 |
| Kenneth J. Miles | Associate | Area of Expertise: Corporate.  Member of the Connecticut Bar (2002), New York Bar (2003).  Joined the firm in 2005. | 425.00 | 15.5 | $6,587.50 |
| Kyle J. Dumas | Paralegal | | 115.00 | 1.7 | $195.50 |
| Martina Frederick | Paralegal | | 115.00 | 9.2 | $1,058.00 |
| Ester Johansson-Lebron | Paralegal | | 115.00 | 3.1 | $356.50 |
| Tyler Boston | Paralegal | | 115.00 | 4 | $460.00 |
| Corbin Brown | Paralegal | | 115.00 | 8.2 | $943.00 |
| Hetty Kim | Paralegal | | 115.00 | 32.4 | $3,726.00 |
| Robert Franciscovich | Paralegal | | 115.00 | 3.4 | $391.00 |
| Agatha D. Rysinski | Paralegal | | 115.00 | 30.4 | $3,496.00 |
| Katia Sperduto | Paralegal | | 120.00 | 0.7 | $84.00 |
| | | | 125.00 | 0.2 | $25.00 |
| | | | **Total** | **1405.75** | **$551,228.50** |

**\*Before Travel Time Reduction**

**SUMMARY OF SERVICES**

| SERVICE | HOURS | VALUE |
|---|---|---|
| Fee/Employment Applications | 108.8 | $42,315.00 |
| Case Administration | 141.50 | $65,695.50 |
| Avoidance Action Litigation | 1064.15 | $401,281.50 |
| Litigation-Other than Avoidance Action Litigation | 88.50 | $40,232.00 |
| Travel | 2.80 | $1,704.50 |
| **Less ½ Travel Time** | **(1.40)** | **($852.25)** |
| **TOTAL SERVICES:** | **1404.35** | **$550,376.25** |

## SUMMARY OF DISBURSEMENTS

| DISBURSEMENTS | VALUE |
|---|---|
| 1. Duplicating (@ $0.10 per page) | $61.95 |
| 2. Postage Expense | $35.79 |
| 3. Legal Research (Lexis Nexis/Pacer) | $3,056.09 |
| 4. Travel/Transportation - Car Service/Charge & Ride/Taxi | $2,476.43 |
| 5. Working Dinners | $605.53 |
| 6. Telephone Service/Copper Conferencing | $226.60 |
| 7. Federal Express/Delivery Services/Messengers | $6,279.81 |
| 8. ALM Media | $48.00 |
| 9. Lawyer Service - Demovsky | $17,393.55 |
| 10. Witness Fee | $2,128.00 |
| 11. Other Professionals (Translation Services/Legal Language Services/Litigation Support Vendors) | $2,302.15 |
| 12. Other Service Fees (Subpoena Fees) | $1,127.00 |
| 13. Court Fees | $6,136.84 |
| 14. Other Professionals (Service of Process on Foreign Entities) | $2,665.00 |
| 15. Other | $16.00 |
| **TOTAL DISBURSEMENTS:** | **$44,558.74** |

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor

Special Litigation Counsel
for the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ x | | Chapter 11 |
| In re: | : | |
| | | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | |
| Debtors. | : | |
| _____ x | | |

**FOURTH INTERIM FEE APPLICATION OF WOLLMUTH**
**MAHER & DEUTSCH LLP AS SPECIAL COUNSEL TO THE**
**DEBTORS AND DEBTORS-IN-POSSESSION FOR ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND**
**NECESSARY EXPENSES INCURRED FOR THE PERIOD**
**OCTOBER 1, 2011 THROUGH MARCH 6, 2012**

**TO:   THE HONORABLE JAMES M. PECK,**
**UNITED STATES BANKRUPTCY JUDGE**:

Wollmuth Maher & Deutsch LLP ("Wollmuth" or the "Firm"), special litigation counsel

for Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors (each a "Debtor" and

collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), files its

Fourth Interim Fee Application (this "Application") seeking (i) allowance of compensation for

professional legal services rendered in the aggregate amount of $550,376.25, (ii) allowance of

reimbursement for actual and necessary expenses incurred in the aggregate amount of

