QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Olga M. Urbieta (OU0612)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                            :    Chapter 11 Case
                                                  :
LEHMAN BROTHERS HOLDINGS INC.,                    :    No. 08-13555 (JMP)
<u>et al.</u>                                     :
                                                  :    Jointly Administered
                              Debtors.            :
-------------------------------------------------------- x

## <u>SUMMARY SHEET</u>

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide Professional Services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al</u>. |
| **Date of Retention** | October 21, 2008, (<u>nunc pro tunc</u> to September 15, 2008) |
| **Compensation Period** | October 1, 2011 – March 5, 2012 |
| **Fees Incurred for Counsel** | $8,380,343.00 |
| **Expenses Incurred** | $486,774.68 |
| **Prior Interim Applications Filed** | This is the Tenth Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $480.62 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $510.49 |

**Schedule 1**

**Hours, Rate and Fees for Services Rendered during the Tenth Interim Fee Period.**

| Attorneys | Init. | Title | Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| John B. Quinn | JBQ | Partner | $1,035.00 | 72.2 | $74,727.00 |
| Robert Hickmott | RH | Partner | $1,035.00 | 0.4 | $414.00 |
| Fred G. Bennett | FGB | Partner | $1,035.00 | 10.6 | $10,971.00 |
| Daniel P. Cunningham | DPC | Partner | $1,035.00 | 186 | $192,510.00 |
| Richard I. Werder, Jr. | RJW | Partner | $1,035.00 | 4.6 | $4,761.00 |
| Susheel Kirpalani | SK2 | Partner | $920 | 5.4 | $4,968.00 |
| Andrew J. Rossman | AJR | Partner | $920 | 724 | $666,080.00 |
| Jon D. Corey | JDC | Partner | $860 | 2.4 | $2,064.00 |
| James C. Tecce | JCT | Partner | $865 | 449.2 | $388,558.00 |
| Eric D. Winston | EDW | Partner | $860 | 88.9 | $76,454.00 |
| Eric M. Kay | EMK | Counsel | $805 | 178.2 | $143,451.00 |
| Erica Taggart | ET | Partner | $780 | 880.3 | $686,634.00 |
| Andrew Fulton | AF1 | Associate | $720 | 3.1 | $2,232.00 |
| Kristin Madigan | KJM | Associate | $650 | 17.4 | $11,310.00 |
| Christopher D. Kercher | CDK | Associate | $650 | 1008 | $655,200.00 |
| Robert K. Dakis | RKD | Associate | $650 | 154.4 | $100,360.00 |
| Tyler G. Whitmer | TGW | Associate | $590 | 983.8 | $580,442.00 |
| Stephen M. Hauss | SMH | Associate | $590 | 2 | $1,180.00 |
| Matthew R. Scheck | MS3 | Associate | $555 | 678.4 | $376,512.00 |
| James Shaerf | JS3 | Associate | $555 | 0.5 | $277.50 |
| David S. Mader | DSM | Associate | $555 | 109.3 | $60,661.50 |
| Zena Mount-Namson/Zena Jacobsen | ZMX/ZJ1 | Associate | $515 | 325.2 | $167,478.00 |
| Olga M. Urbieta | OMU | Associate | $515 | 434 | $223,510.00 |
| Justin Brownstone | JBX | Associate | $480 | 296.7 | $142,416.00 |
| Alex Rossmiller | ARX | Associate | $445 | 2.6 | $1,157.00 |
| Christine D. Ely | CDE | Associate | $515 | 831.5 | $428,222.50 |
| Ben Odell | BOX | Associate | $445 | 1000.7 | $445,311.50 |
| Rajat Rana | RR1 | Associate | $445 | 56 | $24,920.00 |
| Kate Lydon | KLX | Associate | $445 | 1134 | $504,630.00 |
| Cash Rowden | CR | Attorney | $320 | 836.3 | $267,616.00 |
| Irene Tokar | ILT | Attorney | $320 | 729.8 | $233,536.00 |
| Stephanie | SM1 | Attorney | $320 | 403.9 | $129,248.00 |

| McCarthy | | | | | |
|---|---|---|---|---|---|
| Lauren Rosenthal | LR | Attorney | $320 | 197.5 | $63,200.00 |
| Stephen Chiu | SC1 | Attorney | $320 | 328.5 | $105,120.00 |
| Heather Nolan | HN | Attorney | $320 | 465.5 | $148,960.00 |
| Kathleen Fay | KMF | Attorney | $320 | 777.1 | $248,672.00 |
| Haley Siman | HS | Attorney | $320 | 417.6 | $133,632.00 |
| Christopher Clark | CC4 | Attorney | $320 | 637.1 | $203,872.00 |
| SoYun Roe | SR1 | Attorney | $320 | 752.2 | $240,704.00 |
| Roy Nelson | RN | Managing Clerk | $315 | 10.8 | $3,402.00 |
| Joan Collopy | JC | Paralegal | $280 | 748.6 | $209,608.00 |
| Cheyoon Im | CI | Paralegal | $280 | 731.9 | $204,932.00 |
| Lindsey Kelleher | LK | Paralegal | $280 | 715.7 | $200,396.00 |
| Jonathon Tap | JT | Paralegal | $280 | 5.4 | $1,512.00 |
| Kristina Grosso | KG | Paralegal | $280 | 6.2 | $1,736.00 |
| Yiran Gu | YG2 | Paralegal | $280 | 2.8 | $784.00 |
| Maryam Nassiri | MN | Paralegal | $280 | 2.1 | $588.00 |
| Julia Hertz | JH4 | Paralegal | $280 | 3.4 | $952.00 |
| Greg Ruben | GR1 | Paralegal | $280 | 5.7 | $1,596.00 |
| Linda Jovel | LJ | Lit Support | $150 | 1.4 | $210.00 |
| Cyrus Wilcox | CW1 | Lit Support | $150 | 3.3 | $495.00 |
| Jacob Cisneros | JC2 | Lit Support | $150 | 0.6 | $90.00 |
| Jonathan Espinosa | JE | Lit Support | $150 | 2 | $300.00 |
| Alan Davis | AD1 | Lit Support | $150 | 4.6 | $690.00 |
| Danny Rose | DR | Lit Support | $150 | 1.2 | $180.00 |
| Boris Sobrevilla | BS | Lit Support | $150 | 2.7 | $405.00 |
| James Bandes | JB3 | Lit Support | $250 | 0.6 | $150.00 |
| Jet Ma | JM7 | Lit Support | $150 | 2.3 | $345.00 |
| TOTAL | | | | 17436.6 | $8,380,343.00 |

