**HEARING DATE AND TIME:  May 31, 2012 at 10:00 a.m. (EST)**
**RESPONSE DEADLINE:  May 24, 2012 at 4:00 p.m. (EST)**

SEWARD & KISSEL LLP
John R. Ashmead (JA-4756)
Jack Yoskowitz (JY-3935)
One Battery Park Plaza
New York, New York  10004
Telephone:  (212) 574-1200
Facsimile:  (212) 480-8421

*Attorneys for Brigade Leveraged*
*Capital Structures Fund, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF BRIGADE LEVERAGED CAPITAL STRUCTURES
FUND, LTD. TO DEBTORS' TWO HUNDRED TWENTY-EIGHTH
OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)**

TO THE HON. JAMES PECK, UNITED STATES BANKRUPTCY JUDGE:

Brigade Leveraged Capital Structures Fund, Ltd. ("Brigade"), by and through its

undersigned counsel, hereby submits this response (the "Response") to the Debtors' (the

"Debtors") Two Hundred Twenty-Eighty Omnibus Objection to Claims (No Liability

Derivatives Claims), dated October 17, 2011 (the "Objection").  In support of its Response,

Brigade respectfully states as follows:[1]

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Master
Agreement (as defined below).

## Background

### Brigade's Proofs of Claim

1.       On or about September 18, 2009, Brigade filed a proof of claim against Lehman Brothers Special Financing Inc. ("LBSF") (Claim No. 33309) seeking (i) recovery of an aggregate amount of $4,453,369.00, (ii) an unliquidated amount of fees and expenses that will continue to accrue, (iii) unliquidated interest at the default rate, to the extent permitted under applicable law, and (iv) an unliquidated amount for LBSF's potential breaches under the Master Agreement (as defined below) (the "LBSF Proof of Claim").

2.       On or about September 18, 2009, Brigade filed a proof of claim against Lehman Brothers Holdings Inc. ("LBHI") (Claim No. 33315) in connection with its guarantee of LBSF's obligations to Brigade, seeking  (i) recovery of an aggregate amount of $4,453,369.00, (ii) an unliquidated amount of fees and expenses that will continue to accrue, (iii) unliquidated interest at the default rate, to the extent permitted under applicable law, and (iv) an unliquidated amount for LBSF's potential breaches under the Master Agreement (as defined below) (the "LBHI Proof of Claim" and together with the LBSF Proof of Claim, the "Proofs of Claim" ).

3.       Brigade entered into an ISDA Master Agreement with LBSF, dated as of March 30, 2007 (together with the Schedule thereto and the Credit Support Annex part thereof, the "Master Agreement").  Under the terms of the Master Agreement, and as set forth in the LBSF Proof of Claim, Brigade and LBSF agreed to enter into one or more derivative transactions, each evidenced by a confirmation.[2]

---

[2]      All relevant documentation was uploaded to the Debtors' Supplemental Questionnaire website in satisfaction of the Derivative Questionnaire requirements set forth in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, entered on July 2, 2009.

4.      LBHI unconditionally guaranteed the obligations of LBSF under the Master Agreement pursuant to the Guarantee of LBHI relating to the Master Agreement, dated as of October 22, 2007 (the "Guarantee").  The Guarantee is a Credit Support Document as contemplated by the Master Agreement.  LBHI also fully guaranteed the payment of all liabilities, obligations and commitments of certain of its subsidiaries, including LBSF, pursuant to a resolution of its board of directors, dated June 9, 2005 (together with the Guarantee, the "LBHI Guarantees").

5.      The filing by debtor guarantor LBHI of a chapter 11 petition on September 15, 2008 constituted an Event of Default under Section 5(a)(vii) of the Master Agreement.  Pursuant to Section 6 of the Master Agreement, which gives Brigade the right to terminate all outstanding transactions following an Event of Default, on September 19, 2008, Brigade sent LBSF a Notice of Termination, which set an Early Termination Date of September 19, 2008.

