```
                                                           Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 08-13555-jmp

 4   Adv. Case No. 08-01420-jmp

 5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 6   In re

 7   LEHMAN BROTHERS HOLDINGS INC., et al.,

 8              Debtors.

 9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   In re

11              v.

12   LEHMAN BROTHERS INC.,

13              Defendant.

14   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15                  U.S. Bankruptcy Court

16                  One Bowling Green

17                  New York, New York

18

19                  May 16, 2012

20                  10:02 AM

21

22   B E F O R E :

23   HON JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25
```

1    Hearing re:  Motion of Edward J. Agostini, et al. for Relief

2    from the Automatic Stay [ECF No. 24769]

3

4    Hearing re:  Williams-Pate v. Lehman Brothers Holdings Inc.

5    [Adversary Proceeding No. 12-01220]

6

7    Hearing re:  Motion of Fidelity National Title Insurance

8    Company to Compel Compliance with Requirements of Title

9    Insurance Policies [ECF No. 11513]

10

11   Hearing re:  Motion of Monti Family Holding Company, Ltd.

12   for Leave to Conduct rule 2004 Discovery of Debtor Lehman

13   Brothers Holdings, Inc. and Other Entities [ECF No. 16803]

14

15   Hearing re:  Amended Motion of Ironbridge Homes, LLC, et al.

16   for Relief from the Automatic Stay [ECF No. 23551]

17

18   Hearing re:  Motion of Grace Farrelly Pursuant to §§ 105 and

19   362 for Relief from Automatic Stay [ECF No. 25205]

20

21   Hearing re:  Motion of Giants Stadium LLC for Leave to

22   Conduct Discovery of the Debtors Pursuant to Federal Rule of

23   Bankruptcy Procedures 2004 [ECF No. 16016]

24

25   Hearing re:  Bank of Montreal's Responses and Objections to

1  Subpoena of Debtors and Debtors in Possession Pursuant to

2  Rules 2004 and 9016 of the Federal Rules of Bankruptcy

3  Procedure [ECF No. 24847]

4

5  Hearing re:  Cardinal Investment Sub I, L.P. and Oak Hill

6  Strategic Partners, L.P.'s Motion for Limited Intervention

7  in the Contested Matter Concerning the Trustee's

8  Determination of Certain Claims of Lehman Brothers Holdings

9  Inc. and Certain of Its Affiliates [LBI ECF No. 4634]

10

11 Hearing re:  Motion of Clear Vue Opportunity XVIII, LLC for

12 Relief from the Automatic Stay [ECF No. 27287]

13

14

15

16

17

18

19

20

21

22

23

24

25 Transcribed by:  Louise Zontek

1  A P P E A R A N C E S :
2  WEIL, GOTSHAL & MANGES LLP
3      Attorney for Lehman Brothers Holdings Inc. and
4      Related Debtors
5      767 Fifth Avenue
6      New York, NY 10153-0119
7
8  BY:  JACQUELINE MARCUS, ESQ.
9
10 REITLER KAILAS & ROSENBLATT LLC
11     Attorney for the Agostinis - Creditors
12     885 Third Avenue
13     New York, NY 10022-4834
14
15 BY: CRAIG J. ALBERT, SQ.
16
17
18
19
20
21
22
23
24
25

1                P R O C E E D I N G S

2              THE COURT:  Be seated.  Well, considering this is

3    a Lehman omnibus day and there's a handful of people here it

4    suggests the case has progressed to a new -- a new stage of

5    relative peace.

6              MS. MARCUS:  Good morning Your Honor, Jacqueline

7    Marcus of Weil, Gotshal & Manges for the Lehman debtors.

8              We're here, Your Honor, for a very brief agenda.

9    As you've noted, we only have one matter on the agenda, it

10   is a contested matter, the motion of Edward J. Agostini for

11   relief from the automatic stay, and Mr. Albert is here on

12   behalf of the movant.

