**Hearing Date and Time: May 31, 2012 at 10:00 a.m. (Eastern Time)**
**Response Deadline: May 17, 2012 at 4:00 p.m. (Eastern Time)**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Evan C. Hollander
Richard A. Graham

Attorneys for Acumen Fund, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                :
In re                                                           :      **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* :      **08-13555 (JMP)**
                                                                :
                                        Debtors.                :      **(Jointly Administered)**
-----------------------------------------------------------------x

**RESPONSE TO PLAN ADMINISTRATOR'S TWO HUNDRED NINETY-THIRD**
**OMNIBUS OBJECTION TO**
**CLAIMS (NO LIABILITY CLAIMS) [Docket 27384]**

Acumen Fund, Inc. ("Acumen Fund" or the "Claimant"), by and through its undersigned

counsel, hereby submits this response (the "Response") to the Plan Administrator's Two

Hundred Ninety-Third Omnibus Objection to Claims (No Liability Claims) (the "Objection")

[Docket 27384] in respect of Claim Nos. 18706-18720, 18760 and 18762-18764 (the "Disputed

Claims") and states as follows:

<u>**Facts**</u>

1.      Acumen Fund is a global non-profit venture capital fund, exempt from tax under

Section 501(c)(3) of the Internal Revenue Code, that uses entrepreneurial approaches to solve the

problems of global poverty. It raises philanthropic capital to make debt and equity investments

in enterprises that provide critical goods and services—such as healthcare, clean water, renewable energy, housing and agricultural inputs—at affordable prices to the poor. Acumen Fund currently has approximately $62.1 million in approved and active investments in 49 enterprises providing critical goods and services in India, Pakistan and West and East Africa.

2.    Similar to many venture capital funds, Acumen Fund has a disciplined investment process which includes, among other things, conducting a due diligence review on each investment and assessing the risks associated with the enterprise, from financing, market, execution, management and legal perspectives.  All investments must be approved by Acumen Fund's Investment Committee prior to disbursing funds.  In addition, prospective investments are evaluated based on a variety of investment criteria, including:

a.    the potential for the enterprise to have a significant social impact;
b.    the potential for the enterprise to become scalable as well as financially sustainable and positioned to take additional capital; and
c.    the potential for the enterprise to create breakthrough insights in the form of new business models and new approaches to fighting poverty.

Post-investment, Acumen Fund's portfolio companies provide Acumen with updates which generally include financial information as well as agreed upon social metrics.  Acumen evaluates its investments on an individual level and in aggregate and tracks the social, financial and operation data of its investments.  Any financial returns generated from Acumen Fund's investments are reinvested into new or existing investments in its portfolio.

3.    Acumen Fund has a similarly disciplined process of fundraising and relies heavily on the funding commitments of a few substantial financial donors, including business enterprises such as that of the Debtors, to raise the capital necessary to make its investments in enterprises serving the poor and to finance its operations.

4.      The Disputed Claims arise from such a funding commitment memorialized in a letter of agreement, executed "for Lehman Brothers" on November 2, 2007 and for Acumen Fund on November 1, 2007 (the "Grant Agreement"), whereby Lehman Brothers promised to pay the Claimant an aggregate grant of $5,000,000 over a five year period subject to certain terms and conditions set forth therein (the "Commitment").  The Grant Agreement generally contemplates payments of $1,000,000 for each grant year:  $250,000 for unrestricted general operating expenses ("Operating Funds") and $750,000 to fund investments made by the Claimant meeting the terms and conditions set forth in the Grant Agreement ("Investment Funds").  Any unused portions of the available Investment Funds portion of the Commitment for a given grant year could, subject to certain limitations, be rolled over into subsequent grant years. Grant Agreement ¶ 3.B.f.

5.      In exchange for their funding support, "Lehman Brothers" would receive various forms of recognition at the $5 million, "Acumen Fund Steward level."  Grant Agreement ¶¶ 6-11.

6.      Pursuant to the Grant Agreement, in grant year one the Claimant received $750,000:  (i) $250,000 in Operating Funds in December 2007 and (ii) $500,000 in April 2008 for a qualifying investment made by Acumen Fund in an Indian hospital chain serving the poor.

