**EXHIBIT A**

NEWYORK 8499346 (2K)

**United States Bankruptcy Court/Southern District of New York**

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Lehman Brothers OTC Derivatives Inc. | 08-13893 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 1000173608

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000018716

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Program Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000173608******
ACUMEN FUND INC.
76 NINTH AVENUE
SUITE 315
NEW YORK, NY 10011
Attn: Ann MacDougall, Chief Management Officer

Telephone number: **(646) 747 - 3694**    Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Acumen Fund, Inc.
76 Ninth Avenue, Suite 315, Attn: Anand Attavane, Dir. of Finance
New York, NY 10011

Telephone number: (646) 747-3685    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.** Amount of Claim as of Date Case Filed: $ not less than $465,950

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.** Basis for Claim: See Annex A
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.** Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other

Describe: _____

Value of Property: $ _____  Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____  Basis for perfection: _____

Amount of Secured Claim: $ _____  Amount Unsecured: $ _____

**6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ 0
(See instruction #6 on reverse side.)

**7.** Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.** Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

| Date: 9/17/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ See Annex A

FOR COURT USE ONLY

**FILED / RECEIVED**

SEP 18 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is typed on the signature line of a Proof of Claim form filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## ___DEFINITIONS___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Lehman Brothers Holdings Claims Processing**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A document should redact and out only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (luxemburg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## ___INFORMATION___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

**LEHMAN BROTHERS OTC**
**DERIVATIVES INC.,**

                                        Debtor.

---

Chapter 11 Case No.

08-13893 (JMP)

---

## ANNEX A TO PROOF OF CLAIM OF
## ACUMEN FUND, INC.

1.    **Claimant**.  Acumen Fund, Inc. (the "Claimant" or "Acumen Fund"), a New York

not-for-profit corporation, is filing this proof of claim against Lehman Brothers OTC Derivatives

Inc. (the "Debtor") as holder of a claim against the Debtor arising from the Debtor's obligations

under the Grant Agreement (as defined below).

2.    Acumen Fund is a global non-profit venture capital fund exempt from tax under

Section 501(c) (3) of the Internal Revenue Code that uses entrepreneurial approaches to solve the

problems of global poverty. Acumen Fund raises philanthropic capital to make debt and equity

investments in enterprises that provide critical goods and services—such as healthcare, clean

water, renewable energy, housing and agricultural inputs—at affordable prices to the poor.

Acumen Fund currently has approximately $35 million in approved and active investments in 35

enterprises providing critical goods and services in India, Pakistan and East Africa.  Any

financial returns generated from Acumen Fund's investments are reinvested into new or existing

investments in its portfolio.

3.    Similar to many venture capital funds, Acumen Fund has a disciplined

investment process which includes, among other things, conducting a due diligence review on

each investment and assessing the risks associated with the enterprise, from financing, market, execution, management and legal perspectives. All investments must be approved by Acumen Fund's Investment Committee prior to disbursing funds. In addition, prospective investments are evaluated based on a variety of investment criteria, including:

a.      the potential for the enterprise to have a significant social impact;

b.      the potential for the enterprise to become scalable as well as financially
        sustainable and positioned to take additional capital; and

c.      the potential for the enterprise to create breakthrough insights in the form of new
        business models and new approaches to fighting poverty.

Post investment, Acumen Fund's portfolio companies provide Acumen with updates which generally include financial information as well as agreed upon social metrics. Acumen evaluates its investments on an individual level and in aggregate and tracks the social, financial and operation data of its investments.

        4.      Acumen Fund has a similarly disciplined process of fundraising and relies heavily on the funding commitments of a few substantial financial donors, such as the Debtor, in order to raise the capital necessary to make its investments in enterprises serving the poor and to finance its operations.  Since its founding in 2001, Acumen Fund has grown from one office in New York City to a global organization with offices in Hyderabad, India; Karachi, Pakistan; and Nairobi, Kenya. By 2012, Acumen Fund hopes to grow its investment portfolio to $100 million in investments.

        5.      **Debtor.**  The Debtor is a member of the Lehman Brothers' family of companies. On October 3, 2008, the Debtor filed a voluntary petition under chapter 11 of title 11 of the

United States Code in the United States Bankruptcy Court for the Southern District of New York.

