**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
David M. LeMay
Christy L. Rivera

*Counsel to AIG Global Services, Inc.,*
*f/k/a AIG Technologies, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
| | |
|---|---|
| In re: | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al*. | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
---------------------------------------------------------------------

**RESPONSE OF AIG GLOBAL SERVICES INC.,**
**F/K/A AIG TECHNOLOGIES, INC. TO PLAN**
**ADMINISTRATOR'S OBJECTION TO CLAIM NO. 66918**

AIG Global Services, Inc., f/k/a AIG Technologies, Inc. ("AIG Global") respectfully submits this response ("Response") to the Plan Administrator's Objection to Claim of AIG Global Services, Inc. f/k/a AIG Technologies, Inc. (Claim No. 66918) [Docket No. 27615], dated April 26, 2012 (the "Objection").

**PRELIMINARY STATEMENT**

1. Shortly after it filed for bankruptcy, Lehman Brothers Holdings Inc. ("Holdings") reviewed the License Agreement (defined below) and recognized it for what it is -- a license. Holdings consistently acted on its position that the License Agreement was but a license and not a lease -- it did not assume or reject the License Agreement within the time limit for leases of nonresidential property under Bankruptcy Code section 365(d)(4), and it chose

instead to avail itself of the License Agreement's terms through June 2010. More than a year and a half after the bankruptcy filing, and long after the outside statutory deadline for either assuming a lease or surrendering leased nonresidential real property, Holdings rejected the License Agreement pursuant to a notice to reject an executory contract. Holdings now wishes to flip positions and argue that the License Agreement should be a lease in order to cap AIG Global's claim. Holding has waived its right to do so by its own intentional conduct.

2. Even if such an argument were permitted, Holdings fails to point to convincing evidence that the License Agreement should be treated as a lease. Holdings instead highlights a few provisions that can be found in a lease <u>or</u> a license, and it ignores a specific provision in the License Agreement in which it agreed that the License Agreement is a mere license and conveyed no leasehold interest to Holdings. Holdings fails to demonstrate the License Agreement should be recharacterized as a lease, and the Objection should be denied.

**Background**

3. AIG Global and Holdings entered into a License Agreement for Use of Co-Location Space, dated as of March 31, 2004 (the "<u>License Agreement</u>"), in which AIG Global granted to Holdings a license to access the Facility[1] and to make use of the Customer Space for the primary purpose of operating certain servers and other equipment.

4. Pursuant to the License Agreement, Holdings acknowledged that the rights granted thereunder did not constitute a lease of any portion of the Facility or any other property right in the Facility. Specifically, Section 1(B) of the License Agreement states "Lehman agrees

---

[1] All capitalized terms that are not otherwise defined herein shall have the meaning ascribed to them in the License Agreement.

and acknowledges that the rights granted hereunder constitute a mere license and do not and are not intended to create any relationship of landlord and tenant."

5. Beginning on September 15, 2008 (the "Petition Date") and periodically thereafter, Holdings and certain of its subsidiaries (together with Holdings, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

6. On December 29, 2008, the Debtors filed their Motion Pursuant to Section 365(d)(4) of the Bankruptcy Code for an Extension of the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Motion"). In the Motion, the Debtors requested an extension of the period provided for the assumption or rejection of certain unexpired leases of nonresidential real property, including the License Agreement. However, the Debtors stated that they had referenced certain co-location agreements in the Motion out of an abundance of caution. See fn. 2 of the Motion. The Debtors reserved the right to assert that Bankruptcy Code section 365(d)(4) did not apply to such agreements. Id.

7. On January 15, 2009, the Court entered an order granting the relief sought in the Motion, extending the deadline by which the Debtors could assume or reject unexpired leases of nonresidential real property to April 13, 2009 (the "April 13 Deadline"), the maximum allowable extension that could be granted by the court, absent consent of the parties, pursuant to Bankruptcy Code section 365(d)(4). The Debtors did not seek any further extension of the April 13 Deadline with respect to the License Agreement.

8. Over a year later, on or about May 28, 2010, the Debtors served AIG Global with a "Notice of Rejection of Executory Contract," whereby the Debtors provided notice of their intent to reject the License Agreement, to be effective as of June 15, 2010 (the "Rejection Date").

