CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile:  (212) 697-1559
*Counsel for Debtors and Debtors-in-Possession*

QUINN EMANUEL
URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:  (212) 849-7000
*Counsel for the Official Committee of Unsecured*
 *Creditors of Lehman Brothers Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| **LEHMAN BROTHERS HOLDINGS INC., *et al.,*** : | **08-13555 (JMP)** |
| : | |
| **Debtors.** : | **(Jointly Administered)** |

------------------------------------------------------------------x

## LEHMAN BROTHERS HOLDINGS INC.'S AND CREDITORS COMMITTEE'S REPLY TO HIGHBRIDGE INTERNATIONAL LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 67911

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee", and together with the Debtors, the "Objectors"), respectfully represent as follows:

12068558

## Preliminary Statement

1.      In its Response, Highbridge[1] argues that approximately $25 million in claims that were identified as arising under the Settled Guarantees at the time the parties entered into the Settlement Agreement, and thus disallowed and expunged, can be resurrected and reasserted against LBHI as guarantor because such claims were "inadvertently misstated" in prior versions of Highbridge's proof of claim. As a matter of law, Highbridge's contention is without merit and should be rejected.

2.      As stated in the Claim Objection, at the time of entering into the Settlement Agreement, the Revised Guaranty Claims were classified in the Prior Proof of Claim as solely arising under the Settled Guaranties. Thus, the Settlement Agreement, approved by this Court, had the effect of disallowing and expunging these claims. Nevertheless, Highbridge argues that its post-settlement reclassification of the bases for the Revised Guaranty Claims in the Amended Proof of Claim should convert these claims from released and expunged claims to claims unaffected by the Settlement Agreement.

3.      Highbridge's position is absurd and, if accepted, would have the effect of prejudicing LBHI, and its other creditors, by depriving LBHI of the benefit of the bargain it struck when it entered into the Settlement Agreement. It is clear on the face of the proofs of claim and the relevant settlement documents that the parties did not intend to grant Highbridge the right to unilaterally undo the economics of the heavily negotiated Settlement Agreement by simply changing the basis of LBHI's purported liability after the dust had settled. Thus, contrary

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Claim Objection.

to Highbridge's assertion, no evidentiary proceedings are necessary because the Amended Proof of Claim, on its face, fails to state a claim against LBHI.

## Argument

I.    **The Revised Guaranty Claims were Released Under the Settlement Agreement and Disallowed by Court Order**

4.    Highbridge argues that the Revised Guaranty Claims were not released pursuant to the Settlement Agreement because, after the Settlement Agreement was executed and approved by this Court, those claims were recharacterized in the Amended Proof of Claim as arising under non-settled guaranties. Thus, according to Highbridge, the Revised Guaranty Claims should be considered "Excluded Claims" -- a category of claims carved out of the Settlement Agreement. (Response ¶¶21-22). Tellingly, nowhere in the Response does Highbridge specifically allege that, prior to the execution and approval of the Settlement Agreement, it expressed to LBHI its intention of reasserting claims that were identified as arising under a category of claims to be released. Thus, given the clarity of the proofs of claim and Highbridge's silence, the Debtors believed that the approximately $25 million in Revised Guaranty Claims arose under the Settled Guaranties and were to be released and disallowed under the Settlement Agreement and the Joint Instruction Letter.

5.    Although as of the execution and approval of the Settlement Agreement, Highbridge, as part of the parties' process of reconciling the proofs of claim subject to the Settlement Agreement, had indicated that "certain amounts" of various proofs of claim were "subject to change", Highbridge failed to mention that the Revised Guaranty Claims were no longer predicated upon the Settled Guaranties. (Response ¶16). Thus, at the time the parties entered into the Settlement Agreement, and as reflected in the Joint Instruction Letter, the Objectors believed that Highbridge intended to amend its proof of claim only to reflect

recalculations of the non-released exposures that were specifically identified in the Original

Proof of Claim and Prior Proof of Claim (i.e. revisions to the *amounts* owed under certain ISDA

Master Agreements). Highbridge's allegation that the Debtors were made aware of its desire to

recharacterize the bases for its claims on February 21, 2012 -- eight days after the parties had

entered into the Settlement Agreement and six days after this Court approved the Settlement

Agreement -- is inconsequential and cannot save its claims. (Response ¶17).

      6.     Additionally, Highbridge's specious argument that LBHI had knowledge

of the mischaracterization based on Highbridge's independent discussions with LBIE is equally

unavailing. (Response ¶¶8, 13, 23). The Response alleges that "at all material times, LBHI

(and/or one of its affiliates) recognized the miscategorization of the guaranty claims . . ."

