Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555 (JMP)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS INC., ET AL.,

8

9         Debtors.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13               U.S. Bankruptcy Court

14               One Bowling Green

15               New York, New York

16

17               May 31, 2012

18               10:07 AM

19

20  B E F O R E :

21  HON JAMES M. PECK

22  U.S. BANKRUPTCY JUDGE

23

24

25

Page 2

1   Hearing re:  Debtors' Seventy-Third, One Hundred Eighteenth,

2   One Hundred Thirtieth, One Hundred Thirty-First, One Hundred

3   Thirty-Third, One Hundred Thirty-Fourth, One Hundred Thirty-

4   Fifth, One Hundred Seventh-Sixth, and Two Hundred and

5   Seventh Omnibus Objections to Claims (To Reclassify Proofs

6   of Claim as Equity Interests)[ECF No. 24591]

7

8   Hearing re:  Debtors' One Hundred and Eighty Ninth Omnibus

9   Objection to Claims (No Liability Repo Claims) [ECF No.

10   19870]

11

12   Hearing re:  Debtors' One Hundred Fifty-Ninth Omnibus

13   Objection to Claims (Invalid Blocking Number LPS Claims)

14   [ECF No. 18407]

15

16   Hearing re:  Debtors' One Hundred Seventy-Third Omnibus

17   Objection to Claims (No Liability Employee Claims) [ECF No.

18   19399]

19

20   Hearing re:  Debtors' Two Hundred Fifty-Sixth Omnibus

21   Objection to Claims (Purchased Contract Claims) [ECF No.

22   24933]

23

24   Hearing re:  Plan Administrator's Objection to Claims filed

25   by Kathleen Arnold and Timothy A. Cotten [ECF No. 27263]

1   Hearing re:  Lehman Brothers Holdings Inc.'s and Creditors

2   Committee's Objection to Claim No. 67911 [ECF No. 27050]

3

4   Hearing re:  Debtors' Twenty-Eighth Omnibus Objection to

5   Claims (Valued Derivative Claims) [ECF No. 9983]

6

7   Hearing re:  Debtors' Thirty-Fifth Omnibus Objection to

8   Claims (Valued Derivative Claims)[ECF No. 11260]

9

10   Hearing re:  Debtors' Forty-First Omnibus Objection to

11   Claims (Late-Filed Claims) [ECF No. 11306]

12

13   Hearing re:  Debtors' Sixty-Third Omnibus Objection to

14   Claims (Valued Derivative Claims)[ECF No. 11978]

15

16   Hearing re:  Debtors' Sixty-Seventh Omnibus Objection to

17   Claims (Valued Derivative Claims)[ECF No. 12533]

18

19   Hearing re:  Debtors' Seventy-First Omnibus Objection to

20   Claims (Valued Derivative Claims) [ECF No. 13230]

21

22   Hearing re:  Debtors' Eighty-Fourth Omnibus Objection to

23   Claims (Valued Derivative Claims)[ECF No. 13955]

24

25

1     Hearing re:  Debtors' Eighty-Sixth Omnibus Objection to

2     Claims (No Liability Claims) [ECF No. 14440]

3

4     Hearing re:  Debtors' Eighty-Seventh Omnibus Objection to

5     Claims (No Liability Claims) [ECF No. 14442]

6

7     Hearing re:  Debtors' Eighty-Eighth Omnibus Objection to

8     Claims (No Liability Claims) [ECF No. 14450]

9

10    Hearing re:  Debtors' Eighty-Ninth Omnibus Objection to

11    Claims (No Liability Claims) [ECF No. 14452]

12

13    Hearing re:  Debtors' Ninetieth Omnibus Objection to Claims

14    (No Liability Claims) [ECF No. 14453]

15

16    Hearing re:  Debtors' Ninety-Second Omnibus Objection to

17    Claims (No Blocking Number LPS Claims) [ECF No. 14472]

18

19    Hearing re:  Debtors' Ninety-Sixth Omnibus Objection to

20    Claims (Duplicative LPS Claims) [ECF No. 14491]

21

22    Hearing re:  Debtors' Ninety-Seventh Omnibus Objection to

23    Claims (Insufficient Documentation) [ECF No. 14492]

24

25

Page 5

1    Hearing re:  Debtors' One Hundred Third Omnibus Objection to

2    Claims (Valued Derivative Claims) [ECF No. 15003]

3

4    Hearing re:  Debtors' One Hundred Twelfth Omnibus Objection

5    to Claims (Invalid Blocking Number LPS Claims) [ECF No.

6    15014]

7

8    Hearing re:  Debtors' One Hundred Twentieth Omnibus

9    Objection to Claims (No Blocking Number LPS Claims) [ECF No.

10   16074]

11

12   Hearing re:  Debtors' One Hundred Twenty-Fifth Omnibus

13   Objection to Claims (Insufficient Documentation) [ECF No.

14   16079]

15

16   Hearing re:  Debtors' One Hundred Twenty-Ninth Omnibus

17   Objection to Claims (No Liability Derivatives Claims) [ECF

18   No. 16114]

19

20   Hearing re:  One Hundred Thirty-Eighth Omnibus Objection to

21   Claims (No Liability Derivatives Claims) [ECF No. 16865]

22

23   Hearing re:  Debtors' One Hundred Fifty-Fifth Omnibus

24   Objection to Claims (Valued Derivative Claims) [ECF No.

25   17468]

Page 6

1    Hearing re:  Debtors' One Hundred Fifty-Sixth Omnibus

2    Objection to Claims (No Liability Derivatives Claims) [ECF

3    No. 17469]

4

5    Hearing re:  Debtors' One Hundred Sixtieth Omnibus Objection

6    to Claims (Settled Derivatives Claims) [ECF No. 18444]

7

8    Hearing re:  Debtors' One Hundred Sixty-Second Omnibus

9    Objection to Claims (Valued Derivative Claims [ECF No.

10    18405]

11

12    Hearing re:  One Hundred Sixty-Third Omnibus Objection to

13    Claims (No Liability Derivatives Claims) [ECF No. 18409]

14

15    Hearing re:  One Hundred Seventy-Ninth Omnibus Objection to

16    Claims (No Liability Derivatives Claims) [ECF No. 19378]

17

18    Hearing re:  Debtors' One Hundred Eighty-Second Omnibus

19    Objection to Claims (Valued Derivative Claims) [ECF No.

20    19398]

21

22    Hearing re:  Debtors' One Hundred Eighty-Eighth Omnibus

23    Objection to Claims (Duplicative LPS Claims) [ECF No. 19871]

24

25

Page 7

1    Hearing re:  Debtors' One Hundred Eighty-Ninth Omnibus

2    Objection to Claims (No Liability Repo Claims) [ECF No.

3    19870]

4

5    Hearing re:  Debtors' One Hundred Ninety-First Omnibus

6    Objection to Claims (Valued Derivative Claims) [ECF No.

7    19888]

8

9    Hearing re:  Debtors' Objection to Proof of Claim No. 29702

10   [ECF No. 20100]

11

12   Hearing re:  Debtors' Two Hundred Thirteenth Omnibus

13   Objection to Disallow and Expunge Certain Filed Proofs of

14   Claim [ECF No. 20102]

15

16   Hearing re:  Debtors' Two Hundred Fourteenth Omnibus

17   Objection to Disallow and Expunge Certain Filed Proofs of

18   Claim [ECF No. 20103]

19

20   Hearing re:  Debtors' Two Hundred Fifteenth Omnibus

21   Objection to Disallow and Expunge Certain Filed Proofs of

22   Claim [ECF No. 20104]

23

24

25

1    Hearing re:  Debtors' Two Hundred Sixteenth Omnibus

2    Objection to Disallow and Expunge Certain Filed Proofs of

3    Claim [ECF No. 20105]

4

5    Hearing re:  Debtors' Two Hundred Seventeenth Omnibus

6    Objection to Disallow and Expunge Certain Filed Proofs of

7    Claim [ECF No. 20106]

8

9    Hearing re:  Debtors' Two Hundred Nineteenth Omnibus

10   Objection to Claims (Valued Derivative Claims) [ECF No.

11   20787]

12

13   Hearing re:  Debtors' Objection to Proof of Claim No. 66099

14   Filed by Syncora Guarantee, Inc. [ECF No. 20087]

15

16   Hearing re:  Debtors' Two Hundred Twenty-Eighth Omnibus

17   Objection to Claims (No Liability Derivatives Claims) [ECF

18   No. 20886]

19

20   Hearing re:  Debtors' Two Hundred Thirty-Second Omnibus

21   Objection to Claims (Valued Derivative Claims) [ECF No.

22   21727]

23

24

25

Page 9

1   Hearing re:  Debtors' Two Hundred Thirty-Sixth Omnibus

2   Objection to Claims (No Liability Derivatives Claims) [ECF

3   No. 23168]

4

5   Hearing re:  Two Hundred Forty-Fifth Omnibus Objection to

6   Claims (Unissued Guarantee Claims) [ECF No. 23251]

7

8   Hearing re:  Debtors' Two Hundred Forty-Seventh Omnibus

9   Objection to Claims (No Liability Claims) [ECF No. 24088]

10

11  Hearing re:  Debtors' Two Hundred Fifty-Third Omnibus

12  Objection to Claims (Valued Derivative Claims) [ECF No.

13  24117]

