# United States Bankruptcy Court
## Southern District of New York

In re: Lehman Brothers Holdings Inc                    Case No.    08-13555 (JMP)

## TRANSFER OF CLAIMS OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001 (e) (2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| **Yorvik Partners LLP** | **Mediolanum International Life Limited** |
|---|---|
| Name of Transferee | Name of Transferor |
| Name and Address where notices to transferee should be sent: | Court Claim # (if known):    21859 |
| | Amount of Claim:  100% which is equal to US$ 5,213,872.00 |
| 11 Ironmonger Lane London EC2V 8EY UK Tel: + 44 20 7796 5906 Email: l.king@yorvikpartners.com | Date Claims Filed:    21 September 2009 |

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____                    Date: 15 June 2012
        Transferee/Tranferee's Agent

_Penalty for making a false statement:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

## ASSIGNMENT OF CLAIM AGREEMENT

ASSIGNMENT OF CLAIM AGREEMENT ("Agreement") dated as of May 24, 2012 by and between Mediolanum International Life Limited ("Seller") and Yorvik Partners LLP ("Purchaser"; Seller and Purchaser are referred to herein collectively as the "Parties" and individually as a "Party").

### RECITALS

A.      Seller and Lehman Brothers International (Europe) ("LBIE") are party to that certain ISDA Master Agreement dated as of March 14, 2005 (the "ISDA Master Agreement").

B.      Lehman Brothers Holdings Inc. ("LBHI"; and, together with LBIE, the "Debtors") is a Credit Support Provider under the ISDA Master Agreement.

C.      Pursuant to the ISDA Master Agreement, Seller and LBIE entered into the transactions described in the LBHI Proof of Claim (as such term is defined herein).

D.      On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), and is currently in proceedings for reorganization in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), administered under Chapter 11 Case No. 08-13555 et seq. (the "LBHI Proceedings").

E.      On September 15, 2008, LBIE went into administration in England pursuant to the provisions of the Insolvency Act 1986 (the "LBIE Proceedings" and, together with the LBHI Proceedings, the "Proceedings").

F.      On or about September 25, 2008 by notice to LBIE (the "Termination Notice"), Seller terminated the ISDA Master Agreement and determined the termination amount under the ISDA Master Agreement (the "Termination Amount").

G.      Seller filed the LBHI Proof of Claim (as such term is defined herein) on September 21, 2009 [also reference any amendments].

H.      Seller filed (i) the LBHI Derivative Questionnaire (as such term is defined herein) on October, 19 2009 and (ii) the LBHI Guarantee Questionnaire (as such term is defined herein) on October, 19 2009

I.      Seller filed the LBIE Proof of Claim (as such term is defined herein) on October 11, 2010.

1

J.        On or about April 24, 2012 Seller and LBIE entered into a Claims Determination Deed (the "Claims Determination Deed") pertaining to the Claim (as such term is defined herein).

K.        Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Transferred Rights (as such term is defined herein) on the terms and conditions set forth herein.

## AGREEMENT

In consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.        Seller's Claims. Seller hereby represents and warrants to Purchaser and Purchaser's successors and assigns as of the Effective Date that:

(a)        a proof of claim, dated October 11, 2010 (the "LBIE Proof of Claim"), has been duly and timely filed by Seller against LBIE in the amount of £2,848,461.62 (the "LBIE Proof of Claim Amount") on the applicable form provided by the Joint Administrators of LBIE as contemplated by, and Seller has otherwise complied with, the applicable procedures set forth in that certain Order of the High Court of Justice date stamped 2 December 2009 and the Notice of Intended Dividend Pursuant to Rule 2.95 of the Insolvency Rules 1986 and the prescribed method for the submission of claims as posted on the website maintained by the Joint Administrators at http://www.pwc.co.uk/eng/issues/lehmans_stakeholder_creditors.html. A true and complete copy of the LBIE Proof of Claim is attached to this Agreement as Exhibit A-1 (such claim is hereinafter referred to as the "LBIE Claim");

(b)        a proof of claim, date-stamped September 21, 2009 and assigned claim number 21859 (the "LBHI Proof of Claim"), has been duly and timely filed by Seller against LBHI in the amount of $5,213,872.00 (the "LBHI Proof of Claim Amount") [also reference any amendments] [, in each case] on the applicable form provided by LBHI as contemplated by, and Seller has otherwise complied with the applicable procedures set forth in that certain Order pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Dkt. No. 4271) (the "Bar Date Order"), and a true and complete copy of the LBHI Proof of Claim is attached to this Agreement as Exhibit A-2 (such claim is hereinafter referred to as the "LBHI Claim" and, together with the LBIE Claim, the "Claim");

