**SUPPLEMENTAL RESPONSE / MEMORANDUM OF MRS. S.A.B. VAN ROOY (CLAIMNUMBER 54549) TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
OF SEPTEMBER 16, 2011 TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM AND
IN THE ALTERNATIVE, TO RECLASSIFY THESE CLAIMS AS EQUITY INTERESTS**

**&**

**RESPONSE OF MRS. S.A.B. VAN ROOY TO DEBTORS' OMNIBUS REPLY OF APRIL 21, 2012
TO RESPONSES TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
TO CLAIMS**

# EXHIBIT II

**Dated 3rd January, 2007**

**LB GP NO. 1 LTD.**
**as General Partner**

**and**

**THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**

**and**

**LB INVESTMENT HOLDINGS LTD.**
**as Preferential Limited Partner**

**and**

**LEHMAN BROTHERS HOLDINGS INC.**
**as Guarantor**

---

**LIMITED PARTNERSHIP AGREEMENT**
**establishing**
**LEHMAN BROTHERS UK CAPITAL FUNDING IV LP**

---

# ALLEN & OVERY

**ALLEN & OVERY LLP**
**LONDON**

# CONTENTS

|  |  | Page No |
|---|---|---|
| 1. | Definitions and interpretation | 2 |
| 2. | Formation, Nature and Term of the Issuer | 5 |
| 3. | Management of the Issuer | 10 |
| 4. | Commitments | 15 |
| 5. | Capital Contributions | 16 |
| 6. | Preferred Securities | 18 |
| 7. | Preferential Limited Partner | 19 |
| 8. | Registration of Partnership Interests | 19 |
| 9. | Certificates of Preferred Securities | 19 |
| 10. | Transfer of interests in the Issuer | 20 |
| 11. | Capital Accounts | 23 |
| 12. | Allocation of Income and Distributions | 23 |
| 13. | Books, Records and Accounts | 24 |
| 14. | Withdrawal/Replacement of the General Partner | 24 |
| 15. | Partnership Finances | 25 |
| 16. | Dissolution of Partnership | 25 |
| 17. | Partnership Meetings | 27 |
| 18. | Undertakings of LBHI | 31 |
| 19. | General | 32 |
| Schedule 1 - Part I Form of Global Certificate for Preferred Securities | | 36 |
| Schedule 1 - Part II Form of Certificate for Preferred Securities | | 38 |

**THIS LIMITED PARTNERSHIP AGREEMENT** is made on 3rd January, 2007

**BETWEEN:**

1.  **LB GP NO. 1 LTD.,** a company incorporated in England and Wales with registered number 5355491 whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom (the **General Partner**);

2.  **THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED,** a company incorporated in England and Wales with registered number 03227439 whose registered office is at One Canada Square, London E14 5AL (**BNY**);

3.  **LB INVESTMENT HOLDINGS LTD.,** a company incorporated in England and Wales with registered number 4385277 whose registered office is at 25 Bank Street, London E14 5LE (the **Preferential Limited Partner**); and

4.  **LEHMAN BROTHERS HOLDINGS INC.,** a corporation established in Delaware with limited liability (**LBHI**).

**WHEREAS** the General Partner has agreed to become the general partner and the Preferential Limited Partner has agreed to become a limited partner in a limited partnership (the **Partnership**) to be formed under the Limited Partnerships Act 1907 (the **Act**) under the name Lehman Brothers UK Capital Funding IV LP in accordance with the terms and conditions set out in this Agreement and which is referred to herein as the **Issuer**.

**WHEREAS** it is the intention of the parties that BNY, being a nominee for a common depositary for Euroclear and Clearstream, Luxembourg (each as defined below), is to become a limited partner in the Partnership on the Closing Date (as defined below). BNY (acting as principal and not as agent) is party to this Agreement for the purpose of agreeing to become a Limited Partner (as defined below) and agreeing to be bound by the terms of this Agreement as they apply to Limited Partners on and from its admission to the Issuer in accordance with sub-clause 2.6(c), and agreeing to make its Capital Contribution (as defined below) as set out in clauses 4 and 5 on the Closing Date.

**WHEREAS** LBHI is not, and will not become, a partner (general or limited) in the Issuer and LBHI is a party to this Agreement solely for the purposes of acknowledging its terms, agreeing to any actions stated to be performed by LBHI in the Conditions and clause 18.

**NOW IT IS HEREBY AGREED** as follows:

1.  **DEFINITIONS AND INTERPRETATION**

    1.1.  **Definitions**

        In this Agreement, terms defined in the Conditions shall have the same meaning elsewhere in this Agreement subject to the provisions of this clause and unless the context otherwise requires; and

        **Accounts** means the annual accounts of the Issuer prepared in accordance with the provisions of sub-clause 13.2;

        **Administration Agreement** means the agreement between LBHI, the Issuer (acting through the General Partner) and the Administrator to be dated the Closing Date setting out the detailed duties of the Administrator in respect of the operation of the Partnership;

**Administrator** means The Law Debenture Trust Corporation p.l.c., or any successor appointed by the General Partner from time to time to perform the functions described in sub-clause 3.3(d);

**Aggregate Capital Contributions** means the aggregate Capital Contributions made to the assets of the Issuer by all parties;

**Agreement** means this Limited Partnership Agreement, as originally executed and as the same may be amended from time to time in accordance with its provisions, as the context requires;

**Auditors** means the auditors of the Issuer appointed from time to time pursuant to sub-clause 15.2;

**Capital Account** shall have the meaning specified in clause 11;

**Capital Contribution** means a contribution of capital made to the assets of the Issuer by a Partner which, in the case of each of the General Partner and the Preferential Limited Partner shall be the amounts as specified in sub-clauses 4.1 and 4.4 respectively and, in the case of the Initial Limited Partner, shall be the Preferred Capital Contribution as specified in sub-clause 5.1(b);

**Certificate** means a certificate issued in respect of one or more Preferred Securities issued pursuant to clause 9 hereof;

**Clearstream, Luxembourg** means Clearstream Banking, société anonyme;

**Closing Date** means the date as specified in the Subscription Agreement on which the sum referred to in clause 5.1 (b) (as the proceeds from the issue of the Preferred Securities) is paid;

**Commitment** means any amount of capital contributed to the Issuer and any amount of capital agreed to be contributed by any Partner to the assets of the Issuer pursuant to clause 4 hereof;

**Conditions** means the terms and conditions which will attaching to the Preferred Securities as set out in preliminary Prospectus dated 2nd January, 2007, (i) provided that to the extent there are any differences or inconsistencies between the conditions appearing in such preliminary Prospectus and in the Prospectus, the version appearing in the Prospectus shall prevail, (ii) as modified by the final terms for the issue of the Preferred Securities signed by the General Partner on behalf of the Issuer, (iii) as may be further modified at any time between the date of signing of the Subscription Agreement and the Closing Date such modification to be evidenced by a supplement to the Prospectus approved by the United Kingdom Financial Services Authority in its capacity as listing authority and (iv) as may be further modified from time to time in the manner envisaged in the Conditions;

**Euroclear** means Euroclear Bank S.A./N.V.;

**FSMA** means the Financial Services and Markets Act 2000;

**General Partner Partnership Interest** means the aggregate partnership interest of the General Partner from time to time in the Partnership Assets;

3

**Incapacity** or **Incapacitated** means, as to any Person, the bankruptcy, death, adjudication of incompetence or insanity, dissolution or termination, as the case may be, of such Person;

**Income** means, at any time, the net income to the Issuer from Partnership Assets after payment or provision for any expenses of the Issuer and liabilities of the Issuer to any creditors as determined in accordance with accounting standards complying with applicable law in the United Kingdom;

**Initial Limited Partner** means BNY once it has been admitted to the Issuer on the Closing Date in accordance with sub-clause 2.6(c);

**limited partner** means any person who is a limited partner for the purpose of the Act;

**Limited Partners** means the Preferential Limited Partner (at the Registration Date) and together with the Initial Limited Partner (following its admission to the Issuer as at the Closing Date) and all Persons subsequently registered as limited partners of the Issuer pursuant to the Act with the Limited Partnerships Registrar on the Limited Partnerships Register at the relevant time, for so long as they remain Partners, and **Limited Partner** shall be a reference to any one such person;

**Limited Partnerships Register** means the register of Limited Partnerships maintained pursuant to the Act and currently held at Companies House, Cardiff;

**Limited Partnerships Registrar** means the person appointed as Registrar of Limited Partnerships at the relevant time pursuant to the Act;

**Losses** means, at any time, the losses of the Issuer as determined in accordance with generally accepted accounting principles in the United Kingdom;

**Partner** means the General Partner and the Preferential Limited Partner (at the Registration Date) and, from the date of its admission to the Partnership in accordance with sub-clause 2.6(c), the Initial Limited Partner and any other general partner of the Issuer or any other Limited Partner admitted to the Issuer from time to time;

**Partnership Assets** means the assets of the Issuer from time to time and includes, but is not limited to, the name of the Issuer, the Capital Contributions, the Commitments, the Subordinated Notes (or any Replacement Affiliate Investments), the Third Party Assets and any investments made on behalf of the Issuer therefrom and any income arising therefrom (but in no event shall include the separate assets of the General Partner not contributed in the form of a Capital Contribution or committed in the form of a Commitment) less the amount of debts and obligations of the Issuer (excluding any amount payable to Partners in respect of their partnership interests);

**Person** means any natural person, partnership, corporation, trust or other entity;

**Principal Place of Business** means the principal office of the Issuer for the time being in accordance with sub-clause 2.5;

**Prospectus** means the base prospectus dated between the date hereof and the Closing Date prepared by the General Partner and LBHI and approved as a base prospectus for the purposes of Directive 2003/71/EC by the United Kingdom's Financial Services Authority in its capacity as the United Kingdom listing authority;

4

**Registration Date** means the date on which the Issuer is registered with the Limited Partnerships Registrar on the Limited Partnerships Register; and

**Subscription Agreement** means the subscription agreement to be entered into between the General Partner, LBHI and the managers identified therein in relation to the Issuer providing for the payment of the Preferred Capital Contribution represented by the Preferred Securities on behalf of the Initial Limited Partner in accordance with its Commitment.

