BROWN RUDNICK LLP
Steven B. Levine
Peter Declercq
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

*Counsel to the Ad Hoc Group of Lehman Brothers*
*Treasury Co. B.V. Noteholders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|   | : |   |
| Lehman Brothers Holdings, Inc., *et al*. | : | Case No. 08-13555 (JMP) |
|   | : |   |
|   | : | (Jointly Administered) |
| Debtors. | : |   |
|   | : |   |

-----------------------------------------------------x

## NOTICE OF APPLICATION OF THE AD HOC GROUP OF HOLDERS OF NOTES ISSUED BY LEHMAN BROTHERS TREASURY CO. B.V. AND GUARANTEED BY LEHMAN BROTHERS HOLDINGS, INC., PURSUANT TO 11 U.S.C. § 503(b) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES FOR COUNSEL'S SERVICES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES

**PLEASE TAKE NOTICE** that a hearing on annexed application (the "<u>Application</u>") of the Ad Hoc Group of Holders of Notes issued by Lehman Brothers Treasury Co. B.V. and guaranteed by Lehman Brothers Holdings, Inc. ("<u>Brown Rudnick</u>") pursuant to section 503(b) of the Bankruptcy Code for allowance of administrative expenses for counsel's services incurred in connection with making a substantial contribution in these Chapter 11 Cases will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court"), on **August 15, 2012 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Brown Rudnick LLP, One Financial Center, Boston, MA 02111, Attn: Steven B. Levine, Esq.; (iii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller, Esq., attorneys for the Debtors; (iv) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys to the official committee of unsecured creditors appointed in these cases; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) any other person or entity with a particularized interest in the subject matter of the Application, so as to be so filed and received by no later than **July 25, 2012 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Application is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 5, 2012
New York, New York

**BROWN RUDNICK LLP**

By: /s/ Steven B. Levine_____
Steven B. Levine
Peter J.M. Declercq
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel to the Ad Hoc Group of Lehman Brothers Treasury Co. B.V. Noteholders*

Hearing Date and Time: August 15, 2012 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: July 25, 2012 at 4:00 p.m. (Prevailing Eastern Time)

BROWN RUDNICK LLP
Steven B. Levine
Peter J.M. Declercq
One Financial Center
Boston, MA  02111
Telephone:  (617) 856-8200
Facsimile: (617) 856-8201

*Counsel to the Ad Hoc Group of Lehman Brothers
Treasury Co. B.V. Noteholders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                      :
In re:                                                :        Chapter 11
                                                      :
Lehman Brothers Holdings, Inc., *et al*.              :        Case No. 08-13555 (JMP)
                                                      :
                                                      :        (Jointly Administered)
                              Debtors.                :
                                                      :
------------------------------------------------------x

## SUMMARY COVER SHEET FOR APPLICATION OF THE AD HOC GROUP OF HOLDERS OF NOTES ISSUED BY LEHMAN BROTHERS TREASURY CO. B.V. AND GUARANTEED BY LEHMAN BROTHERS HOLDINGS, INC., PURSUANT TO 11 U.S.C. § 503(b) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES FOR COUNSEL'S SERVICES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES

| Name of Applicant: | Brown Rudnick LLP |
|---|---|
| **Compensation Period for which compensation and reimbursement is sought:** | September 1, 2009 through March 6, 2012[1] |
| **Brown Rudnick Fees:** | $3,626,023.26 |
| **Brown Rudnick Expenses:** | $114,994.59 |
| **Total Amount Requested:** | $3,741,017.85 |

---

[1]    Brown Rudnick LLP reserves the right to request allowance of additional fees and expenses incurred since March 6, 2012.

BROWN RUDNICK LLP
Steven B. Levine
Peter J.M. Declercq
One Financial Center
Boston, MA  02111
Telephone:  (617) 856-8200
Facsimile: (617) 856-8201

*Counsel to the Ad Hoc Group of  Lehman Brothers
Treasury Co. B.V. Noteholders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
                                                     :
In re:                                               :    Chapter 11
                                                     :
Lehman Brothers Holdings, Inc., *et al*.             :    Case No. 08-13555 (JMP)
                                                     :
                                                     :    (Jointly Administered)
                         Debtors.                    :
                                                     :
-----------------------------------------------------x

### APPLICATION OF THE AD HOC GROUP OF HOLDERS OF NOTES ISSUED BY LEHMAN BROTHERS TREASURY CO. B.V. AND GUARANTEED BY LEHMAN BROTHERS HOLDINGS, INC., PURSUANT TO 11 U.S.C. § 503(b) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES FOR COUNSEL'S SERVICES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES

TO:    THE HONORABLE JAMES M. PECK,
       UNITED STATES BANKRUPTCY JUDGE

The undersigned ad hoc group of holders (or investment advisors or managers for a fund

or other entity which is a beneficial holder) of notes (the "LBT Notes," the holders thereof, the

"LBT Noteholders" and the undersigned ad hoc group of LBT Noteholders, the "LBT Ad Hoc

Group")[1] issued by Lehman Brothers Treasury, Co. B.V. ("LBT"), a foreign subsidiary of the

---

[1]    The following is a list of institutions who have participated in the LBT Ad Hoc Group  from the time of its formation to date.  Those names marked with an asterisk ("*") are current members: Arrowgrass Master Fund; Arrowgrass Special Situations Master Fund; Citigroup Global Markets Inc*; Cyrus Capital Partners LP*; Monarch Alternative Capital LP*; Serengeti Asset Management LP; Silverpoint Capital LP*; TPG Opportunity Fund I, L.P.*; TPG Opportunity Fund III, L.P.*; Varde Partners, Inc.*; Venor Capital Management LP; Fir Tree Partners LP*; Ore

