Hearing Date: To Be Determined, 2012
Objection Deadline: To Be Determined, 2012

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, NY  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi Eilbott Giglio
Email:    sreisman@curtis.com
          lharrison@curtis.com
          cgiglio@curtis.com

*Conflicts Counsel for the Debtors*
  *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                                    :        **Chapter 11**
**In re:**                                           :
                                                    :        **Case No. 08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*         :
                                                    :        **(Jointly Administered)**
                          **Debtors.**               :
                                                    :
------------------------------------------------------------------------x

### FINAL APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD SEPTEMBER 26, 2008 THROUGH MARCH 6, 2012

### SUMMARY OF CURRENT FEE APPLICATION

| | |
|---|---|
| Name of Applicant: | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| Authorized to Provide Professional Services To: | Debtors and Debtors In Possession |
| Retention Date: | November 21, 2008 *nunc pro tunc* to September 26, 2008 |

| | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought: | September 26, 2008 through March 6, 2012 |
| Amount of Compensation Requested: | $   51,930,556.07 |
| Amount of Expense Reimbursement Requested: | $     1,967,246.91 |
| Total Compensation and Expense Reimbursement Requested: | $   53,897,802.98 |
| Blended Rate for Attorneys: | $        517.93 |
| Blended Rate for all Professionals and Paraprofessionals: | $        475.78 |

## PRIOR FEE APPLICATION(S)

| Period Covered | Requested | | Awarded[1] | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| First 09/26/08 – 01/31/09 | $4,611,589.50 | $151,402.02 | $4,605,112.00 | $151,402.02 |
| Second 02/01/09 – 05/31/09 | $4,230,132.50 | $164,681.90 | $4,216,398.50 | $132,363.87 |
| Third 06/01/09 – 09/30/09 | $4,664,248.00 | $188,127.18 | $4,551,471.48 | $151,898.05 |
| Fourth 10/01/09 – 01/31/10 | $3,396,981.50 | $87,448.45 | $3,237,003.32 | $60,332.68 |
| Fifth 02/01/10 – 05/31/10 | $3,546,135.00 | $135,181.82 | $3,440,334.85 | $113,036.80 |
| Sixth 06/01/10 – 09/30/10 | $4,727,258.00 | $198,520.63 | $4,634,376.17 | $162,827.60 |
| Seventh 10/01/10 – 01/31/11 | $6,409,513.60 | $164,980.24 | $6,104,628.30 | $131,578.73 |
| Eighth 02/01/11 – 05/31/11 | $7,174,392.00 | $247,998.44 | $6,187,522.85 | $184,068.64 |
| Ninth 06/01/11 – 09/30/11 | $5,886,919.50 | $276,530.84 | $5,581,528.75 | $233,994.46 |
| Tenth 10/01/11-03/06/12 | $7,869,869.50 | $422,349.85 | To Be Determined | To Be Determined |

---

[1] Attached as **Exhibit F** is a chart summarizing the amounts requested versus the amounts awarded for each Interim Fee Period.  As set forth in **Exhibit F**, certain amounts were carved-out from the amounts awarded and are subject to ongoing negotiations with the Fee Committee (as defined herein).

12271346

**Exhibits to Current Fee Application**

The following exhibits are attached hereto and incorporated herein by reference:

Exhibit "A"    Certification Under Guidelines for Fees and Disbursements for Professionals in Respect of Final Application of Curtis, Mallet-Prevost, Colt & Mosle LLP for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred

Exhibit "B"    By-Timekeeper Summary of Hours Devoted and Compensation Sought (includes billing rate and year of admission to practice) for Compensation Period

Exhibit "C"    Summary of Expenses for Compensation Period

Exhibit "D"    Summary of Hours Devoted and Compensation Sought by Work Task Code for the Period of September 26, 2008 through February 28, 2010

Exhibit "E"    Summary of Hours Devoted and Compensation Sought by Work Task Code for the Period of March 1, 2010 through March 6, 2012

Exhibit "F"    Summary of Amounts Requested and Amounts Awarded by Interim Compensation Period

12271346

Hearing Date:  To Be Determined, 2012
Objection Deadline:  To Be Determined, 2012

**CURTIS, MALLET-PREVOST,**
 **COLT & MOSLE LLP**
101 Park Avenue
New York, NY  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi Eilbott Giglio
Email:   sreisman@curtis.com
            lharrison@curtis.com
            cgiglio@curtis.com

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                                              :       **Chapter 11**
**In re:**                                                 :
                                                              :       **Case No. 08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :
                                                              :       **(Jointly Administered)**
                                    **Debtors.**      :
                                                              :
------------------------------------------------------------------------x

**FINAL APPLICATION OF CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP AS CONFLICTS COUNSEL FOR THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT**
**OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FOR THE PERIOD SEPTEMBER 26, 2008 THROUGH MARCH 6, 2012**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

          Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), as conflicts counsel for

Lehman Brothers Holdings Inc., and its direct and indirect debtor subsidiaries, as debtors and

debtors in possession (collectively, the "Debtors"), respectfully submits this application (the

"Final Application") for final allowance of compensation for professional services rendered for

the period September 26, 2008 through and including March 6, 2012 (the "Compensation

Period"), and for reimbursement of its actual and necessary expenses incurred in connection with

such services.  In support of this Final Application, Curtis respectfully represents as follows:

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

1.     This Final Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on November 25, 2009 (the "Local Guidelines"), the

United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the

"UST Guidelines"), the Fourth Amended Order Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals entered by the Court on April

14, 2011 (the "Compensation Order,"), and Section 2.2 ("Section 2.2") of the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors

(the "Third Amended Plan") (Section 2.2, collectively with the Local Guidelines, UST

Guidelines, and the Compensation Order, the "Guidelines").  Pursuant to the Local Guidelines, a

certification regarding compliance with the Guidelines is attached hereto as "**Exhibit A**."[1]

2.     Curtis attorneys and paraprofessionals expended a total of 110,775.94

hours representing the Debtors during the Compensation Period for which the firm requests

compensation.  Curtis seeks final allowance of compensation for services rendered to the Debtors

in the aggregate amount of $51,930,556.07, representing 100% of fees incurred during the

Compensation Period, and for reimbursement of $1,967,246.91, representing 100% of the actual

---

[1] As to contested matters, existing litigation, or possible additional litigation to be brought by, or against, the Debtors, adversary proceedings, and other actions or threatened actions, this Final Application shall not constitute or be construed as an admission of any fact or any issue of liability, nor shall it constitute a stipulation, or a waiver, but rather as statements made without prejudice to the Debtors' rights and interests in these chapter 11 cases.

12271346

and necessary expenses incurred during the Compensation Period.  In accordance with the Compensation Order, Curtis has received payments totaling $50,047,864.39 for the Compensation Period.[2]

3.    During the Compensation Period, other than pursuant to the Administrative Order, Curtis has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Final Application.  There is no agreement or understanding between Curtis and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

4.    The fees charged by Curtis in these cases are billed in accordance with Curtis' existing billing rates and procedures in effect during the Compensation Period.  The rates Curtis charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates Curtis charges for professional and paraprofessional services rendered in non-bankruptcy-related matters.[3]  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

5.    Pursuant to the UST Guidelines, annexed hereto as "**Exhibit B**" is a schedule setting forth all Curtis professionals and paraprofessionals who have performed services in these chapter 11 cases during the Compensation Period, the capacity in which each such individual is employed by Curtis, the hourly billing rate charged by Curtis for services performed by such individual, the aggregate number of hours expended in these proceedings and

---

[2] Curtis has yet to receive payment for the (i) March 1-6, 2012 monthly fee statement; (ii) holdback from the Tenth Interim Fee Period, including amounts objected to on a monthly basis during the latter period; and (iii) amounts subject to ongoing negotiation between Curtis and the committee appointed pursuant to the Order Appointing Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee Committee").

[3] In instances where professionals spent less than one hour working on the Debtors' cases during a single month within the Compensation Period, Curtis has voluntarily written off the time as a courtesy to the Debtors.

12271346

fees billed therefor, and, if applicable, the year in which each professional was first licensed to practice law.

6.       Annexed hereto as "**Exhibit C**" is a schedule specifying the categories of expenses for which Curtis is seeking reimbursement and the total amount for each such expense category.

7.       Pursuant to Section II.D of the UST Guidelines, annexed hereto as "**Exhibit D**" are summaries of Curtis' time records billed during a portion of the Compensation Period, September 26, 2008 through February 28, 2010, by project categories.

8.       Pursuant to Section II.D of the UST Guidelines, annexed hereto as "**Exhibit E**" are summaries of Curtis' time records billed during a portion of the Compensation Period, March 1, 2010 through March 6, 2012, by project categories.

9.       Annexed hereto as "**Exhibit F**" is a chart setting forth the difference between the amount requested and amount awarded for each Interim Fee Period.

10.       Curtis maintains computerized records of the time spent by all Curtis attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Subject to redaction for the attorney-client privilege where necessary to protect the Debtors' estates,[4] copies of these computerized records have been furnished previously to the Court, the attorneys for the official committee of unsecured creditors (the "Creditors' Committee"), the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and the Fee Committee, in the format specified by the UST Guidelines.

11.       To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the

---

[4] Where necessary, Curtis professionals and paraprofessionals have limited the level of detail in their time entries to protect certain confidential information of the Debtors.  This is done in the best interest of the Debtors' estates. Curtis will provide additional information pertaining to time entries in the appropriate circumstances.

12271346

preparation of this Final Application, Curtis reserves the right to request compensation for such services and reimbursement of such expenses from the reorganized Debtors.

12.    Curtis has previously provided the Debtors, the U.S. Trustee, lead counsel to the Debtors, the Creditors' Committee, the Fee Committee and counsel to the Fee Committee with monthly fee statements for professional services rendered and expenses incurred on behalf of the Debtors, along with detailed reports of time entries and expenses. Pursuant to such statements, and in accordance with the Administrative Order, Curtis has requested that the Debtors pay Curtis 80% of its fees for professional services and 100% of the expenses. By this Final Application, Curtis requests the release of any "holdback" of fees for professional services rendered during the Compensation Period. Curtis further requests approval of all fees and expenses incurred during the Compensation Period on a final basis.

## BACKGROUND

13.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

14.    On September 17, 2008, pursuant to section 1102 of the Bankruptcy Code, the U.S. Trustee appointed the Creditors' Committee.

15.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

16.    On December 6, 2011, an order confirming the Third Amended Plan was entered [Docket No. 23023]. The effective date of the Third Amended Plan was March 6, 2012.

12271346

17.    The Debtors' cases have been the most complex and challenging cases ever filed.  Yet, due, in part, to the tireless work of the professionals, great successes have been achieved.  In less than four years the Third Amended Plan was confirmed and creditors received an initial distribution.  The work performed by Curtis professionals, including Curtis' critical role in achieving settlements worth over $700 million to date, helped lead to this successful result.  The groundwork has also been laid for further recovery from Curtis' actions taken during the Chapter 11 Cases.  As detailed below, Curtis professionals have worked tirelessly with the Debtors' management and other professionals to help administer the Debtors' estates and maximize value for all creditors.  Thus, the request for payment of fees and reimbursement of expenses set forth in this Final Application should be granted.

## RETENTION OF CURTIS

18.    Curtis was retained by the Debtors as of September 26, 2008 to serve as conflicts counsel for the Debtors.  Among other matters, Curtis is responsible for handling all bankruptcy-, corporate- and litigation-related matters where lead counsel for the Debtors, Weil, Gotshal & Manges LLP ("WGM"), or other counsel for the Debtors, has an actual or perceived conflict of interest, and to perform discrete duties as assigned by WGM and other Debtors' counsel that could be handled more efficiently by Curtis.

19.    Pursuant to the Order of the Court, dated November 21, 2008, the Debtors were authorized to retain Curtis as their conflicts counsel to render legal services in the prosecution of their chapter 11 cases.

20.    Since its retention, Curtis has coordinated its efforts with WGM so that their work is complementary and not duplicative.  WGM and Curtis have experience working as debtors' general bankruptcy counsel and conflicts counsel, respectively, for large bankruptcy

-6-

12271346

cases previously pending before this Court.  *See In re Silicon Graphics, Inc., et al.*, Case No. 06-10977 (ALG) (Bankr. S.D.N.Y. 2006) and *In re Parmalat Finanziaria S.p.A., et al.*, Case No. 04-14268 (RDD) (Bankr. S.D.N.Y. 2004).  As a result of these experiences and the continued efforts of WGM and Curtis, the assignment of tasks is being maintained efficiently and with a clear delineation of duties.

21.    In addition, Curtis is presently acting or has recently acted as conflicts counsel in *In re Hawker Beechcraft, Inc., et al.,* Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. 2012), *In re General Maritime Corporation, et al.*, Case No. 11-15285 (MG) (Bankr. S.D.N.Y. 2011), *In re Caribe Media, Inc., et al.*, Case No. 11-11387 (KG) (Bankr. D. Del. 2011), *In re Sbarro, Inc.,* Case No. 11-11527 (SCC) (Bankr. S.D.NY. 2011), *In re CIT Group Inc., et al.*, Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. 2009), *In re The Reader's Digest, Inc., et al.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. 2009), *In re Lear Corporation*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. 2009), *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009), *In re Star Tribune Holdings Corporation*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. 2009) and *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. 2008).

