**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                         :   Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :   08-13555 (JMP)
:
Debtors.                       :   (Jointly Administered)
:
------------------------------------------------------------------x

**FINAL APPLICATION OF GLEACHER & COMPANY SECURITIES, INC. FOR APPROVAL OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

| | |
|---|---|
| Name of Applicant: | Gleacher & Company Securities, Inc. |
| Date of Retention: | February 17, 2011 |
| Date of Entry of Order Authorizing Employment: | December 22, 2011 (effective as of February 17, 2011) |
| Period for which reimbursement of expenses is sought | February 17, 2011 through March 6, 2012 |
| Compensation for Services Rendered Requested | $7,500,000.00 |
| Expenses Requested: | $554,678.75 |

## FEE SUMMARY

| EXPENSE CATEGORY | AMOUNT |
|---|---:|
| Transaction Fee[1] | $7,500,000.00 |
| **TOTAL OUTSTANDING** | $7,500,000.00 |

## EXPENSE SUMMARY

| EXPENSE CATEGORY | AMOUNT |
|---|---:|
| Car Services and Taxis | $26,140.98 |
| Employee Meals | $23,055.49 |
| Employee Travel | $38,406.22 |
| Office Supplies | $1,302.36 |
| Internet, Voice and Data | $66.39 |
| Client Meetings/Meals | $5,950.34 |
| Data Room | $179,016.66 |
| Legal Fees | $276,121.00 |
| Legal Expenses | $4,619.31 |
| Total Expenses | $554,678.75 |
| Less: Amount Previously Paid by Debtors | -$194,616.60 |
| **TOTAL OUTSTANDING** | $360,062.15 |

---

[1] As explained below, Gleacher is entitled to an Equity Purchase Fee (as defined below) resulting from the Debtors' purchase of certain equity interests in Archstone (as defined below), and such fee became due and owing on or about June 6, 2012. Although Section 2.2 of the Plan (as defined below) states that fees earned by retained professionals after the Effective Date (as defined below) may be paid by the Debtors without this Court's approval, Gleacher is seeking approval and allowance of the Equity Purchase Fee out of an abundance of caution.

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, :    08-13555 (JMP)
                                            :
                    Debtors.                :    (Jointly Administered)
                                            :
------------------------------------------------------------x

**FINAL APPLICATION OF GLEACHER & COMPANY SECURITIES, INC. FOR
APPROVAL OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES**

Gleacher & Company Securities, Inc. ("Gleacher"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines"), the Fourth Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated April 14, 2011 (the "Interim Compensation Order"), files this final application (the "Application") for (i) compensation for services rendered, in the form of a fee related to completion of the Debtors' purchase of certain equity interests in Archstone (as defined below), and (ii) reimbursement of actual and necessary expenses, including legal fees and expenses of Goodwin Procter LLP ("Goodwin"), incurred by Gleacher during the period from February 17, 2011 through March 6, 2012 (the "Expense Reimbursement Period"). Gleacher respectfully represents:

**JURISDICTION**

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, respectively.  The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code.

**GENERAL BACKGROUND**

2.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries (collectively, "Lehman" or the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Docket Nos. 19627 and 19629].  On September 1, 2011, the Bankruptcy Court entered an amended order [Docket No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing.  On September 15, 2011, the Bankruptcy Court entered an order [Docket No. 20016] approving a modification to the Disclosure Statement.  On December 7, 2011, the Bankruptcy Court entered an order [Docket No. 23023] confirming the Plan, and the Plan went effective on March 6, 2012 [Docket No. 26039].

2

**SUMMARY OF GLEACHER RETENTION**

4. In 2007, Lehman and certain of its non-Debtor affiliates made equity investments and loans in connection with the leveraged buyout of a publicly-traded real estate investment trust known as Archstone ("Archstone"). In total, affiliates of the Lehman, affiliates of Bank of America, N.A. ("Bank of America") and affiliates of Barclays Capital Real Estate Inc. ("Barclays," and collectively with Bank of America, the "Co-Sponsors") invested approximately $4.8 billion in the aggregate in the common equity of Archstone, with approximately $2.4 billion attributable to Lehman's indirect interests. Then, in June 2009, Lehman and the Co-Sponsors provided approximately $485 million in secured and priority financing. Pursuant to orders of this Court dated May 25, 2010 and November 18, 2010, Lehman and the Co-Sponsors restructured their investments in Archstone to, among other things, (i) convert certain of the financing provided to Archstone by Lehman and the Co-Sponsors in the principal amount of approximately $5.2 billion, plus accrued interest, to classes of new equity interests entitled to a preferred return, and (ii) replace the $485 million in financing provided in June 2009 to a new revolving credit facility with an extended maturity date. As a result of these transactions, at the end of fiscal year 2010 Lehman directly or indirectly owned approximately $2.6 billion of face value of preferred equity of Archstone, and as of June 30, 2011 held approximately $208 million in outstanding debt.

