Hearing Date: TBD

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Marc E. Kasowitz
Michael J. Bowe
Robert M. Novick
Albert S. Mishaan

*Special Counsel for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., et al. | : No. 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SUMMARY OF FINAL FEE APPLICATION OF
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, SPECIAL COUNSEL TO
THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
JANUARY 6, 2010 THROUGH MARCH 6, 2012**

# SUMMARY SHEET

| | |
|---|---|
| **Name of Applicant** | <u>Kasowitz, Benson, Torres & Friedman LLP</u> |
| **Authorized to Provide Professional Services to** | <u>Debtors and Debtors in Possession</u> |
| **Date of Retention** | January 28, 2010 (*nunc pro tunc* to January 6, 2010) |
| **Entire Fee Period** | January 6, 2010 through March 6, 2012 |
| **Fees Incurred for Counsel** | $2,523,737.14[1] |
| **Expenses Incurred** | $756,229.29[2] |
| **Prior Interim Applications Filed** | **First Interim Fee Application**, filed August 16, 2010, for the period from February 1, 2010 through and including May 31, 2010[3] [Docket No. 10787] **Total Fees Requested:** $186,714.5 **Total Expenses Requested:** $125,292.82 **Total Fee Allowed:** $158,914.14 **Total Expenses Allowed:** $125,292.82 |

---

[1]    This amount includes the 20% of such fees held back pursuant to the Compensation Order (defined below). It also reflects the effective of a voluntary reduction of $85,000 in fees taken in the month of June 2011 and a voluntary reduction of $25,000 in fees taken in the month of July 2011. Additionally, it reflects compromises required by the Fee Committee as set forth in stipulations filed with the Court (Docket Nos. 18979, 24218, 27654, 28947).

[2]    This amount reflects the effective of a voluntary reduction of $40,000.00 in expenses taken in the month of July 2011. It also reflects compromises required by the Fee Committee as set forth in stipulations filed with the Court (Docket Nos. 18979, 24218, 27654).

[3]    Includes *de minimis* fees incurred in January 2010.

**Second Interim Fee Application**, filed December 14, 2010, for the period June 1, 2010 through and including September 30, 2010 [Docket No. 13469]
**Total Fees Requested:** $203,130.00
**Total Expenses Requested:** $7,221.58
**Total Fees Allowed:** $200,223.00
**Total Expenses Allowed:** $7,135.41

**Third Interim Fee Application**, filed June 2, 2011, for the period October 1, 2010 through and including January 31, 2011 [Docket No. 17345]
**Total Fees Requested:** $178,573.50
**Total Expenses Requested:** $62,018.74
**Total Fees Allowed:** $171,078.00
**Total Expenses Allowed:** $61,991.94

**Fourth Interim Fee Application**, filed August 15, 2011, for the period February 1, 2011 through and including May 31, 2011 [Docket No. 19278]
**Total Fees Requested:** $730,681.00
**Total Expenses Requested:** $16,476.19
**Total Fees Allowed:** $728,324.50
**Total Expenses Allowed:** $16,484.72

**Fifth Interim Fee Application**, filed December 14, 2011, for the period June 1, 2011 through September 30, 2011 [Docket No. 23380]
**Total Fees Requested:** $805,832.50[4]
**Total Expenses Requested:** $251,645.45[5]
**Total Fees Allowed:** $804,440.00
**Total Expenses Allowed:** $251,453.12

**Sixth Interim Fee Application**, filed May 11, 2012, for the period October 1, 2011 through March 6, 2012 [Docket No. 27796]
**Total Fees Requested:** $460,757.50
**Total Expenses Requested:** $293,879.81
**Total Fees Allowed:** Pending
**Total Expenses Allowed:** Pending

---

[4]    This amount includes the 20% of such fees held back pursuant to the Compensation Order (defined below). Moreover, this reflects the effective of a voluntary reduction of $85,000 in fees taken in the month of June 2011 and a voluntary reduction of $25,000 in fees taken in the month of July 2011.

[5]    This amount reflects the effective of a voluntary reduction of $40,000.00 in expenses taken in the month of July 2011.

