UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                        :

In re                                :        Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., et al.,  :        08-13555 (JMP)

                  Debtors.     :        (Jointly Administered)

                                         :
-------------------------------------------------------------- x

**AFFIRMATION OF CLAIMANT [~~Name~~] Helmut Olivier IN OPPOSITION TO DEBTORS' 313th
OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY
INTERESTS) DATED JUNE 4, 2012**

HELMUT OLIVIER affirms under penalties of perjury as follows:

1.     I am employed by Lehman Brothers Bankhaus AG, a Group Company of Lehman

Brothers Holdings Inc from 1 March 1995 to date. I remain in employment with Lehman

Brothers Bankhaus AG as of the date of this affirmation notwithstanding the appointment of

Administrators to Lehman Brothers Bankhaus AG on 13 November 2008.

3.     In line with the CSA Awards granted to me by Lehman Brothers Holdings Inc for

the years 2003 to 2006, I am entitled to an issuance of the appropriate number of Lehman

Brothers Holdings Inc shares in full on 30 November 2008 to 30 November 2011 respectively. In

addition I am entitled to the issuance of the Lehman Brothers Holdings Inc shares relating to

100% of the 2007 CSA Award on 30 November 2012 respectively so long as I remain in

employment with Lehman Brothers Bankhaus AG through to the respective dates.

4.     Pursuant to the CSA Agreements, I recognize that I remain contractually

obligated to avoid engaging in any "Detrimental Activity" and that I have other ongoing contract

obligations under these Agreements. *See, e.g.,* Debtors' Dec. 15 Omnibus Reply at pp. 65-68

(RSU Agreement for 2004).

5.      After my entry into the CSA Agreements I continue to perform all of those

contractual obligations.

6.      Attached hereto as Exhibit 1 is the original Proof of Claim that I filed in

connection with my contract rights under the CSA Agreements. This initial Claim was assigned

Claim No. 555130740.

7.      I was provided with this Proof of Claim form by Debtors. In the form provided,

Debtors had largely completed the form, including inserting the caption, a bar code and

supplying my name and address.

8.      On the attached Exhibit 1, all of the typed information was contained in the form

when Debtors provided it to me. I added only my phone number, email address, the amount of

the claim, included with this amount was $1,244,228.16 (based on an "Executive Compensation

Summary" provided by Lehman Brothers, which I attached), and my signature and date. All of

these documents are attached with Exhibit 1, together with Debtors' acknowledgement of receipt

of the proof of claim.

10.      The practice followed each year by Lehman Brothers was to provide a form

stating the bonus to which I was entitled for the year, and describing the portion of the bonus that

was to be awarded and reserved by Lehman Brothers Holdings Inc pursuant to the CSA

Agreement for that year.

11.      I never paid any income tax nor social security contributions on the portion of any

bonus reserved under the CSA Agreements. For prior years (i.e. for CSA awards made through

to 2002) , not at issue here, after my interests vested and the relevant CSAs were converted to

LBHI shares, Lehman Brothers would retain a portion of the awards to cover the appropriate

2

withholding taxes, and then provide me with balance of LBHI shares. The entire amount of the bonus was treated as ordinary income to me and was taxed at ordinary income rates at the date that the LBHI shares were released to me. My understanding is that Lehman Brothers was entitled to a business expense deduction for the amount of this portion of the bonus, but only at the time that it was actually paid or shares delivered.

12.    The economic substance of the CSA Agreements to me was that a portion of the bonus that had been declared for me was held back, and would be delivered to me only after passage of five years, during which I was subject to ongoing contractual obligations. At no time did Lehman Brothers Holdings Inc suggest that I had ever failed to perform any of these contractual obligations, the breach of which could result in rescission of my bonus. However, under the terms of the CSA Agreements, Lehman Brothers was not required to pay me anything from this reserved bonus, and in fact LBHI did not pay or deliver me anything, until five years after we entered into that CSA Agreement.

13.    Even after the CSAs became subject to "Limited Conditions" I was not permitted to draw down on the shares until five years after the date of the CSA Agreement. During this entire time my right to draw down on the shares was contingent on my continued performance of contract obligations.

_____
Signature

_Helmut Olivier_
Helmut Olivier


Affirmed under penalties of perjury
on this ____ day of _____, 2012

_____ Solicitor

3

# EXHIBIT 1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

## PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No of Debtor |
| LEHMAN BROTHERS HOLDINGS, INC. | 08-13555 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 555130740

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Program Securities (See definition on reverse side).

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555130740****
HELMUT OLIVIER
UNTERER MITTELWEG 39
HE
BAD HOMBURG D61352
GERMANY

Telephone number:                Email Address:

Name and address where payment should be sent (if different from above)

Telephone number:                Email Address:

### THIS SPACE IS FOR COURT USE ONLY

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number: _____
    (If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

---

1. **Amount of Claim as of Date Case Filed:** $ 1,244,228.16

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☒ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Options 2002+2003, CSA + Dividend equivalents 2003-2007
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 0 0005
    3a. Debtor may have scheduled account as:
    (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

### FOR COURT USE ONLY

| Date: 14 Sept 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Personal Award Summary                                                      Page 1 of 1

# LEHMAN BROTHERS | LehmanLive

---

Data as of August 31, 2008                                                 10064476 Helmut Olivier

## AWARD UNITS¹ OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value² | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested³ | Units Outstanding | Market Value |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 CSA | $20.9600 | $43,987 | 11/30/2011 | 2,098.64 | 26.52 | 0.00 | 0.00 | 2,125.16 | $8 |
| 12/07/2007 | 2007 MD Principal | $44.4300 | $153,956 | 11/30/2012 | 3,465.14 | 71.36 | 0.00 | 0.00 | 3,536.50 | $14 |
| 12/07/2007 | 2007 MD Discount | $44.4300 | $65,981 | 11/30/2012 | 1,485.06 | 30.55 | 0.00 | 0.00 | 1,515.61 | $6 |
| 12/08/2006 | 2006 MD Principal | $53.9200 | $134,797 | 11/30/2011 | 2,499.95 | 73.98 | 0.00 | 0.00 | 2,573.93 | $10 |
| 12/08/2006 | 2006 MD Discount | $53.9200 | $57,770 | 11/30/2011 | 1,071.41 | 31.65 | 0.00 | 0.00 | 1,103.06 | $4 |
| 11/30/2005 | 2005 MD Principal | $44.1000 | $102,024 | 11/30/2010 | 2,313.48 | 84.90 | 0.00 | 0.00 | 2,398.38 | $10 |
| 11/30/2005 | 2005 MD Discount | $44.1000 | $43,725 | 11/30/2010 | 991.50 | 36.40 | 0.00 | 0.00 | 1,027.90 | $4 |
| 12/09/2004 | 2004 MD Principal | $30.0300 | $83,650 | 11/30/2009 | 2,785.56 | 125.20 | 0.00 | 1,455.38 | 2,910.76 | $12 |
| 12/09/2004 | 2004 MD Discount | $30.0300 | $35,850 | 11/30/2009 | 1,193.80 | 53.55 | 0.00 | 0.00 | 1,247.35 | $5 |
| 12/10/2003 | 2003 MD Principal | $24.9850 | $54,021 | 11/30/2008 | 2,162.12 | 115.28 | 0.00 | 1,138.70 | 2,277.40 | $9 |
| 12/10/2003 | 2003 MD Discount | $24.9850 | $23,152 | 11/30/2008 | 926.62 | 49.35 | 0.00 | 0.00 | 975.97 | $4 |
| **Total** | | | **$798,913** | | **20,993.28** | **698.74** | **0.00** | **2,594.08** | **21,692.02** | **$91** |

