UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                                                :
In re                                                           :    Chapter 11 Case No.
                                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                                                :
                                               Debtors.         :    (Jointly Administered)
                                                                :
--------------------------------------------------------------- x

### AFFIRMATION OF CLAIMANT [Brian Seward] IN OPPOSITION TO DEBTORS' 313th OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS) DATED JUNE 4, 2012

BRIAN SEWARD
[NAME] affirms under penalties of perjury as follows:

1. I am employed by Lehman Brothers Limited, a Group Company of Lehman Brothers Holdings Inc from 7th February 1983 to date. I remain in employment with Lehman Brothers Limited as of the date of this affirmation notwithstanding the appointment of Administrators to Lehman Brothers on 15th September 2008.

3. In line with the CSA Awards granted to me by Lehman Brothers Holdings Inc for the years 2003 to 2006, I am entitled to an issuance of the appropriate number of Lehman Brothers Holdings Inc shares in full on 30 November 2008 to 30 November 2011 respectively. In addition I am entitled to the issuance of the Lehman Brothers Holdings Inc shares relating to 100% of the 2007 CSA Award and 2008 CSA Award on 30 November 2012 and 30 November 2013 respectively so long as I remain in employment with Lehman Brothers Limited through to the respective dates.

4. Pursuant to the CSA Agreements, I recognize that I remain contractually obligated to avoid engaging in any "Detrimental Activity" and that I have other ongoing contract

obligations under these Agreements. *See, e.g.*, Debtors' Dec. 15 Omnibus Reply at pp. 65-68 (RSU Agreement for 2004).

5. After my entry into the CSA Agreements I continue to perform all of those contractual obligations.

6. Attached hereto as Exhibit 1 is the original Proof of Claim that I filed in connection with my contract rights under the CSA Agreements. This initial Claim was assigned Claim No. 0000011590.

7. I was provided with this Proof of Claim form by Debtors. In the form provided, Debtors had largely completed the form, including inserting the caption, a bar code and supplying my name and address.

8. On the attached Exhibit 1, all of the typed information was contained in the form when Debtors provided it to me. I added only my phone number, email address, the amount of the claim, included with this amount was $85,042.70 (based on an "Executive Compensation Summary" provided by Lehman Brothers, which I attached), and my signature and date. All of these documents are attached with Exhibit 1, together with Debtors' acknowledgement of receipt of the proof of claim.

10. The practice followed each year by Lehman Brothers was to provide a form stating the bonus to which I was entitled for the year, and describing the portion of the bonus that was to be awarded and reserved by Lehman Brothers Holdings Inc pursuant to the CSA Agreement for that year.

11. I never paid any income tax nor social security contributions on the portion of any bonus reserved under the CSA Agreements. For prior years (i.e. for CSA awards made through to 2002), not at issue here, after my interests vested and the relevant CSAs were converted to LBHI shares, Lehman Brothers would retain a portion of the awards to cover the appropriate

2

withholding taxes, and then provide me with balance of LBHI shares. The entire amount of the bonus was treated as ordinary income to me and was taxed at ordinary income rates at the date that the LBHI shares were released to me. My understanding is that Lehman Brothers was entitled to a business expense deduction for the amount of this portion of the bonus, but only at the time that it was actually paid or shares delivered.

12. The economic substance of the CSA Agreements to me was that a portion of the bonus that had been declared for me was held back, and would be delivered to me only after passage of five years, during which I was subject to ongoing contractual obligations. At no time did Lehman Brothers Holdings Inc suggest that I had ever failed to perform any of these contractual obligations, the breach of which could result in rescission of my bonus. However, under the terms of the CSA Agreements, Lehman Brothers was not required to pay me anything from this reserved bonus, and in fact LBHI did not pay or deliver me anything, until five years after we entered into that CSA Agreement.

13. Even after the CSAs became subject to "Limited Conditions" I was not permitted to draw down on the shares until five years after the date of the CSA Agreement. During this entire time my right to draw down on the shares was contingent on my continued performance of contract obligations.

