UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                                             :
                                    Debtors.                 :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

### AFFIRMATION OF CLAIMANT ALVARO SANTODOMINGO, IN OPPOSITION TO DEBTORS' 313th OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS) DATED JUNE 4, 2012

Alvaro Santodomingo affirms under penalties of perjury as follows:

1.      I was employed by Lehman Brothers from July 14, 1997 through March 10, 2008. Lehman Brothers terminated my employment on March 10, 2008. Lehman Brothers informed me through delivery of a termination notice that it had decided to terminate my employment agreement (the Termination Agreement) as of that date (a copy of the Termination Agreement is included in the Proof of Claim).

2.      Upon the termination of my employment, Lehman Brothers assured me that my termination was an "involuntary termination without cause" as that phrase is defined in the "CSA Agreements" between Lehman Brothers and employees. Pursuant to the Termination Agreement, I retained the right to receive 3,626 shares of LBHI stock together with any reinvested dividends declared in relation to any such shares representing deferred compensation not paid to me between 2003 and 2007 inclusive. The value of the deferred compensation awarded to Alvaro Santodomingo in the form of a CSA was specified each year in an annual total compensation statement delivered by Lehman Brothers to me, which summarized my total compensation package for such year. Copies of these compensation statements were included

with the Proof of Claim and are attached. After my termination, I retained the right to receive a proportion of (a) the Grant Value awarded to Claimant plus (b) any stocks forming part of a CSA awarded through the automatic reinvestment of any dividends received in relation to any of my CSAs (the Deferred Compensation). A table showing the calculation of the Deferred Compensation is included in the Proof of Claim and are attached. Pursuant to the Deferred Compensation calculation, LBHI is indebted and/or liable to Alvaro Santodomingo for US$156,716.

3.    Upon my execution of the Termination Agreement dated March 10th, 2008, I satisfied the "Release Requirement" set forth in the CSA Agreements.

4.    Pursuant to the CSA Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. *See, e.g.,* Debtors' Dec. 15 Omnibus Reply at pp. 65-68 (RSU Agreement for 2004). However, the Termination Agreement stated that in no case I would receive less than 3,626 shares, irrespective of the contractual obligations included in the CSA Agreements.

5.    Notwithstanding the Termination Agreement waiver, after my entry into the CSA Agreements, including after the termination of my employment, I continued to perform all of those contractual obligations.

6.    The Termination Agreement recognizes the amount of vested shares I am entitle to receive, and also specified a calendar for those shares to be received. The Termination Agreement is attached to the Proof of Claim.

7.    Attached hereto as Exhibit 1 are the material portions of the original Proof of Claim that I filed in connection with my contract rights under the CSA Agreements. This initial Claim was assigned Claim No. 19947.

8.    As shown on the compensation statements attached to my Proof of Claim, the practice followed each year by Lehman Brothers was to provide a form stating the bonus to

2

which I was entitled for the year, and describing the portion of the bonus that was to be reserved by Lehman Brothers pursuant to the CSA Agreement for that year.

9.      I never paid tax on the portion of any bonus reserved under the CSA Agreements. For prior years, not at issue here, after my interests vested and I was permitted to receive a number of shares, Lehman Brothers would sell a number of shares on my behalf to pay the federal withholding tax with sale cash proceeds, and then would provide me the remaining Lehman Brothers shares. The entire amount of the bonus was treated as ordinary income to me and was taxed at ordinary income rates. My understanding is that Lehman Brothers was entitled to a business expense deduction for the amount of this portion of the bonus, but only at the time that it was actually paid.

10.      The economic substance of the CSA Agreements to me was that a portion of the bonus that had been declared for me was held back, and would be paid to me only after passage of five years, during which I was subject to ongoing contractual obligations. At no time did Lehman suggest that I had ever failed to perform any of these contractual obligations, the breach of which could result in rescission of my bonus. However, under the terms of the CSA Agreements, Lehman Brothers was not required to pay me anything from this reserved bonus, and in fact Lehman Brothers did not pay me anything, until five years after we entered into that CSA Agreement.

