THE THREE HUNDRED TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS
SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.
PARTIES RECEIVING THIS NOTICE OF THE THREE HUNDRED TWENTY-
EIGHTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS
OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN
THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO
DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).

IF YOU HAVE QUESTIONS, PLEASE CONTACT
LEHMAN BROTHERS HOLDINGS INC.'S
COUNSEL, ERIKA DEL NIDO, AT (212)-310-8323.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                            :   Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,         :   08-13555 (JMP)
                                                 :
                    Debtors.                     :   (Jointly Administered)
-------------------------------------------------------------------x

NOTICE OF HEARING ON THREE HUNDRED
TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

PLEASE TAKE NOTICE that on July 10, 2012, Lehman Brothers Holdings Inc.

("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc. and Its Affiliated Debtors for certain entities in the above-

referenced chapter 11 cases, filed its three hundred twenty-eighth omnibus objection to claims

(the "Three Hundred Twenty-Eighth Omnibus Objection to Claims"), and that a hearing to

consider the Three Hundred Twenty-Eighth Omnibus Objection to Claims will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United

States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York,

New York 10004, on **August 23, 2012 at 10:00 a.m. (Prevailing Eastern Time)**, or as soon

thereafter as counsel may be heard.

      **PLEASE TAKE FURTHER NOTICE** that any responses to the Three Hundred

Twenty-Eighth Omnibus Objection to Claims must be in writing, shall conform to the Federal

Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed

with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which

can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing

system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable

Document Format (PDF), WordPerfect, or any other Windows-based word processing format

(with a hard copy delivered directly to Chambers), in accordance with General Order M-182

(which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General

Order M-399, upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New

York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq., and Mark

Bernstein, Esq.); and (iii) the Office of the United States Trustee for Region 2, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta

Gasparini, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than

**August 9, 2012 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Three Hundred Twenty-Eighth Omnibus Objection to Claims or any

2

claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Three Hundred Twenty-Eighth Omnibus Objection to Claims, which order may be entered with

no further notice or opportunity to be heard offered to any party.

Dated: July 10, 2012
      New York, New York

                /s/ Jacqueline Marcus
                Jacqueline Marcus

                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007

                Attorneys for Lehman Brothers Holdings Inc.
                and Certain of Its Affiliates

