Hearing Date and Time: July 18, 2012 at 10:00 a.m.

Objection Date and Time: July 11, 2012 at 4:00 p.m.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, TO JOINT MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LITIGATION SUBCOMMITTEE OF CREDITORS' COMMITTEE, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, TO EXTEND STAY OF AVOIDANCE ACTIONS**

U.S. Bank National Association, as Trustee ("*U.S. Bank*" or the "*Trustee*") by its undersigned attorneys, respectfully submits this objection (the "*Objection*") to the Joint Motion (the "*Motion*") of Lehman Brothers Holdings Inc. ("*LBHI*") and Litigation Subcommittee of Creditors' Committee (the "*Subcommittee*"), pursuant to Section 105(a) of the Bankruptcy Code, to Extend Stay of Avoidance Actions [Docket No. 29163], and in support thereof, respectfully states as follows:[1]

1.      In large part, the Trustee is not opposed to the continuation of the Stay of the Avoidance Actions as requested in the Motion.  Throughout the nearly two years that the Stay has been in place, the Trustee has been working with the Debtors to resolve various issues in dispute with respect to the SPV Derivative Transactions (as defined below).  Most recently, the Trustee has been actively engaged in the Debtors' ADR process in conjunction with, and on behalf of, the various holders of the notes and/or certificates and the SPV Counterparties (as defined below).  The Trustee asserts this Objection because it is opposed to the Debtors' attempt

---

[1]     Terms not defined herein shall have the meaning ascribed to them in the Motion.

3232202.01.06.doc
1697028

to impermissibly use the continuation of the Stay to adversely affect the rights of holders and SPV Counterparties by making outrageous claims for interest with respect to certain termination payments. Claiming they are entitled to interest at their "cost of funds," such rates vastly exceed market rates and seek to extract potentially millions from the various holders and SPV Counterparties. The Debtors should not be allowed to demand such usurious rates of interest -- during a period of historically low interest rates -- while at the same time insisting on a further stay of the underlying litigation. On account of such exorbitant interest requests, any continuation of the Stay would be materially harmful to the holders and the SPV Counterparties. As a result, this Court should compel the Debtors to (i) reduce the applicable rate of interest accruing with respect to such termination payments during the continuation of the Stay; (ii) disclaim any additional accrued interest with respect to the termination payments on a going forward basis; or (iii) lift the Stay and allow the underlying litigation to commence.

## BACKGROUND

2. The Trustee and to the extent appropriate, U.S. Bank Trust National Association, serve as trustee, owner trustee, indenture trustee and/or administrative agent in over eight hundred transactions, including many which contain swap and derivative contracts (the "*SPV Derivatives Transactions*"), involving the Debtors. In connection with the SPV Derivatives Transactions, the Debtors established, or assisted in the establishment of, numerous special purpose vehicles (the "*SPV Counterparties*"), many of which were created under the laws of the Cayman Islands and participated in the various SPV Derivatives Transactions. A central component of many of the SPV Derivatives Transactions was a credit swap or credit derivative agreement (the "*Swap and Derivative Agreements*") between a SPV Counterparty and a Lehman entity. The 1992 ISDA Master Agreement (the "*ISDA Master Agreement*") forms the basis of each of the Swap and Derivative Agreements.

3. With respect to each type of transaction, the rights and obligations of the SPV Counterparties, the Trustee and the holders of the notes and/or certificates are each specifically set forth in the governing documents. While various Debtor entities are parties to the various Swap and Derivative Agreements with the SPV Counterparties, the Debtors are not parties to the various indentures and/or trust agreements.

4. In performing its obligations under the various SPV Derivatives Transactions, the Trustee relies upon the specific terms of the governing documents and upon directions, instructions, and indemnities with respect to all of the actions it takes in connection with such trusts. The Trustee has no monetary interest in the underlying transactions themselves or in the SPV Counterparties (with the exception of the Trustee's fees, costs and expenses in connection with its service under the relevant governing documents).

5. Following the commencement of their chapter 11 cases, the Debtors filed over 50 adversary proceedings (the "*Adversary Proceedings*"). The SPV Derivatives Counterparties are defendants in pending Adversary Proceedings. Pursuant to the Adversary Proceedings, the Debtors have asserted claims against the SPV Counterparties for, among other things, a termination payment that the various Debtors believe is due them under certain swap agreements entered into in connection with the SPV Derivatives Transactions. The Debtors' claims with respect to the termination payments often involve millions of dollars. Pursuant to the Debtors' request, the Adversary Proceedings have been stayed by the Bankruptcy Court until July 20, 2012 and the Motion, if granted, would extend the Stay for an additional six months to January 20, 2013.

6. Section 6(d)(ii) of the ISDA Master Agreement provides that termination payments be made "together with . . . interest thereon . . . at the Applicable Rate." Section 14 of the ISDA Master Agreement provides that the "Applicable Rate" is "(b) . . . [as to] an obligation

3

to pay an amount under Section 6(e) [a Payment on Early Termination] of either party from and after the date . . . on which that amount is payable, the Default Rate."The ISDA Master Agreement does not set a specific "Default Rate." Rather, pursuant to Section 14 of the ISDA Master Agreement, a default rate of interest is defined as "a rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum."

7. In the ADR process, the Debtors have asserted claims with respect to interest on the termination payments vastly exceeding market rates. Often these rates approach those rates charged to the riskiest creditors. Should the Debtors prevail on their claims with respect to the termination payments, the result will likely be that the Debtors' claims for interest would wipe out any chance of recovery by the various holders and the SPV Counterparties, materially affecting their rights and recoveries.

**OBJECTION**

**I. The Debtors' Interest Demands Along With a Continuation of the Stay Will Materially Harm the Holders and the SPV Counterparties.**

8. Before issuing or extending a stay of proceedings, the Court must exercise sound judgment and weigh all parties' interests. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). If a "fair" possibility exists that a stay will cause damage to the non-movant, the applicant must make a clear case of hardship or inequity. *Id.* at 255. The movant has the burden of demonstrating the wisdom and justice of the stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("[t]he proponent of a stay bears the burden of establishing its need"); *John's Insulation, Inc. v. Siska Constr. Co., Inc.*, 671 F.Supp. 289, 297 (S.D.N.Y. 1987). Any stay must maintain "an even balance" between the interests at stake. *Landis*, 299 U.S. at 255.

9. The merits of a stay are analyzed on a case by case basis. Factors considered include: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil

4

litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests and burdens of the defendants; (3) the interests of the courts; (4) the interests of the persons not parties to the litigation; and (5) the public interest." *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, at *1 (S.D.N.Y. April 19, 2005).  The objective is the avoidance of prejudice, and "[t]he party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Export-Import Bank of the United States v. Hi-Films S.A de C.V.*, 2010 WL 3743826, at *12 (S.D.N.Y. Sept. 24, 2010); *Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998) (declining to stay a declaratory judgment action upon balancing of factors).[2]

10. Furthermore, while litigation may be time consuming and expensive, this is not a reason alone to stay a case.  As the district court has noted in analyzing justifications for granting a stay, "'[b]urdensome and oppressive' is a shibboleth of little value to this Court." *Waltzer v. Conner*, 1985 WL 2522, at *1 (S.D.N.Y. September 12, 1985) (finding that stay of discovery may not be granted "without a strong showing of 'good cause'" and that conclusory claims of "inconvenience and expense" do not suffice).

11. In the Motion, the Debtors take great pains to highlight the various benefits of continuing the Stay will have to the Debtors' estates, focusing on the successes of the ADR process.  As pointed out above, however, equity requires the Court balance the hardships between both the plaintiff and the defendant when determining to extend a stay.  While the Debtors make much of the benefits to the Debtors' estates, the Motion makes only conclusory statements about any harm that will befall the various defendants, stating only that "[t]here has been no prejudice to the Avoidance Action Defendants as result of the Stay, and such defendants

---

[2]  The first factor is irrelevant when the plaintiff requests a stay. *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005).

5

will suffer no prejudice from an extension of the Stay, as they will not need to expend time and resources defending the lawsuits." (Motion at ¶ 26).

12.     Despite the Debtors' statement, owing to the Debtors onerous claims for interest with respect to the termination payments, the holders and the SPV Counterparties may suffer significant prejudice if the Stay is extended, and the delay may provide the Debtors with an inequitable tactical advantage in the litigation.  Each day that such claims are not resolved adds to the potential damages that such parties may be required to pay on account of the Debtors' default under the "flip clause" and the Debtors' demands for interest accruing at rates vastly exceeding market rates.  The longer the Stay is kept in effect, the more interest that accrues and the greater the Debtors' claim for interest will be.  As these transactions each involve millions of dollars, the Debtors' claims for interest are significant.  This situation forces parties to make a decision to either settle immediately, regardless of the merits of the underlying claim, or face litigating a claim sometime in the far off future, knowing that the Debtors' onerous claims will be accruing through the Stay period that could wipe out any chance of recovery.  The various holders and the SPV Counterparties should not be forced to make such a difficult choice.  As continuing the Stay will materially harm the holders and the SPV Counterparties, the Motion should be denied and the Stay lifted to allow the litigation to proceed.

II.     **IN THE ALTERNATIVE, ANY ORDER IMPLEMENTING A STAY SHOULD BE AMENDED TO BE MORE FAIR AND EQUITABLE TO THE DEFENDANTS**

13.     In the event this Court determines that a further stay of the Avoidance Actions is appropriate, the Trustee respectfully requests that the Order implementing the Stay be amended to provide for a more reasonable and/or market rate of interest with respect to the termination payments during the continuation of the Stay or that the Debtors be compelled to disclaim any additional accrued interest with respect to the termination payments on a going forward basis.

6

## CONCLUSION

WHEREFORE, Trustee requests that the Court enter an order (i) denying Debtors' Motion to extend the Stay of the Avoidance Actions; (ii) granting the Motion but reducing the Debtors' claims for interest related to the termination payments during the Stay period, or (iii) granting the Motion and compelling the Debtors to disclaim any additional accrued interest with respect to the termination payments on a going forward basis.

Dated:  July 11, 2012
       New York, New York

                                    Respectfully submitted,

                                    U.S. BANK NATIONAL ASSOCIATION, AS
                                        TRUSTEE

                                  By:  s/ Craig M. Price
                                               One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH 3660)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000

Craig M. Price (CP 9039)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000