LAW OFFICES OF LISA M. SOLOMON
305 Madison Avenue, Suite 4700
New York, NY 10165
Tel: 212- 471-0067; Fax: 212-980-6965
Lisa M. Solomon, Esq.

*Counsel for Claimants Vincent Primiano,*
*Gordon Sweely, Charles Spero, Timothy Burke,*
*Jonathan Sebiri, Riccardo Banchetti, Philippe Dufournier,*
*Anke Parr, Giancarlo Saronne and Harsh Shah*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | |
| SOUTHERN DISTRICT OF NEW YORK | Response Deadline: July 13, 2012 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |
| In re: | Chapter 11 |
| : | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS, INC., | |
| *et al.*, | |
| : | (Jointly Administered) |
| Debtors. | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

**(I) JOINT RESPONSE OF CLAIMANTS VINCENT PRIMIANO,
GORDON SWEELY, CHARLES SPERO, TIMOTHY A. BURKE,
JONATHAN SEBIRI, RICCARDO BANCHETTI, PHILIPPE DUFOURNIER,
ANKE PARR, GIANCARLO SARONNE AND HARSH SHAH TO
DEBTORS' 314TH OMNIBUS CLAIMS OBJECTION (LATE FILED)
AND (II) CROSS-MOTION TO CONSOLIDATE**

Vincent Primiano, Gordon Sweely, Charles Spero, Timothy A. Burke, Jonathan Sebiri, Riccardo Banchetti, Philippe Dufournier, Anke Parr, Giancarlo Saronne and Harsh Shah (collectively, "Claimants"), by their undersigned counsel, hereby submit this (i) joint response to Debtors' 314th Omnibus Objection to Claims (Late Filed Claims) and (ii) cross-motion to consolidate. In support thereof, Claimants respectfully represent as follows:

**INTRODUCTION**

1.    The Debtors seek to disallow as late filed the Claims that are for damages arising from the Debtors' rejection of Claimants' RSU and CSA Agreements as executory contracts.

1

The Claims have been timely filed. The only basis upon which the Debtors can question a timely filing is if they prove the underlying contracts are not executory. As will be more fully set forth herein, there are many reasons why the RSU and CSA contracts must be found to be executory and the Debtors' 314th Claims Objection should be denied.

2.   First, as set forth herein, the Debtors are bound by the listing of the RSU and CSA Agreements as executory contracts in their Schedules and the listing of Claimants as counterparties to executory contracts in the bar date materials sent to each Claimant. Second, the Debtors have failed to shift the burden to Claimants by failing to refute the essential allegations of the Claims, that the RSU and CSA Agreements are executory. Third, the Agreements are in fact executory. There are numerous material triable issues of fact here concerning whether the RSU and CSA Agreements are executory. There has been no discovery. Each of these reasons will be explained more fully herein.

3.   Finally, the issue raised herein, whether Claimants have valid rejection damage claims, bears directly upon the issues brought on by the Debtors' earlier filed 118th, 130th, 135th omnibus claims objections, wherein the Debtors have argued Claimants are only the holders of equity. It would be judicially efficient and foster expediency herein to consolidate this contested matter with the earlier filed claims objections for purposes of discovery, dispositive motions and any trial. This Court should grant Claimants' cross-motion for consolidation.

## BACKGROUND

4.   Commencing on September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code (the "Code").

A. Claimants

5. Claimants are former salaried employees of the Debtors. As of the Petition Date, the Debtors' compensation arrangement with Claimants and their thousand of other employees included the condition that a part of employees' annual total compensation could be paid as deferred compensation in the form of Restricted Stock Units ("RSU's") or Contingent Stock Awards ("CSA's"), as the case may be, that vested over time and were subject to other contractual conditions. Upon its election, on an annual basis LBHI issued RSU's or CSA's to salaried employees as their deferred compensation pursuant to RSU Agreements or CSA contracts that incorporated by reference the terms of the then current Lehman Brothers Holdings Inc. Employee Incentive Plan.

6. The RSU's and CSA's s issued to Claimants represent a contract right, *i.e.*, the Debtors' conditional promise to deliver common stock in the future or cash in lieu thereof. The RSU's and CSA's mature over stated time periods, i.e., generally five years, and employees are *only* eligible to cash them in provided they are still in the Debtors' employ as of the applicable payment date. They are subject to other substantive conditions. RSU's and CSA's are forfeited before vesting if an employee's termination is voluntary, for "Cause" or involves "Detrimental Activity, " or whether an employee leaves for a "Competitor." On the other hand, upon the occurrence of an involuntary "Termination Without Cause," the parties' contractual obligations under the RSU's and CSA's continue unabated.

7. As of the Petition Date, LBHI had issued to Claimants an aggregate of approximately 821,768 RSU's and 1,725,116 CSA's on account of the deferred compensation owed to Claimants for their past services subject to the contractual conditions of the RSU and

CSA contracts. Said RSU's and CSA's were either unvested or not yet deliverable to Claimants pursuant to the respective RSU and CSA contracts until various dates in 2008-2012.

8. Following the Petition Date, each Claimant's employment with the Debtors was terminated.

B. The Filing of the Debtors' Schedules

9. In the Debtors' schedules and statements (the "Schedules") filed with the Clerk of the Court on March 12, 2009, the Debtors identified their executory contracts and the counterparties thereto. Included in the Debtors' "Schedule G -- Executory Contracts and Unexpired Leases" were the RSU and CSA Agreements with Claimants and the Debtors' thousands of other employees, whom were listed as counterparties to such designated executory contracts.[1] The Debtors' listing of the RSU and CSA Agreements in Schedule G for all employees spanned 413 pages.

C. Bar Dates for Filing Claims in the Debtors' Chapter 11 Cases

10. This Court entered an order dated July 2, 2009 (the "Bar Date Order") fixing the deadlines for filing proofs of claim in the Debtors' chapter 11 cases. The Bar Order fixed (i) the general bar date (the "General Bar Date") as September 22, 2009; (ii) the Securities Programs bar date as November 2, 2009, and (iii) the later of the General Bar Date and the date that is forty-five (45) days following the effective date of the rejection of an executory contract or unexpired lease (the "Rejection Bar Date") as the deadline for any person holding a claim arising from the rejection of an executory contract or unexpired lease.

11. Thereafter, each Claimant received three preprinted proof of claim forms, along

---

[1] The Debtors' Schedules generically refer to RSU and CSA Agreements as "Restricted Stock Unit Agreements."

4

with instructions on how to complete and when to properly submit a proof of claim. The preprinted information on one of the proof of claim forms included a notice in bold lettering:

> **NOTICE OF SCHEDULED CLAIM**:
> Your claim is scheduled by [LBHI] as:
>
> SCHEDULE G – EXECUTORY CONTRACT OR UNEXPIRED LEASE
>
> DESRIPTION:
>
> RESTRICTED STOCK UNIT AGREEMENT

The claim form showed that the Debtors had scheduled each Claimant as a creditor and as a counterparty to an RSU or CSA Agreement that the Debtors had identified as an executory contract of LBHI.

12. The Court-approved bar date notice dated July 8, 2009 (the "Bar Date Notice") accompanying the proof of claim forms advised Claimants that there were three deadlines for filing claims, *i.e.*, the September 22, 2009 General Bar Date, the November 2, 2009 Securities Programs bar date, and the Rejection Bar Date. The Bar Date Notice specifically provided in paragraph "3" that "any person or entity that holds a claim arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by the later of (i) the [General] Bar Date; and (ii) the date which is forty-five (45) days following the effective date of such rejection."

D. Claimants' Initial Proofs of Claims

13. Prior to the General Bar Date, Claimants each filed a proof of claim against LBHI on account of the deferred compensation owed Claimants, along with documentation supporting each proof of claim. The supporting documentation included a schedule of unvested or not yet deliverable RSU's or CSA's that had been issued each Claimant at year-end 2003 through 2007

5

and the RSU's and CSA's issued Claimants in July 2008 (collectively, the "Initial Claims").

14. Despite later amending other portions of their Schedules on two occasions, as of this Court's confirmation of the Debtors' third amended plan of reorganization, the Debtors had not amended their Schedules to omit the thousands of RSU and CSA contracts listed in their Schedule G and the corresponding counterparties listed therein, including Claimants.

E. Confirmation of the Plan

15. On December 2, 2011, this Court entered an order confirming the Debtors' third amended plan of reorganization (the "Plan"). Pursuant to the Plan, all executory contracts not assumed by the Debtors were rejected pursuant to §§365 and 1123 of the Code. Under Article XI of the Plan, all claims arising from the rejection of an executory contract had to be filed no later than 45 days after the effective date of the Plan, which occurred on March 6, 2012. The Debtors gave notice of entry of the order confirming the Plan on January 19, 2012, advising creditors, including Claimants, of inter alia the deadline for filing claims arising from the rejection of executory contracts.

F. Rejection Damage Proofs of Claim

16. Prior to April 20, 2012, Claimants each filed a claim herein (the "Claims" or the "Rejection Damage Claims") arising from the Debtors' rejection of their RSU or CSA Agreements along with supporting documentation, which are now the subject of the 314th Claims Objection. Each Claim identified Claimants as a counterparty to an executory contract, i.e., the RSU's and the CSA's, and was timely filed in accordance with the Plan and the procedures fixed

by the Court for filing such claims.[2]

## GROUNDS FOR RESPONSE

17. "Rejection under 11 U.S.C. §365(a) simply means that the court will permit the debtor to breach the contract with the result that the contractual obligations will be reduced to general unsecured claims for prepetition damages pursuant to 11 U.S.C. §365(g)(1)." *See In re The Penn Traffic Co.*, 524 F.3d 373, 381 (2d Cir. 2008)(*quoting In re Child World, Inc.*, 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992). Recognizing that the Rejection Damage Claims if allowed will present a significant if not insurmountable hurdle to the Debtors' argument that Claimants are only the holders of equity interests and are not creditors, the 314th Claims Objection seeks to disallow the Claims as late filed on the purported ground that they were not received by the General Bar Date of September 22, 2009.

18. Under the procedures devised by the Debtors and approved by the Court, however, the General Bar Date does not apply to these claims that on their face assert rejection damages. The Claims were undisputably timely filed by the Rejection Bar Date.

**A. The Rejection Damage Claims Were Timely Filed**

19. The Debtors cannot now deny that the RSU and CSA Agreements are executory after having listed them as so in their schedules, and having failed to amend the schedules and

---

[2] Pursuant to Debtors' 118th, 130th, 135th and 207th omnibus objections to claims, the Debtors previously sought to reclassifiy as equity interests Claimants' Initial Claims for deferred compensation based upon their RSU's and CSA's, and in the alternative, to mandatorily subordinate the Initial Claims pursuant to §510(b) of the Code. Claimants Primiano, Sweely, Spero, Burke, Banchetti, Dufournier, Parr, Saronne and Shah, along with many other claimants that were the subject of Debtors' omnibus objections, responded to the earlier filed omnibus objections and opposed the requested reclassification and subordination of their Initial Claims. Claimant Sebiri acknowledges that his Initial Claim was reclassified as equity on or about June 3, 2011 without any determination on the merits of the Debtors' omnibus objection and subject in all respects to Sebiri's rights to file a claim herein arising from the rejection of his RSU Agreements.

confirmed the Plan.[3] It is well settled that a debtor has a duty to prepare bankruptcy schedules and statements "carefully, completely, and accurately." *In re JZ LLC*, 371 B.R. 412, 417 (B.A.P. 9th Cir. 2007) (*citing Cusano v. Klein*, 264 F.3d 936, 946-49 (9th Cir. 2001). "Full and comprehensive disclosure is critical to the integrity of the bankruptcy process." *In re Rolland*, 317 B.R. 402, 412 (Bank. C.D. Cal. 2004)(*citing Heidkamp v. Whitehead (In re Whitehead)*, 278 B.R. 589, 594 (Bankr. M.D. Fla. 2004). "Statements in bankruptcy schedules are executed under penalty of perjury and, when offered against a debtor, are eligible for treatment as judicial admissions." *Rolland* at 421 (*citing Larson v. Roos Bank, N.A. (In re Larson)*, 204 B.R. 500, 502 (W.D. Tex. 1996)(In *Larson*, debtors' representation in schedules that he had no contingent or unliquidated claims was judicial admission that he placed no value on lawsuit).

20. In *Norritech v. Goenex Corp.*, 204 B.R. 684 (D. Md. 1997), *aff'd*, 120 F.3d 261 (4th Cir. 1997), a landlord filed a claim in the bankruptcy case for post-petition administrative rent. The debtor had listed the lease in the debtor's Schedule G list of unexpired leases. The bankruptcy court upheld the debtors' claim objection on the ground that the debtor-tenant had surrendered the premises and landlord had accepted such surrender and the lease terminated before the bankruptcy filing. On appeal, the district court reversed, finding that there was no evidence of a surrender of a lease nor landlord's acceptance thereof and to the contrary the debtor-tenant "*effectively admitted that the lease was unexpired when [the debtor] listed it in the original Schedule G.*" 204 B.R. at 688 (emphasis added)

---

[3] It is noted herein that to date, the Debtors have not taken the position in any court documents, including the 314th Omnibus Objection, that the RSU and CSA Agreements were not executory contracts and in fact in the only court filing pertaining to whether they were executory, the Schedules, have identified them as executory contracts. As discussed below, the Debtors' 314th Omnibus Objection, in failing to even raise the issue of whether the RSU and CSA Agreements are executory contracts, is deficient as a matter of law to defeat the Claims.

8

21. Similarly, in *Sovran Bank, N.A. v. Anderson*, 743 F.2d 233, 225 n.1. (4th Cir. 1984), the Fourth Circuit explained that an alternative ground for its decision that a debtor did not have equity in his residence was that the debtors' schedules showed no equity in the property. The court explained that "[f]iling the schedule in a proceeding in bankruptcy is an *ex parte* act on the part of the bankrupt, and in that proceeding is a solemn admission which, unless corrected, binds him." *Id*. The court concluded that a creditor did not have to prove that the debtor lacked equity in the house to prevail on a motion to lift the automatic stay to permit foreclosure. *Id.*; *see also In re S. St. Tavern & Grill, Inc.*, No. 04-12723-3F1, 2006 WL 1687781, at *7 (Bankr. DM.D. Fla. 2006)(holding that a debtor was judicially estopped from denying the existence of a lease when the lease was included on Schedule G of unexpired leases).

22. Here, the Debtors listed the RSU and CSA Agreements as executory contracts in their Schedules, sent notices to creditors that they had listed them as counterparties to executory contracts, failed to amend their Schedules, and confirmed their Plan providing for rejection of executory contracts. The Debtors are bound by their notices and the terms of their Plan. It would be inconsistent for the Debtors now to argue that the Claims are late filed on the ground that the RSU and CSA Agreements are not executory.[4]

**B. The Debtors Have Not Met their Burden to Show the RSU's and CSA's Are Not Executory Contracts**

23. Alternatively, in the event the Court finds that the Debtors have *not* made a

---

[4] In a recent telephone conversation, Debtors' counsel pointed to a purported disclaimer appearing in the fine print of nine pages of "global notes" for the Schedules that in effect provides that the inclusion of a contract, lease or other agreement on Schedule G in the Debtors' Schedules does not constitute an admission that such contract, lease or other agreement is an executory contract. However, at no time prior to filing their claims herein were Claimants given actual notice that the Debtors might consider the RSU or CSA Agreements as non-executory. At no time were Claimants advised by any of the bar date materials submitted to them that Claimants could not fully rely upon such bar date materials as true and correct. Nor were Claimants advised that they could not rely upon the bar date materials to fully advise them of all their rights with regard to the filing of proofs of claim herein.

binding admission with regard to the executory nature of the RSU and CSA Agreements, the Debtors have not shifted the burden to Claimants to require that Claimants come forward and prove the validity of the Claims since the 314th Omnibus Objection fails to refute their essential allegations. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("The burden . . . shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'") (citation omitted).

24.     Specifically, a proof of claim in a bankruptcy proceeding "cannot be defeated by mere formal objection." *In re Sabre Shipping Corp.,* 299 F.Supp. 97, 99 (S.D.N.Y.1969). The objector must produce evidence equal in force to the *prima facie* effect given to a properly filed proof of claim. *In re Oneida Ltd.*, *supra*, 400 B.R. at 389. If the objector does not "introduce[ ] evidence as to the invalidity of the claim . . . the claimant need offer no further proof of the merits of the validity . . . of the claim." 4 Collier on Bankruptcy 502.03[3][f] (rev. ed.2007).

25.     Debtors fail to set forth an iota of evidence or otherwise *refute* the essential allegations of the Claims, that the RSU and CSA Agreements are executory. The Debtors plainly have not rebutted the *prima facie* validity of the Claims.

26.     Moreover, based upon the terms of the RSU and CSA Agreements themselves, it is clear that as of the Petition Date, the RSU and CSA Agreements were in fact executory contracts. The Second Circuit ordinarily measures whether a contract is executory on the date a bankruptcy case is commenced. *See In re The Penn Traffic Co.*, 524 F.3d 373, 381 (2d Cir. 2008). As of the Petition Date, performance remained due under the RSU and CSA contracts on both sides. On the one hand, the RSU and CSA contracts required ongoing services by

Claimants through various dates in 2008-2012, which if not complied with could excuse the Debtors' performance. Claimants were also subject to significant other conditions. Claimants were prohibited from engaging in "Detrimental Activity" through the respective "Share Payment Dates." The Debtors on the other hand were obligated to deliver the required number of shares of LBHI common stock on the "Share Payment Dates" or cash in lieu thereof, and comply with their various ongoing obligations with respect to the administration of the applicable Incentive Plan incorporated into each Agreement. The parties' unperformed obligations as of the Petition Date rendered the CSA and RSU contracts executory.

27.  Here, continued employment was one of the conditions to Claimants' receipt of the benefits under the contracts given for Claimants' past services. Following the Petition Date, the Debtors prevented Claimants from satisfying that condition. The intent was that Claimants would receive their benefits for their past services unless terminated for cause. The Debtors should not be permitted to argue a date other than the Petition Date is controlling for purposes of defining the contracts as non-executory, so as to deprive Claimants of lawful claims for the significant losses they have suffered.

28.  In any event, Claimants submit that the RSU and CSA's Agreements were and continued to be executory even after the Petition Date. At a minimum, there would be substantial genuine issues of material fact in determining the executory nature of the RSU's and the CSA's as of any date other than the Petition Date. Claimants were each terminated following the Petition Date as part of the Debtors' mass layoffs of their thousands of employees. It is Claimants' position that their termination was "involuntary" and "Without Cause" for purposes of the RSU's and CSA's. If Claimants' position is correct, then the Debtors had ongoing

obligations under the RSU and CSA Agreements through various dates in 2008-2012, and the Agreements would have remained executory.

## CROSS-MOTION TO CONSOLIDATE

29. The issue raised herein, the validity of the Claimants' rejection damage claims, bears directly upon the issues raised in the Debtors' earlier filed 118th, 130th, 135th omnibus claims objections, wherein the Debtors argued Claimants are only the holders of equity, suggesting that these matters should be litigated in tandem. It would be judicially efficient and foster expediency herein to consolidate this contested matter with those earlier filed claims objections for purposes of discovery, dispositive motions and any trial. It would also be consistent with the Court's interest in efficiently managing its docket.

30. No prior motion for the relief requested herein has been made to this Court.

31. Claimants reserve all rights to object to any supplementation of the 314th Omnibus Objection, or any related relief the Debtors may seek.

32. This Response and Cross-Motion includes citations to the applicable authorities and a discussion of their application. Accordingly, Claimants respectfully request that such citations and discussion satisfy the requirement that Claimants submit a separate memorandum of law pursuant to Rule 9013-1-(b) of the Local Bankruptcy Rules.

WHEREFORE, it is respectfully requested that the 314th Claims Objection be denied in its entirety and this Court grant Claimants' cross-motion to consolidate.

Dated:  New York, New York
July 12, 2012

                        LAW OFFICES OF LISA M. SOLOMON

                        By:   ___/s/ Lisa M. Solomon_____
                             Lisa M. Solomon
                        305 Madison Avenue, Suite 4700
                        New York, New York 10165
                        (212) 471-0067

*Counsel for Claimants Vincent Primiano, Gordon Sweely, Charles Spero, Timothy A. Burke, Jonathan Sebiri, Riccardo Banchetti, Philippe Dufournier, Anke Parr, Giancarlo Saronne and Harsh Shah*