WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell

-and-

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500
David S. Cohen

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                        :
In re                                                   :        Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,            :        08-13555 (JMP)
                                                        :
                            Debtors.                    :        (Jointly Administered)
                                                        :
-------------------------------------------------------------------x

**OMNIBUS REPLY IN SUPPORT OF JOINT MOTION OF LEHMAN
BROTHERS HOLDINGS INC. AND LITIGATION SUBCOMMITTEE
OF CREDITORS' COMMITTEE, PURSUANT TO SECTION 105(a) OF
THE BANKRUPTCY CODE, TO EXTEND STAY OF AVOIDANCE ACTIONS**

US_ACTIVE:\44050296\6\58399.0003

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), and the litigation subcommittee of the Official Committee of Unsecured Creditors appointed in these cases (the "Committee"), file this reply to the objections interposed to the joint motion of the Plan Administrator and the Committee, dated June 29, 2012 [ECF No. 29163], to extend the stay of avoidance actions (the "Motion")[1] and respectfully represent:

**Preliminary Statement**

1. The extension of the Stay affects hundreds of parties who are named defendants in various Avoidance Actions filed by the Chapter 11 Estates. Yet, only one such party filed an objection to the requested relief: U.S. Bank National Association, as Trustee ("U.S Bank"), filed an objection to the Motion, dated July 11, 2012 [ECF No. 29343] (the "U.S. Bank Objection"). In addition, the liquidators of Lehman Brothers Australia Limited ("LB Australia"), which is not a party to any of the Avoidance Actions and is not a party in interest under the Bankruptcy Code and, therefore, has no standing to even be heard on the matter, filed a response to the Motion, dated July 11, 2012 [ECF No. 29341][2] (the "LB Australia Objection," and, together with the U.S. Bank Objection, the "Objections"). Notably, LB Australia and U.S. Bank are the only entities that have filed any objections to extending the Stay, including this Motion. Having failed in their previous attempts to thwart extensions of the Stay, LB Australia and U.S.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] LB Australia filed an amended response on July 13, 2012 [ECF No. 29399].

2

Bank offer new variations on old arguments as to why the Stay should not be extended.  These arguments, like their previous arguments, are unavailing.  The Objections should be overruled.

### The LB Australia Objection

2.  The Court should overrule the LB Australia Objection for several reasons.  LB Australia is a noteholder that holds partial interests in six series of notes under a synthetic debt repackaged note issuance program known as the "Dante Programme."  The Dante Programme transactions, among others, are the subject of the Avoidance Action entitled *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, Adv. Proc. No. 10-03545 (JMP) (the "Non-Distributed U.K. SPV Action" or "Adversary Proceeding 3545").  As a threshold matter, LB Australia is not a defendant in the Non-Distributed U.K. SPV Action or in any other adversary proceeding, has not obtained permission to intervene in the Non-Distributed U.K. SPV Action or in any other adversary proceeding, and does not otherwise qualify as a "party in interest" under section 1109(b) of the Bankruptcy Code.

3.  Thus, for the reasons set forth in the *Omnibus Reply in Support of Debtors' Motion to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated June 13, 2011 [ECF No. 17602], at ¶¶ 20-27, and the *Reply in Support of Joint Motion of Debtors and Creditors' Committee to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated January 9, 2012 [ECF No. 24120], at ¶¶ 5-6, each of which is expressly incorporated herein, LB Australia lacks standing to be heard with respect to the Motion.  As LB Australia acknowledges, the Court reached this same conclusion earlier this year, holding that LB Australia lacked standing to object to a previous extension of the Stay.  *See* LB Australia Objection, at ¶ 2.  The Court should, therefore, reject the LB Australia Objection for lack of standing, without considering the substance of LB Australia's arguments.

3

4.   Even if the Court does consider the substance of LB Australia's arguments, it should overrule each of them. In its objection, LB Australia implies that the Plan Administrator has failed to comply with its undertaking, made to the Court at the January 11, 2012 hearing, to commence the ADR process with respect to the Dante Programme transactions in which LB Australia holds notes. This argument is absolutely untrue.

5.   In fact, all of the Dante Programme transactions in which LB Australia holds notes have now been put into ADR. In the Motion, the Plan Administrator disclosed the steps it has taken in the ADR process with respect to the Non-Distributed U.K. SPV Action, of which the Dante Programme transactions are a part, and the progress it has made to date. As of the filing date of the Motion, out of 117 SPV transactions in the Non-Distributed U.K. SPV Action, the Chapter 11 Estates have reached final settlement with respect to more than half of the transactions – 65 transactions, as to which the Non-Distributed U.K. SPV Action either has been dismissed or is in the process of being dismissed. Of the remaining 52 transactions in the Non-Distributed U.K. SPV Action, ADR notices have been served in connection with approximately 20 of the transactions, including the transactions in which LB Australia holds notes, and those ADRs are proceeding under the Court's SPV Derivatives ADR Procedures. Accordingly, the Plan Administrator has demonstrated substantial progress in the ADR process overall and with respect to the Dante Programme transactions in which LB Australia holds notes.

6.   Given such progress, the LB Australia Objection should be rejected outright.

7.   LB Australia also appears to complain that it does not have complete transparency into the ADRs themselves, but this argument is a red herring. LB Australia, which is one of a huge number of noteholders in these transactions, is properly not a party to the ADRs. The SPV Derivatives ADR Procedures implemented by the Court contemplate that noteholders

4

08-13555-mg    Doc 29409    Filed 07/16/12    Entered 07/16/12 11:58:50    Main Document
    Pg 5 of 9

may obtain certain information about the ADR if they agree to confidentiality consistent with that required by the SPV Derivatives ADR Procedures. Specifically, the SPV Derivatives ADR Procedures provide, in pertinent part, as follows:

> When the SPV Derivatives Counterparty and, if applicable, the [SPV Trustee] are served with the SPV Derivatives ADR Package, the SPV Derivatives Counterparty and, if applicable, the SPV Trustee may disclose the contents of such SPV Derivatives ADR Package to any person, entity, or special investment vehicle that holds a note or beneficial interest in the SPV Derivatives Counterparty or the SPV Derivatives Transaction generally (such persons or entities collectively referred to as "Noteholders," and each singly as a "Noteholder"); *provided*, *however*, that any such Noteholder not specified as a party to the SPV Derivatives ADR Dispute must, in advance of receiving such SPV Derivatives ADR Package, agree in writing to abide by the confidentiality provisions in this Order, including paragraph 13, and must agree in writing to maintain the confidentiality of any such information received.

*Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle* Counterparties, dated March 3, 2011 [ECF No. 14789], at ¶ 2(a); *see also id*., at ¶ 13 ("SPV Trustees may disclose such statements, arguments and positions [made or taken during any part of the alternative dispute resolution process] as may become necessary with their respective Noteholders and advisors subject to these same confidentiality provisions, provided that such Noteholders and their advisors agree to maintain the confidentiality of any such information received").

       8.     Thus, LB Australia has the right under the SPV Derivatives ADR Procedures to obtain information about an ADR which concerns a transaction in which it holds notes by simply signing a confidentiality agreement. LB Australia's apparent failure to avail itself of these confidentiality provisions, and thus apprise itself of the status of ADRs concerning transactions in which it holds notes, is a problem of LB Australia's own making and does not justify a denial of the extension of the Stay.

9.      In its prior opposition to extensions of the Stay, LB Australia has made similar arguments about the pace of ADRs, and the Court has rejected those arguments. Now, the applicable ADRs have been commenced, and LB Australia can obtain the information it seeks by signing a confidentiality agreement. Instead, LB Australia would have the Court allow the Stay to expire to satisfy its parochial concerns, while disregarding the detrimental impact such remedy would have on the dozens of defendants who have not objected to the Stay's extension. The Court should reject LB Australia's self-serving arguments and overrule the LB Australia Objection.

## The U.S. Bank Objection

10.     After conceding that it is largely not opposed to the continuation of the Stay and that it has been actively engaged in the ADR process, U.S. Bank contends that the Stay harms noteholders in certain SPV derivatives transactions by delaying resolution of disputes between SPV Derivatives Counterparties (as defined in the SPV Derivatives ADR Procedures) and the Chapter 11 Estates while interest accrues on the Chapter 11 Estates' claims against such counterparties. Specifically, U.S. Bank argues that if the Stay continues, interest will accrue at high rates on the termination payments that the Chapter 11 Estates seek to recover from the SPV Derivatives Counterparties, thereby forcing such counterparties into the difficult choice of settling immediately or waiting to litigate as interest accumulates. U.S. Bank requests that the Court reduce the applicable rate of interest accruing on termination payments during the Stay, preclude accrual of any additional interest on the termination payments on a going forward basis, or permit the Stay to expire and allow litigation to proceed.

11.     Essentially, U.S. Bank is asking the Court to rewrite the applicable transaction documents in the context of a motion to extend the Stay. The rate of interest applicable to payments owed under the underlying derivatives contracts is a matter of contract

6

law.  U.S. Bank proffers no legal authority for its request that the Court set the applicable interest rate or stop the accrual of interest on the termination payments – because there is not any.  The amount of interest payable by the SPV Derivatives Counterparties can and should be determined either in ADR or by the Court in the context of an adversary proceeding, if these matters do not settle.  In either case, the SPV Derivatives Counterparties will have ample opportunity to voice their arguments regarding the applicable rate of interest or its accrual.

12. Moreover, U.S. Bank has the ability to prevent interest from accruing by simply paying the amounts it owes to the Chapter 11 Estates.  Such payments are warranted given the Court's rulings in *BNY*[3] and *Ballyrock*[4] concerning the "flip clause" issue, which also arises in the Chapter 11 Estates' actions against U.S. Bank.  In the unlikely event that the Chapter 11 Estates receive an adverse ruling in their actions against U.S. Bank, they have more than sufficient resources to repay any money received from U.S. Bank, and the Court can ensure that the Chapter 11 Estates reserve sufficient funds to do so.  Thus, at best, the alleged prejudice to noteholders is disingenous:  U.S. Bank has the means to prevent the running of interest should it choose to do so.

13. The U.S. Bank Objection also assumes that litigation would move faster than ADR, which in turn would cause less interest to accrue.  U.S. Bank provides no basis for such an assumption.  With discovery and motion practice, litigation could take years, as it often does.  Meanwhile, ADR has proven in these cases to be a cost-effective, efficient, and expeditious means of resolving disputes.  Indeed, there is every reason to believe that the ADR

---

[3] *Lehman Bros. Special Fin. Inc. v. BNY Corporate Trustee Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 407, 420 (Bankr. S.D.N.Y. 2010) ("*BNY*").

[4] *Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007–1 Ltd. (In re Lehman Bros. Holdings Inc.)*, 452 B.R. 31, 38 (Bankr. S.D.N.Y. 2011) ("*Ballyrock*"), *motion for leave to appeal denied*, 11 Misc. 330 [ECF No. 7] (S.D.N.Y. Nov. 3, 2011).

7

process has saved counterparties from paying enormous sums in interest, as well as legal fees, by virtue of the expeditious settlements that the parties to the individual ADRs have reached. Absent such settlements, these counterparties would have had to engage in lengthy litigation that could take years with interest running the entire time. U.S. Bank's argument undermines the policies this Court has articulated in its rulings, and as an institution in General Order M-390, favoring ADR, and it should be rejected.

14. Even if the Court were to give credence to U.S. Bank's interest argument, the Court should still extend the Stay after weighing the pros and cons of the proposed extension. On balance, the Stay has been hugely successful, as demonstrated by the progress of the Non-Distributed U.K. SPV Action discussed above. Moreover, the harm to all the other defendants to Avoidance Actions, who would be affected by a termination of the Stay and who have not objected to its extension, would be significant. In calling "conclusory" the Plan Administrator's contention that expending time and resources defending lawsuits will harm the defendants to the Avoidance Actions, U.S. Bank blithely ignores the fact that once the Stay expires, massive resources will pour into the lawsuits on all sides, and the Court's docket will be flooded.

15. The ADR process has been tremendously successful at fostering consensual resolutions, and it should be allowed to continue. For all of these reasons, the U.S. Bank Objection should be overruled.

## Conclusion

16. The Stay has been enormously beneficial to the resolution of numerous actions and an extension of the Stay is an integral part of the implementation of the Court's ADR procedures in these cases. The Plan Administrator and the Committee have met their burden that the Stay should be extended. The Plan Administrator and the Committee, therefore, respectfully request that the Court extend the Stay for an additional six months so that, among other things,

the ADR procedures have a continued opportunity for success.

WHEREFORE the Plan Administrator and the Committee respectfully request that the Court overrule the Objections, enter the Order, and grant the Plan Administrator and the Committee such other and further relief as is just.

Dated: July 16, 2012
New York, New York

/s/ Jacqueline Marcus
Richard W. Slack
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates


/s/ David S. Cohen
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

-and-

David S. Cohen
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors