**Exhibit A**

\
US_ACTIVE:\43936239\28\58399.0008

EXECUTION COPY

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into as of July 16, 2012 by and between Lehman Brothers Special Financing Inc. ("Lehman") and Deutsche Bank Trust Company Americas ("DBTCA"), solely in its capacity as trustee under the Indenture (the "Indenture") dated August 17, 2006, between Gemstone CDO VI Ltd., as Issuer ("Issuer"), Gemstone CDO VI Corp., a corporation organized under the laws of the State of Delaware, as Co-Issuer (the "Co-Issuer") and DBTCA (solely in its capacity as trustee under the Indenture, the "Trustee") pursuant to which HBK Investments L.P. acts as Collateral Manager (the "Collateral Manager")(each of Lehman and the Trustee, a "Party" and collectively, the "Parties"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Indenture.

# RECITALS:

WHEREAS, Lehman and the Issuer entered into a portfolio of credit derivative swap transactions (the "Transactions") that were governed by a 1992 ISDA Master Agreement, dated as of August 16, 2006 (the "ISDA Master Agreement") as amended and supplemented by a certain Schedule to ISDA Master Agreement, dated as of August 16, 2006 and those certain confirmations between Lehman and the Issuer, dated August 16, 2006 (collectively, the "Credit Default Swap Agreement").

WHEREAS, under the Granting Clause of the Indenture, the Issuer granted to the Trustee, for the benefit and security of the Secured Parties, all of its right, title and interest, whether now owned or hereafter acquired, in, to and under, *inter alia*, the Credit Default Swap Agreement and amounts on deposit in the Synthetic Security Collateral Account, and constituted and irrevocably appointed the Trustee the true and lawful attorney of the Issuer, with full power (in the name of the Issuer or otherwise), to exercise all rights of the Issuer with respect to, *inter alia*, the Credit Default Swap Agreement and amounts on deposit in the Synthetic Security Collateral Account, and to ask, require, demand, receive, settle, compromise, compound and give acquittance for any and all moneys and claims for moneys due and to become due under or arising out of any of, *inter alia*, the Credit Default Swap Agreement and amounts on deposit in the Synthetic Security Collateral Account.

WHEREAS, commencing on September 15, 2008 and thereafter, Lehman's Credit Support Provider (as defined in the Credit Default Swap Agreement) and various of its affiliates, including Lehman, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Cases").

WHEREAS, Lehman has received a "Notice Designating An Early Termination Date Pursuant to Section 6(a) of the ISDA Master Agreement" dated September 16, 2008 with respect to the Credit Default Swap Agreement, but as of the date hereof, neither party to the

Credit Default Swap Agreement has paid any amounts (including termination payments) that may have become due to the other party on or after September 16, 2008 under the Credit Default Swap Agreement due to a dispute regarding, among other things, the terms of the Indenture applicable to the payment of a termination payment arising in connection with such notice (the "CDS Payment Dispute").

WHEREAS, on September 18, 2009, DBTCA filed a proof of claim against LBSF, Claim No. 18523, and a proof of claim against Lehman Brothers Holdings Inc., Claim No. 18524 (together, the "Proofs of Claim").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of the Credit Default Swap Agreement and provide for the settlement of the CDS Payment Dispute.

WHEREAS, on May 22, 2009, the Trustee delivered to the Holders a written notice that an Event of Default had occurred under Section 5.1(a) of the Indenture.

WHEREAS, pursuant to the provisions of Article V and Article VI of the Indenture, a Majority of the Controlling Class has the right, upon the occurrence and continuance of any Event of Default, to direct the Trustee to exercise certain rights and remedies available to the Trustee under the Indenture and the Credit Default Swap Agreement, whether at law or in equity, subject to the terms of the Indenture.

WHEREAS, the parties wish to effect the liquidation and distribution of the Collateral under Articles V and XI of the Indenture.

WHEREAS, Lehman, as a Majority of the Controlling Class due to its ownership of an Aggregate Outstanding Amount of the Class A-1 Notes that constitutes a Majority of the Class A Notes, has instructed the Trustee to enter into this Settlement Agreement and to perform its obligations hereunder in order to resolve the CDS Payment Dispute.

WHEREAS, Lehman, as Holder of at least 66 2/3% of the Aggregate Outstanding Amount of the Class A Notes due to its ownership of an Aggregate Outstanding Amount of the Class A-1 Notes that constitutes at least 66 2/3% of the Class A Notes has directed the sale and liquidation of the Collateral.

WHEREAS, the Parties understand and acknowledge that the effectiveness of this Settlement shall be subject to the entry by the United States Bankruptcy Court of an order approving this Settlement Agreement.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Direction and Payment.

(a)    Notwithstanding anything to the contrary in the Indenture, the Trustee shall pay $206,350,430.45 (the "CDS Payment Amount"), without deduction, set-off or counterclaim, to Lehman and $650,000.00 (the "Trustee Amount") to the Trustee for its fees and

expenses and those of its counsel and financial advisors ("Qualified Expenses"), each from the Synthetic Security Collateral Account in accordance with the payment instructions set forth on Schedule 1 attached hereto within three (3) Business Days of the Effective Date (as defined below) using the wire transfer instructions set forth on the attached Schedule 1. To the extent that the Trustee's Qualified Expenses through the date of the completion of the liquidation described in Section 3 ("Liquidation Expenses") (or, alternatively, the date it is determined that no such liquidation shall occur) are less than the Trustee Amount, the Trustee shall pay over the amount of such excess to Lehman no later than ten (10) Business Days after such date. The CDS Payment Amount and the Trustee Amount are collectively referred to herein as the "Settlement Amount".

(b)  The Parties acknowledge that following the payment of the Settlement Amount as described in clause (a) above, amounts remaining in the Synthetic Security Collateral Account shall be deemed Principal Proceeds and be credited to the Principal Collection Account, for further application on the next Distribution Date in accordance with the terms of Section 11.1(a)(ii) the Indenture without any payments made pursuant to Section 11.1(a)(i)(3) of the Indenture.

Section 2.    Release.

(a)  Upon making the payment of the Settlement Amount to Lehman, the Credit Default Swap Agreement (including for the avoidance of doubt, all Transactions thereunder) shall be deemed discharged and terminated for all purposes and be of no further force and effect. For the avoidance of doubt, neither the execution of this Settlement Agreement nor the payment of the Settlement Amount effects a discharge of the Indenture. The rights and obligations created by the Indenture, including but not limited to the rights of Noteholders (including Lehman) and the rights and obligations of the Trustee under the Indenture, are not intended by the Parties to be affected by this Settlement Agreement except to the extent expressly set forth herein.

(b)  This Settlement Agreement is entered into for settlement purposes only. Nothing contained herein shall be deemed an admission of any kind (whether an admission of liability or otherwise) by Lehman, DBTCA, individually or as the Trustee, or any of their affiliates, officers, directors or agents, in connection with any and all rights, remedies, claims, issues or defenses of the Parties or DBTCA regarding the Credit Default Swap Agreement or the Transactions thereunder, the Indenture, the payment of a termination payment to Lehman and/or Lehman's entitlement thereto prior to Noteholders, and the manner or method of calculating the termination payment and any interest due and payable thereon. In furtherance of and without limiting the generality of the foregoing, nothing herein shall constitute, or be deemed or construed to be, an agreement (or otherwise to create any obligation) on the part of any Party, including DBTCA, whether as Trustee or in any other capacity, to agree to any terms, or to enter into any agreement, or to take (or forbear from) any action with respect to any matter not explicitly provided for herein.

(c)  In consideration of each other Party's execution of this Settlement Agreement and payment of the Settlement Amount without deduction, setoff or counterclaim to Lehman, each Party hereby generally releases, discharges and acquits each other Party and

DBTCA (individually and as Trustee), and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (collectively, the "Released Transaction Parties" and each of the foregoing, is a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent (collectively "Claims"), that such releasing Party ever had or claimed to have, or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Indenture, the CDS Payment Dispute or the Credit Default Swap Agreement or the Transactions thereunder, their negotiation, execution, performance, any breaches (or claimed breaches) thereof or thereunder, or their termination.

(d) Nothing contained in this Section 2 shall affect the rights and obligations of the parties under the Indemnity Agreement dated July 15, 2012 between Lehman and the Trustee (the "Indemnity Agreement").

Section 3.    Liquidation.  On the date hereof, Lehman, as Holder of at least 66 2/3% of the Aggregate Outstanding Amount of the Class A Notes, will direct the Trustee in writing to sell and liquidate the Collateral by letter substantially in the form attached hereto as Exhibit A.

Section 4.    Settlement of Claims.  On the Effective Date (as defined below) (i) LBSF shall be authorized to provide a copy of this Settlement Agreement to Epiq Bankruptcy Solutions, LLC with instructions to update the claims registry accordingly and withdraw the Proofs of Claim, and the Proofs of Claim shall be deemed fully and forever expunged, extinguished, disallowed and released, and (ii) Lehman shall prepare and file dismissals with prejudice of the Trustee and the Co-Issuers as defendants from all applicable adversary proceedings filed against them.

Section 5.    Representations.  Each Party represents and warrants to each other Party and DBTCA that (i) the execution, delivery, and performance by such Party of this Settlement Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Settlement Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Settlement Agreement, the Indemnity Agreement and documents delivered in connection therewith (iv) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (v) it has no expectation that any of the other Parties will disclose facts material to the Credit Default Swap Agreement or this Settlement Agreement in violation of the terms of this Settlement Agreement, and (vi) it knowingly waives any and all claims that this Settlement Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Settlement Agreement based upon currently existing facts, known or unknown. The Parties agree and stipulate that each Party

is relying upon the representations and warranties in this Section in entering into the Settlement Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Settlement Agreement. These representations and warranties shall survive the execution of this Settlement Agreement indefinitely without regard to statutes of limitations.

Section 6. Execution in Counterparts. This Settlement Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 7. Effectiveness. The parties will cooperate in good faith to seek entry of an order ("Order") by the Bankruptcy Court under Rule 9019 of the Federal Rules of Bankruptcy Procedure in substantially the form attached hereto as Exhibit B. This Settlement Agreement shall become effective only when such an Order is entered by the Bankruptcy Court and has become final and non-appealable or, if a timely appeal is filed, upon dismissal of such appeal or the affirmance of the Order on appeal with no further opportunity to appeal (the "Effective Date").

Section 8. Governing Law. This Settlement Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Settlement Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 9. Special Provision for Unknown Claims. All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the release in Section 2. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 10. Confidentiality. DBTCA shall not disclose this Settlement Agreement or its terms, including the Settlement Amount ("Confidential Information"), to any person other than to (a) the Secured Parties, (b) the Co-Issuers, (c) the Preference Shareholders or (d) its directors, officers, affiliates, employees, auditors, counsel and other advisors who need to know such information solely for the purpose of effecting this Settlement Agreement, except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws (including to the extent required in connection with obtaining the

Order) or by any governmental agency, regulatory authority, or self-regulatory authority (including, without limitation, bank and securities examiners) having or claiming to have authority to regulate or oversee any aspect of DBTCA's business or that of its affiliates in connection with the exercise of such authority or claimed authority. It is understood that DBTCA will ensure that any person to whom Confidential Information is disclosed will be informed in advance of the confidential nature of the Confidential Information and will be requested to maintain the confidentiality of such Confidential Information.

Section 11.    <u>Successors and Assigns</u>.    The provisions of this Settlement Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 12.    <u>Amendment</u>.    This Settlement Agreement may only be amended, modified, superseded or canceled and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 13.    <u>Entire Agreement</u>.    This Settlement Agreement constitutes the entire agreement and understanding of the Trustee and the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 14.    <u>Execution by Trustee</u>.    DBTCA is executing this Agreement solely in its capacity as the Trustee and not in its individual capacity. In entering into this Settlement Agreement, the Trustee shall have the rights, immunities and other protections granted to it under the Indenture. The Trustee shall have no duties or obligations under this Settlement Agreement except for such duties expressly set forth herein. Neither DBTCA nor any of its respective officers, directors, shareholders or agents shall be liable for any claim, liability, or obligation arising out of this Settlement Agreement except (i) to cause the payment of the Settlement Amount from the Synthetic Security Collateral Account as provided in, and subject to the terms of, Section 1(a) of this Settlement Agreement and handling any remaining amounts on deposit in the Synthetic Security Collateral Account as provided in, and subject to the terms of, Sections 1(b) of this Settlement Agreement, and (ii) to comply with those terms expressly applicable to it under Sections 2 and 3 of this Settlement Agreement.

Section 15.    <u>Construction</u>.    This Settlement Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Settlement Agreement or any of its provisions against the Party responsible for drafting this Settlement Agreement will not apply in any construction or interpretation of this Settlement Agreement.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Settlement Agreement on the date first written above.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: *[signature]*
Name: ROBERT HERSHAN
Title: VICE PRESIDENT

DEUTSCHE BANK TRUST COMPANY AMERICAS, not in its individual capacity but solely as the Trustee under the Indenture

By: _____

Name:
Title:

7

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Settlement Agreement on the date first written above.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:
Title:

DEUTSCHE BANK TRUST COMPANY AMERICAS, not in its individual capacity but solely as the Trustee under the Indenture

By: *[signature]*
Name: Stephen T. Hessler
Title: Director

By: *[signature: Susan Anderson]*
Name: Susan Anderson
Title: Assistant Vice President

7

## SCHEDULE 1

## Payment Instructions

**Citibank N.A., New York**
**Swift CITIUS33**
**ABA 021-000-089**
**For Lehman Brothers Special Financing Inc. - DIP**
**a/c 3078-4731**
**Reference: Gemstone VI CDO**

# EXHIBIT A

## Liquidation and Settlement Direction

July [ ], 2012

Deutsche Bank Trust Company Americas, as Trustee
Structured Credit Services
1761 East St. Andrew Place
Santa Ana, California 92705
Attention: Stephen T. Hessler, Director


Re:     **Gemstone CDO VI Ltd. – Instruction**


Dear Mr. Hessler:

Reference is made to the Indenture, dated as of August 17, 2006, by and among Gemstone CDO VI Ltd., as Issuer, Gemstone CDO VI Corp., as Co-Issuer and Deutsche Bank Trust Company Americas, as Trustee (when acting in such capacity, the "Trustee") and Securities Intermediary. Capitalized terms not otherwise defined in this letter shall have the meanings set forth in the Indenture.

Reference is also made to that certain adversary proceeding *LBSF v. U.S. Bank National Assoc., et al.*, Cause No. 10-03542 (JMP) (the "Adversary Proceeding") involving the Issuer and the Trustee.

Reference is also made to the Indemnity Agreement dated as of July [ ], 2012 by and between Lehman Brothers Special Financing Inc. ("LBSF") and the Trustee (the "Indemnity Agreement").

Pursuant to the provisions of Article V and Article VI of the Indenture, a Majority of the Controlling Class has the right to direct the Trustee with respect to the exercise of certain trusts, rights, remedies and powers conferred on the Trustee under the Indenture and the Credit Default Swap Agreement, whether at law or in equity. Pursuant to Article V of the Indenture, the Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Class A Notes may, subject to the provisions of Article V, direct the sale and liquidation of the Collateral.

LBSF hereby represents and warrants that as of the date hereof, Class A-1 Notes held by it constitute a Majority of the Controlling Class under the Indenture and at least 66 2/3% of the Aggregate Outstanding Amount of the Class A Notes.

LBSF, in its capacity as holder of a Majority of the Controlling Class, is exercising its rights under Article V and Article VI of the Indenture and hereby instructs the Trustee to (a) enter into a 9019 Settlement Agreement (as defined in the Indemnity Agreement) with LBSF substantially in the form of Exhibit A hereto to settle the Adversary Proceeding with respect to disputes between the Issuer and the Trustee, and (b) take such steps as are necessary or desirable in order to effect the transaction contemplated by such 9019 Settlement Agreement.

LBSF, in its capacity as holder of at least 66 2/3% of the Aggregate Outstanding Amount of the Class A Notes, hereby directs the sale and liquidation of the Collateral.

This letter constitutes a Settlement Direction and a Liquidation Direction for purposes of the Indemnity Agreement.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____
    Name:
    Title:
        Its duly authorized officer

EXHIBIT B

Form of Order

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT
AGREEMENT AND INDEMNITY AGREEMENT BETWEEN LEHMAN BROTHERS
SPECIAL FINANCING INC. AND DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE, RELATING TO CREDIT DEFAULT SWAP AGREEMENT

Upon the motion, dated July 16, 2012 (the "Motion"), of Lehman Brothers Holdings Inc. (the "Plan Administrator") as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, on behalf of Lehman Brothers Special Financing Inc. ("LBSF"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement agreement (the "Settlement Agreement") and an indemnity agreement (the "Indemnity Agreement") between LBSF and Deutsche Bank Trust Company Americas, as Trustee (the "Trustee"), relating to a credit default swap agreement, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the Trustee; and (vi) all parties who have requested notice in the Chapter 11 Cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBSF, its estate, its creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement Agreement and the Indemnity Agreement are approved; and it is further

      ORDERED that LBSF is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and the Indemnity Agreement and to perform any and all obligations contemplated therein; and it is further

ORDERED that the Trustee is authorized to pay the CDS Payment Amount[1] and the Trustee Amount from the Synthetic Security Collateral Account, and to distribute the remaining funds in such account, in accordance with the terms of the Settlement Agreement; and it is further

ORDERED that the Trustee is authorized to effectuate the Wind-Down Provisions for the purpose of liquidating any remaining collateral and distributing the proceeds thereof in accordance with the terms set forth in the Indenture; and it is further

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2012
       New York, New York

                                         _____
                                         UNITED STATES BANKRUPTCY JUDGE

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.