**Exhibit B**

**EXECUTION**

INDEMNITY AGREEMENT

This INDEMNITY AGREEMENT (the "**Agreement**") is made as of July 15, 2012 by and between Lehman Brothers Special Financing Inc. ("**LBSF**" or the "**Indemnitor**", which includes any successor to LBSF pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "**Plan**") and Order dated December 6, 2011, confirming the Plan (the "**Confirmation Order**"))) and Deutsche Bank Trust Company Americas, as Trustee (when acting in such capacity, the "**Trustee**") under the Indenture described below.

All capitalized terms not defined herein but defined in that certain Indenture, dated as of August 17, 2006 (the "**Indenture**"), by and among Gemstone CDO VI Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands (the "**Issuer**"), Gemstone CDO VI Corp., a corporation organized under the laws of the State of Delaware (the "**Co-Issuer**") (the Issuer and the Co-Issuer are hereinafter sometimes referred to collectively as the "**Co-Issuers**") and the Trustee, shall have the meanings given to such terms in the Indenture.

Preliminary Statements:

A.    On May 22, 2009, the Trustee delivered to the Holders a written notice that an Event of Default had occurred under Section 5.1(a) of the Indenture; and

B.    As a result of the occurrence and continuance of this Event of Default, and acting in accordance with Section 5.2(a) of the Indenture, LBSF, as a Majority of the Controlling Class, by notice to the Co-Issuers, the Trustee and each Rating Agency dated February 9, 2012, declared all principal outstanding under the Notes, together with all accrued and unpaid interest thereon, to be immediately due and payable in full; and

C.    Pursuant to the provisions of Article V and Article VI of the Indenture, a Majority of the Controlling Class has the right, upon the occurrence and continuance of any Event of Default, to direct the Trustee to exercise certain rights and remedies available to the Trustee under the Indenture and the other Transaction Agreements as well as at law or in equity; provided, however, that, among other things, (i) the Trustee shall have been provided with indemnity satisfactory to it; and (ii) the Trustee retains all of its rights and other protections available under the Indenture and applicable law ; and

D.    Pursuant to the provisions of Sections 5.4(a), 5.5(a)(ii), 5.13 and 5.17 of the Indenture, and exercising its rights under the Indenture as a Holder of at least 66 2/3% of the Aggregate Outstanding Amount of the Controlling Class, LBSF, may deliver to the Trustee a certain Liquidation Direction (the "**Liquidation Direction**"), pursuant to which, among other things, LSBF, may direct the Trustee to liquidate the Collateral, (the actions described in this paragraph (D) are hereinafter sometimes referred to collectively as the "**Liquidation**"); and

E.    LBSF, as Synthetic Security Counterparty, has received a "Notice Designating An Early Termination Date Pursuant to Section 6(a) of the ISDA Master Agreement Referenced Below" dated September 16, 2008, but as of the date hereof, neither party to the Synthetic Security has paid any amounts (including termination payments) that may have become due to the other party on or after September 16, 2008 under the Synthetic Securities or the related Master Agreement due to a dispute regarding, among other things, the terms of the Indenture applicable to a termination payment (the "**CDS Payment Dispute**"); and

13724661.13

F. LBSF, in its capacity as a Majority of the Controlling Class, may direct the Trustee to enter into a settlement agreement with the Synthetic Security Counterparty (the "**Settlement Direction**") regarding the CDS Payment Dispute, such settlement agreement to be subject to court approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**9019 Settlement Agreement**"); and

G. LBSF, in its capacity as a Majority of the Controlling Class, may provide to the Trustee certain additional directions to exercise (or not to exercise) certain rights and remedies which the Trustee now has or may hereafter have under the Indenture or at law or in equity (the Liquidation Direction, the Settlement Direction and any such additional directions which LBSF may hereafter deliver to the Trustee from time to time are hereinafter sometimes referred to collectively as the "**Directions**"); and

H. In accordance with the provisions of Section 6.3(e) of the Indenture, and as a condition precedent to the Trustee complying with such Directions from LSBF, and as a material inducement to the Trustee's entry into that certain Settlement Agreement dated on or about the date hereof, the Trustee has requested that LBSF enter into this Agreement.

NOW, THEREFORE, in order to induce the Trustee to comply with such Directions from LBSF, and in consideration thereof, and in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Indemnitor hereby agrees with the Trustee as follows:

1. <u>Preliminary Statements</u>. The Preliminary Statements of this Agreement are true, correct and complete in all material respects.

2. <u>Representations, Warranties and Certifications</u>.

2.1 <u>Representations, Warranties and Certifications – Indemnitor</u>. The Indemnitor hereby represents, warrants and certifies to the Trustee that:

(a) LBSF is the beneficial owner of at least 66 2/3% of the Aggregate Outstanding Amount of the Class A Notes due to its ownership of an Aggregate Outstanding Amount of the Class A-1 Notes that constitutes at least 66 2/3% of the Class A Notes, and in such capacity constitutes a Majority of the Controlling Class under the Indenture;

(b) the Indemnitor is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized, and has the power and authority, and the legal right, to enter into this Agreement and to perform all of its obligations hereunder;

(c) this Agreement has been executed and delivered by a duly authorized officer or director of the Indemnitor;

(d) this Agreement constitutes a legal, valid and binding obligation of the Indemnitor, enforceable against the Indemnitor, in accordance with its terms except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law); and

(e)  the Indemnitor has obtained all requisite and necessary approvals to enter into this Agreement pursuant to the Plan and Confirmation Order.

2.2  Representations, Warranties and Certifications – Trustee.  The Trustee hereby represents, warrants and certifies to the Indemnitor that:

(a)  the Trustee is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized, and has the power and authority, and the legal right, to enter into this Agreement and to perform all of its obligations hereunder;

(b)  this Agreement has been executed and delivered by a duly authorized officer of the Trustee; and

(c)  this Agreement constitutes a legal, valid and binding obligation of the Trustee, enforceable against the Trustee, in accordance with its terms except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

3.  Directions.

3.1  Liquidation Direction.  In accordance with Sections 5.4(a), 5.5(a)(ii), 5.13 and 5.17 of the Indenture, and exercising its rights under the Indenture as the Holder of more than 66 2/3% of the Controlling Class, LBSF, together with other Holders, may direct the Trustee to take certain actions, all as more particularly described in the Liquidation Direction.  LBSF may specify in a Liquidation Direction that such Liquidation Direction is subject to the approval of the United States Bankruptcy Court (the "**Bankruptcy Court**").

3.2  Settlement Direction.  In accordance with Section 5.13 of the Indenture, and exercising its rights under the Indenture as the Holder of more than 66 2/3% of the Controlling Class, LBSF may provide a Settlement Direction directing the Trustee to enter into 9019 Settlement Agreement with LBSF as the Synthetic Security Counterparty.  The Trustee hereby agrees to enter into such 9019 Settlement Agreement with LBSF as the Synthetic Security Counterparty; provided, however, that:

(a) the proposed 9019 Settlement Agreement is in all respects satisfactory to the Trustee in its sole discretion; and

(b) the effectiveness of any such 9019 Settlement Agreement shall be subject to (i) approval by the Bankruptcy Court and (ii) 30-days prior notice of such 9019 Settlement Agreement having been provided to the Securityholders, any beneficial owners of Securities that have identified themselves to the Trustee, the Secured Parties and any other persons entitled to notice in accordance with the procedures set forth in any applicable orders of the Bankruptcy Court.

3.3  Additional Directions.  LBSF may, from time to time, hereafter provide to the Trustee one or more additional Directions to pursue, or not to pursue, certain rights and remedies which the Trustee now has or may hereafter have under the Indenture or at law or in equity.

3.4     Clarifications.  If the Trustee reasonably determines that any Direction (including the Liquidation Direction or the Settlement Direction) requires any clarification or supplementation, the Trustee shall promptly advise LBSF in writing of such circumstances.  LBSF, upon written request of the Trustee, shall provide to the Trustee one or more additional Directions to so clarify or supplement such Direction, and the Trustee shall be protected under Section 4 of this Agreement in respect of any action that it may take or not take pending such additional Directions.

3.5     Form of Directions.  Any Direction given to the Trustee pursuant to this Agreement may be given in either oral or written form by LBSF; provided, however, that the Trustee shall be entitled but not obligated to require that such Directions be given or confirmed in writing.  The Trustee may rely on and act upon any Direction given by LBSF and need not inquire as to the due authorization thereof.  The giving of any Direction by LBSF shall constitute a representation by it that such Direction has been duly authorized.

3.6     Trustee's Duties and Rights.  The Indemnitor acknowledges and agrees that nothing contained in this Agreement or in any Direction shall alter the rights and obligations of the Trustee under the Indenture, including, without limitation, the right of the Trustee to refuse to follow certain Directions (including, without limitation, Directions delivered by a Majority of the Controlling Class) (a) which may involve Deutsche Bank Trust Company Americas in individual liability for which sufficient indemnity has not been provided to it or (b) which are inconsistent or conflict with the provisions of the Indenture or any of the other Transaction Agreements.  The Trustee hereby expressly reserves any rights and remedies that it may now or hereafter have under the Indenture or any of the other Transaction Agreements or at law or in equity to seek such instruction or clarification from any court of competent jurisdiction as the Trustee may deem necessary or otherwise appropriate in connection with, or in order to facilitate or effectuate, the Liquidation, any payment made to the Synthetic Security Counterparty (including pursuant to a 9019 Settlement Agreement) or the distribution of the proceeds of the Liquidation in accordance with the applicable provisions of the Indenture.

4.     Indemnification.

4.1     General.  The Indemnitor does hereby irrevocably, unconditionally agree to pay, reimburse and be liable to the Trustee,[1] Deutsche Bank Trust Company Americas individually, and each of their officers, directors, employees, agents, advisors, successors, and assigns (collectively, the "**Indemnified Persons**" and each, an "**Indemnified Person**"), on demand for, and to indemnify and hold harmless each such Indemnified Person from and against, any and all losses, liabilities, judgments, claims, causes of actions, damages, costs (including court costs), expenses, fees (including reasonable legal fees, costs and expenses), penalties, disbursements, and liabilities of any kind or character whatsoever, and whether brought by or involving any third party or LBSF (the "**Losses**") which any such Indemnified Person now or hereafter incurs or otherwise sustains, and which directly or indirectly arise out of any of the following matters (hereinafter referred to collectively as the "**Indemnified Matters**" and each singly as an "**Indemnified Matter**"):

---

[1] As used in Sections 4 and 5 of this Agreement, the term "Trustee" shall also be deemed to include and refer to include all capacities in which Deutsche Bank Trust Company Americas may serve under the Indenture or any other Transaction Agreements (including but not limited to, service as Securities Intermediary, Collateral Administrator, Preference Share Paying Agent, Calculation Agent and Note Registrar), each of which shall be included in the indemnification and agreement to hold harmless as set forth herein.

- 4 -

13724661.13

(a) this Agreement or any Direction (including, without limitation, any action (or forbearance from action) taken by the Trustee or any of the other Indemnified Persons, in each case, whether pursuant to, in compliance with, as provided in, or otherwise in response to, this Agreement or any Direction or any part hereof or thereof); or

(b) the payment of a termination payment to the Synthetic Security Counterparty pursuant to a Settlement Direction or a 9019 Settlement Agreement; or

(c) any determination that the Trustee or any other Indemnified Person breached any of its fiduciary or other duties under the Indenture or any of the other Transaction Agreements as a result of relying upon, or complying with, any Direction or any part thereof; or

(d) any enforcement by the Trustee or any other Indemnified Person of this Agreement; or

(e) any action taken or not taken by the Trustee or any other Indemnified Person with respect to any matter as to which the Trustee shall have requested, but not timely received, from LBSF clarification, modification or supplementation of any Direction; or

(f) any litigation, claims, causes of actions, arbitration or other proceeding or investigation relating to, or arising out of, or in connection with, this Agreement or any Direction (including without limitation, any such litigation, claims, causes of actions, arbitration or other proceeding or investigation concerning whether any aspect of a sale, liquidation or other disposition of any of the Collateral pursuant to the Directions was not commercially reasonable (as such term is defined or used in Sections 9-610(b) and 9-627 of the Uniform Commercial Code as in effect in the State of New York as of the date hereof)(hereinafter referred to collectively as "**Commercial Reasonableness Claims**") or was not in compliance with the applicable provisions of the Indenture or any of the other Transaction Agreements (hereinafter referred to collectively as "**Compliance Claims**");

provided, however, that the foregoing indemnity ("**Indemnity**"):

(i) shall be limited to any Losses incurred by an Indemnified Person until the earliest to occur of (A) the sixth anniversary of the final distribution of the proceeds of a Liquidation of all of the Collateral and (B) the sixth anniversary of the effective date of a 9019 Settlement Agreement entered into by the Trustee and LBSF as Synthetic Security Counterparty (the earliest such date to occur, the "**Termination Date**"), provided further, however that: (1) no Losses that constitute expenses of legal counsel incurred after the payment by the Trustee of the settlement amount payable under a 9019 Settlement Agreement shall have the benefit of any Indemnity unless (x) incurred in connection with a litigation brought by a third-party after such payment has been made or (y) prior to incurring such expenses, to the extent reasonably practicable, the Trustee has provided the Indemnitor with written notice that such expenses will be incurred and an opportunity to attempt to mitigate such expenses, and (2) any right to indemnification that has been

- 5 -

13724661.13

asserted by any Indemnified Person on or prior to the Termination Date relating to an Action (as defined below) with respect to which (x) an initial filing has been made to a court of competent jurisdiction or an arbitrator properly authorized to hear the Action (as defined below) as of the Termination Date or (y) has been threatened by written notice to such Indemnified Person as of the Termination Date (but with respect to which no initial filing has been made to a court of competent jurisdiction or an arbitrator properly authorized to hear the Action (as defined below) as of the Termination Date), may continue to be so asserted after the Termination Date and such Indemnified Person shall continue to be so indemnified pursuant to the provisions of this Agreement until the date on which such Action (as defined below) has been fully and finally resolved; and

(ii) shall not apply to any Losses that are incurred by an Indemnified Person where there is a final determination by a court of competent jurisdiction that is not subject to review on appeal that such Losses are the result of such Indemnified Person's gross negligence, willful misconduct or fraud, in each case after giving effect to all applicable exculpatory provisions, immunities, and protections available to such Indemnified Person under the Indenture and the other Transaction Agreements (including without limitation, those exculpatory provisions and protections available to the Trustee set forth in Sections 6.1 and 6.3 of the Indenture).

If the Trustee complies in all material respects with each and every Direction from LBSF, then notwithstanding any provision contained in this Agreement to the contrary but subject to the limitations set forth in proviso (i) of Section 4.1(a), this Indemnity shall apply to any Losses now or hereafter incurred by any Indemnified Person that arise from, or relate to, any Commercial Reasonableness Claim or any Compliance Claim, even if there is a final determination by a court of competent jurisdiction that is not subject to review on appeal that such Losses are the result of such Indemnified Person's gross negligence.

4.2     **Indemnified Persons - Limitation on Liability**.  The Indemnitor hereby agrees for the benefit of the Indemnified Persons that none of the Indemnified Persons shall have any liability to the Indemnitor, or any Person asserting claims on behalf of or in right of the Indemnitor arising out of or in connection with the Indemnified Matters, except to the extent that subject to the provisions of the last sentence of Section 4.1 above, any Losses result from the gross negligence, willful misconduct or fraud of an Indemnified Person in acting under, or performing the services that are the subject of, the Directions.

5.     **Defense of Actions**.

5.1     **Selection of Counsel**.

(a)     Upon the commencement of any claim, cause of action, litigation, proceeding, action or investigation covered by this Indemnity (an "**Action**"), the applicable Indemnified Person with actual notice of such Action shall promptly thereafter deliver a written notice thereof to the Indemnitor.  Subject to the terms and conditions set forth in Section 5.1(b) of this Agreement, the Indemnitor shall be entitled to assume the defense of all Indemnified Persons in connection with any such Action (including the employment of counsel reasonably satisfactory to the Indemnified Person(s)) and is hereby obligated to pay all of the fees and disbursements of such counsel.  The failure of such Indemnified Person to provide such prompt notice to the Indemnitor shall not relieve the Indemnitor of its obligations under this Agreement unless the Indemnitor is materially prejudiced by such failure.

(b)  Notwithstanding any provision contained in this Agreement to the contrary, (i) if the Indemnitor fails to employ legal counsel reasonably satisfactory to the Indemnified Person to represent such Indemnified Person promptly after receipt of written notice provided above or if such counsel shall fail to proceed with diligence and in good faith with respect thereto; or (ii) if such Indemnified Person reasonably believes that the use of legal counsel chosen by the Indemnitor to represent such Indemnified Person would present such counsel with a conflict of interest; or (iii) if a joint representation is proposed and such Indemnified Person reasonably concludes after consultation with the Indemnitor and counsel chosen by the Indemnitor that such counsel cannot adequately represent such Indemnified Person because the legal defenses available to it are different from, in addition to, or inconsistent with those defenses asserted by the Indemnitor on its own behalf or by other Indemnified Persons in such joint representation; or (iv) if for that or some other reason, full and zealous representation by such designated counsel of the Indemnitor or other Indemnified Person undermines the Indemnified Person's own defense, then in such case, the Indemnified Person may employ separate counsel of a nationally-recognized law firm of its own choosing and the Indemnitor shall bear the full cost and expense of such separate counsel.  The Indemnitor, however, shall not, be liable for the fees and expenses of more than one separate firm (in addition to one local counsel per jurisdiction) for such Indemnified Person in connection with any proceeding or related proceedings arising from an Action brought in the same jurisdiction at the same time arising out of the same general allegations or circumstances.

5.2    Actions - Duty to Cooperate.  In the event that an Indemnified Person becomes involved in any Action, the Indemnitor will pay all Losses incurred by such Indemnified Party in such Action, and during the pendency of such Action, will promptly reimburse[2] such Indemnified Person for all fees, costs and expenses (including legal fees, costs and expenses) incurred by such Indemnified Person arising out of, related to or connected with, such Action; provided, however, it is understood and agreed that such Indemnified Person will execute and deliver to the Indemnitor an undertaking to the effect that if a final determination is made by a court of competent jurisdiction that is not subject to review on appeal that such Indemnified Person is not entitled to Indemnity for such Losses under this Agreement, then such Indemnified Person will repay to the Indemnitor all such fees, costs and expenses which the Indemnitor so reimbursed such Indemnified Person.  The Indemnitor also agrees to cooperate with the Indemnified Persons in connection with any such Action and to give, and so far as it is able to procure the giving of, all such information and render all such assistance to Indemnified Persons as such Indemnified Persons may reasonably request in connection with any such Action.

5.3    Limitation on Settlements.  The Indemnitor shall not be liable for any settlement of any Action effected without its prior written consent (which prior written consent shall not be unreasonably withheld or delayed), and neither an Indemnified Person nor the Indemnitor shall make any settlement of any claim which would give rise to liability on the part of the other under this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed; provided, however, that neither an Indemnified Person nor the Indemnitor shall be required to consent to any settlement involving the imposition of any material

---

[2] Such reimbursement shall occur promptly but in any event, within seven (7) calendar days after the delivery by the Trustee to the Directing Party a written demand for such payment, together with copies of the written invoices in reasonable detail of such fees, costs and expenses (but as such invoices may be redacted in order not to disclose or otherwise preserve any privileges, work-products or legitimate confidentialities of the Trustee).

13724661.13

- 7 -

equitable remedy against it, any admission of wrongdoing on the part of the Indemnitor or such Indemnified Person or involving the imposition of any material obligation on such Indemnified Person, other than financial obligations for which the Indemnified Person will be indemnified hereunder.  An Indemnified Person will not be required to consent to entry of any judgment or to enter into any settlement which does not include an unconditional release given by the claimant or plaintiff from all liability in respect of such claim or litigation covered by this Agreement.

6.      Fees and Expenses.

6.1     General.  The Indemnitor recognizes and acknowledges that in connection with the negotiation, execution and delivery by the Trustee of this Agreement and the performance by the Trustee of all of its obligations hereunder and all of the actions or inactions to be taken by the Trustee pursuant to this Agreement or any Direction (including without limitation, those actions more particularly described in a Liquidation Direction or a Settlement Direction), the Trustee has charged and will charge hourly fees and incur certain reasonable out-of-pocket costs and expenses (collectively, the "**Default Administration Charges**") and has retained the law firm of Nixon Peabody LLP as its special counsel and, in connection with any Liquidation, will retain a liquidation agent (the "**Liquidation Agent**").  Subject to and in accordance with terms and conditions of Section 6.2 below, the Indemnitor agrees to pay the Default Administration Charges and the reasonable fees, costs and expenses of Nixon Peabody LLP and the Liquidation Agent incurred from time to time in connection therewith (including, without limitation, the preparation, negotiation, execution, delivery and performance by the Trustee of this Agreement and the Directions (said reasonable fees, costs and expenses of Nixon Peabody LLP and the Liquidation Agent, together with the Default Administration Charges, are hereinafter sometimes referred to collectively as the "**Fees and Expenses**"), provided that no amounts excluded from the Indemnity pursuant to clause (i) of the proviso to Section 4.1 shall constitute Fees and Expenses).

6.2     Payment By Indemnitor.  The Indemnitor and the Trustee acknowledge and agree that:

(a)     Prior to any Distribution Date,[3] the Trustee shall deliver to the Indemnitor written invoice(s) for all of the then unpaid Fees and Expenses to be paid on such Distribution Date;

(b)     To the maximum extent permitted under the provisions of the Indenture, the Trustee will pay any and all Fees and Expenses which may be paid in Cash as an Administrative Expense on such Distribution Date;

(c)     If for any reason, whether due to any so-called "cap" on the amount of Administrative Expenses contained in Article 11 of the Indenture or otherwise, any portion of such Fees and Expenses would not otherwise be paid in full in Cash from the Accounts on such Distribution Date (said portion of such Fees and Expenses is hereinafter referred to as the "**Unpaid Capped Fees and Expenses**"), then the Indemnitor will pay the Unpaid Capped Fees and Expenses in full on such Distribution Date, it being understood and agreed that the Trustee may deduct from those amounts to

---

[3] As used in this Agreement, the term "**Distribution Date**" shall mean any quarterly payment date under the Indenture or any other date fixed from time to time by the Trustee for a distribution to be made as contemplated by the applicable provisions of the Indenture.

- 8 -

13724661.13

be distributed to LBSF as holder of Notes on such Distribution Date an amount sufficient to pay in full all such Unpaid Capped Fees and Expenses otherwise payable in accordance with this Agreement; and

(d) In connection with a Liquidation, any Fees and Expenses which have not been paid by the last day of the first calendar month following the calendar month in which the first settlement of the sale of the Underlying Assets occurs shall be paid in full by the Indemnitor within fifteen (15) calendar days after its receipt from the Trustee of invoices for such unpaid Fees and Expenses.

7. <u>Rights of Subrogation</u>.  If the Indemnitor makes payment to any Indemnified Person under this Agreement, then after the payment in full in cash of all sums due and owing by the Indemnitor to the Indemnified Persons under this Agreement, the Indemnitor shall become subrogated to the rights of the Trustee under the Indenture to obtain reimbursement from the Co-Issuers therefor or from any money or property collected by the Trustee to the extent such money or property is available for such use under the Indenture.  The Indemnitor hereby acknowledges and agrees that reimbursement from the Co-Issuers, or from any money or property collected by the Trustee, for any payments made by the Indemnitor to any Indemnified Person may not be successful, and any such failure to obtain reimbursement from the Co-Issuers or the Trustee shall not result in any claim for refund or otherwise against the Trustee.  After the payment in full in cash of all sums due and owing by the Indemnitor to the Indemnified Persons under this Agreement, the Trustee hereby agrees to cooperate with the Indemnitor in connection with its efforts to obtain reimbursement from the Co-Issuers for any payments made by the Indemnitor to any Indemnified Person, and to provide, so far as the Trustee determines (in its sole, reasonable judgment) that it is able to do so, all such information and render all such assistance to the Indemnitor as the Indemnitor may reasonably request in connection with obtaining such reimbursement; <u>provided, however</u>, that all fees, costs and expenses incurred by the Trustee (including reasonable legal fees, costs and expenses) in connection with so cooperating with the Indemnitor and providing such information and assistance will be paid promptly by the Indemnitor upon demand therefor.

8. <u>Miscellaneous</u>.

8.1 <u>No Waivers</u>.  The failure or delay of a party in exercising any right granted it hereunder shall not constitute a waiver of any such right, and any single or partial exercise of any particular right by such party not exhaust the same or constitute a waiver of any other right provided herein.

8.2 <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.3 <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and each thereof shall be deemed to be an original; all such counterparts shall constitute but one and the same instrument.  The delivery of signature pages by facsimile transmission or e-mail shall constitute effective execution and delivery of this Agreement and signature by facsimile or e-mail shall be deemed to be such party's original signature for all purposes; <u>provided, however</u>, that the Trustee shall be entitled nevertheless to require delivery of the original counterpart.

13724661.13

- 9 -

8.4    Notices.  All notices, requests and demands to or upon the respective parties hereto to be effective shall, unless otherwise expressly provided herein, be in writing (including by facsimile or e-mail transmission), and shall be deemed to have been duly given when delivered by hand, or when sent by facsimile transmission, answer back received, or when sent by e-mail, on the date of transmission (provided that no "out of office" return message has been received), or on the first Business Day after delivery to any overnight delivery service, freight prepaid, or three (3) Business Days after being sent by certified or registered mail, return receipt requested, postage prepaid, and addressed as follows, or to such other address as may be hereafter notified by the respective parties hereto:

(a)    If to the Indemnitor,
       then to:            Lehman Brothers Special Financing Inc.
                           1271 Avenue of the Americas
                           New York, NY 10020
                           Attention: Robert Hershan
                           Facsimile No.: 646-285-9701
                           Telephone No.: 646-285-9181
                           E-mail: LBHISPVNotices@lehmanholdings.com

(b)    If to the Trustee,
       then:               Deutsche Bank Trust Company Americas
                           Global Transaction Banking
                           Structured Credit Services
                           1761 East St. Andrew Place
                           Santa Ana, CA 92705-4934
                           Attention: Stephen T. Hessler, Director
                           Facsimile No.:  714.656.2569
                           Telephone No.:  714.247.6294
                           E-mail: stephen.t.hessler@db.com

       with a copy to:     Nixon Peabody LLP
                           100 Summer Street
                           Boston, MA  02110
                           Attention:  Amanda D. Darwin, Esq.
                           Facsimile No.:  866.244.1528
                           Telephone No.:  617.345.1042
                           E-mail:  adarwin@nixonpeabody.com

8.5    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective representatives, successors and assigns; provided, however, the Indemnitor may not assign or transfer any of its rights, obligations, liabilities or duties under this Agreement.

8.6    Amendments.  This Agreement may be amended or modified only in a written document signed by all of the parties hereto.

8.7    Interpretation of Agreement.  Should any provision of this Agreement require interpretation or construction, it is agreed by the parties hereto that the court, administrative body, or other entity interpreting or construing this Agreement shall not apply a presumption that the provisions thereof shall be more strictly construed against one party by reason of the rule of

- 10 -

13724661.13

construction that a document is to be construed more strictly against the party who itself or through its agents prepared the same, it being agreed that all parties or their respective attorneys and agents have fully participated in the preparation of all provisions of this Agreement.

        8.8      Governing Law; Consent to Jurisdiction; Service of Process. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK AND THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA. If any party hereto commences a suit, action or proceeding arising out of or relating to this Agreement, each of the parties irrevocably agrees that the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any such suit, action or proceeding and, for such purposes, irrevocably submits to the jurisdiction of such court. If the Bankruptcy Court lacks subject matter jurisdiction with respect to any such suit, action or proceeding, each of the parties hereto irrevocably agrees that any state or federal court sitting in the City of New York shall have exclusive jurisdiction to hear and determine any such suit, action or proceeding and, for such purposes, irrevocably submits to the jurisdiction of such courts. The Indemnitor and the Trustee irrevocably waive, to the fullest extent permitted by law, any objection to any suit, action or proceeding that may be brought in connection with this Agreement in such courts whether on the grounds of venue, residence or domicile or on the ground that any such suit, action or proceeding has been brought in an inconvenient forum. The Indemnitor and the Trustee agree that final judgment in any such suit, action or proceeding brought in such court shall be conclusive and binding upon the Indemnitor and the Trustee, as the case may be, and may be enforced in any court to the jurisdiction of which they are subject, by a suit upon judgment. The Indemnitor and the Trustee waive service of process in New York and agree to be served by registered mail, return receipt requested, at their respective addresses, as set forth in Section 8.4 above.

        8.9      Waiver of Jury Trial. EACH PARTY TO THIS AGREEMENT HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

        8.10     Trustee's Execution. Deutsche Bank Trust Company Americas is entering into this Agreement pursuant to the Indenture solely in its capacity as Trustee and not in its individual capacity. In entering into or taking action (or forbearing from action) under this Agreement, the Trustee shall have the rights, immunities and other protections granted to it under the Indenture. The Trustee shall have no duties or obligations under this Agreement except for such duties as may be expressly set forth herein, in a Direction or in the Indenture.

        8.11     Reproduction and Admissibility. This Agreement may be reproduced by any photographic, photostatic, facsimile, or similar means or process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business; and any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

        8.12     Effectiveness. The parties agree that the effectiveness of this Agreement is subject to the entry of an order (**"Order"**) by the Bankruptcy Court, in form and substance reasonably acceptable to the parties, approving the terms of this Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure (**"Bankruptcy Rules"**), which Order has become final and non-appealable or, if a timely appeal is filed, upon dismissal of such appeal or the

affirmance of the Order on appeal with no further opportunity to appeal (the **"Effective Date"**). Without derogating from the Trustee's rights and obligations under the Indenture, the parties agree to cooperate in good faith to seek entry of the Order and achieve the Effective Date as soon as reasonably practicable.

**[THE REMAINDER OF THIS PAGE IS LEFT BLANK INTENTIONALLY]**

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed under their respective seals effective as of the date first above written.

**INDEMNITOR:**

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
  Name: ROBERT HERSHAN
  Title: VICE PRESIDENT
    Its duly authorized officer

**TRUSTEE:**

DEUTSCHE BANK TRUST COMPANY AMERICAS
as Trustee and not individually

By: _____
  Name:
  Title:
    Its duly authorized officer

By: _____
  Name:
  Title:
    Its duly authorized officer

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed under their respective seals effective as of the date first above written.

**INDEMNITOR:**

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____
   Name:
   Title:
      Its duly authorized officer

**TRUSTEE:**

DEUTSCHE BANK TRUST COMPANY AMERICAS
as Trustee and not individually

By: _/s/ Stephen T. Hessler_
   Name:  Stephen T. Hessler
   Title:   Director
      Its duly authorized officer

By: _/s/ Susan Anderson_
   Name:  Susan Anderson
   Title:   Assistant Vice President
      Its duly authorized officer