entitled, subject to the second paragraph of this Section 2.5, to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 2.5 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, defaced, destroyed, lost or stolen Notes.

### Section 2.6    Payment of Principal and Interest; Rights Preserved.

(a)    Interest. Each Class of Notes shall accrue interest during each Interest Period applicable to such Class at the applicable Note Interest Rate.  Interest on each Class of Notes shall be due and payable on each Distribution Date; provided that (i) payment of interest on the Class B Notes is subordinated to the payment on each Distribution Date of the interest due and payable on the Class A Notes (together with Defaulted Interest thereon and interest on such Defaulted Interest, if any), (ii) payment of interest on the Class C Notes is subordinated to the payment on each Distribution Date of the interest due and payable on the Class A Notes and the Class B Notes (together with Defaulted Interest thereon and interest on such Defaulted Interest, if any), (iii) payment of interest on the Class D Notes is subordinated to the payment on each Distribution Date of the interest due and payable on the Class A Notes, Class B Notes and Class C Notes (together with Defaulted Interest thereon, interest on such Defaulted Interest and Deferred Interest with respect to such Class, if any), (iv) payment of interest on the Class E Notes is subordinated to the payment on each Distribution Date of the interest due and payable on the Class A Notes, Class B Notes, Class C Notes and Class D Notes (together with any Defaulted Interest thereon, interest on such Defaulted Interest and Deferred Interest with respect to such Classes, if any), (v) payment of Excess Interest in respect of the Preference Shares is subordinated to the payment on each Distribution Date of the interest due and payable on the Notes (together with any Defaulted Interest thereon, interest on such Defaulted Interest and Deferred Interest with respect to the Notes, if any), and (vi) payments of interest on the Notes and Excess Interest in respect of the Preference Shares are subordinated to the payment on each Distribution Date of other amounts in accordance with the Priority of Payments.  Except as provided in Article X, Sections 12.1, 12.2 and 16.1, no payment shall be made by the Issuers hereunder other than on a Distribution Date.

So long as any Class A Notes or Class B Notes are Outstanding, any interest due on the Class C Notes which is not paid as a result of the operation of the Priority of Payments on any Distribution Date shall not be considered "due and payable" for the purposes of Section 5.1(a) and shall be added to the Aggregate Outstanding Amount of the Class C Notes.  Deferred Interest in respect of the Class C Notes accrued to any Distribution Date shall bear interest at the Class C Note Interest Rate and shall be payable on the first Distribution Date on which funds are permitted to be used for such purpose in accordance with the Priority of Payments.

So long as any Class A Notes, Class B Notes or Class C Notes are Outstanding, any interest due on the Class D Notes which is not paid as a result of the operation of the Priority of Payments on any Distribution Date shall not be considered "due and payable" for the purposes of Section 5.1(a) and shall be added to the Aggregate Outstanding Amount of the respective Class D Notes.  Deferred Interest in respect of the Class D Notes accrued to any Distribution Date shall bear interest at the Class D Note Interest Rate and shall be payable on the first Distribution Date on which funds are permitted to be used for such purpose in accordance with the Priority of Payments.

So long as any Class A Notes, Class B Notes, Class C Notes or Class D Notes are Outstanding, any interest due on the Class E Notes which is not paid as a result of the operation of the Priority of Payments on any Distribution Date shall not be considered "due and payable" for the purposes of Section 5.1(a) and shall be added to the Aggregate Outstanding Amount of the respective Class E Notes.  Deferred Interest in respect of the Class E Notes accrued to any Distribution Date shall bear interest at the Class E Note Interest Rate and shall be payable on the first Distribution Date on which funds are permitted to be used for such purpose in accordance with the Priority of Payments.

Upon the payment of Deferred Interest with respect to a Class of Notes, the Aggregate Outstanding Amount of such Class of Notes will be reduced by the amount of such payment.

30775-00034 NY:1268831.8

(b)    Principal. The principal of each Note shall be due and payable in accordance with the Priority of Payments on each Distribution Date commencing on the First Distribution Date, and in no event later than the Stated Maturity thereof unless the unpaid principal of such Note becomes due and payable at an earlier date by declaration of acceleration, call for redemption or otherwise;

*provided* that, so long as any Class A Notes are Outstanding, except as provided in Article IX and the Priority of Payments, the payment of Principal Proceeds to the Class B Notes, the Class C Notes, the Class D Notes and the Class E Notes and the payment of Excess Principal Proceeds in respect of the Preference Shares (x) may only occur after principal of the Class A Notes has been paid in full and (y) shall be subordinated to the payment on each Distribution Date of the principal and interest due and payable on the Class A Notes and other amounts payable in priority thereto in accordance with the Priority of Payments;

*provided further* that, so long as any Class A Notes or Class B Notes are Outstanding, except as provided in Article IX and the Priority of Payments, the payment of principal of the Class C Notes, the Class D Notes and the Class E Notes and the payment of Excess Principal Proceeds in respect of the Preference Shares (x) may only occur after principal of the Class A Notes and the Class B Notes have been paid in full and (y) shall be subordinated to the payment on each Distribution Date of the principal and interest due and payable on the Class A Notes and the principal and interest due and payable on the Class B Notes and other amounts payable in priority thereto in accordance with the Priority of Payments;

*provided further* that, so long as any Class A Notes, Class B Notes or Class C Notes are Outstanding, except as provided in Article IX and the Priority of Payments, the payment of principal of the Class D Notes and the Class E Notes and the payment of Excess Principal Proceeds in respect of the Preference Shares (x) may only occur after principal of the Class A Notes, Class B Notes and Class C Notes have been paid in full and (y) shall be subordinated to the payment on each Distribution Date of the principal and interest due and payable on the Class A Notes, the principal and interest due and payable on the Class B Notes, the principal and interest due and payable on the Class C Notes and other amounts payable in priority thereto in accordance with the Priority of Payments;

*provided further* that, so long as any Class A Notes, Class B Notes, Class C Notes or Class D Notes are Outstanding, except as provided in Article IX and the Priority of Payments, the payment of principal of the Class E Notes and the payment of Excess Principal Proceeds in respect of the Preference Shares (x) may only occur after principal of the Class A Notes, Class B Notes, Class C Notes and Class D Notes has been paid in full and (y) shall be subordinated to the payment on each Distribution Date of the principal and interest due and payable on the Class A Notes, the principal and interest due and payable on the Class B Notes, the principal and interest due and payable on the Class C Notes and the principal and interest due and payable on the Class D Notes and other amounts payable in priority thereto in accordance with the Priority of Payments;

*provided further* that, so long as any Class A Notes, Class B Notes, Class C Notes, Class D Notes or Class E Notes are Outstanding, except as provided in Article IX and the Priority of Payments, the payment of Excess Principal Proceeds in respect of the Preference Shares (x) may only occur after principal of the Class A Notes, Class B Notes, Class C Notes, Class D Notes and Class E Notes has been paid in full and (y) shall be subordinated to the payment on each Distribution Date of the principal and interest due and payable on the Class A Notes, the principal and interest due and payable on the Class B Notes, the principal and interest due and payable on the Class C Notes, the principal and interest due and payable on the Class D Notes and the principal and interest due and payable on the Class E Notes and other amounts payable in priority thereto in accordance with the Priority of Payments; and

*provided, however*, that (i) on each Distribution Date occurring during the Priority Distribution Period, any Excess Interest up to the Class D Priority Redemption Amount for such Distribution Date will be allocated to the payment of principal of the Class D Notes until 10% of the Aggregate Outstanding Amount of the Class D Notes as of the Closing Date is paid, (ii) on any Distribution Date occurring after August 2009, an amount equal to 15% of the remaining Interest Proceeds on such Distribution Date that

30775-00034 NY:1268831.8

would otherwise be paid as Excess Interest will be allocated to the payment of principal of the Class D Notes, until the Class D Notes are paid in full, and (iii) if no Optional Redemption, Auction Call Redemption, Clean-Up Call Redemption or Tax Redemption has been successfully completed before the Accelerated Amortization Date, on any Distribution Date occurring on or after the Accelerated Amortization Date, any Excess Interest will be allocated, first, to the payment of principal of the Class D Notes until the Class D Notes have been paid in full, second, to the payment of principal of the Class C Notes until the Class C Notes have been paid in full, third, to the payment of principal of the Class B Notes until the Class B Notes have been paid in full, fourth, to the payment of principal of the Class A-2 Notes until the Class A-2 Notes have been paid in full and fifth, to the payment of principal of the Class A-1 Notes until the Class A-1 Notes have been paid in full.

(c)      [Reserved].

(d)      Tax Certifications.

(i)      As a condition to the payment of any principal of or interest on any Note without the imposition of withholding tax, the Issuer or any Paying Agent may require certification acceptable to it to enable the Issuers, the Trustee and any Paying Agent (i) to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of such Note or the Holder of such Note under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation or (ii) to comply with any filing, reporting or other requirement under any present or future law, rule, regulation or interpretation of the Cayman Islands, the United States, any political subdivision thereof or any taxing authority therein in order to avoid the imposition of withholding or deduction of taxes or other charges on interest or principal payments on the Underlying Assets.

(ii)      As a condition to the payment of any principal of or interest on any Note without the imposition of withholding tax, any Paying Agent may require the previous delivery of properly completed and signed applicable U.S. federal income tax certifications (generally, an Internal Revenue Service Form W-9 (or applicable successor form) in the case of a person that is a "United States person" within the meaning of Section 7701(a)(30) of the Code or an Internal Revenue Service Form W-8 BEN (or applicable successor form) in the case of a person that is not a "United States person" within the meaning of Section 7701(a)(30) of the Code) or other certification acceptable to it to enable the Co-Issuers, the Trustee, and any Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of such Note or the Holder of such Note under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirement under any such law or regulation.

(e)      Method of Payment.  Payments in respect of principal of and interest on the Notes shall be payable by wire transfer in immediately available funds to a Dollar account maintained by the Noteholders in accordance with wire transfer instructions received by any Paying Agent on or before the Record Date, or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States mailed to the address of such Noteholder as it appears on the Note Register at the close of business on the Record Date for such payment.

(f)      Record Date.  The principal of and interest on any Note which is payable on a Redemption Date or in accordance with the Priority of Payments on a Distribution Date and is punctually paid or duly provided for on such Redemption Date or Distribution Date shall be paid to the Person in whose name that Note (or one or more predecessor Notes) is registered at the close of business on the Record Date for such payment.  All such payments that are mailed or wired and returned to the Paying Agent shall be held for payment as herein provided at the office or agency of the Issuers to be maintained as provided in Section 7.2.

30775-00034 NY:1268831.8

Payments to Holders of the Notes of each Class shall be made in the proportion that the Aggregate Outstanding Amount of the Notes of such Class registered in the name of each such Holder on the Record Date for such payment bears to the Aggregate Outstanding Amount of all Notes of such Class on such Record Date.

(g)    Alternative Payment. Payment of any Defaulted Interest may be made in any other lawful manner in accordance with the Priority of Payments if notice of such payment is given by the Trustee to the Issuers and the Noteholders, and such manner of payment shall be deemed practicable by the Trustee.

(h)    Successors Bound. All reductions in the principal amount of a Note (or one or more predecessor Notes) effected by payments of installments of principal made on any Distribution Date or Redemption Date shall be binding upon all future Holders of such Note and of any Note issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof, whether or not such payment is noted on such Note.

(i)    Limited Recourse. Notwithstanding any other provisions of the Notes, this Indenture or any other Transaction Agreement, the obligations of the Issuers under the Notes and this Indenture and any other Transaction Agreement are limited-recourse obligations of the Issuers or the Issuer, as the case may be, payable solely from the Collateral in accordance with the Priority of Payments and, following realization of the Collateral and distribution in accordance with the Priority of Payments, any claims of the Noteholders, the other Secured Parties, the Paying Agents, the Transfer Agents, the Preference Share Paying Agent, the Preference Share Transfer Agent, the Note Registrar, the Share Registrar, the Calculation Agent, the Authenticating Agent, the Auction Agent and any other parties to any Transaction Agreement shall be extinguished. No recourse shall be had against any Officer, administrator, member, director, employee, security holder or incorporator of the Issuers or their respective successors or assigns for the payment of any amounts payable under the Notes, this Indenture or any other Transaction Agreement. It is understood that the foregoing provisions of this Section 2.6(i) shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Notes or secured by this Indenture or payable under any other Transaction Agreement until such Collateral has been realized and distributed in accordance with the Priority of Payments, whereupon any such outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing provisions of this Section 2.6(i) shall not limit the right of any Person to name the Issuer or the Co-Issuer as a party defendant in any action or suit or in the exercise of any other remedy under the Notes or this Indenture or any other Transaction Agreement, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

(j)    Payment Rights Upon Transfer. Subject to the foregoing provisions of this Section 2.6 and the provisions of Sections 2.4 and 2.5, each Note delivered under this Indenture and upon registration of transfer of or in exchange for or in lieu of any other Note shall carry the rights of unpaid interest and principal that were carried by such other Note.

### Section 2.7  Persons Deemed Owners.

The Issuers, the Trustee and any agent of any of them (collectively, the "Relevant Persons") may treat the Person in whose name any Note on the Note Register is registered as the owner of such Note on the applicable Record Date for the purpose of receiving payments of principal of and interest on such Note and on any other date for all other purposes whatsoever (whether or not such Note is overdue), and no Relevant Person shall be affected by notice to the contrary.

### Section 2.8  Cancellation.

All Notes surrendered for payment, registration of transfer, exchange or redemption, or deemed lost or stolen, shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee, shall promptly be canceled by it and may not be reissued or resold. No Notes shall be authenticated in lieu of or in exchange for any Notes canceled as provided in this Section 2.8, except as expressly permitted by this Indenture. All canceled Notes held by the Trustee shall be destroyed or held by the Trustee in accordance with its standard policy unless the

30775-00034 NY:1268831.8

Issuers shall direct by an Issuer Order that they be returned to it prior to such Note's 's destruction. Any Notes purchased by the Issuers shall be immediately delivered to the Trustee for cancellation.

### Section 2.9   No Gross Up.

The Issuers shall not be obligated to pay any additional amounts to the Holders or beneficial owners of the Notes as a result of any withholding or deduction for, or on account of, any present or future taxes, duties, assessments or government charges with respect to the Notes.

### Section 2.10 Synthetic Security.

(a)      Subject to the terms hereof, the Trustee, as directed in writing by the Issuer, shall take all reasonable steps necessary to enforce the Issuer's rights under the Synthetic Securities, including receiving payments from the respective Synthetic Security Counterparties when due and exercising the Issuer's rights under the Synthetic Securities including, without limitation, if on any date such Synthetic Security Counterparty fails to satisfy the Synthetic Security Counterparty Ratings Requirement (as notified to the Trustee in writing), within:

(i)      30 days of such failure to satisfy the Synthetic Security Counterparty Ratings Requirement, the Synthetic Security Counterparty having to, at its sole option and expense and while continuing to perform its obligations under this Agreement take one of the actions described under (w), (x), (y) and (z) below, or

(ii)      10 days of such failure to satisfy the Synthetic Security Counterparty Ratings Requirement and if the unsecured, unguaranteed and otherwise unsupported long term senior debt obligations of the Synthetic Security Counterparty are rated below "BBB+" by Standard & Poor's and the unsecured, unguaranteed and otherwise unsupported short term debt obligations of the Synthetic Security Counterparty are rated below "A-2" by Standard & Poor's (if the Synthetic Security Counterparty has a short-term rating from Standard & Poor's), the Synthetic Security Counterparty having to, at its sole option and expense and while continuing to perform its obligations under this Agreement take the action described under (x) below:

(w)      (i) post cash or collateral in the Synthetic Security Issuer Account in an amount that satisfies the Rating Condition or (ii) solely with respect to a failure of the Synthetic Security Counterparty to satisfy the Synthetic Security Counterparty Ratings Requirement of Standard & Poor's under the Synthetic Security and to the extent such amount is not already paid or posted, in an amount equal to the sum of (1) the Fixed Amount payable on the next succeeding Fixed Rate Payer Payment Date (as defined in the related Synthetic Security) and (2) in the event that any Floating Payment is, or has been within the preceding twelve month period, made by the Issuer to the Synthetic Security Counterparty, the amount of such Floating Payment minus any Additional Fixed Payments (as defined in the related Synthetic Security) that have been made by the Issuer to the Synthetic Security Counterparty to reimburse all or a portion of such Floating Payment; *provided* that in the event that an Early Termination Date (as defined in the related Synthetic Security) occurs on any date on which amounts are required to remain deposited under clause (2) immediately above, collateral shall continue to be posted until the earlier to occur of (x) the Synthetic Security Counterparty's satisfaction of the Synthetic Security Counterparty Ratings Requirements, and (y) the day on which no Surviving Obligation (as defined in the Synthetic Security) is outstanding; *provided, further*, that posting under this subclause (x) shall no longer be required upon the occurrence of (A) an Effective Maturity Date (as defined in the related Synthetic Security) (other than in connection with a Synthetic Security that has terminated pursuant to clause (i) of "Final Amortization Date" (as defined in the related Synthetic Security)), (B) the Notes having been paid in full or (C) the Issuer being a Defaulting Party or Affected Party thereunder. The Synthetic Security Counterparty (other than the initial Synthetic Security Counterparty) shall, in addition to posting collateral as required in this clause (w), obtain or provide a legal opinion addressed to the Issuer and the Trustee to the effect that the collateral will be available to the Trustee and the Noteholders in the event of the insolvency of such Synthetic Security Counterparty;

(x)      assign or transfer all of its rights and obligations under the related Synthetic Security to a counterparty selected by the Collateral Manager with the consent of the Synthetic Security Counterparty

that satisfies the Synthetic Security Counterparty Ratings Requirement. Upon successful consummation of any such assignment, the related Synthetic Security Counterparty's obligations to post collateral contemplated by clause (a) above shall terminate and the Issuer shall release its security interest in, and return to the related Synthetic Security Counterparty, any then posted collateral;

(y)    cause an entity who satisfies the Counterparty Ratings Requirement to issue in favor of the Issuer a credit support of such Synthetic Security Counterparty's obligations under the related Synthetic Security acceptable in form and substance to Party B and that satisfies the Rating Condition; or

(z)    take other steps as each Rating Agency that has downgraded the Synthetic Security Counterparty may require to satisfy the Rating Condition.

(b)    The Issuer, or the Collateral Administrator acting on its behalf, shall immediately notify the Trustee in writing on any date on which any Synthetic Security Counterparty fails to satisfy the Synthetic Security Counterparty Ratings Requirement. The Issuer shall perform all of its obligations set forth in the Synthetic Securities (and upon and pursuant to written instructions from the Issuer the Trustee shall take the steps described above in this Section 2.10, subject to the terms hereof). In addition, by 4:00 p.m., New York City time, on (i) the Business Day prior to any Payment Date on which the Trustee has not received from a Synthetic Security Counterparty any amount due from such Synthetic Security Counterparty on such Payment Date, (ii) the Business Day following any such Payment Date if the Trustee has not yet received such amount due from such Synthetic Security Counterparty, (iii) the Business Day on which such failure to pay by such Synthetic Security Counterparty becomes an "Event of Default" (as defined in the related Synthetic Security) under the related Synthetic Security or (iv) the Business Day on which the Trustee receives from such Synthetic Security Counterparty such amount due, the Trustee shall give immediate notice thereof to such Synthetic Security Counterparty and the Rating Agencies. If after the Closing Date the credit rating of a Synthetic Security Counterparty is downgraded or withdrawn, a Responsible Officer of the Trustee upon having written notice of such downgrade or withdrawal, shall provide notice of such downgrade or withdrawal to the Rating Agencies.

(c)    Amendments or supplements to Synthetic Securities including any amendments and supplements to the Credit Derivatives Definitions will apply to the Synthetic Securities executed prior to such amendment or supplement only if the Issuer and the related Synthetic Security Counterparty agree to amend the Synthetic Securities to incorporate such amendments or supplements and the Rating Condition has been satisfied. In addition, subject to the Rating Condition, the Issuer and the Synthetic Security Counterparty may enter into additional Synthetic Securities that incorporate such amendments and supplements.

## ARTICLE III

## CONDITIONS PRECEDENT

### Section 3.1    General Provisions.

The Notes may be executed by the Issuers and delivered to the Trustee for authentication and thereupon the same shall be authenticated and delivered by the Trustee (or an Authenticating Agent on its behalf) upon Issuer Request, upon receipt by the Trustee of the following:

(a)    (i)    an Officer's certificate of the Issuer, (A) evidencing the authorization by Board Resolution of the execution and delivery of, and the performance of the Issuer's obligations under, this Indenture, the Preference Share Paying Agency Agreement, the Collateral Administration Agreement, the Management Agreement, the Subscription Agreements, the Note Purchase Agreement and the Interest Rate Swap Agreement, in each case as may be amended on or prior to, and as in effect on, the Closing Date, and the execution, authentication and delivery of the Notes and specifying the Stated Maturity, the principal amount and the Note Interest Rate with respect to each Class of Notes to be authenticated and delivered and the number of Preference Shares to be issued and the Issue Price thereof, and (B) certifying that (1) the attached copy of such Board Resolution is a true and complete copy thereof, (2) such resolutions have not

been rescinded and are in full force and effect on and as of the Closing Date and (3) the Officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon; and

(ii)     an Officer's certificate of the Co-Issuer (A) evidencing the authorization by Board Resolution of the execution and delivery of, and the performance of the Co-Issuer's obligations under, this Indenture, as may be amended on or prior to, and as in effect on, the Closing Date, and the execution, authentication and delivery of the Notes and specifying the Stated Maturity, the principal amount and Note Interest Rate of each such Class of Notes to be authenticated and delivered, and (B) certifying that (1) the attached copy of such Board Resolution is a true and complete copy thereof, (2) such resolutions have not been rescinded and are in full force and effect on and as of the Closing Date and (3) the Officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon;

(b)     (i)     either (A) a certificate of the Issuer, or other official document evidencing the due authorization, approval or consent of any governmental body or bodies, at the time having jurisdiction in the premises and the approval of which is required for the valid issuance of the Securities, or to the effect that no authorization, approval or consent of any governmental body is required for the valid issuance of the Securities, or (B) an Opinion of Counsel to the Issuer satisfactory in form and substance to the Trustee (in the form of Exhibit G hereto) to the effect that no such authorization, approval or consent of any governmental body in the Cayman Islands is required for the valid issuance of the Securities except as may have been given; and

(ii)     either (A) a certificate of the Co-Issuer or other official document evidencing the due authorization, approval or consent of any governmental body or bodies, at the time having jurisdiction in the premises, and the approval of which is required for the valid issuance of the Notes, or to the effect that no authorization, approval or consent of any governmental body is required for the valid issuance of the Notes, or (B) an Opinion of Counsel to the Co-Issuer satisfactory in form and substance to the Trustee (in the form of Exhibit F-1 hereto) that no such authorization, approval or consent of any United States Federal or State of New York governmental body is required for the valid issuance of the Notes, except as may have been given;

(c)     opinions of Allen & Overy LLP, special counsel to the Issuers, dated the Closing Date, substantially in the forms of Exhibits F-1 and F-2;

(d)     an opinion of Maples and Calder, Cayman Islands counsel to the Issuer, dated the Closing Date, substantially in the form of Exhibit G;

(e)     an Officer's certificate of the Issuer, stating that the Issuer is not in Default under this Indenture and that the issuance of the Securities will not result in a breach of any of the terms, conditions or provisions of, or constitute a Default under, the Issuer Charter, any indenture or other agreement or instrument to which the Issuer is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which the Issuer is a party or by which it may be bound or to which it may be subject; that no Event of Default shall have occurred and be continuing; that all of the representations and warranties contained herein are true and correct as of the Closing Date; that all conditions precedent provided in this Indenture relating to the authentication and delivery of the Securities applied for (including in Section 3.2) have been complied with; and that all expenses due or accrued with respect to the Offering or relating to actions taken on or in connection with the Closing Date have been paid or provided for;

(f)     an Officer's certificate of the Co-Issuer stating that the Co-Issuer is not in Default under this Indenture and that the issuance of the Notes will not result in a breach of any of the terms, conditions or provisions of, or constitute a Default under, the Certificate of Incorporation or By-Laws of the Co-Issuer, any indenture or other agreement or instrument to which the Co-Issuer is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which the Co-Issuer is a party or by which it may be bound or to which it may be subject; that no Event of Default shall have occurred and be continuing; that all of the representations and warranties contained herein are true and correct as of the Closing Date; that all conditions precedent provided in this Indenture relating to the authentication and delivery of the Notes applied for have been

30775-00034 NY:1268831.8

complied with; and that all expenses due or accrued with respect to the Offering or relating to actions taken on or in connection with the Closing Date have been paid or provided for;

(g)    an Accountants' Report (i) confirming the information (other than the Principal/Notional Balance, the ratings and the Purchase Price) with respect to each Underlying Asset set forth on the Schedule of Closing Underlying Assets attached hereto as Schedule A, by reference to such sources as shall be specified therein; (ii) confirming by reference to information set forth in such letter, that as of the Closing Date the Aggregate Principal/Notional Balance of the Underlying Assets (including principal collections on such Underlying Assets to be deposited in the Principal Collection Account and funds deposited in the Uninvested Proceeds Account on the Closing Date) which the Issuer has purchased or entered into binding commitments to purchase is at least $[__]; (iii) confirming compliance with the Collateral Quality Tests and the Coverage Tests; and (iv) specifying the procedures undertaken by them to review data and computations relating to the foregoing statement;

(h)    a certificate of an Authorized Officer of the Collateral Manager stating that the Underlying Assets which the Issuer has purchased or entered into binding commitments to purchase on the Closing Date satisfy the requirements of the definition of an Underlying Asset;

(i)    an executed counterpart of each of the Transaction Agreements;

(j)    an executed copy of the Interest Rate Swap Agreement;

(k)    a properly completed UCC financing statement, naming the Issuer as debtor and the Trustee as secured party, and covering the Collateral, for filing within 10 days after the Closing Date in the District of Columbia;

(l)    evidence of the registration on the Issuer's Register of Mortgages and Charges of the security interest Granted by the Issuer hereunder;

(m)    Subscription Agreements, duly executed by the purchaser of Preference Shares;

(n)    Issuer orders from the Co-Issuer and the Issuer, as applicable, directing the Trustee to authenticate the Notes, in the amounts set forth therein, registered in the name(s) set forth therein and to make delivery thereof to the Co-Issuer or the Issuer, as the case may be, or as otherwise directed by the Co-Issuer or Issuer;

(o)    an opinion of Cadwalader, Wickersham & Taft LLP, counsel of the Collateral Manager, dated the Closing Date, substantially in the form of Exhibit H; and

(p)    an opinion of Seward & Kissel LLP, counsel to the Trustee, substantially in the form of Exhibit I.

### Section 3.2    Security for the Notes.

Prior to the issuance of the Notes on the Closing Date, the Issuer shall cause the following conditions to be satisfied:

(a)    Grant of Security Interest; Delivery of Underlying Assets.    The Grant pursuant to the Granting Clauses of this Indenture of all of the Issuer's right, title and interest in and to the Collateral and the transfer of all Underlying Assets purchased by the Issuer on the Closing Date, and any Equity Securities acquired in connection therewith (as set forth in the Schedule of Closing Underlying Assets) to the Trustee in the manner provided in Section 3.3(b).

(b)    Certificate of the Issuer.    The delivery to the Trustee of a certificate of an Authorized Officer of the Issuer or the Collateral Manager, for and on behalf of the Issuer, dated as of the Closing Date, to the effect that, in the case of each Underlying Asset and Equity Security pledged to the Trustee for inclusion in the Collateral on the Closing Date and immediately prior to the delivery thereof on the Closing Date:

30775-00034 NY:1268831.8

(i)       the Issuer is the owner of such Underlying Asset or Equity Security free and clear of any liens, claims or encumbrances of any nature whatsoever except for those which are being released on the Closing Date and except for those Granted pursuant to this Indenture;

(ii)      the Issuer has acquired its ownership in such Underlying Asset or Equity Security in good faith without notice of any adverse claim, except as described in clause (i) above;

(iii)     the Issuer has not assigned, pledged or otherwise encumbered any interest in such Underlying Asset or Equity Security (or, if any such interest has been assigned, pledged or otherwise encumbered, it has been released) other than interests Granted pursuant to this Indenture;

(iv)      the Issuer has full right to Grant a security interest in and assign and pledge all of its right, title and interest in such Underlying Asset or Equity Security to the Trustee;

(v)       the information set forth with respect to such Underlying Asset or Equity Security in the Schedule of Closing Underlying Assets (or amended Schedule of Underlying Assets, as the case may be) is correct in all material respects;

(vi)      each Underlying Asset included in the Collateral satisfies the requirements of the definition of "Asset-Backed Security" or "Synthetic Security", as applicable, and is transferred to the Trustee as required by Section 3.3(b);

(vii)     each Underlying Asset and Equity Security was acquired in accordance with all applicable requirements of Section 12.2;

(viii)    upon the effectiveness of the Grant by the Issuer to the Trustee pursuant to the Granting Clauses of this Indenture, the Trustee has a first priority perfected security interest in the Collateral; and

(ix)      the Issuer has not consented to the Securities Intermediary maintaining any Account to comply with entitlement orders of any Person other than the Trustee.

(c)       Rating Letters. The delivery to the Trustee of (i) letters signed by Standard & Poor's and Moody's confirming that the Notes have been rated as set forth below (or higher):

| Notes | Standard & Poor's | Moody's |
|---|---|---|
| Class A-1 Notes | AAA | Aaa |
| Class A-2 Notes | AAA | Aaa |
| Class B Notes | at least AA | at least Aa2 |
| Class C Notes | at least A | at least A2 |
| Class D Notes | at least BBB | at least Baa2 |
| Class E Notes | at least BB | at least Ba2 |

(d)       Accounts. The delivery by the Trustee of evidence of the establishment of the Payment Account, the Interest Collection Account, the Principal Collection Account, the Expense Account, the Custodial Account, the Uninvested Proceeds Account, the Substituted Collateral Account, any Synthetic Security Collateral Account, the Synthetic Security Issuer Agent and the Interest Rate Swap Counterparty Collateral Account. The delivery by the Preference Share Paying Agent of evidence of the establishment of the Preference Share Payment Account.

(e)       Funding Certificate. The delivery to the Trustee of a Funding Certificate, duly executed by an Authorized Officer of the Issuer, relating to, among other things, the disposition of the proceeds of the issuance of the Securities, dated the Closing Date, in substantially the form of Exhibit E hereto.

30775-00034 NY:1268831.8

(f)     Purchases. The delivery to the Trustee of a certificate from the Collateral Manager that, as of the Closing Date the Issuer shall have purchased, or entered into one or more commitments to purchase, Underlying Assets (including principal collections on such Underlying Assets to be deposited in the Uninvested Proceeds Account on the Closing Date) having an Aggregate Principal/Notional Balance of not less than $700,106,212.

**Section 3.3     Transfer of Underlying Asset and Eligible Investments.**

(a)     Notwithstanding any other provision of this Indenture, the Trustee shall not hold any Collateral through an agent or nominee except as expressly permitted by this Section 3.3 or Section 7.5.

(b)     The Issuer shall cause each item of Collateral (including each Underlying Asset, Equity Security, and Eligible Investment) to be delivered to the Trustee in the following manner:

(i)     with respect to such of the Collateral as constitutes an instrument, causing the Trustee to take possession in the State of New York of such instrument indorsed to the Trustee or in blank by an effective endorsement;

(ii)     with respect to such of the Collateral as constitutes tangible chattel paper, goods, a negotiable document, or money, causing the Trustee to take possession in the State of New York of such tangible chattel paper, goods, negotiable document, or money;

(iii)     with respect to such of the Collateral as constitutes a certificated security in bearer form, causing the Trustee to acquire possession in the State of New York of the related security certificate;

(iv)     with respect to such of the Collateral as constitutes a certificated security in registered form, causing the Trustee to acquire possession in the State of New York of the related security certificate, indorsed to the Trustee or in blank by an effective indorsement, or registered in the name of the Trustee, upon original issue or registration of transfer by the issuer of such certificated security;

(v)     with respect to such of the Collateral as constitutes an uncertificated security, causing the issuer of such uncertificated security to register the Trustee as the registered owner of such uncertificated security, upon original issue or registration of transfer;

(vi)     with respect to such of the Collateral as constitutes a security entitlement, causing the Securities Intermediary to indicate by book entry that the financial asset relating to such security entitlement has been credited to the appropriate Account;

(vii)     with respect to such of the Collateral as constitutes an account or a general intangible, (A) causing the account debtor for such account or general intangible to be notified of the grant to the Trustee of a security interest in such account or general intangible, (B) causing any steps necessary to perfect a security interest in such account or general intangible under the laws of the Cayman Islands to be taken, and (C) causing to be filed with the District of Columbia Recorder of Deeds a properly completed UCC financing statement that names the Issuer as debtor and the Trustee as secured party and that covers such account or general intangible;

(viii)     with respect to such of the Collateral as constitutes a deposit account, causing such deposit account to be maintained in the name of the Trustee and causing the bank with which such deposit account is maintained to agree in writing with the Trustee and the Issuer that (A) such bank shall comply with instructions originated by the Trustee directing disposition of the funds in such deposit account without further consent of any other person or entity, (B) such bank will not agree with any person or entity other than the Trustee to comply with instructions originated by any person or entity other than the Trustee, (C) such deposit account and the property deposited therein shall not be subject to any lien, claim, security interest, encumbrance, or right of set-off in favor of such bank or anyone claiming through it (other than the Trustee), (D) such agreement shall be governed by the laws of the State of New York, and (E) the State of New York shall be the bank's jurisdiction of such bank for purposes of Article 9 of the UCC; or

30775-00034 NY:1268831.8

(ix)    in the case of each of paragraphs (i) through (viii) above, such additional or alternative procedures as may hereafter become appropriate to grant a first priority perfected security interest in such items of the Collateral to the Trustee, consistent with applicable law or regulations.

Upon the delivery of any item of the Collateral, the Trustee shall make appropriate notations on its records indicating that such item of the Collateral is held by the Trustee pursuant to and as provided herein. The Trustee shall hold each item of Collateral as delivered to it pursuant to Section 3.3(b), separate and apart from all other property held by the Trustee.

Effective upon the delivery of any item of the Collateral, the Trustee shall be deemed to have (i) represented that its security interest in such item of the Collateral is received in good faith and without notice of any adverse claim thereto appearing on the face of such item (if in physical form) or otherwise known to a Trust Officer of the Trustee; provided that such representation shall not impose any other affirmative duty or obligation upon the Trustee with regard to inquiry or investigation of, or constructive notice of, adverse claims; and (ii) acknowledged that it holds such item of the Collateral as Trustee hereunder for the benefit of the Secured Parties. Any additional or alternative procedures for accomplishing delivery for purposes of clause (ix) of this definition shall be permitted only upon delivery to the Trustee of an Opinion of Counsel to the effect that such procedures are appropriate to grant a perfected security interest in the applicable type of collateral to the Trustee.

To the extent that such of the Collateral as constitutes a deposit account is maintained with the Bank, the Bank, the Trustee, and the Issuer hereby make the agreements required in order for such deposit account to be delivered as provided in clause (viii) above.

(c)    Such of the Collateral as constitutes Underlying Assets and Equity Securities shall be credited to the Custodial Account.

## ARTICLE IV

### SATISFACTION AND DISCHARGE

#### Section 4.1  Satisfaction and Discharge of Indenture.

This Indenture shall be discharged and shall cease to be of further effect with respect to the Collateral and with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, defaced, destroyed, lost or stolen Notes, (iii) rights of Securityholders to receive payments of principal thereof and interest thereon or Excess Amounts payable in respect thereof as provided herein (including as provided in the Priority of Payments and Section 13.1), (iv) the rights, indemnities and immunities of the Trustee hereunder, (v) the rights and immunities of the Collateral Manager hereunder and under the Management Agreement, (vi) the rights of the Secured Parties as beneficiaries hereof with respect to the property deposited with the Trustee and payable to all or any of them and (vii) the rights of the Preference Shareholders pursuant to the Preference Share Paying Agency Agreement and the Trustee, on demand of and at the expense of the Issuer, shall execute proper instruments prepared by the Issuer acknowledging satisfaction and discharge of this Indenture, when:

(a)    either:

(i)    all Notes theretofore authenticated and delivered (other than (A) Notes which have been mutilated, defaced, destroyed, lost or stolen and which have been replaced or paid as provided in Section 2.5 and (B) Notes for whose payment Money has theretofore irrevocably been deposited in trust and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 7.3) have been delivered to the Trustee for cancellation; or

(ii)    all Notes not theretofore delivered to the Trustee for cancellation (A) have become due and payable, (B) will become due and payable at their Stated Maturity within one year or (C) are to be called for redemption pursuant to Article IX under an arrangement satisfactory to the Trustee for the giving of notice of redemption by the Issuers pursuant to Section 9.5 and the Issuer has irrevocably deposited or

68

caused to be deposited with the Trustee, in trust for such purpose, Cash or noncallable direct obligations of the United States in an amount sufficient, as certified in writing by a firm of nationally recognized Independent certified public accountants, to pay and discharge the entire indebtedness on all Notes not theretofore delivered to the Trustee for cancellation, including all principal and interest (including Deferred Interest, Defaulted Interest and interest on Defaulted Interest, if any) accrued to the date of such deposit (in the case of Notes which have become due and payable) or to the Stated Maturity or the Redemption Date, as the case may be; provided that (x) such obligations are entitled to the full faith and credit of the United States and (y) this subclause (ii) shall not apply if an election to act in accordance with the provisions of Section 5.5(a) shall have been made and not rescinded;

(b)       the Issuer has paid or caused to be paid all other sums payable hereunder (including the Excess Amounts payable to the Preference Share Paying Agent in respect of the Scheduled Preference Share Redemption Date or the final Redemption Date and amounts payable pursuant to the Interest Rate Swap Agreement and the Synthetic Securities (including all relevant termination payments), the Administration Agreement, the Preference Share Paying Agency Agreement and the Management Agreement) and no other amounts will become due and payable by the Issuer; and

(c)       the Issuers have delivered to the Trustee an Officer's certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

Notwithstanding the satisfaction and discharge of this Indenture, the rights and obligations of the Issuers, the Trustee, the Collateral Manager, the Interest Rate Swap Counterparty, each Synthetic Security Counterparty and, if applicable, the Noteholders, as the case may be, under Sections 2.6, 5.4(d), 5.9, 5.18, 6.7, 6.8, 7.3 and 14.14shall survive.

### Section 4.2   Application of Trust Money.

All Cash deposited with the Trustee pursuant to Section 4.1 for the payment of principal of and interest on the Notes or Excess Amounts in respect of the Preference Shares, amounts payable pursuant to the Interest Rate Swap Agreement, the Synthetic Securities, the Collateral Administration Agreement, the Administration Agreement, the Preference Share Paying Agency Agreement and the Management Agreement and other Administrative Expenses shall be held in trust and applied by it in accordance with the provisions of the Securities and this Indenture, including the Priority of Payments, for the payment either directly or through any Paying Agent or the Preference Share Paying Agent, as the Trustee may determine, to the Person entitled thereto of the respective amounts in respect of which such Cash has been deposited with the Trustee.

### Section 4.3   Repayment of Monies Held by Paying Agent.

In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all Cash then held by any Paying Agent other than the Trustee under the provisions of this Indenture shall, upon demand of the Issuer, be paid to the Trustee to be held and applied pursuant to Section 7.3 and in accordance with the Priority of Payments and thereupon such Paying Agent shall be released from all further liability with respect to such Cash.

### ARTICLE V

### EVENTS OF DEFAULT; REMEDIES

### Section 5.1   Events of Default.

Wherever used herein, Event of Default means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

69

(a)    a default on any Distribution Date in the payment of any interest accrued during the Interest Period immediately preceding such Distribution Date (i) on any Class A Note or Class B Note, or (ii) if there are no Class A Notes or Class B Notes Outstanding, on any Class C Note, (iii) if there are no Class A Notes, Class B Notes or Class C Notes Outstanding, on any Class D Note or (iv) if there are no Class A Notes, Class B Notes, Class C Notes or Class D Notes Outstanding, on any Class E Note, when the same becomes due and payable, in each case which default continues for a period of three Business Days (or, in the case of a failure to make such payment resulting, as certified in writing by the Trustee, solely from an administrative error or omission by the Trustee, the Administrator, any Paying Agent or the Note Registrar, seven days);

(b)    a default in the payment of principal of any Note at its Stated Maturity or Redemption Date or, in the case of a failure to make such payment resulting solely from an administrative error or omission by the Administrator, the Trustee, any Paying Agent or the Note Registrar which continues for a period of seven days;

(c)    the failure on any Distribution Date to disburse amounts (other than principal of and interest payments on the Notes described in clauses (a) and (b) above) available in the Interest Collection Account or Principal Collection Account in accordance with the Priority of Payments which failure continues for a period of two Business Days or, in the case of a failure to make such payment due to an administrative error or omission by the Trustee, the Administrator, any Paying Agent or the Note Registrar, which failure continues for a period of seven days;

(d)    either of the Issuers or the Collateral becomes an investment company required to be registered under the Investment Company Act;

(e)    a default in the performance, or breach, of any other covenant or other agreement (other than any covenant to meet the Collateral Quality Tests or the Coverage Tests) of the Issuer or the Co-Issuer under this Indenture or any representation or warranty of the Issuer or the Co-Issuer made in this Indenture or in any certificate or other writing delivered pursuant hereto or in connection herewith proves to be incorrect in any material respect when made, and the continuation of such default or breach for a period of 30 days (or, if such default, breach or failure has an adverse effect on the validity, perfection or priority of the security interest granted under this Indenture, 15 days) after any of the Issuer, the Co-Issuer or the Collateral Manager has actual knowledge thereof or after notice thereof to the Issuer and the Collateral Manager by the Trustee or to the Issuer, the Collateral Manager and the Trustee by the Holders of at least fifty percent (50%) in Aggregate Outstanding Amount of Notes of the Controlling Class;

(f)    one or more final judgments being rendered against the Issuer or the Co-Issuer which exceed, in the aggregate, $1,000,000 (or such lesser amount as each Rating Agency may specify) and which remain unstayed, undischarged and unsatisfied for 30 days after such judgment(s) becomes nonappealable, unless adequate funds have been reserved or set aside for the payment thereof;

(g)    an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) winding up, liquidation, reorganization or other relief in respect of the Issuer or the Co-Issuer or its debts, or of a substantial part of its assets, under any bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for the Issuer or the Co-Issuer or for a substantial part of its assets, and, in any such case, such proceeding or petition shall continue undismissed for 60 days; or an order or decree approving or ordering any of the foregoing shall be entered; or the Issuer or its assets shall become subject to any event that, under the applicable laws of the Cayman Islands, has an analogous effect to any of the foregoing; or

(h)    the Issuer or the Co-Issuer shall (i) voluntarily commence any proceeding or file any petition seeking winding up, liquidation, reorganization or other relief under any bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in Section 5.1(g), (iii) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for

70

the Issuer or the Co-Issuer or for a substantial part of its assets, (iv) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors or (vi) take any action for the purpose of effecting any of the foregoing; or the Issuer shall cause or become subject to any event with respect to the Issuer that, under the applicable laws of the Cayman Islands, has an analogous effect to any of the foregoing.

If either of the Issuers obtains knowledge, or has a reason to believe, that an Event of Default shall have occurred and is continuing, such of the Issuers shall promptly notify the Trustee, the Preference Share Paying Agent, the Collateral Manager, the Noteholders, the Interest Rate Swap Counterparty, the Synthetic Security Counterparty, the Initial Investment Agreement Provider, the other of the Issuers and each Rating Agency in writing.

## Section 5.2  Acceleration of Maturity; Rescission and Annulment.

(a)      If an Event of Default occurs and is continuing (other than an Event of Default specified in Section 5.1(g) or 5.1(h)), (i) the Trustee (at the written direction of a Majority of the Controlling Class) by notice to the Issuers or (ii) a Majority of the Controlling Class, by notice to the Issuers and the Trustee (and, in each case, with written notice to each Rating Agency), may declare the principal of all the Notes to be immediately due and payable, and upon any such declaration such principal, together with all accrued and unpaid interest thereon, and other amounts payable hereunder, shall become immediately due and payable.  Notwithstanding the preceding sentence, if an Event of Default specified in Section 5.1(a) or 5.1(b) occurs and is continuing solely with respect to a default in the payment of any principal of or interest on Notes of a Class other than the Controlling Class, neither the Trustee nor the Holders of such non-Controlling Class shall have the right to declare such principal and other amounts to be immediately due and payable. If an Event of Default specified in Section 5.1(g) or 5.1(h) occurs, all unpaid principal, together with all accrued and unpaid interest thereon, of all the Notes, and other amounts payable hereunder, shall automatically become due and payable without any declaration or other act on the part of the Trustee or any Noteholder.

(b)      At any time after such a declaration of acceleration of maturity has been made and before a judgment or decree for payment of the Money due has been obtained by the Trustee as hereinafter provided in this Article V, a Majority of the Controlling Class, by written notice to the Issuers and the Trustee (and, in each case, with notice to each Rating Agency), may rescind and annul such declaration and its consequences if:

(i)      the Issuer has paid or deposited with the Trustee a sum sufficient to pay:

(A)      all overdue installments of principal of and interest on the Notes,

(B)      interest upon Deferred Interest at the applicable Note Interest Rate and to the extent that payment of such interest is lawful, upon Defaulted Interest at the applicable Note Interest Rate,

(C)      any accrued and unpaid amounts payable by the Issuer pursuant to the Interest Rate Swap Agreement and the Synthetic Securities, and

(D)      all unpaid taxes and Administrative Expenses and other sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel;

(ii)      the Trustee has determined that all Events of Default, other than the nonpayment of the principal of or interest on the Notes that have become due solely by such acceleration, have been cured and a Majority of the Controlling Class by written notice to the Trustee has agreed with such determination or waived such Events of Default as provided in Section 5.14; and

(iii)      the Interest Rate Swap Agreement or any other post-closing hedge in effect immediately prior to the declaration of such acceleration remains in effect.

At any such time as a Majority of the Controlling Class shall rescind and annul such declaration and its consequences, the Trustee shall preserve the Collateral in accordance with the provisions of Section 5.5; provided that, if such preservation of the Collateral is rescinded pursuant to Section 5.5, the Notes may be accelerated pursuant to Section 5.2(a), notwithstanding any previous rescission and annulment of a declaration of acceleration pursuant to this Section 5.2(b).

No such rescission and annulment shall affect any subsequent Default or impair any right consequent thereon.

### Section 5.3  Collection of Indebtedness and Suits for Enforcement by Trustee.

The Issuer covenants that if a Default shall occur in respect of (a) the payment of any principal of or interest on any Class A Notes, (b) the payment of principal of or interest on any Class B Note, after the payment of principal on the Class A Notes, (c) the payment of principal of or interest on any Class C Note (excluding Deferred Interest) after the Class A Notes and the Class B Notes and all interest accrued thereon have been paid in full, (d) the payment of principal of or interest on any Class D Note (excluding Deferred Interest) after the Class A Notes, Class B Notes and Class C Notes and all interest accrued thereon have been paid in full, or (e) the payment of principal of or interest on any Class E Note (excluding Deferred Interest) after the Class A Notes, Class B Notes, Class C Notes and Class D Notes and all interest accrued thereon have been paid in full, the Issuer will, upon demand of the Trustee or any affected Noteholder, pay to the Trustee, for the benefit of the Holder of such Note, the whole amount, if any, then due and payable on such Note for principal and interest with interest upon the overdue principal and, to the extent that payments of such interest shall be legally enforceable, upon overdue installments of interest at the applicable Note Interest Rate and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee and such Noteholder and their respective agents and counsel.

If the Issuer fails to pay such amounts forthwith upon such demand, the Trustee, in its own name and as trustee of an express trust, may institute a Proceeding for the collection of the sums so due and unpaid, and may, and shall, upon the direction by a Majority of the Controlling Class, prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuer or any other obligor upon the Notes and collect the Monies adjudged or decreed to be payable in the manner provided by law out of the Collateral.

If an Event of Default occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Secured Parties by such appropriate Proceedings as the Trustee shall deem most effectual or as the Trustee may be directed by a Majority of the Controlling Class, to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Trustee by this Indenture or by law.

In case there shall be pending Proceedings relative to the Issuer, the Co-Issuer or any other obligor upon the Notes under the Bankruptcy Code or any other applicable bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer, the Co-Issuer or their respective property or such other obligor or its property, or in case of any other comparable Proceedings relative to the Issuer, the Co-Issuer or other obligor upon the Notes, or the creditors or property of the Issuer, the Co-Issuer or such other obligor, the Trustee, regardless of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and regardless of whether the Trustee shall have made any demand pursuant to the provisions of this Section 5.3, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(a)    to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes upon direction by a Majority of the Controlling Class, and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for reasonable compensation to the Trustee and each predecessor Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee) and of the Noteholders allowed in any

72

Proceedings relative to the Issuer, the Co-Issuer or other obligor upon the Notes or to the creditors or property of the Issuer, the Co-Issuer or such other obligor;

(b)    unless prohibited by applicable law and regulations, to vote on behalf of the Holders of the Notes, upon the direction of such Holders, in any election of a trustee or a standby trustee in arrangement, reorganization, liquidation or other bankruptcy or insolvency Proceedings or person performing similar functions in comparable Proceedings; and

(c)    to collect and receive any Monies or other property payable to or deliverable on any such claims, and to distribute all amounts received with respect to the claims of the Noteholders and of the Trustee on behalf of the Noteholders and the Trustee; and any trustee, receiver or liquidator, custodian or other similar official is hereby authorized by each of the Noteholders to make payments to the Trustee, and, in the event that the Trustee shall consent to the making of payments directly to the Noteholders, to pay to the Trustee such amounts as shall be sufficient to cover reasonable compensation to the Trustee, each predecessor Trustee and their respective agents, attorneys and counsel, and all other reasonable expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of negligence or bad faith.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder, any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Noteholder in any such Proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar person.

All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any action or Proceedings instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the reasonable expenses, disbursements and compensation of the Trustee, each predecessor trustee and their respective agents and attorneys and counsel, shall be for the ratable benefit of the Secured Parties and payable to the Secured Parties in accordance with the Priority of Payments.

In any Proceedings brought by the Trustee on behalf of the Holders of the Notes, the Trustee shall be held to represent all the Holders of the Notes.

Notwithstanding anything in this Section 5.3 to the contrary, the Trustee may not sell or liquidate the Collateral or institute Proceedings in furtherance thereof pursuant to this Section 5.3 except in accordance with Section 5.5(a).

### Section 5.4   Remedies.

(a)    If an Event of Default shall have occurred and be continuing, and the Notes have been declared due and payable and such declaration and its consequences have not been rescinded and annulled, the Issuers agree that the Trustee may after notice to the Secured Parties, and shall, upon direction by a Majority of the Controlling Class, to the extent permitted by applicable law, exercise one or more of the following rights, privileges and remedies:

(i)    institute Proceedings for the collection of all amounts then payable on the Notes or otherwise payable under this Indenture, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Collateral any Monies adjudged due;

(ii)    sell all or a portion of the Collateral or rights of interest therein, at one or more public or private sales called and conducted in any manner permitted by law and in accordance with Section 5.17;

73

(iii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Collateral;

(iv)    exercise any remedies of a secured party under the UCC or any other applicable law and take any other appropriate action to protect and enforce the rights and remedies of itself and the Secured Parties hereunder; and

(v)    exercise any other rights and remedies that may be available at law or in equity;

provided that the Trustee may not sell or liquidate the Collateral or institute Proceedings in furtherance thereof pursuant to this Section 5.4 except in accordance with Section 5.5(a).

The Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking firm of national reputation, the cost of which shall be paid by the Issuer as an Administrative Expense, as to the feasibility of any action proposed to be taken in accordance with this Section 5.4 and as to the sufficiency of the proceeds and other amounts receivable with respect to the Collateral to make the required payments of principal of and interest on the Notes, which opinion shall be conclusive evidence as to such feasibility or sufficiency.

(b)    If an Event of Default as described in Section 5.1(e) shall have occurred and be continuing, the Trustee may, and at the request of the Holders of not less than fifty percent (50%) of the Aggregate Outstanding Amount of the Controlling Class shall, institute a Proceeding solely to compel performance of the covenant or agreement or to cure the representation or warranty, the breach of which gave rise to the Event of Default under such Section, and enforce any equitable decree or order arising from such proceeding.

(c)    Upon any sale, whether made under the power of sale hereby given or by virtue of judicial proceedings, any Noteholder or Noteholders may bid for and purchase the Collateral or any part thereof and, upon compliance with the terms of sale, may hold, retain, possess or dispose of such property in its or their own absolute right without accountability.

Upon any sale, whether made under the power of sale hereby given or by virtue of judicial proceedings, the receipt of the Trustee or of the Officer making a sale under such judicial proceedings shall be a sufficient discharge to the purchaser or purchasers at any sale for its or their purchase Money, and such purchaser or purchasers shall not be obliged to see to the application thereof.

Any such sale, whether under any power of sale hereby given or by virtue of judicial proceedings, shall bind the Issuers, the Trustee and the Noteholders, shall operate to divest all right, title and interest whatsoever, either at law or in equity, of each of them in and to the property sold, and shall be a perpetual bar, both at law and in equity, against each of them and their successors and assigns, and against any and all Persons claiming through or under them.

(d)    Notwithstanding any other provision of this Indenture or any other Transaction Agreement, the Trustee, each other Secured Party and any other party to any Transaction Agreement may not, prior to the date which is one year, or, if longer, the applicable preference period then in effect (including any period established pursuant to the laws of the Cayman Islands) and one day, after the payment in full of all Notes, institute against, or join any other Person in instituting against, the Issuer or the Co-Issuer any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceedings, or other proceedings under Federal or state bankruptcy or similar laws. Nothing in this Section 5.4 shall preclude, or be deemed to stop, the Trustee or any other Secured Party or any other party to any Transaction Agreement from taking any action prior to the expiration of the aforementioned one year and one day period, or, if longer, the applicable preference period then in effect (including any period established pursuant to the laws of the Cayman Islands), in (A) any case or proceeding voluntarily filed or commenced by the Issuer or the Co-Issuer or (B) any involuntary insolvency proceeding filed or commenced by a Person other than the Trustee, such Secured Party or (as the case may be) such other party; provided that the obligations of the Issuers hereunder shall be payable solely from the Collateral in accordance with the Priority of Payments.

## Section 5.5  Preservation of Collateral.

(a)      If an Event of Default shall have occurred and be continuing when any of the Notes are Outstanding, the Trustee shall retain the Collateral securing the Notes intact, collect and cause the collection of the proceeds thereof and make and apply all payments and deposits and maintain all accounts in respect of the Collateral and the Notes in accordance with the Priority of Payments and the provisions of Articles X, XII and XIII unless either:

(i)      the Trustee, or an Independent investment banking firm of national reputation selected by the Trustee at the expense of the Issuer, determines that the anticipated proceeds of a sale or liquidation of the Collateral (after deducting the reasonable expenses of such sale or liquidation) would be sufficient to discharge in full the amounts then due and unpaid on the Notes for principal and interest (including Deferred Interest and Defaulted Interest and interest on Defaulted Interest, if any), due and unpaid Administrative Expenses as limited by paragraph (B) of Section 11.1(a)(i), any accrued and unpaid amounts payable by the Issuer pursuant to the Interest Rate Swap Agreement (assuming, for this purpose, that such Interest Rate Swap Agreement has been terminated by reason of an event of default thereunder with respect to the Issuer), any accrued and unpaid amounts payable by the Issuer pursuant to the Synthetic Securities, and a Majority of the Controlling Class agrees with such determination; or

(ii)      the Holders of at least sixty-six and two-thirds percent (66 ⅔) of the Aggregate Outstanding Amount of the Class A Notes, Class B Notes, Class C Notes, Class D Notes and Class E Notes (each Class voting as a separate Class), the Interest Rate Swap Counterparty (unless no early termination payment would be owing by the Issuer to such Interest Rate Swap Counterparty upon the termination of the Interest Rate Swap Agreement or the Collateral Manager certifies to the Trustee that all amounts due to such Interest Rate Swap Counterparty will be paid in full in accordance with the Priority of Payments), each Synthetic Security Counterparty (unless no early termination payment would be owing by the Issuer to such Synthetic Security Counterparty upon the termination of the related Synthetic Security or the Collateral Manager certifies to the Trustee that all amounts due to such Synthetic Security Counterparty will be paid in full in accordance with the Priority of Payments) direct the sale and liquidation of the Collateral.

If either (i) or (ii) is satisfied, the Trustee shall liquidate the Collateral and terminate or assign the Synthetic Securities, the Interest Rate Swap Agreement, the Investment Agreement and, on the second Business Day (the "Accelerated Maturity Date") following the Business Day on which the Trustee notifies the Issuer, the Collateral Manager and each Rating Agency that such liquidation and termination is completed, apply the proceeds thereof in accordance with the Priority of Payments.

For purposes of clause (ii) of the preceding paragraph, if an Interest Rate Swap Counterparty shall fail to vote on whether to direct the sale and liquidation of the Collateral within three Business Days after written notice from the Issuer or the Trustee requesting a vote pursuant to such clause (ii), such Interest Rate Swap Counterparty shall not be entitled to participate in the vote requested by such notice. The Trustee shall give written notice of the retention of the Collateral to the Issuer with a copy to the Co-Issuer, each Synthetic Security Counterparty and to the Interest Rate Swap Counterparty. So long as such Event of Default is continuing, any such retention pursuant to this Section 5.5(a) may be rescinded at a time when the conditions specified in clause (i) or (ii) exist.

(b)      Nothing contained in Section 5.5(a) shall be construed to require the Trustee to preserve the Collateral securing the Notes if prohibited by applicable law.

(c)      In determining whether the condition specified in Section 5.5(a)(i) exists, the Trustee, or the Independent investment banking firm of national reputation selected by the Trustee, shall obtain bid prices with respect to each security contained in the Collateral from two nationally recognized dealers, as specified by the Collateral Manager in writing, which are Independent from each other and the Collateral Manager, at the time making a market in such securities and shall compute the anticipated proceeds of sale or liquidation on the basis of the lower of such bid prices for each such security. In addition, for the purposes of determining issues relating to the execution of a sale or liquidation of the Pledged Securities and the execution of a sale or other liquidation thereof in

connection with a determination whether the condition specified in Section 5.5(a)(i) exists, the Trustee may retain and conclusively rely on an opinion of an Independent investment banking firm of national reputation.

The Trustee shall deliver to the Noteholders, the Interest Rate Swap Counterparty, each Synthetic Security Counterparty and the Issuers a report stating the results of any determination required pursuant to Section 5.5(a)(i) no later than 10 days after making such determination but, in any case, before such sale conducted pursuant to Section 5.5(a)(i). The Trustee or the Independent investment banking firm selected by the Trustee shall make the determinations required by Section 5.5(a)(i) as soon as reasonably practicable, after the Trustee receives the request of an Interest Rate Swap Counterparty, each Synthetic Security Counterparty or a Majority of the Controlling Class at any time during which the Trustee retains the Collateral pursuant to Section 5.5(a)(i). In the case of any calculation made by the Trustee pursuant to Section 5.5(a)(i), the Trustee shall obtain a letter of an Independent certified public accountant confirming the accuracy of the computations of the Trustee and certifying their conformity to the requirements of this Indenture. In determining whether the Holders of the requisite Aggregate Outstanding Amount of any Class of Notes have given any direction or notice or have agreed pursuant to Section 5.5(a), any Holder of a Note of a Class who is also a Holder of Notes of another Class or any Affiliate of any such Holder shall be counted as a Holder of each such Note for all purposes.

(d)    If an Event of Default shall have occurred and be continuing at a time when no Notes are Outstanding, the Trustee shall retain the Collateral securing the Notes intact, collect and cause the collection of the proceeds thereof and make and apply all payments and deposits and maintain all accounts in respect of the Collateral and the Notes in accordance with the Priority of Payments and the provisions of Article X and Article XII unless a Majority-in-Interest of Preference Shares direct the sale and liquidation of the Collateral.

## Section 5.6    Trustee May Enforce Claims Without Possession of Notes.

All rights of action and claims under this Indenture, the Notes may be prosecuted and enforced by the Trustee without the possession of any of the Notes or the production thereof in any Proceeding relating thereto, and any such Proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall be applied as set forth in Section 5.7.

## Section 5.7    Application of Money Collected.

Any Money collected by the Trustee with respect to the Notes pursuant to this Article V and any Money that may then be held or thereafter received by the Trustee with respect to the Notes hereunder shall be applied net of reasonable costs of collection and enforcement, subject to Section 13.1 and in accordance with the provisions of Section 11.1, at the date or dates fixed by the Trustee.

## Section 5.8    Limitation on Suits.

No Holder of any Note shall have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

(a)    such Holder has previously given to the Trustee written notice of an Event of Default;

(b)    except as otherwise provided in Section 5.9, the Holders of at least fifty percent (50%) of the then Aggregate Outstanding Amount of the Notes of the Controlling Class shall have made written request to the Trustee to institute Proceedings in respect of such Event of Default in its own name as Trustee hereunder and such Holder or Holders have offered to the Trustee indemnity reasonably satisfactory to it against the costs, expenses and liabilities to be incurred in compliance with such request;

(c)    the Trustee for 30 days after its receipt of such notice, request and offer of indemnity has failed to institute any such Proceeding; and

(d)    no direction inconsistent with such written request has been given to the Trustee during such 30-day period by a Majority of the Controlling Class;

it being understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders of the Notes or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all the Holders of Notes of the same Class subject to and in accordance with Section 13.1 and the Priority of Payments.

If the Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of the Controlling Class, each representing less than a Majority of the Controlling Class, the Trustee shall take the action requested by the Holders of the largest percentage in Aggregate Outstanding Amount of the Notes of the Controlling Class notwithstanding any other provisions of this Indenture.

### Section 5.9 Unconditional Rights of Noteholders to Receive Principal and Interest.

Notwithstanding any other provision in this Indenture (but subject (for the avoidance of any doubt) to Section 2.6(i)), the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on such Note as such principal and/or interest become due and payable in accordance with Section 13.1 and the Priority of Payments and, subject to the provisions of Section 5.8, to institute proceedings for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

### Section 5.10 Restoration of Rights and Remedies.

If the Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Noteholder, then and in every such case the Issuers, the Trustee and the Noteholder shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

### Section 5.11 Rights and Remedies Cumulative.

No right or remedy herein conferred upon or reserved to the Trustee, to an Interest Rate Swap Counterparty, each Synthetic Security Counterparty or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing by law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

### Section 5.12 Delay or Omission Not Waiver.

No delay or omission of the Trustee or of the Interest Rate Swap Counterparty or each Synthetic Security Counterparty or Noteholder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Noteholders, as the case may be.

### Section 5.13 Control by Controlling Class.

Notwithstanding any other provision of this Indenture (but subject to the proviso in the definition of "Outstanding" in Section 1.1), a Majority of the Controlling Class shall have the right to cause the institution of and direct the time, method and place of conducting any Proceeding for any remedy available to the Trustee for exercising any trust, right, remedy or power conferred on the Trustee; provided that:

(a)    such direction shall not conflict with any rule of law or with this Indenture;

(b)      the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction; provided that, subject to Section 6.1, the Trustee need not take any action whether pursuant to direction from the Controlling Class or otherwise that it determines might involve it in liability (unless the Trustee has received satisfactory indemnity against such liability as set forth below);

(c)      the Trustee shall have been provided with indemnity satisfactory to it; and

(d)      any direction to the Trustee to undertake a Sale of the Collateral shall be made only pursuant to, and in accordance with, Sections 5.4 and 5.5.

### Section 5.14  Waiver of Past Defaults.

Prior to the time a judgment or decree for payment of the Money due has been obtained by the Trustee, as provided in this Article V, a Majority of the Controlling Class acting together with the Synthetic Security Counterparty may (by notice to the Trustee and the Issuer, with a copy to the Interest Rate Swap Counterparty) on behalf of the Holders of all the Notes waive any past Default and its consequences, except a Default:

(a)      in the payment of the principal of any Note or in the payment of interest on the Class A Notes or the Class B Notes (including Defaulted Interest and interest on Defaulted Interest, if any) or, after the Class A Notes and the Class B Notes have been paid in full, on the Class C Notes (including Deferred Interest, Defaulted Interest and interest on Defaulted Interest, if any), after the Class A Notes, Class B Notes and Class C Notes have been paid in full, on the Class D Notes (including Deferred Interest, Defaulted Interest and interest on Defaulted Interest, if any), or after the Class A Notes, Class B Notes, Class C Notes and Class D Notes have been paid in full, on the Class E Notes (including Deferred Interest, Defaulted Interest and interest on Defaulted Interest, if any);

(b)      in respect of a covenant or provision hereof that under Section 8.2 cannot be modified or amended without the waiver or consent of the Holder of each Outstanding Note affected thereby; or

(c)      arising under Section 5.1(g) or 5.1(h).

Notwithstanding the grant of a waiver of a past Default pursuant to the above, the Interest Rate Swap Counterparty may rescind such waiver by notice to the Trustee, the Collateral Manager and the Holders of the Controlling Class of Notes (given within five Business Days after receipt of notice of such waiver) if the Interest Rate Swap Counterparty delivers to the Trustee an Independent Opinion of Counsel or a certification from an Independent investment banking firm of national reputation attesting that such waiver will have a material and adverse effect on such Interest Rate Swap Counterparty, as applicable; *provided*, that the expense of obtaining such Independent opinion or certification shall be paid by such Interest Rate Swap Counterparty.

In the case of any such waiver, the Issuers, the Trustee, the related Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively, but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.  The Rating Agencies shall be notified in writing by the Issuer of any such waiver.

Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Indenture, but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.

### Section 5.15  Undertaking for Costs.

All parties to this Indenture agree, and each Holder of any Note by its acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due

78

regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.15 shall not apply to any suit instituted by the Trustee, to any suit instituted by any Noteholder, or any group of Noteholders, holding in the aggregate more than ten percent (10%) in Aggregate Outstanding Amount of the Controlling Class, or to any suit instituted by any Noteholder for the enforcement of the payment of the principal of or interest on any Note on or after the Stated Maturity expressed in such Note (or, in the case of redemption, on or after the applicable Redemption Date).

### Section 5.16 Waiver of Stay or Extension Laws.

Each of the Issuers covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants, the performance of or any remedies under this Indenture; and each of the Issuers (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

### Section 5.17 Sale of Collateral.

(a)      The power to effect any sale (a "Sale") of any portion of the Collateral pursuant to Sections 5.4 and 5.5 shall not be exhausted by any one or more Sales as to any portion of such Collateral remaining unsold, but shall continue unimpaired until the entire Collateral shall have been sold or all amounts secured by the Collateral shall have been paid. The Trustee may, upon notice to the Securityholders, and shall, upon direction of a Majority of the Controlling Class, from time to time postpone any Sale by announcement made at the time and place of such Sale; provided that, if the Sale is rescheduled for a date more than ten Business Days after the date of the determination by the Trustee, or an Independent investment banking firm of national reputation selected by the Trustee, pursuant to Section 5.5, such Sale shall not occur unless and until the Trustee has again made the determination required by Section 5.5. The Trustee hereby expressly waives its rights to any amount fixed by law as compensation for any Sale; provided that the Trustee shall be authorized to deduct the reasonable costs, charges and expenses incurred by it in connection with such Sale from the proceeds thereof notwithstanding the provisions of Section 6.8.

(b)      The Trustee may bid for and acquire any portion of the Collateral in connection with a public Sale thereof on an arms-length basis to the extent not prohibited by applicable law, and may pay all or part of the purchase price thereof, by crediting all or part of the net proceeds of such Sale after deducting the reasonable costs, charges and expenses incurred by the Trustee in connection with such Sale notwithstanding the provisions of Section 6.8 against amounts owing on the Notes or other amounts secured by this Indenture in accordance with the Priority of Payments. The Notes need not be produced in order to complete any such Sale, or in order for the net proceeds of such Sale to be credited against amounts owing on the Notes. The Trustee may hold, lease, operate, manage or otherwise deal with any property so acquired in any manner permitted by law in accordance with this Indenture.

(c)      If any portion of the Collateral consists of securities not registered under the Securities Act ("Unregistered Securities"), the Trustee may seek an Opinion of Counsel, or, if no such Opinion of Counsel can be obtained and with the consent of a Majority of the Controlling Class, seek a no-action position from the United States Securities and Exchange Commission or any other relevant Federal or state regulatory authorities, regarding the legality of a public or private sale of such Unregistered Securities.

(d)      The Trustee shall execute and deliver an appropriate instrument of conveyance transferring its interest in any portion of the Collateral in connection with a sale thereof. In addition, the Trustee is hereby irrevocably and by way of security appointed the agent and attorney-in-fact of the Issuer to transfer and convey the Issuer's interest in any portion of the Collateral in connection with a sale thereof, and to take all action necessary to effect such sale. No purchaser or transferee at such a sale shall be bound to ascertain the Trustee's authority, to inquire into the satisfaction of any conditions precedent or see to the application of any Monies.

30775-00034 NY:1268831.8

### Section 5.18 Action on the Notes.

The Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking or obtaining of or application for any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Trustee or the Noteholders shall be impaired by the recovery of any judgment by the Trustee against the Issuer or by the levy of any execution under such judgment upon any portion of the Collateral or upon any of the assets of the Issuer or the Co-Issuer.

## ARTICLE VI

## THE TRUSTEE

### Section 6.1 Certain Duties and Responsibilities.

(a)    Except during the continuance of an Event of Default:

(i)    the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)    in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; provided that, in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they substantially conform to the requirements of this Indenture and shall promptly, but in any event within three Business Days in the case of an Officer's certificate furnished by the Collateral Manager, notify the party delivering the same if such certificate or opinion does not conform. If a corrected form shall not have been delivered to the Trustee within 15 days after such notice from the Trustee, the Trustee shall so notify the Noteholders.

(b)    In case an Event of Default of which a Trust Officer has actual knowledge has occurred and is continuing, the Trustee shall, prior to the receipt of directions, if any, from a Majority of the Controlling Class, exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(c)    No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)    this subclause (c) shall not be construed to limit the effect of subclause (a) of this Section 6.1;

(ii)    the Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it shall be proven that the Trustee was negligent in ascertaining the pertinent facts;

(iii)    the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with any direction of the Issuer, the Co-Issuer or the Collateral Manager in accordance with this Indenture and/or a Majority (or such other percentage as may be required by the terms hereof) of the Controlling Class (or other Class if required or permitted by the terms hereof) relating to the time, method and place of conducting any Proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture; and

(iv)    no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any liability, financial or otherwise, in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers contemplated hereunder, if it shall have reasonable grounds for

80

believing that repayment of such funds or indemnity against such risk or liability is not reasonably assured to it unless such risk or liability relates to performance of its ordinary services, including under Article V.

(d)    For all purposes under this Indenture, the Trustee shall not be deemed to have notice or knowledge of any Event of Default described in Section 5.1(d), 5.1(e), 5.1(g) or 5.1(h) or any Default described in Section 5.1(e) or 5.1(f) unless a Trust Officer assigned to and working in the Corporate Trust Office has actual knowledge thereof or unless written notice of any event which is in fact such an Event of Default or such a Default, as the case may be, is received by the Trustee at the Corporate Trust Office. For purposes of determining the Trustee's responsibility and liability hereunder, whenever reference is made in this Indenture to such an Event of Default or such a Default, as the case may be, such reference shall be construed to refer only to such an Event of Default or such a Default, as the case may be, of which the Trustee is deemed to have notice as described in this Section 6.1(d).

(e)    Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article VI.

(f)    The Trustee shall, upon reasonable (but no less than two Business Days') prior written notice to the Trustee, permit any representative of a Holder of a Note, during the Trustee's normal business hours, to examine all books of account, records, reports and other papers of the Trustee relating to the Notes, to make copies and extracts therefrom (the reasonable out-of-pocket expenses incurred in making any such copies or extracts to be reimbursed to the Trustee by such Holder) and to discuss the Trustee's actions, as such actions relate to the Trustee's duties with respect to the Notes, with the Trustee's officers and employees responsible for carrying out the Trustee's duties with respect to the Notes.

## Section 6.2    Notice of Default.

Promptly (and in no event later than two Business Days) after the occurrence of any Default actually known to a Trust Officer of the Trustee or after any declaration of acceleration has been made or delivered to the Trustee pursuant to Section 5.2, the Trustee shall mail to the Issuers, the Collateral Manager, each Rating Agency (for so long as any Class of Notes is Outstanding), each Synthetic Security Counterparty, the Interest Rate Swap Counterparty, the Initial Investment Agreement Provider and to all Holders of Securities, as their names and addresses appear on the Note Register or Share Register and, upon written request therefor in the form of Schedule I attached hereto certifying that it is a holder of a beneficial interest in any Note, to such holder (or its designee), notice of all Defaults hereunder known to the Trustee, unless such Default shall have been cured or waived.

## Section 6.3    Certain Rights of Trustee.

Except as otherwise provided in Sections 6.1:

(a)    the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, approval, note or other paper or document believed by it in good faith to be genuine and to have been signed or presented by the proper party or parties;

(b)    any request or direction of the Issuer or the Co-Issuer mentioned herein shall be sufficiently evidenced by an Issuer Request or Issuer Order, as the case may be;

(c)    whenever in the administration of this Indenture the Trustee shall (i) deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon an Officer's certificate or (ii) be required to determine the value of any Collateral or funds hereunder or the cashflows projected to be received therefrom, the Trustee may, in the absence of bad faith on its part, rely on reports of nationally recognized accountants, investment bankers or other Persons qualified to provide the information required to make such determination, including nationally recognized dealers in securities of the type being valued and securities quotation services;

81

(d)     as a condition to the taking or omitting of any action by it hereunder, the Trustee may consult with counsel and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or omitted by it hereunder in good faith and in reliance thereon;

(e)     the Trustee shall be under no obligation to exercise or to honor any of the rights or powers vested in it by this Indenture at the request or direction of any of the Noteholders pursuant to this Indenture, unless such Noteholders shall have offered to the Trustee security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities which might reasonably be incurred by it in compliance with such request or direction;

(f)     the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, approval, note or other paper documents, but the Trustee, in its discretion, may and, upon the written direction of a Majority of any Class or of any Rating Agency shall make such further inquiry or investigation into such facts or matters as it may see fit or as it shall be directed, and, the Trustee shall be entitled, on reasonable prior notice to the Issuers and the Collateral Manager, to examine the books and records of the Issuers and the Collateral Manager relating to the Notes and the Collateral, personally or by agent or attorney at a time acceptable to the Issuers or the Collateral Manager in their reasonable judgment during normal business hours; provided that the Trustee shall cause its agents, to hold in confidence all such information, except (i) to the extent disclosure may be required by law or by any regulatory authority and (ii) to the extent that the Trustee, in its sole judgment (and after consultation with the Collateral Manager), may determine that such disclosure is consistent with its obligations hereunder;

(g)     except as provided in Section 3.3, the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees appointed with due care; provided that the Trustee shall not be responsible for any misconduct or negligence on the part of any agent (other than any Affiliate of the Trustee), attorney, custodian or nominee so appointed;

(h)     the Trustee shall not be liable for any action it takes or omits to take in good faith that it reasonably and, subject to Section 6.1(b) above, after the occurrence and during the continuance of an Event of Default, prudently believes to be authorized or within its rights or powers hereunder;

(i)     nothing herein shall be construed to impose an obligation on the part of the Trustee to recalculate, evaluate or verify any report, certificate or information received from the Issuer or Collateral Manager (except upon the request of a Rating Agency or a Majority of the Controlling Class);

(j)     the Trustee shall not be responsible or liable for the actions or omissions of, or any inaccuracies in the records of, any Clearing Agency, Common Depository, Euroclear, Clearstream or the Depositary or for the acts or omissions of the Collateral Manager or the Issuers;

(k)     to the extent any defined term hereunder, or any calculation required to be made or determined by the Trustee hereunder, is dependent upon or defined by reference to generally accepted accounting principles in the United States ("GAAP"), the Trustee shall be entitled to request and receive (and conclusively rely upon) instruction from the Issuer or the accountants appointed pursuant to Section 10.10 as to the application of GAAP in such connection, in any instance;

(l)     the enumeration of any permissive right or power herein available to the Trustee shall not be construed to be the imposition of a duty (unless and except to the extent expressly set forth herein); and

(m)     In order to comply with laws, rules, regulations and executive orders in effect from time to time applicable to banking institutions, including but not limited to those relating to the Patriot Act, the funding of terrorist activities and money laundering ("**Applicable Law**"), the Trustee is required to obtain, verify and record certain information relating to individuals and entities which maintain a business

82

relationship with the Trustee. Accordingly, each of the parties agrees to provide to the Trustee upon its request from time to time such identifying information and documentation as may be available for such party in order to enable the Trustee to comply with Applicable Law.

### Section 6.4    Authenticating Agents.

Upon the request of the Issuers, the Trustee shall, and if the Trustee so chooses the Trustee may, appoint one or more Authenticating Agents with power to act on its behalf and subject to its direction in the authentication of Notes in connection with issuance, transfers and exchanges under Sections 2.4, 2.5 and 8.5, as fully to all intents and purposes as though each such Authenticating Agent had been expressly authorized by those Sections to authenticate such Notes. For all purposes of this Indenture, the authentication of Notes by an Authenticating Agent pursuant to this Section 6.4 shall be deemed to be the authentication of Notes by the Trustee."

Any corporation into which any Authenticating Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, consolidation or conversion to which any Authenticating Agent shall be a party, or any corporation succeeding to the corporate trust business of any Authenticating Agent, shall be the successor of such Authenticating Agent hereunder, without the execution or filing of any paper with any party hereto or any further act on the part of the parties hereto or such Authenticating Agent or such successor corporation.

Any Authenticating Agent may at any time resign by giving written notice of resignation to the Trustee and the Issuer. The Trustee may at any time terminate the agency of any Authenticating Agent by giving written notice of termination to such Authenticating Agent and the Issuers. Upon receiving such notice of resignation or upon such a termination, the Trustee shall promptly appoint a successor Authenticating Agent and upon acceptance by the successor of such appointment, release the resigning or terminated Authenticating Agent from its obligations hereunder by written instrument, a copy of which instrument shall be delivered to the Issuers.

The Issuer agrees to pay to each Authenticating Agent from time to time reasonable compensation for its services (provided, however, that, so long as an Authenticating Agent is the Trustee, or an Affiliate thereof, such compensation shall be deemed included in the compensation payable to the Trustee under Section 6.8 pursuant to the Priority of Payments, and reimbursement for its reasonable expenses relating thereto and the Trustee shall be entitled to be reimbursed for such payments, subject to Section 6.8. The provisions of Sections 2.6(i), 2.8, 6.5 and 6.6 shall be applicable to any Authenticating Agent.

### Section 6.5    Not Responsible for Recitals or Issuance of Notes.

The recitals contained herein and in the Notes, other than the Certificate of Authentication thereon, shall be taken as the statements of the Issuers, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Indenture (except as may be made with respect to the validity of the Trustee's obligations hereunder), of the Collateral or of the Notes. The Trustee shall not be accountable for the use or application by the Issuers of the Notes or the proceeds thereof or any Money paid to the Issuers pursuant to the provisions hereof.

### Section 6.6    May Hold Notes.

The Trustee, any Paying Agent, the Note Registrar or any other agent of the Issuers, in its individual or any other capacity, may become the owner or pledgee of Notes and, may otherwise deal with the Issuers or any of their Affiliates, with the same rights it would have if it were not Trustee, Paying Agent, Note Registrar or such other agent.

### Section 6.7    Money Held in Trust.

Money held by the Trustee hereunder shall be held in trust to the extent required herein. The Trustee shall be under no liability for interest on any Money received by it hereunder except to the extent of income or other gain on investments which are deposits in or certificates of deposit of the Trustee in its commercial capacity. Except as

83

set forth in Section 10.2(d), the Trustee shall have no obligation to invest and reinvest any cash held in the absence of timely and specific written investment direction from the Collateral Manager. In no event shall the Trustee be liable for the selection of investments or for investment losses incurred thereon. The Trustee shall have no liability in respect of losses incurred as a result of the liquidation of any investment prior to its stated maturity or, except as otherwise provided in Section 10.2(d), the failure of the Collateral Manager to provide timely written investment direction.

### Section 6.8    Compensation and Reimbursement.

(a)    The Issuer agrees and covenants:

(i)    to pay the Trustee on each Distribution Date reasonable compensation for all services, including custodial services, rendered by it hereunder as set forth in a letter agreement dated the Closing Date (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);

(ii)    to reimburse the Trustee (subject to any written agreement between the Issuer and the Trustee) in a timely manner upon its request and consent by the Collateral Manager for all reasonable expenses, disbursements and advances incurred or made by the Trustee (as such or as Securities Intermediary) in accordance with any provision of this Indenture or any other documents executed in connection herewith (including, without limitation, securities transaction charges and the reasonable compensation and expenses and disbursements of its agents and legal counsel and of any accounting firm or investment banking firm employed by the Trustee pursuant to Section 4.1(a), 5.4, 5.5, 5.17, 6.3, 10.8 or 10.9, except any such expense, disbursement or advance as may be attributable to its negligence, willful misconduct or bad faith) but only to the extent any such securities transaction charges have not been waived during a Due Period due to the Trustee's receipt of a payment from a financial institution with respect to certain Eligible Investments, as specified by the Collateral Manager;

(iii)    to indemnify the Trustee, its directors, officers, employees and agents for, and to defend and hold them harmless against, any loss, claim, obligation, damage, injury, penalty, stamp, tax, action, suit, judgment, liability or expense (including, without limitation, reasonable attorney's fees and expenses) incurred without negligence, willful misconduct or bad faith on their part arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending themselves against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder (including as Securities Intermediary and all other capacities hereunder); and

(iv)    to pay the Trustee reasonable additional compensation together with its expenses (including reasonable counsel fees) for any collection action taken pursuant to Section 6.14.

(b)    The Issuer may remit payment for such fees and expenses to the Trustee or, in the absence thereof, the Trustee may from time to time deduct payment of its fees and expenses hereunder from Moneys on deposit in the Expense Account or, to the extent such fees and expenses exceed the amount on deposit in the Expense Account, the Payment Account on any Distribution Date in accordance with Section 11.1.

(c)    The Trustee hereby agrees not to cause the filing of a petition in bankruptcy, insolvency, reorganization, moratorium, receivership, conservatorship or other similar laws now or hereafter in effect against the Issuers for the non-payment to the Trustee of any amounts provided by this Section 6.8 until at least one year and one day, or, if longer, the applicable preference period then in effect, after the payment in full of all Notes issued under this Indenture.

(d)    The amounts payable to the Trustee pursuant to this Section 6.8 (other than amounts received by the Trustee from financial institutions under clause (a)(ii) above) shall not, except as provided by Sections 11.1(a)(i) and 11.1(a)(ii), exceed on any Distribution Date the limitation on the amount thereof described in clause (2) of Section 11.1(a)(i) for such Distribution Date and the Trustee shall have a lien ranking senior to that of the Noteholders upon all property and funds held or collected as part of the Collateral to secure payment of amounts

payable to the Trustee under this Section 6.8 not to exceed such amount with respect to any Distribution Date; provided that (i) the Trustee shall not institute any proceeding for enforcement of such lien except in connection with an action pursuant to Section 5.3 or 5.4 for the enforcement of the lien of this Indenture for the benefit of the Secured Parties and (ii) the Trustee may only enforce such a lien in conjunction with the enforcement of the rights of the Secured Parties in the manner set forth in Section 5.3.

The Trustee shall, subject to the Priority of Payments, receive amounts pursuant to this Section 6.8 and Sections 11.1(a)(i) and 11.1(a)(ii) only to the extent that the payment thereof will not result in an Event of Default and the failure to pay such amounts to the Trustee will not, by itself, constitute an Event of Default. Subject to Section 6.10, the Trustee shall continue to serve as Trustee under this Indenture notwithstanding the fact that the Trustee shall not have received amounts due it hereunder and hereby agrees not to cause the filing of a petition in bankruptcy, insolvency, reorganization, moratorium, receivership, conservatorship or other similar laws now or hereafter in effect against the Issuers for the nonpayment to the Trustee of any amounts provided by this Section 6.8 until at least one year and one day, or, if longer, the applicable preference period then in effect, after the payment in full of all Notes issued under this Indenture. No direction by a Majority of the Controlling Class shall affect the right of the Trustee to collect amounts owed to it under this Indenture.

### Section 6.9  Corporate Trustee Required; Eligibility.

There shall at all times be a Trustee hereunder which shall be a corporation, association or trust company organized and doing business under the laws of the United States or of any State thereof, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $200,000,000, subject to supervision or examination by Federal or state authority, having a rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and if so rated, such rating is not on watch for downgrade, and at least "BBB+" by Fitch and having an office within the United States. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 6.9, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 6.9, it shall resign immediately in the manner and with the effect hereinafter specified in this Article VI.

### Section 6.10  Resignation and Removal; Appointment of Successor.

(a)    No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article VI shall become effective until the acceptance of appointment by the successor Trustee under Section 6.11.

(b)    The Trustee may resign at any time by giving written notice thereof to the Preference Share Paying Agent, the Issuers, the Noteholders, the Collateral Manager and each Rating Agency. Upon receiving such notice of resignation, the Issuers shall promptly appoint a successor trustee or trustees by written instrument, in duplicate, executed by an Authorized Officer of the Issuer and an Authorized Officer of the Co-Issuer, one copy of which shall be delivered to the Trustee so resigning and one copy to the successor trustee or trustees, together with a copy to each Noteholder; provided that such successor Trustee shall be appointed only upon the written consent of a Majority of each Class or, at any time when an Event of Default shall have occurred and be continuing, by a Majority of the Controlling Class. If no successor trustee shall have been appointed and an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation or removal, the resigning Trustee, or any Holder of a Note, on behalf of itself and all others similarly situated, may petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c)    The Trustee may be removed at any time by Act of Holders of at least sixty-six and two-thirds percent (66 ⅔) of the Aggregate Outstanding Amount of all of the Notes (voting together as a single Class) or, at any time when an Event of Default shall have occurred and be continuing or when a successor Trustee has been appointed pursuant to Section 6.11, by Act of a Majority of the Controlling Class, delivered to the Trustee and to the Issuers.

30775-00034 NY:1268831.8

(d)    If at any time:

(i)    the Trustee shall cease to be eligible under Section 6.9 and shall fail to resign after written request therefor by the Issuers or by any Holder; or

(ii)    the Trustee shall become incapable of acting or shall be adjudged as bankrupt or insolvent or a receiver or liquidator of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case (subject to Section 6.10(a)), (A) the Issuer, by Issuer Order, may remove the Trustee, or (B) subject to Section 5.15, any Holder may, on behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(e)    If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of the Trustee for any reason, the Issuers, by Issuer Order, shall promptly appoint a successor Trustee. If the Issuers shall fail to appoint a successor Trustee within 60 days after such resignation, removal or incapability or the occurrence of such vacancy, a successor Trustee may be appointed by Act of a Majority of the Controlling Class delivered to the successor and the retiring Trustee. The successor Trustee so appointed shall, forthwith upon its acceptance of such appointment, become the successor Trustee and supersede any successor Trustee proposed by the Issuers. If no successor Trustee shall have been so appointed by the Issuers or such Holders and shall have accepted appointment in the manner hereinafter provided, subject to Section 5.15, any Holder may, on behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(f)    The Issuers shall give prompt notice of each resignation and each removal of the Trustee and each appointment of a successor Trustee by mailing written notice of such event by first class mail, postage prepaid, to the Collateral Manager, each Rating Agency and to the Holders as their names and addresses appear in the Note Register or the Share Register, as applicable. Each notice shall include the name of the successor Trustee and the address of its Corporate Trust Office. If the Issuers fail to mail such notice within ten days after acceptance of appointment by the successor Trustee, the successor Trustee shall cause such notice to be given at the expense of the Issuers.

### Section 6.11 Acceptance of Appointment by Successor.

Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Issuers and the retiring Trustee an instrument accepting such appointment as of the date of such instrument. Upon delivery of the required instruments, the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any other act, deed or conveyance, shall become vested with all the rights, powers, trusts, duties and obligations of the retiring Trustee; but, on request of the Issuers or a Majority of any Class or the successor Trustee, such retiring Trustee shall, upon payment of its charges then unpaid, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee, and shall duly assign, transfer and deliver to such successor Trustee all property and Money held by such retiring Trustee hereunder, subject nevertheless to its lien, if any, provided for in Section 6.8(d). Upon request of any such successor Trustee, the Issuers shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts.

No successor Trustee shall accept its appointment unless (a) at the time of such acceptance such successor shall be qualified and eligible under this Article VI (particularly Section 6.9) and (b) the Rating Condition with respect to the appointment of such successor Trustee shall have been satisfied. No appointment of a successor Trustee shall become effective if a Majority of the Controlling Class objects to such appointment; and no appointment of a successor shall become effective until the date ten days after notice of such appointment has been given to each Noteholder.

### Section 6.12 Merger, Conversion, Consolidation or Succession to Business of Trustee.

Any Person into which the Trustee may be merged or converted or with which it may be consolidated, or any Person resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any Person succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder; provided such Person shall be otherwise qualified and eligible under this Article VI, without the execution or filing of any paper or any further act on the part of any of the parties hereto. In case any of the Notes have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Notes so authenticated with the same effect as if such successor Trustee had itself authenticated such Notes.

### Section 6.13 Co-Trustees.

At any time or times, for the purpose of meeting the legal requirements of any jurisdiction in which any part of the Collateral may at the time be located, the Issuers and the Trustee shall have power to appoint one or more Persons to act as co-trustee, jointly with the Trustee of all or any part of the Collateral, with the power to file such proofs of claim and take such other actions pursuant to Section 5.5 or Section 5.6 and to make such claims and enforce such rights of action on behalf of the Holders of the Notes subject to the other provisions of this Section 6.13. The appointment of any such co-trustee must be approved by the Rating Agencies.

The Issuers shall join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to appoint a co-trustee. If the Issuers do not join in such appointment within 15 days after the receipt by them of a request to do so, the Trustee shall have power to make such appointment. Should any written instrument from the Issuers be required by any co-trustee so appointed for more fully confirming to such co-trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Issuers. The Issuer agrees to pay (subject to the Priority of Payments) any reasonable fees and expenses in connection with such appointment.

Every co-trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following terms:

(a)    the Notes shall be authenticated and delivered and all rights, powers, duties and obligations hereunder in respect of the custody of securities, Cash and other personal property held by, or required to be deposited or pledged with, the Trustee hereunder, shall be exercised solely by the Trustee;

(b)    the rights, powers, duties and obligations hereby conferred or imposed upon the Trustee in respect of any property covered by the appointment of a co-trustee shall be conferred or imposed upon and exercised or performed by the Trustee or by the Trustee and such co-trustee jointly, as shall be provided in the instrument appointing such co-trustee, except to the extent that under any law of any jurisdiction in which any particular act is to be performed, the Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by a co-trustee;

(c)    the Trustee at any time, by an instrument in writing executed by it, with the concurrence of the Issuers evidenced by an Issuer Order, may accept the resignation of or remove any co-trustee appointed under this Section 6.13, and in case an Event of Default has occurred and is continuing, the Trustee shall have the power to accept the resignation of, or remove, any such co-trustee without the concurrence of the Issuers. A successor to any co-trustee so resigned or removed may be appointed in the manner provided in this Section 6.13;

(d)    no co-trustee hereunder shall be personally liable by reason of any act or omission of the Trustee or any other co-trustee hereunder;

(e)    the Trustee shall not be liable by reason of any act or omission of a co-trustee; and

87

(f)    any Act of Noteholders delivered to the Trustee shall be deemed to have been delivered to each co-trustee.

### Section 6.14 <u>Certain Duties Related to Delayed Payment of Proceeds</u>.

In the event that the Trustee shall not have received a payment with respect to any Pledged Security on its Due Date (unless otherwise directed by the Collateral Manager in connection with any Pledged Security with respect to which there was a default in payment during the preceding Due Period as to which the Collateral Manager is taking action under the Management Agreement), (a) the Trustee shall promptly notify the Issuer and the Collateral Manager in writing and (b) unless within three Business Days (or the end of the applicable grace period for such payment, if longer) after such notice (i) such payment shall have been received by the Trustee or (ii) the Issuer, in its absolute discretion (but only to the extent permitted by Section 10.2(c)), shall have made provision for such payment satisfactory to the Trustee in accordance with Section 10.2(c), the Trustee shall request the issuer of such Pledged Security, the trustee under the related Underlying Instrument or a paying agent designated by either of them, as the case may be, to make such payment as soon as practicable after such request but in no event later than three Business Days after the date of such request. In the event that such payment is not made within such time period, the Trustee, subject to the provisions of Section 6.1(c)(iv), shall take such action as the Collateral Manager shall direct in writing. Any such action shall be without prejudice to any right to claim a Default under this Indenture. In the event that the Issuer or the Collateral Manager requests a release of a Pledged Security and/or delivers a new Underlying Asset in connection with any such action under the Management Agreement, such release and/or delivery shall be subject to Section 10.9 and Article XII, as the case may be. Notwithstanding any other provision hereof, the Trustee shall deliver to the Issuer or its designee any payment with respect to any Pledged Security received after the Due Date thereof to the extent the Issuer previously made provisions for such payment satisfactory to the Trustee in accordance with Section 10.2(c) and this Section 6.14 and such payment shall not be deemed part of the Collateral.

### Section 6.15 <u>Representations and Warranties of the Bank</u>.

(a)    Organization. The Bank has been duly organized and is validly existing as a banking corporation under the laws of the State of New York and has the power to conduct its business and affairs as a trustee.

(b)    Authorization; Binding Obligations. The Bank has the power and authority to perform the duties and obligations of Trustee, Paying Agent, Transfer Agent and Note Registrar under this Indenture. The Bank has taken all necessary action to authorize the execution, delivery and performance of this Indenture, and all of the documents required to be executed by the Bank pursuant hereto. This Indenture has been duly executed and delivered by the Bank. Upon execution and delivery by the Issuers, this Indenture will constitute the legal, valid and binding obligation of the Bank enforceable in accordance with its terms, except that such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, liquidation, or other similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity, including, without limitation, concepts of materiality, reasonableness, good faith and fair dealing (regardless of whether such enforceability is considered in a proceeding in equity or at law).

(c)    Eligibility. The Bank is eligible under Section 6.9 to serve as Trustee hereunder.

(d)    No Conflict. Neither the execution, delivery and performance of this Indenture, nor the consummation of the transactions contemplated by this Indenture, (i) is prohibited by, or requires the Bank to obtain any consent, authorization, approval or registration under, any law, statute, rule, regulation, judgment, order, writ, injunction or decree that is binding upon the Bank or any of its properties or assets, or (ii) will violate any provision of, result in any default or acceleration of any obligations under, result in the creation or imposition of any lien pursuant to, or require any consent under, any agreement to which the Bank is a party.

(e)    No Proceedings. There are no proceedings pending, or to the best knowledge of the Bank, threatened against the Bank before any Federal, state or other governmental agency, authority, administrator or regulatory body, arbitrator, court or other tribunal, foreign or domestic, that could have a material adverse effect on the performance by the Trustee of its duties hereunder.

**Section 6.16 Eligible Investments; Investments and Withdrawals Under the Initial Investment Agreement.**

(a)    Eligible Investments acquired by the Trustee, as selected by the Collateral Manager, from time to time with available funds in an Account shall be credited by the Trustee to such Account.

(b)    The Issuer hereby directs the Trustee to enter into the Initial Investment Agreement on the Closing Date and directs the Trustee to invest (i) on the Closing Date with the Initial Investment Agreement Provider, in accordance with the terms of the Initial Investment Agreement, U.S.$ 237,000,000 from the Synthetic Security Collateral Account, (ii) to the extent permitted under the Initial Investment Agreement, any amounts credited to a Synthetic Security Collateral Account with the Investment Agreement Provider and (iii) to the extent that an investment under (ii) above would exceed the amount permitted under the Initial Investment Agreement, any amounts credited to a Synthetic Security Collateral Account in Eligible Investments as directed by the Collateral Manager, pursuant to Section 10.2(k), to secure the obligations of the Issuer under Section 11.1A, on the Business Day on which such amounts are deposited in such Synthetic Security Collateral Account.

(c)    The Trustee, on behalf of the Issuer shall demand of the Initial Investment Agreement Provider by delivering a withdrawal request to the Initial Investment Agreement Provider before 11:00 a.m. New York time at least two Business Days prior to the date on which such funds so withdrawn are to be applied for the related purpose as set forth below and in accordance with Section 2.2 of the Initial Investment Agreement, withdrawals from the sums invested under the Initial Investment Agreement (i) in an amount sufficient to pay any amounts due by the Issuer under the Synthetic Securities in accordance with Section 11.1A and (ii) withdrawals of all sums invested by, and all other amounts due to, the Issuer under the Initial Investment Agreement upon declaration of acceleration of Maturity of the Notes.

(d)    The Trustee, on behalf of the Issuer, if notice of an Optional Redemption, Tax Redemption, Auction Call Redemption or Clean up Call has been given by the Issuer and not withdrawn shall provide such notice to the Initial Investment Agreement Provider on the date such notice is provided to holders of the Notes, shall demand of the Initial Investment Agreement Provider, in accordance with the terms of the Initial Investment Agreement, withdrawals of all sums invested by, and all other amounts due to, the Issuer under the Initial Investment Agreement.

(e)    The Trustee, on behalf of the Issuer, if as of any Determination Date, the Synthetic Security Collateral Amount exceeds the Required Synthetic Security Collateral Amount, shall demand of the Initial Investment Agreement Provider by delivering a withdrawal request to the Initial Investment Agreement Provider before 11:00 a.m. New York City time on or prior to the second Business Day after such Determination Date, in accordance with Section 2.2 of the Initial Investment Agreement, withdrawals of such excess amount.

(f)    Five Business Days prior to the Stated Maturity, the Trustee, on behalf of the Issuer, shall demand of the Initial Investment Agreement Provider, in accordance with the terms of the Initial Investment Agreement, withdrawals of all sums invested by, and all other amounts due to, the Issuer under the Initial Investment Agreement.

(g)    If (i) a Downgrade Event (as defined in the Initial Investment Agreement) occurs and (ii) the Initial Investment Agreement Provider does not perform any of the options set forth in the Initial Investment Agreement for such event, the Trustee, on behalf of the Issuer, shall, at the direction of the Collateral Manager and in accordance with the terms of the Initial Investment Agreement, terminate the Initial Investment Agreement and demand the Initial Investment Agreement Provider withdrawals of all sums invested by, and all other amounts due to, the Issuer under the Initial Investment Agreement.

(h)    If an Event of Default (as defined in the Initial Investment Agreement) occurs and is continuing, the Trustee, on behalf of the Issuer, shall (i) terminate the Initial Investment Agreement, (ii) demand the Initial Investment Agreement Provider, in accordance with the terms of the Initial Investment Agreement, withdrawals of all sums invested by, and all other amounts due to, the Issuer under the Initial Investment Agreement and (iii) take

30775-00034 NY:1268831.8

all reasonable steps necessary to exercise the Issuer's rights and remedies under the Initial Investment Agreement as directed by the Collateral Manager.

(i)  If the Initial Investment Agreement is terminated, the Trustee shall, if so directed in a Manager Order, enter into a Replacement Investment Agreement and exercise the Issuer's rights thereunder on behalf of the Issuer as directed from time to time by a Manager Order.

(j)  The Trustee, on behalf of the Issuer, shall take all reasonable steps necessary to exercise the Issuer's rights and remedies (A) if so directed in a Manager Order with respect to the Collateral (as defined in the Initial Investment Agreement) in accordance with the terms of the Initial Investment Agreement and (B) under the Policy (as defined in the Initial Investment Agreement) and in accordance with the terms thereof, by giving notice of the claim under the Policy to the Insurer (as defined in the Initial Investment Agreement) before 1:00 p.m. New York City time on a Business Day in order to receive a payment by 12 noon on the following Business Day and enforcing the Policy if so directed in a Manager Order to the extent the Provider fails to pay in accordance with the Policy.

## Section 6.17 Fiduciary for Noteholders Only; Agent for the Interest Rate Swap Counterparty and Collateral Manager.

With respect to the security interests created hereunder, the pledge of any item of Collateral to the Trustee is to the Trustee as representative of the Noteholders and agent for the other Secured Parties.

## Section 6.18 The Securities Intermediary.

(a)  There shall at all times be one or more securities intermediaries appointed by the Trustee for purposes of this Indenture (the "Securities Intermediary"). The Bank is hereby appointed as the initial Securities Intermediary hereunder and the Bank hereby accepts such appointment.

(b)  The Securities Intermediary shall be, and the Bank hereby represents and warrants that it is as of the date hereof and shall be for so long as it is the Securities Intermediary hereunder, a corporation or national bank that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity hereunder. The Securities Intermediary shall, and the Bank does, agree with the parties hereto that each Account shall be an account to which financial assets may be credited and undertake to treat the Trustee as entitled to exercise the rights that comprise such financial assets. The Securities Intermediary shall, and the Bank does, agree with the parties hereto that each item of property credited to each Account shall be treated as a financial asset. The Securities Intermediary shall, and the Bank does, agree with the parties hereto that the Securities Intermediary's jurisdiction of the Securities Intermediary with respect to the Collateral for purposes of Article 8 of the UCC shall be the State of New York. The Securities Intermediary shall, and the Bank does, represent and covenant that it is not and will not be (as long as it is the Securities Intermediary hereunder) a party to any agreement that is inconsistent with the provisions of this Indenture. The Securities Intermediary shall, and the Bank does, covenant that it will not take any action inconsistent with the provisions of this Indenture applicable to it. The Securities Intermediary shall, and the Bank does, agree that any item of property credited to any Account shall not be subject to any security interest, claim, lien, encumbrance, or right of set-off in favor of the Securities Intermediary or anyone claiming through the Securities Intermediary (other than the Trustee).

(c)  It is the intent of the Trustee and the Co-Issuers that each Account shall be a securities account of the Trustee and not an account of the Co-Issuers. Nonetheless, the Securities Intermediary shall agree to comply with entitlement orders originated by the Trustee without further consent by the Co-Issuers or any other person or entity, and the Bank agrees that for so long as it is the Securities Intermediary hereunder, it will comply with entitlement orders originated by the Trustee without further consent by the Co-Issuers or any other person or entity. The Securities Intermediary shall covenant that it will not agree with any person or entity other than the Trustee that it will comply with entitlement orders originated by any person or entity other than the Trustee, and the Bank hereby covenants that, for so long as it is the Securities Intermediary hereunder, it will not agree with any person or entity other than the Trustee that it will comply with entitlement orders originated by any person or entity other than the Trustee.

90

(d)     Nothing herein shall imply or impose upon the Securities Intermediary any duties or obligations other than those expressly set forth herein and those applicable to a securities intermediary under the UCC (and the Securities Intermediary shall be entitled to all of the protections available to a securities intermediary under the UCC).  Without limiting the foregoing, nothing herein shall imply or impose upon the Securities Intermediary any duties of a fiduciary nature (such as, without limitation, the fiduciary duties of the Trustee hereunder).

(e)     The Securities Intermediary may at any time resign by notice to the Trustee and may at any time be removed by notice from the Trustee; *provided however* that it shall be the responsibility of the Trustee to appoint a successor Securities Intermediary and to cause the Accounts to be established and maintained with such successor Securities Intermediary in accordance with the terms hereof; and the responsibilities and duties of the retiring Securities Intermediary hereunder shall remain in effect until all of the Collateral credited to the Accounts held by such retiring Securities Intermediary have been transferred to such successor.  Any corporation into which the Securities Intermediary may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, consolidation or conversion to which the Securities Intermediary shall be a party, shall be the successor of the Securities Intermediary hereunder, without the execution or filing of any further act on the part of the parties hereto or such successor corporation.

(f)     All agreements between the Securities Intermediary and any party hereto shall be governed by the laws of the State of New York.

### Section 6.19  Right of Trustee in Capacity of Note Registrar, Paying Agent, Transfer Agent, Authenticating Agent, Calculation Agent or Securities Intermediary.

In the event that the Trustee is also acting in the capacity of Paying Agent, Transfer Agent, Authenticating Agent, Note Registrar, Calculation Agent or Securities Intermediary hereunder, the rights, protections, immunities or indemnities afforded to the Trustee pursuant to this Article VI shall also be afforded to the Trustee in its capacity as Paying Agent, Transfer Agent, Authenticating Agent, Note Registrar, Calculation Agent or, to the extent not inconsistent with Section 6.18 of this Indenture and Article 8 of the UCC, Securities Intermediary.

## ARTICLE VII

## COVENANTS

### Section 7.1  Payment of Principal and Interest.

The Issuers will duly and punctually pay all principal and interest (including Deferred Interest, Defaulted Interest and interest thereon, if any) in accordance with the terms of the Notes and this Indenture.  Amounts properly withheld under the Code or other applicable law by any Person from a payment to any Securityholder of principal and/or interest or Excess Amounts shall be considered as having been paid by the Issuers to such Securityholder for all purposes of this Indenture.

The Trustee hereby provides notice to each Noteholder that the failure of such Noteholder to provide the Trustee with appropriate tax certifications may result in greater amounts being withheld from payments to such Noteholder under this Indenture than would be withheld if such certifications had been provided (provided that amounts withheld pursuant to applicable tax laws shall be considered as having been paid by the Issuers as provided above).

### Section 7.2  Maintenance of Office or Agency.

The Issuers hereby appoint the Bank as the principal Paying Agent for the payment of principal of and interest on the Notes and designate the Registrar Office as the place where such Notes may be surrendered for registration of transfer or exchange.  The Issuers hereby appoint CT Corporation System, 111 Eighth Avenue, 13th Floor, New York, New York 10011, as the Issuers' agent where notices and demands to or upon the Issuers in respect of the Notes or this Indenture may be served.  The Issuers hereby appoint RSM Robson Rhodes LLP, RSM

91

House, Herbert Street, Dublin 2, Ireland as a Paying Agent (the **"Irish Paying Agent"**) and as the Issuers' agent where notices and demands to or upon the Issuers in respect of any Notes listed on the Exchange may be served.

The Issuers may at any time and from time to time vary or terminate the appointment of any such agent or appoint any additional agents for any or all of such purposes; provided that (a) the Issuers will maintain in the Borough of Manhattan, The City of New York, an office or agency where notices and demands to or upon the Issuers in respect of the Notes and this Indenture may be served, (b) no Paying Agent shall be appointed in a jurisdiction which subjects payments on the Notes to withholding tax and (c) the Issuers may not terminate the appointment of any Paying Agent without the consent of a Majority of the Controlling Class. The Issuers shall give prompt written notice to the Trustee, each Rating Agency and the Noteholders of the appointment or termination of any such agent and of the location and any change in the location of any such office or agency.

If at any time the Issuers shall fail to maintain any such required office or agency in the Borough of Manhattan, The City of New York or shall fail to furnish the Trustee with the address thereof, presentations and surrenders may be made at and notices and demands may be served on the Issuers, to the Paying Agent at its office and Notes may be presented and surrendered for payment to the Paying Agent at the office designated by the Paying Agent (and the Issuers hereby appoint such offices, respectively, as their agent to receive, as applicable such respective presentations, and surrenders, notices and demands).

For so long as any Class of Notes are listed on the Exchange and such exchange shall so require, the Issuers shall maintain a listing agent, a Paying Agent and an agent where notices and demands to or upon the Issuers in respect of any Notes listed on the Exchange may be served and where such Notes may be surrendered for registration of transfer or exchange.

### Section 7.3    Money for Note Payments to be Held in Trust.

All payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Payment Account shall be made on behalf of the Issuers by the Trustee or a Paying Agent with respect to payments on the Notes.

When the Issuers shall have a Paying Agent that is not also the Note Registrar, they shall furnish, or cause the Note Registrar to furnish, no later than the fifth calendar day after each Record Date a list, if necessary, in such form as such Paying Agent may reasonably request, of the names and addresses of the Holders and of the certificate numbers of individual Notes held by each such Holder.

Whenever the Issuers shall have a Paying Agent other than the Trustee, they shall, on or before the Business Day next preceding each Distribution Date or Redemption Date, as the case may be, direct the Trustee to deposit on such Distribution Date or Redemption Date, as the case may be, with such Paying Agent, if necessary, an aggregate sum sufficient to pay the amounts then becoming due (to the extent funds are then available for such purpose in the Payment Account, Interest Collection Account or Principal Collection Account, as the case may be), such sum to be held in trust for the benefit of the Persons entitled thereto, and (unless such Paying Agent is the Trustee) the Issuers shall promptly notify the Trustee of its action or failure so to act. Any Moneys deposited with a Paying Agent (other than the Trustee) in excess of an amount sufficient to pay the amounts then becoming due on the Notes with respect to which such deposit was made shall be paid over by such Paying Agent to the Trustee for application in accordance with Article XI.

The initial Paying Agents shall be as set forth in Section 7.2. Any additional or successor Paying Agents shall be appointed by Issuer Order with written notice thereof to the Trustee; provided that so long as any Class of Notes is rated by the Rating Agencies and with respect to any additional or successor Paying Agent for the Notes, either (i) the Paying Agent for the Notes has a rating of not less than "AA-" and not less than "A-1+" by Standard & Poor's, a rating of not less than "Aa1" and not less than "P-1" by Moody's and a rating of not less than "AA-" and not less than "F1+" by Fitch or (ii) the Rating Condition with respect to the appointment of such Paying Agent shall have been satisfied. In the event that (i) such successor Paying Agent ceases to have a rating of at least "AA-" and of "A-1+" by Standard & Poor's, a rating of not less than "Aa1" and not less than "P-1" by Moody's and a rating of at least "AA-" and of "F1+" by Fitch or (ii) the Rating Condition with respect to the appointment of such Paying Agent

shall not have been satisfied, the Issuers shall promptly (upon being notified or learning thereof) remove such Paying Agent and appoint a successor Paying Agent. The Issuers shall not appoint any Paying Agent (other than an initial Paying Agent) that is not, at the time of such appointment, a depository institution or trust company subject to supervision and examination by Federal and/or state and/or national banking authorities. The Issuers shall cause each Paying Agent other than the Trustee to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee (and if the Trustee acts as Paying Agent, it hereby so agrees), subject to the provisions of this Section 7.3, that such Paying Agent will:

(a)    allocate all sums received for payment to (i) the Holders of Notes or (ii) the Preference Shares Paying Agent for distribution to the Preference Shareholders on each Distribution Date and Redemption Date among such Holders in the proportion specified in the instructions set forth in the applicable Note Valuation Report or Redemption Date Statement or as otherwise provided herein, in each case to the extent permitted by applicable law;

(b)    hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(c)    if such Paying Agent is not the Trustee, immediately resign as a Paying Agent and forthwith pay to the Trustee all sums held by it in trust for the payment of Notes if at any time it ceases to meet the standards set forth above required to be met by a Paying Agent at the time of its appointment;

(d)    if such Paying Agent is not the Trustee, immediately give the Trustee notice of any Default by the Issuer or the Co-Issuer (or any other obligor upon the Notes) in the making of any payment required to be made; and

(e)    if such Paying Agent is not the Trustee at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

The Issuers may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuers or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuers or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such Money.

Except as otherwise required by applicable law, any Money deposited with the Trustee or any Paying Agent in trust for the payment of the principal of or interest on any Note and remaining unclaimed for two years after such principal or interest has become due and payable shall be paid to the Issuers on Issuer Request; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer or the Co-Issuer for payment of such amounts and all liability of the Trustee or such Paying Agent with respect to such trust Money (but only to the extent of the amounts so paid to the Issuers) shall thereupon cease. The Trustee or such Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuers, any reasonable means of notification of such release of payment, including mailing notice of such release to Holders whose Notes have been called but have not been surrendered for redemption or whose right to or interest in Monies due and payable but not claimed is determinable from the records of any Paying Agent, at the last address of record of each such Holder.

## Section 7.4  Existence of Issuers.

The Issuer and the Co-Issuer shall maintain in full force and effect their existence and rights as an exempted company incorporated and registered under the laws of the Cayman Islands and a corporation existing under the laws of the State of Delaware, respectively, and shall obtain and preserve their respective qualifications to do business in each jurisdiction in which such qualifications are or shall be necessary to protect the validity and enforceability of this Indenture, the Securities or any of the Collateral; provided, however, that the Issuer and the

93

Co-Issuer each shall be entitled to (and at the direction of a Majority-in-Interest of the Preference Shareholders shall) change its jurisdiction of incorporation from the Cayman Islands and Delaware, respectively, to any other jurisdiction reasonably selected by the Issuer (or by the Holders of a Majority of the Preference Shares) so long as (i) written notice of such change shall have been given by the Issuer to the Trustee and by the Trustee to the Holders and the Rating Agencies and the Issuer or the Trustee will have received a written confirmation from each Rating Agency that such action will not result in the withdrawal, reduction or other adverse action with respect to any then-current rating of any Class of Notes, (ii) such change is not disadvantageous in any material respect to the Holders, and (iii) on or prior to the fifteenth Business Day following such notice the Trustee shall not have received written notice from a Majority of the Controlling Class objecting to such change.

The Issuer and the Co-Issuer shall ensure that all corporate or other formalities regarding their respective existences (including holding regular board of directors' and/or shareholders', or other similar, meetings) or registrations are followed. Neither the Issuer nor the Co-Issuer shall take any action, or conduct its affairs in a manner, that is likely to result in its separate existence being ignored or in its assets and liabilities being substantively consolidated with any other Person in a proceeding in bankruptcy, insolvency, reorganization, moratorium, receivership, conservatorship or other similar laws now or hereafter in effect. Without limiting the foregoing, (a) the Issuer shall not have any subsidiaries other than the Co-Issuer, (b) the Co-Issuer shall not have any subsidiaries and (c) the Issuer and the Co-Issuer shall not (i) have any employees, (ii) engage in any transaction with any Holder of Ordinary Shares that would constitute a conflict of interest or (iii) pay dividends other than in accordance with the terms of this Indenture and the Preference Share Documents; provided that the foregoing shall not prohibit the Issuer from entering into the transactions contemplated by the Administration Agreement with the Administrator and the Preference Share Paying Agency Agreement with the Share Registrar. In the event the Issuer is advised by counsel to the Issuer or notified by any Holder of a Security, an Initial Purchaser or the Trustee that a Tax Event has occurred or may occur, the Issuer shall take such actions as shall, based on the advice of such counsel, be desirable to avoid the occurrence of a Tax Event or the existence of a Tax Materiality Condition, to reduce the amount of tax payable by the Issuer or to cause the Tax Event to cease to occur, including (i) amendments to any of the Transaction Agreements (pursuant to the terms set forth therein) or exercise of the rights (including termination rights) of the Issuer under any such Transaction Agreements (pursuant to the terms set forth therein), (ii) the dissolution of the Co-Issuer, (iii) a consolidation, merger or conveyance pursuant to Section 7.10, and (iv) any other action which such counsel shall advise.

### Section 7.5    Protection of Collateral.

(a)    The Issuer shall from time to time authorize, execute and deliver, and the Collateral Manager, on behalf of the Issuer and for the benefit of the Trustee and the Secured Parties, shall file and deliver, all such supplements and amendments hereto, all such financing statements, amendments of financing statements, continuation statements, instruments of further assurance and other instruments, and shall take such other action as may be necessary or advisable or desirable to secure the rights and remedies of the Holders hereunder and to:

(i)    Grant more effectively all or any portion of the Collateral;

(ii)    maintain, preserve and perfect the lien (and its status as being of first priority and free of any adverse claim (or the legal equivalent thereof) in accordance with the UCC) of this Indenture or to carry out more effectively the purposes hereof;

(iii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture (including any and all actions necessary or desirable as a result of changes in law or regulations);

(iv)    enforce any of the Pledged Securities or other instruments or property included in the Collateral;

(v)    preserve and defend title to the Collateral and the rights therein of the Trustee and the Secured Parties against the claims of all persons and parties; or

94

(vi)    (A) pay or cause to be paid any and all taxes levied or assessed upon either Co-Issuer or in respect of all or any part of the Collateral and timely file all tax returns and information statements as required, and (B) if required to prevent the withholding or imposition of United States income tax, deliver or cause to be delivered a United States Internal Revenue Service Form W-8BEN or successor applicable form, to each Issuer, counterparty or paying agent with respect to (as applicable) an item included in the Collateral at the time such item included in the Collateral is purchased or entered into and thereafter prior to the expiration or obsolescence of such form.

The Issuer hereby authorizes the filing of financing statements (and amendments of financing statements and continuation statements) that name the Issuer as debtor and the Trustee as secured party and that cover all personal property of the Issuer. The Issuer also hereby ratifies its authorization of the filing of any such financing statements (or amendments of financing statements or continuation statements) that were filed prior to the execution hereof. The Issuer hereby designates the Trustee its agent and attorney-in-fact to execute under hand, under seal or as a deed (upon written instructions from the Collateral Manager on behalf of the Issuer) any instrument required pursuant to this Section 7.5 and the Trustee shall from time to time cause to be filed financing statements, amendments thereto, or continuation statements; provided that such appointment shall not impose upon the Trustee any of the Issuer's obligations under this Section 7.5. The Issuer shall take all action, including the authorization and filing of financing statements, continuation statements, and amendments thereto, as is necessary to perfect and maintain the perfection and priority of the security interest in the Collateral granted pursuant to this Indenture.

(b)    The Trustee shall not, except in accordance with Section 10.9(a), (b), (c) or (e) as applicable, remove any portion of the Collateral from the jurisdiction in which it was held at the date the most recent Opinion of Counsel was delivered pursuant to Section 7.6 (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered at the Closing Date pursuant to Section 3.1(c), if no Opinion of Counsel has yet been delivered pursuant to Section 7.6) or (B) from the possession of the Person who held it on such date or unless the Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

(c)    The Issuer shall pay or cause to be paid taxes, if any, levied on account of the beneficial ownership by the Issuer of any Pledged Securities that secure the Notes.

(d)    The Issuer shall enforce all of its material rights and remedies under each Transaction Agreement. The Issuer will not enter into any agreement amending, modifying or terminating the Subscription Agreements without (i) 10 days' prior notice to each Rating Agency, (ii) 10 days' prior notice thereof to the Trustee, which notice shall specify the action proposed to be taken by the Issuer (and the Trustee shall promptly deliver a copy of such notice to each Securityholder), and (iii) the Rating Condition with respect to such amendment, modification or termination having been satisfied.

(e)    The Issuer shall, if any of the Securities remain outstanding or are expected to remain outstanding at the expiration of the term of the "Undertaking as to Tax Concessions" granted by the Governor in Council of the Cayman Islands pursuant to Section 6 of the Tax Concessions Law (1999 Revision) in connection with the Offering, seek a renewal of such concessions sufficiently in advance of such expiration so as to have the renewal concessions granted prior to the expiration of said original concessions.

## Section 7.6  Opinions as to Collateral.

On or before March 31 in each calendar year, commencing in 2007, the Issuer shall furnish to the Trustee and each Rating Agency an Opinion of Counsel stating that, in the opinion of such counsel, as of the date of such opinion, the Indenture creates in favor of the Trustee a perfected security interest in the Collateral.

## Section 7.7  Performance of Obligations.

(a)    The Issuers shall not take any action, and will not permit any action to be taken by others, that would release any Person from any of such Person's covenants or obligations under any instrument included in the

30775-00034 NY:1268831.8

Collateral, except in the case of enforcement action taken with respect to any Defaulted Security in accordance with the provisions hereof and as otherwise required hereby or pursuant to Section 7.7(d).

(b)     The Issuers may, with the prior written consent of a Majority of the Securities (except in the case of the Management Agreement, Collateral Administration Agreement, Administration Agreement and Preference Share Paying Agency Agreement, for which no such consent is required), contract with other Persons, including the Collateral Manager and the Bank, for the performance of actions and obligations to be performed by the Issuers hereunder by such Persons and the performance of the actions and other obligations with respect to the Collateral of the nature set forth in the Management Agreement by the Collateral Manager.  Notwithstanding any such arrangement, the Issuers shall remain liable for all such actions and obligations.  In the event of such contract, the performance of such actions and obligations by such Persons shall be deemed to be performance of such actions and obligations by the Issuers; and the Issuers will punctually perform, and use their best efforts to cause the Collateral Manager or such other Person to perform, all of their obligations and agreements contained in the Management Agreement or such other agreement.

(c)     The Issuers shall treat all acquisitions of Underlying Assets as "purchases" for tax, accounting and reporting purposes.

(d)     The Issuers may not enter into any amendment or waiver of or supplement to any Underlying Instrument included in the Collateral without the prior consent of a Majority of the Controlling Class, each Synthetic Security Counterparty and the Interest Rate Swap Counterparty materially and adversely affected thereby; provided that, notwithstanding anything in this Section 7.7(d) to the contrary, the Issuers may enter into any amendment or waiver of or supplement to any such Underlying Instrument:

(i)     if such amendment, supplement or waiver is required by the provisions of any Underlying Instrument or by applicable law (other than pursuant to an Underlying Instrument),

(ii)     if such amendment, supplement or waiver is necessary to cure any ambiguity, inconsistency or formal defect or omission in such Underlying Instrument,

(iii)     to the extent expressly permitted or authorized by any amendment of or supplement to this Indenture entered into in accordance with Section 8.1 or 8.2 (but subject to the conditions therein specified),

(iv)     to make any other change deemed necessary by the Issuer or the Collateral Manager (but only if, as of the date of any such proposed amendment, waiver or supplement, the Overcollateralization Tests are satisfied), or

(v)     to make any other change deemed necessary by the Issuer or the Collateral Manager (but only if (A) such proposed amendment, waiver or supplement does not effect a Specified Change and (B) such change does not materially adversely affect the interests of the Securityholders in the Collateral as determined by the Collateral Manager in good faith).

## Section 7.8  Negative Covenants.

(a)     The Issuer and the Co-Issuer, as the case may be, will not:

(i)     sell, assign, participate, transfer, exchange or otherwise dispose of, or pledge, mortgage, hypothecate or otherwise encumber (or permit such to occur or suffer such to exist), any part of the Collateral, except as expressly permitted by this Indenture;

(ii)     claim any credit on, make any deduction from, or dispute the enforceability of, the payment of the principal or interest (or any other amount) payable in respect of the Notes or payment of Excess Amounts in respect of the Preference Shares (other than amounts required to be paid, deducted or withheld in accordance with any applicable law or regulation of any governmental authority) or assert any

claim against any present or future Securityholder, by reason of the payment of any taxes levied or assessed upon any part of the Collateral;

(iii)    (A) incur or assume or guarantee any indebtedness, other than the Notes and this Indenture and the transactions contemplated hereby, (B) issue any additional class of debt securities, or (C) issue any additional shares other than additional Preference Shares;

(iv)    (A) permit the validity or effectiveness of this Indenture or any Grant hereunder to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to this Indenture or the Securities, except as may be expressly permitted hereby; (B) permit any lien, charge, adverse claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof, any interest therein or the proceeds thereof; or (C) take any action that would permit the lien of this Indenture not to constitute a valid first priority security interest in the Collateral;

(v)    use any of the proceeds from the issuance of the Securities (A) to extend "purpose credit" within the meaning given to such term in Regulation U or (B) to purchase or otherwise acquire any Margin Stock;

(vi)    amend the Management Agreement except pursuant to Section 7.17 and Article XV;

(vii)    dissolve or liquidate in whole or in part, except as permitted hereunder; provided that the Issuer shall take into account the interests of the Noteholders in determining whether or not to dissolve or liquidate as permitted hereunder;

(viii)    make or incur any capital expenditures, except as reasonably required to perform its functions in accordance with the terms of this Indenture or the Preference Share Documents;

(ix)    become liable in any way, whether directly or by assignment or as a guarantor or other surety, for the obligations of the lessee under any lease, hire any employees or pay any dividends to its shareholders other than the Preference Shareholders;

(x)    maintain any bank accounts other than the Accounts, the Preference Share Payment Account and the bank account in the Cayman Islands in which (inter alia) the proceeds of the issuance of the Ordinary Shares and the transaction fees paid to the Issuer for agreeing to issue the Notes will be kept;

(xi)    change its name or its type or jurisdiction of organization unless (A) it has previously delivered to the Trustee, the Noteholders, the Interest Rate Swap Counterparty, each Synthetic Security Counterparty, the Initial Investment Agreement Provider and the Rating Agencies written notice thereof and an Opinion of Counsel that such name change will not adversely affect the security interest hereunder of the Trustee and (B) the Rating Condition is satisfied;

(xii)    amend its constitutional documents unless the Rating Condition is satisfied;

(xiii)    have any subsidiaries other than any subsidiaries permitted pursuant to Section 7.4 and the last two sentences of the definition of Asset-Backed Security;

(xiv)    for so long as any of the Notes or the Preference Shares are Outstanding, register any transfer of any shares (other than the Preference Shares) of the Issuer to U.S. Persons;

(xv)    establish or maintain an office or fixed place of business in the United States or engage in any other activity that would cause it to be subject to U.S. Federal, state or local income or franchise tax;

30775-00034 NY:1268831.8

(xvi)    make any request or application, whether directly or through an agent, for the de-listing of any Class of Notes (prior to the Stated Maturity of such Class) listed on the Exchange;

(xvii)    fail to maintain at least one director who is Independent of the Collateral Manager and the Initial Purchaser; or

(xviii)    except for any agreements involving the purchase and sale of Asset-Backed Securities having customary purchase or sale terms and documented with customary trading documentation (but not excepting any Synthetic Security or the Interest Rate Swap Agreement), enter into any agreement, unless such agreement contains "non-petition" and "limited recourse" provisions or amend or waive any such provisions in any such agreement.

(b)    Neither the Issuer nor the Trustee shall sell, transfer, exchange or otherwise dispose of Collateral, or enter into or engage in any business with respect to any part of the Collateral except as expressly permitted or required by this Indenture and the Management Agreement.

(c)    The Co-Issuer will not invest any of its assets in "securities" (as such term is defined in the Investment Company Act), and will keep all of its assets in Cash.

(d)    For so long as any of the Notes are Outstanding, the Co-Issuer shall not transfer, and the Issuer shall not permit the Co-Issuer to issue, any capital stock of the Co-Issuer to any Person other than the Issuer.

(e)    The Issuer will not enter into any material new agreements (other than any Synthetic Security and replacement Interest Rate Swap Agreement or Additional Interest Rate Swap Agreement made pursuant to Article XVI) without the prior written consent of a Majority of the Notes and a Majority of the Preference Shares and will provide notice of all new agreements (other than any Synthetic Security and replacement Interest Rate Swap Agreement or Additional Interest Rate Swap Agreement) to the Holders of the Notes and the Preference Shares. The foregoing notwithstanding, the Issuer may agree to any new agreements; provided that (i) the Issuer, or the Collateral Manager on behalf of the Issuer, determines that such new agreements would not, upon or after becoming effective, adversely affect the rights or interests of any Class or Classes of Noteholders or the Preference Shareholders, (ii) the Issuer or the Collateral Manager on behalf of the Issuer gives not less than ten days' prior written notice to the Noteholders and the Preference Shareholders of such new agreements and (iii) the Rating Condition is satisfied.

(f)    Notwithstanding anything to the contrary contained herein, the Collateral Manager shall not cause the Issuer to purchase or acquire (whether as part of a Unit with an Underlying Asset, in exchange for an Underlying Asset or otherwise) any Prohibited Asset.

## Section 7.9   Statement as to Compliance.

On or before September 30 in each calendar year commencing in 2007, or immediately if there has been a Default in the fulfillment of an obligation under this Indenture, the Issuer shall deliver to the Trustee, each Securityholder making a written request therefor, the Irish Paying Agent, the Company Announcements Office and each Rating Agency an Officer's certificate stating, as to each signer thereof, that:

(a)    a review of the activities of the Issuer and of the Issuer's performance under this Indenture during the twelve-month period ending on December 31 of the previous year (or from the Closing Date until December 31, 2006, in the case of the first such Officer's certificate) has been made under such Officer's supervision; and

(b)    to the best of such Officer's knowledge, based on such review, the Issuer has fulfilled all of its obligations under this Indenture throughout the period, or, if there has been a Default in the fulfillment of any such obligation, specifying each such Default known to such Officer and the nature and status thereof, including actions undertaken to remedy the same.

30775-00034 NY:1268831.8

## Section 7.10 Consolidation of Issuers.

(a)        The Issuer shall not consolidate or merge with or into any other Person or transfer or convey all or substantially all of its assets to any Person, unless permitted by Cayman Islands law and unless:

(i)        the Issuer shall be the surviving entity, or the Person (if other than the Issuer) formed by such consolidation or into which the Issuer is merged or to which all or substantially all of the assets of the Issuer are transferred or conveyed shall be an exempted company incorporated with limited liability and existing under the laws of the Cayman Islands or such other jurisdiction outside the United States as may be approved by a Majority of each Class; provided that no such approval shall be required in connection with any such transaction undertaken solely to effect a change in the jurisdiction of organization pursuant to Section 7.4 (any such jurisdiction or any jurisdiction approved pursuant to the preceding clause, "Permitted Other Jurisdictions"), and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee and each Securityholder, the due and punctual payment of the principal of and interest on all Notes, the due and punctual payment of any amounts under the Interest Rate Swap Agreement, the due and punctual payment of any amounts under the Synthetic Securities and the due and punctual payment to the Preference Share Paying Agent of Excess Amounts in respect of the Preference Shares and the performance of every covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein;

(ii)        each Rating Agency shall have received written notification of any consolidation, merger, transfer or conveyance and the Rating Condition shall have been satisfied with respect to the consummation of such transaction;

(iii)        if the Issuer is not the surviving entity, the Person formed by such consolidation or into which the Issuer is merged or to which all or substantially all of the assets of the Issuer are transferred or conveyed shall have agreed with the Trustee (A) to observe the same legal requirements for the recognition of such formed or surviving entity as a legal entity separate and apart from any of its Affiliates as are applicable to the Issuer with respect to its Affiliates and (B) not to consolidate or merge with or into any other Person or transfer or convey the Collateral or all or substantially all of its assets to any other Person except in accordance with the provisions of this Section 7.10;

(iv)        if the Issuer is not the surviving entity, the Person formed by such consolidation or into which the Issuer is merged or to which all or substantially all of the assets of the Issuer are transferred or conveyed shall have delivered to the Trustee and each Rating Agency an Officer's certificate and an Opinion of Counsel each stating that such Person shall be duly organized, validly existing and (if applicable) in good standing in the jurisdiction in which such Person is organized; that such Person has sufficient power and authority to assume the obligations set forth in subclause (a)(i) above and to execute and deliver an indenture supplemental hereto for the purpose of assuming such obligations; that such Person has duly authorized the execution, delivery and performance of an indenture supplemental hereto for the purpose of assuming such obligations and that such supplemental indenture is a valid, legal and binding obligation of such Person, enforceable in accordance with its terms, subject only to bankruptcy, reorganization, insolvency, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law); that, immediately following the event which causes such Person to become the successor to the Issuer, (A) such Person has good and marketable title, free and clear of any lien, security interest or charge, other than the lien and security interest of this Indenture, to the Collateral; (B) the Trustee continues to have a perfected security interest in the Collateral securing all of the Notes; and (C) such Person has received an Opinion of Counsel to the effect that such Person will not be subject to net income tax or be treated as engaged in a trade or business within the United States for U.S. Federal income tax purposes, and such other matters as the Trustee or any Preference Shareholder may reasonably require;

(v)        immediately after giving effect to such transaction, no Default shall have occurred and be continuing;

99

(vi)    the Issuer shall have delivered to the Trustee, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and each Holder of a Preference Share an Officer's certificate and an Opinion of Counsel each stating that such consolidation, merger, transfer or conveyance and such supplemental indenture comply with this Section 7.10, that all conditions precedent in this Section 7.10 relating to such transaction have been complied with and that (A) no gain or loss will be recognized for United States Federal, Cayman Islands and the Permitted Other Jurisdiction, if any, income tax purposes by the Holders of the Securities or an Interest Rate Swap Counterparty, each Synthetic Security Counterparty as a result therefrom, (B) neither payments on the Underlying Assets nor the Issuer's or surviving entity's net income shall become subject to any income tax (or any increase in such tax) (whether imposed by withholding or otherwise) as a result therefrom, (C) no change in the characterization of the Notes as indebtedness for United States Federal income tax purposes will result therefrom and (D) neither the Collateral nor the surviving entity (if applicable) shall be subject to income taxes or other applicable taxes that would reduce in any manner the payments on the Securities or the amount of funds available therefor as a result therefrom;

(vii)    the Issuer shall have delivered to the Trustee, each Synthetic Security Counterparty and the Interest Rate Swap Counterparty an Opinion of Counsel stating that after giving effect to such transaction, neither of the Issuers will be required to register as an investment company under the Investment Company Act;

(viii)    after giving effect to such transaction, the outstanding ordinary share capital of the Issuer will not be beneficially owned within the meaning of the Investment Company Act by any U.S. Person; and

(ix)    if any of the Notes are listed on the Exchange, the Exchange has approved any succession resulting from a consolidation, merger or transfer or conveyance of the Issuer to any Person.

(b)    The Co-Issuer shall not consolidate or merge with or into any other Person or transfer or convey all or substantially all of its assets to any Person, unless:

(i)    the Co-Issuer shall be the surviving corporation, or the Person (if other than the Co-Issuer) formed by such consolidation or into which the Co-Issuer is merged or to which all or substantially all of the assets of the Co-Issuer are transferred or conveyed shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee, the due and punctual payment of the principal of and interest on all the Notes and the performance of every covenant of this Indenture on the part of the Co-Issuer to be performed or observed, all as provided herein;

(ii)    each Rating Agency shall have received written notification of any consolidation, merger, transfer or conveyance and the Rating Condition shall have been satisfied with respect to the consummation of such transaction;

(iii)    if the Co-Issuer is not the surviving corporation, the Person formed by such consolidation or into which the Co-Issuer is merged or to which all or substantially all of the assets of the Co-Issuer are transferred or conveyed shall have agreed with the Trustee (A) to observe the same legal requirements for the recognition of such formed or surviving corporation as a legal entity separate and apart from any of its Affiliates as are applicable to the Co-Issuer with respect to its Affiliates and (B) not to consolidate or merge with or into any other Person or transfer or convey all or substantially all of its assets to any other Person except in accordance with the provisions of this Section 7.10;

(iv)    if the Co-Issuer is not the surviving corporation, the Person formed by such consolidation or into which the Co-Issuer is merged or to which all or substantially all of the assets of the Co-Issuer are transferred or conveyed shall have delivered to the Trustee and each Rating Agency an Officer's certificate and an Opinion of Counsel each stating that such Person shall be duly organized, validly existing and (if applicable) in good standing in the jurisdiction in which such Person is organized; that such Person has sufficient power and authority to assume the obligations set forth in subclause (b)(i) above and to execute and deliver an indenture supplemental hereto for the purpose of assuming such obligations; that such

100

Person has duly authorized the execution, delivery and performance of an indenture supplemental hereto for the purpose of assuming such obligations and that such supplemental indenture is a valid, legal and binding obligation of such Person, enforceable in accordance with its terms, subject only to bankruptcy, reorganization, insolvency, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law); and such other matters as the Trustee or any Noteholder may reasonably require;

(v)    immediately after giving effect to such transaction, no Default shall have occurred and be continuing;

(vi)    the Co-Issuer shall have delivered to the Trustee an Officer's certificate and an Opinion of Counsel each stating that such consolidation, merger, conveyance or transfer and such supplemental indenture comply with this Section 7.10 and that all conditions precedent in this Section 7.10 provided for relating to such transaction have been complied with and that no adverse tax consequences will result therefrom to any Noteholder;

(vii)    after giving effect to such transaction, neither of the Issuers will be required to register as an investment company under the Investment Company Act;

(viii)    after giving effect to such transaction, the outstanding stock of the Co-Issuer will not be beneficially owned by any Person other than the Issuer; and

(ix)    if any of the Notes are listed on the Exchange, the Exchange has approved any succession resulting from a consolidation, merger or transfer or conveyance of the Co-Issuer to any Person.

### Section 7.11 Successor Substituted.

Upon any consolidation or merger, or transfer or conveyance of all or substantially all of the assets of the Issuer or the Co-Issuer, in accordance with Section 7.10, the Issuer shall notify each Rating Agency and the Person formed by or surviving such consolidation or merger (if other than the Issuer or the Co-Issuer), or the Person to which such transfer or conveyance is made, shall succeed to, and be substituted for, and may exercise every right and power of, and shall be bound by each obligation or covenant of, the Issuer or the Co-Issuer, as the case may be, under this Indenture with the same effect as if such Person had been named as the Issuer or the Co-Issuer, as the case may be, herein. In the event of any such consolidation, merger, transfer or conveyance, the Person named as the "Issuer" or the "Co-Issuer" in the first paragraph of this Indenture or any successor which shall theretofore have become such in the manner prescribed in this Article VII may be dissolved, wound-up and liquidated at any time thereafter, and such Person thereafter shall be released from its liabilities as obligor and maker on all the Notes and from its obligations under this Indenture.

### Section 7.12 No Other Business.

The Issuer shall not engage in any business or activity other than issuing and selling the Notes pursuant to this Indenture, issuing and selling the Preference Shares pursuant to the Preference Share Documents and acquiring, owning, holding and pledging and selling Underlying Assets and other Collateral described in clauses (a) through (g) of the first sentence of the Granting Clauses, and the Co-Issuer shall not engage in any business or activity other than issuing and selling the Notes pursuant to this Indenture and, with respect to the Issuer and the Co-Issuer, such other activities which are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith. The Issuer will not amend the Issuer Charter, and the Co-Issuer will not amend its Certificate of Incorporation or By-Laws, unless such amendment would satisfy the Rating Condition.

101

**Section 7.13 <u>Notice of Changes in Ratings; Annual Rating Review</u>.**

(a)     The Issuers shall promptly notify the Trustee in writing (which shall promptly notify the Securityholders) if at any time they become aware that the rating of any Class of Notes has been, or it is known that it will be, changed or withdrawn.

(b)     With respect to any Underlying Asset that has a private or confidential rating from Moody's or Standard & Poor's, the Issuers shall obtain and pay for an annual review of each such rating.

**Section 7.14 <u>Reporting</u>.**

At any time when the Issuers are not subject to Section 13 or 15(d) of the Exchange Act and are not exempt from reporting pursuant to Rule 12g3-2(b) under the Exchange Act, upon the request of a Holder or Beneficial Owner of a Security, the Issuers shall promptly furnish or cause to be furnished Rule 144A Information to such Holder or Beneficial Owner, to a prospective purchaser of such Security designated by such Holder or Beneficial Owner or to the Trustee or the Irish Paying Agent for delivery to such Holder or Beneficial Owner or a prospective purchaser designated by such Holder or Beneficial Owner, as the case may be, in order to permit compliance by such Holder or Beneficial Owner with Rule 144A under the Securities Act in connection with the resale of such Security by such Holder or Beneficial Owner.

**Section 7.15 <u>Calculation Agent</u>.**

(a)     The Issuers hereby agree that for so long as any of the Notes remain Outstanding, the Issuer will at all times cause there to be an agent appointed to calculate LIBOR in respect of each Interest Period in accordance with the terms of Schedule B (the "Calculation Agent"), which agent shall be a financial institution, subject to supervision or examination by Federal or state authority, having a rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and "BBB+" by Fitch and having an office within the United States. The Issuers hereby appoint the Trustee as Calculation Agent for purposes of determining LIBOR for each Interest Period. The Calculation Agent may be removed by the Issuers at any time. If the Calculation Agent is unable or unwilling to act as such or is removed by the Issuers, the Issuers will promptly appoint as a replacement Calculation Agent a leading bank which is engaged in transactions in Dollar deposits in the international Eurodollar market and which does not control or is not controlled by or under common control with the Issuers or any of their Affiliates. The Calculation Agent may not resign its duties without a successor having been duly appointed.

(b)     The Calculation Agent shall, as soon as possible after 11:00 a.m. (London time) on each LIBOR Determination Date, but in no event later than 11:00 a.m. (London time) on the Business Day immediately following each LIBOR Determination Date, calculate the Note Interest Rate for each Class of Notes for the related Interest Period and the amount of interest for the related Interest Period payable in respect of each $1,000 in principal amount of each Class of Notes (in each case rounded to the nearest cent, with half a cent being rounded upward) on the related Distribution Date and will communicate such rates and amounts and the related Distribution Date to the Issuers, the Trustee, each Paying Agent, the Depositary, Euroclear, Clearstream and (in the case of any Class of Notes listed on the Exchange and so long as the rules of the Exchange shall so require) the Exchange. The Calculation Agent will also specify to the Issuers the quotations upon which the Note Interest Rate for each Class of Notes is based, and in any event the Calculation Agent shall notify the Issuers before 5:00 p.m. (Pacific time) on each LIBOR Determination Date that either: (i) it has determined or is in the process of determining the Note Interest Rate for each Class of Notes or (ii) it has not determined and is not in the process of determining such Note Interest Rates, together with their respective reasons therefor. A determination of the Note Interest Rate for each Class of Notes (in the absence of manifest error) shall be final and binding upon all parties.

**Section 7.16 <u>Listing</u>.**

(a)     The Issuer will use its best efforts to obtain and maintain the listing of the Class A Notes, Class B Notes, Class C Notes, Class D Notes and Class E Notes on the Exchange.

(b)    The Issuer shall notify the Company Announcements Office upon becoming aware of any major new developments which are not public knowledge and which may (i) by virtue of their effect on its assets and liabilities or financial position or on the general course of its business, lead to substantial movements in the price of the Notes listed on the Exchange; or (ii) significantly affect the Issuer's ability to meet its commitments.

(c)    The Issuer shall, in each calendar year commencing in 2006, request from the Exchange a waiver of the Exchange's requirement to publish annual reports and accounts.

(d)    The Issuer shall submit to the Exchange draft copies of any proposed amendments to the Issuer Charter which would affect the rights of the Holders of the Notes listed on the Exchange.

(e)    The Issuer shall pay the annual fee for listing the applicable Notes on the Exchange, if any.

(f)    All notices, documents, reports and other announcements delivered to the Company Announcements Office shall be in the English language.

### Section 7.17 Amendment of Certain Documents.

Except as otherwise provided in Section 15.4, prior to entering into any amendment or other modification of, or consenting to or directing any assignment or termination of, the Management Agreement, any Synthetic Security or an Interest Rate Swap Agreement (except as provided in the Interest Rate Swap Agreement), the Rating Condition with respect to such amendment, modification, assignment or termination shall have been satisfied. Prior to entering into any waiver in respect of the Management Agreement, any Synthetic Security or an Interest Rate Swap Agreement, the Issuer shall provide each Rating Agency, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Trustee with written notice thereof. The Issuer shall not amend or modify, or consent to or direct any assignment or termination of the Administration Agreement, without the prior written consent of the Holders of at least sixty-six and two-thirds percent (66 ⅔) of the Preference Shares, each Synthetic Security Counterparty (if such Synthetic Security Counterparty would be materially and adversely affected thereby) and the Interest Rate Swap Counterparty (if such Interest Rate Swap Counterparty would be materially and adversely affected thereby), or the Management Agreement, without complying with Section 15.4.

### Section 7.18 German Foreign Investment Act.

If any Securityholder notifies the Issuer that it is subject to the German Foreign Investment Act, the Issuer will appoint, and maintain for so long as such Securityholder holds any Securities, a tax representative with respect to the Securities pursuant to Article 18, paragraph 2 of the German Foreign Investment Act, as amended from time to time, and make available to the German tax authorities the information required under such Act for tax purposes.

### Section 7.19 Compliance With Laws.

The Issuer will comply in all material respects with applicable laws, rules, regulations, writs, judgments, injunctions, decrees, awards and orders with respect to it, its business and its properties.

### Section 7.20 Maintenance of Books and Records.

The Issuer shall maintain and implement administrative and operating procedures reasonably necessary in the performance of its obligations hereunder and the Issuer shall keep and maintain at all times, or cause to be kept and maintained at all times in its Cayman Islands principal office, all documents, books, records, accounts and other information customarily maintained for the performance of its obligations hereunder.

### Section 7.21 [Reserved.]

### Section 7.22 DTC.

(a)      The Issuer shall direct DTC to include the "3c7" marker in the DTC 20-character security descriptor and the 48-character additional descriptor for the Notes in order to indicate that sales are limited to Qualified Purchasers.

(b)      The Issuer shall direct DTC to cause each physical DTC delivery order ticket delivered by DTC to purchasers to contain the 20-character security descriptor and will direct DTC to cause each DTC delivery order ticket delivered by DTC to purchasers in electronic form to contain the "3c7" indicator and the related user manual for participants.

(c)      On the Closing Date, the Issuer shall instruct DTC to send an "Important Notice" to all DTC participants in connection with the offering of the Notes. The "Important Notice" will notify DTC's participants that the Notes are Section 3(c)(7) securities.

(d)      The Issuer shall request that DTC include the Notes in DTC's "Reference Directory" of Section 3(c)(7) offerings.

(e)      The Issuer shall from time to time (upon the request of the Trustee) request DTC to deliver to the Issuer a list of all DTC participants holding an interest in the Notes.

(f)      The Issuer shall from time to time at its expense request all third-party vendors (including Bloomberg) to include on screens maintained by such vendors appropriate legends regarding the Rule 144A and Section 3(c)(7) restrictions on the Notes.

(g)      The Issuer shall cause each "CUSIP" number obtained for a Note to have an attached "fixed field" that contains "3c7" and "144A" indicators.

### Section 7.23      Representations Relating to Security Interests in the Collateral.

(a)      The Issuer hereby represents that, as of the Closing Date (which representations shall survive the execution of this Indenture and shall be deemed to be repeated on each date on which the Collateral is delivered to the Trustee as if made at the time of such delivery and which representations may not be waived unless the Rating Condition with respect to Standard & Poor's has been satisfied), with respect to the Collateral:

(i)      The Issuer owns and has good and marketable title to the Collateral free and clear of any lien, claim or encumbrance of any Person, other than such as are created under, or expressly permitted by, this Indenture;

(ii)      Other than the security interest granted to the Trustee pursuant to this Indenture, except as expressly permitted by this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Collateral. The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Collateral other than any financing statement relating to the security interest granted to the Trustee hereunder or that has been terminated; the Issuer is not aware of any judgment, Pension Benefit Guaranty Corp. liens, or tax lien filings against the Issuer;

(iii)      The Collateral is comprised of "instruments" (as defined in the applicable Uniform Commercial Code), "general intangibles" (as defined in the applicable Uniform Commercial Code), "security entitlements" (as defined in the applicable Uniform Commercial Code) or "securities accounts" (as defined in the applicable Uniform Commercial Code).

104

(iv)    All Accounts constitute securities accounts (as defined in the applicable Uniform Commercial Code).

(v)    This Indenture creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code) in the Collateral in favor of the Trustee, for the benefit and security of the Secured Parties, which security interest is prior to all other liens (except as expressly permitted otherwise in this Indenture), and is enforceable as such against creditors of and purchasers from the Issuer.

(vi)    The Issuer has received all consents and approvals required by the terms of each such item of Collateral to the grant hereunder to the Trustee of its interest and rights in such item of Collateral.

(b)    The Issuer hereby represents and warrants that, as of the Closing Date (which representations and warranties shall survive the execution of this Indenture and be deemed to be repeated on each date on which the Collateral is delivered as if made at and as that time and which representations and warranties may not be waived unless the Rating Condition with respect to Standard & Poor's has been satisfied), with respect to Collateral that constitute "instruments" (as defined in the applicable Uniform Commercial Code):

(i)    (A) All original executed copies of each promissory note or mortgage note that constitutes or evidences such instruments have been delivered to the Trustee and (B) none of the promissory notes or the mortgage notes that constitute or evidence the instruments has any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Trustee.

(c)    The Issuer hereby represents and warrants that, as of the Closing Date (which representations and warranties shall survive the execution of this Indenture and be deemed to be repeated on each date on which the Collateral is delivered as if made at and as that time and which representations and warranties may not be waived unless the Rating Condition with respect to Standard & Poor's has been satisfied), with respect to Collateral that constitute "security entitlements" (as defined in the applicable Uniform Commercial Code):

(i)    All of such security entitlements have been and will have been credited to one of the Accounts. The Securities Intermediary for each Account has agreed to treat all assets credited to such Account as financial assets within the meaning of the applicable Uniform Commercial Code.

(ii)    The Issuer has taken all steps necessary to cause the Securities Intermediary to identify in its records the Trustee as the Person having a security entitlement against the Securities Intermediary in each of the Accounts.

(iii)    The Accounts are not in the name of any Person other than the Trustee. The Issuer has not consented to the Securities Intermediary of any Account to comply with the entitlement order of any Person other than the Trustee.

(d)    The Issuer hereby represents and warrants that, as of the Closing Date (which representations and warranties shall survive the execution of this Indenture and be deemed to be repeated on each date of which the Collateral is delivered as if made at and as that time and which representations and warranties may not be amended or waived unless the Rating Condition with respect to Standard & Poor's has been satisfied), with respect to Collateral that constitutes "general intangibles" (as defined in the applicable Uniform Commercial Code):

(i)    The Issuer has caused or will have caused, within ten days after the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in such Collateral granted hereunder to the Trustee for the benefit and security of the Secured Parties.

(d)    The Trustee shall provide notice to the Rating Agencies if any of the representations set forth in this Section 7.23 have been amended or waived.

30775-00034 NY:1268831.8

## ARTICLE VIII

## SUPPLEMENTAL INDENTURES

### Section 8.1  Supplemental Indentures Without Consent of Securityholders.

Without the consent of the Holders of any Securities, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty or the Initial Investment Agreement Provider, the Issuers, when authorized by Board Resolutions, and the Trustee, at any time and from time to time subject to the requirement provided below in this Section 8.1 with respect to the ratings of the Notes and subject to Section 8.3, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(a)     to evidence the succession of another Person to the Issuer or the Co-Issuer and the assumption by any such successor Person of the covenants of the Issuer or the Co-Issuer herein and in the Notes pursuant to Section 7.4, 7.10 or 7.11 or (subject to Section 7.8(a)(xi)) to change the name of the Issuer or the Co-Issuer;

(b)     to add to the covenants of the Issuers or the Trustee for the benefit of the Holders of all of the Securities or to surrender any right or power herein conferred upon the Issuers;

(c)     to convey, transfer, assign, mortgage or pledge any property to or with the Trustee;

(d)     to evidence and provide for the acceptance of appointment hereunder by a successor trustee, collateral manager, listing agent, calculation agent, custodian, securities intermediary, note registrar, paying agent and/or collateral administrator and the compensation thereof and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one Trustee, pursuant to the requirements of Sections 6.10, 6.11, 6.12 and 6.13;

(e)     to correct or amplify the description of any property at any time subject to the lien of this Indenture, or to better assure, convey and confirm unto the Trustee any property subject or required to be subjected to the lien of this Indenture (including any and all actions necessary or desirable as a result of changes in law or regulations) or to subject to the lien of this Indenture any additional property;

(f)     to make administrative and other non-material changes as the Issuer deems appropriate;

(g)     to obtain ratings on one or more Classes of the Notes from any rating agency;

(h)     with the written consent of the Collateral Manager, to modify the restrictions on and procedures for resale and other transfer of the Notes in accordance with any change in any applicable law or regulation (or the interpretation thereof) or to enable the Issuers to rely upon any less restrictive exemption from registration under the Securities Act or the Investment Company Act or to remove restrictions on resale and transfer to the extent not required thereunder;

(i)     with the written consent of the Collateral Manager, to correct any inconsistency, defect or ambiguity in this Indenture;

(j)     with the written consent of the Collateral Manager, modify the restrictions on and procedures for resales and other transaction of the Notes to reflect any changes in applicable law or regulation (or the interpretation thereof) or in accordance with the USA PATRIOT Act or other similar applicable laws or regulations to enable the Issuers to rely upon any less restrictive exemption from registration under the Securities Act or the Investment Company Act or to remove restrictions on resale and transfer to the extent not required thereunder;

(k)     avoid the imposition of tax on the net income of the Issuer (or to reduce the amount of such tax payable by the Issuer) or of withholding tax on any payment to the Issuer, or prevent the

106

Noteholders, the Preference Shareholders or the Trustee from being subject to withholding or other taxes, fees or assessments, or prevent the Issuer from being treated as engaged in a United States trade or business for U.S. federal income tax purposes or otherwise subject to U.S. federal, state, local or foreign income or franchise tax on a net income tax basis, or avoid the Issuer being required to register as an investment company under the Investment Company Act (or to reflect any change permitted by Section 7.4 to avoid the occurrence of a Tax Event or the existence of a Tax Materiality Condition); provided that such action will not cause the Noteholders to be adversely affected to any material extent by any change to the timing, character or source of the income from the Note;

(l)    with the prior written consent of the Collateral Manager, to avoid the consolidation of the Issuer with the Collateral Manager on the financial statements of the Collateral Manager;

(m)    to accommodate the issuance of any Class of Notes as Definitive Notes;

(n)    if one hundred percent (100%) of the Holders of the Preference Shares request in writing to the Issuer and the Trustee, to accommodate the issuance of additional Preference Shares with terms identical to those of the existing Preference Shares;

(o)    to modify the Auction Procedures, with the written consent of the Collateral Manager; and

(p)    to correct any manifest error in any provision hereof upon receipt by the Trustee of written direction from the Issuers (as to which the Trustee may rely) describing in reasonable detail such error and the modification necessary to correct such error.

The Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations which may be therein contained, but the Trustee shall not be obligated to enter into any such supplemental indenture which affects the Trustee's own rights, duties, liabilities or indemnities under this Indenture or otherwise, except to the extent required by law.

Subject to the last sentence of this paragraph, the Trustee shall not enter into any such supplemental indenture if, as a result of such supplemental indenture, the interests of any Noteholder or any Preference Shareholder would be materially and adversely affected thereby, or the interests of the Interest Rate Swap Counterparty would be adversely affected thereby, or the interests of each Synthetic Security Counterparty would be adversely affected thereby, or the interests of the Initial Investment Agreement Provider would be adversely affected thereby. Unless, prior to the Trustee's execution of such supplemental indenture, the Trustee is notified by a Majority of any Class of Notes that such Class will be materially and adversely affected, or by a Majority-in-Interest of Preference Shareholders that the Preference Shareholders will be materially and adversely affected, or by the Interest Rate Swap Counterparty that such Interest Rate Swap Counterparty will be adversely affected, or by each Synthetic Security Counterparty that such Synthetic Security Counterparty will be adversely affected, or by the Initial Investment Agreement Provider that such Initial Investment Agreement Provider will be adversely affected, the Trustee shall be entitled to rely upon an Opinion of Counsel provided at the expense of the party requesting such supplemental indenture as to whether the interests of any Noteholder or any Preference Shareholder would be materially and adversely affected, or the Interest Rate Swap Counterparty would be adversely affected, or each Synthetic Security Counterparty would be adversely affected, or the Initial Investment Agreement Provider would be adversely affected, by any such supplemental indenture (after giving notice of such change to the Securityholders, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Initial Investment Agreement Provider). Pursuant to Section 1 of the Collateral Management Agreement, the Issuer agreed that it will not permit any amendment, supplement or other modification to the Indenture that changes the rights, obligations, liabilities or duties of the Collateral Manager to become effective unless the Collateral Manager has been given at least 10 Business Days' prior written notice and a copy of such amendment, supplement or other modification and has consented thereto in writing. At the cost of the Issuer, the Trustee shall provide to the Noteholders, the Preference Shareholders, the Collateral Manager, the Exchange (for as long as any Class of Notes is listed thereon), each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Initial Investment Agreement Provider a copy of such proposed supplemental indenture (or a notice containing a summary

thereof) at least 10 days prior to the execution thereof by the Trustee and a copy of the executed supplemental indenture (or a summary thereof) after its execution. At the cost of the Issuer, the Trustee shall provide to each Rating Agency a copy of such proposed supplemental indenture at least 15 Business Days prior to the execution thereof by the Trustee, and, for so long as any Notes are Outstanding, request from Standard & Poor's that the Rating Condition with respect to such supplemental indenture be satisfied, and, as soon as practicable after the execution by the Trustee and the Issuers of any such supplemental indenture, provide to each Rating Agency a copy of the executed supplemental indenture. The Trustee shall not enter into any such supplemental indenture if, with respect to such supplemental indenture, the Rating Condition has not been satisfied; provided that the Trustee may, with the consent of the Holders of one hundred percent (100%) of the Aggregate Outstanding Amount of the Notes of each Class with respect to which the Rating Condition has not been satisfied, enter into any such supplemental indenture notwithstanding any such reduction or withdrawal of the ratings of such Class of Notes.

### Section 8.2    Supplemental Indentures with Consent of Securityholders.

With the consent of the Holders of not less than a Majority of each Class materially and adversely affected thereby (by Act of said Holders delivered to the Trustee and the Issuers), the consent of all of the Preference Shareholders if materially and adversely affected thereby (by Act of said Preference Shareholders delivered to the Trustee and the Issuers), the consent of each Synthetic Security Counterparty adversely affected thereby (delivered by the Synthetic Security Counterparty to the Trustee and the Issuers), the consent of the Interest Rate Swap Counterparty adversely affected thereby (delivered by the Interest Rate Swap Counterparty to the Trustee and the Issuers) and the consent of the Initial Investment Agreement Provider adversely affected thereby (delivered by the Initial Investment Agreement Provider to the Trustee and the Issuer), the Trustee and Issuers may, subject to Section 8.3, enter into one or more indentures supplemental hereto to add any provisions to, or change in any manner or eliminate any of the provisions of, this Indenture or modify in any manner the rights of the Holders of the Notes of such Class, the Preference Shareholders, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty or the Initial Investment Agreement Provider, as the case may be, under this Indenture; provided that, notwithstanding anything in this Indenture to the contrary, no such supplemental indenture shall, without the consent of each Holder of each Outstanding Note of each Class affected thereby and the consent of each Preference Shareholder if the Preference Shares are affected thereby:

(a)    change the Stated Maturity of any Notes or the Scheduled Preference Share Redemption Date, as the case may be, or the due date of any installment of interest on any Note or distribution of Excess Interest in respect of a Preference Share, reduce the principal amount of any Note or the Note Interest Rate thereon or the Redemption Price with respect to any Note or Preference Share, or change the earliest date on which any Note or Preference Share may be redeemed or the amount of Excess Interest or Excess Principal Proceeds payable in respect of a Preference Share, change the provisions of this Indenture relating to the application of proceeds of any Collateral to the payment of principal of or interest on Notes or the payment of Excess Amounts in respect of the Preference Shares or change any place where, or the coin or currency in which, any Note or any Preference Share, or the principal thereof or interest thereon or any Excess Amount in respect thereof, respectively, is payable, or impair the right to institute suit for the enforcement of any such payment on or after the Stated Maturity thereof or the Scheduled Preference Share Redemption Date, as the case may be (or, in the case of redemption, on or after the applicable Redemption Date);

(b)    reduce the percentage of the Aggregate Outstanding Amount of Holders of Notes of each Class or the percentage of Preference Shares whose consent is required for the authorization of any such supplemental indenture or for any waiver of compliance with applicable provisions of this Indenture or certain Defaults hereunder or their consequences provided for in this Indenture;

(c)    impair or adversely affect the Collateral except as otherwise expressly permitted in this Indenture;

(d)    permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Collateral or terminate such lien on any property at any time

30775-00034 NY:1268831.8

subject hereto (other than in connection with the sale thereof in accordance with this Indenture) or deprive the Holder of any Note of the security afforded by the lien of this Indenture;

(e)    reduce the percentage of the Aggregate Outstanding Amount of Holders of Notes of each Class whose consent is required to request the Trustee to preserve the Collateral or rescind the Trustee's election to preserve the Collateral pursuant to Section 5.5 or to sell or liquidate the Collateral pursuant to Section 5.4 or 5.5;

(f)    modify any of the provisions of this Section 8.2, except to increase the percentage of Outstanding Notes (or percentage of Preference Shares) whose Holders' consent is required for any such action or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Security affected thereby;

(g)    modify the definition of the term "Outstanding," Section 11.1 or Section 13.1;

(h)    change the permitted minimum denominations of any Class of Notes or the minimum number of Preference Shares; or

(i)    modify any of the provisions of this Indenture in such a manner as to affect the calculation of interest on or principal of any Note or the calculation of the amount of any Excess Amount with respect to any Preference Share on any Distribution Date or to affect the rights of the Holders of Notes or Preference Shares to the benefit of any provisions for the redemption of such Notes or Preference Shares contained herein;

*provided further* that no such supplemental indenture shall modify the rights of the Holders of the Preference Shares without the written consent of each Holder of Preference Shares.

Not later than 15 Business Days prior to the execution of any proposed supplemental indenture pursuant to this Section 8.2, the Trustee, at the expense of the Issuers shall mail to the Securityholders, the Interest Rate Swap Counterparty, each Synthetic Security Counterparty, the Initial Investment Agreement Provider, the Collateral Manager and each Rating Agency a copy of such supplemental indenture (or a description of the substance thereof) and shall request that the Rating Condition with respect to such supplemental indenture be satisfied. If any Class of Notes is then rated by any Rating Agency, the Trustee shall not enter into any such supplemental indenture if, as a result of such supplemental indenture, the Rating Condition has not been satisfied with respect to such supplemental indenture, unless the Holders of one hundred percent (100%) of the Aggregate Outstanding Amount of the Notes of each Class with respect to which the Rating Condition has not been satisfied have consented to such supplemental indenture. Unless notified by a Majority of any Class of Notes that such Class will be materially and adversely affected, or by a Majority-in-Interest of Preference Shareholders that the Preference Shares will be materially and adversely affected, or by each Synthetic Security Counterparty that such Synthetic Security Counterparty will be adversely affected, or by the Interest Rate Swap Counterparty that such Interest Rate Swap Counterparty will be adversely affected, or by the Initial Investment Agreement Provider that such Initial Investment Agreement Provider will be adversely affected, prior to the Trustee's execution of such supplemental indenture, the Trustee shall be entitled to rely upon an Opinion of Counsel provided at the expense of the party requesting such supplemental indenture as to whether the interests of any Securityholder would be materially and adversely affected, or each Synthetic Security Counterparty would be adversely affected, or the Interest Rate Swap Counterparty would be adversely affected, or the Initial Investment Agreement Provider would be adversely affected, by any such supplemental indenture. Such determination shall be conclusive and binding on all present and future Securityholders, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Initial Investment Agreement Provider. The Trustee shall not be liable for any such determination made in good faith and in reliance in good faith upon an Opinion of Counsel delivered to the Trustee as described in Section 8.3.

It shall not be necessary for any Act of Securityholders under this Section 8.2 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

30775-00034 NY:1268831.8

Promptly after the execution by the Issuers and the Trustee of any supplemental indenture pursuant to this Section 8.2, the Trustee, at the expense of the Issuers, shall mail to the Holders of the Securities, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty, the Initial Investment Agreement Provider, the Collateral Manager and each Rating Agency a copy (or summary) thereof. Any failure of the Trustee to publish or mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

### Section 8.3    Execution of Supplemental Indentures.

In executing or accepting the additional trusts created by any supplemental indenture permitted by this Article VIII or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Sections 6.1 and 6.3) shall be fully protected in relying in good faith upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture and that all conditions precedent thereto have been complied with. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties or indemnities under this Indenture or otherwise. The Trustee shall forward any proposed supplemental indenture to the Collateral Manager and the Trustee shall not enter into any such supplemental indenture (including a supplemental indenture entered into pursuant to Section 8.1 or 8.2) without the prior written consent of the Collateral Manager, if such supplemental indenture adversely affects the Collateral Manager (as determined by the Collateral Manager in its reasonable judgment and so certified in writing to the Trustee by the Collateral Manager) in any respect or changes the rights or obligations of the Collateral Manager in any respect.

### Section 8.4    Effect of Supplemental Indentures.

Upon the execution of any supplemental indenture under this Article VIII, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Securities theretofore and thereafter authenticated and delivered hereunder shall be bound thereby.

### Section 8.5    Reference in Notes to Supplemental Indentures.

Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article VIII may, and if required by the Trustee shall, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Issuers shall so determine, new Notes, so modified as to conform in the opinion of the Trustee and the Issuers to any such supplemental indenture, may be prepared and executed by the Issuers and authenticated and delivered by the Trustee in exchange for Outstanding Notes.

### ARTICLE IX

### REDEMPTION OF SECURITIES

### Section 9.1    Clean-Up Call Redemption.

At the direction of the Collateral Manager, the Notes will be subject to redemption by the Issuer, in whole but not in part (a "Clean-Up Call Redemption"), at the Redemption Price, on any Distribution Date on which the Aggregate Outstanding Amount of the Notes is less than or equal to ten percent (10%) of the aggregate principal amount of the Notes as of the Closing Date. Any such redemption may only be effected on a Distribution Date and only from (a) the Disposition Proceeds and (b) the Balance of the Cash and Eligible Investments in the Accounts (other than the Interest Rate Swap Counterparty Collateral Account and the Synthetic Security Issuer Account).

Any Clean-Up Call Redemption is subject to (i) the purchase of the Collateral (other than the Cash and Eligible Investments referred to in clause (b) of this sentence) by the Collateral Manager or any of its Affiliates from the Issuer, on the scheduled Redemption Date, for a purchase price in Cash at least equal to (a) the Redemption Amount minus (b) the Balance of the Cash and Eligible Investments in the Accounts (other than that in the Interest Rate Swap Counterparty Collateral Accounts and the Synthetic Security Issuer Accounts, but including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement) and (ii) the receipt by the

110

Trustee from the Collateral Manager, prior to such purchase, of certification from the Collateral Manager that the sum so received satisfies clause (i). Upon receipt by the Trustee of the certification referred to in the preceding sentence, the Trustee (pursuant to written direction from the Issuer) and the Issuer shall take all actions necessary to sell, assign and transfer the Collateral to the Collateral Manager upon payment in immediately available funds of the Redemption Price. The Trustee shall deposit such payment into the Collection Accounts and apply the funds therein in accordance with the Priority of Payments on such Redemption Date.

If the Collateral Manager so requests, the Trustee and the Issuer will enter into a Bailee Letter with the Collateral Manager and a bank selected by the Collateral Manager with the approval of the Issuer (which bank has been assigned ratings at least equal to those required by the Successor Trustee Ratings Requirement) and will deliver the Underlying Assets pursuant thereto prior to the closing on the disposition of the Underlying Assets and accept payment of the purchase price pursuant thereto. If such Redemption Price is not paid in full in immediately available funds on the Redemption Date, the Trustee shall decline to consummate the sale and shall give notice (in accordance with Section 9.5) that the Clean-Up Call Redemption will not occur.

Any direction of the Collateral Manager requiring a Clean-Up Call Redemption shall be given in writing to the Issuer, with a copy to the Trustee and Standard & Poor's, at least ten Business Days prior to the relevant Distribution Date. The Issuer shall, upon receipt from the Collateral Manager of a direction in writing to effect a Clean-Up Call Redemption, set the Redemption Date and the Record Date for any redemption pursuant to this Section and give written notice thereof to the Trustee pursuant to Section 9.5 hereof.

### Section 9.2    Tax Redemption.

The Notes will be subject to redemption (a "Tax Redemption"), in whole but not in part, by the Issuer at the direction in writing of a Majority-in-Interest of Preference Shareholders. Any such redemption may only be effected on a Distribution Date at the applicable Redemption Price and only from (a) the Disposition Proceeds and (b) the Balance of the Cash and Eligible Investments in the Accounts (other than that in the Interest Rate Swap Counterparty Collateral Accounts and the Synthetic Security Issuer Accounts). No Tax Redemption may be effected, however, unless (i) all such Disposition Proceeds (including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement) under clause (a) above are used, in whole or in part, to make such Tax Redemption, (ii) funds under clauses (a) and (b) above are at least equal to the Redemption Amount, (iii) a Tax Event shall have occurred and (iv) the Tax Materiality Condition is satisfied.

Any Tax Redemption is subject to (i) the disposition of the Collateral (other than the Cash and Eligible Investments referred to in clause (b) of this sentence) arranged by the Collateral Manager, on the scheduled Redemption Date, for a sale price in Cash at least equal to (a) the Redemption Amount minus (b) the Balance of the Cash and Eligible Investments in the Accounts (other than that in the Interest Rate Swap Counterparty Collateral Accounts and the Synthetic Security Issuer Accounts, but including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement) and (ii) the receipt by the Trustee from the Collateral Manager of certification from the Collateral Manager that the sum so received from the purchaser satisfies clause (i). Upon receipt by the Trustee of the certification referred to in the preceding sentence, the Issuer shall take all actions necessary to sell, assign and transfer the Collateral to the prospective purchaser upon payment in immediately available funds of the sum referred to above and the Trustee shall release the Collateral from the lien of this Indenture. The Trustee shall deposit such payment into the Collection Accounts. The Collateral Manager or an Affiliate thereof may be the purchaser of the Collateral.

If the purchaser of Underlying Assets so requests, the Trustee and the Issuer will enter into a Bailee Letter with such purchaser and a bank selected by the purchaser with the approval of the Issuer (which bank has been assigned ratings at least equal to those required by the Successor Trustee Ratings Requirement, as certified to the Trustee) and will deliver the applicable Underlying Assets pursuant thereto prior to the closing on the disposition of the such Underlying Assets and accept payment of the purchase price pursuant thereto. If the agreed price is not paid by such purchaser in full in immediately available funds by the fifth Business Day immediately preceding the Redemption Date, the Trustee shall decline to consummate the sale and shall give notice (in accordance with Section 9.5) that the Tax Redemption will not occur.

111

Any direction from the Preference Shareholders to effect a Tax Redemption shall be given in writing to the Issuer, with copies to the Trustee and the Collateral Manager, at least ten Business Days prior to the relevant Distribution Date. The Issuer, upon receipt of the direction from the Preference Shareholders, shall set the Record Date for the redemption pursuant to this Section and give written notice thereof to the Trustee pursuant to Section 9.5 hereof.

### Section 9.3    Auction Call Redemption.

(a)    In accordance with the procedures set forth in Schedule G (the "Auction Procedures"), the Auction Agent shall, at the expense of the Issuer, conduct an auction (an "Auction") of the Underlying Assets if, on or prior to the Distribution Date occurring in August 2012, the Notes have not been redeemed in full and the holders of the Preference Shares have not previously directed the Issuer to redeem the Notes pursuant to Section 9.4. The Auction shall be conducted not later than seven (7) Business Days prior to, but not earlier than ten (10) Business Days prior to (1) the Distribution Date occurring in August 2012 (the "First Auction Call Date"), and (2) if the Notes are not redeemed in full on the prior Distribution Date, each subsequent Distribution Date occurring on or closest to any six-month anniversary of the First Auction Call Date until the Notes have been redeemed in full (each such date, an "Auction Date"). Any of the Collateral Manager (if it is not the Auction Agent), the Initial Purchaser, any Preference Shareholder, the Trustee or their respective Affiliates may, but shall not be required to, bid at the Auction. The Issuer shall dispose of and transfer the Underlying Assets (which may be divided into up to eight Subpools) to the highest bidder therefor identified by the Auction Agent (or to the highest bidder for each Subpool) identified by the Auction Agent at the Auction and the Trustee shall, pursuant to an Issuer Order in accordance with Section 10.9, release the Collateral from the lien of this Indenture provided that:

(i)    the Auction has been conducted in accordance with the Auction Procedures;

(ii)    the Auction Agent has received bids for the Underlying Assets from at least two (2) Qualified Bidders (including the winning Qualifying Bidder) for (i) the purchase of the Underlying Assets or (ii) the purchase of each Subpool; provided that if the Auction Agent has not received bids for one or more Synthetic Securities, the requirements of this clause may be satisfied by determining required payments from or to the Issuer relating to the termination of such Synthetic Securities and including such aggregate amount in the calculation of the Redemption Amount;

(iii)    the Auction Agent certifies that the Highest Auction Price would result in Disposition Proceeds from the Underlying Assets (or the related Subpools) which, together with the Balance of all Eligible Investments (including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement) and Cash in the Accounts (other than Eligible Investments and Cash in the Interest Rate Swap Counterparty Collateral Accounts) will be at least equal to the sum of (i) the Redemption Amount and (ii) the Minimum Preference Share Redemption Amount; and

(iv)    the bidder(s) who offered the Highest Auction Price for the Underlying Assets (or the related Subpools) enter(s) into a written agreement with the Issuer (which the Issuer shall execute if the conditions set forth in (i) through (iii) of this Section 9.3 are satisfied, which execution shall constitute certification by the Issuer that such conditions have been satisfied) that obligates the highest bidder (or the highest bidder for each Subpool) to purchase all of the Underlying Assets (or the relevant Subpool) with the closing of such purchase (and full payment in Cash to the Trustee of (i) the purchase price of the Cash Assets and (ii) any amount due to the Issuer as a result of the assignment of the Synthetic Securities) to occur on or prior to the sixth Business Day following the relevant Auction Date.

Provided that all of the conditions set forth in clauses (i) through (iv) of the last sentence of the preceding paragraph of this Section 9.3 have been met, the Issuer shall dispose of and transfer the Underlying Assets (or each related Subpool), without representation, warranty or recourse, to such highest bidder identified by the Auction Agent (or the highest bidder for each Subpool, as the case may be) and the Trustee shall release the Collateral from the lien of this Indenture in accordance with and upon completion of the Auction Procedures. The Trustee shall deposit the purchase price for the Underlying Assets in the Collection Accounts and on the Distribution Date immediately following the relevant Auction Date (i) pay the Redemption Amount and (ii) make a payment to the

30775-00034 NY:1268831.8

Preference Share Paying Agent for distribution to the Preference Shareholders in an amount (that shall not be less than the Minimum Preference Share Redemption Amount) equal to the remainder of such Disposition Proceeds and cash in the Collection Accounts (such redemption, the "Auction Call Redemption"). Notwithstanding the foregoing, the holders of one hundred percent (100%) of the Aggregate Outstanding Amount of a Class of Notes may elect, in connection with any Auction Call Redemption, to receive less than one hundred percent (100%) of the Redemption Price that would otherwise be payable to holders of such Class (and the Redemption Price shall be reduced by such amount).

The Collateral Manager or any of its Affiliates may bid in an Auction of the Underlying Assets; provided however if the Collateral Manager or any of its Affiliates intends to submit a bid, the Collateral Manager shall resign as Auction Agent for that Auction and shall select a Substitute Auction Agent.

(b)    If any of the foregoing conditions is not met with respect to any Auction, or if the highest bidder (or the highest bidder for any Subpool, as the case may be) fails to pay the purchase price before the sixth Business Day following the relevant Auction Date, (i) the Auction Call Redemption shall not occur on the Distribution Date following the relevant Auction Date, (ii) the Auction Agent shall notify the Trustee and the Trustee shall give notice of the withdrawal pursuant to Section 9.5, (iii) subject to clause (iv) below, the Trustee on behalf of the Issuer shall decline to consummate such sale and shall not solicit any further bids or otherwise negotiate any further disposition of Underlying Assets in relation to such Auction and (iv) unless the Notes are redeemed in full prior to the next succeeding Auction Date, the Auction Agent shall conduct another Auction on the next succeeding Auction Date.

(c)    In addition, the Auction Redemption shall not occur on the Distribution Date following the relevant Auction Date unless, at least four Business Days before such Distribution Date, the Collateral Manager shall have furnished to the Trustee, each Synthetic Security Counterparty and each Interest Rate Swap Counterparty evidence, in form satisfactory to the Trustee (which evidence may be set forth in an Officer's Certificate of the Collateral Manager), that the Issuer has entered into a binding agreement or agreements with (or guaranteed by) a financial institution or institutions (whose long-term unsecured debt obligations (other than such obligations whose rating is based on the credit of a person other than such institution) have a credit rating from each Rating Agency at least equal to the highest rating of the Notes then outstanding or whose short-term unsecured debt obligations have a credit rating of at least "A-1" by Standard & Poor's and (if rated by Fitch) at least "F1" by Fitch and provided that in case such financial institution is the Collateral Manager no credit rating is required) to sell, not later than the Business Day immediately preceding the relevant Distribution Date, in immediately available funds, all or part of the Underlying Assets at a sale price (including in such price an amount equal to any accrued interest) which, together with the Balance of the Cash and Eligible Investments in the Accounts (other than the Interest Rate Swap Counterparty Collateral Account and the Synthetic Security Issuer Account, but including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement), is at least equal to (i) the Redemption Amount and (ii) the Minimum Preference Share Redemption Amount.

(d)    The Issuer shall be permitted to withdraw the notice of redemption pursuant to this Section 9.3 if the conditions for an Auction Call Redemption are not satisfied, by written notice to the Trustee and the Collateral Manager.

### Section 9.4  Optional Redemption.

The Notes shall be redeemable, in whole but not in part, at the option of the Issuer (if so directed by the holders of at least sixty-six and two-thirds percent (66 ⅔) of the Preference Shares), on any Distribution Date on or after the August 2009 Distribution Date at the applicable Redemption Price. Any such redemption of the Notes is referred to herein as an "Optional Redemption". No redemption pursuant to this Section 9.4 shall occur unless the Redemption Amount is paid in full on the date of such redemption in accordance with the priorities set forth in Section 11.1. Any such redemption may only be effected on a Distribution Date at the applicable Redemption Price and only from (a) the Disposition Proceeds and (b) the Balance of the Cash and Eligible Investments in the Accounts (other than that in the Interest Rate Swap Counterparty Collateral Accounts and the Synthetic Security Issuer Accounts, but including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement). No Optional Redemption may be effected, however, unless (i) all such Disposition Proceeds (including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement)

are used, in whole or in part, to make such Optional Redemption and (ii) such Disposition Proceeds are at least equal to the Redemption Amount.

Any Optional Redemption is subject to (i) the sale of the Collateral (other than the Cash and Eligible Investments referred to in clause (b) of this sentence) arranged by the Collateral Manager, on the proposed Redemption Date, for a sale price in Cash at least equal to (a) the Redemption Amount minus (b) the Balance of the Cash and Eligible Investments in the Accounts (other than that in the Interest Rate Swap Counterparty Collateral Accounts and the Synthetic Security Issuer Accounts, but including the payment in full to the Issuer of all amounts that can be withdrawn under the Investment Agreement) and (ii) the receipt by the Trustee from the Collateral Manager of certification from the Collateral Manager that the sum so received from the purchaser satisfies clause (i). Upon receipt by the Trustee of the certification referred to in the preceding sentence, the Issuer shall take all actions necessary to sell, assign and transfer the Collateral to the prospective purchaser upon payment in immediately available funds of the sum referred to above and the Trustee shall release the Collateral from the lien of this Indenture. The Trustee shall deposit such payment into the Collection Accounts. The Collateral Manager or an Affiliate thereof may be the purchaser of the Collateral in accordance with the procedures set forth in the Management Agreement.

If any of the Asset-Backed Securities are in physical form and if the purchaser of such Asset-Backed Securities so requests, the Trustee and the Issuer will enter into a Bailee Letter with such purchaser and a bank selected by the purchaser with the approval of the Issuer (which bank has been assigned ratings at least equal to those required by the Successor Trustee Ratings Requirement) and will deliver the applicable Asset-Backed Securities pursuant thereto prior to the closing on the sale of such Asset-Backed Securities and accept payment of the purchase price pursuant thereto. If the agreed price is not paid by such purchaser in full in immediately available funds by the fifth Business Day immediately preceding the Redemption Date, the Trustee on behalf of the Issuer shall decline to consummate the sale and shall give notice (in accordance with Section 9.5) that the Optional Redemption will not occur.

Any direction from the Preference Shareholders to effect an Optional Redemption shall be given in writing to the Issuer, with copies to the Trustee and the Collateral Manager, at least fifteen (15) Business Days prior to the relevant Distribution Date. The Issuer, upon receipt of the direction from the Preference Shareholders, shall set the Record Date for the redemption pursuant to this Section and give written notice thereof to the Trustee pursuant to Section 9.5.

### Section 9.5  Notice of Tax Redemption, Clean-Up Call Redemption, Auction Call Redemption, Optional Redemption or Stated Maturity by the Issuers.

The Trustee shall give notice of a Redemption Date pursuant to Section 9.1 through Section 9.4 or notice of the Stated Maturity of any Class of Notes or the Scheduled Preference Share Redemption Date by first class mail, postage prepaid, mailed not less than ten (10) days nor more than thirty (30) days prior to such date, to the Depositary, to the registered Holders of the Regulation S Global Notes by delivery of the relevant notice to Clearstream and Euroclear for communication by them to entitled Accountholders, and to each Holder of Preference Shares at such Holder's address in the Share Register, with a copy (mailed at the same time as notice is mailed to the Holders) to each Rating Agency, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Initial Investment Agreement Provider. In addition (and so long as the rules of the Exchange shall so require), the Trustee shall promptly notify the Exchange of any Clean-Up Call Redemption, Tax Redemption, Auction Call Redemption or Optional Redemption, and cause notice of such redemption to be delivered to the Company Announcements Office of the Exchange.

All notices of redemption shall state:

(a)    the applicable Redemption Date, Stated Maturity or Scheduled Preference Share Redemption Date;

(b)    the applicable Record Date;

(c)    the Redemption Price, including the Preference Share Redemption Price, if any;

(d)    the principal amount of each Class of Notes to be redeemed and that interest on such principal amount of Notes shall cease to accrue on the date specified in the notice; and

(e)    the place or places where the certificates relating to such Securities are to be surrendered for payment of the Redemption Price, which shall be the office or agency designated in such notice.

Notice of redemption shall be given by the Trustee in the name and at the expense of the Issuer.

Failure to give notice of redemption, or any defect therein, to any Holder of any Security selected for redemption shall not impair or affect the validity of the redemption of any other Security.

Any such notice may be withdrawn by the Issuer up to the fifth Business Day prior to the scheduled Redemption Date by written notice to the Trustee, the Initial Investment Agreement Provider, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty and the Collateral Manager, but only if the Disposition Proceeds and certificate of the Collateral Manager or the Auction Agent required by Section 9.1, 9.2, 9.3 or 9.4, as applicable, have not been delivered to the Trustee by such date in form satisfactory to the Trustee.

At the cost of the Issuer, the Trustee shall give notice of any withdrawal as follows. Notice of any such withdrawal shall be sent by overnight courier guaranteeing next day delivery to the Depositary, to the registered holders of the Regulation S Global Notes by delivery of the relevant notice to Clearstream and Euroclear for communication by them to entitled Accountholders, and to each Holder of a Preference Share at such Holder's address in the Note Register or the Share Register, as applicable, and to each Rating Agency. The Trustee will promptly notify the Exchange and cause notice of such withdrawal to be delivered to the Company Announcements Office of the Exchange.

### Section 9.6    Securities Payable on Redemption Date.

Notice of redemption having been given as aforesaid (and not withdrawn), the Notes so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price therein specified, and from and after the Redemption Date (unless the Issuer shall default in the payment of the Redemption Price and accrued interest) such Notes shall cease to bear interest on the Redemption Date. Upon final payment on a Note to be redeemed, the Holder shall present and surrender such Note at the place specified in the notice of redemption on or prior to such Redemption Date; provided that if there is delivered to the Issuers and the Trustee (i) in the case of a Holder that is not a Qualified Institutional Buyer, such security or indemnity as may be required by them to save each of them harmless and (ii) an undertaking thereafter to surrender such Note, then, in the absence of notice to the Issuers and the Trustee that the applicable Note has been acquired by a protected purchaser, such final payment shall be made without presentation or surrender. Installments of interest on Notes of a Class so to be redeemed whose Stated Maturity is on or prior to the Redemption Date shall be payable to the Holders of such Notes, or one or more predecessor Notes, registered as such at the close of business on the relevant Record Date according to the terms and provisions of Section 2.6(f).

If any Note called for redemption shall not be paid upon surrender thereof for redemption, the principal thereof shall, until paid, bear interest from the Redemption Date at the applicable Note Interest Rate for each successive Interest Period the Note remains Outstanding.

Installments of principal and interest or Excess Interest due on or prior to a Redemption Date shall continue to be payable to the Holders of such Notes or Preference Shares, respectively as of the relevant Record Dates according to their terms. The election of the Issuers to redeem any Securities pursuant to this Article IX shall be evidenced by an Issuer Order from the Collateral Manager directing the Trustee to make the payment to the Paying Agent and the Preference Share Paying Agent, as applicable of the Redemption Price of all of the Securities to be redeemed from funds in the Payment Account in accordance with the Priority of Payments. The Issuer shall deposit, or cause to be deposited, the funds required for a redemption pursuant to this Article IX in the Payment Account on or before the fifth Business Day prior to the Redemption Date or, if later, upon receipt.

115

### Section 9.7  Mandatory Redemption.

One or more Classes of the Notes may be subject to mandatory redemption, in whole or in part, as set forth in and in accordance with Section 11.1(a), if any Interest Coverage Test or Overcollateralization Test is not satisfied on a Determination Date.

## ARTICLE X

## ACCOUNTS, ACCOUNTINGS AND RELEASES

### Section 10.1  Collection of Money.

(a)    Except as otherwise expressly provided herein, the Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all Money and other property payable to or receivable by the Trustee pursuant to this Indenture, including all payments due on the Pledged Securities, in accordance with the terms and conditions of such Pledged Securities. The Trustee shall segregate and hold all such Money and property received by it in trust for the Secured Parties and shall apply it as provided in this Indenture.

(v)    Each Account shall be a securities account established with the Securities Intermediary in the name of the Trustee pursuant to section 6.18. The Accounts established by the Trustee pursuant to this Indenture may include any number of sub-accounts for the convenience of the Trustee or as requested by the Collateral Manager for convenience in administering the Accounts.

### Section 10.2  Principal Collection Account; Interest Collection Account; Custodial Account; Uninvested Proceeds Account; Synthetic Security Collateral Account; Synthetic Security Issuer Account.

(a)    The Trustee shall, prior to the Closing Date, cause to be established a securities account which shall be designated as the "Interest Collection Account," which shall be a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties, to which the Trustee shall from time to time credit, in addition to the credits required pursuant to Section 10.9(d), (i) all amounts, if any, received by the Issuer pursuant to the Interest Rate Swap Agreement (other than amounts received by the Issuer by reason of an Event of Default or Termination Event (each as defined in such Interest Rate Swap Agreement)), (ii) all proceeds received from the disposition of any Collateral to the extent such proceeds constitute "Interest Proceeds" and (iii) all other Interest Proceeds.

(b)    The Trustee shall, prior to the Closing Date, cause to be established a securities account which shall be designated as the "Principal Collection Account," which shall be a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties, to which the Trustee shall from time to time credit, in addition to the credits required pursuant to Section 10.9(d), (i) all proceeds received from the disposition of any Collateral to the extent such proceeds constitute "Principal Proceeds" and (ii) all other Principal Proceeds.

(c)    The Issuer may, but under no circumstances shall be required to, credit to or cause to be credited to a Collection Account from time to time such funds as it deems, in its sole discretion, to be advisable and, to the extent such funds do not constitute "Interest Proceeds" or "Principal Proceeds" may, by notice to the Trustee designate that such funds are to be treated as Principal Proceeds or Interest Proceeds hereunder at the Issuer's discretion. All funds credited from time to time to a Collection Account pursuant to this Indenture shall be held by the Trustee as part of the Collateral and shall be applied to the purposes herein provided. The Collection Accounts shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000.

(d)     All Distributions, any credit required pursuant to Section 10.2(e) and any net proceeds from the sale or disposition of an Underlying Asset or Equity Security received by the Trustee shall be immediately credited to the Interest Collection Account or the Principal Collection Account, as the case may be. Subject to Sections 10.2(e), 10.2(f), 10.2(g) and 16.1, all amounts credited to the Collection Accounts, together with any securities in which funds included in such property are or will be invested during the term of this Indenture, and any income or other gain realized from such investments, shall be held by the Trustee in the Collection Accounts as part of the Collateral subject to disbursement and withdrawal as provided in this Section 10.2. By Issuer Order executed by an Authorized Officer of the Collateral Manager (which may be in the form of standing instructions), the Issuer shall at all times direct the Trustee to, and, upon receipt of such Issuer Order, the Trustee shall, invest all funds credited to the Collection Accounts during a Due Period, and amounts received in prior Due Periods and retained in the Collection Accounts, as so directed in Eligible Investments; provided, however, that if the Trustee shall not have received such Issuer Order or such standing instructions, subject to Section 10.2(e), it shall invest in an investment which complies with paragraph (c) of the definition of Eligible Investments. The Trustee, within one Business Day after receipt of any Distribution or other proceeds which are not Cash, shall so notify the Issuer and the Issuer shall, within five Business Days of receipt of such notice from the Trustee, sell such Distribution or other proceeds for Cash in an arms length transaction to a Person which is not an Affiliate of the Issuer or the Collateral Manager and credit the proceeds thereof to the Interest Collection Account or Principal Collection Account, as the case may be, for investment pursuant to this Section 10.2; provided that the Issuer need not sell such Distributions or other proceeds if it delivers an Officer's certificate to the Trustee certifying that such Distributions or other proceeds constitute Underlying Assets or Eligible Investments.

(e)     If, prior to the occurrence of an Event of Default, the Issuer shall not have given any investment directions pursuant to Section 10.2(d), the Trustee shall seek instructions from the Collateral Manager within three Business Days after transfer of such funds to a Collection Account. If the Trustee does not thereupon receive written instructions from the Collateral Manager within five Business Days after transfer of such funds to a Collection Account, it shall invest and reinvest the funds held in such Collection Account, as fully as practicable, but only in one or more Eligible Investments of the type described in paragraph (c) of the definition thereof. After the occurrence of an Event of Default, the Trustee shall invest and reinvest such funds as fully as practicable in Eligible Investments of the type described in clause (c) of the definition thereof maturing not later than the earlier of (i) 30 days after the date of such investment or (ii) the Business Day immediately preceding the next Distribution Date. All interest and other income from such investments shall be credited to such Collection Account, any gain realized from such investments shall be credited to such Collection Account, and any loss resulting from such investments shall be charged to such Collection Account. Any gain or loss with respect to an Eligible Investment shall be allocated in such a manner as to increase or decrease, respectively, Principal Proceeds and/or Interest Proceeds in the proportion which the amount of Principal Proceeds and/or Interest Proceeds used to acquire such Eligible Investment bears to the purchase price thereof. The Trustee does not guarantee the performance of any Eligible Investment and shall not in any way be held liable by reason of any insufficiency of any Account resulting from any loss relating to any investment; provided that nothing herein shall relieve the Bank of its obligations under any security or obligation issued by the Bank or any Affiliate thereof.

(f)     The Trustee shall transfer to the Payment Account for application pursuant to Section 11.1(a) and in accordance with the calculations and the instructions contained in the Note Valuation Report prepared by or on behalf of the Issuer pursuant to Section 10.8(b), on or prior to the Business Day prior to each Distribution Date, any amounts then held in the Collection Accounts other than Interest Proceeds or Principal Proceeds received after the end of the Due Period with respect to such Distribution Date; except that, to the extent that Principal Proceeds in the Principal Collection Account as of such date are in excess of the amounts required to be applied pursuant to the Priority of Payments on the next Distribution Date as shown in the Note Valuation Report with respect to such Distribution Date, the Issuer or the Collateral Manager on behalf of the Issuer may direct the Trustee to retain such excess amounts in the Principal Collection Account and not to transfer such excess amounts to the Payment Account.

(g)     The Trustee shall apply amounts credited to in the Collection Accounts in accordance with any Redemption Date Statement delivered to the Trustee in connection with the redemption of Securities pursuant to Section 9.1.

117

(h)    The Trustee shall, upon Issuer Order, apply amounts credited to in the Principal Collection Account in accordance with Section 11.1.

(i)    The Trustee shall, prior to the Closing Date, establish at the Securities Intermediary a securities account which shall be designated as the "Custodial Account," which shall be a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties and to which the Trustee shall from time to time credit Collateral. All Collateral from time to time credited to the Custodial Account pursuant to this Indenture shall be held by the Trustee as part of the Collateral and shall be applied to the purposes herein provided. The Trustee agrees to give the Issuer immediate notice if a Trust Officer receives written notice that the Custodial Account or any funds or property credited thereto, have become subject to any writ, order judgment, warrant of attachment, execution or similar process. The Issuers shall not have any legal, equitable or beneficial interest in the Custodial Account other than in accordance with the Priority of Payments. The Custodial Account shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000 and subject to supervision by federal or state authority.

(j)    The Trustee shall credit the net proceeds (if any) from the issuance and sale of the Securities (including the net proceeds from the issuance and sale of the Preference Shares to be transferred by the Preference Share Paying Agent to the Trustee pursuant to the Preference Share Paying Agency Agreement) that are not invested in Underlying Assets on the Closing Date, that are not credited to the Collection Accounts on the Closing Date, and that are not credited to the Expense Account pursuant to Section 10.4 on the Closing Date in a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties (which shall be designated as the "Uninvested Proceeds Account"). The Collateral Manager on behalf of the Issuer may by Issuer Order direct the Trustee to, and upon receipt of the Issuer Order the Trustee shall, apply funds in the Uninvested Proceeds Account to purchase Underlying Assets or Eligible Investments designated by the Collateral Manager, which Eligible Investments shall be in overnight deposits. Investment earnings on Eligible Investments in the Uninvested Proceeds Account will be transferred to the Interest Collection Account and treated as Interest Proceeds on the First Distribution Date. In addition, any Uninvested Proceeds in the Uninvested Proceeds Account on the Determination Date preceding the First Distribution shall be transferred to the Payment Account and treated as Principal Proceeds on the First Distribution Date and distributed in accordance with Section 11.1. The Uninvested Proceeds Account shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000 and subject to supervision by federal or state authority.

(k)    The Trustee shall establish one segregated securities account, with respect to each Synthetic Security Counterparty, (each such account, a **"Synthetic Security Collateral Account"**), that shall be held in trust in accordance with the applicable Synthetic Security and this Indenture. Upon Manager Order, the Trustee shall credit to a related Synthetic Security Collateral Account all Cash and Eligible Investments in an amount equal to the Aggregate Principal/Notional Balance of all Synthetic Securities related to such account to secure the obligations of the Issuer in accordance with Section 11.1A and the terms of the related Synthetic Security. The Synthetic Security Collateral Account shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000.

Amounts credited to a Synthetic Security Collateral Account shall be applied pursuant to Section 11.1A upon a Manager Order (i) to the payment of any amounts owed by the Issuer to the related Synthetic Security Counterparty in accordance with the related Synthetic Security on the date any such amounts are due and (ii) if as of any Determination Date, the Synthetic Security Collateral Amount of such Synthetic Security Collateral Account exceeds the related Required Synthetic Security Collateral Amount, such excess amount shall be withdrawn from such Synthetic Security Collateral Account and credited to (a) the Principal Collection Account or with respect to any substitution, to the Substituted Collateral Account, or (b) if such amounts constitute interest of investments in Eligible Investments, to the Interest Collection Account. As directed by a Manager Order and subject to the previous sentence, cash credited to a Synthetic Security Collateral Account for the benefit of the related Synthetic

118

Security Counterparty shall be invested in Eligible Investments. Except as described in the first sentence of this paragraph, Cash and Eligible Investments credited to a Synthetic Security Collateral Account, shall not be available to make payments under the Notes and shall not be considered to be an asset of the Issuer for purposes of any of the Collateral Quality Tests or the Coverage Tests, but the Synthetic Security that relates to such Synthetic Security Collateral Account shall be considered an asset of the Issuer.

In the event a Synthetic Security is terminated or novated prior to its scheduled maturity without the occurrence of a "credit event", or upon the occurrence of a "credit event", in accordance with Section 11.1A, the Trustee shall deliver to the related Synthetic Security Counterparty such portion of the collateral credited to the related Synthetic Security Collateral Account required to make any termination or novation payment owed to such Synthetic Security Counterparty, and the remaining collateral credited to such Synthetic Security Collateral Account shall remain subject to the lien of this Indenture and shall be transferred to the Substituted Collateral Account in the case of a termination or novation of a Synthetic Security pursuant to Section 12.1(a)(v) or in all other cases to the Principal Collection Account. Any cash received upon the maturity or liquidation of any collateral credited to a Synthetic Security Collateral Account shall be Principal Proceeds and credited to the Principal Collection Account.

(l)    If and to the extent that any Synthetic Security requires the Synthetic Security Counterparty to secure its obligations with respect to such Synthetic Security, the Trustee shall establish with the Securities Intermediary a securities account held in trust in the name of the Trustee (each such account, a "Synthetic Security Issuer Account"). The Trustee shall credit to each Synthetic Security Issuer Account all amounts that are required to secure the obligations of the Synthetic Security Counterparty in accordance with the terms of such Synthetic Security. The Synthetic Security Issuer Accounts shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000.

As directed by a Manager Order and in accordance with the applicable Synthetic Security, Cash credited to a Synthetic Security Issuer Account shall be invested in Eligible Investments. Income received on amounts credited to each Synthetic Security Issuer Account shall be withdrawn from such account and paid to the related Synthetic Security Counterparty in accordance with the applicable Synthetic Security.

Cash and Eligible Investments credited to each Synthetic Security Issuer Account shall not be available to make payments under the Notes other than as a result of an event of default or termination event under the related Synthetic Security caused by the related Synthetic Security Counterparty. Amounts contained in any Synthetic Security Issuer Account shall not be considered to be an asset of the Issuer for purposes of any of the Collateral Quality Tests or the Coverage Tests, but the Synthetic Security that relates to such Synthetic Security Issuer Account shall be so considered an asset of the Issuer.

Upon the occurrence of an event of default or a termination event under any Synthetic Security, amounts held in the related Synthetic Security Issuer Account shall, as directed by a Manager Order, be withdrawn by the Trustee and applied to the payment of any termination payment payable by the related Synthetic Security Counterparty as a result of such event of default or termination event. Any excess amounts held in a Synthetic Security Issuer Account after payment of all amounts owing from the related Synthetic Security Counterparty as a result of an event of default or termination event shall be withdrawn from such Synthetic Security Issuer Account and paid to the related Synthetic Security Counterparty in accordance with the applicable Synthetic Security.

### Section 10.3 Payment Account.

The Trustee shall, prior to the Closing Date, cause to be established a securities account which shall be designated as the "Payment Account," which shall be a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties. Any and all funds at any time credited to the Payment Account shall be held in trust by the Trustee for the benefit of the Secured Parties. Except as provided in Sections 11.1 and 11.2, the only permitted withdrawal from or application of funds credited to the Payment Account shall be to pay the interest on and the principal of the Notes in accordance with their terms and the provisions of this Indenture and to credit Excess Amounts to the Preference Share Payment Account and, upon Issuer Order, to pay Administrative Expenses and other amounts

specified therein, each in accordance with the Priority of Payments. The Trustee agrees to give the Issuers immediate notice if a Trust Officer receives written notice that the Payment Account or any funds or other property credited to the Payment Account, have become subject to any writ, order, judgment, warrant of attachment, execution or similar process. The Issuers shall not have any legal, equitable or beneficial interest in the Payment Account other than in accordance with the Priority of Payments. The Payment Account shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000 and subject to supervision by federal or state authority.

## Section 10.4 Expense Account.

(a)    The Trustee shall, prior to the Closing Date, cause to be established a securities account which shall be designated as the "Expense Account," which shall be a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties. Any and all funds at any time credited to the Expense Account shall be held in trust by the Trustee for the benefit of the Secured Parties. Except as provided in the next sentence and in Sections 6.8(b), 11.1 and 11.2, the only permitted withdrawal from or application of funds credited to the Expense Account shall be to pay (on any day other than a Distribution Date) accrued and unpaid Administrative Expenses of the Issuers as consented to by the Collateral Manager (other than fees of the Trustee but including other amounts payable by the Issuer to the Collateral Manager under the Management Agreement or the Indenture). Amounts credited to the Expense Account shall be (i) applied on or prior to the first Determination Date, upon delivery of written instructions from the Collateral Manager to the Trustee, to pay amounts due in connection with the offering of the Securities, and (ii) on the First Distribution Date, to the extent that the Balance of the Expense Account exceeds $150,000 on the related Determination Date, transferred to the Payment Account and applied as Interest Proceeds. On the Closing Date, the Trustee shall credit to the Expense Account an amount set forth in the Funding Certificate (attached hereto as Exhibit E) from the net proceeds received by the Issuer on such date from the initial issuance of the Securities and from any other sources. Thereafter, the Trustee shall transfer to the Expense Account from the Payment Account amounts required to be credited thereto pursuant to Section 11.1(a) and in accordance with the calculations and the instruction contained in the Note Valuation Report prepared by the Issuer pursuant to Section 10.8(b). On the date on which substantially all of the Issuer's assets have been sold or otherwise disposed of, the Issuer by Issuer Order executed by an Authorized Officer of the Collateral Manager shall direct the Trustee to, and, upon receipt of such Issuer Order, the Trustee shall, transfer all amounts credited to the Expense Account to the Payment Account for application pursuant to Section 11.1(a) as Interest Proceeds on the immediately succeeding Distribution Date.

(b)    The Trustee agrees to give the Issuers immediate notice if a Trust Officer receives written notice that the Expense Account or any funds or other property credited to the Expense Account, has become subject to any writ, order, judgment, warrant of attachment, execution or similar process. The Expense Account shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000 and subject to supervision by federal or state authority.

(c)    By Issuer Order executed by an Authorized Officer of the Collateral Manager (which may be in the form of standing instructions), the Issuer shall at all times direct the Trustee to, and, upon receipt of such Issuer Order the Trustee shall, invest all funds credited to the Expense Account during a Due Period, and amounts received in prior Due Periods and retained in the Expense Account, as so directed in Eligible Investments. All interest and other income from such investments shall be credited to the Expense Account, any gain realized from such investments shall be credited to the Expense Account, and any loss resulting from such investments shall be charged to the Expense Account.

## Section 10.5 Interest Rate Swap Counterparty Collateral Accounts.

If and to the extent that the Interest Rate Swap Agreement requires the Interest Rate Swap Counterparty to secure its obligations with respect to such Interest Rate Swap Agreement, the Issuer will establish a securities account (each such account, an "Interest Rate Swap Counterparty Collateral Account") which shall be a non-interest

bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and shall be held in trust by the Trustee. The Trustee shall credit to an Interest Rate Swap Counterparty Collateral Account all amounts, securities and other collateral that are received from the Interest Rate Swap Counterparty to secure the obligations of such Interest Rate Swap Counterparty in accordance with the terms of the Interest Rate Swap Agreement. Except for investment earnings, no Interest Rate Swap Counterparty shall have any legal, equitable or beneficial interest in the Interest Rate Swap Counterparty Collateral Accounts, other than in accordance with this Indenture, the Interest Rate Swap Agreement and applicable law.

As directed by an Issuer Order executed by an Authorized Officer of the Collateral Manager in accordance with the Interest Rate Swap Agreement, amounts credited to an Interest Rate Swap Counterparty Collateral Account shall be invested in Eligible Investments. Income received on amounts credited to the Interest Rate Swap Counterparty Collateral Accounts shall be withdrawn from such account and paid to the Interest Rate Swap Counterparty in accordance with the Interest Rate Swap Agreement.

As directed by an Issuer Order executed by an Authorized Officer of the Collateral Manager, amounts credited to an Interest Rate Swap Counterparty Collateral Account shall be withdrawn by the Trustee and paid to the Interest Rate Swap Counterparty in accordance with the terms of the Interest Rate Swap Agreement.

Amounts credited to the Interest Rate Swap Counterparty Accounts shall not be considered to be an asset of the Issuer for purposes of any of the Collateral Quality Tests or Coverage Tests.

Upon the occurrence of an Event of Default or a Termination Event (each as defined in the Interest Rate Swap Agreement) under the Interest Rate Swap Agreement, amounts credited to the Interest Rate Swap Counterparty Collateral Account shall, as directed by the Collateral Manager in writing, be withdrawn by the Trustee and applied to the payment of any termination payment due to the Issuer under the Interest Rate Swap Agreement as a result of any Event of Default or Termination Event. Any excess amounts credited to such Interest Rate Swap Counterparty Collateral Account after payment of all amounts owing from the Interest Rate Swap Counterparty to the Issuer as a result of an Event of Default or Termination Event shall be withdrawn from such Interest Rate Swap Counterparty Collateral Account and paid to such Interest Rate Swap Counterparty in accordance with the Interest Rate Swap Agreement. The Interest Rate Swap Counterparty Collateral Account shall remain at all times with a financial institution having a long-term debt rating of at least "BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and if so rated, such rating is not on watch for downgrade and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000 and subject to supervision by federal or state authority.

### Section 10.6 Substituted Collateral Account.

The Trustee shall, prior to the Closing Date, cause to be established a securities account which shall be designated as the "Substituted Collateral Account," which shall be a non-interest bearing, segregated trust account established with the Securities Intermediary in the name of the Trustee and held by the Trustee in trust for the benefit of the Secured Parties. Any and all funds at any time credited to the Substituted Collateral Account shall be held in trust by the Trustee for the benefit of the Secured Parties.

The Trustee, if so directed in writing by the Collateral Manager shall withdraw any amount identified by the Collateral Manager for acquisition of Eligible Substitute Assets; provided that the condition set forth in Section 12.1(a)(v) is satisfied.

Trustee shall withdraw any amount credited to the Substituted Collateral Account 10 Business Days after such amount was credited to the Substituted Collateral Account, and credit such amount to the Principal Collection Account to be applied as Principal Proceeds. In no event shall Substituted Collateral Proceeds be deemed to be Interest Proceeds.

The Trustee agrees to give the Issuers immediate notice if a Trust Officer receives written notice that the Substituted Collateral Account or any funds or other property credited to the Substituted Collateral Account, has become subject to any writ, order, judgment, warrant of attachment, execution or similar process. The Substituted Collateral Account shall remain at all times with a financial institution having a long-term debt rating of at least

30775-00034 NY:1268831.8

"BBB+" by Standard & Poor's, at least "Baa1" by Moody's, and at least "BBB+" by Fitch and a combined capital and surplus in excess of $200,000,000 and subject to supervision by federal or state authority.

### Section 10.7 General Reporting by Trustee.

(a)    The Trustee shall supply in a timely fashion to each Rating Agency, the Issuer, the Collateral Administrator and the Collateral Manager any information regularly maintained by the Trustee that the Issuer or the Collateral Manager may from time to time reasonably request with respect to the Pledged Securities, the Expense Account, the Interest Collection Account, the Principal Collection Account, the Payment Account, the Uninvested Proceeds Account or the Interest Rate Swap Counterparty Collateral Accounts reasonably needed to complete the Note Valuation Report, the Monthly Report or the Redemption Statement and shall provide any other information reasonably available to the Trustee by reason of its acting as Trustee hereunder to permit the Collateral Manager to perform its obligations under the Management Agreement.

(b)    [Reserved]

(c)    The Trustee shall forward to the Issuer, the Preference Share Paying Agent, the Collateral Manager and to any Holder or Beneficial Holder of a Note shown on the Note Register or to the Interest Rate Swap Counterparty, in each case, upon request therefor, copies of notices and other writings received by it from the issuer of any Asset-Backed Security or from any Clearing Agency with respect to any Asset-Backed Security advising the holders of such security of any rights that the holders might have with respect thereto (including notices of calls and redemptions of securities) as well as all periodic financial reports received from such issuer and Clearing Agencies with respect to such issuer.

(d)    The Trustee shall, so long as any Class of Notes is listed on the Exchange and the rules of the Exchange so require, notify the Exchange not later than the Business Day preceding each Distribution Date of the amount of principal payments to be made on the Notes of each Class on such Distribution Date, the amount of any Deferred Interest in respect of the Class C Notes, the Class D Notes or the Class E Notes and the Aggregate Outstanding Amount of the Notes of each Class and as a percentage of the original Aggregate Outstanding Amount of the Notes of such Class after giving effect to the principal payments, if any, on such Distribution Date.

### Section 10.8 Reports by the Issuer.

(a)    Monthly.  Not later than the eighth Business Day after the last day of each month (excluding any month immediately preceding a month in which a Note Valuation Report is rendered) commencing with the [eighth] Business Day after the last day of September 2006, the Issuer shall deliver, or cause to be delivered to the Trustee, Moody's, Standard & Poor's (via e-mail to CDO_Surveillance@standardandpoors.com), the Collateral Manager, the Preference Share Paying Agent, each Synthetic Security Counterparty, the Interest Rate Swap Counterparty, the Initial Investment Agreement Provider, and, upon written request therefor in the form of Schedule I attached hereto certifying that it is a Holder of a Note or beneficial interest in any Note, each Holder of a  beneficial interest in a Note (or its designee), a monthly report (the "Monthly Report") containing the following information and instructions with respect to the Pledged Securities included in the Collateral, determined as of the [last day of such calendar month] (based, in part, on information received from the Collateral Manager):

(i)    (A) the Aggregate Principal/Notional Balance of all Underlying Assets, together with a calculation, in reasonable detail, of the sum of (i) the Aggregate Principal/Notional Balance of all Underlying Assets (other than Defaulted Securities and Written Down Securities) plus (ii) with respect to each Defaulted Security, the Calculation Amount of such Defaulted Security plus (iii) with respect to each Written Down Security, the Aggregate Principal/Notional Balance of all such Written Down Securities; and (B) the Balance of all Eligible Investments and Cash in each of the Interest Collection Account, the Principal Collection Account, the Uninvested Proceeds Account, any Synthetic Security Collateral Account, the Synthetic Security Issuer Account, the Substituted Collateral Account and the Expense Account;