HEARING DATE AND TIME:  July 19, 2012 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**OMNIBUS REPLY TO CERTAIN**
**RESPONSES TO DEBTORS' FORTY-SECOND**
**AND FORTY-THIRD OMNIBUS OBJECTIONS TO CLAIMS**
**(LATE-FILED LEHMAN PROGRAMS SECURITIES CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") as Plan Administrator under the

*Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its*

*Affiliated Debtors* [ECF No. 22737] (the "Plan") for the entities in the above referenced chapter 11

cases (collectively, the "Chapter 11 Estates"), files this omnibus reply (the "Reply") to certain

responses (the "Responses")[1] received opposing the (i) Debtors' Forty-Second Omnibus Objection

to Claims (Late-Filed Lehman Programs Securities Claims) [ECF No. 11307] and (ii) Debtors'

Forty-Third Omnibus Objection to Claims (Late-Filed Lehman Programs Securities Claims) [ECF

No. 11308] (collectively, the "Omnibus Objections") and respectfully represents as follows:

---

[1] This Reply only addresses the Responses listed on Exhibit A.  The Plan Administrator reserves its right to file reply
briefs responding to all other responses received in opposition to the Omnibus Objections.

## PRELIMINARY STATEMENT

1.      This Court's order setting forth claim filing procedures and deadlines in these chapter 11 cases provided that claims would only be deemed timely if *actually received* on or before the deadline applicable to such claims.  The proofs of claim included on <u>Exhibit A</u>[2] (the "<u>Late-Filed Claims</u>") attached hereto were received after the applicable deadline.  The Late-Filed Claims were mailed by Claimants in Hong Kong twelve calendar days prior to the applicable Bar Date (defined below) using first class international mail.  Based on the Plan Administrators' review of information concerning the delivery period for mail from Hong Kong, the Claimants could not have reasonably expected that the Late-Filed Claims would be received prior to the Bar Date when mailed so close to the Bar Date using this delivery method.

2.      The Responses primarily assert that the Late-Filed Claims were timely mailed and any delay in receipt was no fault of the Claimants and attributable only to the Hong Kong postal system.  Moreover, the Claimants do not argue that they are entitled to relief pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), but rather merely state they mailed the Late-Filed Claims prior to the applicable deadline.  Notwithstanding that the Claimants did not raise such arguments, for the reasons set forth herein, the Claimants cannot satisfy the "hard line" application of the "excusable neglect" standard followed by the Second Circuit and by this Court in these chapter 11 cases.  Despite the clear language of the Bar Date Order (defined below) warning that claims would be forever barred if not actually received prior to the applicable deadline, the Claimants waited until it was too late to reasonably rely on the Hong Kong and United States postal systems to deliver the Late-Filed Claims on time.  It was entirely within the Claimants' control either to mail the Late-Filed Claims

---

[2] <u>Exhibit A</u> lists the holder of each Late-Filed Claim (the "<u>Claimant</u>"), its claim number, the date the claim was postmarked, the date the claim was received, the country of origin, and the method of mailing.

sooner or to select a more expedient and reliable form of delivery.  The Claimants did neither.  For these reasons, the Late-Filed Claims should be expunged.

## BACKGROUND

### Chapter 11 Case Background

3.          Commencing on September 15, 2008 and periodically thereafter, (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.          On December 6, 2011, the Court entered the order confirming the Plan. The Plan became effective on March 6, 2012 (the "Effective Date").  Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

### The Bar Date

5.          By order dated July 2, 2009 (the "Bar Date Order"), the Court established specific alternative claim filing procedures (the "Lehman Programs Securities Procedures") that apply to the filing of any and all claims arising from securities included on the Lehman Programs Securities list. (Bar Date Ord. at 12.) While the Bar Date Order established September 22, 2009 as the deadline to file other proofs of claim, the Lehman Programs Securities Procedures required that all claims against any of the Chapter 11 Estates arising from securities on the Lehman Programs Securities list ("Securities Programs Proofs of Claim") be filed on or before November 2, 2009 (the "Bar Date").  As such, holders of Lehman Programs Securities were provided an additional 40 days (for a total of four months from entry of the Bar Date Order) to file

3

their proofs of claim. The Bar Date Order also expressly provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order . . . shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ." (*Id.* at 9-10.)  A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com.

6.        Notice of the Bar Date (the "Securities Programs Bar Date Notice") was widely published and disseminated. Pursuant to the Bar Date Order, the Program Securities Bar Date Notice was published by the Chapter 11 Estates in ten languages, plus seven translations for local dialects, and in twenty-six newspapers in eighteen countries, including in each of Italy, Spain, France, Germany, The Netherlands (in English), Switzerland, Luxembourg, United Kingdom, Hong Kong, Mexico, Belgium, Austria, Greece, Brazil, Argentina, Australia, and Japan. (Bar Date Ord. at 14.) The Programs Securities Bar Date Notice was also provided to Euroclear, Clearstream, and similar clearing systems as well as to the issuers of the Lehman Programs Securities and these entities were to distribute the notice to the holders of Lehman Programs Securities.

## THE LATE-FILED CLAIMS SHOULD NOT BE DEEMED TIMELY FILED

### A.        The Second Circuit Strictly Enforces Bar Dates Absent A Finding of Excusable Neglect

7.        As this Court has recognized, "bar dates are critically important to the administration of a successful chapter 11 case." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (internal quotations omitted).  A bar date enables debtors to determine with reasonable promptness, efficiency, and finality what claims will be made against their estates—a determination without which they cannot effectively reorganize. *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995); *Florida Dept. of Ins. v. Drexel Burnham*

4

*Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002, 1005

(S.D.N.Y. 1993) ("The bar order by forcing creditors to make known their claims against the

estate, enables the bankruptcy judge to tally up the debtor's assets and liabilities so that a

reorganization plan can be developed.") (internal quotations omitted).  Bankruptcy Rule 9006(b)

vests the decision to extend the bar date "squarely within the discretion of the bankruptcy judge."

*In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1008.

**B.      The Claimants Have Not Alleged,**
**        And Cannot Demonstrate, Excusable Neglect**

        8.      Bankruptcy Rule 9006(b)(1) provides that "on motion made after the

expiration of the specified period [the court may] permit the act to be done where the failure to act

was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b)(1).  The Supreme Court, in

interpreting the term "excusable neglect," has held that the term "neglect" in its ordinary sense

means "to give little attention or respect to a matter, or . . . to leave undone or unattended to

esp[ecially] through carelessness . . . and encompasses both simple, faultless omissions to act and

more commonly, omissions caused by carelessness."  *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*

*L.P.*, 507 U.S. 380, 388 (1993).  The determination of whether a claimant's neglect of a deadline

is *excusable*, according to *Pioneer*, however, is an equitable determination in which a court should

consider all relevant circumstances surrounding the claimant's omission, such as:  "the danger of

prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the

reason for the delay, including whether it was within the reasonable control of the movant, and

whether the movant acted in good faith."  *Id.* at 395.

        9.      In applying the *Pioneer* factors to determine whether a late-filed proof of

claim was the result of "excusable neglect," the Second Circuit has taken a "hard line" approach

that does not give the four factors equal weight.  *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir.

5

2005); *In re Lehman Bros. Holdings Inc.*, 433 B.R. at 119-20.  The third *Pioneer* factor—the

reason for the delay in filing, including whether the cause of such delay was within the reasonable

control of the claimant—is the most critical.  *See Enron*, 419 F.3d at 122-24.  The Second Circuit

has noted that the reason for this approach is that the other factors delineated in *Pioneer*—

prejudice, length of delay and impact on judicial proceedings, and the claimant's good faith—will

typically weigh in favor of the claimant, and the court will therefore focus on the reason for the

delay in filing.  *Id*. at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir.

2003).).

> 10.    This Court has followed the Second Circuit's "hard line" approach in

applying the *Pioneer* factors in deciding numerous motions in this case.  Only on two occasions,

where "creditors consciously endeavored to comply with the bar date and established that their

delay was the result of justifiable confusion over the application of the bar date to their particular

claims," did this Court find the existence of excusable neglect.  *In re Lehman Brothers Holdings

Inc.*, 433 B.R. 113, 127 (Bankr. S.D.N.Y. 2010), *aff'd.* 445 B.R. 137 (S.D.N.Y. 2011).  In this

case, the Claimants do not allege confusion regarding the application of the Bar Date Order, and

the Claimants' excuse does not relate to the bespoke provisions of the Bar Date Order regarding

certain securities.  With respect to all other motions filed in this case seeking to have late filed

claims deemed timely pursuant to Bankruptcy Rule 9006(b), this Court found that the delay in

filing the late claims was within the control of the various movants and that "reasons offered by

the Movants demonstrate a lack of care or thoughtful attention to the preparation and filing of their

proofs of claim."  *Id.*

> 11.    The burden of establishing excusable neglect is squarely on the Claimants,

not the Plan Administrator or the Court.  *In re Enron Corp.*, 419 F.3d at 121 ("The burden of

6

proving excusable neglect lies with the late-claimant.").  The Claimants do not argue that the circumstances surrounding the Late-Filed Claims warrant relief pursuant to Bankruptcy Rule 9006(b), or provide any analysis in support of "excusable neglect" to satisfy their burden.  As discussed below, the *Pioneer* factors – particularly the reason for the Claimants' delay in filing the Late-Filed Claims – weigh heavily in favor of the Chapter 11 Estates.  The Court should follow its prior decisions to grant the Omnibus Objection, and deny and overrule the Responses.

       ***i.    The Claimants' Reason for the Delay Was Solely Within the Claimant's Control***

       12.    The primary argument asserted by the Claimants for why their Late-File Claims should be deemed timely-filed is that they mailed their proofs of claim on October 21, 2009, which is prior to the Bar Date.  Contrary to such assertions, postmarking the Late-Filed Claims prior to the Bar Date does not satisfy the Bar Date Order.  Pursuant to the Bar Date Order, "[p]roofs of Claim will be deemed timely-filed only if **<u>actually received</u>** by Epiq or the Court on or before the Bar Date."  (Bar Date Ord. at 3 (emphasis in original).)  Similarly, the Bar Date Notice and the Securities Programs Bar Date Notice each warned, in bold and underlined font, that claims would only be considered timely if **<u>actually received</u>** on or before the Bar Date.  (Bar Date Notice at 3; Securities Programs Bar Date Notice at 3.)  The Bar Date Notice and the Securities Programs Bar Date Notice were widely disseminated, and the Securities Programs Bar Date Notice was translated into numerous different languages.

       13.    The provisions of the Bar Date Order, the Bar Date Notice, and the Securities Programs Bar Date Notice were clear and unambiguous.  Each stated, in no uncertain terms, that claims would only be deemed timely if *actually received* on or before the Bar Date.  Notwithstanding such fact, Claimants have "fail[ed] to follow the clear dictates of a court rule," and they should not be permitted to have their late-filed claims deemed timely simply because they mailed their claim on or before the Bar Date.  *See In re Enron Corp.*, 419 F.3d at 123.

14.    While the Supreme Court in *Pioneer* recognized that courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control," *Pioneer*, 507 U.S. at 388, 391, the Second Circuit has applied a strict standard in determining whether inadvertence or mistake amounts to excusable neglect, noting that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule, and … where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." *In re Enron Corp.*, 419 F.3d at 123, 126 (internal quotations omitted).

15.    While time in transit can, in some circumstances, constitute excusable neglect, here the facts do not rise to the level of excusable neglect. *See, e.g.*, *In re Bicoastal Corp.*, 136 B.R. 288, 290 (Bankr. M.D. Fla. 1990) (finding excusable neglect where claimant contracted for delivery of proof of claim by specific date, but due to extreme weather conditions, delivery service failed to timely deliver the proof of claim).  When, as here, the reason for the late claim is that a claimant waited until too close to the bar date and selected the slowest method of delivery, courts have not hesitated to prohibit the late-filed claim.  *See, e.g.*, *Kmart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (finding that by waiting until last possible moment to mail claim, claimant could not establish excusable neglect); *In re Diggs*, 220 B.R. 247, 252 (Bankr. M.D.N.C. 1998) (finding the reason for the delay was within claimant's control where claimant waited until the day before the bar date and used first class mail, rather than an overnight mail service, to ensure compliance with the bar date).  It was Claimants' responsibility to mail their respective claims sufficiently in advance of the Bar Date to ensure that the Late-Filed Claims were received timely.  The failure to do so is mere carelessness that was within the control of Claimants and thus does not satisfy the requirements for excusable neglect. *See In re Yankee Distrib. Co., Inc.*, 53

8

B.R. 222, 223-24 (D. Vt. 1985) (denying motion to have claim that was one day late deemed timely on basis that claimant was responsible for late-filing due to misplaced reliance on postal system to deliver claim timely).

16.    Here, as detailed on Exhibit A, each of the Claimants mailed their Late-Filed Claim(s) from Hong Kong only twelve calendar days before the Bar Date using first class international mail – the  slowest type of mail and has no guarantee of delivery within any particular timeframe.  The Hong Kong Post Office provides delivery guidelines for international airmail, but notes that the guidelines are merely points of reference.  (*See* Hongkong Post Delivery Standards, attached hereto as Exhibit B, *available at* http://www.hongkongpost.com/doc/common/ pos15_Supplement.pdf.)  For mail from Hong Kong to the United States, the Hong Kong Post Office expects, but does not guarantee, that mail will be delivered anywhere between five and sixteen *working days* after mailing.  (*Id.*)  The Bar Date occurred on Monday, November 2, 2009.  The Claimants waited to mail the Late-Filed Claims until Wednesday, October 21, 2009 – only seven working days before the Bar Date – and did not elect an overnight courier to guarantee delivery by the Bar Date.

17.    Based on these guidelines the Claimants cannot have reasonably relied upon their chosen method of delivery and the timeframe that they elected for themselves.  Here, "the reason for the delay was," as this Court has held previously in similar circumstances

> substantially within the control of the claimant inasmuch as dropping a claim in the mail in Hong Kong [amounts] to a form of proof of claim roulette.  There is no assurance whatsoever based upon the published data that a claim mailed on any particular day prior to the bar date with assurance will be delivered by the specified date.  Now while this raises some questions as to the burden on the part of the claimant in having to either mail the proof of claim substantially ahead of the proof of claim bar date or by means of guaranteed delivery through overnight courier, nonetheless, this is something that is subject to the claimant's control.

US_ACTIVE:\44049850\3\58399.0011

See *In re Lehman Bros. Holdings Inc.* Hr'g Tr. 44:22 – 45:7, June 2, 2011, attached hereto as Exhibit C.  Although the claims expunged on this prior occasion were mailed from Hong Kong five working days prior to the Bar Date, as opposed to seven working days, the difference is immaterial.  Despite the requirement that claims be *actually received* prior to the Bar Date, the Claimants delayed mailing the Late-Filed Claims until twelve calendar days (seven working days) prior to the applicable Bar Date using Hong Kong's regular mail system.  Relying on the Hong Kong Post Office guidelines, the Claimants should have mailed the Late-Filed Claims at least sixteen working days prior to the Bar Date.  The Claimants also elected not to use any priority or express designation, or any overnight services such as FedEx, DHL, or UPS.  Thus, it was unreasonable for Claimants to have had any expectation that the Late-Filed Claims would arrive prior to the Bar Date.  The delay occurred as a result of Claimants' delay in mailing the Late-Filed Claims and their choice to use the slowest delivery option.  As such, the reason for the delay weighs strongly against a finding of excusable neglect.

### ii. Allowing the Late-Filed Claims Will Prejudice The Chapter 11 Estates and Other Creditors

18.    "Prejudice" includes not only the harm to the debtor but also the adverse impact that a late claim may have on the judicial administration of the case, considering the size of the late claim in relation to the estate.  *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1007; *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995).  More than 67,000 claims have been filed against the Chapter 11 Estates.  Enforcement of the Bar Date is critical for the Chapter 11 Estates to manage the enormous task of processing the claims and to proceed with reorganization.  This Court has already determined that in these cases "the enormity of the claims allowance process is self-evident, and prejudice needs to be evaluated in this unprecedented setting" and therefore, a "strict

10

application of the Bar Date Order is needed to effectively manage the claims process and that permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors." *In re Lehman Brothers Holdings Inc.*, 433 B.R. at 120.

19.     The Claimants argue that the Chapter 11 Estates will not be prejudiced by acceptance of the Late-Filed Claims. This argument should be rejected for several reasons. Primarily, it ignores the cumulative effect that permitting the Late-Filed Claims will have on the Chapter 11 Estates. Permitting exceptions to the Bar Date does not impact "only one claim" and could have a significant economic impact on the Chapter 11 Estates, including the distributions available to creditors that exercised proper diligence in filing their claims. As this Court has recognized, "[t]he prejudice to the Debtors is not traceable to the filing of any additional single claim but to the impact of permitting exceptions that will encourage others to seek similar leniency." *Id.* at 121. If the Claimants are granted leniency on the basis of excusable neglect, then holders of other late-filed claims will seek similar relief. A sudden increase in claims at this time would disrupt the orderly administration of the Chapter 11 Estates.

20.     Claimants whose late claims have already been expunged by this Court would also be prejudiced. To date, the Chapter 11 Estates have objected to approximately 1,740 claims on the grounds that such claims were filed after the applicable deadline. Of these, approximately 1,350 claims have been expunged as a result of the Chapter 11 Estates' objections. Given the number of claimants whose claims have already been expunged for being late, it would be unfair and inequitable to treat the Late-Filed Claims any differently from other similarly situated claims absent a showing of an exceptionally strong reason for the delay.

### iii.     *Length of the Delay*

21.     The Late-Filed Claims were received four days after the Bar Date. Although the Chapter 11 Estates recognize that the length of delay as to the Late-Filed Claims is

11

relatively minimal, the Claimants never filed a motion with the Court seeking relief under

Bankruptcy Rule 9006(b).  It was only after the Chapter 11 Estates filed the Omnibus Objections,

ten months after the Bar Date, that these parties raised any argument that their Late-Filed Claims

should be deemed timely-filed.  If parties are permitted to claim excusable neglect at this stage in

the proceeding, then the purpose and effect of the Bar Dates will have been diluted.  Accordingly,

this *Pioneer* factor weighs in favor of the Chapter 11 Estates.

> iv.    **_Good Faith_**

22.    The Plan Administrator has no evidence that the Claimants acted in bad

faith when they claimed excusable neglect.  However, as discussed above, this factor typically

weighs in favor of the party moving to file a late claim and hardly counterbalances the other three

*Pioneer* factors which weigh in the Chapter 11 Estates' favor, particularly the "reason for delay"

factor, discussed above, which the Second Circuit has deemed to be the most relevant and critical

in the equitable determination of whether a movant's neglect is excusable.  *See In re Enron Corp.*,

419 F.3d at 122-24.

## **RESERVATION OF RIGHTS**

23.    In the event that the Court denies the Omnibus Objections with respect to

the Late-Filed Claims and/or grants the relief requested in the Responses, the Plan Administrator

reserves the right to object to the validity and amount of any claims that may be filed by the

Claimants.  The Plan Administrator reserves the right to conduct discovery as to the Late-Filed

Claims and any matters raised in the Responses and to supplement this filing as a result thereof.

US_ACTIVE:\44049850\3\58399.0011

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the Omnibus Objections, the

Plan Administrator respectfully requests that the Court enter an order disallowing and expunging

the Late-Filed Claims in their entirety and grant such other and further relief as the Court may

deem just and appropriate.

Dated: July 17, 2012
New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

US_ACTIVE:\44049850\3\58399.0011

# EXHIBIT A

| Claimant Name | Claim Number | Omnibus Objection | Response ECF Number | Date Mailed | Date Received | Country of Origin | Type of Mail |
|---|---|---|---|---|---|---|---|
| Yu Chun Kwan | 64971 | 42nd | 12107 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Lam Ying Choi & Yeung So Fan | 64972 | 42nd | 11944 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Chau Kam Man & Chiang Wai Man Vivian | 64973 | 42nd | 11945 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Ie She Hoen & Tan Tjiang Moy | 64974 | 42nd | 11947 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Wong Tak Keung & Lam Sau Ling | 64975 | 43rd | 11954 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Woo Set Wah & Chui Fung Ming Sandra | 64976 | 43rd | 11971 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Wong Yee Wan & Poon Kai Hung | 64977 | 42nd | 11955 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |
| Yam Chak Hong Henry | 64978 | 42nd | 11973 | 10/21/2009 | 11/6/2009 | Hong Kong | First Class, Registered |

# EXHIBIT B

# 郵 費 及 服 務
# Postage  Rates  and  Services



香港郵政

Linking people Delivering business  傳 心 意  遞 商 機

## 二 零 一 零 年 十 二 月
# December 2010

**Pos15  附 頁**
**Pos15  Supplement**

**第九部：派遞標準**
**Section 9 : Delivery Standard**

¹ 標準及包裹的派遞標準未能保證，資料只供作參考之用 The delivery standard for letters and parcels are for reference only, as they cannot be guaranteed

* 1 = 星期一 Monday, 2 = 星期二 Tuesday, 3 = 星期三 Wednesday, 4 = 星期四 Thursday, 5 = 星期五 Friday, 6 = 星期六 Saturday 和 7 = 星期日 Sunday

（二零一零年十二月 December 2010）

| 目的地 Destinations | 派遞地區（郵遞區號）Delivery Areas or Localities (Postcodes) | 空郵 Air 信件 Letter | 包裹 Parcel | 平郵 Surface 信件 Letter | 包裹 Parcel | 工作日 Working Days* |
|---|---|---|---|---|---|---|
| 阿富汗 Afghanistan | All | 9 – 10 | 11 – 16 | 35 – 90 | 40 – 90 | 1 – 6 |
| 阿爾巴尼亞 Albania | All | 9 – 14 | 10 – 15 | 65 – 110 | 65 – 110 | 1 – 5 |
| 阿爾及利亞 Algeria | All | 8 – 10 | 9 – 11 | 55 – 95 | 55 – 110 | 6 – 4 |
| 安哥拉 Angola | All | 8 – 12 | 9 – 13 | 70 – 100 | 70 – 105 | 1 – 5 |
| 安圭拉島 Anguilla | All | 9 – 14 | 10 – 15 | 50 – 85 | 50 – 85 | 1 – 5 |
| 安提瓜和巴布達 Antigua and Barbuda | All | 9 – 14 | 10 – 15 | 50 – 90 | 55 – 90 | 1 – 5 |
| 阿根廷 Argentina | All | 6 – 8 | 7 – 9 | 30 – 50 | 30 – 50 | 1 – 6 |
| 亞美尼亞 Armenia | All | 8 – 9 | 9 – 10 | 35 – 65 | 35 – 65 | 1 – 6 |
| 阿森松 Ascension | All | 9 – 14 | (無此服務 No Service) | 65 – 95 | 65 – 95 | 1 – 5 |
| 澳大利區(澳洲) Australia | All | 6 – 7 | 7 – 8 | 25 – 45 | 25 – 50 | 1 – 4 |
| 奧地利 Austria | All | 7 – 8 | 8 – 9 | 35 – 45 | 35 – 65 | 1 – 6 |
| 亞塞拜疆 Azerbaijan | All | 9 – 14 | 10 – 15 | 70 – 100 | 70 – 105 | 1 – 5 |
| 亞速爾 Azores | All | 9 – 12 | 10 – 13 | 55 – 85 | 55 – 85 | 1 – 4 |
| 巴哈馬 Bahamas | All | 5 – 6 | 6 – 7 | 30 – 60 | 30 – 60 | 6 – 4 |
| 巴林 Bahrain | All | 9 – 14 | 10 – 15 | 60 – 95 | 65 – 95 | 1 – 5 |
| 巴利亞里群島 Balearic Islands | All | 6 – 7 | 7 – 8 | 35 – 65 | 35 – 65 | 7 – 4 |
| 孟加拉 Bangladesh | All | 8 – 10 | 10 – 12 | 55 – 90 | 55 – 90 | 6 – 4 |
| 巴巴多斯 Barbados | All | 8 – 10 | 9 – 11 | 40 – 60 | 40 – 65 | 1 – 6 |
| 白俄羅斯 Belarus | All | 9 – 14 | 10 – 15 | 25 – 45 | 25 – 45 | 1 – 5 |
| 比利時 Belgium | All | 9 – 14 | 10 – 15 | 35 – 70 | 40 – 80 | 1 – 5 |
| 伯利茲 Belize | All | 9 – 14 | 10 – 15 | 60 – 90 | 60 – 95 | 1 – 5 |
| 貝寧 Benin | All | 7 – 12 | 8 – 13 | 55 – 90 | 60 – 90 | 1 – 5 |
| 百慕達 Bermuda | Thimphu and suburbs | 8 – 9 | 9 – 10 | 50 – 100 | 50 – 100 | 1 – 6 |
| 不丹 Bhutan | others | 11 – 16 | 12 – 17 | | | |
| 玻利維亞 Bolivia | All | 7 – 10 | (無此服務 No Service) | 55 – 95 | 55 – 90 | 1 – 6 |
| 波斯尼亞及黑塞哥維那 Bosnia and Herzegovina | All | 8 – 10 | 10 – 15 | 60 – 90 | 60 – 90 | 1 – 6 |
| 博茨瓦納 Botswana | All | 6 – 8 | 9 – 11 | 35 – 60 | 35 – 60 | 1 – 5 |
| 巴西 Brazil | All | (無此服務 No Service) | (無此服務 No Service) | 60 – 105 | *65 – 110 Chypre Islands only | 1 – 5 |
| 英屬印度洋地區 British Indian Ocean Territory | All | 7 – 9 | 9 – 10 | 15 – 45 | 15 – 45 | 1 – 4, 6 |
| 文萊 Brunei Darussalam | All | 8 – 9 | 9 – 10 | 60 – 100 | 65 – 105 | 1 – 5 |
| 保加利亞 Bulgaria | All | 9 – 12 | 9 – 13 | 65 – 95 | 65 – 95 | 1 – 5 |
| 布基納法索 Burkina Faso | All | 9 – 11 | 10 – 12 | 60 – 90 | 60 – 95 | 1 – 6 |
| 布隆迪 Burundi | Phnom Penh | 7 – 8 | 11 – 12 | 20 – 50 | 20 – 50 | 1 – 5 |
| 柬埔寨 Cambodia | others | 10 – 12 | 15 – 16 | | | |
| 喀麥隆 Cameroon | All | 7 – 9 | 9 – 11 | 50 – 75 | 50 – 85 | 1 – 5 |
| 加拿大 Canada | All post codes beginning with H, K, L, M, N, P and V | 4 – 5 | 6 – 7 | 25 – 50 | 30 – 50 | 1 – 6 |
| | others | 6 – 11 | 8 – 12 | | | |
| 加那利群島 Canary Islands | All | 9 – 14 | 10 – 15 | 60 – 90 | 60 – 95 | 1 – 5 |
| 佛得角 Cape Verde | All | 10 – 15 | 11 – 16 | 70 – 95 | 70 – 105 | 1 – 5 |
| 加羅林群島 Caroline Islands | All | 9 – 14 | 10 – 15 | 55 – 90 | 55 – 95 | 1 – 5 |
| 開曼群島 Cayman Islands | All | 9 – 14 | 10 – 15 | 65 – 90 | 65 – 100 | 1 – 5 |
| 中非共和國 Central African Republic | All | 11 – 16 | 12 – 16 | 65 – 95 | 65 – 95 | 1 – 6 |
| 乍得 Chad | Abeche, Moundou, Sarh | 13 – 14 | 14 – 15 | | | |
| | Ndjamena | 7 – 9 | 8 – 10 | (無此服務 No Service) | (無此服務 No Service) | 1 – 5 |
| | others | 11 – 12 | 12 – 13 | | | |
| 智利 Chile | All | 9 – 11 | 10 – 12 | 35 – 50 | 35 – 55 | 1 – 5 |
| 中國內地 China, Mainland | 廣州市 Guangzhou | 3 – 4 | 4 – 5 | 6 – 7 | 6 – 8 | |
| | 廣東省內主要城市 Major cities in Guangdong Province | 4 – 8 | 5 – 9 | 6 – 10 | 7 – 11 | |
| | 北京市及上海市 Major cities in Beijing & Shanghai | 3 – 4 | 4 – 5 | 6 – 7 | 6 – 8 | 1 – 5 |
| | 其他省份主要城市 Major cities in other province | 4 – 9 | 5 – 10 | 10 – 20 | 10 – 20 | |
| | 偏遠地區 Remote area | 9 – 14 | 10 – 15 | 30 – 60 | 30 – 65 | |
| 聖誕島 Christmas Island | All | 9 – 14 | 10 – 15 | 55 – 80 | 60 – 90 | 1 – 5 |
| 科科斯群島 Cocos (Keeling) Islands | All | 9 – 14 | 10 – 15 | 60 – 90 | 60 – 90 | 1 – 5 |
| 哥倫比亞 Colombia | All | 8 – 10 | 9 – 11 | 35 – 60 | 35 – 75 | 1 – 6 |
| 科摩羅 Comoros | All | 8 – 12 | 9 – 13 | 65 – 95 | 65 – 95 | 1 – 5 |

| 目的地 Destinations | 派遞地區（郵遞區號）Delivery Areas or Localities (Postcodes) | 空郵 Air 信件 Letter | 包裹 Parcel | 平郵 Surface 信件 Letter | 包裹 Parcel | 工作日 Working Days* |
|---|---|---|---|---|---|---|
| 吉爾吉斯 Kyrgyzstan | All | 8 – 10 | 9 – 11 | 40 – 60 | 50 – 70 | 1 – 6 |
| 老撾 Lao PDR | All | 8 – 10 | 7 – 11 | 25 – 50 | 30 – 50 | 1 – 5 |
| 拉脫維亞 Latvia | All | 8 – 9 | 9 – 10 | 55 – 80 | 55 – 80 | 1 – 6 |
| 黎巴嫩 Lebanon | All | 7 – 12 | 8 – 13 | (無此服務 No Service) | (無此服務 No Service) | 1 – 5 |
| 萊索托 Lesotho | All | 11 – 16 | 12 – 17 | 65 – 95 | 65 – 100 | 1 – 6 |
| 利比里亞 Liberia | All | 9 – 15 | 10 – 15 | 55 – 90 | 60 – 100 | 1 – 5 |
| 利比亞 Libyan Arab Jamahiriya (Libya) | All | 10 – 15 | 11 – 16 | 55 – 90 | 60 – 100 | 6 – 3 |
| 列支敦士登 Liechtenstein | All | 9 – 14 | 10 – 15 | 40 – 60 | 40 – 65 | 1 – 6 |
| 立陶宛 Lithuania (Rep. of) | All | 9 – 14 | 10 – 15 | 40 – 60 | 40 – 65 | 1 – 5 |
| 盧森堡 Luxembourg | All | 8 – 7 | 9 – 8 | 30 – 45 | 30 – 45 | 1 – 5 |
| 澳門 Macau | All | (無此服務 No Service) | (無此服務 No Service) | 2 – 5 | 3 – 6 | 1 – 6 |
| 馬其頓 Macedonia | All | 9 – 14 | 11 – 11 | 50 – 85 | 55 – 95 | 1 – 5 |
| 馬達加斯加 Madagascar (Dem. Rep. of) | All | 9 – 12 | 11 – 14 | 55 – 90 | 55 – 90 | 1 – 5 |
| 馬德拉 Madeira | All | 9 – 14 | 10 – 15 | 70 – 95 | 70 – 100 | 1 – 5 |
| 馬拉維 Malawi | All | 9 – 14 | 10 – 15 | 55 – 90 | 60 – 100 | 1 – 5 |
| 馬來西亞 Malaysia | Peninsular Malaysia | 5 – 7 | 6 – 8 | 10 – 30 | 10 – 30 | 1 – 5 |
| | others | 6 – 8 | 7 – 9 | 15 – 40 | 15 – 40 | |
| 馬爾代夫 Maldives (Rep. of) | All | 9 – 10 | 9 – 11 | 50 – 85 | 55 – 90 | 6 – 4 |
| 馬里 Mali | All | 9 – 14 | 10 – 15 | 65 – 85 | 65 – 90 | 1 – 5 |
| 馬耳他 Malta | All | 8 – 9 | 9 – 10 | 30 – 65 | 30 – 65 | 1 – 5 |
| 馬里亞納群島 Mariana Islands | All | 8 – 13 | 9 – 14 | 25 – 65 | 25 – 70 | 1 – 5 |
| 馬紹爾群島 Marshall Islands | All | 9 – 14 | 10 – 15 | 40 – 65 | 45 – 80 | 1 – 5 |
| 毛里塔尼亞 Mauritania | All | 9 – 14 | 10 – 15 | 60 – 90 | 65 – 100 | 6 – 3 |
| 毛里求斯 Mauritius | All | 5 – 8 | 7 – 9 | 20 – 55 | 20 – 55 | 1 – 5 |
| 墨西哥 Mexico | All | 7 – 9 | 8 – 10 | 30 – 45 | 35 – 50 | 1 – 6 |
| 摩爾多瓦 Moldova (Rep. of) | All | 7 – 10 | 8 – 11 | 40 – 60 | 40 – 60 | 1 – 5 |
| 摩納哥 Monaco | All | 9 – 14 | 10 – 15 | 60 – 90 | 60 – 90 | 1 – 5 |
| 蒙古 Mongolia | All | 8 – 11 | (無此服務 No Service) | 40 – 50 | (無此服務 No Service) | 1 – 5 |
| 黑山(共和國) Montenegro (Rep. of) | All | 9 – 10 | 9 – 11 | 60 – 90 | 65 – 95 | 1 – 5 |
| 蒙特塞拉特 Montserrat | All | 9 – 14 | 10 – 15 | 65 – 90 | 70 – 100 | 1 – 5 |
| 摩洛哥 Morocco | All | 6 – 7 | 8 – 10 | 50 – 80 | 50 – 80 | 1 – 5 |
| 莫桑比克 Mozambique | All | 8 – 13 | 9 – 14 | 50 – 85 | 50 – 85 | 1 – 5 |
| 緬甸 Myanmar (Union of) | All | 6 – 7 | 6 – 8 | 20 – 50 | 20 – 50 | 1 – 6 |
| 納米比亞 Namibia | All | 8 – 9 | 10 – 12 | 60 – 90 | 60 – 95 | 1 – 6 |
| 瑙魯 Nauru Islands | All | 9 – 14 | 10 – 15 | 50 – 80 | 65 – 80 | 1 – 5 |
| 尼泊爾 Nepal | All | 5 – 7 | 6 – 8 | 40 – 85 | 40 – 85 | 1 – 5 |
| 荷蘭 Netherlands | All | 5 – 6 | 6 – 6 | 25 – 45 | 25 – 45 | 1 – 5 |
| 荷屬安的列斯及阿魯巴 Netherlands Antilles and Aruba | All | 5 – 7 | 6 – 8 | 30 – 60 | 35 – 60 | 1 – 5 |
| 新喀里多尼亞 New Caledonia | All | 10 – 11 | 12 – 13 | 45 – 80 | 45 – 90 | 1 – 5 |
| 新西蘭 New Zealand | All | 5 – 6 | 6 – 7 | 20 – 45 | 25 – 50 | 1 – 6 |
| 新西蘭屬土 New Zealand Islands Territories | All | 9 – 14 | 10 – 15 | 55 – 100 | 60 – 100 | 1 – 5 |
| 尼加拉瓜 Nicaragua | All | 9 – 14 | 10 – 15 | 40 – 65 | 55 – 90 | 1 – 6 |
| 尼日爾 Niger Republic | All | 9 – 14 | 10 – 15 | 65 – 100 | 65 – 100 | 1 – 5 |
| 尼日利亞 Nigeria | All | 5 – 7 | 8 – 9 | 50 – 80 | 55 – 85 | 1 – 6 |
| 諾福克島 Norfolk Island | All | 9 – 14 | 10 – 15 | 55 – 90 | 55 – 90 | 1 – 5 |
| 挪威 Norway | All | 5 – 7 | 7 – 10 | 40 – 45 | 30 – 45 | 1 – 5 |
| 阿曼 Oman, Sultanate of | All | 6 – 9 | 7 – 10 | 25 – 70 | 30 – 70 | 6 – 4 |
| 巴基斯坦 Pakistan | All | 5 – 9 | 7 – 10 | 20 – 40 | 20 – 45 | 6 – 4 |
| 巴拿馬 Panama (Rep. of) | All | 7 – 10 | 11 – 14 | 40 – 65 | 40 – 70 | 1 – 5 |
| 巴布亞新畿內亞 Papua New Guinea | All | 8 – 10 | 13 – 15 | 40 – 65 | 50 – 75 | 1 – 5 |
| 巴拉圭 Paraguay | All | 8 – 9 | 10 – 11 | 35 – 75 | 35 – 75 | 1 – 6 |
| 秘魯 Peru | All | 7 – 8 | 8 – 11 | 55 – 80 | 55 – 85 | 1 – 5 |
| 菲律賓 Philippines | All | 6 – 7 | 7 – 12 | 12 – 45 | 15 – 50 | 1 – 5 |
| 皮特凱恩島 Pitcairn Islands | All | 9 – 14 | 10 – 15 | 55 – 80 | 60 – 100 | 1 – 5 |
| 波蘭 Poland | All | 8 – 9 | 10 – 11 | 30 – 60 | 30 – 60 | 1 – 5 |
| 葡萄牙 Portugal | All | 5 – 7 | 7 – 9 | 30 – 45 | 30 – 50 | 1 – 5 |
| 波多黎各 Puerto Rico | All | 9 – 14 | 10 – 15 | 40 – 90 | 45 – 95 | 1 – 5 |

| Country | Region | | | | | |
|---|---|---|---|---|---|---|
| 刚果(民主共和国) Congo (Dem. Rep. of the) | All | 11 - 12 | 12 - 13 | 55 - 95 | 60 - 100 | 1 - 5 |
| 刚果 Congo (Republic of) | All | 10 - 15 | 11 - 16 | 50 - 80 | 60 - 90 | 1 - 5 |
| 科西嘉岛 Corsica | All | 9 - 14 | 10 - 15 | 60 - 90 | 65 - 100 | 1 - 5 |
| 哥斯达黎加 Costa Rica | All | 9 - 14 | 10 - 15 | 35 - 70 | 35 - 75 | 1 - 6 |
| 科特迪瓦(象牙海岸) Cote d'Ivoire (Ivory Coast) | All | 8 - 10 | 11 - 13 | 50 - 80 | 55 - 85 | 1 - 5 |
| 克罗地亚 Croatia | All | 8 - 9 | 9 - 10 | 55 - 90 | 60 - 85 | 1 - 5 |
| 古巴 Cuba | All | 10 - 12 | 13 - 16 | 55 - 85 | 65 - 95 | 1 - 5 |
| 塞浦路斯 Cyprus | All | 5 - 8 | 6 - 7 | 25 - 40 | 25 - 40 | 1 - 5 |
| 捷克 Czech Republic | All | 8 - 9 | 9 - 10 | 35 - 60 | 40 - 65 | 1 - 5 |
| 丹麦 Denmark | All | 5 - 6 | 6 - 7 | 30 - 90 | 30 - 55 | 1 - 5 |
| 吉布提 Djibouti | All | 10 - 15 | 11 - 16 | 50 - 90 | 55 - 95 | 6 - 4 |
| 多米尼加 Dominica | All | 9 - 11 | 10 - 12 | 60 - 85 | 65 - 90 | 1 - 5 |
| 多米尼加共和国 Dominican Republic | All | 8 - 13 | 9 - 14 | 35 - 70 | 40 - 75 | 1 - 5 |
| 东帝汶 East Timor | All | 10 - 15 | 11 - 16 | 50 - 80 | 50 - 80 | 1 - 5 |
| 厄瓜多尔 Ecuador | All | 9 - 10 | 10 - 11 | 40 - 60 | 40 - 70 | 1 - 6 |
| 埃及 Egypt | All | 6 - 8 | 8 - 9 | 25 - 50 | 25 - 55 | 1 - 5 |
| 萨尔瓦多 El Salvador | All | 8 - 9 | 9 - 10 | 35 - 65 | 45 - 80 | 1 - 5 |
| 赤道几内亚 Equatorial Guinea (Rep. of) | All | 11 - 16 | 12 - 17 | 65 - 80 | 65 - 80 | 1 - 5 |
| 厄立特里亚 Eritrea | All | 9 - 13 | 10 - 14 | 55 - 100 | 55 - 100 | 1 - 5 |
| 爱沙尼亚 Estonia (Rep. of) | All | 8 - 9 | 9 - 10 | 55 - 80 | 60 - 95 | 1 - 6 |
| 埃塞俄比亚 Ethiopia | All | 6 - 8 | 7 - 9 | 40 - 60 | 40 - 65 | 1 - 5 |
| 福克兰群岛(包括属地) Falkland Islands (inc. Dependencies) | All | 9 - 14 | 10 - 15 | 65 - 90 | 70 - 100 | 1 - 5 |
| 法罗群岛 Faroe Islands | All | 9 - 14 | 10 - 15 | 40 - 70 | 40 - 70 | 1 - 5 |
| 斐济 Fiji | All | 7 - 9 | 7 - 9 | 35 - 65 | 35 - 70 | 1 - 5 |
| 芬兰 Finland | All | 6 - 8 | 8 - 9 | 30 - 65 | 30 - 70 | 1 - 5 |
| 法国 France | All | 6 | 7 | 25 - 45 | 25 - 45 | 1 - 6 |
| 法属圭亚那 French Guiana | All | 11 - 16 | 12 - 17 | 55 - 85 | 55 - 85 | 1 - 5 |
| 法属波利尼西亚 French Polynesia | All | 10 - 14 | 10 - 15 | 45 - 65 | 50 - 70 | 1 - 5 |
| 法属印度群岛 French West Indies | All | 9 - 14 | 10 - 15 | 65 - 100 | 65 - 100 | 1 - 5 |
| 加蓬 Gabon | All | 9 - 13 | 10 - 14 | 65 - 100 | 65 - 100 | 1 - 5 |
| 冈比亚 Gambia | All | 9 - 14 | 10 - 15 | 60 - 90 | 70 - 100 | 1 - 5 |
| 加沙及汗尤尼斯 Gaza and Khan Yunis | All | 9 - 14 | 10 - 15 | 55 - 90 | 55 - 90 | 7 - 4 |
| 格鲁吉亚 Georgia (Rep. of) | All | 9 - 11 | 10 - 12 | 40 - 60 | 50 - 85 | 1 - 5 |
| 德国 Germany | All | 5 - 6 | 6 - 7 | 25 - 45 | 25 - 45 | 1 - 6 |
| 加纳 Ghana | All | 5 - 7 | 6 - 9 | 55 - 85 | 55 - 85 | 1 - 5 |
| 直布罗陀 Gibraltar | All | 8 - 9 | 10 - 11 | 50 - 80 | 50 - 80 | 1 - 5 |
| 希腊 Greece | All | 6 - 7 | 7 - 8 | 20 - 35 | 20 - 40 | 1 - 5 |
| 格陵兰 Greenland | All | 9 - 14 | 10 - 15 | 35 - 70 | 45 - 90 | 1 - 5 |
| 格林纳达 Grenada | All | 9 - 14 | 10 - 16 | 50 - 70 | 70 - 100 | 1 - 6 |
| 危地马拉 Guatemala | All | 10 - 16 | 9 - 11 | 55 - 85 | 65 - 85 | 1 - 5 |
| 几内亚 Guinea (Rep. of) | All | 9 - 14 | 10 - 15 | 55 - 100 | 60 - 120 | 1 - 5 |
| 几内亚比绍 Guinea Bissau (Rep. of) | All | 11 - 12 | 12 - 13 | 65 - 90 | 65 - 90 | 1 - 5 |
| 圭亚那 Guyana | All | 7 - 9 | 10 - 15 | 55 - 90 | 55 - 90 | 1 - 6 |
| 海地 Haiti | All | 8 - 11 | 10 - 15 | 60 - 85 | 60 - 95 | 1 - 5 |
| 洪都拉斯 Honduras (Rep. of) | All | 9 - 14 | 10 - 15 | 55 - 90 | 60 - 90 | 1 - 5 |
| 匈牙利 Hungary | All | 8 - 9 | 9 - 11 | 30 - 45 | 35 - 50 | 1 - 5 |
| 冰岛 Iceland | All | 7 - 10 | 9 - 11 | 30 - 55 | 30 - 55 | 1 - 5 |
| 印度 India | Calcutta, Mumbai | 6 - 7 | 7 - 11 | 15 - 50 | 15 - 50 | 1 - 6 |
| | others | 8 - 11 | 9 - 12 | 15 - 50 | 15 - 50 | 1 - 6 |
| 印度尼西亚 Indonesia | All | 6 - 9 | 9 - 12 | 15 - 50 | 15 - 50 | 1 - 6 |
| 伊朗 Iran | All | 6 - 8 | 7 - 9 | 25 - 45 | 25 - 45 | 1 - 5 |
| 伊拉克 Iraq | All | 9 - 12 | 11 - 16 | [设契:无Service] | [设契:无Service] | |
| 爱尔兰 Ireland | All | 5 - 7 | 6 - 8 | 30 - 45 | 30 - 50 | 6 - 3 |
| 以色列 Israel | All | 7 - 12 | 8 - 13 | 25 - 50 | 30 - 55 | 7 - 4 |
| 意大利 Italy | All | 5 - 6 | 6 - 7 | 25 - 40 | 25 - 40 | 1 - 5 |
| 牙买加 Jamaica | All | 7 - 9 | 10 - 11 | 35 - 70 | 40 - 70 | 1 - 5 |
| 日本 Japan | All | 5 - 7 | 6 - 8 | 15 - 45 | 15 - 45 | 1 - 6 |
| 约旦 Jordan | All | 5 - 7 | 8 - 10 | 25 - 55 | 25 - 60 | 6 - 4 |
| 哈萨克 Kazakhstan | All | 9 - 14 | 10 - 15 | 45 - 60 | 60 - 70 | 1 - 5 |
| 肯尼亚 Kenya | All | 5 - 9 | 6 - 10 | 45 - 75 | 45 - 80 | 1 - 6 |
| 基里巴斯 Kiribati | All | 7 - 10 | 8 - 11 | 45 - 80 | 45 - 90 | 1 - 5 |
| 北朝鲜 Korea, North | All | 9 - 14 | 10 - 15 | 45 - 65 | 45 - 70 | 1 - 5 |
| 南朝鲜 Korea, South | All | 5 - 7 | 7 - 8 | 10 - 45 | 10 - 45 | 1 - 5 |
| 科威特 Kuwait | All | 5 - 7 | 7 - 8 | 35 - 65 | 35 - 65 | 6 - 4 |

| Country | Region | | | | | |
|---|---|---|---|---|---|---|
| 卡塔尔 Qatar (State of) | All | 5 - 7 | 6 - 8 | 35 - 50 | 35 - 50 | 6 - 4 |
| 留尼汪 Réunion | All | 8 - 14 | 12 - 17 | 35 - 70 | 35 - 70 | 1 - 5 |
| 罗马尼亚 Romania | All | 8 - 9 | 9 - 10 | 50 - 65 | 55 - 70 | 1 - 5 |
| 俄罗斯(俄国联邦) Russia (Russian Federation) | All | 9 - 14 | 10 - 15 | 35 - 65 | 40 - 70 | 1 - 5 |
| 卢旺达 Rwanda | All | 9 - 14 | 10 - 15 | 60 - 90 | 60 - 95 | 1 - 5 |
| 萨摩亚(美国属地) Samoa(USA Territory) | All | 10 - 12 | 11 - 13 | 65 - 90 | 65 - 90 | 1 - 5 |
| 圣多美及普林西比 Sao Tomé and Principe (Rep. of) | All | 10 - 15 | 11 - 16 | 70 - 100 | 70 - 105 | 1 - 5 |
| 沙特阿拉伯 Saudi Arabia | All | 5 - 7 | 6 - 8 | 25 - 40 | 25 - 40 | 6 - 3 |
| 塞内加尔 Senegal | All | 8 - 9 | 9 - 11 | 50 - 75 | 50 - 85 | 1 - 5 |
| 塞尔维亚(共和国) Serbia (Rep. of) | All | 8 - 10 | 9 - 11 | 60 - 90 | 65 - 95 | 6 - 4 |
| 塞舌尔 Seychelles | All | 5 - 7 | 6 - 8 | 55 - 80 | 55 - 80 | 1 - 5 |
| 塞拉利昂 Sierra Leone | All | 9 - 12 | 10 - 13 | 55 - 85 | 55 - 85 | 1 - 5 |
| 新加坡 Singapore | All | 3 - 5 | 4 - 6 | 10 - 25 | 10 - 30 | 1 - 6 |
| 斯洛伐克(共和国) Slovak Republic (Slovakia) | All | 8 - 9 | 9 - 10 | 25 - 45 | 30 - 50 | 1 - 5 |
| 斯洛文尼亚 Slovenia (Rep. of) | All | 7 - 8 | 8 - 9 | 55 - 80 | 55 - 85 | 1 - 6 |
| 所罗门群岛 Solomon Islands | All | 9 - 10 | 9 - 12 | 40 - 65 | 45 - 75 | 1 - 5 |
| 索马里 Somalia Democratic Republic | All | 10 - 15 | 11 - 16 | [设契:无Service] | [设契:无Service] | 1 - 5 |
| 南非 South Africa (Rep. of) | All | 6 - 8 | 8 - 9 | 25 - 40 | 25 - 45 | 1 - 5 |
| 西班牙 Spain | All | 5 - 7 | 7 - 8 | 25 - 40 | 25 - 40 | 1 - 5 |
| 北非的西班牙属地 Spanish Territories of North Africa | All | 9 - 14 | 10 - 15 | 60 - 95 | 65 - 95 | 1 - 5 |
| 斯匹次卑尔根群岛 Spitsbergen | All | 9 - 14 | 10 - 15 | 35 - 60 | 35 - 65 | 1 - 5 |
| 斯里兰卡 Sri Lanka (Rep. of) | All | 5 - 7 | 6 - 8 | 25 - 60 | 25 - 65 | 1 - 6 |
| 圣克里斯托弗及尼维斯 St. Christopher (St. Kitts) and Nevis | All | 8 - 9 | 9 - 11 | 60 - 85 | 70 - 90 | 1 - 5 |
| 圣赫勒拿岛 St. Helena | All | 9 - 14 | 10 - 15 | 50 - 90 | 55 - 100 | 1 - 5 |
| 圣卢西亚岛 St. Lucia | All | 8 - 10 | 10 - 11 | 60 - 85 | 70 - 90 | 1 - 5 |
| 圣皮埃尔和密克隆群岛 St. Pierre and Miquelon | All | 9 - 14 | 10 - 15 | 60 - 85 | 65 - 90 | 1 - 5 |
| 圣文森特和格林纳丁斯 St. Vincent and the Grenadines | All | 9 - 13 | 9 - 14 | 30 - 70 | 35 - 70 | 6 - 4 |
| 苏丹 Sudan | All | 10 - 12 | 12 - 17 | 40 - 85 | 45 - 90 | 1 - 5 |
| 苏里南 Suriname (Rep. of) | All | 10 - 12 | 11 - 13 | 60 - 90 | 60 - 90 | 1 - 6 |
| 斯威士兰 Swaziland | All | 5 | 6 | 30 - 60 | 30 - 60 | 1 - 5 |
| 瑞典 Sweden | All | 5 | 6 | 30 - 60 | 30 - 60 | 1 - 5 |
| 瑞士 Switzerland | All | 5 | 6 | 35 - 50 | 35 - 55 | 1 - 5 |
| 叙利亚阿拉伯共和国(叙利亚) Syrian Arab Republic (Syria) | All | 7 - 9 | 8 - 10 | 30 - 65 | 30 - 65 | 7 - 4 |
| 台湾 Taiwan | All | 4 - 7 | 6 - 9 | 10 - 15 | 10 - 20 | 1 - 5 |
| 塔吉克 Tajikistan (Rep. of) | All | 9 - 14 | 10 - 15 | 45 - 65 | 50 - 85 | 1 - 5 |
| 坦桑尼亚 Tanzania | All | 8 - 11 | 9 - 12 | 30 - 50 | 35 - 75 | 1 - 6 |
| 泰国 Thailand | All | 5 - 6 | 6 - 8 | 10 - 35 | 16 - 35 | 1 - 6 |
| 多哥 Togo | All | 8 - 9 | 10 - 15 | 60 - 90 | 65 - 95 | 1 - 5 |
| 汤加 Tonga | All | 9 - 14 | 10 - 15 | 60 - 100 | 75 - 120 | 1 - 5 |
| 特里尼达和多巴哥(共和国) Trinidad and Tobago (Rep. of) | All | 10 - 15 | 11 - 16 | 35 - 70 | 40 - 75 | 1 - 5 |
| 特里斯坦·达库尼亚岛 Tristan da Cunha | All | 9 - 14 | 10 - 15 | 65 - 95 | 65 - 100 | 1 - 5 |
| 突尼斯 Tunisia | All | 8 - 9 | 9 - 10 | 30 - 60 | 30 - 65 | 6 - 4 |
| 土耳其 Turkey | All | 8 - 10 | 9 - 11 | 30 - 50 | 35 - 60 | 1 - 5 |
| 土库曼 Turkmenistan | All | 8 - 10 | 9 - 11 | 40 - 60 | 50 - 70 | 1 - 6 |
| 特克斯和凯科斯群岛 Turks and Caicos Islands | All | 9 - 14 | 10 - 15 | 55 - 95 | 65 - 100 | 1 - 5 |
| 图瓦卢 Tuvalu | All | 9 - 14 | 10 - 15 | 55 - 80 | 65 - 90 | 1 - 5 |
| 乌干达 Uganda | All | 9 - 12 | 9 - 13 | 55 - 100 | 70 - 105 | 1 - 6 |
| 乌克兰 Ukraine | All | 9 - 10 | 11 - 12 | 45 - 60 | 50 - 70 | 1 - 6 |
| 阿拉伯联合酋长国 United Arab Emirates | All | 5 - 6 | 6 - 8 | 20 - 40 | 25 - 45 | 6 - 4 |
| 英国 United Kingdom | All | 5 - 7 | 6 - 8 | 30 - 45 | 30 - 45 | 1 - 5 |
| 美国 United States of America | All | 5 - 16 | 6 - 17 | 25 - 40 | 25 - 40 | 1 - 5 |
| 乌拉圭 Uruguay | All | 9 - 14 | 10 - 15 | 55 - 100 | 60 - 100 | 1 - 5 |
| 乌兹别克(共和国) Uzbekistan (Rep. of) | All | 9 - 14 | 10 - 15 | 45 - 65 | 55 - 70 | 1 - 6 |
| 瓦努阿图 Vanuatu (The Rep. of) | All | 7 - 8 | 8 - 9 | 40 - 90 | 40 - 90 | 1 - 5 |
| 梵蒂冈 Vatican City State | All | 5 - 6 | 6 - 8 | 35 - 70 | 35 - 70 | 1 - 6 |
| 委内瑞拉 Venezuela | All | 7 - 9 | 8 - 10 | 55 - 85 | 65 - 95 | 1 - 5 |
| 越南 Vietnam | All | 4 - 6 | 6 - 8 | 10 - 40 | 10 - 40 | 1 - 5 |
| 美属维尔京群岛 Virgin Islands of the U.S.A. | All | 9 - 14 | 10 - 15 | 65 - 90 | 65 - 90 | 1 - 5 |
| 威克岛 Wake Island | All | 9 - 14 | 10 - 15 | 65 - 90 | 65 - 90 | 1 - 5 |
| 瓦利斯和富图纳群岛 Wallis and Futuna Islands | All | 10 - 15 | 11 - 16 | 55 - 80 | 50 - 90 | 1 - 5 |
| 西萨摩亚 Western Samoa | All | 9 - 14 | 10 - 15 | 60 - 100 | 65 - 115 | 1 - 5 |
| 也门 Yemen (Rep. of) | All | 7 - 9 | 9 - 10 | 35 - 80 | 40 - 80 | 1 - 5 |
| 赞比亚 Zambia | All | 9 - 12 | 10 - 13 | 55 - 85 | 55 - 85 | 1 - 5 |
| 津巴布韦 Zimbabwe | All | 8 - 9 | 9 - 10 | 50 - 80 | 50 - 80 | 1 - 5 |

**第九部 Section 9：空郵截郵時間　Air Mail Latest Times of Posting**　　　（二零一零年十二月　December 2010）

在郵政總局、尖沙咀郵政局、九龍中央郵政局及國際郵件中心郵遞處投寄普通航空信件的最新時間
（掛號郵件及包裹的截郵時間通常比下面所列時間提早一小時）
Latest times of posting of ordinary air letter mails at the General Post Office, Tsim Sha Tsui Post Office, Kowloon Central Post Office and International Mail Centre Post Office (Latest posting times for registered items and parcels are normally one hour earlier than the times shown)

| 目的地 Destinations | 星期一 Mon | 星期二 Tue | 星期三 Wed | 星期四 Thu | 星期五 Fri | 星期六 Sat | 星期日 Sun |
|---|---|---|---|---|---|---|---|
| 阿富汗 Afghanistan | noon | noon | noon | noon | noon | noon | - |
| 阿爾巴尼亞 Albania | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 阿爾及利亞 Algeria | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 安哥拉 Angola | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 安圭拉島 Anguilla | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 安提瓜及巴布達 Antigua and Barbuda | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 阿根廷 Argentina | 5pm | 5pm | noon | 5pm | noon | 5pm | - |
| 亞美利亞 Armenia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 阿森松 Ascension | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 澳大利亞(澳洲) Australia | | | | | | | |
| 西澳大利亞 Western Australia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 其他省份 All other states | noon | noon | noon | noon | noon | noon | - |
| 奧地利 Austria | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 亞塞拜疆 Azerbaijan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 亞速爾 Azores | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴哈馬 Bahamas | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴林 Bahrain | noon | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴利阿里群島 Baleares Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 孟加拉 Bangladesh | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴巴多斯 Barbados | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 白俄羅斯 Belarus | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 比利時 Belgium | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 伯利茲 Belize | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 貝寧 Benin | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 百慕達 Bermuda | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 不丹 Bhutan | noon | noon | noon | noon | noon | noon | - |
| 玻利維亞 Bolivia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 波斯尼亞-黑塞哥維那 Bosnia and Herzegovina | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 博茨瓦納 Botswana | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴西 Brazil | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 英屬印度洋地區 British Indian Ocean Territory | 不設空郵服務 No airmail service | | | | | | |
| 文萊 Brunei Darussalam | noon | noon | noon | noon | noon | noon | - |
| 保加利亞 Bulgaria | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 布基納法索 Burkina Faso | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 布隆迪 Burundi | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 柬埔寨 Cambodia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 喀麥隆 Cameroon | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 萊索托 Lesotho | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 利比里亞 Liberia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 利比亞 Libyan Arab Jamahiriya (Libya) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 列支敦士登 Liechtenstein | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 立陶宛 Lithuania (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 盧森堡 Luxembourg | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 澳門 Macau | 不設空郵服務 No airmail service | | | | | | |
| 馬其頓 Macedonia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬達加斯加 Madagascar (Dem. Rep of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬德拉 Madeira | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬拉維 Malawi | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬來西亞 Malaysia | | | | | | | |
| 半島馬來西亞 Peninsular Malaysia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 沙巴 Sabah | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 沙撈越 Sarawak | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬爾代夫 Maldives (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬里 Mali | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬里亞納群島 Mariana Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 馬紹爾群島 Marshall Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 毛里塔尼亞 Mauritania | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 毛里求斯 Mauritius | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 墨西哥 Mexico | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 摩爾多瓦 Moldova (Rep. of) | noon | noon | noon | noon | noon | noon | - |
| 摩納哥 Monaco | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 蒙古 Mongolia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 黑山(共和國) Montenegro (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 蒙特塞拉特 Montserrat | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 摩洛哥 Morocco | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 莫桑比克 Mozambique | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 緬甸 Myanmar (Union of) | noon | noon | noon | noon | noon | noon | - |
| 納米比亞 Namibia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 瑙魯群島 Nauru Islands | | | | | | | |
| 尼泊爾 Nepal | - | - | - | noon | - | noon | - |
| 荷蘭 Netherlands | noon | noon | noon | noon | noon | noon | - |
| 荷屬安的列斯及阿魯巴 Netherlands Antilles and Aruba | | | | | | | |
| 荷屬安的列斯 Netherlands Antilles | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |

| Country | | | | | | | |
|---|---|---|---|---|---|---|---|
| 加拿大 Canada | noon | noon | noon | noon | noon | noon | - |
| 加那利群島 Canary Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 佛得角 Cape Verde | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 加羅林群島 Caroline Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 開曼群島 Cayman Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 中非共和國 Central African Republic | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 乍得 Chad | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 智利 Chile | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 中國內地 China, Mainland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 聖誕島 Christmas Island | noon | noon | noon | noon | noon | noon | - |
| 科科斯群島 Cocos (Keeling) Islands | noon | noon | noon | noon | noon | noon | - |
| 哥倫比亞 Colombia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 科摩羅 Comoros | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 剛果(民主共和國) Congo (Dem. Rep. of the) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 剛果 Congo (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 科西嘉島 Corsica | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 哥斯達黎加 Costa Rica | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 科特迪瓦(象牙海岸) Côte d'Ivoire (Ivory Coast) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 克羅地亞 Croatia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 古巴 Cuba | | | | | | | |
| 關塔那摩灣 Guantanamo Bay | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 其他地方 Other places | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 塞浦路斯 Cyprus | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 捷克 Czech Republic | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 丹麥 Denmark | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 吉布提 Djibouti | 5pm | | | | | | |
| 多米尼加 Dominica | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 多米尼加共和國 Dominican Republic | | | 5pm | 5pm | 5pm | 5pm | - |
| 東帝汶 East Timor | noon | noon | noon | noon | noon | noon | - |
| 厄瓜多爾 Ecuador | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 埃及 Egypt | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 薩爾瓦多 El Salvador | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 赤道幾內亞 Equatorial Guinea (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 厄立特里亞 Eritrea | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 愛沙尼亞 Estonia (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 埃塞俄比亞 Ethiopia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 福克蘭群島(包括屬地) Falkland Islands (inc. Dependencies) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 法羅群島 Faroe Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 斐濟 Fiji | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 芬蘭 Finland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 法國 France | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 法屬圭亞那 French Guiana | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 法屬波利尼西亞 French Polynesia | - | noon | 5pm | 5pm | - | 5pm | - |
| 法屬西印度群島 French West Indies | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 瓜德羅普島 Guadeloupe | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |

| Country | | | | | | | |
|---|---|---|---|---|---|---|---|
| 阿魯巴 Aruba | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 新喀里多尼亞 New Caledonia | noon | noon | noon | noon | noon | noon | - |
| 新西蘭 New Zealand | noon | 5pm | noon | 5pm | noon | noon | - |
| 新西蘭屬土島嶼 New Zealand Islands Territories | noon | noon | noon | noon | noon | noon | - |
| 尼加拉瓜 Nicaragua | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 尼日爾 Niger Republic | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 尼日利亞 Nigeria | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 諾福克島 Norfolk Islands | noon | noon | noon | noon | noon | noon | - |
| 挪威 Norway | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 阿曼 Oman, Sultanate of | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴基斯坦 Pakistan | noon | 5pm | noon | 5pm | noon | noon | - |
| 巴拿馬 Panama (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴布亞新幾內亞 Papua New Guinea | - | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 巴拉圭 Paraguay | 5pm | noon | 5pm | noon | 5pm | 5pm | - |
| 秘魯 Peru | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 菲律賓 Philippines | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 皮特凱恩島 Pitcairn Islands | noon | noon | noon | noon | noon | noon | - |
| 波蘭 Poland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 葡萄牙 Portugal | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 波多黎各 Puerto Rico | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 卡塔爾 Qatar (State of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 留尼汪島 Réunion | 5pm | | 5pm | | 5pm | | - |
| 羅馬尼亞 Romania | 5pm | - | 5pm | - | 5pm | - | - |
| 俄羅斯(俄羅斯聯邦) Russia (Russian Federation) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 盧旺達 Rwanda | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 薩摩亞(美國屬土) Samoa (USA Territory) | noon | noon | noon | noon | noon | noon | - |
| 聖多美及普林西比 Sao Tomé and Principe (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 沙地阿拉伯 Saudi Arabia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 塞內加爾 Senegal | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 塞爾維亞(共和國) Serbia (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 塞舌爾 Seychelles | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 塞拉利昂 Sierra Leone | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 新加坡 Singapore | noon | noon | noon | noon | noon | noon | - |
| 斯洛伐克(共和國) Slovak Republic (Slovakia) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 斯洛文尼亞 Slovenia (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 所羅門群島 Solomon Islands | noon | noon | noon | noon | noon | noon | - |
| 索馬里 Somalia Democratic Republic | 5pm | - | - | - | - | - | - |
| 南非 South Africa (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 西班牙 Spain | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 北非西班牙領土 Spanish Territories of North Africa | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 斯匹次卑爾根群島 Spitsbergen | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 斯里蘭卡 Sri Lanka (Rep. of) | noon | noon | noon | noon | noon | noon | - |
| 聖克里斯托佛島及尼維斯群島 St. Christopher (St. Kitts) and Nevis | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 聖赫勒拿島 St. Helena | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 聖盧西亞 St. Lucia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |

| | | | | | | |
|---|---|---|---|---|---|---|
| 馬提尼克島 Martinique | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 加蓬 Gabon | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 岡比亞 Gambia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 加沙及汗尤尼斯 Gaza and Khan Yunis | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 格魯吉亞 Georgia (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 德國 Germany | noon | noon | noon | noon | noon | noon | - |
| 加納 Ghana | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 直布羅陀 Gibraltar | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 希臘 Greece | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 格陵蘭 Greenland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 格林納達 Grenada | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 危地馬拉 Guatemala | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 畿內亞 Guinea (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 畿內亞比紹 Guinea Bissau (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 圭亞那 Guyana | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 海地 Haiti | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 洪都拉斯 Honduras (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 匈牙利 Hungary | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 冰島 Iceland | 5pm | 5pm | | | 5pm | 5pm | - |
| 印度 India | | | | | | | |
| 孟買 Mumbai | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 其他地方 All other places | noon | noon | noon | noon | noon | noon | - |
| 印度尼西亞 Indonesia | noon | noon | noon | noon | noon | noon | - |
| 伊朗 Iran | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 伊拉克 Iraq | 6pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 愛爾蘭 Ireland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 以色列 Israel | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 意大利 Italy | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 牙買加 Jamaica | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 日本 Japan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 琉球群島 Ryukyu Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 約旦 Jordan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 哈薩克 Kazakhstan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 肯尼亞 Kenya | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 基里巴斯 Kiribati | noon | 5pm | noon | 5pm | noon | noon | - |
| 北韓 Korea , North | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 南韓 Korea , South | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 科威特 Kuwait | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 吉爾吉斯 Kyrgyzstan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 老撾 Lao PDR | noon | noon | noon | noon | noon | noon | - |
| 拉脫維亞 Latvia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 黎巴嫩 Lebanon | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 聖皮埃爾和密克隆群島 St. Pierre and Miquelon | noon | noon | noon | noon | noon | noon | - |
| 聖文森特和格林納丁斯 St. Vincent and the Grenadines | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 蘇丹 Sudan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 蘇里南 Suriname (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 斯威士蘭 Swaziland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 瑞典 Sweden | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 瑞士 Switzerland | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 阿拉伯敘利亞共和國(敘利亞) Syrian Arab Republic (Syria) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 台灣 Taiwan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 塔吉克 Tajikstan (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 坦桑尼亞 Tanzania | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 泰國 Thailand | noon | noon | noon | noon | noon | noon | - |
| 多哥 Togo | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 湯加 Tonga | noon | noon | noon | noon | noon | noon | - |
| 托圖拉拉島(英屬處女群島) Tortola (British Virgin Islands) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 千里達和多巴哥 Trinidad and Tobago (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 特里斯坦-達庫尼亞島 Tristan da Cunha | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 突尼斯 Tunisia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 土耳其 Turkey | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 土庫曼 Turkmenistan | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 特克斯和凱科斯群島 Turks and Caicos Islands | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 圖瓦盧 Tuvalu | noon | noon | noon | noon | noon | noon | - |
| 烏干達 Uganda | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 烏克蘭 Ukraine | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 阿拉伯聯合酋長國 United Arab Emirates | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 英國 United Kingdom | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 美國 United States of America | | | | | | | |
| 夏威夷 Hawaii | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 紐約 New York | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 其他州 All other States | noon | noon | noon | noon | noon | noon | - |
| 烏拉圭 Uruguay | 5pm | noon | 5pm | 5pm | noon | 5pm | - |
| 烏茲別克 Uzbekistan (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 瓦努阿圖 Vanuatu (The Rep. of) | noon | noon | noon | noon | noon | noon | - |
| 梵蒂岡 Vatican City State | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 委內瑞拉 Venezuela | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 越南 Vietnam | noon | noon | noon | noon | noon | noon | - |
| 美屬處女群島 Virgin Islands of the U.S.A. | noon | noon | noon | noon | noon | noon | - |
| 威克島 Wake Island | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 瓦利斯群島和富圖納群島 Wallis and Futuna Islands | | noon | 5pm | 5pm | | 5pm | - |
| 西薩摩亞 Western Samoa | noon | noon | noon | noon | noon | noon | - |
| 也門 Yemen (Rep. of) | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 贊比亞 Zambia | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |
| 津巴布韋 Zimbabwe | 5pm | 5pm | 5pm | 5pm | 5pm | 5pm | - |

* 本時間表可隨時另作更改。請致電 2921 2222 香港郵政一般服務查詢熱線以獲取進一步的資料。

* Subject to alternation. For further information, please ring the Hongkong Post General Enquiry Hotline on 2921 2222.

# **EXHIBIT C**

Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case Nos. 08-13555(JMP)

5

6  - - - - - - - - - - - - - - - - - - - - - -x

7  In the Matter of:

8

9  LEHMAN BROTHERS HOLDINGS INC., et al.

10

11          Debtors.

12

13  - - - - - - - - - - - - - - - - - - - - - -x

14          United States Bankruptcy Court

15          One Bowling Green

16          New York, New York

17

18          June 2, 2011

19          10:06 AM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    MATTER re Objection to Proof of Claim No. 66462 of JPMorgan

3    Chase Bank, N.A. to the Extent it Asserts Claims Acquired from

4    Washington Mutual Bank, FA Post-Petition are Secured

5    (Misclassified Claim)

6

7    MATTER re Debtors' Eighth Omnibus Objection to Claims (Amended

8    and Superseded Claims)

9

10   MATTER re Debtors' Thirty-Fifth Omnibus Objection to Claims

11   (Valued Derivative Claims)

12

13   MATTER re Debtors' Sixty-Seventh Omnibus Objection to Claims

14   (Valued Derivative Claims)

15

16   MATTER re Debtors' Ninety-Fifth Omnibus Objection to Claims

17   (Valued Derivative Claims)

18

19   MATTER re Debtors' One Hundred Third Omnibus Objection to

20   Claims (Valued Derivative Claims)

21

22   MATTER re Debtors' One Hundred Sixth Omnibus Objection to

23   Claims (Amended and Superseded Claims)

24

25

Page 3

1

2   MATTER re Debtors' One Hundred Eleventh Omnibus Objection to

3   Claims (No Liability Claims)

4

5   MATTER re Debtors' One Hundred Twelfth Omnibus Objection to

6   Claims (Invalid Blocking Number LPS Claims)

7

8   MATTER re Debtors' One Hundred Seventeenth Omnibus Objection to

9   Claims (No Liability Non-Debtor Employee Claims)

10

11   MATTER re Debtors' One Hundred Eighteenth Omnibus Objection to

12   Claims (to Reclassify Proofs of Claim as Equity Interests)

13

14   MATTER re Debtors' One Hundred Nineteenth Omnibus Objection to

15   Claims (Amended and Superseded Claims)

16

17   MATTER re Debtors' One Hundred Twentieth Omnibus Objection to

18   Claims (No Blocking Number LPS Claims)

19

20   MATTER re Debtors' One Hundred Twenty-First Omnibus Objection

21   to Claims (To Reclassify Proofs of Claim as an Equity Interest)

22

23   MATTER re Debtors' One Hundred Twenty-Second Omnibus Objection

24   to Claims (No Liability Claims)

25

Page 4

1

2    MATTER re Debtors' One Hundred Twenty-Third Omnibus Objection

3    to Claims (Duplicative Claims)

4

5    MATTER re Debtors' One Hundred Twenty-Fourth Omnibus Objection

6    to Claims (No Supporting Documentation Claims)

7

8    MATTER re Debtors' One Hundred Twenty-Sixth Omnibus Objection

9    to Claims (Partially Settled Guarantee Claims)

10

11   MATTER re Debtors' One Hundred Twenty-Seventh Omnibus Objection

12   to Claims (Settled Derivatives Claims)

13

14   MATTER re Debtors' One Hundred Twenty-Eighth Omnibus Objection

15   to Claims (Settled Derivatives Claims)

16

17   MATTER re Debtors' One Hundred Twenty-Ninth Omnibus Objection

18   to Claims (No Liability Derivatives Claims)

19

20   MATTER re Debtors' One Hundred Thirtieth Omnibus Objection to

21   Claims (To Reclassify Proofs of Claim as an Equity Interest)

22

23   MATTER re Debtors' One Hundred Thirty-First Omnibus Objection

24   to Claims (To Reclassify Proofs of Claim as an Equity Interest)

25

Page 5

1

2    MATTER re Debtors' One Hundred Thirty-Second Omnibus Objection

3     to Claims (Valued Derivative Claims)

4

5    MATTER re Debtors' Forty-First Omnibus Objection to Claims

6     (Late-Filed Claims)

7

8    MATTER re Debtors' Forty-Second Omnibus Objection to Claims

9     (Late-Filed Lehman Programs Securities Claims)

10

11    MATTER re Debtors' Forty-Third Omnibus Objection to Claims

12     (Late-Filed Lehman Programs Securities Claims)

13

14    MATTER re Debtors' Seventy-Fourth Omnibus Objection to Claims

15     (To Reclassify Proofs of Claim as Equity Interests)

16

17    MATTER re Debtors' Seventy-Fifth Omnibus Objection to Claims

18     (To Reclassify Proofs of Claim as Equity Interests)

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 6

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Debtors and Debtors-in-Possession

5         767 Fifth Avenue

6         New York, NY 10153

7

8   BY:   CHRISTINA M. TRAPANI, ESQ.

9         MARK BERNSTEIN, ESQ.

10

11  WEIL, GOTSHAL & MANGES LLP

12        Attorneys for Debtors and Debtors-in-Possession

13        200 Crescent Court

14        Suite 300

15        Dallas, TX 75201

16

17  BY:   SARAH MOORE DECKER, ESQ.

18        ERIN D. ECKOLS, ESQ.

19

20

21

22

23

24

25

Page 7

```
 1

 2   MILBANK, TWEED, HADLEY & MCCLOY LLP

 3         Attorneys for the Official Committee of Unsecured

 4          Creditors

 5         One Chase Manhattan Plaza

 6         New York, NY 10005

 7

 8   BY:   BRADLEY S. FRIEDMAN, ESQ.

 9         DENNIS C. O'DONNELL, ESQ.

10

11   QUINN EMANUEL URQUHART & SULLIVAN LLP

12         Special Counsel to the Official Committee of Unsecured

13          Creditors

14         51 Madison Avenue

15         22nd Floor

16         New York, NY 10010

17

18   BY:   JAMES C. TECCE, ESQ.

19

20

21

22

23

24

25
```

Page 8

1

2    CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

3         Attorneys for Plaintiff Lehman Brothers Holdings Inc.

4         101 Park Avenue

5         New York, NY 10178

6

7    BY:   L.P. HARRISON 3RD, ESQ.

8         CINDI M. GIGLIO, ESQ.

9

10   STROOCK & STROOCK & LAVAN LLP

11        Attorneys for Louis Dreyfus Energy Services L.P.

12        180 Maiden Lane

13        New York, NY 10038

14

15   BY:   MERYL L. ROTHCHILD, ESQ.

16

17   VENABLE LLP

18        Attorneys for SAMPO Bank PLC

19        1270 Avenue of the Americas

20        Twenty-Fifth Floor

21        New York, NY 10020

22

23   BY:   RISHI KAPOR, ESQ.

24

25

Page 9

```
 1

 2     WACHTELL, LIPTON, ROSEN & KATZ LLP

 3          Attorneys for Movant/Defendant JPMorgan Chase Bank, N.A.

 4          51 West 52nd Street

 5          New York, NY 10019

 6

 7     BY:   HAROLD S. NOVIKOFF, ESQ.

 8

 9     BAKER & HOSTETLER LLP

10          Attorneys for Grupo Serre Rangel

11          Washington Square

12          Suite 1100

13          1050 Connecticut Avenue, NW

14          Washington, DC 20036

15

16     BY:   DONALD A. WORKMAN, ESQ.

17          (TELEPHONICALLY)

18

19

20

21

22

23

24

25
```

Page 10

```
 1

 2    CHAPMAN & CUTLER LLP

 3          Attorneys for U.S. Bank, N.A.

 4          111 West Monroe Street

 5          Chicago, IL 60603

 6

 7    BY:   JAMES HEISER, ESQ.

 8          FRANKLIN H. TOP III, ESQ.

 9          (TELEPHONICALLY)

10

11    LAW OFFICE OF JAMES K. OPENSHAW

12          Attorney for California Department of Water Resources

13          9827 Fair Oaks Blvd

14          Suite B

15          Fair Oaks, CA 95628

16

17    BY:   JAMES K. OPENSHAW, ESQ.

18          (TELEPHONICALLY)

19

20

21

22

23

24

25
```

Page 11

1

2    MONARD-D'HULST

3         Attorneys for Roger VanDebroek

4         Gouverneur Roppesingel 131

5         3500 Hasselt

6

7    BY:   THOMAS VANDERMISSEN, ESQ.

8         (TELEPHONICALLY)

9

10   STUTMAN, TREISTER & GLATT

11        Attorneys for Stutman, Treister & Glatt; Perry Capital

12        1901 Avenue of the Stars

13        12th Floor

14        Los Angeles, CA 90067

15

16   BY:   MICHAEL NEUMEISTER, ESQ.

17        (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 12

```
 1
 2    ALSO APPEARING:
 3    CALIFORNIA DEPARTMENT OF WATER RESOURCES
 4          2033 Howe Avenue
 5          Suite 220
 6          Sacramento, CA 95825
 7
 8    BY:   RUSSELL C. MILLS, CHIEF FINANCIAL OFFICER
 9          (TELEPHONICALLY)
10
11    SARAH M. FILBEE, Claimant
12          107 Maze Hill
13          London
14          SE108XQ
15          UNITED KINGDOM
16
17    BY:   SARAH M. FILBEE, PRO SE
18          (TELEPHONICALLY)
19
20    MICHALINA DEL RIO, PRO SE
21          (TELEPHONICALLY)
22    BETHEL KAY (ph.) for FLORIA YIM SHEUNG FOK, PRO SE
23          (TELEPHONICALLY)
24
25
```

Page 13

```
 1                      P R O C E E D I N G S

 2            THE COURT:  Be seated, please.  Good morning.

 3            MR. BERNSTEIN:  Good morning, Your Honor.  Mark

 4   Bernstein from Weil Gotshal & Manges, attorneys for Lehman

 5   Brothers Holdings Inc. and affiliated Chapter 11 debtors.  We

 6   have on the agenda today twenty-four uncontested matters and

 7   five contested matters.  The first item on the agenda, the

 8   objection to the proof of claim of JPMorgan, that item is being

 9   handled by Curtis Mallet.  So at this point, I'll turn the

10   podium over to Lynn Harrison of Curtis Mallet.

11            THE COURT:  Fine.

12            MR. HARRISON:  Good morning, Your Honor.

13            THE COURT:  Good morning.

14            MR. HARRISON:  If it pleases the Court, Lynn Harrison

15   of Curtis, Mallet-Prevost, Colt & Mosle, conflicts counsel for

16   the debtors and debtors-in-possession, Your Honor.  Your Honor,

17   this is the hearing on the objection to proof of claim number

18   66462 of JPMorgan Chase Bank to the extent it asserts a claim

19   acquired from Washington Mutual Bank post-petition, Your Honor.

20            Your Honor, by way of background, just briefly, as

21   Your Honor, on the 9th of -- September 9, 2008, Lehman Brothers

22   Holding executed a broad guaranty agreement purporting to

23   obligate LBHI to pay for all of its liabilities of any kind,

24   all of LBHI's subsidiaries to JPMorgan Chase or any affiliates

25   of JPMorgan Chase.  Your Honor, this agreement has come to be
```

1    known as the September guaranty.  And pursuant to the September

2    guaranty, pledges were made pursuant to that guaranty pre-

3    petition.

4            After LBHI's bankruptcy petition, JPMorgan acquired

5    the assets of Washington Mutual Bank.  And pursuant to that

6    transaction, Your Honor, acquired certain derivative contracts.

7    JPMorgan then filed a claim based on this WaMu contract and

8    applied approximately eighty million dollars worth of cash of

9    LBHI's to that claim purportedly on the basis that it was

10   covered by the September guaranty, a related security

11   agreement.

12           THE COURT:  One moment, Mr. Harrison.  There's

13   somebody who's on CourtCall who is not muted and we're hearing

14   you in the courtroom.  Without knowing who it is, I'm just

15   going to ask everybody who is listening on the phone to please

16   mute your phones now.  Thank you.

17           MR. HARRISON:  Thank you, Your Honor.

18           Your Honor, on April 15th, 2011, LBHI and certain of

19   its affiliated debtors and the creditors' committee filed a

20   claims objection seeking an order reclassifying the proof of

21   claim number 66462 of JPMorgan to the extent it asserted

22   certain derivatives related claims that JPMorgan acquired from

23   Washington Mutual after LBHI's petition date, pursuant to the

24   September guaranty.  And it also sought, Your Honor, a

25   declaration that the setoffs or application of approximately

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 37 of 85

Page 15

1    eighty million dollars of cash received pre-petition and held

2    by JPMorgan pursuant to the September guaranty was improper,

3    Your Honor.

4            And, Your Honor, I'm not going to get into the details

5    of the pleadings that we filed but suffice it to say that the

6    primary gist of our argument was that I think it's well settled

7    that the rights of a creditor are fixed as of the petition

8    date.  And notwithstanding whatever transpires post-petition,

9    the priority -- the characteristics of that claim were

10   determined at the time of the petition date.  And we've cited

11   case law, Your Honor, at page 13 in paragraphs 34 and 35, with

12   respect to that particular issue.

13           Since the filing of that objection, Your Honor, we

14   have been contacted by counsel of JPMorgan Chase who has agreed

15   that the 80,313,435 dollars portion of the proof of claim

16   should be reclassified to reflect a proper classification as a

17   general unsecured claim.  The parties' agreement is reflected

18   in a revised order, Your Honor.  And I do have a copy of that

19   order.  And if Your Honor wishes, I can approach the bench and

20   hand that up.

21           THE COURT:  Yes, please.  Hand it up.

22           MR. HARRISON:  Thank you, Your Honor.

23           THE COURT:  Okay.  Thank you.

24           MR. HARRISON:  Your Honor, the only changes from the

25   original proposed order is that it now contains language as

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 38 of 85

Page 16

1    follows:  expressly preserving the debtors' right to seek fees,

2    costs or damages from JPMorgan related to the filing of the

3    WaMu claim and the right of JPMorgan to contest any such

4    request, Your Honor.  That's delineated in one of the comments

5    to the -- on the second page of the order.

6         In addition, Your Honor, it expressly preserves all

7    rights of the parties under the collateral disposition

8    agreement to which the debtors and JPMorgan are parties.  Your

9    Honor, if Your Honor has any questions, I can address those at

10   this time.  Otherwise, Your Honor, we seek the entry of that

11   particular order.

12        THE COURT:  Any comments from any party in interest.

13   I see Mr. Novikoff here.  And he's a distinguished observer.

14   So I'm going to give him a chance to either say something or

15   hold his peace, as they say.

16        MR. NOVIKOFF:  Thank you, Your Honor.  Harold

17   Novikoff, Wachtell, Lipton, Rosen & Katz, on behalf of JPMorgan

18   Chase Bank.  And, Your Honor, I essentially am largely an

19   observer this morning.  We have agreed to the order as

20   described by Mr. Harrison.  And we have agreed to the treatment

21   of this claim as an unsecured claim against LBHI.  I should

22   note for Your Honor that the acquisition of Washington Mutual

23   by JPMorgan occurred before the bankruptcy filing of LBSF which

24   was the underlying direct counterparty on the derivatives.  And

25   it does not affect the treatment of that claim.  Thank you,

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 39 of 85

Page 17

1    Your Honor.

2            THE COURT:  Okay.  I think that makes Mr. Harrison

3    want to say something.

4            MR. HARRISON:  Yes.  Sorry, Your Honor.  Just -- I'll

5    be brief.  But all rights are reserved with respect to the

6    treatment with respect to that particular claim against LBSF.

7    This order does not address that.

8            THE COURT:  So this order speaks exclusively to the

9    claim as against LBHI.

10            MR. HARRISON:  Correct.

11            THE COURT:  And all rights are reserved as to the

12    claim --

13            MR. HARRISON:  Yes.

14            THE COURT:  -- in the same amount against LBSF.

15            MR. HARRISON:  Yes.

16            THE COURT:  Fine.  Understood.  The order is to be

17    entered.  It's approved.

18            MR. HARRISON:  Thank you very much, Your Honor.

19            THE COURT:  And you're excused.

20            MR. HARRISON:  Thank you, Your Honor.

21            MR. BERNSTEIN:  Thank you, Your Honor.  Mark Bernstein

22    again from Weil on behalf of the Lehman debtors.  At this

23    point, we'll turn to the regular omnibus objection portion of

24    the calendar.  As typical, we may take some of these out of

25    order, if that's okay with you, in order to --

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 40 of 85

Page 18

1          THE COURT:  I've come to expect that.

2          MR. BERNSTEIN:  Okay.  Appreciate that.  So at this

3     point, I'm going to turn the podium over to one of my

4     colleagues to handle the portion of the uncontested calendar.

5          MS. TRAPANI:  Good morning, Your Honor.  My name is

6     Christina Trapani with Weil Gotshal here on behalf of the

7     debtors.  I'm going to address agenda items number 3, the

8     debtors' thirty-fifth omnibus objection, agenda item number 4,

9     the debtors' sixty-seventh omnibus objection, agenda item

10    number 4, the debtors' ninety-fifth omnibus objection, agenda

11    item number 6, the debtors' 103rd omnibus objection and agenda

12    item number 24, the debtors' 132nd omnibus objection.  All of

13    these are uncontested matters.

14          With respect to the thirty-fifth omnibus objection,

15    since the original claims hearing on September 10th, 2010,

16    debtors have successfully settled with an additional

17    counterparty named in the thirty-fifth omnibus objection, MF

18    Global UK Limited.  And we have a proposed third supplemental

19    order reducing these claims to a settled amount

20          We therefore respectfully request that Your Honor

21    grant a third supplemental order on debtors' thirty-fifth

22    omnibus objection reducing and allowing these claims.

23          THE COURT:  It's granted as to MF Global UK Limited.

24          MS. TRAPANI:  With respect to the sixty-seventh

25    omnibus objection, since the original claims hearing on

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 41 of 85

Page 19

1    December 22nd, 2010, debtors have successfully settled with

2    three additional counterparties named in the sixty-seventh

3    omnibus objection, Advance Graphic Printing, Incorporated,

4    Halbis US Credit Alpha Master Fund and Pohjola Bank.

5         We have a proposed third supplemental order reducing

6    and reclassifying, in some instances, these claims to the

7    settled amount.  We therefore respectfully request that Your

8    Honor grant a third supplemental order on debtors' sixty-

9    seventh omnibus objection reducing and reclassifying, in some

10   instances, and allowing these claims.

11        THE COURT:  I'll enter a third supplemental order in

12   the form you've suggested.

13        MS. TRAPANI:  With respect to the ninety-fifth omnibus

14   objection, since the original claims hearing on March 31st,

15   2011, the debtors have successfully settled with one additional

16   counterparty named in the ninety-fifth omnibus objection, Louis

17   Dreyfus Energy Services Limited Partnership.  And we have a

18   proposed supplemental order reducing these claims to a settled

19   amount and reclassifying the claim against Lehman Brothers

20   Commodity Services, Incorporated.

21        THE COURT:  I'll enter an order in reference to Louis

22   Dreyfus Energy Services L.P.

23        MS. TRAPANI:  With respect to 103rd omnibus objection,

24   since the original claims hearing on April 28th, 2011, one

25   additional counterparty, Microsoft Global Finance, has failed

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 42 of 85

Page 20

1    to file a response to the 103rd omnibus objection.  And we have

2    a proposed supplemental order allowing this claim in the

3    modified amount.  We therefore respectfully request that Your

4    Honor grant a supplemental order on debtors' 103rd omnibus

5    objection allowing this claim.

6            THE COURT:  Yes.  I will enter a supplemental order in

7    reference to the 103rd omnibus objection.

8            MS. TRAPANI:  Turning now to the 132nd omnibus

9    objection, Your Honor, the debtors are seeking to reduce,

10   reclassify, in some instances, and allow thirty-three claims

11   relating to eighteen counterparties.  Fifteen of these

12   counterparties failed to file any response to the 132nd omnibus

13   objection.  Debtors seek to reduce, reclassify in some

14   instances and allow the twenty-nine claims of these fifteen

15   counterparties on an uncontested basis.

16           In addition, debtors have successfully settled with

17   three counterparties named in the 132nd omnibus objection,

18   Black Diamond Offshore Ltd., Double Black Diamond Offshore Ltd.

19   and George B. Kaiser, and are seeking to reduce, reclassify and

20   allow the four claims relating to these three counterparties.

21           There are twenty-five remaining claims named in the

22   132nd omnibus objection which belong to fifteen counterparties.

23   These counterparties either filed timely responses to the 132nd

24   omnibus objection or were granted extensions to the response

25   deadline by debtors.  Settlement discussions have begun with a

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 43 of 85

Page 21

1    number of these counterparties.  Debtors respectfully request

2    that this Court adjourn the hearing as to these twenty-five

3    claims to June 30th, 2011 so that debtors may try to resolve

4    these claims with the counterparties.

5         We have an order for both the reductions and the

6    adjournments for Your Honor and respectfully request that Your

7    Honor grant debtors' 132nd omnibus objection reducing,

8    reclassifying in some instances, and allowing the thirty-three

9    claims named in Exhibit 1 therein and adjourning the twenty-

10   five claims in Exhibit 2 of our proposed order.

11        THE COURT:  The 132nd omnibus objection is granted in

12   the manner that you've described.

13        MS. TRAPANI:  Your Honor, if there are no questions, I

14   would like to turn the podium over to my colleague, Sarah

15   Decker, who will address agenda items number 2, 7, 12 and 15

16   through 20.

17        THE COURT:  Okay.  Fine.

18        MS. TRAPANI:  Thank you.

19        THE COURT:  And as you're changing positions, I'm

20   going to repeat what I said earlier about the need to mute

21   telephones for all people who are participating by CourtCall.

22   We are hearing heavy breathing.

23        MS. DECKER:  Good morning, Your Honor.  Sarah Decker

24   with Weil Gotshal for the debtors.  As Christine mentioned,

25   I'll be covering agenda items numbers 2, 7, 12 and 15 through

Page 22

1   20 in the uncontested matter section of today's agenda.

2          Agenda item number 2 is a carryover item from the

3   debtors' eighth omnibus objection to claims which Your Honor

4   previously granted.  The eighth omnibus objection sought to

5   disallow and expunge claims that were amended and superseded by

6   subsequently filed claims.  This matter is going forward today

7   solely as to the claim of Daniel Fryer, claim number 22765.

8   The objection as to all other claims was previously granted,

9   withdrawn or otherwise resolved.

10          Mr. Fryer reached out to the debtors with a concern

11   about which of his two claims should survive the objection.

12   The debtors spoke with Mr. Fryer and were able to resolve his

13   concern in the same manner as is set forth on the eighth

14   omnibus objection.  Specifically, the debtors advised Mr. Fryer

15   that while the objection seeks to disallow and expunge claim

16   number 22765, his claim number 22911 will survive and the

17   information filed in support of claim 22765 will be treated as

18   having been filed in support of 22911.  Mr. Fryer indicated

19   that his concern was resolved based on counsel's explanation.

20   Accordingly, the debtors respectfully request that the Court

21   grant the eighth omnibus objection with respect to Mr. Fryer's

22   claim number 22765.

23          THE COURT:  The eighth omnibus objection is granted

24   with respect to Mr. Fryer's claim.

25          MS. DECKER:  Thank you, Your Honor.  Agenda item

Page 23

1    number 7 is a carryover item from the debtors' 106th omnibus

2    objection to claims which Your Honor heard and granted at the

3    last hearing on April 28th.  The 106th omnibus objection also

4    sought to disallow and expunge claims that were amended and

5    superseded by subsequently filed claims.  This matter is going

6    forward solely on an uncontested basis with respect to the

7    claim of Great Bay Condominium Owners Association.  The

8    objection as to all other claims was previously granted.

9            In the 106th omnibus objection, the debtors objected

10   to Great Bay's claim number 31955 as being amended and

11   superseded by a subsequently filed claim, number 62855.  And

12   Great Bay opposed the debtors' objection.  The debtors and

13   Great Bay have reached an agreement resolving the objection

14   with respect to Great Bay's claim.  The parties have executed a

15   stipulation and proposed order and I have a copy of that

16   stipulation order for Your Honor to review this morning if you

17   would like to.

18           THE COURT:  Why don't you hand that up?

19           MS. DECKER:  May I approach?

20           THE COURT:  Yes.  Thank you.

21           MS. DECKER:  The stipulation clarifies that the

22   assertions and bases for damages asserted under each of Great

23   Bay's claims will be consolidated into the surviving claim

24   number 31955.  Claim number 62855 will be expunged voluntarily.

25   Great Bay's assertion that its claim number 31955 is entitled

Page 24

1   to priority treatment is not affected by the stipulation.  And

2   the debtors' rights to challenge Great Bay's assertion of

3   entitlement to priority and Great Bay's right to defend that

4   assertion are both reserved.

5          Accordingly, the debtors respectfully request that the

6   Court enter the stipulation and order agreed to by the parties

7   to resolve the objection with respect to Great Bay's claim.

8          THE COURT:  I will so order the stipulation with Great

9   Bay Condominium Association in the form presented.

10         MS. DECKER:  Thank you, Your Honor.  Agenda item 12 is

11  the debtors' 119th omnibus objection.  That objection seeks to

12  disallow and expunge claims that were amended and superseded by

13  subsequently filed claims.  This matter is going forward on an

14  uncontested basis only.  The debtors did not receive any formal

15  responses to this objection and all informal responses have

16  been resolved.  Accordingly, the debtors respectfully request

17  that the Court grant the 119th omnibus objection.

18         THE COURT:  The 119th omnibus objection is granted.

19         MS. DECKER:  Thank you, Your Honor.  Agenda item

20  number 15 is the 122nd omnibus objection.  That objection seeks

21  to disallow and expunge claims for which the debtors have no

22  liability.  These claims either state on their face that they

23  are against an entity that is not a debtor in these Chapter 11

24  proceedings and/or the supporting documentation establishes

25  that the claim is against a nondebtor entity.

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 47 of 85

Page 25

1          The debtors received both formal and informal

2     responses to the objection which have been adjourned or

3     otherwise resolved.  The debtors are proceeding only with

4     respect to the uncontested claims objections this morning and,

5     accordingly, the debtors respectfully request that the Court

6     grant the 122nd omnibus objection.

7          THE COURT:  The 122nd omnibus objection is granted as

8     to the uncontested objections.

9          MS. DECKER:  Thank you, Your Honor.  Agenda item

10    number 16 is the 123rd omnibus objection.  That objection seeks

11    to disallow and expunge claims that are duplicative, either

12    exactly or in substance, of other claims filed by the same

13    claimant on the claims register.  Specifically, these claims

14    are filed by the same claimant against the same debtors and, in

15    most instances, for the same dollar amount and on account of

16    the same obligations.  The debtors are proceeding only with

17    respect to the uncontested claims objections that have not been

18    adjourned or otherwise resolved.  Accordingly, the debtors

19    respectfully request that the Court grant the 123rd omnibus

20    objection.

21         THE COURT:  The 123rd omnibus objection is granted

22    with respect to the uncontested claims.

23         MS. DECKER:  Thank you, Your Honor.  Agenda item

24    number 17 is the 124th omnibus objection.  That objection seeks

25    to disallow and expunge claims that violate this Court's bar

Page 26

1    date order as they were submitted without any supporting

2    documentation.  The debtors have resolved all of the informal

3    and formal responses that were received and we are thus

4    proceeding uncontested.  The one formal response, that of

5    Richard Tessmer, was resolved by the debtors agreeing to

6    withdraw the objection to that claim and the debtors have

7    notified the claimant that we are doing so.

8            We are thus proceeding with the 124th omnibus

9    objection on an uncontested basis and respectfully request that

10   the Court grant the 124th omnibus objection.

11           THE COURT:  the 124th omnibus objection is granted.

12           MS. DECKER:  Thank you, Your Honor.  Agenda item

13   number 18 is the 126th omnibus objection to claims.  This

14   objection seeks to allow a portion of certain guaranty claims

15   consistent with the parties' agreement while permitting the

16   remaining portion of those claims to remain on the claims

17   register pending resolution.  Notwithstanding anything to the

18   contrary in the objection, the total claim value of the

19   asserted claim is not being reduced.  Rather, the claims are

20   simply being bifurcated to reflect that a portion of the claim

21   has been resolved and allowed while the remaining portion of

22   the claim remains unresolved and pending on the claims

23   register.

24           The debtors and the claimants have discussed the

25   nature of the 126th omnibus objection and, specifically, the

Page 27

1    fact that such claims are being bifurcated.  Further, the

2    parties have agreed to minimal changes to the order.  And I

3    Have a blackline of that order if Your Honor would care to see

4    it.

5            THE COURT:  Yes.  I would like to see it.

6            MS. DECKER:  May I approach?

7            THE COURT:  Yes.  Thank you.

8            MS. DECKER:  The debtors are proceeding on an

9    uncontested basis with respect to the 126th omnibus objection.

10   Unless Your Honor has any questions about the order or the

11   objection, the debtors respectfully request that the Court

12   grant the 126th omnibus objection to claims.

13           THE COURT:  The 126th omnibus objection to claims is

14   granted in accordance with the form of order you've presented

15   to me.

16           MS. DECKER:  Thank you, Your Honor.  Agenda item

17   number 19 is the debtors' 127th omnibus objection to claims.

18   This objection seeks the modification and allowance of claims

19   to which the parties have reached an agreement with respect to

20   the claim amount, classification and/or debtor entity that is

21   not reflected on the claimant proof of claim.  The omnibus

22   objection seeks to modify the claims to conform to the parties'

23   agreement.

24           The debtors received only one response to the 127th

25   omnibus objection which has been adjourned while the parties

Page 28

1    continue to work towards a resolution.  We are thus proceeding

2    on an uncontested basis today.  The debtors respectfully

3    request that the Court grant the 127th omnibus objection to

4    claims.

5            THE COURT:  The 127th omnibus objection to claims is

6    granted on an uncontested basis.

7            MS. DECKER:  Thank you, Your Honor.  Agenda item

8    number 20 is the 128th omnibus objection.  That objection seeks

9    the disallowance and expungement of derivatives claims that

10   have been settled between the parties either with a payment to

11   the debtors, with no amounts being due between the parties or

12   with the counterparty being granted an allowed claim against

13   one or more debtors in exchange for a release of its other

14   derivatives claims that the claimant has asserted relating

15   thereto.

16           The 128th omnibus objection is seeking to expunge the

17   claims as necessary to effectuate the parties' agreement.  The

18   debtors did not receive any responses to the 128th omnibus

19   objection and are proceeding uncontested.  Accordingly, the

20   debtors respectfully request that the Court grant the 128th

21   omnibus objection to claims.

22           THE COURT:  The 128th omnibus objection to claims is

23   granted.

24           MS. DECKER:  Thank you, Your Honor.  At this time, I'd

25   like to turn the podium back over to my colleague, Mark

Page 29

1   Bernstein.  Mark is going to address the remaining uncontested

2   portion of today's hearing.

3           THE COURT:  All right.  Thank you.

4           MS. DECKER:  Thank you.

5           MR. BERNSTEIN:  Thanks.  Mark Bernstein, Weil, Gotshal

6   & Manges, on behalf of the Lehman debtors.  As Sarah indicated,

7   I'll address the remaining uncontested portion of the agenda.

8   The first one I'm going to address is the 111th omnibus

9   objection.  The debtors had initially thought that we had a

10  resolution with the two claimants that we were going to go

11  forward with today.  However, we're still working out some

12  additional language that they've requested in the order.  So at

13  this time, we've agreed to adjourn this until the next claims

14  hearing and hopefully we'll have it resolved at that time.

15          THE COURT:  Fine.  So that'll be adjourned to June

16  30th?

17          MR. BERNSTEIN:  June 30th, yes.

18          THE COURT:  All right.

19          MR. BERNSTEIN:  The next one I'm going to address is

20  the 112th omnibus objection.  This relates to two claims that

21  were filed with respect to Lehman program securities but had

22  invalid blocking numbers.  As Your Honor recalls, the blocking

23  number requirement in the bar date order was necessary for

24  these securities in order for the debtors to verify ownership

25  of the securities and avoid making duplicative payments.  These

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 52 of 85

Page 30

1    parties had requested additional time to investigate this

2    matter when we had initially had the hearing on this.  Their

3    objection deadline has subsequently passed and they did not

4    file any responses.  As a result, this is going forward on an

5    uncontested basis and we request the Court grant the 112th

6    omnibus objection with respect to these two particular parties.

7             THE COURT:  It's approved.

8             MR. BERNSTEIN:  Thank you.  The 117th omnibus

9    objection relates to claims that were filed by various former

10   employees of the Lehman enterprise for wages, commissions,

11   bonuses, unused vacation days and the like.  Lehman has

12   searched its records and determined that these employees were

13   not employees of any of the Chapter 11 debtors and none of the

14   debtors are responsible for these payments.

15            A number of responses were received to this objection.

16   The debtors have adjourned the objection with respect to all

17   those responses and we're going forward today solely on an

18   uncontested basis.  We respectfully request that the Court

19   grant the 117th omnibus objection.

20            THE COURT:  The 117th omnibus objection is granted on

21   an uncontested basis.

22            MR. BERNSTEIN:  Thank you.  I'm going to skip the

23   118th and come back to that when I get to the end since it's

24   similar to the 130th and 131st.  I think we can take those

25   three together.

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 53 of 85

Page 31

1          THE COURT:  Just one moment.  For the third time in

2    this morning's hearing, I'm interrupting counsel to request

3    that parties who are participating on the telephone mute their

4    lines.  If this keeps up, I may make it a requirement that

5    everybody appear in person and that we'll just discontinue

6    CourtCall.  It's absolutely required that there be no

7    interruption of the proceedings in this courtroom.  Please mute

8    your phones or hang up.  Okay.  Thank you.

9          MR. BERNSTEIN:  The next objection is the 120th

10   omnibus objection.  Similar to the 112th, these parties filed

11   claims based on Lehman program securities.  However, these

12   parties did not include any blocking number on their claim.

13   The blocking number was a requirement of the bar date order, a

14   necessity to evaluate the claims.  This matter is going forward

15   solely on an uncontested basis and we request Your Honor grant

16   the 120th omnibus objection.

17         THE COURT:  The 120th omnibus objection to claims is

18   granted.

19         MR. BERNSTEIN:  Thank you, Your Honor.  The 121st

20   omnibus objection is an objection to claims filed based on the

21   ownership of common stock of Lehman Brothers Holdings Inc.  The

22   claims assert that they have a claim based on the ownership of

23   the stock and the loss of the value of such stock.  Since such

24   claims are based entirely upon the ownership or the value of

25   common stock, these claims should be appropriately classified

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 54 of 85

Page 32

1    as equity interest in Lehman Brothers Holdings Inc. and not

2    claims.   Therefore this objection requests their

3    reclassification.

4          No responses were received.  We respectfully request

5    that Your Honor grant the 121st omnibus objection.

6          THE COURT:  The 121st omnibus objection is granted.

7          MR. BERNSTEIN:  Thank you, Your Honor.  The 129th

8    omnibus objection relates to derivative claims that were filed

9    against the debtors.  The debtors have reviewed these claims

10   and these derivative contracts and determined that actually the

11   debtors are owed money on these contracts and there are no

12   amounts owed to these claimants.

13         A few responses were received.  The debtors are

14   continuing to work with those claimants to discuss these

15   contracts.   This matter is going forward on an uncontested

16   basis as to all other claimants who did object.  And we

17   respectfully request Your Honor grant this 129th omnibus

18   objection.

19         THE COURT:  The 129th omnibus objection is granted on

20   an uncontested basis.

21         MR. BERNSTEIN:  Thank you.  The final three I will be

22   handling today are the 118th, 130th and 131st omnibus

23   objections.  These all relate to claims filed against the

24   debtors based on restricted stock units, contingent stock

25   awards, stock options or other equity awards held by former

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 55 of 85

Page 33

1    employees of Lehman Brothers.

2           The various equity awards are provided to the employee

3    -- they provided the employees with the right to receive common

4    stock in Lehman Brothers Holdings Inc. at some point in the

5    future.

6           There were a number of responses filed to these

7    omnibus objections.  The debtors are reviewing those responses.

8    And while we continue to do that, we have adjourned all of

9    those matters to a later date.  As such, we're going forward

10   today only on an uncontested basis, parties who didn't respond.

11   We believe the law is that these should be treated as equity

12   interest in the debtors.  And therefore, we request that these

13   claims be classified as equity interest.

14          As such, we respectfully request Your Honor grant the

15   118th, 130th and 131st omnibus objections.

16          THE COURT:  Those three omnibus objections are granted

17   on an uncontested basis.

18          MR. BERNSTEIN:  Thank you, Your Honor.  That concludes

19   the uncontested portion of the agenda.  And I will turn the

20   podium over to Erin Eckols to handle the contested portion.

21          THE COURT:  All right.  Thank you.

22          MR. BERNSTEIN:  Thank you.

23          MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols

24   with Weil Gotshal for the debtors.  As Mr. Bernstein noted, I

25   will be handling the contested items on today's agenda which

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 56 of 85

Page 34

1    are items 25 through 29.  These are all carryover items from

2    prior omnis.

3            Agenda items 25 through 27 are carryover items from

4    the 41st, 42nd and 43rd omnibus objections which sought to

5    disallow any claims that were filed after the applicable bar

6    date.  Because agenda items 25 through 27 present the same

7    issue, I plan to address them together unless Your Honor

8    objects to me doing so.

9            THE COURT:  No.  That's fine.  You can address them

10   together.

11           MS. ECKOLS:  Today the debtors are proceeding as to

12   one claim on the 41st omnibus objection, six claims on the 42nd

13   omnibus objection and three claims on the 43rd omnibus

14   objection.  The claims at issue are set forth on Exhibit A to

15   the reply brief filed by the debtors at docket entry 17202.

16           As Your Honor has recognized in his prior decisions,

17   enforcement of the bar date in these Chapter 11 cases is

18   critically important.  Here, strict application of the bar date

19   is warranted and the ten claims at issue should be disallowed

20   and expunged as untimely.

21           The claims at issue were sent internationally via

22   first-class mail six days or less prior to the applicable bar

23   date.  Eight of the claims were mailed from Hong Kong, two of

24   the claims were mailed from Spain.  The claimants provide no

25   legal argument as to why their claim should be exempted from

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 57 of 85

Page 35

1     the Court-ordered deadline.  Instead, the claimants assert that

2     their claim should be deemed timely because they were put into

3     the mail prior to the applicable bar date.

4          This argument fails under the clear dictate of the bar

5     date order which unambiguously required that claims be actually

6     received on or before the applicable bar date.  Simply

7     depositing the claim in the mail is insufficient.

8          The claimants' argument that postmarking their claim

9     before the applicable bar date renders their claims timely also

10    fails under the governing case law.  Importantly, the claimants

11    have not set forth an excusable neglect argument under

12    Bankruptcy Rule 9006(b) or analyzed any of the governing

13    Pioneer factors.  The claimants have the burden of establishing

14    excusable neglect and they have not and cannot meet that

15    burden.  Nevertheless, the debtors address the excusable

16    neglect issue in their reply brief and, as set forth therein,

17    the claimants cannot satisfy the hard line excusable neglect

18    standard followed in the Second Circuit.

19         There are four factors established under Pioneer for

20    applying the excusable neglect standard.  First, the danger of

21    prejudice to the debtors; second, the length of delay and its

22    potential impact on judicial proceedings; third, the reason for

23    the delay including whether it was within the reasonable

24    control of the claimant; and four, whether the movant acted in

25    good faith.

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 58 of 85

Page 36

1     Each of the Pioneer factors is briefed in the debtors'

2     reply and they strongly favor the debtors' position that the

3     claimants do not qualify for an excusable neglect exemption.

4     Because each of the arguments has been briefed, I will focus on

5     the most important factor in the excusable neglect analysis

6     which is the reason why a particular claim was untimely.

7          The key consideration is whether the untimeliness was

8     within the claimant's control.  Here, the untimeliness was

9     entirely within the claimant's control and was a result of the

10    claimant's decision to, first, wait until shortly before the

11    bar date to mail their claim from a foreign country, Hong Kong

12    and Spain; and, two, to select first-class international mail,

13    a very slow class of mail without any guaranteed window of

14    delivery.  Given the claimants' delay in mailing the claims

15    until less than a week prior to the deadlines and selection of

16    a slow delivery method, they could not have reasonably expected

17    that their claims would arrive from Hong Kong and Spain by the

18    deadlines.  The untimeliness of the claims was entirely within

19    the claimants' control and that they do not meet the high bar

20    established for claiming excusable neglect.  The claimants

21    could have mailed their claim sooner.  They could have chosen a

22    faster class of mail or use a carrier with a guaranteed

23    delivery window, such as UPS, DHL or Federal Express, and they

24    chose not to do so.

25          Accordingly, the debtors respectfully request that the

Page 37

1   forty-first, forty-second and forty-third omnibus objections be

2   granted as applicable to the claims set forth on Exhibit A to

3   the debtors' reply brief.

4          THE COURT:  Let me find out if there are any claimants

5   affected by the forty-first, forty-second and forty-third

6   omnibus objection to claims who are either in court today or on

7   the telephone and who wish to respond to the argument that has

8   just been made.

9          MR. KAY (ph.):  (TELEPHONICALLY):  Your Honor?  Yes.

10         THE COURT:  I hear a voice but I can't tell who you

11  are.

12         MR. KAY:  Your Honor, my name is Bethel Kay (ph.)

13  (indiscernible) for Yim Shueng Floria.  My ID claim numbers

14  65031, 65032 and 65033.  I'm calling from Hong Kong actually.

15  In fact, in my letter, I have explained that I posted

16  (indiscernible) on September 18, 2009, well before the deadline

17  of seven weeks before the deadline of 2nd November, 2009.  It

18  normally takes less than a week for a letter from Hong Kong to

19  New York.  (Indiscernible) seven weeks.  And also I attached

20  here to the court a post stamp of 22nd of September, 2009.  I

21  posted a letter seven weeks before.  So the agents, EPIQ --

22  EPIQ Bankruptcy Solution agent should be able to submit my form

23  earlier to the court.  So it is totally unfair for me that they

24  have rejected my claims on these three claims.

25         THE COURT:  Can you tell me a little bit about your

Page 38

1    claims and what they consist of?

2         MR. KAY:  It is concerning Lehman Brothers.  There are

3    three claims.  One is 100K; another is another 100K.  The third

4    one is 50K (indiscernible) of Lehman Brothers.

5         THE COURT:  And are these claims filed in their

6    individual capacity or on behalf of an entity?

7         MR. KAY:  It's a professional investment.

8         THE COURT:  And --

9         MR. KAY:  I'm a professional investor.  I'm not a

10   company.

11        THE COURT:  And you are a resident of Hong Kong?

12        MR. KAY:  Yes.  I'm a resident of Hong Kong.  I tried

13   my best to send the letter seven weeks before the deadline

14   post-date.  From Hong Kong to New York it's very convenient as

15   a post-date.  Usually it takes less than one week.  We have a

16   lot of correspondence.  It's very common.  And at that time

17   it's not a busy time.  It's September, not busy like other

18   season.  So I don't know why it's taking so long for the

19   (indiscernible) agent which I have to send to them something to

20   the court.  In fact, I check on the internet that they filed a

21   case on 6th of November 2009 with the court which is twelve

22   days after the deadline.

23        THE COURT:  Did you give any consideration to using an

24   international currier service that would assure delivery prior

25   to the expiration of the bar date?

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 61 of 85

Page 39

1          MR. KAY:  In fact, I have around several reasons.

2     It's very safe.  And in fact, the post office, the P.O. Box

3     (indiscernible) which I post in is a P.O. Box which is not an

4     address.  So that means I have to go there.  Also put inside a

5     P.O. Box for that particular issue, EPIQ Bankruptcy Solution

6     agents to take out from the P.O. Box to submit to the court.

7     So this part of the event is out of my control, totally out of

8     my control, even I deliver by hand (indiscernible)to formally

9     submit to the court.  I don't have another choice.

10          THE COURT:  I'm having some difficulty in

11     understanding what you just said.  Are you saying that because

12     you were sending this to a post office box that you were unable

13     to use a international courier service such as DHL or Federal

14     Express?

15          MR. KAY:  In fact, they are using the same ones.

16     (Indiscernible) are not the difference.  It's the time that

17     company submits to the court is when the court received on

18     November 6, 2009 which is (indiscernible).  I suppose my post

19     arriving in the P.O. Box some time in September.  The reason I

20     don't now that particular forms was submitted to the court

21     sometime in November which is beyond the 2nd of November

22     deadline. I don't think it's a postal issue because when I send

23     the letter in 18th of September, the letter should have arrived

24     in the U.S. Post Office postal P.O. Box by the end of September

25     anyway.  So it's a matter of that company how to arrange for

Page 40

1   the delivery, for the pickup and delivery and the submission to

2   the court before the deadline which is beyond my control.  Even

3   I personally hand in that one (indiscernible) by whomever in

4   the system.

5          THE COURT:  I'm not understanding precisely what

6   you've said.  In what respect was this beyond your control?

7          MR. KAY:  Sorry?

8          THE COURT:  How was this beyond your control?

9          MR. KAY:  I have (indiscernible) who send in the

10  complete form well before the deadline, more than seven weeks.

11  So normally, it takes a week from Hong Kong to New York, the

12  post-date.  And the post office delivered to the United States

13  station.  It's not (indiscernible) post-date like that.

14         THE COURT:  Do you have anything more you want to add?

15         MR. KAY:  Yes, Your Honor.  I just want to have the

16  Court's approval to have my claims allowed.

17         THE COURT:  Okay.  Let me find out if there's anyone

18  else who's on the telephone who wishes to be heard on this

19  question.

20         MR. KAY:  Thank you, Your Honor.

21         THE COURT:  Is there anyone else who wishes to be

22  heard?  All right.  We have one party that is the subject of

23  this objection.  And I'm not sure which of the omnibus

24  objections this claim falls under.  Which one is it?

25         MS. ECKOLS:  It's the forty-third omnibus objection.

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 63 of 85

Page 41

1    And if I could have an opportunity to briefly respond.

2        THE COURT:  Yes.  I'm going to give you that

3    opportunity.  Because the forty-first and the forty-second

4    omnibus objections have not been responded to during today's

5    hearing, those objections are granted.  And we'll just deal

6    with the forty-third.

7        MS. ECKOLS:  Thank you, Your Honor.  Unfortunately, I

8    don't believe I can pronounce the claimant's name.  So I'm just

9    going to refer to as claim numbers which he indicated were

10   65305, 65306 and 65307.

11       These claims were dated on October 27th of 2009 and

12   were only submitted and deposited in the mail system six days

13   prior to the applicable November 2nd, 2009 bar date.  Given

14   that these claims were coming all the way from Hong Kong,

15   putting them in the mail and choosing regular first-class mail,

16   it was unreasonable to expect that they would be received in

17   New York and clear customs prior to the applicable bar date.

18       As far as the point regarding using an international

19   courier such as FedEx or DHL or UPS, we had many claimants who

20   managed to send their claim that way.  There was a street

21   address provided in the bar date order if the parties wanted to

22   use an overnight courier service.

23       Given that the claimant could have deposited their

24   claim in the mail earlier and could have selected an alternate

25   method, even international express mail if he didn't want to

Page 42

1    use an overnight courier, the untimeliness of the claims was

2    entirely within his control.  And thus, we believe he does not

3    meet the excusable neglect standard and that is claims should

4    be disallowed and expunged under the forty-third omnibus

5    objection.

6             THE COURT:  Do your records reflect when these claims

7    were actually received?

8             MS. ECKOLS:  Yes, Your Honor.  They were received on

9    November 10, 2009.  They were received roughly thirteen days

10   after they were mailed.

11            THE COURT:  So that even -- this is one of the

12   problems I'm having.  And I was actually dwelling on this issue

13   in chambers before coming out.  And it's interesting that we

14   have to now focus on it because it gets to the question of

15   whether one can ever reasonably rely upon the postal service,

16   whether it's domestic or international, in efforts to comply

17   with a bard date that mandates receipt by a certain specified

18   date.  And here, given the fact that the actual delay was

19   almost two weeks from the date of mailing, even if this

20   particular claimant had filed the claim by mail ten days before

21   the bar date, that would have been insufficient.  So it raises

22   a question in my mind as to whether one can ever rely upon the

23   mail from Hong Kong when sending something to the United States

24   if it's supposed to arrive by a date certain.  And that gets

25   into the question of reasonable conduct on the part of the

1    claimant to comply with the bar date.  Here, the fact that it

2    was six days, in effect, is irrelevant.  It could have been

3    ten; it could have been twelve and it still would have been too

4    late.

5         So I'd be interested in your response to this very

6    general question.  Can you ever timely file a claim by mail?

7    Can you ever be safe doing that if the bar date depends upon

8    receipt?

9         MS. ECKOLS:  Well, as far as whether you can be safe,

10   I think I'd rather address it as or state that thousands of

11   people managed to put their claim in the mail and it was

12   received timely.

13        THE COURT:  Understood.

14        MS. ECKOLS:  Now the vagaries of the mail system do

15   occasionally result in some -- and they could result in some

16   extraordinary delays.  This thirteen days from Hong Kong does

17   not, in fact, appear to be an unreasonable amount of time for

18   the mail to come in.  And in fact, the Hong Kong postal system

19   does put some rough guidelines for parties, not a guarantee,

20   but that they -- to look for when they mail their claims as far

21   as receipt.  And for claims to arrive in the U.S., the minimum

22   calendar days would have been seven.  So the claimant wouldn't

23   even have made it under that.  The Hong Kong post office and

24   the standards that they publish that we attached to our reply

25   brief indicate that the Hong Kong post office thinks it will

Page 44

1    take at least five to sixteen working day for a piece of mail

2    to make it to the United States.  So five working days, seven

3    calendar days.  This claimant was still out of time.

4         If there is an issue with respect to what is something

5    that looks unreasonably long time in the mail, that is

6    something that the debtors are certainly looking at.  And quite

7    frankly, the debtors have really struggled with the same issue

8    that you raised:  how do you apply something reasonable and

9    treat claimants consistently and fairly given the fact that

10   sometimes mail is uncertain.  Now the easiest way to have done

11   this would have been to use something with a guaranteed form of

12   delivery.  But the bar date order did not require people to

13   select that method.

14        So it is something that we do struggle with.  But we

15   submit that dropping your claim via first-class regular mail

16   six days before the bar date from Hong Kong is simply not

17   reasonable.  It was not going to make it there in time.

18        THE COURT:  Okay.  I'm going to grant the objection

19   with respect to the claim that we've been -- well, the three

20   claims that we've been discussing, the first one being 65306,

21   principally on the basis that the reason for the delay was

22   substantially within the control of the claimant inasmuch as

23   dropping a claim in the mail in Hong Kong amends to a form of

24   proof of claim roulette.  There is no assurance whatsoever

25   based upon the published data that a claim mailed on any

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 67 of 85

Page 45

1    particular day prior to the bar date with assurance will be

2    delivered by the specified date.  Now while that raises some

3    questions as to burden on the part of the claimant in having to

4    either mail the proof of claim substantially ahead of the proof

5    of claim bar date or by means of guaranteed delivery through

6    overnight courier, nonetheless, this is something that is

7    subject to the claimant's control.

8            Consistent with applicable case law in the Second

9    Circuit and my own decision in the Lehman Brothers case last

10   year, we apply a fairly strict approach to the enforcement of

11   proof of claim bar dates in this circuit.  And excusable

12   neglect is a very difficult standard to meet.  Under the

13   circumstances, while I appreciate the claimant's dilemma, the

14   claim is disallowed on the basis of its untimely delivery.  And

15   I'll entertain an order that's consistent with these remarks.

16           MS. ECKOLS:  Thank you, Your Honor.  Moving to agenda

17   item 28, which is the seventy-fourth omnibus objection, a

18   carryover item from that omni -- and the seventy-fourth omnibus

19   objection sought to reclassify certain proofs of claim as

20   equity interest.  And Your Honor previously granted that

21   omnibus objection as to the vast majority of claims at a prior

22   hearing.

23           Today we are proceeding as to six claims on a

24   contested basis.  Claim 4737 by Bowaut, Inc.; claim 10262 by

25   Sandra Stolk; claim 10261 by Herman Stolk; claim 6157 by Gloria

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 68 of 85

Page 46

1    Stainkamp; and claim 63353 and 63354 by Peter Thompson.

2           The six claims at issue are all based on the ownership

3    of LBHI preferred stock and thus should be reclassified as

4    equity interest in the debtors and subordinated pursuant to

5    Section 510(b) of the Bankruptcy Code.

6           As set forth in the seventy-fourth omnibus objection,

7    the holders of equity securities in the debtors have an

8    interest in but not a claim against the debtors.  Stock is an

9    equity security under Sections 101.16 and 101.49(a) of the

10   Bankruptcy Code which defines an equity security as, among

11   other things, stock or a share in a corporation.

12          Moreover, Section 510(b) requires that claims seeking

13   damages from the purchase or sale of securities, such as stock,

14   in the debtors be subordinated.  It forecloses the possibility

15   that disappointed shareholders, like the holders of the six

16   claims at issue, receive equal or better treatment than the

17   holders of valid general unsecured claims.

18          Three of the claimants, Bowaut, Inc., Herman Stolk and

19   Sandra Stolk, held LBHI's 6.5 percent Cumulative Preferred

20   Stock Series F and argue that their preferred stock should be

21   treated as a debt instrument instead of an equity security.

22   For the reasons set forth in the debtors' reply brief, filed at

23   docket entry 17147, the claimants attempt to recharacterize

24   their investment in LBHI as debt fails.

25          Under the applicable facts and law, Series F preferred

Page 47

1    stock is an equity instrument not a debt instrument and the

2    claimant should be treated as shareholders.  Courts generally

3    treat preferred stock as an equity interest and the

4    determination of whether preferred stock is a debt or equity

5    instrument is based on the terms of the stock.  Courts look at

6    several factors including the name given to the instrument, the

7    intent of the parties, the presence or absence of a fixed

8    maturity date, the right to enforce payment of principal or

9    interest, the presence or absence of voting rights, the status

10    of the contribution in relation to the regular corporate

11    contributors and certainty of payment in the event of the

12    corporation's insolvency or liquidation.

13           Courts have relied most heavily on the certainty of

14    payment factor and where there is not certainty of payment,

15    preferred stock has been treated as equity.

16           Here, the characteristic of the Series F preferred

17    stock establishes that it is properly characterized as an

18    equity interest.  Importantly, the Series F preferred stock had

19    no guarantied right of payment such as a principal or interest

20    payment.  The payment of dividends was contingent upon (1)LBHI

21    declaring a dividend; and (2)there being funds legally

22    available for payment of a dividend.

23           Other factors further establish that the Series F

24    preferred stock is properly classified as equity.  The name of

25    the instrument, it was named preferred stock; the intent of the

Page 48

1    parties, as demonstrated by the fact that this preferred stock

2    was structured so that dividends were paid when declared by

3    LBHI instead of a debt instrument with set principal and

4    interest payments.  There was no fixed maturity date but an

5    optional redemption date; there were the existence of voting

6    rights for the Series F preferred stockholders.  In certain

7    circumstances, the holders of that stock had a right to vote

8    with other holders of preferred stock to elect directors to

9    LBHI.  And before taking certain actions, LBHI had to obtain

10   the vote of at least sixty-six and two-thirds percent of the

11   Series F preferred stockholders.  Moreover, the Series F

12   preferred stock was ranked equally with LBHI's Series C, D and

13   E preferred stock issuances.

14         Finally, in the event of a liquidation or dissolution,

15   the holders of a Series F preferred stock would only be

16   entitled to payment from "assets available for distribution to

17   stockholders".  And they would share on a pro rata basis with

18   holders of any other preferred stock ranking equally with the

19   Series F preferred stock.

20         Accordingly, the Series F preferred stock must be

21   treated as the parties intended, as stock in LBHI, and these

22   shareholders should not be allowed to bootstrap their way to

23   parody with general unsecured creditors.

24         The holders of the other three claims at issue today,

25   Gloria Stainkamp and Peter Thompson, set forth no legal

Page 49

1    argument for objecting to the classification of their proofs of

2    claim as equity.  Ms. Stainkamp states that she is opposing

3    reclassification of her claim in equity in order to keep

4    herself in the game.  This is not a legally valid reason for

5    treating her other than what she is:  a disappointed holder of

6    LBHI equity interest.

7           Mr. Thompson provides even less information as to the

8    basis for his opposition.  His response is limited to the

9    single statement that Lehman Brother's Holdings Inc. misstated

10   their financial statements.  Even if one gave a very generous

11   interpretation to Mr. Thompson's response and assumed that Mr.

12   Thompson was trying to assert that his claim is for fraud

13   related to the ownership of LBHI stock and that's exempt from

14   Section 510(b) subordination provision, Mr. Thompson's argument

15   would fail.

16          The law in this circuit is very clear.  Under the

17   Enron and WorldCom decisions, at 341 B.R. 141 and 329 B.R. 10,

18   respectively, claims for fraud in the purchase or ownership of

19   stock fall squarely within Section 510(b) and must be

20   subordinated.  Accordingly, Ms. Stainkamp and Mr. Thompson's

21   opposition should be overruled.

22          In summary, while it would be more advantageous for

23   Ms. Stainkamp, Mr. Thompson, Mr. and Mrs. Stolk and Bowaut,

24   Inc. to avoid classification of their claims as equity, that is

25   not a legally valid basis for treating these claimants as other

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 72 of 85

Page 50

1     than what they are:  shareholders in LBHI.  Thus, the debtors

2     respectfully request that the Court grant the seventy-fourth

3     omnibus objection as to their claim.

4          And, Your Honor, I know that Ms. Stainkamp is present

5     today and may wish to make a statement.  The debtors are not

6     certain as to whether any of the other affected claimants are

7     present today.

8          THE COURT:  Let's find out.  Are there any affected

9     claimants either present in person or by telephone who wish to

10    be heard?  There's one person here.  Is there anyone on the

11    telephone?  I hear no response.  There's one person who's

12    coming forward.  And I gather she's the only person who wishes

13    to be heard at this point.

14          MS. STAINKAMP:  Your Honor, Gloria Stainkamp.  I have

15    a problem with timing as well.  I purchased 16,000 dollars of

16    securities of callable -- it's all here -- from Lehman

17    Brothers.  On the 5th September '08, a new problem came up so

18    fast that in any other dealing -- I know I've had stock

19    cognizant at the time that if there's a rise and a fall, that

20    only makes me feel how awful the market degenerated to such a

21    way that in five, six, seven days, everything's gone.

22          THE COURT:  What is it that you bought?  What's the

23    security that you bought?

24          MS. STAINKAMP:  Well, I -- it's a funny name, Lehman

25    Brothers HLDG -- I imagine Holdings -- Floating Rate Perpetual

Page 51

1    Callable.  This was offered that day by the salesman.  And this

2    gentleman that I've had exchanges with said, oh, Lehman

3    Brothers.  That's the best thing you could get.  It's a new

4    offering.  And I said, okay, take my money.  Okay.  I'll go for

5    it.  The reputation was there.  That's what kills me on this

6    that I get so duped for five days and it was gone.  And that's

7    my problem and I'm stuck with it.  But thank you for hearing

8    me.

9              THE COURT:  Okay.  I think regrettably you are stuck

10   with it.  And I can't speak to what other claims or remedies

11   you may have in connection with the transaction.  But insofar

12   as I'm being asked to consider an objection to a proof of claim

13   because what you really have is an equity interest in the

14   company and not a claim that is entitled to be treated along

15   with all other unsecured claims, I really don't have much

16   choice.  The debtors make a very powerful argument that all

17   that you have is an equity interest.  I think they're right.

18   And given the debt claims in this bankruptcy case, it's clear

19   that equity interests will not recover anything because in the

20   order of priority in bankruptcy, equity comes at the bottom of

21   the heap.

22             Under the circumstances, it is not foreseeable that

23   you will recover anything from the bankruptcy case.  Whether or

24   not you have any claims against parties that induced you to

25   purchase this security ten days prior to the bankruptcy, I

Page 52

1    don't know.  I make no comment on that one way or the other.

2         I do know, however, that the newspapers, wire services

3    and cable television networks that dealt with business issues

4    were very active during the month of September 2008 in

5    commenting on the growing financial crisis.  And except for the

6    more sophisticated, it was probably not a good idea to be

7    acquiring securities of any financial firm at that time.

8         Under the circumstances, I regret that I must grant

9    the objection and I wish you well.

10        MS. ECKOLS:  Thank you, Your Honor.  Is the objection

11   granted as to all the other claimants as well?

12        THE COURT:  The objection is granted as to all the

13   others including the Stolks who appear not to be present in

14   court or on the telephone.  They have raised a more

15   sophisticated question which is whether or not preferred stock

16   under certain circumstances might be recharacterized as a debt

17   instrument.  But for all the reasons that have been advanced

18   both in oral argument and in the omnibus reply docketed at

19   17147, this preferred stock is exactly what it purports to be:

20   preferred stock.  And no cause has been shown for reclassifying

21   it as a debt instrument.  Under the circumstances, all of these

22   objections at docket -- excuse me -- at agenda number 28 and 29

23   are granted.

24        MS. ECKOLS:  Thank you, Your Honor.

25        THE COURT:  Is there any more for today?

Page 53

 1            MS. ECKOLS:  No.  Agenda item 29 was actually a couple

 2    of other claimants.

 3            THE COURT:  Oh, I'm sorry.  It's all 28?

 4            MS. ECKOLS:  Yes.

 5            THE COURT:  Then I misspoke.  It's the reclassi --

 6    it's number 28.

 7            MS. ECKOLS:  Okay.  I'm going to move on to agenda

 8    item 29 --

 9            THE COURT:  Fine.

10            MS. ECKOLS:  -- at this point.

11            THE COURT:  I thought we were doing them all together.

12            MS. ECKOLS:  These present slightly different issues

13    so I separated them out.  This is a carryover item from the

14    seventy-fifth omnibus objection which, again, seeks to

15    reclassify proofs of claim as equity interest.  Today we are

16    proceeding as to claim 479 by Robert Zito and claim 34424 by

17    Lucky Asia Trading Limited.  Mr. Zito and Lucky Asia's claims

18    are based on ownership of LBHI common stock.  As discussed in

19    the seventy-fifth omni, which Your Honor previously granted the

20    holders of the debtors' stock are entitled to an equity

21    interest in but not a claim against the debtors.

22            In Mr. Zito's opposition to the seventy-fifth omni, he

23    argues that his claim should not be classified as equity

24    because, one, he is seeking to recover for the diminution in

25    value of his common stock due to the debtors' alleged fraud;

1   and, two, that his claim is entitled to priority treatment

2   under Section 507(a)(5) of the Bankruptcy Code as contributions

3   to an employee benefit plan.

4        As discussed in the debtors' reply brief at docket

5   number 17204, both of Mr. Zito's arguments fail.  First, Mr.

6   Zito's claim is for loss and stock value due to alleged fraud

7   falls squarely within the scope of Section 510(b).  Courts have

8   broadly construed the scope of Section 510(b) to include claims

9   such as Mr. Zito's for fraudulent inducement in the purchase

10  and fraudulent retention in the maintenance of a debtor's

11  stock.

12       Second, the issue of whether Mr. Zito's claim,

13  assuming he had one as opposed to an equity interest, would be

14  subject to priority treatment under Section 507(a)(5) is

15  irrelevant to the question of whether Mr. Zito should be

16  treated as a shareholder in LBHI.  Claims for stock held in

17  retirement accounts are still considered equity interest

18  subject to Section 510(b).  Regardless, Mr. Zito would not

19  qualify for priority treatment under Section 507(a)(5) which

20  covers claims for contributions to employee benefit plans for

21  services rendered within 180 days of the petition date.

22       Section 507(a)(5) is for the benefit of a debtor's

23  employees and is designed to cover employee compensation such

24  as fringe benefits that are beyond the wage and salary that is

25  granted priority under Section 507(a)(4).

08-13555-mg    Doc 29443    Filed 07/17/12    Entered 07/17/12 11:18:09    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 77 of 85

Page 55

1          Mr. Zito in no way qualifies for priority treatment

2     under Section 507(a)(5).  He was not an employee of the debtors

3     or any Lehman-related entity and thus he could not be seeking

4     recovery for services rendered to the debtors.  His claim

5     arises from common stock that he purchased and held in an

6     individual retirement account.  Mr. Zito's claim is not based

7     on an obligation of the debtors to make a contribution to any

8     employee benefit plan.  Accordingly, Mr. Zito's claim directly

9     arises from the ownership of LBHI common stock and he should be

10    treated equally to all the other shareholders in LBHI.

11         Regarding the claim of Lucky Asia Trading Limited,

12    that claim should also be reclassified as equity.  Lucky Asia

13    provided no argument for its opposition to the seventy-fifth

14    omnibus objection.  Instead, it simply stated that it strongly

15    opposed to the classification of its claim as equity.  This is

16    not a valid basis.

17         The debtors attempted to contact Lucky Asia several

18    times but received no response.  In our last correspondence,

19    the debtors advised Lucky Asia that if we do not receive any

20    communication from them by May 15th that we would proceed at

21    today's hearing on the assumption that it continued to oppose

22    the debtors' objection.  The debtors have not received any

23    response from Lucky Asia and thus we are proceeding today.

24         Lucky Asia's claim is for common stock of LBHI and

25    there is no reason to treat Lucky Asia any different from the

1    holders of LBHI common stock.  Accordingly, his claim should be

2    classified as equity.

3           For these reasons, the debtors respectfully request

4    that the objections of Robert Zito and Lucky Asia Trading

5    Limited be overruled and that the seventy-fifth omnibus

6    objection be granted as to their respective claims.

7           THE COURT:  Are either of the claimants present or on

8    the telephone?  Apparently not.  The objection is granted as to

9    both.

10          MS. ECKOLS:  Thank you, Your Honor.  And that

11    concludes the items going forward on today's agenda.

12          THE COURT:  Fine.  We are adjourned.  Thank you.

13          MR. POLICH (TELEPHONICALLY):  Good morning, Your

14    Honor.  May I interrupt via CourtCall?

15          THE COURT:  Well, we're adjourned.  Who are you?

16          MR. POLICH:  Your Honor, my name is John Polich.  I

17    represent the Ventura County Treasurer tax collector.  And

18    perhaps there was a continuance that I am not aware of.  But I

19    had thought there would be a hearing this morning on item -- or

20    claim number 65230 that relates to the fortieth omnibus

21    objection by the debtors.

22          THE COURT:  Well, I tell you, there's a lot of

23    confusion in the room right now.  People are standing and

24    you're talking and I'm halfway out the door.

25          MR. POLICH:  I apologize, Your Honor.  I was waiting

08-13555-mg   Doc 29443   Filed 07/17/12   Entered 07/17/12 11:18:09   Main Document
Pg 79 of 85
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 57

1    and I thought my matter would be taken up at that time.

2        THE COURT:  Well, first of all, let -- everybody can

3    sit down who is standing.  And I don't know whether or not this

4    is a matter for today's hearing or something for counsel to

5    discuss on a private telephone call.

6        MS. ECKOLS:  Your Honor, any matters that were on

7    omnibus objection 40 were adjourned to June 30th and a notice

8    of adjournment was, I believe, filed a week or two ago and was

9    overnighted -- served via overnight mail.  And furthermore, the

10   agenda reflects the adjournment of the fortieth omnibus

11   objection and lists out the claims thereto.

12       MR. POLICH:  Okay.  Thank you very much.  I was

13   misinformed about the date and we will be joining you again on

14   the 30th.

15       THE COURT:  Okay.  And when you do, be sure to have

16   your phone muted during the hearing 'cause I can tell you're

17   the telltale breather.

18       MR. POLICH:  The breather?  Oh, my apologies for that,

19   Your Honor.

20       THE COURT:  Okay.  That's fine.  That's my detective

21   work.  All right.  Thank you.  We really are adjourned this

22   time.

23       MR. POLICH:  For any later (indiscernible)?

24       THE COURT:  You can talk to the claimant on this line

25   if you want, but I'm out the door.  We're adjourned.

Page 58

1          (Whereupon these proceedings were concluded at 11:17 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 59

```
 1

 2                        I N D E X

 3

 4                      R U L I N G S

 5

 6    DESCRIPTION                              PAGE    LINE

 7    Stipulation entered into between the parties    17      17

 8    re objection to proof of claim number 66462 of

 9    JPMorgan Chase Bank to the extent it asserts a

10    claim acquired from Washington Mutual Bank

11    post-petition approved

12    Debtors' thirty-fifth omnibus objection to    18      23

13    claims granted with respect to the MF Global

14    UK Limited claim

15    Debtors' sixty-seventh omnibus objection to    19      11

16    claims granted with respect to the claims of

17    Advance Graphic Printing, Incorporated, Halbis

18    US Credit Alpha Master Fund and Pohjola Bank

19    Debtors' ninety-fifth omnibus objection to    19      21

20    claims granted with respect to the claims of

21    Louis Dreyfus Energy Services L.P.

22    Debtors' 103rd omnibus objection to claims    20       6

23    granted with respect to the claim of

24    Microsoft Global Finance granted

25
```

```
 1

 2                       I N D E X, cont'd

 3

 4                       R U L I N G S

 5

 6   DESCRIPTION                                  PAGE    LINE

 7   Debtors' 132nd omnibus objection to claims    21      11

 8   granted with respect to the thirty-three

 9   claims named in Exhibit 1 of debtors'

10   proposed order

11   Debtors' eighth omnibus objection to claims   22      24

12   granted with respect to the claim of Daniel

13   Fryer

14   Stipulation entered into between the parties re  24     8

15   debtors' 106th omnibus objection to claims with

16   respect to the claim of Great Bay Condominium

17   Owners Association so ordered

18   Debtors' 119th omnibus objection to claims    24      18

19   granted as to the uncontested objections

20   Debtors' 122nd omnibus objection to claims    25       7

21   granted as to the uncontested objections

22   Debtors' 123rd omnibus objection to claims    25      21

23   granted as to the uncontested objections

24

25
```

```
 1                    I N D E X, cont'd

 2

 3                    R U L I N G S

 4

 5     DESCRIPTION                              PAGE      LINE

 6     Debtors' 124th omnibus objection to claims    26        11

 7     granted; debtors have withdrawn their

 8     objection with respect to claim of Richard

 9     Tessmer

10     Debtors' 126th omnibus objection to claims    27        14

11     granted in accordance with form of order

12     presented to the Court

13     Debtors' 127th omnibus objection to claims    28         6

14     granted as to the uncontested objections

15     Debtors' 128th omnibus objection to claims    28        23

16     granted

17     Debtors' 112th omnibus objection to claims    30         7

18     granted with respect to claims of Bawag

19     P.S.K. Versicherung AG and Eduardo

20     Cauterucci, Adriana M. Perilli & Maria F.

21     Cauterucci

22     Debtors' 117th omnibus objection to claims    30        20

23     granted on an uncontested basis

24     Debtors' 120th omnibus objection to claims    31        18

25     granted on an uncontested basis
```

1

2                          I N D E X, cont'd

3

4                          R U L I N G S

5

6      DESCRIPTION                                    PAGE      LINE

7      Debtors' 121st omnibus objection to claims      32         6

8      granted

9      Debtors' 129th omnibus objection to claims      32        20

10     granted on an uncontested basis

11     Debtors' forty-first omnibus objection to       40        10

12     claims granted

13     Debtors' forty-second omnibus objection to      40        10

14     claims granted

15     Debtors' forty-third omnibus objection to       43        23

16     claims granted; three claims of Floria Fok

17     Yim Sheung disallowed due to its untimeliness

18     Debtors' seventy-fourth omnibus objection to    51        14

19     claims granted

20     Debtors' seventy-fifth omnibus objection to     55        13

21     claims granted

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _____

8    LISA BAR-LEIB

9    AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  June 3, 2011

18

19

20

21

22

23

24

25