

26 Huron Road
Tooting
London SW17 8RB
United Kingdom

Tel: + 44 7788 450145
Email: charlotte.grezo@gmail.com
30th June 2012

United States Bankruptcy Court
Southern District of new York
One Bowling Green
New York
New York 10004
United States

Dr Charlotte Grezo, Claim number 12755
Chapter 11 Case Number 08-13555 (JMP) re: Lehman Brothers Holdings Inc et al
Three Hundred Seventeenth Omnibus Objection to Claim to be held on 19th July 2012
before the Honourable James M Peck

Dear Sir or Madam

I refer to the notice of the Hearing on Three Hundred Seventeenth Omnibus Objection to Claims (No liability LBL Employee Claims).

Without prejudice to other claims that I have made I cannot see any reason for disallowing my filed claim (Claim number 12755). As laid out in my letter of 5th September 2009 (copy attached)

**Contribution to Occupational Pension Scheme.** I joined Lehman Brothers Ltd from Vodafone where I was a member of a well funded final salary occupational pension scheme. To compensate me for my early departure from that scheme and the substantial rights that I was immediately losing, Lehman's undertook to make a series of payments. These are represented by clause 7 & 8 of the agreement. I have been advised that in these circumstances a creditor in respect to these payments is a "preferred creditor" and the payments would be "preferred payments" ranking below expenses of administration and fixed charge holders but above general creditors. Once again this is in respect to the Company and all Associated Companies. The mechanics are however a little less clear as although it is my agreement, the payments are described as to be made to the Lehman Brothers Pension Scheme. I would suggest that we discuss this matter and liaise with the trustees and the scheme administrator.

In addition I had already signed a compromise agreement (attached) with Lehman Brothers Limited:

In that agreement I gave up certain rights and claims against Lehman Brothers Ltd and its Associated Companies (as defined by s736 Companies Act 1985) as well as acquiring ongoing obligations (Clause 13, 14 & 15). In return they undertook to make these payments set out above. The contract is accordingly enforceable in full against both Lehman Brothers Ltd and all its Associated Companies, throughout the world. You should note that as Global Head of Sustainability my role with Lehman Brothers included all Group companies particularly the US. Clauses 8 (pension) and 16 (Compensation) make clear that Associated companies obligations are part of the consideration.

A compromise agreement subsumes all the claims by both parties to it in one agreement providing certainty to both as well as giving additional rights to both. In this case Clause 19 makes this very clear. There is therefore no need for either party to resort to Employment Tribunals to determine rights, quantum, terms of employment

# LEHMAN BROTHERS

Charlotte Brereton Grezo
by hand



**WITHOUT PREJUDICE & SUBJECT TO CONTRACT**

12 September 2008

Dear Charlotte:

I refer to our discussions concerning the termination of your employment with Lehman Brothers Limited ("the Company") and your request to bypass the official consultation period and write to set out the Company's proposals in this regard:

**Termination Date**

1. Your employment shall terminate on 30 September 2008 ("the Termination Date").

**Duties up to Termination Date**

2. Up to and including the Termination Date you shall work normally and co-operate in an orderly transfer of your duties.

**Salary & Benefits to Termination Date**

3. You shall be paid up to and including the Termination Date in respect of any unpaid base salary subject to the deduction of income tax and employees national insurance contributions. You are required to take any accrued holiday entitlement during your notice period. The employee benefits that you enjoy as an employee shall continue up to and including the Termination Date but except to the extent otherwise specifically provided for in this letter shall thereafter cease..

**Pay in Lieu of Notice**

4. Pursuant to the Company's right to pay you in lieu of notice, (clause 1.13, Lehman Brothers' Employee Handbook) you will be paid 12 weeks salary in lieu of notice. This payment will be subject to the deduction of income tax and employee's national insurance contributions.

5. Your P45 shall be made up to the Termination Date and issued accordingly.

**Bonus**

6. You will be paid $731,644, representing the balance of your 2008 total compensation guarantee in cash within ten business days of receipt of your signed agreement subject to appropriate income tax (40%) and employee National Insurance contributions (1%). For

the avoidance of doubt, this amount will be paid in GBP taking into account your "Average" rate election under the terms of the 2008 FX election programme. The "Average" rate will be calculated from 01 December 2007 through your termination date.

If, before the Firm's regular bonus payment date, you engage in Detrimental Activity or do not comply with your obligations under this agreement, you will be required to promptly repay this amount to the Firm (net of any tax and employee national insurance which may have been deducted if applicable). You acknowledge that you are not entitled to participate in the Firm's 2008 equity award program.

**Pension**

7. You will in due course receive a statement of any accrued benefits you may have under the Lehman Brothers' Pension Scheme from the scheme administrators Fidelity Investments Life Assurance Limited.

8. In accordance with your offer of employment dated 11th July 2007 and revised 19th July 2007, the Company has committed to make special employer contributions to the Lehman Brothers Pension Scheme "the Scheme" as follows:

   - £85,000 into the Scheme in the month you joined the Scheme - contribution made in February 2008

   - £85,000 into the Scheme 12 months after you joined the Scheme - scheduled for contribution in February 2009

   - £85,000 into the Scheme 24 months after you joined the Scheme - scheduled for contribution in February 2010

As part of this agreement, the Company shall for itself and each Associated Company accelerate the final two special employer contributions totalling £170,000 ("Special Contribution") into the Scheme. The Special Contribution will be made (subject to you delivering to the Company all things that you are required to deliver pursuant to this letter):

   (a) Without deduction of income tax and social security; and

   (b) by means of a transfer into the Scheme within 30 days of the later of your Termination Date or the date of receipt by the Company of this signed agreement; and

   (c) Unless otherwise advised in advance the Pension Contribution will be invested in the Legal and General Global Equity 40/60 Fund. You will be able to subsequently transfer the Pension Contribution into alternative fund choices available in the Scheme either online via Fidelity's PlanViewer or by contacting Fidelity's Pension Service Centre in the normal way.

By signing this agreement, you acknowledge that in the event such contributions plus any other pension inputs in the tax year 2008/2009 breach the Annual Allowance under UK pensions legislation, you will personally be liable to pay the appropriate income tax

-2-

to HMR&C through filing the relevant UK Tax Return. You are recommended to take specific advice on this issue if you deem necessary.

**Lehman Brothers' Equity Award Program**

9. As you are aware, for certain of your outstanding contingent stock awards ("CSAs") that were granted in connection with the Lehman Brothers Equity Award Program and remain subject to full conditions, you are expressly required to execute a release agreement when you leave the Company as a condition of "involuntary termination without cause" treatment with respect to such awards. If you sign and comply with this agreement, you will satisfy the release requirement applicable to such awards. You will receive in due course a statement of your CSAs/Options and/or Fund Participation Investments. Subject always to the terms of the relevant plan documents, you may retain your right to CSAs and/or Options, but they are subject to forfeiture only should you engage in Detrimental Activity as defined under the Lehman Brothers' Equity Award Program controlling plan documents. You should refer to the relevant plan documents for full details. For the avoidance of doubt you also agree and acknowledge that any breach by you of the obligations set out in paragraphs 13, 15 and 22 below will constitute Detrimental Activity for the purposes on the Lehman Brothers' Equity Award Program.

**Outstanding expenses**

10. You shall submit any outstanding expense claims with supporting receipts prior to the Termination Date and shall thereafter be reimbursed in respect of such claims subject to the Company's normal expenses policy.

**No debts etc owed by Company**

11. You acknowledge that there are no sums of money due to you from the Company or any Associated Company (except as provided for in this letter). You confirm that you do not have and will not have following the Termination Date any claim or entitlement under or in connection with any bonus incentive share option or similar scheme (including but not limited to the Lehman Brothers Equity Award Program) and that neither the Company nor any Associated Company (nor any trustees of any scheme established by the Company nor any Associated Company) is or shall be liable to make any payment or provide you with shares under any such scheme.

**Return of Company property**

12. You shall return to the Company on or before the Termination Date all property which is in your possession or custody or under your control belonging to the Company or any Associated Company and all property belonging to third parties which is in your possession or custody or under your control by virtue of your employment. The property to which this paragraph applies includes but is not limited to passes, keys, credit cards, business equipment, documents, correspondence, lists of customers or clients computer disks and data and all copies and duplicates of such items whether in a physical or electronic form. You shall also immediately inform the Company of the passwords used by you on all Company equipment and documents used or created by you.

-3-

**Continuing obligations**

13. You acknowledge that notwithstanding the termination of your employment you continue to have a duty of confidentiality to the Company and that this means that you must not disclose or communicate to any person or use for your own benefit or the benefit of any third party any confidential information concerning the business and affairs of the Company and any Associated Company which has come to your knowledge in the course of your employment (unless any such confidential information enters the public domain other than through your default). You also acknowledge that in the course of your employment you had access to and were provided with significant amounts of Company and Associated Company confidential information and any breach of your continuing confidentiality obligations would be extremely damaging to the interests of the Company and/or an Associated Company (as the case maybe).

**Resignation from offices**

14. By your signature to this letter you resign from any offices and/or directorships which you may hold within the Company or any Associated Company or any trusteeships or any other appointments that you hold in connection with your employment. You also agree to sign and deliver to the Company on demand any further documentation and take such action to give effect to your resignations as the Company may reasonably require.

**Statements**

15. You will keep the fact of and contents of this letter confidential to yourself and your professional advisers and will not make publish or otherwise issue any detrimental or derogatory statements concerning the Company or any Associated Company or any of their present or former officers or employees or clients. You and the Firm will agree on a message concerning the circumstances of your separation from Lehman Brothers, and you will confine any comments to the substance of this message in discussions with any third party other than your immediate family and legal advisors. You will be paid the sum of £100 as consideration for this paragraph subject to the deduction of income tax and employees national insurance contributions. Payment will be made at the same time as the Compensation Sum is paid. For the avoidance of doubt you acknowledge and agree that whilst the consideration set out in this paragraph represents valuable consideration it does not amount to an estimate of or cap on the loss or damage which the Company or any Associated Company would suffer were you to breach any of the obligations set out in this paragraph.

**Compensation**

16. The Company shall for itself and each Associated Company pay to you the sum of £50,000 ("the Compensation Sum") as compensation in connection with the termination of your employment. The Compensation Sum will be paid (subject to you delivering to the Company all things that you are required to deliver pursuant to this letter):

    (a) subject to the deduction income tax (except as to the first £30,000) at the basic rate; and

-4-

(b) by means of a BACS transfer to your bank account within 14 days of the Termination Date.

**Benefit continuance**

17. You will continue to have the benefit of cover under the Company's private medical insurance scheme up to and including the Termination Date subject to the rules of the scheme.

**Tax indemnity**

18. The Company gives no warranty as to whether income tax or employee national insurance contributions are lawfully payable in respect of the Compensation Sum or any benefits provided under this letter which are to be made available to you after the Termination Date and you will be solely responsible for any such income tax and/or employee national insurance contributions which arise for payment except to the extent that the Company has made or does make an actual deduction in respect of such liability. Further you will indemnify the Company in respect of any assessments determination or demands levied or made by HM Revenue & Customs in respect of such liability and any interest charges or penalties arising in respect of it together with any costs and expenses incurred by the Company in dealing with any assessment.

**Full and final settlement**

19. The terms of this letter are without admission of any liability and shall be in full and final satisfaction of all and any claims or rights of action that you may have whether arising under European Union law common law statute or otherwise (save any such claim in respect of personal injury or accrued pension rights) in any jurisdiction whatsoever against the Company or any Associated Company or any of its or their present or former directors employees or agents in connection with or arising out of your employment the termination of your employment or any other matter whatsoever including any claim for damages or compensation for:

(a) breach of contract;

(b) unlawful deduction of wages in breach of s.13 Employment Rights Act 1996;

(c) unfair dismissal in breach of s94 Employment Rights Act 1996;

(d) breach of the equality clause implied under s.1 Equal Pay Act 1970;

(e) unlawful discrimination on the grounds of colour race nationality ethnic or national origins in breach of s.4 Race Relations Act 1976;

(f) being subjected to a detriment in contravention of s.47B and Part V Employment Rights Act 1996; and/or unfair dismissal in contravention of Part X and s.103A Employment Rights Act 1996;

(g) the Company's failure to pay you all or part of any protective award to which you are entitled in contravention of s.190 Trade Union and Labour Relations (Consolidation) Act 1992;

(h) the Company's failure to make you a redundancy payment pursuant to s.135 Employment Rights Act 1996;

(i) unlawful discrimination on the grounds of religion or belief in breach of Regulation 6 of the Employment Equality (Religion or Belief) Regulations 2003;

(j) unlawful discrimination on the grounds of age in breach of Regulation 7 of the Employment Equality (Age) Regulations 2006;

(k) holding or resigning any office in the Company or any Associated Company;

(l) personal injury of any kind to the extent that such claim arises out of or relies upon any alleged act of discrimination;

(m) unlawful discrimination on the grounds of sex or marital status in breach of s.6 Sex Discrimination Act 1975;

(n) unlawful discrimination on the grounds of disability in breach of s.4 Disability Discrimination Act 1995;

(o) distress, anxiety or financial loss caused by harassment under Section 3 of the Protection from Harassment Act 1997;

(p) being subjected to a detriment for a reason relating to the Working Time Regulations 1998 in contravention of Part V Employment Rights Act 1996;

and you agree to irrevocably waive any such claims or rights of action which you have. The claims specified in this paragraph 19 together the "Employee Claims" are claims which it is recognised you may have arising out of the circumstances surrounding your employment and its termination.

20. You further agree to refrain from instituting or continuing before any court or employment tribunal any proceedings against the Company and/or any Associated Company complaining of any of the above matters.

21. You confirm that:

(a) prior to accepting the terms of this letter you received independent legal advice from a qualified solicitor ("the Qualified Lawyer") as to the terms and effect of the letter if accepted by you and in particular its effect on your ability to pursue your rights before an employment tribunal;

(b) you have been advised by the Qualified Lawyer that there is in force and was at the time you received the advice referred to above a contract of insurance or an indemnity provided for members of a profession or professional body covering the risk of a claim by you in respect of loss arising in consequence of that advice; and

(c) it is agreed that the conditions regulating compromise agreements contained in s.203 Employment Rights Act 1996 s.77 Sex Discrimination Act 1975 s.72

- 6 -

Race Relations Act 1976 and s.9 Disability Discrimination Act 1995 Regulation 35 Working Time Regulations 1998 and s.288 (2B) Trade Union and Labour Relations (Consolidation) Act 1992 Schedule 4 of the Employment Equality (Religion or Belief) Regulations 2003 and Schedule 4 of the Employment Equality (Sexual Orientation) Regulations 2003 are intended to be and have been satisfied.

**Warranties**

22. You represent and warrant that you are not aware of any facts or circumstances that may give rise to any claim (including any claim for personal injury) that you may have other than those referred to in paragraph 19 and you further represent and warrant that:

    (a) you have not withheld or failed to disclose any material fact concerning the performance of your duties owed to the Company;

    (b) you are not aware of any breach by you of any duty owed by you to the Company; and

    (c) you have not at any time committed a repudiatory breach of your contract of employment which would entitle the Company to terminate your employment summarily without compensation.

**Contribution to legal fees**

23. The Company will make a contribution of a sum of up to £1,000 in respect of your legal costs in connection with the termination of your employment (and will pay the VAT attributable to the contribution) such contribution to be paid direct to the Qualified Lawyer's firm against an invoice addressed to you but stated to be payable by the Company.

**Governing law**

24. The terms of this letter shall be governed by English law.

**Further Assistance**

25. You shall on reasonable notice provide all such reasonable assistance and documents as the Company may reasonably request to enable the Company to deal with any existing or potential claims, investigations, administrative proceedings or legal proceedings relating to business matters in which you were involved during your employment with the Company. Related customary travel and accommodation expenses will be reimbursed by the Company in accordance with its policies and procedures.

**Outplacement Counselling**

26. To assist you in your search for suitable alternative employment the Company shall arrange for you to be provided with outplacement counselling and assistance for a period of 3 months at the Company's expense.

Miscellaneous

27. In this letter the term "Associated Company" shall mean any holding company or companies of the Company and any subsidiary or subsidiaries of the Company or of any such holding company and "holding company" and "subsidiary" shall have the meanings assigned to them respectively by s.736 Companies Act 1985.

28. The terms of this letter contain the entire understanding between us and supersedes all if any subsisting agreements arrangements or understandings written or oral relating to the termination of your employment and any such agreements arrangements or understandings shall be deemed to have been terminated by mutual consent.

29. The headings in this letter are for convenience only and do not affect its interpretation.

If the terms set out above are acceptable to you to effect an open and binding agreement between you and the Company please:

(a) sign and date the enclosed duplicate of this letter by 19 September 2008; and

(b) have the Qualified Lawyer:

    (i) sign and date the certificate attached to the duplicate; and then

    (ii) return the duplicate to me under cover of a letter on the headed notepaper of the Qualified Lawyer's firm.

Yours sincerely

*[signature]*

for and on behalf of Lehman Brothers Limited


I confirm my acceptance of the terms set out above.

Signed... *[signature]*
Charlotte Brereton Grezo

Dated... 12/9/08

- 8 -

# lewissilkin

12 September 2008

**Private & Confidential**
**Addressee Only**
**Human Resources Department**
Lehman Brothers Limited
25 Bank Street
London
E14 5LE

Our ref:    AJL/CEO/87932.1/1711425-1

Dear Sirs

**Charlotte Brereton Grezo**

We act for Charlotte Brereton Grezo. Please find enclosed our client's signed compromise agreement.

Yours faithfully

*[signature]*

Lewis Silkin LLP

Enc.

Lewis Silkin LLP
5 Chancery Lane
Clifford's Inn
London EC4A 1BL

DX 182 Chancery Lane

Office details
T  +44 (0)20 7074 8000
F  +44 (0)20 7864 1200
E  info@lewissilkin.com
W  www.lewissilkin.com

Toni Lorenzo
T  +44 (0)20 7074 8083
F  +44 (0)20 7864 1779
E  toni.lorenzo@lewissilkin.com

ius Laboris | Global Human Resources Lawyers

Lewis Silkin LLP is a limited liability partnership registered in England and Wales. Registered No.OC317120. Registered office: 5 Chancery Lane Clifford's Inn London EC4A 1BL. Regulated by the Solicitors Regulation Authority. A list of the members of Lewis Silkin LLP is open to inspection at the registered office.

## QUALIFIED LAWYER'S CERTIFICATE

I hereby certify that:

(a) I [ TONI LORENZO ] of [ LEWIS SILKIN LLP ] am a solicitor of the Supreme Court of England and Wales holding a current practising certificate

(b) I have advised Charlotte Brereton Grezo of the terms and effect of the letter to which this certificate is attached and in particular its effect on his ability to pursue his rights before an Employment Tribunal in respect of those proceedings referred to in paragraph 19 of the letter and to pursue any common law claims before a Court or Employment Tribunal following his acceptance of the terms of the letter.

(c) There was in force at the time that I gave the advice referred to above a contract of insurance or indemnity provided for members of a profession or professional body covering the risk of a claim by my client in respect of loss arising in consequence of that advice.

Signature of Qualified Lawyer .........................................

Qualified Lawyer's Name in Print ........ TONI LORENZO ........

Name of Firm ........ LEWIS SILKIN LLP ........

Address of Firm ........ 5 CHANCERY LANE ........
........ CLIFFORD'S INN ........
........ LONDON EC4A 1BL ........

Date ........ 12 September 2008 ........

-9-



26 Huron Road
Tooting
London SW17 8RB
United Kingdom

Tel: + 44 7788 450145
Email: charlottegrezo@aol.com

5th September 2009

United States Bankruptcy Court
Southern District of New York
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

Dear Sir or Madam

### Dr Charlotte A B Grezo, Creditor

I am writing to you as a creditor of Lehman Brothers Holdings Inc and its affiliates. There are two enclosures

1. The completed Proof of Claim Form for Case Number 08-13555 (JMP), unique identification number 1000034896

2. A copy of a "compromise agreement" dated 12th September 2008 with a copy of the qualified lawyer's certificate.

All the conditions in that agreement have been met and all the amounts set out in its terms are due and payable. The total claim is for **$1,175570** (£645,917.58 @$1.82 = £1) in the following amounts which were due on the following dates. In respect of late payment interest should be added at full commercial rates.

| Description | Amount | Sterling | Due Date (no later) |
|---|---|---|---|
| Amount Representing Bonus | $731,644 (gross) | $1.82=£1.00 £402,002.20* | 10 Working Days of receipt of letter- Friday 26th September |
| Payment in Lieu 12 weeks | 12*£2584.61= £31,0115.38 less £11,200 £19,815.38 | £19,815.38 | 1st October 2008 |
| Contributions to Occupational Pension Scheme | £170,000 | £170,000 | Within 30 Days of termination date or receipt of letter (if later)-30[th] October 2008 (possibly 28th October 2008). |
| Compensation Amount | £50,000 | £50,000 | Within 14 days of termination date- 14th October 2008 (possibly 12th October 2008) |
| Legal Assistance and other within the agreement | £1000 plus £100 | £1,100 | 1st October 2008 |
| Outplacement Counselling-payment in lieu | Estimate £3,000 | Estimate £3,000 | 1st October 2008. |

\* Contract provides for average rate as defined by Lehman Brothers. This is not in my possession but may be obtainable by the Court. Pending more details I have estimated an average for the period from public data.

Dr C A B Grezo, tel: +44 7788 450145, e-mail: charlottegrezo@aol.      1

In that agreement I gave up certain rights and claims against Lehman Brothers Ltd and its Associated Companies (as defined by s736 Companies Act 1985) as well as acquiring ongoing obligations (Clause 13, 14 & 15). In return they undertook to make these payments set out above. The contract is accordingly enforceable in full against both Lehman Brothers Ltd and all its Associated Companies, throughout the world. You should note that as Global Head of Sustainability my role with Lehman Brothers included all Group companies particularly the US. Clauses 8 (pension) and 16 (Compensation) make clear that Associated companies obligations are part of the consideration.

There are a few additional points.

1       **Payment in October 2008**, I received a payment from Lehman Brother Ltd (in Administration) since this was equal to a months salary net of tax I propose to offset this against the heading payment in lieu of notice thus reducing the overall claim.

2       **Contribution to Occupational Pension Scheme.** I joined Lehman Brothers Ltd from Vodafone where I was a member of a well funded final salary occupational pension scheme. To compensate me for my early departure from that scheme and the substantial rights that I was immediately losing, Lehman's undertook to make a series of payments. These are represented by clause 7 & 8 of the agreement. I have been advised that in these circumstances a creditor in respect to these payments is a "preferred creditor" and the payments would be "preferred payments" ranking below expenses of administration and fixed charge holders but above general creditors. Once again this is in respect to the Company and all Associated Companies. The mechanics are however a little less clear as although it is my agreement, the payments are described as to be made to the Lehman Brothers Pension Scheme. I would suggest that we discuss this matter and liaise with the trustees and the scheme administrator.

A compromise agreement subsumes all the claims by both parties to it in one agreement providing certainty to both as well as giving additional rights to both. In this case Clause 19 makes this very clear. There is therefore no need for either party to resort to Employment Tribunals to determine rights, quantum, terms of employment etc. The document sets all the rights out in full. Obviously the Company has not yet met its obligations under this contract so, as the party wronged by the Company's breach of contract I have to reserve any rights I may have to take action to protect my interests, either against the company and its assets or its administrators. In particular I reserve any rights that I may have to contend that the Administrators may have adopted my contractual obligations as an administrative expense. I do so (inter alia) because I do not consider as a matter of fact that the administrators terminated my contract within 14 days of appointment.

As a creditor of the company and its associates I appreciate the work that is being done on my behalf and of the complexity of the problems being dealt with. It would help me to help them in their task and minimise difficulty if you were able to do the following-

1       Confirm receipt of this letter and its enclosures.

2       Confirm that you will treat this letter and its enclosures as delivery of a claim against all associated companies within the US.

I look forward to hearing from you.

Yours faithfully



Dr Charlotte A B Grezo

Encs:   1       Completed Standard Form of Claim
        2       Compromise agreement dated 12th September 2008



Dr C A B Grezo, tel: +44 7788 450145, e-mail: charlottegrezo@aol.                              2