UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                  :

In re                          :         Chapter 11 Case No.
                  :

LEHMAN BROTHERS HOLDINGS INC., et al.,  :        08-13555 (JMP)
                  :

                 Debtors.    :         (Jointly Administered)
                  :

------------------------------------------------------------- x

## AFFIRMATION OF CLAIMANT MICHAEL J. PETRUCELLI IN OPPOSITION TO DEBTORS' 313th OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS) DATED JUNE 4, 2012

Michael J. Petrucelli affirms under penalties of perjury as follows:

1.     I was employed by Lehman Brothers from 1993 through September 2008. My employment was terminated on September 9, 2008, less than one week before the bankruptcy filing.

2.     During the period of March 2001 through September 2008 when my employment was terminated as an employee of Lehman Brothers, I was paid solely on a commission basis. For each year between 2003 and 2008, Lehman Brothers issued to me an "RSU Agreement", which documented that a portion of the commissions I earned was withheld for payment in the future. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. *See, e.g.*, Debtors' Omnibus Reply to Responses to Debtors' 118th, 130th, 131st, 133d, 134th, 135th, 176th & 207th Omnibus Objections, Dec. 15, 2011, at pp. 65-68 (RSU Agreement for 2004).

3.     After my entry into the RSU Agreements, including after the termination of my employment, I continued to perform all of those contractual obligations.

4.      After the Petition Date, Debtors sent me a form of Proof of Claim, which I timely completed and filed and receipt of which Debtors acknowledged.  My original Proof of Claim relating to contract rights under the RSU Agreements was assigned Claim No. 5770.

5.      I amended my Proof of Claim on July 15, 2009, on a Proof of Claim form that Debtors provided to me.  In the form provided, Debtors had largely completed the form, including inserting the caption, a bar code, supplying my name and address, and describing the Scheduled Claim as a "Schedule G" claim, for an "Executory Contract or Unexpired Lease." Debtors also provided the "Description" as a claim under a "Restricted Stock Unit Agreement."

6.      On the attached Exhibit A, all of the typed information was contained in the form when Debtors provided it to me.  I added only my phone number, email address, the amount of the claim, $2,452,214.56 (based on a "Personal Award" provided by Lehman Brothers, which I attached), and my signature and date.  All of these documents are attached with Exhibit 1, together with Debtors' acknowledgement of receipt of the proof of claim.

7.      The practice followed each year by Lehman Brothers for commissioned salespeople was to calculate gross production and net production (commission payments) on a monthly basis.  (See attached Compensation Statement, page 7 of Exhibit 1.)  Between 2003 and 2008 Lehman deducted from the monthly net commission payments to me a total of $2,380,959. *See* Exhibit 1, p. 27. This amount was purportedly a deduction for the Lehman Brothers RSU equity incentive program.

8.      As shown on page 27 of Exhibit 1, during 2008 the sum of $161,697 was withheld from my monthly commissions.  This amount was never described in terms of RSUs; nor was it ever paid to me.

9.      The efforts by the Debtors' professionals to characterized these RSUs as "equity" is not consistent with what Lehman Brothers said at the time.  Lehman Brothers advised its

2

employees that no RSU holder "shall have any rights of any shareholder of the company with respect to shares of Common Stock subject to an award until the delivery of such shares of Common Stock." *See* Exhibit 1, p. 26. In fact, Lehman Brothers specifically advised that Lehman Brothers at all times reserved the rights to pay cash in lieu of shares. *Id.* (Pages 33-54 of my Proof of Claim are omitted due to size. Those are plan documents quoted on p. 26.)

10.      As these paragraphs illustrate, Lehman Brothers simply used the withheld portion of my commissions for general corporate purposes. Lehman Brothers' documents indicate that no shares were ever purchased on my account, that I held no equity and no rights of an equity-holder, and my claim is simply that of a general creditor.

11.      Further, I never paid tax on the portion of any amount withheld from my commissions for RSUs. For prior years, not at issue here, after my interests vested and I was permitted to draw down on my RSU account, Lehman Brothers would retain a portion in cash to pay the federal withholding tax, and then would use the balance to provide me with Lehman Brothers shares. The entire amount of the payment was treated as ordinary income to me and was taxed at ordinary income rates. My understanding is that Lehman Brothers was entitled to a business expense deduction for the amount of this portion of the bonus, but only at the time that it was actually paid.

12.      The economic substance of the RSU Agreements to me was that a portion of the my earned commissions was held back, and the amount of any commissions so withheld would be paid to me only after passage of five years, during which time I was subject to ongoing contractual obligations. At no time did Lehman suggest that I had ever failed to perform any of these contractual obligations, the breach of which could result in rescission of my commissions. However, under the terms of the RSU Agreements, Lehman Brothers was not required to pay me

anything from these reserved amounts, and in fact Lehman Brothers did not pay me anything, until five years after we entered into that RSU Agreement.  My claim is for these unpaid commissions.

13.    The amount of my claim to which Debtors object is $2,380,959.  *See* Debtors' 313th Omnibus Objection, Doc. 28433, p. 30 of 39 (Exhibit A, p. 15 of 22 of Ex. A page numbering).  This is the amount I have claimed for RSU-related compensation.  *See* Exhibit 1 at p. 27.  Accordingly, the other claims made in my Proof of Claim are not addressed by the Omnibus Objection and are not addressed here, and I reserve all rights to oppose any effort to deny these claims.

Affirmed under penalties of perjury this _17_ day of July, 2012.

_____
Michael J. Petrucelli

# EXHIBIT 1

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor 08-13555 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

UNIQUE IDENTIFICATION NUMBER: 555231040

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000005770

*THIS SPACE*

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555231040*****
MICHAEL J., PETRUCELLI
7 NEARWATER LANE
RIVERSIDE, CT 06878

Telephone number: 917-670-2952  Email Address: mpetruce@mindspring.com

☑ Check this box to indicate that this claim amends a previously filed claim.

Revise 2396    delete
Court Claim ✓    2396  206
Number:
(If known)

Filed on: 2/2/09    delete 206

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

Name and address where payment should be sent (if different from above)

$2,452,214.56

Telephone number:        Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 2,452,214.56
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** _____
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. **Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $ _____ Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____

**Amount of Secured Claim:** $ _____    **Amount Unsecured:** $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$ 10,950

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C.§503(b)(9):** $ _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
JUL 20 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 7/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



P 646 282 2500   F 646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

**** LBH CLMLTR (MERGE2,TXNUM2) 4000002374 ****
PETRUCELLI, MICHAEL J.
7 NEARWATER LANE
RIVERSIDE, CT 06878

July 01, 2009

### ACKNOWLEDGEMENT OF RECEIPT OF PROOF OF CLAIM

This letter serves as acknowledgement that the claim identified below has been recorded
by Epiq Bankruptcy Solutions, LLC, the court-approved claims agent, on the claims
register in the LEHMAN BROTHERS HOLDINGS INC. case.   To ensure that your
claim has been recorded correctly, please review the following information:

| | |
|---|---|
| Debtor: | LEHMAN BROTHERS HOLDINGS, INC. |
| Case Number: | 08-13555 |
| Creditor: | PETRUCELLI, MICHAEL J. |
| Date Received: | 02/02/2009 |
| Claim Number: | 2396 |

*Please note that nothing in this Acknowledgement should be construed to mean or imply
that your claim is being allowed.  The Debtor may elect to object to the identified claim
on various grounds.*

We also strongly encourage you to review your proof of claim on our website at
http://chapter11.epiqsystems.com/LBH.  To find your imaged claim, click on the "Filed
Claims & Schedules" icon at the top of the page, type in your claim number in the
"Claim #" field, and click "Search".  Additionally, you may search for your claim by
typing in your name in the appropriate search field.

If you have any questions, please contact us at 646-282-2500 or via our contact form on
our website at http://www.epiqbankruptcysolutions.com/contact.htm.  Please be sure to
specify the client name about which you are inquiring.

EPIQ BANKRUPTCY SOLUTIONS, LLC

2



P  646 282 2500   F  646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

**** LBH CLMLTR (MERGE2,TXNUM2) 4000000204 ****
PETRUCELLI, MICHAEL J.
7 NEARWATER LANE
RIVERSIDE, CT 06878

June 30, 2009

## ACKNOWLEDGEMENT OF RECEIPT OF PROOF OF CLAIM

This letter serves as acknowledgement that the claim identified below has been recorded by Epiq Bankruptcy Solutions, LLC, the court-approved claims agent, on the claims register in the LEHMAN BROTHERS HOLDINGS INC. case.   To ensure that your claim has been recorded correctly, please review the following information:

| | |
|---|---|
| Debtor: | NO DEBTOR ASSERTED BY CREDITOR |
| Case Number: | NO CASEZ99 |
| Creditor: | PETRUCELLI, MICHAEL J. |
| Date Received: | 10/16/2008 |
| Claim Number: | 206 |

*Please note that nothing in this Acknowledgement should be construed to mean or imply that your claim is being allowed.  The Debtor may elect to object to the identified claim on various grounds.*

We also strongly encourage you to review your proof of claim on our website at http://chapter11.epiqsystems.com/LBH.  To find your imaged claim, click on the "Filed Claims & Schedules" icon at the top of the page, type in your claim number in the "Claim #" field, and click "Search".  Additionally, you may search for your claim by typing in your name in the appropriate search field.

If you have any questions, please contact us at 646-282-2500 or via our contact form on our website at http://www.epiqbankruptcysolutions.com/contact.htm.  Please be sure to specify the client name about which you are inquiring.

EPIQ BANKRUPTCY SOLUTIONS, LLC

Proof of Claim for creditor Michael J. Petrucelli
Debtor: Lehman Brothers Holdings
Case Number 08-13555
Revising Claim Number 2396


Attached are documents which detail and support my claim totaling $2,452,214.56.


**Section 1** is related to commissions due me for September 2008 production. A check for the amount of $18,595.70 was issued on or about September 12th to me by Lehman Brothers and was returned to me for insufficient funds. I am claiming this as apriority claim under 11 U.S.C }507(a).

**Section 2** is a claim for the lump sum special separation payment of $25,000 that was pledged to be delivered in the firm's September 9, 2008 separation Agreement to me. That commitment was rescinded in a letter from Lehman Brothers Holdings Inc. dated September 30, 2008 because of the bankruptcy filing.

**Section 3** is a claim for a payment of $1289.86 made by me to pay for Health Care coverage under Cobra which had been promised to have been paid for by Lehman Brothers until September 9, 2009 as outlined in the firm's September 9, 2008 separation agreement to me. That commitment was rescinded in a letter from Lehman Brothers Holdings Inc. dated September 30, 2008 because of the bankruptcy filing.

**Section 4** is a claim for earnings that were withheld involuntarily from my paycheck to participate in Lehman Brothers Restricted Stock Plan (RSU) and the Lehman Brothers Stock Option Plan (stock options only pertinent to me in 2004) dating back to 2003. The "Commissions Withheld" column totaling $2,380,959 correctly summarizes the yearly amounts contributed to the RSU and Stock Option Plan involuntarily by me. According to the RSU and Stock Option Plan (in Section 4 of this claim), this money was never invested in actual shares or options of Lehman Brothers and no shares for contribution years 2003-2008 were ever delivered to me, and the remaining options were not exercisable by me.

**Section 5** is a claim for the remaining balance of my "Lehman Brothers Partnership Account" for the amount of $26,370.


Michael J. Petrucelli
7 Nearwater Lane
Riverside, CT 06878
mpetruce@mindspring.com
(917) 670-2952

4

Michael Petrucelli Creditor Claims
For Lehman Brothers Bankruptcy

| | |
|---|---:|
| Commissions Due (paycheck dated 9/18/08 bounced) | $18,595.70 |
| Severance Due | $25,000.00 |
| September Cobra Payment | $1,289.86 |
| Cash commissions witheld for RSUs (see worksheet) | $2,380,959.00 |
| Lehman Brothers Partnership | $26,370.00 |
| | **$2,452,214.56** |

① Commissions Due

michael J. Petrucelli

AA38067199
We have this day debited your account STEM : 7V

MW: 9/19 COMM PAY - 10018527

09/18/08 040-50186-1-5 *****$18,595.70
RR# 099
MW: 9/19 COMM PAY - 10018527

P/R WASH ACCOUNT
PAYROLL
ATTN L FAVIANO/L ROBERTO
70 HUDSON ST 10TH FLOOR
JERSEY CITY NJ   07302-4585
LEHMAN BROTHERS INC.
70 HUDSON STREET
10TH FLOOR, PAYROLL DEPARTMENT
JERSEY CITY, NJ 07302-4585



CH

CHASE

Open a Home Equity Line of Credit,
Consolidate your bills,
Remodel your home, Pay for college,
Talk to a Personal Banker today!

My Transaction Summary
*****************************************
Transaction #92
Account Number Ending In:            4465
Checking Deposit              $18,595.70

If you make more than one deposit on
this business day, the availability of
your funds may be further delayed.
.............................................

JPMorgan Chase Bank, N.A.
East Putnam Ave, Branch 003242
1-800-935-9935
Member FDIC, Equal Housing Lender
Please keep your receipt
09/26/2008 12:29

Business Date 09/26/2008
Session #49

Thank you - andrea
Cashbox #02

7

**CHASE**

PO Box 260161
Baton Rouge, LA  70826-0161

10/01/2008

Notification Number: 234777

MICHAEL PETRUCELLI
OR MARGARET M COX
7 NEARWATER LN
RIVERSIDE CT  06878-1105

## NOTIFICATION OF DEPOSITED CHECK BEING RETURNED UNPAID

We have been notified that a check deposited into your account is being returned to us unpaid.  Details regarding the check are listed below:

Deposit Information:

| | |
|---|---|
| Account Number: | 000343001934465 |
| Date of Deposit: | 09/26/2008 |
| Amount of Total Deposit: | $18,595.70 |

Unpaid Check Information:

| | |
|---|---|
| Amount of Check: | $18,595.70 |
| Check Number: | 067199 |
| Issuer: | LEHMAN BROTHERS INC. |
| Payee: | MICHAEL J PETRUCELLI |
| Paying Bank: | THE BANK OF NEW YORK MELLON |
| Reason for Return: | REF.MAKER |

We will debit your account for the amount of the unpaid check when we receive it.  For more information about this check, please contact the issuer.

Thank you for your business.  If you have any question, please contact us at:  1-800-935-9935

Petrucelli  Commission for

← scheduled to settle in Sept

| Month | Fiscal 2008 Revenue | Payout | Rate (%) |
|---|---|---|---|
| December | 262,825.04 | 48,334.88 | 18.39 |
| January | 646,546.37 | 92,540.61 | 14.31 |
| February | 834,568.70 | 151,800.78 | 18.19 |
| March | 662,950.43 | 111,918.03 | 16.88 |
| April | 327,290.67 | 38,384.25 | 11.73 |
| May | 243,199.80 | 29,141.04 | 11.98 |
| June | 348,232.56 | 37,695.80 | 10.82 |
| July | 292,866.02 | 37,616.86 | 12.84 |
| August | 198,792.35 | 28,386.41 | 14.28 |
| September | 252,107.70 | 29,269.70 | 11.61 |
| October | | | |
| November | | | |
| Year Total | 4,069,379.64 | 605,088.36 | 14.97 |

**Michael Petrucelli**

**Sent:**   Friday, September 19, 2008 9:06 AM

**Subject:** IR Payment - From Rhoda

### Production Paid Employee Payroll Talking Points – Date 9-19-08

We understand that there have been rumors and concerns regarding your production payout.

We wanted to let you know that while we are confident that you would be paid the amounts that you are owed, to allay these concerns we have decided to pay your production payout for all transactions that have settled through September 16, 2008.

*$18,595.70  1 check # 067199  retained unpaid*

You will receive this paycheck today.  It will be paid to you in the way that you typically receive a paycheck (e.g., direct deposit, check mailed to home).  Because of the off-cycle payment, you may not receive a physical notification of the payment.

Going forward, your will be paid in accordance with the Firm's ordinary payroll practices.

Q.   Does this mean that Lehman can't pay its employees?

A.   No.  These are extraordinary circumstances and we recognize the concerns and anxiety felt by many employees.  To address these concerns and give employees comfort, we are making this early payment.

Q.   What is happening with the RSU accrual?

A.   We did not accrue for RSU's

Q.   Are all IRs receiving this payment?

A.   Yes.  All PIM and ICG production paid employees are receiving this early payment.

Q.   What about my sales assistant?  When will he/she get a journal?

A.   Non-production paid employees will be paid in accordance with the Firm's regular payroll practices.



LEHMAN BROTHERS
385 Park Avenue, New York, NY 10022

**Michael Petrucelli**

**From:** Picotte, David [david.picotte@lehman.com]
**Sent:** Wednesday, September 10, 2008 7:34 AM
**To:** Peritz, Rhoda; Petrucelli, Michael; Slattery, Maureen B
**Cc:** mpetruce@mindspring.com; Hutchinson, Michael W
**Subject:** RE: Two Trades Naking-Petrucelli

This has been corrected and flowed through this morning.

**From:** Peritz, Rhoda
**Sent:** Tuesday, September 09, 2008 3:42 PM
**To:** Petrucelli, Michael; Slattery, Maureen B
**Cc:** Picotte, David; 'mpetruce@mindspring.com'
**Subject:** RE: Two Trades Naking-Petrucelli

we will

**From:** Petrucelli, Michael
**Sent:** Tuesday, September 09, 2008 3:40 PM
**To:** Peritz, Rhoda; Slattery, Maureen B
**Cc:** Picotte, David; 'mpetruce@mindspring.com'
**Subject:** FW: Two Trades Naking-Petrucelli

Hello
I am asking that you follow up on this to make sure I am credited for this production.
Thanks
Petro

**From:** Picotte, David
**Sent:** Tuesday, September 09, 2008 9:49 AM
**To:** Petrucelli, Michael
**Subject:** FW: Two Trades Naking

**From:** Picotte, David
**Sent:** Tuesday, September 09, 2008 9:48 AM
**To:** IMD Application Support-NY
**Subject:** Two Trades Naking

All:

I have two trades Naking after I re-allocated them yesterday.  They are causing a sales credit issue as they are not flowing through.

Master Number: M075436 (Flagstar Bank)
MTS Acct #: 1146990

Sales Station Trade Ids: 1706963

10/13/2008

Section 2

Severance Due

Michael J. Petrucelli

12

# LEHMAN BROTHERS HOLDINGS INC.

September 30, 2008

Dear Mr. Petrucelli:

We are disappointed to inform you that as a result of the bankruptcy of Lehman Brothers Holdings Inc. and the placement of Lehman Brothers Inc. into a liquidation proceeding under the Securities Investor Protection Act (SIPA), Lehman Brothers is unfortunately no longer able to provide the salary continuation or other payments described in your separation agreement. As a result, you will not receive a payment on October 3, 2008 or thereafter.

You may continue to be covered under any current medical, dental and/or vision benefits through the end of your original salary continuation date as set out in your separation agreement. Because you will no longer receive salary continuation payments from which your employee contributions for these benefits can be deducted, you will be billed monthly for these costs. An invoice will be mailed to your home with instructions on how and when to return your payment. Your current coverage is in effect and will remain in place subject to timely payment of your contributions.

The cost to you for medical, dental and/or vision coverage will remain the same through December 2008 but may increase in the future. As of your termination date, you may be eligible to continue these benefits for up to 18 months under COBRA.

For other voluntary benefits you may be covered under, you will receive a mailing directly from the insurance carrier to continue your coverage on a direct bill basis (for example, MetLife Auto & Home, Mass Mutual Group Variable Universal Life Insurance, Hyatt Legal).

As a matter of federal law, the assets of the Lehman Brothers Savings Plan (401(k) plan) and Lehman Brothers Holdings Inc. Retirement Plan (pension plan) are protected from the claims of Lehman Brothers' creditors. Information about these entitlements is available through Fidelity NetBenefits at www.netbenefits.fidelity.com or by calling 1-866-534-6266.

If you are owed additional severance payments that cannot be paid at this time as a result of the various Lehman bankruptcy proceedings, you will have claims for these amounts that can be filed as part of the bankruptcy process. At some point in the future, you will be receiving notification of the procedures for the filing of claims and the date by which the claims must be filed. A deadline for filing claims has not yet been set.

Also, if you have not yet done so, you may wish to apply for unemployment insurance benefits in your state. Information about applying for unemployment benefits is enclosed.

We recognize that this is difficult news and that you may have questions about this situation. Please call the Lehman Brothers HR Service Center at 212.526.2363. They can answer your questions or direct your call to someone who can.

Very truly yours,

LEHMAN BROTHERS HOLDINGS INC.

13

# LEHMAN BROTHERS

LORI BLANKSTEIN
VICE PRESIDENT
INVESTMENT MANAGEMENT HUMAN RESOURCES

September 9, 2008

Michael Petrucelli
By Hand

Dear Michael:

This is an agreement and release concerning your separation from employment by Lehman Brothers. If you sign and comply with this agreement, you will receive the payments and benefits discussed below.

**Effective Dates, Payments and Benefits**

1. Today will be the last day that you are expected to report to work.

2. You will receive a lump sum special separation payment consisting of $25,000 on or about four weeks after our receipt of this signed agreement. All payments will be subject to withholding, payroll taxes and other applicable deductions.

3. In addition, Lehman will pay for the cost of your COBRA coverage through no later than September 8, 2009 if you are not otherwise eligible to be covered by any other group health insurance plan. If you become eligible to participate in another group health insurance plan during your period of COBRA coverage and prior to September 8, 2009 you must notify the Human Resources Service Center (212-526-2363) at which time Lehman will discontinue this coverage.

4. Lehman Brothers has retained Right Management Consultants to provide you with outplacement counseling services. These services are designed to assist you with counseling on resume writing, interviewing skills, networking techniques, and a job search campaign. We encourage you to take advantage of these services in order to ensure a smooth career transition. To sign up, please call John Henrikson at (800) 490-8494.

5. You and your covered dependents, pursuant to the COBRA law, may be eligible to continue health insurance coverage for up to 18 months from your separation date, at your own expense. Your right to continue or convert coverage (including COBRA coverage) after your separation date will be governed by the terms of our plans.

6. Your rights to benefits under any employee benefits plans will be determined in accordance with the terms of such plans. Our employee benefits plans may be modified or terminated at any time.

7. As you are aware, for certain of your outstanding and unvested restricted stock unit awards ('RSUs') granted to you in connection with the Lehman Brothers Equity Award Program, you are expressly required to execute a release agreement as a condition of 'involuntary termination without cause' treatment under those awards. If you sign and comply with this separation agreement, you will satisfy the release requirement applicable to such awards.

**Complete Release**

You agree to forever release Lehman Brothers Inc., any of its affiliated companies, past and present parents, subsidiaries, divisions and present and former employees, officers, directors, successors and

*14*

Michael Petrucelli
Page 2

assigns from all claims you may now have based on your employment with any Lehman affiliate or the separation of that employment, to the maximum extent permitted by law.  This includes a release, to the maximum extent permitted by law, of any rights or claims you may have under: the Age Discrimination Employment Act, which generally prohibits age discrimination in employment; Title VII of the Civil Rights Act of 1964, which generally prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which generally prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which generally prohibits discrimination on the basis of disability; the Employee Retirement Income Security Act of 1974, which governs the provision of pension and welfare benefits; and all other federal, state or local laws prohibiting employment discrimination.  This also includes a release by you of any claims for wrongful discharge, any compensation claims, or any other claims under any statute, rule, regulation, or under the common law.  This release covers both claims that you know about and those you may not know about.

**Non-disclosure Provisions**

You agree not to disclose to anyone except your immediate family, accountant, and lawyer any information relating to the subject matter or existence of this agreement, including the dollar amount set forth, except to the extent required by legal process.  Any disclosure to your immediate family, accountant or lawyer shall be made only upon their agreement not to disclose these terms to another person. Notwithstanding the foregoing, the parties may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to either party relating to such tax treatment.

**Firm Property; Confidential Information**

You agree that all proprietary or confidential information concerning Lehman, its business or customers which you learned, received, or developed while an employee of Lehman is and shall remain the exclusive property of Lehman.  You agree that you will not, without Lehman's express written consent, (1) disclose any of Lehman's confidential or proprietary information to any entities or individuals outside of Lehman, including to any competitors, the media, or other third parties, or (2) use such information for your own personal benefit or for the benefit of any individual or entity other than Lehman. You further agree to return to Lehman any and all Lehman property that you possess, including Lehman confidential or proprietary information, within one week after your last day of active employment.

**Registration**

If you are currently registered with Lehman, your registration will cease as of your last day of active employment.   Once you join another firm, you should immediately contact the new firm's Registration Department to transfer your registrations, as the transfer does not occur automatically. Your new firm should have you complete a new U-4 form.

**Disparaging Remarks**

You agree not to make any remarks now or at any time in the future to any third party, including to a client, a competitor, or the media, that could be detrimental in any way to Lehman or to individual directors or employees of Lehman.  This does not restrict your ability to respond to any inquiry that you may receive from applicable regulatory authorities or to disclose information pursuant to subpoena or legal process.

## Future Cooperation

You agree to reasonably cooperate with Lehman, its financial and legal advisors and/or government officials in connection with any business matters in which you were involved or any claims, investigations, administrative proceedings or lawsuits which relate to your Lehman employment. Related travel and accommodation expenses will be reimbursed in accordance with Lehman's standard policies.

## Arbitration

Any controversy arising out of or relating to this agreement shall be submitted to arbitration pursuant to the constitution and rules of the Financial Industry Regulatory Authority (FINRA).

## Consultation with Attorney

You have been advised to consult with an attorney concerning this agreement and acknowledge that you have had ample opportunity to do so before signing.

## Separation Booklet

You acknowledge that you have received and reviewed a copy of the Firm's booklet, "Guide to Leaving Lehman Brothers."

## Employment Inquiries

It is the Firm's policy to provide only limited information to non-Lehman individuals or organizations. Verify Job System, the vendor retained to provide this information, will disclose dates of employment and your last job title. Requestors can access the verification system online at www.vjsus.com or by calling 800-800-4857. Requestors will need your Social Security number in order to verify your employment information for a nominal fee. This shall not restrict Lehman's ability to provide complete information with respect to your employment when expected to do so under applicable regulatory requirements.

## Entire Agreement

This agreement constitutes the entire agreement between the parties and cannot be altered except in writing signed by both parties. The terms of this agreement supersede any other oral or written arrangement between you and the Firm with respect to your employment or the separation of your employment by the Firm including but not limited to any entitlements you may have under the Firm's severance policy. Both parties acknowledge that no representations were made to induce execution of this agreement, which are not expressly contained in this agreement.

## Successorship; Controlling Law

This agreement will be binding on Lehman and its successors and assigns and will also be binding on you, your heirs, administrators, executors and assigns. This agreement will be construed under the substantive law of the State of New York, without regard to conflict of law principles.

## Separation Program

*16*

You acknowledge that the separation payments and benefits recited in this agreement are being offered to you as part of a separation program (the 'Program') offered to certain employees whose employment is being terminated. The Program is described in Appendix A, which is attached to this agreement. The provisions of Appendix A are incorporated into this agreement and considered a part of this agreement.

## Period for Review and Consideration of Agreement

You have been given a period of forty-five (45) days from the date of this letter to review and consider this agreement before signing it. Please return this document to my attention in one of the following ways:

| | |
|---|---|
| By Mail: | Lori Blankstein |
| | 399 Park Ave, 6th Floor |
| | New York, NY  10022 |
| or by Fax: | 212-520-9389 |
| or by E-Mail: | Lori.blankstein@lehman.com |

You may use as much of this of forty-five (45) day period as you wish prior to signing. If you have not signed and returned this agreement by that date, you will not be eligible to receive the payments and benefits described in this agreement.

## Employee's Rights to Revoke Agreement

You may revoke this agreement within seven (7) days of your signing it. Revocation can be made by delivering a written notice of revocation to my attention at the address noted above. If you revoke this agreement it shall not be effective or enforceable and you will not receive the payments described in this agreement.

**You acknowledge that you have read this agreement, understand it and are voluntarily entering into it.**

LEHMAN BROTHERS INC.


Lori Blankstein


_____
Michael Petrucelli


_____
Date

*17*

Section 3

September Cobra Payment

Michael J Petrucelli

per Separation Agreement

# LEHMAN BROTHERS HOLDINGS INC.

September 30, 2008

Dear Mr. Petrucelli:

We are disappointed to inform you that as a result of the bankruptcy of Lehman Brothers Holdings Inc. and the placement of Lehman Brothers Inc. into a liquidation proceeding under the Securities Investor Protection Act (SIPA), Lehman Brothers is unfortunately no longer able to provide the salary continuation or other payments described in your separation agreement. As a result, you will not receive a payment on October 3, 2008 or thereafter.

You may continue to be covered under any current medical, dental and/or vision benefits through the end of your original salary continuation date as set out in your separation agreement. Because you will no longer receive salary continuation payments from which your employee contributions for these benefits can be deducted, you will be billed monthly for these costs. An invoice will be mailed to your home with instructions on how and when to return your payment. Your current coverage is in effect and will remain in place subject to timely payment of your contributions.

The cost to you for medical, dental and/or vision coverage will remain the same through December 2008 but may increase in the future. As of your termination date, you may be eligible to continue these benefits for up to 18 months under COBRA.

For other voluntary benefits you may be covered under, you will receive a mailing directly from the insurance carrier to continue your coverage on a direct bill basis (for example, MetLife Auto & Home, Mass Mutual Group Variable Universal Life Insurance, Hyatt Legal).

As a matter of federal law, the assets of the Lehman Brothers Savings Plan (401(k) plan) and Lehman Brothers Holdings Inc. Retirement Plan (pension plan) are protected from the claims of Lehman Brothers' creditors. Information about these entitlements is available through Fidelity NetBenefits at www.netbenefits.fidelity.com or by calling 1-866-534-6266. .

If you are owed additional severance payments that cannot be paid at this time as a result of the various Lehman bankruptcy proceedings, you will have claims for these amounts that can be filed as part of the bankruptcy process. At some point in the future, you will be receiving notification of the procedures for the filing of claims and the date by which the claims must be filed. A deadline for filing claims has not yet been set.

Also, if you have not yet done so, you may wish to apply for unemployment insurance benefits in your state. Information about applying for unemployment benefits is enclosed.

We recognize that this is difficult news and that you may have questions about this situation. Please call the Lehman Brothers HR Service Center at 212.526.2363. They can answer your questions or direct your call to someone who can.

Very truly yours,


LEHMAN BROTHERS HOLDINGS INC.

*19*

# LEHMAN BROTHERS

· LORI BLANKSTEIN
VICE PRESIDENT
INVESTMENT MANAGEMENT HUMAN RESOURCES

September 9, 2008

Michael Petrucelli
By Hand

Dear Michael:

This is an agreement and release concerning your separation from employment by Lehman Brothers. If you sign and comply with this agreement, you will receive the payments and benefits discussed below.

**Effective Dates, Payments and Benefits**

1. Today will be the last day that you are expected to report to work.

2. You will receive a lump sum special separation payment consisting of $25,000 on or about four weeks after our receipt of this signed agreement. All payments will be subject to withholding, payroll taxes and other applicable deductions.

3. In addition, Lehman will pay for the cost of your COBRA coverage through no later than September 8, 2009 if you are not otherwise eligible to be covered by any other group health insurance plan. If you become eligible to participate in another group health insurance plan during your period of COBRA coverage and prior to September 8, 2009 you must notify the Human Resources Service Center (212-526-2363) at which time Lehman will discontinue this coverage.

4. Lehman Brothers has retained Right Management Consultants to provide you with outplacement counseling services. These services are designed to assist you with counseling on resume writing, interviewing skills, networking techniques, and a job search campaign. We encourage you to take advantage of these services in order to ensure a smooth career transition. To sign up, please call John Henrikson at (800) 490-8494.

5. You and your covered dependents, pursuant to the COBRA law, may be eligible to continue health insurance coverage for up to 18 months from your separation date, at your own expense. Your right to continue or convert coverage (including COBRA coverage) after your separation date will be governed by the terms of our plans.

6. Your rights to benefits under any employee benefits plans will be determined in accordance with the terms of such plans. Our employee benefits plans may be modified or terminated at any time.

7. As you are aware, for certain of your outstanding and unvested restricted stock unit awards ('RSUs') granted to you in connection with the Lehman Brothers Equity Award Program, you are expressly required to execute a release agreement as a condition of 'involuntary termination without cause' treatment under those awards. If you sign and comply with this separation agreement, you will satisfy the release requirement applicable to such awards.

**Complete Release**

You agree to forever release Lehman Brothers Inc., any of its affiliated companies, past and present parents, subsidiaries, divisions and present and former employees, officers, directors, successors and

2.0

Michael Petrucelli
Page 2

assigns from all claims you may now have based on your employment with any Lehman affiliate or the separation of that employment, to the maximum extent permitted by law. This includes a release, to the maximum extent permitted by law, of any rights or claims you may have under: the Age Discrimination Employment Act, which generally prohibits age discrimination in employment; Title VII of the Civil Rights Act of 1964, which generally prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which generally prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which generally prohibits discrimination on the basis of disability; the Employee Retirement Income Security Act of 1974, which governs the provision of pension and welfare benefits; and all other federal, state or local laws prohibiting employment discrimination. This also includes a release by you of any claims for wrongful discharge, any compensation claims, or any other claims under any statute, rule, regulation, or under the common law. This release covers both claims that you know about and those you may not know about.

**Non-disclosure Provisions**

You agree not to disclose to anyone except your immediate family, accountant, and lawyer any information relating to the subject matter or existence of this agreement, including the dollar amount set forth, except to the extent required by legal process. Any disclosure to your immediate family, accountant or lawyer shall be made only upon their agreement not to disclose these terms to another person. Notwithstanding the foregoing, the parties may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to either party relating to such tax treatment.

**Firm Property; Confidential Information**

You agree that all proprietary or confidential information concerning Lehman, its business or customers which you learned, received, or developed while an employee of Lehman is and shall remain the exclusive property of Lehman. You agree that you will not, without Lehman's express written consent, (1) disclose any of Lehman's confidential or proprietary information to any entities or individuals outside of Lehman, including to any competitors, the media, or other third parties, or (2) use such information for your own personal benefit or for the benefit of any individual or entity other than Lehman. You further agree to return to Lehman any and all Lehman property that you possess, including Lehman confidential or proprietary information, within one week after your last day of active employment.

**Registration**

If you are currently registered with Lehman, your registration will cease as of your last day of active employment. Once you join another firm, you should immediately contact the new firm's Registration Department to transfer your registrations, as the transfer does not occur automatically. Your new firm should have you complete a new U-4 form.

**Disparaging Remarks**

You agree not to make any remarks now or at any time in the future to any third party, including to a client, a competitor, or the media, that could be detrimental in any way to Lehman or to individual directors or employees of Lehman. This does not restrict your ability to respond to any inquiry that you may receive from applicable regulatory authorities or to disclose information pursuant to subpoena or legal process.

21

## Future Cooperation

You agree to reasonably cooperate with Lehman, its financial and legal advisors and/or government officials in connection with any business matters in which you were involved or any claims, investigations, administrative proceedings or lawsuits which relate to your Lehman employment. Related travel and accommodation expenses will be reimbursed in accordance with Lehman's standard policies.

## Arbitration

Any controversy arising out of or relating to this agreement shall be submitted to arbitration pursuant to the constitution and rules of the Financial Industry Regulatory Authority (FINRA).

## Consultation with Attorney

You have been advised to consult with an attorney concerning this agreement and acknowledge that you have had ample opportunity to do so before signing.

## Separation Booklet

You acknowledge that you have received and reviewed a copy of the Firm's booklet, "Guide to Leaving Lehman Brothers."

## Employment Inquiries

It is the Firm's policy to provide only limited information to non-Lehman individuals or organizations. Verify Job System, the vendor retained to provide this information, will disclose dates of employment and your last job title. Requestors can access the verification system online at www.vjsus.com or by calling 800-800-4857. Requestors will need your Social Security number in order to verify your employment information for a nominal fee. This shall not restrict Lehman's ability to provide complete information with respect to your employment when expected to do so under applicable regulatory requirements.

## Entire Agreement

This agreement constitutes the entire agreement between the parties and cannot be altered except in writing signed by both parties. The terms of this agreement supersede any other oral or written arrangement between you and the Firm with respect to your employment or the separation of your employment by the Firm including but not limited to any entitlements you may have under the Firm's severance policy. Both parties acknowledge that no representations were made to induce execution of this agreement, which are not expressly contained in this agreement.

## Successorship; Controlling Law

This agreement will be binding on Lehman and its successors and assigns and will also be binding on you, your heirs, administrators, executors and assigns. This agreement will be construed under the substantive law of the State of New York, without regard to conflict of law principles.

## Separation Program

Michael Petrucelli
Page 4

You acknowledge that the separation payments and benefits recited in this agreement are being offered to you as part of a separation program (the 'Program') offered to certain employees whose employment is being terminated. The Program is described in Appendix A, which is attached to this agreement. The provisions of Appendix A are incorporated into this agreement and considered a part of this agreement.

## Period for Review and Consideration of Agreement

You have been given a period of forty-five (45) days from the date of this letter to review and consider this agreement before signing it. Please return this document to my attention in one of the following ways:

|  |  |
|---|---|
| By Mail: | Lori Blankstein<br>399 Park Ave, 6th Floor<br>New York, NY  10022 |
| or by Fax: | 212-520-9389 |
| or by E-Mail: | Lori.blankstein@lehman.com |

You may use as much of this of forty-five (45) day period as you wish prior to signing. If you have not signed and returned this agreement by that date, you will not be eligible to receive the payments and benefits described in this agreement.

## Employee's Rights to Revoke Agreement

You may revoke this agreement within seven (7) days of your signing it. Revocation can be made by delivering a written notice of revocation to my attention at the address noted above. If you revoke this agreement it shall not be effective or enforceable and you will not receive the payments described in this agreement.

**You acknowledge that you have read this agreement, understand it and are voluntarily entering into it.**

LEHMAN BROTHERS INC.


Lori Blankstein


_____
Michael Petrucelli


_____
Date

23

INDIVIDUAL PLANS ADMINISTRATION
151 FARMINGTON AVENUE  MB52
HARTFORD, CT 06156-7622

IIₙₙₗₗIₙₗₗₗₗₗₗₙₗₗₙₗₙₙₗₗIₙₙₗₗIIIₙₙₗₗIₗIIₙₙₗₙₗIₙₙII

MICHAEL PETRUCELLI
7 NEARWATER LN
RIVERSIDE CT 06878-1105

*Cobra payment*

10/11/2008

CSA: P697759-          POLICYHOLDER: LEHMAN BROTHERS HOLDING INC.
IDENTIFICATION NUMBER: N00710354

DEAR MICHAEL PETRUCELLI:

THIS LETTER IS TO ACKNOWLEDGE RECEIPT OF YOUR COBRA ENROLLMENT FORM.
IF YOU WISH TO BE COVERED UNDER THIS PLAN, FULL PREMIUM OF  $1289.86
MUST BE REMITTED BY 11/13/2008. THIS AMOUNT COVERS THE NUMBER OF MONTHS
SINCE YOUR COVERAGE WAS TERMINATED.

PLEASE RETURN PAYMENT WITH THE COMPLETED STUB BELOW. A RETURN ENVELOPE HAS BEEN
ENCLOSED FOR YOUR CONVENIENCE. IF THIS IS NOT POSTMARKED BY THE DATE SHOWN
BELOW, YOU WILL NO LONGER BE ELIGIBLE FOR COBRA CONTINUATION. UPON TIMELY
RECEIPT OF THIS PAYMENT, YOU WILL BEGIN RECEIVING MONTHLY BILLING STATEMENTS
WITH INSTRUCTIONS.

IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE INDIVIDUAL BILLING
ADMINISTRATION AT THE PHONE NUMBER LISTED BELOW MONDAY THROUGH FRIDAY 8:00 A.M.
TO 9:00 P.M. EASTERN TIME.

INDIVIDUAL BILLING ADMINISTRATION

(800) 429-9526


-----DETACH AT PERFORATION. KEEP THE UPPER PORTION FOR YOUR RECORDS.-----

Section  4

Claim for Commissions Earned

and withheld  for Lehman

RSU & Stock option Plan

for

michael J Petrucelli

25

**Documentation supporting unsecured claim** ~ *of RSU & stock options*

The RSU plan is an unfunded deferred compensation plan as evidenced by the following paragraphs from Lehman Brothers Holding 2005 Stock Incentive Plan Document (amended Nov 2007) and Lehman Brothers Holding 2005 Stock Incentive Plan Prospectus: (both are attached)

~ *(page 45 of this doc)*

From the top of page 4 (Prospectus) – <u>Except as otherwise provided in a Participant's Award agreement, no participant (or other person having rights pursuant to an Award) shall have any rights of a shareholder of the company with respect to share of Common Stock subject to an award until the delivery of such shares of Common Stock.</u>

~ *page 43 of this document*

From the top of page 11 (section 8) (Plan Document) - Unfunded Status of Plan; No Rights as Shareholder – <u>The plan is intended to constitute an "unfunded" plan for long-term incentive compensation. With respect to any payments not yet made to a Participant, including any Participant-optionee, by the company, nothing in here in contained shall give any Participant any rights that are greater than those of a general creditor of the Company.</u>

~ *page 42 of this document*

From the middle of page 10 (section 7b) (Plan Document) – <u>With respect to any restricted stock units granted under the plan, the obligations of the Company or any Subsidiary are limited solely to the delivery of Shares (or, at the discretion of the Committee, cash in lieu thereof to the extent necessary to comply with applicable laws, regulation, or other practice, as determined by the committee) on the date when such share are to be delivered under each Award Agreement.</u>

As the preceding paragraphs illustrate, any compensation contributed to the RSU plan was used for general corporate purposes until those share were actually delivered. Delivery dates would be five years after the contribution date. As such, compensation contributed to the plan for undelivered shares were used by the company to fund business operations and should receive unsecured creditor status.

Michael Petrucelli
Commissions WITH-HELD for Restricted Stock Units now Lost in Bankruptcy
and Commissions withheld for 2004 year Stock Options

|  | Commission Withheld | Strike Price | RSU | Options |
|---|---|---|---|---|
| 9/9/2008 | $129,958 | in accrual account |  |  |
| 7/2/2008 | $31,739 | 20.96 | 1514.265 |  |
| 12/7/2007 | $397,724 | 47.60 | 8355.546 |  |
| 12/8/2006 | $430,713 | 57.77 | 7455.652 |  |
| 12/8/2006 | $143,571 | 57.77 | 2485.217 |  |
| 11/30/2005 | $339,435 | 47.25 | 7183.81 |  |
| 11/30/2005 | $113,145 | 47.25 | 2394.603 |  |
| 12/9/2004 | $118,918 | 42.90 |  | 2772 |
| 12/9/2004 | $280,045 | 32.18 | 8703.807 |  |
| 12/9/2004 | $93,349 | 32.18 | 2901.29 |  |
| 12/10/2003 | $226,772 | 26.77 | 8471.124 |  |
| 12/10/2003 | $75,590 | 26.77 | 2823.683 |  |
|  | **$2,380,959** |  |  |  |

27

Lehman Website

Personal Award Summary

Americas Europe UK Asia Canada Japan South America

09 47 16 = 63
10 48 17 = 65 Dec 2010
11

Personal Award Summary

wail til Jan 31 2011 16 get 20

| Equity Award Program | RSU Vesting Schedule | Option Exercise Schedule | FAQ |

## Equity Award Summary for Mr Michael Petrucelli

### RESTRICTED STOCK UNITS ("RSUs")

| Grant Date | Description | Grant Price | Value of the Equity Award at Grant | Shares Granted | Dividend Reinvestment Earned | Total Outstanding | Shares Vested | Shares Issued | Market Value At $77.75* |
|---|---|---|---|---|---|---|---|---|---|
| Dec 08, 2006 | Principal | $57.7700 | $430,713 | 7,455.66 | 0.00 | 7,455.66 | 0.00 | 0.00 | $579,678 |
| Dec 08, 2006 | Discount | $57.7700 | $143,571 | 2,485.22 | 0.00 | 2,485.22 | 0.00 | 0.00 | $193,226 |
| Nov 30, 2005 | Principal | $47.2500 | $339,435 | 7,183.80 | 11.85 | 7,195.65 | 0.00 | 0.00 | $559,462 |
| Nov 30, 2005 | Discount | $47.2500 | $113,145 | 2,394.60 | 3.95 | 2,398.55 | 0.00 | 0.00 | $186,487 |
| Dec 09, 2004 | Principal | $32.1750 | $280,045 | 8,703.82 | 83.41 | 8,787.23 | 8,787.23 | 0.00 | $683,207 |
| Dec 09, 2004 | Discount | $32.1750 | $93,349 | 2,901.28 | 27.80 | 2,929.08 | 0.00 | 0.00 | $227,736 |
| Dec 10, 2003 | Principal | $26.7700 | $226,772 | 8,471.12 | 150.26 | 8,621.38 | 8,621.38 | 0.00 | $670,312 |
| Dec 10, 2003 | Discount | $26.7700 | $75,590 | 2,823.70 | 50.13 | 2,873.83 | 0.00 | 0.00 | $223,440 |
| Dec 11, 2002 | Principal | $20.4100 | $80,275 | 3,933.10 | 99.16 | 4,032.26 | 4,032.26 | 0.00 | $313,508 |
| Dec 11, 2002 | Discount | $20.4100 | $26,758 | 1,311.04 | 32.85 | 1,343.89 | 0.00 | 0.00 | $104,487 |
| Dec 03, 2001 | Principal | $23.7750 | $14,688 | 617.80 | 19.43 | 0.00 | 1.05 | 636.18 | $82 |
| Dec 03, 2001 | Discount | $23.7750 | $4,896 | 205.94 | 6.17 | 0.00 | 0.35 | 211.76 | $27 |
| Sep 20, 2001 | Principal | $17.4900 | $14,481 | 827.94 | 25.99 | 0.00 | 1.41 | 852.52 | $110 |
| Sep 20, 2001 | Discount | $17.4900 | $4,827 | 275.98 | 8.59 | 0.00 | 0.47 | 284.10 | $37 |
| Nov 30, 2000 | Principal | $19.8250 | $14,400 | 726.36 | 29.54 | 0.00 | 0.00 | 755.86 | $0 |
| Nov 30, 2000 | Discount | $19.8250 | $3,600 | 181.58 | 7.22 | 0.00 | 0.00 | 188.78 | $0 |
| Nov 30, 1999 | Principal | $15.2750 | $20,400 | 1,335.52 | 51.72 | 0.00 | 0.00 | 1,387.24 | $0 |
| Nov 30, 1999 | Discount | $15.2750 | $5,100 | 333.88 | 12.82 | 0.00 | 0.00 | 346.70 | $0 |
| Nov 30, 1998 | Principal | $6.8500 | $1,840 | 268.60 | 9.72 | 0.00 | 0.00 | 278.32 | $0 |
| Nov 30, 1998 | Discount | $6.8500 | $460 | 67.16 | 2.66 | 0.00 | 0.00 | 69.82 | $0 |
| Nov 30, 1997 | Discount | $9.7125 | $1,321 | 136.00 | 4.48 | 0.00 | 0.00 | 140.48 | $0 |
| Nov 30, 1997 | Principal | $9.7125 | $5,179 | 533.24 | 18.22 | 0.00 | 0.00 | 551.46 | $0 |
| Jul 01, 1996 | Principal | $4.8750 | $468 | 96.00 | 3.46 | 0.00 | 0.00 | 99.46 | $0 |
| Jul 01, 1996 | Discount | $4.8750 | $117 | 24.00 | 0.84 | 0.00 | 0.00 | 24.84 | $0 |
| Jul 01, 1995 | Principal | $3.9500 | $427 | 108.00 | 4.56 | 0.00 | 0.00 | 112.56 | $0 |
| Jul 01, 1995 | Discount | $3.9500 | $111 | 28.00 | 1.20 | 0.00 | 0.00 | 29.20 | $0 |

2.8

Compensation Statement

Name: MICHAEL PETRUCELLI
From: 12/1/2006 To: 11/30/07
Future payout trades

| | Year Total | Apr-07 | Mar-07 | Feb-07 | Jan-07 | Dec-06 |
|---|---|---|---|---|---|---|
| **Gross Production** | 2,912,514.67 | 450,308.33 | 674,107.32 | 765,042.29 | 301,384.10 | 721,672.63 |
| **Net Production** | 573,087.38 | 91,513.59 | 125,884.39 | 152,309.48 | 59,715.02 | 143,664.91 |
| **Average Rate (%)** | 19.68 | 20.32 | 18.67 | 19.91 | 19.81 | 19.91 |
| **Retro Net Prroduction** | 4.57 | 0 | 0 | 4.57 | 0 | 0 |
| **Deficit written off** | 0 | 0 | 0 | 0 | 0 | 0 |
| **Prior Months -Deficit/Overage** | | | | | | |
| **Adj to Net Production** | -16,670.14 | -2,871.93 | -3,559.35 | -4,087.94 | -2,235.96 | -3,914.96 |
| **Monthly Payout Balance** | | 88,641.66 | 122,325.04 | 148,226.11 | 57,479.05 | 139,749.96 |
| **Draw Amount** | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Sales Compensation** | | 88,641.66 | 122,325.04 | 148,226.11 | 57,479.05 | 139,749.96 |
| **Cash Commissions** | 397,724.66 | 66,412.17 | 85,948.52 | 100,971.14 | 50,107.85 | 94,284.98 |
| **Equity Accrual Calculated** | 158,697.16 | 22,229.49 | 36,376.52 | 47,254.97 | 7,371.20 | 45,464.98 |
| **Recorded Total Sales Compensation** | 467,780.16 | 0 | 122,325.04 | 148,226.11 | 57,479.05 | 139,749.96 |
| **-Deficit/Overage** | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Non Production Equity Accrual** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

2007 RSU  Grant price = $47.60

2008   Gross Income without RSU  with-holding = $466,545 (gross or $583,133)

At = 20% withhold means = $116,636 withheld for 08

- July '08 08= $20.96 grant price (20% of last Year award) [20% of $158,169]
= $31,739
= 1514 shares
July '08
+ $$ $129,958 cash

29.

Pay Inquiry

# View Paycheck

**Michael Petrucelli**

*[handwritten: See that commission $ was witheld]*

**Company:**

Lehman Brothers Inc.

**Address:**

745 Seventh Avenue

New York, NY 100196801

| | |
|---|---|
| **Net Pay:** | $65,470.57 |
| **Pay Begin Date:** | 12/01/2006 |
| **Pay End Date:** | 12/31/2006 |
| **Check Date:** | 12/08/2006 |

View a Different Paycheck

## General

| | | | |
|---|---|---|---|
| **Name:** | Michael J. Petrucelli | **Business Unit:** | IMD |
| **Employee ID:** | 10018527 | **Pay Group:** | Monthly Commissioned |
| **Address:** | 7 Nearwater Lane | **Department:** | 23081 - ICG/FID New York |
| | Riverside, CT 06878 | **Location:** | 399 Park Avenue - 6th Floor |
| | | **Pay Rate:** | Annual |

## Tax Data

| | | | |
|---|---|---|---|
| **Fed Marital Status:** | Single | **CT Marital Status:** | Single (Filing Status F) |
| **Fed Allowances:** | 0 | **CT Allowances:** | 0 |
| **Fed Addl Percent:** | 0.000 | **CT Addl Percent:** | 0.000 |
| **Fed Addl Amount:** | $500.00 | **CT Addl Amount:** | $0.00 |

## Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 167,618.68 | 116,329.80 | 49,642.41 | 52,505.70 | 65,470.57 |
| YTD | 1,942,854.30 | 1,343,299.17 | 578,702.50 | 611,975.95 | 752,175.85 |

*[handwritten vertical: withholdings]*

## Earnings

| Description | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|
| SalesComm 11/01/06-11/30/06 | | | 117,190.27 | 1,368,569.87 |
| 06Stk-Reg 11/01/06-11/30/06 | | | 50,428.41 | 574,284.43 |
| **Total:** | | | 167,618.68 | 1,942,854.30 |

## Taxes

| Description | Amount | YTD Amount |
|---|---|---|
| Fed Withholdng | 39,481.13 | 455,343.10 |
| Fed MED/EE | 1,686.78 | 19,695.34 |
| Fed OASDI/EE | | 5,840.40 |
| NY Vol Dis/EE | 2.50 | 30.00 |
| NY Withholdng | 8,472.00 | 97,793.66 |
| **Total:** | 49,642.41 | 578,702.50 |

## Before-Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|

## After Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|

## Taxable Benefits

| Description | Amount | YTD Amount |
|---|---|---|

*[handwritten bottom right: 30]*

**Petrucelli, Michael**

| | |
|---|---|
| From: | Moum, Fran |
| Sent: | Friday, January 05, 2007 12:38 PM |
| To: | PIM NY -IR |
| Cc: | Manzi, Patrick; Stevenson, Mark J; Gladstone, Abbey; Giani, Camille |
| Subject: | PIM 2007 Equity Award Statement |
| | |
| Sensitivity: | Confidential |

Good afternoon,

We are writing to notify you of a change in the monthly pay advice for employees, like yourself, who are paid on the basis of production.

As you know, in the past, the Firm has used your pay advice to indicate the amount of the annual accrual toward a year-end conditional equity award. Effective January 10th, this information will no longer appear on your pay advice. Instead, the information will be available as part of your new individual sales compensation statement within the Sales Compensation System.

This new statement will allow you to see your cash and equity accrual breakdown on a monthly basis, along with other production- and compensation-related information. On the sales compensation statement, the amount of your YTD equity award accrual is indicated as "Equity Accrual Calculated." This represents the YTD amount that will be the basis for your year-end award, pursuant to the terms and conditions of the Equity Award Program as then in effect.

If you have any questions or concerns, please contact the "salescomp" distribution group in Outlook, or Michael Williams

31

**Net Pay:** $18,479.85

**Company:**

Lehman Brothers Inc.

**Address:**

745 Seventh Avenue

New York, NY 100196801

**Pay Begin Date:** 09/01/2008

**Pay End Date:** 09/30/2008

**Check Date:** 09/10/2008

Review the details of your paycheck. To view other checks, select    View a Different Paycheck

## General

| Name: | Michael J. Petrucelli | Business Unit: | IMD |
|---|---|---|---|
| Employee ID: | 10018527 | Pay Group: | Monthly Commissioned |
| Address: | 7 Nearwater Lane | Department: | 23081 - ICG/FID New York |
| | Riverside, CT 06878 | Location: | 399 Park Avenue - 6th Floor |
| | | Pay Rate: | Annual |

## Tax Data

| | | | |
|---|---|---|---|
| Fed Marital Status: | Married | CT Marital Status: | Connecticut Withholding Code C |
| Fed Allowances: | 1 | CT Allowances: | 1 |
| Fed Addl Percent: | 0.000 | CT Addl Percent: | 0.000 |
| Fed Addl Amount: | $1000.00 | CT Addl Amount: | $0.00 |

## Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 30,996.66 | 30,093.29 | 11,419.46 | 1,097.35 | 18,479.85 |
| YTD | 466,545.61 | 442,914.16 | 184,592.16 | 33,376.09 | 248,577.36 |

## Earnings

| Description | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|
| SalesComm 08/01/08-08/31/08 | | | 30,996.66 | 466,545.61 |
| Total: | | | 30,996.66 | 466,545.61 |

## Taxes

| Description | Amount | YTD Amount |
|---|---|---|
| Fed Withholdng | 8,856.15 | 139,831.02 |
| Fed MED/EE | 436.36 | 6,647.01 |
| Fed OASDI/EE | | 6,324.00 |
| NY Vol Dis/EE | 2.60 | 23.40 |
| NY Withholdng | 2,124.35 | 31,766.73 |
| Total: | 11,419.46 | 184,592.16 |

## Before-Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| TMAMTran/P | 115.00 | 1,035.00 |
| PreTaxMed | 438.00 | 3,942.00 |

## After Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| SavingsBnd | | 8,000.00 |
| SuppLTD EE | 68.75 | 618.75 |

## Taxable Benefits

| Description | Amount | YTD Amount |
|---|---|---|
| GVUL TAXBL* | 6.97 | 61.55 |

32

Section 5

Lehman Brothers Partnership
Account Claim.

for Michael J. Petrucelli

# LEHMAN BROTHERS

RICHARD S. FULD, JR.
CHAIRMAN AND
CHIEF EXECUTIVE OFFICER

July 12, 2000

Dear Colleague,

I am delighted to provide you with details of the Lehman Brothers Partnership Account, which is the new employee program announced in May to provide you the opportunity to benefit from the Firm's private equity investing expertise.

Please take a moment to review the information in this package and to find out how valuable the program can be for you. As a reminder, your participation in the Partnership Account is automatic; no action is required. This package contains the following three items:

- **Your Personalized Partnership Account Award Certificate** — This page shows the amount Lehman Brothers puts to work for you in the Partnership Account. Your Partnership Account award is based on your position within the Firm.

- **A Brochure Summarizing the Program** — This booklet illustrates the structure of the Partnership Account, highlights the types of potential investments in the portfolio, and gives examples of the cash payments you could receive as a participant in the program.

- **Employee Partnership Account Plan Document** — This document contains the legal provisions that govern the Partnership Account's operations and your rights under the program.

The members of the Firm's Operating Committee and I believe that the Partnership Account is one of the industry's broadest and most inclusive programs for providing additional value based on private equity investments. Typically, these investments are available only to institutional and high-net-worth individual investors. The Partnership Account extends the Firm's expertise in private equity investing so that all employees can benefit from the Firm's investment successes.

The Partnership Account is a key example of the Firm's ongoing efforts to make Lehman Brothers among the best places to work on Wall Street. I continue to have a strong desire to emphasize our "One Firm" culture and to recognize the contributions made by each and every member of our Firm. Therefore, I am pleased to include you in this new program, and hope you share my excitement.

Sincerely,

56

**LEHMAN BROTHERS**

MICHAEL J. ODRICH
MANAGING DIRECTOR
HEAD OF PRIVATE EQUITY

June 17, 2008

Dear Partner,

We are pleased to update you on the current status of the Lehman Brothers Partnership Account, which is invested together and in parallel with related vehicles (together, the "Partnership Account" or the "Fund"). In June 2000, the Firm awarded opportunities to participate in the Fund with notional Firm-provided leverage to employees through the Vice President level. As of July 2003, you became fully vested and entitled to receive payments from the Fund to the extent they become available, regardless of your employment status with the Firm.

**Partnership Account Performance and Overview**

As of December 31, 2007, the Fund invested $458 million and has now committed all of its capital. The Fund has allocated its investments among the Lehman Brothers Private Equity asset classes in the following approximate ratios: 66% to Merchant Banking, Venture Capital, Real Estate and Fixed Income; 23% to Private Fund Investments; and 11% to the Fund of Hedge Funds.

**As of December 31, 2007, the gross IRR for the Partnership Account was 20%, which represents an implied multiple of notional equity of 7.6x.** Gross IRR represents the pre-tax, compounded annual internal rate of return based on estimated values of investments and gross cash flows into and out of investments.

In October 2007, a distribution of $2,169 per unit was made to each investor, which represents 318% of the notional equity invested in the fund. We continue to monitor the cash balance in the fund and will apprise you prior to making additional distributions.

*Example of Partnership Account Returns*

The chart on the following page illustrates the Fund's return mechanics valuing the investments as of December 31, 2007. This example assumes the award of $10,000 from the Firm to an employee, of which $7,500 (base award of $682 and notional leverage of $6,818) was actually invested. As of December 31, 2007, the value of the employee's investment net of the distribution would be approximately $3,045. The total value of the investment including the $2,169 distribution represents a 7.6x multiple of invested capital. As this is only a hypothetical example, the actual amounts you receive may differ.

LEHMAN BROTHERS INC.
745 PARK AVE 9 FLOOR
NEW YORK, NY 10022
TEL 212 526 0977 FAX 646 758 4269

57

# PARTNERSHIP ACCOUNT AWARD CERTIFICATE

Michael J. Petrucelli
Agcy & Non Agcy Remics
3 World Financial Center, 9th Floor
New York, NY 10285

For the Award Period July 1, 2000 – December 31, 2001:

Your Base Award: **$6,364**

Your Leverage Amount: **$63,636**

Total Amount at Work for You: **$70,000**

Vesting Date: **July 1, 2003**

---

### IMPORTANT NOTICE

This Award Certificate verifies that you are a participant in the
Partnership Account for the award period shown.

Please read the enclosed Partnership Account booklet
and Partnership Account Plan Document carefully. They contain
explanations of how the Partnership Account works and what
your rights are under the program.

I.D.: 10018527

58



| Valuation Analysis as of December 31, 2007 | | |
| --- | --- | --- |
| **Per 10K investor** | | |
| Base Award Amount Invested as of 12/31/07 | $ | 682 |
| Leverage provided as of 12/31/07 | | 6,818 |
| Total Investment | $ | 7,500 |
| | | |
| Value as of 12/31/07 | $ | 12,940 |
| Less GP carry | | (544) |
| Less Distribution | | (2,169) |
| Less Int on Leverage | | (364) |
| Less Leverage | | (6,818) |
| Net Value @ 12/31/07 | $ | 3,045 |
| | | |
| Gross IRR | | 20% |
| Implied Multiple of Invested Capital | | 7.65 |

*Note: as of 12/31/07, there is no remaining leverage outstanding.*

Handwritten annotations:
Actual mg Petrucell.
$6364 (see award)
$63640
$70,004

$120,780
(5440)
(21,690)
(3640)
(63640)

$26,370

Past performance is not indicative of future results, and there can be no assurance that the Fund will continue to achieve comparable results to those set forth herein.  Calculation methodology is explained further below, and this data is indicative of the performance of the Fund.  The total value displayed on the above chart includes all distributions received and the current value of unrealized investments.  The actual realized values of unrealized investments may differ materially from their current carrying values which are used for calculating total value.  Actual values of currently unrealized investments cannot be determined until the occurrence of liquidity events and the repayment of all leverage and associated interest costs.  Actual realized values of currently unrealized investments will depend on, among other factors, future operating results, market conditions at the time of disposition, legal and contractual restrictions on transfer that may limit liquidity, any related transaction costs and the timing and manner of sale, all of which may differ from the assumptions and circumstances on which the current unrealized values are based.

Below, we offer performance data by asset class as of December 31, 2007, for investments made thus far.  Unrealized publicly-traded investments are valued based on closing market prices on December 31, 2007.  The methodology of calculating unrealized privately-held investments differs among asset classes and is detailed below.  Please refer to the investment update attached to this letter for more detail on investment allocations and performance by asset class.

7009 0820 0002 1007 9693

**RECEIVED**

JUL 2 0 2009

United States Bankruptcy Court /
Southern District of NY

Lehman Brothers Holdings Claim Processing
Center

C0| Epiq Bankruptcy Solutions LLC
FDR Station, P.O. Box 5076

New York, NY 10150-5076

$8.02

60