Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Chapter 11 Case No. 08-13555 (JMP)

4    Case No. 08-01420 (JMP)(SIPA)

5    Adv. Case No. 10-03547 (JMP)

6    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

7    In the Matter of:

8    LEHMAN BROTHERS HOLDINGS, INC., ET AL.,

9            Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   In the Matter of:

12   LEHMAN BROTHERS INC.,

13           Debtor.

14   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15   LEHMAN BROTHERS SPECIAL FINANCING INC.,

16                 Plaintiff,

17           v.

18   BANK OF AMERICA NATIONAL ASSOCIATION, ET AL.,

19                 Defendants.

20   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21                 U.S. Bankruptcy Court

22                 One Bowling Green

23                 New York, New York

24                 July 18, 2012

25                 10:03 AM

Page 2

1  B E F O R E :

2  HON JAMES M. PECK

3  U.S. BANKRUPTCY JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Hearing re:  Motion of Lehman Brothers Holdings Inc. to

2    Modify Certain Existing Claims Order [ECF No. 29193]

3

4    Hearing re:  Joint Motion of Lehman Brothers Holdings Inc.

5    and Litigation Subcommittee of Creditors' Committee to

6    Extend Stay of Avoidance Actions [ECF No. 29163]

7

8    Hearing re:  Ninth Application for Interim Professional

9    Compensation for Hughes Hubbard & Reed LLP [ECF No. 5099]

10

11   Hearing re:  Lehman Brothers Special Financing Inc. v. Bank

12   of America National Association, et al. [Adversary

13   Proceeding No. 10-03547]

14   Motion to Amend First Amended Complaint

15

16   Hearing re:  Motion of Fidelity National Title Insurance

17   Company to Compel Compliance with Requirements of Title

18   Insurance Policies [ECF No. 11513]

19

20   Hearing re:  Motion of Giants Stadium LLC for Leave to

21   Conduct Discovery of the Debtors Pursuant to Federal Rule of

22   Bankruptcy Procedure 2004 [ECF No. 16016]

23

24   Hearing re:  Amended Motion of Ironbridge Homes, LLC, et al.

25   for Relief from the Automatic Stay [ECF No. 23551]

Page 4

1

2    Hearing re:  Belmont Park Investments Pty Ltd, et al. v.

3    Lehman Brothers Special Financing Inc. [Adversary Proceeding

4    No. 12-01045]

5    Motion to Stay Adversary Proceeding

6

7    Hearing re:  Motion of Elliott Management Corporation For an

8    Order, Pursuant to 15 U.S.C. §§ 78fff-1(B) and 78fff-2(C)(1)

9    and 11 U.S.C. § 105(A), (I) Determining the Method of

10   Distribution on Customer Claims and (II) Directing an

11   Initial Distribution on Allowed Customer Claims [ECF No.

12   5129]

13

14   Hearing re:  Cardinal Investment Sub I, L.P. and Oak Hill

15   Strategic Partners, L.P.'s Motion for Limited Intervention

16   in the Contested Matter Concerning the Trustee's

17   Determination of Certain Claims of Lehman Brothers Holdings

18   Inc. and Certain of Its Affiliates [ECF No. 4634]

19

20

21

22

23

24

25   Transcribed by:  Jamie Gallagher

Page 5

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3        Attorneys for the Debtors

4        767 Fifth Avenue

5        New York, NY 10153

6

7    BY:  GARRETT A. FAIL, ESQ.

8        JACQUELINE MARCUS, ESQ.

9        RICHARD SLACK, ESQ.

10

11   CHAPMAN AND CUTLER LLP

12       Attorney for U.S. Bank National Association, as Trustee

13       330 Madison Avenue

14       34th Floor

15       New York, NY 10017

16

17   BY:  CRAIG M. PRICE, ESQ.

18

19   HUGHES HUBBARD & REED LLP

20       Attorneys for SIPA Trustee

21       One Battery Park Plaza

22       New York, NY 10004

23

24   BY:  JEFFREY S. MARGOLIN, ESQ.

25       JAMES B. KOBACK, JR., ESQ.

Page 6

1   WONG FLEMING, P.C.

2        Attorney for Nationwide

3        821 Alexander Road

4        Suite 150

5        Princeton, NJ 08543

6

7   BY:  JAMES K. HANEY, ESQ.

8

9   WOLLMUTH MAHER & DEUTSCH LLP

10       Attorney for Lehman Brothers Special Financing

11       500 Fifth Avenue

12       New York, NY 10110

13

14   BY:  WILLIAM F. DAHILL, ESQ.

15

16   JACKSON WALKER L.L.P.

17       Attorney for RGA Reinsurance Company

18       100 Congress Avenue

19       Suite 100

20       Austin, TX 78701

21

22   BY:  PATRICIA TOMASCO, ESQ.

23

24

25

Page 7

1   KIRKLAND & ELLIS LLP

2         Attorney for Lehman Brothers Australia

3         300 North LaSalle Street

4         Chicago, IL 60654

5

6   BY:  JEFFREY W. GETTLEMAN, ESQ.

7

8   WHITE & CASE LLP

9         1155 Avenue of the Americas

10        New York, NY 10036

11

12  BY:  ERIC K. STODOLA, ESQ.

13

14  MCKENNA LONG & ALDRIDGE, LLP

15        Attorney for Dispatch Printing

16        230 Park Avenue

17        Suite 1700

18        New York, NY 10169

19

20  BY:  ALAN F. KAUFMAN, ESQ.

21

22

23

24

25

Page 8

1    SECURITIES INVESTOR PROTECTION CORPORATION

2         General Counsel for SIPC

3         805 15th Street, N.W.

4         Suite 800

5         Washington, DC 20005

6

7    BY:  KENNETH J. CAPUTO, ESQ.

8

9    MILBANK, TWEED, HADLEY & MCCLOY LLP

10        Attorney for Official Committee of Unsecured Creditors

11        One Chase Manhattan Plaza

12        New York, NY 10005

13

14   BY:  DENNIS C. O'DONNELL, ESQ.

15

16   FROST BROWN TODD, LLC

17        Attorney for Ohio Public Employee Retirement

18        3300 Great American Tower

19        301 East Fourth Street

20        Cincinnati, OH 45202

21

22   BY:  RONALD E. GOLD, ESQ. (TELEPHONIC)

23

24

25

```
 1              P R O C E E D I N G S

 2              THE COURT:  Be seated, please.  Good morning.

 3              UNIDENTIFIED SPEAKER:  Good morning.

 4              MR. FAIL:  Good morning, Your Honor, Garrett Fail,

 5    Weil, Gotshal & Manges for Lehman Brothers Holdings, Inc.

 6              The first motion on the agenda this morning is a

 7    motion to modify certain existing claims orders.  The motion

 8    seeks to modify six orders relating to derivative contracts,

 9    alternative dispute resolution, and settlement of claims

10    against the debtors that remain operative following the

11    March 6th effective date of the Lehman Chapter 11 plan.

12              Generally, the modifications are required due to

13    the changes in the status and the more limited role of the

14    creditors' committee post-effective date.  Specifically, the

15    relief requested would limit or remove certain notice

16    requirements, participation and consent rights of -- that

17    the committee had in connection with the settlement of

18    derivative contracts, ADRs for affirmative recoveries

19    related to our derivative contracts, and ADRs for claims

20    filed against the debtors.  The committee would continue to

21    be involved in affirmative derivative recoveries and related

22    claims for which the demand exceeds $15 million.

23              The motion further sought to provide LBHI with the

24    authority to settle all claims filed against the debtors

25    without further Court or committee involvement.  Following
```

1    discussions with certain parties, Your Honor, LBHI filed a

2    revised proposed order last night.

3            As revised, LBHI would have the authority to

4    settle all claims asserted against the debtors where the

5    allowed amount is less than $200 million.  Where claims have

6    been split and traded, the threshold is reduced in a

7    mathematical pro rata fashion.  Additionally, LBHI would be

8    required to seek Court approval for settlements of certain

9    types of guarantee claims in certain circumstances where the

10   settlement amount is greater than $15 million.

11           LBHI believes the relief requested is beneficial

12   to creditors and is appropriate in the circumstances of

13   these cases where the oversight of the debtors has shifted

14   from the creditors' committee to the plan administrator and

15   its new board of directors.

16           The motion was uncontested and supported by the

17   creditors' committee.  The changes made in the revised order

18   last night limit the relief requested and do not expand

19   LBHI's authority beyond what was originally requested.  The

20   changes are without prejudice to LBHI's right to return to

21   Court to seek further modifications and authority.

22           At this point, LBHI would request that the Court

23   grant the motion as amended, unless Your Honor has any

24   further questions.

25           THE COURT:  I'd like to hear from the committee

1    concerning its role in achieving these modifications and its

2    view that the modifications are, in fact, appropriate under

3    the present circumstances of the case.

4            MR. FAIL:  Thank you, Your Honor.

5            MR. O'DONNEL:  Your Honor, Dennis O'Donnell,

6    Milbank, Tweed, Hadley & McCloy on behalf of the committee.

7            Your Honor, we believe the description Mr. Fail

8    provided of the more limited role of the committee under the

9    plan is consistent with the plan.

10           The plan contemplates that the committee will

11   continue to exist for two sets of purposes: the typical, you

12   know, billing and -- and fee related issues that will

13   continue to preoccupy us for months to come and through two

14   sub-committees, the litigation and derivative sub-committee,

15   with respect to other matters, all of which are under

16   discussion or have been discussed with the board as to

17   exactly what that will mean for the committee.  But the

18   committee will have a significant role with respect to a

19   number -- a number of different areas going forward.

20           The one before the Court today relates primarily

21   to its derivative sub-committee role which has been

22   significant throughout the case.  I think the debtors would

23   acknowledge that we have been a very beneficial force in

24   helping them accomplish many of the things that are actually

25   recited in -- in the other motion you'll hear about today.

Page 12

1        But the committee will continue to have a role in

2    that respect, but it's been limited to a certain extent to

3    acknowledge where that role would be most efficiently put to

4    use, limiting it to mediation, ADR situations where the

5    demand at issue is more than $15 million, continuing to give

6    the committee a consent right under the ADR procedure's

7    order, and continue to involve the committee in the

8    briefing, and discussion, and actual mediation process with

9    respect to both the regular ADRs and SPV ADRs when the

10    demand is in excess of $15 million.

11        That is consistent with what we agreed to.  We

12    think it's consistent with the spirit of what the plan

13    contemplated, and we think that it will allow the committee,

14    now known as the litigation committee, to continue to

15    provide substantial benefit to the debtors by making that

16    process proceed more efficiently and productively for the

17    debtors.

18        THE COURT:  Okay.  This is unopposed and is

19    approved.  The changes to a very large extent are designed

20    to bring the current practice into conformity with the

21    requirements of a post-confirmation debtor, and as much as

22    the changes result from a consensual process, this is

23    approved.

24        MR. FAIL:  Thank you, Your Honor.

25        MS. MARCUS:  Good morning, Your Honor.  Jacqueline

Page 13

1    Marcus, Weil, Gotshal & Manges on behalf of Lehman Brothers

2    Holdings Inc., as plan administrator for the debtors.

3         Item number 2 on the agenda is the joint motion of

4    the plan administrator and the creditors' committee to

5    extend the stay of avoidance actions and grant certain

6    related relief.

7         We filed earlier this week the declaration of

8    Lawrence Brandman, a managing director of LAMCO, LLC in

9    support of the motion.  Mr. Brandman is present in court

10   this morning.

11        Pursuant to this motion, Your Honor, the debtors

12   seek an extension of the order staying avoidance actions

13   which currently expires on July 20, 2012 to

14   January 20, 2013, or a six month extension.  As set forth in

15   the motion and the reply, the debtors have used the respite

16   from litigation provided by the stay to conduct settlement

17   discussions with avoidance action defendants and continue

18   the ADR process.

19        The Court has noted on several occasions that the

20   ADR process has been a success.  I'm happy to report that

21   the debtors are continuing to reap benefits from the

22   existence of the stay.  As indicated in the 32nd status

23   report filed yesterday by Peter Gruenberger, as a result of

24   mediation, the debtors have achieved settlements in 206 ADR

25   matters involving 228 counter-parties, generating an excess

Page 14

1    of $1.1 billion for the estates.  Another measure of the

2    success is that 75 out of the 79 ADR matters that have

3    reached the mediation stage have been settled.  As indicated

4    in Mr. Gruenberger's letter, another 7 mediations are

5    scheduled to commence between today and early November.

6         Most recently, on Monday, the plan administrator

7    filed a motion for approval of a settlement agreement with

8    Gemstone CDO IV Ltd, which is a defendant in avoidance

9    action 3542.  If approved, the Gemstone settlement will

10   result in payment of over $200 million to the estates.

11        In sum, not only has the ADR process been

12   successful in the past, the Chapter 11 estates have

13   continued to be able to manage the process successfully,

14   thus generating proceeds for ultimate distribution to their

15   creditors.  The debtors seek a further six month extension

16   of the stay to enable them to continue to build on the

17   successful ADR process and to resolve pending matters while

18   minimizing the time and expense expended by the debtors and

19   the avoidance action defendants, as well as the burden on

20   the Court that would result if the stay were to expire.

21        As we have stated before, the relief LBHI seeks is

22   warranted under Section 105 of the Bankruptcy Code due to

23   the number and complexity of the avoidance actions, the lack

24   of prejudice to any of the avoidance action defendants, and

25   the progress achieved to date.  The proposed extension would

Page 15

1    affect several hundred parties, yet the liquidators of LB

2    Australia and U.S. Bank have filed the only objections to

3    the motion.

4           I'll address the LB Australia objection first,

5    Your Honor.

6           As the Court is well aware, LB Australia is

7    neither an avoidance action defendant nor a creditor in

8    these cases.  As noted in our reply, as well in the replies

9    we have filed in response to previous objections, LB

10   Australia is not a party in interest in these cases and

11   therefore is not even entitled to be heard with respect to

12   the stay.  I refer Your Honor, again, to the Second

13   Circuit's decision in Revco and Judge Chapman's decision in

14   Keepers as support for the proposition that LB Australia

15   lacks standing.

16          Indeed, LB Australia's objection this time doesn't

17   even contest the standing issue.  Instead, in paragraph 4 of

18   its objection, LB Australia reserved its right to move to

19   lift the stay if it is ultimately successful in its quest to

20   intervene in adversary proceeding 3545.

21          LB Australia's sole objection to the current

22   motion is its contention that "the debtors have not met

23   their burden of demonstrating substantial progress in the

24   ADR process with respect to the Dante series in which LBA

25   has an interest."  That comes from their amended objection

Page 16

1    in paragraph 7.

2           As an initial matter, Your Honor, it bears noting

3    that the SPV ADR procedures provide a mechanism pursuant to

4    which LB Australia may get more information about the status

5    of the ADR proceedings involving transactions in which it is

6    a noteholder.  All it has to do is enter into a -- an

7    appropriate confidentiality agreement.  We believe it hasn't

8    done that yet.

9           More importantly, however, in deciding whether to

10   extend the stay, the Court should consider more than simply

11   the parochial interest of one objector because the Court's

12   decision will have broad ramifications.

13          Expiration of the stay would cause real prejudice

14   in time and money to the actual defendants in adversary

15   proceeding 3545, as well as the avoidance actions -- the

16   other avoidance actions, who would be forced to start

17   spending real litigation dollars if the stay were lifted.

18          Expiration of the stay will also prejudice the

19   debtors because they will not be able to spend their full

20   energy on the settlement and ADR process.  In addition,

21   resumption of full-scale litigation will be costly.

22          At the conclusion of the January 11th hearing

23   regarding the debtors' prior motion for extension of the

24   stay, the Court noted at page 43 of the transcript that

25   litigation was likely to take many years and suggested that

Page 17

1    the quicker route to resolution of the flip clause dispute

2    might be a negotiated settlement.

3            Indeed, the debtors and LB Australia currently are

4    engaged in active dialogue and there are plans under way to

5    set up a meeting among the debtors, LB Australia, and the

6    Belmont noteholders perhaps as early as later this month.

7    That discussion and initiative, Your Honor, reflects the

8    benefits that are derived from this stay and flatly

9    contradicts any suggestion that the extension of the stay is

10   slowing the resolution of the pending matters.  On the

11   contrary, the plan administrator submits that the existence

12   of the stay has been a critical component of the success

13   realized to date.

14           U.S. Bank's objection states that "in large part,

15   the trustee is not opposed to the continuation of the stay."

16   And like LB Australia, U.S. Bank concedes that it, too, has

17   been working with the debtors and actively involved in the

18   ADR process.

19           U.S. Bank's objection is -- excuse me, is that it

20   contends that the debtors are using the continuation of the

21   stay to make, what they call, outrageous claims for interest

22   on termination payments that U.S. -- that SPV's may

23   ultimately owe to the debtors.  Yet the U.S. Bank objection

24   itself makes it clear that the debtors' request for interest

25   on the termination payment, based on their cost of funds, is

Page 18

1    specifically provided for in the ISDA master agreement.

2         Thus, in requesting that the Court set a different

3    interest rate, or order that interest shall cease to accrue,

4    U.S. Bank essentially is asking the Court to re-write the

5    ISDA master agreement.  There's no authority for the Court

6    to do that, particularly in the context of the debtor's

7    motion.

8         As we note in our reply, U.S. Bank will have ample

9    opportunity to argue about the applicable interest rate and

10   the period of time during which interest should accrue if

11   these matters ultimately wind up in litigation.

12        U.S. Bank's request is particularly brazen given

13   that this Court has already determined on two occasions, in

14   the BNY adversary proceeding and the Ballyrock adversary

15   proceeding, that the flip clause is an unenforceable ipso

16   facto clause, and therefore the SPV counter-parties do,

17   indeed, owe termination payments to the debtors.  U.S. Bank

18   can minimize the interest expense if it directs the SPV

19   counter-parties to take action that is consistent with the

20   Court's prior ruling and pay the debtors the contested

21   termination payments.

22        The debtors are prepared to insure that the funds

23   will be available to be repaid to the SPV's, if it

24   ultimately turns out that the debtors do not prevail in the

25   litigation.  Moreover, U.S. Bank's objection, like prior

Page 19

1    objections articulated earlier by LB Australia, is based on

2    the flawed premise that was rejected by the Court in January

3    that the disputes will be resolved more quickly in

4    litigation than they will be resolved through ADR or

5    negotiation.  In addition, U.S. Bank ignores the substantial

6    cost associated with litigation.

7              In short, U.S. Bank has not demonstrated any

8    prejudice that cannot be addressed and in any event has

9    failed to prove that any prejudice to the SPV counter-

10   parties resulting from extension of the stay will outweigh

11   the prejudice to the Chapter 11 estates and all of the other

12   avoidance action defendants, if the stay expires on

13   July 20th.

14             In conclusion, Your Honor, the issues raised in

15   the objection are insignificant in comparison to the success

16   of the debtors' efforts to resolve the avoidance actions,

17   the potential for continued success, and the prejudice to

18   the debtors and their estates and all the other avoidance

19   action defendants that would result from a full-scale

20   resumption of litigation.

21             As a result, the debtors request that the

22   objections be overruled and the Court extend the stay for an

23   additional six months.  I'm happy to answer any questions

24   you might have.

25             THE COURT:  I have a question that doesn't

Page 20

1    directly relate to your argument or the issues that are

2    presented by the objectors, but it has to do with how long

3    this goes on.  We've been extending the stay for six month

4    intervals.  Each time we do it, it adds up: six months, a

5    year, a year and a half, two years.  Is it possible for you

6    to provide some guidance as to the likely duration of this

7    process and when it comes to an end and we unleash the dogs

8    of war?

9            MS. MARCUS:  That's a tall order, Your Honor.  Let

10   me speak to the non-derivative matters first.  As you know,

11   the debtors entered into tolling agreements with numerous

12   potential avoidance action defendants and also commenced

13   some, what I'll call more routine preference actions.  The

14   process with respect to those is that we have been making

15   great progress analyzing, exchanging information,

16   documentation with the counter-parties.  We're engaged in

17   settlement discussions with some.  We have dismissed out

18   others.  So that process I think will end soon.  I know the

19   creditors' committee has the LMA preference action, so I

20   guess Mr. O'Donnell can speak to that.

21           As to the derivative matters, I'm a little bit

22   hard pressed to estimate how much longer it will be.  We are

23   making substantial progress and we are dismissing out

24   defendants from those actions.  There will be a point at

25   which Mr. Gruenberger's monthly letters will show or won't

Page 21

1    show continued progress.  I -- I can ask Mr. Slack or

2    Mr. Brandman if they have any -- I don't -- I think anything

3    I say would be really pure speculation.

4            THE COURT:  I don't want speculation, but I'm also

5    interested in knowing if I can anticipate that six months

6    from now I'm going to be getting another request for a six

7    month extension, and if a year from now I'm going to be

8    getting another request for a six month extension.  I'm

9    trying to get some sense because a blanket stay on

10   litigation needs to come to an end at some point.

11           MS. MARCUS:  I understand that, Your Honor.  I --

12   my best guess is that you will be getting another request in

13   six months, however, the universe of actions that will be

14   subject to that next request will be shrinking.  But I don't

15   -- I think it would be incredibly ambitious to expect that

16   we'd be done with the stay in six months.

17           THE COURT:  Mr. Slack, do you have anything to add

18   on -- on this speculative endeavor that we've now embarked

19   on?

20           MR. SLACK:  I think Ms. Marcus is right that we

21   have now put into ADR the vast majority of -- of what needs

22   to be put in.

23           With respect to the SPV ADR's, as Your Honor

24   knows, we've -- that process actually takes awhile because

25   we build in, for example an initial 90 days because when you

Page 22

1    bring a -- a counter-party into ADR, that counter-party

2    needs the ability, and we've given the ability to go out and

3    talk to the noteholders.  So, the -- the process for the SPV

4    ADRs is -- is extended and I would expect that we'd -- we

5    would have at least one more six month period.

6         I would -- I would suggest that we'd have to go

7    back and discuss it, but, you know, I do think that in the

8    six month period that we have coming, we're going to have a

9    much better idea of -- of what is left after the next six

10   months, and we could give you an interim report if -- if

11   that's what you would like, we could send something to you

12   that -- that gives you an interim report during these six

13   months.

14        THE COURT:  I'm not sure what that report would

15   consist of or how I would be benefited by having it other

16   than having some more information and greater visibility

17   into the process, in that sense it might be useful, but I'm

18   also sensitive to the addition of work that's entirely extra

19   and costs some money, so we can revisit that.  We don't have

20   to decide that now.

21        MR. O'DONNELL:  Your Honor, Dennis O'Donnell on

22   behalf of the committee.

23        In terms of the subset of the avoidance actions of

24   the committee has now in charge -- been in charge to put --

25   prosecute the (indiscernible 00:18:58) actions.  That's a

Page 23

1    relatively small universe, and our primary interest there is

2    pursuing settlements, as well.  There have been discussions,

3    there are ongoing discussions.

4          I -- I can't -- I also can't tell you that six

5    months from now we won't also need an extension, but since

6    it is a small universe, we should be able to give you a

7    better sense before that six months expires as to how long

8    that we think we need to continue this settlement process

9    before litigation starts.

10          THE COURT:  Okay.

11          MR. GETTLEMAN:  Good morning, Your Honor.  Jeffrey

12   Gettleman representing the liquidators of Lehman Brothers

13   Australia.

14          Your Honor, I just have a brief and I hope helpful

15   comment.

16          THE COURT:  You withdraw your objection?

17          MR. GETTLEMAN:  Well, we didn't actually call it

18   an objection --

19          THE COURT:  Well, that's real wise.

20          MR. GETTLEMAN:  -- we were making an observation,

21   Your Honor.

22          THE COURT:  It was -- it was an objection by a

23   party that acknowledges it lacks standing.

24          MR. GETTLEMAN:  Exactly.  So, as Your Honor knows,

25   the liquidators of Lehman Brothers Australia have a

Page 24

1   particular interest in resolving their estate.  And the only

2   way that they can resolve their estate is if the Dante note

3   program is -- is resolved consensually or in some other way.

4           And so there's three ways that we can approach

5   that.

6           One is through litigation and, you know, we agree

7   with Your Honor's observation at the last hearing that any

8   such litigation, whatever the Second Circuit does is going

9   to take a long time, so whatever happens there, will happen.

10          The second way is through informal discussions

11  with the debtors.  And as the debtors' counsel has

12  mentioned, there have been discussions.  The last

13  information I have from my client -- clients is that they'll

14  be back in New York sometime probably within the next month

15  to continue those discussions, and hopefully we'll make

16  progress there.

17          The third, and this is what I really wanted to

18  focus on today, is the ADR process.

19          So, what's happened so far, as we understand and I

20  believe this was in the debtors' reply, the debtors have

21  served the issuer.  I actually don't know if they've served

22  the trustee, but what's happened as far as our end was that

23  we -- the litigators, sorry -- the liquidators have received

24  two communications from the trustee.  One was in May and one

25  was just a few weeks ago, beginning of July.  And basically

Page 25

1   all they say is that we've been served, the trustee is

2   taking the position that they don't have authority to act,

3   and the issuer, who apparently was also served, hasn't yet

4   decided what position they're going to take.  So, that's

5   been after three months.  So, clearly the ADR process isn't

6   moving along at a rapid pace.

7            So, in any event, trying to be helpful here, Your

8   Honor, we do have a suggestion and that is we -- we might

9   respectfully suggest that the debtors utilize their

10  discretion and serve the LBA liquidators with the ADR

11  process.  It seems to me that there are a couple of benefits

12  to that, in other words, making the liquidators a party to

13  the ADR.

14           I mean, first of all, the liquidators are economic

15  stakeholders, as opposed to the trustee or the issuers.

16  Second thing is the liquidators, you know, clearly will move

17  more quickly in the ADR process than the parties that are

18  currently -- have currently been served.  The third thing

19  is, and this is not -- certainly not a promise, but I can

20  tell Your Honor that, as I think we've probably said before,

21  the liquidators have been dealing with quite a few of these

22  noteholders because the noteholders have claims against the

23  Lehman Brothers Australia estate in Australia.

24           So, it is possible that the noteholders might even

25  agree to appoint the liquidators to negotiate on their

Page 26

1    behalf.  It's possible, I can't say whether it's going to

2    happen or not.  So, that's really all I have to say, Your

3    Honor.  Obviously, it is a discretionary act on the part of

4    the debtors whether to make Lehman Brothers Australia a

5    party to this, but I think it would help expedite it and

6    that would be helpful from our perspective, and I would

7    imagine the debtors' also.

8         THE COURT:  You haven't really said anything about

9    the stay of the litigation, however.  What you're really

10   saying, if I'm understanding you correctly, is that you

11   recognize that your client does not have standing and issues

12   surrounding your possible intervention in the pending

13   adversary proceeding are before this Circuit and unresolved

14   at this moment.

15        And so, you're standing as a representative of

16   your client and as a purported friend of the Court to make a

17   proposal, which you could just have easily have made on the

18   telephone, or in an email, or in a letter to Lehman.  We

19   don't -- we don't need the gathering of this many people in

20   a room and a recorded record to carry that -- that message

21   to Lehman, nor am I going to be directing that they act in

22   any particular way.

23        So, is this more theater than anything else, or is

24   this simply a convenient opportunity for you to save a

25   postage stamp?

1        MR. GETTLEMAN:  Well, no, Your Honor.  I think the

2   reason we're here, I mean actually in truth is to be

3   helpful.  I mean it -- it's actually a suggestion that --

4   that the client and I just recently developed as a possible

5   way forward in terms of making the ADR proceed more

6   expeditiously.

7        THE COURT:  Okay, but in reference to the actual

8   matter which is pending before the Court this morning, which

9   is the motion to extend the litigation stay for another six

10  months, you're not really arguing against that?

11       MR. GETTLEMAN:  No, Your Honor, I mean, as -- as

12  happened the last time we were before you in January, I mean

13  Your Honor overruled our objection on the basis of lack of

14  standing, it didn't seem to me to make sense to continue to

15  beat that dead horse, so the -- the second thing that Your

16  Honor suggested is that the best way to resolve this would

17  be discussion.  So -- so, informally and hopefully formally,

18  we're trying to proceed as quickly as we can.

19       THE COURT:  Okay, and -- and I think that's

20  something that the debtors will either accept or reject

21  based upon their view of how the ADR is progressing and the

22  parties who may be useful to -- to be actively engaged

23  therein.

24       The fact that you have clients who are coming to

25  the United States for meetings in the near term suggests

Page 28

1      that this is an active and ongoing process.

2              I do have a question for you, though.  Neither

3      your papers nor your comments this morning reveal anything

4      as to how things are actually moving forward, if at all, in

5      the Australian judicial proceeding, and I'm just interested

6      as a matter of you're providing me with an update, if there

7      are any events that have transpired in Australia that would

8      be relevant to this question.

9              MR. GETTLEMAN:  Your Honor, the, I guess you would

10     call it, procedural status in Australia is the -- my

11     understanding is the liquidators are attempting to move

12     forward with a scheme of arrangements in order to wrap up

13     their estate.  So, as I said before, one of the matters that

14     would have to be resolved before that scheme could be

15     implemented would be the resolution of the Dante program.

16             The second thing, Your Honor, would be another

17     matter which is the reason we filed our Chapter 15 petition,

18     which is not quite ready to come back before you again but

19     will be, hopefully, within the next 30 to 60 days.

20             So, once those matters are resolved, then I

21     believe the liquidators can move forward with their scheme

22     of arrangement.

23             THE COURT:  Okay.  So, maybe I'll know more in 30

24     to 60 days.

25             MR. GETTLEMAN:  Yes, Your Honor.

1          THE COURT:  All right, fine.  Thank you.

2          MR. GETTLEMAN:  Thank you, Your Honor.

3          MR. PRICE:  Good morning, Your Honor.  Craig Price

4    from Chapman and Cutler on behalf of U.S. Bank National

5    Association, as trustee.

6          As we mentioned in our papers, we are not

7    necessarily opposed to the continuation of the stay and

8    we've been working with the debtors to resolve the issues in

9    dispute.  However, the trustee asserts in its objection,

10   because we believe the debtors' attempting to impermissibly

11   use the stay to adversely affect the rights of the holders

12   by making claims, outrageous claims, for interest with

13   respect to the certain termination payments.

14         We -- the debtors would like to assert that we're

15   trying to redraft these contracts.  We're not.  The -- the

16   ISDA master agreement provisions which we cite in our

17   objection are ambiguous as to what the exact rate of

18   interest that should be charged with regard to these

19   termination payments.  That --

20         THE COURT:  But you seem to be seeking, as a

21   procedural matter, some kind of advisory opinion or

22   affirmative order of the Court in reference to interest that

23   is permissibly to be claimed under these ISDA agreements and

24   I -- I have a question as to how you even pass the straight

25   face test for a pleading that says that when you haven't

Page 30

1    brought any motions seeking a determination of the claim

2    that you've made or any declaratory judgment action that

3    might seek to determine that question.  And I don't

4    understand why that question, even if it were procedurally

5    right, is relevant to the issue which I need to consider

6    today, namely the extension of the stay, that in substance

7    you don't oppose anyway.

8             MR. PRICE:  Well, a couple things.  One, we can't

9    bring a motion or -- or raise this in litigation because of

10   the stay, we can't raise these issues.

11            THE COURT:  So you're using --

12            MR. PRICE:  No, but I'm -- no, because--

13            THE COURT:  -- by your own acknowledgement, a

14   procedural device that is available to you, namely a chance

15   to file an objection and then cram other inappropriate

16   matter into the objection?

17            MR. PRICE:  No, I don't think that's the case.

18   What I think is, is that the standard here is, is there any

19   prejudice to the -- the various holders, and there is.  The

20   prejudice is that they're -- they're seeking this outrageous

21   interest, which is accruing the entire time the stay is in

22   place.  And so, it goes directly to that --

23            THE COURT:  I don't understand the -- the claim of

24   prejudice at all.  Is it -- is it your position that because

25   there is a legal position being asserted by Lehman that you

Page 31

```
 1    disagree with that hasn't yet been finally resolved and that

 2    relates to some documents that you consider to be ambiguous,

 3    that the fact that there is an ongoing process in which

 4    these claims continue to be pursued prejudices your clients

 5    because the claims are being made?

 6              MR. PRICE:  I do think it --

 7              THE COURT:  Simply because the claims exist?

 8              MR. PRICE:  Well, the claims -- they exist and

 9    we're not being -- we're not allowed to litigate those

10    claims because of the stay.  The debtors are the ones

11    seeking to extend the stay.  We --

12              THE COURT:  Can't you resolve the question in the

13    manner suggested by debtors' counsel which would be to

14    provisionally close out these accounts and litigate later,

15    or settle these accounts and not litigate ever?

16              MR. PRICE:  Well, we're the trustee so we don't

17    have an economic interest in -- in the actual underlying

18    transactions, so -- we can't sell -- there's nothing for us

19    to sell --

20              THE COURT:  So if there are parties that you

21    purport to represent here that have economics at stake that

22    they're concerned about, can they do something about it?

23              MR. PRICE:  I imagine they can do something, but

24    we're the trustee and we're directed to take, you know --

25    take positions that the holders have directed us to do.
```

 1          THE COURT:  I -- you have to speak up, I can

 2    barely hear you.

 3          MR. PRICE:  Oh, I'm sorry.  I'm sorry.  No, I'm

 4    just saying as the trustee, we have no economic interests in

 5    these transactions.  We can't sell anything and we're

 6    directed to take whatever action we are -- that we take,

 7    or --

 8          THE COURT:  Were -- were you directed to file

 9    these papers?

10          MR. PRICE:  No, but we have certainly gotten push

11    back from the holders who've been -- who've been complaining

12    about the fact that these interests -- the claims for

13    interest have made it difficult to settle some of these

14    actions.

15          THE COURT:  But isn't that inherent in the ISDA

16    agreement itself?

17          MR. PRICE:  The -- what, the ambiguity that exists

18    in the --

19          THE COURT:  No, the fact that there is --

20          MR. PRICE:  Well, there's --

21          THE COURT:  -- when you close out, you're going to

22    have to pay something.

23          MR. PRICE:  Right, well, you may have to pay

24    something, but we -- that hasn't been determined yet, and we

25    haven't been able to bring these claims because of the stay.

Page 33

1    We haven't been able to either, you know, have our day in

2    Court because the stay is in place.

3            THE COURT:  But don't you have your day, or at

4    least don't you potentially have your day in ADR?

5            MR. PRICE:  We do.

6            THE COURT:  So, why isn't --

7            MR. PRICE:  We do, and we've been --

8            THE COURT:  -- why isn't that --

9            MR. PRICE:  -- participating in that process.

10           THE COURT:  -- why isn't that the absolute best

11   means to bring us to some sort of resolution?

12           MR. PRICE:  I think it, you know, certainly it's a

13   process by which we can.  But we believe that they've been

14   using the stay as both a shield and a sword in that to the

15   extent that we don't agree with -- with what their claims

16   are in the ADR process, interest is accruing every day at

17   incredibly high rates, and you know, we're just asking the

18   Court to balance the harm that -- that's -- that would

19   accrue to the holders versus the benefits of the -- of the

20   stay.

21           And we just -- the debtors have claimed that

22   there's no harm, and -- and perhaps the Court believes

23   there's no harm as well.  We do think that there's been harm

24   to the various holders because -- because of these claims.

25   And that's, you know, that's our argument.

1          THE COURT:  Okay, and let me just carry forward

2     your argument a little bit further.  If the stay were not to

3     be extended, tell me how your clients are benefited, or tell

4     me how your clients are not prejudiced at that point.

5          MR. PRICE:  Right, well, they're not prejudiced, I

6     mean, they would then be able to proceed with -- with

7     discovery, with the entire process.

8          As you've noted, the debtors -- potentially this

9     is another year, two more requests for a continuation of the

10    stay.  During that entire time, interest will be accruing.

11    If we don't settle these matters, then we'll be in a

12    position where interest is -- is enormous, and we think that

13    to the extent the stay was lifted, we could start the

14    process, which may not start for an entire year from now.

15         THE COURT:  Well, interest is, to use your

16    terminology, enormous only if there's either an

17    acknowledgement that that's the right interest rate to

18    accrue, or there's a judicial determination following active

19    litigation that it's the right rate to accrue.

20         MR. PRICE:  Right.

21         THE COURT:  So there's no actual harm here at all,

22    no matter how you slice it, it's just a position being

23    asserted by Lehman, and you're disagreeing with it, but you

24    can either accept it or reject it.  But if you reject it,

25    it's a matter of time until it's determined what the right

Page 35

1    rate is.

2              MR. PRICE:  But -- I agree with that, completely,

3    except for the fact that we're engaging in this ADR process

4    now.  We'd like to, you know, try to settle some of these

5    things, and as long as these claims are being --

6              THE COURT:  I think you should.

7              MR. PRICE:  Well, that's -- I mean, ultimately

8    it's the decision of the holders whether to -- whether to

9    settle or not, but, you know --

10             THE COURT:  I'm using the you in that broad and

11   conversational sense that means that you're the person who's

12   speaking on their behalf right now.  So, in effect, those

13   represented by U.S. Bank, presumably, can take action to

14   protect their own economics here, if they do, fine; if they

15   don't, they take the consequences.

16             MR. PRICE:  Right.  I mean, that -- that's

17   certainly true, it's just that to the extent that they lose,

18   the interest would have accrued much more, let's say, in a

19   year or six months from now.

20             THE COURT:  Well, I guess that's life in high

21   stakes litigation.  I'm unsympathetic to your argument.

22             MR. PRICE:  Okay.  Like -- like I said at the

23   beginning --

24             THE COURT:  As you fully expected.

25             MR. PRICE:  -- we're not necessarily opposed to

1    the continuation of the stay, this is a particular issue

2    that's come up and that, you know, we -- we believe our

3    clients were -- you know, that the holders are being

4    prejudiced to the extent, you know, there certainly are

5    benefits to the stay being extended, we're not going to deny

6    that.  I think -- but, you know, this was a harm that --

7    that we saw and we think that the -- the standard is that

8    the Court balances both the harms against the benefits.

9            THE COURT:  Okay.  Well, based upon the arguments

10   that have been presented, the motion to extend the stay on

11   the avoidance actions for six months appears to be, in

12   substance, unopposed, notwithstanding the fact that papers

13   have been filed both by Lehman Brothers Australia and U.S.

14   Bank, as trustee, because counsel, for all practical

15   purposes, have each acknowledged that the stay is

16   beneficial.

17           In the case of Lehman Brothers Australia, there is

18   an acknowledgment that ADR is currently underway, that there

19   are hopes that the ADR process will be productive, and even

20   requests that the liquidators be made a party to the ADR

21   process so as to, perhaps, expedite a favorable resolution

22   of the ADR process.  As to that suggestion, the Court takes

23   no position at all, but if it develops that there is some

24   involvement on the part of the liquidators, I certainly

25   don't object if Lehman otherwise views that as useful and

Page 37

1    consistent with the procedures.

2           U.S. Bank seems to be making a substantive request

3    in the guise of an objection to the extension of the stay

4    that is not being seriously pressed in any event.  What

5    happens with interest is a matter to be decided at some

6    point in the future, either on a case by case basis as a

7    result of negotiated compromises that are not presently

8    before the Court, or as a result of litigation that may one

9    day determine the appropriate rate of interest to apply to

10   these potential recoveries.  If a party in interest affected

11   by the accrual of interest wishes to take action, they are

12   certainly free to do so.  The stay does not in any way get

13   in the way of people acting in their own self-interest.

14          The joint motion to extend the stay, as a result

15   of all this, is granted.  And I will enter the order.

16          MS. MARCUS:  Thank you, Your Honor.  We'll submit

17   an order at the conclusion of the hearing.

18          I think the next matter on the agenda is the -- in

19   the SIPA proceeding.

20          MR. KOBAK:  Good morning, Your Honor.  James

21   Kobak, Hughes Hubbard & Reed, on behalf of the SIPA trustee.

22          The one matter that's going forward on our

23   calendar today is our unopposed application, that's our

24   ninth interim application for fees.  There's no opposition

25   to this motion.

Page 38

```
 1              SIPC, whose recommendation is entitled to

 2    considerable reliance as Your Honor knows, has filed a

 3    recommendation in support of it.  The application covers the

 4    four month period July through October of 2011.  The total

 5    of time is somewhere in excess of 50,000 hours, which

 6    includes 400 hours of the trustee, himself.

 7              As we customarily do, we've applied our 10% public

 8    interest discount to the fees, which in the case amounts to

 9    approximately $2.5 million.  We've also voluntarily written

10    off, either voluntarily or as a result of discussions with

11    SIPC, approximately $350,000 in fees and $80,000 in expenses

12    customarily charged to other clients.

13              I think that our papers and my affidavit explain

14    the services that were rendered during that period.  And, as

15    I say, the application is unopposed, so unless Your Honor

16    has any questions, we'd ask you to approve the application.

17              THE COURT:  I have no questions, I approve the

18    application and I am influenced by the papers filed in

19    support of the application by SIPC.

20              MR. KOBAK:  Thank you, Your Honor.  And I believe

21    that concludes our calendar for today, and if possible, if

22    we could be excused, we would appreciate it.

23              THE COURT:  Everybody who is involved in the fee

24    application process in the LBI case is excused --

25              MR. KOBAK:  Thank you.
```

1          THE COURT:  -- but you're certainly -- you're

2     certainly welcome to stay if you wish.

3          MR. KOBAK:  Thank you, Your Honor.

4          MS. MARCUS:  Your Honor, the next matter is the

5     adversary proceeding docket.  We've actually put that to the

6     morning calendar because it was a short calendar and

7     Mr. Dahill will be handling that for the debtors.

8          MR. DAHILL:  Good morning, Your Honor.  William

9     Dahill from Wollmuth Maher & Deutsch, on behalf of Lehman

10    Brothers Special Finance.

11          This is in the avoidance action, adversary

12    proceeding 10-03547.  This is the distributed deals

13    avoidance action, the flip clause case in which the monies

14    have actually been distributed as opposed to numerous other

15    ones, which are being handled in separate adversary

16    proceedings.

17          The application before the Court today is to grant

18    the motion to amend the first amended complaint.  This

19    request and the motion before the Court is a culmination of

20    a series of orders following the filing of the action in

21    September of 2010.  The orders issued thereafter permitted

22    LBSF to engage in wide-ranging discovery to identify and

23    confirm the identity of noteholders, during which there was

24    also an extension of the time period to serve pleadings and,

25    of course, the stay which was in effect broadly across the

1   cases was, in effect, in the distributed deals case as well.

2          Significant efforts were undertaken through the

3   discovery permitted to identify new noteholders and thus to

4   permit amendment, which brings us here.

5          Through the process, LBSF has identified 165 new

6   defendant noteholders, has been able to correct the

7   identification of 33 additional defendant noteholders, and

8   through this application seek to amend the complaint to add

9   all of those parties to the adversary proceeding, as well as

10  to add claims under Section 548(A)(1)(a) of the Bankruptcy

11  Code and for replevin as against all parties existing and

12  those being added.

13         Prior to the deadline for objections, 37 parties

14  reached out to us and entered into stipulations in which

15  they agreed that they would not contest this application,

16  preserving whatever substantive rights they had to such time

17  in the future as may be appropriate.

18         There were a total of ten objections that were

19  filed on July 11th, six of them styled as limited objections

20  in which the filing parties consented to or agreed to the

21  amendment of the complaint subject to their reserving their

22  rights to contest later the substantive issues raised by the

23  amended pleading, and there were four what I'll call

24  substantive objections, as well.

25         Of those total of ten objections, we reached

Page 41

1    agreement with nine of the ten, which in essence have all of

2    which have been resolved primarily through the submission of

3    a revised order, which we did on Monday, docket number 294,

4    which some of the other parties also had stipulations that

5    they entered into in addition to agreeing to this new order.

6            The net impact of this is that all of the parties

7    have either not objected, or have stipulated, or reached

8    agreement with respect to the amendment of the complaint,

9    except for one of the objections filed by a party known as

10   Dispatch of Ohio.

11           The substantive argument on their objection has

12   been set for August 15th at 2:00 p.m.  But what we put

13   before the Court today, given that every other party has

14   agreed or has consented to the amendment of the complaint,

15   is an order which grants the relief that LBF seeks -- LBSF

16   seeks.  It preserves the defenses that all those parties

17   have to such point in the future that may come to that time

18   period at the expiration of a stay or otherwise, should

19   there still be -- should they still be in the case, and sets

20   August 15th as the date for the argument on the one

21   substantive objection.

22           Last evening, we received an objection from

23   Dispatch to our revised order asserting, I believe,

24   something to the effect that they thought that in some way

25   they were losing rights by proceeding with regard to their

1    objection as opposed to the parties that are waiting to

2    assert their objections later.

3            The order as presented to the Court does not

4    eliminate any rights they may have, what it does is set

5    forth whatever rights they may have will be determined in

6    connection with the hearing on August 15th.  To the extent

7    that there are rulings that arise out of -- as a result of

8    that objection being heard, they may impact whatever rights

9    either party may have going forward to some point in the

10   future.

11           And our order, as submitted, intends to do nothing

12   different, what we understand that the request by Dispatch

13   with -- again, not on their objection to the underlying

14   application which will be heard in August, but their

15   objection to the order that's now before the Court seems to

16   be that they want all of their rights preserved,

17   irrespective of what occurs at -- at a hearing in August.

18   And we believe that's giving them two bites at the apple.

19           So, we respectfully request that the order, as

20   presented to the Court, which will enter the order granting

21   the amendment of the pleading to essentially the 300 parties

22   who are not contesting in any way this application and

23   preserves Dispatch's rights to deal with their objection on

24   August 15th.

25           If you have any questions, Your Honor, I'm happy

1       to address them.

2               THE COURT:  No, I'll hear from Dispatch.

3               MR. KAUFMAN:  Good morning, Your Honor.  Alan

4       Kaufman, McKenna Long & Aldridge, on behalf of Dispatch.

5               As Mr. Dahill is well aware, we're not intending

6       to get two bites at the apple.  We're not suggesting that

7       irrespective of what occurs on -- with respect to the motion

8       to amend that we would then -- that that order would then be

9       cast aside and we would get to re-argue it in the motion to

10      dismiss.

11              THE COURT:  I saw your papers.  I don't understand

12      your position at all.

13              MR. KAUFMAN:  Well, Your Honor, the -- I think the

14      -- the intent -- there is an agreement of the intent between

15      the parties, but I think there's a little bit of a dispute

16      as to presentation.  Essentially, if Your Honor has the

17      proposed order in front of him --

18              THE COURT:  I don't.

19              MR. KAUFMAN:  Okay.  The -- on page 3 it says, if

20      you don't mind me reading very briefly, "order that the

21      entry of this order.  Notwithstanding any other provision in

22      this order, all of the rights, defenses, claims, and

23      counter-claims of each defendant, including -- (including

24      those named as defendants for the first time through the

25      amended complaint, but not -- but excluding Dispatch) to the

Page 44

1    relief sought in the second amended complaint are expressly

2    preserved and may be asserted as appropriate through a

3    motion or responsive pleading after the second amended

4    complaint has been dually filed and served."  You know, so

5    forth and so on.

6         And it's really three words.  I mean this proposed

7    order is supposed to do two things, and I think both parties

8    agree what it's supposed to do, I just think there's dispute

9    as to whether -- what it actually does do.

10        It's supposed to preserve the rights, I guess, of

11   the parties who have objected, but are not pursuing the

12   motion to amend right now, or not objecting to the motion to

13   amend.  And as to Dispatch, which intends to proceed with

14   its -- with this objection, it's simply adjourning the

15   return date.  That's really all this is supposed to do, and

16   I think both sides agree with that.

17        I think what Dispatch has a problem with is it

18   says, but excluding Dispatch.  In other words, what it's

19   saying is, all rights are preserved, but excluding Dispatch.

20   And I think because of those three words, but excluding

21   Dispatch, there's a concern that perhaps those rights are

22   not being preserved then.  Obviously, what's the point of

23   saying, but excluding Dispatch?

24        THE COURT:  Well, I think what it's saying is

25   that, it may not be saying it artfully, is that this order

Page 45

1   applies to parties that have either agreed or have withdrawn

2   their objections, but Dispatch is not affected by that

3   aspect of the order.

4          You may or may not be affected by that aspect of

5   the order in the future because I have no idea what your

6   objections are, or why we're dealing with you as opposed --

7   as the sole remaining objector.  But you take the

8   consequences of being that sole remaining objector, and you

9   may end up in a worse position as a result of what happens

10  on August 15th.  You should know that.  You may end up in a

11  worse position.

12         So while it's not two bites at the apple, you have

13  an opportunity now, should you choose to -- to be like

14  everybody else, or to be separate.  So, you're separate.

15  Take the consequences of being separate.

16         MR. KAUFMAN:  Understood, Your Honor.  The -- the

17  point though is that we -- our rights should be preserved

18  just like anyone else's.  Obviously whatever happens in the

19  order on the motion to -- for leave to amend is what's

20  happening in the order.

21         This piece of paper is not going to override what

22  happens.  That seems to be the concern of Mr. Dahill that

23  what's going to end up happening is, if in fact Your Honor's

24  order preserves some rights, but maybe not all, or -- or

25  however it comes to pass, that perhaps if there is grounds,

Page 46

1    or we're not barred from a subsequent motion to dismiss on

2    some ground, that you would then need a subsequent order to

3    undo what was done here, and we'd be able to make a motion

4    to dismiss on -- all over again, on the same exact grounds

5    that perhaps Your Honor's already barred in your order on

6    the motion to amend.  That's not our position.  I don't

7    think that's their position.

8            I just think the way it's presented, I just don't

9    understand frankly why even the language, but excluding

10   Dispatch, even needs to be in there because frankly whatever

11   Your Honor rules on that motion to amend is obviously what

12   is going to be the lay of the land.  We're not -- we're not

13   looking for anything more or anything less, we're just

14   seeking to have our rights preserved, as well, and then --

15   to the extent they're adjudicated later, we'll address them

16   later.

17           But, as of right now and today and we frankly

18   apologize for Your Honor -- taking up Your Honor's time on,

19   you know, what we think should be a very small issue,

20   unfortunately we couldn't work it out amongst ourselves last

21   night, but I think it's really just those three words.

22           THE COURT:  So -- so this is just about language?

23   What if the words, but excluding Dispatch, were taken out

24   and there were a separate paragraph put in that said nothing

25   in this order applies to Dispatch, isn't that true?

Page 47

1            MR. KAUFMAN:  As long -- as long as there's a

2    preservation of rights, sure.  But excluding, there's the

3    language in there already that talks about how the motion is

4    only going to be -- granting the motion for leave to amend

5    is only going to be granted -- is not going to be granted

6    with respect to Dispatch.  So I think -- I agree with what

7    Your Honor's saying, I believe, which is if you take out the

8    language, but excluding Dispatch, we're fine with it.

9            THE COURT:  I didn't say just that.

10           MR. KAUFMAN:  Oh, well, my apologies.

11           THE COURT:  I said and also adding words to the

12   effect, I'm not drafting your order for you --

13           MR. KAUFMAN:  Understood.

14           THE COURT:  -- but I could because that's what I

15   do as a judge.  It would be to add something to the effect

16   that nothing in this order applies to Dispatch because the

17   issues relating to Dispatch are to be heard on August 15.

18           MR. KAUFMAN:  I think that there's maybe language

19   to that effect already in there, and I agree, Your Honor.

20           In fact, in thinking about it further after our

21   conversations, have there just been two orders, frankly,

22   this probably wouldn't have made a difference, that occurred

23   to me this morning.  You know, have their one Dispatch

24   order, just frankly an adjournment, and one order preserving

25   rights for the other objectors, I think that would have

1    probably done the trick, as well.  But I -- I agree

2    conceptually with what Your Honor's saying.

3              THE COURT:  Well, here's what I'm going to propose

4    you do.  Take five, ten minutes and work out the language

5    that will be acceptable to both parties.  And if you can't

6    work it out, we're really going to have a hard time on

7    August 15th.

8              MR. KAUFMAN:  Understood, Your Honor.

9              MR. DAHILL:  Thank you, Your Honor.

10             MR. KAUFMAN:  Thank you.

11             THE COURT:  Is there anything more?

12             MS. MARCUS:  That concludes the agenda, Your

13    Honor.  All the other matters have been adjourned.

14             THE COURT:  Fine.

15             MS. MARCUS:  Thank you.

16             THE COURT:  Then we are adjourned for the day.

17    Thank you.

18        (Whereupon these proceedings were concluded at 10:59

19    AM)

20

21

22

23

24

25

Page 49

1                           I N D E X

2

3                           RULINGS

4                                          Page        Line

5    Motion of Lehman Brothers Holdings Inc.    12          23

6    to Modify Certain Existing Claims Order

7    [ECF No. 29193]

8

9    Joint Motion of Lehman Brothers Holdings    37          15

10   Inc. and Litigation Subcommittee of

11   Creditors' Committee to Extend Stay of

12   Avoidance Actions [ECF No. 29163]

13

14   Ninth Application for Interim Professional   38          17

15   Compensation for Hughes Hubbard & Reed LLP

16   [ECF No. 5099]

17

18

19

20

21

22

23

24

25

Page 50

1              C E R T I F I C A T I O N

2

3    I, Jamie Gallagher, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6    *Jamie*                Digitally signed by Jamie
                            Gallagher
7    *Gallagher*            DN: cn=Jamie Gallagher, o, ou,
                            email=digital1@veritext.com,
                            c=US
8                           Date: 2012.07.20 17:53:29
                            -04'00'

     Veritext

9

     200 Old Country Road

10

     Suite 580

11

     Mineola, NY  11501

12

13

     Date:  July 20, 2012

14

15

16

17

18

19

20

21

22

23

24

25