WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO SECTION 105(a) OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR
AUTHORIZATION TO SETTLE CERTAIN PREPETITION DERIVATIVES
CONTRACTS WITH TRUSTS FOR WHICH DEUTSCHE BANK NATIONAL
TRUST COMPANY SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint

Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, pursuant to section

105(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization

to settle certain prepetition derivatives contracts and related relief, all as more fully described in

the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 23,**

**2012 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq., attorneys for LBHI; (iii) the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Elisabetta Gasparini Esq., and Andrea B. Schwartz, Esq.; and (iv) Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn:  Richard C. Pedone, Esq. and Amanda D. Darwin, Esq., attorneys for Deutsche Bank National Trust Company; so as to be so filed and received by no later than **August 17, 2012 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

US_ACTIVE:\44014795\8\58399.0008

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 24, 2012
New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**MOTION PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR
AUTHORIZATION TO SETTLE CERTAIN PREPETITION DERIVATIVES
CONTRACTS WITH TRUSTS FOR WHICH DEUTSCHE BANK NATIONAL
TRUST COMPANY SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), respectfully represents:

**Preliminary Statement**

1.      After more than two years of discussions, negotiations and the initiation of

litigation, Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Derivatives

Products Inc. ("LBDP", and together with LBSF, the "Lehman Counterparties") have reached an

agreement with Deutsche Bank National Trust Company ("DB Trust"), in its capacity as

indenture trustee or trustee (the "Trustee") for certain trusts, regarding the payments of the

amounts due to the Lehman Counterparties under certain interest rate swap agreements.  The proposed settlement, as evidenced by a certain Settlement Agreement between the parties, dated July 24, 2012 attached hereto as Exhibit A (the "Settlement Agreement"), avoids the need for complex and costly litigation regarding certain issues relating to payments due to the Lehman Counterparties under their respective swap agreements that matured or terminated after the Commencement Date.  The settlement represents a compromise among the parties regarding the payments on the swap agreements that, in the Plan Administrator's business judgment, is in the best interests of LBSF, LBDP and their respective estates.

### Background

2.       Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries (the "Chapter 11 Estates") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.       On December 6, 2011, the Court approved and entered an order confirming the Plan.  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator is authorized to administer the assets of the LBSF and LBDP.

### Jurisdiction

4.       This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Relief Requested

5.       The Plan Administrator requests authorization, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 to enter into the Settlement Agreement

which provides for the settlement of the swap agreements identified on Exhibit B annexed hereto (the "Swap Agreements") in the amounts set forth on Exhibit B (the "Settlement Amounts").

## The Swap Agreements

6.    In the ordinary course of their businesses prior to the Commencement Date, LBSF and LBDP were active participants in the swap markets and entered into various types of swap agreements, including interest rate swaps.  LBSF and LBDP are each party to one or more separate Swap Agreements with four of the trusts identified on Exhibit B attached hereto (the "Trusts").  Generally, under their respective Swap Agreements, the Lehman Counterparties had an obligation to pay to the Trusts a floating interest rate, based on one-month USD-LIBOR-BBA ("One Month LIBOR"), plus a specified spread on a specified amortizing notional amount. The Trusts had the obligation to pay to the applicable Lehman Counterparty a fixed rate of interest on the same notional amount.  LBHI guaranteed the applicable Lehman Counterparties' obligations under each Swap Agreement.[1]  DB Trust serves as Trustee for each of the Trusts.

## Events Relating to the Swap Agreements Subsequent to the Commencement Date

7.    Subsequent to the Commencement Date, as indicated on Exhibit B, five of the Swap Agreements matured in accordance with their own terms (the "Matured Swaps") and three of the swap agreements were terminated by LBDP (the "Terminated Swaps") by sending notices of termination to the respective Trusts.

8.    Due to low prevailing One Month LIBOR rates since the Commencement Date, with respect to the Matured Swaps, the Lehman Counterparties were "in the money" on their respective Swap Agreements each payment date prior to the applicable maturity date.  As a

---

[1] The descriptions of the Swap Agreements are provided for summary purposes only.  To the extent that the descriptions of the Swap Agreements in this Motion conflict with the terms of a particular Swap Agreement, the terms of such Swap Agreement shall control.

result, the Lehman Counterparties assert that, generally, on each payment date specified in the

Swap Agreements the Trusts were obligated to make a net payment to the applicable Lehman

Counterparty.  Prior to the applicable maturity dates, the Trusts did not make the required

monthly payments to such Lehman Counterparty under the Swap Agreements, and instead,

escrowed or otherwise set aside such payments.  As of the date hereof, the Trusts that are party to

the Matured Swaps have retained approximately $39.6 million in the aggregate as payments due

to LBSF and $3.5 million as payments due to LBDP under the Matured Swaps.  The Plan

Administrator agrees that the amounts set aside are the correct amounts that were payable on

such payment dates under the Matured Swaps.

9.      As to the Terminated Swaps, on September 16, 2008, LBDP sent a notice

of termination to the Trusts and Trustee terminating the Terminated Swaps.  On September 25,

2008, LBDP sent a statement indicating the termination amount of $717,055.64 in the aggregate

and demanding payment such amount.  The Trustee requested that LBDP provide additional

information supporting such calculations.  Because of certain disputes with respect to the

interpretation of the transaction documents and applicable law, each Trust continued to distribute

amounts otherwise payable to LBDP to the applicable holders of notes issued by such Trust.  As

a result, these Trusts do not have funds set aside that are available to distribute to LBDP.

10.      The Trustee asserts that the Trusts have withheld payments from the

Lehman Counterparties on the grounds that each Swap Agreement provides that upon an event of

a default by the applicable Lehman Counterparty, such Lehman Counterparty's right to payment

is either modified or eliminated.  The Lehman Counterparties contest the enforceability of such

provisions and assert that the Trusts did not have the right to withhold payment under the Swap

Agreements prior to maturity or upon their termination based on the occurrence of events of

default caused by the bankruptcy filing of the applicable Lehman Counterparty. Despite the arguments of the Lehman Counterparties, the repeated demands for payment, and the Bankruptcy Court's ruling in the *Motion of Lehman Brothers Special Financing Inc. to Compel Performance of Metavante Corporation's Obligations under Open Derivatives Contract*, Hr. Tr. Sept 15, 2009, the Trusts have thus far refused to make the required payments. LBDP also contests the enforceability of the modification of its payment rights to having a lower payment priority than security holders, and asserts that the Court previously ruled on such matter in *See, LBSF v. BNY Corp. Tr. Serv.*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010). The Trustee asserts that the factual circumstances of the Swap Agreements distinguish their Swap Agreements from the agreements subject to the above rulings and have asserted other defenses to payment.

11.    The Lehman Counterparties assert that interest has continued to accrue on the amounts due and unpaid under the Swap Agreements at the default interest rate. Section 2(e) of each Swap Agreement provides that "a party that defaults in the performance of any payment obligation will . . . be required to pay interest (before as well as after judgment) on the overdue amount to the other party on demand . . . for the period from (and including) the original due date for payment to (but excluding) the date of actual payment, at the Default Rate" (as that term is defined in the Agreement). The Trustee disputes the accrual of interest on such amounts and the rate asserted by the Lehman Counterparties.

12.    On October 1, 2010, LBSF and LBDP filed an adversary proceeding, Adv. P. No. 10-03809 (the "Swap Agreement Adversary Proceeding"), against the Trustee and certain of the Trusts (collectively, the "Swap Defendants") alleging, among other things, that the Swap Defendants were the recipients of avoidable transfers relating to certain of the Swap Agreements. The Swap Agreement Adversary Proceeding has been stayed by order of this Court.

US_ACTIVE:\44014795\8\58399.0008

## The Settlement

13.     Pursuant to the Settlement Agreement, the Lehman Counterparties and the

Trustee on behalf of the Trusts have agreed that each Trust will pay the applicable Lehman

Counterparty the respective Settlement Amount.  The Settlement Agreement provides that the

Settlement Amount for each Trust is equal to (a) 100% of the cash withheld by the Trust on

account of payments under its Swap Agreement, less (b) reasonable and documented fees and

expenses of the Trust, and excluding (c) any interest.  To the extent the Swap Agreements with

LBDP were terminated and the applicable Trusts did not set aside any amounts as payments due

under their Swap Agreements, the Settlement Amount for such Trusts is $0.

14.     The Settlement Agreement resolves all amounts due under the Swap

Agreements.  As a result, pursuant to the Settlement Agreement, (a) the proofs of claim filed by

each Trust against LBSF, LBDP and LBHI on account of the Swap Agreements and the

guarantees thereof (Claim Nos. 18492, 18497, 18494, 18540, 18512, 18498, 18500, 18501,

18503, 18505, 18507, 18491, 18495, 18493, 18510, 18514, 18496, 18499, 18502, and 18506)

(the "Claims") will be disallowed and expunged, (b) the Swap Agreement Adversary Proceeding

will be dismissed, and (c) other than those obligations arising under the Settlement Agreement,

the parties release each other from all other claims arising from or relating to the Swap

Agreements, the Transactions thereunder, or any guarantee thereof, their negotiation, execution,

performance, any breaches (or claimed breaches) thereof or thereunder, or their termination.

15.     The Plan Administrator, on behalf of the Lehman Counterparties, is

authorized to settle the Swap Agreements without further Court approval pursuant to the Plan.

However, the Trustee has agreed to the terms of the proposed settlement and the Settlement

Amounts, subject to the filing of this Motion, which provides the holders of the notes issued by

the Trusts with notice of, and an opportunity to object to, the proposed settlement.  The Trustee

has notified holders of notes issued by the Trusts and requested that they provide instruction with

respect to the Swap Agreements, but has received no response and has not been directed by such

holders to take or refrain from taking any specific actions with respect to the Swap Agreements

since the Commencement Date.

### Settlement of the Swap Agreements Is Reasonable and
### in the Best Interests of LBSF's and LBDP's Estates and Their Creditors

16.    The settlement of the Swap Agreements in the Settlement Amounts should

be approved under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Section

105(a) of the Bankruptcy Code provides that "[t]he court may issue any order that is necessary or

appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019

provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing,

the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  In granting a

motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and

equitable and is in the best interests of the estate.  *Protective Comm. for Indep. Stockholders of*

*TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49*

*Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R.

414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

17.    The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is

the responsibility of a court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

18.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact. . . .  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness."  *Nellis v. Shugrue*, 165 B.R. at 123 (internal citations omitted).

19.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise."  *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. at 802 ("Significantly, that test does not contemplate that [the court] substitute [its] judgment for the Trustee's, but only that [the court] test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, [the court] must approve that choice, even if, all things being equal, [the court] would have selected the other.").

20.     The settlement of the Swap Agreements will resolve disputes between the Lehman Counterparties and the Trustee that have been ongoing for more than two years, and will result in LBSF receiving $38,610,271.40 and LBDP receiving $3,255,537.54 that will be distributed to creditors of such estates.  The settlement results in LBSF and LBDP receiving all amounts (less certain fees and expenses of the Trustee) due to them under their respective Swap Agreements that has been set aside by the Trusts.  In order to receive such amounts without

complex and costly litigation, the Plan Administrator has agreed to forego its request for default interest accrued on the amounts due from the Trusts.

21.    Inasmuch as LBDP terminated three of the Swap Agreements shortly following LBHI's Commencement Date, it is only entitled to collect the termination payments asserted in the valuation statements provided to the Trusts.  These Trusts have continued to make distributions to the holders of the notes since the Commencement Date and have not set aside any cash on account of the Swap Agreements.  The amount set aside on account of the one LBDP Matured Swap that will be paid to LBDP under the settlement exceeds the total amount asserted as due to LBDP on the four LBDP Swap Agreements.  As a result, the Plan Administrator has determined that the litigation risk and the cost and expense of seeking to recover amounts on account of the Terminated Swaps, and recoveries from such litigation, if any, are outweighed by the potential recovery to LBDP under the settlement.

22.    Accordingly, the Plan Administrator has determined that it is in the best interests of each of LBSF and LBDP, their estates and creditors to settle the Swap Agreements. The Settlement Amounts are the product of the well-informed judgment by the Plan Administrator and supported by its professionals.  In light of these factors and in furtherance of the Plan Administrator's duties to maximize the value of the assets of the chapter 11 estates, the settlement of the Swap Agreements is an exercise of sound business judgment, satisfies the standards for approval of settlements under Bankruptcy Rule 9019, and should be approved.

23.    In addition, the Plan Administrator and the Trustee seek to have the settlement of the Swap Agreements binding on all holders of notes issued by the Trusts.  The Trustee is providing notice of the settlement of the Swap Agreements and the respective Settlement Amounts to all registered holders of notes issued by the Trusts, and all other holders

who have identified themselves to the Trustee, in accordance with standard procedures with respect to notices, and advising such holders of the filing of this Motion and of their respective opportunity to object thereto.  The Trustee has informed the Plan Administrator that it will file an affidavit setting forth the steps taken by the Trustee to provide notice to the holders of the notes issued by the Trusts

## Notice

24.    No trustee has been appointed in these chapter 11 cases.  The Plan Administrator has served notice of this Motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the Trustee; (vii) the Trusts, and (viii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

25.    No previous request for the relief sought herein has been made by the

LBSF, LBDP or the Plan Administrator to this or any other court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.

Dated:  July 24, 2012
        New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

## **Exhibit A**

Settlement Agreement

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "<u>Settlement Agreement</u>") is made and entered into as of July 24, 2012 by and between Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), Lehman Brothers Derivatives Products Inc. ("<u>LBDP</u>") and Deutsche Bank National Trust Company ("<u>DB Trust</u>"), solely in its capacity as indenture trustee or trustee (the "<u>Trustee</u>") for the trusts identified on Exhibit A attached hereto (the "<u>Trusts</u>") (each of LBHI, LBSF, LBDP and the Trustee, a "<u>Party</u>" and collectively, the "<u>Parties</u>").  Capitalized terms not defined herein shall have the meaning ascribed to them in the Indenture.

## RECITALS:

WHEREAS, LBSF or LBDP entered into one or more swap transactions (the "<u>Transactions</u>") with certain of the Trusts, which agreements are identified on Exhibit A attached hereto (the "<u>Swap Agreements</u>").

WHEREAS, LBHI guaranteed the obligations of LBSF and LBDP, as applicable, under the Swap Agreements.

WHEREAS, commencing on September 15, 2008 (the "<u>Commencement Date</u>") and thereafter, LBHI and various of its affiliates, including LBSF and LBDP, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Cases</u>").

WHEREAS, on September 16, 2008 and September 25, 2008, LBDP delivered notice of termination to the Trustee and the applicable Trusts terminating three of the Swap Agreements as indicated on Exhibit A.

WHEREAS, as indicated on Exhibit A, five of the Swap Agreements matured in accordance with their terms subsequent to the Commencement Date.

WHEREAS, the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "<u>Plan</u>") was confirmed by the Bankruptcy Court on December 6, 2011 and became effective on March 6, 2012.

WHEREAS, the Parties understand and acknowledge that the effectiveness of this Settlement shall be subject to the entry by the United States Bankruptcy Court of an order approving this Settlement Agreement.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    <u>Direction and Payment</u>.

(a)    The Trustee, on behalf of the Trusts shall pay to LBDP and LBSF, as applicable, the amounts set forth on Exhibit A attached hereto without deduction, set-off or counterclaim (the "<u>Settlement Payments</u>") within three (3) Business Days of the Effective Date (as defined below) using the wire transfer instructions set forth on the attached Exhibit B.

(b)    The Parties acknowledge that the Settlement Amount for each Trust is equal to (i) 100% of the cash withheld by the Trust on account of payments under its Swap Agreement, less (ii) reasonable and documented fees and expenses of the Trust, and excluding (iii) any interest.  To the extent the Swap Agreements with LBDP were terminated following the Commencement Date and the applicable Trusts did not set aside any amounts as payments due under their Swap Agreements, the Settlement Amount for such Trusts is $0.

Section 2.    <u>Release</u>.

(a)    Upon making the payment of the Settlement Amount to LBSF or LBDP, as applicable, the Swap Agreements (including for the avoidance of doubt, all Transactions thereunder) and any guarantee thereof issued by LBHI shall be deemed discharged and terminated for all purposes and be of no further force and effect.

(b)    This Settlement Agreement is entered into for settlement purposes only. Nothing contained herein shall be deemed an admission of any kind (whether an admission of liability or otherwise) by the Parties, or any of their affiliates, officers, directors or agents, in connection with and any all rights, remedies, claims, issues or defenses of the Parties regarding the Swap Agreements, the Transactions thereunder, or the indentures.  In furtherance of and without limiting the generality of the foregoing, nothing herein shall constitute, or be deemed or construed to be, an agreement (or otherwise to create any obligation) on the part of any Party, including the Trustee, whether as Trustee or in any other capacity, to agree to any terms, or to enter into any agreement, or to take (or forbear from) any action with respect to any matter not explicitly provided for herein.

(c)    In consideration of each other Party's execution of this Settlement Agreement and payment of the Settlement Amounts without deduction, setoff or counterclaim to LBDP and LBSF, as applicable, each Party hereby generally releases, discharges and acquits each other Party (including DB Trust, individually and as Trustee and in any other capacity with respect to the Transactions) and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (collectively, the "<u>Released Transaction Parties</u>" and each of the foregoing, is a "<u>Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence, but excluding fraud or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent (collectively "<u>Claims</u>"), that such releasing Party

ever had or claimed to have, or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Swap Agreements, the Transactions thereunder, or any guarantee thereof, their negotiation, execution, performance, any breaches (or claimed breaches) thereof or thereunder, or their termination.

Section 3.        Settlement of Claims.

(a)  The proofs of claim filed by the Trusts and the Trustee based on the Swap Agreements against LBSF, LBDP and LBHI (Claim Nos. 18492, 18497, 18494, 18540, 18512, 18498, 18500, 18501, 18503, 18505, 18507, 18491, 18495, 18493, 18510, 18514, 18496, 18499, 18502, and 18506) shall be disallowed and expunged, and the court-appointed claims agent is authorized to modify the claims register accordingly.

(b)  Within seven (7) days of the receipt of the Settlement Payments, LBSF and LBDP shall dismiss all applicable adversary proceedings filed against the Trustee and the Trusts.

Section 4.        Representations.  Each Party represents and warrants to each other Party that (i) subject to section 6 hereof, the execution, delivery, and performance by such Party of this Settlement Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Settlement Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Settlement Agreement, the Indemnity Agreement and documents delivered in connection therewith (iv) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, and (v) it knowingly waives any and all claims that this Settlement Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Settlement Agreement based upon currently existing facts, known or unknown.  The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Settlement Agreement.  Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Settlement Agreement.  These representations and warranties shall survive the execution of this Settlement Agreement indefinitely without regard to statutes of limitations.

Section 5.        Execution in Counterparts.  This Settlement Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.  Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 6.        Effectiveness.  The Parties agree that the effectiveness of this Settlement Agreement is subject to the entry of an order ("Order") by the Bankruptcy Court, in form and substance reasonably acceptable to the Parties, approving the terms of this Settlement Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which Order has become final and non-appealable or, if a timely appeal is filed, upon dismissal of such

appeal or the affirmance of the Order on appeal with no further opportunity to appeal (the "Effective Date").  The Parties further agree that at any time prior to the hearing seeking the entry of the Order, the Trustee may, upon the objection of certificateholders holding at least 10% in the aggregate of the outstanding principal amount of any class of certificates of a Trust (which has not otherwise been resolved prior to the entry of the Order), withdraw a particular Trust from this Settlement Agreement.  The Trustee shall promptly provide notice to LBSF or LBDP, as applicable, of any such objection to the settlement the Trustee receives from certificateholders.  For purposes of clarity, the withdrawal of any Trust from the terms of this Settlement Agreement shall not affect the terms of this Settlement Agreement with respect to any remaining Trusts.

Section 7.    Governing Law.  This Settlement Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Settlement Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 8.    Special Provision for Unknown Claims.  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the release in Section 2.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 9.    Execution by Trustee.  The Trustee is executing this Agreement solely in its capacity as the Trustee and not in its individual capacity.  This Settlement Agreement shall have no effect on any rights, immunities and other protections granted to the Trustee under the indentures governing the trusts.  The Trustee shall have no duties or obligations under this Settlement Agreement except for such duties expressly set forth herein.  Neither DB Trust nor any of its respective officers, directors, shareholders or agents shall be liable for any claim, liability, or obligation arising out of this Settlement Agreement except (i) to cause the payment of the Settlement Amount as provided herein and (ii) to comply with those terms expressly applicable to it under Sections 2 and 3 of this Settlement Agreement.

Section 10.    Successors and Assigns.  The provisions of this Settlement Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 11.    Amendment.  This Settlement Agreement may only be amended, modified, superseded or canceled and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 12.    <u>Entire Agreement</u>.    This Settlement Agreement constitutes the entire agreement and understanding of the Trustee and the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 13.    <u>Construction</u>.    This Settlement Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Settlement Agreement or any of its provisions against the Party responsible for drafting this Settlement Agreement will not apply in any construction or interpretation of this Settlement Agreement.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Settlement Agreement on the date first written above.

LEHMAN BROTHERS HOLDINGS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By:_____
Name:
Title:

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By:_____
Name:
Title:

LEHMAN BROTHERS DERIVATIVES PRODUCTS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By:_____
Name:
Title:

DEUTSCHE BANK NATIONAL TRUST
COMPANY, not in its individual capacity
but solely as the Trustee

By: _____

Name: Ronaldo Reyes

Title: Vice President

By: _____

Name: Melissa Rossiter

Title: Vice President

## Exhibit A

### Swap Agreements with LBSF

| Trusts | Swap Agreement | Matured/ Terminated | Settlement Amount Due to LBSF |
|---|---|---|---|
| IMPAC CMB Trust Series 2005-8 | ISDA Master Agreement, dated as of November 30, 2005, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $16,849,179.91 |
| IMPAC CMB Trust Series 2005-4 | ISDA Master Agreement, dated as of May 6, 2005, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $9,386,254.17 |
| IMPAC CMB Trust Series 2005-5 | ISDA Master Agreement, dated as of June 30, 2005, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $8,207,510.90 |
| First Franklin Mortgage Loan Trust Series 2006-FF8 | ISDA Master Agreement, dated as of June 29, 2006, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $4,167,326.42 |
| | | TOTAL | $38,610,271.40 |

### Swap Agreements with LBDP

| Trusts | Swap Agreement | Matured/ Terminated | Settlement Amount Due to LBDP |
|---|---|---|---|
| IMPAC CMB Trust Series 2004-10 | ISDA Master Agreement, dated as of September 16, 2004, by and between IMPAC CMB Trust Series 2004-10 and LBDP, and all transactions thereunder | Matured | $3,255,537.54 |
| IMPAC CMB Trust Series 2004-8 | ISDA Master Agreement, dated as of September 29 29, 2004, by and between IMPAC CMB Trust Series 2004-8 and LBDP, and all transactions thereunder | Terminated | $0 |
| IMPAC CMB Trust Series 2004-5 | ISDA Master Agreement, dated as of May 28, 2004, by and between IMPAC CMB Trust Series 2004-5 and LBDP, and all transactions thereunder | Terminated | $0 |
| IMPAC CMB Trust Series 2003-11 | ISDA Master Agreement, dated as of November 6, 2003, by and between IMPAC CMB Trust Series 2003-11 and LBDP, and all transactions thereunder | Terminated | $0 |
| | | TOTAL: | $3,255,537.54 |

## **Exhibit B**

Wire Instructions

[REDACTED]

**Exhibit B**

**Swap Agreements with LBSF**

| Trusts | Swap Agreement | Matured/ Terminated | Settlement Amount Due to LBSF |
|---|---|---|---|
| IMPAC CMB Trust Series 2005-8 | ISDA Master Agreement, dated as of November 30, 2005, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $16,849,179.91 |
| IMPAC CMB Trust Series 2005-4 | ISDA Master Agreement, dated as of May 6, 2005, by and between IMPAC CMB Trust Series 2005-4 and LBSF, and all transactions thereunder | Matured | $9,386,254.17 |
| IMPAC CMB Trust Series 2005-5 | ISDA Master Agreement, dated as of June 30, 2005, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $8,207,510.90 |
| First Franklin Mortgage Loan Trust Series 2006-FF8 | ISDA Master Agreement, dated as of June 29, 2006, by and between IMPAC CMB Trust Series 2005-8 and LBSF, and all transactions thereunder | Matured | $4,167,326.42 |
| | | TOTAL | $38,610,271.40 |

**Swap Agreements with LBDP**

| Trusts | Swap Agreement | Matured/ Terminated | Settlement Amount Due to LBDP |
|---|---|---|---|
| IMPAC CMB Trust Series 2004-10 | ISDA Master Agreement, dated as of September 16, 2004, by and between IMPAC CMB Trust Series 2004-10 and LBDP, and all transactions thereunder | Matured | $3,255,537.54 |
| IMPAC CMB Trust Series 2004-8 | ISDA Master Agreement, dated as of September 29 29, 2004, by and between IMPAC CMB Trust Series 2004-8 and LBDP, and all transactions thereunder | Terminated | $0 |
| IMPAC CMB Trust Series 2004-5 | ISDA Master Agreement, dated as of May 28, 2004, by and between IMPAC CMB Trust Series 2004-5 and LBDP, and all transactions thereunder | Terminated | $0 |
| IMPAC CMB Trust Series 2003-11 | ISDA Master Agreement, dated as of November 6, 2003, by and between IMPAC CMB Trust Series 2003-11 and LBDP, and all transactions thereunder | Terminated | $0 |
| | | TOTAL: | $3,255,537.54 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 AUTHORIZING THE SETTLEMENT OF CERTAIN PREPETITION DERIVATIVES CONTRACTS WITH TRUSTS FOR WHICH DEUTSCHE BANK NATIONAL TRUST COMPANY SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF

Upon the motion dated July 24, 2012 (the "Motion")[1] of Lehman Brothers

Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan

of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, pursuant to section 105(a) of

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the settlement of

certain prepetition derivatives contracts and related relief, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper

notice of the Motion having been provided in accordance with the procedures set forth in the

amended order entered June 17, 2010 governing case management and administrative procedures

[Docket No. 9635], and it appearing that no other or further notice need be provided; and a

---

[1] Capitalized Terms used but not defined herein shall have the meanings ascribed to such terms
in the Motion.

hearing having been held to consider the Motion; and the Court having found and determined

that the relief sought in the Motion is in the best interests of LBSF and LBDP and their estates

and creditors and all parties in interest; and upon the Court's consideration of the Motion and the

record of the hearing to consider the relief requested in the Motion; and after due deliberation

and sufficient cause appearing therefor, it is

       ORDERED that, the Motion is granted; and it is further

       ORDERED that, pursuant to Bankruptcy Rule 9019, the settlement of the Swap

Agreements as provided for in the Settlement Agreement is approved, and within three (3)

business days of this order becoming a final order, each Trust shall pay its respective Settlement

Amount to LBSF and LBDP, as applicable; and it is further

       ORDERED that the Claims shall be disallowed and expunged from the claims-

register and following the payment by the Trusts set forth in the Motion, none of LBDP, LBSF,

LBHI or the Trusts shall have further obligations to one another or any party on account of the

Swap Agreements; and it is further

       ORDERED that upon the payment of the Settlement Amounts, the Swap

Agreement Adversary Proceeding shall be dismissed, with prejudice, against the Swap

Defendants solely to the extent that such Swap Agreement Adversary Proceeding relates to the

Swap Agreements; and it is further

       ORDERED that the holders of notes or certificates issued by the Trusts

(collectively, the "Noteholders and Certificateholders"), are bound by, and are deemed to have

consented to, the terms of this Order; the Court finds no bona fide basis for any claims or actions

against the Plan Administrator, LBSF, LBDP, the Trustees (in such capacity or in their

individual capacities) and their respective legal counsel and/or financial advisors, and the Plan

2

Administrator, LBSF, LBDP, the Trustees (in such capacity or in their individual capacities) and

their respective legal counsel and/or financial advisors shall not have any liability for any claims,

demands, suits, actions or causes of action arising out of the participation in the negotiation and

implementation of this Order; and Noteholders and Certificateholders shall be forever barred,

estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims in

any way related to the matters which are the subject of the Motion or this Order against the Plan

Administrator, LBSF, LBDP, the Trustees in any capacity, or the Trusts; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of the Motion; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all

instruments and documents, and take such other actions, as may be necessary or appropriate to

implement and effectuate this Order; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: _____ __, 2012
       New York, New York


_____
    UNITED STATES BANKRUPTCY JUDGE