1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555 (JMP)

4   - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS, INC., et al.

8

9           Debtors.

10   - - - - - - - - - - - - - - - - - - - - -x

11

12                   U.S. Bankruptcy Court

13                   One Bowling Green

14                   New York, New York

15

16                   July 19, 2012

17                   10:09 AM

18

19

20

21   B E F O R E:

22   HON. JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  Karen

Page 2

1    HEARING re Debtors' One Hundred Fifty-Sixth Omnibus

2    Objection to Claims (No liability Derivatives Claim) [ECF

3    No. 17469]

4

5    HEARING re Debtors' Two Hundred Thirteenth Omnibus Objection

6    to Disallow and Expunge Certain Filed Proofs of Claim [ECF

7    No. 20102]

8

9    HEARING re Debtors' Two Hundred Fourteenth Omnibus Objection

10   to Disallow And Expunge Certain Filed Proofs of Claim [ECF

11   No. 20103]

12

13   HEARING re Debtors' Two Hundred Fifteen Omnibus Objection to

14   Disallow and Expunge Certain Filed Proofs of Claim [ECF No.

15   20104]

16

17   HEARING re Debtors' Two Hundred Sixteenth Omnibus Objection

18   to Disallow and Expunge Certain Filed Proofs of Claim [ECF

19   No. 20105]

20

21   HEARING re Debtors' Three Hundred Sixteenth Omnibus

22   Objection to Claims (Reduce and Allow Claims) [ECF No.

23   28429]

24

25

                                                              Page 3

1      HEARING re Debtors' Forty-Second Omnibus Objection to Claims

2      (Late-Filed Lehman Programs Securities Claims) [ECF No.

3      11307]

4

5      HEARING re Debtors' Forty-Third Omnibus Objection to Claims

6      (Late-Filed Lehman Programs Securities Claims) [ECF No.

7      11308]

8

9      HEARING re Debtors' One Hundred Eighty-Ninth Omnibus

10     Objection to Claims (No liability Repo Claims) [ECF No.

11     19870]

12

13     HEARING re Debtors' Ninety-Seventh Omnibus Objection to

14     Claims (Insufficient Documentation)[ECF No. 14492]

15

16     HEARING re Debtors' One Hundred Twenty-Fifth Omnibus

17     Objection to Claims (Insufficient Documentation)[ECF No.

18     16079]

19

20     HEARING re Debtors' One Hundred Thirty-Eighth Omnibus

21     Objection to Claims (No Liability Derivatives Claims) [ECF

22     No. 16865]

23

24

25

1    HEARING re Debtors' Two Hundred Ninety-Seventh Omnibus

2    Objection to Claims (Invalid or No Blocking Number LPS

3    Claims) [ECF No. 27868]

4

5    HEARING re Debtors' Three Hundred Thirteenth Omnibus

6    Objection to Claims (To Reclassify Proofs of Claim as Equity

7    Interests0 [ECF Nos. 28433, 29279]

8

9    HEARING re Debtors' Three Hundred Fourteenth Omnibus

10   Objection to Claims (Late-Filed Claims) [ECF No. 28435]

11

12   HEARING re Debtors' Objection to Proof of Claim No. 66099

13   Filed by Syncora Guarantee, Inc. [ECF No. 20087]

14

15   HEARING re Debtors' Objection to Proof of Claim No. 58912

16   Filed by Citibank, N.A., London Branch [ECF No. 27862]

17

18   HEARING re Debtors' Objection to Proof of Claim No. 67735

19   Filed by Citigroup Global Markets, Inc. [ECF No. 27863]

20

21

22

23

24

25   Transcribed by:  Sheila Orms

Page 5

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for Debtors

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:   MAURICE HORWITZ, ESQ.

 9         MARK I. BERNSTEIN, ESQ.

10         GARRETT A. FAIL,ESQ.

11

12   CHAPMAN & CUTLER LLP

13        Attorneys for US Bank, N.A.

14        330 Madison Avenue

15        34th Floor

16        New York, NY  10017

17

18   BY:   CRAIG M. PRICE, ESQ.

19

20   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

21        1633 Broadway

22        New York, NY  10019

23

24   BY:   ROSS G. SHANK, ESQ.

25
```

Page 6

1   COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

2          Attorneys for Highland Credit Strategies Master

3             Fund LP

4          900 Third Avenue

5          16th Floor

6          New York, NY  10022

7

8   BY:   KENNETH L. BAUM, ESQ.

9

10

11   ALSO APPEARING TELEPHONICALLY:

12

13   ALBERTO BENSION, PRO SE

14   ANATOLY BUSHLER, FARALLON CAPITAL MANAGEMENT

15   BARRY P. GRUHER, GENOVESE JOBLOVE & BATTISTA, P.C.

16   THOMAS NG, ABN AMRO BANK N.V.

17   MATTHEW RIFINO, MCCARTER & ENGLISH

18   SASKIA VAN ROOY, PRO SE

19

20

21

22

23

24

25

Page 7

```
 1               P R O C E E D I N G S
 2          THE COURT:  Be seated, please.  Good morning.
 3          Two days in a row, Mr. Fail.
 4          MR. FAIL:  I know.  It's like the old days, Your
 5     Honor.
 6          THE COURT:  It is.
 7          MR. FAIL:  Good morning, Your Honor.  For the
 8     record, Garrett Fail, Weil Gotshal and Manges for Lehman
 9     Brothers Holdings, Inc.
10          There are a number of items on the agenda this
11     morning, take them in the order that they appear, the first
12     six are uncontested matters.
13          The first matter that I'll present is the debtor's
14     156th omnibus objection.  We're going forward today with
15     respect to 11 claims of U.S. Bank.  The debtors had objected
16     to disallow these claims in their entirety, their derivative
17     related claims.  U.S. Bank had filed an objection after
18     discussions and negotiations with U.S. Bank.  Lehman
19     Brothers Holdings, Inc. has agreed to allow the claims in a
20     reduced amount, or in the amount of approximately $177,000
21     for 11 claims, that's the aggregate.
22          U.S. Bank is here today and I understand that they
23     consent to this, the relief being requested.
24          THE COURT:  For record purposes, I should hear that
25     consent.
```

Page 8

1          MR. FAIL:  Thank you, Your Honor.

2          THE COURT:  Two days in a row for you, too.

3          MR. PRICE:  That's right.  Good morning, Your

4    Honor, Craig Price from U.S. Bank, National Association as

5    Trustee and we agree to the order.

6          THE COURT:  Okay.  Thank you.  It's approved on

7    consent.

8          MR. FAIL:  Thank you, Your Honor.  Items 2 through

9    5 on the agenda relate to the debtor's 213th, 214th, 215th,

10   and 216th omnibus objections to claims.

11          Your Honor may recall at prior hearings, Your Honor

12   granted these objections that were uncontested on an

13   uncontested basis for approximately 1,587 claims.  There

14   were approximately 145, 146 responses that were filed by

15   certain claimants.  A second hearing was held.  Subsequent

16   to that hearing, in accordance with Your Honor's direction

17   and suggestions, LBHI provided documentation to creditors

18   that we were able to contact by e-mail.

19          As a result of those conversations and providing

20   the documents, we are proceeding this morning with respect

21   to 25 claims on an uncontested basis.  LBHI would like to

22   submit orders, eight claims on the 213th omnibus objection;

23   seven on the 214th; eight on the 215th; and two on the

24   216th, on an uncontested basis.

25          The order would clarify that the claims are not in

Page 9

1   LBHI classes 1 through 10(c) in the plan.  It says that they

2   are either in LBHI Class 11 or LBHI Class 12.  That would be

3   the 510(b) class, Your Honor, or the equity class.  And the

4   rights of the claimants, and the rights of LBHI to argue

5   that the claims fall within one or the other, and the

6   relative priority within those classes are reserved to

7   either be agreed upon between the parties or decided by the

8   Court.

9            In the event that there is a distribution to either

10  of those classes, the debtors project based on the

11  disclosure statement that there will not be distributions to

12  either of those classes.  And therefore, rather than argue

13  today and expend additional resources, the parties have

14  agreed to resolve this consensually.

15           So we would request that Your Honor grant the

16  relief requested on a consensual basis.

17           THE COURT:  The relief is granted on an uncontested

18  basis.

19           MR. FAIL:  Thank you, Your Honor.  The last item,

20  No. 6 on the agenda is the debtor's 316th omnibus objection

21  to claims.  The debtors objected to 17 claims asserting

22  approximately $234 million.  The debtors sought to reduce

23  those claims down to $128 million.  The debtors filed one

24  amendment prior to the hearing to increase the amount of one

25  claim by approximately $747,000.  Subsequent to that, an

1    objection was filed to the motion on a separate claim.  The

2    debtors have reached a resolution with that claimant, and

3    have increased ten claims as a result, by an aggregate of

4    approximately $3 million.

5              The debtors are treating similarly situated

6    creditors similarly.  So we are proceeding today on an

7    uncontested basis, and reducing claims from $234 million to

8    $132 million, a $102 million reduction in claims.

9              THE COURT:  It's approved on an uncontested basis.

10             MR. FAIL:  Thank you, Your Honor.  I'll turn the

11   podium over to Mr. Horwitz for the next item on the agenda.

12             MR. HORWITZ:  Good morning, Your Honor, Maurice

13   Horwitz, Weil Gotshal & Manges, on behalf of Lehman Brothers

14   Holdings, Inc.

15             The first two contested items on today's agenda,

16   Item 7 and 8, are carryovers from the 42nd and 43rd omnibus

17   objections to claims.  These objections sought to disallow

18   claims based on Lehman program securities because they were

19   filed after the bar date, applicable to such claims.  That

20   date was November 2nd, 2009.

21             Your Honor, because these claims are very similar,

22   the responses are almost identical, I would propose to

23   address them together, at least in my remarks right now,

24   unless the Court has any objection to that.

25             THE COURT:  No, that's fine.  You can address them

Page 11

1    at the same time.

2           MR. HORWITZ:   Today LBHI as the plan administrator

3    proceeds as to eight claims, six that were included on the

4    42nd omnibus objection to claims, two that were on the 43rd

5    omnibus objection.   These objections were filed concurrently

6    on September 13th, 2010 under ECF Nos. 11,307 and 11,308,

7    respectively.

8           The claims that we're proceeding on today are

9    listed on Exhibit A of LBHI's reply brief, which was filed

10   on July 17th, 2012, and is ECF No. 29443.

11          Each of these proofs of claim is based on Lehman

12   program securities.   The claims were received by Epiq on

13   November 6th, 2009, which is four days after the applicable

14   bar date.

15          In their responses, the claimants argue that they

16   mailed their proofs of claim on October 21st, 2009.   Prior

17   to the bar date.   However, as LBHI states in its reply, to

18   satisfy the requirements of the bar date, or the bar date

19   order in these cases, claims had to be not just postmarked,

20   but actually received on the applicable bar date.

21          These claims were received after the bar date, and

22   therefore, cannot be deemed timely filed under the terms of

23   the bar date order.

24          None of the claimants has moved pursuant to

25   Bankruptcy Rule 9006(b)(1) for permission to file their

Page 12

1    claims after the bar date, or to deem their claims timely

2    filed, but they have, in their responses, made two

3    assertions that would be relevant to a consideration of

4    whether or not their claims would satisfy the rigorous

5    standard for excusable neglect in the 2nd Circuit.

6          In Pioneer, the U.S. Supreme Court held that the

7    determination of whether neglect is excusable is an

8    equitable one, and the Court should consider four factors in

9    making this determination.  One is the prejudice to the

10   debtors, the second the length of the delay and its

11   potential impact on judicial proceedings.  The third, the

12   reason for the delay, including whether that reason was

13   within the reasonable control of the moving party, and for

14   whether the movant acted in good faith.

15         The 2nd Circuit does not give equal weight to these

16   four factors.  The third factor, the reason for the delay,

17   and whether that delay was within the reasonable control of

18   the claimant is the most critical factor.  And that's

19   because the three other factors will typically weigh in

20   favor of the moving party.

21         In their responses, the claimants state that the

22   delay is not attributable to their mistake or conduct in any

23   way, and is beyond their control.  But the claimants, and

24   only the claimants had control over when they mailed their

25   claims, and what delivery service they used.

Page 13

1           The Court has asked us in the past, and we have

2      asked ourselves when evaluating late claims, what is

3      reasonable conduct on the part of a claimant in order to

4      comply with the bar date and the bar date order.  And we

5      have said that at a minimum, if a claimant chooses a

6      delivery system that publishes certain guidelines for how

7      long it will take for mail to arrive from point A to point

8      B, then the claimant should at least be held responsible for

9      abiding by those guidelines.

10           Here, the Hong Kong Post Office, in its published

11      guidelines expects, but does not guarantee that mail will be

12      delivered from Hong Kong to the United States anywhere

13      between 5 and 16 working days after mailing.

14           So any claimant endeavoring to meet the November

15      2nd deadline for LPS claims, would've needed to mail those

16      claims no later than October 9th or 12th, at the latest, to

17      be able to reasonably rely on the Hong Kong postal system to

18      deliver their claims on time.

19           Other forms of delivery were also available to the

20      claimants.  They could've chosen an overnight delivery

21      service.  Indeed many claimants did elect an overnight

22      delivery service to ensure that their claims were timely

23      filed.  These were choses, they were within the claimant's

24      control, and only the claimant's control.  And the claims

25      were late because the claimants did not elect either to mail

Page 14

1    their claims earlier, or to use a faster delivery service.

2        The claimants have not demonstrated any other reason

3    for delay that was out of their control, and for this

4    reason, the claims should be expunged.

5        The claimants also assert that admitting their claims

6    would not cause any prejudice to the Chapter 11 estates.  We

7    disagree.  As we've said before, in relation to -- with

8    respect to other claims, and as this Court has noted,

9    prejudice can't be traced to just one claim.  These -- this

10   is the proverbial floodgates argument, the floodgates would

11   open up, if one claim is permitted to slip through, and

12   indeed, there are still many late claims that the debtors or

13   the plan administrator have previously objected to.

14        Together with the eight claims before the Court

15   today, the plan administrator is working through the

16   responses, to pending objections with respect to

17   approximately 130 late claims.  The aggregate asserted

18   amount of those claims is approximately $223 million.  That

19   is still a significant number, even in these cases, both of

20   claims, and a significant dollar amount.

21        There are also late claims that the plan

22   administrator hasn't yet identified to which the plan

23   administrator might still file objections.  And we haven't

24   quantified how many of those are yet, in these days, it's

25   difficult to just search by filing date, because we have

Page 15

1   rejection damaged claims and amended claims.

2          But allowing one late claim, Your Honor, even if

3   that claim is just a $100,000 claim, could still set a

4   precedent for the remaining claims.  More generally, when

5   considering prejudice, each late claim can't be considered

6   an isolation.  The debtors, and now the plan administrator

7   have objected to more than 1,740 claims on the grounds that

8   those claims were untimely filed.

9          More than 1,350 of those claims have been expunged

10  because of this Court's strict enforcement of the bar date

11  in these cases.  It simply would not be fair to creditors

12  whose claims have already been expunged, to treat these

13  claims any differently than those 1,350 other claims, merely

14  because the hearing on these claims is taking place today,

15  as opposed to a year ago or two years ago.

16         As this Court has recognized, the strict

17  enforcement of the bar date in these cases is critical, it

18  was critical for the debtors in formulating their plan.  It

19  has been also critical for the debtors in maintaining a fair

20  and efficient claims process.  The claimants have not borne

21  their burden for establishing excusable neglect.  Their

22  claims were late for reasons that were within their control

23  and should be expunged.

24         Accordingly, LBHI as the plan administrator,

25  respectfully requests that the 42nd and 43rd omnibus

Page 16

1   objections to claims be granted with respect to the claims

2   listed on Exhibit A of LBHI's reply.

3          THE COURT:  Thank you for that thoughtful and

4   thorough argument.  I'm going to ask if there's anyone here

5   in court or on the telephone who wishes to speak in

6   opposition to this omnibus objection?

7          There's no response.

8          That makes it much easier for me to not only

9   compliment you on your argument, but to conclude that there

10  is no one currently prosecuting any opposition to the

11  debtor's position with respect to these late claims from

12  Hong Kong.

13         I will note that I have spent quite a lot of time

14  thinking about what the right answer should be to the

15  question of whether it is ever truly safe to send a proof of

16  claim in an international insolvency case such as this by

17  means of the ordinary First Class mail offered by the

18  foreign jurisdiction, where the claimant happens to reside.

19         In part because these claims fall within the

20  permitted zone for the foreseeable delivery of mail from

21  Hong Kong to the United States, the situation presented

22  today is somewhat more difficult than the situation

23  presented last June, June of 2011, where we dealt with, I

24  think it was five business days, as opposed to today's seven

25  business days.

1        But in effect, the operative date can't be the rang

2   established by the local postal service for foreseeable

3   delivery, but instead has to be reasonable behavior on the

4   part of the claimant himself, herself, or itself.

5        Presumably, when dealing with something as

6   significant as a claim based upon a Lehman program security,

7   a claimant would take reasonable steps to assure delivery

8   prior to applicable bar date.  Those steps, I would agree,

9   include mailing sufficiently in advance of the bar date that

10  the delivery is effectively derisked.  That would mean

11  sending the proof of claim not less than 16 working days

12  prior to the bar date.  And even then, there is some element

13  of what I have previously called proof of claim roulette, as

14  whether the proof of claim effectively will be delivered by

15  the bar date.

16       In a case, if one were presented, where someone had

17  mailed from Hong Kong a proof of claim for the sake of

18  discussion, 17 working days prior to the bar date, and the

19  proof of claim were delivered subsequent to the November 2,

20  2009 bar date, that is probably a distinguishable fact

21  pattern.  Because there, the claimant will have done

22  everything that a reasonable person could have done in

23  relying upon the mail service to deliver the proof of claim

24  in time.  To rule otherwise, would require every claimant to

25  use an overnight delivery service.  I don't think that

Page 18

1    should be the applicable procedural rule that applies.

2           Under the circumstances, and consistent with prior

3    rulings of the Court, that have strictly enforced the bar

4    date in these cases, I grant the debtor's/plan

5    administrator's objection to these proofs of claim as late

6    filed.

7           MR. HORWITZ:  Thank you, Your Honor.  I'll turn the

8    podium over to my colleague, Mark Bernstein for the next

9    item.

10          MR. BERNSTEIN:  Good morning, Your Honor, Mark

11   Bernstein from Weil on behalf of the debtors.  That

12   concludes the agenda for now.  The remaining item, I believe

13   we even informed, we'll go forward at noon today.

14          THE COURT:  Right.  I'm told that counsel in Item

15   No. 9 for Highland Credit Strategies Master Fund is delayed

16   on account of car trouble.  I'm not sure what that car

17   trouble is, but we'll find out at noon.  And we're adjourned

18   until then.

19          MR. BERNSTEIN:  All right.  Thank you.

20          THE COURT:  Thank you.

21          (Recessed at 10:18 a.m.; reconvened at 12:04 p.m.)

22          THE COURT:  Be seated, please.

23          MR. BAUM:  Good afternoon, Your Honor.

24          THE COURT:  The first thing I want to do is what

25   happened to the car.

```
 1              MR. BAUM:  Your Honor, as I was saying to Mr.

 2    Bernstein, and we both, I think, will agree that we're

 3    better lawyers than mechanics.  You know, these days I guess

 4    everything works off computers, and if something in the

 5    computer snags, it causes -- in this case, it caused a

 6    problem with the transmission, which then causes cylinders

 7    to misfire, and the car it's an absolute mess.  But I do

 8    want to thank Your Honor and Mr. Bernstein as well for being

 9    able to accommodate me at noon.

10              THE COURT:  It's not a problem.  Off the record,

11    we'll find out what kind of car this is.

12              MR. BAUM:  Off the record, it's a company that's

13    been through this court.

14              THE COURT:  Okay.  Well, that -- that suggests it's

15    an American car.  We won't identify it further.

16              MR. BERNSTEIN:  We'll leave it at that.

17              Your Honor, so the last item on this morning's

18    agenda was the debtor's 189th omnibus objection to the claim

19    of Highland Credit Strategies Master Fund.

20              This matter was initially heard at the March 2012

21    claims hearing, at which time Your Honor and opposing

22    counsel requested further information and evidence regarding

23    this matter.

24              Just to give you a little background, this is based

25    on Claim 3136 filed by Highland in the amount of $327,000
```

Page 20

1    approximately.  The claim is based on a master repurchase

2    agreement that Highland entered into with both Lehman

3    Brothers, Inc. and Lehman Commercial Paper, Inc.

4         The master purchase agreement provides that

5    specific transactions under the purchase agreement will be

6    documented on confirmations, and that only the party to --

7    the Lehman party identified in that specific confirmation

8    will be liable for that transaction.  The -- as is set forth

9    in Annex 1, which states that with respect to individual

10   purchase transactions, this agreement shall only apply to

11   the Lehman Brothers entity, i.e., Lehman Brothers, Inc.,

12   Lehman Brothers Commercial Paper, Inc. printed on the

13   confirmation, provided to the counterparty of the Lehman

14   Brothers entity.

15        As a result of this provision, to the extent LBI is

16   party to a confirmation, Lehman Commercial Paper, Inc. is

17   not responsible or obligated at all under that specific

18   transaction.  Highland does not dispute that these are the

19   terms of the repurchase agreement.

20        The issue here arises based on the fact that the

21   confirmation at issue states at the top the words "infinity

22   *** Lehman Brothers Global Trading and Finance ***" and then

23   "infinity" again.

24        At the last hearing, Highland argued that the trade

25   confirmation identified Lehman Brothers Global Trading and

Page 21

1    Finance as the Lehman party to the transaction, which they

2    argue without a scintilla of evidence was a trade name for

3    LCPI.

4           Lehman argued at the last hearing that its books

5    and records indicated that this trade was included on the

6    books and records of Lehman Brothers, Inc., not Lehman

7    Commercial Paper, Inc., and there was no indication at all

8    in Lehman's records that Lehman Brothers Global Trading and

9    Finance was a business name for LCPI.

10          At the time, Highland and Your Honor requested some

11   further information from Lehman as to what this entity

12   really was, whether it was even an entity.  And a sworn

13   statement from Lehman indicating what their investigation

14   had found.

15          Lehman conducted some diligence on this issue and

16   filed the declaration of Thomas Rogers, an employee -- a

17   former employee of LBI prior to bankruptcy cases, and a

18   current Lamco employee.

19          Your Honor also inquired whether Highland had also

20   filed the claim against Lehman Brothers, Inc. and was

21   seeking to collect in that proceeding as well, and Highland

22   has informed the debtors that they have, in fact, filed a

23   claim against LBI and are still pursuing that claim.

24          At the last hearing, there were two creditors

25   taking the same position, Highland was one of them, and

Page 22

1    Marquette Financial Companies was also making the same

2    arguments as Highland.  Based on the -- Mr. Rogers'

3    declaration, Marquette agreed that there was sufficient

4    evidence that the trade was with LBI, had agreed to not

5    prosecute their response, and allowed their claim against

6    LCPI to be expunged.

7         Mr. Rogers' declaration explains that the

8    confirmations indicate that the trades were actually with

9    LBI.  He describes that the confirmation identifies the

10   parties to the transaction as Highland on one hand, and with

11   respect to Lehman, it says company ledger, and then

12   identifies G4SK.  I'm sorry, that's -- I apologize, that is

13   the Marquette confirmation.  It identifies G422.

14        Mr. Rogers' declaration attaches Lehman's list of

15   company identifiers, which clearly show that G applies to

16   LBI, and the 422, Mr. Rogers describes, relates to a

17   specific trader or trading book at Lehman, which allowed

18   them to track the trades and determine how certain books

19   were performing.  And Mr. Rogers' declaration attaches

20   certain screenshots which identify the specific traders and

21   trading book to which the numbers 422 relate.

22        Those screenshots also indicate that this trading

23   book rolls into LBI, and as a result, this trade -- the

24   confirmation, the G422 on the confirmation identifies that

25   this trade is with LBI.

1          Mr. Rogers also indicated that he's not aware,

2     after a search, of any entity named Lehman Brothers Global

3     Trading and Finance, and certainly does not believe it is a

4     trade name for Lehman Commercial Paper, Inc.  And that the

5     words at the top of the confirmation, the infinity and

6     asterisks identify the Lehman system of which this

7     confirmation was printed.  Infinity is the name of a

8     computer system, and Global Trading and Finance just

9     indicates that this is part of Lehman's financing business.

10    Just really the area of Lehman, not necessarily any kind of

11    entity assertion in that name.

12         Mr. Rogers is here today in the courtroom and is

13    available to answer any questions that Your Honor may have

14    about his declaration or that opposing counsel may have.

15         At this point, the debtors have rebutted the key

16    assertions in Highland's claim, and as a result, as the law

17    in this jurisdiction dictates, that Highland has the burden

18    to establish its claim by a preponderance of the evidence.

19    Highland has not provided one scintilla of evidence that

20    this trade is with LCPI.  Highland is also seeking to

21    collect from LBI.  They simply cannot be allowed or be

22    authorized to collect from two debtors on one trade.

23    There's no basis for asserting that the parties are joined

24    several.  The contracts make clear, that only one party is

25    responsible, and that's the party indicated on the

Page 24

 1    confirmation.

 2             Based on these arguments, and the arguments in our

 3    papers, it's Lehman's position that this claim should be

 4    disallowed and expunged.

 5             THE COURT:  Okay.  Thank you.

 6             MR. BAUM:  Your Honor, in looking at the Rogers'

 7    declaration, we see that Exhibit A is a very lengthy list of

 8    what appear to be numerous, perhaps hundreds of entities

 9    within the entire Lehman umbrella, and it does list in there

10    G Lehman Brothers, Inc., and includes a copy of the

11    transaction confirmation we've been examining in this

12    matter.

13             THE COURT:  Why isn't that the end of this issue

14    and why don't you just go LBI and leave it at that?

15             MR. BAUM:  Your Honor, the problem is, the

16    transaction confirmation is not evidence of how the

17    transaction was actually booked within the Lehman entity's

18    internal records.  There's no actual sales ledger here per

19    se.  There's what purports to be a confirmation of a

20    transaction, but there's nothing to show whose books this

21    transaction was actually recorded on.

22             THE COURT:  But it's the confirmation that

23    controls.

24             MR. BAUM:  I'm sorry, Your Honor?

25             THE COURT:  It is the confirmation that controls.

Page 25

1              MR. BAUM:  Right.  And our position remains there's

2      a designation here of G422, which, you know, in terms of our

3      party, our side to the transaction, completely unknown to

4      us, it has this remaining archaic reference to Lehman

5      Brothers Global Trading & Finance, we still don't know who

6      that is.

7              What I can tell Your Honor is that in our proof of

8      claim, Exhibits B and C were a September 26th, 2008 default

9      notice that was addressed to both LBI and LCPI.  There was

10     an October 2008 calculation statement of damages, again

11     addressed both to LBI and LCPI.  Our client, to this day,

12     still doesn't know who the transaction was actually booked

13     and completed with.

14             Our position, Your Honor, is that this reference to

15     Lehman Brothers Global Trading & Finance, as well as any

16     evidence of how the transaction or where -- whose ledger it

17     was actually booked in, creates a conflict.  And under the

18     master repo agreement, if there's a conflict between the

19     transaction confirmation, and the master repo agreement, the

20     master agreement prevails.

21             The master agreement clearly shows that on the one

22     hand Highland was a party to it, and on the other hand, LBI

23     and LCPI are parties to it.  So in the absence of any

24     evidence that can really clear this up, and we believe the

25     burden is on Lehman, the debtors here to clarify that,

Page 26

1    there's an irreconcilable conflict that under the master

2    repo agreement, would leave both debtors.

3           Now, we're not looking to get a double recovery, of

4    course, and we did file a what you call a back stop claim

5    against the LBI estate, these exact same amount, exact same

6    documents, it's identical.  But in the absence of any

7    ability to reconcile that conflict, we believe the claim is

8    properly against both the LBI and the LCPI estate.

9           THE COURT:  Tell me what you mean by an

10   irreconcilable conflict.

11          MR. BAUM:  Once again, Your Honor --

12          THE COURT:  We have a confirmation that is, on its

13   face, with neither LBI nor LCPI.

14          MR. BAUM:  Correct.

15          THE COURT:  It's with Lehman Brothers Global

16   Trading & Finance, an apparent descriptive term, rather than

17   an identification of an entity.  And we have evidence

18   through the Rogers' declaration indicating that the entity

19   identifiers are all LBI, as opposed to LCPI, which would

20   suggest to an observer, who in this case, happens to be

21   wearing a robe, that there is no irreconcilable conflict,

22   but in fact, that one can read the documents to describe LBI

23   as the counterparty, even though the name LBI does not

24   appear at the top of the confirmation, simply because of the

25   reference to G422.

1            MR. BAUM:  Yeah.  I guess the concern, Your Honor,

2    continues to be the G422.  And again, this is not the actual

3    ledger, this is the transaction confirmation.  I mean, it

4    makes reference to some ledger being out there, but we don't

5    have the ledger in front of us.

6            THE COURT:  Have you questioned during the interval

7    between the first listing of this matter and today's hearing

8    any ledger documents that might help scratch this itch?

9            MR. BAUM:  We had not, Your Honor.  I believe it

10   was Your Honor's desire that once the declaration was given,

11   that we not engage rather in any kind of formal or even

12   informal, but rather -- discovery, but rather see where we

13   are once a declaration had been --

14           THE COURT:  Well, what I was hoping candidly, was

15   that parties acting reasonably would be able to draw

16   reasonable conclusions on their own and if this needed to be

17   litigated, we would, but that presumably the facts are what

18   they are.  The interpretation of the facts may vary, but the

19   facts are hard to rebut.

20           MR. BAUM:  Again, Your Honor, we really revert back

21   to the G422.  To Highland, it really means nothing, it

22   could've been called the red, white, and blue, and while it

23   may have an internal reference to Lehman, to one of these

24   Lehman entities, it's never been referenced anywhere else.

25   It's not in the master repo agreement, and again, our client

Page 28

1    -- as far as our client was concerned, they were dealing

2    with both entities here.  Every default notice, every

3    calculation statement was addressed to both Lehman entities,

4    so.

5         THE COURT:  Well, I understand that from Highland's

6    perspective taking the more is more approach, rather than

7    the less is more approach, you put both of the counterparty

8    names on the master agreement and all of your notices, but

9    that isn't determinative of anything other than well,

10   somebody's responsible, so we'll put both names out there.

11        Now, that you know that there is extrinsic evidence

12   that supports a conclusion that the trade was actually with

13   LBI, and you have a protective claim against LBI anyway,

14   what basis do you have other than the desire to be obstinate

15   to continue to pursue this at the LCPI level, when there's

16   no evidence to support LCPI is responsible for the trade,

17   since there's nothing to connect LCPI to the trade

18   confirmation?

19        MR. BAUM:  Understood, Your Honor.  Again -- and

20   you're right, we don't have affirmative evidence to show

21   that LCPI was the party here.  Our position remained that we

22   don't believe we've been given evidence definitively of who

23   this was, who it was actually booked to, any kind of actual

24   sales or other similar ledger.  So that in the absence of

25   any clear evidence on that point, in our minds, it creates a

Page 29

1    conflict.  And that under the -- I mean, clearly the master

2    repo agreement had to contemplate there might be a situation

3    and where there will be a conflict between a transaction

4    confirmation and the master agreement, because otherwise it

5    wouldn't have stated so I made that provision.

6           We believe this is a case that fits in there, and

7    in the event of the conflict, you revert to the terms of the

8    repo agreement.

9           THE COURT:  Well, I think I'm having some trouble

10   concluding that there is, in fact, the conflict that you

11   have identified.  Because while it's true that Lehman

12   Brothers Global Trading and Finance is the name that appears

13   on the trade confirmation, there is nothing to link that

14   name to LCPI.  And since there's nothing to link it to LCPI,

15   the most rational conclusion to draw is that it is linked

16   instead to LBI, because of the identity coding that I've

17   referenced in looking at the Rogers' declaration, the same

18   information that you've looked at.

19          So that one can identify the fact that there is a

20   distracting different name on the trade confirmation, but

21   resolved that distraction and clarify it by simply referring

22   to the coding, which is supported by the declaration.  When

23   one does that, there's no reconcilable conflict, and a

24   finder of fact can conclude, based upon the trade

25   confirmation, and not having to refer to books and records,

Page 30

1   that the trade confirmation appropriately confirms a trade

2   with LBI.  And that's what I so conclude now.

3          So your objection to the disallowance is overruled

4   and you have your rights against LBI.

5          Now, if there's nothing more, we're adjourned.

6          MR. BERNSTEIN:  There's nothing more.  Thank you,

7   Your Honor.

8          MR. BAUM:  Thank you again for accommodating at

9   noon, Your Honor.

10          THE COURT:  Good luck with your car.

11          MR. BAUM:  Thank you very much.

12   (Whereupon, the proceedings concluded at 12:21 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1                           R U L I N G S

2

3       DESCRIPTION                                    PAGE     LINE

4

5       Debtors' One Hundred Fifty-Sixth

6       Omnibus Objection to Claims- approved          8          6

7

8       Debtors' Two Hundred Thirteenth

9       Omnibus Objection to Disallow

10      and Expunge Certain Filed

11      Proofs of Claim - approved                     9          17

12

13      Debtors' Two Hundred Fourteenth

14      Omnibus Objection to Disallow

15      And Expunge Certain Filed Proofs

16      of Claim - approved                            9          17

17

18      Debtors' Two Hundred Fifteen

19      Omnibus Objection to Disallow

20      and Expunge Certain Filed Proofs

21      of Claim - approved                            9          17

22

23

24

25

Page 32

| | DESCRIPTION | PAGE | LINE |
|---|---|---|---|
| 1 | | | |
| 2 | DESCRIPTION | PAGE | LINE |
| 3 | | | |
| 4 | Debtors' Two Hundred Sixteenth | | |
| 5 | Omnibus Objection to Disallow | | |
| 6 | and Expunge Certain Filed Proofs | | |
| 7 | of Claim - approved | 9 | 17 |
| 8 | | | |
| 9 | Debtors' Three Hundred Sixteenth | | |
| 10 | Omnibus Objection to Claims | | |
| 11 | (Reduce and Allow Claims)-approved | 10 | 9 |
| 12 | | | |
| 13 | Debtors' Forty-Second Omnibus | | |
| 14 | Objection to Claims (Late-Filed | | |
| 15 | Lehman Programs Securities Claims) | | |
| 16 | - granted | 18 | 4 |
| 17 | | | |
| 18 | Debtors' Forty-Third Omnibus | | |
| 19 | Objection to Claims (Late-Filed | | |
| 20 | Lehman Programs Securities Claims) | | |
| 21 | - granted | 18 | 4 |
| 22 | | | |
| 23 | Debtors' One Hundred Eighty-Ninth | | |
| 24 | Omnibus Objection to Claims | | |
| 25 | (No liability Repo Claims)-overruled | 30 | 3 |

Page 33

1                C E R T I F I C A T I O N

2

   I, Sheila G. Orms, certify that the foregoing is a correct

3  transcript from the official electronic sound recording of

4  the proceedings in the above-entitled matter.

5

6  Dated:  July 20, 2012

7  Sheila            Digitally signed by Sheila Orms
                     DN: cn=Sheila Orms, o, ou,
                     email=digital1@veritext.com,
8  Orms              c=US
                     Date: 2012.07.20 18:05:29 -04'00'
9  Signature of Approved Transcriber

10

11

   Veritext

12

   200 Old Country Road

13

   Suite 580

14

   Mineola, NY 11501

15

16

17

18

19

20

21

22

23

24

25