UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re                                                         :   Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,                        :   08-13555 (JMP)
                                                              :
                                        Debtors.              :   (Jointly Administered)
                                                              :
------------------------------------------------------------- x

### AFFIRMATION OF CLAIMANT LAWRENCE E. MCCARTHY IN OPPOSITION TO DEBTORS' 319th OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS) DATED JUNE 15, 2012

Lawrence E. McCarthy affirms under penalties of perjury as follows:

1. I submit this Affirmation in support of and to join in Opposition of Tal Lev Ari, Julian Iragorri and Jack Rivkin dated July 16, 2012 in Opposition to Debtors' 319th Omnibus Objection (to Reclassify Proofs of Claim as Equity Interests).

2. I was employed by Lehman Brothers from before 2003 until May 2007, when I retired from the company.

3. For each year between 2003 and 2006 Lehman Brothers issued to me an "RSU Agreement", which documented that a portion of my compensation was withheld for payment in the future. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. *See, e.g.*, Debtors' Omnibus Reply to Responses to Debtors' 118th, 130th, 131st, 133d, 134th, 135th, 176th & 207th Omnibus Objections, Dec. 15, 2011, at pp. 65-68 (RSU Agreement for 2004).

4.   After my entry into the RSU Agreements, including after my retirement from Lehman Brothers, I continued to perform all of those contractual obligations.

5.   Attached hereto as Exhibit 1 is the amended Proof of Claim that I filed in connection with my contract rights under the RSU Agreements, which was assigned Claim No. 66392. I added the attached Schedule A describing my claim for deferred compensation under the RSU Agreements. The amount I claimed in my Proof of Claim was the amount withheld from my compensation and accrued for deferred compensation in 2006. Debtors acknowledged receipt of the proof of claim, as shown in Exhibit 1.

6.   The practice followed each year by Lehman Brothers was to provide a form stating the bonus to which I was entitled for the year, and describing the portion of the bonus that was to be reserved by Lehman Brothers pursuant to the RSU Agreement for that year.

7.   I never paid tax on the portion of any bonus reserved under the RSU Agreements. For prior years, not at issue here, after my interests vested and I was permitted to draw down on my RSU account, Lehman Brothers would retain a portion in cash to pay the federal withholding tax, and then would use the balance to provide me with Lehman Brothers shares. The entire amount of the bonus was treated as ordinary income to me at that time and was taxed at ordinary income rates. My understanding is that Lehman Brothers was entitled to a business expense deduction for the amount of this portion of the bonus, but only at the time that it was actually paid.

8.   The economic substance of the 2006 RSU Agreement to me was that a portion of the bonus that had been declared for me was held back, and would be paid to me only after passage of five years, during which I was subject to ongoing contractual obligations. At no time did Lehman suggest that I had ever failed to perform any of these contractual obligations, the breach of which could result in rescission of my bonus. However, under the terms of the RSU

2

Agreement for 2006, Lehman Brothers was not required to pay me anything from this reserved bonus until five years after we entered into that RSU Agreement, and in fact Lehman Brothers did not pay me anything. During this entire time my right to draw down on the shares remained contingent on my continued performance of contract obligations.

9. Stock options issued to me by Lehman Brothers did not work in this way. Upon the grant, I received a security in the form of the stock option. The option provided me with the right to buy LBH shares at a fixed price, the exercise price. While a period of time passed before the option vested, upon vesting I could exercise the option by paying the exercise price, and I would receive LBH shares. No comparable security was issued to me under the RSU Agreement.

10. I did not pay tax on the option when granted, which I understand is due to a special provision of the Internal Revenue Code governing the taxation of options. Upon exercise of the option I was taxed on the difference between the current market price of the LBH shares at the time of exercise and the exercise price.

Affirmed under penalties of perjury on this 31 day of July, 2012.

Lawrence E. McCarthy

3

# EXHIBIT 1

# PROOF OF CLAIM

| United States Bankruptcy Court/Southern District of New York |
|---|
| Lehman Brothers Holdings Claims Processing Center |
| c/o Epiq Bankruptcy Solutions, LLC |
| FDR Station, P.O. Box 5076 |
| New York, NY 10150-5076 |

| In Re: | Chapter 11 | Filed: USBC - Southern District of New York |
|---|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) | Lehman Brothers Holdings Inc., Et Al. 08-13555 (JMP)  0000066392 |

**Name of Debtor Against Which Claim is Held:** Lehman Brothers Hld In

**Case No. of Debtor:**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Lawrence E McCarthy
4741 Garden Point Trl
Wellington, Fl 33414

Telephone number: 561-389-1610   Email Address: lmjunkza@gmail.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

**Name and address where payment should be sent** (if different from above)

SAME

Telephone number: _____   Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 4,500,083.35

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2. Basis for Claim:** See Schedule A - update on claim
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ See Sched A
(See instruction #6 on reverse side.)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

**7. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**Date:** 3-10-10

**Signature:** Lawrence E McCarthy

The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

FOR COURT USE ONLY

FILED / RECEIVED
MAR 1 5 2010
EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC. | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtor | ) | |
| | ) | |

SCHEDULE A TO PROOF OF CLAIM OF
*Lawrence E McCarthy*

1.  This Schedule to the proof of claim of *Lawrence E McCarthy* ("Claimant") shall be deemed a part of, and incorporated by reference in, the attached proof of claim (together with this Schedule, the "Proof of Claim") filed by Claimant. The Proof of Claim arises out of (a) deferred compensation promised to Claimant for fiscal years 2005, 2006, and 2007 in connection with the Lehman Brothers Holdings Inc. ("LBHI" or "Debtor") Stock Incentive Plan ("Plan") and (b) indemnity obligations that may arise out of Claimant's performance of its duties for LBHI and any of its subsidiaries.

I. **DEFERRED COMPENSATION CLAIMS**

2.  As part of his annual compensation for fiscal years 2005, 2006, and 2007, Claimant was granted deferred compensation in the form of restricted stock units as part of the Plan. The grant date value of the deferred compensation was established by LBHI and is currently in its possession.

3.  Unlike fiscal years prior to 2005, the Plan for fiscal years 2005, 2006, and 2007 does not contain a provision treating LBHI's failure to honor its obligations under the Plan as claims arising from the purchase or sale of common stock within the meaning of section 510(b) of the Bankruptcy Code. Therefore, Claimant is entitled to a damage claim for LBHI's

breach of its obligations under the Plan in an amount equal to the grant date value of the deferred compensation, which claim should be treated as an unsecured, non-subordinated claim against LBHI.

## II. INDEMNITY CLAIMS

4.  To the extent that (a) Claimant is treated as an officer or director of LBHI or any of its subsidiaries and (b) claims are asserted against Claimant in connection with the performance of Claimant's duties in such capacity, Claimant is entitled to indemnification by LBHI and its subsidiaries. To the extent that any such claims are arise post-petition, Claimant asserts an administrative claim for such indemnification.

5.  No such claims have been asserted against Claimant as of the date hereof.

## III. RESERVATION OF RIGHTS

6.  In filing this Proof of Claim, Claimant expressly reserves all of its rights and causes of action, including, without limitation, contingent or unliquidated rights that it may have against the Debtor. The description of the claims and the classification thereof herein by Claimant is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Claimant. Furthermore, Claimant expressly reserves all rights to amend, clarify, modify and/or supplement the Proof of Claim at any time and for any reason, in any respect, including, without limitation to: (a) correct, increase or amend the amounts referred to herein; (b) add or amend documents and other information, or to describe further, the claims asserted herein; (c) file proofs of claim that may be duplicative in respect of the relevant and applicable documents or any other indebtedness, obligations or liability of any of the Debtors to Claimant; (d) add or include any other Debtor or any other entity, including but not limited to any entity which may become a debtor or debtor in possession in the Debtor's

jointly administered chapter 11 case(s) and add or amend categories of payments or liabilities; (e) assert a further priority, security interest or similar right with respect to the claims asserted herein; (f) file an amended proof of claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein; (g) file additional proofs of claim for additional claims, including, without limitation, claims for interest, fees and related expenses that are not ascertainable at this time, or to file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507, including, without limitation, for expenses included in this Proof of Claim; or (h) file additional proofs of claim or requests for payment with respect to any other indebtedness, liability or obligations whatsoever of the Debtor to Claimant.

       7.      In executing and filing this Proof of Claim, Claimant does not submit itself to the jurisdiction of the Bankruptcy Court for any purpose other than with respect to this Proof of Claim against the Debtor and does not waive or release: (a) its rights, claims, defenses and remedies, whether under applicable law, the relevant and applicable documents, or otherwise, against the Debtor or any other person or entity that may be liable for all or part of the claims set forth herein, whether an affiliate or subsidiary of the Debtor, an assignee, guarantor, or otherwise, including any rights that Claimant may have with respect to any property held by any Debtor or other entity in an actual, constructive, or other trust or similar relationship for the benefit of Claimant; (b) any obligation owed to it, or any right to any security in connection with the claims; (c) any past, present or future defaults (or events of default) by the Debtor or others in connection with the relevant and applicable documents or otherwise; or (d) any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor.

8.  Nothing contained in the Proof of Claim nor subsequent appearance, pleading, claim or suit is intended to be: (a) a consent to a jury trial in the Bankruptcy Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. § 157(e) or otherwise; (b) an election of remedies or limitation of rights or remedies; or (c) an admission that any property received by Claimant under the relevant and applicable documents or held by the Debtor or other entity constitutes property of any Debtor's estate.

9.  Nothing contained in the Proof of Claim nor subsequent appearance, pleading, claim or suit is intended to be a waiver or release of: (a) the right of Claimant to have final orders in non-core matters entered only after *de novo* review by a district court judge; (b) the right of Claimant to a jury trial in any proceeding so triable herein or, in any case, any controversy or proceeding related hereto, notwithstanding any designation of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution; (c) the right of Claimant to seek to have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal, or otherwise to challenge the jurisdiction of the Bankruptcy Court, with respect to the subject matter of this Proof of Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Claimant, or to assert that the reference has already been withdrawn with respect to the subject matter of this Proof of Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Claimant; (d) the right of Claimant to have any unliquidated portions of its Proof of Claim determined by applicable state courts; or (e) any ownership, lien, or other property rights, any rights to setoff, recoupment, or counterclaim, or any other right, rights of action, causes of action, claims, or defenses, whether

existing now or hereinafter arising to which Claimant is or may be entitled under agreements, documents, or instruments, in law or equity, against the Debtor or any other person or persons (including any affiliate of the Debtor).

10.     Nothing herein shall be deemed to waive, estop or derogate from any rights of Claimant, including, without limitation, Claimant's rights under the relevant and applicable documents, or otherwise. The Proof of Claim also is without prejudice to any and all of Claimant's rights, claims and defenses in conjunction with the relevant and applicable documents, the Bankruptcy Code, and otherwise, including, but not limited to the right to vote on any plan(s) in the Debtor's chapter 11 case(s).

11.     Claimant expressly reserves all procedural and substantive rights, claims and defenses with respect to any claim that has been or may be asserted against Claimant by the Debtor, any trustee for its estate, any other party in interest in the chapter 11 case(s), or any other person or entity whatsoever.

Lawrence E McCarthy   Schedule # 555192670

Grant Date     FMV on Grant Date     Total Claim $4,500,083.35

12-8-2006     77.03

58419.88 RSU

RSU Outstanding on Sept 12 2008

# LEHMAN BROTHERS
## Executive Compensation Summary
### LAWRENCE EDWARD MCCARTHY

### EQUITY AWARDS

| Grant Date | Plan | Shares Granted | Number of Shares | Status | Share Payment Date |
|---|---|---|---|---|---|
| December 10, 2003 | MD Award | 60,036.76 | 21,012.86 | Vested | May 31, 2008 |
|  |  |  | 31,819.48 | Unvested | May 31, 2008 |
|  |  |  | 7,204.42 | Not Entitled | N/A |
| December 9, 2004 | MD Award | 93,240.10 | 76,456.88 | Unvested | May 31, 2008 |
|  |  |  | 16,783.22 | Not Entitled | N/A |
| November 30, 2005 | MD Award | 29,478.46 | 22,403.62 | Unvested | May 31, 2008 |
|  |  |  | 7,074.84 | Not Entitled | N/A |
| December 8, 2006 | MD Award | 83,456.97 | 58,419.88 | Unvested | November 30, 2011 |
|  |  |  | 25,037.09 | Not Entitled | N/A |
|  | Dividend Reinvestment | 3,465.89 | 524.07 | Vested | May 31, 2008 |
|  |  |  | 2,374.19 | Unvested | Various |
|  |  |  | 567.63 | Not Entitled | N/A |
|  | **Total Shares Granted:** |  | 269,678.18 |  |  |
|  | **Total Shares Not Entitled:** |  | 56,667.20 |  |  |
|  | **Total Shares Outstanding:** |  | 213,010.98 |  |  |

**2003 - 2005 MD Award:** Shares of common stock, which represent the principal portion (70% of your award) and a pro-rata portion of the discount (based on the number of full years of service you complete after the grant date), will be issued to you at the end of the fiscal quarter one year following your separation date, provided you do not engage in Detrimental Activity through the share payment date.

**2006 MD Award:** Shares of common stock, which represent the principal portion (70% of your award), will be issued to you on the fifth anniversary of the grant date, provided you do not engage in Detrimental Activity through the share payment date. Per the provisions of the program, you are not entitled to receive the discount portion (30% of your award).

**Dividend Reinvestment:** Until your RSUs convert to common stock, if dividends are declared, you will receive dividend equivalents. Your dividend equivalents will be automatically reinvested as additional RSUs. The RSUs you receive as dividend equivalents will be subject to the same conditions as the underlying RSUs to which they relate. In the event the underlying RSUs are forfeited, the related dividend reinvested RSUs will also be forfeited.

### STOCK OPTIONS

| Grant Date | Plan | Exercise Price | Options Outstanding | Options Entitled | Options Not Entitled | Expiration Date |
|---|---|---|---|---|---|---|
| December 10, 2003 | MD Options | $35.6950 | 33,418 | 33,418 | 0 | November 30, 2008 |
|  | **Total Options:** |  | 33,418 | 33,418 | 0 |  |

**MD Options:** Options become exercisable as of your separation date and remain exercisable for approximately five years after the grant date, provided you do not engage in Detrimental Activity during this period.

*Disposition of shares assumes an involuntary separation without Cause on May 09, 2007.*

NOTE: ALL TERMS AND CONDITIONS OF THE AWARDS ARE SUBJECT TO THE APPLICABLE CONTROLLING PLAN DOCUMENTS, INCLUDING BUT NOT LIMITED TO YOUR RESTRICTED STOCK UNIT AWARD AGREEMENT, THE STOCK OPTION AWARD AGREEMENT, THE EMPLOYEE INCENTIVE PLAN, THE EMPLOYEE INCENTIVE PLAN PROSPECTUS, THE 2005 STOCK INCENTIVE PLAN, AND THE 2005 STOCK INCENTIVE PLAN PROSPECTUS.

Prepared on May 08, 2007


