Objection Deadline: August 9, 2012 at 4:00 p.m. (Prevailing Eastern Time)[1]
Hearing Date and Time: August 23, 2012 at 10:00 a.m. (Prevailing Eastern Time)

BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Steven D. Pohl (spohl@brownrudnick.com)

- and –

Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Howard S. Steel (hsteel@brownrudnick.com)
Laura F. Weiss (lweiss@brownrudnick.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC. et al.,** | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

## RESPONSE OF ORE HILL TO DEBTORS' TWO HUNDRED THIRTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)

Ore Hill Hub Fund Ltd., PMT Credit Opportunities Fund Ltd., and Wilshire Institutional

Master Fund II SPC – Wilshire Ore Hill International Segregated Portfolio (together, "Ore

Hill"), collectively the majority holder of Proof of Claim No. 15365 (the "Guarantee Claim")

---

[1]    The Objection Deadline was extended by agreement with the Debtors.

against Lehman Brothers Holdings Inc. ("LBHI"), hereby submit this response (the "Response")[2]

to the *Debtors' Two Hundred Thirty-Sixth Omnibus Objection to Claims*, dated December 9,

2011 [Docket No. 23168] (the "Objection"), and state as follows:

## PRELIMINARY STATEMENT

1.      The Guarantee Claim seeks recovery of not less than $54,790,554.29 from LBHI

in connection with amounts owed by and claimed against Lehman Brothers Special Financing,

Inc. ("LBSF," and such claim, the "Underlying LBSF Claim") under an ISDA Master Agreement

(the "Agreement")[3] and LBHI under the guarantee thereof, provided by LBHI in two forms:  (1)

a guaranty instrument in the form attached as Exhibit A to the Agreement (the "Contract

Guarantee"); and (2) the Unanimous Written Consent of the Executive Committee of the Board

of Directors of LBHI, dated June 9, 2005 (the "Board Guarantee").  While the Underlying LBSF

Claim has been settled and allowed by stipulation with LBSF, LBHI denies its guarantee liability

with respect thereto.

2.      Despite evidence of an agreement by LBHI to be bound by the Contract

Guarantee, and the existence of the Board Guarantee, LBHI requests that the Guarantee Claim be

disallowed on the sole basis that, because the parties are unable to locate the signed Contract

Guarantee, application of the New York version of the Statute of Frauds bars allowance of the

Guarantee Claim.  There are several reasons why LBHI's position is unsupportable as a matter of

fact and law and the Guarantee Claim should be allowed.

---

[2]      Ore Hill also hereby joins in the *Response of Mariner, LDC to the Two Hundred Sixty-First Omnibus Objection of the Debtors to Claims (No Guarantee Claims)*, dated March 7, 2012 [Docket No. 26078] (the "Mariner Response"), the *Response of MidFirst Bank to Debtors' Two Hundred Forty-Fifth Omnibus Objection to Claims*, dated January 11, 2012 [Docket No. 24199] and *Memorandum of Law of MidFirst Bank in Opposition to Debtors' Two Hundred Forty-Fifth Omnibus Objection to Claims*, dated January 11, 2012 [Docket No. 24200] (collectively, the "MidFirst Response"), and the *Response of Banca Italease S.P.A. to the Two Hundred Seventy-Seventh Omnibus Objection of the Debtors to Claims (No Guarantee Claims – Claim No. 30708)*, dated April 11, 2012 [Docket No. 27325] (the "Italease Response").

[3]      A copy of the Agreement is attached hereto as Exhibit A.

3.      First, pursuant to the Agreement and as a condition precedent thereto, LBHI was required to enter into the Contract Guarantee, pursuant to which LBHI unconditionally guarantees the payment of all amounts owed by LBSF under the Agreement.  The Agreement expressly states that "[u]pon execution and delivery of [the] Agreement," LBSF will provide "a guarantee of [LBHI] in the form of Exhibit A to this Schedule."  Agreement at Schedule Part 3; Agreement § 4(a)(ii).

4.      This provision for the LBHI guarantee is not surprising, inasmuch as LBSF's financial condition was generally not disclosed to or known by its trading counterparties, even upon request.  The guarantee in the form of the Contract Guarantee and Board Guarantee by LBHI, whose SEC-required financial statements were public record, filled the void of LBSF's lack of financial disclosure.  The Debtors admit that "LBHI's guarantee of the obligations of its subsidiaries under derivatives contracts was given as a matter of course and did not need to be requested or negotiated." *Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code*, dated August 31, 2011 [Docket No. 19629] (the "Disclosure Statement") at 65.  Here, LBHI provides no evidence as to how the Agreement and Contract Guarantee are any different from thousands of other ISDA Master Agreements where LBHI has not challenged the existence and enforceability of its guarantee.

5.      Second, LBHI's agreement to guarantee the Underlying LBSF Claim is also manifested by the written Board Guarantee, which by its express and broad terms provides a guarantee by LBHI of all of LBSF's obligations under various agreements, including the Agreement.[4]  In relevant part, the Board Guarantee states that "LBHI hereby fully guarantees the payment of all liabilities, obligations and commitments of [LBSF]."  Board Guarantee.  Thus,

---

[4]      A copy of the Board Guarantee is attached hereto as Exhibit B.

3

LBHI's guarantee of the Underlying LBSF Claim is clearly and unambiguously expressed in the Board Guarantee.

6.      In the Report of the Examiner, Anton R. Valukas concluded that the Board Guarantee "may be viewed as a unilateral contract for a general guaranty that may be enforced by 'anyone to whom it is presented who acts upon it.'" *Report of Anton R. Valukas, Examiner*, Volume 5, dated March 11, 2010 [Docket No. 8307] (the "Examiner's Report") at 1775.  Here, the Guarantee Claim is based not only on the Contract Guarantee but also the Board Guarantee. Transactions were entered into under the Agreement subsequent to the Board Guarantee, with knowledge of and reliance on, the Contract Guarantee and/or Board Guarantee.  Therefore, the Guarantee Claim should be allowed in full and the Objection overruled.

7.      Finally, to the extent that LBHI can overcome the *prima facie* validity of the Guarantee Claim (which it cannot), at a minimum Ore Hill is entitled to discovery (and if necessary, a full evidentiary hearing) to assess whether additional information, communications and/or documents exist providing that LBHI agreed to be bound by and/or executed the Contract Guarantee.  Discovery would reveal, as more fully set forth herein, vital information with respect to:  (i) the search purportedly conducted by the Debtors for a signed Contract Guarantee instrument; (ii) LBHI and LBSF's commitment to issue the Contract Guarantee instrument; and (iii) the policies, protocols, practices and procedures employed in issuing the Contract Guarantee and Board Guarantee.  Prior to filing this Response, Ore Hill informally requested such discovery from the Debtors, but the Debtors refused, citing the stay on discovery set forth in the Claims Procedures Order (as defined below).

8.      Even without such discovery, there are several bases for overruling the Objection and allowing the Guarantee Claim, including application of exceptions to the Statute of Frauds,

promissory estoppel and the Board Guarantee.  Accordingly, the Objection should be overruled and the Guarantee Claim allowed in full.

## BACKGROUND

9.      On August 22, 2002, the European Aeronautic Defence and Space Company EADS NV ("EADS") entered into the Agreement with LBSF, as counterparty, and with LBHI as guarantor under the Contract Guarantee and Credit Support Provider (as defined in the Agreement).

10.      The Agreement specifies that "[u]pon execution and delivery of this Agreement," LBSF will provide EADS with, among other things, "a guarantee of [LBHI] in the form of Exhibit A to this Schedule."  Agreement at Schedule Part 3.

11.      The Contract Guarantee provides that LBHI "hereby unconditionally guarantees to [EADS] the due and punctual payment of all amounts payable by [LBSF] under each Transaction [generally defined in the Agreement as any trade or transaction effected thereunder] when and as [LBSF's] obligations thereunder shall be come due and payable in accordance with the terms of the Agreement."  Agreement, Exhibit A to Schedule.

12.      The Agreement is governed by English law, and the Contract Guarantee is governed by the laws of the state of New York.  LBHI's role as guarantor pursuant to the Contract Guarantee is referenced no fewer than 43 times throughout the Agreement.

13.      On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), and, on October 3, 2008, LBSF filed its voluntary petition under chapter 11 of the Bankruptcy Code in the Court.

5

14.      Prior to the Petition Date, EADS entered into over 120 Transactions with LBSF under the Agreement.  Never once during that time did LBSF or LBHI disavow the Contract Guarantee or Board Guarantee.

15.      Pursuant to the Agreement, the commencement of a bankruptcy proceeding by a party to the Agreement constitutes an Event of Default entitling the counterparty to terminate the Agreement and receive payment of any amounts due thereunder.  See Agreement at §5(a)(vii); §6(a)-(e).

16.      On September 15, 2008, after LBHI's bankruptcy filing, EADS sent LBSF and LBHI a notice of early termination of the Agreement.  Both LBSF and LBHI never refuted that LBHI's bankruptcy filing constituted an Event of Default under the Agreement.

17.      On September 17, 2008, EADS sent LBSF a statement pursuant to Section 6(d) of the Agreement, requesting payment of €36,772,865.03 owed by LBSF to EADS due to the early termination of the Agreement.

18.      On September 17, 2009, EADS timely filed:  (i) Proof of Claim No. 15367 against LBSF asserting the Underlying LBSF Claim; and (ii) the Guarantee Claim.

19.      On September 23, 2009, EADS timely filed a Guarantee Questionnaire in support of the Guarantee Claim and a Derivative Questionnaire in support of the Underlying LBSF Claim.

20.      On November 2, 2009, Jörg Weber, Treasurer of EADS, sent an email to Lisa Roitman, then a managing director at LBHI, requesting a signed copy of the Contract Guarantee instrument.  A copy of the email request is attached hereto as Exhibit C.  Upon information and belief, to date EADS has not received a response.

21.     On April 19, 2010, the Court entered its *Order Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against the Debtors* [Docket No. 8474] (the "Claims Procedures Order").  Pursuant to the Claims Procedures Order, "upon service of a claim objection, the affected claimant is enjoined from commencing or continuing any action or proceeding, or engaging in any discovery … other than (i) through the Claims Hearing Procedures and the ADR Procedures or (ii) pursuant to a plan or plans confirmed in the applicable Debtors' chapter 11 cases" (the "Claims Discovery Injunction").

22.     On December 2, 2010, EADS and LBSF entered into an agreement that settled and allowed the Underlying LBSF Claim, without prejudice to the Guarantee Claim.

23.     On December 17, 2010, EADS assigned its interest in the Underlying LBSF Claim and the Guarantee Claim to Barclays Bank PLC ("Barclays").  See Docket No. 14002.

24.     On February 10, 2011, Barclays assigned a majority interest in the LBSF Claim and the Guarantee Claim to Ore Hill.  See Docket Nos. 14476; 24262.

25.      On December 5, 2011, the Debtors filed their *Modified Third Amended Joint Chapter 11 Plan* [Docket No. 22973] (the "Plan").

26.     On December 6, 2011, the Court entered its *Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 23023].  The Effective Date of the Plan occurred on March 6, 2012.

27.     On December 9, 2011, the Debtors filed the Objection.  The Objection does not even directly address the Contract Guarantee, let alone the Board Guarantee.  Rather, the Debtors state that they seek disallowance and expungement of the Guarantee Claim based on the Debtors' determination that the Guarantee Claim "provide[s] no basis of liability as to the Debtors," and

that after "review of Claimants' supporting documentation and the Debtors' books and records," the Debtors conclude that "based on the fair, accurate, and reasonable values of the subject Derivatives Contracts … and the netting provisions thereunder, the Debtors do not owe any amounts to the Claimants based on such Derivatives Contracts." Objection ¶ 2 at 2.  However, the Debtors conclusion is not even applicable here as the primary claim, the Underlying LBSF Claim, has been allowed pursuant to the settlement between EADS and LBSF.

28.    On December 12, 2011, the Debtors filed their *Two Hundred Forty-Fifth Omnibus Objection to Claims (Unissued Guarantee Claims)* [Docket No. 23251] (the "245th Omnibus Objection").  By the 245th Omnibus Objection, the Debtors seek to disallow and expunge four proofs of claim "because the claimants did not include with their proof of claim or their Guarantee Questionnaires a copy of an executed Guarantee," and "an unexecuted guarantee is not an enforceable contract under New York law."  245th Omnibus Objection ¶¶ 11 at 4; 13 at 5.

29.    On February 6, 2012, the Debtors filed their *Two Hundred Sixty-First Omnibus Objection to Claims (No Guarantee Claims)* [Docket No. 24995] (the "261st Omnibus Objection").  By the 261st Omnibus Objection, the Debtors seek to disallow and expunge eight proofs of claim "because the claimants have provided no evidence of any Guarantee enforceable against LBHI," and "[e]ach of the purported guarantees . . . remains unexecuted by LBHI, and an unexecuted guarantee is not an enforceable contract under New York law."  261st Omnibus Objection ¶ 13 at 5.

30.    On March 12, 2012 the Debtors filed their Two Hundred Seventy-Seventh Omnibus Objection to Claims (No Guarantee Claims) [Docket No. 26241] (the "277th Omnibus Objection").  By the 277th Omnibus Objection, the Debtors seek to disallow and expunge five

proofs of claim because "the claimants did not include with their proof of claim or their Guarantee Questionnaires a copy of an executed Guarantee. Rather, the claimants either did not include any Guarantee at all or included an unexecuted copy of a Guarantee." 277th Omnibus Objection ¶ 12 at 4.

## RESPONSE

### I.    The Objection Is Insufficient To Overcome The *Prima Facie* Validity Of The Claim.

31.    It is well-settled bankruptcy law that a properly filed proof of claim is *prima facie* evidence of the validity of that claim. See 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f); see also In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim in a bankruptcy case is *prima facie* evidence of the validity and amount of a claim …").

32.    Here, the Guarantee Claim is *prima facie* valid, as the Guarantee Claim and Guarantee Questionnaire were timely filed along with sufficient supporting documentation to establish the Guarantee Claim, including the Agreement and an unsigned copy of the Contract Guarantee instrument.

33.    Accordingly, the Debtors bear the burden of coming forward with evidence sufficient to overcome the validity of the Guarantee Claim. See In re Adelphia Communs. Corp., 2007 Bankr. LEXIS 660, 15-16 (Bankr. S.D.N.Y. Feb. 20, 2007) ("Because a properly filed proof of claim is deemed allowed until objected to, such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case."); In re DJK Residential LLC, 416 B.R. 100, 104-105 (Bankr. S.D.N.Y. 2009) (holding that the burden of proof rests with the objecting party until "the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Here, the Debtors fail to meet their burden.

9

34.     The Debtors fail to provide any evidence that the Guarantee Claim is invalid. First, the Objection fails to include any description of what efforts, if any, the Debtors undertook to search for the missing signed Contract Guarantee instrument.   Second, unlike the 245th Omnibus Objection, 261st Omnibus Objection, and 277th Omnibus Objection, the Debtors do not even reference the absence of an executed Contract Guarantee instrument as the basis of the Objection or address the existence of the Board Guarantee.   Rather, the Debtors generally cite their books and records as reflecting that the Debtors do not owe any amounts under the Agreement.   However, such a position is incompatible with the fact that the Underlying LBSF Claim has been settled and allowed by LBSF.   Finally, the Debtors admit that LBSF entered into thousands of ISDA Master Agreements and that LBHI's guarantee was given as a matter of course and did not need to be requested or negotiated.   See Disclosure Statement at 65; see also *Amended Schedules of Assets and Liabilities for Lehman Brothers Special Financing Inc. Case No. 08-13888 (JMP)*, dated June 15, 2009 [Docket No. 3921] at Schedule G.   The Debtors fail to present any evidence as to why the Agreement is so unique that the Contract Guarantee was not executed or withheld.   Nor does the Objection even mention the Board Guarantee, let alone present any argument as to its non-applicability to the Guarantee Claim.   Accordingly, the Objection is insufficient to overcome the *prima facie* validity of the Guarantee Claim and should be overruled, and the Guarantee Claim should be allowed in full.

## II.     The Guarantee Claim Is Valid Pursuant To LBHI's Board Guarantee.

35.     LBHI's obligation with respect to the Guarantee Claim is further evidenced by the Board Guarantee.   The Board Guarantee provides, in relevant part, that "LBHI hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set

forth on Schedule A." Board Guarantee. The Schedule A guaranteed subsidiaries include LBSF. See Id.

36.     The Board Guarantee by its clear and express terms operates as an enforceable guarantee by LBHI of the Underlying LBSF Claim. See Corines v. Charter One Bank, 365 Fed.Appx. 237, 238 (2d Cir. 2010) ("[W]here a contract provision is unambiguous, a court must interpret the contract to 'effectuate its plain language.'"); Bell v. Cendant Corp., 293 F.3d 563, 568 (2d Cir. 2002) ("When determining the intent of parties, courts must look to the plain language of the contract and construe the contract as a whole.").

37.     Support for this conclusion is found in the Examiner's Report: "The Amended and Restated Code of Authorities for LBHI authorized LBHI upon resolution of the Executive Committee of its Board of Directors to provide a full guaranty of all of the obligations of its subsidiaries." Examiner's Report at 1774-1775. While the Examiner notes that he did not locate any decisions involving the enforceability of a guarantee contained only in a corporate resolution, he concluded that:

> the resolution may be viewed as a unilateral contract for a general guaranty that may be enforced by 'anyone to whom it is presented who acts upon it.'[5] The guaranty resolution appears to satisfy the basic general guarantee requirements of knowledge, acceptance (which can be implied) and consideration and therefore may be held to create an enforceable general guarantee obligation.[6]

Examiner's Report at 1775.

38.     Here, the Board Guarantee is an enforceable guarantee obligation of LBHI to satisfy the debts of LBSF under the Agreement as set forth in the Guarantee Claim. See Lou

---

[5]     Citing to FinanceAmerica Private Brands, Inc. v. Harvey E. Hall, Inc., 380 A.2d 1377, 1279 (Del. Super. Ct. 1977).

[6]     Citing to APL, Inc. v. Ohio Valley Aluminum, Inc., 839 S.W. 2d 571, 573 (Ky. Ct. App. 1992) ("When the circumstances surrounding the issuance of an absolute guaranty and the terms of the writing itself evidence no indication that the guarantor anticipates notification of acceptance from the creditor, the guarantor will be held liable on the instrument from the time the creditor acts in reliance on it.").

Haperin's Stations, Inc. v. Cross Petroleum Corp., 33 Misc.3d 1227(A) at *5 (N.Y.Sup. 2011)
("To establish entitlement to judgment as a matter of law on a guaranty, plaintiff must prove the
existence of the underlying obligation, the guaranty, and the failure of the prime obligor to make
payment in accordance with the terms of the obligation."). The underlying obligation has been
established by the allowed Underlying LBSF Claim, and the Board Guarantee by its plain and
unambiguous language operates as a guarantee by LBHI of the Underlying LBSF Claim and the
outstanding payment obligation due by LBHI.

39.    Accordingly, even if a signed Contract Guarantee instrument cannot be found, the
Guarantee Claim against LBHI is still valid based on the Board Guarantee. Therefore, the
Guarantee Claim should be allowed in full and the Objection overruled.

### III.    In The Event The Objection Is Not Overruled, Ore Hill Is Entitled To Discovery.

40.    While unstated in the Objection, the Debtors, through their counsel, confirmed to Ore Hill
that the Objection is similar to the 245th Omnibus Objection, the 261st Omnibus Objection and the 277th
Omnibus Objection in that it is predicated upon the assertion that the Contract Guarantee instrument was
never signed and, therefore, the New York version of the Statute of Frauds applies to bar the Guarantee
Claim.[7]

41.    Under New York law, the Statute of Frauds "may not be invoked to bar a party to an
allegedly lost contract from proving the existence and contents of the writing by parol and circumstantial
evidence." N.Y. Jur. 2d Frauds, Stat. of § 326. In other words, even when a contract has been lost -
which may be the case here - the party seeking enforcement must be provided with an opportunity to
prove the existence and contents of the writing through parol evidence. See Love v. Spector, 627
N.Y.S.2d 87, 88 (N.Y. App. Div. 2d Dep't 1995) (enforcement of a lost contract was not barred by

---

[7]    Ore Hill reserves all rights, to extent necessary, to prove that the Guarantee Claim is also allowable
pursuant to UK law.

the Statute of Frauds, since the plaintiff is entitled to the opportunity to prove the existence and

contents of the lost writing by parol and circumstantial evidence); Posner v. Rosenbaum, 270 N.Y.S.

849, 853 (N.Y. App. Div. 1st Dep't 1934) (parol evidence was admitted to prove existence of lost

written agreement).

42.    Prior to filing this Response, Ore Hill sought informally to obtain discovery from

the Debtors regarding the missing signed Contract Guarantee instrument.    The Debtors refused to

provide any discovery to Ore Hill citing the Claims Discovery Injunction.    The Debtors did

represent that if Ore Hill identified a specific Lehman employee who had performed services in

connection with the Agreement, the Debtors would search the files of such employee and

provide any relevant documents located therein.    However, the Debtors subsequently

backtracked and informed Ore Hill that no discovery would be forthcoming on account of the

Debtors' purported prior efforts to locate a signed Contract Guarantee, which were allegedly

unsuccessful.[8]

43.    A claim objection initiates a contested matter.    See Fed. R. Bankr. P. 9014; In re

Lomas Financial Corp., 212 B.R. 46, 52 (Bankr. D. Del. 1997) (citing Fed. R. Bankr. P. 9014).

Rule 26 of the Federal Rules of Civil Procedure, applicable to these cases under Bankruptcy Rule

7026, applies in contested matters.    See In re Almatis B.V., 2010 Bankr. LEXIS 4243, 12-13

(Bankr. S.D.N.Y. Nov. 24, 2010), citing Fed. R. Bankr. P. 9014; see also In re Gaftick, 333 B.R.

177, 183 (Bankr. E.D.N.Y. 2005) ("Rule 9014(c) specifically provides that the discovery rules in

Part VII of the Bankruptcy Rules are applicable to contested matters unless the Court directs

otherwise.").

---

[8]    Due to the Claims Discovery Injunction, Ore Hill did not request that the Court compel the Debtors to
provide such discovery at the time.    However, Ore Hill maintains that the discovery outlined herein is
necessary prior to any hearing on the merits of the Objection.

44.     The scope of Bankruptcy Rule 7026 is wide.  See In re Almatis B.V., 2010 Bankr. LEXIS 4243, 12-13.   Specifically, pursuant to Bankruptcy Rule 7026, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. …" Id. citing Fed. R. Bankr. P. 7026(b)(1).

45.     The following discovery (which Ore Hill informally requested from the Debtors and the Debtors denied), at a minimum, is essential to determine:  (i) the existence of a signed Contract Guarantee instrument; (ii) the agreement by LBHI to be bound by the Contract Guarantee and Board Guarantee; and/or (iii) the existence of evidence supporting the application of one or more theories of law that would result in the Contract Guarantee and/or Board Guarantee being an enforceable obligation of LBHI:

- Discovery regarding the due diligence undertaken by the Debtors in respect of locating an executed Contract Guarantee instrument;

- Discovery related to communications between LBSF and/or LBHI and EADS concerning the Agreement and/or Contract Guarantee;

- Discovery regarding LBSF's standard practices, procedures, policies, and/or protocols for entering into ISDA Master Agreements;

- Discovery regarding LBSF's authority to provide counterparties to ISDA Master Agreements with a LBHI guarantee or other LBHI credit support;

- Discovery regarding LBHI's standard practices, procedures, policies and/or protocols for issuing and executing guarantees of ISDA Master Agreements; and

- Discovery regarding the identity of current or former LBSF and/or LBHI employee(s) or other representative(s) who performed services relating to the Agreement and/or Contract Guarantee.

46.     Not only will such discovery provide Ore Hill with a meaningful opportunity to locate the signed Contract Guarantee instrument from the person(s) with access to the necessary books and records, but such discovery will also support the conclusion that the Guarantee Claim is allowable notwithstanding the absence of a signed Contract Guarantee instrument.

14

**IV.    The Guarantee Claim Is Not Barred By The Statute Of Frauds**
**As The Contract Guarantee Falls Outside Of The Statute Of Frauds.**

47.    Contract formation outside of the Statue of Frauds is not dependent on a signature as long as a party manifests an intention to be bound to the agreement.  See Irving R. Boody & Co. v. Winn Holdings, Int'l, 213 F. Supp. 2d 378, 381 (S.D.N.Y. 2002) ("It is well settled in New York . . . that contract formation is not dependent on a signature.").

48.    For contracts outside the Statute of Frauds, the Court can turn to "the course of conduct between the parties to determine whether there was a meeting of minds sufficient to give rise to an enforceable contract . . . ." Flores v. Lower East Side Serv. Ctr., Inc., 4 N.Y.3d 363, 370, (N.Y. 2005); Brighton Inv., Ltd. v. Har-ZVI, 88 A.D.3d 1220, 1222 (N.Y. App. Div 3rd Dept. 2011) (finding contract formation was not dependent on signed document but on "whether the parties' words and deeds establish their intent to enter into a binding agreement given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.").

49.    Here, the intent of LBHI to enter into the Contract Guarantee is readily apparent. EADS was not provided with the choice of different credit support options.  The Debtors admit that counterparties to derivatives contracts, like the Agreement, were generally not given a choice of entities with which to transact.  See Disclosure Statement at 65.  Rather, EADS had just one choice:  LBSF as counterparty with its ultimate parent, LBHI, as the provider of credit support, through the Contract Guarantee and Board Guarantee.

50.    The Agreement expressly states that the Contract Guarantee would be executed by LBHI and delivered to EADS without delay or additional consideration, and as a condition precedent to the Agreement.  See Agreement at Schedule Part 3; Agreement §4(a)(ii).  LBHI has admitted that the Contract Guarantee was given as a matter of course and did not need to be requested or negotiated.  See Disclosure Statement at 65.  All of these facts clearly establish

LBHI's agreement to be bound by the Contract Guarantee notwithstanding whether LBHI actually signed the Contract Guarantee instrument. Accordingly, the Contract Guarantee falls outside the Statute of Frauds.

**V.     Ore Hill Can Rely On An Exception
         To The Statute Of Frauds To Overcome The Objection.**

51.     In the event that a copy of the signed Contract Guarantee instrument cannot be obtained through additional discovery and the Court finds that the Statute of Frauds applies in this case, the fact that Ore Hill may not be in possession of a signed copy of the Contract Guarantee instrument is not dispositive of the Guarantee Claim as Ore Hill can rely on an exception to the Statute of Frauds that reflects LBHI's agreement to be bound by the Contract Guarantee.

**A.     The Multiple Document Rule.**

52.     Courts have found that a party may satisfy the Statute of Frauds by establishing the transaction from a collection of related materials. See Crabtree v. Elizabeth Arden Sales Corp., 110 N.E.2d 551, 554 (N.Y. 1953) (holding that three documents clearly referring to the same transaction with similar details, were sufficient to satisfy the Statute of Frauds); see also New York General Obligations Law § 5-701(b)(3)(d) (the writing requirement of the Statute of Frauds may be satisfied by memoranda, notes, or other documentation pieced together from separate writings related to the same transaction).

53.     Ore Hill can satisfy the Statute of Frauds under the "Multiple Document Rule" as, even without discovery which might uncover additional documentation there is a significant quantum of documentary evidence to support the proposition that LBHI agreed to be bound by the Contract Guarantee, including that:

- The Contract Guarantee and LBHI's role as guarantor is referenced no fewer than 43 times throughout the Agreement;

- An executed Contract Guarantee is specifically listed on the Schedule to the Agreement entitled "Documents to be Delivered" by LBSF, the counterparty;

- EADS and LBSF entered into no less than 120 Transactions under the Agreement without LBHI once disavowing the Contract Guarantee;

- An unsigned copy of the Contract Guarantee is attached as Exhibit A to the Agreement; and

- LBHI guaranteed LBSF's obligations under the Agreement, including the Underlying LBSF Claim, pursuant to the Board Guarantee.

54.     This collection of materials meets the Multiple Document Rule exception to the Statute of Frauds as it constitutes sufficient evidence of LBHI's agreement to be bound by the Contract Guarantee even in the absence of a signed copy thereof.  See e.g., Global Power Equip. Group Inc., et al., Case No. 06-11045 (BLS), December 17, 2007 Hearing Transcript at 162:4-8, attached hereto as Exhibit D (finding that the "Multiple Document Rule" provides "an out from the statute of frauds if a party can establish the commitment or transaction from a collection of materials even in the absence of a single signed contract."). Accordingly, LBHI is liable for the Guarantee Claim and the Objection should be overruled.

**B.     Discovery Is Needed To Determine If
Other Exceptions To The Statute Of Frauds Are Applicable.**

55.     In addition to the Multiple Document Rule, there are additional exceptions to the Statute of Frauds that suggest a compelling basis for the discovery requested by Ore Hill herein.

56.     For example, Section 2-201 of the New York Uniform Commercial Code sets forth a "Merchants Exception" to the Statute of Frauds.  The Merchants Exception applies when:  (i) both parties are merchants; (ii) the writing was sent within a reasonable time after the alleged agreement;

(iii) the writing was received by a party with reason to know of its contents; and (iv) no written objection was made.  See Bazak Int'l Corp. v. Mast Indus., 73 N.Y.2d 113, 123 (N.Y. 1989).

57.     Likewise, New York General Obligations Law ("N.Y. Gen. Oblig. Law") provides an exception to the Statute of Frauds if the contract is a "qualified financial contract."  N.Y. Gen. Oblig. Law § 5-701(b)(2)(f). This exception provides that:

> An agreement, promise, undertaking or contract, which is valid in other respects and is otherwise enforceable, is not void for lack of a note, memorandum or other writing and is enforceable by way of action or defense provided that such agreement, promise, undertaking or contract is a qualified financial contract ... and (a) there is, as provided in paragraph three of this subdivision, sufficient evidence to indicate that a contract has been made, or (b) the parties thereto, by means of a prior or subsequent written contract, have agreed to be bound by the terms of such qualified financial contract from the time they reach agreement (by telephone, by exchange of electronic messages, or otherwise) on those terms.

N.Y. Gen. Oblig. Law § 5-701(b).  It is clear that the types of transactions entered into by EADS and LBSF under the Agreement are qualified financial contracts.

58.     At a minimum, Ore Hill is entitled to discovery to assess whether this exception (and other exceptions) to the Statute of Frauds may exist to fully respond to the Objection.

## VI.     Promissory Estoppel Mandates Enforcement Of The Contract Guarantee.

59.     "It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."  See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. N.Y. 1994).

60.     Under New York law, a claim for promissory estoppel requires demonstration of: (i) a clear and unambiguous promise; (ii) reasonable and foreseeable reliance by the promisee; and (iii) unconscionable injury sustained by the relying party as a result of the reliance.  See Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000); Fishoff v. Coty, Inc., 676 F.Supp. 2d 209,

216 (S.D.N.Y. 2009).   Here, Ore Hill can establish the elements for promissory estoppel to enforce the Guarantee Claim.

61.    First, both the Contract Guarantee and Board Guarantee are clear and unambiguous.  The Contract Guarantee provides that LBHI "hereby unconditionally guarantees . . . . the due and punctual payment of all amounts payable by [LBSF] under each Transaction when and as [LBSF's] obligations thereunder shall be come due and payable in accordance with the terms of the Agreement."  Agreement at Exhibit A to Schedule.  In turn, the Board Guarantee provides, in relevant part, that "LBHI hereby fully guarantees the payment of all liabilities, obligations and commitments of [LBSF]."  Board Guarantee.

62.    Second, it can be proven that EADS reasonably relied on a fully enforceable Contract Guarantee and/or Board Guarantee to enter into no fewer than 120 Transactions with LBSF.  See JP Morgan Chase Bank, Nat. Ass'n v. Ilardo, 2012 WL 695032 at *11 (N.Y. Supp. 2012) (finding that reasonable and foreseeable reliance exists where a party acts in a manner that shows their belief that a contract has been created).   LBHI's guarantee was a necessary prerequisite for EADS to enter into the Transactions with LBSF, an entity whose financial condition was not disclosed or known to EADS.  As noted above, the guarantee in the form of the Contract Guarantee and Board Guarantee filled the void of LBSF's lack of financial disclosure and was relied upon by EADS when entering the Transactions.

63.    EADS's reliance on the Contract Guarantee and Board Guarantee was also foreseeable because LBHI's guarantee of the obligations of its subsidiaries under derivatives contracts was given as a matter of course and did not need to be requested or negotiated and the Board Guarantee is clear on its terms that LBHI fully guarantees LBSF's obligations.

64.     Finally, as set forth in the Guarantee Claim, EADS clearly sustained an injury as a result of its reliance on LBSF as direct obligor and LBHI as guarantor under the Agreement. EADS was owed not less than $54,790,554.29 under the Agreement as of the Petition Date, with such primary underlying liability (the Underlying LBSF Claim) having been settled by the estate through the allowance of a claim against LBSF.  Thus, application of promissory estoppel is appropriate here, and Ore Hill should be permitted to recover on its Guarantee Claim against LBHI.

## RESERVATION OF RIGHTS

65.     To the extent the Court does not overrule the Objection, Ore Hill reserves all of its rights to seek discovery and request a full evidentiary hearing pursuant to Bankruptcy Rule 9014(e) and to file a supplemental and/or amended Response after discovery and prior to a hearing on the merits of the Objection.

## CONCLUSION

WHEREFORE, for all these reasons set forth herein, Ore Hill respectfully requests that the Court:  (i) overrule the Objection; (ii) allow the Guarantee Claim in full; and (iii) grant such other and further relief as is just and proper.

Dated: August 9, 2012
     New York, New York

        **BROWN RUDNICK LLP**

         /s/ Steven D. Pohl\_\_\_\_\_
        Steven D. Pohl
        One Financial Center
        Boston, Massachusetts 02111
        Telephone:  (617) 856-8200

        - and -

        Howard S. Steel
        Laura F. Weiss
        Seven Times Square
        New York, New York 10036
        (212) 209-4800

        *Attorneys for Ore Hill Hub Fund
        Ltd., PMT Credit Opportunities
        Fund Ltd., and Wilshire Institutional
        Master Fund II SPC – Wilshire Ore
        Hill International Segregated
        Portfolio*