deposit such additional funds as Lender determines are necessary in its discretion, within ten (10) days after notice from Lender;

(xxvi)  Borrower fails or refuses to substantially complete the Construction Work in accordance with this Agreement;

(xxvii) if an event occurs which, under the terms of this Agreement or any other Loan Documents, which by such terms is deemed to constitute an "Event of Default" under such Loan Document (subject to any applicable notice and cure periods set forth therein);

(xxviii) any Guarantor fails in any material respect to perform or observe any term, covenant or agreement in any of the Loan Documents to which it is a party; or (ii) any Loan Document is for any reason revoked or invalidated, in whole or in any part (including with respect to future advances), or otherwise ceases to be in full force and effect; or (iii) any Borrower Party contests in any manner the validity or enforceability of any Loan Document to which it is a party or denies that it has any further liability or obligation thereunder;

(xxix)  if Borrower is in breach of the Lien Obligations or the Development Rights Obligations.

## Section 7.2    Remedies.

(a)       Upon the occurrence of any Event of Default beyond any applicable notice and cure periods, Lender may take such action, without notice (but subject to any notices to be delivered in connection with an Event of Default as otherwise specified in this Agreement), demand, presentment, protest or other requirements of any kind (all of which are expressly waived by Borrower), as Lender deems advisable to protect and enforce its rights and remedies against Borrower or any of them and/or any Borrower Party and in and to the Property or any part thereof, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(i)        declare the entire Debt to be immediately due and payable;

(ii)       exercise any of the rights or remedies specified in Article X of any of the Security Instruments or any other provision of any of the Security Instruments;

(iii)      apply any sums then deposited with Lender or with any Servicer or other third party under the control of Lender and any other sums held in escrow or otherwise by Lender, including the Reserves, in accordance with the terms of this Agreement or any other Loan Document to the payment of the following items in any order in Lender's discretion: (i) Taxes and Other Charges; (ii) Insurance Premiums; (iii) interest on the unpaid principal balance of the Notes; (iv) amortization of the unpaid principal balance of the Notes; and (v) all other sums payable pursuant to the Notes, this Agreement and the other Loan Documents, including advances made by Lender pursuant to the terms of this Agreement;

(iv)      pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code including the right to receive and/or establish a

lock box for all Rents, proceeds from the Intangibles (as defined in the Security Instruments) and any other receivables or rights to payments of Borrower relating to the Property;

(v)     with or without actual or threatened waste to the Property, Lender shall, at Lender's discretion, be entitled, and is hereby expressly and irrevocably authorized, upon application to a court of competent jurisdiction, without notice to Borrower, or any other party (any and all such notice being waived hereby) and without regard to the adequacy of any security for the Debt or the solvency of Borrower or any other party liable for payment of the Debt, to appoint a receiver(s), on an emergency basis or otherwise (and if allowed by applicable law, on an ex parte basis), to take possession of and to operate the Property or any portion thereof, and at Lender's option, to collect the Rents. Borrower irrevocably waives all notice of and defenses and objections to the appointment of such receiver. Borrower further irrevocably agrees that the occurrence of any Event of Default per se would create an emergency and the necessity for immediate actions; and

(vi)     pursue any other right or remedy allowed by any Loan Document or applicable law.

(b)     Upon the occurrence and during the continuance of an Event of Default, interest on the outstanding principal balance of the Loan and, to the extent permitted by law, overdue interest and other amounts due in respect of the Loan, shall accrue at the Default Rate, calculated from the date such payment was due without regard to any grace or cure periods contained herein. Interest at the Default Rate shall be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt (or that portion thereof that is then due). To the extent permitted by applicable law, interest at the Default Rate shall be added to the Debt, shall itself accrue interest at the same rate as the Loan and shall be secured by the Security Instruments. This paragraph shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default; the acceptance of any payment of by Lender shall not be deemed to cure or constitute a waiver of any Event of Default; and Lender retains its rights under this Agreement and the other Loan Documents to accelerate and to continue to demand payment of the Debt upon the happening of any Event of Default, despite any payments made to Lender after the occurrence of such Event of Default.

(c)     Lender may resort to any remedies and the security given by any of the Loan Documents in whole or in part, and in such portions and in such order as determined by Lender in its discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Notes, the Security Instruments or any of the other Loan Documents. The failure of Lender to exercise any right, remedy or option provided in any of the Loan Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Notes, the Security Instruments or the other Loan Documents. No acceptance by Lender of any payment after the occurrence of any Event of Default and no payment by Lender of any obligation for which Borrower is are liable hereunder shall be deemed to waive or cure any Event of Default, or Borrower's liability to pay such obligation. No sale of all or any portion of the Property, no forbearance on the part of Lender, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Lender to Borrower, shall operate to release or in any manner affect the

interest of Lender in the remaining Property or the liability of Borrower to pay the Debt. No waiver by Lender shall be effective unless it is in writing signed by Lender and then only to the extent specifically stated.

(d)     With respect to Borrower and the Property, nothing contained herein or in any other Loan Document shall be construed as requiring Lender to resort to the Property or any portion thereof for the satisfaction of any of the Debt, and Lender may seek satisfaction out of the Property or any part thereof or decline to do so, in Lender's discretion. In addition, Lender shall have the right from time to time to partially foreclose any of the Security Instruments in any manner and for any amounts secured by such Security Instrument then due and payable as determined by Lender in Lender's discretion including, without limitation, the following circumstances: (i) in the event Borrower defaults beyond any applicable grace period in the payment of one or more scheduled payments of principal and interest, Lender may foreclose the Security Instruments or any of them to recover such delinquent payments, or (ii) in the event Lender elects to accelerate less than the entire outstanding principal balance of the Loan, Lender may foreclose the Security Instruments or any of them to recover so much of the principal balance of the Loan as Lender may accelerate and such other sums secured by the Security Instruments as Lender may elect. Notwithstanding one or more partial foreclosures, the Property shall remain subject to the Security Instruments to secure payment of sums secured by Security Instruments and not previously recovered.

(e)     Additionally, upon the occurrence of any Event of Default beyond any applicable notice and cure periods or if any Borrower Party fails to make any payment or to do any act as required in any of the Loan Documents, Lender may, but without any obligation to do so and without notice to or demand on any Borrower Party and without releasing any Borrower Party from any obligation under the Loan Documents, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose the Loan Documents or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate (as defined in the Note) for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender, shall constitute a portion of the Debt, shall be secured by the Loan Documents and shall be due and payable to Lender upon demand.

(f)     No delay or omission to exercise any remedy, right or power accruing upon an Event of Default, or the granting of any indulgence or compromise by Lender shall impair any such remedy, right or power hereunder or be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient. A waiver of one Default or Event of Default shall not be construed to be a waiver of any subsequent Default or Event of Default or to impair any remedy, right or power of Lender. Notwithstanding any other provision of this Agreement, Lender reserves the right to seek a deficiency judgment or preserve a deficiency claim in connection with the foreclosure of the Security Instruments to the extent necessary to foreclose on all or any portion of the Property, the Rents or any other collateral.

**Section 7.3**   **Right of Entry**.  In addition to any other rights or remedies granted under this Agreement, Lender and its agents shall have the right to enter and inspect the Property at any reasonable time during the term of the Loan.  The cost of such inspections or audits, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Lender, shall be borne by Borrower.  The cost of such inspections, if not paid for by Borrower following demand, may, at Lender's option, be added to the principal balance of the sums due under the Notes and shall bear interest thereafter until paid at the Default Rate.

**Section 7.4**   **Costs of Enforcement**.  In the event of the (i) exercise of any remedy by Lender under this Agreement or the other Loan Documents or following the occurrence of an Event of Default, (ii) foreclosure of any mortgage prior to or subsequent to a Security Instrument in which proceeding Lender is made a party, (iii) bankruptcy, insolvency, reorganization, rehabilitation, liquidation or other similar proceeding in respect of any Borrower Party or an assignment by any Borrower Party for the benefit of its creditors, (iv) enforcement of any obligations of or collection of any payments due from any Borrower Party under this Agreement, the other Loan Documents or with respect to the Property, or (v) incurring of any costs or expenses by Lender in connection with any refinancing or restructuring of the credit arrangements provided under this Agreement in the nature of a "work-out", then Borrower, or their respective successors or assigns, shall pay to Lender on demand any and all reasonable expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting Lender's interest in the Property or in collecting any amount payable hereunder or in enforcing Lender's rights hereunder with respect to the Property, whether or not any legal proceeding is commenced hereunder or thereunder and whether or not any Default or Event of Default shall have occurred and is continuing, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower; provided, however, that Borrower shall not be liable for the payment of any such costs and expenses to the extent the same arise by reason of the gross negligence or willful misconduct of Lender.  Any cost and expenses due and payable to Lender may be paid from any amounts in the Lockbox Account. Without limiting the generality of the foregoing, Borrower agrees that if an Event of Default is continuing (i) to the maximum extent allowed by law, Lender is not subject to any "one action" or "election of remedies" law or rule, and (ii) all Liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of Lender's remedies against the Property and the Security Instruments have been foreclosed, sold and/or otherwise realized upon in satisfaction of the Debt or the Debt has been paid in full.

**Section 7.5**   **Violation of Legal Requirements**.  If the Property is not in compliance with one, some or all of any material Legal Requirements, Lender may reasonably impose additional requirements upon the Borrower in connection therewith including, without limitation, monetary reserves or financial equivalents.

**Section 7.6**   **Remedies Cumulative**.  The rights, powers and remedies of Lender under this Agreement and the other Loan Documents shall be cumulative and not exclusive of any other right, power or remedy which Lender may have against Borrower or any of the Borrower Parties pursuant to this Agreement or the other Loan Documents, or existing at law or in equity or otherwise.  Lender's rights, powers and remedies may be pursued singly, concurrently or otherwise, at such time and in such order as Lender may determine in Lender's

discretion.  No delay or omission to exercise any remedy, right or power accruing upon an Event of Default shall impair any such remedy, right or power or shall be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient.  A waiver of one Default or Event of Default with respect to Borrower shall not be construed to be a waiver of any subsequent Default or Event of Default by Borrower or to impair any remedy, right or power consequent thereon.  Any and all amounts collected or retained by Lender after an Event of Default has occurred, including interest at the Default Rate, late charges or any escrowed amount, may be applied by Lender to payment of the Debt in any order or priority that Lender in its discretion may elect.

## VIII   SECONDARY MARKET TRANSACTIONS AND CO-LENDING

### Section 8.1   Generally.

**Section 8.1.1   Sale of Notes and Securitization**.  Lender may, without the consent of Borrower or any other Person, at any time, sell, transfer or assign the Notes, the Security Instruments and the other Loan Documents, and any or all servicing rights with respect thereto, or grant participations therein (the "**Participations**") or issue mortgage pass-through certificates or other securities ("**Securities**") evidencing a beneficial interest in a rated or unrated public offering or private placement (a "**Securitization**"), in all cases, with or without novation.  Lender may forward to each potential purchaser, transferee, assignee, servicer or investor in any Participations, Securitizations or Secondary Market Transaction (collectively, an "**Investor**") or any Rating Agency rating any Securities, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Debt and to Borrower, any Borrower Party, and the Property, whether furnished by Borrower, any Borrower Party or otherwise, as Lender determines necessary or desirable.  Lender may also disclose to such parties any lending relationship in addition to the Debt which Lender with Borrower and/or any Borrower Party and/or any of their Affiliates.  Borrower, on behalf of itself and all Borrower Parties, irrevocably waive any and all rights they may have under applicable state or federal law to prohibit such disclosure, including but not limited to any right of privacy.

**Section 8.1.2   Cooperation**.  Borrower agrees that the Loan Documents shall be sufficient evidence of the obligations of Borrower to each Investor, and Borrower further agrees to reasonably cooperate with Lender in connection with any sale, assignment, conveyance, alienation or pledge or other transfer made or any Securities created pursuant to this Section, including the delivery of an estoppel certificate required in accordance with Section 5.14 and such other documents as may be reasonably requested by Lender (provided that any such document shall not increase in any material respect the obligations of Borrower under the Loan Documents).  In furtherance of the foregoing, Borrower shall (i) reasonably cooperate with Lender so that the Lender may perform or cause to be performed, at Lender's sole expense, such site inspections, appraisals, market studies, environmental reviews and reports (Phase I and, if appropriate, Phase II), engineering reports and other due diligence investigations of the Property, as required by Lender or as may be requested by the Rating Agencies in connection with a Securitization; (ii) cause counsel to render any Non-Consolidation Opinions requested by the Rating Agencies (which may be relied upon by the Rating Agencies) and cause counsel to render or update any other opinions (which may be relied upon by the Rating Agencies) in

substantially the same form and substance as those delivered on the Closing Date, with such modifications as may be reasonably requested by the Rating Agencies; (iii) furnish and the Borrower, on behalf of itself and all Borrower Parties, consent to Lender furnishing to such Investors or such prospective Investors or such Rating Agency any and all information concerning the Property, the Leases, if any, the financial condition of Borrower and any Borrower Party as may be reasonably requested by Lender, any Investor, any prospective Investor or any Rating Agency in connection with any sale or transfer of Participations or Securities; (iv) execute such amendments to the Loan Documents and Organizational Documents of Borrower or Borrower's direct or indirect members or partners as may be reasonably requested by the Lender or desired by the Rating Agencies or otherwise to effect the Securitization (provided that any such amendment shall not increase in any material respect the obligations of Borrower under the Loan Documents); (v) have appropriate representatives available for Investor meetings and/or tours of the Property upon reasonable notice, (vi) execute documentation reasonably acceptable to Lender and its counsel which establishes a loan agency role (which Agent may be any holder of the Loan) and the right to assign direct interests in the Loan to a syndicate of lenders (provided that it does not increase Borrower's obligations under the Loan) and (vii) the ability to tranche the Loan into senior and subordinate claims (each claim to be evidenced by separate notes payable to each syndicate member in the amount of each member's portion of such claim). Lender may forward to each Investor or any Rating Agency rating any Securities, each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Loan or to Borrower, to any Borrower Party, or to the Property.

Section 8.1.3  **Secondary Market Transaction Indemnification.**  It is understood that the information provided by, or on behalf of, Borrower or any Borrower Party to Lender in connection with the Loan or subsequent to the date hereof which is delivered in connection with any Loan Document may ultimately be incorporated into the offering documents for a Secondary Market Transaction and thus various Investors may also see some or all of such information. Lender and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, Borrower and Borrower shall indemnify Lender as to any losses, claims, damages or liabilities that arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in such information or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated in such information or necessary in order to make the statements in such information, or in light of the circumstances under which they were made, not misleading. Lender may publicize the existence of the Loan in connection with its marketing for a Secondary Market Transaction or otherwise as part of its business development.

Section 8.1.4  **Splitting the Loan.**  Lender shall have the right from time to time to sever each Note and the other Loan Documents into one or more separate notes (including multiple component notes or tranches which may have different interest rates, amortization payments, principal amounts and maturities, or resulting in a first or second lien, or resulting in priority of the mortgages of the Loan being recast, mortgages and other security documents or recasting a portion of the Loan into one or more mezzanine loans which shall be made to one or more newly created bankruptcy remote single purpose entities that own 100% of the direct or indirect ownership interests in Borrower, which will be secured by, among other things, a pledge

of such ownership interests (the "**Severed Loan Documents**") in such denominations and priorities as Lender shall determine in its discretion for purposes of evidencing and enforcing its rights and remedies provided hereunder (and such new notes or modified note shall have the same initial weighted average coupon as the original note (assuming a full funding of the Loan)(but such new notes or modified note may subsequently change the weighted average coupon (or such weighted average coupon may change as a result of changes in interest rates generally) and apply principal, interest rates and amortization of the Loan between the components in a manner specified by Lender in its discretion); provided, however, that except as set forth in the previous parenthetical, that the terms, provisions and clauses of the Severed Loan Documents shall be no more adverse to Borrower and/or Guarantor than those contained in the Notes, this Agreement, the Security Instruments and the other Loan Documents. Borrower shall cooperate with Lender to effectuate the same and shall execute and deliver to Lender from time to time, promptly after the request of Lender, a severance agreement and such other documents, modifications, amendments (provided that any such document, modification or amendment shall not increase in any material respect the obligations of Borrower under the Loan Documents), opinions and title insurance as Lender shall request in order to affect the severance described in the preceding sentence, all in form and substance reasonably satisfactory to Lender such that the pricing and marketability of the Securities and the size of each class of Securities and the rating assigned to each such class by the Rating Agencies shall provide the most favorable rating levels and achieve the optimum bond execution for the Loan. In the event of any prepayment of the Loan, Lender shall be entitled to apply the amount of such prepayment to one or more of the new component notes as Lender in its discretion decides (including, without limitation, the right to apply principal sequentially starting with the most senior part, note, component or loan). Borrower hereby absolutely and irrevocably appoints Lender as Borrower's true and lawful attorney, coupled with an interest, in Borrower's name and stead to make and execute all documents necessary or desirable to effect the aforesaid severance, Borrower ratifying all that its said attorney shall do by virtue thereof. Borrower hereby acknowledges and agrees that Borrower shall have no claim or cause of action against Lender arising out of Lender's execution and/or recordation of any instruments by or on behalf of any Borrower pursuant to the foregoing power of attorney.

**Section 8.2    Co-Lending**. The provisions of this **Section 8.2** shall apply in the event the Lender elects to syndicate the Loan in accordance with the provisions of this **Section 8.2**, it being agreed that Lender may elect to modify (or substitute these provisions in their entirety) in its discretion.

### Section 8.2.1    Assignments and Participations.

(a)    Each Lender shall have the right to assign, transfer, sell, negotiate, pledge or otherwise hypothecate this Agreement and any of its rights and security hereunder and under the other Loan Documents to any other Person (an "**Assignee**") as specified in the Syndication Documents or with the prior written consent of the administrative agent for the Loan (the "**Agent**") which Agent shall be initially appointed by Lehman (and which may in Lehman's discretion, be Lehman or any other Person). Any such consent by the Agent may be withheld as specified in the Syndication Documents. The Agent may designate any Assignee accepting an assignment of a specified portion of the Loan to be a "**Co-Agent**", an "**Arranger**" or similar title, but such designation shall not confer on such Assignee the rights or duties of the Agent,

60

unless so specified in the Syndication Documents. Upon the execution, delivery, approval (if required), and acceptance, and upon the effective date specified in, the applicable assignment and assumption agreement from the assigning Lender to the Assignee (the "**Assignment and Assumption Agreement**"), (a) the Assignee thereunder shall be a party hereto and, to the extent that rights and obligations hereunder have been assigned to it pursuant to such Assignment and Assumption Agreement, have the rights and obligations of a Lender hereunder and under the other Loan Documents, and Borrower hereby agrees that all of the rights and remedies of Lender in connection with the interest so assigned shall be enforceable against Borrower by an Assignee with the same force and effect and to the same extent as the same would have been enforceable but for such assignment, and (b) the assigning Lender thereunder shall, to the extent that rights and obligations hereunder and under the other Loan Documents have been assigned by it pursuant to such Assignment and Assumption Agreement, relinquish its rights and be released from its obligations hereunder and thereunder.

(b)    By executing and delivering an Assignment and Assumption Agreement, the assigning Lender thereunder and the Assignee thereunder confirm to and agree with each other and the other parties hereto that except as otherwise provided for in the Assignment and Assumption Agreement, (i) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement or any other Loan Document or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement or any other Loan Document or any other instrument or document furnished in connection therewith; (ii) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower, the Guarantor or any other Person or the performance or observance by the Borrower, the Guarantor or any other Person of any of their obligations under any Loan Document or any other instrument or document furnished in connection therewith; (iii) such Assignee confirms that it has received a copy of this Agreement together with such financial statements, Loan Documents and other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into the Assignment and Assumption Agreement and to become a Lender hereunder; (iv) such Assignee will, independently and without reliance upon Agent, the assigning Lender or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement; (v) such Assignee appoints and authorizes the Agent to take such action as the Agent on its behalf and to exercise such powers under this Agreement and the other Loan Documents as are delegated to Agent by the terms hereof and thereof, together with such powers as are reasonably incidental thereto; and (vi) such Assignee agrees that it will perform in accordance with their terms all of the obligations which by the terms of this Agreement and the other Loan Documents are required to be performed by it as a Lender.

(c)    Agent shall maintain a copy of each Assignment and Assumption Agreement delivered to and accepted by it and shall record in its records the names and addresses of each Lender and the Committed Amount of, and Percentage of the Loan owing to, such Lender from time to time. Borrower, the Agent and Lenders may treat each entity whose name is so recorded as a Lender hereunder for all purposes of this Agreement.

(d)     Upon receipt of an Assignment and Assumption Agreement executed by an assigning Lender and an Assignee, Agent shall, if such Assignment and Assumption Agreement has been properly completed and consented to if required herein, accept such Assignment and Assumption Agreement, and record the information contained therein in its records, and the Agent shall use its commercially reasonable efforts to give prompt notice thereof to Borrower (provided that neither the Agent nor the Lenders shall be liable for any failure to give such notice).

(e)     Borrower shall use reasonable efforts to cooperate with Agent and each Lender in connection with the assignment of interests under this Agreement or the sale of participations herein, including, but not limited to, the payment of any and all legal, title and other fees and costs of the Agent in connection with such assignment up to an aggregate amount of $25,000. Borrower shall also be responsible for any and all legal, title or other fees and costs of any other Lender in connection with the assignment of such Lender's interests in this Agreement.

(f)     Anything in this Agreement to the contrary notwithstanding, and without the need of consent or to comply with any of the formal or procedural requirements of this Agreement, including this Article VIII, any Lender may at any time and from time to time pledge and assign all or any portion of its rights under all or any of the Loan Documents as permitted by the Syndication Documents; provided that no such pledge or assignment shall release such Lender from its obligations hereunder.

(g)     Unless otherwise provided in the Syndication Documents, each Lender shall have the right, without the consent of the Borrower, to sell participations to one or more other Lenders (a "**Participant**") in or to all or a portion of its rights and obligations under the Loan and the Loan Documents; provided, however, that (i) such Lender shall remain solely responsible to the other parties hereto for the performance of its obligations under this Agreement, (ii) the Borrower, the Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and with regard to any and all payments to be made under this Agreement, and (iii) the holder of any such participation shall not be entitled to voting rights under this Agreement or the other Loan Documents (but such holder may contract with the Lender selling such Participant its interest in such Lender's share of the Loan as to voting of such Lender's interest under Section 8.2.1, provided that any such agreement by a Lender shall bind only such Lender alone and not Borrower, the other Lenders or the Agent).

(h)     Borrower acknowledges and agrees that Lenders may provide to any Assignee or Participant originals or copies of this Agreement, any other Loan Document and any other documents, instruments, certificates, opinions, insurance policies, letters of credit, reports, requisitions and other materials and information of every nature or description, and may communicate all oral information, at any time submitted by or on behalf of Borrower or Guarantor or received by any Lender in connection with the Loan or with respect to Borrower, provided that prior to any such delivery or communication, such Assignees or Participants shall agree to preserve the confidentiality of any of the foregoing to the same extent that such Lender agreed to preserve such confidentiality. In order to facilitate assignments to Assignees and sales to Participants, Borrower shall execute such further documents, instruments or agreements as

Lenders may reasonably require; provided, that except as set forth in this Agreement, Borrower shall not be required to execute any document or agreement which would materially decrease their rights, or materially increase their obligations, relative to those set forth in this Agreement or any of the other Loan Documents (including financial obligations, personal recourse, representations and warranties and reporting requirements).

**Section 8.3    Several Liability**. Anything in this Agreement contained to the contrary notwithstanding, the obligations of each Lender to Borrower under this Agreement are several and not joint and several; each Lender shall only be obligated to fund its Percentage of each disbursement to be made hereunder up to the amount of its Committed Amount.

**Section 8.4    Appointment.**

**Section 8.4.1**    Lehman and/or any other Person appointed as Agent by the Syndication Documents is hereby appointed as Agent hereunder and under each other Loan Document, and each Lender hereby authorizes the Agent to act as agent for Lender and to take such actions as Lender is obligated or entitled to take under the provisions of this Agreement and the other Loan Documents and to exercise such powers as are set forth herein or therein, together with such other powers as are reasonably incidental thereto. Agent shall not have a fiduciary relationship with respect to Borrower or any Lender by reason of this Agreement.

**Section 8.4.2**    The provisions of this Article are solely for the benefit of the Agent and the Lenders. Neither Borrower nor any Borrower Party shall have any rights to rely on or enforce any of the provisions hereof except as provided in Section 8.5. In performing its functions and duties under this Agreement, the Agent shall act solely as agent for the Lenders and does not assume, and shall not be deemed to have assumed, any obligations toward or relationship of agency or trust with or for Borrower or any Borrower Party.

**Section 8.5    Reliance on Agent**. All acts of and communications by the Agent, as agent for the Lenders, shall be deemed legally conclusive and binding; and Borrower and any third party (including any court) shall rely on any and all communications or acts of the Agent with respect to the exercise of any rights or the granting of any consent or approval on behalf of Lender in all circumstances where an action by Lender is required or permitted pursuant to this Agreement or the provisions of any other Loan Document or by applicable law without the right or necessity of making any inquiry of any individual Lender as to the authority of Agent with respect to such matter. In no event shall any of the foregoing limit the rights or obligations of any Lender with respect to any other Lender pursuant to this Article VIII.

**Section 8.6    Powers**. The Agent shall have and may exercise such powers under the Loan Documents or the Syndication Documents as are specifically delegated to the Agent by the terms of each thereof, together with such powers as are reasonably incidental thereto. The Agent shall not be considered, or be deemed, a separate agent of the Lenders hereunder, but is, and shall be deemed, acting in its contractual capacity as Agent, exercising such rights and powers under the Loan Documents and the Syndication Documents as are specifically delegated to the Agent or Agent is otherwise entitled to take hereunder. Agent shall have no implied duties to the Lenders, or any obligation to the Lenders to take any action except

63

any action specifically provided by the Loan Documents or the Syndication Documents to be taken by the Agent.

**Section 8.7**   **Intentionally Omitted**.

**Section 8.8**   **Intentionally Omitted**.

**Section 8.9**   **Approval of Loan Documents.**  Each Lender authorizes and directs the Agent to enter into the Loan Documents for the benefit of the Lenders.

**Section 8.10**   **Agency Provisions Relating to Collateral.**

**Section 8.10.1** Except as otherwise provided in the Syndication Documents, the Agent is hereby authorized on behalf of all Lenders, without the necessity of any notice to or further consent from any Lender (but subject to any applicable notice and cure rights of Borrower set forth in the Loan Documents), at any time and from time to time, to take any action with respect to any collateral for the Loan or any Loan Document which may be necessary to preserve and maintain such collateral or to perfect and maintain perfected the liens upon such collateral granted pursuant to this Agreement and the other Loan Documents.

**Section 8.10.2** Except as provided in this Agreement, the Agent shall have no obligation whatsoever to any Lender or to any other person or entity to assure that any collateral exists or is owned by Borrower or is cared for, protected or insured or has been encumbered or that the liens granted herein or in any of the other Loan Documents or pursuant hereto or thereto have been properly or sufficiently or lawfully created, perfected, protected or enforced or are entitled to any particular priority.

**Section 8.11**   **Lender Actions Against Borrower or the Collateral**.  Each Lender agrees that it will not take any action, nor institute any actions or proceedings, against Borrower or any other person hereunder or under any other Loan Documents with respect to exercising claims against the Borrower or rights in any collateral except as specifically permitted by the Syndication Documents and the Loan Documents.

**Section 8.12**   **Assignment and Participation**.  No Lender shall be permitted to assign or sell all or any portion of its rights and obligations under this Agreement to any Borrower Party.

**Section 8.13**   **Intentionally Omitted** .

**Section 8.14**   **General Immunity**.  Neither Agent nor any of its directors, officers, agents or employees shall be liable to Borrower, Guarantor or any Lender for any action taken or omitted to be taken by Agent or its directors, officers, agents or employees hereunder or under any other Loan Document or in connection herewith or therewith, except for its or their own gross negligence or willful misconduct.

**Section 8.15**   **No Responsibility for Loan, Recitals, Etc**.  Neither Agent nor any of its directors, officers, agents or employees shall be responsible for or have any duty to ascertain, inquire into, or verify (i) any statement, warranty or representation made in connection

with any Loan Document or any use of the Loan; (ii) the performance or observance of any of the covenants or agreements of any party to any Loan Document; (iii) the satisfaction of any condition specified in this Agreement, or (iv) the validity, effectiveness or genuineness of any Loan Document or any other instrument or writing furnished in connection therewith, provided that the foregoing shall not release Agent from liability for its gross negligence or willful misconduct.

**Section 8.16    Action on Instructions of Lenders**. The Agent shall in all cases be fully protected in acting, or in refraining from acting, hereunder and under any other Loan Document in accordance with written instructions signed by all the Lenders (or the requisite Lenders, if such action may be directed hereunder by the requisite Lenders), and such instructions and any action taken or failure to act pursuant thereto shall be binding on all of Lenders.

**Section 8.17    Employment of Agents and Counsel**. The Agent may undertake any of its duties as Agent hereunder and under any other Loan Document by or through employees, agents, and attorneys-in-fact.

**Section 8.18    Reliance on Documents; Counsel**. The Agent shall be entitled to rely upon any notice, consent, certificate, affidavit, letter, telegram, statement, paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, and, in respect to legal matters, upon the opinion of counsel selected by the Agent, which counsel may be an employee of Agent, provided that the foregoing shall not release the Agent from liability for its gross negligence or willful misconduct. Any such counsel shall be deemed to be acting on behalf of Lender in assisting the Agent with respect to the Loan, but shall not be precluded from also representing Agent in any matter in which the interests of Agent and the other Lenders may differ.

**Section 8.19    Rights as a Lender**. With respect to its Committed Amount, if any, Agent shall have the same rights, powers and obligations hereunder and under any other Loan Document as any Lender and may exercise such rights and powers as though it were not an Agent, and the term "Lender" or "Lenders" shall, unless the context otherwise indicates, include Agent in its individual capacities. The Borrower and each Lender acknowledge and agree that Agent and/or its Affiliates may accept deposits from, lend money to, hold other investments in, and generally engage in any kind of trust, debt, equity or other transaction or have other relationships, in addition to those contemplated by this Agreement or any other Loan Document, with Borrower or any of its Affiliates in which Borrower or such Affiliates are not restricted hereby from engaging with any other person.

**Section 8.20    Successor Agent**. Agent may, without the prior approval of Borrower, on not less than thirty (30) days prior written notice, resign from the performance of all its functions and duties hereunder and a successor Agent may be appointed as set forth in the Syndication Documents. Agent shall turn over all funds held by Agent pursuant to this Agreement to such successor Agent.

**Section 8.21    Costs of Secondary Market Transactions**. Notwithstanding anything to the contrary contained in this Article VIII, Borrower shall not be liable for any costs,

fees or expenses incurred by Lender with respect to any Secondary Market Transactions and co-lending described in this Article VIII.

## IX EXCULPATION.

### Section 9.1    Non-Recourse Provisions.

(a)    Subject to the qualifications below and the provisions of Sections 9.2, 9.3 and 9.4, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in the Notes, this Agreement, the Security Instrument or the other Loan Documents by any action or proceeding wherein a money judgment shall be sought against Borrower or the partners or members of Borrower, except that Lender may bring any foreclosure action, action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon Lender's interest under the Notes, this Agreement, the Security Instruments and the other Loan Documents, or in the Property or any portion thereof, the Rents or any other collateral given to Lender pursuant to the Loan Documents; provided, however, that except as specifically provided in Sections 9.2 and 9.3, any judgment in any such action or proceeding shall be enforceable against Borrower and/or Borrower's members and/or partners only to the extent of Borrower's and/or Borrower's partners' and/or members' interest in the Property or any portion thereof, in the Rents and in any other collateral given to Lender, and Lender, by accepting the Notes, this Agreement, the Security Instruments and the other Loan Documents, agrees, unless deemed necessary by Lender to preserve potential liability of any Person for a Recourse Event, that Lender shall not sue for, seek or demand any deficiency judgment against Borrower or any other Person in any such action or proceeding under or by reason of or under or in connection with the Notes, this Agreement, the Security Instruments or the other Loan Documents.

(b)    The provisions of this Article IX shall not, however, (i) constitute a waiver, release or impairment of any obligation evidenced or secured by any of the Loan Documents; (ii) impair the right of Lender to name the Borrower or any of them or any other Person as a party defendant in any action or suit for foreclosure and sale under any Security Instrument provided no money judgment is sought against them (except as otherwise provided in this Article IX); (iii) affect the validity or enforceability of any guaranty or the Environmental Indemnity made in connection with the Loan or any of the rights and remedies of Lender thereunder; (iv) impair the right of Lender to obtain the appointment of a receiver; (v) impair the enforcement of the Assignments of Leases; (vi) constitute a prohibition against Lender to seek a deficiency judgment against any Person potentially liable therefor in order to fully realize the security granted by the Security Instruments or any other Loan Document or to commence any other appropriate action or proceeding in order for Lender to exercise its remedies against the Property or any portion thereof; or (vii) prohibit Lender from taking any action to perfect the Liens and security interests of the Loan Documents.

### Section 9.2    Partial Recourse.    Notwithstanding any provision of this Agreement to the contrary and in addition to the rights of Lender set forth in Section 9.3 (and not in limitation thereof), the provisions of this Article IX shall not constitute a waiver of the right of Lender to enforce the joint and several liability and/or obligation of Borrower or any other Person liable for the Obligations (including any Guarantor), by money judgment, specific

performance or otherwise, to the extent of any Losses incurred by Lender arising out of or attributable to or relating to any of the following (collectively, the **"Partial Recourse Events"** and individually, a **"Partial Recourse Event"**): (i) the gross negligence or willful misconduct of Borrower or any other Borrower Party with respect to the Property; (ii) the voluntary physical waste or willful destruction of any of the Property or any portion thereof by Borrower or any other Borrower Party, or any of their respective agents, managers, officers, employees or Affiliates, including the removal of any portion of the Property in violation of the Loan Documents; (iii) the failure to remove or insure over any mechanic's lien in violation of the Loan Documents; (iv) a failure by Borrower to pay Taxes or Other Charges in accordance with the Loan Documents; (v) Borrower or any of the Borrower Parties in any judicial or quasi-judicial case, action or proceeding directly or indirectly contests the validity or enforceability of the Loan Documents or directly or indirectly contests or intentionally hinders, delays or obstructs the pursuit of any rights or remedies by Lender (including the commencement and/or prosecution of a foreclosure action, judicial or non-judicial, the appointment of a receiver for the Property or any portion thereof or any enforcement of the terms of the Assignment of Leases) after an Event of Default; provided, however, that this clause (v) shall not apply to any particular Borrower Party or otherwise pertain to any action of any Borrower Party which solely contends and alleges only that as a factual matter all of the Borrower Parties are in fact in full compliance with all Obligations under the Loan Documents and that no Event of Default has occurred and is continuing; provided that any liability under this clause (v) shall be limited to Lender's reasonable attorney's fees; (vi) any amendment or modification of any of the Organizational Documents of Borrower, the sole member of Borrower or any of the Borrower Parties or of any Material Agreement or Affiliate Agreement shall occur without the prior written consent of Lender, to the extent required herein; (vii) any Borrower Party, or any Affiliate of any Borrower Party, shall seek a jury trial in any action or proceeding against Lender, whether arising under the Loan Documents or otherwise; (viii) any Borrower Party, or any Affiliate of any Borrower Party, shall make a counterclaim against Lender, Servicer or their Affiliates in violation of Section 11.1 in any action or proceeding, whether arising under the Loan Documents or otherwise; (ix) the failure of Borrower to pay Lender's or Servicer's costs and expenses in accordance with Section 12.23; (x) the misapplication or misappropriation of any Security Deposits, including any Security Deposits received by Tenants and not deposited into an escrow account for the benefit of such Tenants, except to the extent any such Security Deposits were applied in accordance with the terms and conditions of any of the Leases prior to the occurrence of an Event of Default; (xi) any violation, breach or failure to comply with Section 12.9 (after an Event of Default); (xii) if Borrower or any Borrower Party intentionally fails to comply with any Legal Requirement; (xiii) any assertion by Borrower or any other Borrower Party that (a) Lender has modified the Loan Documents other than by a written instrument signed by Lender, (b) Lender has waived the provisions of the Loan Documents by failing to require Borrower's strict performance of the terms thereof, or (c) Lender's and Borrower's relationship is other than that of a debtor/creditor arising under the Loan Documents; or (xiv) failure to maintain the insurance coverages required by Section 6.1 or any failure of Borrower to pay any deductible under any Policy after a loss covered by such Policy.

        **Section 9.3    Full Recourse**. In addition to the rights of Lender set forth in Section 9.2 (and not in limitation thereof), the Debt shall be fully recourse to Borrower jointly and severally, and the provisions of Section 9.1(a) shall be wholly inapplicable ab initio, and Borrower shall be fully personally liable, jointly and severally, for all of the Debt upon the

occurrence of any of the following (collectively, the "**Full Recourse Events**", and individually, a
"**Full Recourse Event**"):  (a) any fraud or intentional material misrepresentation in connection
with the Loan which has a Material Adverse Effect on the value of the Property or any other
collateral for the Loan whether made prior to or after the Closing Date; (b) the intentional
misappropriation, misapplication, conversion or application in violation of the Loan Documents
(including interference with the operation of the Lockbox Agreement) by Borrower or Guarantor
(which shall include any use of Loan proceeds other than as specified in the Certificate of
Sources and Uses) of (1) any Insurance Proceeds, (2) any Awards, Condemnation Proceeds or
other amounts payable in connection with the Condemnation of all or a portion of the Property,
(3) any Rents and/or Security Deposits received or collected by any Borrower Party or any
Affiliate of any Borrower Party and not applied in accordance with the Loan Documents or (4)
any Gross Sale Proceeds received by any Borrower Party in connection with the sale of the Units
or any other sales proceeds from any portion of the Property after the failure to cure such breach
within ten (10) days after Borrower's receipt of notice from Lender; (c) any voluntary action by
Borrower or any Borrower Party which result in a violation, breach or failure to comply with
Section 5.22; (d) any of the events described in Section 7.1(a)(vi) shall occur (other than with
respect to any case, proceeding or other action under any existing or future Bankruptcy Laws, or
seeking appointment of a receiver, trustee, custodian, conservator or other similar official
commenced against Borrower by Lender); (e) if any Borrower Party incurs any Indebtedness in
violation of the express restrictions of prohibitions contained in the Loan Documents and such
violation is not cured within ten (10) days after receipt of notice from Lender; or (f) a breach by
Borrower of the provisions of Section 4.1(s) (other than with respect to subsections (v), (ix) and
(xx) thereof).

### Section 9.4   Recourse Events.

Notwithstanding anything to the contrary in this **Article IX,** (a) if any of the
actions constituting a Recourse Event are subject to a specified notice and cure period in the
Loan Documents, the same shall not give rise to personal liability for the payment and
performance of the Obligations until the expiration of any such notice and cure period, and (b) a
voluntary bankruptcy filing by any one Guarantor that is an individual ("**Bankrupt Guarantor**")
will not result in the personal liability of any other Guarantor ("**Non-Bankrupt Guarantor**")
provided the Loan is not otherwise in default and shall remain in full force and effect.  In
addition to the foregoing, a voluntary bankruptcy filing by not more than one Guarantor shall not
constitute an Event of Default hereunder provided (x) the remaining Guarantors satisfy the
Financial Covenant Tests (as defined in the Guaranty of Recourse Obligations), as determined by
Lender in accordance with its customary practices, or (y) Borrower replaces such Guarantor with
an individual or entity acceptable to Lender in its discretion.  Any replacement or substitution of
a Guarantor with another Guarantor may be conditioned upon the delivery to Lender of a Non-
Consolidation Opinion with respect to such Guarantor as requested by Lender.  Liability for the
payment and performance of the Obligations as a result of a Partial Recourse Event shall exclude
any consequential or speculative damages.  Notwithstanding anything to the contrary in this
Article IX, if (i) the Project is conveyed by foreclosure of any Mortgage, exercise of power of
sale under any Mortgage, a deed in lieu of foreclosure, or by reason of any other remedy set forth
in the Loan Documents, (ii) Borrower, any of **the Principals, any Guarantor or any of their
Affiliates is no longer in possession or control of the Project and (iii) Borrower and any
other Borrower Party consents to, and is cooperating with Lender in connection with, any**

**such foreclosure or other exercise of remedies and neither Borrower nor any other Borrower Party is contesting or otherwise interfering with any such foreclosure or other exercise of remedies,** then the indemnities with respect to any Partial Recourse Event or Full Recourse Event, as the case may be, shall not apply with respect to Losses that arise on or following the date of such conveyance.

Notwithstanding anything set forth in Article IX to the contrary, nothing contained in this Article IX shall alter or limit the liability of any Person under any other environmental indemnity agreement, guaranty agreement or any other agreement given by such other Person to Lender.]

**Section 9.5    No Waiver.** Notwithstanding anything to the contrary in this Agreement or any of the other Loan Documents (including the provisions of this Article IX) Lender shall not be deemed to have waived any right which Lender may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with the Loan Documents.

## X  INDEMNIFICATION.

**Section 10.1    General Indemnification.** In addition to any other indemnifications provided herein or in the other Loan Documents, Borrower shall, jointly and severally, at Borrower's sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Legal Requirements; (e) any failure of the Property to comply with any Access Laws; (f) any representation or warranty made in any of the Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made or the use or intended use of the proceeds of the Loan; (g) any claim by brokers, finders or similar Persons claiming to be entitled to a commission in connection with the Loan (other than one claiming to have dealt exclusively with Lender) or any Lease or other transaction involving the Property or any part thereof; and (h) the claims of any Tenant (except any claims of Tenants first accruing after the date Lender or Lender's Affiliate takes title to the Property); provided, however, that Borrower shall not have any obligation to Lender hereunder to the extent that such Losses arise from the gross negligence or willful misconduct of Lender. To the extent that the undertaking to indemnify, defend and hold harmless set forth in the preceding sentence may be unenforceable because it violates any law or public policy, Borrower shall pay the maximum portion that Borrower are permitted to pay and satisfy under applicable law and this indemnification provision shall be enforced to the maximum extent allowed by law. Any amounts payable to Lender by reason of the application of this paragraph shall be secured by the Loan Documents

and shall become immediately due and payable and shall bear interest at the Default Rate from the date of demand until paid. The obligations and liabilities of Borrower under this Section 10.1 shall be joint and several and shall survive termination, satisfaction, or assignment of this Agreement, the repayment of the Debt and the exercise by Lender of any of its rights or remedies hereunder, including the acquisition of Property by foreclosure or a conveyance in lieu of foreclosure. WITHOUT LIMITATION TO THE FOREGOING, BORROWER HEREBY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER, ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, ACTIONS, JUDGMENTS, COURT COSTS AND LEGAL OR OTHER EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) WHICH LENDER MAY INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF: (A) THE PURPOSE TO WHICH BORROWER APPLY THE LOAN PROCEEDS; (B) THE FAILURE OF BORROWER TO PERFORM ANY OBLIGATIONS AS AND WHEN REQUIRED BY THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS; (C) ANY FAILURE AT ANY TIME OF ANY OF BORROWER'S REPRESENTATIONS OR WARRANTIES TO BE TRUE AND CORRECT; OR (D) ANY ACT OR OMISSION BY BORROWER, CONSTITUENT PARTNER OR MEMBER OF BORROWER, ANY CONTRACTOR, SUBCONTRACTOR OR MATERIAL SUPPLIER, ENGINEER, ARCHITECT OR OTHER PERSON OR ENTITY WITH RESPECT TO ANY PORTION OF THE PROPERTY. BORROWER SHALL IMMEDIATELY PAY TO LENDER UPON DEMAND ANY AMOUNTS OWING UNDER THIS INDEMNITY, TOGETHER WITH INTEREST FROM THE DATE THE INDEBTEDNESS ARISES UNTIL PAID AT THE RATE OF INTEREST APPLICABLE TO THE PRINCIPAL BALANCE OF THE NOTES. BORROWER'S DUTIES AND OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER SHALL SURVIVE CANCELLATION OF THE NOTES AND THE RELEASE, RECONVEYANCE OR PARTIAL RECONVEYANCE OF THE SECURITY INSTRUMENTS.

   **Section 10.2    ERISA Indemnification**. Borrower shall, jointly and severally, at Borrower's sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including attorneys' fees and costs incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's discretion) that Lender may incur, directly or indirectly, as a result of a default under Sections 4.1(i) or 5.23.

   **Section 10.3    Duty to Defend; Attorneys' Fees and Other Fees and Expenses**. Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals reasonably approved by the Indemnified Parties. Notwithstanding the foregoing, any of the Indemnified Parties may, in their discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of claim or proceeding. Upon demand, Borrower shall pay or, in the discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of the reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith; provided, however, that

all of the Indemnified Parties shall be defended by one firm of attorneys unless Lender in good faith determines that more than one law firm should be retained because of conflicts of interest or potential conflicts of interest.

Section 10.4    **Changes in Laws Regarding Taxation**.  If any law is enacted or adopted or amended after the date of this Agreement which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay such tax, with interest and penalties thereon, if any.  In the event Lender is advised by counsel chosen by Lender that the payment of such tax or interest and penalties by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then in any such event, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

Section 10.5    **No Credits on Account of the Debt**.  Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of the Loan Documents or the Debt.  In the event such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

Section 10.6    **Recording of Security Instruments**.  Borrower forthwith upon the execution and delivery of this Agreement and thereafter, from time to time upon five (5) days notice from Lender, will cause the Security Instruments, and any other Loan Document creating a Lien or security interest or evidencing the Lien thereof upon the Property or any part thereof and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be reasonably required by Lender or by any present or future law in order to publish notice of and fully to protect the Lien or security interest thereof upon, and the interest of Lender in, the Property or any part thereof or to correct any error in the legal description of any of the Property.  Borrower will pay all filing, registration or recording fees, and all reasonable expenses incident to the preparation, execution and acknowledgment of the Security Instruments, any mortgages supplemental thereto, any security instruments with respect to the Property or any part thereof, any such other Loan Document and any instrument of further assurance, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Security Instruments, any mortgages supplemental thereto, any security instruments with respect to the Property or any part thereof, any such other Loan Document or any instrument of further assurance, except where prohibited by law so to do.  Borrower shall hold harmless and indemnify Lender, Servicer, their respective successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of the Security Instruments or any other Loan Document.  If at any time any Governmental Authority shall require revenue or other stamps to be affixed to any of the Loan Documents, or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.  Borrower hereby absolutely and irrevocably appoints Lender as Borrower's true and lawful attorney, coupled with an interest, in Borrower's name and stead to make and execute all documents necessary or desirable to effect the provisions of this Section 10.6 if Borrower fails to do so for five days after demand by Lender.  Borrower

71

hereby ratify all that Borrower's said attorney(ies) shall do by virtue of such power or authority. Borrower hereby acknowledges and agrees that Borrower shall have no claim or cause of action against Lender arising out of Lender's execution and/or recordation of any instruments by or on behalf of Borrower pursuant to the foregoing power of attorney.

**Section 10.7    Brokers and Financial Advisors**.  Borrower hereby represents that Borrower has not dealt with any financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transactions contemplated by this Agreement except Shopco Properties Corp.:, Carlton Group and Milton Ciplet.  Borrower hereby agrees to indemnify, defend and hold Lender harmless from and against any and all claims, liabilities, costs and expenses of any kind (including Lender's attorneys' fees and expenses) in any way relating to or arising from a claim by any Person that such Person acted on behalf of Borrower or Lender in connection with the transactions contemplated herein.  The provisions of this Section 10.7 shall survive the expiration and termination of this Agreement and the payment of the Debt.

## XI  WAIVERS

**Section 11.1    Waiver of Counterclaim**.  All amounts due under this Agreement or the other Loan Documents shall be payable without setoff, counterclaim or any deduction whatsoever.  Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against Borrower by Lender or its agents, including Servicer, or otherwise offset any obligations to make payments required under the Loan Documents.  Any Investor or assignee of Lender's interest in and to the Loan Documents shall take the same free and clear of all offsets, counterclaims or defenses which Borrower may otherwise have against any assignor of the Loan Documents, and no such unrelated offset, counterclaim or defense shall be interposed or asserted by Borrower in any action or proceeding brought by any such assignee upon the Loan Documents, and any such right to interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower.  If Borrower is indebted to Lender pursuant to more than one note or pursuant to any subordinate loan documents, (i) the preceding provisions shall apply to any note or other loan documents assigned or transferred by Lender, even if one or more notes are retained by Lender, and (ii) Borrower waives and releases any right to assert any claim, cause of action, offset or defense against Lender with respect to the Loan or the Loan Documents which is any way related to such other note or subordinate loan documents.

**Section 11.2    Marshalling and Other Matters**.  Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein and the pleading of any statute of limitations as a defense to payment of the Debt or performance of the Obligations.  Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of any Security Instrument on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Agreement and on behalf of all Persons to the extent permitted by applicable law. Borrower hereby waives and renounces all homestead and exemption rights provided by the Constitution and the laws of the United States and of any state, in and to the Property as against

the collection of the Debt, or any part thereof. The interests and rights of Lender under the Notes, the Security Instruments or in any of the other Loan Documents shall not be impaired by any indulgence, including (i) any renewal, extension or modification which Lender may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Lender may grant with respect to the Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Borrower Party or surety of any of the Debt.

**Section 11.3** **Waiver of Notice**. Borrower shall not be entitled to, and hereby waive the right to receive, any notices of any nature whatsoever from Lender except with respect to matters for which this Agreement or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not, pursuant to applicable Legal Requirements, permitted to waive the giving of notice.

**Section 11.4** **Trial by Jury**. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION THEREOF OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

## XII    MISCELLANEOUS

**Section 12.1** **Survival**. This Agreement and all covenants, agreements, representations and warranties made herein and in the certificates delivered pursuant to any of the Loan Documents, including the Certificate of Sources and Uses and the Payment Direction Letter, shall survive the making by Lender of the Loan and the execution and delivery to Lender of the Notes, and shall continue in full force and effect so long as all or any of the Debt is outstanding and unpaid unless a longer period is expressly set forth herein or in the other Loan Documents. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the legal representatives, successors and assigns of such party. All covenants, promises and agreements in this Agreement, by or on behalf of Borrower, shall inure to the benefit of the legal representatives, successors and assigns of Lender.

**Section 12.2** **Governing Law**.

(A)    THIS AGREEMENT WAS NEGOTIATED IN WHOLE OR IN PART IN THE STATE OF NEW YORK, AND MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTES DELIVERED PURSUANT TO THIS AGREEMENT WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY LEGAL REQUIREMENTS OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE APPLICABLE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER.  TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT AND THE NOTE, AND THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.  THIS CHOICE OF GOVERNING LAW IS MADE PURSUANT TO NEW YORK GENERAL OBLIGATION LAW SECTION 5-1401.

(B)    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, OR AT LENDER'S SOLE OPTION AND ELECTION IN THE STATE WHERE THE PROPERTY IS LOCATED, AND, IN EITHER INSTANCE, BORROWER WAIVES ANY OBJECTIONS WHICH BORROWER MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER DOES HEREBY DESIGNATE AND APPOINT
_____ AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED

**TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN
EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER, IN ANY
SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK. A COPY
OF SUCH SERVICE OF PROCESS SHALL BE DELIVERED TO:
_____. BORROWER (I) SHALL GIVE PROMPT NOTICE TO
LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT
HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A
SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW
YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS
THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL
PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT
CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED
WITHOUT LEAVING A SUCCESSOR.**

**(C)    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST
LENDER BROUGHT BY BORROWER AGAINST LENDER ARISING OUT OF OR
RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR
ARISING OUT OF THE LENDER-BORROWER RELATIONSHIP CREATED BY THE
LOAN DOCUMENTS (WHETHER ARISING IN CONTRACT, TORT OR
OTHERWISE) WHICH IN ANY EVENT SHALL BE SUBJECT TO THE
LIMITATIONS OF <u>SECTION 12.21</u>, MAY ONLY BE INSTITUTED IN ANY FEDERAL
OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK AND
BORROWER HEREBY WAIVES ANY RIGHT TO BRING ANY CLAIM OR CAUSE
OF ACTION IN ANY OTHER JURISDICTION AND HEREBY AGREE NOT TO DO
SO.**

**Section 12.3    <u>Modification; Waiver in Writing</u>**. No modification, amendment,
extension, discharge, termination or waiver of any provision of this Agreement, or of any other
Loan Document, nor consent by Lender to any departure by any Borrower Party from the
Obligations, shall in any event be effective unless the same shall be in a writing signed by the
Person against whom enforcement is sought, and then such waiver or consent shall be effective
only in the specific instance, and for the purpose, for which given. Except as otherwise
expressly provided herein, no notice to, or demand on any Borrower Party shall entitle any
Borrower Party to any other or future notice or demand in the same, similar or other
circumstances.

**Section 12.4    <u>Delay Not a Waiver</u>**. Neither any failure nor any delay on the part
of Lender in insisting upon strict performance or compliance of any term, condition, covenant or
agreement, or Lender's delay in exercising any right, power, remedy or privilege hereunder, or
under the Notes or under any other Loan Document, or any other instrument given as security
therefor, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise
thereof preclude any other future exercise, or the exercise of any other right, power, remedy or
privilege. In particular, and not by way of limitation, by accepting payment after the due date of
any amount payable under this Agreement, or any other Loan Document, Lender shall not be
deemed to have waived any right either to require prompt payment when due of all other
amounts due under this Agreement, or the other Loan Documents, or to declare a default for
failure to effect prompt payment of any such other amount.

**Section 12.5    Notices**.  All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing (including by facsimile) and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (c) by facsimile (with a copy sent contemporaneously by certified or registered United States mail, postage prepaid) answer back acknowledged), addressed as follows:

If to Borrower:

250 East Borrower, LLC
216 East 49th Street, 5th Floor
New York, New York 10017
Attention:  Alexander Gurevich
Telephone:  212-829-9200
Facsimile:  212-829-9838

with a copy to:

Janoff & Gurevich, LLP
216 East 49th Street, 5th Floor
New York, New York 10017
Attention:
Telephone:
Facsimile:

and

Simon Singer
494 8th Avenue, 21st Floor
New York, New York 10001
Telephone:
Facsimile:

If to Lender:

Lehman Brothers Holdings Inc.
399 Park Avenue
8th Floor
New York, New York  10022
Attention:
Telephone:
Facsimile:
MTS Nos.:

with copies to:

Lehman Brothers Holdings Inc.
399 Park Avenue
8th Floor
New York, New York  10022
Attention:  David Broderick
Telephone:  (212) 526-2453
Facsimile:  (646) 758-5311
MTS No.:

and

Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166
Attention:  Andrew Levy, Esq.
Telephone:  (212) 351-4037
Facsimile:  (212) 351-____

[with a copy to
Servicer:                 TriMont Real Estate Advisors
                          Monarch Tower
                          3424 Peachtree Road NE
                          Suite 2200
                          Atlanta, Georgia  30326
                          Attention:  J. Gregory Winchester
                          Telephone:  (404) 420-5600
                          Facsimile:  (404) 420-5610
                          MTS No.:
                          Asset Nos.]

or at such other address and Person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section.  A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; in the case of expedited prepaid delivery, upon the first attempted delivery on a Business Day, in the case of facsimile, upon completion of transmission (which is confirmed by telephone or by a statement generated by the transmitting machine) with receipt acknowledged by the recipient thereof.

**Section 12.6   Headings**.  The Article and/or Section headings and the Table of Contents in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.  "Section" refers to the entire Section and not to any particular subsection, paragraph or other subdivision.  Reference to days for performance shall mean calendar days unless Business Days are expressly indicated.

**Section 12.7   Severability**.  If any provision or obligation under this Agreement and the other Loan Documents shall be determined by a court of competent jurisdiction to be

77

invalid, illegal or unenforceable, that provision shall be deemed severed from the Loan
Documents and the validity, legality and enforceability of the remaining provisions or
obligations shall remain in full force as though the invalid, illegal, or unenforceable provision
had never been a part of the Loan Documents.

       **Section 12.8    Preferences**.  Subject to the terms of the Lockbox Agreement with
respect to the application of funds in the Lockbox Account prior to the occurrence of an Event of
Default, Lender shall have the continuing and exclusive right to apply or reverse and reapply any
and all payments by any of the Borrower Parties to any portion of the Obligations.  To the extent
any of the Borrower Parties makes a payment or payments to Lender, which payment or
proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or
preferential, set aside or required to be repaid to a trustee, receiver or any other party under any
Bankruptcy Law, state or federal law, common law or equitable cause, then, to the extent of such
payment or proceeds received, the Obligations or part thereof intended to be satisfied shall be
revived and continue in full force and effect, as if such payment or proceeds had not been
received by Lender.

       **Section 12.9    Expenses**.  Borrower covenants and agrees to pay to Lender upon
receipt of written notice from Lender all reasonable costs and expenses (including reasonable
attorneys' fees and disbursements) incurred by Lender in connection with (i) the preparation,
negotiation, execution and delivery of this Agreement and the other Loan Documents and the
consummation of the transactions contemplated hereby and thereby and all the costs of
furnishing all opinions by counsel for the Borrower Parties (including any opinions requested by
Lender as to any legal matters arising under this Agreement or the other Loan Documents with
respect to the Property); (ii) the ongoing performance of and compliance with the respective
agreements and covenants of the Borrower Parties contained in this Agreement and the other
Loan Documents; (iii) Lender's ongoing performance and compliance with all agreements and
conditions contained in this Agreement and the other Loan Documents, including Lender's
administration and servicing of the Loan; (iv) the negotiation, preparation, execution, delivery
and administration of any consents, amendments, waivers or other modifications to this
Agreement and the other Loan Documents and any other documents or matters requested by
Lender; (v) securing compliance with any requests made by any Borrower Party pursuant to any
provision of any of the Loan Documents; (vi) the filing and recording of the Loan Documents,
title insurance and reasonable fees and expenses of counsel for providing to Lender all required
legal opinions, and other similar expenses incurred in creating and perfecting the Liens in favor
of Lender pursuant to this Agreement and the other Loan Documents; (vii) enforcing or
preserving any rights, in response to third party claims or the prosecuting or defending of any
action or proceeding or other litigation, in each case against, under or affecting any Borrower
Party, this Agreement, the other Loan Documents, the Property, or any other security given for
the Loan; (viii) costs incurred by Lender in the review of easements, lot line agreements or
similar matters, the review and approval of or consent to Leases and the negotiation of
subordination, non-disturbance and attornment agreements, and other similar items required by
Borrower in connection with Borrower's use and enjoyment of the Property; (ix) costs incurred
by Lender in responding to any subpoena or participating in, observing or preparing for any
deposition or other legal or quasi-legal process; (x) the amounts described in Section 7.4; (ix)
appraisal fees (whether or not the appraiser is retained by Lender or Borrower); (x) fees and
charges for surveys and Engineering Reports (as defined in the Building Loan Agreement); (xi)