# **EXHIBIT B**
## **(Project Loan Agreement)**

US_ACTIVE:\44020870\4\58399.0003

# PROJECT LOAN AGREEMENT

## Dated:  as of December 29th, 2006

by and between

### 250 EAST BORROWER, LLC
216 East 49th Street, 5th Floor
New York, New York 10017

and

### LEHMAN BROTHERS HOLDINGS INC.
399 Park Avenue, 8th Floor
New York, New York   10022

## LOCATION OF MORTGAGED PROPERTY

| | |
|---|---|
| Street Address: | 250 East 49th Street |
| City of | New York |
| County of | New York |
| State of | New York |
| Block: | 1322, |
| Lot: | 27; Lot 28; Lot 29; Lot 127; Lot 128; Lot 129 |

After filing, please return to:

Gibson Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, New York 10166
Attn:  Andrew Levy, Esq.

Article 1      INCORPORATION OF RECITALS AND EXHIBITS .......................................... 2

    Section 1.1      Incorporation of Recitals........................................................................ 2

    Section 1.2      Incorporation of Exhibits and Schedules ............................................. 2

Article 2      DEFINITIONS.............................................................................................. 2

    Section 2.1      Defined Terms ........................................................................................ 2

    Section 2.2      Use of Defined Terms............................................................................ 4

    Section 2.3      Use of Recital, Article, Section and Exhibit References ..................... 5

Article 3      PROJECT LOAN............................................................................................ 5

    Section 3.1      Agreement to Borrow and Lend ............................................................ 5

Article 4      GENERAL REQUIREMENTS PRECEDENT TO PROJECT LOAN
              OPENING.................................................................................................. 5

    Section 4.1      Requirements Precedent to Opening of the Project Loan.................... 5

Article 5      CONSTRUCTION REQUIREMENTS PRECEDENT TO PROJECT
              LOAN OPENING...................................................................................... 7

    Section 5.1      Required Documents.............................................................................. 7

    Section 5.2      Additional Documents Required Prior to Project Loan Opening
               Deadline ................................................................................................. 8

    Section 5.3      Lender's Verification of Contracts........................................................ 9

Article 6      PROJECT LOAN BUDGET AND CONTINGENCY .......................................... 9

    Section 6.1      Project Loan Budget .............................................................................. 9

    Section 6.2      Budget Line Items.................................................................................. 9

    Section 6.3      Reallocation of Contingency............................................................... 10

    Section 6.4      Reallocation Between Budget Line Items........................................... 11

Article 7      LOAN BALANCING .................................................................................. 11

    Section 7.1      Loan to Be In Balance.......................................................................... 11

    Section 7.2      Lender's Estimate of Cost of Construction ........................................ 12

    Section 7.3      Loan Not In Balance ............................................................................ 12

Article 8      GENERAL PROVISIONS REGARDING ADVANCES ................................... 13

    Section 8.1      General Conditions to Advances ......................................................... 13

    Section 8.2      Timing of Advances............................................................................. 14

    Section 8.3      Optional Method for Payment of Interest .......................................... 14

    Section 8.4      No Reborrowing.................................................................................... 15

    Section 8.5      Advances into an Escrow..................................................................... 15

# TABLE OF CONTENTS
## (continued)

Page

Section 8.6    Closing of the Hotel ........................................................................ 16

Article 9    CONSTRUCTION REQUIREMENTS WITH RESPECT TO
ADVANCES ............................................................................... 16

Section 9.1    Applicability ...................................................................... 16

Section 9.2    Documents to be Furnished ................................................ 16

Section 9.3    Lender's Right to Employ the Consultant ........................... 17

Section 9.4    Retainages ........................................................................ 18

Section 9.5    Payments Directly to Contractors and Subcontractors ...................... 18

Section 9.6    Distinction Between Various Retainages............................. 19

Section 9.7    Disbursements for Tenant Work ......................................... 19

Section 9.8    No Advances for Off Site Materials .................................... 19

Article 10    REQUIREMENTS FOR FINAL ADVANCE................................... 19

Section 10.1    Conditions to Final Advance ............................................. 19

Section 10.2    Outside Date for Final Advance ........................................ 21

Article 11    BORROWER'S AGREEMENTS ............................................. 21

Section 11.1    Specific Covenants of Borrower........................................ 21

Article 12    events of DEFAULT AND REMEDIES ..................................... 25

Section 12.1    Events of Default and Remedies......................................... 25

Section 12.2    Non-Waiver of Remedies .................................................. 25

Article 13    GENERAL PROVISIONS .................................................... 26

Section 13.1    Captions .......................................................................... 26

Section 13.2    Notices ............................................................................ 26

Section 13.3    Entire Agreement; Modification, Waiver ........................... 27

Section 13.4    Governing Law ................................................................ 28

Section 13.5    Acquiescence Not to Constitute Waiver of Lender's
Requirements ................................................................... 28

Section 13.6    Disclaimer by Lender........................................................ 28

Section 13.7    Right of Lender to Make Advances to Cure Borrower's
Defaults ........................................................................... 29

Section 13.8    Definitions Include Amendments ...................................... 29

Section 13.9    Time Is of the Essence ...................................................... 30

Section 13.10    Execution in Counterparts................................................. 30

Section 13.11    Waiver of Punitive or Consequential Damages................... 30

## TABLE OF CONTENTS
### (continued)

| | | Page |
|---|---|---|
| Section 13.12 | Claims Against Lender | 30 |
| Section 13.13 | Jurisdiction: Service of Process | 30 |
| Section 13.14 | Severability | 31 |
| Section 13.15 | Waiver of Jury Trial | 31 |
| Section 13.16 | Waiver of Foreclosure Defense | 31 |

EXECUTION COPY

## PROJECT LOAN AGREEMENT

THIS PROJECT LOAN AGREEMENT (this "Agreement") is made as of December 29th, 2006, by and between 250 EAST BORROWER, LLC, a Delaware limited liability company, having an office at c/o 216 East 49th Street, 5th Floor, New York, New York 10017 ("Borrower"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, individually and as lead arranger and administrative agent for itself and certain co-lenders, having an office at 399 Park Avenue, 8th Floor, New York, New York 10022 (collectively, together with its successors and assigns, referred to herein as "Lender").

### RECITALS

A.      Borrower acquired certain real property located at 250 East 49th Street, New York, New York, the legal description of which is set forth in Exhibit A (the "Land"). The Land and all related improvements and facilities (including the Improvements), now or hereafter existing, whether above or below ground/street level, together with all rights, privileges, easements, hereditaments and appurtenances thereunto relating or appertaining, and all fixtures and equipment required for, or otherwise intended for use in connection with, the operation thereof, are collectively referred to herein as the "Project".

B.      The Land is presently vacant and will be improved with multi-family residential and commercial condominium apartment complex consisting of approximately 7,139 net sellable square feet of retail condominium unit(s) on the first floor and approximately 8,089 net sellable square feet of retail or commercial space on the second floor (and approximately 80,860 net sellable square feet of residential condominium units on the remaining floors (the "Improvements") and the Borrower intends to effectuate the Conversion (as such term is defined in the Credit Agreement).

C.      Borrower has applied to Lender for a loan which consists of (i) an acquisition loan of $36,374,382.14 which was funded in order to finance the acquisition of the Project (the "Acquisition Loan"), (ii) a project loan of up to $3,050,917 (the "Project Loan") to, among other things, finance certain other costs, and (iii) subject to the terms of the Credit Agreement (as hereinafter defined), a building loan of up to an amount to be determined by Lender to finance, among other things, finance certain construction and development costs associated with the Project (the "Building Loan"; the Acquisition Loan, the Building Loan and the Project Loan are sometimes collectively referred to herein as the "Loan").

D.      To evidence the Project Loan, Borrower has executed and delivered in favor of Lender a note of even date herewith in the maximum principal amount of $3,050,917 (as amended, restated, supplemented or otherwise modified from time to time, the "Project Loan Note").

E.      The Project Loan shall be advanced in accordance with this Agreement and that certain Master Credit Agreement dated December 29, 2006 between Borrower and Lender (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement").

F.      To secure the Project Loan Note, Borrower has granted for the benefit of Lender, inter alia, (i) the Project Loan Mortgage and Security Agreement of even date herewith encumbering the Project (as amended, restated, supplemented or otherwise modified from time to time, the "Project Loan Mortgage") and (ii) the Assignment of Rents and Leases dated December 29, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Assignment of Rents and Leases").

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## ARTICLE 1

## INCORPORATION OF RECITALS AND EXHIBITS

Section 1.1    Incorporation of Recitals.  The foregoing Recitals are made a part of this Agreement.

Section 1.2    Incorporation of Exhibits and Schedules.  All Exhibits and Schedules hereto (whether or not listed in the Table of Contents) are incorporated herein and expressly made a part hereof.

## ARTICLE 2

## DEFINITIONS

Section 2.1    Defined Terms.  All capitalized terms not defined herein shall have the meaning assigned to such terms in the Credit Agreement.  In addition to the other terms defined herein, the following terms shall have the meanings set forth in this Article.  References to documents and other materials shall include those documents and materials as they may be revised, amended and modified, from time to time, with the prior written approval of Lender.

"Acquisition and Pre-Development Budget" shall mean a budget certain other amounts to be expended in connection with the Project, including, without limitation, amounts required to pay interest on the Loan, which budget sets forth cost estimates for budgeted construction and non-construction categories, and specifies the Soft Costs required for such work, as such budget may be amended, modified or supplemented from time to time in accordance with the terms and conditions of this Agreement.

"Agreement" shall mean this Project Loan Agreement, as originally executed and as the same may hereafter be supplemented, amended or restated from time to time in writing.

"AIA" shall mean the American Institute of Architects.

"Architect" shall mean the architect retained by Borrower and approved by Lender.

"Architect's Contract" shall mean the architect's agreement between Borrower and Architect in form and substance acceptable to Lender for all work to be performed by Architect pursuant to the Plans and Specifications

2

"Bond(s)" shall mean with respect to any Major Construction Contract (including, without limitation, the General Contractor's Agreement unless otherwise waived by Lender), performance and labor and material payment bonds in the form approved by AIA and identified as form AIA No. A-312 or another form reasonably satisfactory to Lender containing a dual obligee rider, in amounts acceptable to Lender and containing any modifications required by Lender, issued by a surety company licensed to do business in the State of New York and acceptable to Lender as surety, and with Lender, as obligee; and with respect to any other matter to be bonded, a bond in form and content reasonably acceptable to Lender, issued by a surety company licensed to do business in the State of New York and acceptable to Lender as surety, and in an amount acceptable to Lender in its sole discretion.

"Project Loan Deliveries" means (i) all of the items listed in items (a) through (p) of Section 5.1, (ii) an updated report from the Consultant containing an analysis of the final Acquisition and Pre-Development Budget.

"Building Loan Opening Date" shall have the meaning set forth in the Credit Agreement.

"Consultant" shall mean the construction consultant retained by Lender.

"Contingency" shall mean the Project Loan Contingency and the Project Loan Contingency.

"Cost of Improvement" shall have the meaning prescribed to such term in the Lien Law.

"Cost Savings" means the aggregate amount, if any, by which the amount actually incurred or, in the sole opinion of the Lender, anticipated to be incurred, in a Budget Line Item of the Building Loan Budget is or will be, as the case may be, less than the maximum amount established for such Budget Line Item in the Building Loan Budget.

"Deficiency Deposit" shall have the meaning set forth in Section 7.3(a).

"Excusable Delay" shall mean any delay in the Construction of the Improvements in accordance with the Plans and Specifications resulting from acts of God, fire, earthquake, hurricane, flood, explosion, action of the elements, war, invasion, insurrection, riot, mob violence, sabotage, malicious mischief or labor strikes, not within Borrower's reasonable control, (x) with respect to which Lender shall have been provided with written notice of the occurrence thereof within five (5) days after Borrower obtaining knowledge thereof and (y) which are supported by such evidence as Lender shall reasonably request.

"Final Advance" shall mean the last $50,000 of the Project Loan to be advanced by Lender hereunder.

"General Contractor" shall mean the general contractor retained by Borrower and approved by Lender.

"General Contractor's Agreement" shall mean a general construction contract acceptable to Lender with a guaranteed maximum price for all work to be performed pursuant to the Plans and Specifications with the General Contractor.

"Hard Costs" shall mean the aggregate costs of all labor, materials, equipment, and fixtures necessary for completion of the construction of the Project, as more particularly set forth in the Building Loan budget approved by Lender and expenses in respect of supplying goods, services, materials and labor for any such construction work.

"In Balance" shall have the meaning set forth in Section 7.1(a).

"Lender's Estimate of the Cost" shall have the meaning set forth in Section 7.2.

"Lien Law" shall mean the Lien Law of the State of New York, as amended from time to time.

"Major Construction Contract" shall mean any construction contract between Borrower (or the General Contractor related to the Project) and any contractor, subcontractor or material supplier, which requires Borrower or the General Contractor to pay, or is anticipated to require Borrower or the General Contractor to pay, fees, charges and other expenses totaling more than $100,000, including without limitation, any construction contracts with respect to the superstructure of the Project, the curtain wall, plumbing and elevators.

"Material Adverse Effect" shall have the meaning set forth in the Credit Agreement.

"Minimum Standards" shall mean the "Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys," jointly established and adopted by the American Land Title Association and the American Congress on Surveying and Mapping in 1997.

"Minor Construction Contract" shall mean any construction contract between Borrower and any contractor, subcontractor or material supplier, which requires Borrower (or the General Contractor) to pay, or is anticipated to require Borrower to pay, fees, charges and other expenses totaling less than $100,000 pursuant to any such contract, provided that the fees, charges and other expenses payable under all such contracts which Lender has not otherwise approved does not exceed $500,000 in the aggregate.

"Outside Date" shall have the meaning set forth in Section 10.2.

"Project Loan Contingency" shall mean the Budget Line Item designated as such in the Project Loan Budget.

"Project Loan Opening Conditions" shall have the meaning set forth in Section 4.1.

"Project Loan Title Policy" shall have the meaning set forth in Section 4.1(c)(iii)(C).

"Request for Advance" shall mean a written Request for Advance in the form of Exhibit E annexed hereto executed by Borrower to Lender specifying by name, current address, and amount of all parties to whom Borrower is obligated for all Soft Costs, requesting an Advance

for the payment of such items, and accompanied by Certification of Borrower as to Soft Costs (in the form of Exhibit I annexed hereto) and such schedules, certificates, affidavits, releases, conditional waivers, statements, invoices, bills, and other documents referred to in the Request for Advance or as Lender may reasonably request.

"Soft Costs" shall mean interest payable on the principal amount of the Advances made under the Project Loan Note and all other costs in the Acquisition and Pre-Development Budget, excluding Hard Costs, which constitute a Cost of Improvement.

Section 2.2   Use of Defined Terms.  Defined terms may be used in the singular or the plural.  When used in the singular preceded by "all," "an" or "any", such term shall be taken to indicate one or more members of the relevant class.  When used in the plural, such term shall be taken to indicate all members of the relevant class.

Section 2.3   Use of Recital, Article, Section and Exhibit References.  The use herein of references to Recitals, Articles, Sections, Schedules and Exhibits shall refer to the referenced Recital, Article or Section in, or Exhibit or Schedule annexed to, this Agreement.

## ARTICLE 3

## PROJECT LOAN

Section 3.1   Agreement to Borrow and Lend.  Subject to all of the terms, provisions and conditions set forth in the Credit Agreement, this Agreement and the other Project Loan Documents and provided no Default or Event of Default exists, Lender has agreed to make Advances of the Project Loan from time to time during the period from the date hereof to the Outside Date and Borrower agrees to accept the Project Loan.  On the Building Loan Opening Date and on the date of each Advance made under the Project Loan Note, the maximum principal amount of the Project Loan (the "Project Loan Amount") shall not exceed the amount of $3,050,917.  Notwithstanding anything to the contrary contained herein or in any other Loan Document, no Advances of the Project Loan shall be made in respect of any amount that constitutes a Cost of Improvement.

## ARTICLE 4

## GENERAL REQUIREMENTS PRECEDENT TO PROJECT LOAN OPENING

Section 4.1   Requirements Precedent to Opening of the Project Loan.  Provided that all of the conditions set forth in Section 4.1 of the Project Loan Agreement have been satisfied, the obligation of Lender to make any Advance under the Project Loan shall be subject to the conditions set forth in this Section 4.1, the conditions set forth in Article 5 hereof and the conditions set forth in Section 2.1.1(c) of the Credit Agreement (collectively, the "**Project Loan Opening Conditions**") on or prior to the Building Loan Opening Deadline:

(a) No material Default or Event of Default by Borrower or any Guarantor shall exist under this Agreement, the Credit Agreement or any of the other Loan Documents, beyond any applicable notice and cure periods.

(b) Borrower shall have delivered or caused to be delivered to Lender all of the Project Loan Documents, duly and properly executed by Borrower and each Guarantor, as applicable, and Borrower shall have paid all amounts required to be paid by Borrower on or before the date hereof pursuant to Article 6 of the Credit Agreement.

(c) Borrower shall have furnished to Lender the following:

(i) An NY ALTA (1992) loan policy of title insurance (the "Project Loan Title Policy") in the amount of the Project Loan Amount, together with a pending disbursements clause, issued by the Title Insurance Company to Lender, insuring the Project Loan Mortgage as a valid and subsisting second mortgage lien on the Land, the Improvements, and all appurtenant easements as required by Lender, subject only to the Permitted Exceptions. The Project Loan Title Policy shall be issued by the Title Insurance Company. All reinsurance shall be evidenced by a direct access reinsurance agreement in form and content acceptable to Lender in all respects. The Project Loan Title Policy shall contain such affirmative insurance and endorsements as Lender shall reasonably require.

(ii) Opinions of counsel to Borrower and Guarantors, each reasonably acceptable to Lender.

(iii) A final Acquisition and Pre-Development Budget for the Advances to be made under the Project Loan Note.

(iv) (A) Certificate of Borrower, stating no proceedings exist affecting Borrower that could have a Material Adverse Effect on Borrower, the Loan or the Project, and (B) a certificate from the Guarantors, to the effect that no proceedings exist affecting any Guarantor which could have a Material Adverse Effect on such Guarantor, in each case, which have not been disclosed to Lender in writing.

(v) Borrower and the Guarantors shall have furnished Lender with a certification and, if requested by Lender, evidence satisfactory to Lender that: (A) no condemnation of any portion of the Project, or action which could result in a relocation of any roadways abutting any portion of the Project or the denial of access to any portion of the Project, which could materially affect Lender's security or the operation of the Project, has commenced or is contemplated by any Governmental Authority, and no casualty has occurred and remains unrestored which affects all or any material portion of the Project; and (B) no event has occurred and is continuing that would constitute an Event of Default under the provisions of Section 7.1(a)(vi) of the Credit Agreement.

(vi) The General Contractor, Architect, engineer and construction manager, if any, shall have duly executed and delivered to Lender a consent to the assignment of the General Contractor's Agreement, Architect's Contract, engineer's contract and construction manager's contract, in form and substance reasonably satisfactory to Lender, and Lender shall have received the original or a fully executed counterpart thereof.

(vii)    Lender shall have received an Officer's Certificate and other evidence satisfactory to Lender in its discretion (including invoices, cancelled checks, etc.) of capital contributions by the Principals and all other direct or indirect owners of Borrower in an aggregate amount which when added to the Initial Equity Contribution, equals not less than ten percent (10%) of the total capitalization of the Project, including all fees paid to any Affiliates of Borrower (the "**Equity Contribution**"), it being agreed and understood that no funds loaned to or borrowed by any Borrower Party shall count towards the Equity Contribution.

(viii)    Lender shall have received an Officer's Certificate and other evidence satisfactory to Lender in its discretion of Borrower's acquisition of the Air Rights and 421-a Certificates (including the originals certificates or other documents evidencing the Air Rights and 421-a Certificates, if delivered to Borrower, or copies thereof, if such certificates or other documents have been filed with the New York City Department of Housing Preservation and Development).

(d)    In consultation with Borrower, Lender shall have determined, in its reasonable discretion, the Required Units, the Outside Conversion Date and the Minimum Sales Price and Applicable Release Price for each Unit.

## ARTICLE 5

## CONSTRUCTION REQUIREMENTS PRECEDENT TO PROJECT LOAN OPENING

Section 5.1    Required Documents.  Borrower has caused the following to be furnished to Lender on or before the initial advance of the Project Loan:

(a)  With respect to the Assignment of Agreements (or any other assignments included in the Loan Documents), consents thereto from the General Contractor, such contractors and material suppliers as Lender may require, the Architect, the engineer, any construction manager and all other parties under the contracts assigned as Lender may designate, other than parties to Minor Construction Contracts, together with agreements by such parties, for the benefit of Lender, to perform their respective contracts upon the occurrence of an Event of Default under this Agreement or any of the other Loan Documents.

(b) Intentionally omitted.

(c) Intentionally omitted;

(d) Intentionally omitted;

(e) Such other reports and certifications concerning the Soft Costs as the Consultant shall reasonably require.

7

Following receipt of all of the items listed in (a) – (e) in form and substance satisfactory to Lender and an updated report satisfactory to Lender in its sole but reasonable discretion from the Consultant, Lender shall promptly advise Borrower whether the Project Loan Opening Conditions have been satisfied and whether Lender will open the Project Loan or provide Borrower with a new building loan to the extent the Plans and Specification are not consistent with the Approved Business Plan.

Section 5.2    Lender's Verification of Contracts. Prior to the Building Loan Opening Date, and from time to time thereafter, Lender may forward to all contractors, material suppliers, architects, engineers and other parties involved in the construction of the Project, a contract verification to ascertain the correctness of the amount of the contract for each such party. In the event of a discrepancy between the amounts as shown by the executed copies of the contracts and the verification of contract forms, Borrower shall, at Lender's request, cause such discrepancies to be eliminated to Lender's satisfaction.

## ARTICLE 6

## ACQUISITION AND PRE-DEVELOPMENT BUDGET AND CONTINGENCY

Section 6.1    Acquisition and Pre-Development Budget. Borrower has submitted to Lender the Acquisition and Pre-Development Budget in accordance with the provisions of the Credit Agreement.

Section 6.2    Budget Line Items. Borrower agrees that each Advance made under the Project Loan Note shall be used only for the Budget Line Item(s) for which such Advance was made. Following the occurrence of an Event of Default beyond any applicable notice and cure periods, upon advising Borrower, Lender may, at any time and from time to time, disburse proceeds of the Loan for Budget Line Items or for any other purposes as Lender may determine in accordance with Legal Requirements, either by direct payment of such items or by reimbursement to Borrower for payments actually made by Borrower for such items. Lender shall not be obligated to make an Advance for any category of costs set forth as a Budget Line Item if that Advance, together with all Advances previously made for such category of costs, would exceed the amount set forth for such category in such Budget Line Item, as the same may be adjusted as provided herein in accordance with Section 6.3 hereof.

Section 6.3    Reallocation of Contingency.

(a) The Acquisition and Pre-Development Budget contains a Budget Line Item for the Project Loan Contingency, both of which represent amounts necessary to provide assurances to Borrower and Lender that additional funds are available to be used as provided herein and in the Project Loan Agreement if additional costs and expenses are incurred or additional interest accrues on the Loan or unanticipated events or problems arise in connection with any construction or the sale, leasing and development of the Project.

(b) Borrower shall have the right, at any time and from time to time (but not more often than once per calendar month, and then only in connection with a Request for Advance),

8

with the prior consent of Lender, which consent may be granted or withheld in Lender's discretion, to reallocate all or portions of the Project Loan Contingency to one or more specific Budget Line Items in the Acquisition and Pre-Development Budget, including amounts which may be necessary to cause a Budget Line Item in the Acquisition and Pre-Development Budget to be In Balance (as hereinafter defined), or to a new Budget Line Item on the Acquisition and Pre-Development Budget to fund other third-party costs and expenses incurred or to be incurred in connection with the development of the Project which would not constitute a Cost of Improvement and for which there is no existing Budget Line Item in the Acquisition and Pre-Development Budget. Under no circumstances shall Borrower have the right to reallocate any portion of the Project Loan Contingency to the Project Loan. If Lender shall not consent to Borrower's proposed reallocation of a portion of the Project Loan Contingency and if Borrower is therefore unable to cause a Budget Line Item in the Acquisition and Pre-Development Budget to be In Balance, and Borrower is unable to reallocate a portion of the Project Loan Contingency thereto pursuant to Section 6.3(c), or Borrower elects not to do so, and if Borrower is unable to demonstrate Cost Savings in other Budget Line Items, provided that the reallocation of Cost Savings attributable to Budget Line Items shall be permitted at Lender's discretion, then Borrower acknowledges that it shall be required to make a Deficiency Deposit, to the extent required in Article 7, even though funds remain in the Project Loan Contingency.

(c) Borrower may, with the prior consent of Lender, which may be granted or withheld in Lender's discretion, reallocate amounts from the Project Loan Contingency or any other Project Loan Budget Line Items to the Project Loan. In order for any such reallocation to be effective, Borrower shall execute and exchange with Lender a splitter of the Project Loan Note and Project Loan Mortgage, in form and substance satisfactory to Lender, and such amendments to such other Loan Documents as Lender shall reasonably require and Borrower shall execute and deliver to Lender such additional documents as Lender or the Title Insurance Company shall reasonably require in connection therewith, including but not limited to an amendment to this Agreement. Borrower, in such circumstances, shall also provide such endorsements to existing title insurance policies or such new title insurance policies as Lender shall reasonably require and Borrower shall pay all premiums, fees and charges in connection therewith or in connection with the recording or filing of any documents executed in connection with such reallocation which are to be recorded or filed.

(d) In addition to the permitted reallocations of the Project Loan Contingency described above, after the occurrence of an Event of Default and while such Event of Default is continuing (or as otherwise provided in Section 8.3 if monies in the Budget Line Item for interest have been depleted or in connection with the provisions of Section 13.7 hereof), Borrower agrees that Lender may, at any time and from time to time without notice, advance the Project Loan Contingency for any purpose as Lender may determine (or to the Budget Line Item for interest, as applicable). Any advance of the Project Loan Contingency made by Lender under this Section 6.3(d) at a time when no Event of Default exists shall be made only to the Budget Line Item for interest, and shall not be made for any other purpose.

(e) No interest shall accrue upon the Project Loan Contingency until disbursement (but not reallocation) thereof, whereupon such disbursement(s) shall be deemed to be an Advance.

Section 6.4    <u>Reallocation Between Budget Line Items</u>. If Borrower shall demonstrate to Lender's satisfaction any Cost Savings in a Budget Line Item in the Project Loan Budget, then Lender shall reallocate any such Cost Savings to another Budget Line Item in the Project Loan Budget as may reasonably be requested by Borrower; provided, however, that no reallocation shall be permitted from the Budget Line Item for interest under the Project Loan and, except as provided in Section 6.3(b), no reallocation shall be permitted from the Project Loan Contingency. If any amounts attributable to Cost Savings are reallocated to the Project Loan Contingency from Budget Line Items, such amounts may thereafter be reallocated to other Budget Line Items with Lender's prior consent in accordance with Section 6.3(b). In connection with any reallocation of the Project Loan Contingency, Borrower shall execute such documents as Lender may reasonably require, including an amendment to this Agreement.

## ARTICLE 7

## LOAN BALANCING

Section 7.1    <u>Loan to Be In Balance</u>.

(a) Anything contained in this Agreement to the contrary notwithstanding, it is expressly understood and agreed that each Budget Line Item in the Acquisition and Pre-Development Budget (other than the Project Loan Contingency) shall at all times be In Balance (as hereinafter defined). Each Budget Line Item in the Acquisition and Pre-Development Budget shall be deemed to be in balance ("<u>In Balance</u>") only at such time and from time to time as Lender may determine, in its sole judgment, that the amount remaining unfunded in such Budget Line Item (without taking into account any monies in the Project Loan Contingency, except as applied in accordance with Section 6.3) equals or exceeds (i) with respect to a Project Loan Budget Line Item, the amount necessary to pay for all work covered by such Budget Line Item which is done and not theretofore paid for or to be done in connection with the completion of such work (based on Lender's Estimate of the Cost for such Budget Line Item), and (ii) with respect to any other Budget Line Item in the Acquisition and Pre-Development Budget, all costs covered by such Budget Line Item for which Project Loan proceeds are to be disbursed which have been incurred and not theretofore paid for, or which are likely to be incurred in connection with such Budget Line Item.

(b) If Lender shall determine that any Budget Line Item in the Acquisition and Pre-Development Budget is not In Balance, Lender shall provide Borrower with such information regarding such determination as Borrower shall reasonably request.

Section 7.2    <u>Lender's Estimate of Cost</u>. Lender and Borrower agree that Lender has made (and from time to time after the date hereof Lender shall have the right to, and upon request of Borrower, shall, in good faith revise) an estimate of the cost of each Project Loan Budget Line Item in the Acquisition and Pre-Development Budget ("<u>Lender's Estimate of the Cost</u>"). Lender's Estimate of the Cost with respect to the Project Loan Budget Line Items in the Project Loan Budget on the Project Loan Opening Date has been made upon the basis of the executed contracts and purchase orders satisfactory to Lender or Lender's sole estimate of such costs, after consultation with the Consultant. After the date hereof, Lender's Estimate of the Cost with respect to the Project Loan Budget Line Items in the Project Loan Budget shall take into

account, contracts and purchase orders, other considerations which Lender, in its sole but good faith discretion, deems likely to have an impact upon the Soft Costs, the ability of parties to perform under and in accordance with the terms of their respective contracts and purchase orders. If there is an "identity of interest" between Borrower and any of Borrower's contractors or material suppliers, any contract between parties having such "identity of interest" shall be regarded solely as an estimate for the purpose of this Section 7.2. There shall be deemed to be an "identity of interest" if Borrower or any Affiliate of Borrower shall act as a contractor or material supplier in its own name or through a separate entity in which it or any entity related to it has a substantial interest and/or control.

Section 7.3    Loan Not In Balance.

(a) Borrower agrees that if for any reason any Budget Line Item in the Acquisition and Pre-Development Budget at any time is not In Balance as determined in accordance with Section 7.1(a), regardless of how such condition may have been brought about (including without limitation, pursuant to the provisions of Section 13.7 hereof), Borrower shall, within ten (10) Business Days after written request by Lender (i) deposit with Lender an amount sufficient to cause (after taking into account any other action taken under this Section 7.3(a)) such Budget Line Item to be In Balance (a "Deficiency Deposit"), to be held in accordance with the applicable terms of this Agreement, which Deficiency Deposit shall be advanced in the same manner as the Loan, (ii) request a reallocation from the Project Loan Contingency to such Budget Line Item to bring the same into balance, to the extent such reallocation is permitted under Section 6.3(b), (iii) request a reallocation from the Project Loan Contingency or other Project Loan Budget Line item to such Project Loan Budget Line Item to bring the same into balance, to the extent such reallocation is permitted under Section 6.3(c) and under the Project Loan Agreement, or (iv) request a reallocation from another Project Loan Budget Line Item which is in surplus or in balance to such Project Loan Budget Line Item to bring the same into balance, to the extent such reallocation is permitted under Section 6.4.

(b) Lender shall not be obligated to make any Advance if, after making any of the reallocations permitted under Article 6, any individual Budget Line Item is not In Balance.

# ARTICLE 8

## GENERAL PROVISIONS REGARDING ADVANCES

Section 8.1    General Conditions to Advances. No Advances of Project Loan proceeds shall be made by Lender until such time as each of the Project Loan Opening Conditions has been received and approved by Lender. Thereafter, subject to the provisions of Section 8.6 hereof, upon Borrower's compliance with and satisfaction of all conditions precedent to Advances set forth in this Article 8 and in Article 9 unless otherwise waived by Lender in its sole discretion, and subject to the restrictions on Advances set forth in this Article 8, Borrower shall be entitled to receive further Advances of the proceeds of the Project Loan, provided that:

(a) Borrower delivers to Lender a Request for Advance and all supporting certificates and other documentation required under this Agreement or otherwise reasonably requested by Lender.

11

(b) At the time of each Request for Advance, Borrower shall have delivered to Lender a certification that, to Borrower's knowledge, no Default or Event of Default exists under this Agreement or any other Loan Document.

(c) Lender shall not, as of the date of such Request for Advance, have given Borrower notice of the existence of a Default or Event of Default which, in Lender's sole judgment, is material and has not been cured to Lender's satisfaction.

(d) Borrower shall have furnished or caused to be furnished to Lender a Datedown Endorsement to the Project Loan Title Policy dated the date of such requested Advance and showing the Project Loan Mortgage as a prior and paramount lien on the Project, subject only to (i) the Permitted Exceptions and (ii) any other liens or encumbrances consented to in writing by Lender.

(e) each Budget Line Item shall be In Balance as required by Section 7.1.

(f) Borrower shall have delivered a certification in form and substance satisfactory to Lender remaking and reaffirming, as of the then current requisition date, all of the representations and warranties of Borrower set forth in this Agreement, the Credit Agreement or any other Loan Document, and to the extent such representations or warranties are untrue or must be modified, disclosing to Lender the reasons the same are untrue, or the necessary modifications, provided that Borrower's right to obtain an Advance shall not be affected by any matter so disclosed unless such matter has caused Lender to deliver a notice of the type described in Section 8.1(c) (which notice may be given after the delivery of such certification) or an Event of Default shall exist with respect to such matter.

(g) At the time of each Request for Advance, Borrower shall have delivered to Lender evidence satisfactory to Lender in its discretion that all governmental approvals from the applicable Governmental Authority(ies) then required, if any, relating to such requisition have been obtained, together with copies of such governmental approvals.

(h) Advances for payment of Soft Costs shall not exceed the aggregate of (a) the costs set forth in , less (d) all prior Advances for Soft Costs.

Section 8.2    Timing of Advances.

(a) Upon satisfaction of all conditions to the making of an Advance described or referenced in this Agreement, Lender will, within ten (10) Business Days of Borrower's requisition therefor, advance to Borrower (or such other party as may be permitted hereunder) the amount of the Advance requisitioned (or if the conditions contained herein or therein to the making of an Advance have not been satisfied for the entire amount of an Advance, the portion thereof which may be advanced in accordance with the terms hereof).

(b) Notwithstanding anything to the contrary herein, (i) Lender shall have no obligation to make any Advances after the Maturity Date and (ii) Lender shall have no obligation to make more than one (1) Advance in each calendar month, other than Advances for interest and other amounts owing to Lender under this Agreement, real estate taxes, and Insurance Premiums which may be advanced separately from other Advances when such amounts are due.

12

Section 8.3    Optional Method for Payment of Interest. Included as a Budget Line Item in the Acquisition and Pre-Development Budget is a line item for interest on the Project Loan (the "Project Loan Interest Reserve"). Provided no Default or Event of Default exists beyond any applicable notice and cure periods, and subject to the provisions of this Section 8.3, disbursements (each, an "Automatic Project Loan Interest Reserve Payment") shall be made on behalf of the Borrower to Lender on each Payment Date in accordance with the terms of the Credit Agreement and shall be made by a bookkeeping entry on Lender's records reflecting, as a disbursement under the Project Loan, the applicable amount funded from the Project Loan Interest Reserve. Any disbursements from the Project Loan Interest Reserve shall be deemed to have been paid to and received by Borrower and shall be added to the outstanding principal balance of the Project Loan and shall bear interest at the Applicable Interest Rate (as defined in the Project Loan Note). Interest at the Applicable Interest Rate will be charged on any disbursed portion of the Project Loan Interest Reserve as and when advanced, but interest will not be charged on the undisbursed portion of the Project Loan Interest Reserve. Borrower recognizes that the payment of interest by Automatic Project Loan Interest Reserve Payments is for its convenience and benefit. Lender shall have no obligation to fund any Automatic Project Loan Interest Reserve Payments so long as any Event of Default shall exist and be continuing under the Loan. If at any time or from time to time throughout the Loan Lender determines, in the exercise of its sole discretion, that there shall exist an insufficient amount in the Project Loan Interest Reserve for the Project Loan to fully fund any Automatic Project Loan Interest Reserve Payment that shall thereafter become due through the Maturity Date, and there are no Cost Savings in other Budget Line Items to be allocated to the Project Loan Interest Reserve, Borrower shall, within seven (7) Business Days after receipt of Lender's written notice to such effect, deposit with Lender such amount as shall be required by Lender to fully fund any such Automatic Project Loan Interest Reserve Payments and Lender shall credit such amounts to the Project Loan Interest Reserve line item in the Acquisition and Pre-Development Budget. Lender shall not be required to pay and Borrower shall not be entitled to receive interest on such amounts so deposited. Borrower's failure to make any such deposits in a timely manner shall be an Event of Default under the Loan. If at any time the Project Loan Interest Reserve shall become depleted, interest shall be payable on the relevant Payment Date in accordance with the terms of this Agreement and the Credit Agreement from funds other than the Project Loan or the Project Loan Interest Reserve. The Project Loan Interest Reserve shall be available only for the disbursement of the periodic payments of interest due to Lender on the Project Loan. Borrower shall have the right on any Payment Date to pay the interest owing on the Project Loan from funds other than the Loan. Any funds disbursed from the Project Loan Interest Reserve in the manner provided in this Section 8.3, shall have been deemed paid to and received by Borrower.

Section 8.4    No Reborrowing. If Borrower makes any voluntary or involuntary prepayment of the Loan at any time or from time to time, such prepaid amounts may not be reborrowed.

Section 8.5    Advances into an Escrow. If any monies are deposited by Lender into an escrow, the proceeds of the Loan so deposited shall be considered advanced to Borrower from the date of deposit into such escrow, and interest shall accrue on those proceeds from that date.

13

## ARTICLE 9

## CONSTRUCTION REQUIREMENTS WITH RESPECT TO ADVANCES

Section 9.1     Applicability.  The provisions of this Article 9 shall apply to all Advances of Project Loan proceeds.

Section 9.2     Documents to be Furnished.  As a condition precedent to each Advance of Project Loan proceeds, Borrower shall furnish or cause to be furnished to Lender the following documents covering such Advance, in form and substance reasonably satisfactory to Lender:

(a)  intentionally omitted.

(b)  all statements and forms required by the Title Insurance Company in order for it to issue the Project Loan Title Policy and any endorsements, certifications and affirmative coverages required under this Agreement, including a Datedown Endorsement covering the requested Advance, and all other statements and forms required for compliance with the Lien Law, together with such invoices, contracts and other supporting data as Lender may reasonably require;

(c)  a Request for Advance executed by Borrower with respect to such Advance and including a certification properly executed by Borrower with respect to each item in any Request for Advance that constitutes "Soft Costs" and each of the supporting documents listed as items (i) – (vi) of the definition of Request for Advance as may be required by Lender;

(d)  copies of any executed change orders in excess of $$50,000 made prior to the date of Borrower's requisition which have not been previously furnished to Lender or the Consultant;

(e)  copies of all construction contracts (including any subcontracts and purchase orders) executed by Borrower (or the General Contractor) with respect to the Soft Costs which have been executed since the later of (i) the Project Loan Opening Date and (ii) the last Request for Advance, but prior to the date of the applicable Request for Advance, and which have not previously been delivered to Lender or the Consultant, together with any Bonds required by Lender with respect thereto;

(f)  such other documentation as may be required by the Title Insurance Company if it is administering the Advances and which may be necessary to enable the Title Insurance Company to issue a Datedown Endorsement covering the requested Advance;

(g)  if any material dispute exists between or among Borrower, the General Contractor, or, to Borrower's knowledge, any other contractor, subcontractor and/or material supplier, a reasonably detailed written summary of such dispute;

(h)  evidence of such builder's risk or other insurance as is required under this Agreement or the Credit Agreement and not previously delivered to Lender;

(i) such other instruments, documents and information pertaining to the Advance as Lender may reasonably require;

(j) Borrower shall also furnish to Lender, from time to time, supplementary statements advising Lender of any material changes in the information covered by the statement from Borrower previously furnished pursuant to Section 5.1(c). If no such supplementary statement is furnished in connection with any Advance, Lender shall have the right to require Borrower to certify in writing that to Borrower's knowledge no material changes have occurred since the most recent statement previously furnished; and

(k) Borrower shall make available to Lender for inspection and copying at any time during normal business hours, upon advance notice, all lien waivers, sworn statements, invoices, certifications and other documentation supporting Borrower's request for Advances hereunder, relating to any Soft Costs and not otherwise required to be delivered to Lender under this Section 9.2.

If Borrower has failed to satisfy all of the conditions to the making of an Advance under this Agreement, but has satisfied the same with respect to a portion of the monies so requisitioned (e.g., Borrower has failed to deliver a lien waiver with respect to one contractor, but has delivered the same with respect to all other contracts covered by Borrower's Request for Advance), then Lender shall nonetheless advance to Borrower, in accordance with the remaining terms of this Agreement, all amounts requisitioned under Borrower's Request for Advance with respect to which all of the conditions to an Advance under this Agreement have been fully satisfied. With respect to any portion of an Advance for which Borrower has failed to satisfy all of the conditions to the making of an Advance under this Agreement, Borrower may, subject to Section 8.2(b), submit a new Request for Advance for funding of such amounts when the conditions to the making of such an Advance can be satisfied.

Section 9.3    Lender's Right to Employ the Consultant. Lender shall have the right to employ the Consultant to review the Requests for Advance, and all other matters related to any Soft Cost. All fees and expenses of the Consultant shall be borne by Borrower as a Project Loan expense to the extent the same does not constitute a Cost of Improvement, all as provided in Section 12.9 of the Credit Agreement .

Section 9.4    Intentionally Omitted.

Section 9.5    Payments Directly to Contractors and Subcontractors. Following and during the continuance of an Event of Default by Borrower, Lender may, in its sole discretion, make payments for the Soft Costs which Borrower has requisitioned to have Lender so pay, directly to any contractor, subcontractor, material supplier or any vendor of fixtures, equipment, furniture, furnishings or other property. Any such direct payments shall be for the account of Borrower. Nothing in this Section 9.5 shall prohibit Lender from making such payments.

Section 9.6    Intentionally Omitted.

Section 9.7    Intentionally Omitted.

15

## ARTICLE 10

## REQUIREMENTS FOR FINAL ADVANCE

Section 10.1   Conditions to Final Advance.  Lender will make a Final Advance with respect to the Soft Costs  when the following conditions have been complied with:

(a)  all requirements for the making of an Advance for Construction set forth in this Agreement shall have been satisfied and complied with; and

Section 10.2   Outside Date for Final Advance.  Notwithstanding any provision of this Agreement or any of the other Loan Documents to the contrary, Lender's obligation to make any Advance shall cease and terminate thirty (30) days prior to the Maturity Date (the "Outside Date"), after which date there will be no further Advances available to Borrower under the Loan.

## ARTICLE 11

## BORROWER'S AGREEMENTS

Section 11.1   Specific Covenants of Borrower.  Borrower further covenants to and agrees with Lender as follows:

(a)     Construction.  All work performed by Borrower in connection with Soft Costs will (i) be substantially completed in accordance with the development plan for the Project approved by Lender (subject to the occurrence of an Excusable Delay), and (ii) continue with diligence and continuity until completion.

(b) Borrower will use the Project Loan proceeds in accordance with the Acquisition and Pre-Development Budget.

(c) Intentionally Omitted.

(d) Intentionally omitted.

(e) Intentionally Omitted.

(f) Intentionally Omitted.

(g) Intentionally omitted.

(h) Mechanic's Liens and Contest Thereof.  Borrower will not suffer or permit any mechanic's lien to be filed or otherwise asserted against the Project, and will discharge the same, or cause the same to be discharged, by payment, bonding or otherwise by the earlier of sixty (60) days after receiving notice of the filing of such lien or the next funding date. Notwithstanding the foregoing, if a lien arises out of the acts or omissions of tenants or subtenants at the Project, Borrower shall promptly notify Lender in writing of each such lien and Borrower shall use reasonable efforts to cause the tenants or subtenants to remove the same; provided, however, that Borrower shall not be required to send any notice of default, declare an

16

event of default or otherwise take any enforcement action against such tenant or subtenant unless requested to do so by Lender in accordance with the following sentence. If at any time during the term of the Loan there are outstanding against the Project or any portion thereof mechanic's liens arising from acts of tenants or subtenants which singly or in the aggregate equal or exceed $50,000, Borrower shall, immediately upon the request of Lender, send notices of default and take such enforcement actions as are necessary under the circumstances to cause the discharge (by payment, bonding or otherwise) of such liens, provided that the tenants or subtenants, as the case may be, shall have the grace and/or cure periods set forth in their respective Leases to accomplish such discharge (by payment, bonding or otherwise). If at any time during the term of the Loan, there are outstanding against the Project or any portion thereof, mechanic's liens arising from acts of tenants or subtenants, as the case may be, which remain outstanding for sixty (60) days or more, Borrower shall notify Lender and, at Lender's direction, discharge the same, or cause the same to be discharged, by payment, bonding or otherwise, or Lender may advise Borrower in writing that it may have additional time within which to discharge such liens. The granting of an extension of time pursuant to this Section 11.1(g) and the number of days for such extension shall each be in Lender's sole discretion. Notwithstanding the foregoing, Borrower acknowledges that Lender shall not be required to make any Advances so long as any mechanic's liens are outstanding against the Project; provided, however, that Lender will make Advances notwithstanding the existence of mechanic's liens so long as the Title Insurance Company provides Lender with an endorsement to Lender's title policies insuring Lender against collection of any such mechanic's liens out of the Project, which endorsement must be acceptable to Lender in form and content in its sole discretion.

(i) <u>Settlement of Mechanic's Lien Claims</u>. If Borrower shall fail to discharge, or cause to be discharged, any mechanic's lien filed or otherwise asserted against the Project within the applicable time period specified in Section 11.1(g) hereof, Lender may, at its election (but shall not be obligated to) but not earlier than twenty (20) Business Days after it gives written notice to Borrower of its intention to do so, (i) procure the release and discharge of any such lien and any judgment or decree thereon, without inquiring into or investigating the amount, validity or enforceability of such lien, and (ii) effect any settlement or compromise of the same, and any amounts expended by Lender in connection therewith, including premiums paid or security furnished in connection with the issuance of any surety company bonds, shall be deemed to constitute protective advances evidenced by the Notes (even if the principal balance of the Notes plus the amount of such protective advances would then exceed the aggregate face amount of the Notes), payable on demand and secured by the Security Instruments and other Loan Documents.

(j) <u>Documents of Further Assurance</u>. Borrower shall, from time to time, upon Lender's request, execute, deliver, record and furnish such documents as Lender may deem necessary or desirable to perfect and maintain perfected as valid liens upon the Project, the liens granted by Borrower to Lender under the Security Instruments and the Assignments of Leases and Rents and the collateral assignments and other security interests under the other Loan Documents as contemplated by the Credit Agreement, this Agreement and the Project Loan Agreement. Each party hereto shall from time to time, upon the reasonable request from another party, execute and deliver such documents deemed necessary or desirable to correct any errors of a typographical nature or inconsistencies which may be contained in any of the Loan Documents or to consummate fully the transactions contemplated under the Credit Agreement, this Agreement and the Project Loan Agreement.

17

(k) <u>Furnishing Reports</u>.  Borrower shall provide to Lender, promptly after Borrower's receipt thereof, copies of all inspections, reports, test results and other material information received by Borrower from time to time from its employees, agents, representatives, architects, engineers and any other parties (including, without limitation, tenants) involved in the development of the Project and/or the development or operation of the Project, which relate in a material way to Borrower's ability to perform its obligations under the Loan Documents.

(l)     <u>Intentionally omitted</u>.

Section 11.2    <u>Specific Representations and Warranties of Borrower</u>.  Borrower further represents and warrants to Lender as of the date hereof and as of the date of any Advance of the Loan that:

(a)    Borrower has all necessary rights, Licenses, permits, authorizations, approvals, governmental and otherwise, and full power and authority to own the Property and carry on its business as now conducted.

(b)    Borrower has obtained all necessary Licenses (other than certificates of completion and certificates of occupancy), necessary for the construction and operation of the Property for its current uses and for the conduct of Borrower's business and each occupant's business and all such Licenses remain in full force and effect.  None of the foregoing is subject to revocation, suspension, forfeiture or modification.

# ARTICLE 12

# EVENTS OF DEFAULT AND REMEDIES

Section 12.1    <u>Events of Default and Remedies</u>.  Upon the occurrence and during the continuance of each Event of Default (as defined in the Credit Agreement) Lender may, at its option, exercise any rights and remedies provided for in the Credit Agreement, the Security Instruments or any other Loan Document, including, but not limited to:

(a) take any action which, in Lender's sole judgment, is necessary or appropriate to effect observance and performance of the covenants, agreements and obligations of Borrower under this Agreement and the other Loan Documents.  Without limiting the generality of the foregoing, and for the purpose aforesaid, upon the occurrence of an Event of Default beyond any applicable notice and cure periods, Borrower hereby agrees that Lender shall be entitled, in accordance with Legal Requirements, to (A) pay, settle or compromise all existing bills and claims the nonpayment of which might result in liens against the Project, or take such other action as Lender shall determine to prevent such bills and claims from resulting in liens against the Project, (B) execute all applications and certificates which may be required by any of the Loan Documents, (C) prosecute and defend all actions or proceedings connected with or relating to the Project and (D) take possession of and operate the Project;

(b) withhold further Advances;

18

(c) declare the Notes to be immediately due and payable;

(d) except as may be otherwise set forth in the Loan Documents, use and apply any additional collateral or any monies deposited by Borrower with Lender to cure any Default or Event of Default or to apply on account of any indebtedness under this Agreement or any of the other Loan Documents which is due and owing to Lender; and

(e) exercise or pursue any other right or remedy permitted under this Agreement, the Credit Agreement, the Security Instruments or any of the other Loan Documents or conferred upon Lender by operation of law.

Section 12.2    Non-Waiver of Remedies.  No waiver of any breach, Default or Event of Default under this Agreement or any other Loan Document shall constitute or be construed as a waiver by Lender of any other or subsequent breach, Default or Event of Default under this Agreement or such other Loan Document.

## ARTICLE 13

## GENERAL PROVISIONS

Section 13.1    Captions.  The captions and headings of the various Articles and Sections of this Agreement and the Schedules and Exhibits pertaining hereto are for convenience only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof.

Section 13.2    Notices.  All notices, demands, consents, approvals and other communications (collectively, "Notices") hereunder shall be in writing and shall be (1) mailed by certified mail, postage prepaid, return receipt requested, or (2) sent by nationally recognized overnight air courier service, or (3) sent by telecopy (provided an identical Notice is also sent simultaneously by mail or overnight courier as otherwise provided in this Section 13.2).  All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below:

If to Borrower:                    250 East Borrower, LLC
                                   249 E. 49th Street – 5th Floor
                                   New York, NY 10017

                                   and to:

                                   Janoff & Gurevich, L.L.P.
                                   249 E. 49th Street – 5th Floor
                                   New York, NY 10017

19

If to Lender:     Lehman Brothers Holdings Inc.
         399 Park Avenue, 8th Floor
         New York, New York  10022
         Attention:
         Telephone:
         Facsimile:
         MTS Nos.:

with copies (other than of requests for consents or approvals provided for in the Loan Documents and deliveries to be made in connection with the obtaining of Advances hereunder)

to:        Lehman Brothers Holdings Inc.
         399 Park Avenue
         8th Floor
         New York, New York  10022
         Attention:  David Broderick
         Telephone:  (212) 526-2453
         Facsimile:  (646) 758-5311
         MTS No.:

and to:      Gibson Dunn & Crutcher LLP
         200 Park Avenue
         New York, New York  10166
         Attn:  Andrew Levy, Esq.
         Telephone: (212) 351-4037
         Telecopy: (212) 351-5298

or at such other address or to such other addressee as the party to be served with Notice may have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice.  Notices shall be deemed to have been rendered or given on the date received before 5 p.m. or otherwise on the next Business Day or on the date they are deemed to be received as hereinafter set forth.  The inability to deliver Notices because of a changed address of which no Notice was given, or rejection or refusal to accept any Notice offered for delivery shall be deemed to be receipt of the Notice as of the date of such inability to deliver or rejection or refusal to accept delivery.

Section 13.3 Entire Agreement; Modification, Waiver.  This Agreement and the other Loan Documents and instruments delivered in connection herewith constitute the entire agreement among the parties with respect to the Project and the Loan and supersede all prior agreements, written and oral, relating to the subject matter hereof.  Neither Lender nor any employee of Lender has made or is authorized to make any representation or agreement upon which Borrower may rely unless such matter is made for the benefit of Borrower and is in writing and such document is signed by an authorized signatory of Lender.  Borrower agrees that it has not and will not rely on any custom or practice of Lender, or on any course of dealing with Lender, in connection with the Loan unless such matter is set forth in this Agreement or the other Loan Documents or in a written instrument made for the benefit of Borrower and signed by an authorized signatory of Lender.  No modification, waiver, amendment, discharge or change of

this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is sought.

Section 13.4    <u>Governing Law</u>. THIS AGREEMENT IS A CONTRACT ENTERED INTO AND TO BE PERFORMED IN THE STATE OF NEW YORK AND SHALL BE GOVERNED BY AND CONSTRUED UNDER THE INTERNAL LAWS (AS OPPOSED TO THE LAWS OF CONFLICTS) OF THE STATE OF NEW YORK. TO THE EXTENT PERMITTED BY LAW, BORROWER AND GUARANTORS HEREBY WAIVE ANY AND ALL RIGHTS TO REQUIRE MARSHALING OF ASSETS BY LENDER.

Section 13.5    <u>Acquiescence Not to Constitute Waiver of Lender's Requirements</u>. Each and every covenant and condition for the benefit of Lender contained in this Agreement may be waived by Lender; provided, however, that to the extent Lender may have acquiesced in any noncompliance with any conditions, covenants or obligations of Borrower contained herein, such acquiescence shall not be deemed to constitute a waiver by Lender of the performance by Borrower of any subsequent conditions, covenants or obligations to be performed by Borrower hereunder.

Section 13.6    <u>Disclaimer by Lender</u>.

(a) This Agreement is made for the sole benefit of Borrower and Lender (and each party's permitted successors and assigns and, to the extent expressly provided herein or in the other Loan Documents, Assignees and Participants, if any), and no other person or persons shall have any benefits, rights or remedies under or by reason of this Agreement, or by reason of any actions taken by Lender pursuant to this Agreement. Lender shall not be liable to any party for any debts or claims accruing in favor of any such party against Borrower or others or against the Project. Borrower is not and shall not be an agent of Lender for any purposes. Lender is not and shall not be an agent of Borrower for any purposes. Lender, by making the Loan or any action taken pursuant to any of the Loan Documents, shall not be deemed a partner or a joint venturer with Borrower or a fiduciary of Borrower.

(b) By accepting or approving anything required to be observed, performed, fulfilled or given to Lender pursuant to the Loan Documents, including, without limitation, any Acquisition and Pre-Development Budget, environmental assessment, or any certificate, statement of profit and loss or other financial statement, survey, appraisal, lease or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not constitute (i) a warranty or representation to anyone with respect thereto by Lender or (ii) a waiver of any of Borrower's or Guarantors' obligations or liabilities under this Agreement or any of the other Loan Documents with respect to any facts, matters or circumstances disclosed in any of the reports or other documents described in this Section 13.6(b); provided, however, Borrower shall be entitled to rely on any such approval or acceptance by Lender as evidencing Borrower's compliance with the requirements of Article 6 hereof relating to Borrower's obligation to provide such Acquisition and Pre-Development Budget, environmental assessment, certificate, statement of profit and loss or other financial statement, survey, appraisal, lease or insurance policy.

21

(c) Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of any matter in connection with the Project, and Borrower shall rely entirely upon its own judgment with respect to such matters, and any review, inspection, supervision, exercise of judgment or supply of information to Borrower by Lender in connection with such matters is for the protection of Lender only and neither Borrower nor any third party is entitled to rely thereon.

(d) Lender owes no duty of care to protect Borrower with respect to any matter reviewed or investigated by Lender in connection with the Loan.

(e) Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any activity on, or occupancy or use of, all or any portion of the Project, including any loss, claim, cause of action, liability, indebtedness, damage or injury caused by, or arising from (i) any defect in any building, structure, grading, fill, landscaping or other Improvements thereon or in any on-site or offsite improvement or other facility therein, thereon or relating thereto, irrespective of whether or not such defect was disclosed in any of the reports or other documents described in Section 13.6(b) above; (ii) any act or omission of Borrower, or any Guarantor, any Affiliate of Borrower or any Guarantor, or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident at the Project or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower, or of any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain all or any portion of the Project in a safe condition; or (v) any nuisance made or suffered on any part of the Project; except to the extent that any of the circumstances described in clauses (i), (iii) or (v) above are caused by the gross negligence or willful misconduct of Lender or its officers, contractors, employees or agents (provided they are acting in their capacity as such) occurring after Lender enters onto or has possession of the Project pursuant to the terms hereof.

Section 13.7   Right of Lender to Make Advances to Cure Borrower's Defaults.  If an Event of Default has occurred and is continuing and Borrower has failed to perform any of Borrower's covenants, agreements or obligations contained in this Agreement or the other Loan Documents or if Borrower has failed to perform the Development Rights Obligations (as defined in the Credit Agreement), Lender may (but shall not be obligated to), upon not less than five (5) days' written Notice to Borrower, perform any of such covenants, agreements and obligations; provided, however, that if in Lender's judgment, such failure to perform has resulted in an emergency, no written Notice shall be required.  Any amounts expended by Lender to cure Borrower's defaults or to perform the Development Rights Obligations, including any amounts expended by Lender pursuant to Article 12, shall constitute protective advances evidenced by the Notes (even if the principal balance of the Notes plus the amount of such protective advances would then exceed the aggregate face amount of the Notes), payable on demand and secured by the Security Instruments and the other Loan Documents.

Section 13.8   Definitions Include Amendments.  Definitions contained in this Agreement which identify documents, including the other Loan Documents, shall be deemed to include all amendments and supplements to such documents from the date hereof, and all future amendments and supplements thereto entered into from time to time to satisfy the requirements

of this Agreement or otherwise with the consent of Lender. Reference to this Agreement contained in any of the foregoing documents shall be deemed to include all amendments and supplements to this Agreement.

Section 13.9   Time Is of the Essence. Time is hereby declared to be of the essence of this Agreement and of every part hereof.

Section 13.10   Execution in Counterparts. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

Section 13.11   Waiver of Punitive or Consequential Damages. In no event shall Lender or Borrower be liable to the other for punitive or consequential damages, whatever the nature of a breach by Lender or Borrower of its obligations under this Agreement or any of the other Loan Documents and Borrower and Lender each, for itself and its respective Affiliates, hereby waives all claims for punitive or consequential damages. Borrower agrees that any amount required to be paid or reimbursed by Borrower to Lender under the terms of this Agreement or any of the other Loan Documents, or required to be paid by Guarantors to Lender under the terms of the Guarantees or Indemnity Agreement, shall not constitute or be deemed to be punitive or consequential damages.

Section 13.12   Claims Against Lender. If it is determined in a final, non-appealable judgment in any proceedings that Lender has improperly failed to grant its consent or approval, where such consent or approval is required by this Agreement or any other Loan Document to be obtained, Borrower's sole remedy shall be to obtain declaratory relief in a final, non-appealable judgment determining such withholding of consent or approval to have been improper, whereupon such consent shall be deemed given, and Borrower hereby waives, for itself and all its Affiliates, all claims for damages or set-off against Lender resulting from any withholding of consent or approval by Lender.

Section 13.13   Jurisdiction: Service of Process. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS AGREEMENT, THE PROJECT OR ANY OTHER LOAN DOCUMENT (EACH, A "PROCEEDING"), BORROWER, EACH GUARANTOR AND LENDER IRREVOCABLY (A)  SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF NEW YORK AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT LOCATED IN THE COUNTY OF NEW YORK; AND (B) WAIVE ANY OBJECTION WHICH SUCH PARTY MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVE ANY CLAIM THAT ANY SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVE THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS AGREEMENT SHALL PRECLUDE LENDER FROM ATTEMPTING TO BRING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE

LENDER FROM ATTEMPTING TO BRING A PROCEEDING IN ANY OTHER
JURISDICTION.

Section 13.14  Severability.  If any provision or provisions, or if any portion of any
provision or provisions, in this Agreement is found by a court of law to be in violation of any
applicable local, state or federal law, statute, ordinance, administrative or judicial decision, or
public policy, and if such court declares such portion, provision or provisions of this Agreement
to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties
hereto that such portion, provision or provisions shall be given force to the fullest possible extent
that they are legal, valid and enforceable, and that the remainder of this Agreement shall be
construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or
provisions were not contained herein, and that the rights, obligations and interests of the parties
hereto under the remainder of this Agreement shall continue in full force and effect.

Section 13.15  Waiver of Jury Trial.  BORROWER AND LENDER EACH HEREBY
WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO
ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR ANY OTHER
LOAN DOCUMENTS OR RELATING THERETO OR ARISING FROM THE LENDING
RELATIONSHIP WHICH IS THE SUBJECT OF THIS AGREEMENT AND AGREES THAT
ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT
BEFORE A JURY.

Section 13.16  Waiver of Foreclosure Defense.  BORROWER HEREBY WAIVES ANY
DEFENSE IT MAY HAVE TO A FORECLOSURE ACTION BASED ON LENDER'S
FAILURE TO NAME ANY TENANT OF THE PROJECT OR ITS SUCCESSOR OR
ASSIGNEE, IF ANY, AS A PARTY TO SUCH FORECLOSURE ACTION.

Section 13.17  Lender's Discretion.  Whenever pursuant to this Agreement or any of the
Loan Documents, Lender may approve or disapprove any act (or any action) or any document,
delivery or other item, or where Lender's consent or approval is required in any respect or where
any document or other item must be satisfactory to Lender, except in those specific instances
where Lender has specifically agreed not to unreasonably withhold Lender's consent pursuant to
the terms of this Agreement or any of the Loan Documents, the decision of Lender to approve or
disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory or to
grant or withhold consent shall be in the sole, absolute and unfettered discretion of Lender,
without any express or implied obligation of reasonableness or good faith whatsoever and shall
be final and conclusive. Borrower acknowledges and agrees that in no circumstance shall
Borrower have any claim or cause of action, in contract or in tort, against Lender as a result of
the granting or withholding of any such consent or approval.  The inclusion of references to
Lender's sole or absolute discretion in any particular provisions of this Agreement or any of the
Loan Documents shall not limit or affect the applicability of this Section to all provisions of this
Agreement or any of the Loan Documents, including those provisions wherein a specific
reference to Lender's sole and absolute discretion is not made.  Without limiting the preceding
provisions of this Section, in the event that a claim or adjudication is made that Lender or its
agents have acted unreasonably or in bad faith or unreasonably delayed acting in any case where,
by law or under this Agreement or the other Loan Documents, Lender or such agent, as the case
may be, has an obligation to act reasonably or in good faith or promptly, Borrower agrees that

neither Lender nor its agents or employees shall be liable for any monetary damages (including any special, consequential or punitive damages whatsoever), whether in contract, tort (including negligence and strict liability) or any other legal or equitable principles, and Borrower's sole remedies shall be limited to commencing an action seeking injunctive relief or declaratory judgment.  The parties hereto agree that any action or proceeding to determine whether Lender has acted reasonably or in good faith shall be determined by an action seeking declaratory judgment.

**[Signatures appear on the following page]**

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the day and year first set forth above.

**BORROWER:**

**250 EAST BORROWER, LLC,** a Delaware limited liability company

By: _____
Name: Alexander Gurevich
Title:  Authorized Signatory


**LENDER:**

**LEHMAN BROTHERS HOLDINGS INC.,** a Delaware corporation (individually and as lead arranger and administrative agent for itself and certain co-lenders)


By: _____
Name: _____
Title:  Authorized Signatory


**[ACKNOWLEDGMENTS APPEAR ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, Borrower and Lender have executed this
Agreement as of the day and year first set forth above.

**BORROWER:**

**250 EAST BORROWER, LLC,** a Delaware limited
liability company

By: _____

Name: Alexander Gurevich

Title:   Authorized Signatory

**LENDER:**

**LEHMAN BROTHERS HOLDINGS INC.,** a
Delaware corporation (individually and as lead arranger
and administrative agent for itself and certain co-lenders)

By: _____

Name: John Nastasi

Title: Authorized Signatory

**[ACKNOWLEDGMENTS APPEAR ON THE FOLLOWING PAGE]**

STATE OF NEW YORK   )
                   ) ss.:
COUNTY OF NEW YORK  )

On the _27_ day of _December_ in the year 2006, before me, the undersigned, personally appeared _Alexander Gurevich_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and office of individual
taking acknowledgement

ILONA BABINSKY
Notary Public, State of New York
No. 02BA6139856
Qualified in Queens County
Commission Expires Jan. 17, 2010

My Commission Expires:


STATE OF NEW YORK   )
                   ) ss.:
COUNTY OF NEW YORK  )

On the ____ day of _____ in the year 2006, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:

SIGNATURE PAGE TO PROJECT LOAN AGREEMENT

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

On the ____ day of _____ in the year 2006, before me, the undersigned,
personally appeared _____, personally known to me or proved to me on
the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument, and acknowledged to me that he/she/they executed
the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument.

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:

STATE OF NEW YORK    )
        RICHMOND  , ) ss.:
COUNTY OF NEW YORK )

On the 21ˢᵗ day of December _____ in the year 2006, before me, the undersigned,
personally appeared John Nastasi , personally known to me or proved to me on
the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument, and acknowledged to me that he/she/they executed
the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument.

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:

ANGELA MARIGLIANO
NOTARY PUBLIC, State of New York
No. 01MA6133217
Qualified in Richmond County
Commission Expires September 12, 2009

**List of Exhibits**

Exhibit A – Legal Description
Exhibit B – Form of Surveyor's Certificate
Exhibit C – Form of Architect's General Certificate
Exhibit D – Intentionally Omitted
Exhibit E – Form of Borrower's Request for Advances
Exhibit F – Form of Borrower Budget Reallocation Request
Exhibit G – Intentionally Omitted
Exhibit H – Intentionally Omitted
Exhibit I – Certification of Borrower as to Soft Costs

## EXHIBIT "A"

Legal Description

## EXHIBIT "B"

Form of Surveyor's Certificate

## SURVEY REQUIREMENTS

The survey of the Property must be dated no earlier than 60 days prior to the date of the closing. The survey should show the location of any adjoining streets (including their widths and any pavement or other improvements), easements (including the pertinent recording information with respect to all recorded instruments), fences, zoning or restriction setback lines, rights-of-way, utility lines to the points of connection, and any encroachments. The survey should locate all means of ingress and egress to the Property, all easements benefiting the Property (including, without limitation, easements for septic tank usage on adjoining Property of third parties, if applicable), certify the amount of acreage and square footage, indicate the street address of the Property, contain the legal description of the Property, and also contain a location sketch of the Property. The survey should show the location of all improvements as constructed on the Property, all of which must be within the boundary lines of the Property and conform to all applicable zoning ordinances, set-back lines and restrictions and the surveyor should certify compliance with the foregoing. The location of any improvements on the Property should be shown on the survey with the dimensions in relation to the lot and building lines. If deed restrictions, recorded plats or zoning ordinances require any of the improvements to be set back specified distances from street or Property lines, the survey should show measured distances from the improvements to said lines.

Please make certain that the survey designates all courses and distances referred to in the legal description and indicates the names of all adjoining owners on all sides of the Property, to the extent obtainable. Furthermore, the legal description of the Property must be shown on the face of the survey, and it must conform to the legal description contained in the title insurance commitment and policy. Please also make certain that the survey is certified in the following manner:

"We hereby certify to Lehman Brothers Holdings Inc., and [Title Company], their successors, nominees and assigns: (a) that the survey represented herein is an accurate survey of all of the real property legally described herein; (b) that the within survey properly and accurately indicates and locates all improvements on the real property as of the date of the survey; (c) that the within survey was prepared under the direct supervision and control of the undersigned from an actual survey made of the real property legally described herein; (d) that there are no encroachments either across property lines or zoning restriction lines in effect as of the date of the survey; (e) that the within survey properly designates and locates all visible or recorded easements as of the date of the survey; (f) all utility services required for the operation of this property either enter the property through the adjoining public streets or, if they pass through or are located on private land, do so in accordance with easements enuring to the owner of the property; (g) ingress and egress to the subject property is provided by [name of streets or roads] upon which

the property abuts, the same being paved and dedicated rights-of-way
maintained by [name of governmental authority]; (h) the property is [or is
not] located in an area designated as a special flood hazardous area by the
Federal Emergency Management Agency, and lies in a zone "__" of
minimum flooding; (i) the subject property does not service any adjoining
property for drainage, ingress, egress or any other purpose; (j) that the
land, as described on the survey does not constitute an illegal subdivision
of land under local, county or city ordinances; and (k) that the within
survey was prepared in accordance with the existing code of practice for
land surveyors adopted by the American Congress on Surveying and
Mapping, [and any applicable state professional surveyors associations
and land title associations], and complies with all applicable [state] laws."

# EXHIBIT "C"

Form of Architect's General Certificate

(Attach Detailed Architect Certificate Regarding Plans)

## EXHIBIT "D"

Intentionally Omitted

## EXHIBIT "E"

Form of Borrower's Request for Advances

Date: _____, 200_

Construction Loan No._____

Advance No._____

AMOUNT REQUESTED: $_____

Period Covered:_____

TO:

FROM:

RE:    Project Loan Agreement dated _____ ___, 2006 between Lehman Brothers Holdings Inc., as Lender, and _____, as Borrower ("Loan Agreement"; all initially capitalized terms unless otherwise defined herein, shall have the meanings set forth in the Loan Agreement)

In accordance with the terms of the Loan Agreement, you are hereby authorized and requested to make immediate disbursement of funds held by you for the Project described in the Loan Agreement in accordance with the documentation attached hereto, which documentation is incorporated herein by this reference and made a part hereof and which documentation includes the following (items enclosed are marked "x" and separately tabbed on the enclosed submission).

| | |
|---|---|
| _____ | Project Budget Summary |
| _____ | Project Budget Reallocation Request |
| _____ | Project Disbursement Schedule |
| _____ | Copies of Change Orders |
| _____ | Certification of General Contractor/Borrower |

The undersigned hereby certifies that:

(i)    the labor, services and/or material covered hereby have been performed upon or furnished to the Project;

(ii)    there have been no changes in the Acquisition and Pre-Development Budget, except those approved by you in writing;

(iii)    intentionally omitted;

1

(iv)    there have been no changes in the scope or time of performance of the work, nor any extra work, labor or materials ordered or contracted for, nor are any such changes or extras contemplated, except as may be expressly permitted by the Loan Agreement or as have been approved by you in writing and all such work has been performed in a good and workmanlike manner;

(v)    the payments to be made with the funds requested herein will pay all bills received to date for any labor, materials and services furnished in connection with the Soft Costs of the Project;

(vi)    all amounts previously disbursed by you for labor, services and/or materials for the Project pursuant to previous requests for funds have been paid to the parties entitled thereto;

(vii)    all conditions to the disbursement of the funds requested herein as set forth in the Loan Agreement have been fulfilled, and to the knowledge of the undersigned, no Event of Default has occurred and is continuing;

(viii)    the payments to be made with the funds requested herein, or with Borrower's funds as approved by Lender, will pay all bills received to date for any labor, materials and services furnished in connection with construction of the Improvements; and

(ix)    all representations and warranties made by Borrower under any Loan Document are true, correct, and not misleading in any material respect as of the date of this Request for Advance, as if such representation and warranty were made on such date.

**BORROWER:**

**CONSTRUCTION MANAGER: [if applicable]**

_____

By:       _____
Name:    _____
Title      _____
Date:     _____

APPROVED FOR PAYMENT:

2

By:_____

Title:_____

Date:_____, 200_

## EXHIBIT "F"

### Form of Project Budget Reallocation Request

BORROWER:                                      Date: _____, 200_
PROJECT:                                       Draw No.:_____

ALL Change Orders ("C.O.'s") for direct construction must be referenced on this form and are subject to the Lender's approval as provided in the Project Loan Agreement.  Copies of all C.O.'s must be submitted to the Lender, regardless of the Lender's approval limitations.

Please indicate the explanation and provide appropriate documentation for requests to reallocate budget Line Items.

### Budget Reallocations Contained in Current Request for Advance

| AMOUNT | FROM LINE ITEM | TO LINE ITEM | CHANGE ORDER #"s (if any) | EXPLANATION* |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

CHANGE ORDER SUMMARY:

$_____  this request
$_____  prior requests
$_____  to date
        (C.O.'s #_____)

Borrower's authorized signature below verifies that reallocations described above are approved by Borrower, are valid and reasonable, and that copies of related documentation in the form of Change Orders or invoices as appropriate are attached hereto.

_____

*        Please give detailed explanation, e.g., cost of increased material, deleted item, etc.

**BORROWER:**

**CONSTRUCTION MANAGER: [if applicable]**

_____

By:      _____
Name:    _____
Title    _____
Date:    _____

## **EXHIBIT G**

<u>Intentionally Omitted</u>

## **EXHIBIT H**

<u>Intentionally Omitted</u>

## EXHIBIT "I"

### Certification as to Soft Costs

Date: _____, 200_

Loan No._____

Advance No._____

AMOUNT REQUESTED: $_____

Period Covered:_____

TO:

FROM:

RE:

The undersigned hereby certifies that:

(i)    the labor, services and/or material covered by the Request for Advance to which this Certificate is attached have been performed upon or furnished to the Project;

(ii)    the payments for Soft Costs to be made with the funds requested in the Request for Advance will pay all bills received to date for any labor, materials and services furnished in connection with construction of the Project; and

(iii)    to the best of our knowledge, all conditions to the disbursement of the funds for labor, services and material requested in the Request for Advance as set forth in the Loan Agreement have been fulfilled.

:

_____

By:    _____
Name: _____
Title    _____
Date:  _____

## FIRST AMENDMENT TO PROJECT LOAN AGREEMENT

This First Amendment to Project Loan Agreement (this **"First Amendment"**) is entered into as of July 6, 2007, by and among **250 EAST BORROWER, LLC**, a Delaware limited liability company (**"Borrower"**), and **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, individually and as lead arranger and administrative agent for itself and certain co-lenders (collectively **"Lender"**).

<u>Recitals</u>

A.    WHEREAS, Borrower and Lender entered into that certain Project Loan Agreement dated as of December 29, 2006 (the **"Loan Agreement"**), pursuant to which Lender agreed to lend to Borrower, and Borrower agreed to borrow from Lender, that certain loan in the maximum aggregate principal amount of Three Million Fifty Thousand Nine Hundred Seventeen and No/100ths Dollars ($3,050,917.00) (the **"Loan"**), evidenced by that certain Project Loan Promissory Note dated as of December 29, 2006, and secured by, among other things, that certain Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture dated as of December 29, 2006.

B.    WHEREAS, Borrower, Agent and Lender desire to amend the Loan Agreement as more particularly described below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender agree that the Loan Agreement is hereby amended as follows:

1.    <u>Defined Terms</u>.  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Loan Agreement.

2.    <u>Loan to Value Ratio</u>.  The Loan Agreement is hereby amended by deleting the reference to "$3,050,917" set forth in Recital C, Recital D, and Section 3.1 of the Loan Agreement in its entirety and replacing said reference with "$6,172,131.00".

3.    <u>Amendment to Loan Documents</u>.  Each and every reference in each Loan Document to the Loan Agreement shall be deemed to refer to the Loan Agreement as amended by this Amendment.

4.    <u>Full Force and Effect</u>.  Except to the extent expressly modified or amended by this Amendment, the Loan Agreement shall remain unmodified and in full force and effect and are hereby ratified and affirmed.  To the extent of any inconsistency between this Amendment and the Loan Agreement, the terms and conditions of this Amendment shall control.

5.    <u>Counterparts</u>.  This Amendment may be executed in one or more counterparts, each of which shall be deemed to constitute an original, but all of which, when taken together shall constitute one and the same instrument.  Facsimile signatures of this Amendment shall be the equivalent of manual execution signatures and binding for all purposes.

6.    <u>Binding Effect</u>.  This Amendment shall be binding upon and inure to the benefit of the parties and their respective personal representatives, successors and permissible assigns.

      7.    <u>Effective Date</u>.  This Amendment is executed to be effective as of the date first set forth above.

      8.    <u>Governing Law</u>.  This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date and year first written above.

**BORROWER:**
**250 EAST BORROWER, LLC,** a Delaware limited liability company

By:_____
Name: Alexander Gurevich
Title:   Authorized Signatory

**LENDER:**
**LEHMAN BROTHERS HOLDINGS INC.,**  a Delaware corporation

By:_____
Name:
Title:

SIGNATURE PAGE TO FIRST AMENDMENT TO PROJECT LOAN AGREEMENT

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date and year first written above.

**BORROWER:**
**250 EAST BORROWER, LLC**, a Delaware limited liability company

By:_____
Name:  Alexander Gurevich
Title:   Authorized Signatory

**LENDER:**
**LEHMAN BROTHERS HOLDINGS INC.,**  a Delaware corporation

By:_____
Name:  JOHN NASTASI
Title:   AUTHORIZED SIGNATORY

SIGNATURE PAGE TO FIRST AMENDMENT TO PROJECT LOAN AGREEMENT

## SECOND AMENDMENT TO PROJECT LOAN AGREEMENT

This Second Amendment to Project Loan Agreement (this **"First Amendment"**) is entered into as of February 13, 2008, by and among **250 EAST BORROWER, LLC**, a Delaware limited liability company (**"Borrower"**), and **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, individually and as lead arranger and administrative agent for itself and certain co-lenders (collectively **"Lender"**).

### Recitals

A.    WHEREAS, Borrower and Lender entered into that certain Project Loan Agreement dated as of December 29, 2006 and amended by that certain First Amendment to Project Loan Agreement dated as of July 6, 2007 (as may have been amended, modified or ratified, the **"Loan Agreement"**), pursuant to which Lender agreed to lend to Borrower, and Borrower agreed to borrow from Lender, that certain loan in the maximum aggregate principal amount of $6,172,131.00) (the **"Loan"**), evidenced by that certain Project Loan Promissory Note dated as of December 29, 2006, and secured by, among other things, that certain Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture dated as of December 29, 2006.

B.    WHEREAS, Borrower and Lender desire to amend the Loan Agreement as more particularly described below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender agree that the Loan Agreement is hereby amended as follows:

1.    Defined Terms.  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Loan Agreement.

2.    Amendments to Loan Agreement.  Borrower and Lender hereby agree and acknowledge that:

(a)    The Loan Agreement is hereby amended by deleting the reference to "$6,172,131.00" set forth in Recital C, Recital D, and Section 3.1 of the Loan Agreement in its entirety and replacing said reference with "$21,209,604.06".

(b)    Subsection (h) of Section 8.1 is hereby deleted in its entirety and the following is hereby inserted in lieu thereof:

"(h)    Advances for payment of Soft Costs shall not exceed the aggregate of (i) the costs set forth in Acquisition and Pre-Development Budget and the Building Loan Budget with respect to Soft Costs, less (ii) all prior Advances for Soft Costs.

(i)    That certain Mezzanine Construction Loan Agreement dated as of December 29, 2006 by and between Lender and 250 East Mezzanine LLC, as amended

by that certain First Amendment dated as of February 13, 2008 has been fully funded to Borrower in accordance with the terms thereof."

(j)    On or after February 13, 2008, Advances for the payment of the Budget Line Item set forth in the Building Loan Budget for "Developer Overhead" shall be funded by (i) an initial Advance of $200,000, (ii) for the next six (6) monthly Advances immediately thereafter, an Advance of no more than $90,000, and (iii) for each Advance thereafter, an Advance of more than $78,818."

3.    <u>Amendment to Loan Documents</u>.    Each and every reference in each Loan Document to the Loan Agreement shall be deemed to refer to the Loan Agreement as amended by this Amendment.

4.    <u>Full Force and Effect</u>.    Except to the extent expressly modified or amended by this Amendment, the Loan Agreement shall remain unmodified and in full force and effect and are hereby ratified and affirmed.    To the extent of any inconsistency between this Amendment and the Loan Agreement, the terms and conditions of this Amendment shall control.

5.    <u>Counterparts</u>.    This Amendment may be executed in one or more counterparts, each of which shall be deemed to constitute an original, but all of which, when taken together shall constitute one and the same instrument.    Facsimile signatures of this Amendment shall be the equivalent of manual execution signatures and binding for all purposes.

6.    <u>Binding Effect</u>.    This Amendment shall be binding upon and inure to the benefit of the parties and their respective personal representatives, successors and permissible assigns.

7.    <u>Effective Date</u>.    This Amendment is executed to be effective as of the date first set forth above.

8.    <u>Governing Law</u>.    This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date
and year first written above.

**BORROWER:**
**250 EAST BORROWER, LLC,** a Delaware limited
liability company

By:_____
Name: Alexander Gurevich
Title: Authorized Signatory

**LENDER:**
**LEHMAN BROTHERS HOLDINGS INC.,**  a Delaware
corporation

By:_____
Name:
Title:

SIGNATURE PAGE TO SECOND AMENDMENT TO PROJECT LOAN AGREEMENT

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date and year first written above.

**BORROWER:**
**250 EAST BORROWER, LLC**, a Delaware limited liability company

By:_____
Name: Alexander Gurevich
Title:   Authorized Signatory


**LENDER:**
**LEHMAN BROTHERS HOLDINGS INC.,** a Delaware corporation

By:_____
Name:   JOHN NASTASI
Title:    AUTHORIZED SIGNATORY


SIGNATURE PAGE TO SECOND AMENDMENT TO PROJECT LOAN AGREEMENT