WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter D. Isakoff
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,             :    08-13555 (JMP)
                                                   :
                            Debtors.               :    (Jointly Administered)
-----------------------------------------------------------------x
```

### NOTICE OF HEARING ON
### OBJECTION TO PROOFS OF CLAIM NUMBER 14824 AND 14826

   **PLEASE TAKE NOTICE** that on August 15, 2012, Lehman Brothers Holdings

Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan

of LBHI and Its Affiliated Debtors for certain entities in the above-referenced chapter 11 cases,

filed its objection to proof of claim number 14824 filed by Canary Wharf Management Ltd. and

proof of claim number 14826 filed by Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2)

T2 Limited (the "Objection"), and that a hearing to consider the Objection will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United

States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York,

New York 10004, on **September 27, 2012 at 10:00 a.m. (Prevailing Eastern Time)**, or as soon

thereafter as counsel may be heard.

   **PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format (with a hard copy delivered directly to Chambers), in

accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and

served in accordance with General Order M-399, and on (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii)

attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153 (Attn: Peter D. Isakoff, Esq. and Robert J. Lemons, Esq.); and (iii) the Office of the

United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004

(Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B. Schwartz, Esq.); so as

to be so filed and received by no later than **September 15, 2012 at 4:00 p.m. (Prevailing**

**Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Objection, LBHI may, on or after the Response Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated:  August 15, 2012
         New York, New York

                              /s/ Robert J. Lemons
                              Peter D. Isakoff
                              Robert J. Lemons

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Lehman Brothers Holdings Inc.
                              and Certain of Its Affiliates

US_ACTIVE:\44051049\5\58399.0008

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter D. Isakoff
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**In re**                                                    :    **Chapter 11 Case No.**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                                             :
                                    **Debtors.**    :    **(Jointly Administered)**
-------------------------------------------------------------------x

## OBJECTION TO PROOFS OF CLAIM NUMBER 14824 AND 14826

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors (the "Plan"),

for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates"), respectfully

represents as follows:

### Preliminary Statement

1.        Canary Wharf Management Ltd. (the "Management Company") filed

proof of claim number 14824 against LBHI and Heron Quays (HQ2) T1 Limited and Heron

Quays (HQ2) T2 Limited (the "Landlord" and together with the Management Company, the

"Claimants") filed proof of claim number 14826 (together with proof of claim number 14824,

the "Claims") against LBHI in the total amount of almost $4.5 billion.  The Claimants, as

landlord and management company, Lehman Brothers Limited (the "Tenant"), as tenant, and

LBHI, as surety, among others, were parties to a lease agreement, dated as of March 16, 2005 (the "Lease"), of the commercial property at 25 Bank Street, Canary Wharf, London E14 5LE (Parcel HQ2) (the "Premises").  The Claimants assert that LBHI is liable for unpaid obligations of the Tenant under a guarantee provision in the Lease.

2.      Pursuant to letter agreement among the Claimants and the Tenant, among others, but excluding LBHI, dated December 3, 2010 (the "Forfeiture Letter"), the Claimants forfeited the Lease and also released all rights to require payment as an administrative expense claim by the joint administrators of the Tenant in exchange for the Tenant's payment of £1.5 million to the Landlord.  The Lease is governed by English law, and under English law, this material and prejudicial variation of the Lease discharged all of LBHI's alleged liability under the guarantee.  Accordingly, LBHI has no liability on account of the Claims, and the Claims should be disallowed and expunged in their entirety.

### Relief Requested

3.      LBHI files this objection, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to disallow and expunge the Claim.

### Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

5.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under title 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

2

6.      On December 6, 2011, the Court entered an order confirming the Plan

[ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, LBHI, as

the Plan Administrator, is authorized to interpose and prosecute objections to claims filed against

the Chapter 11 Estates.

## The Claims

7.      On September 15, 2008, joint administrators were appointed in the

administrative insolvency proceedings of the Tenant, a foreign non-debtor affiliate of LBHI, in

the United Kingdom.

8.      On September 17, 2009, the Landlord filed a proof of claim in the

unsecured amount of $4,280,970,000.00 against LBHI, which claim was assigned claim number

14826 (the "Landlord's Claim").  It asserts that the Tenant would likely default on its obligations

under the Lease and that LBHI would be liable for such obligations under a guarantee in

paragraph 1 of Schedule 4 to the Lease (the "Guarantee"), attached hereto as Exhibit A.  More

specifically, the Landlord's Claim asserts that LBHI is liable for the following: (i) rent in the

amount of $2,632,453,293.00, (ii) building service charges in the amount of $310,858,503.00,

(iii) rates, or local taxes, in the amount of $711,317,417.00, (iv) insurance in the amount of

$73,022,194.00, (iv) dilapidations, or damages to the Premises, in the amount of

$284,013,680.00, (v) "M&E Replacement Costs" in the amount of $268,443,878.00, and (vi)

costs, including legal costs, in the amount of $845,582.00.  The Landlord's Claim does not

provide an explanation of or evidence showing "M&E Replacement Costs," nor does it provide

any evidence of damages to the Premises in support of its claim for dilapidations.

9.      On September 17, 2009, the Management Company filed a proof of claim

in the unsecured amount of $195,550,000.00 against LBHI, which was assigned claim number

3

14824 (the "Management Company's Claim").  It asserts that the Tenant would likely default on its obligations under the Lease and that LBHI would be liable for such obligations pursuant to the Guarantee.  More specifically, the Management Company's Claim includes amounts allegedly owing for estate service charges in the amount of $195,496,978.00 and costs, including legal costs, in the amount of $48,268.00.

10.     On August 22, 2011, LBHI filed a stipulation and agreement whereby LBHI and the Claimants agreed to a maximum allowable amount of the Claims, ECF No. 19427. LBHI reserved any and all rights, claims, defenses, challenges, and objections all on any grounds, relating to the validity, enforceability, and amount of each of the Claims and the classifications thereof.  The court entered an order approving the stipulation and agreement on September 1, 2011, ECF No. 19644.  Pursuant to the order, the maximum allowable amount of the Landlord's Claim is $770,000,000.00, and the maximum allowable amount of the Management Company's Claim is $9,150,000.00.

## The Forfeiture

11.     It is LBHI's understanding that the Tenant occupied the Premises until March 2010.  Between April 2010 and December 2010, the Chapter 11 Estates believe that certain subtenants were occupying the Premises, that the Claimants were receiving direct payments in accordance with one or more subleases on account of liabilities under the Lease and that under English law the administrators of the Tenant remained liable for the rent payable under the Lease.

4

12.     On December 3, 2010, the Forfeiture Letter, attached hereto as <u>Exhibit B</u>, was executed by the Tenant and the Claimants, among others.  The Forfeiture Letter provides that the Claimants "request consent of the Administrators of LBL [the Tenant] . . . to our forfeiting the Lease by means of peaceable re-entry. . ." and that "we [the Claimants] shall exercise that right before 11:59 pm on 10 December 2010."  *See* <u>Exhibit </u>B, *Forfeiture Letter*, ¶ 1.1, 2.

13.     In the Forfeiture Letter, the Claimants provided the Tenant with a release of all administrative expense claims under the Lease:

> (a) in consideration of LBL [Tenant] agreeing to pay to the Landlord £1.5m on the date of forfeiture . . . LBL is unconditionally and irrevocably released and discharged from any claims as an administration expense for unpaid rent that fell due and was payable under the Lease before the date of forfeiture . . .

> (c) LBL [Tenant] is unconditionally and irrevocably released and discharged from any claims as an administration expense for any estate service charge and other sums that fell due and were payable under the Lease . . . before the date of forfeiture;

> provided that LBL agrees that we [Landlord] and/or CWML [Management Company] may claim against LBL [Tenant] as an unsecured creditor for any unpaid rent and estate charge and any other sums falling due under the Lease up to the date of forfeiture.

*See* <u>Exhibit B</u>, *Forfeiture Letter*, ¶ 4.

14.     It is LBHI's understanding that on December 20, 2010, but prior to the grant of the replacement lease for the Premises mentioned below, the Landlord's interest in the Premises was terminated, so that the reversionary interest became vested in Canary Wharf Investments Limited as freeholder, and that subsequently, but again prior to the grant of the replacement lease, the freehold interest in the Premises was transferred by Canary Wharf Investments Limited to HQCB Investments Limited ("<u>HQCB</u>").  Immediately thereafter on

5

December 20, 2010, HQCB granted a lease of the Premises to JPMorgan Chase Bank, National

Association ("JPMorgan") pursuant to an agreement dated December 20, 2010.

       15.    The Guarantee provides that, after a forfeiture of the Lease, the Landlord

may request that LBHI enter into a replacement lease; however, if no request is made within 180

days of the forfeiture, then LBHI's liability is to pay rent and other sums in respect of the period

ending upon the earlier of (a) the Landlord's entry into a lease to a third party or (b) 180 days

following the forfeiture:

> (a)  The Surety hereby further covenants with the Landlord and the Management Company that:-
>
>> (i) if the Crown or a liquidator or trustee in bankruptcy shall disclaim or surrender this Lease or
>>
>> (ii) if this Lease shall be forfeited or
>>
>> (iii) if the Tenant shall cease to exist unless the same occurs as part of an amalgamation merger or reconstruction resulting in a solvent corporation
>
> THEN the Surety shall if the Landlord by notice in writing given to the Surety within one hundred and eighty (180) days after such disclaimer or other event so requires accept from and execute and deliver to the Landlord a counterpart of a new lease of the Demised Premises (duly stamped at the Surety's expense) for a term commencing on the date of the disclaimer or other event and continuing for the residue then remaining unexpired of the Term such new lease to be at the cost of the Surety and to be at the same rents and subject to the same covenants conditions and provisions as are contained in this Lease
>
> (b) If the Landlord shall not require the Surety to take a new lease the Surety shall nevertheless upon demand pay to the Landlord a sum equal to the Rent and other sums that would have been payable under this Lease but for the disclaimer or other event in respect of the period from and including the date of such disclaimer or other event until the expiration of one hundred and eighty (180) days therefrom or until the Landlord shall have granted a lease of the Demised Premises to a third party (whichever shall first occur)

6

*See* Exhibit A, *Guarantee*, ¶ 7.

### **The Claims Should Be Disallowed And Expunged**

16.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

17.     Under English law, a guarantee is discharged if there is a material variation to the underlying contract to which the guarantor does not consent:

> . . . if there is any agreement between the principals with reference to the contract guaranteed, the surety ought to be consulted, and that if he has not consented to the alteration, . . . if it is not self-evident that the alteration is unsubstantial, or one which cannot be prejudicial to the surety, the Court . . . will hold that . . . if he has not so consented he will be discharged.

*Holme v. Brunskill* [1877] 3 QBD 495, per Cotton, L.J. at 505. This rule rests on the principle that "the law will not assist a party to enforce a bargain who has placed the other party in jeopardy by unilateral alteration of the instrument by which their bargain was made." *Petro Can Exploration Inc. v. Tormac Transp. Ltd.* (1983) 23 B.L.R. 1, BCSC, per Taylor, J. at ¶ 22.

18.     English law provides that a variation is material unless it is self-evident that the alteration is unsubstantial or not prejudicial to the guarantor. *See Holme v. Brunskill* [1877] 3 QBD 495, per Cotton, L.J. at 505; *Ankhar Pty Ltd. v. Nat'l Westminster Fin. (Australia) Ltd.* [1987], 162 C.L.R. 549, 559; *Selous St. Props. Ltd. v. Oronel Fabrics Ltd.* [1984], EDG

7

360, per Hutchinson, J. at 396, *cited in Howard de Walden Estates Ltd. v. Pasta Place Ltd. and others* [1995] 1 EGLR 79, per Morland, J. at 81.

19.    Rent in respect of administration-occupied premises is payable as an administrative expense under English law.  *See Goldacre (Offices) Ltd. v Nortel Networks UK Ltd. (in administration)* [2009] EWHC 3389 (Ch).  But, pursuant to the Forfeiture Letter, the Claimants released the Tenant of all administrative expense claims and all claims arising after the forfeiture of the Lease upon the Tenant's payment of £1.5 million to the Landlord.  *See* Exhibit B, *Forfeiture Letter*, ¶ 4(a).  The settlement contained in the Forfeiture Letter is a variation of the Lease because it removes the ability of the Landlord to pursue the Tenant for obligations arising prior to the forfeiture, which otherwise would have been paid in full as an administrative expense under English law.  The variation of the Lease is material because it exposes LBHI to increased liability under the Guarantee.  LBHI was not a party to the Forfeiture Letter and did not manifest consent to the settlements contained therein.

20.    Because the terms of the Forfeiture Letter constitute material variations to the Lease to which LBHI did not consent, the Guarantee of the Lease is unenforceable as a matter of English law.  As a result, the Claims against LBHI seeking enforcement of the Guarantee should be disallowed and expunged in their entirety.

21.    Even if LBHI's alleged liability under the Guarantee was not discharged upon the material variation of the Lease, and even if the Guarantee survives the forfeiture of the Lease, which LBHI disputes, the terms of the Guarantee provide that LBHI's obligations under the Guarantee cease when the Tenant's obligations under the Lease cease:

> The Surety hereby covenants with the Landlord and as a separate
> covenant with the Management Company as a primary obligation
> that the Tenant or the Surety shall at all times until the Tenant shall
> cease to be bound by the Tenant's covenants in the Lease during

8

> the Term duly perform and observe all the covenants on the part of
> the Tenant contained in this Lease including the payment of the
> rents hereby reserved and all other sums payable under this Lease
> in the manner and at the times herein specified . . .

*See* Exhibit A, *Guarantee*, ¶ 1.  Upon forfeiture, the Tenant ceased to be bound by provisions of

the Lease, including the requirement that the Tenant pay rent and other sums.  Because LBHI's

liability under the Guarantee is co-extensive with the Tenant's responsibilities under the Lease,

LBHI is released of any and all liability that accrued post-forfeiture.

22.    Even if LBHI were liable under the Guarantee following the forfeiture,

which LBHI disputes, the Guarantee provides that liability continues only until "the expiration of

one hundred and eighty (180) days therefrom [the forfeiture] or until the Landlord shall have

granted a lease of the Demised Premises to a third party (whichever shall first occur)."  *See*

Exhibit A, *Guarantee*, ¶ 7(b).  Pursuant to the Forfeiture Letter, the forfeiture was to occur

"before 11:59 pm on 10 December 2010."  *See* Exhibit B, *Forfeiture Letter*, ¶ 2.  LBHI

understands that such forfeiture occurred prior to that date and time, and subsequent to such

forfeiture, the Landlord disposed of its interest in the Premises and no longer has any interest

therein.  Pursuant to an agreement dated December 20, 2012, HCQB, "granted a lease of the

Demised Premises" to JPMorgan.  As a result, at a minimum, LBHI is released of any and all

liability that accrued after December 20, 2010.  (Even had the Claimants not entered into a lease

of the Premises with JPMorgan, LBHI's liability under the Guarantee would have terminated 180

days after the forfeiture.  *See* Exhibit A, *Guarantee*, ¶ 7(b).)

23.    If the Claimants were entitled to recovery on account of the Claims, which

LBHI disputes, such Claims would in any event be subject to the statutory cap on claims

US_ACTIVE:\44051049\5\58399.0008

resulting from the termination of a lease of real property, pursuant to section 502(b)(6) of the

Bankruptcy Code.[1]  This alone would greatly reduce the Claims.

24.      The Claimants assert claims for unpaid rent, service charges, taxes,

insurance, dilapidations, "M&E Replacement Costs," and costs, including attorneys' fees.  The

Claimants provide no evidence of dilapidations and "M&E Replacement Costs."  Absent any

proof that these damages were suffered, the portion of the Claims for dilapidations and "M&E

Replacement Costs" should be disallowed and expunged.

25.      To the extent that the claims for dilapidations and "M&E Replacement

Costs" are not expunged due to lack of evidentiary support, such claims, in addition to service

charges and costs, are unrecoverable termination damages.  To the extent that these amounts are

not determined to be unrecoverable termination damages, such amounts are rent reserved, and

the Claimants' recovery for such amounts is limited by the statutory cap imposed by section

502(b)(6) of the Bankruptcy Code.

26.      In summary, unless the Claims are disallowed and expunged, parties who

do not hold valid claims against LBHI's estate will nonetheless recover from LBHI.

Accordingly, LBHI respectfully requests that the Court enter an order disallowing and expunging

the Claims in their entirety.

---

[1] Section 502(b)(6) of the Bankruptcy Code provides that a claim is allowed, "except to the extent that:"

> (6) if such claim is the claim of a lessor for damages resulting from the termination of a
> lease of real property, such claim exceeds—
>> (A) the rent reserved by such lease, without acceleration, for the greater of one
>> year, or 15 percent, not to exceed three years, of the remaining term of such
>> lease, following the earlier of—
>>> (i) the date of the filing of the petition; and
>>> (ii) the date on which such lessor repossessed or the lessee surrendered,
>>> the leased property; plus
>> (B) any unpaid rent due under such lease, without acceleration, on the earlier of
>> such dates;

US_ACTIVE:\44051049\5\58399.0008

**Reservation of Rights**

27.    LBHI reserves all rights to object on any other basis to the Claims as to which the relief requested herein is not granted.

**Notice**

28.    No trustee has been appointed in these chapter 11 cases.  Notice of this Objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for Region 2; (v) the Landlord; (vi) the Management Company; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

29.    No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  August 15, 2012
New York, New York

/s/ Robert J. Lemons
Peter D. Isakoff
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

US_ACTIVE:\44051049\5\58399.0008

**EXHIBIT A**

**C L I F F O R D**

**C H A N C E**

LIMITED LIABILITY PARTNERSHIP

DATED  16 MARCH  2005

CERTIFIED A TRUE COPY
OF THE ORIGINAL

*P. Kendell* 20/8/09

PAMELA KENDALL, SOLICITOR
Legal Department
Canary Wharf Limited
One Canada Square, Canary Wharf
London E14 5AB

(1)  Landlord:
HERON QUAYS (HQ2) T1 LIMITED and
HERON QUAYS (HQ2) T2 LIMITED

(2)  Management Company:
CANARY WHARF MANAGEMENT LIMITED

(3)  Landlord's Guarantor:
CANARY WHARF HOLDINGS LIMITED

(4)  Tenant:
LEHMAN BROTHERS LIMITED

(5)  Surety
LEHMAN BROTHERS HOLDINGS INC

---

COUNTERPART

**U N D E R L E A S E**

- of -

25 Bank Street, Canary Wharf
London E14 5LE (Parcel HQ2)

| | |
|---|---|
| TERM COMMENCES: | 3 July 2003 |
| YEARS: | 30 |
| TERM EXPIRES: | 2 July 2033 |
| RENT: | £41,955,013 p.a. exclusive (subject to fixed increases and to review) |
| CAR PARKING RENT: | £640,000 p.a. exclusive (subject to review) |

## SCHEDULE 4

### COVENANTS BY THE SURETY

1.    **Indemnity by Surety**

The Surety hereby covenants with the Landlord and as a separate covenant with the Management Company as a primary obligation that the Tenant or the Surety shall at all times until the Tenant shall cease to be bound by the Tenant's covenants in the Lease during the Term duly perform and observe all the covenants on the part of the Tenant contained in this Lease including the payment of the rents hereby reserved and all other sums payable under this Lease in the manner and at the times herein specified and the Surety shall indemnify and keep indemnified the Landlord and the Management Company against all claims demands losses damages liability costs fees and expenses whatsoever sustained by the Landlord or the Management Company by reason of or arising directly or indirectly out of any default by the Tenant in the performance and observance of any of its obligations or the payment of any rents and other sums Provided That the Landlord and the Management Company shall notify the Tenant of any such actions or other matters and take all reasonable steps to mitigate such losses having regard to the nature of the breach

2.    **Surety jointly and severally liable with Tenant**

The Surety hereby further covenants with the Landlord and as a separate covenant with the Management Company that the Surety is jointly and severally liable with the Tenant (whether before or after any disclaimer by a liquidator or trustee in bankruptcy) for the fulfilment of all the obligations of the Tenant under this Lease and agrees that the Landlord or the Management Company in the enforcement of its rights hereunder may proceed against the Surety as if the Surety was named as the Tenant in this Lease

3.    **Waiver by Surety**

The Surety hereby waives any right to require the Landlord or the Management Company to proceed against the Tenant or to pursue any other remedy whatsoever which may be available to the Landlord or the Management Company before proceeding against the Surety

4.    **Postponement of claims by Surety against Tenant**

The Surety hereby further covenants with the Landlord and as a separate covenant with the Management Company that the Surety shall not claim in any liquidation bankruptcy composition or arrangement of the Tenant in competition with the Landlord or the Management Company and shall remit to the Landlord the proceeds of all judgments and all distributions it may receive from any liquidator trustee in bankruptcy or supervisor of the Tenant and shall hold for the benefit of the Landlord and the Management Company all security and rights the Surety may have over assets of the Tenant whilst any liabilities of the Tenant or the Surety to the Landlord or the Management Company remain outstanding

5.    **Postponement of participation by Surety in security**

The Surety shall not be entitled to participate in any security held by the Landlord or the Management Company in respect of the Tenant's obligations to the Landlord or the Management Company under this Lease or to stand in the place of the Landlord or the Management Company in respect of any such security until all the obligations of the Tenant or the Surety to the Landlord and the Management Company under this Lease have been performed or discharged

6.    **No release of Surety**

None of the following or any combination thereof shall release discharge or in any way lessen or affect the liability of the Surety under this Lease:-

(a)    any neglect delay or forbearance of the Landlord or the Management Company in endeavouring to obtain payment of the rents or other amounts required to be paid by the Tenant or in enforcing the performance or observance of any of the obligations of the Tenant under this Lease

(b)    any refusal by the Landlord or the Management Company to accept rent tendered by or on behalf of the Tenant at a time when the Landlord was entitled (or would after the service of a notice under Section 146 of the Law of Property Act 1925 have been entitled) to re-enter the Demised Premises

(c)    any extension of time given by the Landlord or the Management Company to the Tenant

(d)    (subject to Section 18 of the Landlord and Tenant (Covenants) Act 1995) any variation of the terms of this Lease (including any reviews of the rent payable under this Lease) or the transfer of the Landlord's reversion or the assignment of this Lease

(e)    any change in the identity constitution structure or powers of any of the Tenant the Surety the Landlord or the Management Company or the liquidation administration or bankruptcy (as the case may be) of either the Tenant or the Surety

(f)    any legal limitation or any immunity disability or incapacity of the Tenant (whether or not known to the Landlord or the Management Company) or the fact that any dealings with the Landlord or the Management Company by the Tenant may be outside or in excess of the powers of the Tenant

(g)    any other act omission matter or thing whatsoever whereby but for this provision the Surety would be exonerated either wholly or in part (other than a release under seal given by the Landlord and/or the Management Company as the case may be)

7.  **Disclaimer or forfeiture of Lease**

(a)  The Surety hereby further covenants with the Landlord and the Management Company that:-

   (i)  if the Crown or a liquidator or trustee in bankruptcy shall disclaim or surrender this Lease or

   (ii)  if this Lease shall be forfeited or

   (iii)  if the Tenant shall cease to exist unless the same occurs as part of an amalgamation merger or reconstruction resulting in a solvent corporation

   THEN the Surety shall if the Landlord by notice in writing given to the Surety within one hundred and eighty (180) days after such disclaimer or other event so requires accept from and execute and deliver to the Landlord a counterpart of a new lease of the Demised Premises (duly stamped at the Surety's expense) for a term commencing on the date of the disclaimer or other event and continuing for the residue then remaining unexpired of the Term such new lease to be at the cost of the Surety and to be at the same rents and subject to the same covenants conditions and provisions as are contained in this Lease

(b)  If the Landlord shall not require the Surety to take a new lease the Surety shall nevertheless upon demand pay to the Landlord a sum equal to the Rent and other sums that would have been payable under this Lease but for the disclaimer or other event in respect of the period from and including the date of such disclaimer or other event until the expiration of one hundred and eighty (180) days therefrom or until the Landlord shall have granted a lease of the Demised Premises to a third party (whichever shall first occur)

8.  **Benefit of guarantee and indemnity**

This guarantee and indemnity shall enure for the benefit of the successors and assigns of the Landlord and the Management Company respectively under this Lease without the necessity for any assignment thereof

9.  **Value Added Tax**

Where, pursuant to the terms of this Lease, the Landlord or the Management Company or any other person (for the purposes of this paragraph 9, the "**Supplier**") makes or is deemed to make a supply to the Surety for Value Added Tax purposes and Value Added Tax is or becomes chargeable on such supply, the Surety shall (in addition to and at the same time as providing any other consideration for such supply) pay to the Supplier a sum equal to the amount of such Value Added Tax and the Supplier shall provide the Surety with a Value Added Tax invoice in respect of such supply

10. **Guarantor to join in Authorised Guarantee Agreement**

The Surety covenants with the Landlord, and as a separate covenant with the Tenant, that the Surety will join in, and execute and deliver to the Landlord, any deed which the Tenant (here meaning only the Tenant whose obligations hereunder were originally guaranteed by that Surety) is required to execute and deliver to the Landlord pursuant to Clause 4.21.2(b)(i), so as to give the covenants on the part of the Surety therein contained

**EXHIBIT B**



CANARY WHARF

GROUP PLC

| | |
|---|---|
| Heron Quays (HQ2) T1 Limited | Heron Quays (HQ2) T2 Limited |
| One Canada Square | One Canada Square |
| Canary Wharf | Canary Wharf |
| London | London |
| E14 5AB | E14 5AB |

Tel: +44 (020) 7418 2000
Fax: +44 (020) 7418 2222
Registered in England and Wales No. 4290562

Tel: +44 (020) 7418 2000
Fax: +44 (020) 7418 2222
Registered in England and Wales No. 4290529

3 December 2010

To : Lehman Brothers Limited (in administration)

**Underlease (the "Lease") of 25 Bank Street, Canary Wharf, London E14 5LE: (the "Property") dated 16 March 2005: Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (together "the Landlord"): Lehman Brothers Limited (in administration) ("LBL")**

1       On the basis of the agreements and confirmations set out in this letter:

1.1     We hereby request consent of the Administrators of LBL (defined below) to our forfeiting the Lease by means of peaceable re-entry (so that therefore no leave of the Court will be required).

1.2     We hereby request your confirmation that following such forfeiture, LBL waives any right to apply to the Court for relief from forfeiture.

1.3     We hereby request your confirmation that the Administrators of LBL were appointed to act as joint administrators of LBL pursuant to Orders of the High Court of Justice, Chancery Division on 15 September 2008 and on 30 November 2009 (in respect of the appointment of Derek Anthony Howell).

2       We hereby warrant on the understanding that the Administrators of LBL and LBL rely on this confirmation that we are the Landlord of the Lease and the person to whom rent is payable and that we have a valid lawful and current right to forfeit the Lease by peaceable re-entry, and further that we shall exercise that right before 4.57pm on 10 December 2010.

CANARY WHARF
G R O U P   P L C

3    In consideration of the consents requested and confirmations given in paragraphs 1 and 2:

(a)    with effect from such forfeiture Heron Quays Properties Limited ("HQPL") and Canary Wharf Group plc ("CWG") will each unconditionally and irrevocably release and discharge  LBL and LBL will unconditionally and irrevocably release and discharge HQPL and CWG from an agreement dated 30 March 2001 between CWG and LBL relating to numbers 1 and 2 Broadgate and various other premises on the Broadgate Estate London EC2 (and any documents supplemental to it), ("the Broadgate Payments Agreement") and from any claims and counterclaims under the Broadgate Payments Agreement, and each of HQPL, CWG and LBL covenant and undertake in favour of each other that it will not make or suffer or cause to be made or maintained any claims or counterclaims in relation to the Broadgate Payments Agreement.

(b)    With effect from such forfeiture Canary Wharf Contractors Limited ("CWCL"), and Lehman Brothers Lease and Finance (No 1) Limited (in administration) ("LBLF") will each unconditionally and irrevocably release and discharge each other from any claims and counterclaims in relation to an agreement dated 30 March 2001 between LBL, CWCL and LBHI, as novated to LBLF by an agreement dated 29 November 2001 and any supplemental documents ("the Fit Out Contract") and each of CWCL and LBLF covenant and undertake in favour of the other that it will not make or suffer or cause to be made or maintained any claims or counterclaims in relation to the Fit Out Contract.

(c)    LBL and Canary Wharf (Car Parks) Limited, Heron Quays (RT3) T1 Limited, Heron Quays (RT3) T2 Limited and Canary Wharf Management Limited ("CWML")  agree that a Car Parking Agreement dated 16 March 2005 ("Car Parking Agreement") will terminate with effect from the date of forfeiture  and that such Car Parking Agreement and all other documents pertaining to the car parking spaces  will be extinguished and have no further effect, and further that each of LBL, Canary Wharf (Car Parks) Limited, Heron Quays (RT3) T1 Limited, Heron Quays (RT3) T2 Limited and CWML will each unconditionally and irrevocably release and discharge

CANARY WHARF
G R O U P    P L C

each other from any claims and counterclaims in relation to the Car Parking Agreement and each of those parties aforesaid covenant and undertake in favour of each other of those parties that it will not make or suffer or cause to be made or maintained any claims or counterclaims in relation to the Car Parking Agreement.

(d)     LBL and the Landlord acknowledge that tenant fixtures fittings chattels and furniture (other than those which are the property of sub-tenants in the building) as at 30 September 2010 have been left in the Property. LBL confirms, as far as it is aware, that it has not received any claim from any third party to any right, title or interest in any such fixtures fittings chattels and furniture and that with effect from such forfeiture  all such estate right title and interest as it may have in those items will be transferred to the Landlord in consideration of the payment of £1 by the Landlord.

(e)     LBL agrees to assign the benefit of the guarantee in relation to cabling works in the form attached on the date of forfeiture.

(f)     We warrant that we have the right to any rents under the Lease, whether fallen due and payable or arising (if any) after the date of this letter and before forfeiture.

(g)     CWG warrant that pursuant to agreements between CWG (or a group company of CWG ("CWG Group Company")) and Nomura International plc ("Nomura") relating to the Property and including an arrangement under which  a payment by CWG or a CWG Group Company was made to Nomura of an amount in excess of £6.5m (the "Arrangements"), CWG (and/or any CWG Group Company) has been released from any obligation it or they may have to take proceedings or other action on behalf of and/or at the request of Nomura  against LBL for unpaid rent and other liabilities under the Lease and further that  neither CWG nor any CWG Group Company has granted, is aware of or will co-operate with Nomura in respect of any rights which Nomura may have  against LBL in respect of such unpaid rent and other liabilities. CWG also warrant that, pursuant to the Arrangements, Nomura has unconditionally and irrevocably released and waived all and any Claims (defined below) against LBL (directly and indirectly) for unpaid rent and other liabilities

CANARY WHARF
GROUP PLC

under the Lease. CWG agrees to indemnify LBL in respect of any damage loss or liability it may suffer arising from any claim by Nomura and/or any assertion of rights by Nomura, and including any actual or purported rights of set off by Nomura, against LBL relating to (directly or indirectly) unpaid rent or other liabilities under the Lease and the Arrangements. For the avoidance of doubt, neither CWG nor any CWG Group Company shall be entitled to exercise any right of set-off, netting, combination of accounts, withholding or retention, arising pursuant to statute or otherwise, in respect of any sums payable to LBL under such indemnity.

(h)    LBL agrees to provide and procure that its solicitors shall provide to the Landlord all reasonable assistance the Landlord reasonably requires to deal to the satisfaction of the Land Registry with any requisitions which may be raised in connection with LBL's title to forfeit the Lease or any application the Landlord may make to close the title to the Lease.

4    We, Canary Wharf (Car Parks) Limited, Heron Quays (RT3) T1 Limited,  Heron Quays (RT3) T2 Limited and CWML agree that:

(a) in consideration of LBL agreeing to pay to the Landlord  £1.5m. on the date of forfeiture as notified by the Landlord to LBL in writing (such payment being made by way of a direct transfer from LBL's solicitors' bank account to such account as the Landlord shall notify LBL prior to the forfeiture of the Lease), LBL is unconditionally and irrevocably released and discharged from any claims as an administration expense for unpaid rent that fell due  and  was payable under the Lease before the  date of forfeiture,

(b) no amount, liability or obligation in relation to this letter shall be payable out of or charged on the property of LBL under paragraphs 99(3) or 99(4) of Schedule B1 to the Insolvency Act 1986 save for the payment of £1.5m. referred to in paragraph 4(a) (which payment is recognised and acknowledged by the Administrators of LBL as being so payable out of or charged on the property of LBL); and

(c) LBL is unconditionally and irrevocably released and discharged from any claims as an administration expense for any estate service charge and other sums that fell



due and were payable under the Lease and Car Parking Agreement before the date of forfeiture;

provided that LBL agrees that we and/or CWML may claim against LBL as an unsecured creditor for any unpaid rent and estate charge and any other sums falling due under the Lease up to the date of forfeiture.

**5    Confidentiality**

5.1    Subject as mentioned in Clauses 5.2 and 5.3, each party shall keep confidential the terms of this letter and all information received or obtained as a result of negotiating preparing executing performing or implementing it which relates to the other parties or any agent or sub-contractor acting on their behalf including for the avoidance of doubt all discussions relating to financial claims between the parties and any information concerning persons currently or previously employed by LBL in connection with the management of and services provided at the Property.  No party shall use such information for any purpose other than to perform its obligations under this letter.

5.2    Notwithstanding the other provisions of this clause 5 any party may after prior reasonable notification to the other parties whenever practicable (and in the event of any proposed disclosure of the arrangements referred to in clause 3(g) by LBL or the Administrators of LBL, after prior consultation with CWG and having regard to the confidential nature of the matters to which clause 3(g) relates) disclose confidential information if and to the extent:

(a)    required by law; or

(b)    required by any securities exchange on which any party's, or any group company of any party's, securities are listed or traded; or

(c)    required by any regulatory or governmental or other authority with relevant powers to which a party is subject or submits (whether or not the authority has the force of law); or

(d)    required to vest the full benefit of this letter in that party or to enforce any of the rights of that party in this letter; or

CANARY WHARF
G R O U P   P L C

(e)     required by its professional advisers officers employees consultants sub-contractors or agents to provide their services (and subject always to similar duties of confidentiality); or

(f)     such disclosure is to any party which has (or has had at any time) an interest in, or charge over, the Landlord's reversion or any superior interest to the Property or the income derived from the Property;

(g)     such disclosure is required to make all appropriate applications to the Land Registry in relation to this letter, the completion of the agreements and actions pursuant to this letter and the closure of LBL's registered title to the Property;

(h)     required in connection with complying with the requirements of TUPE;

(i)     that information is in or has come into the public domain through no fault of that party; or

(j)     the other parties have given prior written consent to the disclosure (such consent not to be unreasonably withheld); or

(k)     it is necessary to obtain any relevant tax clearances from any appropriate tax authority; or

(l)     such disclosure is being made to Lehman Brothers Holding Inc. or its advisors.

5.3     The confidentiality obligations in clause 5.1 shall not apply to:

(a) information disclosed in the exercise of the statutory duties of the Administrators of LBL or to the extent required by current insolvency practice or to enable the Administrators of LBL properly to carry out the duties of their office provided that the arrangements referred to in clause 3(g) may only be disclosed in any such circumstances after prior consultation with CWG and having regard to the confidential nature of the matters to which clause 3(g) relates; or

(b) disclosure of this letter by CWG or a CWG Group Company to a tenant, financier or purchaser (actual or intended) of the Property.

6       Release

A12788229/0.3/03 Dec 2010



6.1    The Landlord, HQPL, CWG, Canary Wharf (Car Parks) Limited, CWCL, Heron Quays (RT3) T1 Limited, Heron Quays (RT3) T2 Limited, and CWML (the "Releasing Parties") unconditionally and irrevocably release and discharge (and shall procure that their respective Group Companies unconditionally and irrevocably release and discharge) the Administrators of LBL and the Administrators of LBLF (together the "Administrators"), their firm, members, partners, employees, agents, advisers and representatives from any Claims and covenant and undertake in favour of the Administrators, their firm, members, partners, employees, agents, advisers and representatives that the Releasing Parties will not make or cause to be made or maintained (and that the Releasing Parties will procure that their respective Group Companies will not make or cause to be made or maintained) any Claim against the Administrators, their firm, members, partners, employees, agents, advisers and representatives. SAVE THAT the Releasing Parties shall not be prevented from making claims in respect of any liabilities under paragraph 5 of this letter.

6.2    For the purposes of paragraph 3(g) and 6.1 above, "Claims" means any and all claims, liabilities, damages, debts, losses, obligations, costs, expenses, notices of breach, reservations of rights, counter-claims, causes or rights of action or proceedings; whether at law or in equity of whatsoever nature (including but not limited to tort, breach of contract, misrepresentation, rescission, restitution, tracing, indemnity, contribution, breach of confidence, intentional misconduct, unfair harm or breach of copyright) and howsoever arising; in any jurisdiction whatsoever; whether accrued or unaccrued; whether known or unknown to the parties or any of their Group Companies; whether or not presently known to the law, and whether arising before, on or after the date of this letter and to the extent that (in any case) they relate to the Lease, the Broadgate Payments Agreement, the Car Parking Agreement, the Fit-Out Contract and/or the use of the Property.

6.3    For the purposes of this letter, "Group Company" means a group undertaking (as defined in the Companies Act 2006).

7.1    LBL acts by its administrators, Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell each a partner

# CANARY WHARF
### G R O U P    P L C

of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT (the "Administrators of LBL").

7.2    LBLF acts by its administrators, Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell each a partner of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT (the "Administrators of LBLF").

7.3    Subject to paragraph 7.4, the Administrators of LBL and the Administrators of LBLF have signed this letter as agents for and on behalf of LBL and LBLF respectively and neither they, their firm, members, partners, employees, agents, advisers or representatives shall incur any personal liability whatever in respect of any of the obligations undertaken by LBL and LBLF respectively; or in respect of any failure on the part of LBL and LBLF respectively to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations or under any document or assurance made pursuant to this letter. The exclusion of liability set out in this paragraph shall arise and continue notwithstanding the termination of the agency of the Administrators of LBL and the Administrators of LBLF respectively and shall operate as a waiver of any claims in tort as well as under the laws of contract.

7.4    The Administrators of LBL have signed this letter in their personal capacities solely for the purpose of providing the consent requested in paragraph 1.1, the recognition and acknowledgement in paragraph 4(b)  and receiving the benefit of the provisions of this letter in their favour.

Your agreement (and the agreement of HQPL, CWG, Canary Wharf (Car Parks) Limited, CWCL, Heron Quays (RT3) T1 Limited, Heron Quays (RT3) T2 Limited and CWML) to these terms will be confirmed by your (and the other parties') signature of a copy of this letter.

# CANARY WHARF
## G R O U P   P L C

Yours faithfully,

Heron Quays (HQ2) T1 Limited
and Heron Quays (HQ2) T2 Limited

We agree the terms of this letter.

..............................................................

For and on behalf of Canary Wharf Group plc

..............................................................

For and on behalf of Canary Wharf Contractors Limited

..............................................................

For and on behalf of Canary Wharf (Car Parks) Limited

..............................................................

For and on behalf of Heron Quays (RT3) T1 Limited



..............................................................

For and on behalf of Heron Quays (RT3) T2 Limited



..............................................................

For and on behalf of Heron Quays Properties Limited



..............................................................

A12788229/0.3/03 Dec 2010

CANARY WHARF
GROUP PLC

For and on behalf of Canary Wharf Management Limited

For and on behalf of Lehman Brothers Lease and Finance (No 1) Limited
(in administration) (acting as agent and without personal liability)

For and on behalf of Lehman Brothers Limited (in administration) (acting as agents and without
personal liability)

We agree the terms of this letter and give the consent

requested in paragraph 1.1 and the recognition and acknowledgement in paragraph 4(b):

Administrator

For and on behalf of the Administrators of LBL (without personal liability and
solely for the purpose of providing the consent requested in paragraph 1.1,the recognition and
acknowledgement in paragraph 4(b)  and receiving the benefit of the provisions of this letter in
their favour)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                  :        **Chapter 11 Case No.**
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                                       :
                     **Debtors.**                      :        **(Jointly Administered)**
-------------------------------------------------------------------x

**ORDER GRANTING**
**OBJECTION TO PROOFS OF CLAIM NUMBER 14824 AND 14826**

Upon the Objection to Proofs of Claim Number 14824 and 14826, dated August 15, 2012 (the "Objection"),[2] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, seeking the disallowance and expungement of proofs of claim number 14824 and 14826 (the "Claims") all as more fully described in the Objection; and due and proper notice of the Objection having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief requested in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Objection is granted; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the Claims are hereby disallowed and expunged in their entirety with prejudice; and it is further

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

1

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2012
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\44051049\5\58399.0008