WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Stephen A. Youngman

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Dennis F. Dunne
Evan R. Fleck

-and-

MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500
David S. Cohen

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                        :
              Debtors.                  :    (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

## NOTICE OF JOINT MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LITIGATION SUBCOMMITTEE OF CREDITORS' COMMITTEE, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT RELATED TO PROOFS OF CLAIM NUMBER 3813 AND 17120

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), and the litigation subcommittee of the Official Committee of Unsecured Creditors appointed in these cases (the "Committee") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's Order Modifying Certain Existing Claims Orders [ECF No. 29505], for approval of a settlement and compromise related to proofs of claim number 3813 and 17120, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **September 19, 2012 at 10:00 a.m. (Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that any objections to the Motion must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-182, to the extent

2

applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers

of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom

601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite 300,

Dallas, Texas 75201 (Attn: Stephen A. Youngman, Esq.); (iii) the Office of the United States

Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy

Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B. Schwartz, Esq.); (iv) attorneys for

the Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York,

New York 10005 (Attn: David S. Cohen, Esq. and Evan Fleck, Esq.); (v) attorneys for Wells

Fargo Bank Northwest, N.A. as Indenture Trustee, Bingham McCutchen LLP, 399 Park Avenue,

New York, New York 10022 (Attn: Joshua Dorchak, Esq.); (vi) attorneys for OMX Timber

Finance Investments II, LLC, K&L Gates LLP, 70 W. Madison Street, Suite 3100, Chicago,

Illinois 60602 (Attn: Sven T. Nylen, Esq.); (vii) attorneys for Boise Land & Timber II, LLC,

Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attn: Adam Paul, Esq.); and

(viii) all parties who have requested notice in these chapter 11 cases, so as to be so filed and

received by no later than **August 29, 2012 at 4:00 p.m. (Eastern Time)** (the "Objection

Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

3

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 15, 2012
      New York, New York

                                      /s/ Stephen A. Youngman
                                      Stephen A. Youngman

                                      WEIL, GOTSHAL & MANGES LLP
                                      200 Crescent Court, Suite 300
                                      Dallas, Texas 75201
                                      Telephone: (214) 746-7700
                                      Facsimile: (214) 746-7777

                                      Attorneys for Lehman Brothers Holdings Inc.
                                      and Certain of Its Affiliates


                                      /s/ Evan R. Fleck
                                      Dennis F. Dunne
                                      Evan R. Fleck

                                      MILBANK, TWEED, HADLEY & McCLOY LLP
                                      1 Chase Manhattan Plaza
                                      New York, New York 10005
                                      Telephone:  (212) 530-5000

                                      -and-

                                      David S. Cohen
                                      MILBANK, TWEED, HADLEY & McCLOY LLP
                                      1850 K Street, NW, Suite 1100
                                      Washington, D.C. 20006
                                      Telephone:  (202) 835-7500

                                      Attorneys for Litigation Subcommittee of the
                                      Official Committee of Unsecured Creditors

US_ACTIVE:\44023875\8\58399.0011

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Stephen A. Youngman

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Dennis F. Dunne
Evan R. Fleck

-and-

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500
David S. Cohen

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                  :
In re                                                             :        Chapter 11 Case No.
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :        **08-13555 (JMP)**
                                                                  :
             Debtors.                                             :        **(Jointly Administered)**
                                                                  :
-------------------------------------------------------------------x

**JOINT MOTION OF LEHMAN BROTHERS**
**HOLDINGS INC. AND LITIGATION SUBCOMMITTEE**
**OF CREDITORS' COMMITTEE, PURSUANT TO RULE 9019 OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT**
**AGREEMENT RELATED TO PROOFS OF CLAIM NUMBER 3813 AND 17120**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1] and the litigation subcommittee of the Official Committee of Unsecured Creditors appointed in these cases (the "Committee")[2] files this motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's Order Modifying Certain Existing Claims Orders [ECF No. 29505] for approval of a settlement agreement related to proofs of claim number 3813 and 17120, and respectfully represents as follows:

### Preliminary Statement

1.          By this motion, the Plan Administrator and the Committee seek approval of a settlement that resolves disputes regarding the allowance of two significant proofs of claim, the entitlement to certain cash deposits, and a pending motion for relief from the automatic stay extant in these cases.  As a result the settlement, (i) a claim filed by OMX Timber Finance Investments II, LLC ("OMX") against LBHI will be reduced by approximately half (a reduction of approximately $400 million), (ii) a Disputed Claim asserted by Boise Land & Timber II, LLC ("Boise") against LBHI will be disallowed (a reduction of approximately $11 million), (iii) LBHI will be entitled to approximately $11 million of cash currently held in a Collateral Account (defined below) and claimed by Boise, and (iv) OMX's motion for relief from the automatic stay will be deemed withdrawn.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[2] As used herein, "Committee" means, as applicable, either the litigation subcommittee of the Official Committee of Unsecured Creditors or the Official Committee of Unsecured Creditors.  "Creditors' Committee" means solely the Official Committee of Unsecured Creditors.

2

2.      The settlement agreement, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Settlement Agreement</u>"), resolves disputes that have been the subject of numerous motions, objections, stipulations, or other filings for over three-and-a-half years.  The Settlement Agreement allows LBHI and the Committee to avoid the expense and uncertainty attendant to continued litigation over these disputes.  It is the result of arms-length, good faith negotiations conducted after due diligence and informal discovery by the Plan Administrator, the Committee, the Indenture Trustee (as such term is defined below), OMX, and Boise (together, the "<u>Parties</u>"). The Plan Administrator and the Committee believe that the compromise embodied in the Settlement Agreement presents a reasonable resolution of the Parties' disputes and is in the best interest of LBHI, its estate, and its creditors.  The Committee is a party to, and fully supports, the Settlement Agreement.

## **Background**

3.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "<u>Debtors</u>") commenced with this Court voluntary cases (together, the "<u>Chapter 11 Cases</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.      On September 17, 2008, the United States Trustee for Region 2 appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

5.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012 (the "<u>Effective Date</u>").

3

6.      Pursuant to section 15.1 of the Plan, on the Effective Date, the Creditors'
Committee was dissolved for all purposes except for certain purposes not relevant to this motion.
Following the Effective Date, the litigation subcommittee of the Creditors' Committee was
permitted to continue functioning for limited purposes, including involvement in the resolution
process for certain pending litigation.

## Jurisdiction

7.      The Court has subject matter jurisdiction to consider and determine this
matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

8.      The Plan Administrator and the Committee seek approval of the
Settlement Agreement pursuant to Bankruptcy Rule 9019.  The Plan Administrator has
determined, in the exercise of its sound business judgment, that the Settlement Agreement is in
the best interests of LBHI, its estate, and its creditors and should be approved.

## The Relevant Proofs of Claim, Disputes, and Prior Stipulations[3]

9.      On October 29, 2004, Boise issued a promissory note to Boise Cascade
Corporation (the predecessor of OfficeMax Incorporated ("OfficeMax")) in the aggregate
principal amount of $817,500,000 (the "Installment Note").  Concurrently, LBHI issued (i) a
promissory note to Boise in the same aggregate principal amount (the "Collateral Note") and (ii)
a guaranty (the "Guaranty") guaranteeing Boise's obligations under the Installment Note in favor
of Boise Cascade Corporation.

---

[3] The description and characterization in this Motion of the events, facts, and circumstances giving rise to the claims
and disputes (and the settlement of certain of those claims and disputes) referenced herein and the claims and
disputes themselves, are for information purposes only, and are without prejudice to any claims, defenses, and rights
of the Parties.

4

10.     Although LBHI issued the Collateral Note to Boise, Boise immediately pledged the Collateral Note back to LBHI pursuant to a Pledge and Payment Direction Agreement, dated as of October 29, 2004 (the "Pledge Agreement").  Boise and LBHI also executed a Control Agreement, dated as of October 29, 2004 (the "Control Agreement"), which established a depository account (the "Collateral Account") at Lehman Brothers Bank FSB (n/k/a Aurora Bank FSB).  Under the Pledge Agreement, Boise appointed LBHI as its agent and directed LBHI to deposit all principal, interest, and other proceeds from the Collateral Note into the Collateral Account.  Boise further directed LBHI, as agent, to use the proceeds of the Collateral Note in the Collateral Account to make (i) payments of principal and interest to the holder of the Installment Note and (ii) payments of a Guaranty Fee (as defined in the Pledge Agreement) to LBHI.

11.     OfficeMax (as successor to Boise Cascade Corporation) subsequently assigned the Installment Note and the Guaranty to OMX.  Pursuant to an Indenture, dated December 21, 2004, Wells Fargo Bank Northwest, N.A., as Indenture Trustee (the "Indenture Trustee"), is authorized to compel or secure performance of obligations under the Installment Note and the Guaranty.

12.     On December 2, 2008, OMX filed a motion for relief from the automatic stay to allow OMX to issue demand notices under the Guaranty upon LBHI (the "Lift Stay Motion") [ECF No. 2023].  On December 19, 2008, the Committee filed an objection to the Lift Stay Motion (the "Lift Stay Objection") [ECF. No 2335], arguing, among other things, that LBHI will have no liability under the Guaranty if the demand notices are not issued.  LBHI joined in the Lift Stay Objection on December 21, 2008 [ECF No. 2340] (such joinder, together

5

with the Lift Stay Motion and the Lift Stay Objection, the "Lift Stay Filings").  A hearing to

consider the Lift Stay Filings has been adjourned without date.

13.     On or about April 17, 2009, Boise filed a proof of claim against LBHI in

an amount not less than $833,781,693.00 relating to LBHI's obligations under the Collateral

Note (the "Boise Claim").  The Boise Claim was assigned claim number 3813.

14.     On or about September 18, 2009, OMX filed an amended proof of claim

against LBHI in an amount not less than $844,896,060.00 relating to LBHI's obligations under

the Guaranty (the "OMX Claim").  The OMX Claim was assigned claim number 17120.

Pursuant to a stipulation among the Debtors, OMX, and the Indenture Trustee, dated September

16, 2011 [ECF. No. 20076], the Indenture Trustee has the authority to prosecute and defend the

OMX Claim.

15.     Pursuant to a stipulation, dated October 7, 2011 [ECF No. 20788] (the

"Classification Stipulation"), the Debtors, OMX, and the Indenture Trustee reached an

agreement as to the classification of the OMX Claim, to the extent such claim is allowed,

pursuant to the Plan.

16.     On November 10, 2011, LBHI, the Committee, Boise, OMX, the

Indenture Trustee, and several holders of notes issued by OMX entered into a stipulation that

narrowed the scope of the disputes between the Parties (the "Initial Claim Stipulation").  On

December 14, 2011, the Court entered an order approving the Initial Claim Stipulation pursuant

to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules [ECF No.

23339].  The Initial Claim Stipulation provided that the OMX Claim would be deemed a

Disputed Claim and the Boise Claim would be bifurcated such that (i) Boise would have an

Allowed Claim in the amount of $822,767,607.00 (the "Allowed Boise Claim") and (ii) the

6

remaining portion of the Boise Claim would be deemed a Disputed Claim (the "Disputed Boise Claim").  Although the Disputed Boise Claim was filed as an unsecured claim, Boise has asserted, as part of such claim, a priority entitlement to roughly $11 million – an amount corresponding to the alleged amount of funds deposited in the Collateral Account.

17.    The Initial Claim Stipulation also established a discovery and briefing schedule to facilitate an efficient resolution of the remaining disputes concerning the OMX Claim and the Disputed Boise Claim (together, the "Disputed Claims").

18.    On February 29, 2012, the Committee filed with the Court a preliminary objection to the Disputed Claims (the "Committee Objection") [ECF No. 25925], objecting to allowance of the Disputed Claims on the grounds that:

a.  LBHI has no liabilities under the Guaranty because OMX has not served demand notices on LBHI (except to the extent notices may have been served in violation of the automatic stay); therefore, there is no basis for the OMX Claim, and it should be disallowed in full;

b.  Even if the Court permits OMX to trigger LBHI's obligations under the Guaranty, which it should not, the OMX Claim is duplicative of the Allowed Boise Claim; therefore, the OMX Claim should be disallowed in full;

c.  LBHI's obligations under the Guaranty and the Collateral Note are not separate obligations and should be collapsed, resulting in only one claim against LBHI; because a claim on account of the Collateral Note has already been allowed (the Allowed Boise Claim), the OMX Claim should be disallowed in full; and

d.  Boise has not submitted sufficient factual or legal support for the Disputed Boise Claim; therefore, the Disputed Boise Claim should be disallowed in full.

7

19.    The Committee, in consultation with the Plan Administrator, also submitted certain factual and legal support to the Indenture Trustee, Boise, OMX, and several holders of notes issued by OMX (collectively, the "OMX Parties") in support of disallowance of the Disputed Claims.  In so doing, the Committee raised the additional argument that, as a result of the Pledge Agreement and the Control Agreement, LBHI has a security interest in the Collateral Note and the funds in the Collateral Account, and this security interest, among other things, grants LBHI a lien on any proceeds of the Collateral Note, including any distributions made to Boise on account of the Allowed Boise Claim.

20.    In accordance with the Initial Claim Stipulation, the OMX Parties submitted to the Plan Administrator and the Committee all factual and legal support they intended to offer in support of allowance of the Disputed Claims.  Among other things, the OMX Parties argued that:

a.  Even if the automatic stay prevented effective service of demand notices, the automatic stay cannot affect OMX's underlying substantive right to payment under the Guaranty;

b.  LBHI received all the notice required by the Bankruptcy Code;

c.  The notice provision contained in the Guaranty does not absolve LBHI of its obligations under the Guaranty, and the Guaranty was not designed to be inoperative in the event of LBHI's bankruptcy;

d.  The OMX claim is not duplicative of the Allowed Boise Claim, and LBHI's obligations under the Guaranty and the Collateral Note should not be collapsed; and

e.  At most, the Pledge Agreement and Control Agreement grant LBHI a security interest only in the funds in the Collateral Account and only for the limited purpose of

securing Boise's obligations to pay certain fees related to the Guaranty; however,

neither the Pledge Agreement nor the Control Agreement provide LBHI with

recourse against OMX, Boise, or the funds in the Collateral Account as a result of

LBHI's bankruptcy.

### The Settlement Agreement[4]

21.    In accordance with the terms of the Initial Claim Stipulation, the OMX

Parties participated in two in person meetings with the Plan Administrator and the Committee to

discuss resolution of the Disputed Claims.  As a result of these meetings and related discussions

and negotiations among the OMX Parties, the Plan Administrator, and the Committee, the Parties

were able to agree on a settlement of their disputes, the terms of which are set forth in the

Settlement Agreement.

22.    The Settlement Agreement provides for the following, among other things:

(i) the OMX Claim shall be reduced and allowed in the amount of $441,580,881.75 (the

"Allowed OMX Claim") and treated in accordance with Paragraph 2 of the Classification

Stipulation, and any asserted amounts in excess of $441,580,881.75 shall be disallowed and

expunged; (ii) the Disputed Boise Claim shall be disallowed; and (iii) none of Boise, OMX or

the Indenture Trustee shall have any right, title or interest in, or any obligations with respect to

the Collateral Account or any other account to which the funds in the Collateral Account may

have been transferred, and any such accounts or funds shall be, as among the Parties, the

property of LBHI.

---

[4] The terms described below are provided as a summary of the terms of the Settlement Agreement.  In the case of an
inconsistency between the terms set forth in this summary and the terms of the Settlement Agreement, the terms of
the Settlement Agreement shall control.

9

23.     Among other things, Section 8.13 of the Plan establishes the maximum amount of Distributions that an Allowed Guarantee Claim may receive.  In anticipation of future settlements regarding the Allowed amount of Guarantee Claims, Section 8.13 of the Plan further provides that the Debtors may agree to a maximum Distribution amount other than the amount specified in Section 8.13 of the Plan.  In accordance with Section 8.13 of the Plan, the Parties have agreed that the Allowed OMX Claim shall be deemed satisfied in full, and shall receive no further Distributions, once LBHI has made Distributions on account of the Allowed OMX Claim that combined with (A) Distributions on account of the Allowed Boise Claim and (B) any consideration provided on the corresponding Primary Claim against Boise equal the Allowed amount of the Boise Claim.

24.     Among other things, Section 8.14 of the Plan grants certain rights to the Debtors, including the right of subrogation, recoupment, and reimbursement, "except as otherwise agreed by the Debtors."  In accordance with Section 8.14 of the Plan, the Plan Administrator has agreed to waive its right to seek reimbursement against Boise for amounts paid on account of the Allowed OMX Claim and has agreed to waive certain of its rights to subrogation and recoupment, among other rights.  Despite these waivers, LBHI has ensured that neither the Allowed Boise Claim nor the Allowed OMX Claim will receive Distributions in excess of the maximum amount of Distributions applicable to such Claims because the Settlement Agreement expressly provides that (i) the holders of such Claims shall promptly return to LBHI any Distributions received by them in excess of the Claims' maximum recovery amounts and (ii) LBHI shall have the right to retain any further Distributions on account of such Claims once such Claims are satisfied in full.

10

25.     The Settlement Agreement further provides that the Lift Stay Filings and the Committee Objection shall be deemed withdrawn.

**The Settlement Agreement Meets the Legal Standard Established Under
Bankruptcy Rule 9019 and Is in the Best Interests of LBHI and Its Estate**

26.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *Anderson*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

27.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness. *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the

11

estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

28.    While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact. . . .  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness."  *Nellis*, 165 B.R. at 123 (internal citations omitted).

29.    The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise."  *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . .  If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

30.    The Settlement Agreement satisfies the standard for approval.  For over three-and-a-half years, the Boise Claim and the OMX Claim have been the subject of numerous motions, objections, stipulations, and other filings.  In order to avoid the expense and uncertainty attendant to continuing to litigate the validity of the OMX Claim and the Disputed Boise Claim, the Parties have agreed to resolve their differences in accordance with the terms set forth in the

Settlement Agreement.  The Settlement Agreement provides mutually-acceptable benefits to all Parties and incorporates mutually-acceptable concessions by all Parties.  As a result of the Settlement Agreement, over $400 million of claims asserted against LBHI will be disallowed, and LBHI will no longer be required to reserve Distributions (past or future) on account of such disallowed Claims.  In addition, approximately $11 million of Cash that was held in the Collateral Account will be Available Cash for future Distributions in accordance with the Plan.

31.     The compromise set forth in the Settlement Agreement, which has the full support of the Committee, is a "fair and equitable" resolution of the issues discussed herein, is well within the "range of reasonableness," is an appropriate exercise of the Plan Administrator's sound business judgment, and is in the best interests of LBHI's estate and its creditors. Accordingly, the Plan Administrator and the Committee request that the Settlement Agreement be approved.

### Notice

32.     No trustee has been appointed in the Chapter 11 Cases.  Notice of this motion has been served on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for Boise; (vi) the attorneys for OMX; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator and the Committee submit that no other or further notice need be provided.

33.     No previous request for the relief sought herein has been made by the Plan

13

Administrator, LBHI, or the Committee to this or any other Court.

WHEREFORE the Plan Administrator and the Committee respectfully request

that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  August 15, 2012
      New York, New York

/s/ Stephen A. Youngman
Stephen A. Youngman

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

/s/ Evan R. Fleck
Dennis F. Dunne
Evan R. Fleck

MILBANK, TWEED, HADLEY & M$^c$CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

-and-

David S. Cohen
MILBANK, TWEED, HADLEY & M$^c$CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

14

**Exhibit A**

**(The Settlement Agreement)**

EXECUTION VERSION

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of August 15, 2012 by and among (i) Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator for LBHI under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1] (ii) the Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 Case (as defined below), (iii) Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as Indenture Trustee (the "Trustee") under that certain Indenture dated December 21, 2004 (the "Indenture") between the Trustee and OMX Timber Finance Investments II, LLC ("OMX"), (iv) OMX, and (v) Boise Land & Timber II, LLC ("Boise"). LBHI, the Committee, the Trustee, OMX, and Boise shall each be referred to individually as a "Party" and collectively as the "Parties."

# RECITALS

WHEREAS:

A.    In late 2004, the Parties (other than the Committee), among other parties, entered into a series of transactions concerning the installment sale of certain timberland and related financing arrangements, as memorialized by several documents, including, without limitation, an Installment Note, a Guaranty, a Collateral Note, a Pledge and Payment Direction Agreement, a Control Agreement, and the Indenture (collectively, the "Transaction").

B.    On September 15, 2008 and on various dates thereafter, LBHI and certain of its affiliates (collectively, the "Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (collectively, the "Chapter 11 Case").

C.    On December 2, 2008, OMX filed its Motion for Limited Relief from the Automatic Stay (the "Lift Stay Motion") [Docket No. 2023], to which the Committee filed an objection [Docket No. 2335], to which the Debtors filed a joinder [Docket No. 2340] (such motion and objection and joinder collectively, the "Lift Stay Filings"). An initial hearing was held on the Lift Stay Motion on December 22, 2008; further proceedings were adjourned indefinitely and the Lift Stay Motion was not decided.

D.    On December 24, 2008, OMX filed a proof of claim against LBHI, which was assigned claim number 1439 by the Debtors' claims agent (the "Initial OMX Claim").

---

[1] Capitalized terms not defined in this Agreement shall have the meanings ascribed to such terms in the Plan.

E.     On or about April 17, 2009, Boise filed a proof of claim against LBHI in the amount of not less than $833,781,693.00, which was assigned claim number 3813 by the Debtors' claims agent (the "Boise Claim").

F.     On or about September 18, 2009, OMX amended the Initial OMX Claim by filing an amended proof of claim against LBHI in the amount of not less than $844,896,060.00, which was assigned claim number 17120 by the Debtors' claims agent (the "OMX Claim").

G.     On or about September 21, 2009, the Trustee filed a proof of claim against LBHI in the amount of not less than $844,896,060.00, which was assigned claim number 24151 by the Debtors' claims agent (the "Trustee Claim").

H.     On April 28, 2011, the Bankruptcy Court disallowed and expunged the Initial OMX Claim pursuant to the Second Supplemental Order Granting Debtors' Second Omnibus Objection to Claims (Amended and Superseded Claims) [Docket No. 16348].

I.     On September 16, 2011, LBHI, OMX and the Trustee entered into a Stipulation to Withdraw Proof of Claim Number 24151 (the "Clarification Stipulation"), which provides, among other things, that (i) the Trustee Claim is withdrawn and its supporting documentation is deemed incorporated into the OMX Claim, and (ii) the Trustee shall have the authority to prosecute and defend the OMX Claim.

J.     On October 7, 2011, LBHI, OMX and the Trustee entered into a Stipulation and Agreement Relating to the Classification of the Claim of OMX Timber Finance Investments II, LLC under the Debtors' Third Amended Joint Chapter 11 Plan (the "Classification Stipulation") [Docket No. 20788], which provides, among other things, that the OMX Claim shall be classified in LBHI Class 3 under the Plan, subject to certain modifications set forth in the Classification Stipulation.

K.     On December 6, 2011, the Bankruptcy Court entered an order confirming the Plan [Docket No. 23023].

L.     On December 14, 2011, the Bankruptcy Court approved [Docket No. 23339] a Stipulation Concerning Certain Proofs of Claim among LBHI, the Committee, OMX, Boise, the Trustee and various individual parties (the "Initial Claim Stipulation"), which provides, among other things, that: (i) a portion of the Boise Claim is Allowed in LBHI Class 3 under the Plan in the amount of $822,767,607.00 (the "Allowed Boise Claim"); (ii) the remaining portion of the Boise Claim is a Disputed Claim, subject to further negotiations among the Parties (the "Disputed Boise Claim"); and (iii) the OMX Claim is a Disputed Claim (the OMX Claim and the Disputed Boise Claim together, the "Disputed Claims"), subject to further negotiations among the Parties.

2

M.    On February 29, 2012, the Committee filed a Preliminary Objection of Official Committee of Unsecured Creditors to OMX Claim and Disputed Boise Claim (the "Committee Objection") [Docket No. 25925].

N.    On March 6, 2012, the Plan became effective in accordance with its terms.

O.    The Parties have engaged in extensive arm's length negotiations concerning the Disputed Claims and other aspects of the Transaction.

P.    The Parties wish to resolve all outstanding issues regarding the matters described above and to avoid extensive and expensive litigation in connection therewith.

NOW, THEREFORE, the Parties agree as follows:

## AGREEMENT

1.    *Effectiveness of Agreement*.

1.1.    This Agreement, except for Sections 2 and 5, shall be effective upon the first date upon which this Agreement is signed by all of the Parties (the "Execution Date").

1.2.    This Agreement, including Sections 2 and 5, shall be fully effective upon the first date upon which this Agreement has been approved by a Final Order[2] (the "Effective Date").

1.3.    As soon as practicable after the Execution Date, LBHI and the Committee shall jointly (i) file with the Bankruptcy Court a motion (the "Approval Motion") pursuant to the Bankruptcy Court's Order Modifying Certain Existing Claims Orders [Docket No. 29505], entered on July 18, 2012, seeking entry of an order approving this Agreement and (ii) notice the objection deadline and the hearing on the Approval Motion for the earliest dates then available under the Second Amended Case Management Order (the "CMO") [Docket No. 9635].

1.4.    In the event that no timely objection is filed to the Approval Motion, LBHI shall promptly file a No Objection Package (as defined in the CMO) concerning the Approval Motion.

---

[2] A "Final Order" shall mean an order of the Bankruptcy Court (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely-filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such appeal or petition has been withdrawn, dismissed or resolved by the highest court to which the order or judgment was timely appealed or from which review, rehearing, remand, or a writ of certiorari was timely sought; *provided that* the possibility of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous Federal Rule of Bankruptcy Procedure or other applicable law being filed with respect to such order will not cause such order not to be a Final Order.

US_ACTIVE:\44072044\3\58399.0011

1.5.    The Parties shall make commercially reasonable efforts to secure approval of the Approval Motion by a Final Order and shall cooperate with each other in such efforts.

1.6.    In the event that approval of this Agreement is denied by a Final Order, this Agreement shall be void *ab initio* and the Parties shall be restored to their respective positions as of the date prior to the Execution Date, with the same effect as that provided for in the event of a Termination pursuant to Section 6 of this Agreement.

2.    *Settlement of Disputes Concerning the Claims*.

2.1.    Upon the Effective Date, the Disputed Boise Claim shall be disallowed.

2.2.    Upon the Effective Date, the OMX Claim shall be reduced and Allowed in the amount of $441,580,881.75 and treated in accordance with Paragraph 2 of the Classification Stipulation (the "Allowed OMX Claim"), and any asserted amounts in excess of $441,580,881.75 shall be disallowed and expunged.

2.3.    Upon the Effective Date, the Allowed Boise Claim and the Allowed OMX Claim (and any Distributions in respect thereof) shall be free and clear of any claim, counterclaim, reduction or encumbrance of or by LBHI and shall not be subject to any claims, objections or defenses of or by LBHI, whether by way of netting, setoff, recoupment, reimbursement, counterclaim, subrogation (except to the extent expressly authorized by subsection (c) below), disgorgement (except to the extent expressly authorized by subsection (c) below), or otherwise, or any claim of or by LBHI under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors; *provided that* LBHI's rights under Sections 8.13 and 8.14 of the Plan shall be preserved with respect to the Allowed Boise Claim and the Allowed OMX Claim, except to the extent modified by the terms of this Section 2.3 (including without limitation subsections (a), (b) and (c)).

(a)    In accordance with Section 8.13(a) of the Plan, the Allowed OMX Claim shall be deemed satisfied in full when (i) it receives Distributions on account of the Allowed OMX Claim in the Allowed amount of such Claim or (ii) Distributions received on account of the Allowed OMX Claim combined with (A) Distributions on account of the Allowed Boise Claim and (B) any consideration provided on account of the corresponding Primary Claim of OMX against Boise (excluding any Distributions pursuant to the foregoing clause (A)) equal the Allowed amount of the Allowed Boise Claim.

(b)    In accordance with Section 8.13(b) of the Plan, in no event shall the Allowed OMX Claim (i) receive Distributions on account of the Allowed OMX Claim that are in excess of the Allowed amount of such Claim or (ii) receive Distributions on account of the Allowed OMX Claim that combined with (A)

4

Distributions on account of the Allowed Boise Claim and (B) any consideration provided on account of the corresponding Primary Claim of OMX against Boise (excluding any Distributions pursuant to the foregoing clause (A)) are in excess of the Allowed amount of the Allowed Boise Claim.

(c)    LBHI shall waive its rights under Section 8.14 of the Plan with respect to the Allowed Boise Claim and the Allowed OMX Claim; *provided* that (i) if the Allowed Boise Claim is deemed satisfied in full in accordance with Section 8.13(a) of the Plan, (A) the holder of the Allowed Boise Claim shall promptly return to LBHI any Distributions received by it in excess of the Allowed Boise Claim's maximum recovery pursuant to Section 8.13(b) of the Plan, (B) LBHI shall have the right to retain any further Distributions on account of the Allowed Boise Claim, and (C) any Distributions returned to or retained by LBHI pursuant to this Section 2.3(c) shall be treated as Available Cash of LBHI and distributed accordingly, and (ii) if the Allowed OMX Claim is deemed satisfied in full in accordance with Section 2.3(a) above, (A) the holder of the Allowed OMX Claim shall promptly return to LBHI any Distributions received by it in excess of the applicable maximum recovery pursuant to Section 2.3(b) above, (B) LBHI shall have the right to retain any further Distributions on account of the Allowed OMX Claim, and (C) any Distributions returned to or retained by LBHI pursuant to this Section 2.3(c) shall be treated as Available Cash of LBHI and distributed accordingly.

2.4.    Upon the Effective Date, none of Boise, OMX or the Trustee shall have any right, title or interest in, or any obligations with respect to, the account designated "LBHI as Agent for Boise Land & Timber II, L.L.C. Collateral Account" (account number xxxxxxx0211) at Aurora Bank FSB (f/k/a Lehman Brothers Bank FSB) (the "Aurora Bank Account") or the account designated "Boise Land & Timber" (account number xxxxxx0203) at Citibank to which the funds in the Aurora Bank Account were transferred (the "Collateral Account"), and any funds in the Collateral Account shall be, as among the Parties, the property of LBHI. Upon the Effective Date, LBHI shall be authorized to present this Agreement to the bank at which the Collateral Account is maintained and, notwithstanding any other document or agreement, entitled to withdraw or transfer any and all funds in the Collateral Account without further authorization from or notice to Boise, OMX, or the Trustee.

2.5.    Upon the Effective Date, the Lift Stay Filings and the Committee Objection shall be deemed withdrawn.

2.6.    Within five Business Days after the Effective Date, LBHI's counsel shall direct the Debtors' Court-appointed claims agent to modify the OMX Claim and the Boise Claim on the Debtors' claims registry to reflect the terms provided for in this Agreement, by delivery of instructions substantively the same as those provided in Exhibit A to this Agreement.

3.    ***The Trustee's, OMX's and Boise's Representations, Warranties and Agreements***.  In order to induce LBHI and the Committee to enter into and perform their obligations under this Agreement, the Trustee, OMX and Boise hereby represent,

US_ACTIVE:\44072044\3\58399.0011

warrant, acknowledge and agree, each solely as to itself and not as to any other person, and subject to the occurrence of the Effective Date to the extent applicable, as follows:

3.1.  *Authority*. (i) The Trustee, OMX and Boise have the power and authority to execute, deliver and perform their obligations under this Agreement, and to consummate the transactions contemplated herein, and (ii) the execution, delivery and performance by the Trustee, OMX and Boise of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Trustee, OMX and Boise and no other proceedings on the part of the Trustee, OMX and Boise are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

3.2.  *Validity*. This Agreement has been duly executed and delivered by the Trustee, OMX and Boise and constitutes the legal, valid and binding agreement of the Trustee, OMX and Boise, enforceable against each of the Trustee, OMX and Boise in accordance with its terms.

3.3.  *Authorization of Governmental Authorities*. No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by the Trustee, OMX or Boise pursuant to this Agreement.

3.4.  *Title; No Prior Transfer of Claims*.

(a)  *Title.* OMX is the legal owner and record holder of the OMX Claim and as such OMX is entitled, as an initial matter, to receive any proceeds of the Allowed OMX Claim, subject to the rights of the Trustee. Boise is the legal owner and record holder of the Boise Claim and as such Boise is entitled, as an initial matter, to receive any proceeds of the Allowed Boise Claim, subject to the rights of OMX and the Trustee.

(b)  *Transfer.* Prior to the Bankruptcy Court's entry of an order granting or denying the Approval Motion, each of OMX and Boise shall not convey, transfer, assign, or participate, in whole or in part, any of the claims that are the subject of this Agreement, or any rights or interests arising thereunder or related thereto.

3.5.  *No Reliance*. Each of the Trustee, OMX and Boise (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon LBHI and the Committee or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as each of the Trustee, OMX and Boise has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each of the Trustee, OMX and Boise has relied upon each of LBHI's and the Committee's express

6

representations, warranties and covenants in this Agreement. Each of the Trustee, OMX and Boise acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

4. ***LBHI's and the Committee's Representations, Warranties and Agreements***. In order to induce the Trustee, OMX and Boise to enter into and perform their obligations under this Agreement, LBHI and the Committee hereby represent, warrant, acknowledge, and agree, each solely as to itself and not as to any other person, and subject to the occurrence of the Effective Date to the extent applicable, as follows:

4.1. *Authority*. (i) LBHI and the Committee have the power and authority to execute, deliver and perform their obligations under this Agreement, and (ii) the execution, delivery and performance by LBHI and the Committee of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Party and no other proceedings on the part of such Party are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

4.2. *Validity*. This Agreement has been duly executed and delivered by LBHI and the Committee and constitutes the legal, valid and binding agreement of LBHI and the Committee, enforceable against LBHI and the Committee in accordance with its terms.

4.3. *Authorization of Governmental Authorities*. No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by LBHI and the Committee of their respective obligations hereunder, other than approval by a Final Order to the extent required under Section 1 of this Agreement.

4.4. *No Reliance*. Each of LBHI and the Committee (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon the Trustee, OMX or Boise or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as each of LBHI and the Committee has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied upon the Trustee's, OMX's and Boise's express representations, warranties and covenants in this Agreement, which it enters into voluntarily and of its own choice and not under coercion or duress.

5. ***Releases.***

5.1. *Releases by LBHI*. Upon the occurrence of the Effective Date, and except as to the agreements, promises, settlements, representations and warranties set

7

forth in this Agreement, and in consideration of the foregoing, LBHI, as Plan Administrator for LBHI, on behalf of itself and LBHI and LBHI's estate, and their successors and assigns, fully and forever release, discharge and acquit the Trustee, OMX, and Boise, and their respective owners, directors, officers, employees, financial advisors, accountants, attorneys, and other representatives, all in their capacities as such, and their successors and assigns, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, claims, defenses and counterclaims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, arising from the Transaction or from the settlement of the claims arising therefrom; *provided that* the foregoing releases do not apply to intentional torts, fraud, recklessness, gross negligence or willful misconduct; and *provided further that* the foregoing releases shall not impair LBHI's rights under Section 8.13 or 8.14 of the Plan solely to the extent such rights are preserved in Section 2.3 of this Agreement. The Parties further agree that any current or former holder of the Allowed OMX Claim that receives or has received Distributions on account of the Allowed OMX Claim shall be liable, jointly and severally, to LBHI for the disgorgement of any Distributions received in excess of the applicable maximum recovery on the Allowed OMX Claim pursuant to Section 2.3 of this Agreement.

5.2.    *Releases by the Trustee, OMX and Boise.* Upon the occurrence of the Effective Date, and except as to (i) the Allowed Boise Claim, (ii) the Allowed OMX Claim, and (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and in consideration of the foregoing, the Trustee, OMX and Boise, and their successors and assigns, fully and forever release, discharge and acquit LBHI (for itself and its estate and as Plan Administrator for LBHI) and the Committee (including any and all current and former members of the Committee, solely in their capacities as such), and their respective owners, directors, officers, employees, financial advisors, accountants, attorneys, and other representatives, all in their capacities as such, and their successors and assigns, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, arising from the Transaction or from the settlement of the claims arising therefrom; *provided that* the foregoing releases do not apply to intentional torts, fraud, recklessness, gross negligence or willful misconduct.

5.3.    *Waiver of Statutory Limitations on Releases.* Each of the releasing parties in each of the releases contained herein expressly acknowledges that, although ordinarily a release may not extend to claims which the releasing party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account

8

in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including, without limitation, the provisions of California Civil Code section 1542. The releases contained herein are effective regardless of whether matters released thereby are presently known or unknown, suspected or unsuspected, foreseen or unforeseen.

6.      *Termination*.

6.1.      *LBHI's and the Committee's Right to Terminate*. Prior to the Effective Date, each of LBHI and the Committee shall have the right, in its discretion, to terminate this Agreement by written notice to the other Parties hereto if there is a breach, in any material respect, of the representations, warranties and/or covenants of the Trustee, OMX or Boise under this Agreement, taken as a whole, that has not been cured within three Business Days after notice thereof given to each of the Trustee, OMX and Boise.

6.2.      *The Trustee's, OMX's and Boise's Right to Terminate*. Prior to the Effective Date, each of the Trustee, OMX, and Boise shall have the right, in its discretion, to terminate this Agreement by written notice to LBHI, the Committee, and the other Parties hereto if there is a breach, in any material respect, of the representations, warranties and/or covenants of LBHI or the Committee under this Agreement, taken as a whole, that has not been cured within three Business Days after notice thereof given to each of LBHI and the Committee.

6.3.      *Mutual Termination.* This Agreement may be terminated at any time prior to the Effective Date with the written consent of all of the Parties.

6.4.      *Effect of Termination*. In the event that this Agreement is terminated in accordance with its terms, neither this Agreement (except for this Section 6) nor any motion or other papers filed in the Bankruptcy Court or on appeal with respect to the approval of this Agreement shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, and the Parties shall be automatically relieved of any further obligations under this Agreement. Upon such termination, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties' rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

9

7.    *Venue and Choice of Law*.

7.1.    *Venue*.    The Parties agree that in the Approval Motion, LBHI shall request that the Bankruptcy Court shall retain jurisdiction over any actions or proceedings relating to the enforcement or interpretation of this Agreement and that any order approving this Agreement shall so provide.  The Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.  Each of the Parties consents to the Bankruptcy Court entering a final judgment determining such matter and agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.  If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement or interpretation of this Agreement and/or any actions or proceedings arising hereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction.  Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.  Each Party irrevocably consents to service of process in the manner provided for notices in Section 8 hereof.  Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

7.2.    *Choice of Law*.    This Agreement and all claims and disputes arising out of or in connection with this Agreement shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, as applicable, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code, as applicable.

8.    *Notices*.    All notices and other communications given or made pursuant to this Agreement shall be in writing and all communications shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by email if received during normal business hours of the recipient, and if not so received, then on the next Business Day, or (c) when delivery is confirmed by a nationally recognized overnight courier, with written verification of receipt.  All communications shall be sent:

To LBHI at:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 39th Floor

10

New York, New York 10020
Attn:    Daniel J. Ehrmann
         Debra Cash

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Attn:    Stephen A. Youngman, Esq.

To the Committee at:

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York  10005
Attn:    Evan R. Fleck, Esq.

To the Trustee at:

Wells Fargo Bank Northwest, N.A.
299 South Main Street, 12th Floor
Salt Lake City, Utah  84111
Attn:    Corporate Trust Services

With a copy (which shall not constitute notice) to:

Bingham McCutchen LLP
399 Park Avenue
New York, New York 10022
Attn:  Joshua Dorchak, Esq.

To OMX at:

OMX Timber Finance Investments II, LLC
c/o OfficeMax Incorporated
263 Shuman Boulevard
Naperville, Illinois  60563
Attn:    Susan Wagner-Fleming, Senior Vice President,
Corporate Secretary and Associate General Counsel

With a copy (which shall not constitute notice) to:

K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602

US_ACTIVE:\44072044\3\58399.0011

Attn:    J. Craig Walker, Esq.

To Boise at:

Boise Land & Timber II, LLC
1111 West Jefferson Street
P.O. Box 50
Boise, Idaho  83728
Attn:    Thomas E. Carlile

With a copy (which shall not constitute notice) to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois  60654
Attn:    Adam Paul, Esq.

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

9.    ***Expenses***.  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party, and not by any other Party.

10.    ***No Admission of Liability***.  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of any fact, liability or wrongdoing.

11.    ***Entire Agreement***.    This Agreement constitutes the entire agreement of the Parties concerning the subject matter hereof, and supersedes any and all prior or contemporaneous agreements among the Parties concerning the subject matter hereof. The Parties acknowledge that this Agreement is not being executed in reliance on any oral or written agreement, promise or representation not contained herein.

12.    ***No Oral Modifications***.  This Agreement, including this section 12, may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of LBHI or the Committee must be provided in a writing signed by the Trustee, OMX and Boise.  Any waiver of compliance with any term or provision of this Agreement on the part of the Trustee, OMX or Boise must be provided in a writing signed by each of LBHI and the Committee.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

12

13.    *Construction*.  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party based on the drafting of this Agreement, and any rule or maxim of construction to such effect shall not apply to this Agreement.

14.    ***Binding Effect; Successor and Assigns***.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.

15.    *Counterparts*.  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

16.    *Headings*.  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to sections, unless otherwise indicated, are references to sections of this Agreement.  All Exhibits to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.

17.    *Severability and Construction*.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect only if the essential terms and conditions of this Agreement applicable to each Party remain valid, binding and enforceable.  If such essential terms and conditions are no longer valid, binding and enforceable as the result of any illegal, invalid or unenforceable provision, the Parties shall use all reasonable efforts to modify this Agreement (and to obtain the Bankruptcy Court's approval thereof, if necessary or advisable) so as to eliminate such provisions while preserving the intent of the Parties.

18.    *Acknowledgments*.  THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREIN ARE THE PRODUCT OF NEGOTIATIONS AMONG THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES.  NOTHING IN THIS AGREEMENT SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY THE BANKRUPTCY CODE, THE SECURITIES ACT OF 1933 (AS AMENDED), THE SECURITIES EXCHANGE ACT OF 1934 (AS AMENDED), ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY AN ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

19.    *Waiver of Jury Trial*.  EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY

13

JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.   EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION 19</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

[SIGNATURE PAGES FOLLOW]

US_ACTIVE:\44072044\3\58399.0011

IN WITNESS WHEREOF, each Party by its duly authorized representative has executed this Agreement as of the date first written above:

Lehman Brothers Holdings Inc., as Plan Administrator for Lehman Brothers Holdings Inc.

By:  /s/ Daniel J. Ehrmann

Name:  Daniel J. Ehrmann
Title:    Authorized Signatory

Official Committee of Unsecured Creditors

By:  Milbank, Tweed, Hadley & McCloy LLP, its attorneys

By:  /s/ Evan R. Fleck

Name:  Evan R. Fleck
Title: Partner

Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as Indenture Trustee

By:  /s/ Dain W. Brown

Name:  Dain W. Brown
Title:  Vice President

15

OMX Timber Finance Investments II, LLC


By:  /s/ Deborah A. O'Connor

Name:  Deborah A. O'Connor
Title:  Manager



Boise Land & Timber II, LLC


By:  /s/ Wayne Rancourt

Name:  Wayne Rancourt
Title:  SVP, CFO & Treasurer

16

**EXHIBIT A**
**(Instruction to Claims Agent)**

**[BY EMAIL]**

**From:  _____@weil.com**
**To:  hbaer@epiqsystems.com**
**Cc:  abowdler@epiqsystems.com; joshua.dorchak@bingham.com;**
**         adam.paul@kirkland.com; Sven.Nylen@klgates.com;**

**Re:  *In re Lehman Brothers Holdings Inc. et al.*, Case No. 08-13555 (JMP):**
**      Modification and Allowance of Claims**

Dear Mr. Baer:

On August __, 2012, the Bankruptcy Court entered an order (the "Approval Order") [Docket No. ___] in the above-referenced case, approving a certain settlement agreement (the "Settlement Agreement") among Lehman Brothers Holdings Inc., the Official Committee of Unsecured Creditors, Wells Fargo Bank Northwest, N.A., as Indenture Trustee, OMX Timber Finance Investments II, LLC, and Boise Land & Timber II, LLC.

Pursuant to the Approval Order and the Settlement Agreement, the undersigned is authorized to instruct that each of the claims listed below shall be modified and allowed in the applicable Allowed Amount and shall be disallowed and expunged to the extent of any amounts asserted in excess of such Allowed Amount.

| Claim No. | Original Claimant | Debtor | Class | Allowed Amount |
|-----------|-------------------|--------|-------|----------------|
| 3813 | Boise Land & Timber II, LLC | LBHI | 3 | $822,767,607.00 |
| 17120 | OMX Timber Finance Investments II, LLC | LBHI | 3 (*modified*)* | $441,580,881.75 |

\* Claim No. 17120 shall be allowed in LBHI Class 3, *provided, however,* that with respect to reallocated distributions from Subordinated Class 10A, Subordinated Class 10B and Subordinated Class 10C, Claim No. 17120 shall only be entitled to receive its *pro rata* share of the reallocation of distributions from Subordinated Class 10B and Subordinated Class 10C.

17

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,             :        **08-13555 (JMP)**
                                                        :
                        **Debtors.**                    :        **(Jointly Administered)**
                                                        :
--------------------------------------------------------------------x

<u>**ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING A SETTLEMENT
AGREEMENT RELATED TO PROOFS OF CLAIM NUMBER 3813 AND 17120**</u>

Upon the motion, dated August 15, 2012 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>" and the "<u>Plan Administrator</u>"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors (the "<u>Plan</u>"), and the litigation subcommittee of the Official Committee of Unsecured

Creditors appointed in these cases pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>") for approval of that certain Settlement Agreement, dated

August 15, 2012 (the "<u>Settlement Agreement</u>"), a copy of which is attached to the Motion as

<u>Exhibit A</u>, all as more fully described in the Motion;[1] and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New

York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

procedures set forth in the second amended order entered June 17, 2010 governing case

management and administrative procedures [ECF No. 9635]; and it appearing that no other or

further notice need be provided; [and a hearing having been held to consider the relief requested

in the Motion]; and the Court having found and determined that the relief sought in the Motion is

in the best interests of LBHI, its creditors, and all other parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement Agreement is

approved; and it is further

ORDERED that LBHI is duly authorized to execute, deliver, implement, and fully

perform any and all obligations, instruments, documents, and papers and to take any and all

actions reasonably necessary or appropriate to consummate the Settlement Agreement and

perform any and all obligations contemplated therein; and it is further

ORDERED that the following documents filed in these Chapter 11 Cases shall be

deemed withdrawn:

1.  Motion of OMX Timber Finance Investments II, LLC for Limited Relief from
    the Automatic Stay [ECF No. 2023];

2.  Objection of Official Committee of Unsecured Creditors to Motion of OMX
    Timber Finance Investments II, LLC for Limited Relief from the Automatic
    Stay [ECF No. 2335];

3

3.    Joinder of the Debtors to the Official Committee of Unsecured Creditors'

Objection to OMX Timber Finance Investments II, LLC's Motion for Relief

from the Automatic Stay [ECF No. 2340]; and

4.    Preliminary Objection of Official Committee of Unsecured Creditors to OMX

Claim and Disputed Boise Claim [ECF No. 25925].

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order, including any action or proceedings relating

to the enforcement or interpretation of the Settlement Agreement.

Dated: _____, 2012
          New York, New York


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

4