STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006-1404
Telephone: (212) 566-4047
Facsimile: (212) 566-4061
Email: schager@ssnyc.com
Richard J. Schager, Jr.

*Attorneys for Claimants*
*Michael K. McCully and Michael J. Mullen*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
In re                                                          :   Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,                         :   08-13555 (JMP)
                                                               :
                                        Debtors.               :   (Jointly Administered)
                                                               :
-------------------------------------------------------------- x

### REPLY OF CLAIMANTS MICHAEL K. McCULLY AND MICHAEL J. MULLEN IN SUPPORT OF MOTION TO CERTIFY A CLASS OF RSU AND CSA CLAIMANTS NAMED IN 313th AND 319th OMNIBUS OBJECTIONS

**This Reply Statement in Support of the Motion to Certify a Class** of Claimants named in Debtors' 313th and 319th Omnibus Motions is respectfully submitted by Claimants Michael K. McCully and Michael J. Mullen.

### FACTUAL SUMMARY

The Court has before it a number of Responses in Opposition to Debtors' efforts to reclassify claims as equity, and substantial discovery is contemplated by the Discovery Procedures Order concurrently submitted by Debtors[1] relating to these Objections and ten (10)

---

[1] Motion to Establish and Implement Procedures in Connection with Omnibus Objections, ECF Doc. 29899, Aug. 8, 2012 ("Discy. Procs. Motion").

earlier Objections requesting the same relief. *See* Debtors' Objection to McCully and Mullen's Motion to Certify a Class of RSU Claimants ("Debtors Objection"), ¶ 10 at pp. 1 & 2 (Aug. 9, 2012). Even without the factual record the Court has requested for addressing the merits of the Omnibus Objections,[2] the Court has before it sufficient information to decide this class certification motion. Some of these facts are unopposed; some are facts Debtors request the Court to accept are disputed; and facts relating to the superiority of the class action device, over adjudication on a Claimant-by-Claimant basis, can be considered based on the record and accompanying affidavits.

**Undisputed Facts Supporting Class Certification**

- The pre-petition Lehman Brothers Holdings Inc. ("LBHI") published each year standard form "RSU Agreements" or "CSA Agreements." Every Claimant who entered into an RSU Agreement or CSA Agreement with LBHI did so as an employee of LBHI or one of its subsidiaries, and LBHI was always the contracting party. Debtors' 313th Omnibus Objection to Claims, ECF Doc. 28433, at ¶¶ 1 & 2 (June 4, 2012).

- Every Claimant was compensated under these Agreements in his or her capacity as an employee. *Id.*

- While Claimants and Debtors disagree on whether there was a deduction from the cash bonus for Salaried Employees, or a withholding of cash commission payments due for Commission Sales Persons, there is no disagreement that under these Agreements a portion of each participating employee's compensation was to be allocated to RSUs (for U.S. employees) and CSAs (for overseas employees). *See* proposed Order Establishing Discovery Procedures ("Discy. Procs. Order"), attached as Ex. 1 to the Discy. Procs.

---

[2] Hrg. Tr., Dec. 21, 2011, ECF Doc. 23741, at 103-04, 106, 128.

Motion, at ¶ 4(c) (Debtors' Initial Disclosures to include a report of "amounts of commissions during the fiscal year 2008 *to be allocated* to RSUs").

- The RSU and CSA Agreements described ongoing obligations and negative covenants, required to be performed by the Claimant in order for RSUs and CSAs to vest and for shares to be issued pursuant thereto. *See* Responses of Claimants Michael K. McCully, Michael J. Mullen and Other Claimants in Opposition to the 313th Omnibus Objection, ECF Doc. 29254, at 6-7 (July 6, 2012) (noting that the phrase "provided you meet certain terms and conditions" appeared in RSU agreements but not Stock Option Plans).

- As late as June 14, 2009, Debtors LBHI declared that the RSU agreements were Executory Contracts, which it listed on Schedule G of its Amended Schedules of Assets and Liabilities, filed on that date. *See* Debtors' Schedule G Declaration, filed herewith as Exhibit 1.

These undisputed facts demonstrate that holders of RSUs and CSAs were similarly situated with respect to LBHI.

**Disputed Allegations Debtors Present as Facts**

In opposing class certification, Debtors ask the Court to accept disputed allegations as fact. For example, while Debtors do not allege that they properly served all 256 Claimants named in the Exhibits to the 313th and 319th Omnibus Objections, they ask the Court to assume they did. Debtors' Objection at ¶¶ 11-14 (referring to filing the Omnibus Objections and deadlines for responding, but not service.)[3] However, two (2) Claimants have submitted affirmations stating that they never received copies of the Omnibus Objections, even though their addresses were unchanged from their initial Proofs of Claim. *See* Affirmation of Craig O.

---

[3] In contrast, Debtors speak in detail about giving notice by mail and publication under the Court's Bar Date Code. Debtors' Objection at ¶¶ 5-6.

Benson, ECF Doc. 29938-2, at ¶¶ 5-6, Aug. 9, 2012 (re-filed herewith as Exhibit 2); Affirmation of Pierluigi Volini, ECF Doc. 29792-2, at ¶ 10, July 27, 2012 (re-filed herewith as Exhibit 3).

Debtors also ask the Court to accept as accurate their report of the number of Claimants who failed to respond in opposition to the 313th and 319th Omnibus Objections. However, Claimant McCully's personal experience in this proceeding undermines the credibility of any such report. As discussed in McCully's August 16, 2012 Affirmation, filed herewith as Ex. 6, Debtors originally served McCully with the 130th Omnibus Objection. Notwithstanding that he served an Opposition to the reclassification, Debtors reported to the Court that his claim should be reclassified as equity and submitted an Order the Court entered accomplishing that. ECF Doc. 17369 (June 3, 2011). It was necessary for the undersigned, as Mr. McCully's counsel, deal with the Court and Debtors' Counsel to get the reclassification reversed, which was done by the Court's Order reinstating the claim. ECF Doc. 22347 (Nov. 18, 2011).

Finally, Debtors also ask the Court to accept that all "compensation-based claims filed … on the basis of either restricted stock units ('RSUs'), contingent stock awards ('CSAs'), stock options, or other equity-related compensation" are the same, that all should be painted with the same broad brush as "Equity Awards," and that all of these "Equity Awards" should be reclassified as equity. Debtors' Objection, ¶ 11. Debtors' gathering all of these compensation techniques under the facile rubric "Equity Awards" is a disingenuous attempt to accomplish by definition the very reclassification they seek. The deception is that Debtors imply to the Court that RSUs and CSAs are the same as stock options, and that it is unnecessary to consider class certification because the authorities supporting reclassification of stock options as equity makes further analysis of any of these "Equity Awards" unnecessary. However, Debtors fail to provide

the Court with any analysis of the contract language that supports their claim as implied in the definition.

There are real contracts at issue here; Debtors have presented none of them with this motion, and none anywhere with proper authentication. In their Opposition to Debtors' 313th Omnibus Objection, Claimants have pointed out how RSUs and CSAs were executory contracts requiring future performance and how stock options were not. In support, Claimants cited specific pages in thirteen (13) different Plan Documents, all documents Debtors previously introduced. *See* Responses of Claimants McCully and Mullen in Opposition to Debtors 313th Omnibus Objection, ECF Doc. 29254 at pp. 6-7 (July 6, 2012), *citing* Debtors' Omnibus Reply to Responses to Debtors [Eight Prior] Omnibus Motions, ECF Doc. 23470, Dec. 15, 2011. The fact that Debtors have not disputed this may not be decisive, but their failure to perform any comparable contract analysis should certainly dissuade the Court from assuming, from a sleigh-of-hand definition of terms in disparate documents (none produced for this Objection), that all "Equity Awards" are the same, or that each one is in fact an award of equity.

**Facts Relating to "Superiority" Criteria Under Civil Rule 23**

Whether made as a factual allegation or a legal argument, Debtors' claim that "the putative class as a whole is unlikely to benefit significantly from application of Civil Rule 23" is simply illogical. Debtors' Objection, ¶ 43. Debtors admit that 88% of the total class did not respond to the 313th and the 319th Omnibus Objections. Debtors' Objection, ¶ 41. As Debtors and the Court know (although not disclosed in the Omnibus Objections), the Order that reclassifies claims for unpaid compensation to equity interests will cause, in practical terms, the incomplete expungement of their claims. This fact has not been disclosed in either the Omnibus Objections or the Reclassification Orders Debtors submitted to the Court when the Objections

were granted. *See* Affidavit of Robert Sargent, Aug. 15, 2012, filed herewith as Ex. 4 at ¶ 4. The Omnibus Objections are not securities disclosure documents, of course, and Debtors' Counsel is not required to meet the disclosure requirements of the federal securities laws. At the same time, it cannot be disputed that these are communications to former employees, and the fact that they come from the remnants of their former employer would reasonably lead former employees to expect frankness, not deception. *See* Sargent Aff., Ex.4, at ¶¶ 4-5.

The Responses in Opposition to Debtors' 313th and 319th Omnibus Objection are as small as $5,000. *See* Affirmation of Claimant John J. Dmuchowski, August 16, 2012, filed herewith as Ex. 5. Assuming that these claims for unpaid compensation are properly treated as creditor claims, the most an employee such as Mr. Dmuchowski is likely receive under the Plan is $1,000 - $1,500.

Class members in the position of Robert Sargent (who thought the Omnibus Objections dealt only with a reclassification issue and that a response was not critical) or John Dmuchowski (whose claim size would not warrant a response other than on a group basis) are "realistic beneficiaries of applying Civil Rule 23." Debtors' Objection, ¶ 43. Debtors' suggestion that "the putative class as a whole is unlikely to benefit" from class certification is factually unsupported and in any event specious logic. The suggestion that Claimants' attorneys would benefit when Claimants would not is a gratuitous slur, unworthy of a firm of the standing of Debtors' Counsel, and carrying no small irony given the value developed by employees such as Claimants drawn down to pay their fees.[4]

Whether one views bankruptcy policy as addressing the question "how shall the losses be distributed?" or having as its "only goal ... enhanc[ing] the collection efforts of creditors,"[5] there

---

[4] J. Palank, *Law Firm's Lehman Tab May Reach $430 Million*, Wall St. J., July 9, 2012, at C 7.
[5] E. Warren, *Bankruptcy Policy*, 54 U. of Chi. L. Rev. 775, 777 (1987).

-6-

is no basis for concluding that only large creditors should participate in distributions from the estate. Balancing the resources available to Debtors against those available to individual Claimants, the simple fact in this case is that Debtors can in one motion (and with the assets of the estate behind it) move to reclassify the claims of 256 Debtors, who must then (in the absence of class certification) provide 256 responses, each at the individual expense of a creditor with resources in no way comparable.

There is no factual basis for claiming that certification of a class would not benefit every member of that class and provide a superior method for addressing their claims.

## ARGUMENT

### I. Claimants Have Properly Moved For Class Certification

#### A. Claimants Have Complied With Bankruptcy Rule 9014

Debtors argue that Claimants have not moved for an order applying Bankruptcy Rule 7023, and therefore the Court should decline to apply Civil Rule 23 to this Motion. Debtors' Objection, ¶¶ 2, 27, 29. However, that application is clearly contemplated in McCully and Mullen's moving papers. *See* Motion Pursuant to Fed. R. Bankr. P. 7023 to Certify a Class of RSU an CSA Claimants, ECF Doc. 29256 (July 6, 2012) (the "Class Certification Motion"). Claimants McCully and Mullen (the "Claimants") moved for an order pursuant to Rule 7023 to have the class certified. Class Certification Motion at 1. Claimants described the procedural process in the Class Certification Motion, stating:

> Class actions in bankruptcy are governed by Rule 23 of the Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7023 of the Federal Rules of Bankruptcy Procedure. Rule 9014 further authorizes the Courts at any stage in a particular matter, to apply Rule 7023—and thereby Fed. R. Civ. P. 23, the class action rule, to any stage in a particular matter.

*Id.* at 4. (citation and quotations omitted).

Notwithstanding lack of ambiguity, Debtors argue Claimants must move under 9014 to invoke Rule 7023. However, none of the cases cited by Debtors requires a party to move under Bankruptcy Rule 9014 to apply Rule 7023. Rather, the cases state that a court may exercise its *discretion* under Bankruptcy Rule 9014 to either reject or accept the application of Bankruptcy Rule 7023 and Civil Rule 23. For example, in *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (Bankr. S.D.N.Y. 2005), the court held that Civil Rule 23 could be invoked against a debtor only if the court first made a discretionary ruling under Rule 9014 to apply Civil Rule 23. Similarly, in *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011), the court stated that "[t]he decision to extend Civil Rule 23's application is committed to the Court's discretion." Likewise, in *In re Thomson McKinnon Sec., Inc.*, 133 B.R. 39, 41 (Bankr. S.D.N.Y. 1991), the court rejected the application of Bankruptcy Rule 7023 by exercising its discretion under Bankruptcy Rule 9014. Finally, in *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997), the court noted that it had to direct Civil Rule 23 to apply for the class action to proceed. The cases hold that the Bankruptcy Court may invoke its discretionary powers under Bankruptcy Rule 9014 to accept or reject the class certification and a party is not required to move under Bankruptcy Rule 9014 for an order to apply Bankruptcy Rule 7023.

B. <u>Claimants Have Complied With Bankruptcy Rule 2019</u>

Debtors argue the Class Certification Motion should be denied because Claimants failed to file a verified statement pursuant to Bankruptcy Rule 2019 indicating the basis of Claimants' authority to represent the Class. Debtors' Objection, ¶¶ 28-29. Courts have held, however, that certifying a class satisfies Bankruptcy Rule 2019 *nunc pro tunc*. *E.g., In re American Reserve*, 840 F.2d 487, 493, n.6 (finding that Rule 2019 is satisfied by a bankruptcy's court certification of a class); *In re Charter Co.*, 876 F.2d 866, 873 (11th Cir. 1989) ("If class certification is

appropriate, compliance with the class action procedures would satisfy the rule's objectives *nunc pro tunc;* and, on the other hand, if the bankruptcy judge exercises his discretion not to apply Rule 23, the question of compliance with 2019 is moot"); *In re Craft*, 321 B.R. 189, 197 (Bankr. N.D. Tex. 2005) ("a court decision certifying a class, in and of itself, satisfies the requirements of Rule 2019"); *In re Spring Ford Indus., Inc.*, 2004 WL 231010, at *4 (Bankr. E.D. Pa. 2004) ("… to the extent that Rule 2019's requirements have any applicability, such as requiring the basis of the representative's authority, the rule's requirement will be satisfied *nunc pro tunc* by court certification of the class or mooted by denial of certification").

Moreover, in *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 315 (Bankr. E.D. La. 1992), the court noted the problems with applying Rule 2019 requirements to class representatives:

> In a class action such as this one, there can be thousands of class members. Indeed, the first requirement for obtaining class treatment is that the class is so numerous that joinder of all members is impractical. [Fed.R.Civ.P.23] Thus, to name every class member as a creditor and provide his or her address in a verified statement is impractical, if not impossible, considering that, upon filing a class action, the class representatives often do not yet know the names of all the class members because the defendants possess this information. Moreover, the named class representatives do not acquire authority to act on behalf of the class until, and unless, the court certifies the class.

Here, the class has 256 members, including individuals who have not been served with the Omnibus Objections and only recently have Debtors provided Claimants' counsel with a list of all Class Members. In this situation, "[i]t simply makes no sense to impose Rule 2019's requirements…" *Spring Ford*, 2004 WL 231010 at *3.

08-13555-mg    Doc 30142    Filed 08/16/12    Entered 08/16/12 19:57:09    Main Document
Pg 10 of 19

## II. Certain Class Members Were Not Served With The Omnibus Objections

The Procedures Orders,[6] cited by Debtors in ¶ 9 of their Objection, requires Debtors to serve, at the very least, a Claim Objection Notice to each Claimant. Moreover, Bankruptcy Rule 3007(a) requires:

> An objection to the allowance of a claim shall be in writing and filed. <u>A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant</u>, the debtor or debtor in possession, and the trustee at least 30 day prior to the hearing.

Fed. R. Bankr. P. 3007(a) (emphasis added).

Debtors complain Claimants waited too long to move for class certification after receiving notice of the bankruptcy case. Debtors' Objection, ¶ 31. According to Debtors, Claimants were given adequate notice of the bankruptcy case through mailed proof of claim forms and nationwide publication notice of the Bar Date. *Id.* at ¶ 34. However, whether Claimants received adequate notice of proofs of claim and the Bar Date are "red herrings," since the issue presented by the Class Certification Motion is whether Class Members received notice of the Omnibus Objections, not the Bar Date, and a failure to accomplish the latter would be a clear violation of the Procedures Order and Bankruptcy Rule 3007(a). Class Certification Motion, p. 5.

Unlike their detailed designation of providing notice of the Bar Date, Debtors do not state in their Objections that they served all Members of the putative class with the Omnibus Objections. Debtors' failure to address this key issue should raise a warning flag for the Court about adequacy of service of the Omnibus Objections, which further demonstrates the need for class certification. *See Gaston v. City of N.Y.*, 2012 WL 1085804, at *12 (S.D.N.Y. 2012)

---

[6] Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objection Procedures, ECF Doc. 664 (Jan. 14, 2010).

(dismissing claims as abandoned since party failed to respond or even mention claims in opposition brief); *Quintero v. Rite Aid of N.Y., Inc.*, 2011 WL 5529818, at *19 (S.D.N.Y. 2011) (same); *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 280 (S.D.N.Y 2011) (same).

Debtors also claim that none of the putative class members have submitted statements that they were not served with the Omnibus Objections. Debtors' Objection, ¶ 41. This is false. On August 1, 2012, over a week before Debtors submitted their opposition papers, Claimant Pierluigi Volini submitted an Affirmation in Opposition to Debtors' 313th Omnibus Objection stating he was never served with the 313th Omnibus Objection, despite there being no change of address since the filing of his Proof of Claim. Affirmation dated August 1, 2012 of Pierluigi Volini in Opposition to Debtors' 313th Omnibus Objection (ECF Doc. 29792-2), re-filed as Ex. 3 hereto, at ¶ 10. In addition, Claimants submit the Affirmation of Craig O. Benson, who also did not receive a copy of the 313th Omnibus Objection. *See* Affirmation dated August 9, 2012 of Craig O. Benson in Support of Motion to Permit Filing of Supplemental Affirmation in Opposition to Debtors' 313th Omnibus Objection (ECF Doc. 29938-2), re-filed as Ex. 2 hereto, at ¶ 5.

Debtors cite to authority, which holds that a "class claim is most appropriate when (i) a class has been certified prepetition in a nonbankruptcy forum or (ii) the putative class members were not given adequate notice of the bankruptcy case and bar date." Debtors' Objection, ¶ 32. While it is undisputed that no class was certified prepetition by a nonbankruptcy court, the fact remains that individuals were not served with the Omnibus Objections. Due process requires all interested parties to be afforded the opportunity to present their objections. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). By certifying the class, the Court

-11-

is assured that all Class Members will receive due process notice of the bankruptcy proceedings, including the Omnibus Objections. The Court does not have that assurance now.

### III. Application Of Rule 23 Will Benefit The Class Members And Any Deterrent Effect Of A Class Action Should Not Be Considered In This Motion

Although several Claimants were not served with the Omnibus Objections while others were dissuaded from responding due to the prospect of a commitment of both personal and financial resources to their small claims,[7] Debtors request that this Court ignore these facts and sweep under the rug Class Members who did not respond to the Omnibus Objections. Debtors' Objection, ¶ 41. Inexplicably, Debtors state that Claimants who did not respond to the Omnibus Objections are "unlikely to benefit significantly from application of Civil Rule 23 ...." *Id.* at ¶ 43. However, simply as a factual matter, in the absence of class certification individuals with claims too small to justify the expense of a response lose their compensation claim. *See* Factual Summary pp. 5-7 above.

Debtors also argue class certification should be denied because it would not deter future wrongdoing by the Debtors since most members of the putative class are no longer employed by the Debtors. *Id.* at ¶¶ 36-37. However, the point of the Class Certification Motion is neither to punish the Debtors nor to deter misconduct. *In re Palermo*, 2007 WL 4276831, at *5 (Bankr. S.D.N.Y. 2007) ("The Bankruptcy Court is not a forum for deterring misconduct...there is no punishment for punishment's sake in bankruptcy"). Rather, class certification will provide an opportunity to present the case of absent class members, avoid the risk of inconsistent adjudication, and achieve equitable distribution of the Estate.

---

[7] Class Member John J. Dmuchowski states "my claim is small and could easily be overwhelmed by expenses. Pursuing a claim on a group basis is really the only practical way of pursuing it at all." *See* Ex. 5, ¶ 8, Affirmation of John J. Dmuchowski in Support of Motion to Certify A Class of RSU and CSA Claimants Named in 313th and 319th Omnibus Objections.

## IV. The Requirements Under Rule 23(a) Have Been Satisfied

A. Numerosity

"[Civil] Rule 23(a)(1) does not mandate that joinder must be impossible. Nor must class action plaintiffs specify the exact size of the class as a prerequisite to satisfying the numerosity requirements. In the Second Circuit, courts presume that joinder is impracticable when the prospective class consists of forty or more members." *In re Partsearch Tech., Inc.*, 453 B.R. 84, 93 (Bankr. S.D.N.Y. 2011) (citations and quotations omitted).

There are 256 Class Members and the Second Circuit presumes that joinder is impracticable when the putative class consists of forty or more members. Debtors assert that Class Members who did not respond to the Omnibus Objections should not be considered part of the class. Debtors' Objection, ¶ 53. Debtors cite *In re W.T. Grant Co.*, 24 B.R. 421 (Bankr. S.D.N.Y. 1982), where the court denied class certification of a former employee who sought to certify a class of 3,393 employees, all of whom had filed proofs of claim. *Id.* at 423. Of the 3,393 claimants, approximately 3,331 received compensation to settle their claims. *Id.* The court ruled that the class representative/movant could not represent the employees because *they had already settled* their claims. *Id.* Here, by contrast, none of the Class Members have settled their claims. In addition, the Court should consider that some members of the putative class have not received notice of the Omnibus Objections, and even those who did may not understand that reclassification of their RSU and CSA claims means expungement.

Under these circumstances, there is no basis for not including all 256 Class Members included in the putative class.[8]

---

[8] Debtors' failure to advise Class Members on the meaning of "reclassification" is confirmed by a claimant served with the Debtors' 118th Omnibus Objection:

Debtors also argue that the proposed subclasses must separately satisfy the numerosity requirement. *Id.* at ¶ 55. However, based on a review by the undersigned of filed Proofs of Claim, there are at least 186 RSU Claimants and 62 CSU Claimants in the two (2) subclasses, numbers that Debtors can refute if untrue. Therefore, the numerosity requirement is satisfied for both subclasses.

B. **Commonality**

Civil Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Debtors do not contest that all Class Members share the same common issue of whether the RSU and CSAs are unpaid compensation entitled to Executory Contract Classification (as Debtors' originally declared -- *See* Schedule G Declaration, Ex. 1 hereto) or represent as equity interest (the position Debtors adopted two (2) years after the petition date.) *Id.* at ¶ 56. Debtors also have not disputed that all governing RSU and CSA Agreements were standard forms without material variation. McCully Aff., ¶ 5 (Ex. 6 herewith); Mullen Aff. ¶ 4 (Ex. 7 hereto). As such, there is no dispute that the commonality requirement has been satisfied.

C. **Typicality**

Civil Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events, and each class member makes the same legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960, F.2d 285, 291 (2d Cir. 1992).

---

I was shocked to learn that the effect of a simple "reclassification" of my claim to equity actually was the complete elimination of my claim for past compensation. At no point in the 118th Omnibus Objection or in the Order granting the Objection, which I understand Debtors' Counsel submitted to the Court, is there any indication that the practical effect of a reclassification was expungement.

Sargent Aff., Ex. 4, ¶ 4.

-14-

Debtors contend that McCully and Mullen's claims are atypical since they filed objections and approximately 88% of the total putative class did not. Debtors' Objection, ¶ 59. However, all of the Class Members are current and/or former employees of the Debtors were subject to the same course of events while employed by the Debtors. Whether or not Class Members responded to the Omnibus Objections does not change those facts. Moreover, the accompanying affirmations submitted with this Reply[9] demonstrate that all members of the putative class possess the same interest, suffered the same injury and allege identical violations in their proofs of claim. Thus, the typicality requirement is met.

D. **Adequacy**

Adequacy requires that class representatives do not have conflicts of interest with class members. *In re Joint Eastern & Southern Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996). Debtors claim the adequacy requirement is not satisfied because McCully and Mullen's interests conflict with members of the putative class. Debtors' Objection, ¶ 62. However, while Debtors assert that "McCully and Mullen would stand to benefit if the claims of other class members are reclassified…" *(id)*, this assertion demonstrates theoretical benefit from *not* proposing class certification, not an actual conflict between them and the putative class if certification is granted. Further, the argument that Debtors seem to make (and the logic is so specious that we may give Debtors too much credit) is that anyone with a claim against an estate (i) diminishes that claim by pleading it on behalf of a class, and (ii) therefore has a conflict with the class he or she seeks to represent. The logic fails, however, because it ignores the concept underlying class action practice, that class actions are maintained for claims otherwise too small to be viable, however worthy. Applying Debtors' reasoning, no claimant could ever be permitted to certify a class

---

[9] *See* Exs. 2-7, Affirmations of Craig O. Benson, Pierluigi Volini, Robert A. Sargent, John J. Dmuchowski, Michael K. McCully and Michael J. Mullen.

-15-

since he/she would never meet the adequacy requirement of Civil Rule 23(a)(4). Since the Bankruptcy Rules state otherwise and Bankruptcy Courts have certified class actions on numerous occasions, Debtors' argument has no merit and the adequacy requirement has been met.

### V. The Requirements Under Rule 23(b) Have Been Satisfied

#### A. Rule 23(b)(1)

Debtors argue that Rule 23(b)(1) does not apply to the Class Members because the certification motion seeks money damages. Debtors' Objection, ¶¶ 63-64. However, Claimants are not seeking relief that would result in litigation over money damages. As Debtors point out, "LBHI and its Debtor Affiliates made an initial Plan distribution totaling approximately $22.5 billion to holders of over 12,000 claims." *Id.* at ¶ 19. Thus, the amount of money available for damages has already been established. *In re United Artists Theatre*, 410 B.R. 385, 396 (Bankr. D. Del. 2009) (finding damage award had already been established and class certification did not result in setting stage for subsequent monetary claims). Moreover, courts have permitted Rule 23(b)(1)(A) certification in cases where the putative class seeks declaratory relief and monetary damages. *See, e.g., Robertson v. National Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977) (finding certification was proper where relief sought included not only damages but also equitable relief). The putative class is seeking a declaration of their rights under the RSUs and CSAs along with monetary relief. Therefore, class certification is proper under Rule 23(b)(1)(A).

#### B. Rule 23(b)(3)

Debtors assert that a class action is not a superior method to fairly and efficiently adjudicate this case. Debtors' Objection, ¶¶ 65-71. Under Rule 23(b)(3), "[c]lass-wide issues

-16-

predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (citation omitted). The class must also be superior to other methods. *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.)*, 471 F.3d 24, 32 (2d Cir. 2006) (citation omitted).

The putative class should proceed as a class under Rule 23(b)(3) since questions of law and fact that are common to the class predominate over questions affecting individual class members. As discussed in the Factual Summary above, the class has 256 members who are asserting questions of law or fact common to every member. The Debtors even admit in their opposition "that a common issue of law permeates all of the RSU and CSA claims: whether Equity Awards should be reclassified as equity interests." Debtors' Objection, ¶ 56. The putative class is superior to other methods available because adjudicating individual claims would consume judicial resources and would be impracticable. *See In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 386 (S.D.N.Y. 2010); *In re BGI, Inc.*, 465 B.R. 365, 377 (Bankr. S.D.N.Y. 2012); *In re Partsearch Tech., Inc.*, 453 B.R. at 97; *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1013 (Bankr. E.D.N.Y. 1986). Accordingly, a class action is a superior method of adjudicating the case.

### VI. Certifying The Class Is Consistent With The Goals Of Bankruptcy And Will Not Frustrate The Administration Of Assets

Inexplicably, Debtors argue that class certification should be denied because a class claim is not consistent with the goals of bankruptcy. Debtors' Objection, ¶ 72. However, numerous courts have found that pleading claims on behalf of a class is consistent with the Bankruptcy Codes and Rules. *See, e.g., In re Chateaugay Corp.*, 104 B.R. 626, 632 (Bankr. S.D.N.Y. 1989)

("permitting proofs of claim to be filed on behalf of a class is at the least consistent with the broad goals of the Bankruptcy Code of 1978"); *In re Craft*, 321 B.R. at 194 ("The court believes class proof of claims are consistent with the Code and the Rules and concludes that class proofs of claim are a necessary device to ensure that the relief afforded by the Code is as complete as possible"); *In re Amdura Corp.*, 170 B.R. 445, 449-450 (Bankr. D. Colo. 1994) (excluding the right to payment of a putative class would be inconsistent with the bankruptcy goals to permit the "broadest possible relief in the bankruptcy court.").

Debtors also argue class certification would complicate and delay the claims administration process and force "LBHI to continue to hold reserves on account of approximately $100 million of claims…" Debtors' Objection, ¶ 39. According to Debtors, however, approximately $22.5 billion has been set aside for over 12,000 claims. *Id.* at ¶ 19. Based on the Debtors' calculation, the putative class represents less than half a percent (.4%) of the total Plan distribution. Accordingly, there would be no disruption or delay in distributions to other creditors. Correspondingly, certifying the class would provide an opportunity for presenting arguments for the putative class on why class members should participate in the distribution to creditors of the Debtors' assets. Thus, "[a]pplying Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code." *In re American Reserve Corp.*, 840 F.2d at 488.

Debtors cite two cases that do not apply to this case. In *In re Motors Liquidations Co.*, 447 B.R. at 163-164, the court held class certification would materially affect the administration of the case and delay distributions to other creditors. The court reasoned that because the debtors' plan was to distribute new company stock, the court would have to estimate the putative class claims for a creation of reserves. *Id.* at 265. Here, $22.5 billion has already been put in

reserve pending liquidation of disputed claims. Likewise, in *In re Northwest Airlines Corp.*, 2007 WL 2815917, at *3-5 (Bankr. S.D.N.Y. 2007), the court denied class certification finding that $300 million reserved for the putative class would delay distribution to other creditors. Here, the current putative class reserve amount ($100 million) is a fraction of the total amount of the Plan distribution and class certification would not delay the administration of the case.

\* \* \* \* \*

The fact that the 313th and 319th Omnibus Objections are the last in a series of twelve (12) such motions does not outweigh the fact that approximately 230 absent members of the putative class have claims that, but for this motion, will be dismissed without regard to their merit. The supporting affidavits present sound reasons, including inadequate service, imposition of unnecessary and duplicative expense, and a basic cost/benefit analysis for granting this motion and preventing Debtors' creditors from receiving distributions of the putative class members' unpaid compensation.

For these reasons, Claimants motion for class certification should be granted.

Dated: New York, New York
    August 16, 2012

Respectfully submitted,

STAMELL & SCHAGER, LLP

By:_____
Richard J. Schager, Jr. (RS 5875)
Andrew R. Goldenberg (AG 8213)
One Liberty Plaza, 35th Floor
New York, New York 10006
Tel: (212) 566-4047
Fax: (212) 566-4061

*Attorneys for Claimants Michael K. McCully and Michael J. Mullen*