Response Deadline: August 17, 2012 at 4:00 p.m. (Eastern Time)
Hearing Date and Time: September 27, 2012 at 10:00 a.m. (Eastern Time)

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402
Zachary D. Rosenbaum (ZR9316)
Daniel K. Roque (DR2226)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>**LEHMAN BROTHERS HOLDINGS INC.**, *et al*.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |

**RESPONSE OF LOGAN HOTELS AND RESORTS, MEXICO,
S.A. DE C.V. ET AL. TO DEBTORS' OBJECTION TO CLAIM NO. 17588**

Logan Hotels and Resorts, Mexico, S.A. de C.V. ("Logan"), Cabo San Cristobal Racing Circuit, S.A. de C.V. (together with Logan, "Borrower"), Albert Maes, Logan Hotels & Resorts Development Co. Pte. Ltd., and Logan International LLC (together with Logan and Borrower, "Claimants"), by and through their undersigned counsel, hereby submit this response ("Response") to the Debtors' Objection to Claim No. 17588 [Docket No. 29174] (the "Objection") and respectfully state as follows:

**INTRODUCTION**

1.     Lehman Brothers Holdings, Inc. ("LBHI" or the "Debtor") loaned $65 million to Logan in July 2006 for the development of hundreds of acres of land in the resort destination of Cabo San Lucas, Mexico.  Logan intended to develop hotels, residential homes, golf courses, and restaurants throughout the property.  Among other things, the loan terms obligated LBHI to issue advances to Logan and release liens on the property for Logan's sales of portions of the property to third-party purchasers.  The parties contemplated that Logan would

22788/2
08/17/2012 21111251.6

apply the proceeds of such sales to pay down outstanding principal. In 2008, however, LBHI breached the agreement by failing to comply with the requirement that it release liens so that parcels of property could be sold by Logan, thereby allowing Logan to pay down the loan. LBHI further breached the loan agreement by refusing to advance $1.5 million to Logan. Claimants have filed proofs of claim regarding LBHI's contract breaches and bad faith.

2. The Debtor has objected to Logan's claims on three grounds: (1) State Street Bank and Trust Company ("State Street") purchased the loan; therefore, LBHI was not responsible for issuing advances to Logan; (2) LBHI did not breach the loan agreement by failing to release liens because section 15.1 of the loan agreement provided LBHI with discretion; and (3) a limitation-of-damages provision in the loan agreement prevents Logan from recovering consequential damages.

3. None of these arguments shift the burden to Logan to establish its claims. LBHI has presented no evidence that State Street was responsible for issuing advances, and State Street has denied that it was obligated to do so. Further, LBHI does not dispute Logan's position, as reflected in the Second Amended Proof of Claim (defined below) that the loan agreement (section 16.2) required the release of the liens; thus, LBHI could not exercise discretion under section 15.1 of the loan agreement. Moreover, LBHI is estopped as a matter of New York law from enforcing the limitation-of-damages provision, where, as here, it acted in bad faith. In addition, the limitation-of-damages provision does not bar Logan's claims because LBHI concedes that certain damages are direct. Further, the ultimate distinction between consequential and direct damages is typically an issue for trial. And LBHI's bad faith behavior again bars it from invoking the limitation-of-damages clause.

-2-

4. Further, even if *arguendo* section 15.1 applied, LBHI has not provided evidence sufficient to shift its burden. New York law provides that parties exercising their contractual rights and obligations, including discretionary rights, have a duty of good faith and fair dealing and may not act malevolently for their own gain under the guise of business dealings.

5. Here, LBHI's conduct demonstrates bad faith and malevolence. Masood Bhatti was an LBHI vice president and agent for purposes of the Logan loan. At the same time, and unbeknownst to Logan, Bhatti facilitated the financing for a critical competitor of Logan—a resort property adjacent to Logan's in Cabo San Lucas—in exchange, on information and belief, for a secret equity interest in the competitor. Bhatti's interest in the competitor, on information and belief, was hidden through a trust owned by his god-daughter. Hence, Bhatti secretly stood to profit from Logan's failure, while at the same time he was LBHI's authorized representative for Logan's agreement with LBHI. The scheme was carried out: LBHI and Bhatti refused to release the liens; Logan was unable to sell the parcels of property and use the proceeds to repay the loan; and the Logan project ultimately failed.

6. Logan respectfully submits that this Court should overrule the Debtor's Objection and allow Logan's claims in the amounts filed.

## FACTUAL BACKGROUND

<u>The Underlying Agreements and Relevant Provisions</u>

7. LBHI loaned $65 million to Logan by way of an agreement dated July 21, 2006 between Logan and LBHI (the "<u>Loan Agreement</u>").[1] The Loan Agreement is attached to the Addendum to the Amended Proof of Claim dated July 1, 2009, as Exhibit A. The loan was intended to, among other things, provide Logan with cash advances for acquisition and pre-

---

[1] This amount was increased to $68 million in an amendment to the Loan Agreement.

-3-

development costs associated with certain property in Cabo San Lucas Mexico. The Loan Agreement contemplated that disbursements under the loan would be made in accordance with a comprehensive budget. *See* Loan Agreement § 9.1, Ex. A (without exhibits). In accordance with the Loan Agreement and the budget, twenty-one draws were made by LBHI in favor of Borrower for a total amount of $66,445,079.87. Borrower issued its twenty-second and twenty-third requests for a total amount of $1,554,920.13 in August and September of 2008 (the "Draw Requests"); however, LBHI withheld the funds.

        8.    Section 16.2 of article 16 allowed Logan to sell portions of the property (known as "Phases") under certain conditions and required that LBHI cause the trustee of the property to release any liens on the relevant Phase.[2] *Id.* § 16.2. Section 20.10 of the Loan Agreement purports to limit Logan's rights to consequential damages and lost profits but not to compensatory (or direct) damages. *Id.* § 20.10.

Logan's Promissory Agreements with Third-Parties

        9.    In April 2008 three third-party entities agreed to each enter into three separate promissory agreements with Logan (the "Promissory Agreements") for the sale of three Phases. The proceeds of those sales would have been applied to the outstanding debt owed to LBHI; a transfer consistent with the parties' intent. *See id.* § 16.2(ii). Section 16.2 required LBHI to direct the Trustee to release the liens on the Phases for these types of sales. LBHI, with its agent Masood Bhatti, failed and refused to release the liens in accordance with its obligations under the Loan Agreement.

---

[2] As security for Borrower's obligations under the Loan Agreement, Borrower's interest in the property was conveyed to a trustee, HSBC Mexico, S.A. (the "Trustee"). The trust agreement governs the Trustee's duties and obligations.

Masood Bhatti

10.  The trust agreement contemplated that LBHI would direct the release of liens on the property from time to time pursuant to instructions from LBHI's designated individuals. Trust Agreement, Clause Fourth, Clause Fifteenth (July 6, 2009), Ex. B. LBHI designated Bhatti, an LBHI vice president, as its authorized representative. *Id.* & Sch. C. Bhatti was also directly involved in LBHI's review of the Promissory Agreements.

11.  Unbeknownst to Logan, on information and belief, Bhatti secretly owned an interest in Logan's key competitor, the luxury hotel development known as the Diamante Cabo San Lucas Project (the "Diamante Project"), which was adjacent to Logan's property. Bhatti worked with the Diamente Project's manager, Kenneth Jowdy, to raise capital. Investors in the Diamente Project assert that Bhatti facilitated a questionable loan from LBHI for the Diamente Project in exchange for an ownership interest in the Diamante Project. Complaint, *Nash v. Jowdy*, No, BC416082 ¶ 18 (June 18, 2009), Ex. C. This interest was obtained, on information and belief, covertly by Bhatti through a trust purportedly owned by Bhatti's god-daughter. Bhatti's involvement in the Diamente Project was concealed from Logan.

12.  Bhatti's misconduct frustrated a principal purpose of the Loan Agreement. LBHI's loan to Logan was intended to facilitate Logan's development of the property. The contract afforded Logan the ability to sell Phases and use these proceeds to pay off the LBHI debt. Logan procured agreements to sell only a small portion of the property (the relevant Phases)—as was its bargained-for right—to satisfy its debt. LBHI, with its agent Bhatti, prevented Logan from selling the Phases. At the same time, Bhatti, on information and belief, secretly held an ownership interest in Logan's direct competitor and thus had a vested economic interest in the failure of Logan's project.

State Street's Purchase of the Loan

13. By letter dated November 25, 2008, State Street informed Logan that it "understood" that LBHI had transferred the loan to Lehman Commercial Paper Inc. Letter from Tiziana E.A. Polizio to Logan (Nov. 25, 2008), Ex. D. State Street also represented that it had purchased the loan from Lehman Commercial Paper but did not indicate the effective date of this purchase.

Logan's Claims

14. On April 10, 2009, Claimants timely filed a proof of claim with addendum and exhibits thereto against LBHI (Claim No. 3744). On July 1, 2009, Claimants filed an amended proof of claim with addendum and exhibits thereto (Claim No. 5055). On September 18, 2009, Claimants filed a further amended proof of claim (the "Second Amended Proof of Claim") with addendum and exhibits thereto (the "Addendum to Second Amended Proof of Claim") (Claim No. 17588), asserting claims estimated at not less than $102,399,662 against the Debtor for damages and losses arising from the Debtor's failure to satisfy its funding obligations and release certain liens on Phases, in accordance with the Loan Agreement.

## THE OBJECTION

15. On July 2, 2012, LBHI filed the Objection. The Objection seeks to disallow and expunge the Second Amended Proof of Claim on three grounds: (1) LBHI was not obligated to fund the Draw Requests; (2) LBHI did not breach the Loan Agreement by failing to release the liens because section 15.1 of the Loan Agreement provided LBHI with the sole discretion to approve the Promissory Agreements; and (3) the limitation-of-damages provision in the Loan Agreement prohibits Logan from recovering consequential damages.

# ARGUMENT

## II. LBHI's Objection Should Be Denied.

### A. Legal Standard

16. A properly filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also In re DJK Residential LLC*, 416 B.R. 100, 104 (Bankr. S.D.N.Y 2009). The claimant must simply assert enough facts to "show facial plausibility." *DJK Residential*, 416 B.R. at 106. To overcome the prima facie validity of a properly filed claim, the objecting party must produce evidence that, if believed, would refute at least one of the allegations that is essential to the claim. *See Sherman v. Novack (In re Reilly),* 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000); *In re Alper Holdings USA*, 2008 Bankr. LEXIS 86, at *10 (Bankr. S.D.N.Y. 2008). A party objecting to a claim cannot simply rely on conclusory statements to overcome the presumption. In the event an objecting party succeeds in producing sufficient rebuttal evidence, the burden shifts to the claimant to prove the validity of the claim by a preponderance of the evidence. *DJK Residential*, 416 B.R. at 105

### B. LBHI Has Not Produced Evidence Sufficient To Refute Logan's Claims.

#### 1. Logan Filed a Proper Proof of Claim.

17. LBHI does not dispute that the Second Amended Proof of Claim was properly filed. The Addendum to Second Amended Proof of Claim attached several documents establishing Claimants' claims. LBHI does not contend that the Second Amended Proof of Claim lacked facts showing "facial plausibility."

#### 2. LBHI's Purported Transfer to State Street Is Inapposite.

18. Logan's contract claims are based on two principal breaches, LBHI's failure to: (1) satisfy the Draw Requests and (2) release liens on the relevant Phases. In its Objection LBHI claims that the loan was sold to State Street and therefore suggests that State

Street, not LBHI, is liable. Importantly, this assertion only relates to the first breach, involving the failed funding. Objection ¶ 2 ("LBHI had sold all of its rights and interests in the Loan prior to the funding requests. Consequently, LBHI is not liable in any respect for any damages that resulted from a failure to fund the Loan.").

19. LBHI does not contend that State Street is responsible for releasing the liens on the Phases. LBHI's position regarding a purported assignment to State Street has no bearing on Logan's claims against LBHI for its failure to release the liens.

20. Further, contrary to LBHI's position, Logan has not conceded that State Street is liable for LBHI's failure to fund the Draw Requests. LBHI claims, citing Paragraph 3 of the Second Amended Proof of Claim, that the "Logan Hotels acknowledge[d] receipt of notice that State Street owned the Loan, effective as of September 17, 2008." Objection ¶ 20. That characterization is wrong. Paragraph 3 of the Second Amended Proof of Claim states that "[b]y letter dated November 25, 2008, State Street Bank and Trust Company . . . advised the Claimants that State Street purchased the Loan Agreement from Lehman Commercial Paper Inc." Proof of Claim ¶ 3. This paragraph makes no reference to September 17, 2008—the purported effective date of the sale of the loan from LBHI to State Street. Moreover, State Street's November 25 letter does not reference the date on which the loan was sold. Letter from State Street to Logan Hotels and Resorts, et al. (Nov. 25, 2008), Ex. D.

21. Finally, State Street has denied that it ever assumed any obligations from LBHI: "State Street has not assumed any, and expressly disclaims all, obligations (contractual, funding or otherwise) of Lender, Original Lender or LCPI under or in respect of the Loan or the Loan Documents." Letter from State Street to Logan Hotels and Resorts, Mexico, S.A. de C.V.

-8-

at 2 (Aug. 4, 2009), Ex. E.  This assertion further demonstrates that LBHI's attempt to shift liability should be rejected.[3]

### 3. LBHI Has Not Disputed That Section 16.2 of the Loan Agreement Governs Its Failure To Release Liens.

22.  In its Second Amended Proof of Claim Logan states that LBHI violated section 16.2 of the Loan Agreement, and that Logan complied with its obligations under the Logan Agreement and met the applicable conditions.  *See, e.g.*, Second Amended Proof of Claim ¶ 7.  Section 16.2 plainly states that "[i]n the event that Borrower wishes to convey one or more Phases . . . to a third party purchaser . . . Lender hereby agrees that, upon the request of Borrower from time to time, it *shall cause* Trustee to release the lien of the Trust Agreement from the applicable Phase."  Loan Agreement § 16.2, Ex. A (emphasis added).  Significantly, LBHI does not dispute the application of section 16.2 to Logan's breach of contract claim.

23.  LBHI states only that section 15.1 provided it with the discretion to disapprove agreements between Logan and third-party purchases.  Objection ¶ 9.  But section 15.1 expressly excludes transactions, like the Promissory Agreements, that are contemplated under article 16 of the Loan Agreement.  Loan Agreement § 15.1, Ex. A ("Except to the extent permitted pursuant to Article 16 hereof, Borrower shall not, without first obtaining the prior written consent of Lender (which consent may be withheld by Lender in its sole discretion), suffer or permit . . . any Transfer.").[4]

---

[3] Logan's response to the Objection in no way waives or releases any claims against State Street.
[4] For this reason alone, LBHI's Objection must fail.  Nonetheless, even if section 15.1 applied, LBHI's conduct violated this provision.

### 4. The Limitation-of-Damages Provision Does Not Bar Logan's Damages Claims.

24. While the Loan Agreement contains a provision purporting to limit damages to direct damages, this provision does not bar Logan's damages for a number of reasons. Loan Agreement § 20.10, Ex. A. First, as a threshold matter, LBHI's bad faith bars it from enforcing the limitation-of-damages provision. *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F. Supp. 1442, 1458-59 (S.D.N.Y. 1986); *Am. Tel. & Tel. Co. v. New York City Human Res. Admin.*, 833 F. Supp. 962, 989-90 (S.D.N.Y. 1993) ("The Court recognizes that . . . '[a] defendant may be estopped from asserting a contractual limitation of consequential damages if the defendant has acted in bad faith.'" (alteration in original) (citation omitted) (collecting cases)); *An v. N. Hills Holding Co. II LLC*, No. 23742/2009, 2012 WL 1141139 (N.Y. Sup. Ct., Nassau Co. Feb. 29, 2012) (denying summary judgment, in part, because alleged bad faith created an issue of fact as to enforceability of limitation-of-damages clause).

25. LBHI designated Bhatti, an LBHI vice president, as its authorized representative with respect to the trust agreement. *See* Trust Agreement Sch. C, Ex. B. As set forth above, Bhatti held a concealed ownership interest in Logan's direct competitor, the Diamente Project, and had an economic interest secretly adverse to Logan. At the same time, Bhatti and LBHI were insisting that Logan adopt untenable provisions in the Promissory Agreements, blocking the sale of the Phases and frustrating a core purpose of the Loan Agreement. These assertions, at the very least, warrant discovery and ultimately a plenary hearing regarding LBHI's bad faith. *Long Island Lighting*, 646 F. Supp. at 1458, 1459 (bad faith is a question of fact).

26.     Second, the distinction between consequential and direct damages is typically a matter left for trial and should not be determined on this record.[5] *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, No. 99-CV-819, 1992 WL 121726, at *28 (N.D.N.Y. May 23, 1992) ("Generally, whether damages are direct or consequential is an issue of fact which must be reserved for trial."); *Long Island Lighting*, 646 F. Supp. at 1459 n.30 ("We reserve for trial the question of whether the plaintiff's claimed damages should be characterized as direct, incidental, or consequential."); *Am. Elec. Power Co., Inc. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 459 (S.D.N.Y. 1976) ("In general, the precise demarcation between direct and consequential damages is a question of fact . . . .").

27.     Following discovery, and an evidentiary hearing, Logan will show damages that are direct in nature.[6] Direct damages are the "natural and probable consequence" of a breach; they flow directly from the breach. *Am. List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 42-43 (1989). So, for example, direct damages include funds expended before the breach and in reliance on the contract's terms. *See, e.g.*, *Am. Elec.*, 418 F. Supp. at 460 n.44. Consequential damages may be recovered "upon a showing that they were foreseeable and within the contemplation of the parties at the time the contract was made." *Am. List Corp.*, 75 N.Y.2d at 42-43.

28.     Indeed, LBHI concedes that some of Logan's damages are direct, not consequential. The Objection vaguely lists out categories of Logan's damages and summarily states that "substantially all . . . can be categorized as consequential damages." Objection ¶ 17. To be sure, LBHI does not contend that all of Logan's claims are consequential, nor are they.

---

[5] LBHI also summarily contends that Logan's damages are speculative. This is likewise a triable issue of fact. *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, No. 02-CV-7689, 2005 WL 832050, at *5 (S.D.N.Y. Apr. 12, 2005).
[6] The Loan Agreement contains a New York choice-of-law clause. Loan Agreement § 20.3, Ex. A.

-11-

29. Accordingly, even if the limitation-of-damages provision was enforceable, several categories of Logan's damages are direct and thus recoverable. For example, the parties and the Loan Agreement contemplated that before Logan entered into agreements under section 16.2, Logan would incur certain costs. Loan Agreement § 16.2, Ex. A. Likewise, before LBHI would release liens for the sale of Phases, Logan was required to pay "all transfer taxes, trustees fees *and other amounts associated with the conveyance of the Phase*." *Id.* § 16.2(a)(v) (emphasis added).

30. Claimants' loss of their equity investment was also a direct damage. For example, the terms of the Loan Agreement required Logan to contribute $10 million before LBHI would satisfy any funding requests. Loan Agreement § 7.1(c), Ex. A. When LBHI breached the Loan Agreement by failing to honor draw requests and release liens, the project failed, resulting in Logan's complete loss of equity.

### C. Logan Has Established the Validity of Its Claims.

#### 1. Draw Requests

31. Logan has established that LBHI promised to advance funds to Logan but failed to satisfy the Draw Requests. LBHI does not deny that the Draw Requests were not satisfied. State Street has denied that it assumed any obligations under the Loan Agreement, and LBHI has presented no evidence to the contrary. Accordingly, the Court should permit Logan to proceed on this claim.

#### 2. Promissory Agreements

32. As noted, LBHI does not dispute section 16.2's application to its failure to release liens. And unlike section 15, section 16.2 does not provide LBHI with discretion similar to section 15.

-12-

33. Further, even if section 15 applied, under New York law the discretion afforded LBHI must have been exercised in good faith under the covenant of good faith and fair dealing. This covenant is violated where a party, like LBHI here, "exercises a contractual right as part of a scheme to realize gains that the contract implicitly denies or to deprive the other party of the fruit of its bargain." *Gray & Assocs., LLC v. Speltz & Weiss LLC*, No. 150446/2007, 2009 WL 416138, at *10 (N.Y. Sup. Ct., N.Y. Co. Feb. 2, 2009). Even where a party appears to have unlimited discretion under a contract, that party cannot act malevolently for personal gain under the guise of business dealings. *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302-03 (1st Dep't 2003). Bad faith is generally a question of fact. *Id.* at 303.

34. LBHI contends that Logan's claim should be disallowed because LBHI maintained the sole discretion to withhold consent to any transfer of the property under section 15.1 of the Loan Agreement. Objection ¶ 19. That is not the case. "[D]iscretionary contract language does not give a party carte blanche to do anything he or she pleases. Under New York law, 'even an explicitly discretionary contractual right may not be exercised in bad faith so as to frustrate the other party's right to benefit under the agreement.'" *Wells Fargo Bank Northwest, N.A. v. Sundowner Alexandria, LLC*, No. 09-CV-7313, 2010 WL 3238948, at *4 (S.D.N.Y. Aug. 16, 2010) (quoting *Richbell*, 309 A.D.2d at 302).

35. Logan has set forth LBHI's bad faith. As discussed above, LBHI's agent, Bhatti, acted malevolently, for his own gain, and frustrated a purpose of the Loan Agreement. Indeed, LBHI deprived Logan of one of the primary fruits of the Loan Agreement: applying funds received from the sale of Phases to repay the loan. *See, e.g.*, Loan Agreement § 16.2(ii), Ex. A. Had LBHI released the liens, Logan would have satisfied its debt—a result contemplated by the Loan Agreement. Instead, the project failed.

36. The secret ownership interest of Bhatti in the Diamente Project was material and LBHI categorically violated its duty of good faith and fair dealing.[7] *Wells Fargo*, 2010 WL 3238948, at *4.

37. If the Court finds Logan has not met its burden, Claimants: (1) are entitled to discovery from the Debtors; (2) reserve the right to amend this Response, and (3) may request, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amounts of their claims.

38. Claimants reserve all rights with respect to its claims. Any failure to respond to the Objection on a particular ground or grounds shall not be construed as a waiver of the right to respond on any additional grounds.

---

[7] This misconduct also rises to the level of fraudulent concealment under the special facts doctrine: "a duty to disclose arises 'where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.'" *Swersky v. Dreyer & Traub*, 219 A.D.2d 321 (1st Dep't 1996) (citation omitted).

## CONCLUSION

39. For the reasons stated herein, Claimants respectfully request that this Court overrule the Objection to the extent it seeks to disallow and expunge their claims, allow their claims in the amounts filed, and grant such other, further and different relief as this Court may deem just and proper under the circumstances.

Dated: New York, New York
August 17, 2012

**LOWENSTEIN SANDLER PC**

By: s/ Zachary D. Rosenbaum
Zachary D. Rosenbaum (ZR9316)
Daniel K. Roque (DR2226)
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402

*Attorneys for Logan Hotels and Resorts Mexico, S.A. de C.V., Cabo San Crisobal Golf Resorts, S.A. de C.V., Albert Maes, Logan Hotels & Resorts Development Co. Pte. Ltd., Logan International LLC*