WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

------------------------------------------------------------------x

**DECLARATION OF DANIEL EHRMANN
IN SUPPORT OF MOTION PURSUANT TO SECTION 105(a) OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR
AUTHORIZATION TO SETTLE CERTAIN PREPETITION DERIVATIVES
CONTRACTS WITH TRUSTS FOR WHICH DEUTSCHE BANK NATIONAL
TRUST COMPANY SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Daniel Ehrmann, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, following my review of the business records of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (collectively, with LBHI, the "Chapter 11 Estates"), including specifically, Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Derivatives Products Inc. ("LBDP"), and/or my consultation with employees of the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Motion Pursuant to Sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 For Authorization to Settle Certain*

1

*Prepetition Derivatives Contracts With Trusts For Which Deutsche Bank National Trust Company Serves as Indenture Trustee and Related Relief* (the "Motion").[1]

3. I am Managing Director with Alvarez & Marsal North America, LLC. I was assigned to the Lehman matter in September 2008. I am a co-head of the derivatives group for the Chapter 11 Estates. In that capacity, I am responsible for and manage all derivatives-related matters of the Chapter 11 Estates.

4. I am familiar with LBSF's and LBDP's interests in the derivatives contracts (the "Swap Agreements") with the various trusts and special purpose vehicles set forth on Exhibit B to the Motion (collectively, the "Trusts"). Deutsche Bank National Trust Company serves as indenture trustee (in such capacity, the "Trustee") for each of the Trusts. The Motion accurately describes the terms of the Swap Agreements.

5. Since September 15, 2008 (the "Commencement Date"), the date on which LBHI commenced its chapter 11 case, the Chapter 11 Estates have diligently sought to unwind their derivative contracts and collect all amounts payable to them. Following the Commencement Date, (a) LBDP sought to terminate its four Swap Agreements and (b) the four LBSF Swap Agreements matured in accordance with their terms. The Chapter 11 Estates and their advisors have reviewed the Swap Agreements, calculated the amounts due to them and demanded payment from the Trusts.

6. Since the Commencement Date, the Trusts have refused to pay any amounts to LBSF and LBDP. The Trustee has asserted that certain provisions of the contracts and applicable law modify or eliminate LBSF's and LBDP's right to payment under the Swap Agreements. The Trustee has informed LBSF and LBDP that, if a Swap Agreement matured on

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

2

its own terms, the Trust retained the cash payable to the Lehman Counterparty under such Swap Agreement, but if the Swap Agreement was terminated, the Trust did not retain any cash, but rather distributed all amounts to holders of notes issued by the respective Trusts. LBSF and LBDP dispute the enforceability of the provisions on which the Trustee relies and, on numerous occasions have demanded the Trusts pay to LBSF and LBDP all amounts due under the Swap Agreements plus interest. LBSF and LBDP also commenced an adversary proceeding against each of the Trusts, as applicable, seeking to avoid certain transfers made by the Trusts and the alleged modification of LBSF's and LBDP's rights.

7. Based on numerous conference calls and meetings with the Trustee over the past two years relating to the Swap Agreements, LBSF, LBDP and the Trustee have agreed to the settlement (the "Settlement") set forth in the Settlement Agreement, dated as of July 24, 2012 (the "Settlement Agreement"). The Settlement provides for the payment by each Trust to LBSF or LBDP, as applicable, of an amount equal to (a) 100% of the cash withheld by the Trust on account of payments under its Swap Agreement, less (b) reasonable and documented fees and expenses of the Trust. To the extent the Swap Agreements with LBDP were terminated and the applicable Trusts did not set aside any amounts as payments due under their Swap Agreements, the Settlement Amount for such Trusts is $0. The Settlement resolves all claims of the parties against each other relating to the Swap Agreements. As a result, LBSF and LBDP, as applicable, will withdraw the Adversary Proceedings, and the proofs of claim filed by the Trustee on behalf of the Trusts will be disallowed and expunged. The parties will release each other from all other liability with respect to the Swap Agreements.

8. In my business judgment, the Settlement is in the best interest of LBSF, LBDP and their estates and creditors. As a result of the Settlement, LBSF will receive

approximately $38 million and LBDP will receive more than $3 million in cash that can be used to make distributions to their creditors on the next distribution date under the Plan. With respect to LBDP's Terminated Trades, the Trusts have not set aside any funds and therefore do not have available cash to distribute to LBDP. Notwithstanding such fact, the amount received by LBDP in connection with the Settlement Agreement exceeds the initial amount asserted by LBDP as due under the four LBDP Swap Agreements in the aggregate. As a result, taken as a whole, the Settlement is beneficial to LBDP. The Settlement will avoid the need for litigation of the complex disputes between the parties regarding the Swap Agreements, which would be lengthy and expensive.

9. I am aware that the Debtors are authorized to settle the Swap Agreements pursuant to Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors. However, the Trustee has agreed to the terms of the proposed Settlement subject to the filing of the Motion, which provides the Trustee, the Trusts and the holders of the securities issued by the Trusts with notice of, and an opportunity to object to, the proposed settlement of the Swap Agreements. I have been advised that the Trustee has requested that the holders of securities issued by the Trusts provide instruction with respect to settling the Swap Agreements, but has not been directed by the requisite number or amount of holders to settle the Swap Agreements.

10. The Settlement was negotiated in good faith among LBSF, LBDP and the Trustee and is a fair and reasonable settlement of the disputes between the parties.

11. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 21st day of August 2012

_____
Daniel Ehrmann