Hearing Date and Time: September 27, 2012 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: September 13, 2012 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**NOTICE OF HEARING ON PLAN ADMINISTRATOR'S**
**OBJECTION TO CLAIM FILED BY HALE AVENUE BORROWER, LLC**

**PLEASE TAKE NOTICE** that on August 22, 2012, Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* for the entities in the above referenced chapter 11 cases, filed its objection to the claim of Hale Avenue Borrower, LLC (the "Hale Ave. Objection"), and that a hearing (the "Hearing") to consider the Hale Ave. Objection will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **September 27, 2012 at 10:00 a.m. (Prevailing Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Hale Ave. Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

US_ACTIVE:\44010622\7\58399.0003

the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Plan Administrator, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); and (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B. Schwartz, Esq.), so as to be so filed and received by no later than **September 17, 2012 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

US_ACTIVE:\44010622\7\58399.0003

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Hale Ave. Objection, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Hale Ave. Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: August 22, 2012
       New York, New York

                                           /s/ Jacqueline Marcus
                                           Jacqueline Marcus

                                           WEIL, GOTSHAL & MANGES LLP
                                           767 Fifth Avenue
                                           New York, New York 10153
                                           Telephone: (212) 310-8000
                                           Facsimile: (212) 310-8007

                                           Attorneys for Lehman Brothers Holdings Inc.
                                           and Certain of Its Affiliates

Hearing Date and Time: September 27, 2012 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: September 13, 2012 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    08-13555 (JMP)
                                                   :
                        Debtors.                   :    (Jointly Administered)
------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S OBJECTION**
**TO CLAIM FILED BY HALE AVENUE BORROWER, LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator pursuant to the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan") for the entities in the above referenced chapter 11 cases (collectively, the "Chapter 11 Estates"), files this objection to proof of claim number 27222 and respectfully represents as follows:

**Preliminary Statement**

    1.  The Plan Administrator files this objection seeking to disallow and expunge the proof of claim filed by Hale Avenue Borrower, LLC ("HAB") against LBHI [Claim No. 27222] (the "Hale Ave. Claim") on the basis that LBHI has no liability for the claims asserted therein. The Hale Ave. Claim asserts a claim for damages in the aggregate amount of $30,000,000 that allegedly resulted from LBHI's alleged failure to fund certain amounts to HAB

12

under a series of loan agreements entered into by LBHI and HAB prior to the Commencement Date (as defined below).

2. The Hale Ave. Claim, however, fails to take into account the fact that (i) LBHI had funded all amounts that it was contractually obligated to fund as of the Commencement Date; (ii) HAB waived any and all claims it may have otherwise had for monetary or consequential damages, and (iii) shortly after the Commencement Date, LBHI assigned all of its rights and liabilities under the relevant loans to Swedbank AB, New York Branch ("Swedbank"), thus relieving LBHI of any further liability under the said loans. Accordingly, LBHI has no liability for any amounts asserted in the Hale Ave. Claim and the Plan Administrator requests that the Hale Ave. Claim be disallowed and expunged with prejudice.

**Jurisdiction**

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Article 14(c) of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

4. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Lehman Commercial Paper Inc. ("LCPI") commenced its Chapter 11 Case on October 5, 2008 (the "LCPI Commencement Date"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Bankruptcy (the "Bankruptcy Rules").

2

5. On December 6, 2011, the Court entered the order confirming the Plan [ECF No. 22737]. The Plan became effective on March 6, 2012.

6. Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

## Relief Requested

7. The Plan Administrator files this objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(d) and seeks to disallow and expunge the Hale Ave. Claim on the basis that LBHI has no liability for such claim.

## Facts Relevant to the Hale Ave. Claim

8. On August 2, 2007, LBHI and HAB entered into a master credit agreement (the "Master Credit Agreement") pursuant to which LBHI agreed to provide financing to HAB in connection with the acquisition and predevelopment of certain real property located at 2300 Cropsey Avenue, Brooklyn, NY (the "Property"). A copy of the Master Credit Agreement (without exhibits) is attached hereto as Exhibit A. HAB's development plan for the Property called for it to be converted from a nursing home into a mixed-use property comprised of luxury condominiums and various retail spaces.

9. The Master Credit Agreement provided that LBHI would make a loan to HAB in the original principal amount of up to $16,487,792.22, and that such financing be divided into an acquisition loan and a project loan. The acquisition loan (the "Acquisition Loan") was governed by the Master Credit Agreement and, as of the Commencement Date, $13,939,532.22 of the $14,057,792.22 available under the Acquisition Loan had been funded by LBHI. The remaining $118,260.00 was withheld in accordance with section 2.1.1(b) of the Master Credit Agreement.

3

10. The project loan (the "Project Loan," together with the Acquisition Loan, the "Loans") was governed by the Master Credit Agreement and that certain Project Loan Agreement, dated as of August 2, 2007, between LBHI and HAB (the "Project Loan Agreement," together with the Master Credit Agreement, the "Loan Documents").[1] A copy of the Project Loan Agreement (without exhibits) is attached hereto as Exhibit B. As of the Commencement Date, $2,387,110.84 of the $2,430,000.00 available under the Project Loan had been funded by LBHI. The remaining $42,889.16 was withheld pursuant to section 8.3 of the Project Loan Agreement.

11. Pursuant to the Master Credit Agreement, LBHI was obligated to deduct and hold back the following amounts (collectively, the "Holdback Amounts") from the proceeds of the Loans:

   a. Existing Violations Holdback:  $118,260.00
   b. Working Capital Holdback:  $770,000.00
   c. Tax and Insurance Holdback:  $110,000.00
   d. Interest Holdback:  $1,550,000.00

*See Master Credit Agreement*, §2.1.1(b). The Interest Holdback was withheld from the Project Loan and all other Holdback Amounts were withheld from the Acquisition Loan. The Master Credit Agreement provided for the Holdback Amounts to be advanced to HAB, subject to various restrictions and requirements. The Plan Administrator's review of the Chapter 11 Estates books and records, as well as documents provided by TriMont Real Estate Advisors ("TriMont"), the appointed servicer of the Loans, resulted in a determination that, as of the Commencement Date, the only outstanding amounts due under the Loans were with respect to certain Holdback Amounts. Further, in accordance with the Master Credit Agreement, HAB

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Loan Documents.

4

failed to satisfy the requirements set forth in the Master Credit Agreement in order for HAB to receive a disbursement of the remaining Holdback Amounts.

12. The amounts reserved with respect to the Existing Violations Holdback account for the $118,260.00 deficiency in the Acquisition Loan funding. According to section 2.11 of the Master Credit Agreement, the following terms, conditions and requirements were required to be satisfied in order for the Existing Violations Holdback amount to be disbursed to HAB:

> Existing Violations Holdback. Upon [HAB]'s delivery of evidence to [LBHI] (in form and substance reasonably acceptable to [LBHI]) that each of the violations described in Exhibit B attached hereto shall have been fully cured and settled and provided that Default or Event of Default shall have occurred and be continuing, then [LBHI] shall advance the funds in the Existing Violations Holdback into the Existing Violations Reserve (and for no other purpose) to be further disbursed to [HAB]. . . .

*Master Credit Agreement*, §2.11.

13. The $42,889.16 remaining in the Project Loan was withheld as part of the Interest Holdback pursuant to section 2.1.1(b) of the Master Credit Agreement and section 8.3 of the Project Loan Agreement. Section 8.3 of the Project Loan Agreement provided, *inter alia*, that if, at any time, LBHI, as the lender, "determines, in the exercise of its sole discretion, that there shall exist an insufficient amount in the [Interest Holdback reserve] for the Project Loan to fully fund any Automatic Project Loan Interest Reserve Payment . . . [HAB] shall . . . deposit with [LBHI] such amount as shall be required by [LBHI] to fully fund any such Automatic Project Loan Interest Reserve Payment." *Project Loan Agreement*, §8.3. Pursuant to the Project Loan Agreement, failure by HAB to cover any shortfall in interest due on the Loans is an event of default under the Project Loan. Section 12.1(b) of the Project Loan Agreement provides, *inter*

*alia*, that in the event of default, LBHI may withhold further advances. *See Project Loan Agreement*, §12.1(b).

14. On or about October 14, 2008, TriMont notified HAB that the amount remaining under the Project Loan, $42,889.16, was insufficient to cover the interest due of $108,844.28. Accordingly, HAB was directed to deposit the $59,955.12 shortfall in accordance with section 8.3 of the Project Loan Agreement. Pursuant to section 8.3 of the Project Loan Agreement, LBHI was authorized to apply a portion of the amounts that would have otherwise been available to HAB in connection with the Project Loan to offset interest due to LBHI under the Project Loan.

15. The Loan Documents contain certain waivers of claims and limitations on liability. For example, section 12.21 of the Master Credit Agreement provides that

> none of [LBHI] . . . or [its] agents or employees shall be liable to [HAB] for any monetary damages (including any special, consequential or punitive damages whatsoever), whether on contract, tort (including negligence and strict liability) or any other legal or equitable principle . . . and [HAB's] sole remedies shall be limited to commencing an action for specific performance.

*Master Credit Agreement*, §12.21.

16. Similarly, section 13.11 of the Project Loan Agreement provides that

> [i]n no event shall [LBHI] or [HAB] be liable to the other for punitive or consequential damages, whatever the nature of a breach by [LBHI] or [HAB] of its obligation under this Agreement or any of the other Loan Documents and [LBHI] and [HAB] each, for itself and its respective Affiliates, hereby waives all claims for punitive or consequential damages.

*Project Loan Agreement*, §13.11.

6

**The Master Repurchase Agreements**

17.     On December 4, 1997, LBHI, LCPI and certain of their affiliates entered into a Master Repurchase Agreement (as amended, the "Internal MRA"). Pursuant to the Internal MRA, prior to the Commencement Date, LBHI sold to LCPI certain commercial and residential mortgage and mezzanine loans with an obligation to repurchase such loans at a future date (the "Internal MRA Loans"). The respective repurchase dates for the Internal MRA Loans were extended on a regular basis. The Loans were included among the Internal MRA Loans and, therefore, sold to LCPI under the Internal MRA.

18.     On December 3, 2002, LCPI and Lehman Brothers Inc., as sellers, entered into that certain Master Repurchase Agreement with Swedbank (as amended, the "Swedbank MRA"). LCPI sold to Swedbank in exchange for cash payment, certain residential and commercial mortgage loans, including the Loans (collectively, the "Swedbank MRA Loans"). Under the terms of the Swedbank MRA, LCPI was obligated to repurchase the Swedbank MRA Loans at a future date.

19.     On September 24, 2008 (the "Default Date"), Swedbank sent a letter (the "Default Letter") to LCPI declaring that an event of default had occurred under the Swedbank MRA as a result of the commencement of LBHI's chapter 11 case. A copy of the Default Letter is attached hereto as Exhibit C. Pursuant to the Swedbank MRA, Swedbank immediately became entitled to LCPI's ownership interest in, among other things, the Loans. LBHI and LCPI did not dispute Swedbank's ownership rights with respect to the Loans. As a result, on or about February 18, 2009, LBHI and/or LCPI executed assignment documents confirming that Swedbank had purchased all of the right, title and interest of LCPI or LBHI, as applicable, with respect to the Loans pursuant to the Swedbank MRA and that Swedbank had assumed the

7

obligations of LCPI or LBHI, as applicable, as lender arising from the documents evidencing the Loans as of the Default Date.[2]

### The Hale Ave. Claim

20. The Hale Ave. Claim is based on LBHI's alleged breach of its obligations under what HAB refers to as the "Master Credit Agreement and component loan agreements." According to HAB, this breach, which appears to relate to LBHI's funding obligations, caused HAB to be damaged in the approximate amount of $30 million. HAB also alleges that LBHI, as the holder of a portion of the equity in an indirect parent of HAB, somehow "had a vested interest in providing the funding required under the Loan Agreements in order to complete the Condominium Development." Finally, HAB alleges that LBHI "caused such funding to be accelerated in a manner which committed it to fund the full amount of the financing as required under the Loans Agreements."

21. The Hale Ave. Claim fails to acknowledge that, as of the Commencement Date, LBHI had, in fact, fully complied with its funding obligations under the Loan Documents, nor does it reflect the waiver of monetary damages provision contained in the Master Credit Agreement or the waiver of consequential damages provision contained in the Project Loan Agreement.

---

[2] Because LBHI sold the Loans to LCPI prior to the Commencement Date, LBHI was no longer an owner of the Loans upon the commencement of its chapter 11 case. Similarly, as of the LCPI Commencement Date, LCPI was no longer an owner of the Loans because Swedbank became entitled to ownership of the Loans on or about the Default Date, which was prior to the LCPI Commencement Date. The Loans, therefore, were not property of the estates of LCPI or LBHI, as applicable, as of their respective Commencement Dates.

8

**The Loans Were Fully Funded and, In Any Case,
HAB Waived Any and All Claims It May Have Had Against LBHI in the Loan
Documents and, Accordingly, the Hale Ave. Claim Should Be Disallowed and Expunged**

22.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). While a proof of claim is "deemed allowed, unless a party in interest objects," 11 U.S.C. § 502(a), once an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

23.     As discussed above, but for the applicable Holdback Amounts, which were withheld in accordance with the express terms of the Loans, each of the Acquisition Loan and the Project Loan was fully funded as of the Commencement Date. HAB's allegations in the Hale Ave. Claim that LBHI failed to fund amounts due under the Loan Documents are, therefore, without merit.

24.     Moreover, the Hale Ave. Claim is entirely comprised of claims for monetary and consequential damages – precisely the types of claims that HAB affirmatively waived in the Loan Documents. The Loan Documents are governed by New York law and "[c]ourts in New York generally enforce contractual waivers or limitations of liability." *Baidu, Inc. v. Register.com, Inc.,* 760 F. Supp. 2d 312, 317 (S.D.N.Y. 2010); *see also Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 387 F.Supp.2d 299, 307 (S.D.N.Y.2005) ("[P]arties, especially those of equal bargaining power, should be able to rely upon the general New York

9

rule that enforces contracts for the release of claims of liability."); *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994) ("A limitation on liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.").

25. HAB is a sophisticated party and the Loan Documents were each knowingly and voluntarily entered into and were not the product of any fraudulent conduct by LBHI or LCPI. Accordingly, the Loan Documents constitute valid and enforceable agreements under New York law and HAB has waived any and all claims that it may otherwise have had for monetary or consequential damages in connection with the Loans.

26. Additionally, Swedbank became the owner of the Loans on September 24, 2008. Any obligations that arose under the Loan Documents after that date would have been obligations of Swedbank, not LBHI or LCPI.

27. Further, HAB has failed to provide any supporting documents to substantiate any of its millions of dollars in purported damages. The asserted damages appear speculative at best. HAB does not provide any evidence that it incurred such damages or that any such damages were caused by its failure to receive funding under the Loans. That is because such damages simply do not exist. Even if LBHI were to concede, which it does not, that it was somehow required to fund the remaining outstanding Holdback Amounts, HAB's actual damages, the difference between the face amount of the Loans and the amount actually funded, would be $161,149.16 – approximately one half of one percent of the $30 million claimed in the Hale Ave. Claim.

28. Finally, HAB's argument that LBHI's equity interest in HAB's indirect parent somehow compelled LBHI's to provide HAB with additional funding is nonsensical.

10

Prior to the Commencement Date, LBHI's only obligation was to use lawful means to maximize value for its shareholders – not to throw good money after bad in connection with a failed real estate project merely because its interest included both debt and equity components.

29. HAB has no claims against LBHI for any alleged failure to fund under the Loan Documents because LBHI fully complied with its funding obligations prior to the Commencement Date. Further, even if LBHI had not fully funded the amounts due under the Loan Agreements, HAB's waiver of any and all claims for monetary or consequential damages contained in the Loan Documents is fatal to the Hale Ave. Claim. Having specifically agreed not to assert claims for monetary or consequential damages in the Loan Documents, HAB should not now be permitted to repudiate such agreements. Accordingly, the Plan Administrator requests that the Hale Ave. Claim be disallowed and expunged from the claims register.

## Reservation of Rights

30. To the extent that this Court does not grant the relief requested herein, the Plan Administrator reserves its right to object to the Hale Ave. Claim for any other reason.

## Notice

31. No trustee has been appointed in these chapter 11 cases. The Plan Administrator has served notice of this objection, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures [ECF No. 9635], on: (i) HAB; (ii) the United States Trustee for Region 2; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Swedbank, and (vii) all parties who have requested notice in these chapter 11 cases. The Plan Administrator submits that no other or further notice need be provided.

11

32. No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: August 22, 2012
       New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

12

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                                    :      Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                 :      08-13555 (JMP)
                                                         :
                                    Debtors.             :      (Jointly Administered)
------------------------------------------------------------------x

## ORDER GRANTING PLAN ADMINISTRATOR'S
## OBJECTION TO CLAIM FILED BY HALE AVENUE BORROWER, LLC

Upon the objection, dated August 22, 2012 (the "Hale Ave. Objection"), of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* for the entities in the above referenced chapter 11 cases, pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure, seeking disallowance and expungement of the Hale Ave. Claim,[1] all as described in the Hale Ave. Objection; and due and proper notice of the Hale Ave. Objection having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Hale Ave. Objection is in the best interests of the Chapter 11 Estates, their creditors and all parties in interest in the above captioned chapter 11 cases and that the legal and factual bases set forth in the Hale Ave. Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Hale Ave. Objection is granted; and it is further

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Hale Ave. Objection.

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the Hale Ave. Claim, which has been assigned claim number 27222, is disallowed and expunged in its entirety with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2012
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

2