Exhibit A-1

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2005-4

*(Classes and CUSIPs are listed on Schedule A attached hereto)*

Re:     Impac CMB Trust Series 2005-4

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of May 6, 2005 (the "Transaction
Document") between Impac CMB Trust Series 2005-4 as the issuer (the "Issuer") and Deutsche Bank
National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in
this notice and not defined in this notice shall have the meanings assigned to such terms in the
Transaction Document.

**I.      Factual Background**

1.      On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Special Financing, Inc., the counterparty (the "Derivative Counterparty") under the
1992 ISDA Master Agreement with the Trustee on behalf of the Issuer dated as of May 6, 2005 (together
with any schedules or related documents, the "Derivative Contract"), filed a petition under Chapter 11 of
the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to
herein as the "Debtor."

2.      On October 3, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the
Bankruptcy Code with the Bankruptcy Court.

3.      On September 1, 2011, the Bankruptcy Court entered an amended order approving the
Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI

(the "<u>Plan</u>").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.   Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.      On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "<u>Trust Claims</u>").  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "<u>Motion to Reclassify</u>") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.      Adversary Proceeding and Debtor's Demand

5.      On October 3, 2010, the Derivative Counterparty filed an action in the Bankruptcy Court against the Issuer (the "<u>Lehman Action</u>").  A copy of the complaint may be found at www.pacer.gov or by contacting the Bankruptcy Court.  In the Lehman Action, the Derivative Counterparty seeks, among other relief, a declaratory judgment that provisions in transaction documents that would modify payment priorities to subordinate certain termination payments to the Derivative Counterparty constitute unenforceable *ipso facto* clauses and that any action to enforce payment priorities that subordinate payments to the Derivative Counterparty as a result of a bankruptcy filing violates the automatic stay under the Bankruptcy Code.

6.      By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "<u>Debtor's Demand</u>") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract has matured pursuant to its terms, (ii) a payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as <u>Exhibit A</u>.

## III.      Request for Input and Direction and Indemnity

7.      The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.   In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty.   In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law.   Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or

by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders. Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.   The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations and gives no legal or investment advice.  Certificateholders should seek their own legal advice concerning these matters.  The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Issuer and the performance of its duties under the Transaction Document.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

SCHEDULE A

| CLASS | CUSIP[1] |
|---|---|
|  |  |
| 1-A-1A | 45254NPA9 |
| 1-A-1B | 45254NPB7 |
| 1-A2 | 45254NPC5 |
| 1-A-IO | 45254NPD3 |
| 1-B1 | 45254NPQ4 |
| 1-B2 | 45254NPR2 |
| 1-M1 | 45254NPG6 |
| 1-M2 | 45254NPH4 |
| 1-M3 | 45254NPJ0 |
| 1-M4 | 45254NPK7 |
| 1-M5 | 45254NPL5 |
| 1-M6 | 45254NPM3 |
| 2-A1 | 45254NPE1 |
| 2-A2 | 45254NPF8 |
| 2-B1 | 45254NPS0 |
| 2-B2 | 45254NPT8 |
| 2-M1 | 45254NPN1 |
| 2-M2 | 45254NPP6 |
| CERT | IM0504101 |

---

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

<u>EXHIBIT A</u>

# Weil, Gotshal & Manges LLP

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Lori R. Fife**
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re:  Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements").  After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A.  Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed.  DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract.  *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)).  The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF.  *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code.  Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code.  If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses.  Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay.  *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896
(Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay
provision constitutes civil contempt and may be addressed as such.").

DBTC's willful violations of the automatic stay are particularly untenable in light of the
conduct of similarly situated indenture trustees. As of the Commencement Date, LBSF was party to
numerous swap agreements with special purpose vehicles that issued residential mortgage-backed
securities. No fewer than four separate institutions acting as indenture trustees in relation to such
securities have agreed to settle their respective swap agreements and have paid LBSF the full amount
due and owing under the agreements. DBTC continues to take an opposite position from all other
similarly situated indenture trustees without any legal justification.

Additionally, DBTC's posture, far from being purely protective of noteholders, is
harming noteholders. Interest continues to accrue on the amounts owed to LBSF while DBTC holds the
amounts payable under the Swap Agreements. Under the Master Agreement, LBSF is entitled to receive
interest at the Default Rate, which equals the LBSF's cost of funds plus 1%. LBSF has determined that
the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%.
To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap
Agreements. As accrual of the interest correspondingly will reduce the money available to the SPVs to
pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders. To the extent the SPVs
do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against
DBTC directly.

In connection with prior settlements of swap agreements between DBTC and LBSF,
DBTC incurred fees and expenses that were substantially higher than similarly situated trustees. To the
extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to
DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not
reasonable or payable under the swap agreements. While LBSF is willing to consider an appropriate
payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors
should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

       In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011. If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts owed to it.

Yours truly,

Lori R. Fife

cc:  Kelli Rodriquez
     Melissa Wilman
     Abhishek Kalra
     Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-2

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2004-10

*(Classes and CUSIPs are listed on Schedule A attached hereto)*

Re:      Impac CMB Trust Series 2004-10

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of November 24, 2004 (the "Transaction
Document") between Impac CMB Trust Series 2004-10 as the issuer (the "Issuer") and Deutsche Bank
National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in
this notice and not defined in this notice shall have the meanings assigned to such terms in the
Transaction Document.

**I.      Factual Background**

1.      On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Derivative Products Inc., the counterparty (the "Derivative Counterparty") under the
1992 ISDA Master Agreement with the Issuer dated as of November 24, 2004 (together with any
schedules or related documents, the "Derivative Contract"), filed a petition under Chapter 11 of the
Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to
herein as the "Debtor."

2.      On October 5, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the
Bankruptcy Code with the Bankruptcy Court.

3.      On September 1, 2011, the Bankruptcy Court entered an amended order approving the
Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI

(the "Plan").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.  Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.      On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "Trust Claims").  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "Motion to Reclassify") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.      Debtor's Demand

5.      By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "Debtor's Demand") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract was terminated, (ii) a termination payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, the Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to the Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to the Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as Exhibit A.

## III.      Request for Input and Direction and Indemnity

6.      The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.  In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty from funds held in the Payment Account prior to any distributions to Certificateholders.  In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law.  Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders.  Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.  The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations

and gives no legal or investment advice. Certificateholders should seek their own legal advice concerning these matters. The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Issuer and the performance of its duties under the Transaction Document.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

## SCHEDULE A

| CLASS | CUSIP[1] |
|-------|----------|
|  |  |
| 1-A1 | 45254NLJ4 |
| 1-A2 | 45254NLK1 |
| 2-A | 45254NLL9 |
| 3-A1 | 45254NLM7 |
| 3-A2 | 45254NLN5 |
| 3-M1 | 45254NLR6 |
| 3-M2 | 45254NLS4 |
| 3-M3 | 45254NLT2 |
| 3-M4 | 45254NLU9 |
| 3-M5 | 45254NLV7 |
| 4-A1 | 45254NLP0 |
| 4-A2 | 45254NLQ8 |
| 4-B | 45254NLY1 |
| 4-M1 | 45254NLW5 |
| 4-M2 | 45254NLX3 |
| CERT | IM0410101 |

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

<u>EXHIBIT A</u>

**Weil, Gotshal & Manges LLP**

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Lori R. Fife**
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re: Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements"). After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A. Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed. DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract. *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)). The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF. *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code. Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code. If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses. Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay. *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896 (Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such.").

DBTC's willful violations of the automatic stay are particularly untenable in light of the conduct of similarly situated indenture trustees. As of the Commencement Date, LBSF was party to numerous swap agreements with special purpose vehicles that issued residential mortgage-backed securities. No fewer than four separate institutions acting as indenture trustees in relation to such securities have agreed to settle their respective swap agreements and have paid LBSF the full amount due and owing under the agreements. DBTC continues to take an opposite position from all other similarly situated indenture trustees without any legal justification.

Additionally, DBTC's posture, far from being purely protective of noteholders, is harming noteholders. Interest continues to accrue on the amounts owed to LBSF while DBTC holds the amounts payable under the Swap Agreements. Under the Master Agreement, LBSF is entitled to receive interest at the Default Rate, which equals the LBSF's cost of funds plus 1%. LBSF has determined that the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%. To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap Agreements. As accrual of the interest correspondingly will reduce the money available to the SPVs to pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders. To the extent the SPVs do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against DBTC directly.

In connection with prior settlements of swap agreements between DBTC and LBSF, DBTC incurred fees and expenses that were substantially higher than similarly situated trustees. To the extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not reasonable or payable under the swap agreements. While LBSF is willing to consider an appropriate payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011. If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts owed to it.

Yours truly,

Lori R. Fife

cc:  Kelli Rodriquez
     Melissa Wilman
     Abhishek Kalra
     Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-3

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2003-11

*(Classes and CUSIPs are listed on Schedule A attached hereto)*

Re:    Impac CMB Trust Series 2003-11

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of November 6, 2003 (the "Transaction Document") between Impac CMB Trust Series 2003-11 as the issuer (the "Issuer") and Deutsche Bank National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in this notice and not defined in this notice shall have the meanings assigned to such terms in the Transaction Document.

I.    **Factual Background**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of Lehman Brothers Derivative Products Inc., the counterparty (the "Derivative Counterparty") under the 1992 ISDA Master Agreement with the Issuer dated as of November 6, 2003 (together with any schedules or related documents, the "Derivative Contract"), filed a petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to herein as the "Debtor."

2.    On October 5, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

3.    On September 1, 2011, the Bankruptcy Court entered an amended order approving the Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI

(the "Plan").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.  Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.    On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "Trust Claims").  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "Motion to Reclassify") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.    Debtor's Demand

5.    By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "Debtor's Demand") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract was terminated, (ii) a termination payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, the Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to the Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to the Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as Exhibit A.

## III.    Request for Input and Direction and Indemnity

6.    The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.  In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty from funds held in the Payment Account prior to any distributions to Certificateholders.  In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law.  Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders.  Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.  The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations

and gives no legal or investment advice. Certificateholders should seek their own legal advice concerning these matters. The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Issuer and the performance of its duties under the Transaction Document.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

SCHEDULE A

| CLASS | CUSIP[1] |
|-------|----------|
|       |          |
| 1-A1 | 45254NFY8 |
| 1-A2 | 45254NFZ5 |
| 1-M1 | 45254NGB7 |
| 1-M2 | 45254NGC5 |
| 1-M3 | 45254NGD3 |
| 2-A1 | 45254NGA9 |
| 2-B1 | 45254NGG6 |
| 2-M1 | 45254NGE1 |
| 2-M2 | 45254NGF8 |
| CERT | IM0311101 |

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

EXHIBIT A

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Lori R. Fife
(212) 310-8318
Lori.Fife@weil.com

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re:  Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements").  After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A.  Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed.  DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract.  *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)).  The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF.  *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code.  Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code.  If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses.  Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay.  *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896
(Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay
provision constitutes civil contempt and may be addressed as such.").

      DBTC's willful violations of the automatic stay are particularly untenable in light of the
conduct of similarly situated indenture trustees. As of the Commencement Date, LBSF was party to
numerous swap agreements with special purpose vehicles that issued residential mortgage-backed
securities. No fewer than four separate institutions acting as indenture trustees in relation to such
securities have agreed to settle their respective swap agreements and have paid LBSF the full amount
due and owing under the agreements. DBTC continues to take an opposite position from all other
similarly situated indenture trustees without any legal justification.

      Additionally, DBTC's posture, far from being purely protective of noteholders, is
harming noteholders. Interest continues to accrue on the amounts owed to LBSF while DBTC holds the
amounts payable under the Swap Agreements. Under the Master Agreement, LBSF is entitled to receive
interest at the Default Rate, which equals the LBSF's cost of funds plus 1%. LBSF has determined that
the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%.
To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap
Agreements. As accrual of the interest correspondingly will reduce the money available to the SPVs to
pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders. To the extent the SPVs
do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against
DBTC directly.

      In connection with prior settlements of swap agreements between DBTC and LBSF,
DBTC incurred fees and expenses that were substantially higher than similarly situated trustees. To the
extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to
DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not
reasonable or payable under the swap agreements. While LBSF is willing to consider an appropriate
payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors
should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

      In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011. If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts owed to it.

Yours truly,

Lori R. Fife

cc:  Kelli Rodriquez
     Melissa Wilman
     Abhishek Kalra
     Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-4

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2004-8

*(Classes and CUSIPs are listed on Schedule A attached hereto)*

Re:    Impac CMB Trust Series 2004-8

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of September 29, 2004 (the "Transaction
Document") between Impac CMB Trust Series 2004-8 as the issuer (the "Issuer") and Deutsche Bank
National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in
this notice and not defined in this notice shall have the meanings assigned to such terms in the
Transaction Document.

I.    **Factual Background**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Derivative Products Inc., the counterparty (the "Derivative Counterparty") under the
1992 ISDA Master Agreement with the Issuer dated as of September 29, 2004 (together with any
schedules or related documents, the "Derivative Contract"), filed a petition under Chapter 11 of the
Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to
herein as the "Debtor."

2.    On October 5, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the
Bankruptcy Code with the Bankruptcy Court.

3.    On September 1, 2011, the Bankruptcy Court entered an amended order approving the
Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI

(the "Plan").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.  Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.      On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "Trust Claims)".  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "Motion to Reclassify") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.      Debtor's Demand

5.      By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "Debtor's Demand") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract was terminated, (ii) a termination payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, the Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to the Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to the Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as Exhibit A.

## III.      Request for Input and Direction and Indemnity

6.      The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.  In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty from funds held in the Payment Account prior to any distributions to Certificateholders.  In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law.  Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders.  Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.  The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations

and gives no legal or investment advice.  Certificateholders should seek their own legal advice concerning these matters.  The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Issuer and the performance of its duties under the Transaction Document.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

## SCHEDULE A

| CLASS | CUSIP[1] |
|-------|----------|
|  |  |
| 1-A | 45254NKQ9 |
| 2-A1 | 45254NKR7 |
| 2-A2 | 45254NKS5 |
| 3-A | 45254NKT3 |
| 3-B | 45254NKW6 |
| 3-M1 | 45254NKU0 |
| 3-M2 | 45254NKV8 |
| CERT | IM0408101 |

---

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

EXHIBIT A

# Weil, Gotshal & Manges LLP

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Lori R. Fife**
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re: Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements"). After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A. Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed. DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract. *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)). The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF. *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code. Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code. If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses. Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay. *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896 (Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such.").

DBTC's willful violations of the automatic stay are particularly untenable in light of the conduct of similarly situated indenture trustees. As of the Commencement Date, LBSF was party to numerous swap agreements with special purpose vehicles that issued residential mortgage-backed securities. No fewer than four separate institutions acting as indenture trustees in relation to such securities have agreed to settle their respective swap agreements and have paid LBSF the full amount due and owing under the agreements. DBTC continues to take an opposite position from all other similarly situated indenture trustees without any legal justification.

Additionally, DBTC's posture, far from being purely protective of noteholders, is harming noteholders. Interest continues to accrue on the amounts owed to LBSF while DBTC holds the amounts payable under the Swap Agreements. Under the Master Agreement, LBSF is entitled to receive interest at the Default Rate, which equals the LBSF's cost of funds plus 1%. LBSF has determined that the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%. To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap Agreements. As accrual of the interest correspondingly will reduce the money available to the SPVs to pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders. To the extent the SPVs do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against DBTC directly.

In connection with prior settlements of swap agreements between DBTC and LBSF, DBTC incurred fees and expenses that were substantially higher than similarly situated trustees. To the extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not reasonable or payable under the swap agreements. While LBSF is willing to consider an appropriate payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011. If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts owed to it.

Yours truly,

Lori R. Fife

cc: Kelli Rodriquez
    Melissa Wilman
    Abhishek Kalra
    Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-5

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2005-8

_**(Classes and CUSIPs are listed on Schedule A attached hereto)**_

Re:    Impac CMB Trust Series 2005-8

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of November 30, 2005 (the "Transaction
Document") between Impac CMB Trust Series 2005-8 as the issuer (the "Issuer") and Deutsche Bank
National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in
this notice and not defined in this notice shall have the meanings assigned to such terms in the
Transaction Document.

**I.    Factual Background**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Special Financing, Inc., the counterparty (the "Derivative Counterparty") under the
1992 ISDA Master Agreement with the Issuer dated as of November 30, 2005 (together with any
schedules or related documents, the "Derivative Contract"), filed a petition under Chapter 11 of the
Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to
herein as the "Debtor."

2.    On October 3, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the
Bankruptcy Code with the Bankruptcy Court.

3.      On September 1, 2011, the Bankruptcy Court entered an amended order approving the Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI (the "Plan").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.   Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.      On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "Trust Claims").  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "Motion to Reclassify") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.      Adversary Proceeding and Debtor's Demand

5.      On October 3, 2010, the Derivative Counterparty filed an action in the Bankruptcy Court against the Issuer (the "Lehman Action").  A copy of the complaint may be found at www.pacer.gov or by contacting the Bankruptcy Court.  In the Lehman Action, the Derivative Counterparty seeks, among other relief, a declaratory judgment that provisions in transaction documents that would modify payment priorities to subordinate certain termination payments to the Derivative Counterparty constitute unenforceable *ipso facto* clauses and that any action to enforce payment priorities that subordinate payments to the Derivative Counterparty as a result of a bankruptcy filing violates the automatic stay under the Bankruptcy Code.

6.      By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "Debtor's Demand") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract has matured pursuant to its terms, (ii) a payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as Exhibit A.

## III.      Request for Input and Direction and Indemnity

7.      The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.  In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty.  In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law.     Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's

counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or
by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting
Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

The Trustee may conclude that a specific response to particular inquiries from individual
Certificateholders is not consistent with equal dissemination of information to all Certificateholders.
Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any
future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as
its sole source of information.   The Trustee may in its sole discretion determine to inform
Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations
and gives no legal or investment advice.  Certificateholders should seek their own legal advice concerning
these matters.  The Trustee has incurred and expects to continue to incur fees and expenses in connection
with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing
to the Trustee may include, but are not limited to, expenses incurred by it in connection with the
administration of the Issuer and the performance of its duties under the Transaction Document.


DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

SCHEDULE A

| CLASS | CUSIP[1] |
|-------|----------|
| 1-A | 45254NRG4 |
| 1-A-IO | 45254NRJ8 |
| 1-AM | 45254NRH2 |
| 1-B | 45254NRS8 |
| 1-M1 | 45254NRK5 |
| 1-M2 | 45254NRL3 |
| 1-M3 | 45254NRM1 |
| 1-M4 | 45254NRN9 |
| 1-M5 | 45254NRP4 |
| 1-M6 | 45254NRQ2 |
| 1-M7 | 45254NRR0 |
| 2-A | 45254NRT6 |
| 2-AM | 45254NRU3 |
| 2-B | 45254NRY5 |
| 2-M1 | 45254NRV1 |
| 2-M2 | 45254NRW9 |
| 2-M3 | 45254NRX7 |
| CERT | IM0508101 |

---

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

EXHIBIT A

# Weil, Gotshal & Manges LLP

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Lori R. Fife**
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re: Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements"). After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A. Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed. DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract. *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)). The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF. *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code. Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code. If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses. Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay. *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896 (Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such.").

DBTC's willful violations of the automatic stay are particularly untenable in light of the conduct of similarly situated indenture trustees. As of the Commencement Date, LBSF was party to numerous swap agreements with special purpose vehicles that issued residential mortgage-backed securities. No fewer than four separate institutions acting as indenture trustees in relation to such securities have agreed to settle their respective swap agreements and have paid LBSF the full amount due and owing under the agreements. DBTC continues to take an opposite position from all other similarly situated indenture trustees without any legal justification.

Additionally, DBTC's posture, far from being purely protective of noteholders, is harming noteholders. Interest continues to accrue on the amounts owed to LBSF while DBTC holds the amounts payable under the Swap Agreements. Under the Master Agreement, LBSF is entitled to receive interest at the Default Rate, which equals the LBSF's cost of funds plus 1%. LBSF has determined that the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%. To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap Agreements. As accrual of the interest correspondingly will reduce the money available to the SPVs to pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders. To the extent the SPVs do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against DBTC directly.

In connection with prior settlements of swap agreements between DBTC and LBSF, DBTC incurred fees and expenses that were substantially higher than similarly situated trustees. To the extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not reasonable or payable under the swap agreements. While LBSF is willing to consider an appropriate payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

       In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011. If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts owed to it.

Yours truly,

Lori R. Fife

cc:  Kelli Rodriquez
      Melissa Wilman
      Abhishek Kalra
      Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-6

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2004-5

*(Classes and CUSIPs are listed on Schedule A attached hereto)*

Re:    Impac CMB Trust Series 2004-5

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of May 28, 2004 (the "Transaction
Document") between Impac CMB Trust Series 2004-5 as the issuer (the "Issuer") and Deutsche Bank
National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in
this notice and not defined in this notice shall have the meanings assigned to such terms in the
Transaction Document.

I.    **Factual Background**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Derivative Products Inc., the counterparty (the "Derivative Counterparty") under the
1992 ISDA Master Agreement with the Issuer dated as of May 28, 2004 (together with any schedules or
related documents, the "Derivative Contract"), filed a petition under Chapter 11 of the Bankruptcy Code
with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy
Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to herein as the
"Debtor."

2.    On October 5, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the
Bankruptcy Code with the Bankruptcy Court.

3.    On September 1, 2011, the Bankruptcy Court entered an amended order approving the
Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI

(the "Plan").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.  Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.       On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "Trust Claims").  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "Motion to Reclassify") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.       Debtor's Demand

5.       By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "Debtor's Demand") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract was terminated, (ii) a termination payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, the Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to the Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to the Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as Exhibit A.

## III.      Request for Input and Direction and Indemnity

6.       The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.  In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty from funds held in the Payment Account prior to any distributions to Certificateholders.  In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law. Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders. Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.   The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations

and gives no legal or investment advice.  Certificateholders should seek their own legal advice concerning these matters.  The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Issuer and the performance of its duties under the Transaction Document.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

## SCHEDULE A

| CLASS | CUSIP[1] |
|---|---|
| 1-A1 | 45254NJG3 |
| 1-A2 | 45254NJH1 |
| 1-A3 | 45254NJJ7 |
| 1-M1 | 45254NJK4 |
| 1-M2 | 45254NJL2 |
| 1-M3 | 45254NJM0 |
| 1-M4 | 45254NJN8 |
| 1-M5 | 45254NJP3 |
| 1-M6 | 45254NJQ1 |
| 2-A | 45254NJR9 |
| 2-B | 45254NJU2 |
| 2-M1 | 45254NJS7 |
| 2-M2 | 45254NJT5 |
| CERT | IM0405101 |

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

EXHIBIT A

# Weil, Gotshal & Manges LLP

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Lori R. Fife
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re:  Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

    LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements").  After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A.  Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed.  DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

    As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract.  *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)).  The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF.  *See id.*

    Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code.  Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code.  If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses.  Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay.  *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896 (Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such.").

DBTC's willful violations of the automatic stay are particularly untenable in light of the conduct of similarly situated indenture trustees. As of the Commencement Date, LBSF was party to numerous swap agreements with special purpose vehicles that issued residential mortgage-backed securities. No fewer than four separate institutions acting as indenture trustees in relation to such securities have agreed to settle their respective swap agreements and have paid LBSF the full amount due and owing under the agreements. DBTC continues to take an opposite position from all other similarly situated indenture trustees without any legal justification.

Additionally, DBTC's posture, far from being purely protective of noteholders, is harming noteholders. Interest continues to accrue on the amounts owed to LBSF while DBTC holds the amounts payable under the Swap Agreements. Under the Master Agreement, LBSF is entitled to receive interest at the Default Rate, which equals the LBSF's cost of funds plus 1%. LBSF has determined that the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%. To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap Agreements. As accrual of the interest correspondingly will reduce the money available to the SPVs to pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders. To the extent the SPVs do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against DBTC directly.

In connection with prior settlements of swap agreements between DBTC and LBSF, DBTC incurred fees and expenses that were substantially higher than similarly situated trustees. To the extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not reasonable or payable under the swap agreements. While LBSF is willing to consider an appropriate payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

       In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011. If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts owed to it.

Yours truly,

Lori R. Fife

cc:  Kelli Rodriquez
     Melissa Wilman
     Abhishek Kalra
     Locke McMurray, Esq.

October 6, 2011
Page 4

## Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-7

**Deutsche Bank**
1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN**
**BANKRUPTCY PROCEEDING OF**
**LEHMAN BROTHERS HOLDINGS INC.**
**AND ITS AFFILIATED DEBTORS**
**AND CERTAIN OTHER MATTERS**

To the Certificateholders of IMPAC CMB TRUST SERIES 2005-5

*(Classes and CUSIPs are listed on Schedule A attached hereto)*

Re:    Impac CMB Trust Series 2005-5

Ladies and Gentlemen:

Reference is made to that certain Indenture, dated as of June 30, 2005 (the "Transaction
Document") between Impac CMB Trust Series 2005-5 as the issuer (the "Issuer") and Deutsche Bank
National Trust Company, as indenture trustee (in such capacity, the "Trustee").  Capitalized terms used in
this notice and not defined in this notice shall have the meanings assigned to such terms in the
Transaction Document.

**I.    Factual Background**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Special Financing, Inc., the counterparty (the "Derivative Counterparty") under the
1992 ISDA Master Agreement with the Issuer dated as of June 30, 2005 (together with any schedules or
related documents, the "Derivative Contract"), filed a petition under Chapter 11 of the Bankruptcy Code
with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy
Court").  LBHI, the Derivative Counterparty and other affiliates are collectively referred to herein as the
"Debtor."

2.    On October 3, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the
Bankruptcy Code with the Bankruptcy Court.

3.    On September 1, 2011, the Bankruptcy Court entered an amended order approving the
Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI

(the "<u>Plan</u>").  On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan.    Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.    On September 18, 2009, the Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Derivative Contract against LBHI and the Derivative Counterparty (the "<u>Trust Claims</u>").  On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "<u>Motion to Reclassify</u>") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims.  The Debtor has agreed to an extension of the Issuer's time to respond to the Motion to Reclassify until February 8, 2011.

## II.    Adversary Proceeding and Debtor's Demand

5.    On October 3, 2010, the Derivative Counterparty filed an action in the Bankruptcy Court against the Issuer (the "<u>Lehman Action</u>").  A copy of the complaint may be found at www.pacer.gov or by contacting the Bankruptcy Court.  In the Lehman Action, the Derivative Counterparty seeks, among other relief, a declaratory judgment that provisions in transaction documents that would modify payment priorities to subordinate certain termination payments to the Derivative Counterparty constitute unenforceable *ipso facto* clauses and that any action to enforce payment priorities that subordinate payments to the Derivative Counterparty as a result of a bankruptcy filing violates the automatic stay under the Bankruptcy Code.

6.    By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "<u>Debtor's Demand</u>") for payment for amounts allegedly owed under the Derivative Contract.  Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contract has matured pursuant to its terms, (ii) a payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Issuer does not pay all amounts alleged to be due to the Derivative Counterparty, Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to Derivative Counterparty at the rate of LIBOR plus 13.5%.  The Debtor's Demand also demanded that the Trustee, on behalf of the Issuer, agree to settle the Derivative Contract and pay to Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors).  A copy of the Debtor's Demand is attached hereto as <u>Exhibit A</u>.

## III.    Request for Input and Direction and Indemnity

7.    The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012**,** and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee.   In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty.   In connection therewith, the Trustee references Section 6.01(f) of the Transaction Document which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law.    Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or

by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

      The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders. Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.  The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations and gives no legal or investment advice.  Certificateholders should seek their own legal advice concerning these matters.  The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contract, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Issuer and the performance of its duties under the Transaction Document.

      DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

## SCHEDULE A

| CLASS | CUSIP[1] |
|-------|----------|
| A-1 | 45254NPU5 |
| A-2 | 45254NPV3 |
| A-3W | 45254NPW1 |
| A-4 | 45254NQF7 |
| A-IO | 45254NPX9 |
| B | 45254NQE0 |
| M1 | 45254NPY7 |
| M2 | 45254NPZ4 |
| M3 | 45254NQA8 |
| M4 | 45254NQB6 |
| M5 | 45254NQC4 |
| M6 | 45254NQD2 |
| CERT | IM0505101 |

---

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

EXHIBIT A

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

Lori R. Fife
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re: Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements"). After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A. Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed. DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract. *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)). The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF. *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code. Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code. If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses. Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay. *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896
(Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay
provision constitutes civil contempt and may be addressed as such.").

   DBTC's willful violations of the automatic stay are particularly untenable in light of the
conduct of similarly situated indenture trustees.  As of the Commencement Date, LBSF was party to
numerous swap agreements with special purpose vehicles that issued residential mortgage-backed
securities.  No fewer than four separate institutions acting as indenture trustees in relation to such
securities have agreed to settle their respective swap agreements and have paid LBSF the full amount
due and owing under the agreements.  DBTC continues to take an opposite position from all other
similarly situated indenture trustees without any legal justification.

   Additionally, DBTC's posture, far from being purely protective of noteholders, is
harming noteholders.  Interest continues to accrue on the amounts owed to LBSF while DBTC holds the
amounts payable under the Swap Agreements.  Under the Master Agreement, LBSF is entitled to receive
interest at the Default Rate, which equals the LBSF's cost of funds plus 1%.  LBSF has determined that
the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%.
To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap
Agreements.  As accrual of the interest correspondingly will reduce the money available to the SPVs to
pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders.  To the extent the SPVs
do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against
DBTC directly.

   In connection with prior settlements of swap agreements between DBTC and LBSF,
DBTC incurred fees and expenses that were substantially higher than similarly situated trustees.  To the
extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to
DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not
reasonable or payable under the swap agreements.  While LBSF is willing to consider an appropriate
payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors
should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3


        In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the
Swap Agreements and pay to LBSF the amounts set forth on Exhibit A on or prior to October 28, 2011.
If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts
owed to it.


Yours truly,

Lori R. Fife


cc:  Kelli Rodriquez
     Melissa Wilman
     Abhishek Kalra
     Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.

Exhibit A-8

**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel:  714-247-6000
Fax:  714-247-6009

January 12, 2012

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST
TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  IF APPLICABLE, ALL
DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS
NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL
OWNERS IN A TIMELY MANNER.

**IMPORTANT NOTICE OF RECENT DEVELOPMENTS IN
BANKRUPTCY PROCEEDING OF
LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS
AND CERTAIN OTHER MATTERS**

To the Certificateholders of
FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8

_**(Classes and CUSIPs are listed on Schedule A attached hereto)**_

Re:    First Franklin Mortgage Loan Trust 2006-FF8

Ladies and Gentlemen:

Reference is made to that certain Pooling and Servicing Agreement, dated as of June 1, 2006 (the
"Transaction Document") among Financial Asset Securities Corp, as depositor (the "Depositor"),
National City Home Loan Services, Inc., as servicer (the "Servicer") and Deutsche Bank National Trust
Company, as trustee (the "Trustee") and supplemental interest trust trustee (the "Supplemental Interest
Trust Trustee") with respect to the First Franklin Mortgage Loan Trust 2006-FF8 (the "Trust").
Capitalized terms used in this notice and not defined in this notice shall have the meanings assigned to
such terms in the Transaction Document.

**I.    Factual Background**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), an affiliate of
Lehman Brothers Special Financing, Inc., the counterparty (the "Derivative Counterparty") under that
certain (x) 1992 ISDA Master Agreement with the Trustee with respect to the supplemental interest trust
(the "Supplemental Interest Trust") relating to the First Franklin Mortgage Loan Trust 2006-FF8, Asset
Backed Certificates, Series 2006-FF8 dated as of June 29, 2006 (together with any schedules or related
documents, the "Trustee Derivative Contract") and (y) 1992 ISDA Master Agreement with the
Supplemental Interest Trust Trustee with respect to the Supplemental Interest Trust relating to the First
Franklin Mortgage Loan Trust 2006-FF8, Asset Backed Certificates, Series 2006-FF8 dated as of June 29,
2006 (together with any schedules or related documents, the "SIT Derivative Contract"), filed a petition
under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern
District of New York (the "Bankruptcy Court").  LBHI, the Derivative Counterparty and other affiliates

are collectively referred to herein as the "Debtor." The Trustee Derivative Contract and the SIT Derivative Contract are together, the "Derivative Contracts."

2.      On October 3, 2008, the Derivative Counterparty filed a petition under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

3.      On September 1, 2011, the Bankruptcy Court entered an amended order approving the Disclosure Statement (the "Disclosure Statement") for Third Amended Joint Chapter 11 Plan of LBHI (the "Plan"). On December 6, 2011, Honorable James M. Peck of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York confirmed the Plan. Copies of the Plan and the related Disclosure Statement, as well as other filings made in the Bankruptcy Court, may be obtained at http://chapter11.epiqsystems.com.

4.      On September 18, 2009, each of the Trustee and Supplemental Interest Trust Trustee filed on behalf of the Trust proofs of claim with respect to certain claims related to the Trustee Derivative Contract and SIT Derivative Contract, respectively, against LBHI and the Derivative Counterparty (the "Trust Claims"). On September 9, 2011, the Debtor filed the Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) (the "Motion to Reclassify") pursuant to which the Debtor sought to reclassify the Trust Claims from secured claims to unsecured claims. The Debtor has agreed to an extension of the Trust's time to respond to the Motion to Reclassify until February 8, 2011.

## II.      Adversary Proceeding and Debtor's Demand

5.      On October 3, 2010, the Derivative Counterparty filed an action in the Bankruptcy Court against the Trust (the "Lehman Action"). A copy of the complaint may be found at www.pacer.gov or by contacting the Bankruptcy Court. In the Lehman Action, the Derivative Counterparty seeks, among other relief, a declaratory judgment that provisions in transaction documents that would modify payment priorities to subordinate certain termination payments to the Derivative Counterparty constitute unenforceable *ipso facto* clauses and that any action to enforce payment priorities that subordinate payments to the Derivative Counterparty as a result of a bankruptcy filing violates the automatic stay under the Bankruptcy Code.

6.      By letter dated October 6, 2011 through its counsel, the Derivative Counterparty has made demand (the "Debtor's Demand") for payment for amounts allegedly owed under the Derivative Contracts. Among other things, the Derivative Counterparty has asserted that (i) the Derivative Contracts have matured pursuant to its terms, (ii) a payment is owed to the Derivative Counterparty as a result thereof, (iii) if the Trust does not pay all amounts alleged to be due to the Derivative Counterparty, Derivative Counterparty will take appropriate action in the Bankruptcy Court and (iv) interest accrues on amounts alleged to be due to Derivative Counterparty at the rate of LIBOR plus 13.5%. The Debtor's Demand also demanded that the Trustee, on behalf of the Trust, agree to settle the Derivative Contracts and pay to Derivative Counterparty amounts enumerated in Debtor's Demand (which amount includes interest as calculated by the Debtors). A copy of the Debtor's Demand is attached hereto as Exhibit A.

## III.      Request for Input and Direction and Indemnity

7.      The Trustee asks that the Certificateholders contact the Trustee regarding the Debtor's Demand on or before February 10, 2012, and, if appropriate, requests direction (with the requisite indemnity) regarding any response the Certificateholders may formulate with the Trustee. In the absence of direction from the requisite Certificateholders, the Trustee, in consultation with counsel, may take action as it deems appropriate, including, without limitation, making payment to the Derivative Counterparty. In connection therewith, the Trustee references Section 8.01 of the Transaction Document

which provides that the Trustee need not expend or risk its own funds or otherwise incur financial liability if it has reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The Trustee reserves any and all rights, remedies and protections it may have under the Transaction Document, any related documents, or under applicable law. Certificateholders may contact Melissa Rossiter by e-mail at melissa.rossiter@db.com or by phone at 714-247-6342.  Certificateholders may also contact Trustee's counsel Amanda D. Darwin, Esq., at Nixon Peabody LLP, by e-mail at adarwin@nixonpeabody.com or by phone at (617) 345-1042.  This notice will also be made available on the Trustee's Investor Reporting Website at https://tss.sfs.db.com/investpublic/ under "Reports" for each Trust.

     The Trustee may conclude that a specific response to particular inquiries from individual Certificateholders is not consistent with equal dissemination of information to all Certificateholders. Please note that the Trustee does not by this Notice assume any obligation whatsoever to provide any future notice to the Certificateholders.  Certificateholders should not rely on the Trustee or this notice as its sole source of information.   The Trustee may in its sole discretion determine to inform Certificateholders as developments are brought to its attention.  The Trustee makes no recommendations and gives no legal or investment advice.  Certificateholders should seek their own legal advice concerning these matters.  The Trustee has incurred and expects to continue to incur fees and expenses in connection with the termination of the Derivative Contracts, and Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Trust and the performance of its duties under the Transaction Document.

     DEUTSCHE BANK NATIONAL TRUST COMPANY,
     as Trustee

## SCHEDULE A

| CLASS | CUSIP[1] |
|-------|----------|
| I-A-1 | 320278AR5 |
| II-A-1 | 320278AA2 |
| II-A-2 | 320278AB0 |
| II-A-3 | 320278AC8 |
| II-A-4 | 320278AD6 |
| M-1 | 320278AE4 |
| M-2 | 320278AF1 |
| M-3 | 320278AG9 |
| M-4 | 320278AH7 |
| M-5 | 320278AJ3 |
| M-6 | 320278AK0 |
| M-7 | 320278AL8 |
| M-8 | 320278AM6 |
| M-9 | 320278AN4 |
| M-10 | 320278AP9 |
| M-11 | 320278AQ7 |
| M-12 | 320278AS3 |
| C | N/A |
| P | N/A |
| R | N/A |
| R-X | N/A |

---

[1] The CUSIP numbers appearing herein have been included solely for the convenience of the Certificateholders. Deutsche Bank National Trust Company assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

## EXHIBIT A

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

SETTLEMENT DISCUSSIONS UNDER FRE 408
BY E-MAIL AND COURIER

Lori R. Fife
(212) 310-8318
Lori.Fife@weil.com

October 6, 2011

Richard Pedone, Esq. and
Amanda Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re:  Swap Agreements Between Lehman Brothers Special Financing Inc. ("LBSF") and special purpose
vehicles for which Deutsche Bank National Trust Company serves as indenture trustee

Dear Rick and Amanda:

LBSF and certain special purpose vehicles identified on Exhibit A hereto (the "SPVs")
for which Deutsche Bank Trust Company serves as indenture trustee ("DBTC") are party to swap
agreements (the "Swap Agreements").  After LBSF commenced its chapter 11 case on October 3, 2008
(the "Commencement Date"), each of the Swap Agreements either was terminated or matured pursuant
to its terms, in either case, with substantial payments owed to LBSF as set forth on Exhibit A.  Even
though LBSF contacted DBTC numerous times over the past year to settle the Swap Agreements and
collect the amounts owed thereunder, DBTC has refused to pay LBSF what it is owed.  DBTC's failure
to pay LBSF violates bankruptcy law in several respects.

As the Bankruptcy Court has previously made clear, a counterparty to an executory
contract with a debtor is obligated to continue to perform under the contract.  *Hearing Transcript
September 15, 2009*, at 110 (citing *McClean Industries, Inc. v. Medical Laboratory Automation, Inc.*, 96
B.R. 440, 449 (Bankr. S.D.N.Y. 1989) (such a contract is enforceable by a debtor against the
counterparty)).  The Swap Agreements were executory contracts as of the Commencement Date, and the
SPVs' failure to perform their obligations under the Swap Agreements violates the Bankruptcy Court's
order compelling a similarly situated counterparty to perform its obligations to LBSF.  *See id.*

Moreover, the amounts owed by the various SPVs to LBSF under the Swap Agreements
are property of LBSF's estate under section 541 of the Bankruptcy Code.  Failure to turnover property of
LBSF's estate constitutes a direct violation of the automatic stay under section 362 of the Bankruptcy
Code.  If the SPVs do not pay all amounts due to LBSF, LBSF will take appropriate action in the
Bankruptcy Court, including seeking costs and other expenses.  Pursuant to established case law, parties
may be held in contempt of court for violating the automatic stay.  *See Fidelity Mortgage Investors v.*

October 6, 2011
Page 2

*Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart* (*In re Colon*), 114 B.R. 890, 896 (Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such.").

DBTC's willful violations of the automatic stay are particularly untenable in light of the conduct of similarly situated indenture trustees.  As of the Commencement Date, LBSF was party to numerous swap agreements with special purpose vehicles that issued residential mortgage-backed securities.  No fewer than four separate institutions acting as indenture trustees in relation to such securities have agreed to settle their respective swap agreements and have paid LBSF the full amount due and owing under the agreements.  DBTC continues to take an opposite position from all other similarly situated indenture trustees without any legal justification.

Additionally, DBTC's posture, far from being purely protective of noteholders, is harming noteholders.  Interest continues to accrue on the amounts owed to LBSF while DBTC holds the amounts payable under the Swap Agreements.  Under the Master Agreement, LBSF is entitled to receive interest at the Default Rate, which equals the LBSF's cost of funds plus 1%.  LBSF has determined that the Default Rate, calculated in accordance with the terms of Master Agreement, is LIBOR plus 13.5%.  To date, more than $15,475,916.10 in interest has accrued on the amounts due under the Swap Agreements.  As accrual of the interest correspondingly will reduce the money available to the SPVs to pay the noteholders, DBTC is in breach of its fiduciary duty to all noteholders.  To the extent the SPVs do not have sufficient funds to pay the amounts due to LBSF, LBSF may seek to take action against DBTC directly.

In connection with prior settlements of swap agreements between DBTC and LBSF, DBTC incurred fees and expenses that were substantially higher than similarly situated trustees.  To the extent a portion of DBTC's fees and expenses in connection with the Swap Agreements relate to DBTC's attempts to avoid paying LBSF amounts that LBSF is rightly owed, such amounts are not reasonable or payable under the swap agreements.  While LBSF is willing to consider an appropriate payment to DBTC to compensate reasonable fees and expenses, LBSF and its estate and other creditors should not bear the cost of DBTC's efforts to avoid payment amounts owed to LBSF.

October 6, 2011
Page 3

        In sum, LBSF demands that DBTC, on behalf of the SPVs, agree to settle each of the
Swap Agreements and pay to LBSF the amounts set forth on <u>Exhibit A</u> on or prior to October 28, 2011.
If DBTC fails to comply, LBSF will be forced to consider alternative means of recovering the amounts
owed to it.


Yours truly,

Lori R. Fife


cc:  Kelli Rodriquez
     Melissa Wilman
     Abhishek Kalra
     Locke McMurray, Esq.

October 6, 2011
Page 4

Exhibit A

| Entity | Status | Amount Owed to LBSF Under Swap Agreement (Excluding Interest) | Default Interest Accrued Through October 3, 2011 | Total |
|---|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-04, Collateralized Asset-Backed Bonds, Series 2005-4 | Matured | $9,669,754.16 | $3,438,229.60 | $13,107,983.76 |
| IMPAC CMB TRUST SERIES 2005-05, Collateralized Asset-Backed Bonds, Series 2005-5 | Matured | $8,491,049.25 | $2,956,350.86 | $11,447,400.11 |
| IMPAC CMB TRUST SERIES 2005-08, Collateralized Asset-Backed Bonds, Series 2005-8 | Matured | $17,191,179.94 | $5,631,593.55 | $22,822,773.49 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8, Asset-Backed Certificates, Series 2006-FF8 | Matured | $4,279,826.42[1] | $1,641,453.93 | $5,921,280.35 |
| IMPAC CMB TRUST SERIES 2004-10, Collateralized Asset-Backed Bonds, Series 2004-10 | Terminated | $3,539,037.31 | $1,415,683.66 | $4,954,720.97 |
| IMPAC CMB TRUST SERIES 2003-11, Collateralized Asset-Backed Bonds, Series 2003-11 | Terminated | $26,896.56 | $14,194.07 | $41,090.63 |
| IMPAC CMB TRUST SERIES 2004-5, Collateralized Asset-Backed Bonds, Series 2004-5 | Terminated | $48,933.64 | $25,823.66 | $74,757.30 |
| IMPAC CMB TRUST SERIES 2004-8, Collateralized Asset-Backed Bonds, Series 2004-8 | Terminated | $668,122.00 | $352,586.77 | $1,020,708.77 |

---

[1] Includes $525,465.82 in collateral posted by LBSF prior to the Commencement Date.