Martin J. Bienenstock
Irena M. Goldstein
Jeffrey Chubak
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for Credit Protection Trusts 207 and 283*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No. 08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------- x

| | |
|---|---|
| **CREDIT PROTECTION TRUST 207 AND** | : |
| **CREDIT PROTECTION TRUST 283,** | : |
| | : |
| **Movants,** | : |
| | : |
| **v.** | : |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC. AND** | : |
| **LEHMAN BROTHERS SPECIAL FINANCING INC.,** | : |
| | : |
| **Respondents.** | : |

------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**OF CREDIT PROTECTION TRUSTS 207 AND 283 FOR ORDER**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(1) AND**
**(4), BANKRUPTCY RULE 9024, AND BANKRUPTCY CODE SECTION**
**105(a) GRANTING RELIEF FROM CONFIRMATION ORDER**

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 5

ARGUMENT ......................................................................................................... 10

I.    The Moving Trusts are Entitled to Relief from the Confirmation Order under Civil Rule 60(b)(4)...............................................................................................10

    A.    The Debtors' Failure to Serve the Assumption Notices on the Moving Trusts' Attorneys Deprived Such Trusts of Due Process and Violated Bankruptcy Rule 2002(g)(1) ...............................................................11

    B.    The Debtors' *De Facto* Objection to the Moving Trusts' Claims Deprived Such Trusts of Due Process ..................................................................12

    C.    If the Moving Trusts are Not Granted Civil Rule 60(b) Relief, They are Entitled to Relief under Bankruptcy Rule 9011....................................18

II.   The Moving Trusts are Entitled to Relief from the Confirmation Order under Civil Rule 60(b)(1)...............................................................................................20

    A.    The Reason for the Moving Trusts' Failure to Object to the Assumption Notices ..........................................................................................21

    B.    The Length of Delay is *De Minimis*...................................................22

    C.    The Moving Trusts are Acting in Good Faith.......................................22

    D.    A Return to the Status Quo Will Not Prejudice the Debtors .................23

CONCLUSION...................................................................................................... 24

# Table of Authorities

**Page(s)**

CASES

*Alcatel Contracting (NA), Inc. v. Slaugher Co. & Assoc.*,
251 B.R. 437 (N.D. Ga. 1999) ..................................................................................12

*Brawders v. County of Ventura (In re Brawders)*,
503 F.3d 856 (9th Cir. 2007) ...................................................................................15

*Collezione Europa USA, Inc. v. Dugan (In re Rhodes, Inc.)*,
No. 04-78434, 2007 WL 7143074 (Bankr. N.D. Ga. Dec. 18, 2007)......................21

*DirectBuy, Inc. v. Giacchii*,
No. 09-cv-110, 2011 WL 3749083 (N.D. Ind. Aug. 25, 2011) ...............................15

*Eberrhardt v. Integrated Design & Constr., Inc.*,
167 F.3d 861 (4th Cir. 1999) ...................................................................................10

*Gentry v. Siegel*,
668 F.3d 83 (4th Cir. 2012) .....................................................................................15

*Grace v. Bank Leumi Trust Co. of New York*,
443 F.3d 180 (2d Cir. 2006).....................................................................................10

*In re Ames Dep't Stores, Inc.*,
No. 93-cv-4014, 1995 WL 311764 (S.D.N.Y. May 18, 1995) ................................16

*In re Benrus Watch Co., Inc.*,
13 B.R. 331 (Bankr. S.D.N.Y. 1981) .......................................................................16

*In re Egan*,
No. 00-41030, 2002 WL 33939672 (Bankr. D. Idaho Nov. 8, 2002)......................11

*In re Garden Ridge Corp.*,
348 B.R. 642 (Bankr. D. Del. 2006) ........................................................................21

*In re Howard L. Margulis*,
323 B.R. 130 (Bankr. S.D.N.Y. 2005)......................................................................16

*In re Kleibrink*,
621 F.3d 370 (5th Cir. 2010) ...................................................................................20

*In re Lehman Bros. Holdings Inc.*,
433 B.R. 113 (Bankr. S.D.N.Y. 2010), *aff'd, CVI GVF (Lux) Master S.A.R.L. v.
Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011) .................................20

*In re Lomas Fin. Corp.*,
   212 B.R. 46 (Bankr. D. Del. 1997) ...................................................................................11

*In re Millspaugh*,
   302 B.R. 90 (Bankr. D. Id. 2003) .....................................................................................15

*In re Texscan Corp.*,
   107 B.R. 227 (B.A.P. 9th Cir. 1989), *aff'd*, 976 F.2d 1269 (9th Cir. 1992) ..........................16

*In re Woods*,
   406 B.R. 293 (Bankr. N.D. Ohio 2009) .............................................................................13

*Jacobo v. BAC Home Loans Serv., LP*,
   No. 11-cv-5134, 2012 WL 2369360 (D. N.J. June 21, 2012)..................................................20

*Litton Loan Serv. v. Garvida (In re Garvida)*,
   347 B.R. 697 (B.A.P. 9th Cir. 2006)..................................................................................15

*Moody v. Amoco Oil Co.*,
   734 F.2d 1200 (7th Cir. 1994) ........................................................................................16

*Mullane v. Cent. Hanover Bank & Trust Co*,
   339 U.S. 306 (1950)...................................................................................................3, 10

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)......................................................................................................20

*United Student Aid Funds, Inc. v. Espinosa*,
   130 S. Ct. 1367 (2010)........................................................................................10, 18, 19

*Valera v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*,,
   293 B.R. 489 (B.A.P. 9th Cir. 2003)............................................................................14, 18


**STATUTES**

11 U.S.C. § 105(a) .............................................................................................................1

11 U.S.C. § 365...........................................................................................................5, 16

11 U.S.C. § 502...........................................................................................................5, 13

28 U.S.C. § 157(b)(2) ........................................................................................................1

## RULES

Fed. R. Bankr. P. 2002(g)(1) ................................................................................................ 11

Fed. R. Bankr. P. 3007 ...................................................................................... 5, 13, 14, 15, 17

Fed. R. Bankr. P. 7001(6) .................................................................................................. 19

Fed. R. Bankr. P. 9006(b) .................................................................................................. 20

Fed. R. Bankr. P. 9011 ................................................................................................ 18, 19, 20

Fed. R. Bankr. P. 9024 .................................................................................................. 1, 10, 20

Fed. R. Civ. P. 60 .................................................................................................... 10, 18, 19, 20, 21

Credit Protection Trusts 207 and 283 (the "Moving Trusts") submit this memorandum of law in support of their motion (the "Motion") for an order, substantially in the form attached hereto as Exhibit A, pursuant to Rule 60(b)(1) and (4) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), granting the Moving Trusts relief from the order, entered December 6, 2011 [Docket No. 23023] (the "Confirmation Order"), confirming the modified third amended joint chapter 11 plan (the "Plan") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (together with LBHI, the "Debtors").

## PRELIMINARY STATEMENT

Whether by inadvertent mistake or sharp practice, the Debtors failed to serve the Moving Trusts' attorneys with notices alerting the Moving Trusts that their claims in excess of $44 million would be reduced to $0 pursuant to the Confirmation Order, pursuant to the ruse of approving assumption of the Moving Trusts' Swap Agreements (as defined below), which had been terminated prepetition, as if they were executory contracts. Accordingly, the Moving Trusts should be granted relief from the Confirmation Order under Civil Rule 60(b)(4), made applicable under Bankruptcy Rule 9024, to reinstate their claims. The Moving Trusts did not receive the due process required under the Fifth Amendment of the United States Constitution in connection with the Debtors' *de facto* objection to their claims. Additionally, under Civil Rule 60(b)(1) the Moving Trusts' failure to respond to notices mailed by the Debtors to the Moving Trusts, but not to their attorneys, was due to their excusable neglect.

*The facts are straightforward*: The Moving Trusts timely filed proofs of claims in an aggregate amount of more than $44 million for damages owed under certain Swap Agreements between each Moving Trust and Debtor Lehman Brothers Special Financing Inc. ("LBSF"),

which Swap Agreements were guaranteed by LBHI and terminated by the Moving Trusts as a result of payment defaults prior to the commencement of LBSF's bankruptcy case. *See* claim nos. 6948, 6949, and 27982 by Credit Protection Trust 283 against LBSF and LBHI for $43,830,089.42 and claim nos. 6947, 6953, and 27984 by Credit Protection Trust 207 against LBSF and LBHI for $492,555.22 (together, the "<u>Moving Trusts' Claims</u>"). The Moving Trusts' Claims clearly set forth that any notices with respect to such claims must be served on both the Moving Trusts and their attorneys. The Debtors were well aware of the Moving Trusts' Claims and those asserted by Creditor Protection Trusts 48, 233, and 265 (the "<u>Settling Trusts</u>," and together with the Moving Trusts, the "<u>Trusts</u>"), as well as the fact that the Moving Trusts were represented by attorneys, as evidenced by the fact that the Debtors had (i) previously served the Trusts' attorneys with motions seeking relief relating to the Trusts and notices relating to confirmation of the Plan; and (ii) engaged in multiple discussions with the Trusts and their attorneys during the pendency of the cases. *See* Declaration of Jeffrey Chubak in support of the Motion, filed contemporaneously herewith (the "<u>Chubak Declaration</u>"), Exhibits A, B, and C (excerpts from affidavits of service filed in the case); Declaration of Jonathan P. Meyers in support of the Motion, filed contemporaneously herewith (the "<u>Meyers Declaration</u>") at ¶¶7-8.

Financial Security Assurance Inc. (n/k/a Assured Guaranty Municipal Corp.) ("<u>Assured</u>") had issued financial guaranty insurance policies guaranteeing certain of the Trusts' obligations under each of the Swap Agreements. The same attorneys on behalf of Assured, the Trusts, and the Debtors had participated in the negotiations concerning claims of the Trusts (the "<u>Trusts' Claims</u>").

Notwithstanding the foregoing, on October 27, 2011, the Debtors mailed to the Trusts, but not to their attorneys, notices identifying the terminated Swap Agreements as executory

contracts to be assumed under the Plan with $0 cure amounts (the "Assumption Notices"), in the face of the Moving Trusts' more than $44 million of filed claims.  The Affidavit of Service relating to the Assumption Notices, an excerpt of which is attached to the Chubak Declaration as Exhibit D, lists the Trusts as recipients of the Assumption Notices, but notably, not their attorneys.

*The law is straightforward*: "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Cent. Hanover Bank & Trust Co*, 339 U.S. 306, 315 (1950).  In this case, the Debtors did not even make the gesture.   The Assumption Notices, given the facts and circumstances of the parties' prior course of dealing, among other reasons, did not give the Trusts notice sufficient to allow the Trusts (including the Moving Trusts) to understand the Debtors were objecting to the Trusts' Claims.  Indeed, the Trusts had no reason to believe requests for relief would not be sent to their attorneys, particularly given the Debtors' prior service of important papers on the Trusts' attorneys.  Put differently, if the tables were turned and the Trusts had sent a request for relief to LBSF's general offices, but not to its attorneys, it is hard to imagine the Court would not grant relief to the Debtors.  Indeed, as a practical matter, the Court would not grant the creditor relief in the first place if the Debtors' attorneys did not appear in Court in opposition to the relief.  Here, the Court granted the Debtors the relief they requested without the Moving Trusts' attorneys appearing in opposition because the Debtors did not advise the Court at the confirmation hearing that the Confirmation Order would approve the assumption of contracts terminated prepetition, fix the cure amounts at $0, and thereby eliminate the due process inherent in the claims objections process required to dispute the Moving Trusts' Claims in excess of $44 million.  The Moving Trusts are entitled to at least the same relief the Debtors would obtain.

One explanation for the Debtors' mailing of the Assumption Notices (versus commencing claim objection proceedings or an adversary proceeding) is that it was never the Debtors' intent to expunge the Trusts' Claims (indeed, we would like to believe the Debtors made an inadvertent error rather than engage in sharp practice, but, on request, the Debtors refused to correct the error). Instead, the Debtors may have sought to assume the Swap Agreements for protective reasons, unrelated to the amounts owed under the Swap Agreements (even though both Swap Agreements were terminated prepetition and the scheduled termination date of Credit Protection Trust 207's Swap Agreement occurred in June 2010). The Debtors' intent (or lack thereof) can be inferred from the fact that the Debtors' claims register still lists the Moving Trusts' Claims in their face amounts.

Moreover, after the Debtors mailed Assumption Notices to the Settling Trusts, the Debtors contacted Assured in an effort to resolve the Settling Trusts' claims (the "Settling Trusts' Claims") but did not mention that the Debtors had sought to assume the Trusts' Swap Agreements (despite Assured having inquired concerning the proposed treatment of the Moving Trusts' Claims). *See* Meyers Declaration at ¶10. On December 15, 2011, after the Debtors mailed the Assumption Notices but before Assured realized it had received the same, the Debtors, the Settling Trusts, and Assured entered into Termination Agreements pursuant to which █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ all of which would have been unnecessary if the Assumption Notices mailed to the Settling Trusts had the effect of expunging the Settling Trusts' Claims.

Alternatively, if it was the Debtors' intent to expunge the Moving Trusts' Claims through the mailing of the Assumption Notices, then the Debtors deliberately chose not to serve the

4

Moving Trusts' attorneys as part of an end-run around the claims objection due process requirements by mailing boilerplate Assumption Notices to the Trusts, in violation of section 502 of the Bankruptcy Code and Bankruptcy Rules 2002(g)(1) and 3007. Either case leads to the same result: the Moving Trusts were denied due process, elemental fairness, and courtesy, and are entitled to their day in Court to prosecute their claims.[1]

In that regard, the Moving Trusts are not requesting in their Motion that this Court allow the Moving Trusts' Claims (although they are valid and enforceable claims), but rather, only that the status quo be re-established and that the Debtors be required to object to or allow the Moving Trusts' Claims in good faith.

If the Court determines the Moving Trusts' Swap Agreements should be considered executory and assumed, notwithstanding their prepetition termination, the Moving Trusts request that the Debtors be directed to make all unpaid fixed payments due and owing under their Swap Agreements which accrued to date, *i.e.*, $507,638.89 for Credit Protection Trust 207's Swap Agreement and $30.4 million for Credit Protection Trust 283's Swap Agreement. Pursuant to section 365(b) of the Bankruptcy Code, this amount – not $0 – would have to be paid because contracts are assumed *cum onere*, with all their benefits and burdens.

## BACKGROUND

Each Trust was party to an ISDA Master Agreement with LBSF (each, as amended and supplemented, a "Swap Agreement"). LBHI guaranteed LBSF's payment obligations under each Swap Agreement. Assured issued financial guaranty insurance policies guaranteeing certain of the Trusts' payment obligations under the Swap Agreements.

---

[1] Given the sophistication of Debtors' attorneys and such attorneys' statements in previous hearings that it was not trying to pull a "gotcha" on any creditor, it is more likely that the Debtors sought to assume the Swap Agreements for reasons other than objecting to the Trusts' Claims and that the Debtors fully intended to give the Trusts their day in Court. Expunging the Moving Trusts' Claims for failure to respond to the Assumption Notices would grant the Debtors a windfall, a clearly inequitable result.

Pursuant to Credit Protection Trust 283's Swap Agreement, LBSF was required to make quarterly fixed payments to Credit Protection Trust 283 of approximately $1.84 million until the Swap Agreement's scheduled termination date of March 20, 2015. *See* Meyers Declaration, Exhibit B, Confirmation and Standard Terms Supplement. Pursuant to Credit Protection Trust 207's Swap Agreement, LBSF was required to make quarterly fixed payments to Credit Protection Trust 207 of approximately $64,000 until the Swap Agreement's scheduled termination date of June 20, 2010. *See* Meyers Declaration, Exhibit A, Transaction.[2] The Settling Trusts' Swap Agreements likewise required LBSF to make fixed payments until the applicable Swap Agreements were terminated.

On September 15, 2008 and October 3, 2008, respectively, LBHI and LBSF commenced voluntary bankruptcy cases. On September 29, 2008 – prior to the commencement of LBSF's bankruptcy case – the Moving Trusts terminated their Swap Agreements as a result of LBSF's failure to make fixed payments due to such Trusts on September 22, 2008 under their respective Swap Agreements. Meyers Declaration at ¶3. Additionally, on October 28, 2008, Credit Protection Trust 48 terminated its Swap Agreement and on December 5, 2008 Credit Protection Trusts 233 and 265 terminated their Swap Agreements.

In November 2008, Assured discussed the possibility of reinstating certain of the Swap Agreements with the Debtors' estates. Meyers Declaration at ¶4. The Debtors advised Assured that the payment defaults were unintentional and that the Debtors were considering reinstating certain of the Swap Agreements by paying the defaulted amounts in order to assign the Swap

---

[2] The Moving Trusts' Swap Agreements also require that such Trusts make floating rate payments to LBSF tied to the performance of certain reference obligations. However, even assuming that the Moving Trusts' Swap Agreements had not been terminated, no floating rate payments would have become due during the term of Credit Protection Trust 207's Swap Agreement and no payments would have become due or would be expected to come due under Credit Protection Trust 283's Swap Agreement.

Agreements to a creditworthy entity.  Meyers Declaration at ¶4.  On December 15, 2008,
Assured advised the Debtors it was willing to reinstate Credit Protection Trust 283's Swap
Agreement.  The Debtors, in turn, advised Assured that they had "formed a view as to what
trades [the Debtors] would like to keep alive" and would follow up to discuss.  However,
Assured never received a response from the Debtors.  Meyers Declaration at ¶5.

Thereafter, each Trust filed proofs of claims against LBSF and LBHI, which claims were
later amended to comply with the bar date order entered on July 2, 2009 [Docket No. 4271], and
amended further to reflect the receipt of a postpetition payment under one of the Settling Trusts'
Swap Agreements and the guarantee made by LBHI pursuant to the Unanimous Written Consent
of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005.  *See* Meyers
Declaration at ¶6.  Each of the Trusts' Claims provided that any notices with respect to the
claims should be addressed to Bruce E. Stern or James Michener of Assured *and* to the Trusts'
then attorneys, Dewey & LeBoeuf LLP.  *See* final paragraph of Trusts' Claims and Meyers
Declaration at ¶6.

In October 2009, the Debtors, through their attorneys, notified the Trusts, by both written
and oral communications, that the Debtors believed the Settling Trusts had not properly
terminated their Swap Agreements and that they disputed the amounts sought under the Moving
Trusts' Claims.  Meyers Declaration at ¶7.  At no time did the Debtors contend that the Moving
Trusts' Swap Agreements (as opposed to the Settling Trusts' Swap Agreements)  were not
properly terminated or contradict the Debtors' earlier statements that there had been prepetition
payment defaults, however unintentional, notwithstanding the Debtors' dispute over Assured's
calculation of the damages owed under the Moving Trusts' Swap Agreements.  Meyers
Declaration at ¶7.

In the months that followed, the Debtors, the Trusts, and Assured were in regular communication in an effort to resolve the Trusts' Claims. In April 2010, the Debtors, the Trusts, Assured, and their respective attorneys held a conference call regarding the Trusts' Claims during which no agreement was reached. Thereafter, Assured made a number of calls to Legacy Asset Management Company (the entity formed to wind-down the Debtors' estates), to find out the status of the Moving Trusts' Claims and was advised that such claims were still being analyzed by the Debtors' attorneys. Meyers Declaration at ¶8. Based upon the written and oral communications which took place between the parties, it had been the understanding and expectation of the Moving Trusts and Assured that unless agreement was reached with the Debtors with respect to the Moving Trusts' Claims, the Debtors would file an objection to such claims or a complaint seeking an affirmative recovery from the Moving Trusts, whereupon the parties would participate in Court-ordered dispute resolution. Meyers Declaration at ¶8.

On September 1, 2011, the Debtors filed their Plan, which provides in Section 11.1 thereof that each Debtor's executory contracts shall be deemed rejected, "except for any executory contract . . . that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor." On October 25, 2011, the Debtors filed their Plan supplement [Docket No. 21254] (the "Plan Supplement"), which included a 142-page schedule of executory derivative contracts to be assumed under the Plan which schedule includes the Swap Agreements. On October 27, 2011, the Debtors mailed to the Trusts (c/o Assured) but not to their attorneys, the Assumption Notices.

On November 8, 2011, after the Debtors mailed the Assumption Notices to the Trusts, the Debtors contacted Assured in an effort to consensually resolve the Settling Trusts' Claims. Although the parties reached a consensual resolution of those claims, at no point during the

negotiations did the Debtors disclose that they were seeking to assume the Moving and Settling Trusts' Swap Agreements and, in that regard, had previously mailed Assumption Notices. Moreover, neither the Trusts nor Assured were aware of the Debtors' intent at that time to assume such Swap Agreements and fix the cure amounts at $0, thereby circuitously objecting to the Moving Trusts' Claims. Meyers Declaration at ¶10.

On December 15, 2011, the Settling Trusts, Assured, and the Debtors entered into Termination Agreements ███████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████. Meyers Declaration at ¶11.

While the Moving Trusts and Assured were waiting for the objections to the Moving Trusts' Claims, the Assumption Notices were subsequently discovered by Assured, well after the November 10, 2011 deadline set forth in the Assumption Notices for objecting to the Debtors' proposed assumption of Moving Trusts' Swap Agreements or the proposed cure amount of $0. Meyers Declaration at ¶12. In addition, by that time, the Debtors' Plan had been confirmed by the Court and had become effective.

There cannot be alleged to be any prejudice to the Debtors' estates given the fact that the Moving Trusts' Claims remain on the Debtors' claims register, the Debtors should have reserved for their allowance under the Plan, and further, numerous derivative contract counterparties have objected to the Debtors' proposed assumption of their contracts and/or the Debtors' proposed cure amount with respect to such contracts and such objections remain, for the most part, unresolved.

9

<u>**ARGUMENT**</u>

I.    <u>**The Moving Trusts are Entitled to Relief from the Confirmation Order under Civil Rule 60(b)(4)**</u>

Bankruptcy Rule 9024 provides that subject to certain inapplicable exceptions, Civil Rule 60 applies in bankruptcy cases. Civil Rule 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons . . . (4) the judgment is void."

A judgment is "void" under Civil Rule 60(b)(4) if "it is premised . . . on a violation of due process that deprives a party of notice and an opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1376-77 (2010) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938)). *See also Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180, 193 (2d Cir. 2006) ("A judgment is void under Rule 60(b)(4) . . . if the court that rendered it . . . acted in a manner inconsistent with due process of law"); *Eberrhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999) (same).

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. To ensure that creditors in bankruptcy cases receive due process, the Bankruptcy Code and Rules proscribe specific procedures which must be followed in connection with objecting to claims or serving notices upon parties in interest, which procedures were ignored when the Debtors used the assumption procedure without notice to the Moving Trusts' attorneys, in lieu of following the due process requirements of a proper claim objection.

**A.    The Debtors' Failure to Serve the Assumption Notices on the Moving Trusts' Attorneys Deprived Such Trusts of Due Process and Violated Bankruptcy Rule 2002(g)(1)**

Bankruptcy Rule 2002(g)(1) provides that notices to a creditor "shall be addressed as such entity . . . has directed in its last request filed in the particular case.  For the purposes of this subdivision . . . a proof of claim filed by a creditor . . . that designates a mailing address constitutes a filed request to mail notices to that address."  Given that the Moving Trusts' Claims state that responses to such claims should be sent to their attorneys and included such attorneys' address and that the Debtors communicated with the Moving Trusts, by and through their respective attorneys, concerning their claims, the Debtors were aware that the Moving Trusts were represented by attorneys in connection with their claims, as evidenced by the fact that the Debtors had previously served the Moving Trusts' attorneys.  Despite this, the Debtors failed to copy the Moving Trusts' attorneys when mailing the Assumption Notices.  Such failure by the Debtors to copy the Moving Trusts' attorneys violated Bankruptcy Rule 2002(g)(1).

Numerous courts have held that a debtor's failure to serve a pleading or notice on a creditor's attorneys after such attorneys notified the debtor that it represented such creditor constitutes a denial of such creditor's due process rights.  In *In re Lomas Fin. Corp.*, 212 B.R. 46, 50 (Bankr. D. Del. 1997), a debtor failed to serve a claim objection on a creditor's known attorneys and entered an order disallowing the creditor's claim.  When the creditor moved for reconsideration of the order on the grounds that its attorneys did not receive adequate notice, the *Lomas* court held that "**given the circumstances involved here, I believe the appropriate notice [required by due process] is that which also goes to counsel who has specifically requested it**."  *Id*. at 54 (emphasis added).  *See also In re Egan*, No. 00-41030, 2002 WL 33939672, at *4 (Bankr. D. Idaho Nov. 8, 2002) ("there seems to be no reason the Court . . . should not . . . consider the failure to serve counsel as a relevant factor in determining whether

11

cause exists to vacate [an] Order Disallowing [a] Claim under Rule 60(b)"); *Alcatel Contracting (NA), Inc. v. Slaugher Co. & Assoc.*, 251 B.R. 437, 440 (N.D. Ga. 1999) (treating a late-filed proof of claim as timely-filed on account of the clerk's failure to mail notice of the bar date to the creditor's attorney).

Given the Moving Trusts' prepetition termination of their Swap Agreements, the prior course of dealing between the parties, including the Debtors previously serving the Moving Trusts' attorneys with copies of papers affecting the Moving Trusts, including notices relating to confirmation of the Plan, and the Moving Trusts' expectation based on communications with the Debtors that the Debtors would file an actual objection to the Moving Trusts' Claims or a complaint seeking an affirmative recovery from the Moving Trusts to the extent they sought a judicial determination with respect to such claims, as opposed to notices proposing to assume the Swap Agreements, the Debtors' failure to serve the Moving Trusts' attorneys did not satisfy due process requirements. Indeed, the Debtors clearly did not view the Trusts' lack of response to the Assumption Notices as resolving the Trusts' Claims because after such notices were mailed, the Debtors sought to enter into Termination Agreements with the Settling Trusts to resolve the Settling Trusts' Claims.

### B.    The Debtors' *De Facto* Objection to the Moving Trusts' Claims Deprived Such Trusts of Due Process

The inclusion of the Swap Agreements in the Plan Supplement and mailing of the Assumption Notices constitute *de facto* objections to the Moving Trusts' Claims. Absent the relief sought by the Moving Trusts, such Trusts' Swap Agreements are deemed assumed with a cure amount of $0 even though the Swap Agreements were terminated prepetition and the Moving Trusts filed timely claims against the Debtors for over $44 million and the Debtors have not filed an objection to such claims (although the Debtors have informed Assured that they

dispute the Moving Trusts' Claims).  The Debtors' *de facto* objection to the Moving Trusts' Claims, however, does not comport with section 502 of the Bankruptcy Code or Bankruptcy Rule 3007, and failed to provide the Trusts with due process.

Section 502(a) of the Bankruptcy Code provides that a proof of claim "is deemed allowed, unless a party in interest . . . objects."  Section 502(b) of the Bankruptcy Code provides that if a claim objection is filed, "the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that" the claim is deemed invalid by order of the court under sections 502(b)(1)-(9) of the Bankruptcy Code.  To the extent the Debtors' inclusion of the Swap Agreements in the Plan Supplement and mailing of the Assumption Notices constitutes an objection to the Moving Trusts' Claims, such objection did not request that this Court disallow such claims for a reason set forth in sections 502(b)(1)-(9).  Thus, no amount of the Moving Trusts' Claims could have been deemed invalid for such a reason.  *See*, *e.g.*, *In re Woods*, 406 B.R. 293, 297 (Bankr. N.D. Ohio 2009) (treatment of a claim under a plan is not a recognized basis for objecting to a claim under section 502(b) of the Bankruptcy Code).

In addition, Bankruptcy Rule 3007(a) provides that claim objections must be in writing, filed with the Court, and mailed to the claimant together with notice of the hearing at least 30 days before the hearing.  Bankruptcy Rule 3007(c)-(d) further provides that objections to multiple claims may be joined in an omnibus objection only if all of the claims were filed by the same entity or are based solely on grounds that the claims should be disallowed for reasons set forth in Bankruptcy Rule 3007(d)(1)-(8).  Bankruptcy Code section 3007(e) requires that omnibus claim objections provide cross-references to claim numbers, state the grounds for the objection, and contain objections to no more than 100 claims.  The Debtors' inclusion of the

Swap Agreements in the Plan Supplement and mailing of the Assumption Notices to the Moving

Trusts (but not their attorneys) does not satisfy the requirements of Bankruptcy Rule 3007.

Exhibit 2, Part B of the Plan Supplement, which identifies derivative contracts the Debtors

sought to assume, is 142 pages long and identifies many hundreds of contracts.  Further, neither

the Plan Supplement nor the Assumption Notices provided cross-references to the Trusts' Claims

or identify a reason why such claims should be disallowed, let alone one specified in Bankruptcy

Rule 3007(d)(1)-(8).  Further, the Assumption Notices were dated October 27, 2011, and stated

that recipients had until November 10, 2011 to file an objection to the proposed assumption,

giving creditors two weeks, not 30 days, to object.

Courts have repeatedly warned that constitutional due process in connection with claim

objections requires compliance with applicable Bankruptcy Code and Rule provisions and that

parties should not be permitted to avoid such provisions through objections filed in the plan

confirmation process.  In *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, the

Ninth Circuit Bankruptcy Appellate Panel held that:

> [U]tilizing a plan confirmation proceeding as a method of
> objecting to a claim presents troubling policy issues in the face of
> rules of procedure that appear to require formal objections to
> claims.  The construct of the statute and rules that is held out to the
> public is that claims are deemed allowed unless there is an
> objection in accordance with rules that prescribe a precise
> procedure for objecting.  **Neither the statute nor the rules say,
> "oh, by the way, we can also sandbag you by sneaking an
> objection into a reorganization plan and hoping you do not
> realize that we can use this device to circumvent the claim
> objection procedure mandated by the rules."**  That is not the
> law, and if it were the law, it would be a material disservice to
> public confidence in the integrity of the bankruptcy system.
>
> While we do not hold that a plan can never be used to object to a
> claim of a creditor who does not actually consent to such an
> objection, by holding that the essence of Rule 3007 must be
> complied with, **we are holding that considerations of due
> process mandate great caution and require that the creditor**

14

> **receive specific notice (not buried in a disclosure statement or
> plan provision) of at least the quality of specificity, and be
> afforded the same opportunity to litigate one-on-one, as would
> be provided with a straightforward claim objection under Rule
> 3007.** In many chapter 11 cases, the only safe way to proceed will
> be by way of the separate claim objections that the rules of
> procedure and the Bankruptcy Code contemplate.

293 B.R. 489, 497 (B.A.P. 9th Cir. 2003) (emphasis added). *See also Brawders v. County of
Ventura (In re Brawders)*, 503 F.3d 856, 868 (9th Cir. 2007) (denying claim objection in a plan
on the grounds that the creditor "did not receive the clear notice and procedural protections that
due process requires"); *Litton Loan Serv. v. Garvida (In re Garvida)*, 347 B.R. 697, 704 (B.A.P.
9th Cir. 2006) ("Considerations of due process mandate caution when ersatz procedure is used
and require that the creditor receive specific notice and be afforded the same opportunity to
litigate one-on-one, as would occur in a straightforward claim objection under Rule 3007"); *In re
Millspaugh*, 302 B.R. 90, 100-101 (Bankr. D. Id. 2003) (same).

The Debtors' burying of the Swap Agreements in the Plan Supplement and incomplete
service of the Assumption Notices is an unfair litigation tactic, particularly given the Moving
Trusts prepetition termination of their Swap Agreements and the prior course of dealing between
the parties described above (including previously serving the Moving Trusts' attorneys with
motions and notices affecting the Moving Trusts). *See*, *e.g.*, *Gentry v. Siegel*, 668 F.3d 83, 92
(4th Cir. 2012) ("as a court of equity, the bankruptcy court has authority to disallow objections
. . . if they are employed in attempts to engage in some kind of 'gotcha' behavior designed to
gain an unfair advantage"); *DirectBuy, Inc. v. Giacchii*, No. 09-cv-110, 2011 WL 3749083, at *2
(N.D. Ind. Aug. 25, 2011) ("the Giacchis have been attempting with reasonable vigor to pursue
their own claims . . . such that a default here would be an undue procedural 'gotcha' and not in
the interests of justice"). The Moving Trusts' understanding of the status of their claims is
consistent with the fact that the Debtors repeatedly contacted the Settling Trusts regarding the

Settling Trusts' Claims, notwithstanding having previously mailed Assumption Notices to the Settling Trusts.

In addition, the Debtors have no reasonable basis for treating the Moving Trusts' Swap Agreements as executory contracts eligible to be assumed or rejected under section 365 of the Bankruptcy Code.   As noted above, both Swap Agreements were terminated prior to the commencement of the Debtor counterparty's bankruptcy on October 3, 2008, and thus, the Debtors had no legal or equitable interest in such Swap Agreements as of the commencement of LBSF's bankruptcy case.  *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212 (7th Cir. 1994) ("If a contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume"); *In re Howard L. Margulis*, 323 B.R. 130, 135 (Bankr. S.D.N.Y. 2005) (quoting *Hertzberg v. Loyal Am. Life Ins. Co. (In re B&K Hydraulic Co.)*, 106 B.R. 131, 134 (Bankr. E.D. Mich. 1989)) ("When termination occurs without any action by the non-debtor party, the contract is no longer executory and no longer subject to assumption or rejection"); *In re Benrus Watch Co.*, *Inc.*, 13 B.R. 331, 334 (Bankr. S.D.N.Y. 1981) (contract not executory where termination occurred prepetition and debtor's cure rights lapsed prepetition).

For similar reasons Credit Protection Trust 207's Swap Agreement cannot be assumed because, as noted above, its scheduled maturity date occurred on June 20, 2010, during the Debtors' bankruptcy cases and prior to the date of the Assumption Notices.  *See*, *e.g.*, *In re Texscan Corp.,* 107 B.R. 227, 230 (B.A.P. 9th Cir. 1989), *aff'd*, 976 F.2d 1269 (9th Cir. 1992) ("It is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist.  If a contract has expired by its own terms then there is nothing left to assume or reject"); *In re Ames Dep't Stores, Inc.*, No. 93-cv-4014, 1995 WL 311764, at *3 (S.D.N.Y. May 18, 1995) (insurance policies

16

executed prepetition whose policy periods expired prior to confirmation of the chapter 11 plan are non-executory contracts which cannot be assumed or rejected).

Moreover, the Debtors have no reasonable basis for proposing a cure amount of $0 with respect to the Swap Agreements.   The concurring opinion in *Dynamic Brokers* stated that although "it may be possible for a debtor to object to a creditor's claim through a proposed plan, if the proper notice is given," the plan in question did not provide sufficient notice to serve as a substitute for a claim objection properly asserted under Bankruptcy Rule 3007, as the only notice in the plan was a provision stating a dollar amount different than what the debtor had earlier stated in its schedules, and as a result the debtor's attempted claim objection was deemed improper.  *See* 293 B.R. at 500-01 (Perris, J. concurring) ("There was nothing in the plan that pointed out the discrepancy or gave any explanation for it" . . . [This was] "procedurally inadequate").

In the instant proceeding, neither the Plan Supplement nor the Assumption Notices specified a reason for proposing a cure amount of $0.  As noted above, under the Moving Trusts' Swap Agreements LBSF was required to make quarterly fixed payments.  The Confirmation and Standard Terms Supplement for Credit Protection Trust 283's Swap Agreement specify that LBSF is required to make quarterly payments of approximately $1.84 million until such Swap Agreement terminates.  Likewise, Credit Protection Trust 207's Swap Agreement Transaction provides that LBSF must make quarterly payments of approximately $64,000 until such Swap Agreement terminates.  Simply put, the Moving Trusts are at a loss as to how the Debtors could, in good faith, propose a $0 cure amount given that the Debtors incurred approximately $31 million in fixed payment obligations under the Moving Trusts' Swap Agreements since the commencement of LBHI's bankruptcy case and absent termination of such Swap Agreements,

17

no floating rate payments would have become due or would be expected to come due under the Swap Agreements.

Given the Moving Trusts prepetition termination of their Swap Agreements, the prior course of dealing between the parties, the Moving Trusts' expectation based on communications with the Debtors that the Debtors would file an actual objection to the Moving Trusts' Claims or a complaint seeking an affirmative recovery from the Moving Trusts to the extent they sought a judicial determination with respect to such claims, as opposed to notices proposing to assume the Swap Agreements that were not served on the Moving Trusts' attorneys despite the Debtors having previously served the Moving Trusts' attorneys with pertinent motions and notices, and the Debtors' failure to specify any reason for proposing a cure amount of $0, the Debtors' inclusion of the Swap Agreements in the Plan Supplement and failure to serve the Assumption Notices on the Moving Trusts' attorneys did not satisfy constitutional due process requirements.

### C.    If the Moving Trusts are Not Granted Civil Rule 60(b) Relief, They are Entitled to Relief under Bankruptcy Rule 9011

In *Espinosa*, a governmental student loan guaranty agency suffered the discharge of its student loan claim by operation of a provision in the student's chapter 13 plan, even though the statutory requirements for discharge were not even alleged to be satisfied. 130 S. Ct. at 1374-75. The student's attorney may have violated Bankruptcy Rule 9011, but unlike here, the lender did not contend it was not properly served. The Supreme Court affirmed the denial of the agency's request for relief under Civil Rule 60(b) on the ground the creditor's constitutional right to due process was not violated because the governmental agency in charge of servicing the student loan was properly served with the chapter 13 plan. *Id.* at 1378-80.

Specifically, the clerk of the bankruptcy court mailed notice and a copy of Espinosa's plan to United Student Aid Funds, Inc. ("United"), a guaranty agency that administers the

collection of federally-guaranteed student loans in accordance with Department of Education regulations. 130 S. Ct. at 1374. United received the notice and filed a proof of claim, but did not object to the plan's proposed discharge of Espinosa's student loan interest or Espinosa's failure to commence an adversary proceeding, as required by Bankruptcy Rule 7001(6). *Id*. In May 1993, the bankruptcy court confirmed Espinosa's plan and the chapter 13 trustee mailed United a form notice advising United that the amount of its claim differed from the amount listed for payment in the plan and that if United wanted to dispute treatment of its claim, it was required to notify the chapter 13 trustee within 30 days. *Id*. United did not respond to the notice. *Id*. In May 1997, Espinosa completed payments on his student loan principal and the bankruptcy court discharged his student loan interest. In 2000, *seven years* after the debtor's plan was confirmed, United sought to set aside the confirmation order on the ground its due process rights had been violated. *Id*. at 1374-75.

The Supreme Court held that Espinosa's failure to commence an adversary proceeding by a summons and complaint did not deprive United of due process. *Id.* at 1378 (citing *Mullane*, 339 U.S. at 314). The Supreme Court found that United's receipt of actual notice of the filing and contents of Espinosa's plan satisfied United's due process rights, in a situation where there was no issue involving United being improperly served at an address different than what it expected and was entitled to. *Id*. Conversely, the Supreme Court opined that the availability of relief against the debtor and his attorneys under Bankruptcy Rule 9011 for engaging in improper or bad faith litigation tactics should deter such conduct. *Id*. at 1382. Here, the Moving Trusts were not properly served and are entitled to Civil Rule 60(b) relief. Absent such relief, the Debtors' failure to serve the Moving Trusts' attorneys while circumventing the claim objection

19

requirements by purporting to assume terminated, *i.e.*, no longer executory, contracts, easily satisfies the bad faith litigation tactic standard to invoke relief under Bankruptcy Rule 9011.

Post-*Espinosa* courts have regularly rejected arguments opposing Civil Rule 60(b) relief on the ground that constitutional due process has not been satisfied. *See*, *e.g.*, *In re Kleibrink*, 621 F.3d 370, 371 (5th Cir. 2010) (debtor's claim objections were so confusing that the creditor had not received sufficient notice thereof to satisfy due process requirements); *Jacobo v. BAC Home Loans Serv., LP*, No. 11-cv-5134, 2012 WL 2369360, at *7 (D. N.J. June 21, 2012) (affirming bankruptcy court's grant of Civil Rule 60(b) relief to BAC Home Loans Servicing on ground that the notice mailed by BAC did not provide it with constitutional due process).

## II.    **The Moving Trusts are Entitled to Relief from the Confirmation Order under Civil Rule 60(b)(1)**

Civil Rule 60(b), made applicable in bankruptcy cases by Bankruptcy Rule 9024, provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

The Supreme Court has held that excusable neglect "is at bottom an equitable [determination], taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay . . . and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In the context of a motion for leave to file late-filed claims on grounds of excusable neglect pursuant to Bankruptcy Rule 9006(b), this Court held that "neglect . . . is excusable when the creditor, after conducting a reasonable amount of diligence, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the . . . order. That confusion was the principal reason for granting relief and finding excusable neglect." *In re*

*Lehman Bros. Holdings Inc.*, 433 B.R. 113, 126-27 (Bankr. S.D.N.Y. 2010), *aff'd, CVI GVF*

*(Lux) Master S.A.R.L. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011).

    **A.**    **The Reason for the Moving Trusts' Failure to Object to the Assumption Notices**

    As noted above, in October 2009 the Debtors engaged the Trusts (including the Moving

Trusts) in negotiations concerning the Swap Agreements and the amounts sought under the

Moving Trusts' Claims.  Meyers Declaration at ¶7.  During the negotiations which followed, the

Moving Trusts were advised that the Debtors were still analyzing the Moving Trusts' Claims,

and the Moving Trusts understood, based upon their prepetition termination of the Swap

Agreements and the prior course of dealing between the parties, that absent a mutually agreeable

resolution of the Moving Trusts' Claims the Debtors would object to such claims or file a

complaint seeking an affirmative recovery from the Moving Trusts, whereupon the parties would

participate in Court-ordered dispute resolution.  Based upon such negotiations and based on the

Moving Trusts having filed proofs of claim specifying service on their attorneys, the Moving

Trusts had no reason to be on notice the Debtors might attempt to assume the terminated Swap

Agreements at $0 cure amount without service on their attorneys.  The Moving Trusts' inaction

in this instance falls well within the realm of Civil Rule 60(b)(1).  *See, e.g., Collezione Europa*

*USA, Inc. v. Dugan (In re Rhodes, Inc.)*, No. 04-78434, 2007 WL 7143074, at *7 (Bankr. N.D. Ga.

Dec. 18, 2007) ("The primary error committed by Movant was a mistake of fact . . . Respondent

stipulated to that fact.  Being blissfully unaware of the bath it would take, Movant had little incentive

to be more diligent.  If this kind of mistake were judged to be inexcusable, even though no other

harm or misconduct were shown, the equitable underpinning of *Pioneer* would be emasculated"); *In*

*re Garden Ridge Corp.*, 348 B.R. 642, 646 (Bankr. D. Del. 2006) ("The concept of excusable neglect

clearly anticipates . . . neglect on the part of the one seeking to be excused").

### B.     The Length of Delay is *De Minimis*

The delay in question has only been several months following the Plan's effective date and will not impact judicial proceedings or distributions since the Debtors were required to reserve for the Moving Trusts' claims.  For a case of this magnitude, a few months is a relatively short period of time.  Although the Debtors have already made their initial distribution, pursuant to Section 8.4 of the Plan, the Debtors were required to set aside cash in an amount equal to that which the Moving Trusts would have received had the Moving Trusts' Claims been allowed and the Moving Trusts' Claims have not yet been objected to.  Further, numerous derivative contract parties have objected to the Debtors' assumption of their agreements and/or the Debtors' proposed cure amounts and such objections, by and large, remain unresolved.  Moreover, pursuant to Section 9.1 of the Plan, the Debtors have until the later of 2 years after the Plan's effective date or such later date as may be fixed by the Court for cause to object to filed claims.

### C.     The Moving Trusts are Acting in Good Faith

The circumstances of this filing demonstrate that the Moving Trusts have acted in good faith.  The Moving Trusts had no knowledge of, and no reason to be on notice of, the Debtors' proposed assumption of the terminated Swap Agreements, based upon their prior negotiations and communications with the Debtors as well as the fact that the Debtors previously served pertinent motions and notices on the Moving Trusts' attorneys.  *See* Meyers Declaration at ¶12; Chubak Declaration at ¶¶2-4.  Further, as noted above and in the Meyers Declaration, prior to filing the Motion, the Moving Trusts engaged the Debtors in negotiations concerning their claims.  The Moving Trusts are not seeking to assert claims of dubious legitimacy or attempting to gain a strategic advantage; they simply seek a return to the status quo so the Moving Trusts' Claims may be litigated in a lawful manner and in the manner the Moving Trusts were led to believe they would be litigated.

**D.**     **A  Return to the Status Quo Will Not Prejudice the Debtors**

The relief sought by the Moving Trusts will not jeopardize the success of the Debtors'
Plan.   Except with respect to certain of the Moving Trusts' Claims which were amended and
superseded, the Debtors have not objected to the Moving Trusts' Claims and such claims remain
on the claims register.   Entry of an order granting the Moving Trusts relief from the
Confirmation Order will not prejudice the Debtors, given that the Debtors were required to
reserve for the allowance of such claims and the Debtors will still have sufficient time to object
to or allow the Moving Trusts' Claims.

## CONCLUSION

The Motion should be granted and the Debtors' "assumption" of the terminated Swap Agreements with a $0 cure amount should be deemed void.  Alternatively, if the Court determines the Moving Trusts' Swap agreements should be considered executory and assumed, the Debtors should be directed to make all unpaid fixed payments due and owing under the Moving Trusts' Swap Agreements.

Dated: August 24, 2012
     New York, New York

Respectfully submitted,

/s/ Martin J. Bienenstock
Martin J. Bienenstock
Irena M. Goldstein
Jeffrey Chubak
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for Credit Protection Trusts 207 and 283*

30570853v1

## EXHIBIT A

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | : | **Case No. 08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------- x

| | |
|---|---|
| **CREDIT PROTECTION TRUST 207 AND** | : |
| **CREDIT PROTECTION TRUST 283,** | : |
| | : |
| Movants, | : |
| | : |
| v. | : |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC. AND** | : |
| **LEHMAN BROTHERS SPECIAL FINANCING INC.,** | : |
| | : |
| Respondents. | : |

------------------------------------------------------------------- x

### ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(1) AND (4), BANKRUPTCY RULE 9024, AND BANKRUPTCY CODE SECTION 105(a) GRANTING CREDIT PROTECTION TRUSTS 207 AND 283 RELIEF FROM CONFIRMATION ORDER

Upon the motion (the "Motion")[1] of Credit Protection Trusts 207 and 283 (the "Moving Trusts") for an order pursuant to Civil Rule 60(b)(1) and (4), Bankruptcy Rule 9024, and section 105(a) of the Bankruptcy Code granting the Moving Trusts limited relief from the Confirmation Order; and the Court having subject matter jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. § 1334; and the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and the Court having determined that the legal and factual bases set forth in the Memorandum of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Memorandum of Law in support of the Motion.

Law and declarations in support of the Motion establish just cause for the relief granted herein;

and adequate notice of the Motion having been given and no further notice being necessary; and

after due deliberation and sufficient cause appearing therefor it is hereby:

ORDERED that the Debtors' assumption of the Swap Agreements between each of the

Moving Trusts and LBSF with a $0 cure amount is hereby deemed void pursuant to Civil Rule

60(b)(1) and (4), Bankruptcy Rule 9024, and section 105(a) of the Bankruptcy Code.

Dated: _____, 2012
       New York, New York

_____
Honorable James M. Peck
United States Bankruptcy Judge