UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------ x
In re                                                              :   Chapter 11
                                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,                             :   Case No. 08-13555 (JMP)
                                                                   :
                        Debtors.                                   :   (Jointly Administered)
------------------------------------------------------------------ x
CREDIT PROTECTION TRUST 207 AND                                    :
CREDIT PROTECTION TRUST 283,                                       :
                                                                   :
                        Movants,                                   :
                                                                   :
                v.                                                 :
                                                                   :
LEHMAN BROTHERS HOLDINGS INC. AND                                  :
LEHMAN BROTHERS SPECIAL FINANCING INC.,                            :
                                                                   :
                        Respondents.                               :
------------------------------------------------------------------ x
```

**DECLARATION OF JONATHAN P. MEYERS IN SUPPORT OF
MOTION OF CREDIT PROTECTION TRUSTS 207 AND 283 FOR AN
ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(1)
AND (4), BANKRUPTCY RULE 9024, AND BANKRUPTCY CODE SECTION
<u>105(a) GRANTING RELIEF FROM CONFIRMATION ORDER</u>**

I, Jonathan P. Meyers, hereby declare as follows:

1.    I am a counsel at Assured Guaranty Municipal Corp. (f/k/a Financial Security Assurance Inc.) ("<u>Assured</u>"), which provided financial guarantee insurance in connection with certain Swap Agreements (as defined below) between Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") and Credit Protection Trusts 48, 233, and 265 (the "<u>Settling Trusts</u>") and Credit Protection Trusts 207 and 283 (the "<u>Moving Trusts</u>," and together with the Settling Trusts, the "<u>Trusts</u>"). I am competent to testify and authorized to submit this declaration in support of the Moving Trusts' motion (the "<u>Motion</u>") for an order granting them relief from the order entered December 6, 2011 [Docket No. 23023] confirming the modified third amended joint chapter 11

plan (the "Plan") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (together with LBHI, the "Debtors"). Except as otherwise indicated, I have personal knowledge of the facts set forth below.

2. Prior to the commencement of the Debtors' bankruptcy cases, each Trust entered into an ISDA Master Agreement (each, as amended and supplemented, a "Swap Agreement") with LBSF. LBHI guaranteed LBSF's payment obligations under each Swap Agreement. True and correct copies of Credit Protection Trusts 207 and 283's Swap Agreements are attached hereto as Exhibit A and Exhibit B, respectively.

3. The Trusts sent notices of termination to LBSF under their respective Swap Agreements on September 29, 2008 (Credit Protection Trusts 207 and 283), October 27, 2008 (Credit Protection Trust 48), and December 5, 2008 (Credit Protection Trusts 233 and 265). The Moving Trusts' notices are attached hereto as Exhibit C.

4. On November 4, 2008, I participated on a telephone call with Locke McMurray and Mike Pohly of Lehman regarding the possibility of reinstating certain of the Swap Agreements, including the Moving Trusts' Swap Agreements. *See* Exhibit D, an e-mail drafted by Michael Weinstein of Assured at my request to certain senior management at Assured which accurately summarizes the conversation. As set forth in the e-mail, and confirmed by my notes taken contemporaneously at the time of the call, Lehman advised that it unintentionally failed to make the payments due under such Swap Agreements and was considering reinstating the Swap Agreements by paying the defaulted amounts in order to be able to assign the Swap Agreements to a creditworthy entity.

5. On December 15, 2008, I wrote to Mr. McMurray to advise Lehman that Assured was willing to reinstate "the 7-1/2 year trade," which was the Swap Agreement to which CPT

2

283 was party. Mr. McMurray advised me by e-mail that Lehman "had formed a view as to what trades we would like to keep alive" and that he would call me the next day to discuss. *See* copy of the e-mail chain attached hereto as Exhibit E. Mr. McMurray never did. *See* March 24, 2009 and March 29, 2009 e-mail exchange between Michael Weinstein to Mr. McMurray, on which I was copied, in which Mr. Weinstein again asks for a response from Mr. McMurray, attached hereto as Exhibit F.

6. Thereafter, each Trust filed proofs of claim against LBSF and LBHI, which claims were later amended to comply with the bar date order entered on July 2, 2009, and amended further to reflect the receipt of a postpetition payment under one of the Settling Trusts' Swap Agreements and the guarantee made by LBHI pursuant to the Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the Trusts' claims, as amended, the "Trusts' Claims"). Each Trusts' Claim provided that any notices with respect to the claims should be addressed to Bruce E. Stern or James Michener of Assured, the manager of the Trusts *and* to the Trusts' then attorneys, Dewey & LeBoeuf LLP.

7. In October 2009, the Debtors, through their attorneys, notified the Trusts, by both written and oral communications, that the Debtors believed that the Settling Trusts had not properly terminated their Swap Agreements and that they disputed the amounts sought under the Moving Trusts' claims. At no time did the Debtors contend that the Moving Trusts' Swap Agreements (as opposed to the Settling Trusts' Swap Agreements) were not properly terminated or contradict the Debtors' earlier statements that there had been prepetition payment defaults, however unintentional, notwithstanding the Debtors' dispute over Assured's calculation of the damages owed under the Moving Trusts' Swap Agreements.

3

8. In the months that followed, the Debtors and the Moving Trusts were in regular communication in an effort to resolve the Trusts' Claims. In April 2010, the Debtors, the Trusts, Assured, and their respective attorneys held a conference call regarding the Trusts' Claims during which no agreement was reached. Thereafter, Assured made a number of calls to Legacy Asset Management Company (the entity formed to wind-down the Debtors' estates), to find out the status of the Moving Trusts' claims and was advised that such claims were still being analyzed by the Debtors' attorneys. Based upon the written and oral communications which took place between the parties, it had been the understanding and expectation of the Moving Trusts and Assured that unless agreement was reached with the Debtors with respect to the Moving Trusts' claims, the Debtors would file an objection to such claims or a complaint seeking an affirmative recovery from the Moving Trusts, whereupon the parties would participate in Court-ordered dispute resolution.

9. Assured subsequently was mailed notices by the Debtors concerning their proposed assumption of the Swap Agreements (the "<u>Assumption Notices</u>"). The notices state that the Debtors' proposed cure amount is $0 for each Swap Agreement proposed to be assumed under their Plan. True and correct copies of the Assumption Notices are attached hereto as <u>Exhibit G</u>. I understand that the Trusts' attorneys were not served with a copy of the Assumption Notices.

10. On November 8, 2011, *after* the Debtors had mailed the Assumption Notices to the Trusts, the Debtors contacted Assured in an effort to consensually resolve the Settling Trusts' claims. At no point during the negotiations which ensued did the Debtors disclose that they were seeking to assume the Moving and Settling Trusts' Swap Agreements and, in that regard, had previously mailed the Assumption Notices. Moreover, neither the Trusts nor Assured were

4

aware of the Debtors' intent at that time to assume such Swap Agreements and fix the cure amounts at $0 (despite Assured having inquired concerning the proposed treatment of the Moving Trusts' claims).

11. On December 15, 2011, the Settling Trusts, Assured, and the Debtors entered into Termination Agreements ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

12. The Assumption Notices were not properly directed internally until after the November 10, 2011 deadline set forth in the Assumption Notices for objecting to the Debtors' proposed assumption of the Swap Agreements or the proposed cure amount. By that time, the Debtors' Plan had been confirmed by the Court and had gone effective. In addition, based upon communications between the parties, and the fact that the Debtors had not challenged the Moving Trusts' termination of the Swap Agreements (only the damages sought by Assured as a result), I had no reason to believe or even suspect that the Debtors were going to assume previously terminated Swap Agreements.

I declare under penalty of perjury that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 23, 2012
New York, New York

Jonathan P. Meyers
Counsel

6