Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555 (JMP); Case No. 08-01420 (JPM)(SIPA)

4   - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6   LEHMAN BROTHERS HOLDINGS, INC., et al.

7           Debtors.

8   - - - - - - - - - - - - - - - - - - - -x

9   In the Matter of:

10  LEHMAN BROTHERS, INC.,

11          Debtor.

12  - - - - - - - - - - - - - - - - - - - -x

13

14                  U.S. Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  August 23, 2012

19                  10:04 AM

20

21

22  B E F O R E:

23  HON. JAMES M. PECK

24  U.S. BANKRUPTCY JUDGE

25  ECRO:  FRANCES FERGUSON

Page 2

1    HEARING re Trustee's Motion for Authorization to sell shares

2    of Navigator Holdings, LTD. and related relief [BI ECF No.

3    5220]

4

5    HEARING re Motion for Authorization to settle certain

6    prepetition derivatives contracts with trusts for which

7    Deutsche Bank National Trust Company serves as indenture

8    trustee and related relief [ECF No. 29611]

9

10   HEARING re One Hundred Twelfth Omnibus Objection to claims

11   (no liability claims) [ECF No. 15014]

12

13   HEARING re Debtor's Three Hundred Twenty-First Omnibus

14   Objection to claims (amended and superseded Claims) [ECF No.

15   29293]

16

17   HEARING re Motion to establish and implement procedures in

18   connection with omnibus objections to reclassify proofs of

19   claim as equity interests with proposed order establishing

20   discovery procedures in connection with omnibus objections

21   to reclassify proofs of claim as equity interests [ECF No.

22   29899]

23

24

25

Page 3

1   HEARING re Motion to certify a class of RSU and CSA

2   claimants, appoint class counsel and class representatives

3   and approve the form and manner of notice [ECF No. 29256]

4

5   HEARING re Three Hundred Thirteenth Omnibus Objection to

6   claims (to reclassify proofs of claim as equity interests)

7   [ECF Nos. 28433]

8

9   HEARING re Three Hundred Nineteenth Omnibus objection to

10   claims (to reclassify proofs of claim as equity interests)

11   [ECF Nos. 28777]

12

13   HEARING re Motion to certify a Class of RSU and CSA

14   claimants, appoint class counsel and class representatives,

15   and approve the form and manner of notice [ECF No. 29256]

16

17   HEARING re Three Hundred Thirteenth Omnibus Objection to

18   Claims (to reclassify proofs of claim as equity interests)

19   [ECF Nos. 28433]

20

21   HEARING re Three Hundred Nineteenth Omnibus objection to

22   claims (to reclassify proofs of claim as equity interests)

23   [ECF Nos. 28777]

24

25   Transcribed by:  Sheila Orms

Page 4

1    A P P E A R A N C E S :

2

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Lehman Brothers Holdings, Inc.

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   ROBERT J. LEMONS, ESQ.

9         MARK I. BERNSTEIN, ESQ.

10        RALPH I. MILLER, ESQ.

11        AMANJIT S. ARORA, ESQ.

12

13   STAMELL & SCHAGER, LLP

14        Attorneys for Michael K. McCully and Michael J. Mullen

15        One Liberty Plaza, 25th Floor

16        New York, NY  10008

17

18   BY:   RICHARD J. SCHLAGER, JR., ESQ.

19        ANDREW R. GOLDENBERG, ESQ.

20

21

22

23

24

25

```
 1   LEVIN LEE LLP

 2          Attorneys for SIPA Trustee

 3          570 Lexington Avenue, 7th Floor

 4          New York, NY  10022

 5

 6   BY:   KENNETH E. LEE, ESQ.

 7          JEFFREY S. MARGOLIN, ESQ.

 8

 9   BAKER & MCKENZIE LLP

10          Attorneys for Banque Cantonale Du Valais

11          1114 Avenue of the Americas

12          New York, NY  10036

13

14   BY:   KENNETH L. BAUM, ESQ.

15

16   VINSON & ELKINS LLP

17          Attorneys for Lisa Marcus

18          666 Fifth Avenue, 26th Floor

19          New York, NY  10103

20

21   BY:   STEVEN M. ABRAMOWITZ, ESQ.

22

23

24

25
```

Page 6

1    NIXON PEABODY LLP

2          Attorneys for Deutsche Bank National Trust

3              Company as Trustee

4          100 Summer Street

5          Boston, MA  02110

6

7    BY:   RICHARD C. PEDONE, ESQ.

8

9    LAW OFFICES OF LISA SOLOMON

10          305 Madison Avenue

11          Suite 4700

12          New York, NY  10165

13

14    BY:   LISA M. SOLOMON, ESQ.

15

16    THE MICHAELSON LAW FIRM

17          Attorneys for Four RSU Claimants

18          11 Broadway, Ste. 615

19          New York, NY  10004

20

21    BY:   ROBERT MICHAELSON, ESQ.

22

23

24

25

1    ALSO APPEARING:

2

3    ARTHUR KENNY, PRO SE

4    VIRGILIO KOSUPOLE, PRO SE

5

6    TELEPHONE APPEARANCES:

7

8    ANATOLY BUSHLER, FARALLON CAPITAL MANAGEMENT

9    BARRY P. GRUBER, GENOVESE JOBLOVE & BATTISTA, P.A., FOR

10         JAMIE MURCIA

11   GEORGE C. WEBSTER, STUTMAN, TREISTER & GLATT, FOR ELLIOTT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 8

1                    P R O C E E D I N G S

2            THE COURT:  Be seated, please, good morning.  I'm

3    told that we're going to start with SIPA.

4            MR. LEE:  Yes, good morning, Your Honor.  Ken Lee

5    from Levine Lee for the SIPA Trustee.  With the Court's

6    permission, we'd like to start with the uncontested matter

7    at the beginning of the SIPA portion of the agenda.

8            THE COURT:  That's fine.

9            MR. LEE:  We bring before you today a motion for an

10   order to approve the sale procedures and termination fee in

11   connection with LBI's sale of shares in Navigator Holdings,

12   Inc. or Limited.  We note that the hearing on the sale

13   itself is set before Your Honor on September 19th with

14   objections due on September 5th.

15           The motion is uncontested.  However, I do want to

16   bring to the Court's attention that last night we have been

17   negotiating with LBHI concerning a potential objection that

18   they might have made to this transaction, to the sale

19   procedures order rather.  And in an effort to resolve that,

20   we worked very hard to do that, and late last night we were

21   able to resolve that issue with LBHI, as well as with the

22   buyers, Wilbur Ross.

23           THE COURT:  What's the issue?

24           MR. LEE:  Well, the issue in short was resolved I

25   think very reasonably by removing the limited no stock

Page 9

```
 1    provision that was in the transaction.  And so now, the
 2    trustee will be able to actively solicit offers in excess of
 3    the offer that Wilbur Ross has put on the table, and that's
 4    acceptable to Wilbur Ross as well.
 5              So this morning, we filed a revised stock purchase
 6    agreement and revised proposed order reflecting that single
 7    change.  There have been no other objections raised or filed
 8    with respect to the procedures order.  So we would
 9    respectfully request that the Court enter the order.
10              THE COURT:  Okay.  That's fine.
11              MR. LEE:  Thank you.
12              THE COURT:  Is there anyone who wishes to be heard
13    with respect to this?
14              MR. ARORA:  Good morning, Your Honor, Amanjit
15    Arora, Weil Gotshal & Manges on behalf of LBHI and its
16    affiliates.
17              I just wanted to make one clarification on the
18    record that while we agreed not to object, we have reserved
19    our rights to object at the sale hearing.  So I just wanted
20    to point that out for the record.
21              THE COURT:  All right.  Everyone's rights are
22    reserved in respect of what happens at the sale hearing and
23    I've reviewed the papers including the supporting
24    declaration from Deloitte and find that the procedures are
25    acceptable and I approve them.
```

Page 10

1          MR. LEE:  Thank you, Your Honor.  We'll be

2     submitting the form of order later, and if -- with Your

3     Honor's permission, may we excuse the individual who --

4          THE COURT:  He may be excused.

5          MR. LEE:  Thank you very much, Your Honor.

6          MR. BERNSTEIN:  Good morning, Your Honor, Mark

7     Bernstein from Weil Gotshal on behalf of LBHI.  The first

8     three items on the agenda this morning are all uncontested

9     items, and there are several R2 related items that we'll get

10    to later.

11          The first item on the agenda is the motion for

12    authorization to settle prepetition derivative contracts for

13    and between LBSF and certain trusts, for which Deutsche Bank

14    serves as indentured trustee and four between LBDP for which

15    -- between LBDP and certain trusts, for which Deutsche Bank

16    serves as indentured trustee.

17          As a result of this settlement, LBSF will receive

18    approximately $38 million.  LBDP will receive approximately

19    $3 million based on their swaps.  This resolves a long

20    lasting dispute regarding these swaps.  Certain of these

21    trusts have been retaining cash since the beginning of the

22    case, that they have been collecting, that otherwise would

23    have been distributed to -- distributed both to LBSF or

24    LBDP.  The trustee has asserted throughout the case that

25    they had certain defenses to those payments; however, we've

Page 11

1    managed to reach a resolution and as a result, these

2    payments will be made to LBSF and LBDP if the settlement is

3    approved.

4           Daniel Irman (ph) of Alvarez & Marsal has filed a

5    declaration in support of this settlement, and his business

6    interest -- his business judgment to settle is in the

7    interest of the estates and their creditors.  In addition,

8    an employee of Deutsche Bank Trust Company has filed a

9    declaration regarding the notices that they have provided of

10   this settlement of the bankruptcy case and of these claims

11   to their investors all throughout the case, and that they

12   have not received any responses or any objections to the

13   settlements.

14          No objections were filed on the docket and we

15   respectfully request Your Honor enter this order on an

16   uncontested basis.

17          THE COURT:  It's approved.

18          MR. BERNSTEIN:  Thank you, Your Honor.

19          The next item on the agenda is the 112th omnibus

20   objection to certain claims based on Lehman program

21   securities that had been filed many months ago.

22          The objection relates to about 62 claims of Banque

23   Cantonale Du Valais that they filed on behalf of various of

24   their customers.  Their claims -- since they were based on

25   Lehman program securities, and according to the bar date,

Page 12

1    were required to include blocking numbers, which were --

2    which was a provision of the bar date order necessary to

3    validate ownership of those securities and avoid duplicate

4    payments, as Your Honor may recall.

5           These claims filed by Banque Cantonale did not

6    include valid blocking numbers, and as a result, we objected

7    and said they should be disallowed for failure to comply

8    with the bar date order.  Based on the response from Banque

9    Cantonale that they could establish their ownership and the

10   lack of duplication through other means, and certain

11   statements from this Court with respect to similar matters

12   and similar objections, we have worked with Banque Cantonale

13   over the past several months to see if they could provide us

14   with the adequate comfort that there is minimal risk of

15   duplication of these claims.

16          As a result, Banque Cantonale, the relevant

17   clearing agency and the individuals that Banque Cantonale

18   represents, have all provided certain declarations and

19   certifications that they have not filed any other claims,

20   any of the claims filed based on these same securities were

21   not filed on their behalf.  They have not received -- the

22   first distribution has not flowed through to them through

23   some other party who filed on their behalf, and as a result,

24   Lehman is -- believes that the risk that these claims are

25   duplicative of any other claims is minimal.

Page 13

1           And to further protect Lehman, Banque Cantonale has

2     agreed to provide an indemnity to LBHI if it's ultimately

3     determined that any duplicate payments are actually made.

4           Based on these facts, LBHI is willing to withdraw

5     the objection or resolve the objection pursuant to the

6     stipulation which we filed with the Court yesterday, and

7     allow these claims in the amounts determined pursuant to the

8     structured securities valuation methodologies order, which

9     Banque Cantonale has agreed to as well.

10           As a result of this agreement, we respectfully

11     request Your Honor enter the stipulation or so order the

12     stipulation that Lehman and Banque Cantonale have agreed to.

13           THE COURT:  I will so order the stipulation.

14           MR. BERNSTEIN:  Thank you, Your Honor.  The third

15     item on the agenda is the debtor's 321st omnibus objection

16     to claims.

17           This objection sought to expunge certain claims

18     that had been amended or -- and superseded by subsequently

19     filed claims by the same party.  Deutsche Bank Trust Company

20     filed certain claims based on certain derivative contracts

21     of certain other trusts, not the ones we referred to earlier

22     in the other settlement.

23           And then following the effective date of the plan,

24     Deutsche Bank filed claims based on some of those same

25     derivative contracts as rejection damage claims.  As those

Page 14

1    contracts were not on the assumed list.  They had been

2    rejected by the plan.

3          We additionally had believed that the claims were

4    entirely duplicative when we filed the objection; however,

5    after speaking with Deutsche Bank it was determined that

6    there were certain derivative contracts that were on the

7    initially filed claims that were not included on the

8    rejection damage claims, either because they had been

9    terminated or matured throughout the case.

10          And as a result, the claims were not entirely

11   duplicative.  However, to avoid having duplicate claims or

12   two claims on the register seeking similar recoveries, we've

13   added language to the order and Deutsche Bank has agreed,

14   that provides that certain of the derivative contracts that

15   were included on the initial claims will be deemed to be

16   included on the subsequent claims, and the initial claims

17   will be expunged except for those initial certain contracts.

18          Deutsche Bank has agreed to this language and the

19   entry of the order with that language.  I have a blackline

20   of the order to hand up to Your Honor if you'd take a look

21   at it.

22          THE COURT:  I'll take a look at it.  And I note

23   Deutsche Bank's counsel is here and may want to say a word.

24          MR. PEDONE:  Your Honor, Richard Pedone on behalf

25   of Deutsche Bank.  And we agree the language in the order

Page 15

1    addresses the issue.

2            THE COURT:  Fine.  Let me take a look at it.  This

3    is language that's obviously meaningful only to someone who

4    has actually studied the claim --

5            MR. BERNSTEIN:  I think that's right.

6            THE COURT:  -- history and I accept the language as

7    being appropriate, particularly since counsel for Deutsche

8    Bank has just said so on the record.  So it's approved.

9            MR. BERNSTEIN:  Thank you, Your Honor.  I will turn

10   the podium over to my colleague, Mr. Miller to handle the

11   RSU section of the --

12           THE COURT:  Fine, thank you.

13           MR. PEDONE:  Your Honor, may I be excused?

14           THE COURT:  Yes.

15           MR. PEDONE:  Thank you.

16           MR. MILLER:  May it please the Court, good morning,

17   Your Honor.

18           THE COURT:  Good morning.

19           MR. MILLER:  I'm Ralph Miller from Weil Gotshal &

20   Manges here for Lehman's Brothers Holdings, Inc., known as

21   LBHI.

22           Your Honor, the next four items on the agenda are

23   under the heading RSU related matters, because they all

24   arise from objections filed to claims that involve in one

25   way or another, restricted stock units or conditional stock

Page 16

1   authorizations.  We often collectively call those RSUs,

2   sometimes when it's important to make a distinction, we call

3   the collective stock authorization CSAs.  Those are all

4   objections that seek to reclassify the RSU or CSA components

5   as equity.

6        The Court had directed LBHI to propose a protocol

7   to organize discovery for these claims as a group and we've

8   been working with counsel for a number of these claimants to

9   accomplish that goal.  That has led to the -- excuse me,

10  motion for a proposed order that is shown as item number 4

11  on the agenda.  The title of the order is, Order

12  Establishing Discovery Procedures in Connection with Omnibus

13  Objections to Reclassify Proofs of Claims as Equity.

14       This is proceeding as an uncontested matter, but we

15  understand some counsel for claimants may wish to address

16  the Court on it.  I did want to clarify a minor technical

17  amendment to the form of the proposed order, and if I can

18  offer that clarification now, Your Honor.

19       Briefly, the problem is that identification of

20  claims that rely on restricted stock units for conditional

21  stock authorizations turns out to be an imprecise science.

22  All of those claims are from former employees of Lehman

23  entities and many are filed pro se.

24       They often include claims for other amounts in

25  addition to RSU or CSA issues, such as unpaid severance or

Page 17

1    unpaid vacation.  And often it's unclear exactly what they

2    are claiming.  LBHI had identified more than 3,600 claims

3    based at least in part on restricted stock units or

4    contingent stock award -- authorizations, more than 3,100 of

5    those did not respond and have been reclassified.  That was

6    accomplished in thirteen separate omnibus objections between

7    December 7th, 2010 and June 15th of this year.

8            After LBHI had worked with counsel for a number of

9    claimants on the proposed order, further review found a

10   small number of additional claims that may be asserting

11   recoveries based on the RSU or CSA component.  We're not

12   absolutely certain, but we believe that number is about 21

13   more claims, which is less than six-tenths of one percent of

14   the claims that have been covered by the other 13

15   objections.

16           LBHI intends to object to the RSU or CSA components

17   if they exist tomorrow, and to set that objection for

18   hearing on September 27th.

19           The technical amendment to the procedures order

20   will allow any of those 21 claimants who do respond to catch

21   up and join the procedures that have already been set up.

22   There will be some adjusted deadlines for them to file a

23   declaration that says they want to participate.  But the

24   deadlines that have to do with the voluntary disclosures

25   that LBHI is already making and is posted on the website,

1   and people are actually drawing on, will be available to

2   them on the same schedule.

3           Special reports will be still provided to them and

4   the combined document request, they're proposed by the

5   order, and possible depositions, will still proceed as

6   scheduled.  So the procedures order comes out at the same

7   place if the -- these parties are allowed to catch up.

8           So with those technical adjustments, LBHI believes

9   that this unopposed procedures order will provide what this

10  Court called quote, reliable and authentic evidence, close

11  quote, to resolve these reclassification issues.

12          There is one more point that I do want to note for

13  further reference in the future.  LBHI has identified some

14  former Lehman employees who were transferred to Eagle Energy

15  and Barclays, who have filed claims for unpaid bonuses

16  related to 2008.

17          Some investigation is required on these claims,

18  Your Honor, including whether they were, in fact, paid by

19  their subsequent employer and how much.  LBHI is preparing

20  an omnibus objection to assert that those bonus claims

21  should not be allowed at all.  In the alternative, with

22  regard to about 80 of those bonus claims, I am advised that

23  LBHI anticipates taking the position that if the claims are

24  allowed, some portion of those bonus based on historical

25  patterns, would have been granted in the form of RSUs or

 1   CSAs.

 2            And so there may, in the future, be some RSU or CSA

 3   claims that come into the case that we cannot now fully

 4   anticipate.  We don't believe that it's productive to delay

 5   this order to get that worked out.  And we don't believe

 6   those claims will be processed in the same way.  They have

 7   somewhat different issues.  But I wanted to make the Court

 8   aware of the fact that we can't represent that there will

 9   not be another RSU claim that will darken your door after we

10   resolve this group one way or another.  But we do believe

11   that the vast majority of the RSU claims and CSA claims, and

12   those, that it makes sense to treat as units will be swept

13   in by the procedures order.

14            And so with that clarification, Your Honor, and

15   extended explanation, which I appreciate you indulging me

16   with, I move for approval of the procedures order.  We will

17   submit a revised copy with the numbers filled in after the

18   hearing to the Court.  And I would like to allow any of the

19   representatives of claimants who have previously indicated

20   they would like to address the Court, to speak to the Court

21   at this time.

22            THE COURT:  Okay.  Fine, thank you.

23            MR. ABRAMOWITZ:  Good morning, Your Honor, Steven

24   Abramowitz on behalf of Lisa Marcus.

25            I've been involved in the process with Weil Gotshal

Page 20

1    as well other counsel in connection these procedures on

2    discovery.  I would say it is an imperfect but workable

3    process for those who are represented by counsel.  This is

4    modeled after the discovery procedures that were done in

5    connection with plan confirmation, of which a number of us

6    are familiar with.  And I'm basically comfortable with this

7    on behalf of my client.

8             I would say, though, Your Honor, that I am

9    concerned that given just a large number of pro se claimants

10   involved in this, and the fact that a lot of them are not

11   represented by counsel, of course they're not, that we had

12   suggested to the debtors that they do something different

13   than a regular litigation process for these claims.

14            I mean, we had suggested some kind of mediation

15   process or something that has been done in other cases with

16   respect to, for example, personal injury claimants that was

17   not acceptable, but we also suggested was perhaps just with

18   discovery, if it was the debtor's position that we did need

19   to go through regular discovery, that there be some kind of

20   master or discovery facilitator to help coordinate

21   responses, coordinate discovery requests, make sure there's

22   no duplication, and bring a little bit more order to the

23   process.

24            The debtors were not comfortable with that, so here

25   is where we are.  I did want to voice, though, that I'm not

Page 21

 1     a hundred percent certain that this order will bring order,

 2     total order to the process just because of the nature of the

 3     claims and the nature of the claimants.  But for those

 4     represented by counsel, this is workable and we're prepared

 5     to move forward.  Thank you.

 6              THE COURT:  All right.  Thank you.

 7              MR. MICHAELSON:  Good morning, Your Honor, Robert

 8     Michaelson.  I represent four of the RSU claimants.  And I

 9     echo what Mr. Abramowitz said.  This is an imperfect

10     procedure, and we understand the necessity of gaining

11     factual information necessary to make an appropriate

12     determination.

13              The underlying concern that my clients have, and I

14     believe this is a concern that other RSU claimants have, is

15     that the process is structured, as well intentioned as it

16     is, in such a manner that the time and the expense that we

17     will be going through will ultimately convince people that

18     perhaps maybe they ought to drop out of the process.

19              Now, I'm not asking the Court for -- to address

20     this in the form of saying that it should be shortened.  I'm

21     not asking the Court to come up with any sort of remedy for

22     this.  But I am expressing a concern that the process is

23     going to be lengthy enough that the time and the expense is

24     going to ultimately defeat these claims.  Because we don't

25     represent -- we're not represented by a single counsel,

Page 22

1    because we're not a committee being paid by the estate to do

2    this, which may not even be appropriate, this is an issue

3    that I think needed to be expressed.

4          And at some point during this process, my clients

5    may instruct me to come back to the Court or to address

6    Lehman's counsel to see if there can't be some way to

7    shorten the process.  Because as the saying goes, justice

8    delayed is justice denied, and that's the concern ultimately

9    that my clients have.

10         THE COURT:  Do you have a sense as to how prolonged

11   this process is going to be and obviously you're only

12   speaking from the perspective of your clients, and also how

13   costly it's going to be, again from the perspective of your

14   clients?

15         MR. MICHAELSON:  Your Honor, unfortunately we

16   don't.  I only know from experience in bankruptcy litigation

17   over many years and looking at the complexity of these

18   issues, that I could imagine a prolonged process with

19   multiple depositions that go on for an extended period of

20   time.

21         I would like to be able to give you a more precise

22   indication of what I thought that would be.  I'm really

23   reacting to once again experientially what I see as

24   happening here.  And I can't say it's going to be a three

25   month process or a six month process or a one year process,

Page 23

1     or how many depositions will be involved.  But I imagine it

2     being extensive and costly and ultimately in that sense,

3     defeating some of these claims essentially through

4     attrition.  And that is a concern of my clients right now.

5              THE COURT:  Okay.  Thank you for that.

6              Anyone else wish to be heard at this point?

7              MR. KENNY:  The two attorney -- good morning,

8     Arthur Kenny, pro se, and I'm a commission salesman.  And

9     the two attorneys mention the fact that there are several

10    people that are pro se commissioned salesmen.  My claim

11    represents commissions that were earned, withheld, but never

12    converted into RSUs, so they were held aside.  And I've

13    submitted supporting documents to that effect.

14             I'd just like to know how to proceed.  I believe

15    Your Honor had mentioned that there would be different

16    classifications, one of which was the commission salesmen in

17    a prior hearing, and I'd just like to hear how I should

18    represent myself properly in that.  I have already submitted

19    supportive documents that I have regarding the statements,

20    so.

21             THE COURT:  All right.  Mr. Miller, I'm going to

22    ask you a question because I'm not in a position to respond

23    from the bench to this request by a pro se commissioned

24    salesman as to how he should conduct himself in reference to

25    a matter that seems to go beyond the discovery order that's

Page 24

1    before me at the moment.

2          My impression from the question you've asked, is

3    that you're asking for guidance as to how to approach this

4    issue of claim resolution from your perspective, as opposed

5    to discovery in connection with the RSU and CSA matters that

6    are before me.  And so I guess a question that I have for

7    Mr. Miller is apart from the discovery procedures that are

8    front and center at the moment, has any consideration been

9    given to how the estate will be dealing on a claimant-by-

10   claimant basis, in an effort to reconcile claims and

11   potentially reach agreements with regard to the claims.

12         MR. MILLER:  Ralph Miller, again, Your Honor.  Yes,

13   we have.  And if I might explain how the procedures have

14   been set up.  There are classes or categories of claimants

15   and those include a commissioned sales category.  There's a

16   division generally between those who were originally from

17   Neuberger Berman and those who are not.  So there's a

18   category.

19         There are some lawyers working on that, and there

20   is a procedure for pro se claimants to file a notice of

21   intention to participate in the discovery.  It does not

22   require a lawyer.  We've actually received a number of them,

23   and my colleague, Ms. Alvarez has received a number of calls

24   from pro se claimants.  And the short answer is that if he'd

25   like to partake of the discovery process, he can file that

Page 25

1    notice.  It doesn't necessarily require him to do anything,

2    except submit the notice at this point.

3         I would point out to the Court that LBHI does not

4    think any discovery is needed.  The discovery has been

5    requested by the RSU claimants, and we are responding to the

6    Court's directive to make discovery available.

7         So that the way the procedure is set up, there is a

8    website, log ins are provided, and certain common documents

9    are available for download.  And that's been operating and

10   people are getting things like the contracts and agreements.

11        A special report is going to be prepared for each

12   claimant who has responded and has filed a declaration that

13   tells them certain basic information on what LBHI shows for

14   their own records.  And that's not available to everybody.

15   In other words, it's an individualized report.  Your log in

16   will give you that information.

17        So he can participate in that process and see what

18   is there.  The rest of this procedure is basically derived

19   from the manual for complex litigation which says that when

20   you have multiple claimants with common positions, that the

21   Court can direct that they file combined discovery responses

22   and so on.

23        If he wishes to participate in that process, he can

24   contact some of the attorneys, who would be happy with their

25   permission, I know some of them are here and on the record,

Page 26

1    to let him know.  And he can submit whatever input he may

2    have into that process.

3         We do anticipate that we will consider and discuss

4    any sort of settlement overture that we receive from

5    individual claimants, from group of claimants, from anyone

6    else, and that we will be prepared at the end of this

7    process to try to find a way to resolve it, if it can be

8    resolved, if not, it would come to a hearing, Your Honor.

9         The proposal for a facilitator, administrator, or

10   something else which I might address, was a proposal that

11   LBHI pay for a facilitator or administrator.  LBHI doesn't

12   care whether the claimants want to pay together for some

13   sort of a facilitator or administrator, and if the pro se

14   claimants want to go together and hire a lawyer or somebody

15   to help them or something else, that of course, is up to

16   them.  We don't believe that's necessary or that that's

17   appropriate, or it has not been done in this proceeding or

18   in any other situations, even though it's been proposed

19   before.

20        So we think the pro se claimants under the

21   mechanisms that have been set up, can get the log in, they

22   can get the information.  If they are called upon for

23   discovery, and frankly LBHI does not expect to be taking

24   discovery from people unless they are raising individualized

25   issues, and we feel we need to clarify, in which case it's

Page 27

1    possible we would need discovery.  But basically a pro se

2    claimant ought to be able to file that and their -- they can

3    participate in discovery.

4         If they don't want to participate in discovery,

5    then they will receive service of all the pleadings, and

6    like any other pro se matter, they'll get notice of any

7    hearing, and they'll be able to appear and deal with it like

8    any other pro se claimant would.

9         So we believe that the mechanism exists.  It's

10   always difficult, as the Court knows, to navigate a

11   procedural system without the assistance of a lawyer.  There

12   are, of course, legal aid clinics and others who would

13   probably assist if people wanted to go approach them.  But

14   we are hoping to talk to people, but we obviously can't give

15   them legal advice.  I hope that responds to the Court's

16   question.

17        THE COURT:  It is responsive and helpful.  But as

18   long as you're at the podium, let me ask you a follow-up

19   question about the process, following up on something that I

20   discussed with Mr. Michaelson.  And that is, can you

21   reasonably project how long this process is likely to take

22   during the discovery phase, and when these matters may be

23   ripe for determination?

24        MR. MILLER:  Yes, Your Honor, we can.  The -- for

25   one thing, the discovery phase might be truncated if certain

Page 28

1   aspects of the discovery are unnecessary.  As is customary,

2   there's a document discovery phase, and that begins, as we

3   say, would amount to voluntary disclosures or automatic

4   disclosures by LBHI.  They are generalized and available to

5   anyone who signs up for access, and then there is a

6   protective order as well that needs to be returned, Your

7   Honor, which is a standardized protective order, because

8   some of these things have -- there may be confidential

9   information about individuals including -- although we're

10  going to try to redact social security numbers and other

11  things, it's possible that some of those might come out in

12  depositions and at other times.

13          The document discovery phase, Your Honor, takes us

14  into early next year.  There is a provision for a 30(b)(6)

15  deposition of LBHI and for depositions of individual

16  claimants.  I personally am hopeful that that phase actually

17  will never happen.  Because I don't think that's going to

18  probably be necessary, but assuming it does happen, and you

19  went all the way through the procedure, it would take us to

20  about June of 2012.  And then the document discovery and --

21          THE COURT:  You must mean 2013.

22          MR. MILLER:  I'm sorry, June 2013, excuse me, Your

23  Honor, June of next year.  And the discovery would then be

24  essentially complete, and we should be able to submit

25  anything that's left over at that point, maybe things have

Page 29

1    been resolved or not to the Court for a hearing.

2            THE COURT:  Okay.  Thank you.  Are there any

3    other --

4            MR. MILLER:  And, Your Honor, I think in responding

5    to those questions, I did answer the issues that were raised

6    before.  We have tried to be, and will continue, as we

7    believe we are supposed to be, cooperative and take into

8    account special situations.  But we do believe that it's

9    necessary to move this in an orderly fashion.  There need to

10   be some deadlines for people to work against, which is --

11           THE COURT:  Okay.

12           MR. MILLER:  -- what this established.

13           THE COURT:  Is there anyone else who wishes to say

14   anything about these procedures at this point?

15           I don't hear anything more.  I've reviewed the

16   proposed procedure as including the new form of proposed

17   order that was posted on the electronic case filing system

18   last evening, both in a clean and blackline form.  And I

19   believe that these procedures represent an appropriate way

20   to move forward in dealing with issues relating to the

21   classification of the RSU and CSA based claims.

22           And I'm available to the extent that there are

23   discovery issues that arise in accordance with these

24   procedures.  I hope that won't happen, but I am here.  And

25   I'm particularly sensitive to the difficulty that

Page 30

 1    individuals who do not have counsel may have in navigating

 2    the documents and the discovery and making sense out of

 3    what's being presented.

 4          And would simply note that the proof of claim

 5    process is one that by its very nature is focused on pro se

 6    behavior.  There's nothing about the filing of a proof of

 7    claim per se, that requires counsel.  Each individual

 8    confronted with what is now a contested matter, has an

 9    individual choice to make, and that is, whether to proceed

10    on their own, or to engage counsel, either individually or

11    collectively.  That's a choice that arises in virtually

12    every bankruptcy case.  This just happens to be a

13    particularly large one.

14          So those problems are typical of bankruptcy case

15    administration, and involve individual choices made by each

16    claimant.  I do believe having reviewed the procedures, that

17    the procedures are fair and understandable.  And are

18    calculated to protect the interests of all involved.  I

19    approve them.

20          MR. MILLER:  Thank you, Your Honor, for your time

21    and for your suggestions.

22          Your Honor, I believe the next item on the agenda

23    is a motion for class certification and we would call the

24    movant, if he would like to begin with his presentation on

25    that and we'd like to respond.

Page 31

```
 1              THE COURT:  Okay.

 2              MR. SCHAGER:  Good morning, Your Honor, and thank

 3     you for the opportunity to be heard.  I'm Richard Schager

 4     from Stamell & Schager.  I've appeared before you before.

 5     I'm here with Andrew Goldenberg of my firm.  We appear for

 6     McCully and -- Mr. McCully, Michael McCully and Michael

 7     Mullen on the motion for class certification.  We also

 8     represent approximately 37, based on recent correspondence

 9     might be 39 claimants, with respect to the other -- with

10     respect to the 313th and 319th omnibus motions, and two of

11     them with respect to prior motions.  I have --

12              THE COURT:  So how many -- just so I'm clear on

13     this, how many individual clients do you represent?

14              MR. SCHAGER:  Right now, it's 37, Your Honor, with

15     ten of those being salary bonus people, six of them being

16     commission sales people, all based in the U.S., and about 20

17     people from overseas.  I get calls quite frequently, two

18     more this week, two last week, of people who want to get

19     involved.  I'm not sure if it's feasible to get them -- for

20     two of them, I'm not sure it's feasible to get them involved

21     at this point.  For two others, they have oppositions

22     submitted, timely oppositions submitted, and they might --

23     they have said they want to retain my firm, so that would

24     take us up to 39.

25              THE COURT:  Okay.
```

Page 32

1           MR. SCHAGER:  Your Honor, there are two central

2    points I wanted to cover, that I think are probably what the

3    Court wants to hear, and that is the timing of the motion

4    and whether it would cause any delay in the proceeding.  I

5    have a couple of other points to make, but Your Honor can

6    guide me in any way you like with your questions.

7           At one point, I'd like to note at the outset,

8    however, is that there was a revised agenda submitted late

9    last night.  The initial agenda did not record the two

10   oppositions we had submitted to the 313th or 319th omnibus

11   objections.  I raise that in the context of class

12   certification, because the class certification brief really

13   depends on the opposition to the 313th omnibus motion for

14   its statement of facts.

15           There's a corrected agenda submitted with the

16   proper docket numbers, but of course, the Court and your

17   staff might not have seen it.

18           Your Honor, my firm has been involved in class

19   certification issues for a number of years.  I've had, it

20   seems to me, class certification issues that are

21   considerably more complex than the one we're facing right

22   now.  The beauty of the procedure here, is the fact that you

23   don't have the individual issues that often cause Courts

24   trouble.  By that, I mean, there's no issue requiring an

25   investigation of the scienter, of the debtors, there's no

Page 33

1    question of individual reliance.  There's no need to look at

2    the materiality of omissions, as a reliance substitute.

3    There are no intervening causes that have to be addressed.

4         Like the doctor who implants a defective device,

5    but there's an issue of whether his advice was also

6    defective and contributed to the damage.  None of those

7    issues are present here.  It's really a very simple issue

8    revolve around documents.  The dominant documents are the

9    CSA, the contingent stock award agreements and the

10   restricted stock unit agreements.  They're contractual.

11        There might be some side issues dealing with the

12   accounting and tax treatment, which I think are significant,

13   but once again, they will be addressed by the documents

14   recording that treatment.  Overall, it's a very neat and

15   tidy class certification procedure.  But there is the issue

16   of timing, why not sooner.

17        And I would address that, Your Honor, as follows.

18   I think the Court will recognize, and I think debtor's

19   counsel has effectively briefed that class certification

20   procedures are somewhat unusual in the context of a

21   bankruptcy proceeding.  They can certainly be used.  I think

22   the best opinion is the American Reserve opinion, where

23   there's analysis by Judge Easterbrook and Judge Posner

24   talking about the benefits of class certification and how

25   they can be used in a bankruptcy proceeding.

Page 34

1           But I recognize it is unusual.  Why is it unusual?

2   Because the procedures are all set up to give individualized

3   notice.  Theoretically, there's a procedure for

4   consolidation.  There is an opportunity be heard, and the

5   damage issues I think are pretty straight forward.

6   Centrally as debtor's counsel says, there's supposed to be

7   an opportunity to pursue your claim at a minimal cost, and I

8   think those are valid arguments, and I think they excuse not

9   making this class certification motion at an earlier stage.

10          I think what we've discovered in our

11  investigations, Your Honor, is that those factors are simply

12  not applicable here.  And that's what we've learned from the

13  oppositions we developed to the 313th and the 319th omnibus

14  objection.

15          First of all, there's the notice issue.  Your Honor

16  has on the record now affidavits from two people saying they

17  were never served with prior objections, and they have not

18  moved, there's no reason for not service, they just were not

19  served.  Two percent is out of 30, you know, we're talking

20  about a potentially six percent of the class where service

21  was defective.

22          And I think Your Honor knows from prior affidavits

23  on the service of the proofs of claim where you're -- you

24  had very specific procedures set up for how those proofs of

25  claim were to be mailed to claimants to complete.  And

1    there's also an affidavit, a very recent one, talking about

2    a very detailed service of process for the discovery

3    procedures order.  But the description of the service of the

4    notice is a bit sketchy in the record.

5          Second of all, I think the notice is defective in

6    substance, and you've got Robert Sargent's (ph) affidavit as

7    part of the record, too, where he read the notice, and he's

8    not the only one who was just -- I could reach him for an

9    affidavit, he's one who said, there's no indication in the

10   notice that reclassification means I get nothing.

11         Now, regardless of what analogy you draw, and

12   regardless of the complexities of bankruptcy procedure, it

13   doesn't take an awful lot to say seven or eight words, if

14   you are reclassified, you will get nothing.  And that never

15   appeared in any of these omnibus motions and I think it

16   should've been.

17         Consolidation, Your Honor, the best analogy I can

18   think of is that this is like running down the herd and

19   killing off the weak.  The people who are dropping out are

20   people who can't afford to hire counsel.  They're

21   intimidated by the legal process, they don't understand what

22   it's all about, or people like Mr. Sargent, who get a notice

23   that doesn't indicate that anything drastic is going to

24   happen, it's just a reclassification procedure.

25         But there are people out there, and I think we have

Page 36

1   to remember that these are the people who built the value of

2   this company that's being drawn down.  They are not getting

3   adequate disclosure, and there's really no meaningful

4   consolidation here.  The people who have been forced to drop

5   out because they can't afford to hire a lawyer, or because

6   they're overseas, or because they have language

7   difficulties, because they're calling from Germany or Hong

8   Kong or Japan, these are the people who are not getting the

9   benefits of consolidation.  I think there's a question of

10  whether there's a meaningful opportunity to be heard.

11          But the other thing I'd like to focus on is the

12  cost.  And for this, Your Honor, I direct you to McCully's

13  affidavit in support of class certification.  Because of

14  what he had to go through with a modest size claim.  He is

15  not one of the 5 or $10,000 claimants who are most of the

16  people who are being squeezed out at this point.

17          He's got a claim in the high six figures, so it's

18  worth paying attention to.  It's by no means the largest of

19  the claims that I'm dealing with.  But McCully submitted his

20  opposition, he had submitted an opposition to a reply.  His

21  opposition was misplaced, and he was mistakenly included in

22  an order reclassifying his claim.  He had to deal with the

23  Court and the U.S. Trustee and debtor's counsel to get his

24  claim restored.  That was all in connection with the 130th

25  omnibus objection.  And then he was served with the 313th

Page 37

1   omnibus objection which was the exact same claim number.

2          So where's the reasonable cost there?  He's

3   required -- he's been required to go through hoops to

4   maintain his claim.  And I don't think that's an unusual --

5   and under these circumstances, Your Honor, and again, I

6   refer to the economic analysis done by the Seventh Circuit,

7   Judges Easterbrook and Posner, the bankruptcy courts, as

8   they said, should employ the class action device when

9   necessary to ensure that it makes the awards justified by

10  non-bankruptcy entitlements.  It's a twenty-four year old

11  case, but it was recently cited by Judge Rakoff and is still

12  valid law.  Judge Rakoff's decision was the Ephedra Twin

13  Labs decision.

14          The second question I wanted to address, Your

15  Honor, was will it delay or in Judge Bernstein's phrase, gum

16  up the works of this proceeding.  The discovery procedures

17  order contemplates a year's worth of discovery.  I

18  acknowledge Mr. Miller's point that it was not Lehman

19  Brothers who wanted the discovery, but it's clearly an

20  exhaustive process, and we don't have to address whether the

21  depositions are necessary.  It's still going to take the six

22  to nine months that I estimated at an earlier hearing, not

23  the two to four months that the Court was initially advised

24  by Lehman it would take, in which case it would've been over

25  by now.

Page 38

1        There is really no indication that there's going to

2   be any type of delay.  The class consists of somewhere in

3   the range of 220 people, depending on how these most recent

4   numbers worked out.  I think the fact that there are

5   additional claimants that have been located, those are

6   people who are not going to have a voice, because as a

7   practical matter, the Court's decision on these pending

8   motions now is going to govern them.

9        They ought to have a meaningful voice and I think

10   it's adding 220 -- a small class of 220 people is not going

11   to delay the proceeding.  I emphasize again, Your Honor,

12   that these are employees, these are former employees.  That

13   ties into the disclosure issue and what they had a right to

14   expect from their former employer in terms of summarizing

15   what the effective reclassification would be, but it also

16   has to deal with the value being distributed here, which is

17   value that they built.  These are not people in the position

18   of outside tort claimants, like Judge Rakoff addressed the

19   Ephedra Twin Labs case.

20        These are people who built the value and I would go

21   back to a point that I've tried to make in the briefs.  If

22   you go back to Section 510(b)'s legislative history, which

23   the world knows was based on the article developed by

24   Professors Slain and Kripke.  In three places in their

25   article, they emphasize that the reason securities claimants

Page 39

1    should be subordinated is to help protect the interests of

2    employees along with other general creditors.  That's a

3    different concept that we're hearing here.  And I don't want

4    to get into the substance because it's not the subject today

5    of whether the IRS uses CSAs as securities.  Your Honor

6    knows from the fact that I'm here, that I am convinced they

7    are not.

8         But the thing that has to be considered is that

9    we're dealing with employees here that Slain and Kripke both

10   contemplated as a protected class, they were to benefit from

11   510(b), not to be punished by it.

12        THE COURT:  Let me ask you purely a procedural

13   question unrelated to issues of entitlement.  And it's a

14   very simple problem I'm having with your motion.  In the

15   ordinary course of the interplay between class action

16   procedure and bankruptcy procedure, an individual or

17   individuals who purport to represent a punitive class have

18   filed proofs of claim prior to the bar date, not only for

19   themselves, but on behalf of others who have not filed

20   proofs of claim.

21        That is the standard in which, at least in my

22   experience, class actions intersect bankruptcy practice.

23   But here things are different.  Here each and every claimant

24   that would be part of this proposed class has already filed

25   a proof of claim in his or her name by the bar date.

Page 40

1          MR. SCHAGER:  That's correct, Your Honor.

2          THE COURT:  Inasmuch as we already have a set of

3    well established procedures that govern the management of

4    objections to proofs of claim, including the

5    reclassification issues that are presently being discussed,

6    what's the advantage in adopting class action practice for

7    something that doesn't appear to require it?

8          MR. SCHAGER:  I think the advantage, Your Honor, is

9    the protection and the assistance granted to exactly the

10   kind of person the class action device was intended to

11   protect.  That's the person with the 5 or $10,000 claim who

12   can't even look at the expenses, let alone legal fees for

13   trying to pursue that claim and he's being deprived of his

14   compensation simply because he can't afford to do it.  I

15   think it also protects the -- I mean, we've sat in your

16   courtroom, Your Honor, and watched how the legal process can

17   intimidate people who are professionals in New York, who

18   have some familiarity with what the law is all about.  And

19   we've seen some fairly dramatic presentations where people

20   got extremely upset.

21          You cannot underestimate how intimidating the

22   process is, and when you start dealing with people for whom

23   it's a second language, I think the process is just

24   overwhelming to them.  Again in the context of whatever the

25   size of claim might be.

Page 41

1          THE COURT:  Well, let me ask you a slightly

2     different question, but it really has much the same focus.

3     In the Lehman Brothers, Incorporated SIPA case, there are

4     various legal matters that have been presented to the Court

5     for determination that have not arisen in the context of

6     class action practice, but in which various kinds of

7     claimants have joined together for what has been termed,

8     test cases, in which certain questions as to whether or not

9     certain kinds of claimants qualify as customer claims have

10    been litigated.

11          MR. SCHAGER:  You're referring to your TBA

12    decision, Your Honor?

13          THE COURT:  That's one example.

14          MR. SCHAGER:  Yeah, uh-huh.

15          THE COURT:  But there are others as well.  But the

16    law of the case, in effect, drives outcomes.  And so in this

17    instance, we have different categories of individuals who

18    have RSU, CSA type claims.  The $5,000 claimant, to use your

19    example, might well choose as a personal matter, to do

20    nothing, other than have his or her objection lodged to

21    reclassification, and stand by and watch you acting on

22    behalf of 39 clients who have engaged you to be their

23    counsel, to argue the facts on the law.

24          Once you argue the facts on the law with respect to

25    your clients, and others do the same, and there are

Page 42

1    different lawyers who are here representing different

2    claimants who are either similarly situated, or at least on

3    the wrong end of the same objection, so they have something

4    in common, but they will be presenting presumably all the

5    legal arguments that I will need, assuming discovery has run

6    its course some time next year, and I'll be deciding the

7    legal question presented in the omnibus claim objections.

8           Once I decide that legal question, isn't it just

9    decided regardless of whether or not a class action has been

10   accepted under Rule 23?  I will have determined one way or

11   the other the legal issues that are in dispute, and that

12   will determine the outcome of the claims.  Why do we need a

13   class action?

14          MR. SCHAGER:  Your Honor, the test case concept is

15   a very valid comment.  And that could be an alternative way

16   to pursue the matter.  However, the class action -- and

17   you're right, the class action is only pleaded for people

18   who have filed proofs of claim.  But it's also pleaded for

19   people who receive the objections are overwhelmed by them,

20   and due to their cost benefit analysis, and decide I have to

21   give up my compensation claim because I just can't afford to

22   pursue it.

23          Now, the test case scenario would protect them if

24   the omnibus objections are held in reserve or denied with

25   leave to replead at a later date, but it's not going to

Page 43

1    protect them if there's a charge submitted dismissing

2    another 220 people because they weren't quite sure how to

3    respond to this omnibus objection.

4        THE COURT:  Well, let me ask you a question in

5    reference to that last comment, because I'm finding this a

6    little bit both confusing and troublesome.

7        Do I understand that if your motion for class

8    certification is granted, the parties who have not opposed

9    the omnibus objections number 313 and 319, will end up

10   getting the benefit of the objections that have been filed

11   by your clients as class representatives, and in effect,

12   will be overriding a procedure that has been applicable in

13   this case since the very first omnibus claims objections

14   were filed several years ago.

15       Because if that's what the impact of granting class

16   certification would be, it would turn everything that we

17   have done in this case for years on its head.  How could

18   that be fair?

19       MR. SCHAGER:  I think I would say Your Honor is --

20   I don't need a class certification for the 37 people for

21   whom I've entered individual affidavits.  The class

22   certification motion is clearly intended for the protection

23   of the 220 who did not enter oppositions because they were

24   intimidated by the process or because their cost benefit

25   analysis said to them that I can't afford it.

1    THE COURT:  But see that would effectively override

2    not only the procedure that has applied in this case from

3    the very beginning, but the procedure that applies in

4    virtually every Chapter 11 case, large or small, in which

5    trustees or debtor's in possession or plan administrators,

6    as the case may be, file objections, omnibus objections

7    being permitted under the bankruptcy rules against parties

8    who have filed proofs of claim seeking to disallow those

9    claims or reclassify those claims.  And in the ordinary

10   course of case administration, since all that's required is

11   notice and a hearing, anyone who doesn't appear, who doesn't

12   say anything, loses.  That's how the system works.  That's

13   how it's designed to work.  It's efficient that way.

14   MR. SCHAGER:  Your Honor, you won't be surprised

15   that I did not come here today expected to hear anyone say

16   thank you.  But there's no doubt in my mind that a year from

17   now, the Court will realize that class certification is the

18   right thing, whether you grant it now or whether you don't.

19   A year from now, I think the Court will realize that it was

20   the right thing to either have done or should've been done.

21   Yes, I recognize what's happened for the prior 11

22   or 12 motions.  And the Court knows from my last experience

23   here, my last appearance here, that I don't think it was

24   fair.  I have tried to be as fact intensive as I could on

25   this motion, pointing out why notice is inadequate, why the

Page 45

1    consolidation procedure is defective, why the economies of

2    scale are not being achieved.  And I think it's a fact

3    intensive inquiry, but I think it justifies certifying this

4    limited class.

5            I am not addressing the prior 11 motions, but if

6    the -- whether they were handled correctly or not, I mean,

7    in terms of the dismissal of the people who didn't enter

8    objections, then that depends on things like adequacy of

9    notice, and whether the notice properly explained what the

10   significance of a non-opposition was.

11           That doesn't change the fact that we're looking

12   forward at a class now that is going to be treated unfairly

13   in the absence of certification.  Obviously that's my view,

14   but that's the position I advocate.  I don't think it's fair

15   to dismiss these claims, because I know -- I've talked with

16   enough people to know why they're not submitting

17   oppositions.

18           And I think it's unfair for them, these are

19   compensation claims in my view, and we'll get to that some

20   day.  But these are people who are afraid to pursue their

21   compensation claims because of the cost, because of the

22   intimidation by the process, because they just can't devote

23   the time to it, because they're not getting the benefits of

24   a group proceeding.  But they could participate in a group

25   proceeding.

Page 46

1          I understand your view, Your Honor, it's

2    troublesome.  And I sometimes wish that I could've started

3    with the 130th omnibus objection or one of the earlier ones.

4    But we didn't have the facts then.  We didn't know that the

5    process was not working properly.  We do know the process is

6    not working properly now, and I think that justifies

7    changing the practice looking forward.

8          THE COURT:  Okay.  I hear what you're saying, and I

9    have yet another comment to make.

10         And it has to do with what I'm going to call

11   disparate treatment.  If we have 14 omnibus objections, 13

12   of which having been filed from December 7th, 2010 through

13   June 15 and the last one having been filed apparently last

14   evening, and we have a procedure such as the one that you're

15   proposing in reference to objection 313 and 319, that means

16   that we have, through your efforts, created a protected

17   class that is indistinguishable from the thousands of other

18   RSU/CSA claimants that chose not to interpose any objections

19   to the omnibus objections and whose claims have been

20   reclassified.

21         In what way is it fair for a subset of similarly

22   situated claimants to get the benefit of what amounts to a

23   class that protects them and for a vast majority of others

24   that went before them in the last couple of years to be

25   simply out of luck?

Page 47

1          MR. SCHAGER:  Your Honor, I could give you the

2     mirror image of that very question I think, as expressed to

3     me by a number of claimants, both in the two recent motions

4     and in prior motions.

5          And that is, well if the Court permits so and so to

6     recover on his compensation claim, surely the Court would

7     not give him an award just because he can afford a lawyer

8     and deny me an award because I can't.  I think that's really

9     the mirror image of what you're saying from the claimant's

10    point of view.  The expectation is that there's a legal

11    principle here.

12         That aside, I think the question presented is given

13    the facts that appear now, is it fair to these people to

14    deprive them of their compensation claims because of what

15    was done in the past.  And I think the answer to that is no,

16    the fact that things were done differently in the past

17    doesn't justify depriving you of your compensation claim

18    now.

19         But I'll take one more clause to that, if I could,

20    Your Honor, or one more sentence, and that is this, you

21    know, I've deal with complicated class action issues with

22    bigger classes.  The most we're talking about here is a

23    class of 3,600 people.  If the -- what's the bankruptcy

24    phrase, the opening of the flood gates, right.  If the flood

25    gates were opened and people came back, or maybe the Court

Page 48

1   takes a look at disclosure and decides that, you know, maybe

2   it really wasn't adequate, maybe we should -- I know Your

3   Honor's reaction to that, you absolutely do not want to do

4   that, and that's fine.

5           But if it were to happen, the most you're talking

6   about is 3,600 people.  That is not a huge class, it's not a

7   huge administrative difficulty, and it's not a time

8   consuming procedure to handle it.  But I think the central

9   point I have to make in the context of this motion and

10  today, is the fact that we're not talking about the 3,000

11  people whose claims have been converted to equity right now.

12          THE COURT:  Well --

13          MR. SCHAGER:  We're talking about 200 people who

14  are going to be converted to equity unless there's a test

15  case basis or some class certification procedure.

16          THE COURT:  Well, with respect to your math,

17  there's a problem created here that goes well beyond the

18  approximately 3,600 claimants that have claims based upon

19  RSUs.  The hundreds of omnibus claims objections that have

20  been filed have all been administered on the same

21  theoretical basis.  Namely, claimants who filed proofs of

22  claim are entitled to notice and a hearing.

23          If after notice those claimants fail to respond,

24  their claims are disallowed or reclassified on an

25  uncontested basis.  We're talking hundreds of millions of

1    dollars of claims.  Maybe billions of dollars of claims.

2    We're talking about a system on the basis of which interim

3    distributions have been made, including the $22.5 billion

4    interim distribution that was made last spring.  There's

5    another one due in October.

6          Everything that has been done in this case

7    administratively assumes, as it must, that the parties in

8    interest will act on their economic interest, whether they

9    have lawyers or not, if they have an objection to lodge,

10   they'll do it.  If they make the judgment not to do it, they

11   are out of luck.

12         And so from a case administration prospective, it

13   seems to me that what you are proposing is abhorrent.

14         MR. SCHAGER:  I'm afraid I've been accused of

15   worst, Your Honor.  I'm sorry that it's abhorrent.  But, you

16   know, the flood gates argument is commonly --

17         THE COURT:  That's the argument.

18         MR. SCHAGER:  Yeah, the flood gate, as it's

19   commonly used, it's always going to -- the flood gates are

20   always going to open.  And I take exception to it in two

21   ways.  The first is, we're talking about 220 people.  And

22   you know, the Court has prior orders that are entered, you

23   had an opportunity, and you didn't even object to the order,

24   even after you understood what reclassification meant, okay,

25   although -- but the other side of it is that, and again I've

Page 50

1     tried to be as fact intensive as possible in these papers

2     with supporting affidavits.

3            I don't know what notices were given, what

4     opportunities to object to oppose an omnibus objection.  I

5     don't know how that disclosure worked.  I have to assume

6     that because it was done in this court there was adequate

7     disclosure.  But I think with respect to these people and

8     this situation, as documented in the affidavits, the

9     disclosure was not adequate.  And did they have an

10    opportunity?  Again, I rely on my summaries of my own

11    conversations with people, and also with the affidavits that

12    I've submitted, disclosure here did not tell people

13    reclassification means you get nothing.

14           And I think in most of the claims you're talking

15    about, Your Honor, you're talking about people who have

16    substantial resources.  And on top of that, there is the

17    factor that never gets mentioned anywhere in these papers,

18    in these so-called security holders, that you're talking

19    about people who were employed by this company and built the

20    value that's being distributed.

21           And I think their entitlement is a little different

22    because they built what's being paid off to other people.  I

23    can't -- yes, I understand the problems.  That's part of the

24    process.  And all I can say is, we're not talking about

25    3,600 people today, we're not talking about thousands of

Page 51

1    people today.  We're talking about 200 people.

2         And I don't think the Court is going to be damaged

3    by making a fact intensive analysis to say these people

4    deserve to be recognized in some representational capacity.

5    In the absence of that, Your Honor, and I don't want this to

6    slip through the cracks, so I'll put it in abruptly here.  I

7    think if the Court denies class certification, given that

8    we've now discovered another 20 plus people to whom notice

9    has to be sent, I think the other 220 people in the 313th

10   and 319th ought to be given a couple of more weeks to enter

11   their oppositions because of the recent extension that has

12   been granted or the recent adjournment that's been granted

13   on the hearing on that -- on those objections.

14        THE COURT:  Okay.  Thank you.  Mr. Miller, do you

15   want to respond?

16        MR. MILLER:  Thank you, Your Honor.  Yes, Ralph

17   Miller, thank you, Your Honor, I do want to respond.

18        The Court has, of course, already identified the

19   central issue, which is what is the benefit of overlaying

20   class procedures and creating a completely different

21   approach for these people that Mr. Schager happens to want

22   to put into a different classification.

23        As the Court knows, the purpose of a class action

24   is to promote fair, efficient and cost effective resolution

25   of disputes with a large number of parties.  In this matter

Page 52

1    because of the situation that exists with all of these

2    claimants, that will not be the result.  None of those goals

3    will be promoted because of two sort of salient facts, Your

4    Honor, or maybe three.

5            First of all, all of these claimants are former

6    professionals with Lehman.  We're not talking about low

7    level employees.  Most of them, I understand, were vice-

8    presidents or managing directors.  The idea that that level

9    of an educated individual does not understand that

10   reclassification to equity has severe consequences.  It's

11   just not a reasonable position to take.

12           They are all people who managed to file proofs of

13   claim as the Court noted.  We're not talking about a

14   consumer class out there who may not understand what rights

15   they have or what the wrongs are.  And the process has gone

16   a long way at this point, Your Honor.

17           Now, the Courts have created a number of questions

18   to ask, particularly in the bankruptcy context, to try to

19   see if the class action is going to be a positive thing or a

20   negative thing in the bankruptcy context.  And as Your Honor

21   has noted before, Rule 23 should only be sparingly applied,

22   your term, in Chapter 11 cases, because quote, the

23   bankruptcy process itself allows for a multitude of

24   claimants to have their claims heard and determined by a

25   single court under these circumstances, a class action is an

Page 53

1    entirely unnecessary and inappropriate procedure.  That's

2    particularly true for this very belated effort to tag a

3    class action on to something that has already worked well.

4         I also need to stress to the Court that the

5    response to the objections that we have been accepted,

6    particularly from pro se claimants can be a single line

7    letter.  We are not talking about something that is complex

8    or difficult, and the procedures that we have just discussed

9    with the Court and the Court has approved continue that to

10   make it very user friendly frankly for pro se claimants to

11   proceed.  Again, bearing in mind we're talking about former

12   professionals who used to work for Lehman entities.

13        Now, the Court had a similar sort of issue

14   presented to it when Mr. Kramer wanted to come in late and

15   the Court noted that all it took to get a ticket of

16   admission to that particular ongoing litigation was

17   something that one could classify as a real objection by

18   electing not to object, Mr. Kramer has waived the right to

19   get back in.

20        That is the central mechanism that has worked here,

21   and we believe is reasonable.  We do have in the courtroom

22   today, Your Honor, a representative of Epiq who the entity

23   that provides notice.  We have a proffer, and we are a

24   proffer and we are prepared to show to the Court that

25   despite the two declarations that were mentioned, Epiq's

Page 54

1    records show that notices were mailed to the correct

2    addresses for these individuals, and that no indication of

3    non-receipt was received.

4          Whether these individuals threw them away as junk

5    mail, whether these individuals didn't get them or whatever

6    may have happened, the presumptions in this circuit,

7    particularly at a bankruptcy, are that mailing is received.

8    And if you can't follow that presumption, you really can't

9    administer a case of this type.  It is, of course, possible

10   for people if they're particularly concerned to monitor the

11   docket and to figure out what's going on even if they don't

12   get notice.  Although I realize that would be a substantial

13   burden.

14         If I might briefly just for the record, Your Honor,

15   I would like to go through the analytics and I'll try to be

16   quick with that.  As the Court knows for a class action to

17   proceed in a contested matter in a bankruptcy case that is

18   not an adversary proceeding, there are three requirements

19   that must be met.

20         First, the bankruptcy court exercising its

21   discretion, must direct Bankruptcy Rule 7023 to apply.  Then

22   the claim must satisfy the requirements of Federal Rule 23

23   itself, and finally, the Court has a general override to

24   determine whether the benefits of the class action would be

25   consistent with the goals of the bankruptcy.

Page 55

1          As it happens, there are a series of questions as I

2    said, that the Courts have designed to try to atomize this

3    analysis.  The answer to all of those questions is no with

4    regard to the benefits that a class action might bring here.

5          I'm going to skip over the issue of whether Mr.

6    Schager has made the necessary motion under Rule 7023 and

7    whether he has filed the appropriate certification because I

8    think although we think he has not, and we think that's

9    covered by the rules, we think there are far more

10   substantive reasons and questions about whether the

11   purported class counsel has checked all the boxes to go

12   forward.

13         The -- one of the key questions that the Courts ask

14   with regard to 7023 is whether the movant sought

15   certification at the earliest practical time.  Here, the

16   motion for class treatment is about 45 months after the

17   commencement date, and 33 months after the bar date.

18         If someone had come forward before the bar date, as

19   the Court referred to earlier or after the bar date and had

20   tried to make a showing that there was some inadequacy in

21   the Court's procedure that was going to create a great deal

22   of momentum in history, that might be timely.  There is no

23   way at this point that this motion can be timely.

24         But also I point out this motion is in a very

25   unusual form that's really inadequate for a class action.

Page 56

1    Normally there is a class action complaint and there's

2    somebody who has that complaint as a class representative,

3    and they want to act on behalf of others, it might be a

4    claim.

5           Here, what Mr. Schager did is not to adopt a

6    response, but to simply say he wants to represent a class of

7    people who haven't filed any responses yet.  And we've said,

8    people have different responses.  And a very significant

9    point, Your Honor, is that he doesn't have any client that

10   is typical of the class of people who did not respond.  All

11   of his clients have responded, some of them responded late,

12   and because they came to us, as was our practice with

13   others, if they had a reasonable explanation they got here

14   before the hearing, we accepted the late responses.

15          But he has an antagonism in his class that between

16   the people who have responded who said yes, we want to take

17   it, yes, we want to play, and the people who have not

18   responded.  And he doesn't have anybody in the class of

19   people who didn't respond to be a class representative.

20          So on its face, this is an inadequate set of facts

21   to support class certification.  And that, I think, is

22   related to this timeliness issue.  Because if he had moved

23   in a timely fashion perhaps he could have claimants that

24   would fit.

25          A third factor the Court said look to is whether to

Page 57

1    -- upon whether to apply Rule 7023 is whether the class was

2    certified prepetition and whether the class was given

3    adequate notice of the bankruptcy case and the bar date.

4    Here, there was not a prepetition class certified, of

5    course, and here all of these claimants did receive notice

6    of the bar date because they filed claims before the bar

7    date.  And as I've said, we have noted evidence that we're

8    happy to provide.  But the purpose of a class action is not

9    to cure some sort of a notice issue.  If there's a notice

10   issue, that's something that needs to be addressed in

11   another way.

12        This is actually, Your Honor, an effort to short

13   circuit the showing of excusable neglect that would normally

14   be required by Bankruptcy Rules 9006(b)(1) and 9002(4),

15   which would be the mechanism for someone who said I didn't

16   get notice and I needed to come in.  That mechanism still

17   exists, Your Honor.

18        And I have mentioned the fact the Court has

19   previously and consistently rejected people whose only

20   explanation was that they just didn't get here in time, when

21   they had notice.

22        A fourth factor that the Courts have considered in

23   deciding whether to apply Rule 7023 is whether the

24   application of Rule 23 would deter future wrongdoing.

25   Obviously in liquidation, there's no future wrongdoing to be

Page 58

1     deterred, so that doesn't help.

2              A fifth factor the Courts have considered is

3     whether application of Rule 23 would frustrate the

4     expeditious administration of assets.  That's actually

5     particularly important here, Your Honor, because one of the

6     things that is happening is that as these claims are

7     reclassified, reserves are opened up, and there's going to

8     be a distribution as the Court mentioned normally at the end

9     of September, it'll be the first of October because of the

10    dates this year.

11             The -- at this far -- at this point, Your Honor,

12    and this can be determined by -- as we noted in our class

13    response by looking at the claims and adding them up, a

14    number of claims would be reclassified and should be

15    reclassified we believe today, Your Honor, including those

16    who had to file their response on the same day the class

17    motion was filed.  So they certainly could not have relied

18    on the class motion in any way.  And those claims will be

19    almost $100 million of reserves.

20             If the class were certified one of the consequences

21    is that $100 million reserves has to be held and not

22    distributed, not considered in the distribution that's

23    coming up.  So it will reduce everybody's distribution some.

24    So the idea that this will gum up the works is very real

25    here.  This class motion would gum up the works on that

1     distribution.

2          A sixth factor the Courts have considered in

3     deciding whether to apply Rule 7023 is whether application

4     of Rule 23 would show a benefit to the class that justifies

5     the cost to the estate, and therefore to the other claimants

6     of defending the class action.

7          Mr. Schager referred to the Ephedra case.  I think

8     the Court well noted in that case that quote, the only real

9     beneficiaries of applying Rule 23 would be the lawyers

10    representing the class, close quote.  We believe that's the

11    only real consequence here, is that there will be a claim

12    for legal fees on behalf of these class representatives,

13    that otherwise would not be available.

14          And here, because we have consented to nine

15    claimants joining the punitive class, by representative's

16    response, the numbers have changed a little by the way in

17    our response, Your Honor, and I want to clarify that because

18    we've consented to another person.  Eighty-five percent of

19    the class members whose claims were subject to the 313th or

20    319th omnibus objection failed to respond.  So the vast

21    majority of punitive class members have -- would be

22    reclassified as equity interests.

23          Class certification should also be denied, Your

24    Honor, even if you decided to apply Rule 7023 which the

25    reasons you've set forth, we think you should not exercise

Page 60

1    your discretion to do because it just doesn't meet the

2    requirements of Rule 23.

3           There are four basic requirements, they have the

4    burden of proving each of those requirements.  There's an

5    issue on the numerosity I don't think the Court needs to

6    turn on numerosity.  The -- those who have filed responses

7    as opposed to those who have not, if you count them in the

8    numerosity, it's actually probably less than 40.  But if you

9    take the people who have not filed responses yet, then

10   numerosity is probably satisfied.

11          But typicality cannot be satisfied because when you

12   -- you have to take subclasses, and you have the subclasses

13   of those who did respond and those who didn't respond.  And

14   the class representatives are people who did respond and

15   they are not typical, and they don't have the same interests

16   as those in the class who did not respond.  And that has to

17   do with adequacy, the next requirement Rule 23(a)(4), the

18   representative parties will fairly and adequately protect

19   the interests of the class.

20          And a key point is whether there is a conflict of

21   interest.  There is a conflict of interest between those who

22   responded, even if they only sent a one line letter, and

23   they joined the litigation, and those who did not respond.

24   And there is no one here who did not respond who can speak

25   for them.  Mr. Schager is saying, he's going to have people

```
 1    who did respond actually take actions to reduce albeit, a

 2    small amount, their potential pot, if they recover by

 3    helping those who didn't respond.  So adequacy cannot be

 4    met, and that undermines the requirements of that branch of

 5    the rule in 23(a).

 6          The elements of 23(b) also have not been satisfied.

 7    23(b)(1) is limited to cases seeking injunctive relief, not

 8    claims for monetary damages.  These are claims for monetary

 9    relief.  That's what this is all about.  There's no

10    declaratory judgment, there's no injunction.

11          23(b)(3), which is the subhead that would apply has

12    a superiority requirement.  And it also has a predominance

13    requirement.  We certainly agree that there are -- there is

14    some commonality of issues between these parties, that's

15    clear.  But as the Court's pointed out, that commonality is

16    one of the reasons why this is not superior.

17          Law of the case will take care of the resolution of

18    the legal issues.  And it's not necessary to create a class

19    to deal with that in some different way.

20          In general, the Bankruptcy Code and bankruptcy

21    rules provide the same benefits and serve the same purposes

22    as class action procedures in normal civil litigation.  And

23    we cite in support of that, Your Honor, the In Re Woodward

24    and Loafer Holdings, Inc. (ph), a case which notes, quote, a

25    bankruptcy proceeding offers the same procedural advantages
```

Page 62

1    as a class action, because it concentrates all of the

2    disputes in one forum, which was the same point you made

3    before, Your Honor, in one of your transcript rulings.

4           And in many respects, the bankruptcy proceeding is

5    superior.  The Court need not certify a class because for --

6    from efficient management, because we have the procedures

7    order that we've already presented to the Court, and we have

8    the separation which the Court has talked about between the

9    3,100 claimants who have been dealt with we believe fairly

10   under bankruptcy procedures, and those -- this subgroup that

11   Mr. Schager would put in a completely different category and

12   deal with it in a different way.

13          There's really not a response to the superiority

14   argument in the reply, and I didn't hear one from Mr.

15   Schager.  The reply simply says, "adjudicating individual

16   claims would consume judicial resources and would be

17   impractical."  In fact, it's not going to consume additional

18   resources or be impractical.  What will consume additional

19   resources is to have to go through a class notice and the

20   other procedures that are required by Rule 23.

21          Finally, Your Honor, under the third major test,

22   class certification would be inconsistent with the goals of

23   bankruptcy.  This would add layers of procedural complexity.

24   The Northwest Airlines Corporation case is a good example of

25   a case in which a Court concluded that it was particularly

Page 63

1     inappropriate post confirmation to deal with a class in the

2     post confirmation era.  The Court had already confirmed a

3     reorganization plan there.  And here, LBHI has already made

4     initial plan distribution to holders of over 12,000 claims

5     and class status would delay that process for $100 million

6     worth of reserves.

7              The -- there are really no cases that claimants

8     cite from this district, other than cases involving joint

9     motions for settlement purposes only, or where the class

10    action device has been found to be superior in a bankruptcy

11    context that is anything comparable to this.

12             For all these independent reasons, Your Honor, we

13    believe that a class certification is unnecessary and

14    inappropriate, and would actually be destructive to the

15    orderly administration of the case, and ask that the class

16    motion be denied.

17             THE COURT:  Is there anything more?

18             MR. SCHAGER:  Your Honor, may I address two brief

19    points?

20             THE COURT:  Sure.

21             MR. SCHAGER:  I beg your pardon.  The Ephedra Twin

22    Labs case, Your Honor, and the Woodward and Lothrop (ph)

23    cases, I just would say very briefly that those were both

24    cases where the class certification motion was made at a

25    much later time in the proceeding than this one.

Page 64

1          And I've given the reasons, I think a lot of the

2     reasons why class certification is not used in bankruptcy

3     might have been considered if we'd made our motion with the

4     130th omnibus objection.  But I think, you know, I've done

5     my best to give Your Honor the facts.  I think the facts

6     warrant a different view at this point.  And I recognize the

7     skepticism with which bankruptcy courts address class

8     certification motions, but I think it's warranted here by

9     the facts that we've submitted about inadequacy of notice

10    and the -- both in terms of mailing and substance.

11          In terms of typicality, you know, these are all --

12    as defense counsel or debtor's counsel concedes, these are

13    all claims for monetary relief.  The fact that someone had

14    the resources to stand up and say, I'm willing to represent

15    those who don't have the resources does not put him in a

16    conflict position.  It's almost implicit here, and it's

17    actually referenced in one of the opening paragraphs of the

18    debtor's brief that it's suggesting that there's a pie

19    that's being offered here to the class representatives if

20    they don't proceed a class basis.  And that's clearly not

21    what's happening here.  And it clearly disregards the whole

22    economic analysis of why class actions proceed in this

23    context.

24          Of course, I recognize that typically in a class

25    action, you have a class complaint.  That's not the

Page 65

1   circumstances of where we are now.  And every class member

2   would have an opportunity to opt out, that's always the case

3   in class action practice.  No one's being locked into

4   anything if really do not want to proceed.  So there's no

5   basis for saying that these claims are not typical.

6          It's paragraph three of the brief, Your Honor, that

7   says that claims could potentially recover more if the

8   defaulting class members are not included.  I -- you know,

9   there's -- you don't have to cut the pie in so many slices,

10  but there's no pie offered here.  And the economics are that

11  going ahead on a class-wide basis is what justifies the

12  class action.

13         The suggestion, Your Honor, that somehow counsel

14  would benefit if the class does not, I've expressed my view

15  of that in the papers.  It's clearly inappropriate.

16         And finally, the point that this is going to gum up

17  the works because there's $100,000 -- a $100 million in

18  reserves, well the whole point, Your Honor, of course, is

19  the $100 million ought to go to the right people.  And if we

20  don't have a class certification here, some of the deserving

21  people are not going to get their fair share of it.

22         I appreciate your patience, Your Honor, thank you.

23         THE COURT:  Okay.  I've given this matter quite a

24  lot of thought, not only during the argument, but in

25  preparation for it, and I've read the papers.  Additionally,

Page 66

1    there is a very significant recent case of the United States

2    Court of Appeals for the Fourth Circuit that no one cited,

3    but that I reviewed with some care as well.  It's the Fourth

4    Circuit's decision arising out of the Circuit City Store

5    bankruptcy case.  The case is Gentry versus Segal, that's

6    Alfred H. Segal in his capacity as trustee of the Circuit

7    City Stores Liquidating Trust.

8            The case is probably now the leading circuit

9    authority on class actions in the context of a bankruptcy

10   claims process.  And is particularly instructive in dealing

11   with the interplay of Civil Rule 23, which governs class

12   action practice and Rule 9014 that might under certain

13   circumstances apply Rule 23 to contested matters, as opposed

14   to adversary proceedings.

15           Nobody spent any time today in argument discussing

16   the setting in which this arises, which is somewhat unusual,

17   in that it is arising in the context of a contested matter

18   or series of contested matters rather than in the context of

19   an adversary proceeding.  I really don't need to get into

20   that, however.

21           What the Circuit City decision effectively does is

22   to discount the various technical arguments made by Lehman

23   in reference to the application of Rule 23 in a contested

24   matter.  I'm not going to discuss the case except for one

25   sentence that I think is a significant guiding principle.

Page 67

1           "Each bankruptcy case must be assessed on a case-

2     by-case basis to determine whether allowing a class action

3     to proceed would be superior to using the bankruptcy claims'

4     process."  That appears on page 7 of the LexisNexis site.  I

5     can't tell you off the top of my head what the correct cite

6     would be in its regular reporter, but the case is cited at

7     668 F.3d 83.

8           The point of the sentence is instructive for me in

9     this case.  The question beyond technicalities is whether

10    allowing a class action to proceed would be superior to the

11    claims process applicable in the particular bankruptcy case

12    that's being administered by the Court.

13          Here it is clear to me that the claims process

14    itself is superior to any class action, and indeed, the very

15    order that I have just agreed to enter in reference to

16    discovery procedures in connection with omnibus objections

17    to the reclassification of proofs of claim as equity

18    interests makes clear that the claims administration process

19    is sufficiently flexible and advanced at this point, to

20    permit those individuals that have lodged objections to the

21    omnibus objections of the debtor may proceed in the ordinary

22    course to deal with their claims.

23          Additionally for reasons that I am emphasized

24    during my colloquy with counsel, to grant the class

25    certification motion at this late stage of the process leads

Page 68

1     to a series of distortions in the treatment of similarly

2     situated creditors, it simply isn't justified or

3     appropriate.

4           We are in the midst of a claims allowance and

5     classification process in the largest bankruptcy case in the

6     history of the United States.  The claims process has

7     consumed already an enormous amount of judicial resources

8     and legal resources.  And without yet being in a position to

9     assess the success of the process, in some respects, the

10    events of this year demonstrate that the process has worked

11    well and continues to work well.

12          Those events include the initial distribution to

13    creditors that took place in the first quarter, and the next

14    distribution that is scheduled to take place at the

15    beginning of October.  To the best of my recollection, as of

16    the bar date, and these are round numbers, something in

17    excess of $1.2 trillion in claims were filed against these

18    estates.  That's an extraordinary number.  Completely

19    unmanageable and filled with duplication and inappropriate

20    claims that needed to be weeded out.  The claims process has

21    run its course, not yet to the point of conclusion, and has

22    succeeded in eliminating inappropriate claims.

23          It remains to be determined whether the RSU and CSA

24    claims that are the subject of ongoing litigation will or

25    will not be included for purposes of future distributions.

1    But as to those claimants that have chosen not to object,

2    one thing is clear, they are not participating in

3    distributions that have been made or will be made in the

4    future.

5            That represents a final determination based on the

6    decision not to contest the omnibus objections.  To grant

7    class certification in a manner that would allow parties

8    that have not contested the omnibus objections to get the

9    same benefits as those individuals who have chosen to

10   object, would simply be unfair.  There's no justification

11   for it.  And it would raise serious questions as to the

12   fairness of treatment throughout this entire process.

13           The motion is denied substantially for the reasons

14   set forth in the papers that were filed by Lehman and for

15   the reasons discussed in these remarks from the bench.  I

16   will entertain an appropriate order.

17           MR. MILLER:  Thank you, Your Honor, we will do so.

18   Do you want to move on to the next agenda item or it appears

19   Mr. Schager may want to say something.

20           MR. SCHAGER:  No, I just wanted to thank His Honor

21   for his patience.

22           MR. MILLER:  The next agenda item will be handled

23   by Mr. Bernstein, Your Honor.

24           THE COURT:  Okay.

25           MR. BERNSTEIN:  Mark Bernstein from Weil again, on

Page 70

1    behalf of LBHI.  Your Honor, the last two items on the

2    agenda are the 313th and 319th omnibus objections.  We are

3    seeking to go forward today on only an uncontested basis for

4    those claimants that did not reply.  We did receive some

5    late replies as Mr. Miller references, eight on behalf of

6    Mr. Schager's clients, and one on behalf of Ms. Solomon's

7    clients.  We are adjourning those and deeming those timely

8    filed, and we're only going forward with claimants for which

9    no response was received.

10        I did receive just a moment ago, someone handed to

11   me in the courtroom, a letter signed by -- and I'm going to

12   butcher the name, but Virgilio Kosupole, II (ph), and that

13   he did not have time to reply to the objection because he's

14   out of town, and this is his response.

15        This creditor is not on either the 313th or 319th

16   omnibus objections at all.  I'm not exactly sure what this

17   relates to.  I'm happy to talk to this creditor after the

18   hearing, but this has no bearing on the request to enter the

19   313th and 319th on an uncontested basis.

20        THE COURT:  The 313 and 319 omnibus objections are

21   granted on an uncontested basis with the understanding that

22   the letter just described does not apply to either of those

23   objections.

24        MR. KOSUPOLE:  Your Honor, may I requested for

25   permission to speak because I was the person who --

Page 71

1          THE COURT:  You'll have to come forward so that you

2    can be heard.

3          MR. KOSUPOLE:  Good morning, Your Honor.  I'm

4    Virgilio Kosupole.  I'm a former Lehman employee and I'm

5    representing -- one of those claimants, RSU claimants like 5

6    to 10,000 claims, Your Honor, and I took my half day off to

7    attend this hearing because I receive a letter from the LBHI

8    attorneys on August 8, but I was out of town.  And I only

9    have a -- I wasn't able to file the opposition deadline on

10   August 16, but I'm here today, Your Honor, to oppose the

11   objection for the motion to reclassify my -- the asset

12   equity, the -- I was opposing the objection for to classify

13   the proof of claims as equity under this bankruptcy hearing,

14   Your Honor.

15         THE COURT:  Mr. Bernstein, can you at least

16   identify what this relates to?

17         MR. BERNSTEIN:  I'm not really able to from the

18   letter.  The August 16th deadline that he refers to was the

19   deadline for responding to the procedures, the discovery

20   procedures motion.  So I can guess that's maybe the papers

21   that he received.  But just from this, I don't know.

22         THE COURT:  Well, I'm going to suggest that since

23   you're here, and you took half a day off, that you use the

24   opportunity of being with counsel for the debtor to at least

25   identify, if you can, what this all relates to and make sure

Page 72

1    that your objection is timely lodged against whatever claim

2    you're trying to protect.  I don't know what it relates to

3    yet.

4              MR. BERNSTEIN:  To the extent he has filed a

5    response to a prior objection he's -- it'll be adjourned

6    like all other responses we've received.  To the extent he's

7    on a prior objection for an order that has already been

8    entered --

9              THE COURT:  Then we'll have to deal with.

10             MR. BERNSTEIN:  -- we'll have to deal with it.

11             THE COURT:  Okay.

12             MR. BERNSTEIN:  That's all we have on the agenda

13   for today.

14             Okay.  So the motion that he does have is the

15   motion to establish the procedures, so not a motion seeking

16   to expunge his claims.  So this was a response to that.  I

17   can speak with this creditor afterwards and explain it.

18             THE COURT:  Fine.  What this tends to demonstrate,

19   however, is that there is an ample opportunity for confusion

20   when legal documents are sent to both lawyers and non-

21   lawyers.  And hopefully as we move forward with the

22   discovery procedures that have been approved, that the

23   parties will be able, especially dealing with pro se

24   claimants to make those procedures as understandable and

25   user friendly as possible.

1            MR. BERNSTEIN:  Sure.

2            THE COURT:  All right.  We're adjourned for today.

3            MR. BERNSTEIN:  Thank you, Your Honor.

4       (Whereupon, the proceedings concluded at 11:51 AM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    R U L I N G S

2

3   DESCRIPTION                            PAGE    LINE

4   Trustee's Motion for Authorization        9      21

5   to sell shares of Navigator Holdings,

6   LTD. and related relief

7

8   Motion for Authorization to settle       11      17

9   certain prepetition derivatives

10  contracts with trusts for which Deutsche

11  Bank National Trust Company serves as

12  indenture trustee and related relief

13

14  One Hundred Twelfth Omnibus Objection     13      13

15  to claims

16

17  Debtor's Three Hundred Twenty-First       15       6

18  Omnibus Objection to claims

19

20

21

22

23

24

25

Page 75

1                         R U L I N G S, CONTD.

2

3    DESCRIPTION                                    PAGE    LINE

4    Motion to establish and implement              29      13

5    procedures in connection with omnibus

6    objections to reclassify proofs of claim

7    as equity interests with proposed order

8    establishing discovery procedures in

9    connection with omnibus objections

10   to reclassify proofs of claim as equity

11   interests

12

13   Motion to certify a class of RSU and           65      23

14   CSA claimants, appoint class counsel and

15   class representatives and approve the form

16   and manner of notice

17

18   Three Hundred Thirteenth Omnibus               70      20

19   Objection to claims (to reclassify proofs

20   of claim as equity interests)

21

22   Three Hundred Nineteenth Omnibus               70      20

23   objection to claims

24

25

Page 76

1              C E R T I F I C A T I O N

2

        I, Sheila G. Orms, certify that the foregoing is a correct

3      transcript from the official electronic sound recording of

4      the proceedings in the above-entitled matter.

5

6      Dated:  August 24, 2012

7      Shelia G. Orms
                        Digitally signed by Shelia G. Orms
                        DN: cn=Shelia G. Orms, o=Veritext, ou,
8                       email=digital@veritext.com, c=US
                        Date: 2012.08.27 10:45:51 -04'00'

9      Signature of Approved Transcriber

10

11

       Veritext

12

       200 Old Country Road

13

       Suite 580

14

       Mineola, NY 11501

15

16

17

18

19

20

21

22

23

24

25