MORRISON COHEN LLP
Joseph T. Moldovan
Neil Y. Siegel
909 Third Avenue
New York, New 10022
Telephone: (212) 735-8600

*Counsel to Charles C. Moore and*
*Edward Park*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                                : Chapter 11 Case No.
                                                     :
                                                     :
LEHMAN BROTHERS HOLDINGS INC., et al  : 08-13555 (JMP)
                                                     :
                              Debtors.        : (Jointly Administered)
---------------------------------------------------------------x

**RESPONSE BY EDWARD PARK AND CHARLES C. MOORE TO
THE PLAN ADMINISTRATOR'S 315TH AND 318TH
OMNIBUS OBJECTIONS TO CLAIMS**

TO:   THE HONORABLE JAMES M. PECK
      UNITED STATES BANKRUPTCY JUDGE

Charles C. Moore ("Moore") and Edward Park ("Park"), by their counsel, Morrison Cohen, LLP, hereby respond to the 315th and 318th Omnibus Claims Objections (together, the "Objections") filed by Lehman Brothers Holdings, Inc. ("LBHI" or "Holdings") as the Plan Administrator, as follows:

**I.    PRELIMINARY STATEMENT**

1.    Mr. Moore and Mr. Park served as Managing Directors of LBHI's Merchant Banking Group. The Merchant Banking Group was not a separate legal entity, but a unit within LBHI. Each of Mr. Moore and Mr. Park was a party to an employment contract with "Lehman

#4046114 v5 \017918 \0002

1

Brothers," which was defined in each employment contract as the "Firm." The "Employment Contracts" are attached as Exhibit A. The Employment Contracts were both signed by an LBHI executive, and both listed as the business address LBHI's executive offices. Senior employees in the merchant banking division understood that they were employed by LBHI. Following LBHI's post-petition sale of the merchant banking business, Messrs. Moore and Park filed claims against LBHI for unpaid compensation. Notwithstanding their dutiful service to LBHI, which resulted in the maintenance of an asset LBHI was able to sell post-petition, LBHI now objects to Messrs. Moore and Park's claims for unpaid compensation and carried interest. The objection, however, is without merit. Their "Claims" are attached as Exhibit B.

    2.  With respect to unpaid compensation, the Objections state, simply and without the support of any evidence, that Messrs. Moore and Park were employed by some unidentified non-debtor affiliates and therefore LBHI does not owe them any compensation. Vague and unsupported allegations, however, are not sufficient to support an objection to a claim. While not explicated in its papers, LBHI's argument must rest on a perceived ambiguity in the Employment Contracts, which LBHI drafted. In particular, LBHI must be focusing on the fact that each Employment Contract is on the letterhead of "Lehman Brothers" and not LBHI. Ambiguous terms, however, are to be construed against their drafter, and therefore to the extent that there is any ambiguity here, it is to be construed against LBHI, the draftsman. Moreover, where there is ambiguity, parole evidence is admissible. The overwhelming wealth of parole evidence is that the employment agreement is with LBHI. (The Employment Contracts do not contain a merger clause). Finally, even assuming that Messrs. Moore and Park were not direct employees of LBHI, there is no dispute that they were employed by of one arm of a closely-knit

#4046114 v5 \017918 \0002

2

group of corporate entities and understood that they were LBHI employees. As such, the single employer doctrine applies and the affiliated corporation, here LBHI, is jointly responsible for the acts of the immediate employer, and therefore responsible for any unpaid compensation.

3. With respect to carried interest, the Objections imply that because carried interest is calculated based on returns of particular funds, the funds themselves and not LBHI are liable to the claimants. The Debtors, however, miss the point. Pursuant to the employment agreements, if Messrs. Park and Moore are not terminated for cause, both LBHI employees are entitled to share in carried interest. However, because LBHI refused to permit the underlying funds to make deals, and then sold the funds, LBHI's actions robbed Messrs. Park and Moore of their opportunity to participate in the carried interest.

4. LBHI employed Messrs. Park and Moore (and their employment continued into the post-petition period). LBHI enjoyed the benefits of their services, and even sold the funds Messrs. Park and Moore managed during the course of these bankruptcy proceedings. LBHI cannot now disallow the claims of these employees based solely on its vague assertions that the amounts are owed by non-debtors.

## II.    FACTUAL BACKGROUND

**A.    Mr. Moore**

5. In early 2008, Mr. Moore joined the Merchant Banking Group of the Private Equity Investment Division of LBHI, as a Managing Director. LBHI's agreement to retain Mr. Moore was memorialized in an employment agreement dated January 20, 2008 (the "Moore Employment Contract"). Pursuant to the Moore Employment Contract, Mr. Moore's start date would be on or about February 28, 2008.

6. As set forth in the Moore Employment Contract, Mr. Moore would earn a base salary of $200,000. Mr. Moore would also be entitled to numerous types of incentive based compensation. First, for the 2008 performance year (commencing on Mr. Moore's start date and ending on November 30, 2008) and the 2009 performance year (commencing on December 1, 2008 and ending on November 30, 2009) Mr. Moore was to receive a performance bonus of not less than $1.8 million per bonus period, bringing his guaranteed compensation to $2 million per year. Second, and at the Firm's discretion, a portion of his compensation could be payable in conditional equity awards. Third, provided that he remained with the Firm and was not terminated for "cause," Mr. Moore was eligible to purchase a portion of the Firm's share of the profits (the "Carried Interest") in Lehman Brothers Merchant Banking Partners IV. If Mr. Moore was terminated without "Cause," he immediately became fully vested in his right to Carried Interest through the date of termination. See Moore Employment Contract at 2.

7. Mr. Moore dutifully performed the required services for his employer.

8. On or about April 9, 2009, following the sale of its Merchant Banking division, LBHI terminated Mr. Moore without cause.

9. On September 22, 2009, Mr. Moore filed Proof of Claim No. 34234 (the "Moore POC"). Pursuant to the Moore POC, Mr. Moore is seeking payment of $1,928,767.12 in unpaid guaranteed compensation. Mr. Moore is withdrawing that portion of Claim no. 34234 that applies to Carried Interest.

**B.  Mr. Park**

10. In late 2007, Mr. Park joined the Merchant Banking Group of the Private Equity Investment Division of LBHI, as a Managing Director. LBHI's agreement to retain Mr. Park was memorialized in an employment agreement dated December 27, 2007 (the "Park

#4046114 v5 \017918 \0002

Employment Contract," and, together with the Moore Employment Contract, the "Employment Contracts"). Pursuant to the Park Employment Contract, Mr. Park's start date would be on or about January 2, 2008.

11. As set forth in the Park Employment Contract, Mr. Park would earn a base salary of $200,000. Mr. Park would also be entitled to numerous types of incentive based compensation. First, for the 2008 performance year (commencing on Mr. Park's start date and ending on November 30, 2008) and the 2009 performance year (commencing on December 1, 2008 and ending on November 30, 2009), Mr. Park was to receive a performance bonus of not less than $1.8 million per bonus period, bringing his guaranteed compensation to $2 million per year. Second, and at the Firm's discretion, a portion of his compensation could be payable in conditional equity awards. Third, provided that he remained with the Firm and was not terminated for "cause," Mr. Park was eligible to purchase a portion of the Carried Interest in Lehman Brothers Merchant Banking Partners IV. If Mr. Park was terminated without "Cause," he immediately became fully vested in his right to Carried Interest through the date of termination. See Park Employment Contract at 2.

12. Mr. Park dutifully performed the required services for his employer.

13. On or about April 10, 2009, following the sale of its Merchant Banking division, LBHI terminated Mr. Park without cause. .

14. On September 22, 2009, Mr. Park filed Proof of Claim No. 34235 (the "Park POC"). Pursuant to the Park POC, Mr. Park is seeking payment of $1,928,767.12 in unpaid guaranteed compensation, and $8,852,036.67 in unpaid Carried Interest.

#4046114 v5 \017918 \0002

C.   **Relevant Terms Of the Employment Agreements**

15.   The Moore Employment Contract and the Park Employment Contract are substantively similar. Each Employment Contract provides that the agreement is between Mr. Moore and Mr. Park, respectively, and "Lehman Brothers." Lehman Brothers is defined only as "the 'Firm.'" Employment Contracts at page 1, first sentence.

16.   Each Employment Contract is on "Lehman Brothers," letterhead. Pursuant to the Employment Contracts, Lehman Brothers had an address of 399 Park Avenue, 9th Floor, New York, New York 10022. Each Employment Contract was signed by Ruth E. Horowitz as Managing Director.

17.   Each Employment Contract further provides that Messrs. Moore and Park's employment was conditioned on approval of the Firm's "Board of Directors as part of the next quarterly approval process." Employment Contract at 1.

18.   While each Employment Contract sets forth that it is not for any set duration, each Employment Contract provides that its only terminable "subject to any applicable notice requirement," which provides for 30 days' advance notice by the Firm of any termination for any reason. See Employment Contracts at 2. Such notice was not given.

D.   **Structure of the LBHI Merchant Banking Division**

19.   Both Mr. Moore and Mr. Park were retained by the LBHI's Merchant Banking Group of the Private Equity Investment Division. Each of Mr. Moore and Mr. Park reported to Charles Ayres, Managing Director and head of Global Merchant Banking for Lehman Brothers, and to E. Daniel James, Mr. Ayers' immediate subordinate. Mr. Ayres served on the Lehman Brothers Investment Committee, and he reported to Michael Odrich, a Managing Director and the Head of the Private Equity business of LBHI. Mr. Odrich also served on the Lehman

#4046114 v5 \017918 \0002

Brothers Investment Committee. Mr. Odrich reported to George Walker, who served on the Executive Committee of the LBHI Board of Directors.

20. All Lehman Brothers Merchant Banking employees were LBHI employees. See Declaration of E. Daniel James, dated September 12, 2012, attached hereto as Exhibit C.

**E.     Sale of LBHI's Merchant Banking Business**

21. In 2009, Trilantic Capital Partners and a team led by Charles Ayers that included other LBHI employees, purchased LBHI's Merchant Banking business from LBHI. A copy of the official press release dated April 10, 2009 confirming this sale by LBHI is attached as Exhibit D.

22. At all times on or before the sale to Trilantic, LBHI directly or indirectly owned the various funds subject to the sale. At all times on or before the sale to Trilantic, Messrs. Moore and Park continued to manage some or all of these funds. Immediately following the sale, LBHI terminated Messrs. Moore and Park, who went to work for Trilantic.

**F.     Messrs. Moore and Park Were Not LBI Employees**

23. Although it is not stated in the Objection, presumably LBHI is suggesting that the non debtor affiliate that employed Messrs. Moore and Park is Lehman Brothers Inc. ("LBI"), LBHI's registered US broker dealer. Such an assertion would be without merit. Messrs. Moore and Park were not, at any time, employed by LBI. As this Court may be aware, following the acquisition of LBI's assets by Barclays Capital, LBI employees who moved over to Barclays were hired by Barclays and LBI employees who were needed at LBHI were offered employment contracts with LBHI. At no time following the Petition were Messrs. Moore and Park approached by Barclays Capital to join the bank as part of its acquisition of LBI's assets. At no time were Messrs. Moore and Park approached by the LBI trustee or his staff regarding

#4046114 v5 \017918 \0002

7

remaining at LBI to manage its remaining portfolios. At no time during the eight months they remained at LBHI prior to the sale of the Merchant Banking Division to Trilantic, were they offered employment contracts with LBHI. At all times, Messrs. Moore and Park performed their respective duties pursuant to the Employment Contracts signed well before the petition date.

### III.    ARGUMENT

#### A.    The Debtors Failed To Rebut The Presumption That The Claims Are Valid

24.     Section 502(a) of the Bankruptcy Code provides that a claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir.1992); *In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999)). A bankruptcy claim "cannot be defeated by mere formal objection and the sworn proof is to be treated as some evidence even when it is denied." *In re Sabre Shipping Corp.*, 299 F. Supp. 97, 99 (S.D.N.Y. 1969). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the validity and the amount of the claim." 4 L. King et al., *Collier on Bankruptcy* ¶502.03[3][f] (rev. ed. 2007). The objector must produce "evidence equal in force to the *prima facie* case" in order to succeed in its objection. *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

25.     The Debtors here have failed to satisfy their burden to present evidence sufficient to overcome the *prima facie* validity of the Proofs of Claim. The Objections contain *no* evidence

#4046114 v5 \017918 \0002

8

that would support the Debtors' base allegations that the amounts set forth in the proofs of claim are owed by other, non-debtor, entities, much less evidence sufficient to overcome the *prima facie* validity of the Proofs of Claim (which are supported by the Employment Contracts). Indeed, the Debtors fail to even suggest which non-debtor entity is liable to Messrs. Moore and Park. In the absence of any evidence in support of the Debtors' position, the Objections must be denied.

**B.    Messrs. Moore And Park Were Employed By LBHI, Which Is Obligated To Pay The Unpaid Salary**

26.    Assuming, for the sake of argument, that LBHI's unsupported allegations properly rebutted the prima facie validity of the Proofs of Claim, which they do not, the Debtors still would not be able to defeat Messers. Moore and Park's claims to unpaid compensation. The Debtors' sole suggestion is that some unnamed non-debtor entity owes the unpaid compensation. While not explicit in the Objections, the Debtors must be arguing that the Employment Contracts were between Messrs. Moore and Park and some other non-debtor entity. This argument, however, fails.

**1.    Parole Evidence Supports Moore and Park's Construction of the Employment Contracts**

27.    A Court need look no further than the "clear language" contained in the "four corners" of a contract if there is no ambiguity. *See R/S Assoc. v New York Job Dev. Auth.*, 98 N.Y.2d 29, 33 (2002). At all relevant times, Messrs. Moore and Park understood that "Lehman Brothers" meant LBHI. While clear to Messrs. Moore and Park, to the extent that "Lehman Brothers" is subject to multiple constructions, and therefore, "ambiguous" parole evidence demonstrates that LBHI is the counterparty to the contract. The parole evidence includes:

- Testimony from E. Daniel James, a senior member of the Merchant Banking division – and claimants' immediate superior, confirms that merchant banking employees were employed by LBHI. *See* Exhibit C, ¶ 7.

- Mr. James' testimony further confirms that references to the "Board" in the Employment Contracts are to LBHI's board. *See* Exhibit C, ¶ 6.

- An LBHI-created structure chart for MB Fund IV, the Fund managed by Messrs. Park and Moore, shows that as of September 12, 2008, the Fund was owned by LB I Group and Associates IV LLC, - both 100 percent subsidiaries of LBHI. *See* Exhibit E.

- SEC Forms 3 and 4 for Pacific Energy Partners LP filed by Advisers, LB I Group, and other members of the Lehman Brothers corporate family confirm that LB I Group, and Associates IV LLC were owned and controlled by LBHI.[1] *See* Exhibit F.

- Neither Mr. Moore nor Mr. Park were approached by Barclays when it purchased substantially all LBI's assets.

- Neither Mr. Moore nor Mr. Park were asked to sign new employment contracts with LBHI, or any other entity, following the Barclays sale.

- Both Mr. Moore and Mr. Park continued working uninterrupted by the Barclays Sale, which substantially ended LBI's operations.

- Each Employment Contract provides that "Lehman Brothers" has an address of 399 Park Avenue, 9th Floor, New York, New York 10022. SEC filings confirm that 399 Park Avenue was an address used by LBHI for certain executive offices. *See* Exhibit G, Schedule 13D for Transmontaigne, Inc., at pages 1, 2, 5, 6 and 13, and Exhibit G, SEC Form 4 for Pacific Energy Partners LP, for 11/15/06 at pages 1, 3, 4.

- Ruth Horowitz, who executed the Employment Contracts, was a Managing Director of LB I Group, Inc. (a wholly owned subsidiary of LBHI, not LBI) and a senior member of the Merchant Banking division. See Exhibit G, Schedule 13D for Transmontaigne, Inc., at pages 4, 5, 12.

---

[1] LBHI's SEC filings are admissions by a party opponent, and as such are admissible to prove the matter asserted. FRE 801(d)(2). Additionally, the Court may take judicial notice of LBHI's SEC filings under FRE 201. *See Kramer v. Time Warner, Inc.*, 937 F. 2d 767 (2nd Cir., 1991).

#4046114 v5 \017918 \0002

10

- LBHI's Amended Schedule G (Docket 3918) lists Ruth Horowitz (page 606), Mr. Moore (page 701) and Mr. Park (page 730), as counterparties to an executory restricted stock unit award agreement, which is a reference to the Employment Contracts' permitting part of their compensation to be paid out in the Firm's (i.e., LBHI's) securities – stated differently, the Firm would have to have multiple meanings if it were to have any meaning other than LBHI.

28. Notwithstanding the weight of evidence, and while not articulated in any of their pleadings, the Debtors likely will attempt to present their own evidence that "Lehman Brothers" means something other than LBHI. Most likely, the Debtors will rely on some combination of LBHI's pre-petition employee management system (i.e. PeopleSoft) and W-2 notices sent to Messrs. Moore and Park to demonstrate that claimants were employed by an entity other than LBHI. However, in light of admissions in the Debtors' pleadings before this Court, this "evidence" should be afforded no weight.

29. The Debtors' cash management motion, filed on the first day of these cases, explained that LBI had historically been the "paymaster" for most of Lehman's domestic operations, including expenses such as payroll for U.S. operations which were paid out of LBI bank accounts defined as "LBI Paymaster Accounts." According to the Debtors, these accounts were tied to sophisticated software and computer systems used for payroll processing (the "Payroll/Payable System"). The flow of funds was reflected in intercompany accounting. Of course because the payroll systems were linked to LBI bank accounts, both PeopleSoft and any documents generated thereby (including W-2 forms) would be generated from LBI. However, given that LBI was the paymaster for the majority of US entities, this fact alone carries little weight. At various times Claimants received W2 forms from LBI, LBHI, and Neuberger Berman – which like LBI also never employed claimants.

#4046114 v5 \017918 \0002

11

### 2. To The Extent The Employment Contracts Are Ambiguous, They Must Be Construed Against LBHI

30.     In the event of an ambiguity that cannot be cured through other means of construction, then any ambiguities are to be construed against the drafter. *See, e.g.*, *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985); *Herzog v. Williams*, 139 Misc.2d 18, 20, 526 N.Y.S.2d 329, 330 (Justice Ct.1988) (recognizing rule that ambiguities are construed against drafter and holding that rule applies where "all aids to construction have been employed without a satisfactory result").

31.     Assuming that the Court either finds the use of parole evidence inapplicable, or that the evidence does not clarify that "Lehman Brothers" means LBHI, the Court can resort to the default rule and construe the ambiguity in the Employment Contracts against the drafter, here LBHI.

### C. LBHI Is Jointly Liable To Moore and Park On Any Employment Claims

32.     Even assuming, against the great weight of evidence before the Court, that LBHI was not Messrs. Moore and Park's employer, LBHI is jointly responsible for their claims under the single employer rule.

33.     Affiliated companies are jointly responsible for debts to employees where there are "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of the aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Glenis Chin-McKenzie v Continuum Health Partners et al.*, 2012 U.S. Dist. LEXIS 91020 (S.D.N.Y., June 29, 2012), quoting *Schade v Coty, Inc.*, No. 00-cv-1568, 2001 U.S. Dist. LEXIS 8440, at *18

(S.D.N.Y. June 25, 2001) (citing, *inter alia*, *Herman v Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 308 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir.), *cert. denied*, 528 U.S. 1020 (1999)). A parent company can be linked to employment decisions if it controls "individual employment decisions." *Brown v Fred's, Inc.*, 494 F.3d 736 (8th Cir. 2007), *Lusk, et al v Foxmeyer Health Corporation*, 129 F. 3d 773 at *11 (5th Cir. 1997).

34.     As this Court has recognized, the Lehman entities were closely related such that their relationship merits special consideration in the context of these bankruptcy cases. *See Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited (In re Lehman Brothers Holdings Inc.)*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) (noting that, in part because of the closeness of the companies, the Lehman bankruptcies constituted a single event for the purposes of the application of the ipso facto doctrine, notwithstanding that the filings at issue were weeks apart). Here, there is also little question that LBHI was involved in the individual hiring decisions regarding the Merchant Banking division. The Employment Contracts state that Messrs. Moore and Park's employment is conditioned upon approval of the Firm's Executive Committee. Mr. James' uncontroverted testimony is that the references to the Firms' Board Executive Committee referenced LBHI's Executive Committee. Given the relationship between the corporate entities, and LBHI's involvement in the hiring of senior members, LBHI should be jointly liable on Messrs. Moore and Park's claims for unpaid compensation.

#4046114 v5 \017918 \0002

### D.     LBHI Is Obligated To Park For Unpaid Carried Interest

35.     A promisor, through words or actions, can "repudiate," or indicate that it will breach, a contract. *See*. 4 A. Corbin, Contracts § 959, p. 855 (1951); Restatement (Second) of Contracts (1979) ("Restatement") § 250 (repudiation entails a statement or "voluntary affirmative act" indicating that the promisor "will commit a breach" when performance becomes due). Repudiation ripens into a breach prior to the time for performance only if the promisee "elects to treat it as such." *See Roehm v. Horst*, 178 U. S. 1, 13 (1900) (repudiation "give[s] the promisee the right of electing either to . . . wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract"). *Franconia Associates v. United States*, 536 US 129, 142-43 (2002).

36.     It is axiomatic that one "who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised." 3A Corbin on Contracts § 767 at 540 (1961). Moreover, "[i]t is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." 5 Williston on Contracts § 677 at 224 (W. Jaeger, ed., 3d ed. 1961).

37.     LBHI here repudiated the Employment Contracts, thereby preventing Mr. Parks' ability to collect his Carried Interest. LBHI cannot now take advantage of its own breach. Pursuant to the Park Employment Contract, LBHI was obligated to pay carried interest to Mr.

#4046114 v5 \017918 \0002

14

Park provided that he was not terminated for cause. Moreover, the Park Employment Contract further provides that Mr. Park vests in his right to carried interest. There is no argument that Mr. Park was terminated for "cause" and therefore he was entitled to Carried Interest.

38. However, in early 2009, LBHI instructed the Merchant Banking division to not invest in new deals, which all but eliminated any new Carried Interest for Mr. Park. However, following the sale to Trilantic, the Funds were able to create new deals, and generate Carried Interest, which Mr. Park would have been able to share in had the Funds remained at LBHI. However, because LBHI sold the funds to Trilantic, Mr. Park was denied his right to participate in that Carried Interest. Lehman cannot now benefit from its disaffirmance of the obligation to seek out deals, and the expiration of its obligations to Mr. Park following the sale to Trilantic and is liable to Mr. Park in an amount equal to what he would have received but for LBHI's breach of contract.

#4046114 v5 \017918 \0002

## CONCLUSION

**WHEREFORE,** both Mr. Moore and Mr. Park respectfully request that the Debtors' 315th Omnibus Objection be denied in its entirety with respect to their claims. Further, Mr. Park respectfully requests that the Debtors' 318th Omnibus Objection be denied in its entirety with respect to his claim. Both Mr. Moore and Mr. Park further request that the court grant such other relief as the Court deems appropriate.

Dated: New York, New York
       September 13, 2012

                                      MORRISON COHEN LLP
                                      Attorneys for Charles Moore and
                                      Edward Park

                                      By: */s/ Joseph T. Moldovan*
                                      Joseph T. Moldovan
                                      Neil Y. Siegel
                                      909 Third Avenue
                                      New York, New 10022
                                      Telephone:  (212) 735-8600

#4046114 v5 \017918 \0002

MORRISON COHEN LLP
Joseph T. Moldovan
Neil Y. Siegel
909 Third Avenue
New York, New 10022
Telephone: (212) 735-8600

*Counsel to Charles Moore and*
*Edward Park*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al    :    08-13555 (JMP)
                                                   :
                            Debtors.    :    (Jointly Administered)
---------------------------------------------------------------x

## DECLARATION OF NEIL Y. SIEGEL

NEIL Y. SIEGEL hereby declares as follows:

1.  I am an associate at the law firm of Morrison Cohen, LLP. We represent Charles Moore and Edward Park, creditors in these chapter 11 proceedings. I make this declaration to submit documentary evidence referenced in Messrs. Moore and Park's Response to The Plan Administrator's 315th And 318th Omnibus Objections To Claims, filed contemporaneously herewith.

2.  Attached to the Response as Exhibit E is, to the best of my knowledge and understanding, a true and correct copy of a structure chart for MB Fund IV, the Fund managed by Messrs. Park and Moore.

#4048321 v1 \017918 \0002

1

I declare under penalty of pejury that the foregoing is true and correct.

Dated: New York, New York
       September 13, 2012

                                                    By: /s/ Neil Y. Siegel
                                                    Neil Y. Siegel

#4048321 v1 \017918 \0002