Madlyn Gleich Primoff, Esq.                    Hearing Date:
KAYE SCHOLER LLP                               September 27, 2012 at 10:00 a.m.
425 Park Avenue
New York, New York 10022
(212) 836-8000
mprimoff@kayescholer.com

*Attorneys for Spanish Broadcasting System, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:                                         Chapter 11

LEHMAN BROTHERS HOLDINGS INC., et al.,         Case No. 08-13555 (JMP)

                              Debtors.         Jointly Administered

-------------------------------------------------------------------------x

**RESPONSE OF SPANISH BROADCASTING SYSTEM, INC. TO THREE HUNDRED**
**TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY CLAIMS)**

        Spanish Broadcasting System, Inc. ("Spanish Broadcasting"), by and through its

undersigned attorneys, for its response to the Three Hundred Twenty-Eighth Omnibus Objection

to Claims (No Liability Claims) (the "Objection"), dated July 10, 2012, filed by Lehman

Brothers Holdings Inc. (the "Plan Administrator"), respectfully states as follows:

                            **PRELIMINARY STATEMENT**

        1.      Spanish Broadcasting suffered damages as a direct result of the failure of Lehman

Commercial Paper Inc. ("LCPI") to fund LCPI's $10 million portion of a $25 million draw

request under Spanish Broadcasting's revolving credit facility with LCPI.  The Plan

Administrator does not deny that LCPI failed to fund the draw request.  Rather, the Plan

Administrator asserts that Spanish Broadcasting's claims should be disallowed and expunged

60864867

because (i) Spanish Broadcasting seeks to recover "consequential damages" that Spanish Broadcasting allegedly waived under the Credit Agreement (as defined below); and (ii) Spanish Broadcasting does not have a right to recover fees it previously paid to LCPI because those fees were "fully earned."

2.      The Plan Administrator's arguments are unavailing for the reasons discussed more fully below.  The damages Spanish Broadcasting seeks are direct damages, not consequential damages.  In any event, the question of whether damages are direct or consequential is a question of fact that must be reserved for trial.  Alternatively, even if the damages sought by Spanish Broadcasting were determined to be consequential rather than direct damages, the consequential damages waiver upon which the Plan Administrator relies is unenforceable because (a) LCPI rejected the Credit Agreement and cannot "cherry pick" those provisions that it would like to keep and benefit from; and (b) each of Spanish Broadcasting's permissible remedies under the Credit Agreement "fails of its essential purpose."

3.      The Plan Administrator's argument that LCPI has "earned" the fees that Spanish Broadcasting paid to LCPI is also without merit.  Relevant case law, including several federal court of appeals level authorities, demonstrates that Spanish Broadcasting is entitled to recover the fees it paid in reliance on LCPI's promise to fund draws under the revolving credit facility.

4.      Spanish Broadcasting has plainly stated claims against LCPI that would survive a motion to dismiss under Fed. R. Bankr. P. 7012.  Should the Court decline to overrule the Objection and allow Spanish Broadcasting's claims at this time, Spanish Broadcasting respectfully submits that an evidentiary hearing will be needed to resolve the disputes between the Plan Administrator and Spanish Broadcasting.

60864867

**BACKGROUND**

**Spanish Broadcasting's Claims Against LCPI**

5.      Spanish Broadcasting and LCPI were parties to that certain First Lien Credit Agreement (the "Credit Agreement"), dated as of June 10, 2005, among, *inter alia*, Spanish Broadcasting, as borrower, and LCPI, as administrative agent and lender.[1]  The Credit Agreement included a term loan facility of $325,000,000 and a revolving credit facility of $25 million in the aggregate.  Section 4.16(b) of the Credit Agreement provided that the proceeds of the revolving credit facility "shall be used for working capital purposes, capital needs and general corporate purposes of the Borrower and its Subsidiaries . . . ."

6.      On October 3, 2008, Spanish Broadcasting submitted a draw request in accordance with the terms of the Credit Agreement for the entire $25 million of availability under the revolving credit facility.  While the other lenders under the Credit Agreement funded $15 million of the $25 million draw request, LCPI failed to fund its $10 million portion of the request.  Upon information and belief, LCPI commenced its case under chapter 11 of the Bankruptcy Code on or about October 5, 2008.  LCPI never funded its $10 million portion of Spanish Broadcasting's draw request (the "Draw Request").

7.      On November 3, 2011, Spanish Broadcasting filed proof of claim number 67707 (the "Proof of Claim") against LCPI, which amended Spanish Broadcasting's previously filed proof of claim number 15941.  As described in the Proof of Claim, which is attached hereto, Spanish Broadcasting's claims against LCPI consist of the following:

> (a)      $39,600,000 in damages on account of the larger-than-expected diminution in value of Spanish Broadcasting's common equity, preferred

---

[1]      The Credit Agreement, which is governed by New York law (§ 10.11), is annexed as Exhibit A to Spanish Broadcasting's Proof of Claim (as defined below), attached hereto as Exhibit 1 ("Ex. 1").

60864867

equity, long-term debt, cash and minority interests (the "Total Invested Capital Damages");

(b)    $9,886,745 in damages on account of settlement amounts that Spanish Broadcasting paid or is obligated to pay Lehman Brothers Special Financing, Inc. ("LBSF") under that certain Hedge Amendment and Settlement Agreement dated June 17, 2010 (the "Swap Termination Damages"); and

(c)    $273,333.33 in damages on account of fees that Spanish Broadcasting paid to LCPI for the $10 million revolver commitment that LCPI failed to fund (the "Fee Damages").

Ex. 1 (Proof of Claim), Ex. B (prepared by Capstone Advisory Group, LLC).

**Plan Administrator's Objection**

8.    On July 10, 2012, the Plan Administrator filed the Objection.  The Plan Administrator argues in the Objection that the Total Invested Capital Damages and the Swap Termination Damages should be disallowed and expunged because such damages are barred by Section 10.12(e) of the Credit Agreement, which contained a waiver of consequential damages (the "Consequential Damages Waiver").  Objection, ¶ 16.  Section 10.12(e) provided that Spanish Broadcasting "waives, to the maximum extent not prohibited by law, any right it may have to claim or recover . . . any special, exemplary, punitive or consequential damages."  Ex. 1 (Proof of Claim), Ex. A, § 10.12(e).  The Plan Administrator further argues that the Fee Damages should be disallowed and expunged because LCPI has "fully earned" the revolver fees that Spanish Broadcasting paid to LCPI.  Objection, ¶ 17.  For the reasons set forth at length below, Spanish Broadcasting respectfully submits that the Objection must be overruled.

**Procedure Applicable to the Proof of Claim and the Objection**

9.    On April 19, 2010, the Court entered the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for

Claims Against Debtors (the "Claims Procedures Order"). Pursuant to the Claims Procedures

Order, the Plan Administrator has noticed only a non-evidentiary hearing (the "Sufficiency

Hearing") to address the "legal sufficiency" of the Proof of Claim and whether the Proof of

Claim "states a claim" against LCPI under Fed. R. Bankr. P. 7012. Claims Procedures Order,

Ex. A, ¶ 4(a).[2] For the reasons set forth in the Proof of Claim and as described more fully below,

Spanish Broadcasting's claims not only are "sufficient" for purposes of the Sufficiency Hearing,

but also should be allowed and the Objection overruled.

### SPANISH BROADCASTING'S TOTAL INVESTED CAPITAL DAMAGES AND ITS SWAP TERMINATION DAMAGES SHOULD BE ALLOWED IN FULL

10.     Although the Plan Administrator argues that Spanish Broadcasting waived its

right to recover consequential damages, Spanish Broadcasting plainly has not waived any right to

claim or recover direct or general damages. Spanish Broadcasting respectfully submits that its

Total Invested Capital Damages as well as its Swap Termination Damages should be allowed in

their entirety because they are direct damages, not consequential damages. In the alternative,

LCPI should not be entitled to rely on or avail itself of the Consequential Damages Waiver

because (a) LCPI rejected the Credit Agreement and, having done so, it cannot now "cherry

pick" those provisions it would prefer to keep and benefit from; and (b) Spanish Broadcasting's

permissible remedies under the Credit Agreement "fail of their essential purpose."

---

[2]     The Claims Procedures Order requires service of a notice of merits hearing (the "Notice of Merits Hearing") before discovery and an evidentiary hearing can take place. Claims Procedures Order, Ex. A, ¶ 4(c). The Plan Administrator has not served a Notice of Merits Hearing upon Spanish Broadcasting and, therefore, has challenged only the "legal sufficiency" of the Proof of Claim.

60864867

A.    **The Total Invested Capital Damages and the Swap Termination Damages Are Direct Damages, Not Consequential Damages**

11.    Spanish Broadcasting's Proof of Claim states that it incurred damages as a result of LCPI's breach of the Credit Agreement.  Ex. 1 (Proof of Claim), ¶ 1.  Exhibit B to the Proof of Claim, which was prepared by Capstone Advisory Group, LLC ("Capstone"), contains a detailed analysis of Spanish Broadcasting's damages, including the Total Invested Capital Damages and the Swap Termination Damages.

12.    All of Spanish Broadcasting's damages are direct damages.  Direct (or general) damages are "those which are the natural and probable consequence of the breach" of contract.  *Am. List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 42-43 (N.Y. 1989); *Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1332 (N.Y. App. Div. 3d Dep't June 28, 2012).  In contrast, consequential (or special) damages "are extraordinary in that they do not so directly flow from the breach."  *Am. List Corp.*, 75 N.Y.2d at 43; *Latham Land I, LLC*, 96 A.D.3d at 1331.

1.    **The Question of Whether Spanish Broadcasting Seeks Direct or Consequential Damages Is an Issue of Fact That Requires an Evidentiary Hearing and Is Not a Matter for Determination at the Sufficiency Hearing**

13.    Of paramount importance for purposes of this Sufficiency Hearing is that the question of whether damages are direct or consequential is a question of fact that must be reserved for trial.  *See American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F. Supp. 435, 459-60 (S.D.N.Y. 1976) ("In general, the precise demarcation between direct and consequential damages is a question of fact . . . that must be left for resolution at trial."); *e.g.*, *Combustion Sys. Services, Inc. v. Schuykill Energy Res., Inc.*, No. CIV. A. 92-4228, 1993 WL 496946, at *2 (E.D. Pa. Nov. 19, 1993) ("The characterization of a particular claim for damages

6

60864867

as either direct or consequential is an issue of fact which is generally reserved for trial.")

(citations omitted); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, No.

88–CV–819, 1992 WL 121726, at *28 (N.D.N.Y. May 23, 1992) ("Generally, whether damages

are direct or consequential is an issue of fact which must be reserved for trial.").  The district

court in *Niagara* denied the defendant's motion for summary judgment, which motion was

predicated on a contractual waiver of consequential damages, because the question of "whether

damages (of any kind) are consequential is a fact issue."  *Niagara Mohawk Power*, 1992 WL

121726, at *28-*29, *42.  Based on these authorities, Spanish Broadcasting respectfully submits

that this Court should not rule on the direct or consequential nature of Spanish Broadcasting's

damages until it has conducted an evidentiary hearing (an "Evidentiary Hearing") and has had

"an opportunity to review the fully developed trial record," *id.* at *29, including but not limited

to testimony from Spanish Broadcasting's officers and Capstone.

14.    Furthermore, pursuant to the Claims Procedures Order, the standard of review to

be applied by the Court at the Sufficiency Hearing is equivalent to the standard of review to be

applied in considering a motion to dismiss for failure to state a claim.  Claims Procedures Order,

Ex. A, ¶ 4(a)(i).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and Fed. R.

Bankr. P. 7012(b), the court must accept the claimant's factual allegations as true and draw all

reasonable inferences in favor of the claimant.  *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706,

715 (2d Cir. 2011).  In deciding a motion to dismiss under Rule 12(b)(6), the issue is "not

'whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence

to support the claims.'"  *Sultan v. Read*, No. 03 Civ. 7462 (PKL), 2005 U.S. Dist. LEXIS 3133,

at *7 (S.D.N.Y. Mar. 1, 2005) (citation omitted).  Accordingly, the Court is required here, for

purposes of this Sufficiency Hearing, to accept all of Spanish Broadcasting's allegations as true

7

and draw all reasonable inferences in Spanish Broadcasting's favor, which compels the conclusion that Spanish Broadcasting is clearly entitled to offer evidence at an Evidentiary Hearing in support of its Proof of Claim.  *See id.* (Plan Administrator entitled to dismissal "**only if** 'it appears **beyond doubt**'" that claimant can prove **no set of facts** in support of its claim.) (emphasis added.)

### 2.    Spanish Broadcasting Will Conclusively Establish That the Damages It Seeks Are Direct Damages

15.    Spanish Broadcasting is entitled to put on testimony from its officers and Capstone in order to establish that its damages flow directly from LCPI's breach of the Credit Agreement.  Under Section 4.16(b) of the Credit Agreement, LCPI and Spanish Broadcasting expressly agreed that the proceeds from the revolving credit facility would be used for Spanish Broadcasting's working capital needs.  Spanish Broadcasting will show that, contrary to the Plan Administrator's assertions, the Total Invested Capital Damages and the Swap Termination Damages are direct damages.

### a.    The Total Invested Capital Damages Are Direct Damages

16.    LCPI's failure to fund the Draw Request caused Spanish Broadcasting to lack essential funds necessary for its general corporate purposes.  As a direct result of LCPI's failure to fund, Spanish Broadcasting suffered a diminution in the value of its total invested capital. LCPI and the other parties to the Credit Agreement expressly agreed that proceeds of the revolving credit facility would be used for "general corporate purposes" of Spanish Broadcasting.  Ex. 1 (Proof of Claim), Ex. A, § 4.16(b).  Since the Total Invested Capital Damages flowed directly from LCPI's breach, such damages are direct damages that are not barred by the Consequential Damages Waiver.

8

60864867

17.    The Plan Administrator's contention that the Total Invested Capital Damages are consequential is contrary to law and written commentary on this subject by the Plan Administrator's counsel.  Courts have held repeatedly that diminution in value damages are direct damages.  *See Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1332 (N.Y. App. Div. 3d Dep't June 28, 2012) (holding that "the diminution in value of the actual property defendant promised to improve and lease" were direct damages); *e.g.*, *FDIC v. Parkway Exec. Office Ctr.*, No. 96–121, 1998 WL 18204, at *6 (E.D. Pa. Jan. 9, 1998) (holding that diminution in value of building caused by lender's failure to fund constituted actual direct compensatory damages) (*discussing Employees' Retirement System of Alabama v. RTC*, 840 F.Supp. 972, 988 (S.D.N.Y. 1993) (holding that loss in market value of bonds caused by defendant's repudiation constituted actual direct compensatory damages)); *In re Miraj and Sons, Inc.*, 192 B.R. 297, 312 (Bankr. D. Mass. 1996) (holding that diminution in value of condominium units caused by lender's failure to fund constituted actual direct compensatory damages).

18.    In *Latham Land*, the plaintiff established that the defendant lessee breached its contractual obligation to construct and operate (for at least 10 years) a restaurant on plaintiff's real property.  With respect to damages, plaintiff introduced evidence that the value of its property following defendant's breach was lower than it would have been had defendant honored the lease agreement.  Plaintiff asserted that the difference in those values was a proper measure of damages.  *Latham Land I, LLC*, 96 A.D.3d at 1331.  The Supreme Court rejected this measure of damages and the Appellate Division reversed.  The Appellate Division held as follows:

> Plaintiff seeks to recover for expectation damages flowing from defendants' breach, i.e., the loss of the benefit of its bargain.  In our view, these are direct damages "which are the natural and probable consequence of the breach."

*Id.* at 1332 (internal quotation marks and citations omitted). Here, likewise, Spanish Broadcasting's damages are the natural and probable consequence of LCPI's failure to fund Spanish Broadcasting's Draw Request -- the proceeds of which Spanish Broadcasting had intended to use for working capital needs.

19. The United States Court of Appeals for the Second Circuit recognized the distinction between diminution in value damages (such as the Total Invested Capital Damages here) and consequential damages in *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010). In that case, a seller of goods challenged an arbitrator's award of diminution in value damages to a buyer where the parties were contractually barred from recovering consequential damages. *Id.* at 333. The Second Circuit concluded that "the arbitrator reasonably interpreted New York law to permit [the buyer] to recover the diminution in value" of the goods "notwithstanding the parties' contractual bar on consequential damages." *Id.* at 340. In this connection, the Second Circuit observed that, "The fact that the N.Y. U.C.C. addresses consequential damages [U.C.C. § 2-715(2)] in a separate section from diminution-in-value damages [U.C.C. § 2-714(2)] supports the inference that these two measures of damages are not necessarily equivalent." *Id.* The Court of Appeals thus held that a consequential damages waiver does not prevent a buyer from recovering diminution in value damages. *Id.*

20. Additionally, in an article on the subject of actual versus consequential damages, the Plan Administrator's counsel has expressly conceded that "[d]iminution in value is the **bedrock** of direct or general damages for breach of contract." *See* Glenn D. West, Sara G. Duran [both of Weil, Gotshal & Manges LLP], *Reassessing the "Consequences" of Consequential Damage Waivers in Acquisition Agreements*, 63 Bus. Law. 777, 806 (May 2008) (emphasis added), attached hereto as Exhibit 2. The Plan Administrator's counsel expressly

10

recommended in their article that parties not include "'diminution in value damages'" as part of a consequential damages waiver provision because the inclusion of "diminution in value damages" could bar "market-measured direct damages," which are "not consequential damages." *Id.* at 779. In the case at hand, the Consequential Damages Waiver set forth in Section 10.12 of the Credit Agreement makes no reference whatsoever to "diminution in value damages." Therefore, the Total Invested Capital Damages sought by Spanish Broadcasting are not barred by the Consequential Damages Waiver.

> **b.      The Swap Termination Damages Are Direct Damages**

21.      Spanish Broadcasting had intended to use a portion of the Draw Request to close out its obligations under that certain ISDA Master Agreement, dated as of June 28, 2005, between Spanish Broadcasting and LBSF (the "Swap"). *See* Ex. 1 (Proof of Claim), Ex. B at 1. The Credit Agreement provided that the proceeds of the revolving credit facility would be used for "capital needs" of Spanish Broadcasting. Ex. 1 (Proof of Claim), Ex. A, § 4.16(b). The funds necessary to close out the Swap plainly constituted "capital needs" of Spanish Broadcasting. LCPI's breach of the Credit Agreement by virtue of its failure to fund the Draw Request left Spanish Broadcasting without the capital necessary to terminate the Swap, thereby directly causing Spanish Broadcasting to suffer the Swap Termination Damages. Accordingly, LCPI is liable to Spanish Broadcasting for the Swap Termination Damages.

22.      As is the case with the Total Invested Capital Damages, the issue of whether the Swap Termination Damages are direct or consequential is a question of fact that cannot be resolved at the Sufficiency Hearing. Spanish Broadcasting is entitled to introduce evidence at a subsequent Evidentiary Hearing with respect to this issue of fact.

60864867

23.     In all events, the Plan Administrator's self-serving interpretation of the scope of the Consequential Damages Waiver should be rejected because a contractual limitation on liability "'should be strictly construed against the person seeking exemption from liability.'" *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 707 (S.D.N.Y. Feb. 6, 2012) (*quoting HealthExtras, Inc. v. SG Cowen Secs. Corp.*, No. 02 Civ. 9613 (RO), 2004 U.S. Dist. LEXIS 698, at *5 (S.D.N.Y. Jan. 20, 2004)).

> **B.     Even If the Total Invested Capital Damages and the Swap Termination Damages Were Held to Be Consequential Damages (Which They Are Not), the Objection Should Be Overruled Because the Consequential Damages Waiver Is Unenforceable**

24.     Assuming (but not conceding) that the Total Invested Capital Damages and the Swap Termination Damages were determined to be consequential rather than direct damages, LCPI may not rely on the Consequential Damages Waiver because it is unenforceable for at least two independent reasons:  (i) LCPI rejected the Credit Agreement in its entirety, including the Consequential Damages Waiver, and may not now "cherry pick" those provisions that it would prefer to keep and benefit from; and (ii) each of Spanish Broadcasting's permissible remedies under the Credit Agreement "fails of its essential purpose."

> **1.     The Consequential Damages Waiver Is Unenforceable Because LCPI Rejected the Credit Agreement**

25.     LCPI rejected the Credit Agreement as an executory contract.  Section 11.1 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") provided that all prepetition executory contracts that were not specifically assumed were deemed rejected as of March 6, 2012, the effective date of the Plan.

12

Since LCPI did not specifically assume the Credit Agreement under the Plan or otherwise, it was deemed rejected pursuant to the plain terms of the Plan.[3]

26.     Having rejected the Credit Agreement, LCPI and the Plan Administrator may not now invoke the Consequential Damages Waiver in an attempt to limit LCPI's liability thereunder.  Indeed, "under Section 365 of the [Bankruptcy] Code, a debtor may not 'cherry pick' pieces of contracts it wishes to assume."  *Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 844, 849 (S.D.N.Y. 1994); *e.g.*, *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. Mar. 6, 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.") (*citing* 3 COLLIER ON BANKRUPTCY § 365.03).  Thus, LCPI necessarily rejected the Consequential Damages Waiver when it rejected the Credit Agreement.  *See In re Ei Int'l*, 123 B.R. 64, 68 (Bankr. D. Idaho 1991) ("The rejection of an executory contract under 11 U.S.C. § 365 rejects the entire contract, including the damage provisions."); *e.g.*, *DSR, Inc. v. Manuel (In re Hamilton Roe Int'l)*, 162 B.R. 590, 596 (Bankr. M.D. Fla. 1993); *In re TransAmerican Natural Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987).

> **2.     The Consequential Damages Waiver Is Unenforceable Because Each of Spanish Broadcasting's Permissible Remedies Fails of Its Essential Purpose**

27.     The Consequential Damages Waiver is also unenforceable because each of Spanish Broadcasting's permissible remedies under the Credit Agreement fails of its essential

---

[3]     LCPI and certain affiliated debtors assumed revolving credit facilities with certain borrowers other than Spanish Broadcasting, as set forth in the "Schedule of Executory Contracts and Unexpired Leases to Be Assumed Pursuant to Section 11.1 of the Plan" attached to the Plan Supplement filed on October 25, 2011 (the "Plan Supplement").  For example, the Plan Supplement provided that LCPI would assume a certain "$900,000,000 Senior Secured Revolving Credit Agreement" between LCPI and AAA Investments LP.  Plan Supplement, Ex. 2, Part B at 1.  Thus, when LCPI and its affiliates wanted to assume their obligations under a revolving credit facility, they knew how to do so.

60864867

purpose.  The position adopted by the Plan Administrator in the Objection is that Spanish Broadcasting's sole remedy under the Credit Agreement is to recover direct damages based on LCPI's breach.  Yet, at the same time, the Plan Administrator has objected to and disclaimed liability for any and all damages, including direct damages, asserted by Spanish Broadcasting.  In short, the Plan Administrator seeks to leave Spanish Broadcasting without any remedy whatsoever.

28.    But this cannot be the case.  At a time when funds were essential to Spanish Broadcasting, LCPI plainly breached its obligations to fund the Draw Request.  Surely Spanish Broadcasting is entitled to a meaningful remedy for this material breach by LCPI.  Indeed, under analogous principles afforded under the UCC, if circumstances cause an exclusive or limited remedy to "fail of its essential purpose," then "remedy may be had as provided in" the UCC.  *See* UCC § 2-719(2).  In particular, consequential damages are available as a remedy under UCC § 2-715.  Thus, a buyer may recover consequential damages under the UCC, notwithstanding a waiver of consequential damages, if an exclusive or limited remedy fails of its essential purpose.

29.    Former Chief Judge Gonzalez of this Court  recognized previously in *Enron* that the failure of an exclusive remedy may preclude enforcement of a consequential damages waiver.  *See Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In Enron Corp.)*, 367 B.R. 384, 394 (Bankr. S.D.N.Y. 2007) (stating that "a buyer hardly would agree to limit the seller's liability for consequential damages if it had known that the seller would 'scuttle' the only remedies allowed under the contract."); *e.g.*, *Ragen Corp. v. Kearney & Trecker Corp.*, 912 F.2d 619, 625 (3d Cir. 1990); *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 832 (E.D. Pa. 2000).  Given that Spanish Broadcasting's permissible remedies have failed

14

of their essential purpose, Spanish Broadcasting is entitled to pursue any and all remedies for breach of contract, including consequential and special damages.

30.     As Judge Gonzalez also recognized in *Enron*, the issue of whether a remedy has failed of its essential purpose is a question of fact that survives a motion to dismiss. *In Enron Corp.*, 367 B.R. at 396-97. Therefore, Spanish Broadcasting should be afforded an opportunity to establish at an Evidentiary Hearing that its contractual remedies have failed of their essential purpose and, accordingly, the Consequential Damages Waiver is unenforceable.

## SPANISH BROADCASTING IS ENTITLED TO RECOVER THE FEE DAMAGES IN FULL

31.     The Plan Administrator contends that the Fee Damages should be disallowed and expunged because LCPI "fully earned" the fees that Spanish Broadcasting paid to LCPI for the $10 million Draw Request that LCPI failed to honor. However, the case law, including several federal court of appeals level precedents, supports the proposition that Spanish Broadcasting is entitled to recover the Fee Damages in full. *See Hidalgo Properties, Inc. v. Wachovia Mortgage Co.,* 617 F.2d 196, 198-99 (10th Cir. 1980) (lender's argument that it could retain commitment fee because it was "non-refundable" was held to be "totally without merit" where lender failed to fund under standby loan commitment); *e.g. Nashville Lodging Co. v. RTC,* 59 F.3d 236, 245 (D.C. Cir. 1995) ("[C]ourts presume that a breached contract would have benefited the non-breaching party by at least as much as that party was willing to lay out to secure its performance;") (*citing* Charles T. McCormick, *Handbook on the Law of Damages* § 142 at 584 and n.8 (1935)); *Coastland Corp. v. Third Nat'l Mortgage Co.,* 611 F.2d 969, 979 (4th Cir. 1979) (affirming award of permanent financing commitment fee as element of damages). Accordingly, Spanish Broadcasting is entitled to recover the Fee Damages in their entirety.

15

## CONCLUSION

WHEREFORE, Spanish Broadcasting respectfully requests that this Court enter an order

overruling the Objection, and granting Spanish Broadcasting such other and further relief as is

just and proper.

Dated: New York, New York
      September 13, 2012

                                    */s/ Madlyn Gleich Primoff*
                                    Madlyn Gleich Primoff, Esq.
                                    KAYE SCHOLER LLP
                                    425 Park Avenue
                                    New York, New York 10022
                                    (212) 836-8000
                                    mprimoff@kayescholer.com

                                    *Attorneys for Spanish Broadcasting System, Inc.*

16

60864867