Alex R. Rovira
Andrew P. Propps
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212)839-5300
Fax: (212)839-5599

*Counsel For Luxicav Obbligazionario,*
*Luxicav Plus Flex 35 and Luxicav*
*Plus Flex 50*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
                                                             :    Chapter 11
In re:                                                       :
                                                             :    Case No. 08-13555 (JMP)
Lehman Brothers Holdings Inc., *et al.*,                     :
                                                             :    (Jointly Administered)
                                        Debtors,             :
                                                             :
-------------------------------------------------------------X

## MOTION OF LUXICAV FOR RECONSIDERATION OF ORDER GRANTING DEBTORS' ONE HUNDRED SECOND OMNIBUS OBJECTION TO CLAIMS (FOREIGN CURRENCY CLAIMS)

TO:    THE HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE:

       Luxicav Obbligazionario, Luxicav Plus Flex 35 and Luxicav Plus Flex 50 (collectively

"Luxicav"), by and through their undersigned counsel, hereby file this Motion pursuant to

section 502(j) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3008 and

9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3008-1

of the Local Bankruptcy Rules for the Bankruptcy Court for the Southern District of New York

(the "Local Rules") for reconsideration of this Court's *Order Granting Debtors' One Hundred*

*Second Omnibus Objection to Claims (Foreign Currency Claims)* [Dkt. No. 16602], dated May

5, 2011 (the "Foreign Currency Disallowance Order").  In support of the Motion, Luxicav

respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Luxicav, a Luxembourg-based creditor of the above-captioned debtors, timely

filed proof of claim numbers 59055, 59056, and 59057 (the "Luxicav Claims") against Lehman

Brothers Holdings Inc. ("LBHI") based on Lehman Program Securities and made a minor

technical error in so doing: it denominated its *prima facie* valid and acknowledged claims in

Euros rather than in U.S. Dollars.  To be clear, Luxicav did not deliberately assert its claims in

Euros to insist that distributions on its claims be made in Euros, but rather it made the simple

mistake of listing the amounts of its claims in the same currency of the issued Lehman Program

Securities upon which the claims are based.

2.      Rather than provide a fair and reasonable process to remedy the technical error,

the Debtors moved to disallow and expunge in their entirety the Luxicav Claims and almost 200

other claims solely on the basis of the same mistake – that the amounts of the claims were

denominated in Euros rather than U.S. Dollars.  Both the Bankruptcy Code and those courts that

have addressed the issue of a claim asserted in a foreign currency provide that the remedy for

dealing with a claim asserted in a foreign currency is for the bankruptcy court to determine the

amount of the claim in U.S. Dollars rather than to outright disallow and expunge the claim.

3.      The Debtors could have made it easy on the Court by simply filing a motion or

objection seeking to modify and allow the claims in the amount of the claims converted to U.S.

Dollars with the fair and reasonable consequence of failing to respond to such motion or

objection being that the claim would be allowed in the converted amount rather than entirely

disallowed and expunged.  Instead, by filing the Omnibus Objection (defined below) to the

Luxicav Claims, the Debtors placed the Bankruptcy Court in the awkward position of entering an order that exceeds its authority under the Bankruptcy Code.

4.     In addition to the unfair and prejudicial procedure created by the Debtors to deal with claims submitted in a foreign currency, Luxicav did not even receive notice of the Omnibus Objection and therefore did not have an opportunity to timely respond to the Debtors' frivolous objection.  Supporting the frivolous nature of the basis for the objection is the fact that the hearing on the Omnibus Objection was not contested because it appears the Debtors withdrew the objection against every creditor that responded formally or informally (approximately 50 out of the over 200 mostly foreign creditors) and, upon information and belief, allowed such claims in the amounts asserted but converted to U.S. Dollars.  The disallowance of the Luxicav Claims, which are just as *prima facie* valid as those claims to which the Debtors withdrew their objection, is fundamentally unfair and provides an unjustified windfall to the Debtors' estates that should not be countenanced.

5.     After becoming aware of the disallowance of its claims, Luxicav, through its counsel, reached out to counsel for the Debtors seeking to reach an agreement to withdraw the Omnibus Objection against the Luxicav Claims given that it had not received notice of the objection and given the underlying merits of its *prima facie* claims.  Unable to reach agreement with the Debtors on the allowance of its claims, Luxicav files this motion respectfully requesting that the Court reconsider the Foreign Currency Disallowance Order, and/or allow the Luxicav Claims in the amounts of $709,500 for claim number 59055, $1,064,250 for claim number 59056, and $2,128,500 for claim number 59057 (the same amounts listed in the Luxicav Claims converted to U.S. Dollars using the exchange rate of 1.4190, the WM/Reuters Closing Spot Rate for Euros to U.S. Dollars on September 15, 2008).

## BACKGROUND

6.      On September 15, 2008, and periodically thereafter, LBHI and certain of its

affiliates (collectively with LBHI, the "Debtors") filed petitions under chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court").

7.      On July 2, 2009, the Bankruptcy Court entered its *Order Pursuant to Section*

*502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for*

*Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the*

*Proof of Claim Form* (the "Bar Date Order") [Dkt. No. 4271], establishing a deadline of

November 2, 2009, for the filing of proofs of claim relating to Lehman Program Securities (as

defined in the Bar Date Order).

8.      As further explained in the Declaration of Francesco Molaro, dated September 7,

2012 (the "Molaro Declaration"), attached hereto as Exhibit A, on October 30, 2009, Luxicav

timely filed the Luxicav Claims asserting claims against LBHI based on Lehman Program

Securities.  In submitting the Luxicav Claims, Luxicav provided all of the information necessary

to evidence *prima facie* valid proof of claims.

9.      On March 11, 2011, the Debtors filed their *One Hundred Second Omnibus*

*Objection to Claims (Foreign Currency Claims)* [Dkt. No. 14950] (the "Omnibus Objection"), in

which they objected to 202 claims, including the Luxicav Claims.  Although an employee of

Epiq Bankruptcy Solutions, LLC ("Epiq"), the Debtors' Claims and Noticing Agent, provided an

affidavit of service [Dkt. No. 15067] that alleges service of the Omnibus Objection upon Luxicav

– at its Luxembourg address – via first class mail on the same date, Luxicav never received

notice of the Omnibus Objection and thus never had an opportunity to respond to the Omnibus

Objection.  See Molaro Decl. ¶ 9.  Holders of a number of other claims apparently did receive

notice and filed responses to the Omnibus Objection in which they provided an exchange rate

and U.S. Dollar amount for their claims, and the Debtors withdrew their objections to those

claims.  See Foreign Currency Disallowance Order, Ex. 2.[1]

10.     On May 5, 2011, this Court entered the Foreign Currency Disallowance Order,

disallowing 151 of the 202 claims, including the Luxicav Claims, that the Debtors had objected

to in the Omnibus Objection.

11.     On December 6, 2011, this Court entered the *Order Confirming Modified Third*

*Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors*

[Dkt. No. 23023].  The Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors (the "Liquidation Plan") is a plan of liquidation that

provides for the orderly liquidation of the Debtors rather than a plan of reorganization.  Although

an initial distribution to allowed claim holders has been made pursuant to the Liquidation Plan,

the Debtors have not completed the claims resolution process and there remain significant assets

to be liquidated and distributed.  The Liquidation Plan provides for the liquidation of the

Debtors' assets within a three to six year period from March 6, 2012, which is the date the

Liquidation Plan became effective.

12.     As explained in the Molaro Declaration, Luxicav was made aware of the Foreign

Currency Disallowance Order earlier this year when it was in discussions with a potential buyer

---

[1] See, e.g., *Opposition to Debtors One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims),*
*In re: Claim No. 43159 filed by Chang Tsann Rong Ernest Et Liu Ai Lin* [Dkt. No. 16038]; *Opposition to Debtors*
*One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims), In re: Claim No(s). 51263 and*
*51264 filed by Wrytetime Limited* [Dkt. No. 16036]; *Response to Debtors One Hundred Second Omnibus*
*Objection to Claims (Foreign Currency Claims), In re: Claim No. 37580 filed by Hella Kohrs* [Dkt. No. 16035].

of the Luxicav Claims who, as part of its due diligence, uncovered and raised the disallowance of the Luxicav Claims pursuant to the Foreign Currency Disallowance Order.

13.    After discussions with its counsel and internally with management, Luxicav decided to raise the disallowance of its claims with Debtors' counsel.  Accordingly, counsel for Luxicav reached out to counsel for the Debtors in an attempt to amicably reach a resolution that would allow the Luxicav Claims given the technical objection to the claims and Luxicav having not received notice of the Omnibus Objection.  Counsel for the Debtors, however, refused to reach an agreement to allow the Luxicav Claims.

## RELIEF REQUESTED

14.    Pursuant to section 502(j) of the Bankruptcy Code, Bankruptcy Rules 3008 and 9024, and Local Rule 3008-1, Luxicav respectfully requests that this Court reconsider the Foreign Currency Disallowance Order and enter an order substantially in the form of Exhibit B, granting Luxicav a hearing to reconsider the Foreign Currency Disallowance Order as to the Luxicav Claims, or if the Court deems appropriate, allowing the Luxicav Claims in the amounts of $709,500 for claim number 59055, $1,064,250 for claim number 59056, and $2,128,500 for claim number 59057 (the same amounts listed in the Luxicav Claims, converted to U.S. Dollars using the exchange rate of 1.4190, the WM/Reuters Closing Spot Rate for Euros to U.S. Dollars on September 15, 2008).

## JURISDICTION AND VENUE

15.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

16.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

17.     This Court "has broad discretion to reconsider allowance or disallowance of

proofs of claim 502(j) 'for cause.'" <u>N.Y. Community Bank v. Smith (In re Smith)</u>, 305 Fed.

App'x 683, 684 (2d Cir. 2008) (summary order).  If the Court grants reconsideration, it "may

allow or disallow the claim 'according to the equities of the case.'" <u>Id.</u> at 684 (quoting 11 U.S.C.

§ 502(j)).  "While the determination of whether cause, within the meaning of Section 502(j), is

present, falls upon the equitable judgment of the court and is within the sound discretion of the

court, courts generally rely upon the language and interpretation of Federal Rules of Civil

Procedure 60(b)." <u>In re Johansmeyer</u>, 231 B.R. 467, 470 (Bankr. E.D.N.Y. 1999) (internal

quotations omitted); <u>see also</u> <u>In re Enron Corp.</u> ("<u>International Paper</u>"), 325 B.R. 114, 117

(Bankr. S.D.N.Y. 2005) (citing <u>McDuffy v. Novak (In re DeGeorge Fin. Corp.)</u>, No. 3:01-cv-

00009-CFD, 2002 WL 31096716, at *13 (D. Conn. July 15, 2002)).

18.     Rule 60(b) of the Federal Rules of Civil Procedure provides that:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not
> have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on
> an earlier judgment that has been reversed or vacated; or applying it
> prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

**I.    Reconsideration Should Be Granted Pursuant to Rule 60(b)(1) Because Luxicav's Failure to Object is Excusable**

19.    Courts in the Second Circuit impose a three-part test for relief under Rule 60(b)(1) on the grounds of excusable neglect.  "These factors include (1) whether the failure to respond was willful, (2) whether the movant had a legally supportable defense, and (3) the amount of prejudice that the non-movant would incur if the court granted the motion."  Int'l Paper, 325 B.R. at 118 (citing Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996)).  Because of "a strong preference that courts resolve disputes on their merits . . . . courts resolve any doubts in favor of the movant in order to increase the likelihood that disputes will be resolved on their merits."  Id. at 118 (citing Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001)).  Luxicav meets each of the requirements under Rule 60(b)(1) for reconsidering the disallowance of its claims.

20.    Luxicav's failure to respond to the Omnibus Objection was not willful.  In order for Luxicav's failure to respond to the Omnibus Objection to be willful, the Second Circuit requires "something more than just negligence or carelessness on the part of the movant."  In re Enron Corp. ("Penn Trustees"), 326 B.R. 46, 50-51 (Bankr. S.D.N.Y. 2005) (citing Am. Alliance Ins., 92 F.3d at 59).  Courts have consistently found that "[d]efaults caused by negligence may be excusable while defaults that occur as a result of deliberate conduct are not excusable."  In re Enron Creditors' Recovery Corp., No. 01-16034, 2007 WL 2480531, at *4 (Bankr. S.D.N.Y. Aug. 28, 2007); see also In re Enron, Inc., 325 B.R. 114, 118 (Bankr. S.D.N.Y. 2005).  Here, Luxicav was not even negligent or careless with regard to responding to the Omnibus Objection because it did not receive notice of the Omnibus Objection and was unaware of the Omnibus Objection until it was informed of the disallowance by a potential purchaser of the Luxicav Claims.  See Molaro Decl. ¶ 8.

8

21.    On March 16, 2011, the Debtors' claims agent filed an affidavit of service stating that it mailed notice of the Omnibus Objection to Luxicav via first class mail.  While "[i]t is a well settled principle that 'proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination,'" Hogarth v. New York City Health and Hospitals Corp., No. 97-CV-0625 (DAB), 2000 WL 375242, at *4 (S.D.N.Y. 2000) (citing Hagner v. United States, 52 S. Ct. 417, 419 (1932)), that presumption can be rebutted.  Specifically, a party rebuts that presumption when it provides "a sworn affidavit giving a detailed description of the mail procedures followed at a company for all incoming mail supporting the conclusion that the mail was never received."  Hogarth, 2000 WL 375242, at *4 (citing J. Gerber & Co., Inc. v. M/V Amer Shanti, No. 89-CV-6122 (RO), 1991 WL 8468, at *2 (S.D.N.Y. Jan. 18, 1991)); see also Gardner v. Honest Weight Food Co-op, Inc., 96 F. Supp. 2d 154, 159 (N.D.N.Y. 2000) (citing Hogarth, 2000 WL 375242, at *4).  As explained in the Molaro Declaration, Luxicav has specific procedures for receiving all incoming mail, which demonstrate that the Omnibus Objection was not received by Luxicav and Mr. Molaro confirms he did not receive the Omnibus Objection.

22.    In the Molaro Declaration, Mr. Molaro explains that all registered mail is entered on a written record and that all regular mail, while not logged upon receipt, is directed internally to the account manager for the fund it relates to.  See Molaro Decl. ¶ 10.  Mail originating in the United States as first-class mail is treated as "regular mail."  Because Mr. Molaro is the account manager for each of the Luxicav funds that filed the Luxicav Claims, pursuant to normal office procedures any mail relating to the Luxicav Claims would have been directed to him.  Id.  Mr. Molaro confirms he did not receive the Omnibus Objection, and after a review of office records relating to registered mail, Mr. Molaro has confirmed that there is no record of the receipt of the Omnibus Objection or the Foreign Currency Disallowance Order by registered mail.  See id. ¶

9

11.  Thus, Mr. Molaro's sworn testimony and the specific detail regarding Luxicav's standard

mail receipt procedures overcome the presumption of receipt from the Debtors' certificate of

service.

23.     Accordingly, Luxicav's failure to respond to the Omnibus Objection was "without

the requisite knowledge of the pendency of the action to have acted in a deliberate manner" and

therefore cannot be willful.  Penn Trustees, 326 B.R. at 52; see also In re Bicoastal Corp., 126

B.R. 613, 615 (Bankr. M.D. Fla. 1991) (reconsideration is appropriate under Rule 60(b)(1) where

presumption of receipt arguably had been rebutted, there was no showing of negligence, and

reconsideration would not impede the progress of the case).  Indeed, when Luxicav learned of

the Omnibus Objection and the Foreign Currency Disallowance Order, Luxicav promptly moved

to determine what course of action it should take to preserve the Luxicav Claims.

24.     Luxicav meets the second requirement under Rule 60(b)(1) because it has a

legally supportable defense in connection with the validity of the Luxicav Claims.  In order to

satisfy the second requirement under Rule 60(b)(1), a movant must "have a legally supportable

defense or position within the underlying litigation," which "need not be ultimately persuasive at

this stage."  Penn Trustees, 326 B.R. at 52-53 (quoting Am. Alliance Ins., 92 F.3d at 61).

25.     Section 3001(f) of the Bankruptcy Rules provides that "[a] proof of claim

executed and filed in accordance with these rules shall constitute *prima facie* evidence of the

validity and amount of the claim."  Here, Luxicav timely submitted the executed Luxicav Claims

prior to the deadline established by the Court's Bar Date Order.  Each of the proof of claims

forms was executed and provided sufficient information to evidence a *prima facie* claim against

LBHI based on the Lehman Program Securities, including: (i) the name and address of the

Luxicav Claimant; (ii) an estimate of the amount of the claim (albeit in Euros rather than in U.S.

Dollars); (iii) a valid International Securities Identification Number in order to identify the securities issuance that the claim related to; (iv) the applicable depository blocking reference number; and (v) the applicable depository participant account number.  Accordingly, Luxicav submitted sufficient information to constitute *prima facie* evidence of the validity and amount of the claims against LBHI and would be successful in proving such valid claims exist against LBHI.  See Bankruptcy Rule 3001(f); see also Carey v. Ernst (In re Ernst), 333 B.R. 666, 672 (S.D.N.Y. 2005) ("A properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim." (quoting Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000))).

26.    The Debtors have not provided, and cannot provide, any evidence to rebut the *prima facie* evidence of the validity of the Luxicav Claims.  Indeed, the Omnibus Objection does not rebut the validity or amount of the Luxicav Claims but rather seeks to disallow the claims because they are denominated in Euros rather than in U.S. Dollars.  Courts addressing the issue of a claim denominated in a foreign currency have consistently found that the appropriate remedy when a claim is denominated in a currency other than the lawful currency of the United States is to convert that claim to U.S. Dollars.  See, e.g., Finanz AG Zurich v. Banco Economico S.A, 192 F.3d 240, 250 (2d Cir. 1999) (noting that under United States bankruptcy law claims in a foreign currency are determined by converting them to U.S. dollars as of the date of filing of the petition; the court also suggests that a conversion process that would render a debt unenforceable or valueless may cause the court to conclude that such a conversion procedure is fundamentally unfair); In re Global Power Equipment Group, Inc., 400 B.R. 17, 20 (D. Del. 2009) ("the plain language of Section 502(b) requires the Bankruptcy Court to determine the amount of the allowed claim in U.S. currency, using the exchange rate in effect on the Petition

Date"); <u>TransCanada Pipelines Ltd. v. USGen New England, Inc.</u>, 458 B.R. 195, 225 (D. Md. 2011) (same).  Indeed, the Debtors resolved this technical mistake of other creditors by simply agreeing to the claim amount converted into U.S. Dollars.

27.    Had Luxicav received notice of the Omnibus Objection, it would have submitted a response with this Court and/or contacted counsel for the Debtor, simply addressing the technical objection by converting the amounts submitted in its claims to U.S. Dollars using an appropriate exchange rate such as 1.4190, which is the Euro to U.S. Dollar exchange rate that the Debtors, in the disclosure statement of their Liquidation Plan, indicate they used in calculating the Structured Securities Claims (as defined in the disclosure statement to essentially mean claims based on Lehman Program Securities).  Thus, Luxicav has a legally supportable defense in connection with the validity of the Luxicav Claims because it filed *prima facie* valid proofs of claims prior to the bar date and under section 502(b) of the Bankruptcy Code such claims should have been converted to U.S. Dollars rather than disallowed and expunged.

28.    Finally, Luxicav satisfies the third requirement under Rule 60(b)(1) because there will be little, if any, prejudice to the non-movants (here, the Debtors) if the Court grants the Motion.  Reconsideration of the disallowance of the Luxicav Claims will not prejudice the Debtors' administration of their chapter 11 cases.  First, the Debtors have not completed the claims resolution process and are continuing to adjudicate claims, as evidenced by the Debtors' filing of eleven new omnibus objections in the month of August 2012.  Thus, the reconsideration of the Luxicav Claims will not require the Debtors to restart the claims resolution process.  Moreover, any inconvenience or costs in converting the Luxicav Claims from U.S. Dollars is miniscule and is outweighed by the severe prejudice to Luxicav if its claims are disallowed and expunged.

29.     Second, the ultimate allowance of the Luxicav Claims will not prejudice the
Debtors because such allowance will have no material impact on the amounts distributed to other
creditors nor any impact at all on those amounts already distributed since the Debtors have
sufficient assets to make distributions on the Luxicav Claims without having to reverse the initial
distributions made to allowed claims.  See, e.g., Pro-Tec Servs., LLC v. Inacom Corp. (In re
Inacom Corp.), No. 04-390-GMS, 2004 WL 2283599, at *4-5 (D. Del. Oct. 4, 2004) (reversing
denial of reconsideration of claim determination where the court found no prejudice, in part
because debtor was still litigating many of the unsecured claims and distributions would not need
to be reversed, even though the motion for reconsideration of the disallowance of a claim was
filed nearly three years after entry of the disallowance order).  As noted, the Debtors'
Liquidation Plan provides for a liquidation of assets that may span at least three to six years from
March 6, 2012.

30.     In addition, while the allowance of the Luxicav Claims may cause creditors to
receive less, courts have found that in the context of liquidating plans, the mere reduction of the
percentage each creditor would receive from the total distribution is not a sufficient basis for
finding prejudice. See In re Sacred Heart Hosp. of Norristown, 186 B.R. 891, 897 (Bankr. E.D.
Pa. 1995) (finding no prejudice from the mere change in distribution percentage in a liquidation
case); In re BuildNet, Inc., No. 01-82293, 2003 WL 22078079 (Bankr. M.D.N.C. Aug. 26, 2003)
(noting that any depletion in the assets available for timely filed claims is unfortunate, but
standing alone, is an insufficient basis to find prejudice); In re Spring Ford Industries, No. 02-
15015-DWS, 2003 WL 21785960, *5 (Bankr. E.D. Pa. July 25, 2003).

31.     Third, the Debtors would not be prejudiced by the allowance of the Luxicav
Claims because they are liquidating.  Thus, the Debtors have not relied on the assets that would

provide distributions to the Luxicav Claims being available for their reorganization because the Debtors are not reorganizing.

32.     Lastly, the Debtors cannot argue any prejudice on account of the passage of time from the entry of the Foreign Currency Disallowance Order to the filing of this Motion. "Generally, mere delay is not sufficient to demonstrate a sufficient level of prejudice. 'Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" Penn Trustees, 326 B.R. at 53 (quoting Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)).  None of these concerns is present here and granting reconsideration would not result in any such prejudices.  Moreover, the delay in bringing the motion for reconsideration was not caused by Luxicav nor was it a deliberate decision of Luxicav, which only received notice of the disallowance earlier this year.

33.     The only prejudice the Debtors could arguably suffer is that the allowance of the Luxicav Claims would wipe out the unjustified windfall their estates would obtain from the disallowance of such valid claims.  However, the Debtors' estates should not benefit from an unjustified windfall at the expense and significant prejudice of a foreign creditor, especially where (i) the basis for the disallowance was the technical mistake of submitting its claims in Euros rather than in U.S. Dollars which should have been remedied by simply converting the claim amount to U.S. Dollars; and (ii) Luxicav did not receive notice of the Omnibus Objection.

34.     Accordingly, cause for reconsideration under Rule 60(b)(1) exists here because Luxicav was not willful in its delay in responding to the Omnibus Objection, Luxicav has *prima facie* valid Proof of Claims and a meritorious defense to the Omnibus Objection, and

reconsideration of the Foreign Currency Disallowance Order will not result in prejudice to the Debtors.[2]

### II.   Cause Exists under Rule 60(b)(6) and/or Section 502(j)

35.   In addition to "the existence of cause" for reconsideration of the Foreign Currency Disallowance Order under Rule 60(b)(1), "cause" exists under Rule 60(b)(6). Rule 60(b)(6) allows for relief to be granted for "any other reason that justifies relief." While this catch-all is admittedly not unlimited, Rule 60(b)(6) "should be liberally construed when substantial justice will thus be served." In re Enron Corp., 352 B.R. 363, 369 (Bankr. S.D.N.Y. 2006) (quoting Radack v. Norwegian America Line Agency, Inc., 318 F.2d 538, 542 (2d Cir. 1963)). Indeed, the "'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. U.S., 335 U.S. 601, 614-15 (1949). In addition, section 502(j) provides that a claim that has been disallowed may be reconsidered for "cause." See 11 U.S.C. § 502(j).

36.   "Cause" exists for reconsideration of the Foreign Currency Disallowance Order because the Court exceeded its authority under the Bankruptcy Code by entering the order disallowing the Luxicav Claims. The Court exceeded its authority in entering the Foreign

---

[2] Rule 60(c) provides that a motion under Rule 60(b)(1) shall be made no more than a year after the entry of the order to be reconsidered except that a motion for reconsideration of an order disallowing a claim against the estate entered without a contest is not subject to the one year limitation. Where a creditor, as is the case here with Luxicav, is never served with an objection, an order on that objection, with respect to that creditor, is "entered without a contest" and therefore not subject to the one year limitation. See In re Tender Loving Care Health Services, Inc., 562 F.3d 158, 162 n.5 (2d Cir. 2009) (approving the proposition that "a contest, for purposes of Bankruptcy Rule 9024, arose upon [the creditor's] receipt of notice of the Debtors objection and notice of the hearing" (citations omitted)); see also In re Enron Creditors' Recovery Corp., No. 01-16034, 2007 WL 2480531, at *4 (Bankr. S.D.N.Y. Aug. 28, 2007) (finding motion for reconsideration timely because "although [claimant] filed its motion for reconsideration more than one year from entry of the 33rd Order, the 33rd Order was entered without contest since [claimant] was not provided notice of the 33rd Objection"). Since Luxicav never received the Omnibus Objection, the Foreign Currency Disallowance Order was entered "without a contest" as to Luxicav, and the "one year limitation prescribed in Rule 60(c)" is inapplicable to the Motion.

15

Currency Disallowance Order because submitting a claim in a foreign currency is not a valid

ground for disallowing a claim.  See 11 U.S.C. § 502(b).  Section 502(b) of the Bankruptcy Code

provides that the court must allow a claim that has been objected to except to the extent that one

of the specifically enumerated grounds exists to disallow the claim.  The Supreme Court has

interpreted section 502(b) as providing the only permissible substantive grounds for

disallowance:

> [E]ven where a party in interest objects, the court "shall allow" the claim "except
> to the extent that" the claim implicates any of the nine exceptions enumerated in §
> 502(b). Those exceptions apply where the claim at issue is "unenforceable against
> the debtor . . . under any agreement or applicable law," § 502(b)(1); "is for
> unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of
> the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or
> attorney of the debtor" and "exceeds the reasonable value of such services," §
> 502(b)(4); is for unmatured debt on certain alimony and child support obligations,
> § 502(b)(5); is for certain "damages resulting from the termination" of a lease or
> employment contract, §§ 502(b)(6) and (7); "results from a reduction, due to late
> payment, in the amount of . . . credit available to the debtor in connection with an
> employment tax on wages, salaries, or commissions earned from the debtor," §
> 502(b)(8); or was brought to the court's attention through an untimely proof of
> claim, § 502(b)(9).

Travelers Cas. and Sur. Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 449 (U.S.

2007); see also In re Montagne, 421 B.R. 65, 82-83 (Bankr. D. Vt. 2009) ("courts cannot add

non-compliance with Rule 3001(c) as a basis for disallowing a claim under Bankruptcy Code §

502; to do so would improperly enlarge a substantive right provided by the Code.").  None of the

nine enumerated grounds for disallowance under section 502(b) includes that the claim is

asserted in a currency other than the "lawful currency of the United States."

    37.    In fact, instead of listing it as an enumerated ground for disallowance, the

Bankruptcy Code expressly instructs the Bankruptcy Court to "determine the amount of such

claim in the lawful currency of the United States."  11 U.S.C. § 502(b).  In accordance with this

clear statutory mandate, rather than disallowing a claim asserted in a foreign currency, courts

have repeatedly determined that the amount of such claim should be determined by the

bankruptcy court as of the petition date.  See, e.g., Finanz AG Zurich, 192 F.3d at 250 (noting

that under United States bankruptcy law, claims in a foreign currency are determined by

converting them to U.S. dollars as of the date of filing of the petition); TransCanada Pipelines

Ltd. v. USGen New England, Inc., 458 B.R. at 225 (upholding the Bankruptcy Court's

"conver[sion of] TransCanada's claim from Canadian dollars to U.S. dollars at the rate in effect

on the petition date"); Global Power, 400 B.R. at 20 ("the Bankruptcy Court correctly concluded

that section 502(b) applies and that the plain language of section 502(b) requires the Bankruptcy

Court to determine the amount of the allowed claim in U.S. currency, using the exchange rate in

effect on the Petition Date."); In re Aaura, Inc., No. 06 B 01853, 2006 WL 2568048, at * 4

(Bankr. N.D. Ill. Sept. 1, 2006) ("Section 502(b) prevents the value of a claim from fluctuating

by freezing the claim as of the petition date and converting it to United States dollars.").

Congress could have enumerated another ground for disallowance on the basis that a claim is

denominated in a currency other than the U.S. Dollar but instead Congress chose to place the

burden on the Bankruptcy Court to determine such claims in the "lawful currency of the United

States."  11 U.S.C. § 502(b).

        38.    Luxicav recognizes that the Debtors' bankruptcy cases are collectively one of the

largest, most complicated and global bankruptcy cases in the history of the United States.  It is

therefore understandable that the Debtors sought a bar date order that instructed creditors to

submit their claims in U.S. Dollars rather than in a foreign currency.  However, to permit the

disallowance of *prima facie* valid proofs of claims on the ground that the claims were

denominated in a foreign currency is fundamentally unfair and should not be countenanced.  The

Debtors could have eased the Court's burden of dealing with claims denominated in a foreign

17

currency by implementing a much fairer and reasonable approach.  For example, the Debtors

could have easily determined the amount of the claims in U.S. Dollars through the simple use of

the applicable Euro to U.S. Dollars exchange rate[3] and filed a motion, or objection to such

claims, seeking to allow the claims in the amounts modified by converting the asserted amounts

to U.S. Dollars.  A creditor's failure to respond to such a motion or objection would then have

the more fair and reasonable result that the amount of the claim would be modified and allowed

in that amount rather than the unfair result of the claim being entirely disallowed and expunged.

39.     While the blanket disallowance of claims denominated in foreign currencies may

have resulted in a small amount of added administrative efficiency, the disallowance of claims

such as the Luxicav Claims – the allowable amount of which is readily ascertainable – can only

result in an unjustified windfall for the Debtor's estate, and is outweighed by the significant

prejudice to creditors with *prima facie* valid claims.  See, e.g., Midland Cogeneration Venture

Limited Partnership v. Enron Corp. (In re Enron Corp.), 419 F.3d 115 (2d Cir. 2005) (in

determining whether to allow an amendment to a claim, one factor is whether "other creditors

would 'receive a windfall' from the disallowance of the amendment" (quoting In re Integrated

Res., Inc., 157 B.R. 66, 70 (S.D.N.Y. 1993))); Urban Communicators PCS Ltd. Partnership v.

Gabriel Capital, L.P., 394 B.R. 325, 337 (S.D.N.Y. 2008) (bankruptcy court was correct in

determining that failure to recognize secured creditor's liens on multiple types of collateral

improperly would "give the Debtors' junior creditors and equity a windfall"); In re N.Y. Med.

Group, P.C., 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001) (granting relief from automatic stay

---

[3]  It appears the Debtors may have already undertaken the necessary efforts to convert the value of the issuances
under particular ISINs from Euros to a proposed amount to be allowed in U.S. Dollars as part of their motion for
approval of procedures to determine the amount of claims based on Lehman Program Securities.

despite the possible dilution of other creditors' recovery because a denial "would grant a windfall to the other creditors").

## **MEMORANDUM OF LAW**

40.     Because the legal points and authorities upon which the Motion relies are incorporated herein, Luxicav respectfully requests that the requirement of service and filing of a separate memorandum of law pursuant to Local Rule 9013-1(b) be deemed satisfied.

## **NOTICE**

41.     Luxicav has served this Motion on (i) the attorneys for the Plan Administrator; (ii) the U.S. Trustee; and (iii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Dkt. No. 9635].  Luxicav submits that no other or further notice need be provided.

## **NO PREVIOUS REQUEST**

42.     No previous request for the relief requested herein has been made to this Court or any other court.

## CONCLUSION

For the reasons set forth above, Luxicav respectfully requests that this Court enter an order substantially in the form of <u>Exhibit B</u> (i) granting Luxicav a hearing on the merits of the Omnibus Objection as to the Luxicav Claims, or, if the Court deems appropriate, allowing the Luxicav Claims in the amounts of $709,500 for claim number 59055, $1,064,250 for claim number 59056, and $2,128,500 for claim number 59057 (the same amounts listed in the Luxicav Claims, converted to U.S. Dollars using the exchange rate of 1.4190, the WM/Reuters Closing Spot Rate for Euros to U.S. Dollars on September 15, 2008), and (ii) granting Luxicav such further relief as the Court deems just.

Dated:  September 13, 2012                    Respectfully submitted,

                                              SIDLEY AUSTIN LLP


                                              By: /s/ Alex R. Rovira
                                              Alex R. Rovira
                                              Andrew P. Propps
                                              Sidley Austin LLP
                                              787 Seventh Ave.
                                              New York, NY 10019
                                              Tel: (212)839-5300
                                              Fax: (212)839-5599

                                              *Counsel For Luxicav Obbligazionario,*
                                              *Luxicav Plus Flex 35 and Luxicav*
                                              *Plus Flex 50*