HEARING DATE AND TIME: September 27, 2012 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**OMNIBUS REPLY TO CERTAIN RESPONSES TO DEBTORS' ONE HUNDRED
FORTY-THIRD OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") as Plan Administrator under the

*Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its*

*Affiliated Debtors* [ECF No. 22737] (the "Plan") for the entities in the above referenced chapter 11

cases (collectively, the "Chapter 11 Estates"), files this omnibus reply (the "Reply") to certain

responses (the "Responses")[1] received opposing the Debtors' One Hundred Forty-Third Omnibus

Objection to Claims (Late-Filed Claims) [ECF No. 16856] (the "Omnibus Objection") and

respectfully represents as follows:

---

[1] This Reply only addresses the Responses listed on Exhibit A. The Plan Administrator reserves its right to file reply briefs responding to all other responses received in opposition to the Omnibus Objection.

US_ACTIVE:\44094672\1\58399.0011

**PRELIMINARY STATEMENT**

1. This Court's order setting forth claim filing procedures and deadlines in these chapter 11 cases provided that claims would only be deemed timely if *actually received* on or before the deadline applicable to such claims. The proofs of claim included on Exhibit B (the "Late-Filed Claims") attached hereto, all of which are based on Lehman Program Securities (defined below), were received on February 4, 2010, approximately three months after the applicable deadline. The Responses, all but two of which were filed by purported "advisors" (the "Advisors") to the claimants (the "Claimants"), do not argue that the Claimants are entitled to relief pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Advisors do assert, however, that "[t]he late filing of the claim…was due to communication problems between the [Claimant], its advisor and the bank where the securities have been filed." Similarly, in two Responses filed by two of the Claimants themselves [ECF Nos. 17745 and 17741], the Claimants – Francois Bernier and Claude Fitvoye – do not seek relief under Bankruptcy Rule 9006(b), but do argue that the Omnibus Objection should be overruled because these Claimants sent to the Advisors the documentation necessary for the Advisors to file proofs of claim on their behalf.

2. Even if the Claimants or their Advisors had argued that such "communication problems" constituted "excusable neglect," for the reasons set forth herein, neither the Claimants nor the Advisors can satisfy the "hard line" application of the "excusable neglect" standard followed by the Second Circuit and by this Court in these chapter 11 cases. Any miscommunication between the Claimants, their Advisors and their banks was entirely within their control and does not constitute excusable neglect. For these reasons, the Late-Filed Claims should be expunged.

2

## BACKGROUND

**Chapter 11 Case Background**

3.  Commencing on September 15, 2008 and periodically thereafter, (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.  On December 6, 2011, the Court entered the order confirming the Plan. The Plan became effective on March 6, 2012 (the "Effective Date"). Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

**The Bar Date**

5.  By order dated July 2, 2009 (the "Bar Date Order"), the Court established specific alternative claim filing procedures (the "Lehman Programs Securities Procedures") that apply to the filing of any and all claims arising from securities included on the Lehman Programs Securities list. (Bar Date Ord. at 12.) While the Bar Date Order established September 22, 2009 as the deadline to file other proofs of claim, the Lehman Programs Securities Procedures required that all claims against any of the Chapter 11 Estates arising from securities on the Lehman Programs Securities list ("Securities Programs Proofs of Claim") be filed on or before November 2, 2009 (the "Bar Date"). As such, holders of Lehman Programs Securities were provided an additional 40 days (for a total of four months from entry of the Bar Date Order) to file their proofs of claim. The Bar Date Order also expressly provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the

3

Bar Date Order . . . shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ." (*Id.* at 9-10.) A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com.

6.    Notably, the Bar Date Order also provides that "claims based on any Lehman Program Security shall not be disallowed on the ground that such claims were not filed by the proper party or an authorized agent, as contemplated by Bankruptcy Rule 3001(b)." (*Id.* at 14.)

7.    Notice of the Bar Date (the "<u>Securities Programs Bar Date Notice</u>") was widely published and disseminated. Pursuant to the Bar Date Order, the Program Securities Bar Date Notice was published by the Chapter 11 Estates in ten languages, plus seven translations for local dialects, and in twenty-six newspapers in eighteen countries, including in each of Italy, Spain, France, Germany, The Netherlands (in English), Switzerland, Luxembourg, United Kingdom, Hong Kong, Mexico, Belgium, Austria, Greece, Brazil, Argentina, Australia, and Japan. (Bar Date Ord. at 14.) The Programs Securities Bar Date Notice was also provided to Euroclear, Clearstream, and similar clearing systems as well as to the issuers of the Lehman Programs Securities and these entities were to distribute the notice to the holders of Lehman Programs Securities.

## **THE LATE-FILED CLAIMS SHOULD NOT BE DEEMED TIMELY FILED**

### A.    **The Second Circuit Strictly Enforces <u>Bar Dates Absent A Finding of Excusable Neglect</u>**

8.    As this Court has recognized, "bar dates are critically important to the administration of a successful chapter 11 case." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010), *aff'd.* 445 B.R. 137 (S.D.N.Y. 2011). A bar date enables debtors to determine with reasonable promptness, efficiency, and finality what claims will be made against

4

their estates—a determination without which they cannot effectively reorganize. *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995); *Florida Dept. of Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993) ("The bar order by forcing creditors to make known their claims against the estate, enables the bankruptcy judge to tally up the debtor's assets and liabilities so that a reorganization plan can be developed.") (internal quotations omitted). Bankruptcy Rule 9006(b) vests the decision to extend the bar date "squarely within the discretion of the bankruptcy judge." *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1008.

**B.     The Claimants Have Not Alleged,
        And Cannot Demonstrate, Excusable Neglect**

9.     Bankruptcy Rule 9006(b)(1) provides that "on motion made after the expiration of the specified period [the court may] permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The Supreme Court, in interpreting the term "excusable neglect," has held that the term "neglect" in its ordinary sense means "to give little attention or respect to a matter, or . . . to leave undone or unattended to esp[ecially] through carelessness . . . and encompasses both simple, faultless omissions to act and more commonly, omissions caused by carelessness." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 388 (1993). The determination of whether a claimant's neglect of a deadline is *excusable*, according to *Pioneer*, however, is an equitable determination in which a court should consider all relevant circumstances surrounding the claimant's omission, such as: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

5

10. In applying the *Pioneer* factors to determine whether a late-filed proof of claim was the result of "excusable neglect," the Second Circuit has taken a "hard line" approach that does not give the four factors equal weight. *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005); *In re Lehman Bros. Holdings Inc.*, 433 B.R. at 119-20. The third *Pioneer* factor—the reason for the delay in filing, including whether the cause of such delay was within the reasonable control of the claimant—is the most critical. *See Enron*, 419 F.3d at 122-24. The Second Circuit has noted that the reason for this approach is that the other factors delineated in *Pioneer*—prejudice, length of delay and impact on judicial proceedings, and the claimant's good faith—will typically weigh in favor of the claimant, and the court will therefore focus on the reason for the delay in filing. *Id.* at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003).).

11. This Court has followed the Second Circuit's "hard line" approach in applying the *Pioneer* factors in deciding numerous motions in this case. Only on two occasions, where "creditors consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims," did this Court find the existence of excusable neglect. *In re Lehman Bros. Holdings Inc.*, 433 B.R. at 127. In this case, the Claimants do not allege confusion regarding the application of the Bar Date Order, and the Claimants' excuse does not relate to the bespoke provisions of the Bar Date Order regarding Lehman Program Securities. Rather, as stated below, the Reponses suggest that the Claimants and their Advisors understood the application of the Bar Date Order to their securities, but failed to communicate effectively among themselves as to who should file claims on behalf of the Claimants. Such communication was entirely within the reasonable control of the Claimants. With respect to all other motions filed in this case seeking to have late filed claims

6

deemed timely pursuant to Bankruptcy Rule 9006(b), this Court found that the delay in filing the late claims was within the control of the various movants and that "reasons offered by the Movants demonstrate a lack of care or thoughtful attention to the preparation and filing of their proofs of claim." *Id.*

12. The burden of establishing excusable neglect is squarely on the Claimants, not the Plan Administrator or the Court. *In re Enron Corp.*, 419 F.3d at 121 ("The burden of proving excusable neglect lies with the late-claimant."). The Claimants do not argue that the circumstances surrounding the Late-Filed Claims warrant relief pursuant to Bankruptcy Rule 9006(b), or provide any analysis in support of "excusable neglect" to satisfy their burden. As discussed below, the *Pioneer* factors – particularly the reason for the Claimants' delay in filing the Late-Filed Claims – weigh heavily in favor of the Chapter 11 Estates. The Court should follow its prior decisions to grant the Omnibus Objection, and deny and overrule the Responses.

### i. *The Claimants' Reason for the Delay Was Solely Within the Claimant's Control*

13. The Claimants and their Advisors do not allege that they did not receive the Bar Date Notice or that the Bar Date Notice was unclear. Instead, they assert that their delay in filing the Late-Filed Claims was caused by a miscommunication between the Claimants, their Advisors, and their banks. The Reponses state that "[t]he bank thought that the [Claimant] would file the claim, whereas the [Claimant] thought that the bank would file the claim." However, courts in the Second Circuit and elsewhere have held that such miscommunications, "office mixups, clerical mistakes, and failure to follow office procedure do not generally constitute excusable neglect." *In re Dana Corp.*, No. 06-10354 (BRL), 2008 WL 2885901, at *5 (Bankr. S.D.N.Y. July 23, 2008) (where notice of the bar date was inadvertently filed away without any action being taken, "movant's failure to file a timely proof of claim was entirely within his and his attorneys' reasonable control and does not constitute excusable neglect"); *Pruitt v. Metcalf Eddy*

7

*Inc.*, No. 03 Civ. 4780 (DF), 2006 WL 760279, at *2 (S.D.N.Y. Mar. 24, 2006) (failure to timely file notice of appeal did not constitute excusable neglect where movant's counsel misplaced notice of appeal after arranging for attorney service to pick up and file it and then failed to follow up with attorney service to determine if the notice had been picked up and filed); *In re Chateaugay Corp.*, No. 92 Civ. 8722 (LJF), 1993 WL 1127180, at *6 (S.D.N.Y. Apr. 22, 1993) (movant's failure to timely file proof of claim due to failure of movant's own internal procedures in forwarding bankruptcy matters to its appropriate department for review did not constitute excusable neglect); *In re Kmart Corp.*, 381 F.3d 709 (7th Cir. 2004) (notwithstanding that movant missed bar date by only one day, movant's failure to file a timely proof of claim did not constitute excusable neglect where movant's counsel delegated the filing of the proof of claim to an office clerk, failed to follow up with the clerk to ensure that he had followed counsel's instructions on filing, and failed to take simple steps to confirm that the claim had been filed in a timely manner); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 898031, at *7 (Bankr. S.D.N.Y. Mar. 29, 2006) (State of Montana's delay in filing proof of claim for a damage award stemming from Federal Energy Regulatory Commission ("FERC") proceedings did not constitute excusable neglect where State of Montana mistakenly assumed that FERC would protect its interests by filing a proof of claim on its behalf in the debtors' bankruptcy proceedings).

14.    This Court has previously held that where the "failure to timely file a…proof of claim…is traceable to a miscommunication with [a claimant's] investment advisor," such miscommunication fails to establish excusable neglect. *In re Lehman Bros. Holdings Inc.*, 433 B.R. at 123. In that case, the claimant had

> "requested the assistance of [its advisors] in filing claims related to the transactions that [the advisors] entered into on behalf of [the claimant]. [The advisors] agreed to provide this assistance. Based on these communications, and because [the advisors] filed proofs of claim against Lehman Brothers Treasury Co. B.V. in its

8

> Dutch proceedings, [the claimant] believed that [its advisors] had filed the required claim…in the LBHI [p]roceeding."

*Id.* This Court found that "[t]hat belief, whether or not reasonable, was simply incorrect, and the miscommunication, carelessness or inattention to the guarantee claim was entirely within the control of [the claimant] and [its advisors]." Accordingly, this Court held that the claimant had "not made a sufficient showing for a finding of excusable neglect." *Id.*

15. Similarly here, the Claimants' failure to communicate with their Advisors and their banks as to who would file proofs of claim on behalf of the Claimants was entirely within the Claimants' control, and a result of the Claimants' carelessness and inattention to the Late-Filed Claims. Indeed, as the Responses indicate, the Claimants failed to oversee the filing of the Late-Filed Claims such that they did not even learn of their banks' failure to file the Late-Filed Claims until January of 2010, two months after the expiration of the Bar Date. At no time between the Bar Date and January 2010 did the Claimants confirm with their Advisors or their banks that the Late-Filed Claims had been timely and properly filed in accordance with the Bar Date Order.

16. Absent any other facts relating to the miscommunication or proper supervision by the Claimants, the Claimants simply cannot meet the burden of proof for excusable neglect. The Claimants were aware of the Bar Date and the provisions of the Bar Date Order, the Bar Date Notice, and the Securities Programs Bar Date Notice were clear and unambiguous. Nevertheless, the Claimants failed to take the simple steps necessary to confirm that the Late-Filed Claims were being appropriately handled. The Climants' failure to file the Late-Filed Claims in a timely manner was within their complete control, and as a result, the Claimants have "fail[ed] to follow the clear dictates of a court rule."

9

### ii. Allowing the Late-Filed Claims Will Prejudice The Chapter 11 Estates and Other Creditors

17. "Prejudice" includes not only the harm to the debtor but also the adverse impact that a late claim may have on the judicial administration of the case, considering the size of the late claim in relation to the estate. *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1007; *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995). More than 67,000 claims have been filed against the Chapter 11 Estates. Enforcement of the Bar Date is critical for the Chapter 11 Estates to manage the enormous task of processing the claims and to proceed with reorganization. This Court has already determined that in these cases "the enormity of the claims allowance process is self-evident, and prejudice needs to be evaluated in this unprecedented setting" and therefore, a "strict application of the Bar Date Order is needed to effectively manage the claims process and that permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors." *In re Lehman Brothers Holdings Inc.*, 433 B.R. at 120.

18. Thus, in considering this *Pioneer* factor, it is necessary to weigh the cumulative effect that permitting the Late-Filed Claims will have on the Chapter 11 Estates. Permitting exceptions to the Bar Date does not impact "only one claim" and could have a significant economic impact on the Chapter 11 Estates, including the distributions available to creditors that exercised proper diligence in filing their claims. As this Court has recognized, "[t]he prejudice to the Debtors is not traceable to the filing of any additional single claim but to the impact of permitting exceptions that will encourage others to seek similar leniency." *Id.* at 121. If the Claimants are granted leniency on the basis of excusable neglect, then holders of other late-filed claims will seek similar relief. A sudden increase in claims at this time would disrupt the orderly administration of the Chapter 11 Estates.

10

19. Claimants whose late claims have already been expunged by this Court would also be prejudiced. To date, the Chapter 11 Estates have objected to approximately 1,745 claims on the grounds that such claims were filed after the applicable deadline. Of these, approximately 1,367 claims have been expunged as a result of the Chapter 11 Estates' objections. Given the number of claimants whose claims have already been expunged for being late, it would be unfair and inequitable to treat the Late-Filed Claims any differently from other similarly situated claims absent a showing of an exceptionally strong reason for the delay.

    iii.   **_Length of the Delay_**

20. The Late-Filed Claims were received approximately three months after the Bar Date. Since that time, the Claimants never filed a motion with the Court seeking relief under Bankruptcy Rule 9006(b). It was only after the Chapter 11 Estates filed the Omnibus Objections, more than one year and six months after the Bar Date, that these parties raised any argument that their Late-Filed Claims should be deemed timely-filed. If parties are permitted to claim excusable neglect at this stage in the proceeding, then the purpose and effect of the Bar Dates will have been diluted. Accordingly, this *Pioneer* factor weighs in favor of the Chapter 11 Estates.

    iv.   **_Good Faith_**

21. The Plan Administrator has no evidence that the Claimants have acted in bad faith. However, as discussed above, this factor typically weighs in favor of the party moving to file a late claim and hardly counterbalances the other three *Pioneer* factors which weigh in the Chapter 11 Estates' favor, particularly the "reason for delay" factor, discussed above, which the Second Circuit has deemed to be the most relevant and critical in the equitable determination of whether a movant's neglect is excusable. *See In re Enron Corp.*, 419 F.3d at 122-24.

11

## **RESERVATION OF RIGHTS**

22. In the event that the Court denies the Omnibus Objections with respect to the Late-Filed Claims and/or grants the relief requested in the Responses, the Plan Administrator reserves the right to object to the validity and amount of any claims that may be filed by the Claimants. The Plan Administrator reserves the right to conduct discovery as to the Late-Filed Claims and any matters raised in the Responses and to supplement this filing as a result thereof.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above and in the Omnibus Objections, the Plan Administrator respectfully requests that the Court enter an order disallowing and expunging the Late-Filed Claims in their entirety and grant such other and further relief as the Court may deem just and appropriate.

Dated: September 24, 2012
       New York, New York

    /s/ Robert J. Lemons
    Robert J. Lemons

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York  10153
    Telephone:  (212) 310-8000
    Facsimile:  (212) 310-8007

    Attorneys for Lehman Brothers Holdings
    Inc. and Certain of its Affiliates

# Exhibit A

### Responses filed by Advisors

1. Response of Francoise De Clercq regarding Claim No. 66244, filed by Deminor International SCRL/CVBA [ECF No. 17985].

2. Response of Roger Valkenborgs regarding Claim No. 66245, filed by Deminor International SCRL/CVBA [ECF No. 17977].

3. Response of Alain Godard and Jeannine Bronckart regarding Claim No. 66247, filed by Deminor International SCRL/CVBA [17978].

4. Response of Francois Bernier regarding Claim No. 66248, filed by Deminor International SCRL/CVBA [ECF No. 17988].

5. Response of Claude Fitvoye regarding Claim No. 66249, filed by Deminor International SCRL/CVBA [ECF No. 17980].

6. Response of Matthias Franssen regarding Claim No. 66250, filed by Deminor International SCRL/CVBA [ECF No. 17979].

7. Response of Michele Booten regarding Claim No. 66251, filed by Deminor International SCRL/CVBA [ECF No. 17986].

### Responses filed by Claimants

1. Response of Francois Bernier filed by Francois Bernier [ECF No. 17545].

2. Response of Claude Fitvoye filed by Claude Fitvoye [ECF No. 17741].

## **Exhibit B**

Late-Filed Claims

| **Claimant Name** | **Claim Number** |
|---|---|
| DE CLERCQ, FRANCOISE | 66244 |
| VALKENBORGS, ROGER | 66245 |
| GODARD, ALAIN & JEANNINE BRONCKART | 66247 |
| BERNIER, FRANCOIS | 66248 |
| FITVOYE, CLAUDE | 66249 |
| FRANSSEN, MATTHIAS | 66250 |
| BOOTEN, MICHELE | 66251 |