

Certified Forensic Loan Auditors

---

# *CERTIFIED FORENSIC LOAN AUDITORS, LLC*

13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone:  310-432-6304;  Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

---

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT[TM]*
### *"This is a Securitization Analysis Report and not a Forensic Audit Report"*

### *Prepared for:*

## **RODD C. AND MARIE A. WALTON**

### **258 UNITY DRIVE NW**
### **MARIETTA, GA 30064**

---

*FEBRUARY 23, 2012*

---



Certified Forensic Loan Auditors

# TRANSACTION PARTICIPANTS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| RODD C. WALTON | MARIE A.WALTON |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 258 UNITY DRIVE NW<br>MARIETTA, GA 30064 | 258 UNITY DRIVE NW<br>MARIETTA, GA 30064 |

# ORIGINAL PARTIES

| MORTGAGE BROKER | MORTGAGE SERVICER | MORTGAGE NOMINEE/ BENEFICIARY |
|---|---|---|
| UNKNOWN | BANK OF AMERICA, N.A. | BANK OF AMERICA, N.A. |
| **ORIGINAL MORTGAGE LENDER** | **MORTGAGE TRUSTEE** | **ESCROW / TITLE COMPANY** |
| BANK OF AMERICA, N.A. | N/A. | UNKNOWN |



**Certified Forensic Loan Auditors**

# II.   SECURITIZATION

# (TRACKING THE DEED AND THE NOTE)

| DEED | DATE | NOTE | DATE |
|------|------|------|------|
| BANK OF AMERICA, N.A. | JULY 03, 2003 | BANK OF AMERICA, N.A. | JULY 03, 2003 |
| | | 5.375% NON-CUMULATIVE PREFERRED STOCK, SERIES I (STATED VALUE $50 PER SHARE) | THE DATE OF THIS OFFERING CIRCULAR IS OCTOBER 23, 2002 |

The MORTGAGE and the Note have taken two distinctly different paths. The MORTGAGE was never transferred. The Note was however pooled, sold and transferred- the borrower's loan of US $260,093.00 as combined with other loans and mortgages and this pool of loans and mortgages is valued at 280,000,000 shares. The webpage link can be found at:

**REGISTRANT**:
http://www.fanniemae.com/global/pdf/ir/resources/preferred/seriesi.pdf

**8K:**
http://www.sec.gov/Archives/edgar/data/310522/000129993307006816/htm_24029.htm



**Certified Forensic Loan Auditors**

# PARTIES/DEFENDANTS:

**JOINT BOOK-RUNNING MANAGERS:**

## Bear, Stearns & Co. Inc.

## FTN Financial Capital Markets
## Lehman Brothers

## Blaylock & Partners, L.P.
## Deutsche Bank Securities
## Vining-Sparks IBG, L.P.

| LENDER | ISSUER | NAME OF PERSON FILING |
|---|---|---|
| BANK OF AMERICA, N.A. | FEDERAL NATIONAL MORTGAGE ASSOCIATION 3900 Wisconsin Avenue, NW Washington, DC 20016 | CAPITAL RESEARCH AND MANAGEMENT COMPANY AND THE GROWTH FUND OF AMERICA, INC. |
| **TITLE OF CLASS OF SECURITIES** | **CUSIP NUMBER** | **ISSUE DATE** |
| 5.375% Non-Cumulative Preferred Stock, Series I (stated value $50 per share) | 313586877 | The date of this Offering Circular is October 23, 2002 |



**Certified Forensic Loan Auditors**



**6,000,000 Shares**
**5.375% Non-Cumulative Preferred Stock, Series I**
**(stated value $50 per share)**

This Offering Circular relates to the offer of 6,000,000 shares of the 5.375% Non-Cumulative Preferred Stock, Series I (the "Preferred Stock") of the Federal National Mortgage Association ("Fannie Mae"). The Preferred Stock has a stated value and liquidation preference of $50 per share. Dividends at the rate of 5.375% per year will accrue from and including October 28, 2002. We will be required to pay dividends quarterly on March 31, June 30, September 30 and December 31 of each year, commencing December 31, 2002. However, we will be required to pay dividends only when, as and if declared by our Board of Directors, or a duly authorized committee thereof, in its sole discretion out of funds legally available for such payment. The amount of dividends we will be required to pay, if our Board declares them, may be increased if legislation is enacted that changes the Internal Revenue Code of 1986, as amended, to reduce the dividends-received deduction applicable to dividends on the Preferred Stock as set forth under "Description of the Preferred Stock—Dividends—Changes in the Dividends-Received Percentage." Dividends on the Preferred Stock will not be cumulative. Accordingly, if for any reason our Board of Directors does not declare a dividend on the Preferred Stock for a dividend period, we will have no obligation to pay a dividend for that period, whether or not our Board declares dividends on the Preferred Stock for any future dividend period. If, however, we have not paid or set aside for payment dividends on the Preferred Stock for a dividend period, we may not pay dividends on our common stock for that period. On or after October 28, 2007, we may redeem the Preferred Stock, in whole or in part, at any time or from time to time, at our option at the redemption price of $50 per share plus the dividend (whether or not declared) for the then-current quarterly dividend period accrued to but excluding the date of redemption. The Preferred Stock will not have any voting rights, except as set forth under "Description of the Preferred Stock—Voting Rights; Amendments." We will apply to list the Preferred Stock on the New York Stock Exchange under the symbol "FNMprI." If approved for listing, we expect trading of the Preferred Stock on the NYSE to commence within a thirty-day period after the initial delivery of the Preferred Stock. Our obligations under the terms of the Preferred Stock are only our obligations and are not those of the United States or of any instrumentality thereof other than Fannie Mae.

We are not required to register the Preferred Stock under the U.S. Securities Act of 1933, as amended. Accordingly, we have not filed a registration statement with the U.S. Securities and Exchange Commission (the "SEC"). The shares of Preferred Stock are "exempted securities" within the meaning of the U.S. Securities Exchange Act of 1934, as amended (the "Exchange Act"). Neither the SEC nor any state securities commission has approved or disapproved the Preferred Stock or determined if this Offering Circular is truthful or complete. Any representation to the contrary is a criminal offense.

The distribution of this Offering Circular and the offer, sale, and delivery of the Preferred Stock in certain jurisdictions may be restricted by law. Persons who come into possession of this Offering Circular must inform themselves about and observe any applicable restrictions. This Offering



**Certified Forensic Loan Auditors**

Circular is not an offer to sell or a solicitation of an offer to buy any securities other than the Preferred Stock or an offer to sell or a solicitation of an offer to buy the Preferred Stock in any jurisdiction or in any other circumstance in which an offer or solicitation is unlawful or not authorized. Because we are not currently subject to the periodic reporting requirements of the Exchange Act, we do not file reports or other information with the SEC. See "Recent Developments—Voluntary SEC Disclosure." No person has been authorized to give any information or make any representations other than those contained in this Offering Circular and, if given or made, such information or representations must not be relied upon as having been authorized. Neither the delivery of this Offering Circular nor any sale made hereunder shall, under any circumstances, create an implication that there has been no change in the affairs of Fannie Mae since the date hereof, or in the case of facts set forth in the documents incorporated by reference herein, since the respective dates thereof or that the information contained herein or therein is correct as to any time subsequent thereto.

### Fannie Mae

Fannie Mae is a federally chartered and stockholder-owned corporation organized and existing under the Federal National Mortgage Association Charter Act. We are the largest investor in home mortgage loans in the United States. We were established in 1938 as a United States government agency to provide supplemental liquidity to the mortgage market and were transformed into a stockholder-owned and privately managed corporation by legislation enacted in 1968.

### Description of the Preferred Stock

| | |
|---|---|
| **Issuer** | Fannie Mae |
| **Securities Offered** | 6,000,000 shares (assuming the Underwriters do not exercise their overallotment option) of 5.375% Non-Cumulative Preferred Stock, Series I, no par value, with a stated value and liquidation preference of $50 per share. |
| **Dividends:** | |
| **Dividend Rate:** | 5.375% per annum. Non-cumulative quarterly cash dividends at the rate of 5.375% per year will accrue from and including October 28, 2002. |
| **Frequency of Payment** | Quarterly, when, as and if declared by the Board of Directors in its sole discretion, but only out of funds legally available for the payment of dividends. |
| **Payment Dates:** | March 31, June 30, September 30, and December 31 of each year, commencing December 31, 2002. |
| **DRD Protection** | If, prior to April 28, 2004, amendments to the Internal Revenue Code of 1986, as amended, are enacted that eliminate or reduce the percentage of the dividends-received deduction below 70%, the amount of dividends payable in respect of the Preferred Stock will be |



**Certified Forensic Loan Auditors**

adjusted to offset the effect of such reduction. However, no adjustment will be made to the extent that the percentage of the dividends-received deduction is reduced below 50%.

**Preferences**

The Preferred Stock will be entitled to a preference, both as to dividends and upon liquidation, over the common stock (and any other junior stock) of Fannie Mae. The Preferred Stock will rank equally, both as to dividends and upon liquidation, with all other currently outstanding series of Fannie Mae preferred stock.

**Optional Redemption**

On or after October 28, 2007, we may redeem the Preferred Stock, in whole or in part, at any time or from time to time, at our option at the redemption price of $50 per share plus an amount equal to the dividend for the then-current quarterly dividend period accrued to, but excluding the date of redemption (whether or not declared, but without accumulation of any dividends for prior dividend periods). Holders of Preferred Stock will have no right to require the redemption of the Preferred Stock.

**Liquidation Rights**

In the event of any dissolution or liquidation of Fannie Mae, holders of the Preferred Stock will be entitled to receive, out of any assets available for distribution to stockholders, $50 per share plus the dividend for the then-current quarterly dividend period accrued through the liquidation payment date.

**Voting Rights**

None, except with respect to certain changes in the terms of the Preferred Stock

**Preemptive and Conversion Rights** . . . . . None

**Rating**

The Preferred Stock has been rated "AA–" by Standard & Poor's Ratings Group, a Division of the McGraw-Hill Companies and "aa3" by Moody's Investors Service, Inc.

**Use of Proceeds**

To be added to the working capital of Fannie Mae and used for general corporate purposes, including the repurchase of outstanding shares of our preferred stock.

**Transfer Agent, Dividend Disbursing Agent and Registrar:**   EquiServe Trust Company, N.A.

**NYSE Listing**

We will apply to list the Preferred Stock on the New York Stock Exchange under the symbol "FNMprI". If approved for listing, we expect trading on the NYSE to commence within a thirty-day period after the initial delivery of the Preferred Stock.



**Certified Forensic Loan Auditors**

**CUSIP Number**              313586877

Capital Research and Management Company, an investment adviser  registered under Section 203 of the Investment Advisers Act of 1940 is deemed to be the beneficial owner of 227,906,760 shares or 23.2% of the 978,168,000 shares of Common Stock believed to be outstanding as a result of acting as investment adviser to various investment companies registered under Section 8 of the Investment Company Act of 1940.  The Growth Fund of America, Inc., an investment company registered under the Investment Company Act of 1940, which is  advised by Capital Research and Management Company, is the beneficial owner of 56,633,870 shares or 5.8% of the 978,168,000 shares of Common Stock believed to be outstanding. Shares reported by Capital Research and Management Company, include 4,057,890 shares resulting from the assumed conversion of 3,830 shares of the 5.375% Convertible Preferred due 12/31/2049.

**AGREEMENT**

Los Angeles, CA on December 10, 2007
Capital Research and Management Company ("CRMC") and The Growth Fund of America, Inc. ("GFA") hereby agree to file a joint statement on Schedule 13G under the Securities Exchange Act of 1934 (the "Act") in connection with their beneficial ownership of Common Stock issued by Federal National Mortgage Association. CRMC and GFA state that they are each entitled to individually use Schedule 13G pursuant to Rule 13d-1(c) of the Act. CRMC and GFA are each responsible for the timely filing of the statement and any amendments thereto, and for the completeness and accuracy of the information concerning each of them contained therein but are not responsible for the completeness or accuracy of the information concerning the others.

        Pursuant to SEC regulations, public companies are required to disclose certain information when they incur a material direct financial obligation or become directly or contingently liable for a material obligation under an off-balance sheet arrangement. The disclosure must be made on a Form 8-K under Item 2.03 or, if the obligation is incurred in connection with certain types of securities offerings, in prospectuses for that offering that are filed with the SEC.

        Fannie Mae's securities offerings are exempted from SEC registration requirements. As a result, Fannie Mae is not required to and does not file registration statements or prospectuses with the SEC with respect to its securities offerings. To comply with the disclosure requirements of Form 8-K relating to the incurrence of material financial obligations, Fannie Mae will report its incurrence of these types of material obligations either in offering circulars or prospectuses (or supplements thereto) that it will post on its web site or in a Form 8-K, in accordance with a "no-action" letter we have received from the SEC staff. In cases where the information is disclosed in a prospectus or offering circular posted on Fannie Mae's web site, the document will be posted on Fannie Mae's web site within the same time period that a prospectus for a non-exempt securities offering would be required to be filed with the SEC.



**Certified Forensic Loan Auditors**

### OCTOBER 2007: (Monthly Summary Highlights)

- Fannie Mae's Book of Business grew at a compound annualized rate of 20.0 percent in October driven by growth in the Gross Mortgage Portfolio and Fannie Mae MBS and Other Guarantees.

The Gross Mortgage Portfolio rose at a compound annualized rate of 17.3 percent in October, driven by one large transaction. (For additional information on our mortgage portfolio cap, see "Additional Information" on page 2.)

- Fannie Mae MBS and Other Guarantees rose at a compound annualized rate of 16.8 percent during the month.

- Net Retained Commitments were $8.2 billion in October.

- The conventional Single-Family Serious Delinquency Rate rose seven basis points in September to 0.78 percent (latest data available). The Multifamily Serious Delinquency Rate rose two basis points to 0.08 percent in September.

- The Effective Duration Gap on Fannie Mae's portfolio averaged one month in October.
- Liquid Investments were $41.5 billion in October, including $9.1 billion of federal funds sold. Starting in October, we include federal funds sold in our Liquid Investments balance. Without this change, the balance would have been $32.4 billion.

http://www.sec.gov/Archives/edgar/data/310522/000095013307004767/w43297exv99w1.htm

http://www.fanniemae.com/global/pdf/ir/resources/preferred/seriesi.pdf

8K:http://www.sec.gov/Archives/edgar/data/310522/000095013307004767/w43297e8vk.htm

*(This area was intentionally left blank)*

Certified Forensic Loan Auditors

# TRANSACTION STRUCTURE



**1** Lenders Originate Mortgage loans with borrowers

**Borrower**
RODD C. AND MARIE A. WALTON

**2** We create Fannie Mae MBS backed by pools of mortgage loans and return the MBS to lenders. We assume credit risk, for which we receive guaranty fees.

$$ | Mortgages

**Lender**
BANK OF AMERICA, N.A.

Mortgages | **Fannie** | Mortgages | **MBS Trust**
Fannie Mae MBS | | Fannie Mae MBS

$$ | Fannie Mae MBS

**3** Lenders sell Fannie Mae MBS to investors

**Investors**

**Certified Forensic Loan Auditors**

**Mortgage Broker "Unknown"**

**Step 1 –** The borrower obtains a loan from a Lender. This may be done with help from a Mortgage Broker. In many cases the Lender and the Mortgage Broker have no further interaction with the Borrower after the loan is made.

**Lender**

**BANK OF AMEICA, N.A.**

Loan Proceeds

Loan

**Borrower**

**ROOD C. AND MARIE A. WALTON**

**Step 2 –** The Lender sells the loan to the Issuer and the Borrower begins making monthly payments to the Servicer.

Monthly Payments

LOAN

CASH

**Servicer**

**BANK OF AMEICA, N.A.**

Monthly

**Custodian-**Holds Mortgage Loan Documents on behalf of the Trustee

**Underwriter**

**Rating Agency**

**Issuer/Trustee**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE)**

**Credit Enhancement Provider**

**Step 3 –** The Issuer sells securities to the Investors. The Underwriter assists in the sale, the Rating Agency rates the securities, and the Credit Enhancement may be obtained.

Securities

Cash

Monthly Paymen

**Step 4 –** The Servicer collects monthly payments from the Borrower and remits payments to the Issuer. The Servicer and the Trustee manage delinquent loans according to terms set forth in the Pooling & Servicing Agreement

**Investors**



**Certified Forensic Loan Auditors**

## III. FORECLOSURE

### Chain of Title and Chain of Note
### Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Deed Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original MORTGAGE** | **Date** | **Note Holder** |
| JULY 3, 2003<br><br>Instrument #<br>138085955<br><br>Official Records,<br>COUNTY OF COBB,<br>GEORGIA | RODD C. AND MARIE A. WALTON<br>(Borrower)<br><br>BANK OF AMERICA, N.A.<br>(Lender)<br><br>**MIN: N/A** | JULY 3, 2003 | BANK OF AMERICA, N.A.<br>(Lender)<br><br>Principal Amount:<br>US $260,093.00<br><br>**MIN: N/A** |
| | | THE DATE OF THIS<br>OFFERING CIRCULAR<br>IS OCTOBER 23, 2002 | 5.375% NON-CUMULATIVE<br>PREFERRED STOCK, SERIES I<br>(STATED VALUE $50 PER<br>SHARE) |
| | | | |

# IV.  REPORT SUMMARY

**DEED OF TRUST:**   On JULY 3, 2003, Debtors RODD C. AND MARIE WALTON executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of US $260,093.00. This document was filed as document number 138085955 in the Official Records, COUNTY OF COBB, GEORGIA.  The Loan number is unknown**.  **The ***original lender of the promissory note is with*** BANK OF AMERICA, N.A**. *Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is named as the beneficiary of the security interest Security Deed.*

**Securitization:** The NOTE was sold, transferred and securitized into **FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I.**



**Certified Forensic Loan Auditors**

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

The MORTGAGE shows no MIN number and MERS SERVICER ID website https://www.mers-servicerid.org/sis indicates that MERS is not tracking the note.



**Process Loans, Not Paperwork!™**

## MERS® Servicer Identification System

### Search for servicer information

Need help? ?

⊙ **Search by MIN**
*Search by a MERS Mortgage Identification Number.*

⊙ **Search by Property Address/Borrower Details**
*Search by property address and borrower information.*

  ⊙ **Search by Property Address Only**

  ⊙ **Search by Borrower Name and Property Address**

    ⊙ Search by Individual Borrower and Property Address

    **No MINs can be located that match the search criteria entered. Verify the search criteria and resubmit. If you need assistance to make sure your search criteria are valid, use the link to see Help.**
    *Your entries may be either upper or lower case.*
    *Fields marked ★ are required.*

    **Borrower**
    **First Name:** RODD ★  **Last Name:** WALTON ★

    **Property Address**
    *Enter the Street without a direction or designator. For example, "E. Main St." should be entered as "Main"*
    **Street Number:** 258  **Street:** UNITY ★  **Unit:**
    **City:** MARIETTA  **State:** GA ▾  **Zip Code:** 30064 ★

    *Select Expanded Street Search to match on similar street names.*
    ☑ **Expanded Street Search**
    *With expanded street search, a search on "Main" will return "Mainland", "Main St." or "East Maine Ave"*
    *Please note: selecting this option will increase the time taken for your search results to be displayed.*

    ( Search )

    ⊙ Search by Corporation/Non-Person Entity Borrower and Property Address

  ⊙ **Search by Borrower Name, SSN and Property Zip Code**

⊙ **Search by FHA/VA/MI Certificate**
*Search by Federal Housing Administration / Veterans Administration Case Number or Mortgage Insurance Certificate Number.*

For more information about MERS please go to www.mersinc.org

**Homeowners:** Visit MERS for Homeowners for information about the duties and responsibilities of your mortgage company and a link to
Hope Now, which provides support and guidance for homeowners in distress.

Copyright© 2006 by MERSCORP, Inc.



**Certified Forensic Loan Auditors**

# FANNIE MAE LOAN LOOK UP

### Does Fannie Mae Own My Loan?

## YES / NO

### BASED ON RESEARCH DOCUMENT BELOW

#### Who Is Fannie Mae And What Do They Do?

Fannie Mae is a government-chartered company with a mission to provide a stable source of funding to the U.S. housing and mortgage markets. The company pur-chases and securitizes mortgage loans to ensure that money is consistently availa-ble to financial institutions that lend money to homebuyers.

**FANNIE MAE SEARCH RESULTS**



## FannieMae  Loan Lookup

The Fannie Mae Loan Lookup enables mortgage borrowers to quickly determine if Fannie Mae owns their loan by providing a street address, unit, city, state, and ZIP code.

**Street Address ***
258 unity drive NW

**Unit**

**City**
MARIETTA

**State**
GA

**Zip Code ***
30064

☐ * I confirm that I am the owner of this property, or have the consent of the owner to look up this information

* Required Fields

**Get Results**

**Match Found.**

Based on the property information entered, it appears Fannie Mae owns a loan at this address.

A "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification.

If you're interested in a refinance, please contact your mortgage lender or servicer (the organization to whom you make your monthly mortgage payments) to confirm these results and ask about the Home Affordable Refinance Plus program.

You can find more information at **MakingHomeAffordable.gov**.

View **Frequently Asked Questions** for this Loan Lookup tool.

Thank you for contacting Fannie Mae.

The Fannie Mae Loan Lookup is provided as a convenience for borrowers. Fannie Mae makes no representation, warranty, or guarantee regarding the accuracy or completeness of the results. A search that results in a "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification. Information that does not match our records exactly may return inaccurate results. You should contact your mortgage lender to verify these results.

For information about the use of our site and our privacy policy, **see Legal Information. Click here for FAQs**.

© 2012 Fannie Mae

Site Map | Privacy | Legal

**Know Your Options – Refinance Options**

Learn more about refinance options available even if the value of your home has decreased.

Visit: **Refinance Options** on KnowYourOptions.com

**888-995-HOPE**

Homeowner's HOPE Hotline
888-995-HOPE (4673)
877-304-9709 TTY

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) or via a TTY at 877-304-9709. The Hotline can help with questions about the program and offers free HUD-certified counseling services in English, Spanish, and other languages.



**Certified Forensic Loan Auditors**

## *Fannie Mae Legal Disclosure*

IMPORTANT LEGAL INFORMATION REGARDING THIS FANNIE MAE WEB SITE
Your use of this Fannie Mae Web site is subject to the conditions and qualifications described be-
low. By using this Fannie Mae Web site, you agree to accept such conditions and qualifications.

**No Warranties; Limitation of Liability.** This Web site includes information, documents, tools,
and materials (collectively, the "Contents") that are subject to change without notice. Fannie Mae
expressly disclaims any obligation to keep Contents up to date or free of errors or viruses, or to
maintain uninterrupted access to this Web site. **This Web site (including all Contents) is provided
"AS IS."** Users of this Web site should understand that some Contents have been electronically
converted from the media from which originals were produced. Fannie Mae has not tested or veri-
fied          the          accuracy          or          completeness          of          the          conversion          process.

**Fannie Mae assumes no responsibility for errors or omissions in any Contents, including Con-
tents that are referenced by or linked (by hypertext links) to third party Web sites. FANNIE
MAE MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND
WHATSOEVER FOR THE CONTENTS OR THIRD PARTY WEB SITES OR FOR ANY
PRODUCTS, SERVICES OR PROPERTIES MENTIONED OR OFFERED IN THE
CONTENTS          OR          IN          THIRD          PARTY          WEB          SITES.**

**Fannie Mae disclaims any express or implied warranties related to the use of this Web site
(including all Contents and third party Web sites), including, without limitation, merchanta-
bility,     suitability,     noninfringement,     or     fitness     for     any     particular     purpose.**

**Fannie Mae shall not be liable for any errors contained herein or for any damages whatsoever
arising out of or related to the use of this Web site (including all Contents), including, without
limitation, direct, indirect, incidental, special, consequential, or punitive damages, whether
under a contract, tort, or any other theory of liability, even if Fannie Mae is aware of the pos-
sibility of such errors or damages.**

# Summary: Fannie Mae reports that they own your loan.

*(This area was intentionally left blank)*



**Certified Forensic Loan Auditors**

## FANNIE MAE ON BLOOMBERG
### Bloomberg.com





**Certified Forensic Loan Auditors**







Certified Forensic Loan Auditors







**Certified Forensic Loan Auditors**





**Certified Forensic Loan Auditors**

1. On **February 20, 2012**, I researched the Bloomberg online Database at the request of **Certified Forensic Loan Auditors, LLC** on behalf of **Rodd C. and Marie A. Walton** whose property address is noted herein above.

2. Based on the information I was provided, **Mr. and Mrs**. **Walton** signed a Promissory Note in with of **Bank of America, N.A.** on **July 3, 2003**.

3. Loan was not identified in a trust. A search of the Fannie Mae Database shows that it is a "Fannie Mae MBS".[1]

4. The search criteria used to locate the loan was based on the following factors / information that correspond exactly with **Mr. and Mrs**. **Walton's** information: **Address**: 258 Unity drive NW; **City:** Marietta **State**: Georgia; **Zip Code**: 30064.

5. The loan fits into the guidelines of Fannie Mae which means that originators would sell them to Fannie who does not offer full transparency.

6. The original Note must be examined to insure proper endorsements were executed and that everything was conveyed into the trust as required.

7. Generally, if the DEED OF TRUST and the Note are not together with the same entity, there can be no legal enforcement of the Note. The DEED OF TRUST enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the DEED OF TRUST and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the DEED OF TRUST if each contains a different mortgagee/beneficiary; and, if the DEED OF TRUST is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

8. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void *ab initio*. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

9. Since the loan was sold, pooled and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

---

[1]   A Fannie Mae issued mortgage-backed security (MBS) represents an undivided beneficial ownership interest in a group or pool of one or more mortgages.  Loan level information is not provided on individual loans as Fannie Mae doesn't offer transparency.



**Certified Forensic Loan Auditors**

10. Moreover, once the Note was converted into a stock, or stock equivalent, it is no longer a Note.  If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

11. Once a loan has been securitized, which the aforementioned loan had been many times, it forever loses its security component (i.e., the DEED OF TRUST), and the right to foreclose through the DEED OF TRUST is forever lost.

12. The Promissory Note has been converted into a stock as a permanent fixture. It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, etc. There is no evidence on Record to indicate that the DEED OF TRUST was ever transferred concurrently with the purported legal transfer of the Note, such that the DEED OF TRUST and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

*(This area was intentionally left blank)*



**Certified Forensic Loan Auditors**

# V.  CONCLUSION

The creation of MERS changed the lending process. Instead of the lender being the Beneficiary on the DEED OF TRUST, MERS was now named as either the "Beneficiary" or the "Nominee for the Beneficiary" on the DEED OF TRUST. The concept was that with MERS assuming this role, there would be no need for Assignments of the DEED OF TRUST, since MERS would be given the "power of sale" through the DEED OF TRUST.

The naming of MERS as the Beneficiary meant that certain other procedures had to change. This was a result of the Note actually being made out to the lender, and not to MERS. Before explaining this change, it would be wise to explain the Securitization process.

As mentioned previously, Securitization and MERS required many changes in established practices. These practices were not and have not been codified, so they are major points of contention today.

One of the first issues to be addressed was how MERS might foreclose on a property. This was "solved" through an "unusual" practice.

- MERS has only 44 employees. They are all "overhead", administrative or legal personnel. How could they handle the load of foreclosures, Assignments, etc. to be expected of a company with their duties and obligations?  When a lender, title company, foreclosure company or other firm signed up to become a member of MERS, one or more of their people were designated as "Corporate Officers" of MERS and given the title of either Assistant Secretary or Vice President. These personnel were not employed by MERS, nor received income from MERS. They were been named "Officers" solely for the purpose of signing foreclosure and other legal documents in the name of MERS. (Apparently, there are some agreements which "authorize" these people to act in an Agency manner for MERS.)

This "solved" the issue of not having enough personnel to conduct necessary actions. It would be the Servicers, Trustees and Title Companies conducting the day-to-day operations needed for MERS to function.

As well, it was thought that this would provide MERS and their "Corporate Officers" with the "legal standing" to foreclose.

However, this brought up another issue that now needed addressing:

- When a Note is transferred, it must be endorsed and signed, in the manner of a person signing his paycheck over to another party. Customary procedure was to endorse it as "Pay to the Order of" and the name of the party taking the Note and then signed by the endorsing party. With a new party holding the Note, there would now need to be an Assignment of the Debt. This could not work if MERS was to be the foreclosing party.

The promissory note was made payable to BANK OF AMERICA, N.A.  No record document suggests that it has been indorsed to MERS or any other named entity.



**Certified Forensic Loan Auditors**

Once a name is placed into the endorsement of the Note, then that person has the beneficial interest in the Note. Any attempt by MERS to foreclose in the MERS name would result in a challenge to the foreclosure since the Note was owned by "ABC" and MERS was the "Beneficiary". MERS would not have the legal standing to foreclose, since only the "person of interest" would have such authority. So, it was decided that the Note would be endorsed "in blank", which effectively made the Note a "Bearer Bond", and anyone holding the Note would have the "legal standing" to enforce the Note under Uniform Commercial Code. This would also suggest that Assignments would not be necessary.

MERS has recognized the Note Endorsement problem and on their website, stated that they could be the foreclosing party only if the Note was endorsed in blank. If it was endorsed to another party, then that party would be the foreclosing party.

As is readily apparent, the above statute would suggest that Assignment is a requirement for enforcing foreclosure.

The question now becomes as to whether a Note Endorsed in Blank and transferred to different entities as indicated previously does allow for foreclosure. If MERS is the foreclosing authority but has no entitlement to payment of the money, how could they foreclose? ***This is especially true if the true beneficiary is not known. Why raise the question of who the true beneficiary is? Again, from the MERS website……...***

- "On MERS loans, MERS will show as the beneficiary of record. Foreclosures should be commenced in the name of MERS. To effectuate this process, MERS has allowed each servicer to choose a select number of its own employees to act as officers for MERS. Through this process, appropriate documents may be executed at the servicer's site on behalf of MERS by the same servicing employee that signs foreclosure documents for non-MERS loans. Until the time of sale, the foreclosure is handled in same manner as non-MERS foreclosures. At the time of sale, if the property reverts, the Trustee's Deed Upon Sale will follow a different procedure. Since MERS acts as nominee for the true beneficiary, it is important that the Trustee's Deed Upon Sale be made in the name of the true beneficiary and not MERS. ***Your title company or MERS officer can easily determine the true beneficiary.*** Title companies have indicated that they will insure subsequent title when these procedures are followed."

There, you have it. Direct from the MERS website. They admit that they name people to sign documents in the name of MERS. Often, these are Title Company employees or others that have no knowledge of the actual loan and whether it is in default or not.

Even worse, <span style="color:red">MERS admits that they are not the true beneficiary of the</span> loan. In fact, it is likely that <span style="color:red">MERS has no knowledge of the true beneficiary of the loan for whom they are representing in an "Agency" relationship.</span> They admit to this when they say "***Your title company or MERS officer can easily determine the true beneficiary.***



**Certified Forensic Loan Auditors**

To further reinforce that MERS is not the true beneficiary of the loan, one need only look at the following Nevada Bankruptcy case, <u>Hawkins, Case No. BK-S-07-13593-LBR (Bankr.Nev. 3/31/2009)</u> <u>(Bankr.Nev., 2009)</u> – **"A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal arrangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck."**

In the case of MERS, the Note and the DEED OF TRUST are held by separate entities. This can pose a unique problem dependent upon the court. There are many court rulings based upon the following:

**"The** DEED OF TRUST **is a mere incident of the debt it secures and an assignment of the debt carries with it the security instrument. Therefore, a** DEED OF TRUST **is inseparable from the debt and always abides with the debt. It has no market or ascertainable value apart from the obligation it secures.**

**A** DEED OF TRUST **has no assignable quality independent of the debt, it may not be assigned or transferred apart from the debt, and an attempt to assign the** DEED OF TRUST **without a transfer of the debt is without effect. "**

This very "simple" statement poses major issues. *To easily understand, if the* DEED OF TRUST *and the Note are not together with the same entity, then there can be no enforcement of the Note. The* DEED OF TRUST *enforces the Note. It provides the capability for the lender to foreclose on a property. If the Deed is separate from the Note, then enforcement, i.e. foreclosure cannot occur.* The following ruling summarizes this nicely.

In ***<u>Saxon vs Hillery, CA, Dec 2008, Contra Costa County Superior Court</u>***, an action by Saxon to foreclose on a property by lawsuit was dismissed due to lack of legal standing. This was because the Note and the DEED OF TRUST were "owned" by separate entities. The Court ruled that when the Note and DEED OF TRUST were separated, the enforceability of the Note was negated until rejoined.

The DEED OF TRUST securing the note, while naming BANK OF AMERICA, N.A. as "Lender," separately names the DEED OF TRUST Electronic Registration Systems, Inc. (MERS) as the "DEED OF TRUST." The conveyancing language granted the DEED OF TRUST to MERS "solely as nominee for Lender and Lender's successor's and assigns."

BANK OF AMERICA, N.A. was a "correspondent lender" that originated DEED OF TRUST loans which in turn, was sold and transferred into a "federally-approved securitization" named **FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I.**

**Certified Forensic Loan Auditors**

- The Note and Deed have taken two distinctly different paths. The Note was securitized into FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I.

- The written agreement that created the FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I is a matter of public record described in an "Offering Circular," available on the Fannie Mae website.   The promissory note in this case became Fannie Mae property in compliance with the requirement set forth in the Offering Circular. The acquisition of the assets of the subject Fannie Mae Fixed to Floating Rate Non-Cumulative Preferred Stock Series I and the Offering Circular are governed under the law.

- Moreover, Fannie Mae is not required to register the Preferred Stock with the U.S. Securities and Exchange Commission (the "SEC") under the Securities Act of 1933, as amended.  The shares of Preferred Stock are "exempted securities" within the meaning of the Securities Exchange Act of 1934, as amended (the "Exchange Act").

- The loan was originally made to BANK OF AMERICA, N.A. and was sold and transferred to FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I.  There is no record of Assignments from the original lender BANK OF AMERICA, N.A. to Fannie Mae.

In _Carpenter v. Longan_ 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), *the U.S. Supreme Court stated "The note and mortgage  are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."*

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid.  A security interest, however, cannot exist without an underlying existing obligation.  It is impossible to define security apart from its relationship to the promise or obligation it secures.  If the creditor transfers the note but not the DEED OF TRUST , the transferee receives a secured note; the security follows the note, legally if not physically.  If the transferee is given the DEED OF TRUST  without the note accompanying it, the transferee has no meaningful right except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685)

"Where the Mortgage has "transferred" only the Mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000)

By statute, assignment of the DEED OF TRUST  carries with it the assignment of the debt. . . Indeed, in the event that a DEED OF TRUST  loan somehow separates interests of the note and the DEED OF TRUST , with the DEED OF TRUST  lying with some independent entity, the DEED OF TRUST  may become unenforceable. *The practical effect of splitting the DEED OF*



**Certified Forensic Loan Auditors**

*TRUST  from the promissory note is to make it impossible for the holder of the note to foreclose*, unless the holder of the DEED OF TRUST  is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the DEED OF TRUST will never experience default because only the holder of the note is entitled to payment of the underlying obligation. *The DEED OF TRUST  loan becomes ineffectual when the note holder did not also hold the DEED OF TRUST .*"

**ANY ATTEMPT TO TRANSFER THE BENEFICIAL INTEREST OF A TRUST DEED WITHOUT OWNERSHIP OF THE UNDERLYING NOTE MOST LIKELY VOID**

*(This area was intentionally left blank)*



**Certified Forensic Loan Auditors**

## AFFIDAVIT OF FACTS

| | |
|---|---|
| **STATE OF GEORGIA** | ) |
| | ) sv.: **AFFIDAVIT** |
| **COUNTY OF FULTON** | ) |

I, Nkosi Gray, with personal knowledge of matters set forth herein, one of the people in Georgia, in correct public capacity, being of majority in age, competent to testify with clean hands declares and verifies that the facts stated herein are true, correct, and complete in all material facts, not misrepresented and made under the penalties of perjury of the laws of the United States of America and Georgia, except as to those matters that are therein made upon information and belief, and as to those claims or facts, the undersigned believes them to be true and admissible as evidence in a court of law and if called upon as a witness, I will testify to the veracity of my statements:

I, Nkosi Gray, have researched Bloomberg's Professional Service. I am authorized to use such service. I have completed the required training and I am voluntarily engaged in continual education through Bloomberg both online and at Bloomberg's New York facility, to stay abreast of Bloomberg Professional Service's latest developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg Terminal.

I am also a certified Mortgage Securitization Auditor and I have the requisite knowledge and the trained ability to navigate and perform searches on the Bloomberg Terminal as well as the Securities Exchange Commission (SEC), Fannie Mae, Freddie Mac and Mortgage Electronic registration Systems (MERS) sites regarding the analysis of Mortgage loans and the subsequent loan-related documents.

The contents of this affidavit are factual, but it is provided for informational purposes only and is not to be construed as "legal advice."

I am available for court appearances, in person or via phone, for further clarification or explanation of the information provide herein, if necessary.

By_____
    Nkosi Gray, MSA/Bloomberg Professional Researcher



**Certified Forensic Loan Auditors**

**STATE OF GEORGIA**              )
                                  ) sv.: **ACKNOWLEDGEMENT**
**COUNTY OF FULTON**              )

On February __, 2012 before me,_____

(Notary Public)

personally appeared **Nkosi Gray**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


 Signature _____ (Seal)


My commission Expires _____


***(This area was intentionally left blank)***