**Response Deadline:  October 15, 2012**
**Reply Deadline:  November 14, 2012**
**Hearing Date:  To be determined**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Lindsee P. Granfield
Boaz S. Morag

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., ET AL.,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>Jointly Administered |
| In re:<br><br>LEHMAN BROTHERS, INC.,<br><br>Debtor. | Case No.<br>08-01420 (JMP) SIPA |
| FIRSTBANK PUERTO RICO,<br><br>Plaintiff,<br><br>-against-<br><br>BARCLAYS CAPITAL INC.,<br><br>Defendant. | Adversary Proc. No.<br>10-04103 (JMP) |

**MEMORANDUM OF LAW IN SUPPORT OF BARCLAYS CAPITAL INC.'S**
**MOTION FOR CIVIL CONTEMPT SANCTIONS AGAINST**
**FIRSTBANK PUERTO RICO FOR WILLFUL VIOLATION OF THE SALE ORDER**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 6

ARGUMENT ...................................................................................................... 15

I.    THIS COURT SHOULD HOLD FIRSTBANK IN CONTEMPT FOR ITS
      WILLFUL VIOLATION OF THE SALE ORDER INJUNCTION ...................... 15

      A.    The Sale Order Injunction Is Clear And Unambiguous ............................ 17

      B.    There Is Clear And Convincing Evidence That FirstBank Failed
            To Comply With The Sale Order Injunction ................................. 18

      C.    FirstBank Has Not Diligently Attempted To Comply With
            The Sale Order Injunction In A Reasonable Manner................................. 20

      D.    FirstBank's Violation Of The Sale Order Injunction Was Willful ............. 24

II.   THIS COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS
      TO COMPENSATE BARCLAYS FOR FIRSTBANK'S WILLFUL
      CONTEMPT OF THE SALE ORDER INJUNCTION......................................... 26

CONCLUSION.................................................................................................... 29

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

11 U.S.C. § 105(a) .................................................................................... 15

11 U.S.C. § 363(f) ..................................................................................... 15

11 U.S.C. § 524(a)(2).................................................................................. 19

**Cases**

Bank of Am., N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.),
439 B.R. 811 (Bankr. S.D.N.Y. 2010) ...............................................................5-6, 18, 26, 28

Bank of N.Y. v. Meridian Biao Bank Tanzania Ltd. (In re Treco),
Nos. 95-44326, 00-8137, 2001 WL 1566709 (Bankr. S.D.N.Y. Dec. 10, 2001) ...............16, 17, 26-27

Banner v. Gibney-Campbell (In re Balco Equities Ltd.),
Adv. Proc. No. 05-09005 (CGM), 2006 WL 898042 (Bankr. S.D.N.Y. Mar. 28, 2006) ...    23

Bear U.S.A., Inc. v. Kim,
71 F. Supp. 2d 237 (S.D.N.Y. 1999)....................................................................17, 24, 26

Bessette v. Avco Fin. Servs., Inc.,
230 F.3d 439 (1st Cir. 2000) ........................................................................    15

Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.),
428 B.R. 43 (S.D.N.Y. 2010)........................................................................    15

Cox v. Zale Del., Inc.,
239 F.3d 910 (7th Cir. 2001) .......................................................................    20

DiGeronimo v. Weissberg (In re DiGeronimo),
354 B.R. 625 (Bankr. E.D.N.Y. 2006)................................................................    25

Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.),
Adv. Proc. No. 08-01633, 2011 WL 722582 (Bankr. S.D.N.Y. Feb. 22, 2011)................  passim

Fox Indus., Inc. v. Gurovich,
No. CV 03-5166TCP, 2004 WL 1896913 (E.D.N.Y. July 15, 2004)................................    27

Galella v. Onassis,
533 F. Supp. 1076 (S.D.N.Y. 1982)..................................................................    28

GTE Sylvania, Inc. v. Consumers Union,
445 U.S. 375 (1980)................................................................................    24

Page(s)

In re Balco Equities Ltd.,
323 B.R. 85 (Bankr. S.D.N.Y. 2005) ................................................................. 23

In re Biesboer,
No. 08-B-35834, 2010 WL 2940927 (Bankr. N.D. Ill. July 27, 2010) .............. 19, 20, 26

In re Boyd,
336 B.R. 277 (Bankr. E.D. Va. 2005) ................................................................. 20

In re Chief Exec. Officers Clubs, Inc.,
359 B.R. 527 (Bankr. S.D.N.Y. 2007) ............................................................... 15, 16

In re Eastman Kodak Co.,
No. 12-10202 (ALG), 2012 WL 2255719 (Bankr. S.D.N.Y. June 15, 2012) .................... 23

In re Lehman Bros. Holdings, Inc.,
445 B.R. 143 (Bankr. S.D.N.Y. 2011) ................................................ 5, 7-8, 14, 18

In re R.J. Dooley Realty, Inc.,
No. 09-36777, 2010 WL 2076959 (Bankr. S.D.N.Y. May 21, 2010) ............... 16

In re Sandburg Fin. Corp.,
446 B.R. 793 (S.D. Tex. 2011) ........................................................................... 20

In re Sax,
796 F.2d 994 (7th Cir. 1986) ............................................................................. 23

In re Thompson,
No. 06-32622, 2007 WL 2406886 (Bankr. N.D.N.Y. Aug. 21, 2007) ............... 25

Jarvar v. Title Cash of Mont., Inc. (In re Jarvar),
422 B.R. 242 (Bankr. D. Mont. 2009) ............................................................... 20

Licensing by Paolo, Inc. v. Sinatra (In re Gucci),
126 F.3d 380 (2d Cir. 1997) ............................................................................... 28-29

MacArthur Co. v. Johns-Mansville Corp. (In re Johns-Mansville Corp.),
837 F.2d 89 (2d Cir. 1988) ................................................................................. 22-23

Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.),
920 F.2d 183 (2d Cir. 1990) ............................................................................... 16

N.Y. State Nat'l Org. for Women v. Terry,
886 F.2d 1339 (2d Cir. 1989) ............................................................................. 17

N.Y. State Nat'l Org. for Women v. Terry,
952 F. Supp. 1033 (S.D.N.Y. 1997) ................................................................... 17, 24

                                                                          Page(s)

Nicholas v. Oren (In re Nicholas),
457 B.R. 202 (Bankr. E.D.N.Y. 2011)...................................................................  passim

Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.),
Adv. Proc. No. 05-01268 (ALG), 2006 WL 408317 (Bankr. S.D.N.Y. Jan. 27, 2006) .....  15-16

Nisselson v. Empyrean Investment Fund, L.P. (In re MarketXT Holdings Corp.),
Adv. Proc. No. 05-01268 (ALG), 2006 WL 2583644 (Bankr. S.D.N.Y. July 21, 2006)...  28

Paramedics Electromedia Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,
369 F.3d 645 (2d Cir. 2004)...................................................................................  16, 24

Sensenich v. Ledyard Nat'l Bank (In re Campbell),
398 B.R. 799 (Bankr. D. Vt. 2008)..........................................................................  25

Shady Records, Inc. v. Source Enters., Inc.,
351 F. Supp. 2d 64 (S.D.N.Y. 2004)........................................................................  27

Shiboleth v. Yerushalmi (In re Yerushalmi),
Adv. Proc. No. 8-08-08037-478, 2011 WL 2436531 (Bankr. E.D.N.Y. June 13, 2011) ...  28

Software Freedom Conservancy, Inc. v. Westinghouse Digital Elec., LLC,
812 F. Supp. 2d 483 (S.D.N.Y. 2011)......................................................................  28

Travelers Indem. Co. v. Bailey,
557 U.S. 137 (2009)............................................................................................  15

Weitzman v. Stein,
98 F.3d 717 (2d Cir. 1996).............................................................................16, 26, 27

Defendant Barclays Capital Inc. ("Barclays") respectfully submits this

memorandum of law, accompanied by the parties' Stipulations of Fact dated September 10, 2012

and the exhibits attached thereto (the "Stipulated Facts"), Barclays' Statement of Undisputed

Facts Pursuant to Local Rule 7056-1 in Support of Its Motion for Summary Judgment (the

"Local Rule 7056-1 Statement"), the Declaration of Boaz S. Morag in Support of Barclays'

Motion for Summary Judgment dated September 13, 2012 (the "Morag Summary Judgment

Declaration") and the exhibits attached thereto, and the Declaration of Boaz S. Morag in Support

of its Motion for Civil Contempt Sanctions Against FirstBank Puerto Rico dated September 13,

2012 (the "Morag Contempt Declaration") and the exhibits attached thereto,[1] in support of its

motion pursuant to Federal Rule of Bankruptcy Procedure 9020 for an order pursuant to 11

U.S.C. § 105(a) and this Court's inherent powers finding FirstBank Puerto Rico ("FirstBank") in

civil contempt, and awarding sanctions against FirstBank, for its willful violation of the

injunction contained in this Court's Sale Order[2] (the "Sale Order Injunction").

## PRELIMINARY STATEMENT

FirstBank should never have sued Barclays (the "FirstBank Action") to recover

positions in 20 securities (the "20 Positions") that Barclays acquired from Lehman Brothers Inc.

("LBI").  FirstBank's claims are barred, and its suit enjoined, by the express terms of this Court's

Sale Order, which approved the transfer of those assets to Barclays "free and clear" of the very

---

[1]      Citations to the Local Rule 7056-1 Statement are in the format "B56-1 ¶ __."

      Citations to exhibits are in the format "Ex. __."  Exhibits 1–19 are attached to the Stipulated Facts.
Exhibits 20–82 are attached to the Morag Summary Judgment Declaration.  Exhibits 83–91 are attached to the
Morag Contempt Declaration.

[2]      The "Sale Order" refers to the September 19, 2008 Order Under 11 U.S.C. §§ 105(a), 363, and 365 and
Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased
Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and
Unexpired Leases, Case No. 08-13555 (JMP) (Sept. 20, 2008), ECF No. 258.  Ex. 8 (Sale Order).  The Sale Order
was incorporated by reference in the LBI SIPA proceeding as well.  See Order Approving, And Incorporating By
Reference For The Purposes Of This Proceeding, An Order Authorizing The Sale Of Purchased Assets And Other
Relief In The Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, Case No. 08-01420 (JMP) (Sept. 19, 2008),
ECF No. 3.

claims FirstBank makes and expressly enjoined such suits against Barclays.  By filing and

continuing to prosecute its claims against Barclays with knowledge of the terms of the Sale

Order and the information in its possession demonstrating that the 20 Positions were transferred

to Barclays under that order, FirstBank's actions constitute a willful violation of the Sale Order

necessitating a finding of contempt.  To remedy the substantial economic harm that having to

defend the FirstBank Action has caused Barclays, and to vindicate the principles of finality in §

363(b) sales necessary to protect both debtors and purchasers of assets in bankruptcy, this Court

should order FirstBank to compensate Barclays for FirstBank's longstanding and ongoing

contempt via an award of attorneys' fees and costs for the expenses Barclays has already

incurred and those it will continue to incur until FirstBank ceases its willful violation of the Sale

Order.

The Sale Order approved the sale transaction described in the Asset Purchase

Agreement dated September 16, 2008 (the "APA")[3] and the Clarification Letter dated as of

September 20, 2008[4] (the "Sale Transaction"), whereby debtors Lehman Brothers Holdings, Inc.

("LBHI"), LBI and LB 745 LLC, transferred certain assets (the "Purchased Assets") to Barclays

free and clear of any interests therein.  This Court expressly enjoined persons or entities

purporting to have claims to, or interests in, such Purchased Assets from suing Barclays; such

claims were instead "transferred and attached" to LBHI's and LBI's interests in the proceeds of

the Sale Transaction.

As demonstrated in Barclays' motion for summary judgment in the FirstBank

Action, which Barclays is submitting simultaneously with this motion, LBI had obtained the 20

Positions in repurchase transactions from Lehman Brothers Special Financing, Inc. ("LBSF"), to

---

[3]      Ex. 20 (APA).

[4]      Ex. 22 (Clarification Letter).

whom FirstBank had previously delivered the 20 Positions as collateral under an ISDA Master

Agreement and Credit Support Annex between LBSF and FirstBank.[5]  FirstBank has known

since before filing its suit that the 20 Positions were transferred to Barclays under the Sale Order.

However, rather than (a) appealing the Sale Order, as it could have done; (b)

making a claim against the proceeds of the Sale Transaction as provided for in the Sale Order;

(c) timely seeking relief from the Sale Order, or (d) commencing an action for declaratory relief

to determine whether FirstBank's claims were barred by the Sale Order, FirstBank instead chose

to do that which the Sale Order Injunction plainly bars – bringing and continuing to prosecute

this litigation against Barclays to recover damages relating to the 20 Positions.

FirstBank's violation of the Sale Order Injunction was and continues to be

willfully perpetrated.  Months before it filed suit against Barclays in December 2009, FirstBank

was informed that the securities at issue were transferred to Barclays on September 18, 2008 and

"assum[ed]" in its September 19, 2009 letter to Barclays that the securities at issue were

transferred "from LBI to Barclays . . . in connection with the repo transaction on September 18,

2008, that subsequently became part of the sale of assets of Lehman Brothers Holdings, Inc., LBI

and LB 745 LLC to Barclays," that was documented in the "publicly available copies of the

Asset Purchase Agreement, the Amendment and the September 20 Letter," which FirstBank had

reviewed with its counsel.  Ex. 10 (September 19, 2009 letter).  Barclays immediately put

FirstBank on notice that the sale of assets to Barclays was approved by this Court's Sale Order

that found Barclays to be a "good faith purchaser that purchased securities from LBI free and

clear of all claims" and that "enjoined any party claiming an interest in the assets that Barclays

---

[5]    FirstBank purportedly seeks to recover from Barclays those securities that FirstBank pledged to LBSF as collateral under that ISDA Master Agreement and Credit Support Annex and which Barclays received under the Sale Order.  Discovery in the FirstBank Adversary has established that Barclays received only the 20 Positions and not certain other securities collateral pledged by FirstBank to LBSF.

purchased from LBI from asserting, prosecuting or otherwise pursuing claims against Barclays."

Ex. 11 (September 25, 2009 letter).  Yet FirstBank opted to violate the Sale Order by suing

Barclays without doing any further investigation that would have confirmed the facts.  Moreover,

FirstBank continued its suit:

- Even after Barclays demonstrated to FirstBank in April 2010 that the 20 Positions were in fact listed on Schedule A to the Clarification Letter (which schedule was available to FirstBank beginning no later than October 2008);

- Even after the District Court, where FirstBank filed its Action, held on September 7, 2010 that the "Bankruptcy Court's Sale Order ostensibly transferred the collateral at issue from Lehman to Barclays Capital, Inc." and that "[a]ny remaining rights that [FirstBank] has in the collateral would need to be determined by analyzing the [e]ffect of the Bankruptcy Court's Sale Order," Ex. 81 at 2 (Referral Order);

- Even after this Court ruled on February 22, 2011 that securities listed on Schedule A to the Clarification Letter were "Purchased Assets" under the Sale Order and consequently that claims against Barclays with respect to such securities are barred by the Sale Order, see Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.), Adv. Proc. No. 08-01633, 2011 WL 722582, at *5 (Bankr. S.D.N.Y. Feb. 22, 2011);

- And even after Barclays offered FirstBank one last chance to dismiss its claims with prejudice with each side to bear its own fees and costs, before Barclays filed its motion for summary judgment and this motion for contempt.  See Exs. 85 (Aug. 24, 2012 letter), 86 (Sept. 6, 2012 letter).

This Court has emphasized the importance of the finality of bankruptcy asset sales

in general and of the Sale Transaction in particular.  In order to encourage potential purchasers to

bid on bankruptcy assets, bankruptcy courts need to be able to assure purchasers that any claims

against the purchased assets will not be asserted against the purchaser.  This assurance, which is

explicitly authorized by § 363(f) of the Bankruptcy Code, inures to the benefit of the bankruptcy

estate, and thus to its creditors, because the estate is able to realize greater value from such a

sale.  The Sale Order entered by this Court gave Barclays such assurance, which enabled

Barclays – the only willing and able bidder – to buy the Purchased Assets from debtors at a

4

critical time for both debtors' estates and the worldwide financial markets, by ordering that

Barclays take the Purchased Assets free and clear (and directing any claims against the

Purchased Assets to the proceeds of their sale), <u>and by enjoining persons or entities claiming an</u>

<u>interest in the Purchased Assets from suing Barclays on such claims</u>.

      As this Court has held, the Sale Transaction, which includes the transfer of the 20

Positions by LBI to Barclays, "needed to be approved" at the September 19, 2008 sale hearing,

"not conditionally with exposure to potential risks of hindsight challenges," such as the

FirstBank Action, "but absolutely and finally."  <u>In re Lehman Bros. Holdings, Inc.</u>, 445 B.R.

143, 153 (Bankr. S.D.N.Y. 2011).  FirstBank's ill-advised suit against Barclays, which has cost

Barclays substantial sums to defend against, demonstrates that it was necessary and appropriate

to include an injunction in the Sale Order.  A ruling in Barclays' favor on its motion for

summary judgment would vindicate the Court's determination that Barclays received the

Purchased Assets free and clear of any claims, but would not vindicate the principle embodied in

the Sale Order Injunction that Barclays should never have been required to defend against

FirstBank's claims and expend the substantial sums that FirstBank's litigation strategy imposed

on Barclays.  The goal of promoting § 363 sales would be seriously undermined if FirstBank

were permitted to avoid the consequences of pursuing enjoined claims, particularly here where

its conduct was willful and it had a number of alternative remedies available to it.

      This Court has also held that a party's subjective belief that it was not violating an

injunction is no defense to the imposition of attorneys' fees as a contempt sanction upon the

Court's determination that the party was mistaken.  In the dispute between Bank of America

("BOA") and the LBHI estate, this Court concluded that BOA "must have determined based on

its own review of the facts and the law and after conferring with counsel" that the injunction

inherent in the automatic stay did not preclude its "exercise of a setoff right."  <u>Bank of Am.</u>,

5

N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.), 439 B.R. 811, 834

(Bankr. S.D.N.Y. 2010). Yet BOA's subjective good faith afforded it no defense to this Court's

simultaneous rulings on cross-motions for summary judgment that (i) BOA had indeed violated

the statutory injunction of § 362(a)(7), and (ii) such violation subjected BOA to sanctions in the

form of attorneys' fees to compensate the LBHI Estate for the damage caused to it from the

automatic stay violation. Id. at 837. So too, here, the fact that FirstBank is itself moving for

summary judgment on its claims against Barclays (even if in good faith), is no defense to this

contempt motion. FirstBank has willfully pursued its claims against Barclays, conscious at all

times of the risk, as in the BOA case, that this Court would disagree with FirstBank's position

and find the 20 Positions to be Purchased Assets under the Sale Order. Accordingly, FirstBank

should be held responsible for the attorneys' fees Barclays was forced to expend to date and will

continue to have to expend until FirstBank honors the Sale Order and terminates all proceedings

against it.

## STATEMENT OF FACTS[6]

As explained in Barclays' summary judgment motion, it is undisputed that each of

the 20 Positions (though originally posted by FirstBank as collateral to LBSF) was held by LBI

in its own name on the morning of September 18, 2008. See Barclays' Mem. of Law in Supp. of

Mot. for Summ. J. at 13–17. Later that day,

> LBI transferred [the 20 Positions], as well as a portfolio of other
> securities, to Barclays under the terms of a repurchase agreement
> (the "Repo"). . . . At the same time, LBI, LBHI and Barclays
> were negotiating a transaction (the "Sale Transaction") under
> which Barclays would acquire Lehman's North American broker-

---

[6]      The facts supporting this motion, which are not in dispute, are taken from the Stipulated Facts and exhibits attached thereto, the Local Rule 7056-1 Statement, the Morag Summary Judgment Declaration and the Morag Contempt Declaration and exhibits attached thereto, and from documents filed on the public docket. All capitalized terms not defined herein shall have the meaning ascribed to such terms in the Local Rule 7056-1 Statement or in Barclays' Memorandum of Law in Support of Its Motion for Summary Judgment.

dealer and investment banking operations (the "Broker–Dealer Business"). . . . The Sale Transaction was memorialized in an asset purchase agreement, dated as of September 16, 2008 (the "APA"), and was later clarified, amended and supplemented by a clarification letter dated as of September 20, 2008 (the "Clarification Letter"). . . . The Clarification Letter specifically provided that the rights and obligations of the parties under the Repo (including LBI's right to repurchase the transferred securities) would terminate, and all securities held by Barclays under the Repo would be deemed part of the Purchased Assets. . . .

On September 19, 2008, as a means to facilitate the Sale Transaction and as part of a coordinated strategy to promptly sell the Broker–Dealer Business to Barclays, the United States District Court for the Southern District of New York entered an Order Commencing Liquidation of LBI that appointed the SIPA Trustee and referred the liquidation proceeding to this Court. . . . Later that same day, a hearing (the "Sale Hearing") took place regarding the Sale Transaction that was held jointly in both the LBHI chapter 11 case [and] the LBI liquidation. The Sale Hearing extended into the early morning hours of September 20.

At the conclusion of the Sale Hearing, the Court approved the Sale Transaction and entered an order dated September 20, 2008 (the "Sale Order"). . . . In the Sale Order, the Court found that Barclays was a "good faith Purchaser" and had "proceeded in good faith in all respects in connection with" the Sale Transaction. . . . The Sale Order also provides that the transfer of the Purchased Assets "will be a legal, valid and effective transfer of the Purchased Assets . . . free and clear of all Liens, claims . . . or interests of any kind or nature whatsoever . . . ."

Evergreen Solar, 2011 WL 722582, at *3 (citations omitted).

Additionally, the Sale Order unambiguously directed that

all persons and entities . . . holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Purchased Assets . . . arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses before the Closing Date or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Purchaser, its property, its successors and assigns, its affiliates or the interests of the Debtors in such Purchased Assets, such persons' or entities'

7

> Interests or Claims.  Following the Closing Date, no holder of an
> Interest in or Claim against the Debtors shall interfere with
> Purchaser's title to or use and enjoyment of the Debtors' interests
> in the Purchased Assets based on or related to such Interests or
> Claims, and all such Claims and Interests, if any, shall be, and
> hereby are transferred and attached to the Debtors' interests in the
> Sale proceeds as provided in this Sale Order in the order of their
> priority, with the same validity, force and effect which they have
> against such Purchased Assets as of the Closing Date, subject to
> any rights, claims and defenses that the Debtors' estates and
> Debtors, as applicable, may possess with respect thereto.

Ex. 8 ¶ 7 (Sale Order).  The Sale Transaction closed on September 22, 2008.  Lehman, 445 B.R.

at 162.

Between the time the Sale Order was entered and when FirstBank filed suit

against Barclays on December 21, 2009, FirstBank and its experienced counsel monitored and

participated in the Lehman debtors' bankruptcy proceedings.  B56-1 ¶ 79.  As reflected below, as

FirstBank became aware or readily could have become aware of facts relevant to its claim to the

20 Positions, FirstBank had a number of options available to it in those proceedings to pursue

that claim without violating the Sale Order.  FirstBank, however, pursued none of the following

options:

| FirstBank could have… | By… | When it knew or should have known… |
|---|---|---|
| Filed a direct appeal from the Sale Order | November 10, 2008[7] | The APA and Clarification Letter were filed on the docket of the main LBHI case on September 17 and 22, 2008, respectively.[8]  On September 29, 2008, Barclays and debtors filed a joint motion seeking permission to file Schedules A and B to the Clarification Letter under seal, in which Barclays and debtors made clear that they were "willing to provide the Schedules to creditors who sign a confidentiality agreement which, inter alia, restricts use of the Schedules to such creditor's role as a creditor in the Chapter 11 Cases."  Ex. 23 ¶¶ 8, 12 (Joint Seal Motion).  Beginning no later than October 2008 Barclays provided Schedules A and B to interested parties that had signed confidentiality agreements with Barclays.  B56-1 ¶ 44.  Had FirstBank elected to take up Barclays' offer, it would have discovered that securities bearing the same CUSIPs and amounts as its posted collateral were listed on Schedule A.  In other words, FirstBank could have learned before the November 10, 2008 deadline for filing a direct appeal that the 20 Positions had been transferred to Barclays pursuant to the Sale Order.  FirstBank did not appeal the Sale Order.  B56-1 ¶ 75. |
| Pursued a claim against the proceeds of the Sale Transaction | June 1, 2009[9] | Since November 10, 2008, when FirstBank filed its third-quarter Form 10-Q with the Securities and Exchange Commission, to date, FirstBank has maintained the position that it "believes that the securities pledged as collateral should not be part of the bankruptcy estate. . . ."  Exs. 29 at 78 (FirstBank Q3 2008 10-Q), 87 (FirstBank Q2 2012 10-Q).  In a recent filing in the LBI SIPA proceeding, FirstBank similarly asserted that its collateral never became property of any debtor's estate.  Ex. 89 (FirstBank Customer Motion).  If FirstBank believed that the 20 Positions were not property of LBI, it could have brought a claim against the proceeds of the Sale Transaction in the hands of LBI to recover the value for which it is suing Barclays. |

---

[7]    The time to file a notice of appeal from the Sale Order did not expire until November 10, 2008.  Evergreen Solar, 2011 WL 722582, at *6 (citing Fed. R. Bankr. P. 8002(b)).

[8]    See Debtors' Mot. to (A) Schedule a Sale Hr'g; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; And (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, Case No. 08-13555 (JMP) (Sept. 17, 2008), ECF No. 60; Notice of Filing of Purchase Agreement Approved by Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, Case No. 08-13555 (JMP) (Sept. 22, 2008), ECF No. 280.

| FirstBank could have… | By… | When it knew or should have known… |
|---|---|---|
| Moved for relief from the Sale Order under Rule 60(b) | September 21, 2009[10] | In June and July 2009, FirstBank was told by JPMorgan Chase that its posted collateral had been transferred to Barclays on September 18, 2008.  B56-1 ¶ 65.  Thus, at a minimum, FirstBank should have known that the 20 Positions were Purchased Assets by July 2009.  In fact, FirstBank "assum[ed]" as much in a September 17, 2009 letter to Barclays that referenced the APA, Clarification Letter, and Sale Order, which FirstBank represented that it had reviewed with counsel.  Yet FirstBank did not seek Rule 60(b) relief from the Sale Order within the one-year limit for doing so. B56-1 ¶ 75. |
| Filed a proof of claim against LBSF and LBHI | September 22, 2009[11] | On June 30, 2009, FirstBank was informed by the Lehman estate that "Lehman rehypothecated the collateral which was posted to us and permitted under the ISDA;" that "[o]n the termination date, the collateral was set-off against the termination payment owed to us on the swap, so you don't owe us a termination payment and you can make a claim against the estate for the excess."  B56-1 ¶ 59. Despite this advice, and despite acknowledging in a pleading before this Court that LBSF was in breach of its contractual obligation to return the excess collateral, see Ex. 49 at 2, 6 (Limited Objection), FirstBank never pursued a claim against LBSF or LBHI, LBSF's guarantor, by the deadline for filing proofs of claim, B56-1 ¶ 76. |
| Filed a declaratory judgment action | December 21, 2009[12] | Rather than running the risk that it was in violation of the Sale Order Injunction, FirstBank could have acknowledged and respected the injunction by instead commencing an action for declaratory relief seeking a determination whether the 20 Positions were Purchased Assets. |

Instead of pursuing any of these options, however, on December 21, 2009, in

violation of the unambiguous language of the Sale Order Injunction, FirstBank filed suit against

---

[9]    *I.e.*, the bar date set for non-customer claims against LBI.

[10]    *I.e.*, one year after the Sale Order was entered, pursuant to Fed. R Bankr. P. 9024, 9006(b)(2), Fed. R. Civ. P. 60(c)(1).

[11]    *I.e.*, the bar date set for claims against, inter alia, LBHI and LBSF.

[12]    *I.e.*, before FirstBank filed suit against Barclays.

Barclays in the District Court for the Southern District of New York, claiming "an amount equal to the value of the [FirstBank Posted Collateral] as of the date it was wrongfully delivered to [Barclays], plus all interest, income or other benefits paid to [Barclays] or otherwise derived therefrom, which amount is not less than $62-million [sic]." Ex. 28 at 16 (Complaint).

By letter dated February 9, 2010, Barclays requested that the District Court refer FirstBank's complaint to this Court for disposition given that it turned on the construction and enforcement of the Sale Order. Ex. 16 (February 9, 2010 letter). Further, on February 11, 2010, Barclays moved to dismiss FirstBank's complaint for failure to state a claim, in part on the ground that the Sale Order provided that the Purchased Assets were transferred to Barclays "free and clear" of all interests and claims. Ex. 77 at 10-13 (Barclays' Motion to Dismiss).[13] Though the District Court granted in part and denied in part Barclays' motion to dismiss,[14] it did so based on its obligation (given the procedural posture) to accept as true FirstBank's allegation that the 20 Positions were not Purchased Assets. Rather than call into question the validity of the Sale Order Injunction, or even its applicability to FirstBank's suit against Barclays, however, the District Court recognized the binding force of the Sale Order on FirstBank's lawsuit. During the hearing on Barclays' motion to dismiss on April 29, 2010, the District Court concluded that the "dispositive" question in the case is whether the 20 Positions were "Purchased Assets" within the meaning of the APA, the Clarification Letter, and the Sale Order. Ex. 78 at 97:9-16 (Motion to Dismiss Hearing Tr.).

---

[13]     Barclays did not move to dismiss based on (and thus the District Court never considered) the Sale Order Injunction. Barclays expressly reserved its "rights to seek a contempt finding [for violation of the Sale Order Injunction] and damages for its costs in connection with this proceeding." Ex. 77 at 12 n.11 (Barclays' Motion to Dismiss).

[14]     The District Court denied Barclays' motion to dismiss FirstBank's unjust enrichment, constructive trust/accounting and conversion claims, and granted Barclays' motion to dismiss FirstBank's negligence and breach of contract claims. Ex. 79 (Motion to Dismiss Order).

On May 28, 2010, because the District Court had not ruled on Barclays' prior request for referral, Barclays filed a formal motion to refer this matter to this Court, based on the same argument as in its February 9, 2010 letter that the suit turned on the construction and enforcement of this Court's Sale Order.  See Ex. 80 (Barclays' Motion to Refer).  In granting that motion on September 7, 2010, the District Court found that this matter was a core proceeding, stating:

> [The] Sale Order ostensibly transferred the collateral at issue from Lehman to [Barclays].  Any right [Barclays] would have to the collateral would be established pursuant to the Sale Order.  Moreover, any remaining rights that [FirstBank] has in the collateral would need to be determined by analyzing the [e]ffect of the Bankruptcy Court's Sale Order.
>
> The dispute in this case is a core proceeding and is referred to the Bankruptcy Court for the Southern District of New York.

Ex. 81 at 2 (Referral Order).

Although FirstBank's suit was barred from the moment it was filed, FirstBank has had multiple opportunities since to avoid liability for the attorneys' fees Barclays is seeking by this contempt motion.  Throughout the pendency of the FirstBank Action, FirstBank has been provided with information that even more clearly establishes that the 20 Positions are Purchased Assets.  For example:

| FirstBank should have dismissed its suit against Barclays after… | When FirstBank learned… |
|---|---|
| April 15, 2010 | On April 15, 2010, Barclays provided FirstBank with a complete copy of Schedule A and Schedule B to the Clarification Letter and directed it to the line entries on Schedule A where its CUSIPs appear, demonstrating that the 20 Positions were among the Purchased Assets covered by the Sale Order and that Barclays never received the other securities that FirstBank had posted to LBSF.  Ex. 88 ¶ 4 (MacKinnon Declaration). |
| April 29, 2010 | At the April 29, 2010 hearing on Barclays' motion to dismiss, the District Court found that the "dispositive" question in the case is whether the 20 Positions were "Purchased Assets" within the meaning of the APA, the Clarification Letter, and the Sale Order, thereby putting FirstBank on notice that if it was wrong on the facts, it faced liability to Barclays under the Sale Order.  Ex. 78 at 97:9-16 (Motion to Dismiss Hearing Tr.). |
| September 7, 2010 | On September 7, 2010, the District Court ruled on Barclays' renewed referral motion finding that the FirstBank Action constituted a core proceeding arising in the LBHI and LBI proceedings, that the Sale Order "ostensibly transferred" the 20 Positions to Barclays, and that any remaining rights FirstBank had to the 20 Positions "would need to be determined by analyzing the [e]ffect of the Bankruptcy Court's Sale Order." Ex. 81 at 2 (Referral Order). |

| FirstBank should have dismissed its suit against Barclays after… | When FirstBank learned… |
|---|---|
| February 28, 2011 | On February 22, 2011, this Court issued two opinions that unambiguously confirmed (what was already clear) that the securities listed on Schedule A to the Clarification Letter, including the 20 Positions, were Purchased Assets.  First, in addressing Rule 60 motions that challenged certain aspects of the Sale Order, this Court plainly ruled, among other things, that it "will regard the [Clarification Letter] as having been approved under the broad language of the Sale Order."  In re Lehman Bros. Holdings Inc., 445 B.R. at 190.  Second, in a separate opinion, this Court ruled that securities listed on Schedule A to the Clarification Letter were Purchased Assets and thus claims against Barclays to recover those securities were barred by the Sale Order.  Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.), Adv. Proc. No. 08-01633, 2011 WL 722582, at *5 (Bankr. S.D.N.Y. Feb. 22, 2011).  On February 28, 2011, counsel to Barclays sent a letter to FirstBank's counsel, requesting that FirstBank dismiss its suit, on the ground that it plainly violated the Sale Order Injunction, and advising that Barclays intended to seek attorneys' fees expended to defend any further prosecution of this clearly enjoined litigation.  Ex. 82 (February 28, 2011 letter).  By letter dated March 3, 2011, FirstBank refused to dismiss its enjoined claims.  Ex. 83 (March 3, 2011 letter).[15] |
| August 31, 2012 | By letter dated August 24, 2012, counsel to Barclays reiterated its position that the FirstBank Action was enjoined by the Sale Order and provided FirstBank with a final opportunity to voluntarily withdraw its claims with prejudice, each side to bear its own fees and costs, otherwise Barclays would move the Court for contempt sanctions against FirstBank.  Ex. 85 (August 24, 2012 letter).  FirstBank refused to dismiss its claims.  Ex. 86 (September 6, 2012 letter). |

FirstBank's conduct demonstrates its knowing, willful and unwavering commitment to accept the consequences if this Court rejects its claims.  Those consequences

---

[15]     Barclays replied on March 9, 2011, reiterating its position "that the continued assertion of claims against Barclays would violate the injunction contained in the Sale Order" and that, therefore, "any costs Barclays incurs in further litigation of this matter will be, in our view, chargeable to FirstBank."  Ex. 84 (March 9, 2011 letter).

include not only FirstBank's own expenses in pursuing its case but also those that Barclays was forced to incur in defending it.

## ARGUMENT

This Court has the power to, and should, hold FirstBank in contempt of the Sale Order Injunction. Not only are all the elements of the test for civil contempt unquestionably met – the injunction is clear and unambiguous, FirstBank clearly violated it, and did not diligently attempt to comply with it – this Court should vindicate the vital interests in the finality of bankruptcy asset sales by ordering FirstBank to compensate Barclays for its costs in defending against a lawsuit that this Court clearly enjoined, and which was willfully perpetrated, lest future bankruptcy estates be unable to realize significant value at court-approved asset sales.

## I.    THIS COURT SHOULD HOLD FIRSTBANK IN CONTEMPT FOR ITS WILLFUL VIOLATION OF THE SALE ORDER INJUNCTION

As a preliminary matter, this Court "plainly" has authority to enforce the Sale Order Injunction. Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009).[16] The Court's power to "enforce" its injunction necessarily includes the power to hold in contempt – and award sanctions against – a party that violates such injunction. See Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000) ("§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have. . . . Those contempt powers inherently include the ability to sanction a party."); Nicholas v. Oren (In re Nicholas), 457 B.R. 202, 225 (Bankr. E.D.N.Y. 2011); In re Chief Exec. Officers Clubs, Inc., 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007); Nisselson v. Empyrean Inv. Fund, L.P. (In re

---

[16]    Though no longer open to question, see Travelers, 557 U.S. at 152, the Court was well within its jurisdiction to issue the Sale Order Injunction, which was "necessary or appropriate to carry out" the "free and clear" authority of section 363(f) of the Bankruptcy Code. See 11 U.S.C. §§ 105(a), 363(f); Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.), 428 B.R. 43, 56-57 (S.D.N.Y. 2010) ("[C]ourts have characterized the injunctive authority of bankruptcy courts as 'core' when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the 'free and clear' authority of section 363(f)." (citation omitted)).

MarketXT Holdings Corp.), Adv. Proc. No. 05-01268 (ALG), 2006 WL 408317, at *1 (Bankr.

S.D.N.Y. Jan. 27, 2006) ("It is well accepted, in light of the 2001 amendments to Rule 9020, that

bankruptcy courts have power to enter civil contempt orders.").[17]

      A party may be held in civil contempt for failure to comply with a court order if

"(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to

comply in a reasonable manner."  Paramedics Electromedia Comercial, Ltda. v. GE Med. Sys.

Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (citation omitted); Bank of N.Y. v. Meridian

Biao Bank Tanzania Ltd. (In re Treco), Nos. 95-44326, 00-8137, 96-44240 (SMB), 2001 WL

1566709, at *5 (Bankr. S.D.N.Y. Dec. 10, 2001) (citation omitted)); Chief Exec. Officers Clubs,

359 B.R. at 535.[18]

      "[S]anctions for civil contempt serve two purposes: to coerce future compliance

and to remedy any harm past noncompliance caused the other party."  Weitzman v. Stein, 98

F.3d 717, 719 (2d Cir. 1996).  Though courts are "vested with wide discretion" to fashion a

proper remedy to achieve future compliance, "[t]he compensatory goal, by contrast, can only be

met by awarding to the [contempt victim] any proven damages."  Id.  When faced with an

instance of willful contempt, a court *must* award reasonable attorneys' fees and legal costs to

compensate the contempt victim unless there are "persuasive grounds" for the denial of fees.  Id.

---

[17]    Though here FirstBank is in violation of this Court's order rather than the automatic stay, case law under the automatic stay is applicable.  The automatic stay functions as an injunction, see In re R.J. Dooley Realty, Inc., No. 09-36777, 2010 WL 2076959, at *3 (Bankr. S.D.N.Y. May 21, 2010) ("The automatic stay is a phenomenon in law, a broad injunction that stops efforts to collect pre-petition debts."), and contempt sanctions are the proper remedy for willful violations of the automatic stay where the victim, like Lehman Brothers, is not a natural person. See Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d 183, 187 (2d Cir. 1990) ("For [corporate] debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay.").

[18]    Alternatively, courts in this circuit have articulated the test as a two-part inquiry: "(1) did the party know of the lawful order of the court, and (2) did the defendant comply with it."  Nicholas, 457 B.R. at 225.  However articulated, the test is easily met here for the reasons discussed below.

A violation of a court order is willful when the "contemnor [1] had actual notice of the court's order, [2] was able to comply with it, [3] did not seek to have it modified, and [4] did not make a good faith effort to comply." N.Y. State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997); see also Bear U.S.A., Inc. v. Kim, 71 F. Supp. 2d 237, 249-50 (S.D.N.Y. 1999).

**A.    The Sale Order Injunction Is Clear And Unambiguous**

A clear and unambiguous order is one "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir. 1989); see In re Treco, 2001 WL 1566709, at *6 (similar). Here, the conduct proscribed by the Sale Order is "asserting, prosecuting or otherwise pursuing" a claim against Barclays based on an interest in the Purchased Assets. See Ex. 8 ¶ 7 (Sale Order). The Sale Order is therefore "specific and definite enough" to apprise any party considering filing suit against Barclays asserting a claim to the Purchased Assets that such a suit is "the conduct that is being proscribed."

Moreover, the term "Purchased Assets" in the Sale Order unambiguously includes the 20 Positions. In particular, this Court has already held – as the Clarification Letter, which this Court has held is enforceable, expressly provides – that the Purchased Assets include the securities listed on Schedule A to the Clarification Letter. See Evergreen Solar, 2011 WL 722582, at *5-6 (holding Sale Order barred claims against Barclays to securities on Schedule A); id. at *3 n.8 (Clarification Letter is enforceable); Ex. 22 ¶ 1(a)(ii) (Clarification Letter). Therefore, because each of the 20 Positions is listed on Schedule A to the Clarification Letter, B56-1 ¶ 37, the 20 Positions are Purchased Assets. Accordingly, the Sale Order clearly and

unambiguously enjoins the FirstBank Action, in which FirstBank has sued Barclays asserting claims to the 20 Positions.[19]

Nor does the fact that the parties draw different conclusions from the largely stipulated facts, or that the case has proceeded to summary judgment, somehow make the Sale Order Injunction less than clear and unambiguous.  In the BOA adversary proceeding, for example, this Court held BOA in contempt after resolving competing summary judgment motions and despite having ordered an evidentiary hearing "in order to further explore and develop facts relevant to [the dispute]."  Bank of Am., N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.), 439 B.R. 811, 819 (Bankr. S.D.N.Y. 2010).[20]

## B.    There Is Clear And Convincing Evidence That FirstBank Failed To Comply With The Sale Order Injunction

There is no dispute that FirstBank failed to comply with the Sale Order Injunction.  FirstBank is an entity that purports to hold an interest or claim to the 20 Positions, which are Purchased Assets.  Such claimholders were "forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against [Barclays] . . . such . . . entit[y]'s Interests or Claims."  Ex. 8 ¶ 7 (Sale Order).  Nonetheless, FirstBank sued Barclays based on its purported interest in the 20 Positions.  Obviously, filing suit against the purchaser of

---

[19]    Even assuming arguendo that there were some ambiguity in the scope of the Sale Order Injunction, any such ambiguity was irrevocably extirpated by this Court's opinions in the Rule 60 and Evergreen Solar matters, issued on February 22, 2011.  Those opinions made inescapably clear what already was plain from the text of the APA, the Clarification Letter, and the Sale Order:  The securities listed on Schedule A to the Clarification Letter were transferred to Barclays free and clear by virtue of the Sale Order, which enjoins all persons and entities from taking action against Barclays to recover such securities or to obtain damages arising from their transfer to Barclays.  See In re Lehman Bros. Holdings, Inc., 445 B.R. 143, 190 (Bankr. S.D.N.Y. 2011) (stating that Clarification Letter will be regarded "as having been approved under the broad language of the Sale Order"); Evergreen Solar, Inc., 2011 WL 722582, at *5 (holding that suit to recover securities listed on Schedule A was barred by the Sale Order Injunction).  Barclays sent FirstBank a letter to this effect just days after these opinions were issued, but FirstBank opted to continue on its contumacious course.

[20]    Similarly, in In re Nicholas, 457 B.R. at 211-12, the Chief Judge of the Bankruptcy Court for the Eastern District of New York found a pro se litigant in contempt of the statutory discharge injunction in the same decision dismissing the enjoined claims and denying the contemnor's "cross-application" for various forms of relief.

assets in a bankruptcy sale based on a claim to those assets is sufficiently "clear and convincing"

evidence of noncompliance with a sale order injunction prohibiting exactly that.

For example, in In re Biesboer, the bankruptcy court had approved the sale of

debtor's shares in a corporation to its other two shareholders, along with debtor's derivative

shareholder action against those same shareholders, for $1.08 million.  No. 08-B-35834, 2010

WL 2940927, at *1 (Bankr. N.D. Ill. July 27, 2010).  In its order approving that sale, the court

enjoined any party – including the debtor's estranged wife who, before debtor filed for

bankruptcy, had obtained standing in divorce court to pursue the shareholder derivative action

that was then sold by debtor in his bankruptcy – from pursuing "any action of any kind arising

from the derivative action" against the purchasers.  Id.  Nonetheless, following the bankruptcy

sale, the debtor's wife sought to amend her complaint in divorce court seeking damages against

the bankruptcy-sale purchasers based on her inability to pursue the derivative action in divorce

court (i.e., plaintiff sought to recover from the purchasers the $7 million more she alleged she

would have been awarded had she not been precluded from trying the derivative action in

divorce court).  Id.  The bankruptcy court found that the wife's amended complaint "ar[ose]

directly from the derivative claim" – it followed that it was "squarely" within the conduct

enjoined by the sale order.  Id. at *4-6.

FirstBank's contemptuous suit against Barclays can be analogized to suits filed in

violation of a bankruptcy discharge.  Much like this Court's Sale Order Injunction,

section 524(a)(2) of the Code provides that "[a] discharge . . . operates as an injunction against

the commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor . . . ." See 11 U.S.C. §

524(a)(2) (emphasis added)).  Unsurprisingly, courts have held that instituting and continuing

suits to recover a debt after it has been discharged violate the discharge injunction (and subject

the violator to contempt sanctions).  See Cox v. Zale Del., Inc., 239 F.3d 910, 915 (7th Cir.

2001) ("Section 524(a)(2) not only prohibits but also enjoins . . . suits [to collect a discharged

debt], as well as other collection actions, and so the creditor who attempts to collect a discharged

debt is violating not only a statute but also an injunction and is therefore in contempt of the

bankruptcy court that issued the order of discharge."); In re Sandburg Fin. Corp., 446 B.R. 793,

793 (S.D. Tex. 2011) (upholding bankruptcy court's award of $500,000 in sanctions against

creditor that filed suit on claim the court determined to have been discharged, even though such

party "may not have understood its actions to violate the discharge injunction, or [may have]

disagreed with the Bankruptcy Court's legal outcome on this issue"); In re Nicholas, 457 B.R. at

225 (creditor violated discharge injunction by asserting causes of action in complaint against

debtor that "constitute[d] the continuation of an effort to collect on [creditor's discharged] pre-

petition secured claim," warranting sanctions).[21]

Here, the filing and maintenance of litigation against Barclays over the Purchased

Assets are acts expressly proscribed by the Sale Order Injunction.  Accordingly, FirstBank

necessarily failed to comply with the Sale Order Injunction when it filed and continued its suit

based on the 20 Positions against Barclays.  See, e.g., In re Biesboer, 2010 WL 2940927, at *4-6.

**C.     FirstBank Has Not Diligently Attempted To Comply With The Sale Order
        Injunction In A Reasonable Manner**

FirstBank's conduct in this lawsuit is the antithesis of a party diligently

attempting to comply with an injunction.  Its sustained violation of this Court's injunction was

neither the only option available to it nor inadvertent.  As noted above, rather than sue Barclays

---

[21]     See also Jarvar v. Title Cash of Mont., Inc. (In re Jarvar), 422 B.R. 242, 249-51 (Bankr. D. Mont. 2009)
(holding party in contempt of discharge injunction for filing counterclaim against debtor for discharged debt, noting
court "will proceed on appropriate remedial and compensatory, but not punitive, sanctions"); In re Boyd, 336 B.R.
277, 278-79 (Bankr. E.D. Va. 2005) (finding party in contempt for instituting garnishment action on a discharged
debt, noting "[t]he matter will be heard on the appropriate sanction for the violation of § 524(a)").

in violation of the Sale Order, FirstBank could have taken the following steps in the Lehman

debtors' bankruptcy cases to assert its claims to the 20 Positions:

- FirstBank could have timely appealed the Sale Order after the APA and Clarification Letter were filed on the docket and Schedule A to the Clarification Letter became available to it for inspection.

- FirstBank could have sought timely Rule 60(b) relief therefrom once it learned that the 20 Positions were Purchased Assets transferred to Barclays "free and clear" under the authority of the Sale Order. Had it done so, FirstBank would have been entitled, without being in contempt of the Sale Order Injunction, to press its arguments (though they would have ultimately failed) that the 20 Positions should not be included in Purchased Assets despite appearing on Schedule A.

- FirstBank could have filed claims against the LBSF and LBHI estates. FirstBank has acknowledged before this Court that LBSF had a contractual obligation to return its collateral, which ought to have been the basis for a claim for the value of the excess posted collateral (after appropriate setoff) against LBSF. Moreover, LBHI fully guaranteed LBSF's obligations to FirstBank, giving FirstBank the right to file a guaranty claim against LBHI.

- Even if FirstBank was determined not to characterize its claim against the debtors as sounding in contract, it could have asserted its purported property interests in the 20 Positions against the proceeds of the Sale Transaction, as the Sale Order directed.

- FirstBank could have even respected the Sale Order Injunction by bringing an action for a declaration from this Court that the 20 Positions were not Purchased Assets subject to the "free and clear" and injunction terms of the Sale Order.

FirstBank's August 1, 2012 motion filed in the LBI SIPA proceeding (the

"FirstBank Customer Motion") confirms that it should not be proceeding against Barclays. In

the FirstBank Customer Motion, FirstBank asserts that its collateral never became property of

any debtor's estate. Ex. 89 ¶¶ 36, 39, p. 18 n.20 (FirstBank Customer Motion). Though

FirstBank contends that this position is consistent with the position it has taken in its public

filings since November 2008, see Exs. 29 at 78 (FirstBank Q3 2008 10-Q), 87 (FirstBank Q2

2012 10-Q), and in the Rule 2004 motion it filed in July 2009, see Ex. 66 ¶ 28 (Rule 2004

Motion), FirstBank has not until now sought to test that position before this Court.  In any event,

the filing of the FirstBank Motion makes even more clear that FirstBank's continuing pursuit of

claims against Barclays is improper under the terms of the Sale Order.[22]

The Sale Order, in addition to enjoining parties asserting an interest in the

Purchased Assets from pursuing such claims against Barclays, explicitly directed that claims to

those assets were "transferred and attached to the Debtors' interests in the Sale proceeds . . . in

the order of their priority, with the same validity, force and effect which they have against such

Purchased Assets."  Ex. 8 ¶ 7 (Sale Order).  In the FirstBank Motion, FirstBank claims an

ownership interest in the 20 Positions, which were sold by LBI to Barclays pursuant to the Sale

Order.  Under the plain terms of the Sale Order, therefore, FirstBank should have pursued its

claims against the proceeds of the sale of the 20 Positions in the hands of LBI, and not against

Barclays.

Sale order provisions channeling claims away from purchasers of bankruptcy

assets to the proceeds of such asset sales in the hands of the debtor are explicitly authorized by

the Bankruptcy Code and have been approved by numerous courts as providing adequate

protection to parties, like FirstBank, claiming an interest in the assets sold free and clear of all

claims.  See MacArthur Co. v. Johns-Mansville Corp. (In re Johns-Mansville Corp.), 837 F.2d

89, 93 (2d Cir. 1988) (section 363 confers "the power to dispose of assets free and clear and to

channel claims to the proceeds"); id. at 94 ("It has long been recognized that when a debtor's

---

[22]    At the August 15, 2012 hearing on the FirstBank Customer Motion, FirstBank's counsel represented to the
Court that FirstBank's putative customer claim against LBI and its claim against Barclays were "legally
independent" and that FirstBank has an "independence [sic] customer claim against the LBI estate regardless of
what happens in the Barclays' adversary.  The Barclays' adversary is trying specifically to recover collateral.  We
believe that the basis of our claim against the LBI estate is under the SIPA statute regardless of what happened to the
collateral."  Ex. 90 at 15:16 – 16:10 (August 15, 2012 Hearing Tr.).  FirstBank's stance – offered in an equivocal
response to the Court's question whether the two claims were alternatives – is surely wrong in that it contemplates a
double recovery and throws into sharp relief the confusion at the root of FirstBank's approach to Barclays and the
Lehman estates.

assets are disposed of free and clear of third-party interests, the third party is adequately

protected if his interest is assertable against the proceeds of the disposition." (internal citation

omitted)).  See also In re Sax, 796 F.2d 994, 998–99 (7th Cir. 1986) (though appeal of sale order

was moot, appellant's lien attached to proceeds of sale and appellant was free to pursue lien

against those proceeds).

Nor is it uncommon for parties claiming an interest in property sold free and clear

pursuant to section 363 to pursue claims against the debtor with respect to the proceeds of such

sales.  For example, in In re Balco Equities Ltd., 323 B.R. 85, 91-92 (Bankr. S.D.N.Y. 2005), the

court ordered that the trustee could sell real property free and clear pursuant to section 363

notwithstanding a party's claim of ownership of the property to be sold, which was disputed by

the trustee and another secured creditor, and had not yet been resolved; the court directed that

"the proceeds of sale will be held in escrow until [an adversary proceeding over ownership of the

property] is resolved, so that whatever lien [the party claiming ownership] may have against the

[property being sold] will not be prejudiced."  See also Banner v. Gibney-Campbell (In re Balco

Equities Ltd.), Adv. Proc. No. 05-09005 (CGM), 2006 WL 898042, at *1, 4, 9 (Bankr. S.D.N.Y.

Mar. 28, 2006) (ordering trial on parties' competing claims to proceeds of sale).  More recently,

Judge Gropper reasoned that the Kodak could sell patents free and clear under section 363 –

notwithstanding that Apple and Flashpoint disputed ownership of those patents in pending

litigation – "with the proceeds to be escrowed, awaiting a determination as to whether they

should be paid to Kodak, Apple, or Flashpoint."  In re Eastman Kodak Co., No. 12-10202

(ALG), 2012 WL 2255719, at *3 (Bankr. S.D.N.Y. June 15, 2012).

Similarly, here, the Court ordered that "no proceeds [of the sale] subject to an

asserted Interest [in any of the Purchased Assets] shall be used or disbursed by the Debtors

without the express consent of the party or parties asserting an Interest therein or further order of

23

the Court after notice (to all parties who have asserted an Interest in such proceeds) and a

hearing, consistent with the requirements of the Bankruptcy Code." Ex. 8 ¶ 24 (Sale Order).

FirstBank ignored the remedy explicitly provided for in the Sale Order (pursuing its claims

against the proceeds) in favor of conduct explicitly enjoined in that order (pursuing claims

against Barclays).

       FirstBank was not free to collaterally attack or simply ignore the Sale Order

Injunction by filing this litigation.  See GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375,

386 (1980) (holding that "persons subject to an injunctive order issued by a court with

jurisdiction are expected to obey that decree until it is modified or reversed, even if they have

proper grounds to object to the order"); Paramedics, 369 F.3d at 656 (same).  In short, that

FirstBank studiously avoided permissible means of pursuing its interests in the 20 Positions and

brazenly opted to sue Barclays instead, clearly demonstrates that FirstBank has not diligently

attempted to comply with the Sale Order in a reasonable manner.

### D.     FirstBank's Violation Of The Sale Order Injunction Was Willful

       As noted above, willful contempt is established where the "contemnor [1] had

actual notice of the court's order, [2] was able to comply with it, [3] did not seek to have it

modified, and [4] did not make a good faith effort to comply."  N.Y. State Nat'l Org. for

Women, 952 F. Supp. at 1044; see also Bear U.S.A., 71 F. Supp. 2d at 249-50.  Each of these

elements is easily satisfied here.

       First, FirstBank has had actual knowledge of the Sale Order Injunction since long

before it filed suit in this matter.[23]  The Sale Order was publicly filed on the docket of the LBHI

---

[23]    Compare Nicholas v. Oren (In re Nicholas), 457 B.R. 202, 225 (Bankr. E.D.N.Y. 2011) ("[Creditor's] continuation of the action against [debtor], even after [debtor] moved to reopen this bankruptcy case to seek to hold [creditor] in contempt, removes any doubt that [creditor] was aware of the discharge, and that his actions in pursuing discharged claims against [debtor] was therefore willful.").

and LBI bankruptcy cases, which FirstBank and its counsel actively monitored.  What is more,

Barclays expressly informed FirstBank of the Sale Order Injunction in September 2009, three

months before FirstBank filed suit.  Far from inadvertently violating the Sale Order Injunction

based on a reasonable unawareness of that order (and withdrawing its suit once it became aware

of it), FirstBank has consciously prosecuted this action for years in the face of this Court's clear

and unambiguous injunction and Barclays' repeated reminders that FirstBank's suit is in

violation thereof.  Compare In re Thompson, No. 06-32622, 2007 WL 2406886, at *4-5 (Bankr.

N.D.N.Y. Aug. 21, 2007) (holding that city's violation of discharge injunction by mailing notice

to debtors of intent to shut off their water was "an inadvertent action on the part of the City,

which it quickly corrected once it understood" that such action violated the discharge injunction

and before debtors suffered any damages, and did not warrant finding of contempt).

Even if FirstBank may argue in good faith that the Sale Order Injunction does not

apply to its suit against Barclays, it is well aware of that injunction and is consciously proceeding

at the risk that it is in contempt of that Order.  Knowledge for purposes of the willfulness

analysis does not require the party to be certain that its conduct falls within the injunction; the

pertinent knowledge is of the injunction and of the possibility that the party is violating it.[24]  For

example, in Biesboer, the bankruptcy court found that the debtor's wife willfully violated the

automatic stay (in addition to the sale order injunction) by filing claims against debtor in divorce

court, notwithstanding that the wife believed that an order partially lifting the stay allowed her to

file such claims.  2010 WL 2940927, at *2-3.  Because the court rejected the argument that the

---

[24]    See Sensenich v. Ledyard Nat'l Bank (In re Campbell), 398 B.R. 799, 812 (Bankr. D. Vt. 2008) ("good
faith mistake of law will not relieve a willful violator of the consequences of its act" where it had knowledge of
stay); DiGeronimo v. Weissberg (In re DiGeronimo), 354 B.R. 625, 643 (Bankr. E.D.N.Y. 2006) ("[T]he Court
finds that the Defendants had knowledge of the Discharge in this case and that their acts to collect the debt at issue
were intentional acts.  Therefore, the Court finds as a matter of law that the Defendants willfully violated the
Discharge Order despite their contentions that they were acting on a good faith belief that the debt at issue was non-
dischargeable . . . .").

claims were allowed by the stay-lift order, the court was left to conclude that filing such claims was a willful violation of the stay.  Id.  See also Bank of Am., 439 B.R. at 834 (finding sanctions warranted against BOA despite recognizing "that BOA must have determined" that it was permitted to exercise a setoff "without first seeking relief from the stay").

   The remaining prongs of the willfulness test are easily met here.  FirstBank clearly had the ability to comply with the Sale Order by refraining from bringing and continuing to prosecute this litigation.  FirstBank failed to make good faith efforts to comply with the Sale Order, given that it failed to avail itself of permissible avenues of redress left open to it by that order, such as appealing or requesting Rule 60 relief from the Sale Order, pursuing claims against Lehman entities, or seeking a declaratory judgment, rather than filing suit against Barclays.  Nor has FirstBank investigated whether the 20 Positions were Purchased Assets, much less withdrawn its suit, after Barclays made clear to it that its suit was enjoined.

## II. THIS COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS TO COMPENSATE BARCLAYS FOR FIRSTBANK'S WILLFUL CONTEMPT OF THE SALE ORDER INJUNCTION

   Barclays is entitled to its reasonable attorneys' fees and costs incurred in defending against FirstBank's enjoined suit to compensate it for FirstBank's willful contempt of this Court's Sale Order Injunction.  See Weitzman, 98 F.3d at 719; Bear U.S.A., Inc., 71 F. Supp. 2d at 250; Bank of N.Y. v. Meridian Biao Bank Tanzania Ltd. (In re Treco), Nos. 95-44326, 00-8137, 2001 WL 1566709, at *8 (Bankr. S.D.N.Y. Dec. 10, 2001).[25]  Because Barclays would not have incurred such fees and costs but for FirstBank's willful contempt, they should serve "as part of the compensatory remedy to which [Barclays] is entitled as a result of

---

[25] Indeed, even absent a finding of willfulness, the imposition of attorneys' fees would be appropriate because otherwise FirstBank's contumacious conduct would go unsanctioned, leaving Barclays worse off for having incurred legal expenses to defend against FirstBank's violation of this Court's Sale Order.  See Shady Records, Inc. v. Source Enters., Inc., 351 F. Supp. 2d 64, 67 (S.D.N.Y. 2004) (finding an award of attorneys' fees an appropriate sanction for a party held in civil contempt, whether or not the contempt was willful).

[FirstBank's] civil contempt." <u>Fox Indus., Inc. v. Gurovich</u>, No. CV 03-5166TCP, 2004 WL 1896913, at *4 (E.D.N.Y. July 15, 2004).

Of course, the fees and costs incurred by Barclays to date would reflect the damages to Barclays only if FirstBank were to discontinue its violation of the Sale Order Injunction today.  FirstBank should also be liable for any future fees and costs it causes Barclays to incur in connection with this lawsuit.  For example, should FirstBank continue to oppose summary judgment, file for reconsideration of this Court's anticipated ruling in Barclays' favor on summary judgment, or appeal such an order from this Court, Barclays requests that its fees and costs in defending such further violations of this Court's injunction be added to any award this Court deems just and proper.  <u>Cf.</u> <u>Weitzman</u>, 98 F.3d at 720 (error for district court to withhold fees and costs incurred by contempt victim on appeal where "none of [the litigation, including the appeal] would have been necessary" if the contemnor had not violated the court order).

Barclays respectfully requests that this Court first consider whether Barclays is entitled to an award of fees and costs for FirstBank's contempt of the Sale Order (and, if so, for what time period).  Upon a determination of FirstBank's contempt and Barclays' entitlement to recover fees and costs, Barclays will supplement this motion with affidavits of its counsel as to the amounts recoverable under the Court's ruling.  Courts regularly defer the question of the quantum of attorneys' fees to award until after the issue of entitlement to such an award is resolved.  For example, in <u>Nisselson v. Empyrean Investment Fund, L.P. (In re MarketXT Holdings Corp.)</u>, the court first ruled on the plaintiffs' motion to hold defendants in contempt of its prior order and then, after finding defendants in contempt, directed that the plaintiffs could move for an award of attorneys' fees and expenses.  Adv. Proc. No. 05-01268 (ALG), 2006 WL 2583644, at *1 (Bankr. S.D.N.Y. July 21, 2006).  There, plaintiffs did so move, supporting their

motion with "unredacted, contemporaneous time records that specif[ied], for each attorney, the

date, the hours expended, and the nature of the work done." Id. at *5.  In addition to granting the

plaintiffs' motion for fees and expenses already incurred, the court provided that the plaintiffs

could "bring a further motion for attorneys' fees and expenses on the basis of further

developments" in the case (i.e., if the contempt continued resulting in further fees and costs).  Id.

at *7.[26]

*      *      *

　　　　The relief requested herein is commensurate with the important public policy

interests implicated by FirstBank's intentional disregard for the rights and protections afforded to

a good-faith purchaser of assets sold in bankruptcy.  In order to maximize the price that

bankruptcy court sales can fetch, courts must vigilantly uphold these rights and protections.  See,

e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997)

(recognizing abiding public policy interest in finality of judicial sales in bankruptcy, which

serves to "maximize[] the purchase price of assets because without this assurance of finality,

purchasers could demand a large discount for investing in a property that is laden with the risk of

endless litigation as to who has rights to estate property").  The need to protect such good-faith

purchasers is especially prevalent here, where Barclays purchased assets that were quickly

declining in value during the market crisis of September 2008.  Prospective purchasers scarcely

---

[26]　　　This Court, too, has recently found a party to be in contempt while "reserving decision on the issue of any costs, damages or sanctions to be awarded" in subsequent proceedings. Bank of Am., N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.), 439 B.R. 811, 837 (Bankr. S.D.N.Y. 2010). See also Shiboleth v. Yerushalmi (In re Yerushalmi), Adv. Proc. No. 8-08-08037-478, 2011 WL 2436531, at *1 (Bankr. E.D.N.Y. June 13, 2011) (following decision granting plaintiff's motion for contempt, court directed plaintiff's counsel to submit evidence of costs incurred as a result of contempt); Software Freedom Conservancy, Inc. v. Westinghouse Digital Elec., LLC, 812 F. Supp. 2d 483, 491 (S.D.N.Y. 2011) (finding attorneys' fees award appropriate sanction for contempt, directing plaintiffs "to submit a fee application within fifteen (15) days of the date of this Order detailing their costs and expenses in connection with this litigation"); Galella v. Onassis, 533 F. Supp. 1076, 1107, 1109 (S.D.N.Y. 1982) (finding party in contempt, providing that court would "take evidence properly appropriate to the occasion, hear argument, consider thorough and complete memoranda, etc. at a time to be fixed in the near future" on the issue of appropriate sanctions).

could be expected to make similar purchases if others were free to prosecute prolonged

litigations against them about the very assets purchased free and clear, in violation of the orders

entered to protect them.

## **CONCLUSION**

For the reasons set forth above, FirstBank is in willful contempt of this Court's

Sale Order.  Accordingly, Barclays is entitled to a determination that FirstBank is in contempt

and an award of the attorneys' fees and costs that Barclays has incurred, and will continue to

incur, in defending this litigation.

Dated: September 13, 2012
        New York, New York


Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:  /s/ Lindsee P. Granfield
     Lindsee P. Granfield
     Boaz S. Morag

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Barclays Capital Inc.