# Exhibit 4

**C L I F F O R D**

**C H A N C E**

LIMITED LIABILITY PARTNERSHIP

DATED    30 March    2001

HERON QUAYS PROPERTIES LIMITED

CANARY WHARF GROUP PLC

LEHMAN BROTHERS LIMITED

LEHMAN BROTHERS HOLDINGS INC.

---

COUNTERPART/

**AGREEMENT FOR LEASE**

relating to
the grant of a lease of a new building at
Parcel HQ2, Canary Wharf, London E14

---

# CONTENTS

| Clause | Page |
|---|---|

PART 1 Definitions And Interpretation ................................................................ 2

1. Definitions ........................................................................................................ 2

2. Interpretation ................................................................................................. 21

PART 2 Consultants And Trade Contractors ..................................................... 24

3. Consultants And Trade Contractors .............................................................. 24
    3.1    Appointment Of Key Consultants ........................................................ 24
    3.2    Material Trade Contracts ..................................................................... 26
    3.3    Developer To Procure Material Trade Contractors Enter Into A Warranty .......... 26
    3.4    Developer Enforcement ........................................................................ 27

PART 3 Development Obligations ...................................................................... 29

4. Approvals And Statutory Requirements ........................................................ 29
    4.1    Required Consents And Approvals ...................................................... 29
    4.2    The Developer To Comply With All Approval And Statutory Requirements ........ 29
    4.3    The Developer To Be Responsible For Expenses Of The Base Building Works ..... 30

5. The Development ............................................................................................ 30
    5.1    Period Allowed For Completion Of Base Building Works ................. 30
    5.2    Critical Dates Schedule, Construction Programme, Developer's Critical Path Programme ........................................................................................ 30
    5.3    Quantification Of Permitted Extensions Of Time And The Developer's Mitigation 31
    5.4    Liquidated Damages For Late Completion ......................................... 32
    5.5    Long Stop Date Termination ................................................................ 33
    5.6    Short Term Accommodation ................................................................ 33

6. Execution Of The Base Building Works ........................................................ 34
    6.1    Execution Of Base Building Works ..................................................... 34
    6.2    Construction Materials ......................................................................... 34
    6.3    Base Building Works Construction Drawings ..................................... 34
    6.4    Base Building Modifications ................................................................ 35

7. Variations To The Base Building Works And Infrastructure Works ............ 35
    7.1    Base Building Works Finishes Design Development .......................... 35
    7.2    Permitted Variations ............................................................................ 36

8. Tenant's Requested Modifications ................................................................. 37
    8.1    Tenant's Notification Of Modifications .............................................. 37
    8.2    Restrictions On Proposals .................................................................... 39
    8.3    Approval Of Modifications .................................................................. 40
    8.4    Authorisation Requests And Estimates ............................................... 41
    8.5    Acceptance By The Tenant ................................................................... 42
    8.6    Preparation Of Plans ............................................................................ 42
    8.7    Placing Of Contracts, Calculation Of Actual Modification Costs Referable To Tenant's Requested Modifications And Unspent Costs ................................... 43
    8.8    Execution Of The Modifications ......................................................... 44

8.9     Tenant's Withdrawal Of A Tenant's Requested Modification ........................... 44
8.10    Statements Of And Tenant Responsible For Modification Costs ...................... 45
8.11    Disputes As To Modification Costs ........................................................... 46
8.12    Reinstatement Of Tenant's Requested Modifications ................................... 46
8.13    Put Option Sub-Tenant's Requested Modifications .................................... 46
8.14    Time Of The Essence ............................................................................ 46
9.      Site Visits And Meetings And Supply Of Information And Documentation ............. 46
9.1     Site Visits ........................................................................................... 46
9.2     Test Certificates .................................................................................. 47
9.3     Meetings ............................................................................................ 47
9.4     Minutes And Other Information ............................................................... 48
9.5     Representation On Site .......................................................................... 48
9.6     Quality Assurance ............................................................................... 49
9.7     Training ............................................................................................. 49
9.8     Put Option .......................................................................................... 49
10.     Infrastructure Works And Winter Gardens ................................................... 49
10.1    Execution Of Infrastructure Works .......................................................... 49
10.2    Liquidated Damages ............................................................................. 50
10.3    Winter Garden .................................................................................... 50
11.     Copyright ............................................................................................. 50
11.1    Grant Of Non-Exclusive Licence ............................................................. 50
11.2    Tenant's Undertaking ........................................................................... 51
11.3    Developer's Liability ............................................................................. 51
PART 4 Tenant's Works ....................................................................................... 51
12.     Tenant's Works ..................................................................................... 51
12.1    Limitations On Tenant's Works ............................................................... 51
12.2    Approvals ........................................................................................... 52
12.3    Fire Safety Systems ............................................................................. 52
12.4    Put Option Fit Out Works ...................................................................... 52
13.     Execution Of Tenant's Works And Subsequent Occupation ............................. 52
13.1    Completion Of Tenant's Works ............................................................... 52
13.2    Tenant's Obligations ............................................................................. 52
13.3    Terms Of Occupation ........................................................................... 53
13.4    Developer's Right To Inspect And Require Remedy ..................................... 53
13.5    Developer To Have No Responsibility For Tenant's Works ............................ 53
13.6    Execution Of Put Option Fit Out Works .................................................... 53
14.     Tenant's Works Areas And Early Access ..................................................... 54
14.1    Tenant's Works Areas And Method Statement ........................................... 54
14.2    Commencement Of Work ...................................................................... 55
14.3    Licence To Have Access ........................................................................ 55
14.4    Compliance With Early Access Method Statement And The CDM Regulations ..... 56
14.5    Tenant's Work Area Obligations .............................................................. 56
14.6    Tenant's Acknowledgement .................................................................... 56
14.7    Put Option Fit Out Works Early Access ..................................................... 56
15.     Ancillary Provisions As To Tenant's Works .................................................. 56

15.1    As-Built Drawings ................................................................56
15.2    Memorandum Of Category A And Category B Works ...................57
15.3    Licences For Alterations.........................................................57
15.4    Copy Appointments And Contracts And Provision Of Collateral Deeds Of Warranty
........................................................................................57
15.5    Put Option............................................................................58

16.    Entry By The Developer To The Demised Premises After The Access Date............58

17.    Agreement As To Operation Of Landlord And Tenant Act 1927...........................58
17.1    Service Of 1927 Act Notice....................................................58
17.2    Determination Of Cost ..........................................................58

PART 5 Independent Measurement And Practical Completion....................................59

18.    Measurement .................................................................................59
18.1    Joint Measurement................................................................59
18.2    Net Internal Area Of The Demised Premises ..............................60

19.    Practical Completion .......................................................................60
19.1    Issue Of The Base Building Works Practical Completion Certificate.................60
19.2    Issue Of The Tenant's Works Practical Completion Certificate .......................62
19.3    Issue Of The Infrastructure Works Practical Completion Certificate .................63
19.4    Tenant's Delay ....................................................................64
19.5    Damage Caused By Tenant.....................................................64
19.6    O&M As-Built Drawings ........................................................65
19.7    Health And Safety File ..........................................................65
19.8    Provision Of Information .........................................................65

PART 6 Defects........................................................................................65

20.    Defects.........................................................................................65
20.1    Snagging Items ...................................................................65
20.2    Defects In The Base Building Works .........................................65
20.3    Access To The Demised Premises To Remedy Snagging Items And/Or Defects In
The Base Building Works ......................................................65
20.4    Access To The Put Option Space To Remedy Snagging Items And/Or Defects In The
Base Building Works ............................................................66
20.5    Defects Costs In Respect Of Base Building Works .......................66
20.6    Defects Costs In Respect Of The Infrastructure Works ..................66
20.7    Tenant To Notify Developer Of Latent Defective Works..................66
20.8    Developer To Have No Other Liability ......................................67
20.9    Assignment........................................................................67

PART 7 Insurance ....................................................................................67

21.    Insurance .....................................................................................67
21.1    "Lease Insurance Date" .........................................................67
21.2    Developer To Insure..............................................................67
21.3    Insured Works ....................................................................68
21.4    Restriction On Tenant Insuring ...............................................68
21.5    No Variation And Insured Parties.............................................68
21.6    Reimbursement Of Premiums..................................................69
21.7    Tenant To Notify Developer Of Reinstatement Value.....................69

21.8    Destruction/Damage Of Insured Works.................................................70
21.9    Payment Of Insurance Moneys Refused .............................................71
21.10   Tenant's Obligations.........................................................................71
21.11   Notice By Tenant .............................................................................71
21.12   Benefit Of Other Insurances..............................................................71
21.13   Insurance Of The Put Option Fit Out Works........................................72

PART 8 Grant Of The Lease.......................................................................72

22.    Grant Of Lease, Calculation Of Rents And Other Terms.....................72
22.1    Grant Of Lease ................................................................................72
22.2    Length Of Lease Term, Initial Rents, Service Charges And Insurance Rent.........72
22.3    Sums Paid As Licence Fees ..............................................................74
22.4    Rent Review Dates...........................................................................74
22.5    Opinion Letter .................................................................................75
22.6    Rent Review Specification.................................................................75
22.7    Payment Of Tenant's Inducement.......................................................75

23.    Title .................................................................................................76
23.1    Tenant To Raise No Requisitions ......................................................76
23.2    HM Land Registry ...........................................................................76

24.    Conditions Affecting The Grant Of The Lease ....................................76
24.1    Subjections .....................................................................................76
24.2    Variation To Lease ...........................................................................77
24.3    No Representations ..........................................................................77
24.4    Continuation Of Agreement...............................................................77

PART 9 Tenant's Covenant, Events Of Default And Guarantees .................78

25.    Delay................................................................................................78

26.    Event Of Default................................................................................78
26.1    Events Of Default ............................................................................78
26.2    Determination Of Agreement .............................................................79
26.3    Repayment Upon Determination .........................................................79

27.    Tenant's Surety Guarantee..................................................................80
27.1    Indemnity By Tenant's Surety ...........................................................80
27.2    Tenant's Surety Jointly And Severally Liable With Tenant .....................80
27.3    Waiver By Tenant's Surety.................................................................80
27.4    Postponement Of Claims By Tenant's Surety Against Tenant ................80
27.5    Postponement Of Participation Of Tenant's Surety In Security................80
27.6    No Release Of Tenant's Surety ..........................................................80
27.7    Liquidation Of Tenant.......................................................................81
27.8    Warranty By Tenant's Surety .............................................................82
27.9    Benefit Of Guarantee .......................................................................82

28.    Developer's Surety Guarantee .............................................................82
28.1    Indemnity By Developer's Surety .......................................................82
28.2    Developer's Surety Jointly And Severally Liable With Developer .............82
28.3    Waiver By Developer's Surety ...........................................................83
28.4    Postponement Of Claims By Developer's Surety Against Developer.........83
28.5    Postponement Of Participation Of Developer's Surety In Security...........83

28.6    No Release Of Developer's Surety................................................83
28.7    Liquidation Of Developer ........................................................84
28.8    Warranty By Developer's Surety..............................................85
28.9    Benefit Of Guarantee ..............................................................85

PART 10 Tax.....................................................................................85

29.    Value Added Tax And Capital Allowances ................................85
29.1    Payment Of VAT ...................................................................85
29.2    Reimbursement Of VAT.........................................................85
29.3    No Election By Developer/Developer's Surety.........................85
29.4    Tenant's Inducement ..............................................................85
29.5    Capital Allowances ................................................................86

PART 11 Disputes, Notices And Senior Managers................................86

30.    Disputes ....................................................................................86
30.1    Reference To Independent Person...........................................86
30.2    Appointment Of Independent Person .....................................87
30.3    Failure To Agree Independent Person.....................................87
30.4    Independent Person To Act As Arbitrator...............................87
30.5    Independent Person To Act As An Expert...............................87
30.6    Alternative Dispute Resolution Clause ...................................88
30.7    Independent Person To Determine Delay ................................89

31.    Notices......................................................................................89
31.1    Service Of Notices.................................................................89
31.2    Senior Managers' Notices ......................................................90

32.    Senior Managers .......................................................................91
32.1    Designation Of Senior Managers............................................91
32.2    Identity Of Senior Managers..................................................91
32.3    Reliance Upon Senior Managers ............................................91
32.4    Change Of Senior Managers ..................................................91

PART 12 General Provisions .............................................................92

33.    General Provisions.....................................................................92
33.1    Invalidity Of Certain Provisions............................................92
33.2    Proper Law And Jurisdiction .................................................92
33.3    Social Contract Provisions .....................................................92
33.4    Confidentiality Provisions .....................................................92
33.5    Limitation Of The Developer's Liability.................................94
33.6    No Assignment Of This Agreement ........................................94
33.7    Maintenance Of Covenant Strength........................................95
33.8    Interest On Late Payments .....................................................96
33.9    Further Assurance ..................................................................96
33.10   Terms Of Contract And Incorporation Of Other Agreements...........96
33.11   Modifications Of Agreement..................................................97
33.12   No Waiver..............................................................................97
33.13   Merger Of Prior Agreements .................................................97
33.14   Costs .....................................................................................98
33.15   Third Party Rights .................................................................98

33.16  Plinth ................................................................................ 98

SCHEDULE 1   JEWISH HOLY DAYS ................................................................ 99

SCHEDULE 2   (FORM OF DEED OF ACKNOWLEDGEMENT OF CERTAIN DEVELOPER'S
             OBLIGATIONS) ........................................................................ 101

SCHEDULE 3   (FORM OF LICENCE RE TENANT'S WORKS) ...................................... 105

SCHEDULE 4   METHOD STATEMENT MATTERS .................................................. 110

SCHEDULE 5   "PRELIMINARIES" ...................................................................... 112

SCHEDULE 6   "INFRASTRUCTURE WORKS" ........................................................ 114

SCHEDULE 7   EARLY ACCESS CONDITION .......................................................... 115

## INDEX OF ANNEXURES AND EXHIBITS

| Annexures | Clause Reference |
|---|---|
| 1. Outline Specification Building HQ2 dated 27 March 2001 | "Base Building Definition" |
| 2. Schedule of Current Base Building Plans | "Base Building Plans" |
| 3. CAR Policy | "CAR Policy" |
| 4. A chart or schedule setting out dates by which information must be delivered and works carried out | "Critical Dates Schedule" |
| 5. Demised Premises Plans | "Demised Premises" |
| 6. Development Site Plan | "Development Site Plan" |
| 7. List of Existing Material Trade Contractors | "Existing Material Trade Contractors" |
| 8. Lease | "Lease" |
| 9. "Letter of Opinion" | "Letter of Opinion" |
| 10. List of Services to be provided by a Material Trade Contractor | "Material Trade Contractor" |
| 11. Measurement Plans | "Measurement Plans" |
| 12. Minimum Standard Developer's Finish for Tenant Work Specification | "MSDF Works" |
| 13. Substitute Consultant's Form of Warranty | "Substitute's Warranty" |
| 14. Key Consultants' Form of Warranty | Clause 3.1.2 |
| 15. Schedule of Pre-agreed amendments to Key Consultants' Substitute Consultants' Material Trade Contractors' Warranties and Existing Material Trade Contractor's Warranties | Clauses 3.1.2 and 3.3 |

| | | |
|---|---|---|
| 16. | Material Trade Contractor's Warranty | Clause 3.3 |
| 17. | Existing Material Trade Contractors' Warranties | Clause 3.3 |
| 18. | Tenant's Consultants' and Trade Contractor Warranties | Clause 14.5 |
| 19. | Pre-agreed amendments to Tenants' Consultants' and Trade Contractor Warranties | Clause 14.5 |
| 20. | Independent Measurer's Appointment | Clause 18.1.1 |
| 21. | Jubilee Line Access Plans | "Jubilee Line Access Plan" |
| 22. | Ground Floor Lobby Plan | "Ground Floor Lobby" |
| 23. | Construction Programme | "Construction Programme" |
| 24. | List of services to be provided by a Tenant's Key Contractor | "Tenant's Key Contractors" |
| 25. | Infrastructure Works | Schedule 6 |
| 26. | Base Building Modifications | "Base Building Modifications" |
| 27. | Critical Path Programme | "Developer's Critical Path Programme" |
| 28. | Design Development Plan | Clause 7.1.4 |

C4395/01379

**THIS AGREEMENT** is made the   30ᵗʰ   day of   March   Two Thousand and one

**B E T W E E N:-**

(1)     **HERON QUAYS PROPERTIES LIMITED** whose registered office is at One Canada Square Canary Wharf London E14 5AB (Company registration number 2276627) (the "Developer");

(2)     **CANARY WHARF GROUP PLC** whose registered office is at One Canada Square Canary Wharf London E14 5AB (Company registration number 3114622) (the "**Developer's Surety**");

(3)     **LEHMAN BROTHERS LIMITED** whose registered office is at One Broadgate, London EC2M 7HA (Company registration number 00846922) (the "**Tenant**"); and

(4)     **LEHMAN BROTHERS HOLDINGS INC.** of 3 World Financial Center, New York, New York 10285 and whose address for service in England and Wales is c/o Lehman Brothers Limited at One Broadgate London EC2M 7HA (the "**Tenant's Surety**")

## INTRODUCTION

(A)     The Developer intends to continue the development of the Development Site by constructing or procuring the construction on the Site of the Base Building Works and on the Development Site of the Infrastructure Works in accordance with the terms of this Agreement

(B)     When the Base Building Works have been completed the Developer has agreed to grant or procure the grant by a Group Company of the Developer and the Tenant has agreed to accept in accordance with the terms of this Agreement a lease for a term of 30 years of the Demised Premises

(C)     The Tenant is aware that (without prejudice to the Developer's primary obligations to the Tenant under this Agreement) the design and construction of the Base Building Works under this Agreement will be carried out pursuant to the Contract by CWCL and that CWCL may sub-contract to third party contractors/consultants certain of its obligations pursuant to the Contract in relation to the Base Building Works

(D)     In consideration of the Tenant entering into this Agreement the Developer's Surety is entering into this Agreement to guarantee the Developer's obligations

(E)     In consideration of the Developer entering into this Agreement the Tenant's Surety is entering into this Agreement to guarantee the Tenant's obligations

(F)     The parties to this Agreement have today entered into the Call Option Agreement, the Put Option Agreement, the First Offer Agreement, the Car Parking Agreement and the Deed of Variation Option

**THE PARTIES AGREE** as follows:-

## PART 1

## DEFINITIONS AND INTERPRETATION

1.    **DEFINITIONS**

In this Agreement, unless the context requires otherwise, the following words and
expressions shall have the following meanings:-

1.1    "**1927 Act Notice**" means a notice served by the Tenant pursuant to Section 3 of the
Landlord and Tenant Act 1927 and as specified in Clause 17

1.2    "**Access Date**" means the date of issue of Base Building Works Practical Completion
Certificate

1.3    "**Address**" means the address of the party in question shown on the first page of this
Agreement or such other address as the party in question may from time to time notify
in writing to the other parties to this Agreement as being its address for service for the
purposes of this Agreement

1.4    "**Approvals**" means:-

1.4.1    all consents, licences, permissions and approvals (including agreements under
Section 52 of the Town and Country Planning Act 1971 and Section 106 of the
Town and Country Planning Act 1990) of any local or other competent
authority;

1.4.2    all consents, licences, permissions and approvals arising under or pursuant to
any Statutory Requirements;

1.4.3    all consents, licences, permissions and approvals required of any mortgagee or
other party having rights, privileges or controls over the Development Site or
the Site; and

1.4.4    all consents, licences, permissions and approvals required from the DLR

1.4.5    all consents required to create the Jubilee Line Access

which may from time to time be necessary to enable the Developer or the Tenant
lawfully to commence and carry out and complete the Base Building Works or the
Tenant's Works (as appropriate) and each and every stage or phase thereof (as
appropriate) including, if the same are destroyed or damaged, the reinstatement of the
same and thereafter to grant the Lease and to enable the Tenant to use the Demised
Premises for the purposes for which the same have been designed as at the date of this
Agreement (other than any occupational fire certificate for the building or a part
thereof which it shall be the Tenant's responsibility to obtain) and the term "**Approval**"
shall be construed accordingly

1.5     **"Approved Plans"** means the Base Building Definition together with further amplified and detailed completed versions of it and any variations, alterations or additions to it made in accordance with the provisions of this Agreement

1.6     **"Base Building"** means the building, the scope of which is described in the Base Building Definition

1.7     **"Base Building Definition"** means the aggregate of:-

    1.7.1     the specification dated 27 March 2001 entitled **"Outline Specification Building HQ2"** annexed to this Agreement as **Annexure 1** as the same may be modified supplemented or added to from time to time in accordance with this Agreement; and

    1.7.2     the Base Building Plans

    1.7.3     the Base Building Modifications

1.8     **"Base Building Modifications"** means those items listed in **Annexure 26** to this Agreement and which form part of the Base Building Works

1.9     **"Base Building Modification Costs"** means the actual sums payable to Trade Contractors in relation to or resulting from the carrying out of the Base Building Modifications including (but not limited to) any relevant Trade Contractor Preliminaries (together with any part of the sums specified above which represent Value Added Tax incurred by the Developer, save to the extent that the Developer is entitled to credit on repayment in respect of such Value Added Tax from HM Customs and Excise)

1.10     **"Base Building Plans"** means the outline building plans listed in the drawings schedule annexed to this Agreement as **Annexure 2** and identified in bundles initialled by the parties as the same may be modified, supplemented or added to from time to time in accordance with the provisions of this Agreement

1.11     **"Base Building Works"** means the construction of the Base Building as the same may be modified from time to time in accordance with this Agreement

1.12     **"Base Building Works Finishes"** means the following elements of the Base Building Works:-

    1.12.1     the Ground Floor Lobby configurations, lighting and finishes including all fixed equipment, desks and security installations

    1.12.2     the toilet finishes

    1.12.3     the internal lift car configurations, finishes and lighting

    1.12.4     the curtain walling or external appearance of the Building and

1.12.5    finishes to the external walkway areas and the entrance approach shown hatched blue on the ground floor plan forming part of **Annexure 5**

1.13    **"Base Building Works Practical Completion"** means practical completion of the Base Building Works

1.14    **"Base Building Works Practical Completion Certificate"** means the Base Building Architect's certificate to the effect that Base Building Works Practical Completion has been achieved in accordance with the provisions of Clause 19.1

1.15    **"Base Building Works Practical Completion Date"** means the date specified in the Base Building Works Practical Completion Certificate as the date upon which Base Building Works Practical Completion was achieved or in case of dispute the date determined by the Independent Person in accordance with Clause 19.1 and references to the **"date of Base Building Works Practical Completion"** shall be construed accordingly

1.16    **"Basements"** means the floors of the Building below the ground floor shown on the Basement Floor Plans

1.17    **"Basement Floor Plans"** means the B2, B1 and B1M plans forming part of **Annexure 11** to this Agreement

1.18    **"Basement Independent Measurer's Certificate"** has the meaning attributed to that expression in Clause 18.1.2

1.19    **"Basement Tolerance Excess"** means (but only to the extent that a positive number is produced) the Net Internal Area as confirmed in the Basement Independent Measurer's Certificate less 11,530 square feet

1.20    **"Building"** means the building comprising (inter alia) the Base Building Works and the Tenant's Works to be constructed on the Site in accordance with the provisions of this Agreement

1.21    **"Building Systems"** means the mechanical, electrical, sanitary, heating, ventilating, life safety, air conditioning or other service systems of the Building

1.22    **"Call Option Agreement"** means a call option agreement dated the date of this Agreement relating to either five (5) floors or nine (9) floors in Building HQ3 at the Development Site made between the same parties to this Agreement

1.23    **"Capital Allowances"** means allowances made in accordance with Part I or Part II of the Capital Allowances Act 1990

1.24    **"Car Parking Agreement"** means the agreement of even date made between the Developer (1) Canary Wharf (Car Parks) Limited (2) and the Tenant (3) relating to the grant of a licence of 200 parking spaces

1.25    "**CAR Policy**" means the Contractors' All Risks Policy annexed to this Agreement as
**Annexure [3]** including any subsequent revisions or substituted arrangements therefor
which may be made from time to time in accordance with the provisions of this
Agreement

1.26    "**CDM Regulations**" means the Construction (Design and Management) Regulations
1994

1.27    "**Certificates**" means each or all of (as the case may be) the Base Building Works
Practical Completion Certificate, the Tenant's Works Practical Completion Certificate
and the Infrastructure Works Practical Completion Certificate

1.28    "**Code of Measuring Practice**" means the code of measuring practice published on
behalf of the Royal Institution of Chartered Surveyors and the Incorporated Society of
Valuers and Auctioneers (Fourth Edition dated November 1993 and not, for the
avoidance of doubt, any up-dated edition)

1.29    "**Construction Programme**" means the indicative construction programme annexed to
this Agreement as **Annexure 23** as the same may be updated, varied and provided to
the Tenant from time to time by or on behalf of the Developer

1.30    "**Consultancy Services**" means the services contracted to be provided in relation to the
carrying out of the Base Building Works by architects, structural engineers, other
engineers, mechanical and electrical consultants and any other consultants (other than
solicitors, selling agents and letting agents) employed by or on behalf of the Developer
and/or CWCL

1.31    "**Consultants**" means all or any of those persons providing Consultancy Services in
connection with the Developer's obligations under this Agreement but shall not include
the Key Consultants

1.32    "**Contract**" means the Design and Construct Contract dated 28 February 1992 and
made between (1) Heron Quays Developments Limited and (2) Olympia & York
Contractors Limited (now known as Canary Wharf Contractors Limited) and as
novated on 16 April 1992 by an agreement made between (1) Heron Quays
Developments Limited (2) Olympia & York Heron Quays Limited (now known as
Heron Quays Properties Limited) and (3) Olympia & York Contractors Limited (now
known as Canary Wharf Contractors Limited)

1.33    "**Costs Estimate**" shall have the meaning given to this expression in Clause 8.4.1(c)

1.34    "**Counter-Notice**" shall have the meaning given to that expression in Clause 19.1.4

1.35    "**Critical Dates Schedule**" means the schedule of dates and periods annexed to this
Agreement as **Annexure 4** as modified from time to time and provided to the Tenant in
accordance with the provisions of this Agreement and together with any additions as
the Developer acting reasonably shall notify the Tenant in writing and as the Tenant
shall approve (such approval not to be unreasonably withheld)

1.36    "CWCL" means Canary Wharf Contractors Limited and/or any Group Company sub-contractor of Canary Wharf Contractors Limited carrying out the whole of the Base Building Works (if appropriate, to the extent then remaining to be carried out)

1.37    "**Deed of Variation Option**" means the deed of variation option dated the date of this Agreement and entered into between (1) the Developer (2) the Developer's Surety (3) the Tenant (4) the Tenant's Surety and (5) Canary Wharf (Car Parks) Limited

1.38    "**Defects Costs in respect of the Base Building Works**" means all reasonable and proper costs fees and expenses (including without limitation all costs of works consequential upon the remedying of any Latent Defective Works) incurred by the Tenant expended in remedying Latent Defective Works and damage to the Demised Premises caused by or attributable to the Latent Defective Works which have/has become apparent during the period of ten (10) years commencing on the Base Building Works Practical Completion Date PROVIDED ALWAYS THAT if it is agreed or determined that there shall have been Tenant's Delay then the said ten (10) year period shall commence upon the date which it is agreed or determined as provided in Clause 19.4 that Base Building Works Practical Completion would have been achieved but for Tenant's Delay AND PROVIDED FURTHER that the Developer shall not be liable for any Defects Costs in respect of the Base Building Works to the extent that the acts omissions negligence or default of the Tenant or its servants, agents, consultants, contractors or any sub-tenant, licensee or occupier of the Demised Premises or those for whom they are respectively responsible result in any claim which the Developer would otherwise have had in relation to the defect under any contract, appointment, warranty, duty of care deed or insurance policy being defeated, vitiated or avoided in whole or in part

1.39    "**Defects Costs in respect of the Infrastructure Works**" means any costs which are charged to the Tenant as an item comprised in the Estate Expenditure (as defined in the Lease) and which are expended in or attributable to remedying Defects in the Infrastructure Works

1.40    "**Defects in the Base Building Works**" means all and any defects, shrinkages and other faults which shall appear in the Base Building Works within 358 days from the earlier of the date of the Base Building Works Practical Completion Certificate (or, if earlier the date on which it is agreed or determined as provided in Clause 19.4 that Base Building Works Practical Completion would have been achieved but for Tenant's Delay) and the date on which the Tenant takes up beneficial occupation of the Demised Premises (but so that if the Tenant takes Early Access this shall not constitute beneficial occupation) and which are not caused by the Tenant's or its servants' agents' consultants' or contractors' or any subtenants' licensees' or occupiers' or those for whom they are respectively responsible's act, omission, negligence or default and which shall be specified by the Tenant (after consultation with the Developer) in a schedule or schedules of defects which the Tenant shall deliver to the Developer not later than the expiration of the relevant period of 358 days as aforesaid and which the

Developer agrees or which the Independent Person acting as an expert in accordance with Clause 30.5 determines are defects shrinkages or faults as aforesaid

1.41    **"Defects in the Infrastructure Works"** means:

    1.41.1    defects, shrinkages or other faults which appear in the Development Site Infrastructure Works which manifest themselves within the relevant defects periods arising under the Development Site Infrastructure Contracts; and

    1.41.2    any latent or inherent defects in the Development Site Infrastructure Works which manifest themselves during the period of ten (10) years commencing on the date of practical completion of the relevant part of the Development Site Infrastructure Works and which in each case are attributable to or connected with the design workmanship test investigations or supervision of the construction or design of the Development Site Infrastructure Works or the materials used in them having been defective, inadequate, unsuitable or incomplete or otherwise substandard, judged in accordance with the terms of any Approvals and the standards required by Clause 10 and any codes of practice applicable in the case of design at the time when the relevant part of the Development Site Infrastructure Works was designed and in the case of workmanship at the time when the relevant work was done and in the case of materials at the time of specification

1.42    **"Delay Notices"** shall have the meaning given to this expression in Clause 19.4

1.43    **"Demised Premises"** means the premises to be demised by the Lease as the same are more particularly described therein and which are shown for identification purposes edged red on the Demised Premises Plans annexed to this Agreement as **Annexure 5**

1.44    **"Demised Premises Independent Measurer's Certificate"** has the meaning attributed to that expression in Clause 18.1.2

1.45    **"Demised Premises Plans"** means the plans annexed to this Agreement as **Annexure 5**

1.46    **"Design Development"** means the process of progressively developing the design detail of the Base Building Works and which design detail development or the need for which design detail development was capable of being reasonably envisaged at the date of this Agreement Provided That any changes to the Base Building Works shall not constitute Design Development where it/they will/may:

    (i)    result in an omission to or a material change to the scope of the Outline Specification Building HQ2 forming **Annexure 1** to this Agreement;

    (ii)    materially affect the Net Internal Area of the Demised Premises;

    (iii)    materially affect the configuration of the Tenant's Works

PROVIDED FURTHER that the parties acknowledge that the design of the Building to square off the re-entrant corners of the tower element thereof has been agreed but is

not yet reflected in the Demised Premises Plans the Base Building Plans and the Measurement Plans

1.47    **"Determination Notice"** shall have the meaning given to this expression in Clause 30.1

1.48    **"Developer's Critical Path Programme"** means the programme showing the critical path for the Base Building Works and the Infrastructure Works forming **Annexure 27** hereto as the same may be produced by the Developer or by CWCL and provided to the Tenant on its behalf from time to time

1.49    **"Developer's Contracting Team"** means CWCL and the Trade Contractors appointed by CWCL to carry out the Base Building Works (or any part of them) in accordance with this Agreement

1.50    **"Developer's Solicitors"** means Clifford Chance (Reference: C4395/1379/RMRM) or such other firm of solicitors as the Developer shall appoint and notify to the Tenant as having been so appointed

1.51    **"Development Site"** means:-

    1.51.1    the land and water areas shown edged green on the Development Site Plan and any other land and water areas in which the Developer or a Group Company of the Developer acquires a freehold or leasehold interest and which the Developer or a Group Company of the Developer intends shall form part of the Development Site; and

    1.51.2    all buildings and appurtenances thereon and all additions, alterations and improvements to such buildings and appurtenances

1.52    **"Development Site Infrastructure Contracts"** means the management or other contracts entered into by the Developer and/or any Group Company of the Developer (and as the same may be amended from time to time) providing for the execution of the Development Site Infrastructure Works or any part of them

1.53    **"Development Site Infrastructure Works"** means the design and construction from time to time of infrastructure works within the Development Site which for the avoidance of doubt include the Infrastructure Works

1.54    **"Development Site Plan"** means the plan annexed to this Agreement as **Annexure 6**

1.55    **"Disclosure"** shall have the meaning given to this expression in Clause 33.4.1

1.56    **"DLR"** shall mean the Docklands Light Railway

1.57    **"Early Access"** means the access granted to the Tenant by the Developer to the Tenant's Works Areas to perform the Tenant's Works

1.58    "**Early Access Condition**" means in relation to the relevant whole floor of the Building that the Base Building Works carried out and completed on that floor have reached the point described in **Schedule 7**

1.59    "**Early Access Date**" means in relation to each whole floor comprising the ground floor and above (but excluding the Ground Floor Lobby) the date twenty-four (24) hours after the date upon which Early Access Condition is first notified by the Developer to the Tenant pursuant to Clause 14.2.1

1.60    "**Early Access Method Statement**" has the meaning attributed to it in Clause 14.1.1

1.61    "**Estimate of Tenant's Delay**" shall have the meaning given to this expression in Clause 8.4.1(b)

1.62    "**Estimated Unspent Costs**" shall have the meaning given to that expression in Clause 8.4.1(d)

1.63    "**Event of Default**" means any of the events listed in Clause 26.1

1.64    "**Existing Material Trade Contractors**" means those Material Trade Contractors referred to in **Annexure 7**

1.65    "**Fire Certificate**" means the fire certificate as described in Clause 4.1.1 of this Agreement

1.66    "**First Offer Agreement**" means a first offer agreement of even date entered into between the parties to this Agreement

1.67    "**Force Majeure**" means:-

   1.67.1    fire, lightning, explosion, flood, earthquake, exceptionally inclement weather conditions, war, hostilities, rebellion, revolution, insurrection, military or usurped power, civil war, terrorist action, aircraft or other aerial devices or articles dropped from them, strikes and other industrial disputes, riot, civil commotion, disorder and Government action

   1.67.2    any other matter, cause or circumstances (save for:

   (a)    unforeseen or hidden ground conditions or physical features within, under or upon the Site or the parts of the Development Site upon which the Base Building Works described in Part II of the Base Building Specification are to be constructed or

   (b)    the insolvency of any Key Consultant, Consultant or member of the Developer's Contracting Team and

   1.67.3    any combination of the above mentioned causes

   in each case which:-

(i)    is beyond the reasonable control of the Developer and not caused by lack of funds (other than in circumstances where the Tenant is in breach of an obligation in this Agreement to make payments to the Developer) on the part of the Developer (and acts or omissions of the Developer, any Group Company of the Developer, the Key Consultants, the Consultants, the Developer's Contracting Team and/or any of their agents whether directly or indirectly employed by any of them will be (unless the act or omission is itself caused by one or more of the events set out in Clause 1.67.1) within the reasonable control of the Developer); and

(ii)    adversely affects the performance by the Developer of the terms and provisions of this Agreement; and

(iii)    is on the basis that there shall be no double counting

Provided That in calculating the overall period of Force Majeure extensions for the purposes of this Agreement there shall also be included any period or periods of delay (but so that there is to be no double counting) consequential on any delays caused by any of the above events

1.68    "**Ground Conditions Report**" means together the Geotechnical Report Revision A Canary Wharf Site 720 (HQ2), June 1999, Ove Arup & Partners; the Geotechnical Report Revision A, HQ3 (inc Retail and Car Park) Canary Wharf South, November 1999, Ove Arup & Partners; and the Canary Wharf Environmental Audit Executive Summary, December 1995, Acer Environmental

1.69    "**Ground Floor Lobby**" means the lobby shown hatched blue on the plan forming **Annexure 22** to this Agreement

1.70    "**Ground Floor Lobby Independent Measurer's Certificate**" has the meaning attributed to that expression in Clause 18.1.2

1.71    "**Group Company**" means any company which is for the time being (a) a subsidiary of the relevant party or (b) the holding company or parent company of that party or (c) another subsidiary of the holding company or parent company of that party (whether or not that subsidiary may itself be a parent or holding company of a sub-group of companies within the whole group), in each case within the meaning of Sections 258, 259 and 736 of the Companies Act 1985, as amended by the Companies Act 1989

1.72    "**Health and Safety File**" means the health and safety file prepared and maintained by the Developer pursuant to the CDM Regulations

1.73    "**HM Customs & Excise**" means HM Customs & Excise or any other person, authority, body or official which is from time to time responsible for the care, management or administration of Value Added Tax

1.74    "**Holy Days**" means the Jewish Sabbath (one hour before sundown on Friday to one hour after sundown on Saturday) and the Jewish Holy Days specified in the **Schedule 1**

1.75   "**Independent Measurer**" means Plowman Craven & Associates of 141 Lower Luton Road, Harpenden, Hertfordshire AL5 5AQ or if they are unable or unwilling to act such other firm or company with expertise in measuring floors in premises of a nature similar to the Demised Premises as the parties may agree (or as may in default of agreement be nominated by the President for the time being of the Royal Institution of Chartered Surveyors (or his deputy) on the application of any party) in substitution therefor in accordance with this Agreement

1.76   "**Independent Measurer's Certificates**" has the meaning attributed to that expression in Clause 18.1.2

1.77   "**Independent Person**" means the independent person appointed to act as specified in Clause 30

1.78   "**Infrastructure Works**" means the works described in Schedule 6

1.79   "**Infrastructure Works Liquidated Damages Date**" means the date three (3) months after the later of the dates specified in Clause 10.1 as such date is extended day for day by Force Majeure and Tenant's Delay agreed or determined in accordance with this Agreement

1.80   "**Infrastructure Works Practical Completion**" means practical completion of the Infrastructure Works

1.81   "**Infrastructure Works Practical Completion Certificate**" means the Developer's certificate to the effect that Infrastructure Works Practical Completion has been achieved

1.82   "**Infrastructure Works Practical Completion Date**" means the date specified in the Infrastructure Works Practical Completion Certificate as the date upon which Infrastructure Works Practical Completion was achieved or in case of dispute the date determined by the Independent Person in accordance with Clause 19.1 and references to the date of Infrastructure Works Practical Completion shall be construed accordingly

1.83   "**Initial Rent**" shall have the meaning given to this expression in the Lease and shall be the amount calculated in accordance with the provisions of Clause 22.2.2(a)

1.84   "**Insured Risks**" shall have the meaning given to that expression in Clause 21.2

1.85   "**Insured Works**" shall have the meaning given to that expression in Clause 21.3

1.86   "**Interest Rate**" means three (3) per centum per annum above the base rate of Barclays Bank plc in force from time to time or, if such base rate shall be incapable of determination three (3) per centum per annum above a rate reasonably equivalent to such base rate

1.87   "**Irrecoverable VAT**" means any Value Added Tax comprised in any consideration paid or payable in relation to any supply made by reason of this Agreement and to the extent that the recipient of the relevant supply does not (or would not if appropriate

claims had been made in due time) receive a credit in full as "input tax" (as the expression "input tax" is defined in Section 24 of the Value Added Tax Act 1994) under Sections 25 and 26 of that Act

1.88 **"Isle of Dogs Enterprise Zone Scheme"** means the Isle of Dogs Enterprise Zone Scheme as adopted by the London Docklands Development Corporation on 2 February 1982 and as formally designated by the Secretary of State for the Environment by virtue of the Isle of Dogs Enterprise Zone Designation Order 1982 and as revised by resolution of the London Docklands Development Corporation on 9 February 1984

1.89 **"Jubilee Line Access"** means the underground access directly from the retail mall forming part of the Infrastructure Works shown on the Plan comprising Annexure 21

1.90 **"Key Consultants"** means:-

1.90.1 Cesar Pelli & Associates Inc. of 1056 Chapel Street, New Haven, Connecticut, 06510 USA in relation to design and Adamson Associates of 55 Port Street East, Mississauga, Ontario, Canada L5G 4P3 in relation to production and in relation to the issue of the Base Building Works Practical Completion Certificate it is agreed that Adamson Associates shall initially be the Base Building Architect for that purpose

1.90.2 Hilson Moran Partnership Limited of 16 Armstrong Mall, Southwood, Farnborough, Hampshire GU14 0NR as Building Services Consultants

1.90.3 Yolles Partnership Inc. of 163 Queen Street East, Suite 200, Toronto, Canada M5A 151 as Structural Engineers

1.90.4 Lerch Bates & Associates Limited of 4 Copper Beech Close, Woking, Surrey GU22 0QA as Vertical Transportation Consultants

and in each case such other firms as the Developer may procure are appointed by CWCL to perform the relevant function in substitution for the foregoing in accordance with the obligations of this Agreement

1.91 **"Latent Defective Works"** means any latent or inherent defects in the Base Building Works which:-

1.91.1 directly adversely affect the Tenant's beneficial use and occupation of the Demised Premises for the purposes of the Tenant's business; and

1.91.2 manifest themselves after the expiry of the defects liability period referred to in Clause 1.40 and during the period of ten (10) years commencing on the date on which Base Building Works Practical Completion is achieved; and

1.91.3 are present in the Base Building Works as originally designed and/or constructed (which original design and construction for the avoidance of doubt will include all Tenant's Requested Modification under this Agreement) or arise as a result of water seepage or settlement; and

1.91.4   are attributable to or connected with the design workmanship tests investigations or supervision of the construction of the Base Building Works or the materials used in them having been defective, inadequate, unsuitable or incomplete or otherwise substandard, judged in accordance with the terms of any Approvals, the standards referred to in Clauses 6.1 and 6.2 and any codes of practice usual (in the case of design at the time when the relevant part of the Base Building Works was designed and in the case of workmanship at the time when the relevant work was done and in the case of materials at the time of specification); and

1.91.5   are specified by the Tenant in a schedule or schedules delivered to the Developer on or before the expiry of the relevant ten (10) year period; and

1.91.6   are not caused or aggravated (to the extent only of such aggravation) (whether directly or indirectly) by the carrying out of the Tenant's Works or by failure by the Tenant to comply (or procure compliance by others) with its covenants in this Agreement or the Lease or by any acts or omissions by the Tenant or any sub-tenant licensee or occupier of the Demised Premises (or any persons acting for or on behalf of any of them or under their control)

Provided Always that if it is agreed or determined that there shall have been Tenant's Delay then the said ten (10) year period specified in Clause 1.91.2 shall commence upon the date which it is agreed or determined pursuant to Clause 19.4 that Base Building Works Practical Completion would have been achieved but for Tenant's Delay

1.92   "Lease" means the lease of the Demised Premises to be granted to the Tenant in the form of the agreed draft annexed to this Agreement as **Annexure 8** subject to such amendments as are agreed in writing between the parties or as are otherwise made in accordance with the provisions of this Agreement

1.93   "Lease Insurance Date" has the meaning attributed to it in Clause 21.1

1.94   "Letter of Opinion" means a letter of opinion substantially in the form of the draft attached as **Annexure 9** but amended so as to relate to the Lease at the date of grant (and with such other amendments reasonably necessary to reflect any change in law or market practice current at the relevant time)

1.95   "Licences" means the licence(s) regulating and approving the manner of execution of the Tenant's Works in the form of the draft set out in Schedule 3 to be entered into as provided in Clause 15.3

1.96   "Liquidated Damages" shall have the meaning given to that phrase in Clause 5.4

1.97   "Liquidated Damages Date" means 30 June 2003 as extended day for day by Force Majeure and Tenant's Delay agreed or determined in accordance with Clause 5.3.3

1.98   "Long Stop Date" means 31 March 2007 as extended day for day by Force Majeure and Tenant's Delay agreed or determined in accordance with Clause 5.3.3

1.99    "**Material Trade Contract**" means a Trade Contract which is entered into between the Developer and/or CWCL and a Material Trade Contractor

1.100    "**Material Trade Contractor**" means any or all of the trade contractors engaged under a Material Trade Contract to provide any or all of the services listed in **Annexure 10**

1.101    "**Measurer's Appointment**" has the meaning attributed to it in Clause 18.1.1

1.102    "**Measurement Plans**" means the plans showing each floor of the Building annexed to this Agreement as **Annexure 11**

1.103    "**Modification Consents**" shall have the meaning given to this expression in Clause 8.4.1(a)

1.104    "**Modification Costs**" means (in relation to each element of each Tenant's Requested Modification) the aggregate of the following sums namely:-

     1.104.1    the sums payable to Trade Contractors in relation to or resulting from that element of the Tenant's Requested Modification including (but not limited to) in each case (if any) any relevant Trade Contractor Preliminaries; and

     1.104.2    (save in respect of any period of Tenant's Delay when this sub-clause 1.104.2 shall revert to the actual cost of any Preliminaries provided) a fixed preliminaries percentage of twelve and a half per centum (12.5%) of the sums referred to in Clause 1.104.1 above; and

     1.104.3    all Key Consultants', Consultants' and other third party fees properly incurred or expended by the Developer and/or CWCL in connection with each element of the Tenant's Requested Modification, including but not limited to fees incurred (as applicable) in:-

         (a)    determining the extent and scope of each element of the Tenant's Requested Modification

         (b)    preparation of the Modification Plans

         (c)    preparation of the Estimates referred to in Clause 8.4.1

         (d)    preparation of the drawings referred to in Clauses 1.124.2 and 18.1.3(a)

         (e)    assessing and determining the final out-turn cost of the Tenant's Requested Modification

         (f)    assessing agreeing or preparing the Costs Estimate and monitoring and agreeing the sums finally payable to the Trade Contractors in relation to the Tenant's Requested Modifications

     1.104.4    the part or proportion of the sums, fees, costs and expenses specified in Clauses 1.104.1 to 1.104.3 (inclusive) which represents Value Added Tax incurred by the Developer, save to the extent that the Developer is entitled to

credit or repayment in respect of such Value Added Tax from H.M. Customs
& Excise

1.104.5    Three per centum (3%) of the aggregate of the sums referred to in
Clauses 1.104.1 to 1.104.3 (inclusive)

as adjusted pursuant to this Agreement and so that (for the avoidance of doubt) any
sum or part thereof which is recovered under one sub-clause shall not also be
recovered under another sub-clause of this Clause 1.104 and the Developer shall use its
reasonable endeavours to ensure that in relation to Clause 1.104.1 to 1.104.3
(inclusive) all such costs as are incurred are reasonable in all the circumstances having
regard to and acting in accordance with good management contracting

1.105    **"Modifications"** and **"Modification Plans"** shall each have the meaning given to the
relevant expression in Clause 8.6

1.106    **"MSDF Works"** means the fitting out works described and of the minimum standard
detailed in the document forming **Annexure 12** hereto and entitled **"Minimum
Standard Developer's Finish for Tenant's Works"** (the **"MSDF Works
Specification"**)

1.107    **"Net Internal Area"** means the net internal area expressed in square feet of the
Demised Premises (ignoring any losses and gains arising from Tenant's Requested
Modifications and the Base Building Modifications) and measured for the purposes of
ascertaining the Net Internal Area under this Agreement in accordance with the Code
of Measuring Practice

1.108    **"O&M Manuals"** means the operating and maintenance manuals (if any) to be
produced by the Trade Contractors

1.109    **"Outline Specification Building"** shall have the meaning given to that phrase in
Clause 1.7.1

1.110    **"Planning Acts"** means the Town and Country Planning Act 1990, the Planning
(Listed Buildings and Conservation Areas) Act 1990, the Planning (Hazardous
Substances) Act 1990, the Planning (Consequential Provisions) Act 1990 and the
Planning and Compensation Act 1991 the Local Government Planning and Land Act
1980 and includes any other applicable town and country planning legislation

1.111    **"Planning Permission"** means a permission or consent granted pursuant to the
Planning Acts or pursuant to the Isle of Dogs Enterprise Zone Scheme

1.112    **"Preliminaries"** means the costs of the items identified in **Schedule 5** and reasonably
and properly incurred by the Developer

1.113    **"Progress Meetings"** shall have the meaning given to that phrase in Clause 9.3

1.114    **"Prohibited Materials"** means:

1.114.1    high alumina cement concrete in structural elements;

1.114.2    woodwool slabs in permanent formwork to concrete or in structural elements;

1.114.3    calcium chloride used as a setting agent in cement;

1.114.4    calcium silicate bricks or tiles;

1.114.5    asbestos or asbestos containing products as defined in The Asbestos Regulations 1969 or in any statutory modification or re-enactment thereof current at the date of specification (save where trace natural elements thereof are used in products which comply with relevant British Standard Specifications);

1.114.6    naturally occurring aggregates for use in reinforced concrete which do not comply with British Standard Specification 882 and 110 and naturally occurring aggregates for use in concrete which do not comply with British Standard Specification 8110: 1985;

1.114.7    urea formaldehyde;

1.114.8    materials containing fibres which have a diameter of 3 microns or less and a length of 200 microns or less;

1.114.9    polytetrafluoroethylene (PTFE) except when used as a non-stick sealing within valves, jointing material between pipes or as an isolating tape;

1.114.10    mineral fibres (man-made or naturally occurring) which are not contained or stabilised by materials to prevent fibre migration;

1.114.11    halon;

1.114.12    timber which is not obtained from a managed and regulated sustainable source;

1.114.13    lead based paint; and

1.114.14    any other substances or materials generally known in the United Kingdom construction industry to be deleterious or harmful to health and safety or not in accordance with relevant British standards and codes of practice or which have been declared deleterious in a publication of the Building Research Establishment at the relevant time

1.115    **"Put Option Agreement"** means a put option agreement dated the date of this Agreement in respect of space in Building HQ2 and Building HQ3, Canary Wharf made between the Developer the Tenant and Canary Wharf Holdings Limited

1.116    **"Put Option Fit Out Works"** means any fitting out works in the Put Option Space to be carried out by or on behalf of the Put Option Sub-Tenant

1.117    **"Put Option Method Statement"** means a method statement in respect of the carrying out of the Put Option Fit Out Works which shall contain such of the information specified in **Schedule 4** insofar as it is reasonable and appropriate for the same to be included

1.118    **"Put Option Space"** means the space to be demised to the Put Option Sub-Tenant pursuant to the Put Option Sub-Lease in the event the put option has actually been exercised pursuant to the terms of the Put Option Agreement

1.119    **"Put Option Sub-Tenant"** means the Developer or any Group Company of the Developer or any third party taking a Put Option Sub-Lease from the Tenant or deriving title to the Put Option Space through or under the Tenant

1.120    **"Put Option Sub-Lease"** means any lease granted pursuant to the exercise of the option contained in the Put Option Agreement

1.121    **"Put Option Sub-Lease Independent Measurer's Certificate"** has the meaning attributed to that expression in Clause 18.1.2

1.122    **"Relevant Estimates"** shall have the meaning given to that term in Clause 8.4.1

1.123    **"Rent Commencement Date"** means whichever is the appropriate date of the dates calculated in accordance with Clauses 22.2.3 and 22.2.4

1.124    **"Rent Review Specification"** means the specification comprising:-

    1.124.1    the "as-built" Base Building Works but omitting Tenant Requested Modifications and substituting for them the relevant Base Building Definition items; and

    1.124.2    (but only as a guide to interpretation of the items in Clause 1.124.1) the TRM Plans; and

    1.124.3    the MSDF Works Specification

    to form the relevant Annexure to the Lease

1.125    **"Senior Manager"** shall have the meaning given to this expression in Clause 32

1.126    **"Site"** means the land shown edged red on the Development Site Plan

1.127    **"Snagging Items"** means any minor defects or omitted items or items of decoration or repair (not including items of or relating to the Tenant's Works) as specified in the Schedule annexed to the Base Building Works Practical Completion Certificate which do not, and the completion of which will not, individually or when taken together, materially prevent or adversely affect and/or delay (other than to an extent which is not material) the ability to carry out the Tenant's Works or when they are complete the beneficial use and occupation of the Demised Premises for the purposes contemplated by this Agreement including the Tenant's business and ancillary uses to such business

1.128 **"Statutory Requirements"** means any Act of Parliament and any instrument, rules, orders, regulations, notices, directions, bye-laws, permissions and plans for the time being made under or deriving validity from it, all regulations, laws or directives made or issued by or with the authority of The European Commission and/or the Council of Ministers (which take effect in England and Wales) and any rules, regulations, building regulations, orders, bye-laws or codes of practice of any local authority or any utility company having jurisdiction in relation to the Base Building Works

1.129 **"Substitute's Warranty"** means the form of warranty annexed as **Annexure 13**

1.130 **"Target Date"** means 31 March 2003 as extended day for day by Force Majeure and Tenant's Delay agreed or determined in accordance with Clause 5.3.3

1.131 **"Tenant's Category A Works"** means any works undertaken by the Tenant which if carried out shall comprise works of the nature of (whether or not they are identical to) the MSDF Works and which shall be of no lesser standard or extent than the MSDF Works

1.132 **"Tenant's Category B Works"** means the works (if any) which if carried out are undertaken by the Tenant (in addition to the Tenant's Category A Works or in substitution thereof) as part of the fitting out of the Demised Premises

1.133 **"Tenant's Consultants"** means all or any of those persons appointed by the Tenant (including the Tenant's Key Consultants) to advise the Tenant on the design and construction of the Demised Premises and/or the Tenant's Works

1.134 **"Tenant's Delay"** means any actual delay to the Base Building Works or the Infrastructure Works or any part or item of either of them arising out of or attributable to any act or omission or requirement of the Tenant or the Tenant's Contractors or the Tenant's Consultants or their respective agents, servants or contractors and any actual delays resulting from or properly and reasonably attributable to any (or a combination) of the following (but so that there is to be no double counting):-

1.134.1 any written request by the Tenant that the Developer delay or procure the delay of the commencement, progress or completion of work on any part of the Base Building Works or the Infrastructure Works for any reason which is not as a result of the Developer's breach of its obligations in this Agreement;

1.134.2 (save to the extent such delay is consequential on or is caused or arises from a failure by the Developer to fully comply with its obligations pursuant to this Agreement) failure by the Tenant in accordance with the obligations in this Agreement to supply details and confirmations within the time limits or periods provided in the Critical Dates Schedule;

1.134.3 any Tenant's Requested Modifications or the carrying out of the Tenant's Works or any works investigations process, actions claims or proceedings directly or indirectly consequent upon pursuant to or in connection with any Tenant's Requested Modification; or

1.134.4    any breach by the Tenant of any of the terms of this Agreement

and any other actual delay either expressly specified in this Agreement as or otherwise agreed between the parties to be a Tenant's Delay (but so that there is no double counting) and so that for the avoidance of doubt in calculating the overall period of any Tenant's Delay for the purposes of this Agreement:-

(a)    there shall also be included any period or periods of delay (but so that there shall be no double counting) consequential on any delays caused by any of the above events;

(b)    it is expressly agreed between the parties that on each occasion of Tenant's Delay (but so that there shall be no double counting) there shall be an automatic addition on a day by day basis of such period of Tenant's Delay to all time periods in this Agreement which fall to be adjusted by Tenant's Delay and to accumulated periods of Tenant's Delay;

(c)    any periods of delay caused by the Put Option Sub-Tenant carrying out the Put Option Fit Out Works shall not constitute Tenant's Delay

and Provided Further that for the avoidance of doubt nothing in this Agreement shall oblige the Developer to incur additional expenditure to mitigate Tenant's Delay unless and to the extent that the Tenant agrees in writing to reimburse the same pursuant to Clause 5.3.4

1.135    **"Tenant's Inducement"** means the sum expressed in pounds sterling and, except where Clause 29.4.2 applies, inclusive of Value Added Tax (if any) which may be chargeable at any rate produced by the following calculation:-

A x B where:

A =    (the Net Internal Area of the Ground Floor (excluding the Ground Floor Lobby) and each Floor above confirmed in the Tenant's Inducement Independent Measurer's Certificate) less (the Net Internal Area to be demised by any Put Option Sub-Lease confirmed in the Put Option Sub-Lease Independent Measurer's Certificate)

B =    Sixty five pounds (£65)

1.136    **"Tenant's Inducement Independent Measurer's Certificate"** has the meaning attributed to that expression in Clause 18.1.2

1.137    **"Tenant's Interior Architect"** means Swanke Hayden & Connell of 25 Christopher Street, London EC2A 2BS or such other firm as the Tenant may appoint in respect of interior architectural services in connection with the Tenant's Works and notified to the Developer as having been so appointed

1.138   "**Tenant's Services Engineer**" means such firm as the Tenant may approve in respect of the function of service engineer in connection with the Tenant's Works and notified to the Developer as having been so appointed

1.139   "**Tenant's Key Consultants**" shall mean:

    1.139.1   the Tenant's Interior Architect

    1.139.2   the Tenant's Representative

    1.139.3   the Tenant's Services Engineer

1.140   "**Tenant's Key Contractors**" shall mean those contractors appointed by the Tenant to carry out any of the works detailed in **Annexure 24** to this Agreement

1.141   "**Tenant's Quantity Surveyor**" means such person as may be appointed by the Tenant to perform the function of the Tenant's Quantity Surveyor pursuant to this Agreement and notified to the Developer as having been so appointed

1.142   "**Tenant's Representative**" means Rick Coffey of Global Facilities (UK) Limited, Global House, Sandy's Row, London E1 7HW or such other person as may be appointed by the Tenant to perform the function of the Tenant's Representative pursuant to this Agreement and notified to the Developer as having been so appointed

1.143   "**Tenant's Requested Modification**" means a modification or modifications requested by the Tenant in accordance with Clause 8.1 and as defined therein

1.144   "**Tenant's Solicitors**" means Freshfields Bruckhaus Deringer (Ref: GLP/NJS) or such other firm of solicitors as the Tenant may appoint and notify to the Developer

1.145   "**Tenant's Works**" means, if any, collectively the Tenant's Category A Works and the Tenant's Category B Works or any of them as the context requires

1.146   "**Tenant's Works Areas**" shall have the meaning attributed to that expression in Clause 14.1.1

1.147   "**Tenant's Works Practical Completion**" means practical completion of any Tenant's Works

1.148   "**Tenant's Works Practical Completion Certificate**" means the certificate of the Tenant to the effect that Tenant's Works Practical Completion has been achieved

1.149   "**Term Commencement Date**" means the date calculated in accordance with Clause 22.2.1

1.150   "**Trade Contract**" means a contract between the Developer and/or CWCL and a Trade Contractor

1.151   "**Trade Contractors**" means each trade contractor appointed by the Developer, CWCL or any Group Company in connection with the Base Building Works (and "**Trade Contractor**"" shall be construed accordingly)

1.152  **"Trade Contractors Preliminaries"** means the preliminaries referred to in any contract entered into with a Trade Contractor

1.153  **"TRM Application"** shall have the meaning given to that expression in Clause 8.1

1.154  **"TRM Authorisation Request"** shall have the meaning given to that expression in Clause 8.4.1

1.155  **"TRM Plans"** shall have the meaning given to that expression in Clause 18.1.3(a)

1.156  **"Unspent Costs"** means in relation to each substitution comprised within a Tenant's Requested Modification the aggregate of the following sums, namely:-

    1.156.1   the amount (if any) by which the sums due and payable by the Developer or CWCL to Trade Contractors pursuant to the Trade Contract (including (if any) any relevant Trade Contractor Preliminaries) are reduced as compared to the sums which would otherwise but for the Tenant's Requested Modification in question have been so due and payable; and

    1.156.2   a fixed preliminaries percentage of twelve and a half per centum (12.5%) of the sums referred to in Clause 1.156.1; and

    1.156.3   the amount (if any) by which the sums due and payable by the Developer and/or CWCL to Key Consultants and Consultants and other third parties are reduced as compared to the sums which would otherwise but for the Tenant's Requested Modification in question have been so due and payable; and

    1.156.4   an additional amount of three per centum (3%) of the aggregate of the sums referred to in Clauses 1.156.1 to 1.156.3 (inclusive)

1.157  **"Value Added Tax"** and **"VAT"** mean value added tax as provided for in the Value Added Tax Act 1994 and includes any other tax from time to time replacing it or of a similar fiscal nature

1.158  **"Winter Garden"** means the structure together with internal finishes to be constructed in the area hatched green on the plan forming part of **Annexure 25** to this Agreement

1.159  **"Working Day"** means any day (other than a Saturday or a Sunday or any Holy Day) upon which clearing banks in the United Kingdom are open to the public for the transaction of business

2.  **INTERPRETATION**

In this Agreement unless the context otherwise requires:-

2.1  Words importing the masculine gender only shall include the feminine gender and neuter meaning and vice versa and words importing the singular number shall include the plural number and vice versa and all references to a Clause or Schedule shall mean a Clause of or Schedule to this Agreement (unless the context otherwise requires)

2.2    References to drawings and documents annexed to this Agreement shall include the drawings and documents initialled for identification on behalf of the parties to this Agreement for the purposes of this Agreement (whether individually or as part of an agreed bundle or bound volume or otherwise)

2.3    The Clause and paragraph titles and headings are for convenience only and shall not be construed in or affect the interpretation of this Agreement

2.4    Every covenant by a party comprising more than one person shall be deemed to be made by such party jointly and severally

2.5    Words importing persons shall include firms, companies and corporations and vice versa and reference to the Tenant or to the Developer shall be deemed to extend to the Tenant's or the Developer's (as the case may be) servants and consultants, workmen, contractors, sub-contractors, agents or any person or persons acting on its or their behalf or under its or their control

2.6    Any covenant by any party not to do any act or thing shall include an obligation not to permit or suffer such act or thing to be done and (so far as is within its direct control) to procure that it is not done and any reference to consent or approval or other confirmation not being unreasonably withheld (or similar expression) shall be deemed to include reference to such consent or approval or other confirmation not being unreasonably delayed

2.7    Any reference to the right of the Developer or the Tenant to have access to, enter or call for information on the Site shall be construed as entitling the Developer or the Tenant (as the case may be) to supply the same to their respective servants, agents, professional advisers, contractors and workmen for the purposes of and contemplated by and upon terms (including as to confidentiality) which are consistent with this Agreement

2.8    Any reference to a statute (whether specifically named or not) shall include any amendment or re-enactment of it for the time being in force, and all instruments, orders, notices, regulations, directions, bye-laws, permissions and plans for the time being made, issued and or given under it, or deriving validity from it (in each case a "Change") provided that where any design has been carried out or work commenced or scheduled under this Agreement and any relevant Change takes place then the Developer may (insofar as to do so would not place it or any future occupier of all or part of the Building in breach of a Statutory Requirement) carry out and complete the Base Building Works or perform any of its other obligations hereunder as if such Change had not taken place

2.9    The words "including" "include" "excluding" and "exclude" shall be deemed to be followed by the words "without limitation"

2.10    Whenever pursuant to this Agreement a party is required to give consent, approval or confirmation (in this Clause 2.10 each a "relevant approval") within a specified time period (in this Clause 2.10 the "time period") it shall be reasonable for the party

requested to give the relevant approval to withhold, refuse or delay the relevant approval if the information provided to it (taken together with its existing knowledge) is insufficient properly to enable it to give its consent, approval or confirmation and if within the time period such party gives notice to the party requesting the relevant approval that it requires specifically identified further information in order to be able properly to consider the request for the relevant approval

2.11    If the put option is exercised:

(a)    wherever pursuant to this Agreement the Tenant's approval or consent is required the Developer shall be responsible for obtaining the Put Option Sub-tenant's approval or consent and, so far as the Tenant is concerned, the approval or consent of the Put Option Sub-tenant shall be deemed to have been given if the Developer's approval or consent is given;

(b)    wherever pursuant to this Agreement the Developer's approval or consent is required the Tenant shall be entitled to assume that the giving of approval or consent by the Developer includes the giving of such approval or consent by the Put Option Sub-tenant

2.12    Save where expressly provided to the contrary, all sums payable to or by the Tenant or the Tenant's Surety pursuant to this Agreement shall be deemed to be exclusive of any Value Added Tax which may be chargeable on the supply or supplies for which such sums (or any part of such sums) are the whole or part of the consideration for Value Added Tax purposes

2.13    Any reference to any right, entitlement or obligation of any person under the laws in relation to Value Added Tax, or any business carried on by any person for Value Added Tax purposes, shall (where appropriate and unless the context otherwise requires) be construed, at any time when such person is treated as a member of a group for the purposes of Section 43 of the Value Added Tax Act 1994 to include a reference to the right, entitlement or obligation under such laws of, or the business carried on for Value Added Tax purposes by the representative member of such group at such time (the term "representative member" to be construed in accordance with the said Section 43)

2.14    any reference to the making of any election (or the entering into an agreement with a third party the effect of which is or may be to require the making of an election) to waive exemption made or to be made by any person pursuant to paragraph 2 of Schedule 10 to the Value Added Tax Act 1994 shall be construed to include a reference to (i) the making of any such election made or to be made pursuant to such paragraph by any relevant associate of such person or (ii) becoming a relevant associate of someone who has made such an election (the term "relevant associate" to be construed in accordance with paragraph 3 of Schedule 10) PROVIDED THAT nothing in this Clause 2.14 shall deem or otherwise treat an election to have been made when an election has not in fact been made

2.15    without limiting the circumstances in which the Developer would be treated as making a voluntary election, the Developer shall be treated for the purposes of this Agreement as making a voluntary election where:-

2.15.1    the Developer enters into an agreement with a third party the effect of which is that the Developer is or may be required to make an election and the Developer makes an election pursuant to such agreement; or

2.15.2    the Developer is treated as having made an election as a result of the Building being linked internally or by a covered walkway to another building in respect of which a voluntary election has been made by the Developer

## PART 2

## CONSULTANTS AND TRADE CONTRACTORS

3.    **CONSULTANTS AND TRADE CONTRACTORS**

3.1    **Appointment of Key Consultants**

3.1.1    The Developer shall, insofar as the same have not already been provided to the Tenant, procure that there are delivered to the Tenant on the date of this Agreement complete copies of all completed appointments of Key Consultants (excluding financial information) and shall procure the supply to the Tenant of copies of any other Key Consultants' appointments (excluding financial information) as soon as reasonably practicable following their completion

3.1.2    The Developer shall not, without the prior consent of the Tenant (such consent not to be unreasonably withheld) make any variation to any material term (other than insofar as the same relates to the financial arrangements between the parties thereto) of a completed Appointment of any of the Key Consultants where the effect of such variation would materially reduce the extent of the remedies available to the Tenant pursuant to the relevant Key Consultant's warranty to be provided pursuant to Clause 3.1.3. If approval shall not have been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant in writing within six (6) Working Days after request for such an approval, the approval shall be deemed to have been given by the Tenant on the expiry of the six (6) Working Day period

3.1.3

(a)    The Developer shall procure that within twenty (20) Working Days of the date of this Agreement each of the Key Consultants who have completed their appointments pursuant to Clause 3.1.1 or 3.1.2 executes a warranty in favour of the Tenant in the form of the relevant draft warranty annexed as **Annexure 14**

(b)    The Developer shall procure that each of the Key Consultants who are appointed after the date of this Agreement executes a warranty in favour

of the Tenant in the form of draft warranty annexed as **Annexure 14** within five (5) Working Days of completion of such Key Consultant's Appointment

in each case with non-material variations or pre-agreed permitted amendments as set out in **Annexure 15** only unless the Tenant shall otherwise first approve an amendment (such approval not to be unreasonably withheld). If approval shall not have been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant in writing within six (6) Working Days after request for such an approval, the approval shall be deemed to have been given by the Tenant on the expiry of the six (6) Working Day period. The procedure may be repeated. The Developer shall deliver the warranties to the Tenant within ten (10) Working Days of their completion

3.1.4    In the event that the Developer and/or CWCL terminates (in whole or in part) the appointment of a Key Consultant or a Key Consultant declines to be appointed the Developer shall procure that CWCL appoints another reputable and suitable firm in substitution for the relevant Key Consultant together with the grant of a warranty in favour of the Tenant by such firm on the terms of the Substitute's Warranty in each case with non-material variations or pre-agreed permitted amendments as set out in **Annexure 15** only unless the Tenant shall otherwise approve an amendment (such approval not to be unreasonably withheld). If approval shall not have been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant in writing within five (5) Working Days after request for such an approval, the approval shall be deemed to have been given by the Tenant. The procedure may be repeated. The Developer shall deliver the Substitute's Warranty to the Tenant within ten (10) Working Days following its completion

3.1.5    Any dispute arising out of the matters referred to in this Clause 3.1 shall be referred to an Independent Person who shall act as an expert in accordance with Clause 30.5

3.1.6    If the Tenant shall unreasonably refuse or delay any approval pursuant to this Clause 3.1 in any case where the Tenant is not entitled to so unreasonably withhold or refuse an approval the period of delay and any resulting delays to the Base Building Works properly attributable thereto shall be a Tenant's Delay for the purposes of this Agreement

3.1.7    The parties acknowledge that the Tenant shall be entitled to appoint in its absolute discretion and at its own expense additional Tenant's Consultants to advise the Tenant in relation to the Base Building Works and that these may be the same firms as the Key Consultants

3.1.8    The Developer and/or CWCL shall be entitled to appoint such other additional Key Consultants as either the Developer and/or CWCL considers appropriate

in connection with the Base Building Works provided that the provisions of Clauses 3.1.1 - 3.1.4 are complied with

3.1.9    For the avoidance of doubt the Tenant shall not be required to procure that the Developer procures warranties in favour of any Put Option Sub-Tenant

## 3.2    Material Trade Contracts

3.2.1    The Developer shall, insofar as the same have not already been provided to the Tenant, procure that there are delivered to the Tenant on the date of this Agreement complete copies of all completed Material Trade Contracts (excluding financial information) and shall procure the supply to the Tenant of copies of any other Material Trade Contracts (excluding financial information) as soon as reasonably practicable following their completion

3.2.2    The Developer shall not, without the prior consent of the Tenant (such consent not to be unreasonably withheld) make any variation to any material term (other than insofar as the same relates to the financial arrangements between the parties thereto) of a completed Material Trade Contract where the effect of such variation would materially reduce the extent of the remedies available to the Tenant pursuant to the relevant Material Trade Contractor's warranty to be provided pursuant to Clause 3.3.1. If approval shall not have been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant in writing within six (6) Working Days after request for such an approval, the approval shall be deemed to have been given by the Tenant on the expiry of the six (6) Working Day period

## 3.3    Developer to procure Material Trade Contractors enter into a Warranty

3.3.1    The Developer shall procure that each of the Material Trade Contractors executes a warranty in favour of the Tenant in the case of the Existing Material Trade Contractors in the form of the relevant draft warranty contained within **Annexure 17** and in the case of all other Material Trade Contractors in the form of the draft warranty contained within **Annexure 16** in either case with non-material variations or pre-agreed permitted variations as set out in **Annexure 15** only unless the Tenant shall otherwise approve an amendment (such approval not to be unreasonably withheld).  If the approval required shall not have been given or refused (or if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant in writing within six (6) Working Days after receipt of the request for such an approval, the approval will be deemed to have been given.  The procedure may be repeated.  If the Developer and the Tenant are unable to agree whether the Tenant is acting reasonably in withholding its approval then either party may refer such dispute to an Independent Person acting as an expert in accordance with Clause 30.5.  The Developer shall deliver the warranty to the Tenant as soon as reasonably practicable after the execution of the relevant Material Trade Contract

3.3.2    For the avoidance of doubt the Tenant shall not be required to procure that the Developer procures warranties in favour of any Put Option Sub-Tenant

## 3.4    Developer Enforcement

3.4.1    In this Clause 3.4 the following expressions shall, save where the context otherwise requires, have the meanings ascribed to them below:-

"**Disruptive Costs**" means costs and expenses (including without limitation:

(a)    rent service charges rates and other outgoings;

(b)    loss of any rent free period;

(c)    rents or other costs of necessary alternative accommodation)

of the Tenant for which the Tenant is liable notwithstanding the fact that by reason of any relevant breach by a Consultant (other than a Key Consultant) and/or a Trade Contractor (other than a Material Trade Contractor) the Tenant (or anyone claiming through or under it) is unable to use the Demised Premises (or any part thereof)

"**Damages**" means all amounts actually recovered by the Developer in respect of Disruptive Costs (less any tax payable by the Developer in respect of such amount but net of any directly related allowable deduction or other relief received and retained by the Developer and the reasonable internal administrative expenses incurred in obtaining such amounts) from a Consultant (other than a Key Consultant) and/or a Trade Contractor (other than Material Trade Contractors) pursuant to any action or proceedings brought against any such person pursuant to this Clause 3.4 or pursuant to a settlement of a claim whether before or after such proceedings are commenced

3.4.2    The Developer will at the request of the Tenant and subject to the Developer receiving:-

(a)    an indemnity from the Tenant satisfactory to the Developer acting reasonably in respect of all proper costs losses and expenses incurred by the Developer in any such actions including (but not limited to) all reasonable and professional costs and the reasonable costs of the Developer's management time

(b)    (if so requested by the Developer and upon the Tenant supplying to the Developer full information concerning the relevant claim which the Tenant wishes the Developer to pursue) a written opinion of Leading Counsel who shall have been approved by the Developer and the instructions to whom shall have been approved by the Developer (in each case such approval not to be unreasonably withheld but so that if approval has not been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) within six (6)

Working Days it will be deemed to have been given by the Developer on the expiry of the six (6) Working Day period) that any such action is reasonably likely to lead to a final judgement or award of substantial damages and that action by the Tenant itself would be unlikely to succeed

enforce for the benefit of the Tenant and the Developer any warranties guarantees or other rights or remedies which the Developer may have against the Consultants (other than Key Consultants) and Trade Contractors (other than Material Trade Contractors) in respect of defects in the Base Building Works which arise within twelve (12) years of the date of this Agreement

3.4.3   The Developer shall be entitled in relation to any claim or proceedings brought by the Developer pursuant to this Clause 3.4 to negotiate terms for settlement if advised by Leading Counsel that the terms proposed for settlement are prudent and reasonably satisfactory in the context of the amount of the claim the likelihood of recovery of additional sums the time and costs involved in proceeding further and all other relevant considerations Provided That the Tenant shall be consulted by the Developer and shall be entitled to make representations to such Leading Counsel prior to such settlement being concluded

3.4.4   The Developer shall be liable to indemnify the Tenant against all Disruptive Costs caused by any relevant breach of the terms of the relevant appointment and/or a Trade Contract (as appropriate) Provided Always that the Tenant hereby irrevocably waives the indemnity under this Clause 3.4 to the extent that the Disruptive Costs exceed the Damages allocated to the Tenant pursuant to Clause 3.4.7

3.4.5   Subject to compliance by the Tenant with the provisions of Clause 3.4.2(a) the Developer will enforce any remedies the Developer may have under the terms of the relevant Consultant's appointment and/or Trade Contract (as appropriate) in accordance with Clauses 3.4.2 and 3.4.3 in respect of Disruptive Costs

3.4.6   The Tenant agrees to defer enforcement of and agrees not to claim the benefit, of the indemnity under Clause 3.4.4 until the Developer has actually recovered the Damages

3.4.7   The Developer shall apply the Damages in paying or reimbursing the following amounts:

(a)   firstly all amounts paid or incurred by the Developer in any action or proceedings brought pursuant to this Clause 3.4 (save to the extent that the same can be recovered from the party in default) together with interest thereon at three (3) per cent below the Interest Rate from the date of payment of such amounts until repayment;

(b)    secondly, account to the Tenant for any sums received as a result of such enforcement pursuant to Clause 3.4.5

3.4.8    To the extent that the amounts recovered by the Developer under Clause 3.4.5 (less any sums deducted under Clause 3.4.7(a)) are less than the amounts for which the Developer is obliged to pay the Tenant under the indemnity in Clause 3.4.4 (whether by reason of the ineffectiveness of the waiver set out in Clause 3.4.4 or otherwise) (the "**Shortfall**") the Tenant agrees to indemnify the Developer against the Shortfall and the Developer shall be entitled to set off the Shortfall against any amounts the Developer is obliged to pay the Tenant under Clause 3.4.7(b)

## PART 3

## DEVELOPMENT OBLIGATIONS

4.    **APPROVALS AND STATUTORY REQUIREMENTS**

4.1    **Required Consents and Approvals**

4.1.1    Subject to Clause 4.1.2, the Developer shall (to the extent that it has not already obtained the same and the same remain in force) at its own cost and expense use all reasonable endeavours to obtain all Approvals (other than any occupational fire certificate (a "**Fire Certificate**") which it shall be the Tenant's responsibility to obtain) required for the carrying out and completion of the Base Building Works as shown on the Approved Plans disregarding any Tenant's Requested Modifications and for the Infrastructure Works (and for the avoidance of doubt the Developer has at the date of this Agreement obtained all necessary Planning Permissions and no further Planning Permissions (save for the matters to be dealt with as reserved items) are required to enable the carrying out and completion of the Base Building Works)

4.1.2    The Developer shall use its best endeavours to obtain any Approvals required in relation to any Tenant's Requested Modifications and the costs properly incurred by the Developer in doing so shall constitute Modification Costs for the purposes of this Agreement and Clause 8.6.4 shall apply

4.1.3    Where the cost of obtaining Approvals cannot be apportioned (both parties acting reasonably) between items under Clauses 4.1.1 and 4.1.2 then the cost shall be shared equally between the Developer and the Tenant and in the case of dispute the matter shall be referred to the Independent Person in accordance with the provisions of Clause 30 of this Agreement

4.2    **The Developer to comply with all Approval and Statutory Requirements**
The Developer shall in carrying out the Base Building Works:-

4.2.1    comply with the requirements (insofar as they are part of the Base Building Works) necessary to enable a Fire Certificate to be granted for the Building

and all the requirements of water, gas, electricity and telecommunications operators and shall not do or omit anything which precludes the issue of a Fire Certificate;

4.2.2    prior to the date falling six (6) Working Days after the date of this Agreement, execute and deliver to the Health and Safety Executive a declaration in accordance with paragraph 4(4) of the CDM Regulations that it will act as client for the purposes of the CDM Regulations

4.2.3    comply with its obligations as client under the CDM Regulations and shall use all reasonable endeavours to procure compliance by CWCL, the Material Trade Contractors, the Trade Contractors, the Key Consultants and the Consultants and the planning supervisor and principal contractor with their respective obligations under the CDM Regulations until the Base Building Works (including the making good and/or completion of any Snagging Items) have been completed and all relevant certificates of making good defects have been issued; and

4.2.4    comply or procure compliance with the design and monitoring requirements and construction procedures as recommended in the Ground Conditions Report

4.3    **The Developer to be responsible for expenses of the Base Building Works**
Subject to the provisions of this Agreement the Developer shall have absolute responsibility for paying or procuring the payment of all fees, charges and expenses relating to the Base Building Works and the Infrastructure Works

5.    **THE DEVELOPMENT**

5.1    **Period allowed for completion of Base Building Works**

5.1.1    The Developer shall procure that Base Building Works Practical Completion occurs no later than the Target Date as such Target Date is extended by Force Majeure and Tenant's Delay

5.1.2    No part of the Base Building Works shall be scheduled or performed on any of the Holy Days

5.2    **Critical Dates Schedule, Construction Programme, Developer's Critical Path Programme**

5.2.1    If (for whatever reason including, for the avoidance of doubt, Force Majeure and Tenant's Delay) the progress of the Base Building Works at any time is not in accordance with the Construction Programme as it exists at that time the Developer may revise the Critical Dates Schedule only in such manner as may be reasonable in all the circumstances (but so that for the avoidance of doubt dates on the Critical Dates Schedule shall not automatically be postponed day for day and shall only be postponed if it is reasonably necessary to do so in all the circumstances) Provided That it shall not be reasonable for the Developer without the Tenant's approval (such approval not to be unreasonably withheld) to make revisions the effect of which is to accelerate the time within which the

Tenant/Tenant's Consultants/Tenant's Contractors duties under the Critical
Dates Schedule must be performed and in the event of dispute either party
may refer the same for determination by an Independent Person acting as an
Expert in accordance with Clause 30.5

5.2.2    The Developer (acting reasonably) may propose additions to the Critical Dates
Schedule but these shall require the approval of the Tenant (which approval
shall not be unreasonably withheld) and in the event of dispute either party
may refer the same for determination by an Independent Person acting as an
Expert in accordance with Clause 30.5

5.2.3    If any approval required pursuant to this Clause 5.2 shall not have been given
or refused (and if refused without stating a properly and fully reasoned basis
for such refusal) by the Tenant in writing within six (6) Working Days after
request for such an approval the approval shall be deemed to have been given
by the Tenant on the expiry of the six (6) Working Day period

5.2.4    Each party shall provide to the other the information and other matters
referred to in the Critical Dates Schedule and specified to be provided by each
of them by the relevant date specified in the Critical Dates Schedule as
amended or varied pursuant to this Agreement and if a party (otherwise than
by reason of default of the other or any servants, agents, consultants,
contractors and workmen of the other) shall not do so the period of delay and
any resulting delays properly attributable thereto to the Developer's Works
shall be for the account of the party failing to provide the information or other
as aforesaid and in the case of the Tenant shall constitute Tenant's Delay

5.2.5    The Developer shall provide the Tenant with a copy of the Developer's
Construction Programme as varied from time to time as soon as reasonably
practicable after the same shall have been varied

5.2.6    The Developer shall provide the Tenant with a copy of the Developer's
Critical Path Programme as varied from time to time as soon as reasonably
practicable after the same shall have been varied

5.3    **Quantification of permitted extensions of time and the Developer's mitigation**

5.3.1    As soon as reasonably practicable after it becomes apparent to the Developer
that it has been/is likely to be delayed in its ability to meet the Target Date in
accordance with the provisions of this Agreement or in its ability to commence
or to continue with the Base Building Works and/or the Infrastructure Works
or to complete the same then the Developer shall:-

(a)    notify the Tenant accordingly giving the Tenant as much early warning
of such delay or potential delay as is reasonably practicable; and

(b)    provide the Tenant with an estimate of the expected time delay Provided
That the same shall not be binding on the Developer

5.3.2   The Developer and the Tenant shall discuss the best methods for minimising any such delay or potential delay and mitigating its effects and shall wherever practicable (acting reasonably) seek to agree upon a plan or strategy for minimising the same and mitigating such effects and (subject always to Clauses 5.3.4 and 5.3.5) both the Developer and the Tenant shall (acting reasonably) assist each other to overcome and/or minimise and/or mitigate the same with all due speed

5.3.3   The Developer and the Tenant in accordance with the terms of this Agreement shall together seek to agree a fair and reasonable extension of time for the completion of the Base Building Works and/or the Infrastructure Works in respect of each delay which arises out of or is attributable to Force Majeure and/or Tenant's Delay and/or any delays consequential thereon and when each such extension has been agreed or (in the event of dispute) is determined by an Independent Person acting as an Expert in accordance with Clause 30.5 each such extension of time shall be granted to the Developer and all the dates and periods in this Agreement which are expressed to be extendable by reason of such delay shall be treated as deferred (or further deferred if extensions of time have already been granted) by such agreed or determined extension of time and, for the avoidance of doubt, if the Developer fails to comply with its obligations to achieve the matters the subject of this Agreement by the date specified in this Agreement referable to such matters but would have so complied but for Tenant's Delay and/or Force Majeure, then for the purposes of this Agreement the Developer shall be treated as having so complied with such obligation but without prejudice to the Developer's obligations under this Agreement to achieve the matters the subject of this Agreement by the date specified in this Agreement referable to such matters as extended by agreement or determination under this Clause 5.3.3

5.3.4   The Developer shall constantly (but without being obliged to incur any additional expenditure (unless and to the extent the Tenant agrees in writing to reimburse the Developer for the same)) use best endeavours to mitigate delays caused by Force Majeure and/or Tenant's Delay and/or breach by the Developer and/or Trade Contractors

5.3.5   The Tenant shall constantly (but without being obliged to incur any additional expenditure (unless and to the extent that the Developer agrees in writing to reimburse the Tenant for the same)) use best endeavours to mitigate delays caused by Force Majeure and/or Tenant's Delay and/or breach by the Tenant

5.4   **Liquidated Damages for Late Completion**
If the Developer fails to achieve Base Building Works Practical Completion by the Liquidated Damages Date as such date is extended by Force Majeure and Tenant Delay then the Developer shall at its option:-

5.4.1    extend the eighteen (18) month period referred to in Clause 22.2.3 by one day for each day that Base Building Works Practical Completion occurs later than the Liquidated Damages Date (as extended as aforesaid); or

5.4.2    pay to the Tenant within ten (10) Working Days of Base Building Works Practical Completion a sum in pounds sterling calculated by the following formula

$$\frac{A}{365} \times B$$

where:-

A =    the Initial Rent of the Demised Premises calculated pursuant to Clause 22.2.2 save for the part of the Initial Rent applicable to any part of the Demised Premises the subject of a Put Option Sub-Lease (not including any part of the Initial Rent representing VAT (if any))

and

B =    the number of days that Base Building Works Practical Completion occurs later than the Liquidated Damages Date (as extended as aforesaid)

and with the exception of the above (which are recognised as a genuine and realistic assessment of the Tenant's prospective losses and which are intended to constitute liquidated and ascertained damages) it is agreed that the Developer shall have no other liability to the Tenant as a result of failure to achieve Base Building Works Practical Completion by the Target Date

5.5    **Long Stop Date Termination**
If Base Building Works Practical Completion has not occurred by the Long Stop Date then the Tenant may forthwith and on written notice to the Developer served at any time before Base Building Works Practical Completion has occurred terminate this Agreement with immediate effect provided that such termination shall be without prejudice to any right of action or other remedy any party may have against the other parties in respect of any antecedent breach of this Agreement

5.6    **Short term accommodation**
In the event the anticipated date of Base Building Works Practical Completion is likely to occur more than three (3) months after 31 March 2003 the Developer shall in good faith notify the Tenant whether or not there is short term accommodation available elsewhere on the Development Site which might meet the Tenant's swing space requirements and if so will in good faith quote terms (but not exclusively) for that accommodation to the extent such accommodation is controlled by the Developer or any Group Company of the Developer and is not currently under offer to any third party

6.  **EXECUTION OF THE BASE BUILDING WORKS**

6.1  **Execution of Base Building Works**

The Developer shall (save to the extent it is prevented from so doing by Force Majeure and/or Tenant's Delay and subject to the obtaining of all Approvals) at its own cost and expense (subject to the provisions of Clause 8) procure the design and execution or (as appropriate) continue the design and execution of the Base Building Works (including for the avoidance of doubt any approved Tenant's Requested Modifications or other variations to the Base Building Works) and each and every part of them:-

6.1.1  in a good and workmanlike manner;

6.1.2  using the standard of skill and care in procuring the design of the Base Building Works as would be expected of a developer which is experienced in the development of buildings of the size and type of the Building and of the estates of the quality and complexity of Canary Wharf;

6.1.3  using materials of sound quality of their several kinds and so that such works are free from Prohibited Materials; and

6.1.4  in accordance with and subject to:-

(a)  the Approvals

(b)  all Statutory Requirements current at the time of execution of such works which shall affect the execution and carrying out of the Base Building Works

(c)  the Base Building Definition

(d)  the terms of this Agreement

Provided That the Developer shall have no liability to the Tenant pursuant to this Agreement to the extent that any defects arise in the Base Building Works as a result of any of the Tenant's Works and Provided Further that where and to the extent only that the Developer, the Key Consultants and the Contractors become aware of any procedures or omissions which are incompatible in relation thereto they shall notify the Tenant of the same but nothing in this proviso shall place the Developer under any obligation to check the Tenant's Works for any such incompatibility

6.2  **Construction Materials**

The Developer warrants that it has not and shall not specify and shall procure that CWCL has not and shall not specify any of the Prohibited Materials for use in the Base Building Works

6.3  **Base Building Works construction drawings**

The Developer shall at its own cost and as soon as reasonably practicable following the Tenant's reasonable request for the same (and subject to the Tenant complying with Clause 11.2) supply to the Tenant a copy of any dimensioned drawing and/or any construction drawings of the Base Building Works as-built which the Developer may

possess or to which the Developer may have access to enable the Tenant's Works to be designed but for the avoidance of doubt the Developer shall not be obliged to provide any dimensioned drawing which it does not possess

### 6.4   Base Building Modifications

6.4.1    The Tenant shall from time to time pay to the Developer the Base Building Modification Costs referable to the Base Building Modifications actually committed by the Developer within ten (10) Working Days of receiving a statement setting out in reasonable open book detail such Base Building Modification Costs

6.4.2    The provisions of Clause 8.11 shall apply mutatis mutandis in relation to Base Building Modification Costs

6.4.3    The Base Building Modification Costs will be paid into the account referred to in Clause 8.10.4 hereof and the provisions of Clause 8.10.4 shall apply thereto

### 7.    VARIATIONS TO THE BASE BUILDING WORKS AND INFRASTRUCTURE WORKS

### 7.1   Base Building Works Finishes Design Development

7.1.1    At each stage of the Design Development process of the Base Building Works Finishes (including any change or prospective change to an already approved design) and in any event within the relevant time limits specified in the Critical Dates Schedule the Developer shall submit to the Tenant a written notice reasonably detailing what items/matter is/are to be approved by the Tenant enclosing architectural and engineering working drawings calculations and specifications (as appropriate) prepared by the relevant Consultant or Key Consultant or any other party for the Tenant's approval (such approval not to be unreasonably withheld) detailing Design Development of the Base Building Works Finishes from the stage shown on the Base Building Plans listed in the drawings schedule annexed to this Agreement as **Annexure 2** in sufficient detail to enable the Tenant properly to assess and consider the Design Development being proposed

7.1.2    If the Developer fails to comply with Clause 7.1.1 the Tenant may acting reasonably request such further information and details from the Developer (as appropriate) as is necessary in order to procure compliance and (subject to the Tenant requesting the same within six (6) Working Days of submission of the written notice) in such circumstances no delay to the Critical Dates Schedule resulting from such failure shall be counted as Tenant's Delay and the six (6) Working Days set out in Clause 7.1.3 shall not commence until such time as the Developer has complied with the provisions of this Clause 7.1.2

7.1.3    If approval shall not have been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant in writing within six (6) Working Days after submission of the written notice in

Clause 7.1.1 or the additional information detailed in clause 7.1.2 (as appropriate) the approval shall be deemed to have been given by the Tenant

7.1.4    The parties have already discussed and agreed the Design Development shown on the plan annexed to this Agreement as **Annexure 28** and which identifies gained and lost areas.    The parties have agreed that all necessary or appropriate changes to reflect the revised shape of the Building shown on the plan comprising **Annexure 28** will be made by the Developer to the plans and specifications annexed to this Agreement (including the Base Building Definition, the Demised Premises Plans and the Measurement Plans) and approved by the Tenant (such approval not to be unreasonably withheld) within thirty (30) Working Days of this Agreement and in the event of dispute either party may refer the matter in dispute to an Independent Person (acting as an expert) in accordance with the provisions of Clause 30.5

**7.2    Permitted Variations**

7.2.1    The Developer shall only be entitled to make alterations, additions or variations to the Base Building Works (other than the Base Building Works Finishes which are provided for in Clause 7.2.2) or the Infrastructure Works without the Tenant's consent where:-

(a)    such are lawfully required after the commencement of the Base Building Works in order to comply with Statutory Requirements; or

(b)    any materials specified in the specifications relating to the Base Building Works are in short supply or are or become unobtainable or continuous supply thereof cannot be guaranteed or are subject to delay and if awaited would demonstrably impede the progress of the Base Building Works (in which event the Developer may use alternative materials of a similar nature, type, character, design and of no lesser quality to those specified in the specification forming part of the Base Building Definition); or

(c)    the same constitute Design Development; or

(d)    the same are immaterial whether taken individually or as a whole with any other variations previously made pursuant to this Clause 7.2

(e)    the same relate to the Infrastructure Works provided that the alterations, addition or variation in question is not such as to result in any of the items referred to in **Schedule 6** not being completed in a manner consistent with its generic description as a park, retail mall or winter garden and subject in the case of the Winter Garden to the provisions of Clause 10.3

7.2.2    The Developer shall be entitled to make alterations, additions or variations to the Base Building Works with the Tenant's approval (requested by submission of a written notice to the Tenant and in accordance with the provisions of

Clause 7.2.3) (such approval not to be unreasonably withheld) where the same relate to the Base Building Works Finishes or do not otherwise fall within Clause 7.2.1

7.2.3    If within a period of six (6) Working Days following receipt by the Tenant of the written notice specified in Clause 7.2.2 from the Developer requesting the Tenant to consent to an alteration, variation or amendment or the details of the same pursuant to Clause 7.2.2 (such request being accompanied by such technical drawings and information as are necessary and available and the Tenant shall reasonably require in order to evaluate the request) the Tenant has not in writing approved or reasonably objected to any such alterations, additions or variations or objected to the details of them giving its reasons or requested such further technical drawings and/or information as it may reasonably require in order to evaluate the request then consent shall be deemed to have been given by the Tenant

7.2.4    If, pursuant to Clause 7.2.3 the Tenant reasonably makes a request for further information the Developer shall as soon as reasonably practicable supply to the Tenant further details of any such proposed alterations, additions or variations as are referred to in this Clause 7 together with copies of any plans drawings and specifications relating to them

7.2.5    If the Tenant makes a written objection following a request for consent pursuant to the provisions of Clause 7.2.2 such written objection shall specify in reasonable detail the grounds for such objection and in the event of dispute as to whether or not the Tenant is acting reasonably in objecting then either party may refer the matter to the Independent Person acting as an expert pursuant to the provisions of Clause 30.5

7.2.6    For the avoidance of doubt (but without prejudice to the provisions of Clause 8 and save as specified in the foregoing provisions of this Clause 7) the Developer shall not be permitted to make any other alterations, additions or variations (which exceed Design Development) to the Base Building Works

## 8.    TENANT'S REQUESTED MODIFICATIONS

### 8.1    Tenant's notification of Modifications

8.1.1    The Tenant shall be entitled in accordance with the provisions of this Clause 8 and subject in the case of Tenant's Requested Modifications causing delay to the Base Building Works to the request being made prior to the relevant date specified in the Critical Dates Schedule and at least six (6) months prior to the Target Date and subject to the request being practicable to implement at the time of the request and subject to compliance with Clause 8.2, at the Tenant's sole cost and expense and by application in writing to request the Developer to approve (such approval not to be unreasonably withheld) additions and/or substitutions to the Base Building Works (in each case a **"Tenant's Requested Modification"**). In the event that there is disagreement between the parties as

to whether this Clause 8.1 applies either party may apply for the matter to be determined by an Independent Person acting as an expert pursuant to Clause 30.5 Provided That if the Tenant requests a Tenant's Requested Modification during the period of six (6) months immediately prior to the Target Date which will not in the Developer's reasonable opinion delay Base Building Works Practical Completion beyond the date on which it is anticipated (on the date of receipt of such Tenant's Requested Modification) that such practical completion will occur then, subject to Clause 8.1.2 the Developer will consider such Tenant's Requested Modification in accordance with its obligations contained in this Clause 8

8.1.2    If, pursuant to the proviso to Clause 8.1.1, the Developer considers a Tenant's Requested Modification made during the period of six (6) months immediately prior to the Target Date which might, in the Developer's reasonable opinion, result in Base Building Works Practical Completion being delayed beyond the date on which it is anticipated (on the date of receipt of such Tenant's Requested Modification) that Base Building Works Practical Completion will be achieved, then the Developer can refuse to proceed with such Tenant's Requested Modification unless the Tenant and the Tenant's Surety confirm in writing to the Developer and the relevant Base Building Architect that the Base Building Practical Completion Certificate can validly be issued in accordance with Clause 19.1 notwithstanding the fact that the Tenant's Requested Modification and/or any element of the Base Building Works affected by the relevant Tenant's Requested Modification is or are not practically complete and that the same are to be assumed to be practically complete for the purposes of issuance of the Base Building Works Practical Completion Certificate in accordance with Clause 19 and for the avoidance of doubt the Base Building Works Practical Completion Date shall be the date specified in the relevant certificate ignoring such incomplete works Provided That the Developer will ensure that such incomplete works are completed expeditiously after such date and the Tenant hereby agrees to grant access to the Developer in order to complete such works on the terms set out in Clause 20.3

8.1.3    If the Tenant is considering requesting a Tenant's Requested Modification it shall be entitled to request (which request the Developer shall comply with) that the Developer discuss the cost and timing implications of the same in the utmost good faith with the Tenant in order to attempt to improve the Tenant's assessment of the overall impact of any such Tenant's Requested Modifications Provided That the Developer having acted in the utmost good faith as aforesaid shall have no liability in relation to any such details or information provided or discussed with the Tenant and all such details or information provided to or discussed with the Tenant shall not be binding on the Developer for the purposes of this Agreement or otherwise

8.2    **Restrictions on Proposals**

Tenant's Requested Modifications shall not contain facilities, materials or work which, if implemented (when looked at together with any previously requested Tenant's Requested Modifications including those requested but not yet agreed) and (for the purposes of the restriction contained in Clause 8.2.12 taking into account any payments made or to be made between the parties pursuant to this Clause 8), would:-

8.2.1    alter the exterior (including the appearance) of the Building (other than to an immaterial extent) or the external envelope of the Building other than in either case for Tenant's signage, satellite dishes, antennae and a helipad on the roof of the Building; or

8.2.2    in the Developer's reasonable judgment adversely affect the structural integrity of the Building; or

8.2.3    reduce the lettable area of the Building (other than to an immaterial extent) provided that additional risers and internal communicating staircases shall be treated as immaterial for these purposes); or

8.2.4    reduce the open market value or open market rent of the whole or any part of the Building otherwise than by reducing its lettable area; or

8.2.5    negate or adversely affect the validity or enforceability of or the availability or quantum of remedies or damages under any appointment contract or warranty entered into by any Key Consultant or any Consultant or any Trade Contractor; or

8.2.6    place (or prospectively place) the Developer in breach of its obligations to any third parties or affect or potentially affect operation repair or maintenance of the Docklands Light Railway; or

8.2.7    be such as are intended to form any part of the MSDF Works (or works of that type) or any part of the Tenant's Works

8.2.8    adversely affect (other than to an immaterial extent) the usage or the functioning of the Building Systems;

8.2.9    violate any laws or the requirements of any Approvals or the requirements from time to time of any insurers or be such that any Approval or any insurance effected or to be effected by the Developer pursuant to Clause 21 is reasonably likely to be prejudiced or unobtainable Provided That the Tenant shall be entitled to request the Developer to seek fresh Approvals and/or seek more flexible insurance cover and any actual delays to the Base Building Works attributable to the same shall be Tenant's Delay for the purposes of this Agreement and any costs attributable to the same shall be Modification Costs for the purposes of this Agreement; or

8.2.10    in the Developer's reasonable judgement not be reasonably capable of being reinstated at the end or sooner determination of the contractual term of the Lease; or

8.2.11    involve the carrying out of works or the installation of items which are reasonably considered to be untried and untested and which may reasonably be considered to increase (otherwise than to an immaterial extent) the risks accepted by the Developer pursuant to this Agreement concerning defective works; or

8.2.12    prevent or be likely to prevent any supply or supplies made pursuant to the grant of the Lease pursuant to this Agreement being treated as an exempt supply or supplies of land under Group 1 of Schedule 9 to the Value Added Tax Act 1994; or

8.2.13    cause or be likely to cause a Tenant's Delay which (when taken together with any other Tenant's Delays which have already occurred or which are reasonably foreseeable) would exceed 120 days in the aggregate; or

8.2.14    specify the use of any Prohibited Materials or remove any of the Base Building Modifications; or

8.2.15    increase the Net Internal Area of the Basements unless the Tenant agrees to pay rent on the part of such increased Net Internal Area that is in excess of the Basement Tolerance Excess

Any dispute as to whether a Tenant's Requested Modification is prohibited by this Clause 8.2 or whether the Developer is reasonably withholding consent pursuant to Clause 8.1 or this Clause 8.2 shall be agreed between the Developer and the Tenant within six (6) Working Days of a written request so to do by one party to the other or in the event they cannot so agree shall be determined by the Independent Person acting as an expert in accordance with Clause 30.5

8.3    **Approval of Modifications**
The Tenant shall furnish with any such application (a "**TRM Application**") sufficient information to enable the Developer to determine the extent and scope of the Tenant's Requested Modifications, the cost of the same, any proposed changes to lettable area, any anticipated impact on the Construction Programme, the letting, running or management of the Building or any part of it or the Developer's interest in it. The Developer shall not be obliged, where it has given initial consideration to a TRM application but has found that any such reasons and/or information as referred to above have not been provided or the Developer reasonably requires other information, to give further consideration to the TRM application until the Tenant has (following written request from the Developer identifying the missing further information that is reasonably required such request is to be given within five (5) Working Days of receipt of the TRM Application) provided that further information which the Developer reasonably requires

8.4    **Authorisation Requests and Estimates**

8.4.1    As soon as reasonably practicable following receipt of the information specified in Clause 8.3 and (subject as set out in Clauses 8.1 and 8.2) if the Developer approves a TRM Application or it is determined that the Developer has unreasonably withheld approval in breach of Clause 8.1 to a TRM Application the Developer shall immediately commence to work closely with the relevant Tenant's Consultant (and, in particular, the Tenant's Quantity Surveyors) and shall furnish to the Tenant in duplicate a memorandum which sets out sufficient details and information to reasonably enable the Tenant to assess the Tenant's Requested Modification in question, the duplicate of which will include an acceptance section for completion by the Tenant if it wishes to proceed with such Tenant's Requested Modification (the "**TRM Authorisation Request**") and to which is annexed a statement setting out:-

(a)    the Approvals and the third party consents required in respect of the Tenant's Requested Modification (the "**Modification Consents**")

(b)

    (i)    whether the Tenant's Requested Modification can be accommodated within the Developer's Construction Programme and if not

    (ii)    an estimate of Tenant's Delay (if any) which is likely to result by reason of such Tenant's Requested Modification and which shall include any estimated period of delay in respect of seeking and obtaining the Modification Consents ("**Estimate of Tenant's Delay**")

(c)    a statement (the "**Costs Estimate**") setting out in reasonable detail the Developer's good faith estimate of, the Modification Costs in relation to such Tenant's Requested Modification

(d)    in the case of substitutions to the Base Building Works the Unspent Costs attributable to the substitution (the "**Estimated Unspent Costs**")

Provided That the Estimate of Tenant's Delay, the Costs Estimate, and the Estimated Unspent Costs (the "**Relevant Estimates**") and any supporting analysis or information shall not be binding on the Developer or the Tenant and no warranty as to the accuracy of such statements or information is given or shall be implied

8.4.2    Prior to receiving the Tenant's countersigned TRM Authorisation Request and Relevant Estimates the Developer shall continue to progress or procure the progress of the Base Building Works as if no application for a Tenant's Requested Modification had been received

8.5    **Acceptance by the Tenant**

8.5.1    If, having received the TRM Authorisation Request and the Relevant
Estimates provided by the Developer pursuant to Clause 8.4.1, the Tenant
wishes to have the Tenant's Requested Modification made it shall within six
(6) Working Days after receipt of such TRM Authorisation Request and
Relevant Estimates countersign (by way of acknowledgement) and return the
duly countersigned duplicate (without amendment or qualification) of the TRM
Authorisation Request to the Developer

8.5.2    The Tenant shall, subject to it being hereby agreed that any costs associated
with such suspension will constitute Modification Costs and any resulting
delay will constitute Tenant's Delay, be entitled to inform the Developer when
returning the countersigned TRM Authorisation Request whether the
Developer is to proceed with the Tenant's Requested Modification while
continuing to plan and design the original Base Building Works or whether
any design in respect of the original Base Building Works directly relating to
the Tenant's Requested Modification in question is to be suspended

8.5.3    The countersigning and returning of the duplicate TRM Authorisation Request
unamended and unqualified by the Tenant authorises the Developer to proceed
with or procure that CWCL proceeds with the Tenant's Requested
Modification and confirms that the actual Modification Costs or as the case
may be the Unspent Costs referable to the Tenant's Requested Modification
incurred or unspent by the Developer and/or CWCL whether or not in excess
of those set out in the Costs Estimate shall (inter alia) constitute Modification
Costs or Unspent Costs for the purposes of this Agreement and that the Tenant
shall be responsible for all the consequences of any actual resulting period of
Tenant's Delay whether or not in excess of the Estimate of Tenant's Delay and
shall have the benefit of any actual Unspent Costs referable to the Tenant's
Requested Modification in question

8.5.4    Subject to Clause 8.9 where the Tenant has required the Developer in
accordance with Clause 8.5.2 to suspend or procure the suspension of the
original Base Building Works it may, at any time, thereafter require the
Developer to revert to the original Base Building Works and to discontinue the
Tenant's Requested Modification subject to it being hereby agreed that any
delay caused by such requested discontinuance will constitute Tenant's Delay
and that any costs associated with such discontinuance will constitute
Modification Costs

8.6    **Preparation of plans**
If the Tenant has countersigned and returned a TRM Authorisation Request unamended
and unqualified to the Developer then:-

8.6.1    The Developer shall, subject to Clause 8.6.2, and in any event promptly
prepare or procure the preparation of scaled and dimensioned architectural and
engineering working drawings and specifications showing in detail and in

scope the Tenant's Requested Modification which drawings and specifications are in this Agreement together called "**Modification Plans**" Provided That if it is apparent that a Modification Consent is required the Developer shall first prepare or procure the preparation of the plans which are necessary in order to apply for the Modification Consent and only prepare or procure the preparation of full Modification Plans either when the Modification Consent has been obtained or, if earlier, when the parties agree (acting reasonably) that it is appropriate to do so

8.6.2    The Tenant shall bear the reasonable and proper fees (including any irrecoverable VAT) of all Key Consultants', Consultants' and other third party fees properly and reasonably incurred by the Developer and/or CWCL in preparation of the Modification Plans and (if applicable) the plans necessary to apply for the Modification Consent

8.6.3    Any facilities or materials supplied by and any work performed or procured by the Developer by reason of Tenant's Requested Modification which are described in the Modification Plans are called "**Modifications**" in this Agreement and shall be deemed to be part of the Base Building Works

8.6.4    At the request of the Tenant the Developer shall at the Tenant's cost and expense seek and use its best endeavours to obtain the Modification Consents and shall notify the Tenant whether the same have been granted or otherwise forthwith on receiving notification of the same

8.6.5    If the Modification Consents are refused or are unsatisfactory to the Tenant the Tenant's request for the Tenant's Requested Modification shall be deemed to be withdrawn and the provisions of Clause 8.9 shall apply

8.6.6    Subject to the Tenant having received notification of the grant of the Modification Consents, the Tenant shall notify the Developer within six (6) Working Days of their receipt by the Tenant whether the Modification Consents are satisfactory to it and if they are the provisions of Clause 8.8 shall apply and if they are not or if the Tenant shall fail to give such notice within such period the Tenant's request for the Tenant's Requested Modification shall be deemed to be withdrawn and the provisions of Clause 8.9 shall apply

8.6.7    Any delay to the Base Building Works resulting from the need for and the obtaining of Modification Consents shall be a Tenant's Delay for the purposes of this Agreement

8.7    **Placing of Contracts, calculation of actual Modification Costs referable to Tenant's Requested Modifications and Unspent Costs**

8.7.1    The Developer shall calculate the amount of the actual Modification Costs referable to the Modifications utilising (inter alia) initially for estimation purposes the pricing information provided by each Trade Contractor appointed or to be appointed in respect of the relevant element of the Base Building

Works and eventually utilising (inter alia) the sums finally payable to Trade Contractors in relation to the relevant Tenant's Requested Modifications Provided Always that the Developer shall procure that CWCL shall use reasonable endeavours to obtain option priced rates for variations at the time of placing the Trade Contract at the best price reasonably obtainable by the Developer and/or CWCL

8.7.2    In the case of Unspent Costs the Developer shall calculate the costs saved in relation to the relevant substitution using the same method of calculation used in Clause 8.7.1 and shall allow the amount of the Unspent Costs as a credit against the total Modification Costs

8.7.3    The Developer and the Tenant's Representative (acting on behalf of the Tenant) shall (acting reasonably) seek to agree the amount of the Unspent Costs applicable to the Modifications and if the parties fail to agree either party may refer the dispute for determination by the Independent Person acting as an expert in accordance with Clause 30.5

8.8    **Execution of the Modifications**
Subject to:-

8.8.1    the Tenant countersigning and returning an unamended and unqualified TRM Authorisation Request in accordance with Clause 8.5.1;

8.8.2    preparation of the relevant Modification Plans;

8.8.3    obtaining all requisite Approvals (to include any necessary Modification Consents);

8.8.4    a Trade Contractor having been selected or an existing Trade Contracts having been varied;

8.8.5    the Tenant paying to the Developer the Modification Costs referable to the relevant Tenant's Requested Modifications in accordance with Clause 8.10

the Developer shall procure the carrying out of the relevant Tenant's Requested Modifications as part of the Base Building Works in accordance with the provisions of this Agreement

8.9    **Tenant's Withdrawal of a Tenant's Requested Modification**
If:-

8.9.1    at any time the Tenant withdraws a request for the Tenant's Requested Modification prior to the Developer commencing the relevant Base Building Works (any later withdrawal being treated as a request for a Tenant's Requested Modification pursuant to Clause 8.1) or is deemed to do so in accordance with the provisions of Clause 8.6.5 or 8.6.6; or

8.9.2    the Tenant fails to countersign and return a TRM Authorisation Request
unamended and unqualified to the Developer in accordance with Clause 8.5.1

then the Developer shall have no further obligation to implement the Tenant's
Requested Modification in question and all Modification Costs and other costs and
expenses properly incurred by the Developer and/or CWCL pursuant to this Agreement
in respect of such withdrawn Tenant's Requested Modification (including, for the
avoidance of doubt, any costs which will need to be incurred in reverting to designing
and constructing the relevant parts of the Base Building Works (as designed prior to the
variations proposed by the Tenant's Requested Modification)) shall constitute
Modification Costs and any actual delays resulting from the Developer complying with
its obligations pursuant to this Agreement in respect of such withdrawn Tenant's
Requested Modification shall constitute a Tenant's Delay for the purposes of this
Agreement and (for the avoidance of doubt) any saved sums shall be treated as Unspent
Costs

8.10    **Statements of and Tenant responsible for Modification Costs**
The Developer shall deliver to the Tenant's Representative from time to time a
statement or statements specifying in reasonable (open book) detail

8.10.1    all Modification Costs actually committed by the Developer and/or CWCL
(which shall be treated for the purposes of this Agreement as including the
fixed preliminaries percentage and additional percentage specified in Clauses
1.104.2 and 1.104.5 respectively) and

8.10.2    any Unspent Costs; and

8.10.3    (which shall be for information only and subject to updating and change) any
further Modification Costs which are to be or are likely to be waived or saved
by the Developer, or CWCL and

subject always to Clause 8.11 the Tenant shall pay to the Developer within ten (10)
Working Days after the receipt thereof the amount specified in such statement or
statements. The Tenant agrees for the avoidance of doubt that where the Developer
continues with the execution of any relevant aspects of the Base Building Works prior
to incorporation of a Tenant's Requested Modification and/or the preparation of
designs or specifications or the placing or negotiation of any contracts orders or other
matters following submission of a TRM Application then any costs which are wasted as
a result shall nonetheless be included in the Modification Costs

8.10.4    The Developer shall place sums received from the Tenant in accordance with
Clause 8.10.1 in an interest bearing account until required for expenditure and
shall account to the Tenant as soon as reasonably practicable following all
sums received having been expended for the interest which has accrued net of
tax and other proper administrative costs properly incurred by the Developer

8.11    **Disputes as to Modification Costs**

The Developer and the Tenant shall (where any Modification Costs are in dispute) procure that the Developer and the Tenant's Quantity Surveyors use all reasonable endeavours to agree (both acting reasonably) the actual Modification Costs but in the event of disagreement either party may at any time refer the matter in dispute to an Independent Person (acting as an expert) in accordance with the provisions of Clause 30.5

8.12    **Reinstatement of Tenant's Requested Modifications**

Unless the Developer otherwise requires the Tenant shall be required to reinstate the relevant Tenant's Requested Modification at the end or sooner determination of the term of the Lease and the Tenant agrees to enter into a Deed in such a form as the Developer may reasonably require obliging the Tenant to undertake such reinstatement, such Deed to be supplemental to the Lease

8.13    **Put Option Sub-Tenant's Requested Modifications**

If the put option is exercised pursuant to the terms of the Put Option Agreement the Put Option Sub-Tenant shall not be entitled to request that the Tenant procures a Tenant's Requested Modification

8.14    **Time of the essence**

Time shall be of the essence for all the purposes of this Clause 8 Provided That for the avoidance of doubt, where the Tenant has failed to countersign and return the TRM Authorisation Request in accordance with Clause 8.5.1, the Tenant shall be entitled subject to the provisions of Clause 8.1 at any time to resubmit a request for the same Tenant's Requested Modification without need to prepare further submissions in accordance with Clause 8.3

9.    **SITE VISITS AND MEETINGS AND SUPPLY OF INFORMATION AND DOCUMENTATION**

9.1    **Site visits**

During the period up to Base Building Works Practical Completion the Developer shall permit the Tenant and the Tenant's Consultants and Tenant's Contractors (but limited to such number of people as is reasonable in the circumstances) at all reasonable times to enter onto the Site and those parts of the Development Site on which the Infrastructure Works are being carried out (accompanied by a representative of the Developer if the Developer shall so require) to view the progress and state of the Base Building Works and the Infrastructure Works and the materials used or intended for use therein (but not to test any of the materials) to check compliance by the Developer, the Developer's Contracting Team, the Key Consultants and the Consultants with their obligations, the quality of the work, to prepare plans, drawings and specifications for the carrying out and/or supervision of the Tenant's Works or for any other proper reason SUBJECT nevertheless to:-

9.1.1    reasonable prior notice being given to the Developer

9.1.2   the Tenant and others as aforesaid reporting to the works office on the Site before making any inspection and acting in accordance with the reasonable instructions of the Developer's representative

9.1.3   compliance with such reasonable safety and security precautions and insurance requirements as may be in force from time to time on the Site

9.1.4   the Tenant and others as aforesaid not giving instructions or making representations to the persons engaged in the carrying out of the Base Building Works

9.1.5   the progress of the Base Building Works not being impeded

and the Developer shall procure that any defects, faults or failures to comply with Clauses 6.1 and 6.2 in respect of which the Tenant serves written notice following such entry and which the Developer agrees acting reasonably are defects, faults or failures to comply with Clauses 6.1 and 6.2 are remedied and made good at the appropriate time according to the nature of the work in question

9.2   **Test Certificates**

The Developer shall give six (6) Working Days prior written notice to the Tenant that it intends to undertake such tests as would normally be made in respect of the Base Building Works (including the Building Systems) or the materials used therein by a developer experienced in buildings of a similar type, size and complexity to the Building and the Tenant and/or such of the Tenant's Consultants as are reasonable and appropriate may attend at such tests and make such representations as are reasonable (but which shall not have any binding effect) provided that if the Tenant and/or the Tenant's Consultants do not attend at the appointed time on the appointed day the Developer shall be entitled to proceed with the test in question without further reference to the Tenant and/or the Tenant's Consultants but the Developer shall supply to the Tenant as soon as reasonably practicable following such tests copies of such test certificates or results as may from time to time have been issued

9.3   **Meetings**

9.3.1   Once a week (or at such other intervals as may be agreed) the Developer shall convene and give not less than five (5) Working Days' prior written notice to the Tenant of the time, date and place of a formal Progress Meeting relating to the Base Building Works and representatives of the Tenant shall be entitled to attend such meeting for the purpose of reviewing the progress of the Base Building Works and making representations concerning progress and standards of workmanship. The Developer shall have proper regard to but shall not be bound by any such representations made by the Tenant

9.3.2   Once a month the Developer shall deliver at a Progress Meeting a monthly report summarising progress on all aspects of the Base Building Works including:-

(a)   an Executive Summary;

    (b)    progress against the Construction Programme;

    (c)    progress against the Critical Date Schedule;

    (d)    costs statement on Tenant's Requested Modification together with any non-binding estimate of Tenant's Delay;

    (e)    Health and Safety Issues; and

    (f)    any other material issues

### 9.4    Minutes and other information

9.4.1    As the same become available the Developer shall send to the Tenant (or to such party on behalf of the Tenant as the Tenant may in writing direct) copies of the following:-

    (a)    minutes of all such meetings as are mentioned in Clause 9.3; and

    (b)    the Approved Plans as the same are varied, altered or added to in accordance with the terms of this Agreement; and

    (c)    the Approvals

9.4.2    The Tenant acting reasonably and in order to obtain information which it requires for the purposes of designing the Tenant's Works may require the Developer at the Developer's cost to supply a set of DWG format CAD discs of particular documents or classes of documents which are on the Developer's/CWCL's document control system at that time

### 9.5    Representation on Site

During the carrying out of the Base Building Works the Developer shall provide office accommodation (as detailed below) as close to the Site as reasonably practicable within the Development Site for use by the Tenant and Tenant's Consultants on the following basis:-

9.5.1    Occupation is by way of license only;

9.5.2    No consideration shall be paid for the use of the accommodation save for a fair charge for telephones and other similar facilities;

9.5.3    The Tenant shall procure that whoever uses the accommodation complies with the Developer's reasonable requirements and rules and regulations from time to time (including the Developer's internet and software policies);

9.5.4    The accommodation shall be separated from other accommodation by partitions or the like and shall be located in a portakabin and shall comprise 5 desks, shared availability of a meeting room by prior appointment, power points, one telephone per desk and one fax machine

9.6     **Quality Assurance**

The Developer shall use all reasonable endeavours to procure that all work and materials required for the Base Building Works are executed and controlled by a quality assurance scheme which shall include suitable quality assurance and quality control procedures for trade contractor activities

9.7     **Training**

The Developer shall ensure that all relevant Trade Contractors make available suitably qualified and experienced staff to train the Tenant and the Tenant's staff prior to Base Building Works Practical Completion in connection with the operation, maintenance and servicing of relevant items of the Base Building Works provided that if the Tenant and/or the Tenant's staff do not attend at the appointed time on the appointed day the Developer shall have no further obligation in this regard

9.8     **Put Option**

If the put option is exercised pursuant to the terms of the Put Option Agreement nothing in this Clause shall require the Tenant to procure that the Developer grants equivalent rights to those in this Clause 9 to the Put Option Sub-Tenant

10.     **INFRASTRUCTURE WORKS AND WINTER GARDENS**

10.1    **Execution of Infrastructure Works**

The Developer shall (save to the extent it is prevented from doing so by Force Majeure and/or Tenant Delay and subject to the obtaining of all Approvals) at its own cost and expense procure or (as appropriate) continue the design execution and completion of the Infrastructure Works:

10.1.1    in a good and workmanlike manner;

10.1.2    using the standard of skill and care, supervision and execution in procuring the design of the Infrastructure Works as would be expected of a developer who is experienced in the development of Infrastructure Works and projects of the nature quality type and extent of the Infrastructure Works and of Canary Wharf;

10.1.3    using materials of good and sound quality;

10.1.4    in accordance with and subject to the statutory requirements current at the time of execution of such works which shall affect the execution and carrying out of the Infrastructure Works; and

10.1.5    the terms of this Agreement;

and such that Infrastructure Works Practical Completion occurs no later than 31 August 2003 (as such date is extended day for day by Force Majeure and Tenant Delay) or if earlier the date upon which the Tenant takes up beneficial occupation of the Demised Premises for the purposes of conducting its business Provided That if the put option is exercised pursuant to the terms of the Put Option Agreement occupation by the Put Option Sub-Tenant shall not constitute Tenant's beneficial occupation

**10.2 Liquidated Damages**

10.2.1    If the Developer fails to achieve Infrastructure Works Practical Completion by the Infrastructure Works Liquidated Damages Date Provided always that the failure for whatever reason to obtain any necessary Approvals to the construction of the Winter Gardens shall not be treated as Force Majeure then the Developer shall indemnify the Tenant against amounts payable in respect of Estate Service Charge reserved by Clause 3(c) of the Lease (less any sums received by the Tenant in respect of Estate Service Charge pursuant to Clause 3(c) of the Put Option Sub-Lease) such indemnity to commence upon the Infrastructure Works Liquidated Damages Date and to cease on the date of Infrastructure Works Practical Completion

10.2.2    If the Developer fails to achieve practical completion of the Jubilee Line Access for whatever reason (including failure to obtain the necessary Approvals) by the date of beneficial occupation of the Demised Premises or any part thereof for the purpose of the Tenant's business the Developer shall pay an amount of £40,000 monthly in arrears (such amount to be apportioned for any periods less than one month) from such date of first beneficial occupation until the earlier of (a) such practical completion being achieved and (b) expiry (whether by effluxion of time or earlier determination for whatever reason) of the original contractual term (and not any renewal or continuation) of the Lease

10.2.3    With the exception of the sums payable pursuant to Clause 10.2.1 and 10.2.2 (which are recognised as a genuine and realistic assessment of the Tenant's prospective losses and which are intended to constitute liquidated and ascertained damages) it is agreed that the Developer shall have no other liability to the Tenant and (for the avoidance of doubt) the Tenant shall have no other claims against the Developer as a result of failure to achieve Infrastructure Works Practical Completion by the due date for Infrastructure Works Practical Completion or to provide the Jubilee Line Access

**10.3 Winter Garden**

The Developer will consult with the Tenant regarding proposed changes to the design of the Winter Garden and the Developer will have regard to the Tenant's reasonable representations regarding the physical connection from the Winter Garden to the Building

**11. COPYRIGHT**

**11.1 Grant of Non-exclusive Licence**

Insofar as the copyright to any drawings or other intellectual property relevant to the Base Building Works is owned by the Developer or the Developer has power to grant licence or sub-licence (as the case may be) to use or reproduce the same, the Developer hereby irrevocably grants to the Tenant non-exclusive licence to use and reproduce the same for the purposes set out in Clause 11.2

11.2    **Tenant's Undertaking**

The Tenant undertakes that it shall observe all restrictions on copyright and other intellectual property rights applicable to and treat as supplied in confidence all drawings, plans, specifications, costs, trade contract documents and calculations supplied or made available to it by the Developer, the Developer's Contracting Team or its Key Consultants or its Consultants or agents in connection with or related to the Base Building Works and will not use or permit to be used any of the same otherwise than:-

11.2.1    in connection with the planning of the Tenant's Works; or

11.2.2    for any other purposes authorised or required under this Agreement

and that the Tenant will procure compliance with this Clause 11.2 by the Tenant's Consultants and the Tenant's Contractors or any third party engaged, instructed or retained by the Tenant in connection with the Base Building Works and/or the Tenant's Works

11.3    **Developer's Liability**

The Developer, the Developer's Contracting Team, its Key Consultants and its Consultants will have no liability for the use and reproduction of such drawings etc for any other purpose than that for which they were prepared and provided

## PART 4

## TENANT'S WORKS

12.    **TENANT'S WORKS**

12.1    **Limitations on Tenant's Works**

The Tenant's Works (if any) shall not:-

12.1.1    be of a lesser standard or extent than the MSDF Works; or

12.1.2    adversely affect the integrity of the structure of the Building or the operation of the Building Systems; or

12.1.3    contain matters which are absolutely prohibited under the terms of the Lease or which would adversely impact the Base Building Works so as to be prohibited by Clause 8.2 (other than Clause 8.2.7); or

12.1.4    contain matters which are prohibited under the Lease save where the Landlord's consent is first obtained and where such consent may not be unreasonably withheld in which case the Tenant will provide the Developer with full details of the Tenant's Works in question for the Developer's approval, not to be unreasonably withheld; or

12.1.5    violate any laws or the requirements of any Approvals or the requirements from time to time of any insurers notified to the Tenant (or its representatives or advisors) or be such that any Approval or any insurance effected or to be

effected by the Developer pursuant to Clause 21.2 and/or Clause 21.3 is reasonably likely to be unobtainable or adversely affected

12.2 **Approvals**

The Tenant shall use all reasonable endeavours to obtain all necessary Approvals required for any Tenant's Works

12.3 **Fire Safety Systems**

The Tenant shall use the same Trade Contractor that was appointed in respect of the Base Building Works for the installation of all fire safety systems forming part of the Tenant's Works

12.4 **Put Option Fit Out Works**

If the put option is exercised pursuant to the terms of the Put Option Agreement the provisions of this Clause 12 will apply to the Put Option Sub-Tenant mutatis mutandis save in respect of Clause 12.1 where the Put Option Fit Out Works shall also not contain matters which are absolutely prohibited under the terms of the Put Option Sub-Lease

13. **EXECUTION OF TENANT'S WORKS AND SUBSEQUENT OCCUPATION**

13.1 **Completion of Tenant's Works**

The Tenant's Works (to the extent carried out) shall be carried out and completed:-

13.1.1 in a good and workmanlike manner; and

13.1.2 using materials of sound quality of their several kinds and so that such works are free of Prohibited Materials; and

13.1.3 in accordance with:-

(a) the Approvals; and

(b) the terms of this Agreement

13.2 **Tenant's obligations**

The Tenant will itself and will procure that its contractors agents advisers and workmen will at all times comply with the reasonable requirements promulgated by the Developer for the benefit of the Development Site dealing with:-

13.2.1 loading and unloading of vehicles; or

13.2.2 delivery of materials for use in the Tenant's Works; or

13.2.3 removal of rubbish

13.2.4 not damage or cause or permit its servants agents or contractors or any other persons to damage the Infrastructure Works

13.3    **Terms of Occupation**

From the Access Date until the date of completion of the Lease the Tenant and the Developer shall each (save where inconsistent with the express terms of this Agreement) be subject to and shall observe and perform and be bound by the covenants conditions and provisions in the Lease notwithstanding that the same has not been executed

13.4    **Developer's right to inspect and require remedy**

The Tenant shall throughout the period of the carrying out of the Tenant's Works permit the Developer to inspect the progress and manner of execution of the Tenant's Works at all reasonable times on reasonable prior notice and subject to the proper safety requirements imposed by the Tenant and/or the Tenant's Contractors and accompanied by an agent of the Tenant without such inspection causing any undue delay to the Tenant's programme for the carrying out of the Tenant's Works and so that the Developer causes as little inconvenience, disruption and damage as is reasonably practicable, making good any physical damage to the satisfaction of the Tenant and further so that (save as expressly required for compliance with the CDM Regulations) no instructions shall be given or represented as made to the persons engaged in carrying out the Tenant's Works

13.5    **Developer to have no responsibility for Tenant's Works**

The Tenant's Works (if any) shall at all times be at the Tenant's risk and the Developer shall have no responsibility or liability in respect thereof or (subject to the provisions of Clause 21) be under any obligations to insure the same

13.6    **Execution of Put Option Fit Out Works**

13.6.1    If the put option is exercised pursuant to the terms of the Put Option Agreement the provisions of this Clause 13 shall apply mutatis mutandis to the carrying out of the Put Option Fit Out Works and for the avoidance of doubt the Put Option Sub-Tenant will be obliged to comply with all provisions of Clause 13 as if all references to the Tenant's Works were references to the Put Option Fit Out Works

13.6.2    It is agreed that the Tenant is not and will not be required to seek the Developer's approval to the Put Option Fit Out Works and the provisions of Clause 2.11 shall apply

13.6.3    The Developer will procure that the Put Option Sub-Tenant provides the Put Option Method Statement to the Tenant for its approval (such approval not to be unreasonably withheld and if approval has not been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Tenant within six (6) Working Days after such submission approval shall be deemed to have been given by the Tenant)

13.6.4    The Put Option Sub-Tenant shall not be permitted access for the purposes of the Put Option Fit Out Works until the Put Option Method Statement has been or is deemed approved in accordance with this Clause 13.6

13.6.5    Insofar as it shall not be reasonably practicable to provide the information detailed in **Schedule 4** within the time specified the Tenant shall approve its omission from the Put Option Method Statement but such information shall nonetheless be submitted to the Tenant as soon as possible thereafter

## 14.    TENANT'S WORKS AREAS AND EARLY ACCESS

### 14.1    Tenant's Works Areas and Method Statement

14.1.1    The Developer shall use all reasonable endeavours to enable the Tenant to enjoy phased early access for the purposes of carrying out the Tenant's Works and shall notify the Tenant about those parts of the Demised Premises (the **"Tenant's Works Areas"**) to which the Developer may be able to offer the Tenant early access to perform the Tenant's Works prior to the date of Base Building Works Practical Completion and such notice shall identify the relevant areas and confirm the date or dates by which the Developer needs to know whether the Tenant would like the opportunity to do so. If the Tenant wishes to take-up the opportunity in relation to any part or parts of the Demised Premises identified by the Developer in its notice then the Tenant shall give reasonable notice to the Developer prior to the relevant date specified in the Developer's notice for each relevant area. If the Tenant shall serve such a notice the Tenant shall following consultation with the Developer submit to the Developer for approval (such approval not to be unreasonably withheld) a method statement (the **"Early Access Method Statement"**) in writing which Early Access Method Statement shall contain such of the information specified in **Schedule 4** insofar as it is reasonably practicable and appropriate for the same to be included. If approval shall not have been given or refused (and if refused without stating a properly and fully reasoned basis for such refusal) by the Developer in writing within six (6) Working Days after such submission approval shall be deemed to have been given by the Developer

14.1.2    Provided That:-

(a)    notwithstanding the Developer's approval to the Early Access Method Statement if in the carrying out of the Tenant's Works in accordance with the Early Access Method Statement it transpires that the method of carrying out of the Tenant's Works is having an adverse effect on the progress or completion of the Base Building Works the Developer may require suspension of the relevant part of the Tenant's Works which is giving rise to such adverse affect until the same may be recommenced without adversely affecting the progress or completion of the Base Building Works;

(b)    insofar as it shall not be reasonably practicable to provide the information detailed in this Clause 14.1 within the time specified the Developer may approve (such approval not to be unreasonably withheld) its omission from the Early Access Method Statement but such

information shall nonetheless be submitted to the Developer as soon as possible thereafter;

(c)    such occupation shall only be for the purposes of enabling the Tenant to carry out the Tenant's Works and for no other purpose;

(d)    such occupation shall (save for any damage, delay or disruption caused by a breach of this Agreement by the Developer or CWCL) be entirely at the Tenant's own risk;

(e)    any delay to the Base Building Works Practical Completion Date which results from such occupation shall constitute Tenant's Delay for the purposes of this Agreement;

(f)    any reasonable proper additional costs which are incurred by or on behalf of the Developer and/or CWCL over and above those which the Developer would have otherwise incurred but for this Clause 14 as a result of such occupation shall constitute Modification Costs for the purposes of this Agreement

14.1.3    If the Developer does not approve or unreasonably refuses approval of the Early Access Method Statement within five (5) Working Days of the same having been submitted by the Tenant the Developer shall be deemed to have approved the same

## 14.2   Commencement of Work

14.2.1    The Developer shall seek to provide the Tenant with early warning of when Early Access Condition is likely to be achieved in relation to any relevant whole floor and shall notify the Tenant immediately the Early Access Condition has been achieved

14.2.2    The Tenant and the Tenant's Contractors shall not enter the Tenant's Works Area or commence the Tenant's Works within any Tenant's Work Area until the Early Access Date relevant for such Tenant's Work Area and until the Early Access Method Statement has been or is deemed approved in accordance with Clause 14.1

## 14.3   Licence to have access

Subject to the provisions of this Clause 14 and unless prevented from so doing by Force Majeure the Tenant, Tenant's Contractors, Tenant's Consultants, agents, advisers, workmen and others engaged in the execution of the Tenant's Works shall be permitted access to each Tenant's Work Area as licensee in common with the Developer and others at all times (subject as hereinafter mentioned) with effect from the relevant Early Access Date relating to such Tenant's Work Area for the purpose only of the commencement and execution of any Tenant's Works in that Tenant's Work Area

14.4    **Compliance with Early Access Method Statement and the CDM Regulations**

The Tenant shall itself, and shall use all reasonable endeavours to procure that the Tenant's Consultants and the Tenant's Contractors and all other parties instructed by the Tenant comply with:-

14.4.1    the Early Access Method Statement approved pursuant to the provisions of Clause 14.1 (as the same may be added to or varied from time to time as permitted by this Agreement) and

14.4.2    the CDM Regulations and co-operate fully with the Developer's Contracting Team and the Key Consultants, Consultants, the planning supervisor and principal contractor in carrying out their duties and responsibilities under the CDM Regulations and the Tenant shall execute and deliver to the Health and Safety Executive a declaration in accordance with paragraph 4(4) of the CDM Regulations that it will act as client in respect of the Tenant's Works for the purposes of the CDM Regulations

14.5    **Tenant's Work Area Obligations**

Upon entering each Tenant's Work Area and any other parts of the Building to which access is permitted prior to the date of Base Building Works Practical Completion the Tenant will and will procure that its respective contractors, agents, advisers and workmen will at all times not damage the Base Building Works and in particular not to interfere or permit such persons to interfere with or do or permit to be done by any such persons any act or thing which may adversely affect or delay any installation forming part of the Base Building Works or the carrying out or completion of the Base Building Works and not to make or instruct to be made by any such persons any connections with or to such installation without the prior approval of the Developer to such connections (which approval shall not be unreasonably withheld)

14.6    **Tenant's Acknowledgement**

The Tenant acknowledges that prior to the Base Building Works Practical Completion, services installation will be progressing throughout the Building and that in particular the Base Building Works within the core will be at various stages of completion and that access will be required from the hoist through the Tenant's Work Areas and to the core in order to complete test and commission these works

14.7    **Put Option Fit Out Works Early Access**

In the event that the put option is exercised pursuant to the terms of the Put Option Agreement prior to the Access Date then the provisions of this Clause 14 will apply to the Put Option Sub-Tenant mutatis mutandis Provided That the Tenant shall have no responsibility for procuring the delivery to the Developer of any Early Access Method Statement by the Put Option Sub-Tenant

15.    **ANCILLARY PROVISIONS AS TO TENANT'S WORKS**

15.1    **As-built Drawings**

As soon as practicable after Tenant's Works Practical Completion the Tenant shall supply to the Developer

15.1.1    a set of as-built drawings showing the works actually carried out together with a set of DWG format CAD discs showing the same and

15.1.2    a copy of the health and safety file kept available for inspection pursuant to the Construction (Design and Management) Regulations 1994 and any subsequent legislation of a similar nature

15.1.3    save that where the put option has been exercised pursuant to the Terms of the Put Option Agreement the provisions of this Clause 15.1 shall apply mutatis mutandis to the Put Option Sub-Tenant Provided That the Tenant shall have no reasonability for procuring the delivery to the Developer of any of the items which are the subject of this Clause 15.1

15.2    **Memorandum of Category A and Category B Works**

15.2.1    Within ten (10) Working Days following Tenant's Works Practical Completion the Tenant shall supply to the Developer a memorandum separately identifying the Tenant's Category A Works and the Tenant's Category B Works (if any) and as soon as practicable thereafter the Developer and the Tenant shall each sign and exchange a memorandum which shall (if necessary to distinguish accurately the Tenant's Category A Works and Tenant's Category B Works) annex the relevant marked up or as-built drawings

15.2.2    If the Tenant shall fail to comply with Clause 15.2.1 the Developer may (but shall not be obliged to) prepare such a memorandum itself and the Tenant shall provide the Developer with all necessary access, facilities and information to do so and shall pay the Developer's costs of doing so on demand

15.3    **Licences for Alterations**

Within fifteen (15) Working Days of Tenant's Works Practical Completion (or on completion of the Lease if later) the Developer shall execute and deliver to the Tenant executed Licences and the Tenant and the Tenant's Surety shall execute and deliver counterparts thereof to the Developer and for such purposes the Tenant shall supply to the Developer as soon as practicable after Tenant's Works Practical Completion a specification prepared by or on behalf of the Tenant which shall identify the relevant works insofar as the extent of the same is not apparent from the as-built drawings

15.4    **Copy Appointments and Contracts and Provision of Collateral Deeds of Warranty**

15.4.1    The Tenant shall procure that there are delivered to the Developer within twenty (20) Working Days of their completion copies of appointments of the Tenant's Key Consultants and contracts entered into with Tenant's Key Contractors (in each case excluding financial information)

15.4.2    The Tenant shall as soon as reasonably practicable procure the execution and delivery to the Developer of a collateral deed of warranty from each of the Tenant's Key Contractors and Tenant's Key Consultants in the form set out in

**Annexure 18** in each case with non-material variations or pre-agreed permitted amendments as set out in **Annexure 19** in such form as the Tenant proposes and the Developer approves, such approval not to be unreasonably withheld or delayed

15.4.3    If the put option is exercised pursuant to the terms of the Put Option Agreement the Tenant shall have no responsibility for procuring that the Put Option Sub-Tenant provides any copy appointments, contracts or the execution or delivery of any collateral deed of warranty

## 15.5    Put Option

In the event the put option is exercised pursuant to the terms of the Put Option Agreement the provisions of this Clause will apply to the Put Option Sub-Tenant (mutatis mutandis)

## 16.    ENTRY BY THE DEVELOPER TO THE DEMISED PREMISES AFTER THE ACCESS DATE

With effect from the Access Date (and whether before or after the date of grant of the Lease) the Tenant shall upon receipt of reasonable prior notice (save in the case of emergency) permit the Developer the Key Consultants the Consultants and the Developer's Contracting Team to enter upon the Demised Premises (excluding the Put Option Space) in order to enable the Developer to complete the Base Building Works (but excluding works of the kind described in Clauses 20.2 and 20.3) and/or to measure the Demised Premises (excluding the Put Option Space) the persons so entering causing as little interference interruption to or restriction of the Tenant's Works as reasonably practicable and making good to the reasonable satisfaction of the Tenant any physical damage caused thereby to the Demised Premises or to the Tenant's Works

## 17.    AGREEMENT AS TO OPERATION OF LANDLORD AND TENANT ACT 1927

## 17.1    Service of 1927 Act Notice

The Tenant hereby agrees with the Developer that if the Tenant serves a 1927 Act Notice upon the Developer in relation to the Tenant's Works or any part or parts of them the Tenant shall within twenty-eight (28) days following the service of the 1927 Act Notice or within seven days after determination of the cost (hereinafter called the "Cost") to the Tenant of the carrying out of the works and alterations the subject of the 1927 Act Notice (time being of the essence) pay to the Developer a sum equal to One hundred and five per cent. (105%) of the Cost

## 17.2    Determination of Cost

The Developer and the Tenant shall use all reasonable endeavours to agree the Cost but in default of written agreement between them as to the amount of the Cost then either party may at any time following the expiration of a period of fourteen (14) days following the service of the 1927 Act Notice refer the matter for settlement to an Independent Person acting as an expert pursuant to the provisions of Clause 30.5

## PART 5

## INDEPENDENT MEASUREMENT AND PRACTICAL COMPLETION

18.    **MEASUREMENT**

18.1    **Joint Measurement**

    18.1.1    As soon as reasonably practicable after the date of this Agreement the Developer and the Tenant shall appoint the Independent Measurer in the form of appointment forming **Annexure 20** to this Agreement (the "**Measurer's Appointment**")

    18.1.2    Within fifteen (15) Working Days following the date when the Developer reasonably considers the Demised Premises is capable of measurement in accordance with the Code of Measuring Practice and in any event prior to Base Building Works Practical Completion the Developer and the Tenant shall jointly instruct the Independent Measurer on the terms of the Measurer's Appointment to measure the Demised Premises in accordance with the instructions set out in the Measurer's Appointment and issue certificates confirming

        (a)    the Net Internal Area on a floor by floor basis (the "**Demised Premises Independent Measurer's Certificate**");

        (b)    the Net Internal Area on a floor by floor basis of the Ground Floor (excluding the Ground Floor Lobby) and each floor above (the "**Tenant's Inducement Independent Measurer's Certificate**");

        (c)    the Net Internal Area on a floor by floor basis demised by any Put Option Sub-Lease but in this case taking account of the effect upon Net Internal Area of any Base Building Modifications and any Tenant's Requested Modifications which have not been reinstated pursuant to the provisions of the Put Option Agreement (the "**Put Option Sub-Lease Independent Measurer's Certificate**");

        (d)    the Net Internal Area of the Ground Floor Lobby (the "**Ground Floor Lobby Independent Measurer's Certificate**"); and

        (e)    the Net Internal Area on a floor by floor basis of the Basements (the "**Basement Independent Measurer's Certificate**")

    (together the "**Independent Measurer's Certificates**")

    18.1.3    In measuring the Net Internal Area the Independent Measurer shall be instructed to:-

        (a)    assume that the Base Building Works have been completed in accordance with the Base Building Definition disregarding the effect upon Net Internal Area of all Tenant's Requested Modifications and Base Building

- 59 -

Modifications and for this purpose the Independent Measurer will be provided with copies of plans showing (i) areas coloured blue which would have been Net Internal Area save for the effect of Tenant's Requested Modifications and any Base Building Modifications which areas he shall treat as part of the Net Internal Area and (ii) areas coloured orange which would not have been Net Internal Area save for the effect of Tenant's Requested Modifications and any Base Building Modifications which areas he shall disregard as part of the Net Internal Area (the "**TRM Plans**"), such TRM Plans to be agreed between the parties as soon as reasonably practicable and in the absence of agreement determined in accordance with Clause 30;

(b)     assume that the Tenant's Works have not been carried out;

(c)     assume that the MSDF Works have been carried out; and

(d)     assume that the Put Option Fit Out Works have not been carried out

(e)     consider areas within the south core and north core on the podium levels 1 to 7 (inclusive) shown hatched blue for indicative purposes on one of the Measurement Plans which may be required for essential access and if so would therefore be disregarded when establishing the Net Internal Area

18.1.4     The Independent Measurer's Certificates shall be final and binding on the parties save in the case of manifest error

18.1.5     Responsibility for the fees of the Independent Measurer shall be shared equally between and separately invoiced to the Developer and the Tenant

18.1.6     The Developer shall procure the preparation of the TRM Plans duly coloured as referred to in Clause 18.1.3(a)

18.2     **Net Internal Area of the Demised Premises**

18.2.1     The Developer confirms that it shall procure that the Net Internal Area as confirmed in the Demised Premises Independent Measurer's Certificate shall not be less than 950,000 square feet

18.2.2     The Tenant agrees (for the avoidance of doubt) that in the event of breach of Clause 18.2.1 it shall have no remedy against the Developer other than an action for general contractual damages

19.     **PRACTICAL COMPLETION**

19.1     **Issue of the Base Building Works Practical Completion Certificate**

19.1.1     Not later than fourteen (14) Working Days prior to the date the Developer anticipates that the Base Building Works will be practically complete the Developer shall provide the Tenant/the Tenant's Representative with a

programme identifying the date on which the Developer anticipates the Base Building Works shall be available for inspection

19.1.2   The Developer shall give the Tenant/the Tenant's Representative no less than five (5) Working Days prior written notice of the date the Developer believes that the Base Building Works will be practically complete with a view to the issue of the Base Building Works Practical Completion Certificate.   Such notice shall state the proposed date and time of such inspection and the Tenant and/or the Tenant's Representative will be permitted to accompany the Developer on such inspection in order that the Tenant/the Tenant's Representative may make whatever representations they think fit as to whether or not the Base Building Works have been practically complete.   The Base Building Architects shall have regard to but shall not be bound by any representations made by the Tenant and/or the Tenant's Representative during such inspection or made forthwith in writing thereafter as to the state and condition of the Base Building Works

19.1.3   The Developer shall forthwith supply to the Tenant a copy of the Base Building Works Practical Completion Certificate when issued and this may be issued by the Base Building Architects subject to a list of Snagging Items

19.1.4   If the Tenant disputes the correctness of the Base Building Works Practical Completion Certificate or maintains that the Base Building Works were not practically complete at the date of the Base Building Works Practical Completion Certificate (subject as set out in Clause 19.1.3) or if the Developer maintains that the Base Building Works Practical Completion Certificate should have been issued at an earlier date the Tenant or the Developer may serve a Counter-Notice (the "Counter-Notice") in writing upon the other within five (5) Working Days after the receipt of the Base Building Works Practical Completion Certificate specifying the respects in which in the opinion of the Tenant the Base Building Works have not been practically completed as aforesaid or in which it is contended that the Base Building Works Practical Completion Certificate is incorrect or should have been issued earlier and giving such written reasons as can be given at that time for any contentions to the relevant party and attaching copies of all notes, reports, memoranda or other matters in the possession of or available and which are relevant to its contentions.   If either the Tenant or the Developer fails to serve such a Counter-Notice within the said five (5) Working Day period it shall be deemed to have accepted the relevant Certificate which shall be final and binding upon it for the purposes of this Agreement

19.1.5   Either the Developer or the Tenant may accept a Counter-Notice from the other party but if either of them (by notice in writing to the other within five (5) Working Days after the Counter-Notice) disputes the correctness of the other's Counter-Notice the dispute shall be referred for determination by an Independent Person acting as an expert in accordance with Clause 30.5 to

determine whether the Base Building Works have been practically completed or whether the Base Building Works Practical Completion Certificate is correct or the Base Building Works were not practically complete at the date of the Base Building Works Practical Completion Certificate and, if not, what works still remain to be carried out in order to achieve Base Building Works Practical Completion or what steps are necessary to correct the Base Building Works Practical Completion Certificate and to determine whether the Base Building Works Practical Completion Certificate should have been issued by the Base Building Works Architects at an earlier date

19.1.6    If the Independent Person (taking account of Clause 19.1.3) determines that there is work remaining to be carried out as set out in Clause 19.1.5 he shall specify such work in a schedule and the Developer shall procure the same to be forthwith commenced and diligently proceeded with to the reasonable satisfaction of the Independent Person who shall thereupon certify the date upon which such work was completed to his reasonable satisfaction and the date so certified shall be the date upon which Base Building Works Practical Completion shall be deemed to have taken place for the purposes of this Agreement and the Base Building Works Practical Completion Certificate validly issued and the Independent Person shall correct the Base Building Works Practical Completion Certificate as the Independent Person determines

19.1.7    If the Independent Person determines that the Base Building Works Practical Completion Certificate is incorrect then he shall specify the errors which were made in issuing the Base Building Works Practical Completion Certificate and the Developer shall ensure that such errors are corrected as soon as reasonably practicable to the satisfaction of the Independent Person who shall thereupon certify the date upon which in his opinion the Base Building Works Practical Completion Certificate would have been validly issued and subject to Clause 19.4 such date shall be the date upon which Base Building Works Practical Completion is deemed to have taken place for the purposes of this Agreement and the Base Building Works Practical Completion Certificate treated as issued and the Independent Person shall correct the Base Building Works Practical Completion Certificate as the Independent Person determines

19.2    **Issue of the Tenant's Works Practical Completion Certificate**

19.2.1    The Tenant shall procure that the Developer shall be given not less than five (5) Working Days' notice of the intention of the Tenant to inspect the Tenant's Works with a view to the issue of the Tenant's Works Practical Completion Certificate and that the Developer and such of its consultants as it may wish will be given the opportunity to accompany the Tenant on the final inspection prior to the issue of the Tenant's Works Practical Completion Certificate in order that the Developer may (but shall not be bound to) make whatever representations to the Tenant which the Developer thinks fit as to whether or not the Tenant's Works shall have been practically completed and the Tenant

will have full regard to (but shall not be bound by) any such representations made before issuing the Tenant's Works Practical Completion Certificate

19.2.2    The Tenant shall forthwith supply to the Developer a copy of the Tenant's Works Practical Completion Certificate and the date specified in the Tenant's Works Practical Completion Certificate shall be the date of Tenant's Works Practical Completion for the purposes of this Agreement

19.2.3    If the put option is exercised pursuant to the terms of the Put Option Agreement the provisions of this Clause 19.2 shall apply mutatis mutandis in respect of practical completion of the Put Option Fit Out Works

19.3    **Issue of the Infrastructure Works Practical Completion Certificate**

19.3.1    The Developer shall procure that the Tenant shall be given not less than five (5) Working Days' notice of the intention of the Developer to inspect the Infrastructure Works with a view to the issue of the Infrastructure Works Practical Completion Certificate and that the Tenant and such of its consultants as it may wish will be given the opportunity to accompany the Developer on the final inspection prior to the issue of the Infrastructure Works Practical Completion Certificate in order that the Tenant may (but shall not be bound to) make whatever representations to the Developer which the Tenant thinks fit as to whether or not the Infrastructure Works shall have been practically completed and the Developer will have full regard to (but shall not be bound by) any such representations made before issuing the Infrastructure Works Practical Completion Certificate but so that the Developer acknowledges that it owes the Tenant a duty of care in respect of the issue of the Infrastructure Works Practical Completion Certificate and the Developer shall forthwith supply to the Tenant a copy of the Infrastructure Works Practical Completion Certificate when issued and subject to Clause 19.3.2 the date specified in the Infrastructure Works Practical Completion Certificate shall be the date of Infrastructure Works Practical Completion for the purposes of this Agreement

19.3.2    If the Tenant and the Developer cannot agree the correctness of the Infrastructure Works Practical Completion Certificate within five (5) Working Days or the Tenant continues to maintain following the expiration of such period that the Infrastructure Works Practical Completion Certificate should not have been issued then the dispute shall be referred for settlement to an Independent Person acting as an expert pursuant to Clause 30.5 to determine whether the Infrastructure Works have been practically completed or whether the Infrastructure Works Practical Completion Certificate is correct and if not what work still remains to be carried out in order to achieve Infrastructure Works Practical Completion or what steps are necessary to correct the Infrastructure Works Practical Completion Certificate

19.3.3    If the Independent Person determines that there is work remaining to be carried out as set out in Clause 19.3.2 he shall specify such work and the Developer shall procure the same to be carried out as soon as reasonably

practicable to the reasonable satisfaction of the Independent Person who shall thereupon certify the date upon which such work was completed to his reasonable satisfaction and the date so certified shall be the date upon which Infrastructure Works Practical Completion shall be deemed to have taken place for the purposes of this Agreement and the Infrastructure Works Practical Completion Certificate validly issued

19.3.4    If the Independent Person determines that the Infrastructure Works Practical Completion Certificate is incorrect then he shall specify the errors which were made in issuing the Infrastructure Works Practical Completion Certificate and the Developer shall ensure that such errors are corrected as soon as reasonably practicable to the satisfaction of the Independent Person who shall thereupon certify the date upon which in his opinion the Infrastructure Works Practical Completion Certificate would have been validly issued and such date shall be the date upon which Infrastructure Works Practical Completion is deemed to have taken place for the purposes of this Agreement and the Infrastructure Works Practical Completion Certificate treated as issued

## 19.4    Tenant's Delay

The Developer shall give notice to the Tenant (which notice shall be accompanied by such relevant information that the Developer has) certifying the dates on which the Base Building Works Practical Completion Certificate and the Infrastructure Works Practical Completion Certificate would have been issued but for Tenant's Delay taking into account all periods of Tenant's Delay and all extensions of time already agreed or determined in respect of Tenant's Delay pursuant to Clause 5.3.3 and the other provisions of this Agreement each applied in accordance with the definition of Tenant's Delay ("**Delay Notice**"). In the event that the Tenant disputes the date referred to in such certificate within six (6) Working Days (failing which the Tenant shall be deemed to have accepted the relevant Delay Notice which shall be final and binding for the purposes of this Agreement) the matter shall be referred to an Independent Person acting as an expert in accordance with Clause 30.5.    If the Independent Person determines that the Tenant's Delay Notice is incorrect then he shall certify the dates upon which he considers the (as appropriate) Base Building Works Practical Completion Certificate and the Infrastructure Works Practical Completion Certificate would have been issued but for Tenant's Delay taking account of all extensions of time already agreed or determined in respect of Tenant's Delay pursuant to Clause 5.3.3 and the other provisions of this Agreement

## 19.5    Damage caused by Tenant

For the avoidance of doubt and notwithstanding that any Certificate may be issued subject to Snagging Items any damage caused to the Base Building Works or to the Infrastructure Works by the Tenant or the Tenant's Contractors or anyone under their respective control shall be ignored and deemed to have been made good for the purposes of certifying Base Building Works Practical Completion save where such damage is attributable to the Developer or a Group Company of the Developer (but not a third party Put Option Sub-Tenant) carrying out the Put Option Fit Out Works

19.6    **O&M As-Built Drawings**

The Developer shall use reasonable endeavours to procure that:-

19.6.1    Not later than the date of Base Building Works Practical Completion there are supplied to the Tenant's Representative in draft form the O&M Manuals

19.6.2    The relevant Trade Contractors supply the final form O&M Manuals as soon as reasonably practicable following Base Building Works Practical Completion

19.6.3    As-built drawings of the Base Building Works are delivered to the Tenant as soon as reasonably practicable following Base Building Works Practical Completion

19.7    **Health and Safety File**

The Developer shall supply the Tenant with a copy of the Health and Safety File as soon as reasonably practicable following Base Building Works Practical Completion

19.8    **Provision of Information**

In advance of the documentation referred to in Clauses 19.6.2, 19.6.3 and 19.7 becoming available the Developer shall make available such information to the Tenant as the Tenant shall reasonably require and which the Developer has in relation to the subject matter of such outstanding documents

### PART 6

### DEFECTS

20.    **DEFECTS**

20.1    **Snagging Items**

The Developer shall, as soon as reasonably practicable after Base Building Works Practical Completion remedy or cause to be remedied the Snagging Items

20.2    **Defects in the Base Building Works**

Without prejudice to Clause 20.1, the Developer shall as soon as reasonably practicable and at times to be agreed with the Tenant as provided in Clause 20.3 upon receiving notice in writing of the same within the period set out in Clause 1.40 from the Tenant procure to be remedied and made good to the reasonable satisfaction of the Tenant all Defects in the Base Building Works

20.3    **Access to the Demised Premises to remedy Snagging Items and/or Defects in the Base Building Works**

The Tenant shall, whether before or following the grant of the Lease (the Tenant acknowledging that certain works will inevitably take place after the Lease is granted but subject as set out in Clause 20.2), permit the Developer and/or the Developer's Contracting Team and all persons authorised by them at such times as the Tenant shall reasonably specify (or at any time in the event of emergency) and on giving reasonable prior written notice (and subject to complying with all reasonable security and safety requirements of the Tenant and any requirement of the Tenant that a representative of

the Tenant has the opportunity to attend) to enter the Demised Premises in order to remedy any Snagging Items and/or any Defects in the Base Building Works and the persons so entering shall cause the minimum of disturbance and damage reasonably practicable and shall make good to the reasonable satisfaction of the Tenant any physical damage caused thereby to the Demised Premises, the Tenant's Works and the Tenant's fixtures, fittings and furnishings

20.4    **Access to the Put Option Space to remedy Snagging Items and/or Defects in the Base Building Works**

The Tenant shall have no obligations under Clause 20.3 in respect of the Put Option Space

20.5    **Defects Costs in respect of Base Building Works**

The Developer shall (subject as set out in Clause 20.7) indemnify the Tenant in respect of any and all Defects Costs in respect of the Base Building Works and shall reimburse the same to the Tenant within ten (10) Working Days of demand

20.6    **Defects Costs in respect of the Infrastructure Works**

The Developer shall indemnify the Tenant in respect of any and all Defects Costs in respect of the Infrastructure Works and shall reimburse the same to the Tenant within ten (10) Working Days of demand

20.7    **Tenant to notify Developer of Latent Defective Works**

20.7.1    Save in the case of emergency, prior to the Tenant incurring any expenditure which may constitute Defects Costs in respect of the Base Building Works the Tenant shall first notify the Developer of the defect concerned and shall give the Developer a reasonable and proper period (taking into account the nature and effect of the defect and assuming prompt action diligently pursued by the Developer) to inspect and investigate the same

20.7.2    If the Developer acknowledges that the defect is Latent Defective Works and brings forward reasonably acceptable proposals for remedying such items acceptable to the Tenant (acting reasonably) and implements the same promptly the Tenant shall allow the Developer and all workmen contractors servants or other persons required by the Developer access to the Demised Premises at such times as the Tenant shall reasonably specify (or at any time in the event of emergency) for the purpose of making good the Latent Defective Works, and on giving reasonable prior written notice subject to complying with all reasonable security and safety requirements of the Tenant and any requirement of the Tenant that a representative of the Tenant has the opportunity to attend and the Developer and such others causing as little disruption and damage as is reasonably practicable to the Demised Premises the Tenant's Works and the Tenant's fixtures, fittings and furnishings and making good all physical damage whatsoever thereby caused

20.7.3    If the Developer fails to comply with its obligations in Clause 20.7.2 the Developer will within ten (10) Working Days of demand and provision of

adequate evidence of expenditure reimburse the Tenant the Defects Costs in respect of the Base Building Works

20.7.4    Disputes and differences arising under this Clause 20.7 shall be determined by an Independent Person acting as an expert pursuant to Clause 30.5

20.8    **Developer to have no other liability**

Subject to remedy or payment as set out in Clauses 20.2, 20.5, 20.6 and 20.7.3 the Developer shall have no other liability to the Tenant under this Agreement for costs, losses, damages and expenses resulting from Latent Defective Works or breach of Clause 6.1

20.9    **Assignment**

Notwithstanding the provisions of Clause 33.6 the Tenant and any assignee of the Lease shall be entitled to assign the benefit of the provisions of Clauses 20.5 and 20.6 to its assignee of the Lease and the Developer and the Developer's Surety shall if so required by the Tenant or the assignee (as applicable) enter into a deed (at the request and cost of the Tenant or the assignee (as applicable)) under which the Developer acknowledges to the Tenant's or the assignee's (as applicable) assignee its obligations under Clauses 20.5 and 20.6 and the Developer's Surety acknowledges to the Tenant's or the assignee's (as applicable) assignee its obligations under Clause 28 such deed to be in the form set out in **Schedule 2**

## PART 7

## INSURANCE

21.    **INSURANCE**

21.1    **"Lease Insurance Date"**

For the purposes of this Clause 21 the **"Lease Insurance Date"** shall mean the later of the following:-

21.1.1    the date of completion of the Lease; and

21.1.2    the date of Tenant's Works Practical Completion

and for the avoidance of doubt the parties agree that until such date notwithstanding the grant of the Lease the satisfaction of the Developer's obligations pursuant to Clause 21.2 shall be deemed to be performance of the Landlord's (as defined in the Lease) obligations pursuant to Clause 7 (*Insurance*) of the Lease

21.2    **Developer to insure**

Subject to Clause 21.6, from and including the date of this Agreement until the Lease Insurance Date the Developer shall insure or cause to be insured at its own cost (subject to the provisions of Clause 21.5)

21.2.1

(a)    the Base Building Works, the Building, the Site and all fixtures, plant, machinery and apparatus intended for incorporation within the Base Building Works and the Site insofar as any of the same are from time to time built (wherever the same are stored within UK territorial limits); and

(b)    subject to compliance by the Tenant with Clause 21.7 the Tenant's Works (so far as the same are from time to time built and excluding Tenant's furniture and contents)

against loss or damage by the risks (the "**Insured Risks**") covered by the CAR Policy (including terrorism) in such sum as shall in relation to the Base Building Works in the Developer's opinion be the full reinstatement cost thereof including amounts representing Value Added Tax, architects', surveyors' and other professional fees and expenses incidental thereto the costs of shoring up demolition and site clearance and similar expenses subject to all exclusions excesses and limitations imposed by the insurers or underwriters; and

21.2.2    shall procure such other insurances (including property owner's liability) as the Developer may from time to time deem necessary to effect

21.3    **Insured Works**

All works insured pursuant to Clause 21.2 are, in this Clause 21, referred to as the "**Insured Works**"

21.4    **Restriction on Tenant insuring**

The Tenant shall not take out any insurances in respect of the Demised Premises or in respect of any other matters which the Developer is required to insure under Clause 21.2 save where the Developer has failed or has chosen not to do so and has not done so within ten (10) Working Days of the Tenant notifying the Developer that it intends to take out such insurances as a result Provided that the Tenant shall cancel any such insurances it may have taken out upon written notification by the Developer that it has subsequently insured against such matters

21.5    **No Variation and Insured Parties**

21.5.1    The Developer shall not vary the terms and conditions of the CAR Policy or any other insurance policy effected pursuant to Clause 21.2 insofar as it relates to the Insured Works in any material respect without the prior written consent of the Tenant (such consent not to be unreasonably withheld)

21.5.2    All insurances referred to in Clause 21.2 shall be effected with insurers of good repute and shall provide that the insurances may not be cancelled or terminated except upon at least sixty (60) days' written notice to the named insured and those whose interests are noted on the relevant policy and such insurances shall include the Tenant, the Tenant's Consultants, the Tenant's Contractors/Subcontractors of any tier as insured parties

21.6    **Reimbursement of premiums**

Within six (6) Working Days after written demand accompanied by reasonable verification of the amount demanded the Tenant shall pay to the Developer the full amount of the sums the Developer expends in effecting insurance pursuant to Clause 21.2 (including insurance premium tax, if any):-

21.6.1    for a period from the date hereof until the Lease Insurance Date insofar as they relate to the Tenant's Works and/or Tenant's Requested Modifications (but in the case of Tenant's Requested Modifications only to the extent that the Developer is required to expend more in effecting insurance pursuant to Clause 21.2 than it would in the absence of any Tenant's Requested Modifications); and/or

21.6.2    for the period from Base Building Works Practical Completion or if earlier the date upon which the Base Building Works would have been practically complete but for any Tenant's Delay until the Lease Insurance Date

21.7    **Tenant to notify Developer of Reinstatement Value**

21.7.1    Prior to the commencement of the Tenant's Works the Tenant shall notify the Developer of the estimated reinstatement value of the Tenant's Works including professional fees cost of debris removal and Value Added Tax (such value to be revised as appropriate and the final value at the date of Practical Completion of the Tenant's Works to be notified to the Developer as soon as practicable following the date of Practical Completion of the Tenant's Works) and the Tenant shall provide the Developer with a memorandum separately describing and detailing the Tenant's Works which memorandum the Developer shall approve (such approval not to be unreasonably withheld) and the Developer shall be entitled to rely without further enquiry on such notified values in effecting the relevant insurance pursuant to this Agreement and the Lease and shall not be liable to the Tenant for any breach or alleged breach of its obligations under this Agreement or the Lease to insure the Tenant's Works in their full reinstatement value or otherwise insofar as such breach or alleged breach relates to following the Tenant's notification as to the reinstatement value as detailed above nor shall the Developer be obliged to insure any such parts of the Tenant's Works unless it shall have been notified of the reinstatement value of such parts

21.7.2    If the Tenant shall not provide the Developer with details of the reinstatement value and with the memorandum detailed in 21.7.1 above by the dates detailed in 21.7.1 above the Developer may without further notice enter the Demised Premises and carry out or cause to be carried out an estimate of such reinstatement value and the preparation of such memorandum and all proper costs and expenses thereby incurred shall be paid by the Tenant to the Developer on written demand and the Developer shall not be liable to the Tenant for any breach or alleged breach of its obligations under this Agreement or the Lease to insure the Tenant's Works in their full

reinstatement value or otherwise insofar as such breach or alleged breach is as a result of the Developer preparing such memorandum pursuant to this Clause 21.7.2

21.7.3   Any memorandum prepared and agreed in accordance with Clause 21.7.1 above or in default prepared in accordance with Clause 21.7.2 above shall be the "Memorandum" as is detailed in and for the purposes of Clause 1.43 of the Lease

## 21.8   Destruction/damage of Insured Works

In the event that the Insured Works (or any part of them) are destroyed or damaged by any of the Insured Risks during the period which the Developer is required to effect insurance pursuant to Clause 21.2 then save to the extent that payment of the insurance monies shall be refused wholly or partly by reason of any act or default of the Tenant or the Tenant's Consultants or Tenant's Contractors or any sub-tenant or other occupier or their respective agents licensees or visitors or others under the control of any of them the Developer shall:-

21.8.1   subject to the Developer being able to obtain any necessary planning permission and all other necessary licences approvals and consents as soon as reasonably practicable lay out the net proceeds of such part of the insurance relating to the Insured Works referred to in Clause 21.2.1(a) only (other than any in respect of loss of rents or other consequential losses) in rebuilding and reinstating that part of the Insured Works referred to in Clause 21.2.1(a) so destroyed or damaged substantially as the same were prior to any such destruction or damage (but not necessarily to provide accommodation identical in layout if it would not be reasonably practicable to do so given the circumstances at the relevant time and subject to the Tenant's approval (such approval not to be unreasonably withheld)) the Developer making good all excesses and shortfalls Provided That if it is not possible for the Developer to rebuild or reinstate that part of the Insured Works so destroyed or damaged then the Developer shall account to the Tenant for the proportion of the proceeds of the insurance referable to any Tenant's Requested Modifications paid for by the Tenant and that have been so damaged or destroyed beyond those proceeds that would have been received in respect of the Base Building Works but for such Tenant's Requested Modifications (subject to the deduction of any excess) the Developer paying to the Tenant any shortfall; and

21.8.2   (if any Tenant's Works shall have been destroyed or damaged) pay to the Tenant the net proceeds of such part of the insurance applicable to the Tenant's Works to enable the Tenant to apply the same towards the reinstatement of the Tenant's Works or otherwise if the Insured Works are not capable of reinstatement and if the Tenant's Works are capable of reinstatement the Tenant shall reinstate the Tenant's Works to the Developer's reasonable satisfaction and in case such moneys in respect of the Tenant's Works shall be insufficient for that purpose the Developer shall incur no

liability to the Tenant in respect of such deficiency (unless the Developer has failed to comply with its obligation under Clause 21.2.1(b)) and the Tenant shall then make up any such deficiency out of its own moneys

### 21.9    Payment of insurance moneys refused

If the payment of any insurance moneys is refused or reduced as a result of some act or default of the Tenant or the Tenant's Consultants or the Tenant's Contractors or any undertenant or other occupier or their respective agents licensees or visitors or others under the control of any of them the Tenant shall pay to the Developer on written demand the amount so refused or reduced except to the extent that it relates to the Tenant's Works and/or the Tenant's Requested Modifications

### 21.10    Tenant's obligations

The Tenant shall and shall procure that the Tenant's Consultants or Tenant's Contractors or any undertenant or other occupiers or their respective agents licensees or visitors or others under the control of any of them shall:-

21.10.1    not do or omit to do anything that could cause any policy of insurance (details of which have been supplied to the Tenant) in respect of or covering the Demised Premises to become void or voidable wholly or in part nor (unless the Tenant has previously notified the Developer and agreed to pay the increased premium) anything whereby any increased or loaded premium may become payable and the Tenant shall on written demand pay to the Developer such increased premium and tax thereon; and

21.10.2    at all times comply with the terms of the CAR Policy the Joint Code of Practice for the Protection from Fire of Construction Sites and all other requirements of the Developer's insurers so far as such requirements are known by the Tenant and relate to the Demised Premises or the conduct of persons using any part of the Building or the Development Site

### 21.11    Notice by Tenant

The Tenant shall give notice to the Developer as soon as it becomes aware of the happening of any event or thing which might affect or give rise to a claim under any insurance policy (details of which have been supplied to the Tenant) relating to the Demised Premises

### 21.12    Benefit of other insurances

If the Tenant shall become entitled to the benefit of any insurance in relation to the Demised Premises which is not effected or maintained in pursuance of the obligations herein contained then the Tenant shall apply all monies received from such insurance (insofar as the same shall extend) in making good the loss or damage in respect of which the same shall have been received

21.13  **Insurance of the Put Option Fit Out Works**

The Put Option Sub-Tenant shall perform the obligations of the Tenant under this Clause 21 in respect of the Put Option Space and the Put Option Fit Out Works, mutatis mutandis

## PART 8

## GRANT OF THE LEASE

22.    **GRANT OF LEASE, CALCULATION OF RENTS AND OTHER TERMS**

22.1   **Grant of Lease**

Within ten (10) Working Days following the latest to occur of the following dates:-

22.1.1    the Base Building Works Practical Completion Date; and

22.1.2    the determination of the Net Internal Area ; and

22.1.3    (unless the Developer (or the Developer's successor in title) otherwise elects by notice in writing to the Tenant in which case the Rent Review Specification shall be agreed or determined subsequently and shall be referred to in the Lease as being contained in a deed supplemental to the Lease which the parties hereby agree to enter into when the Rent Review Specification has been agreed or determined) the agreement or determination of the Rent Review Specification to be attached to the Lease as provided in Clause 22.6

the Developer (or if relevant the Developer's successor in title) shall procure that Canary Wharf Holdings Limited as the Landlord's Guarantor and Canary Wharf Management Limited (or their respective successors) as the Management Company execute the Lease and shall cause to be delivered to the Tenant or the Tenant's Solicitors the Lease so executed by the Developer (or if relevant the Developer's successor in title) as the Landlord by Canary Wharf Holdings Limited and Canary Wharf Management Limited (or their respective successors) and the Tenant (meaning, subject to Clause 33.6.1, Lehman Brothers Limited only) and the Tenant's Surety (meaning Lehman Brothers Holdings Inc. only or such party as has become the Tenant's Surety pursuant to the provisions of Clause 33.7) shall within five (5) Working Days execute and deliver the counterpart of it to the Developer (or if relevant the Developer's successor in title) released for completion. Completion of the Lease shall take place within ten (10) Working Days of receipt by the Tenant's Solicitors or the Tenant of the executed Lease as aforesaid) at the offices of the Developer's Solicitors or at such other place in the United Kingdom as the Developer (or if relevant the Developer's successor in title) shall reasonably require

22.2   **Length of Lease term, Initial Rents, Service Charges and Insurance Rent**

The following provisions shall apply (inter alia) to the computation and the commencement date for payment of the rents payable under and the calculation of the commencement and length of the term of the Lease:-

22.2.1   The Term Commencement Date (as defined in the Lease) shall be the Base Building Works Practical Completion Date and the term of the Lease shall be for a period of thirty (30) years commencing upon the Term Commencement Date

22.2.2

(a)   The Initial Rent shall be the product of multiplying the Net Internal Area as confirmed in the Demised Premises Independent Measurer's Certificate less the Basement Tolerance Excess (if any and only if a positive number) and subject to a maximum of 1,100,000 square feet by forty one pounds (£41)

(b)   The Initial Car Parking Rent shall be the product of multiplying the number of parking spaces located within the car park within the Building (which shall be assumed (whether or not the case) to be not less than 250 in number) by two thousand five hundred pounds (£2,500) Provided That if the Demised Premises as shown on the Base Building Plans as at the date of this Agreement are modified by reason of Design Development such that the car park can no longer accommodate 250 parking spaces assumed in this Clause 22.2.2(b) the 250 parking spaces shall be reduced by an equivalent number to the number of parking spaces lost by such Design Development

(c)   Each of the amounts in Clauses 22.2.2 (a) and (b) are deemed to be exclusive of VAT (if any) thereon

22.2.3   The Initial Rent referred to in Clause 22.2.2(a) shall be due and shall commence forthwith on the date eighteen (18) months following the Term Commencement Date

PROVIDED THAT until the Initial Rent has been ascertained such payment shall be based upon the Developer's estimate of the same (which estimate shall be final and binding on the Tenant) with any necessary adjustment in respect of an underpayment or overpayment being made as soon as practicable after the ascertainment of the exact figures involved pursuant to Clause 22.2.2(a)

22.2.4   The Initial Car Parking Rent referred to in Clause 22.2.2(b) shall be due and shall commence forthwith on the date twenty four (24) months following the Term Commencement Date

22.2.5   The insurance rent as reserved in Clause 3(b) of the Lease shall be due and shall commence on the Term Commencement Date but, for the avoidance of doubt, there shall be no double counting in respect of the cost of insuring elements of the items insured against pursuant to Clause 21 of this Agreement

22.2.6   Subject to Clause 10.2 the service charges as reserved in Clause 3(c) of the Lease shall be due and shall commence on the earlier of:

(a)    the date six (6) months after the Term Commencement Date and

(b)    first beneficial occupation of the Demised Premises or part by the Tenant for the purposes of conducting its business

22.2.7    The service charge percentage to be inserted in Clause 9.4(a) of the Lease shall be calculated using the formula set out in Clause 9.1(f) of the Lease with the numerator X being the Net Internal Area as confirmed in the Demised Premises Independent Measurer's Certificate

22.2.8    In computing all periods and dates for the purposes of this Clause 22.2 and Clause 22.4 the period or date shall be deemed to be that which would have occurred but for any Tenant's Delay save that the Term Commencement Date actually to be inserted in the Lease itself shall remain the actual Base Building Works Practical Completion Date but for no other purpose

22.2.9    Value Added Tax chargeable by the Developer in respect of supplies made or deemed to be made pursuant to the Lease shall be reserved and become payable as rent under the Lease as described in Clause 3 of the Lease

## 22.3    Sums paid as Licence Fees

Where in consequence of the calculations made under Clause 22.2 sums and amounts become due and payable by the Tenant to the Developer or to the Management Company (as defined in the Lease) in respect of any period or periods prior to the commencement of the term of the Lease or the completion of the Lease such sums and amounts shall instead be due and shall commence to be paid by the Tenant as licence fees under the terms of this Agreement until the Lease has been completed and such payments shall discharge all liability of the Tenant to make corresponding payments under the Lease

## 22.4    Rent Review Dates

22.4.1    The Initial Rent will be reviewed upwards only every five years, the first open market review to take place on the tenth anniversary of the date falling six (6) months after the Term Commencement Date

22.4.2    With effect from the fifth anniversary of the date falling six (6) months after the Term Commencement Date the Initial Rent (referred to in the Lease as Year Six Rent) shall be the result of multiplying the Net Internal Area as confirmed in the Demised Premises Independent Measurer's Certificate less the Basement Tolerance Excess (if any and only if a positive number) and subject to a maximum of 1,100,000 square feet (hereinafter referred to in this Clause 22.4 as the "NIA") by fifty three pounds (£53) exclusive of VAT (if any) thereon

22.4.3    The Initial Rent from the sixth, seventh, eighth and ninth anniversaries of the date falling six (6) months after the Term Commencement Date shall be calculated as follows:-

(a)  from the sixth anniversary the Initial Rent (referred to in the Lease as Year Seven Rent) shall be the product of multiplying the NIA by £54.59

(b)  from the seventh anniversary the Initial Rent (referred to in the Lease as Year Eight Rent) shall be the product of multiplying the NIA by £56.2277

(c)  from the eighth anniversary the Initial Rent (referred to in the Lease as Year Nine Rent) shall be the product of multiplying the NIA by £57.914531; and

(d)  from the ninth anniversary until the tenth anniversary the Initial Rent (referred to in the Lease as Year Ten Rent) shall be the product of multiplying the NIA by £59.65196693

such sums to be exclusive of VAT (if any) thereon

22.4.4  The Initial Car Parking Rent will be reviewed upwards only on the fifth anniversary of the date falling six (6) months after the Term Commencement Date

## 22.5  Opinion Letter

The Tenant shall procure the provision to the Developer (or the Developer's successor in title) on completion of the Lease of a Letter of Opinion from Freshfields Bruckhaus Deringer or such other reputable firm practising in the relevant jurisdiction in relation to the Tenant's Surety's entry into the Lease

## 22.6  Rent Review Specification

22.6.1  The Developer shall procure the preparation of the "assumed premises plans" comprising the "as-built" Base Building Works but omitting the Tenant's Requested Modifications and substituting for the Tenant's Requested Modifications the relevant original Base Building Definition items

22.6.2  The Developer shall as soon as reasonably practicable following Base Building Works Practical Completion submit to the Tenant a draft of the Rent Review Specification for its approval, such approval not to be unreasonably withheld or delayed

22.6.3  In the event the Developer and the Tenant are unable to agree the Rent Review Specification the matter may be referred by either of them at any time to the Independent Person acting as an expert pursuant to Clause 30.5

## 22.7  Payment of Tenant's Inducement

22.7.1  The Developer shall pay to the Tenant, or as otherwise directed by the Tenant, the Tenant's Inducement as an inducement to enter into the Lease such sum to be paid by means of one instalment upon the date of completion of the Lease (or earlier pursuant to Clause 27.7.2 if the Developer elects so to do)

22.7.2    If completion of the Lease is delayed beyond ten (10) Working Days of the Base Building Works Practical Completion Date (and such delay is not a result of any failure on the part of the Tenant and/or the Tenant's Surety or any Group Company of the Tenant's Surety) then the Developer may in its discretion either pay the Tenant's Inducement on that date (notwithstanding the Lease is not then granted) or account to the Tenant at completion of the Lease for interest on the Tenant's Inducement at 100 basis points over LIBOR for the period between (and including in each case) the date ten (10) Working Days after the Base Building Works Practical Completion Date (as such date is back dated to the extent that it is later than the Target Date for any reason other than Force Majeure or Tenant's Delay) and the actual date of payment of the Tenant's Inducement or (if earlier) the date upon which the Lease could have been completed but for default on the part of the Tenant and/or the Tenant's Surety

## 23.    TITLE

### 23.1    Tenant to raise no requisitions

The Developer's title to grant the Lease having been deduced to the Tenant prior to the date of this Agreement the Tenant shall raise no objection or requisition in respect of it in relation to any matter or thing arising prior to the date of this Agreement (but so that this provision shall not prevent the Tenant raising requisitions in relation to any subsequent matter or in relation to any consents required for the grant of the Lease)

### 23.2    HM Land Registry

Within five (5) Working Days after the date of this Agreement the Developer shall place its Land Certificate in respect of Title Number EGL387043 on deposit at H.M. Land Registry and shall notify the Tenant or its Solicitors of the deposit number allocated it for the purposes of enabling the Tenant to register a notice of the Tenant's interest arising out of this Agreement relating to the Demised Premises

## 24.    CONDITIONS AFFECTING THE GRANT OF THE LEASE

### 24.1    Subjections

The Lease will be granted subject to:-

24.1.1    all charges notices orders directions regulations restrictions and other matters whatsoever arising under the Town and Country Planning Act 1990 the Planning (Listed Buildings and Conservation Areas) Act 1990 the Planning (Hazardous Substances) Act 1990 the Planning (Consequential Provisions) Act 1990 the Planning and Compensation Act 1991 and any subsequent legislation of a similar nature and the Tenant shall be deemed to accept the Lease with full knowledge thereof and of the authorised use of the Building for the purpose of such Acts and shall not raise any requisition enquiry or objection with regard thereto

24.1.2    the matters contained or referred to in the deeds or documents referred to in the Schedule 5 to the Lease

24.1.3    a lease or leases in favour of London Electricity plc in such form as the Tenant may approve (such approval not to be unreasonably withheld) and with such appurtenant rights and powers of entry and otherwise as London Electricity plc shall require relating to the transformer chambers in the Building and that if required by the Developer the Tenant will join in the grant of such Lease(s)

24.1.4    a lease or leases in favour of British Telecom Mercury Communications or such other public telecommunications operator as the Developer may determine (a "**PTO**") in such form as the Tenant may approve (such approval not to be unreasonably withheld) and with such appurtenant rights and powers of entry and otherwise as the PTO shall require relating to the telecommunications room in the Building and that if required by the Developer the Tenant will join in the grant of such Lease(s)

24.2    **Variation to Lease**

The parties to this Agreement acknowledge that the provisions in the Lease may need to be adjusted to reflect the circumstances which affect the Demised Premises as and when fully constructed. In the event that the Developer reasonably requests the Tenant to agree to any such variation then the parties to this Agreement shall use all reasonable endeavours to agree the terms and document such proposed variation and any related provisions (including provisions as to financial contributions where appropriate) and in the event of a dispute as to the content of any such variations or provisions such dispute may be referred for settlement by either party to the Independent Person and the parties shall execute any deed or do any other thing necessary to give any variation agreed or settled as aforesaid

24.3    **No representations**

The Tenant and the Developer hereby respectively admit that no representation whether oral or written (save in any written replies to enquiries given by or on behalf of the Developer or the Developer's Surety) has been made to either of them prior to the execution of this Agreement by or on behalf of the other concerning the Development Site or the Building or the Base Building Works or any part of them which has influenced, induced or persuaded either of them to enter into or which forms part of this Agreement or of any agreement collateral with this Agreement

24.4    **Continuation of Agreement**

Notwithstanding the grant of the Lease or the completion of the Base Building Works, this Agreement shall continue in full force and effect so long as any of its provisions remain to be performed or observed by the Developer or the Tenant

## PART 9

## TENANT'S COVENANT, EVENTS OF DEFAULT AND GUARANTEES

25.    **DELAY**

The Tenant shall indemnify the Developer against all actions, proceedings, claims, demands, losses, costs, expenses, damages and liability arising out of any Tenant's Delay but for the avoidance of doubt

25.1.1    there shall be no double counting in any respect including without limitation in connection with extended Preliminaries;

25.1.2    the Tenant's liability for delay shall not extend to any interference with or interruption of the Developer's business or any loss of profit in relation to the Developer's business other than in so far as the same relate specifically to the Building and/or the Lease; and

25.1.3    the Developer shall constantly (but without being obliged to incur any additional expenditure (unless and to the extent that the Tenant agrees in writing to reimburse the Developer for the same)) use best endeavours to mitigate delays and losses caused by Tenant's Delay

26.    **EVENT OF DEFAULT**

26.1    **Events of Default**

An Event of Default shall occur in any of the following circumstances:-

26.1.1    if the Tenant or the Tenant's Surety (being a body corporate) passes a winding-up resolution (other than a resolution for the purposes of an amalgamation or reconstruction resulting in a solvent corporation) or resolves to present its own winding-up petition or is wound-up or the directors of the Tenant or the Tenant's Surety resolve to present a petition for an administration order in respect of the Tenant or the Tenant's Surety or an Administrative Receiver or a Receiver or a Receiver and Manager is appointed in respect of the property or any part thereof of the Tenant or the Tenant's Surety; or

26.1.2    if the Tenant or the Tenant's Surety (being a body corporate) calls or a nominee calls on its behalf a meeting of its creditors or any of them or makes an application to the Court under Section 425 of the Companies Act 1985 other than an application for the purposes of an amalgamation or reconstruction resulting in a solvent corporation or submits to its creditors or any of them a proposal pursuant to Part I of the Insolvency Act 1986 or enters into any arrangement, scheme, compromise, moratorium or composition with its creditors or any of them (whether pursuant to Part I of the Insolvency Act 1986 or otherwise); or

26.1.3    if any event analogous to those described in Clauses 26.1.1 and 26.1.2 occurs in relation to the Tenant or the Tenant's Surety in any jurisdiction; or

26.1.4    the Tenant or the Tenant's Surety ceases for any reason to maintain its corporate existence unless the same occurs as part of an amalgamation or reconstruction of a solvent company under which before or at the same time as such cessation or striking off the assets and liabilities of the Tenant or the Tenant's Surety are by operation of law transferred to another company or body (including the liabilities under this Agreement) and such company or body enters into a direct deed with the Developer to observe all of the covenants and obligations of the Tenant or the Tenant's Surety (as appropriate) under this Agreement and Clause 33.7 is fully complied with; or

26.1.5    the Tenant or the Tenant's Surety shall irremediably and materially breach this Agreement or (if the breach is capable of remedy) shall fail to commence to remedy and thereafter diligently proceed with remedying such material breach within twenty-eight (28) days of being required in writing by the Developer so to do; or

26.1.6    a breach of Clause 33.7; or

26.1.7    the Tenant or the Tenant's Surety shall cease for any other reason to be or to remain liable under this Agreement

Provided That an Event of Default shall not occur in the event of any amalgamation, merger or reconstruction resulting in a solvent corporation and where in the case of the Tenant the guarantee of the Tenant's Surety is maintained And Provided Further that an Event of Default shall not occur in the event of a breach by the Tenant or the Tenant's Surety of the provisions of Clause 33.4

26.2    **Determination of Agreement**

If an Event of Default occurs then the Developer may at any time thereafter (whilst the Event of Default subsists to any extent) by notice in writing to the Tenant forthwith determine this Agreement (but without prejudice to any right of action by any party to this Agreement in respect of any antecedent breach of any of the obligations on the part of the others herein contained)

26.3    **Repayment upon Determination**

If this Agreement is determined pursuant to this Clause 26 there shall immediately become payable to the Developer a sum equivalent to the aggregate of all Modification Costs (due credit being given for any Unspent Costs) which have been committed but remain outstanding under Clause 8.10.1 and all parts of the Tenant's Inducement (if any) which have already been paid to the Tenant together with Interest thereon in the case of Modification Costs from the expiry of the period of ten (10) Working Days pursuant to Clause 8.10.1 and in the case of the Tenant's Inducement from the date upon which the same was paid until the date of payment under this Clause

## 27.    TENANT'S SURETY GUARANTEE

### 27.1    Indemnity by Tenant's Surety

The Tenant's Surety hereby covenants with the Developer as a primary obligation that the Tenant or the Tenant's Surety shall at all times duly perform and observe all the covenants on the part of the Tenant contained in this Agreement and the Tenant's Surety shall indemnify and keep indemnified the Developer against all claims demands losses damages liability costs fees and expenses whatsoever sustained by the Developer by reason of or arising out of any default by the Tenant in the performance and observance of any of its obligations provided that the Developer shall take such steps as shall be reasonable to mitigate such loss having regard to the nature of the breach

### 27.2    Tenant's Surety jointly and severally liable with Tenant

The Tenant's Surety hereby further covenants with the Developer that the Tenant's Surety is jointly and severally liable with the Tenant (whether before or after any disclaimer by a liquidator or trustee in bankruptcy) for the fulfilment of all the obligations of the Tenant under this Agreement and agrees that the Developer in the enforcement of its rights hereunder may proceed against the Tenant's Surety as if the Tenant's Surety were named as the Tenant in this Agreement

### 27.3    Waiver by Tenant's Surety

The Tenant's Surety hereby waives any right to require the Developer to proceed against the Tenant or to pursue any other remedy whatsoever which may be available to the Developer before proceeding against the Tenant's Surety and the terms of this Clause 27.3 shall be a continuing guarantee and shall remain in full force and effect until each and every part of the obligations and covenants on the part of the Tenant shall have been discharged and performed in full

### 27.4    Postponement of claims by Tenant's Surety against Tenant

The Tenant's Surety hereby further covenants with the Developer that the Tenant's Surety shall not claim in any liquidation bankruptcy composition or arrangement of the Tenant in competition with the Developer and shall remit to the Developer the proceeds of all judgements and all distributions it may receive from any liquidator trustee in bankruptcy or supervisor of the Tenant and shall hold for the benefit of the Developer all security and rights the Tenant's Surety may have over assets of the Tenant whilst any liabilities of the Tenant or the Tenant's Surety to the Developer remain outstanding

### 27.5    Postponement of participation of Tenant's Surety in security

The Tenant's Surety shall not be entitled to participate in any security held by the Developer in respect of the Tenant's obligations to the Developer under this Agreement or to stand in the place of the Developer in respect of any such security until all the obligations of the Tenant or the Tenant's Surety to the Developer under this Agreement have been performed or discharged

### 27.6    No release of Tenant's Surety

None of the following or any combination thereof shall release discharge or in any way lessen or affect the liability of the Tenant's Surety under this Agreement:-

27.6.1    any neglect delay or forbearance of the Developer in endeavouring to obtain payment of amounts required to be paid by the Tenant or in enforcing the performance or observance of any of the obligations of the Tenant under this Agreement

27.6.2    any extension of time given by the Developer to the Tenant

27.6.3    any variation of the terms of this Agreement with or without the consent of the Tenant's Surety or the transfer of the Developer's reversion or the assignment by any party of this Agreement

27.6.4    any change in the identity constitution structure or powers of any of the Tenant the Tenant's Surety the Developer or the liquidation administration or bankruptcy (as the case may be) of either the Tenant or the Tenant's Surety

27.6.5    any legal limitation or immunity disability or incapacity of the Tenant (whether or not known to the Developer) or the fact that any dealings with the Developer by the Tenant may be outside or in excess of the powers of the Tenant; and

27.6.6    any other act omission matter or thing whatsoever whereby but for this provision the Tenant's Surety would be exonerated either wholly or in part (other than a release under seal given by the Developer)

## 27.7    Liquidation of Tenant

The Tenant's Surety hereby further covenants with the Developer that (other than in the event of any amalgamation merger or reconstruction resulting in a solvent corporation and where the guarantee of the Tenant's Surety is maintained) if:-

27.7.1    an order is made or a resolution passed for the winding up of the Tenant (other than the winding up whilst solvent for the purposes of amalgamation or reconstruction); or

27.7.2    a provisional liquidator is appointed in respect of the Tenant; or

27.7.3    a petition is presented or a meeting convened for the purposes of winding up the Tenant; or

27.7.4    an administration order is made or petition for such order presented in respect of the Tenant; or

27.7.5    a receiver (including an administrative receiver) is appointed in respect of the Tenant or any of its assets; or

27.7.6    a voluntary arrangement is proposed pursuant to Section 1 of the Insolvency Act 1986 in respect of the Tenant; or

27.7.7    the Tenant shall fail to execute and deliver the Lease; or

27.7.8    the Tenant shall cease for any other reason (other than an express release) to
be or to remain liable under this Agreement; or

27.7.9    the Tenant ceases for any reason to maintain its corporate existence unless the
same occurs as part of an amalgamation or reconstruction of a solvent
company under which before or at the same time as such cessation or striking
off the assets and liabilities of the Tenant are by operation of law transferred
to another company or body (including the liabilities under this Agreement)
and such company or body enters into a direct deed with the Developer to
observe all of the covenants and obligations of the Tenant under this
Agreement and Clause 33.7 is fully complied with; or

27.7.10    the Crown or a liquidator or trustee in bankruptcy shall disclaim this
Agreement

THEN the Tenant's Surety shall, if the Developer by notice in writing given to the
Tenant's Surety within six (6) months following any such event so requires, execute
and deliver to the Developer an agreement in similar form to this Agreement (mutatis
mutandis) (but excluding this Clause 27) but with the Tenant's Surety substituted for
the Tenant and the Tenant's Surety shall thereupon assume all the obligations and have
all the rights of the Tenant as if the Tenant's Surety had been an original contracting
party to this Agreement in place of the Tenant

27.8    **Warranty by Tenant's Surety**
The Tenant's Surety hereby warrants and represents to the Developer that it has full
power and authority to give this guarantee

27.9    **Benefit of guarantee**
This guarantee shall enure for the benefit of the successors and assigns of the
Developer under this Agreement without the necessity of any assignment thereof

28.    **DEVELOPER'S SURETY GUARANTEE**

28.1    **Indemnity by Developer's Surety**
The Developer's Surety hereby covenants with the Tenant as a primary obligation that
the Developer or the Developer's Surety shall at all times duly perform and observe all
the covenants on the part of the Developer contained in this Agreement and the
Developer's Surety shall indemnify and keep indemnified the Tenant against all claims
demands losses damages liability costs fees and expenses whatsoever sustained by the
Tenant by reason of or arising out of any default by the Developer in the performance
and observance of any of its obligations Provided That the Tenant shall take such steps
as shall be reasonable to mitigate such loss having regard to the nature of the breach

28.2    **Developer's Surety jointly and severally liable with Developer**
The Developer's Surety hereby further covenants with the Tenant that the Developer's
Surety is jointly and severally liable with the Developer (whether before or after any
disclaimer by a liquidator or trustee in bankruptcy) for the fulfilment of all the
obligations of the Developer under this Agreement and agrees that the Tenant in the

enforcement of its rights hereunder may proceed against the Developer's Surety as if
the Developer's Surety were named as the Developer in this Agreement

### 28.3   Waiver by Developer's Surety

The Developer's Surety hereby waives any right to require the Tenant to proceed
against the Developer or to pursue any other remedy whatsoever which may be
available to the Tenant before proceeding against the Developer's Surety and the terms
of this Clause 28.3 shall be a continuing guarantee and shall remain in full force and
effect until each and every part of the obligations and covenants on the part of the
Developer shall have been discharged and performed in full

### 28.4   Postponement of claims by Developer's Surety against Developer

The Developer's Surety hereby further covenants with the Tenant that the Developer's
Surety shall not claim in any liquidation bankruptcy composition or arrangement of the
Developer in competition with the Tenant and shall remit to the Tenant the proceeds of
all judgements and all distributions it may receive from any liquidator trustee in
bankruptcy or supervisor of the Developer and shall hold for the benefit of the Tenant
all security and rights the Developer's Surety may have over assets of the Developer
whilst any liabilities of the Developer or the Developer's Surety to the Tenant remain
outstanding

### 28.5   Postponement of participation of Developer's Surety in security

The Developer's Surety shall not be entitled to participate in any security held by the
Tenant in respect of the Developer's obligations to the Tenant under this Agreement or
to stand in the place of the Tenant in respect of any such security until all the
obligations of the Developer or the Developer's Surety to the Tenant under this
Agreement have been performed or discharged

### 28.6   No release of Developer's Surety

None of the following or any combination thereof shall release discharge or in any way
lessen or affect the liability of the Developer's Surety under this Agreement:-

28.6.1   any neglect delay or forbearance of the Tenant in endeavouring to obtain
payment of amounts required to be paid by the Developer or in enforcing the
performance or observance of any of the obligations of the Developer under
this Agreement

28.6.2   any extension of time given by the Tenant to the Developer

28.6.3   any variation of the terms of this Agreement with or without the consent of the
Developer's Surety or the transfer of the Tenant's reversion or the assignment
of this Agreement

28.6.4   any change in the identity constitution structure or powers of any of the
Developer the Developer's Surety the Tenant or the Tenant's Surety or the
liquidation administration or bankruptcy (as the case may be) of either the
Developer or the Developer's Surety

28.6.5     any legal limitation or immunity disability or incapacity of the Developer (whether or not known to the Tenant) or the fact that any dealings with the Tenant by the Developer may be outside or in excess of the powers of the Developer; and

28.6.6     any other act omission matter or thing whatsoever whereby but for this provision the Developer's Surety would be exonerated either wholly or in part (other than a release under seal given by the Tenant)

## 28.7   Liquidation of Developer

The Developer's Surety hereby further covenants with the Tenant that if:-

28.7.1     an order is made or a resolution passed for the winding up of the Developer (other than the winding up whilst solvent for the purposes of amalgamation or reconstruction with the prior written consent of the Tenant such consent not to be unreasonably withheld or delayed); or

28.7.2     a provisional liquidator is appointed in respect of the Developer; or

28.7.3     a petition is presented or a meeting convened for the purposes of winding up the Developer; or

28.7.4     an administrative order is made or petition for such order presented in respect of the Developer; or

28.7.5     a receiver (including an administrative receiver) is appointed in respect of the Developer or any of its assets; or

28.7.6     a voluntary arrangement is proposed pursuant to Section 1 of the Insolvency Act 1986 in respect of the Developer; or

28.7.7     an event analogous to those described in sub-clauses 28.7.1 to 28.7.6 (inclusive) occurs in relation to the Developer in any jurisdiction; or

28.7.8     the Developer shall fail to execute and deliver the Lease; or

28.7.9     the Developer shall cease for any other reason (other than an express release) to be or to remain liable under this Agreement; or

28.7.10    the Developer ceases for any reason to maintain its corporate existence; or

28.7.11    the Crown or a liquidator or trustee in bankruptcy shall disclaim this Agreement

THEN the Developer's Surety shall, if the Tenant by notice in writing given to the Developer's Surety within six (6) months following any such event so requires, execute and deliver to the Tenant an agreement in similar form to this Agreement (mutatis mutandis) (but excluding this Clause 28) but with the Developer's Surety substituted for the Developer and the Developer's Surety shall thereupon assume all the

obligations and have all the rights of the Developer as if the Developer's Surety had been an original contracting party to this Agreement in place of the Developer

**28.8    Warranty by Developer's Surety**

The Developer's Surety hereby warrants and represents to the Tenant that it has full power and authority to give this guarantee

**28.9    Benefit of guarantee**

This guarantee shall enure for the benefit of the successors and assigns of the Tenant under this Agreement without the necessity of any assignment thereof

**PART 10**

**TAX**

**29.    VALUE ADDED TAX AND CAPITAL ALLOWANCES**

**29.1    Payment of VAT**

Where, pursuant to the terms of this Agreement, a party (for the purposes of this Clause 29.1, the "**Supplier**") makes or is deemed to make a supply to another party (for the purposes of this Clause 29.1, the "**Recipient**") for Value Added Tax purposes and Value Added Tax is or becomes chargeable on such supply, the Recipient shall (in addition to and at the same time as providing any other consideration for such supply), save where expressly provided to the contrary, pay to the Supplier a sum equal to the amount of such Value Added Tax and the Supplier shall provide the Recipient with a Value Added Tax invoice in respect of such supply

**29.2    Reimbursement of VAT**

Where, pursuant to the terms of this Agreement, a party (for the purposes of this Clause 29.2, the "**Payer**") is required to pay, repay or reimburse another party (for the purposes of this Clause 29.2, the "**Payee**") for any cost, fee, charge, disbursement or expense (or any proportion of it), the Payer shall also reimburse the Payee for any part of such cost, fee, charge, disbursement or expense (or proportion of it) which represents Value Added Tax, save to the extent that the Payee is entitled to credit or repayment in respect of such Value Added Tax from HM Customs & Excise

**29.3    No election by Developer/Developer's Surety**

Each of the Developer and the Developer's Surety hereby warrants that it has not made and covenants that it will not at any time make a voluntary election to waive exemption from VAT pursuant to paragraph 2 of Schedule 10 to the Value Added Tax Act 1994 which has effect in relation to the Site or the Building.

**29.4    Tenant's Inducement**

29.4.1    Subject to Clause 29.4.2, the Tenant's Inducement shall be deemed to be inclusive of any VAT which is chargeable on the supply or supplies for which the Tenant's Inducement (or any part thereof) is the whole or part of the consideration for VAT purposes and section 89 of the Value Added Tax Act 1994 shall not apply to affect the amount of the Tenant's Inducement

29.4.2    In the event that the Developer or the Developer's Surety makes an election to waive exemption from VAT pursuant to paragraph 2 of Schedule 10 to the Value Added Tax Act 1994 which has effect in relation to the Site or the Building, and solely as a result of making such an election (or as a result of the Tenant making such an election after the Developer has made such an election) the Tenant has to account for VAT in respect of the Tenant's Inducement, the Tenant's Inducement will be deemed to be exclusive of VAT and the provisions of Clause 29.1 will apply to the Tenant's Inducement and the supply for which the Tenant's Inducement is or is deemed to be the consideration

PROVIDED THAT where the Developer or the Developer's Surety has made an election which is not a voluntary election and is required pursuant to this Clause 29.4.2 to pay an amount under Clause 29.1 representing VAT in addition to the Tenant's Inducement, and the Developer or the Developer's Surety (as the case may be) is not entitled to a credit in full as "input tax" as that term is defined in section 24 of the Value Added Tax Act 1994 for an amount in respect of VAT paid to the Tenant in relation to the Tenant's Inducement, the amount of the Tenant's Inducement will be accordingly reduced taking into account the amount of any Irrecoverable VAT of the Developer or the Developer's Surety (as the case may be) in relation to the Tenant's Inducement (as so reduced) so that the Developer or the Developer's Surety (as the case may be) is in the same position it would have been in had it been entitled to a full input tax credit in those circumstances

## 29.5    Capital Allowances

For the avoidance of doubt, the Tenant agrees that it shall not be permitted to claim any Capital Allowances in respect of any expenditure incurred on any item comprised in the Base Building Works

## PART 11

## DISPUTES, NOTICES AND SENIOR MANAGERS

## 30.    DISPUTES

### 30.1    Reference to Independent Person

If any dispute or difference shall arise between the parties to this Agreement as to the construction or meaning of this Agreement or their respective rights, duties and obligations under this Agreement or as to any matter arising out of or in connection with the subject matter of this Agreement such dispute or difference shall (unless this Agreement otherwise expressly provides) if any party to this Agreement so requires at any time by notice served on the others (the "Determination Notice") be referred to and determined by an independent person (the "Independent Person") who shall have been qualified in respect of the general subject matter of the dispute or difference for not less than ten (10) years and who shall be a specialist in relation to such subject matter

30.2 **Appointment of Independent Person**

The Independent Person shall be appointed by agreement between the parties to this Agreement or (if within ten (10) Working Days after service of the Determination Notice the parties have been unable to agree) on the application of any of the parties by such one of the following persons as the parties shall agree to be appropriate having regard to the nature of the dispute or difference in question:-

30.2.1   the Chairman for the time being of the Bar Council

30.2.2   the President for the time being of the Royal Institute of British Architects

30.2.3   the President for the time being of the Royal Institution of Chartered Surveyors

30.2.4   the President for the time being of the Chartered Institute of Arbitrators

30.2.5   the President for the time being of the Institute of Chartered Accountants in England and Wales

30.2.6   the President for the time being of the Law Society

or (in each such case) the duly appointed deputy of such President or any other person authorised by him to make appointments on his behalf

30.3 **Failure to agree Independent Person**

If within fifteen (15) Working Days after service of the Determination Notice the parties have been unable to agree which of the persons referred to in Clause 30.2 is appropriate to appoint the Independent Person then the Independent Person shall be appointed on the application of any of the parties by the President for the time being of the Law Society or his duly appointed deputy or any other person authorised by him to make appointments on his behalf

30.4 **Independent Person to act as arbitrator**

Except as mentioned in Clause 30.5 any person appointed under this Clause shall act as an arbitrator in accordance with the provisions of the Arbitration Act 1996 and shall have the power to order a provisional award but the parties agree that any arbitrator appointed under this Clause shall not have the powers set out in Section 48(5) of the Arbitration Act 1996 and shall not be entitled to order the rectification setting aside or cancellation of this Agreement or any part of it

30.5 **Independent Person to act as an expert**

Whenever the parties have agreed in writing prior to his appointment that the Independent Person to be appointed under this Clause 30 shall act as an expert or this Agreement expressly so provides then the following provisions shall have effect: -

30.5.1   the Independent Person shall act as an expert and not as an arbitrator and his decision shall be final and binding upon the parties to the dispute

30.5.2 the Independent Person shall consider (inter alia) any written representations made on behalf of any party (if made reasonably promptly) but shall not be bound thereby

30.5.3 the Independent Person shall be independent and shall act impartially and fairly between the parties

30.5.4 the parties to this Agreement shall use all reasonable endeavours to procure that the Independent Person shall give his decision as speedily as reasonably possible

30.5.5 the parties hereby consent to any hearing in connection with any such independent determination not being held in public and the decision of the Independent Person not being pronounced in public

30.5.6 the costs of appointing the Independent Person and his costs and disbursements in connection with his duties under this Agreement shall be shared between the parties to the dispute in such proportion as the Independent Person shall determine or in the absence of such determination then equally between the parties and

30.5.7 if the Independent Person shall be or become unable or unwilling to act then the procedure contained in this Clause 30.5 for the appointment of an expert may be repeated as often as necessary until a decision is obtained

30.6 **Alternative Dispute Resolution Clause**

In the event of any dispute or difference arising between the parties in connection with this Agreement which is not expressly directed to be determined by the Independent Person or where the same is directed to be determined by the Independent Person who acts otherwise than as an expert and either party disputes his determination the following provisions shall have effect:-

30.6.1 One of the parties may serve a written request on the other party to meet in good faith in order to endeavour to resolve the dispute without recourse to legal proceedings and in such event the parties shall meet within ten (10) Working Days of such written request in good faith in order to endeavour to resolve the dispute without recourse to legal proceedings

30.6.2 If the dispute or difference is not resolved as a result of such meeting, either party may (at such meeting or within ten (10) working Days from its conclusion) propose to the other in writing that structured negotiations be entered into with the assistance of a neutral advisor or mediator (the "**Neutral Advisor**")

30.6.3 If the parties are unable to agree on a Neutral Advisor or if the Neutral Advisor agreed upon is unable or unwilling to act, either party shall within ten (10) Working Days from the date of the proposal to appoint a Neutral Advisor or within ten (10) Working Days of notice to either party that he or she is

unable or unwilling to act, apply to the Centre for Dispute Resolution (the "**CEDR**") to appoint a Neutral Advisor

30.6.4    The parties shall within ten (10) Working Days of the appointment of the Neutral Advisor meet with him/her in order to agree a programme for the exchange of any relevant information and the structure to be adopted for the negotiations to be held in London.  If considered appropriate, the parties may at any stage seek assistance from the CEDR to provide guidance on a suitable procedure

30.6.5    Unless concluded within a written legally binding agreement all negotiations connected with the dispute shall be conducted in confidence and without prejudice to the rights of the parties in any future proceedings

30.6.6    If the parties accept the Neutral Advisor's recommendations or otherwise reach agreement on the resolution of the dispute, such agreement shall be reduced to writing and, once it is signed by their duly authorised representatives, shall be binding on the parties.  Such agreement shall be implemented in full within ten (10) Working Days or such other period as may be specified in such written agreement of signature failing which it shall be rendered null and void (and may not be referred to in any subsequent legal proceedings) unless legal proceedings have been initiated to enforce it by either party within a further ten (10) Working Days

30.6.7    Failing agreement, either of the parties may invite the Neutral Advisor to provide a non-binding but informative opinion in writing.  Such opinion shall be provided on a without prejudice basis and shall not be used in evidence in any proceedings commenced pursuant to the terms of this Agreement without the prior written consent of both parties

30.6.8    If the parties fail to reach agreement in the structured negotiations within forty (40) Working Days of the Neutral Advisor being appointed then any dispute or difference between them may be referred to the Courts

30.7    **Independent Person to determine delay**
Where the dispute or difference between the parties which was the subject of the Determination Notice shall have resulted in delay to the carrying out of the Base Building Works the Independent Person shall be entitled (inter alia) to award such extension of time for the fulfilment of the obligation in question in respect of such delay as shall in all circumstances be fair and reasonable

31.    **NOTICES**

31.1    **Service of Notices**
Save as provided in Clause 31.2, any notice, approval, election or other communication given or made in accordance with this Agreement shall be in writing and shall be:-

31.1.1  sent by registered (or its then equivalent) or recorded delivery post to the relevant party at such party's Address and if so sent shall be deemed to have been delivered, given or made on the date occurring 72 hours after the date it was sent; or

31.1.2  shall be personally delivered to the relevant party at such party's Address and if so delivered shall be deemed to have been delivered given or made on the date of delivery; and

31.1.3  notices to the Developer and the Developer's Surety shall be marked for the attention of Michael Ashley-Brown Esq at Canary Wharf Group plc  One Canada Square  Canary Wharf  London E14 5AB with a further copy sent to The Company Secretary at Canary Wharf Group plc  One Canada Square Canary Wharf London E14 5AB until such time as any change in addressees for this purpose shall be notified to the Tenant; and

31.1.4  requests and notices to the Tenant and to the Tenant's Surety shall each be marked for the attention of ~~Frank Bartolotta~~ _Simon John Williams_ at Lehman Brothers Limited, One Broadgate, London EC2M 7HA until such time as any change in addressees for this purpose shall be notified to the Developer

**31.2  Senior Managers' Notices**

The parties to this Agreement agree that any notice, approval, election or other communication given or made in accordance with this Agreement and relating to:-

31.2.1  amendments to the warranties provided by any Key Consultant, Substitute Consultant, Material Trade Contractor, Tenant's Consultant or Tenant's Contractor

31.2.2  alterations or additions to the Critical Dates Schedule

31.2.3  Tenant's Delay

31.2.4  Force Majeure events

31.2.5  approval of the Tenant's Works

31.2.6  alterations additions or variations to the Base Building Works

31.2.7  Tenant's Requested Modifications

31.2.8  Site visits and Site meetings

31.2.9  early access to Tenant's Works Areas and

31.2.10  disclosures of the type set out in Clause 33.4.1(h)

need only be served upon any of the receiving party's Senior Managers or its addressees referred to in Clause 31.1 pursuant to the provisions of Clause 31.1 and need not be served upon the Developer's Surety or the Tenant's Surety

## 32.    SENIOR MANAGERS

### 32.1    Designation of Senior Managers

The Developer and the Tenant each shall by notice in writing given to the other party designate not more than three (3) senior managers (each being herein referred to as a "**Senior Manager**" which expression shall include any persons appointed in place of the initial persons so designated) each of whom shall have authority to represent the relevant party for the purposes of any negotiations or discussions between the Developer and the Tenant, to approve all matters requiring the approval of the relevant party pursuant to this Agreement and to have involvement at the necessary times in the performance of the obligations contained in this Agreement and all matters associated or ancillary thereto at all relevant times for so long as any provision of this Agreement remains to be performed

### 32.2    Identity of Senior Managers

It is hereby acknowledged that the Developer has designated John Pagano and Tony Jordan and that the Tenant has designated ~~Frank Bartolotta~~ *Simon John Williams* and Mark Marcucci as their respective Senior Managers and that no further designation of a Senior Manager is required to be made by either the Developer or the Tenant and the Developer and the Tenant respectively covenant for the benefit of the other to use reasonable endeavours to ensure that one or more of the individuals named in this Clause 32.2 as a Senior Manager for the relevant party shall remain designated as a Senior Manager until the date which is twelve months after the date of Tenant's Works Practical Completion

### 32.3    Reliance upon Senior Managers

The Developer and the Tenant each acknowledges and represents to the other that the other may rely upon the directions of any one or more of its Senior Managers and that each such person has authority to act on behalf of the Developer or the Tenant (as the case may be) and to bind the Developer or the Tenant (as the case may be) in connection with this Agreement. Without prejudice to the generality of the foregoing written approvals TRM Authorisation Requests (and duplicates) and notices signed by a Senior Manager of the Developer or the Tenant (as appropriate) shall bind the relevant party for the purposes of this Agreement. Directions and other communications given to or received from any one or more of the Senior Managers shall be deemed given to and received from all of the Senior Managers

### 32.4    Change of Senior Managers

The Developer and the Tenant may by written notice to the other at any time hereafter change its designation of any of the Senior Managers appointed by it with effect from the date of such notice

## PART 12

## GENERAL PROVISIONS

33.    **GENERAL PROVISIONS**

33.1    **Invalidity of Certain Provisions**

If any term of this Agreement or the application of it to any person or circumstances shall to any extent be invalid or unenforceable the same shall be severable from the remainder of this Agreement and the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by the law

33.2    **Proper Law and Jurisdiction**

This Agreement shall be governed by and construed in accordance in all respects with English law and (without prejudice to Clause 30) the parties to this Agreement hereby submit to the non-exclusive jurisdiction of the High Court of Justice of England in relation to any claim dispute or difference which may arise under this Agreement and in relation to the enforcement of any judgement rendered pursuant to any such claim dispute or difference and for the purpose of Part 6.15 of Civil Procedure Rules 1998 the Tenant, the Developer and the Developer's Surety hereby irrevocably agree that any process may be served on any of them by leaving a copy of it at the relevant party's Address

33.3    **Social Contract Provisions**

The Tenant acknowledges that the Developer has drawn the attention of the Tenant to the desirability of:-

33.3.1    recruiting employees who reside in the Docklands area, advertising of job vacancies in the local press and the notification of vacancies to The Docklands Recruitment Centre which is located at 316 Poplar High Street London E14 0BB (Telephone: 020 7364 1118) and the Local Business Liaison Office which is located at 5th Floor One Canada Square Canary Wharf London E14 5AB (Telephone: 020 7537 5123/5124);

33.3.2    patronising tradesmen, suppliers, retailers and other businesses who carry out business in the Docklands area; and

33.3.3    the fostering of training facilities for residents of the Docklands area to secure as many people as may be practical to be suitably qualified for the range of job opportunities being created at the Development Site

33.4    **Confidentiality Provisions**

33.4.1    None of the parties to this Agreement shall without the prior written consent of all the other parties to this Agreement disclose or publish to any third party ("**Disclosure**") or make public announcement of wilfully or negligently permit

or cause Disclosure of any financial or other details whatsoever naming the parties hereto or otherwise relating to the transaction hereby effected except:-

(a) any particular extracts or details which must be the subject of Disclosure to comply with any Stock Exchange or any statutory requirements or the lawful requirements of any regulatory, governmental or official body

(b) to group companies or professional advisers of each of the parties who need to know such details and who have first agreed to be bound by the provisions of this Clause 33.4

(c) to the extent necessary to comply with any legal obligation or legal requirement

(d) to the extent necessary to comply with or give effect to the terms of this Agreement

(e) to the Inland Revenue, HM Land Registry or any other governmental, public or official body for taxation, rating or registration purposes

(f) to the extent they are already in the public domain, otherwise than as a result of a breach of this Clause 33.4

(g) that the Developer and/or the Tenant shall be entitled to issue a press release announcing this Agreement in a form which has been approved by the other party (such approval not to be unreasonably withheld)

(h) in the case of the Trade Contractors and Key Consultants and Consultants to whom the Developer may disclose an edited version of this Agreement which has been previously approved by the Tenant (such approval not to be unreasonably withheld where such edited version does not include any financial details) provided that if the Tenant does not approve or reasonably refuse to permit such Disclosure within five (5) Working Days of request by the Developer the Tenant shall be deemed to have approved such Disclosure and

(i) in the case of the Tenant's Consultants and the Tenant's Contractors to whom the Tenant may disclose an edited version of this Agreement which is in the same form as approved or deemed approved pursuant to Clause 33.4.1(h) (mutatis mutandis)

33.4.2    This Clause 33.4 shall remain in effect until the expiry of a period of two (2) years from the Base Building Works Practical Completion Date

33.4.3    This Clause 33.4 shall not apply to Disclosure by or on behalf of any party to this Agreement to any third parties and/or their professional advisers in pursuance of rent review arbitrations or determinations or negotiations or legal proceedings adjudications or other bona fide negotiations or dealings with and/or relating to the Development Site and/or the Building or any part thereof

(including for the avoidance of doubt disclosures by the Developer to any financier or the mortgagee or prospective financier or mortgagee of the Development Site and/or Building or any part of them) or the disposal of or acquisition of an interest in the whole or any part of the relevant party or any Group Company of the relevant party or any financing by the relevant party or any Group Company of the relevant party or any Disclosure to any insurers or prospective insurers of the Development Site and/or Building or any part of them or works in connection with or items on the same or pursuant to a dispute carried out in accordance with the provisions of Clause 30 of this Agreement

**33.5    Limitation of the Developer's Liability**

33.5.1    The Developer's obligations and duties in respect of the design, supervision, carrying out and completion of the Base Building Works and the fitness of the Base Building Works for the purposes of the Tenant shall be expressly limited to the express contractual obligations contained in this Agreement and any other right of action by either the Tenant, its successors in title or persons deriving title under it against the Developer whether in tort or otherwise is hereby excluded

33.5.2    The Tenant hereby waives all of its rights (if any) in respect of any claims for loss of profits loss of business or indirect losses or consequential damages of any kind arising from any breach by the Developer of its obligations contained in this Agreement

33.5.3    The obligations and liabilities of the Developer under this Agreement (other than to grant the Lease) are personal and shall not bind successors in title and any covenants on the part of the Developer which would otherwise be implied by law and which might conflict with this Clause 33.5.3 are hereby expressly excluded

**33.6    No Assignment of this Agreement**

33.6.1    The benefit of this Agreement shall be personal to the Tenant and shall be non-assignable by it otherwise than to a Group Company of the Tenant Provided That (notwithstanding Clause 27.6) upon and as a precondition to any such assignment the Tenant's Surety shall first enter into a separate guarantee of the obligations of the assignee upon the same terms (mutatis mutandis) as Clause 27 and Provided Further That if such assignee shall cease to be a Group Company of the Tenant's Surety the benefit of this Agreement shall be assigned to another Group Company of the Tenant's Surety before such cessation and the Tenant's Surety shall enter into a separate guarantee in the same form as aforesaid

33.6.2    Save as provided below the benefit of this Agreement shall be personal to the Developer and shall be non-assignable by it provided that nothing contained in this Agreement shall prevent:-

(a)     The Developer from dealing with its interest in and with the benefit of
the Agreement in order to seek and obtain financing for the purposes of
enabling it to perform its obligations pursuant to this Agreement and/or
for the purposes of entering into financing or finance leasing or
securitisation arrangements relating to this Agreement or the Site or any
part of the Development Site and/or for tax planning purposes and/or
from entering into any agreement to deal with its interest upon or
following Base Building Works Practical Completion; or

(b)     any mortgagee, chargee or assignee by way of security of the benefit of
this Agreement from assigning the benefit of this Agreement following
enforcement of its security or from requiring the Tenant and the
Tenant's Surety in accordance with the provisions of this Agreement to
accept the Lease

33.6.3     The Tenant and the Tenant's Surety confirm and agree that following
enforcement of security by any mortgagee, chargee or assignee by way of
security of the Developer's interest in this Agreement the Tenant and the
Tenant's Surety shall owe identical obligations to such mortgagee, chargee or
assignee

## 33.7    Maintenance of covenant strength

33.7.1     If at any time any group restructuring or transfer of assets or liabilities or
business merger or amalgamation or re-rating of any entity takes place which
results in the credit rating of Lehman Brothers Holdings Inc. from Standard &
Poor's Rating Group a division of McGraw Hill Inc. (subject to the provisions
of the second proviso to the definition of Acceptable Assignee in the Lease
(mutatis mutandis) in the event that Standard & Poor's ceases to exist or no
longer carries out such evaluations (in respect of its senior unsecured
unsubordinated and unguaranteed long term debt no longer being the highest
such rated covenant of all Group Companies of Lehman Brothers Holdings
Inc. (excluding for these purposes Lehman Brothers, Inc; Lehman Brothers
Japan Inc.; Lehman Brothers Financial Products Inc.; Lehman Brothers
Derivative Products Inc.; Lehman Re Ltd (Bermuda); Lehman Brothers
International Europe; Lehman Brothers Bankhaus AG; Lehman Brothers Bank
FSB; Lehman Brothers Syndicated Loan Funding Trust (LSLFT) and
successors to and, in each case whether or not similar to the foregoing and in
any jurisdiction, additional regulated rated entities which would suffer a
capital charge or other increased cost imposed by reason of capital adequacy
measures by any regulatory authority in any jurisdiction or which would be
prohibited from giving such a guarantee under any applicable law or
regulation in any jurisdiction or which would suffer from crowding out of
other business by giving such a guarantee or equivalent entities within the
Group Companies of Lehman Brothers Holdings Inc. and in addition
non-regulated credit-wrapped entities set up for the purpose of a specific
business and special purpose vehicles set up for the purposes of raising off or

on balance sheet finance in any jurisdiction (but so that the Tenant and the Tenant's Surety agree and confirm that the general wording of this exclusion shall be applied in good faith and not so as to undermine the intent that the Tenant and the Tenant's Surety are to procure that (subject to the exclusions) the highest rated entity in the Group from time to time will act as the Tenant's Surety) (each an "Excluded Group Company")) the Tenant shall forthwith notify the Developer and if so requested by the Developer (or its successors in title) shall procure that the Group Company of Lehman Brothers Holdings Inc. which is not an Excluded Group Company and which has the highest such rating (the "**Additional Party**") as quickly as reasonably practicable enters into a deed of novation (the "**Deed of Novation**") in such form as the Developer (or its successor in title) shall reasonably require of the Tenant's Surety obligations under this Agreement and shall expressly confirm that its liability extends to events or matters arising from the date of this Agreement and on completion of the Deed of Novation Lehman Brothers Holdings Inc. shall be released absolutely from its obligations under this Agreement and the Developer (or its successor in title) and the Developer's Surety shall expressly confirm that Lehman Brothers Holdings Inc. has no liability whatsoever in respect of this Agreement as from the date of this Agreement

33.7.2 If the Additional Party is not a limited company incorporated in England and Wales the Tenant shall procure that a Letter of Opinion is provided in relation to the Additional Party upon completion of the Deed of Novation

33.7.3 As from the date of completion of the Deed of Novation the provisions of Clause 33.7.1 shall apply to the Additional Party as if it were named in place of Lehman Brothers Holdings, Inc. in Clause 33.7.1

33.8 **Interest on Late Payments**

If and so often as any of the sums payable hereunder by the Tenant to the Developer or by the Developer to the Tenant shall be unpaid after becoming due and payable the party from whom such payment shall be due shall pay on demand interest on such unpaid sums from the due date until payment in cleared funds at the Interest Rate

33.9 **Further Assurance**

Each of the parties to this Agreement hereby agrees to do or cause to be done all acts and things and enter into any deed or document, either severally or jointly with third parties, which the Tenant or the Developer may reasonably consider necessary or desirable to give effect to this Agreement

33.10 **Terms of Contract and Incorporation of other Agreements**

33.10.1 The parties acknowledge that:-

(a) this Agreement;

(b) the Annexures;

(c)    any plan, inventory or agreed form of document annexed to this
Agreement or signed or initialled for identification with, and on the
entering into of, this Agreement (whether individually or as part of a
bundle or volume so signed or initialled); and

(d)    any additional provision or variation of any term of this Agreement
agreed in writing between the parties (or, with their authority, their
respective Solicitors) on the entering into of this Agreement (any such
additional provision or variation being incorporated into this Agreement
by this provision)

contain all of the terms of the contract between them for the construction of
the Demised Premises forming part of the Building to be constructed on the
Site and the leasing of them to the Tenant

33.10.2    To the extent necessary to ensure the legal validity of this Agreement there are
incorporated in this Agreement the following documents (save where
otherwise stated) dated today's date:-

(a)    the Call Option Agreement;

(b)    the Put Option Agreement;

(c)    the First Offer Agreement;

(d)    Car Parking Agreement;

(e)    Deed of Variation Option

## 33.11    Modifications of Agreement

No modification, alteration or waiver of any of the provisions of this Agreement,
except as otherwise provided in it, shall be effective unless the same is in writing and
signed by the party against which the enforcement of such modification, alteration or
waiver is sought

## 33.12    No Waiver

The failure of any party at any time to require performance by any other party of any
provision of this Agreement shall in no way affect the right of such party to require
performance of that provision

## 33.13    Merger of Prior Agreements

This Agreement, the documents incorporated in this Agreement and the Annexures
contain the entire agreement between the parties relating to the transactions
contemplated by it or them and all other prior or contemporaneous agreements,
understandings, representations and statements, whether oral or written relating to the
transactions so contemplated, are merged in this Agreement

33.14 **Costs**

It is hereby agreed that each party to this Agreement shall bear its own costs in connection with the drafting, negotiation and completion of this Agreement and the transactions contemplated by it

33.15 **Third Party Rights**

A person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Agreement but this does not affect any right or remedy of a third party which exists or is available apart from that Act

33.16 **Plinth**

The Tenant shall be entitled (subject to obtaining the Developer's approval (which it may give or withhold in its absolute discretion) and subject to obtaining all planning and other third party consents thereto) to erect a plinth outside the Demised Premises indicating the name of the Tenant and its business

**I N   W I T N E S S** whereof the parties have executed this Agreement as a deed and intend the same to be delivered on the day and year first before written

## SCHEDULE 1

### JEWISH HOLY DAYS

**Year 2001**

| | |
|---|---|
| First Day Passover | Sunday, April 8 |
| Second Day Passover | Monday, April 9 |
| Seventh Day Passover | Saturday, April 14 |
| Eighth Day Passover | Sunday, April 15 |
| First Day Shavuoth | Monday, May 28 |
| Second Day Shavuoth | Tuesday, May 29 |
| First Day Rosh Hashanah | Tuesday, September 18 |
| Second Day Rosh Hashanah | Wednesday, September 19 |
| Yom Kippur | Thursday, September 27 |
| First Day Sukkoth | Tuesday, October 2 |
| Second Day Sukkoth | Wednesday, October 3 |
| Shemini Azereth | Tuesday, October 9 |
| Simchath Torah | Wednesday, October 10 |

**Year 2002**

| | |
|---|---|
| First Day Passover | Thursday, March 28 |
| Second Day Passover | Friday, March 29 |
| Seventh Day Passover | Wednesday, April 3 |
| Eighth Day Passover | Thursday, April 4 |
| First Day Shavuoth | Friday, May 17 |
| Second Day Shavuoth | Saturday, May 18 |
| First Day Rosh Hashanah | Saturday, September 7 |
| Second Day Rosh Hashanah | Sunday, September 8 |
| Yom Kippur | Monday, September 16 |
| First Day Sukkoth | Saturday, September 21 |
| Second Day Sukkoth | Sunday, September 22 |
| Shemini Azereth | Saturday, September 28 |
| Simchath Torah | Sunday, September 29 |

**Year 2003**

| | |
|---|---|
| First Day Passover | Thursday, April 17 |
| Second Day Passover | Friday, April 18 |
| Seventh Day Passover | Wednesday, April 23 |
| Eighth Day Passover | Thursday, April 24 |
| First Day Shavuoth | Friday, June 6 |
| Second Day Shavuoth | Saturday, June 7 |
| First Day Rosh Hashanah | Saturday, September 27 |
| Second Day Rosh Hashanah | Sunday, September 28 |

| | |
|---|---|
| Yom Kippur | Monday, October 6 |
| First Day Sukkoth | Saturday, October 11 |
| Second Day Sukkoth | Sunday, October 12 |
| Shemini Azereth | Saturday, October 18 |
| Simchath Torah | Sunday, October 19 |

**Year 2004**

| | |
|---|---|
| First Day Passover | Tuesday, April 6 |
| Second Day Passover | Wednesday, April 7 |
| Seventh Day Passover | Monday, April 12 |
| Eighth Day Passover | Tuesday, April 13 |
| First Day Shavuoth | Wednesday, May 26 |
| Second Day Shavuoth | Thursday, May 27 |
| First Day Rosh Hashanah | Thursday, September 16 |
| Second Day Rosh Hashanah | Friday, September 17 |
| Yom Kippur | Saturday, September 25 |
| First Day Sukkoth | Thursday, September 20 |
| Second Day Sukkoth | Friday, October 1 |
| Shemini Azereth | Thursday, October 7 |
| Simchath Torah | Friday, October 8 |

**Year 2005**

| | |
|---|---|
| First Day Passover | Sunday, April 24 |
| Second Day Passover | Monday, April 25 |
| Seventh Day Passover | Saturday, April 30 |
| Eighth Day Passover | Sunday, May 1 |
| First Day Shavuoth | Monday, June 13 |
| Second Day Shavuoth | Tuesday, June 14 |
| First Day Rosh Hashanah | Tuesday, October 4 |
| Second Day Rosh Hashanah | Wednesday, October 5 |
| Yom Kippur | Thursday, October 13 |
| First Day Sukkoth | Tuesday, October 18 |
| Second Day Sukkoth | Wednesday, October 19 |
| Shemini Azereth | Tuesday, October 25 |
| Simchath Torah | Wednesday, October 26 |

## SCHEDULE 2

(FORM OF DEED OF ACKNOWLEDGEMENT OF CERTAIN DEVELOPER'S OBLIGATIONS)

**T H I S   D E E D** is made

**B E T W E E N:-**

(1)    **HERON   QUAYS   PROPERTIES   LIMITED**   (Company   Registration Number 2276627) whose registered office as at One Canada Square Canary Wharf London E14 5AB (hereinafter called the **"Developer"**);

(2)    **CANARY WHARF GROUP PLC** whose registered office is at One Canada Square Canary Wharf London E14 5AB (Company   Registration Number 3114622) (the **"Developer's Surety"**); and

(3)    [                                        ] (hereinafter called the **"Assignee"**)

**W H E R E A S**

(A)    Pursuant to [Clause 4.21] of the Underlease the Tenant has assigned the benefit of the Underlease to the Assignee and the Tenant has further assigned the benefit of Clauses 20.4 and 20.5 of the Agreement for Lease to the Assignee

(B)    Pursuant to the Agreement for Lease the Developer has agreed to acknowledge that its obligations under Clauses 20.4 and 20.5 of the Agreement for Lease continue to subsist for the benefit of the Assignee

(C)    In consideration of the Assignee entering into this Agreement with the Developer the Developer's Surety is entering into this Agreement to guarantee the Developer's obligations

**N O W   T H I S   D E E D   W I T N E S S E T H:**

1.    In this Deed where the context otherwise requires the following words and expressions shall have the meanings hereunder assigned to them

     **"Agreement for Lease"** means an agreement for lease dated [        ] 2001 made between, inter alia, the Developer (1) and Lehman Brothers Limited (2) in relation to Building HQ2, Canary Wharf, London E14

     **"the Tenant"** means [                ]

     **"the Underlease"** means a lease dated [                ] made between, inter alia, the Developer (1) Canary Wharf Management Limited (2) and [Lehman Brothers Limited] (3) in relation to Building HQ2, Canary Wharf, London E14

2.    The Developer hereby acknowledges (for the purposes of enforcement) that with effect from [                ] references to the Tenant detailed in Clauses 20.4 and 20.5 of the Agreement for Lease shall be deemed to be references to the Assignee and that the Assignee (in substitution for the Tenant) shall be entitled to rely upon and enforce the

terms of Clauses 20.4 and 20.5 against the Developer to the same extent as the Tenant would have been so entitled

3.1    The Developer's Surety hereby covenants with the Assignee as a primary obligation that the Developer or the Developer's Surety shall at all times duly perform and observe all the covenants on the part of the Developer contained in this Deed and the Developer's Surety shall indemnify and keep indemnified the Assignee against all claims demands losses damages liability costs fees and expenses whatsoever sustained by the Assignee by reason of or arising out of any default by the Developer in the performance and observance of any of its obligations Provided That the Assignee shall take such steps as shall be reasonable to mitigate such loss having regard to the nature of the breach

3.2    The Developer's Surety hereby further covenants with the Assignee that the Developer's Surety is jointly and severally liable with the Developer (whether before or after any disclaimer by a liquidator or trustee in bankruptcy) for the fulfilment of all the obligations of the Developer under this Deed and agrees that the Assignee in the enforcement of its rights hereunder may proceed against the Developer's Surety as if the Developer's Surety were named as the Developer in this Deed

3.3    The Developer's Surety hereby waives any right to require the Assignee to proceed against the Developer or to pursue any other remedy whatsoever which may be available to the Assignee before proceeding against the Developer's Surety and the terms of this Clause 3.3 shall be a continuing guarantee and shall remain in full force and effect until each and every part of the obligations and covenants on the part of the Developer shall have been discharged and performed in full

3.4    The Developer's Surety hereby further covenants with the Assignee that the Developer's Surety shall not claim in any liquidation bankruptcy composition or arrangement of the Developer in competition with the Assignee and shall remit to the Assignee the proceeds of all judgements and all distributions it may receive from any liquidator trustee in bankruptcy or supervisor of the Developer and shall hold for the benefit of the Assignee all security and rights the Developer's Surety may have over assets of the Developer whilst any liabilities of the Developer or the Developer's Surety to the Assignee remain outstanding

3.5    The Developer's Surety shall not be entitled to participate in any security held by the Assignee in respect of the Developer's obligations to the Assignee under this Deed or to stand in the place of the Assignee in respect of any such security until all the obligations of the Developer or the Developer's Surety to the Assignee under this Deed have been performed or discharged

3.6    None of the following or any combination thereof shall release discharge or in any way lessen or affect the liability of the Developer's Surety under this Deed:-

3.6.1    any neglect delay or forbearance of the Assignee in endeavouring to obtain payment of amounts required to be paid by the Developer or in enforcing the

performance or observance of any of the obligations of the Developer under this Deed

3.6.2    any extension of time given by the Assignee to the Developer

3.6.3    any variation of the terms of this Deed with or without the consent of the Developer's Surety or the assignment of this Deed

3.6.4    any change in the identity constitution structure or powers of any of the Developer the Developer's Surety or the Assignee or the liquidation administration or bankruptcy (as the case may be) of either the Developer or the Developer's Surety

3.6.5    any legal limitation or immunity disability or incapacity of the Developer (whether or not known to the Assignee) or the fact that any dealings with the Assignee by the Developer may be outside or in excess of the powers of the Developer; and

3.6.6    any other act omission matter or thing whatsoever whereby but for this provision the Developer's Surety would be exonerated either wholly or in part (other than a release under seal given by the Assignee)

3.7    The Developer's Surety hereby further covenants with the Assignee that if:-

3.7.1    an order is made or a resolution passed for the winding up of the Developer (other than the winding up whilst solvent for the purposes of amalgamation or reconstruction with the prior written consent of the Assignee such consent not to be unreasonably withheld or delayed); or

3.7.2    a provisional liquidator is appointed in respect of the Developer; or

3.7.3    a petition is presented or a meeting convened for the purposes of winding up the Developer; or

3.7.4    an administrative order is made or petition for such order presented in respect of the Developer; or

3.7.5    a receiver (including an administrative receiver) is appointed in respect of the Developer or any of its assets; or

3.7.6    a voluntary arrangement is proposed pursuant to Section 1 of the Insolvency Act 1986 in respect of the Developer; or

3.7.7    an event analogous to those described in sub-clauses 3.7.1 to 3.7.2 (inclusive) occurs in relation to the Developer in any jurisdiction; or

3.7.8    the Developer shall cease for any other reason (other than an express release) to be or to remain liable under this Deed; or

3.7.9    the Developer ceases for any reason to maintain its corporate existence; or

3.7.10    the Crown or a liquidator or trustee in bankruptcy shall disclaim this Deed

THEN the Developer's Surety shall, if the Assignee by notice in writing given to the Developer's Surety within six (6) months following any such event so requires, execute and deliver to the Assignee an agreement in similar form to this Deed (mutatis mutandis) (but excluding this Clause 3) but with the Developer's Surety substituted for the Developer and the Developer's Surety shall thereupon assume all the obligations and have all the rights of the Developer as if the Developer's Surety had been an original contracting party to this Deed in place of the Developer

3.8    The Developer's Surety hereby warrants and represents to the Assignee that it has full power and authority to give this guarantee

3.9    This guarantee shall enure for the benefit of the successors and assigns of the Assignee under this Deed without the necessity of any assignment thereof

I N   W I T N E S S whereof the parties have executed this Deed as a deed the day and year first above written

Executed as a Deed by                            )
HERON QUAYS PROPERTIES LIMITED  )
acting by:-                                      )


Executed.as a Deed by                            )
CANARY WHARF GROUP PLC                           )
acting by:-                                      )


Executed as a Deed by                            )
[ASSIGNEE]                                       )
acting by:-                                      )

## SCHEDULE 3

### (FORM OF LICENCE RE TENANT'S WORKS)

**THIS LICENCE** is made the                day of                Two thousand and [        ]

**BETWEEN** (1) the Developer (2) the Tenant and (3) the Tenant's Surety

**WITNESSETH** as follows:-

1.      IN this Licence save where the context otherwise requires the following words and
        expressions have the meanings hereunder assigned to them:-

        1.1      **"Developer"**, **"Tenant"** and **"Tenant's Surety"** respectively mean the parties
                 whose name and registered office are set forth in the First Schedule and their
                 successors in title

        1.2      **"Premises"** means the premises described in the Second Schedule

        1.3      **"Lease"** means the lease of the Premises made between, inter alia, the parties
                 hereto and dated [        ] for a term of 30 years from [        ]

        1.4      **"Drawings"** means the drawings specified in Part 1 the of Third Schedule
                 copies of which are annexed to this Licence

        1.5      **"Specifications"** means the specifications specified in Part 2 of the Third
                 Schedule copies of which are annexed to this Licence

        1.6      **"Works"** means the alterations to the Premises carried out in conformity with
                 the Drawings and Specifications

2.      THE Developer has granted to the Tenant licence and consent for the carrying out of
        the Works

3.      THE Tenant covenants with the Developer:-

        3.1      to pay any increased insurance premiums (together with any insurance premium
                 tax thereon) that may be occasioned by reason of the Works

        3.2      on the expiration or sooner determination of the Lease howsoever determined, at
                 the option of the Tenant, either (1) if and only if so required by the Developer at
                 the cost of the Tenant to reinstate and make good the Premises and for this
                 purpose to obtain all consents and orders of any Local Authority Planning
                 Authority Fire Control Authority or any other body from whom such consents
                 or orders are required to be obtained and to make all payments therefor in the
                 same manner, or (2) to pay to the Developer a lump sum equal to the proper
                 cost of so reinstating the Premises (in each case in accordance with the covenant
                 to that effect contained in the Lease)

4.      IT is agreed and declared that:

4.1   The covenants on the part of the Tenant and the Tenant's Surety and the conditions contained in the Lease shall take effect subject to and with the benefit of this Licence

4.2   The proviso for re-entry in the Lease shall be exercisable on breach of any of the covenants in this Licence on the part of the Tenant as well as on the happening of any of the events mentioned in the said proviso

4.3   Save as varied by this Licence the covenants and conditions in the Lease (including for the avoidance of doubt, the Tenant's Surety's guarantee covenants) shall remain in full force and effect

IN WITNESS whereof the parties hereto have executed this Licence as a deed and intend the same to be delivered on the day and year first above written

## THE FIRST SCHEDULE

### (The Parties)

(a)    "the Developer"    :    whose registered office is at

(b)    "the Tenant"    :    whose registered office is at

(c)    "the Tenant's Surety"    whose registered office is at

## THE SECOND SCHEDULE

### (The Premises)

## THE THIRD SCHEDULE

## PART 1

### (The Drawings)

| Number | Title | Prepared by |
|--------|-------|-------------|

## PART 2

### (The Specifications)

| Executed as a Deed by | ) |
|---|---|
| [Developer] acting by:- | ) |

Director

Secretary

Executed as a Deed by                    )
[Tenant] acting by:-                     )


                                         Director


                                         Secretary




Executed as a Deed by                    )
[Tenant's Surety] acting by              )


                                         Director


                                         Secretary

## SCHEDULE 4

### METHOD STATEMENT MATTERS

1.    details of the professional team and contractors for the design and carrying out of each part of the Tenant's Works

2.    details of the proposed construction schedule for the Tenant's Works

3.    proposals for the liaison, co-ordination and co-operation between the Developer and/or CWCL and the Tenant's Consultants and the Tenant's Senior Managers (as defined in Clause 32) and the Tenant's Contractors and the Tenant's Representative

4.    proposals for the means and times of access to the proposed Tenant's Work Areas and other parts of the Building and the Site and the restrictions and regulations relative to such access

5.    proposals for the date and times of delivery to the Site of materials and equipment intended for incorporation or use in the Tenant's Works

6.    proposals for the storage on-site of the materials and equipment intended for incorporation in the Tenant's Works

7.    proposals for the method by which, on a regular basis, surplus materials and refuse and rubbish of the Tenant, its contractors, servants and agents are to be removed from the areas of the Development Site, the Site and the Building to which such persons shall have access to the areas reasonably and properly designated by the Developer and/or CWCL as collection points or to areas outside the Development Site

8.    proposals for keeping free and unobstructed all escape routes in relation to the Building and procuring that all vehicles visiting the Building in connection with the Tenant's Works go directly to the unloading points designated in writing to the Tenant for such purpose from time to time by the Developer and/or CWCL and leave the Building, the Site and the Development Site promptly upon unloading being completed to the extent reasonably able to do so

9.    proposals complying in all respects with the requirements and procedures of the Developer and/or CWCL notified in writing to the Tenant in respect of the delivery of materials for use in connection with the Tenant's Works including the days and hours on and within which deliveries may be made provided always that no restriction shall be placed in respect of deliveries solely by reason of a day being a Holy Day

10.    where appropriate proposals for consulting and thereafter complying in all proper respects with the proper requirements of the police and all relevant statutory authorities in respect of the delivery of materials for use in connection with the Tenant's Works

11.    proposals for complying in all respects with the safety and floor loading requirements of the Developer and/or CWCL notified in writing to the Tenant in respect of the storage of materials in connection with the Tenant's Works