# Exhibit 22

**CLIFFORD CHANCE**

CLIFFORD CHANCE LLP

10·26

DATED 20 December 2010

(1) HERON QUAYS (HQ2) T1 LIMITED AND HERON QUAYS (HQ2) T2 LIMITED

(2) MORGAN PROPERTY DEVELOPMENT COMPANY LIMITED

(3) CANARY WHARF HOLDINGS LIMITED

(4) HQCB PROPERTIES (HQ2) LIMITED

---

AGREEMENT
RELATING TO
THE SALE OF A LEASE OF 25 BANK STREET, CANARY
WHARF, LONDON E14 5LE

---

# CONTENTS

| Clause | | Page |
|---|---|---|
| 1. | Definitions | 1 |
| 2. | Interpretation | 6 |
| 3. | Sale and Purchase | 6 |
| 4. | Price and means of payment | 6 |
| 5. | Completion documents | 7 |
| 6. | Completion | 7 |
| 7. | Interest | 11 |
| 8. | Apportionments | 12 |
| 9. | Insurance | 13 |
| 10. | Title | 13 |
| 11. | Dealings with Agreement | 15 |
| 12. | Noting of Agreement | 17 |
| 13. | Designation of documents as exempt information documents | 17 |
| 14. | Confidentiality | 18 |
| 15. | Notices | 19 |
| 16. | Non-merger | 20 |
| 17. | Entire agreement | 20 |
| 18. | Costs | 21 |
| 19. | Third party rights | 21 |
| 20. | Governing law, jurisdiction | 21 |
| 21. | Invalidity of certain provisions | 21 |
| 22. | CWHL'S Guarantee | 21 |
| 23. | Indemnities | 23 |

SCHEDULE 1 Agreed form of Transfer .......... 24

SCHEDULE 2 Seller's Bank Account Details .......... 25

SCHEDULE 3 Restructuring Documents .......... 26

SCHEDULE 4 Existing Lease .......... 29

SCHEDULE 5 Existing Lease Documents .......... 30

SCHEDULE 6 Charges to be released prior to Actual Completion .......... 34

SCHEDULE 7 HQPL Underlease Documents .......... 35

SCHEDULE 8 Form of Rent Authority Letter ..................................................................... 36

SCHEDULE 9 Form of Deed of Covenant ........................................................................ 38

AN AGREEMENT made the 20th day of December 2010

BETWEEN:-

(1) **HERON QUAYS (HQ2) T1 LIMITED** (company registration no: 04290562) and **HERON QUAYS (HQ2) T2 LIMITED** (company registration 04290529) each of whose registered office is at One Canada Square, Canary Wharf, London, E14 5AB (together the "Seller");

(2) **MORGAN PROPERTY DEVELOPMENT COMPANY LIMITED** (company registration no: 02081140) whose registered office is at 125 London Wall, London EC2Y 5AJ (the "Buyer");

(3) **CANARY WHARF HOLDINGS LIMITED** (company registration no: 02798284) whose registered office is at One Canada Square, Canary Wharf, London E14 5AB ("CWHL"); and

(4) **HQCB PROPERTIES (HQ2) LIMITED** (company registration no: 04290530) whose registered office is at One Canada Square, Canary Wharf, London E14 5AB ("HQCB").

**IT IS AGREED** as follows:-

1. **DEFINITIONS**

    In this Agreement the following expressions shall have the following meanings:-

    "**2005 Leasehold Transfer**" means the leasehold transfer of part of the Building dated 16 March 2005 between (1) Heron Quays Properties Limited (2) Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (3) Canary Wharf Investments Limited (4) Canary Wharf Limited and (5) Canary Wharf Management Limited;

    "**Actual Completion**" means completion of the sale of the Property pursuant to this Agreement;

    "**Agreed Form**" means in relation to any document, the form of that document (or the draft of it) which as between the parties to this Agreement is in an agreed form and attached to this Agreement in the Annexures;

    "**Agreement for Lease**" means the agreement for lease of even date relating to the grant of a 999 year lease of 25 Bank Street, Canary Wharf, London E14 5LE and made between HQCB Investments Limited (1) JPMorgan Chase Bank, National Association (2) Canary Wharf Holdings Limited (3) Heron Quays Properties Limited (4) Canary Wharf Management Limited (5) Canary Wharf Investments Limited (6) Canary Wharf Limited (7); Heron Quays (HQ2) T1 Limited, Heron Quays (HQ2) T2 Limited and HQCB Properties (HQ2) Limited (8), Canary Wharf Contractors Limited (9)

    "**Building**" means the building and structures known as 25 Bank Street, Canary Wharf, London E14 5LE;

    "**Buyer's Group Company**" means:

(a)   JPMorgan Chase Bank, National Association or the Buyer; or

(b)   their subsidiaries, their holding companies and any other subsidiaries of their holding companies, their subsidiary undertakings, their parent undertakings and any other subsidiary undertakings of their parent undertakings (as those expressions are defined in the Companies Act 1985 or the Companies Act 2006 as applicable);

and "**Buyer Group Company**" means any such company;

"**Buyer's Solicitors**" means Mayer Brown International LLP of 201 Bishopsgate, London EC2M 3AF (Ref: 20181.10023065), or such other solicitors as the Buyer may, by notice in writing from time to time to the Seller or to the Seller's Solicitors, nominate for the purposes of this Agreement;

"**Canary Wharf Group Companies**" means Canary Wharf Group Plc, any holding company of Canary Wharf Group Plc and the subsidiaries and subsidiary undertakings from time to time of Canary Wharf Group Plc and of any such holding company and "**Canary Wharf Group Company**" means any such company;

"**CWML**" means Canary Wharf Management Limited;

"**CWHL CMA Guarantee**" has the meaning given to that expression in the Agreement for Lease;

"**Clearing Bank**" means a bank which is a shareholder in CHAPS Clearing Company Limited;

"**Completion**" means the date on which Actual Completion occurs;

"**Completion Date**" has the meaning given to that expression in the Agreement for Lease;

"**Completion Time**" means 2.30 p.m;

"**Construction Management Agreement**" has the meaning given to that expression in the Agreement for Lease;

"**Current Rent Period**" means the period of one year commencing on the 1 January prior to the date of Actual Completion;

"**Deed of Covenant**" means the document in the form attached as Schedule 9;

"**Defects Deed**" has the meaning given to that expression in the Agreement for Lease;

"**Demised Premises**" means the Building more particularly described in the Existing Lease;

"**Disposition**" means any disposal of or dealings with any interest in the Property or the Existing Lease whether for valuable consideration or otherwise and includes any mortgage or charge;

"**DLR Agreement for Supplemental Lease**" has the meaning given to that expression in the Agreement for Lease;

"**Estate**" has the meaning given to it in the Lease;

"**Event of Default**" means any of the following:-

(a) if the Buyer, the Seller or CWHL:-

    (i) calls, or a nominee on its behalf calls, a meeting of any of its creditors; or makes an application to the Court under Section 896 of the Companies Act 2006; or submits to any of its creditors a proposal under Part I of the Insolvency Act 1986; or enters into any arrangement, scheme, compromise, moratorium or composition with any of its creditors (whether under Part I of the Insolvency Act 1986 or otherwise); or

    (ii) has an administrative receiver or a receiver or a receiver and manager appointed in respect of its property or assets or any part; or

    (iii) has an administrator appointed in respect of it; or

    (iv) passes a winding-up resolution (other than a voluntary winding-up whilst solvent for the purposes of an amalgamation or reconstruction which has the prior written approval of the Seller (in the case of the Buyer) or the prior written approval of the Buyer (in the case of the Seller or CWHL) each of the Seller and the Buyer (as applicable) acting reasonably; or passes a resolution that it be wound-up voluntarily; or resolves to present its own winding-up petition; or is wound-up (whether in England or elsewhere); or has a liquidator or provisional liquidator appointed; or

    (v) shall cease for any reason to maintain its corporate existence; or is struck off the register of companies; or otherwise ceases to exist; or

(b) if analogous proceedings or events to those referred to in this clause shall be instituted or occur in relation to the Buyer, the Seller or CWHL elsewhere than in the United Kingdom; or

(c) if the Buyer or any person acting on behalf of the Buyer breaches clause 13;

"**Existing Lease**" has the meaning given to it in Schedule 4;

"**Existing Lease Documents**" means those documents listed in Schedule 5;

"**Facilities Services Agreement**" has the meaning given to that expression in the Agreement for Lease;

"**holding company**" has the meaning given to it in Section 1159 of the Companies Act 2006;

"**HQCB Investments Limited**" means HQCB Investments Limited (company registration no: 04353135) whose registered office is at One Canada Square, Canary Wharf, London E14 5AB;

"**HQPL**" means Heron Quays Properties Limited;

"**HQPL Underlease**" means the underlease of floors 18 and 19 of the Building dated 10 December 2010 made between Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) HQPL (2) CWHL (3) and CWML (4).

"**HQPL Underlease Documents**" means the documents listed in Schedule 7;

"**Inventory**" has the meaning given to that expression in the Agreement for Lease;

"**Inventory Items**" has the meaning given to that expression in the Agreement for Lease;

"**Lease**" has the meaning given to that expression in the Agreement for Lease;

"**Lehman**" means Lehman Brothers Limited (company registration no. 00846922 (in administration);

"**Lehman Lease**" has the meaning given to that expression in the Agreement for Lease;

"**Liability**" means all losses damage claims actions proceedings costs fees expenses and other liability of any nature made against or incurred by the relevant party;

"**LRR**" means the Land Registration Rules 2003;

"**Occupational Underlease**" means an underlease of floor 18 and floor 19 of the Building dated 10 December 2010 made between HQPL (1) JLL (2) CWHL (3) and CWML (4).

"**Planning Acts**" means the Town and Country Planning Act 1990, the Planning (Listed Buildings and Conservation Areas) Act 1990, the Planning (Hazardous Substances) Act 1990, the Planning (Consequential Provisions) Act 1990, the Planning and Compensation Act 1991 and the Planning and Compulsory Purchase Act 2004, and includes any other applicable town and country planning legislation;

"**Planning Report**" means the Planning Report of even date relating to the Building produced by the Seller's Solicitors;

"**Prescribed Rate**" means 3% per annum above the base rate from time to time of HSBC Bank PLC;

"**Price**" means the sum of two hundred and fifty thousand pounds sterling (£250,000) (inclusive of VAT, if any);

"**Principal Rent**" means the principal rent payable under the HQPL Underlease;

"**Property**" means the leasehold property comprised in the Existing Lease and the 2005 Leasehold Transfer as more particularly described in the Transfer;

"**Replies to Enquiries**" has the meaning given to that expression in the Agreement for Lease;

"**Restructuring Documents**" means the documents set out in Schedule 3 which are to be entered into by the relevant Canary Wharf Group Companies referred to in Schedule 3;

"**Seller**" means the party named above as Seller;

"**Seller's Assignment of Cabling Guarantees**" has the meaning given to that expression in the Agreement for Lease;

"**Seller's Designation Application**" means, as applicable, an application by the Seller to designate this Agreement and/or any other document as requested by the Land Registry in accordance with clause 13.1 as an exempt information document under Rule 136 of the LRR;

"**Seller's Solicitors**" means Clifford Chance LLP of 10 Upper Bank Street, London, E14 5JJ (Ref: 70-40394288/AMB), or such other solicitors as the Seller may, by notice in writing from time to time to the Buyer or to the Buyer's Solicitors, nominate for the purposes of this Agreement;

"**Seller's Solicitors' Bank Account**" means the account details of which are set out in **Schedule 2** or such other client account of the Seller's Solicitors with a Clearing Bank details of which are notified in writing to the Buyer at least two (2) Working Days before the Completion Date;

"**Sellers**" means the Seller and HQCB;

"**subsidiary undertaking**" is to be construed in accordance with section 1162 (and Schedule 7) of the Companies Act 2006;

"**Tax**" and "**Taxation**" means any form of taxation and any levy, duty, charge, assessment, contribution, withholding or impost of whatever nature (including any related fine, penalty, surcharge, or interest) imposed, collected or assessed by, or payable to, a Tax Authority;

"**Tax Authority**" and "**Taxation Authority**" means any government, state or municipality or any local, state, federal or other authority, body or official anywhere in the world exercising a fiscal, revenue, customs or excise function;

"**Transfer**" means the TR Form for the transfer of the Property in the form of Schedule 1;

"**VAT**" means value added tax imposed by the VAT Act and legislation and regulations supplemental thereto and includes any other tax of a similar nature whether imposed in the United Kingdom (instead of or in addition to value added tax) or elsewhere;

"**VAT Act**" means the Value Added Tax Act 1994; and

"**Working Day**" means any day, other than a Saturday or Sunday, on which Clearing Banks in the United Kingdom are open to the public for the transaction of business.

2. **INTERPRETATION**

The headings used in this Agreement do not affect its construction and in this Agreement:-

(a)    any obligation by a party comprising more than one person is joint and several;

(b)    any word importing an individual includes a company and vice versa;

(c)    any obligation on a party not to do any act or thing includes an obligation not to permit or suffer such act or thing to be done;

(d)    references to a clause or a Schedule or an Annexure mean a clause of or schedule to or annexure to this Agreement;

(e)    the words "**include**" and "**including**" shall be deemed to be followed by the words "without limitation"; and

(f)    any reference to a statute or statutory instrument (whether specifically named or not) includes any amendment or re-enactment of it for the time being in force, and any instrument, order, notice, regulation, bye-law, direction, plan or permission for the time being issued, made or given under, or deriving validity from it.

3. **SALE AND PURCHASE**

The Seller (at the direction of HQCB) shall sell and the Buyer shall buy the Property subject to the terms of this Agreement.

4. **PRICE AND MEANS OF PAYMENT**

4.1 **Price**
The price for the Property shall be the Price which shall be paid by the Buyer to the Seller at Actual Completion.

4.2 **Means of Payment**
Unless expressly stated otherwise, all payments due under this Agreement at Actual Completion from the Buyer shall be paid by a direct transfer from the Buyer's Solicitors' client account or a UK Clearing Bank to the Seller's Solicitors' Bank Account and shall be treated as being made at the time the amount in question has been received by the Seller's Solicitors' Bank.

4.3 **Apportionment of Price**
Without prejudice to the provisions of clause 10.7, no part of the Price is payable for any item in the nature of a tenant's fixture.

4.4 **Set-off**

All payments to be made by the parties under this Agreement shall, unless this Agreement expressly provides otherwise, be made in full, free of any right of counterclaim or set off and without deduction or withholding of any kind, other than any deduction or withholding required by law.

4.5 **VAT**

Each of the Seller and HQCB warrants and undertakes to the Buyer that:

4.5.1 it has not opted to tax the Building pursuant to paragraph 2 of Schedule 10 to the VAT Act; and

4.5.2 it will not at any time on or before Actual Completion or with effect from Actual Completion (or before) opt to tax the Building pursuant to paragraph 2 of Schedule 10 to the VAT Act (unless it is required by law to do so or the Buyer has agreed in writing in advance that it may do so).

4.6 **Costs and expenses**

Where any party is required by the terms of this Agreement to reimburse or indemnify any other party for any cost or expense, such first party shall reimburse or indemnify such other party for the full amount of such cost or expense, including such part thereof as represents VAT, save to the extent that such other party is entitled to credit or repayment in respect of such VAT from any Tax Authority.

5. **COMPLETION DOCUMENTS**

5.1 **Preparation of engrossments**

The engrossment of the Transfer shall be prepared by the Seller's Solicitors (in duplicate) shall be delivered to the Buyer's Solicitors no later than eight (8) Working Days before the Completion Date.

5.2 **Duplicates**

The Transfer shall be executed by the Seller, CWHL, HQCB and the Buyer in duplicate.

6. **COMPLETION**

6.1 **Completion of documents**

The Transfer shall be completed on the Completion Date.

6.2 **Date and time for completion**

6.2.1 Actual Completion shall take place at the offices of the Seller's Solicitors or at such other place in London as they may reasonably require, in either case before the Completion Time on the Completion Date.

6.2.2 The Seller shall not be obliged to complete the Transfer unless the Defects Deed, the Facilities Services Agreement, the Lease, the DLR Agreement for Supplemental Lease and (if applicable because HQCB Investments Limited is in