HEARING DATE AND TIME: October 31, 2012 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: October 17, 2012 at 4:00 p.m. (Eastern Time)

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000
Craig M. Price

*Attorneys for U.S. Bank National Association, as Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | CASE NO. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, TO THE
DEBTORS' THREE HUNDRED FORTY-EIGHTH OMNIBUS OBJECTION TO
CLAIMS (VALUED DERIVATIVE CLAIMS) WITH RESPECT TO
CLAIMS NUMBERS 30966 AND 30967**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Trustee ("*U.S. Bank*" or the "*Trustee*"), by and through its counsel, Chapman and Cutler LLP, to respond (the "*Response*") to the Debtors' Three Hundred Forty-Eighth Omnibus Objection to

3281771.01.06.doc
1697028

Claims (Valued Derivative Claims) [Docket No. 30953] (the "*Objection*") with respect to Claims Numbers 30966 and 30967. In support of its Response, the Trustee states as follows:[1]

## APPLICABLE LAW

1. A properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *See* Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. Accordingly, a party objecting to a claim must present *affirmative* evidence to overcome the presumption of validity. *See In re Allegheny International, Inc.*, 954 F.2d 167, 176 (3d Cir. 1992) (holding that burden shifts to objector to produce sufficient evidence to negate *the prima facie* validity of the filed claim); *In re Sterling Packaging Corp.*, 265 B.R. 701 (Bankr. W.D. Pa. 2001); *In re Planet Hollywood Int'l*, 247 B.R. 391, 394 (D. Del. 2001). "[A] party objecting to a claim has the initial burden of presenting a substantial factual basis to overcome *the prima facie* validity of a proof of claim [and] [t]his evidence must be a probative force equal to that of the creditor's proof of claim." *In re Hinkley*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986), *aff'd*, 89 B.R. 608, *aff'd*, 879 F.2d 859; *see also In re Lewis*, 80 B.R. 39, 40 (E.D. Pa. 1987) (*citing* 3 Collier on Bankruptcy, ¶ 502.02 (15th ed. 1987)). "[T]o overcome *this prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly,* 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). A party objecting to a claim cannot simply rely upon conclusory statements to overcome the presumption. Only in the event an objecting party succeeds in producing sufficient rebuttal evidence does the burden then shift to the claimant to prove the validity of the claim by a preponderance of the evidence. *In re DJK Residential LLC*, 416 B.R. 100 (Bankr. S.D.N.Y. 2009).

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Objection or the Trust Agreements.

## THE DEBTORS HAVE FAILED TO PROVIDE
## ANY EVIDENCE TO SUPPORT THE PROPOSED MODIFICATION

2. The Debtors object to Proofs of Claim Numbers 30966 and 30967 because the Plan Administrator states that it believes that the current claim is overstated, and that it values the claims thereunder at $14,408,944.22. The Objection, however, provides nothing more than the Debtors' proposal for the amount that should be allowed in respect of these claims. It provides no information with respect to why the Plan Administrator believes the claims are overstated, the method that the Debtors used for their calculation, or even the calculation itself. There is no information or evidence that would enable the Claimant or this Court to evaluate or substantiate the modified amount or the basis therefor. Based upon calculations provided by an investor in the underlying certificates, the Trustee believes the claim should be allowed in an amount no less than $44,673,232. For this reason, the Trustee files this Response to the Objection.

Further, the Objection suggests that the Debtors have initiated discussions with the Trustee concerning these claims, and that there have been extensive, albeit unsuccessful, negotiations. This is not true. The Debtors have not approached either the Trustee or the holder to discuss a possible resolution of these claims, nor have the parties otherwise engaged in such discussions, except for the negotiation of a stipulation establishing a reserve for distribution purposes with respect to the claims. The Trustee and the investor are open to discussing the transaction and the value of the swaps with the Debtors.

## THE BASIS OF THE FILED CLAIMS

3. Claims Number 30966 and 30967 were filed by U.S. Bank National Association, as Trustee ("*U.S. Bank*" or the "*Trustee*"), for Restructured Asset Certificates with Enhanced Returns, Series 2006-15-A ("*RACERs 2006-15-A*" or the "*Trust*") against Lehman Brothers Special Financing Inc. ("*LBSF*" or the "*Debtor*") as a swap counterparty and Lehman Brothers

- 3 -

Holdings Inc. ("*LBHI*") as a credit support provider. The claims arise under (a) the terms of a Series Trust Agreement dated as of November 16, 2006 by and between Lehman Brothers, Inc., as Depositor, and U.S. Bank National Association, as Trustee, as supplemented by those certain Standard Terms for Trust Agreements of the same date (collectively the "*Trust Agreements*"); (b) a credit derivatives transaction under the terms of that certain ISDA Master Agreement dated as of November 16, 2006 between LBSF and the Trust, the Schedule to Master Agreement of the same date, a Credit Support Annex and the relevant confirmation and CMBX Transactions Standard Terms Supplement (the "*CDS Transaction*"); and (c) an interest rate swap under the terms of that certain ISDA Master Agreement dated as of November 16, 2006 between LBSF and the Trust, the Schedule to Master Agreement of equal date, a Credit Support Annex and the relevant confirmation (the *"IRS Transaction"*). The majority of the certificates issued by the Trust are held by an institutional investor, and the remainder are held as Underlying Securities in another series of RACERs transactions – RACERs 2006-18-C (the "*18-C Trusts*")[2]. The Trustee understands that the institutional investor of RACERs 2006-15-A Trust certificates also holds 100% of the outstanding certificates of the 18-C Trusts.

    4.      The RACERs 2006-15-A Trust issued $500,000,000 in certificates, and used the proceeds to purchase certain highly rated commercial mortgage-backed securities (the "*Underlying Assets*"). In addition, the Trust entered into two different swaps with LBSF, a credit derivative and an interest rate swap:

    (a)    *CDS Transaction*. The Trust entered into the CDS Transaction with LBSF on November 16, 2006. Under the terms of the CDS Transaction, the Trust was the

---

[2] Each of the RACERs 2006-18-C transactions involves a credit derivatives transaction pursuant to which LBSF purchased credit protection from the relevant trust. As referenced above, a portion of the RACERs 2006-15-A certificates are the underlying securities held by the 18-C Trusts, and therefore the resolution of the RACERs 2006-15-A swaps will impact the assets available to the 18-C Trusts. The RACERs 2006-18-C transactions are subject to mediation proceedings initiated by LBSF.

purchaser of protection, making a monthly fixed payment of 0.07% per annum on the notional amount in exchange for credit protection payments from LBSF in the event of certain Credit Events relating to a referenced index of commercial mortgage-backed securities and the satisfaction of certain conditions. The notional amount of the CDS Transaction was $500,000,000.

(b)  *IRS Transaction*. Using proceeds from the issuance of the certificates ($500,000,000), the Trust purchased $500,000,000 in original principal amount of the Underlying Assets (the same commercial mortgage-backed securities that collectively constitute the index referenced in the CDS Transaction). The Trust entered into the IRS Transaction with LBSF pursuant to which the Trust received a floating rate of interest on the notional amount of the swap based upon one-month LIBOR in exchange for the income received on the Underlying Securities and Eligible Investments less any Excess Income (each as defined in the Trust Agreement) and 0.07% per annum on the notional amount.

5.  Notwithstanding the complexity of the transaction, the net combined economic effect of these two swap transactions was that the Trust was to receive a floating rate of interest on the principal amount of its investment of $500,000,000, and LBSF received the economic benefits of ownership of a portfolio of commercial mortgage-backed securities. The claims filed by the Trustee reflected this reality (as detailed below).

6.  On September 23, 2008, the Trustee requested directions and instructions from the holders of the RACERs 2006-15-A certificates with respect to the swap transactions. Thereafter, by letter dated October 7, 2008, the Trustee terminated the swaps and designated an Early Termination Date of October 10, 2008.

7.  In its Proofs of Claim, U.S. Bank asserted the following claims as of the petition date: (a) an unliquidated claim against LBSF under the terms of the Trust Agreement, the CDS Transaction and the IRS Transaction in an amount equal to $500,000,000 less proceeds of the Underlying Securities; (b) for interest thereon under the terms of the CDS Transaction and the IRS Transaction; (c) for fees and expenses of the Trustee in the amount of $63,856.09 as of the date of the claim; and (d) for damages as a result of LBSF's breach of its obligations as Calculation Agent.

8. In anticipation of initial distributions under the confirmed plan of reorganization, the Debtor approached the Trustee to stipulate to the value of the claims for purposes of establishing a reserve. After discussions with the investor, the Debtors and the Trustee agreed to value the claims, for reserve purposes only, at $100,000,000.

9. Taking the net economic effect of the transactions into consideration, the investor of the certificates has calculated the value of the claims as of the Early Termination Date in a manner that would return to the Trust the principal amount of its investment ($500,000,000) plus the present value of the floating rate spread based on the terms of the interest rate swap. The value of the Underlying Securities as of the Early Termination Date was credited against the $500,000,000 principal amount. Viewing the transaction in this manner, the investor has calculated that $44,673,232 would be required as of the Early Termination Date to provide the Trust with a full return of its principal plus interest thereon. As a result, the Trustee objects to the proposed modified amount of the claims. The Trustee and the investor are open to discussing the valuation in an effort to resolve the RACERs 2006-15-A transaction.

WHEREFORE, for all of the foregoing reasons, U.S. Bank, as Trustee, respectfully requests that this Court deny the relief requested in the Motion as to Claims numbers 30966 and 30967.

Dated: October 17, 2012

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION, not individually but as Trustee

By: /s/ Craig M. Price
One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
(212) 655-6000