ROPES & GRAY LLP
Keith H. Wofford (KW-2225)
Stephen Moeller-Sally (SM-5160)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for R3 Capital Partners Master L.P.*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) 08-13555 (JMP) |
| Debtors. | ) (Jointly Administered) |

**OBJECTIONS OF R3 CAPITAL PARTNERS**
**MASTER L.P. TO SUBPOENA FOR RULE 2004 EXAMINATION**

Pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, as made applicable under Rules 2004(c) and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), R3 Capital Partners Master L.P. ("R3") hereby serves these objections to the Subpoena for Rule 2004 Examination dated August 29, 2012 (the "Subpoena") issued by Lehman Brothers Holdings Inc. ("LBHI") requesting information regarding the claims (the "Assigned Claims") against Lehman Brothers International (Europe) ("LBIE") and Lehman Brothers Inc. ("LBI") that were assigned to LBHI pursuant to that certain Assignment of Claims dated October 17, 2008 between R3 and LBHI (the "Assignment Agreement"), which assignment was contemplated by that certain Purchase Agreement dated as of October 8, 2008 by and among LBHI, R3 Capital Management, LLC, R3 Capital GenPar MGP, Ltd., R3 Capital SLP MGP,

31879571_7

Ltd., and R3 Capital Partners (B), L.P. (the "Purchase Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Assignment Agreement and the Purchase Agreement.

## PRELIMINARY STATEMENT

R3 was spun-off from Lehman Brothers on May 28, 2008, with assets of approximately $4.8 billion. Lehman filed bankruptcy roughly three months later, in September, 2008. Upon the filing, R3 faced the specter of multi-billion dollar bankruptcy litigation against the fund and the challenge of Lehman's inability or unwillingness to live up to its numerous investment, counterparty, and financing commitments to the fund. These factors made it virtually impossible for R3 to operate and threatened the existence of R3 and the investments in the fund made by Lehman and R3's other investors.

In order to prevent a meltdown of the fund, and years of prospective finger-pointing litigation, certain affiliates of R3 (together with R3, the "R3 Parties") and Lehman entered into a global settlement just over a month after the initial Lehman bankruptcy filing. That settlement (the "Global Settlement") was approved by the Bankruptcy Court on October 16, 2008.

Now, nearly four years later, LBHI is seeking to resolve affairs relating to R3 – not with R3 itself, but rather with LBIE and LBI, two of Lehman's own affiliates with whom R3 never settled. As part of the Global Settlement, R3 made an assignment to LBHI of certain claims against these two entities. LBHI and R3 disagree as to whether much of the information being requested relates in any way to those assigned claims.

R3 has supplied substantial and costly assistance to LBHI in these efforts over a period of years, despite language in the Global Settlement limiting R3's duties in this regard, and despite R3s continuing doubts about the relevance or propriety of the requests. *See* Declaration of Michael Weaver, attached as Exhibit A **[filed under seal]**. LBHI has declined to limit itself to

2

the mechanisms to obtain information that LBHI agreed to in the post-petition Global Settlement and that were approved by this Court. Instead, LBHI seeks to force R3 to go beyond its contractual obligations by use of Bankruptcy Rule 2004. For the above reasons, and as further stated below, R3 objects.

## GENERAL OBJECTIONS

1. R3's objections to the subpoena are grounded in the Global Settlement entered into by the R3 Parties and LBHI in October 2008. Under the terms of the Purchase Agreement, the R3 Parties made a substantial payment to LBHI in consideration for a clear separation from Lehman that would remove the cloud of uncertainty that had loomed over the fund from the moment of Lehman's bankruptcy filing. Accordingly, the parties exchanged broad mutual releases of "Claims" (defined to include demands), including Claims relating to financing arrangements with LBIE and LBI and "any conduct, agreements, or instruments, relating to the business operations of the R3 Parties." Purchase Agreement, § 1. The Purchase Agreement also generally relieved the R3 Parties from any obligation to take action with respect to the Assigned Claims, except solely to the extent the assignment of such claims was deemed ineffective and LBHI paid the R3 Parties' expenses for the prosecution of such claims. Purchase Agreement, § 7.2, § 7.6.7. Further, the Assignment Agreement only requires R3 to use "commercially reasonable efforts" to provide LBHI with "reasonable documentation supporting the Claims." Assignment Agreement, p. 1. Thus, the rights and obligations of the parties with respect to the Assigned Claims are all governed by court-approved post-petition agreements relating to the Global Settlement.

2. R3 objects to the Subpoena as an improper use of Bankruptcy Rule 2004. Use of Bankruptcy Rule 2004 is inappropriate when the debtor is engaged in ongoing litigation. *See, e.g.*, *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (describing the

3

31879571_7

"well recognized" pending proceeding rule).  Accordingly, Bankruptcy Rule 2004 requests are plainly inappropriate where, as here, such litigation has been settled.

3. R3 objects to the Subpoena as a demand that LBHI released pursuant to the Purchase Agreement.[1]  *See* Purchase Agreement § 1 (defining "LB Released Claims" to include claims "that are connected with, arise out of, relate to or are otherwise based (as a whole or in part) on . . . (ix) any conduct, agreements, or instruments relating to the business operations of the R3 Parties.); *id.* (defining "Claims" to include "demands . . . of any nature whatsoever").

4. R3 objects to the Subpoena as having been served in violation of the Purchase Agreement.  Pursuant to the Purchase Agreement, LBHI expressly agreed that R3's obligations with respect to the Assigned Claims were strictly limited.  *See* Purchase Agreement § 7.2 ("Nothing herein shall obligate the Buyers or any of their Affiliates to take or omit to take any action relating to the Assigned Claims . . . ."); *see also id.* at § 7.6.7 (requiring Buyers to prosecute the Assigned Claims <u>at the expense of LBHI</u> only to the extent that the Assignment Agreement is determined to be ineffective with respect to the Assigned Claims).

5. R3 objects to the Subpoena as impermissibly seeking to expand R3's limited obligations under the Assignment Agreement.  R3's obligations to provide LBHI with information regarding the Assigned Claims are governed exclusively by the Assignment Agreement.  Pursuant to the Assignment Agreement, LBHI and R3 agreed that R3 was only required to "use commercially reasonable efforts to provide [LBHI] with reasonable documentation supporting the [Assigned Claims]."  R3 has fulfilled and continues to fulfill, these obligations by, *inter alia*, (i) providing LBHI with copies, at various times, of the governing

---

[1] R3 expressly reserves all rights to recover from LBHI its fees and expenses incurred in connection with the Subpoena, including without limitation all fees and expenses that may be incurred in any motion to quash, as an administrative expense claim (i) pursuant to LBHI's contractual indemnification obligations under section 10.2 of the Purchase Agreement, and (ii) for breaches of the post-petition Purchase Agreement and Assignment Agreement.

4

31879571_7

agreements (CMNA and base contracts), copies of claim forms submitted by R3 to the SIPA trustee of LBI and the administrator of the LBIE estate and copies of material correspondence relating to the Assigned Claims, and (ii) supplying LBHI with end-of-month data from August, 2008.  Further, R3 fulfilled its other obligations under the Purchase Agreement and the Assignment Agreement.  While R3 has fulfilled its obligations under the Assignment Agreement and Purchase Agreement, LBHI has breached its obligations.  Specifically, despite repeated requests, LBHI has failed to reimburse R3 for the cost of preserving the Assigned Claims prior to the recognition of the assignment by LBIE.  LBHI has also not made any discernible efforts to obtain releases from LBIE or LBI as required by the Purchase Agreement.  Accordingly, there is no basis to impose obligations on R3 beyond the limits contractually agreed to by LBHI, particularly when LBHI has failed to fulfill its own obligations.

6.  R3 objects to the Subpoena as an unreasonable response to R3's request to have its voluntary responses protected by a common interest agreement.  Immediately prior to service of the Subpoena, R3 presented LBHI with a draft common interest agreement intended to protect the confidential information, attorney-client privileged material, and attorney work product, and to prevent the improper use of such communications and documents.  LBHI unreasonably refused to execute or even to provide comments to the proposed common interest agreement.

7.  R3 objects to the instructions of the requests to the extent they purport to impose any obligations beyond what is required, and seek information beyond what is discoverable, under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and other applicable law.

8.  R3 objects to the requests as unduly burdensome, overly broad, vague, and ambiguous regarding the documents to be produced, in that they are directed to matters that are

5

31879571_7

not relevant to any claim or defense in the above-captioned case and are not reasonably calculated to lead to the discovery of admissible evidence.

9. R3 objects to the requests to the extent they seek documents that are subject to the attorney-client privilege, constitute attorneys' work product, or are otherwise privileged and/or immune from discovery. R3 hereby claims such privileges and protections to the extent implicated by each request. Any inadvertent disclosure of privileged or protected information shall not be deemed a waiver of any privilege or protection with respect to such information.

10. R3 objects to the requests to the extent they seek documents in R3's possession, custody, or control, the disclosure of which is subject to or precluded by restrictions of confidentiality imposed by, or pursuant to, agreements with, third-parties.

11. R3 objects to the requests to the extent they seek the disclosure of trade secrets or other confidential research, development, or commercial information.

12. R3 objects to the requests as unduly burdensome because, pursuant to paragraph 24, the Subpoena seeks to impose a continuing obligation to produce documents without any limitation to a relevant time period.

13. R3 objects to the requests to the extent they seek documents in the possession, custody, or control of R3's "officers, directors, employees, agents, attorneys, investigators, accountants or consultants" as unduly burdensome.

14. R3 objects to the definitions of "R3," "You" and "Your" as including "any person acting on its behalf or under its control" as vague, ambiguous, unduly burdensome, and not limited to a relevant time period.

15. R3 objects to the requests to the extent they seek information that is already in the possession of LBHI or its affiliates.

16.     R3 expressly reserves the right to revise, correct, supplement, or clarify its objections at any time. Nothing contained herein shall constitute an admission relating to the accuracy of any statement in the Subpoena or of the relevance, materiality, or admissibility of any information or documents.

## SPECIFIC OBJECTIONS

Subject to and without waiving the foregoing General Objections, R3 responds as follows:

### Request No. 1

*The documents used to prepare the Customer Claim Form including any account statements or similar accounting records that were prepared by R3 or its Representatives or any third party.*

### Objections and Response to Request No. 1

R3 hereby incorporates its General Objections to Request No. 1 as if fully stated herein.

Subject to and without waiving the foregoing objections, R3 responds as follows: information for the Customer Claim Form was based on the amounts set forth in the Assignment Agreement and the attached cash reconciliation statement, each of which is already in LBHI's possession.

### Request No. 2

*Any account statements, spreadsheets, or accounting records related to the Accounts, including, but not limited to customer statements (whether for individual accounts, or in the aggregate or a subset or otherwise), spreadsheets, and internal and external accounting records, whether such documents were prepared by R3, its Representatives or any third party.*

### Objections and Response to Request No. 2

R3 hereby incorporates its General Objections to Request No. 2 as if fully stated herein.

R3 further objects to Request No. 2 as unduly burdensome in that it requests internal and external accounting records for all accounts for a four-month period.

7

31879571_7

Subject to and without waiving the foregoing objections, R3 responds as follows: account statements were prepared by Lehman entities in connection with the R3 prime brokerage relationship and such statements are already in the possession of LBHI.

**Request No. 3**

*Any swift message, wire transfer or other accounting record that reflects the payments or distributions made by or to R3 into or out of any of the Accounts to or from a Lehman Entity or Credit Suisse or any other dealer having a "prime brokerage" relationship with R3 from May 1, 2008 through October 31, 2008, whether such documents were prepared by R3, its Representatives or any third party.*

**Objections and Response to Request No. 3**

R3 hereby incorporates its General Objections to Request No. 3 as if fully stated herein.

Subject to and without waiving the foregoing objections, R3 responds as follows: R3 does not have custody or control over this information, which resides with the fund administrator (Citco) and Credit Suisse. To the extent wires were sent to Lehman entities, such information is more readily available to LBHI from its affiliates.

**Request No. 4**

*A copy of the Net Asset Valuation ("NAV") packages demonstrating the position records of R3 in relation to the Lehman Entities for each day from and including August 31, 2008 to September 12, 2008, whether such documents were prepared by R3, its Representatives or any third party.*

**Objections and Response to Request No. 4**

R3 hereby incorporates its General Objections to Request No. 4 as if fully stated herein.

Subject to and without waiving the foregoing objections, R3 responds as follows: NAV packages are produced only at month end, not on a daily basis, and the August 31, 2008 NAV package has already been provided to LBHI.

**Request No. 5**

*Documents demonstrating the position records of Lehman Entities in relation to R3 for each day from and including August 31, 2008 to September 12,*

8

> *2008, prepared and provided by a Lehman Entity to R3, whether such documents were prepared by R3, its Representatives or any third party.*

**Objections and Response to Request No. 5**

R3 hereby incorporates its General Objections to Request No. 5 as if fully stated herein.

R3 further objects to Request No. 5 as vague and ambiguous in that it requests records "prepared and provided by a Lehman Entity to R3, whether such documents were prepared by R3, its Representatives or any third party."

R3 further objects to Request No. 5 as such information is not in R3's possession, custody, or control. To the extent such information is in R3's possession, custody, or control, such records do not identify which positions are held by which Lehman entity. To the extent such information exists external to R3's possession, custody, or control, upon information and belief such records do not identify which positions are held by which Lehman entity. To the extent such records were prepared and provided by a Lehman Entity to R3, upon information and belief, such records are already in the possession of LBHI or its affiliates.

R3 further objects to Request No. 5 as unduly burdensome and seeking information that is not likely to lead to the discovery of admissible evidence. The positions of all Lehman entities other than LBIE and LBI are irrelevant to the Assigned Claims.

**Request No. 6**

> *Documents sufficient to identify: (a) persons who were involved in the creation and submission of the Customer Claim Form; and (b) persons who were involved in any payments or distributions made by R3 into any of the Accounts.*

**Objections and Response to Request No. 6**

R3 hereby incorporates its General Objections to Request No. 6 as if fully stated herein.

R3 further objects to Request No. 6 as unduly burdensome and seeking information that is not likely to lead to the discovery of admissible evidence.

9

31879571_7

R3 further objects to Request No. 6 as seeking information that is subject to the attorney-client privilege, constitutes attorney work product, or is otherwise privileged or immune from discovery.

Subject to and without waiving the foregoing objections, R3 responds as follows: (i) the Customer Claim Form was created under direction and advice of counsel with the participation of C. Michael Weaver, Chris Kelly, Ed O'Connell and Irshad Karim, and (ii) the persons at R3 who authorized payments and distributions made by R3 into any of the Accounts were Douglas Gold and C. Michael Weaver.

**Request No. 7**

*Audited annual financials for R3 (or its successor-in-interest) for years 2008 and 2009 and information R3 provided to its auditors relating to or in connection with the Purchase Agreement or the Assignment Agreement.*

**Objections and Response to Request No. 7**

R3 hereby incorporates its General Objections to Request No. 7 as if fully stated herein.

R3 further objects to Request No. 7 as unduly burdensome and seeking information that is not likely to lead to the discovery of admissible evidence. The financial statements and audit information of R3 is irrelevant to the Assigned Claims. Further, as R3's auditors were on site in the period following the closing of the Purchase Agreement and the Assignment Agreement, there were daily communications between representatives of R3 and its auditors that may have related to or had some connection with the Purchase Agreement and the Assignment Agreement.

R3 further objects to Request No. 7, because LBHI, as an LP investor in R3, has received audited financial statements for each fiscal year since 2008, and it is unduly burdensome to request such information from R3.

31879571_7

R3 further objects to Request No. 7 as seeking information that is subject to the attorney-client privilege, constitutes attorney work product, or is otherwise privileged or immune from discovery.

**Request No. 8**

*A copy of Global Master Securities Lending Agreement between R3 and LBIE (together with all exhibits schedules and amendments) and enumerated in the CMNA as a "base contract."*

**Objections and Response to Request No. 8**

R3 hereby incorporates its General Objections to Request No. 8 as if fully stated herein.

Subject to and without waiving the foregoing objections, R3 will produce a copy of the Global Master Securities Lending Agreement.

**Request No. 9**

*A copy of Global Master Repurchase Agreement between R3 and LBIE (together with all exhibits, schedules, amendments, and confirmations) and enumerated in the CMNA as a "base contract.")*

**Objections and Response to Request No. 9**

R3 hereby incorporates its General Objections to Request No. 9 as if fully stated herein.

Subject to and without waiving the foregoing objections, R3 will produce a copy of the Global Master Repurchase Agreement.

**Request No. 10**

*A copy of Master Repurchase Agreements between R3 and LCPI (for the avoidance of doubt; not the MRA between R3 on the one hand and LBI and LCPI on the other hand) (together with all exhibits, schedules, amendments, and confirmations) and enumerated in the CMNA as a "base contract."*

**Objections and Response to Request No. 10**

R3 hereby incorporates its General Objections to Request No. 10 as if fully stated herein.

R3 further objects to Request No. 10 as unduly burdensome and seeking information that is not likely to lead to the discovery of admissible evidence. The Master Repurchase Agreement

11

between R3 and LCPI is irrelevant to the Assigned Claims as it relates to claims that have been released pursuant to the Purchase Agreement.

Subject to and without waiving the foregoing objections, R3 responds as follows: the Master Repurchase Agreement between R3 and LCPI has already been provided to LBHI.

**Request No. 11**

*A copy of Master Institutional Futures Customer Agreement between R3 and LBIE (together with all exhibits, schedules, amendments, and confirmations) and enumerated in the CMNA as a "base contract."*

**Objections and Response to Request No. 11**

R3 hereby incorporates its General Objections to Request No. 11 as if fully stated herein.

Subject to and without waiving the foregoing objections, R3 will produce a copy of the Master Institutional Futures Customer Agreement.

ROPES & GRAY LLP

By: *[signature]*

Dated: October 5, 2012

Keith H. Wofford (KW-2225)
Stephen Moeller-Sally (SM-5160)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
FACSIMILE: (212) 596-9090

*Attorneys for R3 Capital Partners Master L.P.*