WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard W. Slack
Robert J. Lemons
Michael J. Firestone


Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

**NOTICE OF CROSS-MOTION TO COMPEL**
**GIANTS STADIUM LLC TO COMPLY WITH RULE 2004 SUBPOENAS**

PLEASE TAKE NOTICE that a hearing on the annexed cross-motion (the "Cross Motion") of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors for certain entities in the above-referenced Chapter 11 cases, including Lehman Special Financing Inc. ("LBSF" and with LBHI, "Lehman"), for entry of an order compelling Giants Stadium LLC ("Giants Stadium") to comply with LBSF's Subpoenas for Rule 2004 Examination dated July 27, 2011 and April 9, 2012, all as more fully described in the Cross-Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 14, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Cross-Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq., attorneys for Lehman; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be received no later than **November 8, 2012 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:   October 24, 2012
         New York, New York

                           /s/ Richard W. Slack
                           Richard W. Slack
                           Robert J. Lemons
                           Michael J. Firestone
                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153
                           Telephone:  (212) 310-8000
                           Facsimile:  (212) 310-8007

                           Attorneys for Lehman Brothers Holdings Inc.
                           and Certain of its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

## THE PLAN ADMINISTRATOR'S CROSS-MOTION TO COMPEL GIANTS STADIUM LLC TO COMPLY WITH RULE 2004 SUBPOENAS AND OBJECTION TO GIANTS STADIUM'S MOTION TO QUASH THE RULE 2004 SUBPOENAS

Richard W. Slack
Robert J. Lemons
Michael J. Firestone
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Back v. AM Gen. Corp. (In re Chateaugay Corp.),
  213 B.R. 633 (S.D.N.Y. 1997) .................................................................18

Cameron v. U.S.,
  231 U.S. 710 (1914) ..............................................................................13

Casse v. Key Bank Nat'l Assoc. (In re Casse),
  198 F.3d 327 (2d Cir. 1999) ....................................................................18

In re Coffee Cupboard,
  128 B.R. 509 (Bankr. E.D.N.Y. 1991) ........................................................13

In re GHR Energy Corp.,
  35 B.R. 534 (Bankr. D. Mass. 1983) .........................................................16

In re Hilsen,
  No. 87-11261 (JLP), 2008 WL 2945996 (Bankr. S.D.N.Y., July 25, 2008) ....................13, 14

In re Recoton Corp.,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004) ........................................................13

Matter of Sutera,
  141 B.R. 539 (Bankr. Conn. 1992) ...........................................................15

U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),
  68 B.R. 690 (Bankr. S.D.N.Y. 1986) ..........................................................18

**STATUTES AND RULES**

11 U.S.C. §105 ........................................................................................18

28 U.S.C. § 1334 .......................................................................................5

28 U.S.C. § 157(b) .....................................................................................5

Fed. R. Bankr. P. 1015(b) ...........................................................................5

Fed. R. Bankr. P. 2004 ....................................................................... passim

**OTHER AUTHORITIES**

2 Collier on Bankruptcy (15th ed. 1999) .......................................................18

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard W. Slack
Michael J. Firestone

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | **:** | **Chapter 11 Case No.** |
| | **:** | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,** | **:** | **08-13555 (JMP)** |
| | **:** | |
| **Debtors.** | **:** | **(Jointly Administered)** |

-------------------------------------------------------------------x

**THE PLAN ADMINISTRATOR'S CROSS-MOTION TO COMPEL GIANTS STADIUM
LLC TO COMPLY WITH RULE 2004 SUBPOENAS AND OBJECTION TO
GIANTS STADIUM'S MOTION TO QUASH THE RULE 2004 SUBPOENAS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors for certain entities in the above-referenced Chapter 11

cases (the "Plan"), including Lehman Special Financing Inc. ("LBSF" and, together with LBHI,

"Lehman"[1]), files this cross motion (the "Cross-Motion")  to compel Giants Stadium LLC

("Giants Stadium") to comply with two subpoenas issued pursuant to Rule 2004 of the

Bankruptcy Code ("Rule 2004") and objects to Giants Stadium's motion to quash the Subpoenas

(the "Motion to Quash"), and respectfully represents:

---

[1] Where applicable, references to "Lehman" shall include the "Plan Administrator."

## <u>PRELIMINARY STATEMENT</u>

1.      Giants Stadium, a derivatives counterparty of LBSF, has made the unilateral and self-serving decision that it need not comply with two subpoenas issued to it by Lehman under Rule 2004 on the grounds that, during negotiations of a potential settlement, Lehman voiced preliminary views about the merits of Giant Stadium's claims against the estate and as a result, has now somehow forfeited its right to finish its investigation.  This is precisely the position that Lehman was concerned Giants Stadium would take if Lehman engaged in settlement discussions before it had finished its investigation.  Indeed, on September 14, 2011, this Court informed the parties that if Lehman entered into settlement discussions with Giants Stadium before Lehman completed its investigation and such discussions were unsuccessful, Lehman would not waive any of its rights to complete its investigation under Rule 2004.  The transcript of that hearing is explicit in preserving Lehman's right to finish its investigation:

> **Mr. Slack [counsel for Lehman]**:  Your Honor, I just want to . . . make a representation that we are, in fact, still involved and still engaged in trying to finish the investigation. And what I don't want to happen, Your Honor, is to engage in some kind of preliminary discussions, and be confronted by an argument by Giants Stadium that by discussing the merits that we're now somehow not entitled to get and finish our investigation.  So if we could get a -- essentially a commitment that they're not going to try to gotcha us if we sit down and talk to them preliminarily before our investigation is finished, then I would certainly be willing to advise my client to sit down with them.  But I don't want to be faced with a gotcha.

> **The Court**:  Okay.  You don't even need that commitment because I'm going to give you a gotcha from the bench -- a no gotcha.  If you choose to have a conversation that could lead to some kind of productive business-like resolution of this, doing that will not constitute a waiver of any of your discovery rights or your rights to continue with your investigation as you see fit.

Sept. 14, 2011 Tr. at 54:8-55:2, <u>see</u> <u>infra</u> at ¶ 24.

2.      Remarkably, Giants Stadium has taken precisely the position that the Court informed the parties would not be permitted.  Yet, even if the Court had not already addressed this issue over a year ago, Giants Stadium is wrong in any event.  Although Lehman did engage

in negotiations and set forth preliminary positions (as it needed to do in order to have such discussions), Lehman has not yet made any final determination concerning Giants Stadium's claims; indeed, its investigation of those claims is ongoing.

3.      Moreover, the continuation of the investigation is essential here in any event because Giants Stadium actually amended its proofs of claim and increased its claims from approximately $301 million to approximately $585 million during the time that discussions were ongoing. The discovery taken to date concerned the initial $301 million claim; Lehman has been afforded no opportunity to take discovery of the new $585 million claim.

4.      That the investigation is incomplete is evident from some history. Lehman began its investigation of Giants Stadium in May 2010, when it served a subpoena on Giants Stadium pursuant to Rule 2004. Lehman examined under oath Christine Procops, Giants Stadium's chief financial officer, in May 2011. As discussed below, Ms. Procops did not recall or claim to understand certain key topics related to Giants Stadium's termination of the derivative contracts at issue, despite her own personal involvement in the termination of those contracts; moreover, she was frequently unable to explain Giants Stadium's position with respect to the governing contracts between the parties, stating instead that the contracts were "complicated." See infra, at ¶ 21. As Ms. Procops' testimony was deficient on certain important key issues, on or about July 27, 2011, Lehman served a subpoena (the "July 27, 2011 Subpoena") on Giants Stadium seeking a representative from Giants Stadium to provide testimony on a list of specific topics that Ms. Procops's testimony did not adequately cover. Giants Stadium has refused to comply with the July 27, 2011 Subpoena.

5.      As the Court is aware, at Giants Stadium's behest, Lehman decided to halt its investigation in September 2011 so that the parties could explore a possible settlement. The

3

parties, either through mediation, counsel meetings, or meetings between the principals, engaged in numerous and extensive discussions. Following the conclusion of an unsuccessful attempt at mediation, Lehman re-activated its investigation and on or about April 9, 2012 served a subpoena seeking documents on Giants Stadium (the "April 9, 2012 Subpoena," and with the July 27, 2012 Subpoena, the "Subpoenas"). The April 9, 2012 Subpoena was the first time that Lehman sought any discovery related to Giants Stadium's amended $585 million claim. After the April 9, 2012 Subpoena was served, the parties again decided to discuss settlement; as part of such discussions, Lehman "froze" all Rule 2004 discovery. By September 2012, however, it became clear that a resolution could not be reached at that time, and on or about September 17, 2012, Lehman informed Giants Stadium that it was ending settlement discussions and would renew its investigation. Giants Stadium since has refused to produce any documents in response to the April 19, 2012 Subpoena, and on October 12, 2012, moved to quash both Subpoenas.

6.      Giants Stadium argues that the Subpoenas are abusive and harassing because they are duplicative of the earlier subpoenas served by Lehman on Giants Stadium. This too is wrong. As discussed below, the April 9, 2012 Subpoena seeks, among other things, information related to Giants Stadium's amended claims and Giants Stadium's sale of its claims to Goal Line Partners LLC ("Goal Line"). There has been no discovery with respect to either of these topics, both of which are integral to Lehman's investigation and well within the broad reach of Rule 2004.

7.      Additionally, an examination under oath of a Giants Stadium representative is necessary and hardly duplicative because Ms. Procops testimony was deficient in many areas. As part of its investigation, Lehman is entitled to obtain testimony from Giants Stadium related

to the governing contracts and the termination of the derivative contracts at issue. To date, Lehman has not obtained that testimony.

8.      The Court therefore should grant the Cross-Motion to compel and require Giants Stadium to comply with the subpoenas.

## BACKGROUND

9.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Lehman's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

10.     On December 6, 2011, the Court entered an order confirming the Plan (Docket No. 23023). The Plan became effective on March 6, 2012.

## JURISDICTION

11.     This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against Lehman and to prosecute causes of action on behalf of Lehman.

**RELIEF REQUESTED**

12.     Lehman requests the entry of an order, pursuant to section 105(a) of the Bankruptcy Code, compelling Giants Stadium to comply with the Subpoenas.

**STATEMENT OF FACTS**

A.     The Terminated Transactions

13.     In August 2007, Giants Stadium issued auction rate securities (the "ARS") in connection with the financing of the construction of the New Meadowlands Stadium.  See Declaration of Michael J. Firestone (the "Firestone Decl.") at ¶ 2.  Auction rate securities, such as the ARS, are debt instruments with a long-term nominal maturity for which the interest rate is regularly reset through an auction.  Goldman Sachs & Co. ("Goldman") and Lehman were initial purchasers of the ARS, and each managed auctions for certain tranches of the ARS.  See id.

14.     In connection with the ARS offering, LBSF and Giants Stadium entered into two substantively identical interest rate swaps guaranteed by LBHI (the "Transactions"), each pursuant to a separate 1992 ISDA Master Agreement dated July 27, 2007 (collectively, and together with the schedules and exhibits thereto and each confirmation exchanged in connection with the Transactions, the "Master Agreements").  See id. at ¶ 3.  Under the Transactions, LBSF paid a floating rate of interest to Giants Stadium based on the auction rate for the underlying ARS.  See id.

15.     On September 15, 2008, LBHI filed its chapter 11 petition.  Three days later, on September 18, 2008, Giants Stadium purported to terminate the Transactions.  See id. at ¶ 4.

16.     On October 2, 2008, Giants Stadium sent LBSF letters for each of the Transactions (the "Calculation Letters"), which attempted to calculate the "Settlement Amounts" owed under the Master Agreements.  See id. at ¶ 5.  Purportedly applying the Loss measure, Giants Stadium determined with the aid of its investment advisor, Goldman, that LBSF owed

Giants Stadium "Settlement Amounts" of $301,025,197 as a result of its early termination of the Transactions.  See id. at ¶ 6.

17.    On September 22, 2009, Giants Stadium filed Proofs of Claim against LBHI and LBSF, each in the amount of $301,804,617.14 (the "Proofs of Claim").  See id. at ¶ 7.  Giants Stadium also completed and submitted a response to the "Derivatives Questionnaire" in which it asserted claims against the LBSF estate in approximately the same amount.  See id. at ¶ 8.

B.    Rule 2004 Discovery of Giants Stadium

18.    In order to, among other things, assist Lehman in its investigation of claims filed by creditors, as well as to determine whether Lehman has any affirmative claims against its derivative counterparties, on November 23, 2009, the Court entered an Order Granting the Debtors the Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities (the "Rule 2004 Order") that permits Lehman to serve subpoenas for document production and initiate oral examinations pursuant to Bankruptcy Rule 2004.  See Docket No. 5910.

19.    On or about May 19, 2010, Lehman commenced an investigation of Giants Stadium's claims and the related derivative contracts.  As they have with a number of other derivative counterparties, Lehman is reviewing the issues surrounding the Transactions, and on May 19, 2010, pursuant to the Rule 2004 Order, served a subpoena upon Giants Stadium for the production of documents (the "May 19, 2010 Subpoena").  See id. ¶ 9.  (A copy of the May 19, 2010 Subpoena is attached as Ex. A to the Firestone Decl.)  Giants Stadium has produced certain documents pursuant to the May 19, 2010 Subpoena.  See id.

C.      The Deposition of Giants Stadium CFO Christine Procops

20.      On March 10, 2011, pursuant to the Rule 2004 Order, Lehman served a Rule 2004 subpoena for the examination of Christine Procops, Giants Stadium's Chief Financial Officer. See id. at ¶ 10.  On May 25, 2011, Ms. Procops was examined by Lehman under oath.  See id.

21.      Although Ms. Procops was a central figure in Giants Stadium's termination of the Transactions, she claimed under oath to have no recollection or understanding of many key issues related to the termination of the Transactions, including with respect to matters on which she sent and received correspondence.  See, e.g., cited excerpts of Ms. Procops' Rule 2004 transcript (the "Procops Tr."), attached as Ex. B to the Firestone Decl., at 127:10-14; 142:3-23; 156:9-25; 160:5-161:22; 169:7-15.  For example, Ms. Procops sent an e-mail on September 17, 2008 stating that Giants Stadium needed to "terminate the swap tomorrow to preserve the value of [Giants Stadium's] (significant) claims against the estate of the Lehman swap counterparty"; when asked why Giants Stadium needed to terminate the swaps on that specific date "to preserve the value of [Giants Stadium's] claims," she testified that she did not recall any details about the subject of the email.  See id. at 156:2-17.  Additionally, when asked to explain her understanding of Giants Stadium's rights and obligations under the governing contractual documents, Ms. Procops repeatedly testified that the documents at issue were "complicated," rather than provide answers to the questions posed by Lehman's counsel.  See, e.g., id. at 121:14-22; 127:7-9; 169:3-6.

22.      Following Ms. Procops' examination, Lehman served the July 27, 2011 Subpoena on Giants Stadium, pursuant to Rule 2004, for the testimony of "an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A attached hereto."  (A copy of the July 27, 2011 Subpoena is attached as Ex. C to the Firestone Decl.)

23.    On August 5, 2011, Giants Stadium served written responses and objections (the "August 5, 2011 Responses and Objections") to the July 27, 2011 Subpoena.  (A copy of the August 5, 2011 Responses and Objections are attached as Ex. D to the Firestone Decl.)  In a letter sent that same day (the "August 5, 2011 Letter"), Giants Stadium contended that because Ms. Procops is the Giants Stadium "employee most knowledgeable about the Claims," there is "no point in either deposing Ms. Procops again or deposing one of the few other [Giants Stadium] employees, all of whom have less knowledge on the issues set forth in Exhibit A."  (A copy of the August 5, 2011 Letter is attached as Ex. E to the Firestone Decl.)  Giants Stadium also objected to the examination of a witness pursuant to the July 27, 2011 Subpoena on the grounds that the "Debtors have sufficient information to determine whether to object to [Giants Stadium's] Claims, or at least to begin mediation on the Claims."  Id.  Accordingly, Giants Stadium has refused to produce a witness in response to the July 27, 2011 Subpoena.  See Firestone Decl. at ¶ 12.

24.    On August 29, 2011, Lehman filed a motion to compel the production of documents improperly withheld as privileged by Giants Stadium (the "Motion to Compel").  See Docket No. 19569.  In its objection to the Motion to Compel, Giants Stadium asked the Court to "encourage substantive discussions" of Giants Stadium's claims.  See Docket No. 19761, at ¶ 7. Giants Stadium's counsel reiterated that position at the hearing on the Motion to Compel, held on September 14, 2011, in which he noted that Giants Stadium has "been trying for over a year to move beyond the debtor's [sic] hiding behind [Rule] 2004 saying they get everything and they give nothing, to a point where we can discuss the merits of this."  See cited excerpts from the September 14, 2011 Hearing Transcript, attached as Ex. F to the Firestone Decl., at 53:9-12.  As set forth above, the Court expressly stated that engaging in settlement discussions and taking

preliminary positions during negotiations would not prejudice Lehman's right to finish its investigation. See supra at ¶ 1 ("If you choose to have a conversation that could lead to some kind of productive business-like resolution of this, doing that will not constitute a waiver of any of your discovery rights or your rights to continue with your investigation as you see fit").

25.    Based on the Court's assurances that it would not lose any rights to continue its Rule 2004 investigation as it "see[s] fit," Lehman agreed to engage in settlement discussions with Giants Stadium, including convening mediation. See Firestone Decl., at ¶ 14.

26.    On December 6, 2011 – at or around the same time that the parties agreed to enter into mediation – Giants Stadium amended its Proofs of Claim to almost double the amounts originally sought, from approximately $301 million to approximately $585 million. See id., at ¶ 15. Lehman has taken no discovery with respect to the amended proofs of claim, which included entirely new valuations not reflected in the Calculation Letters, the Proofs of Claim that Giants Stadium originally filed, or Giants Stadium's response to the "Derivatives Questionnaires" filed on October 22, 2009. See id., at ¶ 16. Additionally, Giants Stadium's claims – which had been sold to Bank of America on or about April 27, 2009 – were re-sold to Goal Line Partners LLC ("Goal Line"), an entity affiliated with a private equity fund known as the Baupost Group ("Baupost") at some point prior to October 2011. See id., at ¶ 17. No discovery has been taken by Lehman regarding the sale of Giants Stadium's claims to Goal Line. See id.

27.    Although the mediation did not take place pursuant to the Court's formal ADR Procedures Orders for derivative claims in the Lehman bankruptcy, it was conducted by one of the mediators appointed by the Court under the Alternative Dispute Resolution Procedures Order

for Affirmative Claims of Debtors Under Derivative Contracts. See id., at ¶ 18. The mediation took place on February 14, 2012, and ended that same day without a resolution. See id.

28.    On or about April 9, 2012, consistent with the Court's assurances that Lehman would be permitted to finish its investigation, Lehman re-started its investigation by serving a subpoena seeking the production of documents (the "April 9, 2012 Subpoena") on Giants Stadium pursuant to the Rule 2004 Order. See id. at ¶ 19. (A copy of the April 9, 2012 Subpoena is attached as Ex. G to the Firestone Decl.) The April 9, 2012 Subpoena seeks documents related to, among other things, (i) the amended proofs of claim filed by Giants Stadium and (ii) the sale of Giants Stadium's claims in the Lehman proceeding to Bank of America and then to Goal Line. See id.

29.    In May 2012, however, Lehman and Giants Stadium again decided to engage in substantive settlement discussions and, in connection with those discussions, agreed to "freeze" all ongoing discovery, including the Subpoenas. See Firestone Decl. at ¶ 20. As part of that agreement, the parties understood and confirmed that Lehman's "willingness to enter into settlement negotiations does not constitute any waiver of [Lehman's] rights and is without prejudice to our ability to complete our investigation under Rule 2004." See id., Ex. H. The discovery "freeze" ended in September 2012, following the failure of settlement discussions outside of the mediation process. See id., at ¶ 20.

30.    On September 19, 2012, Giants Stadium served Responses and Objections to the April 9, 2012 Subpoena, in which it refused to produce documents in response to any of the document requests propounded therein and asserted that such requests represented "an abuse of the Debtors' [sic] Rule 2004 subpoena powers, brought solely to annoy, harass and oppress" Giants Stadium. Responses and Objections to the April 9, 2012 Subpoena, attached as Ex. I to

the Firestone Decl., at ¶ 1.  Moreover, notwithstanding the Court's statement on September 14, 2011 that Lehman would not waive any rights to conduct discovery under Rule 2004 even if it decided to enter into settlement negotiations with Giants Stadium, in its Response and Objections, Giants Stadium argued that because "[i]n negotiation and mediation, Debtors [sic] have outlined in no uncertain language their opposition to allowing the Claims at their submitted value . . . the Subpoena . . . is litigation gamesmanship and nothing more."  Id.

31.    On October 11, 2012, the parties convened a telephonic "meet-and-confer" with respect to the Subpoenas and Giants Stadium's refusal to comply with either.  During the meet-and-confer, Giants Stadium's counsel asserted that Lehman is not entitled to discovery because it has determined to object to Giants Stadium's proofs of claim.  See Firestone Decl. at ¶ 22. Giants Stadium also refused to make any counterproposal in response to either of the Subpoenas, on the grounds that it did not believe any further discovery was justified.  See id.

32.    On October 12, 2012, Giants Stadium filed a motion to quash the subpoenas. Again remarkably, the motion to quash does not even mention the Court's assurances that settlement discussions between the parties would not prejudice Lehman's right to finish its investigation should those discussions be unsuccessful.

33.    Lehman has not completed its investigation of Giants Stadium's claims or of the issues surrounding the termination of the Transactions by Giants Stadium.  See Firestone Decl. at ¶ 23.

## ARGUMENT

**I.     RULE 2004 PERMITS AN INVESTIGATION
INTO THE TRANSACTIONS WITH GIANTS STADIUM**

34.     The scope of an examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  See Fed. R. Bankr. P. 2004(b).  Thus, a "party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred."  In re Hilsen, No. 87-11261, 2008 WL 2945996, *4 (Bankr. S.D.N.Y., July 25, 2008) (Peck, J.) (citations omitted); see also In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions, and assessing whether wrongdoing has occurred."); In re Coffee Cupboard, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (citing Cameron v. U.S., 231 U.S. 710, 714 (1914)).

35.     When it entered the Rule 2004 Order on November 23, 2009, the Bankruptcy Court determined that Lehman should be permitted to conduct discovery under Rule 2004 of the counterparties with which it entered into derivative transactions.  See Rule 2004 Order.  The Rule 2004 Order therefore permits precisely the kind of discovery sought here.

36.     Although Giants Stadium objects to the one-sided nature of Rule 2004 discovery, Rule 2004 is "debtor-centric and allows considerable leeway for all manner of so-called fishing

13

expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case." In re Hilsen, 2008 WL 2945996, at *1.

## II.    LEHMAN IS ENTITLED TO CONTINUE ITS RULE 2004 INVESTIGATION

37.    It is undisputed that the topics for testimony identified in the July 27, 2011 Subpoena and the document requests contained in the April 9, 2012 Subpoena are situated squarely within the broad ambit of Rule 2004 discovery.  Thus, Giants Stadium has moved to quash on the grounds that, among other things, the Subpoenas are improper under the Bankruptcy Code because Lehman has "made clear their intention to object to the claims" and because they are "duplicative" of prior discovery requests.  Mot. to Quash, at ¶¶ 5, 8, 20.

38.    At the root of Giants Stadium's objection is the precise argument that the Court indicated it would not accept if Lehman agreed to meet to discuss settlement:  that Lehman has determined to file an objection because after "nine months of settlement discussions . . . it is clear Debtors have the full intention of objecting to the Claims."  Mot. to Quash at ¶ 4.  Indeed, as discussed above, at the September 14, 2011 hearing, while Lehman was still in the middle of its Rule 2004 investigation, Lehman's counsel predicted that Giants Stadium would assert such an argument if Lehman consented to enter into settlement discussions at that time.  See supra, at ¶ 1 ("And what I don't want to happen, Your Honor, is to engage in some kind of preliminary discussions, and be confronted by an argument by Giants Stadium that by discussing the merits that we're now somehow not entitled to get and finish our investigation").  In response, the Court assured Lehman that if it entered into settlement discussions with Giants Stadium, and such discussions were ultimately unproductive, Lehman still would be entitled to conduct its Rule 2004 investigation as it "see[s] fit."  Id.

39.    Thus, Giants Stadium's assertion that continued Rule 2004 discovery is inappropriate based on positions taken by Lehman in settlement discussions ignores this Court's

explicit instruction (which is not even addressed by Giants Stadium in its motion to quash) that Giants Stadium would not be allowed to use such discussions as an excuse to cut off Leman's Rule 2004 investigation.  In other words, Giants Stadium is trying to play "gotcha" even after the Court explicitly stated that it was going to give Lehman a "no gotcha" from the bench.  <u>See</u> <u>supra</u>, at ¶ 1.

40.    In any event, Lehman has not made a final determination if and on what grounds it will object to the Proofs of Claim because its investigation is not yet at an end.  Obviously, Lehman took preliminary positions with less than a full understanding of the facts in order to attempt to resolve the matter, but it has not made any final determination.

41.    Specifically, as discussed above, following its request for settlement discussions with Lehman, Giants Stadium amended its Proofs of Claim, adding another $284 million to an approximately $301 million claim.  Lehman has taken no discovery with respect to these amended proofs of claim, another point that Giants Stadium does not address in its motion to quash.  As Giants Stadium itself acknowledges, such discovery is appropriate.  <u>See</u> Mot. to Quash, at ¶ 19 (quoting <u>Matter of Sutera</u>, 141 B.R. 539, 541 (Bankr. Conn. 1992) ("It is well settled that a Rule 2004 examination is a proper procedure to inquire into the basis for a filed proof of claim").  Additionally, Lehman has taken no discovery with respect to the sale of Giants Stadium's claims to Goal Line.  Giants Stadium's objection that "communications taking place years after the swaps' termination and valuation is [sic] plainly irrelevant" is without basis. Responses and Objections to the April 9, 2012 Subpoena, attached to the Firestone Decl. as Ex. I, at ¶ 2.  To the extent the requests bear a "reasonable nexus to the debtor and the administration of the debtor's case" – which all of Lehman's document requests do – such discovery is proper. <u>Id.</u>  Indeed, it is likely that communications between Giants Stadium and Goal Line will contain

relevant materials regarding the issues surrounding the termination and value of the Transactions.[2]   Finally, Lehman has not yet received information from critical players in connection with the termination of the Transactions, such as Goldman (who advised on the termination and created the initial, but now abandoned valuations), the bond insurers (whose consent was sought for the termination of the Transactions), and the NFL itself (whose consent was also sought and apparently needed before Giants Stadium terminated the Transactions).

42.     Giants Stadium's reliance on <u>In re GHR Energy Corp.</u>, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) is therefore misplaced.  Giants Stadium has not provided the Court with any "evidence" that Lehman has determined to object to Giants Stadium's claims, relying instead on *ipse dixit* assertions in its moving papers that Lehman has done so (based on statements during settlement discussions that this Court already said would be without prejudice).  <u>See</u> Mot. to Quash at ¶¶ 4-5.

43.     Moreover, Giants Stadium's argument that the April 19, 2012 Subpoena is "duplicat[ive]" of the May 19, 2010 Subpoena is inaccurate.  Document Request Nos. 2, 3, 6, 7, and 8 of the April 19, 2012 Subpoena seek documents related to the amended Proofs of Claim and to Giants Stadium's sale of its claims to Goal Line.  Giants Stadium had not yet amended its claims or sold such claims to Goal Line at the time that Giants Stadium produced documents in response to the May 19, 2010 Subpoena.[3]  Mot. to Quash at ¶ 20.

---

[2] Giants Stadium's argument that Debtors are attempting to invade a "joint privilege between Giants Stadium and Goal Line" is without any merit.  Mot. to Quash at ¶ 20.  That argument puts the cart before the horse.  Lehman only wishes to obtain non-privileged information and will evaluate an assertion of a "joint privilege" when asserted based on a proper privilege log at the appropriate time.

[3] The materials sought by Document Request Nos. 4, 5, 9, and 10 of the April 19, 2012 Subpoena were not <u>specifically</u> requested by the May 19, 2010 Subpoena, although some of the more general document requests contained in the May 19, 2010 Subpoena may have subsumed such requests.  Giants Stadium, however, has not represented to Lehman or to the Court that it

44.    Lehman also cannot complete its investigation until after it has been able to examine a witness pursuant to the July 27, 2011 Subpoena, which seeks a witness to speak on those topics that Ms. Procops did not recall or claimed not to understand.  Thus, the notion that the July 27, 2011 Subpoena seeks testimony that is duplicative of the Rule 2004 examination of Ms. Procops is without any basis.  As discussed above, Ms. Procops was unable to answer numerous questions involving key issues related to the termination of the Transactions, and when she was pressed to explain her understanding of Giants' Stadium's rights and obligations under the governing contractual documents, she repeatedly evaded answering by noting that the contractual documents were "complicated."  See supra, at ¶ 21.  Simply put, Lehman is entitled to conduct an investigation in which a representative of Giants Stadium presents all aspects of Giants Stadium's story under oath, which Ms. Procops was unable to do when she was deposed in May, 2011.

45.    Giants Stadium also argues that Lehman's attempt to take testimony from a representative of Giants Stadium is "abusive and harassing" because Debtors "are well aware that Ms. Procops . . . would be (again) the deponent."  Mot. to Quash, at ¶ 8.  Giants Stadium is under no obligation to produce Ms. Procops for a second examination under oath.  If Giants Stadium chooses to do so, however, then Giants Stadium will have an obligation to educate Ms. Procops on the topics for which testimony is sought, so that she can provide answers on behalf of

---

already has produced documents responsive to Document Request Nos. 4, 5, 9 and 10 of the April 19, 2012 Subpoena as part of its production of documents in response to the May 19, 2010 Subpoena.  Document Request No. 1 of the April 9, 2012 Subpoena seeks all documents that were requested by the May 19, 2010 Subpoena, but which were not yet produced; this document request was necessitated only because of Giants Stadium's objection to an instruction in the May 19, 2010 Subpoena that directed Giants Stadium to regard the document requests as "continuing."  See Giants Stadium's Responses and Objections to the May 19, 2010 Subpoena, attached as Ex. J to the Firestone Decl., at Gen. Obj. No. 8.

Giants Stadium rather than claim lack of memory or lack of understanding, as she did in her deposition.

### III. THE COURT SHOULD COMPEL GIANTS STADIUM TO COMPLY WITH THE SUBPOENAS

46.     Bankruptcy Courts have the inherent authority to enforce their orders:   "[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders.  The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order."  U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.), 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) (Buschman, J.). Section 105(a) of the Bankruptcy Code also provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions, and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders."  Back v. AM Gen. Corp. (In re Chateaugay Corp.), 213 B.R. 633, 640 (S.D.N.Y. 1997) (Lifland, J.); 11 U.S.C. § 105(a).  See also Casse v. Key Bank Nat'l Assoc. (In re Casse), 198 F.3d 327, 335 (2d Cir. 1999) ("11 U.S.C. §105 'is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of section 105 is to assure the bankruptcy courts['] power to take whatever action is appropriate or necessary in aid of their exercise of their jurisdiction . . .'") (quoting 2 Collier on Bankruptcy (15th ed. 1999) at 105-5-7).

47.     As demonstrated above, Giants Stadium has failed to comply with the Subpoenas, which were validly issued pursuant to the Rule 2004 Order.  This Court should enforce the terms and provisions of its order and direct Giants Stadium to comply with the Subpoenas.

## **Notice**

48.     No trustee has been appointed in these chapter 11 cases.  Lehman has served

notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) Giants Stadium, and (vii) all other

parties entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635].  Lehman submits that no other or further notice need be provided.

49.     No previous request for the relief sought herein has been made by Lehman to this

or any other court.

WHEREFORE Lehman respectfully requests that the Court grant the relief

requested herein and such other and further relief as is just.


Dated:    October 24, 2012
             New York, New York


                                        By:  /s/ Richard W. Slack
                                              Richard W. Slack
                                              Robert J. Lemons
                                              Michael J. Firestone
                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone:  (212) 310-8000
                                              Facsimile:  (212) 310-8007

                                              Attorneys for Lehman Brothers Holdings Inc.
                                              and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

### ORDER GRANTING MOTION TO COMPEL GIANTS STADIUM LLC
### TO COMPLY WITH RULE 2004 SUBPOENAS

Upon the cross-motion dated October 24, 2012 (the "Cross-Motion") of Lehman

Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors for certain entities in the above-referenced Chapter 11 cases, including

Lehman Special Financing Inc. ("LBSF" and, together with LBHI, "Lehman"), pursuant to

section 105(a) of title 11 of the United States Code, for entry of an order compelling Giants

Stadium LLC ("Giants Stadium") to comply with the subpoenas issued to it on or about July 27,

2011 and April 9, 2012 (together, the "Subpoenas"), all as more fully described in the Cross-

Motion; and the Court having jurisdiction to consider the Cross-Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order M-431

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Cross-Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due

and proper notice of the Cross-Motion having been provided in accordance with the procedures

set forth in the amended order entered June 17, 2010 governing case management and

administrative procedures [Docket No. 9635], and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the Cross-Motion; and upon the

1

Court's consideration of the Cross-Motion and the record of the hearing to consider the relief requested in the Cross-Motion; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that, pursuant to Section 105(a) of the United States Bankruptcy Code, the Cross-Motion is granted; and it is further

ORDERED that Giants Stadium must comply with the July 27, 2011 Subpoena by producing a witness to testify on Giants Stadium's behalf with respect to all of the topics identified in Exhibit A to the July 27, 2011 Subpoena at a date and time to be agreed upon by Lehman and Giants Stadium; and it is further

ORDERED that Giants Stadium must comply with the April 9, 2012 Subpoena by producing documents in response to all of the requests contained therein, with such production commencing no later than thirty days following the entry of this Order; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2012
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE