# EXHIBIT C

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

Southern _____ DISTRICT OF _____ New York

In re Lehman Brothers Holdings Inc., et al.,

**SUBPOENA FOR RULE 2004 EXAMINATION**

Debtor

Case No. 08-13555(JMP)

To:
Giants Stadium LLC
Meadowlands Sports Complex
50 State Route 120
East Rutherford, NJ 07073

Chapter 11

☒ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below, by an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A Attached Hereto. A copy of the court order authorizing the examination is also attached.

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153 | September 13, 2011 |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

## Documents Requested By Exhibit A Attached Hereto

| PLACE | DATE AND TIME |
|---|---|
| | |
| ISSUING OFFICER SIGNATURE AND TITLE | DATE<br>July 27, 2011 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Richard W. Slack, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000 | |

FORM 254 Subpoena in for Rule 2004 Examination (12/06)

| PROOF OF SERVICE | | |
|---|---|---|
| SERVED | Date | Place |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1. "BNY" shall mean the Bank of New York Mellon Corporation.

2. "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

3. "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF, dated October 2, 2008.

4. "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

5. "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

6. "Debtor" or "Debtors" shall mean LBHI and/or LBSF and/or any of their affiliates (including, but not limited to, pre-bankruptcy, LBI), and any person or entity acting on the Debtors' behalf or under their control.

7. "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

8. "FSA" shall mean Financial Security Assurance, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

08-13555-mg    Doc 31653-3    Filed 10/24/12    Entered 10/24/12 20:54:09    Exhibit C
Pg 6 of 15

9.    "Goldman" shall mean Goldman, Sachs & Co.

10.   "Giants Stadium" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors (such as Goldman), counsel (such as S&C), subsidiaries, affiliates, predecessors, successors, or representatives.

11.   "Indenture Agreement" shall mean that certain Indenture of Trust, dated as of August 1, 2007, between Giants Stadium LLC, a New Jersey limited liability company, and The Bank of New York Mellon, a New York banking corporation, as trustee.

12.   "LBHI" shall mean Lehman Brothers Holdings Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

13.   "LBSF" shall mean Lehman Brothers Special Financing Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

14.   "LBI" shall mean Lehman Brothers Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

15.   "Master Agreement" shall mean any of the following: (i) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by Financial Guaranty Insurance Company; and/or (ii) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by Financial Security Assurance, Inc.

16.   "NFL" shall mean the National Football League.

US_ACTIVE:\43755575\02\58399.0008        2

17. "S&C" shall mean Sullivan & Cromwell LLP.

18. "Settlement Amounts" shall mean the amounts purportedly owed to Giants Stadium by the Debtors, as set forth in the Calculation Statements.

19. "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

20. "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008 purporting to terminate the Transactions.

21. "Third Supplemental Indenture" shall mean that certain Third Supplemental Indenture of Trust, dated as of September 18, 2008, between Giants Stadium LLC, a New Jersey limited liability company, and The Bank of New York Mellon, a New York banking corporation, as trustee under the Indenture Agreement, as supplemented by the First Supplemental Indenture of Trust, dated as of August 1, 2007 and by the Second Supplemental Indenture of Trust, dated as of May 15, 2008.

22. The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

23. The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following topics is from and including January 1, 2007 through the present, unless otherwise indicated within the requests below.

## MATTERS FOR DEPOSITION TESTIMONY

1. The NFL's rights and/or obligations with respect to Giants Stadium's decision to terminate the Transactions.

2. Communications between Giants Stadium and the NFL in connection with the termination of the Transactions, including, but not limited to, communications reflected in documents bates labeled GStad_LB_0020630-1, GStad_LB_0020367, GStad_LB_21059-60, and GStad_LB_20217.

3. The terms and meaning of the Third Supplemental Indenture.

4. The negotiations which led to, and the reasons for entering into, the Third Supplemental Indenture.

5. The rights and/or obligations of FSA and FGIC with respect to Giants Stadium's decision to terminate the Transactions.

6. Any rights of LBSF, LBHI and/or LBI under the Indenture, the Master Agreement and Confirmations, including any right of LBSF, LBHI and/or LBI to consent to the Third Supplemental Indenture.

7. The identification of the person or persons who made the decision to attempt to terminate the Transactions.

8. Any communications between Giants Stadium and any other party, including but not limited to, the Debtors, FSA, FGIC, and/or BNY, concerning the attempted termination of the Transactions, including any effect or impact on any party's rights and/or obligations under the Indenture resulting from or related to Giants Stadium's termination of the Transactions.

9. Any communications between Giants Stadium and any other party, including but not limited to, the Debtors, FSA, FGIC, and/or BNY, related to the Third Supplemental Indenture.

10. Giants Stadium's understanding of the reasons why, on September 17, 2008, it took the position that it "must terminate [the Transactions] tomorrow to preserve the value of Stadco's (significant) claims against the estate of the Lehman swap counterparty," as reflected in Christine Procops' email of September 17, 2008, bates labeled GStad_LB_0052953.

11. All communications between or among Giants Stadium and any other party, including but not limited to, Debtors, S&C, Goldman, FSA FGIC, and/or BNY regarding Giants Stadium's position on September 17, 2008 it "must terminate [the Transactions] tomorrow to preserve the value of Stadco's (significant) claims against the estate of the Lehman swap counterparty"; such communications include, but are not limited to, communications reflected in documents bates labeled GStad_LB_0052953 and GStad_LB_0048701-2.

12. The terms and meanings of the Master Agreement, the Confirmations, the Indenture, and the Third Supplemental Indenture.

13. Giants Stadium's proof of claim, including the calculation of any alleged damage thereunder and all assumptions employed in such calculation.

14. Communications by Giants Stadium or any of its advisors with LBSF and LBHI during the period September 10 through September 30.

15. The resignation by LBI as the broker-dealer for the Bonds.

16. The role of Goldman in connection with each document on the Giants Stadium Privilege log where Goldman was an author or recipient of the document.

17. The terms of any retention of Goldman on behalf of Giants Stadium.

      18.    The sale of Giants Stadium's claim in the Lehman bankruptcy to Bank of America, N.A., and any subsequent transfer.

      19.    Attempts by Giants Stadium to lower its funding costs in connection with the Bonds, including, but not limited to, refinancing, at any time that the Bonds were outstanding.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                       :    08-13555 (JMP)
                                                               :
                                        Debtors.               :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the Debtors to issue subpoenas for the production of documents and the examination of persons and entities that have information relevant to the administration of the Debtors' estates, including without limitation, the Debtors' former employees, lenders, investors, creditors and counterparties to transactions with Debtors, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval of the relief requested in the Motion being within the sound discretion of the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule 2004, to issue such subpoenas as may be necessary to compel the production of documents and the testimony of witnesses in connection with the administration of these cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin production on a rolling basis, which production shall be completed prior to the later of seventy-five (75) days from the service of a subpoena or such other date agreed to by the Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's subpoena, other than those documents withheld under a claim of privilege or (2) serve on the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the objection within ten (10) days following the date such objection is served on the Debtor (or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a witness withholds any documents from the production based upon a claim of privilege, such witness is directed to provide counsel for the Debtor with a privilege log, containing the information required under Bankruptcy Rule 7026, within ten (10) days following the completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination upon reasonable notice and, absent other agreement with the Debtor, within thirty (30) days of the date of the service of a deposition subpoena upon such witness (unless such subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any other party under applicable law to object to or oppose any subpoena the Debtors may serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the Southern District of New York and (iv) counsel for the party subject to such subpoena that has appeared in these cases; and it is further

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

4

ORDERED that, this Order is without prejudice to the Debtors' right to file further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a) or any other applicable law.

Dated: New York, New York
       November 23, 2009

                                             *s/ James M. Peck*
                                             HONORABLE JAMES M. PECK
                                             UNITED STATES BANKRUPTCY JUDGE