WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

-------------------------------------------------------------------x

**REPLY TO RESPONSES OF ALLIANCEBERNSTEIN L.P.**
**TO DEBTORS' ONE HUNDRED FORTY-THIRD AND ONE HUNDRED**
**NINETY-EIGHTH OMNIBUS OBJECTIONS TO CLAIMS (LATE-FILED CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22737] (the "Plan") for the entities in the above-referenced chapter 11 cases (collectively, the "Chapter 11 Estates"), files this reply (the "Reply") to the responses of AllianceBernstein L.P. ("AllianceBernstein") dated June 15, 2011 [ECF No. 17710] (the "June Response") and October 13, 2011 [ECF No. 20799] (the "October Response" and, together with the June Response, the "Responses"), opposing, respectively, the Debtors' One Hundred Forty-Third Omnibus Objection to Claims (Late-Filed Claims) [ECF No.

16856] and the Debtors' One Hundred Ninety-Eighth Omnibus Objection to Claims [ECF No. 19902] (the "Objections"),[1] and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. As stated in the Responses, AllianceBernstein filed the proofs of claim included on Exhibit A attached hereto (the "Late-Filed Claims") thirty days after the applicable bar date pursuant to Rule 3005(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on behalf of certain investment funds (the "Funds")[2] for which AllianceBernstein allegedly serves as investment advisor. The June Response alleges that certain Funds are (i) creditors of Lehman Brothers Special Financing Inc. ("LBSF" and, together with LBHI, the "Debtors") as a result of LBSF's termination of certain ISDA swap agreements (the "Swap Agreements") and (ii) creditors of LBHI pursuant to certain purported guarantees of LBSF's obligations under the Swap Agreements. The October Response alleges that the Pension Fund is a creditor of LBHI pursuant to LBHI's purported guarantee of the obligations of Lehman Brothers International (Europe) (together with LBHI's purported guarantees of LBSF's obligations, the "Guarantees").

2. Pursuant to Bankruptcy Rule 3005(a), if a creditor does not timely file a proof of claim, any entity that is "liable with the debtor" to such creditor may file proof of such claim within 30 days after the expiration of the time for filing claims. FED. R. BANKR. P. 3005(a). The Funds failed to file timely proofs of claim against the Debtors, and AllianceBernstein admits in the Responses that, in its role as advisor and manager for the Funds, it failed to advise the Funds

---

[1] This Reply only addresses the Responses. The Plan Administrator reserves its right to file reply briefs responding to all other responses received in opposition to the Objections.

[2] The identities of the Funds are (i) Philips Pension Trustees Limited as Trustee of the Philips Pension Fund (the "Pension Fund") and (ii) the funds listed in the June Response. (October Response at 1; June Response at 1, n. 1.)

2

on filing proofs of claim against Debtors. For this reason, AllianceBernstein argues that the Funds "might hold AllianceBernstein liable for their failure to timely file their claims." (June Response at ¶ 21; October Response at ¶ 22.) According to the Reponses, the Funds would base this asserted liability on AllianceBerstein's "error correction policy," which provides that "when AllianceBernstein discovers it has made a mistake in performing any of its responsibilities, its policy is to timely correct the error and 'put the client in the position they would have been in had [AllianceBernstein] not made the error.'" *Id.* According to AllianceBernstein, the "error," in this case, is AllianceBernstein's failure to advise on, or procure, the filing of proofs of claim against the Debtors. Thus, to put the Funds in the position they would have been but for AllianceBernstein's alleged error, AllianceBernstein states that it may owe damages to the Funds "identical to the creditor recoveries the Funds would have received from LBSF and LBHI had the claims been timely filed." (June Response at ¶ 22; October Response at ¶ 23.)

    3.  While the Plan Administrator agrees that the phrase "liable with the debtor" has been read broadly by courts in this and other districts, the Late-Filed Claims are nothing more than a thinly veiled attempt to bootstrap, through Bankruptcy Rule 3005(a), possible claims that the Funds may have against AllianceBernstein for its failure to take certain actions in its relationship with the funds – in other words, claims that have nothing to do with the Debtors. AllianceBernstein's potential liability to the Funds is not "the same debt" as the debt that LBSF and LBHI allegedly owe under the Swap Agreements and Guarantees. Although AllianceBernstein argues that it served as a "contingent surety" in respect of the Swap Agreements and Guarantees, in fact, it issued no form of guarantee in respect of the Swap Agreements and Guarantees, and does not argue that it could be liable for the losses sustained by the Funds due to the Debtors' inability to pay the Funds in full on account of the Swap Agreements and Guarantees.

3

Rather, AllianceBernstein argues that it could be liable for the Funds' accidental forfeiture of any distribution entitlement under the Plan due to AllianceBernstein's own alleged error that purportedly caused the Funds' failure to file timely claims against the Debtors. (Notably, the Funds have never filed *any* proofs of claim against LBSF and LBHI, even after the applicable bar date for filing proofs of claim.) The Debtors do not share AllianceBernstein's liability to the Funds on account of AllianceBernstein's potential failure to perform in its function as advisor or manager of the Funds, and this Court should decline AllianceBernstein's invitation to expand the scope of Bankruptcy Rule 3005(a) to include any potential claims of clients for failures by their agents or advisors.

4.  Because AllianceBerstein is not liable with LBSF or LBHI for the same underlying debt, Bankruptcy Rule 3005 does not apply to the Late-Filed Claims. Accordingly, the Late-Filed Claims violate this Court's July 2, 2009 order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271], as these claims were filed after the applicable bar date. Because the Late-Filed Claims fail to comply with the Bar Date Order, the Plan Administrator requests that they be disallowed and expunged in their entirety.

## BACKGROUND

5.  On December 6, 2011, the Court entered the order confirming the Plan. The Plan became effective on March 6, 2012. Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

6.  By order dated July 2, 2009 (the "Bar Date Order"), the Court established, among other things, September 22, 2009, at 5:00 p.m. (Eastern Time) as the deadline to file proofs of claim against the Chapter 11 Estates (the "Bar Date"). Holders of claims against the Chapter 11 Estates based on a guarantee or a derivatives contract were also required to file a proof of claim on

4

or before the Bar Date; however, holders of such claims were also required to submit an electronic Guarantee Questionnaire or Derivatives Questionnaire (as such terms are defined in the Bar Date Order), as applicable, thirty days after the Bar Date. (Bar Date Order at 7-8.)

7. The Bar Date Order expressly provided that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order . . . shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto)." (*Id.* at 9-10.) A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com. In order to be timely-filed, proofs of claim must have been "**actually received**" on or before the Bar Date. (*Id.* at 3 (emphasis in original).)

8. Claimants received notice of the Bar Date Order via mail. (*See* Notice of Deadlines for Filing Proofs of Claim (the "Bar Date Notice").) The Bar Date Notice, which was also published in The New York Times (International Edition), The Wall Street Journal (International Edition), and The Financial Times, notified claimants that proofs of claim against the Chapter 11 Estates must be received on or before the Bar Date. (Bar Date Notice at 1, 3.) The Bar Date Notice also prominently specified the Bar Date and stated in bold-face type that "any creditor who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date . . . for any claim such creditor holds or wishes to assert against the Debtors, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect to such claim)." (*Id.* at 6.)

## THE LATE-FILED CLAIMS SHOULD NOT BE DEEMED TIMELY FILED

### A. Claims Filed Under Bankruptcy Rule 3005 Must Arise from the Same Injury, Damages, or Debt

9. Pursuant to Bankruptcy Rule 3005(a), if a creditor does not timely file a proof of claim, any entity that is "liable with the debtor" to that creditor may file proof of such claim within 30 days after the expiration of the time for filing claims.[3]  FED. R. BANKR. P. 3005(a). The statutory basis for Bankruptcy Rule 3005(a) is section 501(b) of the Bankruptcy Code, which provides that "if a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file proof of such claim." 11 U.S.C. § 501(b). Together, section 501(b) and Bankruptcy Rule 3005(a) protect sureties, guarantors, indorsers, or other codebtors from a creditor that has decided to "forego participation in the debtor's estate in favor of simply pursuing the solvent codebtor." *Fisher v. Outlet Co.* (*In re Denby Stores, Inc.*), 86 B.R. 768, 773-74 (Bankr. S.D.N.Y. 1988).

10. The phrase "liable with the debtor" appears not just in Bankruptcy Rule 3005(a) and section 501(b), but also in sections 502(e)(1) and 509(a) of the Bankruptcy Code. AllianceBernstein contends that "[c]ourts look to the case law for these three Bankruptcy Code sections interchangeably for guidance on whether a party is 'liable with the debtor.'" (June Response at ¶ 14; October Response at ¶ 15.) Citing to numerous cases that interpret the phrase "liable with the debtor" in the context of sections 501(b), 502(e)(1), or 509(a), AllianceBernstein argues that the phrase "'liable with the debtors' casts a very broad ambit," and that therefore, for purposes of Bankruptcy Rule 3005(a), it, too, is "liable with" the Debtors.

---

[3] The full text of Bankruptcy Rule 3005(a) reads as follows: "If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), any entity that is or may be liable with the debtor to that creditor, or who has secured that creditor, may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or Rule 3003(c) whichever is applicable. No distribution shall be made on the claim except on satisfactory proof that the original debt will be diminished by the amount of distribution."

11. The cases cited by AllianceBernstein do not support this conclusion. Collectively, the cases cited by AllianceBernstein stand for the proposition that an entity may be "liable with the debtor" in connection with the *same* injury, damages, or debt under the following circumstances:

- where two joint tortfeasors are liable for the same injuries. *See, e.g.*, *In re Wedtech Corp.*, 87 B.R. 279, 283-87 (Bankr. S.D.N.Y. 1988); *In re The Charter Co.*, 81 B.R. 644, 646-48 (M.D. Fla. 1987); *In re Baldwin-United*, 55 B.R. 885, 890 (Bankr. S.D. Ohio 1985).

- where two entities are co-liable for the same damages under a single contract. *See, e.g.*, *Wedtech*, 87 B.R. at 287 (noting that the term "liable with the debtor" includes co-liability arising from contractual obligations).

- where one entity is contractually liable for a debt as a primary obligor, and a second entity is contractually liable as a guarantor of that same debt. *See, e.g.*, *Baldwin-United*, 55 B.R. at 891 (noting that the term "liable with the debtor" includes co-liability arising from guarantor or surety relationships).

- where one entity is liable for a claimant's injuries as a tortfeasor, and a second entity is liable for those same injuries under federal law. *See, e.g.*, *In re Dow Corning*, 244 B.R. 705, 715 (Bankr. E.D. Mich. 1999).

- where one entity is liable for damages under a contract, and a second entity is liable for those same damages under federal law. *See, e.g., In re White Motor Corp.*, 731 F.2d 372, 373-74 (6th Cir. 1984) ("It does not matter, contrary to White Motor's assertions, that the source of Pension Benefit's liability for the pension benefits, 29 U.S.C. § 1322, is different from the source of White Motor's liability, the guarantee letters. The fact remains that each party is liable to the same White Motor pensioners for the same $46 million worth of pension benefits to be paid out in the same fashion.").

- where one entity is liable for unpaid withholding taxes under the Internal Revenue Code, and a second entity is liable for those same taxes, as a "responsible individual" under the Internal Revenue Code. *See, e.g.*, *In re Fiesole Trading Corp.*, 315 B.R. 198, 204-07 (Bankr. D. Mass. 2004).

As the Advisory Committee Note to Bankruptcy Rule 3005(a) makes clear, "anyone who may be liable *on a debt of the debtor*, including a surety, guarantor, indorser, or other codebtor, is authorized to file in the name of the creditor of the debtor." *See In re DeMert & Dougherty, Inc.*, 227 B.R. 508, 514 (Bankr. N.D. Ill. 1998) (quoting the Advisory Committee Note) (emphasis

7

added). AllianceBernstein correctly notes that the phrase "liable with the debtor" is not limited to a specific co-obligor theory; an entity may be "liable with the debtor" even where the legal basis for that entity's liability – *i.e.*, tort, contract law, or statute – differs from the legal basis of the debtor's liability. But AllianceBernstein ignores the common, defining characteristic of each of these cases: each involves two parties that were liable for the same underlying injury, damages, or debt of the debtor. The debt must be the same because the purpose of Bankruptcy Rule 3005(a) is to protect the co-obligor from the consequences of the creditor's inaction and "to assure that the debtor's estate bears its share of the debt involved." *Id.* (citing *Collier on Bankruptcy*, ¶ 3005.01 at 3005-2 (15th rev. ed. 1998)); *see also In re White Motor Corp.*, 731 F.2d at 373 ("The purpose of this provision is to protect a co-debtor or surety from creditors who wait until bankruptcy proceedings are finished to recover from the solvent debtor, leaving that debtor with no recourse against his co-debtor who has been discharged from all obligations by the completed bankruptcy proceedings.") (citing *Collier on Bankruptcy* ¶ 502.05 at 502-76 (15th ed. 1981)).

        12.      For example, in *Dow Corning*, the Bankruptcy Court for the Eastern District of Michigan determined that (i) the government was "obligated to pay for or provide medical care to federal beneficiaries" pursuant to a mandate in federal law, and (ii) the debtor "[was] liable to the federal beneficiary for this same medical treatment" pursuant to principles of tort law. *Dow Corning*, 244 B.R. at 715. As a direct result of this determination, the bankruptcy court concluded that "[t]he Debtors and the Government [were], therefore, both potentially liable to the federal beneficiary for the same injuries." *Id.* Accordingly, the bankruptcy court held that that the government was an entity that was "liable with the debtor" under section 502(e) of the Bankruptcy Code. *Id.*

8

13. Attempting to analogize *Dow Corning* to the present dispute, AllianceBernstein characterizes *Dow Corning* as a case in which "an entity [was] required by statute or regulation to cover the debtor's payment obligation as an alternative source of recovery." (Response at 7.) AllianceBernstein goes so far as to read *Dow Corning* (and the other cases cited in the Response) to mean that the term "liable with the debtor" encompasses "any entities that provide alternate sources of recovery for a creditor." (*Id.* at 8.) It is clear, however, both from *Dow Corning* and the other cases cited by AllianceBernstein, that whether an entity is "liable with the debtor" does not turn on whether the entity provides an alternate source of recovery for the debtor's payment obligations, but whether the debtor's payment obligations and the entity's payment obligations arise from the same underlying injury, damages, or debt.

B.   **AllianceBernstein's Potential Liability Arises From A Different Injury And Is Not A Shared Debt of the Debtors**

14. To the extent that AllianceBernstein owes any damages to the Funds, these damages arise from a completely different injury, and are of a completely different nature from the amounts that the Debtors could owe in respect of the Swap Agreements and Guarantees if the Funds had filed timely proofs of claim. The basis of the Funds' claims would be an event of default that purportedly occurred in respect of prepetition contracts between the Funds and the Debtors, and the subsequent termination, by the Funds, of all outstanding transactions under the Swap Agreements. In contrast, AllianceBernstein's potential liability to the Funds arises from its own potential mistakes, errors, or omissions as an advisor and manager of the Funds, and its potential failure to shepherd the Funds through the requirements of the Bar Date Order. Because of this error, AllianceBernstein believes it is now obligated, under its error correction policy, to "put the client in the position they would have been in had [AllianceBernstein] not made the

9

error." This is not an obligation that the Debtors share with AllianceBernstein under any circumstances.

15. Moreover, given the function of AllianceBernstein's error correction policy, it is impossible for the Debtors to share any liability with AllianceBernstein. If the Funds were to have allowed claims against the Debtors, AllianceBernstein purportedly would have no liability – not even for the difference between what the Funds recover from the Debtors and the full amount of their claims, as would be the case if AllianceBernstein were, in fact, a surety. Rather, the only reason AllianceBernstein may owe damages to the Funds is because, allegedly due to AllianceBernstein's potential error, the Funds are now "barred, estopped, and enjoined" by the Bar Date Order from asserting claims against the Debtors. (Bar Date Order at 9-10.) Any liability owed to the Funds is therefore an either/or proposition: either the Funds have allowed claims against the Debtors that the Debtors must pay; or, due to AllianceBernstein's mistake, the Funds have forfeited their claims, and therefore AllianceBernstein must pay. Neither liability is shared between AllianceBernstein and the Debtors.

16. The purpose of Bankruptcy Rule 3005(a) would therefore not be served if it were applied to the Late-Filed Claims. As noted above, Bankruptcy Rule 3005(a) is meant to protect a debtor's co-obligor from the *creditor's* inaction in failing to file timely proofs of claim against the debtor, and to assure that the debtor's estate bears its share of the debt involved. But Bankruptcy Rule 3005(a) does not, in this case, serve to protect AllianceBernstein from the inaction of the Funds. Presumably, if the Funds had been properly advised by AllianceBernstein and still chosen not to file proofs of claim against the Debtors, then AllianceBernstein would have no potential liability. AllianceBernstein therefore does not need protection from the Funds' inaction. Instead, AllianceBernstein is seeking protection from the consequences of its *own*

10

alleged errors and omissions. Bankruptcy Rule 3005(a) was not drafted to provide such protection to the advisors or agents of creditors.

17. AllianceBernstein ultimately offers only two arguments in support of its proposition that it is "liable with" the Debtors. First, AllianceBernstein asserts that the liabilities are the same because they arose at the same time. There is simply no basis in law for this assertion, and AllianceBernstein cites no case-law to support the proposition that liabilities are identical by definition because they are coterminous. Indeed, courts often hold the opposite: entities may be co-liable even where their respective liabilities arose at different times. *See, e.g.*, *P.T. Bank Central Asia v. Wong*, 901 F.Supp. 572, 576 (E.D.N.Y. 1995) (guarantor co-liable with primary obligor even though guarantee was executed prior to funds being lent to primary obligor). Thus, if AllianceBernstein had issued an actual guarantee of the Debtors' obligations at any time before or after the execution of the Swap Agreements and Guarantees, AllianceBernstein's potential liability would have arisen at a different time, but would be a textbook example of being "liable with the Debtors."

18. Moreover, the assertion is factually wrong. If the Funds held allowed claims in respect of the Swap Agreements and Guarantees, these would be prepetition claims based on prepetition agreements. Any damages that AllianceBernstein owes to the Funds, however, arose postpetition, when AllianceBernstein allegedly failed in its duty to advise the Funds of the Bar Date. AllianceBernstein argues that its potential liability arose at the same time as the Funds' claims against the Debtors, *i.e.*, when the Funds first entered the Swap Agreements and Guarantees with LBSF and LBHI, as if the Funds could somehow assert "contingent" claims against AllianceBernstein. But AllianceBernstein is not a debtor under the Bankruptcy Code, and therefore, the Funds could not assert claims against AllianceBernstein, albeit "contingent" claims,

11

until they sustained an actual injury on account of AllianceBernstein's error.  If they did sustain such injury, it was postpetition, long after the Funds purportedly executed the Swap Agreements and Guarantees.

19.     Second, AllianceBernstein attempts to establish an identity between its potential liability under its error correction policy and the Debtors' alleged liability on the grounds that the two liabilities are equal in amount, *i.e.*, AllianceBernstein's damages to the Funds are equal to the amount that the Funds would have recovered from the Debtors had the Funds' claims been timely filed.  Again, AllianceBernstein cannot cite to a single case to support the proposition that equal amount is a defining characteristic of co-liability.  Moreover, this assertion is also false, because it disregards the distinction between the amount of a claim, and the amount of distributions that a creditor may receive on account of that claim.  If the Funds had allowed claims against the Debtors, the Debtors' liability would be for the full amount of those claims; what amounts the Funds could recover, however, in the form of Plan distributions, is a function of the Plan.  Thus, if AllianceBernstein were, in fact, a surety, the Funds could demand payment of the full amount of their claims from AllianceBerstein as well.  But AllianceBernstein is only potentially liable to the Funds for amounts equal to the distributions that the Funds forfeited when they failed to file timely claims against the Debtors.  Therefore, AllianceBernstein's liability to the Funds is in fact equal to only a fraction of what the Funds allegedly could have asserted against the Debtors under the Swap Agreements and Guarantees.

20.     The mere fact that the Funds *might* seek some form of recovery from AllianceBernstein on account of AllianceBernstein's failure to advise the Funds does not, on its own, qualify AllianceBernstein as an entity that is "liable with the debtor."  The holding in *In re DeMert & Dougherty, Inc.*, 227 B.R. 508, 514 (Bankr. N.D. Ill. 1998) is instructive in this regard.

12

In that case, the assignee of a debtor's accounts receivable filed a claim against the debtor under Bankruptcy Rule 3005(a) because, prior to assigning the accounts receivable, the debtor had promised certain credits and setoffs to the account debtors.  The assignee argued that it qualified as an "entity that is or may be liable with the debtor" because the account debtors might raise those credits and setoffs in resisting the assignee's collection efforts.  The court held that the fact that the claimant "agreed to offset or concede some of the credits claimed by the [other] entities… does not equate with the phrase 'is or may be liable with the debtor' under Bankruptcy Rule 3005(a)." *Id.* at 515.  The claimant was "in no way liable to or for the claimed setoffs or credits" between the Debtor and the creditors.  *Id.* at 514.  Here, AllianceBernstein is in no way liable to or for the amounts that the Debtors would allegedly owe to the Funds if the Funds had filed timely claims against the Debtors.  That the Funds can somehow claim damages from AllianceBernstein based on a fiduciary relationship with AllianceBernstein, which AllianceBernstein may have breached, does not make AllianceBernstein "liable with the debtor."

21.     Indeed, if one takes AllianceBernstein's argument to its logical conclusion, then every attorney, indenture trustee, nominee, or other authorized agent who failed to file a proof of claim on behalf of a client would be automatically entitled to an additional thirty days to file the same proof of claim under Bankruptcy Rule 3005(a), on the grounds that the client might hold the agent liable for malpractice, or on other similar grounds.  Bankruptcy Rule 3005(a) clearly was not drafted to allow agents an end-run around claims bar dates in unfortunate circumstances such as these, which are familiar to courts in this and other districts.  *See, e.g.*, *In re Kmart Corp.*, 381 F.3d 709, 716 (7th Cir. 2004) (attorney inattention and lack of supervision does not qualify as "excusable neglect" warranting extension of time to file proof of claim); *In re Musicland Holding Corp.*, 356 B.R. 603, 609 (Bankr. S.D.N.Y. 2006) (same).  The Court should not expand the scope

13

of Bankruptcy Rule 3005(a) such that it applies in circumstances where an advisor or agent fails to perform in its duty to advise a client in, or procure, the filing of proofs of claim against a debtor. Any damage claims clients such as the Funds may have against their advisors are not debts of the Debtors. If AllianceBernstein is to be penalized for failing to advise or file claims on behalf of the Funds that it manages, it should not be permitted to pass these penalties on to the Debtors, and its losses on to other creditors who diligently abided by the terms of the Bar Date Order.

## RESERVATION OF RIGHTS

22. In the event that the Court denies the Objections with respect to the Late-Filed Claims and/or grants the relief requested in the Responses, the Plan Administrator reserves the right to object to the validity and amount of the Late-Filed Claims. The Plan Administrator reserves the right to conduct discovery as to the Late-Filed Claims and any matters raised in the Responses and to supplement this filing as a result thereof.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the Objections, the Plan Administrator respectfully requests that the Court enter an order disallowing and expunging the Late-Filed Claims in their entirety and granting such other and further relief as the Court may deem just and appropriate.

Dated: October 26, 2012
       New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

14

## Exhibit A

## Late-Filed Claims:

| Claimant Name | Claim Number | Omnibus Objection Number |
|---|---|---|
| ALLIANCE BERNSTEIN ALTERNATIVE INVESTMENTS (MASTER) FIXED INCOME HIGH ALPHA PORTFOLIO | 43949 | 143 |
| ALLIANCE BERNSTEIN ALTERNATIVE INVESTMENTS (MASTER) FIXED INCOME HIGH ALPHA PORTFOLIO | 43950 | 143 |
| ALLIANCE BERNSTEIN BOND FUND, INC. - ALLIANCE BERNSTEIN INTERMEDIATE BOND PORTFOLIO | 43944 | 143 |
| ALLIANCE BERNSTEIN BOND FUND, INC. - ALLIANCE BERNSTEIN INTERMEDIATE BOND PORTFOLIO | 43945 | 143 |
| ALLIANCE BERNSTEIN POOLING PORTFOLIOS, THE ALLIANCE BERNSTEIN INTERMEDIATE DURATION BOND PORTFOLIO | 43942 | 143 |
| ALLIANCE BERNSTEIN POOLING PORTFOLIOS, THE ALLIANCE BERNSTEIN INTERMEDIATE DURATION BOND PORTFOLIO | 43943 | 143 |
| ALLIANCE BERNSTEIN VARIABLE PRODUCTS SERIES FUND INC. - ALLIANCE BERNSTEIN INTERMEDIATE BOND PORTFOLIO | 43938 | 143 |
| ALLIANCE BERNSTEIN VARIABLE PRODUCTS SERIES FUND INC. - ALLIANCE BERNSTEIN INTERMEDIATE BOND PORTFOLIO | 43939 | 143 |
| ALLIANCEBERNSTEIN COLLECTIVE INVESTMENT TRUST SERIES ALLIANCEBERNSTEIN US STRATEGIC CORE-PLUS FIXED INCOME COLLECTIVE TRUST | 43935 | 143 |
| ALLIANCEBERNSTEIN COLLECTIVE INVESTMENT TRUST SERIES ALLIANCEBERNSTEIN US STRATEGIC CORE-PLUS FIXED INCOME COLLECTIVE TRUST | 43936 | 143 |

US_ACTIVE:\44090079\7\58399.0011

| **Claimant Name** | **Claim Number** | **Omnibus Objection Number** |
|---|---|---|
| ALLIANCEBERNSTEIN COLLECTIVE INVESTMENT TRUST SERIES ALLIANCEBERNSTEIN US CORE FIXED INCOME COLLECTIVE TRUST | 43937 | 143 |
| ALLIANCEBERNSTEIN COLLECTIVE INVESTMENT TRUST SERIES ALLIANCEBERNSTEIN US CORE FIXED INCOME COLLECTIVE TRUST | 43946 | 143 |
| ACM GLOBAL CREDIT - U.S. SUB-FUND | 43952 | 143 |
| SANFORD C. BERNSTEIN FUND II, INC. - BERNSTEIN INTERMEDIATE DURATION INSTITUTIONAL PORFTOLIO | 43947 | 143 |
| SANFORD C. BERNSTEIN FUND II, INC. - BERNSTEIN INTERMEDIATE DURATION INSTITUTIONAL PORFTOLIO | 43948 | 143 |
| SANFORD C. BERNSTEIN FUND, INC. - INTERMEDIATE DURATION PORFTOLIO | 43940 | 143 |
| SANFORD C. BERNSTEIN FUND, INC. - INTERMEDIATE DURATION PORFTOLIO | 43941 | 143 |
| PHILIPS PENSION TRUSTEES LTD, AS TRUSTEE OF THE PHILIPS PENSION FUND | 43934 | 198 |