WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                               :    **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
                                                    :
                    Debtors.                        :    **(Jointly Administered)**
------------------------------------------------------------------x

**REPLY TO RESPONSES OF CERTAIN CLAIMANTS TO THE NINETY-SECOND
OMNIBUS OBJECTION TO CLAIMS (NO BLOCKING NUMBER LPS CLAIMS) AND
SUPPLEMENT TO THE NINETY-SECOND OMNIBUS OBJECTION TO CLAIMS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 22737] (the "Plan") for the entities in the above-referenced chapter 11 cases (collectively, the "Chapter 11 Estates" or the "Debtors"), files this reply (the "Reply")[1] to the responses of certain claimants, one filed on April 5, 2012 [ECF Nos. 27526, 27528] (the "No Blocking Number LPS Claims Response") and the other served on the Plan Administrator on October 24, 2012 (the "Duplicative Blocking Number LPS Claims Response" and, together with the No Blocking Number LPS Claims Response, the "Responses"), opposing, respectively, the Ninety-Second Omnibus Objection to Claims (No Blocking Number

---

[1] The Plan Administrator also intends to file a declaration in support of this Reply prior to the hearing on this matter.

LPS Claims), filed on February 14, 2011 [ECF No. 14472] (the "Ninety-Second Omnibus Objection to Claims"), and the Supplement to the Ninety-Second Omnibus Objection to Claims, filed on September 21, 2012 [ECF No. 31050] (the "Supplemental Omnibus Objection to Claims" and, together with the Ninety-Second Omnibus Objection to Claims, the "Objections"),[2] and respectfully represents as follows[3]:

## PRELIMINARY STATEMENT

1. In connection with the creation of the Bar Date Order, the Debtors identified that for a subset of securities generally issued to international investors, there was no indenture trustee or other party to file a claim on behalf of all holders. As a result, the Debtors conducted extensive negotiations with counsel at a large number of law firms to create procedures that would identify and enable holders of such securities to file claims in a manner that would validate ownership and avoid duplication of claims. The Bar Date Order expressly requires that claims based on Lehman Programs Securities must, among other things, include a Blocking Number. Without the Blocking Number requirement, the Plan Administrator faced the likelihood of making distributions on numerous duplicative claims. The Blocking Number requirement has been critical to the Plan Administrator's ability to reconcile more than 21,000 Lehman Programs Securities claims, and even with that critical information, reconciliation of those claims has required considerable expenditure of resources by the Debtors.

2. The procedures were created in such a way that only one Blocking Number could be issued for any particular Lehman Programs Security for each clearing agency account

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objections. To the extent of any inconsistency between the defined terms in the Ninety-Second Omnibus Objection to Claims and the Supplemental Omnibus Objection to Claims, the defined terms contained in the Supplemental Omnibus Objection to Claims shall govern.

[3] This Reply only addresses the Responses. The Plan Administrator reserves its right to file reply briefs responding to all other responses received, if any, in opposition to the Objections.

2

US_ACTIVE:\44123452\4\58399.0008

holder, and only one party would be eligible to receive distributions for each such security. Despite these calculated, negotiated and necessary safeguards, the holders of the claims identified on <u>Exhibit A</u> hereto (such holders, the "<u>No Blocking Number Claimants</u>," and such claims, the "<u>No Blocking Number LPS Claims</u>") and the holders of the claims identified on <u>Exhibit B</u> hereto under the heading "*Claims to be Disallowed and Expunged*" (such holders, the "<u>Duplicative LPS Claimants</u>," and such claims, the "<u>Duplicative LPS Claims</u>") failed to comply with the terms of the Bar Date order and assert that, nonetheless, they should be entitled to distributions.

3. All of the No Blocking Number Claimants failed to provide a valid Blocking Number for the securities subject to their claims. All of the Duplicative LPS Claimants provided Blocking Numbers duplicative of other filed claims only long after the Lehman Programs Securities Bar Date. Notwithstanding the failure of the No Blocking Number Claimants and the Duplicative LPS Claimants (collectively, the "<u>Claimants</u>") to comply with the Bar Date Order, the Plan Administrator has sought, in lieu of valid and unique Blocking Numbers, documentation from the Claimants to validate ownership and avoid the risk of duplicate payments. The Claimants have been unable or unwilling to provide the necessary information to the Plan Administrator. As such, the Responses should be overruled and the Objections granted.

## BACKGROUND

4. The Plan Administrator incorporates herein by reference all of the background set forth in the Objections, including regarding the Blocking Number requirements of the Bar Date Order, as if fully set forth herein.

5. Since the filing of the Ninety-Second Omnibus Objection to Claims, the Plan Administrator, through its counsel, has been communicating and working with the Claimants, through their counsel, to reconcile ownership of the relevant Lehman Programs Securities and minimize the risk of duplication of claims based on such securities. After over a year of working

3

with the Claimants, the Claimants have been unwilling or unable to provide any information to the Plan Administrator that would lead to the conclusion that the securities are not claimed by other claimants.

6.     In order to move forward with the expungement of the No Blocking Number LPS Claims and the Duplicative LPS Claims, the Plan Administrator filed the Supplemental Omnibus Objection and now seeks final resolution of all of the claims that are subject to the Objections.

**I.     THE NO BLOCKING NUMBER LPS CLAIMS SHOULD NOT BE ALLOWED**

**A.     The No Blocking Number LPS Claims Are Not In Compliance With the Court's Order**

7.     First and foremost, the No Blocking Number LPS Claims[4] fail to comply with the Bar Date Order. The Blocking Number requirement for claims based on Lehman Program Securities was a valid exercise of the Court's authority to dictate the form and content of the proofs of claim filed in these cases. The Lehman Program Securities Procedures were designed to address the unique complexity of reconciling claims based on Lehman Programs Securities, and the Blocking Number requirement is a key component of those procedures.

8.     The Court has authority to enforce the Bar Date Order, including the Blocking Number requirement, and to disallow the No Blocking Number LPS Claims for violating it. *See In re A.H. Robins Co.*, 862 F.2d 1092, 1097 (4th Cir. 1988) (affirming disallowance of

---

[4] Several of the No Blocking Number LPS Claims are not explicitly referenced in the Responses (such omitted claims, the "Missing No Blocking Number LPS Claims"). Because the holders of the Missing No Blocking Number LPS Claims are known to be represented by the same counsel as the claims included in the Responses, the Plan Administrator assumes that the Missing No Blocking Number LPS Claims were omitted in error. The Plan Administrator also assumes that the supporting documentation included in the Responses can be produced for each Missing No Blocking Number LPS Claim the same as the other claims included in the Responses. Therefore, the Plan Administrator assumes the arguments set forth in the Responses apply to the Missing No Blocking Number LPS Claims, and, as such, all arguments set forth in this Reply also apply to the Missing No Blocking Number LPS Claims. The Plan Administrator reserves the right to object to the Missing No Blocking Number LPS Claims on the basis that they are not sufficiently covered by the Responses and/or supporting documentation cannot be provided by the holders of the Missing No Blocking Number LPS Claims.

4

claims for failure to comply with court-ordered procedures for filing proofs of claim).  To date, the No Blocking Number Claimants have failed to provide any Blocking Numbers for their claims. The Bar Date Order carries the same force and effect as any court order and should be enforced accordingly.

**B.    Allowing the No Blocking Number Claimants to Provide Extrinsic Evidence of Ownership Does Not Substitute for the Protections of the Blocking Number**

9.    The No Blocking Number Claimants argue that failure to obtain a Blocking Number should be excused because they can provide evidence that they purchased the Lehman Programs Securities prior to the Lehman Programs Securities Bar Date, and that their proofs of claim are "otherwise sufficiently documented." (No Blocking Number LPS Claims Response at p. 25, ¶ 4.)  The Blocking Number is not just a "mere formality," as described by the Claimants, see No Blocking Number LPS Claims Response at p. 26, ¶ 3, but is a critical piece of information that is necessary to allow the Plan Administrator to validate claims and eliminate risk of duplicative distributions.  Even if the No Blocking Number Claimants could produce credible evidence of ownership before and through the Lehman Programs Securities Bar Date, the risk still exists that the Plan Administrator will make distributions on duplicative claims.  For example, if a No Blocking Number Claimant's position is subsumed within a claim filed by a bank or broker that has a Blocking Number representing multiple positions for the same security—and the Plan Administrator believes that to be the case here—and both claims become allowed claims, then the Plan Administrator will pay twice for that portion of the security.  Therefore, simply treating the No Blocking Number LPS Claims as "valid" based on ownership of the relevant securities does not eliminate the risks that the Blocking Number requirement was designed to prevent. Duplicative payments would, of course, be prejudicial to the Chapter 11 Estates' legitimate creditors.

5

**C.     The No Blocking Number Claimants
        Have Not, and Cannot, Show a Low Risk of Duplication**

10.     The Plan Administrator has reviewed the No Blocking Number LPS Claims, the securities subject to those claims, and other information, including proofs of claim of other claimants, including banks and brokers based on securities with the same International Securities Identification Numbers (each, an "ISIN"), and has been unable to verify that the relevant securities have not been claimed by other parties.  As such, the Plan Administrator has determined that there is a high risk of duplication of the relevant securities and, if allowed, these No Blocking Number Claimants—if, in fact, they are the true beneficial holders of the securities—will likely receive multiple distributions for the same holdings.  Moreover, the No Blocking Number Claimants admit in the Responses that certain banks are likely filing "competing" claims on behalf of the No Blocking Number Claimants.  (No Blocking Number LPS Claims Response at pp. 20-21, ¶¶ 56-57; Duplicative Blocking Number LPS Claims Response at p. 3, ¶ 3.)  Allowing the No Blocking Number LPS Claims would, in all likelihood, lead to duplicative distributions.

11.     In order to allow claims of valid creditors and in accordance with the Court's guidance provided at the November 30, 2011 claims hearing, the Plan Administrator has gone to great lengths to work with all remaining claimants that failed to provide valid Blocking Numbers, including the No Blocking Number LPS Claimants, to determine if alternative documentation could be provided to mitigate the risks relating to claims based on Lehman Programs Securities that did not include valid Blocking Numbers.  The Plan Administrator has had success with many of these claimants by obtaining declarations from various parties, including custodians, agents and beneficial holders, proof of ownership and trading history, bank statements, and even, in some cases, indemnifications from claimants in the event of duplicative distributions.  *See*, *e.g.*, Stipulation and Order Between Lehman Brothers Holdings Inc. and Banque Cantonale

6

du Valais Regarding Certain Claims, entered on August 24, 2012 [ECF No. 30379] (resolving almost sixty claims filed without valid Blocking Numbers).

12. With respect to the No Blocking Number LPS Claims, however, there has been no progress on the part of the No Blocking Number Claimants to reduce any risk of duplication. Those claimants have been unable to provide any support that their securities are not claimed by other parties, such as banks or brokers.

13. To the contrary, the No Blocking Number Claimants' main point of contention, as set forth in the Responses, is that certain banks have "hi-jacked" the Blocking Numbers and filed "competing" claims with the No Blocking Number Claimants. (No Blocking Number LPS Claims Response at p. 26, ¶¶ 1-2; Duplicative Blocking Number LPS Claims Response at p. 4, ¶ 2.) If the No Blocking Number Claimants admit that they purchased the securities from the banks, see No Blocking Number LPS Claims Response at ¶¶ 3-48 and accompanying exhibits (showing purchase confirmations from the banks), and the banks filed valid claims for the same securities using valid Blocking Numbers, there is a high probability that the No Blocking Number Claimants' securities are included on the banks' claims.

14. The No Blocking Number Claimants argue that there is no way of knowing whether their securities are included on the "competing" banks' claims, and that it should be the Plan Administrator's responsibility to flesh out that information. The Plan Administrator has no way of knowing the identities of the beneficial holders included on the banks' claims, nor should the Plan Administrator be required to spend the time and incur costs to mediate and broker a dispute between the banks and beneficial holders. This is precisely the reason the Debtors included the Blocking Number requirement in the Bar Date Order; it is costly and burdensome to conduct these types of factual investigations.

15. As this Court stated at the November 30, 2011 hearing, to assure that the security in question is not the subject of some other claim that has been filed based on a Lehman Programs Security, the burden can be "placed on the claimant if the claimant, in effect, would need to demonstrate it's an independent claim and it's not part of anybody else's claim". (Tr. of Nov. 30, 2011 hearing at p. 44.) The No Blocking Number Claimants have not only failed to meet their burden, but they admit that their securities are likely covered by the "competing" bank claims. The No Blocking Number LPS Claims failed to comply with a key provision of the Bar Date Order, and have not been able to prove that such non-compliance is harmless error.

## II. THE DUPLICATIVE LPS CLAIMS SHOULD NOT BE ALLOWED

### A. The Duplicative LPS Claims Cannot Be Allowed Because the Duplicative LPS Claimants Will Receive Multiple Distributions

16. Subsequent to filing their Securities Programs Proofs of Claim (without Blocking Numbers), and the filing of an objection to their claims for failure to include Blocking Numbers, the Duplicative LPS Claimants provided the Plan Administrator with the Duplicative Blocking Numbers. The claims register, therefore, has two sets of claims that are each claiming for the exact same securities. One set of claims (i.e. the Surviving Claims)[5] was filed by certain banks, who included valid Blocking Numbers for the relevant securities prior to the Lehman Programs Securities Bar Date and all other information necessary to ultimately allow the portions

---

[5] To avoid any confusion for the remainder of this Reply, the Plan Administrator must remind the Court that, when referencing the Surviving Claims, the Plan Administrator is referring solely to claims 55404, originally filed by Citibank Privatkunden Ag & Co. KGAA (the "Citi Claim"), and claim 60564, originally filed by Frankfurter Sparkasse 1822 (the "Sparkasse Claim"), as set forth on Exhibit B. In the Responses, the Claimants, when challenging duplication, reference claims 58566, 58568 and 58569 (the "Other Competing Claims") and the Citi Claim. While the Plan Administrator suspects that the Other Competing Claims are, in fact, duplicative of several of the No Blocking Number LPS Claims, the Plan Administrator is not arguing at this time that there is, without any doubt, duplication with the Other Competing Claims. The high likelihood of duplication of the No Blocking Number LPS Claims is covered in Section I of this Reply, and the Plan Administrator reserves the right to seek disallowance and expungement of the No Blocking Number LPS Claims on the grounds of duplication. Furthermore, the Claimants do not reference the Sparkasse Claim in the Responses, but the Plan Administrator assumes that the Sparkasse Claim was omitted in error by the Claimants. The Plan Administrator assumes the arguments set forth in the Responses apply to issues relating to the Sparkasse Claim, and, as such, all arguments set forth in this Reply also apply to issues concerning the Sparkasse Claim.

8

of those claims covering the securities. The other set of claims (i.e. the Duplicative LPS Claims) was filed by the Duplicative LPS Claimants, who provided Blocking Numbers long after expiration of the Lehman Programs Securities Bar Date. The Plan Administrator cannot be expected to make distributions on both claims. *See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed.").

17. It is unclear to the Plan Administrator how the Duplicative LPS Claimants obtained the Duplicative Blocking Numbers. Blocking Numbers were only issued prior to the Lehman Programs Securities Bar Date, as they were issued as part of a request by security holders to block trading on their securities from the date of such request through the Lehman Programs Securities Bar Date. Since the Surviving Claims provided the correct Blocking Numbers in a timely manner, the Plan Administrator has reason to believe that the holders of the Surviving Claims, not the Duplicative LPS Claimants, properly obtained the relevant Blocking Numbers.

18. Notwithstanding the fact that the Duplicative LPS Claimants indicated in the No Blocking Number LPS Claims Response that there was likely duplication, the Duplicative LPS Claimants now assert in the Duplicative Blocking Number LPS Claims Response that duplication cannot be confirmed without additional information.[6] (Duplicative Blocking Number LPS Claims Response at p. 4, ¶ 5.) To the contrary, the presentment of the Duplicative Blocking

---

[6] Several of the Duplicative LPS Claims are not explicitly referenced in the Responses (such omitted claims, the "Missing Duplicative LPS Claims"). Because the holders of the Missing Duplicative LPS Claims are known to be represented by the same counsel as the claims included in the Responses, the Plan Administrator assumes that the Missing Duplicative LPS Claims were omitted in error. The Plan Administrator also assumes that the supporting documentation included in the Responses can be produced for each Missing Duplicative LPS Claim the same as the other claims included in the Responses. Therefore, the Plan Administrator assumes the arguments set forth in the Responses apply to the Missing Duplicative LPS Claims, and, as such, all arguments set forth in this Reply also apply to the Missing Duplicative LPS Claims. The Plan Administrator reserves the right to object to the Missing Duplicative LPS Claims on the basis that they are not sufficiently covered by the Responses and/or that supporting documentation cannot be provided by the holders of the Missing Duplicative LPS Claims.

9

Numbers to the Plan Administrator confirmed the Plan Administrator's expectations that the Duplicative LPS Claims are duplicative of other validly filed claims.

19.    As discussed in the Supplemental Omnibus Objection to Claims, the Plan Administrator undertook a detailed review of the Duplicative LPS Claims and the Surviving Claims. The Duplicative LPS Claims are suspected to have been filed by beneficial holders, whereas the Surviving Claims are expected to have been filed by the banks on behalf of the same beneficial holders of the relevant Lehman Programs Securities. The strongest indicator of duplication of a claim is a duplicative Blocking Number. The Plan Administrator examined matching Blocking Numbers, ISIN's, notional amounts and all other relevant information provided on the claims. Based on this information, the Plan Administrator concludes that the securities claimed in the Duplicative LPS Claims are included in the Surviving Claims and claimed by those banks. (*See* Supplemental Omnibus Objection to Claims.) Lending further support to duplication, the securities relating to the Duplicative LPS Claims were allegedly purchased by the Duplicative LPS Claimants directly from the banks that filed the Surviving Claims, as evidenced by the Duplicative LPS Claimants' own admissions and exhibits. (*See* No Blocking Number LPS Claims Response at ¶¶ 3-48 and accompanying exhibits; Guarantee Questionnaires submitted by Duplicative LPS Claimants.) To the extent a bank or broker receives a distribution related to a security, it is the bank and brokers responsibility to pass through such funds to the beneficial holder. The Duplicative LPS Claims should be expunged to prevent a windfall to the Duplicative LPS Claimants.

**B.    The Duplicative LPS Claims Should Not be Allowed In Lieu of the Surviving Claims**

20.    As set forth in the Supplemental Omnibus Objection to Claims, the Plan Administrator has, throughout the duration of these cases, decided to generally allow the claims of the banks, brokers, agents, custodians, or other representatives instead of the claims of the covered

10

08-13555-mg    Doc 31752    Filed 10/29/12    Entered 10/29/12 09:54:06    Main Document
                                        Pg 11 of 19

beneficial holders. This decision is practical and for administrative convenience. It is simpler for the Plan Administrator to communicate with a few highly sophisticated banks than numerous individual holders located internationally. To date, the Chapter 11 Estates have not been informed of any situation where a bank has failed to pass through distributions to its customers. For a variety of reasons, the Duplicative LPS Claimants argue that their claims, and not the Surviving Claims, should be the allowed claims. None of these reasons have merit.

21.     First, the Duplicative LPS Claimants argue that the Plan Administrator chooses to "ignore claims submitted by the true owners of the [securities]," and to pay claims that the Plan Administrator knows are "not owned by the party claiming [the relevant securities]." (Duplicative Blocking Number LPS Claims Response at p. 3, ¶ 4.) Similarly, the Duplicative LPS Claimants argue that they have proven ownership of the relevant securities, but the holders of the Surviving Claims have not. (*Id*. at pp. 4-5, ¶¶ 2-3). The Debtors implemented the Blocking Number requirement in order to eliminate the need to conduct this type of review and confirmation. In other words, the Blocking Number procedures were constructed to avoid this very dispute.

22.     Second, the Duplicative LPS Claimants argue that to allow the Surviving Claims would "contravene" section 501(a) of the Bankruptcy Code, which provides that "a creditor or an indenture trustee may file a proof of claim," and exceeds the Court's equitable powers under section 105(a). *Id*. at pp. 5, ¶¶ 3-4.) As set forth in the Bar Date Order, "claims based on any Lehman Program[s] Security shall not be disallowed on the ground that such claims were not filed by the proper party or an authorized agent, as contemplated by Bankruptcy Rule 3001(b)." (Bar Date Order at p. 14.). This provision was included at the request of creditors because it was unclear which parties would be filing the proofs of claim: the banks/brokers or the

11

beneficial holders/individuals.  The banks or brokers that filed the Surviving Claims are the record holders of the Lehman Programs Securities on the books and records of the clearing agencies; otherwise, those banks or brokers would not have been able to obtain the Blocking Numbers.  The Duplicative LPS Claimants have not provided any evidence that the parties filing the Surviving Claims are not authorized or entitled to assert such claims.  In any event, the Plan Administrator is not authorized to object on such grounds based on the terms of the Bar Date Order.   It is much too late for the Duplicative LPS Claimants to challenge such provision of the Bar Date Order.

23. Finally, the Duplicative LPS Claimants assert that the Plan Administrator does not have sufficient information from the holders of the Surviving Claims and must request additional information before allowing the Surviving Claims.  (*See* Duplicative Blocking Number LPS Claims Response at pp. 1-2, 5-6.)  As set forth above, the Plan Administrator has reviewed the Surviving Claims and determined that, with respect to the duplicative portions that overlap with the Duplicative LPS Claims, the Surviving Claims comply with the Bar Date Order and have included sufficient information to be allowed; in fact, distributions have already been made on those claims.[7]  If the Duplicative LPS Claimants require additional information or disclosures from the holders of the Surviving Claims, the Duplicative LPS Claimants must seek such information directly from the banks.

24. The Claimants failed to comply with a material provision of the Bar Date Order.  The Plan Administrator should not be required to expend its limited time and resources to conduct additional diligence on these claims.  The Plan Administrator has offered the Claimants

---

[7] The Plan Administrator has requested the Duplicative LPS Claimants to confirm whether they have received distributions on the relevant Lehman Programs Securities through their banks.  The Duplicative LPS Claimants have not confirmed one way or the other to the Plan Administrator.

12

an opportunity to provide alternative means of validation, but the Claimants have yet again failed to establish that their claims are valid.

## RESERVATION OF RIGHTS

25. In the event that the Court denies the Objections with respect to the No Blocking Number Claims and/or the Duplicative LPS Claims and/or grants the relief requested in the Responses, the Plan Administrator reserves the right to object to the No Blocking Number Claims and/or the Duplicative LPS Claims on all other grounds. The Plan Administrator reserves the right to conduct discovery as to the No Blocking Number Claims and/or the Duplicative LPS Claims and any matters raised in the Responses and to supplement this filing as a result thereof. Further, the Plan Administrator does not see the relevance of Bankruptcy Rule 2019 and other references cited by the Claimants in the Duplicative Blocking Number LPS Claims Response to generate additional disclosures from the "competing" banks. Out of an abundance of caution, the Plan Administrator reserves the right to submit a supplemental brief addressing Bankruptcy Rule 2019 and other issues regarding disclosure of claim information.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the Objections, the Plan Administrator respectfully requests that the Court enter an order disallowing and expunging the

No Blocking Number Claims and the Duplicative LPS Claims in their entirety and granting such other and further relief as the Court may deem just and appropriate.

Dated: October 29, 2012
     New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

## Exhibit A

**(No Blocking Number LPS Claims)**

US_ACTIVE:\44123452\4\58399.0008

| Claimant Name | Claim Number |
|---|---|
| BIESEMANN, DR. JOERG | 13624 |
| GETTE, HELENE | 12444 |
| ISHII, HIROICHI AND HELLA | 13602 |
| KAPALLA, KURT | 12448 |
| KLUG, KLAUS | 12442 |
| KUHNAST, FRANK-ROLAND | 67258 |
| LUCKS, IIONA | 24996 |
| LUKOSCHEK, WOLFGANG | 13611 |
| RUTTENER, JUERG FOR RUETTENER, HANNELORE | 67267 |
| RUTTENER, JUERG FOR RUETTENER, HANS | 67265 |
| STEINFORT, SILVIA | 11202 |
| UTTENDORF, WILFRIED | 57811 |
| WEISS, RENATE | 11212 |
| WILDERBRAND, PETER | 13609 |

# Exhibit B

**(Duplicative Blocking Number LPS Claims)**

| Duplicative LPS Claimant Name | Claims to be Disallowed and Expunged (Duplicative LPS Claim Number) | Amount Asserted in Duplicative LPS Claim | ISIN | Blocking Number | Surviving Claimant (Original Filer) | Surviving Claim Number | Has Duplicative Portion of Surviving Claim Already Been Allowed? |
|---|---|---|---|---|---|---|---|
| AMONN-DINGER, VERENA | 11169 | $14,606.43 | XS0258411239 | CA02569 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| BAYER, DR. INGEBORG | 12425 | $4,381.92 | XS0331533173 | CA02592 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| BAYER, DR. INGEBORG | 12426 | $5,785.85 | DE000A0MHXQ6 | 4062200910190271976/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| FASSBENDER, MARIA | 13638 | $7,090.50 | DE000A0MJHE1 | 4062200910190271977/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| FETKENHEUER, LOTHAR | 67257 | $7,232.31 | XS0311769219 | CA02594 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| GANSER, ALBERT | 24995 | $7,232.31 | XS0311769219 | CA02594 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| HASSE, KLAUS-DIETER | 13628 | $14,464.62 | DE000A0N6GH8 | 4062200910190271979/8 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| HEINZEN, HANS | 11178 | $16,067.07 | XS0258411239 | CA02569 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| HIRSCH, KURT | 11179 | $80,335.37 | DE000A0S5NN9 | 4062200910150271994/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| JAHN, URSULA & HORST | 24987 | $13,018.16 | DE000A0S5NN9 | 4062200910150271994/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| JANSEN, WALTER | 34350 | $21,696.93 | XS0340076321 | CA02590 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| JANSEN, WALTER | 34347 | $36,161.55 | DE000A0S1160 | 4062200910150271993/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| KOECHLING, HERMANN | 11184 | $28,929.24 | DE000A0V4E15 | 4062200910190271979/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| KRAWINKEL, ODO | 12427 | $28,929.24 | DE000A0V4E15 | 4062200910190271979/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| KRAWINKEL, ODO | 12428 | $57,858.48 | DE000A0N6GH8 | 4062200910150271983/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| LEWIN, JOERG | 34348 | $14,464.62 | DE000A0SUEV6 | 4062200909290271989/8 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| MASTALEREK, MICHAEL | 11187 | $43,393.86 | DE000A0N6GH8 | 4062200910190271979/18 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| NOERRENBERG-SUDHAUS, WERNER | 11190 | $144,646.20 | DE000A0S7D50 | 4062200910150271995/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| OBERKERSCH, BEATRICE | 11191 | $46,286.78 | DE000A0S1160 | 406220910150271993/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| RAMPOLD, HEIDRUN ELISABETH | 11193 | $14,606.43 | XS0258411239 | CA02569 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| RODRIGUEZ, KARSTEN | 13621 | $14,464.62 | DE000A0N7XQ2 | 4062200909290271980/33 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| SCHIENER, FRIEDBERT WALTER UND HANNELORE EDELTRAUT | 11196 | $10,125.23 | DE000A0SHLW6 | 4062200910150271997/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| SCHMIDT, KARIN | 11197 | $21,547.60 | DE000A0MHVV0 | 4062200910150271999/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| SCHMIDT, RA PETRA | 11198 | $72,323.10 | DE000A0SUEV6 | 4062200910190271989/30 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| SCHWEBIUS, SANDRA | 11199 | $13,018.16 | DE000A0S1160 | 4062200910150271993/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| SCHWERDT, KORINNA, DR. | 61158 | $70,905.00 | DE000A0LJV62 | 701200910093945487 | FRANKFURTER SPARKASSE 1822 | 60564 | YES |
| SPERZEL, SUSANNE | 12443 | $85,086.00 | DE000A0SG1J6 | 70102009100939400000 | FRANKFURTER SPARKASSE 1822 | 60564 | YES |
| SPRINGER, WERNER | 13623 | $11,571.70 | DE000A0V4E15 | 4062200909290271979/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| STANGE, HANS-JOACHIM | 12440 | $4,381.93 | XS0255689589 | CA02582 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| STEINFORT, SILVIA | 11201 | $14,464.62 | DE000A0MHXQ6 | 4062200910190271976/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| STEINFORT, SILVIA | 11203 | $14,464.62 | XS0335137120 | 4062200910150271993/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| VOLK, HELMUT UND ANNEMARIE | 11209 | $14,464.62 | DE000A0S1160 | 4062200910150271993/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| VON DER HEYDE, PHILIP | 11210 | $14,464.62 | DE000A0N7XQ2 | 406220910150271984/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| WARTAK, BEATE | 11211 | $72,323.10 | DE000A0SUEV6 | 4062200909290271989/30 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| WEIDLICH, JOERG | 13642 | $4,339.39 | DE000A0N7XQ2 | 406220910150271984/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| WIPPERN, MARGIT | 13619 | $2,853.93 | DE000A0MJHE1 | 4062200910190271977/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| WITTIG, HANSPETER | 57824 | $1,460.84 | DE000A0S5NN9 | 4062200910150271994/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| WOLSKI, MIECZYSLAW | 61159 | $7,232.31 | XS0311769219 | 4062200909290271991/15 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |

| WOLSKI, MIECZYSLAW | 61160 | $11,571.70 | DE000A0V4E15 | 4062200909290271984/20 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
|---|---|---|---|---|---|---|---|
| WOLSKI, MIECZYSLAW | 61191 | $14,464.62 | DE000A0S1160 | CA02594 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |
| ZELLINGER, ERNST | 11224 | $20,250.47 | DE000A0NMXZ5 | 4062200910150271988/1 | CITIBANK PRIVATKUNDEN AG & CO. KGAA | 55404 | YES |