WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons
Michael J. Firestone

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                           :    Chapter 11 Case No.
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**    :    08-13555 (JMP)
                                                                :
                                   Debtors.               :    (Jointly Administered)
                                                                :
                                                                :
------------------------------------------------------------------x

**THE PLAN ADMINISTRATOR'S OBJECTION TO GIANTS STADIUM LLC'S**
**AMENDED MOTION FOR LEAVE TO CONDUCT DISCOVERY**
<u>**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**</u>

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

In re Bennett Funding Group, Inc.,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...............................................................................14, 15

In re Dinubilo,
    177 B.R. 932 (E.D. Cal. 1993) ..................................................................................................16

In re Duratech Industries, Inc.,
    241 B.R. 283 (E.D.N.Y. 1999) .................................................................................................11

In re Enron Corp.,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002) ...............................................................................10, 15

In re Hilsen,
    2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ..............................................................10

In re J&R Trucking, Inc.,
    431 B.R. 818 (Bankr. N.D. Ind. 2010) .....................................................................................15

Kahn v. Dastejerdi (In re Dastejerdi),
    2001 WL 1168178 (Bankr. E.D. Va. Sept. 21, 2001) ..............................................................11

Official Comm. of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-Picher
    Indus., Inc.),
    169 B.R. 130 (Bankr. S.D. Ohio 1994) ....................................................................................11

In re Strecker,
    251 B.R. 878 (Bankr. D. Colo. 2000) ......................................................................................11

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2004(b) ................................................................................................................10

Fed. R. Bankr. P. 7026-7037 ...........................................................................................................14

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for certain entities in the above-referenced Chapter 11 cases (the "Plan"), including Lehman Special Financing Inc. ("LBSF" and, together with LBHI, "Lehman"[1]), objects to the Amended Motion (the "Amended Motion" or "Am. Mot.") of Giants Stadium LLC ("Giants Stadium") for leave to conduct discovery of the Debtors pursuant to Federal Rule of Bankruptcy 2004 ("Rule 2004") dated September 26, 2011 [Docket No. 31105], and respectfully represents:

## PRELIMINARY STATEMENT

  1.  Giants Stadium, a derivatives counterparty of LBSF that has filed proofs of claim (the "Proofs of Claim") against the estates of both LBHI and LBSF, inappropriately seeks discovery under Rule 2004 as a tit-for-tat response to discovery requests served by Lehman on Giants Stadium in connection with its ongoing and incomplete investigation of the Proofs of Claim. Giants Stadium is dissatisfied with the Congressional determination that grants debtors the opportunity to perform an investigation under Rule 2004, resulting in one-way discovery. It is not surprising that Giants Stadium cites no authority to support its position that a non-debtor can take tit-for-tat Rule 2004 discovery or that Rule 2004 discovery by a claimant is appropriate when that claimant already has filed claims against an estate in an effort to bolster those claims. Giants Stadium's motion should be rejected as nothing more than a scorched earth tactic meant to obstruct Lehman's ongoing investigation.

  2.  Giants Stadium first filed a motion seeking discovery from Lehman under

---

[1] Where applicable, references to "Lehman" shall include the "Plan Administrator."

Rule 2004 in April 2011 (the "Original Motion"), at a time when Lehman was in the middle of its investigation. This motion was not pressed at that time and has been unilaterally adjourned month-after-month; Giants Stadium has refused to drop the Original Motion, attempting, instead, to use it as a bargaining chip in an effort to discourage Lehman from completing its investigation. As discussed below, during the majority of the time that the Original Motion was adjourned, the parties were engaging in negotiations and Lehman and Giants Stadium agreed as part of those negotiations to a "freeze" of Lehman's investigation without prejudice. On or about September 17, 2012, Lehman informed Giants Stadium that it would be lifting the freeze and re-commencing its investigation. The Amended Motion followed shortly thereafter.

3.  As discussed below in further detail, the Amended Motion should be denied for the following reasons:

4.  First, Lehman has not completed its investigation of Giants Stadium's claims and therefore any discovery by Giants Stadium may well be unnecessary. Because Lehman's review of Giants Stadium's derivatives contracts may result in allowance of Giants Stadium's claims, in whole or in part, to allow Giants Stadium to conduct an examination of Lehman at this time could be a complete waste of estate resources. Indeed, should Lehman ultimately conclude that Giants Stadium's claims should be challenged, and if so, on what grounds, then any objection will be subject to applicable discovery rules and Giants Stadium will have the opportunity to take discovery from Lehman in the context of such objection.

5.  Giants Stadium's argument that it should be permitted to take discovery under Rule 2004 because Lehman has "determined" that it will object to Giants Stadium's claims is a complete non-sequitur. As an initial matter, Lehman has not finished its investigation, so it has not determined whether it will object in whole or in part to Giants Stadium's claims, and if

2

so, on what grounds. But even assuming, *arguendo,* that Lehman had reached such a determination, its effect could be only to end Lehman's right to take discovery under Rule 2004, not to grant Giants Stadium a right to take discovery under Rule 2004.

6.  Second, Rule 2004 examinations are discretionary and primarily designed to assist estate fiduciaries to ascertain the facts and circumstances pertaining to a bankrupt's estate. It is not intended to subsume discovery rules applicable to contested matters or adversary proceedings. Nor may it be used by a creditor such as Giants Stadium as a substitute for the applicable discovery rules after it has filed claims against the estate. Giants Stadium already has filed claims against LBHI and LBSF's chapter 11 estates. It has no need to investigate whether it has a claim under Rule 2004, and if an objection is filed by Lehman, then Giants Stadium will be afforded an opportunity to take whatever discovery it requires within the scope of the applicable rules.

7.  Lastly, Lehman is still in the process of reviewing tens of thousands of unresolved derivatives contracts with numerous counterparties. Allowing these counterparties to take broad and intrusive Rule 2004 discovery of Lehman before the filing of objections to allowance of claims or the filing by Lehman of adversary proceedings would be burdensome, time-consuming, and unreasonably expensive. This is especially true here, where Lehman's investigation is incomplete.

3

**BACKGROUND**

8. Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code. Lehman's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9. On December 6, 2011, the Court entered an order confirming the Plan (Docket No. 23023). The Plan became effective on Mach 6, 2012.

**JURISDICTION**

10. This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against Lehman and to prosecute causes of action on behalf of Lehman.

**FACTUAL BACKGROUND**

11. In August 2007, Giants Stadium issued auction rate securities (the "ARS"). See Declaration of Michael J. Firestone (the "Firestone Decl.") at ¶ 2. Auction rate securities are debt instruments with a long-term nominal maturity for which the interest rate is regularly reset through an auction. Goldman Sachs & Co. and Lehman were initial purchasers of the ARS, and each managed auctions for certain tranches of the ARS. See id.

12. In connection with the ARS offering, LBSF and Giants Stadium entered into two substantively identical interest rate swaps guaranteed by LBHI (the "Transactions"), each pursuant to two separate 1992 ISDA Master Agreements dated July 27, 2007 (collectively, and

4

together with the schedules and exhibits thereto and each confirmation exchanged in connection with the Transactions, the "Master Agreements"). See id. at ¶ 3. Under the Transactions, LBSF paid a floating rate of interest to Giants Stadium based on the auction rate for the underlying ARS. See id.

13. On September 15, 2008, LBHI filed its chapter 11 petition. Three days later, on September 18, 2008, Giants Stadium purported to terminate the Transactions. See id. at ¶ 4.

14. On October 2, 2008, Giants Stadium sent LBSF letters for each of the Transactions (the "Calculation Letters") that purported to calculate the "Settlement Amounts" owed under the Master Agreements. See id. at ¶ 5. Purportedly applying the Loss measure, Giants Stadium determined that LBSF owed Giants Stadium "Settlement Amounts" of $301,025,197 as a result of its early termination of the Transactions. See id.

15. On September 22, 2009, Giants Stadium filed proofs of claim against LBHI and LBSF, each in the amount of $301,828.017 (the "Proofs of Claim"). See Claim Nos. 33561 and 33562. On October 22, 2009, Giants Stadium also submitted responses to "Derivatives Questionnaires" in which it asserted claims against the LBSF estate in approximately the same amount. See Firestone Decl. at ¶ 6. The Proofs of Claim are but two of the thousands of claims that have been filed against Lehman by different counterparties in connection with their pre-petition derivatives contracts with Lehman. In the aggregate, these claims seek to recover hundreds of billions of dollars from Lehman.

16. In order to, among other things, assist Lehman in the investigation of such claims, as well as to determine whether Lehman has any affirmative claims against its derivatives counterparties, on November 23, 2009, the Court entered an Order Granting the Debtors the Authority to Issue Subpoenas for the Production of Documents and Authorizing the

5

Examination of Persons and Entities (the "Rule 2004 Order") that permits Lehman to serve subpoenas for document production and initiate oral examinations pursuant to Bankruptcy Rule 2004.[2] See Docket No. 5910. To date, Lehman has served subpoenas pursuant to the Rule 2004 Order upon numerous derivatives counterparties. See Firestone Decl. at ¶ 7.

17.     On or about May 19, 2010, Lehman commenced an investigation of Giants Stadium's claims and the related derivative contracts, and pursuant to the Rule 2004 Order, served a subpoena upon Giants Stadium for the production of documents (the "Subpoena"). See id. at ¶ 8. Giants Stadium has produced certain documents pursuant to the Subpoena. See id. Pursuant to a separate Rule 2004 subpoena served on March 10, 2011, Lehman examined Giants Stadium's Chief Financial Officer under oath. See id.

18.     On April 6, 2011, Giants Stadium's attorneys informed Lehman that Giants Stadium intended to file a motion seeking discovery from Lehman under Rule 2004; in addition to providing Lehman with a copy of the Original Motion, Giants Stadium asked whether Lehman would consent to the Original Motion. See id. at ¶ 9. On April 8, 2011, Lehman advised Giants Stadium that its request for examination was, at best, unnecessary and premature because Lehman's investigation was ongoing. See id. at ¶ 10. As Lehman stated:

> We are still engaged in our investigative process. At the conclusion of that process, we could agree with Giants Stadium's views of the swap as set forth in the proof of claim or we could determine that there are issues that the parties need to resolve. Those disputes will be the subject of either a claims process or an adversary proceeding in the Bankruptcy Court. In either case, Giants Stadium will have ample opportunity, if the need arises, to take discovery at that time in the context of such proceedings. We look forward to completeing [sic] our investigation and working with you on the next steps.

See id. at Ex. B. Giants Stadium did not respond to this communication or provide Lehman with

---

[2] Lehman's rights under the Rule 2004 Order were expressly continued by the Plan Confirmation Order and remain in full force and effect. See Docket No. 23023 at ¶ 65.

6

any basis to support its supposed need for Rule 2004 discovery at that time. See id. at ¶ 10.

19.     Instead, on April 14, 2011, while Lehman's Rule 2004 investigation was ongoing, Giants Stadium filed the Original Motion seeking broad discovery from Lehman as a tit-for-tat response to the discovery taken by Lehman in connection with the Transactions. See Docket No. 16016.

20.     On May 9, 2011, Lehman filed an objection to the Original Motion asserting that, among other things, discovery by Giants Stadium was unnecessary because (i) Lehman's investigation was ongoing and ultimately could result in no objection to the allowance of Giants Stadium's claims, and (ii) Giants Stadium was not permitted to take discovery under Rule 2004 as a matter of law because it already had filed the Proofs of Claim. See Docket No. 16680. The Original Motion was to be heard by the Court at the May 18, 2011 Lehman Omnibus hearing. See Docket No. 16016. On May 16, 2011, however, Giants Stadium simply adjourned the Original Motion without even consulting with Lehman, thereby tacitly admitting that, in fact, Giants Stadium's professed need for discovery simply was manufactured. Giants Stadium thereafter adjourned the Original Motion for the next fifteen months, until the Amended Motion was filed on September 26, 2012. See id. at ¶ 11.

21.     On August 29, 2011, Lehman filed a motion to compel the production of documents pursuant to the Subpoena withheld as privileged by Giants Stadium (the "Motion to Compel"). See Docket No. 19569. In its objection to the Motion to Compel, Giants Stadium asked the Court to "encourage substantive discussions" of Giants Stadium's claims. See Docket No. 19761 at ¶ 7. The Court heard the Motion to Compel at the September 14, 2011 Lehman Omnibus hearing, at which Giants Stadium's counsel again argued that Giants Stadium has "been trying for over a year to move beyond the debtor's [sic] hiding behind [Rule] 2004 saying

7

they get everything and they give nothing, to the point where we can discuss the merits of this." See cited excerpts from the September 14, 2011 Hearing Transcript, attached as Ex. C to the Firestone Decl., at 53:9-12. In response, Lehman's counsel made the following statement to the Court:

> Your Honor, I just want to . . . make a representation that we are, in fact, still involved and still engaged in trying to finish the investigation. And what I don't want to happen, Your Honor, is to engage in some kind of preliminary discussions, and be confronted by an argument by Giants Stadium that by discussing the merits that we're now somehow not entitled to get and finish our investigation. So if we could get a -- essentially a commitment that they're not going to try to gotcha us if we sit down and talk to them preliminarily before our investigation is finished, then I would certainly be willing to advise my client to sit down with them. But I don't want to be faced with a gotcha.

Id. at 54:8-54:20. The Court responded as follows:

> Okay. You don't even need that commitment because I'm going to give you a gotcha from the bench -- a no gotcha. If you choose to have a conversation that could lead to some kind of productive business-like resolution of this, doing that will not constitute a waiver of any of your discovery rights or your rights to continue with your investigation as you see fit.

Id. at 54:21-55:2.

22.    Based on the Court's assurances that it would not lose any rights to continue its Rule 2004 investigation as it "see[s] fit" if discussions proved unsuccessful, Lehman agreed to engage in settlement discussions with Giants Stadium, including convening mediation. See Firestone Decl. at ¶ 13.

23.    On December 6, 2011 – at or around the same time that the parties agreed to enter into mediation – Giants Stadium amended its Proofs of Claim to almost double the amounts originally sought, from approximately $301 million to approximately $585 million. See id. at ¶ 14. Lehman has taken no discovery with respect to the amended proofs of claim, which included entirely new valuations not reflected in the Calculation Letters, the Proofs of Claim that

8

Giants Stadium originally filed, or Giants Stadium's response to the "Derivatives Questionnaires" filed on October 22, 2009. See id.

24. Although the mediation did not take place pursuant to the Court's formal ADR Procedures Orders for derivative claims in the Lehman bankruptcy, it was conducted by one of the mediators appointed by the Court under the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts. See id. at ¶ 15. The mediation took place on February 14, 2012, and ended that same day without a resolution. See id. Although the parties' attempt at formal mediation was unsuccessful, as discussed below, the parties ultimately agreed to continue settlement discussions outside of the formal mediation context.

25. On or about April 9, 2012, consistent with the Court's assurances that Lehman would be permitted to finish its investigation, Lehman re-started its investigation by serving a subpoena on Giants Stadium pursuant to the Rule 2004 Order (the "April 9, 2012 Subpoena") seeking the production of documents not previously sought, including document requests directed at the amended proofs of claim and the transfer of the claims from Giants Stadium to Goal Line Partners LLC ("Goal Line") – another event that post-dated the Subpoena and the deposition of Giants Stadium's Chief Financial Officer. See id. at ¶ 16. (Giants Stadium has objected to producing any documents in response to the April 9, 2012 Subpoena; the Debtors filed a motion to compel production of documents in response to that subpoena on October 24, 2012. See Docket No. 31652.)

26. In May 2012, however, Lehman and Giants Stadium again decided to engage in substantive settlement discussions and, in connection with those discussions, agreed to "freeze" all ongoing discovery. See id. at ¶ 17. As part of that agreement, the parties understood

9

and confirmed that Lehman's "willingness to enter into settlement negotiations does not constitute any waiver of [Lehman's] rights and is without prejudice to our ability to complete our investigation under Rule 2004." See id.

27.  The discovery "freeze" ended in September 2012, following the failure of settlement discussions outside of the mediation process. See id. at ¶ 18. Within days of Lehman informing Giants Stadium that the discovery freeze was lifted, Giants Stadium filed the instant Amended Motion seeking discovery from Lehman pursuant to Rule 2004.

## ARGUMENT

### I.   APPLICABLE STANDARD UNDER RULE 2004

28.  The scope of an examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  See Fed. R. Bankr. P. 2004(b).  The standard for granting a motion for examination under Rule 2004 is well-established.  As this Court has held, a "party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred."  In re Hilsen, 2008 WL 2945996, *4 (Bankr. S.D.N.Y. July 25, 2008) (Peck, J.) (citations omitted).

29.  The granting of a motion under Bankruptcy Rule 2004 is within the discretion of the Court.  See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination . . . .") (citations omitted).  Courts have ***not*** hesitated to exercise their discretion to deny Rule 2004 motions brought by creditors when, among other things:  (i) 2004 discovery would be burdensome, costly and/or disruptive to the debtor, see, e.g., Official Comm.

10

of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 169 B.R. 130, 134-35 (Bankr. S.D. Ohio 1994) (denying Rule 2004 motion by Unsecured Creditors' Committee because "the discovery proposed in the present motions is extremely broad and would clearly be disruptive and costly for debtors, while the benefit to movants [in obtaining the information sought] is far from clear"); (ii) 2004 discovery would be unnecessary because the information sought could be obtained with respect to a contested matter via the normal discovery process, see, e.g., Kahn v. Dastejerdi (In re Dastejerdi), 2001 WL 1168178, at *6 (Bankr. E.D. Va. Sept. 21, 2001) (denying Rule 2004 motion by creditor because "the documents the plaintiff is seeking from the debtor may be obtained by the normal discovery process, a Rule 2004 examination is unnecessary and improper."); or (iii) the Rule 2004 motion is brought for an improper purpose, see, e.g., In re Strecker, 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (denying Rule 2004 motion by creditor because, "[a]s a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred. . . . Although Rule 2004 examinations have been characterized as fishing expeditions, they are not without bounds.") (internal quotations and citations omitted) (citing In re Duratech Indus., Inc., 241 B.R. 283, 289 (E.D.N.Y. 1999) (affirming Bankruptcy Court's denial of Rule 2004 motion by creditor because "[e]xaminations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds . . . .'")).

## II.  GIANTS STADIUM'S RULE 2004 MOTION SHOULD BE DENIED

30.     The request by Giants Stadium to conduct discovery under Rule 2004 should be denied for the independent reasons that: (i) Giants Stadium has not and cannot establish that it has any right to take discovery of Lehman under Rule 2004; (ii) Giants Stadium's claims as filed have not been contested, and if objections are interposed, the applicable discovery rules will

11

prevail; (iii) it would be burdensome, costly, and disruptive to Lehman to be subject to Rule 2004 examinations at this point in time; and (iv) the overwhelmingly broad scope and timing of the Amended Motion (i.e., coming only after Lehman renewed their Rule 2004 investigation) suggests an improper purpose, warranting denial.

    A.    <u>Giants Stadium Is Not Entitled To Rule 2004 Discovery</u>

31.    Giants Stadium has not cited a single case or any other authority in support of its argument that it should be allowed to use Rule 2004 as a discovery tool, particularly at a time when Lehman is engaged in an intensive review of the Transactions as authorized by this Court's Rule 2004 Order and by the Court's statement on September 14, 2011 that Lehman would be able to continue its investigation as it "see[s] fit" if settlement discussions did not yield a resolution. This review may render further proceedings unnecessary.

32.    Indeed, in addition to other topics of which Lehman has not yet completed its investigation, Lehman has taken no discovery of Giants Stadium's amended proofs of claim that purported to add an additional approximately $284 million to the amount originally claimed by Giants Stadium. Lehman ultimately may agree with Giants Stadium's calculation, or it could determine that there are issues that need to be resolved through either the claims process or in a contested matter. Under the former scenario, there will be no need for Giants Stadium to take any discovery; under the latter, Giants Stadium will have ample opportunity to take proper discovery during the claims reconciliation process.

33.    Giants Stadium argues that because it is "clear that Debtors [sic] have determined to object to Giants Stadium's claims . . . Giants Stadium should be allowed to take discovery . . . ." Am. Mot. at ¶21. Although this makes for a good sound bite, it is not a reason for the Court to allow Rule 2004 discovery by Giants Stadium – and Giants Stadium does not

12

cite a single authority to support this novel and baseless position. Even assuming, *arguendo*, that Lehman is no longer allowed to take Rule 2004 discovery because it has "determined" to object to Giants Stadium's claims, it would not justify or, for that matter, have any bearing upon, Giants Stadium's own ability to use Rule 2004 to obtain discovery, and again Giants Stadium has not cited any case law in support of such an unprecedented and counterintuitive position. Indeed, Giants Stadium's own argument is inconsistent with the relief Giants Stadium is seeking: if a party that has "determined" its position may not use Rule 2004, then Giants Stadium, which already has filed (and amended) Proofs of Claim, may not obtain discovery under Rule 2004.

34.     Additionally, Giants Stadium contends that it has "good cause for seeking discovery under Rule 2004" because "Debtors [sic] have unreasonably delayed objecting to or otherwise resolving the claims, and the information sought therefore cannot be obtained via the normal discovery process." Id. at ¶20. Such arguments are based neither on the applicable law nor the relevant facts, and deliberately ignore the Court's explicit assurance to Lehman that its entry into settlement discussions with Giants Stadium would not waive any of its rights to take discovery under Rule 2004. Again, even if Lehman unreasonably had delayed the investigation, such "delay" is irrelevant to the question of whether Giants Stadium is entitled to take discovery under Rule 2004. Moreover, the "delay" about which Giants Stadium complains was solely as result of the year-long period during which Lehman halted its investigation – at Giants Stadium's request – to enable the parties to discuss a consensual resolution of Giants Stadium's claims and during which Giants Stadium amended the Proofs of Claim from approximately $301 million to $585 million. See supra ¶__ ("We have been trying for over a year to move beyond the debtor's [sic] hiding behind [Rule] 2004 saying they get everything and they give nothing, to a point where can discuss the merits of this"). The parties also agreed that the discovery "freeze"

13

instituted in May 2011 would be "without prejudice" to Lehman's ability to complete its investigation. In short, for Giants Stadium to argue that such investigation constitutes an "unreasonable delay" is not only without any basis, but is a complete misrepresentation of what actually occurred. Lehman is entitled to continue its Rule 2004 investigation, particularly with respect, but not limited to, the amended claims, which to date have not been the subject of any Rule 2004 discovery.

### B. Giants Stadium's Attempt To Use Rule 2004 After Filing A Claim Is Inappropriate

35.   Rule 2004 discovery, if granted by a court, permits parties to conduct a "fishing expedition" so that they can determine – outside of a litigation or contested claim context – information about the affairs of a debtor. Rule 2004 "is properly used *as a pre-litigation device to determine whether there are grounds to bring an action* to determine a debtor's right to discharge or the dischargeability of a particular debt." In re Bennett Funding Grp., Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (emphasis added) (citation omitted).

36.   This delineation between Rule 2004 and a contested matter or an adversary proceeding is critical because Rule 2004 "is meant to give the inquiring party broad power to investigate the estate, [but] it does not provide the procedural safeguards offered by Fed. R. Bankr. P. 7026." Id. Once a party commences a contested matter or an adversary proceeding, that party is no longer entitled to take discovery under the Bankruptcy Rules; instead, Courts insist on applying the safeguards of the Federal Rules of Civil Procedure related to evidentiary objections, such as to discovery that is not reasonably calculated to lead to admissible evidence or outside the scope of triable issues, and to the amount of time allocated for discovery responses. See Fed. R. Bankr. P. 7026-7037. Thus, "[b]ased on Rule 2004's substantive differences [from the Federal Rules of Civil Procedure], courts have expressed concern that Rule

14

2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure." In re Enron Corp., 281 B.R. at 841.

37.     Here, Giants Stadium already has determined that it has claims, and it has filed those claims against LBHI and LBSF.  It is therefore inappropriate for Giants Stadium to conduct a "fishing expedition" under Rule 2004 because Giants Stadium does not need to conduct broad examinations to establish whether and to what extent it has a claim against the estate.  Giants Stadium's Proofs of Claim represent prima facie allowable claims unless and until contrary action is taken by Lehman or other parties in interest.

38.     A recent decision by the Bankruptcy Court for the Northern District of Indiana, In re J&R Trucking, Inc., 431 B.R. 818 (Bankr. N.D. Ind. 2010), is instructive.  In that case, several creditors sought Rule 2004 discovery from a chapter 7 debtor and other non-debtor third parties.  The Court denied their motion, holding that if granted, it would "transform [Rule 2004] from an investigatory device, designed to expedite the administration of the bankruptcy estate, into something not unlike a proceeding supplemental, which creditors could use in an effort to collect the amounts due them outside the bankruptcy proceeding." Id. at 821.  Echoing the Bennett Funding decision, supra at ¶ __, the Court noted that:

> Discovery can only take place in the context of some sort of dispute—be it an adversary proceeding or a contested matter—and the scope of inquiry is limited to issues which are relevant to that dispute.  A 2004 examination, on the other hand, not only does not require the existence of litigation to justify the inquiry, but, such a dispute prevents recourse to it.  A 2004 examination is not a substitute for discovery; if the traditional discovery tools are available the potential examiner is required to use them and may not take advantage of Rule 2004. . . . ***[Rule 2004] allows the trustee to do the necessary investigatory work without the need for initiating formal litigation which would trigger the traditional discovery tools.  Indeed, one purpose for such an examination is to give the trustee the information needed to determine whether litigation should be filed.***

Id. at 821-22 (emphasis added) (citations omitted).  Thus, while Lehman can use Rule 2004

15

discovery as an investigatory tool "without the need for initiating formal litigation," that tool generally is not available to creditors. Accordingly, Giants Stadium may not use Rule 2004 as a "substitute for discovery." See also In re Dinubilo, 177 B.R. 932, 939-940 (E.D. Cal. 1993) ("Without any limiting principles on the Rule of 2004 as a discovery tool, Rule 9014, adopting Federal Rules of Civil Procedure for conducting discovery in contested bankruptcy matters, would be rendered superfluous").

39.     Nowhere in the Amended Motion does Giants Stadium provide the Court with any justification for allowing it to bypass established discovery routes. Giants Stadium merely argues that "[w]ithout reciprocal discovery . . . the parties seem unlikely to come to an agreement," and that because "Debtors refuse to concede several basic preliminary factual issues, Giants Stadium is forced to seek discovery relating to those matters." Am. Mot. at ¶¶ 23-24. Giants Stadium will have every opportunity for reciprocal discovery if and when Lehman objects to the Proofs of Claim or commences an adversary proceeding. There is no need for such discovery now, however, particularly as Giants Stadium's ability to file and then amend its Proofs of Claim shows that it has sufficient information for the present and therefore no need to conduct an investigation of its own. Indeed, the fact that Giants Stadium adjourned its Original Motion every month between the time it was filed (April 2011) and the hearing at which the Court encouraged the parties to enter into settlement discussions (September 2011), and only renewed the Original Motion after Lehman re-activated its investigation in September 2012, indicates that Giants Stadium has no pressing need for discovery here. Rather, Giants Stadium simply wants tit-for-tat discovery because it is unhappy with the "imbalance" (id. at ¶ 17) that Congress permitted when it adopted Rule 2004.

16

    C.    Granting Giants Stadium's Motion Would Be Costly And An Enormous Burden On Lehman

40. Giants Stadium is but one of thousands of derivatives counterparties with unresolved derivatives contracts, all of whom are in positions similar to that of Giants Stadium here. Discovery by these derivatives counterparties would constitute a significant, expensive, and time consuming burden on the resources of Lehman. Such examinations, if permitted, would divert essential resources of Lehman and would disrupt the ability of Lehman to deal effectively in the claims reconciliation process that has been authorized by the Court.[3]

41. As this Court recognized in connection with the 2004 Order, Rule 2004 discovery is a tool that should be readily available to *Lehman* in order to aid its recovery of estate assets. Clearly, Giants Stadium misconstrues the purpose of Rule 2004. It should not be allowed to use Rule 2004 to set in motion an examination process that would be costly, burdensome, and counter-productive to the orderly administration of the chapter 11 cases.

    D.    Reservation Of Lehman's Rights

42. The actual document requests proposed by Giants Stadium in Schedule 1 to the Motion are subject to numerous objections, including, as noted above, burden and breadth. Lehman reserves all of its rights to object to the requests, including as to scope and breadth of the requests, at the appropriate time.

---

[3] Indeed, this Court ordered in the Claims Order that the "hearing to consider an objection to Proofs of Claim as to which a Response is properly filed and served (each a 'Contested Claim'), shall be set for a contested hearing (each, a 'Claims Hearing'), *to be scheduled by the Debtors, in their sole discretion* . . ." Ex. A to Claims Order, Claims Procedures at § 3 (emphasis added) [Docket No. 8474].

17

## **CONCLUSION**

43. Giants Stadium's Motion should be denied in all respects.

Dated: October 31, 2012
New York, New York

By: /s/ Richard W. Slack
Richard W. Slack
Robert J. Lemons
Michael J. Firestone

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates*

18