UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re                                              :        Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :        08-13555 (JMP)
                                                   :
                            Debtors.               :        (Jointly Administered)
-----------------------------------------------------------------------x

### DECLARATION OF MICHAEL J. FIRESTONE IN SUPPORT OF THE PLAN ADMINISTRATOR'S OBJECTION TO GIANTS STADIUM LLC'S AMENDED MOTION FOR LEAVE TO CONDUCT DISCOVERY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

I, MICHAEL J. FIRESTONE, declare under penalty of perjury, this 30th day of October, 2012:

1.       I am an associate at Weil, Gotshal & Manges LLP, counsel for Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), and Lehman Brothers Special Financing Inc. ("LBSF," and together with LBHI, "Lehman").  I submit this declaration in support of Lehman's Objection to the Amended Motion (the "Amended Motion" or "Am. Mot.") of Giants Stadium LLC ("Giants Stadium") for leave to conduct discovery of the Debtors pursuant to Federal Rule of Bankruptcy 2004 ("Rule 2004") dated September 26, 2011 [Docket No. 31105]. The facts set forth below are based on my personal knowledge.

2.       In August 2007, Giants Stadium issued auction rate securities (the "ARS"). Goldman Sachs & Co. and Lehman were initial purchasers of the ARS, and each managed auctions for certain tranches of the ARS.

3.       In connection with the ARS offering, LBSF and Giants Stadium entered into two substantively identical interest rate swaps guaranteed by LBHI (the "Transactions"), each pursuant to two separate 1992 ISDA Master Agreements dated July 27, 2007 (collectively, and together with the schedules and exhibits thereto and each confirmation exchanged in connection

with the Transactions, the "Master Agreements").  Under the Transactions, LBSF paid a floating

rate of interest to Giants Stadium based on the auction rate for the underlying ARS.

4.      On September 15, 2008, LBHI filed its chapter 11 petition.  Three days later, on

September 18, 2008, Giants Stadium purported to terminate the Transactions.

5.      On October 2, 2008, Giants Stadium sent LBSF letters for each of the

Transactions (the "Calculation Letters") that purported to calculate the Settlement Amounts

owed under the Master Agreements.[1]  Purportedly applying the Loss measure, Giants Stadium

determined that LBSF owed Giants Stadium Settlement Amounts of $301,025,197 as a result of

its early termination of the Transactions.

6.      On September 22, 2009, Giants Stadium filed Proofs of Claim against LBHI and

LBSF, each in the amount of approximately $301,828,087 (the "Proofs of Claim").  See Claim

Nos. 33561 and 33562.  On October 22, 2009, Giants Stadium completed and submitted a

response to the "Derivatives Questionnaire," in which it asserted claims against the LBSF estate

in approximately the same amount.

7.      To date, Lehman has served subpoenas pursuant to the Order Granting the

Debtors the Authority to Issue Subpoenas for the Production of Documents and Authorizing the

Examination of Persons and Entities (the "Rule 2004 Order") upon numerous derivatives

counterparties.

8.      On or about May 19, 2010, Lehman served a subpoena for the production of

documents on Giants Stadium pursuant to Rule 2004.  Giant Stadium has produced certain

documents pursuant to the Subpoena.  Pursuant to a separate Rule 2004 subpoena served on

March 10, 2011, Lehman examined Giants Stadium's Chief Financial Officer under oath.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Master
Agreements.

2

9.      On April 6, 2011, Giants Stadium's attorneys informed Lehman that Giants Stadium intended to file a motion (the "Original Motion") seeking discovery from Lehman under Rule 2004; in addition to providing Lehman with a copy of the motion that it intended to file, Giants Stadium asked whether Lehman would consent to the Original Motion.  (A copy of the April 6, 2011 email from Giants Stadium's attorneys is attached hereto as Ex. A.)

10.     On April 8, 2011, Giants Stadium was advised by Lehman that its request for examination was, at best, unnecessary and premature because Lehman's investigation was ongoing.  (A copy of the April 8, 2011 e-mail from Lehman to Giants Stadium's counsel is attached hereto as Ex. B.)  Giants Stadium did not respond to this communication or provide Lehman with any basis to support its supposed need for Rule 2004 discovery at that time.

11.     On May 16, 2011, two days before the Court was to hear the Original Motion, Giants Stadium adjourned the Original Motion without consulting with Lehman.  Giants Stadium thereafter adjourned the Original Motion for the next fifteen months, until the Amended Motion was filed on September 26, 2012.

12.     Cited excerpts from the transcript of the September 14, 2011 hearing on Lehman's August 25, 2011 motion to compel the production of documents pursuant to the Subpoena that were withheld as privileged by Giants Stadium are attached hereto as Exhibit C.

13.     Based on the Court's assurances at the September 14, 2011 hearing that Lehman would not lose any rights to continue its Rule 2004 investigation as it "see[s] fit," Lehman agreed to engage in settlement discussions with Giants Stadium, including convening mediation.

14.     On December 6, 2011 – at or around the same time that the parties agreed to enter into mediation – Giants Stadium amended the Proofs of Claim from approximately $301 million to approximately $585 million.  See Claim Nos. 67782 and 68103.  Lehman has taken no

US_ACTIVE:\44125387\1\58399.0011

discovery with respect to the amended proofs of claim.  Lehman has also taken no discovery

regarding the sale of Giants Stadium's claims to Goal Line Partners LLC, an entity affiliated

with a private equity fund known as the Baupost Group, at some point prior to October 2011.

15.    The mediation did not take place pursuant to the Court's formal ADR Procedures

Orders for derivative claims in the Lehman bankruptcy, but was conducted by one of the

mediators appointed by the Court under the Alternative Dispute Resolution Procedures Order for

Affirmative Claims of Debtors Under Derivative Contracts (Docket No. 5207).  The mediation

took place on February 14, 2012, and ended that same day without a resolution.

16.    On or about April 9, 2012, Lehman served a subpoena on Giants Stadium seeking

the production of documents (the "April 9, 2012 Subpoena") pursuant to the Rule 2004 Order.  A

copy of the April 9, 2012 Subpoena is attached hereto as Exhibit D.

17.    In May 2012, Lehman and Giants Stadium again decided to engage in settlement

discussions, and in connection with those discussions, agreed to "freeze" all ongoing discovery.

As part of that agreement, the parties understood and confirmed that Lehman's "willingness to

enter into settlement negotiations does not constitute any waiver of [Lehman's] rights and is

without prejudice to our ability to complete our investigation under Rule 2004."  See May 9,

2012 E-mail from D. Ehrmann to M. DiMichele, attached hereto as Exhibit E.

18.    In September 2012, Lehman informed Giants Stadium that it was ending

settlement discussions and would renew its investigation.  Thus, the discovery "freeze" ended.

Dated: October 31, 2012
New York, New York

/s/Michael J. Firestone
MICHAEL J. FIRESTONE

US_ACTIVE:\44125387\1\58399.0011

# EXHIBIT A

**Firestone, Michael**

| | |
|---|---|
| **From:** | Schwartz, Matthew A. [schwartzmatthew@sullcrom.com] |
| **Sent:** | Wednesday, April 06, 2011 11:49 AM |
| **To:** | Slack, Richard; Firestone, Michael |
| **Cc:** | Clark, Bruce E. |
| **Subject:** | 2004 Discovery Requests |
| **Attachments:** | Giants Stadiums' 2004 requests.pdf |

Dear Richard and Michael,

    Attached are draft papers that Giants Stadium intends to submit to the Court seeking 2004 discovery from the Debtors.  Before filing these papers, we would like to give you the opportunity to review them to see if you would consent to the motion, or agree not to oppose.  We'd appreciate any response by end of this week.

Regards,
Matthew

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Tel:  +1 212 558 4197
Fax: +1 212 291 9481
schwartzmatthew@sullcrom.com

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

**Hearing Date: May 18, 2011, at 10:00 a.m.**
**Objection Deadline: _____, 2011, at 4:00 p.m.**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x

In re                                              :    **Chapter 11 Case No.**
                                                   :    **08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et. al.,*      :    **(Jointly Administered)**
                                                   :
    Debtors.                                       :

————————————————————— x

**NOTICE OF MOTION OF GIANTS STADIUM LLC FOR LEAVE**
**TO CONDUCT DISCOVERY OF THE DEBTORS PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

PLEASE TAKE NOTICE that, on May 18, 2011, at 4:00 p.m., or as

soon thereafter as the matter may be heard, before the Honorable James M. Peck, United

States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court,

Southern District of New York, 1 Bowling Green, New York, New York, 10004, Giants

Stadium LLC. ("Giants Stadium"), will move for entry of an order granting leave to

conduct discovery of Lehman Brothers Holding, Inc. ("LBH") and Lehman Brothers

Special Financing, Inc. ("LBHF") (collectively, the "Debtors") pursuant to Federal Rule

Of Bankruptcy Procedure 2004 (the "Motion").

PLEASE TAKE FURTHER NOTICE that any objection or response to

the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy

1

Procedure and the Local Rules for the United States Bankruptcy Court for the Southern

District of New York, and (i) shall be filed with the Bankruptcy Court electronically in

accordance with General Order M-242 (General Order M-242 and the User's Manual for

the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the

official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's

case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect or any other Windows-based word

processing format; and (ii) a hardcopy of such objection or response shall be served in

accordance with General Order M-242, upon (A) the chambers of the Honorable James

M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (B) Weil

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, (Attn: Richard

W. Slack, Esq., Michael J. Firestone, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq.,

Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the Debtors; (C) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul

Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (D) Milbank,

Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005,

(Attn: Dennis F. Dune, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys

for the official committee of unsecured creditors appointed in these cases; (E) the

attorneys for any other official committee(s) appointed in these cases, and (F) Sullivan &

Cromwell LLP, 125 Broad Street New York, New York (Attn: Bruce E. Clark, Esq.),

attorneys for Giants Stadium, so as to be actually filed and received no later than _____,

2011  at 4:00 p.m. (Eastern Time) (the "Objection Deadline").

2

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
April __, 2011

SULLIVAN & CROMWELL LLP
By:    /s/ Bruce E. Clark
        Bruce E. Clark
        125 Broad Street
        New York, New York 10004
        Telephone: (212) 558-4000
        Facsimile: (212) 558-3588

Bruce E. Clark
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **In re** | : **Chapter 11 Case No.** |
| | : **08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et. al.,* | : **(Jointly Administered)** |
| | : |
| **Debtors.** | : |

---

**MOTION OF GIANTS STADIUM LLC FOR LEAVE**
**TO CONDUCT DISCOVERY OF THE DEBTORS PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

  Giants Stadium LLC ("Giants Stadium"), hereby moves this Court for an

order pursuant to Federal Rule of Bankruptcy Procedure 2004 directing that Lehman

Brothers Holding, Inc.("LBH") and Lehman Brothers Special Financing, Inc. ("LBSF")

(collectively, the "Debtors") respond to the document requests contained in Schedule 1

attached hereto, and provide for examination of the Debtors' representative who is most

knowledgeable about the matters set forth herein (the "Motion").

<u>INTRODUCTION</u>

  1.  On July 27, 2007, Giants Stadium and LBSF entered into two auction-rate

securities swap transactions (collectively, the "Transactions") as described in two ISDA

Master Agreements.  One agreement is insured by Financial Security Assurance Inc.

("FSA") and one is insured by Financial Guaranty Insurance Company ("FGIC")

1

(together, the "ISDA Master Agreements"). LBSF's obligations under the ISDA Master

Agreements were guaranteed by LBH. True and correct copies of the ISDA Master

Agreements are attached hereto as Exhibit A. All capitalized terms not defined herein

shall have the meanings assigned to such terms in the ISDA Master Agreements.

2.      On September 15, 2008 (the "Petition Date"), LBH filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code"). On October 3, 2008, LBSF also filed a voluntary chapter 11 petition under the

Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered pursuant

to Bankruptcy Rule 1015(b) and this Court's order dated and entered on October 16,

2008.

3.      Prior to the Petition Date, the Debtors, along with various other

subsidiaries and affiliates of the Debtors (collectively "Lehman Brothers"), were the

fourth largest investment bank in the United States. Lehman Brothers offered a wide

range of financial services, including sales of debt and equities, trading and research, and

investment banking, among other business lines. Pertinently, LBSF was in the business

of entering into derivative contracts with various counterparties. In the course of entering

into these derivative contracts, it would be common in the financial industry for LBSF to

offset transaction risk through a process known as "hedging".

4.      LBH's bankruptcy filing was an Event of Default under the ISDA Master

Agreements. On September 18, 2008, Giants Stadium sent two letters to LBSF (together,

the "Notice Letters" (i) notifying LBSF that an Event of Default pursuant to

Section 5(a)(vii) of the ISDA Master Agreements had occurred; and (ii) designating

2

September 18, 2008, as the Early Termination Date with respect to the Transactions.

True and correct copies of the Notice Letters are attached hereto as Exhibit B.

5.    LBSF failed to fulfill its obligations under Section 6(e) of the ISDA Master Agreements to solicit quotations from Designated Dealers for the purpose of using the Market Quotation payment measure. Debtors have not provided Giants Stadium with information regarding any efforts LBSF may have undertaken in an attempt to fulfill its obligations under this section.

6.    Giants Stadium filed Proofs of Claim against LBSF and LBH, in the amount of $301,804,617.14, arising from Giants Stadium's September 18, 2008 termination of the Transactions. Accompanying each Proof of Claim was a statement pursuant to Section 6(d) of the ISDA Master Agreements, dated October 2, 2008 (collectively, the "Section 6(d) Statements"). True and correct copies of the Section 6(d) Statements are attached hereto as Exhibit C.

7.    Because LBSF failed to fulfill its obligations under Section 6(e) of the ISDA Master Agreements to solicit quotations from Designated Dealers for the purpose of using the Market Quotation payment measure, Giants Stadium used the Loss payment measure with respect to the Transactions in accordance with Section 6(e) of the ISDA Master Agreements to calculate its claim. Detailed explanations of the basis for these Loss calculations were provided with the Section 6(d) Statements.

8.    Debtors have not provided Giants Stadium with any alternative calculation of Loss with respect to the Transactions. Nor have they provided information regarding any valuation methodologies Debtors have employed in relation to any other derivative transactions.

3

9.      It is a common practice in the financial industry for entities in Debtors' position to "hedge" derivative transactions such as the Transactions entered into by and between Giants Stadium and Debtors on July 27, 2007, by entering into a second set of transactions with one or more third parties which serve to offset risk, in whole or in part. Debtors have not provided any information to Giants Stadium concerning any "hedging" transactions Debtors may have entered into with regard to the Transactions.

10.     Giants Stadium is entitled to information concerning the Debtors' derivative valuation methodology as well as information concerning any and all transactions Debtors may have entered into in order to offset the risk of the Transactions.

11.     Therefore, pursuant to Rule 2004, Giants Stadium requests that the Court enter an order granting Giants Stadium leave to take discovery of the Debtors concerning these matters.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in this Motion is Rule 2004 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

13.     Giants Stadium requests the entry of an order pursuant to Rule 2004 authorizing and directing (i) the production of documents by the Debtors in response to the document requests attached hereto as Schedule 1; (ii) the deposition of a representative of the Debtors who is most knowledgeable about the subject matters set

4

forth in this Motion; (iii) the issuance of one or more subpoenas compelling such document production and attendance at such deposition in the manner provided in Federal Rule of Bankruptcy Procedure 9016; and (iv) granting such other and further relief as the Court deems just and proper.

## ARGUMENT

14.     Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of discovery under Rule 2004 relates to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). Under Rule 2004, a moving party is entitled to both the examination of a witness and the production of requested documents. Fed. R. Bankr. P. 2004(c).

15.     By this Motion, Giants Stadium is seeking information from the Debtors relating to their efforts to solicit quotations from Designated Dealers, as required under the ISDA Master Agreements, and to the valuation methodologies Debtors have employed in relation to other derivative transactions as well as information relating to any "hedge" transactions Debtors may have entered into in order to offset Debtors' risk of loss under the Transactions with Giants Stadium.

16.     Giants Stadium is seeking the information at this time because information regarding the valuation methodology Debtors have employed when valuing other derivative transactions, and information relating to any "hedging" transactions Debtors entered into in relation to the Transactions, may relate to the calculation of Loss resulting from the Termination of the Transactions, and also to the property, liabilities, financial

condition, and administration of the Debtors' estate, and thus to Giants Stadiums' claims against the estate. This request, therefore, is well within the scope of Rule 2004.

## NO PRIOR REQUEST

18.    No prior Motion for the relief requested herein has been made to this or any other court.

## WAIVER OF MEMORANDUM OF LAW

19.    As there are no novel issues of law relating to the Motion, Giants Stadium requests that the Court waive the requirement that Giants Stadium file a separate memorandum of law in support of the Motion.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, Giants Stadium respectfully requests that the Court enter an Order, pursuant to Rule 2004, in the form attached hereto as Exhibit D: (i) requiring the production of documents from the Debtors responsive to the document requests; (ii) requiring the Debtors to produce their representative for examination who is most knowledgeable about the subject matters set forth in this Motion; (iii) authorizing the issuance of one or more subpoenas compelling such document production and appearance for examination; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
April __, 2011

SULLIVAN & CROMWELL LLP

By:     /s/ Bruce E. Clark
           Bruce E. Clark
           125 Broad Street
           New York, New York 10004
           Telephone: (212) 558-4000
           Facsimile: (212) 558-3588

## SCHEDULE 1

## REQUEST FOR PRODUCTION OF DOCUMENTS

## DEFINITIONS

A.    The term "COMMUNICATIONS" as used herein shall mean and refer to every manner or method of disclosure or transfer or exchange of information, whether oral or written, and whether in person, by telephone, mail, email, personal delivery or otherwise.

B.    The term "COMPUTER" as used herein includes, but is not limited to, all mainframe computers, personal computers, microcomputers, desktop and portable, laptop or notebook computers and personal digital assistants ("PDAs").

C.    The term "DEBTORS" as used herein shall mean and refer to Lehman Brothers Holdings, Inc. and/or Lehman Brothers Special Financing, Inc. and any of the respective affiliates, officers, directors, employees, associates, consultants, attorneys, representatives, agents or any other person working on their behalf, including their predecessors and successors in interest, and bankruptcy estates.

D.    The term "DOCUMENT" or "DOCUMENTS" as used herein shall mean and refer to all written, printed, typed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made in any form, including, but not limited to, letters, correspondence, statements, cancelled checks, agreements, contracts, appraisals, plans, specifications, reports, evaluations, e-mails, telegrams, telexes, memoranda, records, minutes, contracts, agreements, intra- and interoffice communications, microfilm, bulletins, circulars, pamphlets, studies, reports, notices, diaries, calendar entries, summaries, books,

8

messages, instructions, work assignments, notes, write-ups, notebooks, drafts, data

sheets, data compilations, computer data compilation and computer runs, worksheets,

statistics, speeches, tapes, tape recordings, press releases, public statements and public

announcements, public and governmental filings, financial statements, opinions and other

writings and other magnetic, photographic, electronic and sound recordings.

E.    The term "ELECTRONIC DATA" as used herein shall mean and refer to

the original and any non-identical copies of any COMPUTER program, software,

database, file, email, source code or operating system, including ASCII files, word

processing documents, spreadsheets, charts, and graphs, whether active, deleted or

fragmented.

F.    The term "ELECTRONIC MEDIA" as used herein shall mean and refer to

any magnetic or other storage device used to record, store or maintain ELECTRONIC

DATA, including, but not limited to, any disk, minidisk, floppy disk, hard drive, disk

drive, CD ROM, optical disk, memory card, personal computer, network, magnetic tape,

microfiche, punch card, computer chip, back up or any other means of storing, recording

or retaining information generated by or input to or on a COMPUTER.

G.    The term "GIANTS STADIUM" as used herein shall mean and refer to

Giants Stadium LLC and any of the respective officers, directors, employees, associates,

consultants, attorneys, representatives, agents or other any person working on its behalf,

including its predecessors and successors in interest.

H.    The term "HEDGING TRANSACTION(S)" as used herein shall mean

and refer to any and all transactions and positions, including, but not limited to, short

positions and credit default swaps, entered into by DEBTORS at any time prior to,

9

simultaneous with, or after entering into the TERMINATED TRANSACTIONS with GIANTS STADIUM, the purpose of which was to hedge DEBTORS' risk under the TERMINATED TRANSACTIONS, in whole or in part, including any transactions and positions under which Debtors would benefit from a decline in value, decline in rating, or any increase in the cost of insuring against such decline of either Financial Security Assurance Inc. ("FSA") or Financial Guaranty Insurance Company ("FGIC").

I.      The term "ISDA MASTER AGREEMENTS" as used herein shall mean and refer to the two ISDA Master Agreements and schedules thereto entered into by and between Giants Stadium and LBSF as of July 27, 2007 and insured by Financial Guaranty Insurance Company and Financial Security Assurance, Inc., respectively, and guaranteed by LBH.

J.      The term "LBH" as used herein shall mean and refer to Lehman Brothers Holdings, Inc., and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents or any other person working on its behalf, including its predecessors and successors in interest.

K.      The term "LBSF" as used herein shall mean and refer to Lehman Brothers Special Financing, Inc. and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents or other any person working on its behalf, including its predecessors and successors in interest.

L.      The term "RELATE TO" or "REFER TO" or the like as used herein shall mean and refer to all documents that in any manner or form are relevant in any way to the subject matter in question.

10

M.    The term "TERMINATED TRANSACTIONS" as used herein shall mean and refer to transactions entered into pursuant to the ISDA MASTER AGREEMENTS and terminated by GIANTS STADIUM in the TERMINATION LETTERS.

N.    The term "TERMINATION LETTERS" as used herein shall mean and refer to the letters from GIANTS STADIUM to LBSF dated September 18, 2008.

O.    The terms "YOU" and "YOUR" as used herein shall mean the DEBTORS, as defined herein.

P.    For the purposes hereof, the reference to any entity shall include any and all officers, directors, employees, associates, consultants, attorneys, representatives and agents or any other person or entity representing such entity or acting on its behalf as well as any and all affiliate entities, predecessors and successors in interest and their respective officers, directors, employees, associates, consultants, attorneys, representatives and agents.

## INSTRUCTIONS

A.    In responding to these requests for production, YOU are requested to furnish all DOCUMENTS that are in YOUR actual or constructive possession, custody, or control or in the possession, custody or control of any of YOUR representatives, agents or attorneys. In responding to these requests for production, YOU may elect to produce the original or, if the original is not available, a legible copy, of each requested document.

B.    In responding to these requests for production, YOU are requested to produce all DOCUMENTS either as they are kept in the usual course of YOUR business affairs or they shall be organized and labeled to correspond with the requests herein.  If a

11

DOCUMENT is responsive to more than one request, only one exemplar of the DOCUMENT needs to be produced. Similarly, if YOU have more than one copy of the same DOCUMENT, the additional copies need not be produced. A version of a DOCUMENT that differs in any way from the original of such DOCUMENT because it constitutes a prior draft or subsequent version, because it contains any interlineations or marginalia, or because it differed in any other respect from the original, is not an exact duplicate of such DOCUMENT. Each different version of such DOCUMENT is required to be produced.

C.      If YOU cannot respond to any of the following requests in full after exercising reasonable diligence to secure the information requested therein, please so state and respond to the extent possible, specifying the reasons for any inability to respond and stating whatever information YOU do have concerning such request.

D.      If a responsive DOCUMENT consists of ELECTRONIC DATA, is stored on ELECTRONIC MEDIA or a COMPUTER, or is otherwise unreadable in its ordinary state, the responding party shall take reasonable steps to produce and translate all such responsive items into a useable or readable form.

E.      If any privilege is claimed or if any objection is made regarding the production of any DOCUMENTS, with respect to each such DOCUMENT: (1) identify the privilege or objection involved; (2) state the basis for claiming the privilege or making the objection; (3) describe the type of DOCUMENT and the date of its creation; (4) identify each person who (a) has knowledge of the DOCUMENT or the information that the DOCUMENT contains, (b) prepared or made the DOCUMENT, (c) signed the DOCUMENT, and/or (d) now possesses the DOCUMENT or a copy, summary or digest

12

thereof; and (5) identify each person to whom the DOCUMENT or a copy, summary, or digest thereof was directed, circulated, distributed, or shown.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS that RELATE TO any efforts by DEBTORS to solicit quotations from Designated Dealers for the purpose of using the Market Quotation payment measure, or any efforts by DEBTORS to otherwise fulfill any of its obligations under Section 6(e) of the ISDA MASTER AGREEMENTS.

### REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS that RELATE TO any valuation methodologies DEBTORS have employed to value "Loss", as defined in an ISDA Master Agreement and covering an interest rate swap to which DEBTORS are or were a party, including, but not limited to the TERMINATED TRANSACTIONS.

### REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS that RELATE TO any and all HEDGING TRANSACTION(S), including, without limitation, (i) DOCUMENTS sufficient to show the terms of any and all HEDGING TRANSACTION(S), including the date(s) entered into, the parties thereto and the meaning and/or interpretation thereof; (ii) DOCUMENTS sufficient to show the status, ownership, terms and control of any and all HEDGING TRANSACTIONS, at all times from the date first entered into until the present; (iii) all DOCUMENTS that RELATE TO any case, controversy, claim or dispute regarding any

13

and all HEDGING TRANSACTIONS, including without limitation those which are intended to be or were resolved, in whole or in part, through negotiation, settlement, judicial order or alternative dispute resolution procedures; and (iv) DOCUMENTS sufficient to show any connection between the HEDGING TRANSACTIONS and the TERMINATED TRANSACTIONS.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS generated, sent, or received by Debtors' Credit Valuation Adjustment desk that RELATE to (i) the TERMINATED TRANSACTIONS, and (ii) any and all HEDGING TRANSACTIONS.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS that RELATE TO any valuation methodologies DEBTORS employed to value the TERMINATED TRANSACTIONS.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that RELATE TO any capital allocated by Debtors to satisfy any requirements to maintain capital in relation to the TERMINATED TRANSACTIONS before they were terminated, including, but not limited to, DOCUMENTS sufficient to show the rate charged by Debtors on capital lent internally within Debtors.

14

# EXHIBIT A

(ISDA MASTER AGREEMENTS)

# EXHIBIT B

(NOTICE LETTERS)

# EXHIBIT C

(SECTION 6(d) STATEMENTS)

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
In re                                    :    Chapter 11 Case No.
                                         :    08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et. al.*, :    (Jointly Administered)
                                         :
Debtors.                                 :
———————————————————————— x

## ORDER ON MOTION OF GIANTS STADIUM LLC FOR LEAVE TO CONDUCT DISCOVERY OF THE DEBTORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon the motion (the "Motion")[1]1 of Giants Stadium LLC ("Giants Stadium") for the entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") authorizing and directing (i) the production of documents by Lehman Brothers Holdings, Inc. and Lehman Brothers Special Financing, Inc. (collectively, the "Debtors") in response to the document requests attached as Schedule 1 to the Motion; (ii) the deposition of a representative of the Debtors who is most knowledgeable about the matters set forth in the Motion, and (iii) the issuance of one or more subpoenas compelling such document production and attendance at such deposition; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B); and upon consideration of the Motion; and due and appropriate notice of the Motion having been given, it is hereby **ORDERED** that:

1.    The Motion is GRANTED.

2.    Giants Stadium is authorized to serve upon the Debtors document requests substantially in the form of Schedule 1 to the Motion.  The Debtors shall produce such

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

requested documents so that such documents are received at the offices of Sullivan & Cromwell LLP, located at 125 Broad Street, New York, New York 10004, on or before _____, 2011, or at such other date, time, or place as Giants Stadium may agree.

3.      The Debtors shall make their representative most knowledgeable with regard to the subject matters set forth in the Motion available for a deposition by Giants Stadium on _____, 2011, commencing at _____a.m. (New York time), at the offices of Sullivan & Cromwell LLP, located at 125 Broad Street, New York, New York 10004, or at such other date, time, or place as Giants Stadium may agree.

4.      Giants Stadium is authorized to issue subpoenas, pursuant to Federal Rule of Bankruptcy Procedure 9016, as necessary for the above-ordered document production and deposition.

Dated: _____ __, 2011
          New York, New York

                                    _____
                                    THE HONORABLE JAMES M. PECK
                                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## Firestone, Michael

| | |
|---|---|
| **From:** | Firestone, Michael |
| **Sent:** | Friday, April 08, 2011 4:43 PM |
| **To:** | 'Schwartz, Matthew A.' |
| **Cc:** | Clark, Bruce E.; Slack, Richard |
| **Subject:** | RE: 2004 Discovery Requests |

Matthew,

Thank you for providing us with an advance draft of Giants Stadium's Rule 2004 motion.  The motion is inappropriate for number of reasons.  As you know, the debtor has served 2004 discovery on Giants Stadium pursuant to the Court's November 23, 2009 order authorizing the debtor to take this discovery. This 2004 discovery has included document requests and the deposition of Giants Stadium's CFO (which is set for early May). The purpose of this discovery is for the debtor to determine if there is a dispute concerning the swaps between Giants Stadium and Lehman and, if so, what are the issues. We recognize that Giants Stadium has already filed a proof of claim in the Bankruptcy Court with respect to these swaps. We are still engaged in our investigative process. At the conclusion of that process, we could agree with Giants Stadium's views of the swap as set forth in the proof of claim or we could determine that there are issues that the parties need to resolve. Those disputes will be the subject of either a claims process or an adversary proceeding in the Bankruptcy Court. In either case, Giants Stadium will have ample opportunity, if the need arises, to take discovery at that time in the context of such proceedings.  We look forward to completeing our investigation and working with you on the next steps.

Regards,

Michael



Michael J. Firestone
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
michael.firestone@weil.com
+1 212 310 8636 Direct
+1 212 310 8007 Fax

**From:** Schwartz, Matthew A. [mailto:schwartzmatthew@sullcrom.com]
**Sent:** Wednesday, April 06, 2011 11:49 AM
**To:** Slack, Richard; Firestone, Michael
**Cc:** Clark, Bruce E.
**Subject:** 2004 Discovery Requests

Dear Richard and Michael,

        Attached are draft papers that Giants Stadium intends to submit to the Court seeking 2004 discovery from the Debtors.  Before filing these papers, we would like to give you the opportunity to review them to see if you would consent to the motion, or agree not to oppose.  We'd appreciate any response by end of this week.

Regards,

Matthew

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Tel:  +1 212 558 4197
Fax: +1 212 291 9481
schwartzmatthew@sullcrom.com

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

# EXHIBIT C

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Lead Case No. 08-13555(JMP); 08-01420(JMP)(SIPA)

4   - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matters of:

6

7   LEHMAN BROTHERS HOLDINGS INC., et al.,

8        Debtors.

9   - - - - - - - - - - - - - - - - - - - - - -x

10  In the Matters of:

11

12  LEHMAN BROTHERS INC.,

13       Debtor.

14  - - - - - - - - - - - - - - - - - - - - - -x

15            U.S. Bankruptcy Court

16            One Bowling Green

17            New York, New York

18

19            September 14, 2011

20            10:02 AM

21

22  B E F O R E:

23  HON. JAMES M. PECK

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1

2    HEARING re Debtors' Motion for Approval of a Modification to

3    the Debtors' Disclosure Statement [Docket No. 19813]

4

5    HEARING re Motion of the Official Committee of Unsecured

6    Creditors of Lehman Brothers Holdings Inc., et al., for Entry

7    of an Order Granting Leave, standing and Authority to Prosecute

8    and, if Appropriate, Settle Causes of Action on Behalf of

9    Lehman Commercial Paper Inc. [Docket No. 19622]

10

11   HEARING re Motion of Insured Persons for an Order Modifying the

12   Automatic Stay to Allow Settlement Payment Under Directors and

13   Officers Insurance Policy to Settle New Jersey Action [Docket

14   No. 19480]

15

16   HEARING re Debtors' Motion to Compel Production of Documents

17   Improperly Withheld as Privileged by Giants Stadium LLC [Docket

18   No. 19585]

19

20

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 52

1          MR. SLACK:  I think that's a fair question, Your

2     Honor, with the following background, which is the debtor

3     really has bent over backwards not to have discovery disputes,

4     which is why this is so unique.  We've issued, and I've

5     personally been involved in issuing, you know, more than fifty

6     subpoenas to counter-parties.  We've worked diligently,

7     sometimes night and day to resolve disputes, and we've been

8     pretty successful doing it, and will continue to do it.

9          As I said here, and it's the reason I wanted to get

10    up, we offered to look at these documents for purposes of the

11    investigation on a non-waiver basis.  The information was more

12    important than -- you know, than some kind of legal ruling, so

13    we were willing to do that and that was denied.

14          This particular derivative matter, Your Honor, is a

15    300 million dollar claim against the estate.  So it's -- while

16    granted we have a very large estate here, 300 million is still

17    a very, very large claim within the estate.

18          There is a question, Your Honor, and it's one that

19    we're looking at as part of the investigation whether, in fact,

20    it's a claim at all, or whether it's a receivable.  And so that

21    is -- so the swing here is between not just the 300 million,

22    but also a potential receivable of some magnitude.  So it is a

23    significant matter to the estate.

24          I don't assume anything.  I don't know whether the

25    documents that are being withheld are going to have a smoking

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 53

1   gun or not, I just don't know.  What I do know is I believe

2   we're entitled to them, and when we didn't have any alternative

3   other than being told we weren't going to see them, or come

4   into the court, it's the first time that I brought a motion to

5   compel in front of this Court on a 2004, again I've done a

6   number of them.  So we tried very hard to resolve this short of

7   coming to the Court and were unable to do it.

8           THE COURT:  Okay.

9           MR. CLARK:  We have been trying for over a year to

10  move beyond the debtor's hiding behind 2004 saying they get

11  everything and they give nothing, to a point where we can

12  discuss the merits of this.  Anything else I have to say would

13  just be argumentation between counsel and not help the Court,

14  but we have offered to move this along for well over a year.

15          THE COURT:  Okay.  I guess my suggestion to the

16  parties would be this, during the period of in-camera review,

17  however long that may be, it seems to me that it would be

18  desirable for the parties to spend a little bit of time

19  thinking about possible resolution of this on the merits.  It

20  seems to me to be an issue that is relatively narrow, although

21  one as to which there may be significant areas of disagreement

22  concerning the calculation of loss.

23          I don't pretend to understand all the issues at this

24  point, but I suspect the lawyers who have been speaking to me

25  today about the discovery dispute already have a deep

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 54

1  understanding of the risks and rewards.  I heard the comment

2  about this may be a receivable, suggesting a doubling down on

3  the part of Lehman, and I accept the argument for what it is,

4  argument, but recognize that the substance of this is something

5  that you might be able to address profitably even while I'm

6  reviewing the documents.

7        MR. CLARK:  Thank you, Your Honor.

8        MR. SLACK:  Your Honor, I just want to say the

9  following, is that -- and make a representation that we are, in

10  fact, still involved and still engaged in trying to finish the

11  investigation.  And what I don't want to happen, Your Honor, is

12  to engage in some kind of preliminary discussions, and be

13  confronted by an argument by Giants Stadium that by discussing

14  the merits that we're now somehow not entitled to get and

15  finish our investigation.

16        So if we could get a -- essentially a commitment that

17  they're not going to try to gotcha us if we sit down and talk

18  to them preliminarily before our investigation is finished,

19  then I would certainly be willing to advise my client to sit

20  down with them.  But I don't want to be faced with a gotcha.

21        THE COURT:  Okay.  You don't even need that

22  commitment because I'm going to give you a gotcha from the

23  bench -- a no gotcha.  If you choose to have a conversation

24  that could lead to some kind of productive business-like

25  resolution of this, doing that will not constitute a waiver of

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 55

1   any of your discovery rights or your rights to continue with

2   your investigation as you see fit.  And frankly, you could've

3   had such a conversation although it might not have been

4   productive a year ago.

5          This is to be carried until some further omnibus

6   hearing date after I've had a chance to review the documents,

7   and I'm going to suggest that counsel for Giants Stadium make

8   arrangements directly with my chambers for an appropriate time

9   to turn over the documents.  And we'll see where we go from

10  there.

11         MR. CLARK:  Thank you, Your Honor.

12         THE COURT:  Okay.

13         MR. CLARK:  May I be excused?

14         THE COURT:  Oh, yes, you may.  That's the end of the

15  contested LBHI docket and we're now into the LBI SIPA

16  proceeding.

17         MS. SCHWARTZ:  Your Honor, may I be excused?

18         THE COURT:  Yes.  Anybody who wishes to be excused,

19  may be excused.  Maybe we should just take a moment for

20  people's movements to settle down.

21      (Pause)

22         THE COURT:  Okay.  Let's proceed.

23         MR. MENAKER:  Good morning, Your Honor.  Richard

24  Menaker, special counsel to the SIPA trustee.  The next matter

25  on the agenda is the motion of RBS N.V. and I gather Mr.

# EXHIBIT D

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

Southern _____ DISTRICT OF _____ New York

In re Lehman Brothers Holdings Inc., et al.,

                  Debtor

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No. 08-13555(JMP)  _____

Chapter 11  _____

To:
Giants Stadium LLC
Meadowlands Sports Complex
50 State Route 120
East Rutherford, New Jersey 07073

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below, by an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A To The Order Attached Hereto.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

## Documents Requested By Exhibit A Attached Hereto

| PLACE<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | DATE AND TIME<br>May 11, 2012 at 10:00 A.M. (EST) |
|---|---|
| ISSUING OFFICER SIGNATURE AND TITLE | DATE<br>4/9/12 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Peter Gruenberger; Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

FORM 254 Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | Date | Place |
|---|---|---|

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED
## BY GIANTS STADIUM

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Bank of America" shall mean Bank of America, N.A. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

2.    "Baupost" shall mean Baupost Group LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

3.    "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

4.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

5.    "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

6.    "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts,

photographs, sound recordings including, but not limited to, phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

7.    "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

8.    "First Set of Document Requests" shall mean the document requests attached as Exhibit A to the subpoena served by LBHI on Giants Stadium on or about May 19, 2010.

9.    "FSA" shall mean Financial Security Assurance, Inc. and its successor entity and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

10.    "Giants Stadium," "You," and "Your" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

11.    "Goal Line" shall mean Goal Line Partners LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

12.    "Goldman Sachs" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

13.    "Indenture" shall mean the Indenture of Trust dated as of August 1, 2007, entered into by Giants Stadium and The Bank of New York, as trustee.

14.    "Insurance and Indemnity Agreement" shall mean the Insurance and Indemnity Agreement dated as of August 16, 2007, entered into by Giants Stadium and FGIC.

15.    "LBHI" shall mean Lehman Brothers Holdings, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

16.    "LBSF" shall mean Lehman Brothers Special Financing, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

17.    "LBI" shall mean Lehman Brothers, Inc.

18.    "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

19.    "Master Agreement" shall mean any of the following: (i) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FGIC; and/or (ii) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FSA.

20.    "NFL" shall mean the National Football League, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

21.    "Supplemental Indenture" shall mean any supplement to the Indenture, including, but not limited to the Third Supplemental Indenture of Trust to the Indenture, dated and effective as of September 18, 2008, between Giants Stadium and The Bank of New York Mellon, as trustee.

22.    "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

23.    "Third Supplemental Indenture" shall mean the Third Supplemental Indenture of Trust to the Indenture dated and effective as of September 18, 2008, entered into by Giants Stadium and The Bank of New York Mellon, as trustee.

24.    "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

25.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

26.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

27.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

28.    If any Document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

29.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

30.    If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege

shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

31.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

32.    Each page of each document should be numbered consecutively. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

33.    Documents attached to each other (physically or via electronic mail) should not be separated.

34.    In producing the requested documents, even though the requests are directed to "You," furnish all documents that are available to You, including documents in the possession of any of Your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such documents in Your possession.

35.    The requests that follow are to be regarded as continuing, and You are requested to provide by the way of supplementary compliance herewith, such additional documents as You may hereafter obtain, which will augment the documents now produced in response to the requests below. Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after Your receipt thereof.

36.    At a future date, LBHI may request the production of additional documents based on information revealed during this document request.

37.    At a future date, LBHI may request to depose additional individuals based on information revealed during this document request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2007 through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents responsive to the First Set of Document Requests that were not yet in existence at the time that Giants Stadium produced documents in response to the First Set of Document Requests.

REQUEST NO. 2

All documents concerning Giants Stadium's proofs of claim filed in the Lehman Bankruptcy on or about December 6, 2012, including, but not limited to, (i) documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the proofs of claim, (ii) documents including, but not limited to, spreadsheets, emails and Giants Stadium's books and records that concern the amount claimed in the proofs of claim, (iii) documents concerning the Supplemental Statement attached to the proofs of claim, including all drafts thereof, (iv) all communications with Goldman Sachs, the NFL, Baupost, Bank of America, or Goal Line concerning any proofs of claim filed in the Lehman Bankruptcy, and (iv) all documents concerning Giants Stadium's decision to supplement or amend its proofs of claim previously filed in the Lehman Bankruptcy on or about September 22, 2009.

REQUEST NO. 3

All documents concerning the sale of Giants Stadium's claims in the Lehman Bankruptcy.

REQUEST NO. 4

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Bank of America regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 5

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Bank of America regarding the value of the Transactions both prior to, and after, their purported termination on or about September 18, 2008.

REQUEST NO. 6

All documents concerning the sale of Giants Stadium's claims in the Lehman Bankruptcy to Goal Line.

REQUEST NO. 7

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 8

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the value of the Transactions both prior to, and after, their purported termination on or about September 18, 2008.

REQUEST NO. 9

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Robert Taylor concerning the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 10

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and any current or former employee, agent, advisor, representative, or counsel of LBHI, LBSF, LBI, or any related Lehman affiliate, concerning the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 11

All of Giants Stadium's financial statements, both audited and non-audited, that relate to the valuation of the Transactions, and all documents which relate to, support, or are the

basis for such valuations, regardless of whether such documents were created by Giants Stadium

or a third party.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                :

**In re**                         :         **Chapter 11 Case No.**
                                :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (JMP)**
                                :

               **Debtors.**        :        **(Jointly Administered)**
                                :

-------------------------------------------------------------------x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

4

ORDERED that, this Order is without prejudice to the Debtors' right to file further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a) or any other applicable law.

Dated: New York, New York
       November 23, 2009

                                    _s/ James M. Peck_____
                                    HONORABLE JAMES M. PECK
                                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT E

**Ehrmann, Daniel**

| | |
|---|---|
| **From:** | Michael F. DeMichele [mfd@baupost.com] |
| **Sent:** | Wednesday, May 09, 2012 9:08 AM |
| **To:** | Ehrmann, Daniel |
| **Subject:** | RE: Giants |

We confirm our agreement, with the footnote that we have every reason to believe that the NFL
is on board. We were unable to get through to the NFL until yesterday; it expressed general
agreement but also asked for a small amount of time to check on whether there are any
discovery requests outstanding.  We believe that there will not be an issue, but also did
not want to wait any longer before replying to you.  We think we should confirm our meeting
for May 31, and we will let you know when the NFL gets back to us.


**From:** Ehrmann, Daniel [mailto:dehrmann@alvarezandmarsal.com]
**Sent:** Thursday, May 03, 2012 7:15 PM
**To:** Michael F. DeMichele
**Subject:** Giants


Mike – as discussed we will have a principal to principal only meeting (without lawyers) on May 31st premised
on the following:

- Participants:
    - Lehman: Chris O'Meara, John Dziadzio, Ron Tanamura and myself
    - Giants/Goal Line: Mike DeMichele, James David, Christine Rocops, Bill Heller
- the meeting is not being conditioned on the parties agreeing to start the negotiations at any particular
"bookends" -- although the parties reserve the right to do so at future meetings and the fact that this meeting
occurred without such pre-conditions will not be used in future negotiation or otherwise no reverting to
respective bookends
- the parties will agree to "freeze" all discovery until the meeting described above is held, at which time the
parties may agree to extend the discovery "freeze"; thus, all discovery by us to Giants Stadium, Goal Line or
Baupost will be on temporary hold
- while the agenda for the meeting is not yet finalized, we expect the parties to be prepared to discuss the
following issues at the meeting agenda to be refined but probably: (i) discount rate; (ii) auction rate; (iii) cost
of funds; (iv) ipso facto / flip
- the participants will have settlement authority.

Our willingness to enter into settlement discussions does not constitute any waiver of any of our rights and is
without prejudice to our ability to complete our investigation under Bankruptcy Rule 2004. We are willing to
extend this discovery "freeze" to other parties who have received discovery requests from us (such as the NFL
and FGIC) if they also agree this "freeze" does not constitute any waiver of any rights and is without prejudice
to our ability to complete our investigation under Bankruptcy Rule 2004 at a future date.

I suggest meeting at Lehman (1271 Avenue of the Americas – 40th floor) – say at 10AM. Please let me know if
you agree that the above accurately reflects our understanding. Best, D

**Daniel J. Ehrmann**
**Managing Director**

Alvarez & Marsal North America, LLC
600 Lexington Avenue
Direct: 646 285 9556
Mobile: 917 660-1069
Fax: 212 759-5532
dehrmann@alvarezandmarsal.com
www.alvarezandmarsal.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is intended only for the use of the addressee(s) and may contain information
that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient(s), you are
hereby notified that any dissemination of this communication is strictly prohibited.
If you have received this communication in error, please erase all copies of the
message and its attachments and notify us immediately.

This email has been scanned by the Symantec Email Security.cloud service.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*