GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Katherine Stadler

*Attorneys for the Fee Committee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **LEHMAN BROTHERS HOLDINGS, INC.** *et al.,* | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------------- x

**FEE COMMITTEE'S SUMMARY REPORT ON UNCONTESTED
FINAL FEE APPLICATIONS FOR HEARING ON NOVEMBER 8, 2012**

TO:    HON. JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

The Fee Committee appointed in the above-captioned chapter 11 cases (the "**Fee
Committee**") submits this summary report (the "**Report"**) recommending Court approval for
$157,863,128.21 in fees and $2,040,563.93 in expenses, summarized on **Exhibit A**, as requested
and adjusted by consent in the final fee applications of the 25 listed professionals (the
"**Uncontested Applicants**").

The Court initially scheduled a hearing on these applications for October 30, 2012, which
was adjourned until November 8, 2012 at 2:00 p.m. because of Hurricane Sandy.  No objections
have been filed.  The Fee Committee recommends the approval of the applications.

## PRELIMINARY STATEMENT

The Uncontested Applicants have reached final agreements with the Fee Committee, subject only to this Court's approval, to resolve as adjusted their final fee applications. That resolution is consistent with the principles and standards—discussed in detail below—that the Fee Committee has developed and applied to each interim and final fee application submitted for approval under 11 U.S.C. § 330 and the retention orders in these cases. The Fee Committee believes that the negotiated resolutions ensure that the final fees and expenses comply with the applicable requirements and guidelines established by the Bankruptcy Code, the Office of the U.S. Trustee, and this Court.

## SUMMARY

These chapter 11 proceedings are, by any account, the largest in history. They also are, by most accounts, among the most challenging and the most successful—particularly in terms of results compared with expectations at the outset of the 2008 financial crisis. But neither success, nor the absence of it, changes the requirements of the Bankruptcy Code or the standards promulgated by the Office of the U.S. Trustee or this Court.

On November 8 and again on November 29, 2012, or an adjourned date, the Court will hear the final fee applications of the 47 professionals (law firms, accounting firms, investment bankers, and reorganization professionals), subject to Fee Committee review under the Court's order. The fees and expenses submitted for approval total $1.8 billion.

Throughout these cases, the Fee Committee has reviewed the interim fee period applications of each firm—with only a few firms maintaining they have a right to revisit, in their final fee applications, negotiated reductions (or increases) in the amounts initially approved by the Court in interim compensation. That process of review and negotiation has been successful. On November 8, the Court will have before it applications from at least 25 professionals, listed

on **Exhibit A**, each of which has come to an agreement with the Fee Committee on the appropriate amount of a final fee application and award.

On November 29, the Fee Committee will again come before the Court to present the remaining fee applications, many of which should be consensually resolved as well. Some may not be so resolved, of course, and those applications may require a contested proceeding— despite extended negotiations and the best efforts of the applicants and the Fee Committee. This Report addresses those final fee applications that have been consensually resolved and initially noticed and scheduled for hearing on October 30, though adjourned to November 8. [1]

Two final applications on which agreement has been reached are particularly noteworthy. Alvarez & Marsal ("**A&M**") was retained by the Debtors at the outset to provide interim management services and to assist the Debtors with the management of their assets and the claims asserted against the estates. Houlihan, Lokey, Howard & Zurkin Capital, Inc. ("**Houlihan Lokey**") has been the principal financial advisor to the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").

Since the outset, A&M has provided the Debtors with leadership and management oversight indispensible to the success of the Chapter 11 proceeding. A&M supervised more than 500 Lehman personnel, headquartered in New York City but working throughout the world. The Court order authorizing A&M's retention [Docket No. 2278] provided for its compensation based on quarterly reports that, in turn, were based on a general summary of timekeepers, hours and rates. While the order permitted objections to the quarterly reports, none was filed. The Court order and subsequent amendments to it also provided for additional incentive

---

[1] With the Court's consent, at least one additional uncontested application will be presented on November 8. In addition, several applications initially noticed for hearing on October 30 have been consensually adjourned to November 29.

compensation based on A&M's asset and claims management.  The final fee application requested approval of $90.76 million for these management fees.[2]

The Fee Committee reviewed A&M's Quarterly Compensation Reports and final fee application in a necessarily more limited way than it reviewed all of the other fee applications because of the quarterly reporting process authorized by the Court.  Nonetheless, A&M voluntarily provided electronic data for the Fee Committee's database-driven analysis, similar to that performed for all of the other professionals.  In addition, the Fee Committee conducted a dialogue with the Debtors' directors, their counsel, representatives of the Creditors' Committee, and the U.S. Trustee's office on A&M's compensation request.  That dialogue culminated in a stipulated reduction of $11 million in the requested claims management fees.

Houlihan Lokey advised the Creditors' Committee throughout these cases, providing analysis and personnel beyond the norm even in a complicated Chapter 11.  Pursuant to its retention order, the firm was paid a flat fee of $400,000 each month[3] plus its expenses, totaling about $17.2 million over four years.  Its retention provided for a "deferred fee" calculated as a percentage of distributions to general unsecured creditors, payable upon each occurrence of a distribution.  In addition, Houlihan Lokey requested a $15 million "additional fee" in recognition of the extraordinary level of work it performed, which was both unanticipated at the time of its retention and incapable of being anticipated in light of the extraordinary circumstances surrounding the commencement of these cases.  Like all of the other Uncontested Applicants, including A&M, Houlihan Lokey engaged in extended discussions with the Fee Committee, after

---

[2] Though initially adjourned to the November 8 hearing date, A&M's final application may be adjourned to a later date at A&M's request.

[3] For the first six months of Houlihan Lokey's representation, it received a flat fee of $500,000 per month.

each application's analysis by the Fee Committee's counsel, and it ultimately agreed to a

$4 million reduction in its additional fee request.

## BACKGROUND

1.        Commencing on September 15, 2008, and periodically thereafter (as applicable,

the "**Commencement Date**"), Lehman Brothers Holdings, Inc. ("**LBHI**") and certain of its

subsidiaries (collectively, the "**Debtors**") filed voluntary cases under title 11 of the U.S. Code

(the "**Bankruptcy Code**").  The Debtors' chapter 11 cases were consolidated for procedural

purposes and were jointly administered pursuant to Rule 1015(b) of the Federal Rules of

Bankruptcy Procedure.  The Debtors were authorized to operate their businesses and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

2.        The Court appointed a Fee Committee on May 26, 2009 to perform the duties set

forth in the Fee Committee Order, amended from time to time, including, among other things,

monitoring the fees and expenses incurred by professionals approved by the Court ("**Retained**

**Professionals**").[4]

A.        That four-member Committee, with Kenneth Feinberg as its chair,

reviewed the fee applications filed during the first five interim periods (September 15, 2008

through May 31, 2010) pursuant to 11 U.S.C. § 331 and the related guidelines.

B.        On January 24, 2011, the Fee Committee recommended the appointment

of Richard A. Gitlin as Successor Independent Member of the Fee Committee and, by an order

the same day, the Court approved the recommendation.  *See Order Approving Fee Committee's*

*Recommendation of Appointment of Successor Independent Member* [Docket No. 14117].

---

[4] With isolated exceptions, the Fee Committee did not review the compensation of ordinary course professionals.

3.      On April 6, 2011, the Court entered the *Order Authorizing the Employment and Retention of Godfrey & Kahn, S.C. as Counsel to the Fee Committee Nunc Pro Tunc as of January 24, 2011* [Docket No. 15663].

4.      On April 14, 2011, the Court entered an Order amending the May 26, 2009 *Order Appointing Fee Committee and Approving Fee Protocol* [Docket No. 3651], superseding and replacing the original fee review procedures with the "**Amended Fee Protocol**" [Docket No. 15998].

5.      Pursuant to the Court's *Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket No. 23023], the reorganized Debtors emerged from bankruptcy on March 6, 2012 (the "**Effective Date**").  *See Notice of Effective Date and Distribution Date in Connection with the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket No. 26039].

6.      The Uncontested Applicants filed their final fee applications (the "**Final Fee Applications**"), consistent with the terms of the Plan of Reorganization, on or around July 5, 2012.

7.      On October 8, 2012, the Fee Committee filed its *Notice of Hearing on Final Applications of Retained Professionals for Final Allowance and Approval of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from September 15, 2008 to March 6, 2012* [Docket No. 31238] (the "**Final Application Notice**").

8.      On October 26, 2012, after consultation with the Court's staff, the Fee Committee filed the *Adverse Weather – Notice of Adjournment of October 30, 2012 Hearing on Final*

*Applications of Retained Professionals for Final Allowance and Approval of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From September 15, 2008 to March 6, 2012 Due to Storm Forecast for New York City* [Docket No. 31742]. The Court rescheduled the hearing for November 8 at 2:00 p.m.

9.      Pursuant to the Final Application Notice, the deadline for any party to object to those Final Fee Applications noticed for hearing on October 30 was October 19, 2012. No party objected to any of the Final Fee Applications scheduled for that date.[5] *See supra* at p. 3 n.1.

10.      Since the Commencement Date, the Debtors and the Creditors' Committee, combined, retained approximately 50 professionals. They have not only provided legal and financial advice but have helped manage the billion-dollar, multi-national, multi-dimensional Debtors in the interests of their creditors and other interested parties. Those professionals have done a remarkable job.

11.      Over ten interim fee periods—42 months between September 2008 and March 2012—the Retained Professionals, including but not limited to the Uncontested Applicants, collectively have sought interim Court approval for approximately $1.8 billion in fees and expenses.[6] Of that total, compensation sought by law firms for professional services and expenses comprises $959,740,125.14. Financial and accounting firms have sought $207,097,785.90 in fees and expense reimbursements during this same period, and A&M has received a total of $535 million in quarterly compensation and expense reimbursements in addition to the pending $90.76 million incentive fee request.

---

[5] An objection was filed on October 17, 2012, to the Final Fee Application of Milbank, Tweed, Hadley & McCloy LLP [Docket No. 31660], but it is not scheduled for hearing until November 29, 2012.

[6] Pursuant to the Court's Monthly Compensation Order, most Retained Professionals have received each month, on an interim basis, 80 percent of the amounts they have invoiced for their services and 100 percent of their expenses— all subject to adjustment, objection, public hearing and Court approval.

## REVIEW PROCESS

12.        Since January 24, 2011, the Fee Committee has met at least monthly—in total,
more than 30 times—most often in person but occasionally by telephone.  Before each meeting,
counsel to the Fee Committee provided an agenda and detailed materials for the Fee
Committee's discussion and consideration.  Throughout the review process, the Fee Committee
developed and articulated, through written communications with the Retained Professionals, a
comprehensive set of case-specific principles that it applied to each interim and final fee
application subject to review.

13.        The Fee Committee's counsel reported at each meeting on, among other things,
the results of the review process, the feedback from Retained Professionals, and the progress
made with respect to the consensual resolution of interim fee applications.

14.        As it had from the outset, the Fee Committee's review began, for each interim fee
period, with a quantitative and qualitative audit of the fee applications and the invoices and
voluminous documentation submitted in support of each application.

15.        Initially, an independent consultant (BrownGreer PLC) performed the quantitative
analysis with the Fee Committee's counsel providing qualitative analysis.  By mid-2011,
however, the Fee Committee concluded it could achieve greater efficiency and uniformity in the
process by consolidating the quantitative and qualitative functions.  As a result, counsel
developed a database application specifically tailored to store and analyze more than $1.8 billion
in fee-related data.  This application served as the platform for a line-by-line review of each fee
request and all of the supporting data submitted to the Debtors for payment.  The database also
formed the basis for the Fee Committee's comprehensive analysis of the rate increases imposed
on the estates by Retained Professionals throughout these proceedings.

16.    Consistent with the procedures in the Amended Fee Protocol, the Fee Committee has—since January 24, 2011—monitored all of the interim and final fee applications (covering the sixth through tenth interim fee periods), reviewed them, and provided confidential "Fee Committee Reports" (the **"Letter Reports"**) to each Retained Professional on each interim and on each Final Fee Application.

17.    As required by the Amended Fee Protocol, the Fee Committee engaged in extensive communications with each Retained Professional after issuing the serial Letter Reports, seeking additional explanation and supporting documentation.  As a result of that dialogue, the Fee Committee and the Retained Professionals agreed to stipulated, and sometimes significant, reductions in the amounts originally requested.  These efforts are documented in the Letter Reports and in communications with the Retained Professionals, reflected in more than 140 filed stipulations resolving interim fee disputes without the need for any contested Court proceedings.

18.    On February 27, 2012, the Court entered an order expanding the scope of the Fee Committee chair's and counsel's retention to re-examine, in the interest of consistency, the applications filed in the first five interim fee periods—that is, those prior to the appointment of Richard Gitlin as the Successor Independent Member and chair of the Fee Committee.  *See Order Authorizing Retention of Richard Gitlin, Fee Committee Chair, and Godfrey & Kahn, S.C. as Counsel to the Fee Committee to Conduct Retrospective Review of Professional Compensation, Nunc Pro Tunc to December 1, 2011* [Docket No. 25827] (the "**Retrospective Review Order**").

19.     For all of the Uncontested Applicants, the Fee Committee has provided a
comprehensive summary of the results of that retrospective review, incorporated into the
individual Letter Reports for each of the Final Fee Applications.

20.     As a result of this process, the Fee Committee is satisfied that the treatment of all
requested fees and expenses—throughout all ten interim fee periods—has been subject to a
generally-applied set of standards, guided by the Bankruptcy Code and the applicable guidelines
of this Court and the Office of the U.S. Trustee.

21.     With this Report, the Fee Committee recommends that the Court approve the
Final Fee Applications, all with the stipulated adjustments to the initially-requested fees and
expenses outlined in **Exhibit A**.

## ISSUES

22.     Each of the Final Fee Applications (and the interim applications that preceded
them) raised issues unique to the individual firm's retention and the particular services they
provided as estate fiduciaries.  There were, however, identifiable trends in the applications that
frequently recurred.  The most prevalent causes of the Fee Committee's concerns—ultimately
resulting in stipulated deductions—fell into seven distinct categories, summarized here.  The
concerns raised about hourly rate increases are the most significant, involving both the largest
amounts and the greatest point of disagreement between the Fee Committee and the Retained
Professionals.

23.     Billing for Billing

A.     Under the Fee Committee's initial leadership, compensation for services
related to the retention, invoicing and fee application process had been subject to a bright-line
rule.  Firms could seek compensation for only up to one percent of their total requested
compensation for any interim fee period, regardless of the time actually expended on application

preparation and submission.  After January 24, 2011, the Fee Committee revised this policy,

instead adopting a more flexible and application-specific approach that examined the actual

services provided to determine whether they were properly compensable or, rather, were simply

part of a firm's ordinary billing process.  This approach reflected the billing and fee

application-related requirements imposed by the Bankruptcy Code and guidelines.  The Fee

Committee's counsel examined each request for "fees on fees" on an application-by-application

basis.

B.      The purpose of the Fee Committee's revised inquiry was to isolate and

distinguish those expenses related to fee application preparation that are specifically mandated

by the Bankruptcy Code—by definition, compensable—from those that constitute the ordinary

day-to-day billing process of any professional firm for any client.

C.      Within the bankruptcy context and these cases, the authority for

compensating a professional for some billing-related activities is found in 11 U.S.C. § 330(a)(6)

("preparation of a fee application") and in the Amended Fee Protocol (permitting compensation

for "[w]ork performed … to assist the Fee Committee in the performance of its duties").

However, nothing authorizes compensation for routine invoicing services.  *See*, *e.g.*, *In re Mesa

Air Group, Inc.*, 449 B.R. 441, 446 (Bankr. S.D.N.Y. 2011) (citing *In re CCT Commc'ns, Inc.*,

No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010)).

D.      The Fee Committee adopted the position that the internal review and

editing of time entries are not normally compensable at any rate or in any amount.  *See id.*[7]  That

is not a service for which professionals are compensated outside of bankruptcy.  Similarly,

---

[7] Some allowances were made, however, as part of the negotiating process that led to consensual resolutions of
interim fee applications.

services that involve coordinating with other professionals on fee-related issues are not

compensable under either the Bankruptcy Code or the Amended Fee Protocol.

E.      Treated as compensable, by contrast, were reasonable fees and expenses

associated with the preparation and submission of the interim and final fee applications

themselves, as well as attendance at uncontested fee hearings, and certain cooperative efforts

with the Fee Committee designed to address its questions and concerns about a fee application.

F.      Each of the Uncontested Applicants, with the adjustments to the Final Fee

Applications summarized in **Exhibit A**, has accepted these principles.

24.     Time Increments

A.      "[P]roper time record keeping is necessary to enable the court to

determine the reasonableness of the work that has been performed…. Any uncertainties due to

poor record keeping are resolved against the applicant." *In re West End Fin. Advisors, LLC*,

No. 11-11152, 2012 WL 2590613, at *4 (Bankr. S.D.N.Y. July 3, 2012) (citation omitted).

Specifically, pursuant to the U.S. Trustee Guidelines, timekeepers must record their time

contemporaneously in tenth-of-an-hour increments.  28 C.F.R. pt. 58, App. A ("**U.S.T.

Guidelines**").  Time entries repeatedly billed in whole- and half-hour increments—significantly

in excess of the 20 percent that might be expected in a statistically perfect sample—raise at least

two adverse inferences.  First, the pattern raises a concern that the timekeeper's minimum

increment was a half-hour, ignoring the requirement that the minimum increment be one-tenth of

an hour.  Second, the billing pattern raises a question of whether the timekeeper failed to keep

accurate and contemporaneous records, leading to estimating or rounding.

B.      The Fee Committee's review identified, in many instances, timekeepers

who regularly failed to bill in tenths-of-an-hour.  Some timekeepers were noteworthy for

recording their time entries in half-hour or whole-hour increments with unusual frequency. That raised concerns as a result of the adverse inferences articulated above.

        C.      All of the Uncontested Applicants for whom time increments were a problem acknowledged the issue and, in most cases, remedied it during successive interim fee periods. Many accepted the Fee Committee's proposed deductions to offset any adverse impact on the estates of this prominent guideline violation.

        25.     Administrative Tasks and Expenses

        A.      After January 24, 2011, the Fee Committee developed a different approach for reviewing tasks and expenses previously considered administrative and, therefore, non-compensable. Rather than relying primarily upon raw search terms to identify tasks that could be characterized as administrative, the Fee Committee now has examined each application to identify tasks that, *in substance* but not necessarily in name, are properly characterized as administrative. Those tasks include duties appropriate for staff such as word processing, proofreading and secretarial tasks. U.S.T. Guidelines § (b)(5)(vii); *see also*, *e.g.*, *In re Fibermark, Inc.*, 349 B.R. 385, 396 (Bankr. D. Vt. 2006).

        B.      In addition, the Fee Committee reviewed the fee applications for tasks performed by attorneys that more appropriately could have been performed by paraprofessionals including, for example, docket review or assembling of materials for meetings and hearings. Where the Fee Committee deemed these services compensable, they were allowed only at a billing rate commensurate with the complexity of the task. *See* 11 U.S.C. § 330(a)(3)(D). Each of the Uncontested Applicants accepted this adjustment to their requested compensation.

26.    Vague Task Descriptions

A.    To be compensable, the Fee Committee required task descriptions to be sufficiently detailed to allow a party reviewing them to determine their compliance with applicable Bankruptcy Code sections, rules, standards, and guidelines.  "Services should be noted in detail … with each service showing a separate time entry."  U.S.T. Guidelines § (b)(4)(v).  Time entries require sufficient detail, on their face or in context, to demonstrate compliance with the standards in 11 U.S.C. § 330.

B.    The Fee Committee asked professionals to identify the final intended work product or purpose for services requiring extended periods of review or analysis and to identify the document (or data) being reviewed, edited or analyzed so that the services could be evaluated for reasonableness.  Similarly, the Fee Committee required professionals to identify the specific services provided—such as drafting or editing—rather than rely on generic terms like "Work on" or "Attention to."  *See In re CCT Commc'ns*, 2010 WL 3386947, at *8.  Each of the Uncontested Applicants complied with these guidelines in the first instance or, if appropriate, accepted reductions to their requested fees as a consequence of timekeeping that fell short of the requirement.

27.    Block Billing

The Fee Committee applied the U.S.T. Guideline that prohibits "lumped" or block billing, defined as failing to separately identify the amount of time spent on each discrete task for time entries totaling more than 0.5 hours.  U.S.T. Guidelines § (b)(4)(v).  All of the Uncontested Applicants either remedied their block billing guideline shortcomings to the Fee Committee's satisfaction or accepted a reduction in the amount of fees requested as a consequence of non-compliance.

28.    Expenses

One of the most common sources of stipulated deductions for expenses were the costs and expenses that exceeded applicable case maximums.  These deductions include black and white photocopying charges billed in excess of $.10 per page, travel in other than coach class, and working and travel meal charges in excess of the $20 and $40 per person caps, respectively. The stipulations also reflect deductions for computerized legal research expenses exceeding $1,000 that lacked sufficient explanation and vague or undocumented expense descriptions. Each Uncontested Applicant either provided supporting documentation to establish compliance with the applicable caps or agreed to a decrease in expense reimbursement to comply with the guidelines.

29.    Rate Increases

A.    A Retained Professional's compensation always must be reasonable, including its rate increases, and the burden of proving the reasonableness of any compensation request always falls on the professional.  *See* 11 U.S.C. § 330(a)(3); *Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'ship*, 369 B.R. 111, 115 (S.D.N.Y. 2007); *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.)*, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997).  The burden of proof is not taken lightly, and it must be supported by evidence rather than conclusory statements.  *See In re Computer Learning Ctrs., Inc.*, 285 B.R. 191, 200, 226 (Bankr. E.D. Va. 2002) (citations omitted).

B.    Some of the Uncontested Applicants did not change the rates charged to the estates after their retention, even when their standard retention applications stated that their

rates would be or could be adjusted "from time to time."  Some did increase rates, however, and in significant amounts.[8]

C.      To fully identify and quantify the impact of rate increases on the Debtors, the Fee Committee repeatedly asked Retained Professionals to provide both historical data on fee increases since their retention dates and the justification for the increases—in light of the very restrained market conditions in the legal services industry during the pendency of these cases. Some (but not all) of the Uncontested Applicants either provided that information or, more often, agreed with the Fee Committee's own quantitative evaluation of the issue.

D.      Each Uncontested Applicant that raised rates after its retention received a detailed analysis, produced from the Fee Committee's dedicated database, identifying each dollar billed to the estates in excess of the timekeeper's rate at the time they first worked on these cases.  Across all Retained Professionals (not just the Uncontested Applicants), rate increases cost the estates more than $90 million.

E.      Since 2008, the market has been very resistant to law firms and lawyers seeking rate increases—with many firms imposing no or very moderate rate increases. Notwithstanding that, the Fee Committee has developed an approach that would acknowledge, as part of a consensual resolution process, some of the rate increase practices of firms.  After a thorough analysis of the billing data here and in other proceedings and the external evidence of the legal services market between September 2008 and March 2012, the Fee Committee provided each Retained Professional with a memorandum on June 29, 2012 outlining guidelines that the

---

[8] The professional's actual rate is not itself determinative of the prevailing market rate.  285 B.R. at 200, 226. Moreover, it is incumbent on the applicant to provide "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community. …"  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Fee Committee intended to apply—for settlement purposes—to each Retained Professional's rate increases:

- The Fee Committee will accept at face value a timekeeper's progression through a firm's rate schedule from year-to-year (what some firms characterize as "step increases")—but limited to the rate schedule in place at the time of the firm's retention.  For annual rate increases based solely on a timekeeper's progression through a rate schedule, however, the firm must document the initial retention rate schedule distinct from other forms of rate increases.

- The Fee Committee will question rate increases of any kind for professionals and staff whose billings in the course of the case or a given period in the case fall below a stated minimum of $10,000 in billings or 25 or fewer hours in a calendar year.  This reflects the assumption that any increase in experience of such timekeepers does not generally benefit the estates here.

- The Fee Committee will accept rate increases that occur when an associate becomes a partner.

- The Fee Committee will question hourly rates that exceed the same timekeeper's initial rate in a subsequently filed Chapter 11 case or work in the same case after the effective date of a Chapter 11 plan's confirmation.  During time periods when cases overlap, the lower rate should apply.

- The Fee Committee intends to account for time successfully contested or conceded or for which alternative billing arrangements are in place.  In other words, there should be no rate increase deduction for previously disallowed or compromised amounts.

- The Fee Committee will consider applying a single, uniform annualized percentage increase to all timekeepers that reflects in the aggregate a combination of a variety of overlapping factors: the U.S. Labor Department's annual cost of living data, the annual survey data for rate increases in the market, and the average rate increase for all professionals in the proceeding itself (including step increases).

      F.      The Fee Committee's goal was to create a "safe harbor" for some Retained Professional rate increases, accepting for purposes of seeking consensual resolution a fixed percentage rate increase (including step increases) for each timekeeper each year.  Retained Professionals were invited to justify greater increases, through direct evidence, beyond those cognizable under these principles.

G.    Each Uncontested Applicant has accepted the application of the Fee Committee's principles to their Final Fee Applications.  Where necessary, the final proposed compensation amounts reflected in **Exhibit A** reflect a deduction to bring each Uncontested Applicant's fees in line with these compromise guidelines.

## CONCLUSION

Over the last 18 months, the Fee Committee has worked with the Uncontested Applicants constructively and collegially.  In all instances, the Retained Professionals have either provided additional detail and accounted for the issues identified to the Fee Committee's satisfaction or have accepted its proposed reductions.

There is no question that, at $1.8 billion in fees and expenses, these proceedings have been extraordinarily expensive.  However, whether the fees and costs are evaluated in terms of the scope of the Debtors' businesses, the amount of time the proceedings have taken, or the complex issues they raised and resolved, the fees and expenses here, with the adjustments noted on **Exhibit A**, are reasonable and proportionate.  Indeed, the aggregate fees and expenses may well prove to be less than three percent of the ultimate distributions to creditors.

This Report reflects the discipline required by the Bankruptcy Code and guidelines— notwithstanding the size of the cases, the dividend anticipated for creditors, and the availability of proceeds for all administrative expenses.  Yet the Bankruptcy Code, the judicial precedent applying it, and the relevant guidelines do not suggest a sliding scale or an escalation clause.  To be sure, the outcome of a proceeding is a factor in determining "reasonableness," but it is not a standard to the exclusion of all others.

In cases of this magnitude and significance, some form of  independent fee and expense review is essential.  That need is inescapable given the practical burden that the Bankruptcy Code places on the Court to deem "reasonable" (or not) tens of thousands of pages of billing and

expense data.  Based upon its review and analysis, the Fee Committee believes that the fees and

expenses requested in the Final Fee Applications—as adjusted—comply with the Bankruptcy

Code and applicable guidelines.  The fees and expenses are reasonable and necessary.  As such,

the Fee Committee asks that the Final Fee Applications be approved, as adjusted in **Exhibit A**,

for final award and payment.

Though the Fee Committee's recommendation to the Court with respect to these 25

applications is unequivocal, and there are no objections of record, the Fee Committee Chair and

counsel will appear at 2:00 p.m. on November 8, 2012, to seek formal approval of the Final Fee

Applications and answer any questions the Court may have about the applications or the process

leading to their consensual resolution.

Dated:  Madison, Wisconsin
        November 2, 2012.

GODFREY & KAHN, S.C.

By:      */s/ Katherine Stadler*
         Katherine Stadler
         GODFREY & KAHN, S.C.
         One East Main Street, Suite 500
         Madison, Wisconsin 53703
         phone: (608) 257-3911
         fax: (608) 257-0609
         E-mail: kstadler@gklaw.com

         *Attorneys for the Fee Committee*

8624276_3

# EXHIBIT A

## Summary of Final Fees and Expenses

Lehman Brothers Holdings, Inc., et al.
Case No. 08-13555 (JMP)

## EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | Final Fee Application | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Alvarez & Marsal North America, LLC** | | | | | | | | | | | |
| Amounts Requested | | | | | | | | | Amounts Requested | $90,760,000.00 | $0.00 |
| Stipulated Reductions | | | | | | | | | Adjustment to Incentive Fees | ($11,000,000.00) | $0.00 |
| Net Award | | | | | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$79,760,000.00** | **$0.00** |
| | | | | | | | | | | | |
| **Bortstein Legal LLC** | | | | | | | | | | | |
| Amounts Requested | $650,043.00 | $0.00 | $3,558,084.25 | $0.00 | $4,208,127.25 | $0.00 | $4,148,730.45 | $0.00 | Amounts Requested | $4,208,127.25 | $0.00 |
| Stipulated Reductions | ($8,806.25) | $0.00 | ($28,045.50) | $0.00 | | | | | Adjustments made for stipulated reductions | ($36,851.75) | $0.00 |
| Net Award | $641,236.75 | $0.00 | $3,530,038.75 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$4,171,275.50** | **$0.00** |
| | | | | | | | | | | | |
| **Bracewell & Giuliani LLP** | | | | | | | | | | | |
| Amounts Requested | $0.00 | $0.00 | $194,370.00 | $4,122.19 | $194,370.00 | $4,122.19 | $194,370.00 | $4,122.19 | Amounts Requested | $194,370.00 | $4,122.19 |
| Stipulated Reductions | $0.00 | $0.00 | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | $0.00 | $0.00 |
| Net Award | $0.00 | $0.00 | $194,370.00 | $4,122.19 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$194,370.00** | **$4,122.19** |
| | | | | | | | | | | | |
| **Clyde Click, P.C.** | | | | | | | | | | | |
| Amounts Requested | $335,495.00 | $27,836.84 | $0.00 | $0.00 | $335,495.00 | $27,836.84 | $333,959.25 | $27,836.84 | Amounts Requested | $335,495.00 | $27,836.84 |
| Stipulated Reductions | ($1,535.75) | $0.00 | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($1,535.75) | $0.00 |
| Net Award | $333,959.25 | $27,836.84 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$333,959.25** | **$27,836.84** |
| | | | | | | | | | | | |

**Lehman Brothers Holdings, Inc., et al.**
**Case No. 08-13555 (JMP)**

## EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | Final Fee Application | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Dechert LLP** | | | | | | | | | | | |
| Amounts Requested | $7,901,232.85 | $144,082.62 | $624,268.85 | $11,199.34 | $8,525,501.70 | $155,281.96 | $8,348,230.53 | $154,087.52 | Amounts Requested | $8,393,840.78 | $154,179.94 |
| Stipulated Reductions | ($164,778.01) | ($976.61) | ($36,275.62) | ($105.38) | | | | | Adjustments made for stipulated reductions | ($69,392.71) | $20.03 |
| Net Award | $7,736,454.84 | $143,106.01 | $587,993.23 | $11,093.96 | | | | | Rate Increase Adjustments | ($79,025.48) | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$8,245,422.59** | **$154,199.97** |
| | | | | | | | | | | | |
| **Deloitte Tax LLP** | | | | | | | | | | | |
| Amounts Requested | $829,067.95 | $34,617.44 | $110,856.50 | $126.35 | $939,924.45 | $34,743.79 | $924,015.05 | $34,302.74 | Amounts Requested | $925,083.05 | $34,322.74 |
| Stipulated Reductions | ($15,909.40) | ($441.05) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($1,068.00) | $0.00 |
| Net Award | $813,158.55 | $34,176.39 | $110,856.50 | $126.35 | | | | | Rate Increase Adjustments | ($1,000.00) | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$923,015.05** | **$34,322.74** |
| | | | | | | | | | | | |
| **Ernst & Young LLP** | | | | | | | | | | | |
| Amounts Requested | $163,138.20 | $352.00 | $1,624,861.00 | $0.00 | $1,787,999.20 | $352.00 | $1,718,076.58 | $0.00 | Amounts Requested | $1,777,338.63 | $352.00 |
| Stipulated Reductions | $0.00 | ($352.00) | ($31,183.00) | $0.00 | | | | | Adjustments made for stipulated reductions | ($20,522.43) | ($352.00) |
| Net Award | $163,138.20 | $0.00 | $1,593,678.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$1,756,816.20** | **$0.00** |
| | | | | | | | | | | | |
| **Fried, Frank, Harris, Shriver & Jacobson LLP** | | | | | | | | | | | |
| Amounts Requested | $850,138.00 | $37,370.45 | $0.00 | $0.00 | $850,138.00 | $37,370.45 | $833,154.00 | $35,476.66 | Amounts Requested | $877,088.50 | $36,837.33 |
| Stipulated Reductions | ($16,984.00) | ($1,893.79) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($207.00) | ($1,360.67) |
| Net Award | $833,154.00 | $35,476.66 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | ($3,246.60) | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$873,634.90** | **$35,476.66** |

Lehman Brothers Holdings, Inc., et al.
Case No. 08-13555 (JMP)

## EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | Final Fee Application | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Gianni, Origoni, Grippo, Cappelli & Partners** | | | | | | | | | | | |
| Amounts Requested | $229,364.62 | $12,761.00 | $0.00 | $0.00 | $229,364.62 | $12,761.00 | $0.00 | $0.00 | Amounts Requested | $229,364.62 | $12,761.00 |
| Stipulated Reductions | ($7,007.00) | $0.00 | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($7,007.00) | $0.00 |
| Net Award | $222,357.62 | $12,761.00 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | ($4,504.28) | $0.00 |
| | | | | | | | | | Final Fee Award | $217,853.34 | $12,761.00 |
| | | | | | | | | | | | |
| **Hardinger & Tanenholz, LLP** | | | | | | | | | | | |
| Amounts Requested | $204,306.80 | $8,211.65 | $0.00 | $0.00 | $204,306.80 | $8,211.65 | $204,306.80 | $8,211.65 | Amounts Requested | $1,211,383.85 | $23,483.64 |
| Stipulated Reductions | $0.00 | $0.00 | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | $0.00 | $0.00 |
| Net Award | $204,306.80 | $8,211.65 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Final Fee Award | $1,211,383.85 | $23,483.64 |
| | | | | | | | | | | | |
| **Houlihan Lokey Howard & Zukin Capital, Inc.** | | | | | | | | | | | |
| Amounts Requested | $35,145,846.52 | $177,096.70 | $8,786,666.66 | $439,318.45 | $43,932,513.18 | $616,415.15 | $17,266,666.66 | $559,030.79 | Amounts Requested | $43,932,513.18 | $564,678.92 |
| Stipulated Reductions | $0.00 | ($1,492.31) | $0.00 | $46,559.03 | | | | | Adjustments made for stipulated reductions | $0.00 | $45,066.72 |
| Net Award | $35,145,846.52 | $175,604.39 | $8,786,666.66 | $485,877.48 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Adjustment to Additional Fee | ($4,000,000.00) | $0.00 |
| | | | | | | | | | Final Fee Award | $39,932,513.18 | $609,745.64 |
| | | | | | | | | | | | |
| **Kasowitz, Benson, Torres & Friedman LLP** | | | | | | | | | | | |
| Amounts Requested | $2,374,919.00 | $631,022.64 | $186,714.50 | $125,292.82 | $2,561,633.50 | $756,315.46 | $2,520,999.14 | $755,861.00 | Amounts Requested | $2,523,737.14 | $756,229.29 |
| Stipulated Reductions | ($12,834.00) | ($454.46) | ($16,978.75) | $0.00 | | | | | Adjustments made for stipulated reductions | $8,083.71 | ($368.29) |
| Net Award | $2,362,085.00 | $630,568.18 | $169,735.75 | $125,292.82 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Reduction for Nov. 2011 invoice | ($50,000.00) | |
| | | | | | | | | | Final Fee Award | $2,481,820.85 | $755,861.00 |

8636865_3

3 of 7

**Lehman Brothers Holdings, Inc., et al.**
**Case No. 08-13555 (JMP)**

## EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | | Final Fee Application | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Kleyr Grasso Associes** | | | | | | | | | | | |
| Amounts Requested | $771,450.23 | $9,459.01 | $443,509.56 | $8,688.01 | $1,214,959.79 | $18,147.02 | $1,053,411.99 | $15,973.88 | Amounts Requested | $1,214,959.80 | $18,147.02 |
| Stipulated Reductions | ($58,221.12) | ($200.87) | ($26,530.18) | ($1,972.27) | | | | | Adjustments made for stipulated reductions | ($84,751.30) | ($2,173.14) |
| Net Award | $713,229.11 | $9,258.14 | $416,979.38 | $6,715.74 | | | | | Rate Increase Adjustments | ($8,246.24) | $0.00 |
| | | | | | | | | | Final Fee Award | $1,121,962.26 | $15,973.88 |
| | | | | | | | | | | | |
| **Kramer Levin Naftalis & Frankel LLP** | | | | | | | | | | | |
| Amounts Requested | $214,141.05 | $4,703.15 | $0.00 | $0.00 | $214,141.05 | $4,703.15 | $199,857.36 | $4,572.53 | Amounts Requested | $201,934.80 | $4,594.53 |
| Stipulated Reductions | ($13,660.65) | ($130.62) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($1,454.40) | ($22.00) |
| Net Award | $200,480.40 | $4,572.53 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | ($623.04) | $0.00 |
| | | | | | | | | | Final Fee Award | $199,857.36 | $4,572.53 |
| | | | | | | | | | | | |
| **Krebsbach & Snyder, PC** | | | | | | | | | | | |
| Amounts Requested | $800,046.00 | $13,693.77 | $0.00 | $0.00 | $800,046.00 | $13,693.77 | $798,620.50 | $13,432.81 | Amounts Requested | $799,238.50 | $15,013.89 |
| Stipulated Reductions | ($1,425.50) | ($260.96) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($980.00) | ($260.96) |
| Net Award | $798,620.50 | $13,432.81 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | ($574.84) | $0.00 |
| | | | | | | | | | Final Fee Award | $797,683.66 | $14,752.93 |
| | | | | | | | | | | | |
| **Latham & Watkins LLP** | | | | | | | | | | | |
| Amounts Requested | $414,311.50 | $1,067.45 | $195,195.50 | $9,437.80 | $609,507.00 | $10,505.25 | $574,847.00 | $9,563.93 | Amounts Requested | $610,148.50 | $10,564.48 |
| Stipulated Reductions | ($32,269.50) | ($235.60) | ($10,338.70) | ($605.41) | | | | | Adjustments made for stipulated reductions | ($43,249.70) | ($1,000.55) |
| Net Award | $382,042.00 | $831.85 | $184,856.80 | $8,832.39 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Final Fee Award | $566,898.80 | $9,563.93 |

8636865_3

Lehman Brothers Holdings, Inc., et al.
Case No. 08-13555 (JMP)

# EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | Final Fee Application | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Locke Lord LLP** | | | | | | | | | | | |
| Amounts Requested | $1,572,797.55 | $170,227.77 | $0.00 | $0.00 | $1,572,797.55 | $170,227.77 | $1,561,069.49 | $165,143.83 | Amounts Requested | $1,563,436.62 | $166,539.68 |
| Stipulated Reductions | ($9,360.93) | ($3,688.09) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($2,367.13) | ($1,395.85) |
| Net Award | $1,563,436.62 | $166,539.68 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Final Fee Award | $1,561,069.49 | $165,143.83 |
| | | | | | | | | | | | |
| **MMOR Consulting, Inc.** | | | | | | | | | | | |
| Amounts Requested | $1,052,397.50 | $20,909.98 | $0.00 | $0.00 | $1,052,397.50 | $20,909.98 | $1,051,407.50 | $19,001.51 | Amounts Requested | $1,051,407.50 | $19,001.51 |
| Stipulated Reductions | ($990.00) | ($1,908.47) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | $0.00 | $0.00 |
| Net Award | $1,051,407.50 | $19,001.51 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Final Fee Award | $1,051,407.50 | $19,001.51 |
| | | | | | | | | | | | |
| **Momo-o, Matsuo & Namba** | | | | | | | | | | | |
| Amounts Requested | $654,937.28 | $6,082.17 | $107,620.60 | $5,628.83 | $762,557.88 | $11,711.00 | $758,456.47 | $11,711.00 | Amounts Requested | $758,775.15 | $11,711.00 |
| Stipulated Reductions | ($4,101.41) | $0.00 | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($318.68) | $0.00 |
| Net Award | $650,835.87 | $6,082.17 | $107,620.60 | $5,628.83 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Final Fee Award | $758,456.47 | $11,711.00 |
| | | | | | | | | | | | |
| **Moulton Bellingham PC** | | | | | | | | | | | |
| Amounts Requested | $771,870.25 | $17,096.10 | $0.00 | $0.00 | $771,870.25 | $17,096.10 | $750,523.91 | $17,096.10 | Amounts Requested | $760,219.66 | $17,096.10 |
| Stipulated Reductions | ($21,346.34) | $0.00 | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | ($9,695.75) | $0.00 |
| Net Award | $750,523.91 | $17,096.10 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | Final Fee Award | $750,523.91 | $17,096.10 |

Lehman Brothers Holdings, Inc., et al.
Case No. 08-13555 (JMP)

# EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | Final Fee Application | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Paul Hastings LLP** | | | | | | | | | | | |
| Amounts Requested | $3,655,385.20 | $26,895.40 | $296,514.21 | $197.94 | $3,951,899.41 | $27,093.34 | $1,355,871.11 | $4,978.14 | Amounts Requested | $3,951,899.41 | $27,093.34 |
| Stipulated Reductions | ($1,769.67) | ($76.16) | $0.00 | ($48.30) | | | | | Adjustments made for stipulated reductions | ($100,000.00) | $0.00 |
| Net Award | $3,653,615.53 | $26,819.24 | $296,514.21 | $149.64 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$3,851,899.41** | **$27,093.34** |
| **PricewaterhouseCoopers LLP** | | | | | | | | | | | |
| Amounts Requested | $2,144,048.20 | $12,451.72 | $809,398.65 | $11,837.38 | $2,953,446.85 | $24,289.10 | $2,764,784.64 | $15,150.26 | Amounts Requested | $2,812,987.35 | $22,797.83 |
| Stipulated Reductions | ($108,464.45) | ($1,825.64) | ($31,995.05) | ($16.01) | | | | | Adjustments made for stipulated reductions | $0.00 | $350.38 |
| Net Award | $2,035,583.75 | $10,626.08 | $777,403.60 | $11,821.37 | | | | | Rate Increase Adjustments | ($2,594.40) | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$2,810,392.95** | **$23,148.21** |
| **Reed Smith LLP** | | | | | | | | | | | |
| Amounts Requested | $1,255,647.50 | $28,120.42 | $0.00 | $0.00 | $1,255,647.50 | $28,120.42 | $1,223,497.45 | $27,767.70 | Amounts Requested | $1,223,497.45 | $27,667.70 |
| Stipulated Reductions | ($32,150.05) | ($352.72) | $0.00 | $0.00 | | | | | Adjustments made for stipulated reductions | $0.00 | $100.00 |
| Net Award | $1,223,497.45 | $27,767.70 | $0.00 | $0.00 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$1,223,497.45** | **$27,767.70** |

Lehman Brothers Holdings, Inc., et al.
Case No. 08-13555 (JMP)

# EXHIBIT A

| | Interim Fee Periods 6 - 10 | | Interim Fee Periods 1 - 5 | | TOTAL Amounts Requested as Interim Compensation | | TOTAL Amounts Awarded or Stipulated to as Interim Compensation | | Final Fee Application | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | | Fees | Expenses |
| **Simpson Thacher & Bartlett LLP** | | | | | | | | | | | |
| Amounts Requested | $305,942.35 | $5,160.51 | $2,535,969.40 | $43,686.02 | $2,841,911.75 | $48,846.53 | $2,784,214.13 | $46,314.98 | Amounts Requested | $2,784,509.63 | $46,315.00 |
| Stipulated Reductions | ($1,315.50) | ($923.04) | ($110,850.92) | ($1,012.83) | | | | | Adjustments made for stipulated reductions | ($54,764.30) | $595.68 |
| Net Award | $304,626.85 | $4,237.47 | $2,425,118.48 | $42,673.19 | | | | | Rate Increase Adjustments | ($36,048.39) | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$2,693,696.94** | **$46,910.68** |
| | | | | | | | | | | | |
| **Richard Sheldon** | | | | | | | | | | | |
| Amounts Requested | $228,058.94 | $0.00 | $151,779.32 | $19.83 | $379,838.26 | $19.83 | $378,726.98 | $19.83 | Amounts Requested | $378,109.81 | $19.83 |
| Stipulated Reductions | ($1,111.28) | $0.00 | ($4,392.51) | ($1.22) | | | | | Adjustments made for stipulated reductions | ($4,392.51) | ($1.22) |
| Net Award | $226,947.66 | $0.00 | $147,386.81 | $18.61 | | | | | Rate Increase Adjustments | $0.00 | $0.00 |
| | | | | | | | | | **Final Fee Award** | **$373,717.30** | **$18.61** |
| **TOTALS:** | | | | | **$82,150,394.49** | **$2,048,773.75** | **$51,747,796.99** | **$1,929,655.89** | **Total Final Fee Awards:** | **$157,863,128.21** | **$2,040,563.93** |