**HEARING DATE AND TIME: December 19, 2012 at 10:00 a.m. (Prevailing Eastern Time)**
**RESPONSE DEADLINE: December 10, 2012 at 4:00 p.m. (Prevailing Eastern Time)**

---

**THE THREE HUNDRED SEVENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS SEEKS TO REDUCE AND ALLOW CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS NOTICE OF THE THREE HUNDRED SEVENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL, JORDAN BRYK, AT (212)-310-8034.**

---

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

--------------------------------------------------------------------x

**NOTICE OF HEARING ON THREE HUNDRED**
**SEVENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS (PARTNERSHIP CLAIMS)**

**PLEASE TAKE NOTICE** that on November 9, 2012, Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors for certain entities in the above-referenced chapter 11 cases, filed its three hundred

seventy-fourth omnibus objection to claims (the "Three Hundred Seventy-Fourth Omnibus Objection to Claims"), and that a hearing to consider the Three Hundred Seventy-Fourth Omnibus Objection to Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **December 19, 2012 at 10:00 a.m. (Prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

   **PLEASE TAKE FURTHER NOTICE** that any responses to the Three Hundred Seventy-Fourth Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Robert J. Lemons, Esq. and Mark Bernstein, Esq.); and (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **December 10, 2012 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

US_ACTIVE:\44132454\6\58399.0011

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Three Hundred Seventy-Fourth Omnibus Objection to Claims or any claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Three Hundred Seventy-Fourth Omnibus Objection to Claims, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: November 9, 2012
       New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

US_ACTIVE:\44132454\6\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**THREE HUNDRED SEVENTY-FOURTH OMNIBUS
OBJECTION TO CLAIMS (PARTNERSHIP CLAIMS)**

---

**THIS THREE HUNDRED SEVENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS
SEEKS TO REDUCE AND ALLOW CERTAIN FILED PROOFS OF CLAIM.  PARTIES
RECEIVING THIS THREE HUNDRED SEVENTY-FOURTH OMNIBUS OBJECTION
TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR
NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION
AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THIS
OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT
LEHMAN BROTHERS HOLDINGS INC.'S
COUNSEL, JORDAN BRYK, AT (212)-310-8034.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates"), respectfully represents as follows:

### Relief Requested

1.      LBHI files this Three Hundred Seventy-Fourth omnibus objection to claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the "Procedures Order") [ECF No. 6664], to reduce and allow the claims listed on Exhibit A annexed hereto.

2.      The Plan Administrator has examined the proofs of claim identified on Exhibit A (the "Partnership Claims") and has determined that the Partnership Claims should be reduced and allowed as general unsecured claims because the Partnership Claims were filed in an unliquidated or partially unliquidated amount or the amounts listed on the Partnership Claims are greater than the fair, accurate, and reasonable values of the amounts for which the Chapter 11 Estates are liable.  The Plan Administrator, therefore, requests that the Court reduce and allow each Partnership Claim listed on Exhibit A in the amounts and priorities set forth in the row entitled "*Claim as Modified*."

### Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

US_ACTIVE:\44132454\6\58399.0011

**Background**

4.      Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5.      On January 14, 2010, the Court entered the Procedures Order, which authorizes the filing of omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

6.      On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012.

7.      Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

**The Partnership Claims Should Be Reduced and Allowed**

8.      Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

3

9.      The Partnership Claims listed on <u>Exhibit A</u> annexed hereto assert claims for an interest in or losses associated with the Lehman Brothers Partnership Account Plan (the "<u>Partnership Account Plan</u>").

10.      The Partnership Account Plan was established "to attract and retain Eligible Employees by providing them with the opportunity to receive additional compensation, subject to the terms of the Plan, based on the performance of certain investments made by the Company and its Affiliates." *See Lehman Brothers Partnership Account Plan Employees Through Vice President Level* (the "<u>Partnership Account Plan Summary</u>"), attached hereto as <u>Exhibit B</u>.

11.      Participants in the Partnership Account Plan were automatically enrolled and received awards that entitled the participants to potential payments based upon the returns on a pool of investments. *See Partnership Account Booklet*, 3, attached hereto as <u>Exhibit C</u>. The participants did not contribute money to the Partnership Account Plan; instead, the participants received awards from LBHI. *See Partnership Account Booklet*, 3, 8. The Partnership Account Plan functioned as follows:

> The total amount shown on your Award Certificate is made up of two parts: your *base award* and the *leverage amount*. Before you begin participating in the Partnership Account, Lehman Brothers first sets the amount of your base award. Then the Firm adds leverage—essentially, an amount that represents borrowed capital—to increase the total amount that goes to work for you. The leverage amount provided for you is ten times the base award.

> Please keep in mind that the total award amount is not literally your property. Rather, Lehman Brothers uses the total amount as a basis for determining the amount of payments you will receive.

> In addition to receiving payments from investment returns on the total award amount, you also receive payments equal to the base award—as long as the Partnership Account portfolio returns are sufficient and you meet the program's other requirements. However, the leverage amount is not paid out to you under any circumstances. Instead, it is "repaid" to the Firm.

4

*Partnership Account Booklet*, 8-9.

12.    Participants were eligible to receive payments, but were not entitled to direct ownership in the investments:

> Under the Partnership Account, vesting means you have a right to receive the returns generated by the portfolio investments, but it does not mean you have a direct ownership interest in any of the underlying portfolio investments.

*Partnership Account Booklet*, 11.

13.    Instead, participants are general unsecured creditors of LBHI:

> The Partnership Account is *unfunded*, which means no assets are actually held in trust or dedicated to the Partnership Account.  From the time you become entitled to receive payments through the Partnership Account, you do not have rights greater than those of a general, unsecured creditor of the Firm.  All payments to you will be made by Lehman Brothers out of its general corporate funds, and you have no interest in any specific investments made by Lehman Brothers in connection with the Partnership Account.

*Partnership Account Booklet*, 11; *see also Partnership Account Plan Summary*, Section 11.

14.    In their proofs of claim, the holders of the Partnership Claims have asserted either incorrect or unliquidated claim amounts based on their interest in or losses associated with the Partnership Account Plan.  After a review of the relevant documentation, the claimants' supporting documentation, and LBHI's books and records, the Plan Administrator has determined that LBHI does have some liability for certain of the Partnership Claims; however, the Partnership Claims do not reflect the proper value of the Partnership Claims as of the Commencement Date, and, in some cases, assert an incorrect priority, and/or were filed in an unliquidated amount.  *See* 11 U.S.C. § 502(b).

15.    To determine the allowed amount of the Partnership Claims, the number of units granted to the claimant was converted to a dollar amount using a blend of valuation data points that covered the Partnership Account's major asset classes (fund of funds, privately-held

5

investments, and publicly-traded investments) as of the Commencement Date.  The valuation for

the fund of funds was based on statements received from third-party asset managers.  The

valuation for the privately-held investments was based on audited financial statements from the

Lehman Brothers Partnership Account 2000/2001 LP, a partnership in which the Partnership

Account invested, and internal valuations conducted by the Chapter 11 Estates.  The valuation

for publicly-traded investments was based on available market quotes.

16.     The amounts and priorities listed on Exhibit A in the row entitled "*Claim

as Modified*" represent the fair, accurate, and reasonable value and priority of the Partnership

Claims as reflected in LBHI's books and records as of the Commencement Date.  The holders of

the Partnership Claims should not be allowed to recover more than the value of their claims.

Accordingly, in order to properly reflect the fair, accurate, and reasonable value and priority of

these claims, the Plan Administrator requests that the Court reduce and, if applicable, reclassify

each Partnership Claim to the amount and priority listed on Exhibit A in the row entitled "*Claim

as Modified*" and allow each such Partnership Claim only to the extent of such modified amount

and priority.

### Reservation of Rights

17.     The Plan Administrator reserves all rights to object on any basis to any

Partnership Claim or any portion of any Partnership Claim as to which the relief requested herein

is not granted.

### Notice

18.     No trustee has been appointed in these Chapter 11 Cases.  Notice of this

objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

Southern District of New York; (v) each claimant listed on Exhibit A; and (vi) all other parties

6

entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010, governing case management and administrative procedures for these

cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be

provided.

19.    No previous request for the relief sought herein has been made by the Plan

Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order

granting the relief requested herein and such other and further relief as is just.

Dated:  November 9, 2012
        New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

7

**EXHIBIT A**

**IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO. 08-13555 (JMP)**

## OMNIBUS OBJECTION 374: EXHIBIT A - PARTNERSHIP CLAIMS

| NAME | CLAIM # | FILED DATE | DEBTOR NAME | ADMINIS-TRATIVE | SECURED | PRIORITY | UNSECURED | EQUITY | TOTAL |
|------|---------|-----------|-------------|-----------------|---------|----------|-----------|--------|-------|
| 1  AXELROD, STUART | 11253 | 9/10/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | $10,950.00 | $9,050.00 | | $20,000.00 |
| | | | **CLAIM AS MODIFIED** | | | **None** | **$16,437.60** | | **$16,437.60** |
| 2  BAQUERO,TARA E. | 8198 | 8/13/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | $10,950.00 | $689,050.00 | | $700,000.00 |
| | | | **CLAIM AS MODIFIED** | | | **None** | **$2,348.23** | | **$2,348.23** |
| 3  BULLEN, JANE E. | 31666 | 9/22/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 4  BUTLER-MCLAUGHLIN, CECELIA E. | 21506 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $70,000.00 | | $70,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |
| 5  CORNELL, JENNIFER I | 24175 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $6,000.00 | | $6,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 6  DELUCA, PHILIP F. | 15671 | 9/17/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $3,045.00 | | $3,045.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 7  ETGES,JUERGEN | 26291 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 8  FREEMAN,ROGER A. | 23880 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | $10,950.00 | $39,050.00 | | $50,000.00 |
| | | | **CLAIM AS MODIFIED** | | | **None** | **$16,437.60** | | **$16,437.60** |
| 9  GREVES, ANNE MARIE | 31667 | 9/22/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 10  HOM, MICHAEL C. | 12939 | 9/15/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | $10,950.00 | $14,050.00 | | $25,000.00 |
| | | | **CLAIM AS MODIFIED** | | | **None** | **$16,437.60** | | **$16,437.60** |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO. 08-13555 (JMP)

OMNIBUS OBJECTION 374: EXHIBIT A - PARTNERSHIP CLAIMS

| NAME | CLAIM # | FILED DATE | DEBTOR NAME | ADMINIS-TRATIVE | SECURED | PRIORITY | UNSECURED | EQUITY | TOTAL |
|------|---------|------------|-------------|-----------------|---------|----------|-----------|--------|-------|
| 11  LAWSON, IAN D | 24364 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $250,000.00 | | $250,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |
| 12  LEACH, EVERETT | 31672 | 9/22/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 13  LYONS, FREDERICK W. | 31164 | 9/22/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $70,000.00 | | $70,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |
| 14  MANNINO, JOSEPH | 13370 | 9/16/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $70,000.00 | | $70,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |
| 15  MEDERO, XAVIERA | 23796 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $70,000.00 | | $70,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 16  MONTALVO, MIRIAM | 30679 | 9/22/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 17  NANCOZ, SALLY | 26301 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $20,000.00 | | $20,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 18  OH, MIRIAM Y. | 15218 | 9/17/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |
| 19  RADICK, JONATHAN | 11299 | 9/10/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 20  SETO, KAREN | 24168 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |

\* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO. 08-13555 (JMP)

### OMNIBUS OBJECTION 374: EXHIBIT A - PARTNERSHIP CLAIMS

| NAME | CLAIM # | FILED DATE | DEBTOR NAME | AMOUNTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | ADMINIS-TRATIVE | SECURED | PRIORITY | UNSECURED | EQUITY | TOTAL |
| 21  SIBIRSKI, LINDA J. | 13457 | 9/16/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 22  SILVERS, STEVEN T. | 23876 | 9/21/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $10,000.00 | | $10,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| 23  SKINNER, MICHAEL L. | 8419 | 8/17/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | $10,950.00 | $41,357.64 | | $52,307.64 |
| | | | **CLAIM AS MODIFIED** | | | **None** | **$16,437.60** | | **$16,437.60** |
| 24  TERRANOVA, THOMAS | 67829 | 12/30/11 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | $70,000.00 | | $70,000.00 |
| | | | **CLAIM AS MODIFIED** | | | | **$16,437.60** | | **$16,437.60** |
| 25  WONG, NANCY C. | 31262 | 9/22/09 | Lehman Brothers Holdings Inc. | | | | | | |
| | | | TOTAL ASSERTED AMOUNT | | | | Undetermined | | Undetermined* |
| | | | **CLAIM AS MODIFIED** | | | | **$2,348.23** | | **$2,348.23** |
| | | | TOTAL ASSERTED | | | $54,750.00 | $1,431,602.64 | | $1,486,352.64 |
| | | | TOTAL NOT SUBJECT TO OBJECTION | | | 0.00 | 0.00 | | 0.00 |
| | | | TOTAL SUBJECT TO OBJECTION | | | 54,750.00 | 1,431,602.64 | | 1,486,352.64 |
| | | | **TOTAL CLAIM AS MODIFIED** | | | **$0.00** | **$213,688.82** | | **$213,688.82** |

**EXHIBIT B**

# LEHMAN BROTHERS PARTNERSHIP ACCOUNT PLAN
# EMPLOYEES THROUGH VICE PRESIDENT LEVEL

## SECTION 1 – DEFINITIONS

For purposes of the Plan, the capitalized terms shall have the meanings ascribed to them in Appendix A.

## SECTION 2 – PURPOSE

The purpose of the Plan is to attract and retain Eligible Employees by providing them with the opportunity to receive additional compensation, subject to the terms of the Plan, based on the performance of certain investments made by the Company and its Affiliates.

## SECTION 3 – ADMINISTRATION

The Plan shall be administered by the Committee, which shall be authorized: to determine whether Awards will be granted; to select Participants from among Eligible Employees; to determine Base Awards and Leverage Amounts; to identify Portfolio Investments; to interpret the Plan; to establish, amend and rescind any rules and regulations relating to the Plan; to determine the terms and provisions of each Award Certificate; to make all determinations necessary or advisable for the administration of the Plan; and to correct any defect, supply any omissions or reconcile any inconsistency in the Plan or in any Award Certificate in the manner and to the extent it shall deem desirable. The actions and determinations of the Committee in the administration of the Plan shall be final and conclusive with respect to all parties. The Committee may, in its sole discretion (i) delegate any of its responsibilities hereunder, and (ii) alter the terms of the Plan as it may deem necessary, in the case of Eligible Employees subject to the laws of any foreign jurisdiction, to give effect to the intent of the Plan.

## SECTION 4 – PARTICIPATION IN THE PLAN; EFFECT OF PARTICIPATION

4.1  Participation in the Plan. For each Award Period, the Committee may grant an Award to any Eligible Employee, at its sole discretion. Each Eligible Employee to whom such an Award is granted shall be a Participant with respect to such Award Period and shall receive an Award Certificate specifying the terms and conditions of such Participant's Award (including the Base Award and the Leverage Amount).

4.2  Designation of Portfolio Investments; Deemed Investment of Awards. The Committee shall designate those investments that shall be treated as Portfolio Investments for each Award Period and the percentage of each Award that is deemed invested in each such Portfolio Investment.

4.3  Effect of Award. Subject to the terms of the Plan, the grant of an Award shall entitle a Participant to a payment

or payments under Section 6, based on the amount credited to the Participant's Account for the applicable Award Period under Section 6.

## SECTION 5 – VESTING OF A PARTICIPANT'S ACCOUNT

5.1  General Rule. Each Participant's Account with respect to a particular Award Period, net of any reduction for amounts credited to the Company, shall vest fully upon the earlier of:

(a)  The third anniversary of the beginning of that Award Period, but only if the Participant has remained Continuously Employed by a Participating Company from the date the Award relating to that Award Period is granted until such third anniversary date; or

(b)  The Participant's death, Disability or Retirement after the beginning of that Award Period and prior to such third anniversary date; provided however that if, prior to the third anniversary of the beginning of the Award Period, an individual whose separation from employment was a Retirement becomes employed in a regular full-time capacity by a Competitor, such individual's Account shall thereupon be forfeited in full.

5.2  Special Vesting Rule. In the case of a Participant who (x) is an Analyst or Associate, or has been determined, in the sole discretion of the Committee, to be covered by the provisions of this Section 5.2, and (y) incurs a Break in Service prior to becoming fully vested in his or her Account pursuant to Section 5.1(a), the following rules shall apply.

(a)  Upon the commencement of the Break in Service, such individual shall no longer be a Participant.

(b)  Upon meeting all of the following conditions, such individual shall be restored to Participant status:

(i)  Such individual separated from employment by a Participating Company in good standing;

(ii)  The purpose of the separation was to matriculate in an Approved MBA Program or other educational program approved in writing by the Committee in its sole discretion;

(iii)  The individual subsequently graduated from (A) an Approved MBA Program and receives the degree of Master of Business Administration or (B) another educational program approved in writing by the Committee;

(iv) A Participating Company (in its sole discretion) extended to the individual a written offer of reemployment, such reemployment to commence following such graduation;

(v) The individual accepted such offer of reemployment and was reemployed by a Participating Company not later than the earlier of (A) the fourth anniversary of such individual's separation or (B) one year after such graduation;

(vi) The individual had not been employed in a regular full-time capacity by a Competitor at any time after his or her separation and before his or her reemployment; and

(vii) The individual remained Continuously Employed by a Participating Company for at least one year following his or her date of reemployment.

(c) If an individual is restored to Participant status, pursuant to Section 5.2(b), he or she shall (i) be treated, for purposes of Section 5.1, as if he or she had been Continuously Employed throughout his or her Break in Service; (ii) receive, as soon as practicable after restoration to Participant status, those cash payments that the Participant would have received under the Plan had he or she remained Continuously Employed (without payment of any additional Interest Equivalents to reflect any delay in payment that would not have occurred had he or she actually remained Continuously Employed); and (iii) be eligible for any additional payments thereafter becoming due to such Participant under the Plan.

5.3 <u>Additional Provisions</u>. Except as provided in this Section 5 or as otherwise prescribed by the Committee, an individual shall no longer be a Participant and such individual's Account shall be forfeited in full upon separation from employment by the Company and its Affiliates prior to becoming vested. The Committee may at any time in its sole discretion accelerate the vesting of any Account.

## SECTION 6 – CREDITING AMOUNTS TO A PARTICIPANT'S ACCOUNT; PAYMENTS

6.1 <u>Determination of Participant's Return</u>. As Return is realized with respect to each Portfolio Investment, the Committee shall determine the portion of such Return it deems attributable to the Participant, pro-rata based on the percentage of such Participant's Award for the Award Period that is deemed invested in such Portfolio Investment, and credit such Return to the Participant's Account.

6.2 <u>Use of Amounts Credited to Participant's Account</u>. The Return credited to a Participant's Account for a Award Period shall, after giving effect to all amounts previously so credited under this Section 6.2:

(a) first, be credited to and retained by the Company until the Company has been credited with an amount equal, in the aggregate, to the Company Return for that Award Period and the preceding Award Period, in that order;

(b) second, be credited to and retained by the Company until the Company has been credited with an amount equal, in the aggregate, to the Participant's entire Leverage Amount for that Award Period and the preceding Award Period, in that order;

(c) third, remain credited to the Participant's Account, up to an amount equal, in the aggregate, to the Base Award;

(d) fourth, be credited to and retained by the Company until it has been credited with an amount equal to such percentage as may be designated by the Committee pursuant to clause (e) below of the sum of:

(i) the Company Return credited pursuant to Section 6.2(a); plus

(ii) the cumulative amounts credited to the Company under this Section 6.2(d); and

(e) fifth, be divided between the Company and the Participant as designated by the Committee for that Award Period.

6.3 <u>Interest Equivalents</u>. Interest Equivalents shall be added to the net amounts credited to a Participant's Account (i.e., those amounts not credited to the Company), when and as determined by the Committee.

6.4 <u>Payments to Participants</u>. Subject to the terms of the Plan, from time to time at the sole discretion of the Committee, the Company shall pay the Participant, in cash, the vested amounts in the Participant's Account.

6.5 <u>Special Distribution Options After Five Years</u>. If any Portfolio Investments remain unliquidated as of the fifth anniversary of the first day of the Award Period to which such Portfolio Investments relate, or any subsequent anniversary thereof, then the Company shall have the right, but not the obligation, to pay, within 120 days after any such anniversary date, an amount in cash equal to all or a portion of the Participant's vested deemed interest in such Portfolio Investments based on their valuation prices, as determined by the Committee in its sole discretion, and giving effect to the allocations between the Company and the Participant set forth in Section 6.2. The Committee may determine, in its sole discretion, that the provisions of this Section 6.5 may be utilized, before or after the fifth anniversary referred to above, to assist the Company or an Affiliate in meeting its withholding obligations.

2

## SECTION 7 – WITHHOLDING AND OFFSET

The Company shall have the right to deduct from all amounts payable to any Participant any taxes or other amounts required by law to be withheld therefrom, and any amounts the Participant owes to the Company or any of its Affiliates.

## SECTION 8 – NON-TRANSFERABILITY

No Award and no portion of the Participant's Account hereunder shall be assignable or transferable, and no right or interest of any Participant in any amount or Participant's Account may be pledged or shall be subject to any lien, obligation or liability of the Participant, except as set forth herein.

## SECTION 9 – NO RIGHT TO EMPLOYMENT OR CONTINUED PLAN PARTICIPATION

No person shall have any claim or right to be granted an Award and the grant of an Award shall not be construed as giving a Participant the right to be retained in the employ of the Company or any of its Affiliates or, if separated, to be reemployed by the Company or its Affiliates or to be eligible for any subsequent Awards. Further, the Company and its Affiliates expressly reserve the right at any time to terminate or reemploy a Participant free from any liability or any claim under the Plan, except as provided herein or in any Award Certificate. The granting of any Award hereunder shall not have the effect of obligating the Company and its Affiliates to make any particular investments, nor shall such grant constitute a guaranty that the entire Award will be applied for the benefit of a Participant. The decision whether to invest any amounts in Portfolio Investments will be solely in the discretion of the Committee.

## SECTION 10 – AMENDMENT OR TERMINATION

The Board of Directors of the Company or the Committee may amend, suspend or terminate the Plan at any time.

## SECTION 11 – UNFUNDED STATUS OF PLAN; STATUS OF PAYMENTS

The Plan is intended to constitute an unfunded incentive compensation plan. With respect to any payments not yet made to a Participant by the Company, nothing herein contained shall provide any Participant with any rights that are greater than those of a general, unsecured creditor of the Company. No payments under this Plan shall be taken into account in determining a Participant's benefits under any compensation, pension or welfare plan, program or arrangement maintained by the Company or any Affiliate.

## SECTION 12 – WAIVER

No failure on the part of the Company, any Affiliate, the Committee or the Board of Directors to exercise, and no delay in exercising, any right or power under the Plan shall operate as a waiver of any such right or power; nor shall any single or partial exercise preclude any other or further exercise of a right or power or the exercise of any other right or power.

## SECTION 13 – SEVERABILITY

Each provision of the Plan will be interpreted in such manner as to be valid and effective but if any provision shall be ruled invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability of such provision shall not affect any of the remaining provisions of the Plan and the invalid terms shall be deemed to be replaced by a valid term which most closely reflects the intent of the Plan.

## SECTION 14 – GOVERNING LAW

The validity, construction and effect of the Plan, the Award Certificates, and any rules and regulations relating to the Plan or an Award Certificate shall be determined in accordance with the laws of the State of New York, without reference to conflicts of law. This Plan is not subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended.

## SECTION 15 – LIABILITY

No member of the Committee and no director, officer or employee of the Company or any of its Affiliates shall be liable to any person for any action taken or omitted in connection with the administration of the Plan unless attributable to his or her own fraud or willful misconduct; nor shall the Company be liable to any person for any such action unless attributable to fraud or willful misconduct on the part of a director, officer or employee of the Company or one of its Affiliates.

## SECTION 16 – EFFECTIVE DATE

The Plan shall be effective as of July 1, 2000 and shall continue until terminated by the Board of Directors of the Company or the Committee.

---

## APPENDIX A

(1) "Account" shall mean a bookkeeping account maintained for each Participant, to which the Participant's Return and Interest Equivalents shall be credited. A separate Account shall be maintained for each Award Period.

(2) "Affiliate" shall mean a person or entity controlling, controlled by, or under common control with the Company.

(3) "Analyst" shall mean an individual having an undergraduate degree enrolled in one of the formal programs for the employment of such individuals maintained by the Company and its Affiliates, as determined by the Committee.

(4) "Approved MBA Program" shall mean a program of higher education leading to the award of the degree of Master of Business Administration at an accredited institution of higher education approved by the Committee for purposes of this Plan.

3

(5) "Associate" shall mean an individual having a graduate degree or approved equivalent business experience enrolled in one of the formal programs for the employment of such individuals maintained by the Company and its Affiliates, as determined by the Committee.

(6) "Award" shall mean, with respect to any Participant, the aggregate of the Base Award and the Leverage Amount with respect to a particular Award Period.

(7) "Award Certificate" shall mean a document that evidences the grant of an Award under the Plan (including the Base Award and any Leverage Amount) that, together with the Plan, establishes the terms and conditions of such grant.

(8) "Award Period" shall mean a designated period of time with respect to which Awards are granted and with respect to which the Committee designates Portfolio Investments. The initial Award Period will be July 1, 2000 through December 31, 2001. Any Award Period may be extended in the sole discretion of the Committee.

(9) "Base Award" shall mean that part of an Award (exclusive of any Leverage Amount) that is designated by the Committee to be treated as if it were invested in Portfolio Investments.

(10) "Break in Service" shall mean a separation from employment with a Participating Company for any reason and for any period of time.

(11) "Committee" shall mean the Executive Committee (Non-Board) of the Company.

(12) "Company" shall mean Lehman Brothers Holdings Inc. and any successor thereto, whether by merger, consolidation, purchase of substantially all its assets or otherwise.

(13) "Company Return" shall mean a cumulative return (compounded annually) payable to the Company with respect to the Leverage Amount, at a rate of return on such Leverage Amount equal to such rate as may be prescribed by the Committee from time to time.

(14) "Competitor" shall mean any person or entity (including any company and its affiliates) engaged in any business activity that is materially competitive with any business carried on by the Company or an Affiliate at such time, as determined in the sole discretion of the Committee.

(15) "Continuously Employed" shall mean employed continuously, without a Break in Service, as determined by the Committee in its sole discretion.

(16) "Disability" shall mean a disability under both the Company's U.S. Long-Term Disability Insurance Plan and Social Security Act (or the equivalent plans or laws), as determined by the Committee in its sole discretion.

(17) "Eligible Employee" shall mean (i) any regular, full-time employee of a Participating Company below the level of Managing Director or Senior Vice President (or equivalent) not including any individual who is not actively employed due to Disability or has given or received a notice of termination of employment, all as determined by the Committee in its sole discretion, or (ii) such other employees of a Participating Company as may be designated by the Committee, in its sole discretion.

(18) "Interest Equivalents" shall mean interest credited at such rate as may be prescribed by the Committee from time to time.

(19) "Leverage Amount" shall mean that part of an Award, if any, designated by the Committee to be treated as the equivalent of a non-recourse loan to the Participant, which is to be treated as if it were invested in the applicable Portfolio Investments, thus affecting the Participant's Return. The Leverage Amount for the first Award Period under the Plan shall equal the product of ten times a Participant's Base Award. The Leverage Amount for any subsequent Award Periods shall be determined by the Committee in its sole discretion.

(20) "Participant" shall mean an Eligible Employee to whom the Committee has granted an Award under the Plan for a particular Award Period.

(21) "Participating Company" shall mean the Company and each of its Affiliates, but shall not include any company that the Committee determines shall not participate in the Plan.

(22) "Plan" shall mean the Lehman Brothers Partnership Account Plan—Employees through Vice President Level.

(23) "Portfolio Investments" shall mean those investments made (or deemed made) by the Company or any of its Affiliates that are designated by the Committee to be included for purposes of determining payments in respect of Awards granted for such Period.

(24) "Retirement" shall mean a termination of employment which meets the criteria for retirement under the Company's qualified defined benefit pension plan.

(25) "Return" shall mean, with respect to each Portfolio Investment, any amounts received (or deemed received) from time to time by the Company or any of its Affiliates.

4

**EXHIBIT C**

LEHMAN BROTHERS

# Partnership Account



SHARE IN PRIVATE EQUITY
INVESTMENT OPPORTUNITIES

## INSIDE THIS BOOKLET

2   Share in Lehman Brothers' Investment Success

5   Investments Chosen for Growth Potential

8   Your Award Certificate Shows Your Starting Point

10   Timeline: Investing During the Award Period

11   Timeline: When Your Account Vests

13   Timeline: How Your Payments Are Determined

15   Timeline: When You Receive Payments

17   Example

19   For Your Reference

**HOW VALUABLE IS THE PARTNERSHIP ACCOUNT?**

*Turn to the Example on page 17 to see how valuable the Partnership Account could be to you, based on various scenarios.*

LEHMAN BROTHERS

# SHARE IN LEHMAN BROTHERS' INVESTMENT SUCCESS



*Lehman Brothers is pleased to provide you with this booklet outlining the details of the **Lehman Brothers Partnership Account Plan.** Through the Partnership Account, all employees can benefit from the Firm's experience and expertise in private equity investing.*

## ALL EMPLOYEES JOIN IN INVESTMENT OPPORTUNITIES

Lehman Brothers has a long and successful track record in private equity investments. Over the years, the Firm has provided senior-level employees with opportunities to invest along with outside investors in the merchant banking and venture capital funds. Investors in these funds have to meet income or net worth requirements set by the U.S. Securities and Exchange Commission.

With the introduction of the Partnership Account, the Firm is extending the opportunity to share in the success of these investments to employees up through the Vice President level — without requiring you to invest any of your own money. Lehman Brothers is establishing a portfolio of investments and will provide you with cash payments as if you were to invest directly in the portfolio yourself.

Extending this unique compensation program to all Lehman Brothers employees underscores the value the Firm places on all of our contributions, and reaffirms Lehman Brothers' commitment to being among the best places to work.

### WHAT IS PRIVATE EQUITY INVESTING?

Unlike publicly traded stocks, which are listed on exchanges, such as the New York Stock Exchange or the London Stock Exchange, private equity investments are not available to the general investing public. Instead, they are offered only to institutional investors (such as Lehman Brothers) and to individual investors who have a high level of investing knowledge and experience.

Private equity portfolios might contain the following investment types:

◆ Start-ups, companies that are being formed to develop and market a business idea, and early and later-stage venture capital;

◆ Privately owned, or in certain cases publicly owned, companies with prospects for continuing growth;

◆ Leveraged and management buyouts, where a group of investors buys an established company financed principally with debt, by providing equity capital or other money that is designed to earn equity-like returns.

2

PARTNERSHIP ACCOUNT

## THE PARTNERSHIP ACCOUNT CAN DELIVER SIGNIFICANT VALUE

In this booklet, you'll find out how valuable the Partnership Account can be as a result of these distinctive features:

◆ **When Lehman Brothers' Partnership Account portfolio investments succeed, you share in the success.** Lehman Brothers selects Partnership Account investments with the potential to generate high returns. You will receive payments based upon the returns on these investments.

◆ **There's no risk to you.** You don't contribute any of your own money, so you have nothing to lose.

◆ **The Firm supplies the capital and the expertise.** Any money invested in the Partnership Account portfolio comes from Lehman Brothers, and the Firm's experienced professionals identify investments and manage the portfolio.

◆ **After three years, your account is fully vested.** As long as you remain a Lehman Brothers employee for three years following the Partnership Account inception date, you are entitled to receive any payments made under the program.

◆ **The Firm plans to make ongoing Partnership Account offerings.** The first Partnership Account will make investments over the next 18 months; the Firm then plans to establish new Partnership Accounts annually around the time bonuses are announced. This gives you an ongoing opportunity to participate in the Firm's investment success.

To many Lehman Brothers employees, portfolios like the one held by the Partnership Account are new and unfamiliar. It's important for every participant to clearly understand how the program works. For that reason, this booklet gives a plain English explanation of the program. For the legal provisions that govern the program, please see the enclosed Lehman Brothers Partnership Account Plan Document.

## NO ACTION OR CONTRIBUTIONS REQUIRED

You don't need to enroll in the Partnership Account, contribute any money, or take any other action. If you are a full-time employee on active status with Lehman Brothers or a consolidated subsidiary, at a level up to and including Vice President, you take part in the program automatically. The enclosed Partnership Account Award Certificate verifies that you are a participant.

3

LEHMAN BROTHERS

## A WORD ABOUT INVESTMENT RISK

Lehman Brothers intends to invest the Partnership
Account portfolio in highly speculative investments.
There are no guarantees that the investments select-
ed will be successful. And, of course, it's not possible
to accurately predict how soon they might deliver
investment returns.

Lehman Brothers has created the Partnership
Account because the Firm believes it could give
you substantial rewards over time. However, as you
read this booklet, keep in mind that while the
program has the potential to provide you with
large payments, it's also possible that you might not
receive payments at all, or that payments might be
spread out over many years.

4

> **You don't need to take any action to participate
> in the Partnership Account.**



PARTNERSHIP ACCOUNT

# INVESTMENTS CHOSEN FOR GROWTH POTENTIAL



*Through the Partnership Account, Lehman Brothers puts the Firm's extensive investment experience and analytical resources to work for you by investing primarily in private equity investments. These investments, while high risk, offer a unique opportunity for high investment returns.*

The Partnership Account is modeled on investments offered to sophisticated private investors and to the Firm's senior-level employees. The Firm has created several private equity funds for institutional and high-net-worth individual investors over the years and has a history of generating substantial returns. *However, past performance does not guarantee future results.*

### WHAT IS THE PARTNERSHIP ACCOUNT FOR SENIOR-LEVEL EMPLOYEES?

Lehman Brothers offers a different type of Partnership Account to the Firm's senior-level employees (those at the level of Vice President, or equivalent, and above) who meet income or net worth requirements set by the U.S. Securities and Exchange Commission. Though the two programs are different, they will share the same investment portfolio. This means that your payments from the Partnership Account are based on the performance of the same investments as the ones in the investment fund for the Firm's senior-level employees.

### SETTING ALLOCATIONS AND MAKING INVESTMENT DECISIONS

The Lehman Brothers Executive Committee has established a special committee, called the Partnership Account Allocation Committee, to set the overall investment strategy for the Partnership Account portfolio and to monitor its ongoing performance. The Partnership Account Allocation Committee is made up of senior Lehman Brothers employees and is chaired by Michael McKeever, Head of the Firm's Private Equity Division.

The Partnership Account Allocation Committee determines the amounts to be invested among broad investment categories. The categories include investments managed by Lehman Brothers and, in some cases, by managers not affiliated with the Firm.

5

In each investment category, a manager and an investment team are responsible for identifying potential investments, conducting due diligence investigations, and making recommendations to the Private Equity Investment Committee (a committee separate from the Partnership Account Allocation Committee). The Private Equity Investment Committee is comprised of senior Lehman Brothers employees and is responsible for the oversight and approval of all private equity investments at Lehman Brothers.

See the chart on page 7 for a summary of the investment categories, describing the types of investments included in each category, its history at Lehman Brothers, and the individuals responsible for investments in each category.

Additionally, the Partnership Account portfolio may include investments in new Lehman Brothers funds targeting investments in different asset categories.

6

PARTNERSHIP ACCOUNT

## PARTNERSHIP ACCOUNT INVESTMENT CATEGORIES

| Investment Category | Description | Management |
|---|---|---|
| MERCHANT BANKING | Private equity investments in established, well-managed companies in the United States and throughout the world.<br><br>The oldest and most established area of principal investment activity at Lehman Brothers. Most recently, raised the $2.0 billion Lehman Brothers Merchant Banking Partnership II in September 1997. | Alan Washkowitz, Managing Director and Head of the Firm's Merchant Banking Group. |
| VENTURE CAPITAL | Growth-oriented equity or equity-related investments in privately-held companies.<br><br>Established in 1995. Formed the $350 million Lehman Brothers Venture Partnership in April 1999 to invest in mid- to later-stage venture companies with limited operating histories and to provide growth capital to more mature operating companies. | Michael Odrich, Managing Director and Head of the Venture Capital Group. |
| COMMUNICATIONS | Private equity and equity-related investments in early-stage, growth-oriented companies in communications services and related industries, which are well positioned to capitalize on rapid changes in that field.<br><br>Currently raising Lehman Brothers Communications Partnership, anticipated to have committed capital totaling approximately $800 million. | W. James Peet, Managing Director and Head of the Communications Fund. |
| REAL ESTATE | Direct private equity investments in properties, real estate companies and service businesses ancillary to the real estate industry, primarily in North America, as well as in western and central Europe.<br><br>Currently raising Lehman Brothers Real Estate Partnership, anticipated to have committed capital of $1 billion and to close during the Partnership Account's award period. | Raymond Mikulich and Mark Walsh, Managing Directors and co-Heads of the Real Estate Fund. |
| FIXED INCOME | A portfolio of proprietary debt oriented investments with returns comparable to those generated by other private equity or equity related investments.<br><br>These may include investments in high yield debt securities, high leverage bank loans, emerging markets debt, tax-exempt debt, distressed securities, mezzanine debt instruments and securitized debt instruments. | Manager and investment team to be appointed to manage investments in this category, within the Private Equity Division. |
| FUND OF FUNDS | Direct investments in leveraged buyout, venture capital, and other investment funds managed by firms not affiliated with Lehman Brothers. | Manager and investment team to be appointed. |
| SPECIAL SITUATIONS | Any investment opportunities that meet the objectives of the Partnership Account and do not fit into the other asset categories. | As each opportunity arises, an investment project manager and an investment team will be appointed. |

7

LEHMAN BROTHERS

# YOUR AWARD CERTIFICATE SHOWS YOUR STARTING POINT



*The total amount shown on your personalized Partnership Account Award Certificate represents the investment amount at work for you. You will receive payments based on the investment performance of this total amount.*

The total amount shown on your Award Certificate is made up of two parts: your **base award** and the **leverage amount**. Before you begin participating in the Partnership Account, Lehman Brothers first sets the amount of your base award. Then the Firm adds leverage — essentially, an amount that represents borrowed capital — to increase the total amount that goes to work for you. The leverage amount provided for you is ten times the base award.

Please keep in mind that the total award amount is not literally your property. Rather, Lehman Brothers uses the total amount as a basis for determining the amount of payments you will receive.

## BASE AWARD AND LEVERAGE WORK TOGETHER

The illustration below shows how your base award is added to the leverage amount to form the total amount Lehman Brothers puts to work for you.



*Base Award + Leverage Amount = Total Amount at Work for You*

For example, assume your total Partnership Account award is $10,000. The $10,000 is made up of one part base award and 10 parts leverage.

| EXAMPLE: PARTNERSHIP ACCOUNT STARTING POINT | |
|---|---|
| Base Award | $909 |
| Leverage Amount | $9,091 |
| Total Amount at Work | $10,000 |
| Leverage Ratio (leverage-to-base) | 10-to-1 |

8

PARTNERSHIP ACCOUNT

In addition to receiving payments from investment returns on the total award amount, you also receive payments equal to the base award — as long as the Partnership Account portfolio returns are sufficient and you meet the program's other requirements. However, the leverage amount is not paid out to you under any circumstances. Instead, it is "repaid" to the Firm.

## LEVERAGE MEANS MORE POTENTIAL GROWTH

By adding the leverage amount, Lehman Brothers puts more money to work in the Partnership Account portfolio. It's similar to when investors borrow money (for example, through a margin account) that they then invest. This technique allows them to invest a larger amount and thus increase their potential gains. Although the Partnership Account leverage amount is "repaid" to Lehman Brothers with interest, if the investments perform well, the leverage amount can magnify the payments to you.

### LOOKING FOR AN EVERYDAY EXAMPLE OF HOW LEVERAGE WORKS?

Using leverage to purchase an investment is like taking a bank loan to buy a house. When you buy a house, you make a down payment. The bank lends you the remaining money — this is your leverage.

Now, suppose you sell the house at a profit. You're required to pay back the loan amount, plus interest, to the bank. But the profit from the sale is yours to keep. That's how a small amount of money up front can produce returns that reflect a much larger investment.

*This example is intended only to give a simplified explanation of how leverage works. The Partnership Account offers advantages that a home mortgage does not — for example, you receive profits on portfolio assets without taking an ownership interest, and you are protected from personal loss.*

Lehman Brothers charges interest on the leverage amount it provides. For the Partnership Account 2000–2001, the interest rate charged is Lehman Brothers' long-term cost of funds. On June 15, 2000, this interest rate stood at 7.8%.

## YOUR AWARD CERTIFICATE SHOWS THE AMOUNT AT WORK FOR YOU

Your personalized Partnership Account Award Certificate, enclosed in this package, shows the maximum amount Lehman Brothers can put to work for you in the Partnership Account, including your base award and the leverage amount. The amount on your Award Certificate depends on your level within the Firm.

> Turn to your personalized Award Certificate, included in this package, to find the amount at work for you in the Partnership Account.

9

LEHMAN BROTHERS

# TIMELINE: INVESTING DURING THE AWARD PERIOD



*Lehman Brothers intends to invest the amount shown on your Award Certificate over the 18-month period from July 1, 2000 through December 31, 2001 — known as the **award period**.*

**July 1, 2000** ●————————————————————————● **December 31, 2001**

10

Throughout the award period, the Partnership Account Allocation Committee determines the allocation of assets among the investment categories described on page 7.

Within the category allocations, Lehman Brothers investment management teams identify potential investments. The investments are then subject to review and approval by the Private Equity Investment Committee.

The goal of the investment management teams is to select an exceptionally attractive portfolio of investments for the full amount of your Partnership Account award during the award period. However, if the Partnership Account is not fully invested or committed by December 31, 2001, the Firm may

decide to extend the award period. If your award amount is not fully invested, the total amount at work for you could be smaller than the total amount shown on your Partnership Account Award Certificate. The payments you will receive from the Partnership Account will be based upon the amount actually invested.

If the award amount is fully invested before the end of the award period, the Firm may decide to launch the next Partnership Account before December 31, 2001.

PARTNERSHIP ACCOUNT

# TIMELINE: WHEN YOUR ACCOUNT VESTS



*Your Partnership Account is 100% vested three years after the inception date (that is, on July 1, 2003), as long as you remain continuously employed by Lehman Brothers through that date.*

July 1, 2000 —————————————— July 1, 2003

Once you're vested, you're entitled to receive payments under the program from that time forward, even if you later leave the Firm. You will then automatically receive Partnership Account payments when other participants do.

Under the Partnership Account, vesting means you have a right to receive the returns generated by the portfolio investments, but it does not mean you have a direct ownership interest in any of the underlying portfolio investments.

11

## PURSUING AN ADVANCED DEGREE?

If you participate in the Partnership Account and leave before the vesting date to attend an approved degree program, special vesting provisions apply. The purpose of the special provisions is to ensure that employees who return to Lehman Brothers after receiving an MBA or other approved degree still benefit from participating in the Partnership Account.

Under these special provisions, your Partnership Account may vest after you receive your degree, return to Lehman Brothers, and are re-employed by the Firm for one full year. Your account will not vest earlier than the three-year anniversary of the inception date. For the provisions to take effect, you must:

* be an employee in good standing when you leave;

* leave the Firm to pursue an MBA or other degree approved by Lehman Brothers and successfully complete your degree program;

* receive a written offer of employment from Lehman Brothers;

* return to the Firm within four years of leaving and within one year after graduating;

* not have held a full-time job with a competing firm before returning; and

* be re-employed by the Firm for one full year.

If your future plans include returning to Lehman Brothers after attending school on a full-time basis, talk with your divisional Human Resources representative about the effect on your Partnership Account balance.

LEHMAN BROTHERS

Your account vests immediately if you're an active employee and one of the following events occurs after the inception date but before the vesting date:

♦ you retire after meeting the conditions for retirement under the Firm's qualified defined benefit pension plan, and you do not go to work for a competitor before July 1, 2003;

♦ your employment ends as a result of a disability (as defined in the enclosed plan document) or in the event of your death.

**If you leave Lehman Brothers before you are vested, your Partnership Account is forfeited.**

If you've left the Firm to pursue an approved degree, and while doing so, you become disabled or die, you are not entitled to the special vesting provisions above, and your Partnership Account is forfeited.

Additionally, if you leave Lehman Brothers or are terminated for any reason before you are vested on July 1, 2003, you receive no payments under the program, and your Partnership Account is forfeited.

12



PARTNERSHIP ACCOUNT

# TIMELINE: HOW YOUR PAYMENTS ARE DETERMINED



*As Partnership Account portfolio investments are sold, the payments you receive are determined as if the proceeds were allocated according to the following schedule.*

July 1, 2000                                                                    *Ongoing*





13

## A STEP-BY-STEP GUIDE TO ALLOCATING INVESTMENT PROCEEDS

The allocation schedule shown above is essentially for bookkeeping purposes only. No actual cash will change hands — except the payments made to you. The schedule shows only how Lehman Brothers determines the amount of your payments through the Partnership Account.

**Step 1:** Investment proceeds are first used to "pay" the interest costs on your leverage amount.

**Step 2:** Investment proceeds are next used to "repay" your full leverage amount. Repayments are made as investment proceeds are realized. This reduces your leverage amount as quickly as possible and lowers the interest costs on your leverage.

LEHMAN BROTHERS

*Step 3:* Investment proceeds are then credited to your Partnership Account, up to the amount of your base award. If investment proceeds are not sufficient, you might not receive payment of the full amount of the base award.

*Step 4:* Any remaining investment proceeds are allocated between your Partnership Account and Lehman Brothers.

♦ The Firm's share, called its *carried interest,* is calculated so that, in most cases, the Firm receives 10% of all *profits* generated by the Partnership Account portfolio. Profits include all gains on investments, before interest charged on the leverage amount. (The purpose of the carried interest is to reimburse the Firm for the cost incurred in managing the investment portfolio.) For certain investments, particularly in the Fund of Funds category, the Firm's carried interest may be less than 10%.

♦ Your Partnership Account is credited with the remaining investment profits — generally, this means 90% of all profits from investments after interest charged on the leverage amount.

Please keep in mind that Partnership Account investments are considered high-risk. If the investments perform poorly, you might not receive any payments from the program. However, under no circumstances will Lehman Brothers ask you to contribute money to your Partnership Account.

14

---

### WHY DOES THE FIRM RECEIVE CARRIED INTEREST?

Investment managers that identify and manage the assets in private equity funds typically receive a management fee, plus a portion of the profits generated on fund investments. The manager's portion is known as carried interest and generally totals between 20% and 25% of all investment profits. Lehman Brothers serves as investment manager for the Partnership Account portfolio — but the Firm has decided to waive the management fee and to limit its carried interest to just 10%. In the Fund of Funds category, the carried interest received by Lehman Brothers will be reduced.

### REPAYMENT OF LEVERAGE IN FUTURE PARTNERSHIP ACCOUNTS

In future years, the program will contain a provision for *cross-collateralization.* Under this provision, any unpaid leverage that might be left in your account from a previous award period could be paid out of the current Partnership Account's investment proceeds. This might occur if the previous Partnership Account has not yet repaid all of its leverage amount out of its own investment proceeds. The cross-collateralization provision helps reduce the financial risk to Lehman Brothers, in exchange for the high level of leverage it extends to employees in the Partnership Account.

PARTNERSHIP ACCOUNT

# TIMELINE: WHEN YOU RECEIVE PAYMENTS



*The Firm intends to keep Partnership Account portfolio investments at work for you until they reach their full value. Achieving maximum growth potential on these portfolio investments generally requires holding them for the long term. Then, as investments are liquidated, you receive cash payments.*

 

*July 1, 2003*                                    *Ongoing*

## IF INVESTMENTS ARE LIQUIDATED BEFORE THE VESTING DATE

You receive payments only after you become fully vested. However, some investments could be liquidated and proceeds could be realized by the Firm before the end of the vesting period (that is, before July 1, 2003). In that event the proceeds will continue to earn a return, but payments to you will be deferred until the vesting date.

## IF INVESTMENTS ARE LIQUIDATED AFTER THE VESTING DATE

Most likely, you will receive the full value of your Partnership Account gradually, following the three-year vesting date. That's because the private equity investments on which your payments will be based generally take additional time to mature. Therefore,

> *You receive Partnership Account statements to help you keep track of investment performance.*

any payments you receive upon vesting may represent only a fraction of the total amount you may ultimately receive under the Partnership Account.

After July 1, 2003, Lehman Brothers anticipates combining investment proceeds into periodic payments that you will receive once each year.

## IF INVESTMENTS ARE LIQUIDATED AFTER YOU LEAVE LEHMAN BROTHERS

As long as you are fully vested, you receive ongoing payments automatically whenever they are made — even if you are no longer a Lehman Brothers employee.

15

LEHMAN BROTHERS

## STATEMENTS HELP YOU TRACK INVESTMENT PERFORMANCE

During the vesting period and beyond, Lehman Brothers will send you account statements, to help you keep track of the Partnership Account portfolio's investment performance. However, it might not always be possible to accurately state the value of certain portfolio investments. Many portfolio investments remain valued at cost until an event occurs that suggests a different valuation is appropriate.

## OPTION TO COMPLETE PAYMENTS AFTER FIVE YEARS

Five years from the start of the award period (that is, on July 1, 2005), Lehman Brothers can decide to make full payments under the Partnership Account based on the fair value of any remaining investments in the portfolio, as determined by the Firm. The Firm also can decide to pay an amount equal to the fair value of the portfolio on any future anniversary of this date. In essence, the Firm can make the payments that would be required if all investments were liquidated at their fair value. This option allows the Firm to close out the Partnership Account 2000-2001 after a period of five years.

## TAX TREATMENT OF PAYMENTS

Payments you receive through the Partnership Account are considered taxable compensation income at the time you receive them. The payments are subject to ordinary income tax rates. Lehman Brothers will withhold tax from your payments as required by law in the United States and other countries.

If you are an employee in the United States, you are subject to FICA tax (that is, Social Security and Medicare taxes) at the time your Partnership Account vests — even if you do not receive a cash payment under the program at that time. To help you manage the tax withholding liability, Lehman Brothers plans to advance the tax payment money to the IRS on your behalf. The amount of the tax will then be withheld from your next bonus check or from other payments that may be due to you.

16

PARTNERSHIP ACCOUNT

# E X A M P L E



*The Partnership Account provides payments to you based on the performance of portfolio investments. Look over the example on the next page to see how the Partnership Account can add to the other parts of your Lehman Brothers compensation.*

### WHAT DOES THE EXAMPLE SHOW?

The following hypothetical example is intended to illustrate the possible payments that you could receive from participating in a single Partnership Account. Keep in mind that you do not receive the amount shown on your Award Certificate — your maximum payment equals your base award plus the applicable portion of returns from Partnership Account investments.

The example uses the following assumptions:

◆ $10,000 Award Certificate

◆ Full payment after four years

◆ 7.8% interest cost on leverage amount

◆ Before income taxes and FICA

Naturally, if these assumptions and rates of return are different from actual results, your Partnership Account payments will be different from the dollar amounts shown.

17



LEHMAN BROTHERS

*Your Payments Vary Depending on Rate of Return*

| Allocation Schedule | | 25% Rate of Return | 40% Rate of Return |
|---|---|---|---|
| JULY 1, 2000 | Award period begins | $909 base award<br>+ $9,091 leverage amount<br>$10,000 total | $909 base award<br>+ $9,091 leverage amount<br>$10,000 total |
| | Total investment proceeds<br>($10,000 invested, compounded annually) | $24,414 | $38,416 |
| STEP 1 | Interest cost on leverage amount<br>(7.8% x $9,091, compounded annually) | - $3,186 | - $3,186 |
| STEP 2 | Leverage amount credited to Firm<br>(equals amount shown above) | - $9,091 | - $9,091 |
| STEP 3 | Base award credited to employee<br>(equals amount shown above) | - $909 | - $909 |
| STEP 4 | Allocation of profits<br>◆ Firm's share<br>   (10% x [total investment proceeds − $10,000]) | $1,441 | - $2,842 |
| | ◆ Employee's share<br>   (Total investment proceeds − Steps 1 through 4) | $9,787 | $22,389 |
| JULY 1, 2004 | Total employee cash payment<br>(Step 3 + Step 4) | $10,696 | $23,298 |

18

PARTNERSHIP ACCOUNT

## FOR YOUR REFERENCE

The Employee Partnership Account is a bonus plan; as such it is not subject in any way to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended.

The Employee Partnership Account may be amended, suspended, or terminated at any time,

In the event of any conflict between the plan documents (including, but not limited to, the Award Certificate and the Employee Partnership Account Plan Document) and the information in this booklet, the plan documents will govern.

Nothing in this booklet or the plan documents shall be construed to create or imply any contract of employment between you and Lehman Brothers or any affiliate, any right to continue to be employed by Lehman Brothers or any affiliate, or any right to be re-employed if your employment terminates.

The Partnership Account is *unfunded*, which means no assets are actually held in trust or dedicated to the Partnership Account. From the time you become entitled to receive payments through the Partnership Account, you do not have rights greater than those of a general, unsecured creditor of the Firm. All payments to you will be made by Lehman Brothers out of its general corporate funds, and you have no interest in any specific investments made by Lehman Brothers in connection with the Partnership Account.

Partnership Account payments are not considered eligible compensation under the Lehman Brothers Stock Award Program, any Lehman Brothers retirement plan, the Tax Deferred Savings Plan, or any of the Firm's medical, disability, life insurance, or other insurance plans.

You may want to consult your local tax authorities or personal tax consultant for details on the impact of tax laws in effect at the time your benefits become taxable.

If you have any questions about the Partnership Account in general or about your personalized Award Certificate, call the Compensation Department at 212-526-5126 (5-5126).

19

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x
In re                                                     :        **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                                          :
                              **Debtors.**                :        **(Jointly Administered)**
----------------------------------------------------------------------x

### ORDER GRANTING THREE HUNDRED TWENTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (PARTNERSHIP CLAIMS)

Upon the three hundred seventy-fourth omnibus objection to claims, dated July 10, 2012 (the "Three Hundred Seventy-Fourth Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664], seeking to reduce and allow the Partnership Claims on the basis that the amounts and/or priorities listed on the proofs of claim are greater than the fair, accurate, and reasonable values and/or priorities determined by the Plan Administrator after a review of the claimants' supporting documentation and the Chapter 11 Estates' books and records; and due and proper notice of the Three Hundred Seventy-Fourth Omnibus Objection to Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief requested in the Three Hundred Seventy-Fourth Omnibus Objection to Claims is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Three Hundred Seventy-Fourth Omnibus Objection to Claims.

set forth in the Three Hundred Seventy-Fourth Omnibus Objection to Claims establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is

ORDERED that the relief requested in the Three Hundred Seventy-Fourth

Omnibus Objection to Claims is granted to the extent provided herein; and it is further

ORDERED that each Claim listed on Exhibit 1 annexed hereto is reduced and

allowed in the amount and priority set forth on Exhibit 1 in the row entitled "*Claim as Modified*"

and in the columns entitled "*Priority*" and "*Unsecured*" and (ii) that any asserted amounts in

excess of the reduced amount are disallowed; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of, and all rights to object and defend on any basis are

expressly reserved with respect to any claim or portion of any claim listed on Exhibit A to the

Three Hundred Seventy-Fourth Omnibus Objection to Claims that does not appear on Exhibit 1

annexed hereto; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2012
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

2