**HEARING DATE AND TIME: November 20, 2012 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: November 13, 2012 at 4:00 p.m. (Eastern Time)**

Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
David Neier (dneier@winston.com)
Carrie V. Hardman (chardman@winston.com)

*Attorneys for Mariner Investment Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
                                         :
In re:                                   :
                                         :    Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., :
et al.,                                  :    Case No. 08-13555 (JMP)
                                         :
Debtors.                                 :    (Jointly Administered)
                                         :
------------------------------------------------------- x
```

**RESPONSE OF MARINER INVESTMENT GROUP, LLC**
**TO THE THREE HUNDRED SIXTY-FIRST OMNIBUS OBJECTION**
**OF THE DEBTORS TO CLAIMS (NO GUARANTEE CLAIMS) OF**
**CASPIAN CAPITAL PARTNERS, L.P., AND MARINER OPPORTUNITIES FUND, L.P.**

Mariner Investment Group, LLC ("Mariner"), on behalf of Caspian Capital Partners, L.P.

("Caspian"), as holder of Proof of Claim No. 26224 (the "Caspian Claim") against Lehman

Brothers Holdings Inc. ("LBHI"), and Mariner Opportunities Fund, L.P. ("MOF," and, together

with Caspian, "Claimants"), as holder of Proof of Claim No. 23765 against LBHI (the "MOF

Claim," and together with the Caspian Claim, the "Guarantee Claims"), hereby submits this

response (the "Response") to the Debtors' Three Hundred Sixty-First Objection to Claims (No

Guarantee Claims) [Docket No. 31317], dated October 11, 2012 (the "Objection"), and states as

-1-

follows:

## PRELIMINARY STATEMENT[1]

1.    The Guarantee Claims seek, in the aggregate, not less than $2,555,425.52[2] from LBHI in connection with amounts owed by and claimed against Lehman Brothers Special Financing Inc. ("LBSF" and such claims, the "Underlying LBSF Claims") pursuant to certain ISDA Master Agreements (together with the schedules thereto and the Credit Support Annex part thereof, as supplemented by each Confirmation thereunder, collectively, the "Master Agreements")[3] and against LBHI pursuant to its guarantees thereof, provided by LBHI in two forms: (a) a guaranty instrument in the form attached as Exhibit A to the Agreement (the "Contract Guarantee"); and (b) the Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the "Board Guarantee").

2.    Despite evidence of an agreement by LBHI to be bound by the Contract Guarantee, and the existence of the Board Guarantee, LBHI requests that the Guarantee Claim be disallowed on the sole basis that, because the parties are unable to locate the signed Contract Guarantee, application of the New York version of the Statute of Frauds bars allowance of the Guarantee Claim. There are several reasons why LBHI's position is unsupportable as a matter of fact and law and the Guarantee Claims should be allowed.

3.    First, pursuant to the Master Agreements and as a condition precedent thereto,

---

[1] Some of the arguments contained in the Response are substantially similar to the arguments raised in the *Response of Ore Hill to Debtors' Two Hundred Thirty-Sixth Omnibus Objection to Claims (No Liability Derivatives Claims)* [Docket No. 29902] and are used with the permission of counsel thereon.

[2] Specifically, Caspian sought not less than $2,002,581.95 and MOF sought not less than $2,168,674.82 on account of their Guarantee Claims. A copy of the Caspian proof of claim is attached hereto as **Exhibit A**. and a copy of the MOF proof of claim is attached hereto as **Exhibit B**. However, pursuant to the amended statements provided by Mariner to the Debtor, as described more fully herein, the claim sought by Caspian is $1,199,681.95 and MOF is $1,355,743.57. *See, infra*, at ¶¶ 15-18

[3] Copies of the Master Agreements for Caspian and MOF are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

LBHI was required to enter into the Contract Guarantee, pursuant to which LBHI unconditionally guarantees the payment of all amounts owed by LBSF under the Agreement. The Master Agreements expressly state that "[u]pon execution and delivery of [the Master] Agreement," LBSF will provide "a guarantee of [LBHI] in the form of Exhibit A to this Schedule." Master Agreements, §4(a)(ii), Schedule Parts 3(b) and 4(f).

4.      This provision for the LBHI guarantee is not surprising, inasmuch as LBSF's financial condition was generally not disclosed to or known by its trading counterparties, even upon request. The guarantee in the form of the Contract Guarantee by LBHI, whose SEC-required financial statements were public record, filled the void of LBSF's lack of financial disclosure. The Debtors admit that "LBHI's guarantee of the obligations of its subsidiaries under derivatives contracts was given as a matter of course and did not need to be requested or negotiated." *Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code,* dated August 31, 2011 [Docket No. 19629] (the "Disclosure Statement") at 65. Here, LBHI provides no evidence as to how the Master Agreements and Contract Guarantees are any different from thousands of other ISDA Master Agreements where LBHI has not challenged the existence and enforceability of its guarantee.

5.      Second, LBHI's agreement to guarantee the Underlying LBSF Claims is also manifested by the written Board Guarantee, which by its express and broad terms provides a guarantee by LBHI of all of LBSF's obligations under various agreements, including the Agreement.[4] In relevant part, the Board Guarantee states that "LBHI hereby fully guarantees the payment of all liabilities, obligations and commitments of [LBSF]." Board Guarantee. Thus,

---

[4] A copy of the Board Guarantee is attached hereto as **Exhibit E**.

-3-

LBHI's guarantee of the Underlying LBSF Claims is clearly and unambiguously expressed in the Board Guarantee.

6.    In the Report of the Examiner, Anton R. Valukas concluded that the Board Guarantee "may be viewed as a unilateral contract for a general guaranty that may be enforced by 'anyone to whom it is presented who acts upon it.'" *Report of Anton R. Valukas, Examiner,* Volume 5, dated March 11, 2010 [Docket No. 8307] (the "Examiner's Report") at 1775. Here, the Guarantee Claims are based not only on the Contract Guarantees but also the Board Guarantee. Transactions were entered into under the Master Agreements subsequent to the Board Guarantee, with knowledge of and reliance on, the Contract Guarantees and/or Board Guarantee. Therefore, the Guarantee Claims should be allowed in full and the Objection overruled.

7.    Finally, to the extent that LBHI can overcome the *prima facie* validity of the Guarantee Claims (which it cannot), at a minimum the Claimants are entitled to discovery (and if necessary, a full evidentiary hearing) to assess whether additional information, communications and/or documents exist providing that LBHI agreed to be bound by and/or executed the Contract Guarantee. Discovery would reveal, as more fully set forth herein, vital information with respect to: (i) the search purportedly conducted by the Debtors for a signed Contract Guarantee instrument; (ii) LBHI and LBSF's commitment to issue the Contract Guarantee instrument; and (iii) the policies, protocols, practices and procedures employed in issuing the Contract Guarantee and Board Guarantee.

8.    As set forth below, there are numerous grounds for overruling the Objection and allowing the Guarantee Claims, including application of exceptions to the Statute of Frauds, promissory estoppel and the Board Guarantee. Accordingly, the Objection should be overruled

-4-

and the Guarantee Claims allowed in full.

## BACKGROUND

9.     On May 17, 2007, Caspian and LBSF entered into the respective ISDA Master Agreement.  Pursuant to the Master Agreement, and as a condition precedent thereto, LBHI was required to enter into a guarantee, pursuant to which LBHI unconditionally guaranteed the due and punctual payment of all amounts owed by LBSF under the Master Agreement.

10.     On May 17, 2007, MOF and LBSF entered into the respective ISDA Master Agreement.  Pursuant to the Master Agreement, and as a condition precedent thereto, LBHI was required to enter into a guarantee, pursuant to which LBHI unconditionally guaranteed the due and punctual payment of all amounts owed by LBSF under the Master Agreement.

11.     On September 15, 2008, LBHI filed a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and, on October 3, 2008, LBSF filed its voluntary chapter 11 bankruptcy petition under the Bankruptcy Code in the Bankruptcy Court.  The Debtors' bankruptcy cases are being jointly administered.

12.     On July 2, 2009, the Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

13.     In accordance with the Bar Date Order, on or about September 21, 2009, Mariner filed, on behalf of Caspian, Proof of Claim No. 26223 against LBSF and a corresponding claim against LBHI, Proof of Claim No. 26224.  The claims assert Caspian's claim in the liquidated amount of not less than $2,002,581.95 in connection with amounts owed by LBSF under the

respective Master Agreement, see Exhibit C, and by LBHI under the Guarantee Agreement. Subsequently, on October 21, 2009, Mariner filed a Claim Form Filing Questionnaire stating the Derivative Claim Amount of $2,042,035.50, which includes $39,453.55 of interest on the amount set forth in the Claim.

14.     In accordance with the Bar Date Order, on or about September 21, 2009, Mariner filed, on behalf of MOF, Proof of Claim No. 23766 against LBSF and a corresponding claim against LBHI, Proof of Claim No. 23765. The claims assert MOF's claim in the liquidated amount of not less than $2,168,674.82 in connection with amounts owed by LBSF under the respective Master Agreement, see Exhibit D, and by LBHI under the Guarantee Agreement. Subsequently, on October 21, 2009, Mariner filed a Claim Form Filing Questionnaire stating the Derivative Claim Amount of $2,211,400.62, which included $42,725.80 of interest on the amount set forth in the Claim.

15.     On March 19, 2010, Mariner provided LBSF with an amended statement on behalf of Caspian with the revised calculation of the payment owed to Caspian, which included relevant quotations (the "Second Amended Caspian Valuation Letter"). A copy of the Second Amended Caspian Valuation Letter is attached hereto as **Exhibit F**.

16.     As reflected in the Second Amended Caspian Valuation Letter, the amount owed by LBSF is $1,199,681.95.

17.     On March 19, 2010, Mariner provided LBSF with an amended statement on behalf of MOF with the revised calculation of the payment owed to MOF, which included relevant quotations (the "Second Amended MOF Valuation Letter"). A copy of the Second Amended MOF Valuation Letter is attached hereto as **Exhibit G**.

18.     As reflected in the Second Amended MOF Valuation Letter, the amount owed by

-6-

LBSF is $1,355,743.57.

19.      On October 11, 2012, the Debtors filed the Objection.  Exhibit A to the Objection includes the Guarantee Claims.  The Objection asserts that "LBHI has no liability for the [LBHI Claim and similarly situated claims] because they are based on Guarantees that have not been issued by and therefore cannot be enforced against LBHI."  (Objection ¶11).

20.      The Debtors base the Objection on their failure to locate an executed version of the Guarantees and the fact that copies of the executed Guarantees were not included in the proof of claim or in the Guarantee Questionnaires.  (Objection ¶11).

21.      Mariner was unable to locate an executed copy of the Guarantees because either: a) the Guarantees have been misplaced or b) due to an administrative oversight, LBSF or LBHI failed to deliver the executed Guarantees to Caspian and MOF.  However, consistent with standard protocol in such circumstances and the condition precedent identified in the Schedule, it is abundantly clear that Caspian and MOF would not have entered into the respective Master Agreements without LBHI's guarantee of LBSF's obligations under the respective Master Agreements.

## ARGUMENT

22.      The Objection is predicated entirely upon (a) the application of the New York version of the Statute of Frauds, N.Y. Gen. Oblig. Law 5-701, and (b) the assertion that the LBHI Guarantee was never executed.  For the reasons discussed below, Mariner contests several of the Debtors' legal contentions and conclusions, including the applicability of the Statute of Frauds.

**I.      The Objection Is Insufficient To Overcome The *Prima Facie* Validity Of The Claim.**

23.      It is well-settled bankruptcy law that a properly filed proof of claim is *prima facie*

NY:1530594.5

evidence of the validity of that claim. See 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f); see also *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim in a bankruptcy case is *prima facie* evidence of the validity and amount of a claim ...").

24.    Here, the Guarantee Claims are *prima facie* valid, as the Guarantee Claims and Guarantee Questionnaires were timely filed along with sufficient supporting documentation to establish the Guarantee Claims, including the Master Agreements and an unsigned copy of the Contract Guarantee instruments.

25.    Accordingly, the Debtors bear the burden of coming forward with evidence sufficient to overcome the validity of the Guarantee Claims. See *In re Adelphia Communs. Corp.*, 2007 Bankr. LEXIS 660, 15-16 (Bankr. S.D.N.Y. Feb. 20, 2007) ("Because a properly filed proof of claim is deemed allowed until objected to, such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case."); *In re DJK Residential LLC*, 416 B.R. 100, 104-105 (Bankr. S.D.N.Y. 2009) (holding that the burden of proof rests with the objecting party until "the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Here, the Debtors failed to meet their burden.

26.    The Debtors fail to provide any evidence that the Guarantee Claims are invalid. First, the Objection fails to include any description of what efforts, if any, the Debtors undertook to search for the missing signed Contract Guarantee instruments. Second, unlike the 245th Omnibus Objection, 261st Omnibus Objection, and 277th Omnibus Objection, the Debtors do not even reference the absence of an executed Contract Guarantee instrument as the basis of the Objection or address the existence of the Board Guarantee. Rather, the Debtors generally cite their books and records as reflecting that the Debtors do not owe any amounts under the

-8-

Agreement.  Finally, the Debtors admit that LBSF entered into thousands of ISDA Master Agreements and that LBHI's guarantee was given as a matter of course and did not need to be requested or negotiated.  See Disclosure Statement at 65; see also *Amended Schedules of Assets and Liabilities for Lehman Brothers Special Financing Inc. Case No. 08-13888 (JMP),* dated June 15, 2009 [Docket No. 3921] at Schedule G.  The Debtors fail to present any evidence as to why the Agreement is so unique that the Contract Guarantees were not executed or withheld. Nor does the Objection even mention the Board Guarantee, let alone present any argument as to its non-applicability to the Guarantee Claims.  Accordingly, the Objection is insufficient to overcome the *prima facie* validity of the Guarantee Claims and should be overruled, and the Guarantee Claims should be allowed in full.

II.   **The Guarantee Claims Are Valid Pursuant To LBHI's Board Guarantee.**

27.    LBHI's obligation with respect to the Guarantee Claim is further evidenced by the Board Guarantee.  The Board Guarantee provides, in relevant part, that "LBHI hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A."  Board Guarantee.  The Schedule A guaranteed subsidiaries include LBSF.

28.    The Board Guarantee by its clear and express terms operates as an enforceable guarantee by LBHI of the Underlying LBSF Claim. *See Corines v. Charter One Bank*, 365 Fed.Appx. 237, 238 (2d Cir. 2010) ("'[W]here a contract provision is unambiguous, a court must interpret the contract to 'effectuate its plain language.'"); *Bell v. Cendant Corp.*, 293 F.3d 563, 568 (2d Cir. 2002) ("When determining the intent of parties, courts must look to the plain language of the contract and construe the contract as a whole.").

29.    Support for this conclusion is found in the Examiner's Report: "The Amended and Restated Code of Authorities for LBHI authorized LBHI upon resolution of the Executive

Committee of its Board of Directors to provide a full guaranty of all of the obligations of its subsidiaries." Examiner's Report at 1774-1775. While the Examiner notes that he did not locate any decisions involving the enforceability of a guarantee contained only in a corporate resolution, he concluded that:

> The resolution may be viewed as a unilateral contract for a general guaranty that may be enforced by 'anyone to whom it is presented who acts upon it.[5] The guaranty resolution appears to satisfy the basic general guarantee requirements of knowledge, acceptance (which can be implied) and consideration and therefore may be held to create an enforceable general guarantee obligation.[6]

Examiner's Report at 1775.

30.     Here, the Board Guarantee is an enforceable guarantee obligation of LBHI to satisfy the debts of LBSF under the Master Agreements as set forth in the Guarantee Claims. See *Lou Haperin's Stations. Inc. v. Cross Petroleum Comp.,* 33 Misc.3d 1227(A) at *5 (N.Y. Sup. 2011) ("To establish entitlement to judgment as a matter of law on a guaranty, plaintiff must prove the existence of the underlying obligation, the guaranty, and the failure of the prime obligor to make payment in accordance with the terms of the obligation."). The underlying obligation has been established by the allowed Underlying LBSF Claim, and the Board Guarantee by its plain and unambiguous language operates as a guarantee by LBHI of the Underlying LBSF Claim and the outstanding payment obligation due by LBHI.

31.     Accordingly, even if signed Contract Guarantee instruments cannot be found, the Guarantee Claims against LBHI are still valid based on the Board Guarantee. Therefore, the

---

[5] Citing to *Finance America Private Brands, Inc. v. Harvey E. Hall, Inc.,* 380 A.2d 1377, 1379 (Del. Super. Ct. 1977).

[6] Citing to *APL, Inc. v. Ohio Valley Aluminum, Inc.,* 839 S.W. 2d 571, 573 (Ky. Ct. App. 1992) ("When the circumstances surrounding the issuance of an absolute guaranty and the terms of the writing itself evidence no indication that the guarantor anticipates notification of acceptance from the creditor, the guarantor will be held liable on the instrument from the time the creditor acts in reliance on it").

-10-

Guarantee Claims should be allowed in full and the Objection overruled.

**III.**     **In The Event The Objection Is Not Overruled, Mariner Is Entitled To Discovery.**

32.     To the extent necessary, the Mariner requests a full evidentiary hearing – and the corresponding opportunity to take discovery – on the issues presented herein.  Such discovery would include, among other things, discovery on LBHI's commitment to issue the Guarantees, as represented by LBSF and LBHI, the policies, practices and procedures employed in issuing the Guarantees, and the search conducted by the Debtors for the missing Guarantees.

33.     Upon information and belief, discovery will reveal either the existence of (i) the executed Guarantee, (ii) the agreement by LBHI to execute the Guarantee or (iii) the existence of facts and evidence supporting the application of one or more theories of law that would result in the Guarantee being an enforceable obligation of LBHI.

34.     Under New York law, the Statute of Frauds "may not be invoked to bar a party to an allegedly lost contract from proving the existence and contents of the writing by parol and circumstantial evidence." *N.Y. Jur. 2d Frauds, Stat.* of § 326.  In *Love v. Spector*, the court found that the enforcement of a lost contract was "not barred by the Statute of Frauds, since the plaintiff is entitled to the opportunity to prove, if she can, the existence and the contents of the lost writing 'by parol and circumstantial evidence.'" *Love v. Spector,* 215 A.D.2d 733, 627 N.Y.S.2d 87, 88 (N.Y. App. Div. 2d Dep't 1995) (citing *Taft v. Equitable Life Assurance Soc'y of U.S.,* 173 A.D.2d 267, 268, 569 N.Y.S.2d 660 (N.Y. App. Div. 1st Dep't 1991)).

35.     Similarly, in *Posner v. Rosenbaum*, the court found that a lost contract falls outside the statute of frauds as no oral contract is at issue but rather the party seeking to enforce the contract must prove the existence and contents of the writing. *Posner v. Rosenbaum*, 270 N.Y.S. 849, 853 (N.Y. App. Div. 1st Dep't 1934) (finding that, "the instrument of writing . . .

-11-

was not produced, nor could it be, because it was lost, and from necessity parol evidence was admitted to prove, not a parol conveyance, but a conveyance in writing.").

36.     The Debtors assert that because the only copies of the Guarantee that can be located are unsigned, the Guarantee is not enforceable. When a contract has been lost, as made clear by *Love* and *Posner v. Rosenbaum*, the party seeking enforcement must be provided with an opportunity to prove the existence and contents of the writing through parol evidence.

37.     Additionally, a signature need not be handwritten on a document to qualify as a signature for the purposes of the Statute of Frauds. In *Cloud Corp. v. Hasbro, Inc.*, Judge Posner opined:

> The purpose of the statute of frauds is to prevent a contracting party from creating a triable issue concerning the terms of the contract – or for that matter concerning whether a contract even exists – on the basis of his say-so alone. That purpose does not require a handwritten signature, especially in a case . . . in which there is other evidence, and not merely say-so evidence, of the existence of the contract.

*Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2003). In *Cloud Corp,* Judge Posner held "that the sender's name on an email satisfies the signature requirement of the Statute of Frauds." *Id.* at 296; *Stevens v. Publicis, S.A.*, 50 A.D.3d 253, 255 (N.Y. App. Div. 1st Dept. 2008) (finding the e-mails from plaintiff constitute "signed writings" within the meaning of the statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the contents).

38.     In this case, there is evidence, including, but not limited to, the unsigned Guarantees and the terms in the Master Agreements, demonstrating the existence of the Guarantees beyond mere "say-so." The Master Agreements go far beyond mere mention of the Guarantees, they both contain numerous provisions that relate to the Guarantees and detail the contents of the Guarantees. Caspian, MOF and LBSF made their intent to have LBSF's

-12-

obligations under the Master Agreements guaranteed by the Guarantees in numerous references in the Master Agreements. For example, the Guarantees are listed in Part 3(b) of the Schedule as a document to be delivered by LBSF upon execution of the Master Agreements. In addition, the Guarantee is listed as a Credit Support Document in Part 4(f) of the Schedule. Designation by the parties of the Guarantees as a Credit Support Document had the effect of making LBHI's failure to comply with or perform any obligation required under the Guarantees an event of default under Section 5(a)(iii) of the Master Agreement. These express references to the Guarantees in the Master Agreements, in addition to the other references, constitute a portion of the parol evidence demonstrating the existence of the Guarantees that Mariner would seek to introduce at an evidentiary hearing.

39.    A claim objection initiates a contested matter. See Fed. R. Bankr. P. 9014; *In re Lomas Financial Corn.*, 212 B.R. 46, 52 (Bankr. D. Del. 1997) (citing Fed. R. Bankr. P. 9014). Rule 26 of the Federal Rules of Civil Procedure, applicable to these cases under Bankruptcy Rule 7026, applies in contested matters. See *In re Almatis B.V.*, 2010 Bankr. LEXIS 4243, 12-13 (Bankr. S.D.N.Y. Nov. 24, 2010) (citing Fed. R. Bankr. P. 9014); see also *In re Gaftick*, 333 B.R. 177, 183 (Bankr. E.D.N.Y. 2005) ("Rule 9014(c) specifically provides that the discovery rules in Part VII of the Bankruptcy Rules are applicable to contested matters unless the Court directs otherwise.").

40.    The scope of Bankruptcy Rule 7026 is wide. See *In re Almatis B.V.*, 2010 Bankr. LEXIS 4243, at *12-13. Specifically, pursuant to Bankruptcy Rule 7026, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...." *Id.* (citing Fed. R. Bankr. P. 7026(b)(1)).

41.    The following discovery, at a minimum, is essential to determine: (i) the existence

-13-

of signed Contract Guarantee instruments; (ii) the agreement by LBHI to be bound by the

Contract Guarantees and Board Guarantee; and/or (iii) the existence of evidence supporting the

application of one or more theories of law that would result in the Contract Guarantees and/or

Board Guarantee being an enforceable obligation of LBHI:

- Discovery regarding the due diligence undertaken by the Debtors in respect of locating an executed Contract Guarantee instruments;

- Discovery related to communications between LBSF and/or LBHI and Caspian and MOF concerning the respective Master Agreements and/or Contract Guarantees;

- Discovery regarding LBSF's standard practices, procedures, policies, and/or protocols for entering into ISDA Master Agreements;

- Discovery regarding LBSF's authority to provide counterparties to ISDA Master Agreements with a LBHI guarantee or other LBHI credit support;

- Discovery regarding LBHI's standard practices, procedures, policies and/or protocols for issuing and executing guarantees of ISDA Master Agreements; and

- Discovery regarding the identity of current or former LBSF and/or LBHI employee(s) or other representative(s) who performed services relating to the Master Agreements and/or Contract Guarantees.

42.    Not only will such discovery provide Mariner with a meaningful opportunity to

locate the signed Contract Guarantee instruments from the person(s) with access to the necessary

books and records, but such discovery will also support the conclusion that the Guarantee Claims

are allowable notwithstanding the absence of signed Contract Guarantee instruments.

IV.    **The Guarantee Claims Are Not Barred By The Statute Of Frauds.**

43.    Contract formation outside of the Statue of Frauds is not dependent on a signature

as long as a party manifests an intention to be bound to the agreement. See *Irving R Boody &*

*Co. v. Winn Holdings. Int'l*, 213 F. Supp. 2d 378, 381 (S.D.N.Y. 2002) ("It is well settled in

New York ... that contract formation is not dependent on a signature.").

-14-

44.     For contracts outside the Statute of Frauds, the Court can turn to "the course of conduct between the parties to determine whether there was a meeting of minds sufficient to give rise to an enforceable contract ...." *Flores v. Lower East Side Servo Ctr., Inc.*, 4 N.Y.3d 363,370, (N.Y. 2005); *Brighton Inv., Ltd. v. Har-ZVI*, 88 A.D.3d 1220, 1222 (N.Y. App. Div 3d Dep't 2011) (finding contract formation was not dependent on signed document both on "whether the parties' words and deeds establish their intent to enter into a binding agreement given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.").

45.     Here, the intent of LBHI to enter into the Contract Guarantees is readily apparent. Caspian and MOF were not provided with the choice of different credit support options. The Debtors admit that counterparties to derivatives contracts, like the Master Agreements, were generally not given a choice of entities with which to transact. See Disclosure Statement at 65. Rather, Caspian and MOF had just one choice: LBSF as counterparty with its ultimate parent, LBHI, as the provider of credit support, through the Contract Guarantees and Board Guarantee.

46.     The Master Agreements expressly state that the Contract Guarantees would be executed by LBHI and delivered to Caspian and MOF without delay or additional consideration, and as a condition precedent to the Agreement. See Master Agreements, §4(a)(ii), Schedule Parts 3(b) and 4(f). LBHI has admitted that the Contract Guarantees were given as a matter of course and did not need to be requested or negotiated. See Disclosure Statement at 65. All of these facts clearly establish LBHI's agreement to be bound by the Contract Guarantees notwithstanding whether LBHI actually signed the Contract Guarantee instruments. Accordingly, the Contract Guarantees fall outside the Statute of Frauds.

**V.     Mariner Can Rely On An Exception To The Statute Of Frauds.**

-15-

47.    In the event that a copy of the signed Contract Guarantee instruments cannot be obtained through additional discovery and the Court finds that the Statute of Frauds applies in this case, the fact that Mariner may not be in possession of a signed copy of the Contract Guarantee instruments is not dispositive of the Guarantee Claims as Mariner can rely on an exception to the Statute of Frauds that reflects LBHI's agreement to be bound by the Contract Guarantees.

### A.    The Multiple Document Rule.

48.    Courts have found that a party may satisfy the Statute of Frauds by establishing the transaction from a collection of related materials. See *Crabtree v. Elizabeth Arden Sales Corp.*, 110 N.E.2d 551, 554 (N.Y. 1953) (holding that three documents clearly referring to the same transaction with similar details, were sufficient to satisfy the Statute of Frauds); see also New York General Obligations Law § 5-701(h)(3)(d) (the writing requirement of the Statute of Frauds may be satisfied by memoranda, notes, or other documentation pieced together from separate writings related to the same transaction).

49.    Mariner can satisfy the Statute of Frauds under the "Multiple Document Rule" as, even without discovery which might uncover additional documentation there is a significant quantum of documentary evidence to support the proposition that LBHI agreed to be bound by the Contract Guarantees, including that:

- The Contract Guarantee and LBHI's role as guarantor is referenced no fewer than 43 times throughout the Master Agreements;

- An executed Contract Guarantee is specifically listed on the Schedule to the Master Agreements entitled "Documents to be Delivered" by LBSF, the counterparty;

- Caspian and MOF and LBSF entered into no less than 20 Transactions under the Agreement without LBHI once disavowing the Contract Guarantees;

-16-

- An unsigned copy of the Contract Guarantees is attached as Exhibit A to the Agreement; and

- LBHI guaranteed LBSF's obligations under the Master Agreements, including the Underlying LBSF Claims, pursuant to the Board Guarantee.

50.     This collection of materials meets the Multiple Document Rule exception to the Statute of Frauds as it constitutes sufficient evidence of LBHI's agreement to be bound by the Contract Guarantees even in the absence of a signed copy thereof.  See e.g., *Global Power Equip. Group Inc., et al.,* Case No. 06-11045 (BLS), December 17, 2007 Hearing Transcript at 162:4-8, attached hereto as **Exhibit H** (finding that the "Multiple Document Rule" provides "an out from the statute of frauds if a party can establish the commitment or transaction from a collection of materials even in the absence of a single signed contract.").  Accordingly, LBHI is liable for the Guarantee Claims and the Objection should be overruled.

    **B.**    **Discovery Is Needed To Determine If Other Exceptions To The Statute Of Frauds Are Applicable.**

51.     In addition to the Multiple Document Rule, there are additional exceptions to the Statute of Frauds that suggest a compelling basis for the discovery requested by Mariner herein.

    **i.**    **Merchants Exception**

52.     For example, Section 2-201 of the New York Uniform Commercial Code sets forth a "Merchants Exception" to the Statute of Frauds.  The Merchants Exception applies when: (i) both parties are merchants; (ii) the writing was sent within a reasonable time after the alleged agreement; (iii) the writing was received by a party with reason to know of its contents; and (iv) no written objection was made.  See *Bazak Int'l Com. v. Mast Indus.,* 73 N.Y.2d 113, 123 (1989).

53.     The merchants exception applies to contracts between people "who deal[] in

-17-

goods of the kind or otherwise by [their] occupation hold[] [themselves] out as having

knowledge or skill peculiar to the practices or goods involved in the transaction." NY UCC 2-

104(1)). In New York, courts have applied the Uniform Commercial Code to matters concerning

derivatives trades. *See, e.g., Wells Fargo Bank, N.A. v. Sharma,* 642 F. Supp. 2d 242, 251

(S.D.N.Y. 2009). The Debtors and Caspian, MOF, and Mariner are merchants in that they deal

in goods, in this instance derivatives, and by their occupation hold themselves out as having

knowledge and skill particular to such derivatives.

54.    Although the merchants exception requires that the confirmation of the agreement

must be in writing, neither explicit words of confirmation nor express references to the parties'

agreement is required, so long as the writings afford a basis for believing that they reflect a real

transaction between the parties. 28 Glen Banks, *New York Practice Series - New York Contract

Law,* § 3:12; *see also Apex Oil Co. v. Vanguard Oil & Service Co. Inc.,* 760 F.2d 417, 423 (N.Y.

2d Cir. 1985). Further, "a document may constitute a writing in confirmation under [NY UCC §

2-201(2)] even though the 'customer's acceptance' space on the document is unsigned." *Bayside

Fuel Depot Corp. v. Nu Way Fuel Oil Burners Inc.,* 2009 WL 4639727, 10 (N.Y. Sup. 2009)

(citing *Bazak Int'l Corp. v. Mast Indus., Inc.,* 73 N.Y.2d 113, 119–120, 124 (N.Y. 1989).

### ii.    Qualified Financial Contract Exception

55.    Likewise, New Yolk General Obligations Law ("<u>N.Y. Gen. Oblig. Law</u>")

provides an exception to the Statute of Frauds if the contract is a "qualified financial contract."

N.Y. Gen. Oblig. Law § 5-70l(b)(2)(f). This exception provides that:

> An agreement, promise, undertaking or contract, which is valid in other
> respects and is otherwise, enforceable, is not void for lack of a note,
> memorandum or other writing and is enforceable by way of action or defense
> provided that such agreement, promise, undertaking or contract is a qualified
> financial contract ... and (a) there is, as provided in paragraph three of this
> subdivision, sufficient evidence to indicate that a contract has been made, or

-18-

> (b) the parties thereto, by means of a prior or subsequent written contract, have agreed to be bound by the terms of such qualified financial contract from the time they reach agreement (by telephone, by exchange of electronic messages, or otherwise) on those terms.

N.Y. Gen. Oblig. Law § 5-70l(b).

56.    The purpose of the qualified financial contract exceptions as discussed in *Naldi* was to amend the law to reflect the reality of the marketplace in which certain financial institutions, "had come to rely on e-mail and other electronic means of communication, rather than paper writings, to memorialize [ ] transactions." *Naldi v. Grunberg*, 80 A.D.3d 1, 8, 908 N.Y.S.2d 639 (N.Y. App. Div. 1st Dep't. 2010). The amendment to N.Y. Gen. Oblig. Law § 5–701(b) was enacted "to make clear that a 'qualified financial contract [as defined] ... is legally binding from the moment agreement is reached.'" *Naldi*, 80 A.D.3d at 9 (quoting the Senate Introducer Mem. in Support, Bill Jacket, L. 1994, ch. 467, at 10).

57.    Further, it is well settled New York law, that contract formation outside the statue of frauds is not dependent on a signature as long as a party manifests an intention to be bound to the agreement.

> The absence of the signature of a contracting party is not necessarily inconsistent with the formation of a binding contract. A contract arises as long as the terms are understood by the parties and each manifests its intent to be bound, even in the absence of one or more signatures.

*Aini v. Sun Taiyang Co.*, 964 F. Supp. 762, 775 (S.D.N.Y. 1997); *Irving R. Boody & Co. v. Winn Holdings, International*, 213 F. Supp. 2d 378, 381 (S.D.N.Y. 2002)("It is well settled in New York, however, that contract formation is not dependent on a signature.").

58.    For contracts outside the statute of frauds, the courts can turn to "the course of conduct between the parties to determine whether there was a meeting of minds sufficient to give rise to an enforceable contract . . ." *Flores v. Lower East Side Service Center, Inc.*, 4 N.Y.3d

-19-

363, 370, (N.Y. 2005); *Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp.*, 41 N.Y. 2d

397, 399 (1977)(finding that the course of conduct, including writings, especially taken against

the continuum of events was sufficient to spell out a binding contract.); *Brighton Investment,*

*Ltd. v. Har-ZVI*, 88 A.D.3d 1220, 1222 (N.Y. App. Div.. 3rd Dep't. 2011)(finding contract

formation was not dependant on signed document but on "whether the parties' words and deeds

establish their intent to enter into a binding agreement given the attendant circumstances, the

situation of the parties, and the objectives they were striving to attain.").

59.    As determined by N.Y. Gen. Oblig. Law § 5-701(b) the Guarantees, as a qualified

financial contract, fall outside the statute of frauds and consequently does not require a signature

to be an enforceable contract.  Further, N.Y. Gen. Oblig. Law § 5-701(b)(1)(b) requires only that

the parties agreed to be bound to the contract "from the time they reached agreement (by

telephone, by exchange of electronic messages, or otherwise) . . ." N.Y. Gen. Oblig. Law § 5-

701(b)(1)(b).

60.    The understanding of the parties was that the Guarantees were in effect from the

moment LBSF and Caspian and MOF were in agreement as to the terms of the Master

Agreements.  *See* Disclosure Statement, p. 65 [Docket No. 19629] ("LBHI's guarantee of the

obligations of its subsidiaries under derivatives contracts was given as a matter of course and did

not need to be requested or negotiated").  Both the Debtors and Caspian and MOF acted as

though the Guarantees were in place.

61.    Mariner asserts that the provisions of the Master Agreements incorporating the

Guarantees provide more than sufficient evidence to indicate that a contract has been made and

the parties agreed to be bound.  Further, Mariner asserts that the course of conduct between the

parties, as evidenced by the general conduct in the industry, LBHI's prior dealings with Mariner,

-20-

Caspian and MOF, and LBHI's prior deals with other creditors, indicates that the parties intended to be bound. In the alternative, as with the merchant exception, Mariner believes that at a minimum, it is entitled to discovery to assess whether additional information, communications and documents exist indicating that a contract has been made or the parties agreed to be bound.

**VI.    Promissory Estoppel Mandates Enforcement of the Contract Guarantee.**

62.    "It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." See *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994).

63.    Under New York law, a claim fur promissory estoppel requires demonstration of: (i) a clear and unambiguous promise; (ii) reasonable and foreseeable reliance by the promisee; and (iii) unconscionable injury sustained by the relying party as a result of the reliance. *See Kave v. Grossman*, 202 F.3d 611,615 (2d Cir. 2000); *Fishoff v. Cotv Inc.*, 676 F. Supp. 2d 209, 216 (S.D.N.Y. 2009). Here, Mariner can establish the elements for promissory estoppel to enforce the Guarantee Claims.

64.    First, both the Contract Guarantees and Board Guarantee are clear and unambiguous. The Contract Guarantees provide that LBHI "hereby unconditionally guarantees. . . the due and punctual payment of all amounts payable by [LBSF] under each Transaction when and as [LBSF's] obligations thereunder shall be come due and payable in accordance with the terms of the Agreement." Master Agreements at Exhibit A to Schedule. In turn, the Board Guarantee provides, in relevant part, that "LBHI hereby fully guarantees the payment of all liabilities, obligations and commitments of [LBSF]." Board Guarantee.

65.    Second, it can be proven that Caspian and MOF reasonably relied on fully

-21-

enforceable Contract Guarantees and/or Board Guarantee to enter into not fewer than 20 Transactions with LBSF. See *JP Morgan Chase Bank. Nat. Ass'n v. Ilardo*, 2012 WL 695032 at *11 (N.Y. Supp. 2012) (finding that reasonable and foreseeable reliance exists where a party acts in a manner that shows their belief that a contract has been created). LBHI's guarantee was a necessary prerequisite for Caspian and MOF to enter into the Transactions with LBSF, an entity whose financial condition was not disclosed or known to Caspian or MOF. As noted above, the guarantee in the form of the Contract Guarantees and Board Guarantee filled the void of LBSF's lack of financial disclosure and was relied upon by Caspian and MOF when entering the Transactions.

66.    Caspian and MOF's reliance on the Contract Guarantees and Board Guarantee was also foreseeable because LBHI's guarantee of the obligations of its subsidiaries under derivatives contracts was given as a matter of course and did not need to be requested or negotiated and the Board Guarantee is clear on its terms that LBHI fully guarantees LBSF's obligations.

67.    Finally, as set forth in the Guarantee Claims, Caspian and MOF clearly sustained an injury as a result of its reliance on LBSF as direct obligor and LBHI as guarantor under the Master Agreements. Caspian and MOF were owed not less than $2,555,425.52 under the Master Agreements as of the Petition Date. Thus, application of promissory estoppel is appropriate here, and Mariner should be permitted to recover on its Guarantee Claim against LBHI.

## RESERVATION OF RIGHTS

68.    Given the limited analysis set forth in the Objection, Mariner is not using this Response to set forth a detailed analysis of the legal issues related to the LBHI Claim beyond the issues detailed above related to the Statute of Frauds. To the extent the Bankruptcy Court does

-22-

not overrule the Objection, Mariner reserves its right to file a supplemental and/or amended response to the Objection shall it deem it necessary. Mariner reserves the right, after discovery and prior to a hearing on the merits of the LBHI claim, to provide a briefing on the other applicable legal issues.

### CONCLUSION

WHEREFORE, Mariner respectfully requests that the Court enter an Order (a) overruling the Objection as it pertains to the Guarantee Claims; (b) allowing the Guarantee Claims in full; and (c) granting Mariner such further relief as the Court deems just or, in the alternative, (d) schedule an evidentiary Claims Hearing and permit discovery in connection therewith.

Dated: New York, New York
      November 13, 2012

**WINSTON & STRAWN LLP**

By: /s/David Neier
    David Neier (dneier@winston.com)
    Carrie V. Hardman (chardman@winston.com)
    200 Park Avenue
    New York, New York 10166
    Telephone No.:    (212) 294-6700
    Facsimile No.:    (212) 294-4700

*Attorneys for Mariner Investment Group, LLC*

NY:1530594.5