# EXHIBIT H

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                              .    Chapter 11
                                    .
GLOBAL POWER EQUIPMENT GROUP        .    Case No. 06-11045(BLS)
INC., et al.,                       .    (Jointly Administered)
                                    .
           Debtors.                 .    Dec. 17, 2007 (9:10 a.m.)
                                    .    (Wilmington)


                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE BRENDAN LINEHAN SHANNON
                  UNITED STATES BANKRUPTCY COURT JUDGE
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1              (Whereupon at 12:54 p.m., a recess was taken in the
 2    hearing in this matter.)
 3              (Whereupon at 2:10 p.m., the hearing in this matter
 4    reconvened and the following proceedings were had:)
 5              THE CLERK: All rise.
 6              THE COURT: Please be seated.  Before we turn to the
 7    omnibus hearing, there are three matters that are before the
 8    Court.  They are the objection to SNC's guaranty claim
 9    against GPEG, the objection to SNC's claim to the extent it
10    exceeds, the step-downs and caps in the completion agreement
11    based upon allegations of intentional fraud or wilful
12    misconduct, and the motion to estimate SNC's claim pursuant
13    to Bankruptcy Rule 3018 for purposes of voting on the plan
14    currently scheduled for a confirmation hearing on December
15    20, 2007.  I will address each of these items in turn.
16    Before ruling, I will note that the Court has prior to today
17    conducted many, many hearings in connection with the disputes
18    between SNC and the debtors.  We've covered substantive
19    matters, discovery disputes, legal arguments, and scheduling
20    issues, and in connection with this trial, the Court has
21    reviewed the debtors' claim objections, the multiple
22    responses and replies, substantial affidavits, designated
23    depositions, and many, many exhibits as well as counter-
24    designations from both sides.  The Court has now conducted a
25    full trial on the merits.  I am satisfied that we have a
```

1   fulsome record and that there has been a full and fair
2   opportunity to air these issues, and I would like to
3   compliment and thank all counsel for their professionalism
4   and courtesy to one another in what, to the Court, has
5   clearly been challenging and hotly contested litigation.
6   Turning to the first question being SNC's claim for a parent
7   guaranty from GPEG.  I will sustain the debtors' objection
8   and I will disallow that claim.  The debtors' objection is
9   based on the statute of frauds, which under either U.S. or
10  Canadian law requires that a promise to be responsible for
11  the debt of another must be in writing to be enforceable.
12  This is a bedrock principle of American and British and
13  Canadian law since the 17th century.  The record is undisputed
14  that there is no signed guaranty by GPEG.  This has been
15  attested to by Ms. Cheeseman and acknowledged by Mr.
16  Tardanico, as since he correctly agues that the statute of
17  frauds is not absolute and that the courts have recognized a
18  number of exceptions.  These exceptions operate to prevent
19  the statute of frauds from being used strategically by a
20  party or in the simpler terms of the British high court in
21  the actions during the case where application of the statute
22  of frauds, quote, "would yield an unconscionable result."
23  SNC is correct, the Canadian and U.S. law require that the
24  statute of frauds not be used as, quote, "an engine of
25  fraud", close quote.  And SNC argues also for application of

1   the wider interest rule which carves out from the statute
2   cases where the guaranty is incident to a larger transaction
3   and where the party to be held liable has an interest in the
4   overall transaction.  There is a further exception, which I
5   will refer to as the multiple document rule, which provides
6   an out from the statute of frauds if a party can establish
7   the commitment or transaction from a collection of materials
8   even in the absence in a single signed contract.  SNC
9   contends that these exceptions apply here, I disagree.  The
10  record already reflects that a parent guaranty was one of the
11  deal points that was on the table when the purchase order was
12  being negotiated.  So was a letter of credit.  So was a
13  reserve, and it is true that Exhibit T to the purchase order
14  was a blank standard form of parent guaranty, but the only
15  documentary evidence presented today to directly support the
16  proposition that either GPEG or Deltak promised SNC a GPEG
17  guaranty is a handwritten four-word line from Mr. Tardanico's
18  notes of a teleconference with a Deltak representative
19  stating, quote, "Parent guaranty, no problem", close quote.
20  I will acknowledge that Mr. Tardanico testified credibly
21  regarding his belief that he had been promised a parent
22  guaranty by Mr. Ness.  On the other hand, Mr. Edwards, Ms.
23  Cheeseman, Mr. Wilson, Mr. Hanson, and Mr. Ness all testified
24  that they never promised or approved a parent guaranty.
25  Additionally, the record does not show any correspondence or

1   other documentation to support the allegation that a request

2   for a parent guaranty was made to GPEG.  Ms. Cheeseman, Mr.

3   Wilson, and Mr. Hanson all testified regarding the mechanics

4   of how requests for parent corporate guaranties work their

5   way through the approval process, and there is no evidence of

6   that occurring here.  Similarly, evidence of the words,

7   quote, "no comment", close quote, next to the blank form of

8   Exhibit T as reflected in Mr. Tardanico's testimony is not

9   insignificant, but standing alone, it is not sufficient to

10  overcome the documentary requirements of the statute of

11  frauds.  To make its case, SNC required more of a showing and

12  if indeed the parent guaranty has been such a central piece

13  of the transaction, there would be more evidence of that

14  demand and the purported agreement, either emails or

15  correspondence memorializing the demand and requesting

16  approval post-contract execution, requests for documentation,

17  and the like.  Moreover, Mr. Tardanico acknowledged on cross-

18  examination that he never discussed or negotiated with Mr.

19  Ness the terms of a parent guaranty, the amount, the

20  duration, the conditions, trigger events, et cetera.  The

21  record is, therefore, simply not sufficient.  Also, the

22  contract itself does not support SNC with sufficient vigor.

23  As noted, Exhibit T was a form of parent guaranty, but

24  section 21 of the terms and conditions of the contract titled

25  Financial Security list several options or in Mr. Ness's

1   terms deliverables, but does not include a parent guaranty.
2   Similarly, the record does not support application of the
3   wider interest rule.  SNC testified that the parent guaranty
4   or similar security was critical to the deal, and at a
5   baseline level, GPEG as the parent, did have an economic
6   interest in seeing Deltak get the business.  But SNC's
7   invocation of the exception here would swallow the rule and
8   basically provide that parent guaranties of subsidiary
9   contracts need not be in writing.  Every parent has an
10  interest in the success of it subsidiary and parent
11  guaranties, while important, are typically incident to the
12  real purpose or objective of the contract between the
13  subsidiary and its customer.  Based on the record before me,
14  I cannot conclude that SNC has identified sufficient evidence
15  or documentation to escape application of the statute of
16  frauds.  Likewise, I do not find that enforcement of the
17  statute of frauds in this case would work a manifest
18  injustice or yield an unconscionable result.  To the
19  contrary, the trial that we just had with conflicting
20  testimony and competing circumstantial evidence is precisely
21  the exercise that the statute of frauds was designed to
22  prevent.  This is a court of equity, and if sufficient
23  evidence supported the allegations that the debtors were
24  behaving badly or had engaged in a bait and switch, I would
25  not hesitate to impose liability, both the law and principles

1   of equity support that, but on this record, SNC has not
2   carried its burden to establish that a parent guaranty had
3   been actually promised and then wrongfully withheld.  The
4   second matter before the Court is the debtors' objection to
5   SNC's claim against Deltak.  As we all know, the original
6   contract between SNC and Deltak was rejected effective as of
7   the petition date, and the completion agreement was either an
8   ovation or a settlement agreement, and it operates to cap
9   SNC's claims pursuant to a step-down schedule contained in
10  section 2.2 of the completion agreement.  The only way for
11  SNC to enforce a claim in excess of the step-down schedule is
12  by proving that the debtors' engage in, quote, "intentional
13  fraud or wilful misconduct".  As I will describe in more
14  detail, I do not find that SNC has established that the
15  debtor has engaged in intentional fraud or wilful misconduct,
16  and so, I will sustain the debtors' objection and disallow
17  SNC's claims to the extent that they exceed the step-down
18  amounts in section 2.2 of the completion agreement.  I
19  previously ruled that the operative period for claims arising
20  under the, quote, "intentional fraud and wilful misconduct",
21  close quote, exception commences on the petition date at the
22  very earliest.  Thus, potential claims against Deltak by SNC
23  arising out of a negotiation of the underlying contract or
24  purchase order were waived or otherwise disposed of by
25  rejection of that contract and entry into the completion

1  cleared out by the end of the day today.  Why don't we take

2  a five-minute recess, and then we'll reconvene.

3              (Whereupon at 2:39 p.m., a recess was taken in the

4  hearing in this matter, the hearing on the trial matters

5  having been concluded for this date.)

6

7

8

9

10

11

12

13

14

15

16

17

18            I, Elaine M. Ryan, approved transcriber for the

19  United States Courts, certify that the foregoing is a correct

20  transcript from the electronic sound recording of the

21  proceedings in the above-entitled matter.

22

23  /s/ Elaine M. Ryan                        January 7, 2008
    Elaine M. Ryan
    2801 Faulkland Road
    Wilmington, DE 19808
    (302) 683-0221