**HEARING DATE AND TIME:  December 12, 2012, at 10:00 a.m. (Prevailing Eastern Time)**
**RESPONSE DEADLINE:  December 5, 2012 at 4:00 p.m. ( Prevailing Eastern Time)**

SEWARD & KISSEL LLP
John R. Ashmead, Esq.
Ronald L. Cohen, Esq.
Justin L. Shearer, Esq.
One Battery Park Plaza
New York, New York  10004
Telephone:  (212) 574-1200
Facsimile:  (212) 480-8421

*Attorneys for Traxis Fund LP*
*and Traxis Emerging Market*
*Opportunities Fund LP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

### NOTICE OF HEARING ON MOTION OF TRAXIS FUND LP AND TRAXIS EMERGING MARKET OPPORTUNITIES FUND LP TO COMPEL DEBTORS TO REISSUE DISTRIBUTION CHECKS  FOR ALLOWED CLAIMS

PLEASE TAKE NOTICE that the hearing on the annexed Motion of Traxis Fund LP and

Traxis Emerging Market Opportunities Fund LP to Compel Debtors to Reissue Distribution

Checks for Allowed Claims (the "Motion") will be held before the Honorable James M. Peck,

United States Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court for the

Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New

York, New York 10004 (the "Bankruptcy Court"), on **December 12, 2012 at 10:00 a.m.**

**(Prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (in either case, with two hard copies delivered directly to the Chambers of the Honorable James M. Peck, U.S.B.J., United States Bankruptcy Court, One Bowling Green, Courtroom 601, New York, New York 10004); and shall also be served upon (a) counsel to the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq. and Jacqueline Marcus, Esq.); (b) the office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq. and Tracy Hope Davis, Esq.); (c) counsel for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq. and Evan R. Fleck, Esq.); and (d) counsel for Traxis Fund LP and Traxis Emerging Market Opportunities Fund LP, Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004 (Attn:  John R. Ashmead, Esq., Ronald L. Cohen, Esq. and Justin L. Shearer, Esq.), so as to be received no later than **December 5, 2012, at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections that have been filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Bankruptcy Court at the Hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court may grant the relief requested in the Motion without a hearing if no objections to the Motion are timely filed and served.

New York, New York
November 16, 2012

SEWARD & KISSEL LLP

By:    /s/ John R. Ashmead
       John R. Ashmead, Esq.
       Ronald L. Cohen, Esq.
       Justin L. Shearer, Esq.

       One Battery Park Plaza
       New York, New York 10004
       Telephone:  (212) 574-1200
       Facsimile:   (212) 480-8421

*Attorneys for Traxis Fund LP and Traxis Emerging Market Opportunities Fund LP*

**HEARING DATE AND TIME:  December 12, 2012, at 10:00 a.m. (Prevailing Eastern Time)**
**RESPONSE DEADLINE:  December 5, 2012 at 4:00 p.m. ( Prevailing Eastern Time)**

SEWARD & KISSEL LLP
John R. Ashmead, Esq.
Ronald L. Cohen, Esq.
Justin L. Shearer, Esq.
One Battery Park Plaza
New York, New York  10004
Telephone:  (212) 574-1200
Facsimile:  (212) 480-8421

*Attorneys for Traxis Fund LP*
*and Traxis Emerging Market*
*Opportunities Fund LP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## MOTION OF TRAXIS FUND LP AND TRAXIS EMERGING MARKET OPPORTUNITIES FUND LP TO COMPEL DEBTORS TO REISSUE DISTRIBUTION CHECKS  FOR ALLOWED CLAIMS

TO THE HON. JAMES PECK, UNITED STATES BANKRUPTCY JUDGE:

Traxis Fund LP ("Traxis Fund") and Traxis Emerging Market Opportunities Fund

LP ("TEMOF" and together with Traxis Fund, "Traxis"), by and through its undersigned

counsel, hereby move this Court (the "Motion") for entry of an order, in substantially the form

attached hereto as Exhibit A, pursuant to Section 105(a) of the United States Bankruptcy Code

and (a) Sections 347(b), 1142(b), and 1143 of the Bankruptcy Code and Rule 3021 of the Federal

Rules of Bankruptcy Procedure, or in the alternative, (b) Rules 9006(b)(2) and 9024 of the

Federal Rules of Bankruptcy Procedure, compelling Lehman Brothers Special Financing Inc.

("LBSF") and Lehman Brothers Holdings Inc. ("LBHI" and together with LBHI, the "Debtors")

to reissue certain distribution checks payable to Traxis Fund and TEMOF in respect of their

allowed claims against the Debtors.

**Preliminary Statement**

1.      On October 23, 2012, Traxis was contacted by the Debtors' claims agent,

Epiq Systems ("Epiq"), about certain October 1, 2012 distribution checks payable to Traxis

("October Distribution Checks") that had been returned to Epiq as undeliverable.  Only after

some further discussions with Epiq, on the morning of October 25, 2012, it became clear to

Traxis that there had been earlier distribution checks (from April 2012) in the amount of

$175,948.30 ("Initial Distribution Checks") allegedly issued and sent to Traxis that had neither

had been received by Traxis nor returned to Epiq as undeliverable.  Traxis promptly asked that

the Initial Distribution Checks be reissued and sent; however, Epiq replied to Traxis that the Plan

(defined below) precluded reissuance of the checks.  The Plan, under Epiq's reading, would set

October 14, 2012 as the last day to reissue such checks.  In other words, just nine (9) days before

Epiq contacted Traxis, the unaccounted-for Initial Distribution Checks purportedly escheated to

the estates for redistribution to other claimants.

2.      Traxis thereafter contacted undersigned counsel, who engaged in

conversations with Epiq, the Debtors' counsel and Traxis in an effort to gather more facts about

the missing Initial Distribution Checks, to review and discuss the applicable Plan provisions, and

to see if a consensual resolution of reissuance and delivery could be reached.[1]  It became clear to

Traxis on November 15 that no consensual resolution could be reached and this Motion was

forthwith filed.

---

[1]      In the midst of this period, Hurricane Sandy struck New York, forestalling efforts on this matter for nearly
two weeks.

3.      The Debtors' refusal to honor Traxis' timely-filed and admittedly allowed claims under the facts here is inequitable and at odds with the clear intent of the Bankruptcy Code to ensure that legitimate claimants receive their rightful distributions.  This Court has the power to right this wrong and ensure that Traxis is not stripped of the value of its claims by requiring that the Debtors reissue and deliver the Initial Distribution Checks or otherwise furnish full Plan payment in respect of Traxis' claims.

**Background**

**Traxis' Allowed Claims**

4.      Traxis Fund and TEMOF hold four allowed claims:  Claim no. 66512, against LBSF, and Claim no. 66511, against LBHI, were accepted as filed and deemed allowed claims by the Debtors in the amount of $676,637.80 (the "Allowed Traxis Fund Claims"); and Claim no. 66510, against LBSF, and Claim no. 66509, against LBHI, were accepted as filed and deemed allowed claims by the Debtors in the amount of $31,030.98 (the "Allowed TEMOF Claims" and, together with the Allowed Traxis Fund Claims, the "Allowed Claims").  Copies of the Allowed Claims are attached hereto as Exhibit B.

5.      At the time of the filing of the proof of claim forms for the Allowed Claims, Traxis was located at 600 Fifth Avenue, 26th Floor, New York, New York 10020 (the "Old Address"), as reflected in the relevant proof of claim forms.  Contact information for Traxis' counsel, Seward & Kissel LLP, was also listed on such forms for the purposes of delivering notices in respect of the Allowed Claims. See Declaration of Adam Jaffe ("Jaffe Decl.") ¶ 3, attached hereto as Exhibit C.

3

6.      On December 6, 2011, this Court entered an Order (the "Confirmation
Order") confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers
Holdings and Its Affiliated Debtors (the "Plan").

**Traxis' Office Move and Alleged Issuance of Initial Distribution Checks**

7.      On or about March 19, 2012, Traxis moved offices from the Old Address
to its current address at 4 Greenwich Office Park, 2nd Floor, Greenwich, Connecticut 06831 (the
"New Address").  See Jaffe Decl.  In connection with the move, Traxis management arranged for
mail forwarding with the United States Postal Service.  Upon information and belief, all mail
sent to the Old Address since March 19, 2012 has been forwarded successfully to the New
Address.  Id. ¶ 4.

8.      According to certain remittance sheets (the "Remittance Sheets") provided
to Traxis by Epiq on November 8, 2012, Traxis Fund and TEMOF were intended to be sent the
Initial Distribution Checks in respect of their Allowed Claims on or about April 17, 2012. See id.
¶ 5. Copies of the Remittance Sheets are attached hereto as Exhibit D.

9.      The Initial Distribution Checks in respect of the Allowed Claims were to
have included checks to Traxis Fund in respect of Claim nos. 66512 and 66511 for $137,723.04
and $23,020.09 respectively, and checks to TEMOF in respect of Claim nos. 66510 and 66509
for $9,929.91 and $5,275.26 respectively.  See id. ¶ 6.  The combined amount of the Initial
Distribution Checks is $175,948.30.

10.     Traxis did not receive the Initial Distribution Checks, nor was Traxis
advised by the Debtors or Epiq that such checks had been issued and sent.  See Id. ¶ 7.  Despite
requests, to date, the Debtors and Epiq have not provided any evidence indicating that Epiq

4

actually mailed the Initial Distribution Checks to Traxis, but even if such evidence is

forthcoming, they were not received, they were not cashed, and Epiq did not contact Traxis or its

counsel to report that such checks were returned as undeliverable or not cashed.  See id.

**The October Distribution and Communications with the Debtors**

11.    Upon information and belief, on October 1, 2012, the Debtors mailed the

October Distribution Checks in respect of the Allowed Claims to Traxis at the Old Address (the

"October Distribution Checks").  See id. ¶ 8.

12.    On or about October 23, 2012, Epiq contacted Traxis to inform it that the

October Distribution Checks had been returned to Epiq as undeliverable.  Epiq agreed to send the

amount of the October Distribution Checks to Traxis via wire transfer.  After a number of email

communications, it became clear to Traxis on the morning of October 25, 2012 that the Initial

Distribution Checks had, allegedly, previously been issued and mailed, but never cashed.  See id.

¶ 9.

13.    That same morning, Traxis requested via e-mail that Epiq cancel the Initial

Distribution Checks and remit payment of the relevant amounts.  Epiq replied via e-mail that it

would not honor Traxis' request to reissue the Initial Distribution Checks or tender the amounts

that Traxis would have been entitled to had it actually received the Initial Distribution Checks,

citing paragraph 8.9 of the Plan, which relates to the time bar of cash payment rights in respect of

allowed claims.  See id. ¶ 10.

14.    Paragraph 8.9 of the Plan provides that checks issued in respect of allowed

claims become null and void if not negotiated within 90 days after issuance and, after another 90

days, revert irrevocably to the Debtors:

> **8.9 Time Bar to Cash Payment Rights.**  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such avoided check shall be made on or before 90 days after the expiration of the 90 day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor and its property.

Plan, ¶ 8.9.  Thus, left uncashed (whether or not delivered), the Initial Distribution Checks would have irrevocably reverted to the Debtors on or about October 14, 2012 (the "Reversion Date").[2]

15.     Given the sequence of events, it is possible that Epiq received the "undeliverable" October Distribution Checks in advance of the Reversion Date.  If so, if Epiq had promptly contacted Traxis to notify it of the undelivered October Distribution Checks, Traxis would have been able to request the reissuance of the Initial Distribution Checks before October 14 – the Reversion Date.  See id. ¶ 12.

16.     From October 25, 2012 to the filing of this Motion, Traxis and undersigned counsel have communicated with counsel for the Debtors, as well as Epiq, in order to reach a consensual resolution of this matter, but the Debtors have thus far refused to reissue the Initial Distribution Checks.

---

[2]     As noted above, this assumes, although to date no definitive evidence has been presented on these points, the Initial Distribution Checks were in fact issued (i.e., written) and mailed and timely mailed (i.e., immediately).  If this is not the case, the reversionary provisions of the Plan should not even be applicable to this matter.

## Argument

**I.      Traxis' Cash Payment Rights Should Not Be Time Barred under Sections 105(a),1142(b), 1143 and 347(b) of the Bankruptcy Code and Bankruptcy Rule 3021**

17.      Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

18.      Rule 3021 of the Federal Rules of Bankruptcy Procedure provides that, "[a]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed."  Fed. R. Bankr. P. 3021.

19.      Section 1142(b) of the Bankruptcy Code provides that

> "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b).  Sections 105(a), 3021 an 1142(b) of the Bankruptcy Code collectively empower this Court to issue an order directing the Debtors to effectuate a transfer of distributions, as contemplated by the Plan, to Traxis in respect of the Allowed Claims.

20.      Section 1143 of the Bankruptcy Code provides that

> "[i]f a plan requires presentment or surrender <u>or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken not later than five years after the date of the entry of the order of confirmation</u>.  Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan."

11 U.S.C. § 1143 (emphasis added).

7

21.    Section 347(b) of the Bankruptcy Code provides that

[a]ny security, money, or other property remaining unclaimed at
the expiration of the time allowed in a case under chapter 9, 11, or
12 of this title for the presentation of a security or the performance
of any other act as a condition to participation in the distribution
under any plan . . . becomes the property of the debtor or of the
entity acquiring the assets of the debtor under the plan, as the case
may be.

11 U.S.C. § 347(b).

22.    Essentially, Section 1143 of the Bankruptcy Code provides that if some

act is required of a creditor holding an allowed claim to participate in distribution, that act must

be performed within five years of confirmation of the debtor's plan of reorganization.  If no such

action is taken, Section 347(b) requires that the creditor's entitlement become the property of the

debtor.

23.    "Some act," as described in Section 1143, may be as simple as "presenting

one's self and cashing a check."  See In re Rodman, Inc., 50 B.R. 313, 1985 Bankr. LEXIS 5798,

**2-3 (Bankr. W.D. Ok. July 8, 1985) (court held that bankruptcy trustee must hold unclaimed

distribution funds for five years from the confirmation date).  The reports of the Senate and the

House of Representatives with respect to Section 347(b) assert that "conditions to participation

under a plan include such acts as cashing a check, surrendering securities for cancellation, and so

on."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 337 (1977); S. Rep 989, 95th Cong., 2d Sess. 47.

See 2 Collier on Bankruptcy ¶ 347.04[15] (15th ed. 1983).  See also TLI, Inc. v. Lynn (In re TLI,

Inc.), 213 B.R. 946, 956 (N.D. Tex. 1997).

24.    There is a relative dearth of case law discussing whether the five-year time

period prescribed by Sections 1143 and 347(b) can be reduced or expanded under the provisions

of a plan of reorganization.  However, "[i]n general, there is a five-year window for a person to

8

claim funds on deposit for distribution pursuant to a Chapter 11 plan." <u>In re Sterling Financial Services of Florida – 1, Inc.</u>, 374 B.R. 327, 329 (Bankr. M.D. Fl. 2007) (holding that, despite creditors' failure to negotiate distribution checks they had not received within the 90 days prescribed by plan of reorganization, such creditors were nonetheless entitled to claim distributions).

25.    Moreover, courts have found that distribution funds are only truly unclaimed

> when the disbursement agent, which may be the reorganized debtor, has done everything he is required to do to distribute the funds, reasonable notice of the availability of the funds has been given to the intended recipient <u>and the intended recipient has done nothing for a period of time sufficient to evince a lack of interest in the funds or an abandonment of his right to the funds</u>.

<u>In re IBIS Corp.</u>, 272 B.R. 883, 890 (Bankr. E.D.Va. 2001) (emphasis added).  The <u>IBIS</u> court held that a "check mailed to a creditor at creditor's last known address, not returned by the Postal Service and not cashed within a reasonable period of time" is deemed unclaimed, but the court clarified that "[o]f course, checks issued earlier than five years after confirmation and neither cashed nor returned would not revert to the debtor until the expiration of the five year deadline." <u>Id.</u>

26.    Thus, through the language of Sections 1143 and 347(b), the Bankruptcy Code evinces a clear preference for permitting holders of allowed claims the maximum amount of time possible to take action to receive payment from debtors in respect of their rightful entitlements.  Likewise, applicable case law supports the notion that a bankruptcy court should not permit debtors to lay claim to assets that should rightfully go to creditors, especially where those creditors have shown no intention of abandoning their claims.

27.    Here, there is no dispute that the Traxis entities are legitimate creditors. They did not receive certain distributions and, upon learning such distributions had allegedly been sent, they immediately asked for the missing checks to be cancelled, reissued and delivered. This is not an instance of an undeliverable check (addressed in Plan ¶ 8.7).  This is an instance of checks that appear to have disappeared (assuming they were issued and mailed).  Traxis was not contacted about such missing checks, although it could/can be located easily via the Internet or other conventional means, as well as through counsel identified in the forms for the Allowed Claims.  But for the October Distribution Checks being returned as undeliverable, the issue might have not yet arisen.  And when the issue came to light, the purported forfeiture had occurred merely nine (9) days earlier.

28.    In addition, the Debtors have the ready means through which to issue distributions to Traxis.  According to the Debtors' most recent operating report, filed on October 30, 2012 (the "Operating Report") [Docket No. 31759], as of September 30, 2012, LBSF had "free cash and investments" of approximately $822 million and a claims reserve of approximately $2.2 billion, and LBHI had free cash and investments of approximately $7.6 billion and a claims reserve of approximately $2 billion.  With the Debtors still relatively flush with assets and the claims reconciliation and distribution process still underway, paying Traxis its rightful distributions hardly represents a burden on the estate.

29.    Finally, Traxis has in no way conveyed the notion that it wishes or intends to abandon its Allowed Claims.  Upon learning of the "lost" checks, it immediately asked they be reissued, and then promptly engaged in discussions with Epiq and the Debtors to resolve the matter on a consensual basis without Court intervention.  Upon learning that would not happen, the Motion was promptly filed.

30.    In sum, the rigid application of the Plan provisions at issue here would be incredibly unfair to Traxis, and override the fair treatment of creditors that Sections 1143 and 347(b) seek to achieve.  Traxis is entitled to the amounts included in the avoided Initial Distribution Checks and the Debtors should be compelled to reissue checks or otherwise furnish payment to Traxis in the relevant amount.

## II.    Alternatively, Traxis' Request for Re-issued Checks Should be Granted under Bankruptcy Rules 9006(b)(2) or 9024

### Bankruptcy Rule 9006(b)(2)

31.    Bankruptcy Rule 9006(b)(2) provides that

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(2).

32.    Application of Rule 9006(b) is principally used by creditors seeking to file proofs of claim in a bankruptcy case after the bar date, and though nothing in the statute prohibits it, there does not seem to be published case law discussing its use in the context of a creditor seeking the release of post-confirmation claim distributions.[3]  Nonetheless, the standards promulgated by bankruptcy courts in considering whether to permit a late-filed claim are broadly applicable to the relief sought in this Motion.[4]

---

[3]    It is important to note, however, that the Supreme Court has stated that "[t]he time-computation and time-extension provisions of Rule 9006 . . . are generally applicable to any time requirement found elsewhere in the rules unless expressly excepted ."  Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P., 507 U.S. 380, fn 4 (1993).  The Supreme court further noted that "Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter 11 bankruptcies." Id.

[4]    Traxis' view is that the onus on a creditor to adhere to a bar date, and thus put the estates and other creditors on notice of the amount claimed, is very different than not paying a known and accounted for

33.    The preeminent case discussing the standard to be applied by a bankruptcy court in determining whether an extension of time under Rule 9006(b) is appropriate is Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P., 507 U.S. 380 (1993).  In Pioneer, the U.S. Supreme Court held that the determination as to whether a creditor's neglect of a deadline is "excusable" under Rule 9006(b) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  Id. at 395.  The circumstances to consider include (a) the danger of prejudice to the debtor; (b) the length of the delay and its potential impact on judicial proceedings; (c) the reason for the delay, including whether it was within the reasonable control of the movant; and (d) whether the movant acted in good faith.  Id.

A.    Danger of Prejudice to the Debtor

34.    This Court has previously considered the Pioneer factors in determining whether to permit the filing of proofs of claim after the bar date established by the Bar Date Order.  See In re Lehman Brothers Holdings Inc., et al., 433 B.R.113 (Bankr. S.D.N.Y. 2010).  In rendering its decision, this Court stated that determinations as to the potential prejudice of permitting a late filing "are guided by factors such as the size of a late claim in relation to the estate, whether a disclosure statement or plan has been filed, and the disruptive effect permitting the late claim would have on plan formation."  Id at 120 (citing In re Keene Corp., 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).

35.    In In re Keene Corp., Judge Bernstein found that prejudice, as contemplated by the Pioneer factors

concerns not just the harm to the debtor but also the adverse impact that a late claim may have on the judicial administration of the

---

creditor/claim because the creditor did not receive a distribution check for unknown reasons and lost its legitimate payment rights because of the passage of a short period of time.

case. The Pioneer Court did not define "prejudice," but the subsequent cases have identified a number of considerations. These include the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated.

In re Keene Corp., 188 B.R. at 910.

36.    In this instance, the size of the amount in dispute, $175,948.30, is miniscule in comparison to the size of the Debtors' respective estates.  Exhibit 2B to the Debtors' Disclosure Statement for Third Amended Joint Chapter 1 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, dated August 31, 2011 (the "Disclosure Statement"), indicated that, as of December 31, 2010, LBHI held assets totaling approximately $149 billion, and LBSF held assets totaling approximately $21 billion.  Moreover, the amount of the Initial Distribution Checks represents a portion of the Allowed Claims that the Debtors have already tabulated as liabilities of their respective estates.

37.    Additionally, the Keene court indicated that prejudice would be suggested if a disclosure statement or plan had been filed or confirmed with knowledge of the existence of the claims.  In this case, Traxis' initial claims were filed well before the Bar Date, and the Allowed Claims were admitted by the Debtors approximately nine months before the filing of the first drafts of the Plan and Disclosure Statement.  The Plan was prepared by the Debtors with the expectation that Traxis would receive a full *pro rata* distribution in respect of the Allowed Claims.  The Plan was confirmed months before the instant dispute arose.  Permitting the reissuance of the Initial Distribution Checks could have no conceivable effect on the Debtors'

estates or their reorganization.  In other words, there would be no effect "on the judicial

administration of the case," as noted in <u>Keene</u>.

38.    This Court previously held, in declining to permit late-filed claims, that

the <u>Pioneer</u> prejudice factor weighed in favor of the Debtors in that instance due to the need to

bring closure to the class of timely filed claims and the danger of encouraging others to seek

similar leniency by submitting their own late-filed claims.  <u>In re Lehman Brothers Holdings Inc.,</u>

<u>et al.,</u> 433 B.R.at 120.  Due to the unique circumstances underlying the Initial Distribution

Checks, the fact that the Bar Date has long since passed and the population of claimants has been

identified, the fact that the Plan was confirmed almost a year ago, and that the Debtors have been

fully aware of Traxis' claims since well before the Bar Date, there is virtually no likelihood of

prejudice to the Debtors that would be incurred by permitting Traxis to receive the payment to

which it is entitled under the Plan.  At issue here, then, really, is whether other claimants should

get a windfall at Traxis' expense.

39.    It should also be noted that, because distributions under the Plan are

ongoing, the only real impact that reissuing the Initial Distribution Checks will have on the

administration of the Debtors' estates will be with respect to Traxis alone, the impact being

solely that Traxis will receive its rightful distributions somewhat later than originally scheduled.

While Traxis has allowed claims against the Debtors, hundreds of other creditors currently have

contingent, unliquidated or disputed claims that are still pending resolution.  Many other

creditors have claims that are currently in the process of being admitted by the Debtors and will

be receiving "catch-up" distributions on subsequent distribution dates.  Permitting the reissuance

of the Initial Distribution Checks, which represent previously agreed-upon entitlements of

Traxis, will not delay or alter the administration of the estate, impact the Debtors' claims

reconciliation process, put Traxis in a position more advantageous than other similarly situated creditors, or have any discernible impact upon other creditors, including the timing or nature of their distributions.

40.    While the reissuance of the Initial Distribution Checks would not be prejudicial to the Debtors, it would represent a windfall for other creditors of LBSF and LBHI, whose subsequent distributions will be made larger due to the sacrifice of Traxis' Allowed Claims.  As described above, the Bankruptcy Code is tailored to provide for the fair and equitable treatment of all creditors.  It is not a mechanism through which creditors whose mail was delivered more reliably should expect to receive a windfall to the detriment of other creditors with equally valid claims.  "[E]quity . . . abhors a windfall."  Prudential Ins. Co. v. S.S. American Lancer, 870 F.2d 867, 871 (2d Cir. 1989) (holding that it would be unjust to allow a typographical error to result in a windfall for third parties).  There is no reason in equity or in the spirit of the Bankruptcy Code that Traxis, a creditor with allowed claims of which the Debtors were fully aware, should be penalized because it did not receive certain distribution checks.

B.    Length of Delay and Good Faith

41.    As previously pointed out by this Court, "there is no bright-line rule governing when the lateness of a claim renders it too late."  Id. (citing In re Enron Creditors Recovery Corp., 419 F.3d 115, 128 (2d Cir. 2005) (finding that a six-month delay was substantial).  In this instance, the span of time between the period in which the Plan, under an overly-mechanistic reading, would have permitted Traxis to request the reissuance of the Initial Distribution Checks and the day in which Traxis attempted to do so was approximately ten (10) days.  As noted above, had Epiq notified Traxis immediately upon Epiq's receipt of the

undelivered October Distribution Checks, Traxis would have been made aware of the existence

of the Initial Distribution Checks and requested their reissuance in full compliance with

Paragraph 8.9 of the Plan.

42.     As detailed above, Traxis timely filing proofs of claim and submitted

supporting materials in accordance with the Bar Date Order.  Traxis has acted quickly to remedy

this matter.  That the Initial Distribution Checks got lost in the mail should not result in harm to

Traxis and a windfall to other creditors.

C.     Reason for the Delay

43.     In applying the Pioneer test for excusable neglect, the Second Circuit has

emphasized the reason for the delay, including whether the reason was within the reasonable

control of the movant.  See In re Enron Corp., 419 F.3d at 122-23.  This Court in particular has

focused on whether inattention to the relevant deadline was "within the complete control" or

"entirely within the control" of the claimant and its agents.  In re Lehman Brothers Holdings

Inc., 433 B.R. at 123 and 125.

44.     That all four Initial Distribution Checks would fail to reach Traxis and

also somehow fail to be returned as undeliverable to Epiq was not expected and not "within the

complete control" of Traxis.[5]  Additionally, because Traxis was unaware that the Debtors had

attempted delivery of the Initial Distribution Checks, it had no reason to believe that the limited

time to request that the checks be reissued under Paragraph 8.9 of the Plan had begun to run and

that Traxis had a short time to act in order to preserve its very right to payment in respect of the

Initial Distribution Checks.

---

[5]     Indeed, even if the purportedly sent Initial Distribution Checks had been mailed to the New Address, they
could have been lost in the mail.

45.    Given the unique circumstances, a fair and reasonable balancing of the equities, and consideration of the <u>Pioneer</u> factors, this Court must hold that "excusable neglect," as contemplated by Rule 9006(b)(1), exists in this instance.  To that end, the Court should compel the Debtors to deem the request of Traxis to reissue the Initial Distribution Checks timely under Section 8.9 of the confirmed Plan.

**<u>Bankruptcy Rule 9024 (incorporating Fed.R.Civ.P. 60)</u>**

46.    Though not employed as frequently in bankruptcy cases as Rule 9006(b), Bankruptcy Rule 9024 provides that Rule 60 of the Federal Rules of Civil Procedure applies in cases under the Bankruptcy Code.  The relevant portions of Rule 60 (Relief from a Judgment or Order) provide:

> (a) CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; …

> (6) any other reason that justifies relief.

F.R.Civ.P. 60(a), (b)(1), (6).

47.    For the reasons set forth above, as an alternative, the Court should grant relief to Traxis from the Plan and Confirmation Order under the auspices of Rule 60.

17

## Conclusion

WHEREFORE, for the foregoing reasons, Traxis respectfully requests that this Court:

(a)     hold that Traxis is entitled to full cash payment of the Initial Distribution Checks pursuant to any or all of Sections 105(a), 1142(b), 1143 and 347(b) of the Bankruptcy Code and Bankruptcy Rule 3021 and require that the Debtors immediately furnish cash payment in satisfaction thereof; or, in the alternative

(b)     hold that Traxis' request that the Debtors and Epiq, as agent for the Debtors, reissue the Initial Distribution Checks shall be deemed timely pursuant to Bankruptcy Rule 9006(b) and/or Rule 9024; and

(c)     grant Traxis such other, further, and different relief as this Court deems just and proper.

New York, New York
November 16, 2012

SEWARD & KISSEL LLP


By:     /s/  John R. Ashmead
        John R. Ashmead, Esq.
        Ronald L. Cohen, Esq.
        Justin L. Shearer, Esq.

        One Battery Park Plaza
        New York, New York 10004
        Telephone:  (212) 574-1200
        Facsimile:   (212) 480-8421

        *Attorneys for Traxis Fund LP and Traxis
        Emerging Market Opportunities Fund LP*