# Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>　　　　　　　　　　　　Debtors. | Chapter 11 Case No.<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**DECLARATION OF ADAM JAFFE IN SUPPORT OF THE
MOTION OF TRAXIS FUND LP AND TRAXIS EMERGING
MARKET OPPORTUNITIES FUND LP TO COMPEL DEBTORS
TO REISSUE DISTRIBUTION CHECKS FOR ALLOWED CLAIMS**

I, Adam Jaffe, hereby declare:

　　　　1.　　I am the Chief Operating Officer of Traxis Partners LP ("Traxis Partners LP"), the investment advisory firm that controls Traxis Fund LP ("Traxis Fund") and Traxis Emerging Market Opportunities Fund LP ("TEMOF" and together with Traxis Fund, "Traxis"). I make this declaration in support of the Motion of Traxis Fund LP and Traxis Emerging Market Opportunities Fund LP to Compel Debtors to Reissue Distribution Checks for Allowed Claims (the "Motion").

　　　　2.　　Traxis Fund and TEMOF hold four allowed claims: Claim no. 66512, asserted against Lehman Brothers Special Financing Inc. ("LBSF"), and Claim no. 66511, asserted against Lehman Brothers Holdings Inc. ("LBHI" and together with LBSF, the "Debtors"), were accepted as filed and deemed allowed claims by the Debtors in the amount of $676,637.80 (the "Allowed Traxis Fund Claims"). Claim no. 66510, asserted against LBSF, and Claim no. 66509, asserted against LBHI, were accepted as filed and deemed allowed claims by the Debtors in the amount of $31,030.98 (the "Allowed TEMOF Claims" and, together with the Allowed Traxis Fund Claims, the "Allowed Claims")

3. At the time of the filing of the Allowed Claims, Traxis was located at 600 Fifth Avenue, 26th Floor, New York, New York 10020 (the "Old Address"), as reflected on the relevant proof of claim forms. Contact information for Traxis' counsel, Seward & Kissel LLP, was also listed on such forms for the purposes of delivering notices in respect of the Allowed Claims.

4. On or about March 19, 2012, Traxis moved offices from the Old Address to its current address at 4 Greenwich Office Park, 2nd Floor, Greenwich, Connecticut 06831 (the "New Address"). In connection with the move, Traxis management arranged for mail forwarding with the United States Postal Service. Upon information and belief, all mail sent to the Old Address since March 19, 2012 has been forwarded successfully to the New Address.

5. According to certain remittance sheets (the "Remittance Sheets") provided by the Debtors' claims agent, Epiq Systems ("Epiq"), Traxis Fund and TEMOF were intended to be sent initial distribution checks under the Plan in respect of their Allowed Claims on or about April 17, 2012.

6. The initial distribution checks in respect of the Allowed Claims were to have included checks to Traxis Fund in respect of Claim nos. 66512 and 66511 for $137,723.04 and $23,020.09 respectively, and checks to TEMOF in respect of Claim nos. 66510 and 66509 for $9,929.91 and $5,275.26 respectively (the "Initial Distribution Checks"). The combined value of the Initial Distribution Checks is $175,948.30.

7. Traxis did not receive the Initial Distribution Checks, nor was Traxis advised by the Debtors or Epiq that such checks had been issued and sent. Despite requests, to date, the Debtors and Epiq have not provided any evidence indicating that Epiq actually mailed the Initial Distribution Checks to Traxis, but even if such evidence is forthcoming, they were not

2

received, and Epiq did not contact Traxis or its counsel to report that such checks were returned as undeliverable or not cashed.

8.  Upon information and belief, on October 1, 2012, the Debtors mailed the second set of distribution checks in respect of the Allowed Claims to Traxis at the Old Address (the "October Distribution Checks").

9.  On or about October 23, 2012, Epiq contacted Traxis to inform it that the October Distribution Checks had been returned to Epiq as undeliverable. Epiq agreed to send the value of the October Distribution Checks to Traxis via wire transfer. After a number of e-mail communications, it became clear to Traxis on the morning of October 25, 2012 that the Initial Distribution Checks had, purportedly, previously been issued, but never cashed.

10. That same morning, Traxis requested that Epiq cancel the Initial Distribution Checks and remit payment of the relevant amounts. Epiq replied via e-mail that it would not honor Traxis' request to reissue the Initial Distribution Checks or tender the amounts that Traxis would have been entitled to had it actually received and cashed the Initial Distribution Checks, citing paragraph 8.9 of the Plan, which relates to the time bar of cash payment rights in respect of allowed claims.

11. It is my understanding that, under the provisions of paragraph 8.9, the amount of the Initial Distribution Checks, if properly delivered and left uncashed, would have reverted to the Debtors on or about October 14, 2012 (the "Reversion Date").

12. Given the sequence of events, it is possible that Epiq received the "undeliverable" October Distribution Checks in advance of the Reversion Date. If so, if Epiq had promptly contacted Traxis to notify it of the undelivered October Distribution Checks,

3

Traxis would have been able to request the reissuance of the Initial Distribution Checks before October 14 – the Reversion Date.

13. From October 25, 2012 to the filing of this Motion, Traxis and Seward & Kissel LLP have communicated with counsel for the Debtors, as well as Epiq, in order to reach a consensual resolution of this matter, but the Debtors have thus far refused to reissue the Initial Distribution Checks.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
November 16, 2012

*Adam Jaffe* (signed)