**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                  :
In re                                                             :    **Chapter 11 Case No.**
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                      :    **08-13555 (JMP)**
                                                                  :
                    **Debtors.**                                  :    **(Jointly Administered)**
                                                                  :
-------------------------------------------------------------------x

**AMENDED ORDER ESTABLISHING DISCOVERY PROCEDURES**
**IN CONNECTION WITH OMNIBUS OBJECTIONS TO**
**RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS**

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors for certain entities in the above-referenced chapter 11

cases filed, in total, fourteen Omnibus Objections seeking to reclassify as equity interests

approximately 3,682 claims based on restricted stock units ("RSUs") and/or contingent stock

awards ("CSAs") issued between 2003 and 2008 (the "Omnibus Objections").[1]  Thirteen of the

Omnibus Objections were filed between December 7, 2010 and June 15, 2012, and the last

---

[1] Those objections are:  Debtors' Seventy-Third Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 13295]; Debtors' One Hundred Eighteenth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 15666]; Debtors' One Hundred Thirtieth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 16115]; Debtors' One Hundred Thirty-First Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 16116]; Debtors' One Hundred Thirty-Third Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 16530]; Debtors' One Hundred Thirty-Fourth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 16532]; Debtors' One Hundred Thirty-Fifth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 16808]; Debtors' One Hundred Seventy-Sixth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 19392]; Debtors' One Hundred Eighty-Fifth Omnibus Objection to Claims (Compound Claims) [ECF No. 19714]; Debtors' Two Hundred Seventh Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 20012]; Three Hundred Thirteenth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 28433]; Three Hundred Fourteenth Omnibus Objection to Claims (Late-Filed Claims) [ECF No. 28435]; Three Hundred Nineteenth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 28777]; and the Three Hundred Forty Seventh Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) [ECF No. 30357].

Omnibus Objection was filed on August 24, 2012 (the "August 2012 Omnibus Objection").  In a series of orders entered between January 20, 2011 and August 24, 2012, the Court granted the requested relief as against claimants who did not oppose the first thirteen Omnibus Objections, and reclassified as equity approximately 3,409 claims, leaving 273 claims pending on Omnibus Objections (the outstanding RSU and CSA claims are referred to collectively as the "RSU Claims"[2], and the claimants asserting the RSU Claims are referred to as the "RSU Claimants"). The August 2012 Omnibus Objection is scheduled to be heard by the Court on September 27, 2012 and involves twenty-one additional claims (claimants who file responses to the August 2012 Omnibus Objection are referred to as the "August 2012 RSU Claimants."  The August 2012 RSU Claimants shall be included in the definition of "RSU Claimants" and their claims shall be included in the definition of "RSU Claims").  Numerous RSU Claimants have sought discovery in connection with the RSU Claims.

The Court has previously indicated that "reliable and authentic evidence" to develop the factual record would be helpful in resolving LBHI's objections to the RSU Claims. Hrg. Tr., Dec. 21, 2011, at 103-04, 106, 128 [ECF No. 23741].  Thus, the Court hereby finds that it would be in the best interests of LBHI and the RSU Claimants that discovery in connection with RSU Claims, and LBHI's objections thereto, be conducted in an efficient, expeditious and orderly manner.  LBHI has shared these discovery procedures with counsel for several of the RSU Claimants seeking discovery.  This Order addresses the comments and concerns discussed during those meetings while maintaining an orderly and efficient discovery process.  Counsel for the RSU Claimants with which LBHI has conferred generally agree that the procedures outlined in this Order are appropriate to develop the evidentiary record.  Accordingly, it is hereby

---

[2] These RSU Claims are identified in Schedule 1, attached hereto.

ORDERED:

1.    **Scope of Order**.  Except as otherwise ordered by the Court, this Order shall control any and all discovery by LBHI and the RSU Claimants in connection with the RSU Claims ("RSU Claims Discovery"), but shall not affect the rights of LBHI or the RSU Claimants to seek discovery in connection with any other contested matters or adversary proceedings.

2.    **No Admissions**.  No statements made in this Order shall be construed as a finding of fact by the Court nor as an admission of any claim or allegation by any of the parties.

3.    **Participation in RSU Claims Discovery.**

(a)    Only LBHI and the RSU Claimants shall participate in RSU Claims Discovery. LBHI shall give each RSU Claimant prompt and adequate notice of this Order at the last known mailing address and address for electronic mail of such claimant.

(b)    Any RSU Claimant who intends to participate in RSU Claims Discovery ("Proposed Participant"), or any attorney acting on behalf of such Proposed Participant, shall serve on LBHI's attorneys a completed "Notice of Intent," the form of which is attached hereto as Exhibit A.  Each Notice of Intent must contain: (i) the name, address, telephone number, and email address of the Proposed Participant and the name of the law firm(s) and individual attorney(s) representing the Proposed Participant along with the attorney's office address, telephone number, and email address; (ii) a list of the proof(s) of claim by claim number, filed by the Proposed Participant; and  (iii) the employee number by which LBHI identified the Proposed Participant (if it can be located by the Proposed Participant after a reasonable search), as shown on Exhibit A.  The Notice of Intent must be served on LBHI's attorneys no later than 14 days

3

after entry of this Order (the "Notice of Intent Deadline"), except that in the case of the August

2012 RSU Claimants, the deadline for serving the Notice of Intent shall be October 4, 2012 (the

"August 2012 RSU Claimants' Notice of Intent Deadline").  In the absence of an Order of the

Court sustaining an objection to a Notice of Intent (as described in Paragraph 3(d) of this Order),

a Proposed Participant timely serving a Notice of Intent shall be deemed a "Participant."  For

purposes of participation in RSU Claims Discovery, "Participant" shall include the attorneys and

advisors for any Participant identified on the Notice of Intent served by the Participant, and

"LBHI" shall include the attorneys and any advisors and any other professionals for LBHI and

its affiliates.  RSU Claimants who do not serve a Notice of Intent by the Notice of Intent

Deadline, except by agreement of the parties or Order of the Court, will not be permitted to

participate in RSU Claims Discovery or take any discovery from LBHI in connection with the

RSU Claims.

(c)    All RSU Claimants shall be entitled to serve a Notice of Intent on or prior to the

Notice of Intent Deadline and shall be permitted to participate in RSU Claims Discovery as of

the date of serving such Notice of Intent.

(d)    LBHI shall have the right to object to Notices of Intent on any and all appropriate

grounds, including, but not limited to those that are, *inter alia,* harassing, or served by persons

that are not RSU Claimants.  Any RSU Claimant or other party who serves a Notice of Intent to

which LBHI successfully objects pursuant to an Order of the Court shall not be permitted to

participate in RSU Claims Discovery or take any discovery from LBHI in connection with the

RSU Claims.

4

(e)     Within seven (7) days of the Notice of Intent Deadline, LBHI shall serve on all

Participants a list of such RSU Claimants and their attorneys, which will be the official service

list for RSU Claims Discovery (the "Original Official Service List").  Within five (5) days of the

August 2012 RSU Claimants' Notice of Intent Deadline, LBHI shall serve an amended official

service list on all Participants.  LBHI shall amend the Official Service List, as necessary, from

time to time, and shall serve the amended service lists on every party on the Official Service List.

Service in connection with RSU Claims Discovery shall be by electronic mail.

(f)     All RSU Claims Discovery shall be subject to and conducted in accordance with

the terms of the Protective Order, attached hereto as Exhibit B and approved by the Court in its

entirety.  In order to participate in RSU Claims Discovery, each Participant and a representative

of each Participant's attorneys and advisors must read and sign the Agreement to abide by the

Protective Order, attached hereto as Exhibit C, and serve a copy upon LBHI's attorneys.  Such

representative must provide the Protective Order to any person that it employs or engages who is

given access to RSU Claims Discovery.  Any Participant (or the attorneys and advisors for any

RSU Claimant who are involved in these Chapter 11 cases) who does not sign the Agreement to

Abide by the Protective Order shall not be permitted to participate in RSU Claims Discovery.

4.      **LBHI's Initial Disclosures.**  No later than 45 days after the Notice of Intent Deadline

(unless an extension is reached by agreement of the parties or ordered by the Court), LBHI shall

make the initial disclosures set forth below to each Participant, except in the case of the August

2012 RSU Claimants, LBHI shall make the initial disclosures set forth below no later than 21

days after the August 2012 RSU Claimants' Notice of Intent Deadline.  With regard to the

Participants who serve a Notice of Intent before the Notice of Intent Deadline, LBHI shall

endeavor to produce the below documents and information prior to the above deadline.

(a)        Documents in LBHI's possession, custody or control setting forth the terms and

conditions applicable to restricted stock units and/or contingent stock awards issued between

2003 and 2008 that can be located after a reasonable search, including, but not limited to, all

operative agreements, amendments, program documents, and policies;

(b)        A confidential report to each individual Participant identifying the plan(s) and/or

programs(s) in which LBHI's business records reflect that he/she had an unvested or unexercised

restricted stock unit or contingent stock award that were issued between 2003 through 2008,

together with information as reflected in statements made available to each Participant during the

years 2003 – 2008, as well as values attributable to his/her restricted stock units and/or

contingent stock awards during that period.

(c)        With respect to Participants who were commissioned sales persons, a confidential

report showing the amounts of commissions during the fiscal year 2008 to be allocated to RSUs

that LBHI anticipated would be awarded in 2008;

(d)        To each Participant who was a former principal of Neuberger Berman Inc.

("Neuberger Berman") and who became a Lehman employee as a result of the merger between

LBHI and Neuberger Berman, (i) any non-solicitation or non-compete agreements signed by the

Participant that can be located after a reasonable search; and (ii) any agreement concerning the

retention bonuses paid to the Participant that can be located after a reasonable search;

(e)        All minutes of Compensation Committee meetings for the years 2003 through

2008 related to the RSU Claims that can be located after a reasonable search;

6

(f)      All employee handbooks from 2003-2008 that can be located after a reasonable search; and

(g)      LBHI's audited annual and quarterly financial statements for the years 2003 through 2008.

5.      **Requested Document Discovery from LBHI.**

(a)      No later than 52 days from LBHI's service of the Original Official Service List, the Participants shall serve consolidated Document Requests relating to the RSU Claims pursuant to Rule 34 of the Federal Rules of Civil Procedures (the "Federal Civil Rules"), as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as part of one of the following groups (each of the foregoing enumerated groups, a "Group" and together, the "Groups"):  (i) Participants who were salaried employees of Lehman and did not become Lehman employees as a result of the merger of LBHI and Neuberger Berman and whose claims are not based on contingent stock awards;  (ii) Participants who were salaried employees of Lehman and did not become Lehman employees as a result of the merger of LBHI and Neuberger Berman and whose claims are based on contingent stock awards; (iii) Participants who were commissioned employees of Lehman (including Participants who have claims relating to commissions earned in fiscal year 2008) and did not become Lehman employees as a result of the merger of LBHI and Neuberger Berman and whose claim is not based on contingent stock awards; (iv) Participants who were commissioned employees of Lehman (including Participants who have claims relating to commissions earned in fiscal year 2008) and did not become Lehman employees as a result of the merger of LBHI and Neuberger Berman and whose claim is based on contingent stock awards; and (v) Participants who became

7

Lehman employees as a result of the merger of LBHI and Neuberger Berman.[3]  Each of the foregoing groups may serve one consolidated Document Request (each, the "Consolidated Request" or collectively, the "Consolidated Requests").  The Participants in each of the foregoing groups shall confer with the members of their respective groups and develop their Group's Consolidated Requests in order to avoid the service of multiple, duplicative document requests and the attendant costs and other burdens imposed on LBHI to respond to such requests.  If the Participants determine that it will be more efficient to serve one set of consolidated Document Requests for all of the Groups or combine the requests of two or more Groups, they may do so, but they must indicate in the Consolidated Requests which requests are made by all of the Participants and which requests are made only by any of the foregoing groups.  No Participant shall waive, or be deemed to have been prejudiced in any way, with respect to, any of his/her rights and legal positions by joining the Consolidated Requests or the designation of the Groups as prescribed in this paragraph.

(b)    No later than 21 days after receiving the Consolidated Requests, LBHI's attorneys shall, if LBHI deems necessary, confer with the Participants and/or Groups concerning the Document Requests.

(c)    Other than in response to reasonably limited, targeted search requests agreed to by LBHI or ordered by this Court, LBHI shall not be required to search for, produce, or identify on any log, documents from the following categories of privileged documents:

(i)    Hard copy and electronic files of in-house counsel and outside counsel;

---

[3] No provision herein shall be construed to preclude any Participant from joining or forming other groups under Bankruptcy Rule 2019 or for any other purpose outside the scope of this Order.   The cooperation of Participants in the manner contemplated by this Order shall not be deemed to constitute the formation or participation in a group within the scope and requirements of Bankruptcy Rule 2019.

(ii)     Documents and communications solely between in-house counsel and outside counsel;

(iii)     Internal documents and communications solely within an outside counsel law firm;

(iv)     Documents and communications solely between or among outside counsel law firms for a single client;

(v)     Documents and communications solely between or among client and inside or outside counsel; and

(vi)     To the extent a request seeks documents prepared or dated after September 15, 2008, internal documents and communications solely with an advisor, except in the case of an advisor designated as a testifying expert.

Nothing in this Paragraph shall modify or expand a Participant's rights or obligations under Rule 26(b)(4)(B) of the Federal Civil Rules.

(d)     Unless the time is extended by agreement or order of this Court, LBHI shall serve written objections and responses to the Consolidated Requests on the Participants no later than 30 days after receiving the Consolidated Requests. Thereafter, LBHI shall begin a rolling production of any non-privileged documents that are not subject to an objection made by LBHI and that are responsive to the Consolidated Requests that can be located after a reasonable search. To the extent that any of the requested documents contains confidential or personal information concerning a particular Participant, LBHI shall produce such documents to the Participant and/or his attorneys only. LBHI shall begin searching for and producing documents as expeditiously as is reasonably practical. LBHI shall produce bate-stamped and/or otherwise uniquely identified documents on a rolling basis and inform Participants from time to time

9

regarding the production and availability of documents.  LBHI shall complete its production of documents no later than 80 days after receiving the Consolidated Requests.

6.    **Data Repository.**

(a)    LBHI shall, to the extent reasonably practical, upload non-privileged responsive documents to one or more online data repositories (collectively, the "Data Repository") on a rolling basis.  The Data Repository review tool shall provide basic functions and features such as searching, printing, and downloading.  All documents responsive to any of the Consolidated Requests will be accessible by all Participants, except for those documents containing confidential or personal information about a Participant.  Documents containing confidential or personal information about a Participant will be produced only to that Participant (whether electronically or otherwise).

(b)    After signing and providing to LBHI's attorneys, the Agreement to Abide by the Protective Order, the Participants will be granted access to the Data Repository.  Each Participant shall, upon request, be given up to three (3) separate login credentials for the Data Repository for the Participant and the attorneys and/or advisors identified in the Notice of Intent served by each Participant.

(c)    LBHI shall have the right to produce documents by other means, including but not limited to, hard copy documents or supervised review of hard copy documents.  LBHI will notify the Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the terms and conditions under which such documents will be made available.  Any Participant may request that any documents or data, including, but not limited to, Microsoft Excel files, that are otherwise responsive to discovery requests be produced in another

format.  Any dispute concerning the production of such documents that is not resolved by a meet and confer process may be brought to the Court's attention in accordance with this Order.

7.      **Requested Document Discovery from the RSU Claimants.**

(a)      No later than 62 days from LBHI's service of the Original Official Service List, LBHI may serve Document Requests relating to the RSU Claims pursuant to Rule 34 of the Federal Civil Rules, as incorporated by Rules 7034 and 9014 of the Bankruptcy Rules, on the Participants.

(b)      No later than 21 days after receiving LBHI's Document Requests, the Participants or any of the Groups shall, if they deem necessary, confer with LBHI concerning the Document Requests.

(c)      The Participants shall not be required to search for, produce, or identify on any log, documents from the following categories of privileged documents:

(i)      Hard copy and electronic files of the Participants' attorneys;

(ii)      Internal documents and communications solely within the law firm(s) representing the Participants;

(iii)      Documents and communications solely between or among law firms representing the Participants and Participants appearing *pro se;* and

(iv)      Documents and communications solely between or among the Participants and their counsel.

Nothing in this Paragraph shall modify or expand a LBHI's rights or obligations under Rule 26(b)(4)(B) of the Federal Civil Rules.

11

(d)    Unless the time is extended by agreement or order of this Court, the Participants shall serve written objections and responses to LBHI's Document Requests no later than 30 days after receiving LBHI's Document Requests.  The Groups shall confer to develop consolidated responses to LBHI's Document Requests (the "Consolidated Responses").  The Consolidated Responses must specify any objections or responses made by less than all of the Participants, and the Participants making those objections or responses.  Thereafter, the Participants shall begin a rolling production of any non-privileged documents that are not subject to an objection made by the Participants and that are responsive to the LBHI's Document Requests that can be located after a reasonable search.  The documents may be produced in electronic form in accordance with the specifications set forth in Exhibit D, or in hard copy.  If reasonably practical, LBHI may upload the documents produced by Participants to the Data Repository.  The Participants shall begin searching for and producing documents as expeditiously as is reasonably practical.  The Participants shall produce bate-stamped and/or otherwise uniquely identified documents on a rolling basis and inform LBHI from time to time regarding the production and availability of documents.  The Participants shall complete their production of documents no later than 80 days after receiving LBHI's Document Requests.

8.    **Privilege Log.**

(a)    Except for the categories of documents identified in Section 4(g) above, if LBHI withholds any documents on the grounds of privilege, work product, or any other type of protection or immunity from disclosure, LBHI shall provide the Participants with a privilege log consistent with Rule 26(b)(5) of the Federal Civil Rules, as incorporated by Bankruptcy Rules 7026 and 9014.

(b)      Except for the categories of documents identified in Section 6(c) above, if a

Participant withholds any documents on the grounds of privilege, work product, or any other

type of protection or immunity from disclosure, he/she shall provide LBHI with a privilege log

consistent with Rule 26(b)(5) of the Federal Civil Rules, as incorporated by Bankruptcy Rules

7026 and 9014.

9.      **Interrogatories and/or Request for Admissions Served on LBHI.**

(a)      No later than 62 days from LBHI's service of the Original Official Service List,

the Participants may collectively serve upon LBHI's attorneys no more than 60 (except by the

parties' agreement or order of the Court) written Interrogatories (including all subparts) and such

Requests for Admission as may be reasonably necessary to establish document admissibility,

relating to the RSU Claims, pursuant to Rules 33(a)(1) and Rule 36 of the Federal Civil Rules, as

incorporated by Bankruptcy Rules 7033, 7036, and 9014.  The Interrogatories shall be limited to

identification and authentication and shall not include contention interrogatories.  The

Participants shall confer among themselves to determine the content and scope of the

Interrogatories and/or Request for Admissions.

(b)      Unless the time is extended by agreement or order of this Court, LBHI shall serve

written objections and responses to the above Interrogatories and/or Request for Admissions on

the Participants no later than 30 days after they have been served on LBHI's attorneys.

10.      **Interrogatories and/or Request for Admissions Served on the RSU Claimants.**

(a)      No later than 62 days from LBHI's service of the Original Official Service List,

LBHI shall serve on the Participants no more than 60 (except by the parties' agreement or order

of the Court) written Interrogatories (including all subparts) and such Requests for Admission as

may be reasonably necessary to establish document admissibility, relating to the RSU Claims,

pursuant to Rules 33(a)(1) and Rule 36 of the Federal Civil Rules, as incorporated by Bankruptcy

Rules 7033, 7036, and 9014.  The Interrogatories shall be limited to identification and

authentication and shall not include contention interrogatories.

(b)      Unless the time is extended by agreement or order of this Court, the Participants

shall serve written objections and responses to the above Interrogatories and/or Request for

Admissions on LBHI 30 days after they have been served on the Participants.  The Participants

shall confer to develop their group's consolidated responses to LBHI's Interrogatories and/or

Request for Admissions.

11.      **Rule 30(b)(6) Deposition of LBHI**.

(a)      No later than 14 days after document production is complete, the Participants may

collectively serve one (1) Notice for Deposition upon the Debtors pursuant to Rule 30(b)(6) of

the Federal Civil Rules, as incorporated by Bankruptcy Rules 7030 and 9014, seeking deposition

testimony regarding the RSU Claims (the "Joint Notice").  The Participants shall confer

regarding topics for the Rule 30(b)(6) deposition prior to serving the Joint Notice.

(b)      Within 30 days of receiving the Joint Notice (unless extended by agreement of the

parties or further order of the Court), LBHI shall serve any responses and objections to the Joint

Notice, together with a list of designated witnesses for each of the noticed Rule 30(b)(6) topics to

which LBHI does not object, and the dates and locations when such witnesses will be made

available to be deposed.  Participants and LBHI will confer to resolve any disputes regarding

14

topics in the Joint Notice. The deposition of LBHI must be completed no later than 30 days after LBHI serves the list of designated witnesses.

12. **Depositions of the RSU Claimants.** No later than 14 days after receipt of the Joint Notice, LBHI may serve deposition notices on any of the Participants, seeking deposition testimony regarding the RSU Claims, to be scheduled no later than 45 days after LBHI serves the deposition notices. Considering the international nature of LBHI's business and the small size of many of the RSU Claims, the Court anticipates that many Participants who are not residents of or employed in the City of New York may request that the deposition take place by telephone or other remote means. See Fed.R.Civ.P. 30(b)(4) & 31. The Court also anticipates that the parties will stipulate to mutually agreeable arrangements pursuant to Fed.R.Civ.P. 29. This Order creates no presumption either against such stipulations or in favor of depositions taking place in New York.

13. **Discovery Disputes.** Any dispute with regard to RSU Claims Discovery that cannot be resolved in good faith consultation with LBHI may be presented to the Court by a letter from the party seeking relief, and all participating parties copied. If any Participant has a dispute or objection regarding these discovery procedures that does not concern any other Participant that cannot be resolved in good faith consultation with LBHI, that Participant may present the issue to the Court by letter and copy LBHI only and not copy any other of the Participants. Any response to the above letters shall be made by letter to the Court delivered within five (5) business days after service of the initial letter submission on the applicable parties. Except with prior leave of Court, no letter shall exceed three (3) pages in length, and no additional submissions will be permitted. LBHI will communicate with the Court about scheduling status conferences/hearings during which discovery disputes will be heard.

14.    **Status Updates and Completion of Discovery.**  LBHI shall communicate with the Court periodically to provide it with updates on the status of discovery.  Within 10 days after the completion of discovery, the parties shall attempt to jointly recommend to the Court proposed procedures for the evidentiary hearing(s) on the RSU Claims, including Stipulations of Fact and procedures for the exchange of Declarations of LBHI or any RSU Claimant.  To the extent that agreement cannot be reached, any party can submit its own proposed procedures.

15.    **Non-Waiver of Privilege.**  The inadvertent production by LBHI or any Participant of any privileged document or information or any other document or information otherwise precluded or protected from disclosure, in response to any discovery requests shall not be deemed a waiver of any applicable privilege or immunity with respect to such document or information (or the contents or subject matter thereof) or with respect to any other document or discovery.  Any such produced privileged or protected document must immediately be destroyed or returned (whether or not the receiving party disputes the claim or privilege) to the producing party on request or upon discovery of such inadvertent production by the receiving party, and the receiving party shall certify that all copies of such produced privileged or protected document has been destroyed or returned.

16.    **Use of Materials Produced.**  LBHI and Participants shall have the right to object to any request for documents on the grounds that such request appears to be calculated for use in proceedings other than those related to the RSU Claims.  In addition, absent further Order of the Court, no discovery or information obtained pursuant to this Order may be introduced in evidence or otherwise disclosed in any other matter or proceeding, other than other contested matters or adversary proceedings between LBHI and an RSU claimant arising out of these

16

Chapter 11 cases, unless properly obtained through discovery or otherwise in such matter or

other proceeding.

17.    **No Legal Representation Implied by Participation**.  For the avoidance of doubt,

neither any provision of this Order nor the participation or activity by any attorney in any aspect

of RSU Claims Discovery (including, without limitation, the activity of an attorney for a

Participant in connection with the service of consolidated Document Requests as contemplated

by section 4 hereof) shall be deemed or construed to create an attorney-client relationship

between any attorney and any Participant, and no attorney participating in RSU Claims

Discovery shall have any duty or obligation to any Participant other than the represented

Participant indicated on the Notice of Intent served by such attorney.

18.    **Jurisdiction.**  The Court shall retain jurisdiction over any matters related to or arising

from the implementation of this Order.


Dated: New York, New York
         November 28, 2012


                                    *s/ James M. Peck*
                                    Honorable James M. Peck
                                    United States Bankruptcy Judge

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                      :      Chapter 11 Case No.
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*     :      **08-13555 (JMP)**
                                                           :
                                        **Debtors.**       :      **(Jointly Administered)**
-------------------------------------------------------------------x


### NOTICE OF INTENT TO PARTICIPATE IN DISCOVERY IN CONNECTION WITH OMNIBUS OBJECTIONS TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS


NOTICE IS HEREBY GIVEN that _____, represented by _____, has filed Claim(s) Number(s) _____ against _____ in the amount of _____ in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and intends to participate in discovery in connection with the Debtors' and LBHI's Omnibus Objection(s) to such claim(s).  The employee identification number for the above-named party while employed by LBHI and/or its affiliates was _____ .

ACCORDINGLY, PLEASE TAKE FURTHER NOTICE that, subject to any objections by LBHI and/or any limitations imposed by the Court, the above-named party and his/her counsel intends to participate in RSU Claims Discovery, as defined in the Order Establishing Discovery Procedures in Connection with Omnibus Objections to Reclassify Proofs of Claim as Equity Interests, entered by the Court on _____ [ECF No. ___].

Dated: _____          _____


**Contact Information for RSU Claimant (address, phone and email):**
_____
_____
_____
_____


**Contact Information for Attorneys for RSU Claimant (address, phone and email):**
_____
_____
_____
_____


1

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                        :       **Chapter 11 Case No.**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :       **08-13555 (JMP)**
                                                             :
                              Debtors.             :       **(Jointly Administered)**
-------------------------------------------------------------------x

## PROTECTIVE ORDER

In conjunction with the Order,[4] it is ORDERED by the Court that RSU Claims Discovery conducted in accordance with the Order shall be conducted subject to the following terms and provisions set forth in this Protective Order; that all documents, deposition testimony, interrogatory answers, and other information produced, given, provided or exchanged in connection with RSU Claims Discovery (the "Discovery Materials") and/or the Participants (collectively, "Producing Parties") shall be and are subject to this Protective Order in accordance with the following procedures, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9018, to protect the confidentiality of sensitive information; and that, by signing the Agreement to Abide by the Protective Order, signatories (each a "Signatory") have consented to this Protective Order and agree to be bound by its terms:

1.       Any Producing Party or Receiving Party (defined in paragraphs 10-12 below) may, as reasonably appropriate, designate any Discovery Material as "Confidential" in accordance with the terms below.  A party who designates Discovery Material as "Confidential" is a "Designating Party."  Where the Receiving Party is also the Designating Party, the

---

[4] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the order entered by the Court (the "Order") to which this Protective Order (the "Protective Order") is annexed.

confidentiality obligations of the Receiving Party set forth in this Protective Order shall be the

obligations of the Producing Party.

2.      All documents produced that are not designated "Confidential" at the time

of production shall be treated as Confidential under this Protective Order for 14 days following

the production of such documents, after which only the documents designated "Confidential"

shall be treated as such.

**Confidential Information**

3.      As used in this Protective Order, "Confidential Information" refers to all

Discovery Material revealed or produced by a Producing Party (whether in response to a

Document Request, Interrogatory, Request for Admissions, Deposition, other discovery device

or otherwise) that is designated as "Confidential."  This designation will, without more, subject

the designated material or information to the provisions of this Protective Order; and such

Confidential Information will be protected by, and may be used and disposed of only in

accordance with, the provisions of this Protective Order.

4.      Any Producing Party may designate any Discovery Material as

"Confidential" under the terms of this Protective Order if the Producing Party in good faith

reasonably believes that the Discovery Material contains confidential, proprietary or

commercially sensitive non-public information that requires the protections provided in this

Protective Order.  For purposes of this Protective Order, Confidential Information includes, but

is not limited to all non-public materials containing information related, but not limited, to:  (i)

financial or business plans, projections or valuations; (ii) proposed strategic transactions and

other business combinations, negotiations, inquiries or agreements, including, but not limited to,

joint ventures, mergers, material asset sales, purchases, buy-outs, consolidations, transfers of

2

interests and partnerships; (iii) studies or analyses by internal or outside experts or consultants;

(iv) financial or accounting results or data; (v) business, management and marketing plans and

strategies; (vi) acquisition offers and expressions of interest; (vii) contracts or agreements with or

among affiliates, partners or Producing Parties; and (viii) personal information that may cause an

individual, whether affiliated with a Producing Party or a Receiving Party, to be exposed to an

unreasonable risk of identity theft, such as social security numbers, bank account numbers, dates

of birth, drivers' license numbers, or passport numbers.

**Designation of Deposition and Hearing Testimony**

5.      Any Producing Party may designate a document as "Confidential" by

affixing the legend "Confidential" to each page requiring the protections provided in this

Protective Order in addition to an appropriate bates-stamp designation indicating the Producing

Party.

6.      For transcripts of depositions or other testimony given in pretrial

proceedings, any Producing Party may designate the specific testimony as "Confidential" either

on the record at the deposition or other proceeding, or in writing served on all parties no later

than seven (7) days following the date on which attorneys for the Producing Parties have

received the final version of the transcript of the deposition or other proceeding.  If information

designated as Confidential will be disclosed or discussed at a deposition, the Designating Party

shall have the right to exclude any person not entitled to have access to such information, other

than the deponent or witness, the attorney(s) of record (including their staff and associates),

official court reporter, and stenographer and/or videographer.

7.      All documents, including pleadings, motions and other papers, containing,

identifying, or referencing Confidential Information filed with the Court shall be filed under seal,

3

simultaneously with a redacted public copy of such pleadings, motions, and/or other papers,
redacting only the information that is designated "Confidential."  Any Receiving Party intending
to use Confidential Information at any hearing in connection with the RSU Claims agrees to
meet and confer in good faith with the Designating Party about the appropriate steps that may be
taken to protect the confidentiality of such material, including, but not limited to, agreeing to
redact such Confidential Information.  Such meeting shall take place as soon as reasonably
practicable, but no later than the date of the hearing at which the document will be used.

8.      All transcripts not previously designated as "Confidential" shall be treated
as "Confidential" under this Protective Order for the seven (7)-day period following receipt of
the final version of the transcript and exhibits by attorneys for the Producing Parties, after which
time only the portions specifically designated as "Confidential" pursuant to Paragraph 4 of this
Protective Order shall be so treated.

9.      The court reporter shall bind transcript pages containing Confidential
Information separately and shall prominently affix the legend "Confidential" to each appropriate
page, as instructed by the Designating Party.

**<u>Access to Confidential Information</u>**

10.      Receiving Parties shall permit access to Confidential Information only to
persons specified in this Protective Order.  For purposes of this Protective Order, the term
"Receiving Party" shall be a party to whom Discovery Materials are produced, and may be either
an RSU Claimant, LBHI, an affiliate of LBHI, or any person identified below in Paragraphs 11
and 12 of this Protective Order who receives Confidential Information from a Receiving Party as
permitted by this Protective Order.

4

11.     Confidential Information may be disclosed, summarized, described, characterized or otherwise communicated or made available in whole or in part by a Receiving Party only to the following persons:

a.     Outside attorneys of record, attorneys  or accountants serving as a trustee, curator or other fiduciary of an affiliate of LBHI, attorneys working with LBHI and its affiliates in connection with the RSU Claims, and those in-house attorneys who represent the Receiving Party in matters related to the RSU Claims, as well as attorneys, clerical, paralegal, other staff and agents of those employed by or working with such attorneys or accountants whose functions require access to Confidential Information;

b.     Any person indicated on the face of a document to be the author, addressee, or an actual or intended recipient of the document;

c.     Outside experts, consultants, and/or financial advisors for the Receiving Party whose advice and consultation are being or will be used by the Receiving Party in connection with the RSU Claims, as well as stenographic and clerical employees and agents of those experts or consultants whose functions require access to Confidential Information; provided that counsel desiring to disclose Confidential Information to such experts or consultants and their employees or agents shall first obtain a signed Agreement to Abide by the Protective Order from each such expert or consultant and each of his/her personnel who would require access to Confidential Information, and counsel shall retain in his/her file an

5

original or copy of each such signed Agreement to Abide by the Protective

Order;

d.     The Court and its authorized staff, including official and freelance court

reporters and videotape operators hired by the Receiving Party;

e.     Officers, directors or employees of the Receiving Party and its affiliates

who are assisting the Receiving Party's attorneys with matters related to

the RSU Claims;

f.     To the extent not otherwise covered by this Section, any potential witness

or deponent and counsel for such witness or deponent, during the course

of any testimony, including at any deposition, hearing or trial, and to the

extent necessary, during any preparation for such testimony relating to the

RSU Claims.  Except when the Confidential Information is first exhibited

at a deposition, hearing or trial to such person(s), counsel desiring to

disclose Confidential Information to such persons shall (i) first obtain a

signed Agreement to Abide by the Protective Order, and such counsel

shall retain a copy of each executed Agreement to Abide by the Protective

Order;  or (ii) represent on the record at the deposition, hearing, or trial

that such person(s) have read and agreed to the Agreement to Abide by the

Protective Order;

g.     Professional vendors to whom disclosure is reasonably necessary for RSU

Claims Discovery, provided they are informed that the material is

Confidential Information;

h.      Any other person upon agreement among LBHI, the Participants, the

Designating Party, and/or the Receiving Party, provided that such person

shall first execute the Agreement to Abide by the Protective Order, a copy

of which shall be retained by counsel for both Parties; and

i.      Any other person, only upon order of the Court.

12.      <u>Access to Protected Material</u>:  Only persons authorized to receive

Confidential Information under this Protective Order shall have access to such material.

Receiving Parties shall not provide access to or disclose Confidential Information to any person

not authorized to access such material under this Protective Order.  Receiving Parties shall store

all Confidential Information that they receive in a secure manner.  Receiving Parties are barred

from using Confidential Information except in connection with the RSU Claims and only for the

purposes permitted by the Protective Order and the Order.   If Confidential Information is

disclosed to any person other than in a manner authorized by this Protective Order, the disclosing

party shall, immediately upon learning of such disclosure, inform the Designating Party of all

pertinent facts relating to such disclosure and shall make reasonable efforts to retrieve the

Confidential Information and to prevent disclosure by each unauthorized person who received

such information.

13.      <u>No Restrictions on Use of Public or Own Information</u>:  Notwithstanding

any other provision of this Protective Order, this Protective Order does not restrict in any way a

Participant's or non-Participant's use of:

a.      Its own information or its right to provide such information to any other

person, even if others have designated similar or identical information as

Confidential Information.  A person's use or disclosure of its own

7

information shall not waive the protections of this Protective Order, and

shall not entitle any Participant or non-Participant to use or disclose such

Discovery Materials, or the contents thereof, in violation of this Protective

Order, unless such disclosure of a person's own information causes the

Confidential Information to become available to the public;

b.    Information that is in the public domain or becomes public without

violation of this Protective Order; and

c.    Information that a Participant or non-Participant develops or obtains

through proper means without violation of this Protective Order.

**Use of Discovery Materials**

14.    Receiving Parties shall use Confidential Information produced during

RSU Claims Discovery only for matters related to the RSU Claims or in other contested matters

or adversary proceedings between LBHI and an RSU Claimant arising out of these Chapter 11

cases.  Confidential Information shall not be made public by any Receiving Party, shall be used

only by persons permitted access to it as provided for in this Protective Order, and shall be

disclosed only to persons specified herein.

15.    Nothing herein shall prevent disclosure beyond the terms of this Protective

Order if the Designating Party specifically consents in advance in writing to such disclosure, or if

the Court, after notice to all parties, orders such disclosure.

**Inadvertent Failure to Designate**

16.    An inadvertent failure to designate qualified information disclosed or

otherwise produced or generated by a Producing Party as "Confidential" does not waive the

Producing Party's right thereafter to designate Discovery Material as "Confidential" under this

Protective Order unless such information has become available to the public.  Upon receipt of

8

such designation, each Receiving Party must make reasonable efforts to ensure that the material

is treated in accordance with the provisions of this Protective Order.  The Designating Party shall

promptly produce new copies of the material at issue, with the proper designation, after which

Receiving Parties shall promptly destroy the copies with the improper designation and shall

request that all persons to whom the Receiving Party has provided copies do likewise.  The

Receiving Party shall inform the Designating Party when destruction of such copies has been

completed.

**Non-Waiver of Privilege**

        17.    Nothing in this Protective Order shall preclude any objection to the

disclosure of information by a Producing Party on the ground that such information is protected

or prohibited from disclosure by the attorney-client privilege, the joint client privilege, the

community of interest privilege, the work-product immunity, or any other legally cognizable

privilege, immunity or protecting including without limitation any applicable U.S. or foreign

data privacy laws.  If information protected or prohibited from disclosure is inadvertently or

mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver

of, or estoppel as to, any claim of privilege or work-product immunity for such information or

any other information that may be protected from disclosure by the attorney-client privilege, the

work-product immunity, or any other legally cognizable privilege or protection.  If a Producing

Party has inadvertently or mistakenly produced Discovery Material that contains information

protected or prohibited from disclosure, then upon request by the Producing Party after the

discovery of such inadvertent or mistaken production, the Receiving Party shall use all

commercially reasonable efforts to return or destroy the Discovery Material for which a claim of

inadvertent production is made and all copies of it, including any work product containing,

identifying, or referencing such Discovery Material, within seven (7) days of such request, and

the Receiving Party shall not use such Discovery Material for any purpose other than in

connection with a motion to compel production of the Discovery Material.  The Receiving Party

returning such Discovery Material may then move the Court for an order compelling production

of the Discovery Material, but that motion shall not assert as a ground for entering such an order

the fact or circumstance of the inadvertent production of the Discovery Material.

**Relief**

18.     This Protective Order shall not prevent any party from applying to the

Court for relief therefrom, or from applying to the Court for further or additional protective

orders.

19.     Nothing in this Protective Order shall prevent any Signatory from

producing documents received subject to this Protective Order and that are in his, her or its

possession, to another person in response to a subpoena or other compulsory process.  Unless

prohibited from doing so by applicable law, prompt written notice as soon as practicable under

the circumstances shall be given to the Designating Party before production or other disclosure is

to be made.  The party producing the documents subject to this Protective Order shall reasonably

cooperate with the Designating Party to obtain an appropriate protective order or other reliable

assurance that confidential treatment will be accorded to the Confidential Information being

produced.

**Objections to Designations**

20.     If any Receiving Party objects to the designation of any Discovery

Material as "Confidential," the Receiving Party shall first identify the specific material as to

which it objects as well as the basis for the objection in writing to the Designating Party.  Such

10

parties shall confer in good faith to attempt to resolve any dispute regarding any such designation.  If such parties are unable to resolve such dispute, the objecting party may seek appropriate relief from the Court, in accordance with Paragraph 18 of this Protective Order; provided, however, that all Discovery Material to which the objection applies shall continue to be treated by Receiving Parties as Confidential Information, as designated by the Designating Party, in accordance with this Protective Order, until such objection is resolved.  No Signatory shall contest an objecting party's request for reasonably expedited consideration for such relief.

**Appeal**

21.     In the event that any Signatory appeals from any decision of the Court relating to RSU Claims Discovery, such Signatory shall file an application to the appropriate appellate court, within seven (7) days of the filing of the notice of appeal, to maintain under seal any Discovery Material filed with the appellate court that contains or discloses Confidential Information.  The provisions of this paragraph may be waived only with the written consent of the Designating Party.

**Scope of Protective Order**

22.     In the event that any Confidential Information is used in any court proceeding relating to the RSU Claims, that material shall not lose its status as Confidential Information through such use and such use shall remain subject to the terms of this Protective Order.

23.     Nothing in his Protective Order shall require any Producing Party to respond to discovery in any manner, including by producing documents, that would cause such Producing Party to violate any statute, regulation, or rule, including, without limitation, any international or foreign privacy laws, to which such Producing Party is subject.

11

24.     This Protective Order does not alter, modify, or expand any obligation or duty of any party to produce any Confidential Information.

25.     Nothing herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at the trial of any action relating to the RSU Claims.

## Modification

26.     No modification of this Protective Order shall be binding or enforceable unless in writing and signed by LBHI and the Participants, or by further order of the Court.

## Choice of Law

27.     This Protective Order shall be governed and construed in accordance with the laws of the State of New York.

## Jurisdiction

28.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of the Protective Order.

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x
In re                                                    :          **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :          **08-13555 (JMP)**
                                                         :
                       **Debtors.**                      :          **(Jointly Administered)**
---------------------------------------------------------------------x


<u>**AGREEMENT TO ABIDE BY THE PROTECTIVE ORDER**</u>

I hereby certify that I have read the Protective Order[5] SO ORDERED by the

Court in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") on August __, 2012

[ECF No. ___].  I further certify that I understand the terms and provisions of the Protective

Order and agree to be fully bound by them, and hereby submit to the jurisdiction of the United

States Bankruptcy Court for the Southern District of New York for purposes of the Protective

Order's enforcement.  I understand and agree, in particular, that I may not use any Confidential

Information, or any copies, excerpts or summaries thereof, or materials containing Confidential

Information derived therefrom, as well as any knowledge or information derived from any of

these items, for any purpose other than matters related to the RSU Claims or other contested

matters or adversary proceedings between LBHI and an RSU Claimant arising out of these

Chapter 11 Cases, in accordance with the provisions of the Protective Order, including, without

limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order

---

[5] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the
Protective Order.

1

may result in legal action against me, such as for contempt of court and liability for monetary

damages.


Dated: _____        Agreed: _____

                                       [PARTICIPANT'S NAME & ADDRESS
                                       AND, IF REPRESENTED BY COUNSEL,
                                       ATTORNEY'S NAME AND ADDRESS]

# EXHIBIT D

**Technical Specifications for Documents to be Produced to LBHI**

Participants producing documents to LBHI must produce documents in the following electronic formats:

1.  *Emails*.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached. Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

2.  *Electronic Documents*.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT). Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a need for such native files.

3.  *Hard copy documents*.  If reasonably practicable, hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

4.  *TIFF Images Generally*.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif'"" and (b) text files, named after the bates

1

number of the document, with extension ".txt". TIFF images may not be

compressed using JPEG compression. For instances in which the original file is

in color and the color is necessary for interpretation of the document (charts,

pictures, etc.), produce medium quality JPEG in place of single page tiff file.

Metadata shall be provided in a delimited file with a ".dat" file extension and

ASCII 020 and 254 delimiters for column break and text qualifier. The first line

shall be the header with field names, and each subsequent line shall contain the

fielded data for each document.

5.    *Shipment of electronic data.* Electronic data productions may be transmitted

electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or

physically transported using electronic storage media such as, CDs, DVDs or hard

drives. The physical media label should contain the case name and number,

production date, and bates range being produced. Each transmission of data

should include a collection "manifest" report which provides a list of files

collected, their location, and their MD5 hash values.

2

**Appendix 1**

| Field | Description |
|---|---|
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached document in family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| EMail_Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |
| TimeLastMod | Time native file was last modified. |
| PgCount | Number of pages in a document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |