SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz
Theodore A.B. McCombs

*Attorney for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

―――――――――――――――――――――――――――

**OBJECTION OF GIANTS STADIUM LLC**
**TO DEBTORS' MOTION TO AMEND ALTERNATIVE DISPUTE**
**RESOLUTION PROCEDURES FOR CLAIMS AGAINST DEBTORS**

Giants Stadium LLC ("GSLLC") hereby objects to the Motion of Lehman Brothers Holdings Inc. ("LBHI," together with its affiliated debtors, the "Debtors") for an Order Amending the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures ("ADR Procedures") for Claims against Debtors ([Dkt. No. 32212], the "Motion"), which seeks to remove the 120-day time limit for the duration of a mandatory, pre-litigation mediation. The Debtors offer scant justification for this amendment, which grants Debtors unwarranted leverage over claimants who have waited years to be heard on their claims.

BACKGROUND

1.  GSLLC's claims in this bankruptcy ("Claims") arise from two ISDA swap transactions entered into by GSLLC and certain of the Debtors. These swap transactions were a critical part of GSLLC's portion of the financing of the New Meadowlands Stadium, in which, among other things, the New York Football Giants play their home games. On September 22, 2009, GSLLC filed claims against Debtors based on the termination of the swaps arising from Debtors' bankruptcy and default.

2.  In the more than three years since GSLLC filed its original claims, it has engaged in significant amounts of consensual ADR, including a formal mediation in February 2012 with Judge Ralph Mabey and subsequent informal negotiations through September 2012. This effort has been unsuccessful in resolving the Claims.[1]

3.  Over these three years, Debtors have delayed objecting to the Claims, and in the meantime reaped the advantages of delay, such as one-sided discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure. The Court recently granted GSLLC relief on this matter, recognizing that "the 2004 dance that we're engaged in necessarily has tactical aspects to it" and that the dispute "has to come to a conclusion," even if the conclusion is litigation. (11/14/12 Tr. at 58:11-12, 59:22-25.) The Court also observed that GSLLC's Claims will likely end up as a contested matter or adversary proceeding one way or another. (*Id.* at 58:3-7.)

---

[1] GSLLC reserves the right to seek relief from the imposition of mandatory mediation, if Debtors attempt such an imposition, on the basis of this failed mediation. *See Wells Fargo Bank Minn., N.A.* v. *Kobernick*, No. 08-1458, 2009 U.S. Dist. LEXIS 81703, at *3 (S.D. Tex. Aug. 26, 2009) (declining to compel ADR process where parties had already conducted an unsuccessful mediation).

2

4.     Six days later, on November 20, 2012, Debtors filed the Motion, seeking to amend the ADR Procedures applicable to claims against the bankruptcy estate [Dkt. No. 8474].[2] Under the ADR Procedures in place since April 19, 2010, Debtors may force claimants against the estate into a mandatory, non-binding mediation before resolving claims through the litigation process; such mediation will, however, terminate within 120 days "unless otherwise agreed to by the parties and the Mediator," or earlier if one party requests termination and the Mediator agrees. (ADR Procedures, p. 8.) The present Motion seeks to eliminate the 120-day time limit for mandatory mediation (which Debtors call the "Mediation Cap"), leaving claimants faced with the prospect of indefinite mediation unless and until they can convince the mediator to end mediation.

<u>ARGUMENT</u>

5.     The Motion's proposed amendment to the ADR Procedures would grant Debtors unwarranted leverage over estate claimants by giving them additional power to delay indefinitely the resolution of claims. The amendment would prejudice creditors who already have waited for years for any progress on their claims, and the threat of further delay puts the Debtors in an unjustifiably improved position.

6.     Until the advent of litigation, in which debtors and claimants stand on a more equal footing, a debtor enjoys considerable procedural advantage in managing the calendar, taking Rule 2004 discovery, and other matters. Delay likewise allows debtors to retain cash on hand and otherwise allocate resources advantageously. But for claimants, delay leads to stale evidence, mounting attorneys' fees, and continuing effects

---

[2]   A distinct set of ADR procedures (the "Affirmative ADR Procedures" [Dkt. Nos. 5207, 14789, and 27698]) govern the resolution of claims brought *by* the Debtors against counterparties to derivative contracts.

3

from the uncompensated losses underlying their claims.  *See, e.g.*, *In re Anderson*, 349 B.R. 448, 459-60 (E.D. Va. 2006) (noting prejudice of indefinite delay where bankruptcy proceedings turned critically on witnesses' recollections and creditors had been seeking relief for five years); *Karimona Invs. Llc* v. *Weinreb*, No. 02-1792, 2003 U.S. Dist. LEXIS 3324, at *10-11 (S.D.N.Y. Mar. 6, 2003) (denying stay of deposition, noting harm to plaintiff and tactical advantage to defendant of indefinite delay).  These disparities grant debtors tangible leverage over claimants, in negotiations and otherwise, when debtors can delay litigation.[3]

7. The Debtors offer scant justification for such prejudice to claimants, or for why debtors should get the power to use the mediation process to indefinitely delay litigation.  Indeed, if one examines the precedents Debtors cited to the Court in their original motion to authorize the ADR Procedures ([Dkt. No. 7581], at 15), each of these precedents incorporated a time limit on mediation, either by scheduling a "one-shot" mediation conference, or by imposing time limits on the mediation, or both.  *Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2010) [Dkt. No. 5037]; *Delphi Corp.*, Case No. 05-44481(RDD) (Bankr. S.D.N.Y. Dec. 6, 2006) [Dkt. No. 6089]; *In re Enron Corp.*, *et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Mar. 4, 2003) [Dkt. No. 9533] and (Bankr. S.D.N.Y. Mar. 20, 2003) [Dkt. No. 9862]; *In re Ames Department Stores, Inc.*, *et al.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. Jun. 25,

---

[3] Debtors point to the provision that a claimant may terminate mediation with the consent of the mediator (Motion at 7), and would presumably argue that the mediators appointed by the Court would not force unwilling parties to mediate past 120 days.  Such an argument is unavailing, as under the current claim ADR Procedures, an unwilling party already may terminate the mediation, while willing parties may extend mediation past 120 days with the consent of the mediator.  (*See infra* ¶ 10.)

4

2007) [Dkt. No. 3195]. Likewise, General Order M-390 of this Court contemplates one mediation conference and, in any event, a resumption of litigation along the original case calendar if the mediation fails. (Bankr. S.D.N.Y. Gen. Order M-390, at 5-6.) *See also In re Atl. Pipe Corp.*, 304 F.3d 135, 147-48 (1st Cir. 2002) (requiring mandatory mediation order to set an "outside time limit" because an "unsuccessful mediation will postpone the ultimate resolution of the case"); *In re Sosa*, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) (approving ADR program that set "specific time frames" rather than allow the mediation process to "just drift").

8.  The only reason Debtors have offered for their attempt to deviate from these precedents is their own "reluctance" to commence mediations "because of the chilling effect the Mediation Cap imposes." (Motion, at 4.) According to Debtors, claimants will not meaningfully engage in mediation—despite having every financial and strategic incentive to do so—if they can wait 120 days for the mediation to expire. (*Id.* at 5.)

9.  Debtors offer no evidence for this "chilling effect," noting only that they have succeeded in consensually resolving claims under a *different* set of procedures, the Affirmative ADR Procedures. (*Id.* at 6.) Debtors cite 88 successful mediations between Debtors and defending counterparties under the Affirmative ADR Procedures, which do not impose any time limit, and point out that 30 of these mediations lasted beyond 120 days. (*Id.*) But the *lack* of a "chilling effect" under the Affirmative ADR Procedures is not evidence of a "chilling effect" in the current claims ADR Procedures.[4]

---

[4] In the affirmative ADR proceedings, moreover, both parties have an incentive to move claim resolution forward: the Debtors, to collect payment, and the counterparties,

(*footnote continued . . .*)

10. Presumably, parties who are engaged in productive mediation have every incentive to stay in mediation, and would agree to extend mediation beyond a 120-day time limit. If they do not, then one may presume conversely that mediation is not the appropriate means to resolve the dispute. *See In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374, 383 (S.D.N.Y. 2011) ("[U]ltimately, mediation will only succeed if the parties themselves want it to, and a court's order to mediate—even in good faith—will not change the mind of [a] party who believes that settlement is not in [its] best interest").

11. In short, the present Motion attempts to increase Debtors' negotiating leverage and procedural advantages based on no more than a speculative concern.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, GSLCC respectfully requests that the Court deny the Debtors' Motion to amend the ADR Procedures. In the alternative, GSLLC respectfully requests that it be exempted from the effect of the amendment, in the event the Debtors attempt to invoke the ADR Procedures against GSLLC, on the basis of its previous unsuccessful mediation with Debtors.

Dated: New York, New York
      November 29, 2012

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:  /s/
      Bruce E. Clark
      Matthew A. Schwartz
      Theodore A.B. McCombs

---

(*. . . continued footnote*)
to close the matter and stop incurring costs in fees and management time. Here, however, the Debtors have a stronger incentive to delay claim resolution and gain advantage.

6

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorney for Giants Stadium LLC*