Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555-jmp

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS, INC.,

8

9           Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13               U.S. Bankruptcy Court

14               One Bowling Green

15               New York, New York

16

17               November 20, 2012

18               10:02 AM

19

20   B E F O R E :

21   HON JAMES M. PECK

22   U.S. BANKRUPTCY JUDGE

23

24

25

1    Hearing re:  Doc# 30145 Notice of Adjournment of

2    Hearing/Notice of Further Adjournment of Debtors Two Hundred

3    Sixty-Eighth Omnibus Objection to Claims (Duplicative

4    Claims)

5

6    Hearing re:  Doc# 32032 Notice of Adjournment of Hearing of

7    Merits Hearing with Respect to Proofs of Claim 55396, 41225,

8    and 60352

9

10   Hearing re:  Doc# 29954 Third Notice of Adjournment of

11   Hearing of Two Hundred Forty-First Omnibus Objection to

12   Claims (No Liability Claims) Solely as to Certain Claims

13

14   Hearing re:  Doc# 31315 Motion for Omnibus Objection to

15   Claim(s):  Three Hundred Fifty-Ninth Omnibus Objection to

16   Claims (Amended and Superseded Claims)

17

18   Hearing re:  Doc# 31316 Motion for Omnibus Objection to

19   Claim(s):  Three Hundred Sixtieth Omnibus Objection to

20   Claims (Valued Derivative Claims)

21

22   Hearing re:  Doc# 31317 Motion for Omnibus Objection to

23   Claim(s):  Three Hundred-Sixty-First Omnibus Objection to

24   Claims (No Guarantee Claims)

25

Page 3

1    Hearing re:  Doc# 31324 Motion for Omnibus Objection to

2    Claim(s):  Three Hundred Sixty-Second Omnibus Objection to

3    Claims (Duplicative of Indenture Trustee Claims)

4

5    Hearing re:  Doc# 31325 Motion for Omnibus Objection to

6    Claim(s):  Three Hundred Sixty-Third Omnibus Objection to

7    Claims (Reduce and Allow Claims)

8

9    Hearing re:  Doc# 31326 Motion for Omnibus Objection to

10   Claim(s):  Three Hundred Sixty-Fourth Omnibus Objection to

11   Claims (No Liability Claims)

12

13   Hearing re:  Doc# 31589 Notice of Adjournment of Hearing of

14   Three Hundred Forty-Sixth Omnibus Objection to Claims

15   (Securities Claims) Solely as to Certain Claims

16

17   Hearing re:  Doc# 29952 Notice of Adjournment of Hearing of

18   One Hundred Fifty-First Omnibus Objection to Claims (No

19   Liability Claims) Solely as to Certain Claim

20

21   Hearing re:  Doc# 32001 Notice of Adjournment of Hearing of

22   the Ninety-Second Omnibus Objection to Claims (No Blocking

23   Number LPS Claims) and Supplement to the Ninety-Second

24   Omnibus Objection to Claims Solely as to Certain Claims

25

Page 4

1   Hearing re:  Doc# 32178 Notice of Agenda of Matters

2   Scheduled for Claims Hearing on November 20, 2012 at 10:00

3   a.m.

4

5   Hearing re:  Doc# 31643 Notice of Adjournment of Hearing of

6   Three Hundred Forty-Eighth Omnibus Objection to Certain

7   Claims (Valued Derivative Claims) Solely as to Certain

8   Claims

9

10  Hearing re:  Doc# 31654 Notice of Adjournment of Hearing of

11  the Three Hundred Forty-Third Omnibus Objection to Claims

12  (No Liability Claims) Solely as to Certain Claims

13

14  Hearing re:  Doc# 31655 Notice of Adjournment of Hearing of

15  Three Hundred Forty-Ninth Omnibus Objection to Claims (No

16  Liability Claims)

17

18  Hearing re:  Doc# 31694 Notice of Adjournment of Hearing of

19  One Hundred Thirty-Eighth Omnibus Objection to Claims (No

20  Liability Derivatives Claims) Solely as to Certain Claims

21

22  Hearing re:  Doc# 31695 Notice of Adjournment of Hearing of

23  Three Hundred Seventeenth Omnibus Objection to Claims (No

24  Liability LBL Employee Claims) Solely as to Certain Claims

25

Page 5

1   Hearing re:  Doc# 29894 Notice of Hearing/Notice of ADR

2   Procedures and Scheduling of Claims Objection Hearing with

3   Respect to Debtors Objection to Proofs of Claim No. 42907

4   and 42908 (related document(s) 28430)

5

6   Hearing re:  Doc# 16079 Motion for Omnibus Objection to

7   Claim(s)/Debtors' One Hundred Twenty-Fifth Omnibus Objection

8   to Claims (Insufficient Documentation)

9

10  Hearing re:  Doc# 20087 Motion for Objection to Claim(s)

11  Number:  66099/Debtors' Objection to Proof of Claim No.

12  66099

13

14  Hearing re:  Doc# 14492 Motion for Omnibus Objection to

15  Claim(s):  Debtors' Ninety-Seventh Omnibus Objection to

16  Claims (Insufficient Documentation)

17

18

19

20

21

22

23

24

25  Transcribed by:  Nicole Yawn

**Page 6**

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3        Attorneys for Debtors

4        767 Fifth Avenue

5        New York, New York 10153

6

7    BY:  MARK BERNSTEIN, ESQ.

8        ERIC DAVID KASENETZ, ESQ.

9

10   NABER PC

11       Attorney for Creditor, Biesemann, et. al.

12       300 Central Avenue

13       Great Falls, MT 59401

14

15   BY:  HELGE NABER, ESQ. (TELEPHONIC)

16

17   ALVAREZ & MARSAL

18       Two Liberty Square

19       Suite 300

20       Boston, MA 02109

21

22   BY:  HOLLY CLACK, ESQ.

23

24

25

Page 7

1                    P R O C E E D I N G S

2              THE COURT:  Be seated.  Good morning.

3              MR. BERNSTEIN:  Good morning, Your Honor.  Mark

4      Bernstein, from Weil, Gotshal, on behalf of Lehman Brothers

5      Holdings, Inc. and its affiliated debtors.

6              We have a relatively short agenda for you this

7      morning, one uncontested item and then, two contested items.

8              The -- the first uncontested item is the three

9      hundred and sixty-second omnibus objection to claims.  This

10     seeks to disallow claims that were filed that are

11     duplicative of other claims filed by indentured trustees.

12     We made a couple changes to this order following

13     conversations with certain creditors.

14             First, the -- with respect to claims of King

15     Street, we've modified the order to include language that

16     we've included in other similar orders, which provides that

17     any documentation that's -- was filed along with the King

18     Street claims will be deemed to be included on the claims of

19     the indentured trustee.  So, to the extent there was any

20     difference of important documentation, and further, to the

21     extent that the claim of the indentured trustee is ever

22     disallowed, the King Street claim will automatically be

23     revived.

24             So we have included that language in the order,

25     and then, in conversations with Vanguard regarding their

Page 8

1    claims included on this objection, they -- their claims are

2    based on the U.K. capital funding notes, which -- for which

3    there was a guarantee issued by LBHI that -- that, in our

4    view, is -- is subordinated -- and ties (ph) it into a

5    subordinated claim.  We have included language in the order

6    which Vanguard has agreed to, which provides that, instead

7    of disallowing these claims, the claims will be classified

8    either in class 11 or class 12 of the plan.  Class 11 being

9    the 510(b) class, and class 12 being the equity class.

10          We've reserved in the order the right of either

11   party to assert which one of those two classes the claims

12   belong in, to the extent that the -- there ever -- ever is a

13   distribution that should ever get down to either of those

14   classes.

15          THE COURT:  There is no foreseeable economic

16   circumstance that I'm aware of that could put those claims

17   on the money.

18          MR. BERNSTEIN:  That's -- that's correct, and we

19   -- we do not believe so, either.  Therefore, we didn't

20   believe it was necessary to argue about whether those claims

21   should be in class 11 or 12, so the order reserves

22   everyone's rights on that issue, but provides that the

23   claims shall not be in class 1 through 10(c) with -- and

24   with that language, I have a blackline of the order I can

25   hand up to you with that language.  Vanguard and King Street

Page 9

1    have agreed to this -- have this order entered on an

2    uncontested basis.

3            THE COURT:  Okay.  You can hand it.  You can hand

4    that up.

5            MR. BERNSTEIN:  One -- one more thing I just point

6    out.  Two of Vanguard's claims that were similar to the ones

7    included on this order had previously been disallowed and

8    expunged as being duplicative of the indentured trustee.

9            As part of this resolution of this issue, we've

10   included a -- a paragraph in the order that revives those

11   claims for the purpose of this order, but subordinates them

12   in the same way as the rest of their claims.  So, from the

13   debtors' perspective, those claims come back to be put on

14   the register, but there is no economic injuries (ph), as

15   they're unlikely to ever receive a distribution.

16           THE COURT:  I won't even inquire as to why that

17   was an important condition, but I accept it.

18           MR. BERNSTEIN:  I -- okay.  Let me hand it up.

19           THE COURT:  Thanks.

20           Okay.

21           MR. BERNSTEIN:  Thank you, Your Honor.

22           So, with that, as -- we request Your Honor enter

23   that order on an uncontested basis.

24           THE COURT:  Fine.  It will be entered on an

25   uncontested basis.

1          MR. BERNSTEIN:  Thank you, Your Honor.

2          The first contested item on the agenda is a merits

3   hearing with respect to certain groups of claim that are

4   based on structured securities.  In accordance with the

5   structured securities valuation procedures order which this

6   Court entered in the summer of 2011, the debtors provided

7   the methodologies that they would use to value the more than

8   6,000 structured securities that were included on more than

9   20,000 proofs of claim.  In accordance with those -- that

10  order and with those methodologies, the debtors calculated

11  the amounts due on these -- the claims subject to this

12  order, the three claims subject to this merits hearing and

13  sent notices of those proposed allowed amounts to these

14  individual claimants.

15          These three claimant -- these three -- four

16  claimants on three claims responded to the debtors' proposed

17  allowed amount and said that they disputed the amount.  They

18  -- they merely said we dispute the amount.  We disagree with

19  it.  They didn't provide any basis for their dispute or an

20  alternative valuation.  They just sent one-line or two-line

21  letters to the debtor saying they dispute the amount.

22          THE COURT:  Just as a point of information, I

23  looked at the letters and communications that came in from

24  these creditors.  What wasn't clear to me is whether these

25  are the only holders of these structured securities that

1    have objected to the methodology or whether this is simply a

2    group that you have selected for today that is simply

3    unavailable, hasn't been communicative and is anticipated to

4    be a group that will not appear to be heard, and so, this is

5    low-hanging fruit.

6              MR. BERNSTEIN:  It -- it -- it's the latter.

7    There are a number of creditors who are still disputing

8    valuations, although I think initially there were about 3 to

9    400 disputes filed or sent to the debtors.  We -- we have

10   whittled that number down, mostly through convincing them

11   that -- or explaining our methodologies to them, and -- and

12   -- and we're down to a much smaller number.  I'm not exactly

13   sure what the number is, but there is -- there are a handful

14   of creditors that are -- they're still having valuation

15   disputes, but, for the most part, we are in communication,

16   and we're in negotiations, and we're in discussions with

17   those parties.

18             These -- these parties have not responded to any

19   of our communications.  We have -- we've tried to resolve

20   the issue with them, and we've just been unable to get any

21   feedback from them or have any other way to move this

22   forward, other than -- than bringing them to -- to

23   Your Honor.

24             THE COURT:  So this is, in effect, a merits

25   hearing by default?

Page 12

1            MR. BERNSTEIN:  Unless any of them -- I don't see

2    anyone in the courtroom today, but unless they happen to be

3    on the phone.

4            THE COURT:  We'll find out.

5            MR. BERNSTEIN:  We'll -- we'll find out.  So one

6    -- one correction I would like to make -- and -- and this is

7    a material change.  There was an error in the -- in the

8    numbers that were included on the exhibit to our reply to

9    the -- and the -- the correct numbers, which I'll -- which

10   I'll read to you in a minute, actually display that the

11   proposed allowed amount which we're seeking to have allowed

12   for these particular claims is much, much closer to the

13   asserted claim amount than what was actually indicated on

14   our initial table.

15           So, for claim 55396, the filed amount of the claim

16   for the ISN that ends in 3427 was $4,126,811.  Our -- our

17   reply had indicated that the proposed allowed amount was

18   $34,058, but, in fact, our proposed allowed amount for that

19   ISN -- that portion of the ISN that's included on that claim

20   is $4,123,921.31.

21           So the difference between their filed amount and

22   our proposed amount is about $3,000, and then, for the -- on

23   that same proof of claim 55396, there is another ISN that

24   ends in the number 5807, and the filed amount for that claim

25   we initially listed at 4 -- around $4.8 million, but, in

Page 13

1    actuality, it was $560,940, and our proposed allowed amount

2    for that portion of that ISN on that claim is $560,546.78.

3    So we have a difference of about -- about $400.  So the --

4    the -- the -- the proposed allowed amounts that we're

5    seeking to have allowed for these claims based on our

6    methodologies -- for those two securities and also the other

7    two, which our numbers were correct for, are very, very

8    close and, in one case, actually more than what the party

9    actually filed for.

10          So we're not seeking to disallow these claims.

11   We're seeking to have them allowed in the amounts calculated

12   pursuant to the methodologies which thousands of other

13   creditors and sophisticated parties have agreed are

14   reasonable methods of valuing the claims.

15          So, because we've been unable to contact these

16   parties, we've -- we've -- we've -- were -- they've been

17   responsive to us, we've -- we've notified them of the merits

18   hearing, and, if -- if -- if anyone is on the phone or here

19   today, we're happy to continue to talk to them about these

20   amounts, but, if they're not here, then we're -- we don't

21   have any way to resolve this with these parties, other than

22   to ask Your Honor to enter an order allowing these claims in

23   our proposed amounts.

24          THE COURT:  Well, the affected claims were filed

25   by Peter Weiss/Renate Anna, Aggeliki Bartzi and Christos

1    Konstas, and Fundacion Isla Couto, and, for transcription

2    purposes, I'm going to ask that whoever transcribes this

3    record take a close look at the agenda to get the names

4    spelled correctly.

5          Are any of those individuals or institutions

6    present in court or participating by telephone this morning?

7          There is no response.

8          Can you detail for me the efforts that were

9    undertaken by the plan administrator to provide actual

10   notice to these claimants of today's hearing?

11         MR. BERNSTEIN:  Certainly, Your Honor.

12         The -- the plan administrator -- in accordance

13   with the claims resolution procedures order this Court

14   entered, the -- it -- it -- it requires 45 days notice be

15   sent to each claimant of any merits hearing that will --

16   that will occur with respect to their claims.  So the

17   debtors used the form that was attached to the claims

18   resolution procedures order for notice of merits hearing.

19         This was served on each of the claimants on

20   September 13th, 2012 at the addresses that they have

21   provided to us on their proofs of claim or -- and/or in

22   their responses that they provided -- provided to their

23   actual valuation, and Epiq has filed a declaration -- or an

24   affidavit of service with respect to the service of these

25   notice of -- of the scheduling of the merits hearing on each

Page 15

1   of these claimants.

2          We did not receive any response from any of the

3   claimants at any time in connection with the notice of the

4   merits hearing, and the notice -- that was -- that's the

5   notice with respect to the merits hearing.  Prior -- upon

6   receipt of their dispute of the valuation procedures, we

7   also sent letters, emails, or phone calls, to the extent we

8   had any of those means of communications to each of these

9   parties seeking to have -- seeking to discuss the dispute

10  with them about their valuation, and all of those -- none of

11  those proved fruitful, either.

12          THE COURT:  Were any of these communications

13  returned as undeliverable?

14          MR. BERNSTEIN:  No, not -- not that I'm aware of.

15          THE COURT:  All right.  Thank you.

16          MR. BERNSTEIN:  So, with that presentation, we

17  would ask Your Honor to allow these four claims in the

18  proposed allowed amounts as determined pursuant to the

19  structured securities valuation methodologies.

20          THE COURT:  In light of the fact that the

21  differences in the allowed amount of the claims in most

22  instances represent marginal differences and, in one

23  instance, apparently, an actual increase in the claim amount

24  and, perhaps most importantly, in light of the fact that the

25  affected claimants have not participated in any manner in

Page 16

1   this process and have not responded to requests by the plan

2   administrator to engage in a consensual process and in light

3   of the fact that these claimants are not present in court

4   today to be heard, either in person or by telephone, the

5   debtors are prevailing in this first merits hearing with

6   respect to these proofs of claim.

7            MR. BERNSTEIN:  Thank you, Your Honor.

8            I will turn the podium over to my colleague, Eric

9   Kasenetz, to handle the remaining contested item on the

10  agenda.

11           THE COURT:  All right.  Thank you.

12           I assume you'll be submitting an order with

13  respect to the merits hearing?

14           MR. BERNSTEIN:  Yes, we will.

15           THE COURT:  Fine.

16           MR. KASENETZ:  Good morning, Your Honor.  Eric

17  Kasenetz, of Weil, Gotshal & Manges, on behalf of Lehman

18  Brothers Holdings, Incorporated and its affiliated debtors.

19  Your Honor, I'll be handling the second contested agenda

20  item, which relates to the ninety-second omnibus objection

21  to claims and the supplement to the ninety-second omnibus

22  objection to claims.

23           Your Honor, there are two sets of claims on this

24  agenda item, and both sets relate to blocking number issues

25  and the bar date order.  I propose to address both sets of

Page 17

1    claims at the same time, as there is significant overlap in

2    some of the issues.

3            The first set of claims -- we'll call these the

4    no-blocking number claims.  Those are covered by the ninety-

5    second omnibus objection.  The second set of claims

6    -- we'll call these the duplicative LPS claims -- are

7    covered by the supplement to the ninety-second omnibus

8    objection to claims.

9            The ninety-second omnibus objection seeks to

10   disallow and expunge claims based on Lehman program

11   securities for failure to obtain blocking numbers in

12   violation of this Court's order -- bar date order.  Excuse

13   me.  Today we are proceeding as to the 14 claims set forth

14   on Exhibit A to the -- to the reply filed by the debtors at

15   ECF number 31752.  The debtors' position is set forth at

16   length in the omnibus objection and the reply, so I will not

17   repeat all of those arguments, but instead, just touch on a

18   few key points that go directly to the issues with those

19   claims.

20           The claim filing procedures were specifically

21   formulated to address the inherent complexities in

22   reconciling claims based on thousands of securities for

23   which there was no indentured trustee to file claims on

24   behalf of tens of thousands of beneficial holders worldwide.

25   The claim filing procedures and, more specifically, the

Page 18

1   blocking number requirement -- those were ordered by this

2   Court specifically to prevent invalid or potentially

3   duplicative distributions.  Simply put, the holders of the

4   no-blocking number claims did not obtain blocking numbers

5   for their securities, even though the blocking number

6   requirement was a critical component of the bar date order.

7           Your Honor, at the November 30th, 2011 claims

8   hearing, this Court provided some guidance for the debtors

9   to deal with claims for which claimants did not obtain valid

10  blocking numbers.  At that hearing, the Court encouraged the

11  claimants to work with the debtors and provide proof of

12  ownership of the securities, provide proof that no one else

13  obtained blocking numbers and filed for the same securities,

14  thereby reducing the risk of duplicative payments.

15  Moreover, this Court indicated that the burden is placed on

16  the claimants to demonstrate that the relevant securities

17  are not included on anyone else's claims.

18          Since that hearing, Your Honor, which was almost a

19  year ago at this point, the debtors have gone to great

20  lengths to work with all remaining claimants that failed to

21  provide blocking numbers.  For many claims, the outcome has

22  been successful.  Such claimants have provided the debtors

23  documents, certifications, and statements that have enabled

24  the debtors to get comfortable that the risk of duplicative

25  payments is minimal.  As a result, those claims were

Page 19

1    allowed.

2             With respect to these no-blocking number claims on

3    omni. nine-two, however, the debtors have tried to work with

4    the claimants to minimize the risk of duplicative payments.

5    To date, these no-blocking number claimants have been unable

6    or unwilling to mitigate that risk and provide the necessary

7    proof to the debtors.

8             THE COURT:  Let me just clarify something for my

9    information.  Based upon the papers that I reviewed in

10   preparation for this morning's hearing, I noted that a

11   particular lawyer located in Great Falls, Montana, Helge

12   Naber -- I'm not sure if I'm pronouncing the name correctly

13   -- appeared to represent all of the claimants that are the

14   subject of the pending relief request; is that right?

15            MR. KASENETZ:  Well, it's -- it's right for the

16   most part, Your Honor, and it's -- and it's slightly unclear

17   the representation.  Mr. Naber does represent the majority

18   of the claimants, but, based on a few filings of withdrawals

19   of notices of appearance, it appears that Mr. Naber does not

20   represent a handful of the claimants that are on this

21   objection.

22            THE COURT:  All right, but let me find out if

23   Mr. Naber is on the line, because, when I looked at the

24   court call registration for the -- the hearing as of

25   yesterday, his name appeared.

Page 20

```
 1              Mr. Naber, are you on the line?

 2              MR. NABER:  I am, Your Honor.  Good morning.

 3              Good morning, everyone.

 4              THE COURT:  Good morning.  Okay.  I just wanted to

 5     make sure that you were listening and participating.

 6              All right.

 7              MR. NABER:  Thank you, Your Honor.

 8              THE COURT:  Why don't you proceed?

 9              MR. KASENETZ:  Thank you, Your Honor.

10              The -- the no-blocking number claimants -- they

11     argue that they are the true beneficial owners of the

12     securities, but, Your Honor, at the very least, they have

13     been unable or unwilling to show that their -- that their

14     positions are not subsumed in the validly filed claims of

15     what appear to be their banks or brokers that maintain the

16     securities on behalf of these beneficial holders.  In fact,

17     the no-blocking number claimants admit that their claims are

18     likely competing with such banks' claims.

19              Because the no-blocking number claimants did not

20     comply with the bar date order, the no-blocking number

21     claimants have failed to mitigate the risks of receiving

22     duplicative payments, and the no-blocking number claimants

23     admit that their positions are likely covered by other

24     validly filed claims, the no-blocking number claims should

25     be disallowed and expunged in their entirety.
```

1          THE COURT:  Are we going to stop at this point and

2     just deal with the ninety-second omnibus objection itself,

3     or are we going to also go into the supplement?

4          MR. KASENETZ:  Your Honor, if -- if you would like

5     to stop here, we can do that.

6          THE COURT:  I'm just trying to understand what the

7     most logical way to present this is from your perspective.

8          MR. KASENETZ:  Sure.  Well, I believe that some of

9     the issues that will be raised with respect to the

10    supplement to the ninety-second omnibus objection will --

11    will likely provide further insight into some of the issues

12    that might arise for the -- the omnibus -- the ninety-second

13    omnibus objection.

14         THE COURT:  So it -- so it makes sense to deal

15    with it all at once?

16         MR. KASENETZ:  I -- I think it does, Your Honor.

17         THE COURT:  Let's do that.

18         MR. KASENETZ:  Okay.  Thank you.

19         As for the supplement to the ninety-second omnibus

20    objection to claims, the supplement seeks to disallow and

21    expunge the 41 claims set forth on Exhibit B to the reply

22    filed by the debtors at ECF number 31752.  The supplement

23    seeks to disallow and expunge the duplicative LPS claims on

24    the basis that such claims, which appear to be filed by

25    beneficial holders of Lehman program securities, are

Page 22

1    substantively duplicative of claims filed by what appear to

2    be banks on behalf of such beneficial holders.

3            By way of some background, these duplicative LPS

4    claims were originally on the ninety-second omnibus

5    objection to claims because such claims did not include

6    valid blocking numbers.  However, after the filing of the

7    debtors' objection and long after the expiration of the

8    program securities bar date, the claimants provided the

9    debtors with blocking numbers for their claims.  To date, it

10   is unclear to the debtors how these claimants obtained these

11   blocking numbers, as blocking numbers were only issued prior

12   to the bar date by the clearing agencies.

13           Regardless, all of these blocking numbers were

14   already included on the corresponding banks or the surviving

15   claims prior to the program securities bar date.

16           THE COURT:  Just a question for clarification, and

17   this whole subject of blocking numbers is and has been a

18   somewhat confusing variant on proof of claim practice unique

19   to the Lehman case from the very outset.  But are the

20   numbers that you have referred to that were obtained by

21   certain individual claimants after the bar date in order to

22   comply with the blocking number requirement the same or

23   different numbers from the numbers that were obtained by the

24   financial institutions that purported to act on their

25   behalf?

1          MR. KASENETZ:  Your Honor, the latter -- what you

2     just said is -- is accurate in terms of the banks having the

3     blocking numbers.  The banks filed their proofs of claim

4     with blocking numbers, and, based on the debtors' review of

5     the banks' claims, the banks are filing, not just on their

6     own behalf in their own proprietary ownership of securities,

7     but on behalf of thousands of beneficial holders.  Those

8     blocking numbers that those banks included on their proofs

9     of claim are the exact same blocking numbers that were later

10    submitted by beneficial holders to what you were -- you were

11    describing as complying with the bar date order.

12          THE COURT:  So is it your understanding that what

13    appears to have happened here is that individual claimants

14    appropriated for their own use blocking numbers that had

15    been obtained by financial institutions in a timely manner

16    prior to the bar date with respect to proofs of claim that

17    appear to have been filed on behalf of beneficial holders of

18    Lehman program securities for which those institutions acted

19    in a representative capacity?

20          MR. KASENETZ:  That's right.  We -- we don't

21    really know, Your Honor, how the beneficial holders obtained

22    the blocking numbers, but, according to the submissions by

23    the -- the beneficial holders in their response and in the

24    -- in their guarantee questionnaires, they submitted

25    purchase confirmations from the -- that were issued by the

Page 24

1   very same banks that filed the proofs of claim with the

2   proper blocking numbers.  So we do think that the beneficial

3   holders received the blocking numbers and submitted them,

4   even though the banks have the same blocking numbers and are

5   filing for those same beneficial holders.

6              THE COURT:  Okay.  I think I understood what you

7   said.

8              MR. KASENETZ:  Would you like me to --

9              THE COURT:  No, no, I --

10             MR. KASENETZ:  -- rephrase it a different way?

11             THE COURT:  I -- I think we should leave it alone

12   for now.

13             MR. KASENETZ:  Okay.  Thank you, Your Honor.

14             Your Honor, as supported by the declaration of

15   Holly Clack, who -- Ms. Clack is actually here today in this

16   courtroom -- the debtors undertook a detailed review of

17   these claims.  They looked at the blocking numbers, the

18   ISNs, the notional (ph) amounts, and other relevant

19   information, and the debtors have concluded, as I've already

20   stated, that the securities claimed by the duplicative LPS

21   claims are included on the banks' claims and actually

22   claimed by those banks.

23             The banks' claims have already been allowed.

24   They've already started receiving distributions.  As such,

25   if this Court were to allow the duplicative LPS claims, LBHI

Page 25

1    would essentially be paying twice on the same obligations,

2    and the claimants would, in all likelihood, receive two

3    distributions, one distribution directly from LBHI and the

4    other distribution being passed through from the banks to

5    the beneficial holders.  The debtors have asked the

6    duplicative LPS claimants to confirm whether they have

7    already received distributions from their banks, but, to

8    date, the -- the claimants have not provided an answer to

9    the debtors.

10            Your Honor, the duplicative LPS claimants -- they

11   -- they argue that their claims should be allowed in lieu of

12   the banks'.  For several reasons, this -- this is simply not

13   the case.

14            First, throughout the duration of these cases, the

15   debtors have generally sought to allow the claims of the

16   banks or brokers because it is much easier to deal with a

17   few highly sophisticated banks rather than numerous

18   individual holders located all over the world.  To date, the

19   debtors are not aware of any situation where a bank has

20   failed to pass through the distributions to the beneficial

21   holder.  The debtors have no reason to believe that this

22   situation would be different here.

23            Second, the bar date order and the claims filing

24   procedures specifically contemplated and allowed banks and

25   brokers to file on behalf of the beneficial holders.

Page 26

1    Because the parties did not know if claims would be filed

2    directly by the banks, brokers, or the individual beneficial

3    holders, creditors, back when these program securities were

4    -- were being negotiated and implemented -- they

5    specifically requested that claims not be disallowed based

6    on rule 3001(b), or, in other words, that the claims were

7    not filed by the proper party or authorized agent.  It is

8    much too late to challenge this provision of the bar date

9    order.

10          And third, the debtors have not seen any evidence

11   to indicate that the banks are not validly filing for these

12   securities.  The banks that filed the surviving claims are

13   the record-holders of the Lehman program securities on the

14   books and records of the clearing agencies.  Otherwise,

15   those banks would not have been able to obtain blocking

16   numbers in the first place.  On the other hand, the debtors

17   have no way of confirming the beneficial holders of these

18   securities.

19          Finally, Your Honor, if the duplicative LPS

20   claimants -- if they need more information from the banks,

21   they should just ask the banks directly.  The debtors do not

22   understand why the duplicative LPS claimants cannot confirm

23   from their own banks whether the banks are filing on their

24   behalf.

25          As a workaround to all of this, the debtors have

Page 27

1    suggested to the duplicative LPS claimants that they ask

2    their banks to transfer the portions of the surviving claims

3    to the customers.  Many banks have done this for their

4    customers, including for portions of the same surviving

5    claims at issue, and, where the debtors have objected to the

6    beneficial holders' claims as duplicative of banks' claims

7    but the beneficial holder and the bank together have

8    preferred that the beneficial holders' claim survive, the

9    debtors have reversed and agreed to keep the beneficial

10   holders' claims, but, Your Honor, with all of these

11   suggestions, under no circumstances should the debtor be

12   required to pay twice, and, with this, the debtors' request

13   that the -- that the duplicative LPS claimants and the no-

14   blocking number claims -- that they both be expunged and

15   disallowed in their entirety.

16            THE COURT:  Well, I appreciate your argument.

17            Let me inquire as to whether there are any

18   claimants affected by the ninety-second omnibus objection to

19   claims and the supplement to the ninety-second omnibus

20   objection to claims that are either present in court or on

21   the telephone, other than or in addition to Mr. Helge Naber.

22            There is no response, and the courtroom is rather

23   sparsely occupied today, and no one has come forward.

24            So, Mr. Naber, it appears that you are the only

25   individual acting on behalf of affected claimants.

1              MR. NABER:  That is right, Your Honor.

2              THE COURT:  This is -- this is your opportunity to

3    respond to the argument that has been made, but I do have

4    one particular question that I'd like you to focus on.

5              MR. NABER:  Yes.

6              THE COURT:  As I understand the situation, claims

7    were filed by a German affiliate of Citi Bank and either

8    Dresdner Bank or Commerzbank as successor in interest to

9    Dresdner Bank and that the institutions that we're talking

10   about for purposes of your client base, are major financial

11   institutions.  They're probably among the largest financial

12   institutions on the planet.  That being said, why is it not

13   entirely appropriate for your client constituency to look to

14   these financial institutions for pass-through payment?

15             MR. NABER:  I -- I will answer that (indiscernible

16   - 31:12), Your Honor.  Thank you, and I wanted to explain a

17   little or explore (ph) a little about how these blocking

18   numbers came about.

19             THE COURT:  They --

20             MR. NABER:  The blocking numbers came about

21   (indiscernible - 31:22) so they were, in our view, three

22   steps to be made.  There was a -- a group (ph) of

23   (indiscernible - 31:33).  There was (indiscernible - 31:34),

24   and there was a --

25             THE COURT:  Mr. Naber, I'm going to have to break

1    in.  One of the disadvantages in appearing by telephone is

2    that you're unable to tell how hard it is for us to hear

3    you.

4              MR. NABER:  Oh.

5              THE COURT:  And we are also making a record of

6    everything that people are saying here, and I doubt very

7    much if anything that you've just said made it onto our

8    transcript.  You're going to have to --

9              MR. NABER:  (Indiscernible - 31:54.)

10             THE COURT:  You're going to have to speak up.

11             MR. NABER:  I will.  Yes, I will speak up, and I

12   will slow down.  Thank you.

13             With respect to the blocking numbers that the

14   claimants have provided, we're (ph) looking at the very

15   first (ph) (indiscernible - 32:09) from the banks prior to

16   the bar date order, but the -- there were numbers, for

17   instance, being received, and the bank also didn't provide

18   me with documentation showing that my clients, in fact,

19   wanted the bank to represent and bring those claims on their

20   behalf, rather than me, since I (indiscernible - 32:34) with

21   attorney.

22             So, as admitted (ph), the last set (ph), which was

23   the program securities proof of claims without the blocking

24   numbers and then, when the objection came about, I went to

25   the clients and asked them to verify with the bank whether

Page 30

1    (indiscernible - 32:42), which have branches all over the

2    country there if those claims are indeed the same claims,

3    and so, those clients (indiscernible - 32:48) banks

4    confirmed that they are, I withdrew those claims, and, for

5    the banks that this is the blocking number, it was -- it was

6    claimed under by the bank, I provided that number to the

7    debtor saying that this is, you know, (indiscernible -

8    33:04) the same and that the debtor should verify which one

9    of the two is available (ph) since I also have powers of

10   attorney in the bank where (indiscernible - 33:12) the

11   summary (ph) number on their proof of claim.

12           So -- and I appreciate the debtors' patience with

13   us keeping (ph) this all together, but there is no -- no

14   (indiscernible - 33:22) the blocking numbers is was not

15   possible to provide them on time.  So (indiscernible -

16   33:28) as I figured in consideration and in visiting with

17   the debtors about this issue, I provide also (ph) them

18   (indiscernible - 33:36) check on their end.

19           So the no-blocking numbers claims remain without

20   blocking numbers, because we were unable to obtain those

21   from the bank.  You know, it is by way of assignment (ph)

22   after (indiscernible - 33:47) regard for -- in way of an

23   agreement, you know, (indiscernible - 33:53) the other.

24           (Indiscernible - 33:56) saying that it looks to me

25   that this is more an individual administration issue than it

Page 31

1   is a substantive issue.  All of those things (indiscernible

2   - 34:07) bank thinks that (indiscernible - 34:07) for my

3   clients.  It just seems to be a matter of administrative

4   (indiscernible - 34:15), which (indiscernible - 34:17).

5            So I asked the debtors again to verify with the

6   banks who are the only ones that know who the individual

7   claimants are that comprise their -- their internal

8   (indiscernible - 34:26), if you will, and the debtor, you

9   know, (indiscernible - 34:29) and trying to do this, I have

10  seen a (indiscernible - 34:34) that will show me

11  (indiscernible - 34:36) those things go, and that's why

12  we're still here.

13           THE COURT:  I must admit I had some difficulty in

14  following what you have just said, in part because the

15  volume is not high enough for me to hear every word you've

16  said, and you've also spoken rather briskly, and we're

17  talking about some issues that are necessarily complicated

18  to understand.  So I just want you to know that you've lost

19  me a little bit.

20           One piece that I think I picked up is that, as to

21  the duplicative portion of the claims, you indicated that

22  this is more procedural than substantive, and I'd like you

23  to comment further on that.  To what extent is this a real

24  issue?

25           I think you have to recognize that, from the

Page 32

1    debtors' perspective, it's a very significant issue, because

2    they can't be in a position in which anybody is receiving

3    what amounts to double payment, a payment once in their

4    individual capacity and a payment twice in a represented

5    capacity by virtue of a pass-through of distributions made

6    to a financial institution acting on their behalf.  That's

7    the problem.  What we need is the solution, and I don't

8    think I heard you give one.

9            MR. NABER:  Okay.  I -- I will address that,

10   Your Honor.  Thank you.

11           I think the solution would be to suspend both

12   payments, the undistributed (ph) portion of the bank's

13   claims as well as the claims that -- for the claims that I

14   represent to further inquire with the banks who are the only

15   ones who will know what the individual claimants are or who

16   the individual claimants of their claims comprises of, and

17   until we have documentation from the banks where I can

18   actually say, yes, both claims are the same and the debtor

19   and the Court can do the same with the documentation, then I

20   will, of course, you know, visit (indiscernible - 37:00)

21   duplicative, but, for now, it seems everybody runs under the

22   presumption that there is -- that they're validly

23   representing the claims of the individual claimants that I

24   represent.

25           THE COURT:  Well, here's -- here's one of the

Page 33

1   problems I'm having with this.  There -- and -- and just

2   bear with me as I try to understand this in -- in simple

3   terms.

4           There are certain claimants that had been holders

5   of Lehman program securities that never obtained blocking

6   numbers.  There are other claimants that appear to have

7   obtained blocking numbers that are actually duplicative of

8   blocking numbers previously obtained by financial

9   institutions.  In a sense, it doesn't matter whether we are

10  dealing with claimants that either had no blocking numbers

11  or somehow appropriated blocking numbers used by financial

12  institutions, because in either instance, there is the

13  unmitigated risk of double payment.

14          For that reason, it seems to me, particularly

15  since the burden has to be on the claimant and not on Lehman

16  and derivatively, Lehman's other creditors, that your

17  clients are the ones who should be dealing directly with the

18  financial institutions with whom they dealt in the past.  As

19  I understand it, in each instance, the individuals, all of

20  whom appear to be citizens of the Republic of Germany,

21  purchased Lehman program securities from either Citi Bank or

22  Dresdner Bank, acting as an intermediary.

23          The financial intermediary needs to be responsible

24  here, and so, what I don't understand -- and it hearkens

25  back to my first question.  What are you doing with respect,

Page 34

1    not to this estate, but rather the apparently financially

2    responsible institutions that are the financial

3    intermediaries between your clients and the distributions?

4    Because the most logical answer here is that those

5    institutions, having obtained blocking numbers in the first

6    instance and having acted in their representative capacity,

7    not only with respect to your client group, but with respect

8    to a large group of holders of Lehman program securities in

9    Germany, presumably, but I don't know this, has received --

10   have received distributions from the Lehman estate, and they

11   either have or have not passed those distributions through

12   to the beneficiaries.

13          The working premise here is that major financial

14   institutions would have passed through those payments and

15   will not have misappropriated them.  So that it is more

16   likely than not, it seems to me, unless you can show me

17   otherwise, that your clients received or should have

18   received payments from the institutions, and, if they didn't

19   receive those payments, that may be persuasive that they

20   actually don't have good claims at all.  What's your answer

21   to that little speech?

22          MR. NABER:  Well, Your Honor, I -- we contacted

23   all the banks that we -- you know, that (indiscernible -

24   41:12) and that -- that still are involved in this to obtain

25   the answer, is this true.  We -- we represented the

Page 35

1    (indiscernible - 41:20) in letters to each and every one of

2    them, to each and every one of those claimants and said did

3    you guys pay this claim and pay the guys for this

4    distribution (ph) or whatever distribution the banks have

5    participated in, yes or no, and for those I have a response

6    by the banks saying yes, we did, I withdrew the claim.

7             So, you know, I'm working with those banks to the

8    best of my ability just trying to look for an answer.  I'm

9    king of at the end of my rope.

10            THE COURT:  Well, I'd like to hear from Ms. Clack,

11   who's in the courtroom, to understand a little bit more

12   about the prejudice to the Lehman estate associated with

13   having the claimants that are the subject of the ninety-

14   second omnibus objection and the supplemental -- or the

15   supplement to the ninety-second omnibus objection remain as

16   active claimants for some period of time while there is an

17   ongoing effort to reconcile these apparent differences.

18            I don't think we're talking about significant

19   dollar amounts, but I think we're probably talking about

20   significant administrative burden.

21            MR. KASENETZ:  Your Honor, may I request to have

22   Holly -- Ms. Clack's declaration entered into evidence at

23   this time?

24            THE COURT:  Is there any objection to my receipt

25   of the Holly Clack declaration as the equivalent of her

Page 36

1    direct testimony?  She's certainly subject to cross-

2    examination and questions that the Court may have.

3              MR. NABER:  I have no objections, Your Honor.

4    Thank you.

5              THE COURT:  Okay.  It's admitted.

6        (Debtors' Exhibit was admitted)

7              MR. KASENETZ:  Thank you.

8              MS. CLACK:  Good morning, Your Honor.  Holly

9    Clack, from Alvarez and Marsal.

10             THE COURT:  What's the prejudice to the debtors if

11   these claimants remain outstanding for a while longer?

12             MS. CLACK:  Well, Your Honor, we have already

13   incurred significant expense trying to work with Mr. Naber

14   with regard to these claims, and I think at one point it was

15   -- it's -- it's about 70 claimants, and this has been going

16   on for approximately a yearn-and-a-half.  So the longer that

17   these remain outstanding and the more time we spend trying

18   to work with him on these, the more expense is incurred,

19   and, as we tried to work with him and there was no

20   significant response, no -- no substantial support or

21   documentation for what he is trying to claim, i.e., that

22   these claimants really stand on their own and are not

23   potentially duplicative of the banks' claims, which they do

24   appear to be, we decided to proceed in this -- in this

25   process.

1              THE COURT:  Well, let me ask a very, very basic

2     question.

3              MS. CLACK:  Uh-huh.

4              THE COURT:  The goal here is to ensure that

5     individual claimants that have filed proofs of claim with

6     respect to a particular identified security do not at the

7     same time have derivative status under comparable claims

8     filed by institutions on their behalf that would result in

9     double payment; is that correct?

10             MS. CLACK:  Uh-huh.  That's correct.

11             THE COURT:  How does one go about determining

12    whether an individual claimant's claim for a particular ISN

13    number happens to be included or not included under a

14    broader claim filed in a representative capacity by an

15    institution?

16             MS. CLACK:  Uh-huh.  Well, Your Honor, as you

17    stated, this is rather complicated.  The -- the best

18    indication of whether or not a claim is duplicative is the

19    blocking number and whether the blocking number is

20    duplicative of that same blocking number on another claim.

21    So, in essence, if you think about it, the blocking number

22    is -- is telling us proof of ownership, and that's sort of

23    what we think of it as.

24             So, if -- if a blocking number -- if -- if we get

25    a claim with a blocking number that's duplicative of another

Page 38

```
 1    different claim with that same blocking number, we look at
 2    it, and we -- we -- we -- we sort of think okay, this is
 3    likely a duplicative claim, and what we did for every single
 4    ISN is we looked at all of the blocked portions of that ISN,
 5    totaled them up, you know, totaled the notional amounts.  We
 6    looked -- we looked at all that and made sure that there --
 7    there wasn't duplicative amounts.  Is that helpful?
 8              THE COURT:  How did you make sure?  What -- what
 9    did you actually do?
10              MS. CLACK:  Well, we -- so the blocking numbers
11    were issued by the clearing agencies.  The clearing agencies
12    reported to us everything, all of the blocking numbers, the
13    notional amounts, the dates, the ISNs for which they issued
14    blocking numbers.
15              We took that information and then, looked at that
16    by ISN, compared that to Lehman's books and records and the
17    outstanding amounts, and obviously, there were
18    reconciliation issues where -- or, in some instances, there
19    were -- there were claimant questions or claimant disputes,
20    and that was actually part of the reason and the process for
21    -- for the procedure that we -- that we outlayed with the
22    notices of proposed allowed claim amount because, on those
23    notices, we detailed exactly what was on the claim by ISN,
24    by blocking number.
25              So it's -- it's complicated, because there are so
```

Page 39

```
1    many different levels.  You know, you have a lot of claims,

2    and the claims have different ISNs, and then, the ISNs may

3    have different blocked amounts, but we have all of that

4    detail, and all of it was provided to the claimants in their

5    notices of proposed allowed -- proposed allowed claim

6    amounts.

7              THE COURT:  Okay.

8              Now, in the case of the particular creditors

9    represented by Mr. Naber, I gather that they fall into two

10   categories.

11             MS. CLACK:  Uh-huh.

12             THE COURT:  Category one -- individuals resident

13   of -- in Germany that did not obtain blocking numbers.

14   Category two -- individuals resident in Germany who,

15   subsequent to the bar date, submitted claims that included

16   blocking numbers that are duplicative of claims filed by

17   financial institutions, perhaps on their behalf.

18             MS. CLACK:  That's correct.

19             THE COURT:  Okay.

20             In the case of category one, the no-blocking

21   number, how do you go about determining whether or not any

22   institution actually filed a claim with respect to that

23   security or that any other individual or entity may have

24   filed a claim with respect to that security?

25             MS. CLACK:  Okay.  So what we would do is we would
```

Page 40

1    look at the claim which did not have a blocking number.

2    Let's just say that that claim was for 10,000 notional,

3    okay, of a particular ISN.  We would then look at all of the

4    other claims for that ISN and, in particular, the claims

5    that had legitimate blocking number -- valid blocking

6    numbers for 10,000 or more notional, and we would look at

7    that and say well, okay, if that is indeed the case, then

8    it's possible that this claim for 10,000 notional of X ISN

9    could be included on these 25 claims with greater than

10   10,000 notional.  Do you understand?

11          So then, we would -- as we've done with some

12   claimants, we would say these -- there are a number of other

13   claims that this particular claim ISN could be on.  Can you

14   tell us -- can you -- can you affirm to us that that is not

15   the case, and, in this instance, there has been no

16   confirmation that the claims with no blocking numbers are

17   not on any of the other claims that they could potentially

18   be on.

19          THE COURT:  Is it practical to continue attempting

20   to determine whether these claims are duplicative or not, or

21   have you exhausted at this point, essentially, all of the

22   diligence associated with the pending questions?

23          MS. CLACK:  Well, Your Honor, there's nothing more

24   that we can do, because we can't tell if -- you know, if a

25   claim is -- is duplicative, necessarily, of some -- of some

Page 41

```
 1   other claims.  We can -- all we can do is we can say well,

 2   there's a high likelihood that it is on another claim, and

 3   that's -- that's where we need the help from the claimants.

 4            THE COURT:  What can the claimant do?

 5            MS. CLACK:  Well, the -- the claimant can do a

 6   number of things, and we have had claimants work with us in

 7   this regard.  The claimant can affirm that it is not on

 8   another claim.  Give us positive confirmation.  The claimant

 9   can tell us that they have not received a payment, because

10   already two payments have been made.

11            THE COURT:  Now, you're saying a claimant that has

12   not received a payment from any source, including by pass-

13   through from a financial institution like Citi Bank or

14   Commerzbank, is that what you're saying?  Or you're saying a

15   direct distribution from the debtor?

16            MS. CLACK:  Either.  Either.  Right.  So we -- we

17   would like positive confirmation from the claimant that they

18   have not received a distribution, either directly from LBHI

19   or from their representative bank or institution -- you

20   know, a  pass-through, as you call it.

21            THE COURT:  Now, if they haven't received a

22   distribution from any source, including, just by way of

23   example, Citi Bank and Commerzbank, that could also mean

24   that Citi Bank and Commerzbank failed to do something that

25   should have been done.  It doesn't necessarily mean that
```

1   there's a right to (indiscernible - 54:05) from the estate.

2           MS. CLACK:  That's true.  That's true, but so,

3   again, going -- going back to, you know, we need

4   confirmation, and -- and generally, we've asked for

5   certification from the claimants that, to the extent that

6   they're aware, their claim has not been filed by anybody

7   else, i.e., their -- you know, their banker or broker, and

8   then, you know, in addition, that they have not received

9   payment.  So -- so whether or not, you know, the bank acting

10  on their behalf has done what they -- they are supposed to

11  do, we would want certification that they have knowledge

12  that the bank has not submitted a claim on their behalf or

13  that anybody -- you know, nobody has submitted a claim on

14  their behalf.

15          THE COURT:  How would the holder of a particular

16  claim based upon a particular ISN be able to prove an

17  entitlement to payment that has not been made from a

18  particular bank.  Let's use Citi Bank again as simply an

19  example of a particular bank that has not made payment.

20          MS. CLACK:  Uh-huh.

21          THE COURT:  In other words, how does the holder of

22  a particular claim based upon the holdings in question of

23  Lehman program securities prove to a financial institution

24  an entitlement to receive payment?

25          MS. CLACK:  Well, I -- I would imagine they would

1   have statements from that institution if they purchased the

2   -- you know, the securities from the institution.  So that's

3   another -- another way we have gotten comfortable with some

4   claimants, and these tend to be individual claimants.  They

5   will provide us statements showing --

6           THE COURT:  Well, one of the problems here -- and

7   I recall this at the time that they blocking number was

8   first identified as a way to deal with these securities

9   mostly sold in Europe -- was that the blocking number would

10  protect against the risk of transfer by one holder to

11  another of the subject security, since there was no central

12  registrar that kept a list of holders.

13          MS. CLACK:  Uh-huh.

14          THE COURT:  So, even if someone had a confirmation

15  of purchase of a security in 2007, for example, that doesn't

16  necessarily confirm that that individual continues to be the

17  holder of that security; isn't that true?

18          MS. CLACK:  That's true.  However, generally a

19  holder of a security will receive a statement, a monthly

20  statement from the institution for which it purchased

21  showing its current holdings or, you know, and the value at

22  -- at a particular point in time.

23          THE COURT:  That assumes -- and we're getting well

24  beyond the scope of my original question.  That assumes that

25  there's a continuity of customer status, doesn't it?

Page 44

```
 1              MS. CLACK:  Yeah, it does.

 2              THE COURT:  Okay.  Thank you.

 3              MS. CLACK:  Thank you.

 4              THE COURT:  Before you leave the podium,

 5   Mr. Naber, do you have any questions for Ms. Clack?

 6              MR. NABER:  I do not, Your Honor.  Thank you.

 7              THE COURT:  Okay.

 8              MS. CLACK:  Thank you.

 9              THE COURT:  All right.

10              I actually have a number of people who have come

11   into the courtroom who are here for an 11:00 a.m. calendar

12   in a different case, and, with apologies to them, I'm going

13   to continue for a few more minutes to -- to deal with this

14   pending matter.

15              Does counsel for Lehman have any response to all

16   this or anything to add with regard to the subject?

17              MR. KASENETZ:  Yes, Your Honor, and -- and I'll be

18   brief, but there are just a few issues I wanted to raise

19   with all of these questions that have been asked.

20              Your Honor, we -- we have been working -- the

21   debtors have been working with Mr. Naber and his claimants

22   for a year-and-a-half now.  We have heard many statements

23   along the lines of we need to confirm with the banks, we

24   need to confirm with the banks, and -- and we need -- we

25   need confirmation from the banks.  We haven't seen any
```

Page 45

```
 1    progress over the last year-and-a-half for any of these

 2    claims, other than Mr. Naber providing blocking numbers that

 3    were duplicative of the very same banks that the debtors

 4    believe are duplicative.  So, while it would be easy to say

 5    let's go back and spend more time trying to reconcile these

 6    claims, I -- I fear that it would be futile at this point,

 7    because there really hasn't been any progress over the last

 8    year-and-a-half.

 9              Additionally, with respect to -- I believe

10    Mr. Naber raised a question -- well, the debtors need to --

11    or can the debtors get the confirmation from the banks about

12    duplication.  Quite frankly, there are disclosure issues

13    that the banks have in terms of disclosing the names of

14    their customers, but, if these claimants are the beneficial

15    holders, if they are, in fact, the customers of the banks,

16    they should be able to get confirmation from the banks

17    themselves.  They should be able to walk into a branch or

18    call their bank nationally and say I am your customer,

19    please give me confirmation that you are filing for my

20    claim.

21              So we've really reached the point where there is

22    not much left that the debtors can do or what seems like the

23    claimants can do to reconcile these issues, and -- and --

24    and I do have one more point, very brief.  That, in terms of

25    how does this prejudice the debtors moving forward,
```

Page 46

1    Your Honor, the -- the dollar amounts -- they're not high

2    compared to what some other claims that we've -- that

3    certainly you've seen throughout these cases, but this will

4    require more manpower from the debtors, more time, and more

5    administrative efforts to reconcile claims where, quite

6    frankly, the debtors have concluded are already covered by

7    other validly filed claims.  So there is some prejudice to

8    the debtors in that this will require more effort, time, and

9    expense that has already been -- been brought to whatever

10   can be done for the last year-and-a-half, and so, that's all

11   I have, Your Honor.

12            THE COURT:  All right.

13            Mr. Naber, do you have anything more to add?

14            MR. NABER:  Not really, Your Honor.  You know,

15   we're -- we're kind of at the end of our wisdom (ph), I

16   think, both of us, but we have been working to eliminate

17   some of those claims.

18            I believe when -- when omnibus objection ninety-

19   two came into being, there were over 80, and we're now down

20   to 55.  So -- so things have moved, and, at this point, I

21   think neither one of -- it may be the Court's decision,

22   because no one knows, you know, (indiscernible - 1:02:03).

23   So the two options we -- we want -- can see is we either

24   (indiscernible - 1:02:09) one way or another, or we put the

25   -- the names (ph) on the spot (ph) saying we object to -- or

Page 47

1    we allow an objection to their claim for the same amount,

2    and -- and people can (ph) proof or documentation.  So

3    those, I think, are the two options we have today, and --

4    and -- but thank you.  I'll be happy to hear the decision.

5           THE COURT:  Well, I'm not sure if you're going to

6    be happy with what I'm about to say right now.

7           This has been pending for quite a while, and I am

8    personally very familiar with the proof of claim procedures

9    that were adopted in these cases and, in particular, the

10   component that required a blocking number to be obtained in

11   connection with claims arising out of Lehman program

12   securities.  This is probably a close as you get to a truly

13   unique claim in any bankruptcy case, because the securities

14   in question are freely transferable, do not involve a

15   central registrar or trustee to maintain records, and the

16   blocking number was devised as a way to protect against the

17   very risk that we're now discussing on the record today.

18   That risk being of multiple payments in connection with the

19   same ISN number.

20          One of the problems presented here is that there

21   is no identified procedure to indemnify the estate from the

22   risk associated with double payment, and I rather suspect

23   that none of Mr. Naber's clients are prepared to provide

24   such indemnity, nor am I aware of any financial institution

25   that's prepared to provide such indemnity, and so, while the

1    amounts may not be great, the risk to the estate is such

2    that should there be a payment made to one of these

3    claimants in his or her individual capacity and, in fact,

4    that represents a double payment with respect to a

5    distribution that passed through a financial institution

6    that was acting in a representative capacity for those

7    claimants and others similarly situated with respect to the

8    subject securities, there is no practical remedy.

9          Additionally, there is the risk that in making

10   double payment with respect to a particular claimant, even

11   though the amount and the context of these cases is

12   relatively small, there is a notional impact upon the

13   creditors generally.  It's de minimis in the case of some of

14   these individual holders, but if the risk is spread to a

15   broader class, it may become, if not material -- material,

16   at least notable.

17         So, in part because I believe that the bar date

18   requirement for obtaining blocking numbers was clear and

19   explicit and followed by substantially all of the holders of

20   Lehman program securities in the marketplace, including

21   individuals who are resident of Germany, the group we're now

22   talking about is the exception, not the rule.  We've been

23   fully patient in dealing with this particular category of

24   claimants, and, at this juncture and particularly, based

25   upon some of the statements made by Ms. Clack concerning the

Page 49

1    administrative burdens associated with trying to track this

2    down to some kind of final answer, I believe that the

3    ninety-second omnibus objection and the supplement to the

4    ninety-second omnibus objection should be granted.

5           In saying this, however, I note that there is

6    precedent from this morning's hearing that, if it can

7    actually be shown in the context of ongoing dealings with

8    the financial institutions in question that the individuals

9    have been prejudiced by this result, it would be without

10   prejudice to Mr. Nabers (sic) filing some kind of subsequent

11   motion seeking relief for cause shown on behalf of

12   individual clients adversely impacted by this decision.  In

13   saying this, I do not by any means invite such motion

14   practice, nor do I give any indication as to how I might

15   rule with respect to such a motion.  It would be based upon

16   the facts presented, and I will entertain an appropriate

17   order.

18          We will adjourn for five minutes so that those

19   individuals who are in court for the 11:00 a.m. hearing can

20   submit their appearances, and I'll come back at 11:15.

21          MR. KASENETZ:  Thank you, Your Honor.

22          MR. NABER:  Thank you, Your Honor.

23      (Proceeding concluded at 1:08 p.m.)

24

25

Page 50

1                               I N D E X

2

3                              RULINGS

4                                          Page        Line

5    Debtors Three Hundred Sixty-Second      9           24

6    Omnibus Objection to Claim

7

8    Merits Hearing with Respect to Proofs   16           5

9    of Claim Numbers 55396, 41225, and 60352

10

11   Ninety-Second Omnibus Objection to Claims   49       3

12   and Supplement to the Ninety-Second

13   Omnibus Objection to Claims

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3    I, Nicole Yawn, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Nicole          Digitally signed by Nicole Yawn
                     DN: cn=Nicole Yawn, o, ou,
7    Yawn            email=digital1@veritext.com,
                     c=US
8                    Date: 2012.11.27 17:10:06 -05'00'

Veritext

9

200 Old Country Road

10

Suite 580

11

Mineola, NY 11501

12

13

Date:  November 27, 2012

14

15

16

17

18

19

20

21

22

23

24

25