Hearing Date: December 19, 2012 at 2:00 p.m. (Prevailing Eastern Time)

Richard Hiersteiner
Jeanne P. Darcey
Amy A. Zuccarello
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Telephone: (617) 338 -2800
Facsimile:  (617) 338 -2880

*Attorneys for U.S. Bank National Association, as*
*Member of the Committee and as Indenture Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
In re:                                                            :          Chapter 11 Case No.
                                                                     :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :          08-13555 (JMP)
                                                                     :
                              Debtors.                        :          (Jointly Administered)
                                                                     :
--------------------------------------------------------- x

### REPLY OF U.S. BANK NATIONAL ASSOCIATION IN OPPOSITION TO REFOCUSED OBJECTION OF WILLIAM KUNTZ, III, AND IN FURTHER SUPPORT OF ITS APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES, AS A MEMBER OF THE CREDITORS' COMMITTEE AND AS INDENTURE TRUSTEE

U.S. Bank National Association ("U.S. Bank"), as Indenture Trustee and as a member of

the Official Unsecured Creditors' Committee (the "Committee") appointed in the chapter 11

cases of Lehman Brothers Holdings Inc. and its affiliated debtors in possession (collectively, the

"Debtors"), hereby submits this Reply to the Refocused Objection of William Kuntz, III, (ECF

No. 32801 the "Objection").    In response to the Objection, and in further support of its

application for payment of fees and reimbursement of expenses as a member of the Committee

and as Indenture Trustee, U.S. Bank sets forth the following:

## REPLY

1.      The Objection is a repackaging of unsupported allegations by Mr. Kuntz which this Court has already rejected in their entirety. His claims in this case, based upon a supposed connection between the former chapter 11 cases of Grand Union Capital Corporation and The Grand Union Company (collectively, "Grand Union") and the Debtors, have been expunged. He now seeks recovery from U.S. Bank, his fourth targeted victim after Lehman Commercial Paper, Inc. ("LCPI"), Weil, Gotshal & Manges LLP ("Weil") and Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), by asserting that U.S. Bank should somehow be held responsible in this case because it (or its predecessor) previously served as a successor indenture trustee for certain Grand Union notes and also serves as a member of the Committee here. Once again, however, the Kuntz Objection provides no set of facts to establish any connection between Grand Union and this case, never mind any facts that demonstrate entitlement to recovery from U.S. Bank. He is entitled to nothing from U.S. Bank.

2.      Instead, the Objection, when taken together with the objection and exhibits filed by Mr. Kuntz to the payment of fees sought by Milbank, as Committee counsel (ECF No. 31660, the "Milbank Fee Objection"), demonstrates that Mr. Kuntz has suffered no damage by actions taken, or omitted to be taken, by U.S. Bank in the Grand Union cases, much less this case. Specifically, Mr. Kuntz asserts that he is the holder of certain Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004 (the "Zero Coupon Notes"). He then asserts that U.S. Bank, or its predecessor, failed to maintain a sufficient inventory of blank Zero Coupon Notes to provide him a replacement certificate for his Zero Coupon Notes that, he alleges, were incorrectly converted to warrants.

3.      Grand Union has had a checkered past, including 3 separate chapter 11

2

proceedings. Grand Union first filed a chapter 11 case in the Bankruptcy Court for the District of Delaware, in January 1995. In the 1995 bankruptcy case, the Zero Coupon Notes were cancelled, and the holders thereof received, on account of their claims, their *pro rata* portion of two series of warrants in The Grand Union Company, exercisable over the following 5 years.[1] Therefore, Mr. Kuntz's Zero Coupon Notes were converted into warrants appropriately by virtue of the Grand Union's 1995 confirmed plan.

4.    Subsequently, Grand Union filed a second chapter 11 petition in 1998, in the U.S. Bankruptcy Court for the District of New Jersey, Case No. 98-27912, *et al*. At that time, Mr. Kuntz at most would have held warrants (or shares, had he exercised such warrants) on account of his Zero Coupon Notes. On August 5, 1997, the Bankruptcy Court in New Jersey confirmed Grand Union's reorganization plan, which provided for the cancellation of all of Grand Union's preferred and common stock, and any outstanding warrants or options, but granted new warrants to holders of Grand Union's preferred and common stock.[2]

5.    Notwithstanding each of the confirmed reorganization plans, at the urging of Mr. Kuntz the New Jersey Bankruptcy Court thereafter entered an order, dated August 20, 1999 (a copy of which is attached to the Milbank Fee Objection, the "August 20, 1999 Order"), directing Grand Union to re-issue a new Zero Coupon Note to Mr. Kuntz. That order provides, in pertinent part:

> ORDERED, that, upon its issuance, the New Note shall replace that certain "Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004 in the

---

[1] *See*, Annual Report of The Grand Union Company, Form 10-K, dated June 30, 1995, at Part I, describing the Chapter 11 Reorganization. A copy of the relevant excerpt is attached hereto as Exhibit A.

[2] *See*, Quarterly Report of The Grand Union Company, Form 10-Q, dated August 31, 1998, describing the recoveries provided under the Grand Union chapter 11 plan. A copy of the relevant excerpt is attached hereto as Exhibit B.

face amount of $892,000" certificate number R-000806 (the "Old Note"), which Old Note was exchanged for Grand Union warrants on or about September 17, 1997 and such Old Note shall be of no force or effect and may not for any reason be asserted and/or enforced against any party, including Grand Union, its agents (including IBJ Schroder Bank & Trust Company n/k/a IBJ Whitehall Bank & Trust Company, The Depository Trust Company, US Bancorp f/k/a First Trust National Association, and Bankruptcy Trust Company) and assigns; and it is further

ORDERED, that neither Grand Union nor its agents (including IBJ Schroder Bank & Trust Company n/k/a IBJ Whitehall Bank & Trust Company, The Depository Trust Company, US Bancorp f/k/a First Trust National Association, and Bankruptcy Trust Company) and assigns shall be liable to any person or party for any claims, actions, suits, losses, damages, costs, charges, counsel fees, and other expenses by reason of the reissuance of the New Note; ...

*See*, August 20, 1999 Order, at pp. 2-3. As set forth above, by virtue of the August 20, 1999 Order, neither U.S. Bank nor any other person continues to be liable on account of either the original or reissued Zero Coupon Note.

6.      Despite the August 20, 1999 Order, Grand Union was unable to issue a replacement note to Mr. Kuntz because no physical inventory of Zero Coupon Notes continued to exist following their cancellation, and Grand Union Capital Corporation itself no longer existed.[3] Therefore, by Order dated February 23, 2000, the New Jersey Bankruptcy Court entered an Order (A) Authorizing Grand Union to Issue a Stipulation as a Substitute Note to Kuntz and (B) Denying Kuntz Contempt Motion (the "Stipulation"). As part of the Stipulation, Mr. Kuntz obtained the equivalent of his Zero Coupon Notes, in the amount of $892,000; and

---

[3] Of course, as a result of the earlier confirmed plan of reorganization converting the Zero Coupon Notes to warrants, there would not have been any need or requirement on the part of any party to maintain any inventory of Zero Coupon Notes, for replacement or otherwise.

thereupon held the same rights as if he held a certificated Zero Coupon Note.[4] Accordingly, Mr. Kuntz has suffered no harm or damage by virtue of the failure, if any, to maintain physical note inventory.

7.    If this weren't enough, Grand Union filed a third proceeding in October, 2000, also in the U.S. Bankruptcy Court for the District of New Jersey, Case No. 00-39613, *et al.* As part of this final proceeding, Grand Union liquidated its assets and, in October, 2002, the New Jersey Bankruptcy Court confirmed the First Amended Plan of Liquidation of The Grand Union Company Under Chapter 11 of the Bankruptcy Code, date August 20, 2002 (the "Plan of Liquidation") – a plan that provided **zero** recovery on account of general unsecured claims and equity interests, and cancelled all shares, warrants, options and/or other interests in Grand Union.[5] It is clear, therefore, that whether Mr. Kuntz's Zero Coupon Notes remained as debt or as equity, any claims on account of such notes received no recovery under the Grand Union Plan of Liquidation and have been cancelled and discharged.

8.    In addition, Mr. Kuntz seems to assert that LCPI, as a lender to Grand Union in its third bankruptcy case, may have obtained payment out of that case, that should otherwise have been payable to the holders of Zero Coupon Notes.  Moreover, Mr. Kuntz apparently believes that U.S. Bank, as successor trustee for the Zero Coupon Notes, should have either obtained those funds or prevented LCPI from recovering such funds.  As set forth above, however, the Grand Union Plan of Liquidation provided no recovery to general unsecured creditors or to equity interests.  As a consequence, Mr. Kuntz has no ability to assert claims against U.S. Bank.

9.    Mr. Kuntz has failed to establish – and simply cannot establish – any right to a

---

[4] As set forth above, Mr. Kuntz would have, at most, held equity in The Grand Union Company, had he exercised the warrants that were issued on account of those notes under either the first or second plan.

[5] A copy of the relevant excerpts from the Plan of Liquidation is attached hereto as Exhibit C.

recovery from U.S. Bank in any court whatsoever. The confirmed plans three times discharged any claims he had on account of the Zero Coupon Notes, and ultimately any equity or warrants issued on account of such Notes. Moreover, the August 20, 1999 Order provides that U.S. Bank cannot be held liable. Accordingly, any attempt to extract a recovery in this case should not be permitted.

10.     Finally, as set forth in the Reply dated November 27, 2012, filed by Milbank to the Milbank Fee Objection [ECF No. 32339], this Court has either expunged or denied each of the claims filed by Mr. Kuntz in this case. As a result, Mr. Kuntz has no standing to object to the fee application of U.S. Bank in this case.

## CONCLUSION

As a result of all of the foregoing, this Court should deny the Objection, and grant the fee application of U.S. Bank, as a member of the Committee and as Indenture Trustee, in its entirety.

Dated: December 14, 2012
Boston, Massachusetts

U.S. Bank National Association, as a member of the
Committee and as Indenture Trustee


*/s/ Richard Hiersteiner*
Richard Hiersteiner
Jeanne P. Darcey
Amy A. Zuccarello
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617-338-2800
Fax: 617-338-2880
rhiersteiner@sandw.com
jdarcey@sandw.com
azuccarello@sandw.com

6

**EXHIBIT A**

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 DY1+NUQQcwnCC+3S0FE/QXkZ5KYF708XzpvHpNoHrBcbxIGorPHdN0yiSqnOjqDn
 m09QLaPnEx/Rx1ScQCz/ow==

<SEC-DOCUMENT>0000912057-95-005098.txt : 20030212
<SEC-HEADER>0000912057-95-005098.hdr.sgml : 20030212
<ACCEPTANCE-DATETIME>19950630150944
ACCESSION NUMBER:        0000912057-95-005098
CONFORMED SUBMISSION TYPE:    10-K
PUBLIC DOCUMENT COUNT:        21
CONFORMED PERIOD OF REPORT:    19950401
FILED AS OF DATE:        19950630
SROS:            NONE

FILER:

    COMPANY DATA:
        COMPANY CONFORMED NAME:        GRAND UNION CO /DE/
        CENTRAL INDEX KEY:        0000316236
        STANDARD INDUSTRIAL CLASSIFICATION:    RETAIL-GROCERY STORES [5411]
        IRS NUMBER:            251518276
        STATE OF INCORPORATION:        DE
        FISCAL YEAR END:        0325

    FILING VALUES:
        FORM TYPE:        10-K
        SEC ACT:        1934 Act
        SEC FILE NUMBER:033-48282-01
        FILM NUMBER:        95551570

    BUSINESS ADDRESS:
        STREET 1:        201 WILLOWBROOK BLVD
        CITY:            WAYNE
        STATE:            NJ
        ZIP:            07470-0966
        BUSINESS PHONE:        2018906000

    MAIL ADDRESS:
        STREET 1:        201 WILLOWBROOK BLVD
        CITY:            WAYNE
        STATE:            NJ
        ZIP:            07470

    FORMER COMPANY:
        FORMER CONFORMED NAME:    SUCCESSOR TO GRAND UNION CO/VA/
        DATE OF NAME CHANGE:    19600201
</SEC-HEADER>
<DOCUMENT>
<TYPE>10-K
<SEQUENCE>1
<DESCRIPTION>10-K
<TEXT>

<PAGE>

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 10-K

ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended April 1, 1995
              ------------

Commission File Number 33-48282-01
              ----------

THE GRAND UNION COMPANY
(Exact name of registrant as specified in its charter)

| Delaware | 22-1518276 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| 201 Willowbrook Boulevard, Wayne, New Jersey | 07470 |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code    201-890-6000
                              --------------------

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Not Applicable | Not Applicable |

Securities registered pursuant to Section 12(g) of the Act:

                              Not Applicable
- - -------------------------------------------------------------
                             (Title of Class)

     Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 during the preceding 12 months (or for such shorter period that the
registrant was required to file such reports), and (2) has been subject to such
filing requirements for the past 90 days.    Yes  X    No
                                                 -----    ------

     Indicate by check mark if disclosure of delinquent filers pursuant to Item
405 of Regulation S-K is not contained herein, and will not be contained, to the
best of the Registrant's knowledge, in definitive proxy or information
statements incorporated by reference in Part III of this Form 10-K or any
amendment to this Form 10-K.        [X]

     Indicate by check mark whether the registrant has filed all documents and
reports required to be filed by Section 12, 13 or 15(d) of the Securities
Exchange Act of 1934 subsequent to the distribution of securities under a plan
confirmed by a court.    Yes  X    No
                            -----    -----

     As of June 30, 1995, the number of shares outstanding of the Registrant's
common stock, par value $1.00 per share, was 10,000,000 shares.  As of June 30,
1995, the common stock of the Registrant is not listed on any national
securities exchange.

     Documents incorporated by reference:    None
                                             ----

<PAGE>

                        THE GRAND UNION COMPANY

PART I

ITEM 1.  BUSINESS

GENERAL

     The Grand Union Company, a Delaware corporation ("Grand Union" or the
"Company"), currently operates 231 retail food stores under the "Grand Union"
name in six northeastern states.

CHAPTER 11 REORGANIZATION

     On November 29, 1994, Grand Union announced that it was not likely to be
able to fund cash interest payments due in early calendar 1995, and that it
intended to develop a capital restructuring plan.  Beginning on January 16,
1995, Grand Union did not make interest payments required under its outstanding
debt obligations.

     On January 24, 1995, Grand Union announced that it had reached an agreement
in principle with Grand Union's bank lenders and with members of informal
committees of certain holders of Grand Union's 11.375% Senior Notes due 1999
(the "11.375% Senior Notes") and 11.25% Senior Notes due 2000 (the "11.25%
Senior Notes" and collectively with the 11.375% Senior Notes, the "Senior
Notes") and certain holders of Grand Union's 12.25% Senior Subordinated Notes
due 2002 (the "12.25% Subordinated Notes") and 12.25% Senior Subordinated Notes
due 2002, Series A (the "Series A 12.25% Subordinated Notes", together with the
13% Senior Subordinated Notes due 1998 (the "13% Subordinated Notes") and the
12.25% Subordinated Notes, the "Subordinated Notes") on the terms of a
restructuring of Grand Union's capital structure.

     On January 25, 1995 (the "Filing Date"), as part of the implementation of
such agreement, Grand Union filed a voluntary petition for relief under chapter
11 ("Chapter 11") of Title 11 of the United States Code (the "Code")
in the United States Bankruptcy Court for the District of Delaware (the
"Bankruptcy Court").  From the Filing Date through June 15, 1995 (the "Effective
Date", as defined below), Grand Union operated as a debtor-in-possession under
Chapter 11 of the Code and was subject to the supervision of the Bankruptcy
Court in accordance with the Code.  During this period, Grand Union's business
was operated under a series of "first day orders", which, among other things,
permitted it to retain certain financial and legal advisors and which authorized
payment of certain pre-petition employee costs, including worker's compensation
benefits, and pre-petition trade claims, subject to the satisfaction of various
requirements.

     On January 30, 1995, Grand Union (as debtor and as debtor-in-possession)
entered into a credit agreement (the "DIP Facility") with the banks party
thereto providing for borrowings of up to $150 million on a revolving credit
basis.  On February 16, 1995, final approval of the DIP Facility was granted and
the Bankruptcy Court also issued a Final Cash Collateral Order which allowed
Grand Union to use cash collateral to pay operating expenses in the ordinary
course of business.  There were no borrowings made under the DIP Facility during
the Chapter 11 proceedings and it was terminated on the Effective Date.

     On February 16, 1995, Grand Union Capital Corporation ("Capital"), which
prior to the Effective Date owned all of the issued and outstanding common stock
of Grand Union (the "Old Common Stock"), consented to the entry of an order for
relief in respect of an involuntary Chapter 11 petition filed in the Bankruptcy
Court on February 6, 1995 by entities purporting to be holders of Capital's 15%
Senior Zero Coupon Notes due 2004 (the "Capital Senior Zero Notes") and 16.5%
Senior Subordinated Zero Coupon Notes due 2007 (the "Capital Subordinated Zero

Notes" and collectively with the Capital Senior Zero Notes, the "Capital Notes").  On February 16, 1995, Grand Union Holdings Corporation ("Holdings"), of which Capital is a wholly owned subsidiary, filed a voluntary Chapter 11 petition in the Bankruptcy Court.  Capital and Holdings are currently operating as debtors-in-possession under the protection of Chapter 11, each in bankruptcy proceedings separate from Grand Union, and are each subject to the jurisdiction and supervision of the Bankruptcy Court.  Prior to the Effective Date, the principal asset of Capital and, indirectly, of Holdings was the common stock of Grand Union.

The Bankruptcy Court confirmed the Second Amended Chapter 11 Plan of The Grand Union Company, dated as of April 19, 1995 (as confirmed, the "Plan"), on May 31, 1995 (the "Confirmation Date"), and the Company emerged from Chapter 11 on June 15, 1995 (the "Effective Date").  Two proceedings challenging the order confirming the Plan are pending.  The Company does not believe that either proceeding will result in any modification or revocation of the

1

<PAGE>

order.  On the Effective Date, Grand Union adopted a restated certificate of incorporation (the "New Certificate"), the principal effects of which are: (i) to authorize 30,000,000 shares of new common stock (the "New Common Stock") (of which 10,000,000 shares were issued under the Plan) and 10,000,000 shares of preferred stock (none of which will be issued under the Plan) and (ii) to prohibit the issuance of non-voting equity securities.  The Plan provides for full payment of all allowed administrative expenses and all allowed general unsecured and priority claims.  On the Effective Date, obligations relating to the Company's existing bank credit agreement (the "Bank Credit Agreement") were paid in full and the Company  entered into an Amended and Restated Credit Agreement (the "New Bank Facility") with its bank lending group which provides for a five-year revolving credit facility of $100,000,000  (the "New Revolving Credit Facility") and a seven-year term loan facility of $104,144,371 (the "New Term Loan").  The New Bank Facility is secured by a lien on substantially all of the assets of Grand Union and its subsidiaries.

As of  the Effective Date, the Senior Notes were deemed cancelled and each holder of Senior Notes became  entitled to receive its pro rata share of Grand Union's new 12% Senior Notes due 2004 (the "New Senior Notes") having an aggregate principal amount of $595,475,922 issued pursuant to the Plan.

As of the Effective Date, the Subordinated Notes and the Old Common Stock were deemed cancelled and each holder of Subordinated Notes became entitled to receive its pro rata share of an aggregate of 10,000,000 shares of Grand Union's New Common Stock issued pursuant to the Plan.

The Plan also provided for the issuance of warrants to purchase an aggregate of 900,000 shares of New Common Stock to holders of the Capital Notes pursuant to the terms of a settlement reached among the Company, Capital, Holdings, the Official Committee of Unsecured Creditors of Capital and certain holders of the Capital Notes.  In accordance with the terms of the settlement, on the Effective Date, and solely for the purpose of effectuating the settlement, any claims against the Company arising from the Capital Notes were discharged and (i) each holder of Capital Senior Zero Notes became entitled to receive its pro rata share of 240,000 Series 1 Warrants to purchase shares of New Common Stock at a purchase price of $30 per share ("Series 1 Warrants") and of 480,000 Series 2 Warrants to purchase shares of New Common Stock at a purchase price of $42 per share ("Series 2 Warrants") and (ii) each holder of Capital Subordinated Zero Notes became entitled to receive its pro rata share of 60,000 Series 1 Warrants and 120,000 Series 2 Warrants, provided that holders of $200,000 or more principal amount of either the Capital Senior Zero Notes or Capital Subordinated Zero Notes are required to execute a release of all claims relating to such Capital Notes as a condition to receiving the distribution.

The Plan made no provision for the holders of the 12% Junior Subordinated Notes due 1999 (the "Holdings Junior Notes") or Redeemable Preferred Stock issued by Holdings or the common shares or warrants to purchase common shares of Holdings.

STORE FORMATS

Grand Union's store sizes and formats vary depending upon the demographics and competitive conditions in each location, as well as the availability of real estate.  Grand Union supermarkets offer a wide selection of national brand and private label products as well as high-quality produce, meat and general merchandise.  The majority of the Company's sales are generated from stores which also contain a number of high margin specialty and service areas for such goods as imported and domestic produce, salads, hot and cold prepared foods, seafood and fresh-baked goods.  Select stores feature in-store kitchens and pharmacies.  Liquor and wine departments are included where permitted by local law.  Grand Union's supermarkets range in size from 14,000 to 64,000 square feet and newly constructed stores are typically in excess of 40,000 square feet.

MERCHANDISING STRATEGY

Grand Union's current merchandising strategy is premised upon the following:

VALUE.  The Company's strategy is to provide value to the customer by offering competitive prices and a wide variety of advertised and unadvertised specials, sponsoring special promotions and offering a wide selection of private label products.

MERCHANDISE ASSORTMENT.  Management believes that many consumers prefer food stores that not only offer the wide variety of food and non-food items carried by conventional supermarkets, but also sell an expanded assortment of

# EXHIBIT B

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 Vx+h/aarTUDCS26qGKwp1BQGRiIHIKJG4P84T5w9Oe6x45SjzEhEAro4Z6glqtuU
 d3+fA2p0gsSbO5puD0KoFQ==

<SEC-DOCUMENT>0000889812-98-002100.txt : 19980901
<SEC-HEADER>0000889812-98-002100.hdr.sgml : 19980901
ACCESSION NUMBER:        0000889812-98-002100
CONFORMED SUBMISSION TYPE:    10-Q
PUBLIC DOCUMENT COUNT:        9
CONFORMED PERIOD OF REPORT:    19980718
FILED AS OF DATE:        19980831
SROS:            NONE

FILER:

    COMPANY DATA:
        COMPANY CONFORMED NAME:        GRAND UNION CO /DE/
        CENTRAL INDEX KEY:        0000316236
        STANDARD INDUSTRIAL CLASSIFICATION:    RETAIL-GROCERY STORES [5411]
        IRS NUMBER:            221518276
        STATE OF INCORPORATION:        DE
        FISCAL YEAR END:        0328

    FILING VALUES:
        FORM TYPE:        10-Q
        SEC ACT:
        SEC FILE NUMBER:001-07824
        FILM NUMBER:        98701744

    BUSINESS ADDRESS:
        STREET 1:        201 WILLOWBROOK BLVD
        CITY:            WAYNE
        STATE:            NJ
        ZIP:            07470-0966
        BUSINESS PHONE:        2018906000

    MAIL ADDRESS:
        STREET 1:        201 WILLOWBROOK BLVD
        CITY:            WAYNE
        STATE:            NJ
        ZIP:            07470

    FORMER COMPANY:
        FORMER CONFORMED NAME:    SUCCESSOR TO GRAND UNION CO/VA/
        DATE OF NAME CHANGE:    19600201
</SEC-HEADER>
<DOCUMENT>
<TYPE>10-Q
<SEQUENCE>1
<DESCRIPTION>QUARTERLY REPORT
<TEXT>

<PAGE>
<PAGE>

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 10-Q

[X]    QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
       EXCHANGE ACT OF 1934

       For the quarterly period ended July 18, 1998

[ ]    TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
       EXCHANGE ACT OF 1934

       For the transition period from _____ to _____

Commission File Number 0-26602

THE GRAND UNION COMPANY
(Exact name of registrant as specified in its charter)

          Delaware                        22-1518276
(State or other jurisdiction of     (I.R.S. Employer Identification No.)
    incorporation or
     Organization)

    201 Willowbrook Boulevard, Wayne, New Jersey        07470-0966

| | | | |
|---|---|---|---|
| Repayment of old bank debt | | (104,144) | - |
| Obligations under capital leases discharged | | (2,509) | (2,900) |
| Net repayment of credit facility | | (17,000) | (8,046) |
| Net cash provided by (used for) financing activities | | (15,653) | 29,054 |
| Net (decrease) in cash and temporary investments | | (4,639) | (1,046) |
| Cash and temporary investments at beginning of year | | 44,745 | 34,119 |
| Cash and temporary investments at end of period | $ | 40,106 | $ 33,073 |
| Supplemental disclosure of cash flow information: | | | |
| Interest payments | $ | 11,894 | $ 11,165 |
| Capital lease obligations incurred | | - | 7,157 |
| Accrued dividends | | 2,305 | 2,057 |

</TABLE>

See accompanying notes to consolidated financial statements (unaudited).

5

<PAGE>

THE GRAND UNION COMPANY
(DEBTOR-IN-POSSESSION)
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(unaudited)

NOTE 1 - Subsequent Events

On August 17, 1998, The Grand Union Company (the "Company") consummated its plan of reorganization under Chapter 11 of the Bankruptcy Code (the "Plan of Reorganization") pursuant to the August 5, 1998 Confirmation Order of the United States Bankruptcy Court for the District of New Jersey. Consummation of the Plan of Reorganization has resulted in a capital restructuring of the Company, whereby approximately $600 million in Old Senior Notes has been eliminated from the Company's balance sheet, reducing annual interest expense by approximately $72 million.

Consummation of the Plan of Reorganization has resulted in (i) the issuance of 30,000,000 shares of New Common Stock to the holders of the Company's Old Senior Notes; (ii) the issuance of New Series 1, Series 2 and Series 3 Warrants to the holders of the Company's Old Preferred Stock; (iii) the issuance of New Series 1 Warrants to holders of the Company's Old Common Stock; and (iv) cancellation of the Company's Old Senior Notes, Old Preferred Stock, Old Common Stock, Old Series 1 and Series 2 Warrants and Old Stock Options. As of August 28, 1998, the Company's New Common Stock is trading on the OTC market. The Company has a pending application for listing on the NASDAQ National Market.

On August 17, 1998, in connection with the consummation of the Plan of Reorganization, the Company entered into a $300 million credit agreement (the "Credit Agreement") underwritten by UBS AG, Stamford Branch and Lehman Commercial Paper Inc. ("LCPI"), which is secured by substantially all of the assets of the Company and its subsidiaries and is guaranteed by the Company's subsidiaries. Some of the proceeds of the Credit Facility were used to pay off the Company's obligation under its debtor-in-possession credit agreement (the "DIP Facility"), which had provided the Company operating liquidity during the Chapter 11 case.

Consummation of the Plan of Reorganization has resulted in the election of a new Board of Directors for the Company (the "Board"). Effective August 17, 1998, the Board is comprised of eleven members. The three management Directors are: J. Wayne Harris, Chairman and Chief Executive Officer; Jack W. Partridge Jr., Vice Chairman and Chief Administrative Officer, and Gary M. Philbin, President and Chief Merchandising Officer. The eight additional members of the Board are: Martin Bernstein, Thomas R. Cochill, Joseph Colonnetta, Jacob W. Doft, David M. Green, Joseph V. Lash, Anthony Petrillo and Scott Tepper.

For more information about the Plan of Reorganization, reference is made to Exhibit 2.1 to Grand Union's report on Form 8-K dated August 19, 1998. For more information about the Credit Agreement, reference is made to Exhibit 10.6 hereto. For more information about members of the Board, reference is made to Exhibit 99.2 to Grand Union's report on Form 8-K dated August 19, 1998. Reference is also made to Part II of this report on Form 10-Q.

NOTE 2 - Basis of Presentation

The accompanying interim consolidated financial statements of the Company include the accounts of the Company and its subsidiaries, all of which are wholly owned. In the opinion of management, the consolidated financial statements include all adjustments, which consist only of normal recurring items, necessary for a fair presentation of operating results for the interim periods.

These consolidated financial statements should be read in conjunction with the consolidated financial statements and related notes contained in the

Company's Annual Report on Form 10-K for the 52 weeks ended March 28, 1998 and the Form 8-K dated May 27, 1998 and to the Company's Disclosure Statement attached thereto as Exhibit 2.1. Operating results for the periods presented are not necessarily indicative of results for the full fiscal year.

Certain reclassifications have been made to prior year amounts to conform to current period presentation.

6

<PAGE>

NOTE 3 - Liabilities Subject to Compromise

Liabilities subject to compromise refer to certain liabilities incurred prior to the commencement of the reorganization process. These liabilities consist of the face value of the Old Senior Notes and the associated accrued interest. These amounts represent management's best estimate of known or potential claims to be resolved in connection with the Chapter 11 filing. The Plan of Reorganization provides that each Old Senior Note claim shall receive, in full satisfaction of such allowed Old Senior Note claim, its ratable proportion of 30,000,000 shares of New Common Stock (representing 100% of the initial shares of such New Common Stock), subject to possible dilution from the New Warrants and management options.

NOTE 4 - Preferred Stock Dividends

The preferred stock dividends for the current period were accrued through June 23, 1998. Pursuant to the Plan of Reorganization, this amount of $2,305,000 will not be paid. For more information about the elimination of preferred stock, reference is made to Exhibit 4.1 to Grand Union's report on Form 8-K dated August 19, 1998.

NOTE 5 - Unusual Items

The Company recorded a charge to operations in the 16 weeks ended July 18, 1998 of $4,509,000. This charge was comprised of expenses related to the Plan of Reorganization net of a gain resulting from the elimination of debt premiums.

NOTE 6 - Extraordinary Items

The extraordinary item expense for the 16 weeks ended July 18, 1998 of $1,739,000 is related to the write-off of deferred financing costs associated with a term loan refinanced by the DIP Facility.

NOTE 7 - Debt

The components of the Company's debt, excluding liabilities subject to compromise, are as follows (in thousands):

<TABLE>
<CAPTION>

| | July 18, 1998 | March 28, 1998 |
|---|---|---|
| <S> | <C> | <C> |
| Bank Credit Agreements | | |
| Term Loans | $ 77,978 | $ 182,122 |
| Revolving Credit Facility | - | 17,000 |
| DIP Facility | 108,000 | |
| 12% Senior Notes due September 1, 2004 (includes $4,008 of unamortized debt premium at March 28, 1998) | - | 599,429 |
| | 185,978 | 798,551 |
| Less: current maturities of long-term debt | 185,978 | 798,551 |
| Long-term debt | $ - | $ - |

</TABLE>

In connection with the Chapter 11 filing, the Company entered into the DIP Facility, a $172,022,020 firm underwritten revolving credit agreement with Swiss Bank Corporation ("SBC") and LCPI, as agents for a syndicate of lenders. The DIP Facility consisted of a revolving credit facility in an aggregate amount of $172,022,020, inclusive of a $50 million letter of credit sub-facility. The DIP facility matured on August 17, 1998, the consummation date of the Plan of Reorganization.

The proceeds of the DIP Facility were used (i) to finance the working capital needs of the Company and its subsidiaries in the ordinary course of business, (ii) to finance the payment of Chapter 11 expenses, (iii) for general corporate purposes and (iv) to refinance the revolving credit facility and term loan under the pre-Chapter 11 Credit Agreement (the "Old Credit Agreement") and to replace or backstop letters of credit outstanding under an existing credit agreement. The DIP Facility was secured by substantially all of the assets of Grand Union and its subsidiaries and was guaranteed by the Company's subsidiaries. At July 18, 1998, an aggregate of $33 million of letters of credit were issued and outstanding under the DIP facility.

7

<PAGE>

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------x
                                   :

**In re**                    :         **Chapter 11 Case No. 00-39613**
                            :         **through 00-39616 (NLW)**

**THE GRAND UNION COMPANY, *et al.*,** :

                            :         **Jointly Administered**

           **Debtors.**       :
                            :
------------------------------------------------------x

**FIRST AMENDED PLAN OF LIQUIDATION OF THE GRAND UNION
COMPANY UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500

-and-

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Co-Attorneys for Debtors and
Debtors in Possession


Dated: Newark, New Jersey
       August 20, 2002

    **1.50**   <u>**Treasury Regulations**</u> means final, temporary and proposed regulations promulgated by the U.S. Treasury Department in respect of the IRC.

<u>**OTHER TERMS**</u>.

    A term used in the Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

<u>**CONSTRUCTION OF CERTAIN TERMS**</u>.

    The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

## ARTICLE II.
### TREATMENT OF ADMINISTRATIVE
### EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

    **2.1**   <u>**Administrative Expense Claims**</u>. On the Effective Date, or as soon thereafter as is reasonably practical, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim an amount in cash equal to the Allowed amount of such Claim.

    **2.2**   <u>**Priority Tax Claims**</u>. On the Effective Date, or as soon thereafter as is reasonably practical, the Debtors shall pay to each holder of an Allowed Priority Tax Claim an amount in cash equal to the Allowed amount of such claim.

## ARTICLE III.
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

    Claims, other than Administrative Expense Claims, Priority Tax Claims and Equity Interests are classified for all purposes, including voting (unless otherwise specified), confirmation and distribution pursuant to the Plan, as follows:

| <u>CLASS</u> | <u>STATUS</u> |
|---|---|
| Class 1 – Priority Non-Tax Claims | Not Impaired |
| Class 2 – Institutional Lender Secured Claims | Impaired |
| Class 3 – Other Secured Claims | Not |

7

| CLASS | STATUS |
|---|---|
| | Impaired |
| Class 4 – General Unsecured Claims................................................................ | Impaired |
| Class 5 – Equity Interests ............................................................................... | Impaired |

### ARTICLE IV.
### TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**     **Class 1 - Priority Non-Tax Claims.**

(a) **Impairment and Voting.** Class 1 is not impaired by the Plan. Each holder of an Allowed Claim in Class 1 is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b) **Distributions.** On the Effective Date, each holder of an Allowed Priority Non-Tax Claim shall be paid an amount in cash equal to the Allowed amount of such Priority Non-Tax Claim.

**4.2**     **Class 2 – Institutional Lender Secured Claims.**

(a) **Impairment and Voting.** Class 2 is impaired by the Plan. Each holder of an Allowed Claim in Class 2 is entitled to vote to accept or reject the Plan.

(b) **Distributions.** On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Institutional Lender Secured Claim shall receive such holder's Pro Rata share of the beneficial interests in the Liquidating LLC (representing in the aggregate, immediately after the Effective Date, at least 99.99% of the outstanding beneficial interests).

**4.3**     **Class 3 – Other Secured Claims.**

(a) **Impairment and Voting.** Class 3 is not impaired by the Plan. Each holder of an Allowed Claim in Class 3 is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b) **Distributions.** To the extent not previously received, each holder of an Allowed Other Secured Claim shall receive on the Effective Date, or as soon thereafter as is reasonably practicable, the Collateral securing such Allowed Claim or an amount in cash equal to the Allowed amount of such Other Secured Claim.

**4.4**     **Class 4 - General Unsecured Claims.**

(a) **Impairment and Voting.** Class 4 is impaired by the Plan. For purposes of the Plan, each holder of an Allowed Claim in Class 4 is conclusively

presumed to have rejected the Plan as a holder of Class 4 Claims and is not entitled to vote to accept or reject the Plan.

  **(b) Distributions.** The holders of General Unsecured Claims in Class 4 will not receive any distributions on account of such Claims.

  4.5  <u>Class 5 - Equity Interests</u>.

  **(a) Impairment and Voting**. Class 5 is impaired by the Plan. For purposes of the Plan, each holder of an Allowed Equity Interest in Class 5 is conclusively presumed to have rejected the Plan as a holder of Class 5 Interests and is not entitled to vote to accept or reject the Plan.

  **(b) Distributions.** On the Confirmation Date, the common stock and other instruments evidencing Equity Interests in the Debtors shall be cancelled without further action under any applicable agreement, law, regulation, order or rule, and the Equity Interests in the Debtors evidenced thereby shall be extinguished. On or promptly after the Confirmation Date, the Company will file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of its publicly traded securities.

**ARTICLE V.**
**<u>ACCEPTANCE OR REJECTION OF THE PLAN</u>**

  5.1  <u>Voting of Claims</u>. Each Institutional Lender (i.e. holder of an Allowed Claim in Class 2) shall be entitled to vote to accept or reject the Plan.

  5.2  <u>Acceptance by Impaired Class</u>. Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

  5.3  <u>Presumed Acceptance of Plan</u>. Classes 1 and 3 are unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan.

  5.4  <u>Presumed Rejections of Plan</u>. Classes 4 and 5 shall receive no distributions under the Plan and, therefore, are conclusively presumed to have rejected the Plan.

  5.5  <u>Cram Down</u>. The Debtors request that, in the event Class 2 accepts the Plan, the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the presumed rejections of Class 4 and Class 5.

## Certificate of Service

I hereby certify that on the 14th day of December 2012, a true and correct copy of the foregoing *REPLY OF U.S. BANK NATIONAL ASSOCIATION IN OPPOSITION TO REFOCUSED OBJECTION OF WILLIAM KUNTZ, III, AND IN FURTHER SUPPORT OF ITS APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES, AS A MEMBER OF THE CREDITORS' COMMITTEE AND AS INDENTURE TRUSTEE,* was served electronically through the Court's ECF System on parties requesting electronic service and by Overnight Courier or U.S. Mail, First Class, Postage Prepaid, on the parties shown below.

Via Overnight Courier

Chambers of the Honorable James M. Peck
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Via First Class Mail

United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004
Attn.: Andrew D. Velez-Rivera, Esq.

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Robert J. Lemons, Esq.

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Attn: Dennis F. Dunne, Esq.

William Kuntz, III
India St.
P.O. Box 1801
Nantucket Island, MA 02554

/s/ Joseph Makseyn
Joseph Makseyn

{B1520668; 1}