> **THIS OBJECTION SEEKS TO CLASSIFY CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE OF THE THREE HUNDRED EIGHTIETH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**
>
> **IF YOU HAVE QUESTIONS, PLEASE CONTACT LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL, CINDI GIGLIO, AT 212-696-6936.**

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
L. P. Harrison 3rd
Cindi Eilbott Giglio

*Counsel for Lehman Brothers Holdings Inc.*
  *and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re                                    :    Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                         :
                   Debtors.              :    (Jointly Administered)
-----------------------------------------------------------------x
```

### NOTICE OF HEARING ON THREE HUNDRED EIGHTIETH OMNIBUS OBJECTION TO CLAIMS (SUBORDINATED GUARANTEE CLAIMS)

**PLEASE TAKE NOTICE** that on December 17, 2012, Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors for the entities in the above-referenced chapter 11 cases, filed its three hundred eightieth

omnibus objection to claims (the "Three Hundred Eightieth Omnibus Objection to Claims"), and

that a hearing (the "Hearing") to consider the Three Hundred Eightieth Omnibus Objection to

Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in

Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, New York, New York 10004, on **January 30, 2013 at 10:00 a.m. (Eastern**

**Time)**, or as soon thereafter as counsel may be heard.

      **PLEASE TAKE FURTHER NOTICE** that any responses to the Three Hundred

Eightieth Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the

Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system,

and (b) by all other parties in interest, on a CD-ROM, preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy

delivered directly to Chambers), in accordance with General Order M-399 (which can be found

at www.nysb.uscourts.gov), and served upon (i) the chambers of the Honorable James M. Peck,

One Bowling Green, New York, New York 10004, Courtroom 601; (ii) counsel for LBHI, Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J.

Lemons, Esq. and Maurice Horwitz, Esq.); (iii) conflicts counsel for LBHI, Curtis, Mallet-

Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: L. P.

Harrison 3rd, Esq. and Cindi Giglio, Esq.) and (iv) the Office of the United States Trustee for

Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and

received by no later than **January 16, 2013 at 4:00 p.m. (Eastern Time)** (the "Response

13719944

Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Three Hundred Eightieth Omnibus Objection to Claims or any claim

set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the Three

Hundred Eightieth Omnibus Objection to Claims, which order may be entered with no further

notice or opportunity to be heard offered to any party.

Dated: December 17, 2012
   New York, New York

        **CURTIS, MALLET-PREVOST,**
        **COLT & MOSLE LLP**

       By: __*/s/ L. P. Harrison 3rd*___
         L. P. Harrison 3rd
         Cindi Eilbott Giglio
       101 Park Avenue
       New York, New York 10178-0061
       Telephone: (212) 696-6000
       Facsimile: (212) 697-1559

       *Counsel for Lehman Brothers Holdings Inc.*
        *and Certain of Its Affiliates*

13719944

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile:  (212) 697-1559
L. P. Harrison 3rd
Cindi Eilbott Giglio

*Counsel for Lehman Brothers Holdings Inc.*
 *and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

**THREE HUNDRED EIGHTIETH**
**OMNIBUS OBJECTION TO CLAIMS (SUBORDINATED GUARANTEE CLAIMS)**

**THIS OBJECTION SEEKS TO CLASSIFY CERTAIN FILED PROOFS OF CLAIM.
PARTIES RECEIVING THIS THREE HUNDRED EIGHTIETH OMNIBUS
OBJECTION TO CLAIMS SHOULD REVIEW THE OBJECTION TO SEE IF THEIR
NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE
EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION
AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT
LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL,
CINDI GIGLIO, AT 212-696-6936.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced

chapter 11 cases (the "Chapter 11 Estates"), respectfully represents as follows:

### Relief Requested

1.      The proofs of claim listed on Exhibit A annexed hereto relate in whole or

in part to securities identified by ISIN XS0282978666 or ISIN XS0301813522 (the "Preferred

Securities") issued by Lehman Brothers UK Capital Funding IV L.P. ("LB UK IV") or Lehman

Brothers UK Capital Funding V L.P. ("LB UK V" and, together with LB UK IV, the "Trusts"),

non-Debtor entities.  LBHI issued guarantees in connection with the Preferred Securities

(together, the "Subordinated Guarantees") which rank LBHI's obligations, if any, junior to all

subordinated liabilities of LBHI and *pari passu* with LBHI's preferred equity.

2.      Accordingly, the Plan Administrator files this three hundred eightieth

omnibus objection (the "Three Hundred Eightieth Omnibus Objection to Claims") pursuant to

sections 502(b) and 510(a) of title 11 of the United States Code, as amended (the "Bankruptcy

Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and this Court's order approving procedures for the filing of omnibus objections to proofs of

claim filed in these chapter 11 cases (the "Procedures Order") [Docket No. 6664], to classify as

equity interests, all portions of the claims listed on Exhibit A annexed hereto that relate to the

Preferred Securities or the Subordinated Guarantees (such portions the "Subordinated Guarantee

Claims").

2

**Jurisdiction**

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

4.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  These chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5.      On July 2, 2009, this Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases [Docket No. 4271].

6.      On January 14, 2010, this Court entered the Procedures Order, which authorizes the Chapter 11 Estates, among other things, to file omnibus objections on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

7.      On December 6, 2011, this Court entered an order confirming the Plan [Docket No. 23023].  The Plan became effective on March 6, 2012.

8.      Pursuant to the Plan, all holders of preferred stock in LBHI were classified in LBHI Class 12.  *See* Plan §§ 1.51 and 4.17.

9.      Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

**LBHI's Obligations Under the Subordinated Guarantees are
Subordinated to All Liabilities of LBHI and Equivalent with Preferred Equity of LBHI**

10.      Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Section

510(a) of the Bankruptcy Code provides that "[a] subordination agreement is enforceable … to

the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11

U.S.C. § 510(a).

11.    Courts have routinely held that the "enforcement of lawful subordination

agreements by Bankruptcy Courts does not offend the policy of equal distribution of the

bankrupt's estate." *In re Leasing Consultants, Inc.* 2 B.R. 165, 168 (Bankr. N.Y. 1980), *citing In*

*re Credit Indus. Corp.*, 366 F.2d 402, 407 (2d Cir. 1966). Under general contract law principles,

when a subordination agreement is unambiguous, the parties' rights are governed exclusively by

that agreement. *In re Leasing Consultants, Inc.*, 2 B.R. at 169.

12.    A copy of the Subordinated Guarantee for the Preferred Securities issued

by LB UK IV ("Subordinated Guarantee IV") is attached hereto as Exhibit B. A copy of the

Subordinated Guarantee for the Preferred Securities issued by LB UK V ("Subordinated

Guarantee V," and together with Subordinated Guarantee IV, the "Subordinated Guaranties") is

attached hereto as Exhibit C. The Subordinated Guarantees provide that any claims arising from,

in connection with, or in any way relating to, any failure of LBHI to pay under the Subordinated

Guarantee shall have the same priority as, and no greater priority than, preferred stock interests

in LBHI.

13.    Specifically, section 2.9 of Subordinated Guarantee IV states that LBHI's

obligations, if any, under the Subordinated Guarantee for the Preferred Securities issued by LB

UK IV:

> …constitute unsecured obligations of LBHI subordinated in right
> of payment to Senior Creditors and will at all times rank: (a) junior
> to all subordinated liabilities of LBHI … (b) pari passu with Parity
> Securities, … and (c) senior to the Junior Share Capital of LBHI.

4

Subordinated Guarantee IV § 2.9.  Similarly, section 2.9 of Subordinated Guarantee V states that

LBHI's obligations, if any, under the Subordinated Guarantee for the Preferred Securities issued

by LB UK V:

> …constitute unsecured obligations of LBHI subordinated in right
> of payment to Senior Creditors and will at all times rank: (a) junior
> to all subordinated liabilities of LBHI … (b) pari passu with Parity
> Securities, … and (c) senor to the Junior Share Capital of LBHI.

Subordinated Guarantee V § 2.9.

14.     Accordingly, the Plan Administrator respectfully requests that the Court

classify the Subordinated Guarantee Claims, whether liquidated, unliquidated or undetermined,

in LBHI Class 12 of the Plan and equivalent with the preferred equity in LBHI.

### Reservation of Rights

15.     The Plan Administrator reserves all rights to object on any basis to any of

the Subordinated Guarantee Claims.

### Notice

16.     No trustee has been appointed in these chapter 11 cases.  Notice of this

Three Hundred Eightieth Omnibus Objection to Claims has been provided to (i) the United

States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal

Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the

holder of each claim listed on Exhibit A; and (vi) all other parties entitled to notice in accordance

with the procedures set forth in the second amended order entered on June 17, 2010, governing

case management and administrative procedures for these cases [Docket No. 9635].  The Plan

Administrator submits that no other or further notice need be provided.

17.     No previous request for the relief sought herein has been made by the Plan

Administrator or the Chapter 11 Estates to this or any other Court.

13719944

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: December 17, 2012
      New York, New York

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

By:   */s/ L. P. Harrison 3rd*
           L. P. Harrison 3rd
           Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile:  (212) 697-1559

*Counsel for Lehman Brothers Holdings Inc.
 and Certain of Its Affiliates*

13719944

**EXHIBIT A**

**IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO.: 08-13555 (JMP)**

**OMNIBUS OBJECTION 380: EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ISIN** | AMOUNTS BEING CLASSIFIED |
|---|---|---|---|---|---|---|---|
| 1 | CREDIT SUISSE (FRANCE) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55823 | XS0301813522 | Undetermined  * |
| 2 | CREDIT SUISSE (UK) LIMITED | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55816 | XS0301813522 | Undetermined  * |
| 3 | CREDIT SUISSE AG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55690 | XS0301813522 | $100,000.00 |
| 4 | CREDIT SUISSE AG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55819 | XS0301813522 | $400,000.00 * |
| 5 | CREDIT SUISSE AG, SINGAPORE BRANCH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55829 | XS0282978666 | Undetermined  * |
| | | | | | | XS0301813522 | Undetermined  * |
| | | | | | | | Undetermined |
| 6 | CREDIT SUISSE ITALY SPA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55820 | XS0282978666 | Undetermined  * |
| 7 | CREDIT SUISSE SINGAPORE BRANCH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55825 | XS0282978666 | Undetermined  * |
| | | | | | | XS0301813522 | Undetermined  * |
| | | | | | | | Undetermined |
| 8 | CREDIT SUISSE SUCURSAL EN ESPANA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/09 | 55815 | XS0282978666 | Undetermined  * |
| 9 | GOLDMAN SACHS INTERNATIONAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/09 | 58849 | XS0301813522 | $500,000.00 * |
| 10 | KING, TONY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 08/28/09 | 9597 | XS0282978666 | Undetermined  * |
| | | | | | | TOTAL | $ 1,000,000.00 |

* Plus unliquidated and/or undetermined amounts

** Only those portions of the claim related to the ISINs listed are subject to the Debtors' 388 Omnibus Objection.

**EXHIBIT B**

## SUBORDINATED GUARANTEE

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated 25 January 2007, is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

### 1.    Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 3 January 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**[SM]) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are entitled to the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

2.    **Guarantee**

2.1   Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2   All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

   (a)   to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

   (b)   where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

   (c)   where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

   (d)   where the Holder would not have been entitled to Additional Amounts.

2.3   LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4   The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

   (a)   the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

   (b)   the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

   (c)   any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

   (d)   the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e)     any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f)     the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5    This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6    A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7    LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8    LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9    Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a)     junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b)     *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c)     senior to the Junior Share Capital of LBHI.

2.10   No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11   In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received

by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

**3.    Undertakings of LBHI**

3.1    LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2    Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)    declare or pay any dividend on its shares of common stock; or

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3    LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)    unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)    the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

**4.    Termination**

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)    full payment of the Optional Redemption Price;

(b)    purchase and cancellation of all Preferred Securities;

(c)    dissolution of the Issuer; or

(d)    if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

## 5.    Transfer; Amendment; Notices

5.1    Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2    Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3    Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:  Corporate Counsel
Facsimile:  (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4    This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

## 6.    Governing Law

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor

By: _____
    Name:
    Title:

**Lehman Brothers UK Capital Funding IV LP**
(established as a limited partnership under the Limited Partnerships Act 1907 (the **Act**))
**€200,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities**

THIS CERTIFIES THAT THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED OF One Canada Square, London E14 5AL
IS THE REGISTERED HOLDER OF 200,000 FULLY PAID Fixed Rate Enhanced Capital Advantaged Preferred Securities of €1,000 in Liquidation Preference each in Lehman Brothers UK Capital Funding IV LP (the **Issuer**), subject to the Limited Partnership Agreement dated 3rd January, 2007 establishing the Issuer, transferable on the register of the Issuer upon surrender of this Global Certificate properly completed and executed on behalf of the Limited Partner and the transferee in person or by its duly authorised attorney to the Registrar or the Paying and Transfer Agent in accordance with the terms of the Limited Partnership Agreement.

By:

Authorised signatory
For and on behalf of
Lehman Brothers UK Capital Funding IV LP

We acknowledge receipt of this Global Certificate and our entry in the register of partners as Initial Limited Partner subject to the terms of the Limited Partnership Agreement dated 3rd January, 2007 establishing Lehman Brothers UK Capital Funding IV LP and hereby agree to be bound by the terms of that Agreement as Initial Limited Partner.

THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED

By:

Transfer Certificate

I, The Bank of New York Depository (Nominees) Limited, do hereby transfer for valuable consideration to _____ [*Name of transferee*] _____ [*number*] fully paid Fixed Rate Enhanced Capital Advantaged Preferred Securities of €1,000 in Liquidation Preference each (the **Preferred Securities**) registered in my name in the register of partners of Lehman Brothers UK Capital Funding IV LP (the **Register of Holders**) in accordance with the terms of the Limited Partnership Agreement in relation to Lehman Brothers UK Capital Funding IV LP and I, the said The Bank of New York Depository (Nominees) Limited, do hereby consent that my name remain on the Register of Holders until such time as the transferee's name may be entered thereon by or on behalf of the General Partner and published in the London Gazette as required by the Act; and I, the said _____ [*Name of transferee*] do hereby agree to take the Preferred Securities in accordance with and on the terms of, and agree to be bound by the terms of, the Limited Partnership Agreement dated 3rd January, 2007 in relation to Lehman Brothers UK Capital Funding IV LP and to be registered as the limited partner in respect thereof and to release and indemnify The Bank of New York Depository (Nominees) Limited in respect of any obligations in respect of the Preferred Securities.

As witness our hands

Signed by the said
on the            day of
in the presence of:

_____                          _____
Witness                                          Transferor


Signed by the said
on the            day of
in the presence of:

_____                          _____
Witness                                          Transferee


ICM:3913208.2

**EXHIBIT C**

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated 1 June 2007, is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

## 1.    Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 10 May 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities (**US$ ECAPS®**) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are entitled to the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

**2.    Guarantee**

2.1    Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2    All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

(a)    to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)    where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

(c)    where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

(d)    where the Holder would not have been entitled to Additional Amounts.

2.3    LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4    The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

(a)    the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

(b)    the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

(c)    any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

(d)    the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e)    any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f)    the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5    This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6    A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7    LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8    LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9    Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a)    junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b)    *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c)    senior to the Junior Share Capital of LBHI.

2.10    No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11    In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received

by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

**3.     Undertakings of LBHI**

3.1   LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2   Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)   declare or pay any dividend on its shares of common stock; or

(b)   repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)   dividends or distributions in the form of LBHI's common stock;

(ii)   any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)   purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3   LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)   unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)   the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

**4.     Termination**

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)   full payment of the Optional Redemption Price;

(b)   purchase and cancellation of all Preferred Securities;

(c)   dissolution of the Issuer; or

(d)   if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

**5.    Transfer; Amendment; Notices**

5.1    Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2    Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3    Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:   Corporate Counsel
Facsimile:   (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4    This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

**6.    Governing Law**

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor

By: _____
    Name:
    Title:

CARLO PELLERANI
Authorised Signatory

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
In re                                                          :       **Chapter 11 Case No.**
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :       **08-13555 (JMP)**
                                                               :
                    **Debtors.**                               :       **(Jointly Administered)**
--------------------------------------------------------------------x

## ORDER GRANTING THREE HUNDRED EIGHTIETH
## <u>OMNIBUS OBJECTION TO CLAIMS (SUBORDINATED GUARANTEE CLAIMS)</u>

Upon the three hundred eightieth omnibus objection to claims, dated December

17, 2012 (the "<u>Three Hundred Eightieth Omnibus Objection to Claims</u>"),[1] of Lehman Brothers

Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan

of Lehman Brothers Holdings Inc. and its Affiliated Debtors, pursuant to sections 502(b) and

510(a) of title 11 of the United States Code, Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order approving procedures for the filing of omnibus objections to

proofs of claim [Docket No. 6664], seeking to classify the Subordinated Guarantee Claims, all as

more fully described in the Three Hundred Eightieth Omnibus Objection to Claims; and due and

proper notice of the Three Hundred Eightieth Omnibus Objection to Claims having been

provided, and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the Three Hundred Eightieth Omnibus Objection

to Claims is in the best interests of the Chapter 11 Estates, their creditors, and all parties in

interest, and that the legal and factual bases set forth in the Three Hundred Eightieth Omnibus

Objection to Claims establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Three Hundred Eightieth Omnibus Objection to Claims.

ORDERED that the relief requested in the Three Hundred Eightieth Omnibus

Objection to Claims is granted; and it is further

ORDERED that all portions of the claims listed on <u>Exhibit 1</u> annexed hereto that

relate to the securities identified by ISIN XS0282978666 or ISIN XS0301813522 or the

guarantee issued by LBHI in connection therewith, whether liquidated, unliquidated or

undetermined, shall be classified in LBHI Class 12 under the Plan; and it is further

ORDERED that the Court-appointed claims agent is authorized to modify the

claims register to reflect this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2013
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

13719944