WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell

-and-

MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500
David S. Cohen

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    **08-13555 (JMP)**
                                                                   :
                                          **Debtors.**             :    **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

**NOTICE OF JOINT MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND LITIGATION SUBCOMMITTEE OF
CREDITORS' COMMITTEE, PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND
STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors,

and the litigation subcommittee of the Official Committee of Unsecured Creditors appointed in

these cases (the "Committee"), for authorization to extend the stay of avoidance actions and for

certain related relief, all as more fully described in the Motion, will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court"), on **January 16, 2013 at 10:00 a.m. (Prevailing Eastern

Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, shall be filed with

the Bankruptcy Court electronically in accordance with General Order M-242 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:

Richard W. Slack, Esq. and Jacqueline Marcus, Esq., attorneys for LBHI; (iii) the Office of the

United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York

10004, Attn:  Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea Schwartz, Esq.;

(iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York

10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq. and Dennis O'Donnell, Esq., attorneys

for the Committee; and (v) any person or entity with a particularized interest in the Motion, so as

to be so filed and received by no later than **January 9, 2013 at 4:00 p.m. (Prevailing Eastern**

**Time)** (the "Objection Deadline").

　　　　　　PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

　　　　　　PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 21, 2012
New York, New York

/s/ Jacqueline Marcus
Richard W. Slack
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

/s/ David S. Cohen
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell

MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

-and-

David S. Cohen
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**Hearing Date and Time:  January 16, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  January 9, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell

-and-

MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500
David S. Cohen

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                 :
**In re**                                                        :        **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                                                                 :
                                         **Debtors.**            :        **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x

**JOINT MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND LITIGATION SUBCOMMITTEE OF
CREDITORS' COMMITTEE, PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND
STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), and the litigation subcommittee of the

Official Committee of Unsecured Creditors appointed in these cases (the "Committee"),[1] submit

this motion (the "Motion"), and respectfully represent:

**Preliminary Statement**

1.       On September 15, 2008 and periodically thereafter (as applicable, the

"Commencement Date"), LBHI and certain of its subsidiaries (together, the "Chapter 11

Estates") commenced the largest and most complicated chapter 11 cases in history.  After the

Commencement Date, the Chapter 11 Estates began their review and analysis of prepetition

transactions.  Such review has been extremely difficult, time consuming, and complicated.

Nevertheless, in order to prevent the loss of avoidance causes of action prior to the expiration of

the applicable two-year statute of limitations, the Chapter 11 Estates commenced over 50 actions

seeking to avoid or recover significant transfers with respect to over 240 transactions under

sections 544, 545, 547, 548, 549, 550 and/or 553 of title 11 of the United States Code (the

---

[1] As used herein, "Committee" means, as applicable, either the litigation subcommittee of the Official Committee of
Unsecured Creditors or the Official Committee of Unsecured Creditors.  "Creditors' Committee" means solely the
Official Committee of Unsecured Creditors.

"Bankruptcy Code").[2]  In addition, the Chapter 11 Estates entered into tolling agreements with more than 200 potential defendants.

2.      Pursuant to the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [ECF No. 12199] (the "Initial Stay Order"), the Court stayed all Avoidance Actions for nine (9) months (the "Stay").  Pursuant to subsequent orders of the Court (together with the Initial Stay Order, the "Stay Orders"), the Court has further extended the Stay.  Unless further action is taken by the Court, the Stay will expire on January 20, 2013.

3.      The Initial Stay Order also extended the deadline to effect service (the "Service Deadline") on the Avoidance Action Defendants (as defined below) to 180 days after the filing of a complaint, without prejudice to the Chapter 11 Estates' right to seek further extensions.  The Court subsequently entered additional orders extending the Service Deadline, *inter alia*, to allow the Chapter 11 Estates time to complete discovery to obtain information necessary to identify parties and to effect service in certain of the Avoidance Actions.

4.      During the Stay, the Chapter 11 Estates and the Committee have made substantial progress in consensually resolving the Avoidance Actions.  In addition, the Stay has allowed the Chapter 11 Estates to engage in an alternative dispute resolution ("ADR") program that has been enormously successful in resolving sometimes difficult and complex matters that otherwise would have taken a huge amount of time for the Chapter 11 Estates to pursue through

---

[2] A schedule of the pending actions involving avoidance claims of the Chapter 11 Estates is attached as Exhibit A to the proposed order.  The relief requested by this Motion is with respect to all actions involving claims of the Chapter 11 Estates under sections 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code – those that have already been commenced and any additional avoidance action commenced hereinafter by the Plan Administrator or the Committee (collectively, the "Avoidance Actions").  Avoidance Action, as used herein, does not include any adversary proceeding for which the Court has entered a scheduling order or for which the Stay (as defined below) otherwise has been lifted, and any such adversary proceeding is not included on Exhibit A attached to the proposed order.  *See, e.g.*, *Lehman Brothers Holdings Inc., et al., v. Citibank, N.A., et al.*, Adv. Proc. No. 12-01044 (JMP) [ECF No. 5].  "Avoidance Action Defendant" means any defendant in an Avoidance Action.

litigation and for the Court to manage.  To date, the ADR program has yielded more than 1.35

billion new dollars for the Chapter 11 Estates.

       5.      The SPV Derivatives ADR Procedures (as defined below) have been

critical to the Chapter 11 Estates' ability to resolve disputes where a special purpose vehicle

("SPV") is a counterparty on one or more derivative swaps.  Currently, there are over 30 SPV

transactions that are subject to the SPV Derivatives ADR Procedures.  The Stay has offered the

Chapter 11 Estates and the Committee an opportunity to reach consensual resolutions with SPV

counterparties within the framework of the SPV Derivatives ADR Procedures and otherwise.

Indeed, the Chapter 11 Estates and the Committee have now resolved, by settlement or

otherwise, transactions with nearly 100 defendants in connection with the Avoidance Actions

involving SPV derivatives matters, and the Chapter 11 Estates are in the process of resolving

additional transactions, pending final documentation.  Much of this success may not have been

possible without the Stay.

       6.      Previous motions to extend the Stay have not generated significant

objection from the defendants in the Avoidance Actions – thus suggesting that there is consensus

that the Stay is beneficial to both the Chapter 11 Estates and the Avoidance Action Defendants in

allowing them to reach consensual resolutions to their disputes without the need for Court

intervention.  One of the primary objections to the prior extensions of the Stay has come from

Lehman Brothers Australia Limited ("LB Australia"), which holds notes in connection with nine

derivatives transactions (the "Belmont Transactions") that are the subject of the Avoidance

Action entitled *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon

Corporation, et al.*, Adv. Proc. No. 10-03545 (JMP) ("Adversary Proceeding 3545").  Notably,

since the approval of the most recent Stay Extension Order, LBHI and Lehman Brothers Special

Financing Inc. ("LBSF") have reached a settlement with certain noteholders that hold interests in the Belmont Transactions.  If approved by noteholders to the Belmont Transactions at upcoming noteholder meetings, and subject to other conditions precedent, the settlement will resolve a dispute that has been ongoing for over three years on three continents, including six separate ADR proceedings and two separate litigations currently pending in the United States District Court for the Southern District of New York and one in the United Kingdom, thus demonstrating that even the most intractable of disputes can be resolved without litigation given adequate time.

7.       In order to fulfill their fiduciary duties regarding the Avoidance Actions, the Chapter 11 Estates and, as applicable, the Committee require a reasonable and modest extension of the Stay to continue negotiating with Avoidance Action Defendants so as to consensually resolve the Avoidance Actions that remain pending without the need for Court intervention and the cost and burden of full-blown litigation.  A further extension of the Service Deadline is also necessary in order to ensure that the Chapter 11 Estates are able to effect service of the Second Amended Complaint on all defendants in the Distributed Action (as defined below).

8.       The Plan Administrator and the Committee, therefore, request a further six (6) month extension of the Stay to July 20, 2013, and an extension until July 20, 2013 to complete service of the Second Amended Complaint on the defendants in the Distributed Action. The extension of the Stay will enable the Chapter 11 Estates and the Committee to continue their efforts toward consensually resolving the Avoidance Actions, while avoiding the enormous costs to and burdens on all parties and the Court associated with pursuing active litigation in the Avoidance Actions.  If the Stay is not extended, the Chapter 11 Estates and the Committee will be forced to divert their resources from actively pursuing consensual resolutions of the

Avoidance Actions to responding to discovery demands, engaging in motion practice and preparing for contested proceedings and trials.  Not only would wide-scale litigation of the Avoidance Actions drain the Chapter 11 Estates' resources, it would also monopolize the Court's docket.  The extension of the Service Deadline will preserve the benefit of the Distributed Action, which the Chapter 11 Estates and the Committee will not be able to prosecute if the summons and complaint cannot be served by the Service Deadline.

### Jurisdiction

9.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

10.     The Chapter 11 Estates' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to section 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

11.     On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

12.     The Creditors' Committee was given standing and authority to prosecute and settle certain of such actions pursuant to the *Order Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., to Prosecute and, If Appropriate, Settle Causes of Action on Behalf of Lehman Commercial Paper Inc.*, dated September 15, 2011 [ECF No. 20019].

13.     On September 17, 2009, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 5207], approving ADR procedures for the Chapter 11 Estates' derivative contracts

with recovery potential (the "Derivatives ADR Procedures").  On May 2, 2012, the Court entered

the *Order Amending the Tier 2 Alternative Dispute Resolution Procedures Order for Affirmative*

*Claims of Debtors Under Derivatives Contracts* [ECF No. 27698], approving ADR procedures

for the Chapter 11 Estates' derivative contracts with recovery potential for which a Chapter 11

Estate's claim is equal to or less than $5 million (the "Tier 2 Derivatives ADR Procedures").  On

July 18, 2012, the Court entered the *Amended Order Providing for Alternative Dispute*

*Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions*

*with Special Purpose Vehicle Counterparties* [ECF No. 29507], approving ADR procedures

related to SPVs (the "SPV Derivatives ADR Procedures," and, together with the Derivatives

ADR Procedures and the Tier 2 Derivatives ADR Procedures, as each may have been amended

and/or modified from time to time, the "Affirmative ADR Procedures").   Under the Affirmative

ADR Procedures, the Chapter 11 Estates have recovered more than 1.35 billion new dollars as a

result of 236 ADR settlements with 331 counterparties, all without litigation.

   14. On December 6, 2011, the Court approved and entered an order

confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012 (the

"Effective Date").

   15. Pursuant to section 6.1(b)(iv) of the Plan, the Plan Administrator is

authorized to prosecute the Avoidance Actions on behalf of the Chapter 11 Estates.  Pursuant to

section 15.1 of the Plan, on the Effective Date, the Creditors' Committee was dissolved for all

purposes except for certain purposes not relevant to this Motion.  Following the Effective Date,

the litigation subcommittee of the Creditors' Committee was permitted to continue functioning

for limited purposes, including involvement in the resolution process for certain pending

litigation.  Consequently, the litigation subcommittee of the Creditors' Committee has taken over the Creditors' Committee's role with respect to the Avoidance Actions.

**Relief Requested**

16.     Pursuant to section 105(a) of the Bankruptcy Code and Rule 4(m) of the Federal Rules of Civil Procedure, as incorporated and made applicable hereto by Bankruptcy Rule 7004(a)(1), the Plan Administrator and the Committee request a further six (6) month extension of the Stay, to July 20, 2013, and extension until July 20, 2013 to complete service of the Second Amended Complaint on the defendants in the Distributed Action, each without prejudice to the ability of the Plan Administrator and the Committee to request further extensions.

**The Court Should Exercise its Discretion and Extend the Stay**

17.     The Court has the power to extend the Stay and should exercise its discretion to do so.  Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998). Bankruptcy courts have this inherent power.  *See Uni-Rty Corp. v. Guangdong Bldg., Inc. (In re Uni-Rty Corp.)*, No. 96 Civ 4573 (DAB), 1998 WL 299941, at *7 (S.D.N.Y. June 9, 1998); *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (court has inherent power to stay proceedings before it, particularly where stay will promote judicial economy); *Kistler v. Cleveland (In re Cleveland)*, 353 B.R. 254, 260 (Bankr. E.D. Cal. 2006) (staying adversary proceeding pursuant to court's inherent power to stay proceedings before it); *Swift v.*

*Bellucci (In re Bellucci)*, 119 B.R. 763, 770 (Bankr. E.D. Cal. 1990) ("a bankruptcy court has the inherent power to control its docket, including controlling the timing of proceedings on that docket"). The determination whether a stay of proceedings is appropriate "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

18.    The Avoidance Actions had to be commenced to preserve significant causes of action and to fulfill the fiduciary duties of the Chapter 11 Estates and the Committee to maximize value for creditors. Having commenced the Avoidance Actions and preserved their rights, the Chapter 11 Estates and the Committee have utilized a practical approach to the Avoidance Actions that has to date minimized (and, in some cases, eliminated) the costs and burdens to all parties that would be incurred by full-blown litigation of these matters. The Chapter 11 Estates and the Committee have made substantial progress with respect to the Avoidance Actions during the pendency of the Stay. The Chapter 11 Estates and the Committee have pursued amicable resolutions with the Avoidance Action Defendants including by communicating and negotiating with Avoidance Action Defendants through, among other things, the exchange of relevant documentation, evaluation of potential defenses, and consummation of settlements or dismissal of actions. As a result of these efforts, the Chapter 11 Estates, in consultation with the Committee, where appropriate, have resolved Avoidance Actions, as well as avoidance claims subject to tolling agreements, with approximately 230 parties, including through settlements, dismissal of complaints, and termination of tolling agreements, without engaging in time-consuming and costly litigation. Thus, to date, the Stay has promoted judicial economy and minimized the burdens on the Court from the prosecution of these actions.

19.    The Stay also has permitted the Chapter 11 Estates to employ innovative procedures as an alternative to litigation to efficiently administer these cases.  In approving a prior extension of the Stay, the Court recognized that "the alternative dispute resolution procedures that have adopted [sic] here have produced remarkable successes."  Tr. of Hr'g, June 15, 2011, at 31:10-11.  The Court has also called ADR "indisputably a success" and observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court . . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion."  Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2.

20.    The Chapter 11 Estates have commenced many adversary proceedings, including Adversary Proceeding 3545, involving derivatives litigation in which the underlying assets have not been distributed to noteholders (the "Non-Distributed Actions").  Out of approximately 157 SPV transactions in the Non-Distributed Actions collectively, the Chapter 11 Estates have reached final settlement with respect to just under 100 transactions, which either have been dismissed or are in the process of being dismissed from the respective Non-Distributed Actions.  ADR notices have been served in connection with almost 40 of the remaining transactions in the Non-Distributed Actions.  Several other transactions that are the subject of the Non-Distributed Actions are being prepared for ADR notices, and many of the remaining transactions in the Non-Distributed Actions are in various stages of settlement negotiations or other resolution or are awaiting final documentation on settlements.  Consistent with the Chapter 11 Estates' past practices, the majority of the transactions in the Non-Distributed Actions are in the process of actively being settled or are being considered for some other form of alternative dispute resolution.  Much of this continued progress may not have been possible without the Stay, which has permitted the Chapter 11 Estates and the Committee to

effect such results without costly and burdensome litigation. Further extension of the Stay is critical to continued efforts towards consensual resolutions in all Avoidance Actions.

21.     In *Lehman Brothers Special Financing Inc. v. Bank of America National Association, et al.*, Adv. Proc. No. 10-03547 (JMP) (the "Distributed Action"), which involves SPVs with "flip clauses" in which the underlying assets have already been distributed to noteholders of collateralized debt obligation transactions, LBSF has asserted claims against such noteholders as a defendant class action. The Distributed Action has 45 transactions at issue, 8 trustee defendants, 81 issuer and co-issuer defendants (many of which are foreign entities) and 185 noteholder defendants (many of which are foreign entities), named individually and as representatives of a putative defendant class, and numerous unnamed class members.

22.     As a result of the *Order Granting Plaintiff's Motion for Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014 and Establishing a Protocol Governing the Confidentiality of and Access to Certain Discovery Material*, dated October 25, 2010, Adv. Proc. No. 10-03547 [ECF No. 27] (the "Discovery Order"), when LBSF sought leave to amend its First Amended Complaint in July 2012, it identified and added 154 entities, as new defendants as these entities are the beneficial owners of securities that received distributions. In addition, LBSF has been and continues to be engaged in the time-consuming, multi-step discovery process required to identify and/or confirm the identities and addresses of the noteholders that received the challenged distributions.[3] The discovery received by LBSF to date has provided valuable information, which was necessary for the (i) amendment of LBSF's amended complaint, (ii) completion of service on the named defendants and (iii) identification of

---

[3] The discovery process is fully described in the *Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), for an Extension of Deadline for Service of Avoidance Actions to June 30, 2011*, dated February 14, 2011 [ECF No. 14487].

members of the putative noteholder class.[4]  To date, LBSF has identified close to two hundred

noteholders (consisting of the new noteholder defendants added to the Second Amended

Complaint and the originally named noteholder defendants) that have received over $2.5 billion

worth of distributions and are members of the putative defendant class.  LBSF expects that it

likely will receive further confirmatory information regarding the named noteholder defendants

in addition to the names and addresses of currently unknown noteholders.  It appears that the

beneficial owners of approximately $400 million worth of distributions must still be identified,

and it is LBSF's belief that these noteholders are primarily located in foreign countries.  As

contemplated by the Discovery Order, upon identifying additional beneficial owners of notes that

received distributions, LBSF plans to amend its Second Amended Complaint, dated June 29,

2012, to identify the unnamed noteholders individually and as members of the putative

noteholder defendant class.

23.    An extension of the Stay will afford LBSF the opportunity to negotiate

settlements as well as to engage in ADRs with parties in the Distributed Action.  Indeed, after

identifying dozens of new parties as a result of the Discovery Order, amending the First

Amended Complaint, and serving many of the defendants with process, LBSF has received a

number of overtures from noteholder defendants regarding possible settlement.  Moreover, as

this Court may recall, in issuing the last Stay Order, this Court simultaneously granted Lehman's

motion to amend the SPV Derivatives ADR Procedures.  The purpose of such an amendment

was to maximize the efficacy of the ADR process in the Distributed Action by allowing LBSF to

---

[4] The Stay has been critical in enabling LBSF to conduct the painstaking discovery required to ascertain the current identity, address, and status for each named class member as required to effect service of the amended complaint upon all named class members that received challenged distributions and amend the amended complaint to reflect newly identified class members as appropriate.  Absent the Stay, litigation of the Distributed Action may have commenced before LBSF was able to discover such class members' identities and amend the amended complaint to reflect newly identified class members as appropriate.

commence ADR proceedings with individual noteholders rather than the SPV Derivatives

Counterparty (as defined in the SPV Derivatives ADR Procedures) in situations where

distributions have been made to noteholders.  Having completed service upon most United

States-based noteholders in the Distributed Action (and many of the foreign based noteholders),

LBSF plans to commence ADRs with numerous such noteholders over the course of the next few

months.

        24.     Since the last Stay Order, LBSF has been able to dismiss nine defendants

and settled with two defendants in the Distributed Action outside the ADR process.  In addition,

LBSF is in final negotiations regarding settlement with respect to one noteholder defendant and

plans to dismiss nine other parties within the next few weeks.  A further extension of the Stay

will provide LBSF with the opportunity to continue such negotiations with noteholders without

incurring litigation expenses, to commence ADR proceedings more effectively with individual

noteholders, and to simultaneously identify additional beneficial noteholders.

        25.     In addition to Avoidance Actions involving SPVs, there are currently 20

pending Avoidance Action complaints involving, among other defendants, trade vendors, loan

participants, and other third parties.  The Chapter 11 Estates and the Committee are either

engaged in, or are pursuing, settlement discussions with respect to each named defendant in such

actions.  The Chapter 11 Estates and the Committee believe these negotiations are likely to result

in a consensual resolution of many of these matters.  Since the last extension of the Stay, the

Chapter 11 Estates have settled or otherwise dismissed 13 Avoidance Actions and avoidance

claims subject to tolling agreements that involve trade vendors and other third parties.  Extension

of the Stay will provide the Chapter 11 Estates and the Committee with needed breathing room

to continue their efforts to pursue such negotiated resolutions in a timely and efficient manner.

26.     This Court already has exercised its discretion under section 105(a) of the Bankruptcy Code to manage its docket in these cases and, more importantly, to issue and extend the Stay.  *See generally* Tr. of Hr'g, June 15, 2011, at 31:8-9 ("there are huge advantages to case administration and having the continuation of the stay") (remarks of Peck, J.).  The sheer number and complexity of the Avoidance Actions will require substantial resources if litigation is to proceed any time soon.  Expiration of the Stay would force the Chapter 11 Estates and the Committee to simultaneously respond to discovery demands, respond to motions to dismiss and other dispositive motions, and participate in contested matters and trials.  Absent extension of the Stay, the Chapter 11 Estates and the Committee will be forced to litigate all of the Avoidance Actions at the same time, which will be costly, burdensome, and time-consuming.  Extending the Stay, and providing the Chapter 11 Estates and the Committee with an opportunity to try to achieve settlements with the Avoidance Action Defendants, including with respect to potential claim objections that the Plan Administrator could assert against such parties, is a far better alternative than immediate litigation.

27.     As the Court has noted, the Stay was "designed to benefit the entire administration of the Lehman cases" and is "beneficial."  Tr. of Hr'g, Feb. 16, 2011, at 147:20-21, 24.  Extending the Stay of the Avoidance Actions will allow the Chapter 11 Estates and the Committee to continue their significant progress in pursuing consensual resolutions of claims – whether by settlement or dismissal as appropriate – with minimized costs.  In particular, the continuation of the Stay will enable the Chapter 11 Estates to continue to focus on negotiation or meditation of the Avoidance Actions, including through the tremendously successful ADR program, without diverting vital resources from those efforts to litigate the Avoidance Actions.  *See generally* Tr. of Hr'g, Jan. 11, 2012, at 42:21-25, 43:1 ("The goal here is to deal fairly with

the interests of all creditors, with the interest of the estate as a whole, and to maximize the likelihood of favorable distributions to creditors under a confirmed plan.  No one disputes the efficacy and success of the ADR program that has been undertaken to date.  The results really do speak for themselves.") (remarks of Peck, J.).

28.    There has been no prejudice to the Avoidance Action Defendants as a result of the Stay, and such defendants will suffer no prejudice from an extension of the Stay, as they will not need to expend time and resources defending the lawsuits.  All rights of the parties will be preserved while the Stay is in effect.  Moreover, as has been the case since the issuance of the Stay Orders, the Avoidance Action Defendants have the right to move before the Court for a modification of the Stay for good cause shown at any time.  *See also* Tr. of Hr'g, Jan. 11, 2012, at 25:20-21 ("[D]efendants can seek to have the stay terminated before the, in this case, six-month extension.") (response of Chapter 11 Estates' counsel to query from the Court as to whether "individual defendants have the unfettered right to seek relief from this blanket stay to the extent that it can be demonstrated that a party is prejudiced or that the stay is no longer a useful exercise because the parties have negotiated to frustration," *id*. at 25:14-18).

29.    Although the Chapter 11 Estates' cases are unprecedented in terms of their size and complexity, relief similar to the relief granted in the Stay Orders and requested herein has been granted by this Court in other large chapter 11 cases.  *See In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Aug. 16, 2007) [ECF No. 9105] (order authorizing stay of approximately 740 avoidance actions and granting other related relief, including ability to amend complaints during pendency of stay and extending deadline for service of process); *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 5, 2004) [ECF No. 18230] (order

issuing 90-day stay of discovery in approximately 1,100 avoidance actions to enable the debtors

to develop procedures for conducting discovery in a coordinated and efficient manner).

30.    Extending the Stay is in the best interests of the Chapter 11 Estates and

their creditors and should be approved.  For all of the reasons that the Court has granted and

extended the Stay previously, as well as the considerable progress the Chapter 11 Estates and the

Committee have made in initiating ADR proceedings and consensually resolving the Avoidance

Actions, the Court should exercise its discretion here and extend the Stay.

### The Court Should Extend the Deadline for Service of Process

31.    The Federal Rules of Civil Procedure state that when a plaintiff shows

good cause, "the court must extend the time for service for an appropriate period."  FED. R. CIV.

P. 4(m).  "In determining whether good cause is shown, a court should consider (1) the

reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants

from the delay." *American Int'l Tel., Inc. v. Mony Travel Serv.*, 203 F.R.D. 95, 97 (S.D.N.Y.

2001).  Furthermore, courts readily extend the service deadlines in cases, such as these, that

involve service in foreign jurisdictions.  Rule 4(m) of the Federal Rules of Civil Procedure

expressly contemplates that the service deadline may be extended for service outside the United

States.  FED. R. CIV. P. 4(m) ("This subdivision (m) does not apply to service in a foreign

country under Rule 4(f) or 4(j)(l)."); *In re South African Apartheid Litigation*, 643 F. Supp. 2d

423, 433 (S.D.N.Y. 2009) ("the 120-day time period for service can be extended for service

outside of the United States") (quotations and citations omitted)).  A significant number of the

defendants in the Distributed Action are located in foreign jurisdictions, making service of

process more difficult and time consuming.

32.    The Debtors have demonstrated "reasonableness and diligence" in serving

many of the foreign and domestic defendants to date.

33.    LBSF seeks an extension of the Service Deadline for the Distributed Action.  Pursuant to the Discovery Order, LBSF has used discovery received to date to amend the First Amended Complaint and serve the Second Amended Complaint.  On July 18, 2012, this Court granted LBSF's motion for leave to amend its First Amended Complaint to add 154 new or misnamed noteholder defendants, many of which are foreign entities.  Since July 2012, LBSF has been diligently attempting to serve its Second Amended Complaint upon each of the named defendants.  LBSF seeks an extension of time to complete service of process upon the defendants to make all of the work it performed pursuant to the Discovery Order worthwhile.

34.    To date, LBSF has served all 8 trustee defendants, 35 co-issuer defendants, and 4 issuer defendants.  The remaining issuer defendants are located in the Cayman Islands, and service is currently underway.  With respect to the noteholder defendants, LBSF has served 78 of the 92 noteholder defendants located in the United States and 20 of the 85 noteholder defendants located in foreign jurisdictions.[5]  Of the remaining foreign noteholder defendants, 4 entities are being served through Requests for Judicial Assistance (Letter Rogatory) in Austria and Taiwan.[6]  The remaining foreign noteholder defendants are being served in 18 countries through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  Service is underway and expected to be completed within six months.

---

[5] Any noteholder defendant not accounted for herein has been dismissed, is planned to be dismissed, or is subject to a stay order in another jurisdiction.

[6] The Court executed the orders for the Letters of Request for International Judicial Assistance on September 6, 2012.  These orders have been translated and served through appropriate international channels.  LBSF will endeavor to complete service on all remaining foreign defendants during the extension of the service deadline but, depending on the service requirements in certain jurisdictions, may need to seek a limited further extension to complete service on particular defendants.

35.     An extension of the service deadline will not prejudice any of the Avoidance Action Defendants.  All of the Avoidance Actions are currently stayed pursuant to the Stay Orders, and should the Court grant the instant Motion, the Avoidance Actions will continue to be stayed.  Therefore, Avoidance Action Defendants who are served following an extension of the service deadline will be in the same position as those parties who have already been served.  Moreover, one of the central purposes of the Stay is to give the Chapter 11 Estates an opportunity to pursue amicable resolutions of the Avoidance Actions.  The extension of the Service Deadline will further this purpose by giving the Chapter 11 Estates adequate time to contact each Avoidance Action Defendant and initiate discussions regarding resolution.

36.     Finally, because of the large number of defendants in the Distributed Action, many of which are located in foreign jurisdictions, as explained above, an extension of the service deadline should be permitted, as contemplated by Rule 4(m) of the Federal Rules of Civil Procedure.  Service in foreign jurisdictions is a complicated and time consuming process which justifies the requested extension.

37.     In short, there is good cause to grant the request for an extension until July 20, 2013 to complete service of the Second Amended Complaint on the defendants in the Distributed Action.

38.     In addition to the prior extensions of the Service Deadline issued in these cases, similar relief has been granted by this Court in other large chapter 11 cases.  *See In re Quebecor World (USA), Inc.*, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. July 1, 2010) [ECF No. 4039] (order extending service of process deadline by 60 days with respect to certain avoidance actions); *Id.*, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. Aug. 26, 2010) [ECF No. 4105] (decision on the record further extending service of process deadline by 6 months with

respect to certain foreign avoidance action defendants); *In re Ames Dep't Stores, Inc.*, Case No.

01-42217 (REG) (Bankr. S.D.N.Y. Feb 3, 2004) [ECF No. 2524] (order extending service of

process deadline by approximately 120 days with respect to certain preference actions).

### Notice

39.    No trustee has been appointed in these chapter 11 cases.  Notice of this

Motion has been served in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii)

the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New

York; (v) all parties who have requested notice in these chapter 11 cases; and (vi) all known and

identified Avoidance Action Defendants or their agents or representatives, except for Avoidance

Action Defendants as to whom the respective Avoidance Action has been settled or dismissed.

### Conclusion

40.    For the reasons set forth herein, the Motion should be granted.  The

proposed scope of the Stay (i) is balanced and fair, (ii) does not modify the substantive rights of

any of the Avoidance Action Defendants, and (iii) promotes settlements at minimal costs to the

Chapter 11 Estates as well as the Avoidance Action Defendants.  In addition, an extension of the

Service Deadline will further this purpose by giving the Chapter 11 Estates and the Committee

adequate time to serve the Second Amended Complaint on each defendant in the Distributed

Action.

WHEREFORE the Plan Administrator and the Committee respectfully request that

the Court grant the relief requested herein and such other and further relief as is just.

Dated: December 21, 2012
       New York, New York

/s/ Jacqueline Marcus
Richard W. Slack
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

/s/ David S. Cohen
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

-and-

David S. Cohen
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

Attorneys for Litigation Subcommittee of the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                       :
In re                                                  :        **Chapter 11 Case No.**
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,           :        **08-13555 (JMP)**
                                                       :
                        **Debtors.**                   :        **(Jointly Administered)**
                                                       :
                                                       :
------------------------------------------------------------------x

**ORDER EXTENDING STAY OF AVOIDANCE ACTIONS AND**
**GRANTING CERTAIN RELATED RELIEF PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1)**

Upon the motion, dated December 21, 2012 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors (the "Plan"), and the litigation subcommittee of the Official Committee of Unsecured

Creditors appointed in these cases (the "Committee"), pursuant to section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 4(m) of the Federal Rules of Civil

Procedure, as incorporated and made applicable hereto by Rule 7004(a)(1) of the Federal Rules

of Bankruptcy Procedure, to extend the stay for each of the adversary proceedings identified on

Exhibit A hereto and any other avoidance actions that may be commenced by the Plan

Administrator or the Committee under sections 544, 545, 547, 548, 549, 550 and/or 553 of the

Bankruptcy Code (collectively, the "Avoidance Actions") and to grant certain related relief, as

more fully described in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

the Court having entered the *Order Staying Avoidance Actions and Granting Certain Related*

*Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*,

dated October 20, 2010 [ECF No. 12199] (the "Initial Stay Order") the *Order Extending the Stay*

*of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the*

*Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated June 16, 2011 [ECF No. 17763], the

*Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to*

*Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 11, 2012

[ECF No. 24198], and the *Order Extending Stay of Avoidance Actions Pursuant to Section*

*105(a) of the Bankruptcy Code*, dated July 18, 2012 [ECF No. 29506] (together with the Initial

Stay Order, the "Stay Orders"); and due and proper notice of the Motion having been provided in

accordance with the procedures set forth in the second amended order entered June 17, 2010

governing case management and administrative procedures [ECF No. 9635] to (i) the United

States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal

Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all

parties who have requested notice in these chapter 11 cases; and (vi) each of the known and

identified defendants to the Avoidance Actions or their agents or representatives (the "Avoidance

Action Defendants"), except for Avoidance Action Defendants as to whom the respective

Avoidance Action has been settled or dismissed, and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Stay imposed by the Stay Orders is hereby extended for a period of six (6) months to July 20, 2013, without prejudice to the ability of the Plan Administrator and the Committee to request further extensions; and it is further

ORDERED that the Chapter 11 Estates and the Committee shall have until July 20, 2013 to complete service of the Second Amended Complaint on each defendant in the Distributed Action, without prejudice to the ability of the Chapter 11 Estates and the Committee to request further extensions; and it is further

ORDERED that, unless the Stay is extended by order of the Court or as otherwise agreed by the parties, each Avoidance Action Defendant shall be required to answer or otherwise respond to any Avoidance Action complaint by the later of September 5, 2013, or, if such complaint is amended or further amended, 30 days after the date of the filing of any such amended complaint or further amended complaint, as applicable; *provided*, *however*, that if the Stay is lifted by (i) the Plan Administrator's filing and service of a notice of intention to prosecute an Avoidance Action or (ii) the Court's entry of an order modifying the Stay over an Avoidance Action, then the applicable Avoidance Action Defendant shall be required to answer or otherwise respond to the Avoidance Action complaint within 30 days after the date of, as applicable, service of a notice of intention to prosecute such Avoidance Action or the Court's order modifying the Stay over such Avoidance Action; and it is further

ORDERED that, except as set forth herein, all other terms and provisions of the Stay Orders shall remain unaltered and in full force and effect; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: January __, 2013
New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**(Schedule of Pending Avoidance Actions)**

| Adversary Proceeding No. | Adversary Proceeding |
|---|---|
| 10-03542 (JMP) | Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, *et al.* |
| 10-03544 (JMP) | Lehman Brothers Financial Products Inc. v. The Bank of New York Mellon Trust Co., National Association, *et al.* |
| 10-03545 (JMP) | Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, *et al.* |
| 10-03547 (JMP) | Lehman Brothers Special Financing Inc. v. Bank of America National Association, *et al.* |
| 10-03548 (JMP) | Lehman Brothers Holdings Inc. v. AXA, S.A., *et al.* |
| 10-03552 (JMP) | Lehman Brothers Holdings Inc. v. Fragomen, Del Ray, Bernsen and Loewy, LLP |
| 10-03553 (JMP) | Lehman Brothers Holdings Inc. v. GMAC Mortgage Corporation |
| 10-03558 (JMP) | Lehman Brothers Holdings Inc. v. Earth Thebault Inc. |
| 10-03560 (JMP) | Lehman Brothers Holdings Inc. v. EMortgage Logic LLC |
| 10-03565 (JMP) | Lehman Brothers Holdings Inc. v. Georgeson Inc. |
| 10-03566 (JMP) | Lehman Brothers Holdings Inc. v. Hypotheca Capita LLC |
| 10-03598 (JMP) | Lehman Brothers Holdings Inc. v. First American Residential Value View LLC |
| 10-03606 (JMP) | Lehman Brothers Holdings Inc. v. Stewart Lender Services |
| 10-03607 (JMP) | Lehman Brothers Holdings Inc. v. Interface Cable Assemblies & Services Corporation |
| 10-03609 (JMP) | Lehman Brothers Holdings Inc. v. Deutsche Bank Trust Company Americas |
| 10-03809 (JMP) | Lehman Brothers Special Financing Inc. v. Wells Fargo Bank National Association, *et al.* |
| 10-03811 (JMP) | Lehman Brothers Special Financing Inc. v. Bank of New York Mellon National Association |
| 10-03830 (JMP) | Lehman Commercial Paper Inc. v. Confluent V Limited and AXA Investment Managers Paris S.A. |
| 10-03831 (JMP) | Lehman Commercial Paper Inc. v. BlueBay Asset Management Plc, *et al.* |
| 10-03832 (JMP) | Lehman Commercial Paper Inc. v. Adagio III CLO PLC and AXA Investment Managers Paris S.A. |

| **Adversary Proceeding No.** | **Adversary Proceeding** |
|---|---|
| 10-03833 (JMP) | Lehman Commercial Paper Inc. v. Matignon Derivatives Loans and AXA Investment Managers Paris S.A. |
| 11-01623 (JMP) | Lehman Brothers Holdings Inc. v. Perficient, Inc. |
| 11-01661 (JMP) | Lehman Brothers Holdings Inc. v. Bullet Communications Inc. |
| 11-01697 (JMP) | Lehman Commercial Paper Inc. v. Sark Master Fund Limited |
| 12-01043 (JMP) | Lehman Brothers Holdings Inc. v. CitiMortgage, Inc. |
| 12-01668 (JMP) | Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc. v. Standard Chartered Bank and Standard Chartered Bank Korea (f/k/a Standard Chartered First Bank Korea) |