Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Chapter 11 Case No. 08-13555 (JMP)

 4   Case No. 08-01420 (JMP)(SIPA)

 5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 6   In the Matter of:

 7   LEHMAN BROTHERS HOLDINGS, INC., ET AL.,

 8              Debtors.

 9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   In the Matter of:

11   LEHMAN BROTHERS INC.,

12              Debtor.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14                        U.S. Bankruptcy Court

15                        One Bowling Green

16                        New York, New York

17

18                        December 12, 2012

19                        10:02 AM

20

21   B E F O R E :

22   HON JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25
```

Page 2

1   Hearing re:  Tenth Application of Hughes Hubbard & Reed LLP

2   for Allowance of Interim Compensation for Services Rendered

3   and Reimbursement of Actual and Necessary Expenses Incurred

4   From November 1, 2011 Through February 29, 2012 [LBI ECF No.

5   5409]

6

7   Hearing re:  Trustee's Motion Pursuant to Section 105(a) of

8   the Bankruptcy Code and Federal Rule of Bankruptcy Procedure

9   9019 for Entry of an Order Approving Settlement Agreement

10  with the Citi Parties [LBI ECF No. 5450]

11

12  Hearing re:  William H. Walton, et al. v. Lehman Brothers

13  Inc., et al. [Adversary Proceeding No. 12-01898]

14

15  Hearing re:  Williams-Pate v. LBHI, et al. [Adversary

16  Proceeding No. 12-01220]

17

18  Hearing re:  Motion of Fidelity National Title Insurance

19  Company to Compel Compliance with Requirement of Title

20  Insurance Policies [ECF No. 11513]

21

22  Hearing re:  Motion of Monti Family Holding Company, Ltd for

23  Leave to Conduct Rule 2004 Discovery of Debtor Lehman

24  Brothers Holdings, Inc. and Other Entities [ECF No. 16803]

25

1   Hearing re:  LBHI's Objection to Claim No. 17588 Filed by

2   Logan Hotels and Resorts, Mexico, S.A. de c.v., et al. [ECF

3   No. 29174]

4

5   Hearing re:  Debtors' One Hundred Forty-Third Omnibus

6   Objection to Claims (Late-Filed Claims) [ECF No. 16856]

7

8   Hearing re:  Debtors' One Hundred Ninety-Eighth Omnibus

9   Objection to Claims [ECF No. 19902]

10

11  Hearing re:  LBHI v. JP Morgan Chase Bank, N.A. [Adversary

12  Proceeding No. 10-03266]

13

14  Hearing re:  LBHI and LBCC v. Ford Global Treasury, Inc.

15  [Adversary Proceeding No. 12-01877]

16

17  Hearing re:  Cardinal Investment Sub I, L.P. and Oak Hill

18  Strategic Partners, L.P.'s Motion for Limited Intervention

19  in the Contested Matter Concerning the Trustee's

20  Determination of Certain Claims of Lehman Brothers Holdings

21  Inc. and Certain of its Affiliates [LBI ECF No. 4634]

22

23  Hearing re:  Motion of FirstBank Puerto Rico for (1)

24  Reconsideration, Pursuant to Section 502(j) of the

25  Bankruptcy Code and Bankruptcy Rule 9024, of the SIPA

Page 4

1   Trustee's Denial of FirstBank's Customer Claim, and (2)

2   Limited Intervention, Pursuant to Bankruptcy Rule 7024 and

3   Local Bankruptcy Rule 9014-1, in the Contested Matter

4   Concerning the Trustee's Determination of Certain Claims of

5   Lehman Brothers Holdings Inc. and Certain of its Affiliates

6   [LBI ECF No. 5197]

7

8   Hearing re:  Motion of Elliott Management Corporation for an

9   Order, Pursuant to 15 U.S.C. §§ 78fff-1(B), 78fff-2(B) and

10   78fff-2(C)(1) and 11 U.S.C. § 105(A), (I) Determining the

11   Method of Distribution on Customer Claims and (II) Directing

12   an Initial Distribution on Allowed Customer Claims [LBI ECF

13   No. 5129]

14

15   Hearing re:  Trustee's Motion Pursuant to Section 105(a) of

16   the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b)

17   for Approval of General Creditor Claim (I) Objections

18   Procedures and (II) Settlement Procedures [LBI ECF No. 5392]

19

20

21

22

23

24

25   Transcribed by:  Jamie Gallagher

08-13555-mg   Doc 33537   Filed 12/14/12   Entered 01/02/13 11:59:46   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 5 of 30

Page 5

```
 1    A P P E A R A N C E S :

 2    WEIL, GOTSHAL & MANGES LLP

 3         Attorneys for the Debtors

 4         767 Fifth Avenue

 5         New York, NY 10153

 6

 7    BY:  ZAW WIN, ESQ.

 8

 9    HUGHES HUBBARD & REED LLP

10         Attorneys for SIPA Trustee

11         One Battery Park Plaza

12         New York, NY 10004

13

14    BY:  JEFFREY S. MARGOLIN, ESQ.

15         JAMES B. KOBACK, JR., ESQ.

16         BETSY PIERCE, ESQ.

17

18    SECURITIES INVESTOR PROTECTION CORPORATION

19         General Counsel for SIPC

20         805 15th Street, N.W.

21         Suite 800

22         Washington, DC 20005

23

24    BY:  KENNETH J. CAPUTO, ESQ.

25
```

1   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

2        Attorney for Citibank

3        1285 Avenue of the Americas

4        New York, NY 10019

5

6   BY:  CLAUDIA HAMMERMAN, ESQ.

7        STEPHEN J. SHIMSHAK, ESQ.

8

9   MENAKER & HERRMANN, LLP

10        Attorney for SIPA Trustee

11        10 East 40th Street

12        New York, NY 10016

13

14   BY:  RICHARD G. MENAKER, ESQ.

15

16   GROSS POLOWY ORLANS

17        Attorney for McCurdy & Candler

18        900 Merchants Concourse

19        Suite 412

20        Westbury, NY 11590

21

22   BY:  DENNIS JOSE, ESQ.

23

24

25

Page 7

1   THOMPKINS, MCGUIRE, WACHENFELD & BARRY, LLP

2        Attorney for Aurora Bank, FSB

3        Four Gateway Center

4        100 Mulberry Street

5        Suite 5

6        Newark, NJ 07102

7

8   BY:   ANDREW P. ZACHARDA, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2             THE COURT:  Be seated, please.  Good morning,

 3     everybody.

 4             MR. KOBAK:  Good morning, Your Honor.  James

 5     Kobak, Hughes Hubbard & Reed for the SIPA Trustee.

 6             Your Honor, there are two matters on the calendar

 7     for this morning, both of which are unopposed.  The first is

 8     my firm's 10th interim fee application, and the second

 9     concerns an agreement with Citibank, which the trustee's

10     special counsel, Mr. Menaker, will be handling.

11             If it's all right with Your Honor, we'll start

12     with the fees.

13             THE COURT:  That's fine.

14             MR. KOBAK:  Our motion is unopposed and it's

15     supported by the securities investor protection corporation,

16     Mr. Caputo is here in Court today.

17             This application covers the four month period from

18     November of last year through the end of February this year.

19     It encompasses a total of approximately 33,600 hours.  The

20     average blended rate for those hours is about $490.  It

21     reflects our customary 10 percent discount for SIPC matters.

22             Also, there's been a $1 million holdback.  There

23     have been some deductions that we made voluntarily, or after

24     were reviewed by SIPC because of its thorough process.  And

25     those amount to about two percent of the total bill.  There
```

1   are also a number of expenses that total approximately

2   100,000, which we customarily bill clients, but we do not

3   bill for it in these cases.

4           I think my -- the application and my affidavit set

5   forth the services that were provided.  And unless Your

6   Honor has questions, we would move that our application be

7   granted.

8           THE COURT:  I've reviewed the application and the

9   papers submitted by SIPC in support of the application, and

10  the application is approved.

11          MR. KOBAK:  Thank you, Your Honor.

12          MR. MENAKER:  Good morning, Your Honor.

13          THE COURT:  Good morning.

14          MR. MENAKER:  My name is Richard Menaker of

15  Menaker & Herrmann.  We represent the SIPA trustee as

16  special counsel in connection with certain matters.

17          And on before Your Honor this morning is the

18  uncontested motion of the trustee for approval of the

19  settlement with Citibank, NA and its affiliates.

20          As shown in our papers, it's a very good

21  settlement.  It's global in nature.  It ends years of

22  differences that if not settled, promised to involve the

23  parties and the Court in years of continuing dispute and

24  proceedings, great expense, and considerable uncertainty as

25  to result.

1        The settlement has been vetted.  Prior to the

2   objection date, we've received calls from a number of

3   interested persons.  We provided detailed explanations about

4   the circumstances and terms of the settlement.  LBHI and its

5   affiliated debtors have received assurances that the

6   settlement will not affect their rights in any way,

7   whatsoever.  And that's memorialized in a letter.

8        THE COURT:  When you say their rights in any way

9   whatsoever, are you referring to their rights with respect

10  to ongoing claims involving Citibank, or rights with respect

11  to ongoing claims as to LBI, or both?

12       MR. MENAKER:  Both.

13       THE COURT:  All right.

14       MR. MENAKER:  We also have a letter agreement with

15  a creditor, Nordea Bank Finland, similar in effect, which

16  simply reserves its rights and makes clear that there's no

17  intention that this settlement would adversely affect its

18  rights in any way.

19       The terms of settlement are, in essence, straight

20  forward and relatively simple, the details as shown in our

21  papers are complex.  There are a number of schedules which

22  show many different types of accounts and issues, and so

23  forth that have been dealt with.

24       But in outline, basically, the trustee receives

25  $435 million.  Citi receives recognition of various rights

1    of setoff previously exercised -- are now deemed exercised.

2    Also, acceptance of certain claims that at one point were

3    alleged to be secured are now being treated as general,

4    unsecured claims.

5         Now, the settlement brings to closure the parties'

6    disputes and ends what would have been years of issues

7    involving, particularly, the application of the bankruptcy

8    safe harbors.  As Your Honor knows, and there was hundreds

9    of pages of motion that were filed quite a long time ago,

10   not calendared, instead we proceeded with extensive

11   discovery, millions of pages of documents exchanged,

12   extensive investigation by the trustee.

13        The result is that a conclusion that there were

14   going to be years ahead and considerable uncertainty and

15   burden for the parties in the Court, and expense to carry on

16   those proceedings.  The resulting settlement is fair.  It is

17   equitable.  And it serves the interests of the SIPA statute

18   and the interested parties.

19        And accordingly, because it is also uncontested,

20   we urge its approval by the Court.  Thank you very much.

21        THE COURT:  Thank you.  Does anyone else wish to

22   be heard with respect to this?  No comment from counsel for

23   Citibank.  No comment from anyone else in the gallery.

24        This settlement speaks for itself, and

25   Mr. Menaker, you've embellished it a little bit with your

08-13555-mg    Doc 33537    Filed 12/14/12    Entered 01/02/13 11:59:46    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 12 of 30

Page 12

1    remarks.  It's uncontested and obviously in the best

2    interest of the parties following discovery and diligence.

3    And so, I approve it and I'm pleased that you've been able

4    to resolve it.

5              MR. MENAKER:  We are pleased as well.  Thank you

6    very much, Your Honor.

7              THE COURT:  Okay.

8              MR. KOBAK:  Thank you, Your Honor.

9              THE COURT:  Is there anything more for this

10   morning?

11             MR. KOBAK:  I believe that concludes our calendar,

12   Your Honor.

13             THE COURT:  Fine.  You can submit appropriate

14   orders and there's a 2 o'clock calendar.  Thank you very

15   much.

16        (A chorus of thank you)

17        (Whereupon this proceeding was concluded at 10:59 AM)

18             THE COURT:  Be seated, please.  Good afternoon.

19             MR. MARGOLIN:  Good afternoon, Your Honor.

20   Jeffrey Margolin for Mr. Giddens, the SIPA trustee.

21             The first matter on this afternoon's agenda is a

22   pretrial conference in the Walton adversary proceeding

23   that's been brought against Lehman Brothers, Inc., even

24   though it's been related to the Lehman Brothers Holdings,

25   Inc. case proceeding and Bank of America, and Fannie Mae.

Page 13

1          The SIPA trustee had requested to Mr. Walton's

2     counsel, these plaintiffs, that this matter -- that this

3     pretrial conference be adjourned.  Mr. Walton was

4     unresponsive to numerous requests by the SIPA trustee

5     regarding this and I do not believe either Mr. Walton or any

6     of the plaintiffs are in the courtroom or on the telephone.

7          THE COURT:  Let's find out.  Is anybody here on

8     behalf of the plaintiffs, the Waltons?  There's no response.

9          When you say unresponsive or nonresponsive, does

10    that mean that requests for return phone calls weren't made,

11    and that emails weren't returned?  Or what -- did you speak

12    with someone and someone said, well, we're not going to

13    respond to you?

14         MR. MARGOLIN:  Your Honor, we sent him -- we sent

15    Mr. Walton both emails and left him voicemails, and neither

16    one were responded to.

17         THE COURT:  So, it's simply, you weren't able to

18    attract a reaction from the plaintiffs in any way?

19         MR. MARGOLIN:  That's correct.

20         THE COURT:  Okay.  I've -- I've looked at the

21    pleadings in the case and I gather that there is a hearing

22    currently scheduled for January 16th, I believe.

23         MR. MARGOLIN:  That is when both the SIPA trustee

24    and Bank of America and Fannie Mae have noticed motions for

25    dismissal.  But, of course, we would work with the Court on

1    the calendar and would be available at the Court's

2    convenience regarding those motions.

3                THE COURT:  The problem with the case, based upon

4    my review, is that, without going to the merits, it seems to

5    be in the wrong Court.  And I gather that the trustee of LBI

6    has sought, on a number of occasions, to eliminate exposure

7    by granting releases with respect to the quiet title issues

8    in the case, and to otherwise exit the case without having

9    to expend significant estate resources, correct?

10               MR. MARGOLIN:  That's correct, Your Honor.

11               THE COURT:  And can you just provide me with a

12   status report on those efforts?

13               MR. MARGOLIN:  We reached Mr. Walton a little bit

14   before Thanksgiving regarding that effort.  Mr. Walton sent

15   us some voluminous additional documentation and asked us to

16   make additional representations regarding LBI in connection

17   with the allegations he's made in the complaint.

18               We, again, tried to reach out to Mr. Walton to

19   speak to him further about his requests, his additional

20   requests.  Again, we received -- we made several calls,

21   several emails to him, no response.

22               THE COURT:  Do you know whether or not the

23   attorney who represents William H. Walton and others as

24   plaintiffs is related to Mr. Walton in some fashion?

25               MR. MARGOLIN:  We believe, based on limited

1    research, that they are -- that all of the Waltons are

2    related.

3                 THE COURT:  Including counsel?

4                 MR. MARGOLIN:  Including counsel, yes.  Including

5    counsel, who I believe also is a named plaintiff.

6                 THE COURT:  All right.  I don't think there's very

7    much that we can do about this today.  I think that the

8    trustee of LBI and other defendants should endeavor to

9    continue reaching out to the plaintiff to provide

10   conspicuous notice of the hearing to take place next month.

11   The need to file responsive papers in accordance with case

12   management procedures, generally applicable to adversary

13   proceedings in this case, and to see if it's possible by

14   means of diligent contact to reach some sort of

15   accommodation, at least as it relates to the ongoing

16   prosecution of the litigation in this Court.

17                 In the event that the LBI motion to dismiss is

18   granted, it would seem that there is no basis for the

19   remaining litigation, to the extent there's any merit to it,

20   to proceed in this Court.  And I'm mindful of the arguments

21   that had been made regarding either abstention or transfer

22   of venue by other defendants.  But it's premature at this

23   point to comment with regard to that and we'll deal with

24   that next month.

25                 MR. MARGOLIN:  Right.  Thank you, Your Honor.

1    We'll continue to follow up with Mr. Walton regarding this

2    matter.

3              THE COURT:  Okay.

4              MR. MARGOLIN:  Thank you.  May we be excused?

5              THE COURT:  You may.  Thank you.

6              Good afternoon.

7              MR. WIN:  Good afternoon, Your Honor.  Zaw Win,

8    Weil Gotshal & Manges for Lehman Brothers Holdings Inc. and

9    certain of its affiliates.

10             If I might, I'd just like to make one comment on

11   Walton before we moved on to the next matter.  LBHI is not a

12   named defendant in that adversary proceeding, but the

13   complaint was filed in LBHI's case.  So, I'd just like to

14   state on the record that to the extent that LBHI, or any of

15   the other Chapter 11 debtors, are somehow brought into that

16   adversary proceeding, we reserve our rights with respect

17   thereto.

18             THE COURT:  Obviously, yes, of course.

19             MR. WIN:  The second matter on the agenda today is

20   the Williams-Pate adversary proceeding.  This one has a

21   little bit of a convoluted procedural history, so I thought

22   I'd just refresh the Court's recollection.

23             On April 2, 2012, the plaintiff commenced what we

24   call the initial adversary proceeding in this Court.  That

25   one is given adversary proceeding number 12-0122.  This

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 17

```
 1    proceeding was comprised of two claims, excuse me, for

 2    declaratory relief: one claim for liable and one claim for

 3    quiet title.  And each of these claims relate to real

 4    property located in Georgia.

 5              THE COURT:  Can I just interject for a minute

 6    because other counsel are here and standing, and they don't

 7    need to stand.  You can sit down.

 8              UNIDENTIFIED SPEAKER:  Thank you, Judge.

 9              THE COURT:  Thank you.

10              MR. WIN:  On May 2nd, LBHI and the other

11    defendants, McCurdy & Candler, which is a law firm, and

12    Aurora Loan Services each filed motions to dismiss.  There

13    was a status conference in front of this Court on May 16th,

14    at which time a briefing schedule was established.

15    Plaintiff did not participate in that status conference.

16              On May 18th, the Court entered an order

17    establishing June 4th as the day by which plaintiff was

18    required to submit her brief in opposition.  Plaintiff did

19    not file a brief by June 4th or thereafter, nor did she

20    appear at the June 13th hearing on the motions to dismiss.

21              However, on May 8th, the plaintiff commenced a

22    second adversary -- or second action, excuse me, against

23    LBHI, Aurora, and McCurdy & Candler by filing a notice of

24    removal in the District Court.  The second action purported

25    to remove a foreclosure action that was pending in Georgia
```

08-13555-mg    Doc 33537    Filed 12/14/12    Entered 01/02/13 11:59:46    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 18 of 30

Page 18

1    to the District Court.

2            LBHI, McCurdy & Candler are not parties to the

3    action that's pending in Georgia.  Plaintiff re-filed her

4    complaint from the initial action as the operative document

5    in the removal action, but I understand that she may have

6    added some additional complaints.

7            On May 8th, the District Court transferred the

8    removal action to this Court.  And on May 31, 2012, it was

9    assigned case number 12-01678.  On June 26th, LBHI filed a

10   motion to consolidate, which was unopposed.  And on

11   August 8th, this Court entered an order consolidating the

12   two actions under case number 12-01220.

13           The consolidation order also provided that the

14   debtor's motions to dismiss would -- sorry, excuse me, the

15   defendants' motions to dismiss would be deemed filed in the

16   consolidated adversary proceeding.  Following entry of the

17   consolidation, I understand that each of the defendants has

18   attempted to reach out to the plaintiff to schedule, or to

19   reach some kind of an understanding for a briefing schedule

20   on the motions to dismiss.

21           LBHI has not been successful.  We left messages

22   for her, but she did not respond to us.  I understand that

23   counsel for McCurdy & Candler has had direct contact with

24   her, so I think he can speak to that in a few minutes.

25           On October 2nd, counsel -- that same counsel for

Page 19

1    McCurdy & Candler filed a letter with this Court seeking the

2    status conference.  Plaintiff, on November 29th, submitted a

3    motion seeking to reschedule this status conference, but

4    this document didn't include any explanation for why such a

5    rescheduling was necessary.

6              On December 5th, LBHI filed a corrected notice of

7    the status conference, which notice was served on plaintiff

8    at all of her known addresses by overnight mail.  I don't

9    see her in the courtroom and I'm not sure if she's -- or any

10   representative for her is on the line.

11             THE COURT:  Is there any representative of the

12   plaintiff, Williams-Pate, either in Court or on the

13   telephone?  There's no response.

14             MR. WIN:  So, I think what we need to accomplish

15   at this status conference, then, is to set some kind of

16   framework for resolving this issue.  And would the Court

17   like to here from the attorney from McCurdy & Candler on the

18   communications he sent?

19             THE COURT:  Yes, absolutely.

20             MR. JOSE:  For the record, Dennis Jose from Gross

21   Polowy Orlans representing McCurdy & Candler, the defendant

22   in the adversary complaint 12-01220.

23             Judge, the subsequent -- I waited to contact this

24   particular individual until the consolidations order was

25   entered.  The consolidation order was entered early August.

08-13555-mg   Doc 33537   Filed 12/14/12   Entered 01/02/13 11:59:46   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 20 of 30

Page 20

1          When I first attempted to contact her was on

2     August 21, 2012.  At that point, I used a number that was

3     provided to my -- it was provided to me by Georgia counsel.

4     And I did get in touch with her.

5          She indicated she was driving and that I should

6     call her back and leave a message with contact information,

7     then she will reach back to me, which I did.  And I received

8     a call back from her on the 22nd, Judge.  And essentially

9     the call back requested a letter from me, and she used the

10    words offer and compromise.

11         And she'd -- due to the conversation, Judge, she

12    also made comments to the effect that she would have to take

13    whatever she had -- the -- such letter to her counsel to see

14    -- to verify what, if any responses would be needed.

15         And the given -- the individual question given --

16    addressed that's different from the real property, Judge,

17    and so we sent -- I sent a letter out to this individual on

18    September 17th, which due -- that intervening time period,

19    Judge, I was -- I left messages for her seeking to know who

20    her counsel was such that that communication would be

21    directed to that counsel.

22         And during two multiple -- two conversations,

23    approximately, Judge, this is what I can claim.  She

24    indicated that she -- at one point, that she has counsel.

25    She's discussing it with them, and that she would get back

08-13555-mg   Doc 33537   Filed 12/14/12   Entered 01/02/13 11:59:46   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 21 of 30

Page 21

1   to me as to whether -- what the counsel said and who this

2   individual is.  And at a later point, she basically -- she

3   said to the effect that I don't know whether this counsel

4   would be interested in being on the front lines and making

5   an appearance before this Court.

6           So, I waited a little while after that

7   conversation to pass -- she would let me know whether that

8   was -- whatever the case may be, whether the counsel was

9   going to be the backhand or whether she's going to be the

10  person of contact.

11          But I seized with my communication with her

12  directly, Judge, to the extent that there might be a counsel

13  existing.  I didn't want to infringe upon any ethical

14  obligations.

15          Therefore, subsequently on September 17th, I sent

16  her a new contact letter that would recall asking her if she

17  has counsel, to let us know, and setting forth her

18  oppositions regarding this particular -- these particular

19  adversary complaint.  I have not heard since.

20          It's my understanding that the other counsels have

21  had less luck than I have.  They've actually left messages,

22  but were not responded to.  And as the Court is well aware,

23  we do have what is -- what can best be described as a

24  request for an adjournment of today's conference to a

25  February date.

08-13555-mg    Doc 33537    Filed 12/14/12    Entered 01/02/13 11:59:46    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 22 of 30

Page 22

1          And I speak for McCurdy & Candler, Judge, that

2    we'd -- that came directly from the debtor and the -- if you

3    look at the format of the application, as well, it is, I

4    have to say, professionally written, at least on its face.

5    It doesn't look like a pro se application, at least on its

6    face.

7          But we respectfully oppose the request, Judge, and

8    our request is to set this matter up for a briefing

9    schedule, which my suggestion will be as follows, Judge.

10   That we have approximately -- all parties sitting here would

11   have approximately 45 days to supplement an already existing

12   motion to dismiss, to take into account the new adversary

13   proceeding that's been removed into Bankruptcy Court, and

14   the plaintiff has a set period of time to respond and

15   possibly we'll have a heard in March.

16          THE COURT:  Anybody else wish to comment on this?

17          MR. ZACHARDA:  Thank you, Your Honor.  Andrew

18   Zacharda on behalf of Aurora Bank, FSB.

19          I agree with what Mr. Jose has represented to the

20   Court, and I had also reached out to Ms. Williams-Pate to

21   engage her in some sort of dialogue to see whether, or if

22   she would be interested in a dismissal of these pending

23   adversary proceedings without prejudice.  I left her a

24   voicemail message and that message was not returned.  I have

25   not spoken with her directly.

08-13555-mg   Doc 33537   Filed 12/14/12   Entered 01/02/13 11:59:46   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 23 of 30

Page 23

1         The only thing I have to add is that there do

2    appear to be some slightly differing allegations in the

3    second adversary proceeding.  The initial document that was

4    attached to the notice of removal is the complete first

5    adversary complaint in the 12-1220 adversary proceeding.

6         But attached to that is Ms. Williams-Pate's answer

7    and affirmative defenses filed in Forsythe County, Georgia

8    in the dispossessed action presumably following the

9    completion of the non-judicial foreclosure sale in Georgia.

10   To some extent, the allegations are the same.  To some

11   extent, there are slight differences.

12        But we would like the opportunity to supplement

13   the existing dismissal briefing to account for the nuances

14   in the additional pleadings filed by Ms. Williams-Pate.

15        THE COURT:  Okay, thank you.

16        MR. ZACHARDA:  Thank you.

17        THE COURT:  Here's my thinking on this.  I have

18   never heard from the plaintiff or any attorney acting on the

19   plaintiff's behalf.  The litigation, in one form or another,

20   has been pending since April.  Motions to dismiss have been

21   pending since May.

22        It is now December.  And this case is consuming

23   considerable lawyer time, as well as judicial resources.  In

24   part because the plaintiff appears not to be in a position

25   to aggressively prosecute the litigation in this Court,

08-13555-mg    Doc 33537    Filed 12/14/12    Entered 01/02/13 11:59:46    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 24 of 30

Page 24

1    either as a pro se plaintiff, or through counsel.  I am

2    mindful of the complexities of bankruptcy litigation even

3    for experts.  But we really need to move the process forward

4    in an orderly and fair manner, fair to the plaintiff, as

5    well as to the defendants.

6            In the November 29 filing, the plaintiff, without

7    stating cause for the requested adjournment, asked that this

8    status conference be put over to February 1, 2013, at

9    10:15 a.m.  I'll simply note that case administration in the

10   lien and bankruptcy cases does not permit an individual

11   litigant to set the date for status conferences.

12           And in order to maintain an orderly docket, we've

13   established over the last, more than four years, a practice

14   of having regular calendar days each month that are

15   established by the Court in cooperation with counsel for the

16   debtors.  And in certain instances, those dates can be

17   changed for cause shown.

18           No cause having been asserted for the requested

19   adjournment, and there being no case management ability to

20   pick February 1 as a date for the adjourned status

21   conference, the request for adjournment is denied.

22           But there is no substantive consequence associated

23   with that denial, because all that we are doing today is

24   establishing some deadlines for the ongoing prosecution of

25   the motions to dismiss and for any responses that the

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 25

1    plaintiff may choose to interpose with respect to those

2    motions to dismiss.

3          In order to avoid any issue relating to timing

4    that may not have been fully detailed or disclosed in the

5    plaintiff's request for an adjournment, I'm going to suggest

6    that the renewal and/or restatement of the defendant's

7    motions to dismiss, which will encompass the allegations in

8    the adversary proceeding that has been removed and

9    consolidated with the original adversary proceeding.

10         I suggest that such motion paper is -- be

11   submitted by February 1.  Any opposition papers would need

12   to be filed on or before March 6th, and any responsive

13   papers, reply papers would be filed on or before March 11.

14   We'll have a hearing in connection with the motions to

15   dismiss on March 13 at 2:00 p.m.

16         Now, one of the important case administration

17   issues that we need to deal with involves giving notice to

18   the plaintiff of her obligation, either individually or

19   through counsel, should she retain counsel, to respond to

20   the motions to dismiss in accordance with the timeline that

21   I have just announced.  I would note that the timeline takes

22   out the hearing on the motion to dismiss to a date that's

23   almost one year from the time that this complaint was

24   originally lodged here.

25         Given that timing, I will not be receptive to any

```
 1    requests that the plaintiff may make for additional time.

 2    But I do believe that it would be important for counsel for

 3    the defendants to exercise best efforts to provide actual

 4    notice both in writing and by telephone, by email to the

 5    extent that the plaintiff has an email address, any by other

 6    means reasonably calculated to provide actual notice of the

 7    fact that we are going to have a hearing date on

 8    March 13, 2013 at 2:00 p.m. and that I will not be moving

 9    that date, except for extraordinary good cause.

10              Additionally, I think it would be appropriate for

11    there to be a formal written notice given within the next

12    few days, and certainly before the Christmas holiday, of

13    this schedule.  That way the plaintiff will know well before

14    the filing of the renewed motions to dismiss that she should

15    expect such papers to be filed and she should also expect

16    that those papers will be substantially similar to the

17    motion papers that have already been filed.  Accordingly,

18    she should begin to think about what kind of responses to be

19    making to these pleadings.

20              Furthermore and finally, it would be highly

21    desirable for the plaintiff to consider whether to resolve

22    these disputes in a forum other than the Bankruptcy Court.

23    Based upon my understanding of the litigation, the plaintiff

24    has made claims against Lehman Brothers Holdings Inc. that

25    appear not to be based upon any actionable conduct of the
```

```
 1   debtor.  And without going into the merits of the complaint,

 2   by virtue of having named LBHI as a defendant, there is a

 3   tenuous connection to the Bankruptcy Court that would not

 4   exist at all if LBHI were dismissed from the case.

 5           Assuming that plaintiff has access to competent

 6   counsel, it would be desirable for the plaintiff to consider

 7   the potential wisdom of disposing of this litigation in the

 8   Bankruptcy Court, while reserving whatever rights she may

 9   have to continue litigating her claims against non-debtor

10   parties in other courts of competent jurisdiction.

11           It occurs to me that one way to communicate all of

12   this to the plaintiff would be for counsel to obtain a

13   transcript of today's status conference, and for that

14   transcript to be delivered to the plaintiff for her

15   information.

16           MR. WIN:  Yes, Your Honor.  So, Zaw Win, again,

17   for the debtors -- or excuse me, for LBHI.

18           So, we'll submit a proposed scheduling order, and

19   then maybe once that order is entered, we can serve the

20   order and the transcript on the plaintiff, and we'll -- I'll

21   communicate with other counsel, but on all the addresses

22   that we have for the defendant.  And then we can follow up

23   with a call that she's received it.

24           THE COURT:  That sounds like a very reasonable way

25   to proceed.
```

Page 28

1              MR. WIN:  Thank you, Your Honor.

2              THE COURT:  Thank you.  We're adjourned.

3         (Whereupon this proceeding was concluded at 2:30 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 29

```
 1                         I N D E X

 2

 3                         RULINGS

 4                                          Page      Line

 5    Tenth Application of Hughes Hubbard &    9        10

 6    Reed LLP for Allowance of Interim

 7    Compensation for Services Rendered and

 8    Reimbursement of Actual and Necessary

 9    Expenses Incurred From November 1, 2011

10    Through February 29, 2012

11

12    Trustee's Motion Pursuant to Section 105(a)   12      3

13    of the Bankruptcy Code and Federal Rule of

14    Bankruptcy Procedure 9019 for Entry of an

15    Order Approving Settlement Agreement with

16    the Citi Parties

17

18

19

20

21

22

23

24

25
```

08-13555-mg   Doc 33537   Filed 12/14/12   Entered 01/02/13 11:59:46   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 30 of 30

Page 30

1                     C E R T I F I C A T I O N

2

3    I, Jamie Gallagher, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6

7

8

     Veritext

9

     200 Old Country Road

10

     Suite 580

11

     Mineola, NY 11501

12

13

14

     Date:  December 14, 2012

15

16

17

18

19

20

21

22

23

24

25