Hearing Date and Time:  January 30, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  January 23, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                 Debtors.                 :    (Jointly Administered)
                                          :
-------------------------------------------------------------------x
```

**NOTICE OF MOTION OF PLAN ADMINISTRATOR FOR ORDERS IN AID**
**OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11**
**PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended

Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),

for orders in aid of execution of the Plan (the "Motion"), will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court") on **January 30, 2013 at 10:00 a.m. (Prevailing Eastern**

**Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn:  Lori R. Fife, Esq. and Garrett A. Fail, Esq., attorneys for the LBHI and certain of its affiliates; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) all parties who have requested notice in these chapter 11 cases; and (v) all parties with a particularized interest in the Motion, so as to be so filed and received by no later than **January 23, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

US_ACTIVE:\44160754\16\58399.0011

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: January 7, 2013
    New York, New York

/s/ Garrett A. Fail
Lori R. Fife
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

US_ACTIVE:\44160754\16\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                             :
In re                                        :     Chapter 11 Case No.
                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,       :     08-13555 (JMP)
                                             :
                 Debtors.                    :     (Jointly Administered)
                                             :
-------------------------------------------------------------------x
```

**MOTION OF PLAN ADMINISTRATOR FOR ORDERS IN AID OF**
**EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11**
**PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] for the entities in the above referenced

chapter 11 cases (collectively, the "Chapter 11 Estates"), files this motion and respectfully

represents:

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms
in the Plan.

## Background

1.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      On December 6, 2011, the Court approved and entered an order confirming the Plan (the "Confirmation Order") (ECF No. 23023).  The Plan became effective on March 6, 2012 (the "Effective Date").

## Jurisdiction

3.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

4.      The relief requested by this motion results from the Plan Administrator's experience in implementing the Plan in the months subsequent to the Effective Date.  The motion seeks entry of two orders.  The first will reduce transaction and administrative costs and enhance the Plan Administrator's ability to maximize recoveries.  It will simply and concisely reference and restate certain aspects of relief previously granted in the Plan and Confirmation Order, i.e., that certain actions taken by or on behalf of a Debtor or a Debtor-Controlled Entity are deemed to be in furtherance of and in connection with the Plan and the Confirmation Order.  The intent of the proposed order is to eliminate the confusion and hesitation of potential purchasers and government officials that may not be fully familiar with the intricacies and nuances of the

2

complex and voluminous Plan, Confirmation Order and record of these Chapter 11 Cases in particular, or the chapter 11 process in general. The second order would provide the Plan Administrator with limited flexibility with respect to the scheduling of Distribution Dates and the timing of inter-affiliate Distributions. These changes are expected to reduce the administrative burden associated with the current fixed Distribution schedule. Copies of the proposed orders are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>.

## I.  The Facilitation Order

### A.  The Current Wind-down Provisions of the Plan and Confirmation Order

5.      One of the primary obligations of the Plan Administrator is the winding-down of the assets of the Chapter 11 Estates and the Debtor-Controlled Entities. Specifically, section 7.6 of the Plan provides that, "[a]fter the Effective Date, pursuant to the Plan, the Plan Administrator shall wind-down, sell and otherwise liquidate assets of the Debtors and/or Debtor Controlled Entities in accordance with Section 6.1(b)(iii) of the Plan." *See* Plan §7.6. Section 6.1(b)(iii) of the Plan, in turn, provides that the Plan Administrator "shall have the authority and right … to carry out and implement all provisions of the Plan, including without limitation to … exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandonment of the assets of the Debtors and/or the Debtor-Controlled Entities under the Plan…." *Id.* at §6.1(b)(iii).

6.      The Confirmation Order provided that the Plan was "approved and confirmed under section 1129 of the Bankruptcy Code," and that the terms of the Plan were "incorporated by reference into and are an integral part of … [the] Confirmation Order." Confirmation Order ¶ 1. It further authorized the Plan Administrator to "make any and all … transfers contemplated pursuant to, and as provided for, in the Plan." *Id.* ¶ 6.

US_ACTIVE:\44160754\16\58399.0011

7.      Paragraphs 68 through 70 of the Confirmation Order further provide:

68.   Exemption from Transfer Taxes.   Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition or acquisition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition or acquisition of assets contemplated by the Plan (including by a Liquidating Trust) in each case whether as a result of sale, assignment, foreclosure or deed-in lieu of foreclosure, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies.

69.   Governmental Approvals Not Required.   Except as otherwise expressly provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

70.   Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments and (b) all actions of the Plan Administrator and those acting on its behalf, that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, this Confirmation Order, and the agreements created or contemplated by the Plan, without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

*Id.* at ¶¶ 68-70.

8.      Pursuant to the Confirmation Order, the Court retained exclusive jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without limitation, those set forth in Article XIV of the Plan.  *Id.* at ¶ 77.  Section 14.1 of the Plan, in turn, provides for the retention by the Court of exclusive jurisdiction to, among other things, "issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the

4

Bankruptcy Code," and "enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce … the Plan, the Confirmation Order or any other order of the Bankruptcy Court."  Plan §14.1(e), (i).

**B.  The Facilitation Order Is In the Best Interests of the Chapter 11 Estates**

9.    The Plan Administrator has engaged in transactions with various third parties and continues to engage in discussions and negotiations with various third parties regarding the wind-down and potential sale of assets of the Chapter 11 Estates and the Debtor-Controlled Entities.  The wind-down may include sales or transfers directly to third parties and/or require intermediate transfers of assets (or the proceeds thereof) to and/or from affiliates of Chapter 11 Estates or Debtor-Controlled Entities in order to maximize Distributions to creditors.  Based on its experience to date, the Plan Administrator believes that it would benefit from an order clarifying that the disposition or other transfer of assets of or by the Debtors or Debtor-Controlled Entities are in connection with or in furtherance of the Plan and are therefore subject to the provisions of the Plan and Confirmation Order exempting such transactions from stamp, real estate transfer, mortgage recording or other similar taxes.  As one example, the Plan Administrator believes the relief requested will be beneficial in connection with the many actions taken and anticipated to occur in connection with the recently announced sale of the Chapter 11 Estates' interest in the assets held directly and indirectly by Archstone Enterprise LP ("Archstone"), which will involve numerous conveyances and other documents of transfer in multiple jurisdictions.  Each jurisdiction may require an explanation of the relevant provisions of the Plan and the Confirmation Order.  A concise order such as the one attached hereto as Exhibit A is likely to eliminate confusion and hesitation and expedite the consummation of transactions.

5

10.     The Court has broad authority, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, over the property administered under the Plan and to issue orders necessary to implement the provisions of the Plan and the Bankruptcy Code.  *See* 11 U.S.C. §1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the consummation of the plan"); 11 U.S.C. §105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain post-confirmation jurisdiction to the extent provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. §1142(b)… and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.'") (internal citations omitted).

11.     Accordingly, the Plan Administrator respectfully requests entry of an order, substantially in the form attached hereto as Exhibit A, providing that (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer of any asset of a Debtor or a Debtor-Controlled Entity and any merger agreements, agreements of restructuring, disposition or acquisition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition or acquisition of assets of a Debtor or a Debtor-Controlled Entity (including by a Liquidating Trust)

6

shall be deemed to be in furtherance of and in connection with the Plan and the Confirmation

Order in each case whether as a result of sale, assignment, foreclosure or deed-in lieu of

foreclosure.

## II.    Plan Distributions

12.    Section 8.3 of the Plan provides for any Distributions to be made

biannually on March 30 and September 30.  Pursuant to section 8.11 of the Plan, the Plan

Administrator does not recognize transfers of claims during the thirty (30) calendar day period

prior to each Distribution Date.  In accordance with section 1.48 of the Plan, the Plan

Administrator provides parties with thirty (30) Business Days' notice of a Distribution Date.

The Plan Administrator has, for the convenience of creditors, provided notice of the Record Date

in such notice.

### A.  Distribution Provisions

13.    The Distribution procedures have resulted in three unanticipated issues

which the Plan Administrator now seeks to address.

14.    The first issue relates to the establishment, by Section 8.3 of the Plan, of

March 30 and September 30 as fixed Distribution Dates.  The Plan Administrator has determined

that circumstances arise in which it may be beneficial to the Chapter 11 Estates for Distribution

Dates to be on dates prior to or after the specific dates fixed by the Plan.

15.    For example, in certain circumstances, it may be beneficial to accelerate

the Distribution Date by a number of days.  This may be particularly so when the Distribution

Date would fall on a weekend and the related Distributions would occur, pursuant to section

15.11 of the Plan, on the following Business Day in a new fiscal quarter. The Plan Administrator

has been advised that having billions of dollars in Cash deposited with depository institutions

US_ACTIVE:\44160754\16\58399.0011

that act for the Plan Administrator has material economic and regulatory consequences for such institutions.  The Plan Administrator believes that working with its depository institutions to alleviate such economic and regulatory consequences is in the best interests of the Chapter 11 Estates.  In other circumstances, it may be beneficial to creditors to delay the Distribution Date a number of days, for example, if the Plan Administrator expects that a significant amount of Cash would become available on or shortly after March 30 or September 30 – too late to be included in a Distribution on such date.

16.    The second issue relates to the interplay between Section 8.11 of the Plan, which established the Record Date as a date that is thirty (30) calendar days before a Distribution Date, and Bankruptcy Rule 3001(e)(2), which gives parties twenty-one (21) days following the filing of a transfer notice to object to the transfer of a claim.  The Plan Administrator has only nine (9) days following the expiration of the Rule 3001(e)(2) objection period to update the claims register and the relevant payment instructions for those claims transferred on or about the Record Date.  This short window presents challenges to the Plan Administrator and its distribution agent given the furious pace and tremendous volume of Claim transfers that occur in the days leading up to a Record Date and the unprecedented number of calculations that must be made and transactions that must be arranged in order to ensure accurate Distributions to holders of Allowed Claims.

17.    The third issue relates to the interconnected nature of Distributions on Affiliate Claims.  Distributions from one Chapter 11 Estate will, in many cases, inure to the benefit of another Chapter 11 Estate, either directly through Claims of one Debtor against another or indirectly through intermediary Claims by and against Debtor-Controlled Entities.  The Plan Administrator believes that it is in the best interests of all creditors to ensure that that

8

amounts received by a Chapter 11 Estate in respect of its intercompany Claims are available for

immediate Distribution.  However, given the complexity of intercompany relationships involved,

it is impractical to move funds among Chapter 11 Estates and Debtor-Controlled Entities and

have those funds available for Distributions to third party creditors, including Non-Controlled

Affiliates, on the same date.

**B.  The Proposed Order With Respect to Distribution
      Provisions Is In the Best Interests of the Chapter 11 Estates**

18.    In view of the issues described above, the Plan Administrator proposes

three related enhancements to the Distribution provisions.  The first would provide the Plan

Administrator discretion to schedule Distribution Dates on dates that are within five (5) Business

Days of March 30 or September 30, respectively.  The Plan Administrator expects that this minor

change will be sufficient to address the timing issues identified above.  The second enhancement

would increase the interval between the Record Date and the Distribution Date from thirty (30)

calendar days to forty (40) calendar days.  This will give the Plan Administrator and its

professionals sufficient time to adjust the Claims Register to reflect all of the timely filed claim

transfer notices following the expiration of the Bankruptcy Rule 3001(e)(2) objection period.

The third enhancement will make clear that the Plan Administrator can make Distributions on

account of Affiliate Claims in advance of a Distribution Date to allow the funds to be cycled

through the intercompany claims matrix and be immediately included, in whole or in part, in the

Distributions of the relevant Chapter 11 Estates.

19.    In order to ensure that holders of Allowed Claims are not prejudiced by

these changes, the Plan Administrator also proposes to increase related notice periods to provide

forty-seven (47) calendar days' notice of a Distribution Date and seven (7) days' notice of the

9

related Record Date.  This additional notice will provide holders of Allowed Claims ample time to make Distribution-related arrangements.

20.    The Plan Administrator expects that the changes to the Distribution provisions described above will benefit all holders of Allowed Claims and that these ministerial changes will not alter the substantive rights of any party.

21.    In addition to the permanent enhancements described above, the Plan Administrator also seeks authority to implement a one-time change for the third Distribution, which is currently scheduled for April 1, 2013,[2] to allow holders of Allowed Claims to benefit from the anticipated sale of the Chapter 11 Estates' interests in Archstone, the Chapter 11 Estates' single largest asset.  As previously disclosed, LBHI and certain of its affiliates, including LCPI, expect to receive more than $2.5 billion in Cash upon closing of the transaction, which is scheduled to occur no later than March 2013.  While the closing is scheduled to occur prior to the third Distribution Date, the Plan Administrator expects that it will take some time for the relevant Chapter 11 Estates to receive the Cash, make appropriate calculations and fund distribution accounts and, accordingly, the Plan Administrator may not be ready to include the Cash in the third Distribution as currently scheduled.  Rather than retaining this sum until the fourth Distribution, the Plan Administrator seeks authority, if necessary, to delay the third Distribution for a period of not more than thirty (30) days so that these proceeds can be distributed as soon as practicable after they flow into the Chapter 11 Estates.  As it would for other Distribution Dates, the Plan Administrator will provide advance notice of the proposed date of the third Distribution and the respective Record Date; the Plan Administrator may adjourn the

---

[2] Pursuant to Section 15.11 of the Plan, transactions occurring on a non-Business Day are automatically rescheduled for the next succeeding Business Day.  Accordingly, the third Distribution Date, which would otherwise occur on Saturday, March 30, 2013, would occur on April 1, 2013.

10

date of the third Distribution without changing the Record Date by filing a notice on the docket

of the Chapter 11 Cases. The Plan Administrator believes that the benefits that will accrue to

holders of Allowed Claims by the potential delay in the third Distribution, if it enables the

distribution of this portion of the proceeds of the Chapter 11 Estates' interest in Archstone,

outweigh any inconvenience occasioned by the potential postponement.

22.     As discussed above, both the Plan and the Confirmation Order provided

for the Court's retention of jurisdiction over all matters arising under or related to, the Chapter

11 Cases. Additionally, Section 14.1(f) of the Plan expressly provides that the Bankruptcy Court

shall retain exclusive jurisdiction to, among other things, "consider any modifications of the

Plan." Plan §14.1(f). The enhancements to the Distribution provisions described above fall

squarely within the jurisdiction retained by the Court in the Plan and the Confirmation Order.

They do not materially alter the substantive rights of any party but are, instead, merely intended

to improve the administration of the Chapter 11 Cases.

23.     While section 1127(b) of the Bankruptcy Code governs modifications to a

confirmed plan, *see, e.g. Indu Craft, Inc. v. Bank of Baroda (In re Indu Craft Inc.)*, 2012 WL

3070387 *9 (S.D.N.Y. 2012), the changes proposed by the Plan Administrator do not rise to the

level of "modifications," as that term is used in Section 1127(b) of the Bankruptcy Code.

24.     Courts in this jurisdiction have recognized that not all changes to a

confirmed and consummated plan rise to the level of a Section 1127(b) modification. "The term

'modification' is not defined in the Bankruptcy Code and courts determine what constitutes a

'modification' on a case-by case basis." *In re Boylan International, Ltd.*, 452 B.R. 43, 47

(Bankr. S.D.N.Y. 2011). In this District, courts have "found that a 'modification' occurred when

there was an alteration of 'the legal relationships among the debtor and its creditors and other

11

parties in interest' or when the change to the plan affected the legal relationship among them."

*Id.* (quoting *Doral Ctr., Inc. v. Ionoshpere Clubs, Inc. (In re Ionoshpere Clubs, Inc.)*, 208 B.R.

812, 816 (S.D.N.Y.) (finding that section 1127(b) barred the further modification of a lease

provision which had been amended by the confirmation order); *see also*, *In re Joint Eastern &

Southern Asbestos Litig.*, 982 F.2d 721, 747-48 (2d Cir. 1992) (finding that the alteration of a

trust established under a reorganization plan, which resulted in the creation of two classes of

asbestos-related tort claimants with different rights to payment, constituted an impermissible

modification to a confirmed and substantially consummated plan).

      25.      Unlike the plan modifications that were at issue in *Ionoshpere Clubs* and

*Joint Eastern & Southern Asbestos Litig.*, the changes to the Distribution provisions requested

herein are ministerial and resemble the plan alternations that were approved in *State Gov't.

Creditors' Comm. for Prop. Damage Claims v. McKay (In re Johns-Manville Corp.)*, 920 F.2d

121 (2d Cir. 1990).  In *Johns-Manville*, the Second Circuit affirmed the alteration of a confirmed

plan to allow the temporary suspension of a claims resolution facility to prevent the needless

accumulation of administrative expenses where the trust was not expected to have sufficient

assets to make distributions for many years.  *Id.* at 122.  The Second Circuit agreed with the

lower courts that the proposed change to the plan was merely a "lowering of the voltage in the

processing of claims" and not a Section 1127(b) modification.  *Id* at 128.

      26.      As in *Johns-Manville*, the enhancements to the Distribution provisions

requested herein do not alter the legal relationship between the Chapter 11 Estates and their

creditors, nor do they affect any creditor's right to payment.  Instead, they merely result in

certain procedural changes to the Distribution procedures which are expected to make the

process more efficient and cost-effective and, in the case of the potential Archstone-related

12

delay, significantly enhance the magnitude of the amounts available for Distribution to holders of

Allowed Claims.  The Plan Administrator is not proposing to "modify" the Plan (as that term is

used in Section 1127(b)).  The Court has the authority, pursuant to Section 105(a) of the

Bankruptcy Code and Section 14.1(f) of the Plan, to order the implementation of the requested

enhancements to the Distribution provisions.

## Conclusion

27.     For the reasons set forth above, to ensure implementation of the Plan in a

manner that maximizes returns to holders of Allowed Claims and minimizes administrative

expenses, the Plan Administrator requests that the Court enter orders in the form attached hereto

as Exhibit A and Exhibit B.

## Notice

28.     No trustee has been appointed in the Chapter 11 Cases.  The Plan

Administrator, in accordance with the procedures set forth in the second amended order entered

on June 17, 2010 governing case management and administrative procedures for these cases

(ECF No. 9635), has served notice of this motion on (i) the U.S. Trustee; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

Southern District of New York; and (v) all parties who have requested notice in these chapter 11

cases.  The Plan Administrator submits that no other or further notice need be provided.

29.     Other than in connection with the Confirmation Order, no previous request

for the relief sought herein has been made by the Plan Administrator to this or any other court.

US_ACTIVE:\44160754\16\58399.0011

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  January 7, 2013
       New York, New York

/s/ Garrett A. Fail
Lori R. Fife
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

14

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                          :
In re                                     :      **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :      **08-13555 (JMP)**
                                          :
                   **Debtors.**           :      **(Jointly Administered)**
                                          :
---------------------------------------------------------------------x

**ORDER IN AID OF EXECUTION OF**
**THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF**
**LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

WHEREAS by order, dated March 6, 2012 (ECF No. 23023) (the "Confirmation Order"), this Court approved and confirmed the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] for the entities in the above referenced chapter 11 cases (the "Debtors"); and

WHEREAS on March 6, 2012, the Debtors filed a notice of the occurrence of the Effective Date of the Plan (ECF No.26039) with the Court; and

WHEREAS section 6.1 of the Plan provides that Lehman Brothers Holdings Inc. shall serve as Plan Administrator for each of the Debtors; and

WHEREAS section 1.41 of the Plan provides that "Debtor-Controlled Entity means a non-Debtor Affiliate of the Debtors that is managed and controlled by a Debtor as of the Effective Date"; and

WHEREAS the Confirmation Order provides that any term used, but not defined, in the Plan or the Confirmation Order shall have the meaning ascribed to such term in the Bankruptcy Code, and section 101(16) of the Bankruptcy Code defines an equity security as a(n)

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

"(A) share in a corporation, whether or not transferable or denominated 'stock', or similar

security; (B) interest of a limited partner in a limited partnership; or (C) warrant or right, other

than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind

specified in subparagraph (A) or (B) of this paragraph;" and

WHEREAS section 7.6 of the Plan provides that, "[a]fter the Effective Date,

pursuant to the Plan, the Plan Administrator shall wind-down, sell and otherwise liquidate assets

of the Debtors and/or Debtor-Controlled Entities in accordance with Section 6.1(b)(iii) of the

Plan"; and

WHEREAS section 6.1(b)(iii) of the Plan, in turn, provides that the Plan

Administrator "shall have the authority and right … to carry out and implement all provisions of

the Plan, including without limitation to … exercise its reasonable business judgment to direct

and control the wind down, liquidation, sale and/or abandonment of the assets of the Debtors

and/or the Debtor-Controlled Entities under the Plan…."; and

WHEREAS, pursuant to the Confirmation Order, the Court retained exclusive

jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without

limitation, to "enter and implement other orders, and take such other actions as may be necessary

or appropriate to enforce … the Plan, the Confirmation Order or any other order of the

Bankruptcy Court"; and

WHEREAS, paragraph 68 of the Confirmation Order provides:

Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy
Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the
creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c)
the making or assignment of or surrender of any lease or sublease, or (d) the
making of or delivery of any deed or other instrument of transfer under, in
furtherance of, or in connection with the Plan, and any merger agreements,
agreements of restructuring, disposition or acquisition, liquidation or dissolution,
any deeds, bills of sale, transfers of tangible property, or assignments executed in

3

connection with any disposition or acquisition of assets contemplated by the Plan (including by a Liquidating Trust) in each case whether as a result of sale, assignment, foreclosure or deed-in lieu of foreclosure, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies.

WHEREAS, paragraphs 69 and 70 of the Confirmation Order provide:

<u>Governmental Approvals Not Required</u>.  Except as otherwise expressly provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments and (b) all actions of the Plan Administrator and those acting on its behalf, that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, this Confirmation Order, and the agreements created or contemplated by the Plan, without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

WHEREAS, on January 7, 2013, the Plan Administrator filed a motion for an order in aid of execution of the Plan (ECF No. __) (the "<u>Motion</u>"), and provided due and proper notice thereof; and

WHEREAS the Court has found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

4

AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING

THEREFOR, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted.

2.      (a) The issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer of any asset of or by a Debtor or a Debtor-Controlled Entity and any merger agreements, agreements of restructuring, disposition or acquisition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition or acquisition of assets of or by a Debtor or a Debtor-Controlled Entity (including by a Liquidating Trust) shall be deemed to be in furtherance of and in connection with the Plan and the Confirmation Order in each case whether as a result of sale, assignment, foreclosure or deed-in lieu of foreclosure.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2013
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

5

**<u>Exhibit B</u>**

**Proposed Order**

US_ACTIVE:\44160754\16\58399.0011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :        08-13555 (JMP)
                                        :
                    Debtors.            :        (Jointly Administered)
                                        :
--------------------------------------------------------------------x

### ORDER IN AID OF EXECUTION OF
### THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF
### LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

WHEREAS by order, dated March 6, 2012 (ECF No. 23023) (the "Confirmation Order"), this Court approved and confirmed the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] for the entities in the above referenced chapter 11 cases (the "Debtors"); and

WHEREAS on March 6, 2012, the Debtors filed a notice of the occurrence of the Effective Date of the Plan (ECF No.26039) with the Court; and

WHEREAS, pursuant to the Confirmation Order, the Court retained exclusive jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without limitation, to "enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce … the Plan, the Confirmation Order or any other order of the Bankruptcy Court"; and

WHEREAS, on January 7, 2013, the Plan Administrator filed a motion for an order in aid of execution of the Plan (ECF No. __) (the "Motion"), and provided due and proper notice thereof; and

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

WHEREAS the Court has found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:

1.  The Motion is granted.

2.  Notwithstanding anything contained in Section 1.48 of the Plan, the Plan Administrator shall file on the docket of the Chapter 11 Cases a written notice of Distribution Date at least forty-seven (47) calendar days prior to such Distribution Date.

3.  Notwithstanding anything contained in Section 8.3 of the Plan, (A) the Plan Administrator shall schedule the third Distribution Date on a Business Day that falls between March 25, 2013 and April 30, 2013 and provide holders of Allowed Claims with notice of same as provided for in paragraph 2 herein; provided, however, that the Plan Administrator may adjourn the third Distribution without changing the related Record Date by filing a notice on the docket of the Chapter 11 Cases so long as the adjourned date is on or before April 30, 2013; and (B) following the third Distribution, the Plan Administrator shall schedule Distribution Dates semi-annually within five (5) Business Days of March 30 and within five (5) Business Days of September 30 of each year and provide holders of Allowed Claims with notice of same as provided for in paragraph 2 herein.

4.  Notwithstanding anything contained in Section 8.11 of the Plan, the Plan Administrator shall not be required to recognize any Claim transfer occurring during the period commencing forty (40) calendar days prior to a Distribution Date and any such Claim transfers shall, for Distribution purposes only, be deemed to have occurred immediately after such Distribution Date.

5.  The Plan Administrator shall be authorized to make Distributions on account of Affiliate Claims in advance of a Distribution Date to facilitate Distributions in accordance with the Plan.

US_ACTIVE:\44160754\16\58399.0011

6.       This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2013
           New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE