# EXHIBIT A

# PROOF OF CLAIM

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| LEHMAN BROTHERS HOLDINGS, INC. | 08-13555 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 555162500

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2_DBF.SCHED_NO) SCHEDULE #: 555162500*****
JOHN, ADAIR
OAKWOOD PREMIER TOKYO MIDTOWN #508
9-7-4 AKASAKA
13
MINATO-KU 107-0052
JAPAN

and Patrick Collins
Farrell Fritz, P.C.
1320 RXR Plaza
Uniondale, NY 11556

Telephone number: (516) 227-0700    Email Address: pcollins@farrellfritz.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

NOTICE OF SCHEDULED CLAIM:
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

Name and address where payment should be sent (if different from above)

Telephone number:   Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ **3,300,000.00**
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☒ Check this box if all or part of your claim is based on a Guarantee.* **See Rider**
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. Basis for Claim: **bonus due under Employment Agreement.**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:
$_____

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000023716

[barcode]

...has been credited for the purpose of making this proof of claim. ...ents that support the claim, such as promissory notes, purchase ...its, contracts, judgments, mortgages and security agreements. ...ce of perfection of a security interest. (See definition of "redacted" ...ch a summary.
ACHED DOCUMENTS MAY BE DESTROYED AFTER

**Documents Attached**

FOR COURT USE ONLY

**FILED / RECEIVED**
SEP 2 1 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 9/14/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature]   John J. Adair

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case No. 08-13555

# EXPLANATION OF BASIS OF CLAIM OF JOHN J. ADAIR
# AGAINST LEHMAN BROTHERS HOLDINGS, INC.

John J. Adair ("Claimant") was employed by Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries beginning in 2007, holding the title of Head of Pan Asian Liquid Markets in the Equities Division of the companies.

Claimant and Lehman Brothers entered into a number of letter agreements setting forth the terms of his assignments to divisions of the companies based in Asia as well as the terms of Claimant's compensation. Copies of those letter agreements are annexed to this Proof of Claim.

In a letter agreement, dated December 15, 2006 and revised February 14, 2007 (copy enclosed), between Lehman Brothers and Claimant, Lehman Brothers promised to pay Claimant, among other things, a bonus for 2008 (the "2008 Bonus") as follows:

> A minimum bonus in the amount of USD $3,300,000, less applicable deductions, payable at the time the Firm pays its annual bonus distribution (on or about January 31, 2009).

Claimant's employment with Lehman Brothers was terminated on September 30, 2009. Claimant had previously been informed by Lehman Brothers management that his position at Lehman Brothers would be eliminated and that the division of the companies in which he worked would be sold to Nomura Holdings Inc. At Lehman Brothers' request and to enable Lehman Brothers' transaction with Nomura, Claimant signed a letter (the "Resignation Letter"), dated September 30, 2008, prepared by Lehman Brothers resigning from his position with Lehman Brothers. A copy of the Resignation Letter is enclosed. Claimant accepted a position with Nomura Securities Co., Ltd., effective October 1, 2008.

Notwithstanding Claimants' satisfaction of all obligations imposed upon him under his agreements with Lehman Brothers, Claimant was not paid the 2008 Bonus, which remains due and owing.

Because of the complicated corporate structure of the Debtors and other Lehman Brothers entities, Claimant cannot determine with certainty which of the Debtors and other Lehman Brothers entities may be indebted to Claimant for the 2008 Bonus. In submitting this proof of claim against LBHI, Claimant is relying upon information filed by the Debtors in these cases with respect to such corporate structure. Claimant reserves his right to assert his claims for payment of the 2008 Bonus against Lehman Brothers entities that are not Debtors.

Rider to Proof of Claim of John J. Adair Case No. 08-13555
Page 2

Claimant asserts that LBHI is directly liable as one of Claimant's employers for payment of the 2008 Bonus. However, in the event it is determined that LBHI is not directly liable, Claimant asserts that LHBI is liable to Claimant as a guarantor of the Lehman Brothers entity(ies) that are directly liable for payment of the 2008 Bonus.

Claimant reserves the right to amend this proof of claim.

# LEHMAN BROTHERS

JAINE L MEHRING
MANAGING DIRECTOR

December 15, 2006
*Revised February 14, 2007*

John J. Adair
*(By Hand)*

Dear John:

Congratulations on receiving your offer to join Lehman Brothers Inc. (the "Firm") as the Head of Pan Asian Liquid Markets in the Equities Division, reporting initially to Christopher Wendel. You will be hired by Lehman Brothers Inc. in New York and seconded to Lehman Brothers Japan, in Tokyo. While on assignment in Tokyo, you will be employed by Lehman Brothers Global Services Ltd. and seconded via Lehman Brothers Pacific Services Company Ltd. to Lehman Brothers Japan Inc. in Tokyo. Your corporate title of Managing Director will be submitted for official approval by the Board of Directors as part of the next quarterly approval process. We expect your employment to commence as soon as your notice obligations to your current employer permit.

For the performance year 2007 (your start date through November 30, 2007), your compensation will be as follows:

- Monthly base salary of USD $16,666, which is the equivalent of USD $200,000 per year.

- A minimum bonus in the amount of USD $3,300,000, less applicable deductions, payable at the time the Firm pays its annual 2007 bonus distribution (on or about January 31, 2008).

- A minimum bonus in the amount of USD $3,300,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (on or about January 31, 2009).

The foregoing salary will be paid for all periods of your active employment with the Firm in performance years 2007 and 2008. The bonus amount set forth above will be paid at the time and in the amount stated except that it will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm because of misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amount set forth above may be reduced in the event of an approved leave of absence during the applicable performance year.

At the Firm's discretion, a portion of your 2007, 2008 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based

John J. Adair
February 14, 2007
Page 2

awards) pursuant to the Firm's Equity Award Program as then generally in effect for employees with your position and corporate title. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, will be established by the Firm from time to time in its discretion. Based on information that you have provided during the recruitment process, you may be eligible for a service credit for purposes of "Full Career" treatment under the applicable terms of equity awards you may receive during your employment with the Firm, provided you remain employed with the Firm through the third anniversary of your start date. Please complete the attached Prior Service Certification and return with your offer letter and you will receive a communication from the Human Resources Division confirming your eligibility and amount of prior service for which you are eligible.

You have advised us that you will forfeit certain Goldman Sachs options and restricted stock as a result of your separation from Goldman Sachs and subsequent employment by our Firm (the "Forfeited Awards"). Provided you comply with the documentation obligation set forth below, Lehman Brothers Holdings Inc. ("LBHI") will grant you an award of Special Restricted Stock Units ("Special RSUs"), with a market value at the time of the award equivalent to the value of the Forfeited Awards. The valuation of the Forfeited Awards will be at LBHI's reasonable discretion. LBHI will make reasonable efforts to establish schedules for vesting and/or sales restrictions of your Special RSUs upon continued employment which are consistent with the Forfeited Awards. It is your obligation to provide LBHI with documentation reasonably deemed necessary by LBHI to verify and evaluate the Forfeited Awards and to structure the Special RSU award. LBHI's Special RSU award will made as of your first day of employment with the Firm and will be based on the closing price of LBHI common stock on the New York Stock Exchange on that day. In the event you separate from the Firm's employment for any reason, you will forfeit any Special RSUs that are not vested at the time of separation. Except as provided under this paragraph with respect to (x) pricing of the special RSUs, (y) schedules for vesting and/or sales restrictions of your Special RSUs upon continued employment and (z) forfeiture of your unvested Special RSUs upon separation from the Firm's employment for any reason, the terms of LBHI's Equity Award Program (as set forth in the award agreement for employees having your corporate title under LBHI's 2005 Equity Award Program) will govern your award of Special RSUs.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. Your compensation for all periods after performance years 2007 and 2008 will be determined at the Firm's discretion.

You will also be eligible to participate in the Firm's standard employee benefits program, which will be discussed with you shortly after you commence employment.

While the foregoing compensation commitments will be honored on the terms outlined above, this letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason, subject to any applicable notice requirement. Currently, the Firm's notice policy requires officers of the Firm to provide 30 days' advance written notice of resignation, and provides for

John J. Adair
February 14, 2007
Page 3

30 days' advance notice by the Firm to its officers in the event of an involuntary termination under certain circumstances. In making this offer of employment, the Firm has relied on your representations (a) that you are not currently party to any agreement or dispute or litigation that might impede your ability to accept this offer or perform the duties of this position and (b) that you are not subject to any non-competition arrangement or other restrictive covenants that might affect your employment by the Firm as contemplated by this letter.

In addition, your assignment is contingent on your qualifying for and obtaining a Japanese work permit. All other terms and conditions of your assignment will be covered under Lehman Brothers' Expatriate Policy, which will be outlined in a separate assignment letter. The complete policy and all benefits related to it will be reviewed with you by our International Human Resources Department shortly.

Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that this offer of employment is conditional upon satisfactorily meeting all pre-employment requirements. This also means that you must have and maintain in good standing all applicable licenses and registrations.

This offer of employment is valid up to and including February 23, 2007. Should you decide not to countersign this letter by the above date, the current offer being made to you will expire. If you agree to these terms, please sign the duplicate copy of this letter, specify your possible starting date and return it to the attention of Bernice Smith of the Human Resources Department in Tokyo.

John, we are enthusiastic and pleased that you are going to be a part of our organization. Please confirm your agreement to the above by signing a copy of this letter in the space provided below, and returning it to me. An additional copy of this letter is enclosed for your files. Please contact me at (212) 526-5268 if you have any additional questions or concerns.

Sincerely,

Jaine I. Mehring
Managing Director
Global Head of Equities Human Resources
Equities Division


Agreed to and accepted:

_____          FEB 21, 2007
John J. Adair                           Date

APRIL 9, 2007
_____
Possible Starting Date

HK ASSIGNMENT

# LEHMAN BROTHERS

March 27, 2007

John Adair
*Delivered by Hand*

Dear John:

This letter and its enclosures outline the terms of your international assignment in Hong Kong. Details of the terms of your assignment may be found on the "Package Details" attachment and in the Foreign Assignment Handbook, both of which are enclosed for your reference. All terms relating to your assignment are strictly confidential and should be discussed only with your management, Lehman Brothers Human Resources and immediate family members.

### Secondment
Lehman Brothers Holdings Inc., your US employer, is assigning you to Lehman Brothers Global Services, Ltd. for international service. During this period, you will be employed by Lehman Brothers Global Services Ltd. and you will be seconded to Lehman Brothers Asia Ltd. Your employment while on this assignment will be subject to New York State law. This assignment will not alter the existing terms and conditions of your employment with Lehman Brothers Holdings Inc., subject to the Lehman employment policies and procedures.

### Assignment Term
Your assignment will commence on a date to be advised – but no earlier than the date on which you receive authorization from the immigration authorities to work in Hong Kong. It is presently anticipated that your initial assignment will be for a four-year period, but the length of this assignment is subject to change at any time.

Should you remain on assignment through the end of four years, your expatriate status will be reviewed at that time. An Expatriate Transition Program (ETP) is presently in place for secondees remaining in Hong Kong for longer than four years. The program provides for a period of up to three years of expatriate-style benefits and allowances at a gradually reducing level.

### Compensation
Your base salary and any bonuses will be paid to you in US dollars and administered via a New York payroll. Salary payments will be made monthly. You will also remain a participant in the Firm's Stock Award Program while on assignment. Under this program, a portion of your total compensation will be delivered in the form of Contingent Stock Awards (CSA's). CSA's are awarded to the Firm's employees working outside the US and are designed to parallel many key aspects of Restricted Stock Units for US employees. It is important that you clearly understand the terms of these awards as outlined in the CSA letter and brochure that you receive for any award made under this program.

### Expatriate Benefits/Allowances
You will receive expatriate benefits/allowances as outlined in the Foreign Assignment Handbook and specified on the "Package Details" attachment.

# LEHMAN BROTHERS

John Adair
March 27, 2007
Page 2

**Employee Benefits**

During your initial assignment, you will generally remain eligible to participate in any of the US benefit plans in which you are currently participating. Please note that for tax or other reasons certain restrictions may apply. For example, all contributions to the Tax-Deferred Savings Plan must be made from your monthly base salary. Other restrictions are explained in the Foreign Assignment Handbook. Any changes to the enrollment periods or to the US benefit plans will be announced and made available to you while you are in Hong Kong.

**Offsets Against Compensation**

The Firm reserves the right to withhold any amounts payable to you as compensation or otherwise and apply such withheld amounts to satisfy any indebtedness to the Firm to the maximum extent permitted by law. If any debt exists at the time of your termination of employment from the Firm, the Firm will have the right, to the maximum extent permitted by law, to recover such amount by offset against any amount otherwise awarded, credited or owing to you, including but not limited to amounts awarded to you under the Firm's Stock Award Program. By your signature below, you hereby authorize and consent to the aforementioned deductions.

* * * *

The Firm reserves the right to make changes to the terms set forth in this letter and its enclosures, to its Foreign Assignment Handbook, and to its general international assignment policies and practices at any time. Neither this letter nor its enclosures is a contract of employment and does not give you any right to continued employment. Either you or the Firm may terminate your employment at any time.

If you have any questions regarding any of the material outlined, please contact me on (212) 320-7058, heather.rychener@lehman.com.

Sincerely,

*Heather Rychener*

Heather Rychener
Vice President
International Human Resources


I acknowledge receipt of the enclosed Foreign Assignment Handbook and understand the terms and conditions relating to my initial international assignment to Hong Kong, which are explained in this letter and the Handbook. I am aware that all of these terms and conditions are subject to change.

_____          _____
John Adair                                                                Date

1301 AVENUE OF THE AMERICAS, 6TH FLOOR,
NEW YORK, NY 10019

## FOREIGN ASSIGNMENT PACKAGE

### EXECUTIVE ASSIGNMENT PACKAGE (EAP)

Our figures are based on the following assignment details, as of March 27, 2007:

| John Adair | $200,000 | Two |
|---|---|---|
| Name | Salary | Family Size |

| Hong Kong | April 15, 2007 |
|---|---|
| Host Location | Expected Date of Assignment |

### FOREIGN ASSIGNMENT

Prevailing FX Rate[1]: HKD/USD 7.80

CHOICE$ Allowance *
*(cash allowance paid to you)* — $17,104 per month

Dilapidations Accrual
*(Firm's limit on dilapidation charges it will pay on your behalf)*
*(per assignment period or pro-rata portion based on length of tenancy)* — $3,700 per assignment

* Not subject to hypothetical tax withholding. To be reviewed on June 1, 2007.

### TAXATION

Estimated Hypothetical Tax Withholding
*(deduction from you)* — $5,500 per month

---

As discussed in the Handbook, the above figures will change during your assignment based on:

- significant exchange rates fluctuations (reviewed quarterly). Next update: June 1, 2007
- changes in your family size, marital status and home ownership status (reviewed annually)
- changes in your salary and compensation level (reviewed annually)
- changes in relative prices (reviewed annually)
- updates or amendments to the Firm's foreign assignment policies
- changes in tax law
- significant periods of time that you or your accompanying family members spend away from your host location.

The figures may increase or decrease over the course of your assignment.

1301 AVENUE OF THE AMERICAS, 6TH FLOOR.
NEW YORK, NY 10019

TK ASSIGNMENT

# LEHMAN BROTHERS

October 17, 2007

John J. Adair
*Delivered by Hand*

Dear John:

This letter and its enclosures outline the terms of your international assignment in Tokyo. Details of the terms of your assignment may be found on the "Package Details" attachment and in the Foreign Assignment Handbook, both of which are enclosed for your reference. All terms relating to your assignment are strictly confidential and should be discussed only with your management, Lehman Brothers Human Resources and immediate family members.

### Secondment
Lehman Brothers Inc., your US employer, is assigning you to Lehman Brothers Global Services Ltd. for international service. During this period, you will be employed by Lehman Brothers Global Services Ltd. (LBGSL) and seconded via BPSL to Lehman Brothers Securities Asia Limited, a kabushiki kaisha incorporated under the laws of Japan (the "Firm"). Your employment while on this assignment will be subject to New York State law (without reference to the principle of conflicts of laws). This assignment will not alter the existing terms and conditions of your employment with Lehman Brothers Inc., subject to the Lehman employment policies and procedures.

### Assignment Term
Your assignment will commence on a date to be advised – but no earlier than the date on which you receive authorization from the immigration authorities to work in Tokyo. It is presently anticipated that your initial assignment will be for a two-year period, but the length of this assignment is subject to change at any time.

Should you remain on assignment through the end of four years, your expatriate status will be reviewed at that time. An Expatriate Transition Program (ETP) is presently in place for secondees remaining in Tokyo for longer than four years. The program provides for a period of up to three years of expatriate-style benefits and allowances at a gradually reducing level.

### Compensation
Your base salary and any incentive compensation amounts will be paid to you in US dollars and administered via a New York payroll. Salary payments will be made monthly. You will remain a participant in the Firm's Equity Award Program while on assignment. Under this program, a portion of your total compensation (combined salary, bonus, and other eligible payments) will be payable in cash and delivered in the form of conditional equity-based awards (Conditional Equity Awards ("CEAs"), stock options, and/or other equity-based awards) pursuant to the Firm's employee Equity Award Program as then in effect for employees in your location.

John J. Adair
October 17, 2007
Page 2

### Expatriate Benefits/Allowances
You will receive expatriate benefits/allowances as outlined in the Foreign Assignment Handbook and specified on the "Package Details" attachment.

### Employee Benefits
During your initial assignment, you will generally remain eligible to participate in any of the US benefit plans in which you are currently participating. Please note that for tax or other reasons certain restrictions may apply. For example, all contributions to the Employee Stock Purchase Plan and the Tax-Deferred Savings Plan must be made from your monthly base salary. Other restrictions are explained in the Foreign Assignment Handbook. Any changes to the enrollment periods or to the US benefit plans will be announced and made available to you while you are in Tokyo.

### Offsets Against Compensation
The Firm reserves the right to withhold any amounts payable to you as compensation or otherwise and apply such withheld amounts to satisfy any indebtedness to the Firm to the maximum extent permitted by law. If any debt exists at the time of your termination of employment from the Firm, the Firm will have the right, to the maximum extent permitted by law, to recover such amount by offset against any amount otherwise awarded, credited or owing to you, including but not limited to amounts awarded to you under the Firm's Stock Award Program. By your signature below, you hereby authorize and consent to the aforementioned deductions.

* * * *

The Firm reserves the right to make changes to the terms set forth in this letter and its enclosures, to its Foreign Assignment Handbook, and to its general international assignment policies and practices at any time. Neither this letter nor its enclosures is a contract of employment and does not give you any right to continued employment. Either you or the Firm may terminate your employment at any time.

John J. Adair
October 17, 2007
Page 3

If you have any questions regarding any of the material outlined, please contact Heather Rychener at (212) 320-7058.

Please return the letter in the attached envelope to:

Heather Rychener
Vice President
Lehman Brothers
International Human Resources
1301 Sixth Avenue, 6th Floor
New York, NY 10019

Sincerely,

*Heather Rychener*

Heather Rychener
Vice President
Manager, International Human Resources

I acknowledge receipt of the enclosed Foreign Assignment Handbook and understand the terms and conditions relating to my initial international assignment to Tokyo, which are explained in this letter and the Handbook. I am aware that all of these terms and conditions are subject to change.

_____        _____
Mr. John J. Adair                                                  Date

## FOREIGN ASSIGNMENT PACKAGE

### EXECUTIVE ASSIGNMENT PACKAGE (EAP)

Our figures are based on the following assignment details, as of October 17, 2007:

| John J. Adair | $200,000 | Two |
|---|---|---|
| **Name** | **Salary** | **Family Size** |

| Tokyo | January, 2008 |
|---|---|
| **Host Location** | **Expected Date of Assignment** |

**FOREIGN ASSIGNMENT**                     Prevailing FX Rate[†]: ¥120.94/$

CHOICE$ Allowance *
(cash allowance paid to you)                    $13,311        per month

Dilapidations Accrual                            $3,700        per assignment
(Firm's limit on dilapidation charges it will pay on your behalf)
(per assignment period or pro-rata portion based on length of tenancy)

\* Not subject to hypothetical tax withholding. To be reviewed March 1, 2007.

### TAXATION

Estimated Hypothetical Tax Withholding           $5,500        per month
(deduction from you)

[†]As discussed in the Handbook, the above figures will change during your assignment based on:

- significant exchange rates fluctuations (reviewed quarterly). Next review: December 1, 2007
- changes in your family size, marital status and home ownership status (reviewed annually)
- changes in your salary and compensation level (reviewed annually)
- changes in relative prices, or housing markets between the Tokyo area and the New York area (reviewed annually)
- updates or amendments to the Firm's foreign-assignment policies
- changes in tax law
- significant periods of time that you or your accompanying family members spend away from your host location.

The figures may increase or decrease over the course of your assignment.

# LEHMAN BROTHERS

Board of Directors
Lehman Brothers Inc.
745 Seventh Avenue, New York, NY 10019 USA

30 September 2008

Dear Sirs

**CONDITIONAL RESIGNATION OF EMPLOYMENT**

I hereby resign my employment from my current Lehman Brothers employer ("**Lehman Brothers**"), which is an entity within the Lehman Brothers International Group, with effect from:

(a)   the completion of the **Japan Transaction**; or

(b)   if the date of completion of the **Japan Transaction** is later than 30 September 2008, 30 September 2008,

("**Cessation Date**").

In consideration of Nomura making an offer of employment to me and subject to completion of the **Japan Transaction**, I agree and acknowledge that by signing this letter:

(a)   my employment with Lehman Brothers will cease on the Cessation Date;

(b)   the letter constitutes notice of resignation of my employment with Lehman Brothers and I waive any right to receive notice of termination of my employment under my contract of employment with Lehman Brothers or any payment in lieu of such notice;

(c)   any accrued benefits that I may have with Lehman Brothers will be recognised by Nomura except where Lehman Brothers pays out my accrued benefits upon termination of employment. For the avoidance of doubt, accrued benefits do not refer to wages, bonuses or equity awards;

(e)   I hereby unconditionally and irrevocably release and discharge Nomura and any Affiliate from all and any Claims;

(f)   I undertake not to make, take, institute, pursue, procure, assist in or become a party to any claim, suit or action in any jurisdiction that might give rise to any Claim by anyone against Nomura or any Affiliate or their respective officers or employees;

(h)   I hereby authorise Lehman Brothers (or its affiliates or provisional liquidators, liquidators or administrators on its behalf) to provide and transfer to Nomura or its agent, contractor or third party service provider including, where applicable, overseas transfers a duplicate set of all my personnel records and other personal information held by Lehman Brothers;

(i)   Notwithstanding the change of my employer, Nomura may consider my previous conduct and performance with Lehman Brothers for the purposes of any performance or conduct related issues in my employment with Nomura; and

(j) If any provision (or part of a provision) of this letter shall be found to be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions (or parts thereof) of this letter which shall remain in full force and effect.

For the purposes of this letter:

"Affiliate" shall mean any person or entity controlling, controlled by or under common control with Nomura.

"Japan Transaction" means the Transaction in respect of Japan.

"Claim" means all claims or potential claims of whatever kind (including in respect of interests and costs), present or future, whether or not presently known or contemplated, and even if the availability of the claims arises from or is affected by any change in the law or other change of circumstance of any sort, which I may have against Nomura or any Affiliate or their respective officers or employees in relation to my employment with Lehman Brothers, its termination or the transfer of my employment to Nomura, whether under common law, contract, statute or otherwise; and

"Lehman Brothers International Group" means LBHI and its subsidiaries worldwide;

"LBHI" means Lehman Brothers Holdings Inc;

"Nomura" means Nomura Holdings Inc. or one of its Affiliates.

"Transaction" means the proposed sale of certain assets of the Lehman Brothers group in Asia-Pacific to Nomura Holdings Inc. and certain of it subsidiaries.


Yours faithfully,,

.................................
John Adair



**H A N D   D E L I V E R Y**

**FILED / RECEIVED**

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

_Neal Kavalsky_
RECEIVED BY:        DATE        1:06  TIME