Hearing Date and Time: January 30, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: January 23, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons
Ralph I. Miller

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
: 
---------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO SECTION 8.4
OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN
OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS
TO ESTIMATE THE AMOUNT OF PROOF OF CLAIM NUMBER 30596 BY ESSEX
EQUITY HOLDINGS USA, LLC FOR PURPOSES OF ESTABLISHING RESERVES**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator

under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and

Its Affiliated Debtors (the "Plan"), for approval, pursuant to Section 8.4 of the Plan, to estimate

the amount of proof of claim number 30596 filed by Essex Equity Holdings USA, LLC for the

purposes of establishing reserves in connection with the Plan, all as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at

the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

US_ACTIVE:\44169928\5\58399.0011

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 30, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Ralph I. Miller, Esq., Robert J. Lemons, Esq., and Maurice Horwitz, Esq., attorneys for LBHI and certain of its affiliates; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) all parties who have requested notice in these chapter 11 cases; and (v) all parties with a particularized interest in the Motion, so as to be so filed and received no later than **January 23, 2013 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: January 15, 2013
      New York, New York

/s/ Robert J. Lemons
Robert J. Lemons
Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

Hearing Date and Time:  January 30, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  January 23, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons
Ralph I. Miller

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                   :   Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,            :   08-13555 (JMP)
                                                        :
                    Debtors.                            :   (Jointly Administered)
                                                        :
                                                        :
------------------------------------------------------------------x

**LEHMAN BROTHERS HOLDINGS INC.'S MOTION PURSUANT
TO SECTION 8.4 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN
OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO
ESTIMATE THE AMOUNT OF PROOF OF CLAIM NUMBER 30596 FILED BY ESSEX
EQUITY HOLDINGS USA, LLC FOR PURPOSES OF ESTABLISHING RESERVES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this Motion and respectfully

represents:

**PRELIMINARY STATEMENT**

    1.  Pending its resolution either by this Court or otherwise, estimation of the

Essex Claim (defined below) for the purpose of establishing reserves under the Plan is

US_ACTIVE:\44169928\5\58399.0011

appropriate because the claimant has admitted, in another proceeding concerning the same underlying transaction, that its compensatory damages are $1 billion less than the claim asserted against LBHI.

2.      On September 22, 2009, Essex Equity Holdings USA, LLC ("Essex") filed a claim against LBHI, Claim No. 30596 (the "Essex Claim"), a copy of which is attached hereto as Exhibit A, asserting that it has a claim against LBHI in the amount of approximately $1.2 billion stemming from certain auction rate securities ("ARS") that it purchased through former employees of Lehman Brothers Inc. ("LBI").

3.      Attached to the Essex Claim is a copy of a complaint (the "FINRA Complaint") filed by Essex in an arbitration proceeding (the "FINRA Arbitration") that Essex commenced on January 18, 2008 through the Financial Industry Regulatory Authority ("FINRA") against LBI and certain LBI officers and directors (the "LBI Employees") seeking at least $286 million on account of the ARS that Essex purchased. During the course of the FINRA Arbitration, Essex revised its claim for damages down to approximately $200 million. The FINRA Arbitration has been stayed with respect to LBI on account of LBI's pending liquidation under the Securities Investor Protection Act of 1970, as amended (*Securities Investor Protection Corporation v. Lehman Brothers Inc.* (Case No. 08-01420)) (the "LBI SIPA Proceeding").

4.      Pursuant to the One Hundred Eleventh Omnibus Objection to Claims (No Liability Claims) filed on March 14, 2011 [ECF No. 15012] ("Omni 111"), a copy of which is attached hereto as Exhibit B, LBHI asserted that it has no liability for the Essex Claim because the claim arises from transactions between Essex and persons and/or entities that are not debtors in the above captioned chapter 11 cases, *i.e.*, LBI and the LBI Employees. In its response to Omni 111, filed on May 11, 2011 [ECF No. 16728] (the "Response"), a copy of which is

attached hereto as Exhibit C, Essex argued that "[t]o the extent that LBH[I] is required to indemnify LBI directors and officers, LBH[I] may, in fact, be liable to Essex and any judgment may be executable against its assets if non-Debtor assets are insufficient to satisfy a future arbitration award in full or in part." (Response at ¶ 2.) According to the Response Essex has also filed a claim against LBI in the LBI SIPA Proceeding that is identical to the Essex Claim (the "LBI Claim"). (Response at n.1.)

        5.        On October 17, 2012, the arbitrators in the FINRA Arbitration issued a decision (the "FINRA Decision"), a copy of which is attached hereto as Exhibit D, denying Essex's claims against the LBI Employees in their entirety. Accordingly, although LBHI continues to dispute that it has any indemnification obligations to the LBI Employees and LBI, with respect to the former, this dispute has been rendered moot by the FINRA Decision. LBHI expects that a similar outcome with respect to the LBI Claim is likely. If it is determined that LBI has no liability to Essex, then any litigation concerning LBHI's obligation to indemnify LBI – litigation that could be prolonged, fact intensive, and costly – would be unnecessary.

        6.        Rather than expend its limited resources, and the resources of this Court, on litigation concerning the Essex Claim, LBHI has determined that it would be more efficient and economical to await a determination of the LBI Claim. In the meantime, however, pursuant to section 8.4 of the Plan, LBHI is required to maintain significant reserves on account of the full asserted amount of the Essex Claim – approximately $1.2 billion – despite the fact that according to the FINRA Decision, Essex itself revised its claim for damages to approximately $200 million during the course of the FINRA Arbitration. In other words, LBHI is currently reserving for a claim that Essex itself has admitted to be overstated by approximately $1 billion. Moreover, as more fully explained below, approximately 72% of the Essex Claim relates to punitive damages

to which Essex is not entitled under applicable case law, and approximately $56 million relates to interest, a portion of which may be unrecoverable under section 502(b) of the Bankruptcy Code (as defined below).

7.      The reserves that LBHI is required to maintain on account of overstated claims such as the Essex Claim materially impact the distributions that LBHI can make to its creditors.  LBHI has previously sought to agree with Essex to a consensual reduction of the reserve for the Essex Claim (as it has done with several other creditors, thereby achieving approximately $19 billion in consensual reserve reductions) to an amount that more reasonably reflects Essex's asserted damages.  Essex has not agreed to a reduction of the Essex Claim for reserve purposes.  Therefore, to avoid the need to maintain disproportionately large reserves on account of the Essex Claim, LBHI requests, pursuant to section 8.4 of the Plan, that this Court estimate, solely for Plan reserve purposes, the amount of the Essex Claim as $200 million in LBHI Class 7 (the "Estimated Reserve Amount") so that LBHI can effectuate the administration of its Plan, and address the Essex Claim in an economical and efficient manner, without diminishing distributions and unfairly prejudicing LBHI's other creditors.

## Jurisdiction

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

9.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

10. On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator, among other things, is authorized to interpose and prosecute objections to claims filed against the chapter 11 estates of LBHI and its affiliates who commenced the Chapter 11 Cases (the "Chapter 11 Estates").

**The Essex Claim**

11. According to the complaint attached to the Essex Claim, Essex had a cash management account and entered into a cash management agreement with LBI (the "Cash Management Agreement").  (Essex Claim at ¶ 4.)[1]  In accordance with the Cash Management Agreement, Essex funded its brokerage account at LBI.  Using these funds, at Essex's request, LBI purchased various ARS.  Essex asserts that the auctions associated with ARS subsequently failed, leaving Essex unable to immediately access $286 million of its cash.  (Essex Claim at ¶ 12.)

12. As stated above, on January 18, 2008, Essex commenced the FINRA Arbitration against LBI and the LBI Employees, and asserted claims for breach of contract, breach of fiduciary duty, unsuitability, unauthorized purchases, negligent misrepresentation, violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act, conversion, negligence, gross negligence, failure to supervise, violation of Section 5 of the Securities Act of 1933, rescission, fraudulent inducement, and fraud.  (FINRA Decision at p. 7.)  Due to the

---

[1] An undated copy of the Cash Management Agreement, signed by Essex but not by LBI, is attached as Exhibit D to the Essex Claim.

commencement of the LBI SIPA Proceeding, the litigation against LBI is indefinitely stayed. (*Id.* at p. 7.) In the FINRA Arbitration, Essex sought compensatory damages in an amount to be determined at arbitration, punitive damages of triple the compensatory damages, interest, attorneys' fees and costs. (*Id.* at p. 8.) At the close of the FINRA Arbitration hearing, Essex revised its claim and sought, instead, compensatory damages in the amount of approximately $200 million. (*Id.*)

13. In connection with the FINRA Arbitration in which Essex sought $200 million in damages, Essex also filed the Essex Claim on September 22, 2009. Unlike in the FINRA Arbitration, however, Essex asserts in the Essex Claim that it is owed approximately $1.2 billion by LBHI. In an attachment to the Essex Claim, Essex sets forth the following calculation for the claim:

| | |
|---|---:|
| Principal Amount of Claim: | $285,650,000.00 |
| Interest (at 9%): | $56,176,791.90 |
| Treble Damages: | $856,950,000.00 |
| **TOTAL:** | **$1,198,776,791.90** |

Thus, of the approximately $1.2 billion claimed by Essex in the Essex Claim, approximately 72% consists of punitive damages, and some portion of the Essex Claim likely relates to unrecoverable postpetition interest.

14. Other than mentioning the FINRA Arbitration and attaching the Complaint, the Essex Claim does not specify a legal basis for holding LBHI liable for damages allegedly incurred by Essex in its transactions with LBI or the LBI Employees. Seeing no basis for liability in the Essex Claim, LBHI included the claim on Omni 111. In the Response, Essex for the first time articulated its theory why LBHI may be liable to Essex in connection with the FINRA Arbitration. In sum, although neither LBHI nor any Lehman affiliate other than LBI was

a party to the Cash Management Agreement or responsible for Essex's cash management account, Essex argues that LBHI's objection was "deficient" based on the evidentiary record because of "the vagueness surrounding the scope of LBH[I]'s indemnification of affiliate officers, employees and directors." (Response at ¶ 4.) For the first time, Essex alleged "potential indemnification obligations to directors and officers arising out of FINRA Arbitrations involving LBI" as the basis for its claim against LBHI. (Response at ¶ 11.) In connection with Omni 111, Essex has requested the opportunity to seek discovery – and has already propounded formal discovery requests – concerning the scope of LBHI's indemnification obligations, if any, of LBI and the LBI Employees. LBHI has also agreed to respond to such requests no later than thirty days prior to any hearing on the merits of the Essex Claim.

15. Ultimately, as stated above, the FINRA arbitrators issued the FINRA Decision that denied Essex's claims in their entirety. (FINRA Decision at p. 9). Thus, although LBHI denies that it has any obligation to indemnify the LBI Employees or LBI (or that any such indemnification obligations, if they existed, would a create a claim by Essex), the FINRA Decision has obviated the need for a determination with respect to LBHI's alleged indemnification obligations of the LBI Employees. Further, as stated above, the Essex Claim may ultimately resolve itself, without the need for costly discovery or litigation, if it is determined that Essex has no right to damages against LBI.

16. For these reasons, LBHI has concluded that it would be inefficient for LBHI or this Court to expend time and resources in litigation over the Essex Claim at this time. Under the terms of the Plan, however, absent the relief requested herein or other agreement by Essex, LBHI is required to reserve the Pro Rata Share (as defined in the Plan) of distributions for the Essex Claim in the amount of $1.2 billion (notwithstanding the fact that in the FINRA

Arbitration, Essex ultimately only sought approximately $200 million in damages).  The amount of such reserves diminishes the distributions that LBHI can make to creditors with Allowed Claims (as defined in the Plan).  To avoid this inequitable result, the Chapter 11 Estates included in Section 8.4 of the Plan a mechanism, described below, to estimate for Plan reserve purposes Disputed Claims such as the Essex Claim in amounts that are reasonable and that will not unfairly prejudice their other creditors.

## Basis for Relief Requested

17.     The Plan provides that the Court has authority to estimate, for reserve purposes, claims that constitute Disputed Claims under the Plan.  Section 8.4 of the Plan permits the Chapter 11 Estates to reserve for Disputed Claims in "the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claim." *See* Section 8.4 of the Plan.  In addition, Section 9.3 of the Plan provides that "the Plan Administrator may at any time request on behalf of any Debtor that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules." *See id.* at Section 9.3.  The definition of Disputed Claim includes any claim "as to which a timely objection and/or request for estimation has been interposed, which objection and/or request for estimation has not been withdrawn or determined" by a final order. *See id.* at Section 1.46.  The Essex Claim is subject to Omni 111 and is a Disputed Claim.

18.     This Court has previously held that pursuant to section 8.4 of the Plan, "the Court will have the ability to estimate disputed claims using the procedures that are outlined in [section] 502(c) [of the Bankruptcy Code] and related case law." *See* Hr'g Tr. 16:25-17:2,

Jan. 26, 2012. Estimation under these circumstances is proper under section 502(c) of the Bankruptcy Code, which provides as follows:

> (c) There shall be estimated for purposes of allowance under this section –
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c). Other Courts have also recognized the ability to estimate disputed claims under section 502(c). *See In re Wallace's Bookstores, Inc.*, 317 B.R. 720, 724 (Bankr. E.D. Ky. 2004) (holding that a liquidating supervisor had the right under section 502(c) to seek estimation of disputed claims pursuant to a plan of reorganization); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003) (estimating the disputed unliquidated amount of an administrative claim under section 502(c)).

19.     Furthermore, the Court has broad authority under sections 1142(b) and 105(a) of the Bankruptcy Code over the property of the estate administered under the Plan and to issue any order necessary to implement the provisions of the Plan and the Bankruptcy Code. *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the consummation of the plan"); *id.* § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.").

20.     In the present circumstances, estimation of the Essex Claim at the Estimated Reserve Amount is warranted because LBHI is currently reserving for a claim that has been overstated by at least $1 billion. As stated above, the sole basis that Essex has asserted for

LBHI's liability under the Essex Claim is LBHI's alleged potential indemnification obligations to the LBI Employees and LBI. However, in the context of the FINRA Arbitration, Essex only sought compensatory damages in the amount of approximately $200 million from the LBI Employees. Essex has never even alleged that its actual damages with respect to the LBI Employees and LBI ever exceeded $286 million: rather, in the complaint that Essex filed in the FINRA Arbitration against the LBI Employees and LBI, Essex only alleges that it "became unable to sell [the ARS] or otherwise get their money back and so lost the ability to access or invest US $286 million of their money." (FINRA Complaint at ¶ 12.) Based on the foregoing statements of Essex itself, it would be inequitable to require LBHI to continue reserving for an indemnification claim of $1.2 billion when the claimant has only sought $200 million from the parties that LBHI is alleged to have indemnified.

21. Furthermore, estimation of the Essex Claim at the Estimated Reserve Amount is warranted because, as stated above, approximately 72% of the grossly inflated Essex Claim is based upon punitive damages. Essex cannot recover punitive damages from LBHI in light of LBHI's bankruptcy. "The purpose of punitive damages…is to punish tortfeasors and deter them from their wrongful conduct." *See In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) But in a bankruptcy setting where the recovery of punitive damages by some creditors depletes the recovery of other creditors, courts have regularly exercised their equitable power to disallow or subordinate punitive damage claims. *See, e.g., In re Johns-Manville,* 68 B.R. at 627 (finding that "recovery of punitive damages...would...risk the depletion of [an asbesetos trust's] assets" to the benefit of some claimants but at the expense of other claimants, and holding that such a result "is inequitable on

its face."); *In re A.H. Robins Co., Inc.,* 89 B.R. 555, 562 (E.D. Va. 1988) (holding that equity provides courts with the power to disallow punitive damages if allowance would frustrate the aims of the chapter 11 plan). Awarding punitive damages to certain unsecured creditors in cases where all unsecured creditors are not receiving full satisfaction of their claims in effect forces those impaired creditors to pay for the debtor's wrongful conduct.[2] *See In re Johns-Manville Corp.,* 68 B.R. at 627-28 (stating "it is well within the authority of this court to disallow a claim for punitive damages….").

22. The Bankruptcy Code likewise restricts Essex's ability to collect any portion of the approximately $56 million that relates to postpetition interest. 11 U.S.C. § 502(b)(2). Indeed, section 502(b)(2) of the Bankruptcy Code expressly disallows claims for interest that has not matured as of the petition date. *Id.*; *see also* Collier on Bankruptcy 502.03[3][a] (16th ed. 2009) ("[S]ection 502(b)(2) prohibits payment of postpetition interest on prepetition unsecured claims….").

23. LBHI is not seeking to estimate the Essex Claim at the Estimated Reserve Amount for purposes of allowance or distributions under the Plan, but only for reserve purposes. The proposed order preserves Essex's right to continue to assert that the allowed amounts of the Essex should be up to the filed amount.[3]

24. For the reasons set forth in this Motion, LBHI hereby request that the Court enter the proposed order annexed hereto.

---

[2] Punitive damages claims are particularly inappropriate in instances where, as here, the debtor is liquidating, as there is no deterrent purpose or effect. *See* 11 U.S.C. § 726(a)(4) (expressly subordinating punitive damages in chapter 7 cases).

[3] In addition, the estimation of the Essex Claim does not preclude LBHI from continuing to dispute the validity, amount and priority of the Essex Claim. LBHI does not intend to allow the Essex Claims at the Estimated Reserve Amount, and reserves all rights to further object to the Essex Claim on any basis whatsoever.

**Notice**

25.     No trustee has been appointed in the Chapter 11 Cases. The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], has served notice of this Motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Essex; and (vi) all parties who have requested notice in these chapter 11 cases. The Plan Administrator submits that no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by LBHI or the Plan Administrator to this or any other court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  January 15, 2013
        New York, New York

/s/ Robert J. Lemons
Robert J. Lemons
Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         :    08-13555 (JMP)
                                                                 :
                              Debtors.                           :    (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 8.4 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE THE AMOUNT OF PROOF OF CLAIM NUMBER 30596 FILED BY ESSSEX EQUITY HOLDINGS USA, LLC FOR PURPOSES OF ESTABLISHING RESERVES

Upon the motion (the "Motion") dated January 15, 2013, of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for approval, pursuant to sections 8.4 of the Plan, and sections 105(a), 502(c) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code"), to estimate the amount of the Essex Claim[4] for the purposes of establishing reserves in connection with the Plan, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue

---

[4]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Service; (iv) the United States Attorney for the Southern District of New York; (v) Essex; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Essex Claim is hereby estimated in the amount of $200 million in LBHI Class 7 solely for purposes of determining the reserves to be set for the Essex Claim under the Plan; and it is further

ORDERED that the estimation of the Essex Claim is not deemed to determine or affect in any respect the allowed amount of the Essex Claim for any purpose other than establishing the reserve amount for the Essex Claim under the Plan; and it is further

ORDERED that the estimation of the Essex Claim is without prejudice to the rights of Essex to assert that the allowed amount of the Essex Claim should be greater than the Estimated Reserve Amount; and it is further

ORDERED that the estimation of the Essex Claim is without prejudice to the rights defenses and objections of LBHI or the Plan Administrator (as defined in the Plan) to the merits, amount and priority of the Essex Claim and that by estimating the Essex Claim, all rights of LBHI and the Plan Administrator with respect to the Essex Claim are fully preserved; and it is

2

further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2013

                                                         Honorable James M. Peck
                                                         United States Bankruptcy Judge

US_ACTIVE:\44169928\5\58399.0011