Wong Fleming
821 Alexander Road
Suite 200, P.O. Box 3663
Princeton, NJ 08540
Telephone: (609) 951-9520
Facsimile: (609) 951-0270
James K. Haney, Esq.
Daniel Fleming, Esq.

Bricker & Eckler LLP
100 South Third Street
Columbus, OH 43215
Telephone: (614) 227-8802
Quintin F. Lindsmith, Esq.
*Pending Admission Pro Hac Vice*

*Attorneys for Nationwide Life Insurance Company and
Nationwide Mutual Insurance Company*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> LEHMAN BROTHERS HOLDINGS, *et al.* <br><br> Debtors. | Chapter 11 <br><br> Case No. 08-13555 (JMP) |

**OBJECTIONS OF NATIONWIDE LIFE INSURANCE COMPANY
AND NATIONWIDE MUTUAL INSURANCE COMPANY TO JOINT MOTION
OF LEHMAN BROTHERS HOLDINGS, INC. AND LITIGATION SUBCOMMITTEE
OF CREDITORS' COMMITTEE, PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND STAY
OF AVOIDANCE ACTIONS AND TO GRANT CERTAIN RELATED RELIEF**

## Table of Contents

I. INTRODUCTION ........................................................................................... 1
II. STATEMENT OF RELEVANT FACTS ........................................................ 3
III. DISCUSSION OF LAW AND ARGUMENT ................................................. 6

6047772v1

**Cases**

Barrow v. Wethersfield, 66 F.3d, 466 (2d Cir. 1995) .................................................................. 8
Burdine v. Kaiswer, 09 Civ. 1026 (JGC), 2010 U.S. Dist. LEXIS 63122, 2010 WL
  2606257, *2 n.2 (N.D. Ohio June 25, 2010) ............................................................ 9
Daniel v. City of Mattson, 09 Civ. 3171 (JWD), 2011 U.S. Dist. LEXIS 5546, 2011
  WL 198132, *4 (N.D. Ill. Jan. 18, 2011) .................................................................. 9
*Enron Corp. v. JP Morgan Sec. Inv. (in re Enron Corp.)*, 361 B.R. 36 (Bankr.
  S.D.N.Y. 2006) ............................................................................................... 12
Krupski v. Crociere S.P.A., 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010) 7, 9, 10, 11, 12, 13
Picard v. Peter D. Madoff, et al., 468 B.R. 620; 2012 Bankr. LEXIS 1427; 56 Bankr.
  Ct, Dec. 85 (S.D.N.Y. 2011) ............................................................... 11, 12, 13, 14
Rodriguez v. City of New York, No. 10 Vic. 1849 (PKC), 2011 WL 4344057, 2011
  U.S. Dist. LEXIS 102725 (S.D.N.Y. Sept. 7, 2011) ........................................ 8, 10, 11
Wilson v. Delta Airlines, Inc., 09 Civ. 2587 (JPM), 2010 U.S. Dist. LEXIS 72471,
  2010 WL 2836326, *4 (W.D. Tenn. July 19, 2010) .................................................. 9

**Rules**

Civ. R. 15(c)(1)(C) ......................................................................................... 9, 10, 12, 13
Civ. R. 15(c)(1)(C)(ii) ............................................................................................. 7, 12
Civ. R. 4(m) ......................................................................................................... 9

## I. INTRODUCTION

Nationwide Life Insurance Company and Nationwide Mutual Insurance Company (together hereafter referred to as the "Nationwide Parties") are defendants in what Movants label the "Distributed Action," <u>Lehman Brothers Special Financing, Inc. v. Bank of America National Association, et al.</u>, Adv. Proc No. 10-03547 (JMP). The Nationwide Parties were not named in the original Complaint or the First Amended Complaint in the Distributed Action. They were added as "Noteholder Defendants" when Plaintiff Lehman Brothers Special Financing ("LBSF") filed its Second Amended Complaint in the Distributed Action on July 23, 2012.[1]

The Nationwide Parties object to a fifth blanket stay of the Distributed Action. However, the Nationwide Parties would not object to an additional *limited* stay, provided the Order extending the stay carved out two exceptions:

1. Allowing the Noteholder Defendants not named in the Original Complaint (the "New Noteholder Defendants") to conduct limited discovery relating to the narrow issue of LBSF's and LBHI's actual knowledge of the identity of the New Noteholder Defendants prior to the commencement of the Distributed Action; and

2. Allowing the New Noteholder Defendants to file dispositive motions on the single issue of whether claims against them are time-barred.

The Nationwide parties request this carve out because there is a significant issue as to whether the avoidance claims, as well as the collateral claims built on the avoidance claims, are barred by the applicable statute of limitations. Both LBHI and LBSF knew the

---

[1] Doc 303-1.

1

6047772v1

exact identities of the Nationwide Parties as noteholder participants in the transactions at issue long before the commencement of bankruptcy proceedings in the Fall of 2008. They knew the Nationwide Parties were noteholders when the bankruptcy petitions were filed. They knew the Nationwide Parties were noteholders when the Distributed Action was commenced in October 2010.

That is, the delay in naming the Nationwide Parties as noteholder defendants in the Distributed Action was not the result of any mistake in identity or lack of knowledge as to whether the Nationwide Parties were noteholders in the transactions at issue. Thus, as a matter of law, the avoidance claims asserted against the Nationwide Parties, as well as the collateral claims dependent upon success of the avoidance claims, are time barred.

The proposed limited discovery is fair because it is the other side to the same coin of discovery that LBSF has been engaging in. Movants state that "LBSF has been and continues to be engaged in the time-consuming, multi-step discovery process required to identify and/or confirm the identities and addresses of the noteholders that received the challenged distributions."[2] The Nationwide Parties are only requesting that it be permitted to conduct reciprocal discovery on the exact same subject – when did LBSF possess information as to the identity of the Nationwide Parties as noteholders in the transactions at issue?

Once the Nationwide Parties have received the requested discovery, they should be permitted to file a limited dispositive motion on the single subject of whether the claims of LBSF are time-barred as to the Nationwide Parties.

This process will contribute to the efficient and orderly disposition of claims. And it will not be overly burdensome to LBSF where the scope of discovery is so limited and narrow. The Lehman Parties cannot credibly complain that it would be immensely

---

[2] Joint Motion, p.11.

2

6047772v1

burdensome to simply turn over records indicating when those entities had actual knowledge of the identity of the Nationwide Parties or the other New Noteholder Defendants. And it would be unfair to allow for the continuation of one-sided discovery on the exact same topic – the identity of Noteholder Defendants.

It would likewise improve the efficiency of the Distributed Action litigation by allowing the New Noteholder Defendants to raise a threshold issue as to whether the claims against them are time-barred. If the court finds that they are, an immense amount of time and expense will be avoided.

In summary, the Nationwide Parties are not asking the court to lift the stay completely to allow for full discovery and litigation. They are only requesting a narrow carve out of any extended stay order to allow for the foregoing, which is not overly burdensome, is not oppressive, does not impede the laudable goals stated in the Joint Motion, and – most importantly – would be fair. To allow the Lehman Parties to engage in discovery without allowing the New Noteholder Defendants to challenge the Lehman Parties in that same area of discovery would be unfair and prejudicial to the New Noteholder Defendants.

## I.    STATEMENT OF RELEVANT FACTS

LBHI filed its Chapter 11 bankruptcy petition on September 15, 2008. LBSF filed its bankruptcy petition on October 3, 2008.

Just one day short of the two-year anniversary of the bankruptcy filing of LBHI, LBSF commenced the Distributed Action on September 14, 2010. The Nationwide Parties were not named as defendants in that action. And importantly, neither LBHI nor LBSF sent notice of the filing of the Distributed Action to the Nationwide Parties.

3

6047772v1

On February 22, 2012, over three years after the commencement of the bankruptcy proceedings, counsel for LBSF issued two letters, one each to "Nationwide Life Insurance Company" and the other to "Nationwide Mutual Insurance Company." See attached Exhibit A. Both letters referenced the caption of the Distributed Action and were identical, except as to the name of the recipient. The letter to Nationwide Life Insurance Company stated:

> To whom it may concern:
>
>> By way of this letter, Lehman Brothers Special Financing, Inc., the Plaintiff in the above-referenced adversary proceeding, provides notice of its intent, at the appropriate time, to amend its First Amended Complaint, dated October 1, 2010, a copy of which is attached hereto, to add Nationwide Life Insurance Company as a noteholder defendant and member of the putative defendant class in the above-referenced adversary proceeding.

This letter presents itself as the first notice of the action. It states, "by way of this letter, Lehman Brothers Special Financing, Inc.,... provides notice of its intent... ." It does not reference any prior notice or indicate that it is a follow-up notice.

Five months later on July 23, 2012, LBSF filed its Second Amended Complaint, adding the Nationwide Parties as Noteholder Defendants in the Distributed Action – almost four years after the commencement of these bankruptcy proceedings.

It is not plausible that LBSF had no idea of the identity of the noteholders involved in the CDOs at issue in the Distributed Action. That is because LBSF was no less than the *credit default counterparty* in those transactions. More importantly, LBSF was the marketing entity which solicited the noteholders to participate in the CDO's at issue. The lead solicitor on behalf of Lehman was Ron Mitra, Senior Vice President – Derivative Sales. Correspondence from Mr. Mitra to the Nationwide Parties dates back as far as 2006.

4

On August 10, 2012, counsel for the Nationwide Parties wrote to counsel for LBSF requesting information confirming when LBSF had actual knowledge of the identity of the Nationwide Parties, writing in part:

I am writing to request information from your office or from your client.

> Specifically, we would like to see any records which identify when your client or your office first had information indicating that the referenced Nationwide entities were noteholders who participated in the transactions described in the Lawsuit [the Distributed Action]. Since your client was a credit default counterparty, we assumed that it maintained lists of all noteholders who participated in the transactions to which your client was a credit default counterparty.
>
> In lieu of a document production, we will consider an alternative if you provide us a date certain by which your office or your client had actual knowledge that the Nationwide entities were noteholders in the transactions referenced in the lawsuit.[3]

In response to this request for a voluntary turnover of information, counsel for LBSF stated that they would merely rely upon the stay order issued by this Court and "will not respond to Nationwide's discovery request at this time."[4]

While the Nationwide Parties at the time contemplated coming to this Court to request that the stay be lifted, they ultimately decided to wait until the stay expired on January 20, 2013. But now LBSF is requesting that the stay be extended for another six months. It requests the stay in part to learn the "names and addresses of currently unknown noteholders."[5] But as will be discussed more fully below, if LBSF does not now know the names of noteholders, the claims against those noteholders are time-barred. They are time-barred for the same reason they are time-barred against noteholders whose identities LBSF knew all along.

---

[3] See Attached Exhibit B.
[4] See Attached Exhibit C.
[5] Joint Motion, p. 12.

5

## II. DISCUSSION OF LAW AND ARGUMENT

Civ. R. 15(c)(1)(C) allows an amendment adding a new party to relate back to the date of the original pleading if:

> "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; ***and***
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Civ. R. 4(m) places a time limit for service of 120 days after the complaint is filed. But the Court may extend the time for service "for an appropriate period." In this case, the Court has issued four orders in the last two years extending the service deadline by six months at a time. At the time Nationwide received the February 2012 letters notifying it of the action, the then-current order required service by March 2012.

It is the apparent position of LBSF that since the Nationwide Parties received "actual notice" of the pending action as contemplated in Rule 15(c) and the notice was given within the service deadline set by the court pursuant to Rule 4(m), then the new claims against the Nationwide Parties relate back to the time of filing the original action.

6

But for the amendment to relate back, it is not enough that the Nationwide Parties simply had notice of the action. Civ. R. 15 also requires that the Nationwide entities:

> "...knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Civ. R. 15(c)(1)(C)(ii).

The purpose of this rule is to address the situation where the plaintiff uses the wrong name of a known defendant. For example, in <u>Krupski v. Crociere S.P.A.</u>, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010), an injured cruise ship passenger sued the wrong corporate defendant as a result of a mistake arising from "two highly interrelated corporate entities with very similar names." <u>Id.</u>, at 2497-98. The court held that the claims were not time-barred against the correct related entity which had knowledge of the lawsuit and which could reasonably determine that it had not been named as a result of a mistake; as a result of the fact that the two entities were "highly interrelated... with very similar names." <u>Id</u>.

But in this case, LBSF has never mistaken the identity of the Nationwide Parties. As reflected in its February 2012 correspondence, LBSF knew who they were and where they were. And it is not the case that a "Nationwide" entity was named in either the original Complaint or the First Amended Complaint by a mistaken name. In fact, in its Motion for Leave to Amend the First Amended Complaint, LBSF indicated that one of the reasons to further amend the complaint

7

was to "correct the names of certain current Noteholder Defendants."[6] But no affiliated Nationwide Party was among the "current Noteholder Defendants."

The Second Circuit has held that a lack of knowledge of a potential defendant's identity is not the same as and does not constitute a "mistake concerning the parties' identity" within the meaning of Civ. R. 15(c). Barrow v. Wethersfield, 66 F.3d, 466, 470 (2d Cir. 1995). In this case, there are only one of two possibilities. Either (1) LBSF did not know the identities of the Nationwide Parties when the Distributed Action was filed in September 2010, or (2) it did know their identities, but chose for strategic reasons not to name them at that time.

Neither circumstance involves a "mistake concerning the parties' identity." Regardless of whether it is one or the other, either scenario results in a legal conclusion that the avoidance claims against the Nationwide Parties are time-barred; they do not relate back to the original date of the filing of the complaint.

This conclusion is supported by Rodriguez v. City of New York, No. 10 Vic. 1849 (PKC), 2011 WL 4344057, 2011 U.S. Dist. LEXIS 102725 (S.D.N.Y. Sept. 7, 2011). The plaintiff in that case sought leave to amend the complaint adding two police officers as parties after the applicable statute of limitations had run. Neither officer had been named in the original complaint, although a third officer had been named. Citing several cases confirming that a lack of knowledge as to the identity of a defendant is not the same thing as a mistake, the court denied plaintiff's motion for leave to amend. Id. *26, citing Daniel v. City of Mattson, 09 Civ. 3171 (JWD), 2011 U.S. Dist. LEXIS 5546, 2011 WL 198132, *4 (N.D. Ill. Jan. 18, 2011)

---

[6] LBSF Motion for Leave to Amend, p. 12. Doc. 237-1.

8

(concluding that even after Krupski, "[l]ack of knowledge as to the identity of the proper defendant is not a mistake"); Wilson v. Delta Airlines, Inc., 09 Civ. 2587 (JPM), 2010 U.S. Dist. LEXIS 72471, 2010 WL 2836326, *4 (W.D. Tenn. July 19, 2010) (concluding that Sixth Circuit precedent holding that lack of knowledge does not constitute a mistake within the meaning of Rule 15(c) remains applicable after Krupski); and Burdine v. Kaiswer, 09 Civ. 1026 (JGC), 2010 U.S. Dist. LEXIS 63122, 2010 WL 2606257, *2 n.2 (N.D. Ohio June 25, 2010) (finding same).

The Rodriquez court held:

> The proposed amendment naming [the new defendants] does not relate back to the original Complaint for lack of notice and therefore is time-barred and must be denied as futile on the basis of this deficiency alone... . The Second Circuit has held that a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "mistake concerning the party's identity" within the meaning of Rule 15(c).
>
> \* \* \*
>
> The situation addressed by the Court in *Krupski* is not that faced here, nor is it the situation addressed by the Second Circuit in *Borrow*. Unlike *Krupski*, the plaintiff here did not harbor a misimpression as to known parties' identities. Rather, the plaintiff did not know the identities of officers Suarz and Nozelle until after the statute of limitations had run. The plaintiff here, unlike the plaintiff in *Krupski*, did not have the requisite information to sue the correct party. Therefore, on these facts, *Krupski* does not control and *Borrow* should apply to bar plaintiff's proposed amendment.
>
> \* \* \*
>
> Even if ... plaintiff had made a "mistake" ... there would be no facts from which to conclude that officers Suarez and Nozelle knew or had reason to know that the action would have been brought against them absent plaintiff's mistake as to their identities....neither officer had notice of plaintiff's action... . Nor

9

> are the identities of the officers so closely intertwined with the [named defendants] that they should have known they were proper parties for suit.

Id., at 8-10.

Likewise the Nationwide Parties had no reason to know until February 2012 that they were targets in the Distributed Action. And they certainly had no reason to believe that they were excluded from the original Complaint because LBSF was mistaken as to who they were.

More recent than Rodriquez is a case out of this Court involving facts almost identical to the facts of this case. In Picard v. Peter D. Madoff, et al., 468 B.R. 620; 2012 Bankr. LEXIS 1427; 56 Bankr. Ct, Dec. 85 (S.D.N.Y. 2011), the trustee sought leave to file a second amended complaint in an avoidance action adding the spouses of other defendants. The trustee claimed that he should be permitted to add the spouse defendants because they "knew or should have known that their exclusion from the original complaint was a mistake in accordance with Rule 15(c)(1)(C)." Id., at 628.

In the course of reviewing the relation back provisions of Rule 15(c)(1)(C), the court noted that its purpose was "'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the federal rules of civil procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" Id., at 627, quoting Krupski, supra. The court also noted that the Supreme Court's observation in Krupski that "'[a] prospective defendant who legitimately believed that the statute of limitations period had passed without any

10

6047772v1

attempt to sue him has a strong interest in repose,' whereas 'repose would be a windfall for a prospective defendant who understood, or should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.'" Id.

That is, under Krupski, the Nationwide Parties do have a "strong interest in repose" where they legitimately believe that the limitations period has passed. The Picard court went on to note:

> "Under Rule 15(c)(1)(C)(ii), the movant must show the proposed defendant knew or should have known the action would have been brought but for a mistake. *Enron Corp. v. JP Morgan Sec. Inv. (in re Enron Corp.)*, 361 B.R. 36, 41 (Bankr. S.D.N.Y. 2006). As the Supreme Court explained, 'the question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant.'"

Id., at 627 quoting Krupski, 130 S.Ct. at 2496.

In Picard, the spouses knew of the lawsuit because their family relatives had been named, including their husbands or ex-husbands. There was no issue about their knowledge of the suit. Here, there is no evidence that the Nationwide Parties even knew about the Distributed Action until they received the letters from counsel for LBSF in February 2012.

The excuses LBSF now offers for omitting parties in the earlier pleadings were found wanting by the court in Picard, which noted:

> Indeed, the trustee, a sophisticated party who has commenced hundreds of adversary proceedings in this case, was (i) in possession of numerous relevant documents, including financial disclosure forms from Mark Andrew Madoff, that identified the roles, legal status, and interests of the Spouse Defendants

11

6047772v1

> alleged by the trustee in the Original Complaint, and (ii) armed with a large team of lawyers who had a significant period of time to assist the trustee in his review and analysis of his documentation, then, with this extensive knowledge and these plentiful resources, the trustee omitted all three of the spouse defendants from the Original Complaint, omitted them again from the Amended Complaint... and instead chose to sue them in a number of separate adversary proceedings. This does not appear, therefore, to be a case where plaintiff intended to sue party A but sued party B due to mistaken identity... . Nor is it the case where the trustee knew that party A exists while incorrectly believing him to have the status of party B, or one in which he misunderstood the roles of party A and party B. See *Krupski* at 2494.

Id., at 630. Since the court found that the omission of the spouse defendants could not have been the result of a mistake, it did not allow them to be added as parties because those claims were clearly time-barred.

And those are the exact facts that now bear upon the claims pending against the Nationwide Parties. As in Picard:

(1) LBSF is a "sophisticated party who has commenced hundreds of adversary proceedings in this case";

(2) LBSF has been "in possession of numerous relevant documents," including records of the Noteholder Defendants because LBSF was the credit swap counterparty;

(3) LBSF has been "armed with a large team of lawyers who had a significant period of time to assist the [Debtor and Committee] in [their] review and analysis of this documentation";

(4) With this "extensive knowledge and these plentiful resources," LBSF omitted the Nationwide Parties from the Original Complaint; and

(5) Omitted them again from the First Amended Complaint.

12

6047772v1

For these reasons, it is not merely possible, but probable that the Nationwide Parties will be in a strong position to move for dismissal of the claims against them where their inclusion in the Second Amended Complaint cannot relate back to the original filing.

Accordingly, the Nationwide Parties and other New Noteholder Defendants who are apparently in similar situations should be permitted to take limited discovery of the type that was sought in the correspondence from counsel for the Nationwide Parties described above. This narrow limited discovery will not be unduly burdensome upon the army of lawyers employed by LBSF. In fact, the documentation should be easy to produce.

The Nationwide Parties should then be permitted to file a limited motion to dismiss on the narrow issue of whether the claims now pending against them can relate back to the filing of the original Complaint. It is a threshold legal issue that will not be long or protracted. And it will benefit all parties.

For example, if the position of the Nationwide Parties is correct, it will eliminate a massive waste of resources spent not only by the Lehman Parties, but also by the Nationwide Parties as well as potentially numerous New Noteholder Defendants. If the Court rules otherwise, the parties can move on to the next set of issues, including settlement discussions.

If the stay remains in place without exception, it will begin to enter an area of an abuse of discretion. It is one thing to stay litigation for reasonable periods of time, for Plaintiff to truly be making an effort to serve parties. But to stay an

13

6047772v1

action for two and a half years simply because the Plaintiff does not want to yet prosecute the action while preventing the Defendants from seeking to dismiss the action, enters a realm of high prejudice to the Defendants.

There are now hundreds of defendants named in the Distributed Action, yet movants themselves admit that they have only settled with two defendants in the last six months and might soon settle with "one Noteholder Defendant." It has dismissed nine Defendants and plans to dismiss nine more. None of these are reasons to continue to stay the Distributed Action against hundreds of other Defendants.

WHEREFORE, for the foregoing reasons, the Nationwide Parties object to the Joint Motion of Lehman Brothers Holdings Inc. and Litigation Subcommittee of the Creditors' Committee to Extend the Stay of Avoidance Actions as the motion relates to the Distributed Action. In the alternative, the Nationwide Parties request that if the stay is extended in the Distributed Action, the Court (1) partially lift the stay to allow the New Noteholder Defendants to conduct limited discovery on the issue of LBSF's knowledge of the identities of the Noteholder Defendants, and (2) allow the New Noteholder Defendants to file limited dispositive motions as to whether the claims asserted against them are now time barred.

Respectfully submitted,

Dated: January 23, 2013

/s/ James K. Haney
James K. Haney
Daniel Fleming
Wong Fleming
821 Alexander Road, Suite 200
Princeton, NJ 08540
Telephone:    (609) 951-9520
Facsimile:    (609) 951-0270

Quintin F. Lindsmith, Esq.
*Pending Admission Pro Hac Vice*
Bricker & Eckler LLP
100 South Third Street
Columbus, OH 43215
Telephone: (614) 227-8802

*Attorneys for Nationwide Life Insurance Company and Nationwide Mutual Insurance Company*