# Lowenstein
# Sandler LLP

Ira M. Levee
Of Counsel

65 Livingston Avenue
Roseland, NJ 07068
T  973 597 2480
F  973 597 2481
ilevee@lowenstein.com

January 28, 2013

**VIA FEDEX**

Honorable James M. Peck, U.S.B.J.
United States Bankruptcy Court
One Bowling Green
New York, New York 10004

Re:   **Lehman Brothers Holding, Inc.**
      **Case No. 08-13555(JMP)**
      **Doc. No. 33805**
      **Debtors' 183rd Omnibus Objection to Claims**
      **Hearing Date: January 30, 2013 at 10:00 a.m.**

Dear Judge Peck:

The above referenced claim objection as it relates to the Debtors' request to subordinate the claim of the Boilermakers-Blacksmith National Pension Trust Fund ("Boilermakers") pursuant to 11 U.S.C. §510(b), is scheduled for hearing on January 30, 2013, at 10:00 a.m., before Your Honor. On behalf of Boilermakers, we submitted a *Response to Reply in Further Support of Debtors' Objection to the Boilermakers Claims Requesting Subordination Pursuant to Section 510(b) of the Bankruptcy Code* (the "Response") [Doc. No. 33805]. The Response cites to SEC Rule 191 (*see* ¶¶ 20-24) and provides a link to the SEC website where the SEC Rule and its background are discussed (*see* n.6). For the convenience of the Court, we are attaching the specific pages as referenced in paragraph 23 of the Response.

Should the Court require any additional information in this regard, we will provide same.

Respectfully submitted,

*/s/ Ira M. Levee*
Ira M. Levee

IML/lar
26060/2
01/28/13 23215174.1

**Lowenstein
Sandler**LLP

Honorable James M. Peck, U.S.B.J.                                    January 28, 2013
Page 2

cc:   Jonathan S. Henes (jonathan.henes@kirkland.com)
      Joseph Serino, Jr. (joseph.serino@kirkland.com)
      Chad J. Husnick (chad.husnick@kirkland.com)
      Christopher T. Greco (christopher.greco@kirkland.com)
      Robert Lemons (robert.lemons@weil.com)
      Mark Bernstein (mark.bernstein@weil.com)
      Dennis Dunne (ddunne@milbank.com)
      Dennis O'Donnell (dodonnell@milbank.com)
      Evan R. Fleck (efleck@milbank.com)
      Andrew B. Schwartz (Andrea.b.schwartz@usdoj.gov)

Code of Federal Regulations
  Title 17. Commodity and Securities Exchanges
    Chapter II. Securities and Exchange Commission
      Part 230. General Rules and Regulations, Securities Act of 1933 (Refs & Annos)
        General (Refs & Annos)

17 C.F.R. § 230.191

§ 230.191 Definition of "issuer" in section 2(a)(4) of the Act in relation to asset-backed securities.

Effective: March 8, 2005
Currentness

The following applies with respect to asset-backed securities under the Act. Terms used in this section have the same meaning as in Item 1101 of Regulation AB (§ 229.1101 of this chapter).

(a) The depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the "issuer" for purposes of the asset-backed securities of that issuing entity.

(b) The person acting in the capacity as the depositor specified in paragraph (a) of this section is a different "issuer" from that same person acting as a depositor for another issuing entity or for purposes of that person's own securities.

**Credits**
[70 FR 1615, Jan. 7, 2005]

SOURCE: 62 FR 24573, May 6, 1997; 63 FR 6384, Feb. 6, 1998; 63 FR 13943, 13984, March 23, 1998; 64 FR 61449, Nov. 10, 1999; 65 FR 47284, Aug. 2, 2000; 66 FR 8896, 9017, Feb. 5, 2001; 67 FR 230, Jan. 2, 2002; 67 FR 13536, March 22, 2002; 67 FR 19673, April 23, 2002; 68 FR 57777, Oct. 6, 2003; 72 FR 20414, April 24, 2007; 72 FR 71566, Dec. 17, 2007; 76 FR 4243, Jan. 25, 2011; 76 FR 46617, Aug. 3, 2011; 76 FR 71876, Nov. 21, 2011; 76 FR 81805, Dec. 29, 2011, unless otherwise noted.

AUTHORITY: 15 U.S.C. 77b, 77b note, 77c, 77d, 77f, 77g, 77h, 77j, 77r, 77s, 77z-3, 77sss, 78c, 78d, 78j, 78*l*, 78m, 78n, 78*o*, 78*o*-7 note, 78t, 78w, 78*ll*(d), 78mm, 80a-8, 80a-24, 80a-28, 80a-29, 80a-30, and 80a-37, unless otherwise noted.

Current through January 3, 2013; 78 FR 644

End of Document    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

**SECURITIES AND EXCHANGE COMMISSION**

**17 CFR PARTS 210, 228, 229, 230, 232, 239, 240, 242, 245 and 249**

**[RELEASE NOS. 33-8518; 34-50905; File No. S7-21-04]**

**RIN 3235-AF74**

**ASSET-BACKED SECURITIES**

**AGENCY:** Securities and Exchange Commission.

**ACTION:** Final rule; request for comment.

**SUMMARY:** We are adopting new and amended rules and forms to address comprehensively the registration, disclosure and reporting requirements for asset-backed securities under the Securities Act of 1933 and the Securities Exchange Act of 1934. The final rules and forms accomplish the following: update and clarify the Securities Act registration requirements for asset-backed securities offerings, including expanding the types of asset-backed securities that may be offered in delayed primary offerings on Form S-3; consolidate and codify existing interpretive positions that allow modified Exchange Act reporting that is more tailored and relevant to asset-backed securities; provide tailored disclosure guidance and requirements for Securities Act and Exchange Act filings involving asset-backed securities; and streamline and codify existing interpretive positions that permit the use of written communications in a registered offering of asset-backed securities in addition to the statutory registration statement prospectus. We also request additional comment regarding the appropriate treatment of certain structured securities that do not meet our definition of "asset-backed security."

**DATES:** Effective Date: [insert date 60 days after publication in the Federal Register].

Comment Date: Comments regarding the request for comment in Section III.A.2.a. of this document and the Form 12b-25 "collection of information" requirement, within the meaning of

D[24] under the Exchange Act.

## Table of Contents

I.  Overview
    A.  What are Asset-Backed Securities?
    B.  Securities Act Registration
    C.  Disclosure
    D.  Communications during the Offering Process
    E.  Ongoing Reporting under the Exchange Act
    F.  Other Miscellaneous Amendments

II. Background and Development of ABS and Regulatory Treatment

III. Discussion of the Amendments
    A.  Securities Act Registration
        1.  Current Requirements
        2.  Definition of Asset-Backed Security
            a.  Approach and Supplemental Request for Comment for other Structured Securities
            b.  Basic Definition
            c.  Nature of the Issuing Entity
            d.  Delinquent and Non-Performing Pool Assets
            e.  Lease-Backed Securitizations and Residual Values
            f.  Exceptions to the "Discrete" Requirement
        3.  Securities Act Registration Statements
            a.  Form Types
            b.  Presentation of Disclosure in Base Prospectuses and Prospectus Supplements
            c.  Form S-3 Eligibility Requirements for ABS
            d.  Determining the "Issuer" and Required Signatures
        4.  Foreign ABS
        5.  Exclusion from Exchange Act Rule 15c2-8(b) for Form S-3 ABS
        6.  Registration of Underlying Pool Assets
            a.  Current Requirements
            b.  When Registration Is Required
            c.  Exceptions from Disclosure and Delivery Conditions and Form S-3 Eligibility Requirements
        7.  Market-Making Transactions

---

[24] 17 CFR 249.312.

B. Disclosure
   1. Regulation AB
   2. Forepart of Registration Statement and Prospectus
   3. Transaction Parties
      a. Sponsor
      b. Depositor
      c. Issuing Entity and Transfer of Asset Pool
      d. Servicers
      e. Trustees
      f. Originators
      g. Other Transaction Parties and Scope of Disclosure
   4. Static Pool Information
      a. Disclosure Required
      b. Method of Presentation
   5. Pool Assets
      a. Pool Composition
      b. Sources of Pool Cash Flow
      c. Changes to the Asset Pool
      d. Rights and Claims Regarding the Pool Assets
   6. Transaction Structure
   7. Significant Obligors
   8. Credit Enhancement and other Support
   9. Other Basic Disclosure Items
      a. Tax Matters
      b. Legal Proceedings
      c. Affiliations and Certain Relationships and Related Transactions
      d. Ratings
      e. Reports and Additional Information
   10. Alternatives to Present Third Party Financial Information
      a. Incorporation by Reference
      b. Reference Information

C. Communications during the Offering Process
   1. ABS Informational and Computational Material
      a. Current Requirements
      b. Exemptive Rule
      c. Definition of ABS Informational and Computational Material
      d. Conditions for Use
      e. Filing Requirements
   2. Research Reports
      a. Current Requirements
      b. ABS Research Report Safe Harbor
   3. Other Communications during the Offering Process

7

    D.    Ongoing Reporting under the Exchange Act
        1.    Current Requirements
        2.    Determining the "Issuer" and Operation of the Section 15(d) Reporting Obligation
        3.    Reporting on EDGAR
        4.    Distribution Reports on Form 10-D
            a.    New Form 10-D and Deadline for Filing
            b.    Signatures
            c.    Content
        5.    Annual Reports on Form 10-K
        6.    Certifications under Section 302 of the Sarbanes-Oxley Act
        7.    Report on Assessment of Compliance with Servicing Criteria and Accountant's Attestation
            a.    Background
            b.    Our Proposal and Overview of Revised Approach
            c.    Assessment and Attestation of Servicing Compliance
            d.    Attestation Report on Assessment of Compliance
        8.    Current Reporting on Form 8-K
            a.    Items Requiring Current Disclosure
            b.    Clarifying Amendments to Existing Items
            c.    New Items
            d.    Safe Harbor and Eligibility to Use Form S-3
        9.    Other Exchange Act Reporting Amendments
            a.    Exclusion from Form 10-Q
            b.    Exemptions from Section 16
            c.    Transition Reports

    E.    Other Miscellaneous Amendments

    F.    Transition Period

IV.    Paperwork Reduction Act
V.    Cost-Benefit Analysis
VI.    Consideration of Burden on Competition and Promotion of Efficiency, Competition and Capital Formation
VII.    Regulatory Flexibility Analysis Certification
VIII.    Statutory Authority and Text of Rule and Form Amendments

**I.    Overview**

    **A.    What are Asset-Backed Securities?**

On May 3, 2004, we issued proposals to address comprehensively the registration,

disclosure and reporting requirements for asset-backed securities, or ABS, under the Securities Act and the Exchange Act.[25] We received over 50 comments in response to our proposals.[26] Commenters expressed overall support for our proposals to establish a separate framework for the registration and reporting of asset-backed securities due to differences between asset-backed securities and other securities.[27] The final rule and form amendments we adopt today have been revised, as discussed in this release, to incorporate a number of changes recommended by commenters.

Asset-backed securities are securities that are backed by a discrete pool of self-liquidating financial assets. Asset-backed securitization is a financing technique in which financial assets, in many cases themselves less liquid, are pooled and converted into instruments

---

[25] See Release No. 33-8419 (May 3, 2004) [69 FR 26650] (the "Proposing Release").

[26] The public comments we received and a summary of the comments prepared by our staff (the "Comment Summary") are available for inspection in our Public Reference Room at 450 Fifth Street, NW, Washington, DC 20549 in File No. S7-21-04, or may be viewed at http://www.sec.gov/rules/proposed/s72104.shtml.

[27] See, e.g., Letters of AIG Credit Corp. ("AIG"); Allen & Overy ("A&O"); American Bar Association ("ABA"); American Financial Services Association ("AFSA"); American Institute of Certified Public Accountants ("AICPA"); American Bankers Association ("Am. Bankers"); American Society of Corporate Secretaries ("ASCS"); American Securitization Forum ("ASF"); Australian Securitisation Forum ("Aus. SF"); Joint letter of American Honda Finance Corporation, DaimlerChrysler Services North America LLC, Ford Motor Credit Company, General Motors Acceptance Corporation, and Navistar Financial Corporation ("Auto Group"); Bond Market Association ("BMA"); Bank of America Corporation ("BOA"); Capital One Financial Corporation ("Capital One"); CFA Institute ("CFAI"); Citigroup Global Markets, Inc. ("CGMI"); Citigroup Inc. ("Citigroup"); Commercial Mortgage Securities Association ("CMSA"); Ernst & Young LLP ("E&Y"); European Securisation Forum ("ESF"); Fidelity Management & Research Company ("FMR"); First Marblehead Corporation ("First Marblehead"); Financial Services Roundtable ("FSR"); Investment Company Institute ("ICI"); Jones Day; JPMorganChase & Co. ("JPMorganChase"); Kutak Rock LLP ("Kutak"); Mortgage Bankers Association ("MBA"); MBNA Corporation ("MBNA"); Metropolitan Life Insurance Company ("MetLife"); Moody's Investors Service ("Moody's"); PriceWaterhouseCoopers LLP ("PWC"); Joint letter of Sallie Mae., Inc. and Nelnet, Inc. ("Sallie Mae"); State Street Global Advisors ("State Street"); Toyota Motor Credit Corporation ("TMCC"); UBS Securities LLC ("UBS"); U.S. Bank National Association ("US Bank"); and Wells Fargo Bank, National Association ("Wells Fargo").

9

that may be offered and sold in the capital markets.[28] In a basic securitization structure, an entity, often a financial institution and commonly known as a "sponsor," originates or otherwise acquires a pool of financial assets, such as mortgage loans, either directly or through an affiliate. It then sells the financial assets, again either directly or through an affiliate, to a specially created investment vehicle that issues securities "backed" or supported by those financial assets, which securities are "asset-backed securities." Payment on the asset-backed securities depends primarily on the cash flows generated by the assets in the underlying pool and other rights designed to assure timely payment, such as liquidity facilities, guarantees or other features generally known as credit enhancements. The structure of asset-backed securities is intended, among other things, to insulate ABS investors from the corporate credit risk of the sponsor that originated or acquired the financial assets.

The ABS market is fairly young and has rapidly become an important part of the U.S. capital markets. One source estimates that U.S. public non-agency ABS issuance grew from $46.8 billion in 1990 to $416 billion in 2003.[29] Another source estimates 2003 new issuance closer to $800 billion.[30] ABS issuance is on pace to exceed corporate debt issuance in 2004.[31]

---

[28] "Securitization" is a commonly used term to describe this financing technique, although other terms, such as "asset-backed financing," also are used.

[29] See Bank One Capital Markets, Inc., 2004 Structured Debt Yearbook.

[30] See Asset Securitization Report (pub. by Thomson Media Inc). See also Asset-Backed Alert (pub. by Harrison Scott Publications). The four primary asset classes currently securitized are residential mortgages, automobile receivables, credit card receivables and student loans, which represented approximately 52%, 19%, 16% and 9% of 2003 new issuance, respectively.

[31] See, e.g., Jennifer Hughes and David Wells, "Asset-Backed Bonds Hit Record," Financial Times, Nov. 11, 2004, at 17; Aaron Lucchetti, "Indebted Consumers Reshape the Bond Market – Betting on Americans' Ability To Pay Their Bills May Pose Risks If Interest Rates Move Higher," Wall St. J., Sep. 14, 2004, at C1; and Christine Richard,

While residential mortgages were the first financial assets to be securitized, non-mortgage related securitizations have grown to include many other types of financial assets, such as credit card receivables, auto loans and student loans. Before the Proposing Release, the Commission had not previously addressed on a comprehensive basis the regulatory treatment of asset-backed securities under the Securities Act or the Exchange Act.

Asset-backed securities and ABS issuers differ from corporate securities and operating companies. In offering ABS, there is generally no business or management to describe. Instead, information about the transaction structure and the characteristics and quality of the asset pool and servicing is often what is most important to investors. Many of the Commission's existing disclosure and reporting requirements, which are designed primarily for corporate issuers and their securities, do not elicit relevant information for most asset-backed securities transactions. Over time, Commission staff, through no-action letters and the filing review process, have developed a framework to address the different nature of asset-backed securities while being cognizant of developments in market practice.

With a few exceptions, our proposals were designed to consolidate and codify current staff positions and industry practice. After carefully evaluating the public comment received, we are adopting new rules and amendments to address the four primary regulatory areas affecting asset-backed securities that were the subject of the proposal: Securities Act registration; disclosure; communications during the offering process; and ongoing reporting under the Exchange Act.

---

"US Asset-Backeds: No Slowdown As Consumers Borrow," Dow Jones Capital Markets Report, Sep. 17, 2004. See also The Bond Market Association, Bond Market Research Quarterly, November 2004.

11

permit separate reports from each party that performs the actual servicing or administration functions. Both the reports containing the assertion of compliance and the accountant's attestation reports will be required to be filed with the report on Form 10-K. We also are revising the form of the Sarbanes-Oxley Section 302 certification to include an express statement by the certifying party as to whether reports have been filed covering the entire servicing function.

As with the Securities Act, we are adopting our proposed specification that the depositor is the "issuer" for purposes of Exchange Act reporting regarding asset-backed securities. We also are specifying who may sign the various Exchange Act reports. As proposed, either the depositor or the servicer may sign the reports on Form 10-K, Form 10-D and Form 8-K. A designated officer of that same party also must sign the Sarbanes-Oxley Section 302 certification. We also are clarifying how filings regarding asset-backed securities are to be filed on EDGAR and the operation of the reporting obligation for asset-backed securities under Section 15(d) of the Exchange Act,[43] including codifying as proposed several interpretive positions as to when the obligation starts and when it may be suspended.

### F. Other Miscellaneous Amendments

Finally, as discussed in the Proposing Release, we are making several miscellaneous and technical amendments to our rules and forms to accommodate the new rules and to update references regarding asset-backed securities.

---

[43] 15 U.S.C. 78o(d).

as information about unaffiliated servicers.[153]

### d.   Determining the "Issuer" and Required Signatures

We are clarifying as proposed which entity is considered the "issuer" under the Securities Act with respect to an offering of asset-backed securities. The Securities Act defines the term "issuer" in part to include every person who issues or proposes to issue any security, except that with respect to certificates of deposit, voting-trust certificates, or collateral trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions), the term issuer means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provision of the trust or other agreement or instrument under which the securities are issued.[154] Under current staff positions, the depositor must sign the Securities Act registration statement for an ABS offering.

We are clarifying that the depositor for the asset-backed securities, acting solely in its capacity as depositor to the issuing entity, is the "issuer" for purposes of the asset-backed

---

[153] Finally, we note that the need to rely on third party information certainly is not unique to ABS reporting, although we realize the extent of third party information that may be material for an ABS offering may be different from a non-ABS issuer. We also understand that informational and other aspects of ABS transactions are uniquely contractually based and that the long transition period should allow for contractual arrangements consistent with our adopted requirements.

[154] See Section 2(a)(4) of the Securities Act (15 U.S.C. 77b(a)(4)).

securities of that issuing entity.[155] Further, our new rule specifies that the person acting in its capacity as the depositor for the issuing entity of an asset-backed security is a different "issuer" from that same person acting as a depositor for any other issuing entity or for purposes of that person's own securities. As the definition of asset-backed security requires the issuing entity to be a restricted special purpose investment vehicle, the new rule will apply regardless of the issuing entity's form of organization.

By clarifying that the person acting as the depositor in its capacity as depositor to the issuing entity is a different "issuer" from that person in respect of its own securities, we are making clear our longstanding position that any applicable exemptions from registration that person may have with respect to its own securities are not applicable to the asset-backed securities.[156] Similarly, the reporting history with respect to a particular class of asset-backed securities does not affect Form S-3 eligibility with respect to the depositor's or sponsor's own securities, although as discussed above we are requiring that the reporting history with respect to certain prior ABS transactions can affect continued Form S-3 eligibility for future ABS registration statements.

---

[155] See Securities Act Rule 191 (17 CFR 230.191). We are adopting an identical rule for purposes of the Exchange Act. See Exchange Act Rule 3b-19 (17 CFR 240.3b-19) and Section III.D.2. As noted in Section III.B.3.b., we are defining "depositor" as the depositor who receives or purchases and transfers or sells the pool assets to the issuing entity. For asset-backed securities where there is not an intermediate transfer of the assets from the sponsor to the issuing entity, the term "depositor" refers to the sponsor. See Item 1101(e) of Regulation AB. It should be noted that the definition of "issuer" under the Investment Company Act is different from the definitions in the Securities Act and the Exchange Act. See 15 U.S.C. 80a-2(a)(22). Our final rules do not affect that definition.

[156] For example, in an ABS transaction where there is not an intermediate transfer of the pool assets from the sponsor to the issuing entity and the sponsor is a bank, the rule does not mean that because the bank is acting as depositor, the asset-backed security is then a "security issued ... by a bank" and thus exempt from registration under Section 3(a)(2) of the Securities Act (15 U.S.C. 77c(a)(2)). See, e.g., Bank of America National Trust & Savings Ass'n (May 19, 1977).

Consistent with our proposal, we also are codifying in the general instructions for Forms S-1 and S-3 that the registration statement must be signed, as is currently the case, by the depositor, the depositor's principal executive officer or officers, principal financial officer and controller or principal accounting officer, and by at least a majority of the depositor's board of directors or persons performing similar functions. As proposed, we are not requiring the issuing entity to sign if formed prior to effectiveness as such a requirement would be superfluous.

### 4.  Foreign ABS

As we described in the Proposing Release, while not as prevalent as in the U.S., securitization by foreign issuers has been developing rapidly.[157] However, asset-backed securities issued by a foreign issuer[158] or that are backed by foreign assets raise special issues due to potential differences in the legal and regulatory regime of the relevant home jurisdiction. Differing laws and practices regarding banking regulation, accounting, bankruptcy, property rights, secured transactions, "true sale," tax, asset servicing, consumer protection and other matters may alter fundamentally the basic principles underlying an "asset-backed security." Also, given the early stage of securitization in some foreign markets, ABS may be used not just as an alternative funding source, but more for capital management, including efforts to "prune" a

---

[157] For example, one source estimates that non-U.S. ABS issuance grew from $93 billion in 2000 to $185 billion in 2003. See Asset-Backed Alert (pub. by Harrison Scott Publications).

[158] The term "foreign issuer" is defined in Securities Act Rule 405 (17 CFR 230.405) as "any issuer which is a foreign government, a national of any foreign country or a corporation or other organization incorporated or organized under the laws of any foreign country."

83

participation in structuring the transaction also is required, including whether the sponsor or an affiliate is responsible for the selection of the pool assets.

### b. Depositor

We are adopting our proposed definition of "depositor" as the person who receives or purchases and transfers or sells the pool assets to the issuing entity. For asset-backed securities transactions where there is not an intermediate transfer of assets from the sponsor to the issuing entity, the sponsor is the depositor.[213]

Consistent with our proposal, if the depositor was not the same entity as the sponsor, separate identifying information about the depositor will be required, including information on the ownership structure of the depositor and the general character of any activities of the depositor other than securitizing assets.[214] In addition, if material and materially different from the sponsor, information similar to that discussed above regarding the depositor's securitization program and its experience would be required. Finally, disclosure will be required regarding any continuing duties of the depositor after issuance of the asset-backed securities with respect to the asset-backed securities or the pool assets.

### c. Issuing Entity and Transfer of Asset Pool

As we explained in the Proposing Release, the nature of the issuing entity and the transfer of the pool assets is elemental to the concept of securitization. We are adopting our proposed

---

[213] As noted in Section III.A.2.c., some ABS transactions, such as issuance trusts, are structured such that the asset pool consists of one or more financial assets that represent an interest in or the right to the payments or cash flows of another asset pool. In an issuance trust structure, the collateral trust certificate that is deposited into the asset pool comes from the master trust. For ABS transactions where the person transferring or selling the pool assets is itself a trust, we are specifying, as proposed, that the "depositor" of the issuing entity is the depositor of that trust.

[214] See Item 1106 of Regulation AB.

definition of "issuing entity" as the trust or other entity created at the direction of the sponsor or depositor that owns or holds the pool assets and in whose name the asset-backed securities supported or serviced by the pool assets are issued.

Consistent with our proposal, disclosure will be required regarding both the nature of the issuing entity and the sale or transfer of the pool assets.[215] Information about the issuing entity itself will include a description of its permissible activities, restrictions on activities and capitalization. If the issuing entity has its own executive officers, board of directors or persons performing similar functions, disclosure required by Items 401, 402, 403 and 404 of Regulation S-K will be required.

The governing documents of the issuing entity will need to be filed as an exhibit.[216] This is consistent with the requirement in Item 601 of Regulation S-K of filing all governing documents and material agreements for the offering, which for ABS includes, among other things and as applicable depending on the transaction's structure, the pooling and servicing agreement, the indenture and related documents. The management or administration agreement for the issuing entity also must be filed in addition to describing its material terms in the prospectus.[217]

---

[215] See Item 1107 of Regulation AB.

[216] Item 1100(f) of Regulation AB specifies that where agreements or other documents are specified by Regulation AB to be filed as exhibits to a Securities Act registration statement, such final agreements or other documents, if applicable, may be incorporated by reference as an exhibit to the registration statement, such as by filing a Form 8-K in the case of offerings registered on Form S-3.

[217] Any such description should avoid legal boilerplate and include the specific material duties imposed on the parties and not generic descriptions such as "various administrative services."