**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Robert J. Lemons
+1 212 310 8924
robert.lemons@weil.com

BY HAND DELIVERY

January 29, 2013

Honorable James M. Peck
United States Bankruptcy Judge
One Bowling Green
New York, New York 10004

Re: *In re Lehman Brothers Holdings Inc., et al.*, 08-13555 (JMP) (the "Chapter 11 Cases")

Dear Honorable Sir:

  We are writing to you on behalf of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated chapter 11 debtors with respect to whether retirees (the "Retirees") may have vested benefits under the Lehman Brothers Group Benefit Plan (the "Plan").

  A hearing was held on November 16, 2011 with respect to the Joint Motion of LBHI and James W. Giddens, the Trustee for the Liquidation of Lehman Brothers Inc. under the Securities Investor Protection Act, as amended ("SIPA"), pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedures for (I) Authorization and Approval of a Stock Purchase Agreement Regarding the VEBA and (II) Authorization and Approval of a Settlement Regarding the Same (the "Motion"), Chapter 11 Cases ECF No. 21109; SIPA Proceeding ECF No. 4654. At the conclusion of the hearing, the Court indicated that it was prepared to grant the narrow, limited relief that LBHI sought in the Motion, but requested that LBHI independently consider addressing concerns raised by a limited number of Retirees who believe that they have vested medical benefits. In a letter to the Court, LBHI represented that it intended to retain special counsel tasked with undertaking an independent analysis of whether or not, based on any relevant documentation, any Retirees have vested medical benefit entitlements. LBHI represented that such counsel would provide its conclusions to both LBHI and the Retirees, and would file a report with the Court describing the results.

  Dechert LLP ("Dechert") was retained in connection with these matters and was provided with Plan-related documentation by LBHI. Dechert prepared a report of its conclusions (the "Report"), which is attached hereto.

Honorable James M. Peck  
January 29, 2013  
Page 2

**Weil, Gotshal & Manges LLP**

      The Motion represented that LBHI would seek an exemption from the Department of Labor to obtain reimbursement for eligible expenses it paid for a total of approximately $25 million. LBHI is no longer seeking an exemption and will not endeavor to obtain reimbursement.

      We are available should the Court have any questions regarding the foregoing.

Respectfully submitted,

Robert J. Lemons



# Dechert
LLP

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**ANDREW L. ORINGER**

andrew.oringer@dechert.com
+1 212 698 3571  Direct
+1 212 698 3599  Fax

January 28, 2013

TO:    Honorable James M. Peck
United States Bankruptcy Court
One Bowling Green
New York, NY 10004

      Re:    In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP) (Jointly Administered); In re Lehman Brothers Inc., Case No. 08-01420 (JMP) (SIPA)

Dear Honorable James M. Peck:

    Reference is made to the joint motion dated October 21, 2011 (the "Motion") to the U.S. Bankruptcy Court, Southern District of New York (the "Court") by Lehman Brothers Holdings Inc. (the "Company") and its affiliated debtors and James W. Giddens (the "SIPA Trustee") for the approval of the sale of 100% of the stock of Aceso Holdings Inc. by the SIPA Trustee to the Company, including a settlement and release of all claims relating to a certain health care trust. We understand that, during a hearing held in respect of the Motion on November 16, 2011, the Court requested the Company to consider addressing the question of whether any individuals may have vested retiree benefits under the Lehman Brothers Group Benefit Plan (the "Plan"). Dechert LLP has been retained by the Company to serve as special counsel to the Company in connection therewith, and this letter describes our findings regarding that question.

**I.**    **Facts**

    The Company has maintained the Plan generally to provide a variety of health benefits to eligible employees of the Company and its affiliates (collectively, "Lehman Brothers"), including certain retiree health benefits. Under Section 4.3 of the Plan, the Company reserved the right to "amend or terminate the Plan and any Arrangement included therein at any time and from time to time, in whole or in part, both with respect to current employees and former employees" and "[n]o individual shall have any vested right to a continuation of any Arrangement or component thereof." Similarly, the related summary plan descriptions ("SPDs") that we have reviewed stated generally that the Plan may be amended or terminated.

**Dechert**
LLP

Page 2

In connection with the bankruptcy proceedings relating to the Company, the Company acted to eliminate all retiree coverage under the Plan effective December 31, 2009. The Company thereafter arranged for Aetna Life Insurance Company ("Aetna") to offer substitute health care coverage to certain retirees on an individual basis. The substitute coverage for 2010, 2011 and 2012 provided by Aetna has ultimately been provided on a partially Company-subsidized basis. We understand that the Company's subsidization of the Aetna-insured individual coverage will end on December 31, 2013.

In connection with the Motion, the U.S. Department of Labor and certain Lehman Brothers retirees generally raised the question of whether certain individuals may have had the right to continue participating in Company-provided retiree health coverage notwithstanding the reservation of rights in the Plan to amend or terminate the Plan. The Court requested the Company to review the question of whether any individuals may have vested retiree benefits under the Plan. As indicated above, we have been retained by the Company to assist the Company with that review.

## II. Legal Background[1]

Subtitle B of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which generally governs "welfare" plans such as the Plan, *see* ERISA §§ 4 (generally setting out ERISA's scope), 3(1) (defining a "welfare plan"), 514 (generally setting out ERISA's preemptive effect), does not provide for any vesting standards applicable to welfare plans. *See also* ERISA § 201 (limiting to "pension plans" the scope of Part 2 of Subtitle B of Title I of ERISA, which includes the vesting standards of Section 203 of ERISA). Thus, as a general matter, employers would be free under ERISA to modify or terminate such plans. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)); *Schonholz v. Long Isl. Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996), *cert. denied*, 519 U.S. 1008 (1996).[2]

---

[1] We note that the Court is in the Second Circuit, and we have proceeded here accordingly.

[2] We note that at least one Plan SPD states that the Plan may be amended or terminated "at the sole discretion of the Employee Benefit Plans Committee" (the "Committee"). While Section 4.3 of the Plan, in reserving the right of the Company to amend or terminate the Plan, does not delegate that right to the Committee, a question could nevertheless arise as to whether a procedural provision in the SPD regarding plan amendment or termination is enforceable, or whether the existence or absence of any Committee action is otherwise somehow relevant to the elimination of retiree coverage under the Plan. Under *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), the Plan's procedures generally govern the manner in

(footnote continued)



Page 3

However, an employer may, by its own actions, limit the ability to reduce or terminate benefits in certain circumstances. For example, it has been indicated that, if an employer makes a specific written statement that is reasonably susceptible to interpretation as a promise to vest benefits, then such promise may enforceably bind the employer. *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 84 (2d Cir. 2001), *cert. denied*, 537 U.S. 1170 (2003) (quoting *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999)). However, it has also been held that benefits are vested only if there is an affirmative language promising vested benefits, and that the absence of such language would not generally be viewed as indicating an intent to vest benefits. *See, e.g., Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 61 (2d Cir. 2006); *Joyce*, 171 F.3d at 135. Even where an employer makes an affirmative promise to vest benefits, but the employer expressly reserves the rights to reduce or terminate benefits in the same document, such reservation of rights may negate any inference that the employer intended to vest benefits. *See Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 99 (2d Cir. 2001), *cert. denied*, 537 U.S. 1170 (2003).

Generally, to establish a claim for vested health benefits, it may be necessary that there be an affirmative written promise to vest benefits in a plan document such as the written plan, or in the related SPD. *See, e.g., Coriale v. Xerox Corp.*, No. 11-1724-cv (2d Cir. Aug. 3, 2012); *Bouboulis*, 442 F.3d at 60. However, any Plan-related written communications may be considered in determining whether benefits have vested, if such communications are sufficiently formal so as to be treated as binding statements under the plan. *See Bouboulis*, 442 F.3d at 61-62.

---

(footnote continued)
which a plan is amended. Further, under *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), an SPD generally is not itself a plan document, *but see Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011) (reading *Amara* narrowly to stand for the proposition that (i) the terms of an SPD are not enforceable when they conflict with governing plan documents, or (ii) an SPD cannot create terms that are not authorized by, or reflected in, governing plan documents), although we note that, here, Section 2.2 of the Plan states that the SPD is incorporated by reference into the Plan. It is by no means clear to us on the instant facts that, even if the Committee did not act to amend the Plan to eliminate the retiree coverage thereunder, the effectiveness of the 2009 Plan amendment would be compromised merely on account of the procedural provision noted above in the SPD that refers to the Committee. Regardless, however, present outside Company counsel, which served as such during the relevant period, has stated to us that "the record is clear that the . . . Committee exercised its authority to terminate [the retiree medical benefits under the Plan] as of 12/31/2009."



Page 4

### III. Analysis

In connection with our review, we have examined the Plan, related SPDs, enrollment forms and other Plan-related communication with which we have been provided, in the context of the ERISA rules noted above. Having reviewed this material and relevant legal authority, we have not found any Plan or Plan-related documentation that would cause us to believe that the Company has made any commitments to provide vested coverage to any Lehman Brothers retirees.

We note that we have been provided with certain Plan-related communication where there was some mention of continuing benefits to certain individuals. In two particular individual letters (the "Spousal Letters"), it was stated that the surviving spouse will be "entitled to lifetime (medical) coverage." The Spousal Letters do not mention any specific type of coverage or level of benefits that are allegedly promised to certain individuals – one Spousal Letter merely states that the surviving spouse will be charged an individual premium for continuing coverage and the other Spousal Letter informs the recipients that the surviving spouse will be mailed information about coverage and an enrollment form upon the retiree's death. Each of the Spousal Letters appears to be a response to an individual inquiry regarding coverage of the surviving spouse under the Plan.

In this regard, *Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583 (W.D.N.Y. 2011), *aff'd*, No. 11-1724-cv (2d Cir. Aug. 3, 2012) is arguably relevant. There, retirees challenged a series of decisions by Xerox Corporation ("Xerox") to shift the cost of health coverage to retirees. Specifically, the plaintiffs asserted that Xerox promised them free lifetime health benefits in a number of written communications, including a guidebook issued by Xerox which included a statement that the retiree and his or her spouse will participate in the health plans "for the rest of their lives," and a letter to an employee by a benefit services officer, which stated that "Xerox is required to provide you with lifetime medical and dental coverage as a condition of the retirement benefits policy." As an initial matter, the court held that many of the documents relied upon by the plaintiffs could not be considered plan documents because they were similar to the informal communications that had been held in other cases not to constitute plan documents. *See Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492-93 (2d Cir. 1988) (filmstrips and other presentations that used language such as "lifetime" or "at no cost" but did not purport to be complete binding statements of plan terms did not override the express reservations of the right to amend or terminate the plan in the SPD); *Alday v. Container Corp. of America*, 906 F.2d 660, 665-66 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991) (individual "Summary of Personnel Benefits" booklets and letters sent to retiring employees did not qualify as plan documents); *see also Bouboulis*, 442 F.3d at 62-63 (a letter from the union president on official stationery sent to all participants in the union-staff health plan detailing modifications to the plan "could potentially be



construed as a statutorily required notice of a material modification, and thus sufficiently formal to be considered"). The court held that, even if such documents could be considered plan documents, mere assurances therein that retirees (or their spouses) would participate in the plan for the rest of their lives, without a promise of any particular level of benefits or a promise never to reduce benefits, did not create an enforceable promise of vested benefits.

Here, the Spousal Letters state that certain surviving spouses are entitled to lifetime benefits without further promising any particular level of benefits or a promise never to reduce benefits. It would seem in a number of respects that the Spousal Letters here are similar to the guidebook and the letter discussed in the *Coriale* case. *See also Peterson v. Windham Community Memorial Hospital*, 803 F. Supp. 2d 96, 104 (D. Conn. 2011) (although several letters and memoranda addressed to all employees and retirees included language bearing on the duration of benefits, they did not guarantee receipt of specified benefits and could not be reasonably interpreted as creating an enforceable promise to vest benefits).

We have also been provided with a certain settlement and general release between Lehman Brothers Inc. and a former employee in connection with the termination of his employment (the "Employee Settlement"), which provides in relevant part that the former employee "shall continue to participate in the [Plan], pursuant to the terms and conditions of that Plan." The Employee Settlement does not otherwise include an affirmative promise to provide a specific type of coverage or level of benefits.

In this regard, *Adams v. Tetley USA, Inc.*, 363 F. Supp. 2d 94 (D. Conn. 2005) is arguably relevant. There, the plaintiffs who retired pursuant to an early retirement agreement with Tetley USA, Inc. ("Tetley") challenged Tetley's decision to terminate its retiree medical benefit plan, asserting that Tetley promised them lifetime health benefits as consideration for early retirement. The court held that Tetley did not promise vested benefits to any early retirees because each of the early retirement agreements made reference to the retiree benefit plan maintained for regular retirees, which in turn was subject to Tetley's express reservation of rights to terminate the plan. By way of contrast, in *Boban v. Bank Julius Baer Postretirement Health and Life Ins. Program*, 723 F. Supp. 2d 560 (S.D.N.Y. 2010), in which plaintiffs challenged the defendant bank's decision to increase retirees' share of the premium, the court held that the defendant might have promised the plaintiffs an enforceable right to a specific contribution rate for retiree health coverage. In so holding, the court observed that each of their separation agreements with the defendant specified the required contribution rate applicable to the retiree health coverage, without making reference to a plan document which allegedly included a reservation of right to amend the plan. The court further noted that the separation agreements might be sufficiently formal to contain an enforceable promise because parties have not shown that a formal plan document existed at the time the separation agreements were signed.



Page 6

      Here, the Employee Settlement states that the former employee will continue to participate in the Plan, which in turn is subject to the Company's reservation of rights to amend or terminate the Plan. It would seem in a number of respects that the Employee Settlement is akin to the early retirement agreements in the *Tetley* case.

## IV.  Conclusion

      We have not found any written communication that would cause us to believe that the Company has made a promise to provide vested retiree coverage under the Plan.

      \*     \*     \*

      Should the Court have any questions or concerns regarding the matter discussed herein, please do not hesitate to contact the undersigned (1-212-698-3571).

Respectfully submitted,

*[signature]*

Andrew L. Oringer

cc:    Michael K. Kam, Esq.
        Ms. Carol L. Rado
        Ms. Patricia Vozza