WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC. and LEHMAN COMMERCIAL PAPER INC., | |
| Plaintiffs, | Adv. Proc. No. 12-01668 (JMP) |
| v. | |
| STANDARD CHARTERED BANK and STANDARD CHARTERED BANK KOREA (f/k/a STANDARD CHARTERED FIRST BANK KOREA), | |
| Defendants. | |

**STIPULATION, AGREEMENT AND ORDER
AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN
COMMERCIAL PAPER INC., STANDARD CHARTERED BANK, AND
STANDARD CHARTERED BANK KOREA REGARDING SETTLEMENT
OF ADVERSARY PROCEEDING AND ALLOWANCE OF CERTAIN CLAIMS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), on behalf of itself and as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), and Lehman Commercial Paper Inc. ("LCPI," and, together with LBHI, "Lehman"), and Standard Chartered Bank ("SCB") and Standard Chartered Bank Korea (f/k/a Standard Chartered First Bank Korea) ("SCBK," and, together with SCB, "Standard Chartered," and, together with Lehman, the "Parties"), by and through their respective attorneys, hereby stipulate and agree as follows:

**RECITALS:**

      A.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries, including LCPI, commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 08-13555 (JMP).  LCPI commenced its voluntary case with this Court on October 5, 2008.

      B.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

      C.      On August 14, 2007, LBHI and SCB entered into a lending arrangement pursuant to the Second Amended and Restated Offer of Group Facilities (as amended from time to time, the "Group Facilities Agreement") whereby certain affiliates of LBHI were provided with access to funding under a lending facility maintained by SCB and certain of its affiliates, including SCBK.  Pursuant to the Group Facilities Agreement, SCB loaned funds to seven Philippine non-debtor affiliates of LBHI (the "Philippine Borrowers"), and SCBK loaned funds

2

to a Korean non-debtor affiliate of LBHI (the "Korean Borrower," and, together with the Philippine Borrowers, the "Borrowers").

D. In connection with the Group Facilities Agreement, LBHI guaranteed the obligations of the Borrowers to SCB arising under the Group Facilities Agreement through a Guarantee of Lehman Brothers Holdings Inc., dated August 2007 (the "Guarantee").

E. On September 12, 2008, LBHI executed a pledge agreement (the "Pledge Agreement") in favor of SCB, pursuant to which LBHI purported to grant SCB a security interest in certain property (the "Collateral Interest Transfer"), namely, (i) a bond issued by HD Supply Inc., cusip number 40415RAC9, owned by LCPI, which, as of September 12, 2008, had a face amount of approximately $81.5 million and a market value of approximately $47.6 million (the "HD Supply Bond"),[1] and (ii) loans made by LCPI to Idearc, Inc. (the "Idearc Loans," and, together with the HD Supply Bond, the "Collateral"). The Pledge Agreement purportedly secured certain obligations of LBHI under the Group Facilities Agreement and the Pledge Agreement.

F. On September 12, 2008, LBHI caused its indirect subsidiary, LCPI, to transfer physical possession of the HD Supply Bond to SCB (the "HD Supply Transfer," and, together with the Collateral Interest Transfer, the "Transfers"). LCPI was not a party to the Group Facilities Agreement, the Guarantee, or the Pledge Agreement, nor was it a Borrower under the Group Facilities Agreement.

G. On July 2, 2009, this Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [ECF No. 4271]. The Bar Date Order established (i) September 22, 2009 as the general deadline for

---

[1] As of the date hereof, the HD Supply Bond has a current principal amount of $58,886,999 and bears cusip number 40415RAD7.

3

filing proofs of claim and (ii) October 22, 2009 as the deadline for completing electronic questionnaires and uploading supporting documentation and evidence of underlying claim amounts in connection with claims filed against LBHI based on guarantees (each, a "Guarantee Questionnaire").

        H.     SCB and SCBK timely filed proofs of claim against LBHI, and completed Guarantee Questionnaires, asserting secured claims in the amount LBHI is purported to owe under the Guarantee in respect of the various loans made to the Borrowers. SCB has filed a proof of claim in respect of the approximately $26 million that the Philippine Borrowers borrowed under the Group Facilities Agreement (Claim No. 29740) (the "Philippine Proof of Claim"). SCBK has filed a proof of claim in respect of the approximately $36 million that the Korean Borrower borrowed under the Group Facilities Agreement (Claim No. 29741) (the "Korean Proof of Claim," and, together with the Philippine Proof of Claim, the "Proofs of Claim"). Standard Chartered alleges that LBHI is liable for such amounts under the terms of the Guarantee.

        I.     On May 25, 2012, LBHI and LCPI commenced this adversary proceeding and claims objection against Standard Chartered (the "Adversary Proceeding").

        J.     In the Adversary Proceeding, Lehman asserted claims for (i) preferential and/or fraudulent transfers, (ii) declaratory judgment, (iii) reclassification of the Proofs of Claim, (iv) disallowance and expungement of the Korean Proof of Claim, (v) turnover, and (vi) disallowance.

        K.     The Adversary Proceeding is stayed pursuant to the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the*

4

*Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [ECF No. 12199], and subsequent orders of the Court.

    L.  After good-faith, arms'-length negotiations, the Parties, each having recognized the benefits of avoiding litigation with respect to the issues set forth herein, have agreed to resolve all of the disputes that are the subject of the Adversary Proceeding and the Proofs of Claim pursuant to the terms and conditions set forth in this stipulation, agreement and order (the "Stipulation, Agreement and Order").

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND AMONG THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

    1.  This Stipulation, Agreement and Order shall have no force or effect unless and until approved by the Court (the "Effective Date"). In the event that this Stipulation, Agreement and Order is not approved by the Court, it shall be null and void and have no force or effect, and the Parties reserve all of their respective rights in the Adversary Proceeding and with respect to the Proofs of Claim.

    2.  Upon the Effective Date, SCBK will have an allowed non-priority, senior, non-subordinated general unsecured guarantee claim against LBHI in Class 5 under the Plan in the amount of $36,405,665.49 (the "Allowed SCBK Claim") in respect of the Korean Proof of Claim.

    3.  Provided that the Effective Date occurs on or before February 1, 2013, SCBK shall be entitled to credit against the amount to be paid to LCPI pursuant to paragraph 9(b) below, the sum of $1,140,185.88, which represents the maximum amount SCBK would have received in respect of the Korean Proof of Claim, had such claim been allowed on the dates

5

of all prior distributions made by LBHI to holders of Class 5 claims under the Plan (collectively, the "Korean Catch-Up Amount"). The Korean Catch-Up Amount will be allocated by SCB and SCBK in accordance with the Group Facilities Agreement and the other loan documents.

4. No payments other than the Korean Catch-Up Amount shall be made by Lehman in respect of the Allowed SCBK Claim. SCBK shall pay to LBHI any distributions received after the Effective Date on account of the claim filed by SCBK in the Korean corporate bankruptcy proceeding (the "Korean Direct Claim") up to the amount of the Korean Catch-Up Amount within twenty (20) business days of receipt thereof.

5. Upon the Effective Date, SCB will have an allowed non-priority, senior, non-subordinated general unsecured guarantee claim against LBHI in Class 5 under the Plan in the amount of $25,607,813.99 (the "Allowed SCB Claim") in respect of the Philippine Proof of Claim.

6. Provided that the Effective Date occurs on or before February 1, 2013, (i) SCB shall be entitled to credit against the amount to be paid to LCPI pursuant to paragraph 9(b) below, the sum of $1,547,943.19, which represents the amount SCB would have received in respect of the Philippine Proof of Claim, had such claim been allowed on the dates of all prior distributions made by LBHI to holders of Class 5 claims under the Plan (collectively, the "Philippine Catch-Up Amount," and, together with the Korean Catch-Up Amount, the "Catch-Up Amounts"), and (ii) LBHI shall make additional distributions to SCB in respect of the Allowed SCB Claim in accordance with the terms of the Plan. The Philippine Catch-Up Amount and all other distributions received by SCB in respect of the Allowed SCB Claim and the Philippine Direct Claim (as defined below) will be allocated by SCB in accordance with the Group Facilities Agreement and the other loan documents.

6

7. In the event that the sum of (i) the Philippine Catch-Up Amount, (ii) all additional amounts distributed to SCB in respect of the Allowed SCB Claim in accordance with the terms of the Plan, and (iii) all amounts distributed to SCB and designated as payments of principal on account of SCB's claims in the Philippine rehabilitation proceedings and other proceedings in respect of the transactions underlying the Philippine Proof of Claim (the "Philippine Direct Claim" and, together with the Korean Direct Claim, the "Direct Claims"), exceeds the Allowed SCB Claim, SCB shall not be entitled to retain any such excess.

8. LBHI shall be entitled to its rights of subrogation relating to the Proofs of Claim as set forth in the Guarantee and the Plan.

9. Upon the Effective Date, SCBK and/or SCB, as applicable, shall remit to LCPI all principal, interest, and premium or other payments received in respect of the HD Supply Bond, which, as of November 15, 2012, aggregated $81,554,526.36, less the Catch-Up Amounts. Within five (5) business days of the date of the redemption of the HD Supply Bond, which is currently scheduled to occur on or around February 8, 2013 (the "HD Supply Redemption"), SCBK and/or SCB, as applicable, shall (a) remit all proceeds of the HD Supply Redemption to LCPI, (b) release any and all security interests on the HD Supply Bond or the proceeds thereof, and (c) waive any and all claims relating to the HD Supply Bond or the proceeds thereof; *provided*, *however*, that if the HD Supply Redemption has not occurred by February 12, 2013, SCBK and/or SCB, as applicable, shall turn over the HD Supply Bond to LCPI no later than February 15, 2013. For the avoidance of doubt, if Standard Chartered receives any amounts in respect of the HD Supply Bond after it has remitted the proceeds of the HD Supply Redemption or turned over the HD Supply Bond to LCPI, as applicable, Standard

7

Chartered shall remit any such amounts to LCPI, in each case, within five (5) business days of receipt thereof.

10. Upon the Effective Date, SCB shall release any and all security interests on the Idearc Loans and waive any and all claims thereto.

11. Within five (5) business days of LCPI's receipt of the HD Supply Bond or the proceeds of the HD Supply Redemption, as applicable, and all other amounts required to be remitted under paragraph 9 above, Lehman shall dismiss the Adversary Proceeding with prejudice.

12. Upon the Effective Date, except as to the payments and other obligations set forth herein, each Party on behalf of itself, its estate (where applicable), its successors and assigns, and any other party, person, or entity claiming under or through it, hereby generally releases, discharges, waives and acquits, unconditionally and irrevocably, each other Party and its respective current and former agents, servants, officers, directors, employees, divisions, branches, units, parents, attorneys, financial advisors, accountants, successors, predecessors, heirs, personal representatives, and assigns (each in their capacities as such) from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, counterclaims, defenses, rights of setoff, deductions, liens, losses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding fraud, bad faith or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such Party ever had or claimed to have or now has or claims to have presently or at any future date, against each other Party arising under, related to, or in connection with (i) the claims asserted in the Proofs of

Claim, (ii) the obligations set forth in the Guarantee and/or the Pledge Agreement, and (iii) the claims and causes of actions asserted in the Adversary Proceeding; *provided*, *however*, that the foregoing releases shall not (x) release the Direct Claims, (y) release the Borrowers under the Group Facilities Agreement, or (z) until the Direct Claims, the Allowed SCBK Claim, and the Allowed SCB Claim have been paid in full as set forth herein, extinguish or terminate the Group Facilities Agreement or the promissory notes or other loan documents; *provided*, *further*, that nothing contained in this paragraph 12 shall require Lehman to make any further payments to Standard Chartered in connection with the Proofs of Claim except as specifically provided herein.

13. Upon the Effective Date, Lehman shall be deemed to waive any claims against Standard Chartered under section 502(d) of the Bankruptcy Code in respect of the Proofs of Claim.

14. Upon the Effective Date, Standard Chartered shall be deemed to waive any claims against Lehman under section 502(h) of the Bankruptcy Code.

15. Except as specifically set forth in paragraphs 3 and 6 above, payment by LBHI of the amounts owing under the Proofs of Claim shall not be subject to any setoff, deduction, claim, counterclaim, or defense of any kind or nature.

16. Subject to section 8.13 of the Plan and without limiting the applicability of any subsection thereof, Standard Chartered shall provide Lehman with written notice of each distribution received on account of the Direct Claims within ten (10) business days of receipt thereof. Such written notice shall specify the portions of each distribution allocated to principal and interest, if any.

17. This Stipulation, Agreement and Order contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto.

18. This Stipulation, Agreement and Order may only be amended or otherwise modified by a signed writing executed by the Parties.

19. This Stipulation, Agreement and Order shall be binding upon and inure solely to the benefit of the Parties hereto and their respective successors and assigns. Nothing contained herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Stipulation, Agreement and Order.

20. Each person who executes this Stipulation, Agreement and Order represents that he or she is duly authorized to do so on behalf of the respective Party or Parties hereto and that each such party has full knowledge and has consented to this Stipulation, Agreement and Order.

21. This Stipulation, Agreement and Order may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement and Order to present any copy, copies, electronic copies, or facsimiles signed by the Parties hereto to be charged.

22. Each Party hereby expressly WAIVES any claim that the releases in paragraph 12 hereof do not extend to any claim which such Party does not know of or suspect to exist in its favor at the time of executing this Stipulation, Agreement and Order, which if known

10

by such Party must have materially affected such Party's execution of this Stipulation,

Agreement and Order, whether such claim arises under state or federal law or otherwise.

        23. This Stipulation, Agreement and Order shall be governed by and interpreted in accordance with the laws of the state of New York, except to the extent that the Bankruptcy Code applies, without regard to principles of conflict of laws that would require the application of laws of another jurisdiction.

        24. This Court shall retain jurisdiction to resolve any disputes or controversies arising from this Stipulation, Agreement and Order.

Dated: January 22, 2013
      New York, New York

/s/ Christopher R. Donoho III
Christopher R. Donoho III
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Attorneys for Standard Chartered Bank and
Standard Chartered Bank Korea (f/k/a Standard
Chartered First Bank Korea)

Dated: January 22, 2013
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Lehman Brothers Holdings Inc.,
Lehman Commercial Paper Inc.,
and Certain of Their Affiliates

**SO ORDERED:**

Dated: New York, New York
      January 31, 2013

          *s/ James M. Peck*
      Honorable James M. Peck
      United States Bankruptcy Judge