# EXHIBIT 2



**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**

COUNSELORS AT LAW

990 STEWART AVENUE, SUITE 300
P.O. BOX 9194
GARDEN CITY, NEW YORK 11530-9194
516-741-6565
FACSIMILE: 516-741-6706

ONE COMMERCE PLAZA
SUITE 1705
ALBANY, NEW YORK 12260
518-465-5551
FACSIMILE: 518-465-2033

1350 BROADWAY, SUITE 501
P.O. BOX 822
NEW YORK, NEW YORK 10018-0026
212-239-4999
FACSIMILE: 212-239-1311
E-MAIL: meyersuozzi@msek.com
WEBSITE: http://www.msek.com

1300 CONNECTICUT AVENUE, N.W.
SUITE 600
WASHINGTON, DC 20036
202-955-6340
FACSIMILE: 202-223-0358

**HANAN B. KOLKO**
DIRECT DIAL: 212-763-7017
E-MAIL: HKOLKO@MSEK.COM

October 14, 2011

**_Via E-mail and First Class Mail_**
*jstrohl@alvarezandmarsal.com*
Jamie Strohl
Alvarez & Marsal
55 West Monroe
Suite 4000
Chicago, IL 60603

> Re:  In re Lehman Brothers Holdings, Inc., et al.
>      Case No. 08-13555 (JMP)

Dear Ms. Strohl:

I write in response to the August 30, 2011 letter which we received from Steven R. Kotarba, a Managing Director of your office, and to explain the basis for the claim which we filed in this case on behalf of the 1199/SEIU Greater New York Benefit Fund (the "Fund"), claim number 30600.

1.    Background

The Fund, a jointly administered, multi-employer Taft-Hartley Benefit Fund, is an employee benefit plan within the meaning of Sections 1002(1),(2), and (3) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").  It provides medical care to contributing employees and dependents of

Jamie Strohl
October 14, 2011
Page 2

contributing employers' dependents.    1199/SEIU United Healthcare Workers East

("1199") is a labor union.  1199 and Plaza Regency at the Windrows ("Plaza Regency"),

a nursing home in New Jersey, were parties to a collective bargaining agreement (the

"CBA").  The CBA was effective from December 5, 2001 to April 3, 2005.  Article 22 of

the CBA required Plaza Regency to "remit contributions of $260 per month to the [Fund]

for all employees with six [months] of continuous employment working 30 or more hours

per week."  These contributions enabled the Plaza Regency employees to receive medical

coverage.  A copy of the CBA is attached as Exhibit A.

### 2.    Plaza Regency's Failure To Make Contributions

As a result of the failure by Plaza Regency to make certain required Fund

contributions, on or about November 5, 2004, the Funds and Plaza Regency entered into

a payout agreement and confession of judgment (the "Payout Agreement").    Under the

Payout Agreement Plaza Regency was required to pay the amount due under a schedule.

A copy of the payout agreement is attached as Exhibit B.  In section one of the payout

agreement, Plaza Regency agreed that it owed $214,397.40 to the Fund in principal and

interest for unpaid, past due contributions for the period December 1, 2003 through

October 31, 2004.  In the payout agreement, Plaza Regency agreed to pay the total due –

$219,757.34 – in six equal payments, the final payment being due on April 10, 2005.

Paragraph nine of the payout agreement stated that the Fund had the right to audit Plaza

Jamie Strohl
October 14, 2011
Page 3

Regency for any unaudited period, and, if the audit revealed any additional unpaid contributions, Plaza Regency would have an obligation to pay them.

Despite entering into the payout agreement, Plaza Regency failed to make the required payments. Thus, by letter dated March 30, 2005, the Fund's counsel notified John Pilek, Administrator of Plaza Regency, that it was in default under the agreement and that it had an obligation to cure that default within ten days. A copy of the March 30, 2005 letter is attached as Exhibit C. Plaza Regency failed to cure the default and, by letter dated April 18, 2005, counsel for the Fund advised Mr. Pilek that the Fund would commence legal action to enforce the agreement. A copy of the April 18, 2005 letter is attached as Exhibit D. As Plaza Regency failed to cure the default, the Fund brought a collection action, entitled <u>Greater New York Nursing Home Division of 1199/SEIU Greater New York Benefit Fund v. Princeton Healthcare (SNF), LLC d/b/a Pavilion at Forrestal</u>, Civil Action No. 05-2664 (MLC). (The "Collection Litigation"). A copy of the Complaint is attached as Exhibit E.

During the fall of 2005, Plaza Regency began to pay some of the obligations due to it. In September and November, 2005 Plaza Regency made two payments to the Fund totaling $305,360.

In the spring of 2006, the Fund conducted an audit of Plaza Regency covering the period June 1, 2005 through November 30, 2005. By letter dated April 18, 2006 the Fund notified Plaza Regency that, for the period June 1, 2005 through November 30, 2005,

Jamie Strohl
October 14, 2011
Page 4

Plaza Regency owed the Fund $94, 369.60, and attached a copy of that audit. A copy of

the April 18, 2006 letter and audit is attached as Exhibit F. Plaza Regency failed to pay

that money. That sum, plus interest, is what is sought in this claim.

3.     Plaza Regency Advises The Fund That It Is Part Of The Lehman Bankruptcy

In a November 18, 2008 letter, counsel for Plaza Regency in the Collection

Litigation advised the Court that the "[d]efendants recently filed for bankruptcy and this

office is awaiting authorization from the Bankruptcy Court to continue to represent

defendants as special counsel in this matter. In addition, plaintiff will need to file a Proof

of Claim with the Bankruptcy Court as well." A copy of the November 18, 2008 letter is

attached as Exhibit G. By letter dated December 3, 2008, counsel for Plaza Regency in

the Collection Litigation advised the Magistrate that the lawsuit was subject to the stay in

the Lehman Brothers bankruptcy, that Plaza Regency is "under the Lehman Brothers

Holdings, Inc. Bankruptcy," that they had no authorization to continue to work on the

matter, and requested to withdraw as counsel in that matter. A copy of the December 3,

2008 letter is attached as Exhibit H.

As a result of this, in late November and early December, 2008, I had e-mail

correspondence with Jonathan Harris, who at the time was an in-house counsel at

Lehman Brothers. A copy of that e-mail correspondence chain is attached as Exhibit I.

He stated that the entity at issue – Princeton Healthcare (SNF) "as an entity has no assets,

but nevertheless has not filed for bankruptcy protection and is still listed as a current

Jamie Strohl
October 14, 2011
Page 5

LLC. This entity's ultimate parent is Lehman Brothers Holdings, Inc., which has filed

for bankruptcy protection." I asked Mr. Harris what happened to those assets, and a

series of other questions. I received no answers.

Please call me with any questions. We reserve the right to supplement or modify

this response.

Very truly yours,

Hanan B. Kolko

HBK:ptp

Enclosures

120309

# EXHIBIT A



GAARY
Ex. #3

# AGREEMENT

## by and between

## SEIU 1199NEW JERSEY, DIVISION OF 1199SEIU, AFL-CIO

## and

## THE PLAZA REGENCY AT THE WINDROWS

## DECEMBER 5, 2001 – APRIL 3, 2005

AGREEMENT ........................................................................................ 1
A G R E E M E N T ................................................................................ 4
W I T N E S S E T H ............................................................................ 4
 ARTICLE 1 - BARGAINING UNIT .................................................. 5
ARTICLE 2 - UNION SHOP ............................................................... 5
ARTICLE 3 - PROBATIONARY PERIOD ............................................ 6
ARTICLE 4 - NO DISCRIMINATION .................................................. 6
ARTICLE 5 – VISITATION ................................................................. 6
ARTICLE 6 – SENIORITY ................................................................... 7
ARTICLE 7 - NO STRIKE -NO LOCKOUT ......................................... 8
ARTICLE 8 - GRIEVANCE AND ARBITRATION PROCEDURE ......... 9
ARTICLE 9 - WORK WEEK ............................................................... 11
ARTICLE 10 - WAGE INCREASE AND MINIMUM RATE .................. 12
ARTICLE 11 – MEALS ....................................................................... 13
ARTICLE 12 - HOLIDAYS .................................................................. 13
ARTICLE 13 – VACATIONS ............................................................... 15
 Unlicensed Personnel ................................................................... 15
 Licensed Practical Nurses ............................................................. 15
ARTICLE 14 - SICK LEAVE ............................................................... 16
ARTICLE 15 - LEAVES OF ABSENCE ................................................ 16
 A. UNPAID LEAVE ...................................................................... 16
ARTICLE 15 – MISCELLANEOUS ...................................................... 18
ARTICLE 16 - UNIFORMS ................................................................. 20
ARTICLE 17 - MAINTENANCE OF STANDARDS ............................. 20
ARTICLE 18 - MEDICAL EXAMINATIONS ....................................... 21
ARTICLE 19 - CHECK OFF AUTHORIZATION .................................. 21
ARTICLE 20 - SAVINGS CLAUSE ...................................................... 22
ARTICLE 21 - CONTRACTING OUT .................................................. 22
ARTICLE 22 - HEALTH INSURANCE ................................................ 22
ARTICLE 23 – UNION PENSION FUND ............................................. 23
ARTICLE 24 - PAYMENTS ................................................................. 24
ARTICLE 25 - MANAGEMENT RIGHTS ............................................ 25
ARTICLE 27 – DURATION ................................................................. 26
 WAGE INCREASES ...................................................................... 27

# AGREEMENT

AGREEMENT, made this 3rd day of December, 2001, by and between S.E.I.U. 1199 New Jersey, a division of 1199 S.E.I.U., AFL-CIO, CLC, having its principal offices at 4 Ethel Road, Building 405 B, Edison, NJ 08817, hereinafter referred to as the "UNION" and the PLAZA REGENCY at the Windrows, hereinafter referred to as the "EMPLOYER", located at 5000 Windrow Drive, Princeton, NJ, 08540.

# WITNESSETH

WHEREAS, the Union has been designated by a majority of the employees in the bargaining unit as their sole collective bargaining agent with respect to wages, hours and other conditions of employment; and

WHEREAS, it is recognized that the efficient and orderly method of establishing and maintaining peaceful and harmonious labor relations and of dealing with problems and controversies arising out of employment is through negotiations and agreement,

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties agree as follows:

## ARTICLE 1 - BARGAINING UNIT

A.    The Employer recognizes the Union as the sole and exclusive bargaining agent for all full-time and regular part-time Certified Nurses Aides, Housekeeping employees, Dietary employees, Laundry employees, Staff Licensed Practical Nurses, Unit Clerks, Unit Secretaries, Activities/Recreation employees, Maintenance employees but excluding registered nurses, office clerical employees, supervisors, watchmen and guards.

## ARTICLE 2 - UNION SHOP

A.    It shall be a condition of employment that all employees covered by this Agreement who are members of the Union in good standing on the execution or effective date of this Agreement, whichever is later, shall remain members in good standing and those who are not members on the execution or effective date of this Agreement, whichever is later, shall on the thirtieth (30th) day following the execution or effective date of this Agreement, whichever is later, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement hired on or after its execution or effective date, whichever is later, shall

on the thirtieth (30th) day following the beginning of such employment become and remain members in good standing in the Union. The Employer shall promptly upon hiring new employees notify them of the existence of the Union Agreement and the Union shop provisions thereof. Upon notice by the Union to the Employer that an employee has not complied with the Union shop requirements, the Employer shall forthwith discharge said employee and forthwith advise the Union thereof in writing.

B.    The Employer shall forthwith give the Union a list containing the names and home addresses of employees covered by this Agreement, their home address, classification, rate of pay and date of hire and social security number, and shall thereafter promptly furnish each month the names, home address, date of hire, classification, social security number, and rate of pay of all new employees in the bargaining unit.

## ARTICLE 3 - PROBATIONARY PERIOD

A.    New employees shall be deemed probationary during the first ninety (90) days of their employment, during which time they may be discharged, for any reason. Such discharge shall not be subject to the Grievance and Arbitration procedure.

## ARTICLE 4 - NO DISCRIMINATION

Neither the Employer or the Union shall discriminate against or in favor of any employee on account of race, color, creed, physical handicap, national origin, sex, age or sexual preferences. The Employer shall not discriminate against any employee because of Union activities.

## ARTICLE 5 –VISITATION

A.    Upon entering the facility, the Union Organizer or the Union's designees shall notify the Administrator or his designee of their presence in the building. The Union Organizer shall have admission to all properties covered by this Agreement to discharge their duties as representative of the Union provided it is done in non-work areas and on non-work time and does not interefere with the operations of the facility.

B.    Delegates and Committees elected or selected by the Union shall take up with the Employer during working hours at reasonable times problems that might arise at the place of employment. The parties will respect the needs of the residents and not disrupt operations when scheduling meetings. A delegate intending to go to a department other than the one they represent shall notify the person in charge in both areas and obtain such permission, which will not be reasonably denied.

C.    The Employer shall make available to the Union one (1) locked, glass enclosed bulletin in the employee break room for the purpose of posting Union notices. All notices shall be related to Union business and shall not be disparaging to the Employer . A key to the bulletin board shall be provided to the Union or its' designees.

D. The Union shall be permitted to conduct Union meetings on the Employer's premises provided such meeting is conducted in non-patient care area and attended by employees during non-work time. The Union must notify the Employer in advance and shall not interfere with the operations of the facility.

## ARTICLE 6 – SENIORITY

A. Bargaining Unit Seniority - shall be computed from the date of hire in the establishment or the date of hire with the Employer, whichever is longer. Classification Seniority is the length of time in a job classification.

B. Layoffs- the Employer has the right to lay-off only for bonafide reasons any employee, provided it shall not result in or require the remaining employees to assume any work or duties or responsibilities substantially in excess of what they were doing prior to layoff. Seniority shall prevail in the case of lay-off and rehiring of employees with delegates having top seniority. Two (2) weeks advance written notice shall be given to the affected employee and the Union of the layoffs except in the event of emergency or act of God or circumstances beyond Employer's control.

C. Bumping Rights - in the event an employee is scheduled to be laid off in one department and has classification seniority in another department, they shall be able to bump the person with the least bargaining unit seniority. If a part-time employee has greater seniority than a full-time employee in the same classification who is to be laid off, the part time employee must be willing to accept a full-time position to avoid a lay-off.

D. Seniority shall accrue during paid leaves, military leaves, leaves of absence, or during the period which the employee receives disability benefits or workmen's compensation, in accordance with ARTICLE 15.

E. Loss of Seniority – An employee's seniority shall be lost when he/she:

  1. terminates voluntarily
  2. is discharged for just cause
  3. exceeds an official leave of absence
  4. is laid off for a period of one year or period exceeding the length of continuous employment, whichever is less.
  5. fails to return to work on a recall from layoff, within 10 days after the employer has sent notice to return, via certified mail to the last known address, unless the employee has a valid reason for inability to respond.

F. Promotions within the bargaining unit shall be awarded on the basis of seniority and ability.

  1. All bargaining unit jobs must be posted on the Union bulletin board for a period of ten (10) working days. During said posting period, the Employer may fill the position on a temporary basis. Disputes under this provision shall be subject to the Grievance and Arbitration procedure.

  2. An employee promoted to such position shall serve a ninety (90) day probationary period. In the event either party decides the employee is not working out in the new position, he/she shall return to their former position without loss of seniority.

## ARTICLE 7 - NO STRIKE -NO LOCKOUT

A. During the term of this Agreement, the Union shall not call or authorize any strike

against the Employer at the establishment covered by this Agreement and the Employer shall not effect any lockouts. Should an employee or employees engage in any strike and should the Employer notify the Union of such action, a Representative of the Union shall, as promptly as possible, instruct such employee to forthwith cease such action and promptly return to their respective jobs and comply with the applicable provisions of this Agreement. The Employer agrees that in consideration of the performance by the Union as set forth above, with respect to any strike which is contrary to the provisions of this section, there shall be no liability for damages on the part of the Union, its officers, agents, or members for breach of contract, by suit or otherwise.

## ARTICLE 8 - GRIEVANCE AND ARBITRATION PROCEDURE

A. A grievance shall be defined as a dispute or complaint arising between the parties hereto under this Agreement or the interpretation, application, performance or any alleged breach thereof, and shall be processed in the following manner:

Step 1: Within ten (10) calendar days, an employee having a grievance and/or their Union delegate or other representatives shall discuss the matter with their immediate supervisor. The employer shall give its answer to the Employee and his/her Union delegate, or other representative within five (5) working days after the presentation of the grievance to Step 1.

Step 2: If the grievance is not settled in Step 1, the grievance shall, within ten (10) calendar days after the answer in Step 1, be presented to Step 2. When grievances are presented to Step 2, they shall be reduced to writing, signed by the grievant or his Union representative and presented to the grievant's department head or his/her designee. A grievance shall be submitted on the grievance form developed by the Union. A grievance so submitted to Step 2 shall be answered by the Employer, in writing, within five (5) working days after the presentation of the grievance to this step.

Step 3: If any grievance in not settled in Step 2, the grievance shall, within ten (10) calendar days after the answer in Step 2, be presented, in writing, to Step 3 to the Administrator or his/her designee. A grievance concerning a discharge or suspension may be presented initially at Step 3 within ten (10) calendar days of the discharge or suspension.

   1. A grievance involving three (3) or more employees will be presented initially at Step 3 of the grievance procedure.

   2. The Employer will notify the Union within forty-eight (48) hours of any suspension or termination of a bargaining unit employee.

   3. If the discharge of employee results from conduct relating to a resident and the resident does not appear at the arbitration, the arbitrator shall not consider the failure of the resident to appear as prejudicial. The term "resident" for the purpose of this Agreement shall include those seeking and obtaining care or treatment as provided by the Employer.



4. If a grievant does not appeal to the next step, the matter will be considered waived and the Employer's response at the previous step will be the final resolution to the grievance.

B. **Arbitration** - the Union may refer the matter to arbitration within thirty (30) calendar days of the third step meeting by giving written notice to the Employer and the New Jersey State Board of Mediation of its intent to arbitrate. Said notice shall set forth the issue. For the purpose of this Article, time shall be considered to be of the essence wherever time limits are established. The time limits may be only waived by mutual agreement of both parties. The parties agree to expedite the grievance and arbitration steps wherever reasonably possible so that the controversy will be settled as early as possible.

1. The arbitration shall be conducted under the rules of the New Jersey State Board of Mediation.

2. The decision of the arbitrator shall be final and binding upon the Employer, the Union and the employees.

3. The fees and expenses of the arbitrator and the cost of any hearing room shall be borne equally by the parties. The party incurring them shall pay all other expenses.

4. The authority of the arbitrator is limited to an interpretation and application of the provisions of this Agreement and the arbitrator has no authority to in any way alter, modify, substitute, change or add to the terms of this Agreement.

5. No employee or group of employees may initiate an arbitration procedure.

6. All time limits may waive with mutual consent of the parties. Requests to waive time limits must be presented in writing.

## ARTICLE 9 - WORK WEEK

A. Hours of work – Employees on the payroll effective December 5, 2001, shall continue to work 40 hours in a week, consisting of eight (8) hours in a day, with 2 fifteen minute breaks and excluding 30 minutes for meals. The regular work week for a full-time employee hired after the effective date of this Agreement shall be thirty seven and one-half (371/2) hours consisting of five (5) days in any week with two (2) consecutive days off. The workday shall consist of seven and one-half hours (71/2) each day, including two (2) fifteen-minute breaks and excluding thirty (30) minutes for meals.
B. Overtime - All hours worked in excess of 40 hours in a week shall be paid for at the rate of time and one half the regular hourly rate of pay.
C. For the purpose of computing overtime, paid leave time will not be considered as time worked.
D. Overtime shall be offered by seniority on a rotating basis.
E. All employees shall be required to work 26 weekends a year.
F. In the event an employee calls-out on his/her scheduled weekend to work, they must make-up the weekend to meet the requirements in Section E, except in cases of a bona-fide emergency.

G. Part- time employees (defined as employees who work at least thirty (30) hours per week) shall receive pro- rated pay, sick leave, holidays, vacations, etc., according to the hours they actually worked. The working time of part time employees and all other employees working less than the regular work week shall be averaged over a period of two (2) months to determine the benefits to which he is entitled. With respect to Employer contributions to the Benefit Fund under Articles 22 and 23, full contributions shall be made for all eligible part-time and full-time employees.

H. No employee will be transferred to a shift other than that for which said employee was hired, except by mutual consent.

I. Schedules shall be posted at least four (4) weeks in advance. There shall be no change in the schedules, except by mutual consent.

J. In the event an employees requests to change shifts, approval will not be unreasonably withheld, provided a vacancy exists. When more than one employee requests such change, seniority shall prevail.

## ARTICLE 10 - WAGE INCREASE AND MINIMUM RATE

A.    Wages (increases and minimum rates) shall be as contained in Schedule "A", made a part hereof.

B.    Nothing herein contained shall prevent the Employer from giving merit increases, bonuses or other similar payments provided they have been first negotiated with the Union.

C.    Certain minimum wage scales are set forth in schedule "A" and made a part hereof. Employees shall receive either the across the board increases or the applicable minimum rates, whichever is greater. Employees performing work of a higher classification should receive the rate for the higher classification.

D.    Wages are to be paid every other week and accompanying all pay shall be an itemized list of deductions.

E.    Shift Differential – employee's working the second and third shifts as of the effective date of this Agreement, December 5, 2001, shall continue to receive a shift differential of fifty cents ($.50) for second shift and eighty cents ($.80) for midnight shift employees. The shift differential shall be included in determining all benefits due to employees.

## ARTICLE 11 – MEALS

Consistent with current practice, full, good and wholesome hot meals shall be furnished to each employee who works four (4) or more hours each day with a maximum cost to the employee of two dollars ($2.00).

## ARTICLE 12 -  HOLIDAYS

A.    All employees shall receive the following holidays with pay:

New Year's Day                          Memorial Day
Thanksgiving Day                        Independence Day
Christmas Day                           Labor Day

1. Employees who have completed one year of continuous service shall receive one additional floating holiday, for a total of seven (7) effective the 2nd year of the contract.

2. Employees with two (2) or more years of continuous service shall receive a second floating holiday, for a total of eight (8) effective the 3rd year of the contract.

3. Employees who are out on sick leave for a period not exceeding two (2) months shall be entitled to the foregoing holidays with pay.

B. Should it be necessary for an employee to work a holiday, he shall in addition to regular pay for all hours worked, receive an additional days pay or elect to take an additional day off.

C. In the event an employee elects to take an additional day off in lieu of holiday pay, they must submit such request in writing within thirty (30) days of the holiday.

D. Employees shall be notified by the Employer five (5) working days in advance in the event the Employer requires such employees to work on the holiday.

E. If any one of the holidays occurs during his vacation period, such employee shall be entitled to receive an additional day's pay or an additional vacation day in lieu thereof.

F. A holiday is deemed to begin at 11:00 PM on the eve of the holiday and to end at 11:00pm on the day of the holiday. Holidays shall be celebrated according to Federal and State observance.

G. Employees will be scheduled to work every other holiday. The Employer shall post the holiday schedule for the year in December of the preceding year. Employees may switch their holiday off with a co-worker provided there is no impact on the scheduled staffing.

H. To be eligible to receive holiday pay, an employee must work if scheduled the day before and the day following the holiday.

I. All employees on the payroll as of December 5, 2001, shall be entitled to two (2) paid personal days in a calendar year.


## ARTICLE 13 – VACATIONS

A.    Vacations with full pay at the employee's prevailing rate of pay at the time of vacation shall be granted for full length of service in the establishment, and not merely based on length of ownership of the establishment by the Employer as follows:



<u>Unlicensed Personnel</u>

1 year but less than 6 years . . . . . . . . . . . . . . 2 weeks
after 6 years                         . . . . .3 weeks

<u>Licensed Practical Nurses</u>

1 year but less than 4 years . . . . . . . . . . . . . .2 weeks
after 4 years but less than 8 years . . . . . . . . .3 weeks
after 8 years                         4 weeks

B.     Vacation assignments shall be made by the Employer and the Union to insure the orderly and efficient continuation of operations but the Employer agrees to give, whenever possible, the desired vacation time on a consecutive basis indicated by the employer in order of seniority.  Vacation pay shall be paid on the last regularly scheduled working day prior to such vacation.  If any employee voluntarily terminates their employment after six (6) months of substantial employment or more he shall receive pro-rated vacation pay.  Breaks in service not exceeding three (3) consecutive months shall not effect an employee's eligibility for vacation benefits.

## ARTICLE 14 -  SICK LEAVE

1.     Sick leave to be paid at the prevailing rate.
2.     Each employee after at least six (6) months of employment shall receive six (6) days of paid sick leave each calendar year. Sick leave shall accrue at the rate of one (1) day for each month of substantial employment.  Leaves of absence for illness not exceeding three (3) months shall not be counted in determining "substantial employment".
3.     Upon completion of one year of continuous employment, an employee shall receive one (1) additional paid sick day, for a total of seven (7)), effective the 2nd year of the contract.  Upon completion of two (2) years of continuous employment, an employee shall receive an additional paid sick day, for a total of eight (8), effective 3rd year of the contract.
4.     Unused sick leave shall be paid to employees the first pay period in December in each year except upon voluntary termination of employment for any reason whatsoever shall be paid on such respective termination date.
5.     Sick leave will be paid for as and when used.

## ARTICLE 15 - LEAVES OF ABSENCE

A. <u>UNPAID LEAVE</u>

1. <u>Medical Leave</u> -     Any employee becoming ill shall be entitled to a leave of absence for an illness lasting up to six (6) months during any two (2) year period, and said



employee shall be entitled to reinstatement without loss of seniority. Any employee injured upon the job shall be reinstated upon recovery without loss of seniority or other benefits provided herein, such as holidays, sick days, and vacation time. Limited for six (6) months.

2. Personal Leave -   Any employee shall be entitled to a leave of absence up to thirty (30) days for personal reasons, which privilege shall not be abused. The employee shall give written notice to the Employer that he is taking the leave of absence.

3. Military Leave – Leaves of absence for the performance of duty in the armed forces or with a reserve component thereof shall be granted, without loss of seniority.

4. Childbirth Leave – Childbirth leave without pay for a period of not more than one (1) year may be granted to any employee for the birth or adoption of a child. Said employee shall be entitled to reinstatement at the conclusion of such leave without loss of seniority.

5. Leave for Study - an employee who wishes to undertake the schooling to qualify for a higher classification of work shall be granted a leave of absence for not more than two (2) years to complete such schooling, and upon proof of satisfactory completion thereof, the Employer shall grant such employees preferential hiring rights in the classification in which such employee is then qualified and also shall be entitled to the benefits of the tuition clause.

6. Union leave – an employee shall be permitted to take a leave of absence of up to one (1) year to work with the Union. Said employee shall be reinstated without loss of seniority.

7. While on unpaid leave, an employee shall not accrue vacation or sick days. Health insurance will provide in accordance with applicable law. When returning from an authorized leave of absence of ninety (90) days or less, an employee shall be reinstated to the same shift and position, without loss of seniority. Those returning from an authorized leave of more than ninety (90) days shall be reinstated to the same or similar shift and position without loss of seniority, .

## B. PAID LEAVES OF ABSENCE

1. Bereavement Leave - In case of death in the immediate family, an employee shall granted three (3) days of paid leave. Immediate family includes husband, wife, mother, father, son, daughter, parents, brother, sister, mother-in-law, father-in-law, and grandparents of the employee. In case of a death of a member of the immediate family who lives out of town and additional time off is necessary, the Employer will grant reasonable time off without pay for the purpose of attending the funeral. The employee if requested shall furnish verification of death. Funeral leave shall be defined as leave for bereavement purposes and its use for any other purpose is prohibited.

2. Training Leave -   In the interest of maintaining stability of labor relations and realizing that the handling of grievances by Delegates is an important step in the initial processing of grievances so as to encourage stability of labor relations, the parties agree

that is advisable from time to time to have the Delegates take a course of instruction. Accordingly, during each contract year, no more than three (3)delegates , upon the Union giving two (2) weeks advance notice to the Employer, shall be granted two (2) days off with pay whether scheduled to work or not for the purpose of attending conferences or Delegate training programs.

3. Leave for Jury duty - Employees called for Jury Duty shall be paid the difference between their regular pay and the amount they receive as Jury pay, not to exceed two (2) weeks. Regardless of the length of time in performing this responsibility, the employee's seniority will remain unbroken. A statement of jury earnings and time served must be supplied by the employee to allow verification of the same.

## ARTICLE 15 – MISCELLANEOUS

### 1. Malpractice Insurance
Malpractice insurance for individual coverage to be provided by the Employer at its own cost, as heretofore.

### 2. Polygraph Test
The Employer shall not require, request or suggest that any employee or applicant for employment take a polygraph or any other form of lie detector test. Any polygraph statement obtained on behalf of the Employer may not be used in any proceedings involving any employee within the bargaining unit, except in proceedings where the health and safety of the patients are or may be concerned.

### 3. Breakage
The Employer shall not deduct any monies from any employee for breakage or any other purposes except if malicious, intentional or required by law and except as herein expressly provided for.

### 4. Warning Notices
Warning notices shall have a time limitation of eighteen (18) months if they are no other incidents of the same offense.

### 5. Labor-Management Committee – a committee of three (3) members of the Bargaining Unit and members of Management shall meet no less than semi-annually during work hours to discuss issues that arise in the workplace. Either party may request a meeting if they deem it necessary to the operation of the facility.

### 6. Health and Safety – the employer shall take appropriate precautions in cases where it is known that a patient has an infection or contagious disease. Under such circumstances the Employer will notify the employee to take appropriate precautions commensurate with their duties and provide the proper attire required.

### 7. Health and Safety Committee – a committee of two (2) Bargaining Union members and four (4) members of Management shall meet at least on a quarterly basis to address, monitor and correct health and safety concerns.

12

8. <u>Patient Care Concerns</u> – Along with Management, the Union recognizes the obligations of its' members to render good patient care with warmth and compassion so as to transmit to the patient a sense of security and dignity. The employer shall provide inservices and training, which include instruction in patient care, emergency procedures, infection control and all other subject matter recommended by the State of New Jersey. Inservices shall be conducted on all shifts, on work time. When developing care plans for residents, bargaining unit members will be invited to share their knowledge of the resident's needs in the care plan meetings.

9. No supervisor shall perform bargaining unit work except in cases of instruction or in an emergency situation or where there is no available qualified personnel to perform the duties.

10. <u>Resignation</u> – an employee who resigns shall give the employer two (2) weeks advance written notice. Upon proper notification, an employee will receive payment for accrued and unused vacation time accrued to the effective date of resignation. An employee shall not receive payment without proper notification unless he is unable to do so due to health reasons. An employee, upon his or her resignation, shall return all equipment provided by the Employer.

## ARTICLE 16 - UNIFORMS

In the event the Employer implements a specific uniform policy, employees will be provided said uniforms or the Employer shall negotiate with the Union an appropriate uniform allowance.

## ARTICLE 17 - MAINTENANCE OF STANDARDS

The Employer shall not lower any wages, hours or working conditions. No private deals shall be made with any employee. A non-bargaining unit employee shall not do a bargaining unit employee's work except as provided in Article 15.9. If an employee is terminated for any reason whatsoever, the Employer must promptly replace such employee with another person, except as provided in Article 6, Seniority.

## ARTICLE 18 - MEDICAL EXAMINATIONS

Employees may be required to take medical examinations by the Employer's designated physician at times and dates specified by the Employer. The Employer shall give reasonable advance notice to the employees of such examinations. All medical examinations required by the Employer shall be paid by the Employer except that if an employee fails or refuses to take a medical examination at the time and date specified by the Employer, after receiving reasonable advance notice of such examination, the Employer shall be relieved of his obligation to pay for such examination and the payments therefore shall be payable by the employee.

13

## ARTICLE 19 - CHECK OFF AUTHORIZATION

1.  The Employer agrees to deduct no later than the first payroll day of each month from the wages of employees their membership dues, initiation fees and voluntary PAC (Political Action Committee) contribution, shall at the same time remit immediately said monies to the Union together with a list of employees names for whom such deductions have been made and the amounts thereof; provided that the Employer has received from each employee on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one (I) year, or beyond the termination date of this Agreement, whichever occurs sooner. All funds deducted by the Employer shall be held as trust funds and shall not be commingled with other funds of the Employer. In the event the Employer fails to promptly remit such monies, the arbitrator must, upon application, assess interest at the legal rate, reasonable attorney's fees and all costs of collection against the Employer.

2. The Union shall indemnify and hold the Employer harmless against any claims, demands, suits or other forms of liability arising out of actions taken or not taken by the Employer for the purpose of complying with the provisions of Article 19 and Article 2.

## ARTICLE 20 - SAVINGS CLAUSE

In the event that any portion of this Agreement is invalidated by the passage of legislation or a final decision of a court or government agency having jurisdiction, such invalidation shall apply only to that portion thus invalidated and all remaining portions of this Agreement not invalidated shall remain in full force and effect. Any substitution for the invalidated portion, which is mutually agreed upon between the parties, shall be reduced to writing and shall thereupon become part of this Agreement.

## ARTICLE 21 - CONTRACTING OUT

It is agreed between the parties that for the preservation of the work opportunities of the employees within the collective bargaining unit covered by this Agreement, the Employer shall not subcontract out any of the bargaining unit work of employees covered by this Agreement without the consent of the Union. Such consent shall not be unreasonably withheld. If the Union grants permission, any contract or agreement between the Employer and a contractor shall, with respect to the affected employee, comply with all terms and conditions of this Agreement, and the Employer guarantees the performance thereof by the contractor.

## ARTICLE 22 - HEALTH INSURANCE

A. The Employer shall maintain the current medical insurance through, December 1, 2003.

    1. Effective December 1, 2003, the Employer shall provide coverage at no cost to the employee through the Union's Health and Benefits fund. The Employer shall remit contributions of two-hundred and sixty dollars ($260.00) per month, to the Union's Health and Benefits Fund for all employees working thirty (30) more hours per week.

2. The Union shall have the right to examine the Employer's books and records for the purpose of determining whether the Employer has complied with the provisions of this article.

## ARTICLE 23 – UNION PENSION FUND

Effective 3/30/05 , the Employer shall pay monthly on or before the tenth (10th) day of each month to the SEIU National Industry Pension Fund, the sum of 2% of the employee's hourly rate, to a maximum of 40 hours in a work week, for each employee employed at least one year. Contributions shall be used by the Trustees of the Fund for the purpose of providing a defined benefit pension plan approved by the Internal Revenue Service.

1. The full amount of the above contributions shall be remitted by the Employer for all full and part-time employees on the tenth (10th) day of each current month in advance. Pension Funds must be submitted by the tenth (10th) day of each current month for the prior month following hours worked. Together with such payments there shall be remitted to the Union's Health and Benefits Fund and Pension First Fund, statements showing the name of each employee for whom contributions are made. The Employer shall be bound by and agrees to comply with all rules, regulations and decisions issued, made by the Fund including any and all amendments and changes therein. The parties hereto confirm and approve the composition and membership of the Board of Trustees of the Fund as now and hereafter constituted. The Union and the Funds shall have the right to examine the Employer's books and records for the purpose of determining whether the Employer has complied with the provisions of this Article. Insofar as payments by the Employer to the Funds are concerned, time is of the essence. The regular and prompt payment of contributions due to the Funds is essential to the stability of the Funds and to the prompt payment of benefits. It would be extremely difficult, if not impracticable to fix the actual expense and damage to the Funds which will result from the failure of the Employer to make payments in full within the time provided.

2. In the event a dispute arises in connection with the failure of the Employer to make the required payments provided for in this Agreement and in the event the Union submits the matter to arbitration, and the Union's position is sustained, the Arbitrator's decision shall contain a directive that the Employer pay all audit and accountants' fees, the full amount of the Arbitrator's fees, collection expenses including Court Costs, if any, interest at the current legal rate, and all reasonable attorney fees for any attorney representing the Union and/or the Funds in connection with the arbitration and court proceedings; and in addition, an amount equal to ten (10%) percent of the amount due and unpaid in liquidated damages for failure to pay in accordance with this Agreement.

3. Employer Remains Liable for Loss of Benefits - Notwithstanding the foregoing provisions, if any employee should be disentitled to any benefits under the Funds by reason of an Employer's delinquency in the payment of contributions, such Employer shall be liable to such employee in a civil action, for the full amount of the benefits which the employee lost, together with reasonable attorney's fees and costs. Acceptance or collection of delinquent contributions by the Fund shall not absolve the Employer of this liability.

## ARTICLE 24 - PAYMENTS

A.    The Employer shall make prompt payments in full of all monies required to be checked off under Article 19 and all payments required to be made to the Funds under Article 22.  Failure to make full payments by the above mentioned dates shall constitute a breach of this Agreement.  Any Employer, who becomes delinquent with payments, as hereinabove provided, shall be required to post bond to secure future payments.  Resort to a remedy under the Agreement or under the Agreements and Declarations of Trusts for the collection of contributions due the Funds shall not be deemed a waiver of the rights to resort to any other remedy provided therein or by law.  Resort to one (1) remedy at one (1) time shall not be deemed a waiver of the right to resort to other remedies at a prior, the same or at a subsequent time.

B.    The Union and any authorized agents or representatives of the Funds shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine, audit, and copy such of the books and records of the Employer, to permit the Union and the Funds to determine whether the Employer is making full payments of the amount required by the Agreement.  When an Employer is found to have a deficiency in the audit in the amount of ten percent (10%) or more of the total contribution for the period of such audit, the Employer shall immediately pay the cost of such audit as well as the additional contributions owed to the Union and the Funds.

## ARTICLE 25 - MANAGEMENT RIGHTS

The management of the facility and the direction and control of the property and workforce shall remain with the Employer.  Nothing in this Agreement shall be considered to limit or impair the right of the Employer to exercise at its' own discretion who to employ.  Management has a right to hire, discharge for just cause, and lay-off; establish rules and regulations, assign duties, establish work hours and shifts; to direct the work force and operate its affairs as it deems expedient, in order to fulfill its obligations to its patients, visitors, permanent or visiting professional staff.  The exercise of these rights shall not be inconsistent with the express terms of this Agreement.

## ARTICLE 26 – PARTIES

This Agreement shall be binding upon the parties hereto, their successors and assigns, contractors or designees.

## ARTICLE 27 – DURATION

A.    THIS AGREEMENT SHALL BECOME effective from December 5, 2001 and shall remain operative and binding upon the parties hereto, their heirs, successors, assigns, administrators, concessionaires, and others, and shall apply to all present and future establishment until April 3, 2005.  If, for any reason, the Employer shall change its name or status, or the Union shall change its name, affiliation or status, it is agreed that such changes shall in no manner modify or affect the binding obligations of this

*16*

Agreement. The Union shall have the right ninety (90) to one hundred and twenty (120) days prior to the expiration of this Agreement to reopen and negotiate wages (minimum and across the board increases), hours and general terms and conditions of employment.

B. This Agreement shall not be changed, altered, modified or amended, unless in writing, and signed by the authorized representatives of the parties.

C. The parties agree to re-open the contract as of March 31, 3002, in accordance to the provisions of the Millhouse Agreement, "Appendix A", for the purpose of negotiating wages and health benefits, upon at least 30 days advance notice of intent to re-open by the Union. Negotiations shall commence within thirty (30 days of such notice).

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.



SEIU 1199NJ Division of 1199NY SEIU


_____          _____
EXECUTIVE VICE-PRESIDENT              DATE

Plaza Regency Skilled Nursing and Rehabilitation Center



_____          _____
AUTHORIZED SIGNATURE                 DATE

*17*

# S C H E D U L E "A"

## WAGE INCREASES

A.    All employees will receive the increases below on the dates listed or the minimum, whichever is greater.

B.    All employees shall receive wage increases as follows:

Effective - upon ratification: Nursing – 2%    all other classifications - $.40 per hour
Effective - 4/1/02   contract reopener
Effective - 4/1/03   All employees –3.5%
Effective – 4/1/04   contract reopener – the parties agree to meet at least 30 days prior to April 1, 2004 to negotiate wages and benefits for the last year of this Agreement. The provisions of Article 7 will apply during this reopener.

C.    MINIMUM HIRING RATE AND CLASSIFICATION
(Based on thirty seven and one half [37&1/2] hours per hours per week.)

| CLASSIFICATION | | HIRING RATE (upon ratification) | |
|---|---|---|---|
| LPN | $17.00 | CNA | $10.00 |
| Relief Cook | $ 9.00 | Activity Aides | $ 9.50 |
| Dietary Aides | $ 7.75 | Unit Secretary | $ 9.00 |
| Housekeepers | $ 7.75 | Unit Attendants | $8.00 |
| Maintenance | $ 9.00 | | |

All future wage increases to be reflected in the Hiring Rate.

The Employer may hire no-frills employees at $1.00 above the start rate. No- Frills employees will not be entitled to fringe benefits denoted throughout the Agreement. Employees may opt in or out of the no-frills policy on their yearly anniversary date. The parties will develop a no-frills election form.

/ 3

S C H E D U L E "A"

WAGE INCREASES

A.    All employees will receive the increases below on the dates listed or the minimum, whichever is greater.

B.    All employees shall receive wage increases as follows:

Effective - upon ratification: Nursing – 2%    all other classifications - $.40 per hour
Effective - 4/1/02    contract reopener
Effective - 4/1/03    All employees –3.5%
Effective – 4/1/04    contract reopener – the parties agree to meet at least 30 days prior to April 1, 2004 to negotiate wages and benefits for the last year of this Agreement. The provisions of Article 7 will apply during this reopener.

C.    MINIMUM HIRING RATE AND CLASSIFICATION
(Based on thirty seven and one half [37&1/2] hours per hours per week.)

| CLASSIFICATION | | HIRING RATE (upon ratification) | |
|---|---|---|---|
| LPN | $17.00 | CNA | $10.00 |
| Relief Cook | $ 9.00 | Activity Aides | $ 9.50 |
| Dietary Aides | $ 7.75 | Unit Secretary | $ 9.00 |
| Housekeepers | $ 7.75 | Unit Attendants | $8.00 |
| Maintenance | $ 9.00 | | |

All future wage increases to be reflected in the Hiring Rate.

The Employer may hire no-frills employees at $1.00 above the start rate.  No- Frills employees will not be entitled to fringe benefits denoted throughout the Agreement. Employees may opt in or out of the no-frills policy on their yearly anniversary date.  The parties will develop a no-frills election form.

C Brady
For the Union

FOR THE EMPLOYER

17

# EXHIBIT B

<u>PAY-OUT AGREEMENT
AND CONFESSION OF JUDGEMENT
("Agreement")
between
1199/SEIU GREATER NEW YORK FUNDS
and
PAVILLION AT FORRESTAL</u>

AGREEMENT, dated October 28, 2004, between the 1199/SEIU GREATER NEW YORK FUNDS ("Funds") and PAVILLION AT FORRESTAL (a/k/a PLAZA REGENCY AT THE WINDROWS and PLAZA REGENCY SKILLED NURSING AND REHABILITATION CENTER) (the "Employer").

IT IS MUTUALLY AGREED AS FOLLOWS:

1. The Funds have determined and the Employer has unconditionally agreed, subject to the provisos in paragraph "9" of this Agreement, that the Employer's liability to the Funds for past due contributions and interest under collective bargaining agreements between the Employer and SEIU 1199 NEW JERSEY, DIVISION OF 1199 SEIU, AFL-CIO, CLC (the "Union") for the period December 1, 2003 through and including October 31, 2004, is a total of $214,397.40.

2. In consideration for the Funds agreeing to grant the Employer an extension of time for the payment of the foregoing indebtedness, the Employer agrees to pay such indebtedness to the Funds, with interest on the declining balance at the rate of 12% per annum, in monthly installments to be paid in the amounts and on the dates set forth on the "Payment Schedule" attached hereto.

3.   As security for this Agreement, the Employer agrees that this Agreement also constitutes a Confession of Judgment ("COJ") which may be utilized by the Fund to enter judgment in any court with jurisdiction over the Employer, or the Fund.

4.   As a further condition to the pay-out arrangement herein provided for, the Employer agrees to remain current in its monthly contributions to the Funds and further agrees that the Funds may, at their option, credit all monies paid in accordance with paragraph "2" of this Pay-Out Agreement to any unpaid current contributions ("Current Contributions") as they become due.

5.   The Employer shall have the right, during the term of this Agreement, to prepay without penalty any and all installments provided for in paragraph "2" of this Agreement with interest at the rate of 12% per annum up to the date of payment.

6.   Upon the failure of the Employer to make any of the installment payments or Current Contributions as required hereunder, and upon the expiration of (10) days after written notice of said failure has been sent to the Employer, without the Employer having made all of the required payments (installment and Current Contributions), the Employer shall be in default of its obligations under this Agreement and the entire unpaid balance of the aforesaid indebtedness shall become due and payable at once and the Funds shall have the right to enter

-2-

judgment on this Agreement which shall be deemed to also constitute a Confession of Judgment, and execute on and enforce payment of the judgment, to the extent of the balance due on past due and/or Current Contributions, plus interest and attorney's fees. The Funds and/or the Union shall also have the right to pursue any other remedies at law, in equity, or under contract.

7. In the event that the Employer defaults on any of its obligations under this Agreement, the Employer shall pay the Funds the additional sum of 8% of the amount recited in paragraph "1" in order to compensate the Funds for the attorneys' fees that will be incurred as a result of such default. Said amount is agreed to be added to the judgment.

8. The Employer agrees not to oppose entry of judgment on, or enforcement of, this Agreement, and hereby waives any defenses or objections it may have, including without limitation defenses based on the statute of limitations or the timeliness of enforcement proceedings or any defense relating to the collective bargaining agreement and/or computation of amounts due. If the Employer opposes entry or enforcement of judgment on this Agreement, the Employer shall pay the Funds an additional amount as liquidated damages equal to twenty per cent (20%) of the amount set forth in paragraph "1" hereof. The parties agree that said liquidated damages do not constitute a penalty, but

-3-

rather compensates the Fund for additional costs that may be incurred.

9.   Notwithstanding anything to the contrary contained herein, the Funds reserve the right, pursuant to the collective bargaining agreement between the Union and the Employer and the Declarations and Agreements of Trust establishing the Funds, to audit the Employer's payroll records for any unaudited period covered by this Agreement, to the extent that such payroll periods have not been previously audited by the Funds.   If said audit reveals that additional contributions are due to the Funds, or that a credit is due to the Employer, the amount due for the period shall be paid by the Employer or a credit issued by the Funds.

10.   As further consideration for the benefits of this Pay-Out Agreement, the Employer agrees that in the event that it should hereafter enter into a receivership agreement or an agreement for the sale, lease or transfer of the operation, management and/or assets of the facility to a receiver, managing agent, purchaser, lessee, transferee, or successor (collectively "New Entity"), such agreement shall contain a provision requiring the new entity to assume the obligations to the Funds as set forth herein, to the extent such obligations have not already been satisfied by the Employer.   No less than ten (10) days before any such transaction involving a New Entity, the Employer

-4-

agrees to give the Funds notice of the proposed transaction and to demonstrate that it has complied with the representations in this paragraph and its other obligations under this agreement. In the event that the Employer fails to give such notice to the Funds, or otherwise comply with this paragraph, the entire unpaid balance of the indebtedness set forth in paragraph "1" shall become due and payable at once, and the default provisions of this agreement shall be applicable.

11.   The Funds may not be deemed by any act, delay or omission or otherwise to have waived any right or remedy which the Funds may have regarding the collection of debt referred to in paragraph "1", and no course of dealing among the Funds, the Union and/or the Employer may serve to change or modify this Agreement.

12.   The applicable law is the law of the United States and/or the law of the State of New Jersey, whichever law is more favorable to the Funds.

13.   If any provision of the Agreement proves to be unenforceable or illegal, the remainder of the Agreement shall not be affected thereby.

14.   In consideration for the above, the Funds agree to withdraw any actions or proceedings now pending against the Employer for the debt referred to in paragraph "1" hereof.

15.  The Funds shall retain all of their rights under any existing judgments or arbitration awards in favor of the Funds and against the Employer that do not relate to the debt referred to in paragraph "1" hereof.

16.  This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns.

EMPLOYER:                          1199/SEIU GREATER NEW YORK FUNDS

By: _____      By: _____
                                        TRUSTEE - JAY SACKMAN
Print
name: _____      By: _____
                                        TRUSTEE - JOHN CHIODA

STATE OF NEW JERSEY      )
                         )
COUNTY OF MIDDLESEY      )

On this  5  day of NOVEMBER, 2004 before me personally came JOHN S. PILEK to me known, and known to me to be the ADMINISTRATOR of THE PAVILIONS & FIRESIDE on being by me duly sworn, he deposed and said that he held such position and was duly authorized to sign the foregoing Agreement on behalf of said Facility, and thereupon signed the Agreement.

_____
        Notary Public

KRISTINA PINTER
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/8/2009

\03[nj1199confessionjudgement]

-6-

MAY-04-2005 15:27 FROM:                                    TO:9143459690                    P.1/1

Plaza Regency a/k/a Pavillion at Forrestral #35012

## PAYMENT SCHEDULE
### FOR THE PERIOD
### DECEMBER 1, 2003-OCTOBER 31, 2004

**TOTAL WELFARE DUE** $214,397.40

| DUE DATE | | WELFARE | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|
| 11/10/04 | payment #1 | $35,732.90 | $178,664.50 | | $35,732.90 | Nov-04 |
| 12/10/04 | payment #2 | $35,732.90 | $142,931.60 | $1,786.65 | $37,519.55 | Dec-04 |
| 01/10/05 | payment #3 | $35,732.90 | $107,198.70 | $1,429.32 | $37,162.22 | Jan-05 |
| 02/10/05 | payment #4 | $35,732.90 | $71,465.80 | $1,071.99 | $36,804.89 | Feb-05 |
| 03/10/05 | payment #5 | $35,732.90 | $35,732.90 | $714.66 | $36,447.56 | Mar-05 |
| 04/10/05 | payment #6 | $35,732.90 | $0.00 | $357.33 | $36,090.23 | Apr-05 |
| | **TOTALS** | $214,397.40 | | $5,359.94 | $219,757.34 | |

# EXHIBIT C

## LAW OFFICES
### RICHARD M. GREENSPAN, P.C.

*Richard M. Greenspan*
*Helen Wrobel*

50 CHARLES LINDBERGH BOULEVARD - SUITE 602
UNIONDALE, NEW YORK 11553
Telephone (516) 465-4216
Fax (516) 794-1244

**WESTCHESTER OFFICE**
Parkway Plaza II
Elmsford, NY 10523
Telephone (914) 345-2100
Fax (914) 345-9690

**BY FACSIMILE AND MAIL**
March 30, 2005

John Pilek
Administrator
Pavillion @ Forrestal
5000 Windrows Drive
Princeton, NJ 08540

RE:   SEIU 1199 New Jersey Health Care Union, AFL-CIO and Pavillion @ Forrestal

Dear Mr. Pilek:

As you know, we are acting as Counsel to the 1199/SEIU Greater New York Funds ("Funds"), with respect to the referenced matter. Please be advised that Pavillion @ Forrestal ("Pavillion") is in default and delinquent in payments due pursuant to the Pay-Out Agreement and Confession of Judgment entered into with the 1199/SEIU Greater New York Funds. None of the arrears payments have been made.

In addition, Pavillion has failed to remain current in its obligations to the Funds. No payments have been received for the months of February and March 2005. Under the terms of the Pay-Out Agreement and Consent Judgment, Pavillion is required to remain current in its obligations. Such failure is a breach of the Agreement that requires immediate cure.

In accordance with the Pay-Out Agreement and Consent Judgment, please consider this letter as a formal demand to cure this delinquency. Please forward payment of the entire amount now delinquent, including interest on the current obligations, to Anthony Petrella within ten (10) days of the date of this letter, along with documentation to support the amounts paid. Failure to make payment will result in further proceedings being instituted in accordance with instructions from our client.

Very truly yours,

Helen Wrobel

Cc:   Milly Silva    Larry Alcoff       Tony Petrella        Norman DeGeneste



EXHIBIT
B

# EXHIBIT D

Sent By: 1199UNION;        516 794 1244;        May-3-05  2:25PM;        Page 3/4

# LAW OFFICES
## RICHARD M. GREENSPAN, P.C.

*Richard M. Greenspan*
*Helen Wrobel*

50 CHARLES LINDBERGH BOULEVARD - SUITE 602
UNIONDALE, NEW YORK 11553
Telephone (516) 465-4216
Fax (516) 794-1244

**WESTCHESTER OFFICE**
Parkway Plaza II
Elmsford, NY 10523
Telephone (914) 345-2100
Fax (914) 345-9690

**BY FACSIMILE AND MAIL**

April 18, 2005

John Pilek
Administrtor
Pavillion @ Forrestal
5000 Windrows Drive
Princeton, NJ 08540

RE:    SEIU 1199 New Jersey Health Care Union, AFL-CIO and Pavillion @ Forrestal

Dear Mr. Pilek:

On March 30, 2005, I sent a letter to you advising that Pavillion @ Forrestal ("Pavillion") was in default and delinquent in payments due pursuant to the Pay-Out Agreement and Confession of Judgment entered into with the Greater New York Nursing Home Division of 1199 Funds ("Funds"). The letter also advised that Plaza had failed to remain current in its obligations to the Funds.

Pavillion failed to heed our demand to cure its default and delinquency. As a result, absent immediate cure, we have been instructed by our client to commence legal action to enforce the Agreement. Any such cure is to be sent to Tony Petrella no later than May 2, 2005.

A Statement of Position from December 1, 2003 through March 31, 2005, as of April 12, 2005, is attached.

Very truly yours,

*Helen Wrobel*

Helen Wrobel

Cc:    Milly Silva
       Larry Alcoff
       Norman DeGeneste
       Tony Petrella



EXHIBIT
C

# EXHIBIT E



National Benefit Fund • (646) 473-9200 | Pension Fund • (646) 473-8666
Greater New York Benefit Fund • (212) 541-9150 | Pension Fund • (646) 473-8666
Home Care Employees Benefit and Pension Funds • (646) 473-920C
Home Health Aide Benefit Fund • (646) 473-7470

**1199SEIU**
**Benefit and Pension Funds**
*A Partnership for Excellence*

330 WEST 42ND STREET   NEW YORK, NY 10036-6977   WWW.1199NBF.ORG

*Audit*
**FILE**
EQ 438046952US

**Via: EXPRESS MAIL**

April 18, 2006

Mr. David Grietzer
Administrator
Plaza Regency at the Windrows  (35012)
5000 Windrow Drive
Princeton, NJ  08540

**Re:** Audit - 1199 Health & Benefits Fund    6/1/05 – 11/30/05

Dear Mr. Grietzer:

Enclosed, herewith, please find a photostatic copy of the completed audit of Plaza Regency at the Windrows, which was revised on April 18, 2006.  Below, you will find a summary of the audit amount due the appropriate Fund as of the date of this letter.

|  |  | Benefit | Total |
|---|---|---|---|
| Current  Audit  DEL. | 6/1/05-11/30/05 | $66,300.00 | $66,300.00 |
| Current  Audit  DEF. | 6/1/05-11/30/05 | 24,440.00 | 24,440.00 |
| BALANCE DUE: | 6/1/05-11/30/05 | $90,740.00 | $90,740.00 |
| ADD:  Interest |  | 3,629.60 | 3,629.60 |
| **TOTAL DUE:** | **6/1/05-11/30/05** | **$94,369.60** | **$94,369.60** |

Please note that included in the statement of delinquencies due the Funds, is a demand for payment of interest amounting to **$3,629.60** due to the loss of income incurred on all outstanding monies due the Funds.

Please review the audit immediately.   Should you have any questions, please contact the undersigned at (646) 473-6460.  Your failure to remit all outstanding monies due the Funds within fifteen (15) days of the date of this letter will cause this office to begin immediate proceedings to collect.

Sincerely,

*Anthony Petrella*

Anthony Petrella, Controller
Finance Department

Enclosure
Cc: Evelyn Franzino
       Luis Garay
       Julie Schatz, Esq. – Richard M. Greenspan, P.C.

Although these Funds are jointly administered, benefits are subject to each Fund's Summary Plan Description (SPD) and the discretion of the Trustees of that Fund.

**GREATER NURSING HOME DIVISION**
**AUDIT SUMMARY REPORT**

| | |
|---|---|
| NAME | PLAZA REGENCY @ THE WINDROWS |
| ADDRESS | 5000 WINDROWS DRIVE<br>PRINCETON, NJ |
| TYPE OF CONTRACT | 1199 |
| AUDIT OR REVIEW | AUDIT |
| OFFICE CONTACT | John Pilek, Adm     609 987-1221 |
| TYPE OF PAYROLL | ADP Payroll |
| AUDIT PERIOD | 9/1/05-11/30/05 |
| BARGAINING UNIT | C.N.A'S, HSKPG, DIETARY, LAUNDRY, LPN'S, UNIT CLERKS<br>UNIT SECRETARIES, ACTIVITIES/RECREATION, MAINT., NOT RN'S |

**DEFFICIENCY OR ADJUSTMENTS**

| | | WELFARE |
|---|---|---|
| TOTAL DUE | 6/1/05-11/30/05 | 90,740.00 |
| **TOTAL DUE** | 6/1/05-11/30/05 | 90,740.00 |

**REASONS FOR DEFICIENCY OR ADJUSTMENT**

| | |
|---|---|
| Unreported monthly contributions , Sept. '05 thru Nov. '05 (See attached Sch-C) | 66,300.00 |
| Unreported employees, not reported prior to May. '05 (Deff. For Sept. '05 thru Nov. '05, See Sch B) | 13,000.00 |
| Unreported employees, included in May '05 report, (Deff for June '05 thru Aug. '05 See Sch B-1) | 8,320.00 |
| Unreported employees, not included in May '05 report (Deff. For June '05 thru Aug. '05, (See Sch- B-1) | 3,120.00 |
| | 90,740.00 |

**Additional comments**

Welfare                 Per capita     $ 260.00/member
Audit period 12/1/03-6/30/05

Probation for Wel. Is 6-Month, Per Capita all the way thru 2005

Contract Effective Dec. 1, 2001 thru April 3, 2005

Welfare Fund only , effective 12/1/03

Note: June and July 2005 Liabilities are estimated amts. Reports NOT received from Facility as of 8/25/05

**STATEMENT OF POSITION**

| | | WELFARE | TOTAL |
|---|---|---|---|
| | | 90,740.00 | 90,740.00 |
| | | | 90,740.00 |
| TOTAL DUE | 6/1/05-11/30/05 | 90,740.00 | |

| | | | |
|---|---|---|---|
| AUDITOR'S NAME | **LUIS P. GARAY** | Completed on | Aug. 1, 2005 |

PLAZA REGENCY @ THE WINDROWS
5000 WINDROWS DRIVE
PRINCETON, NJ

## SCHEDULE A
## SUMMARY OF AMOUNTS DUE
9/1/05-11/30/05

| | | | WELFARE | TOTAL |
|---|---|---|---|---|
| DELINQUENCY DUE | 9/1/05-11/30/05 | SCH C | 66,300.00 | 66,300.00 |
| DEFICIENCY | 9/1/05-11/30/05 | SCH B | 13,000.00 | 13,000.00 |
| DEFFICIENCY | 6/1/05-8/31/05 | SCH-B-1 | 11,440.00 | 11,440.00 |
| TOTAL DUE | 9/1/05-11/30/05 | | 90,740.00 | 90,740.00 |
| | | | | |
| COMBINED AMOUNTS DUE | | | | |
| DELINQUENCY DUE | 9/1/05-11/30/05 | SCH C | 66,300.00 | 66,300.00 |
| DEFFICIENCY | 9/1/05-11/30/005 | SCH B | 13,000.00 | 13,000.00 |
| DEFFICIENCY | 6/1/05-8/31/05 | SCH-B-1 | 11,440.00 | 11,440.00 |
| TOTAL DUE | 9/1/05-11/30/005 | | 90,740.00 | 90,740.00 |

Page 1 of 1

**PLAZA REGENCY @ THE WINDROWS**
5000 WINDROWS DRIVE
PRINCETON, NJ

**SCH-C**
**UNREPORTED CONTRIBUTIONS**
**MONTHLY CONTRIBUTION REPORT**
**2005**

Grand total: 66300

| Last name | First | SS # | Dept # | Dept Name | Hire Date | S/B/R ON | Term Date | On Previous Rep. (May '05) | SEPT '05 | SEPT '05 | OCT '05 | OCT '05 | NOV '05 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul | Santanna | 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 | 606030 | c.n.a | 12/15/00 | 12/1/03 | | | 48 | 47 | 260 | 44 | 260 |
| Roberts | Grace | 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 | 606030 | c.n.a | 10/18/99 | 12/1/03 | | x | 49 | 48 | 260 | 45 | 260 |
| Rogers | Shanon | 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 | 606030 | c.n.a | 8/10/04 | 2/6/05 | | x | 50 | 49 | 260 | 46 | 260 |
| Roosevelt | Jolieus | 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 | 606030 | c.n.a | 10/6/98 | 12/1/03 | | x | 51 | 50 | 260 | 47 | 260 |
| Saint-Felix | Live | 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 | 606030 | c.n.a | 9/25/01 | 3/24/02 | | x | 52 | 51 | 260 | 48 | 260 |
| Seche | Willielmine | 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 | 606030 | c.n.a | 2/17/04 | 6/1/04 | | x | 53 | 52 | 260 | 49 | 260 |
| Sheriff | Memuna | 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 | 606030 | c.n.a | 3/2/99 | 12/1/03 | | x | 54 | 53 | 260 | 50 | 260 |
| Thorpe | Henry | 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 | 608030 | c.n.a | 8/10/04 | 2/8/05 | | x | 55 | 54 | 260 | 51 | 260 |
| Yavogar | Rose | 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 | 606030 | c.n.a | 10/5/04 | 4/3/05 | | x | 56 | 55 | 260 | 52 | 260 |
| Yearwood | Alexandra | 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 | 606030 | c.n.a | 6/4/02 | 12/1/02 | | x | 57 | 56 | 260 | 53 | 260 |
| Bernard | Frankline | 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 | 606040 | Restora | 10/23/00 | 12/1/03 | | x | 58 | 57 | 260 | 54 | 260 |
| Wilson | Emma Okai | 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 | 606040 | Restora | 11/18/02 | 12/1/03 | | x | 59 | 58 | 260 | 55 | 260 |
| Williams-Turay | Lynda | 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 | 616100 | Unit Sec | 6/18/04 | 9/18/04 | | x | 60 | 59 | 260 | 56 | 260 |
| Caselle | Eugene | 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 | 737310 | Diet | 3/6/03 | 12/1/03 | | x | 61 | 60 | 260 | 57 | 260 |
| Charles | Edgard | 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 | 737310 | Diet | 7/28/97 | 12/1/03 | | x | 62 | 61 | 260 | 58 | 260 |
| Chery | Joubert | 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 | 737310 | Diet | ? | 12/1/03 | | x | 63 | 62 | 260 | 59 | 260 |
| Dearien | Marcia | 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 | 737310 | Diet | 3/2/04 | 8/29/04 | | x | 64 | 63 | 260 | | 0 |
| Exume-Joseph | Katelle | 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 | 737310 | Diet | 11/18/04 | 12/1/03 | | x | 65 | 64 | 260 | 60 | 260 |
| Guerrier | Kasner | 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 | 737310 | Diet | 5/5/03 | 12/1/03 | | x | 66 | 65 | 260 | 61 | 260 |
| Lacroix | Fritz | 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 | 737310 | Diet | 4/1/04 | 7/1/04 | | x | 67 | 66 | 260 | 62 | 260 |
| Lacroix | Marie Yolene | 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 | 737310 | Diet | 2/17/01 | 12/1/03 | | x | 68 | 67 | 260 | 63 | 260 |
| Pierre Charles | Thomas | 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 | 737310 | c.n.a | 9/25/01 | 12/1/03 | | x | 69 | 68 | 260 | 64 | 260 |
| Recontra | Reginald | 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 | 737310 | Diet | 4/4/01 | 12/1/03 | | x | 70 | 69 | 260 | 65 | 260 |
| Samedi | Silvina | 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 | 737310 | Diet | 12/10/01 | 12/1/03 | | x | 71 | 70 | 260 | 66 | 260 |
| Santos | Angel | 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 | 737310 | Diet | 3/22/04 | 9/18/04 | | x | 72 | 71 | 260 | 67 | 260 |
| Zielinski | Valerie | 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 | 737310 | Diet | 12/5/97 | 12/1/03 | | x | 73 | 72 | 260 | 68 | 260 |
| Reid | Valerie | 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 | 737430 | Laundry | 5/1/99 | 12/1/03 | | x | 74 | 73 | 260 | 69 | 260 |
| Armstrong | Peggy | 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 | 747430 | Laundry | 7/15/04 | 11/1/04 | | x | 75 | 74 | 260 | 70 | 260 |
| Picott | Nadine | 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 | 747430 | Laundry | 2/18/04 | 8/16/04 | | x | 76 | 75 | 260 | 71 | 260 |
| Felissaint | Jean Claude | 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 | 757530 | hskp | 11/4/02 | 12/1/03 | | x | 77 | 76 | 260 | 72 | 260 |
| Gabriel | Marie | 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 | 757530 | hskp | 4/2/03 | 12/1/03 | | x | 78 | 77 | 260 | 73 | 260 |
| Gilliam | Carolyn | 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 | 757530 | hskp | 7/23/97 | 1/19/98 | | x | 79 | 78 | 260 | 74 | 260 |
| Gomez | Laura | 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 | 757530 | hskp | 4/16/03 | 12/1/03 | | x | 80 | | 260 | 75 | 260 |
| Javier | Monette | 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 | 757530 | hskp | 7/13/04 | 11/1/04 | | x | 81 | 79 | 260 | | 0 |
| Jenkins | Lamar | 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 | 757530 | Hskp | 7/6/04 | 10/6/04 | | x | 82 | 80 | 260 | 76 | 260 |
| Massaquoi | Alusine | 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 | 757530 | Hskp | 1/2/01 | 12/1/03 | | x | 83 | 81 | 260 | 77 | 260 |
| Rivera | Justa | 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 | 757530 | Hskp | 2/5/02 | 12/1/03 | | x | 84 | 82 | 260 | 78 | 260 |
| Mendez | Arnold | 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 | 767610 | Maint | 7/21/04 | 1/17/05 | | x | 85 | 83 | 260 | pt | 0 |
| Appelson | Carolle | 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 | 929210 | Acti. Aide | 9/25/04 | 4/1/05 | | x | 86 | 84 | 260 | 80 | 260 |
| Ball | Dora-mae | 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 | 929210 | Acti. Aide | 7/3/97 | 12/30/97 | | x | 87 | 85 | 260 | 81 | 260 |
| Lee | Nicole | 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 | 929210 | Acti. Aide | 4/21/03 | 12/1/03 | | x | 88 | | 260 | 82 | 260 |
| | | | | | | | | | | 22880 | 22100 | | 21320 |

SCH-C

UNREPORTED CONTRIBUTIONS

MONTHLY CONTRIBUTION REPORT

2005

**PLAZA REGENCY @ THE WINDROWS**
5000 WINDROWS DRIVE
PRINCETON, NJ

| Last name | First | SS # | Dept Name | Dept # | Hire Date | S/B/R ON | Term Date | On Previous Rep. (May '05) | SEPT '05 | SEPT '05 | OCT '05 | NOV '05 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adams | Muni | 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 | lpn | 606020 | 6/16/03 | 12/1/03 | | x | 1 | 260 (1) | 260 (1) | 260 (1) |
| Akitunde O | Olubisi | 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 | lpn | 606020 | 12/9/03 | 6/6/04 | | x | 2 | 260 (2) | 260 (2) | 260 (2) |
| Bangura | Patricia | 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 | lpn | 606020 | 7/3/03 | 1/27/04 | | x | 3 | 260 (3) | 260 (3) | 260 (3) |
| Carsella | Virginia | 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 | lpn | 606020 | 10/21/97 | 12/1/03 | | x | 4 | 260 (4) | 260 (4) | 260 (4) |
| Couture | Beverly | 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 | lpn | 606020 | 4/25/03 | 10/22/03 | | x | 5 | 260 (5) | 260 (5) | 260 (5) |
| Crismon | Judith | 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 | lpn | 606020 | 5/9/03 | 12/1/03 | | x | 6 | 260 (6) | 260 (6) | 260 (6) |
| Desloges | Michelle | 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 | lpn | 606020 | 6/4/03 | 12/01/03 | | x | 7 | 260 (7) | 260 (7) | 260 (7) |
| Fofana | Fatmata | 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 | lpn | 606020 | 10/12/04 | 1/12/05 | | x | 8 | 260 (8) | 260 (8) | 260 (8) |
| Hassan | Reginald | 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 | lpn | 606020 | 8/19/03 | 2/15/04 | | x | 9 | 260 (9) | 260 (9) | 260 (9) |
| Hughes | Karen | 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 | lpn | 606020 | 9/29/03 | 1/1/04 | | x | 10 | 260 (10) | 260 (10) | 260 (10) |
| Jalloi | Mariama | 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 | lpn | 606020 | 10/19/02 | 12/1/03 | | x | 11 | 260 (11) | 260 (11) | 260 (11) |
| Kai-Tongui | Esther | 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 | lpn | 606020 | 12/3/03 | 5/31/04 | | x | 12 | 260 (12) | 260 (12) | 260 (12) |
| Polizi | Donna | 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 | lpn | 606020 | 6/16/03 | 12/1/03 | | x | 13 | 260 (13) | 260 (13) | 260 (13) |
| Roberts | Joseph | 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 | lpn | 606020 | 2/5/05 | 8/1/05 | | x | 14 | 260 (14) | 260 (14) | 0 |
| Satterfield | Sophia | 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 | lpn | 606020 | 4/1/04 | 7/1/04 | | x | 15 | 260 (15) | 260 (15) | 260 (14) |
| Turay | Mariatu | 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 | lpn | 606030 | 7/1/03 | 12/28/03 | | x | 16 | 260 (16) | 260 (16) | 260 (15) |
| Ankrah | Anthony | 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 | c.n.a | 606030 | 6/24/04 | 12/11/04 | | x | 17 | 260 (17) | 260 (17) | 260 (16) |
| Ansong | Juliana | 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 | c.n.a | 606030 | 12/3/03 | 5/31/04 | | x | 18 | 260 (18) | 260 (18) | 260 (17) |
| Augustin | Marie | 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 | c.n.a | 606030 | 5/29/03 | 12/1/03 | | x | 19 | 260 (19) | 260 (19) | 260 (18) |
| Aurel | Marie | 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 | c.n.a | 606030 | 2/2/03 | 8/1/03 | | x | 20 | 260 (20) | 260 (20) | 260 (19) |
| Bangura | Fatu | 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 | c.n.a | 606030 | 6/24/01 | 12/21/01 | | x | 21 | 260 (21) | 260 (21) | 260 (20) |
| Bangura | Mary | 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 | c.n.a | 606030 | 11/1/04 | 4/30/05 | | x | 22 | 260 (22) | 260 (22) | 260 (21) |
| Bernard | Dalphine | 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 | c.n.a | 606030 | 11/5/01 | 5/4/02 | | x | 23 | 260 (23) | 260 (23) | 260 (22) |
| Bien Aime | Marie | 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 | c.n.a | 606030 | 12/20/03 | 4/1/04 | | x | 24 | 260 (24) | 260 (24) | 260 (23) |
| Blain | Julda | 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 | c.n.a | 606030 | 10/9/01 | 4/7/02 | | x | 25 | 260 (25) | 260 (25) | 260 (24) |
| Biango | Mariama | 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 | c.n.a | 606030 | 5/7/02 | 12/1/03 | | x | 26 | 260 (26) | 260 (26) | 260 (25) |
| Bobbit | Ebony | 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 | c.n.a | 606030 | 8/19/03 | 12/1/03 | | x | 27 | 260 (27) | 260 (27) | 260 (26) |
| Brima | Abubarker | 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 | c.n.a | 606030 | 9/14/04 | 3/13/05 | | x | 28 | 260 (28) | 260 (28) | 260 (27) |
| Cadete | Soline | 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 | c.n.a | 606030 | 10/9/01 | 4/7/02 | | x | 29 | 260 (29) | 0 | 0 |
| Camille | Ariana | 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 | c.n.a | 606030 | 2/5/03 | 12/1/03 | | x | 30 | 260 (30) | 260 (29) | 260 (28) |
| Conteh | Makalay | 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 | c.n.a | 606030 | 8/14/04 | 2/10/05 | | x | 31 | 260 (31) | 260 (30) | 260 (29) |
| Desjuste | Jeanette | 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 | c.n.a | 606030 | 3/2/99 | 8/29/99 | | x | 32 | 260 (32) | 260 (31) | 260 (30) |
| Edouard | Marlene | 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 | c.n.a | 606030 | 10/29/01 | 12/1/03 | | x | 33 | 260 (33) | 260 (32) | 260 (31) |
| Gbeyi | Kumba | 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 | c.n.a | 606030 | 2/3/04 | 8/1/04 | | x | 34 | 260 (34) | 260 (33) | 260 (32) |
| Harding | Ruth | 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 | c.n.a | 606030 | 10/14/03 | 1/14/04 | | x | 35 | 260 (35) | 260 (34) | 260 (33) |
| Henry | Duvy | 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 | c.n.a | 606030 | 6/2/98 | 12/1/03 | | x | 36 | 260 (36) | 260 (35) | 260 (34) |
| Henry-Cyrise | Sheraisa | 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 | c.n.a | 606030 | 7/28/97 | 12/1/03 | | x | 37 | 260 (37) | 260 (36) | 260 (35) |
| Joasil | Veline | 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 | c.n.a | 606030 | 6/24/01 | 12/1/03 | | x | 38 | 260 (38) | 260 (37) | 260 (36) |
| Josil-Chery | Cereste | 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 | c.n.a | 606030 | 12/21/97 | 6/19/98 | | x | 39 | 260 (39) | 260 (38) | 260 (37) |
| Kissi | Veronica | 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 | c.n.a | 606030 | 4/1/04 | 7/1/04 | | x | 40 | 260 (40) | 260 (39) | 260 (38) |
| Koroma | John | 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 | c.n.a | 606030 | 6/15/04 | 12/12/04 | | x | 41 | 260 (41) | 260 (40) | 260 (39) |
| Labranche | Denise | 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 | c.n.a | 606030 | 2/13/98 | 12/1/03 | | x | 42 | 260 (42) | 260 (41) | 260 (40) |
| Lemaistre | Adeline | 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 | c.n.a | 606030 | 2/2/99 | 12/1/03 | | x | 43 | 260 (43) | 260 (42) | 260 (41) |
| Mannings | Pearlena | 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 | c.n.a | 606030 | 6/1/99 | 12/1/03 | | x | 44 | 260 (44) | 260 (43) | 260 (42) |
| Mente | Selena | 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 | c.n.a | 606030 | 12/15/02 | 12/1/02 | | x | 45 | 260 (45) | 260 (44) | 260 (43) |
| Milord | Celifaite | 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 | c.n.a | 606030 | 7/6/99 | 1/2/00 | | x | 46 | 260 (46) | 260 (45) | 260 (44) |
| Osei | Patricia | 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 | c.n.a | 606030 | 3/16/04 | 9/12/04 | | x | 47 | 260 (47) | 260 (46) | 260 (45) |

page 1 of 2

**PLAZA REGENCY @ THE WINDROWS**
5000 WINDROWS DRIVE
PRINCETON, NJ

**SCH-B**
**UNREPORTED CONTRIBUTIONS**
**DEFFICIENCY**
**2005**

| Last name | First | SS # | Dept Name | Dept # | Hire Date | S/B/R ON | Term Date | On Previous Rep. (May '05) | SEPT '05 | SEPT '05 | | OCT '05 | | NOV '05 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bona | Susan | 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 | lpn | 606020 | 3/23/05 | 10/1/05 | | | 1 | prob | 1 | 260 | 1 | 260 | |
| Caseus | Elizabeth | 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 | lpn | 606020 | 2/27/05 | 9/1/05 | | | 2 | 260 | 2 | 260 | 2 | 260 | |
| Naro | Mary-Ann | 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 | lpn | 606020 | 2/13/05 | 6/1/05 | | | 3 | 260 | 3 | 260 | 3 | 260 | |
| Williams | Bridget | 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 | lpn | 606020 | 11/25/04 | 6/1/05 | | | 4 | 260 | 4 | 260 | 4 | 260 | |
| Amandi | Doris | 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 | c.n.a | 606030 | 11/22/04 | 6/1/05 | | | 5 | 260 | 5 | 260 | 5 | 260 | |
| Bangura | Shieka | 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 | c.n.a | 606030 | 2/2/01 | 12/1/03 | | | 6 | 260 | 6 | 260 | 6 | 260 | |
| Eseme-Ikile | Mercy | 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 | c.n.a | 606030 | 12/1/04 | 6/1/05 | | | 7 | 260 | 7 | 260 | 7 | 260 | |
| Eulsey | Connetta | 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 | c.n.a | 606030 | 12/1/04 | 6/1/05 | | | 8 | 260 | 8 | 260 | 8 | 260 | |
| Fagan | Patrica | 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 | c.n.a | 606030 | 12/1/04 | 6/1/05 | | | 9 | 260 | 9 | 260 | 9 | 0 | |
| Isaac | Rose M | 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 | c.n.a | 606030 | 5/9/05 | 11/1/05 | | | 10 | prob | 10 | prob | 10 | 260 | |
| Johnson | Adeline | 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 | c.n.a | 606030 | 5/9/05 | 6/1/05 | | | 11 | 260 | 11 | prob | 11 | 260 | |
| Kanu | Patrick | 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 | c.n.a | 606030 | 12/1/04 | 6/1/05 | | | 12 | 260 | 12 | 260 | 12 | 260 | |
| Turay | Kaba | 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 | c.n.a | 606030 | 3/1/05 | 9/1/05 | | | 13 | 260 | 13 | 260 | 13 | 260 | |
| Vandy | Olynda | 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 | c.n.a | 606030 | 2/20/05 | 6/1/05 | | | 14 | 260 | 14 | 260 | 14 | 260 | |
| Williams | Amay | 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 | c.n.a | 606030 | 5/9/05 | 11/1/05 | | | 15 | 260 | 15 | 260 | 15 | 260 | |
| Robinson | Crysta Lynn | 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 | Unit Sec | 616100 | 12/1/97 | 12/1/03 | | | 16 | 260 | 16 | 260 | 16 | 260 | |
| Elder Jr. | Larry | 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 | Diet | 737310 | 8/25/05 | 3/1/06 | | | 17 | 260 | 17 | 260 | 17 | 260 | |
| Bethea | Jessie | 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 | Laundry | 747430 | 12/10/03 | 7/1/05 | | | 15 | 260 | 17 | 260 | 18 | 260 | |
| Johnson | Rebeca | 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 | Hskp | 757530 | 4/1/05 | 10/1/05 | | | | prob | | prob | | 260 | |
| | | | | | | | | Totals... | | 3,900 | | 4,420 | | 4,680 | 13,000 |

**PLAZA REGENCY @ THE WINDROWS**
5000 WINDROWS DRIVE
PRINCETON, NJ

**SCH-B-1**
**UNREPORTED CONTRIBUTIONS**
**2005**
**DEFFICIENCY**

| Last | First | SS # | Rate | | Dues | | Dept Name | Dept # | Hire Date | S/B/R ON | May '05 | | 6/4 Jun '05 | 6/18 Jun '05 | 7/2 Jul '05 | 7/16 Jul '05 | 7/30 Jul '05 | 8/13 Aug '05 | 8/27 Aug '05 | 9/10 Sept '05 | 9/24 Sept '05 | 10/8 Oct '05 | 10/22 Oct '05 | 11/5 Nov '05 | 11/1 effectiv Nov '05 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Unreported employees, still unreported after May 2005** | | | | | | | | | | | | | | | | | | | | | | | | | |
| New 1 Naro | Maryanne | 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 | 25.1 | f/t EII | x | no | lpn | 606020 | 2/13/05 | 6/1/05 | | | 129 | 260 | 221 | 260 | 260 | 0 | 141 | 260 | 0 | | | | |
| New 1 Roberts | Joseph | 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 | 25.1 | f/t EII | x | yes | lpn | 606020 | 2/5/05 | 5/1/05 | | | 159 | 260 | 197 | 260 | 260 | 0 | 161 | 260 | 0 | | | | |
| New 1 Gabriel | Marie | 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 | 10.7 | f/t EII | | yes | hskp | 606030 | 4/2/03 | 12/1/03 | | | 149 | 260 | 232 | 260 | 260 | 0 | 150 | 260 | 0 | | | | |
| New 1 Robinson | Cryslla Lyl | 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 | 15.75 | f/t EII | | yes | nit Se | 616105 | 12/1/97 | 12/1/03 | | | 156 | 260 | 206 | 260 | 260 | 0 | 150 | 260 | 0 | | | | |
| | | | | | | | | | | | | | | 1040 | | 1040 | 1040 | | 1040 | | 0 | 0 | 0 | 0 | 3,120 |
| **Contributions paid Till May 2005, but not paid from June thru Nov** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Old 1 Chrismol | Judith | 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 | 27 | f/t EII | x | no | lpn | 606020 | 5/9/03 | 12/1/03 | paid | paid | 155 | 260 | 218 | 260 | 260 | 153 | 260 | 260 | | | | | |
| Old 1 Couture | Beverly | 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 | 23.1 | f/t EII | x | yes | lpn | 606020 | 9/20/04 | 1/1/05 | paid | paid | 135 | 260 | 183 | 260 | 260 | 114 | 260 | 260 | 0 | 0 | 0 | | |
| Old 1 Folana | Fatmata | 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 | 22.8 | ne Sept | | no | lpn | 606020 | 10/12/04 | 1/12/05 | paid | paid | 149 | 260 | 214 | 260 | 260 | 145 | 260 | 260 | | | | | |
| Old 1 Hughes | Karen | 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 | 28.9 | f/t EII | x | yes | lpn | 606020 | 10/19/02 | 1/1/04 | paid | paid | 133 | 260 | 224 | 260 | 260 | 130 | 260 | 260 | 0 | 0 | 0 | | |
| Old 1 Jallol | Mariama | 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 | 26.5 | f/t EII | x | - | lpn | 606020 | 10/19/02 | 12/1/03 | paid | paid | 149 | 260 | 231 | 260 | 260 | 140 | 260 | 260 | | | | | |
| Old 1 Jones | Corey | 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 | 27.4 | f/t EII | sup | yes | lpn | 606020 | 6/2/03 | 12/1/03 | paid | paid | 152 | 260 | 227 | 260 | 260 | 152 | 260 | 260 | | | | | |
| Old 1 Satterfiel | Sophia | 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 | 25 | f/t EII | x | no | lpn | 606020 | 4/1/04 | 7/1/04 | paid | paid | 140 | 260 | 215 | 260 | 260 | 158 | 260 | 260 | 0 | 0 | 0 | | |
| Old 1 Ankrah | Anthony | 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 | 11.1 | f/t EII | x | yes | c.n.a | 606030 | 6/14/04 | 10/1/04 | paid | paid | 120 | 260 | 187 | 260 | 260 | 90 | 260 | 260 | | | | | |
| Old 1 Bernard | Daphino | 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 | 11.1 | f/t EII | x | - | c.n.a | 606030 | 11/5/01 | 12/1/03 | paid | paid | 128 | 260 | 103 | 260 | 260 | 135 | 260 | 260 | | | | | |
| Old 1 Mendez | Arnoldo | 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 | 14 | f/t EII | | no | Maint | 767610 | 7/21/04 | 11/1/04 | paid | paid | 151 | 260 | 179 | 260 | 260 | 139 | 260 | 260 | | | | | |
| Old 1 Appelsor | Carole | 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 | 11 | f/t EII | | yes | Lead | 929210 | 9/25/04 | 1/1/05 | paid | paid | 139 | 260 | 200 | 260 | 260 | 131 | 260 | 260 | | | | | |
| | | | | | | | | | | Totals. | | | | 2860 | 3900 | 2860 | 2860 | | | 3640 | | 0 | 0 | 0 | 8,320 |
| | | | | | | | | | | | | | | | | | | | | | | | | | 11,440 |

4/5/06

4/18/2006

LGaray

**PLAZA REGENCY @ THE WINDROWS**
5000 WINDROWS DRIVE
PRINCETON, NJ

**SCHEDULE C**
**ANALYSIS OF PAYMENTS**
7/1/05-11/30/05

| | WELFARE LIABILITY | WELFARE PAID | BALANCE DUE | # Employees |
|---|---|---|---|---|
| Jul '05 | 22,100.00 | 22,100 | - | 85.00 |
| Aug '05 | 22,100.00 | 22,100 | - | 85.00 |
| Sept '05 | 22,880.00 | 0 | 22,880.00 | 88.00 |
| Oct '05 | 22,100.00 | 0 | 22,100.00 | 85.00 |
| Nov '05 | 21,320.00 | 0 | 21,320.00 | 82.00 |
| Totals | 110,500.00 | 44,200.00 | 66,300.00 | |

**ANALYSIS OF DELINQUENCY**
**WELFARE**

| | |
|---|---|
| Liability | 44,200.00 |
| Payments | 110,500.00 |
| Delinquency | (66,300.00) |

4/18/2006

LGaray

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------X

GREATER NEW YORK NURSING HOME
DIVISION OF THE 1199/SEIU GREATER NEW
YORK BENEFIT FUND,

CIVIL ACTION NUMBER

O5-2664 (mLc)

PLAINTIFF,

-AGAINST-

**COMPLAINT**

PRINCETON HEALTHCARE (SNF), LLC D/B/A
PAVILLION AT FORRESTAL A/K/A PLAZA
REGENCY @ THE WINDROWS AND PLAZA
REGENCY SKILLED NURSING AND
REHABILITATION CENTER,

**RECEIVED**

MAY 23

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

DEFENDANTS.

-----------------------------------------------------------------X

Plaintiff, Greater New York Nursing Home Division of the 1199/SEIU Greater New York

Benefit Fund ("Fund"), by and through its attorneys, the Law Offices of Richard M. Greenspan,

for their complaint against Defendant Princeton Healthcare (SNF), LLC d/b/a Pavillion at

Forrestal a/k/a Plaza Regency @ The Windrows and Plaza Regency Skilled Nursing and

Rehabilitation Center ("Defendants"), allege as follows:

## JURISDICTION

1.    This is an action arising under the Employee Retirement Income Security

Act of 1974, as amended, 29 U.S.C. 1001 et. seq. (hereinafter referred to as "ERISA"), seeking

contributions to be made to the Fund by Defendant.  The subject matter jurisdiction of this Court

is invoked pursuant to 29 U.S.C. §1132(a)(3), (d)(1), (f), (g), 29 U.S.C. §1145 and 29 U.S.C.

§185.

1

## PARTIES

2.     The Fund is a jointly administered, multi-employer, Taft-Hartley benefit fund administered by Trustees designated by a union and by employers, established and maintained pursuant to §302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5) ("LMRA"). The Fund is administered and maintains offices located at 330 West 42nd Street, New York, New York 10036.

3.     The Fund is an employee benefit plan within the meaning of §3(1) and (3) of ERISA, 29 U.S.C. §1002(1),(2) and (3) and is maintained for the purpose of providing health, welfare and related benefits to eligible participants and beneficiaries.

4.     The Fund may maintain this action under §502(d)(1) and (e) of ERISA, 29 U.S.C. §1132(d)(1) and (e).

5.     Upon information and belief, Defendants' principal place of business is located at 5000 Windrows Drive, Princeton, New Jersey 08540.

6.     Defendants are an employer engaged in an industry affecting commerce within the meaning of § 3(12) of ERISA, 29 U.S.C. § 1002(12), and employ or has employed individuals included within a collective bargaining agreement ("CBA"). Pursuant to the CBA, Defendants are required to make contributions to the Fund.

## VENUE

7.     This Court has proper venue pursuant to §502(c)(2) of ERISA, 29 U.S.C. §1132(c)(2) because Defendants maintain offices in this District.

## STATEMENT OF FIRST CLAIM

8.    On November 4, 2004, the parties entered into a payout agreement and confession of Judgment ("Agreement") whereby Defendants agreed to liquidate an admitted obligation to the Fund for past due contributions and interest, totaling $214,397.40, for the period of December 1, 2003 through and including October 31, 2004.

9.    Specifically, the Agreement states that the Fund would provide Defendant with an extension of time to pay its debt in return for monthly payments of the principal sum plus interest at the rate of 12% per annum. A copy of the Agreement is attached hereto as Exhibit "A."

10.    As a further condition to this arrangement, Defendant also agreed to remain current in its monthly contributions to the Fund. Defendant also agreed that the Fund could, at its option, credit payments made in accordance with the Agreement to any unpaid current contributions as they become due.

11.    The Agreement also provides that if Defendant fails to make any of the monthly payments required by the Agreement or contributions required by the CBA, and does not cure upon ten (10) days written notice of said failure, then Defendant shall be in default of the Agreement.

12.    Most importantly, Defendant agreed that the Agreement also constitutes a Confession of Judgment which may be utilized by the Fund to enter judgment against Defendant. The Agreement provides that upon Defendant's breach, the entire unpaid balance of the aforesaid indebtedness shall become immediately due and payable and the Fund shall have the right to enter and execute judgment on the Agreement.

-3-

13.    Starting in or about November 2004, Defendant began breaching its obligations under the Agreement by failing to make monthly payments.    Additionally, Defendant has failed to remain current in its obligations to the Fund.

14.    In a letter dated March 30, 2005, the Fund notified Defendant of its failure to make payments due pursuant to the Agreement and the CBA.  A copy of that letter is attached hereto as Exhibit" B."

15.    When Defendant failed to respond to the March 30th letter, the Fund again wrote to demand cure of the default.  A copy of the April 18, 2005 cure letter is attached hereto as Exhibit "C."   More than 10 days have passed and Defendant has not cured this delinquency. Employer did not respond within 10 days.

16.    Defendant has breached the Agreement with the Fund as well as the CBA.

17.    The Agreement provides that in the event of a breach, Defendant shall pay the Fund an additional sum of 8% of the principal sum, or $17,151.79, in order to compensate the Fund for attorney's fees incurred as a result of the default.

18.    As a result of Defendant's breach of the Agreement, the Fund has suffered damages in the amount of $339,357.34, plus interest at the statutory rate, reasonable attorneys' fees, costs, disbursements, and such other and further relief that this Court deems just and proper.

19.    Additional contributions may become due and owing during the pendency of this lawsuit in accordance with the Agreement, the CBA and rules adopted by the Fund.

## STATEMENT OF SECOND CLAIM

20.    The Fund repeats each and every allegation contained in Paragraphs 1

-4-

through 19 as though fully set forth herein.

21.    As a result of Defendant's willful and repeated failure to abide by the Agreement and make timely contributions pursuant to the CBA, the Funds have suffered cognizable injuries as follows:  liquidated damages in the amount of 20% of contributions found to be due and owing, with accrued interest from the date contributions were due, along with the costs related to this lawsuit, and costs of collection, including, but not limited to, reasonable attorneys' fees and such other amounts as the Court deems just and proper.

22.    Additional contributions may become due and owing during the pendency of this lawsuit in accordance with the Agreement, the CBA and rules adopted by the Funds

23.    The Fund is without an adequate remedy at law and will suffer immediate, continuing and irreparable injury, loss and damage unless Defendant is specifically ordered to perform all of its obligations as required by the Agreement and the CBA.  Defendant must be restrained from continuing to refuse to perform its contractual obligations.

## REQUEST FOR RELIEF

WHEREFORE, the Fund requests that an order and judgment be entered in its favor and against Defendant as follows:

a.    All amounts due under the Agreement, or $219,757.34, plus interest and costs of collection, including, but not limited to, costs of this suit, expert witness fees and attorneys' fees in the sum of 8% of the principal sum owed, or $17,151.79; and

b.    Unpaid contributions, pursuant to the CBA, found to be due and owing during the pendency of this action and before final judgment, plus liquidated damages totaling 20% of the

amount due, plus interest and costs of collection, including, but not limited to, costs of this suit,

expert witness fees, reasonable attorneys' fees, and such other amounts as this Court deems just

and proper;

      c.     an Order enjoining Defendant from breaching its obligations under the Agreement

and the CBA and, specifically, requiring Defendant to perform and continue to perform all

obligations under the Agreement and CBA, including making monthly contributions in a timely

fashion;

      d.     expert witness fees, audit fees, and all other litigation costs and disbursements of

this suit;

      e.     such additional and further relief as this Court deems just and proper.

Dated: May 18, 2005

                                  Julie Pearlman Schatz (JS 6474)
                                LAW OFFICES OF RICHARD M. GREENSPAN
                                810A 31st Street - 2nd Floor
                                Union City, New Jersey 07087
                                (800) 445-7684

[jm\wpdocs05\1199NY\Complaints\Pavillion]



**1199 SEIU Benefit and Pension Funds**
*for Health and Human Service Employees*
National Benefit and Pension Funds   (646) 473-9200
Nursing Home Benefit Fund   (212) 541-9150 ■ Pension Fund   (646) 473-8666
Home Care Employees Benefit and Pension Funds   (646) 473-9200
Home Health Aide Benefit Fund   (646) 473-7470

330 West 42nd Street   New York, NY 10036-6977   www.1199nbf.org

EJ623239118US

**National Benefit Fund**

RECEIVED

MAY 0 4 2005

LAW OFFICES:
RICHARD M. GREENSPAN, P.C.

**Via:** Express Mail

May 2, 2005

Julie Schatz, Esq.
Law Offices of Richard M. Greenspan, P.C.
Parkway Plaza II
Elmsford, NY  10523

**Re:** Pavillion @ Forestal A/K/A Plaza Regency @
The Windrows    (#35012)

Dear Ms. Schatz:

As requested by Helen Wrobel, enclosed is the original signed Confession of Judgement
for the above-referenced institution.

Sincerely,

Anthony Petrella
Controller
1199/SEIU Greater NY Funds

AP/mc
Enclosure



EXHIBIT
**A**

Although these Funds are jointly administered, benefits are subject to each Fund's Summary Plan Description (SPD) and the discretion of the Trustees of that Fund.

# EXHIBIT G

**JASINSKI and WILLIAMS**
A Professional Corporation
Counsellors at Law
Ten Park Place
Newark, New Jersey  07102
Telephone 973-824-9700
Telecopier 973-824-6061
Website   www.jplawfirm.com

---

## T E L E C O P I E D

To:            Hanan B. Kolko, Esq.

Company:       Meyer, Suozzi,  English & Klein, P.C.

Fax #:         212-239-1311

From:          Jodi L. Campbell, Esq.

Date:          November 18, 2008

RE:            Civil Action No:05-cv-2664 (MLC)

---

MESSAGES/COMMENTS:

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individuals or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the United States Postal Service.

Princeton

# JASINSKI AND WILLIAMS

### A PROFESSIONAL CORPORATION
### COUNSELLORS AT LAW
### TEN PARK PLACE
### NEWARK, NEW JERSEY 07102

WEB SITE
www.jplawfirm.com

973-824-9700
TELECOPIER 973-824-6061

AFFILIATE OFFICE
1125 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401

November 18, 2008

**VIA FACSIMILE AND FIRST CLASS MAIL**
Honorable John J. Hughes, U.S.M.J.
United States District Court
District of New Jersey
402 East State Street
Trenton, New Jersey 08608
Facsimile (609) 989-0451

> **Re: Greater New York Nursing Home Division of**
> **1199/SEIU Greater New York Benefit Fund  v. Princeton**
> **Healthcare (SNF),LLC D/B/A Pavillion at Forrestal**
> **Civil Action No: 05-2664 (MLC)**

Dear Judge Hughes:

    We represent the Defendants in the above matter. I write with the consent of Plaintiff to request and adjournment of the final pre-trial conference now set before Your Honor for November 26, 2008 at 10:30 a.m.  Defendants recently filed for bankruptcy and this office is awaiting authorization from the Bankruptcy Court to continue to represent Defendants as Special Counsel in this matter.  In addition, Plaintiff will need to file a proof of claim with the Bankruptcy Court as well.  Thus, the parties jointly request that the final pretrial conference be rescheduled once the appropriate bankruptcy authorizations are received.

    Thank you for your consideration of this request.

Respectfully submitted,

JASINSKI AND WILLIAMS, P.C.

JODI L. CAMPBELL

cc:   Hanan B. Kolko, Esq. (Via Facsimile)

W:\PAVILION\1199 civil action no. 05-2664\CORRESPONDENCE\Hughes LTR 11-18-08.doc

# EXHIBIT H

**JASINSKI and WILLIAMS**
A Professional Corporation
Counsellors at Law
Ten Park Place
Newark, New Jersey 07102
Telephone 973-824-9700
Telecopier 973-824-6061
Website www.jplawfirm.com

---

# T E L E C O P I E D

To:                    Hanan B. Kolko, Esq.

Company:         Meyer, Suozzi, English & Klein, P.C.

Fax #:               212-239-1311

Telephone #:    212-239-4999

From:               Jodi L. Campbell, Esq.

Date:                December 3, 2008

RE:                   Greater New York Nursing Home Division of the 1199 SEIU
                         Greater New York Benefit Fund v. Princeton Healthcare, et al.
                         <u>Civil Action No. 05-2664(MLC)</u>

---

MESSAGES/COMMENTS:

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individuals or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the United States Postal Service.

# JASINSKI AND WILLIAMS

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
TEN PARK PLACE
NEWARK, NEW JERSEY 07102

WEB SITE
www.jplawfirm.com

973-824-9700
TELECOPIER 973-824-6061

AFFILIATE OFFICE
1125 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401

December 3, 2008

**VIA FACSIMILE AND FIRST CLASS MAIL**
Honorable John J. Hughes, U.S.M.J.
United States District Court
 District of New Jersey
402 East State Street
Trenton, New Jersey 08608
Facsimile (609) 989-0451

> Re: **Greater New York Nursing Home Division of**
> **1199/SEIU Greater New York Benefit Fund  v. Princeton**
> **Healthcare (SNF),LLC D/B/A Pavillion at Forrestal**
> **Civil Action No: 05-2664 (MLC)**

Dear Judge Hughes:

As you are aware, this office is currently counsel of record for the Defendants in the above referenced matter. Pursuant to Your Honor's Order in the telephone conference with Your Honor which took place on November 26, 2008, enclosed please find a copy of the Order granting the automatic stay on behalf of Lehman Brothers Holding, Inc., the parent company to Defendants, entered on September 16, 2008 by the Honorable James M. Peck, U.S.B.J.

However, it appears that the Defendant entities in this matter may still be in existence despite the fact that we are advised that such entities have no assets and are under the Lehman Brothers Holding, Inc. bankruptcy. Nevertheless, we have been advised that our office is no longer permitted to continue representing Defendants in this matter and were advised to cease all work on this matter immediately. As such, our firm hereby requests permission from Your Honor to file a motion to be relieved/withdraw as counsel in this matter. We have spoken to Hanan Kolko, Esq., attorney for Plaintiff in this matter, who advised he would not oppose such motion.

Thank you for your consideration of this request.

Respectfully submitted,

JASINSKI AND WILLIAMS, P.C.

JODI L. CAMPBELL

Enclosure
cc:    Hanan B. Kolko, Esq. (Via Facsimile)

W:\PAVILION\1199 civil action no. 05-2664\CORRESPONDENCE\Hughes LTR 12-3-08.doc

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                        :
In re                                                   :      Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC.,                          :      08-13555 (JMP)
                                                        :
           Debtor.                                      :
                                                        :
---------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 OF THE BANKRUPTCY CODE, ENFORCING THE PROTECTIONS OF SECTION 362 OF THE BANKRUPTCY CODE

Upon the motion, dated September 15, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. as a debtor and debtor in possession (the "Debtor"), pursuant to sections 105(a)

and 362 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order

enforcing the provisions of Section 362 of the Bankruptcy Code as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the United States Trustee for the Southern District of

New York, (ii) those creditors holding the thirty (30) largest unsecured claims against the

Debtors' estates, (iii) the Securities and Exchange Commission, (iv) the Internal Revenue

Service, and (v) the United States Attorney for the Southern District of New York, and it

appearing that no other or further notice need be provided; and a hearing having been held to

consider the relief requested in the Motion (the "Hearing"); and upon the Affidavit of Ian T.

Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New

York in Support of First-Day Motions and Applications, the record at the Hearing, and all of the

proceedings had before the Court; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtor, its estate and creditors, and all parties

in interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED pursuant to Section 362 of the Bankruptcy Code, all persons

(including individuals, partnerships, corporations and all those acting for or on their behalf) and

all foreign or domestic governmental units (and all those acting for or on their behalf) are hereby

stayed, restrained, and enjoined from:

(a)    commencing or continuing any judicial, administrative, or other action or
proceeding against the Debtor, including the issuance or employment of
process, that was or could have been commenced before the
Debtor's chapter 11 case was commenced;

(b)    enforcing, against the Debtor or against property of the estate, a
judgment obtained before the commencement the Debtor's chapter 11
case;

(c)    collecting, assessing, or recovering a claim against the Debtor that
arose before the commencement of the chapter 11 case;

(d)    taking any action to obtain possession of property of the estate or of
property from the estate or to exercise control over property of the
estate;

(e)    taking any action to create, perfect, or enforce any lien against property of
the estate;

(f)    taking any action to create, perfect or enforce any lien against property of
the Debtor, to the extent that such lien secures a claim that arose
before the commencement of the Debtor's chapter 11 case;

(g)    offsetting any debt owing to the Debtor that arose before the

commencement of the chapter 11 case against any claim against the
Debtor.

; and it is further

ORDERED that all persons and all foreign and domestic governmental units, and

all those acting on their behalf, including sheriffs, marshals, constables and other or similar law

enforcement officers and officials are stayed, restrained and enjoined from in any way seizing,

attaching foreclosing upon, levying against or in any other way interfering with any and all

property of the Debtor or the Debtor's estate, wherever located; and it is further

ORDERED that this Order shall not affect the exceptions to the automatic stay

contained in Sections 362(b), 555, 556, 559, 560, 561 and any other exceptions to Section 362

contained in the Bankruptcy Code or the right of any party in interest to seek relief from the

automatic stay in accordance with Section 362(d) of the Bankruptcy Code. In addition, this Order

shall not affect the substantive rights of any party; and is further

ORDERED that nothing in this Order shall be construed to provide automatic stay

protection beyond what is provided for in Section 362 of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order shall be construed to limit the right of any

governmental unit to take any action not subject to the automatic stay; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.

Dated: September 16, 2008
     New York, New York

               *s/ James M. Peck*
             UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT I

## Paula Pinnock

| | |
|---|---|
| **From:** | Hanan Kolko |
| **Sent:** | Tuesday, December 02, 2008 8:25 AM |
| **To:** | Paula Pinnock; Linda Rodd |
| **Subject:** | FW: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC) |

Paula - For the Princeton file.
Linda - FYI.

**From:** Hanan Kolko
**Sent:** Tuesday, December 02, 2008 8:24 AM
**To:** 'Harris, Jonathan (NY Legal)'
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

Jonathan:

1) Until Ms. Campbell's firm is permitted to withdraw, I have every right to seek information from her to enable my client to collect what it believes it is owed. Lehman's status as a debtor does not privilege it to determine whether an attorney who is already in a case can cease all activity. That is for a court, on a proper motion to withdraw. Thus, I reiterate my prior question to Ms. Campbell.

2) At the very least, and without prejudice to other arguments, if the defendant here secreted assets in the face of a pending lawsuit, I am entitled to find out the details of the dissipation of those assets. If you don't know what happened to those assets, then say so. If so, and if you will make no effort to find that out, then say so. As a litigant, I am entitled to dig until I find assets. If Lehman will not cooperate in an informal way, then I need to know that.

Thanks.
Hanan Kolko

**From:** Harris, Jonathan (NY Legal) [mailto:joharris@lehman.com]
**Sent:** Monday, December 01, 2008 10:48 PM
**To:** Hanan Kolko
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

Hanan, with all due respect, it seems to me that these questions are geared at finding some other possible defendant to name who, unlike the current defendant, might have assets available to satisfy a judgment. Putting aside all questions as to whether it would be possible to reach any such defendant, it certainly would go beyond professional courtesy for me to assist you in this regard, particularly in light of my role as in-house counsel to the debtor entity. I have attempted to be helpful to follow up on our intention to withdraw from defense of these claims but do not think further communication is appropriate. Further, as we have directed Ms. Campbell's firm to cease work on this litigation, it is likely not to be fruitful to seek information from her.

12/2/2008

Regards,

Jonathan


PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT/
ATTORNEY-CLIENT COMMUNICATION


**From:** Hanan Kolko [mailto:HKolko@msek.com]
**Sent:** Monday, December 01, 2008 8:50 PM
**To:** Harris, Jonathan (NY Legal)
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

1)   John - Why would the bankruptcy preclude you from investigating what happened to assets of an entity formerly owned by the debtor?  If you are not in a position to investigate, who is?
2) Jodi - Who at your client would have knowledge of what happened to these assets?

Thanks.


**From:** Harris, Jonathan (NY Legal) [mailto:joharris@lehman.com]
**Sent:** Monday, December 01, 2008 8:47 PM
**To:** Hanan Kolko
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

I do not know who would, and am not in position to investigate that matter given the bankruptcy.


PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT/
ATTORNEY-CLIENT COMMUNICATION


**From:** Hanan Kolko [mailto:HKolko@msek.com]
**Sent:** Monday, December 01, 2008 8:18 PM
**To:** Harris, Jonathan (NY Legal)
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)


12/2/2008

I'm referring to any assets that were formerly in the possession of this entity.  If you do not know what happened to the assets, who does?
Thanks.
Hanan

---

**From:** Harris, Jonathan (NY Legal) [mailto:joharris@lehman.com]
**Sent:** Monday, December 01, 2008 8:09 PM
**To:** Hanan Kolko
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

I'm not sure which specific assets you're referring to, but in any event that information goes beyond what I know of this entity.


PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT/
ATTORNEY-CLIENT COMMUNICATION


---

**From:** Hanan Kolko [mailto:HKolko@msek.com]
**Sent:** Monday, December 01, 2008 5:27 PM
**To:** Harris, Jonathan (NY Legal)
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

Jonathan:  What happened to the assets?
Thanks.
Hanan

**From:** Harris, Jonathan (NY Legal) [mailto:joharris@lehman.com]
**Sent:** Monday, December 01, 2008 4:51 PM
**To:** Hanan Kolko
**Cc:** Jodi L. Campbell
**Subject:** RE: 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

Hanan:  I can confirm that, as we discussed, Princeton Healthcare (SNF), LLC as an entity has no assets, but nevertheless has not filed for bankruptcy protection and is still listed as a current LLC.  This entity's ultimate parent is Lehman Brothers Holdings Inc. which has filed for bankruptcy protection.  Regards,  Jonathan


PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT/

12/2/2008

ATTORNEY-CLIENT COMMUNICATION

---

**From:** Hanan Kolko [mailto:HKolko@msek.com]
**Sent:** Tuesday, November 25, 2008 6:08 PM
**To:** Harris, Jonathan (NY Legal)
**Cc:** Jodi L. Campbell
**Subject:** 1199 SEIU Greater New York Benefit Fund v Princeton Healthcare(SNF) LLC d/b/a Pavilion At Forestall a/k/a Plaza Regency @The Windrows and Plaza Regency Skilled Nursing And Rehabilitation Center, Civil Action No. 05-2664(MLC)

Dear Mr. Harris:

I write to follow up on our conversation of earlier this afternoon. We represent plaintiff in the above matter, which is a suit under ERISA to collect fringe benefit fund delinquencies. Please let me know what you know about the entities that are defendants in this matter. Do they still exist? If not, when were they dissolved? If they were dissolved, what happened to their assets? Are they in bankruptcy? If so, which bankruptcy? If they are not in bankruptcy and are not dissolved, are they owned in some way by Lehman? If so, please describe how they are owned by Lehman.

Thanks for your anticipated cooperation. I look forward to hearing from you.
Hanan Kolko

**IRS Circular 230 Disclosure**
To ensure compliance with U.S. Treasury regulations we inform you that any U.S. tax advice contained in this communication (including any attachments or enclosures) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.

------------------------------------------------------

The information transmitted by this electronic mail (and any attachments) is being sent by or on behalf of a lawyer; it is intended for the exclusive use of the addressee named above and may constitute information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the addressee or an employee or agent responsible for delivering this message to same, you are not authorized to retain, read, copy or disseminate this electronic mail (or any attachments) or any part thereof. If you have received this electronic mail (and any attachments) in error, please reply to this e-mail and send written confirmation that same has been deleted from your system.
Thank you.

12/2/2008

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**IRS Circular 230 Disclosure**
To ensure compliance with U.S. Treasury regulations we inform you that any U.S. tax advice contained in this communication (including any attachments or enclosures) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.

-------------------------------------------------------

The information transmitted by this electronic mail (and any attachments) is being sent by or on behalf of a lawyer; it is intended for the exclusive use of the addressee named above and may constitute information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the addressee or an employee or agent responsible for delivering this message to same, you are not authorized to retain, read, copy or disseminate this electronic mail (or any attachments) or any part thereof. If you have received this electronic mail (and any attachments) in error, please reply to this e-mail and send written confirmation that same has been deleted from your system.
Thank you.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

12/2/2008

**IRS Circular 230 Disclosure**
To ensure compliance with U.S. Treasury regulations we inform you that any U.S. tax advice contained in this communication (including any attachments or enclosures) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.

--------------------------------------------------------

The information transmitted by this electronic mail (and any attachments) is being sent by or on behalf of a lawyer; it is intended for the exclusive use of the addressee named above and may constitute information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the addressee or an employee or agent responsible for delivering this message to same, you are not authorized to retain, read, copy or disseminate this electronic mail (or any attachments) or any part thereof. If you have received this electronic mail (and any attachments) in error, please reply to this e-mail and send written confirmation that same has been deleted from your system.
Thank you.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**IRS Circular 230 Disclosure**
To ensure compliance with U.S. Treasury regulations we inform you that any U.S. tax advice contained in this communication (including any attachments or enclosures) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.

--------------------------------------------------------

12/2/2008

The information transmitted by this electronic mail (and any
attachments) is being sent by or on behalf of a lawyer; it is
intended for the exclusive use of the addressee named above
and may constitute information that is privileged or confidential
or otherwise legally exempt from disclosure. If you are not the
addressee or an employee or agent responsible for delivering
this message to same, you are not authorized to retain, read,
copy or disseminate this electronic mail (or any attachments)
or any part thereof. If you have received this electronic mail
(and any attachments) in error, please reply to this e-mail and
send written confirmation that same has been deleted from
your system.
Thank you.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the
personal and confidential use of the designated recipient(s) named above. If you are not the intended
recipient of this message you are hereby notified that any review, dissemination, distribution or copying
of this message is strictly prohibited. This communication is for information purposes only and should
not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official
confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission
cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is
complete or accurate and it should not be relied upon as such. All information is subject to change
without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax
matters contained within this communication (including any attachments) is not intended or written to
be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting,
marketing or recommending to another party any transaction or matter addressed herein.

12/2/2008