**KAYE SCHOLER** LLP

Madlyn Gleich Primoff
212 836-7042
mprimoff@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-6525
www.kayescholer.com

February 6, 2013

**BY ECF AND HAND DELIVERY**

The Honorable James M. Peck
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 601
New York, New York 10004

Re:  *In re Lehman Brothers Holdings Inc.*
Case No. 08-13555 (JMP) /
Claim of Spanish Broadcasting System, Inc.

Dear Judge Peck:

We represent Spanish Broadcasting System, Inc. ("Spanish Broadcasting") in the above-referenced case. Spanish Broadcasting is the largest publicly traded Hispanic controlled media and entertainment company in the United States. We write to request the Court's permission to file a supplement brief in order to address issues raised by Lehman Brothers Holdings Inc. for the very first time in its Reply to Response of Spanish Broadcasting and in Further Support of the Three Hundred Twenty-Eighth Omnibus Objection to Claims (No Liability Claims), dated January 24, 2013 (docket no. 34175) (the "Reply"). On February 1, 2013, we asked Lehman's counsel to consent to our request for supplemental briefing and, as of the date hereof, they have refused to do so.

On November 3, 2011, Spanish Broadcasting filed proof of claim number 67707 (the "Proof of Claim") against Lehman Commercial Paper Inc. ("Lehman"). As described in the Proof of Claim and the declaration of Joseph A. Garcia, the Chief Financial Officer of Spanish Broadcasting, dated January 29, 2013 (docket no. 34344) (the "Garcia Declaration"), a copy of which is annexed hereto as Exhibit A, Spanish Broadcasting and Lehman were parties to that certain First Lien Credit Agreement (the "Credit Agreement"), dated as of June 10, 2005, which included (among other things) a revolving credit facility of $25 million.

As a result of Lehman's failure to fund its $10 million portion of the $25 million draw request ("Draw") submitted on October 3, 2008, Spanish Broadcasting suffered damages. These damages are described in the Proof of Claim, including the report of Capstone Advisory Group annexed thereto, and the Garcia Declaration as follows:

i.  Total Invested Capital Damages: $39.6 million in damages based on the excess of the actual diminution in value of total invested capital suffered by Spanish Broadcasting as a result of Lehman's failure to fund the Draw as compared with

**KAYE SCHOLER** LLP

| The Honorable James M. Peck | 2 | February 6, 2013 |

the diminution in value Spanish Broadcasting should have suffered based on the experience of its various competitors in the marketplace.

ii. <u>Swap Termination Damages</u>: $9,886,745 in damages on account of swap settlement amounts that Spanish Broadcasting ultimately paid to Lehman's affiliate in excess of the $6 million amount that Spanish Broadcasting would have paid had it been able to terminate the swap in October 2008 as it wanted to do.

iii. <u>Fee Damages</u>: $273,333.33 in damages on account of fees that Spanish Broadcasting paid to Lehman for the $10 million revolver commitment that Lehman failed to fund.

On July 10, 2012, Lehman filed a mere 2 ½ page objection to the Proof of Claim (docket no. 29323) (the "<u>Objection</u>"). With respect to the Total Invested Capital Damages and the Swap Termination Damages, the <u>sole</u> argument that Lehman set forth in its Objection was that these damages are barred by Spanish Broadcasting's alleged waiver of consequential damages under Section 10.12(e) of the Credit Agreement.

On September 13, 2012, Spanish Broadcasting filed its response to the Objection (docket no. 30907) (the "<u>Response</u>").

On January 24, 2013, Lehman filed its 17 page Reply. The Reply raises for the very first time at least two material issues that Lehman should have and could have raised in its initial Objection: (1) the standard for measuring damages for Lehman's breach of its obligation to fund the Draw made under the revolving credit facility; and (2) the point that the Credit Agreement was terminated by the payoff letter, dated February 7, 2012, between Lehman and Spanish Broadcasting (the "<u>Payoff Letter</u>").

Spanish Broadcasting respectfully requests this Court's permission to submit supplemental briefing in order to respond fully to these new issues, each of which is material to Spanish Broadcasting's Proof of Claim and Lehman's Objection thereto. As discussed in summary fashion below, Spanish Broadcasting is entitled to prove its damages for Lehman's breach of its obligation to fund the Draw because it is a matter of black letter law that Spanish Broadcasting's damages are not limited to the cost of replacement financing when replacement financing was unavailable in the market, as was the case in October 2008 when Lehman failed to fund the Draw. Additionally, and as discussed briefly below, the alleged consequential damages waiver contained in Section 10.12(e) of the Credit Agreement did not survive the termination of the Credit Agreement pursuant to the Payoff Letter. Because the Credit Agreement and the Payoff Letter do not provide for the survival of Section 10.12(e), the relevant legal authorities hold that the alleged consequential damages waiver that was the sole basis for Lehman's Objection is neither effective nor enforceable.

**Measure of Damages**

In its Reply, for the first time, Lehman argues that Spanish Broadcasting's damages are limited to the cost of replacement financing. However, it is a matter of black letter law that damages for

KAYE SCHOLER LLP

The Honorable James M. Peck     3     February 6, 2013

breach of a loan contract are <u>not</u> limited to the cost of alternate financing when a replacement loan is unavailable. *Corbin on Contracts* § 59.3 (rev. ed., supp. 2012) provides that:

> [F]or breach of a contract to lend money the borrower can obtain judgment for damages measured by the resulting injury . . . . This is the rule applicable to contracts in general, and a lender of money should be subject to the same rule as other contracting parties.

Similarly, the *Restatement (Second) of Contracts* § 351 (1981) provides that:

> [I]n the less common situation in which the lender has reason to foresee that the borrower will be unable to borrow elsewhere or will be delayed in borrowing elsewhere, the lender may be liable for much heavier damages based on the borrower's inability to take advantage of a specific opportunity (see Illustration 14), his having to postpone or abandon a profitable project (see Illustration 15), or his forfeiture of security for failure to make prompt payment (see Illustration 16).

Furthermore, the New York Court of Appeals has spoken on this issue in *Stern v. Premier Shirt Corp.*, 260 N.Y. 201 (N.Y. 1932), where the Court held that the borrower was entitled to damages based upon the defendants' failure to fund a loan. *Accord Lester v. Resolution Trust Corp.*, 125 B.R. 528, 532 (N.D. Ill. 1991) (holding that borrower was entitled to damages for breach of a loan contract where alternate financing was unavailable); *United States Funding, Inc. v. Bank of Boston Corp.*, 28 Mass. App. Ct. 404, 407 (Mass. App. Ct. 1990) (same).

Contrary to Lehman's contention in the Reply, Spanish Broadcasting quite obviously could <u>not</u> "go into the market the next day after the breach" and get a replacement loan. Garcia Declaration, ¶¶ 5, 11-13. Your Honor recognized in *Charter Communications*, 419 B.R. 221, 232 (Bankr. S.D.N.Y. 2009) that, in October 2008, the credit markets were in "cardiac arrest" as a result of Lehman's colossal failure, stating:

> Following the bankruptcy of Lehman Brothers Holdings, Inc. on September 15, 2008, the global credit markets went into the financial equivalent of cardiac arrest. Commercial lending came to a virtual halt. Smart, sophisticated and otherwise confident business people panicked. No one who lived through the period will ever forget the fear engendered by a worldwide crisis of confidence and the inability to obtain credit by conventional means.

Given that alternative financing was plainly unavailable in the wake of Lehman's failure to fund the Draw under the revolving credit facility, Spanish Broadcasting is entitled to damages as a matter of law. As set forth in greater detail in paragraphs 6-10 of the Garcia Declaration, Spanish Broadcasting had planned on using a portion of the $25 million Draw under the revolving credit facility to pay off an $18.5 million note maturing in January 2009. Because Lehman did not fund its $10 million share of the Draw, Spanish Broadcasting was compelled to use the entire $15 million it did receive from the Draw, plus $3.5 million of its already low cash reserves, to make the $18.5 million payment on the maturing note. Consequently, Spanish Broadcasting lacked essential funds necessary for general corporate purposes and suffered a

KAYE SCHOLER LLP

The Honorable James M. Peck            4            February 6, 2013

diminution in value in Spanish Broadcasting's total invested capital. In addition, Lehman's failure to fund left Spanish Broadcasting without the capital necessary to terminate and close out its obligations under a swap agreement with Lehman's affiliate. Therefore, Lehman's failure to fund caused Spanish Broadcasting to suffer the Total Invested Capital Damages and the Swap Termination Damages.

**The Consequential Damages Waiver Is No Longer Effective**

Lehman relies heavily in its Objection and its Reply on Spanish Broadcasting's alleged consequential damages waiver under Section 10.12(e) of the Credit Agreement. However, this waiver is ineffective and unenforceable as a matter of law. As Lehman concedes in its Reply, Lehman and Spanish Broadcasting entered into the Payoff Letter, a copy of which is annexed hereto as Exhibit B, that "terminated" the Credit Agreement. Accordingly, the consequential damages waiver was terminated as a matter of law.[1]

Indeed, when Lehman wanted to provide that a provision of the Credit Agreement survived the termination of the Credit Agreement, it did so with specificity in the Payoff Letter and/or the Credit Agreement. See Payoff Letter, ¶ 1(a) (providing for survival of contingent obligations pursuant to Section 10.5 of the Credit Agreement), ¶ 4 (providing for survival of Spanish Broadcasting's Proof of Claim); Credit Agreement § 2.19(c) (survival of provision regarding certificate of additional amounts payable), § 2.20(e) (survival of provision regarding taxes), § 2.21 (survival of indemnity provision), § 9.7 (survival of indemnification provision), § 10.5 (survival of provision regarding payment of expenses). By contrast, **Section 10.12(e)** of the Credit Agreement, the alleged consequential damages waiver, **contains no such survival language**.

Because neither the Credit Agreement nor the Payoff Letter states that the consequential damages waiver in section 10.12(e) survives, it is terminated as a matter of New York law and thus is inapplicable to Spanish Broadcasting's Proof of Claim. In *United States v. American Society of Composers, Authors & Publishers*, No. Civ. 13-95 (WCC), 1989 U.S. Dist. LEXIS 16907 (S.D.N.Y. Dec. 21, 1989), the District Court for the Southern District of New York held that a waiver provision did not survive termination of the contract because there was no clear indication that the waiver provision was intended to survive termination of the contract. The District Court stated that:

> Ordinarily, contract provisions do not continue to bind the parties after the contract has been terminated. Consequently, if one of the parties wishes a

---

[1] While Spanish Broadcasting continues to adhere firmly to its position, set forth at pages 6-8 of its Response, that it is a matter of black letter law that the question of whether damages are direct or consequential is a question of fact that must be reserved for trial, that issue is now secondary (if even relevant at all) given that the consequential damages waiver is ineffective and unenforceable.

**KAYE SCHOLER LLP**

The Honorable James M. Peck                5                February 6, 2013

contract term to remain in effect after the contract ends, the contract must say so explicitly.

*Id.* at *33-*34 (citation omitted). *See, e.g., Scientific Components Corp. v. Raytheon Co.*, 2005 U.S. Dist. LEXIS 13087 (S.D.N.Y. June 29, 2005) (where a waiver of consequential damages was not included in the section listing which sections of the sale contract at issue would survive termination, an arbitration panel found that the consequential damages waiver did not survive termination of the contract, and the District Court confirmed the arbitration award in its entirety, holding that the panel had made a "reasoned conclusion based on its interpretation of the contract between the parties.").

We have addressed above in summary fashion certain of the issues raised for the first time in Lehman's Reply. Spanish Broadcasting respectfully requests permission to file a full set of briefing papers to address more fully Lehman's Reply. We are available at the Court's convenience if there are any issues that the Court wishes to discuss.

Respectfully,

*/s/ Madlyn Gleich Primoff*

Madlyn Gleich Primoff

Enclosures
cc:   Jacqueline Marcus, Esq. (via e-mail)
      Erika del Nido, Esq. (via e-mail)