# EXHIBIT A

Madlyn Gleich Primoff, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000
mprimoff@kayescholer.com

*Attorneys for Spanish Broadcasting System, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

------------------------------------------------------------------x

### DECLARATION OF JOSEPH A. GARCIA IN SUPPORT OF AMENDED PROOF OF CLAIM OF SPANISH BROADCASTING SYSTEM, INC. AND IN RESPONSE TO LEHMAN'S REPLY

I, Joseph A. Garcia, hereby declare:

1. I am the Chief Financial Officer of Spanish Broadcasting System, Inc. ("Spanish Broadcasting"). I submit this declaration in support of the Amended Proof of Claim of Spanish Broadcasting System, Inc. and in opposition to Lehman's Reply to Response of Spanish Broadcasting dated January 24, 2013 (docket no. 34175).

2. Spanish Broadcasting is the largest publicly traded Hispanic-controlled media and entertainment company in the United States. Spanish Broadcasting owns and/or operates more than 21 radio and television stations located in the top U.S. Hispanic markets of New York, Los Angeles, Miami, Chicago, San Francisco and Puerto Rico.

61110128.DOCX

3. Spanish Broadcasting and Lehman Commercial Paper Inc. ("Lehman") were parties to that certain First Lien Credit Agreement (the "Credit Agreement"), dated as of June 10, 2005, among, *inter alia*, Spanish Broadcasting, as borrower, and Lehman, as administrative agent and lender. The Credit Agreement included a term loan facility of $325,000,000 and a revolving credit facility of $25 million in the aggregate. Section 4.16(b) of the Credit Agreement provided that the proceeds of the revolving credit facility "shall be used for working capital purposes, capital needs and general corporate purposes of the Borrower and its Subsidiaries . . . ."

4. On October 3, 2008, Spanish Broadcasting submitted a draw request in accordance with the terms of the Credit Agreement for the entire $25 million of availability under the revolving credit facility. While the other lenders under the Credit Agreement funded $15 million of the $25 million draw request ("Draw"), Lehman failed to fund its $10 million portion of the Draw. Upon information and belief, Lehman commenced its case under chapter 11 of the Bankruptcy Code on or about October 5, 2008. Lehman never funded its $10 million portion of Spanish Broadcasting's Draw.

5. As a result of Lehman's failure to fund, S&P and Moody's both downgraded Spanish Broadcasting. In doing so, they specifically cited Lehman's failure to fund as the reason for the downgrade as well as concerns about Spanish Broadcasting's liquidity position. S&P's report stated that "the ratings downgrade is based on [S&P's] continued liquidity concerns regarding cash depletion, which are further heightened by the company's inability to draw down fully on its $25 million revolving credit facility."

6. Spanish Broadcasting suffered damages as a direct result of Lehman's failure to fund its $10 million portion of the Draw. Spanish Broadcasting had planned on using almost the

61110128.DOCX

entire $25 million Draw under the revolving credit facility to pay off an $18.5 million note maturing in January 2009.

7. Spanish Broadcasting also planned to use the Draw to terminate and close out its obligations under a swap agreement with Lehman's affiliate (the Swap). At the time, we estimated that the termination of the Swap would result in a termination payment to Lehman's affiliate of somewhere between $5 and $6 million.

8. Because Lehman did not fund its $10 million share of the Draw, Spanish Broadcasting was compelled to to use the entire $15 million it did receive from the Draw, plus $3.5 million of its already low cash reserves, to make the $18.5 million payment on the maturing note. In addition, Lehman's failure to fund the Draw left Spanish Broadcasting without the capital necessary to terminate the Swap. Ultimately, Spanish Broadcasting paid $9,886,745 more in damages to Lehman's affiliate for termination of the Swap than it would have been required to pay had it been able to terminate the Swap in October 2008 as contemplated.

9. Lehman's failure to fund the Draw Request caused Spanish Broadcasting to lack essential funds necessary for general corporate purposes and, according to the Report of Capstone Advisory Group annexed as Exhibit B to Spanish Broadcasting's Amended Proof of Claim dated November 3, 2011, suffer a diminution in the market value of Spanish Broadcasting's common equity, preferred equity, long-term debt, cash, and minority interests (the "Total Invested Capital"). The reduction in liquidity caused by Lehman's failure to fund the Draw and the inability to obtain other financing prevented Spanish Broadcasting from operating at its current and budgeted levels at the time, and therefore forced Spanish Broadcasting to immediately take steps to cut costs and preserve cash. This included a severe reduction in staff and overall business expenses. Spanish Broadcasting's ability to produce programming and

generate revenue were reduced as a result, and Spanish Broadcasting was not able to achieve budgeted financial levels.

10. While the lack of capital forced Spanish Broadcasting to cut back on its production and revenue generating projects, its competitors were not experiencing any similar internal capital raising problems. It is recognized that this was a very difficult time for all businesses, including Spanish Broadcasting and its competitors, and market values decreased significantly during this time frame, but the failure to fund the Draw caused Spanish Broadcasting to suffer another level of lost market value due to the resulting forced reduction in its productions and revenues generating activities. Thus, as set forth in the Capstone Report, Spanish Broadcasting incurred approximately $39.6 million in damages is based on the excess of the actual diminution in value of Total Invested Capital suffered by Spanish Broadcasting as a result of Lehman's failure to fund its $10 million piece of the $25 million revolving Draw as compared with the diminution in value Spanish Broadcasting should have suffered based on the experience of its various competitors in the marketplace.

11. Spanish Broadcasting was unable to obtain $10 million of replacement financing elsewhere because alternate financing was simply not available in the marketplace. Based on our understanding of the financial markets at the time of the credit crisis and Lehman's bankruptcy filing, we recognized that alternate financing simply was not an option. We were in regular communications with Lehman personnel in the days leading up to and following Spanish Broadcasting's issuance of the Draw and Lehman's failure to fund its share. Lehman was well aware of Spanish Broadcasting's need for Lehman's $10 million and well aware that Spanish Broadcasting could not obtain funds elsewhere.

12. Spanish Broadcasting's leverage ratios at September 30, 2008 and December 31, 2008 (of 14.77 and 16.87 respectively) show that no lender would have lent money to it in the last quarter of 2008.

13. Given that Spanish Broadcasting is a public company and in view of Lehman's material breach of its obligation to fund, Spanish Broadcasting filed an 8-K on October 10, 2008 -- several days after Lehman's failure to fund -- disclosing that Lehman failed to fund. Despite this public disclosure, nobody came forward to make a replacement loan.

14. Spanish Broadcasting incurred $273,333.33 in additional damages on account of the fees that Spanish Broadcasting paid to Lehman for the $10 million revolver commitment that Lehman failed to fund.

15. If Spanish Broadcasting is not permitted to pursue the Total Invested Capital Damages, the Swap Termination Damages and the Fee Damages as set forth in the Amended Proof of Claim, then it is my view that our remedies under the Credit Agreement will have failed of their essential purpose.

16. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
January 29, 2013

*Joseph A. Garcia*