Hearing Date:  February 13, 2013, 10 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
In re                                                              :   Chapter 11
                                                                   :
                                                                   :   Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                           :
                                                                   :   Jointly Administered
                                       Debtors.                    :
------------------------------------------------------------------ x

**CANARY WHARF'S SUBMISSION IN ADVANCE OF THE FEBRUARY 13**
**STATUS CONFERENCE (PROOFS OF CLAIM NUMBERS 14824 AND 14826)**

David B. Tulchin
Marc De Leeuw
John J. Jerome
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Attorneys for Canary Wharf Management Ltd., Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited*

February 11, 2013

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

DISCUSSION ..........................................................................................................................7

    I.     LBHI's Liability for the Claims Can Be Determined as a Matter of
           English Law With Very Limited Discovery ............................................................7

    II.    The Disputed Issues of Liability Would Be Best Resolved by an
           Evidentiary Hearing ................................................................................................10

CONCLUSION .....................................................................................................................11

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------------- x

**CANARY WHARF'S SUBMISSION IN ADVANCE OF THE FEBRUARY 13
STATUS CONFERENCE (PROOFS OF CLAIM NUMBERS 14824 AND 14826)**

**INTRODUCTION**

1. Canary Wharf Management Ltd., Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (collectively, "Canary Wharf") filed two claims in September 2009 (Nos. 14824 and 14826) (the "Claims") seeking amounts due under a lease (the "Lease") indemnified by Debtor Lehman Brothers Holdings Inc. ("LBHI"). In an objection filed August 15, 2012 (the "Objection"), LBHI argues that under English law -- which both parties agree governs -- its indemnification obligations were discharged because of Canary Wharf's December 2010 agreement to forfeit the Lease. LBHI's liability thus turns on the interpretation of LBHI's indemnity (the "Indemnity") and the December 2010 agreement pursuant to which Canary Wharf forfeited the Lease (the "LBL Forfeiture Agreement"). These are issues of English law that can be determined without any discovery.

2. At the January 16, 2013 status conference, LBHI asked the Court for oral argument on English-law liability issues that it said could be resolved without any discovery. Canary Wharf agreed that the Court should determine LBHI's liability before adjudicating damages issues, and proposed that the Court do so by conducting an evidentiary hearing with testimony from the two English-law experts who had submitted declarations on

behalf of the parties. The Court indicated a willingness to hold the evidentiary hearing that Canary Wharf had proposed, and also suggested that the parties consider arbitration of the English-law liability issues. In addition, the Court urged the parties to try to agree to a stipulation of undisputed facts.

3. As noted above, liability turns on the application of English law to the Indemnity and LBL Forfeiture Agreement. As a result, Canary Wharf proposed to LBHI that the parties agree to arbitration in England (as the Court suggested) because it would presumably be the most efficient method to resolve the disputes under English law. LBHI declined. Canary Wharf also offered to produce documents and a deposition witness to facilitate resolution of the limited factual issues that may be relevant to liability, and prepared a short Stipulation of Undisputed Facts. LBHI rejected these proposals as well, and has declined even to comment on Canary Wharf's proposed Stipulation or to propose any alternative stipulation. Instead, LBHI has insisted on an open-ended and wide-ranging discovery program that (i) is unnecessary for resolution of the liability issues here, (ii) would delay these proceedings significantly, and (iii) would be very expensive for both sides. Given these facts, Canary Wharf now proposes that, following a discovery period of 60 days on liability issues as described below, the Court schedule additional briefing and hold a hearing at which the parties' English-law experts would testify and counsel would present closing argument following the testimony. Canary Wharf proposes that the hearing (which it estimates will take two days) take place at the Court's convenience, and suggests early June.

## BACKGROUND

4. On March 16, 2005, Canary Wharf (as Landlord and Management Company) entered into the Lease, for property at 25 Bank Street in London, England with

Lehman Brothers Limited ("LBL"), as Tenant, and LBHI, as "Surety." (Lease (Ex. 6) Lease Particulars ¶¶ 1, 3, 5.)[1] The Lease states that it "shall be governed by and construed in all respects in accordance with the Laws of England . . . ." (*Id.* § 8.16.) LBHI's obligations as Surety are set forth in Schedule 4 to the Lease (the "Indemnity"). (*Id.* § 10, Schedule 4.)

5.      On September 15, 2008, LBHI filed for bankruptcy in the Southern District of New York under Chapter 11 of the Bankruptcy Code and LBL was placed into administration in the United Kingdom. (Order Confirming Modified Third Amended Joint Chapter 11 Plan of LBHI, entered Dec. 6, 2011 ¶ D (ECF# 23023) (Ex. 12); Joint Administrators' Progress Report on LBL in Administration, dated April 14, 2009 (Ex. 13) at 5, 22.)

6.      On September 17, 2009, Canary Wharf filed the Claims seeking damages for rent and other charges due under the Lease that it expected would not be paid. (Proofs of Claim, filed Sept. 17, 2009 (Exs. 14-15).)

7.      In March 2010, LBL and its administrators vacated the 25 Bank Street property and stopped paying rent and other amounts due under the Lease. (Joint Administrators' Progress Report on LBL in Administration, dated April 13, 2010 (Ex. 17) at 1, 4, 14; Declaration of Anthony Jordan ¶ 5 (ECF# 31344).) On December 3, 2010, Canary Wharf reached an agreement with LBL and its administrators to forfeit the Lease (the "LBL Forfeiture Agreement"). (Ex. 19.) Thereafter, JPMorgan Chase N.A. ("JPMorgan") entered into a 999-year lease for the 25 Bank Street property on December 20, 2010 (the "JPM Lease"). (Ex. 21.)

---

[1] References herein to numbered exhibits are to exhibits attached to the Declaration of Marc De Leeuw, executed and filed October 12, 2012 (ECF# 31342).

8.    LBHI filed an objection to the Claims on August 15, 2012 (ECF# 30055) (the "Objection"), to which Canary Wharf responded on October 12, 2012 (ECF# 31342) (the "Response"). LBHI replied on January 10, 2013 (ECF# 33774) (the "Reply"). The parties' submissions set out three issues concerning LBHI's liability for the Claims under English law:  (1) whether LBHI has been discharged as a result of the LBL Forfeiture Agreement; (2) whether LBHI is liable for the Claims under a proper interpretation of Paragraph 1 of the Indemnity; and (3) whether a December 2010 e-mail exchange between the parties' counsel constitutes an anticipatory breach of the Indemnity.  Each side submitted lengthy declarations from English solicitors on these issues.

9.    On January 16, the parties appeared before the Court for a status conference. (The transcript of that conference is attached hereto as Exhibit A.) Both parties advocated for the Court to resolve liability issues first.  LBHI requested a date for "oral argument" and specifically noted that it "believe[d] the facts are effectively undisputed" on the issue of whether releases in the LBL Forfeiture Agreement discharged LBHI's obligations such that the issue "is effectively a question of English law, which we could argue to Your Honor." (Ex. A 12:1-24.)  Canary Wharf agreed that the threshold English-law liability issues could and should be resolved without discovery.  (*Id*. 14:1-4.)  Canary Wharf suggested that the Court "resolve English law questions at the outset" after conducting a brief evidentiary hearing consisting of testimony from the parties' English-law experts. (*Id*. 14:8-18.)  The Court agreed that "some form of evidentiary hearing" at which the English-law experts would testify "would be desirable," and asked the parties to meet and confer to reach a "broader understanding" on "prehearing procedures." (*Id*. 16:17-17:6.)  The Court also suggested that "the parties give some thought to submitting this issue to arbitration," perhaps before "a

- 4 -

retired justice of the high court." (*Id.* 17:7-14.) In response to LBHI requesting discovery on liability issues before a hearing, the Court reserved on the question of whether discovery was necessary, adding that "many of the factual matters here are discernible, identifiable, and in all likelihood susceptible to a stipulation of facts, rather than the burdens of depositions or formal discovery." (*Id*. 18:5-19:6.)

    10. On January 23, counsel for the parties met and conferred by telephone, and thereafter exchanged written proposals on pre-hearing procedures. In a January 29 letter, LBHI proposed an open-ended discovery program on liability issues that "would not be restricted in any way." (Letter from Peter Isakoff to David Tulchin, dated Jan. 29, 2013 (attached as Ex. B) at 1.) For example, LBHI requested unlimited written discovery and depositions, and expert reports and depositions of the parties' English-law experts. (*Id.*) LBHI also listed ten broad categories of documents from which it would draw *initial* document requests without identification of any facts in dispute for which these documents would be relevant: (a) all documents related to the Lease, the JPM Lease, the Indemnity or the LBL Forfeiture Agreement, including all communications, drafts, and documents related to the negotiations of these contracts (Categories 1, 2, 4 and 5); (b) all documents that Canary Wharf may use to support the Claims (Category 3); (c) all documents related to the "actual, potential or anticipated effect" of the JPM Lease or LBL Forfeiture Letter on Canary Wharf's claims against LBL and LBHI (Categories 6 and 7); (d) all documents related to the December 2010 e-mail exchange between parties' counsel (Category 8); (e) "[a]ll documents related to the change from the Canary Wharf entity that was landlord" under the Lease and the entity that is landlord under the JPM Lease (Category 9); and (f) documents concerning Canary Wharf's dilapidations damages (Category 10). (Ex. B at 1-2.)

11. On February 1, Canary Wharf responded with a counter-proposal. (Letter from David Tulchin to Peter Isakoff, dated Feb. 1, 2013 (attached as Ex. C).) Following up on a proposal it made at the January 23 meet-and-confer (per the Court's suggestion on January 16), Canary Wharf proposed that the parties submit the liability issues to arbitration before an expert in English law and offered to draft procedures for such an arbitration. (*Id.* at 1-2.) Canary Wharf then explained why the liability issues could be determined with little, or no, discovery as a matter of English law; Canary Wharf set forth each disputed issue and sub-issue concerning liability, the lack of factual disputes concerning each one, and thus explained that the discovery LBHI requested was unnecessary. (*Id.* at 2-3.) Canary Wharf nevertheless proposed that the parties engage in limited discovery on the only facts that may be relevant to liability -- LBL's failure to pay rent after March 2010 and the email exchange between the parties' counsel in December 2010. (*Id.*) Canary Wharf also enclosed a short proposed Stipulation of Undisputed Facts (consisting of nine paragraphs) per the Court's suggestion on January 16. (*Id.* at 2 & enclosure.)

12. On February 5, LBHI rejected Canary Wharf's counter-proposal. (Letter from Peter Isakoff to David Tulchin, dated Feb. 5, 2013 (attached as Ex. D).) LBHI did not contend that Canary Wharf had failed to set forth in its counter-proposal the disputed liability issues, nor did it explain why those issues could not be resolved as a matter of English law. Rather, LBHI simply asserted without explanation that it requires all the wide-ranging and open-ended discovery it sought in its original proposal. (Ex. D at 1-2.) LBHI also stated that it could not agree to arbitration before it received discovery, and did not provide any comments or alternative suggestions to Canary Wharf's proposed Stipulation of Undisputed Facts. (*Id.*)

- 6 -

**DISCUSSION**

13. Canary Wharf estimates that LBHI's open-ended discovery program -- which "would not be restricted in any way" and includes ten wide-ranging categories from which LBHI would draw *initial* document requests (¶ 10, *supra*) -- could take six months, or perhaps twice that long, to accomplish. This might benefit the lawyers, but under the circumstances here, as shown below, it is unnecessary because the three English-law liability issues in dispute can be decided without the open-ended and costly discovery proposed by LBHI. Rather, liability can be resolved through a more limited and expeditious discovery period, followed by additional submissions and a two-day hearing at which the English-law experts could testify before the Court.

**I.     LBHI's Liability for the Claims Can Be Determined as a Matter of English Law With Very Limited Discovery.**

14. As noted above, the parties' submissions raise three liability issues under English law: (1) whether releases of LBL in the LBL Forfeiture Agreement discharged LBHI's obligations to pay Canary Wharf under the Indemnity (Response ¶¶ 48-60; Reply ¶¶ 24-31); (2) whether LBHI is liable to Canary Wharf under a proper interpretation of Paragraph 1 of the Indemnity (Response ¶¶ 61-73; Reply ¶¶ 27-28, 33-40); and (3) whether LBHI anticipatorily breached its obligations under Paragraph 7 of the Indemnity based on a December 2010 e-mail exchange between the parties' counsel (Response ¶¶ 74-76; Reply ¶¶ 41-48). As set forth below, each of these three issues can be resolved with little or no discovery. There is no dispute that these are issues of English law that, depending on the outcome, could be determinative in this proceeding.

15. ***The LBL Forfeiture Agreement.*** LBHI's counsel conceded at the January 16 status conference that "the facts are effectively undisputed" as to the first liability

issue -- whether LBHI's obligations under the Lease were discharged by the releases in the LBL Forfeiture Agreement. (Ex. A 12:10-19.) LBHI's counsel also said that this issue is "effectively a question of English law" on which no discovery is necessary. (*Id.* 12:20-21.) Canary Wharf agrees that the applicability of English law to two contracts -- the Indemnity and the LBL Forfeiture Agreement -- should resolve this issue, and that no discovery is needed. Thus, LBHI's proposal for broad discovery, such as production of all documents related to the Indemnity and LBL Forfeiture Agreement (Ex. B at 2 (Categories 2 and 5)), is unnecessary here.

16. ***Paragraph 1 of the Indemnity.*** The second issue -- whether LBHI is obligated to pay Canary Wharf for the Claims under Paragraph 1 of the Indemnity -- raises three sub-issues: (1) whether Canary Wharf may seek recovery from LBHI under Paragraph 1 or whether Paragraph 7 is Canary Wharf's exclusive remedy against LBHI after forfeiture of the Lease (Response ¶¶ 68-73; Reply ¶ 40); (2) whether Paragraph 1 provides for a separate and independent indemnification obligation by LBHI to Canary Wharf (Response ¶¶ 61-64; Reply ¶¶ 27-28); and (3) whether, even in the absence of a separate indemnification obligation, LBHI is liable under Paragraph 1 because LBL's refusal to pay rent after March 2010 was a repudiatory breach of the Lease (Response ¶¶ 65-67; Reply ¶¶ 33-40).

17. There can be no dispute that the first and second of these three sub-issues need no discovery. Both hinge entirely on interpreting the language of the Indemnity under English law, which this Court can do based upon principles of contract interpretation under English law, as explained by the experts. Indeed, both experts offer their opinions on these issues solely based on the language of the contract (the Indemnity), and neither one of them indicated in any way that he needed any parol evidence or other information to offer an

opinion about the meaning of Paragraph 1.  (*See* Millett Decl. ¶¶ 68-72, 88-94 (ECF# 33774); Rabinowitz Decl. ¶¶ 49-55, 58-68 (ECF# 31343).)

18.  The third sub-issue is a question of disputed English law involving the available remedies to Canary Wharf upon a repudiatory breach by LBL:  LBHI contends that under English law, damages for a repudiatory breach end at forfeiture, whereas Canary Wharf argues that English law entitles it to any damages arising out of LBL's repudiatory breach (*compare* Response ¶¶ 65-67 *with* Reply ¶¶ 33-40).  This is solely an issue of law that requires no discovery.  However, because the repudiatory breach is premised on LBL's refusal to pay rent after March 2010, a fact about which LBHI says that it needs discovery (*see* Response ¶ 26; Reply ¶ 14), Canary Wharf has offered to produce communications with LBL's U.K. administrators showing LBL's refusal to pay rent (Ex. C at 3).  Neither English-law expert has indicated that any parol evidence or other additional information is necessary for his opinion on this subject (*see* Millett Decl. ¶¶ 73-87; Rabinowitz Decl. ¶¶ 56-57).  The discovery sought by LBHI -- *e.g.*, all documents related to the Lease (category 1), the Indemnity (category 2), and the "actual, potential or anticipated effect" of the JPM Lease and LBL Forfeiture Agreement on LBL's or LBHI's obligations (categories 6 and 7) -- thus would uncover no facts needed to determine this issue (or any other).

19.  ***LBHI's Anticipatory Breach.***  The third liability issue, whether LBHI anticipatorily breached its obligations under Paragraph 7 of the Indemnity, involves two sub-issues:  (1) whether English law permits a claim for anticipatory breach of a conditional obligation (Response ¶ 75; Reply ¶¶ 42-43); and (2) whether an English court would conclude that LBHI's statements to Canary Wharf constituted an anticipatory breach of Paragraph 7 of the Indemnity (Response ¶ 76; Reply ¶¶ 44-48).

20. The first of these two sub-issues is purely legal; it can be determined as a pure matter of law (albeit English law), and LBHI does not say anything to the contrary.

21. The second sub-issue -- whether LBHI committed an anticipatory breach -- appears to be the only issue on which LBHI even attempts to identify relevant discovery. In its February 5 letter, LBHI asserts that it wants discovery about the timing and reasoning for Canary Wharf's communications with LBHI when Canary Wharf negotiated a new lease with JPMorgan and forfeited the Lease with LBL. (Ex. D at 1.) This is all irrelevant to Canary Wharf's claim of anticipatory breach, which is based on a December 2010 e-mail exchange between counsel for the parties that is attached to the declaration of LBHI's English-law expert, Richard Millett. (Millett Decl. at App. 3.) In any event, Canary Wharf has agreed to provide discovery that could be relevant to that exchange, proposing that the parties produce to each other *all* communications between the parties' counsel after LBHI's bankruptcy and take depositions of the two authors of the December 2010 e-mails (which Canary Wharf believes would last about two or three hours each). (Ex. C at 2-3.) LBHI has not identified any additional discovery that would shed further light on the December 2010 e-mail exchange that is the basis of Canary Wharf's claim, and thus LBHI's request for wide-ranging and unlimited discovery is unjustified and would be unduly burdensome and unnecessary.

**II.    The Disputed Issues of Liability Would Be Best Resolved by an Evidentiary Hearing.**

22. As set forth herein, and as the parties' submissions to the Court on the Objection make clear, the disputed issues concerning LBHI's liability all turn on questions of English law and its application. Canary Wharf therefore proposed to LBHI that the parties submit these issues to arbitration before an expert in English law, possibly a retired Justice of

the English High Court (as the Court suggested on January 16). (Ex. C at 1-2.) LBHI flatly rejected that proposal (Ex. D at 1), and also declined even to engage Canary Wharf with respect to its proposed Stipulation of Undisputed Facts. As the Court indicated on January 16 (Ex. A 16:21-25), Canary Wharf believes that an evidentiary hearing consisting of examination of the parties' English-law experts would best aid the Court in determining the disputed liability issues and how to apply English law to the facts here.[2]

23. Prior to holding such a hearing, Canary Wharf respectfully requests that the Court order that (i) the limited discovery proposed herein be conducted over the next 60 days, (ii) two weeks after the expiration of the discovery period, the parties make simultaneous pre-hearing submissions, which would supplement the papers filed on the Objection, and (iii) two weeks thereafter, the parties file responsive submissions. Canary Wharf then suggests that the Court conduct an evidentiary hearing at which the two English solicitors would testify. If the timing is convenient to the Court, Canary Wharf suggests that the two-day hearing be conducted in early June 2013.

## CONCLUSION

24. For the foregoing reasons, Canary Wharf respectfully requests that the Court permit discovery limited to (i) production of communications between Canary Wharf and LBL's U.K. administrators showing LBL's refusal to pay rent, and communications between the parties' counsel after LBHI's bankruptcy; and (ii) short depositions of the parties' counsel who authored the December 2010 e-mail exchange. Canary Wharf further

---

[2] The Court also could appoint an expert (perhaps after obtaining suggestions from the parties about who to appoint) on English law, and may instruct such a court-appointed expert to issue a report and recommendation to aid the Court in reaching a decision on the English-law liability issues in dispute. *See* Fed. R. Evid. 706; Fed. R. Bankr. P. 9017.

respectfully requests that the Court schedule a two-day hearing for testimony by the parties' English-law experts, and set a schedule for pre-hearing submissions.

Dated: February 11, 2013

Respectfully submitted,

/s/ David B. Tulchin
David B. Tulchin
Marc De Leeuw
John J. Jerome
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Attorneys for Canary Wharf Management Ltd., Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited*

- 12 -