# Exhibit A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS, INC.,        CAUSE NO.

7    et al,                                 08-13555(JMP)

8            Debtors.

9    - - - - - - - - - - - - - - - - x

10   In re

11   LEHMAN BROTHERS, INC.,                 CAUSE NO.

12           Debtor.                        08-01420(JMP)(SIPA)

13   - - - - - - - - - - - - - - - - x

14

15                   U.S. Bankruptcy Court

16                   One Bowling Green

17                   New York, New York

18

19                   January 16, 2013

20                   10:03 AM

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25   ECRO:  TB

Page 2

1    HEARING re Status Conferences:

2         1)    Joint Motion of Lehman Brothers Holdings, Inc. and

3    Litigation Subcommittee of Creditors committee to Extend

4    Stay of Avoidance Actions and Grant Certain Related Relief

5    (ECF No. 33322)

6         2)    LBHI's Objection to Proofs of Claim Number 14824

7    and 14826 (ECF No. 30055)

8         3)    Hearing to Consider Objections to Purported Claims

9    Transfers to Stichting Value Foundation (ECF No. 32646)

10        4)    Motion of Traxis Fund LP and Traxis Emerging

11   Market Opportunities Fund LP to Compel Debtors to Reissue

12   Distribution Checks for Allowed Claims (ECF No. 32163)

13

14   HEARING re Uncontested Matter:  First and Final Fee

15   Application of Epiq Bankruptcy Solutions, LLC, as

16   Solicitation and Voting Agent to the Debtors for Allowance

17   and Payment of Compensation for Professional Services

18   Rendered and For Reimbursement of Actual and Necessary

19   Expenses Incurred from September 1, 2011 through December 6,

20   2011 (ECF No. 27762)

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS, INC.

Page 3

1    HEARING re Adversary Proceedings:

2         1)   Walton, et al v Lehman Brothers, Inc., et al

3    (Adversary Case No. 12-01898), Motions to Dismiss

4         2)   FirstBank Puerto Rico v Barclays Capital, Inc.

5    (Adversary Proceeding No. 10-04103), Barclays Capital, Inc.

6    Motion for Summary Judgment; FirstBank Puerto Rico Motion

7    for Summary Judgment

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sheila Orms

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for Lehman Brothers Holdings, Inc.

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8   BY:   MAURICE HORWITZ, ESQ.

 9         GARRETT A. FAIL, ESQ.

10         JACQUELINE MARCUS, ESQ.

11

12   WEIL, GOTHAL & MANGES LLP

13         Attorneys for Lehman Brothers Holdings, Inc.

14         1300 Eye Street, N.W.

15         Suite 900

16         Washington, DC  20005

17

18   BY:   PETER D. ISAKOFF, ESQ.

19

20   SEWARD & KISSELL

21         Attorneys for Traxis Fund LP

22         One Battery Park Plaza

23         New York, NY  10004

24

25   BY:   JOHN ASHMEAD, ESQ.
```

Page 5

1    HUGHES HUBBARD

2         Attorneys for SIPA Trustee

3         One Battery Park Plaza

4         New York, NY  10004-1482

5

6    BY:   JEFFREY S. MARGOLIN, ESQ.

7          BETSY PRICE, ESQ.

8

9    GLIFFORD CHANCE

10        Attorneys for Stichting the Iamex Value Foundation

11        31 West 52nd Street

12        New York, NY  10019

13

14   BY:   JENNIFER C. DEMARCO, ESQ.

15

16   SULLIVAN & CROMWELL, LLP

17        Attorneys for Canary Wharf Management, LTD., Heron

18        Quays (HQ2) T1 Limited, and Heron Quays (HQ2) T2

19        Limited

20        125 Broad Street

21        New York, NY  10004

22

23   BY:   DAVID B. TULCHIN, ESQ.

24         MARK DE LEEUW, ESQ.

25         JOHN J. JEROME, ESQ.

Page 6

1   GIBSON DUNN

2        Attorneys for Lehman Brothers Finance AO

3        2100 McKinney Avenue

4        Dallas, TX  75201-6912

5

6   BY:   ROBERT B. KRAKOW, ESQ.

7

8   STONE BONNER & ROCCO LLP

9        Attorneys for Karolina Penard

10       260 Madison Avenue

11       17th Floor

12       New York, NY  10016

13

14  BY:   RALPH M. STONE, ESQ.

15

16  CLEARY GOTTLIEB STEEN & HAMILTON LLP

17       Attorneys for Barclays Capital, Inc.

18       One Liberty Plaza

19       New York, NY  10006

20

21  BY:   MATTHEW VANEK, ESQ.

22       BOAZ S. MORAG, ESQ.

23       MARK E. MCDONALD, ESQ.

24

25

Page 7

```
 1   BRYAN CAVE LLP

 2         Attorneys for Bank of America, N.A. and

 3             Federal National Mortgage Association

 4         1290 Avenue of the Americas

 5         New York, NY  10104

 6

 7   BY:   THOMAS J. SCHELL, ESQ.

 8

 9   DICKSTEIN SHAPIRO, LLP

10         Attorneys for FirstBank Puerto Rico

11         1633 Broadway

12         New York, NY  10019

13

14   BY:   JEFFREY A. MITCHELL, ESQ.

15         JUDITH R. COHEN, ESQ.

16         STEPHANIE BIRBROWER GREER, ESQ.

17

18   MILBANK, TWEED, HADLEY & MCCLOY, LLP

19         Attorneys for Official Committee

20         One Chase Manhattan Plaza

21         New York, NY  10005

22

23   BY:   DENNIS C. O'DONNELL, ESQ.

24

25
```

LEHMAN BROTHERS HOLDINGS, INC.

Page 8

1

2   TELEPHONIC APPEARANCES:

3

4   ANASTOLY BUSHLER, FARALLON CAPITAL MANAGEMENT

5   ISSAC K. DEVYVER, REED SMITH, LLP

6   CHAD J. HUSNICK, KIRKLAND & ELLIS, LLP

7   PAUL S. JASPER, SCHNADER HARRISON SEGAL & LEWIS LLP

8   ADRIENNE K. WALKER, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY

9   MICHAEL NEUMEISTER, STUTMAN, TREISTER & GLATT

10   CHRISTINE PAJAK, STUTMAN, TREISTER & GLATT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS, INC.

1                       P R O C E E D I N G S

2           THE COURT:  Be seated, please, good morning.

3           MS. MARCUS:  Good morning, Your Honor, Jacqueline

4   Marcus from Weil Gotshal and Manges on behalf of Lehman

5   Brothers Holdings, Inc., and its affiliated debtors.  We

6   have a rather short agenda today, Your Honor.

7           The first matter on the agenda relates to the joint

8   motion of Lehman Brothers Holdings, Inc., and the litigation

9   subcommittee of the creditor's committee to extend the stay

10  of avoidance actions.

11          As Your Honor is aware, we filed a motion to extend

12  the stay on December 21st.  At that time, we directed the

13  claims agent to serve all of the avoidance action defendants

14  in addition to the master service list.  The objection

15  deadline was January 9th, and no objections were filed by

16  the deadline.

17          On Friday, January 11th, it was brought to my

18  attention that some of the defendants in Adversary

19  Proceeding 3547 which has 265 defendants were not served by

20  the claims agent.

21          As set forth in the declaration that we filed

22  yesterday, we immediately directed the claims agent to serve

23  all of the defendants by overnight mail, while we pondered

24  what to do about the situation.

25          Shortly after that, we decided that it would be

08-13555-mg    Doc 34533-1    Filed 02/11/13    Entered 02/11/13 10:59:39    Exhibit A
Pg 11 of 21
LEHMAN BROTHERS HOLDINGS, INC.

Page 10

1    appropriate to adjourn today's hearing to the January 30th

2    hearing date, which we've cleared with your clerk, provided

3    that we could get a bridge order because the avoidance

4    action stay and the service deadline currently expire.  One

5    is January 18th and the other is January 20th.

6        So, Your Honor, with that, we request that the

7    hearing be adjourned until January 30th, and that the Court

8    enter a bridge order.  We did file a notice of adjournment

9    of the hearing yesterday, and in the notice of adjournment,

10   we indicated that the avoidance actions defendant in that

11   particular adversary proceeding would have until January

12   23rd to object to the relief that we're seeking.

13       THE COURT:  That all sounds fine to me.  It's

14   adjourned till the 30th and you'll get a bridge order.

15       MS. MARCUS:  Thank you, Your Honor.

16       The next matter on the agenda is a status

17   conference relating to the proof of claim filed Canary

18   Wharf, and my partner, Peter Isakoff will be handling that.

19       MR. ISAKOFF:  Good morning.

20       THE COURT:  Good morning.  I think there's some

21   attorneys wishing to come forward, so let's just wait a

22   moment.

23       MR. ISAKOFF:  May I proceed?

24       THE COURT:  Please.

25       MR. ISAKOFF:  We're here today because LBHI was the

1    guarantor of a lease of one of its subsidiaries LBL in

2    London, quite a large building.  The claimants Canary Wharf

3    and affiliates were the landlord, and by stipulation that

4    was so ordered by Your Honor on September 1, 2011, they have

5    limited their claims to $780 million.

6         We filed an objection to the claims last summer.

7    They opposed them.  We filed a reply last week.  There are

8    quite a number of disputed issues of English law.  There are

9    opinions of Queen's counsel submitted by both sides, and one

10   of the issues we raise, if we were successful, would lead to

11   the expungement of the guaranteed claim in its entirety.

12   The others, to the extent that their claims survive would

13   involve a number of factual issues, in addition to English

14   law issues, and as to those, should the claim not be

15   expunged in its entirety, we would like to have fact and

16   expert discovery, both as to liability and damages.

17        We have started to try to talk about a procedure as

18   to how to move forward here, whether to have oral argument

19   on one or more issues before Your Honor, and then to the

20   extent that the claims survive, proceed the discovery or

21   exactly how to proceed.  Those conversations begun this

22   morning out in the hallway.  I think it's fair to say are

23   preliminary in nature.  Have not thus far resulted in

24   anything that we have to present to Your Honor as a way to

25   proceed.

1          And I guess my suggestion would be that we perhaps

2     set a date with some time for oral argument, and perhaps in

3     advance of that, have enough discussions such that perhaps

4     we can reach an agreement on precisely what issues to

5     present at that time, or whether we should simply go into

6     discovery, that kind of thing.

7          THE COURT:  I'm not entirely clear on what you

8     would be arguing on a preliminary basis, without the benefit

9     of discovery and a full factual record.

10          MR. ISAKOFF:  There is one issue as to which I

11     believe the facts are effectively undisputed, and that is as

12     part of the landlord's dealings with the tenant without our

13     knowledge where they entered into what we've called a

14     forfeiture letter, they reached an agreement with the

15     tenant, that they would abandon their administrative claim

16     for unpaid rent that had accrued to that point, in exchange

17     for a payment of one and a half million pounds, which in the

18     opinion of our Queen's counsel, resulted in the guarantee

19     against -- claim against us being entirely discharged.

20          That is effectively a question of English law,

21     which we could argue to Your Honor.  And if we were

22     successful, that would obviate the need for anything else in

23     the case.  But that's the one issue that really is

24     susceptible to that type of treatment.

25          THE COURT:  This is the first time that I can

LEHMAN BROTHERS HOLDINGS, INC.

Page 13

1    recall that issues relating to LBL have been presented to

2    me.  To the extent that there was an argument that the

3    administrative claim of LBL was being affected, was that a

4    claim in this proceeding, or was that a claim in the UK

5    proceeding?

6            MR. ISAKOFF:  That was a claim in the UK

7    proceeding, I believe, Your Honor, that the landlord would

8    have an administrative claim.  I believe it was -- I'm going

9    on memory now, but about 30 million pounds for unpaid rent,

10   it might have been dollars, I'm not sure which it was, and

11   which was released as a priority claim, in exchange for a

12   payment of one and a half million pounds.  And obviously

13   that increased LBHI's liability under the guarantee, because

14   that administrative expense claim presumably could've been

15   paid in full in that proceeding.  And it's depending of our

16   QC that that visciated the guarantee entirely, because it

17   was done without our knowledge and consent.

18           THE COURT:  Okay.  Well, there are conflicting

19   opinions of counsel, so it's going to be difficult to decide

20   that without the benefit of context.  And perhaps without

21   the benefit of live witnesses.  But I'll hear what the

22   parties have to say about procedure.

23           MR. ISAKOFF:  Okay.

24           MR. TULCHIN:  Your Honor, good morning, Your Honor,

25   David Tulchin from Sullivan and Cromwell for Canary Wharf.

LEHMAN BROTHERS HOLDINGS, INC.

Page 14

1              In one respect I think we agree with counsel, and

2        that is that there are issues of English law that are

3        potentially determinative here, and to which no discovery is

4        necessary.  I have two suggestions about how to proceed,

5        Your Honor, if I might.  And we did try to -- we had a brief

6        discussion about this just a few moments ago in the hallway,

7        but were not able to reach any agreement at least thus far.

8              First, Your Honor, I do think it would make sense,

9        and here's where I think we agree, for the Court to resolve

10       English law questions at the outset.  Because potentially,

11       they are determinative.  I think it would be useful to the

12       Court to do so after you've heard from the two English

13       lawyers, the two Queen's counsel.  And I suggest that we

14       have a brief evidentiary hearing.  My guess is that it would

15       take a day and a half for the two lawyers to testify.  I

16       think it would be helpful for the Court in understanding the

17       contract and the issues of English law that have been

18       presented.

19              For example, Mr. Isakoff referred to his QC, his

20       opinion goes on for 43 pages.  It's 109 paragraphs, not all

21       of that, by any means, I think will be all that relevant to

22       the type of hearing that I'm proposing.  But there are some,

23       let's say, some little nooks and crannies of English law.

24       Our QC, whose name is Laurence Rabinowitz, of course, has

25       views that are quite different than Mr. Millett (ph).

LEHMAN BROTHERS HOLDINGS, INC.

Page 15

1          So before we have discovery, I think it would be

2     helpful to have, assuming the Court has the time, of course,

3     a brief evidentiary hearing.

4          And secondly, Your Honor, and this is I think more

5     in the way of a detail, but objections to the claim were

6     filed last August without the submission of any opinion from

7     an English barrister.  In fact, there was only a very scant

8     mention of English law in the papers that were filed on the

9     objection.

10         We responded in October with our papers, including

11    the opinion of Mr. Rabinowitz.  And it was only in reply

12    that they came forward with their Mr. Millett, who has

13    addressed lots of questions of English law in reply.  And I

14    wonder if we couldn't get leave from the Court to submit a

15    brief surreply since our QC, of course, did not have the

16    opportunity to address the issues of English law that are

17    now being stated to be determinative of at least the

18    preliminary stage of our claim.

19         And I would propose to submit a surreply, Your

20    Honor, at the Court's convenience, perhaps in three weeks if

21    that makes sense.

22         THE COURT:  I have insufficient information at this

23    point concerning the nature of the dispute between two

24    obviously eminent English barristers, concerning a point of

25    English law that may be familiar to justices of the high

1    court, but that are to me, matters of foreign law.

2           It is unclear to me from what you've told me, and

3    frankly from what little I've read of this in preparing for

4    today's status conference, whether the disagreements

5    concerning the application of English law to this dispute

6    are disagreements based upon unsettled law, or good faith

7    disagreements as to the application of black letter law to

8    the leasing question, and to the damages related to the

9    claims being asserted.

10           I looked generally at the papers that you filed,

11    and believe this to be a complex matter unless it can be

12    disposed of as a threshold question of law, in which you're

13    entitled or not entitled to the damages you seek.

14           It occurs to me that rather than simply stating

15    yes, go ahead and file a surreply, that it would be sensible

16    for the parties to continue the discussions that started

17    this morning in the hallway.  And for you to continue to

18    meet and confer and to develop a well considered set of

19    prehearing procedures relating to the evidentiary hearing

20    that you propose.

21           It seems to me that some form of evidentiary

22    hearing would be desirable, certainly from my perspective,

23    since to read submissions is never quite as compelling, as

24    hearing someone with a particularly well-turned English

25    accent speak to me from the witness stand.

1          So my suggestion is that you should have an

2     opportunity to respond, but I believe that that opportunity

3     should be part of a broader understanding that the parties

4     can reduce to writing, and I can so order relating to

5     prehearing procedures.  I'll certainly make time for such a

6     hearing.

7          I would also suggest that during the course of

8     developing this prehearing set of procedures, that the

9     parties give some thought to submitting this issue to

10    arbitration or mediation.  Arbitration in London before

11    perhaps a retired justice of the high court, or mediation

12    involving someone who is, by disposition and background, an

13    expert in matters of this sort might be useful for you to

14    consider.

15         Additionally, it seems to me that the matters that

16    are to be presented here are susceptible potentially to

17    mediation, and that some thought be given to that.  I'm not

18    directing it, I'm not even recommending it.  I'm just saying

19    that some thought might be given to whether that makes sense

20    under these circumstances.

21         MR. TULCHIN:  Of course, Your Honor, happy to

22    consider that.  I think these are very good suggestions.

23         THE COURT:  And in developing a prehearing

24    stipulation, my suggestion is that you contact my chambers,

25    so that you can include several hearing dates.  If you think

1   it's a two-day hearing, let's have two days at a point in

2   time where you would reasonably anticipate will be suitable

3   for the occasion.

4         Mr. Isakoff?

5         MR. ISAKOFF:  Yes, Your Honor, if I might just for

6   one moment.  This is a suggestion I heard for the first time

7   this morning in the hall, to have a hearing where the two

8   QCs testify.  And it seems to me that before you were to

9   bring them over and to try to deal with the whole list of

10  issues that they've given opinions on, there are a number of

11  those as to which we would want to have a developed factual

12  record.  Not just on damages, but on issues going to

13  liability under various theories.

14        And it seems to us that discovery should precede

15  the kind of effort to bring the QCs over and have Your Honor

16  take up time with a hearing for one and a half to two days.

17        THE COURT:  I hear what you're saying, and I'm not

18  ready to say that you're right, but you might be.  And my

19  thought on this is that, that's a subject to be considered

20  when you meet and confer to discuss procedures.

21        Additionally, it seems to me that many of the

22  factual matters here are discernible, identifiable, and in

23  all likelihood susceptible to a stipulation of facts, rather

24  than the burdens of depositions or formal discovery.  And my

25  suggestion is that since the documents that relate to this,

Page 19

```
 1    no doubt, have already been identified, and that the

 2    individuals who know something about those, no doubt, are

 3    known to the parties.  That some consideration be given to

 4    developing a list of pertinent facts that I can then take

 5    into consideration at the time of argument, with regard to

 6    how those facts should be interpreted.

 7              MR. ISAKOFF:  Your Honor, I -- in saying anything,

 8    I am, this morning, I fully understand that Your Honor is in

 9    no position to rule on any of these things.  I just did not

10    want to sit down and suggest that we were in agreement with

11    the things that were being said here.

12              In terms of developing a factual stipulation, in

13    fact, there are many things that we do not know that are

14    pertinent here.  And it very well may be we can come in with

15    a list of stipulated facts, after we've had a chance to find

16    out what's in the -- in our adversary's files.

17              MR. TULCHIN:  Your Honor, if I may.  I agree with

18    the Court that perhaps this is the sort of thing that we can

19    sit down and talk about.  I'm hopeful we can come to some

20    resolution about it.

21              There -- it may be that there are some facts, I'm

22    quite sure there are some factual issues that go only to the

23    question of damages.  And those, for example, it seems to

24    me, should be deferred until after an adjudication of these

25    English law questions.
```

```
 1           Those would be -- those factual issues potentially

 2      could be the subject of a great deal of discovery I think.

 3      But there may be fact issues on liability issues, and

 4      liability questions, that we can agree, should be the

 5      subject of some limited discovery.  I'm happy to consider

 6      that.  And I think maybe Mr. Isakoff and I should --

 7           MR. ISAKOFF:  We'll talk.

 8           MR. TULCHIN:  -- meet about this and spend some

 9      time going through the Court's suggestions.

10           THE COURT:  We all agree, you should talk.

11           MR. ISAKOFF:  Thank you, Your Honor.

12           MR. TULCHIN:  Thank you, Your Honor.

13           THE COURT:  And my suggestion is just so we can

14      keep a watch on this, that this be an agenda item for the

15      February omnibus hearing calendar only if you are unable to

16      reach an understanding concerning procedures.

17           So that's basically a 30-day window to reach an

18      understanding.  And if you can't, to come in and explain

19      what the problems are.

20           MR. TULCHIN:  Very good, Your Honor.

21           THE COURT:  Okay.

22           MR. TULCHIN:  Thank you, sir.

23           THE COURT:  Thank you.

24           MR. ISAKOFF:  Your Honor, I've been handed the

25      agenda.  I'm told that the next one is a hearing to consider
```