Madlyn Gleich Primoff, Esq.  
KAYE SCHOLER LLP  
425 Park Avenue  
New York, New York 10022  
(212) 836-8000  
mprimoff@kayescholer.com  

Hearing Date:  
February 13, 2013 at 10:00 a.m.

*Attorneys for Spanish Broadcasting System, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                    Chapter 11

LEHMAN BROTHERS HOLDINGS INC., et al.,                    Case No. 08-13555 (JMP)

                    Debtors.                              Jointly Administered

------------------------------------------------------------------------x

**SUPPLEMENTAL BRIEF OF SPANISH BROADCASTING SYSTEM, INC. IN RESPONSE TO REPLY OF LEHMAN BROTHERS HOLDINGS INC.**

Spanish Broadcasting System, Inc. ("Spanish Broadcasting"), by and through its undersigned attorneys, for its supplemental brief in response to the Reply to Response of Spanish Broadcasting and in Further Support of the Three Hundred Twenty-Eighth Omnibus Objection to Claims (No Liability Claims), dated January 24, 2013 (docket no. 34175) (the "Reply"), respectfully states as follows:[1]

**PRELIMINARY STATEMENT**

1. Spanish Broadcasting is the largest publicly traded Hispanic-controlled media and entertainment company in the United States. Spanish Broadcasting and Lehman Commercial

---

[1] By letter dated February 6, 2013, Spanish Broadcasting requested permission from this Court to submit supplemental briefing to address various issues raised by Lehman in its Reply. Spanish Broadcasting was notified by telephone on that date that the Court had granted its request.

61116227.DOCX

Paper Inc. ("Lehman") were parties to a Credit Agreement (defined below) that included a revolving credit facility of $25 million.

2.  As a result of Lehman's failure to fund its $10 million portion of the $25 million draw request (the "Draw") submitted by Spanish Broadcasting on October 3, 2008, Spanish Broadcasting suffered damages, as set forth in Spanish Broadcasting's Proof of Claim[2], the report of Capstone Advisory Group, LLC annexed thereto (the "Capstone Report"), the declaration of Joseph A. Garcia, the Chief Financial Officer of Spanish Broadcasting, dated January 29, 2013 (docket no. 34344) (the "Garcia Declaration") and the Declaration of Joseph Otchin, dated January 29, 2013 (docket no. 34339). In its Reply, Lehman raises the following three material issues: (1) the point that the Credit Agreement was terminated by the payoff letter, dated February 7, 2012, between Lehman and Spanish Broadcasting (the "Payoff Letter"); (2) the standard for measuring damages for Lehman's breach of its obligation to fund Spanish Broadcasting's Draw under the revolving credit facility; and (3) the issue of whether Lehman's failure to fund the Draw caused Spanish Broadcasting's damages.

3.  As discussed in greater detail below, the gravamen of Lehman's argument in its Objection and its Reply is that all of Spanish Broadcasting's damages are consequential damages that Spanish Broadcasting allegedly waived pursuant to Section 10.12(e) of the Credit Agreement. However, Lehman's argument fails because the alleged consequential damages waiver contained in Section 10.12(e) of the Credit Agreement did not survive the termination of the Credit Agreement pursuant to the Payoff Letter. More specifically, the relevant legal authorities discussed more fully below hold that where, as here, the Credit Agreement and the

---

[2] Any capitalized term used herein but not defined herein shall have the meaning set forth in the Response of Spanish Broadcasting System, Inc. to Three Hundred Twenty-Eighth Omnibus Objection to Claims (No Liability Claims), dated September 13, 2012 (docket no. 30907) (the "Response").

Payoff Letter do not provide for the survival of Section 10.12(e), the alleged consequential damages waiver that was the sole basis for Lehman's Objection to the Proof of Claim is neither effective nor enforceable. Thus, Spanish Broadcasting's claims should be allowed regardless of whether they constitute direct or consequential damages.[3]

4. In addition, Lehman's new argument regarding the standard for measuring Spanish Broadcasting's damages for Lehman's failure to fund the Draw is baseless and without merit because, as discussed in greater detail below, it is a matter of black letter law that Spanish Broadcasting's damages are not limited to the cost of replacement financing when replacement financing was unavailable in the market, as was the case in October 2008 when Lehman failed to fund its portion of the $25 million draw request. Hence, Spanish Broadcasting is entitled to prove its damages for Lehman's breach of its obligation to fund the Draw.

5. Finally, Lehman inappropriately argues that Spanish Broadcasting has not demonstrated a causal link between Lehman's failure to fund the Draw and Spanish Broadcasting's damages. In fact, Spanish Broadcasting expressly alleges in its Proof of Claim, including the Capstone Report, and the Garcia Declaration that Lehman's failure to fund caused Spanish Broadcasting's damages. These allegations must be accepted for purposes of the motion to dismiss standard governing this Sufficiency Hearing.

6. The points advanced by Lehman in its Objection and Reply are without merit and plainly do not suffice to defeat Spanish Broadcasting's Proof of Claim under the procedures set forth in the Court's order regarding claims procedures, dated April 19, 2010 (docket no. 8474) (the "Claims Procedures Order"). Indeed, pursuant to the Claims Procedures Order, the standard

---

[3] Spanish Broadcasting adheres to its position, asserted in its Response, that all of its damages are direct damages and, in any event, that the direct or consequential nature of damages is a question of fact that cannot be resolved on a motion to dismiss standard at the Sufficiency Hearing. But that point is now secondary (if relevant at all) given that the consequential damages waiver is ineffective and unenforceable as a matter of law.

3

61116227.DOCX

of review that governs Lehman's Objection to the Proof of Claim at this stage is a motion to dismiss standard. See Claims Procedures Order, Ex. A, ¶ 4(a). It goes without saying that under a motion to dismiss standard, in considering Spanish Broadcasting's Proof of Claim at this time, the Court is required to accept all of Spanish Broadcasting's allegations as true and draw all reasonable inferences in Spanish Broadcasting's favor. *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). When evaluated against this standard, it is beyond cavil that Spanish Broadcasting's Proof of Claim must survive a motion to dismiss. Accordingly, Lehman's Objection should be denied at this time and Spanish Broadcasting should have a full opportunity at an evidentiary hearing to offer evidence in support of its Proof of Claim.

## BACKGROUND

7. As described in the Proof of Claim and the Garcia Declaration, a copy of which is annexed hereto as <u>Exhibit A</u>, Spanish Broadcasting and Lehman were parties to that certain First Lien Credit Agreement (the "<u>Credit Agreement</u>"), dated as of June 10, 2005, which included (among other things) a revolving credit facility of $25 million. See Proof of Claim, Exhibit A. As a result of Lehman's failure to fund its $10 million portion of the $25 million Draw submitted on October 3, 2008, Spanish Broadcasting suffered damages. These damages are described in the Proof of Claim, including the Capstone Report, and the Garcia Declaration as follows:

    i.    <u>Total Invested Capital Damages</u>: $39.6 million in damages based on the excess of the actual diminution in value of total invested capital suffered by Spanish Broadcasting as a result of Lehman's failure to fund the Draw as compared with the diminution in value Spanish Broadcasting should have suffered based on the experience of its various competitors in the marketplace.

    ii.    <u>Swap Termination Damages</u>: $9,886,745 in damages on account of swap settlement amounts that Spanish Broadcasting ultimately paid to Lehman's affiliate in excess of the $6 million amount that Spanish Broadcasting would have paid had it been able to terminate the swap in October 2008 as it wanted to do.

iii. <u>Fee Damages</u>: $273,333.33 in damages on account of fees that Spanish Broadcasting paid to Lehman for the $10 million revolver commitment that Lehman failed to fund.

8. On July 10, 2012, Lehman filed a mere 2 ½ page Objection to the Proof of Claim. With respect to the Total Invested Capital Damages and the Swap Termination Damages, the <u>sole</u> argument that Lehman set forth in its Objection was that these damages are barred by Spanish Broadcasting's alleged waiver of consequential damages under Section 10.12(e) of the Credit Agreement. On September 13, 2012, Spanish Broadcasting filed its Response to the Objection. On January 24, 2013, Lehman filed its 17 page Reply.

### A. THE CONSEQUENTIAL DAMAGES WAIVER IS INEFFECTIVE AND UNENFORCEABLE

9. Lehman relies heavily in its Objection and its Reply on Spanish Broadcasting's alleged consequential damages waiver under Section 10.12(e) of the Credit Agreement. However, even assuming, without conceding, that the damages sought by Spanish Broadcasting constitute consequential damages, the alleged consequential damages waiver contained in Section 10.12(e) of the Credit Agreement is ineffective and unenforceable as a matter of law.

10. As Lehman concedes in its Reply, Lehman and Spanish Broadcasting entered into the Payoff Letter, a copy of which is annexed hereto as <u>Exhibit B</u>, that "**terminated**" the Credit Agreement. When Lehman wanted to provide that a provision of the Credit Agreement survived the termination of the Credit Agreement, it did so with specificity in the Payoff Letter and/or the Credit Agreement. See Payoff Letter, ¶ 1(a) (providing for survival of contingent obligations pursuant to Section 10.5 of the Credit Agreement), ¶ 4 (providing for survival of Spanish Broadcasting's Proof of Claim); Credit Agreement § 2.19(c) (survival of provision regarding certificate of additional amounts payable), § 2.20(e) (survival of provision regarding taxes), § 2.21 (survival of indemnity provision), § 9.7 (survival of indemnification provision), § 10.5 (survival of provision regarding payment of expenses). By contrast, **Section 10.12(e)** of the

5

Credit Agreement, the alleged consequential damages waiver, **contains no such survival language**.

11. Because neither the Credit Agreement nor the Payoff Letter states that the consequential damages waiver in Section 10.12(e) survives, it terminated -- and thus is ineffective, unenforceable and, as a matter of New York law, irrelevant to Spanish Broadcasting's Proof of Claim. The applicable judicial authorities firmly support Spanish Broadcasting's position regarding the alleged consequential damages waiver. Indeed, in *United States v. American Society of Composers, Authors & Publishers*, No. Civ. 13-95 (WCC), 1989 U.S. Dist. LEXIS 16907 (S.D.N.Y. Dec. 21, 1989), the District Court for the Southern District of New York held that a waiver provision did not survive termination of the contract because there was no clear indication that the waiver provision was intended to survive termination of the contract. The District Court stated that:

> Ordinarily, contract provisions do not continue to bind the parties after the contract has been terminated. Consequently, if one of the parties wishes a contract term to remain in effect after the contract ends, the contract must say so explicitly.

*Id.* at *33-*34 (citation omitted). *See, e.g.*, *Scientific Components Corp. v. Raytheon Co.*, 2005 U.S. Dist. LEXIS 13087 (S.D.N.Y. June 29, 2005) (where a waiver of consequential damages was not included in the section listing which sections of the sale contract at issue would survive termination, an arbitration panel found that the consequential damages waiver did <u>not</u> survive termination of the contract, and the District Court confirmed the arbitration award in its entirety, holding that the panel had made a "reasoned conclusion based on its interpretation of the contract between the parties.").

B. **SPANISH BROADCASTING IS ENTITLED TO DAMAGES FOR LEHMAN'S BREACH OF ITS OBLIGATION TO FUND THE DRAW**

12. In its Reply, Lehman argues for the first time that Spanish Broadcasting's damages for Lehman's failure to fund the Draw are limited to the cost of replacement financing.

6

However, it is a matter of black letter law that damages for breach of a loan contract are <u>not</u> limited to the cost of alternate financing when a replacement loan is unavailable.  *Corbin on Contracts* § 59.3 (rev. ed., supp. 2012) provides that:

> [F]or breach of a contract to lend money the borrower can obtain judgment for damages measured by the resulting injury . . . .  This is the rule applicable to contracts in general, and a lender of money should be subject to the same rule as other contracting parties.

Similarly, the *Restatement (Second) of Contracts* § 351 (1981) provides that:

> [I]n the less common situation in which the lender has reason to foresee that the borrower will be unable to borrow elsewhere or will be delayed in borrowing elsewhere, the lender may be liable for much heavier damages based on the borrower's inability to take advantage of a specific opportunity (see Illustration 14), his having to postpone or abandon a profitable project (see Illustration 15), or his forfeiture of security for failure to make prompt payment (see Illustration 16).

13. Furthermore, the New York Court of Appeals has spoken on this issue in *Stern v. Premier Shirt Corp.*, 260 N.Y. 201 (N.Y. 1932), where the Court held that the borrower was entitled to damages based upon the defendants' failure to fund a loan.  *Accord Lester v. Resolution Trust Corp.*, 125 B.R. 528, 532 (N.D. Ill. 1991) (holding that borrower was entitled to damages for breach of a loan contract where alternate financing was unavailable); *United States Funding, Inc. v. Bank of Boston Corp.*, 28 Mass. App. Ct. 404, 407 (Mass. App. Ct. 1990) (same).  The *FDIC v. Parkway Exec. Office Ctr.*, No. 96–121, 1998 WL 18204 (E.D. Pa. Jan. 9, 1998) and *In re Miraj and Sons, Inc.*, 192 B.R. 297 (Bankr. D. Mass. 1996) cases that Spanish Broadcasting relied on in its Response support the proposition that damages may be, and indeed were, awarded for breach of a lender's obligation to fund under a loan agreement.  Lehman's attempts to distinguish these cases in its Reply are unavailing.

14. Contrary to Lehman's contention in its Reply, Spanish Broadcasting quite obviously could <u>not</u> "go into the market the next day after the breach" and get a replacement loan.  Garcia Declaration, ¶¶ 5, 11-13.  This Court has previously recognized in *Charter*

7

*Communications*, 419 B.R. 221, 232 (Bankr. S.D.N.Y. 2009) (Peck, J.) that, in October 2008, the credit markets were in "cardiac arrest" as a result of Lehman's colossal failure, holding:

> Following the bankruptcy of Lehman Brothers Holdings, Inc. on September 15, 2008, the global credit markets went into the financial equivalent of cardiac arrest. Commercial lending came to a virtual halt. Smart, sophisticated and otherwise confident business people panicked. No one who lived through the period will ever forget the fear engendered by a worldwide crisis of confidence and the inability to obtain credit by conventional means.

15. Given that alternative financing was plainly unavailable in the wake of Lehman's failure to fund the Draw under the revolving credit facility, Spanish Broadcasting is entitled to damages as a matter of law. As set forth in greater detail in paragraphs 6-10 of the Garcia Declaration, Spanish Broadcasting had planned on using a portion of the $25 million Draw under the revolving credit facility to pay off an $18.5 million note maturing in January 2009. Because Lehman did not fund its $10 million share of the Draw, Spanish Broadcasting was compelled to use the entire $15 million it did receive from the Draw, plus $3.5 million of its already low cash reserves, to make the $18.5 million payment on the maturing note. Consequently, Spanish Broadcasting lacked essential funds necessary for general corporate purposes and suffered a diminution in the value of Spanish Broadcasting's total invested capital. In addition, Lehman's failure to fund the Draw left Spanish Broadcasting without the capital necessary to terminate and close out its obligations under a swap agreement with Lehman's affiliate. Therefore, Lehman's failure to fund caused Spanish Broadcasting to suffer the Total Invested Capital Damages and the Swap Termination Damages.

16. In its Reply, Lehman cites three cases concerning the relationship between a depositor and its bank where the depositor sued the bank for failure to make a timely wire transfer of funds to the depositor's account. *See Central Coordinates, Inc. v. Morgan Guar. Trust Co.*, 494 N.Y.S.2d 602 (N.Y. Sup. Ct. 1985); *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951 (7th Cir. 1985); *Abate v. Bushwick Savs. Bank*, 138 N.Y.S.2d 140 (N.Y.C. Ct. 1955). These

8

cases are so factually distinct from the matter at bar that they are irrelevant. The cases have nothing to do with the damages to be imposed for a lender's breach of a loan agreement. In *Central Coordinates*, 494 N.Y.S.2d at 606, the Supreme Court of New York granted the bank's motion for summary judgment and dismissed plaintiff's claims based on Article 4 of the UCC (which is plainly not relevant here) and applicable banking regulations (also not relevant here). *See Evra*, 673 F.2d at 955 (same, decided under Article 4 of the Illinois UCC). The *Abate* case is truly far afield from the matter at hand, in that the plaintiff sued the bank for failure to pay over monies in his deceased mother's account at a time when plaintiff's half-brother had disputed plaintiff's entitlement to the monies. 138 N.Y.S.2d at 144. Significantly, all of the foregoing cases were decided on a complete factual record after a trial or a summary judgment proceeding, not on a motion to dismiss, which is the applicable standard of review for the Sufficiency Hearing.

17. Spanish Broadcasting respectfully submits that the Objection should be overruled at this time because Spanish Broadcasting is entitled, under the standard of review set forth in the Claims Procedures Order, to proceed to an evidentiary hearing with respect to its Proof of Claim.

C. **SPANISH BROADCASTING HAS ALLEGED THAT LEHMAN'S FAILURE TO FUND CAUSED SPANISH BROADCASTING'S DAMAGES; THEREFORE, AN EVIDENTIARY HEARING IS APPROPRIATE**

18. Spanish Broadcasting expressly alleges in the Proof of Claim (including the Capstone Report) and the Garcia Declaration that Lehman's failure to fund the Draw caused Spanish Broadcasting to suffer the damages set forth in the Proof of Claim. See Proof of Claim, at 1 ("The Amended Claim is for all damages incurred by the Claimant as a result of the Debtor's failure to fund, as detailed on Exhibit B [the report of Capstone Advisory Group]."); Garcia Declaration, ¶¶ 6-10.

19. In its Reply, Lehman argues for the first time that Spanish Broadcasting has not demonstrated a causal link between Lehman's breach of its obligation to fund the Draw and

9

Spanish Broadcasting's damages. Lehman inappropriately relies on decisions that were decided after a trial or at the summary judgment stage where the court had the benefit of a fully developed factual record. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

20. As set forth in the Claims Procedures Order, the standard of review for the Sufficiency Hearing is equivalent to a motion to dismiss standard. See Claims Procedures Order, Ex. A, ¶ 4(a). In considering a motion to dismiss, the Court must accept the claimant's factual allegations as true and draw all reasonable inferences in favor of the claimant. *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). Accepting all of Spanish Broadcasting's allegations as true and drawing all reasonable inferences in Spanish Broadcasting's favor, it is beyond cavil that Spanish Broadcasting has stated claims against Lehman that must survive a motion to dismiss. Accordingly, Spanish Broadcasting is entitled to offer evidence at an evidentiary hearing with respect to its claims.

## CONCLUSION

WHEREFORE, Spanish Broadcasting respectfully requests that this Court enter an order overruling the Objection, and granting Spanish Broadcasting such other and further relief as is just and proper.

Dated: New York, New York
February 11, 2013

/s/ *Madlyn Gleich Primoff*
Madlyn Gleich Primoff, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000
mprimoff@kayescholer.com

*Attorneys for Spanish Broadcasting System, Inc.*