CADWALADER, WICKERSHAM & TAFT LLP
700 6th Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.

*Attorneys for Jeremy Davis*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------ x

**RESPONSE OF JEREMY DAVIS TO THE PLAN ADMINISTRATOR'S**
**THREE HUNDRED EIGHTY-EIGHTH OMNIBUS OBJECTION**
**TO CLAIMS (NO LIABILITY CLAIMS)**

        Jeremy Davis (the "Claimant"), by and through his undersigned counsel,
respectfully submits this response to the *Three Hundred Eighty-Eighth Omnibus Objection to
Claims (No Liability Claims)* (the "Objection") filed by Lehman Brothers Holdings Inc.
("LBHI"), as Plan Administrator under the Modified Third Amended Plan of Lehman Brothers
Holdings Inc. and its Affiliated Debtors, and states as follows:

**PRELIMINARY STATEMENT**

        1.     The Claimant's claim is based on his employment agreement with LBHI.
This agreement guaranteed that the Claimant would receive compensation from LBHI in the
form of a base salary, a bonus and retention awards. The Plan Administrator's objection rests on
the unsubstantiated assertion that the Claimant relinquished his rights under his LBHI
employment agreement when, after being terminated by LBHI following its bankruptcy, the

Claimant entered into a new employment agreement with Eagle Energy Partners I, L.P. ("Eagle

Energy" or the "Partnership").  However, neither LBHI nor any other Lehman entity is a party to

the Claimant's new employment agreement.  Accordingly, the Eagle Energy agreement does not,

and cannot, affect the Claimant's rights against LBHI.  LBHI made a promise to the Claimant,

which should be kept.

## BACKGROUND

**A.     The Claimant's Employment Agreement with Lehman Brothers.**

2.      On or about May 8, 2007, LBHI and certain other Lehman Brothers

entities acquired all of the limited and general partnership interests of Eagle Energy, a provider

of energy-asset management and power-marketing services based in Houston, Texas (such

acquisition, the "Lehman Acquisition").

3.      On or about June 14, 2007, the Claimant entered into an employment

agreement with LBHI, its affiliates and subsidiaries.  Subsequently, on or about August 6, 2008,

the Claimant entered into a letter agreement with LBHI, its affiliates and subsidiaries that revised

certain aspects of his compensation (together with the June 14, 2007 agreement, the "Lehman

Employment Agreement").[1]

4.      The Lehman Employment Agreement provides that, as of the closing date

of the Lehman Acquisition, the Claimant was employed by the "Firm" as Head of Gas Trading

and Risk Management in the Commodities Business.[2]  The "Firm" is defined as "Lehman

Brothers Holdings Inc. (together with its parents, affiliates, and subsidiaries . . .)."[3]    The

---

[1] A copy of the Lehman Employment Agreement is attached hereto as Exhibit A.
[2] Lehman Employment Agreement, 1.
[3] Id.

2

Lehman Employment Agreement defines Eagle Energy as a separate entity, and does not include Eagle Energy as an affiliate or subsidiary of the Firm.[4]

5.      According to the Lehman Employment Agreement, the Claimant's corporate title of Senior Vice President was "submitted for official approval by the Executive Committee of the Firm's Board of Directors."[5]  The Claimant's Lehman Employment Agreement is executed by Mary Pat Archer and Christine Thomson, who were both Lehman employees.[6]

6.      Pursuant to the Lehman Employment Agreement, the Claimant's compensation with respect to his "employment by the Firm" included a "bonus in the amount of $1,300,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (in or about January 2009)" (the "Guaranteed Bonus").[7]  If the Claimant's employment was terminated by the Firm "without Cause before the payment in full of the guaranteed minimum bonus for performance year 2008," the Lehman Employment Agreement provided that the Claimant would "be paid on the applicable bonus payment date any unpaid guaranteed minimum bonus for such year . . . ."[8]  "Cause" is defined as "(i) misconduct, (ii) breach of . . . Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily."[9]

In addition to the Guaranteed Bonus, the Lehman Employment Agreement granted the Claimant a retention award in the aggregate amount of $900,000, which vested and became payable on the first through third anniversaries of the Lehman Acquisition Closing Date

---

[4] Id.
[5] Id.
[6] Id. at 4, 10.
[7] Id. at 8.
[8] Id. at 9.
[9] Id. at 2.

3

(the "Retention Award").[10]   The Lehman Employment Agreement provides that if the Claimant's

employment was terminated by the Firm "without Cause before the applicable payment date,"

the Claimant would "continue to receive any unpaid Retention Award payments on the

applicable payment date(s)," provided he had not breached any provisions of the LBHI

"Covenant Agreements."[11]   The "Covenant Agreements," which the Claimant was required to

execute, included a "Lehman Brothers Non-Competition, Non-Solicitation, and Non-

Disparagement Agreement" and a "Lehman Brothers Confidentiality Agreement."[12]

### B.    The Debtors' Bankruptcy and Sale of Assets to Barclays Capital Inc.

7.      Beginning on September 15, 2008 and periodically thereafter, LBHI and

certain of its subsidiaries commenced voluntary cases in this Bankruptcy Court under chapter 11

of the Bankruptcy Code.

8.      On September 17, 2008, the Debtors filed a motion seeking court approval

of the sale of certain assets owned by LBHI and Lehman Brothers Inc. ("LBI") to Barclays

Capital Inc.[13]   The bankruptcy court approved the Barclays sale on September 19, 2008.[14]   As of

that point, Claimant no longer had the option of continued employment at LBHI.

9.      Subsequently, the Claimant received an email from Barclays offering the

Claimant employment beginning on September 22, 2008.[15]   In order to accept, the Claimant was

required to send an email to Barclays and attend work on September 22, 2008.[16]   However, the

---

[10] Id.
[11] Id.
[12] Id. at 1, 5-7.
[13] *Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets* [Dkt. No. 60].
[14] *Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases* [Dkt. No. 258].
[15] Email dated September 22, 2008 from Barclays Capital Inc., attached hereto as Exhibit B.
[16] Id.

Claimant was informed by Joe Gold, Co-Head of Commodities for Barclays, that Eagle Energy

was not part of the sale to Barclays, and that the LBHI employees assigned to the Eagle Energy

unit would not become employees of Barclays.[17]

10.     After it became evident that LBHI did not intend to transfer Eagle Energy

to Barclays, the Claimant and certain other LBHI employees assigned to the Eagle Energy unit

brokered a deal with EDF Trading North America LLC and EDF Trading North America Inc.

(together, "EDF Trading") to acquire Lehman's partnership interests in Eagle Energy.

**C.     The Debtors' Sale of Eagle Energy to EDF Trading and the Claimant's
Employment Agreements with Eagle Energy.**

11.     On September 26, 2008, LBHI and certain other Lehman Brothers entities

entered into a purchase agreement (the "Purchase Agreement") with EDF Trading, pursuant to

which the Lehman entities sold all of their partnership interests in Eagle Energy to EDF

Trading.[18]

12.     On October 1, 2008, the Debtors filed a motion seeking court approval of

the Purchase Agreement and authority to sell their partnership interests in Eagle Energy to EDF

Trading free and clear of all liens, claims, encumbrances and interests under section 363(f) of the

Bankruptcy Code (the "363 Sale Motion").[19]

13.     On October 17, 2008, this court entered an order approving the Purchase

Agreement and authorizing the Debtors to sell their partnership interests in Eagle Energy to EDF

---

[17] See emails dated September 22, 2008 among Joe Gold of Barclays Capital and Chuck Watson of Lehman
Brothers, attached hereto as Exhibit C.  The exclusion of the Eagle Energy business from the Barclays sale was
confirmed in the *Executed Clarification Letter, Exhibit C to Notice of Filing of Purchase Agreement Approved by
Order Under 11 U.S.C. 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006
Authorizing and Approving (a) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (b)
Assumption and Assignment of Executory Contracts and Unexpired Leases* [Dkt. No. 280].

[18] A copy of the Purchase Agreement is attached hereto as Exhibit D.

[19] See *The Debtors' Motion for Entry of an Order Pursuant to Sections 363 and 365 of the Bankruptcy Code and
Federal Rules of Bankruptcy Procedure 6004, 6006 and 9019 Authorizing Lehman Brothers Holdings Inc. to (A)
Enter Into a Partnership Interests Purchase Agreement, (B) Compromise and Release a Portion of an Intercompany
Loan, and (C) Assign the Remainder of Such Intercompany Loan to Purchasers* [Dkt. No. 503].

Trading free and clear of all liens, claims, encumbrances and interests under section 363(f) of the

Bankruptcy Code.[20]  The Debtors' sale of their interests in Eagle Energy closed on or about

October 31, 2008 (such sale, the "EDF Sale").

14.    In the Purchase Agreement, which was filed with the Bankruptcy Court as

an exhibit to the 363 Sale Motion, the Lehman entities represented and warranted to EDF

Trading that "the Partnership has no employees."[21]

15.    Furthermore, the Lehman entities represented and warranted to EDF

Trading that "the Partnership does not sponsor or maintain any Benefit Plans," including any

"employment," "non-competition," "deferred compensation," "executive compensation,"

"incentive bonus or other bonus" or "other benefit plans."[22]

16.    The Purchase Agreement also states that any person involved in the Eagle

Energy business unit who accepts an offer of employment from Eagle Energy "shall become an

employee of the Partnership after the Closing Date."[23]

17.    On or about October 9, 2008, the Claimant entered into a letter agreement

with Eagle Energy (the "Eagle Energy Employment Agreement"), which confirmed his

acceptance of Eagle Energy's "offer of employment."[24]  On or about December 31, 2008, the

Claimant entered into a revised letter agreement with Eagle Energy, which amended and restated

---

[20] See *Order Granting Debtors' Motion for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 9019 Authorizing Lehman Brothers Holdings Inc. to (A) Enter Into a Partnership Interests Purchase Agreement, (B) Compromise and Release a Portion of an Intercompany Loan, and (C) Assign the Remainder of Such Intercompany Loan to Purchasers* [Dkt. No. 1126].
[21] Purchase Agreement, § 5.18.
[22] Purchase Agreement, § 5.17(a)-(b).
[23] Purchase Agreement, § 7.13(a).
[24] Eagle Energy Employment Agreement, 1.  A copy of the Claimant's Eagle Energy Employment Agreement is attached hereto as Exhibit E.

6

the terms and conditions of his employment with Eagle Energy and superseded the October 9,

2008 agreement (the "Amended Eagle Energy Employment Agreement").[25]

**D.    The Claimant's Proof of Claim and the Plan Administrator's Objection.**

18.    On May 15, 2009, the Claimant filed proof of claim number 4362 in the

amount of $1,900,000 against LBHI (the "Claim").  The Claim is based on the $1,300,000

Guaranteed Bonus and $600,000 in Retention Award payments due to the Claimant under the

terms of the Lehman Employment Agreement.

19.    On January 18, 2013, LBHI, as Plan Administrator, filed the Objection to

the Claim, asserting that the Chapter 11 Estates have no liability on the Claim.

In its Objection, the Plan Administrator asserts that the Claimant "remained

employed by Eagle Energy" following the EDF Sale, and that the Claimant's Eagle Energy

Employment Agreement "amends and restates the terms and conditions of [Claimant's]

employment and supersedes any prior letter or other agreements covering such matters."[26]

Essentially, the Plan Administrator argues that because the Claimant entered into an employment

agreement with Eagle Energy, his Lehman Employment Agreement is no longer effective, and

the Chapter 11 Estates are not responsible for the Claimant's Guaranteed Bonus or Retention

Award.

## ARGUMENT

20.    A properly filed proof of claim constitutes prima facie evidence of the

validity and amount of the claim.[27]  In order to overcome the prima facie validity of a claim, a

---

[25] A copy of the Amended Eagle Energy Employment Agreement will be provided to the Bankruptcy Court upon request.
[26] Objection at Exhibit A, 2.
[27] See Fed. R. Bankr. P. 3001(f).

party objecting to the claim must present "evidence in equal force to the prima facie case . . .

which, if believed, would refute at least one of the allegations that is essential to the claim's legal

sufficiency."[28]  An objecting party cannot merely rely on conclusory statements to overcome the

presumption of prima facie validity.  Instead, the objecting party must produce sufficient rebuttal

evidence in order to shift the burden of proof back to the claimant.[29]

21.     In its Objection, the Plan Administrator does not offer any evidence in

support of its assertion that the Chapter 11 Estates are not liable on the Claim.  To succeed on its

argument, the Plan Administrator must come forward with probative evidence that the Claimant

did not enter into an employment agreement with LBHI, the Claimant was never an employee of

LBHI, and the Claimant entered into an employment agreement with Eagle Energy prior to

October 2008.  However, the Plan Administrator has not offered any evidence in support of its

argument, because it cannot.  Instead, the Plan Administrator makes conclusory statements that

the Claimant's Eagle Energy Employment Agreements, to which LBHI was not a party,

somehow amended and superseded the Claimant's Lehman Employment Agreement and

eviscerated his rights thereunder.

22.     Specifically, the Objection refers to additional documentation provided to

the Chapter 11 Estates by the Claimant that indicates he "remained employed by Eagle Energy

following the acquisition by EDF," and mistakenly concludes that the Claimant's Eagle Energy

Employment Agreement "amends and restates the terms and conditions" of his Lehman

Employment Agreement and "supersedes any prior letter or other agreement concerning" the

---

[28] In re Onieda, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992)).
[29] See Allegheny Int'l, 954 F.2d at 174.

8

Claimant's employment.[30]  However, such amending, restating and superseding is not possible, because the employment agreements in question do not intersect as a matter of fact or law.

23.    As the Claimant's Lehman Employment Agreement and Covenant Agreements demonstrate, the Claimant was an employee of LBHI.  Following LBHI's bankruptcy, the Claimant was terminated by LBHI without "Cause," as defined in the Lehman Employment Agreement.  LBHI's termination of the Claimant without "Cause" occurred upon the closing of the Barclays sale.  At a minimum, it occurred upon the closing of the EDF Sale.  Because the Claimant was terminated by LBHI without "Cause," LBHI remains obligated to the Claimant on his Guaranteed Bonus and Retention Award pursuant to the terms of the Lehman Employment Agreement.

24.    As the Lehman Employment Agreement makes clear, the Claimant was employed by LBHI, not Eagle Energy, prior to the EDF Sale.  As noted above, the "Firm" that offered employment to the Claimant was "Lehman Brothers Holdings Inc. (together with its parents, affiliates, and subsidiaries . . .)" and the Lehman Employment Agreement was signed by Lehman employees.[31]  In addition, the Claimant's Eagle Energy Employment Agreement demonstrates that Eagle Energy extended an "offer of employment" to the Claimant in October 2008.[32]  The Claimant became an employee of Eagle Energy upon executing the Eagle Energy Employment Agreement, and not before.

25.    As represented and warranted by the Debtors in the Purchase Agreement, Eagle Energy had no employees at the time of the EDF Sale.[33]  The Debtors also represented and

---

[30] Objection at Exhibit A, 2.  The Plan Administrator mischaracterizes the Claimant's Eagle Energy Employment Agreement as the "Amended Agreement," and the Claimant's Lehman Employment Agreement as the "Original Agreement."
[31] Lehman Employment Agreement, 1, 10.
[32] Eagle Energy Employment Agreement, 1.
[33] Purchase Agreement, § 5.18.

warranted that Eagle Energy had no employee benefit plans, including "non-competition,"

"deferred compensation," "executive compensation" or "incentive bonus or other bonus" plans

— categories under which the Lehman Employment Agreement and Covenants Agreements

fall.[34]  In addition, any person involved in the Eagle Energy business unit that accepted an offer

of employment from Eagle Energy was to become, not remain, an employee of Eagle Energy

after the EDF Sale closing date.[35]  The Purchase Agreement was attached as an exhibit to the 363

Sale Motion.  Thus, the foregoing representations were not only made to EDF Trading, but also

to the Bankruptcy Court.

26.    Simply put, the Claimant's Eagle Energy Employment Agreements cannot

possibly constitute evidence that LBHI's contractual obligations to the Claimant have been

extinguished.  Because the Plan Administrator has failed to come forward with evidence to refute

the prima facie validity of the Claim, the Plan Administrator's Objection should be denied.

27.    The Claimant reserves all rights, claims and defenses, including, without

limitation, the right to discovery in connection with the Plan Administrator's Objection.

## **CONCLUSION**

WHEREFORE, the Claimant respectfully requests that the Court (i) overrule the

Objection and allow Claim 4362 in its filed amount, and (ii) grant such other and further relief as

this Court deems just and proper under the circumstances.

---

[34] Id. at § 5.17(a)-(b).
[35] Id. at § 7.13(a).

Dated: Washington, DC
       February 19, 2013

CADWALADER, WICKERSHAM & TAFT LLP

/s/ Mark C. Ellenberg
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.
700 6th Street, NW
Washington, DC 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

*Attorneys for Jeremy Davis*