# **EXHIBIT A**

# LEHMAN BROTHERS

6/14/2007

*By Hand*

Jeremy Davis

Dear Jeremy:

In connection with the acquisition of Eagle Energy Partners I, L.P. ("Eagle") contemplated by the Purchase Agreement, dated as of May 8, 2007, among Lehman Brothers Commodities Services Inc. and the sellers named therein (the "Purchase Agreement"). Eagle and Lehman Brothers Holdings Inc. (together with its parents, affiliates, and subsidiaries, "Lehman" or the "Firm") have agreed that you are key to the business of Eagle and, as such, Lehman and Eagle desire to provide you with an incentive to remain employed with Eagle or its successor in the acquistion through and after the closing date of the Purchase Agreement (the "Closing Date"). Accordingly, Lehman is pleased to offer you the opportunity to receive the compensation described in this letter, subject to the terms and conditions set forth below. Your eligibility to receive such compensation is conditioned on the Closing (as defined in the Purchase Agreement) of the Purchase Agreement, your continued employment with Eagle or its affiliates through the Closing Date, your execution of the "Non-Competition, Non-Solicitation and Non-Disparagement Agreement" and the "Confidentiality Agreement" attached hereto as **Exhibits A and B** (the "Covenant Agreements"), confirmation that you have satisfactorily met all of Lehman's pre-employment requirements, including the successful completion of a criminal background investigation, as well as other conditions set forth in this letter.

Effective as of the Closing Date, you will be employed by the Firm as the Head of Gas Trading and Risk Management in the Commodoties Business reporting initially to Griff Jones. Your corporate title of Senior Vice President will be submitted for official approval by the Executive Committee of the Firm's Board of Directors as part of the next quarterly approval process following the Closing Date.

For the performance year 2007 (the Closing Date through November 30, 2007), performance year 2008 (December 1, 2007 through November 30, 2008) and performance year 2009 (December 1, 2008 through November 30, 2009) your compensation will be as follows:

- Annualized base salary of $200,000 per year.

- A minimum bonus in the amount of $200,000, less applicable deductions, payable at the time the Firm pays its annual 2007 bonus distribution (on or about January 31, 2008).

- A minimum bonus in the amount of $300,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (on or about January 31, 2009).

**Exhibit A, Page 1**

The foregoing salary will be paid for all periods of your active employment with the Firm in performance years 2007 and 2008. The minimum bonus amounts set forth above will be paid at the times and in the amounts stated except that such bonuses will not be payable if, before the date of scheduled payment, you have breached any provision of the Covenant Agreements, or you have resigned your employment with the Firm for any reason or you have been terminated from the Firm with "Cause". For purposes of this letter, "Cause" means any of the following: (i) misconduct, (ii) breach of Tracker or Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amounts set forth above may be reduced in the event of an approved leave of absence during the applicable performance year. If, during your employment, you should die or become disabled (as defined in the Firm's Long Term Disability Program as then generally in effect and, for purposes of this offer letter, hereinafter referred to as "Disability") before bonuses are paid for performance year 2007 and 2008, your base salary payments will end (subject to salary continuation in the event of Disability) and you or your estate will be paid a pro-rata portion of the guaranteed minimum bonus for such performance year.

At the Firm's discretion, a portion of your 2007 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based awards) pursuant to the Firm's Equity Award Program as then generally in effect for employees with your position and corporate title. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, will be established by the Firm from time to time in its discretion.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. Your compensation for all periods after performance year 2008 will be determined at the Firm's discretion.

Provided you remain actively employed through the payment dates and have not breached any provision of the Covenant Agreements and subject to confirmation that you have satisfactorily met all of Lehman's pre-employment requirements, including the successful completion of a criminal background investigation, as well as other conditions set forth in this letter, the Firm will grant you a retention award with an aggregate value equivalent to $900,000 (the "Retention Award"). The Retention Award will vest and become payable in equal installments, less applicable tax withholding and other deductions, on each of the first through third anniversaries of the Closing Date. In the event your employment with the Firm ends as a result of your resignation for any reason or your termination by the Firm for Cause (as defined above) before the applicable payment date, you will not thereafter receive any further Retention Award payments. In the event your employment is terminated by Firm without Cause before the applicable payment date, you will continue to receive any unpaid Retention Award payments on the applicable payment date(s), provided you have not breached any provision of the Covenant Agreements. In the event your employment is terminated as a result of your death or "Disability" (which, for purposes of this retention award, will mean you are no longer actively working for the Firm and are receiving benefits under the Firm's Long-Term Disability Insurance Plan as in effect from time to time), you or your estate shall receive a lump sum cash payment equivalent to any unpaid portion of the Retention Award as soon as practicable

**Exhibit A, Page 2**

following such termination. For purposes of the Firm's Equity Award Program the Retention Payments will not be considered part of your total compensation.

You will also be eligible to participate in the Firm's standard employee benefits program, which will be explained to you separately. Your participation in and coverage under the Firm's employee benefit and compensation programs shall take into account your prior service with Eagle.

Please understand that the terms and conditions of your employment by the Firm are governed by standard Firm policies. Among other things, this means that this offer is conditional upon confirmation that as of the Closing Date you have satisfactorily met all pre-employment requirements, including the successful completion of a criminal background investigation

While the foregoing compensation commitments will be honored on the terms outlined above, this offer letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason.

This letter, together with the Covenant Agreements, represent the complete agreement of the parties with respect to your employment with the Firm and, effective as of the closing of the Acquisition, supersedes all prior agreements (whether oral or in writing) between you and the Firm or Eagle or its affiliates. This offer of employment is conditional upon the closing of the Acquisition and your execution of the Covenant Agreements attached hereto as **Exhibits A and B**. In the event the Purchase Agreement is terminated, this letter and the Covenant Agreements will be void *ab initio* and of no further force or effect.

By your signature below, you agree that any controversies arising out of or relating to this letter or your employment by the Firm shall be submitted to and settled by arbitration pursuant to the rules as then in effect of the National Association of Securities Dealers or the New York Stock Exchange.

[CONTINUED ON NEXT PAGE]

**Exhibit A, Page 3**

Jeremy, we are delighted that you will continue to be a part of our organization. If you agree with the terms outlined in this letter, please sign this letter and the Covenant Agreements and return them to me. An additional copy of this letter is enclosed for your files.

Sincerely,

Mary Pat Archer
Managing Director
Fixed Income

Acceptance:

I accept the terms and conditions of this letter. Furthermore, I confirm that I am not aware of any circumstances which may result in me being unable to successfully satisfy the criminal background check requirements outlined in this letter.

_____     \_\_\_\_6/17/007\_\_\_\_
Signed                                                                  Date

**Exhibit A, Page 4**

# EXHIBIT A

**LEHMAN BROTHERS**  Non-Competition, Non-Solicitation, and Non-Disparagement Agreement

| Employee Name (*Print*) | Social Security Number |
|---|---|
| Jeremy Davis | ▮ |

In the course of your work, you will become aware of information of a confidential nature pertaining to the business of Eagle Energy ("Eagle"), Lehman Brothers, its parents and affiliates, and its clients (together, the "Firm"). The Firm maintains policies and procedures with respect to the use and the dissemination of confidential information which are summarized in a separate Confidentiality Agreement. Your employment creates a relationship of confidence and trust between you and the Firm with respect to any information applicable to the business of the Firm or applicable to the business of the Firm's clients which may be made known to you by the Firm or by any Firm client, or learned by you in the course of your work. You understand that you have an obligation to preserve the confidentiality of such information and use it only for the purpose for which it was obtained.

In consideration of the transaction contemplated by the Purchase Agreement dated as of May 8, 2007, among Lehman Brothers Commodities Services Inc. and the Sellers named therein (the "Purchase Agreement") as well as the confidential information, goodwill, and any compensation afforded to you pursuant to the Retention Award letter between you and the Firm dated as of 6/14/2007, (the "Retention Award Letter"), the receipt and adequacy of which are hereby acknowledged, you understand and agree that your undertakings set forth below are material and essential terms to the Firm in entering into the Purchase Agreement and the Retention Award Letter, and accordingly you expressly agree that:

1. <u>Non-Competition</u>. You acknowledge that the agreements and covenants contained in this Section 1 are essential to protect the value of the business and assets of the Firm and its affiliates and by your prior association with Eagle and subsequent employment with the Firm and its affiliates you have obtained, and will continue to obtain, such confidential information, knowledge, contacts and experience, and there is a substantial probability that such confidential information, knowledge, contacts, and experience could be used to the substantial advantage of a competitor of Eagle or the Firm to Firm's substantial detriment. Therefore you agree that so long as you are employed by the Firm and for the period commencing as of the closing date of the Purchase Agreement and ending on the later of the third anniversary of the closing date of the Purchase Agreement or the first anniversary of the termination of your employment with the Firm or any of its affiliates except that if such employment is terminated without Cause (as defined in the Retention Award Letter) such period shall end of the date of such termination (the "Non-Competition Restricted Period"), you shall not, and shall cause your controlled affiliates not to, directly or indirectly (other than in your capacity as an employee of the Firm or its affiliates), own, manage, engage in, operate, control, work for, consult with, render services for, do business with, maintain any interest in (proprietary, financial or otherwise) or participate in the ownership, management, operation or control of, any business, whether in corporate, proprietorship or partnership form or otherwise, engaged in the business of energy trading, energy marketing, fuel management services (including managing supply, transportation, storage, logistics, and procurement of fuel), power management services (including managing transmission and marketing of energy, capacity, and any other electric related products or services, including ancillary services), risk management services (including managing transactions for physical,

**Exhibit A, Page 5**

financial, and derivative product purchases and sales in bilateral, over-the-counter, or exchange-traded markets for the purpose of hedging or mitigating price and delivery risks associated with fuel, energy, capacity, or other electric related products or services, including ancillary services), natural gas transportation and storage optimization services, and retail gas and power supply services, (the "Business") in any geographic region for which you had direct or indirect responsibility on behalf of the Firm or in any geographic region for which you had confidential information of the Firm.

2. <u>Non-Solicitation</u>.   You further agree that so long as you are employed by the Firm and for the period commencing as of the closing date of the Purchase Agreement and ending on the later of the third anniversary of the closing date of the Purchase Agreement or the first anniversary of the termination of your employment with the Firm or any of its affiliates (the "Non-Solicitation Restricted Period") you shall not and shall cause your controlled affiliates not to (other than in your capacity as an employee of the Firm or its affiliates): (i) cause, solicit, induce or encourage any employees, consultants or contractors of the Firm or their subsidiaries or affiliates to leave such employment or service, (ii) hire, employ or otherwise engage any such individual, (iii) cause, induce or encourage any actual or prospective client, customer, supplier, or licensor of the Firm or its subsidiaries (including any existing or former customer of the Firm or its subsidiaries and any Person that becomes a client or customer of the Firm after the consummation of the transactions contemplated by the Purchase Agreement) to terminate or modify any such actual or prospective business relationship with the Firm or its affiliates or subsidiaries, or (iv) develop a business relationship with any actual or prospective client, customer, supplier, or licensor to cause, induce or encourage such individual to become a customer of any business in which you are engaged that is competitive with the Business. The restrictions relating to actual or prospective clients, customers, suppliers, or licensors in this paragraph apply only to (a) those actual or prospective clients, customers, suppliers, or licensors with whom you had contact on behalf of the Firm during the last twelve months of your employment with the Firm; or (b) any of the Firm's actual or prospective clients, customers, suppliers, or licensors about whom you had any confidential information during the last twelve months of your employment with the Firm. In no event shall it be a violation of this Section 2 to engage in solicitations incidental to general advertising or other general solicitation in the ordinary course not specifically targeted at such persons or to employ any person not solicited in violation hereof.

3. <u>Non-Disparagement</u>.  You agree that, during your employment with the Firm or at any time thereafter, you shall not make any public statement that is materially disparaging of the business of Lehman Brothers Holdings Inc. or Eagle or its subsidiaries, or to the business reputation of any of the executive officers of Lehman Brothers Holdings Inc. or Eagle or its subsidiaries or any of the employees of the Firm who are known to you to be employees of the Firm at the time of any such public statement.  Your obligations under this Section 3 shall not apply to disclosures required by applicable law, regulation or order of a court or governmental agency.

You agree that the above obligations and covenants are reasonable in duration and scope, and agree that any arbitration panel or court of competent jurisdiction may reform such obligations to the extent necessary to enforce them under applicable law. You further agree and acknowledge that violation of these obligations and covenants would cause immeasurable and irreparable damage to the Firm and its affiliates. Accordingly, you agree that the Firm is entitled to injunctive relief in any court of competent jurisdiction for any actual or threatened violation of any such obligations, in addition to any other remedies it may have.

Subject to the Firm's right to injunctive relief as outlined above, you agree that any dispute arising out of or relating to your employment by the Firm or the terms of this Agreement will be submitted to

arbitration pursuant to the rules as then in effect of the National Association of Securities Dealers or New York Stock Exchange.

The provisions of this Agreement are in addition to the provisions in any written employment agreement between the Firm and you, and will not affect your responsibilities or any other rights of the Firm under such agreements. This Agreement is not a contract of continuing employment. Employment is for no fixed term, and either you or the Firm may decide to terminate the employment relationship at any time for any reason.

This Agreement shall be governed by New York law, without regard to its choice of law principles, and will be binding on you, your heirs, executors, assigns, and administrators, shall inure to the benefit of the Firm, its successors and assigns, and shall survive the termination of your employment with the Firm, regardless of the manner of such termination.

Each provision of this Agreement will be interpreted on its own. If any provision is held to be unenforceable as written, it will be enforced to the extent reasonable under the circumstances. In any case, the other provisions of this Agreement will not be affected.

This Agreement constitutes the entire agreement among the parties and supersedes all prior agreements or understandings, if any, whether oral or written, with regard to the subject matter hereof. This Agreement is an integrated document and may not be modified or amended except in a writing signed by the parties hereto or their successors in interest.

**I have signed and dated this Agreement below to indicate my agreement to its provisions and to acknowledge that I have received a copy of this Agreement.**

**Employee**

| Employee Name (Please Print) | Employee Signature | Date |
|---|---|---|
| Jeremy Davis | [signature] | 6/17/2000 |

# LEHMAN BROTHERS

CHRISTINE K. THOMSON
VICE PRESIDENT

July 30, 2008
*Revised August 6, 2008*

Jeremy Davis
1207 Chelshurst Way
Spring, TX 77379

Dear Jeremy:

I am pleased to confirm the compensation terms we have agreed to with respect to your continuing employment by the Firm.

Effective as of the date of this letter, for the remainder of performance year 2008 (the period ending November 30, 2008), your compensation will be as follows:

- An annualized base salary of $200,000, payable in bi-weekly installments of $7,692.31.

- A bonus in the amount of $1,300,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (in or about January 2009).

The foregoing base salary will be paid for all periods of your active employment with the Firm following the date of this letter in performance year 2008. The bonus amount set forth above will be paid at the time and in the amount stated except that such bonus will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm for Cause. For the purposes of this offer letter, "Cause" means a termination of your employment by the Firm because of any of the following: (i) misconduct, (ii) breach of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amount set forth above may be reduced in the event of an approved leave of absence during the applicable performance year.

In addition, you will remain eligible for Retention Payments on the terms and conditions described in your offer letter first dated June 14, 2007 (the "Offer Letter").

At the Firm's discretion, a portion of your 2008 and future years' total compensation (combined base salary, bonus, and other compensation, but not any Retention Payments) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based awards) pursuant to the Firm's Equity Award Program or in such other non-cash form as may be provided pursuant to other Firm-sponsored programs that may be established by the Firm from

Jeremy Davis
July 30, 2008 *Revised August 6, 2008*
Page 2 of 3

time to time and generally in effect for employees at your level. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, or any other Firm sponsored program will be established by the Firm from time to time in its discretion. With respect to your compensation guarantee for performance year 2008 only, the deferral schedule for the portion of your total compensation payable in conditional equity awards shall be as set forth in the attached Equity Award Schedule for employees with a 2008 Bonus Guarantee, which was previously provided to you by email dated July 3, 2008. For the avoidance of doubt, in the event your employment is terminated by the Firm without Cause before the payment in full of the guaranteed minimum bonus for performance year 2008, you will be paid on the applicable bonus payment date any unpaid guaranteed minimum bonus for such year, payable part in cash and part in conditional equity awards, and the disposition of the equity portion of such award shall be determined in accordance with the Equity Award Program as then in effect.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. Your compensation for all periods after performance year 2008 will be determined at the Firm's discretion.

Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. While the foregoing compensation commitments will be honored on the terms outlined above, this letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason, subject to any applicable notice requirement. Currently, the Firm's notice policy requires officers of the Firm to provide 30 days' advance written notice of resignation, and provides for 30 days' advance notice by the Firm to its officers in the event of an involuntary termination under certain circumstances.

You understand that this letter represents the complete agreement between you and the Firm with respect to your compensation and other matters addressed in this letter, and that this letter replaces any prior written or oral agreements or understandings regarding such matters. For avoidance of doubt, please note that nothing in this letter replaces or diminishes your obligations with respect to the "Non-Competition, Non-Solicitation and Non-Disparagement" Agreement and the Confidentiality Agreement entered into in connection with your May 8, 2007 Purchase Agreement, as described in your Offer Letter. This letter will be binding on the Firm and its successors and assigns.

[SIGNATURES APPEAR ON NEXT PAGE]

Jeremy Davis
July 30, 2008 *Revised August 6, 2008*
Page 3 of 3

Jeremy, please confirm your agreement to the above by signing a copy of this letter in the space provided below, and returning it to me in the enclosed envelope no later than August 8, 2008. An additional copy of this letter is enclosed for your files. Please contact me at 212-526-2714 if you have any additional questions or concerns.

Sincerely,

*[signature]*

Christine K. Thomson
Vice President
Fixed Income Human Resources

I agree to and accept the terms described in this letter and further acknowledge that no representations were made to induce execution of this letter which are not expressly contained in this letter.

*[signature]*                                    8/8/01
Jeremy Davis                                     Date

# **EXHIBIT B**



# **EXHIBIT C**

**Subject:**  FW: Eagle Energy

-----Original Message-----
From: Joe.Gold@barclayscapital.com [mailto:Joe.Gold@barclayscapital.com]
Sent: Monday, September 22, 2008 8:37 PM
To: Watson, Chuck
Subject: RE: Eagle Energy

Chuck,

I am not sure if I am more embarrassed or angry.  The e-mails have still not been sent out.  Today, I have gone to Jonathan Hughes (General Counsel of Barcap), Jerry del Missier (President of Barcap) and Rich Ricci (acting President of Lehman Brothers Inc.).  They have all approved sending out the e-mails and moving the employees.  The legacy Lehman people agree.  Tracie Binkley (Head of HR?) confirmed this to me recently.  Sometime today, the people at Alvarez & Marsal got involved in the issue and somehow put a stop to the e-mail and offers of employment.  I can only assume that you peaked their interest because of your MOU and they wanted to make sure nothing good happens without them.
I cannot get them to return my call or find them in the Lehman building.
Here are the people that I am chasing:

Brian Marsal - decision maker - I don't have a number Jim Fogerty - mid level - (c)              Robert Hersham - junior - (o) 212-328-8514
                    (m)
Lehman building restructuring room - 212-526-9536

I am trying to give you money with nothing in return.  They don't seem to get that and will not engage with me.  They may engage with you because you represent a buyer of assets.  I will pick it up again in the morning.

Joe




-----Original Message-----
From: Watson, Chuck [mailto:chuck.watson@lehman.com]
Sent: Monday, September 22, 2008 5:33 PM
To: Watson, Chuck; Gold, Joe: Commodities (NYK)
Subject: RE: Eagle Energy


Still no response.

Chuck
Houston Phone: 281-781-0355
New York Phone: 212-526-5077




> _____
> From:   Watson, Chuck
> Sent: Monday, September 22, 2008 1:37 PM
> To:   'joe.gold@barcap.com'
> Subject:   FW: Eagle Energy
>
> Nothing received yet

1

```
>
>
> Chuck
> Houston Phone: 281-781-0355
> New York Phone: 212-526-5077
>
>
>
>
> _____
> From:    Watson, Chuck
> Sent: Monday, September 22, 2008 12:17 PM
> To:  'joe.gold@barcap.com'
> Subject:   Eagle Energy
>
> None of the Eagle employees have received any emails to indicate they
> have been included in the Barclays transfer. Please let me know what
> you know.
>
>
> Chuck Watson
> Chairman, Global Commodities
> Lehman Brothers
> 4700 West Sam Houston Parkway North, Suite 250 Houston, TX 77041
> Houston Phone: 281-781-0355 New York Phone: 212-526-5077
> Blackberry: 347-515-1152
> email: chuck.watson@lehman.com
>
>
>
>
```
_____

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Barclays. Any views or opinions presented are solely those of the author and do not necessarily represent those of Barclays. This e-mail is subject to terms available at the following link: www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the foregoing.  Barclays Capital is the investment banking division of Barclays Bank PLC, a company registered in England (number 1026167) with its registered office at 1 Churchill Place, London, E14 5HP.  This email may relate to or be sent from other members of the Barclays Group.
_____

****************************************************************************************

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any commodities, financial risk management products, or other physical or financial product or service, an official confirmation of any transaction, or an official statement of EDF Trading Limited, EDF Trading Markets Limited, EDF Trading North America, LLC, or any of the EDF Group family of companies.  Any views or opinions presented are solely those of the author and do not necessarily represent those of the foregoing entities.  EDF Trading Markets Limited is authorized and regulated by the Financial Services Authority.  VAT number: GB 735 5479 07.  EDF Trading Markets Limited and EDF Trading North America, LLC are members of the EDF Group of companies.  EDF Trading Markets Limited maintains its registered office at 80 Victoria Street, 3rd Floor, Cardinal Place, London, SW1E 5JL.  A Company registered in England No. 4255974.  EDF Trading North America, LLC is headquartered in the United States at 4700 W. Sam Houston Pkwy., Suite 250, Houston, TX  77041
****************************************************************************************