ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Peter L. Welsh
D. Ross Martin
James A. Wright III
peter.welsh@ropesgray.com
ross.martin@ropesgray.com
james.wright@ropesgray.com

and

1211 Avenue of the Americas
New York, New York 10036-8704
Lisa M. Coyle
lisa.coyle@ropesgray.com

*Attorneys for FYI Ltd.,*
*FFI Fund Ltd., and Olifant Fund, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

| | |
|---|---|
| **In re** | **: Chapter 11** |
| | **:** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | **: Case No. 08-13555 (JMP)** |
| | **:** |
| **Debtors.** | **: (Jointly Administered)** |

-------------------------------------------------------------------- x

## NOTICE OF MOTION TO CONSOLIDATE CONTESTED
## MATTER WITH ADVERSARY PROCEEDING AND FOR RELATED RELIEF

   **PLEASE TAKE NOTICE** that on February 26, 2013, FYI Ltd., FFI Fund Ltd.,

and Olifant Fund, Ltd. (collectively, the "Bracebridge-Managed Funds") filed a Motion to

Consolidate Contested Matter with Adversary Proceeding and for Related Relief (the "Motion").

A hearing to consider the Motion will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, New York, New York 10004, on

**March 13, 2013 at 10:00 a.m. (ET)**, or as soon thereafter as counsel may be heard.

    **PLEASE TAKE FURTHER NOTICE** that any responses to the Motion must be

in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the

Bankruptcy Court, and be filed with the Bankruptcy Court (a) electronically in accordance with

General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the

Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk,

preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format (with a hard copy delivered directly to Chambers), in accordance with General

Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with

General Order M-399, on (i) the chambers of the Honorable James M. Peck, One Bowling

Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Bracebridge-Managed

Funds, Ropes & Gray LLP, Prudential Tower, 800 Boylston Street, Boston, Massachusetts

02199 (Attn: Peter L. Welsh, D. Ross Martin, and James A. Wright III); (iii) attorneys for the

above-captioned debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New

York 10153 (Attn: Richard P. Krasnow, Lori R. Fife, Shai Y. Waisman, Jacqueline Marcus, and

Robert Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York,

New York 10178 (Attn: Turner P. Smith, L.P. Harrison III, Andrew H. Seiden, and Peter J.

Behmke); (iv) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul

Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (v) attorneys for the

official committee of unsecured creditors in these cases (the "Committee"), Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis

33511882_1

F. Dunne, Dennis O'Donnell, and Evan R. Fleck) and Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn: Daniel P. Cunningham, Andrew J. Rossman, and James C. Tecce); and (vi) attorneys for Citibank, N.A., Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Brad S. Karp, Claudia L. Hammerman, Stephen J. Shimshak, and Douglas R. Davis); so as to be filed and received by no later than **March 6, 2013 at 4:00 p.m. (ET)** (the "Response Deadline").

> **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion the Bracebridge-Managed Funds may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form attached to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

 Dated: February 26, 2013

                              Respectfully submitted,

                              ROPES & GRAY LLP

                              By /s/ D. Ross Martin
                                  D. Ross Martin

                              Prudential Tower
                              800 Boylston Street
                              Boston, Massachusetts 02199-3600

                              Attorneys for FYI LTD., FFI FUND LTD.,
                              and OLIFANT FUND, LTD.

33511882_1

**Hearing Date and Time: March 13, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: March 6, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Peter L. Welsh
D. Ross Martin
James A. Wright III
peter.welsh@ropesgray.com
ross.martin@ropesgray.com
james.wright@ropesgray.com

and

1211 Avenue of the Americas
New York, New York
Lisa M. Coyle 10036-8704
lisa.coyle@ropesgray.com

*Attorneys for FYI Ltd.,*
*FFI Fund Ltd. and Olifant Fund, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

| | |
|---|---|
| **In re** | **: Chapter 11** |
| | **:** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | **: Case No. 08-13555 (JMP)** |
| | **:** |
| **Debtors.** | **: (Jointly Administered)** |

-------------------------------------------------------------- x

## MOTION TO CONSOLIDATE CONTESTED MATTER
## WITH ADVERSARY PROCEEDING AND FOR RELATED RELIEF

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

FYI Ltd., FFI Fund Ltd. and Olifant Fund, Ltd. (collectively, the "Bracebridge-Managed Funds"), hereby submit this motion (the "Motion") (a) to consolidate a pending contested matter involving an objection by the above-captioned estates (the "Lehman Estates") to claims of the Bracebridge-Managed Funds with a pending adversary proceeding commenced by the estates in which the Bracebridge-Managed Funds are indispensable parties, and (b) for

related relief from the claims procedures order[1] to the extent necessary to permit intervention and consolidation. In support of the Motion, the Bracebridge-Managed Funds submit the Declaration of Jonathan Otting (the "Otting Declaration") attached to this Motion and respectfully represent as follows:

### Preliminary Statement

1.      The Lehman Estates are moving into the active phase of discovery and litigation in an adversary proceeding against Citibank, N.A. and certain of its affiliates (collectively, the "Citibank Defendants").[2] Recently (in November 2012) the Lehman Estates filed their Amended Complaint (as defined below) against the Citibank Defendants, and the Citibank Defendants answered on February 14. Document discovery is now underway, to be completed by July 31, 2013.

2.      A major facet of the Citi Adversary Proceeding involves disputes about (i) certain transactions and proposed transactions shortly before Lehman Brothers Special Financing Inc. ("LBSF") filed for chapter 11 and (ii) the value of related derivatives. The Lehman Estates' Amended Complaint contains detailed allegations regarding, and puts squarely into dispute, (i) a series of proposed "step-out" novation transactions among the Bracebridge-Managed Funds, the Citibank Defendants, and LBSF (the "Failed Step-Outs") that were not consummated in mid-September 2008 and (ii) the valuation of the Bracebridge-Managed Funds' derivatives trades that the parties contemplated would be novated from LBSF to the Citibank Defendants in the Failed Step-Outs, and which the Bracebridge-Managed Funds terminated shortly after the Failed Step-Outs were not consummated.

---

[1] The Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors (Dkt. No. 8474) (the "Claims Procedures Order").
[2] Adversary Proceeding No. 12-01044 (the "Citi Adversary Proceeding").

3.    The Lehman Estates have already sought one-way discovery from the Bracebridge-Managed Funds regarding these matters. When the Bracebridge-Managed Funds proposed reciprocal discovery in the context of the Bracebridge-Managed Funds' currently pending claims litigation contested matter with the Lehman Estates (the "Funds Claims Litigation"), the Lehman Estates declined to take any discovery at all. Now that the Lehman Estates have commenced active litigation over these matters with the Citibank Defendants, and the Citibank Defendants have (correctly) pointed out that the Bracebridge-Managed Funds are indispensable parties in such litigation, there is no question that efficiency for all parties and judicial economy demand that the existing (and on-hiatus) Funds Claims Litigation be consolidated with the Citi Adversary Proceeding.

4.    Combining the proceedings will streamline the derivative claims litigation because of overlapping and common derivatives trades. It will also cause no delay, as the Bracebridge-Managed Funds are prepared to adhere to the existing discovery deadlines established in the Citi Adversary Proceeding, and the Failed Step-Outs will be litigated in any event. And the Bracebridge-Managed Funds will continue to abide by all other aspects of the existing Claims Procedures Order; most notably, the Bracebridge-Managed Funds remain ready, willing, and able to participate in a claims mediation. Indeed, the exchange of information that occurs in discovery will facilitate a more productive mediation, should the Lehman Estates choose to initiate one.

## **Jurisdiction**

5.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 USC. § 157(b).

6.    Venue is proper before this Court pursuant to 28 USC. § 1408 and 1409.

3

7.      The statutory bases for the relief requested herein are sections 105(a) and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 7019, 7024, 7042, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 19, 24, and 42 of the Federal Rules of Civil Procedure (the "Federal Rules"), and this Court's inherent powers.

### Background

*The Failed Step-Outs*[3]

8.      In September 2008, prior to LBHI filing a petition in Chapter 11, certain of the Citibank Defendants, the Bracebridge-Managed Funds, and LBSF negotiated the Failed Step-Outs. The Failed Step-Outs concerned (a) a set of swap agreements between the Bracebridge-Managed Funds and LBSF and (b) a corresponding set of swap agreements between LBSF and the Citibank Defendants. Certain of the swap agreements had essentially identical terms and reference securities, except that LBSF was on one side of the swap economically under the swap agreements with the Bracebridge-Managed Funds, and the other side under the swap agreements with the Citibank Defendants. The Failed Step-Outs were intended to allow LBSF to be removed, or "step out," from both sides for the applicable trades, such that the Bracebridge-Managed Funds and the Citibank Defendants would have obligations to each other directly under the revised (novated) trades, and LBSF would have no further obligations to either the Bracebridge-Managed Funds or the Citibank Defendants with respect to these particular swaps.

---

[3] The Funds have included a brief description of the Failed Step-Outs to provide context for the relief requested in the Motion. The description provided in this Motion does not attempt to set forth all the facts. As noted, the facts and legal issues regarding the Failed Step-Outs are heavily disputed. Detailed descriptions of the facts from the perspectives of the Lehman Estates and the Citibank Defendants are included in the First Amended Complaint and Claims Objection, filed November 16, 2012 (Dkt. No. 13) (the "Amended Complaint") in the Citi Adversary Proceeding, and the Citibank Defendants' Answer to First Amended Complaint and Response to Claims Objection, filed February 14, 2013 (Dkt. No. 20) (the "Amended Answer"), respectively.

4

9.      Before the Failed Step-Outs were consummated, LBHI commenced its Chapter 11 proceeding, following which LBSF informed the Bracebridge-Managed Funds that LBSF would not transfer the collateral posted by the Bracebridge-Managed Funds for the related derivative trades to the Citibank Defendants, apparently due to LBHI's Chapter 11 filing. Because LBHI is a credit support party, LBHI's Chapter 11 filing constituted an event of default under the underlying two sets of swap agreements. The Bracebridge-Managed Funds and, upon information and belief, the Citibank Defendants, terminated their swaps thereafter and the Failed Step-Outs were not consummated.[4]

***LBHI and LBSF's Bankruptcy Filings and the Bracebridge-Managed Funds' Claims***

10.      On September 15, 2008, LBHI and several of its affiliates filed voluntary petitions for relief under Chapter 11 in this Court. LBSF subsequently filed a voluntary petition for relief under Chapter 11 on October 3, 2008.

11.      On April 19, 2010, the Court entered the Claims Procedures Order. The Claims Procedures Order authorizes the Lehman Estates to implement certain Claims Hearing Procedures and ADR Procedures (both as defined in the Claims Procedures Order) that govern most claims litigation in these cases.

12.      The Claims Procedures Order provides that creditors whose claims are subject to the Claims Hearing Procedures and/or ADR Procedures are enjoined from attempting to "establish" their claims in any other judicial forum. <u>See</u> Claims Procedures Order, 2-3.[5]

---

[4] As noted above, LBSF and LBHI allege in the Amended Complaint that the Failed Step-Outs were consummated and are effective, relieving LBSF and LBHI of any liability on the subject swap agreements.

[5] The relevant section of the Claims Procedures Order provides:

> ORDERED that upon service of an objection, omnibus or otherwise, to a Proof of Claim filed by a Claimant other than the Internal Revenue Service (or an objection to the Scheduled Claim amount for an LBHI Issued LPS), the Debtors, each Claimant, and each Indenture Trustee with Authority (as defined herein) to whom such objection applies (or who filed an objection to the Scheduled Claim amount for any LBHI Issued LPS) shall be enjoined from commencing or continuing any

5

13.    The Bracebridge-Managed Funds have swap termination claims against LBSF arising from derivative transactions involving approximately 300 distinct trades,[6] with guarantees from LBHI (the "Claims"). Otting Declaration, ¶ 7. The Bracebridge-Managed Funds timely filed proofs of claim in the amount of approximately $262 million against both LBSF and LBHI. Id.

14.    The vast majority (approximately 74%) of the transactions that give rise to the swap termination claims are based on residential mortgage-backed securities related derivatives (the "RMBS Derivative Transactions"). Id. at ¶ 8. The RMBS Derivative Transactions include all of the transactions related to the Failed Step-Outs. Id. In addition, a few of the transactions involved in the Failed Step-Outs are essentially identical (i.e., same reference securities) to other RMBS Derivative Transactions not involved in the Failed Step-Outs. Id.

15.    A specific team of personnel at the advisor that manages the Bracebridge-Managed Funds were involved with the valuation and calculation of the amounts due on each of the RMBS Derivative Transactions, and these same personnel, with others, were heavily involved with the Failed Step-Outs. Id. at ¶ 9. On a net basis, the swap transactions comprising the Failed Step-Outs had moved in LBSF's favor as of the date of termination, in the amount of approximately $52 million, as asserted in the Bracebridge-Managed Funds' calculation statements and proofs of claim. Id. Accordingly, the Bracebridge-Managed Funds reflected this termination amount in favor of LBSF as a setoff against the Bracebridge-Managed Funds' other Claims.

---

action or proceeding, or engaging in any discovery, in any manner or any place, including this Court, seeking to establish, liquidate, collect on, or otherwise enforce any Contested Claims identified in such objection other than (i) through the Claims Hearing Procedures and the ADR Procedures or (ii) pursuant to a plan or plans confirmed in the applicable Debtors' chapter 11 cases . . . .

[6] Each Bracebridge-Managed Fund has approximately 300 derivative transactions with LBSF, for a total of approximately 900 derivative transactions. The transactions are largely identical between the three Bracebridge-Managed Funds.

6

16.    On April 18, 2011, the Lehman Estates filed their One Hundred and Thirty-Second Omnibus Claims Objection (Dkt. No. 16117), in which they objected to the Claims (the "Objections"), initiating the Funds Claims Litigation contested matter. On May 18, 2011, the Bracebridge-Managed Funds filed the Response of FYI Ltd., FFI Fund Ltd., and Olifant Fund, Ltd. to the Debtors' One Hundred and Thirty-Second Omnibus Objection to Claims (Valued Derivative Claims) (Dkt. No. 16925) (the "Response"), thereby subjecting the dispute to the Claims Procedures Order and the procedures implemented thereunder. However, the Lehman Estates unilaterally and repeatedly adjourned the Objections from hearing to hearing until May 23, 2012, when the Lehman Estates adjourned them *sine die*.

17.    Prior to and after filing the Objections, the Lehman Estates requested extensive information from the Bracebridge-Managed Funds regarding the Claims. Otting Declaration, ¶ 10. The Bracebridge-Managed Funds provided large amounts of data covering the underlying swap transactions and termination claim calculations in response. Id. Despite repeated requests from the Bracebridge-Managed Funds, however, the Lehman Estates have yet to provide any detailed information to the Bracebridge-Managed Funds regarding the Claims and the Lehman Estates' proposed valuations of the terminated transactions. Id.

18.    When the Lehman Estates filed the Objections and commenced the Funds Claims Litigation, the Lehman Estates informed the Bracebridge-Managed Funds that the Objections were a prelude, under the Claims Procedures Order, to the Lehman Estates promptly placing the Bracebridge-Managed Funds into the claims mediation program and conducting a mediation. Id. at ¶ 11. In the 21 months since the Bracebridge-Managed Funds filed their response, the Bracebridge-Managed Funds have repeatedly requested that the Lehman Estates in

7

fact commence the mediation process as promised and consistent with the ADR Procedures. Id.
The Lehman Estates have refused to do so.

***The Citi Adversary Proceeding***

19.    On February 8, 2012, the Lehman Estates commenced the Citi Adversary
Proceeding, asserting numerous claims against the Citibank Defendants. At issue in the Citi
Adversary Proceeding are, among other things, the Citibank Defendants' approximately 30,000
derivative claims against the Lehman Estates.

20.    On July 31, 2012, the Official Committee of Unsecured Creditors (the
"Committee"), an intervening plaintiff in the Citi Adversary Proceeding, issued a third-party
subpoena (the "Subpoena") to the Bracebridge-Managed Funds' investment manager, seeking
documents regarding the derivative trades involved in the Failed Step-Outs. The Subpoena was
purportedly issued pursuant to Bankruptcy Rule 2004, notwithstanding the fact that the Lehman
Estates had commenced the Citi Adversary Proceeding and the Funds Claims Litigation
contested matter was already pending.

21.    On November 16, 2012, the Lehman Estates filed the Amended
Complaint. In the Amended Complaint, the Lehman Estates allege that the Citibank Defendants'
supposed "most egregious conduct" relates to the Failed Step-Outs. Amended Complaint, ¶ 12.
The Lehman Estates contend the Failed Step-Outs were consummated and became effective, but
that the Citibank Defendants and the Bracebridge-Managed Funds supposedly "conspired" to
"purportedly resurrect" the underlying swap transactions "on [the Citibank Defendants' and the
Bracebridge-Managed Funds'] proofs of claim, charging LBSF exorbitant Hypothetical Charges
for each trade . . . ." Id. at ¶ 214. The Lehman Estates also challenge the Bracebridge-Managed
Funds' and the Citibank Defendants' valuations of the related swap termination amounts. See id.

at ¶ 215. The Lehman Estates sum up their position by alleging in Count XVIII of the Amended

Complaint that the Citibank Defendants' claims against LBSF are invalid because, among other

allegations, the Citibank Defendants "included valuations of trades that had already been

terminated as part of the [Failed Step-Outs] between LBSF, Citibank, and [the Bracebridge-

Managed Funds]." Id. at ¶ 339.

22.    On February 14, 2013, the Citibank Defendants filed the Amended

Answer, in which the Citibank Defendants, among other things, reject the Lehman Estates'

principal contentions regarding the Failed Step-Outs. See Amended Answer, 106-112. The

Citibank Defendants also assert as an affirmative defense that the Bracebridge-Managed Funds

are necessary or indispensable parties to the Citi Adversary Proceeding that have not been

joined. Id. at 138.

## Relief Requested

23.    The Bracebridge-Managed Funds request an order (a) authorizing their

intervention as defendants in, and the consolidation of the Funds Claims Litigation with, the Citi

Adversary Proceeding and (b) relief from the Claims Procedures Order to the extent necessary to

permit such relief.

## Basis for Relief

A.    *The Bracebridge-Managed Funds Should Be Permitted to Join the
       Citi Adversary Proceeding as Defendants Both as Necessary Parties Under
       Federal Rule 19(a) and as Intervening Defendants Under Federal Rule 24*

24.    The Citibank Defendants have noted (by way of affirmative defense) that

the Bracebridge-Managed Funds are necessary parties to the Citi Adversary Proceeding.

Amended Answer, 138. The Bracebridge-Managed Funds agree.

25.    Federal Rule 19(a) provides that a person is a necessary party to an

adversary proceeding where (a) the person is subject to service of process, (b) joinder of the

9

person will not "deprive the court of subject-matter jurisdiction", (c) the person "claims an interest relating to the subject of the action", and (d) disposing of the adversary proceeding without the person may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Federal Rule 19(a); see also Bankruptcy Rule 7019.

26.    The Bracebridge-Managed Funds satisfy all of these requirements. The Bracebridge-Managed Funds are subject to service of process (and the Bracebridge-Managed Funds are willing to waive a formal summons), see, e.g., Bankruptcy Rule 7004(b)(3), and the Bracebridge-Managed Funds' Claims are subject to this Court's jurisdiction. See 28 U.S.C. §§ 157(b)(2)(B), 1334. The Bracebridge-Managed Funds also have a substantial interest in the subject of the Citi Adversary Proceeding due to their participation in the Failed Step-Outs and their obligations to LBSF under the related swap transactions. On a net basis, the Bracebridge-Managed Funds owe LBSF approximately $52 million under these swap agreements.

27.    With respect to the fourth requirement, failing to include the Bracebridge-Managed Funds as defendants in the Citi Adversary Proceeding could result in inconsistent obligations between LBSF, the Citibank Defendants, and the Bracebridge-Managed Funds. For example, if LBSF were to succeed in arguing the Failed Step-Outs actually did occur and were consummated, the Citibank Defendants would lose their claims against LBSF with respect to those derivatives trades and have direct claims against the Bracebridge-Managed Funds under the supposedly novated trades. However, if not part of the Citi Adversary Proceeding, the Bracebridge-Managed Funds would not be bound by the decision. If a later court proceeding between the Bracebridge-Managed Funds and the Citibank Defendants (which would be litigated outside of the bankruptcy court) reached the opposite conclusion (that the Failed Step-Outs were

10

not consummated), the Citibank Defendants would be left without a counter-party to collect against for their swap agreements.

28.     The Bracebridge-Managed Funds should also be permitted to join the Citi Adversary Proceeding as intervening defendant parties under Federal Rule 24. See Federal Rule 24; Bankruptcy Rule 7024. Federal Rule 24(a) provides that, upon a timely request, the Court must permit a party to intervene if such party has a right to intervene under a federal statute or claims an interest relating to the subject transaction such that the decision in the case "may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Id. The Bracebridge-Managed Funds satisfy both alternatives.

29.     The Bracebridge-Managed Funds have a statutory right under section 1109(b) to intervene in the Citi Adversary Proceeding. Section 1109(b) of the Bankruptcy Code provides a statutory right for any party in interest to appear and be heard "on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109(b). The Bracebridge-Managed Funds, as substantial creditors of LBSF and LBHI, are parties in interest, and the Second Circuit has held that section 1109(b) provides a statutory right for parties in interest to intervene in adversary proceedings related to an underlying Chapter 11 case. See Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re Caldor Corp.), 303 F.3d 161, 169 (2d 2002).

30.     Further, unlike any other general party in interest, the Bracebridge-Managed Funds have a direct interest in the subject matter of the Citi Adversary Proceeding that could be impaired by the outcome. A ruling by the Court regarding the Failed Step-Outs will directly impact the Bracebridge-Managed Funds Claims and obligations to LBSF. If the Bracebridge-Managed Funds are excluded from the Citi Adversary Proceeding, the facts and

11

legal issues regarding the Failed Step-Outs and the proper valuation of similar and/or identical

swap transactions will be litigated before this Court without input from the Bracebridge-

Managed Funds. The Bracebridge-Managed Funds will be left with no voice in this dispute and

may be compelled to re-litigate the same issues in front of this Court and/or another court.

31.    The Court should also permit the Bracebridge-Managed Funds to

intervene as permissive defendants under Federal Rule 24(b). Where the party "has a claim or

defense that shares with the main action a common question of law or fact," Federal Rule 24(b)

provides the Court authority to permit a party to intervene in an adversary proceeding. Federal

Rule 24(b). In this circumstance, "the court may use its own discretion in determining whether

permissive intervention is appropriate for a specific party." In re Ionosphere Clubs, Inc., 101

B.R. 844, 853-54 (Bankr. S.D.N.Y. 1989). When determining whether to permit permissive

intervention, courts balance the extra time and cost involved against "the advantages of hearing

the claims of the parties seeking intervention." Id. at 854. Here, the delay will be minimal, as the

Bracebridge-Managed Funds are prepared to move forward on the discovery schedule as it

currently exists in the Citi Adversary Proceeding, and the advantages in efficiency and economy

will be significant for all parties in interest.

**B.**    ***The Funds Claims Litigation Should Be Consolidated Under
Federal Rule 42 with the Citi Adversary Proceeding to Promote
Judicial Economy and Avoid Duplicative Discovery and Litigation***

32.    The entirety of the Funds Claims Litigation should be consolidated with

the Citi Adversary Proceeding under Federal Rule 42(a). Federal Rule 42(a); see also Bankruptcy

Rule 7042 (applying Federal Rule 42 in adversary proceedings); Bankruptcy Rule 9014(c)

(applying Federal Rule 42 in contested matters).

33.    Federal Rule 42(a) provides that, where actions before the Court "involve

a common question or law or fact," the Court may consolidate actions and "issue any other

12

orders to avoid unnecessary cost or delay." Federal Rule 42(a). The Court has "broad discretion" to determine whether consolidation is appropriate. <u>Johnson v. Celotex Corp.</u>, 899 F.2d 1281, 1284 (2d Cir. 1990). In making this determination, courts consider:

> Whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

<u>Id.</u> at 1285 (quoting <u>Hendrix v. Raybestos-Manhattan, Inc.</u>, 776 F.2d 1492, 1495 (11th Cir. 1985)). Here, there is no risk of prejudice if the actions are consolidated and significant benefits to all parties involved and this Court if consolidation is granted.

34.    The Lehman Estates have contested the proper valuation of the derivatives transactions involved in the Failed Step-Outs, as asserted by both the Bracebridge-Managed Funds and the Citibank Defendants. As noted above, the related derivative trades were for opposite economic positions in the same reference securities. The Bracebridge-Managed Funds and the Citibank Defendants have apparently put forward different calculations for the termination amounts due for their respective trades with LBSF. This is expected, given that the Bracebridge-Managed Funds and the Citibank Defendants were on the opposite economic sides of these trades and that, under the applicable ISDA termination provisions, the damages calculation depends on the market quotations (implicating the applicable bid/ask spreads) obtained by, and the particular losses of, the party terminating the derivative contract. Unlike the Citibank Defendants, the Bracebridge-Managed Funds' Failed Step-Out trades have termination

13

values that run in favor of LBSF; that is, they are a setoff against other in-the-money trades that the Bracebridge-Managed Funds have and for which the Lehman Estates dispute the valuation.[7]

35.    Despite these differences, however, LBSF apparently alleges that these calculations should be the same, because the relevant swap agreements, as an economic matter, were intended to offset each other outside of bankruptcy. Because the facts and legal issues regarding the Failed Step-Outs and the valuation of the related swap transactions will be litigated in the Citi Adversary Proceeding, the Bracebridge-Managed Funds' Claims and its setoff of obligations to LBSF under the applicable ISDA master agreements should be resolved in parallel with the Citi Adversary Proceeding as well. Litigating these issues will require discovery from and argument by LBSF, the Citibank Defendants, and the Bracebridge-Managed Funds regarding the Failed Step-Outs and the valuation methodologies used by each party.

36.    Resolving all of the Bracebridge-Managed Funds' Claims in connection with the Citi Adversary Proceeding will conserve the parties' (including the Lehman Estates') and judicial resources and avoid the costs of litigating the same facts and legal issues twice. The transactions involved in the Failed Step-Outs are all RMBS Derivative Transactions, as are 74% of the Bracebridge-Managed Funds' transactions with LBSF overall. The facts and legal issues regarding the valuation of 74% of the overall transactions are the same or similar as those for the Failed Step-Outs, as they all involve RMBS Transaction derivatives. The personnel at the Bracebridge-Managed Funds who will provide evidence on valuation issues are also the same. Indeed, the same personnel who would be involved in the valuation issues were heavily involved, with others, in the factual issues the Lehman Estates put into issue by their allegations regarding the Failed Step-Outs. Further, a few of the Claims not involved in the Failed Step-Outs

---

[7] The situation here is unusual, in that the Lehman Estates are essentially arguing that the Bracebridge-Managed Funds should have even larger claims than they asserted, because the offsetting trades were allegedly novated to the Citibank Defendants.

14

are based on swap transactions identical to swap transactions that are involved in the Failed Step-Outs, and the methodologies used by the Bracebridge-Managed Funds to value the Claims are consistent throughout. And upon information and belief, it is likely many of the swap transactions underlying the Citibank Defendants' claims already at issue in the Citi Adversary Proceeding are the same or substantially similar to the swap transactions underlying the Bracebridge-Managed Funds' Claims.

37.    Many of the same facts and legal issues will be raised by the Citibank Defendants' claims, the Bracebridge-Managed Funds' transactions involved in the Failed Step-Outs, and the Bracebridge-Managed Funds' other Claims. Consolidating the Funds Claims Litigation with the Citi Adversary Proceeding will not have a significant impact on its size, as the Bracebridge-Managed Funds' swap transactions with LBSF involve only approximately 300 distinct trades. By contrast, the Citibank Defendants' approximately 30,000 derivative claims – as well as numerous other issues – are already being contested in the Citi Adversary Proceeding. In addition, resolving the Bracebridge-Managed Funds' Claims in the Citi Adversary Proceeding will not cause any delay, as the Bracebridge-Managed Funds have reviewed the discovery schedule agreed to between the Lehman Estates and the Citibank Defendants and are prepared to proceed on that basis. Because the Lehman Estates will already have to search its files for a broad range of documents relating to the Bracebridge-Managed Funds, there will be no measurable additional burden on the estates, especially given the small marginal increase in the total number of swap transactions being litigated in the Citi Adversary Proceeding. Ultimately the Lehman Estates would have to provide such discovery to the Bracebridge-Managed Funds in any event. Accordingly, the entire Funds Claims Litigation should be consolidated with the Citi Adversary Proceeding to conserve judicial resources and avoid duplicative litigation and costs.

33511882_1

38.     The Bracebridge-Managed Funds anticipate that the Lehman Estates may oppose this Motion out of a desire to proceed with the mediation process provided for in the ADR Procedures. As indicated above, for the past 21 months the Bracebridge-Managed Funds have repeatedly requested that the Lehman Estates commence the mediation process. The Bracebridge-Managed Funds remain eager to proceed with a mediation and are prepared to do so in parallel with the Citi Adversary Proceeding. Indeed, the Bracebridge-Managed Funds believe proceeding with discovery in the Citi Adversary Proceeding will aid all the parties and facilitate negotiations by providing the information that would be required for a productive mediation.

**C.     *Relief from the Claims Procedures Order Should be Granted to Allow the Bracebridge-Managed Funds to Intervene in, and Consolidate the Funds Claims Litigation with, the Citi Adversary Proceeding***

39.     The Claims Procedures Order enjoins creditors from seeking to circumvent the Claims Hearing Procedures and the ADR Procedures by establishing or otherwise proceeding with their claims outside of those procedures. See Claims Procedures Order at 2-3. This restriction, and the procedures implemented by the Claims Procedures Order generally, are understandable given the volume of claims in these cases, particularly prior to the effective date of the plan of reorganization. In this instance, however, for the reasons set forth above, the Bracebridge-Managed Funds request that this Court grant relief from the Claims Procedures Order to the extent necessary to permit the relief requested in this Motion. See Benjamin v. Jacobson, 172 F.3d 144, 161 (2d Cir. 1999) ("The proposition that a court has the authority to alter the prospective effect of an injunction in light of changes in the law or the circumstances is, of course, well established."). The principal post-confirmation task of these estates is the efficient and timely resolution of claims, and finding efficient ways to consolidate them in particular, fact-specific instances (such as where the Lehman Estates have chosen to bring

creditors such as the Bracebridge-Managed Funds into a prominent role in another litigation) supports these efforts.

## **Notice**

40.     Notice of this Motion has been provided to (i) counsel to the Lehman Estates, (ii) counsel to the Committee, (iii) counsel to the Citibank Defendants, (iv) the Office of the United States Trustee, and (v) all other parties required to be served under Bankruptcy Rule 2002 or the case management orders of this Court. In light of the relief requested, the Bracebridge-Managed Funds submit that no other or further service of this Motion is necessary.

WHEREFORE, the Bracebridge-Managed Funds respectfully request that the Court (a) enter an order, substantially in the form attached as <u>Exhibit A</u>, consolidating the Funds Claims Litigation with the Citi Adversary Proceeding, (b) granting relief from the Claims Procedures Order to the extent necessary to permit the relief requested herein, and (c) granting such other and further relief as the Court deems appropriate.

Dated: February 26, 2013

Respectfully submitted,

ROPES & GRAY LLP

By /s/ D. Ross Martin
    D. Ross Martin

Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600

*Attorneys for FYI Ltd., FFI Fund Ltd.,
and Olifant Fund, Ltd.*

18