**Hearing Date and Time: March 28, 2013 at 10:00 a.m. (Eastern Time)**
**Response Deadline: February 28, 2013 at 4:00 p.m. (Eastern Time)**

MAYDAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4735
Facsimile: (212) 701-5986
Benjamin S. Kaminetzky
Gina Caruso
James I. McClammy

*Attorneys for Bank Leumi le-Israel, Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re                                         : Chapter 11
                                              :
LEHMAN BROTHERS HOLDINGS, INC., *et al*.,     : Case No. 08-13555 (JMP)
                                              :
            Debtors.                          : (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE OF BANK LEUMI LE-ISRAEL, LTD. TO DEBTORS' REPLY AND
SUPPLEMENTAL OBJECTION REGARDING THE THREE HUNDRED FIFTH
OMNIBUS OBJECTION TO CLAIMS (DUPLICATIVE CLAIMS)**

Bank Leumi le-Israel, Ltd. ("Bank Leumi"), by and through its undersigned counsel, hereby submits this response (**"Response"**) to the Debtors' Reply ("**Reply**") to Bank Leumi's original Response ("**Original Response**")[1] to Debtors' Three Hundred Fifth Omnibus Objection to Claims, dated June 4, 2012 [Docket No. 28412] (the "**Objection**").

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Original Response.

**PRELIMINARY STATEMENT**

As demonstrated in Bank Leumi's Original Response to the Objection, Bank Leumi's guarantee claim against LBHI cannot be disallowed as duplicative because the claims at issue arise from completely separate and distinct legal obligations of LBHI. The Debtors, in their Reply, however, repeat their unfounded assertions that Bank Leumi's Guarantees Claim against LBHI is duplicative of its Program Securities Claim. There is no support for such an assertion. The Guarantees Claim is based upon LBHI's guarantee of LBIE and arises from LBIE's breach of contract in failing to deliver cash pursuant to the terms of a transaction for the purchase of securities (which in this instance happened to be securities of a Lehman affiliate). As such, the Guarantees Claim cannot be said to arise from the underlying securities.

Perhaps in recognition of the shortcomings of their original objection, the Debtors now seek to subordinate the Guarantees Claim under section 510(b) of the Bankruptcy Code. Not only does the Debtors' position (i.e. that a claim arising from an affiliate's breach of a contractual obligation, as opposed to from a security issued by yet another affiliate) strain the reach of section 510(b), but subordinating the Guarantees Claim also would result in treating that claim differently from other similar claims in contravention of the Bankruptcy Code. As a result, the Objection, as supplemented, should be denied.

**BACKGROUND[2]**

1.  As set forth in the original response, the claims at issue arose from two separate breaches of guarantees by LBHI. The first claim arose from a guarantee by LBHI to pay all liabilities of Lehman Brothers International (Europe) ("**LBIE**"), which breached a contract to

---

[2] Many of the below facts are set forth in Bank Leumi's Original Response and the papers submitted in support thereof. They are repeated here for the Court's ease of reference.

2

purchase securities from Bank Leumi. The second claim, now sold by Bank Leumi, arose from LBHI's guarantee on these securities themselves.

2. On February 1, 2007, Bank Leumi purchased one thousand certificates entitled "Certificate Linked to the Lehman Brothers US Dollar Liquidity Fund" issued by Lehman Brothers Securities, N.V. ("**LBS**") for $100 million.

3. On September 12, 2008, Bank Leumi entered into an agreement with LBIE in which LBIE agreed to purchase the Certificates on September 17, 2008, for approximately $102.17 million (the "**Transaction**"). On September 12, 2008, pursuant to the terms of the Transaction, Bank Leumi took the necessary steps to cause the transfer of the Certificates to LBIE through Euroclear. In order to meet its obligations under the terms of the Transaction, LBIE sold a portion of the fund underlying the Certificates, deducted management and redemption fees, and held the remaining balance of $102.17 million within the Lehman Entities' cash management system in trust for Bank Leumi for transmission to Bank Leumi within three business days (September 17, 2008). As is customary for this type of transaction, both Bank Leumi and LBIE gave notice to Euroclear memorializing the closing of the Transaction, and Euroclear duly confirmed the same.

4. But, commencing on September 15, 2008, and periodically thereafter, LBHI, and certain of its subsidiaries, commenced with this Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code. Because the Commencement Date intervened, the funds designated for transfer to Bank Leumi in payment of the purchase price under the Transaction were not transferred to Bank Leumi and, instead, remained in the Lehman Entities' cash management system. As a result of LBIE's breach, the Certificates were subsequently returned by Euroclear to Bank Leumi.

3

5. On September 22, 2009, Bank Leumi filed a proof of claim against LBHI (Claim No. 28333) seeking recovery in the amount of $102,170,000 (the "**Guarantees Claim**"). That proof of claim was filed with respect to guarantees of LBHI to absolutely and unconditionally pay all of the liabilities, obligations, and commitments to any counterparty of LBIE (the "**Guarantees**"). The underlying claim was based on breach of contract resulting from LBIE's failure to deliver cash pursuant to the terms of the Transaction. At the time of Bank Leumi's filing of the Guarantees Claim, Bank Leumi could not know what, if any, recovery would be had with respect to the Certificates that were returned to it as a result of LBIE's breach, and therefore filed the Guarantees Claim against LBHI for the full amount owing. As set forth in further detail below, Bank Leumi has now amended its claim to reflect its actual losses after mitigation.[3]

6. On November 2, 2009, Bank Leumi filed a separate proof of claim against LBHI (Claim No. 64025) relating to Lehman Program Securities (as defined in the Bar Date Order) seeking recovery in an amount not less than $100,000,000 (the "**Lehman Program Securities Claim**").

7. On July 1, 2011, Bank Leumi and LBIE entered into a settlement agreement relating to LBIE's breach of contract, pursuant to which LBIE's Administrators agreed to admit Bank Leumi's damages resulting from the failed Transaction with LBIE in the amount of $86,273,909 million, and on which Bank Leumi was ultimately paid an amount of $44,775,253.46 (the "**Settlement Agreement**").

---

[3] In the Objection, Debtors contest the appropriateness of the submission of the Amended Claim for the first time, despite having been made aware of Bank Leumi's intent to file an amended claim even before it was submitted. The parties have since entered into a stipulation that has been submitted to the Court allowing for the amendment of the Guarantees Claim.

8. On July 15, 2011, Bank Leumi transferred in full the Lehman Program Securities Claim and the Certificates to Deutsche Bank AG, London Branch, for the price of $17.5 million (the "**Transfer Agreement**").

9. It is important to note that the amount of $86,273,909 admitted by LBIE's Administrators was a result of the Administrators' acknowledgment of the total amount of damages sought of $102.17 million minus the amount stipulated as the market price of the Certificates (i.e. $17.5 million). This deduction, by its nature, is an acknowledgment that the rights under the Certificates arise from separate causes of action, and does not prevent Bank Leumi from asserting its rights under the Transaction, which is the basis of the Guarantees Claim. The deduction of the amount of $17.5 million was made only to mitigate the losses to a fair value.

10. Furthermore, the result of this acknowledgment is that LBIE, as the counterparty of the Transaction, acknowledged all of Bank Leumi's rights under the Transaction. This acknowledgment is not just a mere declaration; in fact, LBIE paid a significant amount to Bank Leumi in order to settle the bank's claim. LBHI's opposition as guarantor to this acknowledgment has no grounds by the definition and the role of a guarantor.

11. On June 4, 2012, the Debtors filed the Objection. With the Objection, the Debtors sought to disallow and expunge Bank Leumi's Guarantees Claim against LBHI as duplicative.

12. On July 13, 2012, Bank Leumi filed the Amended Claim, amending the Guarantees Claim and seeking recovery of not less than $39,894,746.54, the difference between the original amount owed to Bank Leumi by LBHI ($102.17 million) and the amount recovered pursuant to the Settlement Agreement ($44,775,253.46) and the Transfer Agreement ($17.5 million). Under the Amended Claim, Bank Leumi seeks only amounts due to it as a result of

5

LBHI's obligations under the Guarantees with respect to LBIE, and which have not otherwise been recovered on the securities themselves, or through settlement with LBIE.

13. Due to its success in recovering a significant amount of the failed Transaction in the Settlement Agreement, Bank Leumi managed to mitigate the losses and to amend its claim against LBHI as guarantor to a reduced amount. Any objection to the Guarantees Claim by LBHI based on Bank Leumi's success in mitigating its losses by asserting that the bank is seeking duplicative recoveries appears disingenuous, especially when all of Bank Leumi's efforts in its recovery from LBIE actually serve the interests of the guarantor by reducing the amount sought under the guarantee.

14. On August 13, 2012, Bank Leumi filed an initial response to Debtors' Objection. On January 15, 2013, Debtors filed a Reply to Bank Leumi's response.

## **ARGUMENT**

### **I.     The Debtors Have Failed To Meet Their Burden To Show That Bank Leumi's Claims Are Duplicative.**

15. The Debtors make no credible attempt to refute Bank Leumi's allegation that its two claims against LBHI arise from separate obligations. (See Original Response at 6.) Instead, Debtors' opposition to the remaining Guarantees Claim centers around the mistaken assertions that the claim is "manufactured" and is a claim for the same "underlying loss represented by the LPS Claim." (Opp. at 5.) The Debtors, however, mischaracterize Bank Leumi's Amended Claim. The claim is not "manufactured"—it is very real, resulting from a contractual breach by LBIE that caused losses that LBHI is obligated to pay as a result of the Guarantees. The Guarantees Claim is completely distinct from any obligation LBHI may have to pay on the underlying securities issued by LBS.

16. Bank Leumi's Transaction with LBIE in consideration of $102.17 million was a secondary market transaction that is irrelevant to rights of a Certificate holder, who has a separate cause of action based on the rights under the Certificate. The fact that the Certificates were returned to Bank Leumi (following the failure of LBIE to pay) and that Bank Leumi sold the Certificates and recovered $17.5 million is also irrelevant to the Transaction with LBIE. As stated above, this amount was already mitigated and deducted from the damages resulted from the failed Transaction amount. Debtors' Reply, in support of the attempts to exclude the Guarantees Claim, cites case law that holds "to allow one creditor to assert two dollars in claims for every one dollar of loss from the same debtor violates principles of ratable distribution and offends notions of uniform treatment for creditors." In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) (citation and quotation marks omitted). This proposition is inapplicable to this case. Bank Leumi does not assert a double claim; nor does it seek a double recovery. Indeed, Bank Leumi's original claim and the Amended Claim make it quite clear that Bank Leumi seeks only those amounts by which Bank Leumi was damaged as a result of LBIE's failure to perform, including amounts not recovered through the sale of its separate Lehman Program Security Claim and its settlement with LBIE for LBIE's contractual breach.

17. The cases cited by Debtors—ERISA cases—found generally that differently titled claims for unpaid contributions or unfunded liabilities to a pension fund were duplicative. In re Finley, 160 at 894; In re Chateaugay Corp., 130 B.R. 690, 698 (S.D.N.Y. 1991), vacated, 1993 WL 388809 (S.D.N.Y. June 16, 1993). These cases are inapplicable here. Bank Leumi's Lehman Program Securities claim is a claim on the securities themselves—specifically on LBHI's guarantee of them. Central to this claim is that the securities were Lehman securities,

7

meaning LBHI was responsible for them. Bank Leumi's Guarantees Claim, however, is independent of the identity of the securities, as well as their guarantor. Rather, it concerns LBIE's breach of its contract to pay for the securities (no matter what they were named) sold and LBHI's failure to abide by its Guarantees. To be sure, Bank Leumi does not suggest it should be able to pursue full recovery on both separate claims—concepts of mitigation of course apply. But nor should Bank Leumi be limited to the extreme position suggested by Debtors, that an entire method of recourse be foreclosed essentially because the securities Bank Leumi purchased happened to be Lehman securities. Where payments obligations arise from distinct sources (here the failure to pay under a secondary market transaction as opposed to rights of a Certificate holder), the bankruptcy claims based upon those obligations are not duplicative. See, e.g., In re Delta Air Lines, Inc., 608 F.3d 139, 149-50 (2d Cir. 2010) (finding that claims are not duplicative where they arose pursuant to separate legal obligations and the creditor's recovery would be less than 100%). For the reasons set forth above and in the Original Response, Bank Leumi's Guarantees Claim is not duplicative of its LPS Claim.

**II.    The Debtors Fail to Meet Their Burden To Show that the Guarantees Claim Should Be Subordinated Under Section 510(b)**

18.    Debtors' subordination argument fails for two reasons. First, it contradicts Second Circuit law explaining the limits on the reach of Section 510(b). Second, subordination would violate the important bankruptcy principle that similar claims should not be subjected to disparate treatment, absent a legitimate reason.

**A.    Subordination Would Contradict Section 510(b)'s Purpose**

19.    Section 510(b) of the Bankruptcy Code provides for the subordination of claims "arising from the rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, [or] for damages arising from the purchase or sale of such security . . . ." 11 U.S.C. §

8

510(b). Debtors would have the Court interpret the words "arising from" so broadly that they would extend the application of section 510(b) to claims it was never intended to cover, i.e. claims for damages arising from an affiliate's breach of contractual obligations entered into in that affiliate's normal course of business. (Reply at 6-7.) In making this argument, Debtors overlook the Second Circuit decision in Rombro v. Dufrayne (In re Med Diversified, Inc.), 461 F.3d 251 (2d Cir. 2006), which "acknowledge[d] the outer boundaries of [510(b)'s] text and purpose." Id. at 259.

20. After an analysis of the legislative history of this provision, the Second Circuit identified two rationales for subordination under section 510(b), and explicitly limited subordination to those two rationales only. It held that it would "conform [its] interpretation of the statute to require subordination . . . only if [the claimant] (1) took on the risk and return expectations of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend credit to the debtor." Id. at 256 (emphasis added).[4]

21. In the case at bar, neither of these two criteria is met. At the time of Lehman's bankruptcy, Bank Leumi vis-á-vis LBIE was not taking on the risk and return expectations of a shareholder. With respect to LBIE, Bank Leumi stood in the same position as any other counterparty in the general creditor pool. Moreover, in seeking to recover damages from LBIE, Bank Leumi was not seeking to recover from an equity pool other creditors would have relied

---

[4] As explained by the Second Circuit, these two rationales for 510(b) were first advanced in a seminal law review article by John J. Slain and Homer Kripke titled The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors, 48 N.Y.U. L. REV. 261 (1973). Two other commentators sum up the thrust of this article: "[D]iscontented shareholders, having gambled for an equity return, should not be allowed to recover their failed investment on a parity with general creditors." Theodore Zink, Jr & Christy Rivera, Are There Limits To Mandatory Subordination Under Section 510(B) Of The Bankruptcy Code?, PRATT'S JOURNAL OF BANKRUPTCY LAW 585 (March 2007).

9

upon. The same is true of the Guarantees Claims. Bank Leumi, in the Guarantees Claims, is not seeking to recover losses flowing from its ownership of securities issued by LBS, but rather is seeking to recover damages incurred as a result of LBIE's failure to close on a transaction entered into in the ordinary course of LBIE's business and for which LBHI agreed to be bound as guarantor.

22. A close comparison of the facts in Rombro to the facts here shows that Bank Leumi was, in fact, in the opposite position as was Rombro, and thus should receive the opposite treatment by the Court. Whereas "Rombro bargained not for cash but to become a stockholder in the debtor," Bank Leumi explicitly bargained to sell non-LBIE securities for cash. Once Rombro "entered a binding agreement obligating him to purchase shares of the debtor . . . and to forego the significant cash compensation to which he otherwise was due upon termination, he became bound by the choice he made to trade the relative safety of cash compensation for the upside potential of shareholder status . . . ." Id. Bank Leumi, however, was contracting to sell to LBIE securities of another entity. This type of commercial activity, which was part of LBIE's regular business and which did not, of necessity, involve securities of the Debtors, is not the type of transaction that falls within the reach of section 510(b). Id.; see also Allen v. Geneva Steel Co. (In re Geneva Steel Co.), 281 F.3d 1173, 1180 (10th Cir. 2002) (finding the "risk allocation argument persuasive" and subordinating a claim because it was really for an "investment gamble turn[ed] sour"); Baroda Hill Invs., Inc. v. Telegroup, Inc. (In re Telegroup, Inc.), 281 F.3d 133, 142 (3d Cir. 2002) ("Congress enacted § 510(b) to prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding."); CIT Group Inc. v. Tyco Int'l Ltd. (In re CIT Group Inc.), 460 B.R. 633, 641 (Bankr. S.D.N.Y. 2011) (rejecting

subordination even where agreement at issue was found to have had a nexus to issuance of stock and noting that "mere 'connection' between the claim and the purchase or sale of a security is not enough" to satisfy section 510(b)), aff'd, 479 Fed. Appx. 393, 395 (2d Cir. 2012).

### B. Debtors Have Provided No Legitimate Reason To Subordinate Bank Leumi's Claim Below Other Similar Claims.

23. Debtors would have the Court subordinate Bank Leumi's Guarantees Claim below other similar claims. But in the Second Circuit, Debtors do not have the ability to classify similar claims simply as they see fit, and cannot subordinate similar claims without providing a legitimate reason. "[T]o warrant having separate classification of similar claims, the debtor must advance a legitimate reason supported by credible proof. Thus, classification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason." Aetna Cas. & Sur. Co. v. Clerk, United States Bankruptcy Court (In re Chateaugay Corp.), 89 F.3d 942, 949 (2d Cir. N.Y. 1996) (citation omitted) (emphasis added); see also Begier v. IRS, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."); In re Combustion Eng'g, Inc., 391 F.3d 190, 239 (3d Cir. 2004) ("The Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims.")

24. Debtors have provided no such legitimate reason for treating the Guarantees Claim differently from other claims in these cases based upon failed securities trades. Given the nature of the Debtors' businesses, Bank Leumi understands there are likely a substantial number of claims in these cases arising from failed securities trades. The Debtors should not be allowed to reclassify the Guarantees claim without first demonstrating that all such claims in these cases will be subjected to similar treatment. In the absence of such a showing, having failed to provide

11

any justification for treating the Guarantees Claim differently, the Debtors' objection must be denied.

25.    However, were this Court inclined to consider a subordination under 510(b), Bank Leumi requests that the Court reserve judgment at this time to allow for discovery regarding the treatment of other guarantee claims based on failed securities trades in these cases.

26.    Bank Leumi's claim is, in essence, a straightforward assertion of its rights against LBHI as guarantor of all of LBIE's liabilities, obligations, and commitments to any counterparty to LBIE.  Bank Leumi agreed to enter into the transaction on the basis of LBHI's guarantee and the comfort provided by LBHI's financial resources and reputation.

27.    The current attempts by the Debtors to avoid respecting this guarantee and to find extraordinary excuses to avoid their obligations are inexplicable.

## CONCLUSION

28. For the reasons stated herein and in the Original Response, Bank Leumi respectfully requests that this Court overrule the Objection; allow the Amended Claim in the amount filed; and grant such other, further relief as this Court deems just and proper.

Dated:  New York, New York
        February 28, 2013

                                Davis Polk & Wardwell LLP

                                By:    /s/ James I. McClammy


                                DAVIS POLK & WARDWELL LLP
                                450 Lexington Avenue
                                New York, New York 10017
                                Telephone: (212) 450-4735
                                Facsimile: (212) 701-5986
                                Benjamin S. Kaminetzky
                                Gina Caruso
                                James I. McClammy

                                *Bank Leumi le-Israel, Ltd.*