HEARING DATE AND TIME: April 25, 2013 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: April 15, 2013 at 4:00 p.m. (Eastern Time)

---

**THE FOUR HUNDREDTH OMNIBUS OBJECTION TO CLAIMS SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE OF THE FOUR HUNDREDTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL, KELLY A. CARRERO, AT (212) 326-8391.**

---

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------ x
In re                                            :   Chapter 11 Case No.
LEHMAN BROTHERS HOLDINGS INC., et al.,           :
Debtors.                                         :   08-13555 (JMP)
                                                 :
                                                 :   (Jointly Administered)
------------------------------------------------------------------ x
```

**NOTICE OF HEARING ON
FOUR HUNDREDTH OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY EMPLOYEE CLAIMS)**

**PLEASE TAKE NOTICE** that on March 8, 2013, Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for certain entities in the above-referenced chapter 11 cases, filed its four hundredth omnibus objection to claims (the "Four Hundredth Omnibus Objection to Claims"), and that a hearing to

consider the Four Hundredth Omnibus Objection to Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **April 25, 2013 at 10:00 a.m. (Prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Four Hundredth Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Robert W. Gaffey, Esq. and Kelly A. Carrero, Esq.); and (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **April 15, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Four Hundredth Omnibus Objection to Claims or any claim set forth

2

thereon, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Four Hundredth Omnibus Objection to Claims, which order may be entered with no further notice or opportunity to be heard offered to any party.

| | |
|---|---|
| Dated: March 8, 2013<br>New York, New York | /s/ Robert W. Gaffey<br>Robert W. Gaffey<br>Kelly A. Carrero<br>Benjamin Rosenblum<br><br>JONES DAY<br>222 East 41st Street<br>New York, New York 10017<br>Telephone: (212) 326-3939<br>Facsimile: (212) 755-7306<br><br>Attorneys for Lehman Brothers Holdings Inc.<br>and Certain of Its Affiliates |

HEARING DATE AND TIME: April 25, 2013 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: April 15, 2013 at 4:00 p.m. (Eastern Time)

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------- x | | |
| In re | : | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | |
| Debtors. | : | 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| ------------------------------------------------------------------- x | | |

**FOUR HUNDREDTH OMNIBUS OBJECTION**
**TO CLAIMS (NO LIABILITY EMPLOYEE CLAIMS)**

**THIS FOUR HUNDREDTH OMNIBUS OBJECTION TO CLAIMS SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS FOUR HUNDREDTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL, KELLY A. CARRERO, AT (212) 326-8391.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates"), respectfully represents as follows:

### Relief Requested

1. The Plan Administrator files this four hundredth omnibus objection to claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the "Procedures Order") [ECF No. 6664].

2. The Plan Administrator has examined the proofs of claim identified on Exhibit A (the "Claims") and has determined that the Claims should be disallowed and expunged on the grounds that the Chapter 11 Estates have no liability for such Claims. The Plan Administrator, therefore, requests that the Court disallow and expunge each claim in the amounts set forth on Exhibit B.

3. In the alternative, the Plan Administrator seeks to reduce and allow and/or reclassify as equity certain portions of the Claims in amounts and priorities to be determined through discovery in connection with this objection to claims.

### Jurisdiction

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2

**Background**

5. Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6. On July 2, 2009, this Court entered the Bar Date Order, setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [ECF No. 4271], which requires, among other things, that "each Proof of Claim must: . . . (vi) include supporting documentation or an explanation as to why documentation is not available." (Bar Date Order at 6.) A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com. Claimants also received notice of the Bar Date Order by mail. (*See* Notice of Deadlines for Filing Proofs of Claim [ECF No. 3654] (the "Bar Date Notice").) A Bar Date Notice was also published in The New York Times (International Edition), The Wall Street Journal (International Edition), and The Financial Times.

7. On January 14, 2010, the Court entered the Procedures Order, which authorizes the filing of omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

8. On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012.

9. Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

3

**The Claims**

10. The Plan Administrator continues its review of the claims filed on the claims register in these cases and maintained by the Court-appointed claims agent.

11. A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection to a proof of claim is filed, the allowed amount of such claim must be determined "as of the date of the filing of the petition." 11 U.S.C. § 502(b). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

12. The Claims listed on Exhibit A annexed hereto assert claims for one or more of the following types of compensation:

- bonus (the "Bonus Claims"),
- wages (the "Wage Claims"), and
- business expenses (the "Business Expenses Claims").

Exhibit A also identifies objectionable grounds applicable to a Claim and therefore which of the arguments set forth below applies to each.

4

**I.   The Claims Are Not Entitled to Recovery and Should be Disallowed and Expunged.**

   A. LBHI Has No Liability for Non-Debtor Employee Claims.

      13.    As identified on Exhibit A, the Chapter 11 Estates have reviewed their records, including payroll records and the terms of the employment contracts attached to the Claims, and determined that the identified Claimants were not employees of any of the Chapter 11 Estates (the "Non-Debtor Employee Claims"); they were employees of other Lehman entities, including Lehman Brothers Inc. ("LBI").

      14.    A claim against an entity other than one of the Chapter 11 Estates does not result in a claim against, or a right to payment from, any of the Chapter 11 Estates. Hence, while the applicable employers of the claimants may be liable for such compensation claims, neither the records of the Chapter 11 Estates nor the Non-Debtor Employee Claims themselves establish any ground for liability of any of the Chapter 11 Estates for the Non-Debtor Employee Claims.

      15.    The Court has previously disallowed and expunged similar proofs of claim filed by employees of entities that are not a part of these Chapter 11 Cases. *See, e.g.*, *Order Granting Debtors' One Hundred Seventeenth Omnibus Objection to Claims (No Liability Non-Debtor Employee Claims)* [ECF No. 17366]; *Order Granting Debtors' One Hundred Seventy-Seventh Omnibus Objection to Claims (No Liability Non-Debtor Employee Claims)* [ECF No. 20627]; *Order Granting Debtors' One Hundred Eighty-Fifth Omnibus Objection to Claims (Compound Claims)* [ECF No. 21382]; *Order Granting Debtors' Two Hundred Fifty-Fourth Omnibus Objection to Claims (Employment-Related Claims)* [ECF No. 27107]; *Order Granting The Two Hundred Eighty-Eighth Omnibus Objection to Claims (No Liability Claims)* [ECF No. 28389].

5

16. The Plan Administrator requests that the Court enter an order on the basis of no liability disallowing and expunging the Non-Debtor Employee Claims identified on Exhibit A in the amounts set forth on Exhibit B.

**B. LBHI Has No Liability For Transferred Employee Claims.**

17. As identified on Exhibit A, the specified Claimants were hired for a period of time by Barclays Capital Inc. ("Barclays") following its acquisition of the North American broker-dealer business and investment banking operations of LBI (the "Transferred Employee Claims"). The Claimant's employment was transferred to Barclays in accordance with the Sale Order entered on September 20, 2008 that approved the purchase by Barclays under the terms of the Asset Purchase Agreement among LBHI, LBI, LB 745 LLC and Barclays, dated as of September 16, 2008 (the "APA").

18. Under the terms of the APA, Barclays agreed to assume certain compensation liabilities with respect to Lehman employees who accepted Barclays' offer of employment (each, a "Transferred Employee"). (*See* APA §§ 2.3 and 9.1.)

19. For any Transferred Employee who was terminated prior to December 31, 2008 by reason of a reduction in force or job elimination, under Section 9.1(b) of the APA, Barclays was to pay the Transferred Employee severance payments and benefits at levels no less favorable than such terminated Transferred Employee would have been entitled to receive pursuant to applicable Lehman severance plans or agreements. (*See* APA § 9.1(b).)

20. Under Section 9.1(c) of the APA, Barclays agreed to assume payment of "08 Annual Bonuses" in the amount of "Accrued 08 FY Liability." Section 9.1(c) provided as follows:

> (c) On or after the Closing, Purchaser shall, or shall cause its Subsidiaries to, pay each Transferred Employee an annual bonus

6

("08 Annual Bonuses"), in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary) and reflected on the financial schedule delivered to Purchaser on September 16, 2008 and initialed by an officer of each of Holdings and Purchaser (the "Accrued 08 FY Liability"). Such 08 Annual Bonuses shall be awarded on or before March 13, 2009 in such forms and proportions as are consistent with Purchaser's customary practices, so that the aggregate amount awarded shall equal the Accrued 08 FY Liability. . . .

21. In relation to certain breach of contract claims asserted in LBHI's Adversary Complaint against Barclays, filed November 16, 2009, this Court held on LBHI's motion for summary judgment that, under Section 9.1(c) of the APA, Barclays was obligated to pay bonus compensation to the Transferred Employees in an amount to be determined by Lehman's internal bonus accruals for the 2008 fiscal year. In particular, the Court stated:

> . . . the operative language of the APA plainly states that the liabilities being assumed by Barclays for bonus compensation are to be determined by referring to Lehman's internal bonus accruals for the 2008 fiscal year. These accruals, whatever they turned out to be, would determine the amount of the total liabilities being assumed for bonuses. . . .

*In re Lehman Brothers Holdings Inc., et al.*, 456 B.R. 213, 218-219 (Bankr. S.D.N.Y. 2011).

22. In its summary judgment decision, this Court also expressly held that "Lehman no longer has any ongoing liabilities to the Transferred Employees for bonus compensation." *Id.* at 219. When it denied LBHI's motion for summary judgment, the Court held that LBHI could not recover damages for bonuses Barclays had not paid. In particular, the Court held in relevant part:

> The critical missing ingredient in all of this is that Lehman is unable to show that it still has any ongoing liabilities to these employees. Without such a showing, Lehman has suffered no damages regardless of the actual amount of the employee liabilities that have been assumed by Barclays under the APA and paid to the Transferred Employees . . . **Lehman no longer has any ongoing liabilities to the Transferred Employees for bonus compensation** and can show no damages due to the alleged breach of section 9.1(c) of the APA. In common vernacular, this is a "no harm,

> no foul" situation in which Lehman has not been hurt regardless of the amounts paid by Barclays to Transferred Employees because the Accrued 08 FY Liability has been assumed and satisfied in full.

*Id*. at 219-20 (emphasis added).

23. Accordingly, the Plan Administrator requests that on the basis of no liability the Court enter an order disallowing and expunging the Transferred Employee Claims identified on <u>Exhibit A</u> in the amounts set forth on <u>Exhibit B</u>.

C.  LBHI Has No Liability for Duplicative Claims.

24. As identified on <u>Exhibit A</u>, LBHI is not liable for Claims that are duplicative either entirely or in substance (the "Duplicative Claims") of corresponding claims (the "Surviving Claims").  Specifically, the Duplicative Claims were filed by the same claimants against the Chapter 11 Estates, in most instances for the same dollar amounts, and on account of the same objections as the corresponding Surviving Claims.

25. Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim shall not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Accordingly, courts in the Southern District of New York routinely disallow and expunge duplicative claims filed by the same creditor against the same debtors. *See, e.g.*, *In re Worldcom, Inc.*, Case No. 02-13533 (AJG), 2005 WL 3875191, at *8 (Bankr. S.D.N.Y. June 3, 2005) (expunging duplicate claim); *In re Best Payphones, Inc.*, Case No. 01-15472, 2002 WL 31767796, at *4, 11 (Bankr. S.D.N.Y. Dec. 11, 2002) (expunging duplicate claim).

26. The Chapter 11 Estates cannot be required to pay on the same claim more than once. *See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an

8

identical injury are generally disallowed."). Elimination of redundant claims will enable the Plan Administrator to maintain a claims register that more accurately reflects the proper claims existing against the Chapter 11 Estates.

27. The effective date for the Plan has occurred and the initial distributions commenced on April 17, 2012. It would be inequitable and inappropriate for holders of claims subject to this objection to receive distributions on account of Duplicative Claims.

28. The Court has previously disallowed and expunged similar proofs of claim. *See, e.g.*, *Order Granting Three Hundred Fifty-Second Omnibus Objection to Claims (Duplicative Claims)* [ECF No. 32145].

29. The Plan Administrator requests that the Court enter an order on the basis of no liability disallowing and expunging the Duplicative Claims identified on Exhibit A in the amounts set forth on Exhibit B.[1]

## II. In the Alternative, Portions of the Claims Should Be Reduced and Allowed and/or Reclassified as Equity.

30. In the alternative, on the following grounds, the Plan Administrator seeks to reduce and allow and/or reclassify as equity the Claims in amounts and priorities to be determined through discovery in connection with this objection to claims:

### A. The Transferred Employee Claims Should Be Reduced by Amounts Paid by Barclays.

31. The Plan Administrator objects to the extent that Claimants seek amounts that also were paid to them by Barclays. Claimants should not be allowed to recover more than the value of their claims. Accordingly, the Transferred Employee Claims identified on Exhibit A

---

[1] Where a creditor has filed different documentation in support of the Duplicative Claim and the Surviving Claim, the Chapter 11 Estates will treat all documentation filed with the claims as having been filed in support of the Surviving Claim.

9

should be reduced by any bonus, wage or severance amounts paid by Barclays to any holder of a Transferred Employee Claim.

32. In order to properly reflect the fair, accurate, and reasonable value and priority of these claims, the Plan Administrator requests that the Court reduce and, if applicable, reclassify each Transferred Employee Claim by amounts paid to Claimant by Barclays, to be determined.

B. The Special Sign-On Bonus Claims Should be Reduced.

33. As identified on Exhibit A, certain Claims involved employment contracts that provided for a special sign-on bonus payment or advance (the "Special Sign-On Bonus"), under language such as "[i]f you separate from the Firm for any reason within one year after your start date, you will be required promptly to repay the full amount of this special payment" (the "Special Sign-On Bonus Claims").

34. Accordingly, in order to properly reflect the fair, accurate, and reasonable value and priority of these claims, the Plan Administrator requests that the Court reduce and, if applicable, reclassify each Special Sign-On Bonus Claim by amounts to be determined.

C. Bonus Claims Should Be Reclassified in Part as Equity Interests.

(1) *The Equity Award Program Claims Are for Equity Securities.*

35. As identified on Exhibit A, under the terms of their respective employment contracts, certain of the holders of the Bonus Claims were to be paid in part in conditional equity awards (restricted stock units and/or other equity-based awards) (the "Equity Award") pursuant to Lehman's Equity Award Program (the "Equity Award Program Claims") based on historical tables for allocation of bonuses between cash and Equity Awards as set forth

10

in the "2007 Equity Award Program" annexed hereto as <u>Exhibit C</u> and the "2008 Equity Award Program" annexed hereto as <u>Exhibit D</u>.

36. The Equity Award Program Claims were improperly filed as secured or general unsecured claims and others were improperly filed as claims having priority pursuant to section 507(a) of the Bankruptcy Code. Each of the Equity Award Program Claims must be reclassified as an equity interest.

37. Each of the Equity Award Program Claims is based on the award of an equity-based bonus in LBHI. Each of the Equity Award Program Claims is an interest in an "equity security" and not a "claim," as such terms are defined in sections 101(16) and 101(5) of the Bankruptcy Code. The definition of equity security has been interpreted by courts to include a range of stock-based transactions, including transactions based on a right to acquire stock, such as stock options and stock assignments. *See, e.g.*, *In re Enron Corp.*, 341 B.R. 141, 162 (Bankr. S.D.N.Y. 2006); *see also In re Baldwin-United Corp.*, 52 B.R. 549, 552 (Bankr. S.D. Ohio 1985).

38. Because each of the Equity Award Program Claims is based on the award of equity-based bonus in LBHI, the Plan Administrator hereby seeks reclassification of the Equity Award Program Claims as equity interests in amounts to be determined.

    (2)    *Bankruptcy Code Section 510(b) Mandates that the Equity Award Program Claims Have the Same Priority as Common Equity of LBHI.*

39. Another reason the Equity Award Program Claims must be treated as equity is that section 510(b) of the Bankruptcy Code provides that, for purposes of distribution, a claim for damages arising from the purchase or sale of a security shall have the same priority as the security. 11 U.S.C. § 510(b).

11

40. The Equity Awards fall within the Bankruptcy Code definition of "security." 11 U.S.C. § 101(49). In addition, the grant of the Equity Awards constitutes a "purchase or sale" of a security. "Courts interpreting section 510(b) have read the term 'purchase' broadly and have included within its scope grants of stock and stock options as compensation." *In re Wireless Corporation, Inc.* 384 B.R. 713, 718 (Bankr. D. Del. 2008). In *Wireless Corporation*, for example, the Delaware Bankruptcy Court held that the debtor's grant of an equity compensation package, consisting of shares of stock and warrants, constituted a "purchase or sale" of a security. *See also In re Med Diversified Inc.*, 461 F.3d 251, 256 (2d Cir. 2006) (holding that claim based on debtor's failure to issue its common stock to employee in exchange for his stock in another company, allegedly in violation of the parties' termination agreement, was a claim arising from the purchase or sale of the debtor's stock); *In re Touch Am. Holding, Inc.*, 381 B.R. 95, 104 (Bankr. D. Del. 2008) (holding that claims based on stock received as matching contribution under an ERISA plan likewise constituted a "purchase or sale" of securities).

41. In *Enron*, employees filed claims asserting a right to payment for damages in connection with unexercised stock options they had received during the course of their employment. The Court held that it was clear that a stock option was a "security" as that term is used in section 510(b) of the Bankruptcy Code. *Enron*, 341 B.R. at 150. The Court further found that, "[w]hile it is true that the Claimants did not purchase the stock options on the open market, they nonetheless exchanged value for the options: here, their labor. Such exchange falls under a broad reading of the term 'purchase.'" *Id*. at 151 (citing *Frankum v. Int'l Wireless Communications Holdings, Inc.* (*In re Int'l Wireless Communications Holdings, Inc.*), 279 B.R. 463, 467 (D. Del. 2002) ("That Appellants received the Debtors' stock as part of a compensation

12

package does not preclude the transfer from being characterized as a purchase/sale of the Debtors' stock.")). This was true even where the employees "never elected to receive stock options, but rather were required to take a minimum percentage of their annual bonus in stock option form." *Id*. The Court found flaws in the employees' argument that they did not "purchase" the stock options, because there was no voluntary exchange of goods, services or currency:

> Although implicit, there is nonetheless a bargain and exchange of value. Here, the exchange is made not at the time of payment but prior to employment. If these Claimants were required to receive a portion of their compensation as options, that was a condition of employment the Claimants willingly accepted in return for their labor. These Claimants, thus, "purchased" the stock options with their labor.

*Id*.

42. The Court in *Enron* further concluded that "claims alleging the fraudulently induced election of stock options as part of a compensation package are claims 'arising from' the purchase of a security and should thus be subordinated pursuant to section 510(b)." *Id*. "[P]hysical possession of the security is not required for a claim based upon that security to be subordinated." *Id*. at 163 (citing *American Broad. Sys. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823 at 829 (9th Cir. 2001) (finding that "[n]othing in § 510(b)'s text requires a subordinated claimant to be a shareholder.")).

43. As it did in *Enron*, the Court should find that the Equity Awards in this case are equity interests and the Equity Award Program Claims arise from the purchase and sale of securities. As the Court found in *Enron*, neither the fact that Equity Awards were a form of compensation for services performed, nor the fact that claimants asserting Equity Award Program Claims could not opt to receive compensation in cash in lieu of Equity Awards converts the Equity Award Program Claims into debt claims.

13

44. The Court has granted similar relief with respect to claims based on shares of stock. *See, e.g., Order Granting Debtors' One Hundred Twenty-First Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity Interests)* [ECF No. 17350]; *Order Granting Debtors' One Hundred Seventy-Fourth Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity Interests)* [ECF No. 20629]; *Order Granting Debtors' One Hundred Eighty-Fifth Omnibus Objection to Claims (Compound Claims)* [ECF No. 21382]; *Order Granting Debtors' Two Hundred Fifty-Fourth Omnibus Objection to Claims (Employment-Related Claims)* [ECF No. 27107]. The objections relating to these orders are pending with respect to claims for which responses were filed. Discovery is ongoing with respect to the pending objections.

45. Accordingly, to the extent applicable, the portions of the Claims that assert Equity Award Program Claims should be subordinated pursuant to Bankruptcy Code section 510(b) and reclassified as equity interests in amounts to be determined.

**Reservation of Rights**

46. The Plan Administrator reserves all rights to object on any basis to any Claim or any portion of any Claim as to which the relief requested herein is not granted.

**Notice**

47. No trustee has been appointed in these Chapter 11 Cases. Notice of this objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) each claimant listed on Exhibit A; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these

cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

       48.    No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

       WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

| | |
|---|---|
| Dated: March 8, 2013<br>      New York, New York | /s/ Robert W. Gaffey<br>Robert W. Gaffey<br>Kelly A. Carrero<br>Benjamin Rosenblum<br><br>JONES DAY<br>222 East 41st Street<br>New York, New York 10017<br>Telephone: (212) 326-3939<br>Facsimile: (212) 755-7306<br><br>Attorneys for Lehman Brothers Holdings Inc.<br>and Certain of Its Affiliates |