**Hearing Date and Time: March 28, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: March 21, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Financial Products Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>                            Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br><br>                            Plaintiff,<br><br>             -against-<br><br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br><br>                            Defendants.<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br><br>                       Counterclaimant,<br><br>         - against - | Adversary Proceeding No. 10-03544 (JMP) |

| | |
|---|---|
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC., LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO II, LIMITED, LIBERTY SQUARE CDO II, CORP., | |
| Counterclaim and Crossclaim Defendants, | |
| - and- | |
| CEDE & CO., as nominee of THE DEPOSITORY TRUST COMPANY, as the holder of certain notes, | |
| Additional Crossclaim Defendants. | |

**NOTICE OF MOTION PURSUANT TO SECTION
105(a) OF THE BANKRUPTCY CODE FOR APPROVAL
OF THE TERMINATION AGREEMENT BY AND AMONG  LEHMAN
BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO I, CORP.,
LIBERTY SQUARE CDO II, LIMITED, AND LIBERTY SQUARE CDO II, CORP.**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of March 13, 2013 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, on behalf of LBHI and Lehman Brothers Financial Products Inc. ("LBFP"), pursuant to section 105(a) of title 11 of the United States Code for approval of that certain termination agreement by and among LBHI, LBFP, Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp. (the Liberty Square entities, collectively, the "Issuers"), as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 28, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

US_ACTIVE:\44213212\7\58399.0008

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at *www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard L. Levine, Esq., and Jacqueline Marcus, Esq., attorneys for the Plan Administrator; (iii) the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Andrea B. Schwartz, Esq., and Susan Golden, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street NW, Suite 1100, Washington, District of Columbia 20006, Attn: David S. Cohen, Esq., attorneys for the Litigation Subcommittee of the Official Committee of Unsecured Creditors appointed in these cases; (v) Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004, Attn: Jack Yoskowitz, Esq. and Benay Josselson, Esq., attorneys for the Issuers; and (vi) Reed Smith LLP, 599 Lexington Avenue, 22nd Floor, New York, New York 10022, Attn: Eric Schaffer, Esq., and Michael Venditto, Esq., attorneys for The Bank of New York Mellon Trust Company, National Association as trustee, so as to be so filed and received no later than **March 21, 2013 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline")**.

US_ACTIVE:\44213212\7\58399.0008

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
March 13, 2013

/s/ Jacqueline Marcus
Richard L. Levine
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Financial Products Inc.*

US_ACTIVE:\44213212\7\58399.0008

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Financial Products Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br><br>Defendants. | Adversary Proceeding No. 10-03544 (JMP) |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br><br>Counterclaimant,<br><br>- against - | |

LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO I, CORP., LIBERTY
SQUARE CDO I, LIMITED, LIBERTY SQUARE
CDO II, LIMITED, LIBERTY SQUARE CDO II,
CORP.,

       Counterclaim and Crossclaim Defendants,

       - and-

CEDE & CO., as nominee of THE DEPOSITORY
TRUST COMPANY, as the holder of certain notes,

       Additional Crossclaim Defendants.

---

**MOTION PURSUANT TO SECTION
105(a) OF THE BANKRUPTCY CODE FOR APPROVAL
OF THE TERMINATION AGREEMENT BY AND AMONG  LEHMAN
BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO I, CORP.,
LIBERTY SQUARE CDO II, LIMITED, AND LIBERTY SQUARE CDO II, CORP.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

       Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator") as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), on behalf of LBHI and Lehman Brothers

Financial Products Inc. ("LBFP" and, together with LBHI, "Lehman"), submits this motion (the

"Motion") and respectfully represents:

<b><u>Relief Requested</u></b>

       1.      By this Motion, pursuant to section 105(a) of title 11 of the United States

Code (the "Bankruptcy Code"), the Plan Administrator seeks approval of that certain termination

agreement, a copy of which is annexed (in redacted form) hereto as Exhibit A (the "Termination

Agreement"), by and among Liberty Square CDO I, Limited, Liberty Square CDO I, Corp.,

Liberty Square CDO II, Limited, Liberty Square CDO II, Corp. (collectively, the "Issuers"),

LBHI, and LBFP (the Issuers, LBHI, and LBFP are each referred to as a "<u>Party</u>" and collectively as the "<u>Parties</u>").

2.    Entry of an order by this Court approving the Termination Agreement is a condition precedent to the effectiveness of the Termination Agreement.  As such, the Plan Administrator hereby submits to this Court for entry the proposed order annexed hereto as <u>Exhibit B</u> (the "<u>Order</u>") approving the Termination Agreement.

3.    The Termination Agreement, along with certain other proposed actions pending before this Court, will fully resolve litigation relating to derivatives transactions involving the Parties.  In order to effectuate the Termination Agreement in a timely manner, the Plan Administrator requests that the Termination Agreement be approved, subject to the satisfaction of the condition subsequent more fully described below.

## **<u>Background</u>**

4.    Commencing on September 15, 2008, and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries, including LBFP, commenced with this Court voluntary cases (together, the "<u>Chapter 11 Cases</u>") under chapter 11 of the Bankruptcy Code.

5.    On September 17, 2009, the Court entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts [ECF No. 5207] (the "<u>ADR Procedures Order</u>").

6.    On March 3, 2011, the Court entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties [ECF No. 14789], as amended by the Court on July 18, 2012 [ECF No. 29507] (the "<u>SPV ADR Procedures Order</u>").

3

7.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

**Jurisdiction**

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The ISDA Master Agreements and the Issuer Transaction Documents**

9.      Prior to LBFP's and LBHI's respective Commencement Dates, each of the Issuers issued several series of notes (collectively, the "Notes") pursuant to certain transaction documents, including trust indentures, specific to each Issuer (collectively, the "Issuer Transaction Documents").  Pursuant to the Issuer Transaction Documents, The Bank of New York Mellon Trust Company, National Association (the "Trustee") acts as successor indenture trustee for the benefit of the Secured Parties (as defined in the relevant Issuer Transaction Documents).

10.     Certain proceeds of the offerings of the Notes were used by each of the Issuers to, among other things, enter into interest rate hedge agreements, and interest rate swap transactions pursuant thereto, with LBFP.  Specifically, LBFP and Liberty Square CDO I, Ltd. entered into one or more derivatives transactions that were governed by a 1992 ISDA Master Agreement, dated as of March 2, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of LBFP by LBHI (collectively, the "LS I ISDA Master Agreement") with LBFP as swap counterparty.  LBFP and Liberty Square CDO II, Ltd. entered into one or more derivatives transactions that were governed by a 1992 ISDA Master Agreement, dated as of April 26, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of LBFP by LBHI (collectively, the "LS II ISDA

4

Master Agreement" and, together with the LS I ISDA Master Agreement, the "ISDA Master Agreements") with LBFP as swap counterparty.

11.     To secure the performance and payment of their respective obligations under the Notes and the ISDA Master Agreements, the Issuers each granted the Trustee, for the benefit of, among others, LBFP and the holders of the Notes (each, a "Noteholder" and, collectively, the "Noteholders"), an interest in all of the Issuers' respective assets, including funds received thereon and proceeds of the sale thereof (collectively, the "Collateral").

12.     The Collateral is insufficient to satisfy both the claims of all of the Noteholders and the claims of LBFP under the ISDA Master Agreements.  As set forth in detail below, a legal dispute exists regarding the enforceability of certain provisions in the Issuer Transaction Documents that purport to modify LBFP's right to receive payment priority solely as a result of the filing of a petition under the Bankruptcy Code (the "Modification Provisions"). The enforceability of the Modification Provisions directly affects LBFP's right to receive payment from the Collateral in full satisfaction of its claims under the ISDA Master Agreements.

13.     In response to LBFP's demand, the Trustee has reserved approximately $15 million pending resolution of the dispute over the Modification Provisions (such amount, the "Disputed Funds").

## The Adversary Proceeding and ADR Process

14.     On April 23, 2010, LBFP served an initial ADR Notice (the "ADR Notice") on the Issuers, the Trustee, and the investment advisor for the Issuers (the "Investment Advisor") pursuant to the Court's ADR Procedures Order, demanding payment of the amounts owed to LBFP under the ISDA Master Agreements without regard to the Modification Provisions and with default interest.

US_ACTIVE:\44213212\7\58399.0008

15.     On September 14, 2010, LBFP filed this adversary proceeding against the Trustee and the Issuers to challenge the Modification Provisions as unenforceable *ipso facto* clauses or as avoidable, preferential, or fraudulent transfers in violation of the Bankruptcy Code, Adversary Proc. No. 10-3544 (JMP) (the "Adversary Proceeding").

16.     On October 20, 2010, the Court issued an Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) [ECF No. 12199] (the "Stay"), thereby staying the Adversary Proceeding to give the parties to the Adversary Proceeding and other similar actions time to attempt to resolve their disputes consensually or in a Court-ordered ADR process.  The Stay has been extended, most recently to July 20, 2013, pursuant to the Court's Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), dated February 15, 2013 [ECF No. 34697].

17.     After the Trustee and the Investment Advisor asserted in the ADR that they had no authority to settle the dispute, on April 1, 2011, LBFP served an SPV Derivatives ADR Election and the ADR Notice on the Issuers, the Trustee, and the Investment Advisor pursuant to the SPV ADR Procedures Order.  On September 2, 2011 and January 27, 2012, the Issuers served an ADR Response and a Supplemental Response, respectively, and on September 26, 2011, and February 16, 2012, respectively, LBFP served an ADR Reply and a Reply to the Supplemental Response.

18.     On September 11, 2012, LBFP, the Issuers, and the Litigation Subcommittee of the Official Committee of Unsecured Creditors (the "Creditors' Committee") engaged in mediation pursuant to the SPV ADR Procedures Order (the "Mediation"), resulting in the settlement that was later memorialized in the Termination Agreement.

US_ACTIVE:\44213212\7\58399.0008

## The Interpleader Action

19.     The Termination Agreement compromises the legal dispute concerning the Modification Provisions.  The Trustee did not participate in the settlement discussions with Lehman and the Issuers, takes no position on the fairness of the settlement, and requires the direction of the Court as to the proper disposition of the Disputed Funds prior to making any distributions pursuant to the Termination Agreement.  Thus, the Trustee sought to file a counterclaim and crossclaim for interpleader and declaratory relief to (i) obtain a ruling as to which parties are entitled to receive the Disputed Funds held by the Trustee, and (ii) provide absent Noteholders with the opportunity to state a claim to the Disputed Funds or voice objection to the Termination Agreement (the "Interpleader Action").

20.     On January 17, 2013, the Plan Administrator, on behalf of LBFP, filed in the Adversary Proceeding the Notice of Lifting of Stay for Limited Purpose of Permitting the Filing of Interpleader Counterclaim and Responses Thereto [Adv. Proc. ECF No. 15], lifting the Stay only to permit (i) the Trustee to file the Interpleader Action, (ii) the parties claiming an interest in the Disputed Funds subject to the Interpleader Action to file responses to the Interpleader Action, (iii) the parties to the Interpleader Action and the Creditors' Committee to file pleadings relating to the Interpleader Action and the Termination Agreement, and (iv) the Court to address and rule on any of the foregoing.  On January 28, 2013, the Trustee filed the Interpleader Action [Adv. Proc. ECF No. 18].

21.     On February 21, 2013, the Trustee filed the Notice of Presentment of Order Granting Interpleader Relief [Adv. Proc. ECF No. 22], which provided that the Trustee would present a proposed Order Granting Interpleader Relief (the "Interpleader Order") to the Court for signature on March 1, 2013.  The Court has since requested a declaration on behalf of the Trustee to support the findings of facts set forth in the Interpleader Order, which was filed by

7

the Trustee on March 11, 2013 [Adv. Proc. ECF No. 28].  The Court approved the Trustee's

request for entry of the Interpleader Order at the hearing on March 13, 2013.

22.    The Interpleader Order provides, among other things, the following:[1]

- Cede & Co. ("Cede"), as nominee of The Depository Trust Company ("DTC"), the registered owner of the Notes, shall provide notice of the Interpleader Action, Termination Agreement and Interpleader Order to the financial institutions that constitute DTC's "Participants" and on whose behalf the Notes are held by DTC.

- all parties and all other individuals or entities claiming a right to the Disputed Funds (the "Contesting Parties") shall appear and assert their respective claims to the Disputed Funds and their respective rights under the Issuer Transaction Documents for each of the Issuers, and shall state any objections to the Termination Agreement within thirty (30) calendar days of the date that a copy of the Interpleader Order is served upon Cede (the "Interpleader Deadline") or be forever barred and precluded from asserting such objection or claim against the Trustee, the Issuers, Lehman or the Disputed Funds.

- all parties and all other interested persons are enjoined from instituting or pursuing any proceedings against the Trustee for the recovery of the Disputed Funds.

- the Trustee shall distribute amounts in each Interpleader Reserve Fund (as defined in the Interpleader Order) as directed by the Court upon final judgment approving the Termination Agreement or otherwise determining the respective interests of the parties and all other interested persons in the Disputed Funds for each of the Issuers.

23.    The Parties expect this Court to enter the Interpleader Order on or around

March 13, 2013, at which time Cede will be served with a copy of the so-ordered Interpleader

Order.  Accordingly, the Interpleader Deadline will expire on or around April 12, 2013.

---

[1] The descriptions of documents set forth herein are being provided as summaries only.  In the case of an inconsistency between the summary herein and the documents, the terms of the documents shall control.

US_ACTIVE:\44213212\7\58399.0008

## The Termination Agreement

24.     The Termination Agreement reflects the settlement terms reached in the Mediation with respect to the claims asserted by LBFP in the ADR Notice and the Adversary Proceeding.

25.     The Termination Agreement includes the following salient terms:

- Upon the effective date, the settlement payment will be made on behalf of the Issuers by the Trustee to LBFP.[2]

- The Parties will exchange a mutual release of all claims related to the ISDA Master Agreements and the Adversary Proceeding.

- Lehman and any of the other debtors in these Chapter 11 Cases (collectively, the "Chapter 11 Estates") may object to any proofs of claim filed against them in relation to the ISDA Master Agreements, and, pending the filing of such objections, any such proofs of claim and related questionnaires shall be deemed amended to reflect that any amounts sought from the Chapter 11 Estates is $0.0. The Issuers agree not to challenge such objections, if filed.

- Lehman will dismiss the Adversary Proceeding with prejudice.

- Each Party will bear its own costs and expenses relating to the ADR process (except as provided in paragraph 15 of the ADR Procedures Order), the Adversary Proceeding, this Motion, and the Termination Agreement.

26.     The Court already has authorized the Plan Administrator to enter into settlements such as the one at issue here pursuant to section 6.1(b)(iv) of the Plan, which provides the Plan Administrator with authority to compromise all "Litigation Claims" in the Plan

---

[2] In keeping with paragraphs 4 and 13 of the SPV ADR Procedures Order and the confidentiality provisions of the Termination Agreement, and due to LBHI and LBFP's desire to keep the economic terms of the settlement confidential, the settlement amount has been redacted from the Termination Agreement annexed as Exhibit A. The Parties will provide a non-redacted version of the Termination Agreement to the Court, the U.S. Trustee for Region 2 (the "U.S. Trustee"), the Creditors' Committee, and any other party directed by the Court. A non-redacted version of the Termination Agreement also will be provided by Lehman on behalf of the Trustee to the Noteholders who agree in writing to maintain the confidentiality of the settlement amount and to abide by the confidentiality provisions of the SPV ADR Procedures Order and the Termination Agreement.

Administrator's discretion without Court approval.   The Issuers required and the Trustee requested, however, that the Termination Agreement include, as a condition precedent to the effectiveness of the Termination Agreement, a provision requiring this Court's approval of such agreement.   The Plan Administrator, therefore, files this Motion for the purpose of complying with that provision.

27.    Although the Interpleader Deadline has not yet passed, it is critical that the Parties obtain approval of the Termination Agreement as soon as possible because the Notes issued by Liberty Square CDO I, Limited are scheduled to mature on April 15, 2013.   If the Termination Agreement is not approved by the Court in advance of such Notes' stated maturity, thereby permitting a distribution of the Disputed Funds, it is likely that there will be a payment default on the Notes issued by Liberty Square CDO I, Limited.   In that case, the Parties' ability to finalize a settlement of their claims in an efficient and timely manner might be jeopardized.

28.    Thus, the Plan Administrator requests that the Court approve the Termination Agreement now, so that the settlement may be effectuated prior to the forthcoming maturity of certain of the Notes.   In order to provide assurance to the Court that the consummation of the Termination Agreement is appropriate, the Plan Administrator will file a certification (the "Certification") on the docket in LBHI's Chapter 11 Case and the Adversary Proceeding upon the expiration of the Interpleader Deadline, declaring that no Contesting Party, other than a Party, has appeared and asserted a claim, before the expiration of the Interpleader Deadline, to the Disputed Funds, or a right to the Disputed Funds under the Issuer Transaction Documents for either of the Issuers, or stated any objection to the Termination Agreement.   If any Contesting Party, other than a Party, has asserted a claim or any objection, then the

US_ACTIVE:\44213212\7\58399.0008

Termination Agreement will not become effective at that time and the Parties will consider next steps.

### The Termination Agreement Is in Lehman's Best Interests and Should Be Approved

29.    The Plan Administrator submits that the Termination Agreement is in Lehman's best interests and should be approved under section 105 of the Bankruptcy Code.

30.    The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code.  Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."  Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets.  *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances.").

31.    The Second Circuit has acknowledged that section 105 confers broad powers on bankruptcy courts:

> 11 U.S.C. § 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of powers in the administration of a bankruptcy case.  The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid at the exercise of their jurisdiction . . . .

*Casse v. Key Nat'l Bank Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (citation omitted).

32.    Accordingly, this Court has authority under the broad equitable powers of the Bankruptcy Code, as set forth in section 105(a), to approve the Termination Agreement.

33.    The use of the Court's equitable authority is justified and appropriate here. The approval of the Termination Agreement by this Court is a condition set forth in the Termination Agreement.  LBHI and LBFP have determined in their business judgments that the

US_ACTIVE:\44213212\7\58399.0008

effectiveness of the Termination Agreement is in the best interests of their respective estates and unsecured creditors.  Absent consummation of the Termination Agreement, the Parties will need to proceed with litigation, which could include time-consuming and expensive legal proceedings and multiple potential appeals and the risk of loss.  The Termination Agreement enables Lehman to avoid spending significant amounts of limited resources and allows LBFP to collect the settlement payment promptly instead of collecting a judgment possibly years into the future.  The Creditors' Committee supports the Termination Agreement and this Motion.  Accordingly, the Plan Administrator requests that the Termination Agreement be approved.

### Notice

34.    No trustee has been appointed in the Chapter 11 Cases.  The Plan Administrator has served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the Issuers; (vi) the attorneys for the Trustee; (vii) the attorneys for the Creditors' Committee; (viii) the attorneys for Cede; and (ix) all parties who have requested notice in the Chapter 11 Cases.  The Plan Administrator submits that no other or further notice need be provided.

35.    No previous request for the relief sought herein has been made by the Plan

Administrator to this or any other Court.

        WHEREFORE the Plan Administrator on behalf of LBHI and LBFP respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
      March 13, 2013

                         /s/ Jacqueline Marcus
                         Richard L. Levine
                         Jacqueline Marcus

                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153
                         Telephone: (212) 310-8000
                         Facsimile: (212) 310-8007

                         *Attorneys for Lehman Brothers Holdings Inc.*
                         *and Lehman Brothers Financial Products Inc.*

US_ACTIVE:\44213212\7\58399.0008

## Exhibit A

**(Redacted Termination Agreement)**

## TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of November 16, 2012 by and among Liberty Square CDO I, Ltd. ("LS I"), Liberty Square CDO I, Corp. ("LS I Corp."), Liberty Square CDO II, Ltd. ("LS II"), Liberty Square CDO II, Corp. ("LS II Corp.") (LS I, LS I Corp., LS II, and LS II Corp. collectively, "LS"), Lehman Brothers Financial Products Inc. ("Lehman"), acting through its Plan Administrator, Lehman Brothers Holdings Inc. (solely in its capacity as such, the "Plan Administrator"), and Lehman Brothers Holdings Inc. (solely in its capacity as credit support provider of Lehman, "Holdings"), also acting through the Plan Administrator (each of the foregoing a "Party" and collectively the "Parties"). For the avoidance of doubt, whenever Lehman or Holdings is required hereunder to take any actions or assume any obligations, the Plan Administrator shall cause Lehman or Holdings, as the case may be, to take such actions or assume such obligations.

## RECITALS:

WHEREAS, (i) LS I and Lehman entered into one or more transactions (each a "Transaction" and, together, the "LS I Transactions") that were governed by a 1992 ISDA Agreement, dated as of March 2, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "LS I Agreement Documents"), and (ii) LS II and Lehman entered into one or more transactions (each a "Transaction" and, together, the "LS II Transactions") that were governed by a 1992 ISDA Agreement, dated as of April 26, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the " LS II Agreement Documents" and, together with the LS I Agreement Documents, the "Agreement Documents").

WHEREAS, (i) substantially all of LS I's assets were held in trust pursuant to the terms of the indenture dated March 14, 2001, by and among LS I and JPMorgan Chase Bank, N.A. (f/k/a The Chase Manhattan Bank) as trustee (the "LS I Indenture"), and (ii) substantially all of LS II's assets were held in trust pursuant to the terms of the indenture dated May 8, 2001, by and among LS II and such bank as trustee (the "LS II Indenture") (and, together with the LS I Indentures, the " LS Indentures").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman (collectively, the "Chapter 11 Entities"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of October 22, 2008.

WHEREAS, on September 14, 2010, Lehman filed an action against The Bank of New York Mellon Trust Company, National Association, as successor trustee (the "Trustee") under the LS Indentures, and LS to challenge certain contractual provisions in the LS Indentures as unenforceable *ipso facto* clauses or as avoidable, preferential, or fraudulent transfers in

violation of the Bankruptcy Code, Adversary Proc. No. 10-3544 (JMP) (the "Adversary Proceeding").

WHEREAS, on March 30, 2011, the court having jurisdiction over the Bankruptcy Cases (the "Bankruptcy Court") entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, as amended by the Bankruptcy Court on July 18, 2012 (the "SPV ADR Order").

WHEREAS, pursuant to the SPV ADR Order, Lehman served LS with an SPV Derivatives ADR Election Notice, to which LS responded, and Lehman replied (with the prior pleadings and the subsequent mediation, the "ADR Proceeding").

WHEREAS, the Trustee has placed $10,700,000 in escrow on behalf of LS I and $3,900,000 in escrow on behalf of LS II pending the resolution of the ADR Proceeding (such amounts collectively, the "Escrowed Funds").

WHEREAS, on December 6, 2011, the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. And Its Affiliated Debtors (the "Plan") and the Plan became effective on March 6, 2012.

WHEREAS, pursuant to Sections 13.1 and 6.1 of the Plan, Lehman Brothers Holdings Inc. was appointed as Plan Administrator for each of the Chapter 11 Entities, including Lehman, and is authorized on behalf of each of the Chapter 11 Entities, including Lehman, to prosecute, elect not to pursue, compromise, settle, abandon, dismiss or otherwise dispose of all causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever assertable by each of the Chapter 11 Entities, including Lehman.

WHEREAS, as of the date hereof, as a result of the ADR Proceeding, the Parties have agreed on a settlement including payments by the Trustee to Lehman on behalf of LS I in the amount of $███████ and on behalf of LS II in the amount of $██████, for an aggregate amount of $█████████ (the "Settlement Amount") in respect of any and all claims arising under or related to the Agreement Documents and the LS I Transactions and the LS II Transactions.

WHEREAS, in accordance with Section 14.15 of the LS Indentures, the Settlement Amount shall be recoverable only from and to the extent of the collateral under the LS Indentures.

WHEREAS, as part of the settlement, the Parties wish to expunge and release any and all proofs of claim, whether liquidated, unliquidated or contingent in nature (the "Related Claims"), filed by LS and the Trustee with the Bankruptcy Court in respect of the Agreement Documents and the LS I Transactions and the LS II Transactions.

WHEREAS, as part of the settlement, Lehman has agreed to withdraw its objection to the scheduled distribution by Liberty Square I on October 15, 2012 and the Parties expect such distribution to go forward.

2

WHEREAS, in light of the settlement between LS, Lehman, and Holdings, the Trustee has determined to interplead the Escrowed Funds so the Bankruptcy Court can direct how such funds should be applied (the "Interpleader").

NOW, THEREFORE, in consideration of the recitals set forth above and the promises made herein, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Payment and Release.  LS shall instruct the Trustee to pay, and the Trustee shall pay, the Settlement Amount, without deduction, set-off or counterclaim, to Lehman within five (5) business days of the date this Termination Agreement is effective pursuant to Section 4 of this Termination Agreement.  In consideration of each other Party's execution of this Termination Agreement, the settlement, and the payment of the Settlement Amount without deduction, set-off or counterclaim to Lehman, each Party, on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges, and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, principals, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, obligations, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have, or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.  For the avoidance of doubt, the foregoing release does not include the Parties' obligations under this Termination Agreement.

Section 2.    Representations.  Each Party represents and warrants to each other Party that (i) the execution, delivery, and performance by such Party of this Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose new or additional facts material to the Agreement Documents or this Termination Agreement, and (vii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown.  Additionally, Lehman and Holdings represent and

3

warrant to LS that this Termination Agreement is being entered into in accordance with, and pursuant to, the authority granted to Lehman and the Plan Administrator by the Plan. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into this Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

Section 3.    <u>Execution in Counterparts</u>.    This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 4.    <u>Effectiveness</u>.    This Termination Agreement shall become effective on the date following entry of an order by the Bankruptcy Court, including but not limited to in the form of a "so ordered" stipulation, approving this Termination Agreement (the "Approval Order") that becomes final because the time to appeal by any party with standing to appeal has run with no appeal being filed or, if appealed, is affirmed and such affirmance is not subject to further appeal or the time for the appeal has run with no further appeal being filed (a "Final Order"). For the avoidance of doubt, any Transactions that are not already terminated according to their terms will terminate automatically on the effective date of this Termination Agreement. Unless and until the parties have executed this Termination Agreement and the Bankruptcy Court has entered the Approval Order and it has become a Final Order, the Termination Agreement shall remain ineffective. In the event that the Bankruptcy Court does not enter an Approval Order or the Approval Order does not become a Final Order, this Termination Agreement shall be null and void and of no force and effect and it shall not have any res judicata or collateral estoppel effect against the Parties, and each of the Parties' respective interests, rights, remedies, and defenses shall be restored as if this Termination Agreement had never been executed.

Section 5.    <u>Notice of Settlement</u>.    Within seven (7) business days after its execution of this Termination Agreement, LS shall direct the Trustee to inform holders of notes issued by LS ("Noteholders") of this Termination Agreement and the Interpleader if filed (the "Noteholder Notification"). Such Noteholder Notification will (i) be sent to Noteholders at least thirty (30) calendar days prior to the Bankruptcy Court's scheduled hearing of any motion for the entry of an Approval Order, (ii) be made through a clearing service such as the Depository Trust Company or other means determined by the Trustee, (iii) contain a copy of the Termination Agreement that redacts the Settlement Amount, (iv) contain a copy of the Interpleader if filed, and (v) inform Noteholders that they are entitled to a non-redacted copy of the Termination Agreement upon written request to the Trustee and entry into an appropriate confidentiality agreement.

Section 6.    <u>Further Assurances</u>.    The Parties agree that they (i) shall cooperate in determining the best procedure for and use reasonable best efforts in seeking entry of the Approval Order, (ii) shall execute and deliver, or shall cause to be executed and delivered, such

4

documents and other papers and shall take, or shall cause to be taken, such further actions as may be reasonably required to carry out the provisions of this Termination Agreement and give effect to the transactions contemplated by the Termination Agreement; (iii) shall refrain from taking any actions that could reasonably be expected to impair, delay, or impede the entry of the Approval Order; and (iv) without limiting the foregoing, shall use their reasonable best efforts to cause all of the conditions to the obligations of themselves and the other Party hereunder to be satisfied. The Parties further agree that if the Trustee does not file the Interpleader, the Parties will use reasonable best efforts to obtain the Approval Order by other procedural means.

Section 7.    Related Claims.    The Parties acknowledge and agree that Lehman, Holdings, and any of the Chapter 11 Entities may object through a filing with the Bankruptcy Court to any proofs of claim filed against any of them in relation to the Agreement Documents or the Transactions. Pending the filing of such objections, any such proofs of claim and related Derivatives Questionnaires and/or Guarantee Questionnaires shall be deemed amended to reflect that any amounts sought from any of the Chapter 11 Entities is $0.0. LS agrees not to challenge or object to such objections if filed.

Section 8.    Dismissal of Adversary Proceeding.    Lehman agrees that, within 30 days after the Effective Date, it will dismiss the Adversary Proceeding with prejudice if the Adversary Proceeding is still pending.

Section 9.    Governing Law.    This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Termination Agreement or to enforce the terms hereof and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 10.    Special Provision for Unknown Claims.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 1. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 11.    Confidentiality.    The Parties shall not disclose the Settlement Amount ("Confidential Information") to any person other than to their directors, officers, employees, counsel, Wellington Asset Management (solely in its role as Investment Manager of LS), and other advisors (hereinafter, "Related Party" or collectively, the "Related Parties") (it being understood that the Parties shall ensure that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and that the Confidential Information is subject to the SPV ADR Order, and will be directed to maintain the confidentiality of such

Confidential Information), except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws, provided that the Confidential Information may be disclosed pursuant to the terms of the SPV ADR Order to Noteholders who agree in writing to maintain the confidentiality of the Confidential Information and to abide by the confidentiality provisions of the SPV ADR Order. Notwithstanding the foregoing, the Settlement Amount shall be disclosed to the Bankruptcy Court, the Office of the United States Trustee for Region 2, the Official Committee of Unsecured Creditors, and any other party directed by the Bankruptcy Court. The Parties acknowledge and agree that any motion or stipulation publicly filed with the Bankruptcy Court for purposes of obtaining entry of the Approval Order shall include a copy of this Termination Agreement from which the Settlement Amount shall be redacted and that the Parties shall endeavor to keep the Settlement Amount out of the public record.

If any Party or any Related Party becomes legally obligated (whether by court or regulatory order or otherwise) to disclose the Confidential Information, that Party or such Related Party, as the case may be, will promptly provide the other Parties, if permitted by law, with notice of such proposed disclosure so that such other Parties may seek a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, the Party or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and the Party or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

Section 12.    Successors and Assigns. The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 13.    Amendment. This Termination Agreement may only be amended, modified, superseded, or canceled and any of the terms, covenants, representations, warranties, or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 14.    Entire Agreement. This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 15.    Capacity. Each of the Parties acknowledges and agrees that Lehman Brothers Holdings Inc. is executing this Termination Agreement on behalf of Lehman in its capacity as Plan Administrator of Lehman and shall not be subject to any liability or responsible to take any action on its own behalf by virtue of signing this Termination Agreement in such capacity.

Section 16.    Construction. This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

LIBERTY SQUARE CDO I, LIMITED

By: _____
Name:    **Martin Couch**
Title:    Director

LIBERTY SQUARE CDO I, CORP.

By: _____
Name:    Donald J. Puglisi
Title:    President

LIBERTY SQUARE CDO II, LIMITED

By: _____
Name:    **Martin Couch**
Title:    Director

LIBERTY SQUARE CDO II, CORP.

By: _____
Name:    Donald J. Puglisi
Title:    President

7

LEHMAN BROTHERS FINANCIAL PRODUCTS
INC.

By: Lehman Brothers Holdings Inc., as Plan
Administrator

By: _____
Name: Robert Hershey
Title: Senior Vice President

LEHMAN BROTHERS HOLDINGS INC.

By: Lehman Brothers Holdings Inc., as Plan
Administrator

By: _____
Name: Robert Hershey
Title: Senior Vice President

## **Exhibit B**

**(Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>                               Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br><br>                               Plaintiff,<br><br>             -against-<br><br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br><br>                             Defendants. | Adversary Proceeding<br>No. 10-03544 (JMP) |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br><br>                         Counterclaimant,<br><br>            - against -<br><br>LEHMAN BROTHERS FINANCIAL PRODUCTS INC., LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO II, LIMITED, LIBERTY SQUARE CDO II, CORP.,<br><br>         Counterclaim and Crossclaim Defendants,<br><br>            - and-<br><br>CEDE & CO., as nominee of THE DEPOSITORY TRUST COMPANY, as the holder of certain notes,<br><br>         Additional Crossclaim Defendants. | |

**ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE APPROVING THE TERMINATION AGREEMENT BY AND AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO I, CORP., <u>LIBERTY SQUARE CDO II, LIMITED, AND LIBERTY SQUARE CDO II, CORP.</u>**

Upon the motion, dated March 13, 2013 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, on behalf of LBHI and Lehman Brothers Financial Products Inc. ("LBFP"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of the Termination Agreement by and among LBFP, LBHI, Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp. (the Liberty Square entities, collectively, the "Issuers"), relating to certain derivatives transactions, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the Issuers; (vi) the attorneys for the Trustee; (vii) the attorneys for the Creditors' Committee; (viii) the attorneys for Cede; and (ix) all parties who have requested notice in the Chapter 11 Cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

US_ACTIVE:\44213212\7\58399.0008

the relief sought in the Motion is in the best interests of LBHI, LBFP, their respective estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 105(a) of the Bankruptcy Code, the Termination Agreement is approved, provided that the Plan Administrator shall not be authorized to perform under the Termination Agreement unless it files a certification (the "Certification") on the docket in LBHI's Chapter 11 Case and the Adversary Proceeding upon the expiration of the Interpleader Deadline, declaring that no Contesting Party, other than a Party, has appeared and asserted a claim, before the expiration of the Interpleader Deadline, to the Disputed Funds, or a right to the Disputed Funds under the Issuer Transaction Documents for either of the Issuers, or stated any objection to the Termination Agreement; and it is further

ORDERED that, upon the Plan Administrator's filing of the Certification, the Trustee is authorized to and shall distribute the Disputed Funds in accordance with and pursuant to the terms set forth in the Termination Agreement; and it is further

ORDERED that, upon the Plan Administrator's filing of the Certification, the Interpleader Action shall be deemed resolved; and it is further

ORDERED that, in the event that the Plan Administrator fails to file the Certification upon the expiration of the Interpleader Deadline, this Court's approval of the Termination Agreement shall be deemed ineffective, and each of the Parties' respective rights, remedies and defenses with respect to the Termination Agreement and the ISDA Master

3

Agreements shall be restored without prejudice as if this Order had never been entered; and it is further

ORDERED that, subject to compliance with the terms of this Order, the Parties are authorized to complete and deliver all instruments and documents and take all other actions as may be necessary or appropriate to execute, implement, consummate and effectuate the Termination Agreement; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      March __, 2013

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\44213212\7\58399.0008