ORRICK, HERRINGTON & SUTCLIFFE LLP
Steven J. Fink
51 West 52nd Street
New York, New York 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

and

Thomas C. Mitchell
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

*Counsel for Golden State Tobacco Securitization Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | |
|---|---|
| **In re:** | |
| | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** | |
| | **Case No. 08-13555 (JMP)** |
| Debtor. | |
| | **(Jointly Administered)** |

------------------------------------------------------------ x

**RESPONSE OF GOLDEN STATE TOBACCO SECURITIZATION
CORPORATION TO DEBTORS' THREE HUNDRED
NINETY-FOURTH OMNIBUS OBJECTION TO CLAIMS (VALUED
DERIVATIVE CLAIMS): CLAIMS NUMBERS 67684, 67685, 67686 AND 67687**

Golden State Tobacco Securitization Corporation ("**Golden State**"), by and through its undersigned counsel, hereby submits this response (the "**Response**") to the Debtors' Three Hundred Ninety-Fourth Omnibus Objection to Claims (Valued Derivative Claims) filed on February 15, 2013 as Docket No. 34728 (the "**Objection**") with respect to Claims Numbers 67684, 67685, 67686 and 67687. As described herein, the Objection seeks to reduce Golden

State's claims in the aggregate amount of more than $107 million, but does not provide any evidentiary support or other valid basis for such a reduction. The Objection should be overruled and Golden State's claims should be allowed in full. In support of this Response, Golden State respectfully states as follows:

## BACKGROUND

1. On October 3, 2008 (the "**Petition Date**"), Lehman Brothers Special Financing Inc. ("**LBSF**" or the "**Debtor**") filed its Chapter 11 petition.

2. LBSF's petition was preceded by the Chapter 11 petition of Lehman Brothers Holdings Inc. ("**LBHI**" or, collectively with LBSF, the "**Debtors**")

3. Golden State is a special purpose trust established as a not-for-profit corporation by Article 7 (commencing with Section 63049) of Chapter 2 of Division 1 of Title 6.7 of the California Government Code and duly incorporated under the laws of the State of California (the "**State**") for the purposes of purchasing, from the State, the State's rights to payments from tobacco manufacturers pursuant to a settlement between the tobacco manufacturers and the states, and issuing bonds secured by such payments.

### A. THE 2003 RESERVE FUND AGREEMENT

4. Golden State is a party to that certain Reserve Fund Agreement dated January 29, 2003 among Golden State, The Bank of New York Mellon Trust Company, N.A., as successor in interest to BNY Western Trust Company, as trustee, and LBSF, as modified by an Amendment Agreement executed on March 14, 2007 (collectively, the "**2003 Reserve Fund Agreement**").

5. LBHI acts as guarantor for the 2003 Reserve Fund Agreement pursuant to the Guarantee of Lehman Brothers Holdings Inc., which was executed in conjunction with the 2003 Reserve Fund Agreement and the Guarantee of Lehman Brothers Holdings Inc. executed in

connection with the Amendment Agreement. In the event that LBSF does not satisfy its obligations under the 2003 Reserve Fund Agreement, LBHI is unconditionally obligated to satisfy those obligations.

6. The 2003 Reserve Fund Agreement was entered into in conjunction with the issuance by Golden State of its $3,000,000,000 Tobacco Settlement Asset-Backed Bonds, Series 2003A (the "**Series 2003 Bonds**"). The 2003 Reserve Fund Agreement requires LBSF to cause Lehman Brothers, Inc., as qualified dealer, to deliver securities to the bond trustee the business day immediately preceding each June 1 (each, a "**2003 Reserve Fund Agreement Deposit Date**") that will produce a rate of return on such securities for the period from, and including, the 2003 Reserve Fund Deposit Date to, but excluding, the immediately succeeding bond payment date (June 1 a year later) equal to a guaranteed rate of 4.652%. The contractual termination date for the 2003 Reserve Fund Agreement is one business day prior to June 1, 2042.

### B. THE 2007 RESERVE FUND AGREEMENT

7. Golden State also entered into a Reserve Fund Agreement dated March 14, 2007 among Golden State, The Bank of New York Mellon Trust Company, N.A., as successor in interest to The Bank of New York Trust Company, N.A., as trustee, and LBSF (the "**2007 Reserve Fund Agreement**").

8. LBHI acts as guarantor for the 2007 Reserve Fund Agreement pursuant to the Guarantee of Lehman Brothers Holdings Inc. executed in conjunction with the 2007 Reserve Fund Agreement. Under the terms of the Guarantee, in the event that LBSF does not satisfy its obligations under the 2007 Reserve Fund Agreement, LBHI is unconditionally obligated to satisfy those obligations.

3

9. The 2007 Reserve Fund Agreement was entered into in conjunction with the issuance by Golden State of its $4,446,826,391.40 Tobacco Settlement Asset-Backed Bonds, Series 2007 (the "**Series 2007 Bonds**"). The 2007 Reserve Fund Agreement requires LBSF to cause Lehman Brothers, Inc., as qualified dealer, to deliver securities to the bond trustee the business day immediately preceding each June 1 and December 1 (each, a "**2007 Reserve Fund Agreement Deposit Date**") which will produce a rate of return on such securities for the period from, and including, the 2007 Reserve Fund Agreement Deposit Date to, but excluding, the immediately succeeding bond payment date (the following June 1 and December 1) equal to the guaranteed rate of 4.792%. The contractual termination date for the 2007 Reserve Fund Agreement is one business day prior to June 1, 2036.

### C. THE DEBTORS' REJECTION OF THE 2003 AND 2007 RESERVE FUND AGREEMENTS

10. On September 1, 2011 (the "**Rejection Date**"), this Court entered the Second Order Granting Motion for Authorization to Reject Certain Executory Contracts [Dkt. No. 19642] (the "**Rejection Order**"). Pursuant to the Rejection Order, the 2003 Reserve Fund Agreement and the 2007 Reserve Fund Agreement were rejected as of the Rejection Date.

11. The Rejection Order permitted the filing of proofs of claim for rejection damages in compliance with the terms of the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof, and Approving the Proof of Claim Form, entered on July 2, 2009 [Dkt. No. 4271] (the "**Bar Date Order**").

12. In accordance with the Federal Rules of Bankruptcy Procedure, the Rejection Order, the Bar Date Order, and all other applicable rules and orders of this Court, Golden State

4

appropriately determined its damages and timely filed the following proofs of claim in connection with the Series 2003 Bonds and the Series 2007 Bonds:

a. Claim number 67687 for rejection damages as of the Rejection Date against LBSF for $139,349,138.58 plus (i) interest at the Default Rate, as defined in the 2003 Reserve Fund Agreement, and (ii) attorneys fees and other costs as permitted by the 2003 Reserve Fund Agreement;

b. Claim number 67686 against LBHI for its obligations under the guarantee in the amount of $139,349,138.58 plus (i) interest at the Default Rate, as defined in the 2003 Reserve Fund Agreement, and (ii) attorneys fees and other costs as permitted by the 2003 Reserve Fund Agreement (claims numbers 67687 and 67686 are collectively referred to herein as the "**Series 2003 Bond Rejection Damages Claims**");

c. Claim number 67684 for rejection damages as of the Rejection Date against LBSF for $49,272,660.68 plus (i) interest at the Default Rate, as defined in the 2007 Reserve Fund Agreement, and (ii) attorneys fees and other costs as permitted by the 2007 Reserve Fund Agreement; and

d. Claim number 67685 against LBHI for its obligations under the guarantee in the amount of $49,272,660.68 plus (i) interest at the Default Rate, as defined in the 2007 Reserve Fund Agreement, and (ii) attorneys fees and other costs as permitted by the 2007 Reserve Fund Agreement (claims numbers 67684 and 67685 are collectively referred to herein as the "**Series 2007 Bond Rejection Damages Claims**," and together with the Series 2007 Bond Rejection Damages Claims, the "**Rejection Damages Claims**").

13. On or before October 12, 2011, Golden State uploaded to the Debtors' website the principal documents to substantiate the Rejection Damages Claims and the required derivative and guarantee questionnaires that further support the Rejection Damages Claims.

14. On February 15, 2013, the Debtors filed their Objection to the Rejection Damages Claims. By the Objection, the Debtors seek to reduce the Series 2003 Bond Rejection Damages Claims to $55,729,039.00 and the Series 2007 Bond Rejection Damages Claims to $25,115,401.00 (collectively, the "**Reduced Amounts**").[1]

## ARGUMENT

### A. APPLICABLE LEGAL STANDARD

15. Federal Rule of Bankruptcy Procedure 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Thus, the objecting debtor bears the initial burden of persuasion. If, however, the debtor "produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency," then the burden shifts back to the claimant. *In re Oneida*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, *Peter J. Solomon Co. v. Oneida*, No. 09-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); *see also In re Jensen*, No. 09-14830, 2010 Bankr. LEXIS

---

[1] Based on the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors and the Court-Ordered Claims Hearing Procedures and Alternative Dispute Resolution Procedures attached thereto, dated April 19, 2010 [Dkt. No. 8474], it is Golden State's understanding that the hearing on the Objection currently scheduled for March 28, 2013 will not be an evidentiary hearing. *See* Court-Ordered Claims Hearing Procedures and Alternative Dispute Resolution Procedures ¶ 4(a) ("The Debtors shall schedule a Claims Hearing for a Contested Claim as follows: (a) For a non-evidentiary hearing to address the legal sufficiency of the particular Contested Claim and whether the Contested Claim states a claim against the asserted Debtor under Bankruptcy Rule 7012 . . . ."). Golden State nonetheless will provide the Court with copies of the 2003 and 2007 Reserve Fund Agreements, the guarantees executed by LBHI in connection therewith, the Rejection Damages Claims and the questionnaires if doing so would be helpful to the Court at this stage of the proceeding.

229, *7-8 (Bankr. S.D.N.Y. Feb. 3, 2010) ("The party objecting to the claim has the burden of introducing evidence sufficient to rebut the presumption of validity. Debtor must marshal evidence sufficient to demonstrate a true dispute with probative force equal to the contents of the Claim."). At that point, the claimant must prove by a preponderance of the evidence that under applicable law its claim should be allowed. *Oneida*, 400 B.R. at 389.

16.     As a result of this applicable legal standard, a debtor cannot overcome the *prima facie* validity of a properly filed proof of claim simply by alleging that in its opinion, the claim is too large and should therefore be reduced. The mere filing of an objection, without the requisite evidence, is not sufficient to overcome the presumption of validity. *In re Smith*, 419 B.R. 622, 627-28 (Bankr. E.D. Va. 2008).

### B. THE DEBTORS HAVE FAILED TO PROVIDE ANY EVIDENCE OR ANALYSIS TO REBUT GOLDEN STATE'S REJECTION DAMAGES CLAIMS

17.     The Objection seeks to reduce the Series 2003 Bond Rejection Damages Claim to $55,729,039.00[2] and the Series 2007 Bond Rejection Damages Claim to $25,115,401.00[3] but provides no explanation as to how the Plan Administrator calculated these Reduced Amounts, makes no effort to demonstrate why the Debtors believe that the Rejection Damages calculated by Golden State are wrong, and provides no evidentiary support at all for the Debtors' position.[4] The Objection does not mention or discuss Golden State's calculations, and it does not point to

---

[2] A reduction of sixty percent (60%) of the claimed amount.

[3] A reduction of forty-nine percent (49%) of the claimed amount.

[4] Pursuant to the Rejection Order, the Debtors had the option to deliver to Golden State within ten (10) business days after the date of the Rejection Order a statement that described in reasonable detail the calculations used to determine the damages arising under the 2003 and 2007 Reserve Fund Agreements as a result of LBSF's rejection (a "**Damages Calculation**"). Rejection Order, p.2. The Debtors did not deliver a Damages Calculation to Golden State. Accordingly, as required by the Rejection Order, Golden State appropriately determined its damages and timely filed its Rejection Damages Claims, including the relevant supporting documentation, and uploaded the required derivative and guarantee questionnaires to the Debtors' website. Rejection Order, p. 2-3.

any errors in Golden State's calculations. Instead, the Debtors rely on the self-serving and conclusory statement that "the asserted claim amount is greater than the fair, accurate, and reasonable value of the claim as determined by the Plan Administrator after a review of the supporting documentation provided by the claimants and the LBHI and LBSF books and records." Objection ¶ 14. The Objection provides no evidence that this review was completed, no substantiation of the review process, no documentation of the calculations used, and no justification for reducing Golden State's Series 2003 Bond Rejection Damages Claim and Series 2007 Bond Rejection Damages Claim by approximately $83 million and $24 million, respectively.

18. The Debtors – who have not identified a single disputed fact – have failed to provide the "sufficient evidence" that is required "to rebut" the validity of "the claimant's *prima facie* case." *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 Bankr. LEXIS 660, *15 (Bankr. S.D.N.Y. Feb. 20, 2007).[5] They have also failed to provide any analysis. Golden State properly determined the damages it suffered from the rejection of the 2003 Reserve Fund Agreement and the 2007 Reserve Fund Agreement. Thus, the Rejection Damages Claims should be allowed in full.

## CONCLUSION

19. Accordingly, and for the reasons set forth herein, Golden State respectfully requests that the Court (i) overrule the Objection, (ii) allow the Rejection Damages Claims in full, and (iii) grant such other relief as the Court deems just and proper.

---

[5] In their Objection the Debtors reference the Declaration of Gary H. Mandelblatt (the "**Mandelblatt Declaration**"). Objection ¶ 16. The Mandelblatt Declaration, however, does nothing more than provide a general outline of the valuation methodology LBSF proposed to use to assess a wide array of claims. The Mandelblatt Declaration does not specifically address the valuation of Golden's State's Rejection Damages Claims, and it does nothing to explain how the Debtors calculated the Reduced Amounts. Accordingly, the Mandelblatt Declaration has no probative value in evaluating whether Golden State's Rejection Damages Claims should be allowed in full.

8

| | |
|---|---|
| Dated: March 14, 2013<br>New York, New York | Respectfully submitted,<br><br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br><br>By: */s/ Steven J. Fink*<br>Steven J. Fink<br>51 West 52nd Street<br>New York, New York 10019-6142<br>Telephone: (212) 506-5000<br>Facsimile: (212) 506-5151<br><br>and<br><br>Thomas C. Mitchell<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105-2669<br>Telephone: (415) 773-5700<br>Facsimile: (415) 773-5759<br><br>*Counsel for Golden State Tobacco Securitization Corporation* |