# **EXHIBIT I**

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc. | Case No. 08-13555 |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Special Financing Inc. | 08-13888 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)      0000066853

**THIS SPACE IS FOR COURT USE ONLY**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities. (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Tobacco Settlement Financing Corporation
c/o K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Attn: Robert N. Michaelson, Esq.
    Eunice Rim, Esq.

Telephone number: (212) 536-4824    Email Address: Eunice.Rim@KLGates.com

☒ Check box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____ 18990
(If known)

Filed on: 9/18/09

Name and address where payment should be sent (if different from above)
Tobacco Settlement Financing Corporation
641 Lexington Avenue, 3rd. Floor
New York, NY 10022
Attn: Genevieve D'Agostino

Telephone No. (212) 688-4000    Email Address: GD'Agostino@nyhomes.org

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 135,085,150.43
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☒ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** NY TSF's Losses Under Reserve Fund Agreement dated June 19, 2003 and Reserve Fund Agreement dated Dec. 2, 2003 (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:_____
    3a. Debtor may have scheduled account as:_____
        (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
    Check the appropriate box if your claim is secured by a lien on property or a right of set off and provide the requested information.
    Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
    Describe:_____
    Value of Property: $_____ Annual Interest Rate _____%
    Amount of arrearage and other charges as of time case filed included in secured claim, if any:
    $_____ Basis for perfection: _____
    Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

    Specify the priority of the claim:
    ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
    ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
    ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
    ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
    ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8)
    ☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_____).

    **Amounts entitled to priority:**
    $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
    (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running acounts, contracts, judgments, mortgages and security aggrements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary. **DO NOT SENT ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
JUN 15 2010
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 6/15/10
Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C. §§152 and 3571.

NY-794116-v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re                                                        :    Chapter 11
:
LEHMAN BROTHERS SPECIAL FINANCING INC.                       :    Case No. 08-13888 (JMP)
:
:    (Jointly Administered)
Debtor.                                                      :
:
------------------------------------------------------------x

### ADDENDUM TO AMENDED PROOF OF CLAIM OF THE TOBACCO SETLLEMENT FINANCING CORPORATION AGAINST LEHMAN BROTHERS SPECIAL FINANCING INC. (CASE NO. 08-13888) (JMP)

1. This claim (the "Amended Claim") amends and supercedes Claim No. 18990[1] filed by the Tobacco Settlement Financing Corporation (the "TSF") against Lehman Brothers Special Financing Inc. ("LBSF") on September 18, 2009.

2. The TSF, LBSF and the Bank of New York ("BONY"), as trustee (the "Trustee"), are parties to that certain Reserve Fund Agreement dated as of June 19, 2003 (the "June 2003 RFA")[2] by and between TSF, LBSF and BONY and that certain Reserve Fund Agreement dated as of December 2, 2003 (the "Dec. 2003 RFA" and together with the June 2003 RFA, the "RFAs") by and between, TSF, LBSF and BONY. A copy of the RFAs has been uploaded to http://www.lehman-claims.com (the "Claims Website"), on October 19, 2009[3], as a part of the

---

[1] TSF filed Claim No. 41425 on October 19, 2009 in an attempt to amend Claim No. 18990. Claim No. 41425 inadvertently referenced Claim No. 21488 as the previous claim number being amended due to confusion regarding the similar legal names between the claimants of Claim Nos. 18990 and 21488. TSF submits this amendment to correct this error. LBSF (defined below) has agreed to deem this Amended Claim as having been filed on October 19, 2009.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings attributed to them in the June 2003 RFA and the Dec. 2003 RFA as specified herein.

[3] The derivatives questionnaire submitted by TSF to the Claims Website on October 19, 2009 also inadvertently references Claim No. 21488 as the underlying claim being amended following the entry of the Rejection Order (defined below) by the Bankruptcy Court and should instead reference Claim No. 18990 as the proper underlying claim being amended.

Derivatives Questionnaire required by the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form entered by the United States Bankruptcy Court for the Southern District of New York on July 2, 2009 in Case No. 08-13555 (the "Bar Date Order").

3. The RFAs served as the investment vehicles through which TSF invested certain reserve funds (the "Reserve Funds") that served as a source of backup payment for debt service owed on tobacco settlement bonds issued by the TSF in 2003. The RFAs allowed the TSF to manage its finances by increasing the predictability of its cash flow from earnings on TSF's investments to satisfy the liquidity reserve requirements of TSF's tobacco settlement securitization bonds.

4. Under the terms of the June 2003 RFA, the TSF delivered a Scheduled Reserve Amount of $170,659,179.00 to LBSF, upon which LBSF purchased Qualified Securities on behalf of TSF that were delivered to the Trustee on certain set Deposit Dates. When such securities matured, the TSF would deliver the Scheduled Reserve Amount to LBSF to purchase new securities. In exchange for the periodic purchase of securities, LBSF was required to guarantee a rate of return to the TSF on the Scheduled Reserve Amount under the June 2003 RFA equal to a rate per annum of 3.722%, assuming that the interest on the applicable security was compounded semi-annually on the basis of a year of 360 days with twelve 30 day months.

5. Under the terms of the Dec. 2003 RFA, the TSF delivered a Scheduled Reserve Amount of $221,582,343.75 to LBSF, upon which LBSF purchased Qualified Securities on behalf of TSF that were delivered to the Trustee on certain set Deposit Dates. When such securities matured, the TSF would deliver the Scheduled Reserve Amount under the Dec. 2003

RFA to LBSF to purchase new securities. In exchange for the periodic purchase of securities, LBSF was required to guarantee a rate of return to the TSF on the Scheduled Reserve Amount equal to a rate per annum of 4.687%, assuming that the interest on the applicable security was compounded semi-annually on the basis of a year of 360 days with twelve 30 day months.

6. Lehman Brothers Holdings, Inc. ("LBHI") served as the credit support provider to LBSF under both RFAs and guaranteed the payment of all amounts payable by LBSF to TSF under the RFAs. A copy of LBHI's guarantee of LBSF's payment obligations under the June 2003 RFA and the Dec. 2003 RFA has been uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives Questionnaire required by the Bar Date Order.

7. LBHI filed a voluntary petition for relief under title 11 of the United States Code on September 15, 2008.

8. LBSF filed a voluntary petition for relief under title 11 of the United States Code on October 3, 2008 (the "Petition Date").

9. Under section 7.3(a) of both RFAs, a Lehman Event of Default occurs if Lehman fails to cause a Qualified Dealer to deliver Qualified Securities on any Deposit Date, with a Purchase Price equal to the Scheduled Reserve Amount for such Deposit Date, and such failure is not cured within the Lehman Cure Period. See June 2003 RFA §7.3(a) and Dec. 2003 RFA §7.3(a).

10. By separate letters (the "Default Notices"), each dated September 14, 2009, TSF notified LBSF of its defaults under sections 7.3(a) and (d) of each RFA as a result of (a) LBSF's failure to deliver or cause to be delivered Qualified Securities on November 28, 2008 and May 29, 2009 in accordance with sections 2.1 and 2.2 of the RFA, which failure has continued beyond the applicable Lehman Cure Period, and (b) the institution by LBSF of a proceeding under title

11 of the United States Code on the Petition Date. A copy of the Default Notices has been uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives Questionnaire required by the Bar Date Order.

11. Pursuant to section 7.6(a) of the RFAs, if a Lehman Event of Default occurs under section 7.3(a) of the RFAs, then the TSF has the right to apply the Scheduled Reserve Amount to purchase Qualified Securities and to make a written demand for payment of TSF's losses, as calculated pursuant to section 7.7(b) of the RFA. See June 2003 RFA §7.6(a) and Dec. 2003 RFA §7.6(a).

12. Section 7.7(b) of the RFAs provide:

> If there is a Lehman Event of Default as described in Section 7.3(a) hereof, the amount of losses payable by Lehman upon demand therefore pursuant to Section 7.6(a) shall equal the Guaranteed Interest. In the event that Lehman has paid the Guaranteed Interest amount in connection with any Deposit Date, the Issuer shall pay to Lehman on the next succeeding Deposit Date an amount equal to the excess of the Guaranteed Interest so paid over the interest rate the Trustee actually earned by investing the related scheduled reserve amount in Qualified Securities on an overnight basis (or if the Trustee fails to invest such scheduled reserve amount in Eligible Investments (as defined in the Indenture) on an overnight basis, the amount of interest the Trustee would have earned on such scheduled reserve amount had the Trustee invested on an overnight basis).

(the "Section 7.7(b) Loss")

13. Under section 7.6(b) of both RFAs, if a Lehman Event of Default occurs due to Lehman becoming Insolvent or because LBHI's rating falls below "BBB-" or "Baa3" by S&P or Moody's, respectively, the TSF can immediately terminate the RFAs by giving notice to Lehman with a copy to the Trustee. See June 2003 RFA §7.6(b) and Dec. 2003 RFA §7.6(b).

14. Pursuant to sections I and 7.3 of the RFAs, TSF is the Burdened Party due to the occurrences of the Lehman Events of Default under sections 7.3(a), (d) and (f). TSF, as the

Burdened Party, has the right to calculate the Termination Amounts. <u>See</u> June 2003 RFA §§ I, 7.3 and Dec. 2003 RFA §§ I and 7.3.

15. Section I of the RFAs define the Termination Amount as:

> an amount, as determined by [TSF] reasonably and in good faith on the basis of the arithmetic mean of quotations from at least three Dealers of the amount, if any, that each such Dealer would require [TSF] to pay to the Dealer . . . or would pay to the [TSF] . . . in consideration of such Dealer entering into an agreement with the [TSF] . . . which would have the effect of preserving for the [TSF] the economic equivalent of its investment rights under [the RFA] for the period commencing on the termination date of [the RFA] and terminating on the last Bond Payment Date set forth in Exhibit A. . .

16. Under Section I of the RFAs, if the TSF is unable to obtain three Dealer quotations to determine the Termination Amount due under each RFA, the Termination Amount is:

> the amount as reasonably determined in good faith by the [TSF], to be [TSF's] total losses and costs . . . in connection with the termination of [the RFA], including any loss of bargain, cost of funding or, at the election of [the TSF] but without duplication, any loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position, and;

> <u>provided further, however,</u> that in any event the Termination Amount shall also include (A) any unpaid amounts due as of the date of termination of this Agreement (including any amounts due under Section 7.7 hereof) and (B) if such Termination Amount is being paid in connection with a termination of this Agreement following an Event of Default or if any Termination Amount otherwise due hereunder is not paid when due, the Termination Amount shall also include incidental costs and expenses incurred by the Burdened Party in connection with such termination and the enforcement of its rights hereunder (including costs of collection and reasonable attorneys' fees). Any determination of the Termination Amount by the Burdened Party shall be conclusive and binding on the parties hereto absent manifest error. . .

(the "Total Loss").

17.Each RFA is a "securities contract" as that term is defined under section 741(7) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Pursuant to Section 562(a) of the Bankruptcy Code, the damages flowing from the rejection of a securities contract is calculated as of the date that the securities contract is rejected. See 11 U.S.C. § 562(a).

18.On October 16, 2009 (the "Rejection Date"), the United States Bankruptcy Court for the Southern District of New York entered an Order Authorizing Rejection of Reserve Fund Agreements (the "Rejection Order") and the RFAs were rejected as of the Rejection Date. A copy of the Rejection Order has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

19.As of the Rejection Date, TSF's Total Loss under the June 2003 RFA is $47,876,724.30, which includes TSF's Section 7.7(b) Loss under the June 2003 RFA in the amount of $5,254,152.81, TSF's termination losses under the June 2003 RFA in the amount of $42,568,694.00 and TSF's incidental costs and expenses incurred in connection with the termination and enforcement of TSA's rights under the June 2003 RFA of $53,877.49[4].

20.As of the Rejection Date, TSF's Total Loss under the Dec. 2003 RFA is $87,208,426.13, which includes TSF's Section 7.7(b) Loss under the Dec. 2003 RFA in the amount of $8,702,700.64, TSF's termination losses under the Dec. 2003 RFA in the amount of

---

[4] The incidental costs and expenses incurred with respect to the termination and enforcement of TSA's rights under both the June 2003 RFA and the Dec. 2003 RFA equals $107,754.98 (the "Aggregate Costs"). Half of the Aggregate Costs can be attributed to the June 2003 RFA. A copy of the schedule setting forth the Aggregate Costs as well as the applicable invoices related to such Aggregate Costs has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

$78,451,848.00 and TSF's incidental costs and expenses incurred in connection with the termination and enforcement of TSA's rights under the Dec. 2003 RFA of $53,877.49.[5]

21.  Accordingly, as of the Rejection Date, the aggregate claim owing by LBSF under the June 2003 RFA and the Dec. 2003 RFA is $135,085,150.43. A copy of a memorandum prepared by the Swap Financial Group detailing TSF's calculation of TSF's Total Loss under each RFA as of the Rejection Date has been uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives Questionnaire required by the Bar Date Order.

22.  The filing of this Amended Claim shall not constitute: (a) a waiver or release of any rights of TSF against LBSF, (b) a waiver of the right of TSF to a trial by jury in any proceedings so triable in LBSF's bankruptcy proceeding or any controversy or proceedings related to LBSF's bankruptcy proceeding, (c) an election of remedies, or (d) a waiver or limitation of any procedural or substantive rights or any procedural or substantive defenses to any claim that may be asserted against TSF by LBSF, the Official Committee of Unsecured Creditors or any other party. In addition, TSF expressly reserves the right to withdraw or amend this Amended Claim for any reason whatsoever.

---

[5] The Aggregate Costs incurred with respect to the termination and enforcement of TSA's rights under both the June 2003 RFA and the Dec. 2003 RFA equals $107,754.98. Half of the Aggregate Costs can be attributed to the Dec. 2003 RFA. A copy of the schedule setting forth the Aggregate Costs as well as the applicable invoices related to such Aggregate Costs has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

HAND DELIVERY

RECEIVED BY: [signature]

FILED / RECEIVED
JUN 15 2010
EPIQ BANKRUPTCY SOLUTIONS, LLC
DATE

TIME: 1:56 pm