**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                      :    Chapter 11 Case No.
                                            :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**   :    08-13555 (JMP)
                                            :
                          Debtors.          :    (Jointly Administered)
------------------------------------------------------------x

## PARTIAL TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr.P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| **BEINT, L.L.C.** | **BANC OF AMERICA CREDIT PRODUCTS, INC.** |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:

    BEINT, L.L.C.
    PO Box 8342
    New York, NY 10150
    E-Mail: tradeclaims@beint.net
    Last Four Digits of Acct #: <u>N/A</u>

<u>With a copy to:</u>
Louis Smookler
Reitler Kailas & Rosenblatt LLC
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 209-3059
Facsimile:   (212) 371-5500
E-Mail: lsmookler@reitlerlaw.com

Name and Address where transferee payments should be sent (if different from above):  N/A

Court Claim # (if known): 67281

Total Amount of Claim: <u>$1,153,703.25 (of non-
allowed portion)</u>

Amount of Claim Transferred: <u>$346,110.98 (of
Transferor's $1,153,703.25 of non- allowed portion)</u>

Date Claim Filed: December 28, 2010

BANC OF AMERICA CREDIT PRODUCTS, INC.
c/o Bank of America Merrill Lynch
Bank of America Tower – 3rd Floor
One Bryant Park
New York, New York 10036
Telephone: (646) 855-7450
Attention: Ante Jakic / Gary S. Cohen / Jeff Benesh
E-Mail: Ante.Jakic@baml.com
     g.cohen@baml.com
     jeffrey.benesh@baml.com

**\*\*PLEASE SEE ATTACHED EXHIBITS\*\***

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

**BEINT,L.L.C.**

By: _____          Date:  March 20, 2013

Transferee/Transferee's Agent

Louis Smookler /Authorized Signatory

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.*

## Exhibit A

Evidence of Transfer of Claim

## EVIDENCE OF TRANSFER OF CLAIM

**TO:**  Lehman Brothers Holdings Inc as the Guarantor (for the purposes of this Notice the "Debtor") and the Bankruptcy Court (as defined below).

For value received, the adequacy and sufficiency of which are hereby acknowledged, BANC OF AMERICA CREDIT PRODUCTS, INC. ("Assignor") hereby unconditionally and irrevocably sells, transfers and assigns to BEINT, L.L.C. (the Assignee") a 30% pro rata share (representing $346,110.98) in and to all of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, the Assignor's claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code) against Lehman Brothers Holdings Inc. as Debtor, one of the debtors-in-possession in the chapter 11 reorganization case entitled, In re Lehman Brothers Holdings Inc., et al., Chapter 11 Case Number 08-13555 (JMP) (Jointly Administered) (Claim No. 67281), filed by Assignor with the Bankruptcy Court respect of the foregoing claim in the amount of $1,153,703.25 (the "Claim") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") .

The Assignor hereby waives any objection to the transfer of the Claim to the Assignee on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. The Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to the Assignor transferring to the Assignee the Claim and recognizing the Assignee as the sole owner and holder of the Claim. The Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Claim, and all payments or distributions of money or property in respect of the Claim, shall be delivered or made to the Assignee.

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM IS EXECUTED THIS 20th day of March 2013

**ASSIGNOR:**

BANC OF AMERICA CREDIT PRODUCTS, INC.

By:
Name:
Title:

Ronald Torok
Managing Director

**ASSIGNEE:**

BEINT, L.L.C.

By:
Name: Louis Smookler
Title:  Authorized Signatory

<u>Exhibit B</u>

Proof of Claim

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al.<br>Debtors. | Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 |

Unique ID Number 1000417

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000067281

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

SRI Fund, L.P.
c/o SRI Genpar, L.P.
201 Main Street, Suite 3200
Fort Worth, TX 76102
Attn: William O. Reimann

Courtesy copy to:
Cal Jackson
c/o Kelly Hart & Hallman LLP
201 Main Street, Suite 2400
Fort Worth, TX 76102

Telephone number: 817-390-8439     Email Address: BReimann@barbnet.com

☑ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: 30568
(If known)

Filed on: 9/22/2009

Name and address where payment should be sent (if different from above)

Please send payment to Creditor's address set forth above.

Amended Proof of Claim

Telephone number:     Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 65,382,085.31

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Debtor is guarantor of obligations of Lehman Brothers International (Europe)
(See instruction #2 on reverse side.)                    and Lehman Brothers Special Financing Inc.

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. **Debtor may have scheduled account as:** _____
       (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

FILED / RECEIVED

DEC 2 8 2010

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br>12/22/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>William O. Reimann, as Vice President of the ultimate general partner |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

ȯ

# KELLY HART & HALLMAN LLP

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102

Telephone: (817) 332-2500
Telecopy: (817) 878-9280
Writer's Direct Dial:  (817) 878-3580
Email Address:  natalie.carlgren@khh.com

301 Congress, Suite 2000
Austin, Texas 78701
1000 Louisiana, Suite 4700
Houston, Texas 77002

December 23, 2010

Epiq Bankruptcy Solutions, LLC
ATTN:  Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

Re:    Submission of Amended Proof of Claim on behalf of SRI Fund, L.P. in the Chapter
11 Bankruptcy Case of Lehman Brothers Holdings Inc. and certain of its affiliates

Dear Sir or Madam:

In connection with the Chapter 11 bankruptcy proceedings for Lehman Brothers Holdings
Inc. ("Lehman Holdings") and certain of its affiliates in the U.S. Bankruptcy Court for the Southern
District of New York (the "Bankruptcy Court"), we are submitting the enclosed **amended** Proof of
Claim form on behalf of our client, SRI Fund, L.P. ("SRI"), with respect to certain guarantor
obligations of Lehman Holdings.

On September 22, 2009, we filed an initial Proof of Claim on behalf of SRI in these
proceedings (Court Claim Number 30568) against Lehman Holdings as guarantor of certain
obligations of each of (i) Lehman Brothers International (Europe) and (ii) Lehman Brothers Special
Financing Inc. ("LBSF"). Subsequently, SRI entered into a Termination Agreement with LBSF and
Lehman Holdings dated January 29, 2010 with respect to its claims against LBSF (the "Termination
Agreement"). As a result, the aggregate claim amount for SRI's claims against Lehman Holdings
has been modified and reduced from the original amount of $67,164,166.31 set forth in SRI's initial
Proof of Claim to $65,382,085.31. The enclosed amended Proof of Claim reflects this reduced claim
amount.

The supporting documentation for this amended Proof of Claim has been organized as
follows:

### Part I—Supporting Documentation Relating to the Termination Agreement

Part I of the enclosed supporting documentation for this amended Proof of Claim relates to
the Termination Agreement and the resulting modified LBSF claim amount and includes the
following:

➢ Tab 1: Termination Agreement dated January 29, 2010 entered into by and among SRI,
LBSF and Lehman Holdings; and

Lehman Brothers Holdings, Inc.
Page 2 of 2

> <u>Tab 2</u>: Order Granting Debtors' Sixty-Eighth Omnibus Objection to Claims (Settled Derivative Claims) issued by the Bankruptcy Court in these proceedings (allowing SRI's modified claim amount with respect to its LBSF claims) and relevant exhibit page confirming such modified claim amount.

### Part II—Original SRI Filing

Part II of the enclosed supporting documentation for this amended Proof of Claim includes a file-stamped copy of SRI's original Proof of Claim filed in these proceedings against Lehman Holdings as guarantor and the supporting documentation attached thereto.

Please note that, in connection with the modified LBSF claim amount, we are also submitting another amended Proof of Claim on behalf of SRI by separate cover with respect to SRI's direct claims against LBSF.

If you have any questions regarding any of the enclosed materials or need additional information, please call the undersigned, Natalie Carlgren, at (817) 878-3580 or Cal Jackson at (817) 878-3535. Thank you for your assistance in this matter.

Kind regards,

*Natalie J. Carlgren*

Natalie J. Carlgren

Enclosures

cc:    William O. Reimann
       Cal Jackson

1204388_1

## PART I OF SUPPORTING DOCUMENTATION

These materials relate to the Termination Agreement and SRI's resulting modified LBSF claim amount.

## TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of the 29th day of January 2010, by and between SRI Fund LP ("Counterparty") and Lehman Brothers Special Financing Inc. ("Lehman"), and Lehman Brothers Holdings Inc. ("Holdings") as credit support provider (each of the foregoing a "Party" and collectively the "Parties").

RECITALS:

WHEREAS, the Parties entered into one or more transactions (each a "Transaction") that were governed by a 1992 ISDA Master Agreement, dated as of January 12, 2006, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of September 26, 2008.

WHEREAS, on December 16, 2008 the court having jurisdiction over the Bankruptcy Cases entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "December Order").

WHEREAS, as of the date hereof, the Parties have agreed a settlement amount in favor of Counterparty in the amount of $2,146,671.65 (the "Settlement Amount") in respect of the claims arising under the Agreement Documents.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Allowance of General Unsecured Claim.  In consideration of the termination of the Transactions under the Agreement Documents by Counterparty, Lehman and Holdings hereby agree to the allowance of general, unsecured claims against each of them in their respective chapter 11 cases (the "Claim Allowance") in favor of Counterparty in the amount of the Settlement Amount (the "Allowed Claims"), in full and complete satisfaction of all of the claims of Counterparty against Lehman, Holdings and any other debtor in the Bankruptcy Cases under the Agreement Documents and the Transactions thereunder; provided, however, that the aggregate recovery of Counterparty in respect of the Allowed Claims shall not exceed the Settlement Amount.  Counterparty agrees, promptly after this Termination Agreement becomes effective, to amend any filed Proofs of Claim and the related Derivative Questionnaires (in each case, as defined in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving

the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "Bar Date
Order") entered in the Bankruptcy Cases on July 2, 2009) in respect of the Agreement
Documents against Lehman, Holdings and any other Debtor (as defined in the Bar Date Order) to
the extent necessary to reflect the entry into this Termination Agreement and the Claim
Allowance and, pending such amendments, such Proofs of Claim and related Derivative
Questionnaires shall be deemed so amended.

Section 2.    Release.  In consideration of each other Party's execution of this
Termination Agreement and the Claim Allowance, each Party on behalf of itself and any other
party, person or entity claiming under or through it, hereby generally releases, discharges and
acquits each other Party, and its respective current and former agents, servants, officers,
directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents,
attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the
foregoing, a "Released Party"), from all manners of action, causes of action, judgments,
executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature,
and character whatsoever, other than the Allowed Claims and the rights and obligations of the
Parties set forth under this Termination Agreement, whether in law or in equity, whether based
on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort
(including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of
alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or
unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or
contingent, that such releasing Party ever had or claimed to have or now has or claims to have
presently or at any future date, against any Released Party arising under or related to the
Agreement Documents or the Transactions thereunder, their negotiation, execution, performance,
any breaches thereof, or their termination.

Section 3.    Representations.  Each Party represents and warrants to each other Party
that (i) the execution, delivery, and performance by such Party of this Termination Agreement
are within the powers of such Party and have been duly authorized by all necessary action on the
part of such Party and (ii) this Termination Agreement has been duly executed and delivered by
such Party and constitutes a valid and binding obligation of such Party, enforceable against such
Party in accordance with the terms hereof, (iii) it is not relying upon any statements,
understandings, representations, expectations, or agreements other than those expressly set forth
in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by
legal counsel in connection with this Termination Agreement, which it enters voluntarily and of
its own choice and not under coercion or duress, (v) it has made its own investigation of the facts
and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation
that any of the other Parties will disclose facts material to the Agreement Documents or this
Termination Agreement, and (vii) it knowingly waives any and all claims that this Termination
Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any
and all rights to rescind or avoid this Termination Agreement based upon presently existing
facts, known or unknown.  Additionally, Lehman and Holdings represent and warrant to
Counterparty that this Termination Agreement is being entered into in accordance with the terms
of the December Order.  The Parties agree and stipulate that each Party is relying upon the
representations and warranties in this Section in entering into the Termination Agreement.
Furthermore, the Parties agree that these representations and warranties are a material
inducement for entering into this Termination Agreement.  These representations and warranties

2

shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

Section 4.    Setoff. Counterparty agrees that it will not, nor will the Counterparty permit any affiliate or third party to set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that are held or owing by the Counterparty or any third party or affiliate against the Allowed Claims and Counterparty hereby irrevocably and unconditionally waives any and all rights to do so, whether such rights arise by virtue of contract or law. Notwithstanding the foregoing, the parties agree that the Counterparty will retain all collateral currently posted by Lehman in favor of Counterparty under the Transactions, free and clear of any claim by or through Lehman or Holdings.

Section 5.    Execution in Counterparts.  This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.  Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 6.    Effectiveness.  This Termination Agreement shall become effective upon execution hereof by each of the Parties.  The Transactions that are not already terminated according to their terms will terminate as of the effective date of this Termination Agreement.

Section 7.    Governing Law/Jurisdiction.  This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.  The court having jurisdiction over the Bankruptcy Cases shall have exclusive jurisdiction over any action or proceeding with respect to this Agreement, and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 8.    Special Provision for Unknown Claims.  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 9.    Confidentiality.  Counterparty shall not disclose this Termination Agreement or its terms, including the Settlement Amount ("Confidential Information"), to any person other than to its directors, officers, employees, counsel, other advisors and potential

3

assignees (provided that, prior to any disclosure, such potential assignees have executed with Counterparty a confidentiality agreement the terms of which are no less restrictive than the terms of this Confidentiality provision) (hereinafter, collectively, the "Related Parties"), in each case who need to know such information solely for the purpose of effecting this Termination Agreement or, in the case of a potential assignee, solely for the purpose of effecting an assignment of the Allowed Claims (it being understood that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and will be directed to maintain the confidentiality of such Confidential Information), except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws. Counterparty agrees that, when it enters into a confidentiality agreement with respect to Confidential Information, it shall promptly provide Lehman a copy of said agreement.

If Counterparty or any Related Party becomes legally obligated (whether by court or regulatory order or otherwise), other than due to compliance with United States federal securities or bankruptcy laws, to disclose any of the Confidential Information, Counterparty or such Related Party, as the case may be, will promptly provide Lehman, if permitted by law, with notice of such proposed disclosure so that Lehman may seek a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, Counterparty or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel; and Counterparty or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

Section 10.    Successors and Assigns.  The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 11.    Amendment.  This Termination Agreement may be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 12.    Entire Agreement.  This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersede all prior agreements and understandings relating to the subject matter hereof.

Section 13.    Construction.  This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

*[Signature pages follow]*

4

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

SRI FUND LP
By: SRI Genpar, L.P., Managing General Partner
By: BBT-FW, Inc., General Partner


By: _____
Name: William O. Reimann
Title: Vice President


LEHMAN BROTHERS SPECIAL FINANCING INC.


By: _____
Name: Robert Hershan
Title: Vice President


LEHMAN BROTHERS HOLDINGS INC.


By: _____
Name: Robert Hershan
Title: Vice president


5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x

## ORDER GRANTING DEBTORS' SIXTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (SETTLED DERIVATIVE CLAIMS)

Upon the sixty-eighth omnibus objection to claims, dated November 3, 2010 (the "Sixty-Eighth Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), pursuant to section 502(b) of title 11 of the United States Code, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 6664], seeking to reduce, reclassify (in certain instances), and modify the Debtor entity (in certain instances), and allow the Settled Derivative Claims on the grounds that the Debtors and claimants have agreed upon a claim value and, in certain instances, a classification and Debtor counterparty that is not currently reflected on the proof of claim, all as more fully described in the Sixty-Eighth Omnibus Objection to Claims; and due and proper notice of the Sixty-Eighth Omnibus Objection to Claims having been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Debtors' Sixty-Eighth Omnibus Objection to Claims.

claimants listed on Exhibit A attached to the Sixty-Eighth Omnibus Objection to Claims,

and (vii) all other parties entitled to notice in accordance with the procedures set forth in

the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases [Docket No. 9635]; and it appearing that no

other or further notice need be provided; and the Court having found and determined that

the relief sought in the Sixty-Eighth Omnibus Objection to Claims is in the best interests

of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Sixty-Eighth Omnibus Objection to Claims establish just

cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

 ORDERED that the relief requested in the Sixty-Eighth Omnibus

Objection to Claims is granted to the extent provided herein; and it is further

 ORDERED that each Settled Derivative Claim listed on Exhibit 1 annexed

hereto is hereby modified and allowed in the amount and classification and against the

Debtor that is set forth on Exhibit 1 under the column headings *"Modified Amount,"*

*"Modified Class,"* and *"Modified Debtor"*; and it is further

 ORDERED that this Order has no res judicata, estoppel, or other effect on

the validity, allowance, or disallowance of, and all rights to object and defend on any

basis are expressly reserved with respect to, any claim listed on Exhibit A to the Sixty-

Eighth Omnibus Objection to Claims that does not appear on Exhibit 1 annexed hereto;

and it is further

 ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to this Order.

Dated: New York, New York
       December 22, 2010

                            ___s/ James M. Peck_____
                            Honorable James M. Peck
                            United States Bankruptcy Judge

# EXHIBIT 1

IN RE: LEHMAN BROTHERS HOLDINGS, INC.    CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 68: EXHIBIT 1 – SETTLED DERIVATIVE CLAIMS

| | NAME | CLAIM # | FILED DATE | ASSERTED DEBTOR | CLASS | AMOUNT | MODIFIED DEBTOR | CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 37 | PREGIS CORPORATION ATTN: D. KEITH LAVANWAY 1650 LAKE COOK ROAD DEERFIELD, IL 60015 | 20255 | 09/21/2009 | Lehman Brothers Special Financing Inc. | Unsecured | Undetermined | Lehman Brothers Special Financing Inc. | Unsecured | $1,319,000.00 |
| 38 | REGIONS BANK KING & SPALDING LLP 1180 PEACHTREE STREET, N.E. ATTN: JOHN F. ISBELL ATLANTA, GA 30309 | 1121 | 11/26/2008 | Lehman Brothers Special Financing Inc. | Unsecured | $17,349,437.00 | Lehman Brothers Special Financing Inc. | Unsecured | $14,853,993.00 |
| 39 | REGIONS BANK KING & SPALDING LLP 1180 PEACHTREE STREET, N.E. ATTN: JOHN F. ISBELL ATLANTA, GA 30309 | 1122 | 11/26/2008 | Lehman Brothers Holdings Inc. | Unsecured | $17,349,437.00 | Lehman Brothers Holdings Inc. | Unsecured | $14,853,993.00 |
| 40 | SRI FUND, L.P. C/O SRI GENPAR, L.P. ATTN: WILLIAM O. REIMANN 201 MAIN STREET, SUITE 3200 FORT WORTH, TX 76102 | 25614 | 09/21/2009 | Lehman Brothers Special Financing Inc. | Unsecured | $3,928,752.65 | Lehman Brothers Special Financing Inc. | Unsecured | $2,146,671.65 |
| 41 | STANDARD GENERAL MASTER FUND LP ATTN: JOSEPH MAUSE 650 MADISON AVENUE, 26TH FLOOR NEW YORK, NY 10022 | 11417 | 09/11/2009 | Lehman Brothers Holdings Inc. | Unsecured | $3,968,403.58* | Lehman Brothers Holdings Inc. | Unsecured | $3,698,260.15 |

* - Indicates claim contains unliquidated and/or undetermined amounts

## PART II OF SUPPORTING DOCUMENTATION

These materials (which constitute the entirety of SRI's initial filing against Lehman Holdings in these proceedings) include the file-stamped copy of SRI's original Proof of Claim and all of the supporting documentation that was attached thereto.

| *United States Bankruptcy Court/Southern District of New York*<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Unique ID Number: 1000198103 |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Holdings Inc.** | Case No. of Debtor<br>08-13555 | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)        0000030568 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>SRI Fund, L.P.           Courtesy copy to:<br>c/o SRI Genpar, L.P.      Cal Jackson<br>201 Main Street, Suite 3200    c/o Kelly Hart & Hallman LLP<br>Fort Worth, TX 76102      201 Main Street, Suite 2400<br>Attn: William O. Reimann     Fort Worth, TX 76102<br><br><br><br>Telephone number:  817-390-8439     Email Address:  BReimann@barbnet.com | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:<br>    (If known)<br><br>Filed on: |
|---|---|

| Name and address where payment should be sent (if different from above)<br><br>Please send payment to Creditor's address set forth above.<br><br><br><br>Telephone number:         Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

| | |
|---|---|
| 1.   Amount of Claim as of Date Case Filed: $ **67,164,166.31**<br>If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br>If all or part of your claim is entitled to priority, complete Item 5.<br>If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.<br>☑ Check this box if all or part of your claim is based on a Derivative Contract.*<br>☑ Check this box if all or part of your claim is based on a Guarantee.*<br><br>*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.<br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee. | 5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br>☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___). |
| 2.   Basis for Claim: Debtor is guarantor of obligations of Lehman Brothers International (Europe)<br>(See instruction #2 on reverse side.)      and Lehman Brothers Special Financing Inc. | |
| 3.   Last four digits of any number by which creditor identifies debtor: _____<br>3a.  Debtor may have scheduled account as: _____<br>     (See instruction #3a on reverse side.) | |
| 4.   Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br>Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property: $_____  Annual Interest Rate _____%<br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br>$_____  Basis for perfection: _____<br><br>Amount of Secured Claim: $_____  Amount Unsecured: $_____ | Amount entitled to priority:<br><br><br>$ |
| 6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____<br>(See instruction #6 on reverse side.) | |

| | |
|---|---|
| 7.   Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>8.   Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.<br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br>If the documents are not available, please explain: | FOR COURT USE ONLY<br><br>FILED / RECEIVED<br><br>SEP 22 2009<br><br>EPIQ BANKRUPTCY SOLUTIONS, LLC |
| Date:<br>9-21-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>_____, William O. Reimann, as Vice President of the ultimate general partner |

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

# KELLY HART & HALLMAN LLP

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102

Telephone: (817) 332-2500
Telecopy: (817) 878-9280
Writer's Direct Dial: (817) 878-3580
Email Address: natalie.carlgren@khh.com

301 Congress, Suite 2000
Austin, Texas 78701
1000 Louisiana, Suite 4700
Houston, Texas 77002

September 21, 2009

Epiq Bankruptcy Solutions, LLC
ATTN: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

Re:    Submission of Proof of Claim on behalf of SRI Fund, L.P. in the Chapter 11
Bankruptcy Case of Lehman Brothers Holdings Inc. and certain of its affiliates

Dear Sir or Madam:

In connection with the Chapter 11 bankruptcy proceedings for Lehman Brothers Holdings Inc. ("Lehman Holdings") and certain of its affiliates in the U.S. Bankruptcy Court for the Southern District of New York, we are submitting the enclosed Proof of Claim form on behalf of our client, SRI Fund, L.P. ("SRI"), with respect to certain guarantor obligations of Lehman Holdings.

SRI has claims against Lehman Holdings as guarantor of certain obligations of each of (i) Lehman Brothers International (Europe) ("LBIE") and (ii) Lehman Brothers Special Financing Inc. ("LBSF"). The aggregate claim amount for these claims is $67,164,166.31. The enclosed supporting documentation for each claim is described below.

Please note that we previously submitted another Proof of Claim on behalf of SRI by separate cover with respect to certain obligations of Lehman Brothers Special Financing Inc.

### Claim Relating to Brokerage and Derivative Positions at Lehman Brothers International (Europe)

Part I of the supporting documentation relates to the $63,235,413.66 claim by SRI against LBIE for certain brokerage and derivative positions held by LBIE. This documentation consists of the following:

➢ Tab 1: Guarantee of Lehman Holdings to SRI dated as of March 1, 2005 guaranteeing the obligations of LBIE;

➢ Tab 2: Guarantee of Lehman Holdings dated January 4, 2008 guaranteeing the obligations of LBIE; and

➢ Tab 3: Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Holdings dated June 9, 2005 whereby Lehman Holdings guaranteed the general

1079552_1

Lehman Brothers Holdings, Inc.
Page 2 of 2

liabilities, obligations and commitments of LBIE and the other subsidiaries specified on
Schedule A attached thereto.

### Claim Relating to Derivative Transactions at Lehman Brothers Special Financing Inc.

Part II of the supporting documentation relates to the $3,928,752.65 claim by SRI against
LBSF with respect to certain derivative transactions.  This documentation consists of the following:

> **Tab 4**:  Notice of Termination Due to Event of Default dated September 25, 2008 and the
payment calculation statement attached thereto that SRI delivered to LBSF;

> **Tab 5**:  Guarantee of Lehman Holdings dated as of January 12, 2006 guaranteeing the
obligations of LBSF under the ISDA Master Agreement of even date therewith; and

> **Tab 6**:  Unanimous Written Consent of the Executive Committee of the Board of Directors of
Lehman Holdings dated June 9, 2005 whereby Lehman Holdings guaranteed the general
liabilities, obligations and commitments of LBSF and the other subsidiaries specified on
Schedule A attached thereto.

Supporting documentation will also be uploaded to the Derivative and Guarantee Questionnaires that
we will submit on behalf of SRI.

If you have any questions regarding any of the enclosed materials or need additional
information, please call the undersigned, Natalie J. Carlgren, at (817) 878-3580 or Cal Jackson at
(817) 878-3535.  Thank you for your assistance in this matter.

Kind regards,

Natalie J. Carlgren

Enclosures

cc: Cal Jackson

1079552_1

## PART I OF SUPPORTING DOCUMENTATION

These materials relate to the $63,235,413.66 claim by SRI against LBIE for certain brokerage and derivative positions held by LBIE.

GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC. (London Branch)

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)** ("Party A") and **SRI FUND, L.P.** ("Party B") have entered into a Master Agreement dated as of **March 1, 2005**, (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, **LEHMAN BROTHERS HOLDINGS INC. (London Branch)**, a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a)    Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b)    Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c)    Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defense of payment or statute of limitations, neither of which is waived); provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d)    This Guarantee shall remain in full force and effect until such time as Party B shall receive written notice of termination. Termination of this Guarantee shall not affect Guarantor's liability hereunder as to obligations incurred or arising out of Transactions entered into prior to the termination hereof.

(e)    Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Master Agreement affecting Party A or Guarantor.

(f) Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Corporate Counsel, 1301 Avenue of the Americas, 5th Floor, New York, NY 10019 with a copy to: Lehman Brothers International (Europe), Attention: Head of Transaction Management at 25 Bank Street London E14 5LE, England (Facsimile No. 020-7102-2044).

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC. (London Branch)

Name:    James J. Killerlane III
Title:        Vice President

Date: November 3, 2005

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

To:    Standard & Poor's Rating Services
       55 Water Street
       New York, NY 10041

We, Lehman Brothers Holdings Inc., do hereby absolutely and unconditionally guarantee the payment by Lehman Brothers International (Europe) ("Affiliate") of all of Affiliate's liabilities, obligations and commitments (the "Guaranteed Obligations") to any counterparty of Affiliate and such counterparty's successors, endorsees and assigns (collectively, the "Beneficiaries"), as the same shall respectively become due, together with accrued interest and charges, if any, and we agree to reimburse each Beneficiary for all expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment thereof.

This Guarantee is absolute and unconditional without limitation as to monetary amount or duration, irrespective of the validity, regularity or enforceability of any agreement or document setting forth a Guaranteed Obligation (each a "Borrower Agreement") against Affiliate (other than as a result of the unenforceability of the applicable Borrower Agreement against the Beneficiary), any waiver or consent by any Beneficiary with respect to any provisions thereof or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defenses of payment and statute of limitations, neither of which is waived); provided, however, that we shall be entitled to exercise any right that Affiliate could have exercised under the applicable Borrower Agreement to cure any default in respect of its obligations under the Borrower Agreement or to setoff, counterclaim or withhold payment in respect of any event of default or similar event in respect of a Beneficiary, but only to the extent such right is provided to Affiliate under the Borrower Agreement. We shall have no right of subrogation with respect to any payments we make under this Guarantee in connection with a Borrower Agreement until all Guaranteed Obligations of Affiliate under that Borrower Agreement are paid in full.

This Guarantee is a guarantee of payment, and not of collection, and each Beneficiary may exercise its rights hereunder against us without first having to take any action against Affiliate, or any other guarantor. We hereby waive diligence, presentment, protest, demand of any kind in connection with the delivery, acceptance, performance, default or enforcement of this Guarantee.

This Guarantee shall be binding upon us, our successors and assigns.

We further agree that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Guaranteed Obligation or interest thereon is rescinded or must otherwise be restored by or is recovered from a Beneficiary as a preference or fraudulent transfer under the federal Bankruptcy Code or any similar applicable state or foreign law.

hereunder to us shall be to Lehman Brothers Holdings Inc., Attention: Treasurer, at 745 Seventh Avenue, New York, New York (Facsimile No. 646-758-3334).

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflicts of laws principles thereof.

IN WITNESS WHEREOF, I have hereunto set my hand on January 4, 2008.

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Name: James J. Killerlane III

Title:   Vice President

2

UNANIMOUS WRITTEN CONSENT OF THE

EXECUTIVE COMMITTEE OF THE

BOARD OF DIRECTORS OF

LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

WHEREAS, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

WHEREAS, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

WHEREAS, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

WHEREAS, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

WHEREAS, Management wishes to establish additional Guaranteed Subsidiaries,

WHEREAS, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

WHEREAS, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

NOW THEREFORE BE IT,

RESOLVED, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

RESOLVED, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

RESOLVED, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

RESOLVED, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

FURTHER RESOLVED, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

Richard S. Fuld, Jr.

John D. Macomber

2

<u>Schedule A</u>
<u>to LBHI Unanimous Written Consent</u>
<u>dated June 9 , 2005</u>

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

3

## PART II OF SUPPORTING DOCUMENTATION

These materials relate to the $3,928,752.65 claim by SRI against LBSF with respect to certain derivative transactions.

September 25, 2008

*Via Federal Express and Facsimile: (212) 526-7672*

Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
Transaction Management Group
Corporate Advisory Division
745 Seventh Avenue
New York, New York 10019

      Re:   Notice of Termination due to Event of Default

Ladies and Gentlemen:

Reference is made to the ISDA Master Agreement (the "Master Agreement") by and between Lehman Brothers Special Financing Inc. ("Party A"), and SRI Fund, L.P. ("Party B"), dated as of January 12, 2006. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Master Agreement.

Pursuant to Section 6(a) of the Master Agreement, notice is hereby given to Party A that Party B is exercising its right to designate an Early Termination Date in respect of all outstanding Transactions. The Early Termination Date will be September 26, 2008. Such right to designate such Early Termination Date is available to Party B as a result of an Event of Default of Party A under Section 5(a)(vii) of the Master Agreement resulting from the bankruptcy of your Credit Support Provider, Lehman Brothers Holdings Inc. A listing of all outstanding Transactions subject to termination as a result of this notice, and a calculation of the payments required to be made under Section 6(e) of the Master Agreement, is set forth on Exhibit A hereto.

Sincerely yours,

SRI FUND, L.P.

By: SRI Genpar, L.P., as Managing General Partner

By: BBT-FW, Inc., its General Partner

By: _____
Name: William O. Reimann
Title: Vice President

984811.1

## EXHIBIT A

Lehman Brothers Special Financing Inc.
SRR Fund, LP
Default Swap Positions
Account ID per USSF: 022595SRF

| Lehman Global ID | Ticker | Entity Reference Name | Trade Date | Maturity Date | Trade Code per SRI | CCY | Notional Amount | Begin Rate | Value as of COB 9/24/08 | Unpaid 9/22 Quarterly Interest |
|---|---|---|---|---|---|---|---|---|---|---|
| 2610339 | NAV | NAVSTAR INTERNATIONAL CORPORATION | 5/1/2006 | 6/20/2009 | BUY | USD | 200000 | 2.5 | $ (9.70) | $ 1,541.33 |
| 2515321 | NAV | NAVSTAR INTERNATIONAL CORPORATION | 5/18/2006 | 6/20/2009 | BUY | USD | 500000 | 2.5 | $ 380.20 | $ 3,700.00 |
| 2595030 | HCA | HCA CHEMICALS CORPORATION | 6/15/2006 | 6/20/2010 | SELL | USD | 500000 | 1.75 | $ (3,055.09) | $ 2,741.67 |
| 2626704 | RESCAP | Residential Capital, LLC | 3/5/2007 | 3/20/2014 | BUY | USD | 350000 | 1.9 | $ 2,395,779.89 | $ (17,558.89) |
| 2825660 | HCA | HCA, Inc. | 3/7/2007 | 3/20/2014 | SELL | USD | 1400000 | 4.15 | $ 40,931.77 | $ (7,565.28) |
| 2825601 | HCA | HCA, Inc. | 3/6/2007 | 3/20/2014 | BUY | USD | 1400000 | 1.83 | $ (17,024.56) | $ 6,869.97 |
| 2825049 | VC | Visteon Corporation | 3/9/2007 | 3/20/2009 | BUY | USD | 700000 | 4.7 | $ 281,344.70 | $ (6,605.56) |
| 2625497 | VC | Visteon Corporation | 3/9/2007 | 3/20/2009 | BUY | USD | 700000 | 2.8 | $ (43,322.02) | $ 9,504.44 |
| 2939152 | F | Ford Motor Company | 3/14/2007 | 3/20/2010 | BUY | USD | 1120000 | 4.65 | $ (226,848.95) | $ 13,568.67 |
| 2942303 | F | Ford Motor Company | 3/16/2007 | 3/20/2010 | BUY | USD | 1055000 | 4.57 | $ (213,508.33) | $ 12,529.42 |
| 2971034 | F | Ford Motor Company | 4/2/2007 | 6/20/2010 | BUY | USD | 1120000 | 5.2 | $ (253,237.94) | $ 15,267.11 |
| 2994070 | GM | GENERAL MOTORS CORPORATION | 4/2/2007 | 6/20/2010 | BUY | USD | 1120000 | 5.2 | $ 102,972.96 | $ — |
| 2995085 | GM | GENERAL MOTORS CORPORATION | 4/10/2007 | 6/20/2010 | SELL | USD | 2100000 | 0 | $ 269,342.38 | $ — |
| 2995504 | CAL | Continental Airlines, Inc. | 4/12/2007 | 6/20/2010 | BUY | USD | 1400000 | 3.45 | $ (237,194.98) | $ 12,811.67 |
| 3008449 | MEE | Massey Energy Company | 4/17/2007 | 6/20/2012 | BUY | USD | 700000 | 2.15 | $ (5,591.94) | $ 4,478.06 |
| 3030564 | MEE | Massey Energy Company | 4/17/2007 | 6/20/2012 | BUY | USD | 700000 | 2.15 | $ (6,891.70) | $ 3,020.72 |
| 3145904 | TRB | Tribune Company | 5/29/2007 | 9/20/2012 | BUY | USD | 680000 | 5.7 | $ (530,203.63) | $ 14,416.67 |
| 3166162 | AMR | AMR Corporation | 7/11/2007 | 9/20/2010 | BUY | USD | 1400000 | 4.75 | $ (531,573.40) | $ 13,525.50 |
| 3231425 | AXL | American Axle & Manufacturing, Inc. | 7/27/2007 | 9/20/2010 | BUY | USD | 1800000 | 4.75 | $ (212,232.60) | $ 22,325.00 |
| 3231532 | AXL | American Axle & Manufacturing, Inc. | 7/27/2007 | 9/20/2010 | BUY | USD | 1800000 | 4.75 | $ (212,232.60) | $ 22,325.00 |
| 3331194 | FDC | First Data Corporation | 8/2/2007 | 9/20/2012 | BUY | USD | 3420000 | 1.3 | $ (311,230.00) | $ 10,716.00 |
| 3250555 | | LCDX HY_100_S8_06/12_X5 | 8/9/2007 | 9/20/2012 | BUY | USD | 350000 | 4.25 | $ (27,456.26) | $ 3,995.00 |
| 3504548 | | URI Corporation | 6/15/2007 | 9/20/2014 | BUY | USD | 6910000 | 2.75 | $ 1,118,205.00 | $ (63,078.75) |
| 3285338 | | CDX_HY_100_S8_06 | 8/15/2007 | 12/20/2011 | SELL | USD | 680100 | 2.75 | $ 65,729.96 | $ (4,905.04) |
| 3422074 | | CDX.NA.HY.8 | 8/15/2007 | 12/20/2011 | SELL | USD | 695000 | 2.45 | $ 249,127.15 | $ (0,077.39) |
| 3375489 | AXL | American Axle & Manufacturing, Inc. | 9/24/2007 | 6/20/2009 | BUY | USD | 850000 | 2.4 | $ 514.65 | $ 5,553.33 |
| 3415131 | NAV | NAVSTAR INTERNATIONAL CORPORATION | 10/9/2007 | 6/20/2009 | SELL | USD | 850000 | 2.4 | $ 514.65 | $ 2,201.33 |
| 3415040 | NAV | NAVSTAR INTERNATIONAL CORPORATION | 10/9/2007 | 6/20/2009 | BUY | USD | 690000 | 2.34 | $ 828,714.15 | $ (7,415.39) |
| 3422000 | | CDX_HY_100_S8_06 | 10/10/2007 | 12/20/2011 | SELL | USD | 1250000 | 1.9 | $ 656,978.50 | $ (6,201.53) |
| 3421382 | RESCAP | Residential Capital, LLC | 10/10/2007 | 3/20/2014 | SELL | USD | 400000 | 4.15 | $ 123,122.18 | $ (6,516.44) |
| 3421676 | GMAC | General Motors Acceptance Corporation | 10/10/2007 | 12/20/2009 | BUY | USD | 400000 | 4.15 | $ 100,452.25 | $ (3,068.00) |
| 3421871 | VC | Visteon Corporation | 10/16/2007 | 3/20/2012 | SELL | USD | 250000 | 4.15 | $ 63,006.55 | $ (2,709.03) |
| 3422040 | GMAC | General Motors Acceptance Corporation | 10/16/2007 | 3/20/2010 | SELL | USD | 250000 | 4.25 | $ (23,581.40) | $ 3,354.44 |
| 3421934 | AXL | American Axle & Manufacturing, Inc. | 10/16/2007 | 9/20/2009 | BUY | USD | 200000 | 2.9 | $ (10,472.40) | $ 4,210.42 |
| 3421883 | VC | Visteon Corporation | 10/16/2007 | 3/20/2009 | BUY | USD | 500000 | 2.15 | $ (9,623.25) | $ 4,474.79 |
| 3422030 | MEE | Massey Energy Company | 10/16/2007 | 3/20/2009 | BUY | USD | 375000 | 4.57 | $ (78,298.68) | $ 4,556.67 |
| 3422355 | AMR | AMR Corporation | 10/19/2007 | 9/20/2010 | SELL | USD | 400000 | 4.65 | $ (81,017.94) | $ 4,932.75 |
| 3421968 | F | Ford Motor Company | 10/18/2007 | 6/20/2010 | BUY | USD | 250000 | 7.65 | $ (5,227.45) | $ 4,993.75 |
| 3421204 | F | Ford Motor Company | 10/18/2007 | 6/20/2010 | BUY | USD | 400000 | 3.2 | $ (80,442.12) | $ 7,990.00 |
| 3422029 | GM | GENERAL MOTORS CORPORATION | 10/18/2007 | 6/20/2010 | BUY | USD | 1000000 | 3.45 | $ (169,848.20) | $ 9,009.33 |
| 3421956 | CAL | Continental Airlines, Inc. | 11/15/2007 | 6/20/2012 | SELL | USD | 760000 | 3.8 | $ (9,801.13) | $ 15,255.62 |
| 3515990 | URI | United Rentals (North America), Inc. | 12/4/2007 | 6/20/2012 | SELL | USD | 760000 | 3.78 | $ 189,025.59 | $ (7,720.83) |
| 3524911 | AXL | American Axle & Manufacturing, Inc. | 12/11/2007 | 3/20/2009 | BUY | USD | 360000 | 3.33 | $ 206,858.65 | $ (6,608.20) |
| 3533909 | AXL | American Axle & Manufacturing, Inc. | 12/18/2007 | 6/20/2012 | SELL | USD | 950000 | 0.82 | $ 40,551.22 | $ (3,720.83) |
| 3535561 | R | Ryder System, Inc. | 12/14/2007 | 6/20/2012 | SELL | USD | 950000 | 6.25 | $ (3,538.90) | $ 15,503.47 |
| 3543461 | URI | United Rentals (North America), Inc. | 12/18/2007 | 12/20/2012 | BUY | USD | 950000 | 7 | $ (332,418.86) | $ 17,363.89 |
| 3565568 | MBIA | MBIA Insurance Corporation | 1/22/2008 | 3/20/2013 | SELL | USD | 380000 | 5 | $ 154,942.68 | $ (4,081.11) |
| 3638349 | AXL | American Axle & Manufacturing, Inc. | 1/23/2008 | 9/20/2013 | SELL | USD | 380000 | 4.75 | $ 138,723.78 | $ (20,153.89) |
| 3086957 | GP | GEORGIA-PACIFIC LLC | 2/7/2008 | 3/20/2013 | BUY | USD | 760000 | 5.5 | $ (1,235.48) | $ (21,826.89) |
| 3635272 | CCS | ... Chemical Services | 2/7/2008 | 3/20/2013 | BUY | USD | 760000 | 0 | $ (3,600.00) | $ 5,693.33 |
| 3638306 | CHK | Chesapeake Energy Corporation | 2/11/2008 | 3/20/2011 | BUY | USD | 930000 | 2.4 | $ (1,982.61) | $ 7,193.61 |
| 3642461 | NRG | NRG Energy, Inc. | 3/5/2008 | 3/20/2013 | BUY | USD | 930000 | 2.9 | $ 9,828.49 | $ 4,680.25 |
| 3684162 | NRG | NRG Energy, Inc. | 3/10/2008 | 3/20/2013 | BUY | USD | 570000 | 3.15 | $ 7,303.81 | $ (13,717.47) |
| 3702671 | NRG | NRG Energy, Inc. | 5/2/2008 | 6/20/2013 | SELL | USD | 570000 | 3.85 | $ 343,304.64 | $ (17,315.42) |
| 3689689 | AXL | American Axle & Manufacturing, Inc. | 6/2/2008 | 6/20/2013 | SELL | USD | 1330000 | 7.3 | $ 33,478.48 | $ 3,087.50 |
| 3900682 | FSA | Financial Security Assurance Inc. | 6/2/2008 | 9/20/2013 | SELL | USD | 950000 | 7 | $ — | $ — |
| 4007795 | WM | Washington Mutual, Inc. | 6/13/2008 | | | USD | 500000 | | $ (350,125.18) | $ 63,117.59 |
| | | | | | | | | | $ 3,565,655.00 | |

Payment Totals:
$ 3,565,655.00   Total Value of CDS Trades as of 9/24/08
$     63,117.59   Unsettled Quarterly CDS Interest Pmts
$ 3,628,772.59   Total Payment Due to SRI Fund, LP

Please wire $3,628,752.65 to the following Standard Settlement Instructions:

JPMorgan Chase, New York
ABA 021-000-021
A/C Name: SRI Fund, L.P.
A/C #401002328511

GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

**LEHMAN BROTHERS SPECIAL FINANCING INC.** ("Party A") and **SRI FUND, L.P.** ("Party B") have entered into a Master Agreement dated as of **January 12, 2006,** (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, **LEHMAN BROTHERS HOLDINGS INC.,** a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defense of payment or statute of limitations, neither of which is waived); provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) This Guarantee shall remain in full force and effect until such time as Party B shall receive written notice of termination. Termination of this Guarantee shall not affect Guarantor's liability hereunder as to obligations incurred or arising out of Transactions entered into prior to the termination hereof.

(e) Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Master Agreement affecting Party A or Guarantor.

(f) Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.

JAMES J KILLERLANE, VICE PRESIDENT

Date: April 27, 2006

UNANIMOUS WRITTEN CONSENT OF THE

EXECUTIVE COMMITTEE OF THE

BOARD OF DIRECTORS OF

LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

WHEREAS, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

WHEREAS, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

WHEREAS, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

WHEREAS, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

WHEREAS, Management wishes to establish additional Guaranteed Subsidiaries,

WHEREAS, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

WHEREAS, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

NOW THEREFORE BE IT,

**RESOLVED**, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

**RESOLVED**, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

**RESOLVED**, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

**RESOLVED**, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

**FURTHER RESOLVED**, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 7, 2005

Richard S. Fuld, Jr.

John D. Macomber

2

Schedule A
to LBHI Unanimous Written Consent
dated June 9, 2005

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

3

Page 1 of 1

From:   Origin ID: FTWA   (817) 878-3580
NATALIE CARLGREN
KELLY HART & HALLMAN LLP
201 MAIN STREET
SUITE 2500
FORT WORTH, TX 76102


FedEx
Express

Ship Date: 21SEP09
ActWgt: 0.5 LB
CAD: 112032I/INET9090
Account#: S *********

Delivery Address Bar Code

SHIP TO:   (800) 000-0000          BILL SENDER

**Epiq Bankruptcy Solutions, LLC**
**ATN: Lehman Brothers Holdings Claim**
**757 3RD AVE FRNT 3**

**NEW YORK, NY 10017**

Ref #   0527/05722.0103
Invoice #
PO #
Dept #



TRK#   7969 6314 6168
0201

TUE - 22SEP          A1
PRIORITY OVERNIGHT

SEP 2 2 2009

# NQ OGSA

10017
NY-US

EWR

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en/PrintIFrame.html                                      9/21/2009

From:   Origin ID: FTWA   (817) 878-3580
NATALIE CARLGREN
KELLY HART & HALLMAN LLP
201 MAIN STREET
SUITE 2500
FORT WORTH, TX 76102



Ship Date: 23DEC10
ActWgt: 0.5 LB
CAD: 1120321/INET3090

SHIP TO:   (000) 000-0000        BILL SENDER
**Epiq Bankruptcy Solutions, LLC**
**ATN: Lehman Brothers Holdings Claim**
**757 3RD AVE FL 3**
**3RD FLOOR**
**NEW YORK, NY 10017**

Delivery Address Bar Code



Ref #   0527/05722.0103
Invoice #
PO #
Dept #

RECEIVED

DEC 2 8 2010



TRK#
0201   7942 6009 4453



FRI - 24 DEC  A1
PRIORITY OVERNIGHT

10017
NY-US

**NB OGSA**

EWR

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.