WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Financial Products Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br><br>Defendants. | Adversary Proceeding<br>No. 10-03544 (JMP) |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br><br>Counterclaimant,<br><br>- against - | |

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO II, LIMITED, LIBERTY SQUARE CDO II, CORP.,

        Counterclaim and Crossclaim Defendants,

        - and-

CEDE & CO., as nominee of THE DEPOSITORY TRUST COMPANY, as the holder of certain notes,

        Additional Crossclaim Defendants.

**DECLARATION OF LAWRENCE BRANDMAN
IN SUPPORT OF MOTION PURSUANT TO SECTION
105(a) OF THE BANKRUTPCY CODE FOR APPROVALOF
THE TERMINATION AGREEMENT BY AND AMONG LEHMAN
BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO I, CORP.,
LIBERTY SQUARE CDO II, LIMITED, AND LIBERTY SQUARE CDO II, CORP.**

    Pursuant to 28 U.S.C. § 1746, I, Lawrence Brandman, declare:

    1.    I am over the age of 18 years and make these statements of my own personal knowledge based on my personal experience, my review of business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), Lehman Brothers Financial Products Inc. ("LBFP"), and/or certain of their affiliates (collectively, the "Chapter 11 Estates"), and/or my consultation with other employees of and advisors to the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

    2.    I submit this Declaration in support of the *Motion Pursuant to Section 105(a) of the Bankruptcy Code for Approval of the Termination Agreement By and Among Lehman Brothers Holdings Inc., Lehman Brothers Financial Products Inc., Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp.*, dated March 13, 2013 [ECF No. 35908] (the "Motion").[1]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

3.      I am Managing Director, Derivatives Legal, Head of Bankruptcy Strategic Advisory with LBHI.  One of my primary areas of responsibility is managing the Chapter 11 Estates' mediations relating to derivatives transactions.  I also supervise the management of a portfolio of the Chapter 11 Estates' derivatives transactions, including with counterparties that are special purpose entities.  In those roles I have independently reviewed, have become familiar with, and have personal knowledge regarding many derivatives transactions that the Chapter 11 Estates entered into before their bankruptcies, including the transactions that are the subject of the Motion.  I have been the primary representative for the Chapter 11 Estates in connection with the matters set forth in the Motion (the "<u>Liberty Square Matters</u>"), including for the ADR process that resulted in the entry of the Termination Agreement.

4.      I am thus fully familiar with the facts underlying the Motion, which I approved prior to its filing.  I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

### The ISDA Master Agreements and the Issuer Transaction Documents

5.      It is my understanding that prior to LBFP's and LBHI's respective Commencement Dates, each of the Issuers issued several series of notes (collectively, the "<u>Notes</u>") pursuant to certain transaction documents, including trust indentures, specific to each Issuer (collectively, the "<u>Issuer Transaction Documents</u>").  Pursuant to the Issuer Transaction Documents, The Bank of New York Mellon Trust Company, National Association (the "<u>Trustee</u>") acts as successor indenture trustee for the benefit of the Secured Parties (as defined in the relevant Issuer Transaction Documents).

6.      It is also my understanding that certain proceeds of the offerings of the Notes were used by each of the Issuers to, among other things, enter into interest rate hedge

3

agreements, and interest rate swap transactions pursuant thereto, with LBFP. Specifically, LBFP and Liberty Square CDO I, Ltd. entered into one or more derivatives transactions that were governed by a 1992 ISDA Master Agreement, dated as of March 2, 2001, which included certain schedules, documents, confirmations, and a guaranty of the obligations of LBFP by LBHI (collectively, the "LS I ISDA Master Agreement"). LBFP and Liberty Square CDO II, Ltd. entered into one or more derivatives transactions that were governed by a 1992 ISDA Master Agreement, dated as of April 26, 2001, which included certain schedules, documents, confirmations, and a guaranty of the obligations of LBFP by LBHI (collectively, the "LS II ISDA Master Agreement" and, together with the LS I ISDA Master Agreement, the "ISDA Master Agreements").

7. It is my further understanding that to secure the performance and payment of their respective obligations under the Notes and the ISDA Master Agreements, the Issuers each granted the Trustee, for the benefit of, among others, LBFP and the holders of the Notes (each, a "Noteholder" and, collectively, the "Noteholders"), an interest in all of the Issuers' respective assets, including funds received thereon and proceeds of the sale thereof (collectively, the "Collateral").

8. It is the understanding of the Chapter 11 Estates that the Collateral is insufficient to satisfy both the claims of all of the Noteholders and the claims of LBFP under the ISDA Master Agreements. As set forth in detail below, a legal dispute exists regarding the enforceability of certain provisions in the Issuer Transaction Documents that purport to modify LBFP's right to receive payment priority solely as a result of the filing of a petition under the Bankruptcy Code (the "Modification Provisions") as well as concerning the valuation of the amounts owed by each of the Issuers to LBFP and LBFP's entitlement to default rate interest.

The enforceability of the Modification Provisions likely will affect whether LBFP will receive payment from the Collateral in satisfaction of its claims under the ISDA Master Agreements.

9.  My understanding is that, in response to LBFP's demand, the Trustee has reserved approximately $15 million pending resolution of the Parties' disputes (such amount, the "Disputed Funds").

### The Adversary Proceeding and ADR Process

10. On April 23, 2010, LBFP served an initial ADR Notice (the "ADR Notice") on the Issuers, the Trustee, and the investment advisor for the Issuers (the "Investment Advisor") pursuant to the Court's ADR Procedures Order, demanding payment of the amounts owed to LBFP under the ISDA Master Agreements without regard to the Modification Provisions and with default interest.

11. On September 14, 2010, LBFP filed this adversary proceeding against the Trustee and the Issuers to challenge the Modification Provisions as unenforceable *ipso facto* clauses or as avoidable, preferential, or fraudulent transfers in violation of the Bankruptcy Code, Adversary Proc. No. 10-3544 (JMP) (the "Adversary Proceeding").

12. On October 20, 2010, the Court issued an Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) [ECF No. 12199] (the "Stay"), thereby staying the Adversary Proceeding to give the parties to the Adversary Proceeding and other similar actions time to attempt to resolve their disputes consensually or in a Court-ordered ADR process. I have also been informed that the Stay has been extended, most recently to July 20, 2013, pursuant to the Court's Order Extending Stay of Avoidance Actions and Granting Certain Related Relief

5

Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), dated February 15, 2013 [ECF No. 34697].

13.   After the Trustee and the Investment Advisor asserted in the initial ADR process that they had no authority to settle the Parties' disputes, on April 1, 2011, LBFP served an SPV Derivatives ADR Election and the ADR Notice on the Issuers, the Trustee, and the Investment Advisor pursuant to the SPV ADR Procedures Order.

14.   On September 11, 2012, the Issuers, the Litigation Subcommittee of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and I, along with others on behalf of LBFP and the parties' respective professional advisors, engaged in mediation pursuant to the SPV ADR Procedures Order (the "Mediation") with the assistance of a court-appointed mediator, resulting in the settlement that was later memorialized in the Termination Agreement.

**The Interpleader Action**

15.   The Termination Agreement compromises the legal disputes between the Parties.  The Trustee did not participate in the Mediation and I understand takes no position on the fairness of the settlement and requires the direction of the Court as to the proper disposition of the Disputed Funds prior to making any distributions pursuant to the Termination Agreement. Thus, the Trustee sought to file a counterclaim and crossclaim for interpleader and declaratory relief to (i) obtain a ruling as to which parties are entitled to receive the Disputed Funds held by the Trustee, and (ii) provide absent Noteholders with the opportunity to state a claim to the Disputed Funds or voice objection to the Termination Agreement (the "Interpleader Action").[2]

---

[2] The descriptions of documents set forth herein are being provided as summaries only.  In the case of an inconsistency between the summary herein and the documents, the terms of the documents shall control.

16. On January 17, 2013, the Plan Administrator, on behalf of LBFP, filed in the Adversary Proceeding the Notice of Lifting of Stay for Limited Purpose of Permitting the Filing of Interpleader Counterclaim and Responses Thereto [Adv. Proc. ECF No. 15], lifting the Stay for limited purposes, including to permit the Trustee to file the Interpleader Action and for the Court to consider approval of the Termination Agreement. On January 28, 2013, the Trustee filed the Interpleader Action [Adv. Proc. ECF No. 18].

17. On March 14, 2013, the Plan Administrator filed the Answer to Counterclaim and Claim to Interpleader Funds of Lehman Brothers Financial Products Inc. [Adv. Proc. ECF No. 30], answering the allegations set forth in the Interpleader Action, asserting a claim to the Disputed Funds, and seeking approval of the Termination Agreement. On March 15, 2013, Cede filed the Answer of Cede & Co., as Nominee of the Depository Trust Company, to the Counterclaim and Crossclaim for Interpleader and Declaratory Relief [Adv. Proc. ECF No. 31], noting its nominal interest in the Interpleader Action.

18. On March 19, 2013, the Court entered the Interpleader Order [Adv. Proc. ECF No. 32]. The Interpleader Order provides a method through which all parties claiming a right to the Disputed Funds may appear and assert their interests therein. If no one other than a Party asserts a claim to the Disputed Funds by April 18, 2013 (*i.e.* the expiration of the Interpleader Deadline), then the settlement memorialized in the Termination Agreement will be effectuated if the Motion is granted.

### The Termination Agreement

19. The Termination Agreement reflects the settlement terms reached in the Mediation with respect to the claims asserted by LBFP in the ADR Notice and the Adversary Proceeding.

US_ACTIVE:\44219533\6\58399.0008

20. Pursuant to the Termination Agreement, upon its effective date, the settlement payment, which is less than the full amount of the Disputed Funds, will be made on behalf of the Issuers by the Trustee to LBFP and the Parties will exchange a mutual release of all claims related to the ISDA Master Agreements and the Adversary Proceeding.[3] In addition, I believe the remainder of the Disputed Funds will be dispersed to pay expenses or to satisfy the claims of Noteholders.

21. The Termination Agreement includes, as a condition precedent to its effectiveness, a provision requiring this Court's approval of such agreement.

22. Although the Interpleader Deadline has not yet passed, it is critical that the Parties obtain approval of the Termination Agreement as soon as possible because, as I have been informed, the Notes issued by Liberty Square CDO I, Limited are scheduled to mature on April 15, 2013. If the Termination Agreement is not approved by the Court in advance of such Notes' stated maturity, thereby permitting a distribution of the Disputed Funds, it is likely that there will be a payment default on the Notes issued by Liberty Square CDO I, Limited. In that case, the Parties' ability to finalize a settlement of their claims in an efficient and timely manner may be jeopardized.

23. The Plan Administrator thus requests that the Court approve the Termination Agreement now, subject to the conditions subsequent described below, so that the settlement may be effectuated prior to the forthcoming maturity of certain of the Notes or as soon

---

[3] In keeping with paragraphs 4 and 13 of the SPV ADR Procedures Order and the confidentiality provisions of the Termination Agreement, and due to LBHI and LBFP's desire to keep the economic terms of the settlement confidential, the settlement amount has been redacted from the Termination Agreement annexed as Exhibit A to the Motion. The Parties will provide a non-redacted version of the Termination Agreement to the Court, the U.S. Trustee for Region 2, the Creditors' Committee, and any other party directed by the Court. A non-redacted version of the Termination Agreement also will be provided by Lehman on behalf of the Trustee to any Noteholder who agrees in writing to maintain the confidentiality of the settlement amount and to abide by the confidentiality provisions of the SPV ADR Procedures Order and the Termination Agreement.

8

thereafter as possible.  The condition subsequent will be the filing by the Plan Administrator of a certification (the "Certification") on the docket in LBHI's Chapter 11 Case and the Adversary Proceeding upon the expiration of the Interpleader Deadline declaring that no Contesting Party, other than a Party, has appeared and asserted a claim, before the expiration of the Interpleader Deadline, to the Disputed Funds, or a right to the Disputed Funds under the Issuer Transaction Documents for either of the Issuers, or stated any objection to the Termination Agreement.  If any Contesting Party, other than a Party, has asserted a claim or any objection, then the Termination Agreement will not become effective at that time and the Parties will consider next steps to obtain this Court's approval.

**The Termination Agreement Is in Lehman's Best Interests and Should Be Approved**

24. The Termination Agreement obviates the need for continuing litigation of the disputes between the Parties and avoids the costs, including potentially significant amounts of limited resources, and risks associated with such litigation, including at the appellate level.  The Termination Agreement allows LBFP to collect the settlement payment promptly instead of collecting a judgment in an unknown amount, if any, possibly years into the future.  The payments made by the Trustee on behalf of the Issuers pursuant to the Termination Agreement will be available for distribution to LBFP's creditors.

25. For the reasons set forth above, I and my colleagues involved in the management of the Chapter 11 Estates, as well as counsel to the Chapter 11 Estates and the Creditors' Committee, have concluded, in our considered business judgment, that LBHI and LBFP's decision to consummate the Termination Agreement is in the best interests of LBHI's and LBFP's respective estates and creditors.  We believe the Termination Agreement was entered into in good faith, negotiated at arm's-length, and achieves a fair and equitable result for

9

LBHI and LBFP and their respective estates and unsecured creditors.  Therefore, the Motion, which seeks approval of the Termination Agreement, should be granted.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 21st day of March 2013.

/s/ Lawrence Brandman
Lawrence Brandman