# EXHIBIT E

1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                            --oOo--

4  In Re:                      ) Case No. SA08-15588-ES
                               )
5  LBREP/L-SUNCAL MASTER I, LLC, ) Santa Ana, California
                               ) Wednesday, December 22, 2010
6           Debtor.            ) 2:00 p.m.
                               )
7  ─────────────────────────────

8                              ORAL RULING RE: CONT'D HEARING
                               RE: MOTION TO APPROVE AMENDED
                               AND RESTATED COMPROMISE
9                              BETWEEN THE TRUSTEE, THE
                               OFFICIAL COMMITTEE OF
10                             UNSECURED CREDITORS, AND
                               LEHMAN COMMERCIAL PAPER INC.,
11                             IN ITS INDIVIDUAL CAPACITY AND
                               AS ADMINISTRATIVE AGENT FOR
12                             THE 1ST LIEN LENDERS (ORDER
                               GRANTING EMERGENCY MOTION FOR
13                             HEARING DATE ON REGULAR NOTICE
                               ENTERED 9/20/10)
14
                               CONT'D HEARING RE: DISCLOSURE
15                             STATEMENT FILED BY ALFRED H.
                               SIEGEL, CHAPTER 11 TRUSTEE,
16                             DESCRIBING CHAPTER 11 PLAN

17

18                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE ERITHE SMITH
19                 UNITED STATES BANKRUPTCY JUDGE

20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

```
                                                                    ii

 1  APPEARANCES:

 2  For LBREP Lakeside:          MARK MCKANE, ESQ.
                                 Kirkland & Ellis
 3                               555 California Street
                                 Suite 2700
 4                               San Francisco, California
                                   94101
 5                               (415) 439-1400

 6  For the Official Committee of   DANIEL REISS, ESQ.
      Unsecured Creditors:          Levene, Neal, Bender, Yoo
 7                                    & Brill
                                    10250 Constellation Boulevard
 8                                  Suite 1700
                                    Los Angeles, California 90067
 9

10  For Lehman Commercial Paper    ANDREW TROOP, ESQ.
      Inc.:                        JESSICA FINK, ESQ.
11                                 Cadwalader, Wickersham & Taft
                                   One World Trade Financial
12                                   Center
                                   New York, New York 10281
13
                                   DAVID ZARO, ESQ.
14                                 Allen, Matkins, Leck, Gamble
                                     & Mallory
15                                 515 South Figueroa Street
                                   7th Floor
16                                 Los Angeles, California 90071

17                                 ARTHUR STEINBERG, ESQ.
                                   King & Spalding
18                                 1185 Avenue of the Americas
                                   New York, New York 10036
19                                 (212) 556-2100

20  For Gramercy Warehouse         KIMBERLY JAIMEZ, ESQ.
      Funding:                     Skadden Arps
21                                 300 South Grand Avenue
                                   Los Angeles, California 90071
22

23

24

25
```

*Briggs Reporting Company, Inc.*

iii

1  APPEARANCES:   (cont'd.)

2  For SunCal Management:          RONALD RUS, ESQ.
                                   JOEL MILIBAND, ESQ.
3                                  Rus, Miliband & Smith
                                   2211 Michelson Drive
4                                  Suite 700
                                   Irvine, California 92612
5

6  For Chapter 11 Trustee          EVAN SMILEY, ESQ.
     Al Siegel:                    ROBERT MARTICELLO, ESQ.
7                                  Weiland, Golden, Smiley,
                                     Wang Ekvall & Strok
8                                  650 Town Center Drive
                                   Suite 950
9                                  Costa Mesa, California 92626
                                   (714) 966-1000
10

11 For the Chapter 11 Trustee:     ALFRED SIEGEL, ESQ.
                                   15233 Ventura Boulevard
12                                 Ninth Floor
                                   Sherman Oaks, California 91403
13

14 For Fidelity National Title     TARA CASTRO NARAYAN, ESQ.
     Insurance Company:            1331 North California
15                                   Boulevard
                                   5th Floor
16                                 Walnut Creek, California 94596

17                                 GERALD SIMS, ESQ.
                                   Pyle, Sims, Duncan & Stevenson
18                                 401 B Street
                                   Suite 1500
19                                 San Diego, California 92101

20 Court Recorder:                 Rick Reid
                                   United States Bankruptcy Court
21                                 411 West Fourth Street
                                   Suite 2030
22                                 Santa Ana, California 92701

23 Transcriber:                    Briggs Reporting Company, Inc.
                                   6336 Greenwich Drive, Suite B
24                                 San Diego, California 92122
                                   (310) 410-4151
25

*Briggs Reporting Company, Inc.*

iv

<u>I N D E X</u>

<u>EXHIBITS</u>                                              <u>IDENTIFIED</u>

14        Document                                      26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

1

1   SANTA ANA, CALIFORNIA WEDNESDAY, DECEMBER 22, 2010 2:00 PM

2                        --oOo--

3       (Call to order of the Court.)

4           THE COURT:  All right.  The SunCal matter.

5   Appearances.  I'll take the courtroom appearances first.

6           MR. SMILEY:  Good afternoon, your Honor.  Evan

7   Smiley and Robert Marticello of Weiland, Golden, Smiley, Wang

8   Ekvall and Strok appearing on behalf of the Chapter 11

9   trustee, Alfred Siegel who is also the moving party.

10          MS. FINK:  Good afternoon, your Honor.  Jessica

11  Fink of Cadwalader appearing on behalf of LCPI as

12  administrative agent.  I believe my colleague Andrew Troop is

13  on the phone and with me is Yu Kim (phonetic) of Allen

14  Matkins.

15          THE COURT:  Telephonically.  Mr. Van Durrer?

16          MS. JAIMEZ (Telephonic):  Van is not going to be

17  appearing.  This is Kim Jaimez of Skadden, Arps on behalf of

18  Gramercy Warehouse Funding I, LLC.

19          THE COURT:  Very well.  Let's see who's next.

20  Kimberly Jaimez.  I'm sorry you just made the appearance.

21  I'm sorry.  Mr. McKane?

22          MR. MCKANE (Telephonic):  Good afternoon, your

23  Honor.  Mark McKane of Kirkland and Ellis on behalf of LBREP

24  Lakeside SC Master I, LLC.

25          THE COURT:  Ms. Narayan?

*Briggs Reporting Company, Inc.*

2

1          MS. NARAYAN (Telephonic):  Good afternoon, your

2   Honor.  Tara Castro Narayan on behalf of Fidelity National

3   Title Insurance Company.

4          THE COURT:  Mr. Reiss?  Mr. Reiss?

5          MR. REISS (Telephonic):  I'm sorry your Honor, I

6   was on mute.  Daniel Reiss of Levene, Neal, Bender, Yoo and

7   Brill on behalf of the official committee of unsecured

8   creditors.

9          THE COURT:  Mr. Rus?

10          MR. RUS (Telephonic): Good afternoon, your Honor.

11   Ronald Rus and Joel S. Miliband of Rus, Miliband and Smith on

12   behalf of SunCal Management.

13          THE COURT:  Mr. Sims?

14          MR. SIMS (Telephonic):  Good afternoon, your

15   Honor.  Gerald Sims on behalf of Fidelity National Title

16   Insurance Company.

17          THE COURT:  Mr. Steinberg?

18          MR. STEINBERG (Telephonic):  Arthur Steinberg from

19   King and Spalding on behalf of Lehman Commercial Paper, Inc.

20          THE COURT:  Mr. Troop?

21          MR. TROOP (Telephonic):  Good afternoon, your

22   Honor.  Andrew Troop from Cadwalder on behalf of the first

23   lien lenders and their agent LCPI.

24          THE COURT:  Mr. Zaro?

25          MR. ZARO (Telephonic):  Good afternoon, your

*Briggs Reporting Company, Inc.*

3

1 Honor.  David Zaro on behalf of the first lien lenders as

2 administrative agent for the first lien lenders.

3        THE COURT:  All right.  I think that's everyone.

4 I apologize for the delay.  I often try to estimate how long

5 it will take me to review everything, and some times I get

6 that estimate and some times I don't.  So, I do apologize.

7 Fortunately, there are only four people that are actually in

8 Court.  Hopefully the rest of you have been able to multi

9 task during the past hour.  I do appreciate your patience on

10 this.

11        As you all know, my tentative ruling for the

12 hearing on this yesterday was to grant the motion, and I

13 indicated at the hearing that I wanted to hear as much

14 argument as possible, highlighting in particular the

15 objections to the motion.  In connection therewith, there was

16 also cross examination of the moving party, Mr. Siegel, the

17 trustee.  So, since the hearing, I have read my notes from

18 the hearing, as well as my notes which include not only the

19 testimony but the extensive argument of counsel, the

20 pleadings that have been filed.

21        I reread possibly for the 10th time A&C properties

22 and wanted to be sure that before I rendered a decision on

23 this I had fully reviewed and re-reviewed the positions and

24 argument of the various parties.  I'll give you the short

25 answer first I guess so as not to keep anyone in suspense and

4

1 that is my ruling is to grant the motion with certain

2 conditions.

3          One of the conditions is that the maximum credit

4 bid be disclosed as a condition of approval, that is as the

5 amended term sheet currently stands the maximum credit bid is

6 to be determine within 10 days of the entry of the order

7 approving the motion.  After reviewing the argument and the

8 testimony yesterday, one of the concerns that I had at the

9 hearing, I questioned why this number could not be disclosed

10 earlier rather than later or sooner rather than later, and I

11 wasn't completely satisfied that I got a full response on

12 that on why it could not be done sooner.  So, that will be

13 one condition of the approval of the motion.

14          Further, there is I believe it's paragraph T.

15 This is under the section called certain rights and releases

16 on termination event.  I'll just read a portion of paragraph

17 T:

18          "If a final order confirming the plan

19          should not have been obtained by

20          February 28, 2011 or such later date as

21          may be mutually agreed upon by the

22          trustee, LCPI and the creditors

23          committee in no event to be later than

24          March 31, 2011."

25 I just note parenthetically at the hearing that it was

*Briggs Reporting Company, Inc.*

5

1  indicated that that number would be adjusted or take into

2  account the Court's schedule.  Continuing on:

3               "Then (i) the first lien lenders

4               immediately will be granted relief from

5               stay to foreclose on the properties.

6               Bankruptcy court will grant this relief

7               upon the presentation of an order by

8               LCPI, accompanied by a declaration

9               signed by an authorized representative

10              of LCPI confirming that a termination

11              event has occurred.  No party in

12              interest, including without limitation

13              the trustee or the creditors committee,

14              shall be entitled to permit to challenge

15              the presentation of the entry of the

16              order granting LCPI relief from stay

17              with respect to the properties except to

18              the extent, or entry of the order

19              granting except to the extent no

20              termination event has in fact occurred

21              or to be challenged or otherwise

22              interfere with the foreclosure on the

23              properties."

24  I will not approve the agreement with that language.  If

25  there is a termination event as defined in this section of

6

1  the agreement -- the first lien lenders may seek relief from

2  the bankruptcy stay pursuant to applicable bankruptcy rules.

3        I want to be clear that with respect to the

4  language that says -- so, in other words, the first sentence

5  that says the first lien lenders will be granted relief from

6  stay immediately.  That first paragraph then will be deleted.

7  That's the section that I'm not approving, but I am approving

8  the right or recognizing their right to seek relief from

9  stay.  I'm also not modifying the earlier portion of the

10 agreement that permits relief from stay to allow the

11 recordation of a notice of default.  I'm not -- this is

12 independent of that.  I'm focusing specifically on paragraph

13 T(i).

14       I do not have a problem with the portion of the

15 second sentence that says that the trustee and the creditors

16 committee shall not be entitled to challenge the order

17 pursuant to this agreement.  However, I'm not going to

18 approve language that would preclude any other party in

19 interest.  It is stated earlier in this agreement that is it

20 not intended to effect the rights of third parties.  In my

21 view by including a party in interest may be heard to

22 challenge a request for relief from stay that that would

23 impact third parties, specifically under the local bankruptcy

24 rules.  A motion for relief from stay requires notice to

25 junior lien holders.

7

1        Further, I cannot predict or speculate at this

2 point as to whether at the time that any such event of

3 termination would occur that there would not be an existent,

4 a competing plan proponent.  In my view, the competing plan

5 proponent shall not be precluded from being heard on a motion

6 for relief from stay.  So, just to be clear then to the

7 extent that this paragraph would permit immediate relief from

8 stay without a noticed motion and would preclude anyone other

9 than a party to the actual term agreement from appearing in

10 accordance and as permitted by local bankruptcy rules and by

11 law.  I would not be approving that portion under this

12 portion of the agreement.

13        Now, going to the more specifics of the ruling

14 here and taking into account the ninth circuit's decision in

15 In Re A&C Properties.  The parties are all familiar with the

16 holding of this case.  I'm only going to quote some excerpts

17 from the case to put my ruling into context.

18            "The purpose of a compromise agreement

19            is to allow the trustee and creditors to

20            avoid the expenses and burdens

21            associated with litigating sharply

22            contested and dubious claims.  The law

23            favors compromise and not litigation for

24            its own sake.  As long as the bankruptcy

25            court amply considers various factors to

8

1              determine the reasonableness of

2              compromise, the court's decision should

3              be affirmed."

4    In A&C Properties, the circuit court indicated that it needed

5    to determine whether in that case the settlement entered into

6    by the trustee was reasonable given the particular

7    circumstances of the case.  The court further noted that:

8              "There must be more than a mere good

9              faith negotiation of a settlement by the

10             trustee.  The court must also find that

11             the compromise is fair and equitable.

12             In determining the fairness,

13             reasonableness and adequacy of the

14             proposed settlement agreement, the court

15             must consider the probability of success

16             in the litigation, the difficulties, if

17             any, to be encountered in the matter of

18             collection, the complexity of the

19             litigation involved and the expense and

20             convenience and delay necessarily

21             attending it.  The paramount interest of

22             creditors in proper deference to their

23             reasonable views in the premises.  The

24             trustee has the burden of persuading the

25             court that the compromise is fair and

9

1          equitable and should be approved."

2          In considering the A&C Properties factors, I did

3 spend a lot of time reviewing the pleadings and the evidence

4 submitted in support of the motion.  In reviewing the

5 probability of success in the litigation -- I'll start with

6 reference to the opposition presented.  There's vigorous

7 argument by the objecting parties that the trustee in

8 entering into this compromise arrangement was abandoning

9 viable claims or claims rather that the trustee had

10 previously indicated were meritorious or viable, and had a

11 potential value of somewhere in the neighborhood of

12 $300,000,000.

13          It's the view of the objecting parties that the

14 trustee had not provided evidence sufficient to support his

15 position that the challenges that the trustee felt in the

16 face and litigating the estate claims against the first lien

17 lenders were significant enough to warrant and justify and

18 constitute a reasonable exercise of business judgment with

19 respect to the terms of the compromise.  In my review of the

20 evidence and both the declaration submitted by Mr. Siegel, as

21 well as deposition testimony, I don't think there is any

22 question that Mr. Siegel believes that the estate claims have

23 merit.

24          He has expressed, and vigorously in his own right,

25 the uncertainty and difficulties that would be associated in

10

1   prosecuting those claims.  I just want to read a little

2   portion of his declaration where he states -- this is

3   declaration filed October 18, 2010:

4               "While I believe the estate claims have

5               merit, I recognize that litigation has

6               risk and I may not prevail.  The estate

7               claims will be difficult and costly to

8               prove as I must prevail on multiple

9               complex issues of fact and law to

10              prevail in the estate claims.  LCPI

11              vigorously disputes the allegations

12              related to these and claims and believes

13              it will prevail in the action on the

14              estate claims.  Due to numerous

15              outstanding disputed issues, success on

16              the estate claim is uncertain.  For the

17              estate claims to have value, I must

18              succeed in defending against the LCPI

19              stay relief motions which in the absence

20              of a settlement, LCPI would continue to

21              pursue.  As LCPI is a debtor in its own

22              bankruptcy case, any redress for LCPI's

23              alleged misconduct would likely have to

24              come from the cash on hand or the value

25              on the property as opposed to payment of

*Briggs Reporting Company, Inc.*

11

1     money damages which is not possible if

2     LCPI obtains stay relief and is able to

3     foreclose.  Uncertainty also exists

4     regarding my ability to sell properties

5     to a third party free and clear of liens

6     over LCPI's objection.  The likelihood

7     that I will succeed on the motion to

8     settle the properties free and clear of

9     the first lien lender's liens and to

10    deny the first lien lender's credit bid

11    rights is uncertain.  We'll overall

12    likely have to succeed on the trustee's

13    stay relief motion prior to attempting

14    to sell the properties free and clear of

15    LCPI's liens or denying LCPI's credit

16    bid rights or the estates could be

17    subject to sanctions for local violation

18    of the automatic stay.  Based on the

19    initial hearing on the trustee's stay

20    relief motion, it's far from clear how

21    the New York bankruptcy court will

22    ultimately rule in the absence of a

23    settlement.  There's a very real risk

24    that the New York bankruptcy court could

25    deny the trustee's stay relief which

12

1    will greatly limit alternatives to

2    administering the Debtor's estates.

3    Without the proposed settlement, I would

4    also likely face continued objections by

5    LCPI to the use of cash collateral to

6    preserve the properties and/or to

7    administer the estates.  I will be

8    forced to defend the appeal.  The

9    amended term sheet avoids the costs and

10   risks associated with litigating the

11   estate's claims, as well as the costs

12   and risks associated with attempting to

13   sell the properties to a third party

14   free and clear of the first lien

15   lender's liens, the ongoing disputes of

16   use of cash collateral, defending the

17   LCPI stay relief motions.  If I were

18   required to litigate each and every

19   dispute with LCPI to conclusion, the

20   estate could incur millions of dollars

21   in professional fees and costs.  In

22   addition to the expense of risk,

23   litigation of the estates disputes with

24   LCPI would span two separate bankruptcy

25   courts and in the end the estate's

13

1    opportunity to realize value from LCPI's

2    asserted collateral could be lost.  If

3    the New York bankruptcy court denies the

4    trustee's stay relief motion, the

5    administration of debtors' cases will be

6    paralyzed as I will be unable to move

7    the debtors cases forward.  Rather, I

8    would likely be limited to simply

9    seeking authority to use cash collateral

10   to maintain the status quo.  The amended

11   term sheet establishes a frame work for

12   the sale of the properties in the near

13   future with the first lien lender's

14   consent on the preservation of the

15   properties in the meantime.  The amended

16   term sheet resolves numerous disputes

17   thereby saving the estates substantial

18   administrative expenses.  The amended

19   term sheet entitles the estates to $5.7

20   million dollars to administer the cases

21   and preserve the properties.  Of this

22   sum, the estates are guaranteed $3.7

23   million dollars on the approval of the

24   amended term sheet, even if the proposed

25   plan is not confirmed.  The amended term

14

1          sheet also provides estates with

2          potential to recover significant cash in

3          the future from the sale of the

4          properties to the proposed plan to a

5          third party or subsequently by the first

6          lien lenders or from avoidance action

7          recoveries."

8          With respect to the difficulty in collection, to

9 the extent that the trustee assuming that the trustee

10 prevailed in litigating the estate claims, collectability of

11 any damages from LCPI is obviously complicated and

12 potentially thwarted by the fact that it is in its own

13 bankruptcy case.  Assuming that the trustee would prevail in

14 the litigation, in any litigation resulting in a judgment for

15 damages essentially would have an unsecured claim against the

16 estate of LCPI in its bankruptcy case, and recovery is at

17 best uncertain at this point and likely to be minimal.

18          Collectability is not actually an issue with

19 respect to the subordination matters assuming that the

20 trustee could prevail on that matter.  However, the trustee

21 is also faced with the continuing possibility that LCPI could

22 obtain relief from the bankruptcy stay as to the properties.

23 I would note that notwithstanding the allegations that are

24 set forth in the draft complaint prepared by the trustee, it

25 is clear to the Court that any litigation of estate claims

15

1 would be difficult, complex and protracted.  In other words,

2 the arguments to the contrary notwithstanding nothing in the

3 record suggests or persuades this Court that such litigation

4 would be a "slam dunk."

5       With respect to the interest of creditors, the

6 Court does note that the creditors committee supports the

7 compromise.  The Court also notes that obviously there is

8 strenuous objection to the compromise by the objecting

9 creditors.  So, even if the Court finds that the compromise

10 is in the best interest of creditors generally, the Court

11 recognizes that it may not be at least in the view of the

12 objecting creditors in the best interest of all creditors.

13 Based upon the standards set forth in A&C Properties and

14 other related cases, it seems this is not the charge of the

15 Court, that is to ensure that the compromise is acceptable to

16 all creditors of the estate.

17       In this case, I have reviewed all of the

18 circumstances and I think that in determining whether this

19 compromise is in the best interest of the estate and best

20 interest of the creditors of the estates, I must necessarily

21 take into account the complexity of the litigation.  There's

22 no dispute that the properties themselves are substantially

23 under water.  So, if there is to be distribution to unsecured

24 creditors, the source of any distribution would have to come

25 from the proceeds of litigation if I were to not consider the

16

1 compromise.

2        Given the complexity of the litigation of the

3 estate claims, the uncertainty that would be occasioned by

4 the complexity of the prosecution of those claims, the

5 additional layer of the bankruptcy of LCPI, and the

6 uncertainty as to the probability of success in such

7 litigation.  This, in my view, bears on whether or not this

8 compromise is in the best interest of the estate.  I should

9 amend that to say estates plural.

10        The compromise provides for $3.5 million dollars

11 to the estate and this is from funds that would otherwise not

12 be available to the estate.  Another $2,000,000 or so to

13 preserve and maintain the properties pending plan

14 confirmation.  Also a portion of funds that are currently on

15 deposit with the Yucaipa Valley Water District which I think

16 is somewhere in the neighborhood of $200,000.  These are

17 funds to which the estates would either not be entitled or

18 would have to engage in extensive litigation in order to

19 recover.  For example, if the estates were to challenge the

20 validity of the first lien holders liens.

21        Without doubt there are uncertainties associated

22 with the settlement in terms of what will ultimately be

23 realized or recovered for the estates, specifically the

24 amounts that may be recovered from the sales of the

25 properties that is an unknown at this point.  However, absent

17

1 the agreement and absent extensive litigation challenging the

2 validity of the liens of the first lien holders, the estates

3 would not have realized any recovery at least on the sale of

4 the properties absent the agreement.  There's uncertainty as

5 to the recovery on avoidance actions which the estate is

6 sharing.  However, there really isn't any way to quantify

7 what those recoveries are likely to be since the variables

8 and the contingencies it seems are extensive.

9      I recognize it's the position of the objecting

10 creditors that the trustee, at least in the view of the

11 objecting creditors, did not conduct the type of analysis

12 that the objecting creditors believed was necessary.  I think

13 that given the totality of the circumstances that the trustee

14 has satisfied his burden to show that the amended term sheet

15 is reasonable, fair and adequate again under the

16 circumstances.

17      I understand that there were a number of specific

18 objections raised by the objecting creditors.  Among them,

19 and if I don't state one specifically you can assume that I

20 found it unpersuasive and it's overruled.  There's an

21 argument that the compromise is effectively a substantive

22 consolidation of the Debtors.  I found this argument

23 completely unpersuasive.  Ultimately, there really is in my

24 view no evidence to support that argument.

25      Again, there's a lot of focus on the draft

*Briggs Reporting Company, Inc.*

18

1  complaint and the valuation of the estate claims against LCPI

2  of over $300,000,000. I think that the trustee's position on

3  that has been adequately -- was adequately addressed in the

4  papers as to why notwithstanding what he believed to be the

5  merit in those claims, that given the obstacles associated

6  with the prosecution and recovery that the compromise is a

7  reasonable solution.

8          There were objections concerning issues regarding

9  California law, whether the settlement is in violation of any

10 applicable California law. There was a reference to the

11 proportionate liability. I reviewed that argument. I

12 reviewed my notes regarding oral argument, and I did not find

13 that argument persuasive or that it was really applicable

14 under these circumstances. I also was not persuaded that

15 there was a violation of the California anti deficiency

16 statute. That was an argument.

17         There's also an argument that the term sheet was

18 effectively a subrosa plan and, therefore, should be denied

19 on that basis alone because it included terms that would not

20 be subject to plan confirmation and all the protections and

21 procedures associated with plan confirmation. I did spend a

22 lot of time reviewing this issue because I recognized that

23 the terms of the compromise are very detailed in terms of the

24 treatment of the claim of LCPI and the first lien holders,

25 distribution of certain assets, and so I read the term sheet

19

1  very carefully to make sure that this was not a situation

2  where there's a violation of the Bankruptcy Code with respect

3  to the process established for plan confirmation.

4          I wanted to be sure that with respect to parties

5  that were not -- third parties that were not signatories to

6  this agreement that their rights were not being effected and

7  I wanted to be clear about that because I understand that

8  there are complex relationships.  There's an inter creditor

9  agreement that may or may not play into this but, again, my

10  concern is not as to the relationship between the LCPI and

11  certain of the other junior lien holders, second and third

12  lien holders to the extent that their relationship is

13  governed by the inter creditor agreement.  I don't think

14  there's anything in the term sheet and certainly it doesn't

15  appear to be the intent of the parties to effect rights or

16  responsibilities or claims relating to that inter creditor

17  agreement.

18          There was one other matter.  I'm not sure if this

19  is a condition or perhaps this has already been addressed and

20  agreed to by the trustee and that has to do with the issue of

21  mechanics liens.  It's my assumption that to the extent that

22  there are mechanics lien, lien holders who may have rights

23  that may be superior that they would maintain their priority,

24  and that this amended term sheet would not effect or

25  negatively impact those interests.  The one aspect of the

*Briggs Reporting Company, Inc.*

20

1 amended term sheet which I felt might impact on third parties

2 is as I addressed at the out set and that has to do with the

3 automatic grant of relief and not allowing any party in

4 interest to be heard with respect to relief from stay to

5 permit foreclosure of the properties.

6          I think by modifying or conditioning approval upon

7 a modification of that paragraph T that it will resolve that

8 issue.  I think one of the arguments possibly by the SunCal

9 was that once this motion was approved that there would not

10 be an incentive to proceed with plan confirmation because

11 LCPI and first lien holders could just either credit the

12 entire amount, keep the properties or the trustee thought it

13 had an incentive to go forward with a plan in which case the

14 properties would all be foreclosed on automatically, at least

15 that's the way he'd operate it.  Things would operate under

16 the term sheet.

17          Certainly as the senior lien holders on the

18 properties -- I shouldn't say senior lien holders.  I'm going

19 to call them first lien holders subject to because I don't

20 want to assume there aren't any other mechanics liens that

21 might come into play but this doesn't mean that LCPI would

22 not be able to obtain relief from stay.  I'm certainly not

23 deciding that issue today.  That's still a possibility even

24 with the modification I noted.  I just wanted to ensure that

25 that process would proceed in ordinary course with the proper

21

1 notice and protections that are provided by our local

2 bankruptcy rules.

3        You will also note that with respect to the relief

4 from stay issue that I have not even gone so far as to say

5 that LCPI could come in on an expedited basis.  I do not want

6 to pre-decide that.  If they believe they have grounds to

7 come forward and I'm just saying this.  This is not part of

8 my ruling.  If they believe they have grounds to come on an

9 expedited basis as any other creditor believes it has a right

10 to do, they would again pursue that under the normal

11 bankruptcy rules, but I'm not including that as part of the

12 order that is providing them absolutely with a right to come

13 in on an expedited basis and thereby pre-deciding how the

14 motion will be presented to the Court.

15        There was a request for some special language to

16 be put in the order.  Quite frankly, I think that the

17 language that appears in the term sheet which I think is

18 reflected or essentially appears in Judge Peck's order

19 granting the motion before the New York court in the LCPI

20 bankruptcy that nothing in the amended term sheet is intended

21 to effect the rights, if any, of second lien lenders other

22 than LCPI's second lien lender, the third lien lenders other

23 than LCPI's third lien lenders or any other person as defined

24 in the -- I don't understand my own handwriting.  You all

25 know the name of this.  It's the credit agreement dated

*Briggs Reporting Company, Inc.*

22

1 January 19, 2006.  Except to the extent a person is a party

2 to a term sheet.

3          There was also a request for a determination, this

4 was from Lakeside, that the Court make a finding that

5 Lakeside is not an "affiliate" within the meaning of this

6 amended term sheet.  That I'm not prepared to do.  In other

7 words, I'm not making a ruling one way or another on that

8 issue.  In sum, I find that the trustee has met the

9 requirements for approval of the amended term sheet.  Again,

10 I've considered the objections of each of the objecting

11 creditors and except to the extent that the conditions I have

12 stated for approval addresses any particular objection of the

13 objecting creditors, such objections and each of them are

14 expressly overruled.

15          Also, as a point of clarification with respect to

16 the maximum credit bid, the purpose of requiring that the

17 maximum credit bid be determined and disclosed again for

18 disclosure purposes not as a basis for further argument

19 regarding the merits of the motion.  In other words, if the

20 maximum credit bid is the maximum amount of the claim that

21 was $230,000,000 that's what the parties have agreed to,

22 that's what it is but everyone knows that that's what it is.

23 Also, I think that it's important in the event that any party

24 wishes to appeal this decision that that fact be known and

25 would be presented as part of any appeal.

23

1          Perhaps the simplest way to handle that maximum

2 credit bid would be to simply include it in the order

3 granting the motion.  Any questions?

4          MR. STEINBERG:  Your Honor, this is Arthur

5 Steinberg.  I'm in no -- because I'm not in the courtroom

6 whether anybody else has questions but I did have two

7 comments.  One is the disclosure statement was held until the

8 settlement would be considered.  So, if your Honor would

9 entertain and tell us how to entertain an order approving the

10 disclosure statement for purposes of it being disseminated

11 and --

12          THE COURT:  I have a confirmation schedule.  I

13 just hadn't gotten to the disclosure statement yet.

14          MR. STEINBERG:  I apologize.

15          THE COURT:  I mean I haven't posted it but I have

16 a proposed schedule.  I wanted to finish this part.

17          MR. STEINBERG:  Okay and the other thing is just

18 procedure, and I'm sure people will comment about how to give

19 you an order that memorializes your ruling that you be

20 prepared to entertain whether we settle it or how to present

21 it.

22          THE COURT:  Well, my findings of fact and

23 conclusions of law are as I stated them on the record.  Any

24 order should be presented that is consistent with the same.

25          MR. STEINBERG:  I'm sure trustee's counsel will

*Briggs Reporting Company, Inc.*

24

1 talk.

2          THE COURT:  Yes, and to avoid hopefully any

3 controversy or to reduce the likelihood of controversy over

4 the form of the order, because this comes up some times,

5 except with respect to a couple of modifications that I noted

6 on the record, I really don't have a problem adopting or

7 including as findings to the extent the moving party thinks

8 necessary, the motion and reply.  The reason I say that is

9 some times when the finding -- if parties submit findings of

10 fact and conclusions of law, the moving party might submit

11 findings that mirrors things that are stated in the motion

12 but may not have been specifically stated by me on the

13 record, and then it creates a conflict as to whether I made

14 that finding or I didn't.  So, to hopefully stream line

15 things to the extent that the moving party includes findings

16 or conclusions that are in the motion and reply so long as

17 they are not inconsistent with anything I've stated on the

18 record.  That would be acceptable.

19          MR. RUS:  Your Honor, this is Ronald Rus.  Can I

20 ask the Court a question?

21          THE COURT:  Yes.

22          MR. RUS:  Will you entertain a stay pending appeal

23 or -- I mean if you will obviously you would make -- but if

24 you won't entertain it I would just assume not have to take

25 that step.

25

1      THE COURT:  Are you asking if I would entertain an

2 oral motion for a stay pending appeal?

3      MR. RUS:  Well, I guess in the first instance yes.

4      THE COURT:  And the first instance no.  I mean my

5 answer is no.

6      MR. RUS:  Okay.

7      THE COURT:  But, if you're asking whether I would

8 entertain an application or ex parte application for an order

9 stay pending appeal, you know, it's not a matter of me

10 entertaining it.  If one is filed, I have to review it.

11      MR. RUS:  I guess the point is upon the entry of

12 the order the way the compromise is worded any basis for

13 opposing relief from stay is essentially eliminated upon 10

14 days after entry of the order unless there's a stay.

15      THE COURT:  I'm not following you.  Which

16 paragraph are you reading from?

17      MR. RUS:  The releases become effective upon a

18 final order and a final order is defined as 10 days after

19 your entry of the order unless there is a stay.  So, if the

20 releases are effective 10 days after entry of your order, any

21 basis for any party to oppose relief from stay is essentially

22 eliminated.

23      THE COURT:  Then, I suppose you'll have to seek a

24 stay or file an appeal.

25      MR. RUS:  Well, the appeal won't do it is the

26

1 point I was making.

2          THE COURT:  Well, then you'll have to seek a stay

3 pending appeal.

4          MR. RUS:  Okay.  Thank you.

5          THE COURT:  You only get a stay if you're going to

6 appeal, right?

7          MR. RUS:  Correct.

8          MR. MCKANE:  Judge Smith, it's Mark McKane.  Can I

9 get a point of clarification?  You referenced that the

10 language in Judge Peck's order regarding third parties.  Are

11 you asking that that language be expressly incorporated in

12 your order?  That was an issue you raised in oral argument,

13 and I know you touched on it today but I'm not certain I

14 understand if you want that expressed language included.  I

15 thought you did.

16          THE COURT:  Hold on.  Let me see if I can find it.

17 The language that I read from Judge Peck's order which is

18 Exhibit 14 to the declaration of Joshua Hurwit is taking

19 verbatim from the actual amended term sheet, and that's what

20 I read.  In other words, if you look at Judge Peck's --

21          "Notwithstanding anything to the

22          contrary.  Nothing in the amended terms

23          is intended to effect the rights."

24 Is that what you were referring?

25          MR. MCKANE:  Yes, I'm referring to the first full

27

1  paragraph of the last page of Judge Peck's order.

2          THE COURT:  Yes, and he got that language directly

3  from the amended term sheet.  If you look at the term sheet,

4  page three, paragraph B I believe it's the last sentence,

5  last full sentence.

6          MR. MCKANE:  Your Honor, respectfully I think that

7  he goes farther because he says of any person including the

8  second and third liens whereas the term sheet does not say

9  any person.  I understand your direction.  You're not willing

10 to determine what kind of person I am.  Am I an affiliate or

11 a third party --

12         THE COURT:  We don't have to argue about that.  I

13 don't mind having that language in there.  That language is

14 fine.

15         MR. MCKANE:  Thank you, your Honor.

16         MR. RUS:  Your Honor, this is Ronald Rus again.

17 Can I ask another question?

18         THE COURT:  Yes.

19         MR. RUS:  I'm just trying to get some idea of the

20 timing of the order given where we are and the holiday

21 season.  So, I guess we haven't seen the order yet.  So, I

22 guess an order is going to be crafted and it will have in it

23 the bid information.  Can you give us any sort of a feel on

24 seven days after lodging so we can figure out what our timing

25 is?

28

1          THE COURT:  Because it's a contested matter,

2 unless I have an indication that the objecting parties have

3 signed off on the form of the order, I would hold it for

4 seven days.  By the way, apparently it was always my

5 assumption the lodge period was seven court days, but on

6 closer review of the rules it could be a change.  I don't

7 know.  It's seven calendar days.

8          MR. RUS:  Will the Court, you your Honor, be here

9 during that entire time or --

10          THE COURT:  It doesn't matter if I'm here or not

11 because I have access to the network from home.

12          MR. RUS:  Well, the issue I have is --

13          THE COURT:  So, in other words there will be a

14 notation here that when the order comes in it would be marked

15 as urgent, and what typically happens on a matter like that

16 is even if it's being lodged for seven court days if I see

17 it's an urgent order, I will review it.  I'll make my own

18 determination as to whether it's consistent or not and I'll

19 make notes either stating that if no objection is filed the

20 order is okay or -- but I just wait to see whether or not an

21 objection is going to be filed.

22          MR. RUS:  Okay and I guess I don't understand why

23 this particular order would be urgent since they anticipate

24 things to happen in April.

25          THE COURT:  Urgent meaning I would review it as

*Briggs Reporting Company, Inc.*

29

1  soon as possible.  In other words -- because if you've got

2  seven calendar days to file an objection, I would be

3  monitoring to see whether or not an objection was actually

4  filed.  So, putting the urgent what it does is it puts me on

5  my radar basically earlier.

6           MR. RUS:  Okay.  I guess what I was really

7  addressing more is your availability on an ex parte

8  application for a stay of the order because if that's not

9  granted then I have an even shorter period of time to seek a

10 stay from a higher court.

11          THE COURT:  Well, yes and no.  It depends.  It

12 depends on what you say in your motion.  It depends on when I

13 review it.  There are a number of possibilities.  One, I

14 could deny it outright.  Two, I could grant it.  Three, I

15 could grant it on some limited basis meaning grant a

16 temporary for a 14 day stay to permit you to seek a stay in

17 an appellate court.  So, I mean there's no like one answer to

18 what would happen.

19          MR. RUS:  Thank you.

20          THE COURT:  All right.  I'm going to move on to

21 the disclosure statement in just a moment.

22          All right.  Moving onto the disclosure statement.

23 I understand there is a further objection filed by Von

24 Safeguard.  Has that matter been resolved?

25          MR. SMILEY:  No, your Honor.

30

1        THE COURT:  Who's appearing for Von Safeguard?

2        MR. SMILEY:  It was Mr. Broker's firm.

3        THE COURT:  Right.

4        MR. SMILEY:  We did propose language that we

5 believe preserved everyone's rights as part of the amended

6 revisions to the disclosure statement.

7        THE COURT:  All right.  In the proposed

8 language -- okay I see it there.  All right.  This was not

9 agreed to by Mr. Broker?

10       MR. SMILEY:  No, your Honor.  My understanding is

11 Mr. Broker's client wanted the trustee to commit to a

12 position.

13       THE COURT:  I think the language covers the issue

14 from a disclosure stand point.  I would find the paragraph on

15 page two, lines 11 through 15 to be adequate.  I think the

16 other issue regarding the substantive consolidation has been

17 previously addressed at the prior hearing.  So, I'm not going

18 to make any further rulings on that.  In terms of a tentative

19 schedule, the tentative schedule is to set a confirmation

20 hearing date of April 1 which is a Friday, and April 8 as a

21 reserved over flow date which is the following Friday

22 commencing at 10:00 a.m.

23       MR. SMILEY:  That works for me, your Honor.

24       THE COURT:  The following proposed schedule of

25 deadlines.  The deadline to file the final version of the

*Briggs Reporting Company, Inc.*

31

1  disclosure statement January 7.  Deadline to serve plan

2  packages January 21st.  Deadline to return ballots and to

3  object to the plan February 18.  Deadline to file ballot

4  analysis and confirmation brief February 4.

5          MR. SMILEY:  You mean March 4?

6          THE COURT:  Yep, I sure do.  I'm looking at March

7  and saying February.  Deadline to object to confirmation

8  brief March 14.  Deadline to reply to objection to

9  confirmation brief.  The failure to object to confirmation on

10  March 4 -- I'm sorry let me go back.  February 18 does not

11  preclude one from objecting to the confirmation brief on

12  March 14 just so you know.

13          MR. MCKANE:  Your Honor, did you give a reply date

14  after the objections?  I know you gave March 14 as the

15  objection date.

16          THE COURT:  March 25 is the deadline to reply to

17  any objection to the confirmation brief.

18          MR. MCKANE:  Thank you.

19          THE COURT:  If those dates work, then I will post

20  them as I'm doing right now on the tentative ruling so that

21  you can see them all.

22          MR. SMILEY:  Your Honor, I don't think I

23  understood your comment about the February 18th date.  That

24  was the date the ballots are due back.

25          THE COURT:  That's correct.  It's also the

32

1 deadline to file an objection to the plan, to the plan.

2          MR. SMILEY:  Okay.

3          THE COURT:  What I'm saying is some times -- and I

4 realize this whole process is a little awkward.  I don't

5 always do it the same way every time.  Some Debtor's counsel

6 prefer to file a motion for approval of a -- for confirmation

7 or something.  There are different ways to do it but what I

8 found is when the confirmation brief comes in -- because the

9 confirmation has evidence in support of confirmation.  There

10 may be a creditor that has an issue with the evidence itself.

11 So, while it may have rejected the plan but didn't file an

12 objection, once it sees what the evidence is in support of

13 confirmation there may be an issue with that.  At the same

14 time, someone may want to object to the plan but they may not

15 file an objection to the brief or to the evidence.  So,

16 that's why it's sort of bifurcated that way.

17          MR. SMILEY:  I understand, your Honor.  One other

18 question.  I believe the creditors committee, not to speak

19 for Mr. Reiss, submitted a proposed letter to be included and

20 I wanted to know if that was -- I don't know if that's been

21 objected to.  It was provisionally approved last time.  I'm

22 sorry.

23          THE COURT:  Yeah, I thought I had already taken

24 care of that.

25          MR. SMILEY:  You're right, your Honor.  I'm sorry.

33

1          THE COURT:  Any questions regarding the disclosure

2 statement or the plan confirmation schedule?

3          MR. MCKANE:  No, your Honor.

4          THE COURT:  All right.  For the record, the

5 disclosure statement is being approved whatever the current

6 version is at this point, the first amended I guess with the

7 modification noted on the record.  Anything else?

8          MR. SMILEY:  I don't believe so, your Honor

9          THE COURT:  All right.

10          MR. SMILEY:  Thank you very much for your time.

11          THE COURT:  Everyone again, thank you for your

12 patience.  Everyone have a wonderful safe holiday.

13      (Proceedings concluded.)

14

15

16

17          I certify that the foregoing is a correct

18 transcript from the electronic sound recording of the

19 proceedings in the above-entitled matter.

20

21 /s/ Holly Martens_____          1-13-11_____
   Transcriber                      Date
22

23

24

25

*Briggs Reporting Company, Inc.*