# EXHIBIT G

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into as of November 16, 2012, by and among (i) ALFRED H. SIEGEL, solely in his capacity as the liquidating trustee of the liquidating trust (the "Liquidating Trust") created under the confirmed *Second Amended Chapter 11 Plan (Dated April 21, 2011)* (the "Trustee") of LBREP/L-SunCal Master I LLC, LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and LBREP/L-SunCal Summerwind Ranch LLC (collectively, the "Debtors") in their respective jointly-administered bankruptcy cases (the "SunCal Bankruptcy Cases") now pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"); (ii) LBREP LAKESIDE SC MASTER I, LLC, SC MASTER HOLDINGS, LLC, and SC MASTER PARENT HOLDINGS, LLC (collectively, the "LBREP Defendants"); (iii) LAKESIDE CAPITAL PARTNERS II, LLC ("Lakeside"), MELVIN T. ANDREWS, and RONALD W. LEE (collectively, the "Lakeside Defendants"); (iv) SCC RANCH VENTURE, LLC, SCC ACQUISITIONS, INC., SCC ACQUISITIONS, LLC, BRUCE ELIEFF, and MARC MAGSTADT (erroneously sued as Mark Magstadt) (collectively, the "SunCal Defendants" and together with the LBREP Defendants and the Lakeside Defendants, the "Litigation Defendants"); and (v) SUNCAL MANAGEMENT, LLC ("SCM" and together with the Litigation Defendants, the "Defendants" and Defendants together with the Trustee, the "Parties" and each individually a "Party").

### Recitals

WHEREAS, the Trustee has sued the Litigation Defendants in *Siegel v. LBREP Lakeside SC Master I, LLC et al.*, in the United States District Court for the Central District of California, Southern Division, Case No. CV 10-8191-GHK(VBKx), which was referred to the Bankruptcy

1

EXHIBIT 1 PAGE 3

Court for all pre-trial proceedings, Adv. No. 8:11-ap-01084-ES (collectively the "Litigation"). The Litigation asserts claims against the Litigation Defendants for intentional and constructive fraudulent conveyance, unlawful distribution of loan proceeds, breach of fiduciary duty, conversion, unjust enrichment, accounting, aiding and abetting, and conspiracy and seeks constructive trust, actual and punitive damages, accounting, pre-judgment interest, attorneys fees, and costs related to the alleged payment of a dividend pursuant to January 2006 credit agreements (the "2006 Loans") more particularly described in the Trustee's Amended Complaint filed in the Litigation (hereinafter referred to collectively as the "Dividend Claims");

WHEREAS, the Debtors' failure to fully repay the 2006 Loans that are related to the Litigation resulted in certain tax consequences to certain of the Litigation Defendants;

WHEREAS, Gramercy Warehouse Funding I LLC has sued certain of the Defendants in *Gramercy Warehouse Funding I LLC v. LBREP/L-SunCal Master I LLC, et al.* in the Superior Court of California in the County of Los Angeles, Case No. BC397750, which was removed and transferred to the Bankruptcy Court, Adv. No. 8:08-ap-01492-ES (collectively the "Gramercy Litigation"). The Gramercy Litigation asserts claims against certain of the Litigation Defendants identical to the Dividend Claims. Certain of the LBREP Defendants filed a motion to dismiss the Gramercy Litigation on December 5, 2008. Certain of the SunCal Defendants filed a joinder to the motion to dismiss on December 5, 2008.

WHEREAS, the Trustee has sued SCM in *Siegel v. SunCal Management, LLC*, Adv. No. 8:10-ap-01515-ES (Bankr. C.D. Cal.), *Siegel v. SunCal Management, LLC*, Adv. No. 8:10-ap-01516-ES (Bankr. C.D. Cal.), and *Siegel v. SunCal Management, LLC*, Adv. No. 8:10-ap-01517-ES (Bankr. C.D. Cal.) (the "Preference Actions"). The Preference Actions assert claims against SCM to avoid and recover preferential transfers, to preserve avoided transfers, and for attorneys

2

EXHIBIT 1 PAGE 4

fees and costs related to certain alleged pre-petition transfers to SCM (hereinafter referred to collectively as the "Preference Claims" and together with the Dividend Claims, the "Claims");

WHEREAS, Defendants deny the Claims; and

WHEREAS, the Parties have negotiated a compromise settlement of the Claims and any and all other claims that could have been asserted.

<u>Covenants</u>

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      <u>Settlement Payment</u>.  In order to fully and finally settle and resolve the Claims, and as a payment in part of the 2006 Loans, Defendants agree to pay, and the Trustee agrees to accept, a settlement payment in the amount of Sixteen Million Dollars ($16,000,000.00) (the "Settlement Payment").  Within three (3) days of the Settlement Effective Date (as defined in paragraph 3.4 below), that portion of each Defendant's contribution to the Settlement Payment, as set forth in paragraph 1.1 below, for which any insurer is not providing funds shall be paid by wire transfer to the Escrow Agent (as defined in paragraph 1.3 below). Within five (5) days of the Settlement Effective Date (as defined in paragraph 3.4 below), that portion of each Defendant's contribution to the Settlement Payment, as set forth in paragraph 1.1 below, for which any insurer is providing funds shall be paid to the Escrow Agent (as defined in paragraph 1.3 below).  The Escrow Agent (as defined in paragraph 1.3 below), upon receipt of the entire sum of the Settlement Payment or Contingency Settlement Payment (as defined in paragraph 1.2 below), shall wire all available funds, less any funds the Trustee designates to be paid directly to the Trustee's counsel, including Special Counsel in the Litigation, to the Trustee,

3

EXHIBIT 1 PAGE 5

in his capacity as liquidating trustee of the Liquidating Trust provided that within ten (10) days of the execution of this Settlement Agreement, the Trustee shall have provided payment instructions to the Escrow Agent (as defined in paragraph 1.3 below), including an appropriate W-9, and the Parties shall have provided the Escrow Agent (as defined in paragraph 1.3 below) with all necessary information. The Escrow Agreement (as defined in paragraph 1.3 below) shall authorize counsel for the LBREP Defendants to authorize the Escrow Agent (as defined in paragraph 1.3 below) to disperse up to Five Million Five Hundred Thousand Dollars ($5,500,000.00) to the Trustee or Trustee's designated recipient, including Special Counsel in the Litigation, upon the Escrow Agent's (as defined in paragraph 1.3 below) receipt of the entire sum of the Settlement Payment or Contingency Settlement Payment (as defined in paragraph 1.2 below) in cash or check, even though a check may not yet have been rendered into fungible proceeds.

   1.1 <u>Defendants' Allocation</u>. Defendants agree to contribute to the Settlement Payment on the Settlement Effective Date as follows: (i) the LBREP Defendants will collectively contribute Thirteen Million Eight Hundred Thousand Dollars ($13,800,000.00); (ii) the SunCal Defendants and SCM will collectively contribute One Million Five Hundred Thousand Dollars ($1,500,000.00); and (iii) Lakeside will contribute Seven Hundred Thousand Dollars ($700,000.00). Defendants agree that part of the Settlement Payment will be applied to reduce the indebtedness under the 2006 Loans. Subject to the terms and provisions of paragraph 1.2 below, no Defendant other than a Non-Settling Defendant (as defined in paragraph 1.2 below) shall be liable for any payment in excess of its allocated share of the Settlement Payment as set forth in this paragraph 1.1.

4

EXHIBIT 1  PAGE  6

1.2    <u>Contingency Settlement Payment.</u>    Should any contribution

identified in paragraph 1.1 above, other than the contribution of the LBREP Defendants,

not be paid in accordance with the provisions of paragraph 1 above, then the LBREP

Defendants shall have the option of, within seven (7) days of the Settlement Effective

Date (as defined in paragraph 3.4 below), contributing an amount equal to the amount

necessary to bring the contribution total to Fifteen Million Seven Hundred Fifty

Thousand Dollars ($15,750,000.00) (the "<u>Contingency Settlement Payment</u>"), and the

Trustee agrees to accept the Contingency Settlement Payment in order to fully and finally

resolve the Claims, except for the Claims against any Non-Settling Defendant, as defined

below. Any Defendant, other than the LBREP Defendants, that does not make payment,

in accordance with the provisions of paragraph 1 above, of its contribution identified in

paragraph 1.1 above, shall constitute a "<u>Non-Settling Defendant</u>" not entitled to, or

subject to, any of the benefits of this Settlement Agreement, including but not limited to

the releases provided in paragraph 2 below, and the Parties hereto shall have no further

obligations hereunder to each Non-Settling Defendant. Upon receipt of the Contingency

Settlement Payment, the Trustee shall continue to act in a manner consistent with his duty

to act in the best interests of all creditors and shall have discretion to pursue any Claims

he may have against any Non-Settling Defendant, and any recovery therefrom, following

reimbursement of fees and costs related to litigation, shall be split 50/50 between the

LBREP Defendants and the Trustee until the LBREP Defendants' net contribution

reaches Thirteen Million Eight Hundred Thousand Dollars ($13,800,000.00), then split

65/35 between the Trustee and the LBREP Defendants for the remainder of the first

Fifteen Million Dollars ($15,000,000.00) of any net recovery, then split 50/50 between

5

EXHIBIT 1  PAGE 7

the Trustee and the LBREP Defendants for the remainder of any net recovery above Fifteen Million Dollars ($15,000,000.00), but in no event shall the LBREP Defendants' share of the net recovery from the Non-Settling Defendant(s) exceed Eight Million Dollars ($8,000,000.00) in the aggregate.

      1.3    Escrow Agent. The Parties agree to (i) retain a third-party escrow agent ("Escrow Agent") to take receipt of, and distribute, the Settlement Payment in a manner consistent with the terms of this Settlement Agreement and (ii) enter into an escrow agreement ("Escrow Agreement") to effectuate the terms of this Settlement Agreement. The Parties agree to share the cost of the Escrow Agent equally.

      1.4    Termination of Settlement/Return of Settlement Payment. In the event that the settlement contemplated by this Settlement Agreement is not consummated for any reason, including as per the terms of this Settlement Agreement, the Parties shall take all commercially reasonable steps to cause the full payment made by each Defendant of its allocated share of the Settlement Payment, plus any accrued interest, to be promptly transferred back to each Defendant, and any release of the Defendants herein shall be null and void. To the extent that the Escrow Agent has dispersed a portion of the Settlement Payment or Contingency Settlement Payment to the Trustee or the Trustee's designated recipient in accordance with the terms and provisions of paragraph 1 above and the Settlement Agreement is not consummated for any reason, including as per the terms of the Settlement Agreement, (i) the Trustee shall return all dispersed funds to the Escrow Agent received by the Liquidating Trust that have not been otherwise dispersed to any recipient designated by the Trustee or any other third party recipients(s), (ii) any recipient designated by the Trustee shall return all dispersed funds

EXHIBIT 1 PAGE 8

to the Escrow Agent, and (iii) any third party recipient(s) shall return all dispersed funds

to the Escrow Agent, and the Escrow Agent shall return all funds paid by Defendants or

their insurers.

2.    <u>Release and Waiver of Claims</u>.  Upon the Settlement Effective Date and

the Trustee's receipt of the Settlement Payment or Contingency Settlement Payment, and except

as provided herein, the Parties, by and between each Defendant and by and between the Trustee

and each Defendant, unconditionally release, waive, relinquish, exonerate, acquit and forever

discharge each other and each of their directors, officers, members, employees, agents,

representatives, affiliated business entities, attorneys, and insurers, and covenant not to assert

against or sue, directly or indirectly, any of them on or for, any and all claims, complaints,

charges, liabilities, liens, obligations, promises, agreements, controversies, damages, actions,

causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys'

fees and costs) of whatsoever kind or nature, arising in law, equity or otherwise under the law of

any jurisdiction, known or unknown, foreseen or unforeseen, hidden or concealed, asserted or

unasserted, which a Party has, had or may hereafter have based on any fact, matter, cause, thing,

transaction or event, arising out of or relating to any Claims that have been alleged or could have

been alleged in the Litigation or Preference Actions, or arising out of or relating to the SunCal

Bankruptcy Cases, including but not limited to the Real Estate Projects as defined in the SunCal

Bankruptcy Cases.

The Parties hereby expressly waive all rights under the provisions of Section 1542

of the Civil Code of the State of California and any similar rights in any state or territory or

under any similar statute or regulation of the United States or any of its agencies.  Section 1542

of this California Civil Code reads as follows:

7

EXHIBIT 1 PAGE 9

> **A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time
> of executing the release, which if known by him or her must
> have materially affected his or her settlement with the debtor.**

Each Party waives and relinquishes any rights and benefits that any of them may have under

California Civil Code Section 1542 pertaining to the subject of their releases set forth above, and

acknowledges that it is aware that it may hereafter discover facts in addition to or different from

those which it now knows or believes to be true with respect to the matters released above, but

its intention hereby is to fully, finally and forever waive and release the claims released above.

Each Party represents, warrants and agrees that this waiver is a material term of this Settlement

Agreement, without which neither party would have entered into this Settlement Agreement.

For the avoidance of doubt, the release provided for herein does not extend to (i) Lehman

Commercial Paper, Inc., (ii) any Non-Settling Defendant, or (iii) any of their respective non-

settling officers, directors, shareholders, members, or attorneys.

The release provided for herein extends to any proof of claim (filed or to be filed) in the

Bankruptcy Cases by the Defendants or their directors, officers, members, employees, agents,

representatives, affiliated business entities, attorneys, and insurers including, without limitation,

any proof of claim (filed or to be filed) by any SunCal Defendant or SCM. Upon the Settlement

Effective Date and the Trustee's receipt of the Settlement Payment or Contingency Settlement

Payment, any proof of claim (whether filed or to be filed) referenced in this paragraph shall be

deemed released, waived and withdrawn without further order of the Bankruptcy Court and the

Trustee reserves all rights to object to any such proof of claim.

3.   Compromise Motion. The Trustee will seek approval of this compromise

by filing a motion (the "Compromise Motion") under Federal Bankruptcy Rule 9019 within ten

(10) calendar days of the Trustee's actual receipt of a copy of this Settlement Agreement fully

8

EXHIBIT 1  PAGE  10

executed by all non-Trustee parties hereto. The Compromise Motion will seek a good faith finding under California Code of Civil Procedure Section 877.6 and any Defendant may file a supplemental brief in support of a good faith finding. The Trustee shall file the Compromise Motion in all of the SunCal Bankruptcy Cases to obtain approval of this Settlement Agreement.

    3.1    <u>Compromise Order</u>. The order approving the Compromise Motion (the "Compromise Order") must be obtained, entered in the Bankruptcy Court and become a "Final Order" (as defined in paragraph 3.5 below), by no later than December 21, 2012, unless this date is extended by mutual agreement of the Parties.

    3.2    <u>Orders of Dismissal</u>. Upon entry of the Compromise Order, the Trustee shall deliver to the LBREP Defendants stipulations signed by the Trustee and proposed orders dismissing the Litigation and Preference Actions, with prejudice, ("Orders of Dismissal") with the Parties to bear their own attorney fees and costs, to be held in trust and lodged upon the Trustee's receipt of the Settlement Payment or Contingency Settlement Payment. In the event that any Party becomes a Non-Settling Defendant, the Trustee shall deliver to the LBREP Defendants amended Orders of Dismissal omitting any Non-Settling Defendant. If the SunCal Defendants are Non-Settling Defendants then the Orders of Dismissal dismissing the Preference Actions shall not be lodged.

    3.3    <u>Gramercy Dismissal Order</u>. The Trustee will support and file a joinder to the pending motion, filed by certain of the LBREP Defendants and joined by certain of the SunCal Defendants, for an order dismissing the Gramercy Litigation with prejudice (the "Gramercy Dismissal Order").

9

EXHIBIT 1  PAGE  11

3.4    <u>Settlement Effective Date</u>.  Immediately upon (i) the Compromise Order becoming a Final Order (as defined in paragraph 3.5 below), (ii) the delivery of the signed Orders of Dismissal, and (iii) the Gramercy Dismissal Order becoming a Final Order (as defined in paragraph 3.5 below) this Settlement Agreement shall be binding on the Parties (such date being referred to herein as the "<u>Settlement Effective Date</u>").  If the Settlement Effective Date has not occurred on or before December 21, 2012, unless this date is extended by mutual agreement of the Parties, this Settlement Agreement, and the terms and provisions hereof and thereof shall become null and void and of no further force and effect, in which case the Parties hereto shall have no further obligations hereunder or to each other with respect to the subject matter hereof.  The Parties acknowledge that all Parties hereto intend to and will rely on the binding nature of this Settlement Agreement as of the Settlement Effective Date.  If (1) neither the Settlement Payment nor the Contingency Settlement Payment have been received in full by the Escrow Agent by December 28, 2012, or (2) Trustee's Special Counsel in the Litigation does not receive from the Escrow Agent its approved Litigation fees in full by the close of business on December 31, 2012, and these dates have not been extended by further, mutual agreement of the Parties, then this Settlement Agreement and the terms and provisions hereof shall become null and void and of no further force and effect, in which case the Parties hereto shall have no further obligations hereunder or to each other with respect to the subject matter hereof.

3.5    <u>Final Order</u>.  "Final Order" means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's docket where either: (i) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to

10

EXHIBIT 1  PAGE  12

which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (ii) if such an appeal or petition has been timely filed, there is no stay pending appeal or other injunction or court order in place which prohibits the enforcement of the Settlement Agreement.

4.    **Stay Pending Settlement Effective Date.**    The Parties will file a stipulation and order staying the Litigation pending the Settlement Effective Date, including a stay on (i) any hearing or ruling on the Litigation Defendants' motions to dismiss and (ii) any discovery by a Party against another Party.

5.    **Representations and Warranties.**    The Parties represent and warrant to, and agree with, each other as follows:

5.1    **Independent Advice.**    Each Party has received independent legal advice from attorneys of its choice with respect to the advisability of the Settlement Agreement and the releases provided herein and with respect to the advisability of executing this Settlement Agreement.

5.2    **Reliance.**    Except as expressly stated in this Settlement Agreement, no Party has made any statement or representation to any other Party regarding any fact, which statement or representation is relied upon by any other Party in entering into the Settlement Agreement.    In connection with the execution of the Settlement Agreement or the making of the settlement provided for herein, no Party has relied upon any statement, representation or promise of any other Party not expressly contained herein.

11

EXHIBIT 1  PAGE  13

5.3    <u>Investigation</u>.  All Parties hereto and their counsel have made such investigation of the facts pertaining to the releases contained herein as they deem necessary.

5.4    <u>Arm's Length Negotiation</u>.  The terms of this Settlement Agreement are contractual and are the result of arm's length negotiation among the Parties.

5.5    <u>Freely Negotiated</u>.  Each Party has carefully read, knows and freely understands the contents of this Settlement Agreement and represents and agrees that this Settlement Agreement is freely negotiated and that each Party enters into this Settlement Agreement of its own free will and that this Settlement Agreement is acceptable to the Parties as a fair and reasonable resolution of the matters released herein.

5.6    <u>Claims Barred</u>.  Each Party covenants and agrees not to bring any action, claim, suit or proceeding against any Party hereto directly or indirectly, regarding or relating to the matters released hereby, and each Party further covenants and agrees that this Settlement Agreement is a bar to any such claim, action, suit or proceeding. Notwithstanding the foregoing, each Party shall retain the right to bring an action, claim, suit or proceeding to enforce this Settlement Agreement or to otherwise resolve any bona fide dispute concerning any ambiguity in this Settlement Agreement.

5.7    <u>Warranty of Authority</u>.  Each Party represents and warrants that it has fully authorized the person executing this Settlement Agreement to do so on its behalf.

12

EXHIBIT 1  PAGE  14

5.8    No Assignment of Claims.  Each Party represents and warrants that it has not assigned to any third party any of the claims that are the subject of this Settlement Agreement.

5.9    Good Faith Settlement.  The Parties acknowledge and agree that this Settlement Agreement is made in good faith, is the result of arm's length negotiations between the Parties following an adversarial process including discovery, mediation, and settlement discussions, and represents a fair resolution of disputed issues of fact and law. Any Court finding that this Settlement Agreement constitutes a good faith settlement shall not apply to any Non-Settling Defendant.  Any Party other than a Non-Settling Defendant may file this Settlement Agreement or Compromise Order approving the Compromise Motion in any action that may be brought against such Party in order to support a defense or counterclaim based on this good faith settlement.

5.10   Survival of Warranties.   The representations and warranties contained in this Settlement Agreement are deemed to and do survive the execution hereof.

6.     General Matters.  The Parties further understand, stipulate and agree as follows:

6.1    No Admission of Liability.  The Parties explicitly acknowledge that this Settlement Agreement represents a settlement, and that by entering into this Settlement Agreement no Party admits or acknowledges any liability or wrongdoing.

6.2    Modifications.  This Settlement Agreement may not be amended, canceled, revoked or otherwise modified except by written agreement subscribed by all Parties to be charged with such modification.

13

EXHIBIT 1  PAGE  15

6.2     Entire Agreement.   Except as expressly provided herein, this Settlement Agreement contains the entire agreement of the Parties and supersedes all existing negotiations, representations or agreements, and all other oral, written or other communications between them concerning the subject matter of this Settlement Agreement.

6.3     Governing Law.   This Settlement Agreement shall be interpreted, construed, enforced and governed in accordance with the laws of the State of California. The section headings contained in this Settlement Agreement are for reference purposes only, and shall not affect in any manner the meaning or interpretation of this Settlement Agreement. The Parties acknowledge and stipulate that this Settlement Agreement has been negotiated and drafted through their joint and collaborative efforts and that, accordingly, no term, condition or provision should, by reason of the drafting alone, be construed against any of the Parties.

6.4     Successors and Assigns.   This Settlement Agreement shall be binding upon the Parties, their successors and assigns, including any bankruptcy trustee, post-confirmation liquidating agent, liquidating trustee or similar party.

6.5     Severability.   If any one or more of the terms, conditions and/or provisions of this Settlement Agreement shall for any reason be held to be void, invalid, illegal or unenforceable in any respect, such voidness, invalidity, illegality or unenforceability shall not affect the remaining terms, conditions and provisions of this Settlement Agreement, and this Settlement Agreement shall be construed as if such void, invalid, illegal and/or unenforceable term(s), condition(s) and/or provision(s) had never been included in this Settlement Agreement.

EXHIBIT 1  PAGE  16

6.6    Counterpart Execution.    This Settlement Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original, and all of which when executed shall constitute one and the same instrument.

6.7    Attorney Fees and Litigation Expenses.    In the event that any action, motion or proceeding is brought to enforce or interpret the terms of this Settlement Agreement, the prevailing parties shall be entitled to recover, in addition to statutory costs, all expenses incurred in connection with the dispute, including but not limited to reasonable attorneys, expert consultant and expert witness fees. Notwithstanding the foregoing, the prevailing parties shall not have the right to recover fees and costs in connection with the resolution of any bona fide dispute over any ambiguity in this Settlement Agreement.

6.8    Further Action.    In the event that any further action is necessary to effectuate this Settlement Agreement, each of the Parties will take such further action, including the execution and delivery of any further instruments and documents related to this Settlement Agreement, as any of the other Parties hereto reasonably may request.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement on the respective dates of their individual acknowledgments hereof, but effective for all purposes as of the Settlement Effective Date.

*[signature pages to follow]*

15

EXHIBIT 1  PAGE  17



ALFRED H. SIEGEL, solely in his capacity
as the liquidating trustee of the Liquidating
Trust for the Bankruptcy Cases of LBREP/L-
SunCal Master I LLC, LBREP/L-SunCal
McAllister Ranch LLC, LBREP/L-SunCal
McSweeny Farms LLC, and LBREP/L-SunCal
Summerwind Ranch LLC

By: _____
    Name (Print): _ALFRED H. SIEGEL___
    Title (Print): _Trustee___


LBREP LAKESIDE SC MASTER I, LLC

By: _____
    Name (Print): _____
    Title (Print): _____


SC MASTER HOLDINGS, LLC

By: _____
    Name (Print): _____
    Title (Print): _____


SC MASTER PARENT HOLDINGS, LLC

By: _____
    Name (Print): _____
    Title (Print): _____


LAKESIDE CAPITAL PARTNERS II,
LLC

By: _____
    Name (Print): _____
    Title (Print): _____


16

EXHIBIT 1   PAGE   18

ALFRED H. SIEGEL, solely in his capacity
as the liquidating trustee of the Liquidating
Trust for the Bankruptcy Cases of LBREP/L-
SunCal Master I LLC, LBREP/L-SunCal
McAllister Ranch LLC, LBREP/L-SunCal
McSweeny Farms LLC, and LBREP/L-SunCal
Summerwind Ranch LLC

By:_____
    Name (Print):_____
    Title  (Print):_____

LBREP LAKESIDE SC MASTER I, LLC

By:_____
Name (Print):_____
Title  (Print):  Rodolpho Ambois
                 Authorized Signatory

SC MASTER HOLDINGS, LLC

By:_____
Name (Print):_____
Title  (Print):  Rodolpho Ambois
                 Authorized Signatory

SC MASTER PARENT HOLDINGS, LLC

By:_____
Name (Print):  Rodolpho Ambois
Title  (Print):  Authorized Signatory

LAKESIDE CAPITAL PARTNERS II,
LLC

By:_____
    Name (Print):_____
    Title  (Print):_____

16

EXHIBIT 1  PAGE  19

ALFRED H. SIEGEL, solely in his capacity
as the liquidating trustee of the Liquidating
Trust for the Bankruptcy Cases of LBREP/L-
SunCal Master I LLC, LBREP/L-SunCal
McAllister Ranch LLC, LBREP/L-SunCal
McSweeny Farms LLC, and LBREP/L-SunCal
Summerwind Ranch LLC

By:_____
    Name (Print):_____
    Title  (Print):_____


LBREP LAKESIDE SC MASTER I, LLC

By:_____
    Name (Print):_____
    Title  (Print):_____


SC MASTER HOLDINGS, LLC

By:_____
    Name (Print):_____
    Title  (Print):_____


SC MASTER PARENT HOLDINGS, LLC

By:_____
    Name (Print):_____
    Title  (Print):_____


LAKESIDE CAPITAL PARTNERS II,
LLC

By: _____
    Name (Print): Melissa R Andrews
    Title  (Print): Authorized Representative


16

EXHIBIT 1  PAGE  20

MELVIN T. ANDREWS, an Individual

RONALD W. LEE, an Individual

SCC RANCH VENTURE, LLC

By:_____
    Name (Print):_____
    Title (Print):_____

SCC ACQUISITIONS, INC.

By:_____
    Name (Print):_____
    Title (Print):_____

SCC ACQUISITIONS, LLC

By:_____
    Name (Print):_____
    Title (Print):_____

BRUCE ELIEFF, an Individual

MARC MAGSTADT, an Individual

17

EXHIBIT 1  PAGE  21

MELVIN T. ANDREWS, an Individual

RONALD W. LEE, an Individual

SCC RANCH VENTURE, LLC
By:
Name (Print): Bruce Elieff
Title (Print): Manager

SCC ACQUISITIONS, INC.
By:
Name (Print): Bruce Elieff
Title (Print): President

SCC ACQUISITIONS, LLC
By:
Name (Print): Bruce Elieff
Title (Print): Manager

BRUCE ELIEFF, an Individual

MARC MAGSTADT, an Individual

17

EXHIBIT 1  PAGE  22

SUNCAL MANAGEMENT, LLC

By: _____

Name (Print): Bruce Elieff

Title (Print): Manager

18

EXHIBIT 1  PAGE  23