# EXHIBIT H

Mark E. McKane (SBN 230552)
mark.mckane@kirkland.com
Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Attorneys for Defendants
LBREP LAKESIDE SC MASTER I, LLC,
SC MASTER HOLDINGS, LLC, AND
SC MASTER PARENT HOLDINGS, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:08-bk-15588-ES |
| LBREP/L-SunCal Master I LLC, et al., | Chapter 11 Case |
| Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
| _____ Affects LBREP/L-SunCal Master I LLC Only | **THE LBREP DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION; DECLARATIONS OF MARK E. MCKANE AND JUDGE MITCHEL R. GOLDBERG** |
| _____ Affects LBREP/L- SunCal McAllister Ranch, LLC Only | |
| _____ Affects LBREP/L- SunCal McSweeny Farms, LLC Only | Judge:    TBD |
| _____ Affects LBREP/L- SunCal Summerwind Ranch, LLC Only | Date:     TBD<br>Time:     TBD<br>Place:    Courtroom 5A |
| _X_ Affects All Debtors. | 411 W. Fourth St.<br>Santa Ana, CA 92701 |

1   The LBREP Defendants[1] hereby submit this Memorandum of Points and Authorities in

2   Support of Motion for Good Faith Settlement Determination, ECF No. 933.

3   ## PRELIMINARY STATEMENT

4   This Court should grant the Trustee's request for a good faith determination. Under the

5   Settlement Agreement, Defendants will collectively pay a total of sixteen million dollars

6   ($16,000,000) in exchange for a release of tenuous and uncertain claims. *See* Declaration of Mark E.

7   McKane in Support of the LBREP Defendants' Memorandum of Points and Authorities in Support

8   of Motion for Good Faith Settlement Determination ("McKane Decl.") ¶ 26. The Settlement

9   Agreement easily meets the factors under California Code of Civil Procedure Section 877.6 and

10  *Tech-Bilt, Inc. v. Woodward Clyde & Assoc.*, 38 Cal. 3d 488 (1985). The settlement falls within a

11  "ballpark" approximation of a potential recovery and the alleged proportionate liability of the

12  LBREP Defendants; the amount paid is significant given that parties reached a settlement before any

13  determination of liability; and the settlement itself is the product of adversarial proceedings

14  including substantial discovery, extensive mediation sessions over a seven-month period, and

15  rigorous negotiations with the benefit of experienced counsel. The Settlement Agreement was

16  unquestionably reached in good faith.

17  ## FACTUAL BACKGROUND

18  As explained in greater detail in the LBREP Defendants' Memorandum of Points and

19  Authorities in Support of Joint Motion to Dismiss the Amended Complaint, *Siegel v. LBREP*

20  *Lakeside SC Master I, LLC et al.*, 8:11-ap-01084-ES ("Siegel") (ECF No. 63), Master I was a

21  separately incorporated venture between SCC Ranch Ventures, LLC ("SCC Ranch") and LBREP

22  Lakeside SC Master I, LLC ("SC Master I") that was organized to develop four real estate projects

23  in Southern California. Siegel Am. Compl. ¶¶ 27-29. In January 2006, Master I entered into a loan

24  transaction that resulted in a $235 million first lien credit facility and an $85 million second lien

25  term loan facility. Siegel Am. Compl. ¶ 97. The First and Second Lien Credit Agreements placed

26  the value of the Debtors and their properties at nine hundred seventy-seven million five hundred

27
28  [1]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth
in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Evan Smiley in Support of
Motion to Approve Compromise (ECF No. 933).

1    thousand dollars ($977,500,000) based on appraisals, due diligence, and solvency certificates that

2    certified the solvency of the Debtors. *See* McKane Decl. ¶ 2; Declaration of Michael P. Esser in

3    Support of Motion to Dismiss [Siegel] Amended Complaint ("Esser Decl."), ECF No. 64, Exs. A, B

4    at Section 1.1. As part of the recapitalization, $144 million was paid as a dividend (the "Dividend")

5    to SC Master I and SCC Ranch. Siegel Am. Compl. ¶ 100. The Dividend forms the primary basis

6    of the Trustee's claims.

7          The Dividend was fully disclosed to the lenders before the January 2006 loan transactions.

8    The First and Second Lien Credit Agreements expressly disclosed the Dividend, stating that the

9    Borrower may pay a dividend on the Closing Date to one or more of Bruce Elieff, SunCal, SCC

10   Acquisitions, LLC, SCC Ranch Ventures, LLC or LBREP Lakeside SC Master I, LLC, in an

11   aggregate amount not exceeding $144 million. Esser Decl. Exs. A, B at Section 7.6(c). Each lender

12   under the First and Second Lien Credit Agreement provided financing with the disclosure that $144

13   million of the proceeds would be used to issue a dividend to Master I's equity owners. In February

14   2007, more than a year after the recapitalization in dispute, Master I successfully borrowed an

15   additional $75 million in a third lien loan. Siegel Am. Compl. ¶ 123. In September 2008, due to a

16   catastrophic and unforeseen collapse of the California housing market, creditors forced the Debtors

17   into bankruptcy by filing involuntary petitions. On October 30, 2008, the Bankruptcy Court

18   approved the appointment of the Trustee.

19                                **PROCEDURAL HISTORY**

20   **A.    The Trustee Filed the Instant Action Over Two Years Ago.**

21         On October 29, 2010, the Trustee filed the Siegel action. *See* Complaint, Siegel v. LBREP

22   Lakeside SC Master I, LLC et al., No. 2:10-cv-08191-GHK-VBK (C.D. Cal. Oct. 29, 2010), ECF

23   No. 1. On March 25, 2011, the LBREP Defendants moved to dismiss the Trustee's claims. The

24   SunCal Defendants moved to dismiss the Trustee's claims on April 4, 2011. Subsequently, the

25   remaining Defendants filed motions to dismiss.

26   **B.    The Court Permitted the Trustee Substantial Discovery.**

27         Rather than oppose the Defendants' motions to dismiss, the Trustee indicated he would

28   amend his Complaint and sought wide-ranging document discovery. In a July 29, 2011 Status

1  Conference and Scheduling Order, the Court ordered Defendants to produce: (1) all presentations

2  and memoranda that were presented to the lenders or the equity holders, the year-end and quarterly

3  financial statements, balance sheets and profit and loss statements that are in their possession, and

4  any regular updates that were provided to either the lenders or equity holders of the Debtors; (2) all

5  documents that mention, discuss, or refer to any financing referenced in the Complaint for any of the

6  Debtors, including the loan transactions identified in the Complaint; and (3) all documents that

7  mention, discuss, or refer to any distribution of any financing proceeds referenced in the Complaint

8  to any of the Defendants. *See* Status Conference and Scheduling Order, July 29, 2011, ECF No. 30.

9  Additionally, the Court ordered the SunCal Defendants to produce all non-privileged documents

10  found on an external hard drive that SunCal Management previously provided the Trustee. *Id.*

11        On July 17, 2011 and August 6, 2011, the LBREP Defendants produced 534,290 pages of

12  responsive documents. On July 15, 2011, the SunCal Defendants produced a hard drive containing

13  seven gigabytes of data, and between July 18, 2011 and September 15, 2011, the SunCal Defendants

14  produced 122,442 additional pages of responsive documents. The Trustee filed an Amended

15  Complaint on September 23, 2011. The LBREP Defendants and SunCal Defendants filed a joint

16  motion to dismiss on October 25, 2011. The Lakeside Defendants filed a motion to dismiss the same

17  day. The Trustee filed a consolidated opposition on November 15, 2011.

18        **C.    The Parties Participated in an Extensive Seven-Month Mediation Process.**

19        Following the motion to dismiss briefing, the Parties engaged in a constructive dialogue that

20  led to the search for, and mutual agreement upon, a third-party mediator. *See* McKane Decl. ¶ 12.

21  The Parties participated in five full-day mediation sessions conducted by the Honorable Mitchel R.

22  Goldberg, Retired, that took place in March, April, June, and September of 2012. *See* McKane Decl.

23  ¶ 16; Declaration of Mitchel R. Goldberg ("Goldberg Decl.") ¶ 3. A sixth mediation took place in

24  October 2012, however, ultimately only the SunCal Defendants and their insurer participated in the

25  final session. *See id.*

26        Before the first mediation session, the Parties submitted briefs to the mediator detailing their

27  positions on the legal and factual issues. *See* McKane Decl. ¶ 17; Goldberg Decl. ¶ 4. The LBREP

28  Defendants have always maintained that (1) Master I's 2006 decision to declare the Dividend was

1    imminently reasonable, (2) Master I remained solvent with substantial equity cushion after the

2    Dividend, (3) Master I had more than sufficient capital and access to additional capital to complete

3    the developments, and (4) the fully-disclosed Dividend was not—and could not be—fraudulent. *See*

4    McKane Decl. ¶ 17.  With respect to the Trustee's damages request of $144 million, the LBREP

5    Defendants believe the Trustee has ignored the equity contributions of equity sponsors following the

6    Dividend and exaggerated the potential for success on the merits of his claims, including the

7    likelihood of recovering punitive damages. *See* McKane Decl. ¶ 18.

8        At the first mediation session on March 5, 2012, the Parties made numerous presentations to

9    the mediator and debated the strengths and weaknesses of the Trustee's claims. *See* McKane Decl.

10   ¶ 19; Goldberg Decl. ¶ 5.  Nevertheless, the Parties could not reach an agreement following the first

11   mediation session.  The Parties then submitted supplemental briefing on disputed issues. *See id.* As

12   highlighted by the Trustee's Amended Complaint and the LBREP Defendants' Motion to Dismiss,

13   the Parties have focused on Master I's solvency and the sufficiency of capital. *See* McKane Decl.

14   ¶ ¶ 8, 11.

15       To further illustrate the strength of their arguments, the LBREP Defendants retained experts

16   to conduct analysis of Master I's solvency and the sufficiency of capital before and after the

17   Dividend. *See* McKane Decl. ¶ 20.  The Trustee likewise retained an expert to analyze the same

18   issues. *See id.*; Goldberg Decl. ¶ 6.  The LBREP Defendants' fact development and expert analysis

19   demonstrated that Master I paid its debts as they became due and that it maintained reasonable

20   capital to conduct its business following the Dividend. *See* McKane Decl. ¶ 21.

21       The Parties made separate presentations to the mediator at the second and third mediation

22   sessions on April 16 and 17, 2012, but continued to dispute Master I's solvency and the sufficiency

23   of capital following the Dividend. *See* Goldberg Decl. ¶ 7.  The Parties submitted a second set of

24   supplemental briefing in preparation for a fourth mediation session in June addressing remaining

25   issues. *See* McKane Decl. ¶ 22; Goldberg Decl. ¶ 7.

26       At the fourth mediation session on June 16, 2012, the Parties continued to discuss the relative

27   strengths and weaknesses of their positions on these issues and narrowed in on a potential settlement

28   amount, but were unable to reach an agreement.   The Parties submitted another round of

supplemental briefing in preparation for a fifth mediation session in which the Parties hoped to finalize the terms of a potential settlement. *See* McKane Decl. ¶ 23; Goldberg Decl. ¶ 8.

At the fifth mediation session on September 12, 2012, the Parties negotiated over a potential impediment to a final settlement payment amount. The Parties left the fifth session without a finalized agreement but ultimately reached a tentative agreement without the need for a sixth mediation scheduled for October 5, 2012. The sixth mediation session took place only between the SunCal Defendants and their insurer. *See* McKane Decl. ¶¶ 24-25; Goldberg Decl. ¶ 3.

Following extensive mediation sessions and rigorous negotiations that took place over the course of seven months, the parties reached the subject settlement. The Settlement Payment consists of a "lump sum" payment of sixteen million dollars ($16,000,000) directly to the Trustee. *See* McKane Decl. ¶ 26; Goldberg Decl. ¶ 12. The Settlement Payment will be divided between settling Defendants according to the following agreement: the LBREP Defendants will collectively contribute thirteen million eight hundred thousand dollars ($13,800,000); (ii) the SunCal Defendants and SCM will collectively contribute one million five hundred thousand dollars ($1,500,000); and (iii) the Lakeside Defendants will contribute seven hundred thousand dollars ($700,000). *See* McKane Decl. ¶ 27. If any Defendant, other than the LBREP Defendants, fails to fund its portion of the Settlement Payment, the LBREP Defendants will have the option of contributing an amount necessary to bring the entire Settlement Payment to fifteen million seven hundred and fifty thousand dollars ($15,750,000), and the Trustee has agreed to accept this amount while continuing to pursue claims against Non-Settling Defendants in his discretion. *See* McKane Decl. ¶ 30. The Parties now seek approval of this good faith settlement.

## **LEGAL STANDARD**

Whether the settlement is in good faith rests in the sound discretion of the trial court. *See Erreca's v. Superior Ct.,* 19 Cal. App. 4th 1475, 1489 (1993). Once a settling party has moved for a good faith determination under California Code of Civil Procedure Section 877.6, an opponent bears the burden of proving that the settlement is not in good faith. *See* Cal. Code Civ. Proc. § 877.6(d) (party asserting the lack of good faith shall have the burden of proof on that issue); *N. County Contractor's Assoc., Inc. v. Touchstone Ins. Servs.,* 27 Cal. App. 4th 1085, 1091 (1994) ("The

1   burden is upon the party objecting to the proposed settlement to prove an absence of good faith.").

2   That burden is a high hurdle. The opponent asserting lack of good faith can only can meet this

3   burden by demonstrating that the settlement is so far "out of the ballpark" as to be inconsistent with

4   the equitable objectives of the statute. *Tech-Bilt*, 38 Cal. 3d at 499-500. In fact, an opponent must

5   demonstrate that "the settlement is ***grossly disproportionate*** to what a reasonable person at the time

6   of the settlement would estimate the settlor's liability to be." *City of Grand Terrace v. Superior Ct.*,

7   192 Cal. App. 3d 1251, 1262 (1987) (emphasis added).

8       When addressing the good faith requirement, courts frequently apply the factors enumerated

9   in the California Supreme Court decision *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*. Those

10   factors are: (1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate

11   liability; (2) the amount paid in settlement; (3) a recognition that a settlor should pay less in

12   settlement than if found liable after trial; (4) the allocation of the settlement proceeds among

13   plaintiffs; (5) the settlor's financial condition and insurance policy limits, if any; and (6) evidence of

14   any collusion, fraud, or tortious conduct between the settlor and the plaintiffs aimed at making the

15   non-settling party pay more than their fair share. *See Tech-Bilt*, 38 Cal. 3d at 499-500.

16                                    **ARGUMENT**

17   I.   **THE SETTLEMENT REFLECTS A "BALLPARK" APPROXIMATION BOTH OF
          THE TRUSTEE'S TOTAL POTENTIAL RECOVERY AND OF THE LBREP**
18        **DEFENDANTS' ALLEGED PROPORTIONATE LIABILITY.**

19       The Settlement Payment of sixteen million dollars ($16,000,000) falls well within a

20   "ballpark" approximation of the Trustee's total potential recovery, and the LBREP Defendants'

21   contribution of thirteen million eight hundred thousand dollars ($13,800,000) falls well within a

22   "ballpark" approximation of their alleged proportionate liability in the underlying dispute—the first

23   *Tech-Bilt* factor. Courts only need consider whether a settlement is ***grossly disproportionate*** to what

24   a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be.

25   *Barth-Wittmore Ins. v. H. R. Murphy Enterprises, Inc.*, 169 Cal. App. 3d 124, 131-33 (1985)

26   (citation omitted).

27       Here, the LBREP Defendants continue to believe that the Trustee's claims have no merit.

28   *See* McKane Decl. ¶ 11. In light of the Trustee's dubious claims, the Settlement Payment reflects a

1    significant financial concession on behalf of Defendants. Illustrative of the unrealistic nature of the

2    Trustee's demand is his own previous admission that "the likelihood that the Trustee will succeed on

3    [his fraudulent conveyance claims] is, at best, uncertain." *See* Motion to Approve Amended and

4    Restated Compromise, ECF No. 487, p. 20. Master I's ability to secure a $75 million third lien loan

5    from sophisticated lenders more than a year after the Dividend refutes the Trustee's solvency

6    argument. As a result, the Settlement Payment is fair considering the reality of the Trustee's

7    potential for recovery after trial and the fact that the Parties reached an agreement before any

8    determination of liability.

9        Furthermore, the amount that the LBREP Defendants will contribute to the Settlement

10   Payment reflects a fair apportionment of alleged liability after discovery, extensive mediation

11   briefing, and five mediation sessions over a seven-month period. Under the Settlement Agreement,

12   the LBREP Defendants will collectively contribute thirteen million eight hundred thousand dollars

13   ($13,800,000); the SunCal Defendants and SCM will collectively contribute one million five

14   hundred thousand dollars ($1,500,000); and Lakeside will contribute seven hundred thousand dollars

15   ($700,000). *See* McKane Decl. ¶ 27. The respective contributions reflect months of intensive

16   negotiations and case evaluation by each Defendant. *See* McKane Decl. ¶ 28. Notably, the LBREP

17   Defendants' proportionate share of the Settlement Payment is higher than their alleged proportionate

18   share of the Dividend proceeds. *See* McKane Decl. ¶ 29; Siegel Am. Compl. ¶ 100. In these

19   circumstances, the Settlement Agreement constitutes a good faith settlement as it reflects a

20   "ballpark" approximation both of the Trustee's total potential recovery and of the LBREP

21   Defendants' alleged proportionate liability.

## II.   THE AMOUNT PAID UNDER THE TERMS OF THE SETTLEMENT AGREEMENT IS SIGNIFICANT.

24       The second *Tech-Bilt* factor also weighs in favor of a good faith determination: the

25   Settlement Payment is sixteen million dollars ($16,000,000), a substantial sum. Because the policies

26   underlying California Code of Civil Procedure Section 877.6 aim to encourage settlements and

27   achieve an equitable sharing of costs, the party opposing the settlement bears a significant burden in

28   attempting to show a settlement is out of the ballpark. *Abbott Ford, Inc. v. Sup. Ct.*, 43 Cal. 3d 858,

1   873 (1987).  The Settlement Payment is the product of compromise between Parties that maintained

2   decidedly disparate views of the underlying litigation throughout seven months of negotiations and

3   five mediation sessions.  *See* McKane Decl. ¶ 28.  The high bar required of anyone opposing a good

4   faith settlement cannot be met here:  the Settlement Payment supports a good faith determination.

### III.    THE SETTLEMENT PAYMENT REFLECTS THAT DEFENDANTS SHOULD PAY LESS IN SETTLEMENT THAN IF FOUND LIABLE AT TRIAL.

7        The Settlement Payment is significant considering that the parties reached an agreement

8   before any determination of liability.  In *Tech-Bilt*, the California Supreme Court noted that courts

9   recognize "that a settlor should pay less in settlement than he would if he were found liable after a

10  trial."  38 Cal. 3d at 499.  Here, Defendants maintain that the Trustee cannot succeed on the merits

11  of any of his claims and is not entitled to any recovery.  *See, e.g.*, McKane Decl. ¶¶ 10, 17, 18, 21.

12  Moreover, as discussed above, despite an initial request for over $144 million in damages, the

13  Trustee himself has expressed substantial doubts about the probability of success on his claims and

14  the Settlement Payment reflects the risks associated with litigation.  *See Bay Dev., Ltd. v. Sup. Ct.*,

15  50 Cal. 3d 1012, 1028 (1990) (holding that the trial court did not abuse its discretion in finding that

16  the parties failed to demonstrate the settlement was not in good faith where plaintiffs initially sought

17  $1 million and the parties agreed to a $30,000 settlement).  Because the Parties reached a settlement

18  before any determination of liability had been made, and even before the Court had ruled on a

19  pending motion to dismiss, the Settlement Payment reflects a fair compromise of disputed issues of

20  fact and law.

### IV.    THE ALLOCATION OF SETTLEMENT PROCEEDS WEIGHS IN FAVOR OF GOOD FAITH.

23       The *Tech-Bilt* factor considering the allocation of the settlement proceeds among plaintiffs

24  weighs in favor of good faith determination in this case because no division is mandated by the

25  Settlement Agreement.  38 Cal. 3d 488 at 499.  Instead, any division of the Settlement Payment will

26  be made in accordance with the terms of the Trustee's Second Amended Chapter 11 Plan confirmed

27  by this Court's April 22, 2011 Order Confirming the Chapter 11 Trustee's Second Amended Chapter

28  11 Plan (Dated April 21, 2011), ECF No. 767.

## V.  THE LBREP DEFENDANTS' FINANCIAL CONDITION AND INSURANCE COVERAGE DO NOT UNDERMINE A GOOD FAITH DETERMINATION.

The LBREP Defendants' financial condition and potential insurance coverage also support a good faith determination for the Settlement Agreement.  Throughout this litigation, the LBREP Defendants' insurers have continuously and repeatedly disputed coverage.  *See* McKane Decl. ¶ 31.  Significant negotiation occurred between the LBREP Defendants and their insurers to achieve any contribution by the insurers to the Settlement Agreement.  *See id.*  Any insurance proceeds that constitute part of the LBREP Defendants' settlement contribution represent a fair resolution of that dispute.  *See id.*  Accordingly, this factor supports a good faith finding.

## VI.  NO EVIDENCE EXISTS TO SUPPORT AN ALLEGATION OF COLLUSION, FRAUD, OR TORTIOUS CONDUCT.

No evidence exists that the LBREP Defendants and the Trustee engaged in collusion, fraud, or tortious conduct in reaching this settlement.  *See* McKane Decl. ¶ 15.  To the contrary, the Settlement Agreement reflects the hard fought negotiations that took place over a seven-month mediation process after substantial discovery, intensive expert analysis, and vigorous briefing. There can hardly be an indication of collusion under such circumstances.  *See Schuler v. Hernandez*, 202 Cal. App. 3d 1302, 1308 (1988) (affirming trial court's determination of a good faith settlement when there was no evidence presented to establish that the settlement was made under circumstances amounting to anything other than the good faith of the parties).  This final factor weighs in favor of a good faith finding.

//
//
//
//
//
//
//
//

## CONCLUSION

All *Tech-Bilt* factors support a good faith finding.  This Court should grant the Trustee's Motion to Approve Compromise.

DATED: November 13, 2012               Respectfully Submitted,

KIRKLAND & ELLIS LLP


By  /s/ Mark McKane
    Mark E. McKane
    Christopher W. Keegan

    Attorneys for Defendants
    LBREP LAKESIDE SC MASTER I, LLC,
    SC MASTER HOLDINGS, LLC, AND
    SC MASTER PARENT HOLDINGS, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Kirkland & Ellis LLP, 555 California St., Suite 2700, San Francisco, CA 94104

A true and correct copy of the foregoing document entitled (*specify*):

1. **THE LBREP DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**

2. **DECLARATION OF MARK E. MCKANE IN SUPPORT THE LBREP DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**

3. **DECLARATION OF JUDGE MITCHEL R. GOLDBERG, RETIRED, MEDIATOR**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) Nov. 13, 2012, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) November 13, 2012, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 13, 2012, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | |
|---|---|
| | */s/ Deanna Garrison* |
| *November 13, 2012*    Deanna Garrison | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Joey R Abramson    jralaw1@pacbell.net
- Austin K Barron    abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- Jeffrey S Benice    jsb@jeffreybenice.com
- Bernard D Bollinger    bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Joseph P Buchman    jbuchman@bwslaw.com, atualla@bwslaw.com
- Brendt C Butler    bbutler@mandersonllp.com
- Kathleen A Cashman-Kramer    kcashman@psdslaw.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- William D Coffee    bcoffee@sr-firm.com, barbara@sr-firm.com
- Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri    dabbieri@sullivanhill.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Terrence T Egland    , tegland@kleinlaw.com
- Terrence T Egland    ecf@kleinlaw.com, tegland@kleinlaw.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Heather Fowler    heather.fowler@lw.com, colleen.rico@lw.com
- Steven M Garber    steve@smgarberlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Marshall F Goldberg    mgoldberg@glassgoldberg.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Thomas W Harman    wharman@orrick.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Gil Hopenstand    gh@lnbrb.com
- Kimberly D Jaimez    kimberly.jaimez@skadden.com
- Sheri Kanesaka    skanesaka@alvaradosmith.com, crosas@alvaradosmith.com
- Christopher W Keegan    ckeegan@kirkland.com,
  shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Yale K Kim    ykim@allenmatkins.com
- Kerri A Lyman    klyman@irell.com
- John T Madden    maddenj@bryancave.com
- Robert S Marticello    Rmarticello@wgllp.com
- Robert C Martinez    rmartinez@mclex.com
- Mark E McKane    , rosie.tejada@kirkland.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Ramon Naguiat    rnaguiat@skadden.com
- Samuel A Newman    snewman@gibsondunn.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin    cmr@lnbrb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- Daniel H Reiss    dhr@lnbyb.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- John P Schafer    jschafer@mandersonllp.com,
  pnaegely@mandersonllp.com;eriley@mandersonllp.com;cstrunk@mandersonllp.com
- Mark C Schnitzer    mschnitzer@rhlaw.com, mschnitzer@verizon.net
- Alfred H Siegel    ahstrustee@horwathcal.com,
  asiegel@ecf.epiqsystems.com;margo.tzeng@crowehorwath.com;lisa.irving@crowehorwath.com
- Alfred H Siegel (TR)    al.siegel@crowehorwath.com,
  asiegel@ecf.epiqsystems.com;margo.tzeng@crowehorwath.com;lisa.irving@crowehorwath.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Evan D Smiley    esmiley@wgllp.com
- Autumn D Spaeth    aspaeth@wgllp.com
- Philip E Strok    pstrok@wgllp.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com
- Andrew Troop    andrew.troop@pillsburylaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael D Warner    mwarner@coleschotz.com, klabrada@coleschotz.com
- David R Zaro    dzaro@allenmatkins.com

**2. SERVED BY UNITED STATES MAIL:**

Brett T Abbott
Gubler, Koch & Degn LLP
1110 N Chinowth St
Visalia, CA 93291

Sean M Boyle
King & Spalding LLP
333 Twin Dolphin Dr Ste 400
Redwood Shores, CA 94065

Clarkson, Gore and Marsella, APLC
3424 Carson St Suite 350
Torrance, CA 90503

Bruce V Cook
Argent Management LLC
2392 Morse Ave
Irvine, CA 92614

Scott Davidson
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Gary E Gans
865 So Figueroa St 10th Fl
Los Angeles, CA 90017-2543

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

David M Gardner
Young Wooldridge LLP
1800 30th St 4th Fl
Bakersfield, CA 93301

Genesis Golf Builders, Inc
c/o Joe R. Abramson, Esq.
Abramson & Brown
21700 Oxnard Street, Ste. 430
Woodland Hills, CA 91367

Steven G Gibbs
Law Offices of Steven G Gibbs
2204 Truxtun Ave
Bakersfield, CA 93301

Valerie M Goo
Orrick Herrington Sutcliffe LLP
777 S Figueroa St Ste 3200
Los Angeles, CA 90017

Kent B Goss
Orrick Herrington Sutcliffe LLP
777 S Figueroa St Ste 3200
Los Angeles, CA 90017

David M Grable
QUINN EMANUEL URQUHART OLIVER & HEDGES L
865 S Figueroa St 10th Fl
Los Angeles, CA 90017

LBREP/L-SunCal Master I LLC
2392 Morse Ave
Irvine, CA 92614

Kirk S MacDonald
Gill and Baldwin PC
130 North Brand Blvd Ste 405
Glendale, CA 91203-2617

McKenna's Club & Gutter Co., Inc
250 Pleasant Lane
Arroyo Grande, CA 93420

Hutchison B Meltzer
Weiland Golden Smiley Wang Ekvall Strok
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

Christopher R Mordy
Peterson & Price, APC
655 W Broadway Ste 1600
San Diego, CA 92101

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_

**F 9013-3.1.PROOF.SERVICE**

Gerald W Mouzis
The Mouzis Law Firm APC
13681 Newport Ave Ste 8-605
Tustin, CA 92780

Howard S Nevins
Hefner Stark & Marois
2150 River Plaza Dr Ste 450
Sacramento, CA 95833

Orrick, Herrington & Sutcliffe LLP
777 S. Figueroa St. Suite 3200
Los Angeles, CA 90017

Arthur J Steinberg
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

Alan Wilken
Loeb & Loeb LLP
10100 Santa Monica Blvd Ste 2200
Los Angeles, CA 90067-4120

Williams + Paddon Architects, Inc.
2237 Douglas Blvd., Suite 160
Roseville, CA 95661

L Frank Zankich
Law Office Of L Frank Zankich
2815 Calmgarden Rd
Acton, CA 93510

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1   Mark E. McKane (SBN 230552)
    mark.mckane@kirkland.com
2   Christopher W. Keegan (SBN 232045)
    chris.keegan@kirkland.com
3   KIRKLAND & ELLIS LLP
    555 California Street
4   San Francisco, California 94104
    Telephone: (415) 439-1400
5   Facsimile: (415) 439-1500

6   Attorneys for Defendants
    LBREP LAKESIDE SC MASTER I, LLC,
7   SC MASTER HOLDINGS, LLC, AND
    SC MASTER PARENT HOLDINGS, LLC

8

9                  UNITED STATES BANKRUPTCY COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                       SANTA ANA DIVISION

12  In re                              Case No. 8:08-bk-15588-ES

13  LBREP/L-SunCal Master I LLC, et al.,   Chapter 11 Case

14          Debtor.                     (Jointly Administered with Case Nos.
                                        8:08-bk-15637-ES; 8:08-bk-15639-ES; and
15                                      8:08-bk-15640-ES)

16  _____Affects LBREP/L-SunCal Master I LLC   DECLARATION OF MARK E.
17  Only                                MCKANE IN SUPPORT OF THE LBREP
                                        DEFENDANTS' MEMORANDUM OF
18  _____Affects LBREP/L- SunCal McAllister   POINTS AND AUTHORITIES IN
    Ranch, LLC Only                     SUPPORT OF MOTION FOR GOOD
19                                      FAITH SETTLEMENT
    _____Affects LBREP/L- SunCal McSweeny   DETERMINATION
20  Farms, LLC Only
                                        Judge:    TBD
21  _____Affects LBREP/L-SunCal Summerwind   Date:     TBD
    Ranch, LLC Only                     Time:     TBD
22                                      Place:    Courtroom 5A
      X    Affects All Debtors.                   411 W. Fourth St.
23                                                Santa Ana, CA 92701

24

25

26

27

28

1         I, Mark E. McKane, hereby declare the following:

2         1.    I am an attorney licensed to practice in the State of California, and I am admitted to

3    practice before this Court. I am a partner at the law firm of Kirkland & Ellis LLP, counsel of record

4    for defendants LBREP Lakeside SC Master I, LLC, SC Master Holdings, LLC, and SC Master

5    Parent Holdings, LLC (together, the "LBREP Defendants") in *Siegel v. LBREP Lakeside SC Master*

6    *I, LLC et al.*, in the United States District Court for the Central District of California, Southern

7    Division, Case No. CV 10-8191-GHK(VBKx) which was referred to the Bankruptcy Court for all

8    pre-trial proceedings, Adv. No. 8:11-ap-01084-ES. I submit this declaration in support of LBREP

9    Defendants' Memorandum of Points and Authorities in Support of Motion for Good Faith

10   Settlement Determination. I have personal knowledge of the following information, and if called to

11   testify I could and would competently testify to the truth of the following.

12        2.    In January 2006, LBREP/L-SunCal Master I LLC ("Master I" or the "Debtor")

13   entered into a loan transaction that resulted in a $235 million First Lien Credit Facility and an $85

14   million Second Lien Term Loan Facility. The First and Second Lien Credit Agreements placed the

15   value of the Debtors[1] and their properties at $977,500,000 based on appraisals, due diligence, and

16   solvency certificates that certified the solvency of the Debtors. As part of the recapitalization, $144

17   million was paid as a dividend (the "Dividend") to Master I's equity owners. This Dividend forms

18   the basis of the Trustee's claims.

19        3.    The Dividend was fully disclosed to the lenders before the January 2006 loan

20   transactions as the First and Second Lien Credit Agreements expressly referenced the Dividend.

21   Each lender under the First and Second Lien Credit Agreements provided financing with the

22   disclosure that $144 million of the proceeds would be used to issue a dividend to Master I's equity

23   owners.

24        4.    In February 2007, over a year after the January 2006 loans closed, the market

25   validated Master I's solvency and projected performance when a syndicate of lenders originated a

26   new $75 million loan to Master I.

27     
28   [1] The Debtors include Master I and three of its four development projects, LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeney Farms LLC, and LBREP/L-SunCal Summerwind Ranch LLC (collectively the "Debtors").

1      5.     In September 2008, after the California real estate markets and high yield financing

2    markets suffered catastrophic and unprecedented collapses, creditors forced the Debtors into

3    bankruptcy by filing involuntary petitions under Title 11.  On October 30, 2008, the Bankruptcy

4    Court approved the appointment of the Trustee.

5      6.     On October 29, 2010, the Trustee filed the instant action.  All Defendants[2] then

6    moved to dismiss the Trustee's Complaint.  Rather than contest those motions, the Trustee sought

7    discovery and attempted to amend his complaint.  After receiving a hard drive containing more than

8    seven gigabytes of electronic data and almost 700,000 pages of discovery, the Trustee attempted to

9    assert thirteen causes of action against eleven distinct corporate and individual defendants in an

10   Amended Complaint filed on September 23, 2011.

11     7.     The Trustee alleges that a fully-disclosed dividend declared by Master I was both

12   actually and constructively fraudulent and that the Defendants—including the LBREP Defendants,

13   the Suncal Defendants, and the Lakeside Defendants—breached their fiduciary duties (as members

14   of the Debtor) by declaring the Dividend.  The Trustee also brings claims for unlawful distribution,

15   conversion, unjust enrichment, accounting, aiding and abetting, and conspiracy.  In total, the Trustee

16   seeks to recover $144 million plus additional consequential and punitive damages.

17     8.     The Trustee alleges that (1) the Dividend was oversized because the Defendants did

18   not leave enough capital in Master I to fund development costs going forward and left Master I

19   insolvent; and (2) Master I declared the Dividend before any profits were realized and before

20   substantial development on the properties had occurred.

21     9.     The Trustee's Amended Complaint raises novel issues of law, including tenuous veil

22   piercing and alter ego allegations.

23     10.    The LBREP Defendants have always denied the Trustee's allegations.

24     11.    The LBREP Defendants believe the Trustee's claims have no merit.

25

26   [2] The defendants include LBREP-Lakeside SC Master I, LLC, SC Master Holdings, LLC, and SC
Master Parent Holdings, LLC (together, the "LBREP Defendants"), Lakeside Capital Partners II,

27   LLC, Melvin T. Andrews and Ronald W. Lee (together, the "Lakeside Defendants"), and SCC
Ranch Ventures LLC, SCC Acquisitions, Inc., SCC Acquisitions, LLC, Bruce Elieff, and Mark

28   Magstadt (together, the "SunCal Defendants" and together with the LBREP Defendants and the
Lakeside Defendants, the "Defendants").

12.    Following the Defendants' Motions to Dismiss the Amended Complaint, the Parties engaged in a constructive dialogue that led to a search for and mutual agreement on a third-party mediator.

13.    The subject settlement was reached in substantially final form on or about November 12, 2012.

14.    The settlement is the product of arm's-length negotiations between Parties represented by experienced counsel and is not intended to injure or otherwise harm any non-settling Parties.

15.    The settlement is not the result of any collusion or fraud.

16.    To reach this settlement, the Parties participated in five full-day mediation sessions conducted by the Honorable Mitchel R. Goldberg, Retired, that took place in March, April, June, and September of 2012. A sixth mediation took place, however, ultimately only the SunCal Defendants and their insurer participated in the final session.

17.    Prior to the first mediation session, the Parties submitted briefs to the mediator detailing their positions on the legal and factual issues in this litigation. The LBREP Defendants have always contended that (1) Master I's 2006 decision to declare a dividend was imminently reasonable, (2) Master I remained solvent with substantial equity cushion after the Dividend, (3) Master I had more than sufficient capital and access to additional capital to complete the developments, and (4) the fully-disclosed Dividend was not—and could not be—fraudulent.

18.    The LBREP Defendants have also emphasized that the Trustee's damages request ignores the equity contributions of equity sponsors following the Dividend and exaggerates the potential for success on the merits of its claims, including the likelihood of recovering punitive damages.

19.    At the first mediation session on March 5, 2012, the Parties made numerous presentations and debated the strengths and weaknesses of the Trustee's claims. Nevertheless, the Parties could not reach an agreement following the first mediation session. As a result, the Parties submitted supplemental briefing on disputed issues.

McKane Decl. in Support of LBREP
Defendants' Memo in Support of Motion for
Good Faith Determination                    3                    CASE NO. 8:08-bk-15588-ES

20.     To further illustrate the strength of their arguments, the LBREP Defendants retained an expert to conduct an analysis of Master I's solvency and the sufficiency of capital before and after the Dividend. I understand that the Trustee also retained an expert to analyze these issues.

21.     The LBREP Defendants' fact development and expert analysis demonstrated that Master I paid its debts as they became due and that it maintained reasonable capital to conduct its business following the Dividend.

22.     The Parties made separate presentations to the mediator at the second and third mediation sessions on April 16 and 17, 2012, but continued to dispute Master I's solvency and the sufficiency of capital after the Dividend.   The Parties submitted a second set of supplemental briefing in preparation for a fourth mediation session in June.

23.     At the fourth mediation session on June 16, 2012, the Parties continued to discuss the relative strengths and weaknesses of their positions on these issues and narrowed in on a potential settlement amount, but were unable to reach an agreement. The Parties submitted another round of supplemental briefing in preparation for a fifth mediation session in which the Parties hoped to finalize the terms a settlement agreement.

24.     At the fifth mediation session on September 12, 2012, the Parties negotiated on a potential impediment to a final settlement payment amount. The Parties left the fifth session without a finalized agreement but ultimately reached a settlement without the need for a sixth mediation scheduled for October 5, 2012.

25.     The sixth mediation session only took place between the SunCal Defendants and their insurer.

26.     Following the extensive mediation sessions and rigorous negotiations that took place over the course of seven months, the Parties reached the subject settlement. The settlement consists of a "lump sum" payment of sixteen million dollars ($16,000,000) (the "Settlement Payment") directly to the Trustee.

27.     The contributions to the Settlement Payment will be divided between Defendants according to the following agreement:   (i) the LBREP Defendants will collectively contribute thirteen million eight hundred thousand dollars ($13,800,000); (ii) the SunCal Defendants and SCM

McKane Decl. in support of LBREP                    4                    CASE NO. 8:08-bk-15588-ES
Defendants' Memo in Support of Motion for
Good Faith Determination

1 will collectively contribute one million five hundred thousand dollars ($1,500,000); and (iii) the

2 Lakeside Defendants will contribute seven hundred thousand dollars ($700,000).

3     28.    The contribution to be paid by the LBREP Defendants reflects months of intensive

4 negotiations and case evaluation during which the Parties maintained decidedly disparate views.

5     29.    The LBREP Defendants' proportionate share of the Settlement Payment is higher

6 than their alleged proportionate share of the Dividend.

7     30.    If any Defendant, other than the LBREP Defendants, fails to fund its portion of the

8 Settlement Payment, the LBREP Defendants will have the option of contributing an amount

9 necessary to bring the entire Settlement Payment to fifteen million seven hundred and fifty thousand

10 dollars ($15,750,000), and the Trustee has agreed to accept this amount while continuing to pursue

11 his claims against Non-Settling Defendants in his discretion.

12     31.    The LBREP Defendants' insurers have continuously and repeatedly disputed

13 coverage. Significant negotiation occurred between the LBREP Defendants and their insurers to

14 achieve any contribution by the insurers to the Settlement Agreement. Any insurance proceeds that

15 constitute part of LBREP Defendants' settlement contribution represent a fair resolution of that

16 dispute.

17     32.    The Settlement Agreement represents a compromise of disputed claims and takes into

18 consideration available defenses as well as the potential for liability.

19     I declare under penalty of perjury under the laws of the State of California that the foregoing

20 is true and correct, to the best of my knowledge. Executed in San Francisco, California, this 13th

21 day of November, 2012.

22     By  */s/ Mark E. McKane*
    Mark E. McKane

23

24

25

26

27

28

McKane Decl. in Support of LBREP        5        CASE NO. 8:08-bk-15588-ES
Defendants' Memo in Support of Motion for
Good Faith Determination

1  Mark E. McKane (SBN 230552)
   mark.mckane@kirkland.com
2  Christopher W. Keegan (SBN 232045)
   chris.keegan@kirkland.com
3  KIRKLAND & ELLIS LLP
   555 California Street
4  San Francisco, California  94104
   Telephone: (415) 439-1400
5  Facsimile: (415) 439-1500

6  Attorneys for Defendants
   LBREP LAKESIDE SC MASTER I, LLC,
7  SC MASTER HOLDINGS, LLC, AND
   SC MASTER PARENT HOLDINGS, LLC

8

9                 UNITED STATES BANKRUPTCY COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      SANTA ANA DIVISION

12  | In re | Case No. 8:08-bk-15588-ES |
13  | LBREP/L-SunCal Master I LLC, et al., | Chapter 11 Case |
14  | Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
15  | | |
16  | _____Affects LBREP/L-SunCal Master I LLC Only | **DECLARATION OF JUDGE MITCHEL R. GOLDBERG, RETIRED, MEDIATOR** |
17  | | |
18  | _____Affects LBREP/L- SunCal McAllister Ranch, LLC Only | Judge:  Hon. Erithe A. Smith |
19  | _____Affects LBREP/L- SunCal McSweeny Farms, LLC Only | Date:  November 29, 2012 Time:  2:00 pm Place:  Courtroom 5A |
20  | | 411 W. Fourth St. |
21  | _____Affects LBREP/L- SunCal Summerwind Ranch, LLC Only | Santa Ana, CA 92701 |
22  |  X    Affects All Debtors. | |
23  | | |

24

25      I, Mitchel R. Goldberg, hereby declare the following:

26      1.      I acted as the mediator for the Parties in *Siegel v. LBREP Lakeside SC Master I, LLC*

27  *et al.*, in the United States District Court for the Central District of California, Southern Division,

28

---

GOLDBERG DECLARATION IN SUPPORT OF                    ADVERSARY NO. 8:11-ap-01084-ES
LBREP SUPPLEMENTAL GOOD FAITH BRIEF

Case No. CV 10-8191-GHK(VBKx). I have personal knowledge of the following information:

2.     The subject Settlement Agreement was reached in substantially final form on or about November 12, 2012. The compromise is the product of arm's-length negotiations between all Parties represented by experienced counsel.

3.     To reach this settlement, the Parties participated in six mediation sessions that took place in March, April, June, September and October of 2012. I took an active role in each of these sessions in order to facilitate the Parties' negotiations.

4.     Prior to the first mediation session, the Parties exchanged briefs detailing their positions on the legal and factual issues in this litigation, and provided to the undersigned extensive documentation setting forth the legal and factual background of the case.

5.     At the first mediation session in March 5, 2012, the Parties made numerous presentations, and debated the strengths and weaknesses of the Trustee's claims. The data was extensive so second and third sessions were set for April. The Parties submitted supplemental briefing on disputed issues.

6.     Given the complexities of the disputed issues, the LBREP Defendants and the Trustee retained experts to further analyze and explain their perspectives.

7.     The Parties made separate presentations at the second and third mediation sessions on April 16 and 17, 2012. The LBREP/Lakeside/Suncal Defendants and the Trustee presented conflicting analyses based on substantial fact development and expert consultation. The Parties began to rigorously negotiate but could not reach common ground. Accordingly, the Parties submitted a second set of supplemental briefing in preparation for a fourth mediation session in June.

8.     At the fourth mediation session on June 16, 2012, the Parties continued to discuss the relative strengths and weaknesses of their positions on these issues as well as a number of tangential issues and narrowed in on a potential settlement amount, but were unable to reach an agreement. The Parties submitted another round of supplemental briefing in preparation for a fifth and final mediation session in which the Parties hoped to finalize the terms a settlement agreement.

9.     At the fifth mediation session on September 12, 2012, the Parties negotiated over a potential impediment to a final settlement payment amount. The Parties left the fifth session without

1   a finalized agreement, but with the framework for a final proposed term sheet which would be

2   finalized telephonically.   A sixth session was held to negotiate distribution/participation issues

3   between defendant parties.

4          10.     Throughout this process, I participated in numerous telephone conferences with each

5   Party addressing specific issues and arguments raised during the mediation sessions as well as

6   assisting the Parties resolve "minor hiccups" to the settlement concept.

7          11.     In addition to the negotiation of a "lump sum" settlement between the Trustee on the

8   one hand and the Defendants on the other hand, I also assisted in the negotiations over the

9   contribution to be paid by the LBREP Defendants.

10         12.     After these extensive negotiations and mediation proceedings over the course of

11  seven months, the Parties reached the subject Settlement Agreement, the most salient point of the

12  Settlement Agreement being a "lump sum" payment of sixteen million dollars ($16,000,000.00) (the

13  "Settlement Payment") directly to the Trustee.

14         13.     The Settlement Agreement represents a compromise of disputed issues of fact and

15  law, taking into consideration available defenses as well as the potential for liability and the

16  substantial amount of time and cost to fully litigate this matter through possible appeal and the time

17  delay value of concluding this case sooner than later.

18         14.     In all my years' experience as a Judge and mediator I don't think I have been as

19  impressed by such a diligent group whose tireless good faith negotiations over an eight month period

20  made this settlement possible.

21         I declare under penalty of perjury under the laws of the State of California that the foregoing

22  is true and correct.  Executed in Santa Ana California, this 13 day of November, 2012.

23

24

25  DATED:  November 13, 2012                Respectfully Submitted,

26

27                                          By _____
                                            Honorable Mitchel R. Goldberg. Retired, mediator

28