**<u>EXHIBIT H</u>**

| United States Bankruptcy Court/Southern District of New York | | **PROOF OF CLAIM** |
|---|---|---|
| Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | |

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)   0000027244 |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Commercial Corporation | Case No. of Debtor<br>08-13901 (JMP) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | | NOTICE OF SCHEDULED CLAIM: |
|---|---|---|
| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>Calyon<br>9 Quai du President Paul Doumer<br>92400 Courbevoie, France<br>Attention: Sophie Waldberg-Billhouet<br>sophie.waldberg-billhouet@calyon.com<br><br>Clifford Chance US LLP<br>31 West 52nd Street<br>New York, New York  10019<br>Attn: Andrew Brozman, Esq.<br>Sara M. Tapinekis, Esq.<br><br>Telephone number: + 33 1 41 89 00 00   Email Address: sara.tapinekis@cliffordchance.com | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:**<br>_____<br>*(If known)*<br><br>Filed on: _____ | Your Claim is scheduled by the indicated Debtor as: |
| Name and address where payment should be sent (if different from above)<br><br><br><br>Telephone number:           Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. | |

| 1.  **Amount of Claim as of Date Case Filed: $** See Attachment<br>If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br>If all or part of your claim is entitled to priority, complete Item 5.<br>If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.<br>☑ Check this box if all or part of your claim is based on a Derivative Contract.*<br>☐ Check this box if all or part of your claim is based on a Guarantee.*<br>**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**<br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee. | 5.  **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br>☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____). |
|---|---|
| 2.  **Basis for Claim:** ISDA Master Agreement, See Attachment<br>     (See instruction #2 on reverse side.) | |
| 3.  **Last four digits of any number by which creditor identifies debtor:** _____<br>     3a. **Debtor may have scheduled account as:** _____<br>         (See instruction #3a on reverse side.) | **Amount entitled to priority:**<br><br>$_____ |
| 4.  **Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br>Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☑ Other<br>Describe: See Attachment<br>Value of Property: $_____ Annual Interest Rate _____%<br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br>$_____ Basis for perfection: _____<br><br>**Amount of Secured Claim: $_____   Amount Unsecured: $_____** | |

| 6.  **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $** _____<br>     (See instruction #6 on reverse side.) | |
|---|---|
| 7.  **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>8.  **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.<br>**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**<br>If the documents are not available, please explain: | **FOR COURT USE ONLY**<br><br>**FILED / RECEIVED**<br><br>**SEP 22 2009**<br><br>**EPIQ BANKRUPTCY SOLUTIONS, LLC** |
| Date:<br>9/22/09<br><br>**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Andrew Brozman, Esq.,<br>Attorney-in-fact<br><br>*attorney-in-fact* | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



# POWER OF ATTORNEY

## OF

## CALYON

The undersigned, CALYON, having its principal place of business at 9, Quai du Président Paul Doumer, 92920 Paris La Défense Cedex, and organized under the laws of France (hereinafter called "Calyon") hereby appoints Andrew Brozman, an attorney at Clifford Chance US LLP, having its principal place of business at 31 West 52nd Street, New York, New York 10019 (the "Attorney") as its true and lawful attorney-in-fact, at and solely upon the direction of Calyon, to execute, file, submit, deliver, supplement and amend on Calyon's behalf any and all proofs of claim against the entities set forth below (collectively, the "Authorized Acts" and each individually, an "Authorized Act"):

1.    Lehman Brothers Inc. in the case of Securities Investor Protection Corporation, *et al.* v. Lehman Brothers Inc. (In re Lehman Brothers Inc.), Case No. 08-01420 (JMP), pending in the United States Bankruptcy Court, Southern District of New York.

2.    Lehman Brothers Holdings Inc. in the case of In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) pending in the United States Bankruptcy Court, Southern District of New York.

3.    Lehman Brothers Commercial Corporation in the case of In re Lehman Brothers Commercial Corporation, Case No. 08-13901 (JMP) pending in the United States Bankruptcy Court, Southern District of New York.

4.    Lehman Brothers Commodity Services Inc. in the case of In re Lehman Brothers Commodity Services Inc., Case No. 08-13885 (JMP) pending in the United States Bankruptcy Court, Southern District of New York.

5.    Lehman Brothers Special Financing Inc. on behalf of Calyon in the case of In re Lehman Brothers Special Financing Inc., Case No. 08-13888 (JMP) pending in the United States Bankruptcy Court, Southern District of New York.

(collectively, the "Proofs of Claim").

The Attorney shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document, instruction or other writing (including any electronic message) believed by it to be genuine and to have been signed, sent or otherwise authenticated by Calyon or its representatives. The Attorney also may rely upon any statement made to him orally or by telephone and believed by him to have been made by Calyon or its representatives, and shall not incur any liability for relying thereon. The Attorney has made no independent verification of the calculations contained in the Proofs of Claim and specifically shall be entitled to rely upon and shall have no obligation in respect of the underlying transaction detail and calculations as delivered by Calyon.

AMR #191247-v1

Siège social : 9, quai du Président Paul Doumer - 92920 Paris La Défense Cedex
Téléphone : 33 1 41 89 00 00 - Télex : INSU X 699600F - Adr. Swift BSUIFRPP. - www.calyon.com
DÉNOMINATION SOCIALE : CALYON - SOCIÉTÉ ANONYME AU CAPITAL DE EUR 3.714.724.584 - SIREN 304 187 701 RCS NANTERRE - CCP PARIS 669-03 83



Calyon irrevocably and unconditionally agrees to indemnify Clifford Chance US LLP, the Attorney and each of their respective affiliates, partners, directors, officers, employees, agents and advisors (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses (including the fees, charges and disbursements of any counsel for any Indemnitee) incurred by any Indemnitee or asserted against any Indemnitee arising out of, in connection with, or as a result of the execution or delivery of this Power of Attorney and any agreement or instrument contemplated hereby and the consummation of the Authorized Acts.

This Power of Attorney may be revoked by Calyon at any time upon 30 days prior written notice to the Attorney provided that any and all Authorized Acts taken prior to the effectiveness of any such revocation shall be valid and binding on Calyon.

This Power of Attorney shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflicts of law principles that would call for the application of the laws of any other jurisdiction.

IN WITNESS WHEREOF, Calyon has caused this Power of Attorney to be duly executed this 20th day of May, 2009.

CALYON

By: _____
    Julian HARRIS
    *Distressed Assets*

By: _____
    Xavier RICHARD
    *Distressed Assets*

2

## ATTACHMENT TO PROOF OF CLAIM
## OF CALYON AGAINST LEHMAN BROTHERS COMMERCIAL CORPORATION,[1]

Calyon (f/k/a Credit Agricole Indosuez S.A.) ("Calyon"), by its authorized representative, submits this attachment to its proof of claim (the "Claim") against Lehman Brothers Commercial Corporation ("LBCC").

### Background

1.      On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a petition for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").     On that same day Lehman Brothers International (Europe) ("LBIE") entered administration in the United Kingdom (the "LBIE Administration") and PricewaterhouseCoopers LLP was thereafter appointed joint administrators for LBIE (the "Joint Administrators").

2.      On September 19, 2008 (the "Commencement Date"), a proceeding was commenced by the Securities Investor Protection Corporation under the provisions of the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §78aaa *et seq.,* in the case captioned *Securities Investor Protection Corp. v. Lehman Brothers Inc.*, Case No. 08-civ-8119 (GEL).

3.      On the Commencement Date, an Order Commencing Liquidation was entered in the United States District Court for the Southern District of New York (the "LBI Liquidation Order").  The LBI Liquidation Order provided for, among other things, (i) the appointment of

---

[1] This document is an attachment to the proof of claim of Calyon against LBCC (the "LBCC Claim").  The information specific to the LBCC Claim is set forth in paragraphs 57 through 67 hereof.  Notwithstanding the foregoing, the balance of the paragraphs of this attachment including without limit Part J hereof and any agreement or submission referenced therein or related thereto, pertaining to the Lehman Affiliates (as later defined) or certain of them are incorporated by reference and made a part hereof to the extent necessary and relevant to the LBCC Claim.

James W. Giddens as Trustee and (ii) the removal of the case to the United States Bankruptcy Court for the Southern District of New York (the "SIPA Proceeding").

4.      On October 3, 2008, Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commodity Services Inc. ("LBCS") and Lehman Brothers Finance AG *a/k/a* Lehman Brothers Finance SA ("LBF") each filed a petition for relief under chapter 11 of the Bankruptcy Code.

5.      LBF is a debtor in a proceeding pending before, and under the supervision of, the Swiss Federal Banking Commission (the "LBF Swiss Proceeding") and therefore on March 12, 2009, the chapter 11 case of LBF was dismissed and a case under chapter 15 of the Bankruptcy Code was commenced on behalf of LBF.

6.      On October 5, 2008, LBCC filed a petition for relief under chapter 11 of the Bankruptcy Code.

Calyon's Transactions With the Lehman Affiliates

7.      Prior to the commencement of the bankruptcy cases by or on behalf of LBHI, LBCS, LBSF, LBCC and their affiliated chapter 11 debtors (collectively, the "Debtors"), the chapter 15 case of LBF, the SIPA Proceeding and LBIE Administration, Calyon entered into contracts with LBI, LBIE, LBF, LBCS, LBSF and LBCC, all of which (with the exception of the agreement with LBI) were guaranteed by LBHI (collectively, the "Lehman Affiliates").

**A.      The LBI ISDA Master Agreement**

8.      Calyon and LBI are parties to that certain ISDA Master Agreement dated as of 26 November 2003, as amended from time to time and novated on May 28, 2004 (the "LBI ISDA Master Agreement"), including the Schedule to the LBI ISDA Master Agreement (the "LBI Schedule") and the Credit Support Annex thereto (the "LBI CSA" and together with the LBI ISDA Master Agreement and the LBI Schedule, the "LBI ISDA Documentation").

2

9.      Calyon and LBI entered into various transactions pursuant to the LBI ISDA Documentation, as more particularly set forth in Calyon's responses to the Derivatives Questionnaire and/or the Guarantee Questionnaire (as subsequently defined), each as applicable.

10.     The commencement of the SIPA Proceeding constituted an Event of Default[2] under Part 5(a) of the LBI ISDA Master Agreement.

11.     Thereafter, on September 22, 2008, Calyon delivered a notice to LBI pursuant to §6(a) of the LBI ISDA Master Agreement, designating September 22, 2008 as the Early Termination Date on which all outstanding transactions under the LBI ISDA Documentation would be terminated.

12.     On April 1, 2009, Calyon delivered a statement to LBI pursuant to §6(d)(i) of the LBI ISDA Documentation containing Calyon's calculation of the termination amount due and payable between Calyon and LBI under the LBI ISDA Documentation (the "LBI Calculation Statement").

13.     As stated in the LBI Calculation Statement, the Termination Currency Equivalent of the total Unpaid Amounts due to Calyon under the LBI ISDA Master Agreement is $6,717,341 and, subject to Section 6(f) of the LBI ISDA Master Agreement, as described below, the total amount owed by Calyon to LBI under the LBI ISDA Documentation in respect of the Early Termination Date would be $77,945,644.

14.     As further set forth in the LBI Calculation Statement, pursuant to Part 5(i) (*Set-off*) of the LBI Schedule (expressed as a new Section 6(f) of the LBI ISDA Master Agreement) (the "LBI Section 6(f)"), no amounts shall become payable by Calyon to LBI pursuant to Section 6(e) of the LBI ISDA Master Agreement until all indebtedness and obligations, whether matured

---

[2] Capitalized terms used but not defined shall have the meaning given to such terms in the applicable master agreement documentation.

or unmatured, of LBI and its Affiliates[3] have been paid to Calyon and its Affiliates in full, notwithstanding anything to the contrary.

15.    One or more of LBI's Affiliates have been or will be notified of the claims of Calyon and its Affiliates against them, which claims exceed (whether individually or in the aggregate) the amount set forth in paragraph 13 above and which remain unpaid.

16.    In accordance with Section 6(f) of the LBI ISDA Master Agreement, Calyon is not obligated to make any payments owing to LBI in respect of the Early Termination Date until Calyon and its Affiliates have received irrevocable payment in full of all amounts owed to Calyon and its Affiliates by LBI and its Affiliates.

17.    Calyon submitted a proof of claim in the SIPA Proceeding to preserve Calyon's rights under the LBI ISDA Documentation.

**B.    The LBIE ISDA Master Agreement**

18.    Calyon and LBIE are parties to that certain ISDA Master Agreement dated as of 20 June 2000, as amended from time to time and novated on May 24, 2004 (the "LBIE ISDA Master Agreement"), including the Schedule to the LBIE ISDA Master Agreement (the "LBIE Schedule") and the Credit Support Annex thereto (the "LBIE CSA" and together with the LBIE ISDA Master Agreement and the LBIE Schedule, the "LBIE ISDA Documentation").

19.    LBIE's obligations under the LBIE ISDA Documentation are guaranteed by LBHI pursuant to that certain Guarantee of Lehman Brothers Holdings Inc. dated on or about October 17, 2001 (the "LBIE ISDA Guarantee"). Pursuant to the LBIE ISDA Guarantee, LBHI unconditionally guaranteed to Calyon the due and punctual payment of all amounts due and

---

[3] Pursuant to Section 14 of the LBI ISDA Master Agreement, "Affiliate" means, "in relation to any person, any entity controlled, directly or indirectly, by the person, any entity that controls, directly or indirectly, the person or any entity directly or indirectly under common control with the person. For this purpose, 'control' of any entity or person means ownership of a majority of the voting power of the entity or person."

AMR #213082-v1

payable by LBIE to Calyon under each of the transactions entered into under the LBIE ISDA Documentation.

20.     Calyon and LBIE entered into various transactions pursuant to the LBIE ISDA Documentation, as more particularly set forth in Calyon's responses to the Derivatives Questionnaire and/or the Guarantee Questionnaire (as subsequently defined), each as applicable.

21.     The commencement of LBHI's chapter 11 case and the Order of The High Court of Justice appointing the Joint Administrators constituted an Event of Default pursuant to §5(a)(vii) of the LBIE ISDA Master Agreement as LBHI served as the Credit Support Provider under the LBIE ISDA Documentation.

22.     On September 16, 2008, Calyon delivered a notice to LBIE pursuant to §6(a) of the LBIE ISDA Master Agreement, designating September 16, 2008 as the Early Termination Date on which all outstanding transactions under the LBIE ISDA Documentation would be terminated.

23.     On March 6, 2009, Calyon delivered a statement to LBIE pursuant to §6(d)(i) of the LBIE ISDA Master Agreement containing Calyon's calculation of the termination amount due and payable between Calyon and LBIE under the LBIE ISDA Documentation (the "LBIE Calculation Statement").

24.     On August 4, 2009, Calyon delivered a revised statement to LBIE pursuant to §6(d)(i) of the LBIE ISDA Master Agreement containing Calyon's revised calculation of the termination amount due and payable between Calyon and LBIE under the LBIE ISDA Master Agreement (the "Revised LBIE Calculation Statement").

25.     As stated in the Revised LBIE Calculation Statement, the amount payable to Calyon under the LBIE ISDA Documentation by LBIE is $9,100,148 plus any costs, fees, interest and costs of carry.

26.     Accordingly, Calyon holds a claim against LBIE under the LBIE ISDA Documentation in the amount of $9,100,148 plus any costs, fees, interest and costs of carry.

27.     Calyon also holds a claim against LBHI on account of the LBIE ISDA Guarantee in the amount of $9,100,148 plus any costs, fees, interest and costs of carry.

## C.     The LBIE ISLA Master Agreement

28.     Calyon and LBIE are parties to that certain 2000 ISLA Global Master Securities Agreement dated as of 16 July 2004, including the Schedule thereto, the UK tax addendum and each confirmation thereunder (collectively, the "LBIE GMSLA").

29.     LBIE's obligations under the LBIE GMSLA are guaranteed by LBHI pursuant to that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc. dated June 9, 2005 (the "LBHI Guarantee").  Pursuant to the LBHI Guarantee, LBHI unconditionally guaranteed the payment of all liabilities, obligations and commitments of LBIE, including the due and punctual payment of all amounts due and payable by LBIE to Calyon under each of the transactions entered into under the LBIE GMSLA.

30.     Calyon and LBIE entered into various transactions pursuant to the LBIE GMSLA, as more particularly set forth in Calyon's responses to the Guarantee Questionnaire (as subsequently defined).

31.     The announcement made by PricewaterhouseCoopers LLP on September 15, 2008 that they had been appointed as the Joint Administrators in the LBIE Administration constituted an Event of Default pursuant to Clause 14(i)(v) of the LBIE GMSLA.

AMR #213082-v1

32.     On September 16, 2008, Calyon delivered a notice to LBIE pursuant to Clause 21 of the LBIE GMSLA, designating September 16, 2008 as the Termination Date on which all outstanding transactions under the LBIE GMSLA would be terminated.

33.     On April 28, 2009, Calyon delivered a statement to LBIE pursuant to Section 10.2(ii) of the LBIE GMSLA containing Calyon's calculation of the termination amount due and payable between Calyon and LBIE under the LBIE GMSLA (the "LBIE GMSLA Calculation Statement").

34.     As stated in the LBIE GMSLA Calculation Statement, the amount payable to Calyon under the LBIE GMSLA by LBIE is $26,663,009 plus any costs, fees, interest and costs of carry.

35.     Accordingly, Calyon holds a claim against LBIE under the LBIE GMSLA in the amount of $26,663,009 plus any costs, fees, interest and costs of carry.

36.     Calyon also holds a claim against LBHI on account of the LBHI Guarantee in the amount of $26,663,009 plus any costs, fees, interest and costs of carry.

**D.      The LBIE ISMA Master Agreement**

37.     Calyon and LBIE are parties to that certain 1995 PSA ISMA Global Master Repurchase Agreement dated as of 14 January 1997, as amended from time to time and novated on April 6, 2004, and including Annexes 1 (Parts 1 and 2) to 7 thereto and each confirmation thereunder (collectively, the "LBIE GMRA").

38.     LBIE's obligations under the LBIE GMRA are guaranteed by the LBHI Guarantee.  Pursuant to the LBHI Guarantee, LBHI unconditionally guaranteed the payment of all liabilities, obligations and commitments of LBIE, including the due and punctual payment of all amounts due and payable by LBIE to Calyon under each of the transactions entered into under the LBIE GMRA.

AMR #213082-v1

39.    Calyon and LBIE entered into various transactions pursuant to the LBIE GMRA, as more particularly set forth in Calyon's responses to the Guarantee Questionnaire (as subsequently defined).

40.    The announcement made by PricewaterhouseCoopers LLP on September 15, 2008 that they had been appointed as the Joint Administrators in the LBIE Administration constituted an Event of Default pursuant to Section 10(i) of the LBIE GMRA.

41.    On September 16, 2008, Calyon delivered a notice to LBIE pursuant to Section 10(i) of the LBIE GMRA, designating September 16, 2008 as the Repurchase Date on which all outstanding transactions under the LBIE GMRA would be terminated.

42.    On May 15, 2009, Calyon delivered a statement to LBIE pursuant to Sections 10(b) and 10(c) of the LBIE GMRA containing Calyon's calculation of the termination amount due and payable between Calyon and LBIE under the LBIE GMRA (the "LBIE GMRA Calculation Statement").

43.    As stated in the LBIE GMRA Calculation Statement, the amount payable to Calyon under the LBIE GMRA by LBIE is $15,408,829 plus any costs, fees, interest and costs of carry.

44.    Accordingly, Calyon holds a claim against LBIE under the LBIE GMRA in the amount of $15,408,829 plus any costs, fees, interest and costs of carry.

45.    Calyon also holds a claim against LBHI on account of the LBHI Guarantee in the amount of $15,408,829 plus any costs, fees, interest and costs of carry.

**E.    The LBF ISDA Master Agreement**

46.    Calyon and LBF are parties to that certain ISDA Master Agreement dated as of 29 June 2000, as amended from time to time and novated on May 24, 2004 (the "LBF ISDA Master Agreement"), including the Schedule to the LBF ISDA Master Agreement (the "LBF Schedule")

AMR #213082-v1

and the Credit Support Annex thereto (the "LBF CSA" and together with the LBF ISDA Master Agreement and the LBF Schedule, the "LBF ISDA Documentation").

47.    LBF's obligations under the LBF ISDA Documentation are guaranteed by LBHI pursuant to that certain Guarantee of Lehman Brothers Holdings Inc. dated on or about January 24, 2002 (the "LBF ISDA Guarantee").    Pursuant to the LBF ISDA Guarantee, LBHI unconditionally guaranteed to Calyon the due and punctual payment of all amounts due and payable by LBF to Calyon under each of the transactions entered into under the LBF ISDA Documentation.

48.    Calyon and LBF entered into various transactions pursuant to the LBF ISDA Documentation, as more particularly set forth in Calyon's responses to the Derivatives Questionnaire and/or the Guarantee Questionnaire (as subsequently defined), each as applicable.

49.    The commencement of LBHI's chapter 11 case constituted an Event of Default pursuant to §5(a)(vii) of the LBF ISDA Master Agreement as LBHI served as the Credit Support Provider under the LBF ISDA Documentation.

50.    On or around September 16, 2008, Calyon delivered a notice to LBF pursuant to §6(a) of the LBF ISDA Master Agreement, designating September 16, 2008 as the Early Termination Date on which all outstanding transactions under the LBF ISDA Documentation would be terminated.

51.    On December 15, 2008, Calyon delivered a statement to LBF pursuant to §6(d)(i) of the LBF ISDA Master Agreement containing Calyon's calculation of the termination amount due and payable between Calyon and LBF under the LBF ISDA Documentation (the "LBF Calculation Statement").

AMR #213082-v1

52.     As stated in the LBF Calculation Statement, the amount payable to Calyon under the LBF ISDA Documentation by LBF is $10,537,425 plus any costs, fees, interest and costs of carry.

53.     On December 22, 2008, Calyon submitted a statement of claims in the LBF Swiss Proceeding asserting such claim against LBF.

54.     On January 27, 2009, Calyon submitted a revised statement of claims in the LBF Swiss Proceeding to claim for an additional $96,382, such amount being interest accrued on such claim until December 22, 2008.

55.     Accordingly, Calyon holds a claim against LBF under the LBF ISDA Documentation in the amount of $10,633,807 plus any costs, fees, interest and costs of carry.

56.     Calyon also holds a claim against LBHI on account of the LBF ISDA Guarantee in the amount of $10,633,807 plus any costs, fees, interest and costs of carry.

**F.     The LBCC ISDA Master Agreement**

57.     Calyon and LBCC are parties to that certain ISDA Master Agreement dated as of September 30, 1997, as amended from time to time and novated on May 25, 2004 (the "LBCC ISDA Master Agreement"), including the Schedule to the LBCC ISDA Master Agreement (the "LBCC Schedule") and the Credit Support Annex thereto (the "LBCC CSA" and together with the LBCC ISDA Master Agreement and the LBCC Schedule, the "LBCC ISDA Documentation").

58.     LBCC's obligations under the LBCC ISDA Documentation are guaranteed by LBHI pursuant to that certain Guarantee of Lehman Brothers Holdings Inc. dated on or about 23 August 1995, as amended on April 27, 2004 (the "LBCC ISDA Guarantee"). Pursuant to the LBCC ISDA Guarantee, LBHI unconditionally guaranteed to Calyon the due and punctual

AMR #213082-v1

payment of all amounts due and payable by LBCC to Calyon under each of the transactions entered into under the LBCC ISDA Documentation.

59.    Calyon and LBCC entered into various transactions pursuant to the LBCC ISDA Documentation, as more particularly set forth in Calyon's responses to the Derivatives Questionnaire and/or the Guarantee Questionnaire (as subsequently defined), each as applicable.

60.    The commencement of LBHI's chapter 11 case constituted an Event of Default pursuant to §5(a)(vii) of the LBCC ISDA Master Agreement as LBHI served as the Credit Support Provider under the LBCC ISDA Documentation.

61.    On September 16, 2008, Calyon delivered a notice to LBCC pursuant to §6(a) of the LBCC ISDA Master Agreement, designating September 16, 2008 as the Early Termination Date on which all outstanding transactions under the LBCC ISDA Documentation would be terminated.

62.    On March 2, 2009, Calyon delivered a statement to LBCC pursuant to §6(d)(i) of the LBCC ISDA Master Agreement containing Calyon's calculation of the termination amount due and payable between Calyon and LBCC under the LBCC ISDA Documentation (the "LBCC Calculation Statement").

63.    On September 8, 2009, Calyon delivered a revised statement to LBCC pursuant to §6(d)(i) of the LBCC ISDA Master Agreement containing Calyon's revised calculation of the termination amount due and payable between Calyon and LBCC under the LBCC ISDA Documentation (the "Revised LBCC Calculation Statement").

64.    As stated in the Revised LBCC Calculation Statement, the aggregate of the Unpaid Amounts due by LBCC to Calyon in relation to the Terminated Transactions under the LBCC ISDA Master Agreement is $3,422,145 and subject to Section 6(f) of the LBCC ISDA

AMR #213082-v1

Master Agreement, as described below, the total amount owed by Calyon to LBCC under the LBCC ISDA Documentation in respect of the Early Termination Date would be $33,982,184.

65.     As further set forth in the Revised LBCC Calculation Statement, pursuant to Part 5(a) (*Set-off*) of the LBCC Schedule (expressed as a new Section 6(f) of the LBCC ISDA Master Agreement) (the "LBCC Section 6(f)"), Calyon has the right to defer the payment of any amount payable by Calyon to LBCC under Section 6(e) of the LBCC ISDA Master Agreement until all indebtedness and obligations, whether matured or unmatured, of LBCC and its Affiliates[4] have been paid to Calyon in full, notwithstanding anything to the contrary.

66.     One or more of LBCC's Affiliates have been or will be notified of Calyon's claims against them, which exceed (whether individually or aggregately) the amount set forth in paragraph 64 above and which remain unpaid.

67.     In accordance with Section 6(f) of the LBCC ISDA Master Agreement, Calyon is not obligated to make any payments owing to LBCC in respect of the LBCC Early Termination Date until Calyon has received irrevocable payment in full of all amounts owed to Calyon by LBCC and its Affiliates.

## G.    The LBSF ISDA Master Agreement

68.     Calyon and LBSF are parties to that certain ISDA Master Agreement dated as of December 21, 2006, as amended from time to time (the "LBSF ISDA Master Agreement"), including the Schedule to the LBSF ISDA Master Agreement (the "LBSF Schedule") and the Credit Support Annex thereto (the "LBSF CSA" and together with the LBSF ISDA Master Agreement and the LBSF Schedule, the "LBSF ISDA Documentation").

---

[4] Pursuant to Section 14 of the LBCC ISDA Master Agreement, "Affiliate" means, "in relation to any person, any entity controlled, directly or indirectly, by the person, any entity that controls, directly or indirectly, the person or any entity directly or indirectly under common control with the person. For this purpose, 'control' of any entity or person means ownership of a majority of the voting power of the entity or person."

AMR #213082-v1

69.    LBSF's obligations under the LBSF ISDA Documentation are guaranteed by LBHI pursuant to that certain Guarantee of Lehman Brothers Holdings Inc. dated on or about December 27, 2006 (the "LBSF ISDA Guarantee").    Pursuant to the LBSF ISDA Guarantee, LBHI unconditionally guaranteed to Calyon the due and punctual payment of all amounts due and payable by LBSF to Calyon under each of the transactions entered into under the LBSF ISDA Documentation.

70.    Calyon and LBSF entered into various transactions pursuant to the LBSF ISDA Documentation, as more particularly set forth in Calyon's responses to the Derivatives Questionnaire and/or the Guarantee Questionnaire (as subsequently defined), each as applicable.

71.    The commencement of LBHI's chapter 11 case constituted an Event of Default pursuant to §5(a)(vii) of the LBSF ISDA Master Agreement as LBHI served as the Credit Support Provider under the LBSF ISDA Documentation.

72.    On September 16, 2008, Calyon delivered a notice to LBSF pursuant to §6(a) of the LBSF ISDA Master Agreement, designating September 16, 2008 as the Early Termination Date on which all outstanding transactions under the LBSF ISDA Documentation would be terminated.

73.    On April 15, 2009, Calyon delivered a statement to LBSF pursuant to §6(d)(i) of the LBSF ISDA Master Agreement containing Calyon's calculation of the termination amount due and payable between Calyon and LBSF under the LBSF ISDA Documentation (the "LBSF Calculation Statement").

74.    On September 8, 2009, Calyon delivered a revised statement to LBSF pursuant to §6(d)(i) of the LBSF ISDA Master Agreement containing Calyon's revised calculation of the

13

termination amount due and payable between Calyon and LBSF under the LBSF ISDA Documentation (the "Revised LBSF Calculation Statement").

75.     As stated in the Revised LBSF Calculation Statement, the amount payable to Calyon under the LBSF ISDA Documentation by LBSF is $191,799,211 plus any costs, fees, interest and costs of carry.

76.     Accordingly, Calyon holds a claim against LBSF under the LBSF ISDA Documentation in the amount of $191,799,211 plus any costs, fees, interest and costs of carry.

77.     Calyon also holds a claim against LBHI on account of the LBSF ISDA Guarantee in the amount of $191,799,211 plus any costs, fees, interest and costs of carry.

## H.     The LBCS ISDA Master Agreement

78.     Calyon and LBCS are parties to that certain ISDA Master Agreement dated as of October 2, 2006, as amended from time to time (the "LBCS ISDA Master Agreement"), including the Schedule to the LBCS ISDA Master Agreement (the "LBCS Schedule") and the Credit Support Annex thereto the ("LBCS CSA" and together with the LBCS ISDA Master Agreement and the LBCS Schedule, the "LBCS ISDA Documentation").

79.     LBCS's obligations under the LBCS ISDA Documentation are guaranteed by LBHI pursuant to that certain Guarantee of Lehman Brothers Holdings Inc. dated on or about October 12, 2006 (the "LBCS ISDA Guarantee"). Pursuant to the LBCS ISDA Guarantee, LBHI unconditionally guaranteed to Calyon the due and punctual payment of all amounts due and payable by LBCS to Calyon under each of the transactions entered into under the LBCS ISDA Documentation.

80.     Calyon and LBCS entered into various transactions pursuant to the LBCS ISDA Documentation, as more particularly set forth in Calyon's responses to the Derivatives Questionnaire and/or the Guarantee Questionnaire (as subsequently defined), each as applicable.

14

81.     The commencement of LBHI's chapter 11 case constituted an Event of Default pursuant to §5(a)(vii) of the LBCS ISDA Master Agreement as LBHI served as the Credit Support Provider under the LBCS ISDA Documentation.

82.     On September 16, 2008, Calyon delivered a notice to LBCS pursuant to §6(a) of the LBCS ISDA Master Agreement, designating September 16, 2008 as the Early Termination Date on which all outstanding transactions under the LBCS ISDA Documentation would be terminated.

83.     On December 30, 2008, Calyon delivered a statement to LBCS pursuant to §6(d)(i) of the LBCS ISDA Master Agreement containing Calyon's calculation of the termination amount due and payable between Calyon and LBCS under the LBCS ISDA Documentation (the "LBCS Calculation Statement").

84.     As stated in the LBCS Calculation Statement, the amount payable to Calyon under the LBCS ISDA Documentation by LBCS is (subject to the EDFT Payment discussed below) $15,030,239 plus any costs, fees, interest and costs of carry.

85.     Accordingly, subject to the EDFT Payment discussed below, Calyon holds a claim against LBCS under the LBCS ISDA Documentation in the amount of $15,030,239 plus any costs, fees, interest and costs of carry.

86.     In addition, and subject to the EDFT Payment discussed below, Calyon also holds a claim against LBHI on account of the LBCS ISDA Guarantee in the amount of $15,030,239 plus any costs, fees, interest and costs of carry.

## I.     The EDF Trading Letter of Credit

87.     Upon information and belief, LBCS and EDF Trading Limited ("EDFT") are parties to an ISDA Master Agreement dated as of May 23, 2006 (the "EDFT/LBCS ISDA Master Agreement").

AMR #213082-v1

88.     Pursuant to a framework agreement between Calyon and EDFT, a certain letter of credit number 070925IS462GBR (the "EDFT Letter of Credit") was raised against EDFT's account with Calyon for the benefit of LBCS to facilitate payments due by EDFT to LBCS under the EDFT/LBCS ISDA Master Agreement.

89.     Subsequent to a purported termination of outstanding transactions under the EDFT/LBCS ISDA Master Agreement, LBCS issued a demand for payment of €50 million under the EDFT Letter of Credit to Calyon.

90.     In response to the demand for payment, and in reliance on the rights set forth in Part 5(c) (*Set-off*) of the LBCS Schedule (expressed as the new Section 6(f) of the LBCS ISDA Master Agreement), Calyon paid LBCS the amount of €38 million under the EDFT Letter of Credit (the "EDFT Payment"), and such payment constituted the full satisfaction of Calyon's obligations to LBCS under the EDFT Letter of Credit.

91.     In accordance with the new Section 6(f) of the LBCS ISDA Master Agreement, the remainder of the €50 million demanded by LBCS under the EDFT Letter of Credit was set off against the amount payable by LBCS to Calyon under the LBCS ISDA Documentation ($15,030,239 less any costs, fees, interest and costs of carry) and therefore the amount owing to Calyon under the LBCS ISDA Documentation has been reduced accordingly.  To the extent that such offset is challenged by any party in any way, Calyon fully reserves the right to seek the full amount owing to Calyon under the LBCS ISDA Documentation by LBCS, including but not limited to $15,030,239 plus any costs, fees, interest and costs of carry.

92.     To the extent of those obligations of EDFT to LBCS under the EDFT/LBCS ISDA Master Agreement to which the EDFT Letter of Credit was applicable, the EDFT Payment

AMR #213082-v1

constitutes the full satisfaction of EDFT's obligations to LBCS under the EDFT/LBCS ISDA Master Agreement.

**J.    The Amounts Owed Under the Calyon/Lehman Agreements and Related Guarantees**

93.    As a result of the EDFT Payment, and based on the amounts owed to Calyon under the LBIE ISDA Documentation, the LBF ISDA Documentation, the LBSF ISDA Documentation, the LBCS ISDA Documentation, the LBIE GMSLA, the LBIE GMRA and the corresponding guarantees by LBHI (collectively, the "Calyon/Lehman Agreements"), Calyon holds a claim against the Lehman Affiliates under the Calyon/Lehman Agreements in the amount of $253,605,004, plus any costs, fees, interest and costs of carry.  In the event that the conditions precedent to payment under the LBCC Section 6(f) are satisfied as set forth in the Revised LBCC Calculation Statement, the amount owed to LBCC under the LBCC ISDA Master Agreement would be $33,982,184.  Notwithstanding the foregoing and in the event that Calyon's legal or factual positions concerning the aforementioned Calyon/Lehman Agreements and the assertion of its rights thereunder are not credited in full, Calyon's gross aggregate claim against the Lehman Affiliates under such agreements is in the amount of $268,635,243 plus any cost, fees, interest and costs of carry.

94.    For the reasons set forth above, Calyon also holds a claim against LBHI in the amount of $253,605,004.  Notwithstanding the foregoing and in the event that Calyon's legal or factual positions concerning the aforementioned Calyon/Lehman Agreements and the assertion of its rights thereunder are not credited in full, Calyon's gross aggregate claim against LBHI under such agreements is in the amount of $268,635,243 plus any cost, fees, interest and costs of carry.

AMR #213082-v1

95.    In the event that any provision of the Calyon/Lehman Agreements or the guarantees provided by LBHI is determined to be unenforceable (including but not limited to the LBI Section 6(f) and the LBCC Section 6(f)), Calyon reserves the right to assert individual claims against each counterparty to the Calyon/Lehman Agreements in the amounts set forth above (as may be amended) specifically against each Lehman Affiliate and against LBHI as the guarantor of such obligations.

96.    In accordance with the order establishing the deadline for filing proofs of claim against the Debtors dated July 2, 2009 (the "Bar Date Order"), the documentation supporting this claim will be uploaded onto the website created for the completion of the Derivative Questionnaire[5] and the Guarantee Questionnaire (as defined in the Bar Date Order) and has not been attached to this Claim.

## Reservation of Rights

97.    Calyon expressly reserves the right to amend or supplement this Claim at any time, in any respect and for any reason, including but not limited to, for the purposes of (a) fixing, increasing, or amending the amounts referred to herein, and (b) adding or amending documents and other information and further describing the claims, particularly with respect to the claims of the various Affiliates of Calyon against the Lehman Affiliates.  Calyon does not waive any right to amounts due for any claim asserted herein by not stating a specific amount due for any such claim at this time, and Calyon reserves the right to amend or supplement this proof of claim, if Calyon should deem it necessary or appropriate, to assert and state an amount for any such claim.

---

[5] Because neither the LBIE GMSLA nor the LBIE GMRA constitute a "Derivatives Contract" within the meaning given to that term in the Bar Date Order, the documentation supporting the claims under these contracts will be uploaded only onto the website created for the completion of the Guarantee Questionnaire.

AMR #213082-v1

98.     This Claim is made without prejudice to the filing by Calyon and any related entities of additional proofs of claim for any additional claims against this Debtor or any other of the Debtors, LBIE, LBF and LBI and non-debtor entities affiliated with the Debtors of any kind or nature, including, without limitation, claims for administrative expenses, additional interest, late charges, and related costs and expenses, and any and all other charges and obligations reserved under the applicable documents and other transaction documents, and claims for reimbursement in amounts that are not fully ascertainable.

99.     The filing of this Claim is not intended to be and shall not be deemed to be or construed as (a) a waiver or release of any right to claim specific assets; any rights of setoff, recoupment, or counterclaim; or any other right, rights of action, causes of action, or claims, whether existing now or hereinafter arising, that Calyon has or may have against the Debtors, LBIE, LBF or LBI or non-debtor entities affiliated with the Debtors or any other person, or persons, and Calyon expressly reserves all such rights, or (b) an election of remedies.

100.    Nothing herein modifies, alters, amends and/or waives any right Calyon may have under applicable law or any agreement or understanding to assert and recover from the Debtors, LBIE, LBF or LBI or non-debtor entities affiliated with the Debtors, or any other person or persons, upon rights, claims, and monies.

101.    Calyon lacks sufficient information at this time (which, upon information and belief, is in the exclusive possession of the Debtors and/or their affiliates) to know whether assets of the Lehman Affiliates or any other Debtor engaged in transactions between or among themselves have been transferred out of the estate of a particular Lehman Affiliate, the consequence of which would give rise to a claim by Calyon against such entities for or relating

AMR #213082-v1

to the claims set forth herein.  Accordingly, Calyon reserves its rights to assert against such other entities claims set forth herein or related thereto as may be appropriate.

102.   In executing and filing this claim, Calyon does not submit itself to the jurisdiction of this Court for any other purpose than with respect to this Claim.  This Claim is not intended to be, and shall not be construed as (i) an election of remedies, (ii) a waiver of any past, present or future defaults, or (iii) a waiver or limitation of any rights remedies, claims or interests of Calyon.

103.   Calyon has received notices containing two "unique identification numbers" in relation to its claims against certain of the Debtors (including 1000059135 and 1000091714), however such notices fail to identify which number is linked to which Debtor and Calyon has been unable to obtain clarification from the Debtors' counsel as to which number applies to each of Calyon's claims.  As such, Calyon is unable to determine the correct unique identification number to use for each of its claims and Calyon therefore reserves all rights with respect to use of a number that is not the number intended by the applicable Debtor.[6]

<u>Notices</u>

104.   All notices, communications and distributions with respect to this Claim should be sent to:

> Calyon SA
> 9 Quai du President Paul Doumer
> 92400 Courbevoie
> France
> Attention:  Sophie Waldberg-Billhouet
> Telephone:  + 33 1 41 89 00 00

With a copy to:

> Clifford Chance US LLP
> 31 West 52nd Street

---

[6] In addition, Calyon has been provided with the following unique identification number with respect to LBCC: 901002290.

AMR #213082-v1

New York, New York 10019
Attention:  Andrew Brozman, Esq.
            Sara M. Tapinekis, Esq
Telephone:  212-878-8000

AMR #213082-v1



H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

2:27

RECEIVED BY:

DATE

TIME