**HEARING DATE AND TIME: April 24, 2013 at 10:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: April 17, 2013 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---

**NOTICE OF HEARING ON MOTION PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL**
**OF SETTLEMENT WITH LEHMAN BROTHERS FINANCE AG (IN LIQUIDATION)**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for approval of a settlement agreement with Lehman Brothers Finance AG (in liquidation) a/k/a Lehman Brothers Finance SA (in liquidation) pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **April 24, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Alfredo R. Pérez, Esq. and Maurice Horwitz, Esq., attorneys for LBHI and certain of its affiliates; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.; (iv) all parties who have requested notice in these chapter 11 cases; and (v) all parties with a particularized interest in the Motion, so as to be so filed and received no later than **April 17, 2013 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

US_ACTIVE:\43980951\4\58399.0011

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: April 2, 2013
       Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511


Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

US_ACTIVE:\43980951\4\58399.0011

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

### MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT AGREEMENT WITH LEHMAN BROTHERS FINANCE AG (IN LIQUIDATION)

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this Motion and respectfully represents:

### Preliminary Statement

1.      By this Motion, the Plan Administrator seeks authority, on behalf of itself and the Chapter 11 Estates (defined below), to enter into a settlement agreement dated March 27, 2013, attached hereto as Exhibit A (the "Settlement Agreement"), with LBHI's Swiss affiliate, Lehman Brothers Finance AG (in Liquidation), also known as Lehman Brothers Finance SA (en liquidation) ("LBF"). LBF is one of the few remaining material foreign affiliates that has not yet

consummated a comprehensive settlement with the Lehman US Debtors.  LBF has also asserted

some of the largest claims in these chapter 11 cases.  In particular, LBF initially filed claims

against LBHI aggregating to approximately $59.3 billion.  Although LBF filed amendments to

these claims on December 13, 2011 that reduced LBF's aggregate claims against LBHI to

approximately $15.4 billion, LBF's claims against LBHI are extraordinary and among the largest

Disputed Claims (as defined in the Plan) that remain unresolved against LBHI.  Moreover, the

majority of LBF's claims against LBHI purport to be guarantee claims based upon board

resolutions adopted by the Executive Committee of LBHI's Board of Directors (the "Corporate

Resolutions").  LBF asserts that the Corporate Resolutions constitute valid and enforceable

guarantees of the obligations of certain other Lehman affiliates, and accordingly, LBF has

asserted billions of dollars in claims based on its transactions with, and asserted claims against,

these affiliates.  LBHI has questioned the enforceability of the Corporate Resolutions, and has

also disputed the validity of any claims based upon the Corporate Resolutions because applicable

law generally requires the purported beneficiary of a guarantee to demonstrate both knowledge

of, and reliance upon, a guarantee, and LBHI has not been satisfied that LBF can demonstrate

either.

       2.     At the same time, LBHI has filed a substantial claim in the amount of

approximately $14.2 billion against LBF in LBF's bankruptcy proceeding, based primarily on

intercompany loan transactions.  LBHI's claim against LBF is a significant asset.  LBF, however,

has taken the position that the LBHI's claim should be treated as equity, being paid after

creditors but before holders of common stock.[1]  In addition, LBF has challenged LBHI's ability

---

[1]     *See Objection to Motion Pursuant to Section 8.4 of the Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors to Estimate the Amount of Disputed Claims Filed by Lehman Brothers Finance AG in Liquidation for Purposes of Establishing Reserves*, filed on January 19, 2012 [ECF No. 24421] at ¶ 20.

to prove the amount of its intercompany claim against LBF, and has asserted that it may have offsetting claims against LBHI under Swiss law for factual directorship.

3.    After more than four years of highly contentious negotiations, LBHI and LBF have reached an economic resolution of the legal disputes summarized above. Pursuant to the Settlement Agreement, in full and final settlement of all of the intercompany claims between LBF and LBHI, LBHI will receive (i) an allowed claim against LBF in an amount equal to CHF 9.548875 billion (corresponding to $8.75 billion converted to Swiss Francs at the rate of USD/CHF 1.0913) (the "LBHI Claim") and (ii) assignment from LBF of LBF's claims against certain of LBHI's affiliates. To resolve the legal dispute concerning treatment of LBHI's claim as equity, LBHI has agreed partially to subordinate the LBHI Claim to the claims of LBF's third-party creditors, as more fully described below. In addition, under the Settlement Agreement, LBF will have an allowed claim against LBHI in the amount of approximately $942 million on account of LBHI's guarantee of certain securities owned by LBF (the "Allowed LPS Claim"). Furthermore, the other Chapter 11 Estates and certain of LBHI's non-debtor affiliates have reached agreement on the reconciled and allowed amounts of the intercompany claims that been asserted between them.

4.    With the exception of the Allowed LPS Claim, which exceeds $200 million, the Plan Administrator is authorized to enter into the compromise and settlement described above on behalf of the Chapter 11 Estates without prior approval of the Court pursuant to the *Order Modifying Certain Existing Claims Orders* entered on July 18, 2012 [ECF No. 29505] (the "Second Settlement Procedures Order"). Pursuant to the Second Settlement Procedures Order, the Plan Administrator "is authorized to settle any and all Claims…asserted against the Debtors [as such terms are defined in the Plan] without prior approval of the

6

[Bankruptcy] Court or any other party in interest where…the allowed amount of the settled Claim is less than or equal to $200 million." (Second Settlement Procedures Order at p. 2.)

5.      Nevertheless, LBF has insisted that the Plan Administrator obtain the approval of this Court of the entire Settlement Agreement as a condition precedent to the effectiveness of the Settlement Agreement.  Given the immense value that LBHI is likely to realize on account of both the LBHI Claim and the LBF Claim Assignment, LBHI has agreed to this condition precedent.  The Settlement Agreement offers a fair and reasonable settlement of the litigation risk associated with litigation over the enforceability of LBF's claims against LBHI, and LBHI's claim against LBF.  Moreover, the resolution of these disputes will enable LBF to begin making distributions to its creditors and embark on the road towards maximizing the value of its estate for the benefit of all of its creditors, including LBHI.  For these reasons, in the considered judgment of LBHI, the Settlement Agreement is manifestly in the best interests of both LBHI and LBF, and should be approved.

## Background

6.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      On December 22, 2008, a bank/security dealer bankruptcy proceeding (the "Swiss Bankruptcy") was commenced for LBF pursuant to Swiss law and

PricewaterhouseCoopers AG, Zurich ("PwC") was appointed as the bankruptcy liquidator of LBF.

8.      On February 10, 2009, PwC commenced a case under chapter 15 of the Bankruptcy Code by filing a petition seeking recognition as the foreign representative of LBF, and of the Swiss Bankruptcy as a foreign main proceeding. *See In re Lehman Brothers Finance AG, in Liquidation*, Case No. 09-10583 (the "Chapter 15 Case").

9.      On March 12, 2009, this Court entered an *Order Granting Recognition of Foreign Main Proceeding and Related Relief Under Chapter 15*, ECF No. 24 in the Chapter 15 Case.  Additional information regarding the Swiss Bankruptcy is contained in LBF's [title of the LBF motion] which LBF has filed in the Chapter 15 Case concurrently with the Motion.

10.     On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order").  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator, among other things, is authorized to implement the provisions of the Plan on behalf of LBHI and its affiliates who commenced the Chapter 11 Cases (the "Chapter 11 Estates").

11.     The Confirmation Order provides that the *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b)* [ECF No. 7936] (the "First Settlement Procedures Order") shall continue to apply and be binding on all parties following the effective date of the Plan through the date upon which all of the Chapter 11 Cases have been closed in accordance with Section 6.6 of the Plan.

12.     As stated above, on July 18, 2012, the Court entered the Second Settlement Procedures Order, which superseded the First Settlement Procedures Order.

US_ACTIVE:\43980951\4\58399.0011

**Jurisdiction**

13.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The Claims Disputes**

14.     Prior to the Commencement Date, LBF served as the global center for Lehman's equity derivatives business.  As one of the most significant holders of counterparty risk across the Lehman enterprise, LBF held open derivative positions with virtually every major Lehman affiliate that traded in derivatives or similar products, as well as with hundreds of third-party (*i.e.*, non-affiliate) counterparties.

15.     Because of its role as the hub of Lehman's global equity derivatives business, LBF's asset base is comprised primarily of receivables from "in the money" derivatives trades.  A substantial portion of these in the money trades are with Lehman affiliates that are now subject to a variety of insolvency proceedings in several foreign jurisdictions.  In some cases, LBF is the largest creditor in these affiliates' insolvency proceedings.  Its largest claims are against Lehman Brothers Securities N.V. ("LBS") and Lehman Brothers Treasury Co. B.V. ("LBT"), two entities that issued "structured" investment products, *i.e.*, securities whose value is linked to an underlying asset or index.  LBS and LBT, typically hedged the derivative aspect of these securities by entering into intercompany hedging transactions with LBF.  Other affiliates similarly hedged their equity derivative exposure to the street with LBF.  In total, LBF now has (i) an allowed claim against LBS in the amount of approximately $4.411 billion and (ii) an allowed claim against LBT in the amount of approximately $3.275 billion.

16.     LBHI, on the other hand, as the central banker for most of the Lehman enterprise, provided LBF with the funding that enabled LBF to trade with these affiliates and, as

a result, ultimately gave rise to billions of dollars in intercompany receivables from other Lehman affiliates to LBF.  As a result, LBHI is LBF's largest creditor, and has asserted a claim against LBF in the amount of approximately $14.2 billion (the "<u>LBHI Funding Claim</u>").

17.    Based on its claims against other Lehman affiliates, LBF has also asserted a claim against LBHI that purports to be a guarantee claim based upon the Corporate Resolutions (the "<u>LBF Corp-Res Claim</u>").  The LBF Corp-Res Claim was initially asserted in the amount of approximately $52.3 billion; LBF subsequently amended its claims against LBHI and as part of these amendments, reduced the LBF Corp-Res Claim to approximately $12.7 billion.  Together with other claims, LBF now asserts a total of approximately $15.4 billion in claims against LBHI.

18.    For the past four years, both the LBHI Funding Claim and the LBF Corp-Res Claim have been the subject of highly contentious debate and controversy between LBHI and LBF.  LBHI has disputed the amount and validity of the LBF Corp-Res Claim, as stated above, because applicable law generally requires the purported beneficiary of a guarantee to demonstrate both knowledge of, and reliance upon, a guarantee.  To date, LBF has demonstrated neither to LBHI's satisfaction.  LBHI also has serious concerns as to whether the Corporate Resolutions are enforceable contracts at all.

19.    LBF, on the other hand, has taken the position that the LBHI Funding Claim should be either subordinated, or recharacterized as equity under Swiss law; *i.e.*, in either case, that the LBHI Funding Claim should receive no distributions from LBF's liquidation until all other creditors are paid in full.  Based upon advice from Swiss counsel, LBHI has vigorously disputed this assertion for several reasons.  LBHI has taken the position that as long as a corporation is neither under-capitalized nor over-indebted, there exists no statutory authority or

US_ACTIVE:\43980951\4\58399.0011

case-law in Switzerland to support subordination of intercompany loans or recharacterization of such loans as equity. Indeed, there is also no statutory authority, and only dubious precedent, for subordination of any claims even where a court does make certain findings, including over-indebtedness or under-capitalization, neither of which is present here. Based on LBHI's review of LBF's financial records, LBHI has concluded that LBF likely cannot demonstrate that LBF was under-capitalized or over-indebted prior to the Swiss Bankruptcy. LBF has disputed these facts, and has argued that sufficient legal precedent and scholarly doctrine exists to support its position that the LBHI Funding Claim should be subordinated or treated as equity.

### The Settlement

20.     The settlement and compromise embodied in the Settlement Agreement is comprised of three key elements:[2]

(a) **The LBF Claim Assignment:** LBF will assign to LBHI all of its right, title and interest in claims that LBF has asserted against certain other Lehman affiliates as set forth in the Settlement Agreement (and which form the basis for LBF's asserted guarantee claims against LBHI) (the "LBF Claim Assignment"), and will withdraw all of its asserted claims against the Chapter 11 Estates except for an allowed claim against LBHI in the amount of $942 million based on certain securities guaranteed by LBHI (*see* ¶ 20(b) below). The assigned claims include LBF's claims against (i) Lehman Brothers Securities N.V. ("LBS"), which LBS has allowed in the amount of approximately $4.411 billion, and (i) Lehman Brothers Treasury Co. B.V. ("LBT"), which LBF has asserted in an amount equal to approximately $3.478 billion.

(b) **The LBHI Claim**. LBHI's claim against LBF will be reduced to, and LBHI will have an allowed claim against LBF in the amount of, CHF 9.548875 billion (corresponding to approximately $8.75 billion converted to Swiss Francs at the rate of USD/CHF 1.0913).

(c) **The LBF Waterfall:** LBHI has also agreed partially to subordinate the LBHI Claim to the claims of LBF's third-party creditors. Specifically,

---

[2]     This summary is intended to be used for information purposes only. This summary is qualified in its entirety by the provisions of Settlement Agreement's governing documentation and shall not, in any way, affect the meaning or interpretation thereof.

11

LBF will implement a waterfall (the "LBF Waterfall") in its liquidation that provides an initial priority recovery to general unsecured third-party creditors of $1.275 billion (provided that no such creditor shall receive more than 50% of its allowed claim). LBF's affiliate creditors shall receive a priority distribution equal, on a percentage basis, to the priority recovery, on a percentage basis, of LBF's third party creditors. Following this initial priority distribution, LBHI will participate *pro rata* with all creditors in LBF's distributions.

21.    In addition to the LBF Claim Assignment, the LBHI Claim, and the LBF Waterfall, the Settlement Agreement provides for the allowance of certain claims against LBF and LBHI. Specifically:

(a) Lehman Brothers Commodity Services Inc. ("LBCS") and Lehman Commercial Paper Inc. ("LCPI") will have allowed claims against LBF in the amount of approximately $1.3 million and $232 thousand respectively (the "Other Debtor Allowed Claims").

(b) LBF will have the Allowed LPS Claim in the amount of approximately $942 million against LBHI on account of LBHI's guarantee of certain securities held by LBF. Although this claim will be classified as a Senior Affiliate Guarantee Claim under the Plan (LBHI Class 4B), LBF has agreed to treatment of the claim as a Senior Third Party Guarantee Claim (LBHI Class 5).

(c) Certain of LBHI's non-debtor affiliates set forth on Exhibit C to the Settlement Agreement will obtain allowed claims against LBF in the amounts set forth therein (the "Non-Debtor Allowed Claims").

22.    Effectiveness of the Settlement Agreement is subject to a number of conditions precedent, including approval of the Settlement Agreement by this Court in both the Chapter 11 Cases and the Chapter 15 Case.

## Basis for The Relief Requested

23.    Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts "to approve settlements if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham*

*Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Id.*; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

24.     "Compromises are a normal part of the process of reorganization." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson* ("*TMT Trailer Ferry*"), 390 U.S. 414, 424 (1968) (*quoting Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The court's discretion must be exercised "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and … in the best interest of the [debtor's] estate." *In re Best Products Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). The court must apprise itself "of all [relevant] facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT Trailer Ferry,* 390 U.S. at 424.

25.     While a court must evaluate "all … factors relevant to a full and fair assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry,* 390 U.S. at 424, there is no requirement for the conduct of a "mini-trial" of the claims being settled or a full independent investigation. *See In re W.T. Grant Co.*, 699 F.2d at 608; *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 505. "The bankruptcy judge does not have to decide the numerous questions of law and fact. . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal

US_ACTIVE:\43980951\4\58399.0011

citations omitted).  Lastly, in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate."  *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993) (emphasis added), *aff'd,* 17 F.3d 600 (2d Cir. 1994).

26.    The Settlement Agreement offers tremendous value both to LBHI and LBF and is manifestly in their best interests.  Principally, LBF Claim Assignment and the LBF Waterfall obviate the need for LBHI and LBF to engage in litigation on two fronts: in this Court, over the validity and enforceability of LBF's claims based on the Corporate Resolution, and in the Swiss courts, over the recharacterization of LBHI's claims against LBF.  Litigation over the Corporate Resolutions would be highly fact intensive and uncertain, requiring extensive discovery and evidentiary hearings to establish whether LBF held the requisite degrees of knowledge and reliance upon the Corporate Resolutions.  The concurrent litigation in Switzerland, concerning whether LBHI's claims should be treated as equity, is likely to raise issues of first impression under Swiss law, and would certainly proceed to a lengthy and costly appellate process, potentially all the way to the Federal Supreme Court of Switzerland.  Either one of these potential legal battles alone would consume inordinate amounts of time and resources; together, they would be an immense burden on both estates, and from the perspective of LBHI, would ultimately erode any value that LBHI could have expected to realize from LBF's estate.  As a result of the arms'-length negotiations that have taken place over the past four years, the Settlement Agreement resolves the foregoing legal disputes in a manner that allows LBHI to realize considerable value both from LBF's estate through the LBHI Claim, and from the estates of certain of its affiliates, including LBT and LBS, through the LBF Claims Assignment, while

14

allowing LBF to reach satisfactory compromise of the recharacterization risk that it perceives to be the primary risk attendant to LBHI's claim.

27.    The Allowed LPS Claim will be allowed in an amount that has been determined, and is consistent with, the methodology implemented by LBHI in determining the allowed amount of other structured securities issued by certain affiliates of LBHI.  Similarly, the Other Debtor Allowed Claims and the Non-Debtor Allowed Claims will be allowed, pursuant to the Settlement Agreement, in amounts that are consistent with the reconciled books and records of the respective entities.  Thus, with respect to these claims, the Plan Administrator submits that the Settlement Agreement falls well above the lowest point in the range of reasonableness.

28.    For all the foregoing reasons, it is beyond peradventure that the Settlement Agreement results in a highly desirable outcome for all parties, is manifestly in the best interests of all parties to the Settlement Agreement and their stakeholders, and should be approved.

## Notice

29.    No trustee has been appointed in the Chapter 11 Cases.  The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], has served notice of this Motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) LBF; and (vi) all parties who have requested notice in these chapter 11 cases.  The Plan Administrator submits that no other or further notice need be provided.

US_ACTIVE:\43980951\4\58399.0011

30.    No previous request for the relief sought herein has been made by LBHI or the Plan Administrator to this or any other court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  April 2, 2013
        Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Alfredo R. Pérez

Attorneys for Lehman Brothers Holdings Inc. and Certain of its Affiliates

16

**Exhibit A**

## *SETTLEMENT AGREEMENT*

This Settlement Agreement (the "Agreement") is made and entered into as of March 27, 2013 (the "Execution Date"), by and among (i) the LBHI Parties, and (ii) Lehman Brothers Finance AG (in Liquidation), also known as Lehman Brothers Finance SA (en liquidation) ("LBF"). Each LBHI Party and LBF shall each sometimes be referred to individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, the US Debtors commenced voluntary Chapter 11 Cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; the Chapter 11 Cases are being jointly administered under Case Number 08-13555 (JMP);

WHEREAS, on December 19, 2008 (with effect as of December 22, 2008), the Swiss Federal Banking Commission (now the Swiss Financial Markets Supervisory Authority ("FINMA") entered the LBF Bankruptcy Order commencing the LBF Swiss Proceeding and appointed PwC (Zurich) as bankruptcy liquidator of LBF ("LBF Liquidator");

WHEREAS, on March 12, 2009, the Bankruptcy Court entered an order commencing the LBF Chapter 15 Proceeding;

WHEREAS, on November 9, 2012, FINMA recognized and authorized LBHI, Lehman Brothers Commercial Corporation, Lehman Brothers Special Financing Inc., Lehman Commercial Paper Inc., Lehman Commodity Services Inc., and Lehman Brothers OTC Derivatives Inc., to enforce their claims against LBF without secondary bankruptcy proceedings being opened in Switzerland;

WHEREAS, the US Debtors and LBF are parties to the Lehman Global Protocol which generally provides for mutual information sharing and cooperation between the parties thereto;

WHEREAS, the US Debtors have submitted the US Debtors' Claims against LBF in the LBF Swiss Proceeding and the LBHI Joinder Parties have submitted the US Non-Debtor Claims against LBF in the LBF Swiss Proceeding;

WHEREAS, LBF has submitted the LBF Claims against the US Debtors in the Chapter 11 Cases and against the LBHI Joinder Parties;

WHEREAS, the Parties have entered into the Tolling Agreement; and

WHEREAS, the Parties are desirous of resolving all disputes and all issues between the LBHI Parties and LBF so as to avoid extensive, uncertain and expensive litigation.

**NOW, THEREFORE**, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    *Definitions.*

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Affiliate" means "Affiliate" as defined in section 101(2) of the Bankruptcy Code.

"Agreement" is defined in the Preamble.

1

"Applicable Swiss Law" means the laws of Switzerland.

"Assigned Affiliate Claims" has the meaning ascribed to such term in Section 3 of this Agreement.

"Assignment Offer" means an offer, as determined by the LBF Liquidator, for the assignment of the right to pursue the LBF Claims and the right to object to the claims of LBHI and the other LBHI Parties against LBF, according to Article 260 of the Swiss Federal Law on Debt Enforcement and Bankruptcy (SchKG).

"Bankruptcy Code" means title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

"Business Day" means any day that is none of a Saturday, Sunday, United States federal holiday, a New York state holiday or a bank or public holiday in Zurich.

"Chapter 11 Cases" means the bankruptcy cases being jointly administered under Case Number 08-13555 (JMP) in the Bankruptcy Court.

"Claim" or "Claims" shall have the meaning in section 101(5) of the Bankruptcy Code.

"Creditors' Committee" means the creditors' committee appointed in the LBF Swiss Proceeding.

"Effective Date" means a date, as agreed between the Parties, within five (5) Business Days following the satisfaction or waiver of all conditions precedent set forth in Section 5.

"Exchange Rate" means USD/CHF 1.0913.

"Extended Lien Provision" means (i) with respect to the LBHI Parties, a term in any agreement between any such LBHI Party or an Affiliate which purports to confer an encumbrance in favour of any other Affiliate in respect of assets to secure debts owed by such LBHI Party to such other Affiliate; and (ii) with respect to LBF, a term in any agreement between that LBF and an Affiliate which purports to confer an encumbrance in favour of any other Affiliate in respect of assets to secure debts owed by LBF to such other Affiliate.

"JPM Claim" means all claims for which LBHI is subrogated to a claim of JPMorgan Chase Bank, N.A. or any of its affiliates (each a "JPM Entity") against LBF, to the extent of the payments made by LBHI or applied from LBHI's property to such claim of such JPM Entity pursuant to that certain Collateral Disposition Agreement among JPMorgan Chase Bank, N.A. and the US Debtors, dated March 16, 2010

"Kollokationsplan" means the schedule of claims to be established by the LBF Liquidator listing the admitted claims against LBF.

"LAMCO" means Lehman Asset Management Company.

"LBF Claims" means the claims of LBF timely asserted against the US Debtors and asserted against the LBHI Joinder Parties.

2

"LBF Allowed Claim" means the claim of LBF against LBHI based on the LBF Lehman Program Securities, which claim shall be allowed in the amount and value set forth on Exhibit B, shall not be subject to any set-off, and shall be classified in LBHI Class 4B under the US Debtors' Plan, but treated as if it were an unsecured, non-priority, senior third-party guarantee claim against LBHI in LBHI Class 5 of the US Debtors' Plan.

"LBF Bankruptcy Order" means the Order entered by the Swiss Federal Banking Commission on December 19, 2008 (with effect of December 22, 2008), opening bankruptcy proceedings over LBF and appointing PricewaterhouseCoopers AG, Zürich as bankruptcy liquidator of LBF with sole authority to act on LBF's behalf.

"LBF Chapter 15 Proceeding" means that certain proceeding pursuant to chapter 15 of the Bankruptcy Code for LBF pending in the Bankruptcy Court and captioned *In re Lehman Brothers Finance AG, In Liquidation*, Case No. 09-10583 (JMP) which proceeding recognizes (a) PwC (Zurich), in its capacity as the LBF Liquidator, as the duly appointed and authorized "foreign representative" of LBF, and (b) the Swiss bankruptcy proceeding related to LBF as a "foreign main proceeding".

"LBF Excluded Claims" means (i) the agreements, promises, settlements, representations and warranties set forth in the Agreement, (ii) the claims represented by the LBF Allowed Claim, (iii) any Non-Party Claim, and (iv) solely to the extent required for the purposes of Section 2.5(b) of this Agreement, any Claim based upon an Extended Lien Provision.

"LBF Lehman Program Securities" means those securities set forth on Exhibit B.

"LBF Released Claim" means all claims, demands, rights, duties, remedies, judgments, executions, debts, damages, liabilities, causes of action, costs, expenses, and Claims, of every kind, nature, character and description whatsoever (other than the LBF Excluded Claims), whether accrued or unaccrued, known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, certain or contingent, whether based on contract, federal, state, local, statutory or common law (including Applicable Swiss Law) or any other law, rule or regulation of any jurisdiction, or otherwise, that have been, could have been or might hereafter be asserted in any action, suit or proceeding, whether directly, indirectly, representatively or in any other capacity, in law or in equity, by the LBF Releasing Parties against any of the LBF Released Parties arising out of or in any way related to any members of the former Lehman Brothers group (including, without limitation, the business activities, assets or liabilities thereof). The release of the LBF Released Claims by the LBF Releasing Parties shall be a waiver and relinquishment, to the fullest extent permitted by law, of all provisions, laws and rules limiting relinquishment of unknown or unsuspected claims, including the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and any and all provisions, rights and benefits of any similar statute or common law rule of any other jurisdiction. The term LBF Released Claim shall specifically include, without limitation: (i) any administrative expense claim arising under Applicable Swiss Law or the Bankruptcy Code, (ii) any US Avoidance Action or Swiss Avoidance Action, (iii) any right of subrogation; and (iv) any Claim based upon any Extended Lien Provision, except to the extent preserved solely for the purposes of Section

2.5(b) of this Agreement.  The term LBF Released Claim shall specifically not include LBF Excluded Claims.

"LBF Released Parties" means the following Persons: (i) the LBHI Parties, (ii) solely in their capacities with the LBHI Parties, all past and present officers, directors, employees, agents, representatives, consultants, financial advisors, accountants, attorneys, professionals and other advisors of or to the LBHI Parties, (iii) the former members of the Board of Directors of LBF appointed by LBHI, in their capacity as members of the Board of Directors and not in any other capacity, including as an advisor to LBF or the LBF Liquidator, respectively, and (iv) all successors, assigns, heirs, and personal representatives of each Person referred to in this definition.  For the avoidance of doubt, LBF Released Parties does not include LBF's auditors or accountants.

"LBF Releasing Party" means LBF, on behalf of itself, its estate, its successors and assigns, and any Person claiming through or on behalf of LBF (including the LBF Liquidator).

"LBF Reserve Amount" means any amount required by the US Debtors' Plan, or an order of the Bankruptcy Court, to be reserved by the US Debtors on account of claims filed by LBF against such entities.

"LBF Swiss Proceeding" means the Swiss bankruptcy proceeding commenced with respect to LBF pursuant to the LBF Bankruptcy Order.

"LBHI" means Lehman Brothers Holdings Inc., one of the US Debtors.

"LBHI Joinder Parties" means 314 Commonwealth Ave., Inc.; LB Investment Mgmt Company Ltd., Lehman/SDI Inc.; Lehman Brothers P.A. LLC; LB Hercules Holdings (Neuberger Berman LLC); Woodlands Commercial Corporation; and LB I Group Inc.

"LBHI Parties" means the US Debtors and the LBHI Joinder Parties.

"LBHI Joinder Party Claims" means the Claims, if any, of the LBHI Joinder Parties set forth on Exhibit "C".

"LBHI Party Excluded Claims" means (i) the agreements, promises, settlements, representations and warranties set forth in the Agreement, (ii) the claim represented by the LBHI Reduced Claim, (iii) any Non-Party Claim, (iv) LBHI's claims against LBF based on warrants issued by LBF, (v) any right of subrogation referred to in sections 8.13 and 8.14 of the US Debtors' Plan, including for the avoidance of doubt the JPM Claim, provided, however, that in no event shall LBF be required or obligated to make distributions on account of the JPM Claim both to LBHI and JPMorgan Chase Bank N.A., (vi) any claims of Lehman Brothers Commodity Services Inc. and Lehman Commercial Paper Inc. allowed pursuant to Section 2.2(a), (vii) any claims of the LBHI Joinder Parties that are allowed pursuant to Section 2.3., and (viii) solely to the extent required for the purposes of Section 2.5(a) of this Agreement, any Claim based upon an Extended Lien Provision.

"LBHI Party Released Claims" means all claims, demands, rights, duties, remedies, judgments, executions, debts, damages, liabilities, causes of action, costs, expenses, and Claims, of every kind, nature, character and description whatsoever (other than the LBHI Party Excluded Claims), whether accrued or unaccrued, known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, certain or contingent, whether based on contract, federal, state, local, statutory or common law (including Swiss Law) or any other law, rule or regulation of any jurisdiction, or otherwise, that have been, could have been or might hereafter be asserted in any action, suit or proceeding, whether directly,

4

indirectly, representatively or in any other capacity, in law or in equity, by the LBHI Releasing Parties against any of the LBHI Released Parties arising out of or in any way related to any members of the former Lehman Brothers group (including, without limitation, the business activities, assets or liabilities thereof). The release of the LBHI Party Released Claims by the LBHI Party Releasing Parties shall be a waiver and relinquishment, to the fullest extent permitted by law, of all provisions, laws and rules limiting relinquishment of unknown or unsuspected claims, including the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and any and all provisions, rights and benefits of any similar statute or common law rule of any other jurisdiction. The term LBHI Party Released Claims shall specifically include, without limitation: (i) any administrative expense claim arising under Applicable Swiss Law or the Bankruptcy Code, (ii) any US Avoidance Action or Swiss Avoidance Action, (iii) any right of subrogation (other than those rights that are LBHI Party Excluded Claims and treated as provided in Section 2.2(c) herein), and (iv) any Claim based upon any Extended Lien Provision, except to the extent preserved solely for the purposes of Section 2.5(b) of this Agreement. The term LBHI Party Released Claims shall specifically not include the LBHI Party Excluded Claims.

"LBHI Reduced Claim" means an agreed, general unsecured and unprivileged claim of LBHI against LBF in an amount of CHF 9.548875 billion (corresponding to USD $8.75 billion converted to Swiss Francs at the Exchange Rate) and treated in the Kollokationsplan and LBF Swiss Proceeding as provided in this Agreement.

"LBHI Released Parties" means the following Persons: (i) LBF, (ii) the LBF Liquidator, (iii) FINMA, (iv) all past and present employees, professionals and advisors of FINMA, LBF and the LBF Liquidator, respectively, and (v) all successors, assigns, heirs, and personal representatives, and all past and present officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, of each Person referred to in this definition.

"LBHI Releasing Parties" means the LBHI Parties, their estates, their successors and assigns, and any entity claiming through or on behalf of such entities.

"Lehman Global Protocol" means that certain Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies dated May 12, 2009.

"Non-Party Claim" means any Claim of a Party against an Other Non-Party, including without limitation any such Claim arising from the guaranty by a Party of an obligation of any entity or from the guaranty of an obligation of a Party.

"Other Non-Party" means any person, entity or other organization which is not a party to this Agreement.

"Plan Administrator" shall have the meaning ascribed to it in the US Debtors' Plan.

"PwC (Zurich)" means PricewaterhouseCoopers AG, Zurich.

"Retained Affiliate Claims" means claims of LBF against Affiliates of LBHI that are not LBF Released Claims or Assigned Affiliate Claims, including claims of LBF against Lehman Brothers International (Europe).

"Rule 9019 Order" means the order entered by the Bankruptcy Court in the Chapter 11 Cases and the LBF Chapter 15 Proceeding approving this Agreement.

"Settlement Interest Amount" means a minimum of CHF 6 billion.

"Swiss Avoidance Actions" means all avoidance actions and causes of action which may be brought by LBF against any LBF Released Party pursuant to Applicable Swiss Law, including but not limited to the provisions of Art. 285 et seq. of the Swiss Federal Law on Debt Enforcement and Bankruptcy.

"Swiss Court Order" means the entry by a Swiss court of competent jurisdiction of any final, non-appealable decision.

"Tax" means any tax, levy, impost, duty or other charge or withholding of a similar nature, including any related penalty or interest.

"Third Class Claim" means a third class claim according to Article 219 of the Swiss Federal Law on Debt Enforcement and Bankruptcy.

"Third Party Creditors" means all creditors of LBF (other than the US Debtors but including Lehman Brothers Commodity Services, Inc., and Lehman Commercial Paper, Inc.) whose claims have been admitted as Third Class Claims in the Kollokationsplan.

"Third Party Affiliate Creditors" means all Third Party Creditors (including Lehman Brothers Commodity Services, Inc. and Lehman Commercial Paper, Inc.) who are Affiliates of the US Debtors.

"Third Party Non-Affiliate Creditors" means all Third Party Creditors other than Third Party Affiliate Creditors.

"Tolling Agreement" means that certain Amended Tolling Agreement, dated as of September 14, 2012, between LBF and LBHI.

"US Avoidance Action" means (i) any and all actions under US Bankruptcy Law seeking the avoidance of a transfer or obligation, including Sections 542-553 of the US Bankruptcy Code; and (ii) similar actions under other applicable law.

"US Debtors' Claims" mean the Claims that have been submitted in the LBF Swiss Proceeding by the US Debtors against LBF.

"US Debtors" means LBHI; LB 745 LLC; PAMI Statler Arms LLC; Lehman Brothers Commodity Services Inc.; Lehman Brothers Special Financing Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l.; BNC Mortgage LLC; Structured Asset Securities

6

Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; and
LB Preferred Somerset LLC.

"US Debtors' Plan" means that certain chapter 11 plan of reorganization for the US
Debtors confirmed by the Bankruptcy Court by confirmation order, dated December 6, 2011.

## 2. *Settlement of Claims*.

### 2.1. *Effectiveness*.

2.1.(a)    Sections and subsections of 2.1, 2.2(b), 3.1, 4.2, 5.1, 5.2, 5.3, 6, 7, 8, 9, 11, 12, 13, 15,
16, 17, 18, 19, 20, 21, 22, 23, and 25 of this Agreement shall be effective on the Execution Date.

2.1.(b)    Sections 3.2(d) and 3.2(e) of this Agreement shall be effective on the later of the
Execution Date, the date upon which the Rule 9019 Order is entered, and the satisfaction of the Creditors'
Committee Approval Condition.

2.1.(c)    All other provisions of this Agreement shall be effective on the Effective Date.

### 2.2. *The LBHI Reduced Claim*.

2.2.(a)    *The LBHI Reduced Claim Amount*.  In full and complete satisfaction and settlement of
all of the LBHI Party Released Claims, the claims filed by LBHI in the LBF Swiss Proceeding shall be
amended and recognized as a Third Class Claim against LBF in the amount of the LBHI Reduced Claim,
which LBHI Reduced Claim shall be treated as provided in this Agreement. Upon the Effective Date,
LBHI irrevocably withdraws and finally waives any and all further claims it may have or assert against
LBF. The LBHI Reduced Claim will not be subject to any set-off.  The other LBHI Parties irrevocably
withdraw and finally waive any and all claims that any of them may have or assert against LBF, including
any claims against LBF that might have arisen or might arise in relationship with any security interests
granted by any of them for claims by other creditors against LBF, provided, however, the claims of
Lehman Brothers Commodity Services Inc. and Lehman Commercial Paper Inc. shall be allowed in the
schedule of claims as Third Party Claims of Third Party Affiliate Creditors in the amount of USD
$1,322,569.61 (CHF 1'443'320.22) and USD $232,478.78 (CHF 253'704.09), respectively, and the
claims of the LBHI Joinder Parties described in Section 2.3 below will be allowed as provided therein,
also as Third Party Claims of Third Party Affiliate Creditors.  In addition, (i) LBHI shall cause Aurora
Bank to provide a waiver with respect to any potential extended lien consistent with the waiver of
extended liens provided by the LBHI Joinder Parties in this Agreement, and (ii) upon written request by
LBF, 314 Commonwealth Ave., Inc. shall withdraw from the appeal in the extended liens proceedings
pending in the U.K., if right to appeal is either still pending or has been granted.

2.2.(b)    *Settlement Interest Amount*.  If LBF makes an Assignment Offer, no such assignment
will be made to any Person who does not deposit the Settlement Interest Amount.

2.2.(c)    *Subrogation Claim Pursuant to Plan §§ 8.13 and 8.14*.  LBHI retains the right to be
subrogated to the rights of any creditor of LBF to the extent that such creditor of LBF receives
distributions from LBHI on account of a guarantee claim against LBHI that, combined with the
distributions or other consideration provided in respect of the corresponding claim against LBF, exceeds
the full amount of the claim of such creditor admitted in the Kollokationsplan. For the avoidance of
doubt, the enforcement of any such subrogation claim of LBHI in the LBF Swiss Proceeding is subject to
Art. 216 para. 3 SchKG, and LBHI will therefore only be subrogated to the right of any creditor of LBF in

08-13555-mg    Doc 36300    Filed 04/02/13    Entered 04/02/13 17:20:57    Main Document
Pg 25 of 75    LBF/LBHI SETTLEMENT AGREEMENT
EXECUTION VERSION

the LBF Swiss Proceeding if the claim of such creditor admitted in the Kollokationsplan has been satisfied in full.

2.3.    *LBHI Joinder Party Claims.* The claims of the LBHI Joinder Parties will be allowed in the schedule of claims in the amounts set forth in Exhibit "C."

2.4.    *The Allowed LBF Claim.* In full and complete satisfaction and settlement of all of the LBF Claims, LBHI and the Plan Administrator will allow the LBF Allowed Claim. The LBF Allowed Claim will be finally allowed and entitled to receive distributions in accordance with the US Debtors' Plan; on the Effective Date, any cash held by LBHI due to distributions with respect to, or redemption of, the LBF Allowed Claim prior to the Effective Date shall be delivered to LBF. LBF agrees that all other LBF Claims shall be fully and finally disallowed and any LBF Reserve Amount related thereto shall be released.

2.5.    *Resolution of Asset Ownership Disputes.*

2.5.(a)    Save as provided in the following sentence, the LBHI Parties agree not to exercise (or cause the exercise of) liens or extended liens over assets of LBF, including liens or extended liens related to claims against LBF that the LBHI Parties own, have acquired or, in the future, acquire from Affiliates or any other Person. To the extent that any lien or extended lien granted by LBF is held to be enforceable and is either enforced by Affiliates of LBF other than the LBHI Parties or is mandatorily enforced in respect of LBF Affiliates, the LBHI Parties will, at LBF's option, exercise their rights in respect thereof in the full amount of the LBHI Reduced Claim and assign to LBF the value realized from the extended lien claims that they hold with respect to LBF assets, provided that such realization of value will not reduce the distributions otherwise payable with respect to the LBHI Reduced Claim.

2.5.(b)    Save as provided in the following sentence, LBF agrees not to exercise (or cause the exercise of) liens or extended liens over assets of the LBHI Parties, including liens or extended liens related to claims against the LBHI Parties that LBF owns, has acquired or, in the future, acquires from Affiliates or any other Person. To the extent that any lien or extended lien granted by the LBHI Parties is held to be enforceable and is either enforced by Affiliates other than LBF or is mandatorily enforced in respect of Affiliates, LBF will, at the relevant LBHI Party's option, exercise its rights in respect thereof in the full amount of the relevant claims and assign to the relevant LBHI Party the value realized from the extended lien claims that it holds with respect to LBHI Party assets, provided that such realization of value will have no effect on recoveries with respect to the relevant claim.

2.6.    *LBF Third Party Creditor Priority Distribution.* LBHI waives its rights to a *pro rata* distribution on account of the LBHI Reduced Claim in favour of Third Party Creditors in line with the following (*Vertrag zugunsten Dritter*). LBF will implement an agreed waterfall in LBF's liquidation which shall provide:

2.6.(a)    A priority recovery on account of all allowed claims of Third Party Non-Affiliate Creditors of USD $1.275 billion converted to Swiss Francs at the Exchange Rate, provided, however, that no such creditor shall receive a priority recovery of more than 50% of its claim allowed in the Kollokationsplan in its final and binding form (i.e., following the resolution of any objections against the Kollokationsplan) (the "Third Party Non-Affiliate Priority Amount");

2.6.(b)    A priority, and *pari passu*, recovery on account of all allowed claims of Third Party Affiliate Creditors, as such claims are listed on the Kollokationsplan in its final and binding form (i.e., following the resolution of any objections against the Kollokationsplan), equal, on a percentage basis, to

the priority recovery, on a percentage basis, of Third Party Non-Affiliate Creditors (the "Third Party Affiliate Priority Amount"); and

2.6.(c)    Thereafter, a *pro rata* distribution to all Third Party Creditors and LBHI as the holder of the LBHI Reduced Claim.

3.    ***Agreements Regarding Affiliate Claims***.

3.1.    *Non-Assigned Affiliate Claims.*  If and when requested by LBF, LBHI undertakes to assist LBF in the enforcement of the Retained Affiliate Claims. LBHI/LAMCO will assist LBF at its own expense and subject to that certain confidentiality agreement, dated July 23, 2012, by and among LBF, LAMCO and LBHI.

3.2.    *Assigned Affiliate Claims.*  Subject to the provisions of this Agreement, including without limitation the provisions of Section 3.2(h) below, LBF shall assign to LBHI the Assigned Affiliate Claims set forth on Exhibit A on the terms set forth herein:

3.2.(a)    As of the Effective Date, LBF shall assign the Assigned Affiliate Claims, LBF will, in accordance with the laws applicable to the respective claim, assign to LBHI (or, at LBHI's option, to a direct, wholly owned subsidiary of LBHI or any other legal entity designated by LBHI) (i) an undivided interest in LBF's right, title, and interest in and to all of the accounts receivable from LBF Payors set forth on Exhibit A (the "LBF Accounts" and "LBF Payors," respectively) and, without duplication, (ii) an undivided interest in all of LBF's interest in and to the net claims held by LBF against the LBF Payors arising from the LBF Accounts (the "LBF Affiliate Claims" and, together with the LBF Accounts, the "Assigned Affiliate Claims"). The assignments will be executed no later than twenty (20) Business Days after the Execution Date and will be delivered to, and held in escrow by, counsel for LBF pending the occurrence of the Effective Date; if the Effective Date does not occur, such assignments shall be redelivered to LBF and cancelled.

3.2.(b)    *Form of Assignment.*  The Assigned Affiliate Claims shall be assigned by LBF to LBHI pursuant to that certain transfer and assignment document substantially in the form of Exhibit D attached hereto.

3.2.(c)    *Limitations on Assignment of Assigned Affiliate Claims.*  For the avoidance of doubt, proprietary claims, including claims of LBF based on securities issued or held by any of the Collapsed ITS 88 Account Positions are not part of or included in any Assigned Affiliate Claims. Residual ITS 88 Account Positions are part of and included in the Assigned Affiliate Claims (as agreed between LBF and the Affiliate entities).

3.2.(c)(i)    "Collapsed ITS 88 Account Positions" means all securities positions (same ISIN but long and short in different entities) that were agreed between the involved entities to be withdrawn from their claims against each other.

3.2.(c)(ii)    "Residual ITS 88 Account Positions" means all securities positions that were not agreed to be collapsed in the corresponding claims of the involved entities. These positions represent a correction to the intercompany account 1262 of the concerned entities (especially at LBSAL, LBACC, LBCCA).

3.2.(c)(iii)    "ITS 88 Account Positions" means all those securities, entitlements, interests and claims LBF may have against other LBHI Parties arising out of LBF's securities dealings with those

9

entities where such dealings are reflected in the Affiliate's books in the ITS 088 Account positions. ITS is a sub ledger to the general ledger of LBF.

3.2.(d)    *Access to Information.*    LBF will give LBHI/LAMCO access to all information regarding the Assigned Affiliate Claims. LBHI confirms (i) that, as to any Assigned Affiliate Claims that is settled (even if the settlement has not yet become final and unconditional) prior to the execution of this Agreement, it will not require access to any additional information from LBF nor require any further support from LBF, and (ii) that, following the assignment of any specific Assigned Affiliate Claim to LBF, LBHI will not require any further support from LBF with respect to such Assigned Affiliate Claim other than access to the claims related information; provided, however, that LBF will only provide access to existing claims valuations if LBHI confirms, in writing, that it will not rely on such valuations or hold LBF or the LBF Liquidator liable for such valuations. The parties agree that, to the extent further LBF support is required, this additional cooperation by LBF will be subject to such further terms and conditions as may be mutually agreed in writing by LBF and LBHI.

3.2.(e)    *Consent to Assignment.*    To the extent required by applicable law, the Parties will use their best efforts to obtain the consent or acknowledgment of the LBF Assignment from the LBF Payors, provided however, that LBF, after consultation with LBHI, will determine the manner and nature of any communication with an LBF Payor with respect to seeking such consent or acknowledgment, and the receipt of such acknowledgment shall not be a requirement of this Agreement or a condition precedent to the Effective Date, provided that LBF shall not be required to take any step which, in the reasonable opinion of the LBF Liquidator, might be prejudicial to the interests of LBF or its creditors generally.

3.2.(f)    *Representation and Warranties Regarding the Assigned Affiliate Claims.*    In connection with the LBF Assignment, LBF will make the following limited representations and warranties, in each case subject to LBF's best knowledge (i) it has legal title to the Assigned Affiliate Claims, (ii) the Assigned Affiliate Claims are, subject to potential extended liens, free and clear of any third party rights, and (iii) LBF has not transferred or assigned any rights with respect to the Assigned Affiliate Claims to any other person, save by virtue of potential extended liens. Except as specifically provided in the foregoing sentence, LBF will make no other representation or warranties whatsoever in connection with the LBF Assignment, including but not limited to representations or warranties regarding the amount, validity, allowance, timeliness, enforceability or collectability, of the Assigned Affiliate Claims. Any liability based on Article 171 of the Swiss Code of Obligations shall be explicitly excluded. LBHI will have no termination right should LBF breach any representation or warranty.

3.2.(g)    *Turnover of Proceeds.*    Subject to Section 3.2(h), to the extent LBF has collected proceeds from any Assigned Affiliate Claim prior to its assignment as provided herein, LBF will be required to turn over the proceeds of collection, *i.e.*, the net proceeds (under these circumstances, the "Net Proceeds"), on the later of the date of the assignment of such Assigned Affiliate Claim and seven (7) business days after receipt of such Net Proceeds. "Net Proceeds" means all amounts distributed and actually received by LBF from the relevant LBF Payor (without deduction of any expenses on account of collection, administration, or professionals' fees), less any direct setoff amounts from the counterparty, if any.

3.2.(h)    *Indemnity.*    Upon the assignment of the Assigned Affiliate Claims, LBHI hereby agrees to reimburse, save, defend, indemnify and hold harmless LBF and the LBF Liquidator, together with their respective employees, agents, representatives, successors and assigns (the "Indemnified Parties") from and against any and all losses, damages, liabilities, deficiencies, claims, interest, awards, judgments, penalties, costs and expenses asserted against, incurred, sustained or suffered by any of the Indemnified Parties as a result of, arising out of or relating to the claims of the various Lehman Brothers Hong Kong entities, or Reimbursable Expenses (the "*Indemnified Claims*"), except with respect to the

10

carve-outs related to the Lehman Hong Kong entities listed on Exhibit A, and provided that LBHI shall have the right to defend against such Indemnified Claims subject to customary protections in favour of the Indemnified Parties. The maximum amount of Indemnified Claims shall be an amount equal to the greater of (i) USD $125 million or (ii) the amount, not to exceed USD $250 million, that LBF would have to pay the Lehman Brothers Hong Kong entities on account of any allowed claims against LBF (the "*Maximum Indemnity Liability*"). "Reimbursable Expenses" means expenses incurred by LBF from and after the Effective Date in connection with resolution of Assigned Affiliate Claims; the categories of expenses for which reimbursement will be sought include (a) documented out of pocket third party expenses, including professional fees and consulting costs, (b) actual travel costs, (c) administrative and logistics costs, and (d) LBF Liquidator and LBF timekeeper costs, calculated on a per hour basis based on time sheets and then applicable rates provided however that no Reimbursable Expenses shall be payable unless LBHI requests in writing LBF's assistance with respect to any particular action relating to an Assigned Affiliate Claims. As collateral for the indemnity obligation set forth in this Section, LBHI hereby grants LBF a security interest in, and LBF shall be entitled to retain as collateral, and not transfer or assign to LBHI on the Effective Date, proceeds of Assigned Affiliate Claims received or held by LBF up to USD $125 million (the "*Proceeds Collateral*"); to the extent that the Proceeds Collateral, as of the Effective Date is less than $125 million, LBHI shall, on the Effective Date, transfer to LBF as collateral an amount of funds equal to the difference between USD $125 million and the Proceeds Collateral (the "*Additional LBHI Collateral Deposit*" and, together with the Proceeds Collateral, the "*Initial Indemnity Collateral*"). In addition to the Initial Indemnity Collateral, LBHI also hereby grants LBF a security interest in, and LBF shall be entitled to withhold, further distributions on the LBHI Reduced Claim in an amount equal to the difference between the Maximum Indemnity Liability and Initial Indemnity Collateral (the "*Subsequent LBHI Collateral*" and, together with the Indemnity Collateral, the "*Indemnity Collateral*"). The Indemnity Collateral will be available to satisfy LBHI's indemnity obligations set forth in this Section. The indemnity pursuant to this Section shall be released, and any portion of the Indemnity Collateral not required to satisfy such indemnity shall be returned to LBHI, upon the later of (i) the receipt by LBF of releases from the various Lehman Brothers Hong Kong entities, in form and substance reasonably satisfactory to LBF, and (ii) the approval of any settlement between LBF and the various Lehman Brothers Hong Kong entities by the Hong Kong Court. Interest, if any, earned by LBF on any portion of the Indemnity Collateral returned to LBHI, as provided above, shall be paid to LBHI at the time of such return; notwithstanding the foregoing, LBF shall be under no obligation to deposit the Indemnity Collateral in an interest bearing account.

4.    *Other Agreements*

4.1.    *Non-Objection to Kollokationsplan.* The LBHI Parties agree that they will not object to the amounts published with respect to any other creditor admitted to the Kollokationsplan (Art. 250 para. 2 of the Swiss Federal Law on Debt Enforcement and Bankruptcy) (*Vertrag zugunsten Dritter*). Should the Effective Date occur following the publication of the Kollokationsplan and should any of the LBHI Parties have objected to any amounts published with respect to any other creditor admitted to the Kollokationsplan, such objection shall unconditionally and irrevocably be withdrawn without undue delay upon the occurrence of the Effective Date; provided, however, that to the extent any creditor other than an LBHI Party is objecting to the LBHI Reduced Claim or does not waive any party compensation (*Parteientschädigung*), the US Debtors can maintain any such objection.

4.2.    *Rights of LBHI Parties With Respect to Certain Settlements.* The LBHI Parties agree that they will neither object to, nor otherwise challenge, any settlement agreements (whether then effective or not) between LBF and Affiliates of LBF that are entered into prior to the satisfaction of the Creditors' Committee Approval Condition and entry of the Rule 9019 Order, provided that LBF (i) will consult with LBHI with respect to any settlement, and (ii) will not take any action which would materially impair, compromise or otherwise diminish (x) the value of the Assigned Affiliate Claims (or the proceeds

thereof) to LBHI or (y) LBHI's ability to collect on the Assigned Affiliate Claims (or the proceeds thereof). Subsequent to satisfaction of the Conditions Precedent related to Creditors' Committee approval and entry of the Rule 9019 Order, (a) LBF will not settle any Assigned Affiliate Claims absent LBHI's consent, which approval shall not be unreasonably withheld, and (b) LBF will not take any action which would materially impair, compromise or otherwise diminish (x) LBF's ability to assign the Assigned Affiliate Claims to LBHI or (y) the amount or value of the Assigned Affiliate Claims.

4.3.    *Post-Assignment Net Settlements.*    Subsequent to assignment of the Assigned Affiliate Claims, LBHI agrees that any settlements that it reaches with Affiliates relative to such Assigned Affiliate Claims will be undertaken on a net basis as to eliminate any potential claims against LBF and will include an extended liens waiver in favour of LBF in form and substance reasonably satisfactory to LBF.

4.4.    *No Effect on Certain Claims.*    For the avoidance of doubt, any general unsecured and unprivileged claim held by any of the LBHI Parties or LBF, which claim has been purchased from another creditor and is therefore held by any of the LBHI Parties or LBF as assignee of another creditor, shall not be covered by this Agreement, and each party reserves its rights with respect thereto. Notwithstanding the foregoing, the provisions above related to Resolution of Asset Ownership Disputes shall apply to any claims acquired from another creditor that is an Affiliate of LBHI. Each of the LBHI Parties and LBF waive any (potential) recourse or other claims against each other that might have arisen or might arise in relation with any security interests (including cross Affiliate set off rights) granted by one party for claims by other creditors against the other party.

4.5.    *Cooperation Regarding Derivatives Valuation and Reconciliation Services.*    The parties agree that they will cooperate in such a way that enables LBHI to provide its derivatives valuation and reconciliation services to LBF in the most effective manner and at no cost to LBF, subject to the existing confidentiality agreement among the parties and provided that such exchange of information does not, in the opinion of the LBF Liquidator result in the breach of any duties of confidentiality by LBF, a conflict of interest for LBF or LBF acting in a way which is contrary to its creditors' interests generally. An integral aspect of this cooperation will be that the parties exchange all information that is relevant to the valuation and reconciliation of LBF's derivatives contracts that are covered by a guarantee of LBHI. LBHI in turn will provide LBF with a current list of creditors that have filed claims against LBHI under a guarantee issued by LBHI with respect to claims against LBF, including LBHI's valuations and settlements (if any) in respect thereof and LBF will provide LBHI with all relevant information relating to its derivatives portfolio to the extent that the respective creditors are included in LBHI's list of filed claims against LBHI under a guarantee issued by LBHI and LBHI does not intend to reject the relevant claim for alleged lack of a valid guarantee. LBHI will not be entitled to participate in the negotiations with the third parties unless requested to do so by LBF. No party will be required to comply with the assessment of the other party. LBHI will not charge anything to LBF for the cooperation. Similarly, LBF will not charge anything to LBHI for the cooperation. For the purposes of this paragraph, LBHI shall include LAMCO, its fully owned service company.

4.6.    *Resolution of Potential LBEF Claims against LBF on Account of the LBEF Warrants.*    LBHI shall use best efforts to cause LBEF to provide the waiver pursuant to Section 5.2(e).

4.7.    *Granite Finance Cooperation.*    Subject to existing contractual and legal obligations, Lehman Brothers Special Financing, Inc. shall, at no cost to LBF, cooperate with, and support, LBF regarding the defense of any claim which may be made against LBF by Granite Finance Limited and/or Lehman Brothers International (Europe) relating to certain assets of LBF which were purportedly provided as collateral for certain obligations of Lehman Brothers Special Financing, Inc., in relation to the series 2006-5 secured convertible notes linked to the Lehman Brothers Euro Aggregate 1-7 Year Mirror Swap Index due 2011 issued by Granite Finance Limited on or about February 9, 2006 pursuant to its US$

12

5,000,000,000 Programme for the issue of Limited Recourse Obligations. Such cooperation and support shall include the provision of documents, information and other evidence as to the underlying transaction upon request from LBF.

5.    *Implementation and Conditions Precedent.*

5.1.    *Implementation.*  The Parties shall, in good faith, seek to implement the Agreement by taking all necessary steps to satisfy the Conditions Precedent to the Effective Date including, but not limited to, as soon as practicable after the Execution Date, LBHI and LBF will file motions in the Chapter 11 Cases and the LBF Chapter 15 Proceeding seeking entry of the Rule 9019 Order and LBF will submit this Agreement for approval of the Creditors' Committee and, within ten (10) Business Days after the later of (i) the Rule 9019 Order and (ii) satisfaction of the Creditors' Committee Approval Condition, publish the realization plan with regard to this Agreement and the Assignment Offer;

5.2.    *Conditions Precedent.*  The following shall each be conditions precedent (the "Conditions Precedent") to the Effective Date:

5.2.(a)    The Creditors' Committee shall either have passed a resolution approving LBF's entry into a settlement with LBHI substantially in accordance with the terms and conditions of this Agreement or the Creditor's Committee shall not have otherwise resolved to reject the Agreement (the "Creditors' Committee Approval Condition").

5.2.(b)    The LBF Liquidator shall have published the realization plan with regard to this Agreement;

5.2.(c)    The Rule 9019 Order (in both the Chapter 11 Cases and the LBF Chapter 15 Proceeding) shall have been entered by the Bankruptcy Court;

5.2.(d)    Upon publication of the realization plan with regard to this Agreement, either no creditor of LBF shall, in due time (i.e. the time period specified by the LBF Liquidator upon publication of the realization plan) and form, have requested an order from FINMA, or if such an order is requested in due time and form, (1) FINMA issues a final and enforceable order that does not disapprove in substance the Agreement, or its execution by the LBF Liquidator (the "FINMA Settlement Order") and the FINMA Settlement Order is not substantially altered, or modified by FINMA itself (*Wiedererwägung*) prior to the Effective Date, or (2) a competent Swiss court issues a Swiss Court Order that does not declare invalid, or set aside in total or in part the FINMA Settlement Order and that thereby does not disapprove in substance the Agreement, or its execution by the LBF Liquidator;

5.2.(e)    LBF receives (i) a valid and binding written waiver, in form and substance satisfactory to LBF, by Lehman Brothers Equity Finance S.A. (en faillite) (LBEF) pursuant to which LBEF waives any and all claims against LBF on account of the LBEF warrants and (ii) a valid and binding waiver of extended liens, in form and substance satisfactory to LBF, from Aurora Bank consistent with the waiver of extended liens provided by the LBHI Joinder Parties in this Agreement;

5.2.(f)    Upon publication of the Assignment Offer, no creditor of LBF shall have requested either the assignment of the right to pursue or the right to object a claim pursuant to the Assignment Offer within the period determined by the LBF Liquidator and in the prescribed form for filing such a request including the deposit of the Settlement Interest Amount; and

5.2.(g)    LBF shall have received the Indemnity Collateral.

13

5.3.    Kollokationsplan.

5.3.(a)    LBF agrees to publish the Kollokationsplan as soon as practicable. The Parties acknowledge and agree that LBF shall not include a decision on the US Debtor claims in its Kollokationsplan during the period between the execution of this Agreement and the Effective Date (suspension/ *Aussetzung*).

5.3.(b)    Distributions relative to the Kollokationsplan shall be implemented as follows:

5.3.(b)(i)    Cash to Third Party Non-Affiliate Creditors up to the Third Party Non-Affiliate Priority Amount and cash to Third Party Affiliate Creditors up to the Third Party Affiliate Priority Amount; and, thereafter,

5.3.(b)(ii)    A *pro rata* distribution of Cash to Third Party Non-Affiliate Creditors, Third Party Affiliate Creditors, and LBHI on account of the LBHI Reduced Claim.

6.    ***LBF Representations, Warranties and Covenants.***    In order to induce the LBHI Parties to enter into and perform their obligations under this Agreement, LBF hereby represents, warrants, acknowledges and covenants as follows:

6.1.    *Authority*.    Through its duly appointed liquidator, the LBF Liquidator, and subject to the occurrence of the Effective Date, LBF has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance of this Agreement by LBF and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of LBF and no other proceedings on the part of LBF is necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

6.2.    *LBF Creditors' Committee Approval/Rule 9019 Order*.    As soon as practicable after execution of this Agreement, LBF, acting through the LBF Liquidator, shall submit the Agreement for approval by the Creditors' Committee and seek entry of the Rule 9019 Order in the LBF Chapter 15 Proceeding.

6.3.    *Validity*.    Through its duly appointed liquidator, the LBF Liquidator, and subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by LBF and constitutes the legal, valid and binding agreement of LBF, enforceable against LBF in accordance with its terms.

6.4.    *Authorization of Governmental Authorities and Creditors*.    Subject to the occurrence of the Effective Date, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by LBF and/or the LBF Liquidator, pursuant to this Agreement, other than as provided herein.

6.5.    *No Reliance*.    LBF acting through the LBF Liquidator (i) is a sophisticated party with respect to the subject matter of this Settlement Agreement, (ii) has been represented and advised by legal counsel in connection with this Settlement Agreement, (iii) has adequate information concerning the matters that are the subject of this Settlement Agreement, (iv) acknowledges that it has entered into this Settlement Agreement voluntarily and of its own choice and not under coercion or duress; and (v) has independently and without reliance upon the LBHI Parties or any of their officers, employees, agents, counsels or other

14

representatives thereof, and based on such information as the LBF Liquidator and LBF has deemed appropriate, made its own analysis and decision to enter into this Settlement Agreement, provided, that each of the LBF Liquidators and LBF has relied upon the express representations, warranties and covenants of the LBHI Parties in this Settlement Agreement.

6.6.    *Title; No Prior Transfer of Claims.*

6.6.(a)    As of the Execution Date, subject to competing claims and any set-off rights, liens or extended liens in favour of an Affiliate  or any sub-custodian and/or clearing system through which the LBF Allowed Claims may be held, LBF owns and has good title to its respective LBF Allowed Claims, free and clear of any and all liens, security interests, participations or encumbrances created or incurred by or against LBF and has not transferred or assigned to any other person any of the LBF Allowed Claims that are the subject of this Settlement Agreement, in whole or in part.

6.6.(b)    After the Effective Date, LBF may transfer any LBF Allowed Claim, or any rights or interests arising thereunder, in whole or in part, to one or more transferees; provided, that any transferee of such LBF Allowed Claims agrees in writing that the terms of this Settlement Agreement shall be binding in all respects upon, and shall govern its acts and those of any successor transferees. This subsection shall constitute consent by the LBHI Parties to any transfer or assignment of the LBF Allowed Claims, in whole or in part that complies with this subsection.

6.7.    *Tolling Agreement.*  LBF shall not terminate the Tolling Agreement while this Agreement remains in force and effect.

6.8.    *LBF Reserves.*  Prior to the Effective Date, pursuant to Applicable Swiss Law, the LBF Liquidator may not make any distributions to Third Party Creditors unless the LBF Liquidator retains sufficient funds, as determined by the LBF Liquidator, to reserve for any and all dividends payable to the LBHI Parties on the full amount of the LBHI Reduced Claims and LBHI Joinder Party Claims.

7.    ***LBHI Parties' Representations, Warranties and Covenants***.  In order to induce LBF to enter into and perform its obligations under this Agreement, each LBHI Party hereby represents, warrants, acknowledges and covenants as follows:

7.1.    *Authority.*  Subject to the occurrence of the Effective Date, (i) each LBHI Party has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such LBHI Party of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such LBHI Party and no other proceedings on the part of such LBHI Party are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.  No LBHI Joinder Party is or has ever been a debtor under chapter 11 of the Bankruptcy Code.

7.2.    *Validity.*  This Agreement has been duly executed and delivered by each LBHI Party and constitutes the legal, valid and binding agreement of each LBHI Party, enforceable against each LBHI Party in accordance with its terms.

7.3.    *Rule 9019 Order.*  As soon as practicable after execution of this Agreement, the US Debtors shall seek entry of the Rule 9019 Order in the Chapter 11 Cases.

7.4.    *Authorization of Governmental Authorities.*  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in

connection with, the valid and lawful authorization, execution, delivery and performance by each US Debtor and US Non-Debtor.

7.5.    *No Reliance.* Each LBHI Party (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon LBF and based on such information as such LBHI Party has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such LBHI Party has relied upon LBF's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

7.6.    *Title; No Transfer of Claims.*

7.6.(a)    As of the Execution Date, subject to competing claims and any set-off rights, liens or extended liens in favour of an Affiliate, each LBHI Party owns and has good title to its respective Claims, free and clear of any and all liens, security interests, participations or encumbrances created or incurred by or against such LBHI Party, and has not transferred or assigned to any other person any of the claims that are the subject of this Agreement, in whole or in part.

7.6.(b)    After the Effective Date, each LBHI Party may transfer any of its Claims, or any rights or interests arising thereunder, in whole or in part; provided, however, that any transferee of such Claims agrees in writing that the terms of this Agreement shall be binding in all respects upon, and shall govern its acts and those of any successor transferees.

7.7.    *Reserve Amount.* Pending the Effective Date, and without prejudice to the right of LBF to seek the allowance of claims in excess of the following reserve amounts, the US Debtors, consistent with the US Debtors' Plan and the Bankruptcy Court order entered with respect to a reserve for the LBF claim, will maintain a reserve in favour of LBF (a) for a $3 billion LBF claim against LBHI and (b) for an LBF claim against Lehman Brothers Special Financing Inc. ("LBSF") in the full amount indicated in the LBF claim filed against LBSF.

7.8.    *Tolling Agreement.* The US Debtors shall not terminate the Tolling Agreement while this Agreement remains in force and effect.

8.    ***Surviving Contracts.*** The contracts and any non-binding agreements listed in Exhibit E attached hereto shall continue after the Effective Date. All other pre-petition contracts between the US Debtors [and LBHI Joinder Parties] and LBF that are not included on Exhibit D shall be cancelled and terminated effective as of the Effective Date, and any claims arising therefrom shall be satisfied in full by the consideration provided pursuant to this Agreement.

9.    ***Cooperation.*** The Parties will continue to exchange data relating to the respective bankruptcy cases and insolvency proceedings pursuant to and subject to the terms of the Lehman Global Protocol in order to assist each other in resolving claims of Affiliates and other creditors provided that such exchange of information does not, in the opinion of the LBF Liquidator, result in the breach of any duties of confidentiality by LBF, give rise to a conflict of interest for LBF or result in LBF acting in a way which is contrary to its creditors' interests generally.

10.    *Releases*.

10.1.    *LBHI Parties' Release of LBF.*  Upon the occurrence of the Effective Date, the LBHI Releasing Parties shall release the LBHI Released Parties from all LBHI Party Released Claims.  Such release shall occur automatically under the provisions of this Agreement without the need for the execution of a separate release.

10.2.    *LBF Release of the LBHI Parties.*  Upon the occurrence of the Effective Date, the LBF Releasing Parties shall release the LBF Released Parties from all LBF Released Claims.  Such release shall occur automatically under the provisions of this Agreement without the need for the execution of a separate release.

10.3.    *No Release of Non-Party Claims.*  Nothing in this Agreement shall operate as a release or waiver of a Non-Party Claim.

11.    **Termination**.

11.1.    *Automatic Termination.*  This Agreement shall automatically terminate if the Bankruptcy Court refuses to enter the Rule 9019 Order with respect to any US Debtor or LBF or a creditor of LBF requests the assignment of the right to pursue or the right to object to claims offered pursuant to the LBF Assignment Offer in due time and form and provides a deposit of the Settlement Interest Amount as determined by the LBF Liquidator.

11.2.    *The Parties' Right to Terminate.*  LBF, on the one hand, or the LBHI Parties, acting collectively on the other hand and as represented by LBHI, shall each have the right at their election to terminate this Agreement by notice in writing to the other Party with immediate effect, prior to the Effective Date, upon the occurrence of any of the following events:

11.2.(a)    The Creditors' Committee Approval Condition is not satisfied within 50 days of the date of this Agreement; or

11.2.(b)    FINMA issues an order, whether final or not, substantially disapproving the terms of this Agreement, or its execution by the Liquidator prior to the Effective Date; or

11.2.(c)    A competent Swiss court issues a Swiss Court Order that declares invalid, or sets aside in total or in part the FINMA Settlement Order and thereby substantially disapproves the terms of this Agreement, or its execution by the LBF Liquidator,

11.3.    If the Rule 9019 Order with respect to any of the Chapter 11 cases or LBF's Chapter 15 case has not been entered within 60 days of the execution of the Agreement or such date no more than 30 days later as LBF and LBHI may mutually agree, LBF, on the one hand, or the LBHI Parties, acting collectively on the other hand and as represented by LBHI, may terminate this Agreement on twenty (20) days' prior notice to the other Party.

11.4.    If any of the conditions precedent in Section 5.2 (a) to (g) are not satisfied on or before September 30, 2013 or such later date as LBF and LBHI mutually agree in writing, LBF, on the one hand, or the LBHI Parties, acting collectively on the other hand and as represented by LBHI, may terminate this Agreement on twenty (20) days' prior notice to the other Party.

11.5. *The LBHI Parties' Right to Terminate.* The LBHI Parties, acting collectively and as represented by LBHI, shall have the right, at their election, to terminate this Agreement by written notice to LBF if, prior to the Effective Date:

11.5.(a)    There is a breach, in any material respect, of the representations, warranties and/or covenants of LBF hereunder, taken as a whole, and LBF shall fail to cure such breach within ten (10) days following written notice of such breach from the LBHI Parties as represented by LBHI; or

11.5.(b)    LBF does not seek approval of this Agreement by the Creditors Committee, or file a motion seeking entry of the Rule 9019 Order in the LBF Chapter 15 Proceeding, within 20 days of the Execution Date or such date no more than thirty days later as LBF and LBHI mutually agree; or

11.5.(c)    LBF terminates the Tolling Agreement.

11.6. *LBF's Right to Terminate.* LBF shall have the right, at its election, to terminate this Agreement by written notice to the LBHI Parties if:

11.6.(a)    There is a breach, in any material respect, of the representations, warranties and/or covenants of the LBHI Parties hereunder, taken as a whole, and the LBHI Parties shall fail to cure such breach within ten (10) days following written notice of such breach from LBF; or

11.6.(b)    The US Debtors do not file a motion seeking entry of the Rule 9019 Order in the Chapter 11 Cases within 20 days of the Execution Date or such date no more than thirty days later as LBF and LBHI mutually agree; or

11.6.(c)    The US Debtors terminate the Tolling Agreement.

11.7. *Effect of Termination.* In the event that this Agreement is terminated in accordance with its terms by either the US Debtors or LBF or automatically, then, except as provided in the final sentence of this paragraph, neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed (except as to this Section) and the Parties hereto shall be automatically relieved of any further obligations hereunder. Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other. Notwithstanding the foregoing, the following Sections shall survive the termination of this Agreement under this Section 11: Section 12 (Venue and Choice of Law); and Section 22 (No Personal Liability).

12.    *Venue and Choice of Law.*

12.1. *Venue.* To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the courts of Zurich 1, Switzerland, over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Swiss courts; provided that, any actions or proceedings arising out of disputes relating to the Rule 9019 Order or the allowance in the Chapter 11 Cases of LBF's claims against the US Debtors shall be brought in the Bankruptcy Court. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the

judgment or in any other manner provided by applicable law. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding in the court in the applicable jurisdiction set forth above and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in Section 13 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

12.2. *Choice of Law.* This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of Switzerland, without regard to conflict of laws principles to the extent such principles would apply a law other than that of Switzerland; provided, however, that any claims and disputes arising out of the allowance in the Chapter 11 Cases of LBF's claims against the US Debtors shall be governed by and construed in accordance with applicable U.S. bankruptcy law, except as otherwise provided in the underlying agreements.

13. *Notices.* All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

        To the LBHI Parties at:

        1271 Avenue of the Americas, 39th Floor
        New York, New York 10020
        U.S.A.
        Attn: John Suckow and Daniel J. Ehrmann
        Facsimile: (646) 834-0874
        Email:    jsuckow@alvarezandmarsal.com
                  dehrmann@alvarezandmarsal.com

        With a copy (which shall not constitute notice) to:

        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, New York 10153
        U.S.A.
        Attn: Alfredo Perez, Esq.
        Facsimile: (212) 310-8007
        Email: alfredo.perez@weil.com

<u>To LBF at:</u>

Lehman Brothers Finance AG in Liquidation
Stampfenbachstrasse 48
8021 Zurich
Switzerland
Attn: Christiana Suhr Brunner and Pascal Portmann
Facsimile: ++ 41 44 287 88 62
Email:    Christiana.suhr.brunner@ch.pwc.com
          Pascal.portmann@ch.pwc.com

With a copy (which shall not constitute notice) to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
47th Floor
New York, New York 10022
U.S.A.
Attn:  Michael A. Rosenthal, Esq.
Facsimile: (212) 351-6258
Email:  mrosenthal@gibsondunn.com

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

14.    *Expenses.*  Except as provided in Section 3.2(h), the fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, shall be paid by such Party.

15.    *No Admission of Liability.*  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims some or all of which are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

16.    *Entire Agreement.*  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof. The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

17.    *No Oral Modifications.*  This Agreement may not be modified or amended orally.  This Agreement may only be modified or amended in writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of the LBHI Parties must be provided in writing signed by LBF and the LBF Liquidator.  Any waiver of compliance with any term or provision of this Agreement on the part of LBF or PwC, as Liquidator, must be provided in writing signed by each LBHI Party.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

18.    **Construction.**  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

19.    **Binding Effect; Successor and Assigns.**  Any declaration or statement of PwC (Zurich), as LBF Liquidator, shall only be made in its capacity and function as Liquidator of LBF, and shall in no circumstance be construed as being a declaration or statement of PwC (Zurich) on its own and personal behalf.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; provided, however, that no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void ab initio.

20.    **Counterparts.**  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

21.    **Headings; Schedules and Exhibits.**  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to Sections, unless otherwise indicated, are references to Sections of this Agreement.  All Schedules and Exhibits to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.  Reference to any Schedule or Exhibit herein shall be to the Schedules and Exhibits attached hereto.

22.    **No Personal Liability.**  The Parties (and solely for the purposes of this Section 22, including the LBF Liquidator also acting on its own and personal behalf) accept and agree that this Agreement and all actions and measures contained herein do not give rise to any personal liability on the part of the LBF Liquidator, its partners and employees, and their representatives or other professional advisors, and to the extent any such personal liability existed, the Parties explicitly waive any and all potential rights and claims against them, their firm and its partners and employees, and their representatives and other professional advisors.  LBF further accepts and agrees that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, asset managers, representatives or professional advisors of any LBHI Party and to the extent any such personal liability existed, LBF explicitly waives any and all potential rights and claims against all of the aforementioned persons.  Any claim by a Party against LBF or the LBF Liquidator, arising under or relating to this Agreement shall only be satisfied out of the assets of the insolvency estate of LBF.  Any claim by a Party against any LBHI Party arising under or relating to this Agreement shall only be satisfied out of the assets of such LBHI Party.

23.    **Severability and Construction.**  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to the Parties.  Upon any determination that any term or other provision is invalid, illegal, or incapable of being enforced, each Party hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of this Agreement as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

24.    **Tax Agreements.**  The Parties agree that they will cooperate and take reasonable steps to (i) complete any procedural formalities and obtain the necessary authorizations to make distributions without

21

any deduction or withholding for or on account of a Tax, (ii) mitigate any required withholding for or on account of Tax as is permissible, (iii) provide each Party with reasonable notice of an intention to withhold for or on account of Tax on any distribution and (iv) assist the recipient of a distribution in reclaiming the amount withheld or deducted from the tax authority. The Parties also agree that any distributions on account of the LBF Allowed Claim, LBHI Reduced Claim, the Claims listed in Section 2.2(a) and Exhibit C shall be allocated for all purposes, including but not limited to US federal income tax and Swiss tax purposes, first to the principal portion any such Claim, and, only after the principal portion any of such Claim is satisfied in full, to any portion of such Claim comprising interest (but solely to the extent that interest is an allowable portion of such claims and receivables). The Parties shall cooperate with respect to all reasonable information requests from a Party relating to the Party's preparation and filing of tax returns or other tax filings and withholding determinations, and any tax proceedings. Nothing in this Section shall (i) require any Party to take any step that in its reasonable opinion would have material adverse consequences for it, (ii) affect any of the Party's substantive rights or benefits under this Agreement, or (iii) in any way obligate any Party for any Tax owed by another Party. Any expenses or costs, including (a) documented out of pocket third party expenses, including professional fees and consulting costs, (b) actual travel costs, (c) administrative and logistics costs, and (d) LBF Liquidator and LBF timekeeper costs, calculated on a per hour basis based on time sheets and then applicable rates, incurred by LBF or the LBF Liquidator to comply with the provisions of this Section shall be fully reimbursed by LBHI, and LBF shall be entitled to withhold from the amount of any distribution to LBHI any expenses or costs reimbursable hereunder.

*25.*    ***Waiver of Jury Trial.***    EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, each Party, by its duly authorized representative, has executed this Agreement as of the date first written above.

(Signatures on Following Page)

22

LBF/LBHI SETTLEMENT AGREEMENT
EXECUTION VERSION

**LBHI PARTIES (OTHER THAN WOODLANDS COMMERCIAL CORPORATION)**

By: _____
Name: Daniel Ehrmann
Title: Their Authorized Representative

**WOODLANDS COMMERCIAL CORPORATION**

By: _____
Name: Daniel Ehrmann
Title: Its Authorized Representative

**LEHMAN BROTHERS FINANCE AG,
A/K/A LEHMAN BROTHERS FINANCE SA,
by PricewaterhouseCoopers AG, Zurich, as
LBF Liquidator, and without
personal liability**

By: _____
Name: Christiana Suhr Brunner

By: _____
Name: Pascal Portmann

23

LBF/LBHI SETTLEMENT AGREEMENT
EXECUTION VERSION

**LBHI PARTIES (OTHER THAN WOODLANDS COMMERCIAL CORPORATION)**

By:_____
Name:  Daniel Ehrmann
Title: Their Authorized Representative

**WOODLANDS COMMERCIAL CORPORATION**

By:_____
Name: _____
Title: Its Authorized Representative

**LEHMAN BROTHERS FINANCE AG,
A/K/A LEHMAN BROTHERS FINANCE SA,
by PricewaterhouseCoopers AG, Zurich, as
LBF Liquidator, and without
personal liability**

By: _____
Name:  Christiana Suhr Brunner

By: _____
Name:  Pascal Portmann

23

## EXHIBIT A

## ASSIGNED AFFILIATE CLAIMS[1]

LEHMAN BROTHERS OTC DERIVATIVES, INC

LEHMAN BROTHERS COMMERCIAL CORPORATION

LEHMAN BROTHERS SPECIAL FINANCING, INC.

LEHMAN BROTHERS TREASURY BV

WOODLANDS COMMERCIAL CORPORATION

LEHMAN BROTHERS ASIA HOLDINGS LIMITED (in liquidation) (excluding any payments, claims and rights arising out of or related to GID **4035964** and **4035961** with a value of USD $5,758,995.76)

LEHMAN BROTHERS SECURITIES ASIA LIMITED (in liquidation) (excluding any payments, claims and rights arising out of or related to the proprietary assets listed on Attachment 1 (including, without limitation, estimated recovery amounts on Lehman Brothers issuances, proceeds and corporate action/derived assets))

LEHMAN BROTHERS COMMERCIAL CORPORATION ASIA LIMITED (in liquidation) -

LEHMAN BROTHERS ASIA CAPITAL COMPANY (in liquidation)

LEHMAN BROTHERS EQUITY FINANCE (LUXEMBOURG)

LEHMAN BROTHERS EQUITY FINANCE (CAYMAN)

LEHMAN BROTHERS SECURITIES NV

LEHMAN BROTHERS EUROPE LIMITED

LB BANKHAUS (excluding any claims relating to cash collateral deposited by third parties in favour of LBF)

LEHMAN BROTHERS INC. (excluding Berkshire Hathaway shares or cash equivalent)

---

[1]    The Assigned Affiliate Claims do not include any claims based on securities issued or held by any of these entities, and any such securities will not be assigned as Assigned Affiliate Claims.

Attachment 1 to Exhibit A
to LBF/LBHI Settlement Agreement
Excluded Securities and Related Claims[2]

| ISIN | Name | quantities 28.02.13 | USD 28.02.13 |
|------|------|--------------------:|-------------:|
| SG1U68934629 | KEPPEL CORP LTD SHR 0.00SGD | 23,100 | 217,332.69 |
| HK0101000591 | HANG LUNG PROPERTIESSHR HKD 1.00HKD | 31,452 | 121,881.82 |
| HK0023000190 | BANK OF EAST ASIA LTSHR HKD 2.50HKD | 10,192 | 41,664.38 |
| SG1R89002252 | CITY DEVELOPMENTS LTSHR SGD 0.00SGD | 78,885 | 712,209.38 |
| SG1L01001701 | DBS GROUP HOLDINGS LSHR SGD 0.00SGD | 22,392 | 273,474.88 |
| HK0011000095 | HANG SENG BANK LTD SHR HKD 5.00HKD | 6,520 | 105,436.59 |
| HK0004000045 | WHARF HOLDINGS LTD SHR HKD 1.00HKD | 42 | 367.22 |
| HK0013000119 | HUTCHISON WHAMPOA LTSHR HKD 0.25HKD | 2,704 | 29,133.95 |
| SG1J91001581 | SEMBCORP MARINE LTD SHR SGD 0.00SGD | 66,560 | 241,557.06 |
| BMG5321P1169 | K WAH INTERNATIONAL SHR HKD 0.10HKD | 5,528 | 3,172.30 |
| SG1R31002210 | KEPPEL LAND LTD SHR SGD 0.00SGD | 598,000 | 2,010,733.92 |
| HK0097000571 | HENDERSON INVESTMENTSSHR HKD 0.20HKD | 930 | 75.56 |
| HK0020000177 | WHEELOCK & CO LTD SHR HKD 0.50HKD | 2,621 | 14,314.19 |
| SG1J45001547 | KEPPEL TELECOMMUNICASHR 0.00SGD | 305 | 340.20 |
| SG1K66001688 | WING TAI HOLDINGS LTSHR SGD 0.00SGD | 3,000 | 4,704.17 |
| HK0270001396 | GUANGDONG INVESTMENTSSHR HKD 0.50HKD | 200,000 | 172,029.14 |
| KYG3307Z1090 | FAR EAST CONSORTIUM SHR HKD 0.10HKD | 3,318 | 1,086.82 |
| KYG525621408 | KINGBOARD CHEMICAL HSHR HKD 0.10HKD | 12,000 | 36,598.10 |
| CNE1000003R8 | MAANSHAN IRON & STEESHR CNY 1.00HKD | 1,957 | 585.50 |
| HK0014000126 | HYSAN DEVELOPMENT COSHR HKD 5.00HKD | 8,212 | 42,254.02 |
| HK0083000502 | SINO LAND CO SHR HKD 1.00HKD | 124,366 | 226,134.58 |
| HK0267001375 | CITIC PACIFIC LTD SHR HKD 0.40HKD | 41,375 | 63,600.49 |
| BMG2108M1929 | CHINESE ESTATES HOLDSHR HKD 0.10HKD | 5,140 | 7,874.55 |
| HK0688002218 | CHINA OVERSEAS LAND SHR HKD 0.10HKD | 367,916 | 1,117,341.13 |
| HK0308001558 | CHINA TRAVEL INTERNASHR HKD 0.10HKD | 284,000 | 59,696.95 |
| HK0123000694 | GUANGZHOU INVESTMENTSSHR HKD 0.10HKD | 732,422 | 253,129.27 |
| CNE1000004K1 | TSINGTAO BREWERY CO SHR CNY 1.00HKD | 1,992 | 12,471.67 |
| CNE1000004C8 | SINOPEC SHANGHAI PETSHR CNY 1.00HKD | 494 | 216.60 |
| HK0171000877 | SILVER GRANT INTERNASHR HKD 0.20HKD | 141 | 24.91 |
| HK0992009065 | LENOVO GROUP LTD SHR HKD 0.02HKD | 280,000 | 312,695.85 |
| CNE1000002S8 | CHINA SHIPPING DEVELSHR CNY 1.00HKD | 64,500 | 35,932.68 |
| BMG3122U1457 | ESPRIT HOLDINGS LTD SHR HKD 0.10HKD | 104,878 | 136,870.90 |
| CNE1000004G9 | TIANJIN CAPITAL ENVISHR CNY 1.00HKD | 90,000 | 35,398.80 |

---

[2]    Inclusion of a valuation as of February 28, 2013, is for information purposes only, and shall not effect or limit LBF's ownership or title to the securities listed, or the value that LBF is entitled to realize therefrom.  None of the securities listed in this Attachment, nor any payments, claims or rights arising out of or related thereto, will be assigned as Assigned Affiliate Claims

| | | | |
|---|---|---|---|
| CNE1000003C0 | HARBIN POWER EQUIPMESHR CNY 1.00HKD | 36,000 | 31,475.92 |
| BMG2442N1048 | COSCO PACIFIC LTD SHR HKD 0.10HKD | 36,371 | 58,253.64 |
| BMG4069C1486 | GREAT EAGLE HOLDINGSSHR HKD 0.50HKD | 1,366 | 5,425.60 |
| HK0034000254 | KOWLOON DEVELOPMENT SHR HKD 0.10HKD | 2,617 | 3,779.79 |
| BMG2109G1033 | CHINA GAS HOLDINGS LSHR HKD 0.01HKD | 350,000 | 340,769.88 |
| CNE100000379 | GUANGSHEN RAILWAY COSHR CNY 1.00HKD | 1,964 | 939.64 |
| HK2800008867 | TRACKER FUND OF HONG KONG ETF | 63,322 | 189,447.47 |
| BMG2098R1025 | CHEUNG KONG INFRASTRSHR HKD 1.00HKD | 20,000 | 131,149.66 |
| HK0066009694 | MTR CORP SHR HKD 1.00HKD | 89,300 | 368,508.61 |
| BMG8114W1082 | SHUI ON CONSTRUCTIONSHR HKD 1.00HKD | 645 | 781.87 |
| BMG6542T1190 | NOBLE GROUP LTD SHR HKD 0.25SGD | 108,182 | 103,617.58 |
| CNE1000004S4 | ZHEJIANG EXPRESSWAY SHR CNY 1.00HKD | 82,069 | 68,897.95 |
| HK0392044647 | BEIJING ENTERPRISES SHR HKD 0.10HKD | 9,500 | 72,648.14 |
| CNE1000003K3 | JIANGXI COPPER CO LTSHR CNY 1.00HKD | 8,000 | 19,168.22 |
| CNE1000003J5 | JIANGSU EXPRESSWAY CSHR CNY 1.00HKD | 98,465 | 99,550.66 |
| MYL6947OO005 | DIGI.COM BHD SHR MYR 0.10MYR | 521,000 | 770,465.65 |
| CNE1000006Z4 | HUANENG POWER INTERNSHR CNY 1.00HKD | 300,000 | 308,723.97 |
| CNE1000004Q8 | YANZHOU COAL MINING SHR CNY 1.00HKD | 76,200 | 118,115.16 |
| CNE1000003D8 | HUADIAN POWER INTERNSHR CNY 1.00HKD | 784,000 | 342,737.77 |
| KYG6493A1013 | NEW WORLD CHINA LANDSHR HKD 0.10HKD | 8,706 | 4,008.05 |
| HK0388045442 | HONG KONG EXCHANGES SHR HKD 1.00HKD | 16,500 | 296,827.65 |
| SG1J47889782 | HYFLUX LTD SHR SGD 0.00SGD | 6,000 | 6,813.77 |
| BMG6844T1146 | PACIFIC CENTURY PREMSHR HKD 0.10HKD | 5,462 | 2,246.93 |
| MYL5031OO009 | TIME DOTCOM BHD SHR MYR 1.00MYR | 28,580 | 35,328.48 |
| CNE1000001T8 | ALUMINUM CORP OF CHISHR CNY 1.00HKD | 117,645 | 50,823.49 |
| HK2388011192 | BOC HONG KONG HOLDINSHR HKD 5.00HKD | 916,127 | 3,089,395.97 |
| CNE1000002V2 | CHINA TELECOM CORP LSHR CNY 1.00HKD | 400,000 | 207,363.47 |
| SG1M77906915 | ASCENDAS REAL ESTATEREIT 0.00SGD | 5,000 | 10,386.36 |
| CNE1000002P4 | CHINA OILFIELD SERVISHR CNY 1.00HKD | 6,500 | 13,797.15 |
| BMG668971101 | NWS HOLDINGS LTD SHR HKD 1.00HKD | 2,470 | 4,701.42 |
| HK0008011667 | PCCW LTD SHR HKD 0.25HKD | 35,838 | 17,053.61 |
| CNE1000004M7 | WEIQIAO TEXTILE CO SHR CNY 1.00HKD | 88 | 45.85 |
| ID1000099104 | TELEKOMUNIKASI INDONSHR IDR 250.00IDR | 327,500 | 364,114.70 |
| KYG444031069 | HIDILI INDUSTRY INTESHR HKD 0.10HKD | 290,000 | 79,283.00 |
| CNE100000593 | PICC PROPERTY & CASUSHR CNY 1.00HKD | 350,900 | 504,097.75 |
| KYG532241042 | KWG PROPERTY HOLDINGSHR HKD 0.10HKD | 3,000 | 2,058.16 |
| HK2828013055 | HANG SENG INVESTMENT INDEX FUNDS SERIES - H-SHARE INDEX ETF ETF | 5,000 | 73,634.66 |
| HK3377040226 | SINO-OCEAN LAND HOLDSHR HKD 0.80HKD | 114,000 | 78,798.12 |
| CNE100000502 | ZIJIN MINING GROUP CSHR CNY 0.10HKD | 51,000 | 17,560.13 |
| CNE1000007G2 | XINJIANG XINXIN MINISHR CNY 0.25HKD | 15,000 | 3,365.79 |
| KYG210961051 | CHINA MENGNIU DAIRY SHR HKD 0.10HKD | 13,000 | 36,295.05 |
| CNE100000536 | CHINA SHIPPING CONTASHR CNY 1.00HKD | 1,047,000 | 310,542.27 |
| KYG5496K1242 | LI NING CO LTD SHR HKD 0.10HKD | 37,000 | 22,855.12 |

| | | | |
|---|---|---|---|
| BMG684371393 | PACIFIC BASIN SHIPPISHR USD 0.10HKD | 54,000 | 31,824.10 |
| CNE100000171 | SHANDONG WEIGAO GROUSHR CNY 0.10HKD | 48,000 | 44,629.57 |
| HK2380027329 | CHINA POWER INTERNATSHR HKD 1.00HKD | 2,000 | 644.79 |
| HK3808041546 | SINOTRUK HONG KONG LSHR HKD 0.10HKD | 18,000 | 12,395.38 |
| CNE1000004Y2 | ZTE CORP SHR CNY 1.00HKD | 640 | 1,092.73 |
| BMG210901242 | CHINA WATER AFFAIRS SHR HKD 0.01HKD | 58,000 | 18,698.82 |
| KYG365501041 | FOXCONN INTERNATIONASHR USD 0.04HKD | 2,804 | 1,182.42 |
| BMG857A31166 | SUNGREEN INTERNATIONSHR HKD 0.00HKD | 175,000 | 37,668.16 |
| HK2823028546 | ISHARES ASIA TRUST - ISHARES FTSE/XINHUA A50 CHINA TRACKER ETF | 131,433 | 193,560.50 |
| CNE100000437 | SHANGHAI ELECTRIC GRSHR CNY 1.00HKD | 4,000 | 1,624.86 |
| CNE1000002J7 | CHINA COSCO HOLDINGSSHR CNY 1.00HKD | 75,000 | 40,234.70 |
| BMG8403G1033 | SINOFERT HOLDINGS LTSHR HKD 0.10HKD | 91,000 | 22,531.43 |
| CNE1000002H1 | CHINA CONSTRUCTION BSHR CNY 1.00HKD | 148,000 | 122,148.43 |
| CNE100000312 | DONGFENG MOTOR GROUPSHR NPV HKD | 242,000 | 354,519.31 |
| CNE1000001H3 | LINGBAO GOLD CO LTD SHR CNY 0.20HKD | 10,000 | 3,855.83 |
| BMG653181005 | NINE DRAGONS PAPER HSHR HKD 0.10HKD | 100,000 | 95,170.55 |
| CNE1000002N9 | CHINA NATIONAL BUILDSHR HKD 1.00HKD | 16,000 | 24,429.69 |
| CNE1000003F3 | HUNAN NON-FERROUS MESHR CNY 1.00HKD | 1,199,600 | 400,665.94 |
| CNE100000445 | SHANGHAI PRIME MACHISHR CNY 1.00HKD | 24,000 | 3,280.68 |
| CNE1000002Y6 | DALIAN PORT PDA CO LSHR CNY 1.00HKD | 38,000 | 9,163.71 |
| KYG693701156 | PARKSON RETAIL GROUPSHR HKD 0.02HKD | 2,500 | 1,624.86 |
| CNE1000001Z5 | BANK OF CHINA LTD SHR CNY 1.00HKD | 231,950 | 109,476.69 |
| KYG810431042 | SHIMAO PROPERTY HOLDSHR HKD 0.10HKD | 205,500 | 413,411.57 |
| KYG8350R1020 | SPG LAND HOLDINGS LTSHR HKD 0.10HKD | 2,050 | 785.16 |
| CNE1000002G3 | CHINA COMMUNICATIONSSHR CNY 1.00HKD | 1,964 | 1,228.37 |
| CNE1000002F5 | CHINA COMMUNICATIONSSHR CNY 1.00HKD | 783,000 | 741,146.43 |
| CNE1000004X4 | ZHUZHOU CSR TIMES ELSHR CNY 1.00HKD | 8,000 | 26,462.05 |
| KYG245241032 | COUNTRY GARDEN HOLDISHR HKD 0.10HKD | 29,375 | 15,076.73 |
| CNE1000001Q4 | CHINA CITIC BANK SHR CNY 1.00HKD | 790,000 | 507,344.12 |
| CNE100000114 | CHINA MOLYBDENUM CO SHR CNY 0.20HKD | 173,000 | 84,999.68 |
| HK0656038673 | FOSUN INTERNATIONAL SHR HKD 0.10HKD | 68,000 | 44,283.96 |
| SG1N31909426 | COMFORTDELGRO CORP LSHR SGD 0.00SGD | 174,200 | 270,339.48 |
| SG1U89935555 | MOBILEONE LTD SHR 0.00SGD | 1,257 | 2,844.81 |
| SG1S03926213 | MAPLETREE LOGISTICS REIT SGD 0.00SGD | 2,091,786 | 2,062,705.24 |
| SG1S04926220 | OVERSEA-CHINESE BANKSHR SGD 0.00SGD | 7,500 | 61,226.96 |
| SG1T56930848 | WILMAR INTERNATIONALSHR SGD 0.00SGD | 13,000 | 37,301.97 |
| BMG8648Q1069 | SYNEAR FOOD HOLDINGSSHR HKD 0.10SGD | 4,000 | 601.36 |
| SG1W63939514 | EPURE INTERNATIONAL SHR SGD 0.00SGD | 99,000 | 52,012.61 |
| SG1V52937132 | PARKWAY LIFE REAL ESREIT SGD 0.00SGD | 4,950 | 9,682.35 |
| HK0941009539 | CHINA MOBILE LTD SHR HKD 0.10HKD | 1,000 | 11,019.41 |
| CNE100000528 | CHINA COAL ENERGY COSHR CNY 1.00HKD | 536,672 | 532,208.10 |
| PH7182521093 | PHILIPPINE LONG DISTSHR PHP 5.00PHP | 2,490 | 178,819.48 |
| SG1T75931496 | SINGAPORE TELECOMMUNSHR SGD 0.00SGD | 800,660 | 2,226,212.74 |

| SG1S83002349 | UOL GROUP LTD SHR SGD 0.00SGD | 800 | 4,209.51 |
| HK0016000132 | SUN HUNG KAI PROPERTSHR HKD 0.50HKD | 7,000 | 108,324.20 |
| CNE100000Q35 | GAC GROUP | 355,519 | 296,170.32 |
| KYG4672G1064 | HUTCHTEL HK | 112,000 | 55,028.69 |
| BMG4288B1037 | HANKORE ENVIRONMENT TECHGROUP LIMITED | 85,000 | 3,641.29 |
| HK0000093390 | HKT-SS | 1,558 | 1,522.94 |
| ID1000122807 | PT ASTRA INTERNATIONAL TBK DEPOSITORY | 352,990 | 290,233.79 |
| SG2B76958422 | K-GREEN TRUST (2B76) | 4,200 | 3,717.26 |
| | | | **24,129,178.13** |

**Lehman Brothers Papers**

| Security Code | Name | USD LBHI admissible amounts | USD expected dividend on LBHI 22% |
|---|---|---|---|
| 14510 | LB-HSI@EP0903D | 12,575,180.30 | 2,766,539.67 |
| 14509 | LB-HSI@EP0903C | 10,203,578.25 | 2,244,787.22 |
| 14386 | LB-HSI@EP0901C | 6,584,823.73 | 1,448,661.22 |
| 14041 | LB-PETCH@EP0904 | 9,836,212.94 | 2,163,966.85 |
| 14040 | LB-CMOB@EP0904 | 14,372,597.25 | 3,161,971.40 |
| 14387 | LB-HSI@EP0901D | 8,184,916.34 | 1,800,681.59 |
| 14643 | LB-COVS@EC0903B | 215,976.77 | 47,514.89 |
| | | | **13,634,122.83** |

**Expected Dividends and Coupons**

| Periode | Comments | | USD |
|---|---|---|---|
| 15.09.08 - 28.02.13 | Assumption made by LBSAL according to their deposit information | | 6,869,921.56 |
| | | | **6,869,921.56** |

| | | | **44,633,222.52** |

## EXHIBIT B

## SCHEDULE OF LEHMAN PROGRAM SECURITIES[3]

| ISIN | Notional | Allowed Amount | Comments |
|---|---|---|---|
| ANN521331184 | 3,247 | $5,250,497 | |
| ANN5214A8063 | 200 | 2,326,169 | |
| CH0016059278 | 0 | 202,690 | Unit=XS0169022091: LBT note=XS0168796570 & LBF warrant=CH0016059278 |
| CH0016059864 | 0 | 3,583,077 | Unit=XS0169028700: LBT note=XS0168796653 & LBF warrant=CH0016059864 |
| CH0017601359 | 125 | 176,449 | |
| CH0027120606 | 725,000 | 646,731 | |
| CH0027120622 | 906,000 | 906,000 | |
| CH0027120630 | 230,000 | 230,000 | |
| CH0027120648 | 8,695,000 | 12,413,874 | |
| CH0027120655 | 7,994,000 | 7,152,629 | |
| CH0027120663 | 7,418,000 | 6,617,173 | |
| CH0027120671 | 500,000 | 446,021 | |
| CH0027120689 | 10,731,000 | 15,228,424 | |
| CH0027120697 | 4,420,000 | 6,272,448 | |
| CH0027120705 | 1,328,000 | 1,328,000 | |
| CH0027120713 | 200,000 | 200,000 | |
| CH0027120721 | 2,785,000 | 3,952,210 | |
| CH0027120739 | 3,000,000 | 4,257,317 | |
| CH0027120747 | 3,949,000 | 5,604,049 | |
| CH0027120754 | 2,805,000 | 3,980,592 | |
| CH0027120770 | 16,440 | 5,848,709 | |
| CH0027120796 | 1,328,000 | 1,184,633 | |
| CH0027120812 | 6,005,000 | 5,356,716 | |
| CH0027120820 | 150,000 | 212,866 | |
| CH0027120838 | 1,444,000 | 1,299,733 | |
| CH0027120846 | 4,463,000 | 6,446,196 | |
| CH0027120853 | 644 | 870,713 | |
| CH0027120861 | 798,000 | 711,850 | |
| CH0027120879 | 502,000 | 712,391 | |
| CH0027120903 | 3,427,000 | 4,863,275 | |

---

[3]    This list will be supplemented from time to time to include additional Lehman Paper claims acquired by LBF subsequent to execution of the Agreement, which claims would be accepted by LBHI at the applicable valuations, including but not limited to any claims related to that certain Lehman Paper listed below under LBT Hong Kong Notes.

| | | |
|---|---:|---:|
| CH0027120945 | 490,000 | 499,720 |
| CH0027120978 | 500,000 | 709,553 |
| CH0027120986 | 1,719,000 | 1,533,421 |
| CH0027120994 | 515,000 | 730,625 |
| CH0027121000 | 26,000 | 36,897 |
| CH0027121026 | 351,000 | 313,107 |
| CH0034783636 | 980,000 | 874,202 |
| CH0034783644 | 554,000 | 494,192 |
| CH0034783651 | 353,000 | 500,944 |
| CH0034783669 | 428,000 | 607,377 |
| CH0034783677 | 703,000 | 703,000 |
| CH0034783685 | 542,000 | 542,000 |
| CH0034783693 | 572,000 | 768,356 |
| CH0034783701 | 819,000 | 1,122,140 |
| CH0036891080 | 412,000 | 316,069 |
| CH0036891106 | 610,000 | 549,682 |
| CH0036891114 | 655,000 | 555,934 |
| CH0036891122 | 685,000 | 635,568 |
| CH0036891148 | 397,000 | 354,141 |
| CH0036891163 | 445,000 | 396,959 |
| CH0036891221 | 500,000 | 699,732 |
| CH0036891239 | 536,000 | 426,176 |
| CH0036891254 | 730,000 | 955,581 |
| CH0036891262 | 149,000 | 132,914 |
| CH0039308652 | 341,000 | 288,933 |
| CH0039308660 | 500,000 | 363,411 |
| CH0039308686 | 1,830,000 | 2,300,362 |
| CH0039308694 | 319,000 | 168,152 |
| CH0039308710 | 285,000 | 170,630 |
| CH0043088605 | 990,000 | 976,071 |
| CH0043088613 | 965,000 | 1,365,013 |
| CH0043088621 | 373,000 | 308,962 |
| CH0043088639 | 870,000 | 691,658 |
| CH0043088647 | 286,000 | 378,066 |
| CH0043088654 | 369,000 | 345,911 |
| DE000A0G0Y08 | 552,000 | 783,346 |
| DE000A0G4LS9 | 228 | 324,266 |
| DE000A0LHNW7 | 283 | 294,614 |
| DE000A0LHVD0 | 1,533 | 1,461,793 |
| DE000A0LJV62 | 190 | 176,870 |
| DE000A0MGS69 | 807 | 973,191 |
| DE000A0MHVV0 | 2,311 | 3,279,553 |
| DE000A0MHXQ6 | 1,065 | 1,342,108 |

| | | |
|---|---|---|
| DE000A0MJHE1 | 6,754 | 7,200,750 |
| DE000A0N1VM8 | 693,000 | 983,440 |
| DE000A0N6GH8 | 1,190 | 1,505,253 |
| DE000A0N7XQ2 | 3,221 | 4,222,010 |
| DE000A0N8MX9 | 409 | 463,326 |
| DE000A0NLYL5 | 3,863 | 3,265,273 |
| DE000A0NLZG2 | 892 | 1,044,107 |
| DE000A0NMGK2 | 189 | 173,080 |
| DE000A0NMJ46 | 328 | 386,356 |
| DE000A0NMXZ5 | 83 | 101,074 |
| DE000A0NPV47 | 1,072 | 1,205,064 |
| DE000A0NTKC6 | 73,000 | 103,595 |
| DE000A0NTS89 | 26,000 | 36,897 |
| DE000A0NTV01 | 1,093 | 1,350,837 |
| DE000A0NXKZ9 | 114 | 187,416 |
| DE000A0NZAV4 | 925 | 982,493 |
| DE000A0S1160 | 109 | 127,498 |
| DE000A0S2A33 | 279 | 463,400 |
| DE000A0S5NN9 | 196 | 208,037 |
| DE000A0S7D50 | 86 | 109,648 |
| DE000A0SG1J6 | 961 | 1,279,781 |
| DE000A0SG1R9 | 60 | 88,612 |
| DE000A0SHLW6 | 581 | 808,678 |
| DE000A0SHPH8 | 383 | 511,505 |
| DE000A0SUA81 | 181 | 131,377 |
| DE000A0SUEV6 | 388 | 472,003 |
| DE000A0SUT07 | 325 | 433,204 |
| DE000A0TLG93 | 166,000 | 235,572 |
| DE000A0TLKY4 | 604,000 | 857,140 |
| DE000A0TLL96 | 60,000 | 85,146 |
| DE000A0TN6J5 | 310,800 | 441,058 |
| DE000A0TPVQ8 | 160,500 | 160,500 |
| DE000A0TQG23 | 359,000 | 522,605 |
| DE000A0TR731 | 301,000 | 434,806 |
| DE000A0TR749 | 106,000 | 152,851 |
| DE000A0TT7X8 | 42,000 | 59,602 |
| DE000A0TV576 | 99,000 | 141,375 |
| DE000A0TVK20 | 552,200 | 783,346 |
| DE000A0TVPR6 | 54,000 | 77,425 |
| DE000A0TX6H7 | 4,000 | 5,676 |
| DE000A0V4E15 | 460 | 575,397 |
| DE000A0WDDE2 | 30,000 | 29,169 |
| FI0003025882 | 100,000 | 72,169 |

| | | | |
|---|---|---|---|
| NO0010387749 | 730,000 | 126,322 | |
| XS0137335468 | 40,000 | 40,000 | |
| XS0143892023 | 390,000 | 390,000 | |
| XS0144646386 | 120,000 | 120,000 | |
| XS0146656417 | 180,000 | 180,000 | |
| XS0159948784 | 20,000 | 20,000 | |
| XS0168796570 | 0 | 25,704,395 | Unit=XS0169022091: LBT note=XS0168796570 & LBF warrant=CH0016059278 |
| XS0168796653 | 0 | 59,787,878 | Unit=XS0169028700: LBT note=XS0168796653 & LBF warrant=CH0016059864 |
| XS0169022091 | 18,011 | 0 | Unit=XS0169022091: LBT note=XS0168796570 & LBF warrant=CH0016059278 |
| XS0169028700 | 44,861 | 0 | Unit=XS0169028700: LBT note=XS0168796653 & LBF warrant=CH0016059864 |
| XS0169124509 | 145,000 | 205,770 | |
| XS0172402421 | 900 | 900,000 | |
| XS0177644621 | 440,000 | 624,407 | |
| XS0180153826 | 497,000 | 481,511 | |
| XS0185247912 | 821,629 | 1,128,124 | |
| XS0185349916 | 100,000 | 161,493 | |
| XS0186243118 | 120,000 | 107,318 | |
| XS0186883798 | 522,000 | 522,000 | |
| XS0187189104 | 350,000 | 496,687 | |
| XS0187966949 | 115,000 | 116,394 | |
| XS0187967160 | 854,000 | 761,804 | |
| XS0188371024 | 7,850,000 | 8,827,013 | |
| XS0191748242 | 300,000 | 425,732 | |
| XS0192355302 | 222 | 222,000 | |
| XS0192518024 | 206,000 | 206,000 | |
| XS0192518370 | 210,000 | 210,000 | |
| XS0193532735 | 292,000 | 292,000 | |
| XS0195333520 | 201,000 | 201,000 | |
| XS0195333793 | 333,000 | 472,562 | |
| XS0195333876 | 758,000 | 758,000 | |
| XS0198737735 | 600,000 | 600,000 | |
| XS0199536029 | 50,000 | 70,955 | |
| XS0200265709 | 79,000 | 71,132 | |
| XS0200454188 | 250,000 | 250,000 | |
| XS0203783526 | 2,120,000 | 2,120,000 | |
| XS0204199466 | 570,000 | 570,000 | |
| XS0204199540 | 1,040,000 | 1,475,870 | |
| XS0204933997 | 17,000 | 17,311 | |
| XS0207361865 | 1,582 | 0 | Nothing outstanding per books and records |

32

| | | |
|---|---:|---:|
| XS0207884379 | 1,153,000 | 748,207 |
| XS0207897199 | 120,000 | 125,587 |
| XS0208333194 | 520,000 | 77,153 |
| XS0209026805 | 340,000 | 493,383 |
| XS0209198927 | 1,175,000 | 1,175,000 |
| XS0210326202 | 150,000 | 212,866 |
| XS0213519464 | 83,000 | 134,107 |
| XS0213629487 | 200,000 | 283,821 |
| XS0214408840 | 520,000 | 737,935 |
| XS0214633967 | 4,515,000 | 6,407,263 |
| XS0216280932 | 40,000 | 56,950 |
| XS0216591692 | 595,000 | 595,000 |
| XS0217939650 | 1,253,000 | 1,117,729 |
| XS0218961109 | 8,000 | 11,353 |
| XS0220326408 | 1,153,000 | 1,028,525 |
| XS0221394447 | 1,095 | 155,392 |
| XS0221419459 | 180,000 | 180,000 |
| XS0222198631 | 600,000 | 600,000 |
| XS0222698283 | 420,000 | 596,024 |
| XS0222780701 | 670,000 | 950,801 |
| XS0223590612 | 707,000 | 630,674 |
| XS0223700658 | 736,000 | 1,044,462 |
| XS0225841898 | 311,000 | 441,342 |
| XS0226787447 | 1,251,000 | 1,115,945 |
| XS0227570750 | 160,000 | 227,057 |
| XS0228149075 | 177,000 | 251,182 |
| XS0230607524 | 1,274,000 | 1,807,941 |
| XS0231102459 | 430,000 | 430,000 |
| XS0231181222 | 30,000 | 42,573 |
| XS0231346593 | 500 | 998 |
| XS0231442046 | 7,225 | 1,025,304 |
| XS0231644260 | 120 | 235,918 |
| XS0232035534 | 50,000 | 46,659 |
| XS0232035880 | 8,000 | 11,945 |
| XS0232037159 | 923,000 | 988,150 |
| XS0232659150 | 460,000 | 652,789 |
| XS0233810521 | 200,000 | 285,618 |
| XS0234123650 | 549,000 | 490,715 |
| XS0234421914 | 240,000 | 340,585 |
| XS0234626058 | 331,000 | 331,000 |
| XS0234626306 | 2,890,000 | 370,796 |
| XS0234632700 | 5,413 | 4,605,156 |
| XS0234972981 | 71,115 | 3,197,770 |

| | | |
|---|---:|---:|
| XS0235227302 | 571 | 761,460 |
| XS0235429437 | 190,000 | 269,630 |
| XS0236535679 | 160,000 | 227,057 |
| XS0237053623 | 1,470,000 | 1,470,000 |
| XS0237410831 | 1,230 | 174,550 |
| XS0237709208 | 212,000 | 300,850 |
| XS0238228901 | 94,000 | 133,396 |
| XS0238337439 | 50,000 | 70,955 |
| XS0238679079 | 13,691 | 6,206,770 |
| XS0238681307 | 67,921 | 3,734,023 |
| XS0240142827 | 17,000 | 24,125 |
| XS0240397496 | 2,570,000 | 329,739 |
| XS0240399435 | 866,000 | 866,000 |
| XS0241359180 | 60,000 | 60,000 |
| XS0241762748 | 1,000,000 | 1,000,000 |
| XS0241963726 | 50,000 | 70,955 |
| XS0242136413 | 5,000 | 4,460 |
| XS0242801958 | 700,000 | 993,374 |
| XS0243065421 | 95,000 | 134,815 |
| XS0244566336 | 150 | 141,663 |
| XS0245046114 | 730,000 | 730,000 |
| XS0245479810 | 1,100,000 | 1,100,000 |
| XS0246082043 | 329,000 | 472,596 |
| XS0246449440 | 200,000 | 200,000 |
| XS0246504210 | 860,000 | 1,379,980 |
| XS0247452799 | 1,450,000 | 1,450,000 |
| XS0247457087 | 2,285,000 | 3,242,657 |
| XS0247687162 | 190,000 | 279,993 |
| XS0248142894 | 35,000 | 41,790 |
| XS0248620899 | 765,000 | 682,413 |
| XS0249400044 | 100,000 | 100,000 |
| XS0249774711 | 1,000,000 | 58,778 |
| XS0250416582 | 500,000 | 500,000 |
| XS0250879763 | 2,632,000 | 2,632,000 |
| XS0251375233 | 10,000 | 7,673 |
| XS0251416367 | 1,370,000 | 1,370,000 |
| XS0251644232 | 1,000,000 | 1,419,106 |
| XS0251909478 | 11,067 | 3,223,002 |
| XS0251909635 | 51,859 | 2,775,555 |
| XS0251910997 | 205 | 290,917 |
| XS0252173066 | 288,000 | 408,702 |
| XS0252767792 | 1,885,000 | 1,885,000 |
| XS0252899512 | 200,000 | 283,821 |

| | | |
|---|---|---|
| XS0253634850 | 3,310,000 | 4,697,240 |
| XS0253635154 | 4,020,000 | 4,020,000 |
| XS0253837370 | 200,000 | 283,821 |
| XS0253852254 | 466 | 510,305 |
| XS0254780611 | 720,000 | 720,000 |
| XS0254853947 | 442,000 | 627,245 |
| XS0255599598 | 710,000 | 1,017,835 |
| XS0255689589 | 805 | 1,115,417 |
| XS0256233122 | 12,000 | 12,000 |
| XS0256259606 | 5,000,000 | 2,120,553 |
| XS0256368308 | 600,000 | 600,000 |
| XS0256934000 | 609,000 | 864,235 |
| XS0257101856 | 3,945 | 5,598,372 |
| XS0257807288 | 1,450,000 | 2,057,703 |
| XS0257807874 | 1,960,000 | 1,960,000 |
| XS0258411239 | 290 | 411,541 |
| XS0258782720 | 400,000 | 156,947 |
| XS0259010022 | 170,000 | 170,000 |
| XS0259295607 | 187 | 265,373 |
| XS0259672599 | 650,000 | 922,419 |
| XS0260341911 | 219,000 | 392,732 |
| XS0260445530 | 1,056 | 892,948 |
| XS0260769434 | 2,580,000 | 2,580,000 |
| XS0260770010 | 2,280,000 | 3,235,561 |
| XS0261032238 | 20,991 | 3,476,825 |
| XS0261613474 | 5,000,000 | 2,245,713 |
| XS0261749450 | 637 | 1,198,331 |
| XS0262163206 | 1,336,000 | 1,336,000 |
| XS0262353831 | 554,000 | 786,945 |
| XS0263244914 | 350,000 | 350,000 |
| XS0263715467 | 2,100,000 | 3,281,810 |
| XS0263871674 | 100,000 | 141,720 |
| XS0264130369 | 5,000,000 | 4,048,458 |
| XS0264209387 | 181,000 | 161,460 |
| XS0264674549 | 530,000 | 586,052 |
| XS0264966671 | 532,000 | 532,000 |
| XS0264994459 | 1,640,000 | 2,634,349 |
| XS0265627751 | 5,536 | 123,694 |
| XS0266165736 | 107,000 | 160,107 |
| XS0266486025 | 1,536,000 | 1,536,000 |
| XS0266544831 | 755,000 | 1,071,425 |
| XS0266559433 | 24,600,000 | 145,019 |
| XS0266912228 | 3,780,000 | 3,780,000 |

| | | |
|---|---:|---:|
| XS0267059755 | 974,000 | 1,382,209 |
| XS0267329307 | 1,153 | 785,030 |
| XS0267365442 | 341 | 483,915 |
| XS0267879475 | 225 | 319,299 |
| XS0268033908 | 402,000 | 570,481 |
| XS0268363289 | 675,000 | 286,275 |
| XS0268364410 | 2,640,000 | 1,119,652 |
| XS0268858502 | 3,604,000 | 5,114,457 |
| XS0268992145 | 40,000 | 40,000 |
| XS0269529136 | 1,490,000 | 1,329,144 |
| XS0269657135 | 581,000 | 824,500 |
| XS0269657994 | 1,061,000 | 1,505,671 |
| XS0269670401 | 200,000 | 25,246 |
| XS0269969027 | 996,000 | 1,432,554 |
| XS0270174013 | 3,285,000 | 3,387,519 |
| XS0270174872 | 509,000 | 722,325 |
| XS0270328858 | 3,600,000 | 3,498,520 |
| XS0270482424 | 438,000 | 621,568 |
| XS0270828584 | 347,000 | 287,352 |
| XS0270987547 | 1,091,000 | 1,215,217 |
| XS0271141565 | 350,000 | 160,762 |
| XS0271187634 | 200,000 | 200,000 |
| XS0271201484 | 526 | 757,434 |
| XS0271720673 | 38,000 | 53,926 |
| XS0271794363 | 350,000 | 51,930 |
| XS0271795840 | 250,000 | 37,093 |
| XS0271820978 | 200,000 | 283,821 |
| XS0271893694 | 109,000 | 159,784 |
| XS0272095216 | 13,041,000 | 16,923,099 |
| XS0272318709 | 194,000 | 275,307 |
| XS0272349332 | 500,000 | 312,693 |
| XS0272486753 | 557,000 | 616,972 |
| XS0272617100 | 80,000 | 143,464 |
| XS0272617951 | 377,000 | 377,000 |
| XS0272783530 | 1,339,000 | 1,763,112 |
| XS0272915116 | 500,000 | 471,847 |
| XS0273083096 | 400,000 | 367,333 |
| XS0273084656 | 346,000 | 388,189 |
| XS0273666437 | 450,000 | 638,598 |
| XS0274443422 | 96,000 | 136,234 |
| XS0274445120 | 493,000 | 439,777 |
| XS0274497279 | 100,000 | 89,326 |
| XS0275071230 | 12,400,000 | 11,061,329 |

| | | |
|---|---:|---:|
| XS0275721628 | 600,000 | 484,719 |
| XS0275726007 | 200,000 | 171,476 |
| XS0276072682 | 1,891,000 | 2,253,973 |
| XS0276147104 | 300,000 | 246,330 |
| XS0276437521 | 900,000 | 796,531 |
| XS0276441044 | 450,000 | 645,962 |
| XS0276444147 | 400,000 | 344,162 |
| XS0276600292 | 100,000 | 87,944 |
| XS0276619805 | 780,000 | 932,676 |
| XS0276859609 | 153 | 217,123 |
| XS0277121264 | 300,000 | 246,118 |
| XS0277185152 | 360,000 | 510,878 |
| XS0277722772 | 29,700,000 | 175,084 |
| XS0278266951 | 150,000 | 197,731 |
| XS0278449441 | 2,000,000 | 662,014 |
| XS0278450027 | 93,000 | 131,977 |
| XS0278755052 | 50,000 | 16,010 |
| XS0279202682 | 100,000 | 136,022 |
| XS0279493398 | 45,527 | 478,389 |
| XS0279675150 | 40,000 | 43,789 |
| XS0280223107 | 478,000 | 678,333 |
| XS0280904714 | 100,000 | 104,130 |
| XS0281520352 | 151,000 | 179,463 |
| XS0281980432 | 350,000 | 334,511 |
| XS0282034460 | 200,000 | 163,489 |
| XS0282208049 | 411,000 | 583,252 |
| XS0282208718 | 160,000 | 228,400 |
| XS0282452621 | 1,391,000 | 1,879,354 |
| XS0282763035 | 900,000 | 513,020 |
| XS0282764199 | 100,000 | 47,074 |
| XS0282866192 | 85,000 | 51,418 |
| XS0283189016 | 500,000 | 222,722 |
| XS0283319837 | 497 | 705,296 |
| XS0283820065 | 20,000 | 23,739 |
| XS0283914637 | 226,842 | 2,534,447 |
| XS0284114567 | 300,000 | 425,732 |
| XS0284313847 | 205,000 | 227,188 |
| XS0284490629 | 43 | 64,328 |
| XS0284511994 | 940,000 | 1,141,431 |
| XS0284611869 | 100,000 | 141,911 |
| XS0285422597 | 500,000 | 607,082 |
| XS0285759121 | 100,000 | 77,651 |
| XS0285769278 | 513,000 | 681,857 |

| | | | |
|---|---|---|---|
| XS0285922133 | 121,000 | 171,712 | |
| XS0285986534 | 10,000 | 14,191 | |
| XS0286018758 | 400,000 | 495,762 | |
| XS0286129159 | 100,000 | 141,911 | |
| XS0286179923 | 2,700,000 | 400,600 | |
| XS0286181077 | 1,250,000 | 185,463 | |
| XS0286302988 | 143,000 | 202,932 | |
| XS0286778476 | 600,000 | 452,881 | |
| XS0286897219 | 957,000 | 1,358,084 | |
| XS0286900708 | 1,416,000 | 1,263,132 | |
| XS0287119480 | 300,000 | 300,000 | |
| XS0287234313 | 120,000 | 160,098 | |
| XS0287235047 | 280,000 | 397,350 | |
| XS0287442692 | 558,000 | 519,170 | |
| XS0287567043 | 6,350,000 | 6,229,158 | |
| XS0287672694 | 232,000 | 115,349 | |
| XS0288035164 | 600,000 | 851,463 | |
| XS0288291593 | 45,000 | 80,698 | |
| XS0288341448 | 80,000 | 101,226 | |
| XS0288391971 | 250,000 | 354,776 | |
| XS0288569972 | 200,000 | 123,458 | |
| XS0288610016 | 100,000 | 61,856 | |
| XS0288702052 | 1,339,000 | 1,952,743 | |
| XS0288760761 | 300,000 | 344,893 | |
| XS0289701962 | 312,000 | 277,336 | |
| XS0289717968 | 20,000 | 28,382 | |
| XS0290694925 | 100,000 | 46,977 | |
| XS0292153672 | 526,000 | 526,000 | |
| XS0292248977 | 526,500 | 526,500 | |
| XS0292336673 | 50,000 | 42,404 | |
| XS0292528311 | 2,000,000 | 3,069,662 | |
| XS0292542494 | 9,500,000 | 8,583,281 | |
| XS0293572425 | 30,000 | 22,535 | |
| XS0293628748 | 330,000 | 308,382 | |
| XS0293677281 | 540,000 | 766,317 | |
| XS0293731914 | 1,500,000 | 11,666 | |
| XS0293784525 | 36,700,000 | 0 | FMV note floored at $0 |
| XS0293784871 | 1,000,000 | 2,541,618 | |
| XS0294024004 | 1,500,000 | 1,338,064 | |
| XS0294244032 | 7,000,000 | 2,904,165 | |
| XS0294484422 | 546,000 | 546,000 | |
| XS0294545156 | 500,000 | 525,922 | |
| XS0294545669 | 700,000 | 700,000 | |

| | | |
|---|---|---|
| XS0295277684 | 200,000 | 167,111 |
| XS0295698947 | 450,000 | 638,598 |
| XS0295760093 | 111,000 | 112,622 |
| XS0296156085 | 150,000 | 212,866 |
| XS0296280927 | 1,000,000 | 1,419,106 |
| XS0296281735 | 35,000 | 18,788 |
| XS0296589194 | 272,000 | 385,997 |
| XS0296894669 | 282,000 | 400,188 |
| XS0297127861 | 7,000,000 | 1,878,054 |
| XS0297155565 | 90,000 | 78,451 |
| XS0297221458 | 950,000 | 140,952 |
| XS0297365024 | 3,700,000 | 548,970 |
| XS0297906801 | 400,000 | 411,752 |
| XS0297907791 | 400,000 | 269,486 |
| XS0297908849 | 7,000,000 | 1,966,290 |
| XS0297915117 | 7,000,000 | 1,433,061 |
| XS0298200238 | 60,000 | 53,046 |
| XS0298612697 | 7,000,000 | 1,960,190 |
| XS0298931956 | 100,000 | 75,343 |
| XS0299083468 | 140,000 | 140,000 |
| XS0299085323 | 130,000 | 184,484 |
| XS0299103084 | 365,000 | 281,143 |
| XS0299172725 | 700,000 | 394,986 |
| XS0299369511 | 7,000,000 | 1,929,733 |
| XS0299371509 | 983,859 | 1,396,200 |
| XS0299386101 | 761,000 | 678,844 |
| XS0299555739 | 1,127,000 | 1,127,000 |
| XS0299624568 | 800,000 | 74,218 |
| XS0299661099 | 7,000,000 | 1,956,820 |
| XS0299701499 | 365,000 | 517,974 |
| XS0299702380 | 380,000 | 380,000 |
| XS0299929595 | 170,000 | 170,000 |
| XS0300152666 | 500,000 | 479,925 |
| XS0300339578 | 400,000 | 382,260 |
| XS0300349296 | 7,000,000 | 1,905,567 |
| XS0300349882 | 500,000 | 279,128 |
| XS0300350625 | 200,000 | 121,245 |
| XS0300351193 | 7,000,000 | 1,877,944 |
| XS0300460721 | 525,000 | 487,426 |
| XS0300476214 | 550,000 | 60,318 |
| XS0300477709 | 665,000 | 943,705 |
| XS0300516969 | 345 | 80,946 |
| XS0300662607 | 150,000 | 117,826 |

| | | |
|---|---|---|
| XS0300663167 | 900,000 | 900,000 |
| XS0301086475 | 50 | 63,772 |
| XS0301128061 | 300,000 | 268,684 |
| XS0301129036 | 850,000 | 763,281 |
| XS0301129549 | 150,000 | 152,160 |
| XS0301130554 | 300,000 | 312,428 |
| XS0301340872 | 150,000 | 124,155 |
| XS0301348420 | 150,000 | 150,000 |
| XS0301365945 | 590,000 | 837,272 |
| XS0301522396 | 175,000 | 248,344 |
| XS0301958178 | 100,000 | 52,570 |
| XS0302282602 | 300,000 | 247,102 |
| XS0302350888 | 1,135,000 | 1,615,952 |
| XS0302504948 | 300,000 | 301,066 |
| XS0302668545 | 500,000 | 516,944 |
| XS0302821755 | 7,000,000 | 1,930,275 |
| XS0302861033 | 50,000 | 70,955 |
| XS0303172117 | 800,000 | 418,002 |
| XS0303178825 | 7,000,000 | 1,885,554 |
| XS0303465214 | 214,000 | 78,436 |
| XS0303746571 | 5,677,000 | 8,056,263 |
| XS0303764129 | 600,000 | 499,164 |
| XS0303864184 | 7,000,000 | 1,875,100 |
| XS0303865074 | 1,200,000 | 888,637 |
| XS0303866049 | 1,350,000 | 1,350,000 |
| XS0304080558 | 286,000 | 405,864 |
| XS0304080715 | 278,000 | 278,000 |
| XS0304471070 | 100,000 | 67,224 |
| XS0304473019 | 7,000,000 | 1,852,600 |
| XS0304593857 | 500,000 | 112,517 |
| XS0305099789 | 100,000 | 101,799 |
| XS0305158031 | 320,000 | 178,132 |
| XS0305574500 | 191,000 | 271,049 |
| XS0305574849 | 262,000 | 262,000 |
| XS0305948860 | 94,000 | 75,645 |
| XS0306148288 | 90,000 | 90,000 |
| XS0306179168 | 480 | 218,526 |
| XS0306901330 | 30,000 | 30,000 |
| XS0306921957 | 4,800,000 | 28,296 |
| XS0307093491 | 7,000,000 | 2,540,563 |
| XS0307323161 | 1,600,000 | 237,392 |
| XS0307325455 | 1,120,000 | 173,791 |
| XS0307992676 | 418,000 | 593,186 |

40

| | | |
|---|---:|---:|
| XS0308102283 | 7,000,000 | 1,661,820 |
| XS0308319341 | 180,000 | 200,880 |
| XS0308461176 | 86,000 | 90,461 |
| XS0308734242 | 250,000 | 159,341 |
| XS0308982650 | 100,000 | 57,546 |
| XS0309103546 | 125,000 | 177,388 |
| XS0309186145 | 100,000 | 100,000 |
| XS0309335080 | 1,000,000 | 1,000,000 |
| XS0309790797 | 40,000 | 40,000 |
| XS0309813839 | 60,000 | 53,433 |
| XS0309835139 | 2,567 | 1,194,023 |
| XS0309843232 | 1,800,000 | 1,457,445 |
| XS0309871019 | 898,000 | 1,274,357 |
| XS0310069538 | 1,280 | 69,926 |
| XS0310083950 | 7,000,000 | 2,879,421 |
| XS0310085062 | 50,000 | 50,000 |
| XS0310085815 | 350,000 | 245,699 |
| XS0310476766 | 500,000 | 324,423 |
| XS0310487292 | 120,000,000 | 673,179 |
| XS0311101652 | 170,000 | 170,000 |
| XS0311297021 | 289,000 | 427,517 |
| XS0311301070 | 1,350,000 | 1,350,000 |
| XS0311740582 | 7,000,000 | 5,667,841 |
| XS0311764509 | 220,000 | 252,459 |
| XS0311765068 | 150,000 | 136,943 |
| XS0311853195 | 200,000 | 85,545 |
| XS0312086456 | 5,100,000 | 30,065 |
| XS0312194854 | 100,000 | 66,696 |
| XS0312428609 | 7,000,000 | 2,198,855 |
| XS0312432114 | 1,000,000 | 809,692 |
| XS0312463184 | 351,000 | 330,196 |
| XS0312723272 | 7,000,000 | 3,731,857 |
| XS0313102377 | 191,000 | 276,878 |
| XS0313198201 | 285,000 | 404,445 |
| XS0313345604 | 31,880 | 2,988,220 |
| XS0313950031 | 100,000 | 100,000 |
| XS0314034728 | 95,000 | 134,815 |
| XS0314067140 | 769,000 | 415,450 |
| XS0314578310 | 7,000,000 | 2,685,579 |
| XS0315548700 | 7,900,000 | 39,491 |
| XS0315549690 | 60,000,000 | 372,634 |
| XS0315559061 | 3,040 | 479,209 |
| XS0316388445 | 922,000 | 531,558 |

| | | |
|---|---|---|
| XS0316405637 | 5,180 | 865,378 |
| XS0316485563 | 918,000 | 818,895 |
| XS0316826733 | 7,000,000 | 2,197,700 |
| XS0316992824 | 200,000 | 172,009 |
| XS0317240157 | 213,000 | 161,222 |
| XS0317359718 | 10,000 | 12,136 |
| XS0317366689 | 1,000,000 | 1,699,521 |
| XS0317744380 | 1,100,000 | 968,300 |
| XS0318056354 | 2,404,000 | 2,144,471 |
| XS0318224598 | 140,000 | 140,000 |
| XS0318362711 | 70,000 | 70,000 |
| XS0318538260 | 690,000 | 558,687 |
| XS0318778734 | 285,000 | 254,260 |
| XS0319159454 | 60,000 | 60,000 |
| XS0319159538 | 130,000 | 85,943 |
| XS0319159702 | 310,000 | 310,000 |
| XS0319161518 | 250,000 | 192,011 |
| XS0319193396 | 244,000 | 346,262 |
| XS0319211982 | 550,000 | 550,000 |
| XS0319612387 | 60,000 | 60,000 |
| XS0319632575 | 7,000,000 | 2,024,963 |
| XS0319632732 | 7,000,000 | 1,916,996 |
| XS0319831854 | 1,172,000 | 2,101,745 |
| XS0320102295 | 7,000,000 | 3,903,554 |
| XS0320521007 | 150,000 | 82,812 |
| XS0320745028 | 7,000,000 | 2,136,237 |
| XS0321019258 | 150,000 | 174,432 |
| XS0321317603 | 300,000 | 352,301 |
| XS0321471517 | 545,000 | 318,194 |
| XS0321794280 | 7,000,000 | 3,525,110 |
| XS0321795840 | 7,000,000 | 3,588,826 |
| XS0322030940 | 7,000,000 | 2,278,863 |
| XS0322153270 | 157,000 | 140,051 |
| XS0322467969 | 7,000,000 | 2,185,689 |
| XS0322468777 | 7,000,000 | 3,207,353 |
| XS0323353499 | 50,000 | 63,025 |
| XS0323412337 | 90,000 | 25,717 |
| XS0323526854 | 360,000 | 645,587 |
| XS0323634823 | 14,000,000 | 7,275,908 |
| XS0323635473 | 7,000,000 | 1,766,233 |
| XS0323635713 | 7,000,000 | 3,093,108 |
| XS0323643063 | 2,900 | 447,737 |
| XS0323747781 | 1,500,000 | 1,325,151 |

| | | |
|---|---|---|
| XS0323826221 | 640,000 | 47,217 |
| XS0323849199 | 280,000 | 280,000 |
| XS0323869205 | 20,000 | 1,577 |
| XS0323881754 | 200,000 | 120,727 |
| XS0324187839 | 14,000,000 | 4,242,289 |
| XS0324269488 | 25,000 | 22,754 |
| XS0324445807 | 320,000 | 454,114 |
| XS0324446011 | 380,000 | 380,000 |
| XS0324461671 | 400,000 | 269,169 |
| XS0324461838 | 100,000 | 39,523 |
| XS0324461911 | 7,000,000 | 2,235,946 |
| XS0324462133 | 7,000,000 | 2,335,872 |
| XS0324491660 | 19,000 | 26,963 |
| XS0324632669 | 500,000 | 709,553 |
| XS0324731990 | 200,000 | 183,637 |
| XS0324872893 | 138,000 | 195,837 |
| XS0324872976 | 292,000 | 292,000 |
| XS0324983963 | 7,000,000 | 2,228,055 |
| XS0324984185 | 7,000,000 | 2,264,359 |
| XS0325077864 | 200,000 | 174,339 |
| XS0325152154 | 245,000 | 172,671 |
| XS0325550472 | 70,000 | 62,443 |
| XS0325550555 | 67,000 | 99,910 |
| XS0325784626 | 300,000 | 367,538 |
| XS0325790276 | 1,423 | 344,495 |
| XS0325813409 | 50,000 | 50,000 |
| XS0326085742 | 331,000 | 469,724 |
| XS0326086716 | 519,000 | 472,640 |
| XS0326108973 | 900,000 | 133,533 |
| XS0326364386 | 995,000 | 1,412,010 |
| XS0326403895 | 8,000,000 | 883,721 |
| XS0326476693 | 120,000 | 85,497 |
| XS0326486734 | 7,000,000 | 2,123,095 |
| XS0326608352 | 1,000,000 | 60,114 |
| XS0326826343 | 300,000 | 202,617 |
| XS0326999959 | 875,000 | 1,043,605 |
| XS0327055371 | 300,000 | 232,535 |
| XS0327234380 | 2,000,000 | 513,978 |
| XS0327236757 | 946,000 | 1,342,474 |
| XS0327236914 | 261,000 | 245,972 |
| XS0327275227 | 7,000,000 | 2,444,645 |
| XS0327275656 | 7,000,000 | 2,790,985 |
| XS0327291349 | 7,000,000 | 2,277,785 |

| | | |
|---|---:|---:|
| XS0327576772 | 190,000 | 340,727 |
| XS0327731096 | 50,000 | 38,937 |
| XS0327847470 | 7,000,000 | 1,582,149 |
| XS0327848015 | 200,000 | 158,585 |
| XS0328210652 | 7,000,000 | 2,322,998 |
| XS0328465306 | 74,000 | 2,181,789 |
| XS0328587166 | 7,000,000 | 1,668,535 |
| XS0328596316 | 200,000 | 200,000 |
| XS0328865661 | 7,000,000 | 2,120,778 |
| XS0328873681 | 794,000 | 708,282 |
| XS0328922645 | 470,000 | 470,000 |
| XS0328923379 | 875,000 | 1,241,718 |
| XS0329133341 | 800,000 | 1,135,285 |
| XS0329192511 | 200,000 | 84,655 |
| XS0329337264 | 7,000,000 | 2,150,040 |
| XS0329337348 | 300,000 | 11,139 |
| XS0329337421 | 7,000,000 | 1,535,562 |
| XS0329429541 | 7,000,000 | 2,450,927 |
| XS0329801715 | 80,000 | 80,000 |
| XS0329801806 | 80,000 | 113,528 |
| XS0330201988 | 100,000 | 71,108 |
| XS0330204149 | 7,000,000 | 2,433,891 |
| XS0330222984 | 1,300 | 1,133,627 |
| XS0330420943 | 300,000 | 214,811 |
| XS0330730382 | 100,000 | 64,658 |
| XS0330834598 | 100,000 | 145,229 |
| XS0330867762 | 7,000,000 | 2,652,055 |
| XS0331034768 | 100,000 | 67,715 |
| XS0331037605 | 7,000,000 | 2,689,970 |
| XS0331039569 | 22,687 | 3,852,540 |
| XS0331044726 | 3,000,000 | 700,398 |
| XS0331048040 | 7,000,000 | 2,511,571 |
| XS0331048123 | 4,000,000 | 962,714 |
| XS0331334481 | 350,000 | 21,437 |
| XS0331427061 | 100,000 | 92,446 |
| XS0331504745 | 200,000 | 90,944 |
| XS0331769454 | 300,000 | 164,320 |
| XS0331878404 | 180,000 | 260,595 |
| XS0332049229 | 50,000 | 70,955 |
| XS0332049815 | 198,000 | 280,983 |
| XS0332050078 | 39,000 | 39,453 |
| XS0332108413 | 7,000,000 | 2,297,016 |
| XS0332136380 | 1,592,000 | 968,108 |

| | | |
|---|---|---|
| XS0332181840 | 300,000 | 425,732 |
| XS0332185676 | 4,723 | 914,712 |
| XS0332547099 | 70,000 | 32,599 |
| XS0332764785 | 7,000,000 | 3,348,168 |
| XS0334419321 | 548,000 | 982,727 |
| XS0334450599 | 7,000,000 | 3,444,495 |
| XS0334595138 | 345,000 | 307,755 |
| XS0334704524 | 7,000,000 | 2,806,089 |
| XS0334854410 | 200,000 | 200,000 |
| XS0334921896 | 1,000,000 | 753,763 |
| XS0335143284 | 7,000,000 | 2,884,771 |
| XS0335226659 | 113,000 | 163,267 |
| XS0335528666 | 185,000 | 258,977 |
| XS0335576475 | 281,000 | 398,769 |
| XS0335624036 | 7,000,000 | 2,874,210 |
| XS0335964648 | 50,000 | 70,955 |
| XS0336151088 | 842,000 | 1,194,887 |
| XS0336218762 | 440,000 | 265,284 |
| XS0336249569 | 7,000,000 | 2,625,415 |
| XS0336250229 | 90,000 | 39,958 |
| XS0336415913 | 400,000 | 117,289 |
| XS0336617203 | 7,000,000 | 3,525,745 |
| XS0336633150 | 2,066 | 1,163,217 |
| XS0336927149 | 22,000,000 | 167,183 |
| XS0336927909 | 270,000 | 157,120 |
| XS0336928113 | 1,000,000 | 23,121 |
| XS0336930440 | 1,000,000 | 23,490 |
| XS0336931331 | 40,000 | 40,000 |
| XS0336943427 | 6,000 | 8,515 |
| XS0336951107 | 700,000 | 713,668 |
| XS0337388382 | 51,000 | 64,038 |
| XS0337413917 | 7,000,000 | 3,155,158 |
| XS0337488505 | 600,000 | 364,287 |
| XS0337617327 | 100,000 | 28,713 |
| XS0337685670 | 100,000 | 98,563 |
| XS0337877582 | 7,000,000 | 3,037,932 |
| XS0338526576 | 989 | 201,140 |
| XS0338676389 | 150,000 | 94,543 |
| XS0338845596 | 7,000,000 | 2,453,848 |
| XS0338941551 | 44,000 | 62,441 |
| XS0339222308 | 100,000 | 77,396 |
| XS0339408238 | 152,000 | 152,000 |
| XS0339408584 | 1,610,000 | 1,684,180 |

| | | |
|---|---|---|
| XS0339413311 | 520,000 | 331,041 |
| XS0339559360 | 7,000,000 | 3,780,679 |
| XS0339559527 | 7,000,000 | 1,964,840 |
| XS0339561002 | 500,000 | 11,885 |
| XS0339760117 | 210 | 36,154 |
| XS0339810078 | 410,000 | 343,180 |
| XS0339944943 | 500,000 | 500,000 |
| XS0340417251 | 29,000 | 41,814 |
| XS0340460855 | 500,000 | 321,232 |
| XS0340696466 | 173,000 | 245,505 |
| XS0340891240 | 458,000 | 649,950 |
| XS0341159589 | 1,000,000 | 323,618 |
| XS0341223427 | 1,000,000 | 350,366 |
| XS0341528965 | 9,000 | 12,938 |
| XS0342144416 | 450,000 | 137,297 |
| XS0342406716 | 227,000 | 322,137 |
| XS0342414819 | 10,000 | 14,191 |
| XS0342523197 | 33,000 | 46,830 |
| XS0342637872 | 815,000 | 897,929 |
| XS0342989711 | 7,000,000 | 4,020,718 |
| XS0343642905 | 7,000,000 | 2,230,883 |
| XS0343798400 | 7,000,000 | 4,034,510 |
| XS0343900022 | 20,000 | 30,092 |
| XS0344087183 | 400,000 | 239,595 |
| XS0344087340 | 152,000 | 174,046 |
| XS0344101273 | 7,000,000 | 3,282,274 |
| XS0344101943 | 7,000,000 | 1,705,812 |
| XS0344460323 | 50,000 | 70,955 |
| XS0344460752 | 76,000 | 76,000 |
| XS0345439334 | 384,000 | 596,073 |
| XS0345814791 | 7,000,000 | 4,392,688 |
| XS0345815178 | 7,000,000 | 3,297,998 |
| XS0346080590 | 669,000 | 970,715 |
| XS0346123408 | 7,000,000 | 3,746,112 |
| XS0346124638 | 7,000,000 | 3,005,412 |
| XS0346124984 | 7,000,000 | 4,033,954 |
| XS0346821357 | 100,000 | 100,000 |
| XS0347064924 | 360,000 | 501,403 |
| XS0348974410 | 12,000 | 17,029 |
| XS0349054360 | 300,000 | 300,000 |
| XS0349153931 | 7,000,000 | 3,380,809 |
| XS0349159623 | 500,000 | 261,137 |
| XS0349530823 | 467,000 | 662,722 |

| | | |
|---|---|---|
| XS0349809342 | 391,000 | 554,870 |
| XS0349857317 | 487,000 | 487,000 |
| XS0349924109 | 115 | 103,689 |
| XS0349924281 | 465 | 133,774 |
| XS0350117064 | 7,000,000 | 4,685,748 |
| XS0350893904 | 7,000,000 | 2,133,321 |
| XS0350899182 | 4,617,000 | 6,022,174 |
| XS0350902580 | 2,250,000 | 2,119,303 |
| XS0350982830 | 100,000 | 94,118 |
| XS0351390017 | 180,000 | 247,942 |
| XS0351627806 | 7,000,000 | 4,627,712 |
| XS0351766836 | 690,000 | 979,183 |
| XS0353289712 | 900,000 | 805,976 |
| XS0354826017 | 5,100,000 | 30,065 |
| XS0355133454 | 84,000 | 85,228 |
| XS0355694646 | 32,000 | 26,603 |
| XS0355694992 | 40,000 | 27,269 |
| XS0355896944 | 10,000 | 14,304 |
| XS0356447093 | 200,000 | 283,821 |
| XS0357486447 | 1,000,000 | 1,419,106 |
| XS0357874451 | 7,000,000 | 3,719,497 |
| XS0358125630 | 7,000,000 | 2,336,529 |
| XS0358299542 | 38,000 | 36,501 |
| XS0358366325 | 15,000 | 21,457 |
| XS0358689841 | 200,000 | 318,592 |
| XS0359895876 | 58,000 | 82,308 |
| XS0359896098 | 90,000 | 90,000 |
| XS0360926298 | 14,000 | 19,625 |
| XS0361039067 | 100,000 | 68,252 |
| XS0361641318 | 909,000 | 1,163,189 |
| XS0361641821 | 421,000 | 500,555 |
| XS0361886772 | 264,000 | 374,644 |
| XS0361915621 | 500,000 | 41,957 |
| XS0363707695 | 7,000,000 | 3,823,513 |
| XS0363956722 | 45,000 | 36,996 |
| XS0364018340 | 7,000,000 | 3,995,884 |
| XS0364263227 | 7,000,000 | 184,268 |
| XS0364512979 | 340,000 | 262,886 |
| XS0364895614 | 7,000,000 | 4,071,420 |
| XS0364895887 | 7,000,000 | 3,853,370 |
| XS0365839835 | 414,000 | 179,314 |
| XS0365872968 | 7,000,000 | 4,148,110 |
| XS0365915874 | 8,000,000 | 4,713,624 |

| ISIN | Notional | Allowed |
|---|---:|---:|
| XS0366065687 | 200,000 | 180,693 |
| XS0366126224 | 7,000,000 | 3,025,830 |
| XS0366475076 | 78,900,000 | 6,369,525 |
| XS0367651782 | 102,000 | 90,988 |
| XS0368588421 | 58,300,000 | 3,181,121 |
| XS0368669007 | 1,116,000 | 1,610,966 |
| XS0369674550 | 175,000 | 101,865 |
| XS0370988338 | 650 | 39,808 |
| XS0371134924 | 100,000 | 93,120 |
| XS0371797100 | 140,000 | 198,675 |
| XS0372300144 | 17,464 | 14,140 |
| XS0373219582 | 1,146,000 | 1,626,295 |
| XS0375356648 | 1,745,000 | 2,476,340 |
| XS0377288450 | 1,986,000 | 1,950,245 |
| XS0379217184 | 2,980,000 | 3,023,557 |
| XS0383364873 | 220,000 | 191,821 |
| XS0384581756 | 1,000,000 | 1,419,106 |
| XS0384581913 | 1,000,000 | 1,419,106 |
| **Totals** | **1,571,304,275** | **$942,997,884** |

### LBT Hong Kong Notes

| ISIN | Notional Amount Local Currency | 9/14/08 Outstanding Nominal Value in Local Currency from Trade Level DDB - ALL ROWS | LBT Sept 14, 2008 Outstanding Nominal $ Value | Allowed Amount |
|---|---:|---:|---:|---:|
| XS0260439210 | 5,000,000 | 5,000,000 | 3,969,706 | 2,244,674 |
| XS0332136463 | 7,000,000 | 7,000,000 | 5,557,589 | 5,287,283 |
| XS0338676116 | 14,000,000 | 14,000,000 | 9,064,264 | 4,488,881 |
| XS0342120820 | 8,000,000 | 8,000,000 | 6,351,530 | 3,880,243 |
| XS0342989398 | 7,000,000 | 7,000,000 | 4,532,132 | 2,426,352 |
| | | | | 18,327,432.38 |

## EXHIBIT C

## LBHI JOINDER PARTY CLAIMS

| | |
|---|---|
| 314 Commonwealth Ave. Inc. | $13,741,149.38 (CHF 14'995'716.32) |
| LB Investment Mgmt Company Ltd. | $ 12,223,000 (CHF 13,338,959.90) |
| LB I Group | $0 |
| LB SDI | $0 |
| Lehman Brothers P.A. LLC | $8,893.95 (CHF 9'705.97) |
| LB Hercules Holdings (Neuberger Berman LLC) | $158,301 (CHF 172'753.88) |

## EXHIBIT D

## FORM OF ASSIGNMENT

## ASSIGNMENT OF CLAIMS

THIS ASSIGNMENT OF CLAIMS ("Assignment") is made and entered into as of this __ day of___, ___, by and between Lehman Brothers Finance AG (in Liquidation), also known as Lehman Brothers Finance SA (en liquidation) ("LBF"), an entity incorporated in Switzerland, by and through PricewaterhouseCoopers AG (Zurich), LBF's duly authorized bankruptcy liquidator (the "*Assignor*") and Lehman Brothers Holdings Inc. ("*Assignee*") (Assignor and Assignee are sometimes hereinafter collectively referred to as "Parties" or "the Parties").

WHEREAS, Assignor and Assignee have entered into a Settlement Agreement, dated as of March __, 2013 (the "Agreement") for the settlement of claims by and between Assignor and Assignee, among others; and

WHEREAS, pursuant to the Agreement, Assignor has agreed to assign, transfer, set over and deliver to Assignee (and Assignee has agreed to accept and assume), subject to the provisions of the Agreement, the following: (i) an undivided interest in LBF's right, title, and interest in and to all of the accounts receivable from LBF Payors set forth on Exhibit A (the "LBF Accounts" and "LBF Payors," respectively) and, without duplication, (ii) an undivided interest in all of LBF's interest in and to the net claims held by LBF against the LBF Payors arising from the LBF Accounts (the "LBF Affiliate Claims" and, together with the LBF Accounts, the "Assigned Affiliate Claims").

NOW, THEREFORE, for and in consideration of the covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.    <u>Assignment and Assumption</u>.  Subject to the provisions of the Agreement, Assignor hereby assigns, transfers, sets over and delivers to Assignee, and Assignee accepts and assumes any and all Assignor's rights, title and interest in and to, and obligations with respect to, any and all (i) Assigned Affiliate Claims and (ii) proceeds of any nature or type relating to the Assigned Affiliate Claims.

2.    <u>Nature of Assignment</u>.  Subject to the provisions of the Agreement, this is an assignment of all of Assignor's rights to receive any cash, notes, stock, or other property that may be paid, distributed or issued on account of the Assigned Affiliate Claims, including all cash, securities, instruments and other property or distributions issued on account of such Assigned Affiliate Claims, including interest, if any, on the Assigned Affiliate Claims, causes of action and other rights arising under or relating to the Assigned Affiliate Claims.  This assignment is an absolute and unconditional assignment of the Assigned Affiliate Claims and, except as provided in the Agreement, shall not be deemed to create a security interest.  With effect as of the date hereof and subject to the provisions of the Agreement, the Assignee hereby becomes owner of the Assigned Affiliate Claims and shall have all rights of the Assignor thereunder, and the Assignor hereby relinquishes all further rights under the Assigned Affiliate Claims.

3.    <u>Representations and Warranties</u>.  Except as specifically set forth in the Agreement, LBF makes no representations and warranties regarding the Assigned Affiliate Claims.

4.    <u>No Modifications</u>.  No modification, amendment, or waiver of any terms or provisions of this Agreement shall bind either the Assignor or Assignee unless such modification, amendment, or waiver is in writing and has been executed by a duly authorized representative of the respective party against whom such modification, amendment or waiver is sought to be enforced.

51

5.     <u>Counterpart Signatures</u>.  This Assignment may be signed by counterpart signatures, all of which together shall constitute one and the same instrument.  Facsimile signatures may be accepted in lieu of original signatures.

6.     <u>Governing Law</u>.  The provisions of the Agreement relating to Venue and Choice of Law (Section 12) shall govern this Assignment.

**IN WITNESS WHEREOF**, the undersigned Assignor has executed this Assignment effective as of _____, 2013.

ASSIGNOR:

**LEHMAN BROTHERS FINANCE AG,**
**A/K/A LEHMAN BROTHERS FINANCE SA,**
**by PricewaterhouseCoopers AG, Zurich,**
**as LBF Liquidator, and without**
**personal liability**

By: _____
Name:  Christiana Suhr Brunner

By: _____
Name:  Pascal Portmann

**IN WITNESS WHEREOF**, the undersigned Assignee accepts this Assignment, and assumes the obligations set forth herein, effective as of _____, 2013.

ASSIGNEE:

**LEHMAN BROTHERS HOLDINGS INC.**

By:_____
Name:  Daniel Ehrmann
Title:  Its Authorized Representative

## EXHIBIT E

## SURVIVING CONTRACTS

1.    Lehman Global Protocol (as defined in the Agreement)

2.    Confidentiality Agreement, dated July 23, 2012, by and among LBF, LAMCO and LBHI.

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                                    :
In re                                                               :          **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    **08-13555 (JMP)**
                                                                    :
                                            **Debtors.**            :          **(Jointly Administered)**
                                                                    :
--------------------------------------------------------------------x

### ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT AGREEMENT WITH LEHMAN BROTHERS FINANCE AG (IN LIQUIDATION)

Upon the motion (the "Motion") dated April 2, 2013, of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for approval of a settlement agreement with Lehman Brothers Finance AG (in liquidation) a/k/a Lehman Brothers Finance SA (in liquidation) pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) LBF; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]; and it appearing that

1

no other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Motion; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, the Court having determined and found that the proposed

compromise and settlement set forth in the Settlement Agreement is reasonable and appropriate,

the Motion is GRANTED; and it is further

ORDERED that any objections to the Motion that have not otherwise been

withdrawn or resolved are overruled; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the compromise and

settlement described in the Motion and contemplated by and provided for in the Settlement

Agreement is approved; and it is further

ORDERED that the Chapter 11 Estates are authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents and papers and to

take any and all actions reasonably necessary or appropriate to consummate the Settlement

Agreement and perform any and all obligations and transactions contemplated therein; and it is

further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and the

terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

2

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: April __, 2013

New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE