Hearing Date and Time:  April 24, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  April 17, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :   08-13555 (JMP)
                                          :
                   Debtors.               :   (Jointly Administered)
                                          :
-------------------------------------------------------------------x
```

**NOTICE OF PLAN ADMINISTRATOR'S**
**MOTION PURSUANT TO SECTIONS 105(a) AND 1142(b)**
**OF THE BANKRUPTCY CODE FOR ORDER IN AID OF EXECUTION**
**OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LB ROSE RANCH LLC**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan Administrator"), For Order In Aid of Execution of the Modified Third Amended Chapter 11 Plan of LB Rose Ranch LLC (the "Motion"), will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") on April 24, 2013 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn:  Jacqueline Marcus, Esq., attorney for the Plan Administrator; and (iii) the Office of

the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Tracy Hope Davis, Esq., Susan Golden, Esq. and Andrea B. Schwartz, Esq., so as to be so filed and received by no later than **April 17, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: April 9, 2013
New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

US_ACTIVE:\44218731\12\58399.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
**In re**                                                         :   **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :   **08-13555 (JMP)**
                                                                  :
                                          **Debtors.**            :   **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S MOTION PURSUANT TO SECTIONS 105(a)**
**AND 1142(b) OF THE BANKRUPTCY CODE FOR ORDER IN AID OF EXECUTION**
**OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LB ROSE RANCH LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

                    Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] (ECF No. 22973), respectfully represents:

                                          **Preliminary Statement**

                    1.        Consistent with its obligations under the Plan, the Plan Administrator has

been analyzing numerous options for monetizing the assets of LB Rose Ranch LLC ("LBRR") so

that distributions can begin to be made to holders of allowed claims against LBRR.  As discussed

below in greater detail, the Plan Administrator has determined that an immediate sale of the

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms
in the Plan.

Property (as defined below) to a commercial developer is likely to result in the greatest return for holders of allowed claims against LBRR.  Following diligence and discussions with potential purchasers, the Plan Administrator has concluded that an order in aid of execution of  LBRR's Plan pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code (as defined below) will remove uncertainty surrounding the Property, resolve certain issues regarding the transfer of a portion of the Property, and address or prevent certain disputes that have arisen or may be expected to arise, thereby allowing the Plan Administrator to obtain a significantly higher purchase price.  The Plan Administrator believes that the relief requested herein is in the best interests of LBRR's estate and its creditors, protects the rights of any affected parties, and should be approved.

### **Background**

2.       Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBRR (collectively, the "Chapter 11 Estates"), commenced voluntary cases (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.       On December 5, 2011, each of the Chapter 11 Estates, including LBRR, proposed and filed the Plan.  The Plan generally operates as a separate plan of liquidation for each of the Chapter 11 Estates.  On December 6, 2011, the Court approved and entered an order confirming the Plan (the "Confirmation Order") (ECF No. 23023).  The Plan became effective on March 6, 2012 (the "Effective Date").

4.       Pursuant to section 8.3 of the Plan, the Plan Administrator has discretion to delay distributions where a Chapter 11 Estate holds less than $10,000,000 of Available Cash. As of the date hereof, LBRR's Chapter 11 Estate holds approximately $1,000,000 in Available

Cash and, accordingly, the Plan Administrator has not yet made any distributions to holders of Allowed Claims against LBRR.

## Jurisdiction

5.        This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

6.        Pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, the Plan Administrator seeks (i) approval of the sale of LBRR's interest in the Property free and clear of all Claims, liens, encumbrances, charges and other interests to the extent permitted by section 13.1 of the Plan and paragraph 39 of the Confirmation Order; and (ii) authorization to (a) transfer the Remaining Affordables (as defined below) into a Liquidating Trust, (b) sell the Liquidating Trust Interests to a third party purchaser or consent to a merger of the Liquidating Trust into an entity owned or controlled by such third party purchaser, and (c) distribute of the proceeds of the sale of the Property, and the transfer or merger of the Liquidating Trust or the Liquidating Trust Interests (as applicable), to holders of allowed claims against LBRR in full and final satisfaction of such holders' interest in the Property and such Liquidating Trust.

## LBRR's Assets

7.        Many years before the Commencement Date, LBRR took ownership of a 225 acre unfinished planned resort community in Glenwood Springs, Colorado (the "Property") through the exercise of its remedies as a secured lender.  Today, the Property is primarily comprised of two components: an 18-hole golf course and related facilities (the "Recreation Facility") and a single family residential development (the "Planned Community").  The Recreation Facility includes the golf course, a small pro shop with a snack bar, a partially-

3

completed restaurant, a recreation center with a swimming pool, two tennis courts, a basketball

court, cart storage and a maintenance facility.

8.      The Planned Community is zoned for more than 300 individual residential

building lots and was intended to have been built in three phases.  The infrastructure (roads,

utility connections, etc.) was completed for the first two phases and partially completed for the

third phase.  LBRR contracted with individual home builders for the sale of the lots and the

home builders thereafter entered into sales contracts with individual home buyers for the

purchase of the lots and the construction of the houses.  Phase I, which consists of 82 lots, is

complete and all of the Phase I lots and houses have been sold to individual owners.  Of the 173

lots and houses that comprise Phase II, 116 have also been sold to private owners.  None of the

61 lots in Phase III have been developed or sold.

**A.  The Deed Restrictions**

9.      In connection with obtaining authorization for the development of the

Planned Community and the Recreation Facility from the Board of County Commissioners of

Garfield County, State of Colorado (the "County"), LBRR's predecessor agreed to provide,

either on the Property or elsewhere in Garfield County, 30 residences that would be earmarked

for affordable housing.  Purchasers of these affordable housing units must be individuals who

meet income and residency restrictions, as determined by the County.  Additionally, LBRR

agreed that the initial transfer and all subsequent transfers of these properties would be subject to

certain deed restrictions intended to ensure that the properties continued to fulfill the County's

goal of maintaining the stock of affordable housing (the "Deed Restrictions").  Pursuant to a

letter agreement, dated November 12, 2007 (the "Letter Agreement"), LBRR engaged one of the

Home Builders (as defined below) to construct 24 affordable housing units on Phase II lots

4

owned by LBRR in the Planned Community.  LBRR has conveyed 17 of such affordable housing

units to qualifying purchasers, continues to hold title to 7 completed affordable housing units

(the "Unsold Affordables"),[2] and retains the obligation to provide 6 additional affordable

housing units (the "Affordable Obligation"), which may be located in the Planned Community or

elsewhere in Garfield County.

        10.     LBRR has proposed to sell the Unsold Affordables, subject to the Deed

Restrictions, to a commercial purchaser or developer who would also be required to assume the

Affordable Obligation.  Such commercial purchaser or developer would then be obligated to

provide the six additional affordable housing units, in accordance with the Affordable

Obligation, and sell those six affordable housing units, along with the Unsold Affordables, to

persons who meet the criteria established by the County and subject to the Deed Restrictions.

Even though this proposal would result in the completion of the agreed upon 30 deed-restricted

affordable housing units, and thereby realize the County's affordable housing-related objectives,

LBRR has been unable to carry it out because the Deed Restrictions do not permit the

intermediate transfer of the Unsold Affordables to a commercial purchaser or developer.

**B.  Disputes Regarding the Property**

        11.     In order to facilitate the sale and construction of units in the Planned

Development, LBRR entered into a development agreement in 2004 (as amended, the "PSA"),

with Hansen Construction, Inc., Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC,

and Ironbridge Aspen Collection, LLC (collectively, the "Home Builders").  The PSA included a

program by which the Home Builders solicited offers from purchasers (the "Individual

Purchasers") to purchase homes that the Home Builders would construct on Planned Community

---

[2] The Unsold Affordables are identified as lot numbers 297, 298, 300, 301, 302, 303 and 304.

lots.  When the Home Builders received qualifying offers, they would arrange for the relevant

Individual Purchaser to obtain financing from a local bank and, upon closing, LBRR would

convey fee title to the Home Builders which would thereafter convey the fee to the Individual

Purchaser.  A portion of the purchase price would be paid to LBRR for the lot and the balance

paid to the Home Builders for the construction of the house.  The PSA also provided that LBRR

would participate in a portion of the Home Builders' profits.  The Court approved the rejection

of the PSA and the Letter Agreement on December 7, 2009 (ECF No. 6064).  The Home

Builders' proofs of claim related to the PSA and the Letter Agreement remain unresolved.

12.    Under this arrangement, LBRR was generally not involved in the

construction of the residences built on Planned Community lots, nor, subject to certain

exceptions, was it a direct seller of Planned Community lots to Individual Purchasers.

Notwithstanding this lack of privity, certain of the Individual Purchasers have filed claims

against LBRR and/or LBHI.  These proofs of claim, which generally arise out of an alleged

construction defect, remain unresolved.

13.    Certain of the Individual Purchasers are plaintiffs (the "Colorado

Plaintiffs") in a litigation captioned *Jamin Cook, et al. v. Ironbridge Homes, LLC, et al.*, (Case

No. 2010CV142) that is currently pending in the District Court for Garfield County, Colorado

(the "Colorado Litigation").  The Colorado Litigation involves claims by the Colorado Plaintiffs

against the Home Builders and certain related parties arising out of alleged defects in the

residences that these Colorado Plaintiffs acquired from the Home Builders.  The Colorado

Plaintiffs also assert that they possess negligence claims against LBHI and LBRR relating to the

construction, operation, maintenance and repair of the golf course.  On or about November 18,

2011, this Court so ordered a stipulation pursuant to which LBRR consented to limited relief

6

from the automatic stay extent in LBRR's Chapter 11 Case pursuant to section 362 the

Bankruptcy Code (the "Automatic Stay") to allow the Colorado Plaintiffs to amend their

complaint to add LBRR as an additional defendant in the Colorado Litigation (ECF No. 22336).

In connection therewith, the Colorado Plaintiffs also agreed to limit their recoveries in the

Colorado Litigation, if any, to the proceeds of LBRR's insurance policies.

14.    On or about November 30, 2011, LBRR filed a complaint in the District

Court for Garfield County, Colorado asserting certain claims against the Home Builders (and

certain related parties) relating to, among other things, the PSA and the Letter Agreement (the

"Garfield County Action"). On December 7, 2011, the Home Builders filed a motion seeking

relief from the Automatic Stay (the "Automatic Stay Motion") to assert certain cross claims or

counterclaims against LBRR in the Colorado Litigation or the Garfield County Action, as

applicable (ECF No. 23097). The Automatic Stay Motion has been adjourned *sine die* (ECF No.

31173). LBHI, LBRR and the Home Builders have entered into a standstill agreement with

regard to the above while they attempt to reach a consensual resolution of their disputes.[3]

### Significant Aspects of the Proposed Sale Transaction

15.    Throughout the Chapter 11 Cases, LBRR and LBHI, as Plan

Administrator, have been evaluating various options for monetizing the Property so as to fund

Distributions to holders of Allowed Claims against LBRR. This process has been complicated

by the disputes among LBRR, the Home Builders and the Individual Purchasers, which disputes

have engendered substantial uncertainty with respect to the value of the Property. The Plan

Administrator believes that clarification of two issues would go a long way towards dissipating

---

[3] The description of the Property, the Deed Restrictions and the various disputes contained herein is for illustrative purposes only and shall not be determinative of any fact, any party's rights under any of the documents described herein, or be deemed to amend, limit, waive or release any party's obligations, rights, remedies or defenses thereunder.

7

this uncertainty and significantly enhance the Plan Administrator's ability to generate returns from the Property for holders of Allowed Claims against LBRR.

16.    First, the Plan Administrator understands from preliminary discussions with interested parties that there is some concern that certain of the claims asserted against LBRR by the Individual Purchasers and/or the Home Builders may result in successor liability for any potential purchaser of the Property.  This concern is easily addressed by an order of this Court restating certain provisions of the Plan and the Confirmation Order.  Pursuant to section 13.1 of the Plan and paragraph 39 of the Confirmation Order, all of the assets of LBRR's Chapter 11 Estate, including the Property, have vested in LBRR free and clear of all Claims, liens, encumbrances, charges and other interests as of the Effective Date.  Accordingly, any subsequent transfer of the Property by LBRR to a third party purchaser would be free and clear of all Claims, liens, encumbrances, charges and other interests of the Home Builders, the Individual Purchasers and any other party that arose prior to the Effective Date, with LBRR's Chapter 11 Estate remaining subject to all such Claims, liens, encumbrances, charges and other interests to the extent that any are valid and enforceable.

17.    Second, there is a possibility that future sales of the Remaining Affordables to qualifying purchasers could expose LBRR's Chapter 11 Estate to liability if such qualifying purchasers were to successfully assert claims against LBRR that are similar to the claims asserted by the Individual Purchasers discussed above.  Such claims would arise out of a post-petition sale and, therefore, any related settlements or judgments might be treated as administrative expenses of LBRR's Chapter 11 Estate and could detrimentally impact the recoveries of holders of Allowed Claims against LBRR.  The Plan Administrator believes that this risk can be mitigated by transferring the Remaining Affordables to a commercial developer

8

on an "as is" basis, subject to the Deed Restrictions, disclosure and a fulsome diligence process.

However, as a result of the Deed Restrictions, the Plan Administrator is prohibited from directly

transferring the Remaining Affordables other than to individuals who meet the income and

residency requirements.

        18.       Accordingly, the Plan Administrator seeks authority to dispose of the

Remaining Affordables through to the following process:

- Pursuant to sections 6.1(b)(xii), 7.6, 10.1 and 10.3 of the Plan, the Plan Administrator will transfer the Remaining Affordables, subject to the Deed Restrictions, to a Liquidating Trust (the "LBRR Liquidating Trust") established pursuant to Article X of the Plan.

- Notwithstanding Article X of the Plan, the related Liquidating Trust Interests (the "LBRR Liquidating Trust Interests") will remain with the Plan Administrator and will not be distributed to holders of Allowed Claims against LBRR.

- The Plan Administrator will then either (i) sell the LBRR Liquidating Trust Interests in a sale transaction with a commercial developer, or (ii) permit the LBRR Liquidating Trust to be merged into an entity owned or controlled by such commercial developer. The commercial developer will also be required to assume the Affordable Obligation.

- The LBRR Liquidating Trust and the LBRR Liquidating Trust Interests, as applicable, shall not be subject to the tax treatment and tax reporting provisions of sections 10.8 and 10.9 of the Plan.

- Any proceeds from the sale of the LBRR Liquidating Trust Interests or the merger of the LBRR Liquidating Trust will become assets of LBRR's Chapter 11 Estate, available for distribution to holders of Allowed Claims against LBRR with such distributions deemed to be in full satisfaction of any interest that such holders may otherwise have had in the LBRR Liquidating Trust Interests.

The remaining portion of the Property will be transferred to the purchaser or purchasers through

a traditional sale process, as described below in greater detail.

        19.       Article 10 of the Plan generally contemplates that Liquidating Trust

Interests will be distributed to holders of allowed claims against the relevant Chapter 11 Estate

and that distributions of Available Cash will be made on account of such Liquidating Trust

Interests on a semi-annual basis.  In order to facilitate the transfer of the Remaining Affordables

to a commercial developer (subject to the Deed Restrictions), the Plan Administrator is seeking

approval of a minor exception to those provisions of Article 10 of the Plan that relate to

distribution of the Liquidating Trust Interests.  Rather than distributing the LBRR Liquidating

Trust Interests to holders of allowed claims against LBRR, the Plan Administrator will transfer

(through sale or merger) the LBRR Liquidating Trust Interests to a third-party purchaser in

exchange for cash that will then be available for distribution to holders of Allowed Claims

against LBRR.[4]  From the perspective of the holders of allowed claims against LBRR, the

practical result of the Plan Administrator's proposal is that the consideration from the sale of the

Remaining Affordable will be paid out pursuant to Distributions under the Plan, rather than on

account of Liquidating Trust Interests.

          20.        Disposition of the Remaining Affordables, as described above, is expected

to protect the interests of all of the relevant parties.  LBRR will be able to monetize its interest in

the Remaining Affordables while mitigating any related litigation risk.  The purchaser will have

certainty that it has acquired insurable title to the Remaining Affordables.  As a condition to any

sale of LBRR's interest in the Planned Community or the entire Property, the Plan Administrator

will also require that the purchaser assume the Affordable Obligation, further ensuring that the

County's affordable housing-related objectives are not frustrated.  The County's interests,

therefore, will be enhanced because the Remaining Affordable will no longer be trapped in

LBRR's Chapter 11 Estate and will remain subject to the Deed Restrictions.  Finally, holders of

---

[4] For federal income tax purposes, it is anticipated that the sale of the LBRR Liquidating Trust Interests, or the merger of the LBRR Liquidating Trust, will be treated as if LBRR directly transferred the Remaining Affordables to the third party purchaser.  Accordingly, the provisions of sections 10.8 and 10.9 of the Plan, which deal with income tax treatment and reporting for conventional Liquidating Trusts, are not applicable and the LBRR Liquidating Trust and the LBRR Liquidating Trust Interests, as applicable, should not be subject to those sections.

US_ACTIVE:\44218731\12\58399.0003

Allowed Claims against LBHI will not be prejudiced by receiving Distributions under the Plan,

rather than LBRR Liquidating Trust Interests, because distributions under either scenario will not

be made prior to September 30, 2013.  In addition, Distributions made pursuant to the Plan are

less likely to implicate any of the federal income tax issues associated with beneficial ownership

of Liquidating Trust Interests.

### **The Sale Process**

21.    The Plan Administrator has already engaged Racebrook Marketing

Concepts LLC ("Racebrook") to act as broker for the sale of the Property.  In consultation with

Racebrook, the Plan Administrator expects to utilize the following marketing and sale

procedures (the "Sale Procedures"):

- Immediately following entry of an order by this Court approving the sale of the Property as provided herein, the Plan Administrator and Racebrook will establish an online data room containing all of the documents and other information required for purchasers to conduct diligence on the Property.  Access to the data room will be provided to any party who enters into an appropriate confidentiality agreement and the data room will remain open for a period of 45 days.  Additionally, throughout the diligence period, the Plan Administrator will periodically make certain of its employees and agents available to answer the questions of potential purchasers.

- Prior to the end of the diligence period, potential purchasers will be required to submit to Racebrook and the Plan Administrator indicative bids for the Recreation Facility, the Planned Community, and/or the entire Property.  Bids for the Property or the Planned Community will be required to include the acquisition of the LBRR Liquidating Trust Interests or the LBRR Liquidating Trust and the assumption of the Affordable Obligation.

- Based on the structure and composition of the indicative bids, the Plan Administrator and Racebrook will distribute one or more form purchase and sale agreements, containing all of the material terms of a potential transaction.  Potential purchasers will have 20 days to mark up the purchase and sale agreements and return them to the Plan Administrator. The Plan Administrator will select the highest or best offer taking into consideration both the purchase price and any deviations from the form purchase and sale agreement.

- The winning bidder or bidders will then have up to 10 business days to execute a final purchase and sale agreement and 30 days to close.  To the extent that a winning bidder or

11

bidders is unable to close, the Plan Administrator will proceed with the next highest or best offer.

22.    The Sale Procedures appropriately balance the necessity of providing a fulsome opportunity for the potential purchasers to assess the proposed transaction with the Plan Administrator's need to conclude the process in an expeditious manner.  Each potential purchaser will be given equal access to the information contained in the data room, an opportunity to raise specific questions with the Plan Administrator's employees and agents, and the chance to participate in a competitive bidding process.  As a result, the Plan Administrator believes that the Sale Procedures will maximize the value of LBRR's interest in the Property for the benefit of holders of Allowed Claims against LBRR.

### The Sale of the Property, As Described Herein, Is In the Best Interests of LBRR's Chapter 11 Estate

23.    As discussed above, there are a number of issues which, if not addressed, are likely to diminish the value of the Property and frustrate the Plan Administrator's goal of maximizing value for holders of Allowed Claims against LBRR.  Fortunately, each of these issues can easily be resolved by an order (i) clarifying that the sale of LBRR's interest in the Property will be free and clear of all Claims, liens, encumbrances, charges and other interests to the extent permitted by section 13.1 of the Plan and paragraph 39 of the Confirmation Order; and (ii) authorizing (a) the transfer of the Remaining Affordables into the LBRR Liquidating Trust, (b) the sale of the LBRR Liquidating Trust Interests by the Plan Administrator to a third-party purchaser or the merger of the LBRR Liquidating Trust into an entity owned or controlled by such third-party purchaser, and (c) the distribution of the proceeds of the sale or merger of the LBRR Liquidating Trust or the LBRR Liquidating Trust Interests (as applicable) to holders of Allowed Claims against LBRR in full satisfaction of any interest that such holders' would

otherwise have had in the LBRR Liquidating Trust Interests.  Such an order will not alter the

substantive rights of any party because holders of Claims, liens, encumbrances, charges and

other interests in the Property will receive the treatment provided for under the Plan and the

Remaining Affordables will remain subject to the Deed Restrictions.

24.    The Court has broad authority, pursuant to sections 105(a) and 1142(b) of

the Bankruptcy Code, over the property administered under the Plan and to issue orders

necessary to implement the provisions of the Plan and the Bankruptcy Code.  *See* 11 U.S.C.

§1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or

to join in the execution or delivery of any instrument required to effect a transfer of property

dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the

consummation of the plan"); 11 U.S.C. §105(a) ("The court may issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of this title."); *see also*

*Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,

7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain post-confirmation jurisdiction

to the extent provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R.

525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C.

§1142(b)… and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly

implemented.'") (internal citations omitted).

25.    Accordingly, the Plan Administrator respectfully requests entry of an

order, substantially in the form attached hereto as Exhibit A, (i) approving the sale of LBRR's

interest in the Property free and clear of all Claims, liens, encumbrances, charges and other

interests to the extent permitted by section 13.1 of the Plan and paragraph 39 of the Confirmation

Order; and (ii) notwithstanding Article X of the Plan, authorizing (a) the transfer of the

13

Remaining Affordables into the LBRR Liquidating Trust, (b) the sale of the LBRR Liquidating

Trust Interests by the Plan Administrator to a third-party purchaser or the merger of the LBRR

Liquidating Trust into an entity owned or controlled by such third-party purchaser, and (c) the

distribution of the proceeds of the sale or merger of the LBRR Liquidating Trust or the LBRR

Liquidating Trust Interests (as applicable) to holders of Allowed Claims against LBRR in full

satisfaction of any interest that such holders' would otherwise have had in the LBRR Liquidating

Trust Interests or the Property.

### Conclusion

26.     For the reasons set forth above, and to ensure implementation of LBRR's

Plan in a manner that maximizes returns to holders of Allowed Claims against LBRR, the Plan

Administrator requests that the Court grant the relief requested herein.

### Notice

27.     No trustee has been appointed in these chapter 11 cases.  The Plan

Administrator has served notice of this Motion in accordance with the procedures set forth in the

second amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases (ECF No. 9635) on (i) the Office of the U.S. Trustee for Region 2; (ii)

the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United

States Attorney for the Southern District of New York; (v) attorneys for the County; (vi)

attorneys for the Home Builders; (vii) attorneys for the Colorado Plaintiffs; and (viii) all parties

who have requested notice in these chapter 11 cases.  The Plan Administrator submits that no

other or further notice need be provided.

14

28.     No previous request for the relief sought herein has been made by the Plan

Administrator to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.

Dated:  April 9, 2013
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

15

**<u>Exhibit A</u>**
**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                   :

In re                                         :        **Chapter 11 Case No.**

                                                   :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        **08-13555 (JMP)**

                                                   :

                               **Debtors.**        :        **(Jointly Administered)**

                                                   :
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND
### 1142(b) OF THE BANKRUPTCY CODE IN AID OF EXECUTION
### OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LB ROSE RANCH LLC

Upon the motion, dated April 9, 2013, of Lehman Brothers Holdings Inc.

("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors

(the "Plan"), For Order In Aid of Execution of the Plan of LB Rose Ranch LLC (ECF No. [])

(the "Motion"),[1] all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance

with the procedures set forth in the amended order entered June 17, 2010 governing case

management and administrative procedures (ECF No. 9635) to (i) the United States Trustee for

Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv)

the United States Attorney for the Southern District of New York; (v) attorneys for the County;

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(vi) attorneys for the Home Builders; (vii) attorneys for the Colorado Plaintiffs; and (viii) all

parties who have requested notice in these chapter 11 cases; and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Motion is in the best interests of LBRR's Chapter 11 Estate, its creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is

ORDERED that the Motion is granted; and it is further

ORDERED that, any buyer of LBRR's interest in the Property shall take the

Property (or portion thereof) free and clear of all Claims, liens, encumbrances, charges and other

interests to the extent permitted by section 13.1 of the Plan and paragraph 39 of the Confirmation

Order; provided, however, that any such purchaser shall also be required to assume the

Affordable Obligation.  All such Claims, liens, encumbrances, charges and other interests, other

than the Affordable Obligation, shall attach to LBRR's Chapter 11 Estate and shall remain

subject to challenge by the Plan Administrator; and it is further

ORDERED that, notwithstanding Article X of the Plan, the Plan Administrator

shall be authorized to (i) transfer of the Remaining Affordables into the LBRR Liquidating Trust,

(ii) sell the LBRR Liquidating Trust Interests to a third-party purchaser or merge the LBRR

Liquidating Trust into an entity owned or controlled by such third-party purchaser with the

proceeds of such sale or merger becoming an asset of LBRR's Chapter 11 Estate, and (iii)

distribute of the proceeds of the sale or merger of the LBRR Liquidating Trust or the LBRR

Liquidating Trust Interests (as applicable) to holders of Allowed Claims against LBRR in full

satisfaction of any interest that such holders would otherwise have had in the LBRR Liquidating

3

Trust Interests; provided, however, that nothing contained herein shall serve to abrogate the

Deed Restrictions in any way and, following the consummation of the transactions described

herein, the Remaining Affordables shall continue to be subject to the Deed Restrictions; and it is

further

ORDERED that the LBRR Liquidating Trust and the LBRR Liquidating Trust

Interests, as applicable, shall not be subject to the tax treatment and tax reporting provisions of

sections 10.8 and 10.9 of the Plan; and it is further

ORDERED that, with respect to any transaction consummated pursuant to this

Order, including, without limitation, any sale of the Property (or any portion thereof), this Order

shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and a

transaction consummated pursuant to this Order shall be binding upon and shall govern the acts

of all persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the property sold

pursuant to this Order, including without limitation, all filing agents, filing officers, title agents,

title companies, recorders of mortgages, recorders of deeds, administrative agencies,

governmental departments, secretaries of state, and federal, state, and local officials, and each of

such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of

such transfer of title and shall rely upon this Order in consummating the transactions

contemplated hereby; and it is further

US_ACTIVE:\44218731\12\58399.0003

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: April __, 2013
     New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\44218731\12\58399.0003