WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Christopher J. Cox

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x

**DECLARATION OF LAWRENCE BRANDMAN**
**IN SUPPORT OF MOTION PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AND SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL**
**OF PARTIAL SETTLEMENT AGREEMENT RELATING TO PEBBLE CREEK**
**LCDO 2007-3, LTD. CREDIT DEFAULT SWAP AGREEMENT AND INDENTURE**

Pursuant to 28 U.S.C. § 1746, I, Lawrence Brandman, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge based on my personal experience, my review of business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), Lehman Brothers Special Financing Inc. ("LBSF"), and/or certain of their affiliates (collectively, the "Chapter 11

Estates"), and/or my consultation with other employees of and advisors to the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2.  I submit this Declaration in support of the *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedures and Section 105(a) of the Bankruptcy Code for Approval of Partial Settlement Agreement Relating to Pebble Creek LCDO 2007-3, Ltd. Credit Default Swap Agreement and Indenture*, dated March 8, 2013 [ECF No. 35813] (the "Motion").[1]

3.  I am Managing Director, Derivatives Legal, Head of Bankruptcy Strategic Advisory with LBHI. One of my primary areas of responsibility is managing the Chapter 11 Estates' mediations relating to derivatives transactions. I also supervise the management of a portfolio of the Chapter 11 Estates' derivatives transactions, including with counterparties that are special purpose entities. In those roles I have independently reviewed, have become familiar with, and have personal knowledge regarding many derivatives transactions that the Chapter 11 Estates entered into before their bankruptcies, including the transactions that are the subject of the Motion. I have been the primary representative for the Chapter 11 Estates in connection with the matters set forth in the Motion, including for the ADR process and the negotiations that resulted in the entry of the Settlement Agreement.

4.  I am thus fully familiar with the facts underlying the Motion, which I approved prior to its filing. I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

### The Credit Default Swap Agreement and Indenture

5.  It is my understanding that LBSF and Pebble Creek LCDO 2007-3, Ltd., as Issuer (the "Issuer"), entered into a credit default swap transaction (the "Transaction")

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

pursuant to a 1992 form ISDA Master Agreement, dated as of July 19, 2007 (the "ISDA Master Agreement"), a schedule, dated July 19, 2007 (the "Schedule"), and a confirmation, dated July 19, 2007 (the "Confirmation"). LBHI executed a guarantee, dated as of July 19, 2007 (the "Guarantee" and, together with the ISDA Master Agreement, Schedule, and Confirmation, the "Credit Default Swap Agreement")[2] of LBSF's obligations under the ISDA Master Agreement, Schedule and Confirmation.

6. It is also my understanding that under the Credit Default Swap Agreement, LBSF agreed to make periodic payments to the Issuer in exchange for the Issuer's promise to make payments to LBSF in respect of losses incurred in respect of certain specified reference obligations. In effect, LBSF, as the "Swap Counterparty," purchased protection from the Issuer, which sold protection on the creditworthiness of the obligations referenced in the Credit Default Swap Agreement.

7. It is my further understanding that the Issuer issued various classes of notes (the "Notes") under the Indenture and preference shares under a shares paying agency agreement (the "Preference Shares" and, together with the Notes, the "Securities"). The Notes were secured by a pool of collateral (the "Collateral") that also secured the Credit Default Swap Agreement. Through a series of note purchases, LBSF is now both a holder of certain of the notes and the Swap Counterparty under the Credit Default Swap Agreement (in such latter capacity, the "Swap Counterparty"). The Issuer pledged the Collateral to the Trustee for the benefit and security of the holders of the Notes (the "Noteholders"), which now include LBSF, and to LBSF, in its capacity as Swap Counterparty. The Trustee continues to hold the Collateral

---

[2] Copies of the Credit Default Swap Agreement and the Indenture are attached to the Motion as Exhibits "A" and "B," respectively.

3

US_ACTIVE:\44227016\3\58399.0008

under the Indenture for the benefit of the holders of the Notes (including LBSF) and LBSF as Swap Counterparty.

8. I understand that under the Granting Clause of the Indenture, the Issuer granted to the Trustee, for the benefit and security of the secured parties, all of its right, title and interest, whether now owned or hereafter acquired, in, to and under, *inter alia*, the Issuer's rights under the Credit Default Swap Agreement, the Collateral, and substantially all other assets of the Issuer.

9. It is my understanding that under the terms of the Indenture, the Trustee applies payment proceeds received generally in accordance with a "waterfall" provision. *See* Indenture § 11.1. Section 11.1(B)(i) clause "third" of the Indenture provides that a termination payment owed to LBSF as Swap Counterparty will be paid in advance of any distributions to Noteholders unless, *inter alia*, LBSF is the defaulting party under the Transaction. *See id.* § 11.1(B)(i). Under clause "second" of Section 11.1(B)(xv), if, *inter alia*, LBSF is the defaulting party under the Transaction, the termination payment owed to LBSF is paid after the Noteholders and before the holders of Preference Shares. *See id.* § 11.1(B)(xiv). As a result, Section 11.1(B)(i) clause "third" and Section 11.1(B)(xv) clause "second" of the Indenture (the "Waterfall Provisions") purport to provide that LBSF will receive termination payments before any distributions are made to Noteholders unless, *inter alia*, LBSF is the defaulting party under the Transaction.

### The Dispute

10. Since the Commencement Date, neither LBSF as Swap Counterparty nor the Trustee has paid any amounts that have become due under the Indenture and the Credit Default Swap Agreement. On November 28, 2008, the Issuer sent to LBSF a "Notice of Early Termination" which terminated the Transaction as of November 28, 2008. On November 25,

4

US_ACTIVE:\44227016\3\58399.0008

2008, the Trustee received a letter from LBSF's counsel advising, *inter alia*, that (a) any action taken to exercise remedies with respect to the Notes would violate the automatic stay and, therefore, any actions to make distributions to Noteholders would violate the stay, and (b) any provision subordinating any termination payment due LBSF would be unenforceable. As a result of LBSF's dispute regarding, among other things, the enforceability of the Waterfall Provisions (the "Payment Dispute"), neither party to the Credit Default Swap Agreement has paid any amounts (including termination payments) that became due to the other party on or after November 28, 2008.

11. On April 20, 2010, LBSF commenced Derivatives ADR No. 157 by serving an ADR Notice upon the Trustee and the Issuer pursuant to the ADR Procedures Order. On June 4, 2010, the Trustee served an ADR Response upon LBSF as required by the ADR Procedures Order.

12. On September 14, 2010, LBSF filed a complaint against, among others, the Trustee and the Issuer. *See* Adversary Proceeding No. 10-03542-JMP (the "Litigation"). At issue in Derivatives ADR No. 157 and in the Litigation is the Payment Dispute, including questions as to the proper interpretation of the Credit Default Swap Agreement and the Indenture. The Litigation relates to the instant Payment Dispute among the Parties, as well as other similar disputes involving other issuers and trustees.

13. In the Litigation, LBSF seeks a declaratory judgment that provisions purporting to modify LBSF's economic rights to a termination payment premised on the bankruptcy filing of either LBHI or LBSF constitute unenforceable *ipso facto* clauses that inappropriately modify a debtor's interest in property, in violation of sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code. LBSF also seeks a declaratory judgment that effectuation of

the Waterfall Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy Code because it involves an improper exercise of control over property of LBSF's estate. In the alternative, LBSF seeks a declaratory judgment that, if the Waterfall Provisions ultimately are found to be enforceable in whole or in part, they constitute either (i) a preferential transfer of an interest of LBSF in property that may be avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBSF's estate under section 551 of the Bankruptcy Code; (ii) a constructive fraudulent transfer of an interest of LBSF in property that may be avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBSF's estate under section 551 of the Bankruptcy Code; or (iii) an unauthorized postpetition transfer of property of LBSF's estate that may be avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBSF's estate under section 551 of the Bankruptcy Code. The positions advanced by LBSF in the Litigation are not those of the Trustee.

14.     On October 20, 2010, the Court issued the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [ECF No. 12199], thereby staying the Litigation, to give parties to this and other similar actions time to attempt to resolve their disputes (the "Stay"). I have also been informed that the Stay has been extended, most recently to July 20, 2013, pursuant to the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated February 13, 2013 [ECF No. 34697]. Accordingly, as a result of the Stay, the Issuer and the Trustee have not answered or otherwise moved for any relief in the Litigation.

15. On April 1, 2011, LBSF submitted an SPV Derivatives ADR Election pursuant to which LBSF recommenced the ADR process under the SPV ADR Procedures Order. The Trustee served an amended ADR Response on June 13, 2011, and LBSF served its ADR Reply on July 5, 2011. LBSF and the Trustee participated in mediation pursuant to the ADR process on December 7, 2012. At various junctures following the commencement of the Litigation and through and including the mediation, LBSF and the Trustee have engaged in settlement discussions.

16. I understand that throughout the course of its settlement negotiations with LBSF and its participation in the Litigation, the Trustee has made numerous attempts to contact Noteholders and holders of Preference Shares for direction regarding the Payment Dispute and the application of proceeds from the sale of the Collateral. However, with limited exceptions, Noteholders and holders of Preference Shares have not adequately responded to the Trustee's communications. As a result, the Trustee has advised LBSF that it is prepared to enter into the Settlement Agreement, provided the Court approves of the terms of the Settlement Agreement pursuant to the terms of Bankruptcy Rule 9019. Entry of an order by this Court, in the form annexed to the Motion, is a condition precedent to the effectiveness of the Settlement Agreement.

### The Settlement Agreement[3]

17. The Settlement Agreement compromises certain of the legal disputes between the Parties.[4] Pursuant to the Settlement Agreement, upon its effective date, the Issuer

---

[3] In keeping with the confidentiality provisions of the Parties' partial settlement, and due to LBHI's and LBSF's desire to keep the economic terms of the settlement confidential, the Settlement Agreement was not included as an exhibit to the Motion.

[4] The descriptions of documents set forth herein are being provided as summaries only. In the case of an inconsistency between the summary herein and the documents, the terms of the documents shall control.

7

and the Trustee shall take such actions as shall be necessary to cause certain assets held in respect of the Collateral to be redeemed or otherwise liquidated, and to cause the net proceeds thereof to be deposited with the Trustee (the "Investment Proceeds"). The Trustee shall distribute and apply the Investment Proceeds, as well as certain other amounts as set forth in the Settlement Agreement, in accordance with the order, priority and procedures set forth in the Settlement Agreement. Specifically, the Trustee is authorized to: (a) place certain funds in a Reserve Account, which the Trustee may use for enumerated fees and expenses, (b) place an amount into the Escrow Account to be used to satisfy the claims of Noteholders other than LBSF, and (c) pay the remaining amount to LBSF upon LBSF's delivery of its Notes to the Trustee. LBSF retains all rights as Noteholder or Swap Counterparty except as otherwise explicitly set forth in the Settlement Agreement, and, to the extent that LBSF subsequently purchases Notes that it does not currently hold, commensurate *pro rata* amounts will be deducted from the Escrow Amount and paid to LBSF. Distribution of any remaining Escrow Amount and any remaining Reserve Amount to LBSF will be subject to certain conditions set forth in the Settlement Agreement.

18.  LBSF, solely in its capacity as Noteholder, agrees not to assert that it is entitled to be paid on a senior or *pari passu* basis with the Notes that it does not hold (but LBSF reserves the right to assert that it is entitled to be paid amounts owing under the Notes it owns on a junior basis to the Notes it does not own and in an amount not to exceed the lesser of (a) the unpaid amount of principal and interest due on the Notes that LBSF owns (after taking into account the Settlement Payment or applicable Subsequent Settlement Payment, as the case may be, to the extent any such payment is deemed to be a payment under the Notes that LBSF owns, as the case may be), or (b) the then remaining Escrow Amount).

US_ACTIVE:\44227016\3\58399.0008

19. LBSF and the Plan Administrator acknowledge and agree that they, and any agents and assigns thereof, as applicable, will only seek payment for damages and other relief, including interest thereon, with respect to or in connection with the Transaction (including, without limitation, any termination payment), the Notes, the Preference Shares, the Indenture and/or the Credit Default Swap Agreement in the adversary proceeding, *Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, et al.*, Adversary Proceeding No. 10-3542 (JMP), pending in the United States Bankruptcy Court for the Southern District of New York, in an aggregate amount not greater than the then remaining Escrow Amount.

### **The Partial Settlement Is in LBSF's Best Interests and Should Be Approved**

20. The partial settlement will benefit LBSF and its creditors by allowing LBSF to capture a substantial amount of the value of the Transaction and the Notes that it owns for its estate. Furthermore, the use of the Court's equitable authority is justified and appropriate. First, LBSF is entitled to the Settlement Amount either in its capacity as Swap Counterparty or in its capacity as Noteholder and, as a result, payment of the Settlement Amount to LBSF is appropriate regardless of the outcome of the Payment Dispute. Second, the Settlement Agreement protects the interests of other Noteholders by providing for the reservation of the Escrow Amount, which the Plan Administrator and LBSF believe is sufficient to pay the claims of the Noteholders other than LBSF, and the Reserve Amount, which the Trustee may use for fees and expenses as enumerated in the Settlement Agreement. Third, regardless of the outcome of the Payment Dispute, the payment rights of the holders of Preference Shares will be subordinated to those of both the Noteholders and LBSF, as Swap Counterparty; as a result, the holders of Preference Shares should be indifferent to the approval of the Settlement Agreement because they will not receive a payment under the waterfall under any scenario. Moreover, any

interested parties that may object to the terms of the Settlement Agreement will have the opportunity to lodge an objection with and be heard by this Court.

21. The partial settlement will not resolve the Payment Dispute: LBSF retains the right to maintain its positions in respect of the Payment Dispute in the Litigation or elsewhere, subject to the limitations as to the amount of its recovery set forth in the Settlement Agreement. Regardless, for the reasons set forth above, I and my colleagues involved in the management of the Chapter 11 Estates, as well as counsel to the Chapter 11 Estates, have concluded, in our considered business judgment, that the compromises set forth in the Settlement Agreement are "fair and equitable," are well within the "range of reasonableness," and are in the best interests of LBSF's estate and its creditors. We believe the Settlement Agreement was entered into in good faith and negotiated at arm's length. Therefore, the Motion, which seeks approval of the Settlement Agreement, should be granted.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 10th day of April 2013.

/s/ Lawrence Brandman
Lawrence Brandman

US_ACTIVE:\44227016\3\58399.0008