**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                 :

| | |
|---|---|
| **In re** | : **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : **08-13555 (JMP)** |
| | : |
| **Debtors.** | : **(Jointly Administered)** |
| | : |

-------------------------------------------------------------------x

**DECLARATION OF JEFFREY FITTS**
**IN SUPPORT OF PLAN ADMINISTRATOR'S MOTION PURSUANT TO SECTIONS**
**105(a) AND 1142(b) OF THE BANKRUPTCY CODE FOR ORDER IN AID OF EXECUTION**
<u>**OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LB ROSE RANCH LLC**</u>

Pursuant to 28 U.S.C. § 1746, I, Jeffrey Fitts, declare:

1.      I am over the age of 18 years and make these statements of my own personal knowledge based on my personal experience, my review of business records of Lehman Brothers Holdings Inc. ("<u>LBHI</u>" or the "<u>Plan Administrator</u>"), LB Rose Ranch LLC ("<u>LBRR</u>"), and/or certain of their affiliates (collectively, the "<u>Chapter 11 Estates</u>"), and/or my consultation with other employees of and advisors to the Chapter 11 Estates.  If called to testify, I could testify to the truth of the matters set forth herein.

2.      I submit this Declaration in support of the *Plan Administrator's Motion Pursuant to Sections 105(a) and 1142(b) of the Bankruptcy Code for An Order In Aid of Execution of the Modified Third Amended Chapter 11 Plan of LB Rose Ranch LLC*, dated April 9, 2013 (ECF No. 36423) (the "<u>Motion</u>").[1]

3.      I am a Managing Director with Alvarez & Marsal Real Estate Advisory Services ("<u>A&M</u>").  Since 1989 I have been assisting insolvent and troubled companies, with a

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

focus on operational and financial restructuring efforts.  Prior to joining A&M, I was a Managing

Director with GE Commercial Finance ("GE"), where I led GE's Distressed Debt and

Alternative Investment Group and managed complex distressed credits.  Before joining GE, I

was with the Corporate Workout Division (IRM) of Citicorp, where I spent three years managing

investment grade and middle market corporate workouts.  I began my career in 1990 as a

workout officer and, later, an asset manager with Citicorp Real Estate, where I managed more

than $1 billion of office, retail, and industrial projects.  I received a bachelor's degree from the

University of Delaware in 1988.

4.      I was assigned to the representation of Lehman in September 2008.  I

currently serve as the Head of Lehman's real estate group (the "Real Estate Group").  My

primary responsibility includes the day-to-day management and oversight of the Real Estate

Group's portfolio, including management and oversight of the real estate, real estate finance and

related activities that are the subject of the Motion and this Declaration.  I am a member of the

Real Estate Group's Investment Committee, which is charged with approving certain of the Real

Estate Group's investment decisions.

5.      I have knowledge of the facts and representations set forth in the Motion

regarding the proposed sale of LBRR's interest in the Property.  On behalf of the Plan

Administrator, I was directly involved in, and also supervised members of the Real Estate Group

who participated in, the development of various strategies for monetizing LBRR's assets,

including the transaction that is the subject of the Motion.  I have reviewed the Motion and it

accurately reflects the foregoing.

6.      I understand that, many years before the Commencement Date, LBRR

took ownership of the Property through the exercise of its remedies as a secured creditor.  The

2

Property is primarily comprised of the Recreation Facility and the Planned Community.  The

Recreation Facility includes an 18-hole golf course, a small pro shop with a snack bar, a

partially-completed restaurant, a recreation center with a swimming pool, two tennis courts, a

basketball court, cart storage and a maintenance facility.

7.       The Planned Community is zoned for more than 300 individual residential

building lots and was intended to have been built in three phases.  The infrastructure (roads,

utility connections, etc.) was completed for the first two phases and partially completed for the

third phase.  LBRR generally contracted with the Home Builders for the sale of the lots and the

Home Builders thereafter entered into sales contracts with the Individual Purchasers for the

purchase of the lots and the construction of the houses.  Phase I, which consists of 82 lots, is

complete and all of the Phase I lots and houses have been sold to individual owners.  Of the 173

lots and houses that comprise Phase II, 116 have also been sold to private owners.  None of the

61 lots in Phase III have been developed or sold.

8.       In connection with obtaining authorization for the development of the

Planned Community and the Recreation Facility from the County, I understand that LBRR's

predecessor agreed to provide, either on the Property or elsewhere in Garfield County, 30

residences that would be earmarked for affordable housing.  Purchasers of these affordable

housing units must be individuals who meet income and residency restrictions, as determined by

the County.  Additionally, I understand that LBRR agreed that the initial transfer and all

subsequent transfers of these properties would be subject to the Deed Restrictions, which are

intended to ensure that the properties continue to fulfill the County's goal of maintaining the

stock of affordable housing.  LBRR engaged one of the Home Builders to construct 24

affordable housing units on Phase II lots owned by LBRR in the Planned Community.  LBRR

3

has conveyed 17 of such affordable housing units to qualifying purchasers, continues to hold title

to the 7 Unsold Affordables and retains the Affordable Obligation, which requires LBRR to

provide 6 additional affordable housing units if and when the lots in Phase III are developed and

sold.

9.    Throughout the Chapter 11 Cases, LBRR and LBHI, as Plan

Administrator, have been evaluating various options for monetizing the Property so as to fund

Distributions to holders of Allowed Claims against LBRR.  As described in the Motion, this

process has been complicated by certain disputes among LBRR, the Home Builders and the

Individual Purchasers.  Further, the Deed Restrictions and the Affordable Obligations have added

an additional layer of complexity to this process by limiting the Plan Administrator's options

with respect to identifying potential purchasers and structuring a sale transaction.

10.    I understand from other members of the Real Estate Group that parties

interested in acquiring the Property are concerned about the disputes among LBRR, the

Individual Purchasers and the Home Builders.  I believe that these concerns can largely be

addressed by an order of this Court clarifying that all of the assets of LBRR's Chapter 11 Estate,

including the Property, have vested in LBRR free and clear of all Claims, liens, encumbrances,

charges and other interests that existed as of the Effective Date and that any subsequent transfer

of the Property by LBRR to a third party purchaser will be free and clear of all such interests.

11.    The Plan Administrator believes that the best way for LBRR to dispose of

the Remaining Affordables is to transfer them to a commercial developer on an "as is" basis,

subject to the Deed Restrictions, disclosure and a fulsome diligence process.  However, the Plan

Administrator is currently precluded from effectuating such a transfer by the Deed Restrictions,

4

US_ACTIVE:\44234488\6\58399.0003

which require that any transferee be an individual who meets the income and residency

requirements.

12.    In order to address this issue, the Plan Administrator proposes to dispose

of the Remaining Affordables through to the following process:

- Pursuant to sections 6.1(b)(xii), 7.6, 10.1 and 10.3 of the Plan, the Plan Administrator will transfer the Remaining Affordables, subject to the Deed Restrictions, to a Liquidating Trust (the "LBRR Liquidating Trust") established pursuant to Article X of the Plan.

- Notwithstanding Article X of the Plan, the related Liquidating Trust Interests (the "LBRR Liquidating Trust Interests") will remain with the Plan Administrator and will not be distributed to holders of Allowed Claims against LBRR.

- The Plan Administrator will then either (i) sell the LBRR Liquidating Trust Interests in a sale transaction with a commercial developer, or (ii) permit the LBRR Liquidating Trust to be merged into an entity owned or controlled by such commercial developer.  The commercial developer will also be required to assume the Affordable Obligation.

- The LBRR Liquidating Trust and the LBRR Liquidating Trust Interests, as applicable, shall not be subject to the tax treatment and tax reporting provisions of sections 10.8 and 10.9 of the Plan.

- Any proceeds from the sale of the LBRR Liquidating Trust Interests or the merger of the LBRR Liquidating Trust will become assets of LBRR's Chapter 11 Estate, available for distribution to holders of Allowed Claims against LBRR with such distributions deemed to be in full satisfaction of any interest that such holders may otherwise have had in the LBRR Liquidating Trust Interests.

The remaining portion of the Property will be transferred to the purchaser or purchasers through

a traditional sale process.

13.    In order to manage this process as efficiently as possible, the Plan

Administrator expects to utilize marketing and sale procedures that generally accord with the

following outline, as modified at the discretion of the Plan Administrator:

- Immediately following entry of an order by this Court approving the sale of the Property as provided in the Motion, the Plan Administrator and its broker will establish an online data room containing all of the documents and other information required for purchasers to conduct diligence on the Property.  Access

5

to the data room will be provided to any party who enters into an appropriate confidentiality agreement and the data room will remain open for a period of 45 days.  Additionally, throughout the diligence period, the Plan Administrator will periodically make certain of its employees and agents available to answer the questions of potential purchasers.

- Prior to the end of the diligence period, potential purchasers will be required to submit to the Plan Administrator indicative bids for the Recreation Facility, the Planned Community, and/or the entire Property.  Bids for the Property or the Planned Community will be required to include the acquisition of the LBRR Liquidating Trust Interests or the LBRR Liquidating Trust and the assumption of the Affordable Obligation.

- Based on the structure and composition of the indicative bids, the Plan Administrator will distribute one or more form purchase and sale agreements, containing all of the material terms of a potential transaction.  Potential purchasers will have 20 days to mark up the purchase and sale agreements and return them to the Plan Administrator.  The Plan Administrator will select the highest or best offer taking into consideration both the purchase price and any deviations from the form purchase and sale agreement.

- The winning bidder or bidders will then have up to 10 business days to execute a final purchase and sale agreement and 30 days to close.  To the extent that the winning bidder or bidders is/are unable to close, the Plan Administrator will proceed with the next highest or best offer.

I believe that the transaction proposed by the Plan Administrator, as set forth in the Motion, will put LBRR in the best position to maximize its return on the Property while minimizing transactions costs and LBRR's exposure to future liability.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of April, 2013.

/s/ Jeffrey Fitts
Jeffrey Fitts

6

US_ACTIVE:\44234488\6\58399.0003