| | |
|---|---|
| **REED SMITH LLP**<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 521-5400<br>Facsimile:  (212) 521-5450<br>Eric A. Schaffer<br>Michael J. Venditto | **Hearing Date**: April 25, 2013 at 10:00 a.m.<br>**Response Deadline**: April 15, 2013 at 4:00 p.m. |

*Attorneys for The Bank of New York Mellon*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br><br>*Refers to*: ECF No. 36009 |

**RESPONSE OF THE BANK OF NEW YORK MELLON TO**
**PLAN ADMINISTRATOR'S FOUR HUNDRED FIFTH**
**OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

The Bank of New York Mellon ("BNYM") hereby responds to, and opposes, the Four Hundred Fifth Omnibus Objection to Claims (No Liability Claims) [ECF No. 36009] (the "Objection") filed by Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator, under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases and in support thereof, respectfully states as follows:

**I.      PRELIMINARY STATEMENT**

1.      In the Objection, LBHI seeks to disallow the proof of claim filed by BNYM on September 22, 2009 (Claim No. 28486) ("Claim 28486"), which is based on LBHI's written guarantee of certain obligations of non-Debtor affiliates of LBHI, specifically, Lehman Brothers Securities N.V., Lehman Brothers (Luxembourg) Equity Finance S.A. and Lehman Brothers Bankhaus AG (collectively, the "Non-Debtor Affiliates").  When LBHI filed its Chapter 11 case,

LBHI and its Non-Debtor Affiliates acknowledged that they were indebted to BNYM and its affiliates ("BNYM Entities") for unpaid compensation and unreimbursed costs and expenses in the amount of $234,000. The compensation and expenses arose in connection with services provided to LBHI and the Non-Debtor Affiliates by the BNYM Entities as Securities Agents under a certain Amended and Restated Master Warrant and Certificate Agreement dated as of August 8, 2007, among, *inter alia*, the Non-Debtor Affiliates, the BNYM Entities and LBHI, as guarantor (the "Agency Agreement").

2. In the Objection, LBHI does not deny that the Non-Debtor Affiliates are indebted to the BNYM Entities. Rather, LBHI now argues that it is not liable for this indebtedness because Section 5.3 of the Agency Agreement required the BNYM Entities to seek collection from the Non-Debtor Affiliates prior to collecting from LBHI and that the BNYM Entities have not sought collection from the Non-Debtor Affiliates. Objection, Exhibit A, at 1. As will be discussed below, the Objection is not supported by either the facts or applicable law.

3. As set forth herein, the Agency Agreement contained an unconditional guaranty by LBHI of the obligations that were indisputably owed by the Non-Debtor Affiliates and LBHI's argument is an attempt to impose a condition precedent that is factually inaccurate and inconsistent with express contractual language.

4. Accordingly, BNYM requests that the Court overrule LBHI's Objection and allow Claim 28486 as filed.

## II.    PROCEDURAL HISTORY

5. LBHI filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court on September 15, 2008 (the "Petition Date").

6.      On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (Docket No. 4271) (the "Bar Date Order").

7.      On September 22, 2009, pursuant to the Bar Date Order, BNYM timely filed Claim 28486. The addendum to the Proof of Claim described the underlying transaction documents and the basis for the claim. A copy of the proof of claim is annexed as Exhibit A.

8.      On October 20, 2009, BNYM submitted the documents supporting the Proof of Claim with the Guaranty Questionnaire that was required by the provisions of the Bar Date Order.

9.      On November 9, 2012, the Plan Administrator filed its Three Hundred Seventy-Third Objection to Claims (Insufficient Documentation Claims) (Docket No. 31996). According to the Plan Administrator, the Proof of Claim "should be disallowed and expunged" on the basis that it does "not include any supporting documentation." Shortly thereafter BNYM provided the Plan Administrator with supporting documentation in addition to the documentation that was submitted with the Guaranty Questionnaire. On March 6, 2013, the Plan Administrator withdrew its insufficient documentation objection to the Proof of Claim (Docket No. 35744).

10.     On March 15, 2013, the Plan Administrator filed the current Objection to the Proof of Claim. The Plan Administrator now asserts that the Proof of Claim "should be disallowed and expunged" on the basis that the Chapter 11 Estates "are not liable on any grounds" for the Proof of Claim.

### III.    FACTUAL BACKGROUND

11.     Prior to the Petition Date, LBHI and the Non-Debtor Affiliates conducted a Warrant and Certificate Programme (the "Programme"), pursuant to which the Non-Debtor

- 3 -

Affiliates would, from time to time, issue warrants or certificates, each of which were guaranteed by LBHI.

12. Pursuant to the Agency Agreement, the BNYM Entities agreed to act as agent of the Non-Debtor Affiliates. LBHI was a party to, and a guarantor under, the Agency Agreement.

13. In the Agency Agreement, each Non-Debtor Affiliate agreed to pay BNYM certain compensation for all services rendered by BNYM. In addition, each Non-Debtor Affiliate agreed to reimburse BNYM upon demand for all reasonable expenses, taxes and governmental charges and other charges of any kind and nature incurred in connection with the performance of its duties and to indemnify and hold harmless BNYM against any and all losses, liabilities and expenses (including reasonable counsel fees) incurred in the performance of its duties under. LBHI guaranteed that the Non-Debtor Affiliates would perform such obligations.

14. In the months immediately prior to the Petition Date, BNYM employees were in communication with representatives of LBHI and the Non-Debtor Affiliates concerning the amounts that were due to BNYM. During a series of email communications and telephone conversations, the parties resolved questions that LBHI raised about the outstanding balance that was due. Copies of relevant email communications that evidence BNYM's collection efforts are annexed as Exhibit B.

15. Eventually, on September 1, 2008, Ramin Guppy, Lehman's vice-president – capital markets prime services, sent an email message to Stacy Poindexter and Joseph Panepinto at BNYM confirming that he had received invoices totaling $244,000 but he was disputing four of the invoices which aggregated $10,000. His email closed by saying:

> In terms of settling the outstanding amount we therefore have received $244,000 of invoices but are disputing $ 10,000 (these 4) but can proceed to pay the remaining $ 234,000. Pls. advise where you will like this paid to? Internally it

- 4 -

will take some time to process as we have to log these individually but will commence as soon as we have details.

16. On September 3, 2008, Mr. Panepinto responded with an email stating:

Ramin:

We will review the 4 disputed items and get back to you promptly. You can wire the payment in the amount of $ 234,000 to:

The Bank of New York Mellon
ABA # 021-000-018
GLA 111-565
Cust A/C # 830171
Ref: Lehman Warrant Fees
Attn: Ryan Nufer

17. The anticipated wire payment did not arrive. Instead, of On September 10, 2008, Mr. Guppy sent another email to Mr. Panepinto as follows:

Hi Joseph,

Any luck with these 4? Also, can I confirm that going forward you will bill us quarterly on these?

18. The next day, Mr. Guppy sent a follow up inquiry, to which Mr. Panepinto responded with an email that same morning:

Dear Ramin:

I apologize for not getting back to you yesterday. Please disregard the four invoices you list in your email below. We will adjust our records accordingly.

* * *

In addition, kindly provide an update as to the status of the $234,000 payment.

19. Shortly after this final email exchange, LBHI filed its Chapter 11 petition. As a result of the filing, any further demand would have been both pointless and a violation of the automatic stay. *See* 11 U.S.C. § 362(a)

## IV.  ARGUMENT

### A.  The Proof of Claim is *Prima Facie* Evidence of the Validity and Amount of the Proof of Claim

20.   Claim 28486 was timely and properly filed by BNYM.  The Proof of Claim includes an addendum describing the underlying transaction documents and the basis for the claim.  BNYM also submitted documents supporting the Proof of Claim with the Guaranty Questionnaire.  A timely and properly filed proof of claim "constitutes *prima facie* evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  Therefore, Claim 28486 constitutes *prima facie* evidence of the validity and amount of the debt owed to BNYM.

### B.  The Plan Administrator Fails to Refute the *Prima Facie* Evidence of the Validity and Amount of the Proof of Claim

21.   The burden is upon LBHI, as the objecting party, to "come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted); *In re Spiegel, Inc.* No. 03-11540, 2007 WL 2456626, at *15 n.6 (Bankr. S.D.N.Y. 2007) (stating that "the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency").  An objecting party cannot merely rely on conclusory statements to overcome the presumption of *prima facie* validity.  Instead, the objecting party must produce sufficient rebuttal evidence in order to shift the burden of proof back to the claimant.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992).

22.   The Objection does not provide any evidence that refutes the *prima facie* validity of Claim 28486.  Rather, it posits an argument that is not supported by any factual detail.  The Plan Administrator merely makes the conclusory statement in an exhibit to the Objection that

BNYM was first required to collect from the Non-Debtor Affiliates prior to collecting from the Guarantor.[1]

23. As set forth above, however, BNYM did indeed attempt to collect and, after several months of this effort, it was expecting receipt of a wire transfer in the amount of $234,000 on or about the Petition Date. The Objection offers no evidence to dispute BNYM's collection efforts nor is there any suggestion that this collection effort was something less than what was required by the express terms of LBHI's written guaranties.

24. In addition to being factually unsupported, the Plan Administrator's Objection is contradicted by the plain language of Section 5.3 of the Agency Agreement. This language does not condition LBHI's obligations on BNYM's attempts to seek collection from the Non-Debtor Affiliates. Rather, LBHI is obligated to reimburse BNYM for all reasonable expenses, taxes, and other charges upon demand:

> Each Issuer agrees to pay each Securities Agent the compensation to be agreed upon with the Issuers for all services rendered by such Securities Agent. Each Issuer agrees to reimburse each Securities Agent upon demand for all reasonable expenses, taxes and governmental charges and other charges of any kind and nature incurred by such Securities Agent in connection with the performance of its duties under this Agreement, any Final Terms or any Prospectus and to indemnify and hold harmless each Securities Agent against any and all losses, liabilities and expenses (including reasonable counsel fees) incurred by such Securities Agent in the performance of its duties under this Agreement, any Final Terms or any Prospectus except to the extent such expenses, taxes and governmental charges or such losses, liabilities and expenses result from such Securities Agent's negligence, bad faith or breach of this Agreement. *To the extent that the Issuers fail to meet any of their obligations under this Clause 5.3, the Guarantor undertakes to each Securities Agent that it will perform and such obligation promptly upon written demand being served upon it by the relevant Securities Agent.* The provisions of this Clause 5.3 shall survive any termination of this Agreement.

---

[1] The penultimate language of Exhibit A to the Objection (at p. 1) merely states:

> Upon information and belief, the BNYM Entities have not sought collection from the Non-Debtor Affiliates for the compensation that forms the basis of this claim. Therefore, LBHI does not have any liability to the BNYM Entities for this claim.

(Emphasis added).²

25. Here, the evidence demonstrates that BNYM had made efforts to collect the unpaid compensation. BNYM had made written demand and LBHI had in fact represented that it would make payment before the commencement of its Chapter 11 case and the automatic stay intervened.

26. The Objection should, therefore, be overruled as contrary to the evidence and the express terms of LBHI's written undertaking to BNYM.

### V. CONCLUSION

For all of the foregoing reasons, BNYM respectfully requests that the Court (i) overrule the Objection as it relates to the Proof of Claim, (ii) or, alternatively, to the extent that the Court does not overrule the Objection, treat further proceedings relating to the Objection as a contested matter governed by Part VII of the Federal Rules of Bankruptcy Procedure, and (iii) grant other relief as the Court deems appropriate.

---

² Similarly, the guaranties executed by LBHI in connection with each of the note issues provided that "[s]ubject to Clause 7 below, the Guarantor hereby irrevocably guarantees to each Holder of each Security the prompt and complete payment of all obligations from time to time payable by the Issuer in respect of the relevant Security as and when the same become due and payable, whether at stated maturity, acceleration or otherwise, and accordingly undertakes to pay to such Holder, in the manner prescribed by the terms and conditions for payments by the Issuer of such Security and of the Securities Agency Agreement, any and every obligation which the Issuer is at any time liable to pay in respect of such Security and which the Issuer has failed to pay." None of these guaranty provisions imposes any pre-condition that BNYM must first attempt to collect from a Non-Debtor Affiliate before demanding payment from LBHI.

- 8 -

Dated: April 15, 2013
      New York, New York

                  Respectfully submitted,

                  **REED SMITH LLP**

                  By:   *s/ Michael J. Venditto*
                          Eric A. Shaffer
                          Michael J. Venditto
                          599 Lexington Avenue
                          New York, New York 10022
                          Telephone: (212) 521-5400
                          Facsimile:  (212) 521-5450

                  *Attorneys for The Bank of New York Mellon*