CADWALADER, WICKERSHAM & TAFT LLP
700 6th Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.

*Attorneys for Tom Wolf*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x
In re:                                                     :        Chapter 11
                                                           :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,     :        Case No. 08-13555 (JMP)
                                                           :
                    Debtors.                               :        (Jointly Administered)
---------------------------------------------------------------------- x

**RESPONSE OF TOM WOLF TO THE PLAN ADMINISTRATOR'S**
**FOUR HUNDRED FOURTH OMNIBUS OBJECTION TO CLAIMS**
**(EMPLOYMENT-RELATED CLAIMS)**

Tom Wolf (the "Claimant"), by and through his undersigned counsel, respectfully

submits this response to the *Four Hundred Fourth Omnibus Objection to Claims (Employment-*

*Related Claims)* (the "Objection") filed by Lehman Brothers Holdings Inc. ("LBHI"), as Plan

Administrator under the Modified Third Amended Plan of Lehman Brothers Holdings Inc. and

its Affiliated Debtors, and states as follows:

**PRELIMINARY STATEMENT**

1.      The Claimant's claim is based on his employment agreement with LBHI

(the "Lehman Employment Agreement"), which guaranteed that LBHI would pay the Claimant

an annual bonus and a retention award unless the Claimant was terminated by LBHI for

1

"Cause."[1] LBHI granted the Claimant the bonus and retention award to induce the Claimant to join LBHI following its acquisition of Eagle Energy Partners I, L.P. ("Eagle Energy"). Subsequently, Claimant was terminated by LBHI without "Cause" upon the closing of Lehman's asset sale to Barclays Capital Inc. ("Barclays"), which excluded the Eagle Energy business unit. At a minimum, the Claimant was terminated by LBHI without "Cause" upon the closing of Lehman's sale of Eagle Energy to EDF Trading North America, Inc. and EDF Trading North America, LLC (together, "EDF").

2.     The Plan Administrator's Objection seeks to disallow the Claimant's claim based on the incorrect assertion that the Claimant's damages were mitigated in full by an employment package that he received from EDF in connection with EDF's purchase of the Eagle Energy business. However, the Plan Administrator fails to recognize that the Claimant's Lehman Employment Agreement contains provisions that specify LBHI's liability following a discharge of the Claimant without "Cause." Under well-established law, such provisions are treated as liquidated damages provisions and are not subject to mitigation. Accordingly, the amounts owing to the Claimant under the Lehman Employment Agreement cannot be eliminated by amounts subsequently paid to the Claimant by EDF. LBHI remains liable to the Claimant for the amounts guaranteed under the Lehman Employment Agreement, and should be required to honor the deal that it struck.

## BACKGROUND

**A.     The Claimant's Lehman Employment Agreement.**

3.     On or about May 8, 2007, LBHI, Lehman Brothers Commodity Services, Inc. ("LBCS") and certain other Lehman Brothers entities acquired all of the limited and general

---

[1] A copy of the Lehman Employment Agreement is attached hereto as Exhibit A.

partnership interests of Eagle Energy, a provider of energy-asset management and power-marketing services based in Houston, Texas (such acquisition, the "Lehman Acquisition"). Shortly thereafter, on or about June 14, 2007, the Claimant entered into the Lehman Employment Agreement with LBHI, its parents, affiliates and subsidiaries (together, "Lehman" or the "Firm").[2] Pursuant to the terms of the Lehman Employment Agreement, Lehman granted the Claimant a minimum bonus in the amount of $250,000 (the "Guaranteed Bonus"), payable at the time the Firm pays its annual 2008 bonus distribution (on or about January 2009), and a retention award with an aggregate value of $810,000 (the "Retention Award"), which vested and became payable, in equal installments, on each of the first through the third anniversaries of the Lehman Acquisition closing date.[3]

4.    Pursuant to the terms of the Lehman Employment Agreement, Lehman was required to pay the Claimant the Guaranteed Bonus unless, among other things, the Claimant was terminated by Lehman without "Cause."[4]  Similarly, if the Claimant's employment was terminated by Lehman without "Cause" before the applicable Retention Award payment date, the Claimant would "continue to receive any unpaid Retention Award payments on the applicable payment date(s)."[5]  The Lehman Employment Agreement defines "Cause" as "(i) misconduct, (ii) breach of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily."[6]

---

[2] Lehman Employment Agreement, 1.
[3] Id. at 1-2.
[4] Id.
[5] Id. at 2.
[6] Id.

**B.      The Debtors' Bankruptcy and Sale of Assets to Barclays and EDF.**

5.      Beginning on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases in this Bankruptcy Court under chapter 11 of the Bankruptcy Code.

6.      On September 17, 2008, the Debtors filed a motion seeking court approval of the sale of certain assets owned by LBHI and Lehman Brothers Inc. ("LBI") to Barclays.[7] The Bankruptcy Court approved the Barclays sale on September 19, 2008.[8]  As of that point, Claimant no longer had the option of continued employment with LBHI.

7.      Subsequently, the Claimant received an email from Barclays offering the Claimant employment beginning on September 22, 2008.[9]  In order to accept, the Claimant was required to send an email to Barclays and attend work on September 22, 2008.[10]  However, the Claimant was informed that same day by Joe Gold, Co-Head of Commodities for Barclays, that the Eagle Energy business unit was not included in the Barclays sale, and that the LBHI employees assigned to the Eagle Energy business unit would not become employees of Barclays.[11]

8.      After it became evident that LBHI did not intend to transfer Eagle Energy to Barclays, certain LBHI employees assigned to the Eagle Energy business unit brokered a deal

---

[7] *Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets* [Dkt. No. 60].
[8] *Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases* [Dkt. No. 258].
[9] Email dated September 22, 2008 from Barclays, attached hereto as Exhibit B.
[10] Id.
[11] See emails dated September 22, 2008 among Joe Gold of Barclays and Chuck Watson of Lehman Brothers, attached hereto as Exhibit C.  The exclusion of the Eagle Energy business unit from the Barclays sale was confirmed in the *Executed Clarification Letter, Exhibit C to the Notice of Filing of Purchase Agreement Approved by Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (a) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (b) Assumption and Assignment of Executory Contracts and Unexpired Leases* [Dkt. No. 280].

4

with EDF to acquire Lehman's partnership interests in Eagle Energy.  On September 26, 2008,

LBHI and certain other Lehman Brothers entities entered into a purchase agreement (the

"Purchase Agreement") with EDF, pursuant to which the Lehman entities sold all of their

partnership interests in Eagle Energy to EDF.[12]  On October 1, 2008, the Debtors filed a motion

seeking court approval of the Purchase Agreement and authority to sell their partnership interests

in Eagle Energy to EDF free and clear of all liens, claims encumbrances and interests under

section 363(f) of the Bankruptcy Code.[13]  On October 17, 2008, this Court entered an order

approving the Purchase Agreement and authorizing the Debtors to sell their partnership interests

in Eagle Energy to EDF free and clear of all liens, claims, encumbrances and interests under

section 363(f) of the Bankruptcy Code.[14]  The Debtors' sale of their interests in Eagle Energy

closed on or about October 31, 2008 (such sale, the "EDF Sale").

### C.    The Claimant's Proof of Claim and the Plan Administrator's Objection.

9.    On September 8, 2009, the Claimant filed proof of claim number 10718

against LBHI (the "Claim").  The Claim is based on $250,000 in unpaid Guaranteed Bonus

payments and $540,000 in unpaid Retention Award payments due to the Claimant under the

terms of the Lehman Employment Agreement.[15]

10.    On March 15, 2013, LBHI, as Plan Administrator, filed the Objection to

the Claim, asserting that the Claim is based on compensation for which the liability of the

---

[12] See *The Debtors' Motion for Entry of an Order Pursuant to Sections 363 and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004, 6006 and 9019 Authorizing Lehman Brothers Holdings Inc. to (A) Enter Into a Partnership Interests Purchase Agreement, (B) Compromise and Release a Portion of the Intercompany Loan, and (C) Assign the Remainder of Such Intercompany Loan to Purchasers* [Dkt. No. 503].

[13] Id.

[14] See *Order Granting Debtors' Motion for Entry of an Order Pursuant to Sections 363 and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004, 6006 and 9019 Authorizing Lehman Brothers Holdings Inc. to (A) Enter Into a Partnership Interests Purchase Agreement, (B) Compromise and Release a Portion of the Intercompany Loan, and (C) Assign the Remainder of Such Intercompany Loan to Purchasers* [Dkt. No. 1126].

[15] The Claim was erroneously filed in the amount of $810,000, but Claimant is actually owed $790,000.  Claimant agrees to the reduction of his Claim from $810,000 to $790,000.

Chapter 11 Estates has been eliminated.[16]   In its Objection, the Plan Administrator asserts that

the Claimant received a compensation package from EDF for amounts that were more than the

damages asserted in the Claimant's Claim, and that the EDF compensation package has

mitigated the Claimant's damages in full.[17]   Essentially, the Plan Administrator argues that

because the Claimant received a compensation package from EDF,  the Chapter 11 Estates are no

longer liable for the Claimant's Guaranteed Bonus or Retention Award.

## ARGUMENT

11.     A properly filed proof of claim constitutes prima facie evidence of the

validity and amount of the claim.[18]   In order to overcome the prima facie validity of a claim, a

party objecting to the claim must present "evidence in equal force to the prima facie case . . .

which, if believed, would refute at least one of the allegations that is essential to the claim's legal

sufficiency."[19]   An objecting party cannot merely rely on conclusory statements to overcome the

presumption of prima facie validity.  Instead, the objecting party must produce sufficient rebuttal

evidence in order to shift the burden of proof back to the claimant.[20]

12.     In its Objection, the Plan Administrator fails to offer evidence that the

Chapter 11 Estates are not liable on the Claim.  To succeed on its argument, the Plan

Administrator must come forward with probative evidence that the Claimant's EDF

compensation package eliminated the Chapter 11 Estates' obligations to the Claimant under the

Lehman Employment Agreement.  However, the Plan Administrator has not offered any

evidence in support of its argument, because it cannot.

---

[16] Objection, ¶ 2.
[17] Id. at ¶ 14.
[18] See Fed. R. Bankr. P. 3001(f).
[19] In re Onieda, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992)).
[20] See Allegheny Int'l, 954 F.2d at 174.

13.    The Plan Administrator's Objection rests on the incorrect assertion that the

Claimant's damages for LBHI's breach of the Lehman Employment Agreement should be

reduced by income that the Claimant earned from EDF following his termination from LBHI.[21]

While mitigation of damage is a general rule of contract damages that applies in the employment

context,[22] the Plan Administrator ignores the fact that the Lehman Employment Agreement

contains provisions that establish the damages to be paid to the Claimant by LBHI in the event

that LBHI terminated the Claimant without "Cause."  Specifically, if the Claimant was

terminated without "Cause," LBHI remained liable to the Claimant for any unpaid Guaranteed

Bonus and Retention Award amounts.[23]  New York courts have found that if an employment

contract contains a specified damages amount, that amount "becomes fixed, and there is no

further inquiry to be made as to possible mitigation by subsequent employment."[24]  The cases

cited by the Plan Administrator in support of its argument that the Claimant's damages should be

reduced by future earnings are only applicable in the absence of any such damages provision.

14.    In Modern Deb, the seminal case on this issue under New York law, the

plaintiff's employment contract with Modern Deb provided that he would receive full

compensation and bonuses for a five year term if he was discharged without cause.[25]  The trial

court reduced the plaintiff's damages by the amount that the plaintiff earned from subsequent

employment, but the Appellate Division held that the reduction was improper and restored the

---

[21] See Objection, ¶ 11 (citing Sudal v. Computer Outsourcing Servs., Inc., 917 F.Supp. 1033 (S.D.N.Y. 1996); Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 22 (2d Cir. 1994); Ohanian v. Avis Rent-A-Car System, Inc., 779 F.2d 101, 110 (2d Cir. 1985); Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 74 (1966)).
[22] See, e.g., Cornell v. T.V. Dev. Corp., 17 N.Y.2d at 74.
[23] Lehman Employment Agreement, 1-2.
[24] Boyle v. Petrie Stores Corp., 518 N.Y.S.2d 854, 862 (N.Y. Sup. Ct. 1987); see also Malinowski v. Wall Street Source, Inc., 2011 WL 6019245 (S.D.N.Y. Dec. 2, 2011); Musman v. Modern Deb, Inc., 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1975).
[25] Modern Deb, 377 N.Y.S.2d at 19.

plaintiff's full damages award.[26]  In its decision, the Appellate Division held that the provision

establishing damages was "in essence a liquidated damages clause" that "fixes the exposure of

the employer following a discharge without cause and thus serves to remove such a case from the

ordinary rule requiring the employee to mitigate damages."[27]

15.    Modern Deb and its progeny are on all fours with the Claimant's case.

The Claimant was terminated by LBHI without "Cause" upon the closing of the Barclays sale on

September 19, 2008.  At a minimum, the Claimant was terminated by LBHI without "Cause"

upon the closing of the EDF Sale on October 31, 2008.  The Claimant's Lehman Employment

Agreement contains provisions establishing damages to be paid by LBHI in the event that the

Claimant was terminated without "Cause."  The Claimant's damages amount was fixed by the

parties, and as a result, mitigation of damages from subsequent employment income is not a

factor.  The Claimant is entitled to the full value of his Guaranteed Bonus and Retention Award

under the terms of the Lehman Employment Agreement, and LBHI should be required to honor

the Claimant's contractual rights.

16.    The Claimant reserves all rights, claims and defenses, including, without

limitation, the right to discovery in connection with the Plan Administrator's Objection.

## CONCLUSION

WHEREFORE, the Claimant respectfully requests that the Court (i) overrule the

Objection and allow Claim 10718 in the amount of $790,000, and (ii) grant such other and

further relief as this Court deems just and proper under the circumstances.

---

[26] Id.
[27] Id.

8

Dated: Washington, DC
April 15, 2013

CADWALADER, WICKERSHAM & TAFT LLP

/s/ Mark C. Ellenberg
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.
700 6th Street, NW
Washington, DC 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

*Attorneys for Tom Wolf*

# EXHIBIT A

# LEHMAN BROTHERS

6/14/2007

*By Hand*

Tom Wolf

Dear Tom:

In connection with the acquisition of Eagle Energy Parnters I, L.P. ("Eagle") contemplated by the Purchase Agreement, dated as of May 8, 2007, among Lehman Brothers Commodities Services Inc. and the sellers named therein (the "Purchase Agreement"), Eagle and Lehman Brothers Holdings Inc. (together with its parents, affiliates, and subsidiaries, "Lehman" or the "Firm") have agreed that you are key to the business of Eagle and, as such, Lehman and Eagle desire to provide you with an incentive to remain employed with Eagle or its successor in the acquistion through and after the closing date of the Purchase Agreement (the "Closing Date"). Accordingly, Lehman is pleased to offer you the opportunity to receive the compensation described in this letter, subject to the terms and conditions set forth below. Your eligibility to receive such compensation is conditioned on the Closing (as defined in the Purchase Agreement) of the Purchase Agreement, your continued employment with Eagle or its affiliates through the Closing Date, your execution of the "Non-Competition, Non-Solicitation and Non-Disparagement Agreement" and the "Confidentiality Agreement" attached hereto as **Exhibits A and B** (the "Covenant Agreements"), confirmation that you have satisfactorily met all of Lehman's pre-employment requirements, including the successful completion of a criminal background investigation, as well as other conditions set forth in this letter.

Effective as of the Closing Date, you will be employed by the Firm as a Marketer/Originator in the Commodities Business reporting initially to Cliff Hare. Your corporate title of Senior Vice President will be submitted for official approval by the Executive Committee of the Firm's Board of Directors as part of the next quarterly approval process following the Closing Date.

For the performance year 2007 (the Closing Date through November 30, 2007), performance year 2008 (December 1, 2007 through November 30, 2008) and performance year 2009 (December 1, 2008 through November 30, 2009) your compensation will be as follows:

- Annualized base salary of $175,000 per year.

- A minimum bonus in the amount of $166,667, less applicable deductions, payable at the time the Firm pays its annual 2007 bonus distribution (on or about January 31, 2008).

- A minimum bonus in the amount of $250,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (on or about January 31, 2009).

The foregoing salary will be paid for all periods of your active employment with the Firm in performance years 2007 and 2008. The minimum bonus amounts set forth above will be paid at

EXHIBIT A, P. 1

the times and in the amounts stated except that such bonuses will not be payable if, before the date of scheduled payment, you have breached any provision of the Covenant Agreements, or you have resigned your employment with the Firm for any reason or you have been terminated from the Firm with "Cause". For purposes of this letter, "Cause" means any of the following: (i) misconduct, (ii) breach of Tracker or Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amounts set forth above may be reduced in the event of an approved leave of absence during the applicable performance year. If, during your employment, you should die or become disabled (as defined in the Firm's Long Term Disability Program as then generally in effect and, for purposes of this offer letter, hereinafter referred to as "Disability") before bonuses are paid for performance year 2007 and 2008, your base salary payments will end (subject to salary continuation in the event of Disability) and you or your estate will be paid a pro-rata portion of the guaranteed minimum bonus for such performance year.

At the Firm's discretion, a portion of your 2007 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based awards) pursuant to the Firm's Equity Award Program as then generally in effect for employees with your position and corporate title. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, will be established by the Firm from time to time in its discretion.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. Your compensation for all periods after performance year 2008 will be determined at the Firm's discretion.

Provided you remain actively employed through the payment dates and have not breached any provision of the Covenant Agreements and subject to confirmation that you have satisfactorily met all of Lehman's pre-employment requirements, including the successful completion of a criminal background investigation, as well as other conditions set forth in this letter, the Firm will grant you a retention award with an aggregate value equivalent to $810,000 (the "Retention Award"). The Retention Award will vest and become payable in equal installments, less applicable tax withholding and other deductions, on each of the first through third anniversaries of the Closing Date. In the event your employment with the Firm ends as a result of your resignation for any reason or your termination by the Firm for Cause (as defined above) before the applicable payment date, you will not thereafter receive any further Retention Award payments. In the event your employment is terminated by Firm without Cause before the applicable payment date, you will continue to receive any unpaid Retention Award payments on the applicable payment date(s), provided you have not breached any provision of the Covenant Agreements. In the event your employment is terminated as a result of your death or "Disability" (which, for purposes of this retention award, will mean you are no longer actively working for the Firm and are receiving benefits under the Firm's Long-Term Disability Insurance Plan as in effect from time to time), you or your estate shall receive a lump sum cash payment equivalent to any unpaid portion of the Retention Award as soon as practicable following such termination. For purposes of the Firm's Equity Award Program the Retention Payments will not be considered part of your total compensation.

EXHIBIT A, P. 2

You will also be eligible to participate in the Firm's standard employee benefits program, which will be explained to you separately. Your participation in and coverage under the Firm's employee benefit and compensation programs shall take into account your prior service with Eagle.

Please understand that the terms and conditions of your employment by the Firm are governed by standard Firm policies. Among other things, this means that this offer is conditional upon confirmation that as of the Closing Date you have satisfactorily met all pre-employment requirements, including the successful completion of a criminal background investigation

While the foregoing compensation commitments will be honored on the terms outlined above, this offer letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason.

This letter, together with the Covenant Agreements, represent the complete agreement of the parties with respect to your employment with the Firm and, effective as of the closing of the Acquisition, supersedes all prior agreements (whether oral or in writing) between you and the Firm or Eagle or its affiliates. This offer of employment is conditional upon the closing of the Acquisition and your execution of the Covenant Agreements attached hereto as **Exhibits A and B**. In the event the Purchase Agreement is terminated, this letter and the Covenant Agreements will be void *ab initio* and of no further force or effect.

By your signature below, you agree that any controversies arising out of or relating to this letter or your employment by the Firm shall be submitted to and settled by arbitration pursuant to the rules as then in effect of the National Association of Securities Dealers or the New York Stock Exchange.

**[CONTINUED ON NEXT PAGE]**

Tom, we are delighted that you will continue to be a part of our organization. If you agree with the terms outlined in this letter, please sign this letter and the Covenant Agreements and return them to me. An additional copy of this letter is enclosed for your files.

Sincerely,

Mary Pat Archer
Managing Director
Fixed Income


Acceptance:

I accept the terms and conditions of this letter. Furthermore, I confirm that I am not aware of any circumstances which may result in me being unable to successfully satisfy the criminal background check requirements outlined in this letter.


_____     _____6/15/07_____
Signed                                                                Date

# **EXHIBIT B**



**Your Employment Offer - Message (Rich Text)**

File    Edit    View    Insert    Format    Tools    Actions    Form    Layout    Help

Reply | Reply to All

From:    Barclays Capital Employment Offer                                    Sent:    Mon 9/22/2008 10:07 PM
To:
Cc:
Subject:    Your Employment Offer

We are pleased to confirm our interest in having you join Barclays.  The transaction gained court approval early Saturday morning and will close on Monday. As a result we are offering you employment with Barclays to begin on Monday, September 22, 2008.

As a Barclays employee, you will continue to receive your current base salary or applicable commission based remuneration. In the next week or so, you will receive additional details concerning your employment if you work in an office outside the United States or if any special arrangements apply to your situation. Initially your medical and other health insurance arrangements will also be the same as they were with Lehman.  Over time, the benefits for Barclays and former Lehman employees will be coordinated.  You will receive information about other benefit programs in the near future.

Your acceptance of employment with Barclays will be indicated by your attendance at work on and after September 22, 2008.  In addition, in order to accept or decline the offer, it is necessary that you send an email to either acceptbarclaysoffer@lehman.com or declinebarclaysoffer@lehman.com.  You will be an "at will" employee of Barclays.  This means that either you or Barclays can end our employment relationship at any time, with or without any reason.  As an employee of Barclays, you will be required to comply with all applicable Barclays rules, regulations and policies including, but not limited to, confidentiality and other provisions.

Confidentiality of information is a cornerstone of our business.  Therefore, we must remind you that as an employee of Barclays you may not, directly or indirectly, disclose to anyone outside Barclays, except with Barclays' prior written consent, any confidential or proprietary information concerning Barclays including, without limitation, any information provided during the course of providing services to Barclays or, as part of the transition effort, to Lehman.  This restriction relates to confidential information and proprietary information, processes and trade secrets.  You also may not make use of any such information for your own purposes or for the benefit of anyone or any other entity other than Barclays.  These restrictions will not preclude you from discussing any matter concerning Barclays with any governmental, regulatory or self-regulatory agency if you are compelled to do so by subpoena or other regulatory authority.  By accepting employment with Barclays, you agree to abide by the confidentiality rules in this paragraph and to disclose to Barclays as soon as reasonably practical, all requests for information you are asked to provide by any such agency.

We at Barclays look forward to you joining the team.

Michael Evans

Managing Director,
Global Head of Human Resources for Barclays Capital

# EXHIBIT C

**Subject:**                              FW: Eagle Energy

-----Original Message-----
From: Joe.Gold@barclayscapital.com [mailto:Joe.Gold@barclayscapital.com]
Sent: Monday, September 22, 2008 8:37 PM
To: Watson, Chuck
Subject: RE: Eagle Energy

Chuck,

I am not sure if I am more embarrassed or angry.  The e-mails have still not been sent out.  Today, I have gone to Jonathan Hughes (General Counsel of Barcap), Jerry del Missier (President of Barcap) and Rich Ricci (acting President of Lehman Brothers Inc.).  They have all approved sending out the e-mails and moving the employees.  The legacy Lehman people agree.  Tracie Binkley (Head of HR?) confirmed this to me recently.  Sometime today, the people at Alvarez & Marsal got involved in the issue and somehow put a stop to the e-mail and offers of employment.  I can only assume that you peaked their interest because of your MOU and they wanted to make sure nothing good happens without them.
I cannot get them to return my call or find them in the Lehman building.
Here are the people that I am chasing:

Brian Marsal - decision maker - I don't have a number Jim Fogerty - mid level - (c)⬛⬛⬛⬛⬛⬛ Robert Hersham - junior - (o) 212-328-8514
                              (m)⬛⬛⬛⬛⬛⬛
Lehman building restructuring room - 212-526-9536

I am trying to give you money with nothing in return.  They don't seem to get that and will not engage with me.  They may engage with you because you represent a buyer of assets.  I will pick it up again in the morning.

Joe

-----Original Message-----
From: Watson, Chuck [mailto:chuck.watson@lehman.com]
Sent: Monday, September 22, 2008 5:33 PM
To: Watson, Chuck; Gold, Joe: Commodities (NYK)
Subject: RE: Eagle Energy

Still no response.

Chuck
Houston Phone: 281-781-0355
New York Phone: 212-526-5077

> _____
> From:        Watson, Chuck
> Sent: Monday, September 22, 2008 1:37 PM
> To:  'joe.gold@barcap.com'
> Subject:    FW: Eagle Energy
>
> Nothing received yet

1

>
>
> Chuck
> Houston Phone: 281-781-0355
> New York Phone: 212-526-5077
>
>
>
>
> _____
> From:       Watson, Chuck
> Sent: Monday, September 22, 2008 12:17 PM
> To:   'joe.gold@barcap.com'
> Subject:    Eagle Energy
>
> None of the Eagle employees have received any emails to indicate they
> have been included in the Barclays transfer. Please let me know what
> you know.
>
>
> Chuck Watson
> Chairman, Global Commodities
> Lehman Brothers
> 4700 West Sam Houston Parkway North, Suite 250 Houston, TX 77041
> Houston Phone: 281-781-0355 New York Phone: 212-526-5077
> Blackberry: 347-515-1152
> email: chuck.watson@lehman.com
>
>
>
>

_____

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Barclays. Any views or opinions presented are solely those of the author and do not necessarily represent those of Barclays. This e-mail is subject to terms available at the following link: www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the foregoing.  Barclays Capital is the investment banking division of Barclays Bank PLC, a company registered in England (number 1026167) with its registered office at 1 Churchill Place, London, E14 5HP.  This email may relate to or be sent from other members of the Barclays Group.

_____

*********************************************************************************

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any commodities, financial risk management products, or other physical or financial product or service, an official confirmation of any transaction, or an official statement of EDF Trading Limited, EDF Trading Markets Limited, EDF Trading North America, LLC, or any of the EDF Group family of companies.  Any views or opinions presented are solely those of the author and do not necessarily represent those of the foregoing entities.  EDF Trading Markets Limited is authorized and regulated by the Financial Services Authority.  VAT number: GB 735 5479 07.  EDF Trading Markets Limited and EDF Trading North America, LLC are members of the EDF Group of companies.  EDF Trading Markets Limited maintains its registered office at 80 Victoria Street, 3rd Floor, Cardinal Place, London, SW1E 5JL.  A Company registered in England No. 4255974.  EDF Trading North America, LLC is headquartered in the United States at 4700 W. Sam Houston Pkwy., Suite 250, Houston, TX  77041
*********************************************************************************

2