JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Jayant W. Tambe
Benjamin Rosenblum

*Attorneys for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
: 
In re: : Chapter 11
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.,* : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------X

**SUPPLEMENTAL FOUR HUNDRED SECOND OMNIBUS OBJECTION
TO CLAIMS 32395 AND 22671 (NO LIABILITY DERIVATIVES CLAIMS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), on behalf of itself as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), by and through its undersigned counsel, as and for its Supplemental Four Hundred Second Omnibus Objection to (i) claim 32395 (the "KG Claim") of Dr HC Tschira Beteiligungs GmbH & Co KG ("KG") and (ii) claim 22671 (the "Stiftung Claim") of Klaus Tschira Stiftung GGmbH ("Stiftung," together with KG, the "Claimants"), respectfully represents:

**INTRODUCTION**

1.  As set forth in the Objection, after a review of the Claimants' supporting documentation and LBHI's books and records, the Plan Administrator has determined that, based

NYI-4513708v1

on the fair, accurate, and reasonable values of the subject derivatives contracts and the provisions thereof, LBHI does not owe any amounts to the Claimants.

2.  The dispute arises out of guarantee claims filed against LBHI concerning two ISDA Master Agreements entered into between Lehman Brothers Finance SA – Netherlands Antilles branch ("Lehman Swiss") and each of the Claimants.  As agreed upon by the parties, all transactions under those two Master Agreements terminated automatically on September 15, 2008, upon the filing of LBHI's bankruptcy petition (the "Early Termination Date").  The plain language of the Master Agreements, as well as section 562 of the Bankruptcy Code, required Claimants to value their claims against LBHI as of the Early Termination Date.

3.  Notwithstanding this clear contractual and statutory mandate, the Claimants have valued their claims against LBHI as of October 16, 2008.  The Claimants accordingly have failed to state cognizable claims.  The claims must be disallowed and expunged.

## BACKGROUND OF THE STIFTUNG TRANSACTIONS

4.  The Stiftung Claim arises out of two variable forward transactions (the "Stiftung Transactions"), each referring to underlying shares of SAP AG ("SAP"), executed between Stiftung and Lehman Swiss.  The two Stiftung Transactions were governed by a single contract between Stiftung and Lehman Swiss, and that contract consisted of: (i) a Master Agreement, dated May 16, 2007 and amended on July 15, 2008 (the "Stiftung Master Agreement"), (ii) a Schedule, dated May 16, 2007 (the "Stiftung Schedule") that amended and supplemented the terms of the Stiftung Master Agreement, (iii) a Credit Support Annex, dated May 16, 2007 (the "Stiftung CSA") and (iv) the confirmations referenced below (collectively, the "Stiftung Agreements").  Part 4(h) of the Stiftung Schedule specified that the Stiftung Agreements "will be governed by and construed in accordance with the laws of England and Wales."

5.  Under the Stiftung Master Agreement, LBHI served as Credit Support Provider[1] to Lehman Swiss. In this capacity, LBHI issued a Restated Guarantee dated May 15, 2008 in favor of Stiftung (the "Stiftung Restated Guarantee").

6.  Each of the two Stiftung Transactions was further documented by a written confirmation. By a written confirmation dated May 23, 2007 and amended on June 18, 2007 (the "First Stiftung Confirmation"), Lehman Swiss purchased SAP shares from Stiftung on a forward basis. By a second written confirmation dated April 18, 2008 (the "Second Stiftung Confirmation"), Lehman Swiss sold SAP shares to Stiftung on a forward basis.

7.  As part of the Stiftung Transactions, Stiftung also entered into a master custody deed with Lehman Brothers International (Europe) ("LBIE") as custodian and Lehman Swiss as chargee, dated May 16, 2007 (the "Stiftung Custody Deed"). Pursuant to the Stiftung Custody Deed, Stiftung pledged 27 million ordinary shares of SAP to LBIE as custodian for Lehman Swiss as chargee (the "Stiftung Pledged Shares"). Stiftung also had the right under the First Stiftung Confirmation to exchange the Stiftung Pledged Shares for "other collateral . . . which may include cash and other assets."

## BACKGROUND OF THE KG TRANSACTIONS

8.  The KG Claim arises out of two variable forward transactions (the "KG Transactions," and with the Stiftung Transactions, the "Transactions"), each referring to underlying shares of SAP, executed between KG and Lehman Swiss. The two KG Transactions

---

[1] All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the respective agreements governing the Stiftung Transactions and/or KG Transactions. The operative agreements for each claimant were submitted in connection with such claimant's Guarantee Questionnaire and, as such, are part of the record before this Court pursuant to the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated April 19, 2010 [ECF No. 8474].

were governed by a single contract between KG and Lehman Swiss, and that contract consisted of: (i) a Master Agreement, dated May 16, 2007 and amended on July 15, 2008 (the "KG Master Agreement," and together with the Stiftung Master Agreement, the "Master Agreements"), (ii) a Schedule, dated May 16, 2007 (the "KG Schedule," and together with the Stiftung Schedule, the "Schedules") that amended and supplemented the terms of the KG Master Agreement, (iii) a Credit Support Annex, dated May 16, 2007 (the "KG CSA") and (iv) the confirmations referenced below (collectively, the "KG Agreements"). Part 4(h) of the KG Schedule specified that the KG Agreements "will be governed by and construed in accordance with the laws of England and Wales."

9. Under the KG Master Agreement, LBHI served as Credit Support Provider to Lehman Swiss. In this capacity, LBHI issued a Restated Guarantee dated May 15, 2008 in favor of KG (the "KG Restated Guarantee," and together with the Stiftung Restated Guarantee, the "Restated Guarantees").

10. Each of the two KG Transactions was further documented by a written confirmation. By a written confirmation dated May 23, 2007 and amended on January 25, 2008 (the "First KG Confirmation," and together with the First Stiftung Confirmation, the "First Confirmations"), Lehman Swiss purchased SAP shares from KG on a forward basis. By a second written confirmation dated April 18, 2008 (the "Second KG Confirmation"), Lehman Swiss sold SAP shares to KG on a forward basis.

11. As part of the KG Transactions, KG also entered into a master custody deed with LBIE as custodian and Lehman Swiss as chargee, dated May 16, 2007 (the "KG Custody Deed," and together with the Stiftung Custody Deed, the "Custody Deeds"). Pursuant to the KG Custody Deed, KG pledged 32 million ordinary shares of SAP to LBIE as custodian for Lehman

Swiss as chargee (the "KG Pledged Shares," and together with the Stiftung Pledged Shares, the "Pledged Shares"). KG also had the right under the First KG Confirmation to exchange the KG Pledged Shares for "other collateral . . . which may include cash and other assets."

## OVERVIEW OF RELEVANT CONTRACTUAL PROVISIONS

12. In Section 5(a)(vii)(4) of the Master Agreements, the parties agreed that an Event of Default would occur upon the institution of a bankruptcy proceeding by Lehman Swiss or LBHI.

13. The parties additionally agreed that such an Event of Default would automatically terminate all transactions under the Master Agreements. Specifically, in Part 1(e) of the Schedules, the parties agreed and elected that "[t]he 'Automatic Early Termination' provision of Section 6(a) will apply to Party A [Lehman Swiss] and will apply to Party B [the applicable Claimant]."

14. As for the timing of an Automatic Early Termination, Section 6(a) of the Master Agreements made clear that "an Early Termination Date in respect of all outstanding Transactions will occur . . . ***as of the time immediately preceding*** the institution of the relevant proceeding or the presentation of the relevant petition upon the occurrence . . . of an Event of Default specified in Section 5(a)(vii)(4)," *i.e.*, a bankruptcy Event of Default. (emphasis added.)

15. As for amounts payable "upon the occurrence . . . of an Early Termination Date," Section 6(c)(ii) of the Master Agreements provided that "[t]he amount, if any, payable in respect of an Early Termination Date shall be determined pursuant to Section 6(e) [of the applicable Master Agreement]." Section 6(e) of the Master Agreements included a menu of methodologies for calculating termination payments upon the occurrence of an Early Termination Date.

16. The parties elected and agreed upon Loss and Second Method as the methodology for calculating termination payments upon the occurrence of an Early Termination Date, as such

agreement was reflected in Part 1(f) of the Schedules. Loss was expressly defined in Section 14 of the Master Agreements. Second Method was expressly defined in Section 6(e)(i)(4) of the Master Agreements.

17.     In Section 14 of the Master Agreements, the parties agreed on the timing for the valuation of a Loss: "A party will determine its Loss **as of the relevant Early Termination Date**, or, if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable." (emphasis added).

### AUTOMATIC EARLY TERMINATION OF THE TRANSACTIONS

18.     On September 15, 2008, LBHI filed for bankruptcy relief, which triggered an Event of Default under Section 5(a)(vii)(4) of the Master Agreements.

19.     By operation of the parties' agreement in Part 1(e) of the Schedules, in conjunction with Section 6(a) of the Master Agreements, LBHI's bankruptcy filing resulted in the Automatic Early Termination of the Transactions.

20.     Pursuant to the parties' agreement in Section 6(a) of the Master Agreements, the Early Termination Date was September 15, 2008, *i.e.* "as of the time immediately preceding" LBHI's bankruptcy filing that same day.

21.     By operation of the parties' agreement in Sections 6(e)(i)(4) and 14 of the Master Agreements, Stiftung and KG were obligated to calculate their respective Loss "**as of the relevant Early Termination Date**, or, if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable." (emphasis added).

22.     In their Claims, the Claimants seek to value Loss as of October 16, 2008, a full thirty-one days after the Early Termination Date. The Claimants erroneously assert that it was not reasonably practicable to calculate the amounts due under the Master Agreements as of September 15, 2008. The alleged basis for this assertion is that the Claimants could not obtain

the Pledged Shares from LBIE on September 15, 2008 to use as collateral for replacement transactions. (*See* Attachment 3 to Guarantee Questionnaires, p. 7 (the "Dec. 16, 2008 Ltr. from Pinsent Masons" or "Loss Statement").)

23. The basis for the Claimants' calculation as of October 16, 2008 is flawed on several levels. First, the Claimants have articulated no rationale why they could not have produced valuations as of September 15, 2008 using the same methodology that produced valuations as of October 16, 2008. Indeed, the Claimants were perfectly capable of producing "retroactive" valuations as of whatever day they wished. Specifically, the October 16, 2008 valuations appear not to have been prepared until December 1, 2008.

24. Moreover, the Master Agreements required that the Transactions be valued upon the assumption that the Custody Deeds, and the Claimants' obligations thereunder, would have remained available to support replacement transactions. The Claimants in any event had the right to substitute "cash and other assets" for the Pledged Shares pursuant to the First Confirmations. Accordingly, the ability or non-ability to obtain the Pledged Shares from LBIE was utterly irrelevant to the timing of the valuation exercise.

25. It was accordingly reasonably practicable to calculate the amounts due under the Master Agreements "as of the relevant Early Termination Date," *i.e.*, as of LBHI's bankruptcy filing on September 15, 2008, using readily available market data.

26. Because the Claimants did not calculate the amounts due under the Master Agreements "as of the relevant Early Termination Date" of September 15, 2008 – even though it was reasonably practicable to do so – their calculation as of October 16, 2008 is defective.

27. Section 562 sets forth the rule that damages for swap agreements are generally measured as of the earlier of either: (a) the date of termination, liquidation, or acceleration of the

NYI-4513708v1                                - 7 -

contract; or (b) the date of the rejection of the contract, pursuant to section 365 of the Bankruptcy Code. 11 U.S.C. § 562(a). Only if "there are not any commercially reasonable determinants of value" as of the termination, liquidation or acceleration may damages be measured as of the earliest subsequent date or dates on which commercially reasonable determinants exist. 11 U.S.C. § 562(b). The party opposing application of the general rule bears the burden of proving there were no "commercially reasonable determinants of value" on the date or dates of termination, liquidation or acceleration. *See* 11 U.S.C. § 562(c).

28.  As applied here, section 562 requires damages to be measured as of the date of the termination of the Transactions, *i.e.* September 15, 2008. The Claimants have disregarded section 562 in calculating the amounts allegedly due from LBHI under the Master Agreements. Specifically, as discussed *supra*, the Claimants instead opted to calculate the amounts due under the Master Agreements as of October 16, 2008 – over a month after the termination of the Transactions.

29.  The stated reason for the use of the October 16, 2008 date is not based on any allegation that there were no commercially reasonable determinants of value on September 15, 2008. Instead, according to the Claimants, they calculated the amounts due under the Master Agreements as of October 16, 2008 because they wanted to wait to obtain the Pledged Shares back from non-debtor LBIE before entering into a replacement transaction. This desire on the part of the Claimants has no relevance under section 562 of the Bankruptcy Code, and Claimants cannot bear their burden of proof that there were no commercially reasonable determinants of value on the Early Termination Date.

## CONCLUSION

30.  By operation of the express terms of the Master Agreements, the Transactions automatically terminated as of September 15, 2008. As required by the express terms of the

parties' written agreements and the statutory requirements of the Bankruptcy Code, the Claimants were bound to calculate the amounts due under the Master Agreements as of September 15, 2008. The Claimants have instead calculated such amounts as of October 16, 2008. The claims should be disallowed and expunged.

31.  LBHI hereby expressly reserves the right to further object to such claims, or any other claims filed by the Claimants, on any other basis.

WHEREFORE, LBHI respectfully requests that the Court (i) disallow and expunge claim numbers 32395 and 22671 and (ii) award such further relief as the Court deems just and proper.

Dated:  April 15, 2013
       New York, New York

JONES DAY

*/s/ Jayant W. Tambe*
Jayant W. Tambe
Benjamin Rosenblum
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

*Attorneys for Lehman Brothers Holdings Inc.*