*Platzer, Swergold, Karlin, Levine,*
 *Goldberg & Jaslow, LLP*
*Attorneys for David Livingston*
*1065 Avenue of The Americas, 18th Floor*
*New York, NY 10018*
*(212) 593-3000*
*Scott K. Levine*
*Andrew S. Muller*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                      Chapter 11

LEHMAN BROTHERS HOLDINGS INC., *et al.*,      Case No. 08-13555 (JMP)

                                    Debtors.                           (Jointly Administered)
------------------------------------------------------------x

## OPPOSITION TO FOUR HUNDRED FOURTH OMNIBUS OBJECTION TO CLAIMS (EMPLOYMENT-RELATED CLAIMS) REGARDING CLAIM NO. 8311

David Livingston ("Livingston"), creditor, by his attorneys, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, as and for his Opposition to the Four Hundred Fourth Omnibus Objection to Claims (Employment-Related Claims) (the "Motion"), filed by Lehman Brothers Holdings Inc., as Plan Administrator (the "Plan Administrator") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its affiliated Debtors for certain entities in the above-referenced chapter 11 cases, respectfully sets forth and represents as follows:

**PRELIMINARY STATEMENT**

1.  Livingston's Proof of Claim (Claim No. 8311) sets forth amounts due on account of annualized salary and a retention award for a period of two years pursuant to the terms of Livingston's employment agreement with Lehman Brothers Holdings Inc. ("LBHI"). In addition to a salary, LBHI agreed to obligate itself to pay Livingston a retention award to induce him to

join LBHI subsequent to LBHI's acquisition of Eagle Energy Partners I, L.P. ("Eagle"). Thereafter, Livingston's employment with LBHI was terminated without "Cause" when Eagle was sold, by Order of this Court, to EDF Trading ("EDF").

2. The Plan Administrator's Motion seeks an Order reducing Livingston's Claim, arguing that because Livingston agreed to employment terms with EDF subsequent to having his employment terminated by LBHI, Livingston mitigated his damages, mandating a reduction of Claim No. 8311. However, as set forth herein, the mitigation concept is inapplicable to Livingston's claim because Livingston's employment was terminated without "Cause" and the Retention Award payments are deemed liquidated damages. Accordingly, amounts Livingston received from EDF do not reduce the amounts LBHI agreed to pay to Livingston.

## BACKGROUND

### The LBHI Retention Award

3. Prior to May 8, 2007, Livingston was an employee of Eagle. By Purchase Agreement dated as of May 8, 2007, LBHI acquired all of the partnership interests in Eagle. In anticipation of LBHI's acquisition of Eagle, by letter dated June 14, 2007 from LBHI to Livingston (the "LBHI 2007 Letter"), wherein it was indicated that LBHI and Eagle agreed that Livingston was "key to the business of Eagle", LBHI offered Livingston an incentive to remain employed by Eagle or its successor in the acquisition through and after the closing date of LBHI's Purchase Agreement. That incentive consisted of a right to receive a retention award (the "Retention Award"), which was conditioned on, among other things, the closing of the May 8, 2007 Purchase Agreement. Livingston accepted the terms of the Retention Award set forth in the LBHI 2007 Letter by executing same on June 15, 2007.[1]

---

[1] A copy of the LBHI 2007 Letter has been provided to the Court and the Plan Administrator.

2

4. The Retention Award was payable in three equal installments, on the first, second and third anniversary of the closing date of the sale of Eagle to LBHI, and was conditioned upon Livingston remaining employed by Eagle through each of the payment dates.

5. The LBHI 2007 Letter further states, in pertinent part, as follows:

> In the event your employment with the Firm ends as a result of your resignation for any reason or your termination by the Firm for Cause (as defined below) before the applicable payment date, you will not thereafter receive any further Retention Award payments. <u>In the event your employment is terminated by Firm without Cause before the applicable payment date, you will continue to receive any unpaid Retention Award payments on the applicable payment date(s)</u>. … For purposes of this Retention Award, "Cause" means any of the following: (i) misconduct, (ii) breach of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily. (emphasis supplied)

6. Thus, by its clear and unambiguous terms, the LBHI 2007 Letter provides Livingston is entitled to receive unpaid Retention Award payments if LBHI terminates Livingston's employment without "Cause".

7. On September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary chapter 11 bankruptcy cases in this Court, resulting in the termination of Livingston's employment. At that time, Livingston had already received the first Retention Award payment but was still owed the second and third Retention Award payments.

8. Thereafter, Livingston received compensation from Barclays Capital Inc. ("Barclays") for his services.

9. One month later, by Order of the Court dated October 17, 2008, LBHI sold its ownership interests in Eagle to EDF.

3

**The EDF Retention Award**

10.  In anticipation of its purchase of Eagle from LBHI, by letter dated October 9, 2008, EDF made an employment offer to Livingston for a position at Eagle which, among other compensation, included a right to receive a Retention Award (the "EDF Employment Offer"). The total amount of the Retention Award offered by EDF was less than the total amount of the Retention Award from LBHI, and the EDF Retention Award was paid in three annual installments, with the third annual installment being more than the first and second annual installments. Payment of the EDF Retention Award payments was conditioned on, among other things, Livingston's continued employment with Eagle at the time of payment of the particular installment.

11.  The EDF Employment Offer to Livingston was valid for only five (5) days until October 14, 2008, and was contingent on EDF's successful acquisition of Eagle. Requiring employment, Livingston accepted the EDF Employment Offer, which terms were different from the terms with LBHI, and which were presented under vastly different economic conditions.

12.  As set forth above, by Order of the Court dated October 17, 2008, EDF acquired Eagle.

## OPPOSITION TO RELIEF REQUESTED

13.  In its Motion, the Plan Administrator argues that Employment-Related Claim No. 8311 filed by Livingston should be allowed only in a reduced amount because the compensation Livingston received by virtue of his subsequent employment with EDF "partially or fully eliminated the claimant's damages," under certain case law that holds, "The plaintiff's measure of damages for the breach of an employment contract is the 'wage that would be payable during the remainder of the term reduced by the income which the discharged employee has earned, will

4

earn, or could with reasonable diligence earn during the unexpired term.'" citing Sudul v. Computer Outsourcing Servs, Inc., 917 F.Supp. 1033 (S.D.N.Y. 1996) (citations omitted); Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 22 (2d Cir. 1994); Ohanian v. Avis Rent A Car System, Inc., 779 F.2d 101, 110 (2d Cir. 1985); and Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69 (1966).

14. However, these cases are inapposite because they do not involve Retention Award Clauses, and the Plan Administrator seeks to apply this principle beyond its scope.

15. Upon the sale of Eagle to LBHI, Livingston was presented with the opportunity to receive Retention Award payments, if he remained employed there, as a reward for his loyalty. Based upon the facts and circumstances as they existed at that time, Livingston took the credit risk and agreed to the new terms of his employment with Eagle/LBHI, which included the clear and unambiguous provision of his agreement that if his employment ceased through no fault of his own (i.e., terminated without "Cause"), he would be entitled to the balance of the Retention Award payments from LBHI. At the time LBHI commenced its bankruptcy case, Livingston was entitled to two more Retention Award installment payments.

16. An employment agreement that contains provisions for payment of a specified amount of damages cannot be subject to mitigation due to subsequent employment. See Musman v. Modern Deb, Inc., 50 A.D.2d 761, 762, 377 N.Y.S.2d 17, 19, 1975 N.Y. App. Div. LEXIS 12148, ***3 (A.D. 1st Dept. 1975); Boyle v. Petrie Stores Corp., 136 Misc.2d 380, 393, 518 N.Y.S.2d 854, 862, 1985 N.Y. Misc. LEXIS 3345, ***28 (NY Cty. 1985).

17. In Musman, the plaintiff's five year employment contract with his employer provided that, if his employment was terminated without cause, he would receive full compensation and bonuses to the end of the five year term. The trial court reduced the plaintiff's damages by the amount that he earned from subsequent employment. The Appellate Division

5

reversed holding that the applicable contract provision was "in essence a liquidated damages clause" that "fixes the exposure of the employer following a discharge without cause and thus serves to remove such a case from the ordinary rule requiring the employee to mitigate damages." Thus, the Appellate Division determined that the reduction was improper and restored the full award of damages to the plaintiff.

18. The applicability of <u>Musman</u> to the instant matter is clear. Livingston was terminated by LBHI without "Cause" upon the Court approved sale of Eagle to EDF. The LBHI 2007 Letter Agreement with Livingston contains provision for LBHI to pay a set amount (the Retention Award payments) to Livingston in the event that he was terminated without "Cause." As a result of LBHI agreeing to pay a set amount upon termination of Livingston without "Cause", mitigation of damages from Livingston's subsequent employment is simply not a factor. Livingston respectfully submits he is entitled to the full value of his Retention Award under the terms of the LBHI 2007 Letter, and accordingly, the Plan Administrator's Motion should be denied.

19. Livingston reserves all rights and defenses, including, without limitation, his right to discovery, in connection with the Motion.

## **CONCLUSION**

WHEREFORE, Livingston respectfully requests that the Motion be denied and an Order be entered allowing Claim No. 8311 in full, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 17, 2013

                                PLATZER, SWERGOLD, KARLIN, LEVINE,
                                GOLDBERG & JASLOW, LLP

                                *Attorneys for David Livingston*

                                By: */s/ Andrew S. Muller*
                                     Scott K. Levine
                                     Andrew S. Muller
                                     1065 Avenue of The Americas – 18th Floor
                                     New York, NY  10018
                                     Tel.:  (212) 593-3000
                                     Fax:  (212) 593-0353
                                     slevine@platzerlaw.com
                                     amuller@platzerlaw.com