UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS., INC.,                             :    08-13555 (JMP)
                                                             :
                                      Debtors.               :
                                                             :
------------------------------------------------------------ x

## AFFIRMATION OF CLAIMANT WENDY UVINO IN OPPOSITION TO DEBTORS' 403rd OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

Wendy M. Uvino affirms under penalty of perjury as follows:

1.      I was employed by Lehman Brothers Inc. ("LBI") in New York City between 1994 and 2008 as Senior Vice President in Human Resources. In that capacity, I developed personal knowledge of the matters discussed in this Affirmation.

2.      On September 9, 2008, LBI announced and implemented a reduction in force (the "September 2008 RIF"), pursuant to which LBI announced the redundancy and termination of a large number of employees in its administrative structure, including employees in human resources, finance, legal and other corporate groups. I was one of those employees.

3.      Most of the employees made redundant by the September 2008 RIF were terminated as of the date of notification. They immediately became entitled to the benefits of Lehman's "Severance Plan" and the federal Worker Adjustment & Retraining Notification Act, 29 U.S.C. § 2101 (the "WARN Act").

4.      I was notified of my termination pursuant to the September 2008 RIF by Anthony Collerton, Managing Director in Human Resources and my immediate Supervisor. Mr. Collerton told me that my termination was final, that I would qualify for severance benefits on

the same basis as others made redundant by the September 2008 RIF, and that such benefits would commence immediately upon the effective date of my termination.

5.  My severance was to include 42 weeks Severance Pay under the Lehman Brothers Severance Plan, 60 days Notice Pay (the Notice of Termination required of Lehman under the federal WARN Act), and Medical Coverage under the federal COBRA law (which is not pursued in this Opposition to the 403rd Omnibus Objection).

6.  A true and correct copy of the Severance Plan, as in effect of the time of the September 2008 RIF, is attached hereto as Exhibit 1. The provisions governing Severance Payments are set forth beginning of the bottom of the first page and continuing through the top half of page 2.

7.  After Managing Director Mr. Collerton notified me of my termination under the September 2008 RIF, he then stated that LBI was requesting me to continue working for LBI an additional 3½ months, through the end of 2008. I continued to work for LBI for approximately one month after September 2008 RIF, during which LBI filed its petition with this Court seeking protection under the Bankruptcy Code. In about mid-October my employment by the post-petition Estate of LBI was terminated and I became entitled to my severance benefits, which included $161,538.46 in compensation under the Severance Plan, $30,769.23 in Notice Pay under the federal WARN Act, and $91,000 as the present value of Medical Benefits.

8.  After the termination of my employment with LBI and the LBI Estate, I was then hired by the Estate of Lehman Brothers Holdings Inc. ("LBHI") to work in the Human Resources Department of the LBHI Estate as it went through its liquidation. This employment was temporary -- I was told that it would be for approximately 15 months. I worked for the LBHI Estate until June, 2010.

9. The only way in which my employment by the LBHI Estate was to affect the severance package I received from LBI was in who was responsible for payment. As its corporate parent, LBHI was one of the "affiliated companies" of LBI defined as "the Firm" in the Severance Plan. LBHI retained me to provide ongoing services because of my experience as an employee of LBI, but it was temporary employment and it would have made no sense for me to give up my severance benefits for temporary employment for a company in liquidation.

10. There was never any question that the Severance Plan applied to my situation. The documents confirming my termination were to have been prepared and provided to me in the week following week notice of the September 2008 RIF. However, as explained in the attached Affirmation of Karen Coviello, the Employee Relations Specialist in the Human Resources Department who was responsible for preparing them, the papers were not prepared due to the circumstances surrounding the bankruptcy petitions filed the following week by LBI and LBHI. Affirmation of Karen Coviello filed herewith, April 22, 2013 at ¶¶ 6-7.

Affirmed under penalties of perjury this 22nd day of April, 2013. This Affirmation is signed electronically because of Affiant's absence from the country. An original signature will be provided upon request to Affiant after her return.

/s/<br>
WENDY M. UVINO

# WENDY UVINO
# EXHIBIT 1

# Severance Plan

## Overview

Lehman Brothers Inc. and certain of its affiliated companies (the "Firm") may offer severance pay, notice pay, accrued unused vacation pay and/or other separation payments if employment with the Firm is terminated involuntarily due to a "reduction in force." A "reduction in force" occurs when an employee's job is eliminated, his/her office location is closed, or there is a general reduction in the work force. The Lehman Brothers Inc. Severance Plan (the "Plan") is intended to help bridge terminated employees to their next employment opportunity. An individual who is terminated as a result of unsatisfactory performance or for other disqualifying reasons is not eligible for payments under the Plan.

- Eligibility
- Notice of Separation
- Additional Separation Payments
- Procedure for Severance Pay
- Medical Care/Benefits
- Change of Control
- Claims Denial and Appeal Procedure
- Severance Payments
- Accrued Unused Vacation
- Offsets
- Re-Hire
- General
- Transfers
- Technical Information

## Eligibility

"Covered employees" are employees on the payroll of Lehman Brothers Inc. and certain of its affiliated companies, based in the United States, excluding Aurora Loan Services Inc. or any other affiliate excluded by the Plan Administrator in his/her sole and absolute discretion. Further, covered employees include only those described above who receive regular salary or wages and do not include those who considered by the Firm to be paid on a commission or production basis, even if the employees receives a draw, "guaranteed" draw, or other salary equivalent. In no event will covered employees include individuals classified by the Firm as consultants, vendor representatives, vendor employees or "temps" (employees of temporary agencies) or other contingent workers.

Benefits under the Plan are payable solely upon a termination of employment in connection with a "reduction in force," as described above. Further, an employee is not eligible to receive such payments if:

- The employee resigns.
- The employee is discharged for cause. For purposes of the Plan, "cause" includes (but is not limited to) misconduct, absenteeism or lateness, dishonesty, violation of Firm policy or procedures, violation of laws or regulations, failure to perform satisfactorily up to the scheduled separation date, and conduct detrimental to the interests of the Firm.
- The employee declines an offer of a comparable or better position with the Firm within a reasonable commuting distance (35 miles) of his/her primary residence or the job location from which the employee is being separated.
- The employee is a temporary, seasonal, hourly or part-time (scheduled to work less than 20 hours per week) employee.
- The employee is paid on a commission or production basis.
- The employee fails to sign a separation agreement, which includes a waiver of claims against the Firm and other terms, in the form supplied by the Plan Administrator.
- The employee is on a medical leave of absence or any other inactive status (e.g., personal leave, suspension, long term disability, etc.) and his/her job guarantee has expired prior to the scheduled separation date.
- There is a "change of control" and the employee is ineligible as described below.
- The employee is terminated as a result of a filing of bankruptcy proceedings by or against the Firm.
- The employee will receive further payments pursuant to a compensation agreement (compensation "guarantee") in an amount equal to or in excess of the total amount of severance, notice pay, accrued unused vacation pay and other separation payments for which the employee might otherwise be eligible under the Plan.

The determination as to whether any person is eligible to receive severance pay, notice pay, accrued unused vacation pay and/or other separation payments, and the amount of such pay, if any, shall be made by the Plan Administrator in his/her sole discretion. The decisions of the Plan Administrator shall be final and binding (subject to the appeals procedure described below). The Plan Administrator also shall have the sole authority and absolute discretion to interpret the provisions of the Plan and its applicability to any particular situation. The interpretations of the Plan Administrator shall be controlling and final in all cases.

## Severance Payments

Severance pay is based on "years of service," "base salary," and corporate title:

A "year of service" is a 12-month period during which an employee was employed by the Firm and includes all periods before and after any break in service.

"Base salary" means gross annualized base salary at the time the reduction in force occur. Base salary does not include any bonus payment, overtime pay, floor brokerage, fixed and/or variable cash flow, sales points, commissions (for any year), draw against commissions (or other periodic special payments to employees paid by commissions) or compensation deferred in any prior year, whether or not paid in the year the individual is terminated. Additionally, base salary does not include any expense reimbursements (such as tuition, travel or entertainment reimbursements), pending salary increases or any other special payment or salary supplement. The amount an employee may be offered under this Plan is determined as follows and is subject to offsets as described below.

Severance Per Policy

| Years of Service | Number of weeks of Base Salary |
| --- | --- |
| Less than 5 years | 1 week per year with a minimum of 2 weeks. |
| 5 years or more, but less than 10 years | 2 weeks per year. |
| 10 years or more | 3 weeks per year with a maximum of 52 weeks. |

Notwithstanding the schedule above, the following schedule applies to those who hold the designated corporate titles as set forth below.

| Corporate Title | Number of weeks of Base Salary |
| --- | --- |
| Vice President | The greater of the above schedule or 6 weeks base salary |
| Senior Vice President | The greater of the above schedule or 13 weeks base salary. |
| Managing Director and above | The greater of the above schedule or 26 weeks base salary. |

## Notice of Separation

Salaried, bonus-eligible corporate officers (Vice Presidents and above) will receive notice, or compensation in lieu of notice, in accordance with the Firm's Notice Policy or applicable written agreement. For all other employees, the following provisions will apply.

The Plan Administrator will decide, in his/her sole and absolute discretion, whether an employee involved in a reduction in force will receive 2 weeks' notice during which he/she will be needed to continue working for the Firm, or 2 weeks' notice pay with an immediate termination of his/her job responsibilities.

If the Plan Administrator decides that an employee will be needed to work during the two-week notice period, the employee's failure to work the entire period may result in a loss of eligibility for all severance benefits. During the entire notice period, the employee will continue to receive his/her current rate of pay, with regular salary payments being made. He/she will also continue to receive benefits during such period, subject to applicable law or regulation, employee elections and changes to or termination of Firm benefits plans. Such an employee is not eligible, however, for any pending salary increase.

## Accrued Unused Vacation

Employees terminated because of a reduction in force may be eligible for up to 10 days accrued, unused vacation pay, unless otherwise provided under state law. Under most circumstances, unused vacation eligibility will be determined by subtracting the number of vacation days taken since the first of the year from the total vacation days for which the employee is eligible.

## Additional Separation Payments

The Plan Administrator will decide, in his/her sole and absolute discretion, whether an employee involved in a reduction in force will be offered an additional special separation payment. The amount of any such special separation payment shall be determined by the Plan Administrator in his/her sole and absolute discretion.

## Offsets

The total amount offered to eligible employees under this Plan (severance, notice and vacation pay, as well as any additional separation payments) will be reduced by any or all of the following, except as may be determined by the Plan Administrator in his/her sole and absolute discretion:

1. The amount payable to an employee pursuant to applicable law or regulation requiring "notice" or other payments in the event of an employment separation (including, but not limited to, payments made pursuant to the U.S. Worker Adjustment Retraining Notification ("WARN") Act or similar state or local laws;
2. In those states or localities requiring the payment of accrued unused vacation, the amount of such accrued unused vacation which is required to be paid but such offset shall not exceed the 10 days for which the employee might otherwise be eligible under this Plan;
3. The total amount of any payments still to be made to the employee pursuant to a compensation agreement (compensation "guarantee"); and
4. The amount of an employee's severance, notice pay, accrued unused vacation (or comparable payments pursuant to local requirements, practice or custom) offered and/or paid to the employee with respect to a prior separation of employment from the Firm, if the prior service was taken into account in determining the amount of severance for which the employee is currently eligible.

## Procedure for Severance Pay

In order to be eligible to receive severance pay, accrued unused vacation pay or any other separation payment, an employee must sign a separation agreement that includes a waiver of any claims the employee may have against the Firm, and other terms as supplied by the Plan Administrator. After the employee returns the signed separation agreement and any applicable revocation period has expired, the employee will receive his/her payments, generally, in a single lump sum, although other methods of payment may be approved by the Plan Administrator in his/her sole and absolute discretion.

## Re-Hire

If an employee is re-hired by the Firm before the expiration of the number of weeks for which he/she was paid severance, notice pay and vacation pay, the Plan Administrator, at his/her sole discretion, may require the employee to repay the Firm for the difference between the number of weeks for which the employee was paid and the number of weeks that the employee was not actively employed at the Firm.

## Medical Care/Benefits

An employee terminated because of a reduction in force may be eligible to pay the Firm to extend his/her coverage under the Firm's Medical Plan, generally for up to 18 months, in accordance with the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). The Firm will advise an employee of his/her rights under COBRA upon separation.

## General

Except as otherwise provided by law or regulation, or in applicable Firm plans or policies, no employment benefits or privileges continue beyond an employee's separation date. Nothing in the Plan or other Lehman Brothers plans shall give an employee the right to remain in the employ of the Firm or affect the Firm's right to terminate any person's employment with or without cause.

## Change of Control

A "change of control" means a sale of assets, stock or any other arrangement (including outsourcing) whereby control of the Firm (or any business unit, partial business unit or function thereof) is transferred to some other entity. In the event of a change of control, an employee will not receive any severance, accrued unused vacation, notice pay or any other separation payment if: he/she (i) retains employment with the successor employer; (ii) turns down an offer for a comparable or better position with the successor employer; or (iii) does not fully cooperate in the transition period.

## Transfers

An employee who accepts an offer to transfer to a comparable or better position with the Firm -- whether or not it is within 35 miles of his/her primary residence or current Firm location -- waives his/her right to severance pay, notice pay, vacation pay or other separation payment.

## Claims Denial and Appeal Procedure

An employee who believes that he/she is entitled to a benefit that he/she is not receiving should submit a written claim to the Plan Administrator.

Generally, an employee will receive a response -- payment or a denial of application for a benefit -- within 90 days after a claim is properly filed. This period can be extended up to an additional 90 days if the employee is given prior written notice of the date a decision is expected and the reason for the delay.

If an employee's claim is denied either in whole or in part, he/she will receive written notification from the Plan Administrator. The notification will include the specific reason for the denial, along with additional information that might be used for appeal.

Within 60 days after receiving the denial, an employee may appeal by filing a written request with the Plan Administrator.

Generally, the Plan Administrator will review the appeal and, within 60 days (or 120 days in special circumstances), will provide a written response explaining the reasons for the decision with specific reference to the Plan provisions upon which the decision is based. An employee who does not receive notice within these time limits should consider his/her claim denied. The Plan Administrator's decision will be binding unless otherwise provided by law.

*Benefits under the Lehman Brothers Inc. Severance Plan are not insured by the Pension Benefit Guaranty Corporation or any other governmental agency and are not pre-funded. The Plan Administrator is the Firm's Director of Human Resources or his/her designee. The Firm reserves the right to change or terminate the Plan at any time.*

## Technical Information

**Name of Plan:**
Lehman Brothers Inc. Severance Plan

**Name and Address of Sponsoring Employer:**
Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019

**Plan Year:**
January 1-December 31

**Agent for Service of Legal Process:**
Director of Human Resources
Lehman Brothers Inc.
1271 Sixth Avenue, 45th Floor
New York, NY 10020

**Type of Plan:**
Welfare Benefit Plan

**Identification Numbers:**
Company EIN 13-2518466; Plan No. 508

**Plan Administrator:**
Director of Human Resources
Lehman Brothers Inc.
1271 Sixth Avenue, 45th Floor
New York, NY 10020

**Changing or Terminating the Plan:**
The Firm reserves the right to change or terminate the Plan at any time without prior notice or consent.

**Funding the Plan:**
Benefits under Plan are not pre-funded and are paid out of the assets of the Firm.

**Rights under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"):**
Each employee eligible to participate in the Plan is entitled to certain rights and protections under ERISA. ERISA provides that all Plan participants are entitled to the following:
- A participant may examine, without charge all Plan documents at the Plan Administrator's office. This document constitutes both the Plan and the Summary Plan Description of the Plan. In addition, each participant may also examine copies of all documents filed by the Plan with the U.S. Department of Labor. These documents include annual reports and Plan descriptions.

- Each participant may obtain copies of all Plan documents and other Plan information by making a written request to the Plan Administrator. A charge may be made for these copies.
- In addition to creating rights for Plan participants, ERISA imposes obligations upon the persons who are responsible for the operation of the Plan. These persons are referred to as "fiduciaries" under the law. Fiduciaries must act solely in the interest of the Plan participants and must exercise prudence in the performance of their duties.
- A participant may not be fired or otherwise discriminated against to prevent him/her from obtaining her/her benefits under the Plan or from exercising his/her rights under ERISA.
- If a participant's claim for a benefit under the Plan is denied in whole or in part, he/she must receive a written explanation of the reason for the denial. He/she has the right to have the claim reviewed.
- Under ERISA, there are steps a participant can take to enforce the above rights. For instance, if a participant requests materials from the Plan in writing, and if the participant does not receive them within 60 days, the participant may file suit in a federal court. In such case, the court may require the Plan Administrator to provide the materials and to pay up to $100 a day until the participant receives the materials, unless they were not sent because of reasons beyond the control of the Plan Administrator. If a participant has a claim for benefits which is denied or ignored, in whole or in part, the participant may file suit in a federal or state court. If it should happen that the Plan fiduciaries misuse the Plan's money, or if a participant is discriminated against for asserting his or her rights, the participant may seek assistance from the U.S. Department of Labor, or may file suit in federal court. The court will decide who should pay court costs and legal fees. If the participant is successful, the court may order the person the participant has sued to pay these costs and fees. If the participant loses, the court may order the participant to pay these costs and fees.
- If a participant has any questions about these statements or about his or her rights under ERISA, the participant should contact the Plan Administrator or the nearest Area Office of the United States Labor Management Service Administration, Department of Labor.

This plan is effective for terminations occurring on or after May 10, 2008, and supersedes both the Shearson Lehman Brothers Inc. Severance Plan for Lehman Brothers Division Employees (Effective for Terminations Occurring on or After April 5, 1993) and any other plan or policy previously in effect for employees covered by this Plan.