**ORIGINAL DOCUMENT**

Craig Inglis
615 Adams Street, Apt 4D
Hoboken, NJ 07030
(917) 757-7449



April 12, 2013

Honorable James M. Peck
One Bowling Green
New York, NY 10004
Courtroom 601

Jones Day
Attorneys for Lehman Brothers Holdings Inc.
Attn: Robert W. Gaffey, Esq.
Attn: Kelly A Carrero, Esq.
222 East 41st Street
New York, NY 10017

Office of the United States Trustee for Region 2
33 Whitehall Street; 21st Floor
Attn: Tracy Hope Davis, Esq.
Attn: Elisabetta Gasparini, Esq.
Attn: Andrea B. Schwartz, Esq.
222 East 41st Street
New York, NY 10004

Re:    Craig Inglis, Claim No. 10915
       *In re Lehman Brothers Holdings Inc., et al.*, Debtors,
       Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered)
       <u>Four Hundredth Omnibus Objection to Claims</u>

Counsel:

    My name is Craig Inglis, a claimant in *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP). My claim number is 10915. My sole claim is to receive the $80,000 bonus promised me by Lehman in my employment offer letter (attached as Exhibit A). This was not a conditional bonus. It was not linked to the performance of a unit or to Lehman as a whole. It was contingent only upon me not being terminated for cause (and I was not terminated for cause, nor, to my knowledge, has any Lehman entity represented that I was).

    I write in response to the objections filed by Lehman Brothers Holdings Inc. ("LBHI") in its Four Hundredth Omnibus Objection to Claims (No Liability Employee Claims) ("400th Omnibus Objection"), dated March 8, 2013. In its 400th Omnibus Objection, LBHI seeks to "disallow and expunge" my claim. The stated reasons are: (i)

Page 1 of 4

that it is a "Non-Debtor Employee Claim"; (ii) that it is a "Transferred Employee Claim"; (iii) that it is a "Bonus Claim"; and (iv) that it is an "Equity Award Program Claim." None of these objections are valid and I address each of these bases individually below.

At the outset, I believe the LBHI's objections to my claim stem from a fundamental misunderstanding of my role at Lehman. I was (and am not) an investment banker. I am a computer technician. The terms of my employment differed markedly from those of the investment bankers. The distinctions LBHI draws between my employers did not apply to my position. I worked for Lehman. That means I worked for LBHI and Lehman Brothers Inc. ("LBI"). The computer systems I worked on could not be neatly dissected, so neither was my employment status. To do so would have been artificial and foolish, although it appears that LBHI believes that a legal advantage can be gained by doing so.

There is also an equitable consideration. I actively tried, in September and October of 2008, to have Lehman (LBHI and LBI) clarify the impact of the bankruptcy filings and their negotiations with Barclays Capital Inc. ("Barclays") on my employment status and compensation. As an example, I've attached as Exhibit B my copy of an email exchange undertaken while I was at Lehman on Lehman's system.[1] At that time, I was informed that my employment status (that is, which Lehman I worked for) was "not pertinent." Despite my inquires, no mention was made of the September 20, 2008 Sale Order and the September 16, 2008 Asset Purchase Agreement. I did not know of the existence of these documents until I received the 400th Omnibus Objection. None of Lehman's agents informed me in 2008 that these (I believe non-public) documents extinguished my bonus claim against LBHI and/or transferred it to Barclays. I believe equity requires that LBHI be estopped from relying on facts that it should have revealed to me in 2008.

If I understand the thrust of LBHI's objections, they rely upon the presumption that my subsequent employment by Barclays made Barclays liable for the bonus Lehman promised (in writing) to me. I am, however, unaware of any document so stating, nor am aware of Barclays acknowledging liability. Can this (will this) Court rule that Barclays assumed the obligation for my bonus—and if, so do I now pursue Barclays?

(i)  <u>Non-Debtor Employee Claim</u>

LBHI erroneously claims that I was not an employee of any of the "Chapter 11 estates" but was rather employed by other Lehman entities such as LBI and, thus, my claim should be disallowed and expunged as a Non-Debtor Employee Claim. I do not know if this objection applies to any other claimant, but it certainly does not apply to me because (a) I was employed by both LBHI and LBI and (b) it would be inequitable to deny my claim on these grounds as it contradicts representation made to me in 2008.

---

[1] The email exchange occurred on Tuesday, September 30, 2008, and Wednesday, October 1, 2008, between myself and Stephanie Diamond, coping Linda Pittenger and Jessica Platt. LBHI should have access to the originals of this exchange and others.

My offer letter clearly and unambiguously establishes that the offer of employment was designed, intended, and did, make me an employee of *both* LBHI and LBI. I have attached my offer letter as Exhibit A. LBHI is repeatedly referred to therein as in control of my compensation. For example, on page 2, it states that LBHI "will grant you an award ... The valuation ... will be at LGHI's reasonable discretion ... LBHI will make reasonable efforts ... It is your obligation to provide LBHI with documentation reasonably deemed necessary by LBHI...."

Further, I explicitly asked how the Lehman bankruptcy proceedings impacted my employment, as demonstrated by the September 30/October 1 email exchange (Exhibit B). In response to my inquiry as to whether I was still "employed by LBHI or [LBI]," LBHI's agents stated, in writing, that the distinction was "not pertinent." Four and half years later, when the bill is coming due, LBHI finds the distinction pertinent. It would be inequitable to allow LBHI to argue in 2013 that I was not its employee in 2008 when its agents failed to so inform me in 2008. I relied upon those representations. Had this issue been raised in 2008, it would have quickly and easily been resolved. In 2008, I was physically sitting in LBHI's property and using LBHI's equipment. LBHI's silence in 2008 also impacted my ability to negotiate compensation from Barclays.

Thus, my claim cannot be expunged or disallowed as a Non-Debtor Employee Claim.

(ii)   Transferred Employee Claim

LBHI claims, based on documents it choose not to provide me in 2008, that liability for my bonus was transferred to Barclays when it acquired LBI's North American broker-dealer business and investment banking operations "in accordance with the Sale Order entered on September 20, 2008 that approved the purchase by Barclays under the terms of the Asset Purchase Agreement dated September 16, 2008 (the "APA")." (¶ 17) Neither document has ever been provided to me, nor their existence even mentioned, despite my repeated inquires *in September and October 2008* into the impact of Barclays' purchase of LBI on my employment.

First, I formally request copies of these documents.

Second, the emails (Exhibit B) confirm beyond doubt that I was not employed by Barclays at the time that the Sale Order and Asset Purchase Agreement went into effect.

Third, I explicitly asked "[w]hat is the status of my employment with Lehman and how does it affect my compensation" (Exhibit B). LBHI's agents did not inform me that my bonus (promised by LBHI and LBI) was to be extinguished by Barclays' purchase of Lehman's assets. Nor was I informed that the bonus obligation would be absorbed by Barclays.

The case described by LBHI, *In re Lehman Brothers Holdings Inc., et al.*, 456 B.R. 213 (Bankr. S.D.N.Y. 2011), does not seem to be applicable to me. By its terms,

Page 3 of 4

that case only addresses the impact of Barclay assuming bonus obligations; it is not claimed that that case establishes that Barclays assumed LBHI's bonus obligation to me. Nor does it seem that case would prevent LBHI from seeking reimbursement from Barclays for any claim it pays out to me.

That is, under LBHI's "Transferred Employee Claim" objection, *if, and only if*, it is established that Barclays assumed the obligation for the bonus Lehman promised me, *than* LBHI is not liable. Unless this court rules Barclays is liable for my bonus, this objection is not grounds to expunge or disallow my claim.

Further, even if the Court rules that Barclays accepted liability for my bonus, in light of LBHI's behavior in 2008, it should be estopped from raising this argument now and left to pursue Barclays for any obligation the Court finds it owes me.

(iii)   Bonus Claim:

LBHI failed to provide the basis of this objection. In its 400th Omnibus Objection, LBHI describes "Bonus Claims" as a type of compensation, not as a grounds to expunge or disallow a claim (¶ 12). In its Exhibit A, however, Bonus Claims is listed as a basis for objecting. LBHI did not assert that my bonus was a "Special Sign-On Bonus Claim."

Thus, to the extent that LBHI objects to my claim solely because it seeks payment of a bonus, it must be denied. I cannot be expected to rebut an unstated argument.

(iv)   Equity Award Program Claim

LBHI argues that my claim should be treated as an Equity Award Program Claim. This argument is meritless. While my offer letter does provide that I may qualify for future conditional equity awards, such is not the basis of my claim. My claim is based on the express language in my offer letter, which calls for me to be paid an $80,000 bonus. Nothing in the offer letter can be construed as defining this bonus as a conditional equity awards. (*See* Inglis Exhibit A). No conditions were placed upon the amount of my base salary or bonus. They did not rise or fall with the fortunes of LBHI. The only condition was that I not be fired for cause (and I was not).

For the foregoing reasons, as applied to my claims against LBHI, the 400th Omnibus Objection is unsubstantiated and must be rejected.

Sincerely,

Craig Inglis

# EXHIBIT A

# LEHMAN BROTHERS

VINCENZA CRUZ
VICE PRESIDENT
HUMAN RESOURCES
(212) 320-0847

May 8, 2008
*Revised June 13, 2008*

Craig Inglis
1125 Washington Street – Apartment 2R
Hoboken, NJ 07030

Dear Craig:

Congratulations on receiving your offer to join Lehman Brothers Inc. (the "Firm") as a Senior Engineer in the Enterprise Architecture Services Division, reporting initially to Shridhar Acharya. Your title of Vice President will be submitted for official approval by the Board of Directors as part of the next quarterly approval process. We expect your employment to begin on or about July 14, 2008.

For the performance year 2008 (your start date through November 30, 2008), your compensation will be as follows:

- An annualized base salary of $150,000.00, payable in bi-weekly installments of $5,769.23.

- A bonus in the amount of $80,000.00, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (in or about January 2009).

The foregoing base salary will be paid for all periods of your active employment with the Firm in performance year 2008. The bonus amount set forth above will be paid at the time and in the amount stated except that such bonus will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm for Cause. For the purposes of this offer letter, "Cause" means a termination of your employment by the Firm because of any of the following: (i) misconduct, (ii) breach of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (iv) substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amount set forth above may be reduced in the event of an approved leave of absence during the applicable performance year.

At the Firm's discretion, a portion of your 2008 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based awards) pursuant to the Firm's Equity Award Program or in such other non-cash form as may be provided pursuant to other Firm-sponsored programs that may be established by the Firm from time to time and generally in effect for employees at your level. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, or any other

Inglis, Craig
Page 2 of 4

Firm sponsored program will be established by the Firm from time to time in its discretion. With respect to your compensation guarantee for performance year 2008 only, the deferral and delivery schedule for the portion of your total compensation payable in conditional equity awards shall be as set forth in the attached Equity Award Schedule for employees with a 2008 Bonus Guarantee. Note that your equity award will be calculated based on your corporate title effective in the 2008 performance year. Except as outlined above with respect to the deferral and delivery schedules, all other terms and conditions of your 2008 equity awards (for example, vesting, discount, and termination provisions) will be the same as those generally applicable to employees at your level who receive a 2008 equity award. For the avoidance of doubt, in the event your employment is terminated by the Firm without Cause before the payment in full of the guaranteed minimum bonus for performance year 2008, you will be paid on the applicable bonus payment date any unpaid guaranteed minimum bonus for such year, payable part in cash and part in conditional equity awards, and the disposition of the equity portion of such award shall be determined in accordance with the Equity Award Program as then in effect.

You have advised us that you will forfeit certain Bear Stearns Restricted Stock & Options as a result of your separation from Bear Stearns and subsequent employment by our Firm (the "Forfeited Awards"). Provided you fully comply with the documentation obligation set forth below no later than 60 days after your start date, and subject to final approval by the Compensation Committee of the Board of Directors (or its appropriate designee), Lehman Brothers Holdings Inc. ("LBHI") will grant you an award of Special Restricted Stock Units ("Special RSUs"), with a market value at the time of the award equivalent to the value of the Forfeited Awards. The valuation of the Forfeited Awards will be at LBHI's reasonable discretion, based (where applicable) on the average closing price of Bear Stearns common stock for the five trading days immediately preceding your first day of employment. LBHI will make reasonable efforts to establish schedules for vesting and/or sales restrictions of your Special RSUs upon continued employment which are consistent with the corresponding schedules of the Forfeited Awards. Our current administrative practice is to set vesting (and/or share delivery) dates for the Special RSUs on the 15th of the month in which the related Forfeited Awards would have converted to freely tradable shares (or, in the case of options, become exercisable). It is your obligation to provide LBHI with documentation reasonably deemed necessary by LBHI to verify and evaluate the Forfeited Awards and to structure the Special RSU award. LBHI's Special RSU award will be made as of your first day of employment with the Firm and will be based on the closing price of LBHI common stock on the New York Stock Exchange on that day. In the event your employment with the Firm ends for any reason other than death, Disability (as defined in the LBHI Equity Award Program), or a termination by the Firm without Cause (as defined above), you will forfeit any Special RSUs that are not vested at the time of separation. If your employment is terminated by the Firm without Cause, any Special RSUs that are not vested at the time of separation will continue to vest and deliver on the regularly scheduled vesting dates, provided that you execute a Firm-standard release agreement, in accordance with then applicable Firm policy, and provided further that, through such vesting/delivery dates, you have not engaged in Detrimental Activity (as defined in the LBHI Equity Award Program). In the event of your death or Disability, your Special RSUs will vest in accordance with the terms of the LBHI Equity Award Program. Except as provided under this paragraph with respect to (x) pricing of the special RSUs, (y) schedules for vesting and/or sales restrictions of your Special RSUs upon continued employment and (z) forfeiture of your unvested Special RSUs upon

Inglis, Craig
Page 3 of 4

separation from the Firm's employment, the terms of the LBHI Equity Award Program will govern your award of Special RSUs. For purposes of this paragraph, "LBHI Equity Award Program" refers to the award agreement for employees having your corporate title under LBHI's 2007 Equity Award Program. Notwithstanding any other provision of this paragraph, the Firm has discretion to replace the Forfeited Awards with cash in lieu of Special RSUs.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. Your compensation for all periods after performance year 2008 will be determined at the Firm's discretion.

While the foregoing compensation commitments will be honored on the terms outlined above, this letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason, subject to any applicable notice requirement. Currently, the Firm's notice policy requires officers of the Firm to provide 30 days' advance written notice of resignation, and provides for 30 days' advance notice by the Firm to its officers in the event of an involuntary termination under certain circumstances. In making this offer of employment, the Firm has relied on your representations (a) that you are not subject to any duty or obligation that would prevent you from becoming employed with us on your start date or that would in any way prevent you from performing the duties of your position, and (b) that you are not subject to any non-competition, non-solicitation or other restrictive covenant that might affect your employment by the Firm as contemplated by this letter.

Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that this offer of employment is conditional upon the successful completion of a background investigation, including reference, credit, criminal and other checks, as well as on your satisfactorily meeting all pre-employment requirements, including producing documentation to verify your identity and eligibility to work in the United States. Shortly, you will receive a memo indicating how to schedule pre-employment and complete any necessary paperwork. During pre-employment you will receive information regarding the Firm's policies and benefits in which you are eligible to participate. If you have any questions, please contact Stephanie Garrido at (212) 320-7310.

You understand that this letter represents the complete agreement between you and the Firm with respect to your compensation and other matters addressed in this letter, and that this letter replaces any prior written or oral agreements or understandings.

Inglis, Craig
Page 4 of 4

Craig, we are enthusiastic and pleased that you are going to be a part of our organization. Please confirm your agreement to the above by signing a copy of this letter in the space provided below, ~~and returning it to Stephanie Garrido in the enclosed envelope no later than May 15, 2008.~~ An additional copy of this letter is enclosed for your files. Please contact me at (212) 320-7310 if you have any additional questions or concerns.

Sincerely,

Vincenza Cruz
Vice President
ITD Human Resources

I agree to and accept the terms described in this letter and further affirm that it is my intention to commence my employment on the start date described in this letter. I acknowledge that no representations were made to induce execution of this letter which are not expressly contained in this letter.

_____          ____6/13/08_____
Craig Inglis                                                          Date

# EXHIBIT B

3/11/13
Gmail - FW: Barclays Offer - Follow Up



# FW: Barclays Offer - Follow Up

**Inglis, Craig** <craig.inglis@lehman.com>  
To: craig.inglis@gmail.com

Wed, Oct 1, 2008 at 3:48 PM

```
> 
> _____
> From:      Diamond, Stephanie
> Sent: Wednesday, October 01, 2008 3:44 PM
> To:   Inglis, Craig
> Cc:   Pittenger, Linda; Platt, Jessica
> Subject:     RE: Barclays Offer - Follow Up
>
> Please see my answers below
>
> _____
> From:      Inglis, Craig
> Sent: Tuesday, September 30, 2008 9:31 PM
> To:   Diamond, Stephanie
> Subject:     RE: Barclays Offer - Follow Up
>
> FYI - sorry about the typo: "bit of a stinking point" should have read
> "bit of a sticking point".
>
> _____
> From:      Inglis, Craig
> Sent: Tuesday, September 30, 2008 9:30 PM
> To:   Diamond, Stephanie
> Subject:     RE: Barclays Offer - Follow Up
>
> Hi Stephanie,
> as I'm sure you are aware there are a number of issues I am currently
> awaiting HR responses to:
>
> *    When will I be paid? My previous paycheck (deposited on Sept 19)
> bounced and the monies were clawed back from my checking account the
> following week. My bank notified me that there was insufficient funds
> in the payroll account (contrary to the legal requirement). Lehman HR
> says its a clerical issue but so far I haven't received any pay since
> September 6th - as I'm sure you will understand not getting paid is a
> bit of a stinking point and I'd like to get paid before I move on to
> Barclays. This is still under review and we do not have a timeline as
> to when they will be able to unfreeze these accounts and pay those
> employees who were impacted
>
> *    What is the status of my employment with Lehman and how does it
> affect my compensation guarantee? I'm told that I have not been
> terminated and consequently my understanding is that my employment and
> compensation agreement is still in effect with Lehman. You have been
> offered a role at Barclays, your current employment with Lehman is no
> longer in standing. As far as guarantees, management within Barclays
```

> is currently reviewing guarantees and deciding if any will be carried
> over into the employment at Barclays. Your guarantee is with a
> bankrupt company and Barclays is not required to pay this.
>
> *    What is the current operating status of Lehman (my employer)? My
> understanding is that LBHI is in Chapter 11 bankruptcy but that the
> broker dealer is still operating normally. Am I employed by LBHI or
> the broker dealer subsidiary? Both entities are in the process of
> Bankruptcy, so it is not pertinent. There is no business as usual
> under these businesses, they are in the process of unwinding.
>
> *    What effect does sending an email to
> acceptbarclaysoffer@lehman.com or declinebarclaysoffer@lehman.com
> have on my employment contract with my current employer? Does it in
> anyway affect my current employment agreement? Would I still be a
> Lehman employee after sending this email? If not, how and when would
> any transition occur? You are no longer in standing with Lehman. It
> is either accept or decline the offer at Barclays. There is no role
> at LB for you.
>
> *    Please clarify what issue you expect with salary payments (as
> intimated below)? Is there any reason I should not expect to be fully
> compensated by Lehman in line with my current employment agreement?
> Barclays has agreed to take on the payroll for those employees that
> they have made offers to. If you do not accept the role, you will no
> longer be eligible for pay.
>
> Thanks
>
> Craig
>
> _____
> From:      Diamond, Stephanie
> Sent: Tuesday, September 30, 2008 9:01 PM
> Subject:   Barclays Offer - Follow Up
>
> Our records indicate that you have not accepted or declined the
> Barclays Capital offer. We have been informed that employees who
> have not responded to the offer from Barclays will not receive a
> Barclays email address until they do so. Another potential issue as
> time passes if we have not received a response on whether you have
> accepted or declined the offer may be with salary payments.
>
> In order to accept or decline the offer, it is necessary that you send
> an email to either acceptbarclaysoffer@lehman.com or
> declinebarclaysoffer@lehman.com.
>
>
------------------------------------------------

This message is intended only for the personal and confidential use of the designated recipient(s) named above.
If you are not the intended recipient of this message you are hereby notified that any review, dissemination,
distribution or copying of this message is strictly prohibited. This communication is for information purposes only
and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an
official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission
cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete
or accurate and it should not be relied upon as such. All information is subject to change without notice.

IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.