Hearing Date and Time:  June 13, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Omnibus Objection Reply Deadline: June 11, 2013 at 12:00 p.m. (Prevailing Eastern Time)
Cross-Motion Objection Deadline:  June 6, 2013 at 4:00 p.m. (Prevailing Eastern Time)
Cross-Motion Reply Deadline:  June 11, 2013 at 12:00 p.m. (Prevailing Eastern Time)

Paul M. Basta, P.C.
Mark E. McKane (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for LBREP Lakeside SC Master I, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**LBREP LAKESIDE SC MASTER I, LLC'S (A) RESPONSE TO THE MOTION BY LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN COMMERCIAL PAPER INC. FOR AN ORDER (I) DETERMINING THAT THE LCPI SETTLEMENT WAS ENTERED INTO IN GOOD FAITH PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 877 AND 877.6, AND, BASED ON SUCH GOOD FAITH FINDING AND FOR OTHER REASONS, (II) DISALLOWING AND EXPUNGING PROOFS OF CLAIM NUMBER 28845 AND 28846, AND (B) CROSS-MOTION TO TRANSFER FOR IMPROPER FORUM**

The Court should transfer the motion to the proper forum or deny it as devoid of any requisite evidence to sustain a good faith finding.  In 2006, Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") structured a loan transaction that resulted in a $235 million first lien credit facility and an $85 million second lien term loan facility (the "2006 Financing") to LBREP/L-SunCal Master I LLC and three of its four residential real estate development projects (collectively, the "SunCal Debtors").  From the 2006 Financing, $144 million was paid as a dividend to three parties owning equity in the SunCal

Debtors: Lehman-affiliate LBREP Lakeside SC Master I, LLC (together with SC Master Holdings, LLC and SC Master Parent Holdings, LLC, "LBREP Lakeside"), SCC Ranch Venture, LLC (together with SCC Acquisitions, Inc. and SCC Acquisitions, LLC, "SunCal"), and Lakeside Capital Partners II, LLC ("Lakeside").

Following 2008 involuntary petitions, the Chapter 11 Trustee for the SunCal Debtors (the "SunCal Trustee") raised fraudulent transfer and fiduciary duty claims against LCPI based on the 2006 Financing, and sought to avoid LCPI's liens in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"). Those claims were settled in 2010 (the "LCPI Settlement"). This Court approved the LCPI Settlement without a good faith finding. The California Bankruptcy Court also approved the LCPI Settlement, noting that LCPI did *not* seek a good faith finding. Separately, the SunCal Trustee raised fraudulent transfer and fiduciary duty claims against LBREP Lakeside, SunCal, and Lakeside based on the same 2006 Financing. Those claims were settled with the SunCal Trustee in 2012 (the "LBREP Lakeside Settlement"). The California Bankruptcy Court approved the LBREP Lakeside Settlement, expressly finding it was a good faith settlement. Prior to the LCPI Settlement, LBREP Lakeside filed claims in LBHI's and LCPI's bankruptcy for contribution and indemnity based on the SunCal Trustee's allegations related to the 2006 Financing.

Now, almost three years after the LCPI Settlement, LBHI and LCPI ask this Court to extinguish LBREP Lakeside's contribution and indemnity claims by finding that the LCPI Settlement—entered into in *California* to settle claims originating in the *California Bankruptcy Court*—was a "good faith" settlement *under California law*. Rather than filing its Motion with the court that has considered both the LCPI Settlement and the LBREP Lakeside Settlement, as

well as the SunCal Trustee's underlying claims against both LCPI and LBREP Lakeside—the California Bankruptcy Court—LBHI and LCPI ask this Court to resolve the issue.[1]

The Motion should be transferred to the California Bankruptcy Court or denied with leave to refile in the California Bankruptcy Court. The LCPI Settlement provides that LCPI submits to the California Bankruptcy Court's jurisdiction over disputes arising from its terms. The California Bankruptcy Court is in a unique position to evaluate the proportionate liability of LCPI and LBREP Lakeside—the core inquiry under "good faith" analysis. Because LBREP Lakeside's claims against LCPI and LBHI hinge on whether the LCPI Settlement was entered into in "good faith," this Court should refrain from hearing the Motion until the California Bankruptcy Court has made such a determination.

Even were this Court to address the Motion, LCPI does not offer "substantial evidence" that its settlement payment fell within a reasonable range of proportionate liability—LCPI has offered no evidence ***at all*** and relies only upon previous briefing in both this Court and the California Bankruptcy Court. If LCPI does intend to present evidence of good faith to this Court, LBREP Lakeside must be allowed to take discovery before any evidentiary hearing.

In addition, LCPI ignores that proportionate liability was not even a consideration of the parties to the LCPI Settlement. The SunCal Trustee has admitted (1) that he performed no analysis of whether LCPI's settlement payment fell within a range of proportionate liability, and (2) that the LCPI Settlement was ***not intended*** to be a good faith settlement that would impact LBREP Lakeside's contribution rights. LCPI also ignores that, pursuant to the LCPI Settlement, LCPI and the other First Lien Lenders are entitled to receive approximately ***$6 million*** out of LBREP Lakeside's $13.8 million settlement payment (the "Settlement Payment").

---

[1]  In their Motion, LBHI and LCPI define themselves collectively as "Lehman" and make collective arguments. Motion at 2. They argue that "because the LCPI Settlement was entered into in good faith . . . Lehman would be protected from claims." *Id.* at 18. Accordingly, this Response and Cross-Motion will treat them jointly.

LCPI filed its Motion in the wrong court without any supporting evidence. This Court should transfer or deny the Motion.

## BACKGROUND

1.      LCPI's Motion presents only minimal facts about LCPI's key role in the underlying litigation—ignoring the core issue under good faith analysis, the proportionate liability of the parties.

### A.      LBREP/L-SunCal Master I LLC Entered A Publicly-Marketed January 2006 Credit Facility And Issued A Disclosed Dividend.

2.      LBREP/L-SunCal Master I was a separately incorporated venture between SCC Ranch Ventures, LLC and LBREP Lakeside SC Master I, LLC that was organized to develop four real estate projects in Southern California.[2]  In January 2006, LBREP/L-SunCal Master I entered into a loan transaction that resulted in a $235 million first lien credit facility and an $85 million second lien term loan facility.  Ex. A at ¶ 97.  The First and Second Lien Credit Agreements placed the value of the SunCal Debtors and their properties at $977.5 million based on appraisals, due diligence, and solvency certificates that certified the SunCal Debtors' solvency.  *See* Ex. A at ¶¶ 97-109.[3]  As part of the recapitalization, $144 million was paid as a dividend (the "Dividend") to LBREP Lakeside, SunCal, and Lakeside.  Ex. A at ¶ 100.  The Dividend and the liens formed the basis of the SunCal Trustee's claims.

---

[2]  *See* SunCal Trustee's Amended Complaint, *Siegel v. LBREP Lakeside SC Master I, LLC, et al.*, No. 8:11-ap-01084-ES (Bankr. C.D. Cal. Sep. 23, 2011), ECF No. 41 at ¶¶ 4, 27-29, attached hereto as Exhibit A.

[3]  *See also* Excerpts of $235,000,000 First Lien Credit Agreement among LBREP/L-SunCal Master I, LLC, as Borrower, the several Lenders from time to time parties hereto, Lehman Brothers Inc., as Arranger, Lehman Commercial Paper Inc., as Syndication Agent, and Lehman Commercial Paper Inc., as Administrative Agent (Jan. 19, 2006) at Section 1.1, attached hereto as Exhibit B; Excerpts of $85,000,000 Second Lien Credit Agreement among LBREP/L-SunCal Master I LLC, as Borrower, the several Lenders from time to time parties hereto, Lehman Brothers Inc., as Arranger, Lehman Commercial Paper, Inc., as Syndication Agent, and Lehman Commercial Paper Inc., as Administrative Agent (Jan. 19, 2006) at Section 1.1, attached hereto as Exhibit C.

**B.    After Creditors Initiated The SunCal Bankruptcy Proceedings, LCPI Attempted To Lift The Automatic Stay And Foreclose On The Properties.**

3.    In September 2008, creditors initiated involuntary bankruptcy proceedings against the SunCal Debtors by filing petitions under Title 11 of the United States Code.  On October 2, 2008, LCPI filed a Motion for Relief from the Automatic Stay in the California Bankruptcy Court in order to foreclose on its secured collateral under the 2006 Financing.[4]  On October 30, 2008, the California Bankruptcy Court approved the appointment of the SunCal Trustee.  The SunCal Trustee opposed LCPI's Motion for Relief from the Automatic Stay.[5]

**C.    The SunCal Trustee Alleged That LCPI Caused The SunCal Debtors' Demise And Alleged Fraudulent Transfer Claims Against LCPI.**

4.    On November 13, 2008, the SunCal Trustee filed an Omnibus Opposition to LCPI's Motion for Relief from the Automatic Stay.  The SunCal Trustee argued that (1) LCPI's secured claims were subject to equitable subordination, and (2) LCPI's security interests constituted fraudulent transfers.  The SunCal Trustee alleged that "Lehman Commercial *caused* the Debtors' financial demise," "Lehman Commercial *forced* the Debtors (presumably through negotiations with Lehman Lakeside) to . . . increase the amount required to be deposited in the Development Account by $25 million, which the Debtors clearly could not do," and that because the SunCal Debtors "obligated themselves to pay $320 million and granted Lehman Commercial security interests," but "did not receive reasonably equivalent value," "Lehman Commercial's liens against the Development Accounts and the Developments can be avoided as fraudulent transfers."  Ex. D at 18, 22 (emphasis added).

---

[4]  *See* Motion for Relief from the Automatic Stay, *In re  LBREP/L-SunCal Master I, LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Oct. 2, 2008), ECF No. 6.

[5]  *See* Omnibus Opposition of Chapter 11 Trustee to Motions for Relief from the Automatic Stay Filed By Lehman Commercial Paper Inc., Memorandum of Points and Authorities In Support Thereof, *In re LBREP/L-SunCal Master I, LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Nov. 13, 2008), ECF No. 81, attached hereto as Exhibit D.

5.      In his declaration in support of the Omnibus Opposition, the SunCal Trustee attached a proposed complaint on behalf of all SunCal Debtors asserting nine claims—including three fraudulent conveyance claims and a fiduciary duty claim substantially similar to claims raised in the SunCal Trustee's subsequent Amended Complaint against LBREP Lakeside— against LCPI, LBREP Lakeside, Gramercy Warehouse Funding I, LLC, and Square Mile as joint tortfeasors.[6]

### D.      LBREP Lakeside Filed Proofs Of Claims Against LCPI And LBHI Based On Contribution And Equitable Indemnification.

6.      On September 22, 2009, LBREP Lakeside filed proofs of claim numbers 28845 and 28846 asserting contribution and equitable indemnification against LBHI and LCPI, respectively, based on the SunCal Trustee's allegations related to the 2006 Financing.[7]

### E.      LCPI Settled The SunCal Trustee's Claims.

7.      The SunCal Trustee's objection and assertion of potential claims prompted settlement negotiations with LCPI.    In 2010, the SunCal Trustee, LCPI, and the First Lien Lenders reached a settlement agreement in which LCPI and the First Lien Lenders received an allowed claim in the SunCal Bankruptcy Cases of over $230 million, a full release from the Trustee's claims, and a 50% share in the recovery from the fraudulent transfer litigation to be brought against LBREP Lakeside and other defendants.[8]    In exchange, the SunCal Trustee retained the use of $5.5 million in cash collateral and received 3.5% of the net proceeds of an

---

[6]  *See* Declaration of Alfred H. Siegel In Support of Omnibus Opposition to Motions for Relief from the Automatic Stay Filed by Lehman Commercial Paper Inc., *In re LBREP/L-SunCal Master I, LLC, et al.*, No. 8:08-bk-15588-ES (Bank. C.D. Cal. Nov. 13, 2008), ECF No. 79, attached hereto as Exhibit E.

[7]  *See* Proofs of Claim Nos. 28845 and 28846, attached hereto as Exhibits F-1, F-2.

[8]  *See* Motion to Approve Amended and Restated Compromise Between the Trustee, The Official Committee of Unsecured Creditors, and Lehman Commercial Paper Inc., In Its Capacity And as Administrative Agent for the 1st Lien Lenders, *In re LBREP/L-SunCal Master I, LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Sept. 21, 2010), ECF No. 487, at Ex. 1, attached hereto as Exhibit G.

auction sale of the Properties.  *See* Ex. G.  Notably, LCPI acknowledged in its settlement filing

that its share of the First Lien debt was only 30%—meaning it had at most a 30% interest in the

cash collateral and sale proceeds given to the SunCal Trustee as consideration.[9]

### F. This Court Authorized LCPI To Enter Into The LCPI Settlement Without A Good Faith Finding.

8.    On September 2, 2010, LCPI filed a motion in this Court seeking authorization to

enter into the LCPI Settlement.  *See* Ex. H.  This Court granted LCPI's motion on September 29,

2010 based on its analysis of the LCPI Settlement's ***benefits to LCPI***.[10]  In its Order granting

LCPI's motion, this Court expressly preserved third parties' rights:

> [N]otwithstanding anything to the contrary in the Amended Term Sheet and this
> Order, nothing in the Amended Term Sheet is intended to affect the rights, if any,
> of any Person . . . except to the extent that a Person is a party to the Amended
> Term Sheet, with such Person's rights being affected to the extent expressly
> provided in the Amended Term Sheet . . . .

Ex. I at 3.  This Court did not consider the alleged proportionate liability of LCPI, and no

evidence of proportionate liability was presented.  *Id.*[11]  In fact, at the hearing on LCPI's motion,

this Court noted that the California Bankruptcy Court was "the proper [forum] for raising many

of [the third-party] issues" with the LCPI Settlement.  Ex. J at 172:7-12

---

[9]  *See* Motion of Lehman Commercial Paper Inc. Pursuant to Section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Approval of That Certain Amended and Restated Compromise By and Among Lehman Commercial Paper Inc., Alfred H. Siegel, as Chapter 11 Trustee for the SunCal Debtors, and the Official Committee of Unsecured Creditors in the SunCal Bankruptcy Cases, *In re Lehman Brothers Holdings Inc.*, No. 08-13555-JMP (Bankr. S.D.N.Y. Sept. 2, 2010) ECF No. 11153, at 9, attached hereto as Exhibit H.

[10]  *See* Order Pursuant to Section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 Approving that Certain Amended and Restated Compromise by and Among Lehman Commercial Paper Inc., Alfred H. Siegel, as Chapter 11 Trustee for the SunCal Debtors, and the Official Committee of Unsecured Creditors in the SunCal Bankruptcy Cases, *In re Lehman Brothers Holdings Inc.*, No. 08-13555-JMP (Bankr. S.D.N.Y. Sept. 29, 2010), ECF No. 11683, attached hereto as Exhibit I.

[11]  *See also* Excerpts of Transcript of Sep. 22, 2010 Hearing on LCPI's Motion To Approve Settlement, attached hereto as Exhibit J.

### G.    LCPI Has Admitted That It Was A Key Party To Any Alleged Fraudulent Transfer.

9.    As sole administrative agent and syndication agent for the First and Second Lien Loans, LCPI was the party responsible for sizing the loans and the syndication to the other lenders.  In response to LBREP Lakeside's 2009 discovery requests, LCPI stated that:

> LCPI's real estate group conducted standard due diligence and underwriting with regard to then-current and potential values of the properties . . . and the creditworthiness of the sponsor, including without limitation reviewing appraisals, environmental studies, entitlement status reviews, market studies, cash flow projections and financial records of the sponsor.  LCPI's credit committee reviewed the results of the due diligence and underwriting and, based on the appraised value of the underlying properties and the projects for future developments and lot sales, ***approved the real estate group's recommendation of a first lien not to exceed $235 million and a second lien loan not to exceed $75 million.***[12]

LCPI also stated that it "served as syndication agent and administrative agent for the January 2006 Loans."[13]   LCPI's role in the transactions underlying the fraudulent transfer claims is pervasive.  LCPI was a key participant in the sizing, arranging, and syndication of the transaction that resulted in the $144 million Dividend at issue in the fraudulent transfer claims.

### H.    The California Bankruptcy Court Approved The LCPI Settlement Without A Good Faith Finding.

10.    On December 21, 2010, the California Bankruptcy Court held a hearing to consider approval of the LCPI Settlement.  In response to questioning at the hearing, the SunCal Trustee testified that he did not intend for the settlement to affect any rights, defenses or claims

---

[12]   Response of Lehman Commercial Paper, Inc., as First Lien Administrative Agent for the First Lien Lenders, to LBREP Lakeside SC Master I, LLC's First Set of Interrogatories (Dec. 4, 2009) at 5:17-26 (emphasis added), attached hereto as Exhibit K.

[13]   Response of Lehman Commercial Paper, Inc., As First Lien Administrative Agent For The First Lien Lenders, To LBREP Lakeside SC Master I, LLC's First Set Of Document Requests (Dec. 4, 2009) at 5:20-21, attached hereto as Exhibit L.

of third parties.[14]  The SunCal Trustee also testified that his understanding of this Court's order

authorizing LCPI to enter in the settlement was that "as far as the rights of the third parties I

don't believe they are impacted by the order."  Ex. M at 35:11-13.  The SunCal Trustee further

testified that he understood there was a California procedure by which a party to a settlement can

attempt to cut off contribution and indemnification rights for third parties, but that he was not

seeking to cut off those rights.  *Id.* at 38:3-15.

11.    On January 27, 2011, the California Bankruptcy Court approved the LCPI

Settlement.[15]  Like this Court, the California Bankruptcy Court expressly preserved third parties'

rights:

> Notwithstanding anything to the contrary in the Amended Term Sheet and this
> Order, nothing in the Amended Term Sheet is intended to affect the rights, if any,
> of any Person, including the 2nd Lien Lenders other than the LCPI 2nd Lien
> Lender, and the 3rd Lien Lenders other than the LCPI 3rd Lien Lender, except to
> the extent that a Person is a party to the Amended Term Sheet, with such Person's
> rights being affected to the extent expressly provided in the Amended Term
> Sheet.

Ex. N at ¶ 5.  The California Bankruptcy Court likewise did not consider the proportionate

liability of LCPI.  No party sought a good faith finding, and the Court did not rule that the LCPI

Settlement constituted a good faith settlement under California law.  *Id.*

**I.    The SunCal Trustee Retained Litigation Counsel And Pursued Claims Against LBREP Lakeside.**

12.    Following the LCPI Settlement, the SunCal Trustee retained Orrick, Herrington &

Sutcliffe LLP to pursue claims against LBREP Lakeside, SunCal, and Lakeside.  The SunCal

---

[14]  *See* Excerpts of Transcript of Hearing Before the California Bankruptcy Court to Consider Approval of the LCPI Settlement (Dec. 21, 2010) at 32:15-18; 36:23-37:2, attached hereto as Exhibit M.

[15]  *See* Order Granting Motion to Approve Amended and Restated Compromise Between the Trustee, the Official Committee of Unsecured Creditors, and Lehman Commercial Paper Inc, In its Individual Capacity and as Administrative Agent for the 1st Lien Lenders, *In re LBREP/L-SunCal Master I LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Jan. 27, 2011), ECF No. 626, attached hereto as Exhibit N.

Trustee filed an action in the United States District Court for the Central District of California on

October 29, 2010 (the "Litigation"), which was transferred to the California Bankruptcy Court.

LBREP Lakeside moved to dismiss the Litigation on March 25, 2011. After the California

Bankruptcy Court ordered defendants to produce all documents referring to the 2006 Financing,

the SunCal Trustee filed an Amended Complaint, and LBREP Lakeside moved to dismiss on

October 25, 2011.

**J.      LBREP Lakeside's Records Establish That LCPI Was A Key Party To Any Alleged Fraudulent Transfer.**

13.      The evidence establishes that LCPI should bear proportionate liability for both the

SunCal Trustee's breach of fiduciary duty claim and fraudulent transfer claims.

**i.      LCPI Aided And Abetted Any Alleged Breach Of Fiduciary Duty.**

14.      In the SunCal Trustee's Amended Complaint, he alleged that LBREP Lakeside

and other defendants breached fiduciary duties to the operating entities, in that "almost

immediately after making their initial capital contributions to the Real Estate Projects,

Defendants began discussing a plan to obtain a large loan that would enable Defendants to pull

all of their equity investment out of the deal." Ex. A ¶ 62.

15.      Contemporaneous evidence demonstrates that LCPI was not only aware of this

effort, but coordinated and structured the deal from the very beginning. On August 28, 2005,

LBREP Lakeside employee Frank Cappello emailed colleague Karen Blakely discussing a

proposal by Lehman employee Tom Chilton:

> The lehman loan group is working on a term sheet for a large senior loan on the first suncal master which chilton said could take up to 100m of our equity out of the deals.[16]

---

[16]      August 28, 2005 Email from Frank Cappello to Karen Blakely Discussing Tom Chilton Proposal (LBREP00270230), attached hereto as Exhibit O.

LCPI knew about, and aided in, the redistribution of LBREP capital from the Master I real estate projects—the alleged breach of fiduciary duty.

### ii.    LCPI Structured The Alleged Fraudulent Transfer.

16.    LCPI also structured a key component of the SunCal Trustee's constructive fraudulent transfer theory—the imposition of a $50 million liquidity restriction on the LBREP/L-SunCal Master I entity.  In a November 4, 2005 ratings agency presentation update drafted by Lehman employee Tom Chilton, LCPI presented the following loan structure:[17]

---

**I. Overview of Structural Changes**

- ◆ SunCal and Lehman have targeted a structure that includes a Revolver to optimize the efficiency of the transaction
  - – While the total Credit Facility will remain $320mm, efficiency created through the revolver will reduce the term loan components to a total of $245mm
  - – Structure will retain the ability of sponsor to "balance sheet" up to $50mm of cash to create additional cash and liquidity
- ◆ Proposed structure will include a $25mm Liquidity Reserve not previously contemplated
- ◆ Improved Covenants
  - – An ongoing liquidity covenant of $50mm will be added to the covenant package
  - – First Lien Leverage and Total Leverage covenants have been reduced

---

17.    The SunCal Trustee seized on the $50 million liquidity restriction as the reason the projects did not have sufficient capital to continue development, alleging that "because of the $50 million liquidity requirement, there was another $25 million on the revolving credit line that was never made available to the Debtors . . . resulting in a combined $50 million of lost liquidity for the Debtors" and that "considering the loan liquidity requirements" the facility would provide the SunCal Debtors "with insufficient capital to pay their debts as they became due."  Ex. A ¶¶ 116, 91.   Contemporaneous emails indicate that SunCal raised concerns about the LCPI-imposed liquidity covenant, but that LCPI ultimately ignored those concerns.[18]

---

[17] November 4, 2005 Ratings Agency Presentation Update By Tom Chilton (LBREP00232052) at 2, attached hereto as Exhibit P.

[18] *See* November 7, 2005 Email from Ed Nolan to Tom Chilton re "Rating Agency Update," (LBREP00232069), attached hereto as Exhibit Q.

18.    LCPI imposed the liquidity covenant that served as the basis for the SunCal

Trustee's constructive fraudulent transfer claims, and it participated in the overall loan scheme

that the SunCal Trustee challenged as a breach of fiduciary duty.   As the architect of the

challenged loan structure, LCPI bears substantial responsibility for any resulting liability.

### K.    The Parties To The Litigation Participated In A Seven-Month Mediation Process And Settled.

19.    Following the motion to dismiss briefing, the Litigation parties participated in five

full-day mediation sessions conducted by the Honorable Mitchel R. Goldberg, Retired.[19]

Following the mediation sessions, the Litigation parties reached the LBREP Settlement.   The

Settlement Payment consisted of a "lump sum" payment of $16 million directly to the SunCal

Trustee.   *See* Ex. R ¶ 26; Ex. S ¶ 12.   The Settlement Payment was divided between settling

defendants according to the following agreement: the LBREP Defendants collectively

contributed $13.8 million; the SunCal Defendants contributed $1.5 million; and the Lakeside

Defendants contributed $700,000.   *See* Ex. R ¶ 27.   The LBREP Defendants then sought and

were granted a good faith settlement finding from the California Bankruptcy Court.[20]   Pursuant

to the LCPI Settlement, LCPI and the First Lien Lenders are entitled to ***half*** of the $16 million

Settlement Payment, after deducting fees.   *See* Ex. G.

---

[19]    *See* Declaration of Mark E. McKane In Support of the LBREP Defendants' Memorandum of Points and Authorities In Support of Motion for Good Faith Settlement Determination, *In re LBREP/L-SunCal Master I LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Nov. 13, 2012), ECF No. 936-1 at ¶ 16, attached hereto as Exhibit R; Declaration of Judge Mitchel R. Goldberg, *In re LBREP/L-SunCal Master I LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Nov. 13, 2012), ECF No. 936-2 at ¶ 3, attached hereto as Exhibit S.

[20]    *See* Order Granting the Liquidating Trustee's Motion for Order Approving and Authorizing: (1) Compromise Between the Liquidating Trustee, Dividend Action Defendants and SunCal Management, LLC Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) Good Faith Settlement Determination Pursuant to California Code of Civil Procedure § 877.6; and (3) Compensation to Special Litigation Counsel Orrick, Herrington & Sutcliffe LLP Pursuant to 11 U.S.C. § 328, *In re LBREP/L-SunCal Master I LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Nov. 29, 2012) ECF No. 949, attached hereto as Exhibit T.

## ARGUMENT

I.    **THIS COURT IS NOT THE PROPER FORUM FOR LCPI'S GOOD FAITH MOTION, AND THE MOTION SHOULD BE TRANSFERRED TO THE CALIFORNIA BANKRUPTCY COURT.**

20.    The California Bankruptcy Court is the proper forum for LCPI's Motion because (1) under the terms of the LCPI Settlement the parties submit to the California Bankruptcy Court's jurisdiction for any disputes related to the settlement, and (2) it is the only Court that has considered the SunCal Trustee's claims against both LCPI and LBREP Lakeside, as well as approved both the LCPI Settlement and the LBREP Lakeside Settlement.

21.    LCPI has agreed that the California Bankruptcy Court is the proper forum for disputes related to the LCPI Settlement.  The LCPI Settlement specifically provides, "The parties hereto agree that the California Bankruptcy Court shall have jurisdiction to hear and to determine *all matters, disputes and controversies related to this Term Sheet* and the subject matter hereof, and each party hereby submits to the jurisdiction and venue of the California Bankruptcy Court with respect thereto."  Ex. G at Ex. 1 § V(4) (emphasis added).  Likewise, this Court previously noted at the hearing authorizing LCPI to enter into the LCPI Settlement, "the proper [forum] for raising many of these [third-party] issues is the bankruptcy court in Santa Anna, California when the settlement will be presented to Judge Smith."  Ex. J at 172:7-10.  For these reasons, the California Bankruptcy Court should rule on the issue of good faith, and LBREP Lakeside hereby moves this Court to transfer LCPI's Motion to the California Bankruptcy Court pursuant to 28 U.S.C. § 1412, or deny the Motion with leave to refile in the California Bankruptcy Court.

22.    Section 1412 of Title 28 provides, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412; *see Frazier v. Lawyers Title Fin. Corp. (In re Butcher)*, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985).  Bankruptcy Courts routinely invoke Section

1412 to transfer actions to other Bankruptcy Courts.  In *Jim Walter Res., Inc. v. Belcher (In re Hillsborough Holdings Corp.)*, for example, the court noted that bankruptcy courts may transfer adversary proceedings directly to other bankruptcy courts in the interest of justice or for convenience of the parties, bypassing district courts, provided that the transferee court also operates under general reference issued by the district court of that district, as the California Bankruptcy Court does here.  *See* 146 B.R. 1008, 1010 (Bankr. M.D. Fla. 1992) (citing 28 U.S.C. § 1412 and 28 U.S.C. § 157(a)).

23.    LCPI's Motion for a good faith finding under California law belongs in the California Bankruptcy Court.  The SunCal Trustee's settled allegations against LCPI involved the fraudulent conveyance of liens against California real property.  That same California real property was wholly owned by the SunCal Debtors and administered by the California Bankruptcy Court since 2008.  The same liens were the subject of the SunCal Trustee's equitable subordination efforts in the California Bankruptcy Court.  The LCPI Settlement provided for LCPI and the First Lien Lenders' $230 million allowed claim in the SunCal Bankruptcy Cases as well as a 50% recovery in the California Litigation.

24.    The California Bankruptcy Court is in a unique position to evaluate the proportionate liability of LCPI and LBREP Lakeside and apply the California law on good faith settlements to that evaluation—it is the only Court that has considered **both** the LCPI Settlement and the LBREP Lakeside Settlement.  The California Bankruptcy Court has lived with the SunCal Trustee's allegations against LCPI and LBREP Lakeside since 2008, and the interests of justice would be served by having the same court rule on the issues of proportionate liability and good faith.

25.    The Court should transfer the motion to the California Bankruptcy Court, or deny it with leave to refile in the California Bankruptcy Court.  *See* 28 U.S.C. § 1412; *In re Hillsborough Holdings Corp.*, 146 B.R. at 1010.

**II.    LBREP LAKESIDE OBJECTS TO ANY PRESENTATION OF EVIDENCE AT THE FIRST HEARING ON THIS ISSUE PURSUANT TO LOCAL RULE 9014-2 AND REQUESTS TIME TO CONDUCT ADEQUATE DISCOVERY.**

26.    In the event the Court does not transfer LCPI's Motion, LBREP Lakeside hereby objects pursuant to Local Rule 9014-2 to the presentation of witness testimony at the first hearing on the Motion.  Local Rule 9014-2 provides that the "first scheduled hearing in a contested matter will not be an evidentiary hearing at which witnesses may testify" unless certain conditions not applicable here are satisfied.  Moreover, pursuant to the Court-Ordered Claims Hearing Procedures, the hearing must be a non-evidentiary hearing as LCPI has not served either a Notice of ADR Procedures or a Notice of Merits Hearing.[21]

27.    LCPI must present this Court with "***substantial evidence***" to support a "good faith" finding.  *Mattco Forge, Inc. v. Arthur Young & Co.*, 38 Cal. App. 4th 1337, 1350 (2d Dist. 1995) (reversing the lower court's good faith finding for lack of substantial evidence (citation omitted)).  If "there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion."  *Id.*  LCPI cannot prevail on its Motion because it has not submitted any evidence in support of a good faith finding.  LCPI has not presented any evidence to establish proportionate liability or any analysis of how its recovery from LBREP Lakeside's Settlement Payment impacts that proportionate share of liability.

---

[21]  Court-Ordered Claims Hearing Procedures and Alternative Dispute Resolution Procedures, §§ 4(a)-(c), attached hereto as Exhibit V.

28.     If LCPI intends to present evidence in support of its Motion, LBREP Lakeside must be afforded an opportunity to depose any witness or present rebuttal analysis.  Therefore, LBREP Lakeside objects to any witness testimony at the first hearing and requests sufficient time to conduct necessary discovery.[22]

## III.    THE LCPI SETTLEMENT WAS NOT A GOOD FAITH SETTLEMENT.

29.     If this Court addresses the merits of LCPI's Motion, it should deny the request for a good faith finding because (1) the evidence establishes that the LCPI Settlement is not a good faith settlement under California law, and (2) this Court's and the California Bankruptcy Court's previous rulings do not establish good faith.

### A.    The Evidence Establishes The LCPI Settlement Was Not A Good Faith Settlement.

30.     The LCPI Settlement was not a good faith settlement under California law. California Code of Civil Procedure Sections 877 and 877.6 provide that a release given to one joint tortfeasor in a "good faith" settlement "shall discharge the party to whom it is given from all liability for any contribution to any other parties."  Cal. Civ. Proc. Code § 877(b).

31.     There is no evidentiary basis for a "good faith" finding here.  In order to be declared a good faith settlement, the settlement must be "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries."  *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985).  As noted *supra*, LCPI must

---

[22] LCPI argues that, as the party objecting to the good faith finding, LBREP Lakeside bears the evidentiary burden. *See* Motion at 15.  LCPI bears the initial foundational burden on proportionate liability, which it has not met.  *See Greshko v. County of Los Angeles*, 194 Cal. App. 3d 822, 835 (2d Dist. 1987) (reversing good faith settlement because there was no foundation for the evaluation of the defendants' proportionate liability).  Furthermore, the objector's burden is met merely by pointing to the lack of evidence demonstrating proportionate liability.  *See Mattco Forge*, 38 Cal. App. 4th at 1351 ("In view of the absence of any substantial evidence to show the $250,000 value of the guarantee was within the reasonable range of Helmer & Neff's proportionate liability, Young met its burden in attacking the settlement as lacking in good faith.").  Notwithstanding LCPI's foundational burden, LBREP Lakeside must be afforded an opportunity to take discovery and present rebuttal evidence, another reason the first hearing cannot be an evidentiary hearing.

present this Court with "substantial evidence" to support a "good faith" finding. *Mattco Forge*, 38 Cal. App. 4th at 1352 ("because there is no substantial evidence the subject settlement is in the ballpark of Helmer & Neff's proportionate liability, the trial court abused its discretion in approving the good faith settlement.").  If a culpable tortfeasor settles for an amount that does not represent his or her "***fair share of the loss***," the trial court ordinarily will be required to find the settlement is not in "good faith." *Far W. Fin. Corp. v. D & S Co.*, 46 Cal. 3d 796, 815 (1988) (emphasis added).  In making a good faith determination, "the judge is not required to determine whether the settlement is reasonable between the settling parties, but rather, he is required to determine whether the settlement is reasonable vis-à-vis the nonsettling defendants." *Horton v. Superior Court*, 194 Cal. App. 3d 727, 733 (5th Dist. 1987).

32.    LCPI asks this Court to find its settlement in good faith, reasoning that because it paid something—anything—its settlement is *ipso facto* a good faith settlement.  LCPI has offered absolutely no ***evidence*** of what its proportionate share of liability ***should be*** vis-à-vis LBREP Lakeside.  *See Greshko v. County of Los Angeles*, 194 Cal. App. 3d 822, 835 (2d Dist. 1987) (reversing good faith settlement because there was no foundation for the evaluation of the defendants' proportionate liability).  Instead, the evidence establishes that any attempt to show proportionality would be futile.

33.    LCPI argues that the LCPI Settlement constituted a significant "give up" for LCPI: $5.5 million in cash collateral to the SunCal Trustee, a reduction in any potential recovery from the Litigation to 50% from 85%, and 3.5% of the net sales proceeds from the Properties.  Totaling these "give ups," LCPI estimates its settlement was worth between $11.25 and $11.95 million—arguing that "LCPI gave the SunCal Debtors Estate" the following consideration: $5.5 million in cash collateral already held by the SunCal Trustee, $4 million in "given up"

Litigation proceeds, and between $1.5 and $2.2 million from net sales proceeds from the Properties.[23]

34.     LCPI's valuation of its settlement consideration is incorrect and misleading. LCPI gave this consideration **together with the other First Lien Lenders**.  In LCPI's motion to approve the LCPI Settlement filed with this Court, it represented, "LCPI . . . holds approximately thirty percent (30%) of the debt outstanding under the First Lien Credit Agreement in its capacity as a First Lien Lender."  Ex. H at 9. [24]  LCPI's 30% interest in the First Lien debt would place its payment under the LCPI Settlement at $3.585 million **at most**.

35.     Far from a "give up" as LCPI contends, LCPI's retention its interests in a $230 million allowed claim and 50% Litigation recovery, as well as its retention of any cash collateral and sales proceeds at all, represented significant wins for LCPI given the SunCal Trustee's allegations that would have avoided or subordinated all of LCPI's claims in the SunCal Bankruptcy Cases.  LCPI transferred no cash to the SunCal Trustee.  Had the SunCal Trustee pursued his subordination claims, LCPI's recovery could have been **zero**—its interests in cash collateral, Litigation proceeds, and sales proceeds from the Properties would have been extinguished.

36.     The LCPI Settlement was not "reasonable" vis-à-vis LBREP Lakeside.  Even assuming the validity of LCPI's interests in the "give ups" under the LCPI Settlement, when the correct loan ownership percentage is applied, LCPI gave up **at most** $3.585 million.  In contrast,

---

[23]  *See* Motion at 8-9.

[24]  Likewise, in his motion to approve the LCPI Settlement in the California Bankruptcy Court, the SunCal Trustee represented that "LCPI owns approximately 30% of the first lien debt, approximately 15% of the second lien debt, and approximately 65% of the third lien debt."  Motion to Approve Amended and Restated Compromise Between the Trustee, the Official Committee of Unsecured Creditors, and Lehman Commercial Paper Inc, In its Individual Capacity and as Administrative Agent for the 1st Lien Lenders, California Bankruptcy Court Order Approving LCPI Settlement, *In re LBREP/L-SunCal Master I LLC, et al.*, No. 8:08-bk-15588-ES (Bankr. C.D. Cal. Sep. 21, 2010), ECF No. 487, at n.10, attached hereto as Exhibit G.

LBREP Lakeside settled the Litigation with an ***all-cash*** payment of $13.8 million. These are ***disproportionate*** settlement payments. In addition, LCPI's and the First Lien Lenders' 50% stake in LBREP Lakeside's Settlement Payment distorts their share of the loss. *See Horton*, 194 Cal. App. 3d at 733 (settlement must be reasonable vis-à-vis non-settling defendants). Because LCPI and the First Lien Lenders are entitled ***half*** of LBREP Lakeside's net Settlement Payment—***$6 million dollars***—LCPI and the First Lien Lenders actually realized a cash ***profit*** from the LCPI Settlement of $500,000 even assuming a 100% right to the $5.5 million in cash collateral given up, which the SunCal Trustee contested. In addition, LCPI and the First Lien Lenders retained the vast majority of their interest in the sale proceeds of the Properties—$70 million[25]—transferring a mere 3.5% to the SunCal Trustee to settle claims that would have avoided all of LCPI's claims in the SunCal Bankruptcy Cases.

37.     California courts routinely deny "good faith" findings where settlements do not fairly allocate liability to the settling joint tortfeasor. In *Long Beach Mem'l Med. Ctr. v. Super. Ct.*, 172 Cal. App. 4th 865 (2d Dist. 2009), for example, the California Court of Appeals reversed a "good faith" settlement finding for a doctor whose settlement was two percent of the stated potential liability. Because "[e]ven a slight probability of liability on Dr. Asrat's part would warrant a contribution more significant than 2 percent," the settlement was disproportionate and could not limit the other defendants' contribution rights. *Id.* at 874.

38.     Here, LCPI was the architect of the First and Second Lien Loan structure and responsible for the imposition of the $50 million liquidity restriction—the Trustee's key constructive fraudulent transfer allegation in the Litigation. In addition, LCPI pushed LBREP Lakeside to redistribute equity from the SunCal Debtors through the First and Second Lien

---

[25] *See* Motion at 9, n.11.

Loan—the alleged breach of fiduciary duty.  As in *Long Beach*, the SunCal Trustee believed that there was more than a "slight probability" that LCPI was liable for fraudulent transfer and breach of fiduciary duty—his allegations against both LCPI and LBREP Lakeside stemmed from LCPI's actions.  There is no basis for a finding of good faith.

**B.    The Courts' Previous Rulings Do Not Establish That The LCPI Settlement Was A Good Faith Settlement.**

39.    LCPI erroneously argues that this Court's and the California Bankruptcy Court's previous rulings establish that the LCPI Settlement was a good faith settlement.  LCPI did not present any evidence of proportionate liability to this Court or the California Bankruptcy Court in 2010.  To the contrary, LCPI and the SunCal Trustee expressly stated they were not seeking a good faith finding at the time, and also that there would be no impact on third-party rights.

40.    In his 2010 deposition, the SunCal Trustee stated that the LCPI Settlement was not intended to impact third-party claims against LCPI or to release or waive LBREP Lakeside's contribution claims against LCPI.[26]  The SunCal Trustee also testified that he conducted no analysis of LCPI's proportionate liability, necessarily meaning that LCPI's settlement payment was not based on a ballpark approximation of fault and could not have been a good faith settlement.  Ex. W at 194:9-23.[27]  LCPI did not present—and could not have presented— evidence in 2010 sufficient to show that the LCPI Settlement reflected an approximation of LCPI's liability vis-à-vis LBREP Lakeside—the parties did not even consider that issue.

41.    In addition, at this Court's hearing addressing the LCPI Settlement, LCPI's counsel represented that "the settlement does not seek to adversely modify any rights except the

---

[26] *See* Transcript of Deposition of Alfred H. Siegel (Nov. 30, 2010) at 181:16-182:1, attached hereto as Exhibit W.

[27] His counsel likewise stated that the intent of the SunCal Trustee was not to impact LBREP Lakeside's contribution or indemnity rights, stating "we're not seeking under the California . . . Civil Procedure Code [sections 877 and 877.6] a finding of a good faith settlement.  So we really have no intention of in any way affecting the rights of [LBREP] Lakeside under this compromise motion under Bankruptcy Rule 9019."  Exhibit W at 90:17-24.

signatories to the term sheet" and that "there's nothing in this settlement that's affecting any of LBREP's rights." Ex. J at 96:20-21, 114:4-5; *see also id.* at 113:20-21 ("There's nothing at all that affects their rights."). In the face of these admissions, it is disingenuous for LCPI to argue that this Court's 2010 ruling is sufficient to establish good faith.

42.    Moreover, LCPI argues in a single sentence that because the California Bankruptcy Court subsequently found the ***LBREP Lakeside Settlement*** was a good faith settlement, it "readily flows" that the ***LCPI Settlement*** was also a good faith settlement, but LCPI does not cite a single case for this proposition. Motion at 14. Courts routinely approve settlements of some but not all defendants as good faith settlements, but there is no authority for the conclusion that a separate settlement by the other co-defendants is necessarily in good faith as a result.

43.    The LCPI Settlement cannot affect LBREP Lakeside's state law contribution rights. The Court should deny LCPI's Motion.

**IV.    LBREP LAKESIDE'S CLAIMS SHOULD BE ALLOWED TO PROCEED.**

44.    By seeking a good faith finding, LCPI implicitly acknowledges that, were this Court or the California Bankruptcy Court to deny its request, LBREP Lakeside has valid contribution and indemnity claims reflected in proofs of claim numbers 28845 and 28846. LCPI has no—and has not offered any—other basis to disallow LBREP Lakeside's claims. As this Court should deny LCPI's good faith request, it should allow LBREP Lakeside's claims to proceed. If this Court transfers the Motion to the California Bankruptcy Court, it should reserve its ruling on the claims until that court has ruled.

## CONCLUSION

45.     For the foregoing reasons, this Court should transfer or deny the Motion.  Should

the Court hear the motion, LBREP Lakeside must be afforded adequate opportunity to take

discovery on LCPI's purported evidentiary basis for relief.


DATED:  New York, New York
            April 25, 2013

By: _Mark E. McKane_____
        Paul M. Basta, P.C.
        Mark E. McKane (admitted *pro hac vice*)
        KIRKLAND & ELLIS LLP
        601 Lexington Avenue
        New York, New York  10022
        Telephone: (212) 446-4800
        Facsimile: (212) 446-4900

        *Attorneys for LBREP Lakeside SC Master I, LLC*

Paul M. Basta, P.C.
Mark E. McKane (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for LBREP Lakeside SC Master I, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING CROSS-MOTION TO TRANSFER FOR IMPROPER FORUM**

Upon the Cross-Motion to Transfer for Improper Forum By LBREP Lakeside SC Master I, LLC dated April 25, 2013 ("Cross-Motion") to transfer The Motion of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc. For An Order (I) Determining That The LCPI Settlement Was Entered Into In Good Faith Pursuant To California Code Of Civil Procedure §§ 877 and 877.6, And, Based On Such Good Faith Finding And For Other Reasons, (II) Disallowing And Expunging Proofs Of Claim Number 28845 And 28846, dated March 25, 2013 ("Good-Faith Motion") to the United States Bankruptcy Court for the Central District of California ("California Bankruptcy Court"); and the Court having jurisdiction to consider the Cross-Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Cross-Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Cross-Motion having been provided in accordance with the procedures set forth in the Second Amended Order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the

United States Trustee for the Southern District of New York; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) counsel to Lehman, and (vi) all parties who have requested notice in these Chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Cross-Motion is in the interest of justice and that the legal and factual bases set forth in the Cross-Motion and on the record establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Cross-Motion is Granted; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1412, the Good-Faith Motion is hereby transferred to the California Bankruptcy Court for determination pursuant to sections 877(b) and 877.6(c) of the California Code of Civil Procedure; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine the remaining issues in the Good-Faith Motion under 11 U.S.C. § 502(a) after the California Bankruptcy Court has made a determination pursuant to sections 877(b) and 877.6(c) of the California Code of Civil Procedure; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2013
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

2