# Exhibit D

1 | **WEILAND, GOLDEN**
**SMILEY, WANG EKVALL & STROK, LLP**
2 | Evan D. Smiley, State Bar No. 161812
Lei Lei Wang Ekvall, State Bar No. 163047
3 | Hutchison B. Meltzer, State Bar No. 217166
Robert S. Marticello, State Bar No. 244256
4 | 650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
5 | Telephone:  714-966-1000
Facsimile:  714-966-1002
6 |
7 | Proposed General Bankruptcy Counsel for
Chapter 11 Trustee Alfred H. Siegel
8 | **UNITED STATES BANKRUPTCY COURT**
9 | **CENTRAL DISTRICT OF CALIFORNIA**
10 | **SANTA ANA DIVISION**

11 | In re                                                     )    Case No.  8:08-bk-15588-ES

12 | LBREP/L-SUNCAL MASTER I, LLC, et al.    )    Chapter 11

13 |                                           Debtor    )    (Jointly Administered with Case Nos.
                                                           )    8:08-bk-15637-ES; 8:08-bk-15639-ES;
14 | _____    )    and 8:08-bk-15640-ES)

15 | _____ Affects LBREP/L-SunCal Master I, LLC    )    **OMNIBUS OPPOSITION OF CHAPTER**
Only                                                         )    **11 TRUSTEE TO MOTIONS FOR**
16 | _____ Affects LBREP/L-SunCal McAllister    )    **RELIEF FROM THE AUTOMATIC STAY**
Ranch, LLC Only                                       )    **FILED BY LEHMAN COMMERCIAL**
17 |                                                            )    **PAPER INC., MEMORANDUM OF**
_____ Affects LBREP/L-SunCal McSweeny    )    **POINTS AND AUTHORITIES IN**
18 | Farms, LLC Only                                     )    **SUPPORT THEREOF**
19 | _____ Affects LBREP/L-SunCal Summerwind    )    **DECLARATIONS OF ALFRED H.**
Ranch, LLC Only                                       )    **SIEGEL, HOWARD GROBSTEIN, EVAN**
20 |                                                            )    **D. SMILEY, AND LARRY WASBIN, MAI**
  X   Affects All Debtors.                         )    **FILED SEPARATELY**
21 |                                                            )
22 |                                                            )    DATE:      November 20, 2008
                                                           )    TIME:       2:00 p.m.
23 |                                                            )    PLACE:    Courtroom 5A
                                                           )                    411 West Fourth Street
24 | _____    )                    Santa Ana, CA 92107

25 | **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE:**

26 |         Alfred H. Siegel, chapter 11 trustee (the "Trustee") of the administratively

27 | consolidated estates of LBREP/L-Lehman SunCal Master I, LLC ("Parent Debtor"),

28 | LBREP/L-SunCal McAllister Ranch, LLC ("McAllister Ranch"), and LBREP/L-SunCal

*(Left margin vertical text:)* Smiley, Wang Ekvall & Strok, LLP  Weiland, Golden,  650 Town Center Drive, Suite 950  Costa Mesa, CA 92626  TELEPHONE 714-966-1000

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.    INTRODUCTION ........................................................................................... 2

II.    BACKGROUND ............................................................................................ 6

    A.    General Background ......................................................................... 6

        1.    McAllister Ranch ................................................................... 7

        2.    McSweeny Farms ................................................................. 7

        3.    Summerwind Ranch ............................................................. 7

    B.    Significant Post-Petition Events ....................................................... 7

    C.    Disbursement of the Lien Credit Agreement Proceeds ................................ 9

    D.    The Defaults Under the Lien Credit Agreements, and the
        Fourth Amendment and the Waiver ......................................................... 12

III.    ARGUMENT ................................................................................................ 14

    A.    The Amount and Validity of Lehman Commercial's Security
        Interests are Subject to a Bona Fide Dispute ............................................. 14

        1.    Lehman Commercial's Secured Claims are Subject to
            Equitable Subordination, and the Liens Securing Those
            Claims Should be Transferred to the Estate ...................................... 15

        2.    Lehman Commercial's Security Interests Constitute
            Fraudulent Transfers ............................................................... 19

    B.    Lehman Commercial is Not Entitled to Relief Pursuant to
        § 362(d)(1) .......................................................................................... 21

    C.    Lehman is Not Entitled to Relief Pursuant to § 362(d)(2) ........................... 25

        1.    Lehman Failed to Prove that the Debtors Lack Equity in
            the Developments and Other Collateral ........................................... 25

        2.    The Amount of Equity is in Dispute ................................................. 25

        3.    The Trustee will File a Plan that has a Reasonable
            Possibility of Being Confirmed Within a Reasonable
            Time ....................................................................................... 26

    D.    Lehman Commercial has Acted in Bad Faith and Prevented
        the Trustee from Fairly and Fully Defending the Estates
        Against the Lehman Relief Motions ......................................................... 27

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

i

OPPOSITION

273858.5

1

## TABLE OF CONTENTS (cont.)

2
                                                                                      Page

3       E.      Notice of the Lehman Relief Motions was Improper.................................. 28

4   IV.    CONCLUSION................................................................................................. 29

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

273858.5

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re American Lumber Co.*,
5 B.R. 470 (D.C. Minn. 1980) ............................................................................... 16

*In re Bialac*,
694 F.2d 625 (9th Cir. 1982) ................................................................................ 14

*In re Cambridge Woodbridge Apartments, LLC*,
292 B.R. 832 (Bankr. N.D. Ohio 2003) ............................................................... 23

*In re Conejo Enterprises, Inc.*,
96 F.3d 346 (9th Cir. 1996) .................................................................................. 21

*In re Elmore*,
94 B.R. 670 (Bankr. C.D. Cal. 1988) .................................................................... 24

*In re First Alliance Mortg. Co.*,
471 F.3d 977, 1007 (9th Cir. 2006) ...................................................................... 16

*In re Kaplan Breslaw Ash, LLC*,
264 B.R. 309 (Bankr. S.D.N.Y. 2001) .................................................................. 14

*In re Mid-American Waste Systems, Inc.*,
284 B.R. 53 (Bankr. D. Del. 2002) ....................................................................... 19

*In re Mr. R's Prepared Foods, Inc.*,
251 B.R. 24 (Bankr. D. Conn. 2000) .................................................................... 14

*In re Pacific Exp., Inc.*,
69 B.R. 112 (9th Cir. B.A.P. 1986) ................................................................. 16, 17

*In re Poughkeepsie Hotel Assoc. Joint Venture*,
132 B.R. 287, 291 (Bankr. S.D.N.Y. 1991); ........................................................ 14

*In re Seibold*,
351 B.R. 741 (Bankr. D. Idaho 2006) ................................................................... 20

*In re T. E. Mercer Trucking Co.*,1
6 B.R. 176 (Bankr. Tex. 1981) ............................................................................. 16

*In re Tucson Estates, Inc.*,
912 F.2d 1162 (9th Cir. 1990) .............................................................................. 21

*In re Van de Kamp's Dutch Bakeries*,
908 F.2d 517 (9th Cir. 1990) ................................................................................ 20

*In the Matter of Continental Airlines, Inc.*,
146 B.R. 536 (Bankr. D. Del. 1992) ..................................................................... 23

*In the Matter of Pat Freeman, Inc.*,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

iii

OPPOSITION

273858.5

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

42 B.R. 224 Bankr S.D. Ohio 1984)..................................................................... 15

*Matter of Missionary Baptist Foundation of America, Inc*.,
    712 F.2d 206 (5th Cir. 1983)..................................................................... 16

*Pepper v. Litton*,
    308 U.S. 295, 306 (1939) ........................................................................ 16

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,*
    484 U.S. 365 (1988) ............................................................................... 23

## STATUTES

11 U.S.C. § 101(2) .......................................................................................... 17

11 U.S.C. § 101(31) ........................................................................................ 17

11 U.S.C. § 362............................................................................................... 2

11 U.S.C. § 362(d)(1) .......................................................................... 21, 23, 24

11 U.S.C. § 362(d)(2) ...................................................................................... 25

11 U.S.C. § 362(g)(1) ...................................................................................... 25

11 U.S.C. § 502(d) .......................................................................................... 21

11 U.S.C. § 510(c).......................................................................................... 15

11 U.S.C. § 510(c)(2) ...................................................................................... 15

11 U.S.C. § 548............................................................................................... 20

11 U.S.C. § 551............................................................................................... 20

Cal. Civ. Code § 3439.04(a)(1)........................................................................ 22

Cal. Civ. Code § 3439.04(a)(2)........................................................................ 22

Cal. Civ. Code § 3439.04(a)(2)(A)................................................................... 23

Cal. Civ. Code § 3439.04(a)(2)(B)................................................................... 23

Cal. Civ. Code § 3439.04(a)(2), 3439.05......................................................... 20

Cal. Civ. Code § 3439.04(b)(9)........................................................................ 23

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

OPPOSITION

273858.5

McSweeny Farms ("McSweeny Farms"), and LBREP/L-SunCal Summerwind Ranch

("Summerwind Ranch"; collectively, the "Subsidiary Debtors," and together with the Parent

Debtor, the "Debtors") submits this omnibus opposition (the "Opposition") to the *Motions*

*for Relief From the Automatic Stay Under 11 U.S.C. § 362* (the "Lehman Relief

Motions") filed by Lehman Commercial Paper, Inc. ("Lehman Commercial"), and submits

the following memorandum of points and authorities, and the declarations of Alfred H.

Siegel, Howard Grobstein, Evan D. Smiley, and Larry Wasbin, MAI, filed separately in

support, and respectfully represents as follows:

## I.    **INTRODUCTION**

Lehman Commercial is not entitled to relief from the automatic stay. The amount

and validity of Lehman Commercial's security interests are in dispute, and Lehman

Commercial failed to establish a *prima facie* case for relief. More specifically, Lehman

Commercial is not entitled to relief from the automatic stay and the Lehman Relief Motions

should be denied for the following reasons:

1.    Lehman Commercial's pre-petition inequitable conduct entitles the Trustee
to subordinate and disallow Lehman Commercial's claims and/or avoid and
preserve Lehman Commercial's security interests;

2.    Lehman Commercial has failed to establish a *prima facie* case for relief from
the automatic stay as it failed to prove the amount of its claim and Debtors'
lack of equity in Lehman Commercial's collateral;

3.    Lehman Commercial's collateral is valuable to the estates, and undisputedly
necessary for an effective reorganization;

4.    Lehman Commercial has acted in bad faith by refusing to stipulate to relief
from the automatic stay in its own bankruptcy case to allow the Trustee to
adequately defend these estates against the Lehman Relief Motions; and

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

5.      Lehman Commercial failed to properly notice the Lehman Relief Motions, and on that basis alone, the Lehman Relief Motions should be denied, or at a minimum, continued for proper notice.

First, Lehman Commercial's security interests are in dispute. Lehman Commercial's pre-petition inequitable conduct entitles the Trustee to *entirely* subordinate and disallow its claims and/or avoid its liens as fraudulent transfers and preserve the same for the benefit of the estates. Lehman Commercial used its position as a lender and affiliate of LBREP[1] Lakeside SC Master I, LLC ("Lehman Lakeside"), the 90% owner and managing member of the Parent Debtor, to strip the Debtors of substantial cash and equity, leaving general unsecured creditors unpaid. Lehman Commercial caused the Debtors to incur $320 million of secured debt, without paying the Debtors a substantial portion of the purported loan proceeds. For example, $144 million of Lehman Commercial's alleged financing was paid directly to the Parent Debtor's equity owners, of which $117 million was paid to Lehman Lakeside. The Subsidiary Debtors were forced to guarantee the $320 million in loans, grant security interests in their respective real estate developments to secure the guarantees, and use $44.3 million of *their own cash* to repay the loans when they received virtually no value in return. Moreover, through collusive negotiations, the Debtors submitted to unreasonable amendments to the applicable loan documents, which essentially sealed the Debtors' financial demise. In sum, Lehman Commercial's inequitable conduct caused substantial harm to creditors, and resulted in the Debtors incurring $320 million in secured debt, for which the Debtors did not receive reasonable equivalent value in return.

Second, Lehman Commercial has failed to establish a *prima facie* case for relief. Even assuming the appraisals submitted by Lehman Commercial are credible and not

---

[1]     LBREP stands for Lehman Bros. Real Estate Partnership, LP, the entity that owns LBREP Lakeside SC Master 1, LLC. Lehman Commercial and Lehman Bros. Real Estate Partnership, LP are under common control.

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  outdated, which the Trustee does not concede, Lehman Commercial has failed to

2  demonstrate that the amount owed by the Subsidiary Debtors exceeds the appraised

3  values.  Lehman Commercial's claims against the Subsidiary Debtors are based on

4  written guarantees, which contain a provision expressly limiting the Subsidiary Debtors'

5  liability by fraudulent transfer law.[2]  Each guarantee limits the Subsidiary Debtor's liability

6  to an amount that *does not* constitute a fraudulent transfer.  Thus, to prove the amount of

7  its claim, Lehman Commercial must prove the amount that applicable fraudulent transfer

8  laws will permit.  Because Lehman Commercial has not proven the amount of debt

9  guaranteed by each Subsidiary Debtor, it cannot show the amount of the corresponding

10  liens or the lack of equity in the collateral.

11        Assuming Lehman Commercial can prove the amount of its claim, Lehman

12  Commercial is, at best, undersecured and, therefore, not entitled to adequate protection

13  absent evidence that its collateral is *currently* declining in value.  However, Lehman

14  Commercial has failed to provide any evidence that its collateral is currently declining in

15  value, but instead relies on appraisals that are approximately 8 months old.  In contrast,

16  the Trustee's appraiser testifies that residential land values in the areas of the subject real

17  estate developments have not materially declined since the petition dates.  Moreover, the

18  value of the collateral is arguably increasing in value due to the Trustee's payment of

19  essential expenses related thereto,[3] and the protections afforded by the Bankruptcy Code.

20        Third, the subject real property and other collateral are valuable and undisputedly

21  necessary for a reorganization of these estates.  The Trustee can confirm a plan in these

22  cases.  Based on the estates' claims against Lehman Commercial, Lehman Lakeside, and

23  other Lehman-related entities, the Trustee expects to be successful in either recasting

24

25  [2]    This clause implies that Lehman Commercial knew that the very issues now raised by the Trustee
were issues back in January, 2006.

26  [3]    Fortunately, these estates own approximately $18 million in available cash. Accordingly, the
Trustee has the ability, subject to approval of this Court, to maintain and preserve estate property pending
27  further developments in theses bankruptcy cases.

28

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1   Lehman Commercial's secured claim or extinguishing its lien and avoiding and preserving

2   such lien for the benefit of the estates.  The Trustee can then use the estates' property to

3   fund a chapter 11 plan and make a meaningful distribution to creditors.  Importantly, as

4   Lehman Commercial and other Lehman-related entities are bankrupt, the only recovery

5   for Lehman Commercial's wrongful acts (at least in the short term) will come from the

6   preservation of its liens against the real estate developments and other collateral.  The

7   collateral at issue is not depreciating in value and the Trustee will continue to preserve the

8   value of estate property through the use of cash collateral.  Thus, the Trustee should be

9   afforded the opportunity to pursue its claims against Lehman Commercial and a plan that

10  maximizes the value for the estates for all creditors.

11          Fourth, Lehman Commercial has acted in bad faith in refusing to agree to stay

12  relief in its own pending bankruptcy case.  Lehman Commercial is hiding behind the

13  automatic stay in its chapter 11 case to prevent the Trustee from being able to properly

14  defend against the Lehman Relief Motions.  The Trustee is prepared to file the complaint

15  attached as Exhibit "A" to his declaration, and to conduct discovery related to the Lehman

16  Relief Motions, but cannot do so without relief from stay in Lehman Commercial's

17  bankruptcy cases.  Lehman Commercial will not, however, agree to stipulate to such stay

18  relief.  In light of Lehman Commercial's refusal to "level the playing field" and the Trustee's

19  consequent inability to defend the estates from the Lehman Relief Motions, the Court

20  should deny Lehman Commercial the relief sought by the Lehman Relief Motions.

21          Fifth, Lehman Commercial failed to properly notice the Lehman Relief Motions at

22  the time they were filed, and on that basis alone, the Lehman Relief Motions should be

23  denied, or at a minimum, continued for proper notice.

24          For all these reasons, the Trustee respectfully requests that the Court deny the

25  Lehman Relief Motions.

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

II.   **BACKGROUND**

A.   **General Background**

On or about September 10 and 11, 2008 (the "Petition Dates"), involuntary petitions under chapter 11 of the Bankruptcy Code were filed against the Debtors.[4]  The Debtors' bankruptcy cases are being jointly administered pursuant order of this Court entered on November 13, 2008.

The Parent Debtor is a holding company, established to the fund the real estate development projects owned by each of its four operating subsidiaries, *i.e.*, McAllister Ranch, McSweeny Farms, Summerwind Ranch, and LBREP/L-SunCal Patterson Ranch ("Patterson Ranch").  The Parent Debtor is controlled by Lehman Lakeside, which is an affiliate of Lehman Commercial (*i.e.*, the movant on the Lehman Relief Motions) and a subsidiary of Lehman Bros. Real Estate Partners, LP ("LBREP").  More specifically, Lehman Lakeside is the *managing member* and 90% equity owner of the Parent Debtor.  The remaining equity interests in the Parent Debtor are owned by SCC Ranch Venture, LLC, which is an affiliate of SCC Acquisitions, Inc. d/b/a SunCal Companies (collectively, "SCC").

The Parent Debtor's primary asset, other than cash, is its interest in its operating subsidiaries.  The Parent Debtor is the sole equity member of McAllister Ranch, McSweeny Farms, and Summerwind Ranch, each of which, in turn, owns a real estate development project bearing the same name (collectively, the "Developments").[5]  Lehman

_____

[4]   The Debtors' involuntary bankruptcy cases were commenced only after the Debtors failed to initiate their own bankruptcy proceedings or take any other action to protect themselves and creditors against Lehman Commercial's impending foreclosure sales.  While the Trustee continues to investigate the reasons why the Debtors failed to initiate their own bankruptcy cases, the Declaration of Bruce Cook dated November 7, 2008 in certain related bankruptcy cases indicates that Lehman Lakeside, as the managing member of the Debtors, may have prevented the efforts of SCC Acquisitions, Inc., the Parent Debtor's minority owner, to protect these estates.  A true and correct copy of the Declaration of Bruce V. Cook is attached to the Trustee's Request for Judicial Notice as Exhibit "L."

[5]   The Parent Debtor is also the sole equity member of Patterson Ranch, which owns the "Borchard Patterson" real estate development project in Ventura County, California.

Smiley, Wang Ekvall & Strok, LLP
Welland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

Commercial asserts a lien against each of the three real estate developments for the full amount of the loans to the Parent Debtor. The following is a brief summary of the Developments:

### 1.    McAllister Ranch

McAllister Ranch owns the real estate development project commonly known as "McAllister Ranch," which is located near Bakersfield in Kern County, California. The Trustee understands that McAllister Ranch is designed to be a 2,070 acre master-planned community featuring a golf course, lake, and approximately 6,087 homes. All of the lots have been graded, and the first of five planned subdivisions is nearly complete. In addition, the golf course is completed and the clubhouse is framed and roofed.

### 2.    McSweeny Farms

McSweeny Farms owns the real estate development project commonly known as "McSweeny Farms," which is located near Hemet in Riverside County, California. McSweeny Farms is comprised of 673 acres, and a total of 1,640 lots are planned to be included thereon. Phase 1 of the project has been completed and sold out. Contrary to the assertions of Lehman Commercial in the Lehman Relief Motions, hundreds of homes have been completed, and there are residents living in a substantial number of these homes.

### 3.    Summerwind Ranch

Summerwind Ranch owns the real estate development project commonly known as "Summerwind Ranch," which is located near Calimesa in Riverside County, California. Summerwind Ranch is comprised of 2,591 acres with 3,683 lots planned thereon.

### B.    Significant Post-Petition Events

On October 2, 2008, Lehman Commercial filed four motions for relief from the automatic stay, one in each individual case (*i.e.*, the Lehman Relief Motions), which were

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1   originally scheduled for hearings on October 28, 2008.[6] On October 14, 2008, a group of

2   petitioning creditors filed an opposition to the Lehman Relief Motions. Not surprisingly,

3   the Debtors, controlled by Lehman Lakeside, did not oppose the Lehman Relief Motions.

4        Following the Debtors' refusal to oppose the Lehman Relief Motions, on or about

5   October 15, 2008, a group of petitioning creditors filed a motion for order authorizing the

6   appointment of a chapter 11 trustee (the "Trustee Appointment Motion"). The petitioning

7   creditors argued that an independent trustee should be appointed to represent the

8   interests of the Debtors' estates, especially in light of the affiliate relationship between

9   Lehman Commercial, the lender and movant, and Lehman Lakeside, the managing

10   member and majority owner of the Parent Debtor.

11        On October 22, 2008, the Debtors answered the involuntary petitions, consented to

12   the entry of the orders for relief, and then filed motions to convert the cases from chapter

13   11 to chapter 7 (collectively, the "Motions to Convert"). The Debtors, controlled by

14   Lehman Lakeside, argued that conversion was proper because there was no possibility to

15   reorganize.[7] Both Lehman Commercial and the Lehman-controlled Debtors opposed the

16   Trustee Appointment Motion.

17        On October 28, 2008, the Court heard the Trustee Appointment Motions, the

18   Debtors' Motions to Convert, and the Lehman Relief Motions. The Court entered the

19   orders for relief, granted the Trustee Appointment Motion, and denied the Motions to

20   Convert. The Lehman Relief Motions were continued to November 20, 2008, to give the

21   Trustee time to analyze the Trustee's position with respect thereto. On or about

22   October 29, 2008, the order approving Alfred H. Siegel's appointment as the chapter 11

23   trustee was entered.

24

25     [6] Since these cases are jointly administered, the Trustee has filed one omnibus opposition to the
Lehman Relief Motions.

26     [7] Interestingly, while Lehman Commercial would not consent to the Debtors use of funds to to
preserve and and maintain the Developments, it authorized the disbursement of $100,000 to fund the

27   Debtors' bankruptcy counsel's retainer.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1    Following his appointment, the Trustee immediately moved the Court for authority

2  to use cash collateral on an emergency basis (the "Cash Collateral Motion").  Lehman

3  Commerical opposed the Cash Collateral Motion, despite the fact that the Trustee sought

4  Court authority to use the cash in the Development Account[8] for the sole purpose of

5  preventing the neglect of the Developments complained of in the Lehman Relief Motions.

6  (*See* Lehman Commercial's Mem. of P. & A. at 12, ¶ 26.)  On November 6, 2008, the

7  Court heard and approved the Cash Collateral Motion over Lehman Commercial's

8  objection.  Pursuant to the Court's order, the Trustee has authority to use the funds in the

9  Development Account pursuant to the Court-approved budget to pay the expenses

10  necessary to preserve the value of the Developments.

11    In the short time since his appointment, the Trustee and his professionals have

12  spent considerable time investigating the pre-petition financial affairs, assets, and

13  liabilities of the Debtors, including the Debtors' pre-petition transactions with Lehman

14  Commercial.  While the Trustee is still conducting his investigation, the Trustee has

15  uncovered numerous issues with respect to the loans by Lehman Commercial to the

16  Parent Debtor, which form the bases for the Lehman Relief Motions.  The following is a

17  more detailed discussion of the Trustee's findings:[9]

18

19  **C.    Disbursement of the Lien Credit Agreement Proceeds**

20    As this Court is now aware, the Parent Debtor, as borrower, entered into three Lien

21  Credit Agreements with Lehman Commercial (collectively, the "Lien Credit Agreements").

22  _____

23    [8]   All capitalized terms not specifically defined herein shall have the same meaning as in the Lehman
    Relief Motions.

24

25    [9]   Given that the Trustee has only been involved these cases since October 29, 2008, no 341(a)
    hearing has been held, Lehman Commercial is hiding behind the automatic stay in its own Lehman Brothers
    cases and not providing information, and the SunCal Management has been short-staffed and apparently in

26  its own conflicts with Lehman Commercial, the Trustee's information is not complete as of this date.
    However, he has been provided certain financial data by SunCal Management, creditors in the cases and

27  from pleadings filed.  The Trustee's investigation is continuing.

28

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  Pursuant to the First and Second Lien Credit Agreements, which were entered into on or

2  around January 19, 2006,  the Parent Debtor borrowed a total of $320 million (collectively,

3  the "January 2006 Loans") as follows: (1) a revolving credit facility of $75 million and term

4  loan facility of $160 million under the First Lien Credit Agreement; and (2) a $85 million

5  term loan facility under the Second Lien Credit Agreement.  Lehman Commercial

6  participated in the January 2006 Loans, and acted as the sole administrative agent, and

7  Lehman Brothers, Inc. ("Lehman Brothers"), served as the sole lead arranger and

8  syndicator.  The Parent Debtor's obligations under these agreements were guaranteed by

9  the Subsidiary Debtors, and these upstream guaranties were secured by first and second

10  liens against the Developments.

11         Despite the fact that the Debtors were collectively saddled with $320 million in

12  secured debt and the significant interest accruing thereon, the Debtors did not receive a

13  substantial portion of these purported borrowings.  Importantly, of the $235 million

14  allegedly loaned to the Parent Debtor under the First Lien Credit Agreement, $144 million

15  was paid from escrow to the Parent Debtor's equity owners, of which $117 million was

16  paid to Lehman Lakeside.  The Subsidiary Debtors were forced to grant security interests

17  in the Developments to secure the entire $320 million in loans to the Parent Debtor,

18  despite the fact that each entity received only a fraction of the loan proceeds.  Moreover,

19  the Subsidiary Debtors were forced to *contribute* cash to repay the loans.  The following is

20  a brief summary of the Trustee's findings regarding each Debtor Subsidiary:

21         1.     McAllister Ranch: In exchange for securing the entire $320 million in loans to

22  the Parent Debtor, McAllister Ranch received only $20 million in loan proceeds, all of

23  which was used to replace the existing $20 million first position lien (plus accrued

24  interest), which was allegedly created on November 5, 2004 and held by another

25  Lehman-related entity, plus some real property taxes in relatively small amounts.

26  Moreover, in March 2006, approximately $22.7 million in cash from McAllister Ranch's

27  account was effectively paid to Lehman Commercial on account of the January 2006

28  Loans.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

2.   <u>McSweeny Farms</u>: In exchange for securing the entire $320 million in loans to the Parent Debtor, McSweeny Farms received loan proceeds of $17.7 million, all of which was used to replace the existing $17.7 million first position lien (plus accrued interest), which was allegedly created on May 18, 2005, and held by another Lehman-related entity, plus some real property taxes in relatively small amounts. Moreover, McSweeny Farms *paid* approximately $21.5 million into escrow prior to the closing of the January 2006 Loans, which was presumably paid to Lehman Commercial.

3.   <u>Summerwind Ranch</u>: In exchange for securing the entire $320 million in loans to the Parent Debtor, Summerwind Ranch LLC received only loan proceeds sufficient to replace the existing $24 million first position lien (plus accrued interest), which was allegedly created on May 3, 2005, and held by another Lehman-related entity, plus some real property taxes in relatively small amounts.

In sum, the only concrete economic benefit received by the Subsidiary Debtors in exchange for securing the Parent Debtor's obligations under First and Second Lien Credit Agreements (*i.e.*, the repayment of the $320 million in loans), and repaying a portion of the January 2006 Loans, was funds sufficient to simply replace existing secured obligations to another Lehman-related entity, in amounts far less than that guaranteed by the Subsidiary Debtors and secured by the Developments. The apparent flow of funds demonstrates Lehman Commercial's scheme to maximize its own yield, while minimizing the cash actually paid to the Debtors. Clearly, the Subsidiary Debtors did not receive reasonably equivalent value.

On February 6, 2007, a Third Lien Credit Agreement was entered into by the Parent Debtor, which allegedly provided for an additional $75 million term loan, guaranteed again by the Subsidiary Debtors and secured by third priority liens against the Developments. Just as with the January 2006 Loans, Lehman Commercial participated and served as the administrative agent, and Lehman Brothers served as sole arranger and syndicator. It appears that the Parent Debtor entered into the Third Lien Credit Agreement due to cash flow shortages and pressure by Lehman Commercial to repay the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  Parent Debtor's obligations to Lehman Commercial under the First Lien Credit Agreement.

2  From the $75 million loaned to the Parent Debtor under the Third Lien Credit Agreement,

3  $50 million was paid out of escrow directly to Lehman Commercial to pay down the

4  obligations under the First Lien Credit Agreement.

5

6      **D.    The Defaults Under the Lien Credit Agreements, and the Fourth**

7              **Amendment and the Waiver**

8          According to Lehman Commercial, "In January 2008, the First Lien Agent, Second

9  Lien Agent and Third Lien Agent commenced negotiations that may have obviated the

10  need for the First Lien Lenders' foreclosure sales." (See Lehman Commercial's Mem. of

11  P. & A. at 10, ¶ 22.) However, the Trustee understands that in January, 2008, Lehman

12  Commercial was still the administrative agent under all three Lien Credit Agreements.

13  Thus, Lehman Commercial must have commenced negotiations with itself on behalf of all

14  three creditor groups, and with its affiliate, Lehman Lakeside, as the managing member of

15  the Parent Debtor. Lehman Commercial did not resign its position as administrative agent

16  under the Second and Third Lien Credit Agreements until February 14, 2008. However, in

17  a parting act, it appears that Lehman Commercial negotiated on behalf of all three lending

18  groups yet another set of self-serving agreements with the Debtors.

19          Those negotiations between Lehman Commercial and Lehman Lakeside

20  essentially set the Debtors up for their ultimate demise. On January 31, 2008, Lehman

21  Commercial, as the lien agent for all three Lien Credit Agreements, negotiated the Fourth

22  Amendment and Waiver to the First Lien Credit Agreement (the "Amendment"), which

23  required that the cash in the Development Account be *increased* from $25 million to $50

24  million by March 31, 2008. (*See* Lehman Commercial's Mem. of P. & A. at 10 n.13.)

25  Then, 60 days later, on March 31, 2008, Lehman Commercial declared a default due to

26  the Debtors' failure to increase the amount of funds deposited in the Development

27  Account. The Trustee believes that Lehman Commercial knew or reasonably should have

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  known that the Debtors would be unable to comply with the Amendment and come up with

2  an additional $25 million in cash in 60 days.

3     The other defaults declared by Lehman Commercial are equally suspect.  Lehman

4  Commercial argues that the Debtors missed an interest payment, even though there was

5  approximately $25 million of cash in the Development Account, which was admittedly

6  available to repay and prepay loans.  (*See* Lehman Commercial's Mem. of P. & A. at 10

7  n.14.)  Lehman Commercial argues that the Debtors failed to timely deliver financial

8  statements when the Debtors were under the control of Lehman Commercial's affiliate,

9  Lehman Lakeside.  Lehman Commercial further asserts that the Debtors failed to pay a

10  $100,000 administrative fee and maintain the necessary liquidity requirements, which was

11  presumably caused by that fact that $144 million of the loan under the First Lien Credit

12  Agreement was paid directly from escrow to the Parent Debtor's owners and, primarily,

13  Lehman Lakeside.

14     The Trustee is still investigating other issues related to the pre-petition transactions

15  with Lehman Commercial, including the following:

16     1.    Why Lehman Commercial funded only $50 million of the $75 million

17         revolving lien of credit provided for under the First Credit Agreement,

18         between January, 2006, and February, 2007, which effectively deprived the

19         Parent Debtor of the additional liquidity needed to meet its obligations;

20     2.    Why Lehman Commercial required the Parent Debtor to maintain $25 million

21         in the Development Account, which was supposedly available to repay the

22         loans and to fund certain expenses, and then restricted the Debtors' access

23         to that account, effectively freezing these funds and further diminishing the

24         Debtors' available capital and liquidity, despite the fact that the Debtors were

25         required to pay interest on those funds;

26     3.    Whether the approximately $10.6 million in transactional fees and costs

27         generated by Lehman Brothers and its affiliates was reasonable; and

28

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1    4.    Whether the payment of approximately $5.7 million in loan proceeds from

2    the Lien Credit Agreements to Patterson Ranch benefited the Subsidiary

3    Debtors.

4    In sum, the Trustee and his professionals have expended significant resources

5 during an extremely abbreviated time frame investigating the facts and circumstances of

6 these cases and, especially, the Debtors' transactions with Lehman Commercial, and

7 much investigation still needs to be done.  However, the Trustee has concluded that the

8 Lehman Relief Motions should be denied in their entirety.  Moreover, as discussed in

9 further detail below, the estates have viable claims for equitable subordination, fraudulent

10 transfer, and breach of fiduciary duty against Lehman Commercial, Lehman Lakeside and

11 other Lehman-related entities, that far exceed the value of the collateral at issue in these

12 cases.

13

14 **III.**    **ARGUMENT**

15    **A.**    **The Amount and Validity of Lehman Commercial's Security Interests**

16    **are Subject to a Bona Fide Dispute**

17    Numerous courts, including the Ninth Circuit, hold that, on a motion for relief from

18 the automatic stay, a court should consider affirmative defenses and counterclaims that

19 directly involve the validity of a movant's security interest and/or the debtor's equity in the

20 property, or that would be eliminated if relief from the automatic stay is granted.  *See In re*

21 *Bialac*, 694 F.2d 625, 627 (9th Cir. 1982); *see also In re Poughkeepsie Hotel Assoc. Joint*

22 *Venture*, 132 B.R. 287, 291 (Bankr. S.D.N.Y. 1991); *In re Kaplan Breslaw Ash, LLC*, 264

23 B.R. 309, 327 (Bankr. S.D.N.Y. 2001); *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 28

24 (Bankr. D. Conn. 2000).  More specifically, courts have considered whether the moving

25 creditor's secured claim is subject to equitable subordination, or whether the creditor's

26 security interest constitutes an avoidable transfer in determining whether to grant a

27 creditor relief from the automatic stay.  *See, e.g., In re Poughkeepsie Hotel Assoc. Joint*

28 *Venture*, 132 B.R. at 292-93.

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1    Here, the validity and amount of Lehman Commercial's security interests, and the

2  estates' equity in the Developments are in dispute.  Due to Lehman Commercial's

3  pre-petition misconduct, the estates are entitled to subordinate, avoid and preserve

4  Lehman Commercial's liens for the benefit of estate creditors.  Moreover, the Debtors did

5  not receive reasonably equivalent value in exchange for granting Lehman Commercial a

6  security interest securing the entire $320 million in loans under the Lien Credit

7  Agreements, and the Debtors were insolvent at the time of the transfers.  If the Trustee

8  prevails on its claims against Lehman Commercial, then the substantial value in the

9  Developments and the cash in the Development Account will be made available

10  (essentially creating equity) for the benefit of the bankruptcy estates.

11    **1.    Lehman Commercial's Secured Claims are Subject to Equitable**

12    **Subordination, and the Liens Securing Those Claims Should be**

13    **Transferred to the Estate**

14    It is well-settled that "bankruptcy courts exercise broad equitable power to

15  subordinate claims." *See In re Universal Farming Industries*, 873 F.2d 1334, 1337 (9th

16  Cir. 1989).  Pursuant to § 510(c), the bankruptcy court may "(1) under principals of

17  equitable subordination, subordinate for purposes of distribution all or part of an allowed

18  claim to all or part of another allowed claim. . .; or (2) order that any lien securing such a

19  subordinated claim be transferred to the estate." 11 U.S.C. § 510(c).  A lien transferred

20  pursuant to 11 U.S.C. § 510(c)(2), is preserved for the benefit of the estate, such that the

21  trustee steps into the shoes of the subordinated creditor, thereby preventing junior lien

22  holders from improving their position. *See In the Matter of Pat Freeman, Inc.*, 42 B.R.

23  224, 231-232 (Bankr S.D. Ohio 1984); *see also* Chobot, John C., Preserving Liens in

24  Bankruptcy-Limitations and Applications, 62 Am. Bankr. L.J. 149, 157 (1988).

25    Equitable subordination generally requires the three following findings: " (1) that the

26  claimant engaged in some type of inequitable conduct; (2) that the misconduct injured

27  creditors or conferred unfair advantage on the claimant; and (3) that the subordination

28  would not be inconsistent with the Bankruptcy Code." *In re First Alliance Mortg. Co.*, 471

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1    F.3d 977, 1007 (9th Cir. 2006). The inequitable conduct justifying equitable subordination

2    need not arise from the acquisition or assertion of the claim sought to be subordinated.

3    *See In re Pacific Exp., Inc.*, 69 B.R. 112, 116 (9th Cir. B.A.P. 1986). Moreover, where, as

4    here, the claimant is an insider, the party requesting equitable subordination is subject to

5    a lesser burden of proof and pleading.

> Where the claimant is an insider, his dealings with the debtor
> will be subjected to more exacting scrutiny. If the objectant
> comes forward with sufficient substantiations of misconduct on
> the part of the insider claimant, the burden will shift to the
> insider to establish that each of his challenged transactions
> with the debtor had all the earmarks of an arm's length
> bargain.

10    *In re Pacific Exp., Inc.*, 69 B.R. 112, 116 -17 (9th Cir. B.A.P. 1986); *see also  Pepper v.*

11    *Litton*,  308 U.S. 295, 306 (1939) (dealings with insiders are subject to "rigorous scrutiny"

12    and the insider must prove that the subject transactions were in good faith and inherently

13    fair to the debtor and interested parties).

14        "The courts have recognized three general categories of conduct considered

15    sufficient to warrant equitable subordination: (1) fraud, illegality, breach of fiduciary duties;

16    (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or

17    alter ego." *Matter of Missionary Baptist Foundation of America, Inc.*,  712 F.2d 206, 212

18    (5th Cir. 1983). Moreover, bankruptcy courts have recognized that subordination is proper

19    where a lender exercises control over the borrower to the detriment of other creditors or to

20    gain an unfair advantage. *See, e.g., In re American Lumber Co.*,  5 B.R. 470, 478 (D.C.

21    Minn. 1980); *See also In re T. E. Mercer Trucking Co.*, 16 B.R. 176, 189-90 (Bankr. Tex.

22    1981).

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

a.     <u>Lehman Commercial is an Insider and, Therefore, its</u>

<u>Transactions with the Debtors are Subject to a More Exacting</u>

<u>Level of Scrutiny</u>

Lehman Commercial is a *per se* or statutory insider.[10]  Pursuant to 11 U.S.C.

§ 101(31), the term "insider" includes an affiliate, or insider of an affiliate.  The term

"affiliate" means any entity that "directly or indirectly owns, controls or holds" 20% or more

of the ownership interests in the debtor.  *See 11 U.S.C. § 101(2)*.  Lehman Lakeside,

directly or indirectly, owns 90% of the equity interests in the Debtors and, therefore, is an

affiliate of the Debtors.  Lehman Commercial is admittedly an affiliate of Lehman

Lakeside.[11]  As an affiliate of Lehman Lakeside, Lehman Commercial is an "insider of an

affiliate" and thus, and insider of the Debtors.  For this reason, Lehman Commercial's non-

arm's length dealings with the Debtors are subject to a more exacting level of scrutiny.

*See In re Pacific Exp., Inc.*, 69 B.R. at 116 -17.

b.     <u>Lehman Commercial Used its Position as an Insider to Gain an</u>

<u>Unfair Advantage, and to the Detriment of Creditors</u>

Lehman Commercial used its position as an insider to gain an unfair advantage

and to the detriment of other creditors.  Lehman Commercial caused the Parent Debtor to

fictitiously borrow $320 million, plus interest, on a secured basis, without paying the

Debtors a substantial portion of the purported loan proceeds.  As discussed above, $144

---

[10]  There are two types of insiders, those entities included in the Bankruptcy Code (*per se* insiders), and those not listed in the Bankruptcy Code's definition of insider, "but who have a . . . sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor. "  *See In re Enterprise Acquisition Partners, Inc.*, 319 B.R. 626, 631 (9th Cir. B.A.P. 2004) (internal citations and quotation marks omitted).

[11]  Indeed, Lehman Commercial recognized these "affiliate" relationships and potential problems when the $235 million loan was funded which is reflected in the Agreement Regarding Debtor/Creditor Relationship ("Affiliate Relationship Agreement"), a true and correct copy of which is attached to the Trustee's Request for Judicial Notice as Exhibit "I."  In the Affiliate Relationship Agreement, it provides at paragraph E that Lehman Lakeside (the 90% equity holder of Lehman/Lehman SunCal Master) is an affiliate of Lehman Commercial and that Lehman Commercial is concerned at a later date that third parties might attempt to assert claims against Lehman Commercial.  At paragraph D, the Affiliate Relationship Agreement provides that "a dividend" will be paid to "certain investors" from the loan proceeds.  In these chapter 11 cases, Lehman Commercial ironically attempts to distance itself from these "affiliate" relationships.

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive Suite 950
Costa Mesa 92626
TELEPHONE 714-966-1000

1  million of the January 2006 Loan proceeds was unnecessary, funded solely to pay a

2  dividend to the Parent Debtor's owners and primarily Lehman Lakeside. Similarly, the

3  Subsidiary Debtors were required to guaranty the loans to the Parent Debtor, secure the

4  entire $320 million obligation with the Developments, and pay $44.3 million of their own

5  cash to Lehman Commercial, for little to no value in return. In short, Lehman Commercial

6  created a scheme to maximize its own yield (*i.e.*, a return of $320 million, plus

7  interest) and obtain a security interest in the Debtors' accounts and real property, while

8  minimizing the cash actually paid to the Debtors.

9      Lehman Commercial also caused the Debtors' default. Lehman Commercial forced

10  the Debtors (presumably through negotiations with Lehman Lakeside) to accept the

11  Amendment, and increase the amount required to be deposited in the Development

12  Account by $25 million, which the Debtors clearly could not do. Moreover, Lehman

13  Commercial prevented the Debtors from using the funds in the Development Account to

14  pay the necessary expenses associated with the Developments, causing an unnecessary

15  decline in the value of the Debtors' primary assets. Lehman Commercial declared a

16  default based on reasons which were either due to its own conduct or within the control of

17  its affiliate Lehman Lakeside. Lehman Commercial's inequitable control is further

18  demonstrated by the Debtors' refusal to defend themselves and the estates in these

19  proceedings. Instead, the Debtors, managed by Lehman Lakeside, conceded to relief

20  from the automatic stay and Lehman Commercial's foreclosure efforts to exclusion of all

21  other creditors.

22          c.      Lehman Commercial's Inequitable Conduct Substantially

23                  Harmed Creditors

24      The harm caused to creditors by Lehman Commercial's inequitable conduct is

25  clear. Lehman Commercial caused the Debtors' financial demise. Lehman Commercial's

26  conduct saddled the Debtors with $320 million of unnecessary secured debt, plus interest,

27  without providing the Debtors with the benefit of those funds. Again, $144 million of the

28  $320 million borrowed by the Parent Debtor was immediately disbursed from escrow to its

273858.5                                      18                                    OPPOSITION

1  owners, and primarily Lehman Lakeside.  The interest on the $160 million term loan under

2  the First Lien Credit Agreement, $144 million of which the Debtors did not receive, alone

3  cost the Debtors approximately $35 million.  (*See* Declaration of Howard Grobstein at 6,

4  ¶ 11.)  The funds paid directly to the Parent Debtor's owners could have been used to

5  develop the properties, or prevent default under the Lien Credit Agreements.  Moreover,

6  approximately $44.3 million in cash was effectively paid from the Subsidiary Debtors to

7  Lehman Commercial for debt service on the January 2006 Loans, leaving millions of

8  dollars in project-level creditors unpaid.

9       In sum, Lehman Commercial used its insider position to create an arrangement

10  where it could obligate the Debtors to repay it $320 million and obtain a lien against the

11  Developments securing the same, without paying the Debtors a substantial portion of the

12  alleged loan proceeds and restricting the use of certain other substantial funds.  Lehman

13  Commercial's conduct saddled the Debtors with $320 million in secured debt, which it

14  could not repay, caused the dissipation of cash for its own benefit (and for the benefit of

15  its affiliate, Lehman Lakeside), and ultimately bankrupted the Debtors.  Lehman

16  Commercial used its fictitious loan arrangement to strip the Debtors of substantial cash

17  and equity, leaving millions of dollars in creditors unpaid.  Certainly, under these

18  circumstances, equitable subordination is appropriate and wholly consistent with the

19  Bankruptcy Code. *See In re Mid-American Waste Systems, Inc.,* 284 B.R. 53, 68 (Bankr.

20  D. Del. 2002) ("The essential purpose of equitable subordination is to undo any inequality

21  in the claim position of a creditor that will produce injustice or unfairness to other creditors

22  in terms of distribution of the estate.").  Accordingly, the Trustee clearly has a viable claim

23  to equitably subordinate all the claims arising under the First Credit Agreement and relief

24  from stay should be denied.

25       **2.    Lehman Commercial's Security Interests Constitute Fraudulent**

26            **Transfers**

27       Generally speaking, under either the Bankruptcy Code or California law, a transfer

28  of property or an obligation incurred is constructively fraudulent and, thus, avoidable if the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1    debtor did not receive reasonably equivalent value in return, and the debtor was insolvent

2    or undercapitalized at the time of the transfer or obligation.  *See* 11 U.S.C. § 548; *see also*

3    Cal. Civ. Code §§ 3439.04(a)(2), 3439.05.  Section 551, in turn, preserves an avoidable

4    transfer for the benefit of the estate.  With respect to avoided liens, § 551 "operates to

5    preserve an avoided lien for the benefit of the bankruptcy estate so as to permit the

6    trustee to step into the position of the creditor whose lien has been avoided, thereby

7    preventing a junior lien holder (or a debtor) from improving its position at the expenses of

8    a debtor's unsecured creditors."  *In re Seibold*,  351 B.R. 741, 746 (Bankr. D. Idaho 2006);

9    *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) (stating

10    that § 551 "prevents junior lienors from improving their position at the expense of the

11    estate when a senior lien is avoided." (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 91

12    (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877)).

13        Here, the Debtors did not receive reasonably equivalent value in exchange for

14    incurring the obligation to pay Lehman Commercial $320 million and granting Lehman

15    Commercial a security interest to secure the repayment of that obligation.  The Parent

16    Debtor "borrowed" $320 million on a secured basis, but did not receive $320 million in

17    return.  The sum of $144 million of the borrowed funds was paid directly from escrow to

18    the Parent Debtor's owners, and the Parent Debtor was provided access to only $50

19    million (as opposed to $75 million) on the revolving line of credit provided under the First

20    Lien Agreement.  Thus, the Parent Debtor received substantially less than the $320

21    million incurred.

22        The Subsidiary Debtors similarly did not receive reasonably equivalent value.  Each

23    of the Subsidiary Debtors granted Lehman Commercial a security interest in each of their

24    respective Developments to secure the entire amount of the loans to the Parent Debtor

25    ($320 million), but received only a small fraction of the loan proceeds.  McAllister Ranch,

26    McSweeny Farms, and Summerwind Ranch received only $20 million, $17.7 million, and

27    $24 million, respectively, in exchange for liens securing $320 million.  Moreover, certain of

28

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  the Subsidiary Debtors were forced to effectively pay approximately $40 million to Lehman

2  Commercial in repayment of the January 2006 Loans.

3        In sum, the January 2006 Loans were not an even or reasonable exchange of

4  value.  The Debtors obligated themselves to pay $320 million and granted Lehman

5  Commercial security interests to secure the repayment of those obligations.  However, the

6  Debtors actually received far less than $320 million and, therefore, did not receive

7  reasonably equivalent value in exchange for the transfers of property and the obligations

8  incurred.  The Trustee believes that he can prove that the Debtors were insolvent at the

9  time of the transfers pursuant to the applicable definitions of insolvency, including

10  undercapitalization.  Accordingly, Lehman Commercial's liens against the Development

11  Accounts and the Developments can be avoided as fraudulent transfers.  Moreover, as

12  the recipient of a fraudulent transfer, Lehman Commercial's asserted claims will be

13  disallowed pursuant to § 502(d) of the Bankruptcy Code.

14

15    **B.**    **Lehman Commercial is Not Entitled to Relief Pursuant to § 362(d)(1)**

16    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

17              On request of a party in interest and after notice and a hearing,
              the court shall grant relief from the stay provided under
18              subsection (a) of this section, such as by terminating,
              annulling, modifying, or conditioning such stay—

19
              (1) for cause, including the lack of adequate protection of an
20              interest in property of such party in interest.

21  "Cause" is not statutorily defined, but is determined on a case-by-case basis.  *See In re*

22  *Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990); *see also In re Conejo*

23  *Enterprises, Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) ("The decision to grant or deny relief

24  from the automatic stay is committed to the sound discretion of the bankruptcy court. . .").

25              a.      The Estates' Claims will Render Lehman Commercial

26                      Unsecured

27        As demonstrated above, Lehman Commercial's secured claim in each bankruptcy

28  case should be subordinated, and the liens securing Lehman Commercial's claims should

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

273858.5                          21                          OPPOSITION

1  be avoided and preserved for the benefit of the bankruptcy estates.  Alternatively, Lehman

2  Commercial's liens against the Developments Account and the Developments should be

3  avoided in their entirety as fraudulent transfers and preserved for the benefit of the

4  estates.  Either way, Lehman Commercial will be unsecured and, therefore, not entitled to

5  adequate protection.  The Court should not permit Lehman Commercial to foreclose on

6  liens that can and will be completely eliminated.  This is especially so where, as here, the

7  movant is bankrupt and the Trustee's recovery will likely be limited to the collateral, and

8  where the estates' claims, such as the claims for equitable subordination, will be

9  eliminated if relief from the automatic stay is granted.

10                          b.        Lehman has Failed to Prove the Amount of its Claim and the

11                                    Amount of Equity in the Development Account

12          The guarantees and security interests granted by the Subsidiary Debtors to

13  Lehman Commercial are limited by fraudulent transfer law.  The First Lien Guarantee and

14  Collateral Agreement (the "Guarantee") provides that:

15              Anything herein or in any other Loan Document to the contrary
                notwithstanding, (i) the maximum liability of each Guarantor
16              hereunder and under the other Loan Documents shall in no
                event exceed the amount which can be guaranteed by such
17              Guarantor under applicable federal and states laws relating to
                fraudulent conveyances or transfers or the insolvency of
18              debtors (after giving effect to the right of contribution [against
                other Guarantors]. . . .

19

20  (*See* Lehman Relief Mot., Ex B, at bate stamp 124, First Lien Guarantee and Collateral

21  Agreement § 2.1(b).)

22          To determine the amount that each Subsidiary Debtor might owe under the

23  Guarantee, Lehman Commercial must demonstrate the amount fraudulent transfer law

24  would permit.  To do so, Lehman Commercial must provide evidence of, among other

25  things, whether a Subsidiary Debtor made a transfer or incurred an obligation with actual

26  intent to hinder, delay, or defraud any creditor of a Subsidiary Debtor, Cal. Civ. Code

27  §§ 3439.04(a)(1), whether a Subsidiary Debtor received reasonably equivalent value in

28  exchange for issuing the Guarantee, Cal. Civ. Code §§ 3439.04(a)(2), 3439.04(b)(8) and

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1    3439.05, whether a Subsidiary Debtor was insolvent, Cal. Civ. Code §§ 3439.04(b)(9),

2    3439.05, whether a Subsidiary Debtor was engaged in a business or transaction for which

3    its remaining assets were unreasonably small in relation to the business or transaction,

4    Cal. Civ. Code §§ 3439.04(a)(2)(A), or whether a Subsidiary Debtor intended to incur, or

5    believed or reasonably should have believed that it would incur, debts beyond its ability to

6    pay as they became due, Cal. Civ. Code §§ 3439.04(a)(2)(B).

7         Lehman Commercial has not and cannot prove that the Subsidiary Debtors are

8    liable in the amount of $244 million (under the First Lien Credit Agreement) as asserted in

9    its moving papers. As discussed above, the Subsidiary Debtors clearly did not receive

10   reasonably equivalent value when they incurred the obligations under the Guarantees and

11   granted Lehman Commercial security interests to secure those obligations. Because

12   Lehman Commercial has failed to prove the amount of debt guaranteed by the Subsidiary

13   Debtors, it has failed to prove the amount of the its liens and, thus, the lack of equity in the

14   Developments. Accordingly, Lehman Commercial has failed to prove that it is entitled to

15   adequate protection.

16         c.    Lehman Failed to Prove that its Collateral is Currently

17               Declining in Value

18        Even assuming that Lehman Commercial's liens are valid, as an undersecured

19   creditor, Lehman Commercial is entitled to adequate protection only to the extent that the

20   value of the collateral is declining. *See United Sav. Ass'n of Texas v. Timbers of Inwood*

21   *Forest Assoc., Ltd.*, 484 U.S. 365 (1988); *see also In re Cambridge Woodbridge*

22   *Apartments, LLC*, 292 B.R. 832, 841 (Bankr. N.D. Ohio 2003) (stating that, to prevail

23   under § 362(d)(1), a creditors must establish, among other things, "a decline in the value

24   of the collateral securing the debt. . .").  However, while Lehman Commercial has provided

25   evidence of the value of the Developments as of March, 2008 (approximately 6 months

26   prior to the petition pates), it has not provided any evidence that the Developments are

27   *currently* declining in value, which is the appropriate test. *See In the Matter of Continental*

28   *Airlines, Inc.*, 146 B.R. 536, 542 (Bankr. D. Del. 1992) (stating that a creditor is entitled to

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  adequate protection only to the extent that the collateral declined in value after the motion

2  for adequate protection was filed).  As such, Lehman Commercial has failed to prove that

3  it is entitled to adequate protection.

4         The Trustee provided evidence that the value of the Developments is stable.  Larry

5  Wasbin, MAI, a senior appraiser at Frauenthal & Associates, Inc., testifies that the

6  residential land values in the areas of the Developments have not materially declined

7  since the Petition Dates.  (*See* Declaration of Larry Wasbin at 2, ¶ 10.)  By obtaining

8  authority to use cash collateral, the Trustee can pay the expenses necessary to preserve

9  the value of the Developments, thereby preventing the neglect complained of by Lehman

10 Commercial, and the Trustee will continue to seek Court authority to do so for the

11 pendency of these cases.  Moreover, the value of the Developments is arguably

12 enhanced by the commencement of these cases by staying Lehman Commercial's

13 foreclosure efforts and providing a mechanism to maximize value of the collateral through

14 a controlled reorganization or sale process.  Lastly, since the Trustee controls the Debtors'

15 books and records, entitlements, permits, reports and assessments, a buyer would likely

16 to pay much more for the Developments than in a foreclosure sale where records will be

17 difficult to find and a transition is not orderly.

18        In sum, if the Trustee prevails on his claims against Lehman Commercial, Lehman

19 Commercial will be rendered totally unsecured.  Moreover, Lehman Commercial has failed

20 to carry its evidentiary burden.  Lehman Commercial has failed to prove the amount of its

21 claims, the equity in its collateral, and that its collateral is currently declining in value.

22 Therefore, Lehman Commercial has failed to prove that it is entitled to adequate

23 protection, which it must do to obtain the relief it seeks.  *See In re Elmore*,  94 B.R. 670,

24 677 (Bankr. C.D. Cal. 1988).  In contrast, the Trustee has provided evidence that the

25 Developments are stable and, arguably, increasing in value.  Accordingly, Lehman

26 Commercial is not entitled to relief form the automatic stay pursuant to § 362(d)(1).

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

**C.      Lehman is Not Entitled to Relief Pursuant to § 362(d)(2)**

Section 362(d)(2) provides that the Court shall grant relief from the automatic stay, "if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." To meet its burden of proving that property is necessary to an effective reorganization, a debtor must prove that there is a "reasonable possibility of a successful reorganization within a reasonable time." The United States Supreme Court has held:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*Timbers*, 484 U.S. at 375-76. Pursuant to § 362(g)(1), the party requesting relief from the automatic stay has the burden of proving the debtor's equity in the subject collateral.

**1.      Lehman Failed to Prove that the Debtors Lack Equity in the Developments and Other Collateral**

Lehman Commercial failed to carry its statutory burden and prove that the Debtors lack equity in the Developments and other collateral. As discussed above, Lehman Commercial provides no evidence, explanation, or argument as to the amount guaranteed by the Subsidiary Debtors, and thus, has not shown a lack of equity in the Developments. In short, Lehman Commercial has not and cannot demonstrate that the amount of the debt owed to it by the Subsidiary Debtors exceeds the value reflected in its appraisals.

**2.      The Amount of Equity is in Dispute**

The amount of equity available for the estates is in dispute. As discussed above, the Trustee can create substantial equity in the Developments and the Development Account based on the estates' claims against Lehman Commercial. Whether the Trustee

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1 | succeeds in avoiding and preserving Lehman Commercial's liens in their entirety or,

2 | alternatively, subordinating Lehman Commercial's secured claims and transferring

3 | Lehman Commercial's liens to the estates, Lehman Commercial will be unsecured. Under

4 | either scenario, the liens previously held by Lehman Commercial will be held by the

5 | estates, thereby preventing any junior secured creditors from improving their position.

6 | Thus, any value generated by the Developments that would have previously been paid to

7 | Lehman Commercial will be available to the estates

8 |         **3.      The Trustee will File a Plan that has a Reasonable Possibility of**

9 |                   **Being Confirmed Within a Reasonable Time**

10 |       The Developments and the Development Account are unquestionably necessary

11 | for an effective reorganization beginning with the commencement of suit against Lehman

12 | Commercial. The Trustee's plan will focus on the estate's claims against Lehman

13 | Commercial and other secured creditors, and the elimination and/or reduction of the liens

14 | against the property of these estates. As demonstrated above, the bankruptcy estates

15 | have significant claims, which, if successful, will enable the Trustee to avoid or at least

16 | reduce the liens against the Developments and other collateral, and preserve those liens

17 | for the benefit of the estate. The Trustee will then use the estate property to provide a

18 | meaningful distribution through a chapter 11 plan. More specifically, the Trustee can

19 | pursue outside financing opportunities and/or the development or sale of the

20 | Developments, and use the resulting proceeds to fund a plan. The Trustee is already

21 | engaged in active negotiations that may result in plan funding and is considering

22 | alternative transactions to maximize value for the estates. While the Trustee pursues his

23 | plan and litigation, the value of the Developments will be maintained through the use of

24 | cash collateral or, potentially, debtor in possession financing.

25 |

26 |

27 |

28 |

Smiley, Wang Ekvall & Strok, LLP
Welland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

**D.**    **Lehman Commercial has Acted in Bad Faith and Prevented the Trustee from Fairly and Fully Defending the Estates Against the Lehman Relief Motions**

On October 5, 2008, Lehman Commercial filed its own chapter 11 in the Southern District of New York.  Lehman's chapter 11 case is being jointly administered with many other Lehman Brothers related chapter 11 cases, with the lead case being *In re Lehman Brothers Holding, Inc. et al,* Case Number 08-13555 (collectively, the "Lehman Bankruptcy Cases").

Since October 30, 2008 (the day following the Trustee's appointment), the Trustee has repeatedly requested that Lehman Commercial stipulate to relief from the automatic stay imposed by the commencement of its bankruptcy case.  The Trustee seeks relief from the automatic stay to serve discovery on Lehman Commercial, Lehman Lakeside, and potentially other Lehman-affiliated entities, and to assert any and all affirmative claims, as necessary, to defend the Lehman Relief Motions and resolve Lehman Commercial's secured and unsecured claims.  The Trustee requested that Lehman Commercial stipulate to relief from the automatic stay, as opposed to simply proceeding with the necessary discovery and adversary proceedings, because the Trustee does not want to expose the bankruptcy estates to sanctions for willful violation of the automatic stay, a concept that is interpreted broadly by the Second Circuit.

Incredibly, Lehman Commercial has been uncooperative with the Trustee's efforts to expeditiously obtain relief from the automatic stay in advance of the Trustee's deadline to oppose the Lehman Relief Motions.  Lehman Commercial initially requested that the Trustee prepare a stipulation regarding the termination of the automatic stay, and then refused to execute the stipulation prepared by the Trustee's counsel.  Now, Lehman Commercial requests that the Trustee disclose his proposed discovery informally, and

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1  allow Lehman Commercial the ability to decide in its sole discretion, whether to comply

2  with the Trustee's discovery requests.[12]  This is unacceptable.

3        Lehman Commercial is attempting to foreclose on substantial assets of these

4  estates, and the Trustee should be permitted to defend these estates without limitation.

5  Moreover, the estates have significant claims against Lehman Commercial, which directly

6  impact the validity of its security interests and the estates' equity in the Developments.

7  Lehman Commercial's procedural gamesmanship should not be rewarded.  Lehman

8  Commercial should not be permitted to stand behind the automatic stay imposed by its

9  own bankruptcy case, thereby preventing the Trustee from attacking validity of Lehman

10  Commercial's security interests, while seeking affirmative relief from this Court based on

11  those same interests.  For these reasons alone, the Lehman Relief Motions should be

12  denied, or at a minimum, continued, because the Trustee has not been afforded the

13  opportunity to fairly defend these estates.  This is especially so since the value obtained

14  from the Developments and other collateral will likely be the only source of recovery for

15  the estates in the short term should the Trustee prevail against Lehman Commercial,

16  Lehman Lakeside, and/or other Lehman related entities.

17

18        **E.      Notice of the Lehman Relief Motions was Improper**

19        Pursuant to Federul Rule of Bankruptcy Procedure 4001(a)(1) and Local

20  Bankruptcy Rule 9013-1(a)(5), in a chapter 11 case, notice of a relief from stay motion

21  must be provided to the United States trustee, the debtor and debtor's counsel, any

22  chapter 11 trustee, and any committee of unsecured creditors or, if no committee is

23  appointed, then the 20 largest general unsecured creditors.  *See* Fed. R. Bankr.

24  P. 4001(a)(1); *see also* Local Bankruptcy Rule 9013-1(a)(5).

25  _____

26     [12]   A copy of this proposed stipulation and email correspondence between counsel for the Trustee and
Lehman Commercial are attached to the Declaration of Evan D. Smiley as Exhibits "G " and " H,"
27  respectively.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

1     As of the date the Lehman Relief Motions were filed, the bankruptcy schedules had

2 not been filed by the Debtors.  As such, Lehman Commercial could not serve notice of the

3 Lehman Relief Motions on the 20 largest general unsecured creditors for each Debtor as

4 required by the applicable bankruptcy rules.  Moreover, many of these creditors may not

5 have received notice of the chapter 11 bankruptcy cases due the fact that the master

6 mailing matrix of creditors in the Debtors' cases was not filed until November 6, 2008.

7 The 20 largest unsecured creditors have significant claims against these estates, and are

8 entitled to notice of the Lehman Relief Motions to protect their interests.  On this basis

9 alone, the Court should deny the Lehman Relief Motions, or at minimum continue the

10 hearings to provide for proper notice.

11

12 **IV.    CONCLUSION**

13     Based on the foregoing, the Trustee respectively requests that the Court deny the

14 Lehman Relief Motions, or at a minimum, continue the hearings in the Lehman Relief

15 Motions for proper notice.

16 Dated:  November 13, 2008          WEILAND, GOLDEN
                                      SMILEY, WANG EKVALL & STROK, LLP
17

18                                    By:  _____

19                                         EVAN D. SMILEY
                                           Proposed General Bankruptcy
20                                         Counsel for Chapter 11 Trustee
                                           Alfred H. Siegal
21

22

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

**PROOF OF SERVICE**

STATE OF CALIFORNIA,

COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 650 Town Center Drive, Suite 950, Costa Mesa, California 92626.

On November 13, 2008, I served the foregoing document described as **OMNIBUS OPPOSITI9ON OF CHAPTER 11 TRUSTEE TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY FILED BY LEHMAN COMMERCIAL PAPER INC., MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF ALFRED SIEGEL, HOWARD GROBSTEIN, EVAN SMILEY AND LARRY WASBIN MAI FILED SEPARATELY.** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

[✓]    BY MAIL

    [ ]    I deposited such envelope in the mail at Costa Mesa, California. The envelope was mailed with postage thereon fully prepaid.

    [✓]    I deposited such envelope with the firm for collection and processing. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on November 13, 2008, at Costa Mesa, California.

[ ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[✓]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under the penalty of perjury under the laws of the United States of America that the above is true and correct.

 Kelly M. Rivera
Type or print name

Signature

In re *LBREP/L—SunCal Master I LLC*
Case No.:  8:08-bk-15588-ES
Revised:  November 11, 2008 (MS)

## SERVICE LIST—SHORT LIST

LBREP/L-SunCal Master I LLC
3500 West Olive Ave., Suite 650
Burbank, CA 91505-5501
**DEBTOR**

LBREP/L-SunCal Master I LLC
2392 Morse Avenue
Irvine, CA 92614-6234
Facsimile:   (949) 777-4050
**DEBTOR**

Scott C. Clarkson, Esq.
Clarkson Gore & Marsella
3424 Carson Street, Suite 350
Torrance, CA 90503-5716
Telephone:  (310) 542-0111
Facsimile:   (310) 214-7254
Email:        sclarkson@lawcgm.com
**DEBTOR'S COUNSEL**

Eve A. Marsella, Esq.
Clarkson Gore & Marsella
3424 Carson Street, Suite 350
Torrance, CA 90503-5716
Telephone:  (310) 542-0111
Facsimile:   (310) 214-7254
Email:        emarsella@lawcgm.com
**DEBTOR'S COUNSEL**

Craig R. Rankin, Esq.
Levene Neale & Bender LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067-6200
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email:        cmr@lnbrb.com
**DEBTOR'S COUNSEL**

United States Trustee
Attn:  Michael J. Hauser, Esq.
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701-8000
Telephone:  (714) 338-3417
Facsimile:   (714) 338-3421
Email:        michael.hauser@usdoj.gov
**U.S. TRUSTEE**

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272903.2

1 | Alfred H. Siegel
Siegel Gottlieb Mangel & Levine
2 | 15233 Ventura Boulevard, 9th Floor
Sherman Oaks, CA 91403-2201
3 | Telephone: (818) 325-8441
Facsimile:    (818) 325-8545
4 | CHAPTER 11 TRUSTEE

5 | Gramercy Warehouse Funding I LLC
420 Lexington Avenue
6 | New York, NY 10170-0002
PETITIONING CREDITOR
7 |
Daniel H. Reiss, Esq.
8 | Levene Neale Bender Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
9 | Los Angeles, CA 90067-6200
Telephone: (310) 229-1234
10 | Facsimile:    (310) 229-1244
Email:       dhr@lnbrb.com
11 | COUNSEL FOR PETITIONING CREDITOR

12 | David R. Zaro, Esq.
Yale K. Kim, Esq.
13 | Allen Matkins Leck Gamble
Mallory & Natsis LLP
14 | 515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3398
15 | Telephone: (213) 622-5555
Facsimile:    (213) 620-8816
16 | Email:       dzaro@allenmatkins.com
COUNSEL FOR LEHMAN COMMERCIAL PAPER, INC.
17 |
George A. Davis, Esq.
18 | Cadwalader Wickersham & Taft LLP
One World Financial Center
19 | New York, NY 10281-1003
Telephone: (212) 504-6000
20 | Facsimile:    (212) 504-6666
Email:       george.davis@cwt.com
21 | COUNSEL FOR LEHMAN COMMERCIAL PAPER, INC.

22 | Van C. Durrer, II, Esq.
Skadden Arps Slate Meagher & Flom LLP
23 | 300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071-3137
24 | Telephone: (213) 687-5000
Facsimile:    (213) 687-5600
25 | Email:       van.durrer@skadden.com
COUNSEL FOR SQUARE MILE
26 |
27 |
28 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272903.2

In re *LBREP/L—SunCal Master I LLC*
Case No.: 8:08-bk-15588-ES
Revised: November 11, 2008 (MS)

### SERVICE LIST—JOINT COMMITTEE OF CREDITORS

Hemet Manufacturing Co., Inc.
dba Genesis Construction
Attn: Bruce Perry
170 E Oakland Avenue
Hemet, CA 92543
Telephone: (951) 652-6977
Facsimile: (951) 925-6585

John D. Scripter
dba Masonry Plus
Attn: Steven G. Gibbs, Esq.
Law Offices of Steven G. Gibbs
4540 California Avenue, Suite 330
Bakersfield, CA 93309
Telephone: (661) 633-1144
Facsimile: (661) 864-1938

Lennar Homes of California, Inc.
Attn: Graham Jones
25 Enterprise
Aliso Viejo, CA 92656
Telephone: (949) 349-8096
Facsimile: (949) 448-0523

Nissho of California, Inc.
Attn: Christopher R. Mordy
Peterson & Price, APC
655 W. Broadway, Suite 1600
San Diego, CA 92101
Telephone: (619) 234-0361
Facsimile: (619) 234-4786

Stantec Consulting, Inc.
Attn: William Roberts
19 Technology Drive
Irvine, CA 92618
Telephone: (949) 923-6966
Facsimile: (949) 923-6121

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

273945.1

1  Superior Pipelines, Inc.
   Attn:  T. Scott Belden, Esq.
2  Klein DeNatale Goldner
   Cooper Rosenlieb & Kimball, LLP.
3  4550 California Avenue, 2nd Floor
   Bakersfield, CA 93309
4  Telephone:  (661) 395-1000
   Facsimile:    (661) 326-0418
5
   TC Construction Co., Inc.
6  Attn:  Jack Gieffels
   10540 Prospect Avenue
7  Santee, CA 92701
   Telephone:  (619) 820-3927
8  Facsimile:    (619) 819-9938

9  West Coast Structures, Inc.
   dba Western Structures
10 Attn:  Brian M. Skajem
   6005 Tyler Street
11 Riverside, CA 92503
   Telephone: (951) 352-4300
12 Facsimile:    (951) 352-4301

13 Weston Mason Marketing
   Attn:  Toni Weston
14 3130 Wilshire Boulevard, 4th Floor
   Santa Monica, CA 90403
15 Telephone: (310) 571-1425
   Facsimile:    (310) 826-8098
16

17

18

19

20

21

22

23

24

25

26

27

28

Weiland, Golden,
Wang Ekvall & Strok, LLP
Smiley,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

273945.1

In re *LBREP/L—SunCal Master I LLC*
Case No.: 8:08-bk-15588-ES
Revised: November 11, 2008 (MS)

## SERVICE LIST—20 LARGEST

| | |
|---|---|
| Corporation for Interest Rate<br>175 N. Franklin Street, Suite 2<br>Chicago, IL 60606<br>Telephone: (312) 332-2362 | Heller Ehrman White & McAulif<br>File No. 73536<br>P.O. Box 6000<br>San Francisco, CA 94160-3536<br>Telephone: (415) 772-6000 |
| O'Melveny & Myers, LLP<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Telephone: (949) 760-9600<br>Facsimile: (213) 430-6407 | Standard & Poor's<br>2542 Collection Center Drive<br>Chicago, IL 60693<br>Telephone: (800) 767-1896<br>Facsimile: (312) 233-7051 |
| Lehman Commercial Paper, Inc.<br>745 Seventh Street<br>New York, NY 10019<br>**FIRST LIEN LENDER** | George A. Davis, Esq.<br>Andrew Troop, Esq.<br>Calwalader Wickersham & Taft<br>One World Trade Center<br>New York, NY 10281-1003<br>Telephone: (212) 504-6000<br>Facsimile: (212) 504-6666<br>Email: george.davis@cwt.com<br>**COUNSEL FOR LEHMAN**<br>**COMMERCIAL PAPER, INC.** |
| Grammercy Warehouse Funding I<br>420 Lexington Avenue<br>New York, NY 10170-0002<br>**SECOND LIEN LENDER** | Daniel H. Reiss, Esq.<br>Levene Neale Bender Rankin & Brill LLP<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA 90067-6200<br>Telephone: (310) 229-1234<br>Facsimile: (310) 229-1244<br>Email: dhr@lnbrb.com<br>**COUNSEL FOR GRAMMERCY**<br>**WAREHOUSE FUNDING I** |
| Square Mile Structure Debt<br>Corporation Trust Center 1209<br>Wilmington, DE 19801 | Van C. Durrer, II, Esq.<br>Skadden Arps Slate Meagher & Flom LLP<br>300 S. Grand Avenue, Suite 3400<br>Los Angeles, CA 90071-3137<br>Telephone: (213) 687-5000<br>Facsimile: (213) 687-5600<br>Email: van.durrer@skadden.com<br>**COUNSEL FOR SQUARE MILE** |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

273792.1

In re ***LBREP/L—SunCal McAllister Ranch LLC***
Case No.: 8:08-bk-15637-ES
Revised: November 11, 2008 (MS)

### SERVICE LIST—20 LARGEST

Aleco Corporation
P.O. Box 81136
Bakersfield, CA 93380

Fenceworks, Inc.
870 N. Main Street
Riverside, CA 92501
Facsimile:   951-788-5649

General Electric Capital Corporation
3135 Easton Turnpike
Fairfield, CT 06828

Genesis Golf Builders, Inc.
11032 N. 52nd Street
Scottsdale, AZ 85254
Facsimile:   602-595-5345

Golden State Fence Company
870 N. Main Street
Riverside, CA 92501
Facsimile:   951-788-5649

Granite Construction Company
38000 Monroe Street
Indio, CA 92203
Facsimile:   760-775-8228

IRV Guinn Construction
6533 Rosedale Highway
Bakersfield, CA 93308
Facsimile:   661-325-5173

Jaqua & Sons
1050 West Avenue M
Lancaster, CA 93534
Facsimile:   661-723-3358

Klassen Corporation
2021 Westwind Drive
Bakersfield, CA 93301
Facsimile:   661-324-3900

Landscape Development, Inc.
28447 Witherspoon Parkway
Valencia, CA 91355
Facsimile:   661-295-1969

Lennar Homes of California
5251 Office Park Drive
Bakersfield, CA 93309

Masonry Plus
5116 W. Aven K-8
Lancaster, CA 93536
Facsimile:   661-943-1874

McKenna's Curb & Gutter Co.
P.O. Box 42335
Bakersfield, CA 93384
Facsimile:   661-588-1878

Park West Landscape, Inc.
13581 Desmond Street
Pacoima, CA 91351
Facsimile:   818-485-0991

Petrotech Resources Company
5400 Rosedale Hwy
Bakersfield, CA 93308
Facsimile:   661-635-0468

Sierra Cascade Construction
1043 West Avenue M-4, Ste E
Palmdale, CA 93551
Facsimile:   661-942-1754

Stantec Consulting - Chicago
13980 Collections Center Drive
Chicago, IL 60693

SunCal Management, Inc.
2392 Morse Avenue
Irvine, CA 92614
Facsimile:   949-777-4050

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272889.2

| 1 | Superior Pipeline, Inc. | Troon Golf, LLC |
| 2 | P.O. Box 81387 | 15044 N. Scottsdale Road, Suite 300 |
|   | Bakersfield, CA 93380 | Scottsdale, AZ 85254 |
| 3 | | Facsimile:   480-477-0573 |
| 4 | Lehman Commercial Paper, Inc. | George A. Davis, Esq. |
|   | 745 Seventh Street | Andrew Troop, Esq. |
| 5 | New York, NY 10019 | Calwalader Wickersham & Taft |
|   | FIRST LIEN LENDER | One World Trade Center |
| 6 | | New York, NY 10281-1003 |
|   | | Telephone:  (212) 504-6000 |
| 7 | | Facsimile:   (212) 504-6666 |
|   | | Email:      george.davis@cwt.com |
| 8 | | COUNSEL FOR LEHMAN |
|   | | COMMERCIAL PAPER, INC. |
| 9 | Grammercy Warehouse Funding I | Daniel H. Reiss, Esq. |
|   | 420 Lexington Avenue | Levene Neale Bender Rankin & Brill LLP |
| 10 | New York, NY 10170-0002 | 10250 Constellation Blvd., Suite 1700 |
|   | SECOND LIEN LENDER | Los Angeles, CA 90067-6200 |
| 11 | | Telephone:  (310) 229-1234 |
|   | | Facsimile:   (310) 229-1244 |
| 12 | | Email:      dhr@lnbrb.com |
| 13 | | COUNSEL FOR GRAMMERCY |
|   | | WAREHOUSE FUNDING I |
| 14 | Square Mile Structure Debt | Van C. Durrer, II, Esq. |
|   | Corporation Trust Center 1209 | Skadden Arps Slate Meagher & Flom LLP |
| 15 | Wilmington, DE 19801 | 300 S. Grand Avenue, Suite 3400 |
|   | | Los Angeles, CA 90071-3137 |
| 16 | | Telephone:  (213) 687-5000 |
|   | | Facsimile:   (213) 687-5600 |
| 17 | | Email:      van.durrer@skadden.com |
|   | | COUNSEL FOR SQUARE MILE |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272889.2

In re ***LBREP/L—SunCal Summerwind Ranch LLC***
Case No.: 8:08-bk-15640-ES
Revised: November 11, 2008 (MS)

## SERVICE LIST—20 LARGEST

All American Asphalt
P.O. Box 2229
Corona, CA 91718
Facsimile: 951-739-4671

Dust Control, Inc.
452 Viele Avenue
Beaumont, CA 92223
Facsimile: 951-922-6167

Innovative Inclosures
301 Industrial Way, Suite 5
Fallbrook, CA 92028
Facsimile: 951-696-2552

Keith Companies, The-Inlan
13980 Collections Center Drive
Chicago, IL 60693

OCB Reprographics, INc.
17721 Mitchell North
Irvine, CA 92614
Facsimile: 949-975-1482

Pacific Solis Engineering Inc.
10653 Progress Way
Cypress, CA 90630
Facsimile: 714-220-9589

Schilling Corporation
695 Greenfield Drive
El Cajon, CA 92021
Facsimile: 619-579-3733

Southern California Pipeline
1100 Irvine Blvd., Suite 37
Tustin, CA 92780
Facsimile: 714-838-0222

SunCal Management, LLC
2392 Morse Avenue
Irvine, CA 92614
Facsimile: 949-777-4050

City of Calimesa
908 Park Avenue
Calimesa, CA 92320
Facsimile: 909-795-4399

Goe & Forsythe, LLP
660 Newport Center Drive, Suite 320
Newport Beach, CA 92660
Facsimile: 949-721-0409

Jackson, DeMarco, Tidus
2030 Main Street, Suite 1200
Irvine, CA 92614
Facsimile: 949-752-0597

Miller Barondess, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Facsimile: 310-552-8400

Pacific Advanced Civil Engineering
17520 Newhope Street, Suite 200
Fountain Valley, CA 92708
Facsimile: 714-481-7299

RBF Consulting
14725 Alton Parkway
Irvine, CA 92618
Facsimile: 949-472-8373

Signs & Pinnick, Inc.
P.O. Box 945
El Cajon, CA 92022-0945
Facsimile: 619-579-0719

Stantec
22690 Cactus Avenue, Suite 300
Moreno Valley, CA 92553
Facsimile: 951-653-5308

Superior Masonry, Inc.
300 W. Olive Street, Suite A
Colton, CA 92324
Facsimile: 909-370-2992

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272888.2

1

TC Construction Company
10540 Prospect Avenue
Santee, CA 92071
Facsimile:    619-258-9751

West Coast Structures
6005 Tyler Street
Riverside, CA 92503
Facsimile:    951-352-4301

2

3

Lehman Commercial Paper, Inc.
4  745 Seventh Street
New York, NY 10019
5  FIRST LIEN LENDER

George A. Davis, Esq.
Andrew Troop, Esq.
Calwalader Wickersham & Taft
One World Trade Center
New York, NY 10281-1003
Telephone:   (212) 504-6000
Facsimile:   (212) 504-6666
Email:        george.davis@cwt.com
COUNSEL FOR LEHMAN
COMMERCIAL PAPER, INC.

6

7

8

9  Grammercy Warehouse Funding I
420 Lexington Avenue
10  New York, NY 10170-0002
SECOND LIEN LENDER

Daniel H. Reiss, Esq.
Levene Neale Bender Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067-6200
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:       dhr@lnbrb.com
COUNSEL FOR GRAMMERCY
WAREHOUSE FUNDING I

11

12

13

14  Square Mile Structure Debt
Corporation Trust Center 1209
15  Wilmington, DE 19801

Van C. Durrer, II, Esq.
Skadden Arps Slate Meagher & Flom LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071-3137
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600
Email:        van.durrer@skadden.com
COUNSEL FOR SQUARE MILE

16

17

18

19

20

21

22

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272888.2

In re *LBREP/L—SunCal McSweeny Farms LLC*
Case No.: 8:08-bk-15639-ES
Revised: November 11, 2008 (MS)

## SERVICE LIST—20 LARGEST

AEI-CASC Engineering, Inc.
937 S. Via Lata, Suite 500
Colton, CA 92324
Facsimile: 909-783-0108

All American Asphalt
P.O. Box 2229
Corona, CA 91718
Facsimile: 951-736-4671

Genesis Construction
P.O. Box 7067
Hemet, CA 92545
Facsimile: 951-925-6585

Group Seven Landscape Dev. I
45655 Reagan Way, Suite J
Murrieta, CA 92563

Homebuyers Guide Real Estate
17780 Fitch, Suite 195
Irvine, CA 92614
Facsimile: 949-476-3071

KIP Incorporated
25740 Washington Avenue
Murrieta, CA 92562
Facsimile: 951-698-7898

Nissho of California
1902 South Santa Fe Avenue
Vista, CA 92083
Facsimile: 760-727-8706

Outdoor Dimensions
5325 E. Hunter Avenue
Anaheim, CA 92807
Facsimile: 714-693-9578

Pacific Soils Engineering, I
P.O. Box 2249
Cypress, CA 92630
Facsimile: 714-220-9589

Pacific States Engineering
29992 Hunter Rd., Suite 105-102
Murrieta, CA 92563

Palm Canyon Contractors, Inc.
P.O. Box 656
Yucaipa, CA 92399

Rohm Insurance Agency
26 Plaza Square, Suite 200
Orange, CA 92866
Facsimile: 714-516-2965

Sierra Pacific Electrical Co.
2542 Avalon Street
Riverside, CA 92509
Facsimile: 951-784-4489

So. Cal Sandbags, Inc.
12620 Bosley Lane
Corona, CA 92883-6358
Facsimile: 951-277-2303

Southwestern Equipment LLC
5520 Walesley Street, #100
La Mesa, CA 91942
Facsimile: 619-469-1707

SunCal Management, LLC
2392 Morse Avenue
Irvine, CA 92614
Facsimile: 949-777-4050

Superior Masonry, Inc.
300 W. Olive Street, Suite A
Colton, CA 92324
Facsimile: 909-370-2992

TNT Grading, Inc.
268 Redel Road.
San Marcos, CA 92078
Facsimile: 760-736-4057

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272891.2

1  Weston/ Mason Marketing               Woodside Hemet 148, Inc.
   3130 Wilshire Blvd., 4th Floor        23121 Antonio Parkway, Suite 1
2  Santa Monica, CA 90403                Rancho Santa Margarita, CA 92688
   Facsimile:   310-826-8098
3
   Lehman Commercial Paper, Inc.         George A. Davis, Esq.
4  745 Seventh Street                    Andrew Troop, Esq.
   New York, NY 10019                    Calwalader Wickersham & Taft
5  FIRST LIEN LENDER                     One World Trade Center
                                         New York, NY 10281-1003
6                                        Telephone:  (212) 504-6000
                                         Facsimile:   (212) 504-6666
7                                        Email:       george.davis@cwt.com
                                         COUNSEL FOR LEHMAN
8                                        COMMERCIAL PAPER, INC.

9  Grammercy Warehouse Funding I         Daniel H. Reiss, Esq.
   420 Lexington Avenue                  Levene Neale Bender Rankin & Brill LLP
10 New York, NY 10170-0002               10250 Constellation Blvd., Suite 1700
   SECOND LIEN LENDER                    Los Angeles, CA 90067-6200
11                                       Telephone:  (310) 229-1234
                                         Facsimile:   (310) 229-1244
12                                       Email:       dhr@lnbrb.com
                                         COUNSEL FOR GRAMMERCY
13                                       WAREHOUSE FUNDING I

14 Square Mile Structure Debt            Van C. Durrer, II, Esq.
   Corporation Trust Center 1209         Skadden Arps Slate Meagher & Flom LLP
15 Wilmington, DE 19801                  300 S. Grand Avenue, Suite 3400
                                         Los Angeles, CA 90071-3137
16                                       Telephone:  (213) 687-5000
                                         Facsimile:   (213) 687-5600
17                                       Email:       van.durrer@skadden.com
                                         COUNSEL FOR SQUARE MILE
18
19
20
21
22
23
24
25
26
27
28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
TELEPHONE 714-966-1000

PROOF OF SERVICE

272891.2