# Exhibit F-1

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)      0000028845 |
|---|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor | |
| Lehman Bros. Holdings Inc. | 08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBREP Lakeside SC Master I, LLC        (with a copy to)
c/o LBREP II, L.P.                      Kirkland & Ellis LLP
1271 Avenue of the Americas, 38th Fl.   601 Lexington Avenue
New York, New York 10020                New York, New York 10022
Attn: Judy Turchin                      Attn: Paul M. Basta
      Ji Yeong Chu                            Cindy Y. Chen
Email: judy.turchin@lehman.com          Tel: 212 446-4800
       jichu@lehman.com                 Email: paul.basta@kirkland.com
                                               cindy.chen@kirkland.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
LBREP Lakeside SC Master I, LLC
1271 Avenue of the Americas, 38th Fl.
New York, New York 10020
Attn: Judy Turchin, Ji Yeong Chu

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:                Email Address:

---

**1.   Amount of Claim as of Date Case Filed: $** See attachment

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** See attachment
(See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** ___N/A___
**3a. Debtor may have scheduled account as:** ___N/A___
(See instruction #3a on reverse side.)

**4.   Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☑ Other
Describe: Setoff including on account of claims of the Debtors

Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____

**Amount of Secured Claim: $** Unknown      **Amount Unsecured: $** Unknown

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $** _____
(See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:
See attachment

Date:                  Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
9/21/2009

Rodolpho Amboss
Authorized Signatory

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

---

FOR COURT USE ONLY

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEHMAN BROTHERS | ) Case No. 08-13555 (JMP) |
| HOLDINGS INC., *et al.*, | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## ATTACHMENT TO PROOF OF CLAIM
## OF LBREP LAKESIDE SC MASTER I, LLC

**A.      General Background**

1.      On or after September 15, 2008 (the "Petition Date"), Lehman Brothers

Commercial Paper, Inc. ("LCPI"), together with its parent Lehman Brothers Holdings

Inc. ("LBHI") and other of LBHI's subsidiaries (collectively the "Debtors"),

commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors have

set September 22, 2009 as the date by which claims against them have to be filed

(the "Bar Date").

2.      This Attachment (this "Attachment") is filed by and on behalf of LBREP

Lakeside SC Master I, LLC and its members and affiliates ("Claimant" or "LBREP

Lakeside") as a supplement to the Claimant's written proof of claim ("Proof of Claim")

against LBHI.  All statements and assertions made in the Proof of Claim are incorporate

herein by reference.

**B.     Basis for Claim**

3.     Claimant is the majority member of LBREP/L-SunCal Master I, LLC ("**Master I**"), a real estate development investment in Southern California that is the sole member of four separate developments:   LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms, LLC, LBREP/L-SunCal Patterson Ranch LLC, and LBREP/L-SunCal Summerwind Ranch LLC.

4.     Claimant invested in Master I in 2004.   In October 2005, the Lehman Brothers Global Real Estate Group, which, on information and belief, was part of both LCPI and its parent, LBHI, organized a $320 million refinancing of the Master I debt.   As part of the refinancing, a dividend was to be paid to Master I's members, including LBREP Lakeside.

5.     On January 19, 2006, Master I closed on the $320 million loan arranged by LCPI and other Lehman entities.   It consisted of a $235 million First Lien Credit Agreement and an $85 million Second Lien Credit Agreement.   LCPI served as the Syndication Agent and Administrative Agent for both credit agreements.[1]

6.     In connection with the refinancing, Master I made a $144 million equity dividend to its members, including LBREP Lakeside.   The dividend was disclosed in the offering materials for the credit facilities, and both the First Lien Credit Agreement and Second Lien Credit Agreement provided for the dividend.   Upon information and belief, the transaction was structured by LCPI, including members of the Lehman Brothers Global Real Estate Group, who were also LBHI employees.

---

[1]   Claimant believes the credit agreements are confidential.   They are available at the request of the Court or a party that enters into an appropriate confidentiality agreement.

7.    Due to the downturn in the Southern California real estate market, Master I faced financial difficulties and, on September 10, 2008, an investor in the Second Lien Credit Facility, Gramercy Warehouse Funding I, LLC ("Gramercy"), filed an involuntary petition under chapter 11 against Master I.  The day before, on September 9, 2008 Gramercy had filed a lawsuit in the Superior Court of the State of California in the County of Los Angeles alleging that the $144 million equity dividend that Master I paid to LBREP Lakeside and its co-investors was a fraudulent transfer under California law.  Gramercy's action seeks to recover the funds LBREP Lakeside and others received.  A copy of the Gramercy complaint is attached hereto as **Exhibit A**.  The lawsuit was removed to federal Bankruptcy Court for the Central District of California where Master I's bankruptcy proceedings are pending.

8.    On October 30, 2008, the Bankruptcy Court appointed a chapter 11 Trustee for Master I.  Because the Trustee is the proper entity to pursue fraudulent transfer claims on Master I's behalf, the Gramercy action has been stayed so that the Trustee can evaluate the claims.

9.    The Trustee has been considering fraudulent transfer claims and related causes of action against LBREP Lakeside, its investment partners, and LCPI, and filed a proposed complaint with the Bankruptcy Court on November 13, 2008.  A copy of the Trustee's proposed complaint is attached hereto as **Exhibit B**.  The Trustee's proposed complaint contains fraudulent transfer claims under the Bankruptcy Code and California's Uniform Fraudulent Transfer Act.  It also contains a claim for breach of fiduciary duty against LCPI and LBREP Lakeside based, in part, on the $144 million dividend.  (*See* Ex. B at ¶ 63.)  LBREP Lakeside anticipates that the Trustee will formally

3

file a version of his proposed complaint in the coming months and that the Gramercy claims, which relate solely to the $144 million dividend, will be subsumed in that action.

10.     Given these claims, LBREP Lakeside faces potential liability under the Bankruptcy Code's fraudulent transfer provisions and California's state law equivalents. Along with LCPI, LBREP Lakeside also faces liability for breach of fiduciary duty to Master I. Though LBREP Lakeside denies that it can be held liable under the Trustee's and/or Gramercy's theories, to the extent the dividend is proved to be a fraudulent transfer, or LBREP Lakeside is found to have breached any fiduciary duty to Master I, LCPI and LBHI also would be at least partially responsible due to their role in the transaction.

11.     Accordingly, LBREP Lakeside files this Proof of Claim in order to assert, among other claims, negligence, equitable indemnification and contribution claims against LCPI and LBHI. LCPI and LBHI owed a duty to LBREP Lakeside to appropriately structure the Master I refinancing. LBREP Lakeside would be entitled to indemnification and/or contribution from LCPI and LBHI to the extent LBREP Lakeside is found liable on a fraudulent transfer theory or breach of fiduciary duty theory.

12.     Claimant reserves its right to seek any and all interest that it may be entitled to, including default interest, accrued and accruing, as well as any and all fees, costs and expenses that it may seek reimbursement for, including attorneys' fees and any other related expenses.

C.      **Reservation of Rights**

13.     Claimant reserves its right to seek any and all interest that it may be entitled to, including default interest, accrued and accruing, as well as any and all fees,

costs, and expenses that it may seek reimbursement for, including, without limitation, attorneys' fees and any other fees and costs related to the Proof of Claim against the Debtors and the chapter 11 cases.

14.    The filing of this Attachment and the Proof of Claim (including any documents or attachments submitted in connection therewith) does not constitute a concession or admission by Claimant of liability, of any facts, or as whether all or a portion of the claims are prepetition or postpetition in connection with any claim that has been or may be asserted against Claimant or against the Debtors and their estates.

15.    Claimant has filed this Attachment and Proof of Claim (including any documents or attachments submitted in connection therewith) under compulsion of the Bar Date Order entered in the Debtors' Chapter 11 cases and to protect Claimant from forfeiture of its claims against the Debtors by reason of the dates established thereby. Claimant reserves the right to amend and/or supplement this Attachment and the Proof of Claim at any time, including after the Bar Date, in any manner, and/or to file additional proofs of claim for any additional claims that may be based on the same or additional documents or grounds of liability or to assert that such claims are entitled to rights and priorities afforded under sections 365, 503 or 507 of the Bankruptcy Code.

16.    The filing of this Attachment and the Proof of Claim are not and shall not be deemed or construed as: (a) a waiver or release of Claimant's rights against any person, entity, or property; (b) consent by Claimant to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a waiver or release of Claimant's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable

herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by Claimant to a jury trial in a Bankruptcy Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding that may be commenced in this case against or otherwise involving Claimant; or (g) an election of remedies.

17.    All notices regarding this Proof of Claim should be sent to: LBREP Lakeside SC Master I, LLC, c/o Lehman Brothers Real Estate Partners II, L.P., 1271 Avenue of the Americas, 38th Floor, New York, New York 10020, Attention: Judy Turchin, Esq., and Ms. Ji Yeong Chu, with a copy to Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, New York 10022, Attention: Paul Basta, Esq. and Cindy Chen, Esq.

## Exhibit A

**Gramercy Warehouse Funding I LLC Complaint**

COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Gary E. Gans (Bar No. 89537)
2     garygans@quinnemanuel.com
      David M. Grable (Bar No. 237765)
3     davegrable@quinnemanuel.com
      Curran M. Walker (Bar No. 251730)
4     curranwalker@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:    (213) 443-3000
6   Facsimile:    (213) 443-3100

7   Attorneys for Plaintiff
    Gramercy Warehouse Funding I LLC

8

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 09 2008

John A. Clarke, Executive Officer/Clerk

By _____, Deput.
       CYNTHIA M. JACOBS

9               SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     COUNTY OF LOS ANGELES

11  GRAMERCY WAREHOUSE FUNDING I          CASE NO.    BC397750
    LLC,
12                                         COMPLAINT FOR AVOIDANCE OF
                Plaintiff,                 FRAUDULENT TRANSFERS UNDER
13                                         UNIFORM FRAUDULENT TRANSFER
         vs.                               ACT (CIVIL CODE § 3439.04) AND
14                                         COMMON LAW
    LBREP/L-SUNCAL MASTER I LLC; SCC
15  ACQUISITIONS, INC.; SCC
    ACQUISITIONS, LLC; SCC RANCH
16  VENTURES, LLC; LBREP LAKESIDE SC
    MASTER I, LLC; BRUCE ELIEFF; and
17  DOES 1 through 100, inclusive,

18              Defendants.

19

20       Plaintiff Gramercy Warehouse Funding I LLC ("Gramercy") alleges:

21

22                          SUMMARY OF ACTION

23       1.    This action arises out of Defendant LBREP/L-SunCal Master I, LLC's

24  constructive fraudulent transfers of $144 million, for which it received no consideration, leaving it

25  without sufficient assets to conduct its business. LBREP/L-SunCal Master I, LLC ("Borrower")

26  made the transfers using loan proceeds obtained through financing arrangements purportedly

27  designed to fund successful development of four real estate projects in Southern California (the

28  "Development Projects").

61263/2629483.1

                                                              COMPLAINT

                                   37

1    2.    On February 6, 2006, Gramercy purchased a $45 million note, as part of a

2 Second Lien Credit Facility for Borrower, to help finance the Development Projects. On

3 information and belief, proceeds from this Second Lien Credit Facility, along with proceeds from

4 a First Lien Credit Facility, were used to pay $144 million to one or more of the other defendants

5 as return of equity and payment of dividends.

6    3.    Borrower did not receive reasonably equivalent value in exchange for the $144

7 million transferred to other parties; indeed, given the nature of the transfers, Borrower received

8 nothing in exchange.

9    4.    At the time it transferred the funds, Borrower (a) was engaged or was about to

10 engage in a business for which its remaining assets were unreasonably small in relation to the

11 business; and/or (b) intended to incur, or believed or reasonably should have believed it would

12 incur, debts beyond it ability to pay as they became due.

13    5.    Within months of transferring the funds, Borrower notified Gramercy and other

14 lenders that it would need a substantial additional infusion of cash to be able to continue to

15 develop the Development Projects.

16    6.    Gramercy Investment Trust ("Gramercy Trust") purchased a $16.8 million note

17 as part of a Third Lien Credit Facility for Borrower. Shortly thereafter, Gramercy, Gramercy

18 Trust and other lenders learned that Borrower was in default on its loans from Gramercy,

19 Gramercy Trust and others, that their loans would not be repaid, and that Borrower was

20 abandoning the Development Projects.

21

22    **PARTIES**

23    7.    Gramercy is a limited liability company organized under the laws of Delaware

24 with its principal place of business in New York.

25    8.    Upon information and belief, Borrower is a limited liability company organized

26 under the laws of Delaware with its principal place of business in California.

27

28

61263/2629483.1

-2-

COMPLAINT

1    9.    Upon information and belief, Defendant SCC Acquisitions, Inc. is a corporation

2  organized under the laws of California with its principal place of business in California, which

3  also does business under the fictitious business names of "SunCal Companies" and "SunCal."

4    10.    Upon information and belief, Defendant SCC Acquisitions, LLC is a limited

5  liability company organized under the laws of California with its principal place of business in

6  California.

7    11.    Upon information and belief, Defendant SCC Ranch Ventures, LLC is a limited

8  liability company organized under the laws of California with its principal place of business in

9  California.

10    12.    Upon information and belief, Defendant LBREP Lakeside SC Master I, LLC is

11  a limited liability company organized under the laws of Delaware with its principal place of

12  business in California.

13    13.    Upon information and belief, Defendant Bruce Elieff is an individual residing

14  in California and is a shareholder and the President of SCC Acquisitions, Inc.

15    14.    The true names, identities and capacities of the defendants sued herein as Does

16  1 through 100 are unknown to plaintiff. The fictitiously named defendants are persons who

17  participated in the constructive fraudulent transfers alleged herein and/or who received proceeds

18  from the fraudulent transfers. When the names, identities and capacities of these fictitiously

19  named defendants become known, Gramercy will amend this Complaint accordingly and

20  otherwise proceed against them as if they had been named as parties upon the commencement of

21  this action.

22

23    STATEMENT OF FACTS

24  A.    Background on Borrower and Related Defendants

25    15.    On information and belief, Borrower is a joint venture between SCC

26  Acquisitions, Inc. and Lehman Brothers Real Estate Partners, L.P. On information and belief,

27  SCC Acquisitions, Inc. owns a 15% interest in Borrower through a subsidiary, SCC Ranch

28

612617262948.1

-3-

COMPLAINT

1    Ventures, LLC.  On information and belief, Lehman Brothers Real Estate Partners, L.P. owns an

2    85% interest in Borrower through a subsidiary, LBREP Lakeside SC Master I, LLC.

3         16.    On information and belief, Borrower was formed to develop parcels of land

4    located in Southern California, *i.e.* the Development Projects, for resale to homebuilders and

5    commercial developers.  On information and belief, in late 2005, Borrower was the indirect owner

6    of two of the four parcels on which projects called McAllister Ranch and McSweeny Farms were

7    to be developed, the indirect owner of part of the parcel (and of an option to purchase the other

8    part of the parcel) on which a project called Summerwind Ranch was to be developed, and the

9    indirect owner of an option to purchase the parcel on which a project called Borchard Patterson

10   was to be developed.

11        17.    On information and belief, Borrower was operated by SCC Acquisitions, Inc.,

12   an entity which professed to be expert in developing real estate projects like the Development

13   Projects, including market and financial analysis of such projects, and to have a management team

14   focused on providing "[i]mproved return on capital while reducing downside risks."

15        18.    The relationships and ownership structures of these entities and parcels is, on

16   information and belief, as follows [see diagram on following page]:

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

61263/2629483.1

-4-

COMPLAINT



**B.    The Second Lien Loan**

19.    On February 6, 2006, Gramercy purchased a $45 million note as part of a Second Lien Credit Facility for Borrower pursuant to a second lien credit agreement (the "Second Lien Credit Agreement"). As a result, Borrower became indebted to Gramercy in the amount of $45 million plus interest.

20.    Lehman Brothers Inc. served as advisor, sole lead arranger, and sole bookrunner for the Second Lien Loan. Lehman Commercial Paper Inc. ("LCPI") served as syndication agent and administrative agent for the Second Lien Loan.

///

///

///

61263/2629483.1

-5-

COMPLAINT

**C.    The $144 Million Transfers**

21.    On information and belief, at around the time Gramercy purchased the $45 million note in the Second Lien Loan, Borrower made payment for the return of equity and dividends in a total amount of $144 million to one or more of LBREP Lakeside SC Master I, LLC, SCC Acquisitions, Inc., SCC Acquisitions LLC, SCC Ranch Ventures, LLC and Bruce Elieff (the "Transfers").

22.    On information and belief, Borrower did not receive reasonably equivalent value in exchange for the Transfers. Indeed, on information and belief, Borrower received no value in exchange for the Transfers.

23.    On information and belief, the Transfers gave various defendants — including the owners of Borrower and related parties — significant returns on their investment in Borrower. On information and belief, the Transfers were made at a time when Borrower was not close to completing the work on the Development Projects, which had to be developed and sold in order for Borrower to be able to pay its debt to Gramercy (or even to pay the development costs incurred for the Development Projects). Indeed, on information and belief, Borrower did not even own all of the land necessary to complete the Development Projects at the time the Transfers were made. On information and belief, Borrower knew or should have known that it would need substantial additional capital to complete the work on the Development Projects.

**D.    Borrower Was Left Without Sufficient Funds to Complete the**
**Development Projects**

24.    On information and belief, at the time the Second Lien Credit Facility was established, Borrower had approximately $266 million in sources of funding; however, after the Transfers were made, Borrower was left with only approximately $3.7 million of cash and cash equivalents, a $25 million debt service reserve, $25 million in a development account and $75 million of available capacity under a revolving credit facility established pursuant to a First Lien Credit Facility. Moreover, under the credit agreements, the debt service reserve could not be used for development costs and there was a minimum liquidity requirement of $50 million. Therefore, on information and belief, Borrower had only approximately $79 million to fund the future

1   development costs of the Development Projects and its debt service.  Consequently, Borrower was
2   dependent on future sales of lots in the Development Projects to pay these development costs and
3   the debt service.

4         25.    On information and belief, given the existing liquidity of the company and
5   market conditions at the time, the Transfers put Borrower in a position such that (a) it was
6   engaged and about to engage in a business or a transaction for which its remaining assets were
7   unreasonably small; and (b) it intended to incur, or believed or reasonably should have believed
8   that it would incur, debts beyond its ability to pay as they matured.

9         26.    Indeed, several months later, Borrower notified Gramercy and other lenders that
10  it would need a substantial additional infusion of cash to be able to continue to develop the
11  Development Projects.

12  **E.**      **The Third Lien Loan**

13        27.    On March 9, 2007, Gramercy Trust purchased a note in the amount of
14  $16,845,536 as part of a third lien credit facility for Borrower pursuant to a third lien credit
15  agreement (the "Third Lien Credit Agreement").  On February 6, 2008, Gramercy succeeded to
16  Gramercy Trust's interest in the Third Lien Loan.

17        28.    Borrower thus became indebted to Gramercy in an additional amount of
18  $16,845,536 plus interest in accordance with the Third Lien Credit Agreement.

19        29.    Lehman Brothers Inc. served as advisor, sole lead arranger, and sole
20  bookrunner for the Third Lien Loan and LCPI served as syndication agent and administrative
21  agent for the Third Lien Loan.

22  **F.**      **Borrower Default**

23        30.    Just eleven months after Gramercy Trust funded $16,845,536 of the Third Lien
24  Loan, Gramercy, Gramercy Trust and other lenders received notice to the effect that Borrower was
25  in default on the Second and Third Lien Loans and was abandoning the Development Projects.

26  ///

27  ///

28  ///

61263/2629483.1

-7-

COMPLAINT

## FIRST CAUSE OF ACTION

### Avoidance of Constructively Fraudulent Transfer Under Uniform
### Fraudulent Transfer Act, Civil Code Section 3439.04, and Common Law
### [Against All Defendants]

31.    Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 30, inclusive, of this Complaint.

32.    Gramercy is a creditor of Borrower because (a) Borrower is obligated to repay Gramercy $45 million together with interest thereon pursuant to the second lien note held by Gramercy and the Second Lien Credit Agreement; and (b) Borrower is obligated to repay Gramercy $16,845,536 together with interest thereon pursuant to the third lien note held by Gramercy and the Third Lien Credit Agreement.

33.    The Transfers of $144 million to LBREP Lakeside SC Master I, LLC, SCC Ranch Ventures, LLC, SCC Acquisitions, Inc., SCC Acquisitions, LLC, Bruce Elieff and/or Does 1 through 100, and/or to any other immediate, mediate or subsequent transferee, constitute transfers of interests of Borrower in property. On information and belief, LBREP Lakeside SC Master I, LLC, SCC Ranch Ventures, LLC, SCC Acquisitions, Inc., SCC Acquisitions, LLC, Bruce Elieff and/or Does 1 through 100 were or are immediate, mediate or subsequent transferees of the $144 million.

34.    On information and belief, Borrower did not receive reasonably equivalent value in exchange for the Transfers.

35.    On information and belief, at the time Borrower made the Transfers, it (a) was engaged in a transaction, or was about to engage in a business, for which its remaining assets were unreasonably small in relation to the business; and (b) intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

36.    By virtue of the foregoing, the Transfers should be avoided, and the funds transferred should be restored to Borrower.

///
///

PRAYER FOR RELIEF

WHEREFORE, Gramercy respectfully request that the Court enter judgment and grant the following relief:

1.  Avoidance of the Transfers set forth in the Complaint;

2.  Damages against each transferee or person for whose benefit the Transfers were made in an amount equal to the lesser of the value of the asset transferred or the amount necessary to satisfy Gramercy's claim;

3.  An award of all costs incurred in connection with this action;

4.  An award of attorney's fees incurred in the prosecution of this action; and

5.  Any and all such other relief as may be deemed appropriate by the Court.

DATED: September 9, 2008

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: _____
Gary E. Gans
Attorneys for Plaintiff Gramercy
Warehouse Funding I LLC

61263/2629483.1

-9-

COMPLAINT

45

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

On October 15, 2008, I served the foregoing document(s) described as:

AMENDED REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF: (1) OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. 362 FILED BY LEHMAN COMMERCIAL PAPER INC., AS FIRST LIEN ADMINISTRATIVE AGENT; (2) PETITIONING CREDITORS' EX PARTE MOTION FOR AN ORDER SETTING A HEARING ON SHORTENED NOTICE ON MOTION TO APPOINT INTERIM TRUSTEE; and (3) MOTION TO APPOINT INTERIM CHAPTER 11 TRUSTEE

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

SEE ATTACHED SERVICE LIST

_____ (By Mail) I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail. Executed on October __, 2008 at Los Angeles, California.

__X__ (By Federal Express/Overnight Mail) I caused such envelope to be delivered by Federal Express (or Express Mail), next business day delivery to the addressees on the attached list. Executed on October 15, 2008, at Los Angeles, California.

_____ (By Facsimile) I caused said document to be sent via facsimile to the offices of the addressees so designated on the attached list. Executed on October __, 2008, at Los Angeles, California.

_____ (By E-mail) I caused such document to be delivered via email to the addressees so designated on the attached list. Executed on October __, 2008, at Los Angeles, California.

_____ (By Personal service) I caused such envelope to be delivered by hand to the offices of the addressee so designated on the attached list. Executed on October __, 2008 at Los Angeles, California.

__X__ (Federal) I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

John Berwick

In re LBREP/L-SunCal Master I LLC
USBC Case No. 8:08-bk-15588-ES

Debtor
LBREP/L-SunCal Master I LLC
2392 Morse Avenue
Irvine, CA 92614

Agent for Service of Process
Melvin T. Andrews
3500 West Olive Avenue, Suite 650
Burbank, CA 91505

U.S. Trustee - Santa Ana
Michael J. Hauser, Esq.
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701-8000

Gramercy Warehouse Funding I LLC
Robert Foley, Chief Operating Officer
420 Lexington Avenue
New York, NY 10170

Petitioning Creditor
John D. Scripter dba Masonry Plus
c/o Steven Gibbs, Esq.
Law Office of Steven Gibbs
4540 California Avenue, Suite 330
Bakersfield, CA 93309

Petitioning Creditor
Klassen Corporation
c/o Daniel Clifford, Esq.
1430 Truxton Avenue, Suite 900
Bakersfield, CA 93301

Petitioning Creditor
Landscape Development, Inc.
c/o Adam J. Soibelman, Esq.
Stone/Rosenblatt/Cha PLC
21550 Oxnard Street, Main Plaza, Suite 200
Woodland Hills, CA 91367

Petitioning Creditor
Landscape Development, Inc.
Raoul Sanders
Director of Finance and Purchasing
24439 Whitaker Way
Murrieta, CA 92562

Petitioning Creditor
Pacific Soils Engineering, Inc.
c/o Darren Burge, Esq.
Barmasse, Cohen & Burge
30423 Canwood Street, Suite 208
Agoura Hills, CA 91301

Petitioning Creditor
Pacific Soils Engineering, Inc.
Daniel Martinez, President
10653 Progress Way
Cypress, CA 90360

Petitioning Creditor
Southwestern Equipment LLC
c/o John M. Turner, Esq.
Turner & Maasch, Inc.
550 West C Street, Suite 1150
San Diego, CA 92101

Petitioning Creditor
West/Mason Marketing
Tom Weston - President
3130 Wilshire Blvd., 4th Floor
Santa Monica, CA 90403-2358

Petitioning Creditor
Pacific Advanced Civil Engineering, Inc.
17520 Newhope Street, Suite 200
Fountain Valley, CA 92708

Petitioning Creditor
Van Dyke Landscape Architect
c/o Mitch Phillippe
2970 5th Avenue # 240
San Diego, CA 92103

Scott C. Clarkson, Esq.
Clarkson, Gore & Marsella, APLC
3424 Carson Street, Suite 350
Torrance, CA 90503

Counsel for Lehman Commercial Paper
David R. Zaro, Esq.
Allen Matkins Leck Gamble Mallory & Natsis
515 South Figueroa Street, Ninth Floor
Los Angeles, CA 90071-3309

Counsel for Lehman Commercial Paper
George Davis, Esq./Andrew Troop, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

## Exhibit B

### Chapter 11 Trustee's Proposed Complaint



1

2

3

4

5

6  Attorneys for Alfred H. Siegel,
   Chapter 11 Trustee

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    SANTA ANA DIVISION

11  In re                                    )  Case No. 8:08-BK-15588-ES

12  LBREP/L-Sun Cal Master I, LLC, et al.,   )  Chapter 11 Case
                                             )  (Jointly Administered with Case Nos.
13                    Debtor.                )  8:08-bk-15637-ES; 8:08-bk-15639-ES;
                                             )  and 8:08-bk-15640-ES)
14  _____         )
        ____ Affects LBREP/L-SunCal Master I, )  Adversary Case No. _____
15  LLC Only                                 )  COMPLAINT:
                                             )  (1)  TO AVOID AND RECOVER
16      ____ Affects LBREP/L-SunCal McAllister )       FRAUDULENT CONVEYANCE
    Ranch, LLC Only                          )       PURSUANT TO 11 U.S.C. SECTIONS
17                                           )       544(b) AND 550 AND CALIFORNIA
        ____ Affects LBREP/L-SunCal McSweeny )       CIVIL CODE SECTIONS 3439.04(a)(1);
18  Farms Only                               )  (2)  TO AVOID AND RECOVER
                                             )       FRAUDULENT CONVEYANCE
19      ____ Affects LBREP/L-SunCal Summerwind )       PURSUANT TO 11 U.S.C. SECTIONS
    Ranch Only                               )       544(b) AND 550 AND CALIFORNIA
20                                           )       CIVIL CODE SECTIONS 3439.04(a)(2);
        ____ Affects All Debtors,            )  (3)  TO AVOID AND RECOVER
21                                           )       FRAUDULENT CONVEYANCE
                                             )       PURSUANT TO 11 U.S.C. SECTIONS
22  ALFRED H. SIEGEL, Chapter 11 Trustee,    )       544(b) AND 550 AND CALIFORNIA
                                             )       CIVIL CODE SECTIONS 3439.05;
23                    Plaintiff,             )  (4)  TO PRESERVE THE TRANSFERS
                                             )       FOR THE BENEFIT OF THE ESTATES
24      v.                                   )       PURSUANT TO 11 U.S.C SECTION
                                             )       551;
25  LEHMAN COMMERCIAL PAPER, INC.,           )  (5)  FOR IMPOSITION OF
    a New York corporation; LBREP LAKESIDE   )       CONSTRUCTIVE TRUST;
26  SC MASTER I, LLC, a Delaware limited     )  (6)  FOR BREACH OF FIDUCIARY DUTY;
    liability company; GRAMERCY              )  (7)  FOR BREACH OF DUTY OF GOOD
27  WAREHOUSE FUNDING I, LLC, a Delaware     )       FAITH AND FAIR DEALING;
    limited liability company; and SQUARE    )  (8)  FOR EQUITABLE SUBORDINATION;
28  MILE, an entity of unknown origin.       )       AND

274057.1                                                              COMPLAINT

EXHIBIT A PAGE 5

Exhibit 1
21

| | | |
|---|---|---|
| 1 | | (9) **FOR AWARD OF ATTORNEYS' FEES** |
| 2 | Defendants. ) | **AND COSTS** |
| 3 | | |

4    Alfred H. Siegel, the duly appointed, qualified and acting chapter 11 trustee (the

5  "Trustee" or "Plaintiff") of the administratively consolidated estates of LBREP/L-SunCal

6  Masters I, LLC, LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-SunCal McSweeny

7  Farms, and  LBREP/L-SunCal Summerwind Ranch (collectively, the "Estates") hereby

8  files this Complaint: (1) To Avoid and Recover Fraudulent Conveyance Pursuant to 11

9  U.S.C. §§ 544(b) and 550 and California Civil Code § 3439.04(a)(1); (2) To Avoid and

10  Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil

11  Code § 3439.04(a)(2); (3) To Avoid and Recover Fraudulent Transfer Pursuant to 11

12  U.S.C. §§ 544(b) and 550 and California Civil Code § 3439.05; (4) To Preserve Avoidable

13  Transfer for the Benefit of the Estates Pursuant to 11 U.S.C. § 551; (5) For Imposition of

14  Constructive Trust; (6) For Breach of Fiduciary Duty; (7) For Equitable Subordination;

15  (8) For Declaratory Relief; and (9) For Award of Attorneys' Fees and Costs (the

16  "Complaint") against Lehman Commercial Paper, Inc. ("Lehman Commercial"), LBREP

17  Lakeside SC Master I LLC ("Lehman Lakeside"), Gramercy Warehouse Funding I, LLC

18  ("Gramercy"), and Square Mile ("Square Mile") (collectively, the "Defendants"), and

19  alleges that:

20  <u>STATEMENT OF JURISDICTION AND VENUE</u>

21    1.    The Bankruptcy Court has jurisdiction over this adversary proceeding

22  pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H), (K), and (O), and 1334.

23    2.    Venue properly lies in this judicial district in that this civil proceeding arises

24  under title 11 of the United States Code as provided for in 28 U.S.C. § 1409(a).

25    3.    This adversary proceeding arises out of and is related to the involuntary

26  bankruptcy cases of the administratively consolidated estates of LBREP/L-SunCal

27  Masters I, LLC ("Lehman/SunCal Master"), LBREP/L-SunCal McAllister Ranch, LLC

28  ("McAllister Ranch LLC"), LBREP/L-SunCal McSweeney Farms ("McSweeney Farms

274057.1

2

COMPLAINT

EXHIBIT A   PAGE 6

Exhibit 1
22

1  LLC"), and LBREP/L-SunCal Summerwind Ranch ("Summerwind Ranch LLC"), filed on

2  September 10 and 11, 2008 (the "Petition Dates") and currently pending in the United

3  States Bankruptcy Court for the Central District of California, Santa Ana Division.

4  McAllister Ranch LLC, McSweeney Farms LLC, and Summerwind Ranch LLC collectively

5  referred to as "Lehman/SunCal Subsidiaries." "Lehman/SunCal Master and the

6  Lehman/SunCal Subsidiaries are collectively referred to as the "Debtors."

7

8               **STATEMENT OF STANDING**

9      4.    The Plaintiff, as the Trustee, has standing to bring this action pursuant to 11

10  U.S.C. §§ 323, 544, 550, and 551.

11

12              **PARTIES TO THE ACTION**

13      5.    Plaintiff, Alfred H. Siegel, is the duly appointed, qualified and acting chapter

14  11 trustee for the Estates. This action is brought by the Trustee in his representative

15  capacity only.

16      6.    The Trustee is informed and believes, and on that basis alleges, that

17  defendant Lehman Commercial is a New York corporation with its principal place of

18  business at 745 Seventh Avenue, New York, New York 10019.

19      7.    The Trustee is informed and believes, and on that basis alleges, that

20  Lehman Lakeside is a Delaware limited liability company with its principal place of

21  business at is an individual residing at 3500 West Olive Avenue Suite 650, Burbank,

22  California 915053.

23      8.    The Trustee is informed and believes, and on that basis alleges, that

24  defendant Gramercy is the administrative agent for the Second Lien creditors and is sued

25  in this representative capacity.

26      9.    The Trustee is informed and believes, and on that basis alleges, that

27  defendant Square Mile is the administrative agent for the Third Lien creditors and is sued

28  in this representative capacity.

274057.1

3

EXHIBIT A PAGE 7

COMPLAINT

Exhibit 1
23

## GENERAL ALLEGATIONS

10.    The Trustee is informed and believes, and on that basis alleges, debtor Lehman/SunCal Master is a holding company, established to the fund the real estate development projects owned by each of the its four operating subsidiaries, *i.e.*, the debtor Lehman/SunCal Subsidiaries and a non-debtor LBREP/L-SunCal Patterson Ranch, LLC. Debtor Lehman/SunCal Master is controlled by defendant Lehman Lakeside. Defendant Lehman Lakeside is a subsidiary of Lehman Bros. Real Estate Partners, LP ("LBREP") and an affiliate of defendant Lehman Commercial. More specifically, defendant Lehman Lakeside is the managing member and 90% equity owner of debtor Lehman/SunCal Master. The remaining 10% equity interest in debtor Lehman/SunCal Master is owned by SCC Ranch Venture, LLC, which is an affiliate of SCC Acquisitions, Inc. d/b/a SunCal Companies.

11.    The Trustee is informed and believes, and on that basis alleges, debtor Lehman/SunCal Master's primary asset is its interest in its operating subsidiaries. Debtor Lehman/SunCal Master is the sole equity member of the debtors McAllister Ranch LLC, McSweeney Farms LLC, and Summerwind Ranch LLC, each of which, in turn, own real estate developments bearing the same name (collectively, the "Real Properties"). Each Lehman/SunCal Subsidiary has its own set of creditors and assets. The following is a more detailed discussion of the Real Properties:

## MCALLISTER RANCH

12.    The Trustee is informed and believes, and on that basis alleges, debtor McAllister Ranch LLC owns the real estate development commonly known as "McAllister Ranch," which is located near Bakersfield in Kern County, California. The Trustee understands that McAllister Ranch is designed to be a 2070 acre master-planned community featuring a golf course, lake, and approximately 6,087 homes. All of the lots have been graded, and the first of five planned subdivisions is nearly complete. In addition, the golf course is completed and the clubhouse is framed and roofed. Defendant

274057.1

4

EXHIBIT A PAGE 8

COMPLAINT

Exhibit 1
24

1  Lehman Commercial asserts that McAllister Ranch was worth $123 million on an "as is"

2  basis as of March 31, 2008 (approximately seven months prior to the Petition Dates).

3                              **MCSWEENEY FARMS**

4          13.    The Trustee is informed and believes, and on that basis alleges, debtor

5  McSweeney Farms LLC owns the real estate development commonly known as

6  "McSweeney Farms," which located near Hemet in Riverside County, California.

7  McSweeney Farms is comprised of 673 acres, and a total of 1,640 lots are planned to be

8  included thereon. Phase 1 of the project has been completed and sold out. The Trustee

9  is informed and believes that hundreds of homes have been completed, and there are

10  residents living in a substantial portion of these homes. Defendant Lehman Commercial

11  asserts that McSweeney Farms was worth $13,300,000 on an "as is" basis as of

12  March 31, 2008.

13                              **SUMMERWIND RANCH**

14          14.    The Trustee is informed and believes, and on that basis alleges, debtor

15  Summerwind Ranch LLC owns the real estate development commonly known as

16  "Summerwind Ranch," which is located near Calimesa in Riverside County, California.

17  Summerwind Ranch is comprised of 2,591 acres with 3,683 lots planned thereon.

18          15.    The Trustee is informed and believes, and on that basis alleges, debtor

19  Lehman/SunCal Master, as borrower, entered into three Lien Credit Agreements with

20  defendant Lehman Commercial as an administrative agent and participant (collectively,

21  the "Lien Credit Agreements"). Pursuant to the First and Second Lien Credit Agreements

22  (collectively, the "January 2006 Loan"), which were entered into on or around January 19,

23  2006, debtor Lehman/SunCal Master borrowed a total of $320 million as follows: (1) a

24  revolving credit facility of $75 million and term loan facility of $160 million under the First

25  Lien Credit Agreement; and (2) a $85 million term loan facility under the Second Lien

26  Credit Agreement. Defendant Lehman Commercial participated in the January 2006

27  Loans, and acted as the sole administrative agent, and Lehman Brothers, Inc. ("Lehman

28  Brothers"), served as the sole lead arranger and syndicator. Defendant Lehman

274057.1

COMPLAINT

1  Lakeside, Debtor's Lehman/SunCal Master's managing member, caused Lehman/SunCal

2  Master's obligations under these agreements to be guaranteed by the Lehman/SunCal

3  Subsidiaries, and secured by first and second liens cross-collateralized against the Real

4  Properties and other assets.  More specifically, defendant Lehman Commercial obtained a

5  lien from its affiliate defendant Lehman Lakeside against debtor Lehman/SunCal Master

6  for the full amount of the January 2006 Loan (the "Lehman/SunCal Master Lien"), as well

7  as liens against each of the Lehman/SunCal Subsidiaries also in the full amount of the

8  January 2006 Loan ("Lehman/SunCal Subsidiary Liens").  Therefore, a Lehman affiliated

9  entity was the lender, administrative agent, arranger, syndicator, borrower, managing

10  member of the borrower, and guarantor on the January 2006 Loans.

11      16.    The Trustee is informed and believes, and on that basis alleges, as a result

12  of the January 2006 Loan, the Debtors' were collectively saddled with $320 million in

13  secured debt and the significant interest thereon.  However, Debtors did not receive the

14  benefit of all the January 2006 Loan proceeds.  Of the $235 million allegedly loaned to

15  Lehman/SunCal Master under the First Lien Credit Agreement, a $144 million equity

16  distribution (the "Dividend") was immediately paid from escrow to Debtor Lehman/SunCal

17  Master's equity owners, of which 90%, $117 million, was paid to Lehman Lakeside.

18  Debtors appear to never have received the $144 million, nor any value for the transfer of

19  the Dividend.

20      17.    The Trustee is informed and believes, and on that basis alleges, most of the

21  $320 million January 2006 Loan proceeds went to one Lehman entity or another.  Besides

22  the $144 million Dividend, $10.6 million was paid to Lehman Commercial for its

23  arrangement and administrative fee.  Approximately $62 million went to repay another

24  Lehman entity's, "Lehman, Ali," loans to the Lehman/SunCal Subsidiaries.  This value

25  received by the Debtors is offset by the fact that debtor McSweeney Farms LLC paid

26  approximately $21 million into escrow prior to closing.

27      18.    The Trustee is informed and believes, and on that basis alleges, from

28  escrow $25 million was automatically set aside by escrow to fund a "Debt Service

274057.1

6

EXHIBIT A PAGE 10

COMPLAINT

Exhibit 1
26

1   Reserve" which the Debtors could not use, but served as defendant Lehman

2   Commercial's collateral.  Although this Debt Service Reserve which has also been

3   characterized as the Development Account was allegedly intended to be used by the

4   Debtors for various development and maintenance expenses, it appears that Lehman

5   Commercial's unfair exercise of control agreements and its lack of consent effectively

6   prohibited the use of these funds during the a substantial portion of the loan term.

7   Moreover, it appears that Lehman Commercial unnecessarily caused the funds in the

8   Development Account to be borrowed in order to increase its yield on its investment.

9   Similarly, there was another $25 million on the revolving credit line that was never made

10  available to the Debtors between the January 19, 2006 funding date and March, 2007

11  resulting in a combined $50 million of lost liquidity of which Debtors did not receive the

12  benefit.

13      19.    Moreover, while the Lehman/SunCal Subsidiaries were forced to grant

14  security interests in the Real Properties to secure the entire $320 million in loans it

15  Lehman/SunCal Master, each entity received very little of the loan proceeds.  The

16  following is a brief summary of the Trustee's findings regarding each Lehman/SunCal

17  Subsidiary:

18      A.    McAllister Ranch LLC: The Trustee is informed and believes, and on

19  that basis alleges, in exchange for securing the entire $320 million in loans to

20  Lehman/SunCal Master, McAllister Ranch received only loan proceeds sufficient to

21  replace the existing $20 million first position lien, which was held by another

22  Lehman-related entity and allegedly created on November 5, 2004.. Moreover, Lehman

23  SunCal Master upstreamed approximately $22.8 million of McAllister Ranch sale deposits

24  in March, 2006 which were effectively used in the operating account to disburse to

25  Lehman Commercial as part of the $40 million in interest and principal it received as part

26  of the $235 million loan ($144 million of which was disbursed as an allegedly as a

27  dividend).

28

274057.1

7

COMPLAINT

EXHIBIT A PAGE 11

Exhibit 1

27

1       **B.**   <u>McSweeney Farms LLC</u>: The Trustee is informed and believes, and

2  on that basis alleges, in exchange for securing the entire $320 million in loans to

3  Lehman/SunCal Master, McSweeney Farms LLC received only loan proceeds sufficient to

4  replace the existing $17.7 million first position lien, which was held by another

5  Lehman-related entity and allegedly created on May 18, 2005. Moreover, on January 19,

6  2006, through the escrow related to the funding of the loans, SunCal Master upstreamed

7  approximately $21.5 million of McSweeney Farms sale proceeds which were also

8  effectively used to as part of the $40 million in interest and principal Lehman Commercial

9  received as part of the $235 million loan ($144 million of which was disbursed allegedly as

10  a dividend).

11       **C.**   <u>Summerwind Ranch LLC</u>: The Trustee is informed and believes, and

12  on that basis alleges, in exchange for securing the entire $320 million in loans to

13  Lehman/SunCal Master, Summerwind Ranch LLC received only loan proceeds sufficient

14  to replace the existing $24 million first position lien, which was held by another

15  Lehman-related entity and allegedly created on May 3, 2005. It is unclear what other

16  benefit Summerwind Ranch LLC received at this point.

17     20.    The Trustee is informed and believes, and on that basis alleges, in sum, the

18  only concrete economic benefit received by the Lehman/SunCal Subsidiaries in exchange

19  for securing Lehman/SunCal Master's obligations under First and Second Lien Credit

20  Agreements (*i.e.*, the repayment of the $320 million in loans) was funds sufficient to relay

21  existing obligations to another Lehman-related entity, in amounts far less than that

22  secured by the Real Properties. Clearly, the Lehman/SunCal Subsidiaries did not receive

23  reasonably equivalent value.

24     21.    The Trustee is informed and believes, and on that basis alleges, on

25  February 6, 2007, a Third Lien Credit Agreement was entered into by Lehman/SunCal

26  Master, which allegedly provided for an additional $75 million term loan, guaranteed again

27  by the Lehman/SunCal Subsidiaries and secured by third priority liens ("Third

28

274057.1

8

EXHIBIT A PAGE 12

COMPLAINT

Exhibit 1
28

1   Lien") against the Real Properties. Lehman/SunCal Master Lien, the Lehman/SunCal

2   Subsidiary Liens and the Third Lien are collectively referred to as the "Transfers."

3          22.    The Trustee is informed and believes, and on that basis alleges, just as with

4   the January 2006 Loans, Lehman Commercial participated and served as the

5   administrative agent, and Lehman Brothers served as sole arranger and syndicator with

6   Lehman Lakeside as the managing member of the Debtors. It appears that the *need for*

7   the Third Lien Credit Agreement was not contemplated when the First and Second Lien

8   Credit Agreements were originated but needed because of cash flow shortages within the

9   Debtors, and simultaneous pressure by Lehman Commercial for the Debtors to timely pay

10  their obligations under the First Lien Credit Agreement. One year later, on February 14,

11  2008, defendant Lehman Commercial resigned as administrative agent under the Second

12  and Third Lien Credit Agreements and defendants Gramercy and Square Mile,

13  respectively, became the administrative agents. From the $75 million loaned to

14  Lehman/SunCal Master under the Third Lien Credit Agreement, $50 million was paid out

15  of escrow directly to Lehman Commercial to pay down obligations on the First Lien Credit

16  Agreement.

17         23.    The Trustee is informed and believes, and on that basis alleges, the

18  negotiations between Lehman Commercial and Lehman Lakeside essentially set the

19  Debtors' up for default. For example, on January 31, 2008, Lehman Commercial, as the

20  lien agent for all three Lien Credit Agreements, negotiated the Fourth Amendment and

21  Waiver to the First Lien Credit Agreement (the "Amendment"), which required that the

22  cash in the Development Account be *increased* from $25 million to $50 million by

23  March 31, 2008. Then, 60 days later on March 31, 2008, Lehman Commercial declared a

24  default due to the Debtors failure to increase the Development Account. Lehman

25  Commercial knew or reasonably should have known that the Debtors would be unable to

26  comply with the Amendment and come up with an additional $25 million in cash 60 days.

27         24.    The Trustee is informed and believes, and on that basis alleges, the other

28  defaults declared by Lehman Commercial are equally suspect. Lehman Commercial

274057.1                                  9                                  COMPLAINT

EXHIBIT A   PAGE 13

Exhibit 1
29

1  argues that the Debtors missed an interest payment, even though there was

2  approximately $25 million of cash in the Development Account, which was admittedly

3  available to repay and prepay loans.  Lehman Commercial argues that the Debtors failed

4  to timely deliver financial statements, but the Debtors were under the control of Lehman

5  Commercial's affiliate, Lehman Lakeside.  Lehman Commercial further asserts that the

6  Debtors failed to pay a $100,000 administrative fee and maintain the necessary liquidity

7  requirements, which was presumably caused by that fact that $144 million of the

8  January 2006 Loan proceeds were paid directly from escrow to Lehman/SunCal Master's

9  owners and, primarily, Lehman Lakeside.

10  ### SIGNIFICANT POST-PETITION EVENTS

11      25.     The Trustee is informed and believes, and on that basis alleges, on

12  October 2, 2008, Lehman Commercial filed four motions for relief from the automatic stay

13  (the "Lehman Relief Motions") in each individual case, which were originally scheduled for

14  hearings on October 28, 2008.  On October 14, 2008, a group of petitioning creditors filed

15  an opposition to the Lehman Relief Motions.  The Debtors, controlled by Lehman

16  Lakeside, did not oppose the Lehman Relief Motions, arguing that the Debtors have no

17  viable defenses to thereto.

18      26.     The Trustee is informed and believes, and on that basis alleges, following

19  the Debtors' refusal to oppose the Lehman Relief Motions, on or about October 15, 2008,

20  a group of petitioning creditors filed a motion for order authorizing the appointment of a

21  chapter 11 trustee (the "Trustee Appointment Motion").  The petitioning creditors argued

22  that an independent trustee should be appointed to represent the interests of the Debtors'

23  estates, especially in light of the affiliate relationship between Lehman Commercial, the

24  lender and movant, and Lehman Lakeside, the managing member and majority owner of

25  the Lehman/SunCal Master.

26      27.     The Trustee is informed and believes, and on that basis alleges, on

27  October 22, 2008, the Debtors answered the involuntary petitions, consented to the entry

28  of the orders for relief, and then filed motions to convert the cases from chapter 11 to

274057.1                                    10                                    COMPLAINT

EXHIBIT _A_ PAGE _14_

Exhibit I
30

1  chapter 7 (collectively, the "Motions to Convert"). The Debtors, controlled by Lehman

2  Lakeside, argued that conversion was proper because there was no possibility to

3  reorganize. Both Lehman Commercial and the Lehman-controlled Debtors opposed the

4  Trustee Appointment Motion.

5      28.    The Trustee is informed and believes, and on that basis alleges, following

6  his appointment, the Trustee immediately moved the Court for authoirty to use cash

7  collateral on a emergency basis (the "Cash Collateral Motion"). Lehman Commerical

8  opposed the Cash Collateral Motion, despite the fact that the Trustee sought Court

9  authority to use the cash in the Development Account for the sole purpose of preventing

10  the neglect complained of in the Lehman Relief Motions, and which was originally caused

11  by Lehman Commercial's own conduct. On November 6, 2008, the Court heard and

12  approved the Cash Collateral Motion over Lehman Commerical's objection. Pursuant to

13  the Court's order, the Trustee has authority to use the funds in the Development Account

14  pursuant to the Court-approved budget to bring the deferred maintenance up to date

15  (which maintenance Lehman Commercial refused to fund) and to preserve the value of

16  the Real Properties.

17

### FIRST CLAIM FOR RELIEF
**(To Avoid Transfer and Recover Intentionally Fraudulently Conveyance**
18  **under 11 U.S.C. §§ 544(b), 550, and Cal. Civ. Code § 3439.04(a)(1))**
19  **(against Lehman Commercial, Gramercy and Square Mile)**

20
21      29.    Plaintiff incorporates each and every allegation contained in paragraphs 1

22  through 28, inclusive, as though fully set forth herein.

23      30.    The Trustee is informed and believes, and on that basis alleges, the

24  Transfers occurred during the four-year period immediately preceding the Petition Dates.

25      31.    The Trustee is informed and believes, and on that basis alleges, the

26  Transfers were made with the actual intent to hinder, delay or defraud the Estates'

27  creditors.

28

274057.1

11

COMPLAINT

324

1      32.    Trustee is informed and believes, and on that basis alleges, that the

2  Lehman/SunCal Master Lien is in the amount of $320 million. The Lehman/SunCal

3  Subsidiaries Liens are cross collateralized in the amount of $320 million.  The Third Lien

4  is in the amount of $75 million.

5      33.    The Trustee is informed and believes, and on that basis alleges, creditors

6  existed at the time of the Transfers that remained unpaid as of the Petition Dates.

7      34.    The Trustee is informed and believes, and on that basis alleges, the

8  Transfers were made to or for the benefit of Lehman Commercial, Gramercy and Square

9  Mile.

10      35.    The Trustee is informed and believes, and on that basis alleges, the Debtors

11  received no or inadequate consideration from Lehman Commercial, Gramercy and

12  Square Mile in exchange for the Transfers.

13      36.    Trustee is informed and believes, and on that basis alleges, that Lehman

14  Commercial is an insider of the Debtors.

15      37.    The Trustee is informed and believes, and on that basis alleges, that

16  Debtors became insolvent as a result of the Transfers.

17      38.    By reason of the foregoing, the Transfers  are avoidable, Plaintiff is entitled

18  to set aside and recover the Transfers pursuant to 11 U.S.C. § 544(b), California Civil

19  Code §§ 3439.04(a)(1) and 3439.07, and 11 U.S.C. § 550.

20

21                        **SECOND CLAIM FOR RELIEF**
                **(To Avoid Transfer and Recover Constructively Fraudulently Conveyance
22              under 11 U.S.C. §§ 544(b), 550 and Cal. Civ. Code §§ 3439.04(a)(2))
                    (against Lehman Commercial, Gramercy and Square Mile)**

23      39.    Plaintiff incorporates each and every allegation contained in paragraphs 1

24  through 38, inclusive, as though fully set forth herein.

25      40.    The Trustee is informed and believes, and on that basis alleges, the

26  Transfers occurred during the four-year period immediately preceding the Petition Dates.

27      41.    Trustee is informed and believes, and on that basis alleges, that the

28  Lehman/SunCal Master Lien is in the amount of $320 million. The Lehman/SunCal

274057.1                              12                              COMPLAINT

EXHIBIT  A  PAGE  16

Exhibit 1
32

1  Subsidiaries Liens are cross collateralized in the amount of $320 million. The Third Lien

2  is in the amount of $75 million.

3      42.    The Trustee is informed and believes, and on that basis alleges, creditors

4  existed at the time of the Transfers that remained unpaid as of the Petition Dates.

5      43.    The Trustee is informed and believes, and on that basis alleges, the

6  Transfers were made to or for the benefit of Lehman Commercial, Gramercy and Square

7  Mile.

8      44.    The Trustee is informed and believes, and on that basis alleges, the Debtors

9  received no or inadequate consideration from Lehman Commercial, Gramercy and

10 Square Mile in exchange for the Transfers.

11     45.    The Trustee is informed and believes, and on that basis alleges, at the time

12 of the Transfers, the Debtors were engaged or were about to engage in a business or a

13 transaction for which the remaining assets of the Debtors were unreasonably small in

14 relation to the business or transaction.

15     46.    The Trustee is informed and believes, and on that basis alleges, at the time

16 of the Transfers, the Debtors intended to incur, or believed or reasonably should have

17 believed that they would incur, debts beyond their ability to pay as they became due.

18     47.    The Trustee is informed and believes, and on that basis alleges, Lehman

19 Commercial, Gramercy and Square Mile did not take the Transfers for a reasonably

20 equivalent value or in good faith.

21     48.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to

22 set aside and recover the Transfers pursuant to 11 U.S.C. § 544(b), California Civil Code

23 §§ 3439.04(a)(2) and 3439.07, and 11 U.S.C. § 550.

24

25                           **THIRD CLAIM FOR RELIEF**
   **(To Avoid Transfer and Recover Constructively Fraudulently Transferred**

26         **Property under 11 U.S.C. §§ 544(b), 550 and Cal. Civ. Code §§ 3439.05)**
   **(against Lehman Commercial, Gramercy and Square Mile)**

27     49.    Plaintiff incorporates each and every allegation contained in paragraphs 1

28 through 48, inclusive, as though fully set forth herein.

274057.1

13

COMPLAINT

50.    The Trustee is informed and believes, and on that basis alleges, the Debtors made the Transfers to and for the benefit of Lehman Commercial, its affiliates, Gramercy and Square Mile.

51.    The Trustee is informed and believes, and on that basis alleges, the Debtors did not receive reasonably equivalent value for making the Transfers.

52.    The Trustee is informed and believes, and on that basis alleges, at the time of the Transfers, the Debtors were either insolvent and/or were rendered insolvent as a result of the Transfers.

53.    The Trustee is informed and believes, and on that basis alleges, creditors existed at the time of or prior to the Transfers that remained unpaid as of the Petition Dates.

54.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside and recover the Transfers pursuant to 11 U.S.C. § 544(b), California Civil Code §§ 3439.05 and 3439.07, and 11 U.S.C. § 550.

## FOURTH CLAIM FOR RELIEF
### (To Preserve Transfer for the Benefit of the Estates Pursuant to 11 U.S.C. § 551)
### (against Lehman Commercial, Gramercy and Square Mile)

55.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 54, inclusive, as though fully set forth herein.

56.    Pursuant to 11 U.S.C. § 551, the Transfers are preserved for the benefit of the Estates as the Transfers are avoidable under 11 U.S.C. §§ 544 and 550 as set forth above.

## FIFTH CLAIM FOR RELIEF
### (For Imposition of Constructive Trust)
### (against Lehman Commercial, Gramercy and Square Mile)

57.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 56, inclusive, as though fully set forth herein.

274057.1

14

EXHIBIT A PAGE 18

COMPLAINT

Exhibit 1
34

58.    The Trustee is informed and believes, and on that basis alleges, the Transfers are fraudulent transfers for less than reasonably equivalent value.

59.    The Trustee is informed and believes, and on that basis alleges, Lehman Commercial, Gramercy and Square Mile were unjustly enriched as a result of the Transfers.

60.    By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust as of the date of the Transfers for the benefit of the Estates as of the Petition Date.

### SIXTH CLAIM FOR RELIEF
#### (For Breach of Fiduciary Duty)
#### (against Lehman Commercial and Lehman Lakeside)

61.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 60, inclusive, as though fully set forth herein.

62.    The Trustee is informed and believes, and on that basis alleges, Lehman Lakeside, as the managing member of debtor Lehman SunCal Master, which is the 100% member of the remaining debtors, has fiduciary duties to the Debtors and their creditors. Lehman Commercial, Lehman Lakeside's affiliate and recipient of, among other things, the Transfers, exercised sufficient control over the Debtors through, at a minimum, the affiliate relationship with Lehman Lakeside, to be considered an insider with fiduciary duties to the Debtors and their creditors.

63.    The Trustee is informed and believes, and on that basis alleges, Lehman Lakeside and Lehman Commercial breached their fiduciary duties to Debtors and their creditors, by, among other things set out in more detail above, causing the Debtors to agree to the Transfers when they did not receive reasonably equivalent value for these liens, and agreeing to loan terms which left insufficient funds for the development of the Real Properties, and causing the Debtors to agree to an increased reserved account which was unsustainable.  Moreover, by permitting a $144 million distribution of equity through the proceeds of development loans with no benefit to the Debtors, it caused

274057.1

15

EXHIBIT A PAGE 19

COMPLAINT

Exhibit 1

35

1  interest and principal obligations which burdened the Debtors to such an extent that it

2  resulted in inadequate liquidity to sustain the operations.

3      64.   The Trustee is informed and believes, and on that basis alleges, these

4  breaches caused the Debtors' insolvency and inability to pay their debts as they came

5  due.

6      65.   The Trustee is informed and believes, and on that basis alleges, Debtors

7  and their other creditors who did not know or have reason to know about the Transfers

8  have been injured in an amount to be proven at trial.

9      66.   By reason of the foregoing, Plaintiff is entitled to damages in an amount to

10  be proven at trial.  Because Lehman Commercial and Lehman Lakeside's conduct was

11  malicious, oppressive and in open disregard for the rights of others, the Plaintiff is entitled

12  to exemplary damages in an amount to be proven at trial.

13

14            **SEVENTH CLAIM FOR RELIEF**
    **(For Breach of Implied Covenant of Good Faith and Fair Dealing)**

15               **(against Lehman Commercial)**

16      67.   Plaintiff incorporates each and every allegation contained in paragraphs 1

17  through 66, inclusive, as though fully set forth herein.

18      68.   The Trustee is informed and believes, and on that basis alleges, defendant

19  Lehman Commercial owed Debtors the implied covenant of good faith and fair dealing

20  pursuant to the First, Second and Third Lien Credit Agreements in which Lehman

21  Commercial impliedly covenanted that it would, in good faith and in the exercise of fair

22  dealing, deal with debtor Lehman/SunCal Master fairly and honestly and do nothing to

23  impair, interfere with, hinder or potentially injure its rights.

24      69.   The Trustee is informed and believes, and on that basis alleges, defendant

25  Lehman Commercial breached the implied covenant of good faith and fair dealing, by,

26  among other things, the acts detailed above, which may not constitute breach of contract,

27  but which are contrary to the First, Second and Third Lien Credit Agreements purpose of

28  loans, i.e. real estate development.  These acts include, at a minimum, structuring the

274057.1

16

COMPLAINT

EXHIBIT A PAGE 20

Exhibit I
36

1 First, Second and Third Lien Credit Agreements, and related terms, so that sufficient
2 funds for the real estate development projects did not exist upon funding, refusing to allow
3 Debtors to use the funds in the Debt Servicing Account/Development Account to service
4 the January 2006 Loan, and requiring terms which Lehman Commercial knew or should
5 have known Debtors could not comply with such as the Increased Debt Servicing
6 Account/Development Account withholding and using these terms to call a default on the
7 January 2006 Loan.

8        70.    The Trustee is informed and believes, and based thereon alleges, Debtors
9 performed all acts, duties and responsibilities required of it under the First, Second and
10 Third Lien Credit Agreements except that which was prevented or caused by Lehman
11 Commercial's improper conduct.

12        71.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to
13 be proven at trial.

·14
15                          **EIGHTH CLAIM FOR RELIEF**
                               (For Equitable Subordination)
16              (against Lehman Commercial, Gramercy and SquareMile)

17        72.    Plaintiff incorporates each and every allegation contained in paragraphs 1
18 through 71, inclusive, as though fully set forth herein.

19        73.    The Trustee is informed and believes, and on that basis alleges, Lehman
20 Commercial, Gramercy and SquareMile are the recipients of the Lehman/SunCal Master
21 Lien, the Lehman/SunCal Subsidiary Liens, and the Third Lien, respectively.  Collectively
22 these liens are in the amount of no less than $395 million and Lehman Commercial,
23 Gramercy and SquareMile have asserted or will assert first, second and third priority
24 secured claims against the Estates for this amount.

25        74.    The Trustee is informed and believes, and on that basis alleges, Lehman
26 Commercial has engaged in inequitable conduct described in more detail above including
27 causing the Debtors, through its affiliate Lehman Lakeside, to agree to the
28 Lehman/SunCal Master Lien, the Lehman/SunCal Subsidiary Liens and the Third Lien

274057.1

COMPLAINT

1  when they did not receive reasonably equivalent value for these liens, causing the

2  Dividend to its affiliate Lehman Lakeside which left insufficient funds for the development

3  of the Real Properties, and causing the Debtors to agree to an increased reserved

4  account which was unsustainable.

5      75.    The Trustee is informed and believes, and on that basis alleges, Lehman

6  Commercial's misconduct resulted in injury to the Debtors and their creditors by putting

7  the Debtors in insolvency, unable to pay their debts as they came due in an amount to be

8  proven at trial but, at a minimum, in an amount equivalent to the Dividend plus interest.

9      76.    By reason of the foregoing, Plaintiff is entitled to equitably subordinate

10  Lehman Commercial's, Gramercy's and SquareMile's claims in an amount to be proven at

11  trial but, at a minimum, in the amount of the Dividend, plus interest, which result is not

12  inconsistent with the purposes of the Bankruptcy Code.

13

14  <u>**NINTH CLAIM FOR RELIEF**</u><br>**(For Award of Attorneys' Fees and Costs Pursuant to Rule 7008(b)**

15  **of the Federal Bankruptcy Rules)**<br>**(against all Defendants)**

16      77.    Plaintiff incorporates each and every allegation contained in paragraphs 1

17  through 76, inclusive, as though fully set forth herein.

18      78.    Based on the foregoing allegations, Plaintiff is entitled to reasonable

19  attorneys' fees and costs resulting from bringing the instant action.

20      **WHEREFORE**, Plaintiff prays that this Court enter a judgment against Defendants

21  as follows:

22      1.    Avoiding the Transfers and declaring that the Transfers be annulled and

23  rendered void as fraudulent transfers and for recovery of the Transfers for the benefit of

24  the Estates against Lehman Commercial, Gramercy and Square Mile.

25      2.    For preservation of the Transfers for the benefit of the Estates.

26      3.    For imposition of a constructive trust as of the date of the Transfers for the

27  benefit of the Estates.

28

274057.1

18<br>EXHIBIT  A  PAGE  22

COMPLAINT

Exhibit 1
38

1        4.     For a money judgment against Lehman Commercial and Lehman Lakeside

2  for breach of their fiduciary duties.

3        5.     For the equitable subordination to general unsecured creditors of all liens

4  created under the First, Second and Third Credit Agreements and for the preservation of

5  such liens for the benefit of the Estates;

6        6.     Plaintiff be awarded the Estates' costs and attorneys' fees incurred in this

7  action.

8        7.     For award of exemplary damages.

9        8.     For pre-judgment and post-judgment interest at the maximum legal rate.

10       9.     For such other and further relief as this Court may, in its discretion, deem

11  just and proper.

12

13  Dated: November _____, 2008

14

15                          By: _____

16                             Attorneys for Alfred H. Siegel,

17                             Chapter 11 Trustee

18

19

20

21

22

23

24

25

26

27

28

274057.1

COMPLAINT

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*AK*

**RECEIVED BY:**

**DATE**

1:27

**TIME**