# Exhibit R

1  Mark E. McKane (SBN 230552)
   mark.mckane@kirkland.com
2  Christopher W. Keegan (SBN 232045)
   chris.keegan@kirkland.com
3  KIRKLAND & ELLIS LLP
   555 California Street
4  San Francisco, California 94104
   Telephone: (415) 439-1400
5  Facsimile: (415) 439-1500

6  Attorneys for Defendants
   LBREP LAKESIDE SC MASTER I, LLC,
7  SC MASTER HOLDINGS, LLC, AND
   SC MASTER PARENT HOLDINGS, LLC
8

9              **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                      **SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:08-bk-15588-ES |
| LBREP/L-SunCal Master I LLC, et al., | Chapter 11 Case |
| Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
| _____ Affects LBREP/L-SunCal Master I LLC Only | **DECLARATION OF MARK E. MCKANE IN SUPPORT OF THE LBREP DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION** |
| _____ Affects LBREP/L- SunCal McAllister Ranch, LLC Only | |
| _____ Affects LBREP/L- SunCal McSweeny Farms, LLC Only | Judge:    TBD<br>Date:     TBD<br>Time:     TBD |
| _____ Affects LBREP/L- SunCal Summerwind Ranch, LLC Only | Place:    Courtroom 5A<br>          411 W. Fourth St.<br>          Santa Ana, CA 92701 |
| __X__ Affects All Debtors. | |

MCKANE DECL. IN SUPPORT OF LBREP                                    CASE NO. 8:08-bk-15588-ES
DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR
GOOD FAITH DETERMINATION

I, Mark E. McKane, hereby declare the following:

1. I am an attorney licensed to practice in the State of California, and I am admitted to practice before this Court. I am a partner at the law firm of Kirkland & Ellis LLP, counsel of record for defendants LBREP Lakeside SC Master I, LLC, SC Master Holdings, LLC, and SC Master Parent Holdings, LLC (together, the "LBREP Defendants") in *Siegel v. LBREP Lakeside SC Master I, LLC et al.*, in the United States District Court for the Central District of California, Southern Division, Case No. CV 10-8191-GHK(VBKx) which was referred to the Bankruptcy Court for all pre-trial proceedings, Adv. No. 8:11-ap-01084-ES. I submit this declaration in support of LBREP Defendants' Memorandum of Points and Authorities in Support of Motion for Good Faith Settlement Determination. I have personal knowledge of the following information, and if called to testify I could and would competently testify to the truth of the following.

2. In January 2006, LBREP/L-SunCal Master I LLC ("Master I" or the "Debtor") entered into a loan transaction that resulted in a $235 million First Lien Credit Facility and an $85 million Second Lien Term Loan Facility. The First and Second Lien Credit Agreements placed the value of the Debtors[1] and their properties at $977,500,000 based on appraisals, due diligence, and solvency certificates that certified the solvency of the Debtors. As part of the recapitalization, $144 million was paid as a dividend (the "Dividend") to Master I's equity owners. This Dividend forms the basis of the Trustee's claims.

3. The Dividend was fully disclosed to the lenders before the January 2006 loan transactions as the First and Second Lien Credit Agreements expressly referenced the Dividend. Each lender under the First and Second Lien Credit Agreements provided financing with the disclosure that $144 million of the proceeds would be used to issue a dividend to Master I's equity owners.

4. In February 2007, over a year after the January 2006 loans closed, the market validated Master I's solvency and projected performance when a syndicate of lenders originated a new $75 million loan to Master I.

---

[1] The Debtors include Master I and three of its four development projects, LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeney Farms LLC, and LBREP/L-SunCal Summerwind Ranch LLC (collectively the "Debtors").

| MCKANE DECL. IN SUPPORT OF LBREP DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR GOOD FAITH DETERMINATION | 1 | CASE NO. 8:08-bk-15588-ES |

1    5.    In September 2008, after the California real estate markets and high yield financing

2    markets suffered catastrophic and unprecedented collapses, creditors forced the Debtors into

3    bankruptcy by filing involuntary petitions under Title 11.  On October 30, 2008, the Bankruptcy

4    Court approved the appointment of the Trustee.

5    6.    On October 29, 2010, the Trustee filed the instant action.  All Defendants[2] then

6    moved to dismiss the Trustee's Complaint.  Rather than contest those motions, the Trustee sought

7    discovery and attempted to amend his complaint.  After receiving a hard drive containing more than

8    seven gigabytes of electronic data and almost 700,000 pages of discovery, the Trustee attempted to

9    assert thirteen causes of action against eleven distinct corporate and individual defendants in an

10    Amended Complaint filed on September 23, 2011.

11    7.    The Trustee alleges that a fully-disclosed dividend declared by Master I was both

12    actually and constructively fraudulent and that the Defendants—including the LBREP Defendants,

13    the Suncal Defendants, and the Lakeside Defendants—breached their fiduciary duties (as members

14    of the Debtor) by declaring the Dividend.  The Trustee also brings claims for unlawful distribution,

15    conversion, unjust enrichment, accounting, aiding and abetting, and conspiracy.  In total, the Trustee

16    seeks to recover $144 million plus additional consequential and punitive damages.

17    8.    The Trustee alleges that (1) the Dividend was oversized because the Defendants did

18    not leave enough capital in Master I to fund development costs going forward and left Master I

19    insolvent; and (2) Master I declared the Dividend before any profits were realized and before

20    substantial development on the properties had occurred.

21    9.    The Trustee's Amended Complaint raises novel issues of law, including tenuous veil

22    piercing and alter ego allegations.

23    10.    The LBREP Defendants have always denied the Trustee's allegations.

24    11.    The LBREP Defendants believe the Trustee's claims have no merit.

25

---

[2] The defendants include LBREP-Lakeside SC Master I, LLC, SC Master Holdings, LLC, and SC Master Parent Holdings, LLC (together, the "LBREP Defendants"), Lakeside Capital Partners II, LLC, Melvin T. Andrews and Ronald W. Lee (together, the "Lakeside Defendants"), and SCC Ranch Ventures LLC, SCC Acquisitions, Inc., SCC Acquisitions, LLC, Bruce Elieff, and Mark Magstadt (together, the "SunCal Defendants" and together with the LBREP Defendants and the Lakeside Defendants, the "Defendants").

MCKANE DECL. IN SUPPORT OF LBREP    2    CASE NO. 8:08-bk-15588-ES
DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR
GOOD FAITH DETERMINATION

1    12.  Following the Defendants' Motions to Dismiss the Amended Complaint, the Parties engaged in a constructive dialogue that led to a search for and mutual agreement on a third-party mediator.

13.  The subject settlement was reached in substantially final form on or about November 12, 2012.

14.  The settlement is the product of arm's-length negotiations between Parties represented by experienced counsel and is not intended to injure or otherwise harm any non-settling Parties.

15.  The settlement is not the result of any collusion or fraud.

16.  To reach this settlement, the Parties participated in five full-day mediation sessions conducted by the Honorable Mitchel R. Goldberg, Retired, that took place in March, April, June, and September of 2012. A sixth mediation took place, however, ultimately only the SunCal Defendants and their insurer participated in the final session.

17.  Prior to the first mediation session, the Parties submitted briefs to the mediator detailing their positions on the legal and factual issues in this litigation. The LBREP Defendants have always contended that (1) Master I's 2006 decision to declare a dividend was imminently reasonable, (2) Master I remained solvent with substantial equity cushion after the Dividend, (3) Master I had more than sufficient capital and access to additional capital to complete the developments, and (4) the fully-disclosed Dividend was not—and could not be—fraudulent.

18.  The LBREP Defendants have also emphasized that the Trustee's damages request ignores the equity contributions of equity sponsors following the Dividend and exaggerates the potential for success on the merits of its claims, including the likelihood of recovering punitive damages.

19.  At the first mediation session on March 5, 2012, the Parties made numerous presentations and debated the strengths and weaknesses of the Trustee's claims. Nevertheless, the Parties could not reach an agreement following the first mediation session. As a result, the Parties submitted supplemental briefing on disputed issues.

1    20.    To further illustrate the strength of their arguments, the LBREP Defendants retained
2    an expert to conduct an analysis of Master I's solvency and the sufficiency of capital before and after
3    the Dividend.  I understand that the Trustee also retained an expert to analyze these issues.

4    21.    The LBREP Defendants' fact development and expert analysis demonstrated that
5    Master I paid its debts as they became due and that it maintained reasonable capital to conduct its
6    business following the Dividend.

7    22.    The Parties made separate presentations to the mediator at the second and third
8    mediation sessions on April 16 and 17, 2012, but continued to dispute Master I's solvency and the
9    sufficiency of capital after the Dividend.  The Parties submitted a second set of supplemental
10    briefing in preparation for a fourth mediation session in June.

11    23.    At the fourth mediation session on June 16, 2012, the Parties continued to discuss the
12    relative strengths and weaknesses of their positions on these issues and narrowed in on a potential
13    settlement amount, but were unable to reach an agreement.  The Parties submitted another round of
14    supplemental briefing in preparation for a fifth mediation session in which the Parties hoped to
15    finalize the terms a settlement agreement.

16    24.    At the fifth mediation session on September 12, 2012, the Parties negotiated on a
17    potential impediment to a final settlement payment amount.  The Parties left the fifth session without
18    a finalized agreement but ultimately reached a settlement without the need for a sixth mediation
19    scheduled for October 5, 2012.

20    25.    The sixth mediation session only took place between the SunCal Defendants and their
21    insurer.

22    26.    Following the extensive mediation sessions and rigorous negotiations that took place
23    over the course of seven months, the Parties reached the subject settlement.  The settlement consists
24    of a "lump sum" payment of sixteen million dollars ($16,000,000) (the "Settlement Payment")
25    directly to the Trustee.

26    27.    The contributions to the Settlement Payment will be divided between Defendants
27    according to the following agreement:  (i) the LBREP Defendants will collectively contribute
28    thirteen million eight hundred thousand dollars ($13,800,000); (ii) the SunCal Defendants and SCM

will collectively contribute one million five hundred thousand dollars ($1,500,000); and (iii) the Lakeside Defendants will contribute seven hundred thousand dollars ($700,000).

28. The contribution to be paid by the LBREP Defendants reflects months of intensive negotiations and case evaluation during which the Parties maintained decidedly disparate views.

29. The LBREP Defendants' proportionate share of the Settlement Payment is higher than their alleged proportionate share of the Dividend.

30. If any Defendant, other than the LBREP Defendants, fails to fund its portion of the Settlement Payment, the LBREP Defendants will have the option of contributing an amount necessary to bring the entire Settlement Payment to fifteen million seven hundred and fifty thousand dollars ($15,750,000), and the Trustee has agreed to accept this amount while continuing to pursue his claims against Non-Settling Defendants in his discretion.

31. The LBREP Defendants' insurers have continuously and repeatedly disputed coverage. Significant negotiation occurred between the LBREP Defendants and their insurers to achieve any contribution by the insurers to the Settlement Agreement. Any insurance proceeds that constitute part of LBREP Defendants' settlement contribution represent a fair resolution of that dispute.

32. The Settlement Agreement represents a compromise of disputed claims and takes into consideration available defenses as well as the potential for liability.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, to the best of my knowledge. Executed in San Francisco, California, this 13th day of November, 2012.

By /s/ Mark E. McKane
Mark E. McKane