$44,558.74, and (iii) payment of the Holdback[1] currently withheld from such compensation and expenses incurred as special litigation counsel to the Debtors for the period commencing October 1, 2011 through and including March 6, 2012[2] (this "Interim Fee Period"), pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the Fourth Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals dated April 14, 2011 [Docket No. 15997] (as amended from time to time, the "Compensation Order"), the order entered by the Court on April 14, 2011 approving a revised fee protocol [Docket No. 15998], and the latest instructions from the Fee Committee.  In support of this Application, Wollmuth represents as follows:

---

[1] As discussed below, to date, the Firm has not yet received payment for fees and expenses under all monthly fee statements submitted for this Interim Fee Period and, with respect to those monthly fee statements for which the Firm has received payment, the current fee committee (the "Fee Committee") appointed in the Cases withheld a portion of the 80% of fees to be disbursed to the Firm asserting that the reasonable market-based rate adjustment that the Firm implemented in March 2011 has not yet been justified to the satisfaction of the Fee Committee. Consequently, the total amount held back (the "Heldback Fees") to date from the Firm's fees for this Interim Fee Period, $384,550.65, is approximately 69.87% of the aggregate amount of the Firm's fees, $550,376.25, for this Interim Fee Period and the total amount held back (the "Heldback Expenses", and together with the Heldback Fees, the "Holdback") to date from the Firm's expenses for this Interim Fee Period, $22,774.01, is approximately 51.11% of the aggregate amount of the Firm's expenses, $44,558.74, for this Interim Fee Period.  At this time, the Firm is in the process of submitting information to the Fee Committee to justify the fair market basis and reasonableness of the Firm's rate adjustment in a good-faith effort to resolve the Fee Committee's issue with same.

[2] Pursuant to the Notice of Occurrence of Effective Date of the Debtors' Third Amended Reorganization Plans [Docket No. 26039], the Effective Date was declared as of March 6, 2012, at 12:01 a.m.  Accordingly, this last interim fee application reflects fees and expenses incurred through March 6, 2012, at 12:01 a.m.

2

## GENERAL BACKGROUND

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  Accordingly, the Debtors were authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the Cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

5.      On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332].

6.      On October 1, 2010, the Debtors filed an application [Docket No. 11761] to retain Wollmuth to serve as conflicts and special litigation counsel, in connection with the prosecution

of certain avoidance actions brought pursuant to sections 547 and 548 of the Bankruptcy Code and other related claims, and such other litigation related matters as may be assigned by the Debtors (together, the "Representative Matters").

7.  On October 28, 2010, this Court entered an Order that approved Wollmuth's retention as special litigation counsel to the Debtors [Docket No. 12406] (the "Retention Order") *nunc pro tunc* to September 9, 2010.  A true and correct copy of the Retention Order is attached hereto as Exhibit "**A**".  Thereafter, Wollmuth filed the Supplemental Affidavit of Paul R. DeFilippo in Support of the Debtors' Application Pursuant to Sections 327(a) and 330 of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Wollmuth Maher & Deutsch LLP as Special Counsel to the Debtors Nunc Pro Tunc to September 9, 2010 [Docket No. 17056] regarding additional disclosures.

8.  On January 24, 2011, the Court entered an order modifying the composition of the Fee Committee that had previously been appointed in the Cases [Docket No. 14117].

9.  In or about April of 2011, the Firm consulted counsel for the Fee Committee regarding the fact that the Firm implemented a reasonable market-based adjustment to the range of its professionals' billing rates (each an "Adjusted Rate" and collectively, the "Adjusted Rates"), which Adjusted Rates became effective as to the Firm's clients on January 1, 2011.  At the direction of counsel for the Fee Committee, the Firm gave the Fee Committee written notice via letter dated April 11, 2011 that the Firm would begin implementing the Adjusted Rates to its Monthly Statements (as defined in the Compensation Order) and its Interim Fee Applications (as defined in the Compensation Order) in these Cases as of March 1, 2011.  Accordingly, the amount of each of the Firm's professional's time and fees for this Interim Fee Period are based

4

on the respective Adjusted Rates.  The Firm submits that each of the Adjusted Rates reflects reasonable market-based rate adjustments and that, prior to the Adjusted Rates, the Firm had not increased its rates since January 1, 2008.

10.    On April 14, 2011, the Court entered an order approving a revised fee protocol setting forth certain procedures and guidelines with respect to the Fee Committee and its review of fees and expenses requested by retained professionals in these Cases [Docket No. 15998].  On the same date, the Court also entered the Compensation Order setting forth certain procedures and guidelines for Monthly Statements and Interim Fee Applications for fees and expenses by retained professionals in these Cases.

11.    On June 2, 2011, the Firm filed its First Application for Interim Professional Compensation as Special Counsel to the Debtors for the Period October 1, 2010 through January 31, 2011 [Docket No. 17346] (the "First Interim Fee Application").

12.    On August 3, 2011, the Firm received a letter (the "Fee Committee Letter") from the Fee Committee seeking additional information regarding certain time entries and requesting that time entries be subjected to additional coding in accordance with all rules and instructions set forth in the Fee Committee Letter (collectively, the "Fee Committee Rules").  Thereafter, the Firm's professionals worked diligently to revise all of the Firm's foregoing time entries to comply with the Fee Committee's requests.

13.    The Firm's substantial good-faith efforts in this regard resulted in the Firm reaching a resolution with the Fee Committee as to the First Interim Fee Application pursuant to the Stipulation Between Wollmuth Maher & Deutsch, LLP and the Fee Committee Regarding the First Interim Application of Wollmuth Maher & Deutsch, LLP, Special Counsel to the

CHIDMS1/2767962.1

Debtors, for Compensation and Expenses for the Period October 1, 2010 through January 31, 2011 [Docket No. 22501].

14.    Since the Fee Committee Letter, the Firm has remained in periodic communication with Fee Committee counsel and worked diligently to revise the time entries submitted under the Firm's Monthly Statements for February 1, 2011 through May 31, 2011 (the "Second Interim Fee Period") and for June 1, 2011 through September 30, 2011 (the "Third Interim Fee Period") to insure compliance with all the Fee Committee's requests.  Moreover, the Firm's professionals did not bill any of the time spent revising time entries to comply with the Fee Committee Rules.  Accordingly, once all foregoing revisions were completed, the Firm filed its Interim Fee Applications for the Second Interim Fee Period and the Third Interim Fee Period [Docket Nos. 25770, 25775].

15.    On December 6, 2011, the Court entered an order (the "Confirmation Order") confirming the Debtors' Modified Third Amended Joint Chapter 11 Plan (the "Plan") [Docket No. 23023], which Confirmation Order attached a copy of the confirmed Plan as Exhibit A thereto.

16.    Pursuant to the Notice of Occurrence of Effective Date of the Debtors' Third Amended Reorganization Plans [Docket No. 26039] (the "Notice of Occurrence of Effective Date"), the effective date of the Plan was declared as of March 6, 2012, at 12:01 a.m. (the "Effective Date").

17.    Pursuant to the Plan, the Confirmation Order, the Notice of Occurrence of Effective Date and the latest written instructions from the Fee Committee, the Firm now files its Interim Fee Application for this Interim Fee Period attaching each of the Monthly Statements the

6

Firm previously submitted for this Interim Fee Period along with an invoice (the "Stub Invoice")

for the stub period of March 1, 2012 through the Effective Date (the "Stub Period").

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are

sections 330 and 331 of the Bankruptcy Code.

## RELIEF REQUESTED AND BASIS

19.     By this Application, Wollmuth respectfully seeks Court approval for (i) allowance

of compensation for professional legal services rendered in the aggregate amount of

$550,376.25, (ii) allowance of reimbursement for actual and necessary expenses incurred in the

aggregate amount of $44,558.74, and (iii) payment of the Holdback, as special litigation counsel

for the Debtors during this Interim Fee Period.

20.     Pursuant to the Compensation Order, the Firm submitted five (5) Monthly

Statements for this Interim Fee Period, which Monthly Statements together with the Stub Invoice

reflect an aggregate amount of $550,376.25 in fees and an aggregate amount of $44,558.74 in

expenses and, to date, the Firm has received (a) an aggregate amount of $165,825.60 on account

of such fees, and (b) an aggregate amount of $21,784.73 on account of such expenses.  True and

correct copies of the Monthly Statements submitted by the Firm for this Interim Fee Period

(collectively, the "Firm's Monthly Statements") and the Stub Invoice are attached hereto as

Exhibits "**B**", "**C**", "**D**", "**E**", "**F**", and "**G**", respectively.

21.     In accordance with the Court's Amended Order Establishing Procedures For

Monthly Compensation and Reimbursement of Expenses of Professionals amending General

Order M-388, effective December 21, 2010, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United States Trustee Fee Guidelines, attached as Exhibit A to each of the Firm's Monthly Statements and included in the Stub Invoice are detailed time records of the Firm's services rendered during this Interim Fee Period, describing the nature of the services rendered to the Debtors each day, the time devoted to such services in increments of one-tenth of an hour, and the identity of all professionals and paraprofessionals performing the services. Also, attached as Exhibit B to each of the Firm's Monthly Statements and included in the Stub Invoice are detailed descriptions of the Firm's actual expenses incurred during this Interim Fee Period.

22.    All of the fees and expenses reflected in the Firm's Monthly Statements and in the Stub Invoice, which were incurred by the Firm as special litigation counsel to the Debtors during this Interim Fee Period, are summarized by category in the accompanying Summary Statement Cover Sheet for this Application.

23.    The Firm has expended a total of 1404.35 hours rendering services as special litigation counsel to the Debtors counsel during this Interim Fee Period, having a value of $550,376.25. The rates, including the Adjusted Rates, charged by the Firm are reasonable and reflect the Firm's conscientious efforts to have personnel with appropriate experience, and where possible with lower hourly rates, perform services whenever the complexities and exigencies of the matter permitted.

24.    Given the nature and value of the services that Wollmuth provided to the Debtors, as described herein, the amounts sought for approval under this Application are fair and reasonable under section 330 of the Bankruptcy Code given the complexity of these Cases; the time expended by attorneys and professionals; the nature and extent of the services rendered; the

value of such services; and the costs of comparable services other than in a case under the Bankruptcy Code.

25.      The Firm has received no payment and no promises for payment from any source for services rendered in connection with these Cases other than those in accordance with the Bankruptcy Rules.  There is no agreement or understanding between Wollmuth and any other person (other than members of Wollmuth) for the sharing of compensation to be received for the services rendered in these Cases.

26.      During this Interim Fee Period, the Firm was required to furnish substantial services to the Debtors, which occupied various professionals within the Firm.  To assist the Court in evaluating the nature, extent and reasonableness of the compensation requested, the following is a narrative summary of some of the more significant services rendered:

## SUMMARY OF SERVICES RENDERED DURING THIS INTERIM FEE PERIOD

27.      In rendering services to the Debtors during these Cases, the Firm's legal team has been composed primarily of professionals with extensive experience in bankruptcy and in the applicable legal practice areas for the matters for which the Firm was retained.  These professionals have coordinated assignments, both internally and with the Debtors' general counsel, Weil, Gotshal & Manges, LLP, and conflicts counsel, Curtis Mallet-Prevost, Colt & Mosle, LLP, to maximize efficiency and avoid any duplication of effort.

28.      All services were rendered by Wollmuth at the request of the Debtors and were necessary, reasonable and appropriate under the circumstances and beneficial to the estates at the time the services were rendered.  The compensation sought by Wollmuth in this Application is comparable to or less than customary compensation sought by comparably skilled professionals in cases under the Bankruptcy Code.  In addition, the compensation sought is based on

9

Wollmuth's standard and usual rates for similar services in representations other than under the Bankruptcy Code.

29.    The services provided by Wollmuth during this Interim Fee Period were rendered to ensure no unnecessary duplication and are grouped into the billing categories set forth in the Firm's Monthly Statements and in the Stub Invoice.   The attorneys and professionals who rendered services relating to each category are identified in the foregoing attachments and summaries of the hours and fees of each for this Interim Fee Period and the total compensation by billing category are included in the Firm's Monthly Statements and in the Stub Invoice. Because detailed descriptions of the services rendered and expenses incurred by Wollmuth are included in the Firm's Monthly Statements and in the Stub Invoice, the following descriptions will describe only in summary form the services performed by Wollmuth during this Interim Fee Period.

## A.    SPV Payment Priority Litigation - 001

30.    The largest portion of the Firm's services during this Interim Fee Period were provided in connection with the continued prosecution of an adversary proceeding (i) to prevent certain unenforceable *ipso facto* clauses from improperly modifying the right of Lehman Brothers Special Financing Inc. ("LBSF") to priority of payment of more than $3 billion dollars under certain transaction documents related to credit default swap agreements based solely upon the filing of LBSF and its ultimate parent, LBHI, for bankruptcy; and (ii) to recover funds that were improperly paid to noteholders.[3]   On September 9, 2010, the Firm was formally asked to serve as counsel as a result of conflicts of interest identified by Weil, Gotshal and Curis Mallet-Prevost firms.

---

[3] The Firm filed an adversary encaptioned <u>Lehman Bros. Spec. Fin., Inc. v. Bank of America, N.A.</u>, Adv. Proc. No. 10-03547 (JMP).

31.     During this Interim Fee Period, the Firm prepared discovery requests, including, without limitation, deposition notices, to named defendants and relevant third parties in an effort to quickly identify parties that may need to be added as additional defendants in the litigation, as well as to obtain other critical information.  The Firm also focused significant time and effort in serving process and discovery requests on the multiple named defendants and relevant third parties, both within and outside the United States.  These services included coordinating with multiple process services in multiple jurisdictions, reviewing and analyzing various documents to confirm that proper service was effected, and engaging in numerous communications with various defendants, third parties, and counsel for defendants and third parties to address various issues raised by defendants and third parties with respect to discovery requests.

32.     During this Interim Fee Period, the Firm also reviewed and analyzed extensive document production and other information received in response to discovery requests that had been served on defendants and relevant third parties, as well as prepared responses to discovery requests from named defendants and relevant third parties and reviewed and prepared responses to objections to discovery requests from named defendants and relevant third parties. Additionally, in order to aid in prosecution of the litigation, the Firm prepared and revised memoranda outlining all the numerous relevant underlying transactions and disbursements to the various defendants, categorized based on the relevant class and tranche of the distributee, as detailed in the discovery responses received from the defendants.  Based upon the document production received, the Firm entered into potential settlement negotiations with certain parties.

33.     Additionally, the Firm continued to monitor important developments in the Cases that had implications for this litigation.

CHIDMS1/2767962.1

34.     Moreover, during this Interim Fee Period, the Firm spent considerable efforts researching, drafting, revising, finalizing and prosecuting a motion to extend time to serve process and conduct further expedited discovery.   The Firm also spent considerable efforts researching, drafting and revising a complex motion to amend the complaint to include numerous additional defendants in this adversary proceeding.   The Firm also researched and drafted an amended version of the complaint.   Further, the Firm conducted legal research on various procedural and substantive issues related to amending the complaint at this stage in the litigation.

35.     Members of the Firm also researched and addressed other critical legal and factual issues that arose in the litigation during this Interim Fee Period, including, without limitation, jurisdictional issues concerning foreign defendants and certain potential or future defendants.

36.     The Firm also provided considerable services preparing, revising and commenting on proposed settlement agreements and stipulations for dismissal as to certain parties.

37.     Throughout this Interim Fee Period, the Firm also kept in constant contact with the Debtors' management team and other counsel to coordinate efforts and to maintain a common legal position with various related litigation.

## B.   <u>Koch Avoidance Litigation - 003</u>

38.     Shortly after the Firm began preparing the adversary complaint discussed above, as a result of yet another conflict, the Firm was asked to render services related to disputed unsecured claims of approximately $2.5 billion filed by three (3) Goldman Sachs entities.   The unsecured claims arose from the termination and close out of approximately 57,000 derivative transactions under certain ISDA Master Agreements.   This Interim Fee Period, the Firm continued to support the Debtors' efforts to resolve the claims in a structured, but informal process.

12

39.    The Firm was asked to assist in the potential filing of an avoidance action involving certain Koch entities.  While the Debtors had previously reached an agreement with the Koch entities to toll the statute of limitations, the Firm was advised that the agreement may be terminated shortly by the Koch entities.  Accordingly, the Firm began on an expedited basis to prepare should litigation have to be filed to preserve the estates' rights.

40.    In addition, the Firm assisted the Debtors in preparing for the potential that the Koch matters be addressed in the Debtors' existing alternative dispute resolution ("ADR") procedures or by a modified form of same.  Accordingly, members of the Firm worked closely with the Debtors' management and other counsel to coordinate both a potential amendment of the tolling agreement with the Koch entities and the potential noticing and prosecution of an ADR proceeding.  The Firm also reviewed and analyzed the Koch entities' responses to ADR notices and prepared, revised and finalized replies to the Koch entities' responses, as well as other ADR submissions.

41.    During this Interim Fee Period, the Firm engaged in various communications with the Debtors' management regarding strategizing with respect to potential settlement discussions with certain parties.  The Firm also worked to address potential discovery and damages issues raised by the Koch entities and engaged in settlement negotiations.

## C.    Bank of China Subpoenas - 005

42.    During this Interim Fee Period, the Firm was asked to investigate the valuation of certain derivatives contracts that certain of the Debtors held in conjunction with Bank of China. Specifically, the Firm was asked to investigate the process in which Bank of China received its price quotes from various banks in the termination of such contracts.  Accordingly, the Firm

began on an expedited basis to conduct discovery on the banks to determine whether the valuation process was properly conducted.

43.    To this end, the Firm researched issues related to issuing Bankruptcy Rule 2004 subpoenas on the parties, and drafted and revised such subpoenas to be served to various parties. After issuance of such subpoenas, the Firm investigated proofs of claim filed by the aforesaid banks in the Debtors' bankruptcy.

44.    The Firm researched the proper procedure for issuing and noticing subpoenas based on all circumstances and any procedural orders in the Cases and drafted numerous notices of subpoenas issued.

45.    During this Interim Fee Period, the Firm also reviewed numerous responses to the subpoenas issued and met and conferred with counsel for certain responding parties. The Firm also negotiated with bank respondents on the proper scope of the respondents' document production pursuant to the subpoenas.

**D.    GSAM - 006**

46.    Similar to the foregoing Bank of China Subpoenas – 005 matter, during this Interim Fee Period the Firm was also asked to investigate the valuation of numerous derivatives contracts that were liquidated in 2008. The counter-parties to the derivatives contracts were various Goldman Sachs entities, and each of the contracts was being managed by Goldman Sachs Asset Management.

47.    Thus, the Firm was asked to investigate whether the procedure for determining the termination fee assigned to each of the derivatives contracts was properly conducted.

48.    During this Interim Fee Period, the Firm drafted and issued Bankruptcy Rule 2004 subpoenas on the relevant parties. The Firm also analyzed, reviewed and responded to

CHIDMS1/2767962.1

various objections to the subpoenas and documents produced by the subpoenaed parties and met and conferred with the various parties.   Additionally, the Firm engaged in communications and meetings with the Debtors' management team in order coordinate and narrow the scope of information sought under the subpoenas and further strategize the investigation.

E.     **Katten Muchin Dispute - 007**

49.     During this Interim Fee Period, the Firm was asked to investigate possible malpractice claims against a law firm related to the Debtors' liens on real property.   The Firm was also asked to investigate issues concerning negligent expiration and/or subordination of the Debtors' liens on real property in connection with the law firm retained to handle such issues on behalf of the Debtors during the relevant times.   The Firm investigated and analyzed the Debtors' potential claims against prior counsel.

50.     The Firm began initial discovery into the Debtors' foregoing potential claims, including, without limitation, retrieval of case records and legal research concerning the potential claims, especially related to New York Lien Law.   The Firm also reviewed procedural issues related to the viability of the potential claims, including, without limitation, statute of limitations and tolling issues.

51.     The Firm also drafted, filed and served a summons and complaint on behalf of the Debtors for this matter and conducted initial investigations into this matter, including identifying and locating potential witnesses and communicated with counsel for certain defendants. Additionally, the Firm reviewed the production of certain documents and objections to document requests served on the Firm in the litigation and engaged in discovery with numerous parties.

CHIDMS1/2767962.1

F.    **Deutsche Trust Avoidance Action – 008**

52.    Prior to the conclusion of this Interim Fee Period, the Firm was asked to continue the prosecution and/or negotiate a favorable resolution of an adversary proceeding, Lehman Brothers Holdings Inc. v. Deutsche Bank Trust Company Americas, Adv. Pro. No. 10-03609 (JMP), brought on behalf of the Debtors seeking to recover avoidance actions pursuant to section 547 of the Bankruptcy Code.  During this Interim Fee Period, the Firm provided services in connection with analyzing the complaint filed in this matter and communicating with the Debtors' in-house counsel and the defendant's counsel regarding same.

**ACTUAL AND NECESSARY EXPENSES INCURRED
DURING THIS INTERIM FEE PERIOD**

53.    As set forth above and as described more fully in each of the Firm's Monthly Statements and in the Stub Invoice, by this Application, Wollmuth also respectfully seeks Court approval and allowance for reimbursement for actual and necessary expenses incurred in connection with the rendition of services as special litigation counsel to the Debtors during this Interim Fee Period in the aggregate amount of $44,558.74.

54.    It is Wollmuth's policy to charge its clients in all areas of practice the amounts incurred by Wollmuth for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. Examples of such expenses are postage, overnight mail, courier delivery, computer assisted legal research, photocopying, outgoing facsimile transmissions, transportation and long-distance telephone.

55.    Wollmuth represents as follows with regard to its charges for actual and necessary costs and expenses during this Interim Fee Period:

(a)    Long-distance telephone charges are billed at actual costs;

(b)     Photocopy charges are $.10 per page;

(c)     Incoming facsimiles are not billed. Outgoing facsimiles are billed at the rate of $1.00 per page;

(d)     Outside information services, including computer assisted legal research and PACER, are billed at actual costs;

(e)     Car services are capped at $100.00 per hour and only permitted for travel after 8:00 p.m. or on weekends; and

(f)     Working meal charges are billed at actual cost but are capped at $20 per person and are only charged for meals after 8:00 p.m. or on weekends.

56.     Moreover, Wollmuth submits that all expenses for this Interim Fee Period are sufficiently detailed in the Firm's Monthly Statements and in the Stub Invoice in full compliance with the Fee Committee Rules.

57.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amounts requested for approval herein for compensation and expense reimbursement are fair and reasonable given: (a) the complexity of these Cases; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

58.     Pursuant to the Certification of James N. Lawlor attached hereto as Exhibit "**H**", the undersigned has reviewed the requirements of the Local Rules, and certifies that this Application and the Exhibits attached hereto comply therewith.

## **NOTICE**

59.     Notice of this Application will be served to all parties required in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these Cases [Docket No. 9635] and the Compensation Order.

CHIDMS1/2767962.1

## CONCLUSION

WHEREFORE, the Firm respectfully requests that the Court enter an order for (i) allowance of compensation to the Firm for professional legal services rendered as special litigation counsel for the Debtors during this Interim Fee Period in the aggregate amount of $550,376.25, (ii) allowance of reimbursement to the Firm for actual and necessary expenses incurred during this Interim Fee Period in the aggregate amount of $44,558.74, and (iii) payment to the Firm of the Holdback.

Respectfully submitted,

By: /s/ James N. Lawlor
     James N. Lawlor
     William A. Maher
     Paul R DeFilippo
     WOLLMUTH MAHER & DEUTSCH LLP
     500 Fifth Avenue
     New York, New York 10110
     Telephone: (212) 382-3300
     Facsimile: (212) 382-0050

     Special Counsel for the
     Debtors and Debtors-in-Possession

Dated:    New York, New York
       May 21, 2012

18

CHIDMS1/2767962.1

**INDEX OF EXHIBITS TO THE FOURTH INTERIM FEE
APPLICATION OF WOLLMUTH MAHER & DEUTSCH LLP
FOR THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 6, 2012**

**Exhibit A** - Retention Order

**Exhibit B** - Monthly Fee Statement submitted for October 1, 2011 through October 31, 2011

**Exhibit C -** Monthly Fee Statement submitted for November 1, 2011 through November 30, 2011

**Exhibit D** - Monthly Fee Statement submitted for December 1, 2011 through December 31, 2011

**Exhibit E** - Monthly Fee Statement submitted for January 1, 2012 through January 31, 2012

**Exhibit F** - Monthly Fee Statement submitted for February 1, 2012 through February 29, 2012

**Exhibit G** - Stub Invoice for March 1, 2012 through March 6, 2012 at 12:01 a.m.

**Exhibit H** - Certification of James N. Lawlor

CHIDMS1/2767962.1