## Schedule 2

## Hours and Fees for the Tenth Interim Compensation Period As Rendered By Category

| Task Code | Total | Total |
|---|---|---|
| General Case Administration | 52.30 | $16,736.00 |
| Hearings and Court Communications | 14.70 | $11,089.50 |
| Non-Working Travel | 783.30 | $471,592.00 |
| Unsecured Creditors Issues/Meetings/Communication | 70.00 | $52,118.50 |
| Other General Business Operations Issues | 26.90 | $23,268.50 |
| Derivatives/SWAP Agreement Issues | 386.20 | $265,376.50 |
| Non-Derivative Adversary Proceedings | 15303.00 | $7,220,124.50 |
| Firm's Own Billing/Fee Applications | 797.00 | $318,701.50 |
| Firm's Own Retention Issues | 3.20 | $1,336.00 |
| Totals | 17436.60 | $8,380,343.00 |

1

**Schedule 3**

| DESCRIPTION | TOTAL |
|---|---|
| Air Travel | $103,947.61 |
| Attorney Service | $11,358.53 |
| Color Printing (@ $0.50) | $166.50 |
| Color Printing (@ $0.53) | $2,058.52 |
| Conference Fee | $1,274.81 |
| Digital Prints (blowbacks and slipsheets) | $19,091.48 |
| Document Reproduction | $27,838.60 |
| Evidence | $102.45 |
| Express Mail | $27,120.87 |
| Filing Fee | $338.00 |
| Hosting Fee | $28,050.00 |
| Hotel | $88,011.80 |
| iConnect Licensing Fees | $6,024.49 |
| Local Meals | $9,032.91 |
| Local Travel | $19,570.28 |
| Meals During Travel | $11,229.14 |
| Media Create/Dup (CDs & DVDs) | $372.50 |
| Messengers | $2,083.01 |
| Miscellaneous | $86.88 |
| Native Filing Printing | $1,147.77 |
| OCR | $25.35 |
| Off-Site Document Services | $91,849.60 |
| Online Research | $18,456.77 |
| Other Lit Support Services (including outside labor charges) | $109.70 |
| Outside Record Production | $76.94 |
| Outside Photocopy | $1,674.04 |
| Outside Velo Binding | $23.00 |
| PACER Services | $338.16 |
| Paralegal Overtime | $7,988.36 |

| DESCRIPTION | TOTAL |
|---|---|
| Parking | **$351.06** |
| Postal | **$125.94** |
| Scans | **$173.70** |
| Telecopier | **$11.28** |
| Telephone | **$4,134.58** |
| Travel (internet/baggage fees) | **$1,404.23** |
| Videotaping | **$1,205.82** |
| Witness Fee | **-$80.00** |
| **TOTAL** | **$486,774.68** |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Olga M. Urbieta (OU0612)

*Special Counsel for the Official*
*Committee of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re:                                          :    Chapter 11 Case
                                                :
LEHMAN BROTHERS HOLDINGS INC.,                  :    No. 08-13555 (JMP)
<u>et al.</u>                                   :
                                                :    Jointly Administered
                               Debtors.         :
---------------------------------------------------------- x

**TENTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART
& SULLIVAN, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING
<u>THE PERIOD OCTOBER 1, 2011 THROUGH MARCH 5, 2012</u>**

Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al.</u> (the

"<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated April 14, 2011, (as amended, the "<u>Compensation Order</u>"), for allowance of

interim compensation for professional services rendered in the amount of $8,380,343.00 and

1

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the

amount of $486,774.68 during the period beginning October 1, 2011 through and including

March 5, 2012 (the "Fee Period" or the "Tenth Interim Compensation Period"), and, in support

thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.        Quinn Emanuel, special counsel to the Committee, is responsible for,

among other things, investigating and prosecuting claims and causes of action against major

financial institutions from which the Committee's main counsel, Milbank, Tweed, Hadley &

McCloy LLP ("Milbank Tweed"), is conflicted.  Such financial institutions were parties to

complex transactions with Lehman, and include JPMorgan Chase Bank, N.A. ("JPMC"),

Citibank, N.A. ("Citibank"), Barclays Capital, Inc. ("Barclays"), and Bank of America, N.A.

("BofA").  Additionally, Quinn Emanuel reviews the claims of these financial institutions and is

responsible for matters filed by these, and all other entities where the Committee's lead counsel is

conflicted.  Quinn Emanuel is also involved with the comprehensive derivatives alternative

dispute resolution process.

2.        As special counsel, Quinn Emanuel is devoted to substantially

advancing the rights of all unsecured creditors.  Throughout this Fee Period, Quinn Emanuel

attorneys spent a significant amount of time investigating claims, prosecuting estate causes of

action, drafting hundreds of pages of briefs and memoranda, taking myriad depositions, and

participating in numerous derivatives-related meetings and mediations.

3.        JPMC Litigation.  During this Fee Period, Quinn Emanuel devoted

significant resources to prosecuting considerable causes of action against JPMC seeking the

recovery of billions of assets the estates maintain were transferred fraudulently.  Pursuant to a

litigation protocol among the Debtors and the Committee, Quinn Emanuel plays a lead role in

2

prosecuting this action.  During this Fee Period, Quinn Emanuel attorneys were involved in continuing discovery in connection with the JPMC adversary proceeding by engaging in additional party discovery (including through interrogatories and 30(b)(6) deposition notices), further non-party discovery (including through foreign depositions via the Hague Convention), and discovery of high-ranking government officials.  Quinn Emanuel attorneys also engaged in ongoing factual development by reviewing the extensive record, including projects to synthesize and summarize key deposition testimony and documents for later use in expert reports and summary judgment motions.

4.      Quinn Emanuel attorneys continued to take depositions during this Fee Period.  In total, they prepared for and took the depositions of thirty (30) current and former JPMC witnesses, thirty-two (32) third party witnesses and coordinated and supported Curtis, Mallet-Prevost, Colt & Mosle LLP (Lehman Brothers Holdings Inc. ("LBHI") counsel) in taking and/or defending an additional forty-seven (47) depositions of former Lehman employees and other third party witnesses.  Moreover, time was spent researching recent authorities and preparing a supplemental brief in further opposition to JPMC's motion to dismiss the adversary proceeding.

5.      Quinn Emanuel also worked with retained experts to analyze issues central to the litigation with JPMC and identified and retained additional experts.  Quinn Emanuel attorneys have taken the lead in all areas of plaintiffs' work with experts, but have worked in concert with LBHI's counsel, financial advisor and the estate to ensure that pre-existing estate resources are leveraged appropriately to assist and support the work of experts retained specifically for the adversary proceeding and in the analysis of JPMC's claims against the LBHI estate.

3

6.          Finally, Quinn Emanuel filed, litigated, and settled an objection to claims filed against LBHI by funds managed by JPMC affiliates.  The negotiations ultimately resulted in a settlement of the objection on favorable terms, returning almost $700 million in cash collateral to the LBHI estate.  The Court approved the settlement on February 15, 2012.

7.          <u>BofA Litigation</u>.  During this Fee Period, Quinn Emanuel attorneys dedicated resources to the BofA appeal from the Bankruptcy Court's November 2010 decision directing BofA to return more than $500 million to the LBHI estate.  To that end, Quinn Emanuel attorneys prepared a brief for submission to the District Court in support of affirming the Bankruptcy Court's decision.  Quinn Emanuel also spent time reviewing a proposed settlement between BofA and the Debtors, which the Court ultimately approved on November 16, 2011.

8.          <u>Derivative Transactions</u>.  Quinn Emanuel attorneys devoted significant time to reviewing numerous derivatives transactions to which the Debtors were parties.  Quinn Emanuel attorneys dedicated time to diligencing certain of these transactions to ensure that the value for unsecured creditors has been maximized.  Additionally, Quinn Emanuel attorneys represented the Committee on eleven derivatives mediations.  As a direct result of the contributions of Quinn Emanuel, the Committee, and the Debtors' other professionals, the estates obtained significant judgments and have preserved and significantly enhanced the value of estate assets.

9.          Lastly, on matters where Quinn Emanuel represents the Committee and where the estates are also a party, Quinn Emanuel makes every effort to coordinate its efforts with estate counsel and avoid unnecessary duplication.  The fees and expenses charged by Quinn Emanuel were reasonable, necessary and beneficial to these estates.

4

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction to hear and determine the Application

pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of

the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the

Local Guidelines is attached hereto as Exhibit A.

## III.    GENERAL BACKGROUND

11.    On September 15, 2008, and periodically thereafter (the "Petition

Date"), LBHI, and certain of its subsidiaries and affiliated entities (collectively, the "Debtors")

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors

are operating their business and managing their properties as debtors in possession.

12.    On September 17, 2008, the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

13.    On January 16, 2009, the Court entered an Order directing the

appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2).  By order dated July

13, 2010, the Examiner was discharged of its duties to investigate, inter alia, various transfers and

transactions involving the Debtors and their affiliates as well as the events immediately preceding

the commencement of the Chapter 11 Cases.

14.    On September 1, 2011, the Debtors filed a third amended joint

chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Nos. 19627

and 19629].  On September 1, 2011, the Bankruptcy Court entered an amended order [No. 19631]

5

approving the Disclosure Statement, establishing solicitation and voting procedures in connection

with the Plan, scheduling the confirmation hearing and establishing notice and objection

procedures for the confirmation hearing.  On September 15, 2011, the Bankruptcy Court entered

an order [No. 20016] approving a modification to the Disclosure Statement.  On December 6,

2011, the Bankruptcy Court entered an order confirming the Plan [No. 23023].

### IV.    RETENTION OF QUINN EMANUEL

15.    On October 21, 2008, the Committee filed its Application Under 11

U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention

and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, Nunc

Pro Tunc to September 17, 2008 (the "Retention Application").

16.    On November 21, 2008, this Court entered the Final Order

Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as

Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings

Inc. et al., Nunc Pro Tunc to September 17, 2008 (the "Retention Order").  A true and correct

copy of the Retention Order is attached hereto as Exhibit B.

17.    On October 11, 2008, the Debtors filed a Motion Pursuant to Sections

105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to

Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals (the "Compensation Motion").

18.    The Compensation Order establishes a procedure for, inter alia, the

payment of interim fees and expenses to professionals employed by the Committee on a monthly

basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee

statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is

attached as Exhibit C.

## V.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

19.     Quinn Emanuel submitted its first quarterly fee application on April

10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing

September 15, 2008 through January 31, 2009.

20.     Quinn Emanuel submitted its second quarterly fee application on

August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period

commencing February 1, 2009 through May 31, 2009.

21.     Quinn Emanuel submitted its third quarterly fee application on

December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period

commencing June 1, 2009 through September 30, 2009.

22.     Quinn Emanuel submitted its fourth quarterly fee application on April

16, 2010 requesting $2,829,628.18 in fees and $191,748.74 in expenses for the period

commencing October 1, 2009 through January 31, 2010.

23.     Quinn Emanuel submitted its fifth quarterly fee application on August

16, 2010 requesting $3,480,537.09 in fees and $281,095.21 in expenses for the period

commencing February 1, 2010 through May 31, 2010.

24.     Quinn Emanuel submitted its sixth quarterly fee application on

December 16, 2010 requesting $3,187,890.63 in fees and $259,395.28 in expenses for the period

commencing June 1, 2010 through September 30, 2010.

---

[1]     Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

7

25.          Quinn Emanuel submitted its seventh quarterly fee application on June 2, 2011 requesting $4,835,788.00 in fees and $155,800.04 in expenses for the period commencing October 1, 2010 through January 31, 2011.

26.          Quinn Emanuel submitted its eighth quarterly fee application on August 15, 2011 requesting $5,557,558.50 in fees and $194,469.22 in expenses for the period commencing February 1, 2011 through May 31, 2011.

27.          Quinn Emanuel submitted its ninth quarterly fee application on December 14, 2011 requesting $6,632,263.50 in fees and $398,662.27 in expenses for the period commencing June 1, 2011 through September 30, 2011.  A chart summarizing the amounts requested and approved in Quinn Emanuel's prior fee applications is attached hereto as Exhibit G.

28.          This Application is Quinn Emanuel's tenth quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from October 1, 2011 through March 5, 2012.

29.          This Application requests that the Court (a) approve interim fees in the total amount of $8,380,343.00 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $486,774.68 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

30.          During the Fee Period, Quinn Emanuel submitted six monthly fee statements (the "Monthly Fee Statements").  Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $6,704,274.00 (representing

8

80% of the $8,380,343.00 in fees billed by Quinn Emanuel from October 1, 2011 through March 5, 2012) and expenses incurred in the total amount of $486,774.68 (100% of the expenses billed by Quinn Emanuel from October 1, 2011 through March 5, 2012). For the period commencing on October 1, 2011 through October 31, 2011, Quinn Emanuel requested payment of $1,333,050.40 in fees (representing 80% of the $1,666,313.00 in fees for that period) and $80,433.54 in expenses. For the period commencing on November 1, 2011 through November 30, 2011, Quinn Emanuel requested payment of $1,343,010.80 in fees (representing 80% of the $1,678,763.50 fees for that period) and $82,437.48 in expenses. For the period commencing on December 1, 2011 through December 31, 2011, Quinn Emanuel requested payment of $1,270,625.20 in fees (representing 80% of the $1,588,281.50 in fees for that period) and $95,837.70 in expenses. For the period commencing on January 1, 2012 through January 30, 2012, Quinn Emanuel requested payment of $1,415,406.00 in fees (representing 80% of the $1,769,257.50 in fees for that period) and $65,659.82 in expenses. For the period commencing on February 1, 2012 through February 29, 2012, Quinn Emanuel requested payment of $1,163,785.20 in fees (representing 80% of the $1,454,731.50 in fees for that period) and $49,392.77 in expenses. For the period commencing on March 1, 2012 through March 5, 2012, Quinn Emanuel requested payment of $178,396.00 in fees (representing 80% of the $222,996.00 in fees for that period) and $113,013.76 in expenses.[2]

31.     The fees and expenses requested are reasonable, and all amounts requested were for actual and necessary services rendered on behalf of the Committee.

32.     Quinn Emanuel has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases. No promises have been received by Quinn

---

[2]     Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee (footnote continued)

Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## VI.    SUMMARY OF PROFESSIONAL SERVICES RENDERED

33.    Pursuant to the guidelines promulgated by the United States Trustee, Quinn Emanuel classified all services performed for which compensation is sought into separate categories. Quinn Emanuel attempted to place the services performed in the category that best relates to the services provided. However, because certain services may relate to one or more categories, services pertaining to one category may be included in another category. Schedule 1, attached hereto, lists each timekeeper, his or her respective billing rate, professional information, and the total number of hours expended on this case. Schedule 2, attached hereto, summarizes the professional and paraprofessional time expended by project category. Timekeeping entries and Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these categories. Exhibit D, attached hereto, contains time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee.[3]

34.    The following summary is intended only to highlight key services rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has expended a considerable number of hours on behalf of the Committee, and is not meant to be a detailed description of all of the work performed.

---

statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

[3]    Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

### A.    General Case Administration (Hours: 52.3; Fees: $16,736.00)

35.        Quinn Emanuel serves as special counsel to the Committee in respect

of numerous matters, including various estate litigations against major financial institutions.  As

special counsel, Quinn Emanuel also represents the Committee on matters where its main

counsel, Milbank Tweed, is conflicted.  To that end, its attorneys must keep abreast of the

various pleadings filed in the Chapter 11 Cases and in various adversary proceedings.

Accordingly, during this Fee Period, a Quinn Emanuel staff attorney spent time reviewing

pleadings filed each day in the Lehman cases and various adversary proceedings.  In order to

create cost savings to the estate, Quinn Emanuel has arranged for a specially trained staff

attorney (who bills at a rate lower than a first year associate) to conduct a review and assessment

of newly filed pleadings (including, without limitation, whether the pleadings raise issues of

concern to the Committee, or were filed in proceedings where the Committee is a party).  These

charges are part of Quinn Emanuel's efforts to prosecute estate claims, are integral to the

litigation effort, and are an important part of its role as special counsel to the Committee.

### B.    Hearings and Court Communications (Hours: 14.7; Fees: $11,089.50)

36.        Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on

behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus

hearings where matters being handled by Quinn Emanuel were being presented for consideration,

and specially scheduled hearings with respect to adversary proceedings where it represents the

Committee.  To prepare for these hearings, Quinn Emanuel attorneys often expended considerable

time reviewing and analyzing documents, including correspondence and pleadings, and

conducting independent legal and factual research.

11

C.      **Non-Derivative Adversary Proceedings (Hours: 15,303.0; Fees: $7,220,124.50)**

37.      Time billed to this category generally relates to litigation that Quinn Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors. Consistent with Quinn Emanuel's role as special counsel to the Committee, the majority of the services Quinn Emanuel provides relate to litigation. For that reason, most of the time in Quinn Emanuel's application falls into this category.

38.      JPMorgan Litigation. On December 2, 2009, the Committee and LBHI ("Plaintiffs") co-signed a memorandum (the "Protocol") governing, among other things, the joint prosecution of claims against JPMC. The Protocol provides that the Committee, through its counsel Quinn Emanuel, will play a significant role in any litigation involving the prosecution of these claims. Pursuant to the terms of the Protocol, Quinn Emanuel worked with LBHI's counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), to develop potential claims against JPMC, conduct the legal and fact research required effectively to plead those claims, and draft an adversary complaint.

39.      On May 26, 2010, LBHI and the Committee filed their complaint against JPMC, initiating an adversary proceeding (the "Adversary Proceeding"). The Adversary Proceeding seeks the return of billions of dollars in value to the LBHI estate by invalidating, under both bankruptcy and state law, certain guaranties and security agreements entered into in the weeks before LBHI filed for bankruptcy relief.

40.      During this Fee Period, Quinn Emanuel attorneys devoted substantial time to prosecuting Plaintiffs' claims against JPMC and defending against counterclaims asserted by JPMC. In particular, Quinn Emanuel attorneys were involved in (i) continuing discovery in connection with the Adversary Proceeding—engaging in additional party discovery (including

12

through interrogatories and 30(b)(6) deposition notices), further non-party discovery (including

through foreign depositions via the Hague convention), and discovery of high-ranking

government officials, (ii) engaging in ongoing factual development by reviewing the very large

record, including projects to synthesize and summarize key deposition testimony and documents

for later use in expert reports and summary judgment motions, (iii) preparing for and taking the

depositions of thirty (30) current and former JPMC witnesses, thirty-two (32) third party

witnesses and coordinating and supporting Curtis in taking and/or defending an additional forty-

seven (47) depositions of former Lehman employees and other third party witnesses, (iv) working

with retained experts to analyze issues central to the litigation with JPMC and identifying and

retaining additional experts, (v) preparing a supplemental brief in further opposition to JPMC's

motion to dismiss the Adversary Proceeding, (vi) continuing to litigate the objection to portions

of JPMC's proofs of claims related to triparty repo financing (the "Deficiency Objection") and

pursuing related discovery, and (vii) filing, litigating and settling an objection to claims filed

against LBHI by funds managed by JPMC affiliates (the "Asset Management Objection").

      41.     *Continued Document and Other Discovery.*  During this Fee Period,

Quinn Emanuel attorneys continued to spend significant amounts of time meeting and conferring

with counsel for both JPMC and third parties regarding both document and deposition discovery.

Quinn Emanuel also took the lead in drafting two additional sets of interrogatories directed to

JPMC, and served several notices for 30(b)(6) depositions, each commencing meet and confer

process to determine agreed topics and scope of testimony.

      42.     Document production from third parties in response to subpoenas and

from JPMC continued during this Fee Period, requiring additional document review.  To that end,

Quinn Emanuel continued during the Fee Period to coordinate and direct a group team of contract

attorneys billed directly to the estate through Alvarez & Marsal ("A&M").  Under the

management and guidance of Quinn Emanuel attorneys, a core group of these reviewers used a

digital document management platform to review documents and assist Quinn Emanuel associates

and partners in preparing for depositions.  Once their work was complete shortly after the new

year, the remaining contract reviewers stopped reviewing documents.

43.     Quinn Emanuel attorneys also drafted the papers necessary to secure

depositions of key third parties located outside the United States and began a process of

negotiation that would eventually lead to discovery on written questions from the current and

former Secretaries of the Treasury of the United States (though the actual questions were not

served or answered until after the Fee Period ended).

44.     *Fact Development and Record Synthesis*.  Quinn Emanuel attorneys

continued to spend time updating document chronologies and factual analyses of key issues in the

litigation with JPMC.  Combining these chronologies and analyses with legal research on such

key issues, the attorneys updated detailed memoranda analyzing documents in the context of the

overall legal and factual theories of this case.  Quinn Emanuel and Curtis have used these

memoranda (or "modules") to prepare for depositions and will continue to use them for litigation

at trial for the substance of Plaintiffs' claims and JPMC's counterclaims.

45.     This Fee Period also saw Quinn Emanuel staff attorneys and

associates, managed by senior associates and partners, begin the process of synthesizing and

summarizing the very large deposition record.  These summaries and chronologies have been

used with experts while developing expert analyses and may eventually form the basis of motions

for summary judgment on discrete issues in the Adversary Proceeding.

46.     *Continued Deposition Discovery*.  Quinn Emanuel has taken the lead

in deposition discovery with respect to current and former JPMC witnesses and the bulk of third

party witnesses and government entity witnesses.  Curtis, on behalf of the estate, has focused on

14

former Lehman employees and the remaining third parties.  During the Fee Period, Quinn

Emanuel continued to issue and serve deposition subpoenas to third parties, including both

government employees and employees of third-party financial institutions.  Quinn Emanuel

attorneys then engaged in meet and confer discussions with subpoena recipients to schedule

depositions and resolve any disputes, including preparing materials required by regulation prior to

the depositions of certain employees of the federal government.  Quinn Emanuel also continued

throughout the Fee Period to negotiate with JPMC regarding witness identification and deposition

scheduling.

47.     During this Fee Period, Quinn Emanuel attorneys took the

depositions of thirty (30) JPMC witnesses, including both present and former employees.  These

witnesses included many of JPMC's most senior executives.  By way of example, the deponents

included JPMC's Chairman and CEO, its Chief Risk Officer, its General Counsel, the head of

JPMC's Treasuries and Securities Services line of business and the two co-heads of JPMC's

Investment Bank line of business.  JPMC witnesses also included less-senior employees and

former employees with key information, including the JPMC relationship manager primarily

responsible for communications with Lehman during 2008, traders responsible for evaluating

Lehman collateral held by JPMC and the individual primarily responsible for the operations side

of JPMC's triparty business.

48.     Quinn Emanuel attorneys also took the lead for Plaintiffs in taking the

depositions of thirty-two (32) third party witnesses.  These witnesses included, by way of

example, (i) the Chairman and CEO of Barclays, as well as its General Counsel, (ii) senior

officials from the Department of the Treasury, (iii) employees of the Bank of New York, and (iv)

employees of the Federal Reserve Bank of New York and the Federal Reserve Board of

15

Governors involved in the events surrounding the bankruptcy, including the General Counsel of the Federal Reserve Bank of New York.

49.        To prepare for each deposition, Quinn Emanuel leveraged the document review team to identify relevant documents, which were then passed to an associate or staff attorney. The associate or staff attorney further analyzed the documents to prepare an appropriate set of documents for potential use with the witness at deposition and prepared a bio and smaller set of documents to share with Curtis and the estate to aid in coordination. The partner or associate taking the deposition used the resulting binder of documents to create the outline or notes for use during the deposition.

50.        In addition to the depositions it led, Quinn Emanuel attorneys worked with Curtis to identify issues and documents central to the forty-seven (47) depositions of former Lehman employees, financial advisors and legal advisors that Curtis took the lead on during the Fee Period. For very senior Lehman witnesses—including the CFO and Treasurer, who were deposed during the Fee Period—Quinn Emanuel attorneys took part in pre-deposition witness meetings and other preparations and questioned the witness during the deposition, where appropriate.

51.        *Case Development: Experts*.  In addition to the substantial document and deposition discovery undertaken by Quinn Emanuel during the Fee Period, Quinn Emanuel attorneys also spent significant time working with expert witnesses, including identifying and engaging appropriate experts and working on expert analysis of the key issues in the litigation. Quinn Emanuel attorneys have taken the lead in all areas of Plaintiffs' work with experts, but have worked in concert with Curtis, A&M and the estate to ensure that pre-existing estate and A&M resources are leveraged appropriately to assist and support the work of experts retained specifically for the Adversary Proceeding and analysis of JPMC's claims against the LBHI estate.

16

52.          During the Fee Period, Quinn Emanuel attorneys consulted with
Plaintiffs' retained experts to focus deposition preparation and began the process of working with
the experts to prepare materials to be incorporated into expert reports.

53.          *Analysis of JPMC Claims.*  In addition to its work on the Adversary
Proceeding, Quinn Emanuel continued during the Fee Period to work with Curtis, the estate and
A&M to research JPMC's claims against the estate as part of the claim review and reconciliation
process.  Quinn Emanuel attorneys worked on legal research to develop arguments to support
objections to all of JPMC's claims against the LBHI estate.  Quinn Emanuel attorneys also
worked with the experts retained by Plaintiffs to develop and define theories for objecting to the
claims.

54.          In particular, Quinn Emanuel attorneys spent significant amounts of
time analyzing JPMC's claims against LBHI related to derivatives exposure, consulting with
estate professionals, experts and attorneys from Curtis.  Quinn Emanuel attorneys took the lead in
working out the details of an objection to JPMC's derivatives-related claims, including comparing
JPMC's actions in closing out derivatives transactions, including the use of add-ons and the
manipulation of close-out dates, to the actions of other big-bank derivatives counterparties.
During the Fee Period, Quinn Emanuel worked with Curtis to draft a detailed objection, seeking
the return of over $1.5 billion to the LBHI estate.  The drafting process included evaluation of
underlying documents and data and regular meetings with the Lehman business people working
on derivatives claims.

55.          *The Asset Management Objection.*  During the Fee Period, Quinn
Emanuel attorneys finished drafting and, on October 13, 2011, filed the Asset Management
Objection.  The Asset Management Objection was an omnibus objection addressing a multitude
of claims filed by a host of claimant investment funds managed by JPMC entities (the "Funds").

17

It focused primarily on the issue of whether the Funds were "affiliates" of JPMC and therefore

covered under the guaranty and security agreement executed by LBHI in the week before its

bankruptcy.  Extensive legal and factual research were required to put brief the objection with

Quinn Emanuel attorneys taking the lead in all aspects.

56.     After JPMC responded to the Asset Management Objection on

December 16, 2011, Quinn Emanuel Attorneys took the lead in drafting a reply brief in further

support of the Asset Management Objection, which was filed on January 23, 2012.

57.     After filing the Asset Management Objection, Quinn Emanuel

attorneys led negotiations with counsel for the Funds, as well as counsel for JPMC.  The

negotiations ultimately resulted in a settlement of the Asset Management Objection on favorable

terms, returning almost $700 million in cash collateral to the LBHI estate.  Quinn Emanuel

worked with Curtis to draft the papers necessary to secure Court approval of the settlement and

participated in the resulting hearing.  The Court approved the settlement on February 15, 2012.

58.     *The Deficiency Objection*.  On August 31, 2011, Quinn Emanuel filed

the deficiency objection on behalf of Plaintiffs (the "Deficiency Objection").  The Deficiency

Objection includes several theories, including (i) that JPMC failed to dispose of Lehman

collateral in a commercially reasonable manner, (ii) that JPMC received consideration from

Barclays in settlement and should not be able to achieve a double recovery through its claims

against the estate, and (iii) that JPMC's claims improperly include interest.  Quinn Emanuel took

the lead in developing the first two theories, including extensive legal research on the application

of the Uniform Commercial Code to collateral disposition and the effect of prior settlements on

claims in bankruptcy.

59.        JPMC responded to the Deficiency Objection during the Fee Period,

on November 15, 2011.  Quinn Emanuel attorneys reviewed and considered the response and

continued to analyze the facts underlying the Deficiency Objection, working with A&M and

retained experts.  At the same time, Quinn Emanuel took the lead in an intensive meet and confer

dialogue with JPMC's counsel over discovery, ultimately establishing a litigation schedule and

beginning document discovery.  Quinn Emanuel attorneys worked with Plaintiffs' experts to begin

analysis of a very large amount of data JPMC produced from its various systems relating to its

liquidation of Lehman collateral.  On February 24, 2012—pursuant to the schedule negotiated

between the parties—JPMC filed a motion to strike portions of the Deficiency Objection.  During

the last days of the Fee Period, Quinn Emanuel began drafting a brief in opposition.

60.        *Misc. Case Issues*.  Quinn Emanuel attorneys continued to spend

considerable time negotiating with counsel for JPMC on a wide variety of litigation-related

topics, ranging from discovery to scheduling issues.  JPMC and Plaintiffs negotiated an extension

to the schedule for the Adversary Proceeding as filed on December 16, 2011 and signed by the

Court on January 3, 2012.

61.        Citibank Litigation.  As discussed above, on December 2, 2009, the

Committee and LBHI co-signed the Protocol governing, among other things, the joint prosecution

of claims against JPMC.  The Protocol also governs the joint prosecution of estate claims against

Citibank.  It provides that the Committee, through its counsel Quinn Emanuel, will play a

significant role in investigating claims against Citibank and in any litigation involving the

prosecution of those claims.  Pursuant to the terms of the Protocol, Quinn Emanuel worked

extensively with LBHI's counsel, Curtis, to analyze and develop potential claims against

Citibank, conduct the legal and fact research required effectively to assert those claims, and draft

an adversary complaint.

19

62.        On February 8, 2012, LBHI and the Creditors' Committee, as proposed intervenor, filed a complaint (the "Citibank Complaint") against Citibank and certain of its affiliates.  The Citibank Complaint challenges Citibank's entitlement to a $2 billion deposit at Citibank that LBHI made in June 2008, the enforceability of Citibank's September 9, 2008 Guaranty and the right to $500 million transferred to LBI (and then Citibank) on the eve of the bankruptcy filings.  It also lodges objections to various Citibank's (and certain of its affiliates') claims filed against the estates, including certain derivatives claims filed in the amount of approximately $2 billion.

63.        Among other things, Plaintiffs assert that Citibank is wrongfully withholding $2 billion of LBHI cash and that Citibank cannot use that cash to pay itself dollar-for-dollar on billions of dollars in claims that would otherwise be unsecured.  According to the plaintiffs, the setoff of the funds violates the Bankruptcy Code, state law and the parties' intent regarding the allowed purpose and usage of those funds.  Plaintiffs further contend that Citibank's and its affiliates claims against the Lehman estates are themselves overstated or invalid, including over $2 billion of miscalculated claims purportedly arising under the parties' derivatives contracts.  Defendants have also: (i) refused to return $500 million of LBHI cash that LBHI transferred to LBI's account at Citibank, which LBI then transferred to Citibank, hours before the LBHI bankruptcy filing; (ii) refused to pay hundreds of millions of dollars owed to Lehman under the parties' derivatives contracts; and (iii) refused to pay more than $200 million owed to LBCC under the parties' clearance agreement.  Plaintiffs conclude that the defendants should be required to pay over these amounts to the Lehman estates, and defendants' claims should be reduced and/or disallowed.

20

64.          During this Fee Period, Quinn Emanuel, together with LBHI's counsel, spent significant time researching, drafting, and revising the Citibank Complaint.  In connection with its research, Quinn Emanuel reviewed all of Citibank's claims against the estates, including the approximate $1.9 billion in derivatives claims and LBHI's guaranty.  Moreover, in order prosecute the claims in an efficient and economical manner and avoid duplication with respect to the litigation, Quinn Emanuel coordinated its efforts in various conferences with LBHI's counsel, Curtis.

65.          On February 27, 2012, the Court authorized the Creditors' Committee to intervene as a plaintiff in the Citibank adversary proceeding pursuant to the Protocol.

66.          <u>Bank of America Litigation</u>.  Quinn Emanuel attorneys actively participated on the Committee's behalf in the litigation between the estates and BofA.  On November 16, 2010, the Bankruptcy Court issued its decision (the "<u>BofA Decision</u>") granting motions for summary judgment filed by LBHI and LBSF (and joined by the Committee) against BofA.  The Court directed BofA to return $500 million plus interest to the Debtors, holding that the account at issue "was intended to function and in practice did function as a segregated account established for the special limited purpose of securing any indebtedness that might arise on account of intra-day overdrafts."  As such, BofA's seizure of the collateral for the satisfaction of derivative-related indebtedness violated the automatic stay imposed by section 362 of the Bankruptcy Code, and BofA was not entitled to setoff the $500 million.

67.          On May 20, 2011, the Bankruptcy Court entered final judgment against BofA on all counts of the Complaint, and in favor of LBHI on its counterclaim asserted in the adversary proceeding, in the amount of $501,800,000.00 (the "<u>Funds</u>"), plus simple interest on the Funds calculated at the rate of 9% per annum from November 10, 2008 through December 3, 2010 (the "<u>Final Judgment</u>").  Subject to BofA's appellate rights, BofA agreed to reimburse the

Debtors' and the Committee's attorneys' fees incurred in connection with BofA's stay violation up to aggregate amount of $1.25 million dollars.

68.        On May 23, 2011, BofA filed a notice of appeal.  On July 1, 2011, BofA filed a brief in support of its appeal.  Quinn Emanuel attorneys worked closely with LBHI's counsel to coordinate drafting of responsive appellate papers.  Quinn Emanuel thereafter spent considerable time researching and drafting a brief in response to the BofA appeal.  As a result of discussions and negotiations among the Debtors and BofA, the parties ultimately came to a settlement agreement.  Quinn Emanuel attorneys spent considerable time during this period reviewing, analyzing and evaluating the propriety of the settlement.  On October 19, 2011, the Bankruptcy Court entered an order approving the settlement.  Thereafter, a stipulation of dismissal of appeal was filed and approved on November 16, 2011.

69.        DIP Reconsideration Motion.  On September 29, 2008, the Committee filed the Motion of Official Committee of Unsecured Creditors for Reconsideration of Court's September 17, 2008 Interim Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to Sections 363 and 364 of Bankruptcy Code and (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to Section 364 of Bankruptcy Code (the "Motion for Reconsideration").

70.        The Motion for Reconsideration sought reconsideration of the interim order, dated September 17, 2008 (the "Interim DIP Order"), approving a debtor-in-possession credit agreement, dated September 17, 2008 (the "DIP Credit Agreement"), between LBHI and Barclays Bank PLC and Barclays Capital Inc. (together, "Barclays").  The Motion for Reconsideration sought reconsideration of the Court's approval of a certain "termination fee" in the principal amount of $7,500,000.00 (the "Termination Fee") that Barclays claimed entitlement to under the terms of that certain fee letter (the "Fee Letter") executed in connection with the DIP

22

Credit Agreement.   The Motion for Reconsideration was adjourned from time to time as the
parties considered a negotiated resolution of the matter.

71.        On January 25, 2012, the Committee, LBHI and Barclays entered into
a Stipulation and Order Settling Issues in Connection with the Postpetition Financing of Lehman
Brothers Holdings Inc. and Providing for the Release of Funds (the "Stipulation").  Under the
terms of the Stipulation, the Termination Fee, which had been held in an escrow account (the
"Escrow Account") pending the resolution of the dispute, would be released as follows: (i)
$6,250,000 would be transferred to Barclays, and (ii) $1,250,000 and the balance of the Escrow
Account, including interest accrued thereon, would be transferred to the LBHI estate in full and
complete satisfaction and release of all claims relating to the DIP Credit Agreement, the Interim
DIP Order, the Fee Letter and the Motion for Reconsideration.

72.        Quinn Emanuel attorneys were an active participant in the
negotiations that ultimately culminated in the Stipulation.  Towards that end, Quinn Emanuel
attorneys spent significant time during the interim period analyzing the factual and legal issues
related to the dispute, evaluating the propriety of the settlement and preparing the Stipulation.  On
February 7, 2012, the Bankruptcy Court entered an Order approving the Stipulation.

**D.        Derivatives  (Hours: 386.2, Fees: $265,376.50)**

73.        During the Fee Period, Quinn Emanuel attorneys devoted time to
reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  The
Debtors have been in the process of reconciling and winding down their considerable derivatives
trading activities.  Quinn Emanuel attorneys devoted time to diligencing certain of these
transactions involving various counterparties, including large financial institutions, to ensure that
the value for unsecured creditors has been maximized.

74.        The Debtors have challenged whether counterparties had the right to unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11 filings.  Given the sheer volume of the Debtors' trading activity, the number of similarly situated transactions, and the value of such transactions to the estates, the outcome of such challenges can have substantial effect on the Chapter 11 Cases.  On behalf of the Committee, and working with the Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn Emanuel attorneys have devoted substantial time to examining issues, researching legal issues, drafting memoranda, attending mediations, settlement meetings, and hearings, and providing updates to the Committee and its derivatives sub-committee concerning such challenges.  Among the litigation matters handled by Quinn Emanuel are: the Ballyrock Adversary Proceeding (Adv. Pro. No. 09-01032); the Libra Adversary Proceeding (Adv. Pro. No. 09-01177) and disputes with parties involved in the Libra and MKP Vela transactions; and aspects of the so-called Bank of America "flip" Adversary Proceeding (Adv. Pro. No. 10-03547).

75.        <u>Derivatives ADR Process</u>.  During this Fee Period, Quinn Emanuel attorneys also represented the Committee in a number of pre-mediation negotiations and mediation sessions arising through the Court-ordered derivatives alternative dispute resolution process.  Specifically, Quinn Emanuel represents the Committee with respect to 11 derivatives matters subject to the alternative dispute resolution process, several of which resulted in mediation sessions (the counterparties to which are confidential pursuant to the order commencing the ADR process).  Before each session, Quinn Emanuel attorneys would review the confidential mediation statements submitted by the estates and the counterparty, review all the underlying transaction documents and any related correspondence, and prepare a detailed memorandum to the Committee discussing the transaction and recommending an appropriate

24

settlement floor.  Quinn Emanuel attorneys would also liaise with representatives for the estates in advance of each mediation session.

### E.    <u>Nonworking Travel  (Hours: 783.3, Fees: $471,592.00)</u>

76.        Time billed under this category was for the necessary time that Quinn Emanuel attorneys spent traveling on behalf of the Committee to Committee meetings, depositions and court hearings.  Given the compressed time and magnitude of the litigation in which Quinn Emanuel is involved, it was necessary for attorneys outside of Quinn Emanuel's New York office to travel to New York to participate in meetings, hearings, and settlement negotiations and depositions.  In the JPMC litigation, there were 80 depositions held in New York.  As discussed above, the attendance of these attorneys was necessary to the effective and efficient representation of the Committee.  Thus, time billed during this Fee Period, included cross-country air travel relating to this litigation.[4]  Quinn Emanuel attorneys also spent time traveling locally to Court, depositions and in-person meetings with the Debtors and other third parties.

### VII.    <u>ALLOWANCE OF COMPENSATION</u>

77.        The factors to be considered in awarding attorneys fees as enumerated in <u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts, including the Bankruptcy Court for the Southern District of New York. <u>See, e.g.</u>, <u>In re Drexel Burnham Lambert Group, Inc.</u>, 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y. 1991).  Indeed, a majority of the <u>First Colonial</u> factors are now codified in section 330(a)(3).  <u>See, e.g.</u>, 3 L. King, <u>et</u> <u>al.</u>, Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

---

[4]        The airfare incurred was not billed at business class fares.

78.        Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

79.        The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.").  Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

A.    **The Time and Labor Required**

80.        The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.  During the compensation period, approximately 17,436.0 recorded hours were expended by Quinn Emanuel' s partners, associates, and legal assistants in providing the requested professional services.  Quinn Emanuel's hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly charges its hourly clients.

B.    **The Necessity of The Services and Benefit to the Estate**

81.        These Chapter 11 Cases are generally regarded as among the most complex and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding the Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As detailed above, the services Quinn Emanuel provided to the Committee were necessary to preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will continue to maximize estate value.

82.        Quinn Emanuel nonetheless made every effort to avoid duplication. On any matter where Quinn Emanuel attorneys work with estate counsel, Quinn Emanuel aims to coordinate efforts and maintain efficiency.

C.      **The Novelty and Difficulty of Issues Presented in the Cases**

83.      Novel and complex issues have arisen in the course of the Chapter 11

Cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in

many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative

approach to problem solving have helped clarify and resolve difficult issues and will continue to

prove beneficial.

D.      **The Experience, Reputation and Ability of the Attorneys**

84.      Quinn Emanuel has extensive experience in the areas of insolvency,

workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee

have been rendered in a highly efficient manner by attorneys who have achieved a high degree of

expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have

represented the Committee have ensured that these cases have been administered in the most

efficient and expeditious manner.

## VIII.   DISBURSEMENTS

85.      Quinn Emanuel has incurred a total of $486,774.68 in expenses in

connection with representing the Committee during the Tenth Interim Compensation Period.

Quinn Emanuel records all expenses incurred in connection with the performance of professional

services.  A summary of these expenses and detailed descriptions of these expenses, is annexed

hereto as Exhibit E.

86.      In connection with the reimbursement of expenses, Quinn Emanuel's

policy is to charge its clients in all areas of practice for expenses, other than fixed and routine

overhead expenses, incurred in connection with representing its clients.  The expenses charged to

Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other

charges, mail and express mail charges, special or hand delivery charges, photocopying charges,

28

out-of-town travel expenses, local transportation expenses, expenses for working meals,

computerized research, and transcription costs.

87.       Quinn Emanuel charges the Committee for these expenses at rates

consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal

to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients.  In accordance

with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee

Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to

Quinn Emanuel.

88.       In providing or obtaining from third parties services which are

reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs

of investment, equipment or capital outlay.

89.       Quinn Emanuel regularly charges its non-bankruptcy clients for

ordinary business hourly fees and expenses for secretarial, library, word processing and other staff

services because such items are not included in the firm's overhead for the purpose of setting the

billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this

Application and will not seek reimbursement from the Debtors of such expenses in future

applications.  Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until

such time as an order is entered regarding its final fee application.

90.       Attorneys at Quinn Emanuel have not incurred expenses for luxury

accommodations or deluxe meals.  The Application does not seek reimbursement of air travel

expenses in excess of coach fares.  Throughout the Tenth Interim Compensation Period, Quinn

Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses

charged to the Debtors' estates.

29

## IX.    <u>NOTICE</u>

91.        Notice of this Application, as set forth in the Interim Compensation

Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United

States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors, and (e) the

chairperson of the fee committee.

## X.   <u>CONCLUSION</u>

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fee Period in the amount of $8,380,343.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $486,774.68, for a total award of $8,867,117.68 ; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Tenth Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  May 21, 2012
      New York, New York

                         **QUINN EMANUEL URQUHART
                         & SULLIVAN, LLP**

                         By:  _/s James C. Tecce_____
                             James C. Tecce

                         Susheel Kirpalani (SK8926)
                         James C. Tecce (JT5910)
                         Robert K. Dakis (RD0626)
                         51 Madison Avenue, 22nd Floor
                         New York, New York 10010
                         Telephone No.:  (212) 849-7000
                         Facsimile No.:  (212) 849-7100

                         *Special Counsel to Official Committee Of
                         Unsecured Creditors Of Lehman Brothers
                         Holdings Inc., et al.*