6.      Section 6(e) of the Master Agreement applies to determine payments owing if the Early Termination Date results from an Event of Default.  Section 6(e)(i) of the Master Agreement provides as follows:

> If the Early Termination Date results from an Event of Default, the Early Termination Amount will be an amount equal to (1) the sum of (A) the Termination Currency Equivalent of the Close-Out Amount or Close-Out Amounts (whether positive or negative) determined by the Non-defaulting Party for each Terminated Transaction or group of Terminated Transactions, as the case may be, and (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the non-Defaulting Party less (2) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party.  If the Early Termination Amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting party will pay the absolute value of the Early Termination Amount to the Defaulting Party.

3

7.      "Close-Out Amount" has the following meaning, as provided in Section

14 of the Master Agreement:

> [W]ith respect to each Terminated Transaction or each group of
> Terminated Transactions and a Determining Party, the amount of
> the losses or costs of the Determining Party that are or would be
> incurred under then prevailing circumstances (expressed as a
> positive number) or gains of the Determining Party that are or
> would be realised under then prevailing circumstances (expressed
> as a negative number) in replacing, or in providing for the
> Determining Party the economic equivalent of, (a) the material
> terms of that Terminated Transaction or group of Terminated
> Transactions, including the payments and deliveries by the parties
> under Section 2(a)(i) in respect of that Terminated Transaction or
> group of Terminated Transactions that would, but for the
> occurrence of the relevant Early Termination Date, have been
> required after that date (assuming satisfaction of the conditions
> precedent in Section 2(a)(iii)) and (b) the option rights of the
> parties in respect of that Terminated Transaction or group of
> Terminated Transactions.

8.      Section 14 of the Master Agreement also provides that the Close-Out

Amount is to be established in the following manner:

> Any Close-Out Amount will be determined by the Determining
> Party (or its agent), which will act in good faith and use
> commercially reasonable procedures in order to produce a
> commercially reasonable result.  The Determining Party may
> determine a Close-Out Amount for any group of Terminated
> Transactions or any individual Terminated Transaction but, in the
> aggregate, for not less than all Terminated Transactions.  Each
> Close-Out Amount will be determined as of the Early Termination
> Date or, if that would not be commercially reasonable, as of the
> date or dates following the Early Termination Date as would be
> commercially reasonable.

9.      Calculating its Close-Out Amount in accordance with the Master

Agreement, Brigade asserted claims against LBSF and LBHI in the amount of $4,453,369.00 for

amounts owing under the Master Agreement and the Guarantee, based upon quotations obtained

in good faith from leading dealers in the credit default swap market, in addition to certain

unliquidated amounts as set forth in paragraphs 1 and 2 above and as discussed in greater detail below.

10.       As set forth in the Proofs of Claim, under the Master Agreement, LBSF agreed to indemnify Brigade and pay all reasonable out-of-pocket expenses, including legal fees and any stamp tax, as a result of enforcement of its rights under the Master Agreement or any Credit Support Document, such as the Guarantee.  The Proofs of Claim include Brigade's legal fees and expenses, including legal fees and expenses in an amount to be determined.

11.       Pursuant to the Master Agreement, Brigade is also entitled to interest at the default rate on all amounts due and owing.  The Proofs of Claim include all interest and default interest to the extent permitted under applicable law in amounts to be determined.

12.       In addition, LBSF made certain representations and warranties under the Master Agreement.  The Proofs of Claim include damages to Brigade for any breaches of representations and warranties made by LBSF in the Master Agreement, to the extent applicable under the Master Agreement and related documents, in amounts to be determined.

**The Debtors' Objection to the Proofs of Claim**

13.       The Debtors state in the Objection that they have examined Brigade's Proofs of Claim and that such Proofs of Claim should be "disallowed and expunged on the basis that they provide no basis of liability as to the Debtors.  After a review of [Brigade's] supporting documentation and the Debtors' books and records, the Debtors have determined that . . . the Debtors do not owe any amounts to [Brigade] . . ."  Objection at ¶ 2.

14.       Based on such statement, and no further evidence, the Debtors seek to disallow and expunge the Proofs of Claim in their entirety.

## Argument

15.    The Debtors' Objection to the Proofs of Claim is baseless.  As the non-defaulting party, Brigade is entitled, under the express terms of the Master Agreement, to calculate the amounts underlying the Proofs of Claim, and Brigade so calculated such amounts. The Debtors do not offer any argument to dispute Brigade's entitlement to calculate the amounts or any evidence that Brigade's calculations are incorrect.  Further, the Debtors erroneously assert that the burden of proof with respect to the Proofs of Claim lies with Brigade, even though the Debtors' own cited case law is unequivocal that the proof of claim is *prima facie* valid and that the burden of proving otherwise rests squarely with the Debtors.

## The Debtors Provide No Evidence To Dispute the Amounts in the Proofs of Claim

16.    As set forth above, Brigade calculated the amounts in the Proofs of Claim, as required by, and in accordance with, the terms of the Master Agreement.  The Debtors do not provide any evidence to dispute the amounts asserted by Brigade in the Proofs of Claim.

17.    The Debtors do not even address the terms of the Master Agreement in their Objection.  Instead, the Objection discusses only the general process – unrelated to the terms of the Master Agreement – that resulted in their conclusion that the Proofs of Claim should be disallowed.  The Debtors do not provide a single calculation or a single document in support of their position – just their bare conclusion that the amounts in the Proofs of Claim should be reduced.[3]  Neither the Debtors' general process nor their conclusion is supported by the Master Agreement.  In fact, the Debtors' process and conclusion are wholly inconsistent with the terms of the Master Agreement.

---

[3]    "[F]or a more comprehensive discussion of the valuation process," the Debtors refer in footnote 2 of their Objection to the Declaration of Gary H. Mandelblatt in Support of Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form.  However, that declaration does not provide any information that is specific to Brigade.

## The Debtors Misstate the Burden of Proof

18.     The Debtors not only ignore the terms of the Master Agreement that govern the calculation of the amounts in the Proofs of Claim but, even according to their own cited case law, they misstate the applicable burden of proof.  The Debtors argue that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim."  Objection at ¶ 12 *citing In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Comms Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

19.     To the contrary, "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the *objector* bears the initial burden of persuasion." *Oneida*, 400 B.R. at 389 (emphasis added).  The burden would only shift to Brigade if the Debtors had produced "evidence in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.*  In other words, to shift the burden of proof to Brigade, the Debtors must first produce sufficient evidence to overcome the "prima facie validity" of the Proofs of Claim.  *Adelphia*, 2007 Bankr. LEXIS 660 at *15-16; *Rockefeller*, 272 B.R. at 539.

20.     The Debtors have not produced information sufficient to shift the burden of proof to Brigade; indeed, the Debtors have not produced any information at all.  The Objection does not provide any data, numerical or otherwise, in support of how the Debtors' determination that Brigade's Proofs of Claim should be disallowed was reached and does not even refer to the Master Agreement, which defines the obligations of the parties and which governs the calculation of the amounts set forth in the Proofs of Claim.  The Objection merely describes a general process that was purportedly used to reach the Debtors' determination.  This

general process has no basis in, and is in fact inconsistent with, the express terms of the Master

Agreement.  The Debtors' Objection should be denied.

## Conclusion

WHEREFORE, for the foregoing reasons, Brigade respectfully requests that this

Court deny the Debtors' Objection, allow the Proofs of Claim, and grant Brigade such other,

further, and different relief as this Court deems just and proper.


New York, New York
May 24, 2012

SEWARD & KISSEL LLP


By:    /s/  John R. Ashmead
       John R. Ashmead (JA-4756)
       Jack Yoskowitz (JY-3935)

       One Battery Park Plaza
       New York, New York 10004

       Telephone:  (212) 574-1200
       Facsimile:   (212) 480-8421

*Attorneys for Brigade Leveraged
Capital Structures Fund, Ltd.*

SK 25586 0003 1292236