13             THE COURT:  Okay.

14             MR. ALBERT:  Thank you, Your Honor, good morning.

15   I'm Craig Albert of Reitler, Kailas and Rosenblatt for the

16   Agostini parties.

17             Your Honor, the Agostini parties were party to a

18   forward derivative contract with Lehman OTC Derivatives,  as

19   known in these proceedings LOTC.  And having had their

20   claims -- having had their claims adjourned CINA D (ph) and

21   having had no response from Lehman with respect to how its

22   collateral -- their collateral -- was going to be returned

23   to them, they made this -- we need this motion in order to

24   require the turnover of 50,000 shares that the Agostini

25   parties own that is --

1        THE COURT:  But you can't do that by motion.

2        MR. ALBERT:  Well, we did -- what we did was we

3   moved for relief from the automatic stay, and Your Honor,

4   the initial --

5        THE COURT:  I can't grant you (indiscernible -

6   00:01:50) relief with respect to your turnover claim.

7        MR. ALBERT:  Yes, and I will recognize, Your

8   Honor, that we need first relief from the automatic stay in

9   order to proceed.

10       THE COURT:  But isn't this a futile activity?

11  Because as I read the papers filed in opposition, even if

12  you were to have stay relief, and even if you were to

13  commence the litigation, the defense would be, sorry, we

14  don't have the property in question.  It's at LBI.

15       MR. ALBERT:  Your Honor, the first time that LOTC

16  revealed in any filing that these securities were not in his

17  possession, or in its opposition papers that were filed last

18  week.  That is when --

19       THE COURT:  Okay.  Well, now that you know it why

20  are we here?

21       MR. ALBERT:  Well, because -- because the -- there

22  are two different -- there are two different things that can

23  happen here.

24       First of all, we can obviously make the motion for

25  relief and seek the -- and seek the same relief as against

1  the SIPA trustee, but we would contend that even with
2  respect to this property, it being conceded by LOTC, that
3  this is non-estate property, both the shares and the
4  accumulated dividends on the shares.
5         The fact that they are sitting in a LOTC
6  controlled account with LBI in the SIPA proceedings does not
7  divest those shares of their quality of being both non-
8  estate property, either in this proceeding or in the SIPA
9  proceeding, and certainly not the property of LOTC.
10         But what LOTC revealed it its opposition papers
11  last week was that it had filed its own claim in the SIPA
12  proceeding claiming that these shares -- and presumably the
13  dividends thereon -- were its property, and the purpose and
14  effect of that -- of that -- that arrangement is to attempt
15  to convert the Agostini's claim to return of their shares
16  into -- from what it actually is, which is their entitlement
17  to the 50,000 shares plus the dividends thereon, which --
18         THE COURT:  Have the Agostini's made a claim in
19  the LBI case for this property?
20         MR. ALBERT:  Not at all.  The Agostini's are
21  strangers to LBI.  The Agostini's do not have an -- do not
22  have an account with LBI.  And the proof of that is in the
23  fact that LOTC made the -- made the filing with respect to
24  that claim.
25         THE COURT:  Well, that doesn't really prove very

1  much in my experience, because the way this case has shown
2  itself to me is that multiple parties will make claims for
3  the same property, and in the LBI case in particular, there
4  are very significant issues before the Court, and then get
5  resolved, concerning claims by Lehman affiliates against LBI
6  for customer status or for the recovery of property.
7  Sometimes such claims being brought on behalf of customers,
8  sometimes such claims being brought as proprietary claims.
9           So the conclusory statements that you're making do
10 not necessarily prove anything.
11          MR. ALBERT:  Okay.  But what is -- what is true,
12 Your Honor, is that until the opposition papers were filed
13 last week the Agostini parties had no idea that their
14 securities were deposited in any way with LBI, so they would
15 not have had a basis on which to file a claim against LBI.
16 To file the claim against LOTC, of course they did that, and
17 there's been no hearing on that claim, and that's been
18 adjourned CINA D.  To file a claim against LBHI, certainly,
19 they were guarantor, but against LBI, no.
20          But the point that the Court has raised with
21 respect to customer claims versus proprietary Lehman claims
22 I believe is an important one, because the -- because in the
23 SIPA proceeding the Lehman parties purport to be entering
24 into -- and in fact have announced -- that they have some
25 sort of settlement in principle with the SIPA trustee --

1  with the SIPA trustee with respect to all of the Chapter 11
2  debtors.  But not for want of trying I have had no
3  revelation as to how they intend to deal with the issue of
4  the Agostini's owned claims.
5        Now, the purpose of the ultimate resolution were
6  the property rights and the non-estate character of these
7  shares to be respected, whether in the LOTC proceeding or in
8  the SIPA proceeding would be this, that the 50,000 shares
9  plus the accumulated dividends in the SIPA proceeding as
10 non-estate property, and which are not -- which are not
11 being used in -- in that proceeding -- I'm sorry, in that
12 estate -- would be turned over to the Agostinis, and then
13 LOTC, which is the Agostini's part -- the Agostini's
14 counter-party on the forward derivative contracts, LOTC
15 would have a claim against the Agostini parties for a return
16 of either certain of those shares, approximately 46,500 of
17 them, less the value of the dividends, or would have a claim
18 for the value of those shares, or we would engage in a
19 simple negotiation as to what the closeout of the forward
20 derivative contract amount should be.
21       And that is what -- that is simply what would
22 happen, because as Lehman -- as LOTC concedes on this
23 motion, this property, these shares, are not part of the
24 estate.  It is collateral that we pledged, and then in May
25 of 2011, once the time for performance came due, it was to

Page 10

1  be returned to us.
2             And so as a rather simple matter, if anyone were
3  to create -- to have to -- have to commence an adversary
4  proceeding here, the person who would have to commence an
5  adversary proceeding would be Lehman against the Agostinis
6  in order for them to receive their portion back of the
7  50,000 shares that they were owed on the forward contract.
8             THE COURT:  I hear what you said, but it's not
9  making sense to me, and I'll tell you why.
10            MR. ALBERT:  Okay.
11            THE COURT:  This is not a shell game, but it could
12  be compared to that in this respect.
13            My understanding is that under this forward
14  contract arrangement, and there doesn't seem to be much
15  dispute that such a contract existed, the shares in question
16  are not currently held by the party you are now seeking to
17  sue.  So they argue in response, you're not entitled to stay
18  relief because there is no property of the estate as to
19  which the stay applies.
20            So even if you were to get stay of relief, that
21  wouldn't do anything for you in terms of pursuing the
22  adversary proceeding that you first started with as opposed
23  to the one that you ended with, because if you ended with an
24  adversary proceeding in which somehow you're holding the
25  shares and they're trying to get the shares back from you.

1    Apparently the fact of the matter is -- and I
2 don't have evidence to guide me on this, I'm simply take the
3 debtors' papers at face value -- the shares in question
4 reside at LBI.  If that's where the shares are we're wasting
5 our time today and you probably would be wasting your time
6 in commencing litigation within the Chapter 11 case.
7    Now, I have the advantage of being the presiding
8 judge in both cases, and as a result, I have information
9 concerning both cases.  Much of it is publicly available
10 information; however, a lot resides between my ears, and for
11 that reason I am aware that there is currently going on a
12 major allocations dispute in the LBI case concerning the
13 making of an interim distribution to customers.
14    In the context of public hearings that have taking
15 place in this courtroom with respect to the allocation
16 motion, which is contested, I have learned that there are
17 significant problems in dealing with the property of the LBI
18 estate for the benefit of LBI's customers, including LBI's
19 affiliates.
20    So, you are not alone in being an indirectly,
21 adversely affected party to the delay associated with the
22 return of customer property and the making of interim
23 distributions arising out of the LBI SIPA case.
24    I understand what you're saying, that your client
25 did not have, based upon your representations, direct

1  privity with LBI or an LBI customer account, but how does
2  that change the facts as to where the property actually
3  resides?
4            MR. ALBERT:  It doesn't change where the property
5  resides, Your Honor, but it certainly -- it certainly does
6  -- it also does not change the fact that LOTC has -- LOTC is
7  -- claims to be, and in fact as -- as between -- as its
8  relation -- in its capacity as an internal customer of LBI
9  is in possession or constructive possession of the Agostini
10 shares in that LBI account.  And to that extent, they are --
11 I do not believe that they are free to deal with that
12 property as though it were their own.
13           If the procedural problem here is that we've now
14 -- it's now been revealed to us that the shares that
15 everyone agrees is non-estate property have been sitting in
16 an account at LBI and that the Agostinis have an interest in
17 that property, then I would agree fully that the -- that the
18 proper procedure now is to make a similar motion in the SIPA
19 case and ask for a turnover -- turnover of that and perhaps
20 to ask for interim relief as well, that is in the way of a
21 stay, to forbid them -- to forbid LOTC and LBI from
22 disposing of those 50,000 shares and the -- and the
23 dividends thereon as part of a global settlement or it could
24 be taken care of in the form of an objection to any motion
25 to approve the settlement.  I concede that readily.

1            THE COURT:  Okay.  Well, I can't tell you how to

2   proceed at this point, but I suspect if you were to bring a

3   motion in the SIPA case you'll be potentially met with the

4   argument that you lack customer standing, because you've

5   already told me that from the perspective of the Agostinis

6   they didn't deal with LBI and they didn't have an LBI

7   account.

8            So, not to use a play on words, you might have a

9   derivative claim with respect to Lehman Brothers' OTC

10  derivatives claim in the LBI case, but -- and I don't mean

11  to suggest that there are other ways to do this -- it seems

12  to me that for purposes of today's motion practice we have

13  something of an impossibility problem in that the debtors

14  have defended your motion on the basis that we don't have

15  property in the estate in question and so stay relief is not

16  appropriate.

17           But more to the point, even if we were to grant

18  you stay relief and you were to proceed with litigation

19  here, that litigation -- assuming the facts pled are true --

20  would be futile.  So that wouldn't be a particularly good

21  use of either your time or my time.

22           So, it seems to me that the better way for parties

23  to spend their time -- and I can't imagine that this hasn't

24  already happened to some extent -- would be to talk about

25  ways to deal with this as a business proposition such that

1    the Agostini's claims could be recognized and respected,

2    assuming Lehman Brothers' OTC Derivatives were prepared to

3    do that.

4         MR. ALBERT:  We have made that effort.

5         THE COURT:  And instead of litigating, once the

6    property in question is released -- assuming it's actually

7    there -- the parties can then close out this trade.

8         MR. ALBERT:  The -- the discussion -- there have

9    not been fruitful discussions on the question, but with Your

10   Honor's admonition I would hope that the Agostinis, the

11   Lehman parties, and the SIPA trustee could, in fact, have

12   that discussion.

13        THE COURT:  Well, let's find out if that's

14   realistic.  And I don't -- I've been characterizing the

15   Lehman position, but we haven't heard the Lehman position.

16   So let's find out what Lehman thinks about all this.

17        MR. ALBERT:  Thank you, Your Honor.

18        MS. MARCUS:  Thank you, Your Honor.  Jacqueline

19   Marcus again on behalf of Lehman.

20        I won't do the presentation that I had planned,

21   because I think Your Honor touched on most of the issues

22   that I was going to address, but I did want to address some

23   of the issues that both Your Honor raised, and Mr. Albert

24   raised.

25        First the concept that the shares are sitting in

1  LOTC controlled account -- I think those were the words that

2  Mr. Albert used -- and this idea of constructive possession.

3  As Your Honor is well aware, LOTC has no control over

4  anything that LBI is doing at the moment, and while we'd

5  love to get the shares out of that account, we don't have

6  the ability to do that.

7        So in terms of if there is a concept of

8  constructive possession that might apply it doesn't apply

9  here, because we have neither custody nor control of that

10 account.

11       Second, with respect to whether this is estate

12 property or not estate property, we do concede that there is

13 a substantial portion of the shares that do belong to the

14 Agostini trust, if we get them back.  There's a question as

15 to valuation, because with forward contract worked there was

16 an allocation depending on the value of the shares.

17       So the exact numbers, there may be a dispute on as

18 to the numbers that are cited in the Agostini motion, and

19 that is an area where I think we are prepared to negotiate

20 in terms of what the appropriate allocation of those shares

21 should be.  I don't think there's really any room for us to

22 negotiate on actually turning over the shares, because as

23 Your Honor noted, we don't have them.

24       Third, the concept that by filing the customer

25 claim in the LBI case LOTC was attempting to convert or

1  assert that it owns the shares over the claims of the
2  Agostini I think is, I'll call it an exaggeration.  We
3  believe we did the right thing in protecting the Agostinis
4  as well as LOTC in asserting that claim, because had we not
5  asserted the claim we wouldn't be able to get the shares
6  back.
7           So we were asserting that claim on behalf of both
8  ourselves and the Agostinis in order to get those shares
9  back, and this is not an attempt to do an end run or somehow
10 convert property that doesn't belong to LOTC.
11          THE COURT:  Can I just -- can I just ask for a
12 clarification?
13          The claim that LOTC has asserted in the LBI estate
14 I assume is not simply in relation to any rights of the
15 Agostinis in connection with this trade, but in connection
16 with a variety of other trades between LOTC and
17 counterparties that might have an interest in shares, or is
18 this in fact the only -- the only aspect of the LOTC claim
19 in the Libby (ph) case?
20          MS. MARCUS:  I think it's the only -- and I
21 apologize, I'm not that familiar with the claims -- I
22 believe that there were multiple claims filed, and I don't
23 know if LOTC has more than one, but I believe as to UPS
24 Class D shares this is the only claimant.
25          THE COURT:  Okay.  So to the extent that there was

Page 17

1  a claim made in the name of LOTC as customer in the LBI

2  case, in relation to these particular shares, that claim was

3  made for the Agostini's benefit and for the benefit of LOTC

4  to the extent that there was any residual value in the trade

5  for LOTC to retain.

6          MS. MARCUS:  That's correct.

7          THE COURT:  Did I get that correctly?

8          MS. MARCUS:  Yes, exactly.

9          THE COURT:  Okay.

10         MS. MARCUS:  I ask finally, Your Honor, to the

11 point about the Agostini parties not knowing until the

12 objection was filed last week that the shares were in the

13 LBI account.  After the motion was filed we did contact

14 counsel for the Agostinis and we told them that the shares

15 were in the account, and we also provided them with account

16 statements showing that the shares were in the account.

17         So perhaps we could have avoided today's hearing,

18 but it didn't turn out that way.

19         I think that's all I have, Your Honor.  We can get

20 into the standards for relief from the automatic stay, but

21 as Your Honor pointed out, if they got relief from the

22 automatic stay today it would be a futile effort, so I don't

23 think it's worth going through those argument.

24         THE COURT:  I don't think we need to go into the

25 Sonnax standards for this.

1           But we have a practical problem here.  I mean
2  there are multiple ways I could dispose of this motion.  It
3  may be that the best way would be for the motion to be
4  withdrawn without prejudice frankly, if counsel for the
5  Agostinis were prepared to do that, because I think its
6  probably already fulfilled its principal purpose, which is
7  to gain what amounts to some discovery concerning the actual
8  position of LOTC with respect to the shares and to initiate
9  a dialogue, hopefully one of them will be reasonably
10 productive, about settling the then amounts due in a
11 connection with the forward contract, and I don't know to
12 what extent counsel for the LBI trustee would need to be
13 involved in these conversations, but some informal dialogue
14 probably is the best way to go here.
15           So, I could either deny the motion without
16 prejudice or it could be withdrawn without prejudice, but I
17 am certainly loathe to grant it at this point, given the
18 circumstances that have been alleged.  Because all that
19 would do would be to prompt unproductive litigation.
20           MR. ALBERT:  Thank you, Your Honor.  With that in
21 mind, Craig Albert for the Agostinis, I would like to
22 withdraw my motion with prejudice and hopefully be able to
23 engage --
24           THE COURT:  With or without prejudice?
25           MR. ALBERT:  I'm sorry, without prejudice, I

1    apologize.

2              THE COURT:  I figured without prejudice is what
3    you meant.

4              MR. ALBERT:  Yes, without prejudice.  And I would
5    -- hopefully I will be able to engage in a dialogue with the
6    representatives of LOTC and the LBI trustee.

7              THE COURT:  Okay, that's fine.

8              MR. ALBERT:  Thank you, Your Honor.

9              THE COURT:  And that's the end of the morning
10   calendar, correct?

11             MS. MARCUS:  That is, Your Honor.

12             THE COURT:  Okay.  We'll be back at 2 o'clock.

13             MS. MARCUS:  Thank you.

14             THE COURT:  Thank you.

15         (Whereupon these proceedings were concluded at 10:26

16                            AM)

1        C E R T I F I C A T I O N

2

3    I, Louise Zontek, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    *Louise Zontek*

Digitally signed by Louise Zontek
DN: cn=Louise Zontek, o=Veritext,
ou, email=digital@veritext.com, c=US
Date: 2012.05.17 16:38:05 -04'00'

7

8    Louise Zontek

9    Veritext

10   200 Old Country Road

11   Suite 580

12   Mineola, NY   11501

13

14

15   Date:  May 17, 2012

16

17

18

19

20

21

22

23

24

25