7.      Relying on the remaining Investment Funds portion of the Commitment from grant year one, on September 9, 2008, Acumen Fund made an equity investment of $215,950 in SBA Hydro and Renewable Energy Pvt. Ltd. (the "SHREY Investment"), an Indian company providing micro-hydroelectric power to underserved Indian villages.  See generally Grant Agreement ¶ 3.B.a. ("LB funds will only be used to support Investments made primarily in India . . . .").

8.      On September 10, 2008, Acumen Fund made a request pursuant to the Grant Agreement meeting the conditions for payment of $216,000 (the "Draw Down Request") to cover the cost of the SHREY Investment.  To date, Acumen Fund has not received payment in respect of the Draw Down Request.

9.      In addition, Acumen Fund prepared its annual operating budget for 2009, incurring expenses and obligations in connection therewith, in reliance on the Operating Funds portion of the Commitment.  To date, Acumen Fund has not received the $250,000 in Operating Funds for grant year two (or subsequent grant years) for which the Grant Agreement provides (such budgeted Operating Funds, together with $215,950 of the Draw Down Request, the "Claim").

10.      On September 15, 2008 and thereafter, the Debtors, each of which is a member of the Lehman Brothers family of companies, filed voluntary petitions under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

11.      On September 18, 2009, the Claimant filed timely proofs of claim in respect of the Disputed Claims together with a proof of claim against Lehman Brothers Holdings, Inc. ("LBHI," and the proof of claim filed in the LBHI case (assigned Claim No. 18555), the "LBHI Claim"), each based on the Claim (together, the "Proofs of Claim")).[1]  Each of the Proofs of Claim was accompanied by, among other things, a copy of the Grant Agreement, an Officer's Certificate evidencing the SHREY Investment, and the Draw Down Request.

12.      On April 16, 2012, the Plan Administrator filed the Objection, seeking to disallow and expunge the No Liability Claims (as defined therein and including the Disputed Claims).

---

[1]  By way of example, one of the Proofs of Claim (which are substantially similar to one another), together with the Exhibits thereto, is attached for ease of reference as Exhibit A.

The Objection summarily states that the No Liability Claims "are asserted against Chapter 11 Estates that are not liable on any grounds for such claims."  Objection ¶ 9.  The Objection does not, however, address the Grant Agreement or any of the related documents or other information that accompanied the Disputed Claims.  Reference to specific facts about the Claim is entirely absent, as are any arguments to refute the merits of the Disputed Claims.

## Argument

13.     A proof of claim is deemed allowed unless a party in interest objects to it.  11 U.S.C. § 501.  In this instance, the Plan Administrator has filed a blanket objection to the No Liability Claims on the basis that the relevant Chapter 11 Estates (as defined in the Objection) are "not liable on any grounds" for the claims.  Objection ¶¶ 8-9 (citing 11 U.S.C. § 502(b)(1)).  When such an objection is interposed,

> the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

## The Objection to the Disputed Claims is Based on a False Premise

14.     The Objection is premised on the assertion that the No Liability Claims "do not set forth any justifications for asserting a claim against the Chapter 11 Estates identified on the [Disputed Claims]."  Objection ¶ 9.

15.     This assertion is false as to the Disputed Claims, each of which makes clear in its first sentence that the Claim asserted is based on "the Debtor's obligations under the Grant Agreement."  Proofs of Claim ¶ 1.  The Grant Agreement states that it is "between Acumen Fund, Inc." and "Lehman Brothers."  Grant Agreement, p. 1.  The Disputed Claims each explain

that the "Proofs of claim based on the Claim are being filed against this Debtor as well as other Lehman Brothers' debtors in the jointly administered chapter 11 cases" and that the Claimant seeks only a single satisfaction of a single Claim for which such Debtors are jointly and severally liable.  Proofs of Claim ¶ 15 (emphasis supplied).

16.    Under New York law,[2] parties to a contract may bind themselves jointly and severally when they enter into a contract to perform the same act.  Mfrs. & Traders Trust Co. v. Lindauer, 513 N.Y.S.2d 629, 632 (N.Y. Sup. Ct. 1987) (recognizing ability of husband and wife to become jointly and severally liable for each other's debts on a joint credit card account). Further, as a general rule, an obligation entered into by more than one person is presumed to be joint.  Alexander v. Wheeler, 64 A.D.2d 837, 837 (N.Y. App. Div. 4th Dept. 1978).

17.    LBHI and its affiliates, including the Debtors at issue here, normally "presented [themselves] as 'Lehman Brothers,' a single integrated enterprise.  See Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, p. 65 (citing such presentation as a fact that would support substantive consolidation).  In this instance, they did so contractually by executing the Grant Agreement "for Lehman Brothers."  Grant Agreement, p. 5. Thus, the Plan Administrator's statement that No Liability Claims "do not set forth any justifications for asserting a claim against the Chapter 11 Estates identified" has no merit as to the Disputed Claims, and the Plan Administrator's Objection in respect thereof cannot reasonably be sustained.

---

[2]  The Grant Agreement is governed by New York law.  Grant Agreement at ¶ 14.

<u>The Objection Fails for Lack of Evidence</u>

18.     Even if the Objection had addressed the merits of Claim, it would have needed to have been accompanied by evidence sufficient to rebut the evidence attached to the Proofs of Claim.

19.     A properly filed proof of claim establishes prima facie evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f).

20.     The objecting party has the burden of presenting sufficient evidence to overcome the prima facie validity of a properly filed claim.  <u>In re Adelphia Commc's Corp.</u>, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); <u>see also</u> <u>In re Greene</u>, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) (stating that the prima facie validity of a properly filed claim "compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's <u>prima facie</u> case.").  Sufficient evidence is "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  <u>In re Oneida Ltd.</u>, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173-74 (3d Cir. 1992)); <u>In re Spiegel, Inc.</u>, Case Nos. 03-11540 (BRL), 06-cv-13447 (CM), 2007 WL 2456626, at *15 n.6 (S.D.N.Y. Aug. 22, 2007) (evidence must refute at least one allegation essential to the claim's legal sufficiency); <u>In re DJK Residential LLC</u>, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be equal in force to the prima facie case).  "Mere objections," without more, do not constitute sufficient evidence and are insufficient to refute the prima facie validity of a properly filed claim.  <u>In re Make Meat Corp</u>, Case No. 98-cv-4990 (HB), 1999 WL 178788, at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear.  To prevail, the objector must affirmatively <u>produce</u> evidence to counter the creditor's claim.").

21.     In this case, the Plan Administrator failed to provide any evidence to rebut the prima facie validity of the Disputed Claims.  For this reason as well, the Court should overrule the Objection as to the Disputed Claims.

<u>The Disputed Claims Should be Allowed in Full</u>

22.     In the Objection, the Plan Administrator "reserves all rights to object on any basis to any No Liability Claim as to which the Court does not grant the relief" it requests in the Objection.  Objection ¶ 3.  The Claimant respectfully submits that no such rights exist and that the Court's duty under section 502, once an objection to a claim has been interposed and noticed, is to simply hear the objection and allow the claim except to the extent it finds the objection meritorious under one of the enumerated grounds for objection set forth in subjection (b) of that statute.  11 U.S.C. § 502(b).  As noted above, the Objection fails to articulate any legitimate reason why the Disputed Claims are not enforceable against the Debtors against which they were asserted.  They should therefore be allowed without further delay in the full amount set forth in the Proofs of Claim so that this matter can be finally put to rest.

**<u>Reservation of Rights</u>**

23.     The Claimant reserves its right to file a supplemental and/or amended response to the Objection should it deem it necessary to do so.

**<u>Conclusion</u>**

WHEREFORE, the Claimant respectfully requests that the Court overrule the Objection

as it pertains to the Disputed Claims, enter an order allowing each of the Disputed Claims in the amount set forth in the Proofs of Claim, and such further relief as the Court deems appropriate and just.

Dated:  May 25, 2012
      New York, New York

                                     /s/ Evan C. Hollander
                                     Evan C. Hollander

                                     WHITE & CASE LLP
                                     1155 Avenue of the Americas
                                     New York, New York 10036
                                     Telephone: (212) 819-8200
                                     Facsimile: (212) 354-8113

                                     Attorneys for Acumen Fund, Inc.