6.    **Transaction Between the Claimant and Lehman Brothers.**  The Claimant and Lehman Brothers are each party to a Letter of Agreement, executed on November 2, 2007 (the "Grant Agreement") (**Exhibit A**), wherein Lehman Brothers promised to pay the Claimant up to $1,000,000 per year over a five year period, for an aggregate grant of $5,000,000.  Of the $1,000,000 provided for each grant year, $250,000 could be used by Claimant for unrestricted general operating expenses ("Operating Funds"), and the remaining $750,000 was to be used to fund investments made by Claimant meeting the terms and conditions set forth in the Grant Agreement ("Investment Funds").  Grant Agreement ¶ 3.  Subject to certain limitations, unused Investment Funds in a given grant year could be rolled over into subsequent grant years.  Grant Agreement ¶ 3.B.f.  The Claimant agreed to publicly announce Lehman Brothers as "the first Corporate Steward in Acumen Fund's Initial Capital Campaign" both at Acumen Fund's Investor Gathering and its Celebration Gala on November 13, 2007, and to continue to acknowledge and recognize Lehman Brothers as a contributor as a "Steward", which is a donor who has given $5,000,000 or more to Acumen Fund.  Grant Agreement ¶¶ 7-9.

7.    Pursuant to the Grant Agreement, in grant year one the Claimant received $750,000 in total from Lehman Brothers, of which (i) $250,000 was received in December 2007 for unrestricted general operating expenses and (ii) $500,000 was received in April 2008 for a qualifying investment made by Acumen Fund in an Indian hospital chain serving the poor.

8.    Relying on the Investment Funds remaining from grant year one, on September 9, 2008, Acumen Fund made an equity investment of $215,950 in SBA Hydro and Renewable Energy Pvt. Ltd. (the "SHREY Investment"), an Indian company providing micro-hydro electric

power to underserved Indian villages (see **Exhibit B**, Officer's Certificate of Claimant, the "Officer's Certificate"). Grant Agreement ¶ 3.B.a. ("LB funds will only be used to support Investments made primarily in India. . . .").

9.    On September 10, 2008, Acumen Fund made a request pursuant to the Grant Agreement meeting the conditions for payment of $216,000 (the "Draw Down Request") to cover the cost of the SHREY Investment (see **Exhibit C**). To date, Acumen Fund has not received payment in respect of the Draw Down Request.

10.    In addition, Acumen Fund prepared its annual budget for 2009 in partial reliance on the Grant Agreement funds from grant year two. To date, Acumen Fund has not received the $250,000 in Operating Funds as provided in the Grant Agreement for grant year two.

11.    On January 21, 2009, the Claimant received a letter from Francine S. Kittredge (the "Grant Termination Letter") (**Exhibit D**) informing the Claimant that, "the estate of Lehman Brothers cannot satisfy its outstanding commitment to Acumen Fund."

12.    **Claim.** The Claimant submits this proof of claim for $465,950 (the "Claim") for amounts due and owing to the Claimant pursuant to the Grant Agreement, consisting of the following:

a.    $215,950 to fund Acumen Fund's investment of $215,950 in the SHREY Investment made in reliance on Debtor's promise to advance qualifying Investment Funds in grant year one; and

b.    $250,000 of Operating Funds for grant year two.

13.    **Supporting Documents.** Copies of the Grant Agreement, the Officer's Certificate, the Draw Down Request, and the Grant Termination Letter are attached hereto as Exhibits A through D, respectively.

14.   **Judgments.**  No judgment has been rendered on the Claim.

15.   **Credit and Setoffs.**  Upon information and belief, the Claim is not subject to any setoffs, defenses or counterclaims by the Debtor or any of its affiliates.  Proofs of claim based on the Claim are being filed against this Debtor as well as other Lehman Brothers' debtors in the chapter 11 cases that are being jointly administered under lead case In re Lehman Brothers Holdings, Inc., Case No. 08-13555 (JMP), and a similar proof of claim was filed against Lehman Brothers Inc. in Securities Investor Protection Corporation v. Lehman Brothers Inc., Adv. Proc. No. 08-01420 (JMP).  The Claimant is seeking to enforce this Claim jointly and severally from all parties against which it has filed a proof of claim based on the information and belief that all such parties benefitted from the consideration provided by Claimant; the Claimant is only seeking to collect the amount set forth in paragraph 12 above and is not seeking to recover more than the total amount of the Claim by asserting multiple proofs of claim.

16.   **Priority Status.**  The Claim is filed as an unsecured claim without any prejudice to any and all rights of the Claimant to assert that any portion of the Claim is entitled to administrative priority under Sections 503 and 507 of the Bankruptcy Code.

17.   **Reservation of Rights.**  The execution and filing of this proof of claim is not and shall not be deemed:  (a) a waiver or release of the Claimant's rights against any other entity or person liable for all or any part of the Claim asserted herein; (b) a consent by the Claimant to the jurisdiction of this Court with respect to any proceeding commenced in this case against or otherwise involving the Claimant; (c) a waiver of the right to withdraw the reference with respect to the subject matter of the Claim, any objection or other proceedings commenced with respect thereto or any other proceedings commenced in this case against or otherwise involving the Claimant; (d) a waiver or release by the Claimant of any right to trial by jury, or a consent by the

Claimant to a trial by jury, in this Court or any other court; (e) a waiver of any right to the subordination or recharacterization, in favor of the Claimant, of indebtedness or liens held by any creditors of the Debtor or any of its affiliates; or (f) an election of remedies which waives or otherwise affects any other remedy.

18. **Amendments.** The Claimant expressly reserves its right to file any separate or additional proof of claim with respect to the Claim set forth herein or otherwise (which proof of claim, if so filed, shall not be deemed to supersede this proof of claim unless expressly so stated therein), to amend or supplement this proof of claim in any respect, including with respect to the filing of an additional or amended claim for the purpose of fixing and liquidating any contingent or unliquidated claim, or to file additional proofs of claim in respect of additional amounts or for any other reason.

19. **Notice.** All notices in respect of this claim should be forwarded to:

> Acumen Fund, Inc.
> Attn: Ann MacDougall, Chief Management Officer
> 76 Ninth Avenue, Suite 315
> New York, New York 10011
> Tel.    (646) 747-3694
> Fax.    (212) 566-8817
> Email: amacdougall@acumenfund.org

[remainder of page intentionally left blank, with signature page to follow]

Dated: September ⬚, 2009
New York, New York

ACUMEN FUND, INC.

By: _____
Name: Ann MacDougall
Title: Chief Management Officer

Penalty for Presenting a Fraudulent Claim. Fine of not more than $500,000.00 or imprisonment
of not more than five years or both – Title 18, U.S.C. §§ 152 and 3571.

# **EXHIBIT A**

GRANT AGREEMENT

# LEHMAN BROTHERS

### Letter of Agreement between
### Acumen Fund, Inc. and Lehman Brothers

This Letter of Agreement ("LOA") between Acumen Fund, Inc. ("Acumen" or "Acumen Fund") and Lehman Brothers ("LB") outlines the terms and conditions of a gift of $5,000,000. It is LB's present intent to support Acumen at the Steward level (i.e., $5,000,000 over five years as part of Acumen's Initial Capital Campaign), making funds of $1,000,000 available annually ($250,000 for unrestricted general operating expenses and $750,000 available to be drawn down if terms and conditions are met as outlined in 3.B. below) over a five (5) year period totaling $5 million. Nevertheless, LB's internal practices will require annual review and approval of overall giving prior to remitting any annual payments. The undersigned, on behalf of Acumen and LB, agree to the following:

Purpose

1. These funds will be used by Acumen solely for the purposes described in proposal material provided to LB on July 27, 2007 and as represented in subsequent correspondence and discussions with LB and as described herein.

2. LB intends to make payments over a five (5) year period commencing December 1, 2007 or thereabouts ("grant period").

3. Funds will be disbursed and restricted in the following manner:
   A. No more than 25% of each year's payment can be used in a given year for unrestricted general operating expenses (i.e. expenses other than investments).
   B. 75% of each year's payment will be restricted for investments, which shall mean any contribution of capital by Acumen Fund to a targeted investee, which may be in a variety of forms, including, but not limited to, debt, convertible debt, equity and quasi-equity, loan guarantees and associated deposits of collateral by Acumen to lending financial institutions ("Investments"). Payment may be requested from LB in writing (drawn-down) if and when the following conditions are met:
      a. LB funds will only be used to support Investments made primarily in India and secondarily in Africa
      b. Investments must be approved by Acumen's Investment Committee
      c. Funds must be no more than ninety (90) days away from being released by Acumen to the organization receiving the Investment
      d. Each draw-down request must include certification, in writing, that items 3.B.a., b. and c. have been met, along with a detailed summary of the Investment(s) approved by Acumen Fund's Investment Committee
      e. Draw-downs must be requested in increments of at least $1,000
      f. If Acumen is unable to meet conditions 3.B.a. through e. in any given year, any unused funds designated for Investments will be made available in the following year (rolled-over) provided the above conditions are met

Acumen Fund -- Lehman brothers LOA, pg. 2

    g.  In any case, if roll-overs occur as described in 3.B.f., the maximum draw-down that will be considered for funding will not exceed the following amounts:

        (1) Year 1      $750,000
        (2) Year 2      $1,500,000
        (3) Year 3      $2,250,000
        (4) Year 4      $3,000,000
        (5) Year 5      $3,750,000

    h.  LB will exercise best efforts to remit payment against draw-down requests within thirty (30) days from receipt of the request. If conditions listed above are met, the request will be funded

## Reporting

4.  Acumen Fund Stewards will receive a full annual update on Acumen Fund's strategy, Investments, and operations across its four pillars of Capital, Knowledge, Talent, and Revenues. This update will be provided in a meeting and accompanying report or in a stand-alone report. The materials to be provided to LB as part of this update will include:

    A.  Detailed summary of progress across Acumen Fund's strategic pillars of Capital, Knowledge, Talent, and Revenues. This includes all of Acumen's communications efforts, fundraising, and the Acumen Fund Fellows Program.

    B.  Detailed summary of Acumen Fund portfolio activities including:
        a.  Size of existing portfolio and portfolio health (including any write downs or restructuring) over the prior year
        b.  Number and dollar amount of Investments approved and disbursed in the prior year

    C.  A summary of the total expenses (including administrative, operating and program expenses) to date versus budget, specified across Capital, Knowledge, Talent, Administration and Revenues.

    D.  Annual audited financial statements (if audited statements are not available to Acumen in time to be included in the report to Acumen Fund Stewards they will be sent separately as soon as they are available).

    E.  Update on fundraising success to date, including progress against reaching the $100 million fundraising goal and identification of new Stewards (individuals, corporations and foundations).

    F.  Any materials contained in the report that are designated by Acumen as confidential will not be shared outside of LB. In addition, with respect to LB employees, confidential materials will only be shared with LB senior management, LB philanthropy staff, those LB employees responsible for coordinating payment, and others as agreed by Acumen.

    G.  For three years after the end of the grant period, Acumen Fund will continue to provide LB with publicly available materials describing Acumen Fund's work.

    H.  In addition to the annual report listed above, Acumen will provide LB with quarterly updates on Acumen Fund portfolio activities including:
        a.  Size of existing portfolio and portfolio health (including any write downs or restructuring) over the previous quarter
        b.  Number and dollar amount of Investments approved and disbursed in the prior quarter

Acumen Fund -- Lehman Brothers LOA, pg. 3

Payment

5. The reports described above will serve as Acumen's request for consideration of payment of the next installment due (if any remain), as outlined below.
   A. In each payment year, 25% of the year's intended payment will be made available to Acumen following the receipt of the report listed in item 4 and can be used as unrestricted general operating expenses, provided that Acumen continues to satisfy all the provisions of this LOA and subject to LB's annual review and approval.
       a. The first year's payment of $250,000 will be made to Acumen within forty-five (45) days of the signing of this LOA.
   B. The remaining 75% of the year's intended payment will be made available to Acumen as outlined in item 3.B.a. through h., provided that Acumen continues to satisfy all the provisions of this LOA and subject to LB's annual review and approval.
   C. Any Investment funds not accessed by Acumen in a given year will be made available to Acumen as outlined in section 3.B.f. through g. These funds will remain available to Acumen for the duration of the grant period and will be paid upon receipt of appropriate documents showing Acumen's Investment equal to the amount of funds requested.

Recognition

6. LB's support will be reflected at the $5 million level, regardless of whether funds are accessed or rolled over into the following year, as outlined in item 3.A. through B. LB understands that should it, pursuant to its annual review, determine not to continue its annual contributions as set forth in items 5.A. through C., recognition will be reflected at the actual level of contribution.

7. Acumen represents and warrants that LB and its family of companies will receive recognition at the $5 million, Acumen Fund Steward level wherever appropriate.

8. In the initial press release, on the day of Acumen Fund's Investor Gathering, and the evening of Acumen Fund's Celebration on November 13, 2007, Acumen will announce LB's five-year, $5 million support with the following recognition: "Lehman Brothers is the first Corporate Steward in Acumen Fund's Initial Capital Campaign". In addition, LB will be listed in the Investor Gathering and Acumen Fund Celebration programs on November 13, 2007 in a separate list acknowledging all Stewards.

9. Subsequent recognition throughout the duration of the grant period will be consistent with Acumen's donor recognition procedures for all Acumen Fund Stewards, which includes but is not limited to the following:
   A. Listing in newly created category of Stewards on all Acumen Fund's communication materials related to its community. This includes (a) printed informational materials (b) email-able informational materials (c) on Acumen Fund's website (d) in one of Acumen Fund's quarterly newsletters (e) or any other place where donors are listed. LB understands that recognition is subject to the conditions set forth in item 6.

Acumen Fund – Lehman Brothers LOA, pg. 4

    B. Mention as appropriate in public forums by Jacqueline Novogratz, CEO of Acumen
       Fund

10. Acumen will determine mutually agreed upon industry distinctive ongoing attribution
of LB once Acumen concludes its Steward campaign.

11. Acumen will provide LB with a draft of the initial press release for prior approval. Any
other materials where LB's support is distinctly referenced or prominently featured will
likewise be submitted for approval to LB prior to publication, provided that Acumen
will not be required to seek LB's prior approval where LB's name is simply included in
a list of donors. LB agrees that any required approvals will not be unreasonably
withheld. Where LB distinctly references or prominently features the commitment and
relationship with Acumen externally, such reference or feature will be approved by
Acumen prior to publication. Acumen agrees that any required approvals will not be
unreasonably withheld. LB understands that recognition is subject to the conditions set
forth in item 6.

Other conditions

12. Acumen shall notify LB of any breach by Acumen of a material provision of this LOA
immediately after such breach has become known to Acumen. Upon failure of Acumen
to report or cure any such breach, after ninety (90) days notice by LB that LB desires
the breach to be cured LB may elect to withhold payment of future installments, if any
remain.

13. The funds will not be used for any of the following purposes: to attempt to influence
legislation or the outcome of any specific public election; to carry on, directly or
indirectly, any voter registration drive; to make grants to individuals for travel, study or
similar purposes unless the grant is made for a project undertaken under the supervision
of your organization and your organization controls the selection of the individual
grantee in compliance with section 4945(d)(3) of the Internal Revenue Code and the
regulations thereunder; or to undertake any activities that are not charitable, scientific,
literary, or educational.

14. This LOA shall be governed by and construed in accordance with the laws of the State
of New York without regard to the conflicts of laws principles thereof. This LOA shall
be binding on and inure to the benefit of each party's successors and assigns. This
LOA may not be assigned by Acumen without LB's prior written consent. In the event
of any change in the name of LB or any merger, consolidation or transfer of all or
substantially all of the assets of LB, Acumen shall, upon the request of LB or the
successor entity, promptly change, in a manner acceptable to LB or its successor, all
signage (including "permanent" signage), identifications and attributions, in all formats
and locations, to reflect the new or successor name, and Acumen shall be promptly
reimbursed for the reasonable costs thereof.

Acumen Fund -- Lehman Brothers LOA, pg. 5

Signed,

For Acumen Fund, Inc.:

_____
Signature

Jacqueline Novogratz
Chief Executive Officer


_____
Date


For Lehman Brothers:

_____
Signature

Francine S. Kittredge
Managing Director
Director, Corporate Philanthropy


_____
Date

## **EXHIBIT B**

OFFICER'S CERTIFICATE OF CLAIMANT



76 Ninth Avenue, Suite 315    T. 212.566.8821
New York, NY 10011    F. 212.566.8817

## OFFICER'S CERTIFICATE

### May 29, 2009

The undersigned, Ann MacDougall, Chief Administrative Officer and General Counsel of Acumen Fund, Inc., a New York not for profit corporation (the "Company") hereby certifies solely in her capacity as an officer of the Company (and not personally) that:

On September 9, 2008, the Company disbursed US$ 215,950 by wire-transfer to SBA Hydro and Renewable Energy Pvt. Ltd. ("SHREY") as payment for 240,196 equity shares of SHREY.

Pursuant to and in accordance with 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on:   May 29, 2009
                New York, New York

ANN MACDOUGALL

By:
Title:  Chief Administrative Officer and
General Counsel

## **EXHIBIT C**

DRAW DOWN REQUEST



acumen
FUND | 76 Ninth Avenue, Suite 315 | New York, NY 10011

September 10, 2008

Dear Melissa,

Per the Letter of Agreement between Acumen Fund, Inc. and Lehman Brothers, Acumen Fund would like to request a $216,000 draw-down at this time for Acumen Fund's proposed equity investment in SBA Hydro Renewables Private Limited in India.

This investment was approved by Acumen Fund's Investment Committee in the first quarter of 2008, and funds are no more than ninety days away from being released by Acumen Fund. The parties have executed the shareholder's agreement and the company has met conditions for disbursement

Attached is a summary of the Investment approved.

Please let me know if you have any questions after reviewing the materials.

Best regards,

Sasha

Sasha Dichter
Director of Business Development
646-747-3861
sdichter@acumenfund.org

1

## **EXHIBIT D**

GRANT TERMINATION LETTER

# LEHMAN BROTHERS HOLDINGS INC.

FRANCINE S. KITTREDGE
MANAGING DIRECTOR

November 19, 2008

*arrived in the mail 1/21/09!*

*copy already went to Joshua - FYI*
*- K/Boves*

Ms. Jacqueline Novogratz
Chief Executive Officer
Acumen Fund
76 Ninth Avenue, Suite 315
New York, NY 10011

Dear Jacqueline,

We write to update you on the status of your long-term grant commitment from Lehman Brothers Holdings Inc.  Our records reflect an outstanding balance of $4,250,000 on our total commitment of $5,000,000 toward Acumen's Initial Capital Campaign made in November 2007.

Despite Lehman Brothers' bankruptcy filing on September 15, 2008, we had hoped to be able to fulfill these charitable obligations.  It is with deep regret, however, that we must inform you that the estate of Lehman Brothers cannot satisfy the outstanding commitment to Acumen Fund.

Should you elect to take steps to file a claim as a creditor of the estate of Lehman Brothers, your legal counsel can advise you on that process.

We are profoundly saddened and disappointed to be unable to provide continuing support to Acumen Fund, and despite these unfortunate circumstances, we wish you continued success with your important work.

Sincerely,

fedex.com 1.800.GoFedEx 1.800.463.3339

**FedEx** Express US Airbill

RECIPIENT: PEEL HERE

FedEx Tracking Number  8641 8990 5121

1 From This portion can be removed for recipient's records.

Date 9/17/09

Sender's Name  Rachael Lubbers

Company  ACUMEN FUND INC

Address  76 9TH AVE STE 315

City  NEW YORK    State NY    ZIP 10011

2 Your Internal Billing Reference

3 To
Recipient's Name  Attn: Lehman Bros. Holdings Claims Processing

Company  Epiq Bankruptcy Solutions

Address  757 Third Ave    3rd Floor

City  New York    State NY    ZIP 10017

Phone 212-

646 747-3973

RECEIVED  SEP 18 2009

4a Express Package Service
☒ FedEx Priority Overnight
☐ FedEx Standard Overnight
☐ FedEx First Overnight

4b Express Freight Service

5 Packaging
☐ FedEx Envelope
☒ FedEx Pak
☐ FedEx Box
☐ FedEx Tube
☐ Other

6 Special Handling
☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday
Does this shipment contain dangerous goods?
☒ No
☐ Yes
☐ Dry Ice
☐ Cargo Aircraft Only

7 Payment  Bill to:
☒ Sender
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

Total Packages  Total Weight  3 lb.

8 Residential Delivery Signature Options
☐ No Signature Required
☒ Direct Signature
☐ Indirect Signature

Recipient's Copy