On or around May 29, 2010, Holdings vacated the Customer Space and removed all Equipment from the Facility. Holdings made a payment under the License Agreement to AIG Global on May 3, 2010. That payment covered Holdings's obligations under the License Agreement through that month.

9. On July 2, 2010, AIG Global timely filed a proof of claim (the "Claim") in connection with the Debtors' rejection of the License Agreement in the amount of $23,303,750.00, plus any other amounts that may be due pursuant to the License Agreement. The Claim amount represented the remaining payments owed by Holdings for the term of the License Agreement.

10. On December 6, 2011, the Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings and Its Affiliated Debtors (the "Plan"). The effective date of the Plan was March 6, 2012.

11. On April 26, 2012, Holdings, as Plan Administrator, filed the Objection, in which it stated that the License Agreement should be treated as a nonresidential real property lease and, as a result, the Claim should be capped pursuant to Bankruptcy Code section 502(b)(6). Objection at ¶ 2. Accordingly, the Objection seeks to reduce and allow the Claim in the amount of $5,430,000.

## ARGUMENT

### I. By Its Intentional Conduct, Holdings Has Waived Its Right to Argue the License Agreement is a Lease

12. The Bankruptcy Code is clear that a debtor who is a lessee to an unexpired lease of nonresidential real property must assume or reject such lease within 120 days after the date of the order relief, subject to a possible 90 day extension by court order. Further extensions to this deadline are permissible only upon written consent of the lessor. See 11 U.S.C.

§ 365(d)(4). Bankruptcy Code section 365(d)(4) provides that if the debtor does not assume or reject the unexpired lease within the prescribed period of time, then the unexpired lease "shall be deemed rejected, **and the trustee shall immediately surrender** that nonresidential real property to the lessor." 11 U.S.C. § 365(d)(4)(A).

13. Holdings' actions clearly demonstrate that it considered within the first few months of the bankruptcy cases whether the License Agreement was a lease. Holdings listed the License Agreement in the Motion as a precaution. Evidently, Holdings thereafter determined (correctly) that the License Agreement was in fact a license agreement and not a lease. Holdings did not seek to assume or reject the License Agreement within the time required under Bankruptcy Code section 365(d)(4) for leases of nonresidential real property. Holdings did not reach out to AIG Global to extend this deadline and it did not surrender possession upon the expiration of the section 365(d)(4) outside deadline (April 13, 2010) as it was required to do with any lease of nonresidential real property absent AIG Global's consent to a further extension. Instead, Holdings continued to benefit from the License Agreement, utilizing the Customer Space for more than a year after the deadline to assume or reject leases of nonresidential real property expired. Treating the License Agreement as a contract, not a lease, greatly benefited Holdings at the time.

14. Holdings has waived its right to treat the License Agreement as a lease. Holdings knew about its right to argue the License Agreement was a lease and intentionally gave up that right when it chose remain in possession past the outside statutory deadline for leased nonresidential real property. See Ulster Sav. Bank. v. Kizelnik (In re Kizelnik), 190 B.R. 171, 180 (Bankr. S.D.N.Y. 1995) (noting that waiver is the "voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim or privilege, which except for such waiver the party would have enjoyed.").

15. There are three elements for a waiver: (1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive knowledge notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit. See In re THW Enters., 89 B.R. 351, 356 (Bankr. S.D.N.Y. 1988). As to the first element, Holdings had a right to argue that the License Agreement was a lease for purposes of Bankruptcy Code sections 502(b)(6) and 365(d)(4). The second element is also satisfied because Holdings clearly knew of this right when it specifically listed the License Agreement in the Motion. The third element is met as well. Holdings relinquished its right to argue the License Agreement is a lease when it continued to utilize the License Agreement well after the deadline to assume or surrender under Bankruptcy Code section 365(d)(4). Compare In re THW Enters., 89 B.R. 351 (holding that lessor waived right to argue that lease was rejected upon expiration of section 365(d)(4) deadline when lessor continued to accept rent payment for 14 months).

16. Even if Holdings had not waived its right, the doctrine of equitable estoppel clearly bars Holdings from arguing that the License Agreement is a lease for purposes of reducing AIG Global's Claim. The Court of Appeals for the Second Circuit recognizes that the doctrine "is imposed by law in the interest of fairness to prevent enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." Eastern Air Lines, Inc. v. The Ins. Co. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. 1996) (internal citation omitted).

17. Here, Holdings benefited from the License Agreement for more than a year after the section 365(d)(4) deadline and to argue now that the agreement should be a lease would be unfairly prejudicial to AIG Global. Holdings should not be permitted to treat the License Agreement as a license when it wanted to remain in possession well after the section 365(d)(4)

outside deadline applicable to leased non-residential property and now reverse course and seek to apply the statutory claim cap applicable only to leases. By way of comparison, equitable estoppel principles have been applied to deny debtors permission to shirk obligations to perform under contracts they have assumed. See In re Ionosphere Clubs, Inc., 85 F.3d at 1000 (citing, among others, In re Superior Toy & Manufacturing Co., 78 F.3d 1169, 1174 (7th Cir. 1996), which held that the debtor could not assume a contract, enjoy its benefits and then compel return of payments the debtor made pursuant to the contract, stating that "[t]o hold otherwise, without some allegation of improper conduct by the parties, would be unfairly prejudicial to [the counterparty]").

## II.    The License Agreement's Terms Are Those of a License

18.    Even if Holdings had not forfeited its right to argue that License Agreement is a lease for purposes of Bankruptcy Code section 502(b)(6), the Objection should still be denied because the License Agreement is not a lease. As discussed below, certain provisions of the License Agreement may be found in either a license or a lease. In entering into the License Agreement, AIG Global had no desire to grant Holdings leasehold rights in the Facility. To avoid any confusion going forward, the parties were clear that the License Agreement's provisions conveyed to Holdings only a license in the Facility.

19.    Holdings understood when it entered into the License Agreement that it was, in fact, entering a license agreement. Pursuant to Section 1(A) of the License Agreement, Holdings purchased a "non-exclusive license" to access the Facility and use the Customer Space. Pursuant to Section 1(B) of the License Agreement, Holdings "acknowledge[d] that the rights granted [under the License Agreement] do not constitute a lease of any portion of the Facility or an easement, or any other property right of any nature in the Facility or in any property located in the Facility." Under New York law, a contract is construed according to the expressed intent of

the parties, looking to the written agreement to discern the parties' intent. See In re Eastern Systems, Inc., 105 B.R. 219, 228 (Bankr. S.D.N.Y. 1989).

20. Now, however, Holdings has chosen a few other provisions of License Agreement which could be found in a lease and argues that these provisions call for the recharacterization of the License Agreement. Holdings overlooks the fact that these provisions could also be found in a license and it ignores any reference to Section 1(B) of the License Agreement where Holdings acknowledged that it was not being granted a lease. Given the lack of any convincing evidence in support of a finding of a lease, the License Agreement should be treated as the parties intended -- as a license.

### A. Right of Possession and Exclusive Occupation of Property

21. Referencing Section 1(A) of the License Agreement, Lehman first asserts that "like a typical lease" the License Agreement allows Holdings exclusive use of the Customer Space. See Objection at ¶16. This characterization of the License Agreement, however, is incomplete. Section 1(A) goes on to provide that Holdings' use of the Customer Space is limited to "the primary purpose of installing, operating, servicing, repairing, or replacing certain services and other equipment" and ancillary purposes thereto. See License Agreement 1(A). Furthermore, pursuant to the License Agreement, Holdings could only perform the permitted acts "in a manner that does not materially interfere with [AIG Global] equipment or services, or the equipment or services of any other user of the Facility." See License Agreement 2(G).

22. These limitations on Lehman's use of the Customer Space are inconsistent with a finding of a lease, which would allow exclusive use of the property for all purposes. A license, however, may entitle a licensee to exclusive occupation of the property for a specified purpose. In re Crescent Oil., Inc., 2010 Bankr. Lexis 2226, at *10 (Bankr. Kan. July 8, 2010). Accordingly, this factor supports a finding that the License Agreement is a license, not a lease.

### B.     Fixed Rental Amount and Fixed Term

23.    Lehman next asserts that the "Monthly Recurring Charge" payable under the License Agreement is "virtually identical" to fixed monthly rental payments associated with leases. See Objection at ¶16. In addition, Lehman notes that the License Agreement is for a fixed term of 10 years, subject to extension, and argues that a fixed term is a "hallmark of a lease." Id. AIG Global does not dispute the fact that a lease (i) may be for a fixed rental amount and (ii) exists for a fixed term. These same provisions, however, can also be found in licenses. See In re Crescent Oil, Inc., 2010 Bankr. Lexis at *10-11 ("A license does not become a lease just because it is for a term of years and the consideration paid for the privilege is paid in monthly installments."); see also Citiwide News, Inc. v. New York City Transit Authority, 62 N.Y.2d 464 (N.Y. 1984) (finding that an agreement with a fixed term of 15 years was a license); Ott v. Doyle, 654 N.Y.S.2d 975 (N.Y. Sup. Ct. 1997) (holding an agreement was in fact a license as opposed to a lease even though the agreement was for a period of five years); Gushee v. New York, 42 A.D. 37 (N.Y. Sup. Ct. 1899). The License Agreement's provisions for monthly payments and a fixed term also do not support the Plan Administrator's position.

### C.     Agreement is Assignable

24.    Lehman argues that the License Agreement contains an assignment provision which is typical of a lease. See ¶16 of the Objection. Again, however, the assignment provision should not by itself be determinative that the License Agreement should be reclassified as a lease. At least one court has held that a license may be assignable. See In re Crescent Oil Co., Inc., 2010 Bankr. Lexis at *10-11 ("[A] license may be irrevocable for a term of years without granting the licensee exclusive possession of the premises. Such a license is … assignable.").

### D.     Assignment is Revocable

25.    Finally, Lehman argues that licenses are "generally" freely revocable by the

grantor, and the License Agreement is not -- therefore it must be a lease. This statement in and of itself recognizes that not all licenses are necessarily freely revocable. Courts have held that a license agreement that lacks a revocation clause is not by default a lease. See <u>Citiwide News, Inc</u>. v. <u>New York City Transit Authority</u>, 62 N.Y.2d 464 (N.Y. 1984) (holding that the essential character of a license agreement was not altered by the lack of a revocation-at-will provision). The fact that the License Agreement lacks a revocation-at-will provision is not determinative that the License Agreement is a lease.

## CONCLUSION

26.  AIG Global granted Holdings a license to use the Customer Space for the primary purpose of servicing and operating the Equipment. <u>See</u> 1(A) of the License Agreement. Holdings acknowledged the granting of a license and acknowledged that the License Agreement did not grant any property right of any nature in the Facility, including the Customer Space, or the property located in the Facility. <u>See</u> 1(B) of the License Agreement. Holdings was prevented from using the Facility for any purpose other than for the uses specified in the License Agreement and AIG Global maintained its right to access the Facility and Customer Space subject to the terms of the License Agreement. <u>See</u> 1(C) - (D) of the License Agreement.

27.  Holdings' attempt to recharacterize the License Agreement as a lease should be barred. Holdings reviewed the License Agreement during the first stages of its bankruptcy case, determined the License Agreement was not a lease, and operated under that construct for more than a year and a half in its bankruptcy case including remaining in possession for months after the mandatory surrender date imposed by Bankruptcy Code section 365(d)(4). Holdings now wants to flip positions and treat the License Agreement as a lease, relying on a handful of provisions which can be found in a lease or in a license. Holdings should be required to live by the terms of the agreement it made with AIG Global prepetition and with the consequences of its

own deliberate post-petition conduct with respect to the licensed property.

WHEREFORE, for the reasons stated herein, AIG Global respectfully requests that the Court enter an order (i) denying the Objection, (ii) allowing the Claim in its fully asserted amount of $23,303,750.00 and (iii) granting AIG Global such other and further relief as the Court deems just and proper.

Date: New York, New York
May 29, 2012

**CHADBOURNE & PARKE LLP**

By: /s/ David M. LeMay
David M. LeMay
A Member of the Firm
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to AIG Global Services, Inc.*
*f/k/a AIG Technologies, Inc.*