(Response ¶23). Although LBIE, an affiliate in administration in the United Kingdom, separate

and apart from these chapter 11 proceedings, and a non-signatory of the Settlement Agreement,

may have been aware of the purported mischaracterization of the Revised Guaranty Claims, it

strains credulity that Highbridge's purported statements to a third-party should have any bearing

on the present dispute. Indeed, if Highbridge was aware of the purported miscategorization of

claims as early as July 15, 2010 it should have been compelled to disclose this information to

LBHI during the lengthy negotiation of the Settlement Agreement. (Response ¶13).

      7.     Moreover, Highbridge's allegation that it was procedurally barred from

filing the Amended Proof of Claim by the terms of the CDA does not change the analysis.

(Response ¶¶ 14, 17).[2] Even assuming *arguendo* that the CDA prohibited Highbridge from

---

[2] Nothing in the CDA prohibited Highbridge from filing an amendment to the Prior Proof of Claim. Although, pursuant to the terms of the CDA, LBHI was subrogated to Highbridge's claim against LBIE, at all times Highbridge maintained ownership and control over its claim against LBHI.

filing the Amended Proof of Claim, the CDA certainly did not prevent Highbridge from disclosing material facts relating to the claim prior to the execution of the Settlement Agreement.

8.     Thus, at the time the parties entered into the Settlement Agreement, the Revised Guaranty Claims were identified as arising under the Settled Guaranties. It was the Objectors' reasonable expectation that such claims would be released pursuant to the terms of the Settlement Agreement. (Settlement Agreement at §§ 6(a)(ii)-(iii)). Highbridge does not, and cannot, dispute the well-settled authority holding that a cause of action released under a settlement agreement may not be reasserted in a proof of claim at a later date. *See e.g. Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268, 271 (S.D.N.Y. 1996); *In re WorldCom, Inc.*, 296 B.R. 115, 126 (Bankr. S.D.N.Y. 2003); *In re Allvend Indus. Snacks by Toms, Inc.*, 29 B.R. 900, 903-04 (Bankr. S.D.N.Y. 1983). Therefore, on the face of the Amended Proof of Claim, Highbridge fails to state a claim against LBHI because the Revised Guaranty Claims were released pursuant to the Settlement Agreement.

9.     Highbridge also argues that the reassertion of the Revised Guaranty Claims in the Amended Proof of Claim is not barred by the *res judicata* effect of this Court's Order approving the Settlement Agreement because that Order was not a final judgment with respect to the allowance or disallowance of a proof of claim. (Response ¶24). This position ignores the language of the Order itself, which provides that "any action" to consummate the transactions contemplated by the Settlement Agreement "taken by the Debtors . . . shall be conclusive and binding in all respects on all parties in interest in these cases". In turn, the Settlement Agreement expressly contemplates the "disposition" (i.e. the allowance or disallowance) of the Funds' claims *via* the Joint Instruction Letter. (Settlement Agreement §7). Accordingly, the Revised Guaranty Claims were in fact disallowed pursuant to a final order of

the Court, having a preclusive effect and barring the claims pursuant to the doctrine of *res judicata.*

## II.    The Revised Guaranty Claims were Disallowed and Expunged Pursuant to the Joint Instruction Letter

10.    As set forth in the Response, the Joint Instruction Letter provided that "[a]ny amounts in excess of the Reduced Amount [of the Prior Proof of Claim] are to be disallowed subject . . . to the Fund's rights to further amend the *amounts.*" (Response ¶19, emphasis added).  Similarly, Schedule 3 of the Joint Instruction Letter reserved the "right to further amend the *amount of the claims* listed on Schedule 3", including the Prior Proof of Claim. (Response ¶20, emphasis added).  Indeed, on its face, the Joint Instruction Letter only reserved Highbridge's ability to amend the *amount* of the Prior Proof of Claim.[3]  Nevertheless, Highbridge argues that the terms of Joint Instruction Letter "confirm the parties mutual understanding" that Highbridge would be permitted to reassert the Revised Guaranty Claims in the Amended Proof of Claim.  (Response ¶23).

11.    Highbridge cannot point to anything in the Joint Instruction Letter memorializing this purported "mutual understanding".  As noted above, the Joint Instruction Letter clearly and unambiguously stated that Highbridge could amend its proof of claim to reflect errors in the *amounts* of the non-released exposures specifically identified in the Original Proof of Claim and Prior Proof of Claim.  Thus, if Highbridge determined that it had miscalculated the amounts LBHI purportedly owed relating to LBSF derivatives calculations (which comprised a portion of the Reduced Amount exposure), Highbridge could file an amended proof of claim to

---

[3] Schedule 3 of the Joint Instruction Letter lists the Reduced Amount for the Prior Proof of Claim as $41,818,197.00, an amount subject to further challenge by the Debtors.  This Reduced Amount was arrived at by disallowing the amounts identified in the Prior Proof of Claim as arising under Highbridge's prime brokerage relationship with LBIE.  (Response ¶18).  This bucket of disallowed claims included the $25 million in Revised Guaranty Claims that Highbridge now seeks to repackage in the Amended Proof of Claim.

reflect this miscalculation, which amount would be subject to further challenge by the Debtors.

Nothing in the Joint Instruction Letter permits Highbridge to recharacterize nearly $25 million in

claims that the Objectors believed would be released under the Settlement Agreement. *See*

*Marathon Private Equity Fund I, LLC v. Questor Mgmt. Co., LLC*, 20 Misc.3d 1123(A), 867

N.Y.S.2d 375 (Sup. Ct. New York County 2008) (explaining that if "sophisticated parties"

intended to grant a contractual right "surely they could have drafted the agreement to reflect that

intention").

### III.    The Amended Proof of Claim Should Be Disallowed on the Basis of Equitable Considerations

12.    Ignoring the authority cited in the Claim Objection supporting the

proposition that post-bar date amendments to proofs of claim should be disallowed on equitable

grounds when parties have entered into settlement agreements in reliance on un-amended proofs

of claim,[4] Highbridge asserts that a balancing of the equities weighs in favor of allowing the

Amended Proof of Claim.  (Response ¶¶25-30).

13.    Incredibly, Highbridge posits that the resurrection and allowance of nearly

$25 million in claims against LBHI that the Objectors reasonably believed to be released,

expunged and disallowed pursuant to a thoroughly negotiated Settlement Agreement would

result in "no prejudice to the Debtors".  (Response ¶25-a).  According to Highbridge, this is

because the "Debtors were aware that claim amounts under the Prior Proof of Claim were subject

to change post-closing." *Id.*  However, this explanation assumes that Highbridge reserved the

right to recharacterize its claims, as opposed to amending the amount.  Highbridge's argument is

therefore pure and simple bootstrapping and should be rejected.

---

[4] *See* Claim Objection ¶37.

14.    As discussed above, the Objectors expected that, post-closing, Highbridge

would amend its proof of claim to reflect its new calculations of the remaining purported LBHI

obligations.  However, where, as is the case here, a creditor seeks to circumvent the express

terms of a negotiated Settlement Agreement and Court order to reassert millions of dollars in

claims that the estate believed expunged and disallowed, the estate is prejudiced because it has

been deprived of the benefit of its bargain.[5]  *See In re Lanman*, 24 B.R. 741, 743-44 (Bankr.

N.D. Ill. 1982).

15.    Likewise, Highbridge's assertion that the allowance of the Amended Proof

of Claim would not result in prejudice to other claimants is equally without merit.  If this Court

allows Highbridge to reassert the Revised Guaranty Claims, it will potentially result in

distributions to Highbridge that would otherwise be available to Lehman's other creditors.  Any

outcome whereby LBHI gets less than it bargained for necessarily puts LBHI's creditors in a

worse position.

16.    Highbridge's conduct in filing the Amended Proof of Claim was

inequitable and amounted to more than "simply seek[ing] to rectify an inadvertent

misclassification of certain underlying transactions and state with greater particularity the

circumstances under which certain guarantee obligations arose".  (Response ¶30).

17.    For the reasons stated in the Claim Objection and this Reply, this Court

should exercise its discretion to disallow the Amended Proof of Claim *in toto*.

*            *            *

---

[5] The authority cited by Highbridge in support of its position are inapposite because, *inter alia*, these decisions did not involve a creditor's reassertion of millions of dollars in claims released under a court-approved settlement agreement against a debtor under new theories of liability. (Response ¶30) (citing *First National Bank of Mobile v. Everhart (In re Commonwealth Corp.)*, 617 F.2d 415 (5th Cir. 1980); *In re Andover Togs, Inc.*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999)).

WHEREFORE the Objectors respectfully request that the Court grant the relief requested in the Claim Objection and such other and further relief as is just.

Dated: May 29, 2012
New York, New York

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

By: /s/ L. P. Harrison 3rd
Joseph D. Pizzurro
L. P. Harrison 3rd
Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000

*Counsel for Debtors and Debtors-in-Possession*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
By: /s/ John B. Quinn
John B. Quinn
Erica Taggart
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Andrew J. Rossman
James Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

*Counsel for the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc.*

12068558