14

15  Hearing re:  Debtors' Two Hundred Sixty-First Omnibus

16  Objection to Claims (No Guarantee Claims) [ECF No. 24995]

17

18  Hearing re:  Debtors' Two Hundred Sixty-Sixth Omnibus

19  Objection to Claims (Valued Derivative Claims) [ECF No.

20  25000]

21

22  Hearing re:  Debtors' Two Hundred Sixty-Eighth Omnibus

23  Objection to Claims (Duplicative Claims)[ECF No. 26189]

24

25

Page 10

1    Hearing re:  Debtors' Two Hundred Seventieth Omnibus

2    Objection to Claims (Valued Derivative Claims) [ECF No.

3    26324]

4

5    Hearing re:  Two Hundred Seventy-Seventh Omnibus Objection

6    to Claims (No Guarantee Claims) [ECF No. 26241]

7

8    Hearing re:  Two Hundred Eightieth Omnibus Objection to

9    Claims (No Liability Claims)[ECF No. 27358]

10

11   Hearing re:  Two Hundred Eighty-Second Omnibus Objection to

12   Claims (Late-Filed Claims)[ECF No. 27374]

13

14   Hearing re:  Two Hundred Eighty-Seventh Omnibus Objection to

15   Claims (No Liability Claims) [ECF No. 27385]

16

17   Hearing re:  Two Hundred Ninety-Third Omnibus Objection to

18   Claims (No Liability Claims)[ECF No. 27381]

19

20

21

22

23

24

25   Transcribed by:  Nicole Yawn

```
 1    A P P E A R A N C E S :

 2    WEIL, GOTSHAL & MANGES LLP

 3         Attorneys for Debtors

 4         767 Fifth Avenue

 5         New York, NY 10153

 6

 7    BY:  MARK BERNSTEIN, ESQ.

 8         ERIC DAVID KASENETZ, ESQ.

 9         ZAW WIN, ESQ.

10         JACQUELINE MARCUS, ESQ.

11

12    CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

13         Attorney for Debtors

14         101 Park Avenue

15         New York, NY 10178

16

17    BY:  CINDI M. GIGLIO, ESQ.

18         L.P. HARRISON, III, ESQ.

19

20

21

22

23

24

25
```

```
 1   STAMELL & SCHAGER, LLP

 2        Counsel for Claimants, Michael K. McCully and

 3        Michael Gran

 4        One Liberty Plaza, 35th Floor

 5        New York, NY 10006

 6

 7   BY:  RICHARD J. SCHAGER, JR., ESQ.

 8

 9   QUINN EMANUEL URQUHART & SULLIVAN, LLP

10        Attorneys for the Official Creditors' Committee LBHI

11        51 Madison Avenue, 22nd Floor

12        New York, NY 10010

13

14   BY:  ANDREW ROSSMAN, ESQ.

15

16   LAW OFFICES OF LISA M. SOLOMON

17        51 Madison Avenue, Suite 4700

18        New York, NY 10165

19

20   BY:  LISA M. SOLOMON, ESQ.

21

22

23

24

25
```

1   DICONZA TRAURIG MAGALIFF, LLP

2        Attorney for Roger Sales

3        630 Third Avenue, 7th Floor

4        New York, NY 10017

5

6   BY:  HOWARD P. MAGALIFF, ESQ.

7

8   THE MICHAELSON LAW FIRM

9        11 Broadway, Suite 615

10       New York, NY 10004

11

12  BY:  ROBERT N. MICHAELSON, ESQ.

13

14  JULIEN & SCHLESINGER, P.C.

15       Attorneys for Claimants, Neuberger Berman

16       One Whitehall Street, 17th Floor

17       New York, NY 10004

18

19  BY:  MICHAEL S. SCHLESINGER, ESQ.

20

21

22

23

24

25

Page 14

1   MAXIM GROUP

2        Claimant, Pro Se

3        405 Lexington Avenue, 2nd Floor

4        New York, NY 10174

5

6   BY:  RODNEY A. PLASKETT

7

8   RANDY HUTTON

9        Claimant, Pro Se

10

11  BY:  RANDY HUTTON

12

13  ARTHUR J. KENNEY

14       Claimant, Pro Se

15       200 East End Avenue, Apt. 5-DE

16       New York, NY 10128

17

18  BY:  ARTHUR J. KENNEY

19

20

21

22

23

24

25

Page 15

1   BINGHAM MCCUTCHEN, LLP

2        Attorneys for Highbridge International LLC

3        399 Park Avenue

4        New York, NY 10022

5

6   BY:  JARED R. CLARK, ESQ.

7        JEFFERY BLACK, ESQ.

8

9   VINSON & ELKINS

10       Attorney for Lisa Marcus

11       666 Fifth Avenue, 26th Floor

12       New York, NY 10103-0040

13

14   BY:  STEVEN M. ABRAMOWITZ, ESQ.

15

16   APPEARED TELEPHONICALLY:

17   DANIEL BEEDERMAN

18   JAMES BOYAJIAN

19   ANATOLY BUSHLER

20   DANIEL CARRAGHER

21   LARS P. JACOBSON

22   MICHAEL NEUMEISTER

23

24

25

Page 16

1                    P R O C E E D I N G S

2              THE COURT:  Be seated.  Good morning.

3              MR. BERNSTEIN:  Good morning, Your Honor.  Mark

4    Bernstein, from Weil, Gotshal & Manges, on behalf of Lehman

5    Brothers Holdings, Inc. and certain of its affiliates.  We

6    have a relatively short agenda for you this morning, five

7    uncontested items and two contested items.  Unless Your

8    Honor has any questions, to begin, we'll -- I propose we

9    just take them in order.

10             THE COURT:  Sure.

11             MR. BERNSTEIN:  The first item on the agenda is a

12   status conference with respect to the number omnibus --

13   omnibus objections the debtors previously filed seeking to

14   reclassify as equity claims filed by former employees based

15   on restricted stock units and related instruments.  At the

16   claims hearing on December 21st, the debtors proceeded on a

17   contested basis seeking to reclassify these claims.

18             At the hearing, Your Honor noted that there

19   appeared to be several factual disputes between the parties

20   relating to how these programs worked and requested, or

21   suggested, that the parties work together to agree on some

22   -- on the facts and come back to court to argue on the legal

23   issues.

24             At the January 26th claims hearing, my colleague,

25   Rob Lemons reported to the Court that it was our intent to

Page 17

1    prepare a set of stipulated facts following diligence by --

2    by Lehman Brothers and circulate that to the -- the

3    claimants and counsel for claimants that appeared at the

4    December 21st hearing.  Lehman spent a fair amount of time

5    preparing those facts and conducting diligence and

6    circulated that set of stipulated facts, or proposed set of

7    stipulated facts, to that group on April 17th, requesting

8    that claimants provide any comments, additional facts they

9    wanted to include, disputes within a three-week period.

10           The debtors received about five responses

11   disputing certain facts that were included in the stipulated

12   facts, but a group of the claimants and counsel for

13   claimants formed together and said they were unable to

14   respond to the stipulated facts until they were able to

15   conduct discovery on -- on these matters, and they provided

16   the debtors with a list of documents, a fairly extensive

17   list of documents that they would need before they could

18   comment on the stipulated facts and suggested that they may

19   want to take some depositions, as well.

20           LBHI has been in communication with this group on

21   multiple occasions and intends to work with this group to

22   provide some of the requested information in an organized

23   and orderly fashion, and on an informal basis at this -- at

24   this time.

25           Due to the number of claimants involved, LBHI has

Page 18

1    requested that the claimants organize themselves into

2    groups.  As you may recall, certain of the creditors had

3    started to do that at the hearing saying that some -- some

4    of them had different arguments, and this -- our -- we

5    suggested this, because we -- we believe this will make the

6    discovery simpler to deal with smaller groups rather than

7    one large group.

8              At this time, the parties are working together

9    cooperatively, but to the extent any disputes may arise, as

10   to the extent of discovery or any limitations, we may come

11   back before the Court seeking some kind of -- some orders or

12   protective orders related thereto.  There are no future

13   scheduled hearings on these matters.  Once the discovery is

14   complete, we intend to work with the -- with the claimants

15   and -- and Your Honor to figure out the best way to provide

16   the evidence to Your Court, whether it be by declarations,

17   admissions, additional pleadings, or -- or actual live

18   evidence, and, at that time, we can schedule a further

19   hearing to have these matters heard again on a contested

20   basis.

21             THE COURT:  What's your anticipated time horizon

22   for all this?

23             MR. BERNSTEIN:  The discovery is -- I -- I

24   imagine, is going to take at least a couple of months to --

25   to get through.  There is a fair -- fairly large request by

Page 19

1    -- by the current group outstanding.

2            In addition, there are other RSU claims that have

3    not yet been put on objections.  Our intention is to file

4    those objections to those claims in the next couple of

5    weeks, and therefore, include all those holders in -- in the

6    process, to the extent they want to be included in the

7    discovery process, and then, we can deal with the issues

8    altogether at one time.  So, I think, before we get back to

9    Your Honor for a contested hearing, it's more likely to be

10   fourth quarter of this year.

11           THE COURT:  Okay.  How many groups are we dealing

12   with?

13           MR. BERNSTEIN:  Well, they seem to have formed

14   into one group, and the calls that we've had have been all

15   with one group.  However, they've identified to us that they

16   believe there are at least -- there -- there are four groups

17   with -- within that one group.  Now, there may be -- much of

18   the information that they're requesting may relate to all of

19   them, but there is definitely certain parts of the

20   information that only relate to some of them.

21           Some of the -- as you may recall, there was a

22   group of Neuberger Berman creditors.  They're a group of

23   commissioned salespeople, and they have arguments that

24   differ from just the general salaried employees who hold

25   RSUs.  So I -- I believe there are four groups they've

Page 20

1    separated themselves into, and it may make sense, when we

2    have the hearings, to actually have separate hearings for --

3    for the different groups, or it may not.  I just -- I guess,

4    it's not clear at this time what the best approach will be.

5              THE COURT:  Okay.

6              MR. BERNSTEIN:  So, with that, we will continue to

7    work with these groups, and -- and we'll come back to you if

8    we need your assistance.

9              THE COURT:  Okay.  I can see that there are any

10   number of familiar faces who are either affected employees

11   or counsel for affected employees -- employees in the room,

12   and I don't know if any of them wish to say anything.  This

13   isn't intended to be a reargument of anything as much as it

14   is a status report.  But, if there's anything that has been

15   reflected in the report of debtors' counsel that's

16   incomplete or inaccurate, this is a time to say something.

17             MR. SCHAGER:  With the Court's permission?

18             THE COURT:  You can come forward.  Just, please,

19   identify yourself, for the record.

20             MR. SCHAGER:  Thank you.  Your Honor, I have

21   signed in, and I appear for claimants Michael K. McCully and

22   Michael Gran.  My name is Richard Schager, of the firm of

23   Stamell & Schager.

24             Your Honor, there were, I think, basically, two

25   points that I wanted to address today.  One was to go

Page 21

1    through things that have been done.  More seriously, I think

2    Your Honor -- and I've studied the transcript pretty

3    carefully.  I think Your Honor gave some pretty explicit

4    instructions that I don't think have been followed in the

5    responses so far, and I'd like to take just two or three

6    minutes to go over those.  In the --

7                THE COURT:  This is your opportunity, then.

8    That's fine.

9                MR. SCHAGER:  In the -- in the first instance, in

10   terms of the draft's counter-stipulation, there was a -- a

11   formal counter-stipulation prepared by a group of claimants.

12   It wasn't just one individual.  There was a counter-

13   stipulation also based on due diligence and based on

14   documents, and there's been no response to it yet.

15               I don't know if that indicates that they don't

16   consider it relevant, or whether the counter-stipulated

17   facts are significant enough to be set aside for the time

18   being.  I think it's the later, but, in any case, it was an

19   organized group that submitted a counter-stipulation, and

20   there's been no response to it.

21               THE COURT:  Well, let -- let me just inquire about

22   the organized group that you've referenced.  I take it

23   you're part of that group?

24               MR. SCHAGER:  That's correct, Your Honor.

25               THE COURT:  And are you speaking for yourself and

Page 22

1   your clients, or are you speaking for the group right now?

2            MR. SCHAGER:  We have made no committee

3   appointments.  We have no spokesman for the group.  I speak

4   only for two claimants.  One is a holder of RSUs.  The other

5   is a holder of contingent stock awards, the category given

6   to mostly overseas purchasers.

7            THE COURT:  Okay, and, if you could just give me a

8   little bit of color as to -- as to what --

9            MR. SCHAGER:  Sorry, overseas employees.

10           THE COURT:  -- the group consists of.  How many

11  lawyers are involved?  How many employees are represented,

12  and how many additional parties may be represented, if you

13  know?

14           MR. SCHAGER:  I -- I -- I think, in the -- the

15  people who signed on to the counter-stipulation, Your Honor,

16  are probably four or five law firms and -- and three or four

17  individual pro se claimants.  Now, I am -- I'm -- I'm not

18  under oath on that.  I'd have to check, and I don't have the

19  counter-stipulation.

20           THE COURT:  But that -- that's an approximation,

21  and -- and --

22           MR. SCHAGER:  But that's the -- an approximation.

23  They are drawn, Your Honor, from the group that was the

24  object of the initial notice from Weil, Gotshal proposing a

25  stipulation.  So we haven't tried to make any effort to

Page 23

1    circulate beyond that group.

2         THE COURT:  Okay.  Go back -- go back to your

3    presentation, please.

4         MR. SCHAGER:  Okay.  Now, the other thing, Your

5    Honor, that just came out in a conference call last week,

6    and it's been raised for the Court today, is that there are

7    other claimants of holders of RSUs and CSAs who have not

8    been named yet.  So, basically, there's another group out

9    there for whom this process is starting all over, and I

10   think that's a significant fact in terms of what I want to

11   propose to the Court at the end of this.

12        THE COURT:  Well -- well, debtors' counsel made

13   clear that it was the intent to bring on additional omnibus

14   objections in reference to RSUs and for there to be a

15   comprehensive process.  There is nothing wrong with that,

16   and I'm -- I actually support that idea.

17        MR. SCHAGER:  I think every claim should be

18   addressed, and every claim should be noticed, Your Honor.  I

19   do agree with that.  I'm just pointing out the sequence,

20   that it didn't come up until we raised it in conferences

21   outside of -- outside of court.

22        THE COURT:  Okay.  I don't see -- I don't see

23   anything controversial so far.

24        MR. SCHAGER:  Okay.  Your Honor called for -- or

25   criticized what had happened so far.  This is on December 21

Page 24

1    -- for there being a lack of a formal evidentiary record.

2    You referred counsel to your decision in the TBA case in the

3    SIPRA (ph) proceeding, and -- and we could see there how

4    Your Honor called for the development of an evidentiary

5    record.  I'll come back to that in a minute.

6             You also asked the Court to define sub-class --

7    you asked the parties to define sub-classes.  You asked to

8    do a -- that the counsel do a better job of managing the

9    process, and that's really the thrust of what I'm getting

10   to.  You did also ask for us to bear in mind how to

11   distinguish Enron, which I think can be done, but I'm not

12   sure that's a subject for today.

13            In terms of the evidentiary record, Your Honor, I

14   submit that the debtors have done nothing so far.  In

15   support of their omnibus objections and in their reply from

16   last December and in their sur-reply from January, there is

17   no affidavit.  There is no authenticated document.

18            There is nothing on which this Court could base a

19   decision.  There's no -- no basis is outlined for taking

20   judicial notice of notice that were submitted.  There's been

21   nothing done by the debtors to develop an evidentiary record

22   here.  The only affidavits in the record are the affidavits

23   of the claimants, and, for the most part, they're opposed in

24   briefing, but they're not opposed in any kind of evidentiary

25   way.  There are legal arguments submitted by the debtors,

Page 25

1    but there's no evidence.

2         In terms of defining the sub-classes, I think what

3    Your Honor is seeing, through your staff or otherwise, is,

4    basically, the debtor saying, "No, we're not going to do

5    that.  You don't need that information, Your Honor, because

6    these are all equity-based compensation, and we're not going

7    to break this down," and I think that's dead wrong, but I

8    think there's a reason for it.

9         The entire process, the entire omnibus objection

10   motion -- and this is a point I alluded to when I spoke very

11   briefly on December 21 -- depends on the stock option

12   analysis.  And I said at the time, "Well, how many stock

13   options are there here," and the answer was very vague and

14   muddy.  It was very vague and muddy, because the analysis,

15   the objection is contingent on the stock option analysis

16   that Judge Gonzales adopted in Enron, and it doesn't apply

17   here, because there's not a single stock option that's a

18   subject of these motions, and that's why the debtors are

19   refusing to clarify that issue.

20        Now, in terms of managing the process, Your Honor,

21   I think the Court can easily recognize that there's been no

22   effort here by the debtors to build the evidentiary record

23   that the Court requested.  The claimants are cooperating as

24   a group among themselves, but only informally.  There's no

25   formal structure, but the point is that the only evidence

Page 26

1    the Court has in front of it is what the claimants have

2    submitted.

3            I think, given the -- the debtors' recalcitrance

4    here, in terms of preparing this evidentiary record, and, I

5    think, particularly in light of this new information before

6    the Court now, that they've, basically, got to make new

7    omnibus objections for people who haven't been named yet.  I

8    think the Court ought to tell them to do it over and do it

9    right the first time.

10            There's no reason why these motions couldn't be

11   the subject of one set or one consolidated motion or one set

12   of consolidated omnibus motions.  They should be submitted

13   with some supporting affidavits that outline an evidentiary

14   basis for the motion, and people ought to be given an

15   opportunity to react.

16            Right now, the Court has the objections to

17   replies.  Now, we're talking about a set of stipulated facts

18   that are under negotiation.  More evidence is coming in from

19   discovery, and now, you've got a new motion.  What kind of

20   record does the Court want here?  Why doesn't the Court

21   dismiss these motions -- sorry -- dismiss these objections

22   with leave to remove and do it on a consolidated, organized

23   basis, instead of this slipshod way that it's being handled

24   now?

25            I think the Court should direct the debtors, Your

Page 27

1    Honor, to do it over and do it right.  It's no additional

2    burden on the Court.  It's no extension of time, because the

3    discovery process is probably going to take, I think, a --

4    more than few months, six to nine months anyway, but there's

5    no reason why the Court shouldn't have a comprehensible

6    record that can be reviewed in an orderly way on appeal if

7    it goes that route.

8              THE COURT:  Okay.

9              Is there anyone else who wants to say anything at

10   this point?

11             MR. SCHAGER:  Thank you, Your Honor.

12             THE COURT:  By the way, I do not want this to

13   become another repeat of what happened last time.  In asking

14   someone else to speak, I am not inviting the room to get up.

15             So this had better be material, and it had better

16   be helpful.  This is not an opportunity for a gripe session.

17             MS. SOLOMON:  I fully understand that, Your Honor,

18   and I have no intention to make it so.

19             THE COURT:  What do you have to say?

20             MS. SOLOMON:  Your Honor, I represent a number of

21   RSU and CSA claimants, and I think that it may be apparent,

22   but I just wanted to emphasize to the Court, that the --

23   some of the claimants have organized in a group.  Your Honor

24   asked earlier how many counsel and pro se claimants there

25   were.  I would say there are approximately 10 to 15 counsel

Page 28

1    and 6, 7, 8, 9, 10 pro se claimants, in that neighborhood,

2    Your Honor.

3            One of the issues that we've been grappling with,

4    along with the debtors' counsel, is I, for one, and the

5    other -- other various counsel represent only their client,

6    and I understand the debtors are looking for some kind of

7    streamlined process, and we are making attempts to have a

8    streamlined process so that discovery can go forward in an

9    expedited fashion.  But I can only speak for my client and

10   not for the various other claimants in the group.  So that's

11   one of the issues that we're dealing with.

12           I would note for the Court that I am a little

13   disappointed with the lack of progress that's been made.  My

14   understanding is that -- and I was told by debtors' counsel

15   back in January that a pivotal set of documents, along with

16   a proposed stipulated set of facts would be circulated among

17   counsel.  We waited for a couple of months for that to

18   occur, and all we got was stipulated facts with no proposed

19   documents.

20           We, in turn, provided the debtors' counsel with a

21   list from a somewhat unified group of -- an informal list of

22   documents that we were seeking, and it also has been

23   proposed by one of claimants' counsel global procedures,

24   which hasn't been responded to, and we haven't received a

25   response to our proposed documents, but we're hopeful, Your

Page 29

1    Honor, that we can proceed in an expeditious fashion with

2    the debtors' counsel in a consensual manner, and, if that

3    can't occur, obviously, we'll be back before Your Honor.

4                THE COURT:  Okay.

5                MS. SOLOMON:  That was all I wanted to state for

6    the record, Your Honor.

7                THE COURT:  Okay.

8                MR. ABRAMOWITZ:  Your Honor, Steven Abramowitz, on

9    behalf of Lisa Marcus.  I'm not going to add too much.

10               I just wanted to identify to the judge that we're

11   hopeful the process is going to move better going forward,

12   because we've identified what I believe to be four groups,

13   and I passed along to debtors' counsel what I believe those

14   four groups are, have identified the lawyers, the pro se

15   claimants who are in those groups, and I think now that

16   we've kind of divided into -- if the debtors agree that

17   those are the appropriate four groups, I'm hopeful that the

18   distinguishing facts will allow the process to move forward.

19               Just for Your Honor's information, the four groups

20   that have identified and been speaking to counsel to try to

21   find out who's in those groups, which I've passed on to the

22   debtors, are, one, general RSU claimants; number two,

23   commissioned salespeople with respect to commissions earned

24   in 2008 for which RSUs were not issued; group number three,

25   Neuberger Berman employees; and, group number four, equity -

Page 30

1        - a different type of equity-like instrument.  I'm not

2        recalling the name, an ESL or an ECL.  So those are the four

3        types of groups that I -- I -- from what I -- we're aware

4        of, those are the only real four groups, and I passed that

5        along to the debtors, and we're looking forward that, with

6        that group, it'll be a much more efficient process.

7                  THE COURT:  Okay.  Thank you.

8                  MR. PLASKETT:  Good morning, Your Honor.  Rodney

9        Plaskett, appearing pro se.

10                 As a commissioned salesperson, I have responded to

11       each of Lehman's counsels' objections and motions, and the

12       most recent one having been their proposed stipulations,

13       wherein, as a person who is responding pro se, they still

14       continued to classify what I view as a sum certain as an

15       equity interest.  As pro se appearance and one not familiar

16       with the proceedings of Bankruptcy Court, each motion --

17       each time I respond is a new matter.

18                 So how, as a pro se person, do I become familiar

19       with how things will move forward from here, and, if we're

20       heading toward trial, how I will then be enabled to bring

21       forth an expert witness to lay out what I believe counsel

22       for debtors is totally missing in terms of understanding my

23       desire to recoup the sum certain versus their belief that

24       that sum certain is, in some way, an RSU?

25                 THE COURT:  Are you looking for an answer from me

1    to that question?

2         MR. PLASKETT:  In part, sir.

3         THE COURT:  I'm not sure that I can answer it

4    during the course of this status conference, but we'll talk

5    in a moment about the establishment of procedures that will

6    apply across the board to each of the four groups, and, if

7    it turns out that there's an additional group or another

8    sub-part, it will apply to these groups as further refined.

9         As an individual who is appearing without counsel,

10   you're making an election not to incur the expense of

11   outside counsel, and, as a member of a class, in many

12   respects, your situation, unless it's truly individual, will

13   be controlled by evidence presented with respect to the

14   class in which you're a member.

15        So I really can't answer the question you've

16   raised in isolation.  We're going to have to see how this

17   evolves.

18        MR. PLASKETT:  The -- the class of commissioned

19   salespersons is fairly small, and, in effect, we may be

20   forced into retaining counsel as a class of possibly as many

21   as -- as few as four individuals.  I -- I -- I believe from

22   the correspondence --

23        THE COURT:  That's -- that's your privilege.

24        MR. PLASKETT:  -- that --

25        THE COURT:  You can either appear on your own, or

Page 32

1    you can appear with counsel.  Ordinarily, in a federal

2    court, you're better off having a lawyer at your side.

3              MR. PLASKETT:  Understood.  It's -- I guess it's

4    the -- the pain of having a claim that's been going on for

5    several years then eaten into by legal fees, which is, of

6    course, the -- the cost of -- of appearance, in effect.  But

7    it -- it will -- it will be -- definitely help in terms of

8    administration to at least have some of the process laid out

9    so that, if we determine to move forward pro se, we'll have

10   the opportunity to accurately do so.

11             THE COURT:  Okay.  I understand your concern.

12             MR. PLASKETT:  You answered my question.

13             MR. HUTTON:  Good morning, Your Honor.  My name's

14   Randy Hutton.  I'm a pro se client -- claimant also.

15             I'm a little concerned about the group of the sub-

16   classes and how it relates to my client, which I feel is

17   sufficiently different from the general classes that were

18   laid out.  And, while I think I could benefit from the

19   discovery and have been on some of the e-mail chains as far

20   as the communications between some of these groups and the

21   debtor, that could be helpful.  However, I -- I am concerned

22   that it may end up being -- that I'd be part of a class that

23   my client doesn't really fit, and I'm not sure how that

24   should be resolved.

25             THE COURT:  Well, you're either a part of a class,

Page 33

1    or you're not.  I don't know enough about the specifics of

2    your claim to make a judgment yet as to whether you're by

3    yourself or whether you're really part of a class.  And that

4    remains to be determined.

5            MR. HUTTON:  At what point would that end up being

6    determined?  Would the debtor --

7            THE COURT:  I don't know yet.

8            MR. HUTTON:  -- just respond?

9            THE COURT:  We're going to talk some more about it

10   right now.

11           MR. HUTTON:  Okay.  All right.  Thank you, Your

12   Honor.

13           THE COURT:  Mr. Bernstein, there are some general

14   concerns expressed here as to the manner in which the

15   debtors have been managing the process, and you may want to

16   defend yourself and those who've been working on this from

17   the challenges that have been addressed by the first

18   speaker.  But I'm, frankly, less concerned about what

19   happened in the past or up to this point and more concerned

20   about procedures on a go-forward basis that are fair and

21   reasonable procedures, not only to the individuals who are

22   affected by this, but that also provide a rational basis for

23   grouping claimants and for presenting relevant information

24   to the Court so that I can make some thoughtful decisions

25   about this dispute.

Page 34

1          It has been suggested that, in effect, we start

2     over.  You don't need to respond to that.  We're not

3     starting over.  That's a completely inappropriate remark,

4     which I reject out of hand.

5          The omnibus claim procedures have been ongoing now

6     for a very long time, and, given the nature of those

7     procedures, omnibus objections are filed in groups.  I have

8     no control over the decision making of the debtor as to

9     which particular claims end up in which particular omnibus

10    objection.  That's a decision made by the debtor and its

11    counsel.

12         But, once an objection has been lodged and parties

13    have an opportunity to respond, it is either resolved as

14    uncontested, or it is a contested matter.  We have a series

15    of contested matters in reference to the RSU issues.  I

16    gather we are going to have additional objections addressed

17    to claimants whose claims are based on RSUs.

18         There is nothing administratively awkward, from my

19    perspective, in having a consolidated set of procedures that

20    apply to all similarly-situated RSU claimants, and it is

21    customary for this Court to consolidate matters of like

22    type.  So there is certainly nothing, under the rules or the

23    procedures of this Court, that would require a do-over, as

24    has been suggested.  So you don't have to respond to that.

25         MR. BERNSTEIN:  Thank you, Your Honor.  Again,

Page 35

1    Mark Bernstein, from Weil, on behalf of Lehman.  If I may go

2    back and respond to some of the statements that were made by

3    some of the claimants and counsel.

4         At the December hearing, there -- parties did

5    raise what they believed to be issues of fact, and Your

6    Honor did suggest that the debtors work with the claimants

7    to figure out the -- a process where we can come back to

8    court and -- and provide you with an -- an accurate and

9    factual record.

10        You mentioned the -- the issue that you had in --

11   in the LBI case where their parties did stipulate to facts,

12   and then, you also suggested, at the end, the parties work

13   together to provide a set of procedures to agree on whatever

14   that that -- that type of evidence would look like, whether

15   it be declarations, whether it be live evidence.

16        Given the large number of RSU claimants that we

17   were dealing with, we considered the matter and proposed to

18   use -- to have the debtors prepare a set of stipulated

19   facts.  We were going to go back and do our own diligence,

20   find the documents that we have, try to understand these

21   programs more thoroughly than perhaps we did the first time

22   and send that stipulated facts around to the group of -- of

23   parties that appeared at the hearing.

24        The debtors reported that that's what they were

25   going to do in January.  Nobody raised their hands.  Nobody

Page 36

1    asked any questions.  Nobody served any discovery.  Nobody

2    had any alternate procedures that they suggested at the

3    time.

4            So, following that, the debtors went back, spent a

5    fair amount of time talking to the client, looking through

6    records, finding the documents that we were able to find,

7    prepared the stipulated facts as we believed them to be

8    relating to these programs, attached the plan documents that

9    the debtors were able to locate, contrary to what

10   Ms. Solomon said.  We did attach -- the total stipulated

11   facts was a couple hundred pages.  We attached multiple plan

12   documents that we have to the -- to the set of stipulated

13   facts.

14           We gave parties three weeks to respond.  Only two

15   days before their deadline for responding, early in May,

16   just not more than three to four weeks ago, did this group

17   of creditors first -- for the first time, identify to us

18   that they wanted discovery, that they needed discovery

19   before they could respond to our stipulated facts, and they

20   served a 47 -- 47-point request for information, which was

21   extraordinarily broad.

22           We did also receive from Mr. Schager a counter-

23   proposal for the stipulated facts that's basically marked up

24   our stipulated facts, and we received from -- from Mr.

25   Shoughton (sic) some comments or some -- some points in our

1    stipulated facts which he disagreed with.

2            However, since the -- it -- it appeared from the

3    large group of people who served discovery that we were not

4    going to be able to agree to one set of stipulated facts

5    quickly with this group and -- and propose that to the

6    Court, we haven't responded to the counter-stipulated facts,

7    and we haven't responded to Mr. Shoughton (sic) to -- to

8    dispute or try to resolve those issues, because, clearly,

9    this is going down a more type ordinary litigation path

10   where there is going to be discovery, parties are going to

11   be -- require additional information, including Mr. Schager,

12   who's part of that group.

13           So, before we could even agree on a stipulated

14   facts and start negotiating what those facts look like,

15   these parties said they want discovery.  So it doesn't make

16   sense to negotiate stipulated facts when parties are saying,

17   "Well, I can't agree to these until you give me this

18   information."

19           So, at their request, we have decided, and we've

20   agreed, that we will go through this process with them.  We

21   will give them discovery to the extent reasonable, relevant,

22   and available, and we will work with them on -- on that

23   process.  And, once we have gone through that process, at

24   that time, we will be able to discuss then what the proper

25   means are to provide that evidence to the Court and come

1   back to the judge, Your Honor, for -- for a hearing.

2          That is not today.  We are not here -- contrary to

3   what some people are making arguments today, we're not here

4   seeking any kind of ruling from Your Honor today on these

5   matters.  So I vehemently dispute any argument that we have

6   not followed Your Honor's directions from the initial

7   hearing.

8          The -- the -- the other part of -- of that

9   hearing, Your Honor, asked us to prepare a -- a revised

10  reply, an annotated reply, which identified which arguments

11  in a reply related to which claimant.  We did that.  We

12  filed that.  We identified claimant by claimant, here are

13  the arguments we believe you raised in your responses, and

14  here's the part of our reply which relates to your -- which

15  relates to your response and to -- and to your claims.

16         So I -- I believe, and I -- I strongly believe

17  that we've followed everything that was requested of us.

18  We've been working with these groups of claimants on this

19  process.

20         One claimant raised that they've suggested a set

21  of procedures to -- and deadlines to deal with the discovery

22  process.  She failed to mention that they first provided

23  that to us yesterday for the first time.

24         We had a call with them yesterday afternoon to at

25  least discuss this process further, and we -- and -- and we

Page 39

1    had told them we would look at their procedures, and we

2    would set up further calls to discuss it.  We have not

3    gotten there yet.

4            This is a very difficult process for the debtors

5    to manage.  There's a dozen people here or so today.  There

6    is others who are not here, but who also have claims that

7    are pending.  There's about another hundred or so or more

8    claimants that will be included on the new objections, and

9    we're trying --

10           THE COURT:  Is that -- is that the end of it?  I

11   mean, when you say a hundred or so, will that, in effect, be

12   the entire remaining class of RSU claimants that will be the

13   subject of this process?

14           MR. BERNSTEIN:  Yes, the -- the objections that

15   will be filed in the next two weeks will include all

16   remaining claims that are based on RSUs that have been

17   identified.

18           As Your Honor knows, there are thousands of claims

19   in this case.  Sometimes claims are filed a little less

20   clear than others.  Some of them say RSU.  It's very clear

21   it's an RSU claim.  Some of them just say employee

22   compensation, and we learn at a later date that it's an RSU

23   claim.  We're -- but, as far as we are aware, the objections

24   filed in the next two weeks will result in objections being

25   filed to the entire universe of RSU claims.

1          THE COURT:  Okay.

2          Now, one of the things that makes this a

3    challenging administrative problem, principally for debtors'

4    counsel at this point, but, frankly, it's a problem that

5    each affected claimant also shares, is that, in some

6    instances, we have parties who are represented by

7    sophisticated counsel.  In some instances, we have parties

8    who are simply acting on their own as pro se claimants.

9          We have individuals who say, "I don't think I'm

10   part of any group," as one individual just said publicly,

11   and others who presumably would acknowledge that they are

12   part of a group.  So it seems to me that we start out with

13   what is fundamentally a classification problem in a series

14   of related objections that do not fit within classic class

15   action procedures, although we are dealing with an

16   identified class, not too numerous to identify, because we

17   have, in fact, identified them, who either have already

18   interposed responses to the omnibus objection with respect

19   to the RSU claims, or who, in the future, may do so and, in

20   part, because of the communications that I assume are taking

21   place among affected claimants, it is -- and I'm just

22   predicting -- more likely than not that you are going to get

23   responses to the next wave of omnibus objections that relate

24   to RSU claims.

25          Whereas earlier claimants, before this process

1    became joined through objections, simply allowed the omnibus

2    objection to be presented and, in effect, for defaults to be

3    entered.  So we end up on a class-wide basis with disparate

4    results, which is something that I'm concerned about, but

5    really can't do much about at this point.

6          We have those parties who some time ago received

7    omnibus objections, did nothing, and their claims have been

8    disallowed.  We have a group that is now in the midst of

9    litigation that hasn't yet been fully formed, and we have a

10   group that hasn't yet even received notice that their claims

11   are going to be the subject of the future omnibus objection,

12   but we know they will be.

13         We are only dealing now with the class that's

14   before the Court.  That class being those who are the

15   subject of a pending RSU omnibus objection that have either

16   individually or through counsel responded to say, "Not so

17   fast.  Don't treat these as equity claims."

18         Fundamentally, we are dealing with an issue of

19   law.  However, as a result of the last conference that we

20   had, it is apparent that these are not all identical.  And

21   so, the challenge, for the claimants and for the debtor, is

22   to come up with a set of procedures that work for those who

23   are in litigation so that we can get to the finish line.

24   Otherwise, this becomes an unduly burdensome process, both

25   for the parties and for the Court.

1              So what I said last time -- and I appreciate the

2      fact that what I say is then read, and people think about

3      well -- did everybody, in fact, follow my prescription for

4      the case?  And, based upon what I've observed, I think the

5      answer is mostly yes, but this is also a process which is

6      not written down in any set of precedental rules that we can

7      easily follow.

8              We're dealing with something that's highly unusual

9      in the context of the claims administration process in this

10     case.  For the most part, the claim objection process in the

11     Lehman Brothers bankruptcy cases has involved sophisticated

12     institutional players.

13             Here, we are dealing with, for the most part,

14     sophisticated individual claimants who used to work for

15     Lehman or for Lehman affiliates.  We are, in effect, dealing

16     with the most sympathetic group of claimants you can

17     identify, people who had absolutely nothing to do with

18     Lehman's failure, but who are nonetheless victimized by that

19     failure, along with the claimants from around the world who

20     were victimized by that failure.

21             But the mere fact that they have sympathetic cases

22     to present doesn't change the legal analysis, and the mere

23     fact that they choose not to engage counsel doesn't make it

24     easier for them to present a case or to somehow escape the

25     consequences of what may be a group outcome.  So what I am

Page 43

1   encouraging is that, over the next period of time -- and

2   this is a difficult exercise -- the parties organize

3   themselves as best they can in logical groups, consider

4   retaining counsel or joining with others, to the extent that

5   makes sense, but there's no obligation to do so, and anyone

6   who is a pro se claimant who chooses to participate in this

7   litigation, which is ultimately being managed by counsel,

8   may be okay.

9            But let's recognize something.  There will be a

10  group outcome, unless somebody can demonstrate that they are

11  distinguishable from the group, and I'm not taking

12  volunteers who are raising hands.  There's really -- there's

13  really nothing more to say on the subject, except that the

14  burden is really on the debtor and its counsel, and the

15  parties who are presently involved in this process to come

16  up with procedures that actually work.

17           It's also important that we not unduly complicate

18  a matter that is probably fairly simply when we come right

19  down to it.  You're talking about the proper classification

20  of claims in a bankruptcy case, which claims are based upon

21  somewhat complicated instruments, but those instruments

22  ultimately give the holder a right to equity.

23           MR. BERNSTEIN:  Your Honor, the -- the debtors

24  agree with everything that you've just said.  We -- we --

25  and we do -- we are -- having received the document request

Page 44

1   and having -- since -- in discussions with the group, we

2   believe we're in the early stages of forming procedures that

3   will address the -- the difficulties of the process of

4   dealing with so many people, some represented by counsel,

5   some not, and we -- we'll continue to work with the group to

6   come up with procedures that work for everybody.

7            That -- that is our -- that is our goal, and that

8   is, quite frankly, the only way that this gets done, if we

9   have procedures that work for the group, and everybody can

10  get information that they believe they need.  And then,

11  people can -- will have their day in court before Your

12  Honor, once we have the facts set up.  And, if they don't

13  believe they're part of any group, they're welcome to make

14  those arguments at that time and try to distinguish themself

15  from a group or from the prior precedent and try to figure

16  this out.

17           If they are a group, are not in a group, they'll

18  be able to make those arguments.  I don't know that that's

19  something we need to determine today.

20           THE COURT:  We're not determining anything today.

21  The only thing that we're doing today is identifying the

22  fact that we still have a lot of work to do.

23           MR. BERNSTEIN:  Yes, and we will -- we will get to

24  work with this group and -- and try to come up with a

25  process that works for everyone.

Page 45

1        THE COURT:  Now, what I'd like to suggest is the

2    possibility of a future chambers conference for purposes of

3    facilitating procedures that are now being developed, to the

4    extent that there are problems in coming up with consensual

5    procedures.  I recognize that, with so many parties involved

6    and with so many lawyers involved, none of whom have group

7    representation responsibility, that the potential for

8    disagreements probably multiply.

9        So, to the extent that the parties, acting in good

10   faith, are unable to reach understandings on procedural

11   issues, I'm simply letting you know that I'm available for

12   appropriate chambers conferences.  But, just because I'm

13   saying that, I'm not inviting a chambers conference.  I'm

14   actually encouraging the parties to work this out without

15   having to -- to come to a referee or a hall monitor.  But,

16   if that's necessary, I'm here.

17        MR. BERNSTEIN:  I understand, Your Honor.  We will

18   see if we can work this out consensually.

19        THE COURT:  There is someone who is raising his

20   hand for some reason.

21        MR. PLASKETT:  Can I reapproach the bench?

22        THE COURT:  You may approach again, but you have

23   to recognize that, just because you don't have a lawyer,

24   doesn't make it easier to speak in court, and somehow,

25   you're gaining the advantage of podium time that even

1    lawyers are choosing not to take, suggesting that maybe it's

2    not a good idea to be coming to the podium.

3         (Laughter)

4              THE COURT:  What do you have to say?

5              MR. PLASKETT:  Just that I would have preferred to

6    avoid litigation, and, to the extent that litigation can be

7    avoided, I would appreciate your considering the class of

8    commissioned salespersons being designated as a class and

9    having the opportunity to sit down with debtors' counsel to

10   discuss the matter, because maybe there aren't that many

11   issues that we're actually disagreeing on, and thus, a

12   resolution could be -- could come to some of those

13   individuals and be resolved.

14             THE COURT:  You -- you don't need me, and you

15   don't need to say that to always have the opportunity to

16   attempt to work things out consensually, if that can be

17   done.  That's available to every claimant and to every

18   class.

19             MR. PLASKETT:  But, until this time, we've just

20   been hit with motions, and we've responded, and I will try

21   to do that, Your Honor.

22             THE COURT:  Okay.

23             MR. PLASKETT:  Thank you.

24             THE COURT:  I think that takes care of the status

25   conference for this matter.

Page 47

1          MR. BERNSTEIN:  Your Honor, the next item on the

2     agenda is the one hundred and eighty-ninth --

3          THE COURT:  Oh, if anybody wishes to depart, now

4     that we've covered the status conference, you're free to go.

5          MR. BERNSTEIN:  All right.  Again, Mark Bernstein

6     from Weil, on behalf of Lehman.

7          The next item on the agenda is the one hundred and

8     eighty-ninth omnibus objection to claims.  This was an

9     objection seeking to expunge a claim -- claims based under

10    purchase agreements for which LCPI did not have any

11    liability.  We had come before Your Honor on this objection

12    once before, and counsel for Marquette and Highland

13    Strategies both opposed the objection.

14         We filed a declaration of Tom Rogers explaining

15    Lehman's position as to why we did not believe this was an

16    LCPI liability under the repo, but rather an LBI liability.

17    Marquette has agreed that, based on that declaration, they

18    no longer wish to contest this omnibus objection, and, as a

19    result, we're going forth just with respect to Marquette on

20    an uncontested basis.

21         I understand that Highland still believes they

22    have a claim against LCPI, and I think we're going to

23    schedule that contested hearing for June.  But the objection

24    with respect to Marquette is going forward on an uncontested

25    basis, and respectfully request Your Honor grant the hundred

1    and eighty-ninth objection with respect to Marquette.

2              THE COURT:  It's granted on an uncontested basis.

3              MR. BERNSTEIN:  Thank you, Your Honor.

4              I will turn the podium over to my colleague, Eric

5    Kasenetz, to handle the next two items on the agenda.

6              MR. KASENETZ:  Morning, Your Honor.  This is Eric

7    Kasenetz, of Weil, Gotshal & Manges, on behalf of the Lehman

8    Chapter 11 debtors.

9              Your Honor, the next uncontested item on the

10   agenda is the one hundred and fifty-ninth omnibus objection

11   to claims.  This objection sought to disallow and expunge

12   certain claims based on Lehman program securities, to the

13   extent such securities failed to include valid electronic

14   reference numbers or blocking reference numbers, as required

15   by this Court's bar date order.

16             Claim 45218, filed by Corner Banca SA is the last

17   claim on this objection that has not been previously

18   disallowed by this Court or otherwise resolved.  Claim 45218

19   included two purported blocking numbers relating to the same

20   security for different amounts.

21             The first blocking number, 6054668, related to

22   amounts totaling $3,030.06.  The second blocking number,

23   6165089, related to amounts totaling $7,575.15.  The one

24   hundred and fifty-ninth omnibus objection indicated it was

25   an objection to the portion of the claim in the approximate

Page 49

1    amount of $3,000.  This was an error, and the debtors had

2    actually intended to object to the portion of the claim in

3    the approximate amount of $7,500.

4         The debtors adjourned the one hundred and fifty-

5    ninth omnibus objection and, in a footnote to the -- to the

6    adjournment, indicated the correct portion of the claim that

7    the debtors were seeking to disallow and expunge,

8    specifically the amount totaling approximately $7,500

9    relating to invalid blocking number 6165089.

10        To provide further clarify to the claimant, on

11   February 7th, 2012, the debtors sent a letter to Corner

12   Banca explaining that, although the debtors originally --

13   originally objected to claim 45218 in the amount of

14   $3,030.06, the debtors subsequently realized that the

15   relevant securities amounted to $7,575.15.  The letter

16   provided Corner Banca 30 days from the date of mailing of

17   the letter to contest the disallowance and expungement.

18        Your Honor, I do have a copy of this letter, if

19   you wish to review it.

20        THE COURT:  I'll be happy to look at it.  Thank

21   you.

22      (Pause)

23        THE COURT:  Okay.

24        MR. KASENETZ:  Your Honor, no response was

25   received by the March 8th, 2012 response deadline that's set

Page 50

1    forth in the letter.  As such, we have prepared a

2    supplemental order expunging the portion of claim 45218

3    relating to ISN (ph) XS0282978666 in the amount of $7,575.15

4    for which Corner -- Corner Banca provided invalid blocking

5    number 6165089.  And, with this, we request that Your Honor

6    grant an order disallowing this portion of the Corner Banca

7    claim on an uncontested basis.

8            THE COURT:  It's granted on an uncontested basis.

9            MR. KASENETZ:  The next item on the agenda is the

10   debtors' one hundred and seventy-third omnibus objection to

11   claims.  This objection sought to disallow claims that were

12   filed based on deferred compensation plans or agreements for

13   which the debtors have no liability.

14           The holder of claim number 10698, Burkhard Spring,

15   filed a response to the debtors' objection.  We have spoken

16   with Burkhard Spring, and, at this time, he no longer wishes

17   to pursue his response to the objection and consents to the

18   claim being disallowed.  So, with that, we request that Your

19   Honor grant an order disallowing the claim of Burkhard

20   Spring.

21           THE COURT:  It's granted on consent.

22           MR. KASENETZ:  Your Honor, the next item of the

23   agenda will be handled an attorney -- an attorney from

24   Curtis, Mallet.  Thank you.

25           MS. GIGLIO:  Good morning, Your Honor.

Page 51

1  Cindi Giglio, from Curtis, Mallet-Prevost, Colt & Mosle, on

2  behalf of Lehman Brothers Holdings, Inc.

3              Your Honor, on February 3rd, 2012, the debtors

4  filed the two hundred and fifty-sixth omnibus objection to

5  claims.  The purpose of this claim was to -- of this

6  objection was to disallow claims based on contracts that

7  were assigned to Barclays, and, therefore, of no further

8  liability to the debtors.  On March 23rd, Your Honor entered

9  -- entered an order disallowing most of the claims that were

10  attached to that objection.

11              Responses were filed by Cushman & Wakefield and

12  Standard & Poor's.  LBHI has since resolved the two hundred

13  and fifty-sixth omnibus objection with respect to the claims

14  filed by Standard & Poor's and Cushman & Wakefield, and both

15  parties have consented to having its claims listed on

16  Exhibit 1 to the supplemental order disallowed.  As such, we

17  request that the Court grant a supplemental order

18  disallowing these particular claims.  May I hand up the

19  order?

20              THE COURT:  It's granted on an uncontested basis.

21              MR. WIN:  Good morning, Your Honor.  Zaw Win, from

22  Weil, Gotshal & Manges, for Lehman Brothers Holdings, Inc.

23  We're now moving on to the contested portion of the hearing.

24              The first matter before the Court this morning is

25  the plan administrator's objection to the claims filed by

Page 52

1    Kathleen Arnold and Timothy Cotten.  This is at docket

2    number 27263.  And the claims at issue in this claims

3    objection have been assigned claim number 23453431334320 by

4    the debtors' claims and noticing agent.

5            There was one response that was filed to the plan

6    administrator's objection, which was styled as a request for

7    extension of time to submit objection to debtors' March 2012

8    discharge and plan administrator's objection to claims.  The

9    debtors are not entirely certain what the import of this

10   document is.  There was no specific deadline by which the

11   claimants apparently sought to seek an extension, and it

12   wasn't clear if they wanted an extension of the hearing or

13   just the response deadline, but, as of five p.m. yesterday,

14   they had not filed a response to the plan administrator's

15   objection.

16           THE COURT:  Are Kathleen Arnold and Timothy Cotten

17   on the telephone today?

18       (No audible response)

19           THE COURT:  I hear no response to that question,

20   so I assume the answer is they're not present by telephone,

21   and they're not here in person.

22           Is there anyone representing them in court today?

23       (No audible response)

24           THE COURT:  Apparently, this is a contested

25   matter, but the claimants, having filed a request to extend

Page 53

1    time, have not appeared to prosecute that request or to

2    explain their position.

3            I'm familiar with these claimants because of a

4    prior pending adversary proceeding in which Kathleen Arnold

5    and Timothy Cotten, as plaintiffs, brought actions against

6    LBHI arising out of mortgage foreclosure proceedings in

7    Maryland, which have been fully prosecuted to the level of

8    the Fourth Circuit Court of Appeals.  It's unclear to me

9    whether or not there is a direct relationship between the

10   claim that is the subject of the pending objection and the

11   adversary proceeding, but I assume it's the same matter; is

12   that correct?

13           MR. WIN:  That's consistent with the debtors'

14   understanding, Your Honor.

15           THE COURT:  What are you looking for today, what

16   kind of relief?

17           MR. WIN:  We'd like to have the claims disallowed,

18   Your Honor.

19           THE COURT:  And, if the claims were disallowed,

20   what impact, if any, would that have on the pending

21   adversary proceeding complaint, which is the subject of a

22   motion to dismiss, but there has never been, as far as I

23   know, a formal argument with respect to the merits of that

24   motion to dismiss?

25           MR. WIN:  That's correct, Your Honor.  If -- if

Page 54

1    you recall, at a hearing last June, you strongly suggested

2    to the claimants that they seek to obtain counsel to

3    represent them in that matter.

4              THE COURT:  I recall that very well.

5              MR. WIN:  And, since that time, the debtors have

6    not received any communications from them, but we wanted to

7    -- well, one, we wanted to ensure that they had a -- a

8    sufficient opportunity to take Your -- Your Honor's

9    suggestion, and then, second, there have obviously been

10   other significant matters in the case that have required the

11   debtors' attention.

12             If you recall, the basis of the debtors' objection

13   -- or motion to dismiss in the adversary proceeding was

14   based on lack of subject matter jurisdiction, and so, the

15   debtors intend to take that up shortly.  I suppose, if the

16   claims are expunged, it would also moot a portion of the

17   adversary proceeding, but -- I don't specifically recall,

18   but I think there may have been a portion of the adversary

19   proceeding that was seeking declaratory or injunctive

20   relief.  And, if that is the case, then that would still be

21   an open issue.

22             THE COURT:  One of the things that makes this

23   difficult from an administrative perspective is that

24   Kathleen Arnold and Timothy Cotten responded to the plan

25   administrator's objection and did so with a pleading that is

Page 55

1   filled with legalese, but is not clearly understandable to a

2   reader, except it appears to be asking for an adjournment,

3   because it is requesting an extension of time to respond.

4   So I'm going to treat the motion to extend time to submit

5   objection that was filed at ECF number 27705 as the

6   functional equivalent of a request for an adjournment so

7   that these claimants can more formally respond to the plan

8   administrator's objection, and I'm going to grant that

9   request and have this adjourned to a date that is the same

10  date as the date for hearing a motion to dismiss the

11  adversary proceeding so that all matters relating to the

12  claims of Kathleen Arnold and Timothy Cotten can be heard at

13  one time.

14          MR. WIN:  Should that be --

15          THE COURT:  Also -- excuse me.  Also, because

16  these individuals appear to be continuing to represent

17  themselves and, I assume, have determined that they are

18  unable to obtain counsel or have chosen not to retain

19  counsel, they should be given formal notice of any hearing

20  to be held on the motion to dismiss, which is still pending.

21          Now, I recognize that, in the ordinary course of

22  scheduling, matters on the adversary docket are not heard at

23  the same time as matters relating to claims, but, in this

24  instance, I would make an exception.  And, depending on the

25  convenience of the parties, this matter can be consolidated

Page 56

1    with the adversary proceeding and heard at the same time.

2    Whether it's on a claims day or on an adversary day, I'm

3    indifferent.

4              MR. WIN:  Thank you, Your Honor.

5              I believe the next matter is being prosecuted by

6    Curtis, Mallet.

7              THE COURT:  Okay.

8              MS. GIGLIO:  Good morning again, Your Honor.

9    Cindi Giglio, from Curtis, Mallet-Prevost, Colt & Mosle, on

10   behalf of Lehman Brothers Holdings, Inc.

11             We're here today on LBHI and the creditors'

12   committee's objection to proof of claim number 67911, filed

13   by Highbridge International LLC.  The objection was filed on

14   March 20th, 2012.  Highbridge filed its response on May

15   14th, 2012, and a reply was filed by the objectors on

16   Tuesday afternoon.

17             The objection seeks to disallow claim number 67911

18   as an untimely amendment and on the basis that the claims

19   asserted therein are duplicative of claims that were

20   disallowed pursuant to a court-ordered settlement agreement

21   between, among other entities, Highbridge and LBHI.  Because

22   the releases granted under the settlement agreement are

23   central to the current dispute, I would like to spend a few

24   minutes addressing the terms of the settlement agreement, if

25   it's okay with Your Honor.

1           THE COURT:  That's okay.

2           MS. GIGLIO:  The settlement agreement represented

3    a resolution of the two hundred and twenty-ninth omnibus

4    objection to proofs of claim.

5           THE COURT:  Let me -- let me just break in one

6    second, though.

7           MS. GIGLIO:  Yes, Your Honor.

8           THE COURT:  I've read these papers, and I'm

9    certainly familiar with the settlement agreement, which was

10   approved, I believe, in February.

11          MS. GIGLIO:  Correct.

12          THE COURT:  At the time that it was approved, I

13   had, frankly, no specific knowledge that Highbridge was

14   affected by it, directly or indirectly, because I viewed it

15   as a settlement with the funds managed by JPMorgan Chase,

16   and I gather that Highbridge falls within that category.

17          I am familiar with the legal arguments that are

18   being made here and with the background, so we don't need to

19   belabor it.  You're certainly free to go into such

20   background as you wish to, however.

21          But, as I have read the arguments, one of the

22   things that, frankly, confuses me is how it was possible for

23   something like this to be left as a loose end, and so much

24   money is involved, it appears to me that this is either a

25   situation of a failure of parties to have clearly

Page 58

1   communicated with each other or a situation of hiding the

2   ball, and I'm not sure which it is.  But I don't like either

3   possible interpretation.

4           Because the facts, to my mind, are not free from

5   doubt, it appears to me that this is a situation that may

6   require discovery and the presentation of some evidence as

7   to what the parties were up to when they were negotiating

8   the settlement and issuing letters of direction concerning

9   claims and using words that are ambiguous with respect to

10   claim amendments.

11           I don't like this at all.  I am very unhappy that

12   a matter of this sort is being presented for adjudication

13   and that the parties have not engaged in some effort to

14   reconcile their differences, but, just because I don't like

15   it doesn't mean that we don't have to deal with it.  It is

16   highly unlikely that either side will win on the papers

17   today.

18           MS. GIGLIO:  Your Honor, I just want to address

19   what you said, briefly.  I -- I don't think that LBHI knows

20   whether this was a miscommunication or a hiding of the ball.

21   What we do know and why we think you can rule on the papers

22   today is based on the terms that what we believe are the

23   clear and unambiguous terms of the settlement agreement,

24   which allowed for -- and the joint instruction letter, which

25   allowed for the amendment of amounts as -- as well as the --

1          THE COURT:  I don't think that's unambiguous.  I

2     -- and -- and, with respect to your argument, it's subject

3     to multiple interpretations.

4          Does an amendment of amount subsume a

5     reclassification, or does it exclude a reclassification?

6     Depending on how you read the words, it could either exclude

7     or include.  Depending on what the parties intended, it

8     could exclude or include.  Depending on the course of

9     dealings leading up to the documentation and the express

10    intent of the parties, not the subjective intent, it could

11    have different meaning.  So I understand your argument, but

12    I am unlikely to agree with it.

13          MS. GIGLIO:  I understand, Your Honor.

14          You know, I just -- one other point, which I --

15    another provision of the joint instruction letter, which I

16    do think informs what amounts was set to mean was that

17    schedule 3 of the joint instruction letter, which is where

18    the Highbridge proofs of claim fell, lists the reduced

19    amount for the prior proof of claim as $41 million, give or

20    take, and notes that that amount was subject to further

21    challenge by the debtors, and the way that this reduced

22    amount was arrived at was by disallowing the amounts

23    identified in the proof of -- prior proof of claim as

24    arising under Highbridge's prime brokerage relationship with

25    LBIE.  And this bucket of disallowed claims included the $25

Page 60

1    million in what we're calling revised guarantee claims that

2    Highbridge is now repackaging as arising under new

3    guarantees in their amended proof of claim.

4              Your Honor, --

5              THE COURT:  I'm just not prepared to rule on the

6    papers on this, and that doesn't mean that you can't

7    continue to argue what you're arguing.  I don't mean to be

8    unresponsive to your argument.  But, as I've read the

9    papers, I don't see how I can rule on the basis of legal

10   argument as to something that, to me, is facially ambiguous.

11             MS. GIGLIO:  I understand, Your Honor.

12             Just want to make a few --

13             THE COURT:  But I also don't like the fact that

14   this happened at all.  This is a sophisticated fund that

15   appears to have engaged in sharp practices.  So I'm not real

16   happy about it.  Amounts like this should not just pop up

17   under a general reference to, "Well, we can amend."

18             It seems like tricks were played here.  I don't

19   like it at all, but that doesn't mean that I can rule your

20   favor today.

21             MS. GIGLIO:  I understand.

22             THE COURT:  So I think what you should really be

23   thinking about is a schedule to get to the facts so those

24   facts can be presented to me, and I can make some judgments

25   as to how this mess happened in the first place.

1                MS. GIGLIO:  Understood, Your Honor.  Thank you.

2                MR. CLARK:  Your Honor, Jared Clark, Bingham

3       McCutchen, for Highbridge International, LLC.

4                I've heard what Your Honor has said, and I don't

5       intend to present.

6                THE COURT:  You're not going to win today, and you

7       may never win.

8                MR. CLARK:  Agreed, Your Honor.  Agreed, Your

9       Honor.

10               What I wanted to say for the record is that we

11      believe that the evidence will show that, at the time the

12      settlement agreement was entered into, it was very clear

13      that, when the construct was developed, that we would get

14      rid of the September -- the settled guarantees, the

15      September 2008 guarantees and the board resolution and --

16      and Standard & Poor's guarantees, that all other claims,

17      which affected some 70 funds, almost a hundred proofs of

18      claim, many of which had many different components, those

19      would all be reassigned to the funds and would be excluded

20      claims under the settlement.

21               We were negotiating a global concept deal, and

22      then, the joint instruction letter was meant to give claim-

23      by-claim effect to that global resolution, which pertained

24      solely to the settled guarantees.  So we think that it never

25      came up, because it was never on the table, because it was

Page 62

1    expressly excluded from the parties' negotiations.  But I've

2    heard Your Honor.  I understand that there's not going to be

3    a ruling today.  I just wanted to make that statement for

4    the record.

5            THE COURT:  Okay.  I think what the parties should

6    do is return to the table, both to discuss how to develop a

7    factual record that will support their respective positions,

8    and this doesn't need to be a prolonged process, because it

9    all relates to a particular time and place.  Presumably, the

10   parties who negotiated this can be readily identified, and

11   they can be deposed, if necessary, but I also think that the

12   parties should be exploring ways to resolve the underlying

13   business dispute that is reflected here.

14           I'm not accusing anybody of anything.  It's just

15   that a documentation of a settlement that is immediately

16   followed by conduct that one party finds abhorrent and the

17   other party says is consistent with the understandings

18   reached raises a whole bunch of questions in my mind that

19   need to be answered before I can rule.

20           So this will be adjourned to another day, after

21   you've had a chance to present an appropriate record for me.

22   If there is a need for a formal evidentiary hearing, that

23   will be scheduled on a day that is not a claims day, but

24   rather a separate day for purposes of presenting appropriate

25   testimony and documents.  I suspect I have seen most of the

1  documents, but I haven't heard from those parties who

2  negotiated them and drafted them.  Okay?

3           MR. CLARK:  Understood, Your Honor.  Thank you.

4           THE COURT:  We're adjourned.

5       (Whereupon these proceedings were concluded at 11:19

6  AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 64

```
 1                          I N D E X

 2

 3                          RULINGS

 4                                         Page      Line

 5     Debtors' One Hundred Eighty-Ninth    48         2

 6     Omnibus Objection to Claims [ECF No. 19870]

 7

 8     Debtors' One Hundred Fifty-Ninth     50         8

 9     Omnibus Objection to Claims [ECF No. 18407]

10

11     Debtors' One Hundred Seventy-Third   50        21

12     Omnibus Objection to Claims [ECF No. 19399]

13

14     Debtors' Two Hundred Fifty-Sixth     51        20

15     Omnibus Objection to Claims [ECF No. 24933]

16

17     Plan Administrator's Objection to    55         8

18     Claims [ECF No. 27263]

19

20

21

22

23

24

25
```

Page 65

1                  C E R T I F I C A T I O N

2

3    I, Nicole Yawn, certified that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7        Nicole Yawn    Digitally signed by Nicole Yawn
                         DN: cn=Nicole Yawn, o=Veritext, ou,
8                        email=digital@veritext.com, c=US
                         Date: 2012.06.04 14:44:12 -04'00'

         NICOLE YAWN

9

10

11

12

13

         Veritext

14

         200 Old Country Road

15

         Suite 580

16

         Mineola, NY  11501

17

18

         Date:  June 3, 2012

19

20

21

22

23

24

25