(c)        a Derivative Questionnaire (as such term is defined in the Bar Date Order) has been duly and timely electronically filed by Seller against LBHI in accordance with the terms of the Bar Date Order (the "LBHI Derivative Questionnaire"), and a true and complete copy of the LBHI Derivative Questionnaire is attached to this Agreement as Exhibit B;

2

(d)  a Guarantee Questionnaire (as such term is defined in the Bar Date Order) has been duly and timely electronically filed by Seller against LBHI in accordance with the terms of the Bar Date Order (the "LBHI Guarantee Questionnaire"; and, together with the LBHI Derivative Questionnaire, the "Questionnaires"), and a true and complete copy of the LBHI Guarantee Questionnaire [and the amendments thereto] is attached to this Agreement as Exhibit C; and

(e)  a Claims Determination Deed, dated as of April 24, 2012 was entered into by and between Seller and LBIE, admitting the LBIE Claim as a general unsecured claim against LBIE under the LBIE Proceedings in the amount of [amount] (the "LBIE Admitted Claim Amount") and a true and complete copy of the Claims Determination Deed is attached to this Agreement as Exhibit D; and

(f)  if requested to do so by LBIE, Seller agrees it will sign a no client money waiver

The procedures described above and in the Bar Date Order are referred to herein as the "Derivatives Claim Procedures".

2.  Assignment of Seller's Claims.

(a)  In consideration of the mutual covenants and agreements in, and subject to the terms and conditions of, this Agreement:

(i)  subject to the satisfaction or waiver of the conditions in Section 4(b), Seller irrevocably sells, transfers, assigns, grants and conveys the Transferred Rights to Purchaser with effect on and after the Effective Date; and

(ii)  subject to the satisfaction or waiver of the conditions in Section 4(a), Purchaser irrevocably acquires the Transferred Rights with effect on and after the Effective Date.

(b)  As used herein, the following terms shall have the meanings set forth below:

"Average LIBOR" means (i) the sum of all the individual LIBOR for each day in the applicable period, divided by (ii) the total number of days in such period.

"LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day. For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day

"Transferred Rights" means, collectively, the Transferred LBIE Rights and the Transferred LBHI Rights.

3

"Transferred LBHI Rights" means all of Seller's right, title and interest in, to and under:

(i)     the LBHI Claim, including, without limitation, "claims" as defined in Section 101(5) of the Bankruptcy Code, any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the LBHI Claim (in each case whether accruing prior to, on or after the date of this Agreement), and, to the extent relating to the LBHI Claim, accounts, accounts receivable and other rights and interest of Seller against LBHI, including, without limitation, all of Seller's right, title and interest in, to and under (A) the LBHI Proof of Claim; and (B) all rights to receive any cash, interest, penalties, fees, damages and/or other amounts received in respect of or in connection with the LBHI Claim;

(ii)    any actions, claims, rights, lawsuits and/or causes of action, whether against LBHI or any other party, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LBHI Claim;

(iii)   all rights in, to and under any collateral or guarantees related to the LBHI Claim;

(iv)    all cash, securities, instruments and other property which may be paid or distributed by LBHI in satisfaction of LBHI Claim under or pursuant to any plan of reorganization or liquidation in the LBHI Proceedings, any redemption, restructuring or other liquidation or otherwise; and

(v)     all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing.

"Transferred LBIE Rights" means all of Seller's right, title and interest in, to and under:

(i)     the LBIE Claim, including, without limitation, any and all right to receive principal, interest, fees, damages, penalties, dividends and other amounts in respect of the LBIE Claim (in each case whether accruing prior to, on or after the date of this Agreement), and, to the extent relating to the LBIE Claim, accounts, accounts receivable and other rights and interest of Seller against LBIE, including, without limitation, all of Seller's right, title and interest in, to and under (A) the LBIE Proof of Claim, (B) the Claims Determination Deed, and (C) all rights to receive any cash, interest, penalties, fees, damages, dividends and/or other amounts received in respect of or in connection with the LBIE Claim;

(ii)    any actions, claims, rights, lawsuits and/or causes of action, whether against LBIE or any other person, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LBIE Claim;

4



(iii)    all rights in, to and under any collateral or guarantees related to the LBIE Claim;

(iv)    all cash, securities, instruments and other property which may be paid or distributed by LBIE or any office-holder in relation to the LBIE Claim under or pursuant to (A) the LBIE Proceedings or (B) any receivership, administration, liquidation, provisional liquidation, dissolution, voluntary arrangement, scheme of arrangement, any insolvency procedure under the Insolvency Act 1986 or any other procedure under any law of any jurisdiction of or having a similar or analogous nature or effect (each an "Insolvency Proceeding") in relation to LBIE;

(v)    all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing; and

(vi)    all rights to lodge, withdraw, supplement or amend the LBIE Proof of Claim and any supporting documentation relating to the LBIE Claim in the LBIE Proceedings or in any other Insolvency Proceeding in relation to LBIE.

(c)    Notwithstanding any other term of this Agreement, the sale and assignment of the Transferred Rights shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction, and not an assignment or transfer to or assumption by Purchaser of any obligation or liability of Seller under or in connection with the Transferred Rights, any and all of which obligations and liabilities are and shall remain Seller's obligations and liabilities.

5



3.      Purchase Price. The consideration to be paid by Purchaser to Seller is the sum of (a) the
product of the LBHI Purchase Rate (as specified in the purchase price letter dated the date hereof
between Purchaser and Seller (the "Purchase Price Letter")) and the LBHI Proof of Claim
Amount (the "LBHI Purchase Price") and (b) the product of the LBIE Purchase Rate (as
specified in the Purchase Price Letter; and each of the LBIE Purchase Rate and the LBHI
Purchase Rate, as applicable, the "Purchase Rate") and the LBIE Admitted Claim Amount (the
"LBIE Purchase Price"; and the sum of the LBHI Purchase Price and the LBIE Purchase Price
being the "Purchase Price"). Upon the satisfaction of the conditions set forth in Section 4(a),
Purchaser shall pay to Seller the Purchase Price by wire transfer of immediately available funds
to Seller's account specified on Schedule 1. The date the Purchase Price is paid shall be
hereinafter referred to as the "Effective Date". For the avoidance of doubt, Purchaser shall be
entitled to retain, but shall not be under any obligation to pay Seller further consideration with
respect to, (i) any amounts allowed or admitted in excess of the LBIE Admitted Claim Amount
that are allowed in final non-appealable form, or admitted for distribution, in the LBIE
Proceedings or (ii) any amounts allowed in excess of the LBHI Proof of Claim Amount that are
allowed pursuant to a Final LBHI Order.

        As used herein, a "Final LBHI Order" shall mean an order of the Bankruptcy Court
which fully and finally determines the amount and the priority of the LBHI Claim and which
does not preserve for any person the right to seek to re-determine the amount or priority of the
LBHI Claim and which has not been reversed, stayed, modified, or amended and as to which (i)
any appeal taken, petition for certiorari or motion for rehearing or reconsideration that has been
filed, has been finally determined or dismissed in a manner that does not affect the Bankruptcy
Court's determination of the allowed amount or treatment of the LBHI Claim or (ii) the time to
appeal, seek certiorari or move for reconsideration or rehearing has expired and no appeal,
petition for certiorari or motion for reconsideration or rehearing has been timely filed.

4.      Conditions Precedent.

        (a)     Purchaser's obligations to pay the Purchase Price to Seller and to acquire the
Transferred Rights on the Effective Date shall be subject to the conditions that:

                (i)     Seller's representations and warranties in this Agreement shall be true and
        correct on the Effective Date;

                (ii)    Seller shall have complied in all material respects with all covenants
        required by this Agreement to be complied with by it on or before the Effective Date; and

                (iii)   Purchaser shall have received (A) this Agreement duly executed on behalf
        of Seller, (B) the Purchase Price Letter duly executed on behalf of Seller, (C) a transfer
        notice in the form attached hereto as Exhibit E (the "LBHI Transfer Notice") evidencing
        the transfer of the Transferred LBHI Rights to Purchaser under Rule Bankruptcy Rule
        3001(e), duly executed on behalf of Seller, and to be filed with the Bankruptcy Court, (D)
        a transfer notice giving notice to the Administrators in the LBIE Proceedings (the

6



"Administrators") that Seller has assigned its entitlement in respect of any dividend in relation to the LBIE Claim to Purchaser in the form of the "Transfer Notice" as defined in the Claims Determination Deed and attached to this Agreement as Exhibit F (the "LBIE Transfer Notice") duly executed on behalf of Seller, and (D) a notice pursuant to rule 11.11 of the Insolvency Rules 1986 giving notice to any liquidator of LBIE that Seller has assigned its entitlement in respect of any dividend in relation to the LBIE Claim to Purchaser in the form attached to this Agreement as Exhibit G (the "Notice to Liquidator") (the documents referenced in clauses (A) through (G), collectively, the "Assignment Documents").

(b)     Seller's obligation to sell, transfer, assign, grant, and convey the Transferred Rights to Purchaser on the Effective Date shall be subject to the conditions that:

(i)     Purchaser's representations and warranties in this Agreement shall be true and correct on the Effective Date;

(ii)     Purchaser shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Effective Date; and

(iii)     Seller shall have received (A) this Agreement duly executed on behalf of Purchaser, and (B) the Purchase Price Letter duly executed on behalf of Purchaser, (C) the Transfer Notice duly executed on behalf of Purchaser, and (D) payment of the Purchase Price from Purchaser.

5.     Mutual Representations of Seller and Purchaser. Each of Seller and Purchaser hereby represents and warrants to the other Party, and to the other Party's successors and assigns, as of the Effective Date that:

(a)     it is duly organized and validly existing under the laws of its jurisdiction of organization, in good standing under such laws, and has full power and authority and has taken all action necessary to execute and deliver each Assignment Document and to perform its obligations under each Assignment Document and to consummate the transactions contemplated by each Assignment Document;

(b)     the making and performance by it of each Assignment Document does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound;

(c)     each Assignment Document has been duly and validly authorized, executed and delivered by it and is legal, valid, binding and enforceable against it in accordance with its terms except that the enforceability may be limited by bankruptcy, insolvency or laws governing creditors rights;

7

(d)    except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required to be obtained or made by it as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(e)    it is an "accredited investor" as such term is defined in Regulation D under the Securities Act of 1933, as amended;

(f)    it acknowledges that (i) the other Party currently may have, and later may come into possession of, information relating to the Transferred Rights, Debtors, or Debtors' affiliates or the status of the Proceedings that is not known to it and that may be material to a decision to buy or sell the Transferred Rights and all related rights (as appropriate) (the "Excluded Information"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Transferred Rights and all related rights (as appropriate) hereunder without receiving the Excluded Information, and (iii) the other Party shall have no liability to it, and each Party waives and releases any claims that it might have against the other Party or the other Party's officers, directors, employees, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that each Party's Excluded Information shall not and does not affect the truth or accuracy of such Party's representations or warranties in this Agreement;

(g)    it is aware that the Purchase Price may differ both in kind and amount from any distributions or dividends ultimately made (i) pursuant to any plan of reorganization confirmed by the Bankruptcy Court in the LBHI Proceedings or (ii) in the LBIE Proceedings or in any other Insolvency Proceeding in relation to LBIE; and

(h)    it has adequate information concerning the business and financial condition of the Debtors, the Transferred Rights and the status of the Proceedings in order to make an informed decision regarding the purchase and sale of the Transferred Rights, and it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities in this Agreement.

6.    Additional Representations and Warranties of Seller. Seller hereby represents and warrants to Purchaser and to Purchaser's successors and assigns as of the Effective Date that:

(a)    no objection to the LBIE Claim, the LBHI Claim or the other Transferred Rights has been made or exists and there are no offsets or defenses that have been or may be asserted by or on behalf of any Debtor or any other party to reduce the amount of the Transferred Rights or to reduce the value of the Seller's Claims as compared to other general unsecured claims;

8

(b)     the LBIE Claim is an admitted general unsecured claim against LBIE in the aggregate principal amount not less than the LBIE Admitted Claim Amount, and no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred LBIE Rights;

(c)     the aggregate principal amount of the LBHI Claim is not less than $5,213,872.00, and no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred LBHI Rights;

(d)     Seller is the sole legal and beneficial owner of and has good and marketable title to the Transferred Rights, free and clear of any and all liens, claims, security interests, participations, or encumbrances of any kind or nature whatsoever and will transfer to Purchaser such good and marketable title to the Transferred Rights, free and clear of any and all liens, claims, security interests, participations, or encumbrances of any kind or nature whatsoever;

(e)     Seller (i) has not previously sold, conveyed, transferred, assigned, participated, pledged or otherwise encumbered the Transferred Rights, in whole or in part, to any party (or agreed to do any of the foregoing) and (ii) is the original holder of the Transferred Rights;

(f)     there are no preference actions against Seller or the Transferred Rights, and no legal or equitable defenses, counterclaims or offsets, reductions, recoupments, impairments, avoidances, disallowances or subordinations have been or may be asserted by or on behalf of any Debtor to reduce the amount of the Transferred Rights or affect their validity or enforceability;

(g)     Seller has not engaged, and shall not engage, in any acts, conduct or omissions, and Seller has not had (and shall not have) any relationship with any Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Rights proportionately less in payments or distributions or less favorable treatment than other general unsecured creditors of such Debtor;

(h)     the Transferred Rights are not subject to or governed by that certain Claim Resolution Agreement declared effective on 29 December 2009 by LBIE  (the "CRA"); Seller has not submitted, and covenants with the Purchaser that it will not submit, a form of acceptance in relation to the CRA or otherwise accede to the CRA or its terms in any manner; and Seller has not received any notice that the Transferred Rights are subject to the CRA;

(i)     Seller does not, and did not on the date of the commencement of the Proceedings against any Debtor, hold any funds or property of such Debtor or any affiliate of such Debtor, and has not effected or received, and shall not effect or receive, the benefit of any setoff against any Debtor;

(j)     Seller has not received any notice that the Transferred Rights are void or voidable or subject to any disallowance, reduction, impairment or objection of any kind;

9

(k)    Seller is not an "affiliate" or "insider" within the meaning of 11 U.S.C. Sections 101 (2) and 101(31), respectively, and is not, and has not been, a member of any official or unofficial creditors' committee appointed in the Proceedings;

(l)    Seller is not, and never has been, "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or within the meaning of Section 101(32) of the Bankruptcy Code;

(m)    Seller has no obligation or liability related to or in connection with Seller's Claims or the Proceedings;

(n)    Seller has provided to LBIE true, complete and accurate copies of each of the documents, notices and agreements substantiating the LBIE Claim, each as amended through the date of the Claims Determination Agreement;

(o)    the execution, delivery and performance of the Claims Determination Deed by each of Seller and LBIE are within each of their respective corporate powers and have been duly authorized by all necessary action;

(p)    the Claims Determination Deed constitutes valid and legally binding agreements of each of Seller and LBIE, enforceable against each of them in accordance with its terms;

(q)    all conditions to the effectiveness of the Claims Determination Deed have been duly satisfied or waived;

(r)    there are no other agreements that affect or may affect the Claims or the LBIE Admitted Claim Amount other than the Claims Determination Deed; and

(s)    the designation of the Early Termination Date under and as defined in the ISDA Master Agreement, giving rise to the Seller's Claims, was effected by Seller in accordance with the terms of the ISDA Master Agreement and not in violation of any law to which Seller or the Proceedings are subject;

(t)    Seller has fulfilled all of its obligations to the Debtors under, and has not and will not breach any terms or provisions of the Claims Determination Deed;

(u)    the amount payable by the Debtors in respect of the Early Termination Date has been correctly calculated (including but not limited to the conversion of currencies) by Seller in accordance with the terms of the ISDA Master Agreement, and is accurately reflected in the Proofs of Claim which was filed through the online creditor portal at https://dm.pwc.com/lbie_cip on 11th October, 2010;

10



(v)    Seller has fulfilled all of its obligations to the Debtors under, and has not breached any terms or provisions of the ISDA Master Agreement, and Purchaser shall assume no obligations or liabilities in respect of the Seller's Claims or the ISDA Master Agreement; and

(w)    either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights. As used herein, "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan."

7.    Additional Representations and Warranties of Purchaser. Purchaser hereby represents and warrants to Seller and to Seller's successors and assigns as of the Effective Date that:

(a)    Purchaser is entitled to receive any payments and distributions to be made to it hereunder without the withholding of any tax; and will furnish to Seller such forms, certifications, statements and other documents as Seller may request from time to time to evidence Purchaser's exemption from the withholding of any tax imposed by any jurisdiction or to enable Seller to comply with any applicable laws or regulations relating thereto;

(b)    Seller has furnished Purchaser with such information as Purchaser has requested in connection with its investigation and Purchaser is assuming all risk with respect to the sufficiency of such information; and

(c)    either (i) no interest in the Transferred Rights is being acquired by or on behalf of an Entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Purchaser's rights thereunder.

11

8.     Acknowledgments.

        (a)     Purchaser acknowledges that (i) Seller makes only the representations and
warranties set forth above, (ii) the transfer of the Transferred Rights by Seller to Purchaser is
irrevocable and is without representation or warranty, whether express or implied, of any kind or
character by Seller except as expressly provided in this Agreement, (iii) Seller makes no
representation or warranty and assumes no responsibility with respect to any statements,
warranties, or representations made by any person other than Seller in or in connection with the
LBHI Proof of Claim or the LBIE Proof of Claim or the execution, legality, validity, or
enforceability (with respect to any person other than Seller) of the LBHI Proof of Claim or the
LBIE Proof of Claim; (iv) Seller makes no representation or warranty and assumes no
responsibility with respect to the financial condition, creditworthiness, properties, affairs, status
or nature of the Debtors or the performance or observance by the Debtors of any of their
respective obligations under the LBHI Proof of Claim or the LBIE Proof of Claim or any other
instrument or document and (v) Purchaser shall have no recourse to Seller, except for (x) Seller's
breaches of its representations, warranties, or covenants and (y) Seller's indemnities, in each case
as expressly stated in this Agreement.

        (b)     Seller acknowledges that (i) its sale of the Transferred Rights to Purchaser is
irrevocable and (ii) Seller shall have no recourse to Purchaser, except for (x) Purchaser's
breaches of its representations, warranties, or covenants and (y) Purchaser's indemnities, in each
case as expressly stated in this Agreement.

9.     Indemnification and limitation of liability.

        (a)     Seller agrees to indemnify, defend and hold Purchaser and Purchaser's respective
officers, directors, employees, agents and controlling persons and their respective successors and
assigns (collectively, the "Purchaser Indemnitees") harmless from and against any and all
expenses, losses, claims, damages, suits, proceedings, objections and liabilities which are
incurred by or threatened against the Purchaser Indemnitees or any of them, including, but not
limited to, attorneys' fees and expenses, caused by, or in any way resulting from or relating to:
(i) the breach of any of Seller's representations, warranties, agreements or covenants set forth in
this Agreement or (ii) any obligation to disgorge to or to reimburse or pay any person for any
payments, property or collateral actually received or applied by Seller under or in connection
with the Transferred Rights.

        (b)     Notwithstanding any other provision of this Agreement, the total aggregate limit
of the Seller's liability to the Purchaser (to include its successors and assigns) whether in
contract, tort, negligence, strict liability, by statute, by indemnification or otherwise under or in
connection with or arising from this Agreement (including but not limited to for (i) the breach of
any of Seller's representations, warranties, agreements or covenants set forth in this Agreement
or (ii) any indemnification by the Seller of the Purchaser (to include its successors and assign)
under this Agreement) will not exceed an amount equal to the cash amount which the Seller

12



receives from the Purchaser as consideration for the sale of the Transferred Rights pursuant to this Agreement (the "Maximum Liability Amount"). Following the discharge of the Maximum Liability Amount by the Seller, the Purchaser shall have no further recourse against the Seller.

(c)    Purchaser agrees to indemnify, defend and hold Seller and Seller's officers, directors, employees, agents and controlling persons and their respective successors and assigns (collectively, the "Seller Indemnitees") harmless from and against any and all expenses, losses, claims, damages, suits, proceedings and liabilities which are incurred by or threatened against the Seller Indemnitees or any of them, including, but not limited to, attorneys' fees and expenses caused by, or in any way resulting from or relating to, the breach of any of the representations, warranties, agreements or covenants of Purchaser set forth in this Agreement. For the avoidance of doubt, the Seller and Purchaser have agreed that the maximum amount for which the Seller can have recourse against the Purchaser pursuant to this Agreement is the Maximum Liability Amount. Following the discharge of the Maximum Liability Amount by the Purchaser, the Seller shall have no further recourse against the Purchaser

10.    Attorney-In-Fact; Settlement of Seller's Claim; Further Actions.

(a)    Seller hereby irrevocably appoints Purchaser as its true and lawful attorney-in-fact solely with respect to the Transferred Rights, and authorizes Purchaser to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such amounts which are, or may hereafter become, due and payable for or on account of the Transferred Rights herein assigned. Seller hereby grants unto Purchaser full authority to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder. Seller agrees that the powers granted in this paragraph are discretionary in nature and exercisable at the sole option of Purchaser. Purchaser shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Transferred Rights. In the event an objection to the LBIE Claim or the LBHI Claim is received by Seller, Seller shall make best efforts to notify Purchaser in writing and shall take such further action, at the expense of the Purchaser, as may reasonably be necessary to facilitate the Purchaser in its upholding and defending of the Claim and effect this Agreement and any payments or distributions on account of the Transferred Rights to Purchaser including, for example, the execution of appropriate transfer powers, corporate resolutions, consents and powers of attorney.

(b)    Seller shall not compromise or settle the Transferred Rights or change the LBIE Admitted Claim Amount or the LBHI Proof of Claim Amount without the prior written consent of Purchaser. In performing any of its obligation under this Section 10 and in otherwise complying with its obligations under this Agreement, Seller hereby covenants and agrees to act reasonably at all times and to maximize the amount of the Claim and to minimize the amount of time in which all components of the Transferred Rights are quantified and paid.

(c)    Seller agrees promptly to forward to Purchaser all notices received from any Debtor, the Bankruptcy Court, the Administrators or any third party with respect to the

13



Transferred Rights assigned herein, to vote the Transferred Rights assigned herein in a timely manner and in accordance with Purchaser's instructions, and to take such further action with respect to the Transferred Rights in the Proceedings as Purchaser may from time to time request.

(d)     Seller further agrees that if Seller receives any distributions on account of the Transferred Rights, whether in the form of cash, securities, instruments or any other property, the aforementioned shall constitute property of the Purchaser to which the Purchaser has an absolute right. Seller shall hold such property in trust and will at its own expense, deliver to Purchaser any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Purchaser within two business days of receipt in the case of cash and five business days in the case of securities. Should all or any portion of the distributions on account of the Transferred Rights not be assignable by Seller to Purchaser, then Seller grants to Purchaser a participation interest in the Transferred Rights or such distributions, in accordance with applicable law.

11.     Miscellaneous.

(a)     Further Assurances. Each of the Parties hereto agrees to execute and deliver, or cause to be executed and delivered, all such instruments and documents (including, without limitation, any supporting documents evidencing the Transferred Rights), and to take all such action as the other Party may reasonably request, promptly upon the request of such other Party and at each Party's own expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement and to cause Purchaser to become the legal and beneficial owner and holder of the Transferred Rights. This Clause 11(a) will apply only until such time as the Purchaser has been formally acknowledged as the sole claimant for the Transferred Rights by the relevant administrators for both LBIE and LBHI. Following such acknowledgement the Seller's interest in the Transferred Rights will be formally extinguished and there will exist no obligation on the Seller to execute and deliver, or cause to be executed and delivered, any instruments and documents, or to provide any information whatsoever, in connection with the Transferred Rights. The Purchaser acknowledges that it will act promptly and without delay to formally register its claim to the Transferred Assets

(b)     Further Transfers. Seller hereby acknowledges that Purchaser may at any time reassign any or all of the Transferred Rights, together with all right, title and interest of Purchaser in and to this Agreement.

(c)     Survival. All representations, warranties, covenants and agreements contained herein shall survive the Effective Date and the execution, delivery and performance of this Agreement and any sale, assignment, participation or transfer by Purchaser of any or all of the Transferred Rights, and shall inure to the benefit of Seller, Purchaser and their respective successors and assigns; provided, however, that the obligations of Seller and Purchaser contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied.

14



(d)     Interest. If either Party fails to make a payment or distribution to the other Party within the time period specified in this Agreement, the Party failing to make full payment of any amount when due shall, upon demand by the other Party, pay such amount due together with interest on it for each day from (and including) the date when due to (but excluding) the date when actually paid at a rate per annum equal to Average LIBOR plus 5%.

(e)     No Set-Off. Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.

(f)     Governing Law; Jurisdiction; Service of Process. The laws of the State of New York shall govern this Agreement, without regard to any conflict of laws provisions thereof. Each Party submits to the jurisdiction of the federal or state courts located in the County of New York, State of New York and agrees that any litigation relating to this Agreement shall be brought only in such courts. Each Party consents to service of process by certified mail at its address listed in Schedule 2 hereto.

(g)     Counterpart Execution. This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all of which, together constitute one and the same instrument. Transmission by facsimile or electronic mail of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

(h)     WAIVER OF JURY TRIAL. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)     3001(e) Transfer. Seller hereby acknowledges and consents to all terms set forth in this Agreement and hereby waives its right to raise any objection thereto and its right to receive notice pursuant to Bankruptcy Rule 3001(e), and consents to the substitution of Seller by Purchaser for all purposes in the LBHI Proceedings, including, without limitation, for voting and distribution purposes with respect to the Transferred Rights. Purchaser agrees to file a LBHI Transfer Notice with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e).

15



(j)    Tax Forms. Purchaser hereby agrees to provide to Seller such forms, certifications, statements and other documents as Seller may request from time to time to evidence Purchaser's exemption from the withholding of any tax imposed by any jurisdiction or to enable Seller to comply with any applicable laws or regulations relating thereto.

(k)    Notices; Payments by Wire Transfer. All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth on Schedule 2 hereto, or such other address as may be furnished hereafter by notice in writing. All payments by Seller to Purchaser and Purchaser to Seller under this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds to Seller and Purchaser, as applicable, in accordance with the wire instructions specified in Schedule 1.

(l)    Integration. This Agreement, together with any schedules and exhibits hereto, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written. There are no warranties, representations or other agreements between the Parties in connection with the subject matter hereof except as specifically and expressly set forth herein.

(m)    Captions and Headings. The captions and headings in this Agreement are for convenience only and are not intended to be full or accurate descriptions of the contents thereof. Such captions and headings shall not be deemed to be part of this Agreement and in no way define, limit, extend or describe the scope or intent of any provisions hereof.

(n)    Severability. If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

(o)    Confidentiality. Each Party agrees that except (i) as may be compelled by legal process, by an order, judgment or decree of a court of other governmental authority of competent jurisdiction or (ii) disclosures to its own employees, professionals or representatives, it shall not disclose to any person the existence of, or terms and conditions of, this Agreement or any document executed or delivered in connection herewith, except that Purchaser may disclose this Agreement and any document executed or delivered in connection herewith (but not the Purchase Price or the Purchase Price Letter) to any prospective purchaser or transferee of all or any portion of the Transferred Rights, provided that such prospective purchaser or transferee

16

shall be advised of and agree to be bound by either the provisions of this Section 11(o) or other provisions at least as restrictive as this Section 11(o).

 (p) Amendments; Waivers.

  (i) No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall effective only in the specific instance and for the specific purpose for which given.

  (ii) No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of each Party provided herein and in other related documents (A) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (B) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

 (q) Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

  [Remainder of page intentionally left blank; signatures follow on next page]

17



IN WITNESS WHEREOF, the undersigned have executed and delivered this Agreement as of the date first stated above.

MEDIOLANUM INTERNATIONAL LIFE
LIMITED

By:_____

   Name:

   Title:

MEDIOLANUM
INTERNATIONAL LIFE
MEDIOLANUM GROUP
Michael Brady
Managing Director

YORVIK PARTNERS LLP

By:_____

   Name:

   Title:

LARS LEMONIUS
PARTNER

18



**EXHIBIT A-1**
**LBIE PROOF OF CLAIM**

**EXHIBIT A-2**
**LBHI PROOF OF CLAIM**

20

**EXHIBIT B**

**LBHI DERIVATIVE QUESTIONNAIRE**

**EXHIBIT C**

**LBHI GUARANTEE QUESTIONNAIRE**

22

**EXHIBIT D**

**CLAIMS DETEREMINATION DEED**

23

**EXHIBIT E**
**FORM OF LBHI TRANSFER NOTICE**

**EXHIBIT F**

**FORM OF LBIE TRANSFER NOTICE**

25

## EXHIBIT G

## FORM OF NOTICE TO LIQUIDATOR

From:
[Name of Seller]
[Seller's address]

(the "Seller")

To:
The Liquidators
Lehman Brothers International (Europe)

Copy:
[Name of Purchaser]
[Purchaser's address]

(the "Purchaser")

Date:


Dear Sirs:

**Notice of assignment of dividend from liquidation of Lehman Brothers International (Europe)**

The Seller is a person entitled to a dividend or dividends from the estate of Lehman Brothers International (Europe) ("LBIE"), in respect of its claim arising under an ISDA Master Agreement dated [__] as described more particularly in an Assignment of Claim Agreement dated [__].

The Seller hereby gives notice to any Liquidators of LBIE, pursuant to rule 11.11 of the Insolvency Rules 1986, that the Seller's entitlement to such dividend or dividends (including all interim and final dividends) has been assigned to the Purchaser and requests that the Administrators pay such dividend to the Purchaser accordingly.

Payment is to be made by the Liquidators to:

[Name of Purchaser]

26

[Address of Purchaser]

Yours faithfully

[Name of Seller]

## SCHEDULE 1

## WIRE INSTRUCTIONS

### Assignor Payment Instructions:

**GBP Payment Instructions:**

BIC: LOYDGB2LXXX
Bank: Lloyds Bank
Sort Code: 16-57-66
A/C: 01020235
Beneficiary: State Stree Bank and Trust Co.
Further A/C of: Mediolanum International Life Limited
Ref: LBIE

### Assignee Payment Instructions:

**USD Payment Instruction:**

BIC: BARCGB22
Bank: Barclays Bank, London
SC: 20-47-35
IBAN: GB25 BARC 2047 3563 0519 55
A/C: 63051955
Beneficiary: Yorvik Partners LLP
Local Correspondent Bank: BARCUS33, Barclays Bank, New York
ABA: 026002574
Ref: LBIE

**GBP Payment Instruction:**

BIC: BARCGB22
Bank: Barclays Bank, London
SC: 20-47-35
A/C: 33754367
IBAN: GB95 BARC 2047 3533 7543 67
Beneficiary: Yorvik Partners LLP
Ref: LBIE

28

## SCHEDULE 2

### NOTICE ADDRESSES

**Assignpr Address for Notices:**

Address:
Mediolanum International Life Ltd
Block B
Iona Building
Shelbourne Road
Dublin 4
Ireland

**Assignee Address for Notices:**

Address:
Yorvik Partners LLP
11 Ironmonger Lane
London EC2V 8EY
United Kingdom

Attn: Lisa King/Lars Lemonius

Telephone: +44 20 7796 5906/5902

Fax: +44 20 7796 5919

Email: l.king@yorvikpartners.com / l.lemonius@yorvikpartners.com