1.2    **Interpretation**

In this Agreement, headings and underlinings are for convenience only and do not affect the interpretation of this Agreement and, unless the context otherwise requires:

(a)    words importing the singular include the plural and *vice versa*;

(b)    words importing any gender include every gender;

(c)    an expression importing a natural person includes any company, partnership, joint venture, trust, association, corporation or other body corporate;

(d)    a reference to any thing (including, but not limited to, any right) includes a part of that thing (or right);

(e)    a reference to a law, regulation or other enactment includes all laws, regulations or other enactments amending, consolidating or replacing it, and a reference to a law includes all regulations and other enactments issued under that law;

(f)    a reference to the General Partner, the Initial Limited Partner, the Preferential Limited Partner or LBHI shall include its respective successors in title and assigns and, in the case of the General Partner, to its delegates or sub-delegates;

(g)    if this Agreement is inconsistent with the Conditions, the Conditions shall prevail to the extent of any inconsistency, subject to clause 6.1; and

(h)    notwithstanding the use of the term "redemption" in this Agreement, it is acknowledged that in order to comply with the Act, redemption of the Preferred Securities may only be available in the context of a dissolution of the Issuer.

2.    **FORMATION, NATURE AND TERM OF THE ISSUER**

2.1    **Formation and Constitution**

(a)    The General Partner and the Preferential Limited Partner hereby form a limited partnership in accordance with, and subject to, the terms and conditions of this Agreement, which shall be a limited partnership registered pursuant to the Act.

(b)    The General Partner shall, on, or as soon as practicable after execution of this Agreement and payment of the initial Capital Contributions of €1.00 and

€12,500,000 by itself and the Preferential Limited Partner, respectively, as required on the date hereof pursuant to clauses 4.1 and 4.4, register the Issuer with the Limited Partnerships Registrar on the Limited Partnerships Register in accordance with the Act.

(c)    The Issuer shall be a limited partnership from the Registration Date by registration by the General Partner of the Issuer with the Limited Partnerships Registrar as a limited partnership in accordance with the Act.

(d)    On the admission of a Limited Partner subsequent to the Registration Date (including the Initial Limited Partner), the General Partner undertakes to comply with the filing and notification requirements of the Act and shall arrange for the notification forthwith of particulars of any relevant change in the constitution of the Issuer to the Limited Partnerships Registrar in the form prescribed by the Act, specifying the date and nature of such change.

## 2.2    Name

(a)    Subject to sub-clause 2.2(b), the name of the Issuer shall be "Lehman Brothers UK Capital Funding IV LP".

(b)    Subject to the provisions of the Act or otherwise at law, the Issuer shall be called by such other name as the General Partner may specify from time to time in its absolute discretion by written notice given to the Limited Partners.

## 2.3    Term of the Issuer

The Issuer shall not be terminable by the General Partner (whether on notice or otherwise) and shall continue until the earlier of the date on which the Issuer is dissolved or terminated in accordance with the provisions of this Agreement, and the first date on which there is not at least one general partner and at least one limited partner for the purposes of the Act.

## 2.4    Business

The business of the Issuer shall be to raise and provide finance and financial support to LBHI and its group. In carrying on such business, the Issuer shall do (*inter alia*) the following:

(a)    acquire and hold, as investments, the Subordinated Notes and the Third Party Assets;

(b)    admit (through the General Partner) new limited partners from time to time as Limited Partners;

(c)    consider from time to time and advise LBHI in relation to, and agree with LBHI how to take forward, opportunities to raise additional finance and/or provide financial support to LBHI;

(d)    monitor the investments represented by the Partnership Assets (being initially the Subordinated Notes and the Third Party Assets) and dispose of and/or replace them in accordance with the terms of this Agreement; and

(e)    enter into and perform (through the General Partner) any contracts and agreements (including swap agreements), and carry on any other activities as

6

may, in the opinion of the General Partner, be necessary or advisable for the accomplishment of the foregoing purposes and the performance of this Agreement.

The business of the Issuer shall not be carried on with a view to constituting a trading activity or an adventure in the nature of a trade.

### 2.5 Principal Place of Business

The Principal Place of Business and registered office of the Issuer shall be 25 Bank Street, London E14 5LE, England on the date on which the Issuer is registered with the Limited Partnerships Registrar on the Limited Partnerships Register and thereafter, such other place as the General Partner in its sole discretion determines, and the General Partner shall by written notice to the Limited Partners notify them of any change in the principal place or places of business or the registered office of the Issuer.

### 2.6 Partners

(a) LB GP No. 1 Ltd. shall be the general partner of the Issuer for the purposes of the Act on the date hereof.

(b) The Preferential Limited Partner agrees to become a limited partner on the date hereof in accordance with the provisions of this Agreement.

(c) The General Partner hereby agrees to admit BNY as the Initial Limited Partner on the Closing Date upon payment by BNY of the Capital Contribution of the Initial Limited Partner in accordance with clauses 4 and 5 and the Initial Limited Partner acknowledging receipt of the Certificate set out in Schedule 1, Part I. Upon admission as the Initial Limited Partner on the Closing Date in accordance with the preceding sentence, the General Partner shall register BNY as a limited partner with the Limited Partnership Registrar for the purposes of and in the manner required in the Act.

BNY agrees to become the Initial Limited Partner on the Closing Date and to make the Capital Contribution of the Initial Limited Partner in accordance with clauses 4 and 5. BNY further agrees to acknowledge receipt of the Certificate on the Closing Date, whereupon it shall be subject to and bound by the provisions of this Agreement insofar as they apply to Partners on and from that Date. Prior to its admission to the Issuer on the Closing Date in accordance with the preceding provisions, BNY acknowledges that it shall not be a Partner (general or limited) and have no Partnership Interest and, in particular, no rights under clause 6.

(d) The General Partner shall be entitled to admit any additional partner to the Issuer as a Limited Partner in accordance with the provisions of the Conditions.

Each Partner agrees to accept any person to whom a limited partnership interest is assigned or otherwise transferred in accordance with the provisions of this Agreement and of the Conditions as a Limited Partner as of the date of such Partner being entered as a limited partner on the Limited Partnerships Register and notice of the arrangement under which such person becomes a limited partner being advertised in the London Gazette, as required by the Act.

7

Without prejudice to the provisions of clause 10 with respect to the transfer of partnership interests, the General Partner may only admit a new general partner in accordance with clause 14.

(e)     Subject as otherwise expressly provided in this Agreement, only persons registered as limited partners with the Limited Partnerships Registrar on the Limited Partnerships Register shall be recognised by the Partners as having any powers, rights, title or interest to the limited partner interests respectively registered in their names, and the General Partner shall, and shall only be required to, recognise such persons as the absolute owners of such interests and shall not be bound by any notice to the contrary, and shall not be bound to take notice of or see to the execution of any trust or (save as ordered by a court of competent jurisdiction) to recognise any trust or equity or other interest affecting such powers, rights, title and interest of a limited partner. No person shall have any rights against any of the Partners, the Partnership Assets or Income except in respect of rights accruing in any period in which such person's name is registered as a Partner.

(f)     A Partner may cease to be a Partner of the Issuer:

(1)     at any time as a consequence of a transfer or assignment in accordance with clause 10;

(2)     only upon dissolution of the Issuer:

(i)     in accordance with the terms set out in the Conditions; or

(ii)    (subject to sub-clause 2.6(f)(3) below) in accordance with clause 16 at any time, provided that (if required) the Regulator has not objected, on terms approved by the General Partner and the Regulator (if required) at such time, that entitle each such Limited Partner to receive in cash or otherwise no more than an amount representing a return of that Limited Partner's Capital Contribution (or any part thereof) together with any accrued Income allocated to such Limited Partner at the date of such cessation in accordance with sub-clause 12.1; and

(3)     in the case of the Preferential Limited Partner only, at any time provided that (if required) the Regulator has not objected, on terms approved by the General Partner and the Regulator (if required) at such time, that entitle the Preferential Limited Partner to receive in cash or otherwise no more than an amount representing a return of the Preferential Limited Partner's Capital Contribution (or any part thereof) together with any Income allocated to the Preferential Limited Partner in accordance with sub-clause 12.1 at the date of such withdrawal.

(g)     The General Partner may cease to be a Partner of the Issuer in accordance with clause 14.

### 2.7    Rights of Participation of Partners

(a)     On admission to the Issuer, the interests of the Initial Limited Partner and any other Limited Partners (for so long as they shall be Limited Partners)

8

comprise the Preferred Securities, the terms of which are set out in the Conditions. The rights of those Limited Partners to share in the profits of the Issuer or otherwise to participate in the Partnership Assets and to have returned to them any part of any Capital Contribution on dissolution of the Issuer shall be limited to their respective rights of distribution and their respective rights to redemption payments or liquidation payments on dissolution of the Issuer in respect of the Preferred Securities.

(b) The General Partner shall not be entitled to participate in the Partnership Assets or profits of the Partnership except to the extent provided by sub-clauses 12.1(c) and 16.5(a).

(c) The rights of the Initial Limited Partner and the Preferential Limited Partner under this Agreement are subject to the Capital Contribution of the Initial Limited Partner referred to in sub-clause 5.1(b) being paid in accordance with the terms of the Subscription Agreement and sub-clause 2.6(c) above.

## 2.8 Restriction on Limited Partners

None of any Limited Partner and the Preferential Limited Partner shall take part in the operation of the Partnership or the management or control of its business and affairs, nor shall it have any right or authority to act for the Partnership or to take any part in or in any way interfere in the conduct or management of the Partnership, or to vote on matters relating to the Partnership other than as provided in the Act or as set forth in this Agreement.

## 2.9 Liability of General Partner

The General Partner shall apply Partnership Assets only in accordance with the terms of this Agreement and otherwise shall have unlimited liability for the repayment, satisfaction and discharge of all debts, liabilities and obligations of the Issuer to Persons other than Partners in their capacity as Partners in accordance with the Act. Neither the Issuer nor the General Partner shall be liable under this Agreement to make any payment to any Limited Partner in respect of Preferred Securities or to the Preferential Limited Partner in respect of its rights under this Agreement other than out of Partnership Assets.

## 2.10 Liability of Limited Partners

(a) The liability of a Limited Partner to contribute to the debts or obligations of the Issuer shall (subject to the Act) not exceed the amount of that Limited Partner's Commitment.

(b) Except to the extent provided in the Act and paragraph (a) of this sub-clause 2.10, no Limited Partner is liable to indemnify any other Partner or other Person against or in respect of any debts or obligations of the Issuer or any other liability incurred by any of those Persons under this Agreement or in performing or exercising any obligation, power or discretion under this Agreement.

(c) Notwithstanding paragraphs (a) and (b) of this sub-clause 2.10, each Partner must:

(1) make its Capital Contributions subject to and in accordance with that Partner's Commitments and this Agreement; and

9

     (2)      otherwise comply with its obligations under the Act and the terms of this Agreement.

### 2.11 Express Absence of Trust or Trust Relationship

The parties to this Agreement hereby expressly acknowledge that they enter into this Agreement with the express intention of constituting a limited partnership for the purposes of carrying on the business of the Issuer and that the relationship between them does not constitute, and is not intended to constitute, any form of co-ownership of the Partnership Assets or any form of trust under any applicable law or any form of trust relationship or equitable relationship under any applicable law.

## 3.  MANAGEMENT OF THE ISSUER

### 3.1 Authority of the General Partner

Subject to the Act, the General Partner shall have full and exclusive authority and responsibility for the operation of the business of the Issuer and shall be responsible for ensuring that, so long as required by applicable law, the relevant functions of the Issuer are always managed and operated in accordance with the Act by an operator authorised to do so under the FSMA, where such activities are performed in whole or in part in the United Kingdom.

### 3.2 Duties of the General Partner

Without prejudice to the generality of sub-clause 3.1 above, and subject to the Act and the FSMA, the General Partner shall have all rights and powers required or appropriate to manage and operate the Issuer and to do all things necessary to carry out the purposes of the Issuer, including (but without in any way limiting the generality of the foregoing) the power and authority to do the following:

(a)     monitor and dispose of and/or replace the Partnership Assets in such manner and at such times in accordance with sub-clause 2.4 as the General Partner deems fit (provided that in so acting it shall not give rise to a right to dissolve the Partnership under the Conditions) or as may be necessary in order to give effect to the redemption, transfer or withdrawal rights of any Limited Partner (and, without limiting the generality of the foregoing, to enter into swap agreements on behalf of the Issuer and to apply repayments received on any Partnership Assets on behalf of the Issuer);

(b)     agree to any amendment to the terms and conditions of the Partnership Assets;

(c)     administer the overall operation of the Issuer;

(d)     initiate, participate in and settle judicial, arbitration, administrative or similar proceedings to protect the Partnership Assets, enforce the Issuer's rights or otherwise defend the interests of the Issuer;

(e)     admit additional limited partners (including the Initial Limited Partner) and permit the transfer or assignment of limited partnership interests in the Issuer and the withdrawal of limited partners as contemplated by this Agreement;

(f)     perform the following services:

(1)     set up books of account, records and payment procedures, including individual accounts of the Partners;

(2)     provide book-keeping and other related services for the Issuer;

(3)     collect and disburse the Capital Contributions of the Partners for the purposes set forth in this Agreement;

(4)     provide administration, financial and business planning services to the Issuer;

(5)     collect receipts and make payments (including, without limitation, Distributions) and expenditures in accordance with this Agreement; and

(6)     make, or cause to be made, periodic reports relating to operating results, valuations and Capital Account balances as required by this Agreement;

(g)     employ from time to time third parties to render services to the Issuer, including, but not limited to, lawyers, investment brokers or finders, investment bankers, and accountants (including lawyers and accountants who may also act as lawyers and accountants for LBHI or any member of the Group);

(h)     take whatever steps are required to obtain necessary regulatory consents, licences or approvals from governmental authorities having jurisdiction over the Issuer or the Partnership Assets whether in England or elsewhere;

(i)     appoint one or more custodians or such other entity or entities as may be appropriate to hold any of the Partnership Assets;

(j)     possess and exercise all of the rights and powers provided by the Act to a general partner in a general partnership, except to the extent that any of the rights may be expressly limited or expressly restricted by this Agreement or by the Act;

(k)     appoint on behalf of the Issuer a person who is an authorised person under the FSMA authorised to establish, operate and wind up a collective investment scheme to act as Administrator to perform, wholly in place of the General Partner, all those operational functions of the General Partner which fall to be performed by an authorised person under the FSMA or equivalent overseas regulatory regime, as the case may be; and

(l)     do any other acts that the General Partner deems advisable to further the purposes of the Issuer and that are not expressly prohibited by this Agreement or under the Act.

### 3.3    Delegation of Duties

(a)     The General Partner shall be entitled, to such extent and for such period and/or periods as in its absolute discretion it deems appropriate and, subject to obtaining any necessary regulatory consents, to delegate the conduct and operation of the Issuer or all or any of the General Partner's powers, authorities and/or the performance of all or any of the duties vested in the

11

General Partner under sub-clause 3.1 or sub-clause 3.2 to such person or persons (including, without limitation, appointing an authorised person as described in sub-clause 3.2(k) above) as it may consider desirable and in the interests of the Issuer and such person or persons shall have full authority (subject to the terms of the delegation) to exercise such rights and powers of the General Partner in relation to the Issuer and the Partnership Assets on behalf of the General Partner in accordance with the agreement whereby it is appointed by the General Partner. The General Partner may permit the person so appointed to sub-delegate the performance of the duties delegated to it.

(b)     Subject to paragraph (c) of this sub-clause 3.3, the General Partner shall remain liable for all actions taken or omissions made by any delegate or sub-delegate on behalf of the General Partner pursuant to this sub-clause 3.3 and in no event shall such delegate or sub-delegate assume under this Agreement any obligation, right or liability in respect of any action taken by it pursuant to this sub-clause 3.3 or any obligation to any Partner other than its obligations to the General Partner pursuant to the agreement whereby it is appointed by the General Partner so to act and in no event shall such delegate or sub-delegate assume the obligations, rights or liabilities of the General Partner in respect of the Issuer or the Partnership Assets or become or be deemed to become a General Partner of the Issuer.

(c)     Notwithstanding anything in this Agreement to the contrary, the General Partner shall not do, or be authorised or required to do, anything on behalf of the Issuer which might constitute a regulated activity for the purpose of the FSMA, unless it is authorised under the FSMA to do so.

(d)     The Issuer has at the date of this Agreement delegated all of the operational functions of the General Partner which fall to be performed by an authorised person under the FSMA, including establishing, operating and winding up the Issuer, to the Administrator on the terms of the Administration Agreement. Upon the appointment of the Administrator, all the powers, duties and discretions of the General Partner to operate the Issuer and its business, affairs or assets or to deal with and be responsible to the Limited Partners, including power and authority to execute agreements on behalf of the Issuer, shall accrue to the Administrator to the exclusion of the General Partner, except that the General Partner shall continue to have the power and authority as a partner to represent the Issuer in its dealings with the Administrator (or in relation to the protection of its assets) and in this connection to appoint and remove a custodian, to consent to any proposed assignment of the interest of any Limited Partner and to execute on behalf of itself and the Partners any supplemental partnership agreement to be entered into.

(e)     The General Partner shall have the discretion at any time (i) to delegate any of the functions which fall to be performed by an authorised person under the FSMA to the Administrator which also has the necessary authorisations and licences and (ii) to apply for authorisation under the FSMA and perform any or all such functions itself if, in its absolute discretion, it considers it necessary, desirable or appropriate to do so.

3.4     **Fees and Expenses of General Partner**

The General Partner shall receive no fees out of the Partnership Assets in respect of the performance of its duties under this Agreement and shall not be entitled to pay out

of Partnership Assets or to reimburse itself out of Partnership Assets for costs and expenses incurred in the conduct of the activities of the Issuer and/or incurred in the performance of its duties under this Agreement.

### 3.5    Duty of Care

The General Partner shall exercise its rights and discharge its contractual duties under this Agreement solely in the exercise of the business of the Issuer and in the interests of the Partners and shall do so with reasonable care and in good faith. Each of the Partners hereby acknowledges that it is not intended that the General Partner is a trustee of Partnership Assets or Income for it or any other Person.

For the purposes of this Agreement, the interests of the Issuer and the interests of the Partners shall be deemed to be what the General Partner (or any person appointed by the General Partner in accordance with sub-clause 3.3) considers in its absolute discretion to be the interests of the Issuer or the interests of a majority by Liquidation Preference of the Limited Partners as holders of the Preferred Securities without making any enquiry in relation to the interests of any individual Partner in light of that Limited Partner's personal circumstances. The acquisition by the Issuer of the Partnership Assets shall be deemed to be in the interests of the Issuer and of the Partners.

### 3.6    Third Parties not concerned with General Partner's Powers

No person entering into any contract or engaging in any transaction with the General Partner or with any delegate or sub-delegate of the General Partner as agent for the General Partner or otherwise dealing with the General Partner or any delegate of the General Partner need be concerned to see whether entering into the contract, or engaging in the transaction or the other dealing, is a proper exercise by the General Partner of its powers or discretions under this Agreement, or to see to the application or use of any money, rights, property or assets paid or transferred to the General Partner whether as a capital or other addition to the Partnership Assets or otherwise, and no such person shall be affected by notice (actual, constructive or imputed) of the provisions of this Agreement.

### 3.7    General Partner's Covenants

In addition to its covenants in the Conditions, the General Partner covenants with the Limited Partners that:

(a)    to the extent that the General Partner holds any part of the Partnership Assets at any time, it shall:

(1)    arrange for the Partnership Assets to be held in safe custody; and

(2)    keep the Partnership Assets clearly identified as Partnership Assets in its books and records and separate from its own assets;

(b)    the General Partner will use all reasonable endeavours to carry on and conduct the operation of the business of the Issuer in a proper and efficient manner and to ensure that any undertaking, scheme or enterprise to which this Agreement relates is carried on and conducted in a proper and efficient manner;

(c)     the General Partner shall not invest, apply or otherwise deal with any part of the Partnership Assets in any way that is not consistent with the provisions of this Agreement;

(d)     the General Partner will procure that each of the Persons authorised by it to perform its powers, functions, duties or obligations under this Agreement will duly observe and perform its powers, functions, duties and obligations under this Agreement in the same manner as is required of the General Partner;

(e)     the General Partner shall keep, or cause to be kept, proper books of account in relation to the Issuer and the Partnership Assets;

(f)     the General Partner shall not:

(1)     encumber;

(2)     sell, transfer or otherwise dispose of; or

(3)     agree or attempt to do anything described in (1) or (2) in relation to any Partnership Asset,

except as required or permitted by this Agreement;

(g)     the General Partner will comply with all applicable statutes and other laws (including but not limited to the Act and the FSMA) in any relevant jurisdiction relating to the Issuer, the Partnership Assets or the business of the Issuer (and for those purposes the General Partner may rely on professional advice and assistance received from time to time in relation to such compliance);

(h)     the General Partner will prepare and lodge, or cause to be prepared and lodged, in accordance with all applicable statutes and other laws, all notices, statements, returns, reports and other documents which may be required to be prepared and lodged in relation to the Issuer, the Partnership Assets or the business of the Issuer;

(i)     the General Partner will not carry on any business or incur any indebtedness except for, and in connection with, the business as General Partner or otherwise on behalf of or in the name of the Issuer as set out in sub-clause 2.4;

(j)     the General Partner will not incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interest in the Issuer, performing its obligations in respect of this Agreement, maintaining the listing of the Preferred Securities, the Limited Partnerships Register, the Registrar and the Paying and Transfer Agents, in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the Issuer, the Issuer's holding the Partnership Assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of a custodian therefor, the exercise of the Issuer's rights in respect of the Partnership Assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer;

(k)    the General Partner will not do anything which would or is reasonably likely to result in a Limited Partner losing the benefit of the limitation under the Act on its liability to contribute to the debts and obligations of the Issuer;

(l)    subject to clauses 10 and 14, for so long as Preferred Securities are outstanding, LB GP No. 1 Ltd., or a directly or indirectly wholly-owned Subsidiary of LBHI, will remain general partner of the Issuer;

(m)    the General Partner will manage and at all times control the affairs of the Issuer; and

(n)    the General Partner will receive and apply or arrange for the receipt and application of all income from the Partnership Assets and all proceeds of or other consideration for the sale, redemption or transfer of the Partnership Assets on behalf of the Issuer, in accordance with the terms of this Agreement and the Act.

### 3.8    Obligations under the Act

Each Partner acknowledges and agrees that, notwithstanding anything to the contrary in this Agreement, the General Partner is not obliged to do anything that would be contrary to the Act or which would have the effect of placing the General Partner in breach of its obligations under the Act.

## 4.    COMMITMENTS

### 4.1    General Partner's Commitment

The General Partner's Commitment comprises €1.00 as at the Closing Date, plus such amounts from time to time thereafter as are necessary to pay all costs, expenses, debts, liabilities and obligations incurred in the proper operation of the Issuer (other than the application of the Partnership Assets pursuant to this Agreement), provided however that in no event shall the General Partner be required to make any Commitment or Capital Contribution to meet any shortfall in the Income and/or the Partnership Assets that prevents or reduces any payment to be made in respect of the Preferred Securities or to the Preferential Limited Partner in accordance with the provisions of this Agreement.

### 4.2    Commitment of the Preferential Limited Partner

The Commitment of the Preferential Limited Partner on the date hereof shall be €12,500,000 in respect of its rights referred to in the Conditions, to be paid in accordance with sub-clause 5.1.    Such Commitment of the Preferential Limited Partner will be supplemented by such other amount as is necessary in order that the Commitment of the Preferential Limited Partner amounts to 5 per cent. of the aggregate nominal amount of the Preferred Securities.

4.3    **Commitment of the Initial Limited Partner**

The General Partner and BNY hereby agree that the commitment of the Initial Limited Partner payable on the Closing Date shall be an amount equal to the Preferred Capital Contribution, which shall be contributed in accordance with sub-clause 5.1(b).

The Preferred Capital Contribution shall be such sum as is specified in the Subscription Agreement as the proceeds from the issue of the Preferred Securities. Such sum shall be paid by a common depositary for Euroclear and Clearstream, Luxembourg upon the instructions of Lehman Brothers International (Europe) in accordance with the terms of the Subscription Agreement. Unless and until such instructions are delivered, such common depositary shall have no obligation to make such payment.

4.4    **Additional Commitments of Limited Partners**

Subject and pursuant to the provisions of the Conditions, the General Partner shall be authorised and entitled to accept Commitments of Limited Partners in addition to the Commitment referred to in sub-clause 4.2 and to agree the terms on which such Commitments shall be paid. Except as provided in sub-clause 4.2, in no event shall a Commitment of a Limited Partner (other than the Preferential Limited Partner) be less than €1,000 or other than a whole multiple of €1,000.

5.    **CAPITAL CONTRIBUTIONS**

5.1    **Payment of Capital Contributions**

(a)    The Preferential Limited Partner shall pay its Commitment referred to in sub-clause 4.2 on or prior to the Registration Date.

(b)    BNY hereby agrees to pay the Commitment of the Initial Limited Partner referred to in sub-clause 4.3 on the Closing Date.

(c)    Each other Partner shall make a Capital Contribution in an amount equal to that Partner's Commitment on such date and in such manner as that Partner shall have agreed with the General Partner.

(d)    The Capital Contributions of the Limited Partners contributed under this clause 5 shall be registered by the General Partner as the amount of capital contributed by such Limited Partner(s) for the purposes of the Act. The General Partner undertakes to comply with the filing and notification requirements of the Act and shall arrange for the notification forthwith of particulars of any relevant change in the constitution of the Issuer to the Limited Partnerships Registrar in the form prescribed by the Act, specifying the date and nature of such change.

5.2    **Additional Capital Contributions**

(a)    Except by agreement to the extent provided in sub-clause 5.5, no Limited Partner shall be required to make any additional Capital Contribution to the Issuer other than to satisfy any outstanding Commitment of it in accordance with the terms of this Agreement.

16

(b)   Subject to sub-clause 5.5 and the provisions of the Conditions, the General Partner may solicit or accept further Capital Contributions (whether from existing Partners or other Persons to be admitted as limited partners pursuant to this Agreement) at its discretion and further subject to compliance on the part of the General Partner and the Issuer with any applicable laws and regulations in respect thereto.

(c)   The General Partner undertakes to comply with the filing and notification requirements of the Act and shall arrange for the notification forthwith of particulars of any relevant change in the amount of Capital Contributions made by the Limited Partners to the Limited Partnerships Registrar in the form prescribed by the Act, specifying the date of such change.

### 5.3   Return of Capital Contributions on Dissolution

(a)   No Capital Contribution shall be returned to a Limited Partner until such time as is provided in, and in accordance with, the provisions of the Conditions (and, for such purposes, the payment to the Holder of the Optional Redemption Price, or the Liquidation Distribution (as the case may be) in accordance with the provisions of the Conditions shall be treated for the purposes of this Agreement and the Act as a return of the Partner's Capital Contribution in respect of the Preferred Securities) or until such time and in accordance with the terms agreed in connection with any withdrawal by such Holder pursuant to sub-clause 2.6.

(b)   In the event of the return of the whole of the Capital Contribution of a limited partner in accordance with the provisions of the Conditions or paragraph (a) of this sub-clause 5.3, such limited partner shall cease to be a limited partner (and the General Partner shall accordingly remove his name from the Register) and shall cease to have any rights under this Agreement against the Partnership Assets in respect of the Preferred Securities as of such date.

(c)   No Capital Contribution shall be returned to the Preferential Limited Partner, and the Preferential Limited Partner shall not be entitled to demand payment representing the return of all or part of his Capital Contribution, until such time as is provided in the Conditions or until such time and in accordance with the terms agreed in connection with any withdrawal of such Preferential Limited Partner pursuant to sub-clause 2.6(f), and no Capital Contribution shall be returned to the General Partner and the General Partner shall not be entitled to demand payment representing the return of all or part of its Capital Contribution until such time as there are no entitlements of the Preferential Limited Partner to payment under the terms of this Agreement and no Preferred Securities subsisting following their respective redemptions in accordance with the provisions of sub-clause 2.6(f) and the Conditions.

### 5.4   Withdrawal of Capital

No Partner shall have any right to withdraw from the Issuer or make a demand for withdrawal of any part of its Capital Contribution (other than by assignment of such Partner's rights in accordance with clause 10) until the dissolution of the Issuer:

(i)   under the Act;

(ii)   in accordance with the provisions of the Conditions; or

(iii)    pursuant to any other term of this Agreement.

Any Distribution made on a Distribution Payment Date shall not have the benefit of reducing, withdrawing, returning or eliminating any part of the Aggregate Capital Contributions.

### 5.5    Further Capital Contributions

A Limited Partner may make further Capital Contributions to satisfy any Commitment or as may be separately agreed between such Limited Partner and the General Partner, but only in the circumstances permitted in the Conditions. In no event shall a Capital Contribution of a Limited Partner (other than the Preferential Limited Partner) be less than €1,000 (i.e. the Liquidation Preference of one Preferred Security) or other than a whole multiple of €1,000.

### 5.6    No Entitlement

No distribution or other payment shall be paid or payable to any Partner upon any Capital Contribution or Commitment other than as is specifically provided in this Agreement and in the Conditions.

## 6.    PREFERRED SECURITIES

### 6.1    Form of Initial Limited Partner's Partnership Interest

On and from its admission to the Issuer in accordance with sub-clause 2.6(c) and on the date of full payment of the Preferred Capital Contribution pursuant to clauses 4 and 5, the rights and interests of the Initial Limited Partner in the Partnership Assets shall, be in the form of the Preferred Securities described in the Conditions.

The Global Certificate representing the Preferred Securities will be registered in the name of the Initial Limited Partner as nominee for, and will be deposited with, a common depositary for Euroclear and Clearstream, Luxembourg on or prior to the Closing Date.

### 6.2    Voting Rights and Amendment of Rights

(a)    No Limited Partner shall be entitled to receive notice of or attend or vote at any meeting of Partners other than to the extent (if any) expressly provided in this Agreement or in the Conditions.

(b)    Subject to any contrary provisions of the Conditions in relation to the amendment of the terms of the Preferred Securities, the General Partner shall have the right to amend any provision of this Agreement without the consent of, or ratification by, any Limited Partner.

### 6.3    Form of Subordinated Guarantee

The Subordinated Guarantee shall be substantially in the form set out in the Base Prospectus or such other form as the General Partner may require.

### 6.4    Form of Preferred Securities Substitution Confirmation

Any Preferred Securities Substitution Confirmation referred to in the Conditions unless otherwise stated therein shall be substantially in the form as will be set out

Appendix 1 to the Agency Agreement or such other form as the General Partner may reasonably require.

## 7.    PREFERENTIAL LIMITED PARTNER

### 7.1    Terms

Subject to the Act, the Preferential Limited Partner shall only be entitled to have distributed to it or otherwise paid to it such amounts and on such terms as are provided for in the Conditions, sub-clause 2.6(f), sub-clause 12.1(a) or sub-clause 16.5(a)(2) (as the case may be), after the withholding or deduction for or on account of any tax required to be withheld from such distribution or payment to the Preferential Limited Partner.

### 7.2    Voting Rights and Amendment of Rights

(a)    Except as provided for in this sub-clause 7.2 or the Conditions and subject to the Act, the Preferential Limited Partner will not be entitled to receive notice of or attend or vote at any meeting of Partners or to participate in the management of the Issuer.

(b)    Subject to any provisions of the Conditions in relation to the amendment of the terms of the Preferred Securities, the General Partner shall have the right to amend any provision of this Agreement without the consent of, or ratification by, the Preferential Limited Partner, notwithstanding that such amendment may constitute a variation or abrogation of the rights, preferences and privileges of the Preferential Limited Partner.

## 8.    REGISTRATION OF PARTNERSHIP INTERESTS

(a)    The identity and interest of each Partner shall be recorded in the Limited Partnerships Register to be maintained by the Limited Partnerships Registrar in accordance with the Act.

(b)    The General Partner shall procure that such Limited Partnerships Register reflects any withdrawal or admission of any Partner in accordance with the provisions of this Agreement.

(c)    Except as ordered by a court of competent jurisdiction or as required by applicable law, any Limited Partner, as a registered holder of Preferred Securities, will be deemed to be and may be treated as the absolute owner of the relevant Preferred Securities for all purposes and regardless of any notice of ownership, trust or an interest in them, any writing on any Certificate in respect of them or their theft or loss (or that of the related Certificate) and no person shall be liable for so treating such Limited Partner.

## 9.    CERTIFICATES OF PREFERRED SECURITIES

**Issue of Certificates**

(a)    The Issuer (or the Registrar on behalf of the Issuer) shall issue to each Limited Partner a Certificate specifying the total number of Preferred Securities held by, and registered in the name of, such Limited Partner. Such Certificate shall be *prima facie*

evidence of title of the Limited Partner to be registered on the Limited Partnerships Register as a Limited Partner.

(b)  Each Certificate shall be substantially in the form set out in the relevant part of Schedule 1 or such other form as may be approved by the General Partner and shall be signed on behalf of the Issuer by the General Partner.

(c)  Every Limited Partner shall be entitled to one Certificate in respect of all his Preferred Securities and, when part only of the Preferred Securities comprised in a Certificate are sold or transferred by such Limited Partner, subject to delivery of the original Certificate at the office of the General Partner, the Registrar or relevant Paying and Transfer Agent, to a new Certificate for the remainder of the Preferred Securities so comprised in the original Certificate.  In the case of a transfer of Preferred Securities to a person who is already a Limited Partner, a new Certificate representing the enlarged holding will only be issued against surrender of the Certificate representing the existing holding.

(d)  Every Certificate shall be issued within three Business Days after receipt of the relevant Capital Contribution or within two months after lodgement of the necessary transfer documents in accordance with clause 10 and shall specify the number of the relevant Preferred Securities to which the Limited Partner is entitled.  Delivery of the Certificate(s) will be made at the specified office of the relevant Paying and Transfer Agent, the Registrar or the General Partner (as the case may be) to whom delivery or surrender of such request for exchange, form of transfer or Certificate will have been made or, at the option of the Limited Partner making such delivery or surrender as aforesaid and as specified in the relevant request for exchange, form of transfer or otherwise in writing, be mailed by uninsured post at the risk of the Limited Partner entitled to the Certificate to the address shown in the Limited Partnerships Register, or, as applicable, to such address as may be specified in the request for exchange, or form of transfer, unless such Limited Partner requests otherwise and pays in advance to the relevant Paying and Transfer Agent, the Registrar or General Partner the costs of such other method of delivery and/or such insurance as it may specify.

(e)  The issue of Certificates on registration or transfer will be effected without charge to the Limited Partner by or on behalf of the Issuer, the General Partner, the Registrar or the relevant Paying and Transfer Agent except such costs (if any) as are payable by any Limited Partner pursuant to the Conditions.

(f)  The replacement of any Certificate shall be permitted to the extent provided and on the terms set out in the Conditions.

## 10.  TRANSFER OF INTERESTS IN THE ISSUER

### 10.1  Transfer of Preferred Securities

(a)  Except as otherwise provided in this clause 10, in no event shall all or any part of a Limited Partner's interest in the Issuer be transferred unless the General Partner, the Registrar or the relevant Paying and Transfer Agent has received the Certificate representing the Preferred Securities registered in the name of such Limited Partner together with a completed transfer notice executed by both transferor and transferee specifying no more than the number of Preferred Securities referred to on such Certificate to be transferred to the transferee and confirming the transferee's accession to, and agreement to be bound by the terms of, this Agreement, and such evidence as the General Partner, the Registrar or the relevant Paying and Transfer Agent

may reasonably require to prove the title of the transferor and after payment of all stamp and other transfer taxes if any by the transferor or the transferee, as appropriate. Copies of the documents so received to the satisfaction of the General Partner, the Registrar or relevant Paying and Transfer Agent shall be promptly forwarded by it to the General Partner at the Principal Place of Business. No transfer of part of a Limited Partner's interest in the Issuer representing a Capital Contribution or part thereof which is not an integral multiple of the Liquidation Preference of the Preferred Securities representing such Capital Contribution shall be permitted.

(b)     A transfer notice shall be in the form endorsed on the Certificate or such other form as may be approved by the General Partner for the purposes of this clause and notified to the Limited Partners.

(c)     Provided the foregoing conditions and the conditions in paragraph (j) of this sub-clause 10.1 are met, the Issuer (or the General Partner on behalf of the Issuer) shall enter the transferee on the Limited Partnerships Register as a Limited Partner in place of the transferor in respect of the Preferred Securities transferred pursuant to the transfer notice and the transferee shall, provided that the conditions in paragraph (d) of this sub-clause 10.1 are met, become a Limited Partner in the Issuer and the holder of the Preferred Securities stated to be transferred to the transferee in the transfer notice.

(d)     A transferee will not become a Limited Partner until it is entered on the Limited Partnerships Register as the owner of the transferred Preferred Securities and, so long as required by applicable law, an advertisement of its admission to the Issuer has been published in the London Gazette in accordance with Section 10 of the Act.

(e)     A Person to whom a Preferred Security is transferred in accordance with this clause 10 shall be deemed, by its execution of the relevant transfer notice, with effect from the date of its being entered as a limited partner on the Limited Partnerships Register and his admission advertised in accordance with the Act, to have acceded to all the terms of this Agreement and be a party thereto and bound thereby.

(f)     A Person to whom a Preferred Security is transferred who desires to make a further transfer shall be subject to all of the provisions of this clause to the same extent and in the same manner as a Limited Partner making the initial transfer.

(g)     Upon the Incapacity of an individual limited partner, his personal representative or other successor in interest shall have all the rights of that limited partner for the purpose of settling or managing his estate and such power as the Incapacitated limited partner possessed to constitute a successor as a transferee of his interest in the Issuer and to join with such transferee in making application to substitute such transferee as a limited partner, all as provided in paragraphs (a) to (f) inclusive of this sub-clause 10.1 and such other rights for such purposes as are provided by the Act.

(h)     Upon the Incapacity of a limited partner other than an individual, the authorised representative of such entity shall have all rights of a limited partner for the purpose of effecting the orderly winding up and disposition of the business of such entity and such power as such entity possessed to constitute a successor to its interest in the Issuer and to join with such person

in making application to substitute an assignee of the relevant Preferred Securities as a limited partner all as provided in sub-paragraphs (a) to (f) inclusive of this sub-clause 10.1, and such other rights for such purposes as are provided by the Act.

(i)    A Person who has been registered as a Limited Partner pursuant to this clause 10 shall succeed to all the rights and be subject to all the obligations of the transferor Limited Partner in respect of the Preferred Securities transferred, including the part of the Capital Contribution of the transferor Limited Partner related to those Preferred Securities.

(j)    No transfer of Preferred Securities by the Initial Limited Partner shall be made, registered or otherwise effective other than in any of the following circumstances:

    (i)    to, or to a nominee of, a common depositary for Euroclear and/or Clearstream, Luxembourg or any successor to either such nominee and/or common depositary; or

    (ii)    if either or both of Euroclear and Clearstream, Luxembourg is or are closed for business for a continuous period of 14 days or more (other than for the purposes of a public holiday) or announces an intention permanently to cease business or does in fact so cease business, other than in circumstances where such business is transferred to such other clearing system as may be approved by the General Partner;

and on the occurrence of any of the circumstances in (ii) above, the number of Preferred Securities corresponding to the book-entry interest in such Preferred Securities represented by the Certificate held by the Initial Limited Partner will, subject to such reasonable requirements as the General Partner may require and subject to compliance with the requirements of this clause 10 by each such Person and applicable law, be transferred to each Person whose name is notified by the Initial Limited Partner to the General Partner as having an interest in a Preferred Security.

## 10.2    Transfer of General Partner Partnership Interest

No transfer of all or any part of the General Partner Partnership Interest may be made, unless (if required) the Regulator has not objected:

(a)    to a directly or indirectly wholly-owned Subsidiary of LBHI (in which event no consent of, or ratification by, any or all the Limited Partners shall be required to admit the same); or

(b)    in the circumstances set out in sub-clause 14.2; or

(c)    with the consent in writing of such majority of the Limited Partners as would be required to make an amendment of their rights effective pursuant to the provisions of the Conditions,

and no transfer of the General Partner's Partnership Interest shall be effective until the new general partner is registered as such on the Limited Partnerships Register and, so long as it is required by applicable law, its admission to the Issuer is published in the London Gazette as required by the Act.

22

10.3    **Transfer of Preferential Limited Partner Partnership Interest**

The Preferential Limited Partner may transfer its Partnership Interest (in accordance with the requirements of sub-clause 2.6(e)(3)) to any Subsidiary of LBHI.

## 11.    CAPITAL ACCOUNTS

11.1    **Capital Accounts to be established for each Partner**

An account (**Capital Account**) shall be established and maintained for each Partner in the Accounts and shall equal the Capital Contribution of the Partner, as adjusted for any allocations of Income made to the Partner in accordance with clause 12, and minus distributions made out of the Partnership Assets to the Partner in accordance with this Agreement (net of any liabilities actually assumed by such Partner and liabilities to which such distributed property is subject) and any allocation of losses made to the Partner pursuant to clause 12 and any special allocation of expenses attributable to the interest of such Partner.

11.2    **Compliance with Tax Accounting**

Notwithstanding any other provision of this Agreement to the contrary, the maintenance of Capital Accounts shall be construed so as to comply with the United States Treasury Regulations promulgated under section 704 of the US Internal Revenue Code of 1986 (the **704 Regulations**).

11.3    **Modification of computation of Capital Accounts**

If the General Partner shall determine at any time that it is prudent to modify the manner in which the Capital Accounts, or any related debits or credits, are computed in order to comply with, or without contravention of, the Act and the 704 Regulations, the General Partner may amend this Agreement or otherwise modify the procedures employed by the General Partner if and to the extent that the amendment or other modification does not materially adversely affect the economic interests of any Partner in the Partnership Assets. If unanticipated events might otherwise cause this Agreement not to comply with the Act, the General Partner may amend this Agreement or otherwise modify the procedures employed by the General Partner without the approval of any Limited Partner if and to the extent that the amendment or other modification does not materially adversely affect the economic interests of any Limited Partner in the Partnership Assets.

## 12.    ALLOCATION OF INCOME AND DISTRIBUTIONS

12.1    **Allocation of Income**

Subject to the Act, and subject to the terms of the Conditions, the Issuer's Income shall be allocated on each Distribution Payment Date or on any date determined by the General Partner as follows:

(a)    first, to the Preferential Limited Partner for its own account if Distributions are not payable in full on any Distribution Payment Date in accordance with the Conditions provided that if any Distributions are payable in part on such Distribution Payment Date, Income up to the amount of such partial Distribution shall be allocated first to the Limited Partners with the remainder to the Preferential Limited Partner for its own account;

(b)    secondly, to the Limited Partners as holders of the Preferred Securities for the payment of Distributions as provided in the Conditions; and

(c)    thirdly, all remaining sums exclusively to the General Partner for its own account.

Income of the Issuer paid in accordance with (a) or (b) of this sub-clause 12.1 shall be allocated *pro rata* among the Holders until the amount so allocated to each Holder equals the amount of Distributions payable to that Holder as determined in accordance with the provisions of the Conditions with respect to the Preferred Securities held by such Holder.

## 12.2    Allocation of Losses

The Issuer's Losses for any Distribution Period (other than losses caused by a depreciation in the market or capital value of any of the Partnership Assets) shall be allocated to the General Partner in so far as they reflect expenses, debts, liabilities and obligations for which the General Partner has assumed responsibility pursuant to sub-clause 4.1.

## 12.3    Distributions

Amounts of Income and Losses of the Issuer allocated to the Limited Partners in accordance with sub-clauses 12.1 and 12.2 shall be distributed to the Limited Partners in accordance with the provisions of the Conditions.

## 13.    BOOKS, RECORDS AND ACCOUNTS

### 13.1    Books

The General Partner or its delegate shall maintain the books and records of the Issuer required by the Act to be kept by the Issuer at the Principal Place of Business, and all Partners shall have the right to inspect, examine and copy such books and records at reasonable times and upon reasonable notice in accordance with the Act. Upon the request of a Limited Partner, the General Partner shall promptly deliver to the requesting Limited Partner, at the expense of the Issuer, a copy of any information which the General Partner is required by the Act to so provide.

### 13.2    Accounts

The General Partner or its delegate shall maintain accounting records on behalf of the Issuer at the Principal Place of Business and shall prepare the Accounts which shall be drawn up in euro or such other currency as the General Partner may consider appropriate in its discretion. The General Partner shall appoint Auditors, which may be the auditors of the General Partner and/or LBHI, to audit the same and shall keep a copy of each set of the audited Accounts at the Principal Place of Business.

## 14.    WITHDRAWAL/REPLACEMENT OF THE GENERAL PARTNER

14.1    The General Partner shall not have the right to retire as general partner of the Issuer for so long as the Preferred Securities are outstanding unless any Regulator has not objected and except by way of a transfer of the General Partner Partnership Interest as provided in sub-clause 10.2.

14.2    In the event that the General Partner is dissolved or becomes bankrupt, the Preferential Limited Partner may, provided that (if required) any Regulator has not objected, elect a new general partner solely for the purposes of completing the winding up of the Issuer and it shall not be necessary for the Preferential Limited Partner to obtain any consent to or approval of such election from any Holder.

## 15.    PARTNERSHIP FINANCES

### 15.1    Partnership Bank Accounts

The General Partner shall be authorised to open and operate one or more bank accounts in its discretion on behalf of and for the purposes of the Issuer on such terms as it thinks fit.

### 15.2    Auditors

(a)    The initial Auditors of the Issuer shall be Ernst & Young LLP.

(b)    The Auditors may resign from office or be removed at any time by the General Partner.

(c)    Upon any such resignation or removal, unless any such resignation or removal results from a replacement of auditors as required by applicable law or the replacement of the auditors of LBHI, the Auditors shall be requested to send a written notice to each of the Limited Partners containing:

(1)    a statement that there are no circumstances connected with their resignation or removal which they consider should be brought to the attention of the Limited Partners; or

(2)    a statement of any such circumstances.

(d)    New Auditors, which may be the auditors of LBHI, shall be appointed by the General Partner who may appoint such firm of chartered accountants as it thinks fit to fill any vacancy in the office of Auditors to the Issuer.

### 15.3    Accounting Period of the Issuer

The first accounting period of the Issuer shall begin on the date hereof and end on 30th November, 2007; thereafter, each accounting period of the Issuer shall begin on 1st December of each year and end on 30th November of that calendar year, or shall begin and/or end on such other dates as may be determined by the General Partner in its sole discretion.

## 16.    DISSOLUTION OF PARTNERSHIP

### 16.1    Grounds for Dissolution

Except as provided in this Agreement, no Partner shall have the right to cause the dissolution of the Issuer by notice.

25

16.2    **Continuation of Partnership**

The Issuer shall not be dissolved or terminated by the Incapacity of any Limited Partner, the assignment or transfer by any Limited Partner of its Preferred Securities, or the admission of a new or substituted General Partner or Limited Partner.

16.3    **Events Causing Dissolution**

Subject to the Act and the other provisions of this Agreement, the Issuer shall be dissolved and terminated and the Partnership Assets distributed in the manner provided for in sub-clause 16.5 on the occurrence of the following events:

(a)    an order being made for the bankruptcy, dissolution, liquidation or winding up of the General Partner or a special resolution of the General Partner being passed for its winding up other than in circumstances where the business of the General Partner has been transferred pursuant to sub-clause 10.2; or

(b)    an order for dissolution being made by the English Court (under Section 35 of the Partnership Act 1890); or

(c)    payment of the Capital Contribution referred to in sub-clause 5.1 hereof not having been made pursuant to the Subscription Agreement; or

(d)    as set out in sub-clause 2.3; or

(e)    an exercise of redemption or dissolution rights pursuant to the Conditions.

16.4    **General Partner's Liability Upon Dissolution or Retirement**

Upon dissolution of the Issuer or upon the General Partner ceasing to serve as such, whether as a result of its retirement or otherwise, the General Partner shall be obliged to contribute to the capital of the Issuer the amount necessary to restore the deficit, if any, in the General Partner's Capital Account balance to zero. Other than as set forth in the foregoing sentence, the General Partner will not be personally liable for the return of all or any part of any Capital Contribution. Any such return shall be made solely from Partnership Assets (to the extent available therefor after payment of any creditors of the Issuer in accordance with the Act) and in accordance with this Agreement.

16.5    **Distribution of Assets on Dissolution**

(a)    Subject to the Act, and subject to the relevant provisions of the Conditions which include the non-objection of any Regulator, in the event of a dissolution of the Issuer (whether by the General Partner or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer), the General Partner (or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer) shall cause the Partnership Assets (to the extent remaining after payment of any creditors of the Issuer) to be applied as follows to the extent of such Partnership Assets:

(1)    first, in payment of the Liquidation Distributions or the Optional Redemption Price, as the case may be, in respect of each Preferred

Security held, payable to any Limited Partners as holders of the Preferred Securities;

(2)    secondly, in payment of any amount payable to the Preferential Limited Partner in respect of its payment rights under this Agreement; and

(3)    thirdly, as to any surplus, to the General Partner.

(b)    On a dissolution of the Issuer, the Limited Partners shall not be entitled to distributions except in cash and the General Partner (or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer) need not distribute all of the Partnership Assets at once, but may make partial distributions.

### 16.6    Liquidation Statement

Each of the Partners shall be furnished with a statement prepared by the General Partner or its delegate with respect to any winding up of the Issuer, which shall set forth the assets and liabilities of the Issuer as of the date of complete liquidation of the Partnership Assets.

## 17.    PARTNERSHIP MEETINGS

### 17.1    Convening of Meetings

The General Partner may, whenever it thinks fit, convene a meeting of the Partners for the purposes of consenting to any matters requiring the consent or ratification of all the Limited Partners under the Act or a meeting of the Limited Partners for the purposes of seeking the consent of those Limited Partners to any matter requiring such consent pursuant to this Agreement. The rights of Limited Partners to receive notice of, attend or vote at, any meeting of Partners is limited to the circumstances set out in this Agreement. The Limited Partners may convene a meeting of such Limited Partners in accordance with and for the purposes set out in the Conditions.

### 17.2    Notice of Meeting

(a)    At least fourteen clear days' (or such shorter period as a simple majority of the Partners (or the Limited Partners, as the case may be) may agree in writing) notice of a meeting of Partners (or the Limited Partners, as the case may be) shall be given by the General Partner to the Partners (or the Limited Partners, as the case may be), and such notice shall be in writing and sent to the address of each Partner (or Limited Partner, as the case may be) as recorded in the Limited Partnerships Register. Such notice shall be deemed to be effective notice of a meeting. Each such notice will include a statement setting forth (i) the date, time and place of such meeting, (ii) a description of any resolution to be proposed for adoption at such meeting on which such Partners are entitled to vote and (iii) instructions for the delivery of proxies. All such meetings shall be held in London or as otherwise determined by the General Partner.

(b)    In every notice calling a meeting of Partners there shall appear with reasonable prominence a statement that a Partner entitled to attend and vote is

27

entitled to appoint one or more proxies to attend and vote instead of him and that a proxy need not also be a Partner.

(c)    The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings at that meeting.

## 17.3    Quorum for Meetings

(a)    No business shall be transacted at any meeting of the Partners (or of the Limited Partners, as the case may be), unless a quorum of Partners (or of such Limited Partners, as the case may be), is present at the time when the meeting proceeds to business. Any quorum at any meeting shall consist of not less than one Limited Partner or its representative representing at least 33 1/3 per cent. of the aggregate Liquidation Preference of the Preferred Securities and the General Partner.

(b)    If within half an hour from the time appointed for the meeting a quorum is not present, or if during the meeting a quorum ceases to be present, the meeting, if convened by or upon the requisition of Limited Partners, shall, subject to the Conditions, be dissolved. If otherwise convened, the meeting shall stand adjourned to the same day in the next week at the same time and place or such day, time and place as the General Partner shall determine.

(c)    A representative of the General Partner shall preside as chairman at every meeting of the Partners or Limited Partners. If there is no such chairman, or if at any meeting he is not present within 30 minutes of the appointed time, the Partners or any of their representatives present in person shall choose one of the Partners present or any of their representatives to be chairman.

(d)    The chairman may, with the consent of a majority of the Partners (or Limited Partners, as the case may be) present or represented at any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of the original meeting. Save as aforesaid, it shall not be necessary to give any notice of any adjourned meeting or of the business to be transacted at an adjourned meeting.

(e)    Except where otherwise and to the extent provided in the Conditions, all resolutions shall be adopted if approved by a majority of the votes cast. In the event of an equality of votes at any general meeting, whether upon a show of hands or on a poll, the chairman shall not be entitled to a second or casting vote.

(f)    Subject to the Conditions, at any meeting of the Partners or relevant Limited Partners every question shall be decided in the first instance by a show of hands and, unless a poll is demanded by the chairman or by any relevant Partner, a declaration by the chairman that a resolution has on a show of hands been carried or not carried, or carried or not carried by a particular majority or lost, and an entry to that effect in the minutes of the meeting, shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

(g)     If a poll is demanded in the manner mentioned above, it shall be taken at such time (within twenty-one days) and in such manner as the chairman directs and the results of such poll shall be deemed to be the resolution of the Partners or Limited Partners. A poll may be demanded upon the election of the chairman and upon a question of adjournment and such poll shall be taken forthwith without adjournment. Any business other than that upon which a poll has been demanded may proceed pending the taking of the poll.

(h)     Minutes of all resolutions and proceedings of meetings of the Partners and Holders shall be duly and regularly entered in books kept for that purpose at the Principal Place of Business and shall be available for inspection by a Partner (and, in the case of minutes relating to meetings of certain Limited Partners by such Limited Partners) during business hours without charge. A Partner (or Limited Partner, as the case may be) may require a copy of any such minutes in such manner, and upon payment of such sum, as the General Partner in its absolute discretion thinks fit.

(i)     Except where otherwise and to the extent provided in the Conditions, a resolution in writing signed by a simple majority of Limited Partners who would have been entitled to receive notice of and to attend and vote at a meeting of Limited Partners at which such a resolution would be proposed, or by their duly appointed attorneys, shall be as valid and effectual as if it had been passed at a meeting of Limited Partners duly convened and held. Any such resolution may consist of several documents in the like form each signed by one or more of the Limited Partners or their attorneys and signature in the case of a corporate body which is a Limited Partner shall be sufficient if made by a director or other duly authorised officer thereof or its duly appointed attorney.

(j)     (1)     Subject to any special voting powers or restrictions for the time being expressed in this Agreement to be attached to any interest in the Issuer, on a show of hands at a meeting of the Partners or, subject to the Conditions, a meeting of those Limited Partners, every Partner present in person and entitled to vote thereat shall have one vote.

        (2)     Subject to any special voting powers or restrictions for the time being expressed in this Agreement to be attached to any Preferred Security set out in the Conditions, on a poll each Limited Partner shall have one vote for each Preferred Security held by it.

(k)     A Partner for whom a special or general attorney is appointed or who is suffering from some other legal incapacity or interdiction in respect of whom an order has been made by any court having jurisdiction (whether in England or elsewhere) in matters concerning legal incapacity or interdiction may vote, whether on a show of hands or on a poll, by his attorney, curator, or other person authorised in that behalf appointed by that court, and any such attorney, curator or other person may vote by proxy. Evidence to the satisfaction of the General Partner of the authority of such attorney, curator or other person (or the chairman of any meeting) may be required by the General Partner or such chairman prior to any vote being exercised by such attorney, curator or other person.

(l)     (1)     No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is

given or tendered, and every vote not disallowed at such meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

(2)    Where a person is authorised under sub-paragraph (t) of this sub-clause 17.3 to represent a body corporate at a meeting of the Partners (or the Limited Partners, as the case may be), the Issuer, the General Partner or the chairman of the meeting may require him to produce a certified copy of the resolution from which he derives his authority.

(m)    On a poll a Partner entitled to more than one vote need not use all his votes or cast all the votes he uses in the same way.

(n)    The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing or if the appointor is a corporation either under seal or under the hand of an officer or attorney duly authorised.  A proxy need not be a Partner.

(o)    The instrument appointing a proxy and the power of attorney or other authority (if any) under which it is signed, or a notarially certified copy of that power or authority, shall be deposited at the Principal Place of Business within such time (not exceeding forty-eight hours) before the time for holding the meeting or adjourned meeting or for the taking of a poll at which the person named in the instrument proposes to vote as the General Partner may from time to time determine.

(p)    The instrument appointing a proxy may be in any common form or in any other form approved by the General Partner including the following form:

"Lehman Brothers UK Capital Funding IV LP

I/We [ ] of [ ] being a Partner of the above named Limited Partnership hereby appoint [ ] of [ ] or failing him [ ] of [ ] as my/our proxy to vote for me/us on my/our behalf at the meeting of Partners/or a meeting of Limited Partners as holders of the Fixed Rate Enhanced Capital Advantaged Preferred Securities of Lehman Brothers UK Capital Funding IV LP to be held on the [ ] day of [ ] and at any adjournment thereof.

Signed this [ ] day of [ ]".

(q)    Unless the contrary is stated thereon the instrument appointing a proxy shall be valid as well for any adjournment of the meeting as for the meeting to which it relates.

(r)    A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed provided that no intimation in writing of such death, insanity or revocation shall have been received by the General Partner at the registered office of the Issuer before the commencement of the meeting or adjourned meeting or the taking of the poll at which the proxy is used.

(s)    The General Partner may at the expense of the Issuer send by post or otherwise to the Partners (or the Limited Partners, as the case may be)

30

instruments of proxy (with or without provision for their return prepaid) for use at any meeting of Partners (or such Limited Partners, as the case may be) either in blank or nominating in the alternative any one or more persons. If for the purpose of any meeting invitations to appoint as proxy a person or one or more of a number of persons specified in the invitations are issued at the Issuer's expense they shall be issued to all (and not to some only) of the Partners entitled to be sent a notice of the meeting and to vote thereat by proxy.

(t)     Any body corporate which is a Partner may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of Partners (or of the Limited Partners, as the case may be) and the person so authorised shall be entitled to exercise on behalf of the body corporate which he represents the same powers as that body corporate could exercise if it were an individual.

### 17.4   Action without a Meeting

Any action that may be taken at a meeting of the Partners may be taken without a meeting if a consent in writing setting forth the action to be taken is signed by the General Partner and the requisite majority of the Limited Partners that would have been required to pass any resolution at such a meeting.

### 17.5   Minute Book

The General Partner shall cause all resolutions in writing passed by the Partners or Limited Partners and minutes of proceedings at all meetings of the Partners or Limited Partners attended by the General Partner to be entered in books kept for the purpose. Any minutes of a meeting, if purporting to be signed by the chairman of the meeting or by the chairman of the next succeeding meeting, shall be conclusive evidence of the proceedings.

### 17.6   Resolution passed at duly convened and held meetings binding on all Limited Partners

Any resolution passed at a meeting of the Limited Partners duly convened and held hereunder or written resolution passed pursuant to this clause 17 shall be binding upon all the Limited Partners whether present or not present at the meeting and whether or not voting or whether or not they have signed such resolution, as applicable, and each of them shall be bound to give effect to the resolution accordingly and the passing of any resolution shall be conclusive evidence that the circumstances justify the passing of the resolution. Notice of any resolution duly passed by the Limited Partners shall be published in accordance with the Conditions within 14 days of the passing of the resolution, provided that the non-publication of the notice shall not invalidate the resolution.

## 18.   UNDERTAKINGS OF LBHI

### 18.1   Dividend stopper

LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)     declare or pay any dividend on its shares of common stock; or

31

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year and (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock and/or common stock of LBHI equal to the amount of Distributions not paid on such Distribution Payment Date is paid to the Holders of the Preferred Securities.

18.2    **Undertaking in respect of the General Partner**

LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)    unless LBHI is being wound-up, LBHI will not take any action that would or might cause, the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)    the General Partner will at all times be a directly or indirectly wholly owned Subsidiary of LBHI unless (I) otherwise approved by the Holders in accordance with the procedure set out in this Agreement or (II) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

18.2    **Undertaking in respect of stamp taxes arising on a Preferred Securities Substitution**

LBHI undertakes that it will pay any taxes or capital duties or stamp duties payable in the UK arising on the allotment and issue of the depositary shares representing Substituted Preferred Stock. LBHI will not be obliged to pay, and each Holder (or, as the case may be, accountholder) delivering Preferred Securities and a duly completed Preferred Securities Substitution Confirmation to a Paying and Transfer Agent must pay, any other taxes, stamp duty reserves taxes and capital, stamp, issue and registration duties arising on the relevant Preferred Securities Substitution. LBHI will not be obliged to pay and each recipient must pay all, if any, taxes arising by reference to any disposal or deemed disposal of a Preferred Security in connection with such Preferred Securities Substitution.

18.3    **Undertaking in respect of listing of any Substituted Preferred Stock**

LBHI undertakes that in the event that the Preferred Securities are substituted by depositary shares representing Substituted Preferred Stock pursuant to the terms of the Preferred Securities, LBHI will apply for a listing of the Substituted Preferred Stock outside of the United States.

19.    **GENERAL**

19.1    **Notices**

Subject to any provisions to the contrary in the Conditions applicable to any Limited Partner:

(a)    Any notice or other communication including, but not limited to, any request or demand of a Limited Partner, or any consent or approval addressed to a Limited Partner must be in legible writing and in English and mailed to the Limited Partner at its address in the Limited Partnerships Register and, so long as the Preferred Securities are listed on any stock exchange or admitted

32

to trading on any regulated market, in accordance with the rules of such exchange or market.

(b)     Any notice or other communication including, but not limited to, any request or demand of the General Partner, or any consent or approval addressed to the General Partner must be in legible writing and in English and mailed for the attention of the General Partner, Lehman Brothers UK Capital Funding IV LP at the Principal Place of Business or by facsimile at the following number: 44 207 102 2999, Attention: Head of Legal Department or as the General Partner may otherwise specify.

(c)     Any notice or other communication so posted shall be deemed to be served on one day after the day it was posted.

(d)     Any Partner present in person at any meeting of the Partners shall, for all purposes, be deemed to have received due notice of such meeting and, where requisite, of the purposes for which such meeting was convened.

(e)     Any notice or document served on a Partner shall, notwithstanding that such Partner be then dead or bankrupt and whether or not the General Partner has notice of his death or bankruptcy, be deemed to have been duly served on such Partner, unless his name shall at the time of the service of the notice or document have been removed from the Limited Partnerships Register, and such service shall for all purposes be deemed a sufficient service of such notice or document on all persons interested in the interest of such Partner.

## 19.2    Governing Law and Jurisdiction

(a)     This Agreement is governed by, and shall be construed in accordance with, the laws of England.

(b)     LBHI irrevocably agrees for the benefit of the other parties that the courts of England shall have jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with this Agreement (respectively, **"Proceedings"** and **"Disputes"**) and, for such purposes, irrevocably submits to the jurisdiction of such courts.

(c)     LBHI irrevocably waives any objection which it might now or hereafter have to the courts of England being nominated as the forum to hear and determine any Proceedings and to settle any Disputes and agrees not to claim that any such court is not a convenient or appropriate forum.

(d)     LBHI agrees that the process by which any Proceedings in England are begun may be served on it by being delivered to it at the offices of the General Partner at 25 Bank Street, London E14 5LE. If the appointment of the such person ceases to be effective, LBHI shall appoint a further person in England to accept service of process on its behalf in England. Nothing contained herein shall affect the right to serve process in any other manner permitted by law.

(e)     The submission to the jurisdiction of the courts of England shall not (and shall not be construed so as to) limit the right of any party hereto or any of them to take Proceedings in any other court of competent jurisdiction, nor shall the taking of Proceedings in any one or more jurisdictions preclude the

taking of Proceedings in any other jurisdiction (whether concurrently or not) if and to the extent permitted by applicable law.

### 19.3    Waivers

(a)    Waiver of any right arising from a breach of this Agreement or of any right, power, authority, discretion or remedy arising upon default under this Agreement must be in writing and signed by the party granting the waiver or in the case of a waiver from the Limited Partners must be obtained in accordance with clause 17.

(b)    A failure or delay in exercise, or partial exercise, of:

(1)    a right arising from a breach of this Agreement; or

(2)    a right, power, authority, discretion or remedy,

does not result in a waiver of that right, power, authority, discretion or remedy.

(c)    A party is not entitled to rely on a delay in the exercise or non-exercise of a right, power, authority, discretion or remedy arising from a breach of this Agreement or on a default under this Agreement as constituting a waiver of that right, power, authority, discretion or remedy.

(d)    A party may not rely on any conduct of another party as a defence to exercise of a right, power, authority, discretion or remedy by that other party.

(e)    This sub-clause 19.3 may not itself be waived except by writing signed by the party granting the waiver.

### 19.4    Cumulative Rights

The rights, powers, authorities, discretions and remedies arising out of or under this Agreement are cumulative and do not exclude any other right, power, authority, discretion or remedy of any Partner.

### 19.5    Further Assurances

Each party must do all things and execute all further documents necessary to give full effect to this Agreement and the business of the Issuer.

### 19.6    Enforceability and Prescription

(a)    Any provision of this Agreement or the application of any provision of this Agreement which is prohibited in any jurisdiction is ineffective in that jurisdiction only to the extent of that prohibition.

(b)    Any provision of this Agreement or the application of any provision of this Agreement which is void, illegal or unenforceable in any jurisdiction does not affect the validity, legality or enforceability of that provision in any other jurisdiction or of the remaining provisions in that or any other jurisdiction.

(c)    A person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Agreement.

34

(d)    Any amount unclaimed in respect of any Preferred Security may be invested or otherwise made use of by the General Partner until claimed and shall become prescribed in accordance with the provisions of the Conditions. Upon becoming prescribed in accordance therewith, such amount shall be forfeited and shall revert to the General Partner for its own account.

### 19.7   Counterparts

(a)    This Agreement may be executed in any number of counterparts, and by the parties on separate counterparts, but shall not be effective until each party has executed at least one counterpart.

(b)    Each counterpart shall constitute an original of this Agreement, but the counterparts shall together constitute one and the same instrument.

**Schedule 1**

**Part I**

**Form of Global Certificate for Preferred Securities**
**Lehman Brothers UK Capital Funding IV LP**
(established as a limited partnership under the Limited Partnerships Act 1907 (the Act))
**€[    ] Fixed Rate Enhanced Capital Advantaged Preferred Securities**

THIS CERTIFIES THAT THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED OF One Canada Square, London E14 5AL
IS THE REGISTERED HOLDER OF [    ] FULLY PAID Fixed Rate Enhanced Capital Advantaged Preferred Securities of €1,000 in Liquidation Preference each in Lehman Brothers UK Capital Funding IV LP (the **Issuer**), subject to the Limited Partnership Agreement dated 3rd January, 2007 establishing the Issuer, transferable on the register of the Issuer upon surrender of this Global Certificate properly completed and executed on behalf of the Limited Partner and the transferee in person or by its duly authorised attorney to the Registrar or the Paying and Transfer Agent in accordance with the terms of the Limited Partnership Agreement.

By:


Authorised signatory
For and on behalf of
Lehman Brothers UK Capital Funding IV LP


We acknowledge receipt of this Global Certificate and our entry in the register of partners as Initial Limited Partner subject to the terms of the Limited Partnership Agreement dated 3rd January, 2007 establishing Lehman Brothers UK Capital Funding IV LP and hereby agree to be bound by the terms of that Agreement as Initial Limited Partner.


THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED

By:


Transfer Certificate

I, The Bank of New York Depository (Nominees) Limited, do hereby transfer for valuable consideration to _____ [*Name of transferee*] _____ [*number*] fully paid Fixed Rate Enhanced Capital Advantaged Preferred Securities of €1,000 in Liquidation Preference each (the **Preferred Securities**) registered in my name in the register of partners of Lehman Brothers UK Capital Funding IV LP (the **Register of Holders**) in accordance with the terms of the Limited Partnership Agreement in relation to Lehman Brothers UK Capital Funding IV LP and I, the said The Bank of New York Depository (Nominees) Limited, do hereby consent that my name remain on the Register of Holders until such time as the transferee's name may be entered thereon by or on behalf of the General Partner and published in the London Gazette as required by the Act; and I, the said _____ [*Name of transferee*] do hereby agree to take the Preferred Securities in accordance with and on the terms of, and agree to be bound by the terms of, the Limited Partnership Agreement dated 3rd January, 2007 in relation to Lehman Brothers UK Capital Funding IV LP and to be

registered as the limited partner in respect thereof and to release and indemnify The Bank of New York Depository (Nominees) Limited in respect of any obligations in respect of the Preferred Securities.


**As witness our hands**

**Signed by the said**
**on the**　　　　　**day of**
**in the presence of:**

_____
**Witness**

_____
**Transferor**


**Signed by the said**
**on the**　　　　　**day of**
**in the presence of:**

_____
**Witness**

_____
**Transferee**

**Part II**
**Form of Definitive Certificate for Preferred Securities**
**Lehman Brothers UK Capital Funding IV LP**
(established as a limited partnership under the Limited Partnerships Act 1907 (the Act))
**€[    ] Fixed Rate Enhanced Capital Advantaged Preferred Securities**

THIS CERTIFIES THAT [LIMITED PARTNER]
OF [*ADDRESS*]
IS THE REGISTERED HOLDER OF [*number*] FULLY PAID €[    ] Fixed Rate Enhanced Capital
Advantaged Preferred Securities of €1,000 in Liquidation Preference each in Lehman Brothers UK
Capital Funding IV LP (the **Issuer**), subject to the Limited Partnership Agreement dated 3rd January
2007 establishing the Issuer, transferable on the register of the Issuer upon surrender of this Definitive
Certificate properly completed and executed on behalf of the Limited Partner and the transferee in
person or by its duly authorised attorney to the Registrar or the Paying and Transfer Agent in
accordance with the terms of the Limited Partnership Agreement.

By:

Authorised signatory
For and on behalf of
Lehman Brothers UK Capital Funding IV LP

(*on reverse of Definitive Certificate:*)

Transfer Certificate

I, [*Name of transferor*], do hereby transfer for valuable consideration to [*Name of transferee*]
[*number*] fully paid Fixed Rate Enhanced Capital Advantaged Preferred Securities of €1,000 in
Liquidation Preference each (the **Preferred Securities**) registered in my name in the register of
partners of Lehman Brothers UK Capital Funding IV LP (the **Register of Holders**) in accordance
with the terms of the Limited Partnership Agreement dated 3rd January, 2007 in relation to Lehman
Brothers UK Capital Funding IV LP and I, the said [*Name of transferor*], do hereby consent that my
name remain on the Register of Holders until such time as the transferee's name may be entered
thereon by or on behalf of the general partner and published in the London Gazette as required by the
Act; And I the said [*Name of transferee*] do hereby agree to take the Preferred Securities in
accordance with and on the terms of, and agree to be bound by the terms of, the Limited Partnership
Agreement dated 3rd January, 2007 in relation to Lehman Brothers UK Capital Funding IV LP and to
be registered as the limited partner in respect thereof and to release and indemnify [*Name of
transferor*] in respect of any obligations in respect of the Preferred Securities.

As witness our hands

Signed by the said
on the                day of
in the presence of:-

_____          _____
Witness                                          Transferor

Signed by the said
on the                day of
in the presence of:

_____          _____
Witness                                          Transferee

**IN WITNESS WHEREOF,** the parties have hereunto set their hands as of the date first above written.

**LB GP NO. 1 LTD.**
**as General Partner**

By:

**THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**

By:

**LB INVESTMENT HOLDINGS LTD.**
**as Preferential Limited Partner**

By:

**LEHMAN BROTHERS HOLDINGS INC.**

By:

| CARLO PELLERANI |
| Authorised Signatory |

15616-01331 ICM:3788215.3

39

**IN WITNESS WHEREOF,** the parties have hereunto set their hands as of the date first above written.


**LB GP NO. 1 LTD.**
**as General Partner**

By:


**THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**

By: _[signature]_

**LB INVESTMENT HOLDINGS LTD.**
**as Preferential Limited Partner**

By:


**LEHMAN BROTHERS HOLDINGS INC.**

By:


15616-01331 ICM:3788215.3


39