Debtor Lehman Brothers Holdings, Inc. ("LBHI") that is subject to Dutch insolvency proceedings, which notes were guaranteed by LBHI (the "LBHI Guaranty Claims"), hereby submits this application (the "Application") on behalf of the LBT Ad Hoc Group, pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4), for allowance of legal fees and expenses in the aggregate amount of $3,741,017.85, for professional services rendered by Brown Rudnick, LLP ("Brown Rudnick" and the "Brown Rudnick Fees and Expenses") to such group  from September 1, 2009, though March 6, 2012 (the "Compensation Period"),[2] as an administrative expense incurred in connection with making a substantial contribution in these chapter 11 cases (the "Chapter 11 Cases").  In support of this Application, Brown Rudnick states as follows:

## PRELIMINARY STATEMENT

1.      As recognized by the Court, the Lehman Brothers bankruptcy is the "biggest, the most incredibly complex, the most impossibly challenging international bankruptcy that ever was."  See Tr. of Hr'g, dated December 6, 2011, at 68:24-25 [Docket No. 23130] ("Confirmation Hr'g Tr.").  But despite the size and complexity, the Debtors were able to obtain nearly unanimous creditor support and approval for their Third Amended Joint Chapter 11 Plan [Docket No. 22737] (the "Plan"), which was predicated on a series of interconnected settlements (the "Plan Settlements") that resolved virtually all of the contested issues in these Chapter 11 Cases.  As the Court acknowledged at the confirmation hearing, this unprecedented level of creditor consensus was made possible not only through the efforts of the Debtors and the estate

---

Hill Partners LLC*; The Royal Bank of Scotland*; Aurelius Capital Management, LP*; Morgan Stanley & Co. International PLC*; Stone Lion Capital Partners L.P.; York Capital Management*; Alden Global Capital*.

[2]      By this Application, Brown Rudnick is requesting, on behalf of the LBT Ad Hoc Group, payment of expenses, compensation and reimbursement incurred through March 6, 2012, the Effective Date of the Plan.  A summary of Brown Rudnick's  professional fees and expenses is attached hereto as Exhibit A.  The LBT Ad Hoc Group is providing the detailed time entries of Brown Rudnick's professionals to (a) the Court, (b) the U.S. Trustee, (c) the Debtors, (d) counsel for the Debtors, (e) counsel for the Creditors' Committee, and (f) counsel for the Fee Committee.

professionals, but also through the contributions of the many individual constituencies and their professionals who, as sometimes adversaries and sometimes allies, were ultimately able to work constructively together to resolve the key issues in these cases.  Id.

2.    Brown Rudnick and the LBT Ad Hoc Group it represented played a pivotal role in this process.  The LBT Noteholders had primary claims against LBT as the issuer of these Notes and the LBHI Guaranty Claim against LBHI.  The proceeds of the notes were on-lent by LBT to LBHI, meaning that LBT also holds an intercompany claim (the "LBT Intercompany Claim") against LBHI.  Because the primary asset from which the claims of LBT Noteholders will be paid in LBT's Dutch bankruptcy proceedings is the LBT Intercompany Claim against LBHI and the LBT Noteholders also have their own direct LBHI Guaranty Claims against LBHI, the treatment of both the LBT Intercompany Claim and the LBHI Guaranty Claims in the Chapter 11 Cases implicated the critical, over-arching issues in these cases.

3.    The central tension in these cases was between LBHI Senior Noteholders who filed a plan calling for full substantive consolidation, on the one hand, and the so-called "Big Banks," which had claims against Lehman Brothers Special Finance, Inc. ("LBSF"), Lehman Brothers Commercial Paper, Inc. ("LCPI") and other LBHI subsidiaries, who alleged that there was no basis for substantive consolidation (but that the intercompany claims due to LBHI from such subsidiaries should be re-characterized and disallowed as equity contributions on the other hand).[3]  As a primary beneficiary of both the LBT Intercompany Claim and direct holders of LBHI Guarantee Claims, the LBT Ad Hoc Group had a keen interest in the ultimate resolution of the consolidation issue.  Yet, their status as significant creditors of LBHI meant that

---

[3]    See Ad Hoc Group of Lehman Brothers Creditors' Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings, Inc. and certain of its affiliated Debtors other than Merrit, LLC, LB Somerset LLC and LB Preferred Somerset LLC [Docket. No. 13504] (the "Sub Con Plan"); See Joint Chapter 11 Plan for Lehman Brothers Holdings, Inc. and its Affiliated Debtors Other than Merrit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents (the "Non Con Plan").

they also shared a concern with the LBHI Senior Noteholders in ensuring that LBHI received a fair allocation of assets from other Debtors and foreign affiliates.

4.      In addition, as holders of complex structured securities that relied on complex, derivative-based formulas (often dependent on the value of an index on a date far in the future) to determine their final redemption amount, the members of the LBT Ad Hoc Group also played a crucial role in helping the Debtors and other constituencies develop and refine the Structured Securities Valuation Methodology ("SSVM"), which all constituencies ultimately accepted as a practical, efficient means for valuing the LBT Notes and other structured securities. The constructive collaboration of Brown Rudnick and the LBT Ad Hoc Group and other constituencies in developing this valuation methodology allowed the estate to avoid the substantial expense and delay of having to engage in individual valuation fights for each of the thousands of series of the LBT Notes and other structured securities.

5.      Brown Rudnick and the LBT Ad Hoc Group substantially contributed to the success of these Chapter 11 Cases by, among other things:

- Playing a leading role in the plan negotiations between the Debtors and other constituencies and  helping to facilitate the global compromise on the substantive consolidation and intercompany claim issues embodied in the plan as well as the treatment of LBT-related claims thereunder;

- Engaging in a constructive dialogue with the Debtors throughout the case regarding the appropriate valuation methodologies to deploy in connection with all Structured Securities claims (which include the LBHI Guarantee Claims), including making several specific suggestions for changes to the Debtors' original SSVM proposal which were incorporated into the Structured Securities Valuation Methodologies approved by this Court and ultimately applied to LBT Note and other Structured Securities claims;

- Providing the Debtors and Official Creditors' Committee with several comprehensive written analyses of the prospects of employing substantive consolidation of LBT and other foreign affiliates or achieving a similar result through another legal theory and related issues;  and

- Having several members of the LBT Ad Hoc Group become initial signers of Plan Support Agreements and then serve as vocal advocates for other funds and institutions to sign such agreements.

6.        The efforts of Brown Rudnick and the LBT Ad Hoc Group resulted in improved treatment and an increased recovery not only for members of the LBT Ad Hoc Group, but also for other LBT Noteholders and holders of claims based on the Structured Securities in general.  Under the Plan, the LBT Intercompany Claim was allowed in full in the amount of approximately $34 billion as senior unsecured debt, entitled to pour-overs from subordinated debt classes, and LBHI Guarantee Claims were fully allowed as senior third party guarantee claims entitled to pour-overs from two of three subordinated debt classes, and subject only to a 20% redistribution on account of substantive consolidation.  This treatment was a significant improvement from that provided in the original Joint Chapter 11 Plan of LBHI and its Affiliated Debtors filed by the Debtors in March 2010 (the "Original Plan").  Under the Original Plan, the Debtors proposed to allow the LBT Intercompany Claim at 50% and without treatment as senior debt.  The Original Plan also contemplated capping allowance of the LBHI Guarantee Claims at $26.4 billion (compared with their face amount of approximately $31.1 billion), and subjecting recoveries thereon to a 30% redistribution on account of substantive consolidation.  The estimated recovery on the LBT Intercompany Claims and the LBHI Guarantee Claims under the Original Plan was approximately 22%, compared with a total estimated recovery of 27.8% under the Plan that was approved by the Court.  The efforts of Brown Rudnick and the LBT Ad Hoc Group were critical in securing the treatment of the LBT-related claims as provided under the Plan.

7.        While the LBT Ad Hoc Group may not have appeared on every motion that came before this Court, as is not unusual in a case of this magnitude and complexity, its

contributions took place mainly outside of the Court room in conference rooms and on conference calls and in frequent direct communications with key players in these cases.

8.      As set forth more fully herein, the Brown Rudnick Fees and Expenses are reasonable in light of the work performed and the results that were achieved, benefitting not only the Debtors and LBT Noteholders, but all of the Debtors' stakeholders.  Further, the work performed by Brown Rudnick was not duplicative of services provided by any other professionals.  Now, after one of the most successful bankruptcy cases in history, culminating in the confirmation of a fully consensual plan of reorganization, Brown Rudnick respectfully requests that this Court determine that it has made a substantial contribution to these cases.[4]

## BACKGROUND

## I.      The Chapter 11 Cases

9.      On September 15, 2008 (the "Petition Date"), and in the weeks thereafter, LBHI and certain of its subsidiaries (together with LBHI, the "Debtors") commenced the above-captioned Chapter 11 Cases. The Chapter 11 Cases were consolidated for procedural purposes and jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

10.     On September 19, 2008, LBT filed a petition with the Amsterdam District Court for the Granting of a provisional suspension of payment (*voorlopige surséance van betaling*) proceeding and appointment of an administrator (*bewindvoerder*).  On October 8, 2008, the Amsterdam District Court granted the administrator's request to order the bankruptcy (*faillissement*) of LBT.  LBT's Dutch insolvency proceedings have been pending since that time

---

[4]      Substantially all of the Brown Rudnick Fees and Expenses already have been paid by members of the LBT Ad Hoc Group so the administrative claim sought herein is intended only to reimburse the LBT Ad Hoc Group for professional fees and costs that they have already paid.

and, to date, no plan of distribution of LBT's assets has yet been approved by the Amsterdam District Court.

11.      On December 6, 2011, this Court confirmed the Debtors' Plan, which was premised on the Plan Settlements that resolved virtually all of the contested issues in the Chapter 11 Cases and garnered the support of close to 100% of the Debtors' voting creditors.  Pursuant to Section 2.2 of the Plan, the Debtors are obligated to pay awards for professional compensation for services rendered and/or reimbursement of professional fees and expenses incurred through and including the Effective Date (March 6, 2012) that have been allowed by the Court as a "substantial contribution" under sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.  See Plan § 2.2.  In accordance with the terms of the Plan governing awards for professional compensation for services rendered, Brown Rudnick is submitting this application within 120 days of the Effective Dave.  See id.

12.      Under the Plan and the LBT Settlement Agreement incorporated therein,[5] the LBT Intercompany Claim was allowed in full in the amount of approximately $34 billion as senior unsecured debt entitled to pour-overs from subordinated debt classes.  The LBHI Guarantee Claims were fully allowed as senior third party guarantee claims entitled to pour-overs from two of three subordinated debt claims.  In settlement of the potential risk of substantive consolidation of Lehman subsidiaries or any other legal theory which would have achieved the same economic effect (the "Consolidation Issue"), a plan adjustment equal to 20% of the distributions which otherwise would have been distributed to holders of the LBHI Guarantee Claims was, instead, reallocated to LBHI Senior Noteholders and LBHI general unsecured creditors.  LBHI also agreed to reduce its intercompany claims due from LBSF and

---

[5]      See Plan, Schedule 6.

LCPI, and certain other subsidiaries, by 20%.    Finally, with the approval of this Court, the

Debtors, Official Creditors Committee and other constituencies agreed to the use of the SSVM to

determine the allowed claims amounts of the LBT Notes and other structured securities.[6]

## II.    The LBT Ad Hoc Group

13.    The members of the LBT Ad Hoc Group or their managed fund entities

collectively are the beneficial holders of nearly $3 billion in face amount of the LBT Notes.    The

LBT Notes are so-called "Structured Securities," which term the Debtors use to describe various

complex securities issued by LBHI, or issued by one of LBHI's affiliates and guaranteed by

LBHI.    These securities, also referred to as "fair market value" LBT Notes,[7] provide for a return

to investors at maturity and/or the payment of periodic interest that is linked to the performance

of an underlying asset or group of assets including, *inter alia*, global indices, single stocks,

currencies, interest rates, and various credit derivative instruments and baskets thereof.    These

notes were particularly challenging to value because the amount ultimately due under them often

depends on the value of a securities index or a basket of stocks as of a date several years after the

Petition Date.    Pursuant to intercompany loan agreements, LBT lent substantially all of the

proceeds of these notes to LBHI.    Because the LBT Notes are guaranteed by LBHI, the LBT

Noteholders hold guarantee claims against LBHI in its U.S. Chapter 11 case, in addition to the

primary claims against LBT in its Dutch insolvency proceedings.    LBT's principal asset is the

---

[6]    See Order Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019
Approving Procedures for the Determination of the Allowed Amount of Claims Filed Based on Structured Securities
Issued or Guaranteed by Lehman Brothers Holdings, Inc. [Docket No. 19120]; Exhibit B, Amended Motion
pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of
Procedures for Determining the Allowed Amount of Claims Based on Structured Securities Issued or Guaranteed by
Lehman Brothers Holdings Inc. [Docket. No. 18127]; see also Structured Securities Valuation Methodologies,
Exhibit 11, Debtors' Disclosure Statement for Third Amended Joint Plan of Lehman Brothers Holdings Inc. and Its
Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 19629].

[7]    Id.

LBT Intercompany Claim, which is the primary source of recovery for the LBT Noteholders in the Dutch insolvency proceedings.

14.     As LBT's principal creditors, members of the LBT Ad Hoc Group were prime beneficiaries of the LBT Intercompany Claim against LBHI.  Since they each also held a direct LBHI Guaranty Claim against LBT, the interests of the LBT Noteholders were directly affected by the Consolidation Issue which was the central dispute in these cases.  If granted, consolidation would have eliminated all intercompany claims between the Lehman affiliates, including the LBT Intercompany Claim and left holders of LBT Notes with only a single recovery against LBHI.  But even though the LBT Noteholders opposed substantive consolidation of the Lehman affiliates (as did creditors of other Lehman operating companies), as creditors holding guarantee claims against LBHI (and as the prime beneficiaries of the LBT Intercompany Claim), they shared a common interest with the LBHI Senior Noteholders in ensuring that LBHI received a fair distribution of the Debtors' assets.

15.     On these issues, the LBT Ad Hoc Group were allied with the Dutch Bankruptcy Trustees of LBT and a separate ad hoc group of holders of so-called "par par" LBT Notes (i.e., "plain vanilla" notes with fixed principal amounts and readily calculable interest payments) (the "LBT Par Group").  However, that shared interest did not extend to the method of valuing the more complex, fair market value LBT Notes described above.  The LBT Par Group had an economic interest in seeking to depress the allowed amount of the fair market value LBT Note Claims and, as fiduciary for all LBT creditors, the Dutch Bankruptcy Trustees of LBT merely wanted to ensure a fair result.

16.     Thus, devising a methodology for valuing the complex claims under the LBT Notes, which would garner the support of all LBT constituencies proved to be another

challenge.  Through Brown Rudnick, members of the LBT Ad Hoc Group worked closely with the Debtors to develop and then fine-tune the SSVM, which is based on the Debtors' prepetition internal mark-to-markets value as of the global close, with adjustments, and helped ensure that it became recognized by all affected creditor constituencies as a practical and fair method of determining the value of the Structured Securities.  Ultimately, after it was modified to incorporate certain suggestions made by the LBT Ad Hoc Group and others, this methodology, garnered the support of the LBT Ad Hoc Group, LBT Par Group and other constituencies, as well as the Court and was deemed by all constituencies to have legitimacy because, among other things, it was based upon the calculations performed by the Debtors in the ordinary course of their business for regulatory and capital purposes prior to the Petition Date, and not by potential litigants in connection with the Debtors' Chapter 11 Cases.  The LBT Ad Hoc Group and Brown Rudnick were in constant communication with the Debtors while this methodology was being developed and fine-tuned.  During 2010 and 2011, at meetings with the Debtors and through several written comment letters, the LBT Ad Hoc Group and Brown Rudnick suggested several specific changes to the SSVM intended to make the methodology fairer and more consistent with fundamental principles of the U.S. bankruptcy law, many of which were ultimately included in the SSVM, as approved by the Court with overwhelming creditor support.

III.    **Brown Rudnick's Role**

17.    In the Fall of 2008, Brown Rudnick was initially approached by certain members of what ultimately became the LBT Ad Hoc Group to evaluate the treatment of claims under the LBT Notes held against LBT in connection with LBT's Dutch insolvency proceedings.

During the Winter of 2009, the LBT Ad Hoc Group further requested that Brown Rudnick represent it in connection with these Chapter 11 Cases.[8]

18.     From the Winter of 2009 through confirmation of the Plan in December, 2011, the LBT Ad Hoc Group played a central role in these Chapter 11 Cases and, through Brown Rudnick:

- prepared a series of written analyses of the legal issues implicated by the existence of the separate LBHI Guarantee Claims and the LBT Intercompany Claim, including the prospects of substantive consolidation of US Debtors and foreign affiliates, various other legal theories which would purportedly have allowed the functional equivalent of consolidation or resulted in the disallowance of the LBHI Guaranty Claims, the extent to which such claims constituted senior debt under various subordination provisions and other issues bearing on the appropriate treatment of such claims and inter-Debtor issues;[9]

- Participated in several meetings and was in constant communication with the Debtors, Official Committee of Unsecured Creditors, LBT Bankruptcy Trustees, LBT Par Group, LBHI Senior Noteholders, "Big Banks" and other key constituencies regarding the resolution of these issues and the appropriate

---

[8]        To be sure, Brown Rudnick is only seeking reimbursement of professional fees on behalf of the LBT Ad Hoc Group that were incurred as a result of a making substantial contribution to the Debtors' U.S. Chapter 11 Cases as a whole.  Although Brown Rudnick did not have separate billing matters for the US and Dutch cases, Brown Rudnick has reviewed the invoices provided to the LBT Ad Hoc Group and has, to the best of its ability made a good faith effort to identify and separate out fees and expenses that were incurred in the Chapter 11 Cases from those incurred for the benefit of specific members of the LBT Ad Hoc Group primarily related to the Dutch proceedings or otherwise were not incurred in connection with these Chapter 11 Cases.  Indeed, Brown Rudnick is seeking reimbursement of only $3,626,023.26 in professional fees, as compared to the total amount of approximately $5.5 million in professional fees billed to the LBT Ad Hoc Group during the Contribution Period.  As for expenses, Brown Rudnick is seeking reimbursement of only $114,994.59 out of approximately $496,191.92 in expenses billed to the LBT Ad Hoc Group during the Contribution Period.  The expense figure was derived by first deducting expenses (such as expert fees of a Dutch law firm) that clearly were attributable only to the Dutch work and then allocating the remaining fees and expenses between US and Dutch work based upon the percentage of total hours of each respective invoice for which a substantial contribution claim is being asserted in these Chapter 11 Cases.  In addition, although Brown Rudnick billed the LBT Ad Hoc Group for the professional services and expenses in pounds sterling, the Brown Rudnick Fees and Expenses requested in this Application are in U.S. dollars.  Brown Rudnick converted the Brown Rudnick Fees and Expenses from GBP to USD using the conversion rate in effect on the date of the invoice on which the relevant professional services or expenses appeared.

[9]        In addition to consolidation, recharacterization of intercompany claims and valuation of structured securities described above, the legal issues raised included various potential U.S. and English law challenges to the LBHI Guaranty Claims or LBT Intercompany Claim, as well as whether there was a legal basis to achieve the equivalent of consolidation in respect of LBHI's foreign affiliates which are in their own insolvency proceedings in the countries of their organization.

valuation and treatment of both claims based on the LBT Notes as well as the
LBT Intercompany Claim;

- Helped developed the discovery protocols;

- Assisted several members of the LBT Ad Hoc Group in their roles as co-
  proponents of Non-Consolidation Plan;

- Was integrally involved in the intense negotiations leading up to the global
  compromise and settlement of the substantive consolidation and related issues and
  the treatment of the LBT-related claims leading up to the confirmed Plan. See
  Confirmation Hr'g Tr. at 20-21; and

- Had five (5) members, holding more than 50% in amount of the aggregate LBT
  Note Claims in the LBT Ad Hoc Group, become initial signers of Plan Support
  Agreements and serve as vocal advocates urging other funds and institutions to
  sign such agreements.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

19.    The Court has jurisdiction to consider the Application pursuant to 28

U.S.C. §§ 157 and 1334, and the Standing Order of Referral of Cases to Bankruptcy Court

Judges of the District Court for the Southern District of New York, dated July 10, 1984 (Ward,

Acting C.J.).  Consideration of the Application is a core proceeding pursuant to 28 U.S.C. § 157.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

### I.    Legal Basis for the Relief Requested

20.    Section 503(b) of the Bankruptcy Code provides that where a creditor has

made a "substantial contribution" to a chapter 11 case, such creditor shall receive an

administrative expense claim equal to its actual and necessary expenses, including the reasonable

fees and expenses of its attorneys.  See 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4); see also

Salomon N. Am. v. Knupfer (In re Wind N' Wave), 328 B.R. 176 (B.A.P. 9th Cir. 2005) (as long

as a substantial contribution has been made, the contributing party need not have any expense

other than attorneys' fees as a prerequisite to an award under section 503(b)), rev'd in part on

other grounds by 2007 U.S. App. LEXIS 25507 (9th Cir. Nov. 1, 2007).   Section 503(b)(4)

allows a law firm representing the creditor to bring such a claim on the creditor's behalf.  See 11

U.S.C. § 503(b)(4); see also In re Oxford Homes, Inc., 204 B.R. 264, 268 (Bankr. D. Me. 1997)

(noting that it may be appropriate to consider counsel's application to have been made on behalf

of the creditor "so as to proceed directly to merits without multiplying proceeding by standing on

formalities").    Here, the LBT Ad Hoc Group supports Brown Rudnick's request for

reimbursement of the Brown Rudnick Fees and Expenses in order to reimburse the LBT Ad Hoc

Group for professional fees and expenses already paid by them.

21.    In order to receive such an administrative expense claim for a substantial

contribution, the applicant must show by a preponderance of the evidence that it rendered a

substantial contribution, demonstrating a credible connection between its efforts and the

reorganization process.  In re Granite Partners, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997) ("The

substantial contribution test is applied in hindsight, and scrutinizes the actual benefit to the case.

Accordingly, the applicant must show a "causal connection" between the service and the

contribution.") (citing In re DP Partners Ltd. P'ship, 106 F.3d 667, 673 (5th Cir. 1997)) (citations

and quotations omitted).

22.    Generally, a substantial contribution award is made where there has been

"extraordinary creditor actions which lead directly to tangible benefits to the creditors."  In re

Bayou Group, LLC, 431 B.R. 549, 560-61 (Bankr. S.D.N.Y. 2010); In re Dana Corp., 390 B.R.

100, 108 (Bankr. S.D.N.Y. 2008) (substantial contribution test satisfied when an "actual and

demonstrable benefit" is shown).  Courts consider the following factors in deciding whether a

substantial contribution has been made: (1) whether the services were provided to benefit solely

the client or all the parties in the case; (2) whether the services conferred a direct, significant and demonstrably positive benefit upon the estate; and (3) whether the services were duplicative of services performed by others.  In re Best Prods. Co., Inc., 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994).

23.    In addition, although the amount to be allowed as an administrative expense must be measured in dollars and cents, the question whether the estate has been benefitted cannot be so narrowly confined; the estate may receive "other less readily calculable benefits." In re Am. Plumbing & Mech., Inc., 327 B.R. 273, 282-83 (Bankr. W.D. Tex. 2005) (quoting In re TransAmerican Natural Gas Corp., 978 F.2d 1409, 1420 (5th Cir. 1992) and noting that such benefits may include "lowering the 'temperature' of a case by preventing excessive litigation and encouraging cooperation"); see also In re General Electrodynamics Corp., 368 B.R. 543, 554-56 (Bankr. N.D. Tex. 2007) (finding the applicant's actions as a surrogate creditors' committee that policed the debtors a substantial contribution); In re Mechem Financial Inc., 152 B.R. 57, 60 (Bankr. W.D. Pa. 1993) (the elucidation of facts by debtor's former director that brought the debtor's illicit activities to light was a substantial contribution in assisting the trustee to carry out his responsibilities; without such efforts, the debtor would have dissipated all assets); In re Texaco, Inc., 90 B.R. 622, 626-630 (Bankr. S.D.N.Y. 1988) (finding the work performed by shareholder attorneys, which resulted in adequate disclosure to the shareholders and elucidation of the facts, was a substantial contribution to the debtors' chapter 11 cases); In re Paolino, 71 B.R. 576, 580 (Bankr. E.D. Pa. 1987) (urging the appointment of a chapter 11 trustee constituted a substantial contribution); In re Baldwin-United Corp., 79 B.R. 321, 343 (Bankr. S.D. Ohio 1987) (creditor's counsel acted as mediator and facilitator between other creditor's groups in successful negotiations leading to confirmation of chapter 11 plan).

## II.    Brown Rudnick's Services Conferred A Benefit On The Estates

24.    By all accounts, the Debtors' bankruptcy was the largest and most complex in United States history.  The LBT Ad Hoc Group's and Brown Rudnick's contribution to these Chapter 11 Cases was substantial as their services benefited not only the LBT Ad Hoc Group, but also all LBT Noteholders, other holders of claims based on Structured Securities and other unsecured creditors generally.  Specifically, Brown Rudnick's services contributed to the Debtors and their stakeholders resolving the central issues in this case as well as devising the appropriate method to value Structured Securities Claims.    Litigation on these issues could otherwise have tied up these Chapter 11 Cases for years and cost tens (maybe hundreds) of millions of dollars.  Brown Rudnick also played a leading role in the negotiations culminating in the fully consensual plan which resolved disagreement between the Debtors and various creditor constituencies as to the appropriate method for valuing the complex LBT Note claims.

## III.    The Administrative Expenses Sought Include Reasonable Compensation and Actual, Necessary Expenses

25.    By way of reference, when reviewing the reasonableness of attorneys' fees of estate professionals, bankruptcy courts in this jurisdiction engage in a "lodestar" analysis.  In re 1031 Tax Group, LLC, 2009 WL 4806199 at *1-2 (Bankr. S.D.N.Y. 2009).  As explained in In re 1031 Tax Group, LLC:

> A lodestar analysis consists of two steps.  First, courts calculate a lodestar amount as a guide to determine what fee is reasonable under the circumstances. This is completed by multiplying the reasonable number of hours expended by the reasonable billing rate . ... Courts then determine whether any adjustment to this amount is warranted under the twelve factors announced by the Johnson court . . . [which are]: (1) the time and labor required for the matter; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the services appropriately; (4) the preclusion of the professional from taking other cases by working on the matter; (5) the customary fee involved in similar instances; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client; (8) the sums involved and the results obtained; (9) the experience

and ability of the employed professional; (10) whether the case is "desirable" or not; (11) the length of the relationship between the professional and the client; and (12) what awards were granted in similar cases

Id. (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 720 (5th Cir. 1974), abrogated on other grounds)); see also In re Worldwide Direct, Inc., 334 B.R. 112, 130 (Bankr. D. Del. 2005) ("In determining the reasonableness of fees, courts have historically used the lodestar approach which multiplies a reasonable hourly rate by the reasonable number of hours to perform the task required.").

26.     The Brown Rudnick Fees and Expenses are reasonable in light of the work performed and the results achieved.  Brown Rudnick provided substantial legal services that benefited the Debtors' estates and contributed to the Debtors' successful confirmation of the Plan.

## IV.    Brown Rudnick's Services Were Not Duplicative Of Any Services Performed By Other Parties In Interest

27.     In considering this factor, the Court should take note of whether there were other case parties performing the same functions as the group seeking compensation for having made a "substantial contribution" in the case.  See Energy Partners, 422 B.R. at 84-85 (holding that there was no duplication of efforts where there "were no other equity holders" seeking the formation of an official equity security holders' committee); Gen. Electrodynamics, 368 B.R. at 554 & n. 27 (noting that the "performance of functions that in another case might be duplicative weighs here, in the absence of any actual or potential duplication, in favor of granting the § 503(b) Application").

28.     Brown Rudnick's efforts focused on issues relating to the enforcement of substantive rights and remedies of the holders of the LBT Notes, with the aim of maximizing recoveries of LBT Noteholders both in these Chapter 11 Cases and in LBT's Dutch insolvency

proceedings.[10]    Indeed, the particular calculations underlying the LBT Notes held by the members of the LBT Ad Hoc Group were different than any other constituency of LBT Noteholders.  Brown Rudnick is not aware of any other representations that even are arguably duplicative of Brown Rudnick's.

## NOTICE

29.    Notice of this Application has been provided to (i) the U.S. Trustee, (ii) counsel to the Debtors, (iii) counsel to the Creditors' Committee, (iv) counsel to the Equity Committee, and (v) all parties on the Service List.  Brown Rudnick submits that no other or further notice is required.

## NO PRIOR REQUEST

30.    No previous request for the relief sought herein has been made by Brown Rudnick to this or any other Court.

## RESERVATION OF RIGHTS

31.    Brown Rudnick reserves all rights, including the right to supplement or modify this Application.

---

[10]    Other groups of LBT Noteholders were also present in this case, including the group represented by Dewey & LeBoeuf LLP.  While these groups shared similar interests with the members of the LBT Ad Hoc Group, no one constituency of LBT Noteholders was identical to the other.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, Brown Rudnick respectfully requests that the Court (i) enter an Order, substantially in the form of the Order annexed hereto as <u>Exhibit B</u>, authorizing and directing the Debtors to pay the Brown Rudnick Fees and Expenses, and (ii) grant such other and further relief as is just and proper.

Dated: July 5, 2012
New York, New York

By:   /s/ Steven Levine
     Steven B. Levine
     Peter J.M. Declercq
     BROWN RUDNICK LLP
     One Financial Center
     Boston, MA  02111
     Telephone:  (617) 856-8200
     Facsimile: (617) 856-8201

     *Counsel to the Lehman Brothers*
     *Treasury Co. B.V. Ad Hoc Group of*
     *Noteholders*

# EXHIBIT A

**Summary of Brown Rudnick's Professional Fees and Expenses**

| Invoice Date | Total Professional Fees Billed Per Invoice (GBP) | Conversion Rate From GBP to USD on Date of Invoice | 503(b)(3)(D) Professional Fees Sought Per Invoice (GBP) | 503(b)(3)(D) Professional Fees Sought Per Invoice (USD) | Total Expenses Billed Per Invoice (GBP) | Total Adjusted Expenses Per Invoice (GBP) | Total Adjusted Expenses Per Invoice (USD) | Total Hours Billed Per Invoice | Total Hours Per Invoice Attributable to 503(b)(3)(D) Professional Fees Sought | % of Total Hours Billed Per Invoice Attributable to 503(b)(3)(D) Expenses Sought | 503(b)(3)(D) Expenses Sought (USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/17/2009 | £57,902.50 | 1.6493 | £1,612.50 | $2,659.50 | £400.19 | £400.19 | $660.05 | 140.6 | 3.6 | 2.56% | $16.90 |
| 10/14/2009 | £108,574.50 | 1.5972 | £36,292.50 | $57,966.38 | £1,161.43 | £1,161.43 | $1,855.02 | 271.5 | 91.9 | 33.85% | $627.91 |
| 11/19/2009 | £51,690.00 | 1.67899 | £24,919.50 | $41,839.59 | £1,600.06 | £1,600.06 | $2,686.48 | 129.3 | 57.9 | 44.78% | $1,202.99 |
| 12/23/2009 | £107,396.50 | 1.5954 | £36,812.00 | $58,729.86 | £3,777.01 | £3,777.01 | $6,025.67 | 259.9 | 78.6 | 30.24% | $1,822.31 |
| 1/27/2010 | £72,483.50 | 1.6175 | £42,146.00 | $68,171.16 | £40,406.44 | £18,548.91 | $30,002.86 | 190 | 97.2 | 51.16% | $15,349.46 |
| 2/19/2010 | £102,974.00 | 1.5475 | £77,113.00 | $119,332.37 | £2,314.42 | £2,314.42 | $3,581.47 | 296.5 | 185.7 | 62.63% | $2,243.10 |
| 3/22/2010 | £58,599.50 | 1.5105 | £45,733.50 | $69,080.45 | £453.39 | £453.39 | $701.60 | 156.5 | 114.4 | 73.10% | $512.86 |
| 4/19/2010 | £154,607.00 | 1.5336 | £113,443.00 | $173,976.18 | £2,860.79 | £2,860.79 | $4,387.31 | 410.5 | 270.5 | 65.89% | $2,891.03 |
| 5/17/2010 | £101,917.00 | 1.4488 | £77,761.00 | $112,660.14 | £4,691.07 | £4,672.97 | $6,770.20 | 274.1 | 147.1 | 53.67% | $3,633.57 |
| 6/16/2010 | £188,558.00 | 1.4722 | £153,152.50 | $225,471.11 | £5,867.33 | £5,860.42 | $8,627.71 | 466.5 | 366.7 | 78.61% | $6,782.24 |
| 7/29/2010 | £186,645.60 | 1.561 | £119,880.50 | $187,133.46 | £5,676.47 | £5,676.47 | $8,860.76 | 489.7 | 276.9 | 56.54% | $5,010.30 |
| 8/27/2010 | £94,522.00 | 1.5528 | £55,046.50 | $85,476.21 | £2,886.90 | £2,886.90 | $4,482.90 | 246.2 | 130.9 | 53.17% | $2,383.48 |
| 9/20/2010 | £101,314.50 | 1.5545 | £63,377.50 | $98,520.32 | £10,285.66 | £2,796.86 | $4,347.72 | 218.8 | 127.8 | 58.41% | $2,539.50 |
| 10/21/2010 | £163,282.50 | 1.5712 | £144,520.50 | $227,070.61 | £3,179.78 | £3,116.07 | $4,895.97 | 334.5 | 293.8 | 87.83% | $4,300.13 |
| 11/24/2010 | £133,266.50 | 1.5781 | £104,914.00 | $165,564.78 | £7,098.30 | £3,559.19 | $5,616.76 | 263.3 | 201.6 | 76.57% | $4,300.75 |
| 12/17/2010 | £80,114.50 | 1.5533 | £39,600.50 | $61,511.46 | £8,291.19 | £2,101.61 | $3,264.43 | 171.9 | 75.1 | 43.69% | $1,426.23 |
| 1/20/2011 | £79,727.00 | 1.5905 | £51,057.50 | $81,206.95 | £5,364.09 | £1,870.01 | $2,974.25 | 183.9 | 106.4 | 57.86% | $1,720.90 |
| 2/18/2011 | £139,864.50 | 1.6255 | £105,127.50 | $170,884.75 | £10,822.59 | £3,956.22 | $6,430.84 | 315.2 | 217.1 | 68.88% | $4,429.56 |
| 3/21/2011 | £151,661.50 | 1.6308 | £114,716.00 | $187,078.85 | £16,025.04 | £3,278.73 | $5,346.95 | 332.5 | 276.9 | 83.28% | $4,452.94 |
| 4/21/2011 | £277,514.00 | 1.6513 | £202,035.00 | $333,620.40 | £7,228.66 | £7,018.61 | $11,589.83 | 602.5 | 422.6 | 70.14% | $8,129.11 |
| 5/24/2011 | £96,494.75 | 1.6179 | £73,284.50 | $118,566.99 | £107,987.16 | £2,803.84 | $4,536.33 | 236.2 | 177.3 | 75.06% | $3,404.97 |
| 6/24/2011 | £144,422.50 | 1.5963 | £109,403.50 | $174,640.81 | £12,978.67 | £6,372.47 | $10,172.37 | 305.2 | 224.5 | 73.56% | $7,482.80 |
| 7/27/2011 | £232,708.50 | 1.6332 | £176,123.50 | $287,644.90 | £14,538.17 | £9,243.16 | $15,095.93 | 533.4 | 366.6 | 68.73% | $10,375.43 |
| 8/12/2011 | £112,610.50 | 1.6278 | £60,456.50 | $98,411.09 | £6,404.30 | £6,167.68 | $10,039.75 | 235.2 | 120.7 | 51.32% | $5,152.40 |
| 9/15/2011 | £119,682.50 | 1.5795 | £89,476.00 | $141,327.34 | £3,208.23 | £3,183.77 | $5,028.76 | 281 | 184.9 | 65.80% | $3,308.93 |
| 10/17/2011 | £80,439.00 | 1.5741 | £51,509.00 | $81,080.32 | £3,718.93 | £3,446.18 | $5,424.63 | 170.2 | 103.7 | 60.93% | $3,305.23 |
| 11/15/2011 | £111,072.50 | 1.5813 | £59,237.00 | $93,671.47 | £3,544.37 | £2,523.24 | $3,990.00 | 234.4 | 118.5 | 50.55% | $2,016.94 |
| 12/14/2011 | £118,646.00 | 1.5469 | £46,539.00 | $71,991.18 | £7,007.43 | £6,998.72 | $10,826.32 | 277.5 | 98.7 | 35.57% | $3,850.92 |
| 1/17/2012 | £30,444.00 | 1.5336 | £18,348.00 | $28,138.49 | £2,894.61 | £2,894.61 | $4,439.11 | 78.3 | 39.5 | 50.45% | $2,239.40 |
| 2/17/2012 | £28,998.50 | 1.5831 | £1,159.00 | $1,834.81 | £598.72 | £598.72 | $947.84 | 58.7 | 3 | 5.11% | $48.44 |
| 3/27/2012 | £24,373.50 | 1.5947 | £168.00 | $267.91 | £6,298.95 | £580.18 | $925.21 | 50.4 | 0.6 | 1.20% | $11.10 |
| 4/18/2012 | £9,699.00 | 1.602 | £308.00 | $493.42 | £414.53 | £414.53 | $664.08 | 32.1 | 1.1 | 3.43% | $22.76 |
| **TOTAL** | **£3,522,206.35** | | | **$3,626,023.26** | **£309,884.88** | | **$195,199.11** | | **4981.8** | | **$114,994.59** |

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                                     :
In re:                                               :        Chapter 11
                                                     :
Lehman Brothers Holdings, Inc., *et al*.             :        Case No. 08-13555 (JMP)
                                                     :
                                                     :        (Jointly Administered)
                            Debtors.                 :
                                                     :
-------------------------------------------------------x

**ORDER GRANTING THE APPLICATION OF THE AD HOC GROUP OF HOLDERS
OF NOTES ISSUED BY LEHMAN BROTHERS TREASURY CO. B.V. AND
GUARANTEED BY LEHMAN BROTHERS HOLDINGS, INC., PURSUANT TO
11 U.S.C. § 503(b) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES FOR
COUNSEL'S SERVICES INCURRED IN MAKING A
SUSBTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES**

Upon consideration of the Application of the Ad Hoc Group of Holders of Notes Issued

by Lehman Brothers Treasury Co. B.V. and guaranteed by Lehman Brothers Holdings, Inc.,

pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Expenses for Counsel's Services

Incurred in Making a Substantial Contribution in these Chapter 11 Cases (the "Application");[1]

and after due notice pursuant to the *Second Amended Order Pursuant to Section 105(a) of the*

*Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and*

*Case Management Procedures* [Docket No. 9635]; and any objections to the Application having

been resolved or rejected by the Court; and after due consideration and upon all of the

proceedings held before the Court; and sufficient cause appearing therefor, it is hereby

ORDERED, that the Application is granted in entirety; and it is further

---
[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

ORDERED, that LBHI is authorized and directed to promptly pay the amounts requested in the Application as administrative expense claims; and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.


Dated: August _____, 2012              _____
       New York, New York             HONORABLE JAMES M. PECK
                                       UNITED STATES BANKRUPTCY JUDGE