22.    The work encompassed by this Final Application for which Curtis seeks compensation was performed efficiently and at a reasonable cost to the estates.  All of the work summarized in this Final Application was performed in a manner to ensure minimal duplication of services and an effort to keep the administration expenses to a minimum.

## SUMMARY OF SERVICES RENDERED BY
## CURTIS DURING THE COMPENSATION PERIOD

23.    During the Compensation Period, Curtis performed substantial services for the Debtors.  These services were necessary to effectively administer the chapter 11 cases.

12271346

24.      In accordance with the Guidelines and Curtis' internal billing procedures, at the outset of its retention, Curtis established separate matter numbers and matter names for distinct project categories in these chapter 11 cases.  At the request of the Fee Committee, on March 1, 2010, Curtis modified these matter numbers and matter names in order to conform to certain uniform matter numbers and matter names.  As such, during the Compensation Period Curtis used two distinct sets of matter numbers and matter names.  Thus, the matter numbers and matter names in effect prior to March 1, 2010 (the "Old Matter Numbers") do not perfectly align with the matter numbers and names in effect as of March 1, 2010 (the "New Matter Numbers"). In light of this discontinuity, Curtis has provided a summary of services provided during the Compensation Period in this Final Application arranged by project rather than by matter number and matter name.  Additionally, Curtis has indicated the various corresponding matter numbers and matter names for each project, which can be used in reference to **Exhibit D** and **Exhibit E** annexed hereto.

## I.     Case Administration

25.      **General Case Administration.**[5]  This project covers a variety of services undertaken by Curtis attorneys and paraprofessionals in the general administration of the Debtors' chapter 11 cases.  Given the scale and complexity of the matters on which Curtis has advised the Debtors, Curtis attorneys and paraprofessionals spent time on case administration in order to keep informed with respect to the matters on which Curtis represented the Debtors, as well as communicated with the conflict-related parties and other stakeholders of the Debtors with respect to ongoing matters in the Debtors' cases.  To the extent possible, Curtis attorneys and paraprofessionals billed administrative matters under the appropriate matter.  The amount of time

---

[5] This project includes services a portion of services billed to Old Matter No. 100 (Case Administration) and New Matter No. 100 (General Case Administration).

12271346

billed to case administration was necessary to Curtis' smooth and effective administration of the

matters assigned to it in these chapter 11 cases. Among other tasks, Curtis professionals

reviewed global procedures applicable to the chapter 11 cases, including orders relating to

unfunded loan commitments, alternative dispute resolutions and disposition of certain assets,

liaised with WGM regarding coordination among counsel, and maintained a calendar of critical

dates in these chapter 11 cases.

      26.     **General Case Strategy Meetings.**[6] This matter covers time spent by

professionals at weekly meetings at which attorneys working on various matters relating to the

Debtors' estates discussed recent developments. Generally, each attorney present at such

meetings provided expertise in a specific area of law relevant to the Debtors' cases and/or

provided a factual update on a particular aspect of the Debtors' cases. In light of the highly

complex and varied nature of the Debtors' cases, such meetings were critical to the smooth

operation and prosecution of the Debtors' chapter 11 cases.

      27.     **Project Monitoring/Court Calendar & Docket Maintenance.**[7] Curtis

professionals monitored the docket for pleadings filed in the chapter 11 cases, the SIPA

Proceeding and various adversary proceedings. Due to the high volume of documents filed in

the Debtors' cases, docket monitoring was generally conducted on a daily basis by attorneys

familiar with the Debtors' cases. Such close monitoring was necessary for Curtis to keep

apprised of the matters in the cases, especially with respect to pleadings filed by potential

conflict parties.

_____

[6] This project includes a portion of services billed to Old Matter No. 100 (Case Administration) and services billed to New Matter No. 200 (General Case Strategy Meetings).
[7] This project includes a portion of services billed to Old Matter No. 100 (Case Administration) and services billed to New Matter No. 300 (Project Monitoring/Court Calendar & Docket Maintenance).

12271346

28.    **Curtis Retention and Fee Applications.**[8]  At the beginning of these

chapter 11 cases, Curtis professionals prepared a retention application, reviewed potential

conflicts based on the list of interested parties in order to fully and accurately disclose

relationships that Curtis has with parties in interest in Lehman's chapter 11 cases, and engaged in

discussions with the U.S. Trustee to fully vet any potential issues regarding Curtis' retention.

Throughout the Compensation Period, Curtis professionals prepared supplemental affidavits

disclosing additional potential conflicts pursuant to the Federal Rules of Bankruptcy Procedure.

29.    In addition, Curtis prepared and served its monthly fee statements in

accordance with the Guidelines as well as interim fee applications.  Tasks included reviewing all

expenses, timekeeper entries, and Fee Statement schedules and tables for accuracy and

compliance with the Guidelines.  Curtis professionals also responded to requests from the Fee

Committee and prepared monthly budgets for the Fee Committee.

## II.    JPMorgan Chase Matters

### A.    JPMorgan Collateral Case

30.    **Pre-litigation.**[9]  From September 2008 through May 26, 2010, Curtis

worked on matters related to the various relationships between JPMorgan Chase Bank, N.A.

("JPMorgan") and the Debtors, including the analysis of pledges that Lehman provided which

collateralize the JPMorgan entities' claims.  To this end, Curtis conducted interviews with a

number of the Debtors' current and former employees, reviewed documents provided by

JPMorgan, and drafted detailed memoranda addressing the Debtors' relationship with JPMorgan

and related matters.  Curtis also performed legal research and analysis with respect to a variety of

---

[8] This project includes services billed to Old Matter No. 300 (CMP Retention, Fee Applications and Monthly Fee Statements) and New Matter No. 4500 (Proprietary Retention/Billing/Fee Applications).
[9] This project includes a portion of services billed to Old Matter No. 420 (JPMorgan Chase Matters) and a portion of services billed to New Matter No. 3800 (Non-Derivative Adversary Proceedings Preparation and Litigation).

legal issues surrounding the collateral pledges and the JPMorgan entities' claims. Additionally, Curtis liaised with other parties-in-interest in the chapter 11 cases and the Bankruptcy Examiner as to the Debtors' pre-petition relationship and transactions with JPMorgan.

31.    Curtis also advised the Debtors with respect to the Debtors' entry into the Collateral Disposition Agreement (the "CDA") with JPMorgan.[10] The CDA effectuated a mechanism for the return to Lehman Brothers Holdings Inc. ("LBHI") of certain collateral pledged by LBHI to JPMorgan. In connection with the negotiation of the CDA, Curtis performed legal research and analysis as to the effects of maintaining litigation neutrality and dealing with subrogated claims. Curtis also reviewed and analyzed the transaction documents for certain of the Debtors' structures that were purportedly pledged as collateral to JPMorgan prior to the petition date, and which are further the subject of the CDA. Curtis also assisted WGM in the preparation and filing of the motion to approve the CDA. Further, Curtis professionals undertook various follow-up issues in connection with the CDA, including the application and analysis of Article 9 of the Uniform Commercial Code.

32.    **The Adversary Proceeding.**[11] On May 26, 2010, Curtis filed the adversary proceeding styled *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*, Case No. 10-03266, in which LBHI is seeking a judgment that LBHI is entitled to void certain agreements entered into between LBHI and JPMorgan prior to LBHI's Commencement Date on the grounds that such agreements were fraudulent transfers and/or unenforceable under state law. LBHI further seeks to recover billions in cash collateral, certain securities collateral posted to

---

[10] Projects related to the CDA were predominantly billed to New Matter No. 3700 (Other Bankruptcy Motions and Matters).
[11] This project includes a portion of services billed to New Matter No. 3800 (Non-Derivative Adversary Proceedings Preparation and Litigation).

12271346

JPMorgan, and all other damages occasioned by JPMorgan's wrongful conduct under bankruptcy and state law theories.

33.    Curtis addressed a variety of issues arising in connection with the adversary proceeding, including, but not limited to, discovery, the analysis of JPMorgan's motion to dismiss the adversary proceeding, and the drafting and filing of LBHI's opposition to JPMorgan's motion to dismiss the adversary proceeding. In addition, on September 15, 2010, Curtis filed the First Amended Complaint against JPMorgan. Moreover, in March 2011, Curtis professionals drafted a response addressing the brief filed by the International Swaps and Derivatives Association, Inc. and the Securities Industry and Financial Markets Association as *amici curiae* in support of JPMorgan's motion to dismiss the adversary proceeding. Further, Curtis professionals prepared for oral argument before the Bankruptcy Court on JPMorgan's motion to dismiss the adversary proceeding, which occurred on May 10, 2011. In addition, at the request of this Court, on February 17, 2012, Plaintiffs filed a memorandum discussing recent jurisprudence on the legal issues arising in JPMorgan's motion to dismiss the adversary proceeding. On April 19, 2012, this Court entered its *Memorandum Decision Granting in Part and Denying in Part Motion to Dismiss by Defendant JPMorgan Chase Bank, N.A.*

34.    Further, on December 1, 2010, JPMorgan filed counterclaims against LBHI (the "Counterclaims"). Curtis performed services related to the Counterclaims, including but not limited to reviewing and analyzing the Counterclaims and drafting LBHI's motion to dismiss the Counterclaims. On February 17, 2011, JPMorgan filed amended Counterclaims. Subsequently, Curtis reviewed the amended Counterclaims and Curtis professionals drafted and filed a motion to dismiss the amended Counterclaims on April 4, 2011.

35.    In addition, at the request of this Court, on August 5, 2011 and September 26, 2011, Curtis professionals filed memoranda analyzing the impact of the Supreme Court's

-12-

decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), on the adversary proceeding. Further,

Curtis professionals reviewed and analyzed JPMorgan's motion to withdraw the reference in the

adversary proceeding, which was filed on September 26, 2011. The Plaintiffs filed a response on

October 26, 2011. Curtis professionals then reviewed JPMorgan's reply, which was filed on

November 16, 2011. Oral argument on the motion to withdraw the reference was held before the

District Court for the Southern District of New York on December 30, 2011. An order reserving

decision on the motion to withdraw the reference until after the bankruptcy court ruled on the

then-pending motion to dismiss was entered on December 30, 2011.

36.    Finally, Curtis professionals who provided services relating to the

adversary proceeding would periodically confer among themselves and telephonically with

special counsel to the Creditors' Committee Quinn Emmanuel Urquhart & Sullivan, LLP

("Quinn") regarding the progress of the litigation. Curtis and Quinn often engaged in highly

detailed discussions regarding various aspects of the prosecution of the adversary proceeding.

For example, the following topics were frequently discussed at these conferences: the process of

interviewing and retaining expert witnesses, updates in the discovery process, and substantive

highlights from depositions already taken.

B.    *JPMorgan Claims Objections*

37.    **The Washington Mutual Claim Objection.** [12] Curtis professionals

drafted certain objections to claims filed by JPMorgan, including the *Objection to Proof of Claim*

*No. 66462 of JPMorgan Chase Bank, N.A. (Misclassified Claim)*, filed April 15, 2011. In that

regard, Curtis successfully objected in part to a proof of claim asserted by JPMorgan related to

an ISDA Agreement that JPMorgan had acquired from Washington Mutual Bank FA post-

---

[12] This project includes a portion of services billed to New Matter No. 3600 (Non-Derivative Claims Reconciliation, Estimation, Litigation and Alternative Dispute Resolution, and Bar Date Issues).

12271346

petition. As a result of this objection, a claim of approximately $80 million was reclassified from a secured claim to a general unsecured claim.

38.    **The Deficiency Claims Objection.**[13] On August 31, 2011, Curtis and the Creditors' Committee jointly filed an objection to certain claims filed by JPMorgan against LBHI and LBI as they relate to JPMorgan's role as custodian bank in certain tri-party repurchase agreements. Curtis professionals have worked with Quinn to address issues relating to discovery with respect to the claims objection. In addition, Curtis professionals reviewed JPMorgan's response to the claims objection, which was filed on November 15, 2011, as well as JPMorgan's motion to strike a portion of the claims objection, which was filed on February 24, 2012.

39.    **The Asset Management Claims Objection.**[14] On October 26, 2011, Curtis and Quinn filed an objection to certain claims filed by certain JPMorgan investment funds, which purported to have claims against LBHI under certain guaranties based on their interpretation of the term "affiliate." Curtis professionals also reviewed and analyzed the JPMorgan investment funds' response to the objection, which was filed on December 16, 2011. Curtis and Quinn collaborated to draft a reply to the response, which was filed on January 23, 2012. After all issues were fully briefed, Curtis, with the assistance of Quinn professionals, successfully negotiated a settlement with the JPMorgan investment funds to resolve this claims objection. The settlement, which provided for the return of $699.2 million to LBHI that had been provisionally allocated to satisfy the investment funds' claims, was approved by this Court on February 15, 2012.

---

[13] This project includes a portion of services billed to New Matter No. 3600 (Non-Derivative Claims Reconciliation, Estimation, Litigation and Alternative Dispute Resolution, and Bar Date Issues).
[14] This project includes a portion of services billed to New Matter No. 3600 (Non-Derivative Claims Reconciliation, Estimation, Litigation and Alternative Dispute Resolution, and Bar Date Issues).

40.    **The Subordinated Debt Claims Objection.**[15]  On October 13, 2011, Curtis filed an objection to certain claims filed by certain JPMorgan investment funds to the extent that such claims were purportedly secured, despite being based on subordinated notes of LBHI.  Curtis reviewed the investment funds' response to this objection, which was filed on November 14, 2011, and accordingly drafted a reply, which was filed on November 28, 2011. This objection was resolved in connection with the resolution of the Asset Management Claims Objection.

41.    **JPMorgan Derivatives.**[16]  During the Compensation Period, Curtis professionals analyzed claims filed by JPMorgan and its affiliates based on derivatives exposure. Additionally, Curtis professionals participated in numerous settlement meetings with JPMorgan in an attempt to reach an equitable resolution of the derivatives claims.  No resolution was reached.

C.    *Miscellaneous JPMorgan Projects*

42.    **Examiner Issues.**[17]  In connection with this project, Curtis professionals reviewed the Examiner's Report with a focus on matters that Curtis handled on behalf of the Debtors.  Curtis professionals also produced memoranda discussing certain findings and conclusions made by the Examiner and addressed issues related to the order discharging the Examiner.

---

[15] This project includes a portion of services billed to Old Matter No. 420 (JPMorgan Chase Matters) and a portion of services billed to New Matter No. 3600 (Non-Derivative Claims Reconciliation, Estimation, Litigation and Alternative Dispute Resolution, and Bar Date Issues).
[16] This project includes a portion of services billed to Old Matter No. 420 (JPMorgan Chase Matters) and a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues).
[17] This project includes a portion of services billed to Old Matter No. 420 (JPMorgan Chase Matters) and services billed to New Matter No. 4400 (Examiner Issues).

43.    **Secured Creditors Issues/Meetings/Communications.**[18] Curtis

addressed issues related to principal and interest on certain assets previously held in a vault at

JPMorgan. In addition, Curtis professionals liaised with LBI on various issues, including, but

not limited to, the treatment and ongoing administration of certain assets that LBHI received as a

subrogee of JPMorgan's claims under the CDA and coordinating the prosecution of certain

adversary proceedings. Curtis professionals also successfully negotiated a carve-out to a global

settlement between LBI and JPMorgan, which preserves LBHI's right to pursue certain claims

against JPMorgan.

## III.    Citibank

44.    **Citibank Matters.**[19] From October 2009 through February 2012, Curtis,

at the Debtors' request, investigated certain aspects of the Debtors' prepetition relationship with

Citibank, N.A. ("Citibank"), including, but not limited, to Citibank's alleged right of setoff. In

this regard, Curtis worked closely with Quinn, reviewed documents provided by Citibank and

began a factual and legal investigation. Also, during this time, Curtis professionals analyzed

claims filed by Citibank and its affiliates, including certain derivatives claims. Additionally,

Curtis professionals reviewed pleadings in LBI's adversary proceeding against Citibank, styled

*Lehman Brothers Inc. v. Citibank N.A., et al.*, Adv. Pro. No. 11-01681, in which the SIPA

Trustee seeks to recover $1.3 billion from Citibank on behalf of LBI.

45.    On February 8, 2012, Curtis filed the adversary proceeding styled *Lehman

Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*, Adv. Pro. No. 12-01044, in which LBHI,

Lehman Brothers Commercial Corp. ("LBCC"), Lehman Brothers Special Financing Inc. and

---

[18] This project includes a portion of services billed to Old Matter No. 420 (JPMorgan Chase Matters), services billed New Matter No. 900 (Secured Creditors Issues/Meeting/Communications), and services billed to New Matter No. 1100 (LBI/SIPC Coordination and Issues).

[19] This project includes a portion of services billed to Old Matter No. 520 (Citibank Matters), a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues) and a portion of services billed to New Matter No. 3800 (Non-Derivative Adversary Proceedings Preparation and Litigation).

12271346

Lehman Brothers Commodity Services assert a variety of causes of action under the Bankruptcy Code and state law that seek to: (i) recover $2 billion transferred to Citibank against which Citibank now claims a general right of setoff for LBHI obligations; (ii) recover $500 million transferred by LBHI to an LBI account at Citibank hours before the LBHI bankruptcy filing; (iii) invalidate a guaranty entered into between Citibank and LBHI on September 9, 2008, that purported to expand the scope of obligations covered by a pre-existing LBHI guaranty; and (iv) recover approximately $200 million owed by Citibank to LBCC under the parties' clearance agreement. The adversary proceeding also seeks to reduce or disallow a variety of claims asserted by Citibank and certain related entities against the Debtors, notably approximately $1.9 billion of claims arising under derivatives contracts, and to recover hundreds of millions of dollars owed to the Debtors under such contracts.

## IV.    Miscellaneous Litigation Projects

46.    **Transition Services Agreement.**[20]  From December 2008 through January 2009, Curtis provided services regarding a bankruptcy litigation matter concerning the Transition Services Agreement dated as of September 22, 2008 (the "TSA"), between the Debtors and Barclays PLC.  Curtis advised the Debtors concerning their rights under the TSA.

47.    **GE Corporate Financial Services, Inc.**[21]  From approximately December 2008 through February 2010, Curtis advised the Debtors in disputes involving GE Corporate Financial Services, Inc. ("GECFS").  Specifically, in connection with this matter, Curtis advised the Debtors in disputes under loan purchase agreements between Lehman Commercial Paper Inc. ("LCPI") and Fusion Funding Limited ("Fusion") and Fusion Funding Luxembourg S.A.R.L. ("Fusion Luxembourg" and, together with Fusion, the "Fusion Entities"), and a loan participation

---

[20] This project includes a portion of services billed to Old Matter No. 700 (Bankruptcy Litigation).
[21] This project includes a portion of services billed to Old Matter No. 700 (Bankruptcy Litigation).

12271346

agreement between Lehman Brothers Bankhaus AG and Fusion Luxembourg. The Fusion

Entities are special purpose vehicles whose purchases were financed almost exclusively from a

secured credit facility provided by General Electric Capital Corporation ("GE Capital" and,

together with GECFS, the "GE Entities"), with GECFS acting as the loan servicer for the Fusion

Entities. Early in the Compensation Period, the Debtors and the GE Entities filed various

motions and objections in Bankruptcy Court relating to the disputes. Curtis advised the Debtors

in negotiations with the GE Entities, developing positions in response and opposition to the GE

Entities' contentions and analyzing and commenting on various settlement proposals. At the

same time, Curtis negotiated with counsel for the GE Entities to reach agreement on a series of

adjournments of the hearing date for the parties' respective motions and objections. Curtis also

coordinated its efforts with respect to these matters with the legal and financial advisors to the

Creditors' Committee, including their review and evaluation of the various settlement proposals.

In December 2009, Curtis advised the Debtors and coordinated with the Creditors' Committee

advisors in connection with the negotiation of a final settlement agreement providing for the

restructuring of the Fusion loan portfolio and a sharing of the related proceeds, as well as a

settlement of all related claims. This settlement was approved by the Bankruptcy Court in

December 2009. Curtis subsequently advised the Debtors in the negotiation of an escrow

agreement with the GE Entities and U.S. Bank National Association ("U.S. Bank"), as escrow

agent, resulting in completion of the closing of the settlement. During February 2010, Curtis

addressed certain follow-up issues with respect to disputes involving GECFS.

48.    **Crown Americas.**[22] Curtis assisted LCPI in connection with a dispute

with Deutsche Bank in its role as administrative agent under a credit facility provided to Crown

Americas LLC and its affiliates ("Crown Americas") from June 2009 through September 2009.

---

[22] This project includes a portion of services billed to Old Matter No. 700 (Bankruptcy Litigation).

LCPI, a lender in the credit facility, had defaulted on its obligations to fund certain

disbursements to Crown Americas and, consequently, Deutsche Bank had retained certain funds

paid by Crown Americas on account of loans previously made to it by LCPI.  Curtis assisted

LCPI in negotiating a pay-off letter with Deutsche Bank that permitted Deutsche Bank to pay the

retained funds over to LCPI, as well as the terms of an amendment to the underlying credit

agreement.  Curtis also assisted the Debtors in their reporting obligations to the Creditors'

Committee with respect to the termination of their unfunded commitment.

49.    **Vendor Adversary Proceedings.**[23]  Beginning in September 2010, Curtis

professionals commenced a number of adversary proceedings and negotiated and executed

various tolling agreements on behalf of the Debtors prior to the running of the statute of

limitations in connection with potential avoidance actions.  Curtis professionals also performed

legal research in connection with potential vendor preferences.  Curtis continued to prosecute

these adversary proceedings and potential causes of action against vendors that received

payments prior to the Debtors' petition dates.

50.    **State Court Litigation.**[24]  Early in the Compensation Period, Curtis

attended state court hearings on an emergency basis and filed Notices of Bankruptcy Filing in

response to the numerous lawsuits brought for the purpose of attaching one or more bank

accounts of Lehman entities or otherwise enjoining various Lehman entities from disposing of

deposit accounts.  Curtis also coordinated with WGM with respect to the filing for bankruptcy

protection of entities other than LBHI that were the subject of significant litigation.

---

[23] This project includes a portion of services billed to New Matter No. 3800 (Non-Derivative Adversary Proceedings Preparation and Litigation).
[24] This project includes a portion of services billed to Old Matter No. 800 (Non-Bankruptcy Litigation).

12271346

51.    **Executive Monetary Management.**[25]  In connection with this project, Curtis professionals prepared responsive pleadings and engaged in various discovery-related activities on behalf of Executive Monetary Management, Inc., a non-debtor affiliate of the Debtors, as a defendant in connection with a state court matter brought by Stowaways, LLC and certain of its affiliates asserting civil claims including, *inter alia*, breach of fiduciary duty, breach of contract and negligence.  More specifically, Curtis professionals responded to plaintiff's discovery requests, participated in settlement negotiations, and drafted a settlement agreement.

52.    **Archstone Arbitration.**[26]  Beginning in early 2011, Curtis professionals provided services related to the arbitration styled *Legacy Partners Ambassador Inv. I, LLC et al. v. Archstone-Smith Operating Trust, et al.*  After LBHI was issued a document subpoena by the claimants in the arbitration, Curtis professionals addressed issues relating to LBHI's response to the subpoena.

53.    **Rule 2004 Bankruptcy Discovery.**[27]  From approximately September 2008 through January 2009, Curtis professionals reviewed responses and objections to motions to conduct discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004").  Additionally, Curtis worked collaboratively with counsel to the Creditors' Committee to resolve issues related to their motion for Rule 2004 discovery of JPMorgan.  At various points during the Compensation Period, Curtis attorneys reviewed certain documentation produced by JPMorgan as a result of the Creditors' Committee motion.

54.    Further, from June 2009 through September 2009, Curtis assisted the Debtors in its negotiation with a counterparty to certain derivatives transactions regarding the

---

[25] This project includes a portion of services billed to Old Matter No. 800 (Non-Bankruptcy Litigation) and a portion of services billed to New Matter No. 3900 (Non-Bankruptcy Litigation).
[26] This project includes a portion of services billed to New Matter No. 3900 (Non-Bankruptcy Litigation).
[27] This project includes services billed to Old Matter No. 600 (Rule 2004 Bankruptcy Discovery) and New Matter No. 4000 (2004 Issues).

12271346

production of certain trade detail.  In connection therewith, Curtis prepared pleadings to compel

production under Rule 2004.  The filing of such pleadings was postponed when the counterparty

voluntarily produced the requested documents to the Debtors.  Also, from October 2009 through

January 2010, Curtis assisted the Debtors in connection with the potential examination of the

Debtors under Rule 2004 in the Washington Mutual bankruptcy case.  Additionally, Curtis

professionals engaged in a Rule 2004 examination of Canadian Imperial Bank of Commerce in

connection with a Master ISDA Agreement.  Curtis attorneys continued to address issues related

to documentation provided by Canadian Imperial Bank of Commerce in connection with a

Master ISDA Agreement through May 2011.

     55.     **Domestic Bank and Related Regulatory Issues.**[28]  Curtis reviewed the

events and interactions between the Debtors and the New York Federal Reserve Bank and

prepared a comprehensive legal analysis of such events and transactions.

     56.     **Non-Derivative Automatic Stay/Safe Harbor Issues.**[29]  Curtis

professionals engaged in a comprehensive analysis regarding the impact of the safe harbor

provisions of the Bankruptcy Code on various causes of action that the Debtors are pursuing.  In

that regard, Curtis professionals kept apprised of all recent case law addressing the safe harbor

provisions.

     57.     **Other Bankruptcy Motions and Matters.**[30]  During the Compensation

Period, Curtis professionals completed various tasks with respect to this project including, but

not limited to, the preparation, filing and approval of the motion to approve the CDA and various

follow-up issues in connection with the CDA, including the application and analysis of Article 9

---

[28] This project includes services billed to New Matter No. 2600 (Domestic Bank and Related Regulatory Issues).
[29] This project includes services billed to Old Matter No. 500 (Automatic Stay/Setoff and Safe Harbor) and New Matter No. 2900 (Non-Derivative Automatic Stay/Safe Harbor Issues).
[30] This project includes a portion of services billed to New Matter No. 3700 (Other Bankruptcy Motions and Matters).

of the Uniform Commercial Code. Curtis also worked with WGM to assist with the preparation of other pleadings filed in the Bankruptcy Court, including with respect to issues related to the SunCal debtors and Fenway Funding. Additionally, Curtis professionals rigorously analyzed pleadings filed in various proceedings to discern potential impact on significant legal issues, including derivatives, *ipso facto* provisions, and setoff. Further, Curtis professionals conducted legal research and factual analysis in connection with securing the return of a multimillion-dollar misdirected wire transfer of funds, which was improperly sent to an account of Lehman Brothers International (Europe) after instructions had been received to send it to another party.

## V.    Derivatives-Related Projects

58.    **Derivatives/Swap Agreement Issues.** [31] Curtis advised the Debtors regarding strategy and potential litigation involving certain collateralized debt obligation ("CDO") transactions, including the structures known as PYXIS ABS CDO 2007-1 LTD ("Pyxis"), MKP VELA CBO Ltd. and MKP VELA CBO LLC ("MKP Vela"), LIBRA CDO Limited and LIBRA CDO LLC ("Libra"), Pebble Creek LCDO 2007-2, Ltd. ("Pebble Creek"), and CEAGO ABS CDO 2007-1, Ltd. ("CEAGO"), and analyzed numerous derivatives contracts with JPMorgan and its affiliates, and Citibank and its affiliates, all of which are described in further detail below. Additionally, Curtis assisted WGM in preparing pleadings related to the assumption and assignment of certain derivatives contracts on matters that Curtis was handling. Curtis also conducted diligence related to demands for collateral made prior to the Commencement Date, purportedly related to novations of derivatives contracts.

59.    During the pendency of these bankruptcy cases, Curtis professionals who provided services concerning the forgoing matters would periodically convene to update one

---

[31] This project includes a portion of services billed to Old Matter No. 400 (Swap Transactions/Terminations/Analysis) and a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues).

-22-

another on the specific matters in which they were involved. The discussions at these meetings were conducted at a higher level of detail than would have been possible in meetings with the entire Lehman team. For example, at these meetings, Cutis professionals often discussed settlement scenarios, analyzed legal issues common to multiple derivatives transactions, and coordinated efforts among professionals working on the various derivatives transactions.

60.    **AmeriCredit.**[32]  During the Compensation Period, Curtis performed a variety of tasks related to counterparty termination of (i) interest rate swaps (the "AmeriCredit Interest Rate Swaps") between LBSF and affiliates of three trusts serviced by AmeriCredit Financial Services, Inc. (*i.e.*, AmeriCredit Automobile Receivables Trust 2005-B-M, AmeriCredit Automobile Receivables Trust 2007-B-F and AmeriCredit Automobile Receivables Trust 2007-D-F) (collectively, the "AmeriCredit Trusts") and (ii) Differential Swaps between AmeriCredit Financial Services, Inc. ("ACFSI") and LBSF (the "AmeriCredit Diff Swaps").

61.    The tasks performed by Curtis included analysis of the AmeriCredit Interest Rate Swaps and the AmeriCredit Diff Swaps and related correspondence and documentation, the respective terminations thereof and the calculation of termination amounts with respect thereto, advising LBSF with respect to LBSF's right to contest the methodology in calculating the termination amounts related to such early terminations, drafting correspondence and position letters to counsel for ACFSI and the AmeriCredit Trusts, and review and analysis of correspondence received from such counsel.

62.    On July 14, 2011, Curtis filed an adversary proceeding styled *Lehman Brothers Special Financing Inc. v. AmeriCredit Financial Services Inc.*, Adv. Pro. No. 11-2403, in which LBSF seeks damages for, *inter alia*, improper calculation of termination amounts under

---

[32] This project includes a portion of services billed to Old Matter No. 400 (Swap Transactions/Terminations/Analysis) and a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues).

certain interest rate swaps. Curtis has been administering and prosecuting this adversary proceeding pursuant to the procedures set forth under the Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties.

63. **Pebble Creek.**[33] During the pendency of the Chapter 11 Cases, Curtis acted as counsel to the Debtors with respect to Pebble Creek. LBSF was the credit default swap counterparty with respect to this transaction and Citibank was the indenture trustee. The issuer in the Pebble Creek transaction sold tranches of notes to investors and a credit default swap to LBSF, which swap position was in the money to LBSF. This swap was purportedly terminated on September 19, 2008 and, thereafter, Citibank redeemed the collateral, consisting of shares in Lehman Brothers ABS Enhanced LIBOR Fund.

64. During the Compensation Period, Curtis performed a variety of tasks relating to LBSF's position that Citibank's termination of the swap and the liquidation of the collateral violated the terms of the indenture. Curtis also performed tasks related to a $68 million deficiency with respect to LBSF's termination payment under the credit default swap, a deficiency described in a valuation statement voluntarily provided by Citibank. Curtis also analyzed the implications of the fact that LBSF owns the controlling classes of notes in Pebble Creek, which are unfunded.

65. The Pebble Creek transaction is part of the same series as fifteen other structured CDO transactions for which U.S. Bank is the indenture trustee and LBSF is the credit default swap counterparty. In the early stages of the Debtors' cases, Curtis reviewed and analyzed this series of 15 structured CDO transactions concerning LBSF and U.S. Bank, as

---

[33] This project includes a portion of services billed to Old Matter No. 400 (Swap Transactions/Terminations/Analysis) and New Matter No. 2400 (Derivatives/Swap Agreement Issues).

indenture trustee.  In late November 2008, all matters concerning these 15 transactions were reassumed by WGM.  However, throughout the Compensation Period, Curtis professionals continued to closely coordinate their efforts in the Pebble Creek matter with WGM and Lehman who are involved in ongoing negotiations with the indenture trustee and the noteholders in the U.S. Bank CDO transactions.

66.   **CIFG.**[34]  During the Compensation Period, Curtis attended to matters related to certain credit default swap transactions between LBSF and affiliates of bond insurer CIFG Guaranty, including analysis of a CIFG restructuring and swap commutation transaction and the validity of CIFG-initiated swap terminations.

67.   **Syncora.**[35]  During the Compensation Period, Curtis advised the Debtors with respect to a proposed restructuring of bond insurer Syncora Holdings, Ltd. ("Syncora") and a related credit default swap commutation transaction.  Curtis worked with common counsel to Syncora credit default swap counterparties with respect to the restructuring and commutation transaction, conducted diligence concerning the credit default swap transactions between LBSF and Syncora affiliates, and participated in the closing of the restructuring and commutation transaction.  Curtis also prepared and filed a motion to obtain a Bankruptcy Court Order approving this transaction.

68.   Following the closing of the transaction, Curtis continued to advise the Debtors with respect to amendments to the documentation related to the transaction and the Debtors' consent to certain actions required by the provisions thereof.  Curtis worked with common counsel to Syncora credit default swap counterparties and counsel to such counterparties with respect to such post closing matters.

---

[34] This project includes services billed to Old Matter No. 430 (CIFG Matters).
[35] This project includes services billed to Old Matter No. 440 (Syncora Matters) and a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues).

12271346

69.    **Pyxis.**[36]  With respect to this project, during the Compensation Period Curtis provided services related to three CDO transactions:  Pyxis, MKP Vela, and Libra.

70.    In the Pyxis transaction, LBSF is a credit default swap counterparty and Bank of America, N.A., as successor to LaSalle Bank, is indenture trustee. On October 6, 2008, the indenture trustee, after having previously declared (i) an event of default, (ii) an acceleration of maturity of the notes, and (iii) an early termination date, distributed approximately $386 million from a certain "Reserve Account" to the noteholders in to pay down the principal of the senior funded classes, and cancelled the remaining unfunded commitment of the Class A-1 noteholder, the Canadian Imperial Bank of Commerce ("CIBC").

71.    During the Compensation Period, Curtis researched, drafted and sent position letters to counsel for the indenture trustee, and for CIBC, setting forth LBSF's position that any liquidation of investments or distribution of proceeds is in violation of the automatic stay and demanding that the indenture trustee immediately cease and desist from taking any further actions under the indenture, including, but not limited to, distributing any proceeds of liquidated collateral.  Curtis also performed tasks relating to LBSF's position that the indenture trustee's termination of the credit default swap and any liquidation of collateral or distribution of proceeds by the indenture trustee are in violation of the terms of the indenture and the swap, the automatic stay and the prohibition on *ipso facto* clauses under the Bankruptcy Code.  Curtis worked closely with WGM and Lehman to coordinate negotiation and litigation strategies in the Pyxis transaction with those in the other CDO transactions being handled for the Debtors by WGM.

---

[36] This project includes services billed to Old Matter No. 480 (Pyxis Matters) and a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues).

12271346

72.    In the MKP Vela transaction, LBSF is a credit default swap counterparty and Bank of America, N.A., is the indenture trustee and, in the Libra transaction, LBSF is a credit default swap counterparty and The Bank of New York Mellon Trust Company, N.A., is the indenture trustee.  In both transactions Curtis negotiated standstill agreements with the trustees, in which the trustees provided written assurances they would not further liquidate the issuers' investments or distribute proceeds thereof.  After these standstills were negotiated, WGM was engaged by the Debtors to coordinate the MKP Vela and Libra matters, and Curtis began acting in an advisory and complementary role.

73.    **CEAGO.**[37]  During the Compensation Period, Curtis performed a variety of tasks related to CEAGO, in which LBSF is a counterparty to a credit default swap and a total return swap with the CDO, and for which Bank of America, N.A., as successor to LaSalle Bank, is indenture trustee.  An event of default allegedly occurred under the indenture, but the credit default swap and total return swap have not been terminated, and the maturity of the notes has not been accelerated.  Curtis also worked with counsel to the Creditors' Committee in connection with its analysis of the CDO and advised LBSF with respect to certain segregated collateral held by the CDO to which LBSF is entitled, and analyzed LBSF's rights in the event of a liquidation and the effect of certain legal developments on such rights.  The issues with respect to CEAGO were resolved and ultimately settled as part of an overall transaction which involved, among other things, Lehman's purchase of notes issued by Pine CCS, Ltd. that was approved by the Bankruptcy Court on April 14, 2011.

---

[37] This project includes services billed to Old Matter No. 510 (CEAGO Matters) and a portion of services billed to New Matter No. 2400 (Derivatives/Swap Agreement Issues).

## VI.    Loans/Investment Projects

74.    **Loans/Investments.**[38]  With respect to this project, Curtis professionals continued to analyze and review numerous structured finance vehicles, including RACERS, Fenway, Pine, Spruce and Verano (collectively, the "Structures").  Additionally, Curtis worked closely with WGM to draft motion papers related to certain of the Structures.

75.    **Fenway.**[39]  Curtis performed an analysis of the legal documentation constituting the Fenway structured finance transaction, and assisted with the production of such documentation, including the securities issued by the issuer Fenway Capital LLC.  Curtis also reviewed and analyzed underlying documentation with respect to the commercial paper issuance in connection with Fenway Funding, LLC and Fenway Capital, LLC.

76.    **RACERS.**[40]  Curtis performed an analysis of the legal documentation constituting the Restructured Asset Securities with Enhanced Returns ("RACERS") Series 2007 structured finance transaction, including a review of the securities issued by the RACERS Series 2007-MM Trust.  Curtis also advised the Debtors on issues relating to real estate interests included in the collateral pool held by the RACERS Series 2007-A Trust.

77.    **SASCO.**[41]  Curtis reviewed and performed an analysis of the legal documentation constituting the SASCO II structured finance transaction, including the securities issued by the issuer SASCO 2008-C2, LLC.  Curtis also assisted the Debtors with the production of the legal documents related to this structured finance transaction.

---

[38] This project includes services billed to a portion of services New Matter No. 2500 (Loans/Investments).
[39] This project includes services billed to Old Matter No. 450 (Fenway Matters) and a portion of services billed to New Matter No. 2500 (Loans/Investments).
[40] This project includes services billed to Old Matter No. 460 (Racers Matters) and a portion of services billed to New Matter No. 2500 (Loans/Investments).
[41] This project includes services billed to Old Matter No. 470 (Sasco Matters) and a portion of services billed to New Matter No. 2500 (Loans/Investments).

12271346

78.    **Pine, Spruce and Verano Matters.**[42]  Curtis performed analysis of the

legal documentation constituting the Pine, Spruce and Verano structured finance transactions,

including securities issued by issuers Pine CCS, Ltd., Spruce CCS, Ltd. and Verano CCS, Ltd.

Curtis assisted the Debtors with respect to the legal documentation constituting the Pine, Spruce

and Verano structured finance transactions, and production thereof, including securities issued

by issuers Pine CCS, Ltd., Spruce CCS, Ltd. and Verano CCS, Ltd.

79.    **Riopelle Broadway L.P.**[43]  This project involved services provided by

Curtis professionals from September 2008 through May 2010 in advising the Debtors with

regard to Riopelle Broadway L.P. ("Riopelle").  Riopelle was formed by Lehman in association

with Caisse de dépôt et placement du Québec ("Caisse") and its wholly owned subsidiary CDP

Investissements (together with Caisse, the "Quebec Partners") to acquire from LCPI

approximately $750 million principal amount of certain funded (approximately $550 million)

and unfunded (approximately $200 million) loans of Texas Competitive Electric Holdings

Company LLC.  To finance the purchase and funding of the underlying loans, Riopelle issued a

Senior Variable Funding Note due 2012 in a principal amount of up to $517 million to LCPI, and

Junior Profit-Participating Note due 2012 to the Quebec Partners, with LCPI holding a nominal

(0.1%) junior ownership percentage, and with U.S Bank serving as indenture trustee, and LBI

originally serving as market agent, for the structure.

80.    Over the course of the matter, Curtis advised the Debtors regarding the

parties' rights and obligations under the transaction documents, and related strategies.  Curtis

also advised the Debtors in negotiations which led to the Quebec Partners posting a cash margin

payment that has restored the structure to the required level of collateralization.  Additionally,

---

[42] This project includes services billed to Old Matter No. 490 (Pine, Spruce and Verano Matters) and a portion of services billed to New Matter No. 2500 (Loans/Investments).
[43] This project includes a portion of services billed to Old Matter No. 200 (General Corporate Issues).

Curtis assisted WGM in its negotiations with counsel to the SIPA Trustee and counsel to U.S.

Bank in connection with LBI's assumption and assignment to LCPI of the market agent

agreement with Riopelle and advised the Debtors, and completed all transactions, regarding the

transfer of a senior note to Caisse.

## VII.   Miscellaneous Bankruptcy Projects

       81.    **Non-Derivative Executory Contracts/365 Issues.**[44] Curtis professionals

provided advice to the Debtors in connection with the rejection of a co-location license

agreement.

       82.    **Hearings and Court Communications.**[45] This project encompasses all

hearings and court appearances other than those specific to any of the aforementioned project

categories.  Curtis professionals prepared for and attended substantially all hearings in the

chapter 11 cases, including the monthly omnibus hearings and hearings with respect to the Rule

60(b) motions in connection with Barclays Capital Inc.  It was necessary that Curtis

professionals attend hearings to stay apprised of issues in the Debtors' cases, particularly with

respect to litigation that is relevant to matters that Curtis is handling.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

       83.    Section 330 of the Bankruptcy Code provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11

U.S.C. § 330(a)(1).  The Court has broad discretion in determining whether to allow

compensation and determining the amount of compensation.  *In re XO Commc'ns, Inc.*, 323 B.R.

---

[44] This project includes services billed to New Matter No. 3100 (Non-Derivative Executory Contracts/365 Issues).
[45] This project includes services billed to Old Matter No. 1200 (Hearings and Court Matters) and New Matter No.
4500 (Hearings and Court Communications).

12271346

330, 339 (Bankr. S.D.N.Y. 2005); *In re Nine Assocs., Inc.*, 76 B.R. 943, 944 (Bankr. S.D.N.Y.

1987).

    84.    Section 330 of the Bankruptcy Code also sets forth the criteria for the

award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
> of, or beneficial at the time at which the service was
> rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (E)    whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

    85.    Courts within the Second Circuit have employed the "lodestar approach"

for calculating judicial awards of compensation to attorneys. The lodestar approach was

articulated by the Second Circuit in *New York State Ass'n for Retarded Children, Inc. v. Carey*,

711 F.2d 1136 (2d Cir. 1983). The lodestar method of determining reasonable compensation

involves multiplying the hours spent on a case, based on attorney time records, by a reasonable

hourly rate of compensation for each attorney based on prevailing market rates for private law

firms performing services for non-governmental clients. *In re McLean Industries, Inc.*, 88 B.R.

36, 39 (Bankr. S.D.N.Y. 1988). Once calculated, this lodestar figure may be adjusted upward or

-31-

downward to take into account the facts of the particular case. *In re Baldwin United Corp.*, 79

B.R. 321, 347 (Bankr. S.D. Ohio 1987). Factors regarding the difficulty, complexity and

contingent nature of the case may thereafter be employed to arrive at a reasonable and just

compensation in excess of the lodestar figure. *In re Stable Mews Assocs.*, 49 B.R. 395, 398

(Bankr. S.D.N.Y. 1985); *In re Chriss*, 38 B.R. 655, 657 (Bankr. S.D.N.Y. 1984).

        86.     In the instant case, Curtis respectfully submits that the services for which

it seeks compensation in this Final Application meet or exceed the standards set forth in section

330 of the Bankruptcy Code as applied by bankruptcy courts in this Circuit to determine the

reasonableness of professional fees sought from a debtor's estate. Curtis also respectfully

submits that the services provided to the Debtors during the Compensation Period were

necessary and beneficial to the Debtors' efforts to maximize the value of their estates. The

professional services that Curtis rendered were focused on pursuing an efficient reorganization

and/or liquidation of the Debtors' businesses that maximizes the value of the estates and

recovery to creditors. Except as otherwise set forth herein, Curtis' rates charged to the Debtors

are identical to the rates charged by Curtis for comparable services in a non-chapter 11 context.

Such services were not only necessary to benefit the Debtors' estates, but also to enhance

potential recovery to creditors. Accordingly, Curtis further submits that the compensation

requested herein is reasonable and warranted in light of the nature, extent and value of such

services to the Debtors, their estates and all parties in interest.

## FEES AND ACTUAL AND NECESSARY DISBURSEMENTS OF CURTIS

        87.     Curtis devoted 110,775.94 hours of actual recorded time during the

Compensation Period resulting in time charges of $52,517,039.10. Of this amount, Curtis is

12271346

requesting final allowance of $51,930,556.07.[46]  The amount of $5,918,600.35[47] remains unpaid

as of the date of this Final Application.  Throughout the Compensation Period, Curtis sought to

assign projects in this case to partners, associates and paraprofessionals who could most

efficiently and expeditiously handle the tasks at hand.  Curtis respectfully submits that the legal

services reflected in this Final Application are fair and reasonable and are commensurate with

the quality of services provided herein.  The blended rate for services performed by all Curtis

professionals and paraprofessionals during the Compensation Period is $475.78.  The blended

rate for services performed by Curtis attorneys during the Compensation Period is $517.93.

88.     In addition to the fees sought for legal services, Curtis has incurred

$2,037,220.37 in out-of-pocket expenses and disbursements during the Compensation Period

directly attributable to the representation of the Debtors.  Of this amount, Curtis is requesting

final allowance of $1,967,246.91.[48]

89.     No part of the compensation to be received pursuant to this Final

Application will be shared with any other person or firm, and no other agreements, either express

or implied, to share any compensation received as attorneys for the Debtors has been, or will be,

made by Curtis.

---

[46] **Exhibit F** attached hereto is a chart setting forth a summary of the difference between the amount initially
requested as interim compensation and the amount being requested for approval as compensation on a final basis.
[47] This amount reflects the (i) March 1-6, 2012 monthly fee statement; (ii) holdback from the Tenth Interim Fee
Period, including amounts objected to on a monthly basis; and (iii) amounts subject to ongoing negotiation between
Curtis and the committee appointed pursuant to the Order Appointing Fee Committee and Approving Fee Protocol,
dated May 27, 2009 [Docket No. 3651].
[48] **Exhibit F** attached hereto is a chart setting forth a summary of the difference between the amount initially
requested as interim compensation and the amount being requested for approval as compensation on a final basis.

12271346

**NOTICE**

90.     A copy of this Final Application has been submitted to: (i) the Debtors;

(ii) lead bankruptcy counsel for the Debtors; (iii) counsel for the Creditors' Committee; (iv) the

U.S. Trustee; and (v) counsel for the Fee Committee.

**CONCLUSION**

WHEREFORE, Curtis respectfully requests that this Final Application be

granted and that it be awarded an allowance of $51,930,556.07 for legal services rendered to the

Debtors during the Compensation Period, and $1,967,246.91 for reimbursement of expenses, and

that the Debtors be allowed to pay such amounts to the extent not previously paid, together with

such other and further relief be granted as may be just and proper.

Dated:    July 5, 2012                              Respectfully submitted,
          New York, New York

                                                    **CURTIS, MALLET-PREVOST,
                                                     COLT & MOSLE LLP**

                                                    By:  _/s/ Steven J. Reisman_____
                                                        Steven J. Reisman
                                                        L. P. Harrison 3rd
                                                        Cindi Eilbott Giglio
                                                    101 Park Avenue
                                                    New York, NY  10178-0061
                                                    Telephone:  (212) 696-6000
                                                    Facsimile:  (212) 697-1559
                                                    Email:  sreisman@curtis.com
                                                            lharrison@curtis.com
                                                            cgiglio@curtis.com

                                                    *Conflicts Counsel for the Debtors and
                                                     Debtors in Possession*

-34-

**EXHIBIT A**

**CURTIS, MALLET-PREVOST,**
   **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi Eilbott Giglio

*Conflicts Counsel for the Debtors*
  *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
|    |    |
|---|---|
| | : |
| **In re:** | : |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : |
| | : |
| **Debtors.** | : |
| | : |
| | : |

**Chapter 11**

**Case No. 08-13555 (JMP)**

**(Jointly Administered)**

------------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR
PROFESSIONALS IN RESPECT OF FINAL APPLICATION OF CURTIS, MALLET-
PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR
THE PERIOD SEPTEMBER 26, 2008 THROUGH MARCH 6, 2012**

I, L. P. Harrison 3rd, hereby certify that:

1.   I am a partner with the applicant firm, Curtis, Mallet-Prevost, Colt & Mosle

LLP ("Curtis"), with primary responsibility for the chapter 11 cases of Lehman Brothers

Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees

and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on November 25, 2009 (the "Local Guidelines"), the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), the Fourth

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy

Rule 2016(a) Establishing Procedures for Interim Compensation and Reimbursement of

Expenses of Professionals (the "Compensation Order"), and Section 2.2 ("Section 2.2") of the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (Section 2.2 collectively with the Local Guidelines, UST Guidelines, and the

Compensation Order, the "Guidelines").

        2.   This certification is made in respect of Curtis' application, dated July 5, 2012

(the "Final Application"), for final compensation and reimbursement of expenses for the period

commencing September 26, 2008, through and including March 6, 2012 (the "Compensation

Period") in accordance with the Guidelines.

        3.   In respect of section A.1 of the Local Guidelines, I certify that:

- I have read the Final Application;

- to the best of my knowledge, information and belief formed after
  reasonable inquiry, the fees and disbursements sought fall within the Local
  Guidelines and the UST Guidelines;

- the fees and disbursements sought are billed at rates in accordance with
  practices customarily employed by Curtis and generally accepted by
  Curtis' clients; and

- in providing a reimbursable service, Curtis does not make a profit on that
  service, whether the service is performed by Curtis in house or through a
  third party.

        4.   In respect of section A.2 of the Local Guidelines, I certify that Curtis has

provided the Debtors, counsel for the statutory committee of unsecured creditors appointed in

these cases (the "Creditors' Committee"), the United States Trustee for the Southern District of

- 2 -

12271346

New York (the "U.S. Trustee") and the Committee appointed pursuant to the Order Appointing

Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee

Committee"), with a statement of Curtis' fees and disbursements on a monthly basis.

     5.   In respect of section A.3 of the Local Guidelines, I certify that the Debtors,

counsel for the Creditors' Committee, lead bankruptcy counsel for the Debtors, the U.S. Trustee,

and counsel for the Fee Committee are each being provided with a copy of the Final Application

more than 14 days before the hearing on the Final Application.


Dated:   New York, New York
        July 5, 2012


                            */s/ L. P. Harrison 3rd*
                                L. P. Harrison

12271346

## EXHIBIT B

## SUMMARY OF FINAL FEE APPLICATION OF
## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR SERVICES RENDERED
## FOR THE TENTH INTERIM COMPENSATION PERIOD,
## SEPTEMBER 26, 2008 TO MARCH 6, 2012

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | | | |
| **PARTNERS** | | | | |
| Marie-Thérèse Allen | C – 1983 | $730 | 75.60 | $    55,188.00 |
| David Bayrock | C – 1995 | $730 | 968.10 | 706,713.00 |
| Roman A. Bninski | C – 1976 | $785 | 2.10 | 1,648.50 |
| Jerrold Bregman[2] | RIG – 2003 | $675 | 10.10 | 6,817.50 |
| Eduardo A. Cukier | T – 1990 | $730 | 15.60 | 11,388.00 |
| Nancy E. Delaney | L – 1989 | $675 | 918.70 | 620,122.50 |
| | | $730 | 970.90 | 708,757.00 |
| | | $785 | 1,407.60 | 1,104,966.00 |
| Martin L. Forman | RE – 1986 | $675 | 59.50 | 40,162.50 |
| L. P. Harrison 3rd | RIG – 1984 | $730 | 2,101.60 | 1,534,168.00 |
| | | $785 | 3,019.50 | 2,370,307.50 |
| | | $830 | 2,661.90 | 2,209,377.00 |
| Winta R. Jarvis | C – N/A[3] | $635 | 58.40 | 37,084.00 |
| T. Barry Kingham | L – 1969 | $785 | 30.10 | 23,628.50 |
| | | $830 | 1.00 | 830.00 |
| Marc V. Kramer | C – N/A[4] | $595 | 5.40 | 3,213.00 |
| | | $650 | 10.60 | 6,890.00 |
| Eliot Lauer | L – 1975 | $785 | 1.70 | 1,334.50 |
| Daniel R. Lenihan | C – 1982 | $675 | 247.20 | 166,860.00 |
| | | $730 | 357.80 | 261,194.00 |
| | | $785 | 827.20 | 649,352.00 |
| Thomas Mackay | C – N/A[5] | $675 | 129.00 | 87,075.00 |
| Michael J. Moscato | L – 1982 | $730 | 2,218.00 | 1,619,140.00 |
| | | $785 | 2,194.90 | 1,722,996.50 |
| Jeffrey N. Ostrager | C – 1981 | $830 | 0.30[6] | 249.00 |
| Joseph D. Pizzurro | L – 1977 | $785 | 1,205.60 | 946,396.00 |
| | | $830 | 1,364.60 | 1,132,618.00 |
| Steven J. Reisman | RIG – 1991 | $785 | 299.10 | 234,793.50 |
| | | $830 | 42.60 | 35,358.00 |
| Andrew H. Seiden | C – 1993 | $675 | 1,260.30 | 850,702.50 |
| | | $730 | 1,214.60 | 886,658.00 |

[1] C – Corporate; L – Litigation; RE – Real Estate; RIG – Restructuring and Insolvency Group; T – Tax.
[2] Jerrold L. Bregman became a Partner at Curtis on October 1, 2009.
[3] Winta R. Jarvis serves as a partner in Curtis' London office and is admitted to practice in England and Wales.
[4] Marc V. Kramer and Markus Soehnchen serve as partners in Curtis' Frankfurt office and are admitted to practice in Frankfurt/Main (Germany).
[5] Thomas Mackay formerly served as a partner in Curtis' London office.
[6] In instances where a professional spent less than one hour (across all matter numbers) working on the Debtors' cases during a single month within the Compensation Period, Curtis has written off the time as a courtesy to the Debtors.

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | $785 | 1,305.90 | 1,025,131.50 |
| Turner P. Smith | L – 1980 | $730 | 946.00 | 690,580.00 |
| | | $785 | 143.00 | 112,255.00 |
| | | $830 | 755.20 | 626,816.00 |
| Markus Soehnchen | C – N/A[7] | $650 | 5.40 | 3,510.00 |
| Victor L. Zimmermann | C – 1978 | $730 | 4.50 | 3,285.00 |
| Jeffrey I. Zuckerman | L – 1973 | $730 | 1.20 | 876.00 |
| **TOTAL PARTNERS** | | | **26,840.80** | **$ 20,498,441.50** |
| | | | | |
| **COUNSEL** | | | | |
| Marjena E. Anderson | C – N/A[8] | $560 | 15.40 | $      8,624.00 |
| Myles K. Bartley | L – 1999 | $595 | 1,008.90 | 600,295.00[9] |
| | | $625 | 1,170.30 | 731,437.50 |
| Jerrold L. Bregman | RIG – 2003 | $595 | 536.90 | 319,456.00[10] |
| | | $675 | 7.20 | 4,860.00 |
| Kuang-Chu Chiang | T – 2001 | $595 | 2.60 | 1,547.00 |
| Marjena Fidalgo-Sokalski | C – N/A[11] | $595 | 248.40 | 147,798.00 |
| Susan F. Pollack | C – 1967 | $595 | 2,088.90 | 1,242,895.50 |
| | | $625 | 978.80 | 611,750.00 |
| Kemal A. Sheikh | C – 1987 | $625 | 0.20[12] | $125.00 |
| Eric J. Stenshoel | C – 1981 | $595 | 2.90 | 1,725.50 |
| **TOTAL COUNSEL** | | | **6,060.50** | **$   3,670,513.50** |
| | | | | |
| **ASSOCIATES** | | | | |
| Julie W. Arkush | L – 2008 | $335 | 907.20 | $      303,912.00 |
| | | $375 | 531.20 | 199,200.00 |
| | | $415 | 549.50 | 228,042.50 |
| | | $425 | 246.40 | 104,720.00 |
| Joseph Audal | L – 2010 | $290 | 51.30 | 14,877.00 |
| Dario Avram | C – 2008 | $415 | 35.70 | 14,815.50 |
| | | $425 | 80.40 | 34,170.00 |
| John Balzano | L – 2006 | $375 | 160.20 | 60,075.00 |
| | | $415 | 2.70 | 1,120.50 |
| Peter J. Behmke | L – 2005 | $455 | 668.40 | 304,122.00 |
| | | $495 | 1,323.00 | 654,885.00 |
| | | $535 | 678.00 | 362,730.00 |
| | | $550 | 1,262.80 | 694,540.00 |
| | | $590 | 893.30 | 527,047.00 |
| Mark Bernstein | RIG - 2000 | $375 | 414.00 | 155,250.00 |
| Stefanie K. Beyer | RIG - 2008 | $335 | 39.50 | 13,232.50 |
| Lisa M. Bonfield | C – 2012[13] | $290 | 7.80 | 2,262.00 |

[7] See *supra*, n.4.

[8] Marjena E. Anderson serves as counsel in Curtis' London office and is admitted to practice in England and Wales.

[9] Due to an accounting error in the September 26, 2008 through October 31, 2008 Fee Statement, Myles K. Bartley and Jerrold L. Bregman's total compensation amounts under the First Interim Fee Application were off by -$.50 and +$.50, respectively. These discrepancies do not impact the total amount of requested compensation.

[10] See *supra*, n.9.

[11] Marjena Fidalgo-Sokalski formerly served as counsel in Curtis' London office.

[12] See *supra*, n.6.

[13] Lisa M. Bonfield was admitted to the New York Bar on March 26, 2012.

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Karen Brice | C – 2005 | $455 | 261.10 | 118,800.50 |
| | | $495 | 181.70 | 89,941.50 |
| Joshua Brook | L – 2003 | $575 | 72.30 | 41,572.50 |
| Peter Josef Buenger | RIG – 2010 | $335 | 110.70 | 37,084.50 |
| | | $375 | 526.00 | 197,250.00 |
| | | $385 | 369.30 | 142,180.50 |
| | | $425 | 121.30 | 51,552.50 |
| Jasper A. Cacananta | C – 2012 | $300 | 51.50 | 15,450.00 |
| | | $345 | 134.40 | 46,368.00 |
| Dienna Ching | RIG – 2009 | $290 | 2,101.70 | 609,493.00 |
| | | $335 | 149.00 | 49,915.00 |
| | | $375 | 657.00 | 246,375.00 |
| | | $385 | 1,125.00 | 433,125.00 |
| | | $425 | 660.60 | 280,755.00 |
| Oreste Cipolla | C – 2007 | $455 | 77.90 | 35,444.50 |
| Joseph Clyne | L – 1984 | $415 | 28.30 | 11,744.50 |
| | | $425 | 9.70 | 4,122.50 |
| | | $450 | 13.00[14] | 5,850.00 |
| Alia Dajani | C – N/A[15] | $250 | 13.00 | 3,250.00 |
| Stefano de Stefano | C – 2008 | $335 | 859.30 | 287,865.50 |
| | | $375 | 480.50 | 180,187.50 |
| | | $415 | 430.60 | 178,699.00 |
| | | $425 | 2.50 | 1,062.50 |
| Bradley Doline | C – 2007 | $375 | 4.40 | 1,650.00 |
| | | $415 | 89.20 | 37,018.00 |
| | | $455 | 35.40 | 16,107.00 |
| | | $470 | 181.70 | 85,399.00 |
| | | $510 | 63.90[16] | 32,589.00 |
| James V. Drew | RIG - 2002 | $575 | 110.40 | 63,480.00 |
| | | $590 | 6.40 | 3,776.00 |
| Yulia Egorova | C – N/A[17] | $250 | 44.50 | 11,125.00 |
| Louisa A. Fennell | L – 2008 | $335 | 195.50 | 65,492.50 |
| | | $375 | 201.40 | 75,525.00 |
| | | $415 | 549.60 | 228,084.00 |
| | | $425 | 1,422.80 | 604,690.00 |
| | | $470 | 1,108.10 | 520,807.00 |
| Steven Gibbs | L – 2010 | $290 | 136.30 | 39,527.00 |
| | | $335 | 126.60 | 42,411.00 |
| Cindi Eilbott Giglio | RIG – 2007 | $375 | 1,424.60 | 534,225.00 |
| | | $415 | 1,799.10 | 746,626.50 |
| | | $455 | 628.20 | 285,831.00 |
| | | $470 | 1,462.50 | 687,375.00 |
| | | $510 | 1,012.90 | 516,579.00 |
| Massimo Giugliano | RIG – 2009 | $335 | 51.10 | 17,118.50 |
| | | $345 | 424.20 | 146,349.00 |
| | | $385 | 59.20 | 22,792.00 |

[14] See *supra*, n.6.
[15] Alia Dajani, Yulia Egorova Adam Hendry, Chrysoula Kounoupa formerly served as associates in Curtis' London office.
[16] See *supra*, n.6.
[17] See *supra*, n.15.

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Sarah Hale | L – 2009 | $290 | 29.70 | 8,455.00[18] |
|  |  | $335 | 29.50 | 9,882.50 |
| Thea Handelman | T – 2008 | $375 | 1.70 | 637.50 |
| Ryan Hansen | C – 2007 | $375 | 10.90 | 4,087.50 |
| Loytavian Harrell | C – 2007 | $495 | 23.90 | 11,830.50 |
| Adam Hendry | C – N/A[19] | $250 | 16.30 | 4,075.00 |
| Heather Hiznay | RIG – 2011 | $290 | 332.50 | 96,425.00 |
|  |  | $300 | 923.90 | 277,170.00 |
|  |  | $345 | 741.50 | 255,817.50 |
| Veronique Hodeau | RIG– 2007 | $375 | 99.30 | 37,237.50 |
|  |  | $415 | 26.50 | 10,997.50 |
|  |  | $455 | 1.90 | 864.50 |
|  |  | $470 | 1.40 | 658.00 |
| Joshua Holt | C – 2010 | $290 | 464.20 | 134,618.00 |
|  |  | $335 | 204.70 | 68,574.50 |
|  |  | $345 | 27.40[20] | 9,453.00 |
|  |  | $385 | 43.30[21] | 16,670.50 |
| Kenneth Horowitz | RE – 1993 | $495 | 7.20 | 3,564.00 |
| Nicholas James | RIG – 2008 | $335 | 8.00 | 2,680.00 |
|  |  | $425 | 4.30 | 1,827.50 |
| Benjamin Johnson | C – 2008 | $335 | 368.60 | 123,481.00 |
|  |  | $375 | 77.30 | 28,987.50 |
| Josh Joyce | L – 2010 | $335 | 432.70 | 144,954.50 |
|  |  | $345 | 1,387.10 | 478,549.50 |
|  |  | $385 | 1,162.80 | 447,678.00 |
| Chang Jung | C – 2010 | $290 | 111.50 | 32,335.00 |
|  |  | $345 | 166.30 | 57,373.50 |
|  |  | $385 | 203.40 | 78,309.00 |
| Andrew Kaspersen | L – 2010 | $290 | 77.80 | 22,562.00 |
|  |  | $335 | 289.50 | 96,982.50 |
|  |  | $345 | 1,142.80 | 394,266.00 |
|  |  | $385 | 796.40 | 306,614.00 |
| Chrysoula Kounoupa | C – N/A[22] | $320 | 84.00 | 26,880.00 |
| Thomas Laurer | C – 2001 | $575 | 1.50 | 862.50 |
| Jorge Lembeye | C – N/A[23] | $290 | 21.30 | 6,177.00 |
| Matthew Lischin | RIG – 2010 | $290 | 1,065.40 | 308,966.00 |
|  |  | $335 | 710.80 | 238,118.00 |
|  |  | $345 | 1,509.30 | 520,708.50 |
|  |  | $385 | 1,004.40 | 386,694.00 |
| Benjamin Lowin | C – 2006 | $455 | 549.80 | 250,159.00 |
|  |  | $495 | 171.40 | 84,843.00 |
|  |  | $510 | 81.40 | 41,514.00 |
| Christina Manthei | RIG – 2008 | $335 | 417.70 | 139,929.50 |

[18] Due to an accounting error in the January 2009 Fee Statement, which was reported in the First Interim Fee Application, the amount requested is $158 less than it should be. Curtis is not seeking compensation for the additional amount at this time.
[19] See *supra*, n.15.
[20] See *supra*, n.6.
[21] See *supra*, n.6.
[22] See *supra*, n.15.
[23] Jorge Lembeye was admitted to practice in Chile in 2003.

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | $375 | 24.10 | 9,037.50 |
| Nicole Mazanitis | L – 2011 | $290 | 73.40 | 21,286.00 |
| | | $300 | 272.50 | 81,750.00 |
| | | $345 | 1.90[14] | 655.50 |
| Timothy McCabe | L – 2002 | $575 | 333.40 | 191,705.00 |
| | | $590 | 217.60 | 128,384.00 |
| Mitch McGuffey | L – 2011 | $290 | 196.80 | 57,072.00 |
| | | $300 | 1,117.90 | 335,370.00 |
| | | $345 | 919.90 | 317,365.50 |
| Chelsea McLean | L – 2009 | $290 | 52.70 | 15,143.00[24] |
| | | $335 | 27.70 | 9,279.50 |
| | | $375 | 20.00 | 7,500.00 |
| Edward McNamara | RIG – 2010 | $290 | 22.60 | 6,554.00 |
| Shannon McNulty | L – 2003 | $575 | 7.70 | 4,427.50 |
| Julia Mosse | L – 2010 | $290 | 79.10 | 22,939.00 |
| | | $335 | 26.00 | 8,710.00 |
| Gary Moy | L – N/A[25] | $290 | 37.00 | 10,730.00 |
| | | $300 | 123.40[26] | 37,020.00 |
| Susana M. Namnum | C – 1996 | $575 | 1,819.30 | 1,046,097.50 |
| | | $590 | 1,049.80 | 619,382.00 |
| Morgan Nighan | L – 2011 | $290 | 133.30 | 38,657.00 |
| | | $300 | 104.60 | 31,380.00 |
| | | $345 | 21.90[27] | 7,555.50 |
| Susan E. Park | L – 2007 | $470 | 38.50 | 18,095.00 |
| Shafiq Perry | C – 2009 | $290 | 1,455.60 | 422,124.00 |
| | | $335 | 1,376.30 | 461,060.50 |
| | | $375 | 578.70 | 217,012.50 |
| | | $385 | 615.20 | 236,852.00 |
| Danny Phillips | C – 2006 | $415 | 30.80 | 12,782.00 |
| | | $455 | 19.90 | 9,054.50 |
| | | $495 | 25.70 | 12,721.50 |
| Naomi Reinharz | L – 2009 | $290 | 242.60 | 70,354.00 |
| | | $335 | 166.70 | 55,844.50 |
| Luciana T. Ricart | C – N/A[28] | $275 | 54.50 | 14,987.50 |
| Tobias Roettger | C – N/A[29] | $365 | 5.60 | 2,044.00 |
| Jennifer Ryan | L – 2010 | $290 | 86.00 | 24,940.00 |
| | | $335 | 30.00 | 10,050.00 |
| Sabine Schmidt | C – N/A[30] | $340 | 12.80 | 4,352.00 |
| Sara Sherrod | C – 2010 | $290 | 44.90 | 13,021.00 |
| | | $335 | 38.50 | 12,897.50 |
| | | $345 | 202.30 | 69,793.50 |

[24] Due to an accounting error in the January 2009 Fee Statement, which was reported in the First Interim Fee Application, the amount requested is $140 less than it should be. Curtis is not seeking compensation for the additional amount at this time.
[25] Gary Moy has passed the New York Bar examination. His anticipated date of admission is July 11, 2012.
[26] See *supra*, n.6.
[27] See *supra*, n.6.
[28] Luciana T. Ricart serves as an associate in Curtis' London office.
[29] Tobas Roettger formerly served as an associate in Curtis' Frankfurt office.
[30] Sabine Schmidt serves as an associate in Curtis' Frankfurt office and is admitted to practice in Frankfurt/Main (Germany).

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Alex Siegal | C – 2010 | $290 | 29.10 | 8,439.00 |
| | | $335 | 58.00 | 19,430.00 |
| | | $345 | 165.00 | 56,925.00 |
| Andrew M. Smith | C – 2008 | $375 | 23.40 | 8,775.00 |
| | | $425 | 116.40 | 49,470.00 |
| | | $470 | 70.70 | 33,229.00 |
| Katherine M. Smith | L – 2007 | $375 | 167.40 | 62,775.00 |
| Brendan P. Snowden | C – 2010 | $290 | 41.10 | 11,919.00 |
| | | $335 | 27.70 | 9,279.50 |
| | | $345 | 106.60 | 36,777.00 |
| | | $385 | 104.60 | 40,271.00 |
| Maria Stookey | C – 2009 | $290 | 44.00 | 12,760.00 |
| Dora Straus | L – 2000 | $575 | 29.50 | 16,962.50 |
| | | $590 | 51.30 | 30,267.00 |
| Priya Swaminathan | L – 2007 | $415 | 1,241.30 | 515,139.50 |
| | | $455 | 1,637.30 | 744,971.50 |
| | | $495 | 76.60 | 37,917.00 |
| Catinca Tabacaru | L – 2008 | $335 | 207.60 | 69,546.00 |
| | | $375 | 18.00 | 6,750.00 |
| Ellen Tobin | L – 2006 | $495 | 13.30 | 6,583.50 |
| Derek Tokaz | C – 2009 | $280 | 345.90 | 96,852.00 |
| | | $335 | 12.80 | 4,288.00 |
| Brian C. Tong | L – 2008 | $335 | 68.60 | 22,981.00 |
| Christina Tretter-Herriger | C – N/A[31] | $280 | 272.40 | 76,272.00 |
| | | $290 | 4.20 | 1,200.00[32] |
| | | $335 | 1.60 | 536.00 |
| Jeanine Turrell | C – 2009 | $290 | 104.80 | 30,392.00 |
| Peter von zur Gathen | C – 1996 | $575 | 171.20 | 98,440.00 |
| Brian White | L – 2009 | $290 | 99.60 | 28,884.00 |
| | | $335 | 39.50 | 13,232.50 |
| | | $385 | 3.00 | 1,155.00 |
| Shawna-Gay White | C – 2010 | $300 | 27.60[33] | 8,280.00 |
| Rachel Yocum | L – 2006 | $455 | 8.00 | 3,640.00 |
| | | $495 | 135.20 | 66,924.00 |
| Daniel Yunger | RIG – 2004 | $415 | 12.70 | 5,270.50 |
| James Zimmer | RIG – 2011 | $345 | 42.30[34] | 14,593.50 |
| Andrew Zinman | L – 1996 | $455 | 82.10 | 37,355.50 |
| | | $495 | 460.40 | 227,898.00 |
| | | $535 | 307.30 | 164,405.50 |
| | | $550 | 1,171.50 | 644,325.00 |
| | | $590 | 944.10 | 557,019.00 |
| H. Michael Zografakis | C – 2008 | $335 | 66.90 | 22,411.50 |
| **TOTAL ASSOCIATES** | | | **62,574.90** | **$ 25,280,664.00** |

[31] Christina Tretter-Herriger was not admitted to the New York Bar at the time she provided services in the Debtors' cases.

[32] Due to an accounting error in the December 2008 Fee Statement, which was reported in the First Interim Fee Application, the amount requested is $18 less than it should be. Curtis is not seeking compensation for the additional amount at this time.

[33] See *supra*, n.6.

[34] See *supra*, n.6.

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| **SUMMER ASSOCIATES** | | | | |
| Ada Victoria Anon | L | $290 | 94.40 | 27,376.00 |
| Uzma Burney | L | $250 | 154.70 | 38,675.00 |
| Jasper Cacanata | C | $250 | 3.20 | 800.00 |
| Edward Combs | L | $290 | 98.10 | 28,449.00 |
| Robert Dawes | RIG | $290 | 50.10 | 14,529.00 |
| Francesca Erts | L | $290 | 32.10 | 9,309.00 |
| Kelly Geoghegan | L | $290 | 70.90 | 20,561.00 |
| Heather Hiznay | RIG | $250 | 99.80 | 24,950.00 |
| Michael P. Jones | L | $290 | 81.20 | 23,548.00 |
| Bryan M. Kotliar | RIG | $290 | 105.00 | 30,450.00 |
| Ryan Lema | RIG | $250 | 101.10 | 25,275.00 |
| Keith Lucas | RIG | $250 | 64.10 | 16,025.00 |
| Andrew J. Macklin | C | $290 | 31.00 | 8,990.00 |
| Nicole Mazanitis | L | $250 | 58.30 | 14,575.00 |
| Tara McDevitt | L | $250 | 29.40 | 7,350.00 |
| Stephanie R. Morris | L | $290 | 27.20 | 7,888.00 |
| Morgan Nighan | C | $250 | 28.40 | 7,100.00 |
| Juan O. Perla | C | $290 | 3.40 | 986.00 |
| Ozan Yalti | C | $290 | 4.50 | 1,305.00 |
| James Zimmer | RIG | $250 | 86.10 | 21,525.00 |
| **TOTAL SUMMER ASSOCIATES** | | | **1,223.00** | **$    329,666.00** |
| | | | | |
| **PARAPROFESSIONALS** | | | | |
| Jude Barucha | RIG | $170 | 1.20 | 204.00 |
| Bryent Battle | L | $165 | 52.80 | 8,712.00 |
| Oleg Bitman | RIG | $190 | 24.30 | 4,617.00 |
| | | $210 | 24.70 | 5,187.00 |
| Corinne Brenner | L | $180 | 2.60 | 468.00 |
| Samuel Coe | RIG | $190 | 153.50 | 29,165.00 |
| Jed Cohen | RIG | $190 | 502.10 | 95,399.00 |
| Olivia Dana | L | $180 | 147.00 | 26,460.00 |
| Georgia Faust | RIG | $210 | 530.00 | 111,300.00 |
| | | $220 | 567.80 | 124,916.00 |
| | | $230 | 892.50 | 205,275.00 |
| Michael Fingerhut | C | $200 | 1.40 | 280.00 |
| | | $210 | 1.00 | 210.00 |
| Beth Forman | RE | $190 | 1.10 | 209.00 |
| | | $210 | 41.10 | 8,631.00 |
| Neal Goodman | L | $250 | 586.70 | 146,675.00 |
| | | $260 | 667.70 | 173,602.00 |
| Julia Gumpper | L | $190 | 2.50 | 475.00 |
| Simon Hall | L | $200 | 25.40 | 5,080.00 |
| William Hampson | C[35] | $285 | 36.40 | 10,374.00 |
| Brianna Hill | L | $190 | 7.40 | 1,406.00 |
| | | $200 | 23.70 | 4,740.00 |
| | | $210 | 23.90 | 5,019.00 |

[35] William Hampson and Jamie Ogilvie serve as trainee solicitors in Curtis' London office.

| NAME OF PROFESSIONAL | DEPARTMENT[1] AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Alina Khankin | L | $250 | 17.00 | 4,250.00 |
| Susan Kindya-Culley | L | $200 | 49.30 | 9,860.00 |
| | | $220 | 1,261.30 | 277,486.00 |
| Boris Lamptey | L | $165 | 307.10 | 50,671.50 |
| Bethany Lipman | L | $190 | 1.40 | 266.00 |
| Javier Lopez | L | $165 | 96.20 | 15,873.00 |
| | | $175 | 135.50 | 23,712.50 |
| Michael Malavarca | L | $165 | 122.40 | 20,196.00 |
| | | $190 | 170.00 | 32,300.00 |
| | | $200 | 528.00 | 105,600.00 |
| Katerina Mantell | RIG | $210 | 43.10 | 9,051.00 |
| | | $220 | 146.70 | 32,274.00 |
| | | $230 | 311.60 | 71,668.00 |
| Ramon Miyar | RIG | $190 | 828.20 | 157,358.00 |
| Alejandro Montenegro | RIG | $210 | 114.50 | 24,045.00 |
| | | $220 | 58.40 | 12,848.00 |
| | | $230 | 30.30 | 6,969.00 |
| Stephanie Morales | RIG | $220 | 282.80 | 62,216.00 |
| Jamie Ogilvie | C[36] | $230 | 6.50 | 1,495.00 |
| | | $285 | 45.20 | 12,882.00 |
| Keesha Parsons | C | $210 | 5.30 | 1,113.00 |
| Nicole Perkins | L | $210 | 193.00 | 40,530.00 |
| | | $220 | 491.30 | 108,086.00 |
| | | $230 | 2,048.80 | 471,224.00 |
| Laura Raposo | RIG | $190 | 99.20 | 18,848.00 |
| | | $210 | 6.50 | 1,365.00 |
| Martine Read | RIG | $210 | 100.80 | 21,168.00 |
| | | $220 | 152.70 | 33,594.00 |
| | | $230 | 90.00 | 20,700.00 |
| Sarah Regh | C | $250 | 145.20 | 36,300.00 |
| Joseph Riley | L | $195 | 5.00 | 975.00 |
| Christopher Rohoman | L | $165 | 15.20 | 2,508.00 |
| Patrick Romero | L | $165 | 171.84 | 28,353.60 |
| | | $175 | 234.70 | 41,072.50 |
| Andrew Russo | RIG | $210 | 90.10 | 18,921.00 |
| Melissa Rutman | RIG | $220 | 248.90 | 54,758.00 |
| Roberto Santamarina | L | $165 | 71.10 | 11,731.50 |
| Herbert Tapia | L | $165 | 6.00 | 990.00 |
| Jerome Tufte | RIG | $190 | 634.00 | 120,460.00 |
| | | $210 | 445.80 | 93,618.00 |
| Julio Velazquez | L | $190 | 114.90 | 21,831.00 |
| Roman Vengerovskiy | C | $170 | 36.30 | 6,171.00 |
| | | $210 | 121.10 | 25,431.00 |
| **TOTAL PARAPROFESSIONALS** | | | **14,400.04** | **$ 3,079,173.60** |

[36] See *supra*, n.35.

| TOTALS | | | |
|---|---|---|---|
| **PROFESSIONALS** | **BLENDED RATE** | **TOTAL HOURS BILLED** | **TOTAL COMPENSATION** |
| Partners | $763.70 | 26,840.80 | $20,498,441.50 |
| Counsel | $605.65 | 6,060.50 | $3,670,513.50 |
| Associates | $404.01 | 62,574.90 | 25,280,664.00 |
| Summer Associates | $269.56 | 1,223.00 | $329,666.00 |
| Paraprofessionals | $213.83 | 14,400.04 | $3,079,173.60 |

| | | | |
|---|---|---|---|
| SUBTOTAL | | 111,099.24 | $52,858,458.60 |
| Less 100% discount where professionals spent less than one hour working on the Debtors' cases[37] | | — | ($2,584.00) |
| Less discount on Summer Associate fees[38] | | — | ($251,528.50) |
| Less voluntary reduction to certain Eighth Interim Period fees[39] | | 323.30 | ($87,307.00) |
| SUBTOTAL | | 110,775.94 | $52,517,039.10 |
| Less Reductions Taken After Negotiations with the Fee Committee | | — | ($586,483.03) |
| **Total Fees Requested for Approval on a Final Basis** | | **110,775.94** | **$51,930,556.07** |

---

[37] See *supra*, n.6.  Discount amounts are calculated for the Eighth, Ninth and Tenth Compensation Periods.  For the First through Seventh Compensation Periods, such time was removed from the relevant billing statement prior to submission, and therefore total discount sums for those periods are not available.

[38] With respect to time billed during the Compensation Period by Summer Associates, while the Firm typically bills all clients for Summer Associate time at the full hourly rate, as an accommodation to the Debtors, but in no means reflective of the professional level of the work performed, Curtis voluntarily reduced a portion of the amount of fees billed to the Debtors' estate for all Summer Associates' time for the Compensation Period.  All Summer Associates' time billed during the Third Interim Compensation Periods was voluntarily reduced by fifty percent (50%).  All Summer Associates' time billed during the Sixth and Ninth Interim Compensation Period was voluntarily reduced by one hundred percent (100%).

[39] Curtis voluntarily reduced compensation requested under Matter No. 4500 for services provided in relation to the preparation of monthly fee statements on the Eighth Interim Fee Application.

## EXHIBIT C

**EXPENSE SUMMARY FOR CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
FOR THE COMPENSATION PERIOD OF SEPTEMBER 26, 2008 TO MARCH 6, 2012**

| DESCRIPTION | AMOUNT |
|---|---|
| Corporation Services | $ 453.65 |
| Color Copies | 10,115.00 |
| Computer | 363.05 |
| Consultants | 6,950.00 |
| Courier Services | 25,788.93 |
| Depositions/Transcripts | 276,887.99 |
| Duplicating | 165,151.29 |
| Electronic Data Processing | 30,981.46 |
| Filing Fees | 1,572.00 |
| Lexis/Westlaw | 971,285.64 |
| Litigation Printing | 16,991.10 |
| Long Distance Telephone | 1,998.24 |
| Meals Expense | 60,895.94 |
| Miscellaneous Disbursements | 610.81 |
| Overtime | 518.17 |
| Pacer | 12,920.40 |
| Postage | 191.67 |
| Printing (Outside Vendor) | 302.58 |
| Process Service | 27.09 |
| Registration Fees | 811.40 |
| Search Fees | 4,774.50 |
| Subpoena Fee | 13,900.00 |
| Telefax Expense | 105.89 |
| Telephone Audio Conference | 15,616.13 |

| DESCRIPTION | AMOUNT |
|---|---|
| Telephone Expense | 508.16 |
| Translation Expense | 5,646.59 |
| Transportation Expense | 43,663.08 |
| Travel | 45,355.72 |
| Word Processing | 322,489.93 |
| Witness Fees | 1,034.54 |
| SUBTOTAL: | $   2,037,910.95 |
| Less Voluntary Deduction[1] | ($690.58) |
| SUBTOTAL | $   2,037,220.37 |
| Less Reduction Taken After Negotiations with the Fee Committee | ($69,974.46) |
| **TOTAL:** | **$   1,967,246.91** |

---

[1] Curtis voluntarily reduced the requested amount in the expense categories of Long Distance Telephone, Meals Expense, and Transportation Expense, corresponding to certain expenses that were billed in February 2011 and March 2011 as reflected on the Eighth Interim Fee Application. Additionally, Curtis voluntarily reduced the requested amount in certain expense categories corresponding to certain expenses that were billed during the Second, Third and Fourth Interim Compensation Periods as follows: $461.22 from Meals expenses and $118.05 from Transportation expenses from the Second Interim Compensation Period; $31.54 from Meals expenses, $57 from Transportation expenses and $7,110 from Word Processing expenses from the Third Interim Compensation Period; $802.60 from Meals expenses from the Fourth Interim Compensation Period. However, these additional voluntary reductions were taken prior to the interim requested totals were calculated and therefore are reflected in the above totals.

12432694                                                                                    Exhibit C

**EXHIBIT D**

## COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE PERIOD OF SEPTEMBER 26, 2008 THROUGH FEBRUARY 28, 2010[1]

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | Case Administration | 1,351.40 | $     458,833.00 |
| Matter No. 200 | General Corporate Matters | 880.30 | 422,954.50 |
| Matter No. 300 | Curtis Retention/Billing/Fee Application | 2,089.00 | 643,525.50 |
| Matter No. 400 | Swap Transactions/Terminations/Analysis | 1,297.10 | 612,662.50 |
| Matter No. 410 | U.S. Bank Matters | 979.60 | 507,275.50 |
| Matter No. 420 | JPMorgan Chase Matters | 21,927.10 | 10,588,825.50 |
| Matter No. 430 | CIFG Matters | 288.20 | 154,505.00 |
| Matter No. 440 | Syncora Matters | 1,449.90 | 808,951.00 |
| Matter No. 450 | Fenway Matters | 63.50 | 27,479.00 |
| Matter No. 460 | Racers Matters | 427.30 | 226,084.00 |
| Matter No. 470 | Sasco Matters | 64.80 | 26,247.50 |
| Matter No. 480 | Pyxis Matters | 1,720.70 | 934,192.00 |
| Matter No. 490 | Pine, Spruce and Verano Matters | 110.70 | 45,917.00 |
| Matter No. 500 | Automatic Stay/Setoff and Safe Harbor | 1.40 | 1,022.00 |
| Matter No. 510 | CEAGO Matters | 466.70 | 259,790.00 |
| Matter No. 520 | Citibank Matters | 743.70 | 346,996.00 |
| Matter No. 600 | Rule 2004 Bankruptcy Discovery | 184.80 | 113,804.50 |
| Matter No. 700 | Bankruptcy Litigation | 2,709.20 | 1,325,622.50 |
| Matter No. 800 | Non-Bankruptcy Litigation | 244.70 | 133,612.00 |
| Matter No. 1200 | Hearings and Court Matters | 171.00 | 92,912.00 |

---

[1] On March 1, 2010, in accordance with the request of the Fee Committee, Curtis established a new set of standardized matter numbers. Thus, compensation attributable to matter numbers and descriptions for September 26, 2008 through February 28, 2010 is calculated separately from that attributable to matter numbers and descriptions for the remainder of the Compensation Period, March 1, 2010 through March 6, 2012.

| SUBTOTAL | 37,171.10 | $17,731,211.00 |
|---|---|---|
| Less 50% discount on Summer Associate fees[2] | —— | ($78,137.50) |
| **TOTAL** | **37,171.10** | **$17,653,073.50** |

---

[2] Curtis voluntarily reduced the amount of fees billed to the Debtors' estate by fifty percent (50%) for all Summer Associates' time relating to the Third Interim Period.

## EXHIBIT E

### COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE PERIOD OF MARCH 1, 2010 THROUGH MARCH 6, 2012

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | General Case Administration | 500.70 | $      116,384.00 |
| Matter No. 200 | General Case Strategy Meetings | 879.70 | 520,368.00 |
| Matter No. 300 | Project Monitoring/Court Calendar & Docket Maintenance | 578.80 | 204,428.50 |
| Matter No. 400 | Hearings and Court Communications | 357.90 | 128,156.00 |
| Matter No. 900 | Secured Creditors Issues/Meetings/ Communications | 1.00 | 622.00 |
| Matter No. 1100 | LBI/SIPC Coordination and Issues | 774.80 | 468,664.50 |
| Matter No. 1400 | Employee/ ERISA/Benefits/ Pension Issues | 2.20 | 1,468.00 |
| Matter No. 2400 | Derivatives/Swap Agreement Issues | 8,155.44 | 4,744,777.60 |
| Matter No. 2500 | Loans/Investments | 2,490.10 | 1,216,809.00 |
| Matter No. 2600 | Domestic Bank and Related Regulatory Issues | 670.10 | 336,729.00 |
| Matter No. 2900 | Non-Derivative Automatic Stay/Safe Harbor Issues | 216.50 | 76,255.50 |
| Matter No. 3100 | Non-Derivative Executory Contracts/365 Issues | 26.40 | 15,725.50 |
| Matter No. 3400 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 276.90 | 172,766.50 |
| Matter No. 3500 | Disclosure Statement/Solicitation/Voting | 303.80 | 192,899.00 |
| Matter No. 3600 | Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues | 4,299.40 | 2,175,948.50 |
| Matter No. 3700 | Other Bankruptcy Motions and Matters | 999.50 | 517,167.50 |
| Matter No. 3800 | Non-Derivative Adversary Proceedings Preparation and Litigation | 48,384.90 | 22,464,164.00 |
| Matter No. 3900 | Non-Bankruptcy Litigation | 920.50 | 427,128.00 |
| Matter No. 4000 | 2004 Issues | 90.00 | 44,584.50 |
| Matter No. 4400 | Examiner Issues | 689.30 | 299,214.50 |
| Matter No. 4500 | Proprietary Retention/Billing/Fee Applications | 3,310.20 | 1,002,987.50 |

| SUBTOTAL | 73,928.14 | $   35,127,247.60 |
|---|---|---|
| Less 100% discount where professionals spent less than one hour working on the Debtors' cases | —— | ($2,584.00) |
| Less 100% discount on Summer Associate fees[1] | —— | ($173,391.00) |
| Less voluntary reduction in Matter No. 4500[2] | (323.30) | ($87,307.00) |
| **TOTAL** | **73,604.84** | **34,863,965.60** |

[1] Curtis voluntarily reduced the amount of fees billed to the Debtors' estate by one hundred percent (100%) for all Summer Associates' time relating to the Sixth and Ninth Interim Period.

[2] Curtis voluntarily reduced compensation requested under Matter No. 4500 for services provided in relation to the preparation of monthly fee statements on the Eighth Interim Fee Application.

## EXHIBIT F

### SUMMARY OF AMOUNTS REQUESTED AND AMOUNTS AWARDED BY INTERIM COMPENSATION PERIOD

| Period Covered | Requested | | Awarded | | Agreed Upon Reduction | | Subject to Ongoing Negotiations | |
|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| First 09/26/2008 -01/31/2009 | $4,611,589.50 | $151,402.02 | $4,605,112.00 | $151,402.02 | $56.00 | $0.00 | $6,421.50 | $0.00 |
| Second 02/01/2009 - 05/31/2009 | $4,230,132.50 | $164,681.90 | $4,216,398.50 | $132,363.87 | $0.00 | $31,397.07 | $13,734.00 | $920.96 |
| Third 06/01/2009 - 09/30/2009 | $4,664,248.00 | $188,127.18 | $4,551,471.48 | $151,898.05 | $0.00 | $5,172.22 | $112,776.52 | $31,056.91 |
| Fourth 10/01/2009 - 01/31/2010 | $3,396,981.50 | $87,448.45 | $3,237,003.32 | $60,332.68 | $58,537.50 | $6,842.28 | $101,440.69 | $20,273.49 |
| Fifth 02/01/2010 - 05/31/2010 | $3,546,135.00 | $135,181.82 | $3,440,334.85 | $113,036.80 | $24,239.50 | $230.72 | 81,560.65 | $21,914.12 |
| Sixth 06/01/2010 - 09/30/2010 | $4,727,258.00 | $198,520.63 | $4,634,376.17 | $162,827.60 | $92,881.83 | $1,589.43 | $0.00 | $34,103.60 |
| Seventh 10/01/2010 - 01/31/2011 | $6,409,513.60 | $164,980.24 | $6,104,628.30 | $131,578.73 | $229,368.80 | $2,581.40 | $75,516.50 | $30,820.11 |
| Eighth 02/01/2011 - 05/31/2011 | $7,174,392.00 | $247,998.44 | $6,187,522.85 | $184,068.64 | $143,722.65 | $19,152.98 | $843,146.50 | $44,776.82 |
| Ninth 06/01/2011 - 09/30/2011 | $5,886,919.50 | $276,530.84 | $5,581,528.75 | $233,994.46 | $37,676.75 | $3,008.36 | $267,714.00 | $39,528.02 |
| Tenth 10/01/2011 - 03/06/2012 | $7,869,869.50 | $422,349.85 | To Be Determined | To Be Determined | To Be Determined | To Be Determined | To Be Determined | To Be Determined |
| **Final Total** | **$52,517,039.10** | **$2,037,221.37** | **$42,558,376.22** | **$1,321,502.85** | **$586,483.03** | **$69,974.46** | **$1,502,310.36** | **$223,394.03** |