5. As a result of its successful restructuring, Archstone saw the opportunity to raise additional capital and to unlock a substantial amount of equity value. Thus, beginning in January 2011, the Debtors began a process to retain a financial advisor to advise them in connection with a potential transaction, or series of transactions, designed to maximize the value of the Debtors' interests in Archstone. Specifically, the Debtors contemplated the possibility of a transaction involving equity financing effected through the formation of a joint venture, an initial public

3

offering of equity securities, or a sale of all or a portion of its assets.  After a thorough search, the Debtors determined to retain Gleacher to render such services.

6. Beginning on February 17, 2011, Gleacher began advising and assisting the Debtors in assessing and preparing for one or more potential Archstone transactions.  Since that time, Gleacher has provided valuable and uninterrupted services to the Debtors and undertaken a significant amount of work, including for a period of time without a formal engagement in place.  This work has included, among other things, (i) assisting in the preparation of filings with the Securities Exchange Commission with respect to an initial public offering; (ii) assisting the Debtors in interviewing and assessing one or more underwriters for an initial public offering; (iii) negotiations with respect to underwriter fees and the terms of credit facilities which may be entered into in connection with an initial public offering; (iv) negotiations regarding multiple forms of private equity capital and various strategic alternatives for Archstone; (v) assisting the Debtors in identifying potential purchasers of Archstone through a sale of equity in Archstone or a merger transaction; and (v) negotiations with the Co-Sponsors regarding these strategic alternatives.

7. On December 22, 2011, the Court entered the Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedures 2014(a) and 2016 for Authorization to Employ and Retain Gleacher & Company Securities, Inc. as Financial Advisor Effective as of February 17, 2011 (the "Retention Order").  The Retention Order authorized the Debtors to retain Gleacher pursuant to the terms of the Engagement Letter and Indemnification Agreement (the "Engagement Agreement").  Under the terms of the Engagement Agreement, Gleacher is entitled to receive certain fees and be reimbursed for certain

4

expenses incurred in connection with services provided by Gleacher within the scope of its retention.

8. Among other things, pursuant to Section 2(f) of the Engagement Agreement, Gleacher is entitled to receive a fee (the "Equity Purchase Fee") "payable in cash upon closing" of an "Equity Purchase Transaction." An Equity Purchase Transaction is defined under Section 1(e) of the Engagement Agreement to include purchase by LBHI of "all or a portion of the shares of beneficial interest of Archstone not currently owned by [LBHI]" and that provides LBHI with control of Archstone. Under Section 2(f), the Equity Purchase Fee is set at an amount equal to "$7.5 million multiplied by (x) the Value of the portion of the shares of beneficial interest acquired in such Equity Purchase Transaction, and divided by (y) the Value of the shares which represent the entire ownership interest in Archstone not currently owned by [LBHI]."

9. In addition, pursuant to Section 2(k) of the Engagement Agreement, Gleacher is entitled to receive reimbursement of its reasonable out-of-pocket expenses (including expenses for one firm of outside legal counsel), subject to a $200,000 cap unless otherwise consented to by the Debtors. Additionally, under the terms of the Indemnification Agreement, LBHI agreed to indemnify Gleacher from or against any losses incurred in connection with its engagement by the Debtors.

10. Despite the efforts of the Debtors, the Co-Sponsors and their respective advisors, the Debtors and the Co-Sponsors were unable to agree on a proposed transaction related to Archstone. In December 2011, the Co-Sponsors sought to sell a portion of their interests in Archstone to an affiliate of Equity Residential, a real estate investment trust ("Equity Residential"). As part of the sale of their interests, the Co-Sponsors granted Equity Residential an option to purchase the balance of their interests in Archstone if the Debtors opted to exercise

5

their contractual right of first offer ("ROFO") with respect to the portion of the interests Equity Residential had agreed to purchase. After exercising the ROFO on December 21, 2011, the Debtors instituted an adversary proceeding (the "Adversary Proceeding") against the Co-Sponsors seeking, among other things, (1) to clarify the terms of the ROFO, (2) an order enforcing specific performance of obligations of the Co-Sponsors under the documents related to their investments in and ownership of Archstone and (3) an injunction against transfer of equity of Archstone to Equity Residential through the option [Bankr. S.D.N.Y. Case. No. 11-02928]. Pursuant to the Court's Order Regarding Expedited Discovery and Preliminary Injunction Hearing, dated December 23, 2011 [Adv. Proc. Docket No. 33], Gleacher was required to produce relevant, non-privileged email communications with the Debtors and certain other parties identified in such order.

11. Gleacher advised the Debtors in evaluating alternatives related to their ROFO and the agreements between Equity Residential and the Co-Sponsors. These efforts resulted in the Debtors entry into an Interest Purchase Agreement with the Co-Sponsors by which the Debtors purchased 50% of the Co-Sponsors' equity interest in Archstone, equal to 26.5% of the total equity interests in Archstone, for a total consideration of $1,325,000,000 in cash, subject to certain adjustments. Gleacher assisted the Debtors in formulating, negotiating and closing under the terms of the Interest Purchase Agreement.

12. Following closing of the Interest Purchase Agreement, the Debtors, the Co-Sponsors and Equity Residential continued their discussions regarding sale of the remaining equity interests in Archstone and a potential resolution of the Adversary Proceeding. Gleacher advised the Debtors in these negotiations and assisted the Debtors in evaluating the terms of a potential transaction. These negotiations were ultimately successful in that the Debtors, the Co-

6

Sponsors and Equity Residential reached agreement on the terms of that certain Omnibus Agreement, dated on or about May 24, 2012. Pursuant to the Omnibus Agreement, among other things: (a) the Debtors agreed to purchase the remaining equity interests held by the Co-Sponsors for $1,580,000,000, (b) the Debtors agreed to dismiss the Adversary Proceeding with prejudice, and (c) the Debtors, the Co-Sponsors and Equity Residential agreed to exchange mutual releases. The parties closed the transaction on June 6, and on June 12, the Bankruptcy Court entered a stipulation between the Debtors, the Co-Sponsors and Equity Residential dismissing the Adversary Proceeding [Adv. Proc. Docket No. 116].

## SUMMARY OF COMPENSATION OF SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES REQUESTED

13. Gleacher prepared this Application in accordance with the Local Guidelines, the U.S. Trustee Guidelines, and the Interim Compensation Order. Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is annexed hereto as Exhibit A.

14. Section 2.2 of the Plan states that any fees incurred by the Debtors after the Effective Date (as defined in the Plan) may be paid by the Debtors in the ordinary course without Bankruptcy Court approval. Because the transaction that gave rise to the Debtors' obligation to pay the Equity Purchase Fee did not close until after the Effective Date, the Debtors are permitted to pay the Equity Purchase Fee without prior approval by the Bankruptcy Court. Nonetheless, Gleacher hereby seeks this Court's approval and allowance of the Equity Purchase Fee out of an abundance of caution.

15. Gleacher also seeks reimbursement of expenses incurred in connection with services rendered during the Expense Reimbursement Period in the amount of $554,768.75. Annexed hereto as Exhibit C is a schedule specifying the categories of expenses for which

7

Gleacher is seeking reimbursement and the total amount of reimbursement requested for each such expense category.[2]

16.     Gleacher has not previously made a formal application for any compensation for professional services rendered or reimbursement of expenses incurred from the Debtors in these chapter 11 cases.  Although Gleacher began working for the Debtors in February 2011, the Retention Order was not entered until December 22, 2011, and Gleacher did not earn the Equity Purchase Fee until on or around June 6, 2012.  Gleacher submitted a monthly fee statement to the Debtors and other parties in interest on March 15, 2012 in accordance with the interim compensation procedures approved in these cases, which sought reimbursement for $194,616.60 of out-of-pocket expenses that had been incurred by Gleacher through January 31, 2012.  However, the Debtors did not reimburse Gleacher for such expenses until on or about June 28, 2012.  Gleacher also submitted a monthly fee statement to the Debtors and other parties in interest on June 29, 2012 in respect of the Equity Purchase Fee.  The Debtors have not paid any portion of the Equity Purchase Fee to Gleacher.

17.     Given that Gleacher did not receive any payments from the estate until only recently, it did not previously seek interim approval of any fees or reimbursement of expenses.  Gleacher hereby requests that the Bankruptcy Court approve the compensation and expenses detailed in this Application notwithstanding that they have not been approved on an interim basis.

---

[2]  Gleacher has attempted to include in this Application all expenses relating to the Expense Reimbursement Period.  However, delays in processing such time and receiving invoices for certain expenses may occur.  Accordingly, Gleacher reserves the right to supplement this Application prior to the date set by this Court for hearing this Application to request additional compensation for professional services rendered and reimbursement of expenses incurred during the Expense Reimbursement Period.

8

**ALLOWANCE OF COMPENSATION**

18.     Section 331 of the Bankruptcy Code allows a bankruptcy court to authorize interim compensation for "[a] trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title . . . not more than once every 120 days after an order for relief in a case under this title[.]"  Instruction for section 331 disbursements is "provided under section 330 of this title."

19.     Section 330 of the Bankruptcy Code authorizes the bankruptcy court to award a trustee, an examiner or a professional employed pursuant to 11 U.S.C. § 327 reasonable compensation for its services and reimbursement of its expenses.  Specifically, section 330 of the Bankruptcy Code provides as follows:

> (a)(1) After notice to the parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 -
>
> (A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person; and
>
> (B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

A.  Compensation for Services Rendered

20.     As described above, pursuant to the Engagement Agreement, Gleacher is entitled to an Equity Purchase Fee upon closing of an eligible Equity Purchase Transaction.  The transactions effectuated pursuant to the Interest Purchase Agreement and Omnibus Agreement qualify as an Equity Purchase Transaction because they involved the purchase by the Debtors of all of the shares of Archstone that the Debtors did not previously own and provide the Debtors with control over Archstone.  The amount of the Equity Purchase Fee due is derived by multiplying $7,500,000 by (a) the value of the portion of the shares of beneficial interest

9

acquired in such Equity Purchase Transaction, and dividing by (b) the value of the shares which represent the entire ownership interest in Archstone not owned by the Debtors as of the effective date of the Engagement Agreement. Because the Debtors were able to purchase all of the outstanding shares pursuant to the Interest Purchase Agreement and the Omnibus Agreement, the value of the shares acquired is necessarily equal to that of the Value of the shares not previously owned by the Debtors. Accordingly, Gleacher is entitled to an Equity Purchase Fee in the amount of $7,500,000. Gleacher now seeks the Bankruptcy Court's final approval of the Equity Purchase Fee and its authorization for the Debtors to pay the Equity Purchase Fee to Gleacher.[3]

B. <u>Gleacher Expenses Generally</u>

21. For the Expense Reimbursement Period, Gleacher seeks reimbursement of $554,678.75 for reasonable and necessary out-of-pocket expenses incurred on behalf of the Debtors within the scope of the Retention Order. Of that amount, $194,616.60 has already been paid by the Debtors. <u>Exhibit C</u> hereto contains a summary of such expenses, and <u>Exhibits D - F</u> detail the actual expenses incurred by Gleacher on behalf of the Debtors during the Expense Reimbursement Period. Each of the charges reflected on <u>Exhibits C</u> and <u>Exhibits D - F</u> is based on the actual and necessary expenses incurred by Gleacher, in the exercise of reasonable discretion, on behalf of the Debtors.

22. Gleacher has made reasonable efforts to minimize its disbursements in this case. Each of the expenses incurred by Gleacher in providing professional services to the Debtors was necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

---

[3] Attached hereto as <u>Exhibit B</u> is a time log for the Gleacher professionals who worked on this engagement from the date of the Application through June 6, 2012.

10

23.     The transaction and other fees charged by Gleacher as part of each investment banking engagement do not take into consideration the expenses it incurs in connection with each engagement.  Rather, Gleacher bills each expense to the applicable client.  Similarly, Gleacher charges each client separately for, among other things postage, overnight courier and messenger services, in each case at Gleacher's cost.  However, Gleacher does not charge its clients for general overhead expenses, such as secretarial work or HVAC.

24.     The time constraints frequently imposed by the circumstances of these cases have required Gleacher's employees to devote time during the evenings and on weekends to perform services on behalf of the Debtors.  These extraordinary services were essential in addressing the necessities of time imposed by the requirements of these chapter 11 cases.  Consistent with company policy, and to ensure the personal safety of employees of Gleacher, the cost of transportation home was reimbursed for employees working late into the night.  In addition, Gleacher charges clients for reimbursement of meals for employees who worked late or were otherwise required to eat at the office.  In accordance with the Guidelines, Gleacher has limited its requests for overtime meal reimbursement to $20 per meal per individual.  Gleacher employees also attended meetings with clients and costs related to those meetings, including transportation to and from and meals at such meetings, have been reimbursed to employees.

C.  Legal Fees and Expenses

25.     Gleacher retained Goodwin as legal counsel in connection with Gleacher's engagement by the Debtors.  Among other things, Gleacher sought Goodwin's assistance in negotiating and documenting the Engagement Agreement, drafting the affidavit of Stephen Hentschel in support of the Application, and advising and assisting Gleacher with respect to litigation and discovery matters in connection with the Adversary Proceeding.  For Goodwin's

11

legal advice and assistance, Gleacher incurred charges for fees and expenses in the aggregate amount of $280,740.31 during the Expense Reimbursement Period. The following description is a summary of the primary services rendered by Goodwin during the Expense Reimbursement Period:

> **I.     0400 – *Hearings and Court Communications*  
> (Total Fees: $10,560.00)**

26. In connection with the Adversary Proceeding, Goodwin attorneys attended and represented Gleacher's interests at hearings and discovery conferences.

> **II.    0700 – *Communications with Debtors* (Total Fees: $16,345.00)**

27. In the course of its representation of Gleacher, Goodwin communicated frequently with counsel for the Debtors to negotiate the terms of the Debtors' retention of Gleacher and disclose the content of the Gleacher retention application as it was drafted and revised. These communications occurred both by telephone and e-mail.

> **III.   3900 – *Non-Derivative Adversary Proceedings Preparation and  
> Litigation*  (Total Fees: $78,388.00)**

28. In connection with the Adversary Proceeding, the Debtors sought, and the Court granted, expedited discovery related to the transfer of certain of the equity interests in Archstone to Equity Residential and the Debtors' ROFO. Goodwin assisted Gleacher in collecting the appropriate communications, reviewed those communications for relevance and privilege, and produced those documents in accordance with the Court's order. This document production was completed in condensed period between December 23, 2011 and December 28, 2011, and necessitated the assistance of numerous Goodwin attorneys and paraprofessionals.

### IV.    4900 – *Third Party Retention/Fee Application/Other Issues* (Total Fees:  $172,758.50)

29.    Goodwin advised Gleacher in negotiating its formal engagement with the Debtors.  Goodwin initially assisted Gleacher in negotiating with counsel for the Debtors regarding the terms of the engagement letter signed between the parties.  It further assisted in preparation of the Debtors' application to the Court for authorization to retain Gleacher, including preparation of a retention affidavit and guidance in performing the necessary conflict checks.  The terms of Gleacher's retention was complicated by changes in the market related to a potential Archstone transaction, and the fact that the Debtors had previously retained Lazard Freres & Co. LLC as a financial advisor for other matters related to the chapter 11 cases.  As a consequence, Goodwin's assistance was required in negotiating and drafting terms related to the scope of Gleacher's engagement and the transactions for which it would be compensated.  Goodwin's assistance was also required in responding to objections to Gleacher's retention by the United States Trustee and the Official Committee of Unsecured Creditors, amending the engagement terms in response to such objections, and preparation and submission of a supplemental retention affidavit.  Goodwin's efforts related to Gleacher's engagement and retention stretched over a period of months from February 17, 2011 until December 22, 2011, the date that the Retention Order was entered.

### V.    *Expenses*

30.    In connection with its retention as Gleacher's legal counsel, Goodwin incurred certain expenses associated with the services it provided.  Each of these expenses is limited to the actual amount billed to and paid by Goodwin on behalf of Gleacher.

13

## **CONCLUSION**

Gleacher respectfully submits that its request for compensation for services rendered and reimbursement of its expenses is reasonable and is more than justified by the benefits received by the Debtors and their estates, and that the request should be allowed in full.

Dated: New York, New York
       July 5, 2012

_____
Stephen Hentschel
Managing Director
GLEACHER & COMPANY SECURITIES, INC.
1290 Avenue of the Americas
New York, New York 10104
(212) 273-7100

*Financial Advisor to the Debtors and Debtors in Possession*