**Blended Hourly Rate for Fees Incurred During Compensation Period:   $344.00**

**Blended Hourly Rate for Fees Incurred During Compensation Period   $359.06 (Attorneys Only)**

### Hours, Rates and Fees for Services Rendered During the Entire Fee Period

| Name of Professional | Position | Year of NY Bar Admission | Hourly Billing Rate | Total Hours | Total Amount |
|---|---|---|---|---|---|
| Michael J. Bowe | Partner | 1993 | $750 | 202.40 | $151,800.00 |
| Marc E. Kasowitz | Partner | 1978 | $1,000 | 3.00 | $3,000.00 |
| Albert Mishaan | Partner | 1995 | $685 | 28.90 | $19,796.50 |
| Robert M. Novick | Partner | 1994 | $775 | 42.30 | $32,782.50 |
| Jennifer S. Recine | Partner[6] | 2004 | $435 | 275.00 | $119,625.00 |
| Michael E. Friedman | Special Counsel | 1993 | $400 | 2.40 | $960.00 |
| Andreas Bojesen | Associate | 2004 | $360 | 42.80 | $15,408.00 |
| Larissa R. Chernock | Associate | 2008 | $275 | 101.70 | $27,967.50 |
| Gary W. Dunn | Associate | 1990 | $450 | 2,395.90 | $1,078,155.00 |
| Anna L. Felix | Associate | 2007 | $275 | 119.60 | $32,890.00 |
| Benjamin S. Goldstein | Associate | 2010 | $275 | 243.60 | $66,990.00 |
| David M. Rubinstein | Associate | 2009 | $275 | 203.80 | $56,045.00 |
| Stefan R. Stoyanov | Associate | 2004 | $480 | 68.40 | $32,832.00 |
| Michelle J. Vladimirsky | Associate | 2007 | $360/$350 | 442.20 | $155,852.00 |
| Karina Aiello Rocha | Staff Attorney | 2006 | $300 | 796.50 | $238,950.00 |
| Aneta Naumova Brzova | Staff Attorney | 2011 | $175 | 1,240.10 | $217,017.50 |
| Matthew Cowherd | Staff Attorney | 2007 | $265 | 241.30 | $63,944.50 |
| Jorge Diaz | Staff Attorney | 2000 | $375 | 134.10 | $50,287.50 |
| Manjit Kalirao | Staff Attorney | 2005 | $300 | 92.10 | $27,630.00 |
| Dara J. Kaufman | Staff Attorney | 2004 | $325 | 113.40 | $36,855.00 |
| J. John Kim | Staff Attorney | 2005 | $395 | 9.30 | $3,673.50 |
| Patrick Moore | Staff Attorney | 2002 | $375 | 545.50 | $204,562.50 |
| Gregory S. Berry | Law Clerk | N/A | $275 | 34.10 | $9,377.50 |
| Thomas J. Albuquerque | Lit. Support | N/A | $175 | 11.40 | $1,995.00 |
| Ricardo McLean | Lit. Support | N/A | $220 | 4.40 | $968.00 |
| Christopher M. Rohoman | Lit. Support | N/A | $125 | 2.70 | $337.50 |
| Rashaan Russell | Lit. Support | N/A | $165 | 2.10 | $346.50 |
| Michael Birnbaum | Paralegal | N/A | $165 | 15.20 | $2,508.00 |
| Tina Bui | Paralegal | N/A | $165 | 73.60 | $12,144.00 |
| Christine F. Gleitsmann | Paralegal | N/A | $225 | 88.10 | $19,822.50 |
| Gabriel Irizarry | Paralegal | N/A | $165 | 422.60 | $69,729.00 |
| Joyce Li | Paralegal | N/A | $135 | 1.80 | $243.00 |
| Noah Plakun | Paralegal | N/A | $190 | 2.40 | $456.00 |
| Lianne S. Roberge | Paralegal | N/A | $195 | 2.50 | $487.50 |
| Richard M. LaRosa | Managing Clerk | N/A | $225 | 1.50 | $337.50 |
| Jack W. Morrison | Managing Clerk | N/A | $130 | 5.30 | $689.00 |

---

[6]    During the course of KBT&F's representation of the Debtors, Ms. Recine was promoted from associate to partner. However, at all times during this representation, the Debtors were charged only the associate-level rate corresponding to Ms. Recine's title at the time the representation was commenced.

| | | | | | |
|---|---|---|---|---|---|
| Paul J. Perez | Managing Clerk | N/A | $175 | 1.20 | $210.00 |
| Francisco J. Velez | Managing Clerk | N/A | $175 | 1.20 | $210.00 |
| Total: | | | | 8,014.40 | $2,756,885.00 |
| Reductions: | | | | | $235,810.86 |
| GRAND TOTAL[7]: | | | | | $2,521,074.14 |

---

[7] A reduction of $2,663.00 was inadvertently reduced twice in the Third Interim Fee Application.

Hearing Date: TBD

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Marc E. Kasowitz
Michael J. Bowe
Robert M. Novick
Albert S. Mishaan

*Special Counsel for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
In re:                                          :    Chapter 11
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.  :    No. 08-13555 (JMP)
                                                :
                        Debtors.      :    (Jointly Administered)
------------------------------------x

### FINAL FEE APPLICATION OF KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM JANUARY 28, 2010 THROUGH MARCH 6, 2012

Kasowitz, Benson, Torres & Friedman LLP ("KBT&F"), special counsel to Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their

non-debtor affiliates, "Lehman"), hereby submits this application (the "Final Application" or the

"Application"), pursuant to sections 327, 330 and 331 of Bankruptcy Code and Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for allowance of

compensation for professional services rendered in the amount of $2,523,737.14, and

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the

amount of $756,229.29 during the period beginning January 28, 2010 through and including

March 6, 2012 (the "Entire Fee Period"), and, in support thereof, respectfully represents as

follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to hear and determine this Application pursuant to

28 U.S.C. §§ 157(b) and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408

and 1409.

## STATUTORY BASIS

2.      The statutory predicates for the relief requested herein are: (i) sections 327, 330

and 331 of the Bankruptcy Code; (ii) Rule 2016 of the Bankruptcy Rules; (iii) Rule 2016-1 of the

Local Rules; and (iv) the *Fourth Amended Order Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals*, dated April 14, 2011 [Docket

No. 15997] (the "Compensation Order")

## GENERAL BACKGROUND

3.      Commencing on September 15, 2008, and periodically thereafter (the "Petition

Date"), the Debtors commenced the within cases by filing voluntary petitions for relief under

chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections

1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing

their properties as debtors in possession.

4.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

6.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner issued his report pursuant to section 1106(b) of the Bankruptcy Code. On July 13, 2010, the Court entered an order discharging the Examiner and his professionals.

7.    On May 26, 2009, the Court entered an order appointing a fee committee (the "Fee Committee") to make recommendations with respect to fees and expenses of retained professionals in these cases.

8.    On January 24, 2011, the Court entered an order modifying the composition of the Fee Committee. On April 14, 2011, the Court entered an order approving a revised fee protocol (as modified, the "Fee Protocol").

9.    On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Docket Nos. 19627 and 19629].

10.    On September 1, 2011, the Bankruptcy Court entered an amended order approving the Disclosure Statement, establishing solicitation and voting procedures in

connection with the Plan, scheduling the confirmation hearing and establishing notice and
objection procedures for the confirmation hearing [Docket No. 19631].

11.     On September 15, 2011, the Bankruptcy Court entered an order approving a
modification to the Disclosure Statement [Docket No. 20016].

## RETENTION OF KBT&F

12.     On January 11, 2010, the Debtors, pursuant to sections 327(e) and 328(a) of the
Bankruptcy Code, filed an application for authorization to employ and retain, *nunc pro tunc* to
January 6, 2010 (the "Engagement Date"), KBT&F as special counsel (the "Debtors'
Application").

13.     On January 28, 2010, this Court entered the Order Pursuant to Sections 327(e)
and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Kasowitz,
Benson, Torres & Friedman LLP as Special Counsel, *Nunc Pro Tunc* to the Engagement Date
(the "Retention Order").

14.     The Retention Order authorized KBT&F to represent the Debtors in the
investigation of "third parties who may have, prior to the Commencement Date, taken actions or
made statements that interfered with, and damaged, the Debtors' business (the "Illegal
Activity"); and (2) to commence litigation and prosecute, with the Debtors' authorization, third
parties who have engaged in Illegal Activity."

## FINAL APPLICATION

15.     KBT&F seeks allowance of final compensation for professional services
rendered to the Debtors during the Entire Fee Period in the amount of $2,523,737.14 (including
payment of the 20% of such fees previously "held back"), and reasonable out-of-pocket expenses

in the amount of $756,229.29. During the Entire Fee Period, KBT&F professionals and

paraprofessionals expended a total of 8,014.40 hours on its engagement by the Debtors.[1]

16.    This Final Application has been prepared in accordance with the Guidelines for

Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on

April 19, 1995 (together, the "Local Guidelines"), the United States Trustee Guidelines for

Reviewing Application for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Compensation Order

(collectively, the "Guidelines"). Annexed hereto as "Exhibit A" is a certification regarding

compliance with the Guidelines.

17.    The Compensation Order established a procedure for, *inter alia*, the payment of

interim fees and expenses to professionals employed by the Debtors on a monthly basis.

KBT&F prepared and served fee statements in accordance with the Compensation Order on a

monthly basis.

18.    This Application is KBT&F's final fee application through which KBT&F

seeks payment of compensation and reimbursement of expenses for services rendered to the

Debtors in amounts that have been invoiced to the Debtors for the period from January 28, 2010

through March 6, 2012. Pursuant to the Fee Protocol, KBT&F is providing a copy of this

Application to the Fee Committee.

19.    There is no agreement or understanding between KBT&F and any other person

for the sharing of compensation to be received for services rendered in these cases.

---

[1]    Although KBT&F has expended such hours, KBT&F has voluntarily reduced its fees and is only seeking compensation for a portion of them. Specifically, KBT&F voluntarily reduced its fees by $85,000 in the month of June 2011 and by $25,000 in month of July 2011.

20.    KBT&F's fees in these Chapter 11 Cases are billed in accordance with its existing billing rates and procedures. The rates KBT&F charges for the services rendered by its professionals and paraprofessionals in these Chapter 11 Cases are the same rates KBT&F charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive legal market.

21.    KBT&F has not charged time for any work performed by summer associates.

22.    Pursuant to the UST Guidelines, the Summary Sheet filed in connection with this Final Application sets forth the number of hours expended by each attorney and paraprofessional of KBT&F who rendered services to the Debtors, their respective hourly rates, and the year in which each KBT&F attorney was first admitted to practice in New York.

23.    Annexed hereto as "Exhibit B" is a schedule specifying the categories of expenses for which KBT&F is seeking reimbursement and the total amount for each expense category. Annexed hereto as "Exhibit B-1" are schedules specifying categories of expenses using project categories hereinafter described.

24.    Annexed hereto as "Exhibit C" is a summary of KBT&F's time records billed during the Entire Fee Period using "project categories" hereinafter described. Annexed hereto as "Exhibit C-1" are summaries of KBT&F's time records billed during the Entire Fee Period using "project categories", broken down by attorney.

6

25.    KBT&F maintains contemporaneously created computerized records of the time spent by all KBT&F attorneys and paraprofessionals in connection with the representation of the Debtors in these cases.[2]

## SUMMARY OF SERVICES RENDERED BY
## KBT&F DURING THE ENTIRE FEE PERIOD[3]

26.    The professional services that KBT&F rendered during the Entire Fee Period are grouped into "project categories" that are described below.

    a.    Project Monitoring/Court Calendar & Docket Maintenance (Task Code- 0300)
        (Fees: $15,432.50; Hours Billed:  91.10; Expenses:  $5,893.47)

27.    Time billed to this matter reflects the organization and maintenance of files and evidence related to KBT&F's ongoing investigation of possible claims by the Debtors against third parties and the monitoring of the Court's calendar and docket.  It also reflects time spent by KBT&F familiarizing itself with Chamber's rules and procedures in connection with submission of a letter brief.  This category includes reviewing pleadings and documents filed on the docket in connection with KBT&F's ongoing investigation of possible claims by the Debtors against third parties.  Furthermore, this category includes time spent in connection with the organization and maintenance of files and evidence related to KBT&F's ongoing investigation of possible claims by the Debtors against third parties and the monitoring of the Court's calendar and docket.

---

[2]    Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies have been delivered to (i) chambers; (ii) the United States Trustee; (iii) bankruptcy counsel for Debtors; and (iv) the Fee Committee.

[3]    Fees and expenses set forth in this section do not reflect voluntary reductions taken by KBT&F or reductions negotiated with the Fee Committee and set forth in stipulations filed with the Court (Docket Nos. 18979, 24218, 27654, 28947).

      b.     Hearings and Court Communications (Task Code- 0400)
            (Fees: $2,712.50; Hours Billed: 3.50; Expenses: $0.00)

28.   Time billed to this matter reflects time spent attending and reporting on

chambers' conferences.

      c.     Equity Holders/Motion/Hearings/Communications (Task
            Code- 1000) (Fees: $776.50; Hours Billed: 5.80;
            Expenses: $0.00)

29.   This category includes time spent by KBT&F's managing attorney's office

advising on local rules regarding filing and service of pleadings, as well performing filing and

service of such pleadings.

      d.  Investigation/Rule 2004 Discovery (task code 4100)
         (Fees: $2,627,959.00; Hours Billed: 7,640.00;  Expenses:  $788,803.94)

30.   Time billed to this matter during the Entire Fee Period reflects work done in

furtherance of a comprehensive investigation conducted by KBT&F on behalf of the Debtors

into whether the Debtors have pre-petition claims against third parties arising from wrongful

interference with, and damage to, the Debtors' business.  The focus of KBT&F's investigation

was whether the Debtors had claims against the purveyors of false market rumors concerning the

Debtors and their financial condition during the financial crisis of 2008 – a time when the

Debtors' businesses were particularly vulnerable.  In the course of this representation, KBT&F

examined publicly available information, including the Valukas report, concerning, among other

things, the financial crisis generally, its effect on Lehman, market rumors about Lehman, and

other factors that may have contributed to damage sustained by Lehman during the relevant time

period.  KBT&F also conducted extensive legal research regarding potential claims, including

research related to liability, causation and damages issues.

31.    In furtherance of its investigation, KBT&F served Bankruptcy Rule 2004 subpoenas *duces tecum* upon six financial institutions, including major hedge funds and Goldman Sachs. Following the service of the subpoenas, KBT&F engaged in substantial negotiations with five of the subpoena targets concerning confidentiality stipulations and issues related to the production of documents such as custodians to be searched, search terms to be used, and the timing of production.

32.    When one of the subpoena targets, Och-Ziff, moved to quash, KBT&F drafted a brief and supporting declaration in response to Och-Ziff's motion. KBT&F's attorneys prepared for, and argued, the Debtors' opposition. After a resolution was reached with the assistance of the Court, KBT&F negotiated a stipulation regarding the production of documents with Och-Ziff, as well as a confidentiality stipulation. KBT&F then entered into negotiations with Och-Ziff concerning its document production covering issues such as search terms, custodians, and a production schedule.

33.    As the subpoena targets began their document productions, KBT&F commenced a substantial review of those documents. A team of KBT&F staff attorneys was assembled and trained for the review. Once KBT&F had completed the review of the initial productions, after consultation with the Debtors, KBT&F undertook to negotiate supplemental document productions from several of the subpoena targets.

34.    When KBT&F could not reach agreement with Goldman Sachs concerning the scope and timing of a supplemental production, it requested an informal conference with the Court. The impasse could not be resolved at the conference, and KBT&F then drafted and filed a motion to compel, which was opposed by Goldman Sachs. The matter was resolved through negotiation prior to oral argument.

35.   In addition to documents produced by the subpoena targets, KBT&F also reviewed a substantial number of documents gathered from the Debtors' own files. The purpose of this review was: (i) to discover evidence concerning the source of rumors; and (ii) to discover evidence regarding causation and damages issues related to harm caused to the Debtors as the result of the rumors. KBT&F attorneys worked with the Debtors and their consultant to identify relevant custodians and to develop search terms.

36.   During the course of the investigation, KBT&F attorneys reviewed hundreds of thousands of pages of documents that were produced by the subpoena targets and from the files of the Debtors. In the Fall of 2011, the responsibility for the initial review of documents was transferred to contract attorneys retained directly by the Debtors. KBT&F then trained these contract attorneys, oversaw their review, and reviewed material evidence discovered by the contract lawyers.

37.   In the course of its investigation, KBT&F, with the help of investigators, identified, located, and contacted (either directly or through their attorneys) witnesses with possible knowledge of material facts. KBT&F then negotiated with the witnesses or their counsel, and, when the witnesses were cooperative, scheduled interviews. KBT&F prepared for, and conducted, interviews of these witnesses, which included former high-level Lehman executives.

38.   During its investigation, KBT&F also issued deposition subpoenas. After preparation, KBT&F deposed several witnesses from the financial industry with knowledge of facts material to KBT&F's investigation.

39. Relevant evidence obtained through the investigation, including through document review, witness interviews and depositions, was summarized by KBT&F attorneys in memoranda and other forms. KBT&F also drafted a complaint for discussion purposes.

40. During the course of the investigation, KBT&F negotiated tolling agreements with several parties. The purpose of the tolling agreements was preserve the Debtors' claims while allowing additional time for the investigation to proceed. The tolling agreements also provided the Debtors with additional time to consider the merits of proceeding with litigation. KBT&F negotiated extensions to several of these tolling agreements as the investigation progressed. Ultimately, upon due consideration, the Debtors elected not to pursue litigation. Expenses billed to this matter during the Entire Fee Period included professional investigative services ($773,719.07) provided by the KBTF Group, LLC ("KBTF Group"). KBTF Group investigators conducted an investigation into facts supporting possible causes of action by Lehman against third parties, and its services were essential to the investigation. The circulation of false rumors concerning the Debtors during the financial crisis constituted potentially criminal activity, and individuals and companies involved in disseminating those rumors clearly engaged in furtive conduct to conceal their identities. The KBTF Group, which includes highly-skilled former law enforcement officials, was actively involved in using their investigative services to attempt to identify individuals and companies responsible for the rumors. Additionally, in the course of its investigation, KBT&F learned that some of the rumors concerning the Debtors may have been spread by individuals located outside of the U.S. and that witnesses located outside of the U.S. potentially had knowledge of the sources of the rumors. Since discovery from these individuals would have been either expensive and time consuming or impossible, the KBT&F

11

Group was used to investigate evidence located overseas. The investigative services provided by the KBTF Group included locating and identifying witnesses, meeting with subjects, developing contacts, conducting background checks, and researching books, periodicals, news stories, blogs and other internet sources for material information related to possible claims.

> e.  Examiner Issues (Task Code – 4500)
> (Fees: $1,159.50; Hours Billed: 3.90; Expenses: $0.00)

41.   Time billed to this matter represents KBT&F's loading of the report of bankruptcy examiner, Anton R. Valukas, onto its computer system and conducting searches of the report in furtherance of its investigation.

> f.  Firm's Own Billing/Fee Applications (Task Code – 4600)
> (Fees: $106,758.50; Hours Billed:  264.80; Expenses: $1,818.22)

42.   Time billed to this matter reflects KBT&F's drafting and preparation of interim fee applications. In addition, this category includes time spent preparing and drafting budgets for the Debtors and Fee Committee, communicating and negotiating with the Fee Committee, and reviewing monthly fee statements and billing records for confidentiality issues, such the identity of confidential witnesses.

> g.  Firm's Own Retention Issues (Task Code – 4700)
> (Fees: $2,086.50; Hours Billed: 5.30; Expenses:  $18.96)

43.   Time billed to this matter reflects work performed by KBT&F related to its retention as a professional by the Debtors.

### DISBURSEMENTS

44.   In connection with the provision of the legal services detailed in the Exhibits hereto and summarized above, KBT&F has incurred out-of-pocket disbursements during the Entire Fee Period in the amount of $796,507.79. This amount is broken down into categories of

charges, as set forth in Exhibit B and Exhibit B-1, which summarizes the expenses incurred for the Interim Fee Period.

45.     Expenses billed during the Interim Fee Period include professional investigative services ($773,719.07) provided by the KBTF Group, LLC (the "KBTF Group"). As discussed above, the KBTF Group investigators, at the direction of counsel, investigated and interviewed witnesses and developed contacts and sources with potential knowledge of material information related to possible claims. The investigative services provided by the KBTF Group included locating and identifying witnesses, meeting with subjects, developing contacts, conducting background checks, and researching books, periodicals, news stories, blogs and other internet sources for material information related to possible claims. Attached hereto as Exhibit D are invoices for the services provided by the KBT&F Group.

46.     KBT&F only seeks reimbursement at actual cost for disbursements incurred whether in-house or from third party vendors. With respect to photocopying expenses, KBT&F charges $.10 per page. With respect to facsimile expenses, KBT&F excludes charges for incoming facsimiles and for outgoing facsimiles charges only applicable toll rates. These charges are intended to cover KBT&F's direct operating costs for photocopying and facsimile facilities, which costs are not incorporated into KBT&F hourly billing rates. Only clients who actually use photocopying, facsimile, and other office services of the types set forth in Exhibit B are separately charged for such services, and only to the extent utilized.

47.     Expenses for automated legal research and the searching of official records were also incurred. On several occasions, mailing and courier charges were incurred. The actual expenses incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of the Debtors.

13

## **COMPENSATION AND REIMBURSEMENT IS WARRANTED**

48.    The professional services performed by KBT&F were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their stakeholders.

49.    Section 331 of the Bankruptcy Code allows a bankruptcy court to authorize interim compensation to be paid to "a debtor's attorney, or any professional person employed under section 327 . . . of this title." 11 U.S.C. § 331. Such professional person "may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title." *Id*. Section 331 further provides that "[a]fter notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." *Id*.

50.    Section 330(a)(1)(A) and (B) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> A. the time spent on such services;
>
> B. the rates charged for such services;
>
> C. whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

D. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

E. whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

51.    In reviewing fee applications, "'[h]ours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive.'" *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 767 (Bankr. E.D.N.Y. 2005) (*quoting In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991)). Thus, "the Court must not penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'" *Id.* (*quoting Drexel Burnham Lambert*, 133 B.R. at 23). "This supports the salutary objective that attorneys should not be deterred from undertaking the representation of debtors in bankruptcy cases, including cases that may pose significant challenges and an uncertain outcome, due to a risk of inadequate compensation." *Id.* (*citing In re Ames Dep't Stores*, 76 F.3d 66, 72 (2d Cir. 1996), *quoting In re UNR Indus.*, 986 F.2d 207, 210 (7th Cir. 1993)). KBT&F respectfully submits that the elements governing awards of compensation justify the allowances requested herein.

52.    KBT&F respectfully submits that the elements governing awards of compensation justify the allowance request.

### a.    The Time and Labor Required

53.    The professional services rendered by KBT&F required the continuous expenditure of substantial time and effort, under time pressures that sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and

holidays. The services rendered required a high degree of professional competence and expertise

in order to be administered with skill and dispatch. During the Final Fee Period, 8,014.40

recorded hours were expended by KBT&F's partners, associates, and legal assistants in

providing the requested professional services. KBT&F's hourly billing rates, as set out in the

Application Summary, are the rates KBT&F regularly charges its hourly, nonbankruptcy clients.

### b.  The Necessity of the Services and the Benefit to the Estate

54.   KBT&F's services were essential to the investigation, and possible prosecution,

of potentially valuable pre-petition claims against third parties who may have sought to

wrongfully exploit the Debtors and profit from the resultant harm. Any such claims would

constitute valuable assets of the Debtors' estate, and KBT&F's services were vital to the

identification and preservation of these assets. The services provided by KBT&F permitted the

Debtors to make well-informed and advised decisions about the risks and benefits of prosecuting

these claims.

### c.  The Novelty and Difficulty of the Issues Presented in this Case

55.   KBT&F's services of necessity involved the investigation of sophisticated third

parties and intricate fact patterns. Among the difficulties posed by this investigation is the fact

that any wrongdoers have a strong incentive to conceal their malfeasance, and the development

of claims against them will necessarily pose an array of complex and novel legal issues.

### d.  The Experience, Reputation and Ability of the Attorneys

56.   KBT&F has extensive experience in the areas of insolvency and complex

commercial litigation. KBT&F's services on behalf of the Debtors have been rendered in a

highly efficient manner by attorneys who have achieved a high degree of expertise in these areas.

The skill and competency of the KBT&F attorneys who have represented the Debtors have

ensured that these cases have been administered in the most efficient and expeditious manner.

16

## NOTICE

57.    Notice of this Application, as set forth in the Compensation Order, has been

given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee,

and (d) the Fee Committee.

58.    No other or prior application or motion for the relief requested herein has been

made to this or any other Court.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, KBT&F respectfully requests that this

Court issue an order substantially in the form of the proposed form of order attached hereto as

Exhibit E: (i) allowing compensation for professional legal services rendered as Special Counsel

for the Debtors in the amount of $2,523,737.14 for the Entire Fee Period; (ii) allowing

reimbursement for actual and necessary expenses incurred in the amount of $756,229.29 for the

Entire Fee Period; and grant such other and further relief as this Court may deem necessary and

appropriate.

Dated: July 5, 2012
         New York, New York

KASOWITZ, BENSON, TORRES
    & FRIEDMAN LLP

By:    /s/ Robert M. Novick
        Marc E. Kasowitz
        Michael J. Bowe
        Robert M. Novick
        Albert S. Mishaan
        1633 Broadway
        New York, New York 10019
        (212) 506-1700

        *Special Counsel for the Debtors
        and Debtors-in-Possession*

17