## STOCK OPTIONS OUTSTANDING

| Grant Date | Description | Exercise Price | Black-Scholes Grant Price | Expiration Date | Black-Scholes Grant Value | Options Granted | Options Exercised | Options Exercisable | Options Outstanding | Intrinsic Value at $0.042 |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2003 | 2003 MD Options | $35.6950 | $9.7250 | 11/29/2013 | $25,713 | 2,644 | 924 | 0 | 1,720 | $0 |
| 12/11/2002 | 2002 MD Options | $27.2100 | $9.1250 | 11/29/2012 | $91,998 | 10,082 | 7,562 | 2,520 | 2,520 | $0 |
| **Total** | | | | | **$117,711** | **12,726** | **8,486** | **2,520** | **4,240** | **$0** |
| **Total Equity** | | | | | | | | | | **$91** |

\* Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (03:59 PM EST on February 12 2009)

¹ Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
² Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
³ Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

PRIVATE AND CONFIDENTIAL

2007 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                    ID      10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      J   Phizackerley, T Bolland

DATE:      December 13, 2007

Please find below the details of your 2007 Total Compensation and any year-end awards:

### Total Compensation Summary

|                        | EUR      | USD      |
|------------------------|----------|----------|
| Paid Salary            | 211,500  | 284,619  |
| Total Bonus            | 513,022  | 690,381  |
| **Total Compensation** | **724,522** | **975,000** |
| Total Bonus            | 513,022  | 690,381  |
| Total Equity Award     | 163,435  | 219,937  |
| Net Bonus Award        | 349,587  | 470,444  |

### Equity Award Detail

| Equity Type           | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|-----------------------|-----------------|---------------|-----------------|--------------|
| CSAs                  | 219,937         | 63.47         | 44.43           | 4,950.20     |
| **Total Equity Award**| **219,937**     |               |                 |              |

Your total Contingent Stock Award (CSAs) is based on a Total Compensation of USD 975,000.

When awarding the CSA award Lehman Brothers Holdings Inc has applied a discount of 30% to the market price of $ 63.47. CSAs are subject to restrictions until 30 November 2012; they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2007 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2008. All terms and conditions of the CSA Awards are subject to the controlling plan documents, including the FY 2007 equity award agreements (expected to be finalised in early 2008), the 2005 Stock Incentive Plan and related Prospectus.

Salary

Your salary remains unchanged.

Additional Information

The notional total value of your 2007 compensation, including the grant-date value of the discount portion of the CSAs awarded under the Equity Award Program, is USD 1,069,258. To receive the full benefit of the CSA award, including the discount portion, you must remain an employee of Lehman Brothers for five years and comply with the terms of the Program.

All terms and conditions of your employment remain unchanged.

To be eligible for your 2007 bonus award you must be employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2008.

PRIVATE AND CONFIDENTIAL

2006 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                                                    10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      I  Lowitt, K Dannenbaum

DATE:      December 13 2006

Please find below the details of your 2006 Total Compensation and any year-end awards:

### Total Compensation Summary

|                      | EUR     |
|----------------------|---------|
| Paid Salary          | 211,500 |
| Total Bonus          | 514,853 |
| **Total Compensation** | **726,353** |
| Total Bonus          | 514,853 |
| Total Equity Award   | 155,267 |
| Net Bonus Award      | 359,586 |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|-------------|-----------------|---------------|-----------------|--------------|
| CSAs        | 192,568         | 77.03         | 53.92           | 3,571.36     |
| **Total Equity Award** | **192,568** |        |                 |              |

Your total CSA Award is based on a compensation of USD 907,000 (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 30% to the market price of $ 77.03. CSAs are subject to restrictions until 30 November 2011; they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2006 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2007. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

### Base Salary

Your base salary remains unchanged.

### Additional Information

You have also been awarded a Diversity Award of EUR 13,707.  This award is in addition to your 2006 Total Compensation. Your Equity Award shown above has been calculated based on your 2006 Total Compensation and your Diversity Award.

All terms and conditions of your employment remain unchanged.

Entitlement to your 2006 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2007.

PRIVATE AND CONFIDENTIAL

2005 TOTAL COMPENSATION STATEMENT

| | | |
|---|---|---|
| TO: | Helmut Olivier | 10064476 |
| DEPT: | CORP : 93157 - Frankfurt Exec.Admin | |
| FROM: | I Lowitt, K Dannenbaum | |
| DATE: | December 14 2005 | |

Please find below the details of your 2005 Total Compensation and any year-end awards:

### Total Compensation Summary

| | EUR | USD |
|---|---|---|
| Paid Salary | 211,500 | 268,129 |
| Total Other Comp | 15,696 | 19,899 |
| Total Bonus | 427,508 | 541,973 |
| **Total Compensation** | **654,704** | **830,000** |
| Total Bonus | 427,508 | 541,973 |
| Total Equity Award | 114,968 | 145,750 |
| Net Bonus Award | 312,540 | 396,223 |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 145,750 | 126.00 | 88.20 | 1,652.49 |
| **Total Equity Award** | **145,750** | | | |

Your total CSA Award is based on a compensation of USD 845,000 (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 30% to the market price of $ 126.00. CSAs are subject to restrictions until 30 November 2010, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2005 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2006. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

### Base Salary

Your base salary remains unchanged.

### Additional Information

You have also been awarded a Diversity Award of USD 15,000 (equivalent to EUR 11,832). This award is in addition to your 2005 Total Compensation. Your Equity Award shown above has been calculated based on your 2005 Total Compensation and your Diversity Award.

All terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2005 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2006.

PRIVATE AND CONFIDENTIAL

2004 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                                                    10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      N Glaister

DATE:      December 15, 2004

Please find below the details of your 2004 Total Compensation and any year-end awards:

### Total Compensation Summary

|  | EUR |
|---|---|
| Paid Salary | 211,500 |
| Total Other Comp | 15,415 |
| Total Bonus | 389,663 |
| **Total Compensation** | **616,578** |
| Total Bonus | 389,663 |
| Total Equity Award | 97,428 |
| Net Bonus Award | 292,235 |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 119,500 | 85.80 | 60.06 | 1,989.68 |
| **Total Equity Award** | **119,500** | | | |

Your total CSA Award is based on a Total Compensation of USD 770,000 (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 30% to the market price of $ 85.80. CSAs are subject to restrictions until 30 November 2009, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2004 Award) will be available on LehmanLive, keyword "equityaward", during the second quarter of 2005. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

### Base Salary

Your base salary remains unchanged.

### Additional Information

All terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2004 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2005.

**PRIVATE AND CONFIDENTIAL**
**2003 TOTAL COMPENSATION STATEMENT**

10064476

TO:      Helmut Olivier

DEPT:    CORP : 93157 - Frankfurt Exec.Admin

FROM:    N Glaister

DATE:    December 17, 2003

Please find below the details of your 2003 Total Compensation and any year-end awards:

### Total Compensation Summary

|  | EUR | USD |
|---|---|---|
| Salary | 211,500 | 234,038 |
| Other Comp | 16,166 | 17,889 |
| Total Bonus | 406,665 | 450,000 |
| **Total Compensation** | **634,331** | **701,927** |
| Total Bonus | 406,665 | 450,000 |
| Total Equity Award | 92,977 | 102,885 |
| Net Bonus Award | 313,688 | 347,115 |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 77,172 | 71.39 | 49.97 | 1,544.37 |
| Options | 25,713 | 27.79 | 19.45 | 1,322.00 |
| **Total Equity Award** | **102,885** | | | |

Your total Equity Award is based upon a Total Compensation of USD 701,927

Included in your Equity Award is an award of 1,544.37 CSAs. These are subject to restrictions until November 2008. They cannot be sold, traded or pledged before then.

Included in your Equity Award is an award of 1,322 options over Lehman Brothers Holdings Inc Shares. 35% of your Options become exercisable subject to restrictions after 3 years, 65% become exercisable after 5 years.

A full summary of all your outstanding Equity Awards (including your 2003 Award) will be available to view on LehmanLive during the second quarter of 2004.  All terms and conditions of the Equity Awards are subject to the controlling plan documents.

**Base Salary**
Your base salary remains unchanged.

**Additional Information**
All other terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2003 Awards is contingent on you being employed by Lehman Brothers at, and not under any period of notice prior to, 31 January 2004.

| United States Bankruptcy Court/Southern District of New York | PROOF OF CLAIM |
|---|---|

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| LEHMAN BROTHERS HOLDINGS, INC. | 08-13555 (JMP) |

**UNIQUE IDENTIFICATION NUMBER:** 555130740

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Non Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LDH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555130740****
HELMUT, OLIVIER
UNTERER MITTELWEG 39
HE
BAD HOMBURG D61352
GERMANY

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**
_____
*(If known)*

Filed on: _____

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

Telephone number: _____  Email Address: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: _____  Email Address: _____

1. **Amount of Claim as of Date Case Filed:** $ 1249,228, 16

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete Item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a claim based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Options 2002 + 2003, CSA + dividend equivalents 2003 -2007
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 0 000 5
**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: _____
Value of Property: $ _____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____  Basis for perfection: _____
Amount of Secured Claim: $ _____  Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 14 Sept 2009 | _signature_ |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Personal Award Summary                                             Page 1 of 1

## LEHMAN BROTHERS | LehmanLive

Data as of August 31, 2008                                    10064476 Helmut Olivier

### AWARD UNITS[1] OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value[2] | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested[3] | Units Outstanding | Market Value at $0.042 |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 CSA | $20.9600 | $43,987 | 11/30/2011 | 2,098.64 | 26.52 | 0.00 | 0.00 | 2,125.16 | $8 |
| 12/07/2007 | 2007 MD Principal | $44.4300 | $153,956 | 11/30/2012 | 3,465.14 | 71.36 | 0.00 | 0.00 | 3,536.50 | $14 |
| 12/07/2007 | 2007 MD Discount | $44.4300 | $65,981 | 11/30/2012 | 1,485.06 | 30.55 | 0.00 | 0.00 | 1,515.61 | $6 |
| 12/08/2006 | 2006 MD Principal | $53.9200 | $134,797 | 11/30/2011 | 2,499.95 | 73.98 | 0.00 | 0.00 | 2,573.93 | $10 |
| 12/08/2006 | 2006 MD Discount | $53.9200 | $57,770 | 11/30/2011 | 1,071.41 | 31.65 | 0.00 | 0.00 | 1,103.06 | $4 |
| 11/30/2005 | 2005 MD Principal | $44.1000 | $102,024 | 11/30/2010 | 2,313.48 | 84.90 | 0.00 | 0.00 | 2,398.38 | $10 |
| 11/30/2005 | 2005 MD Discount | $44.1000 | $43,725 | 11/30/2010 | 991.50 | 36.40 | 0.00 | 0.00 | 1,027.90 | $4 |
| 12/09/2004 | 2004 MD Principal | $30.0300 | $83,650 | 11/30/2009 | 2,785.56 | 125.20 | 0.00 | 1,455.38 | 2,910.76 | $12 |
| 12/09/2004 | 2004 MD Discount | $30.0300 | $35,850 | 11/30/2009 | 1,193.80 | 53.55 | 0.00 | 0.00 | 1,247.35 | $5 |
| 12/10/2003 | 2003 MD Principal | $24.9850 | $54,021 | 11/30/2008 | 2,162.12 | 115.28 | 0.00 | 1,138.70 | 2,277.40 | $9 |
| 12/10/2003 | 2003 MD Discount | $24.9850 | $23,152 | 11/30/2008 | 926.62 | 49.35 | 0.00 | 0.00 | 975.97 | $4 |
| **Total** | | | $798,913 | | 20,993.28 | 698.74 | 0.00 | 2,594.08 | 21,692.02 | $91 |

### STOCK OPTIONS OUTSTANDING

| Grant Date | Description | Exercise Price | Black-Scholes Grant Price | Expiration Date | Black-Scholes Grant Value | Options Granted | Options Exercised | Options Exercisable | Options Outstanding | Intrinsic Value at $0.042 |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2003 | 2003 MD Options | $35.6950 | $9.7250 | 11/29/2013 | $25,713 | 2,644 | 924 | 0 | 1,720 | $0 |
| 12/11/2002 | 2002 MD Options | $27.2100 | $9.1250 | 11/29/2012 | $91,998 | 10,082 | 7,562 | 2,520 | 2,520 | $0 |
| **Total** | | | | | $117,711 | 12,726 | 8,486 | 2,520 | 4,240 | $0 |
| **Total Equity** | | | | | | | | | | $91 |

[1] Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (03:59 PM EST on February 12 2009)

[1] Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
[2] Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
[3] Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

PRIVATE AND CONFIDENTIAL

2007 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                    ID        10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      J  Phizackerley, T Bolland

DATE:      December 13, 2007

Please find below the details of your 2007 Total Compensation and any year-end awards:

### Total Compensation Summary

|                      | EUR     | USD     |
|----------------------|---------|---------|
| Paid Salary          | 211,500 | 284,619 |
| Total Bonus          | 513,022 | 690,381 |
| **Total Compensation** | **724,522** | **975,000** |
| Total Bonus          | 513,022 | 690,381 |
| Total Equity Award   | 163,435 | 219,937 |
| Net Bonus Award      | 349,587 | 470,444 |

### Equity Award Detail

| Equity Type        | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|--------------------|-----------------|---------------|-----------------|--------------|
| CSAs               | 219,937         | 63.47         | 44.43           | 4,950.20     |
| **Total Equity Award** | **219,937**  |               |                 |              |

Your total Contingent Stock Award (CSAs) is based on a Total Compensation of USD 975,000.

When awarding the CSA award Lehman Brothers Holdings Inc has applied a discount of 30% to the market price of $ 63.47. CSAs are subject to restrictions until 30 November 2012; they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2007 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2008. All terms and conditions of the CSA Awards are subject to the controlling plan documents, including the FY 2007 equity award agreements (expected to be finalised in early 2008), the 2005 Stock Incentive Plan and related Prospectus.

**Salary**

Your salary remains unchanged.

**Additional Information**

The notional total value of your 2007 compensation, including the grant-date value of the discount portion of the CSAs awarded under the Equity Award Program, is USD 1,069,258. To receive the full benefit of the CSA award, including the discount portion, you must remain an employee of Lehman Brothers for five years and comply with the terms of the Program.

All terms and conditions of your employment remain unchanged.

To be eligible for your 2007 bonus award you must be employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2008.

PRIVATE AND CONFIDENTIAL

2006 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                                          10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      I  Lowitt, K Dannenbaum

DATE:      December 13 2006

Please find below the details of your 2006 Total Compensation and any year-end awards:

### Total Compensation Summary

|                      | EUR      |
|----------------------|----------|
|                      |          |
| Paid Salary          | 211,500  |
| Total Bonus          | 514,853  |
| **Total Compensation** | **726,353** |
| Total Bonus          | 514,853  |
| Total Equity Award   | 155,267  |
| Net Bonus Award      | 359,586  |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|-------------|-----------------|---------------|-----------------|--------------|
| CSAs        | 192,568         | 77.03         | 53.92           | 3,571.36     |
| **Total Equity Award** | **192,568** |          |                 |              |

Your total CSA Award is based on a compensation of USD 907,000 (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 30% to the market price of $ 77.03. CSAs are subject to restrictions until 30 November 2011; they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2006 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2007. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

### Base Salary

Your base salary remains unchanged.

### Additional Information

You have also been awarded a Diversity Award of EUR 13,707.  This award is in addition to your 2006 Total Compensation. Your Equity Award shown above has been calculated based on your 2006 Total Compensation and your Diversity Award.

All terms and conditions of your employment remain unchanged.

Entitlement to your 2006 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2007.

**PRIVATE AND CONFIDENTIAL**

**2005 TOTAL COMPENSATION STATEMENT**

TO:      Helmut Olivier                                    10064476

DEPT:    CORP : 93157 - Frankfurt Exec.Admin

FROM:   I Lowitt, K Dannenbaum

DATE:    December 14 2005

Please find below the details of your 2005 Total Compensation and any year-end awards:

**Total Compensation Summary**

|  | EUR | USD |
|---|---|---|
| Paid Salary | 211,500 | 268,129 |
| Total Other Comp | 15,696 | 19,899 |
| Total Bonus | 427,508 | 541,973 |
| **Total Compensation** | **654,704** | **830,000** |
| Total Bonus | 427,508 | 541,973 |
| Total Equity Award | 114,968 | 145,750 |
| Net Bonus Award | 312,540 | 396,223 |

**Equity Award Detail**

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 145,750 | 126.00 | 88.20 | 1,652.49 |
| **Total Equity Award** | **145,750** | | | |

Your total CSA Award is based on a compensation of USD 845,000 (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 30% to the market price of $ 126.00. CSAs are subject to restrictions until 30 November 2010, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2005 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2006. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

**Base Salary**

Your base salary remains unchanged.

**Additional Information**

You have also been awarded a Diversity Award of USD 15,000 (equivalent to EUR 11,832). This award is in addition to your 2005 Total Compensation. Your Equity Award shown above has been calculated based on your 2005 Total Compensation and your Diversity Award.

All terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2005 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2006.

PRIVATE AND CONFIDENTIAL

2004 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                                    10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      N Glaister

DATE:      December 15, 2004

Please find below the details of your 2004 Total Compensation and any year-end awards:

### Total Compensation Summary

|                    | EUR     |
|--------------------|---------|
| Paid Salary        | 211,500 |
| Total Other Comp   | 15,415  |
| Total Bonus        | 389,663 |
| Total Compensation | 616,578 |
| Total Bonus        | 389,663 |
| Total Equity Award | 97,428  |
| Net Bonus Award    | 292,235 |

### Equity Award Detail

| Equity Type        | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|--------------------|-----------------|---------------|-----------------|--------------|
| CSAs               | 119,500         | 85.80         | 60.06           | 1,989.68     |
| Total Equity Award | 119,500         |               |                 |              |

Your total CSA Award is based on a Total Compensation of USD 770,000 (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 30% to the market price of $ 85.80. CSAs are subject to restrictions until 30 November 2009, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2004 Award) will be available on LehmanLive, keyword "equityaward", during the second quarter of 2005. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

Base Salary

Your base salary remains unchanged.

Additional Information

All terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2004 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2005.

PRIVATE AND CONFIDENTIAL
2003 TOTAL COMPENSATION STATEMENT

TO:        Helmut Olivier                                                10064476

DEPT:      CORP : 93157 - Frankfurt Exec.Admin

FROM:      N Glaister

DATE:      December 17, 2003

Please find below the details of your 2003 Total Compensation and any year-end awards:

### Total Compensation Summary

|  | EUR | USD |
|---|---|---|
| Salary | 211,500 | 234,038 |
| Other Comp | 16,166 | 17,889 |
| Total Bonus | 406,665 | 450,000 |
| **Total Compensation** | 634,331 | 701,927 |
| **Total Bonus** | 406,665 | 450,000 |
| Total Equity Award | 92,977 | 102,885 |
| Net Bonus Award | 313,688 | 347,115 |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 77,172 | 71.39 | 49.97 | 1,544.37 |
| Options | 25,713 | 27.79 | 19.45 | 1,322.00 |
| **Total Equity Award** | 102,885 | | | |

Your total Equity Award is based upon a Total Compensation of USD 701,927

Included in your Equity Award is an award of 1,544.37 CSAs. These are subject to restrictions until November 2008. They cannot be sold, traded or pledged before then.

Included in your Equity Award is an award of 1,322 options over Lehman Brothers Holdings Inc Shares. 35% of your Options become exercisable subject to restrictions after 3 years, 65% become exercisable after 5 years.

A full summary of all your outstanding Equity Awards (including your 2003 Award) will be available to view on LehmanLive during the second quarter of 2004.  All terms and conditions of the Equity Awards are subject to the controlling plan documents.

Base Salary
Your base salary remains unchanged.

Additional Information
All other terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2003 Awards is contingent on you being employed by Lehman Brothers at, and not under any period of notice prior to, 31 January 2004.

**Anlage 1**

20.07. 2008 23:00    LEHMAN BROTHERS +49 69 153076499    NR. 387    S. 7



E-2279-211102-L-C

## GUARANTEE

THIS GUARANTEE is dated as of November 21, 2002 and is by Lehman Brothers Holdings Inc., a Delaware corporation (the "Guarantor") in favor of Lehman Brothers Bankhaus A.G., a company incorporated under the laws of the Federal Republic of Germany ("LBB" which expression shall include its successors and assigns) and any Counterparty (as defined below).

The Guarantor desires to unconditionally guarantee LBB's obligations to Counterparties (the "Obligations") as set forth in this Guarantee.

Accordingly, in consideration of the benefits accruing to the Guarantor from LBB's becoming obligated to Counterparties, the mutual promises contained in this Guarantee and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor and LBB hereby agree as follows:

1.    Definitions.

The following terms shall have the following meanings:

"Counterparty" means any Person that is entitled to payment by LBB.

"Person" means any individual, partnership, limited liability company, corporation, trust, joint stock company, unincorporated organization, joint venture, association, company, business trust or other entity or any government or agency, instrumentality or political subdivision of a government.

2.    Representation and Warranties.

The Guarantor represents and warrants that this Guarantee has been duly authorized, executed and delivered by the Guarantor and that this Guarantee constitutes a valid and legally binding obligation of the Guarantor enforceable in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights affecting the Guarantor and to general equity principles.

3.    Payment Obligations.

If LBB fails to make any payment to a Counterparty, the Guarantor will following the request of the Counterparty promptly pay directly to the Counterparty the amount of funds that LBB was required to pay and did not pay the Counterparty under the Obligation. Any payment by the Guarantor to the Counterparty shall discharge and satisfy, by a like amount, any obligation of LBB to the Counterparty. Each of the Guarantor and LBB acknowledges and agrees that each Counterparty is an express third-party beneficiary of this Guarantee. No

21. SEP. 2009 23:46    LEHMAN BROTHERS +49 69 153376499    NR. 997    S. 8

other persons or entities, other than the parties hereto and Counterparties, shall
have any rights, directly or indirectly, under or pursuant to this Guarantee.

4.    Waiver of Subrogation.

The Guarantor waives any and all rights that the Guarantee may have with respect
to LBB as a result of making any payment under this Guarantee, including,
without limitation, any right of subrogation, set off or counterclaim. The
Guarantor understands and agrees that LBB shall have no obligations to it as a
result of any payment made under this Guarantee.

5.    Nature of Obligations; Non Performance; Waivers.

The obligations of the Guarantor under Section 3 of this Guarantee are continuing
and irrevocable and the Guarantor waives all other defenses to payment
hereunder. Without limiting the foregoing, the failure by LBB to perform its
obligations under any agreement or instrument under which it is a party or by
which it is bound or the bankruptcy of LBB shall not affect the Guarantor's
obligations under this Guarantee. The Guarantor waives any failure or delay on
the part of the Counterparty in asserting or enforcing any of its rights or making
any claims or demands under this Guarantee. The Guarantor acknowledges and
agrees that this Guarantee is one of payment and not of collection.

6.    Rank of Obligations.

The Guarantor warrants and agrees that the payment obligations of the Guarantor
that may arise under Section 3 of this Guarantee constitute irrevocable,
unconditional, unsecured and unsubordinated obligations of the Guarantor and
rank pari passu with all other unsecured and unsubordinated obligations of the
Guarantor.

7.    Reinstatement.

If any payment by LBB that would be an Obligation of the Guarantor if not for
such payment by LBB is voided (an "Avoidance Event") under any bankruptcy or
other insolvency-related law of any jurisdiction to which LBB may be or become
subject, and, as a result of such Avoidance Event, the applicable Counterparty (or
any assignee(s) or successor(s) in interest thereof) is required to return such
voided payment, or any portion of such voided payment (an "Avoided Payment"),
the Guarantor will pay the amount of the Avoided Payment out of funds of the
Guarantor within three business days of receipt by the Guarantor of a certified
copy of a final non-appealable order of a court or other governmental body having
jurisdiction, or such other written evidence as shall be reasonably acceptable to
the Guarantor, with respect to such Avoided Payment (specifying the amount and
required manner of repayment thereof), either (i) directly to such court or other
governmental body having jurisdiction or (ii) upon presentation of evidence

24. SEP. 2008 23:00    LEHMAN BROTHERS +49 69 153076499    NR. 907    S. 9

reasonably satisfactory to the Guarantor that the applicable Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof) has repaid such amount in satisfaction of the legal requirements relating thereto, to such Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof). This Guarantee, and the obligations of the Guarantor hereunder, shall be deemed reinstated if and to the extent required to give effect to the obligation of the Guarantor to pay any Avoided Payment in accordance with the preceding sentence.

8.    Termination; Amendment.

This Guarantee may be amended or terminated at any time by written amendment or agreement signed by all parties executing this Guarantee provided, however, that no such amendment may adversely affect the rights, whether absolute or contingent, of any Counterparty that shall have accrued or which may accrue under any agreement or instrument, other than any rights with respect to any Obligation agreed to after the date that Counterparty has received notice of such amendment; and provided further that no such termination shall be effective with respect to any agreement or instrument agreed to prior to Counterparty's receipt of notice of such termination until such time as all such Obligations theretofore agreed to or incurred by LBB shall either no longer be outstanding or be satisfied in full.

9.    Notices.

All notices or demands on the Guarantor shall be deemed effective when received, shall be in writing and shall be delivered by hand or by registered mail, or by facsimile transmission promptly confirmed by registered mail, addressed to the Guarantor at:

If to the Guarantor:   Lehman Brothers Holdings Inc.
                       745 Seventh Avenue
                       New York, NY 10019
                       Attention:    Corporate Counsel
                       Telephone:    (212) 526-0858
                       Facsimile:    (212) 520-0176

If to LBB:             Lehman Brothers Bankhaus A.G.
                       Rathenauplatz 1
                       D-60313, Frankfurt Am Main, Germany
                       Attention:    Legal Counsel
                       Telephone:    +49-69-15307-6401
                       Facsimile:    +49-69-15307-6499

29. SEP. 2008 23:00    LEHMAN BROTHERS +49 69 '53076499    NR 997    S. ''

Any such notice or demand shall be deemed to have been received:

(a)    if sent by telefax, with a confirmed receipt of transmission from the receiving machine, on the day on which transmitted; and

(b)    in the case of a written notice given by hand or by courier, on the day of actual delivery.

10.    Assignment; Successors.

Neither this Guarantee nor any rights or obligations hereunder may be assigned, transferred or delegated to any other Person or entity, and any such assignment, transfer or delegation shall be null and void, provided however that any Counterparty may assign their rights and interest and obligations hereunder to an assignee or transferee to which they have transferred their interest and obligations under any agreement or instrument in which the Counterparty and Guarantor are parties pursuant to the provisions thereof. This Guarantee shall be binding upon the Guarantor and upon its successors.

11.    Withholding Taxes.

Any payments to a Counterparty under this Guarantee shall be free of all withholding, stamp and other taxes and other governmental charges of any nature whatsoever. If any withholding is required, the Guarantor will pay the same to the appropriate governmental body and pay such additional amount to the Counterparty which, after deduction of any withholding, stamp or other taxes or other governmental charge of any nature whatsoever imposed with respect to the payment of such additional amount, shall result in the Counterparty receiving an amount equal to the amount that otherwise would have been payable had there been no such withholding.

12.    Governing Law.

(a)    This Guarantee shall be governed and construed in accordance with the substantive law of the State of New York, without regard to conflicts of law principles.

(b)    The Guarantor irrevocably submits to the non-exclusive jurisdiction of the courts of New York City.

(c)    LBB irrevocably appoints LBHI in relation to proceedings in State of New York as its agent to receive service of any legal processes on its behalf in connection with this Guarantee without excluding any other means of service permitted by the law of the relevant jurisdiction.

20. SEP. 2008 23:00     LEHMAN BROT-ERS +49 69 153076499                    NR. 987    S. 11

IN WITNESS WHEREOF, this Guarantee has been duly executed as of the date
first above written.


LEHMAN BROTHERS HOLDINGS INC.

By:
Name: Oliver Budde
Title:  Vice President



LEHMAN BROTHERS BANKHAUS A.G.

By:                                              Frank Oliver Zeitz
Name: Helmut Olivier                             Prokurist
Title:  Member of the Managing Board


Page 5 of 5

E-2292-190706

THIS GUARANTEE is dated as of July 19,2006 and is by Lehman Brothers Holdings Inc., a Delaware corporation (the "Guarantor") in favor of Lehman Brothers Bankhaus A.G., a company incorporated under the laws of the Federal Republic of Germany ("LBB" which expression shall include its successors and assigns) and any Counterparty (as defined below):

The Guarantor desires to unconditionally guarantee LBB's obligations to Counterparties (the "Obligations") as set forth in this Guarantee.

Accordingly, in consideration of the benefits accruing to the Guarantor from LBB's becoming obligated to Counterparties, the mutual promises contained in this Guarantee and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor and LBB hereby agree as follows:

1. Definitions.

The following terms shall have the following meanings:

"Counterparty" means any Person that is entitled to payment by LBB.

"Person" means any individual, partnership, limited liability company, corporation, trust, joint stock company, unincorporated organization, joint venture, association, company, business trust or other entity or any government or agency, instrumentality or political subdivision of a government.

2. Representation and Warranties.

The Guarantor represents and warrants that this Guarantee has been duly authorized, executed and delivered by the Guarantor and that this Guarantee constitutes a valid and legally binding obligation of the Guarantor enforceable in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights affecting the Guarantor and to general equity principles.

3. Payment Obligations.

If LBB fails to make any payment to a Counterparty, the Guarantor will following the request of the Counterparty promptly pay directly to the Counterparty the amount of funds that LBB was required to pay and did not pay the Counterparty under the Obligation. Any payment by the Guarantor to the Counterparty shall discharge and satisfy, by a like amount, any obligation of LBB to the Counterparty. Each of the Guarantor and LBB acknowledges and agrees that each Counterparty is an express third-party beneficiary of this Guarantee. No other persons or entities, other than the parties hereto and Counterparties, shall have any rights, directly or indirectly, under or pursuant to this Guarantee.

4. Waiver of Subrogation.

The Guarantor waives any and all rights that the Guarantee may have with respect to LBB as a result of making any payment under this Guarantee, including, without limitation, any right of subrogation, set off or counterclaim. The Guarantor understands and agrees that LBB shall have no obligations to it as a result of any payment made under this Guarantee.



The obligations of the Guarantor under Section 3 of this Guarantee are continuing and irrevocable and the Guarantor waives all other defenses to payment hereunder. Without limiting the foregoing, the failure by LBB to perform its obligations under any agreement or instrument under which it is a party or by which it is bound or the bankruptcy of LBB shall not affect the Guarantor's obligations under this Guarantee. The Guarantor waives any failure or delay on the part of the Counterparty in asserting or enforcing any of its rights or making any claims or demands under this Guarantee. The Guarantor acknowledges and agrees that this Guarantee is one of payment and not of collection.

6. Rank of Obligations.

The Guarantor warrants and agrees that the payment obligations of the Guarantor that may arise under Section 3 of this Guarantee constitute irrevocable, unconditional, unsecured and unsubordinated obligations of the Guarantor and rank _pari passu_ with all other unsecured and unsubordinated obligations of the Guarantor.

7. Reinstatement.

If any payment by LBB that would be an Obligation of the Guarantor if not for such payment by LBB is voided (an "Avoidance Event") under any bankruptcy or other insolvency-related law of any jurisdiction to which LBB may be or become subject, and, as a result of such Avoidance Event, the applicable Counterparty (or any assignee(s) or successor(s) in interest thereof) is required to return such voided payment, or any portion of such voided payment (an "Avoided Payment"), the Guarantor will pay the amount of the Avoided Payment out of funds of the Guarantor within three business days of receipt by the Guarantor of a certified copy of a final non-appealable order of a court or other governmental body having jurisdiction, or such other written evidence as shall be reasonably acceptable to the Guarantor, with respect to such Avoided Payment (specifying the amount and required manner of repayment thereof), either (i) directly to such court or other governmental body having jurisdiction or (ii) upon presentation of evidence reasonably satisfactory to the Guarantor that the applicable Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof) has repaid such amount in satisfaction of the legal requirements relating thereto, to such Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof). This Guarantee, and the obligations of the Guarantor hereunder, shall be deemed reinstated if and to the extent required to give effect to the obligation of the Guarantor to pay any Avoided Payment in accordance with the preceding sentence.

8. Termination; Amendment.

This Guarantee may be amended or terminated at any time by written amendment or agreement signed by all parties executing this Guarantee provided, however, that no such amendment may adversely affect the rights, whether absolute or contingent, of any Counterparty that shall have accrued or which may accrue under any agreement or instrument, other than any rights with respect to any Obligation agreed to after the date that Counterparty has received notice of such amendment; and provided further that no such termination shall be effective with respect to any agreement or instrument agreed to prior to Counterparty's receipt of notice of such termination until such time as all such Obligations theretofore agreed to or incurred by LBB shall either no longer be outstanding or be satisfied in full.

All notices or demands on the Guarantor shall be deemed effective when received, shall be in writing and shall be delivered by hand or by registered mail, or by facsimile transmission promptly confirmed by registered mail, addressed to the Guarantor at:

If to the Guarantor:    Lehman Brothers Holdings Inc.
747 Seventh Avenue
New York, NY 10019
Attention: Corporate Counsel

If to LBB:    Lehman Brothers Bankhaus A.G.
Rathenauplatz 1
D-603 13, Frankfurt Am Main, Germany
Attention: Legal Counsel
Telephone: +49-69-15307-6401
Facsimile: +49-69-15307-6499

Any such notice or demand shall be deemed to have been received:

(a) if sent by telefax, with a confirmed receipt of transmission from the receiving machine, on the day on which transmitted; and

(b) in the case of a written notice given by hand or by courier, on the day of actual delivery.

10.    **Assignment; Successors.**

Neither this Guarantee nor any rights or obligations hereunder may be assigned, transferred or delegated to any other Person or entity, and any such assignment, transfer or delegation shall be null and void, provided however that any Counterparty may assign their rights and interest and obligations hereunder to an assignee or transferee to which they have transferred their interest and obligations under any agreement or instrument in which the Counterparty and Guarantor are parties pursuant to the provisions thereof. This Guarantee shall be binding upon the Guarantor and upon its successors.

11.    **Withholding Taxes.**

Any payments to a Counterparty under this Guarantee shall be free of all withholding, stamp and other taxes and other governmental charges of any nature whatsoever. If any withholding is required, the Guarantor will pay the same to the appropriate governmental body and pay such additional amount to the Counterparty which, after deduction of any withholding, stamp or other taxes or other governmental charge of any nature whatsoever imposed with respect to the payment of such additional amount, shall result in the Counterparty receiving an amount equal to the amount that otherwise would have been payable had there been no such withholding.

12.    **Governing Law.**

(a) The Guarantee shall be governed and construed in accordance with the substantive law of the State of New York, without regard to conflicts of law principles.

(b) The Guarantor irrevocably submits to the non-exclusive jurisdiction of the courts of New York City.

(c) LBB irrevocably appoints LBHI in relation to proceedings in State of New York as its agent to receive service of any legal processes on its behalf in connection with this Guarantee without excluding any other means of service permitted by the law of the relevant jurisdiction.

**IN WITNESS WHEREOF**, this Guarantee has been duly executed as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By:
Name: James J. Killerlane
Title:  Vice President

LEHMAN BROTHERS BANKHAUS A.G.

By:
Name: Helmut Olivier
Title:   Member of the Managing Board

Frank Oliver Zeitz
Prokurist

| Name | Grant date | Grant Price | Units Granted | Dividend Equivalents | Outstanding units | Stock Market Price at Grant Date | Market Value |
|---|---|---|---|---|---|---|---|
| Olivier,Helmut | 7-Dec-07 | 44.4300 | 3,465.14 | 71.36 | 3,536.50 | 63.47 | 224,461.66 |
| Olivier,Helmut | 7-Dec-07 | 44.4300 | 1,485.06 | 30.55 | 1,515.61 | 63.47 | 96,195.77 |
| Olivier,Helmut | 8-Dec-06 | 53.9200 | 2,499.95 | 73.98 | 2,573.93 | 77.03 | 198,269.83 |
| Olivier,Helmut | 8-Dec-06 | 53.9200 | 1,071.41 | 31.65 | 1,103.06 | 77.03 | 84,968.71 |
| Olivier,Helmut | 30-Nov-05 | 44.1000 | 2,313.48 | 84.90 | 2,398.38 | 63.00 | 151,097.94 |
| Olivier,Helmut | 30-Nov-05 | 44.1000 | 991.50 | 36.40 | 1,027.90 | 63.00 | 64,757.70 |
| Olivier,Helmut | 9-Dec-04 | 30.0300 | 2,785.56 | 125.20 | 2,910.76 | 42.90 | 124,871.60 |
| Olivier,Helmut | 9-Dec-04 | 30.0300 | 1,193.80 | 53.55 | 1,247.35 | 42.90 | 53,511.32 |
| Olivier,Helmut | 10-Dec-03 | 24.9850 | 2,162.12 | 115.28 | 2,277.40 | 35.70 | 81,303.18 |
| Olivier,Helmut | 10-Dec-03 | 24.9850 | 926.62 | 49.35 | 975.97 | 35.70 | 34,842.13 |

1,114,279.83

Anlage 1



29. SEP. 2008 73:00    LEHMAN BROTHERS +49 69 153076499    NR. 987    S. 7

E-2279-211102-LC

GUARANTEE

THIS GUARANTEE is dated as of November 21, 2002 and is by Lehman Brothers
Holdings Inc., a Delaware corporation (the "Guarantor") in favor of Lehman Brothers
Bankhaus A.G., a company incorporated under the laws of the Federal Republic of
Germany ("LBB" which expression shall include its successors and assigns) and any
Counterparty (as defined below).

The Guarantor desires to unconditionally guarantee LBB's obligations to Counterparties
(the "Obligations") as set forth in this Guarantee.

Accordingly, in consideration of the benefits accruing to the Guarantor from LBB's
becoming obligated to Counterparties, the mutual promises contained in this Guarantee
and other valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the Guarantor and LBB hereby agree as follows:

1.    Definitions.

      The following terms shall have the following meanings:

      "Counterparty" means any Person that is entitled to payment by LBB.

      "Person" means any individual, partnership, limited liability company,
      corporation, trust, joint stock company, unincorporated organization, joint
      venture, association, company, business trust or other entity or any government or
      agency, instrumentality or political subdivision of a government.

2.    Representation and Warranties.

      The Guarantor represents and warrants that this Guarantee has been duly
      authorized, executed and delivered by the Guarantor and that this Guarantee
      constitutes a valid and legally binding obligation of the Guarantor enforceable in
      accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency,
      reorganization and other laws of general applicability relating to or affecting
      creditors' rights affecting the Guarantor and to general equity principles.

3.    Payment Obligations.

      If LBB fails to make any payment to a Counterparty, the Guarantor will following
      the request of the Counterparty promptly pay directly to the Counterparty the
      amount of funds that LBB was required to pay and did not pay the Counterparty
      under the Obligation. Any payment by the Guarantor to the Counterparty shall
      discharge and satisfy, by a like amount, any obligation of LBB to the
      Counterparty. Each of the Guarantor and LBB acknowledges and agrees that
      each Counterparty is an express third-party beneficiary of this Guarantee. No

28 SEP 2009 23:44    LEHMAN BROTHERS -49 69 153376499    NR. 937    S. 8

other persons or entities, other than the parties hereto and Counterparties, shall have any rights, directly or indirectly, under or pursuant to this Guarantee.

4.    **Waiver of Subrogation.**

The Guarantor waives any and all rights that the Guarantee may have with respect to LBB as a result of making any payment under this Guarantee, including, without limitation, any right of subrogation, set off or counterclaim. The Guarantor understands and agrees that LBB shall have no obligations to it as a result of any payment made under this Guarantee.

5.    **Nature of Obligations, Non Performance; Waivers.**

The obligations of the Guarantor under Section 3 of this Guarantee are continuing and irrevocable and the Guarantor waives all other defenses to payment hereunder. Without limiting the foregoing, the failure by LBB to perform its obligations under any agreement or instrument under which it is a party or by which it is bound or the bankruptcy of LBB shall not affect the Guarantor's obligations under this Guarantee. The Guarantor waives any failure or delay on the part of the Counterparty in asserting or enforcing any of its rights or making any claims or demands under this Guarantee. The Guarantor acknowledges and agrees that this Guarantee is one of payment and not of collection.

6.    **Rank of Obligations.**

The Guarantor warrants and agrees that the payment obligations of the Guarantor that may arise under Section 3 of this Guarantee constitute irrevocable, unconditional, unsecured and unsubordinated obligations of the Guarantor and rank pari passu with all other unsecured and unsubordinated obligations of the Guarantor.

7.    **Reinstatement.**

If any payment by LBB that would be an Obligation of the Guarantor if not for such payment by LBB is voided (an "Avoidance Event") under any bankruptcy or other insolvency-related law of any jurisdiction to which LBB may be or become subject, and, as a result of such Avoidance Event, the applicable Counterparty (or any assignee(s) or successor(s) in interest thereof) is required to return such voided payment, or any portion of such voided payment (an "Avoided Payment"), the Guarantor will pay the amount of the Avoided Payment out of funds of the Guarantor within three business days of receipt by the Guarantor of a certified copy of a final non-appealable order of a court or other governmental body having jurisdiction, or such other written evidence as shall be reasonably acceptable to the Guarantor, with respect to such Avoided Payment (specifying the amount and required manner of repayment thereof), either (i) directly to such court or other governmental body having jurisdiction or (ii) upon presentation of evidence

26. SEP. 2008 23:00    LEHMAN BROTHERS +49 69 153076499    NR. 907    S. 9

reasonably satisfactory to the Guarantor that the applicable Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof) has repaid such amount in satisfaction of the legal requirements relating thereto, to such Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof). This Guarantee, and the obligations of the Guarantor hereunder, shall be deemed reinstated if and to the extent required to give effect to the obligation of the Guarantor to pay any Avoided Payment in accordance with the preceding sentence.

8.    Termination: Amendment.

This Guarantee may be amended or terminated at any time by written amendment or agreement signed by all parties executing this Guarantee provided, however, that no such amendment may adversely affect the rights, whether absolute or contingent, of any Counterparty that shall have accrued or which may accrue under any agreement or instrument, other than any rights with respect to any Obligation agreed to after the date that Counterparty has received notice of such amendment; and provided further that no such termination shall be effective with respect to any agreement or instrument agreed to prior to Counterparty's receipt of notice of such termination until such time as all such Obligations theretofore agreed to or incurred by LBB shall either no longer be outstanding or be satisfied in full.

9.    Notices.

All notices or demands on the Guarantor shall be deemed effective when received, shall be in writing and shall be delivered by hand or by registered mail, or by facsimile transmission promptly confirmed by registered mail, addressed to the Guarantor at:

If to the Guarantor:    Lehman Brothers Holdings Inc.
                        745 Seventh Avenue
                        New York, NY 10019
                        Attention:    Corporate Counsel
                        Telephone:    (212) 526-0858
                        Facsimile:    (212) 520-0176

If to LBB:              Lehman Brothers Bankhaus A.G.
                        Rathenauplatz 1
                        D-60313, Frankfurt Am Main, Germany
                        Attention:    Legal Counsel
                        Telephone:    +49-69-15307-6401
                        Facsimile:    +49-69-15307-6499

29. SEP. 2009 23:00    LEHMAN BROTHERS +49 69 153078499    NR. 937    S. 11

Any such notice or demand shall be deemed to have been received:

(a)     if sent by telefax, with a confirmed receipt of transmission from the receiving machine, on the day on which transmitted; and

(b)     in the case of a written notice given by hand or by courier, on the day of actual delivery.

10.    Assignment: Successors.

Neither this Guarantee nor any rights or obligations hereunder may be assigned, transferred or delegated to any other Person or entity, and any such assignment, transfer or delegation shall be null and void, provided however that any Counterparty may assign their rights and interest and obligations hereunder to an assignee or transferee to which they have transferred their interest and obligations under any agreement or instrument in which the Counterparty and Guarantor are parties pursuant to the provisions thereof. This Guarantee shall be binding upon the Guarantor and upon its successors.

11.    Withholding Taxes.

Any payments to a Counterparty under this Guarantee shall be free of all withholding, stamp and other taxes and other governmental charges of any nature whatsoever. If any withholding is required, the Guarantor will pay the same to the appropriate governmental body and pay such additional amount to the Counterparty which, after deduction of any withholding, stamp or other taxes or other governmental charge of any nature whatsoever imposed with respect to the payment of such additional amount, shall result in the Counterparty receiving an amount equal to the amount that otherwise would have been payable had there been no such withholding.

12.    Governing Law.

(a)     This Guarantee shall be governed and construed in accordance with the substantive law of the State of New York, without regard to conflicts of law principles.

(b)     The Guarantor irrevocably submits to the non-exclusive jurisdiction of the courts of New York City.

(c)     LBB irrevocably appoints LBHI in relation to proceedings in State of New York as its agent to receive service of any legal processes on its behalf in connection with this Guarantee without excluding any other means of service permitted by the law of the relevant jurisdiction.

20. SEP. 2008 23:00      LEHMAN BROTHERS +49 69 153076499          NR. 907    S. 11

IN WITNESS WHEREOF, this Guarantee has been duly executed as of the date
first above written.

LEHMAN BROTHERS HOLDINGS INC.

By:_____
Name:  Oliver Budde
Title:   Vice President

LEHMAN BROTHERS BANKHAUS A.G.

By:_____          Frank Oliver Zeitz
Name: Helmut Olivier                          Prokurist
Title:   Member of the Managing Board

Page 5 of 5

G-2292-190706

**THIS GUARANTEE** is dated as of July 19,2006 and is by Lehman Brothers Holdings Inc., a Delaware corporation (the **"Guarantor"**) in favor of Lehman Brothers Bankhaus A.G., a company incorporated under the laws of the Federal Republic of Germany (**"LBB"** which expression shall include its successors and assigns) and any Counterparty (as defined below):

The Guarantor desires to unconditionally guarantee LBB's obligations to Counterparties (the **"Obligations"**) as set forth in this Guarantee.

Accordingly, in consideration of the benefits accruing to the Guarantor from LBB's becoming obligated to Counterparties, the mutual promises contained in this Guarantee and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor and LBB hereby agree as follows:

1. <u>Definitions.</u>

The following terms shall have the following meanings:

**"Counterparty"** means any Person that is entitled to payment by LBB.

**"Person"** means any individual, partnership, limited liability company, corporation, trust, joint stock company, unincorporated organization, joint venture, association, company, business trust or other entity or any government or agency, instrumentality or political subdivision of a government.

2. <u>Representation and Warranties.</u>

The Guarantor represents and warrants that this Guarantee has been duly authorized, executed and delivered by the Guarantor and that this Guarantee constitutes a valid and.legally binding obli,gation of the Guarantor enforceable in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights affecting the Guarantor and to general equity principles.

3. <u>Payment Obligations.</u>

If LBB fails to make any payment to a Counterparty, the Guarantor will following the request of the Counterparty promptly pay directly to the Counterparty the amount of funds that LBB was required to pay and did not pay the Counterparty under the Obligation. Any payment by the Guarantor to the Counterparty shall discharge and satisfy, by a like amount, any obligation of LBB to the Counterparty. Each of the Guarantor and LBB acknowledges and agrees that each Counterparty is an express third-party beneficiary of this Guarantee. No other persons or entities, other than the parties hereto and Counterparties, shall have any rights, directly or indirectly, under or pursuant to this Guarantee.

4. <u>Waiver of Subrogation.</u>

The Guarantor waives any and all rights that the Guarantee may have with respect to LBB as a result of making any payment under this Guarantee, including, without limitation, any right of subrogation, set off or counterclaim. The Guarantor understands and agrees that LBB shall have no obligations to it as a result of any payment made under this Guarantee.



The obligations of the Guarantor under Section 3 of this Guarantee are continuing and irrevocable and the Guarantor waives all other defenses to payment hereunder. Without limiting the foregoing, the failure by LBB to perform its obligations under any agreement or instrument under which it is a party or by which it is bound or the bankruptcy of LBB shall not affect the Guarantor's obligations under this Guarantee. The Guarantor waives any failure or delay on the part of the Counterparty in asserting or enforcing any of its rights or making any claims or demands under this Guarantee. The Guarantor acknowledges and agrees that this Guarantee is one of payment and not of collection.

6. Rank of Obligations.

The Guarantor warrants and agrees that the payment obligations of the Guarantor that may arise under Section 3 of this Guarantee constitute irrevocable, unconditional, unsecured and unsubordinated obligations of the Guarantor and rank pari passu with all other unsecured and unsubordinated obligations of the Guarantor.

7. Reinstatement.

If any payment by LBB that would be an Obligation of the Guarantor if not for such payment by LBB is voided (an "Avoidance Event") under any bankruptcy or other insolvency-related law of any jurisdiction to which LBB may be or become subject, and, as a result of such Avoidance Event, the applicable Counterparty (or any assignee(s) or successor(s) in interest thereof) is required to return such voided payment, or any portion of such voided payment (an "Avoided Payment"), the Guarantor will pay the amount of the Avoided Payment out of funds of the Guarantor within three business days of receipt by the Guarantor of a certified copy of a final non-appealable order of a court or other governmental body having jurisdiction, or such other written evidence as shall be reasonably acceptable to the Guarantor, with respect to such Avoided Payment (specifying the amount and required manner of repayment thereof), either (i) directly to such court or other governmental body having jurisdiction or (ii) upon presentation of evidence reasonably satisfactory to the Guarantor that the applicable Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof) has repaid such amount in satisfaction of the legal requirements relating thereto, to such Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof). This Guarantee, and the obligations of the Guarantor hereunder, shall be deemed reinstated if and to the extent required to give effect to the obligation of the Guarantor to pay any Avoided Payment in accordance with the preceding sentence.

8. Termination; Amendment.

This Guarantee may be amended or terminated at any time by written amendment or agreement signed by all parties executing this Guarantee provided, however, that no such amendment may adversely affect the rights, whether absolute or contingent, of any Counterparty that shall have accrued or which may accrue under any agreement or instrument, other than any rights with respect to any Obligation agreed to after the date that Counterparty has received notice of such amendment; and provided further that no such termination shall be effective with respect to any agreement or instrument agreed to prior to Counterparty's receipt of notice of such termination until such time as all such Obligations theretofore agreed to or incurred by LBB shall either no longer be outstanding or be satisfied in full.