_____
Signature

BRIAN SEWARD
Brian Seward

Affirmed under penalties of perjury
on this 4 day of July, 2012

_____ Solicitor

3

**EXHIBIT 1**

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

In Re: Lehman Brothers Holdings Inc., et al. Debtors.
Chapter 11
Case No. 08-13555 (JMP) (Jointly Administered)

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000011590

Name of Debtor Against Which Claim is Held: LEHMAN BROTHERS HOLDINGS INC
Case No. of Debtor: 08-13905

Name and address of Creditor:
MR. BRIAN SEWARD
56 LODGE ROAD
BRAINTREE
ESSEX
CM7 1JB UNITED KINGDOM
Telephone number: 0044 7768178355    Email Address: bt.seward@btinternet.com

Name and address where payment should be sent (if different from above):
AS ABOVE

1. Amount of Claim as of Date Case Filed: $115,492.70

2. Basis for Claim: SERVICES PERFORMED (EMPLOYEE)

Date: 04/09/09
Signature: [signed] BRIAN SEWARD

FOR COURT USE ONLY

SEP 11 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

___DEFINITIONS___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

___INFORMATION___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**ALL TERMS REMAIN SUBJECT TO THE RULING OF THE U.S. BANKRUPTCY COURT.***

## LEHMAN BROTHERS
### Executive Compensation Summary
### BRIAN SEWARD

| Grant Date | Plan | Shares Granted | Number of Shares | Status |
|---|---|---|---|---|
| December 10, 2003 | LBSAP | 373.56 | 280.18 | Limited Conditions |
|  |  |  | 93.38 | Full Conditions |
| December 9, 2004 | LBSAP | 395.88 | 296.92 | Limited Conditions |
|  |  |  | 98.96 | Full Conditions |
| November 30, 2005 | LBSAP | 313.06 | 234.80 | Limited Conditions |
|  |  |  | 78.26 | Full Conditions |
| December 8, 2006 | LBSAP | 317.19 | 317.19 | Full Conditions |
| December 7, 2007 | LBSAP | 511.01 | 511.01 | Full Conditions |
| July 1, 2008 | LBSAP | 232.10 | 232.10 | Full Conditions |
|  | Dividend Reinvestment | 72.27 | 36.91 | Limited Conditions |
|  |  |  | 35.36 | Full Conditions |
| Total Shares Subject to Limited Conditions: |  |  | 848.81 |  |
| Total Shares Subject to Full Conditions: |  |  | 1,366.26 |  |
| Total Shares Outstanding: |  |  | 2,215.07 |  |

**2003 - 2007 LBSAP:** These Contingent Stock Awards ("CSAs") are subject to conditions for a period of five years. The CSAs cannot be sold, traded, or pledged for that five-year period. The principal portion (75% of your award) becomes subject to limited conditions approximately two years after the grant date and the discount portion (25% of your award) becomes unconditional approximately five years after the grant date. Your entitlement is subject to your refraining from the activities outlined under the terms of the program, including working for a competitor. Notwithstanding the schedule above, CSAs will be forfeited in the event of a termination with Cause or if you engage in Detrimental Activity prior to the share payment date.

**July 2008 LBSAP:** These Contingent Stock Awards ("CSAs") are subject to restrictions for a period of three years. The CSAs cannot be sold, traded, or pledged for that three-year period. The award vests in equal increments on November 30th of the first through third anniversaries of the grant date. Your entitlement is subject to your refraining from the activities outlined under the terms of the program, including working for a competitor. Notwithstanding the schedule above, CSAs will be forfeited in the event of a termination prior to November 30, 2008, in the event of a termination with Cause, or if you engage in Detrimental Activity prior to the share payment date.

**Dividend Reinvestment:** Until your CSAs convert to common stock, if dividends are declared, you will receive dividend equivalents. Your dividend equivalents will be automatically reinvested as additional CSAs. The CSAs you receive as dividend equivalents will be subject to the same conditions as the underlying CSAs to which they relate. In the event the underlying CSAs are forfeited, the related dividend reinvested CSAs will also be forfeited.

**NOTE: ALL TERMS AND CONDITIONS OF THE AWARDS ARE SUBJECT TO THE APPLICABLE CONTROLLING PLAN DOCUMENTS INCLUDING BUT NOT LIMITED TO YOUR CONTINGENT STOCK AWARD LETTER, THE EMPLOYEE INCENTIVE PLAN, THE EMPLOYEE INCENTIVE PLAN PROSPECTUS, THE 2005 STOCK INCENTIVE PLAN, AND THE 2005 STOCK INCENTIVE PLAN PROSPECTUS.**

* **AS A RESULT OF LEHMAN BROTHERS HOLDINGS INC.'S BANKRUPTCY FILING, THE TREATMENT OF ALL OUTSTANDING EQUITY AWARDS REMAIN SUBJECT TO SUCH PROCEEDING IN THE U.S. BANKRUPTCY COURT.**

Data as of September 12, 2008
Prepared on 21 August 2009

From:        PECapPartners
Sent:        17 June 2008 22:03
Subject:     Partnership Account (Pre-Tax) Update
Attachments: PA pre-tax 2008.pdf

# LEHMAN BROTHERS

MICHAEL J. ODRICH
MANAGING DIRECTOR
HEAD OF PRIVATE EQUITY

June 17, 2008

Dear Partner,

We are pleased to update you on the current status of the Lehman Brothers Partnership Account, which is invested together and in parallel with related vehicles (together, the "Partnership Account" or the "Fund"). In June 2000, the Firm awarded opportunities to participate in the Fund with notional Firm-provided leverage to employees through the Vice President level. As of July 2003, you became fully vested and entitled to receive payments from the Fund to the extent they become available, regardless of your employment status with the Firm.

*Partnership Account Performance and Overview*

As of December 31, 2007, the Fund invested $458 million and has now committed all of its capital. The Fund has allocated its investments among the Lehman Brothers Private Equity asset classes in the following approximate ratios: 66% to Merchant Banking, Venture Capital, Real Estate and Fixed Income; 23% to Private Fund Investments; and 11% to the Fund of Hedge Funds.

As of December 31, 2007, the gross IRR for the Partnership Account was 20%, which represents an implied multiple of notional equity of 7.6x. Gross IRR represents the pre-tax, compounded annual internal rate of return based on estimated values of investments and gross cash flows into and out of investments.

In October 2007, a distribution of $2,169 per unit was made to each investor, which represents 318% of the notional equity invested in the fund. We continue to monitor the cash balance in the fund and will apprise you prior to making additional distributions.

*Example of Partnership Account Returns*

The chart on the following page illustrates the Fund's return mechanics valuing the investments as of December 31, 2007. This example assumes the award of $10,000 from the Firm to an employee, of which $7,500 (base award of $682 and notional leverage of $6,818) was actually invested. As of December 31, 2007, the value of the employee's investment net of the distribution would be approximately $3,045. The total value of the investment including the $2,169 distribution represents a 7.6x multiple of invested capital. As this is only a hypothetical example, the actual amounts you receive may differ.

| Valuation Analysis as of December 31, 2007 | | |
|---|---|---|
| Per 10K investor | | |
| Base Award Amount Invested as of 12/31/07 | $ | 682 |
| Leverage provided as of 12/31/07 | | 6,818 |

Page 2 of

| | | |
|---|---|---|
| Value as of 12/31/07 | $ | 12,940 |
| Less GP carry | | (544) |
| Less Distribution | | (2,169) |
| Less Int on Leverage | | (364) |
| Less Leverage | | (6,818) |
| Net Value @ 12/31/07 | $ | 3,045 |
| Gross IRR | | |
| Implied Multiple of Invested Capital | | |

*Note: as of 12/31/07, there is no remaining leverage outstanding.*

Past performance is not indicative of future results, and there can be no assurance that the Fund will continue to achieve comparable results to those set forth herein. Calculation methodology is explained further below, and this data is indicative of the performance of the Fund. The total value displayed on the above chart includes all distributions received and the current value of unrealized investments. The actual realized values of unrealized investments may differ materially from their current carrying values which are used for calculating total value. Actual values of currently unrealized investments cannot be determined until the occurrence of liquidity events and the repayment of all leverage and associated interest costs. Actual realized values of currently unrealized investments will depend on, among other factors, future operating results, market conditions at the time of disposition, legal and contractual restrictions on transfer that may limit liquidity, any related transaction costs and the timing and manner of sale, all of which may differ from the assumptions and circumstances on which the current unrealized values are based.

Below, we offer performance data by asset class as of December 31, 2007, for investments made thus far. Unrealized publicly-traded investments are valued based on closing market prices on December 31, 2007. The methodology of calculating unrealized privately-held investments differs among asset classes and is detailed below. Please refer to the investment update attached to this letter for more detail on investment allocations and performance by asset class.

*Merchant Banking*

The Partnership Account's only Merchant Banking investment was Consort Resources for $9.2 million. Consort was realized on a gross basis at 117% of the invested amount following its acquisition by Caledonia Oil and Gas Limited in October 2003. The $10.8 million of proceeds from this investment was used to repay interest and leverage.

*Venture Capital*

The Partnership Account invested a total of $176 million in venture capital investments, which comprise several sector and geographical sub-categories. Unrealized venture capital investments are generally valued at cost, although several of the investments have been marked up or down to reflect market changes. As of December 31, 2007, the blended total value of all venture capital investments, including the distribution, was 116% of invested capital.

*Real Estate*

The Partnership Account is a significant investor in Lehman Brothers Real Estate Partners I, with a total of $108 million invested in real estate as of December 31, 2007. To date, investments have been realized for $301 million of value. Unrealized real estate investments are reflected at their fair values which are determined through discounted cash flow analyses. As of December 31, 2007, the total value of realized and unrealized real estate investments, including the distribution, was 279% of invested capital.

*Private Fund Investments*

The Partnership Account invested $105 million in funds that are managed by top third party private equity fund

…managers. The Partnership Account has received $137 million in proceeds from these investments. Private fund investments are reflected at net asset value of the underlying funds as reported in their most recent financial statements. As of December 31, 2007, the total value of assets in private funds, including the distribution, was 192% invested capital.

### Fixed Income-Related

The Partnership Account invested in the "equity" component of two CDOs for a total of $9 million. Unrealized CDO investments are valued based on accrued and paid cash interest, sales proceeds and principal repayments assuming a nominal value determined by the market. As of December 31, 2007, the total value of fixed income investments, including the distribution, was 109% of the Fund's investment cost.

### Fund of Hedge Funds

In December 2004, the Partnership Account realized its entire $50 million investment in Lehman Brothers Fund of Hedge Funds for $59 million, representing 117% of invested capital. The Fund of Hedge Funds was divided between a long/short fund and a diversified arbitrage fund.

### Firm-Provided Notional Leverage

When the Partnership Account was established, Lehman Brothers provided employees through the Vice President level with an award based on a base amount and notional 10x leverage. For example, an original Partnership Account award of $10,000 consisted of a base component of $909 and notional leverage of $9,091. However, due to the available investment opportunities, the actual amount invested was $7,500 per $10,000 unit with a base of $682 and notional leverage of $6,818.

All currently outstanding Fund notional leverage and associated interest costs have been repaid. As Lehman Brothers awarded you the opportunity to participate in the Fund, all distributions you receive under the Fund, if any, will be treated as ordinary income to you for tax purposes.

We are pleased with the performance of the Fund to date. We will continue to manage this portfolio aggressively to maximize value and returns to our investors. We will keep you periodically updated on the Partnership Account. In the meantime, please do not hesitate to call Private Equity Investor Relations at (212) 526-9970 with questions regarding your investment.

Sincerely,

*Mike*

Michael J. Odrich
Managing Director

**Brian Seward**
**Equity Award Grant Values (Part of annual Cash Bonus award held as CSA's)**

| Date of Grant | Description | Grant Price | Units granted | Value at Grant |
|---|---|---|---|---|
| **CSAs** | | | | |
| 01/07/2008 | July 2008 CSA | $20.960 | 232.10 | $4,864.82 |
| 07/12/2007 | 2007 CSA | $47.600 | 511.01 | $24,324.08 |
| 08/12/2006 | 2006 CSA | $57.770 | 317.19 | $18,324.07 |
| 30/11/2005 | 2005 CSA | $47.250 | 313.06 | $14,792.09 |
| 09/12/2004 | 2004 CSA | $32.175 | 395.88 | $12,737.44 |
| 10/12/2003 | 2003 CSA | $26.770 | 373.56 | $10,000.20 |
| | | | **Total** | **$85,042.70** |

**Partnership Account (Detail as attached)**

| | | | | |
|---|---|---|---|---|
| Latest known value of account units | | $3,045 | 10 | $30,450.00 |
| | | | **Grand total** | **$115,492.70** |