Affirmed under penalties of perjury on this 5th day of July, 2012

_____
Alvaro Santodomingo

3

# EXHIBIT 1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings Inc. | 08-13555 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000019947

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities. (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Alvaro, Santodomingo Martell
C/ Jose Silva 24,
Bj-D, Madrid 28043
Spain
Email: alvaro.santodomingo@itp.es

Telephone number: +34639641050    Email Address: Please see above.

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**
_____ (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: _____    Email Address: _____

**1.   Amount of Claim as of Date Case Filed:** $ Please see the attachment

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** Please see the attachment.
(See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.   Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $ _____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____   Basis for perfection: _____
Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 09/21/09 | [signature]   Attorney-in-fact |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

ALVARO SANTODOMINGO MARTELL

## ATTACHMENT TO PROOF OF CLAIM

### of

### ALVARO SANTODOMINGO MARTELL

### against

### LEHMAN BROTHERS HOLDINGS INC.

1.      Commencing on September 15, 2008 (the *Petition Date*) and periodically thereafter, Lehman Brothers Holdings Inc. (*LBHI*) and certain of its subsidiaries (LBHI, together with such subsidiaries, the *Debtors*), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the *Bankruptcy Code*). The Debtors' chapter 11 cases are being jointly administered under Chapter 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. 2008).

2.      On July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the *Bankruptcy Court*) entered that certain *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* [Docket No. 4271] (the *Bar Date Order*) which, *inter alia*, establishes September 22, 2009 at 5:00 pm (ET) as the general deadline (the *Bar Date*) for each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit) to file proofs of claim based on prepetition claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors.

3.      This proof of claim (the *Proof of Claim*) is accordingly filed by Alvaro Santodomingo Martell (*Claimant*), for various obligations owed to him by LBHI, each as described further below.

ALVARO SANTODOMINGO MARTELL

4.      Claimant was an employee of Lehman Brothers beginning from July 14, 1997. He worked for various companies within the Lehman Brothers group, and on May 1, 2003 he formally became an employee of the Spanish Branch of Lehman Brothers International (Europe) (*LBIE*).

5.      On March 10, 2008, LBIE informed Claimant through delivery of a termination notice (the *Notice*) that it had decided to terminate his employment agreement (the *Termination Agreement*) as of that date (a copy of the Termination Agreement is included in the documents enclosed pursuant to paragraph 20 of this attachment to the Proof of Claim).

6.      Pursuant to the Termination Agreement, Claimant retained the right to receive 3,626 shares of LBHI stock together with any reinvested dividends declared in relation to any such shares representing deferred compensation not paid to Claimant between 2003 and 2007 inclusive, with a value equivalent to US$156,716 (described in paragraph 15 below). In addition, the Termination Agreement also expressly provided that Claimant would retain his right to the yield of the Lehman Brothers Partnership Account employee benefit program (the *Partnership Account Program*) (described in paragraph 10 below) according to its terms and conditions, and his right to receive the ITP Finders Fee (defined in paragraph 7 below) under its terms.

**A.      ITP Finders Fee**

7.      On November 5, 2004, Claimant received a memorandum (the *Memo*) from Charles Ayers, Managing Director of Lehman Brothers' Global Merchant Banking business, informing Claimant that LBHI was awarding to Claimant a notional participation (the

ALVARO SANTODOMINGO MARTELL

*Participation*) equal to 0.5% of the €18,600,000 that Lehman Brothers Merchant Banking Fund III (the *Fund*) had committed to invest in Industria de Turbopropulsores S.A. (the *Portfolio Investment*). LBHI undertook to pay to Claimant the implied gains on the Participation net of certain costs (the *ITP Finders Fee*) when the Portfolio Investment becomes fully realized (to date the Fund is still invested in the Portfolio Investment). The notional amount of the Participation is €93,000 (equal to 0.5% of the Fund's €18,600,000 investment).

8.    The Memo contains a schedule setting forth Claimant's entitlement to the total notional benefit of the ITP Finders Fee. According to the schedule, Claimant would be entitled to 50% of the ITP Finders Fee if he was employed for four years after he became a participant in the ITP Finders Fee program. However, the Termination Agreement provided that despite the fact that Claimant's benefit under the ITP Finders Fee program had not fully vested in accordance with the schedule set forth in the Memo, LBIE would treat Claimant as being fully vested for 100% of the ITP Finders Fee.

9.    Therefore, as of the Petition Date Claimant had, and still has, a claim against LBHI for an amount no less than 100% of the ITP Finders Fee determined on the date that the Fund fully realizes the Portfolio Investment. The amount of Claimant's contingent claims relating to the ITP Finders Fee cannot be reasonably calculated or estimated at this time, but Claimant does not waive its right to seek payment from LBHI by not currently stating a specified amount.

3

ALVARO SANTODOMINGO MARTELL

### B.    Partnership Account Program

10.    On July 12, 2000, Claimant received a letter from Richard Fuld, Chairman and CEO of LBHI (the *Fuld Letter*), introducing the Partnership Account Program, and informing Claimant that LBHI had automatically enrolled Claimant in the Partnership Account Program.    Under the Partnership Account Program, LBHI contributed for Claimant's benefit a certain amount of equity and leverage (the *Award*), which was invested in private equity funds managed by committees set up by LBHI for this purpose.    Pursuant to the Partnership Account Award Certificate issued by Lehman Brothers in favor of Claimant (the *Partnership Account Award Certificate*), Claimant's initial Award was US$70,000 and such Award fully vested 3 years after its grant date, on July 1, 2003.

11.    The last annual update Claimant received, dated June 17, 2008 (the *Award Update*), disclosed that the net value of Claimant's Award as of December 31, 2007 was US$21,315.

12.    Therefore, as of the date hereof, Claimant had, and still has, a claim against LBHI for no less than US$21,315 representing the value of his Award as of December 31, 2007.  However, Claimant expressly reserves the right to amend and/or supplement this claim should the value of his Award increase.  The amount of Claimant's contingent claims relating to the Award cannot be reasonably calculated or estimated at this time, but Claimant does not waive its right to seek payment from LBHI by not currently stating a specified amount.

4

ALVARO SANTODOMINGO MARTELL

### C.    Deferred Compensation

13.    Claimant, as a Lehman Brothers employee, received an annual compensation package that included a deferred compensation element awarded to Claimant in the form of contingent stock awards (each a *CSA*). Each CSA was, by the terms of the award, subject to a five-year holding period from the date that it was awarded to Claimant. During such time, Claimant was not permitted to sell, trade or pledge the CSA. The value of the deferred compensation awarded to Claimant in the form of a CSA (the *Grant Value*) was specified each year in an annual Total Compensation Statement delivered by LBHI to Claimant (each, a *Total Compensation Statement*), which summarized Claimants total compensation package for such year.

14.    Claimant is entitled to receive any dividends received in relation to any of Claimant's CSAs. If a dividend is declared on the stock forming part of a CSA, such dividend is automatically reinvested in additional stocks forming part of the relevant CSA and is subject to the same terms and conditions of the underlying CSA.

15.    Pursuant to the Termination Agreement, Claimant retained the right to receive a proportion of (a) the Grant Value awarded to Claimant plus (b) any stocks forming part of a CSA awarded through the automatic reinvestment of any dividends received in relation to any of Claimant's CSAs (the *Deferred Compensation*). A table showing the calculation of the Deferred Compensation (the *Deferred Compensation Calculation*) is included in the documents enclosed pursuant to paragraph 20 of this attachment to the Proof of Claim. Pursuant to the Deferred Compensation Calculation, LBHI is indebted and/or liable to Claimant for US$156,716.

5

ALVARO SANTODOMINGO MARTELL

16.    Therefore, as of the date of Termination Agreement, Claimant had, and still has, a claim against LBHI for US$156,716 representing the value of the Deferred Compensation to be paid by LBHI to Claimant. However, Claimant expressly reserves the right to amend and/or supplement this claim should the value of his Deferred Compensation increase.

17.    All LBIE counterparties (including Claimant) are beneficiaries of a guarantee of LBIE's liabilities, obligations and commitments given by LBHI. On June 9, 2005, the Executive Committee of the Board of Directors of LBHI passed a unanimous written consent evidencing LBHI's intention to fully guarantee the payment of all liabilities, obligations and commitments of certain of its subsidiaries, including LBIE (the *Written Consent*).

18.    On January 4, 2008, LBHI executed a guarantee pursuant to which LBHI absolutely and unconditionally guaranteed the payment by LBIE of all of LBIE's liabilities, obligations and commitments to any counterparty (including Claimant) of LBIE and such counterparty's successors, endorsees and assigns, together with accrued interest and charges, if any, along with all expenses including reasonable attorneys' fees incurred in order to enforce or obtain or endeavor to enforce or obtain payment thereof (the *LBHI Guarantee*, together with the Written Consent, the *Guarantee*).

19.    Claimant understood the obligation to pay the ITP Finders Fee, the value of the Award and the Deferred Compensation each to be an obligation of LBHI. If, however, the Bankruptcy Court finds that the obligation to pay any of the ITP Finders Fee, the value of the Award or the Deferred Compensation was in fact an obligation of LBIE or any other subsidiary of LBHI covered by the Guarantee, by virtue of the Guarantee, Claimant has

ALVARO SANTODOMINGO MARTELL

under the Guarantee a claim against LBHI for an amount no less than the sum of one or more of (a) the ITP Finders Fee determined on the date that the Fund fully realizes the Portfolio Investment, (b) US$21,315 representing the value of Claimant's Award as of December 31, 2007 and (c) US$156,716 representing the value of the Deferred Compensation to be paid by LBHI to Claimant. The amount of Claimant's contingent claims under the Guarantee relating to the ITP Finders Fee, the Award and the Deferred Compensation cannot be reasonably calculated or estimated at this time, but Claimant does not waive its right to seek payment from LBHI by not currently stating a specified amount. For the avoidance of doubt, this Proof of Claim constitutes written demand on LBHI for the payment of the guaranteed amount pursuant to the Guarantee.

20.    Claimant has annexed hereto as separate exhibits copies of the following documents referenced in this Proof of Claim: the Termination Agreement, the Memo, the Fuld Letter, the Partnership Account Award Certificate, the Award Update, the Written Consent, the LBHI Guarantee, the Total Compensation Statements and the Deferred Compensation Calculation.

**D.    Miscellaneous.**

21.    Claimant has filed this Proof of Claim under compulsion of the Bar Date Order and to protect Claimant from forfeiture of its claims against the Debtors by reason of the Bar Date. Claimant reserves the right to amend and/or supplement this Proof of Claim at any time, including after any bar date, in any manner, and/or to file additional proofs of claim for any additional claims which may be based on the same or additional documents or grounds of liability.

ALVARO SANTODOMINGO MARTELL

22.    The filing of this Proof of Claim shall be without prejudice to any previous, contemporaneous or future claims made by or on behalf of Claimant against LBHI or any of its affiliates in this or any other proceeding, including, without limitation, any proofs of claim filed against Lehman Brothers Inc. (*LBI*) under compulsion of that certain *Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Creditors; and Fixing Interim Reporting Pursuant to SIPA* [Docket No. 241] (the *LBI Bar Date Order*) which, *inter alia*, established (a) January 30, 2009 as the deadline by which all customers of LBI must file proofs of customer claim in LBI's liquidation proceeding in order to receive the maximum possible protection under the Securities Investor Protection Act of 1970, 15 U.S.C. §78aaa *et seq.* as amended (*SIPA*); and (b) June 1, 2009 as the deadline by which all creditors of LBI must file proofs of general claims in LBI's liquidation proceeding.

23.    Claimant hereby expressly reserves the right to amend and/or supplement this Proof of Claim at any time and in any manner, including, without limitation to assert: (a) claims for interest, fees, penalties, charges, attorneys fees and expenses accrued before or after the Petition Date; (b) claims for any future distributions or rights to distributions arising from any of the securities identified herein (*e.g.*, dividends, coupons, warrants, etc.); and (c) any claims arising from the successful prosecution or settlement (if any) of any avoidance causes of action (or any other cause of action seeking recovery of payments made to Claimant) against Claimant whether or not related to or arising from the transactions and agreements set forth herein. Claimant further reserves the right to file additional proofs of claim or applications for allowance of administrative expenses or other priority status in this

8

ALVARO SANTODOMINGO MARTELL

or any other proceeding arising from or related to the claims described herein, including for

treatment as provided in section 503(b) of the Bankruptcy Code.

24.    In executing and filing this Proof of Claim, Claimant does not waive (a) any

obligation owed to Claimant under the contracts described herein and attached as exhibits

hereto, or (b) any past, present or future breaches of such contracts by the Debtors or any of

their affiliates. Claimant further does not waive, and this Proof of Claim shall not be deemed

or construed to waive, any claims or right to assert any claims, or preserve any remedies,

Claimant has against any of the Debtors, LBI, LBIE or any other affiliates of the Debtors,

whether arising from or related to transactions described herein or otherwise.

25.    The filing of this Proof of Claim is not and shall not be deemed or construed

as: (a) a waiver or release of Claimant's rights against any person, entity, or property, or a

waiver of the right to compel the Debtors to return property of Claimant currently in the

possession of the Debtors; (b) a consent by Claimant to the jurisdiction of this Court or any

other court with respect to proceedings, if any, commenced in any case against or otherwise

involving Claimant; (c) a waiver or release of Claimant's right to trial by jury in this Court or

any other court in any proceeding as to any and all matters so triable herein, whether or not

the same be designated legal or private rights or in any case, controversy, or proceeding

related hereto, notwithstanding the designation or not of such matters as "core proceedings"

pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or

the United States Constitution; (d) a consent by Claimant to a jury trial in this Court or any

other court in any proceeding as to any and all matters so triable herein or in any case,

controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a

waiver or release of Claimant's right to have any and all final orders in any and all non-core

ALVARO SANTODOMINGO MARTELL

matters or proceedings entered only after *de novo* review by a United States District Court Judge or, if applicable, the Second Circuit Court of Appeals;  (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Claimant; or (g) an election of remedies.

26.    All notices regarding this Proof of Claim should be sent to:  Alvaro Santodomingo Martell, C/ Jose Silva 24, Bj-D, Madrid 28043, Spain, Telephone number +34639641050, with copies to Freshfields Bruckhaus Deringer US LLP, 520 Madison Avenue, 34th Floor,  New York, New York 10022, Telephone number: 212-277-4000, Attention:  Ellen Hayes / Rich Mertl.

ALVARO SANTODOMINGO MARTELL

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY**

**INFORMATION AND BELIEF:**

Alvaro Santodomingo Martell


By:  Ellen Hayes
Title:  Attorney-in-fact

# LEHMAN BROTHERS

**PRIVATE AND CONFIDENTIAL**

**2003 TOTAL COMPENSATION STATEMENT**

90000835

TO:    Alvaro Santodomingo

DEPT:    IBD : 82530 - IBD/913

FROM:    J Gich Roldan

DATE:    December 17, 2003

Please find below the details of your 2003 Total Compensation and any year-end awards:

### Total Compensation Summary

|  | EUR | USD |
|---|---|---|
| Salary |  |  |
| Total Bonus |  |  |
| **Total Compensation** |  |  |
| **Total Bonus** |  |  |
| Total Equity Award |  | 10,500 |
| Net Bonus Award |  |  |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 10,500 | 71.39 | 53.54 | 196.11 |
| **Total Equity Award** | **10,500** |  |  |  |

pre stock split

Your total CSA Award is based upon a Total Compensation of USD

When awarding the CSA Award the Firm has applied a discount of 25% to the market price of $71.39.

CSAs are subject to restrictions until November 2008, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2003 Award) will be available to view on LehmanLive during the second quarter of 2004. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

**Base Salary**

Your base salary has been increased to EUR 102,500 with effect from 1st December 2003.  You will receive this increase with your January pay along with arrears for December.

**Additional Information**

All other terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2003 Awards is contingent on you being employed by Lehman Brothers at, and not under any period of notice prior to, 31 January 2004.

# LEHMAN BROTHERS

**PRIVATE AND CONFIDENTIAL**

**2004 TOTAL COMPENSATION STATEMENT**

TO:       Alvaro Santodomingo                                        90000835

DEPT:     IBD : 82530 - IBD/913

FROM:     J Gich Roldan

DATE:     December 15, 2004

Please find below the details of your 2004 Total Compensation and any year-end awards:

## Total Compensation Summary

|  | USD |
|---|---|
| Paid Salary | |
| Total Bonus | |
| **Total Compensation** | |
| Total Bonus | |
| Total Equity Award | 31,500 |
| Net Bonus Award | |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 31,500 | 85.80 | 64.35 | 489.51 |
| **Total Equity Award** | **31,500** | | | |

*pre stock-split*

Your total CSA Award is based on a Total Compensation of USD ⋯ :C.

When awarding the CSA award the Firm has applied a discount of 25% to the market price of $ 85.80. CSAs are subject to restrictions until 30 November 2009, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2004 Award) will be available on LehmanLive, keyword "equityaward", during the second quarter of 2005. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

**Base Salary**

Your base salary has increased to EUR 112,500 with effect from 1st December 2004. You will receive this increase with your January pay along with arrears for December.

**Additional Information**

Where applicable, paid salary and other paid compensation has been converted at the rate of 1 USD = EUR 0.8153.

All terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2004 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2005.

# LEHMAN BROTHERS

**PRIVATE AND CONFIDENTIAL**

**2005 TOTAL COMPENSATION STATEMENT**

| | | |
|---|---|---|
| TO: | Alvaro Santodomingo | 90000835 |
| DEPT: | IBD : 82530 - IBD/913 | |
| FROM: | J Gich Roldan | |
| DATE: | December 14 2005 | |

Please find below the details of your 2005 Total Compensation and any year-end awards:

**Total Compensation Summary**

| | EUR |
|---|---|
| Paid Salary | |
| Total Bonus | |
| **Total Compensation** | - |
| Total Bonus | |
| Total Equity Award | 43,384 |
| Net Bonus Award | |

**Equity Award Detail**

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 55,000 | 126.00 | 94.50 | 582.01 |
| **Total Equity Award** | **55,000** | | | |

*pre stock split*

Your total CSA Award is based on a Total Compensation of USD          (for the purposes of calculating the CSA Award ONLY).

When awarding the CSA award the Firm has applied a discount of 25% to the market price of $ 126.00. CSAs are subject to restrictions until 30 November 2010, they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2005 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2006. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

**Base Salary**

Your base salary has increased to EUR 120,000 with effect from 1 December 2005. You will receive this increase with your January pay retroactive to December 2005.

**Additional Information**

All terms and conditions of your employment with the Company remain unchanged.

Entitlement to your 2005 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2006.

# LEHMAN BROTHERS

**PRIVATE AND CONFIDENTIAL**

**2006 TOTAL COMPENSATION STATEMENT**

TO:     Alvaro Santodomingo                                                90000835

DEPT:   IBD : 82530 - IBD/913

FROM:   C Meissner, P Hoffmeister

DATE:   December 13 2006

Please find below the details of your 2006 Total Compensation and any year-end awards:

**Total Compensation Summary**

|                      | EUR | USD |
|----------------------|-----|-----|
| Paid Salary          |     |     |
| Total Bonus          |     |     |
| Total Compensation   |     |     |
| Total Bonus          |     |     |
| Total Equity Award   |     | 48,300 |
| Net Bonus Award      |     |     |

**Equity Award Detail**

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|-------------|-----------------|---------------|-----------------|--------------|
| CSAs        | 48,300          | 77.03         | 57.77           | 836.07       |
| **Total Equity Award** | 48,300 |         |                 |              |

Your total CSA Award is based on a Total Compensation of

When awarding the CSA award the Firm has applied a discount of 25% to the market price of $ 77.03. CSAs are subject to restrictions until 30 November 2011; they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2006 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2007. All terms and conditions of the CSA Awards are subject to the controlling plan documents.

**Base Salary**

Your base salary has increased to EUR 130,000 with effect from 1 December 2006.

**Additional Information**

All terms and conditions of your employment remain unchanged.

Entitlement to your 2006 Awards are contingent on you being employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2007.

# LEHMAN BROTHERS

PRIVATE AND CONFIDENTIAL

## 2007 TOTAL COMPENSATION STATEMENT

| | | | |
|---|---|---|---|
| TO: | Alvaro Santodomingo | ID | 90000835 |
| DEPT: | IBD : 82530 - IBD/913 | | |
| FROM: | P. Hoffmeister, C. Meissner | | |
| DATE: | December 13, 2007 | | |

Please find below the details of your 2007 Total Compensation and any year-end awards:

### Total Compensation Summary

| | USD |
|---|---|
| Paid Salary | |
| Total Bonus | |
| **Total Compensation** | |
| Total Bonus | |
| Total Equity Award | 43,843 |
| Net Bonus Award | |

### Equity Award Detail

| Equity Type | USD Award Value | USD Mkt Price | USD Grant Price | No. of Units |
|---|---|---|---|---|
| CSAs | 43,843 | 63.47 | 47.60 | 921.08 |
| **Total Equity Award** | 43,843 | | | |

Your total Contingent Stock Award (CSAs) is based on a Total Compensation of USD .

When awarding the CSA award Lehman Brothers Holdings Inc has applied a discount of 25% to the market price of $ 63.47. CSAs are subject to restrictions until 30 November 2012; they cannot be sold, traded or pledged before then.

A full summary of all your outstanding CSA Awards (including your 2007 Award) will be available on LehmanLive, keyword "equityaward", during the first quarter of 2008. All terms and conditions of the CSA Awards are subject to the controlling plan documents, including the FY 2007 equity award agreements (expected to be finalised in early 2008), the 2005 Stock Incentive Plan and related Prospectus.

### Salary

Your salary has increased to EUR 140,000 with effect from 1 December 2007.

### Additional Information

The notional total value of your 2007 compensation, including the grant-date value of the discount portion of the CSAs awarded under the Equity Award Program, is USD 364,614. To receive the full benefit of the CSA award, including the discount portion, you must remain an employee of Lehman Brothers for five years and comply with the terms of the Program.

Where applicable, paid salary and other paid compensation has been converted at the rate of 1 USD = EUR 0.7431.

All terms and conditions of your employment remain unchanged.

To be eligible for your 2007 bonus award you must be employed by Lehman Brothers at, and not under notice either given or received prior to, 31 January 2008.

ALVARO SANTODOMINGO MARTELL

## ATTACHMENT 9

### Deferred Compensation Calculation

| Total Compensation Statement [1] | Deferred Compensation<br><br>Grant Value ("A") | Number of CSAs Granted ("B") | Grant Price per CSA ("C" = A / B) | Deferred Compensation<br><br>Number of CSAs as per Termination Agreement ("D") | Deferred Compensation<br><br>Value of pending CSAs (C x D) as per Termination Agreement |
|---|---|---|---|---|---|
| 2007 | $43,843 | 921.08 | $47.60 | 690.81 | $32,882.3 |
| 2006 | $48,300 | 836.07 | $57.77 | 627.06 | $36,225.4 |
| 2005 [2] | $55,000 | 1,164.00 | $47.25 | 989.42 | $46,750.1 |
| 2004 [3] | $31,500 | 979.00 | $32,175 | 881.10 | $28,349.4 |
| 2003 [4] | $10,500 | 392.22 | $26.77 | 372.60 | $9,974.5 |
| Dividends reinvested | | | $38.63 [5] | 65.6 | $2,534.1 |
| TOTAL | $189,143 | 4292,41 | | 3,626.6 | $156,716 |

(1) 2003, 2004 and 2005 number of CSAs granted and the Grant Price per CSA have been adjusted to reflect the Lehman Brothers 2x1 stock split that took place after 2005. Number of CSAs as per Total Compensation Statement are therefore multiplied by 2, and the Grant Price as per Total Compensation Statement is divided by 2, maintaining the same Grant Value. The Termination Agreement Annex includes a summary table with the split adjusted number of CSAs granted to Claimant.

(2) Pre-split figures specified in the 2005 Total Compensation Statement amount to 196.11 CSAs at a Grant Price of $53.54
(3) Pre-split figures specified in the 2004 Total Compensation Statement amount to 489.51 CSAs at a Grant Price of $64.35
(4) Pre-split figures specified in the 2003 Total Compensation Statement amount to 582.01 CSAs at a Grant Price of $94.50
(5) Weighted average of Grant Prices