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
In re                                    :    Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                         :
                      Debtors.           :    (Jointly Administered)
-------------------------------------------------------------------x
```

## THREE HUNDRED TWENTY-EIGHTH OMNIBUS
## OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

---

**THIS THREE HUNDRED TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS
SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.
PARTIES RECEIVING THIS THREE HUNDRED TWENTY-EIGHTH OMNIBUS
OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE
IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS
OBJECTION AND/OR IN THE EXHIBIT ATTACHED HERETO TO DETERMINE
WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT
LEHMAN BROTHERS HOLDINGS INC.'S
COUNSEL, ERIKA DEL NIDO, AT (212)-310-8323.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced

chapter 11 cases (the "Chapter 11 Estates"), respectfully represents as follows:

### Relief Requested

1.      LBHI files this omnibus objection to claims, pursuant to section 502(b) of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures

for the filing of omnibus objections to proofs of claim [ECF No. 6664] (the "Procedures Order"),

seeking to disallow and expunge certain claims for which Lehman Commercial Paper Inc.

("LCPI") and LBHI have no liability.

2.      The proofs of claim listed on Exhibit A annexed hereto (collectively, the

"No Liability Claims") were (i) filed against LCPI or LBHI based upon alleged or potential

liabilities arising out of certain credit agreements to which LCPI or LBHI were parties or (ii)

filed as protective claims against LCPI.  Because no damages were suffered, damages were

waived, and/or the conditions that might establish liability never occurred, LCPI and LBHI are

not liable for the No Liability Claims, and the No Liability Claims should be expunged and

disallowed in their entirety.

2

## Jurisdiction

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

4.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), the Chapter 11 Estates commenced with this Court

voluntary cases under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

5.    On January 14, 2010, the Court entered the Procedures Order, which

authorizes the filing of omnibus objections to up to 500 claims at a time, on various grounds,

including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in

the Procedures Order.

6.    On December 6, 2011, the Court entered an order confirming the Plan

[ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan

Administrator is authorized to interpose and prosecute objections to claims filed against the

Chapter 11 Estates.

## The No Liability Claims

### *Landesbank Baden-Wurttemberg*

7.    Landesbank Baden-Wurttemberg, New York Branch ("Landesbank") filed

(i) claim number 22730 as a contingent claim against LBHI in an unliquidated amount on

September 21, 2009 and (ii) claim number 22749 as a contingent claim against LCPI in an

unliquidated amount on September 21, 2009 (together, the "Landesbank Claims").  The

Landesbank Claims arise from that certain intercreditor agreement dated as of February 20,

3

2007, among Landesbank (as successor-in-interest to LBHI), as agent for itself and one or more

co-lenders and as senior lender, and State Street Bank (as successor-in-interest to LBHI and/or

LCPI), as mezzanine lender (the "Landesbank Intercreditor Agreement").

8.      The Landesbank Claims assert that LBHI and/or LCPI may be liable in the

event that LBHI and/or LCPI (i) remained liable under the Landesbank Intercreditor Agreement

following the transfer of its interests therein to Landesbank or (ii) have indemnification

obligations to Landesbank.   Inasmuch as no damages have arisen under the Landesbank

Intercreditor Agreement, and LBHI and LCPI have no further liability to Landesbank, the

Landesbank Claims should be disallowed and expunged in their entirety.

### *BRE Bank SA*

9.      BRE Bank SA ("BRE Bank") filed a protective claim, claim number

15294, against LCPI in an amount not less than $22,513,133.40 on September 17, 2009 (the

"BRE Bank Claim").  BRE Bank and Lehman Brothers International Europe ("LBIE") were

parties to that certain ISDA Master Agreement, dated October 10, 1997 (the "ISDA Master").

BRE Bank posted collateral under the ISDA Master (the "Posted Collateral") in the amount of

$22,513,133.40 to an account with Citibank, N.A. (SWIFT Code: CITIUS33, No. 406-101-37)

(the "Account").  The BRE Bank Claim was filed "in a protective capacity in the event LBIE

transferred any or all of the Posted Collateral LBIE held for BRE's benefit to LCPI or one of its

affiliates."  *See* BRE Bank Claim, ¶2.

10.     Based upon a review of its account database and books and records, the

Chapter 11 Estates have determined that the Account is exclusively an LBIE account.  LBIE is

not one of the Chapter 11 Estates, and a claim against LBIE does not result in a valid claim

against the Chapter 11 Estates.  Furthermore, none of LCPI's records reflect that the Posted

Collateral was transferred from the Account to LCPI.  The BRE Bank Claim should, therefore, be disallowed and expunged in its entirety.

### *Spanish Broadcasting System, Inc.*

11.     Spanish Broadcasting System, Inc. ("Spanish Broadcasting") filed a proof of claim number 67707 against LCPI in the amount of $55,462,228.33 on November 3, 2011 (the "Spanish Broadcasting Claim").  The Spanish Broadcasting Claim amends proof of claim number 15941 filed against LCPI on September 18, 2009, which claim was expunged pursuant to the *Order Granting Debtors' Two Hundred Thirty-Seventh Omnibus Objection to Claims (Amended and Superseded Claims)*, dated January 26, 2012 [ECF No. 24682].

12.     The Spanish Broadcasting Claim arises from that certain Credit Agreement, dated as of June 10, 2005, among Spanish Broadcasting, as borrower, LCPI, as administrative agent, and certain other parties (the "Spanish Broadcasting Credit Agreement").  Spanish Broadcasting alleges that on October 3, 2008, it requested funding in the amount of $25 million from its revolving facility under the Spanish Broadcasting Credit Agreement.  Spanish Broadcasting asserts that it only received $15 million of the $25 million it requested, due to LCPI's failure to fund its $10 million portion of the draw request.

13.     Of the approximately $55 million in damages that Spanish Broadcasting asserts, Spanish Broadcasting alleges that it suffered $39,600,000.00 in damages due a larger-than-anticipated decline in its total invested capital, which Spanish Broadcasting defines as "the market value of common equity, preferred equity, long-term debt, cash, and minority interest" (the "Alleged Capital Loss Damages").

14.     Spanish Broadcasting asserts that it is party to that certain Hedge Amendment and Settlement Agreement, dated as of June 17, 2010, and that certain ISDA Master

5

Agreement, dated as of June 28, 2005 (together, the "LBSF Swap Agreements") with Lehman

Brothers Special Financing, Inc. ("LBSF").  Spanish Broadcasting asserts that it would have

been required to pay $6,008,991.58 to LBSF to terminate the LBSF Swap Agreements on

October 3, 2008.  Spanish Broadcasting alleges that it intended to use the funds from its $10

million draw request to terminate the LBSF Swap Agreements, and LCPI's failure to fund the

draw request resulted in damages of $9,886,745.00 (the "Alleged Swap Termination Damages").

15.    Section 10.12 of the Spanish Broadcasting Credit Agreement, the relevant

portion of which is attached hereto as Exhibit B, provides, in pertinent part, that:

> The Borrower hereby irrevocably and unconditionally . . . (e)
> waives, to the maximum extent not prohibited by law, any right it
> may have to claim or recover in any legal action or proceeding
> referred to in this Section any special, exemplary, punitive or
> consequential damages.

16.    Black's Law Dictionary defines consequential damages as "[l]osses that

do not flow directly and immediately from an injurious act but that result indirectly from the

act." BLACK'S LAW DICTIONARY (9th ed. 2009).  The Spanish Broadcasting Claim seeks almost

$50,000,000 in damages that allegedly arise from a failure to fund approximately $10,000,000 in

advances.  The Alleged Capital Loss Damages and the Alleged Swap Termination Damages

asserted in the Spanish Broadcasting Claim are barred by the waiver of consequential damages

set forth in section 10.12 of the Spanish Broadcasting Credit Agreement.  Accordingly, Spanish

Broadcasting is not entitled to collect the Alleged Capital Loss Damages and the Alleged Swap

Termination Damages, and those portions of the Spanish Broadcasting Claim should be

disallowed and expunged.

17.    Spanish Broadcasting asserts that LCPI is liable for $273,333.33 in

revolver fees that Spanish Broadcasting paid to LCPI (the "Alleged Fee Damages").  Spanish

6

Broadcasting paid $105,000 to LCPI on June 11, 2005, the day after the Spanish Broadcasting

Credit Agreement was executed, and this fee was earned by LCPI at such time. Since June 30,

2005, Spanish Broadcasting made monthly payments of fees to LCPI in the aggregate amount of

approximately $168,333. LCPI earned these fees because LCPI complied with its obligations

under the Spanish Broadcasting Credit Agreement until the Commencement Date, and Spanish

Broadcasting does not have a right to recover fees it previously paid to LCPI that LCPI has fully

earned. Accordingly, the portion of the Spanish Broadcasting Claim for Alleged Fee Damages

should be disallowed and expunged.

18.    Spanish Broadcasting asserts a claim in the amount of $5,702,150.00 for

Spanish Broadcasting's cost to replace the $10 million revolver commitment that LCPI failed to

fund. Spanish Broadcasting provides no evidence that it obtained a $10 million replacement loan

and no evidence that it suffered damages in connection with any replacement loan it may have

obtained (the "Alleged Replacement Capital Damages"). Absent any proof that the Alleged

Replacement Capital Damages were suffered, the portion of the Spanish Broadcasting Claim for

Alleged Replacement Capital Damages should be disallowed and expunged.

### *Frederick J. Grede, as Liquidation Trustee*

19.    Frederick J. Grede, as liquidation trustee of the Sentinel Liquidation Trust

and the Estate of Sentinel Management Group, Inc., filed claim number 33238 in the amount of

$1,237,560.20 against LCPI on September 22, 2009 (the "Sentinel Claim"). The Sentinel Claim

arises from that certain Master Repurchase Agreement dated as of December 20, 2000 (the

"Sentinel MRA"), among Lehman Brothers Inc. ("LBI"), LCPI, and Sentinel Management

Group, as agent for its clients ("Sentinel"). The Sentinel Claim asserts that in August 2007,

"Lehman" began unwinding certain repurchase agreement transactions with Sentinel and realized

$1,237,560.20 in surplus proceeds from the liquidation of certain collateral that Sentinel

transferred to "Lehman" pursuant to certain repurchase agreement transactions (the "Surplus

Proceeds").  The Sentinel Claim seeks the return of the Surplus Proceeds.

20.    Annex 1 to the Sentinel MRA, attached hereto as Exhibit C states:

> With respect to individual repurchase transactions, this Agreement
> shall only apply to the Lehman Brothers entity (i.e. Lehman
> Brothers Inc., Lehman Commercial Paper Inc.) printed in the
> confirmation (as described in Section 3(b) herein) provided to the
> counterparty of the Lehman Brothers entity.

21.    The supporting documentation attached to the Sentinel Claim and the

relevant books and records show that all confirmations under the Sentinel MRA were between

LBI and Sentinel.  LCPI was not a party to any confirmations with Sentinel under the Sentinel

MRA, and as such, LCPI has no liability to Sentinel under the Sentinel MRA.  Accordingly, the

Sentinel Claim should be disallowed and expunged in its entirety.

### *Aurelius*

22.    Aurelius Capital Partners, LP ("Aurelius Capital") filed claim number

65944, in an unliquidated amount against LCPI on December 15, 2009 (the "Aurelius Capital

Claim").  The Aurelius Capital Claim amends a claim that Aurelius Capital filed, claim number

30591, in an unliquidated amount against LCPI on September 22, 2009, which claim was

disallowed and expunged pursuant to the *Order Granting the Debtors' Tenth Omnibus Objection*

*to Claims (Amended and Superseded Claims)*, dated July 13, 2010 [ECF No. 10165].

23.    Aurelius Capital Master, Ltd. ("Aurelius Capital Master" and together

with Aurelius Capital, "Aurelius") filed claim number 65945, in an unliquidated amount against

LCPI on December 15, 2009 (the "Aurelius Capital Master Claim" and together with the

Aurelius Capital Claim, the "Aurelius Claims").  The Aurelius Capital Master Claim amends a

claim that Aurelius Capital Master filed, claim number 30592, in an unliquidated amount against LCPI on September 22, 2009, which claim was disallowed and expunged pursuant to the *Order Granting the Debtors' Tenth Omnibus Objection to Claims (Amended and Superseded Claims)*, dated July 13, 2010 [ECF No. 10165].

24.     Aurelius asserts that it purchased certain indebtedness, claims or other interests (the "Purchased Interests"), either directly or indirectly from LCPI, pursuant to various Loan Syndications and Trading Association (LSTA) Purchase and Sale Agreements for Distressed Trades (collectively, the "Aurelius Purchase and Sale Agreements"). Aurelius asserts contingent and protective claims against LCPI based upon (i) certain representations, warranties and indemnities that LCPI allegedly made in favor of Aurelius when LCPI sold the Purchased Interests to Aurelius or (ii) certain representations, warranties and indemnities that Aurelius asserts were made in its favor when Aurelius indirectly acquired the Purchased Assets.

25.     Aurelius admits in the Aurelius Claims that it is not aware of any claims it has against LCPI under the Aurelius Purchase and Sale Agreements but merely seeks preserve potential contingent and unliquidated claims against LCPI. Inasmuch as LCPI has no liability to Aurelius under the Aurelius Purchase and Sale Agreements, the Aurelius Claims should be disallowed and expunged in their entirety.

### *ING Bank N.V.*

26.     ING Bank N.V., Frankfurt Branch ("ING") filed claim number 24341 in the amount of $4,505,550.00 against LCPI on September 21, 2009 (the "ING Claim"). The ING Claim arises from ING's participation in that certain Senior Facility Agreement, dated as of August 8, 2007, as amended and restated on August 16, 2007, among Delek Benelux, as borrower, LBIE, as lead arranger, bookrunner, agent, and security agent, LCPI UK Branch, as

funded issuing bank, and certain other parties (the "Facility Agreement").  On September 3,

2007, ING transferred EUR 12,500,000.00 to LBIE, the agent, and LBIE, as security agent, held

such funds for the purposes of establishing a funded letter of credit facility (the "Funded

Facility").  As of September 15, 2008, ING's share of the Funded Facility was EUR

3,125,000.00 (the "ING Cash"), which ING converted to dollars and for which ING asserts a

claim in the amount of $4,505,550.00.

27.       LCPI does not have access to the ING Cash, which, in accordance with the

Facility Agreement, was deposited in an LBIE account.  LBIE is not one of the Chapter 11

Estates, and a claim against LBIE does not result in a valid claim against the Chapter 11 Estates.

The ING Claim should, therefore, be disallowed and expunged in its entirety.

### The No Liability Claims Should Be Disallowed and Expunged

28.       Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  A proof

of claim is "deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  If an

objection refuting at least one of the claim's essential allegations is asserted, the claimant has the

burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389

(Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr.

LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524,

539 (Bankr. S.D.N.Y. 2000).

29.       In its review of the claims filed on the claims register in these chapter 11

cases, the Plan Administrator has identified the No Liability Claims as claims based upon

potential or alleged damages for which the Chapter 11 Estates are not liable, because no damages

were suffered, damages were waived, and/or the conditions that might establish liability never occurred.

30.    Unless the No Liability Claims are disallowed and expunged, parties who do not hold valid claims against the Chapter 11 Estates may nonetheless recover from their estates.  The Plan Administrator respectfully requests the Court enter an order disallowing and expunging the No Liability Claims in their entirety.

## Reservation of Rights

31.    The Plan Administrator reserves all rights to object on any other basis to any No Liability Claim, or any portion thereof, as to which the relief requested herein is not granted.

## Notice

32.    No trustee has been appointed in these chapter 11 cases.  Notice of this objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for Region 2; (v) each claimant listed on Exhibit A; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

33.    No previous request for the relief sought herein has been made by the Plan

11

Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order

granting the relief requested herein and such other and further relief as is just.

Dated: July 10, 2012
New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**EXHIBIT A**

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 328: EXHIBIT A – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 1 | AURELIUS CAPITAL PARTNERS, LP C/O AURELIUS CAPITAL MANAGEMENT, LP 535 MADISON AVENUE, 22ND FLOOR NEW YORK, NY 10022 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 12/15/2009 | 65944 | Undetermined* |
| 2 | AURELIUS INVESTMENT, LLC TRANSFEROR: AURELIUS CAPITAL MASTER LTD C/O AURELIUS CAPITAL MANAGEMENT, LP ATTN: PATRICK VANCE 535 MADISON AVE., 22ND FLOOR NEW YORK, NY 10022 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 12/15/2009 | 65945 | Undetermined* |
| 3 | CVI GVF LUXEMBOURG TWELVE S.A.R.L. TRANSFEROR: BRE BANK SA C/O CARVAL INVESTORS UK LIMITED KNOWLE HILL PARK SURREY, KT11 2PD UNITED KINGDOM | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/17/2009 | 15294 | $22,513,133.40* |
| 4 | FREDERICK J. GREDE, AS LIQUIDATION TRUSTEE OF THE SENTINEL LIQUIDATION TRUST AND THE ESTATE OF SENTINEL MANAGEMENT GROUP, INC. C/O JENNER & BLOCK LLP 353 N. CLARK STREET CHICAGO, IL 60654-3456 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/22/2009 | 33238 | $1,237,560.20 |
| 5 | ING BANK N.V., FRANKFURT BRANCH HAHNSTRASSE 49 FRANKFURT AM MAIN, 60528 GERMANY | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/21/2009 | 24341 | $4,505,550.00 |

* - Indicates claim contains unliquidated and/or undetermined amounts

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 328: EXHIBIT A – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 6 | LANDESBANK BADEN-WURTTEMBERG NEW YORK BRANCH, AS AGENT C/O ROBERT W. FAGIOLA, ESQ SHEARMAN & STERLING LLP 599 LEXINGTON AVENUE NEW YORK, NY 10022 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22730 | Undetermined* |
| 7 | LANDESBANK BADEN-WURTTEMBERG NEW YORK BRANCH, AS AGENT C/O ROBERT W. FAGIOLA, ESQ SHEARMAN & STERLING LLP 599 LEXINGTON AVENUE NEW YORK, NY 10022 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/21/2009 | 22749 | Undetermined* |
| 8 | SPANISH BROADCASTING SYSTEM, INC. ATTN: JOSEPH A. GARCIA, CHIEF FINANCIAL OFFICER 2601 S. BAYSHORE DR., PH2 COCONUT GROVE, FL 33133 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 11/03/2011 | 67707 | $55,462,228.33* |
| | | | | | TOTAL | $83,718,471.93 |

* - Indicates claim contains unliquidated and/or undetermined amounts

**EXHIBIT B**

US_ACTIVE:\44030973\5\58399.0008

$350,000,000

FIRST LIEN CREDIT AGREEMENT

AMONG

SPANISH BROADCASTING SYSTEM, INC.,
AS BORROWER,
THE LENDERS
FROM TIME TO TIME PARTY HERETO,

AND

MERRILL LYNCH, PIERCE FENNER & SMITH, INCORPORATED
AS SYNDICATION AGENT,

AND

WACHOVIA BANK, NATIONAL ASSOCIATION
AS DOCUMENTATION AGENT,

AND

LEHMAN COMMERCIAL PAPER INC.,
AS ADMINISTRATIVE AGENT
DATED AS OF JUNE 10, 2005

---

LEHMAN BROTHERS INC.
LEAD ARRANGER AND SOLE MANAGER,

AND

LEHMAN BROTHERS INC.,
MERRILL LYNCH, PIERCE FENNER & SMITH, INCORPORATED,
AND

WACHOVIA CAPITAL MARKETS, LLC
AS ARRANGERS

9380120.19.BUSINESS

executed signature page of this Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof. A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Administrative Agent.

10.9. <u>Severability</u>. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

10.10. <u>Integration</u>. This Agreement and the other Loan Documents represent the agreement of the Borrower, the Agents, the Arrangers and the Lenders with respect to the subject matter hereof, and there are no promises, undertakings, representations or warranties by any Loan Party, any Arranger, any Agent or any Lender relative to subject matter hereof not expressly set forth or referred to herein or in the other Loan Documents.

10.11. <u>GOVERNING LAW</u>. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

10.12. <u>Submission To Jurisdiction; Waivers</u>. The Borrower hereby irrevocably and unconditionally:

(a) submits for itself and its Property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of the courts of the State of New York situated in the County of New York, the courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

(b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to the Borrower at its address set forth in Section 10.2 or at such other address of which the Administrative Agent shall have been notified pursuant thereto;

(d) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e) waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

-95-

# **EXHIBIT C**

# ANNEX I
## Supplemental Terms and Conditions

This Annex forms a part of the Master Repurchase Agreement dated as of <u>December 20, 2000</u> (the "Agreement") between Lehman Brothers Inc., Lehman Commercial Paper Inc., and Sentinel Management Group as agent for its clients.
Capitalized terms used but not defined in this Annex I shall have the meanings ascribed to them in the Agreement.

1.  In addition to this Annex I and Annex II, Annex III, Party Acting as Agent shall be executed by the parties hereto to the extent applicable, and shall also form a part of the Agreement.

2.  With respect to individual repurchase transactions, this Agreement shall only apply to the Lehman Brothers entity (i.e. Lehman Brothers Inc., Lehman Commercial Paper Inc.) printed in the confirmation (as described in Section 3(b) herein) provided to the counterparty of the Lehman Brothers entity.

3.  <u>Definitions.</u> For purposes of the Agreement, the following terms shall have the following meanings:
    "Margin Notice Deadline", 10:00 am New York City time.
    "Business Day" or "business day", with respect to any Transaction hereunder, a day on which regular trading may occur in the principal market for the Purchased Securities subject to such Transaction. In no event shall a Saturday or Sunday be considered a business day.

4.  <u>Purchase Price Maintenance.</u>
    (a) Unless otherwise expressly agreed by the parties hereto, the parties agree that in any Transaction hereunder whose term extends over an income payment date for the Securities subject to such Transaction, Buyer shall on the date such income is paid transfer to or credit to the account of Seller an amount equal to such income payment or payments pursuant to Paragraph 5(i) and shall not apply the income payment or payments to reduce the amount to be transferred to Buyer or Seller upon termination of the Transaction pursuant to Paragraph 5(ii) of the Agreement.
    (b) Unless otherwise expressly agreed by the parties hereto, notwithstanding the definition of Purchase Price in Paragraph 2 of the Agreement and the provisions of Paragraph 4 of the Agreement, the parties agree (i) that the Purchase Price will not be increased or decreased by the amount of any cash transferred by one party to the other pursuant to Paragraph 4 of the Agreement and (ii) that transfer of cash shall be treated as if it constituted a transfer of Securities (with a Market Value equal to the U.S. dollar amount of such cash) pursuant to Paragraph 4(a) or (b), as the case may be (including for purposes of the definition of "Additional Purchased Securities").

5.  <u>Submission to Jurisdiction and Waiver of Immunity.</u>
    (a) Each party irrevocably and unconditionally (i) submits to the non-exclusive jurisdiction of any United States Federal or New York State court sitting in Manhattan, and any appellate court from any such court, solely for the purpose of any suit, action or proceeding brought to enforce its obligations under the Agreement and (ii) waives, to the fullest extent it may effectively do so, any defense of an inconvenient forum to the maintenance of such action or proceeding in any such court and any right of jurisdiction on account of its place of residence or domicile.
    (b) To the extent that either party has or hereafter may acquire any immunity (sovereign or otherwise) from any legal action, suit, or proceeding, from jurisdiction of any court or from set off or any legal process (whether service or notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) with respect to itself or any of its property, such party hereby irrevocably waives and agrees not to plead or claim such immunity in respect of any action brought to enforce its obligations under the Agreement or relating in any way to the Agreement or any Transaction under the Agreement.

6.  **Substitution**
    The following two subparagraphs shall be added to Paragraph 9 of the Agreement:

    (c) In the case of any Transaction for which the Repurchase Date is other than the business day immediately following the Purchase Date and with respect to which Seller does not have any existing right to substitute substantially the same Securities for the Purchased Securities, Seller shall have the right, subject to the proviso to this sentence, upon notice to Buyer, which notice shall be given at or prior to 10 am (New York time) on such business day, to substitute substantially the same Securities for any Purchased Securities, *provided, however*, that Buyer may elect, by the close of business on the business day notice is received, or by the close of the next business day if notice is given after 10 am (New York time) on such day, not to accept such substitution. In the event such substitution is accepted by Buyer, such substitution shall be made by Seller's transfer to Buyer of such other Securities and Buyer's transfer to Seller of such Purchased Securities, and after substitution, the substituted Securities shall be deemed to be Purchased Securities. In the event Buyer elects not to accept such substitution, Buyer shall offer Seller the right to terminate the Transaction.

    (d) In the event Seller exercises its right to substitute or terminate under sub-paragraph (c), Seller shall be obligated to pay to Buyer, by the close of the business day of such substitution or termination, as the case may be, an amount equal to (A) Buyer's actual cost (including all fees, expenses and commissions) of (i) entering into replacement transactions; (ii) entering into or terminating hedge transactions; and/or (iii) terminating transactions or substituting securities in like transactions with third parties in connection with or as a result of such substitution or termination, *and* (B) to the extent Buyer determines not to enter into replacement transactions, the loss incurred by Buyer directly arising or resulting from such substitution or termination. The foregoing amounts shall be solely determined and calculated by Buyer in good faith.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                    :        **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                                         :
                          **Debtors.**                   :        **(Jointly Administered)**
-------------------------------------------------------------------x

## ORDER GRANTING THREE HUNDRED
## TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

Upon the three hundred twenty-eighth omnibus objection to claims, dated July 10, 2012 (the "Three Hundred Twenty-Eighth Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664], seeking to disallow and expunge the No Liability Claims, all as more fully described in the Three Hundred Twenty-Eighth Omnibus Objection to Claims; and due and proper notice of the Three Hundred Twenty-Eighth Omnibus Objection to Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Three Hundred Twenty-Eighth Omnibus Objection to Claims is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Three Hundred Twenty-Eighth  Omnibus Objection to Claims establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---
[1] Terms not defined herein shall have the same meaning ascribed to them in the Three Hundred Twenty-Eighth Omnibus Objection to Claims.

ORDERED that the relief requested in the Three Hundred Twenty-Eighth Omnibus Objection to Claims is granted to the extent provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Exhibit 1 are disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of, and all rights to object and defend on any basis are expressly reserved with respect to, any claim listed on Exhibit A to the Three Hundred Twenty-Eighth Omnibus Objection to Claims that does not appear on Exhibit 1 annexed hereto; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2012
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE