# Exhibit U

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 | **WEILAND, GOLDEN,**
   | **SMILEY, WANG EKVALL & STROK, LLP**
2 | Evan D. Smiley, State Bar No. 161812
   | esmiley@wgllp.com
3 | Philip E. Strok, State Bar No. 169296
   | pstrok@wgllp.com
4 | Hutchison B. Meltzer, State Bar No. 217166
   | hmeltzer@wgllp.com
5 | Robert S. Marticello, State Bar No. 244256
   | rmarticello@wgllp.com
6 | 650 Town Center Drive, Suite 950
   | Costa Mesa, CA 92626
7 | Telephone:    (714) 966-1000
   | Facsimile:    (714) 966-1002
8 |
9 | Attorneys for Alfred H. Siegel
   | Chapter 11 Trustee

10 |                **UNITED STATES BANKRUPTCY COURT**

11 |                **CENTRAL DISTRICT OF CALIFORNIA**

12 |                        **SANTA ANA DIVISION**

13 | In re                              | Case No. 8:08-bk-15588-ES

14 | LBREP/L-Sun Cal Master I LLC, et al., | Chapter 11

15 |                        Debtor.         | (Jointly Administered with Case Nos.
   |                                        | 8:08-bk-15637-ES; 8:08-bk-15639-ES; and
16 |                                        | 8:08-bk-15640-ES)

17 | _____ Affects LBREP/L-SunCal Master I | **EXHIBIT "1" TO ORDER CONFIRMING**
   | LLC, Only                             | **THE CHAPTER 11 TRUSTEE'S SECOND**
18 | _____ Affects LBREP/L-SunCal McAllister | **AMENDED CHAPTER 11 PLAN (DATED**
   | Ranch LLC, Only                       | **APRIL 21, 2011)**
19 |
20 | _____ Affects LBREP/L-SunCal          | **Plan Confirmation Hearing**
   | McSweeny Farms LLC, Only
21 | _____ Affects LBREP/L-SunCal          | DATE:    April 8, 2011
   | Summerwind Ranch LLC, Only            | TIME:    10:00 a.m.
22 |                                        | PLACE:   Courtroom 5A
   |   X    Affects All Debtors.            |          411 W. Fourth St.
23 |                                        |          Santa Ana, CA 92701

24 |
25 |
26 |
27 |
28 |

588982.1                                                                EXHIBIT 1

**WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Philip E. Strok, State Bar No. 169296
pstrok@wgllp.com
Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
Robert S. Marticello, State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone:    (714) 966-1000
Facsimile:    (714) 966-1002

Attorneys for Alfred H. Siegel,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:08-bk-15588-ES |
| LBREP/L-Sun Cal Master I LLC, et al., | Chapter 11 |
| Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
| _____ Affects LBREP/L-SunCal Master I LLC, Only | **SECOND AMENDED CHAPTER 11 PLAN (DATED APRIL 21, 2011)** |
| _____ Affects LBREP/L-SunCal McAllister Ranch LLC, Only | <u>Plan Confirmation Hearing</u> |
| _____ Affects LBREP/L-SunCal McSweeny Farms LLC, Only | DATE:       April 8, 2011 |
| | TIME:       10:00 a.m. |
| _____ Affects LBREP/L-SunCal Summerwind Ranch LLC, Only | PLACE:     Courtroom 5A |
| | 411 W. Fourth St. |
| __X__ Affects All Debtors. | Santa Ana, CA 92701 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II.  THE PLAN ........................................................................................... 2

    A.  The Plan is a Liquidating Plan........................................................ 2

    B.  The Plan Treats Claims Against All Estates................................... 3

    C.  What Creditors and Interest Holders Will Receive Under the Proposed Plan ............................................................................... 4

    D.  Unclassified Claims........................................................................ 4

        1.  Administrative Expenses ...................................................... 4

            a.  Ordinary Course Administrative Claims ................... 7

            b.  Non-Ordinary-Course Administrative Claims.......... 7

            c.  Professional-Fee Claims .......................................... 8

        2.  Priority Tax Claims ............................................................... 8

    E.  Classified Claims ........................................................................... 9

        1.  Summary of Classes ............................................................ 9

        2.  Secured Claims .................................................................... 9

            a.  Secured Claim of the 1st Lien Lenders................... 10

            b.  Secured Claims Other Than the Secured Claim of the 1st Lien Lenders ......................................... 14

        3.  Classes of Priority Unsecured Claims ............................... 17

        4.  Classes of Unsecured Claims ............................................ 18

            a.  Unsecured Deficiency Claim of the 1st Lien Lenders ................................................................... 18

            b.  Unsecured Claims Other Than the Unsecured Deficiency Claim of the 1st Lien Lenders ............ 20

        5.  Class of Interest Holders ................................................... 22

III.  MEANS OF EFFECTUATING THE PLAN ......................................... 22

    A.  The Sale of the Properties ........................................................... 23

        1.  The Auction ......................................................................... 23

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF CONTENTS (cont.)

<u>Page</u>

2.    The Transfer of Title .................................................................. 23

3.    The Surety Bonds ..................................................................... 23

B.    The Funding of the Plan ..................................................................... 24

C.    Transfer of Estate Assets ................................................................. 24

D.    Dissolution of the Debtors ............................................................... 25

E.    Liquidating Trust .............................................................................. 25

1.    Establishment of the Liquidating Trust ....................................... 25

2.    Trust Distributions ..................................................................... 25

3.    Duration of the Trust .................................................................. 25

4.    Liquidation of Avoidance Actions and Actions ............................ 26

5.    Liquidating Trustee .................................................................... 26

    a.    Appointment ...................................................................... 26

    b.    Term .................................................................................. 26

    c.    Powers and Duties ............................................................. 27

    d.    Retention of Professionals and Compensation
        Procedure ......................................................................... 29

    e.    Fees and Expenses ........................................................... 29

    f.    Limitation of Liability and Indemnification ........................... 30

    g.    Liquidating Trustee as Successor....................................... 31

    h.    Compromising Claims ........................................................ 31

    i.    Vesting of Assets............................................................... 31

6.    Liquidating Trustee as Disbursing Agent...................................... 31

7.    Bond........................................................................................... 32

8.    Federal Income and Taxation of the Liquidating Trust .................. 32

9.    Beneficiaries............................................................................... 32

F.    Release of Liens ................................................................................ 33

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

ii                                        · TABLE OF CONTENTS

## TABLE OF CONTENTS (cont.)

| | | | Page |
|---|---|---|---|
| | G. | Changes in Rates Subject to Regulatory Commission Approval | 33 |
| | H. | Exemption from Transfer Taxes | 33 |
| IV. | | DISTRIBUTIONS | 34 |
| | A. | Dates of Distributions | 34 |
| | B. | Manner of Distribution | 34 |
| | C. | Delivery of Distributions in General | 34 |
| | D. | Rounding of Payments | 35 |
| | E. | Interest on Claims | 35 |
| | F. | Compliance with Tax Requirements | 36 |
| | G. | De Minimis Distributions | 36 |
| | H. | Setoffs | 37 |
| | I. | Limitation on Liability | 37 |
| V. | | CLAIM OBJECTIONS AND DISPUTED CLAIMS | 37 |
| | A. | Standing | 38 |
| | B. | Claims Objection Deadline | 38 |
| | C. | No Distribution Pending Allowance | 38 |
| | D. | Reserves for Disputed Claims | 38 |
| VI. | | MECHANIC'S LIENS | 39 |
| VII. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 41 |
| | A. | Assumption and Assignment | 41 |
| | B. | Rejections | 44 |
| VIII. | | PRESERVATION OF CAUSES OF ACTION AND AVOIDANCE ACTIONS | 44 |
| IX. | | RETENTION OF JURISDICTION | 46 |
| X. | | EFFECT OF CONFIRMATION | 47 |
| | A. | Discharge | 47 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

iii

**TABLE OF CONTENTS (cont.)**

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

|   |   |   | Page |
|---|---|---|------|
| B. | Revesting of the Assets | | 47 |
| C. | Dissolution of the Committee | | 48 |
| D. | Exculpation and Releases | | 48 |
| E. | Modification of the Plan | | 48 |
| F. | Post-Confirmation Status Report | | 49 |
| G. | Quarterly Fees | | 49 |
| H. | Post-Confirmation Conversion/Dismissal | | 49 |
| I. | Final Decree | | 50 |
| TABLE | | | 51 |

## I.    **INTRODUCTION**

On September 10 and 11, 2008 (the "Petition Dates"), involuntary chapter 11 petitions were filed under the United States Bankruptcy Code (the "Bankruptcy Code" or "Code"), 11 U.S.C. §§ 101 *et seq.*, against LBREP/L-SunCal Master I LLC (the "Parent Debtor"), and LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and LBREP/L-SunCal Summerwind Ranch LLC (collectively, the "Subsidiary Debtors," and together with the Parent Debtor, the "Debtors"), commencing the above-captioned chapter 11 cases (collectively, the "Cases") before the United States Bankruptcy Court for the Central District of California (the "Court").  On October 30, 2008, the Court entered an order for relief in each of the Cases (collectively, the "Orders for Relief") and an order approving the appointment of Alfred H. Siegel (the "Trustee") as the chapter 11 trustee of the Cases.  The Cases are being jointly administered pursuant to an order of this Court entered on November 13, 2008.

The Trustee's Second Amended Chapter 11 Plan (the "Plan") is a liquidating plan. The Plan incorporates the terms of a settlement reached and approved by the Court between the Trustee, the Official Committee of Unsecured Creditors (the "Committee"), and Lehman Commercial Paper Inc. ("LCPI"), in its individual capacity and as administrative agent for the first-position secured lenders (the "1st Lien Lenders"), on the terms and conditions set forth in the amended and restated term sheet attached hereto as Exhibit "1" (the "Amended Term Sheet").  As described in further detail below, the Trustee intends to accomplish payments under the Plan through the sale of the Subsidiary Debtors' real property development projects (each, a "Property" and collectively, the "Properties") and/or the pursuit of Causes of Action[1] held by the Debtors' bankruptcy estates (each, an "Estate" and collectively, the "Estates") against third parties.  The primary source of potential recoveries for creditors under the Plan will be the Estates'

---

[1]    Any capitalized terms not defined in the text of this Plan are defined in the Table of Definitions found at the end of the Plan.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 Causes of Action. Moreover, as discussed in further detail below, while the Trustee is <u>not</u>

2 requesting the substantive consolidation of the Estates, any Distributions of Available

3 Cash to General Unsecured Creditors with respect to each of the Estates will be made on

4 a consolidated basis. The Effective Date of the Plan will be the first Business Day that is

5 fourteen (14) days after the entry of an order confirming the Plan (the "<u>Confirmation</u>

6 <u>Order</u>"), provided there has been no order staying the effectiveness of the Confirmation

7 Order.

8       Sent to you in the same envelope as this document is the Disclosure Statement

9 which has been approved by the Court and which is provided to help you understand the

10 Plan. Also accompanying this document is a letter from the Committee in support of the

11 Plan and recommending that creditors vote to accept the Plan.

12 **II.**    **THE PLAN**

13      **A.**    **The Plan is a Liquidating Plan**

14       The goal of the Plan is to liquidate the real property and other assets of the

15 Debtors' Estates, including Causes of Action held by the Estates, and to distribute any

16 resulting net proceeds. Under the Plan, the Properties will be sold to the 1st Lien Lenders

17 on account of the 1st Lien Lenders' Allowed Secured Claim and/or to one or more third

18 parties in accordance with bidding procedures approved by the Court. All other assets of

19 the Debtors' Estates will be transferred to the liquidating trust (the "<u>Liquidating Trust</u>")

20 established on the Effective Date of the Plan. Any and all Avoidance Actions and other

21 Causes of Action of the Estates are reserved under the Plan and will be transferred to the

22 Liquidating Trust, and the Liquidating Trustee will be vested with standing to pursue such

23 Avoidance Actions and Causes of Action. Generally speaking, under the Plan,

24 Distributions can be made from the following three potential sources of Cash: (1) any

25 remaining Cash set aside for the administration of the Debtors' cases and other purposes;

26 (2) the Estates' share of any proceeds from the sale or other disposition of the Properties;

27 and (3) any net recoveries from any Avoidance Actions or other Causes of Action

28 asserted by the Estates against third parties. The foregoing sources of Cash will be paid

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   to and administered and distributed by the Liquidating Trustee. The primary potential

2   source of repayment for Unsecured Trade Creditors will be any net proceeds from

3   litigation.

4       **B.**    **<u>The Plan Treats Claims Against All Estates</u>**

5        The Plan provides treatment for the Claims against each of the Debtors' Estates.

6   The Plan does not provide for the substantive consolidation of the Estates. Rather, the

7   Plan contains essentially four (4) separate chapter 11 plans, one plan for each Debtor.

8   The Trustee is submitting one plan and disclosure statement to simplify drafting and to

9   avoid duplicative costs relating to the preparation and distribution of multiple plans and

10  disclosure statements. Many of the procedural provisions and the treatment provided for

11  each Class of Claims of a similar priority in each Estate is the same. Moreover, the Lien

12  Lenders assert their respective Claims against each Debtor for the full amount owed, and

13  the Allowed General Unsecured Trade Claims against each Estate will receive periodic

14  Distributions from any Available Cash <u>on a consolidated basis</u>. However, for voting

15  purposes, each Holder of a Claim in a Class will vote its Claim in such Class by individual

16  Debtor. The classification scheme set forth below applies to each Debtor, but to the

17  extent there are no Claims in a certain Class against a particular Debtor, that Class will be

18  deemed not to exist for any purpose whatsoever as to that Debtor. Creditors asserting the

19  same Claim against more than one Estate or Debtor will receive only one satisfaction of

20  such Claim.[2]

21       Unless otherwise expressly stated in the Plan, the treatment of Allowed Claims and

22  Allowed Interests under the Plan supersedes any agreements or rights the Holders of

23  those Claims or Interests may have in or against the Debtors or their assets and is in full

24  satisfaction of the legal, equitable, and contractual rights of the Holders of the Claims or

25  Interests. Unless the Plan provides otherwise, no Distributions will be made and no rights

26  ────────────────

27     [2]   For example, if a creditor asserts the same Claim in the amount of $1,000.00 for services rendered to the McAllister Ranch Property against both McAllister Ranch and the Parent Debtor, the creditor will be paid only $1,000.00 on account of such Claim, if allowed.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1    retained on account of any Claim or Interest that has not become an Allowed Claim or

2    Allowed Interest.

3    **C.    What Creditors and Interest Holders Will Receive Under the**

4    **Proposed Plan**

5        As required by the Bankruptcy Code, the Plan classifies Claims and Interests in

6    various Classes according to their right to priority.  The Plan states whether each Class of

7    Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each

8    Class will receive.  In no event shall any creditor receive more than the creditor's Allowed

9    Claim, plus interest, to the extent provided herein.

10    **D.    Unclassified Claims**

11        Certain types of Claims are not placed into voting classes but are instead

12    unclassified.  They are not considered impaired and they do not vote on the Plan because

13    they are automatically entitled to certain treatment under the Bankruptcy Code.

14    Accordingly, the following Claims have not been placed into a Class:

15        **1.    Administrative Expenses**

16        Administrative Expenses Claims are Claims for costs or expenses of administering

17    the Debtors' Cases which are allowed under § 507(a)(2) of the Bankruptcy Code.  The

18    Bankruptcy Code requires that all Allowed Administrative Claims be paid on the Effective

19    Date of the Plan, unless a particular claimant agrees to a different treatment.  The

20    following charts list all of the Debtors' § 507(a)(2) unpaid Administrative Claims and their

21    treatment under the Plan:

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Ordinary-Course Administrative Claims | $0.00 | Unless the Trustee or the Liquidating Trustee object to an Ordinary-Course Administrative Claim, the Claim will be Allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | File any Request for Payment of its Claim. |
| Gramercy's Non-Ordinary Course Administrative Claim for the payment of the allowed fees and expenses of the Trustee and the Trustee's professionals pursuant to the Gramercy Stipulation | To be determined | Paid in full by the Trustee or the Liquidating Trustee on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing Gramercy's Non-Ordinary-Course Administrative Claim. |
| Other Non-Ordinary Course Administrative Claims | $0.00 | To the extent that any Non-Ordinary-Course Administrative Claims are Allowed, they will be paid in full by the Trustee or the Liquidating Trustee on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Non-Ordinary-Course Administrative Claim. |
| Clerk's Office Fees | $0.00 | Paid in full on or before the Effective Date. |
| Office of the United States Trustee Fees | $0.00 | Paid in full on or before the Effective Date. |
| Administrative Tax Claims | $0.00 | Unless the Trustee or the Liquidating Trustee objects to an Administrative Tax Claim or otherwise disputes the Administrative Tax Claim in accordance with applicable law, the Claim will be Allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Tax Claim, and the Person holding the Administrative Tax Claim need not file any Request for Payment of its Claim.<br><br>Any Administrative Tax Claim asserted by the County of Riverside will be paid in the ordinary course of business, currently and timely as they are incurred and billed, unless the Trustee or the Liquidating Trustee objects to or otherwise disputes such Administrative Tax Claim in accordance with applicable law. In an event of default, and to the extent such Administrative Tax Claim is also secured, the payment thereof will |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | include all costs, fees, charges and interest, if applicable, as required under 11 U.S.C. §§ 506(b) and 511, and applicable non-bankruptcy law. |
| Total | $0.00 | |

| Professional-Fee Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Alfred H. Siegel | $535,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Weiland Golden | $1,300,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Levene Neale | $800,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Crowe Horwath | $230,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Sills Cummis | $75,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Total | $2,940,000.00[3] | |

[3]    The estimate of Professional-Fee Claims is only an estimate and will change based upon the services required during these Cases and upon what the Court ultimately awards to professionals. The Estates remain liable for all allowed fees and costs regardless of the estimates.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

1  The following applies to Administrative Claims asserted in each Estate:

2  a.  Ordinary Course Administrative Claims

3  Unless the Liquidating Trustee or other party-in-interest objects to an Ordinary-

4  Course Administrative Claim, the Claim will be deemed Allowed in accordance with the

5  terms and conditions of the particular transaction that gave rise to the Ordinary-Course

6  Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim

7  need not File any Request for Payment of its Claim.  However, any Request for Payment,

8  or Motion to allow a Claim as an Ordinary-Course Administrative Claim must be Filed with

9  the Court and served on counsel for the Trustee or the Liquidating Trustee, as the case

10  may be, and the OUST by no later than sixty (60) days after the Effective Date.

11  b.  Non-Ordinary-Course Administrative Claims

12  A Non-Ordinary-Course Administrative Claim will be paid by the Trustee on the

13  Effective Date to the extent that prior to the Effective Date it has already been determined

14  to be an Allowed Non-Ordinary-Course Administrative Claim by the Court pursuant to a

15  Final Order.  Any other Non-Ordinary-Course Administrative Claim will be paid by the

16  Liquidating Trustee to the extent that it is allowed by the Court only if: (1) on or before

17  sixty (60) days after the Effective Date, the Person holding the Non-Ordinary Course

18  Administrative Claim both Files with the Court a Request for Payment of the Non-

19  Ordinary-Course Administrative Claim and serves the Request for Payment on counsel for

20  the Liquidating Trustee and the OUST; and (b) the Court, in a Final Order, allows the Non-

21  Ordinary-Course Administrative Claim.  Any party-in-interest, including, but not limited to,

22  the Liquidating Trustee, may File an objection to such a Request for Payment within the

23  time provided by the Bankruptcy Rules or within any other period the Court establishes.

24  Persons holding Non-Ordinary-Course Administrative Claims who do not timely File and

25  serve a Request for Payment will be forever barred from asserting these Claims or

26  sustaining any action seeking payment in any forum or from any court deriving from these

27  Claims against the Estates, the Debtors, the Trustee, the Liquidating Trust, the Liquidating

28  Trustee, or their property.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

588985.1                    7                    SECOND AMENDED PLAN

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

c. Professional-Fee Claims

A Professional-Fee Claim will be paid only if: (a) on or before forty-five (45) days after the Effective Date (or such further date if extended by Court order), the Person holding the Professional-Fee Claim both Files with the Court an application requesting allowance and payment of the Professional-Fee Claim; and (b) the Professional-Fee Claim is allowed by order of the Court (as to which fourteen (14) days has passed without a stay of the enforcement or effectiveness of such order or, if a stay has been obtained, such stay has lapsed or been dissolved). The Liquidating Trustee or any other party-in-interest may File an objection to such an application within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. Persons holding Professional-Fee Claims who do not timely File and serve an application for allowance and payment will be forever barred from asserting these Claims against the Estates, the Debtors, the Trustee, the Liquidating Trust, the Liquidating Trustee or their property.

As is indicated above, the Trustee estimates that he will need to pay Administrative Expense Claims totaling approximately $2,940,000.00 on the Effective Date, unless the Claimant has agreed to be paid later or the Court has not yet ruled on the Claim. The Trustee expects that he will have sufficient Administrative Funds in excess of this amount on the Effective Date to make the necessary payments.

2. Priority Tax Claims

Priority Tax Claims include certain unsecured income, employment and other taxes described by Bankruptcy Code § 507(a)(8). The Bankruptcy Code requires that each Holder of such a § 507(a)(8) Priority Tax Claim receive the present value of such Claim in regular installment payments in Cash, over a period not exceeding five years from the Petition Date, unless the Holder agrees to a different treatment. The following chart lists all of the Debtors' known § 507(a)(8) Priority Tax Claims and their treatment under the Plan:

| Priority Tax Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Priority Tax Claims | $0.00 | The Holders of Allowed Priority Tax Claims will be paid in full the allowed amount of their Claims on the Effective Date or as soon as reasonably practicable thereafter, but, in no event, more than five (5) years from the entry of the Orders for Relief. Allowed Priority Tax Claims shall accrue interest from the Effective Date on the unpaid balance of the Allowed Priority Tax Claim at the rate required by 11 U.S.C. § 511 to provide "present value" of the Allowed Priority Tax Claim. |

## E.   Classified Claims

### 1.   Summary of Classes

| Summary of Classes | |
|---|---|
| Class[4] | Claimant(s) |
| 1(a)-(d) | Secured Claim of the 1st Lien Lenders |
| 2(a)-(d) | Secured Claim of the 2nd Lien Lenders |
| 3(a)-(d) | Secured Claim of the 3rd Lien Lenders |
| 4(a)-(d) | Secured Claim of Mechanic's Lien Claimants |
| 5(a)-(d) | Priority Unsecured Claims Pursuant to 11 U.S.C. §§ 507(a)(6)-(7) |
| 6(a)-(d) | Priority Unsecured Wage Claims Pursuant to 11 U.S.C. §§ 507(a)(4)-(5) |
| 7(a)-(d) | Unsecured Deficiency Claims of the 1st Lien Lenders |
| 8(a)-(d) | Contractually Subordinated Unsecured Deficiency Claims of the 2nd and 3rd Lien Lenders |
| 9(a)-(d) | General Unsecured Trade Claims |
| 10(a)-(d) | Interest Holders |

### 2.   Secured Claims

Secured Claims are Claims secured by liens against property of one or more of the Estates.

---

[4]   With respect to each Class, sub-Class (a) refers to the SunCal Master Estate, sub-Class (b) refers to the McAllister Ranch Estate, sub-Class (c) refers to the McSweeny Farms Estate, and sub-Class (d) refers to the Summerwind Ranch Estate.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

a. <u>Secured Claim of the 1st Lien Lenders</u>

Classes 1(a)-(d) consist of the Secured Claim of the 1st Lien Lenders.  In accordance with the terms of the Amended Term Sheet, the 1st Lien Lenders hold an Allowed Claim against each of the Estates in the aggregate amount of $230,006,233.98, plus accrued and unpaid interest calculated through September 10, 2008, and accrued and unpaid legal fees (the "<u>1st Lien Lenders Allowed Claim</u>"), secured by a senior-in-priority lien against substantially all of the Debtors' assets, including, but not limited to, the Properties and the Retained Settlement Funds, subject to any earlier recorded and perfected liens.  The value of the Properties will be determined in connection with the proposed sale of the Properties.  The treatment provided herein shall be in full settlement and satisfaction of the 1st Lien Lenders' Allowed Secured Claim against each of the Debtors.

i. <u>**Calculation of Secured Claim**</u>.  In accordance with the terms of the Amended Term Sheet, the 1st Lien Lenders hold an Allowed Secured Claim in each of the Estates in an amount equal to the aggregate amount of the "<u>Winning Bid(s)</u>" (as defined in the Overbid Procedures) for the Properties, plus the amount of the Retained Settlement Funds as of the Effective Date, less the amount of any customary costs and expenses of sale, including brokers' commissions, liabilities, liens, Claims, encumbrances or interests, including, but not limited to, any liens determined to be superior in priority to the liens held by the 1st Lien Lenders against any of the Properties (the "<u>Senior Liens</u>"), (a) assumed by the 1st Lien Lenders in connection with the transfer of title to any Properties sold to the 1st Lien Lenders by way of credit bid, or (b) assumed by the 1st Lien Lenders in connection with or paid prior to the distribution of the proceeds from the sale of the Properties sold to one or more "<u>Winning Bidders</u>" (as defined in the Overbid Procedures) other than the 1st Lien Lenders, up to the amount of the 1st Lien Lenders' Allowed Claim.

ii. <u>**1st Lien Lenders' Credit Bid Rights**</u>.  The 1st Lien Lenders acting collectively shall be the initial bidder with respect to each of the Properties.  The initial credit bid by the 1st Lien Lenders shall be the Aggregate Minimum Credit Bid Amount and,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  with respect to each Property, the Allocated Minimum Credit Bid Amount for the Property.

2  With respect to each Property, the 1st Lien Lenders, in their sole and absolute discretion,

3  shall be entitled to increase their credit bid in accordance with the Overbid Procedures to

4  an amount in excess of the highest competing bid for such Property, if any, up to the

5  Allocated Maximum Credit Bid Amount for the Property.

6       **iii.**    **Payment of Secured Claim**.  Properties for which the 1st Lien Lenders are

7  determined to be the Winning Bidder by way of credit bid shall be transferred to the 1st

8  Lien Lenders on the Effective Date or as soon as reasonably practicable thereafter subject

9  to: (1) any Senior Liens; and (2) liens, Claims, encumbrances or interests that satisfy

10  clause (b), (c), and/or (d) of the definition of "Permitted Exceptions" set forth in the First

11  Lien Credit Agreement (the items described in this clause (2) collectively, the "Permitted

12  Liens").  Properties sold to Winning Bidder(s) other than the 1st Lien Lenders shall be sold

13  free and clear of all liens, including, but not limited to, the liens of the 1st Lien Lenders,

14  except, however, the Permitted Liens, which shall not include any Senior Liens.  On the

15  later of the Effective Date or the close of escrow, the proceeds from the sale of the

16  Properties sold to a Winning Bidder other than the 1st Lien Lenders, less ordinary costs of

17  sale, shall be distributed to LCPI, in its capacity as administrative agent for the 1st Lien

18  Lenders, subject to any Senior Liens.

19       **iv.**    **The Trustee's Participation**.  The Liquidating Trustee, on behalf of the

20  Holders of Allowed Unsecured Trade Claims, shall be entitled to, and shall recover and

21  receive from the "Proceeds" (hereinafter defined) of the dispositions of the Properties, the

22  lesser of (1) the amount sufficient to pay in full the Allowed Unsecured Trade Claims to

23  the extent not previously paid, and (2) 3.5% of such Proceeds (the "Trustee's

24  Participation"); provided that, at the time of any such subsequent disposition the Holders

25  of Allowed Unsecured Trade Claims shall not have otherwise been paid the full allowed

26  amount of their Claims.  The Trustee's Participation in each portion of any Proceeds that

27  consists of Cash shall be immediately due and payable to the Liquidating Trustee from the

28  1st Lien Lenders in Cash upon the 1st Lien Lenders' receipt of such portion of the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  applicable Proceeds; provided, however, payment of the Trustee's Participation from

2  Proceeds from the sale of Properties to one or more Winning Bidders other than the 1st

3  Lien Lenders under the Plan shall only be made at such time when all Senior Liens have

4  been resolved or Fidelity has accepted responsibility for all remaining Senior Liens.[5]  The

5  Trustee's Participation shall be transferred to the Liquidating Trustee free and clear of the

6  liens of the Lien Lenders to be distributed in accordance with the terms of the Plan.

7      As used herein, "Proceeds" shall mean all cash and other property constituting

8  proceeds of the disposition of each Property, including the proceeds from the sale of any

9  of the Properties to one or more Winning Bidders other than the 1st Lien Lenders (but

10  excluding any transfer of a Property to the 1st Lien Lenders pursuant to a credit bid) and

11  including the proceeds from any disposition of the Property by the 1st Lien Lenders or any

12  of their affiliates following their acquisition thereof pursuant to a credit bit, whether such

13  Proceeds are received in a single lump sum or on a piecemeal basis over time, less (a)

14  customary and reasonable costs and expenses of  sale, and (b) Cash and other property

15  used to satisfy any Senior Liens not otherwise satisfied under the that certain Title

16  Insurance Policy number 27-44-94-120334 (the "Title Insurance Policy") or the Plan.  For

17  the avoidance of doubt, in the case of such property actually received that consists of

18  promissory notes, equity interests (direct or indirect) in any entities taking title to the

19  Properties and/or other deferred or contingent payment arrangements or mechanisms, the

20  Liquidating Trustee shall be entitled to receive, at the time such promissory notes, equity

21  interests and/or deferred or contingent payment arrangements or mechanisms are

22  received or implemented by the 1st Lien Lenders or their applicable affiliates or principals,

23  a profits participation or similar contractual right to receive the applicable amount

24  representing the Trustee's Participation from all Cash actually received by such entities

25  taking title to each Property from the disposition of such Property and by the Lien Lenders

26  _____

27  [5]    Fidelity asserts that certain issues remain between it and LCPI concerning the scope and existence
of coverage under the Title Insurance Policy, and the potential for future issuance of title insurance, which
necessitate Fidelity's full reservation of rights as to the Plan.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  and their applicable affiliates and principals in respect of such promissory notes, which

2  profits participation or similar right shall be provided for in the operating, partnership, or

3  similar governing documents of such entities and in such promissory notes or other

4  deferred or contingent payment documentation (as the case may be), in a form and

5  substance reasonably acceptable to the Liquidating Trustee with the Liquidating Trustee

6  being a direct contracted beneficiary of such provisions with the legal right to contractually

7  enforce same.  The Court shall retain jurisdiction with respect to the determination of the

8  value of any component of the Proceeds.  Without limiting the foregoing, if the 1st Lien

9  Lenders form a joint venture with, or borrow funds from, any party, including any 1st Lien

10  Lender or affiliates of a 1st Lien Lender to obtain funding necessary to develop one or

11  more of the Properties or to maintain and/or operate the Properties prior to any

12  disposition, the funds required to repay such unaffiliated equity or debt, as the case may

13  be, shall reduce dollar-for-dollar the Proceeds for the applicable Properties.  The 1st Lien

14  Lenders agree to act in good faith to carry out the terms of this paragraph (Section

15  II.E.2.a.iv. of the Plan) and to effectuate this participation interest of the Liquidating

16  Trustee.

17       The 1st Lien Lenders will, at their sole expense, provide a report and accounting to

18  the Liquidating Trustee or the Liquidating Trustee's successor-in-interest as soon as

19  possible following receipt of Proceeds and shall provide semi-annual financial reports

20  relating to the Properties.   In addition, the 1st Lien Lenders will provide such documents

21  and other information reasonably requested by the Liquidating Trustee or the Liquidating

22  Trustee's successor-in-interest to monitor the 1st Lien Lenders' compliance with this

23  paragraph  (Section II.E.2.a.iv. of the Plan).  LCPI shall provide the Liquidating Trustee

24  with information reasonably necessary to verify the amount of Proceeds.

25       **v.**     **Return of Remaining Development Funds**.  With five (5) Business Days of

26  the date that the Debtors transfer title to the last of the Properties such that the Debtors no

27  longer hold title to any of the Properties, the Trustee or the Liquidating Trustee, as the

28  case may be, shall transfer any unused portion of the Remaining Development Funds to

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 | LCPI, in its capacity as administrative agent for the 1st Lien Lenders.  The amount of the

2 | 1st Lien Lenders' Allowed Secured Claim shall be increased by an amount equal to the

3 | amount of the Remaining Development Funds transferred to LCPI.

4 | **vi.** **Treatment of Deficiency Claim**.  The amount of the 1st Lien Lenders' Claim

5 | not determined to be a Secured Claim shall be referred to as the "1st Lien Lenders'

6 | Unsecured Deficiency Claim" against each of the Debtors, and shall be treated in Classes

7 | 7(a)-(d) below.

8 | **b.** Secured Claims Other Than the Secured Claim of the

9 | 1st Lien Lenders

10 | The following chart lists all Classes of Secured Claims, other than the Secured

11 | Claim of the 1st Lien Lenders, and their treatment under the Plan:

| Secured Claims – SunCal Master Estate | | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| 2(a)-(d) | Secured Claim of the 2nd Lien Lenders<br><br>• Collateral: The Properties<br><br>• Priority of Security Interest: Second<br><br>• Total Claim Amount: $85,000,000.00, plus accrued and unpaid interest calculated through September 10, 2008<br><br>• Collateral Value: To be determined upon sale of the Properties. | N | Y | On the Effective Date, the 2nd Lien Lenders will have a Secured Claim only if and to the extent the aggregate Winning Bid(s) for the Properties exceed the amount of the 1st Lien Lenders' Allowed Claim.  If and to the extent the 2nd Lien Lenders have an Allowed Secured Claim, they will be paid the allowed amount of such Secured Claim from the sale proceeds on the later of the Effective Date or the close of escrow.<br><br>Based on the fair market value of the Properties and the amount of the 1st Lien Lenders' Allowed Claim, it is expected that the 2nd Lien Lenders are wholly unsecured, and, as such, the 2nd Lien Lenders will not have any Allowed Secured Claim.  If as expected the 2nd Lien Lenders do not have an Allowed Secured Claim, then upon the Effective Date, the 2nd Lien Lenders' liens against the Properties and other property of the Debtors and/or the Estates shall be valued at $0.<br><br>On the Effective Date, the liens of the 2nd Lien Lenders on the Properties and other property of the Debtors and/or the Estates shall be released, and title to the Properties will be transferred to the Winning Bidder(s) free and clear of the 2nd Lien Lenders' lien.<br><br>The treatment provided herein shall be in full settlement and satisfaction of the 2nd Lien Lenders' Secured Claim against each of the |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

14

| | | Secured Claims – SunCal Master Estate | | | |
|---|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment | |

<table>
<tr>
<td></td>
<td></td>
<td></td>
<td></td>
<td>Debtors.<br><br>The amount of the 2nd Lien Lenders' Claim not determined to be a Secured Claim shall be referred to as the "2nd Lien Lenders' Unsecured Deficiency Claim."<br><br>The 2nd Lien Lenders' Unsecured Deficiency Claim, if any, shall be paid in accordance with the treatment for Classes 8(a)-(d).</td>
</tr>
</table>

| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 3(a)-(d) | Secured Claim of the 3rd Lien Lenders<br><br>• Collateral: The Properties<br><br>• Priority of Security Interest: Third<br><br>• Total Claim Amount: $75,000,000.00, plus accrued and unpaid interest calculated through September 10, 2008<br><br>• Collateral Value: To be determined upon sale of the Properties. | N | Y | On the Effective Date, the 3rd Lien Lenders will have a Secured Claim only if and to the extent the aggregate Winning Bid(s) for the Properties exceed the amount of the 1st Lien Lenders' Allowed Claim and the 2nd Lien Lenders' Allowed Claim.  If and to the extent the 3rd Lien Lenders have an Allowed Secured Claim, they will be paid the allowed amount of such Secured Claim from the sale proceeds on the later of the Effective Date or the close of escrow.<br><br>Based on the fair market value of the Properties and the amount of the 1st Lien Lenders' Allowed Claim and the 2nd Lien Lenders' Allowed Claim, it is expected that the 3rd Lien Lenders are wholly unsecured, and, as such, the 3rd Lien Lenders will not have any Allowed Secured Claim.  If as expected the 3rd Lien Lenders do not have an Allowed Secured Claim, upon the Effective Date, the 3rd Lien Lenders' liens against the Properties and other property of the Debtors and/or the Estates shall be valued at $0.<br><br>On the Effective Date, the liens of the 3rd Lien Lenders on the Properties and other property of the Debtors and/or the Estates shall be released, and title to the Properties will be transferred to the Winning Bidder(s) free and clear of the 3rd Lien Lenders' liens.<br><br>The treatment provided herein shall be in full settlement and satisfaction of the 3rd Lien Lenders' Secured Claim against each of the Debtors.<br><br>The amount of the 3rd Lien Lenders' Claim not determined to be a Secured Claim shall be referred to as the "3rd Lien Lenders' Unsecured Deficiency Claim."<br><br>The 3rd Lien Lenders' Unsecured Deficiency Claim, if any, shall be paid in accordance with the treatment for Classes 8(a)-(d). |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|----------------|-----------|
| 4(a)-(d) | Mechanic's Lien Claims, which shall include the secured claim, if any, of Oak Valley.<br><br>• Collateral: One or more of the Properties, respectively<br><br>• Priority of Security Interest: Fourth<br><br>• Total Amount of Claims: $46,500,000.00 (est.)<br><br>Collateral Value: To be determined upon sale of the Properties. | N | Y | Based on the fair market value of the Properties and the amount of the Lien Lenders' Claims, the Holders of mechanic's liens (each a "Mechanic's Lien Claimant" and collectively, the "Mechanic's Lien Claimants") will have a Secured Claim only if and to the extent they establish they hold liens that are senior in priority to the lien of the 1st Lien Lenders under applicable law.  Oak Valley shall be considered a Mechanic Lien Claimant for purposes of this Section and Section VI below.<br><br>With respect to each Property, if a Mechanic's Lien Claimant establishes that its lien is senior in priority to the 1st Lien Lenders' lien, then:<br><br>(i) if the Property is sold to a Winning Bidder other than the 1st Lien Lenders, then the Mechanic's Lien Claimant's lien shall attach to the sale proceeds in the same validity, extent, and priority as of the Petition Date, and shall be paid in full, or as otherwise agreed by the Mechanic's Lien Claimant, from such sale proceeds on the on the date that is thirty (30) days following the later of the Effective Date, and the date of entry of a court order allowing the Claim of the Mechanic's Lien Claimant and/or determining that the lien of the Mechanic's Lien Claimant is senior in priority to the 1st Lien Lenders' lien; or<br><br>(ii) if the Property is sold to the 1st Lien Lenders by way of credit bid, then the Mechanic's Lien Claimant shall retain its lien on the Property, until the satisfaction the Mechanic's Lien Claimant's Allowed Claim in full, or as otherwise agreed by the Mechanic's Lien Claimant, at which time the lien shall be released and the 1st Lien Lenders shall retain title to the Property free and clear of such lien.<br><br>Mechanic's Lien Claimants who are unable to establish that they hold a lien that is senior in priority to the 1st Lien Lenders' lien will be paid in accordance with the treatment afforded to General Unsecured Trade Creditors in Classes 9(a)-(d).<br><br>LCPI believes that the 1st Lien Lenders have claims to assert their first priority liens over all other interests asserted in each of the Properties, including any mechanic's liens. LCPI believes that if the 1st Lien Lenders prevail on any such claims, it is likely that any other party asserting an interest in the |

**Secured Claims – SunCal Master Estate**

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| Secured Claims – SunCal Master Estate | | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| | | | | Properties, including the Mechanic's Lien Claimants, would not be entitled to any recovery from any proceeds from the sale of the Properties.<br><br>The treatment provided herein shall be in full settlement and satisfaction of the Secured Claims of the Mechanic's Lien Claimants. |

### 3. Classes of Priority Unsecured Claims

Certain Priority Claims that are referred to in Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) are required to be placed in Classes. The Bankruptcy Code requires that each Holder of the above Priority Claims receive Cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of unsecured Priority Claim Holders may vote to accept deferred Cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim.

The Trustee does not believe that there are any valid Priority Claims. However, out of an abundance of caution, the following chart lists all Classes containing the Debtors' Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) Priority Claims and their treatment under the Plan:

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 5(a)-(d) | Priority unsecured claims pursuant to 11 U.S.C. §§ 507(a)(6) and (7)<br><br>Estimated total amount of claims: $0.00 | Y | Allowed Priority Unsecured Claims in Classes 5(a)-(d) shall be paid in full, subject to any statutory maximum, in Cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Claim; and (iii) receipt of sufficient unencumbered funds to pay such Allowed Priority Unsecured Claim. |
| 6(a)-(d) | Priority wage claims pursuant to 11 U.S.C. §§ 507(a)(4) and (5)<br><br>Estimated total amount of claims: $0.00 | Y | Allowed Priority Unsecured Claims in Classes 6(a)-(d) shall be paid up to the $10,950 statutory maximum, in Cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim; and (iii) receipt of sufficient unencumbered funds to pay such Allowed Priority Unsecured Claim. |

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | Any Allowed Claim amounts in excess of $10,950 will be subject to the treatment afforded Claims in Classes 9(a)-(d). |

### 4. Classes of Unsecured Claims

General Unsecured Claims are unsecured Claims that are not entitled to priority under 11 U.S.C. § 507(a) and include the Unsecured Deficiency Claims of the Lien Lenders. Below is a summary of the Plan's treatment of the Classes containing the Debtors' General Unsecured Claims.

a. <u>Unsecured Deficiency Claim of the 1st Lien Lenders</u>

Classes 7(a)-(d) consists of the 1st Lien Lenders' Allowed Unsecured Deficiency Claim. The treatment proposed herein shall be in full satisfaction of the 1st Lien Lenders' Allowed Unsecured Deficiency Claim(s) against each of the Debtors.

i. <u>Calculation of Unsecured Deficiency Claim</u>. On the Effective Date, the 1st Lien Lenders shall have an Allowed Unsecured Deficiency Claim in the aggregate amount of the 1st Lien Lenders' Allowed Claim, less the amount of the 1st Lien Lenders' Allowed Secured Claim.

ii. <u>The 50/50 Distribution Scheme</u>. On each Distribution Date, until the earlier of (a) the payment of all Allowed Unsecured Trade Claims in full; (b) the payment of the Allowed Claims of the Lien Lenders (the "Lien Lender Claims") in full; and (c) the termination of the Amended Term Sheet in accordance with its terms, 50% of any Net Other Recoveries available for distribution shall be paid to LCPI, in its capacity as administrative agent for the 1st Lien Lenders. The remaining 50% of the Net Other Recoveries available for distribution shall be retained by the Liquidating Trustee free and clear of any liens, Claims, interests or encumbrances to be distributed in accordance with the terms of the Plan and shall be referred to hereinafter as the "Trade Creditor Allocation." After all Allowed Unsecured Trade Claims are paid in full, on each Distribution

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  Date, any Net Other Recoveries shall be distributed on a *pro rata* basis to the Lien

2  Lenders on account of their Allowed Unsecured Deficiency Claims, subject to the

3  Intercreditor Agreement.

4         iii.    <u>Alternative Distribution Scheme</u>.  To the extent that the Court or other court

5  of competent jurisdiction determines that the Intercreditor Agreement does not require that

6  all Net Other Recoveries must be paid to the 1st Lien Lenders, then, on each Distribution

7  Date, Net Other Recoveries shall be distributed on a *pro rata* basis to the respective

8  administrative agents for the Holders of Allowed Class 8 Unsecured Deficiency Claims

9  and to the Holders of Allowed Class 7 Unsecured Deficiency Claims.  In addition, the 1st

10  Lien Lenders' Allowed Unsecured Deficiency Claim(s) of the 1st Lien Lenders shall be

11  deemed assigned (the "<u>Assigned 1st Lien Lenders' Unsecured Deficiency Claim(s)</u>") to the

12  Liquidating Trustee to the extent necessary to provide the Liquidating Trustee with 50% of

13  the amount of the Net Other Recoveries being distributed.  As a result, on each

14  Distribution Date, the 1st Lien Lenders' Pro Rata Share of the Net Other Recoveries being

15  distributed shall be retained by the Liquidating Trustee up to 50% of the total amount of

16  Net Other Recoveries being distributed, and any excess shall be distributed to LCPI, in its

17  capacity as administrative agent for the 1st Lien Lenders.  The amount retained by the

18  Liquidating Trustee pursuant to this paragraph shall be retained free and clear of any

19  liens, Claims, interests or encumbrances, and shall be distributed in accordance with the

20  terms of the Plan.  After all Allowed Unsecured Trade Claims are paid in full, any

21  remaining Net Other Recoveries retained on account of the Assigned 1st Lien Lenders'

22  Unsecured Deficiency Claim(s) shall be distributed to LCPI, in its capacity as the

23  administrative agent for the 1st Lien Lenders.

24         iv.    <u>Determination of Distribution Scheme</u>.  Notwithstanding anything herein to

25  the contrary, the Liquidating Trustee shall not distribute any Net Other Recoveries to the

26  Lien Lenders in accordance with this Section, until the Court or other court of competent

27  jurisdiction enters a Final Order determining whether the Intercreditor Agreement requires

28  that, among the Lien Lenders, all Net Other Recoveries must be paid to the 1st Lien

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   Lenders.  Within a reasonable time following the Liquidating Trustee's receipt of any Net

2   Other Recoveries, the Liquidating Trustee will interplead fifty percent (50%) of the Net

3   Other Recoveries to be distributed (the "Interpled Funds") with the Court for a

4   determination of the Lien Lenders' rights under the Intercreditor Agreement with respect to

5   the Interplead Funds.  Nothing herein prevents the Lien Lenders from seeking an earlier

6   adjudication of their rights under the Intercreditor Agreement with respect to any Net Other

7   Recoveries from the Court or other court of competent jurisdiction.

8             b.    Unsecured Claims Other Than the Unsecured

9             Deficiency Claim of the 1st Lien Lenders

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 8(a)-(d) | Contractually Subordinated Unsecured Deficiency Claims of the 2nd Lien Lenders and the 3rd Lien Lenders<br><br>Estimated total amount of claims: $160,000,000.00, plus accrued and unpaid interest calculated through September 10, 2008 | Y | Classes 8(a)-(d) consist of the 2nd Lien Lenders' Unsecured Deficiency Claim and the 3rd Lien Lenders' Unsecured Deficiency Claim.<br><br>The Holders of Allowed Class 8 Unsecured Deficiency Claims shall not receive any Distributions on account of such Claims; provided, however, to the extent that the Court or other court of competent jurisdiction determines, as provided in Section II.E.4.a.iv. above, that the Intercreditor Agreement does not require that all Net Other Recoveries must be paid to the 1st Lien Lenders, then Net Other Recoveries shall be distributed on a pro rata basis to the Holders of Allowed Class 8 Unsecured Deficiency Claims and to the Holders of Allowed Class 7 Unsecured Deficiency Claims, as follows:<br><br>(i)    On each Distribution Date, the administrative agent for the 2nd Lien Lenders will receive for the benefit of the 2nd Lien Lenders the 2nd Lien Lenders' Pro Rata Share of the Net Other Recoveries being distributed, less the amounts discussed in paragraph (ii) immediately below, and the administrative agent for the 3rd Lien Lenders will receive for the benefit of the 3rd Lien Lenders the 3rd Lien Lenders' Pro Rata Share of the Net Other Recoveries being distributed, less the amounts discussed in paragraph (ii) immediately below; and<br><br>(ii)    The Allowed 2nd Lien Lender Unsecured Deficiency Claim of LCPI (the "Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim") and the Allowed 3rd Lien Lender Unsecured |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | Deficiency Claim of LCPI (the "Assigned LCPI 3rd Lien Lender Unsecured Deficiency Claim") shall be deemed assigned to the Liquidating Trustee to the extent that the Assigned 1st Lien Lenders' Unsecured Deficiency Claim(s) did not provide the Liquidating Trustee 50% of the amount of the Net Other Recoveries being distributed. On each Distribution Date, (1) the amount of the 2nd Lien Lenders' Pro Rata Share of the Net Other Recoveries attributable to the Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim, and (2) the amount of the 3rd Lien Lenders' Pro Rata Share of the Net Other Recoveries attributable to the Assigned 3rd Lien Lender Unsecured Deficiency Claim shall be retained by the Liquidating Trustee up to the point that 50% of the total amount of Net Other Recoveries being distributed has been retained by the Liquidating Trustee, and any excess shall be distributed to LCPI. The amount retained by the Liquidating Trustee pursuant to this paragraph shall be retained free and clear of any liens, Claims, interests or encumbrances, and shall be distributed in accordance with the terms of the Plan. Notwithstanding the foregoing, after all Allowed Unsecured Trade Claims are paid in full, any remaining Net Other Recoveries retained on account of the Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim or on account of the Assigned LCPI 3rd Lien Lender Unsecured Deficiency Claim shall be distributed to LCPI.<br><br>The treatment proposed herein shall be in full satisfaction of the 2nd Lien Lenders' Unsecured Deficiency Claim and the 3rd Lien Lenders' Unsecured Deficiency Claim against each of the Debtors. |
| 9(a)-(d) | Unsecured Trade Claims, which includes any Bond Indemnification Claims<br><br>Estimated total amount of claims: $60,000,000.00 (est.) | Y | Class 9 is four (4) separate Classes, one Class of General Unsecured Trade Claims against each Debtor. For avoidance of doubt, any Bond Indemnification Claims are treated in Classes 9(a)-(d) and are considered Unsecured Trade Claims. Any Distributions made to the Holders of Allowed Unsecured Trade Claims will be on a consolidated basis. However, for purposes of voting, each Class of General Unsecured Trade Claims will be considered separately.<br><br>On each Distribution Date, the Holders of Allowed Unsecured Trade Claims will receive their respective Pro Rata Shares from Available Cash. |

588985.1

SECOND AMENDED PLAN

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | The treatment proposed herein shall be in full satisfaction of the Allowed Unsecured Trade Claims. |

### 5.   Class of Interest Holders

Interest holders are the parties who hold membership Interests (*i.e.*, equity interests) in the Debtors.  Each Debtor is a Delaware limited liability company in which the owners hold Membership Interests.  The following chart identifies the Plan's treatment of the Class of Interest Holders.

| Interest Holders | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 10(a)-(d) | Interest Holders | Y | On the Effective Date, all existing membership Interests in each Debtor will be cancelled, annulled, and extinguished.  No distribution of any kind will be made on account of any existing membership Interests. |

## III.   **MEANS OF EFFECTUATING THE PLAN**

This Section is intended to explain how the Trustee intends to effectuate the liquidation contemplated by the Plan, and how the Trustee intends to fund the obligations to Holders of Allowed Claims as provided in the Plan.  This Section provides information regarding the funding sources for Plan obligations, the establishment of the Liquidating Trust, and other material issues bearing upon performance of the Plan, such as the sale of the Properties.  The Plan will be effectuated through the sale of the Properties, and the vesting of all other Assets, including, but not limited to, any Avoidance Actions and other Causes of Action, in the Liquidating Trust to be managed and administered by the Liquidating Trustee.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

A.   **The Sale of the Properties**

    1.     **The Auction**

Under the Plan, each Property will be sold by auction (the "Auction") to the 1st Lien Lenders and/or one or more third parties in accordance with and subject to the overbid procedures to be provided and approved by the Court and attached hereto as Exhibit "3" (the "Overbid Procedures"). The 1st Lien Lenders acting collectively shall be the initial bidder with respect to each of the Properties. As further discussed in Section II.E.2.a. above and the Overbid Procedures, the 1st Lien Lenders' initial aggregate credit bid for all the Properties taken together shall be in the amount of the Aggregate Minimum Credit Bid Amount, and, with respect to each Property, the 1st Lien Lenders shall be entitled to increase their credit bid to an amount in excess of the highest competing bid for such Property, if any, up to the Allocated Maximum Credit Bid Amount for the Property. Any party wishing to submit a competing bid and participate in the Auction must be deemed a "Qualified Bidder" (as defined in the Overbid Procedures) and must otherwise comply with the Overbid Procedures.

    2.     **The Transfer of Title**

With respect to each Property, on the later of the Effective Date or the close of escrow, or as soon as reasonably practicable thereafter, the Trustee shall sell and transfer to the Winning Bidder all right, title, and interest of the Estate in and to such Property. Properties for which the 1st Lien Lenders are determined to be the Winning Bidder by way of credit bid shall be transferred to the 1st Lien Lenders subject to: (i) the lien of the 1st Lien Lenders; (ii) Senior Liens; and (iii) Permitted Liens. Properties sold to Winning Bidder(s) other than the 1st Lien Lenders shall be sold free and clear of all liens, Claims, encumbrances, and/or other interests, except, however, the Permitted Liens, which shall not include any Senior Liens.

    3.     **The Surety Bonds**

The Bond Companies assert that surety bonds were executed on behalf of all or some of the Subsidiary Debtors as a principal for its respective Property (the "Surety

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   Bonds"). Such Surety Bonds will not be transferred by the Trustee to the Winning

2   Bidder(s), and, if a Winning Bidder(s) determines to develop the Property(ies), the Surety

3   Bonds will not apply to the Winning Bidder(s)' bonding requirements with respect to such

4   development. If a Winning Bidder(s) determines to develop all or a portion of its

5   respective Property(ies), it will be required at that time to obtain new Surety Bonds from

6   the Bond Companies, or another surety, to the extent surety bonds are required by

7   applicable state and local development requirements.

8       **B.**     **The Funding of the Plan**

9       The Plan will be funded from three potential sources of Cash: (1) the Administrative

10  Funds; (2) any Net Other Recoveries; and (3) the Trustee's Participation. The

11  Administrative Funds will be used by the Trustee to pay Allowed Administrative Expense

12  Claims on the Effective Date and to make any other Effective Date Payments under the

13  Plan, and any remaining Administrative Funds shall be transferred to the Liquidating Trust

14  to be distributed and administered in accordance with the terms of the Plan. Distributions

15  following the Effective Date will be made from any Net Other Recoveries and the Trustee's

16  Participation, which will be paid to the Liquidating Trust to be distributed and administered

17  in accordance with the terms of the Plan.

18      **C.**     **Transfer of Estate Assets**

19      Upon the Effective Date, the Assets, including, but not limited to, Avoidance

20  Actions and other Causes of Action, the Administrative Funds, and the Estates' right in

21  and to Other Recoveries and the Trustee's Participation, shall be deemed transferred to

22  and vested in the Liquidating Trust in accordance with the Plan. The Trustee is

23  authorized to execute and deliver or cause to be executed and delivered all such

24  documents as necessary or appropriate to transfer and vest title in and possession of the

25  Assets to the Liquidating Trust. However, notwithstanding anything herein to the contrary,

26  the Trustee shall have authority to pay from the Administrative Funds Administrative

27  Expense Claims Allowed as of the Effective Date and other Effective Date Payments.

28  Thereafter, such payments shall be made by the Liquidating Trustee.

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**D.    Dissolution of the Debtors**

On the Effective Date, each of the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.

**E.    Liquidating Trust**

**1.    Establishment of the Liquidating Trust**

The Liquidating Trust shall be established and shall become effective on the Effective Date.  The Liquidating Trust is created pursuant to the Plan and the Confirmation Order, and no separate trust instrument shall be required.  The primary purpose of the Liquidating Trust is the liquidation and distribution of the Assets transferred to it, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  The Liquidating Trust shall hold and administer the Assets of the Debtors, including, but not limited to, any Avoidance Actions or other Causes of Action, and the proceeds thereof for liquidation and distribution in accordance with the terms of the Plan.

**2.    Trust Distributions**

The Liquidating Trustee shall liquidate the Assets, including, but not limited to, Avoidance Actions or other Causes of Action, and shall distribute any Other Recoveries, Net Other Recoveries, and/or Available Cash in accordance with the terms of the Plan. All Distributions to the Holders of Allowed Claims shall be from the Liquidating Trust. Persons dealing with the Liquidating Trustee, or seeking to assert Claims against the Debtors, the Estates or the Liquidating Trust, shall look only to property of the Debtors, the Estates or the Liquidating Trust to satisfy any liability to such Persons, and the Liquidating Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.

**3.    Duration of the Trust**

The Liquidating Trust shall have an initial term of five (5) years; provided, however, that, the term of the Liquidating Trust may be extended for a finite term upon a finding of

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   "cause" by the Court. The Liquidating Trustee may seek an extension of the Liquidating

2   Trust's term by Motion filed by the expiration of the term to be extended. The Liquidating

3   Trust may be terminated earlier than its scheduled termination if (a) the Court has entered

4   a Final Order closing the Cases pursuant to 11 U.S.C. § 350(a) and (b) the Liquidating

5   Trustee has administered all assets of the Liquidating Trust and performed all other

6   duties required by the Plan.

       **4.**     **Liquidation of Avoidance Actions and Actions**

8        On or after the Effective Date, the Liquidating Trustee shall have sole authority and

9   responsibility for investigating, analyzing, commencing, prosecuting, litigating,

10   compromising, collecting, and otherwise administering Avoidance Actions and other

11   Causes of Action. Unless an Avoidance Action or Cause of Action is expressly waived,

12   relinquished, compromised or settled as provided or identified in the Plan, the

13   Confirmation Order, or any other order of the Court, the Liquidating Trust expressly

14   reserves any Avoidance Action or Cause of Action for later adjudication. Therefore, no

15   preclusion doctrine, including, without limitation, the doctrine of *res judicata*, collateral

16   estoppel (judicial, equitable or otherwise) or laches shall apply to such Avoidance Action

17   or Cause of Action upon or after confirmation or consummation of the Plan.

18        **5.**     **Liquidating Trustee**

19           **a.**     <u>Appointment</u>

20        The appointment of the Liquidating Trustee shall be effective as of the Effective

21   Date.

22           **b.**     <u>Term</u>

23        Unless the Liquidating Trustee resigns, dies or is removed by Court order earlier,

24   the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust

25   pursuant to the Plan. In the event the Liquidating Trustee resigns, dies or is removed by

26   Court order prior to termination of the Liquidating Trust, the OUST shall select and

27   recommend to the Court a successor trustee.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

### c. Powers and Duties

On the Effective Date, the Liquidating Trustee shall have the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§ 505, 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Plan and the Confirmation Order. The Liquidating Trustee shall administer the Liquidating Trust in accordance with the Plan. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Without further Motion, notice, or order of the Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation to:

i. employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Liquidating Trustee under the Plan;

ii. control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors pursuant to the terms of the Plan;

iii. open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan;

iv. make Distributions to the Holders of Allowed Claims in accordance with the Plan;

v. retain professionals to assist in performing his or her duties under the Plan;

vi. pay reasonable and necessary professional fees, costs, and expenses;

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vii.  investigate, analyze, commence, prosecute, litigate, compromise, settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and to take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all Causes of Action and Avoidance Actions, as the Liquidating Trustee may determine is in the best interests of the Liquidating Trust;

viii.  administer, sell, liquidate, or otherwise dispose of the Assets in accordance with the terms of the Plan;

ix.  incur and pay reasonable and necessary expenses in connection with the performance of the Liquidating Trustee's duties under the Plan;

x.  represent the Estates before the Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

xi.  seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

xii.  comply with applicable orders of the Court and any other court of competent jurisdiction over the matters set forth in the Plan;

xiii.  comply with all applicable laws and regulations concerning the matters set forth in the Plan;

xiv.  exercise such other powers as may be vested in the Liquidating Trust pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court;

xv.  execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust;

xvi.  (1) seek a determination of tax liability under § 505 of the Code, (2) pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1     tax and information returns required with the respect to the

2     Liquidating Trust, including, if appropriate, treating the Liquidating

3     Trust as a "grantor trust" pursuant to Treas. Reg. 1.671-4 or

4     otherwise, (4) make tax elections by and on behalf of the Liquidating

5     Trust, and (5) pay taxes, if any, payable by the Liquidating Trust; and

6  xvii.     stand in the shoes of the Debtors for all purposes.

7         d.     Retention of Professionals and Compensation

8         Procedure

9     On and after the Effective Date, the Liquidating Trustee may, without further

10   application or Motion, notice, hearing, or Court order, engage or employ such

11   professionals and experts as may be deemed necessary and appropriate by the

12   Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the

13   Plan, including, but not limited to, the Professionals retained prior to the Effective Date by

14   either the Trustee or the Committee.  The Liquidating Trustee may employ such

15   professionals on any reasonable terms and conditions of employment to be determined by

16   the Liquidating Trustee.  For the services performed on and after the Effective Date, the

17   professionals engaged by the Liquidating Trustee (the "Liquidating Trustee Professionals")

18   shall receive reasonable compensation and reimbursement of expenses in a manner to be

19   determined by the Liquidating Trustee.

20         e.     Fees and Expenses

21     The Liquidating Trustee and the Liquidating Trustee Professionals shall be entitled

22   to reasonable compensation for their services, and reimbursement of expenses.  The

23   Liquidating Trustee shall be paid on an hourly basis at the rate of $575.00, as may be

24   increased from time to time as is consistent with the Liquidating Trustee's ordinary

25   practices.  Compensation of the Liquidating Trustee and the costs and expenses of the

26   Liquidating Trust (including, without limitation, fees and expenses of the Liquidating

27   Trustee Professionals) shall be paid from the Liquidating Trust.  The Liquidating Trustee

28   shall pay, without further order, notice, or application to the Court, the reasonable fees

1  and expenses of the Liquidating Trustee and the Liquidating Trustee Professionals, as

2  necessary to discharge the Liquidating Trustee's duties under the Plan. The Liquidating

3  Trustee shall be authorized to reserve funds from the Liquidating Trust as is reasonable to

4  pay the expenses and fees of the Liquidating Trustee and the Liquidating Trustee

5  Professionals before making any Distributions under the Plan.

6            f.      Limitation of Liability and Indemnification

7        Neither the Liquidating Trustee nor his or her employees, Liquidating Trustee

8  Professionals or agents shall be liable (a) for any loss or damages by reason of any action

9  taken or omitted by him or her, except in the case of fraud, willful misconduct, bad faith, or

10  gross negligence, or (b) for any act or omission made in reliance upon the Debtors' books

11  and records or upon information or advice given to the Liquidating Trustee by his or her

12  professionals. Except as otherwise provided in this Plan, the Liquidating Trustee shall rely

13  and shall be protected in acting upon any resolution, certificate, statement, instrument,

14  opinion, report, notice, consent, or other document believed by him or her to be genuine

15  and to have been signed by the proper party or parties.

16        The Liquidating Trustee and his or her employees, Liquidating Trustee

17  Professionals or agents (collectively, the "Indemnified Parties" and each, an "Indemnified

18  Party") shall be indemnified and receive reimbursement from and against any and all loss,

19  liability, expense (including attorneys' fees) or damage of any kind, type or nature, which

20  the Indemnified Party may incur or sustain in the exercise and performance of any of the

21  Liquidating Trustee's powers and duties under this Plan or the Confirmation Order, or in

22  the rendering of services by the Indemnified Party to the Liquidating Trustee, to the full

23  extent permitted by applicable law, except if such loss, liability, expense or damage is

24  finally determined by a court of competent jurisdiction to result from the Liquidating

25  Trustee's or an Indemnified Person's fraud, willful misconduct, bad faith, or gross

26  negligence. The amounts necessary for such indemnification and reimbursement shall be

27  paid by the Liquidating Trustee out of the Liquidating Trust assets. The Liquidating

28  Trustee shall not be personally liable for the payment of any Liquidating Trust expense or

1  claim or other liability of the Liquidating Trust, and no Person shall look to the Indemnified

2  Parties personally for the payment of any such expense or liability.  This indemnification

3  shall survive the death, resignation or removal, as may be applicable, of the Liquidating

4  Trustee, or the termination of the Liquidating Trust, and shall inure to the benefit of the

5  Liquidating Trustee's and the Indemnified Person's heirs and assigns.

6                g.    Liquidating Trustee as Successor

7      Pursuant to Code § 1123(b), the Liquidating Trustee shall be the successor to the

8  Debtors and the Trustee for all purposes.  The Liquidating Trustee shall stand in the same

9  position as the Debtors with respect to any claim the Debtors may have to an attorney-

10  client privilege, the work product doctrine, or any other privilege against production, and

11  the Liquidating Trust shall succeed to all of the Debtors' rights to preserve, assert, or

12  waive any such privilege.

13                h.    Compromising Claims

14      As of the Effective Date, the Liquidating Trustee is authorized to compromise any

15  and all Causes of Action and Claims and to execute documents necessary to effectuate

16  such compromises without further Motion, notice, hearing or order of the Court.

17                i.    Vesting of Assets

18      On the Effective Date, all Assets including, without limitation, all right, title, and

19  interest in any personal or real property, Cash, the Administrative Funds, the Trustee's

20  Participation, Other Recoveries, the contractual interests, general intangibles, Causes of

21  Action, Avoidance Actions of the Debtors and/or the Estates shall be transferred to and

22  vest in the Liquidating Trust free and clear of all Claims, liens, encumbrances, or other

23  interests (unless otherwise stated expressly in the Plan).

24      **6.**    **Liquidating Trustee as Disbursing Agent**

25      The Liquidating Trustee shall make all Distributions required under the Plan,

26  subject to the terms and provisions of the Plan.  The Liquidating Trustee shall make

27  continuing efforts to dispose of the Liquidating Trust's assets, make Distributions, and not

28  unduly prolong the duration of the Liquidating Trust.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

**7. Bond**

The Liquidating Trustee shall be required to post a bond or surety or other security for the performance of his or her duties under the Plan.

**8. Federal Income and Taxation of the Liquidating Trust**

For federal income tax purposes, the Liquidating Trust is a "liquidating trust" within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. The transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the Persons entitled to receive Distributions under the Plan followed by a deemed transfer of assets by such Persons to the Liquidating Trust. The Persons entitled to receive Distributions under the Plan will be deemed the grantors and owners of the Liquidating Trust and its assets. The Liquidating Trust will be taxed as a "grantor trust" within the meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the Persons entitled to receive Distributions under the Plan. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions, and credits ("Tax Items"). The Persons entitled to receive Distributions under the Plan will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. The Liquidating Trust and the Persons entitled to receive Distributions under the Plan will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined by the Liquidating Trustee.

**9. Beneficiaries**

The Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Liquidating Trust which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the times, set forth in the Plan. Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1 other form or manner whatsoever, except as maintained on the books and records of the

2 Liquidating Trust by the Liquidating Trustee. The ownership of a beneficial interest in the

3 Liquidating Trust shall not entitle any Beneficiary to any title in or to the Liquidating Trust

4 assets or to any right to call for a partition or division of such assets or to require an

5 accounting. The Liquidating Trustee shall make Distributions, if any, to Beneficiaries in

6 the manner provided in the Plan.

7     The rights of the Beneficiaries arising under the Liquidating Trust may be deemed

8 "securities" under applicable law. However, such rights have not been defined as

9 "securities" under the Plan because (a) the intent of the Plan is that such rights shall not

10 be securities, and (b) if the rights arising under the Liquidating Trust are deemed to be

11 "securities," the exemption from registration under § 1145 of the Bankruptcy Code is

12 intended to be applicable to such securities.

13     **F.**    **Release of Liens**

14     Except as otherwise expressly provided in the Plan, the Confirmation Order, or in

15 any document, instrument or other agreement created in connection with the Plan, on the

16 Effective Date, all mortgages, deeds of trust, liens, or other security interests in or against

17 the Assets shall be released, and the sale of the Properties to the Winning Bidder(s) shall

18 be free and clear of any and all mortgages, deeds of trust, liens, or other security interests

19 in or against the Properties.

20     **G.**    **Changes in Rates Subject to Regulatory Commission Approval**

21     The Debtors are not subject to governmental regulatory commission approval of

22 their rates.

23     **H.**    **Exemption from Transfer Taxes**

24     Pursuant to Bankruptcy Code § 1146(a), any transfers from any of the Debtors to

25 the Liquidating Trust or to any other Person pursuant to the Plan in the United States shall

26 not be subject to any stamp, real estate transfer, personal property, recording or other

27 similar tax, and the Confirmation Order shall direct the appropriate state or local

28 governmental officials or agents to forgo the collection of any such tax or governmental

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  assessment and to accept for filing and recordation any of the foregoing instruments or

2  other documents without payment of any such tax or governmental assessment.

3  **IV.    DISTRIBUTIONS**

4      **A.    Dates of Distributions**

5      Effective Date Payments shall be deemed timely made if made as soon as

6  practicable after the Effective Date, but, in any event, within fifteen (15) days of the

7  Effective Date.  Any Distribution required to be made when a Disputed Claim becomes an

8  Allowed Claim shall be deemed timely made if made as soon as practicable thereafter,

9  but, in any event, within fifteen (15) days thereafter.

10      **B.    Manner of Distribution**

11      At the option and in the sole discretion of the Liquidating Trustee, monetary

12  Distributions may be made by (i) wire transfers from, or (ii) a check drawn on a domestic

13  bank approved by the OUST.

14      **C.    Delivery of Distributions in General**

15      Distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee

16  (a) at the addresses set forth on the Proof of Claim filed by such Holders, (b) at the

17  addresses reflected in the Schedules if no Proof of Claim has been filed and the

18  Liquidating Trustee has not received a written notice of a change of address, or (c) in the

19  case of a Holder of a Claim that is governed by an agreement and is administered by an

20  agent or servicer, at the address (i) set forth on any Proof of Claim filed by the agent or

21  servicer, (ii) in the Schedules for the agent or servicer if no Proof of Claim has been filed,

22  or (iii) contained in the official records of such agent or servicer.  Holders of Claims may

23  change the address to which Distributions will be sent by filing a written change of

24  address with the Court and serving a copy of the change of address on the Liquidating

25  Trustee.

26      If a Distribution to any Holder of an Allowed Claim is returned to the Liquidating

27  Trustee as undeliverable or otherwise unclaimed ("Undeliverable Distribution"), the

28  Liquidating Trustee shall make no further Distributions to such Holder unless and until the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 Liquidating Trustee is notified in writing of such Holder's then-current address, at which

2 time all Undeliverable Distributions shall be made to such Holder without interest. All

3 Undeliverable Distributions shall be returned to the Liquidating Trustee until such

4 Undeliverable Distributions are claimed. The Liquidating Trustee shall, in the case of

5 Cash, hold Undeliverable Distributions in a segregated interest-bearing account for

6 Undeliverable Distributions until such Undeliverable Distributions become deliverable, is

7 claimed or is forfeited. Nothing contained in the Plan shall require the Liquidating Trustee,

8 or anyone else, to attempt to locate the intended recipient of an Undeliverable Distribution.

9      Any Holder of an Allowed Claim that does not present itself within six (6) months of

10 the Distribution Date upon which the Undeliverable Distribution was made shall be

11 deemed to have forfeited its right or Claim to or interest in the Undeliverable Distribution

12 and shall be forever barred and enjoined from asserting any Claim for the Undeliverable

13 Distribution against the Debtors and their Estates, the Liquidating Trustee, the Liquidating

14 Trust, and their respective agents, attorneys, representatives, employees or independent

15 contractors, and/or any of its or their property. In such cases, the Undeliverable

16 Distribution and accrued interest thereon shall become property of the Liquidating Trust

17 free and clear of any restrictions thereon and notwithstanding any federal or state escheat

18 laws to the contrary and shall be distributed in accordance with the terms of this Plan.

19     **D.**   **Rounding of Payments**

20      The Liquidating Trustee shall not be required to make Distributions or payments of

21 fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would

22 otherwise be called for, the actual payment shall reflect a rounding of such fraction to the

23 nearest whole dollar (up or down), with half dollars being rounded down.

24     **E.**   **Interest on Claims**

25      Unless otherwise specifically provided for in the Plan, post-petition interest shall not

26 accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest

27 accruing on or after the Petition Date on any Claim.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

### F.   Compliance with Tax Requirements

In connection with this Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment and reporting requirements imposed by federal, state, or local taxing authorities.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  All amounts properly withheld from Distributions to a Holder of a Claim as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All persons holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.  If such information has not been received by the Liquidating Trustee, then the Liquidating Trustee may, at his option, withhold the amount required and distribute the balance to such Holder or decline to make the Distribution until the information is received.

Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trustee in connection with such Distribution.  Any property to be distributed pursuant to the Plan shall, pending implementation of such arrangements, be treated as an Undeliverable Distribution pursuant to Section IV.C. above.

### G.   De Minimis Distributions

The Liquidating Trustee shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1    Allowed Claim on a Distribution Date is for an amount of $5.00 or less, and may, at the

2    Liquidating Trustee's option, either add the Distribution to the next Distribution if the

3    collective amount would be greater than $5.00, or treat the Distribution as an

4    Undeliverable Distribution.

5          **H.    Setoffs**

6          Except as otherwise provided in the Plan, the Liquidating Trustee may, pursuant to

7    11 U.S.C. § 553 or applicable non-bankruptcy law, but shall not be required to, set off

8    against any Allowed Claim and the Distribution to be made pursuant to the Plan on

9    account of such Allowed Claim any account stated, Claim, right, or Cause of Action which

10   the Debtors or the Estates possess against the Holder of such Allowed Claim; provided,

11   however, that neither the failure to effect such a setoff nor the allowance of any Claim

12   shall constitute a waiver or release by the Liquidating Trustee of any such account, Claim,

13   right, and Cause of Action that the Debtors of the Estates may possess against the Holder

14   of such Allowed Claim.

15         **I.    Limitation on Liability**

16         The Trustee, the Committee, the Liquidating Trustee, and any of their respective

17   employees, members, officers, directors, shareholders, agents, or professionals shall not

18   be liable for (i) any acts or omissions, except for willful misconduct, in connection with

19   implementing the Distribution provisions of the Plan and the making or withholding of

20   Distributions under the Plan, or (ii) any change in the value of Distributions made under

21   the Plan resulting from any delays in making such Distributions in accordance with the

22   terms of the Plan (including, but not limited to, any delays caused by the resolution of

23   Disputed Claims).

24   **V.    CLAIM OBJECTIONS AND DISPUTED CLAIMS**

25         THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY

26   CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR WERE SCHEDULED

27   AS DISPUTED, CONTINGENT OR UNLIQUIDATED WAS  MARCH 20, 2009.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

### A. Standing

As of the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to file objections to Claims. The Liquidating Trustee may settle or compromise any Disputed Claim without approval or order of the Court, notice, or hearing. The Liquidating Trustee shall replace the Trustee or the Debtors as the real party in interest in any objections to Claims commenced prior to the Effective Date.

### B. Claims Objection Deadline

Unless extended by the Court, any objection to a Claim must be filed with the Court and served on the Holder of the Claim within one hundred eighty (180) days of the Effective Date (the "Claims Objection Deadline"). The Liquidating Trustee may seek an extension of the Claims Extension Deadline upon a showing of "cause." Any Motion for an extension of the Claims Objection Deadline must be Filed with the Court prior to the Claims Objection Deadline, as the same may be extended, and served on the OUST. There is no limit to the number of extensions that may be sought.

### C. No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Liquidating Trustee does not dispute at the time and in the manner that the Liquidating Trustee makes Distributions to the Holders of Allowed Claims pursuant to the provisions of the Plan.

### D. Reserves for Disputed Claims

In the event that Disputed Claims are pending at the time of a Distribution under the Plan, the Liquidating Trustee shall establish and maintain a reserve for such Disputed Claims. For purposes of establishing a reserve, Cash will be set aside equal to the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   amount that would have been distributed to the Holders of the Disputed Claims had the

2   Disputed Claims been Allowed on the date a Distribution is made to the Holders of

3   Allowed Claims in the same Class or of the same priority as the Disputed Claims. If a

4   Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for

5   that Disputed Claim shall be distributed on the earlier of (a) the Distributed Date following

6   the date when the Disputed Claim becomes an Allowed Claim, or (b) ninety (90) days

7   after such Disputed Claim becomes an Allowed Claim. Any reserved Cash not ultimately

8   distributed to the Holder of a Disputed Claim because the Disputed Claim does not

9   become an Allowed Claim shall become property of the Liquidating Trust shall be

10  distributed in accordance with the terms of the Plan.

11  **VI.    MECHANIC'S LIENS**

12          Notwithstanding any contrary provision in the Plan, any disputes concerning the

13  validity, priority, or extent of a mechanic's lien asserted against one or more of the

14  Properties shall be resolved by the commencement of an adversary proceeding pursuant

15  to Bankruptcy Rule 7001 in the Court, or by the commencement of an action in a

16  California state court of competent jurisdiction (in either forum, a "Mechanic's Lien

17  Action"). Only the Liquidating Trustee, LCPI, and Fidelity shall have standing to

18  commence and prosecute a Mechanic's Lien Action. All parties with standing under

19  applicable bankruptcy or state law to defend or otherwise appear in a Mechanic's Lien

20  Action shall be entitled to do so, except as specified below. In addition to any Person

21  entitled to notice under applicable law, the commencement of a Mechanic's Lien Action

22  shall be noticed on the respective counsel for the Liquidating Trustee, LCPI, and Fidelity,

23  to the extent such party has not commenced the Mechanic's Lien Action.

24          To the extent it has not been previously terminated and to the extent necessary,

25  the automatic stay of 11 U.S.C. § 362 shall terminate on the Effective Date to allow LCPI

26  and/or Fidelity to commence a Mechanic's Lien Action and to prosecute such Mechanic

27  Lien Action through a final judgment, and to allow any party with standing under

28  applicable bankruptcy or state law to defend or otherwise appear in a Mechanic's Lien

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

1  Action to do so.  However, the automatic stay shall remain in effect with respect to the

2  enforcement of any final judgment obtained in a Mechanic's Lien Action against the

3  Estates, the Trustee, the Liquidating Trust, the Liquidating Trustee and/or their property,

4  except as may otherwise be provided by the Plan.   Until the validity, priority or extent of a

5  mechanic's lien has been determined by Final Order, the Claim(s) asserted by the

6  Mechanic's Lien Claimant shall be treated as Disputed Claims for purposes of this Plan.

7        Notwithstanding anything to the contrary in this Section IV or the Plan, nothing in

8  this Plan is intended to affect the rights of Superior Pipelines to prosecute the Superior

9  Pipelines Action to the extent consistent with and to the extent authorized by the New

10  York Bankruptcy Court in its Order granting Superior Pipelines relief from the automatic

11  stay (the "NY Stay Relief Order"), or any further Order that may be entered by the New

12  York Bankruptcy Court.  Further, in the event that the McAllister Ranch Property is sold to

13  the 1st Lien Lenders, the Plan does not affect the rights of Superior Pipelines to enforce

14  any judgment or settlement obtained in the Superior Pipelines Action to the extent

15  consistent with and to the extent authorized by the NY Stay Relief Order, or any further

16  Order that may be entered by the New York Bankruptcy Court.  In the event that the

17  McAllister Ranch Property is sold to a Winning Bidder other than the  1st Lien Lenders,

18  then the enforcement and satisfaction of any such judgment or settlement obtained by

19  Superior Pipelines shall be  governed  by the treatment provided for  Mechanic's Lien

20  Claimants in Section II.E.2.b. of this Plan.

21        In the event that the McAllister Ranch Property is sold to the 1st Lien Lenders,

22  Superior Pipelines is entitled to effectuate any settlement or compromise with the 1st Lien

23  Lenders arising out of the Superior Pipelines Action without further approval of the Trustee

24  or the Central District Bankruptcy Court, however, the Liquidating Trustee must be given

25  notice of and reserves the right to object to any such settlement.

26        Nothing herein shall affect, impair, or restrict the rights of the Trustee or the

27  Liquidating Trustee to otherwise object to any Proofs of Claim filed by Mechanic's Lien

28  Claimants.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

588985.1                                40                     SECOND AMENDED PLAN

# VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A. Assumption and Assignment

Under the Plan, the Properties will be sold. As a result, the Trustee will assume only those executory contracts and unexpired leases to be assigned to the Winning Bidder with respect to each Property.

On the Effective Date, the executory contracts and unexpired leases identified on the Schedule of Assumed and Assigned Agreements attached or to be attached hereto as Exhibit "4," or filed or to be filed as Exhibit "4" to this document shall be deemed assumed and assigned to the applicable Winning Bidder, as specified in the Confirmation Order. The Trustee intends to file the Schedule of Assumed and Assigned Agreements with the Court no later than twenty-eight (28) days prior to the Confirmation Hearing. The Schedule of Assumed and Assigned Agreements also identifies or will identify any amounts that must be paid to cure defaults under the executory contracts and unexpired leases to be assumed and assigned under the Plan (the "Cure Amount"). If filed earlier, the Trustee reserves the right to amend the Schedule of Assumed Agreements up to twenty-eight (28) days prior to the Confirmation Hearing (March 4, 2011) to: (a) add any executory contract or unexpired lease and provide for its assumption and assignment; or (b) modify the Cure Amount for any particular executory contract or unexpired lease. The Trustee further reserves the right to amend the Schedule of Assumed Agreements to delete any executory contract or unexpired lease and provide for its rejection at any time prior to the Confirmation Hearing. The Trustee will provide notice of any amendment to the Schedule of Assumed and Assigned Agreements to any party or parties to the executory contracts or unexpired leases affected by the amendment. Absent a timely objection as provided below, the Confirmation Order will constitute a Court order approving the assumption and assignment, on the Effective Date, of the executory contracts and unexpired leases then identified on the Schedule of Assumed and Assigned Agreements, and shall constitute a final determination of the Cure Amount and that the Trustee has shown adequate assurance of future performance. Furthermore, any Cure

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

41  SECOND AMENDED PLAN

1   Amount ordered by the Court, through entry of the Confirmation Order, and paid shall be

2   deemed to satisfy any and all defaults arising from, out of or related to the executory

3   contract or unexpired lease, including any tort claims that were or could be asserted by

4   the non-debtor party to the contract or lease on or prior to the entry of the Confirmation

5   Order, and all actual or pecuniary losses that have resulted from such defaults.

6        If you are a party to an executory contract or unexpired lease to be assumed and

7   assigned and you object to the assumption and assignment of your lease or contract

8   and/or you dispute the Cure Amount related to your lease or contract, then you must File

9   and serve upon counsel for the Trustee (Weiland, Golden, Smiley, Wang Ekvall & Strok,

10  LLP, attn: Robert S. Marticello, Esq., 650 Town Center Drive, Suite 950, Costa Mesa,

11  California 92626) a written objection by March 14, 2011, as provided in Section I.B.3. of

12  the Disclosure Statement.  An objection to the Cure Amount must also set forth the

13  amount you contend to be the correct Cure Amount and contain evidence to support such

14  amount.  Failure to timely File an objection as provided herein shall be deemed consent to

15  the proposed assumption and assignment and to the Cure Amount and a waiver of any

16  and all rights to challenge such assumption and assignment and the Cure Amount.

17       With respect to each executory contract and unexpired lease identified on the

18  Schedule of Assumed and Assigned Agreements, if no dispute arises regarding the Cure

19  Amount, adequate assurances, or some other matter related to the assumption of the

20  executory contract or unexpired lease, then the Cure Amount set forth in the Schedule of

21  Assumed and Assigned Agreements shall be paid to the applicable non-debtor party in

22  Cash on the Effective Date or as soon as reasonably practicable thereafter.  If a dispute

23  arises regarding (a) whether the Trustee has provided adequate assurance of future

24  performance of an executory contract or unexpired lease to be assumed, or (b) any other

25  matter pertaining to a proposed assumption and assignment, the Cure Amount will be

26  paid on the later of (1) the Effective Date or as soon as practicable thereafter, or (2) within

27  thirty (30) days after entry of a Final Order resolving the dispute and approving the

28  assumption and assignment; provided, however, if a dispute arises regarding any of the

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 foregoing, the Trustee reserves for himself and the Liquidating Trustee the right to

2 completely forego assumption and assignment of and, instead, reject the subject

3 executory contract or unexpired lease.

4       If a party to an executory contract or unexpired lease identified on the Schedule of

5 Assumed and Assigned Agreements Files an objection disputing the Cure Amount, then

6 the Trustee may amend the Schedule of Assumed and Assigned Agreements at any time

7 prior to the Confirmation Hearing to delete the subject executory contract or unexpired

8 lease and provide for its rejection. Executory contracts or unexpired leases not so deleted

9 shall be conditionally assumed, subject to the Liquidating Trustee's right to file a Motion to

10 determine the appropriate Cure Amount up to the first (1st) Business Day that is at least

11 sixty (60) days following the Effective Date. The Liquidating Trustee will serve any such

12 Motion on the party to the executory contract or unexpired lease affected by the Motion (or

13 its attorney, if any). If the Liquidating Trustee does not file a Motion to determine the

14 appropriate Cure Amount, then the executory contract or unexpired lease shall be

15 assumed and assigned, as of the Effective Date, and the Cure Amount shall be the

16 alternative Cure Amount asserted by the non-debtor party to the subject executory

17 contract or unexpired lease in its objection to the Plan. The Cure Amount shall be paid as

18 soon as reasonably practicable following the expiration of the 60-day deadline.

19       If the Liquidating Trustee files a Motion to determine the appropriate Cure Amount,

20 then the Liquidating Trust shall have the right to amend the Schedule of Assumed and

21 Assigned Agreements to completely forego assumption and assignment of and, instead,

22 reject the subject executory contract or unexpired lease up to the first (1st) Business Day

23 that is at least fifteen (15) days after the entry of an order fixing the Cure Amount. The

24 Liquidating Trustee will provide notice of any amendment to the Schedule of Assumed

25 and Assigned Agreements to the party to the executory contract or unexpired lease

26 affected by the amendment. If the Liquidating Trustee has filed such a Motion and does

27 not timely amend the Schedule of Assumed and Assigned Agreements within fifteen (15)

28 days after entry of an order fixing the Cure Amount, then the executory contract or

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  unexpired lease shall be assumed and assigned, as of the Effective Date, and the Cure

2  Amount shall be fixed as the Cure Amount ordered by the Court.  The Cure Amount as

3  soon as reasonably practicable following the expiration of the 15-day deadline.

4      **B.**   <u>**Rejections**</u>

5      On the Effective Date, the Trustee will be deemed to have rejected any and all

6  executory contracts and unexpired leases <u>not</u> identified on the Schedule of Assumed and

7  Assigned Agreements attached  or to be attached hereto as Exhibit "4," or filed or to be

8  filed as Exhibit "4" to this document.  The Confirmation Order will constitute a Court order

9  approving the rejection, as of the Effective Date, of such executory contracts and

10  unexpired leases.  Any Claim for damages arising from the rejection under the Plan of any

11  executory contract or unexpired lease must be Filed with the Court and served upon the

12  Liquidating Trustee and his counsel within thirty (30) days of the later of (a) the

13  Confirmation Date, and (b) the Liquidating Trustee's amendment of the Schedule of

14  Assumed and Assigned Agreements to eliminate the executory contract or unexpired

15  lease.  Any such damage Claims that are not timely Filed and served will be forever

16  barred and unenforceable against the Debtors, the Estates, the Trustee, the Liquidating

17  Trust, the Liquidating Trustee and their respective property.  Persons holding these

18  Claims who fail to timely File Claims will be barred from receiving any Distributions under

19  the Plan on account of their requested damage Claims.

20      If you are a party to a lease or contract to be rejected and you object to the

21  rejection of your lease or contract, then you must File and serve your objection by March

22  14, 2011, as provided in Section I.B.3. of the Disclosure Statement.

23  **VIII.**   <u>**PRESERVATION OF CAUSES OF ACTION AND AVOIDANCE ACTIONS**</u>

24      The Trustee reserves for the Estates and the Liquidating Trust all rights to

25  commence and pursue, as appropriate, any and all Causes of Action and Avoidance

26  Actions, whether arising prior to or after the Petition Date, in any court or other tribunal,

27  including without limitation, in an adversary proceeding Filed in the Court, except those

28  Causes of Action and Avoidance Actions released under the Amended Term Sheet.  On

Smiley, Wang Ekvall & Strok, LLP
Welland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  the Effective Date, the Liquidating Trustee will be vested with authority to enforce, file,

2  litigate, prosecute, settle and collect with respect to Causes of Action and Avoidance

3  Actions, although he will not be required to do so and the determination of whether to do

4  so will be made solely by the Liquidating Trustee in his absolute discretion.  With respect

5  to any Causes of Action and/or Avoidance Actions commenced prior to the Effective Date

6  to which any or all of the Debtors and/or the Trustee is a party, the Liquidating Trustee

7  shall replace and stand in the shoes of such Debtors and/or the Trustee as the real party

8  in interest.

9     While the Trustee has attempted to identify Causes of Action and Avoidance

10  Actions in the Disclosure Statement which may be pursued, and hereby incorporates by

11  reference those disclosures and provisions, the failure to list any potential Cause of Action

12  or Avoidance Action, generally or specifically, is not intended to limit the rights of the

13  Liquidating Trustee to pursue such Cause of Action or Avoidance Action.  Unless a Cause

14  of Action or Avoidance Action against any Person is expressly waived, relinquished,

15  released, compromised or settled as provided or identified in the Plan, any Confirmation

16  Order or prior order of the Court, the Trustee expressly reserves any Causes of Action

17  and Avoidance Actions for later adjudication.  Therefore, no preclusion doctrine, including,

18  without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim

19  preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes

20  of Action or Avoidance Actions upon or after Confirmation or consummation of the Plan.

21  All Avoidance Actions and other Causes of Action are preserved under the Plan for the

22  benefit of the Estates.  Any recoveries from Avoidance Actions and/or other Causes of

23  Action will be paid to the Liquidating Trust.

24     ANY CREDITORS THAT BELIEVE THEY RECEIVED A TRANSFER OR SETOFF

25  THAT IS AVOIDABLE UNDER THE CODE OR THAT HOLDS A CLAIM AGAINST THE

26  ESTATES THAT COULD BE SUBJECT TO AN OBJECTION BASED UPON FAILURE

27  TO RETURN AN AVOIDABLE TRANSFER OR SETOFF, ARE DIRECTED TO REVIEW

28  THEIR RECORDS AND/OR THE DEBTORS' SCHEDULES FOR FURTHER

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 INFORMATION. HOWEVER, ALL RIGHTS OF THE DEBTORS AND THE ESTATES

2 ARE RESERVED WITH RESPECT TO ANY AND ALL TRANSFERS OR SETOFFS

3 WHICH MAY BE AVOIDABLE UNDER THE BANKRUPTCY CODE.

4 **IX.    RETENTION OF JURISDICTION**

5       The Court will retain exclusive jurisdiction during the Plan payout period to resolve

6 disputes and conflicts arising from the administration of the Plan, upon request of a party-

7 in-interest and after notice and a hearing, including, without limitation:

8       a.    The adjudication of the validity, scope, classification, allowance, and

9              disallowance of any Claim;

10       b.    The estimation of any Claim;

11       c.    The allowance or disallowance of Professional-Fee Claims,

12              compensation, or other Administrative Expense Claims;

13       d.    To hear and determine Claims concerning taxes pursuant to

14              Bankruptcy Code §§ 346, 505, 525, and 1146;

15       e.    To hear and determine any action or proceeding brought under

16              Bankruptcy Code §§ 108, 510, 543, 544, 545, 547, 548, 549, 550,

17              551, and 553;

18       f.    To hear and determine all actions and proceedings which relate to

19              pre-confirmation matters;

20       g.    To hear and determine any issue relating to the assumption or

21              rejection of executory contracts and unexpired leases;

22       h.    To hear and determine any modification to the Plan in accordance

23              with the Bankruptcy Rules and the Bankruptcy Code;

24       i.    To enforce and interpret the terms of the Plan;

25       j.    To correct any defects, cure any omissions, or reconcile any

26              inconsistency in the Plan or the Confirmation Order as may be

27              necessary to carry out the purpose and intent of the Plan;

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

k. The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Liquidating Trust, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary including, without limitation, any right of the Liquidating Trust to recover and liquidate assets;

l. To determine the validity, extent and priority of all liens and security interests against property of the Estates or the Liquidating Trust;

m. To hear and resolve any disputes regarding employment applications and professional fees;

n. To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in these Cases;

o. The entry of an order concluding and terminating these Cases; and

p. To resolve any disputes as to whether there has been a default under the Plan.

## X. EFFECT OF CONFIRMATION

### A. Discharge

Confirmation of the Plan does not discharge the Debtors as set forth in Bankruptcy Code § 1141.

### B. Revesting of the Assets

The Assets shall not be vested in the Debtors on or following the Effective Date, but shall be vested in the Liquidating Trust and continue to be subject to the jurisdiction of the Court following confirmation of the Plan until such Assets are distributed to the Holders of Allowed Claims in accordance with the provisions of the Plan.

### C.  Dissolution of the Committee

On the Effective Date and except as set forth below, the Committee shall terminate and disband and the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Committee members.  The Professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except for (1) services provided and expenses incurred in connection with any applications by such Professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date in accordance with the Plan, and (2) services provided and expenses incurred as requested by the Committee in connection with such Professional-Fee Claims, as approved by the Court.

### D.  Exculpation and Releases

Effective upon the entry of the Confirmation Order, neither the Trustee, the Committee, LCPI, the 1st Lien Lenders, the Professionals, nor any of their respective members, officers, directors, shareholders, employees, or agents, shall have or incur any liability to any Person, including any creditor or Interest Holder of the Debtors, for any act taken or omission made in connection with or related to the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, the approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the fullest extent permitted by applicable statutes and case law, except that the Liquidating Trust will be liable for the performance of obligations assumed by it or imposed upon it under or by the Plan.  Nothing in this Section is intended to contradict or supersede Paragraph 5 of the Order granting the Second Compromise Motion.

### E.  Modification of the Plan

The Trustee may modify the Plan at any time before confirmation.  If the Plan is modified, however, the Court may require a new Disclosure Statement or re-voting on the

1  Plan depending on the nature of the modifications and their effect on parties in interest.

2  The Liquidating Trustee may seek to modify the Plan at any time after confirmation if (a)

3  the Plan has not been substantially consummated, and (b) the Court, after notice and a

4  hearing, authorizes the proposed modification.

5      **F.      Post-Confirmation Status Report**

6      Within 120 days of the entry of the Confirmation Order, the Liquidating Trustee

7  shall file a status report with the Court explaining what progress has been made towards

8  consummation of the confirmed Plan.  The status report shall be served on the OUST, the

9  twenty (20) largest creditors for each Estate, counsel for the Committee, counsel for LCPI,

10 and the parties who have requested special notice.  Further status reports shall be filed

11 every 120 days and served on the same entities.

12     **G.      Quarterly Fees**

13     Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to confirmation shall be

14 paid to the OUST on or before the Effective Date.  Quarterly fees accruing under 28

15 U.S.C. § 1930(a)(6) after confirmation shall be paid to the OUST by the Liquidating

16 Trustee from the assets of the Liquidating Trust until a final decree, or the entry of an

17 order dismissing the Cases or converting the Cases to chapter 7, at the rate in effect at

18 the time such fees are due.

19     **H.      Post-Confirmation Conversion/Dismissal**

20     After the Plan is confirmed, a creditor or party in interest may bring a Motion, only

21 after notice and a hearing, to convert or dismiss the Cases under Bankruptcy Code

22 § 1112(b) if there is a material default in performing the Plan.  If the Court orders the

23 Cases converted to chapter 7 after the Plan is confirmed, then all property that had been

24 property of the Estates and transferred to the Liquidating Trust, and that has not been

25 distributed under the Plan will revest in the chapter 7 estates.  The automatic stay will be

26 reimposed upon the revested property only to the extent that relief from stay was not

27 previously authorized by the Court during the Cases.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

588985.1                                    49                        SECOND AMENDED PLAN

1       The Confirmation Order may also be revoked under very limited circumstances.

2 The Court may revoke the Confirmation Order if it was procured by fraud and if a party in

3 interest brings an adversary proceeding to revoke the confirmation within 180 days after

4 the entry of the Confirmation Order.

5     **I.**    **Final Decree**

6       Once the Estates have been fully administered as referred to in Bankruptcy Rule

7 3022, the Liquidating Trustee will File a Motion with the Court to obtain a final decree

8 closing the Cases.

9

10 Dated: April 21, 2011               WEILAND, GOLDEN,
                                   SMILEY, WANG EKVALL & STROK, LLP

11

12                                By: _____

13                                ROBERT S. MARTICELLO
                               Attorneys for Alfred H. Siegel,

14                                Chapter 11 Trustee

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**TABLE OF DEFINITIONS**

**"50/50 Distribution Scheme"** means the 50/50 split of Net Other Recoveries by the 1st Lien Lenders and the Estates.

**"1st Lien Lenders"** means the first-position secured lenders pursuant the First Lien Credit Agreement for which LCPI is the administrative agent.

**"1st Lien Lenders Allowed Claim"** means the Allowed Claim of the 1st Lien Lenders in the aggregate amount of $230,006,233.98, plus accrued and unpaid interest calculated through September 10, 2008, and accrued and unpaid legal fees.

**"1st Lien Lenders' Deficiency Claim"** means the amount of the 1st Lien Lenders' Claim not determined to be a Secured Claim pursuant to the Plan.

**"2nd Lien Lenders"** means the second-position secured lenders pursuant to the Second Lien Credit Agreement for which Gramercy is the administrative agent.

**"2nd Lien Lenders' Deficiency Claim"** means the amount of the 2nd Lien Lenders' Claim not determined to be a Secured Claim pursuant to the Plan.

**"3rd Lien Lenders"** means the third-position secured lenders pursuant to the Third Lien Credit Agreement for which Square Mile is the administrative agent.

**"3rd Lien Lenders' Unsecured Deficiency Claim"** means the amount of the 3rd Lien Lenders' Claim not determined to be a Secured Claim pursuant to the Plan.

**"Abandonment Motion"** means the Trustee's motion to abandon the Parent Debtor's membership interests in Patterson Ranch.

**"Administrative Claim"** means a Claim against the Debtors for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b).

**"Administrative Funds"** means the $3.5 million of the Development Account Funds and the Trustee's 50% share of the Yucaipa Funds retained by the Trustee free and clear of any liens, Claims, interests, and encumbrances pursuant to the Amended Term Sheet.

**"Administrative Tax Claim"** means an Administrative Claim or other Claim that is not an Allowed Secured Claim and that a government unit asserts against Debtors for

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  taxes (or for related interest or penalties) for any tax period that, either in whole or in part,

2  falls within the period beginning on the Petition Dates and ending on the Effective Date.

3      **"Aggregate Maximum Credit Bid Amount"** means the maximum amount of the

4  1st Lien Lenders' aggregate credit bid for the Properties established by the Trustee, the

5  Committee, and LCPI prior to the Settlement Effective Date.

6      **"Aggregate Minimum Credit Bid Amount"** means $45,000,000.00.

7      **"Allocated Maximum Credit Bid Amount"** means the maximum amount of the 1st

8  Lien Lenders' credit bid for each Property established by the Trustee, the Committee, and

9  LCPI prior to the Settlement Effective Date.

10      **"Allocated Minimum Credit Bid Amount"** means the minimum amount of the 1st

11  Lien Lenders' credit bid for each Property established by the Trustee, the Committee, and

12  LCPI prior to the Settlement Effective Date.

13      **"Allowed Claim"** means a Claim against the Debtors, other than an Administrative

14  Claim, to the extent that:

15      a.    Either: (i) a Proof of Claim was Filed by the Bar Date; or (ii) a Proof of Claim

16          is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final

17          Order; and

18      b.    Either: (i) the Claim is not a Disputed Claim; (ii) the Claim is allowed by a

19          Final Order; or (iii) the Claim is allowed under the Plan.

20      **"Allowed [Class Designation and/or Secured, Priority, or General Unsecured**

21  **or Trade] Claim"** means an Allowed Claim in the specified Class and/or of the specified

22  type.

23      **"Amended Term Sheet"** means the Binding Amended and Restated Term Sheet

24  Among LCPI as Administrative Agent for the 1st Lien Lenders, LCPI as the 2nd Lien

25  Lender, LCPI as the 3rd Lien Lender, the Official Committee of Unsecured Creditors, and

26  the Chapter 11 Trustee dated as of August 18, 2010, and attached to the Plan as Exhibit

27  "1."

28

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

"**Amendment**" means that certain Fourth Amendment and Waiver to the First Lien Credit Agreement dated January 31, 2008.

"**Appeal**" means the LCPI's appeal of the Cash Collateral Order.

"**Approved Broker**" means broker or brokers selected by the Trustee, the Committee, and LCPI to market and sell the Properties.

"**Assets**" means all tangible and intangible assets and property of every kind and nature of the Debtors and/or their Estates, and all proceeds thereof, existing as of the Effective Date.

"**Assigned 1st Lien Lenders' Unsecured Deficiency Claim(s)**" means the 1st Lien Lenders' Allowed Unsecured Deficiency Claim(s) deemed assigned pursuant to Section II.E.4.a.iii. of the Plan.

"**Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim(s)**" means the 2nd Lien Lender Unsecured Deficiency Claim of LCPI deemed assigned pursuant to Section II.E.4.b. of the Plan.

"**Assigned LCPI 3rd Lien Lender Unsecured Deficiency Claim(s)**" means the 3rd Lien Lender Unsecured Deficiency Claim of LCPI deemed assigned pursuant to Section II.E.4.b. of the Plan.

"**Auction**" means the auction sale of the Properties.

"**Available Cash**" means all Cash resulting from or constituting (a) the Trade Creditor Allocation, (b) the Trustee's Participation, and (c) the Administrative Funds, less (d) the amount necessary or estimated and reserved to pay in full (i) any Allowed Administrative Expense Claims and Allowed Unsecured Priority Claims, (ii) the reasonable fees and costs of the Liquidating Trustee and the Liquidating Trustee Professionals; (iii) the Holders of all Disputed Claims against the Debtors the amount such Holders would be entitled to receive under the Plan if all such Disputed Claims against the Debtors were to become Allowed Claims, (iv) all fees payable under section 1930 of chapter 123 of title 28 of the United States code, (v) all other amounts required to be paid to manage and/or liquidate the Debtors' assets on or after the Effective Date.

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

"**Avoidance Action**" means Causes of Action arising under 11 U.S.C. §§ 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

"**Bankruptcy Code**" or "**Code**" means Title 11 of the United States Code, as amended.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Bar Date**" means the last date for filing Proofs of Claim in the Debtors' Cases. The Bar Date was March 20, 2009.

"**Bar Date Motion**" means the Trustee's motion to establish the last date for filing proofs of claim in the Debtors' Cases.

"**Bar Date Notice**" means form of notice of the Bar Date attached as Exhibit "1" to the Bar Date Order.

"**Bar Date Order**" means the order of the Court granting the Bar Date Motion.

"**Bond Companies**" collectively refers to Bond Safeguard Insurance Co., Lexon Insurance Co., and Arch Insurance Company.

"**Bond Indemnification Claims**" means all Claims asserted by one or more of the Bond Companies for indemnification.

"**Business Day**" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Rule 9006(a) of the Bankruptcy Rules.

"**Cases**" means the Debtors' involuntary cases under chapter 11 of the Bankruptcy Code that are pending before the United States Bankruptcy Court for the Central District of California, Santa Ana Division, as Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES.

"**Cash**" means legal tender of the United States of America.

"**Cash Collateral Order**" means the Order Granting Motion for Order Authorizing Use of Cash Collateral Through September 30, 2010, entered on June 25, 2010.

Smiley, Welland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1     **"Cause of Action"** mean, without limitation, any and all actions, causes of action,

2  controversies, liabilities, obligations, rights, suits, damages, judgments, Claims (as defined

3  in Code § 101(5)) and demands whatsoever, whether known or unknown, reduced to

4  judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed

5  or undisputed, secured or unsecured, assertable directly or derivatively, existing or

6  hereafter arising, in law, equity, or otherwise that any Debtor and/or Estate may hold

7  against any Person as of the Effective Date.

8     **"Claim"** means a claim, as the term "claim" is defined in Bankruptcy Code

9  § 101(5), against one or more of the Debtors.

10    **"Claims Objection Deadline"** means the date that is one hundred eighty (180)

11  days after the Effective Date.

12    **"Class"** or **"Class of Claims or Interests"** means a group of Claims or Interests

13  as classified under the Plan.

14    **"Committee"** means the Official Committee of Creditors Holding Unsecured

15  Claims.

16    **"Confirmation Date"** means the date on which the Court enters the Confirmation

17  Order on its docket.

18    **"Confirmation Hearing"** means the hearing held by the Court on the confirmation

19  of the Plan.

20    **"Confirmation Order"** means the Court order confirming the Plan under

21  Bankruptcy Code § 1129.

22    **"Court"** means the United States Bankruptcy Court for the Central District of

23  California, Santa Ana Division.

24    **"Crowe Horwath"** means Crowe Horwath LP.

25    **"Cure Amount"** means any amounts that must be paid to cure defaults under the

26  executory contracts and unexpired leases to be assumed under the Plan.

27

28

588985.1            55           TABLE OF DEFINITIONS

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1     **"Debtors"** collectively refers to LBREP/L-SunCal Master I LLC, LBREP/L-SunCal

2 McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and LBREP/L-SunCal

3 Summerwind Ranch LLC.

4     **"Development Account"** means the Development Account established under the

5 Lien Credit Agreements.

6     **"Development Account Funds"** means the Cash originally held in the

7 Development Account.

8     **"Disclosure Statement"** means the *First Amended Disclosure Statement*

9 *Describing First Amended Chapter 11 Plan (Dated January 7, 2011)* [Docket No. 604], as

10 the same may be amended or modified from time to time.

11     **"Disputed Claim"** means all or any part of a Claim as to which any one of the

12 following applies: (i) no Proof of Claim has been filed with respect to such Claim, and the

13 Claim is listed in the Schedules as unliquidated, disputed, contingent or unknown, or; (ii)

14 the Claim is the subject of a timely objection or request for estimation which is filed on or

15 before the Claims Objection Deadline, which objection or request for estimation has not

16 been withdrawn or determined by a Final Order.  In addition, prior to the earlier of: (a) the

17 Claims Objection Deadline, and (b) such date as the Bankruptcy Court allows the Claim

18 pursuant to a Final Order, any Claim that is evidenced by a Proof of Claim shall be

19 deemed a Disputed Claim for purposes of calculating and making any Distributions under

20 this Plan if: (1) no Claim corresponding to the Proof of Claim is listed in the Schedules, (2)

21 the Claim corresponding to the Proof of Claim is listed in the Schedules as disputed,

22 contingent, unliquidated or unknown, (3) the amount of the Claim as specified in the Proof

23 of Claim exceeds the amount of any corresponding Claim listed in the Schedules as not

24 disputed, not contingent, and liquidated, but only to such extent, or (4) the priority or

25 classification of the Claim as specified in the Proof of Claim differs from the priority of any

26 corresponding Claim listed in the Schedules.

27     **"Distribution"** means any distribution pursuant to the Plan to the Holders of an

28 Allowed Claim.

                       56                                 TABLE OF DEFINITIONS

1     **"Distribution Date"** means the Business Day selected by the Liquidating Trustee,

2 in its sole and absolute discretion; provided, however, that Distributions shall not take

3 place more frequently than quarterly.

4     **"Dividend"** means the approximately $144 million that was distributed directly to

5 the Parent Debtors' equity owners in connection with the January 2006 Loans.

6     **"Dividend Action"** means the action commenced by the Trustee on October 29,

7 2010, by the filing of a complaint in the United States District Court for the Central District

8 of California, Southern Division, against Lehman Lakeside, SunCal, and certain principals

9 and other third parties, captioned *Alfred H. Siegel, Chapter 11 Trustee v. LBREP Lakeside*

10 *SC Master I, LLC et al.*, Case No. CV10-8191 GHK (VBKx).

11     **"Effective Date"** means the first Business Day that is fourteen (14) days after the

12 entry of the Confirmation Order, provided there has been no order staying the

13 effectiveness of the Confirmation Order.

14     **"Effective Date Payments"** means Distributions or payments required by the Plan

15 to be made by the Trustee on the Effective Date.

16     **"Emergency Cash Collateral Motion"** means the Emergency Motion for Order

17 Authorizing Use of Cash of Cash Collateral Pursuant to 11 U.S.C. § 363(c) filed by the

18 Trustee on November 4, 2008.

19     **"Estate"** means the bankruptcy estate created in each of the Debtors' Cases under

20 Bankruptcy Code § 541.

21     **"Evidentiary Hearing"** means the evidentiary hearing on the LCPI Stay Relief

22 Motions.

23     **"February 2007 Loan"** means the loan to the Parent Debtor in the principal

24 amount of $75 million pursuant to the Third Lien Credit Agreement.

25     **"Fidelity"** means Fidelity National Title Insurance Company.

26     **"File," "Filed,"** or **"Filing"** means duly and properly filed with the Court and

27 reflected on the Court's official docket.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  **"Final Order"** means an order or judgment of the Court entered on the Court's

2  docket.

     a.     That has not been reversed, rescinded, stayed, modified, or amended;

     b.     That is in full force and effect; and

     c.     With respect to which (i) the time to appeal or to seek review, remand,
rehearing, or a writ of certiorari has expired and as to which no timely Filed
appeal or petition for review, rehearing, remand, or writ of certiorari is
pending, or (ii) any such an appeal or petition has been dismissed or
resolved by the highest court to which the order or judgment was appealed
or from which review, rehearing, remand, or a writ of certiorari was sought.

11  **"First Compromise Motion"** means the motion filed by the Trustee to approve the

12  Original Term Sheet.

13  **"First Lien Credit Agreement"** means that certain First Lien Credit Agreement

14  dated January 19, 2006.

15  **"General Unsecured Claim"** means an unsecured Claim against one or more of

16  the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy

17  Code.

18  **"General Unsecured Trade Creditors," "Unsecured Trade Creditors,"** or

19  **"Trade Creditors"** collectively refers to the Holders of Claims other than the Lien

20  Lenders.

21  **"General Unsecured Trade Claims," "Unsecured Trade Claims,"** or **"Trade**

22  **Claims"** means the unsecured Claims asserted by the Trade Creditors, however arising,

23  not entitled to priority under Section 507(a) of the Bankruptcy Code.

24  **"Gramercy"** means Gramercy Warehouse Funding I, LLC.

25  **"Gramercy Action"** means the lawsuit commenced by Gramercy and currently

26  pending before the Court, Case No. 8:08-ap-01492-ES.

27  **"Gramercy Action Status Conference"** means the status conference in the

28  Gramercy Action.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1     **"Gramercy Stipulation"** means that Stipulation Regarding Creditor's Funding of

2 Fees and Expenses of the Chapter 11 Trustee and the Trustee's Professionals and Field

3 Agents filed on November 5, 2008.

4     **"Hemet"** means Hemet Manufacturing, Inc., dba Genesis Construction.

5     **"Holder"** means an entity holding a Claim or Interest.

6     **"Intercreditor Agreement"** means that certain Amended and Restated

7 Intercreditor Agreement dated as of February 6, 2007, a copy of which is attached hereto

8 as Exhibit "2."

9     **"Interests"** means an equity interest in any of the Debtors.

10     **"Interim Trustee Motion"** means the motion filed by the petitioning creditors,

11 excluding Gramercy, for the appointment of an interim trustee in the Cases.

12     **"Involuntary Petitions"** collectively refers to the involuntary petitions filed against

13 the Debtors.

14     **"January 2006 Loans"** collectively refers to the loans made to the Parent Debtor

15 in the principal amount of $320 million pursuant to the First Lien Credit Agreement and the

16 Second Lien Credit Agreement.

17     **"Lakeside Motion to Dismiss"** means Lehman Lakeside's motion to dismiss the

18 complaint filed by Gramercy in the Gramercy Action.

19     **"LBHI"** means Lehman Brothers Holding Inc.

20     **"LBREP"** means Lehman Bros. Real Estate Partners, LP.

21     **"LCPI"** means Lehman Commercial Paper Inc.

22     **"LCPI Compromise Motion"** means the motion to approve the Amended Term

23 Sheet filed by LCPI in the Lehman Bankruptcy Cases.

24     **"LCPI Stay Relief Motions"** means the motions for relief from the automatic stay

25 filed by LCPI.

26     **"Lehman Ali"** means Lehman Ali, Inc.

27     **"Lehman Ali Loans"** means the loans made by Lehman Ali to the Subsidiary

28 Debtors.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1      **"Lehman Bankruptcy Cases"** collectively refers to the bankruptcy cases

2  commenced by LBHI and 22 affiliates of LBHI and being jointly administered under the

3  lead case of LBHI, Case No. 08-13555 (JMP).

4      **"Lehman Brothers"** means Lehman Brothers, Inc.

5      **"Lehman Lakeside"** means LBREP Lakeside SC Master I, LLC.

6      **"Levene Neale"** means Levene, Neale, Bender, Yoo & Brill L.L.P.

7      **"Lien Credit Agreements"** collectively refers to the First Lien Credit Agreement,

8  the Second Lien Credit Agreement, and the Third Lien Credit Agreement.

9      **"Lien Lenders"** collectively refers to the 1st Lien Lenders, the 2nd Lien Lenders,

10  and the 3rd Lien Lenders.

11      **"Lien Lender Claims"** collectively refers to the Allowed Claims of the Lien

12  Lenders.

13      **"Lien Lenders' Unsecured Deficiency Claims"** collectively refers to the

14  Unsecured Deficiency Claims of the Lien Lenders.

15      **"Liquidating Trust"** means the trust established on the Effective Date pursuant to

16  Section III.E.1. of the Plan.

17      **"Liquidating Trustee"** means the Person appointed pursuant to Section III.E.5.a.

18  of the Plan to act as trustee of and to administer the Liquidating Trust, which Person shall

19  be Alfred H. Siegel.

20      **"Liquidating Trustee Professionals"** means the agents, financial advisors,

21  attorneys, consultants, independent contractors, representatives, and other professionals

22  engaged or retained by the Liquidating Trustee (in their capacities as such).

23      **"Madison Employment Application"** means the Trustee's application to employ

24  Madison Partners.

25      **"McAllister Ranch"** means LBREP/L-SunCal McAllister Ranch LLC.

26      **"McAllister Ranch Deposits"** means the cash of McAllister Ranch totaling

27  approximately $2,035,000.00 deposited or otherwise in the hands of third parties, which is

28  the subject of the Superior Pipelines Action.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    **"McAllister Ranch Property"** means the real estate project owned by McAllister
2    Ranch.

3    **"McSweeny Farms"** means LBREP/L-SunCal McSweeny Farms LLC.

4    **"McSweeny Farms Property"** means the real estate project owned by McSweeny
5    Farms.

6    **"McSweeny Farms Lease"** means that certain Lease for Real Property for
7    Agricultural Purposes by and between the Trustee and Triple B.

8    **"Mechanic's Lien Action"** means an adversary proceeding pursuant to
9    Bankruptcy Rule 7001 commenced in the Court or action commenced in a California state
10   court of competent jurisdiction to resolve any disputes concerning the validity, priority, or
11   extent of a mechanic's lien asserted against one or more of the Properties.

12   **"Mechanic's Lien Claimant"** refers to a Person that asserts a mechanic's lien
13   against one or more of the Properties.

14   **"MOR"** means monthly operating reports.

15   **"Motion"** means a request asking a judge to issue a ruling or order on a legal
16   matter.

17   **"Motions to Convert"** means the Debtors' motions to convert the Cases from
18   chapter 7 to chapter 11.

19   **"Net Other Recoveries"** means Other Recoveries less the amount necessary or
20   estimated and reserved to pay (a) any Allowed Administrative Expense Claims and
21   Allowed Unsecured Priority Claims, (b) the reasonable fees and costs of the Liquidating
22   Trustee and the Liquidating Trustee Professionals, (c) all fees payable under section 1930
23   of chapter 123 of title 28 of the United States code, (d) all other amounts required to be
24   paid to manage and/or liquidate the Debtors' assets on or after the Effective Date.

25   **"New York Bankruptcy Court"** means the Southern District of New York.

26   **"Non-Ordinary-Course Administrative Claims"** means Administrative Claims
27   that are not Ordinary Course Administrative Claims, Administrative Tax Claims, or

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Professional-Fee Claims, including Claims that may arise from agreements entered into

2  with the Estate after the Petition Date other than trade agreements.

3      **"Non-Professional Administrative Claims"** means Administrative Claims that are

4  not Professional-Fee Claims.

5      **"Oak Valley"** means Oak Valley Partners, L.P.

6      **"Orders for Relief"** collectively refers to the orders for relief entered in the Cases.

7      **"Ordinary-Course Administrative Claims"** means Administrative Claims other

8  than Administrative Tax Claims, Professional-Fee Claims, and Non-Ordinary-Course

9  Administrative Claims, based upon liabilities that Debtors incur in the ordinary course of

10  their business.

11      **"Original Term Sheet"** means the original term sheet negotiated by the Trustee,

12  the Committee, and LCPI, and attached to the First Compromise Motion.

13      **"Other Recoveries"** means any recovery of proceeds from any Cause of Action or

14  Avoidance Action (including without limitation, litigation in respect of any claims of

15  fraudulent conveyance) asset disposition, or other recovery by the Trustee or the

16  Liquidating Trustee prior to or after the Effective Date, excluding any proceeds recovered

17  from the sale of the Properties.

18      **"OUST"** means the Office of the United States Trustee, Santa Ana Division.

19      **"Overbid Procedures"** means the overbid procedures approved by the Court and

20  attached to the Plan as Exhibit "3."

21      **"Pacific States Engineering"** means Pacific States Engineering, Inc.

22      **"Pacific Time"** means the time in Los Angeles, California.

23      **"Parent Debtor"** means LBREP/L-SunCal Master I LLC.

24      **"Patterson Parcel"** means the 3-acre parcel of undeveloped real property owned

25  by Patterson Ranch.

26      **"Patterson Ranch"** means LBREP/L-SunCal Patterson Ranch LLC.

27      **"Person"** means any individual, corporation, general partnership, limited

28  partnership, limited liability company, association, joint-stock company, joint venture,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

estate, trust, government, political subdivision, governmental unit (as defined in the Bankruptcy Code), official committee appointed by the United States Trustee, unofficial committee of creditors or equity holders, or entity.

**"Petition Dates"** collectively refers to the petition dates for the Debtors.

**"Permitted Liens"** collectively refers to any encumbrances or interests that satisfy clause (b), (c), and/or (d) of the definition of "Permitted Exceptions" set forth in the First Lien Credit Agreement, excluding any Senior Liens.

**"Phase 3"** means the approximately 268 acres of the McSweeny Farms Property commonly known as Phase 3 and subject to the McSweeny Farms Lease.

**"Plan"** means this Second Amended Chapter 11 Plan (Dated April 21, 2011), including any modifications or amendments to the Plan.

**"Priority Claim"** means an Allowed Claim entitled to priority against an Estate under Bankruptcy Code §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7).

**"Priority Tax Claim"** means an Allowed Claim entitled to priority against an Estate under Bankruptcy Code § 507(a)(8).

**"Proceeds"** shall have the meaning provided in Section II.E.2.a.iv. of the Plan.

**"Professionals"** collectively means the persons and entities employed by the Debtors, the Trustee, and by the Committee pursuant to order of the Court in accordance with Bankruptcy Code §§ 327 or 1103.

**"Professional-Fee Claim"** means:

a. A Claim under Bankruptcy Code §§ 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on an Estate's behalf, or

b. A Claim either under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code § 503(b)(3)(D) for expenses incurred in making a substantial contribution to an Estate.

**"Properties"** collectively refers to the McAllister Ranch Property, the McSweeny Farms Property, and the Summerwind Ranch Property.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    **"Property"** refers to each of the real estate development projects owned by the

2    Subsidiary Debtors.

3    **"Proof of Claim"** means a written statement filed in a Case by a creditor in which

4    the creditor sets forth the amount of its Claim, in accordance with Rule 3001 of the

5    Bankruptcy Rules.

6    **"Pro Rata Share"** means:

7    a.    In the case of Distributions to the Holders of Allowed Unsecured Trade

8          Claims, the ratio (expressed as a percentage) of (i) the amount of an

9          Allowed Unsecured Trade Claim to (ii) the sum of the aggregate amounts of

10         Allowed Unsecured Trade Claims, or

11   b.    In the case of Distributions to the Holders of Allowed Lien Lender Unsecured

12         Deficiency Claims, the ratio (expressed as a percentage) of (i) the amount of

13         the Allowed 1st Lien Lender Unsecured Deficiency Claim, the Allowed 2nd

14         Lien Lender Unsecured Deficiency Claim, or the 3rd Lien Lender Unsecured

15         Deficiency Claim to (ii) the sum of the aggregate amounts of the Allowed

16         Lien Lender Unsecured Deficiency Claims.

17   **"Qualified Bidder"** means a Qualified Bidder as defined in the Overbid

18   Procedures.

19   **"Remaining Development Funds"** means the $2.0 million of the Development

20   Account Funds retained by the Trustee under the Amended Term Sheet to pay the

21   operating expenses of the Properties pursuant to an approved budget.

22   **"Retained Settlement Funds"** means the balance of the Development Account

23   Funds, less the $5.5 million retained by the Trustee pursuant to the Amended Term

24   Sheet, transferred to the 1st Lien Lenders on the Settlement Effective Date.

25   **"Request for Payment"** means a request for the payment of a Non-Ordinary

26   Course Administrative Claim as described in Section II.D.1.b. of the Plan.

27   **"SCC Entities"** collectively refers to SunCal, SCC Acquisitions, Inc., SCC

28   Acquisitions, LLC, and Bruce Elieff.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1     **"Schedule of Assumed and Assigned Agreements"** means a list of executory

2 contracts and unexpired leases to be assumed and assigned under the Plan.

3     **"Schedules"** means the Schedules of Assets and Liabilities filed by the Debtors in

4 the Cases, as required by § 521(1) of the Code, Bankruptcy Rules 1007(a)(3) and (b)(l),

5 and Official Bankruptcy Form No. 6, as the Schedules may be amended from time to time.

6     **"Second Compromise Motion"** means the Trustee's motion to approve the

7 Amended Term Sheet.

8     **"Second Lien Credit Agreement"** means that certain Second Lien Credit

9 Agreement dated January 16, 2006.

10     **"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien

11 against property in which an Estate has an interest or that is subject to setoff under

12 Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the

13 Claim Holder's interest in that property or to the extent of the amount subject to setoff, as

14 applicable, as determined under Bankruptcy Code § 506(a).

15     **"Senior Liens"** means liens determined to be superior in priority to the lien held by

16 the 1st Lien Lenders against any of the Properties.

17     **"Settlement Effective Date"** means Settlement Effective Date under the Amended

18 Term Sheet.

19     **"Sills Cummis"** means Sills Cummis & Gross, P.C.

20     **"SOFA"** means the Debtors' respective statements of financial affairs.

21     **"Square Mile"** collectively refers to Square Mile Structured Debt (One), LLC, and

22 Square Mile Structured Debt (Two), LLC.

23     **"Subsidiary Debtors"** collectively refers to LBREP/L-SunCal McAllister Ranch,

24 LLC, LBREP/L-SunCal McSweeny Farms, LLC, and LBREP/L-SunCal Summerwind

25 Ranch, LLC.

26     **"SunCal"** means SCC Ranch Ventures, LLC.

27     **"SunCal Management"** means SunCal Management, LLC.

28     **"Summerwind Ranch"** means LBREP/L-SunCal Summerwind Ranch LLC.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1   **"Summerwind Ranch Property"** means the real estate development project

2   owned by Summerwind Ranch.

3   **"Superior Pipelines"** means Superior Pipelines, Inc.

4   **"Superior Pipelines Action"** means the lawsuit commenced by Superior Pipelines

5   and currently pending before the Court, Case No. 8:09-ap-01318-ES.

6   **"Tax Code"** means the Internal Revenue Code.

7   **"Tax Items"** means the Liquidating Trust's tax items of income, gain, loss

8   deductions, and credits.

9   **"Third Lien Credit Agreement"** means that certain Third Lien Credit Agreement

10  dated February 6, 2007.

11  **"Title Insurance Policy"** means that certain Title Insurance Policy number 27-44-

12  94-120334.

13  **"Trade Creditor Allocation"** means the Estate's 50% share of Net Other

14  Recoveries described in Section II.E.4.a.ii. of the Plan.

15  **"Triple B"** means Triple B Farms, Inc.

16  **"Trustee"** means Alfred H. Siegel solely in his capacity as the duly appointed

17  chapter 11 trustee for the jointly administered estates of the Debtors.

18  **"Trustee's Participation"** means the Estates' right and entitlement to receive from

19  the Proceeds of the dispositions of the Properties the lesser of (1) the amount sufficient to

20  pay in full the Allowed Unsecured Trade Claims to the extent not previously paid, and (2)

21  3.5% of such Proceeds.

22  **"Trustee's Stay Relief Motion"** means the Trustee's motion for relief from the

23  automatic stay filed in the Lehman Bankruptcy Cases on June 17, 2010.

24  **"Trustee's YFP"** means the Trustee's 50% share of the Yucaipa Funds retained by

25  the Trustee under the Amended Term Sheet free and clear of liens, Claims, interests, and

26  encumbrances.

27  **"Undeliverable Distribution"** means a Distribution to any Holder of an Allowed

28  Claim that is returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

08-13555-mg Doc 36870-22 Filed 04/25/13 Entered 04/25/13 18:33:45 Exhibit L
Pg 74 of 250 Page 73 of 125

1 **"Weiland Golden"** means Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP.

2 **"Winning Bid(s)"** means the Winning Bid for one or more of the Properties as

3 defined in the Overbid Procedures.

4 **"Winning Bidder(s)"** means the Winning Bidder for one or more of the Properties

5 as defined in the Overbid Procedures.

6 **"Yucaipa Deposit"** means the approximately $1,008,000.00 on deposit with the

7 YVWD.

8 **"Yucaipa Funds"** means the portion of the Yucaipa Deposit paid to the Trustee

9 pursuant to the Yucaipa Settlement Agreement.

10 **"Yucaipa Settlement Agreement"** means that certain Settlement and Release

11 Agreement between Trustee, on behalf of the Summerwind Ranch Estate, and Oak Valley

12 Partners, L.P.

13 **"Yucaipa Settlement Motion"** means the Trustee's motion to approve the Yucaipa

14 Settlement Agreement.

15 **"YVWD"** means the Yucaipa Valley Water District.

16

17

18

19

20

21

22

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

588985.1    67    TABLE OF DEFINITIONS

# EXHIBIT 1

<u>BINDING AMENDED AND RESTATED TERM SHEET AMONG
LCPI AS ADMINISTRATIVE AGENT FOR THE 1ST LIEN LENDERS, LCPI AS THE 2ND
LIEN LENDER, LCPI AS THE 3RD LIEN LENDER, THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, AND THE CHAPTER 11 TRUSTEE</u>

   This Binding Amended And Restated Term Sheet dated as of August 18, 2010 (this "<u>Term Sheet</u>") is by and among ALFRED H. SIEGEL, solely in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") of the administratively-consolidated estates of LBREP/L-SunCal Master I LLC ("<u>Parent Debtor</u>"), LBREP/L-SunCal McAllister Ranch LLC ("<u>McAllister Ranch</u>"), LBREP/L-SunCal McSweeny Farms LLC ("<u>McSweeny Farms</u>"), and LBREP/L-SunCal Summerwind Ranch LLC ("<u>Summerwind Ranch</u>"; with McAllister Ranch, McSweeny Farms and Summerwind Ranch being referred to collectively as the "<u>Subsidiary Debtors</u>," and together with the Parent Debtor, as the "<u>Debtors</u>") in their respective bankruptcy cases (the "<u>SunCal Bankruptcy Cases</u>") now pending in the United States Bankruptcy Court for the Central District of California (the "<u>California Bankruptcy Court</u>"); THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS of the Debtors (the "<u>Creditors' Committee</u>"); LEHMAN COMMERCIAL PAPER INC. ("<u>LCPI</u>"), in its capacity as administrative agent for the first-position secured lenders of the Debtors (the "<u>1st Lien Lenders</u>"); and is acknowledged and agreed as to certain provisions by one or more 1st Lien Lenders; by LCPI in its capacity as a second-position secured lender of the Debtors ("<u>LCPI 2nd Lien Lender</u>"); and by LCPI in its capacity as a third-position secured lender of the Debtors ("<u>LCPI 3rd Lien Lender</u>"), in order to reach interim agreement with respect to the distribution of certain funds, to establish certain parameters for a chapter 11 plan of reorganization for the Debtors and otherwise to establish the terms for globally resolving all disputes between the parties to this Term Sheet. Notwithstanding any references to the contrary contained herein, each and every reference in this Term Sheet to "Trustee" shall mean and refer to ALFRED H. SIEGEL solely and exclusively in his capacity as the chapter 11 trustee of the administratively-consolidated estates of the Debtors, and in no other capacity, and in no event whatsoever shall ALFRED H. SIEGEL have any personal liability of any kind, nature or amount as a result of this Term Sheet, including, without limitation, any performance, failure of performance, breach, default or other circumstance arising from or related to this Term Sheet, the implementation thereof, or the transactions contemplated herein.

   That certain Binding Term Sheet Among LCPI As Administrative Agent For The 1st Lien Lenders, The Official Committee Of Unsecured Creditors, And The Chapter 11 Trustee, dated September 23, 2009 (the "<u>Original Term Sheet</u>"), is hereby superseded, amended, restated and replaced in its entirety by the terms hereof, and the Original Term Sheet is and shall be null and void and of no further binding force or effect.

<u>DEAL TERMS</u>

<u>The Amended Compromise Motion</u>

A. 1. The Trustee will seek approval of this compromise by filing an amended motion (the "<u>Amended Compromise Motion</u>") under Federal Bankruptcy Rule 9019 within ten (10) calendar days of the Trustee's actual receipt of a copy of this Term Sheet fully executed by all non-Trustee parties hereto. The Trustee shall file the Amended Compromise Motion in all of the SunCal Bankruptcy Cases and LCPI shall

1

EXHIBIT 1 PAGE 68

concurrently file the Amended Compromise Motion in the LCPI bankruptcy case (the "LCPI Bankruptcy Case", and together with the SunCal Bankruptcy Cases, the "Bankruptcy Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court", and together with the California Bankruptcy Court, the "Bankruptcy Courts") to obtain approval of this Term Sheet. The orders approving the Amended Compromise Motions (the "Compromise Orders") must be obtained, entered in the respective Bankruptcy Courts and become "Final Orders" (as defined in paragraph A(2) below), by no later than November 1, 2010, unless this date is extended by mutual agreement of the Trustee, LCPI and the Creditors' Committee. If the Compromise Orders have not become Final Orders on or before November 30, 2010, this Term Sheet, and the terms and provisions hereof and thereof shall become null and void and of no further force and effect, in which case the parties hereto shall have no further obligations hereunder or to each other with respect to the subject matter hereof. Immediately upon the last of the Compromise Orders becoming a Final Order, this Term Sheet shall be binding on LCPI, the Trustee, the Creditors' Committee and each other party hereto (such date being referred to herein as the "Settlement Effective Date"). All parties hereto acknowledge that all other parties hereto intend to and will rely on the binding nature of this Term Sheet as of the Settlement Effective Date in moving forward with the Bankruptcy Cases. The terms of this Term Sheet will be incorporated into one or more plans of reorganization to be filed by the Trustee (the "Plan") in consultation with, or jointly with, the Creditors' Committee in the California Bankruptcy Court with respect to the SunCal Bankruptcy Cases. The Trustee and the Creditors' Committee shall work together in good faith with LCPI to ensure that the Plan is consistent with this Term Sheet. If LCPI believes that the Plan filed does not materially conform to this Term Sheet, then LCPI shall have the right to object to the Plan solely with respect to the alleged material nonconformity with the Term Sheet, and the Trustee and the Committee agree that the Plan shall be modified, consistent with any ruling of the Bankruptcy Courts to make it conform materially with the Term Sheet. The Plan shall be subject to LCPI's reasonable consent prior to filing, provided such consent shall not be withheld if the Plan is in a form and substance materially consistent with the Term Sheet.

2. "Final Order" means an order or judgment of either of the Bankruptcy Courts entered on the Bankruptcy Court's docket where either: (a) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (b) if such an appeal or petition has been timely filed, there is no stay pending appeal or other injunction or court order in place which prohibits the enforcement of the Term Sheet.

3. Subject to the Settlement Effective Date, the Trustee and the Creditors' Committee shall stipulate to LCPI being granted immediate relief from the automatic stay for the sole and only purpose of allowing LCPI in its capacity as administrative agent for the 1st Lien Lenders to record a new notice of default on behalf of the 1st Lien Lenders with respect to the Parent Debtor and Subsidiary Debtors so as to allow LCPI to re-commence the period within which a foreclosure sale may be conducted

2

EXHIBIT 1 PAGE 69

with respect to such first position lien. This stipulation shall not include relief from stay for any other or further foreclosure or enforcement actions such as, but not limited to, recording of a notice of sale or the holding of a trustee's sale.

**Allowance of Claim of LCPI; Claims Filed by 2nd and 3rd Lien Lenders**

B.  Upon the Settlement Effective Date, the claim of the 1st Lien Lenders in the aggregate amount of $230,006,233.98 plus accrued and unpaid interest calculated through September 10, 2008 (the "Petition Date"), and accrued and unpaid legal fees shall be allowed in each of the SunCal Bankruptcy Cases; provided, however, the 1st Lien Lenders' allowed secured claims against the Subsidiary Debtors shall be in the amount of the 1st Lien Lenders' final credit bid under 11 U.S.C. Section 1123(a)(5)(d) pursuant to the Plan, as set forth in and adjusted in accordance with paragraphs E and F below (or, in the case of one or more successful bids by any third-party purchasers at the related sales pursuant to the Plan, the aggregate amount of such successful third-party bids), plus any amounts received by the 1st Lien Lenders as described in paragraph D below, and minus any amounts paid by the 1st Lien Lenders as described in paragraph H below. Any amount not deemed a portion of the 1st Lien Lenders' allowed secured claim shall be deemed an allowed unsecured claim against all of the Debtors as further described in paragraph F below. Proofs of claim have been filed in the Bankruptcy Cases by second position lenders (the "2nd Lien Lenders") and third position lenders (the "3rd Lien Lenders", with the 1st Lien Lenders, the 2nd Lien Lenders and the 3rd Lien Lenders being referred to collectively as the "Lenders"). The Lenders have alleged that their loans to the Parent Debtor are guaranteed by each of the Subsidiary Debtors. This Term Sheet is not intended to affect the rights, if any, of (a) the 2nd Lien Lenders other than LCPI 2nd Lien Lender, (b) the 3rd Lien Lenders other than LCPI 3rd Lien Lender, or (c) any other Person (as defined in the First Lien Credit Agreement dated January 19, 2006 (as amended) among LCPI, Parent Debtor, the 1st Lien Lenders, and certain other parties (the "First Lien Credit Agreement"), except to the extent that a Person is a party hereto, with such Person's rights being affected to the extent expressly provided herein).

**Distributions Upon Settlement Effective Date**

C.  1.  On the Settlement Effective Date, the Trustee will retain $3.5 million from those certain Parent Debtor funds previously held by First Bank & Trust and subsequently transferred to the Trustee for the benefit of the Debtors' estates, which funds are currently subject to the liens and rights of the 1st Lien Lenders (the "Development Account Funds"), for use by the Trustee in administration of the SunCal Bankruptcy Cases. The $3.5 million of the Development Account Funds retained by the Trustee pursuant to this Term Sheet for use by the Trustee in administration of the SunCal Bankruptcy Cases shall hereinafter be referred to as the "Administrative Funds". The Administrative Funds shall be immediately available to the Trustee to pay administrative claims owing in the SunCal Bankruptcy Cases. In addition, upon the effective date of the Plan, any portion of the Administrative Funds not used to pay administrative claims as provided in the previous sentence or used or reserved to pay post-confirmation fees and costs of professionals of the Debtors' estates and/or

3

EXHIBIT 1 PAGE 70

quarterly fees payable to the Office of the United States Trustee and court costs shall be available to make distributions to non-Lender creditors in respect of unsecured claims. In addition to the $3.5 million in Administrative Funds, the Trustee shall also retain $2.0 million of the Development Account Funds (the "Remaining Development Funds"), which Remaining Development Funds may be used by the Trustee solely to fund the ongoing current expenses of maintaining the real property owned by McAllister Ranch, McSweeny Farms, and Summerwind Ranch (together, the "Properties") pursuant to cash collateral orders of the California Bankruptcy Court in a manner consistent with the budget attached as Exhibit "A" hereto (the "Approved Budget"), subject to the budget variances allowed pursuant to Paragraph G below, or otherwise for uses for which the Trustee obtains the 1st Lien Lenders' consent (not to be unreasonably withheld) or which are approved by the California Bankruptcy Court after notice to the 1st Lien Lenders. The Approved Budget shall include quarterly fees payable to the Office of the United States Trustee and court costs. Any unused Remaining Development Funds will be transferred to the 1st Lien Lenders within five business days of the date that the Debtors no longer hold title to the Properties.

2. The funds currently on deposit with the Yucaipa Valley Water District and to be paid to the Trustee pursuant to that certain Settlement and Release Agreement (the "Yucaipa Settlement") between the Trustee and Oak Valley Partners, L.P. (the "Yucaipa Funds"), shall be split 50/50 between the 1st Lien Lenders and the Trustee. The Trustee's 50% portion of the Yucaipa Funds shall be referred to herein as the "Trustee's YFP"; and the 1st Lien Lenders' 50% portion of the Yucaipa funds shall be referred to herein as the "1st Lien Lenders' YFP." Following the entry of an order approving the Yucaipa Settlement by the California Bankruptcy Court (the "Yucaipa Settlement Order") and the Trustee's receipt of the Yucaipa Funds, the Yucaipa Funds shall be segregated by the Trustee from other funds in his possession relating to the Debtors and held by the Trustee, subject to the asserted liens, claims, interests and encumbrances of the 1st Lien Lenders. On the Settlement Effective Date, (a) the 1st Lien Lenders' YFP shall be paid to the 1st Lien Lenders free and clear of any claims or interests of the Trustee, the Debtors, the Debtors' estates and any party claiming by or through the Debtors, and (b) the asserted liens, claims, interests and encumbrances of the 1st Lien Lenders in the Trustee's YFP shall be avoided and preserved for the benefit of the Debtors' bankruptcy estates pursuant to 11 U.S.C. §§ 544 and 551, and the the Trustee's YFP shall immediately be available for use by the Trustee in the administration of the SunCal Bankruptcy Cases. The Trustee's YFP shall constitute additional funds of the Trustee and shall be treated as additional Administrative Funds (as Administrative Funds is defined in paragraph C).

Notwithstanding the foregoing, (a) if the Yucaipa Settlement is approved by the California Bankruptcy Court and the Trustee receives possession of the Yucaipa Funds but the Settlment Effective Date does not occur by the deadline set forth in paragraph A(1) above , then the Yucaipa Funds shall be segregated by the Trustee subject to the asserted liens, claims, interests and encumbrances of the 1st Lien Lenders, which liens, claims, interests and encumbrances may be challenged by the Trustee in accordance with applicable law and procedure and shall not be distributed or used without further order of the California Bankruptcy Court obtained on proper

4

EXHIBIT 1 PAGE 71

notice and hearing, and (b) if the Yucaipa Settlement is not approved by the California Bankruptcy Court, the respective rights of the parties to the Term Sheet to all the funds currently held by the Yucaipa Valley Water District shall be preserved. Notwithstanding the foregoing, nothing herein shall be deemed an admission regarding the existence or validity of any lien or right asserted by the 1st Lien Lenders in the funds currently held by the Yucaipa Valley Water District.

D.  Upon the Settlement Effective Date, the Trustee shall immediately transfer to the 1st Lien Lenders, free and clear of any claims or interests of the Trustee, the Debtors, the Debtors' estates and any party claiming by or through the Debtors, (a) all Development Account Funds less the aggregate $5.5 million in Administrative Funds and Remaining Development Funds to be retained by the Trustee pursuant to paragraph C above and (b) the 1st Lien Lenders' YFP (all of the funds to be transferred to the 1st Lien Lenders hereafter referred to as the "1st Lien Lenders Retained Settlement Funds").

**Sale Of Properties Under The Plan**

E.  The 1st Lien Lenders acting collectively in concert shall be the initial bidder with respect to each of the Properties and, subject to paragraph F below, shall credit-bid their allowed secured claims with respect to each Property in accordance with the bidding procedures set forth in paragraphs F and P below, as such bidding procedures may be further drafted and agreed upon by the parties hereto in consultation with a real property broker acceptable to each of the parties hereto (the "Approved Broker") and otherwise approved by the California Bankruptcy Court to the extent required (together, the "Bidding Procedures"). Properties for which the 1st Lien Lenders are determined to be the winning bidders pursuant to, in accordance with, and as more particularly described in the Bidding Procedures (the "Winning Bidders"), and which are purchased by the 1st Lien Lenders by way of credit bid, shall be transferred to the 1st Lien Lenders subject to (i) the lien of the 1st Lien Lenders, (ii) Senior Liens (hereinafter defined), and (iii) liens, claims, encumbrances or interests that satisfy clause (b), (c) and/or (d) of the definition of "Permitted Exceptions" set forth in the First Lien Credit Agreement (items described in this clause (iii), "Permitted Liens") Properties for which one or more third parties are determined to be the Winning Bidders shall be sold under the Plan pursuant to 11 U.S.C. Section 1123(a)(5)(d) free and clear of liens, claims, encumbrances or interests other than Permitted Liens.

F.  The initial credit bids by the 1st Lien Lenders shall be in an aggregate amount which shall be at least equal to $45 million (the "Aggregate Minimum Credit Bid Amount") and shall not exceed a maximum amount (the "Aggregate Maximum Credit Bid Amount"), with such Maximum Credit Bid Amount to be determined prior to the Settlement Effective Date by the 1st Lien Lenders in consultation with the Approved Broker. The Aggregate Minimum Credit Bid Amount and the Aggregate Maximum Credit Bid Amount shall be respectively allocated among the three Properties by the parties hereto in consultation with the Approved Broker prior to the Settlement Effective Date (the Aggregate Maximum Credit Bid Amount as so allocated in each case, the "Allocated Maximum Credit Bid Amount"). The 1st Lien Lenders shall be

5

EXHIBIT 1 PAGE 72

entitled to increase their respective credit bid for each Property to an amount, to be determined prior to the Settlement Effective Date by the parties hereto in consultation with the Approved Broker, in excess of the highest competing bid for such Property, if any, up to the Allocated Maximum Credit Bid Amount with respect to such Property and up to the Aggregate Maximum Credit Bid Amount in the aggregate for all of the 1st Lien Lenders' credit bids with respect to the Properties (in each case with no set-offs, reductions or other defenses) in their discretion in accordance with the overbid procedures set forth herein. If one or more of the Properties are successfully bid upon by a qualified bidder (as the same may be more particularly described in the Bidding Procedures, each a "Qualified Bidder"), the Trustee may, subject to the right of the 1st Lien Lenders to submit a greater bid, sell such Property(ies) to such third party free and clear of all Liens (including the lien of the 1st Lien Lenders) other than Permitted Liens (hereinafter defined). Any Senior Liens and the lien of the 1st Lien Lenders shall each attach to any monies (other than the Trustee's Participation under paragraph R) received from the sale to a third party and such monies, net of any ordinary course sales costs and subject to the rights of any holders of Senior Liens, shall be paid to the 1st Lien Lenders. Payment of the Trustee's Participation to the Trustee shall only be made at such time when all Senior Lien claims have been resolved (through settlement, payment or otherwise) or Fidelity has accepted responsibility for all remaining Senior Liens. The 1st Lien Lenders shall have an allowed unsecured claim as set forth in paragraph B above. For the avoidance of doubt, in accordance with paragraph B above, the calculation of the 1st Lien Lenders' allowed unsecured claim shall take into account (1) the 1st Lien Lenders' aggregate credit bids for those Properties that were included in their winning bids pursuant to and in accordance with the Bidding Procedures (as the same may be more particularly described in the Bidding Procedures, each a "Winning Bid") minus any liabilities (including, without limitation, liabilities in respect of any Senior Liens) assumed by the 1st Lien Lenders in connection with the transfer of title to such Properties to the 1st Lien Lenders pursuant to such Winning Bids and (2) any proceeds received by the 1st Lien Lenders from the sale pursuant to the Plan of any of the Properties that were not included in the 1st Lien Lenders' Winning Bids to one or more third parties.

### Use of Remaining Development Funds; Trustee Loss Collateral

G.   During the period from the Settlement Effective Date until the transfer of title of all of the Properties to the 1st Lien Lenders and/or to any third party(ies), either pursuant to the Plan or by way of a foreclosure by the 1st Lien Lenders (the "Trustee Maintenance Period"), the Trustee shall be authorized to pay all expenses incidental to the ownership, operation and maintenance of the Properties from the Remaining Development Funds in amounts not to exceed those on the Approved Budget (plus a variance of 10% on a line-item basis of the amounts set forth therein), without the further consent of the 1st Lien Lenders. Immediately upon the Settlement Effective Date, LCPI on behalf of and as agent for the 1st Lien Lenders shall deliver to the Trustee cash or one or more irrevocable letters of credit acceptable to the Trustee in his reasonable discretion (together, the "Trustee Loss Collateral") in the aggregate amount of $500,000 (in the case of cash, to be held in escrow and released solely in accordance with the terms and conditions of this Term Sheet). During the Trustee

6

EXHIBIT 1 PAGE 73

Maintenance Period, in the event the Trustee incurs proven losses (not otherwise covered by insurance) based upon claims of simple negligence or strict liability in connection with his ownership, operation, maintenance and management of the Properties, but not in the event of any gross negligence or gross malfeasance on the part of the Trustee, the Trustee shall have the right to draw and recover from the Trustee Loss Collateral an amount not to exceed in the aggregate the lesser of (i) the amount of such losses multiplied by a fraction, the numerator of which is the amount of the 1st Lien Lenders Retained Settlement Funds actually paid over to the 1st Lien Lenders (including any unused Remaining Development Funds actually paid over to the 1st Lien Lenders pursuant to paragraph C above) and the denominator of which is the aforementioned amount plus $5.5 million[1], and (ii) the full amount of the Trustee Loss Collateral, and in the event such recovery from the Trustee Loss Collateral is insufficient to cover such losses, the Trustee shall have the right, but not the obligation, to apply Administrative Funds to cover such losses. Upon the earlier to occur of (i) a Termination Event or (ii) the effective date of the Plan, the Trustee shall deliver any remaining cash Trustee Loss Collateral to LCPI for the benefit of the 1st Lien Lenders. Further, LCPI on behalf of and as agent for the 1st Lien Lenders hereby fully and forever releases and discharges the Trustee both in his capacity as trustee and in his individual capacity with respect to any acts or omissions occurring or claims arising in any way related to the subject matter hereof or the Trustee's actions or duties with respect to the Debtors or the Properties prior to the conclusion of the Trustee Maintenance Period, except to the extent of any gross negligence or gross malfeasance on the part of the Trustee.

H.   To the extent that the Remaining Development Funds are inadequate to fund the Trustee's reasonable and necessary expenses with respect to the ownership, preservation and maintenance (but not development) of the Properties through and including January 31, 2011, the 1st Lien Lenders agree to pay for such reasonable and necessary expenses to the extent they are (i) consistent in nature and amount with expenses provided for in prior cash collateral budgets approved by the California Bankruptcy Court and (ii) in an aggregate amount not to exceed fifty percent (50%) of the amount of the 1st Lien Lenders Retained Settlement Funds actually received by the 1st Lien Lenders. These expenses shall be paid within ten (10) days following written request accompanied by reasonable back-up documentation by the Trustee to LCPI and LCPI's good faith determination that such expenses are reasonable and necessary; however, if there is a dispute as to the reasonableness or necessity of any of the expenses incurred by the Trustee, the California Bankruptcy Court shall retain jurisdiction to hear and determine the Trustee's motion to compel payment of such expenses. Pending payment of such expenses by the 1st Lien Lenders, the Trustee shall be authorized to use the Administrative Funds for the purposes set forth in this paragraph H.

---

[1] As an example only, in the case of an $800,000 loss, if the amount of 1st Lien Lenders Retained Settlement Funds actually paid over to the 1st Lien Lenders is $8.5 million, then the numerator will be $8.5 million, the denominator will be $14 million (i.e. $8.5 million plus $5.5 million), the resulting fraction will be 8.5/14 (= 0.6071428571) and the Trustee's recovery would be $485,714.29 ($800,000 multiplied by 0.6071428571) which is less than $500,000 (i.e., the full amount of the Trustee's Loss Collateral).

7

EXHIBIT 1 PAGE 74

**Information Regarding Title Insurance Policy**

I.     LCPI has heretofore provided the Trustee with a complete copy of that certain Title Insurance Policy number 27-44-94-120334 (the "Title Insurance Policy") issued by Fidelity National Title Insurance Company ("Fidelity") for the benefit of LCPI as administrative agent for the 1st Lien Lenders for the Properties. Promptly upon execution of this Term Sheet LCPI will provide the Trustee with all documents and information reasonably related to the Title Insurance Policy and any and all claims made by the 1st Lien Lenders thereunder so as to allow the Trustee to comply with the requirements of paragraphs J and K below and otherwise to proceed with such matters to conclusion.

**Resolution of Senior Liens; Availability of Title Insurance**

J.     The Trustee shall reasonably cooperate with the 1st Lien Lenders in their efforts to determine whether any Liens are superior to the 1st Lien Lenders' lien in the applicable Properties and to determine the proper amount of any such superior Liens ("Senior Liens"); provided, however, the Trustee shall not be obligated to take any action that would cause the Trustee or the Debtors' bankruptcy estates to incur material cost or liability.

**Release**

K.     1. As of the Settlement Effective Date, (A) the Debtors' estates through the Trustee shall be deemed to have released the 1st Lien Lenders and LCPI (in its individual capacity and in its capacity as administrative agent for the 1st Lien Lenders), and, subject to the second-to-last sentence of this paragraph K, their respective affiliated parties, officers, directors, employees, agents and attorneys, and (B) LCPI (in its individual capacity as a 1st Lien Lender and in its capacity as administrative agent for the 1st Lien Lenders but not in any other capacity) and the 1st Lien Lenders will be deemed to have released the Debtors' estates and the Trustee and the Trustee's agents and attorneys, in each case for and from all claims (as defined in Section 101(5) of the Bankruptcy Code and including any claims that could be brought by or against the Trustee pursuant to the Bankruptcy Code) other than the allowance of the Lenders' claims as set forth in paragraph B above and the rights to receive distributions based on those allowed claims. Notwithstanding the foregoing and for the avoidance of doubt, the releases to be exchanged shall not include claims and causes of action against any third parties other than the 1st Lien Lenders and LCPI and their respective affiliated parties, officers, directors, employees, agents and attorneys acting in their capacities as lenders, agents, loan administrators or advisors thereto, and such releases specifically shall *not* include a release of LBREP Lakeside SC Master I LLC ("LBREP Lakeside"); SCC Acquisitions, Inc. ("SCC Inc."); SCC Acquisitions, LLC ("SCC LLC"); or SCC Ranch Ventures LLC (collectively with SCC Inc. and SCC LLC, "SCC") or any claims related to the acts of the owners of any of the Debtors including any transfers of funds by any of the owners of any of the Debtors. Notwithstanding anything above, nothing in this paragraph K shall be deemed a release of the respective parties' obligations under this Term Sheet. If the Settlement

8

EXHIBIT 1 PAGE 75

Effective Date does not occur for any reason, the foregoing releases shall be of no force or effect.

2. As to the matters released pursuant to paragraph K(1) above, the parties hereby expressly waive all rights under the provisions of Section 1542 of the Civil Code of the State of California and any similar rights in any state or territory or under any similar statute or regulation of the United States or any of its agencies. Section 1542 of this California Civil Code reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Each party waives and relinquishes any rights and benefits that any of them may have under California Civil Code Section 1542 pertaining to the subject of their releases set forth in paragraph K(1) above, and acknowledges that it is aware that it may hereafter discover facts in addition to or different from those which it now knows or believes to be true with respect to the matters released pursuant to paragraph K(1) above, but its intention hereby is to fully, finally and forever waive and release the claims released pursuant to paragraph K(1) above. Each party represents, warrants and agrees that this waiver is a material term of this Term Sheet, without which neither party would have entered into this Term Sheet.

## Support of the Plan

L.   LCPI hereby agrees that, subject to its receipt of a Disclosure Statement and other solicitation materials in respect of the Plan, which Disclosure Statement and other solicitation materials (i) implement this Term Sheet and (ii) are not otherwise materially inconsistent with such terms, it being recognized that this Term Sheet shall not constitute an agreement by LCPI to take any step or action that would violate any provision of applicable bankruptcy law or any other applicable laws, and to the extent any provision hereof shall be construed as constituting such a violation, such provision shall be deemed stricken herefrom and of no force and effect without liability to any of the parties, LCPI will, as promptly as practicable following the California Bankruptcy Court's approval of the Disclosure Statement and solicitation materials, present the Plan and related materials to the 1st Lien Lenders and recommend that the 1st Lien Lenders vote to accept the Plan, provided that to the extent the Plan contains additional terms and provisions unrelated to the substantive provisions of the Term Sheet, such additional terms and provisions are reasonably acceptable to LCPI and the 1st Lien Lenders. Also, subject to the occurrence of the Settlement Effective Date, LCPI and those other 1st Lien Lenders who have signed this Term Sheet agree, prior to the occurrence of a Termination Event, not to vote in favor of any other plan that fails to incorporate the substantive provisions of this Term Sheet until such time (if any) as the provisions set forth in paragraph T below are in effect.

M.   All 1st Lien Lenders who are on the "steering committee" are parties to this Term Sheet. All parties to this Term Sheet agree, prior to the occurrence of a Termination

9

EXHIBIT 1 PAGE 76

Event, to support confirmation of the Plan provided the same is consistent in all material respects with the terms of this Term Sheet and does not contain material terms and provisions which have not been approved by LCPI and the "steering committee" of 1st Lien Lenders. Notwithstanding anything to the contrary contained herein, nothing in this Term Sheet shall constitute a representation or warranty by LCPI that the 1st Lien Lenders will vote in favor of the Plan by the requisite majorities under the Bankruptcy Code to obtain acceptance of the Plan by the class of 1st Lien Lenders nor shall LCPI have any liability in respect of such voting by the 1st Lien Lenders (subject to LCPI's obligation to recommend approval as provided above).

N.   Nothing contained in this Term Sheet shall limit or interfere, in any way, with the ability of any 1st Lien Lender or member of the "steering committee" to transfer or assign its interests under the First Lien Credit Agreement. However, if such transferor or assignor has signed this Term Sheet, its transferees or assignees shall be bound by the provisions of this Term Sheet to the same extent such transferor or assignor was bound thereby. The transfer or assignment of all or part of such transferor's or assignor's interests under the First Lien Credit Agreement shall constitute a novation, whereby, such transferor or assignor shall automatically receive a release of its obligations under this Term Sheet by and to the same extent that its transferee or assignee is bound by the provisions of this Term Sheet.

## Key Plan Provisions.

O.   The 1st Lien Lenders will be classified as a separate class under the Plan.

P.   The Plan will provide that the Trustee will sell the Properties (including without limitation any related personal property) pursuant to 11 U.S.C. Section 1123(a)(5)(d) and in accordance with the terms and conditions of this Term Sheet and the Bidding Procedures to the 1st Lien Lenders and/or one or more successful third party Qualified Bidders, as the case may be, free and clear of Liens other than (i) Permitted Liens in the case of a sale to a third party Qualified Bidder or (ii) Senior Liens, Permitted Liens and the Liens of the 1st Lien Lenders in the case of a sale to the 1st Lien Lenders pursuant to a credit bid.

Q.   1. The Plan will provide that until such time as the earliest to occur of (a) all holders of allowed claims, other than the Lenders, have been paid in full the allowed amounts of their respective claims according to their respective legal priorities, (b) the Lenders have been paid the full amount of their allowed claims, or (c) this Term Sheet terminates in accordance with the terms hereof, any recovery of proceeds from any avoidance action, litigation (including, without limitation, litigation in respect of any claims of fraudulent conveyance), asset disposition (excluding the sale of the Properties), or other recovery by the Trustee prior to or after Plan confirmation (the "Other Recoveries"), after payment in full of all allowed administrative and other priority unsecured claims in all four of the SunCal Bankruptcy Cases (collectively, the "Unsecured Priority Claims"), shall be split 50/50 between the 1st Lien Lenders (based on the understanding of the parties hereto that, and only if, all such proceeds

10

EXHIBIT 1 PAGE 77

would be distributed to the 1st Lien Lenders under the Intercreditor Agreement, defined below in this paragraph) and the holders of allowed claims other than the Lenders (the "Trade Creditors", which term excludes any and all claims by the Lenders). The portion of the Other Recoveries that is allocated to the Trade Creditors (the "Trade Creditor Allocation") shall be distributed to Trade Creditors pursuant to a confirmed administratively-consolidated chapter 11 plan on a pro rata basis among those Trade Creditors based on the allowed amount of their respective claims. Distributions to Trade Creditors shall be made out of a single fund consisting of Other Recoveries that shall be administered by an appropriate fiduciary. This division of Other Recoveries shall be enforceable in the Bankruptcy Courts and any court of competent jurisdiction notwithstanding (1) the effect or terms of any agreement among the Lenders; (2) that assets, claims or causes of action may be held or pursued on behalf of one or only some of the Debtors; and (3) that Parent Debtor has few if any creditors other than the Lenders. After all Trade Creditors of the Debtors' estates are paid in full, the balance of the funds in the Debtors' estates, if any, shall be distributed to the Lenders in accordance with their respective priorities but subject to that certain Amended and Restated Intercreditor Agreement among the 1st Lien Lenders, the 2nd Lien Lenders and the 3rd Lien Lenders dated as of February 6, 2007 (the "Intercreditor Agreement"). If the foregoing allocations are either altered without the consent of the parties hereto or not approved by one or both of the Bankruptcy Courts, then any allowed unsecured claim of the 1st Lien Lenders (the "Assigned 1st Lien Lenders' Claim") shall be deemed assigned to the Debtors' bankruptcy estates for the benefit of all non-Lender claims, free and clear of any claims, liens or interests of the 1st Lien Lenders, but without representation or warranty and only for the purpose of effectuating the 50/50 distribution scheme provided for in this paragraph Q. To the extent that the Assigned 1st Lien Lenders' Claim does not provide the Debtors' estates with the equivalent of what they otherwise would have received under the 50/50 distribution scheme, then any allowed unsecured claim of (x) LCPI 2nd Lien Lender (the "Assigned LCPI 2nd Lien Lender's Claim") and (y) LCPI 3rd Lien Lender (the "Assigned LCPI 3rd Lien Lender's Claim", and collectively with the Assigned 1st Lien Lenders' Claim and the Assigned LCPI 2nd Lien Lender's Claim, the "Assigned Lenders' Claims") shall each be deemed assigned to the Debtors' bankruptcy estates for the benefit of all non-Lender claims, free and clear of any claims, liens or interests of the 1st Lien Lenders, LCPI 2nd Lien Lender and LCPI 3rd Lien Lender, but without representation or warranty and only to the extent necessary to provide the Debtors' estates with the equivalent of what they otherwise would have received pursuant to this paragraph Q. The proceeds from the Assigned Lenders' Claims shall be distributed first, to all unpaid Unsecured Priority Claims and second, to all Trade Creditors on a pro rata basis. After all of the Unsecured Priority Claims (to the extent that same were not previously paid out of the Administrative Claims) and Trade Creditors are paid in full, the remaining proceeds from (i) the Assigned 1st Lien Lenders' Claim shall be paid to the 1st Lien Lenders, (ii) the Assigned LCPI 2nd Lien Lender's Claim shall be paid to the 2nd Lien Lenders, and (iii) the Assigned LCPI 3rd Lien Lender's Claim shall be paid to the 3rd Lien Lenders.

11

EXHIBIT 1 PAGE 78

R.   In addition, the Trustee shall be entitled to, and shall recover and receive from the Proceeds (hereinafter defined) of dispositions of the Properties, the lesser of (1) the amount sufficient to pay in full the allowed amount of the claims of the holders of allowed claims other than the Lenders to the extent not previously paid, and (2) 3.5% of such Proceeds (the "Trustee's Participation"); provided that, at the time of any such subsequent disposition the holders of allowed claims other than the Lenders shall not have otherwise been paid the full allowed amount of their claims. The Trustee's Participation in each portion of any Proceeds that consists of cash shall be immediately due and payable to the Trustee from the 1st Lien Lenders in cash upon the 1st Lien Lenders' receipt of such portion of the applicable Proceeds. The Trustee's Participation shall be transferred to the Trustee free and clear of Lender liens for the sole benefit of all allowed non-Lender unsecured claims. As used herein, "Proceeds" shall mean all cash and other property constituting proceeds of the disposition of each Property, including the proceeds from the sale of any of the Properties under paragraph E to a party other than the 1st Lien Lenders (but excluding any transfer of a Property to the 1st Lien Lenders pursuant to a credit bid) and including the proceeds from any disposition of the Property by the 1st Lien Lenders or any of their affiliates following their acquisition thereof pursuant to a credit bit, whether such proceeds are received in a single lump sum or on a piecemeal basis over time, less (a) customary and reasonable costs and expenses of the sale, and (b) cash and other property used to satisfy any Senior Liens not otherwise satisfied under the Title Insurance Policy or the Plan. For the avoidance of doubt, in the case of such property actually received that consists of promissory notes, equity interests (direct or indirect) in any entities taking title to the Properties and/or other deferred or contingent payment arrangements or mechanisms, the Trustee shall be entitled to receive, at the time such promissory notes, equity interests and/or deferred or contingent payment arrangements or mechanisms are received or implemented by the 1st Lien Lenders or their applicable affiliates or principals, a profits participation or similar contractual right to receive the applicable amount representing the Trustee's Participation from all cash actually received by such entities taking title to each Property from the disposition of such Property and by the Lenders and their applicable affiliates and principals in respect of such promissory notes, which profits participation or similar right shall be provided for in the operating, partnership, or similar governing documents of such entities and in such promissory notes or other deferred or contingent payment documentation (as the case may be), in a form and substance reasonably acceptable to the Trustee with Trustee being a direct contracted beneficiary of such provisions with the legal right to contractually enforce same. The California Bankruptcy Court shall retain jurisdiction with respect to the determination of the value of any component of each Proceeds. Without limiting the foregoing, if the 1st Lien Lenders form a joint venture with, or borrow funds from, any party, including any 1st Lien Lender or affiliates of a 1st Lien Lender to obtain funding necessary to develop one or more of the Properties or to maintain and/or operate the Properties prior to any disposition, the funds required to repay such unaffiliated equity or debt, as the case may be, shall reduce dollar-for-dollar the Proceeds for the applicable Properties. The 1st Lien Lenders agree to act in good faith to carry out the terms of this paragraph R and to effectuate this participation interest of the Trustee.

12

EXHIBIT 1 PAGE 79

The 1st Lien Lenders will, at their sole expense, provide a report and accounting to the Trustee or the Trustee's successor-in-interest as soon as possible following receipt of Proceeds and shall provide semi-annual financial reports relating to the Properties. In addition, the 1st Lien Lenders will provide such documents and other information reasonably requested by the Trustee or the Trustee's successor in interest to monitor the 1st Lien Lenders' compliance with this paragraph R. LCPI shall provide the Trustee with information reasonably necessary to verify the amount of Proceeds. Finally, the Plan may contain such other reasonable provisions as may be required to effectuate the performance of the terms of this paragraph R.

S.  Intentionally omitted.

**Certain Rights and Releases Upon Termination Event**

T.  If a Final Order confirming the Plan shall not have been obtained by February 28, 2011 (or such later date as may be mutually agreed upon by the Trustee, LCPI and the Creditors' Committee, such later date in no event to be later than March 31, 2011) (a "Termination Event"), then:

    i.  The 1st Lien Lenders immediately will be granted relief from stay to foreclose on the Properties. The Bankruptcy Court will grant this relief upon the presentation of an order by LCPI, accompanied by a declaration signed by an authorized representative of LCPI, confirming that a Termination Event has occurred. No party in interest, including without limitation the Trustee and the Creditors' Committee, shall be entitled to or permitted (A) to challenge the presentation of or entry of the order granting LCPI relief from stay with respect to the Properties, except to the extent no Termination Event has in fact occurred or (B) to challenge or otherwise interfere with the foreclosure of the Properties. Upon the entry of such order, the Trustee shall cooperate with the 1st Lien Lenders' foreclosure actions.

    ii.  The Trustee shall retain the Administrative Funds and the Trustee's YFP free from the secured claims of the Lenders.

    iii.  The 1st Lien Lenders shall retain the 1st Lien Lenders Retained Settlement Funds and the Trustee shall immediately pay over to the 1st Lien Lenders (A) the unused portion of the Remaining Development Funds, and (B) the unused portion of the Trustee Loss Collateral, in each case free and clear of any claims or interests (including without limitation any right to recovery) of the Trustee, the Debtors, the Debtors' estates and any party claiming by or through the Debtors.

    iv.  Intentionally omitted.

    v.  LCPI and the 1st Lien Lenders shall in no event be deemed to have waived any right to object to the substantive consolidation of the Debtors' cases.

    vi.  Intentionally omitted.

13

EXHIBIT 1 PAGE 80

vii. Except as provided in this <u>paragraph T</u>, this Term Sheet shall be of no further force or effect, including any obligation contained in <u>paragraphs L</u> and <u>M</u>.

**No Substantive Consolidation**

U.     The parties hereto acknowledge and agree that neither any provision of this Term Sheet nor any of the transactions contemplated herein, including without limitation the contemplated terms and provisions of the Plan, do nor shall (i) effect substantive consolidation of any one or more of the Debtors with any one or more of the other Debtors, (ii) suggest that any such substantive consolidation is or might be possible, or (iii) affect the right of the 1st Lien Lenders to object to the substantive consolidation of any one or more of the Debtors with any one or more of the other Debtors. However, nothing here shall constitute a waiver of the rights of the parties to seek substantive consolidation of one or more of the Debtors if such is necessary or appropriate in the interests of creditors.

**Miscellaneous Provisions**

V.     1. Upon the last of the Compromise Orders becoming a Final Order, this Term Sheet shall be binding upon the parties hereto and their respective heirs, representatives, transferees, successors and assigns. Notwithstanding the foregoing, this Term Sheet and the rights and obligations hereunder may not be assigned by a party hereto without the prior written consent of the other parties.

2. LCPI will use reasonable efforts to obtain by September 30, 2010, an agreement from the 1st Lien Lenders tolling the statute of limitations within which the Trustee must file a complaint against the 1st Lien Lenders based on the operative facts alleged in the draft attached to his proof of claims previously filed in the LCPI chapter 11 case or to avoid the 1st Lien Lenders' asserted lien against the funds currently held by the Yucaipa Valley Water District until March 31, 2011.

3. In the event of any dispute between the parties hereto arising out of the subject matter of this Term Sheet, the prevailing party in such action shall be entitled to have and to recover from the other party its reasonable attorneys' fees and other reasonable expenses (including expert witness fees) in connection with such action or proceeding in addition to its recoverable court costs.

4. This Term Sheet shall be construed in accordance with the laws of the State of California in effect at the time of the execution of this Term Sheet except to the extent superseded by the laws of the United States. The parties hereto agree that the California Bankruptcy Court shall have jurisdiction to hear and to determine all matters, disputes and controversies related to this Term Sheet and the subject matter hereof, and each party hereby submits to the jurisdiction and venue of the California Bankruptcy Court with respect thereto. Notwithstanding the foregoing, if the California Bankruptcy Court will not accept jurisdiction or otherwise hear any such matter, then such matter shall be heard by the Orange County Superior Court for the

14

EXHIBIT 1 PAGE 81

State of California, and each party hereby submits to the jurisdiction and venue of such court with respect thereto.

5. This Term Sheet contains the entire understanding between the parties relating to the transactions and matters contemplated hereby and all prior or contemporaneous agreements, term sheets, understandings, representations and statements, oral or written are merged herein and shall be of no further force or effect.

6. If any term, provision, condition or covenant of this Term Sheet or the application thereof to any party or circumstances shall, to any extent, be held invalid or unenforceable, the remainder of this Term Sheet, or the application of such term, provision, condition or covenant to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Term Sheet shall be valid and enforceable to the fullest extent permitted by law.

7. Any alteration, change or modification of or to this Term Sheet, in order to become effective, shall be made by written modification hereof executed by all of the parties hereto.

8. This Term Sheet and any modifications, amendments or supplements thereto may be executed in several counterparts, and all so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all parties are not signatories to the original or the same counterpart. The parties may also deliver executed copies of this Term Sheet to each other by facsimile or by electronic delivery (e.g., .pdf), which facsimile or electronic signatures shall be binding upon the parties as if they were originals.

9. The parties hereto each agree in good faith to undertake such further actions and deliver such further documentation as may be reasonably necessary in order to facilitate the transactions contemplated in this Term Sheet and to implement the terms hereof, provided that no party shall be obligated to incur expenses or liabilities in connection therewith which exceed those expenses and liabilities which they would otherwise incur complying with the express terms hereof.

[Signatures appear on the following page]

15

EXHIBIT 1 PAGE 82

Dated:_____

_____

Alfred H. Siegel, solely in his capacity as the Chapter 11 Trustee
of the administratively consolidated estates
of LBREP/L-SunCal Master I LLC,
LBREP/L-SunCal McAllister Ranch LLC,
LBREP/L-SunCal McSweeny Farms,
and LBREP/L-SunCal Summerwind Ranch

[Signatures continue on the following page]

EXHIBIT 1 PAGE 83

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS
of LBREP/L-SunCal Master I LLC,
LBREP/L-SunCal McAllister Ranch LLC,
LBREP/L-SunCal McSweeny Farms,
and LBREP/L-SunCal Summerwind Ranch

By: _____

    Lennar Homes of California, Inc., solely in its capacity as chairperson

    By:_____       Dated:_____ .

[Signatures continue on the following page]

EXHIBIT 1 PAGE 84

LEHMAN COMMERCIAL PAPER INC., as
administrative agent of the 1st Lien Lenders
to LBREP/L-SunCal Master I LLC,
LBREP/L-SunCal McAllister Ranch LLC,
LBREP/L-SunCal McSweeny Farms,
and LBREP/L-SunCal Summerwind Ranch


By:_____          Dated:_____
   Name:
   Title: Its Authorized Signatory


[Signatures continue on the following page]

EXHIBIT 1 PAGE 85

ACKNOWLEDGED AND AGREED
SOLELY AS TO THE
AGREEMENTS MADE BY THE
1ST LIEN LENDERS HEREIN:


1ST LIEN LENDER:

[_____]


By:_____          Dated:_____
   Name:
   Title:

EXHIBIT 1 PAGE 86

ACKNOWLEDGED AND AGREED
SOLELY AS TO THE
AGREEMENTS MADE BY
LCPI 2nd LIEN LENDER HEREIN:


LCPI 2nd LIEN LENDER:

[_____]


By:_____          Dated:_____
   Name:
   Title:

EXHIBIT 1 PAGE 87

ACKNOWLEDGED AND AGREED
SOLELY AS TO THE
AGREEMENTS MADE BY
LCPI 3rd LIEN LENDER HEREIN:


LCPI 3rd LIEN LENDER:

[_____]


By:_____        Dated:_____
    Name:
    Title:

EXHIBIT 1 PAGE 88

08-13555-mg  Doc 36870-22  Filed 04/25/13  Entered 04/25/13 15:21:35  Exhibit 1
Pg 97 of 250

EXHIBIT "A"

BUDGET

[See Attached]

EXH. A

EXHIBIT 1 PAGE 89

# EXHIBIT 2

Case 8:08-bk-15588-ES  Doc 763-2  Filed 04/25/13  Entered 04/25/13 15:21:33  Exhibit 1-
Page 99 of 250

EXECUTION COPY

## AMENDED AND RESTATED INTERCREDITOR AGREEMENT

This AMENDED AND RESTATED INTERCREDITOR AGREEMENT ("Agreement"), is dated as of February 6, 2007, and entered into by LEHMAN COMMERCIAL PAPER INC. ("LCPI"), in its capacity as administrative agent for the First Lien Obligations (as defined below), including its successors and assigns from time to time (the "First Lien Administrative Agent"), LCPI, in its capacity as administrative agent for the Second Lien Obligations (as defined below), including its successors and assigns from time to time (the "Second Lien Administrative Agent") and LCPI, in its capacity as administrative agent for the Third Lien Obligations (as defined below), including its successors and assigns from time to time (the "Third Lien Administrative Agent"). Capitalized terms used in this Agreement have the meanings assigned to them in Section 1 below.

### RECITALS

WHEREAS, LBREP/L-SunCal Master I LLC, a Delaware limited liability company (the "Borrower"), the Lenders parties thereto, Lehman Brothers Inc., as arranger, and LCPI, as syndication agent and First Lien Administrative Agent, have entered into that First Lien Credit Agreement dated as of January 19, 2006 providing for secured credit facilities in the original aggregate principal amount of $235,000,000 (as amended, restated, supplemented, modified, replaced or Refinanced from time to time, the "First Lien Credit Agreement");

WHEREAS, the Borrower, the Lenders party thereto, Lehman Brothers Inc., as arranger, and LCPI, as syndication agent and Second Lien Administrative Agent, have entered into that Second Lien Credit Agreement dated as of January 19, 2006 providing for secured credit facilities in the original aggregate principal amount of $85,000,000 (as amended, restated, supplemented, modified, replaced or Refinanced from time to time, the "Second Lien Credit Agreement");

WHEREAS, the obligations of the Borrower under the First Lien Credit Agreement and any Specified Hedge Agreements with the First Lien Qualified Counterparties are secured on a first priority basis by liens on substantially all the assets of the Borrower and the Subsidiary Guarantors, pursuant to the terms of the First Lien Collateral Documents;

WHEREAS, the obligations of the Borrower under the Second Lien Credit Agreement and any Specified Hedge Agreements with the Second Lien Lenders (or any of their Affiliates) are secured on a second priority basis by Liens on substantially all the assets of the Borrower and the Subsidiary Guarantors, respectively, pursuant to the terms of the Second Lien Collateral Documents;

USActive 7067057.7

EXHIBIT 2 PAGE 90

WHEREAS, the First Lien Administrative Agent and the Second Lien Administrative Agent are party to the Intercreditor Agreement, dated as of January 19, 2006, as amended, supplemented or otherwise modified prior to the date hereof;

WHEREAS, the Borrower, the Lenders party thereto, Lehman Brothers, Inc., as arranger, and LCPI, as syndication agent and Third Lien Administrative Agent, have entered into that Third Lien Credit Agreement dated as of the date hereof providing for secured credit facilities in the original aggregate principal amount of $75,000,000 (as amended, restated, supplemented, modified, replaced or refinanced from time to time, the "Third Lien Credit Agreement");

WHEREAS, the obligations of the Borrower under the Third Lien Credit Agreement and any Specified Hedge Agreements with the Third Lien Qualified Counterparties will be secured on a third priority basis by liens on substantially all the assets of the Borrower and the Subsidiary Guarantors, pursuant to the terms of the Third Lien Collateral Documents;

WHEREAS, (a) in order to induce the First Lien Administrative Agent and the First Lien Claimholders to consent to the Grantors incurring the Third Lien Obligations and to induce the First Lien Claimholders to extend credit and other financial accommodations and lend monies to or for the benefit of the Borrower or any other Grantor and (b) in order to induce the Second Lien Administrative Agent and the Second Lien Claimholders to consent to the Grantors incurring the Third Lien Obligations, the Second Lien Administrative Agent on behalf of the Second Lien Claimholders and the Third Lien Administrative Agent on behalf of the Third Lien Claimholders have agreed to the intercreditor and other provisions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and obligations herein set forth and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

## SECTION 1

## DEFINITIONS

1.1  _Defined Terms_.  As used in the Agreement, the following terms shall have the following meanings:

"__Affiliate__" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) vote 10% or more of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of such Person or (b) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

2.

USActive 7067057.7

EXHIBIT 2 PAGE 91

"Agreement" means this Amended and Restated Intercreditor Agreement, as amended, restated, renewed, extended, supplemented or otherwise modified from time to time.

"Asset Sale" has the meaning assigned to that term in the First Lien Credit Agreement.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"Bankruptcy Law" means the Bankruptcy Code and any similar federal, state or foreign law for the relief of debtors.

"Borrower" has the meaning assigned to that term in the Recitals to this Agreement.

"Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to close.

"Collateral" means all of the assets and property of any Grantor, whether real, personal or mixed, constituting First Lien Collateral, Second Lien Collateral and Third Lien Collateral.

"Comparable Junior Collateral Documents" shall mean (a) initially, the Comparable Second Lien Collateral Documents and the Comparable Third Lien Collateral Documents, and (b) upon the occurrence of a Control Change Event, the Comparable Third Lien Collateral Documents.

"Comparable Second Lien Collateral Document" means, in relation to any Collateral subject to any Lien created under any First Lien Collateral Document, the Second Lien Loan Document which creates a Lien on the same Collateral, granted by the same Grantor.

"Comparable Third Lien Collateral Document" means, in relation to any Collateral subject to any Lien created under any First Lien Collateral Document or any Second Lien Collateral Document, the Third Lien Loan Document which creates a Lien on the same Collateral, granted by the same Grantor.

"Control Change Event" means the occurrence of the Discharge of First Lien Obligations, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against Borrower or any other Grantor.

"DIP Financing" has the meaning assigned to that term in Section 6.1.

3

USActive 7067057.7

EXHIBIT 2 PAGE 92

"Discharge of First Lien Obligations" means, except to the extent otherwise expressly provided in Section 5.5:

      (a)    payment in full in cash of the principal of and interest (including interest accruing on or after the commencement of any Insolvency or Liquidation Proceeding, whether or not such interest would be allowed in such Insolvency or Liquidation Proceeding), on all Indebtedness outstanding under the First Lien Loan Documents;

      (b)    payment in full in cash of all other First Lien Obligations that are due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid; and

      (c)    termination or expiration of all commitments, if any, to extend credit that would constitute First Lien Obligations.

"Discharge of Second Lien Obligations" means, except to the extent otherwise expressly provided in Section 5.5:

      (a)    payment in full in cash of the principal of and interest (including interest accruing on or after the commencement of any Insolvency or Liquidation Proceeding, whether or not such interest would be allowed in such Insolvency or Liquidation Proceeding), on all Indebtedness outstanding under the Second Lien Loan Documents;

      (b)    payment in full in cash of all other Second Lien Obligations that are due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid; and

      (c)    termination or expiration of all commitments, if any, to extend credit that would constitute Second Lien Obligations.

"Discharge of Senior Obligations" shall mean, (x) with respect to the Second Lien Claimholders, the Discharge of First Lien Obligations and (y) with respect to the Third Lien Claimholders, the Discharge of First Lien Obligations and the Discharge of Second Lien Obligations, as applicable.

"Disposition" has the meaning assigned to that term in Section 5.1(a)(2).

"First Lien Administrative Agent" has the meaning assigned to that term in the preamble to this Agreement.

"First Lien Claimholders" means, at any relevant time, the holders of First Lien Obligations at that time, including without limitation the First Lien Lenders, the First Lien Qualified Counterparties and the agents under the First Lien Loan Documents.

4

EXHIBIT 2 PAGE 93

"First Lien Collateral" means all of the assets and property of any Grantor, whether real, personal or mixed, with respect to which a Lien is granted as security for any First Lien Obligations.

"First Lien Collateral Documents" means the Security Documents (as defined in the First Lien Credit Agreement) and any other agreement, document or instrument pursuant to which a Lien is granted securing any First Lien Obligations or under which rights or remedies with respect to such Liens are governed, as the same may be amended, restated, supplemented, modified, replaced or Refinanced from time to time.

"First Lien Credit Agreement" has the meaning assigned to that term in the recitals to this Agreement.

"First Lien Lenders" means the "Lenders" under and as defined in the First Lien Loan Documents.

"First Lien Loan Documents" means the First Lien Credit Agreement and the Loan Documents (as defined in the First Lien Credit Agreement) and each of the other agreements, documents and instruments providing for or evidencing any other First Lien Obligation, and any other document or instrument executed or delivered at any time in connection with any First Lien Obligations, including any intercreditor or joinder agreement among holders of First Lien Obligations, to the extent such are effective at the relevant time, as each may be amended, restated, supplemented, modified, renewed, replaced, Refinanced or extended from time to time in accordance with the provisions of this Agreement.

"First Lien Mortgages" means a collective reference to each mortgage, deed of trust and other document or instrument under which any Lien on real property owned or leased by any Grantor is granted to secure any First Lien Obligations or under which rights or remedies with respect to any such Liens are governed, as the same may be amended, restated, supplemented, modified, replaced or Refinanced from time to time.

"First Lien Obligations" means, subject to the next sentence, all Obligations outstanding under the First Lien Credit Agreement, the other First Lien Loan Documents and the Specified Hedge Agreements entered into with any First Lien Qualified Counterparty and other additional Obligations designated by the Borrower and the First Lien Administrative Agent as "Obligations" under the First Lien Loan Documents. "First Lien Obligations" shall include all interest accrued or accruing (or which would, absent commencement of an Insolvency or Liquidation Proceeding, accrue) after commencement of an Insolvency or Liquidation Proceeding in accordance with the rate specified in the relevant First Lien Loan Document whether or not the claim for such interest is allowed as a claim in such Insolvency or Liquidation Proceeding.

"First Lien Qualified Counterparty" means a "Qualified Counterparty" as defined in the First Lien Credit Agreement.

"Governmental Authority" means any nation or government, any state or other political subdivision thereof, any agency, authority, instrumentality, regulatory

5

EXHIBIT 2 PAGE 94

body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative functions of or pertaining to government, any securities exchange and any self-regulatory organization (including the National Association of Insurance Commissioners).

"Grantors" means the Borrower, each of the Subsidiary Guarantors, if any, and each other Person that may from time to time hereafter execute and deliver a First Lien Collateral Document, a Second Lien Collateral Document or a Third Lien Collateral Documents as a "Grantor" (or the equivalent thereof).

"Hedge Agreements" mean all interest rate or currency swaps, caps or collar agreements, foreign exchange agreements, commodity contracts or similar arrangements entered into by the Borrower or its Subsidiaries providing for protection against fluctuations in interest rates, currency exchange rates, commodity prices or the exchange of nominal interest obligations, either generally or under specific contingencies.

"Hedging Obligation" of any Person means any obligation of such Person pursuant to any Specified Hedge Agreement.

"Indebtedness" means and includes all Obligations that constitute "Indebtedness" within the meaning of the First Lien Credit Agreement, the Second Lien Credit Agreement or the Third Lien Credit Agreement, as applicable.

"Insolvency or Liquidation Proceeding" means:

(a)    any voluntary or involuntary case or proceeding under the Bankruptcy Code with respect to any Grantor;

(b)    any other voluntary or involuntary insolvency, reorganization or bankruptcy case or proceeding, or any receivership, liquidation, reorganization or other similar case or proceeding with respect to any Grantor or with respect to a material portion of their respective assets;

(c)    any liquidation, dissolution, reorganization or winding up of any Grantor whether voluntary or involuntary and whether or not involving insolvency or bankruptcy; or

(d)    any assignment for the benefit of creditors or any other marshalling of assets and liabilities of any Grantor.

"Junior Agents" shall mean (a) initially, the Second Lien Administrative Agent and the Third Lien Administrative Agent, and (b) upon the occurrence of a Control Change Event, the Third Lien Administrative Agent. For the avoidance of doubt, prior to the Control Change Event, the Junior Agent with respect to the Second Lien Administrative Agent shall mean the Third Lien Administrative Agent.

"Junior Claimholders" shall mean (a) initially, the Second Lien Claimholders and the Third Lien Claimholders, and (b) upon the occurrence of a Control

6

USActive 7057057.7

EXHIBIT 2 PAGE 95

Change Event, the Third Lien Claimholders. For the avoidance of doubt, prior to the Control Change Event, the Junior Claimholders with respect to the Second Lien Claimholders shall mean the Third Lien Claimholders.

"Junior Collateral" shall mean (a) initially, the Second Lien Collateral and the Third Lien Collateral, and (b) upon the occurrence of a Control Change Event, the Third Lien Collateral. For the avoidance of doubt, prior to the Control Change Event, the Junior Collateral with respect to the Second Lien Collateral shall mean the Third Lien Collateral.

"Junior Collateral Documents" shall mean (a) initially, the Second Lien Collateral Documents and the Third Lien Collateral Documents, and (b) upon the occurrence of a Control Change Event, the Third Lien Collateral Documents. For the avoidance of doubt, prior to the Control Change Event, the Junior Collateral Documents with respect to the Second Lien Collateral Documents shall mean the Third Lien Collateral Documents.

"Junior Credit Agreement" shall mean (a) initially, the Second Lien Credit Agreement and the Third Lien Credit Agreement, and (b) upon the occurrence of a Control Change Event, the Third Lien Credit Agreement. For the avoidance of doubt, prior to the Control Change Event, the Junior Credit Agreement with respect to the Second Lien Credit Agreement shall mean the Third Lien Credit Agreement.

"Junior Lenders" shall mean (a) initially, the Second Lien Lenders and the Third Lien Lenders, and (b) upon the occurrence of a Control Change Event, the Third Lien Lenders. For the avoidance of doubt, prior to the Control Change Event, the Junior Lenders with respect to the Second Lien Lenders shall mean the Third Lien Lenders.

"Junior Loan Documents" shall mean (a) initially, the Second Lien Loan Documents and the Third Lien Loan Documents, and (b) upon the occurrence of a Control Change Event, the Third Lien Loan Documents. For the avoidance of doubt, prior to the Control Change Event, the Junior Loan Documents with respect to the Second Lien Loan Documents shall mean the Third Lien Loan Documents.

"Junior Obligations" shall mean (a) initially, the Second Lien Obligations and the Third Lien Obligations, and (b) upon the occurrence of a Control Change Event, the Third Lien Obligations. For the avoidance of doubt, prior to the Control Change Event, the Junior Obligations with respect to the Second Lien Obligations shall mean the Third Lien Obligations.

"Lien" means mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement and any capital lease having substantially the same economic effect as any of the foregoing).

7

USActive 7057057.7

EXHIBIT 2 PAGE 96

"Maximum First Priority Lien Amount" shall mean the lesser of (i) $260,000,000, and (ii) the sum of principal and/or face amounts then outstanding and any commitments in effect under the First Lien Credit Agreement and the First Lien Loan Documents.

"Maximum Second Priority Lien Amount" shall mean the lesser of (i) $85,000,000, and (ii) the sum of principal and/or face amounts then outstanding under the Second Lien Credit Agreement and the Second Lien Loan Documents.

"New Agent" has the meaning assigned to that term in Section 5.5.

"Obligations" means all obligations of every nature of each Grantor from time to time owed to any agent or trustee, the First Lien Claimholders, the Second Lien Claimholders, the Third Lien Claimholders or any of them or their respective Affiliates under the First Lien Loan Documents, the Second Lien Loan Documents, the Third Lien Loan Documents or Specified Hedge Agreements, whether for principal, interest or payments for early termination of Specified Hedge Agreements, fees, expenses, indemnification or otherwise and all guarantees of any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"Pledged Collateral" has the meaning set forth in Section 5.4.

"Qualified Counterparty" means any First Lien Qualified Counterparty, any Second Lien Qualified Counterparty or any Third Lien Qualified Counterparty.

"Recovery" has the meaning set forth in Section 6.5.

"Refinance" means, in respect of any Indebtedness, to refinance, extend, renew, defease, amend, modify, supplement, restructure, replace, refund or repay, or to issue other indebtedness, in exchange or replacement for, such Indebtedness in whole or in part. "Refinanced" and "Refinancing" shall have correlative meanings.

"Second Lien Administrative Agent" has the meaning set assigned to that term in the preamble of this Agreement.

"Second Lien Claimholders" means, at any relevant time, the holders of Second Lien Obligations at that time, including without limitation the Second Lien Lenders and the agents under the Second Lien Loan Documents.

"Second Lien Collateral" means all of the assets and property of any Grantor, whether real, personal or mixed, with respect to which a Lien is granted as security for any Second Lien Obligations.

"Second Lien Collateral Documents" means the Security Documents (as defined in the Second Lien Credit Agreement) and any other agreement, document or

8

EXHIBIT 2 PAGE 97

instrument pursuant to which a Lien is granted securing any Second Lien Obligations or under which rights or remedies with respect to such Liens are governed, as the same may be amended, restated, supplemented, modified, replaced or Refinanced from time to time.

"Second Lien Credit Agreement" has the meaning assigned to that term in the recitals to this Agreement.

"Second Lien Lenders" means the "Lenders" under and as defined in the Second Lien Credit Agreement.

"Second Lien Loan Documents" means the Second Lien Credit Agreement and the Loan Documents (as defined in the Second Lien Credit Agreement) and each of the other agreements, documents and instruments providing for or evidencing any other Second Lien Obligation, and any other document or instrument executed or delivered at any time in connection with any Second Lien Obligations, including any intercreditor or joinder agreement among holders of Second Lien Obligations to the extent such are effective at the relevant time, as each may be amended, restated, supplemented, modified, renewed, replaced, Refinanced or extended from time to time in accordance with the provisions of this Agreement.

"Second Lien Mortgages" means a collective reference to each mortgage, deed of trust and any other document or instrument under which any Lien on real property owned or leased by any Grantor is granted to secure any Second Lien Obligations or under which rights or remedies with respect to any such Liens are governed, as the same may be amended, restated, supplemented, modified, replaced or Refinanced from time to time.

"Second Lien Obligations" means all Obligations outstanding under the Second Lien Credit Agreement, the other Second Lien Loan Documents, and the Specified Hedge Agreements entered into with any Second Lien Qualified Counterparty but only to the extent such Second Lien Qualified Counterparty is not also a First Lien Qualified Counterparty. "Second Lien Obligations" shall include all interest accrued or accruing (or which would, absent commencement of an Insolvency or Liquidation Proceeding, accrue) after commencement of an Insolvency or Liquidation Proceeding in accordance with the rate specified in the relevant Second Lien Loan Document whether or not the claim for such interest is allowed as a claim in such Insolvency or Liquidation Proceeding.

"Second Lien Qualified Counterparty" means a "Qualified Counterparty" as defined in the Second Lien Credit Agreement.

"Senior Agent" shall mean (a) initially, the First Lien Administrative Agent and the Second Lien Administrative Agent, (b) upon the occurrence of a Control Change Event, the Second Lien Administrative Agent. For the avoidance of doubt, prior to the Control Change Event, the Senior Agent with respect to the Second Lien Administrative Agent shall mean the First Lien Administrative Agent.

9

EXHIBIT 2 PAGE 98

"Senior Claimholders" shall mean (a) initially, the First Lien Claimholders and the Second Lien Claimholders and (b) upon the occurrence of a Control Change Event, the Second Lien Claimholders. For the avoidance of doubt, prior to the Control Change Event, the Senior Claimholders with respect to the Second Lien Claimholders shall mean the First Lien Claimholders.

"Senior Collateral" shall mean (a) initially, the First Lien Collateral and the Second Lien Collateral, and (b) upon the occurrence of a Control Change Event, the Second Lien Collateral. For the avoidance of doubt, prior to the Control Change Event, the Senior Collateral with respect to the Second Lien Collateral shall mean the First Lien Collateral.

"Senior Collateral Documents" shall mean (a) initially, the First Lien Collateral Documents and the Second Lien Collateral Documents, and (b) upon the occurrence of a Control Change Event, the Second Lien Collateral Documents. For the avoidance of doubt, prior to the Control Change Event, the Senior Collateral Documents with respect to the Second Lien Collateral Documents shall mean the First Lien Collateral Documents.

"Senior Credit Agreement" shall mean (a) initially, the First Lien Credit Agreement and the Second Lien Credit Agreement, and (b) upon the occurrence of a Control Change Event, the Second Lien Credit Agreement. For the avoidance of doubt, prior to the Control Change Event, the Senior Credit Agreement with respect to the Second Lien Credit Agreement shall mean the First Lien Credit Agreement.

"Senior Lenders" shall mean (a) initially, the First Lien Lenders and the Second Lien Lenders, and (b) upon the occurrence of a Control Change Event, the Second Lien Lenders. For the avoidance of doubt, prior to the Control Change Event, the Senior Lenders with respect to the Second Lien Lenders shall mean the First Lien Lenders.

"Senior Loan Documents" shall mean (a) initially, the First Lien Loan Documents and the Second Lien Loan Documents, and (b) upon the occurrence of a Control Change Event, the Second Lien Loan Documents. For the avoidance of doubt, prior to the Control Change Event, the Senior Loan Documents with respect to the Second Lien Loan Documents shall mean the First Lien Loan Documents.

"Senior Obligations" shall mean (a) initially, the First Lien Obligations and the Second Lien Obligations, and (b) upon the occurrence of a Control Change Event, the Second Lien Obligations. For the avoidance of doubt, prior to the Control Change Event, the Junior Obligations with respect to the Second Lien Obligations shall mean the First Lien Obligations.

"Specified Hedge Agreement" means any Hedge Agreement entered into by the Borrower or any Subsidiary Guarantor and any Qualified Counterparty.

"Standstill Period" has the meaning set forth in Section 3.1.

10

EXHIBIT 2 PAGE 99

"Subsidiary" means, as to any Person, a corporation, partnership, limited liability company or other entity of which shares of stock or other ownership interests having ordinary voting power (other than stock or such other ownership interests having such power only by reason of the happening of a contingency) to elect a majority of the board of directors or other managers of such corporation, partnership or other entity are at the time owned, or the management of which is otherwise controlled, directly or indirectly through one or more intermediaries, or both, by such Person. Unless otherwise qualified, all references to a "Subsidiary" or to "Subsidiaries" in this Agreement shall refer to a Subsidiary or Subsidiaries of the Borrower.

"Subsidiary Guarantors" means each Subsidiary of the Borrower that is a party to the "Guarantee and Collateral Agreement" (as defined in the First Lien Credit Agreement), the "Guarantee and Collateral Agreement" (as defined in the Second Lien Credit Agreement) or the "Guarantee and Collateral Agreement" (as defined in the Third Lien Credit Agreement).

"Third Lien Administrative Agent" has the meaning set assigned to that term in the preamble of this Agreement.

"Third Lien Claimholders" means, at any relevant time, the holders of Third Lien Obligations at that time, including without limitation the Third Lien Lenders and the agents under the Third Lien Loan Documents.

"Third Lien Collateral" means all of the assets and property of any Grantor, whether real, personal or mixed, with respect to which a Lien is granted as security for any Third Lien Obligations.

"Third Lien Collateral Documents" means the Security Documents (as defined in the Third Lien Credit Agreement) and any other agreement, document or instrument pursuant to which a Lien is granted securing any Third Lien Obligations or under which rights or remedies with respect to such Liens are governed, as the same may be amended, restated, supplemented, modified, replaced or Refinanced from time to time.

"Third Lien Credit Agreement" has the meaning assigned to that term in the recitals to this Agreement.

"Third Lien Lenders" means the "Lenders" under and as defined in the Third Lien Credit Agreement.

"Third Lien Loan Documents" means the Third Lien Credit Agreement and the Loan Documents (as defined in the Third Lien Credit Agreement) and each of the other agreements, documents and instruments providing for or evidencing any other Third Lien Obligation, and any other document or instrument executed or delivered at any time in connection with any Third Lien Obligations, including any intercreditor or joinder agreement among holders of Third Lien Obligations to the extent such are effective at the relevant time, as each may be amended, restated, supplemented, modified, renewed, replaced, Refinanced or extended from time to time in accordance with the provisions of this Agreement.

11

USActive 7057057.7

EXHIBIT 2 PAGE 100

"Third Lien Mortgages" means a collective reference to each mortgage, deed of trust and any other document or instrument under which any Lien on real property owned or leased by any Grantor is granted to secure any Third Lien Obligations or under which rights or remedies with respect to any such Liens are governed, as the same may be amended, restated, supplemented, modified, replaced or Refinanced from time to time.

"Third Lien Obligations" means all Obligations outstanding under the Third Lien Credit Agreement, the other Third Lien Loan Documents, and the Specified Hedge Agreements entered into with any Third Lien Qualified Counterparty but only to the extent such Third Lien Qualified Counterparty is not also a First Lien Qualified Counterparty. "Third Lien Obligations" shall include all interest accrued or accruing (or which would, absent commencement of an Insolvency or Liquidation Proceeding, accrue) after commencement of an Insolvency or Liquidation Proceeding in accordance with the rate specified in the relevant Third Lien Loan Document whether or not the claim for such interest is allowed as a claim in such Insolvency or Liquidation Proceeding.

"Third Lien Qualified Counterparty" means a "Qualified Counterparty" as defined in the Third Lien Credit Agreement.

"Uniform Commercial Code" or "UCC" means the Uniform Commercial Code (or any similar or equivalent legislation) as in effect in any applicable jurisdiction.

1.2    Terms Generally. The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise:

(a)    any reference herein to any Person shall be construed to include such Person's permitted successors and assigns;

(b)    the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof;

(c)    all references herein to Sections shall be construed to refer to Sections of this Agreement; and

(d)    the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

12

EXHIBIT 2 PAGE 101

## SECTION 2

### LIEN PRIORITIES

**2.1** <u>Relative Priorities.</u>

    (a)   Notwithstanding the date, time, method, manner or order of grant, attachment or perfection of any Liens securing the Third Lien Obligations granted on the Collateral, any Liens securing the Second Lien Obligations granted on the Collateral or of any Liens securing the First Lien Obligations granted on the Collateral and notwithstanding any provision of the UCC, any other applicable law, the First Lien Loan Documents, the Second Lien Loan Documents, the Third Lien Loan Documents or any defect or deficiencies in, or failure to perfect, the Liens securing the First Lien Obligations, the Second Lien Obligations, the Third Lien Obligations or any other circumstance whatsoever, each Junior Agent on behalf of itself and the applicable Junior Claimholders, hereby agrees, as applicable, that:

        (i)   any Lien on the Collateral securing any First Lien Obligations now or hereafter held by or on behalf of the First Lien Administrative Agent or any First Lien Claimholders or any agent or trustee therefor, regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be senior in all respects and prior to any Lien on the Collateral securing any Junior Obligations;

        (ii)   any Lien on the Collateral securing any Second Lien Obligations now or hereafter held by or on behalf of the Second Lien Administrative Agent or any Second Lien Claimholders or any agent or trustee therefor, regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be senior in all respects and prior to any Lien on the Collateral securing any Third Lien Obligations;

        (iii)   any Lien on the Collateral securing any Junior Obligations now or hereafter held by or on behalf of any Junior Agent, any Junior Claimholders or any agent or trustee therefor regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Collateral securing any Senior Obligations. All Liens on the Collateral securing any First Lien Obligations shall be and remain senior in all respects and prior to all Liens on the Collateral securing any Junior Obligations for all purposes, whether or not such Liens securing any First Lien Obligations are subordinated to any Lien securing any other obligation of the Borrower, any other Grantor or any other Person; and

        (iv)   any Lien on the Collateral securing any Third Lien Obligations now or hereafter held by or on behalf of the Third Lien

13

EXHIBIT 2 PAGE 102

Administrative Agent, any Third Lien Claimholders or any agent or trustee therefor regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Collateral securing any Second Lien Obligations.

(b)     Each Junior Agent, on behalf of itself and the applicable Junior Claimholders, acknowledges that a portion of the First Lien Obligations represents debt that is revolving in nature and that the amount thereof that may be outstanding at any time or from time to time may be increased or reduced and subsequently reborrowed, and the terms of the First Lien Obligations may be modified, extended or amended from time to time, and that the aggregate amount of the First Lien Obligations may be increased, replaced or refinanced, in each event, without notice to or consent by the Junior Claimholders and without affecting the provisions hereof. The lien priorities provided in Section 2.1(a) shall not be altered or otherwise affected by any such amendment, modification, supplement, extension, repayment, reborrowing, increase, replacement, renewal, restatement or refinancing of any of the First Lien Obligations, the Second Lien Obligations or the Third Lien Obligations, or any portion thereof.

2.2     Prohibition on Contesting Liens. Each of (a) the Third Lien Administrative Agent, for itself and on behalf of each Third Lien Claimholder, (b) Second Lien Administrative Agent, for itself and on behalf of each Second Lien Claimholder, and (c) the First Lien Administrative Agent, for itself and on behalf of each First Lien Claimholder, agrees that it will not (and hereby waives any right to) contest or support any other Person in contesting, in any proceeding (including any Insolvency or Liquidation Proceeding), the priority, validity or enforceability of a Lien held (x) by or on behalf of any of the First Lien Claimholders in the First Lien Collateral, (y) by or on behalf of any of the Second Lien Claimholders in the Second Lien Collateral or (z) by or on behalf of any of the Third Lien Claimholders in the Third Lien Collateral, as the case may be, or the provisions of this Agreement; provided that (A) nothing in this Agreement shall be construed to prevent or impair the rights of any Senior Agent or any Senior Claimholder to enforce this Agreement, including the provisions of this Agreement relating to the priority of the Liens securing the applicable Senior Obligations as provided in Sections 2.1 and 3.1.

2.3     No New Liens. So long as the Discharge of First Lien Obligations or the Discharge of Second Lien Obligations has not occurred, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against the Borrower or any other Grantor, the parties hereto agree that the Borrower shall not, and shall not permit any other Grantor to:

(a)     grant or permit any additional Liens on any asset or property to secure any Third Lien Obligation or any Second Lien Obligation unless it has granted or concurrently grants a Lien on such asset or property to secure the First Lien Obligations; or

14

USActive 7067057.7

EXHIBIT 2 PAGE 103

(b)     grant or permit any additional Liens on any asset or property to secure any Third Lien Obligation unless it has granted or concurrently grants a Lien on such asset or property to secure the Second Lien Obligations; or

(c)     grant or permit any additional Liens on any asset or property to secure any First Lien Obligations unless it has granted or concurrently grants a Lien on such asset or property to secure the Second Lien Obligations and the Third Lien Obligations; or

(d)     grant or permit any additional Liens on any asset or property to secure any Second Lien Obligations unless it has granted or concurrently grants a Lien on such asset or property to secure the Third Lien Obligations.

To the extent that the foregoing provisions are not complied with for any reason, without limiting any other rights and remedies available to the Senior Agent and/or the Senior Claimholders, each Junior Agent, on behalf of each Junior Claimholder agrees that any amounts received by or distributed to any of them pursuant to or as a result of Liens granted in contravention of this Section 2.3 shall be subject to Section 4.2.

2.4     <u>Similar Liens and Agreements</u>.  The parties hereto agree that it is their intention that the First Lien Collateral, the Second Lien Collateral and the Third Lien Collateral be identical.  In furtherance of the foregoing and of Section 8.9, the parties hereto agree, subject to the other provisions of this Agreement:

(a)     upon request by the First Lien Administrative Agent, the Second Lien Administrative Agent or the Third Lien Administrative Agent, to cooperate in good faith (and to direct their counsel to cooperate in good faith) from time to time in order to determine the specific items included in the First Lien Collateral, the Second Lien Collateral and the Third Lien Collateral and the steps taken to perfect their respective Liens thereon and the identity of the respective parties obligated under the First Lien Loan Documents, the Second Lien Loan Documents and the Third Lien Loan Documents; and

(b)     that the documents and agreements creating or evidencing the First Lien Collateral, the Second Lien Collateral and the Third Lien Collateral and guarantees for the First Lien Obligations, the Second Lien Obligations and the Third Lien Obligations, subject to Section 5.3(d), shall be in all material respects the same forms of documents other than with respect to the first lien, the second lien and third lien nature of the Obligations thereunder.

15

## SECTION 3

## ENFORCEMENT

3.1 <u>Exercise of Remedies</u>.

(a)   Until the Discharge of Senior Obligations has occurred, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against Borrower or any other Grantor, the Junior Agents and the Junior Lien Claimholders:

(1)   will not exercise or seek to exercise any rights or remedies with respect to any Collateral (including, without limitation, the exercise of any right of setoff or any right under any lockbox agreement, account control agreement, landlord waiver or bailee's letter or similar agreement or arrangement to which any Junior Agent or any Junior Lien Claimholder is a party) or institute any action or proceeding with respect to such rights or remedies (including any action of foreclosure); <u>provided, however</u>, that:

(A)   prior to the occurrence of a Control Change Event, (x) the Second Lien Administrative Agent may exercise any or all such rights or remedies after the passage of a period of at least 180 days has elapsed since:  (i) the date on which the Second Lien Administrative Agent declared the existence of any Event of Default under any Second Lien Loan Document and demanded the repayment of all the principal amount of any Second Lien Obligations; and (ii) the date on which the First Lien Administrative Agent received notice from the Second Lien Administrative Agent of its intent to exercise such rights or remedies (the "<u>First Standstill Period</u>") and (y) the Third Lien Administrative Agent may exercise any or all such rights or remedies after the passage of a period of (i) at least 30 days has elapsed since the last day of the First Standstill Period; and (ii) at least 210 days has elapsed since the date on which the First Lien Administrative Agent and the Second Lien Administrative Agent have received notice from the Third Lien Administrative Agent of its intent to exercise such rights or remedies (the "<u>Second Standstill Period</u>"); and

(B)   on or after the occurrence of a Control Change Event, (x) the Third Lien Administrative Agent may exercise any or all such rights or remedies after the passage of a period of at least 180 days has elapsed since:  (i) the date on which the Third Lien Administrative Agent declared the existence of any Event of Default under any Third Lien Loan Document and demanded the repayment of all the principal amount of any Third Lien Obligations; and (ii) the date on which the Second Lien Administrative Agent received notice from the Third Lien Administrative Agent of its intent to exercise such rights or remedies (the "<u>Third Standstill Period</u>", and together with the First Standstill Period and the Second Standstill Period, the "<u>Standstill Periods</u>");

16

USActive 7057057.7

EXHIBIT 2 PAGE 105

(C) provided, further, however, that notwithstanding anything herein to the contrary, in no event shall any Junior Agent or any Junior Claimholder exercise any rights or remedies with respect to the Collateral if, notwithstanding the expiration of any Standstill Period, the Senior Agent or Senior Claimholders shall have commenced and be diligently pursuing the exercise of their rights or remedies with respect to all or any material portion of the Collateral (prompt notice of such exercise to be given to the Junior Agents);

(2) will not contest, protest or object to any foreclosure proceeding or action brought by the Senior Agent or any Senior Claimholder or any other exercise by the Senior Agent or any Senior Claimholder of any rights and remedies relating to the Collateral under the Senior Loan Documents or otherwise;

(3) subject to their rights under clause (a)(1) above, will not object to the forbearance by the Senior Agent or the Senior Claimholders from bringing or pursuing any foreclosure proceeding or action or any other exercise of any rights or remedies relating to the Collateral, in each case so long as the respective interests of the Junior Claimholders attach to the proceeds thereof subject to the relative priorities described in Section 2;

(4) will not take or cause to be taken any action, the purpose or effect of which is to make any Lien in respect of any Junior Obligation pari passu with or senior to, or to give any Junior Claimholder any preference or priority relative to, the Liens with respect to the Senior Obligations or the Senior Claimholders with respect to any of the Collateral; and

(5) will have no right to direct either the Senior Agent or any other Senior Claimholder to exercise any right, remedy or power with respect to the Collateral or pursuant to the Senior Loan Documents.

(b) Until the Discharge of Senior Obligations has occurred, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against the Borrower or any other Grantor, subject to Section 3.1(a)(1), the most senior Senior Agent and the most senior Senior Claimholders shall have the right to enforce rights, exercise remedies (including set off and the right to credit bid their debt) and make determinations regarding the release, disposition, or restrictions with respect to the Collateral without any consultation with or the consent of the Junior Agents or any Junior Claimholder. In exercising rights and remedies with respect to the Collateral, the most senior Senior Agent and the most senior Senior Claimholders may enforce the provisions of the most senior Senior Loan Documents and exercise remedies thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion. Such exercise and enforcement shall include the rights of an agent appointed by them to sell or otherwise dispose of Collateral upon foreclosure, to incur expenses in connection with such sale or disposition, and to exercise all the rights and remedies of a secured creditor under the Uniform Commercial Code and of a secured creditor under Bankruptcy Laws

17

USActive 7057087.7

EXHIBIT 2 PAGE 106

of any applicable jurisdiction. The most senior Senior Agent agrees to provide at least the lesser of (1) five days' or (2) the number of days remaining in the applicable Standstill Period, notice to the Junior Agents of its intent to exercise and enforce its rights and remedies with respect to a material portion of the Collateral.

(c)     Notwithstanding the foregoing, the Junior Agents and any Junior Claimholder may:

(1)     file a claim or statement of interest with respect to the applicable Junior Obligations; provided that an Insolvency or Liquidation Proceeding has been commenced by or against the Borrower or any other Grantor;

(2)     take any action (not adverse to the priority status of the Liens on the Collateral securing the Senior Obligations, or the rights of any Senior Agent or the Senior Claimholders to exercise remedies in respect thereof) in order to create, perfect, preserve or protect its Lien on the Collateral;

(3)     file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims of the Junior Claimholders, including without limitation any claims secured by the Collateral, if any, in each case in accordance with the terms of this Agreement;

(4)     vote on any plan of reorganization, file any proof of claim, make other filings and make any arguments and motions that are, in each case, in accordance with the terms of this Agreement, with respect to the applicable Junior Obligations and the Collateral; and

(5)     exercise any of its rights or remedies with respect to the Collateral after the termination of the Standstill Period to the extent permitted by Section 3.1(a)(1).

Each of the Junior Agents, on behalf of itself and the applicable Junior Claimholders, agrees that it will not take or receive any Collateral or any proceeds of Collateral in connection with the exercise of any right or remedy (including set-off) with respect to any Collateral in its capacity as a secured creditor, unless and until the applicable Discharge of Senior Obligations has occurred, except as expressly provided in Section 3.1(a). Without limiting the generality of the foregoing, unless and until the Discharge of Senior Obligations has occurred, except as expressly provided in Sections 3.1(a) and 3.1(c), the sole right of the Junior Agents and the Junior Claimholders with respect to the Collateral is to hold a Lien on the Collateral pursuant to the applicable Junior Collateral Documents for the period and to the extent granted therein and to receive a share of the proceeds thereof, if any, after the applicable Discharge of Senior Obligations has occurred.

18

USActive 7057057.7

EXHIBIT 2 PAGE 107

(d) Subject to Sections 3.1(a) and (c):

(1). each of the Junior Agents, for itself and on behalf of the applicable Junior Claimholders, agrees that such Junior Agent and the applicable Junior Claimholders will not take any action that would hinder any exercise of remedies under the Senior Loan Documents or is otherwise prohibited hereunder, including any sale, lease, exchange, transfer or other disposition of the Collateral, whether by foreclosure or otherwise;

(2) each of the Junior Agents, for itself and on behalf of the applicable Junior Claimholders, hereby waives any and all rights it or the applicable Junior Claimholders may have as a junior lien creditor or otherwise to consent to or object to the manner in which the Senior Agent or the Senior Claimholders seek to enforce or collect the Senior Obligations or the Liens securing Senior Obligations granted in any of the Senior Collateral undertaken in accordance with this Agreement, regardless of whether any action or failure to act by or on behalf of the Senior Agent or Senior Claimholders is adverse to the interest of the Senior Claimholders; and

(3) each of the Junior Agents hereby acknowledges and agrees that no covenant, agreement or restriction contained in the applicable Junior Collateral Documents or any other Junior Loan Document (other than this Agreement) shall be deemed to restrict in any way the rights and remedies of the Senior Agent or the Senior Claimholders with respect to the Collateral as set forth in this Agreement and the Senior Credit Documents.

(e) Except as specifically set forth in Sections 3.1(a) and (d), the Junior Agents and the Junior Claimholders may exercise rights and remedies as unsecured creditors against Borrower or any other Grantor that has guaranteed or granted Liens to secure the Junior Obligations in accordance with the terms of the applicable Junior Loan Documents and applicable law; provided that in the event that any Junior Claimholder becomes a judgment Lien creditor in respect of Collateral as a result of its enforcement of its rights as an unsecured creditor with respect to the applicable Junior Obligations, such judgment Lien shall be subject to the terms of this Agreement for all purposes (including in relation to the Senior Obligations) as the other Liens securing the Junior Obligations subject to this Agreement.

(f) Except as specifically set forth in Sections 3.1(a) and (d), nothing in this Agreement shall prohibit the receipt by any Junior Agent or any Junior Claimholders of the required payments of interest, principal and other amounts owed in respect of the applicable Junior Obligations so long as such receipt is not the direct or indirect result of the exercise by such Junior Agent or any Junior Claimholders of rights or remedies as a secured creditor (including set off) or enforcement in contravention of this Agreement of any Lien held by any of them. Nothing in this Agreement impairs or otherwise adversely affects any rights or remedies the Senior Agent or the Senior Claimholders may have with respect to the Senior Collateral.

19

EXHIBIT 2 PAGE 108

# SECTION 4

## PAYMENTS

**4.1** _Application of Proceeds._ (a) So long as the Discharge of First Lien Obligations has not occurred, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against the Borrower or any other Grantor, Collateral or proceeds thereof received in connection with the sale or other disposition of, or collection on, such Collateral upon the exercise of remedies by the First Lien Administrative Agent or First Lien Claimholders, shall be applied by the First Lien Administrative Agent to the First Lien Obligations in such order as specified in the relevant First Lien Loan Documents. Upon the Discharge of First Lien Obligations, the First Lien Administrative Agent shall deliver to the Second Lien Administrative Agent any Collateral and proceeds of Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct to be applied by the Second Lien Administrative Agent to the Second Lien Obligations in such order as specified in the Second Lien Collateral Documents.

**(b)** After the occurrence of the Discharge of First Lien Obligations, so long as the Discharge of Second Lien Obligations has not occurred, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against the Borrower or any other Grantor, Collateral or proceeds thereof received in connection with the sale or other disposition of, or collection on, such Collateral upon the exercise of remedies by the Second Lien Administrative Agent or Second Lien Claimholders, shall be applied by the Second Lien Administrative Agent to the Second Lien Obligations in such order as specified in the relevant Second Lien Loan Documents. Upon the Discharge of Second Lien Obligations, the Second Lien Administrative Agent shall deliver to the Third Lien Administrative Agent any Collateral and proceeds of Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct to be applied by the Third Lien Administrative Agent to the Third Lien Obligations in such order as specified in the Third Lien Collateral Documents.

**4.2** _Payments Over._ So long as the Discharge of Senior Obligations has not occurred, whether or not any Insolvency or Liquidation Proceeding has been commenced by or against the Borrower or any other Grantor, any Collateral or proceeds thereof (including assets or proceeds subject to Liens referred to in the final sentence of Section 2.3) received by any Junior Agent or any Junior Claimholders in connection with the exercise of any right or remedy (including set off) relating to the Collateral shall be segregated and held in trust and forthwith paid over to the most senior Senior Agent for the benefit of the most senior Senior Claimholders in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct. The Senior Agent is hereby authorized to make any such endorsements as agent for the Junior Agents or any such Junior Claimholders. This authorization is coupled with an interest and is irrevocable until the Discharge of Senior Obligations.

20

USActive 7067057.7

EXHIBIT 2 PAGE 109

# SECTION 5

## OTHER AGREEMENTS

5.1 <u>Releases.</u> (a) If, in connection with the exercise of the most senior Senior Agent's remedies in respect of the Collateral provided for in Section 3.1, the most senior Senior Agent, for itself or on behalf of any of the applicable Senior Claimholders, releases any of its Liens on any part of the Collateral or releases any Grantor from its obligations under its guaranty of the applicable Senior Obligations, then the Liens, if any, of each Junior Agent, for itself or for the benefit of the applicable Junior Claimholders, on such Collateral, and the obligations of such Grantor under its guaranty of the Junior Obligations, shall be automatically, unconditionally and simultaneously released. Each Junior Agent, for itself or on behalf of any such applicable Junior Claimholders, promptly shall execute and deliver to the most senior Senior Agent or such Grantor such termination statements, releases and other documents as the Senior Agent or such Grantor may request to effectively confirm such release.

(b) If, in connection with any sale, lease, exchange, transfer or other disposition of any Collateral (collectively, a "<u>Disposition</u>") permitted under the terms of the most senior Senior Loan Documents (other than the exercise of the most senior Senior Agent's remedies in respect of the Collateral provided for in Section 3.1) the most senior Senior Agent, for itself or on behalf of any of the applicable Senior Claimholders, releases any of its Liens on any part of the Collateral, or releases any Grantor from its obligations under its guaranty of the applicable Senior Obligations, in each case other than (A) in connection with the Discharge of the most senior Senior Obligations and (B) after the occurrence and during the continuance of any Event of Default under any Junior Credit Agreement, then the Liens, if any, of the applicable Junior Agent, for itself or for the benefit of the applicable Junior Claimholders, on such Collateral, and the obligations of such Grantor under its guaranty of the applicable Junior Obligations, shall be automatically, unconditionally and simultaneously released. Each Junior Agent, for itself or on behalf of any such applicable Junior Claimholders, promptly shall execute and deliver to the most senior Senior Agent or such Grantor such termination statements, releases and other documents as the most senior Senior Agent or such Grantor may request to effectively confirm such release.

(c) Until the Discharge of Senior Obligations occurs, each Junior Agent, for itself and on behalf of applicable Junior Claimholders, hereby irrevocably constitutes and appoints the most senior Senior Agent and any officer or agent of the most senior Senior Agent, with full power of substitution, as its true and lawful attorney in fact with full irrevocable power and authority in the place and stead of such Junior Agent or such holder or in the most senior Senior Agent's own name, from time to time in the most senior Senior Agent's discretion, for the purpose of carrying out the terms of this Section 5.1, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary to accomplish the purposes of this Section 5.1, including any endorsements or other instruments of transfer or release. This power of attorney is coupled with an interest and is irrevocable until the Discharge of the Senior Obligations.

21

USActive 7067057.7

EXHIBIT 2 PAGE 110

(d)    Until the Discharge of First Lien Obligations occurs, to the extent that the First Lien Administrative Agent or the First Lien Claimholders (i) have released any Lien on Collateral or any Grantor from its obligation under its guaranty and any such Liens or guaranty are later reinstated or (ii) obtain any new liens or additional guarantees from Grantors, then the Second Lien Administrative Agent, for itself and for the Second Lien Claimholders, shall be granted a second priority Lien on any such Collateral and an additional guaranty, as the case may be, and the Third Lien Administrative Agent, for itself and for the Third Lien Claimholders, shall be granted a third priority Lien on any such Collateral and an additional guaranty, as the case may be.

(e)    If the Discharge of First Lien Obligation has occurred, until the Discharge of Second Lien Obligations occurs, to the extent that the Second Lien Administrative Agent or the Second Lien Claimholders (i) have released any Lien on Collateral or any Grantor from its obligation under its guaranty and any such Liens or guaranty are later reinstated or (ii) obtain any new liens or additional guarantees from Grantors, then the Third Lien Administrative Agent, for itself and for the Third Lien Claimholders, shall be granted a third priority Lien on any such Collateral and an additional guaranty, as the case may be.

5.2    Insurance.  (a) Unless and until the Discharge of First Lien Obligations has occurred, the First Lien Administrative Agent and the First Lien Claimholders shall have the sole and exclusive right, subject to the rights of the Grantors under the First Lien Loan Documents, to adjust settlement for any insurance policy covering the Collateral in the event of any loss thereunder and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) affecting the Collateral.  Unless and until the Discharge of First Lien Obligations has occurred, and subject to the rights of the Grantors under the First Lien Collateral Documents, all proceeds of any such policies and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect to the Collateral shall be paid to the First Lien Administrative Agent for the benefit of the First Lien Claimholders pursuant to the terms of the First Lien Loan Documents and thereafter, to the extent no First Lien Obligations are outstanding, and subject to the rights of the Grantors under the Second Lien Collateral Documents, to the Second Lien Administrative Agent for the benefit of the Second Lien Claimholders to the extent required under the Second Lien Collateral Documents and then, to the extent no Second Lien Obligations are outstanding, and subject to the rights of the Grantors under the Third Lien Collateral Documents, to the Third Lien Administrative Agent for the benefit of the Third Lien Claimholders to the extent required under the Third Lien Collateral Documents and then, to the extent no Third Lien Obligations are outstanding, to the owner of the subject property, such other Person as may be entitled thereto or as a court of competent jurisdiction may otherwise direct.  Until the Discharge of First Lien Obligations has occurred, if any Junior Agent or any Junior Claimholders shall, at any time, receive any proceeds of any such insurance policy or any such award or payment in contravention of this Agreement, it shall pay such proceeds over to the Senior Agent in accordance with the terms of Section 4.2 of this Agreement.

22

EXHIBIT 2 PAGE 111

(b) If the Discharge of First Lien Obligation has occurred, unless and until the Discharge of Second Lien Obligations has occurred, the Second Lien Administrative Agent and the Second Lien Claimholders shall have the sole and exclusive right, subject to the rights of the Grantors under the First Lien Loan Documents, to adjust settlement for any insurance policy covering the Collateral in the event of any loss thereunder and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) affecting the Collateral. If the Discharge of First Lien Obligation has occurred, unless and until the Discharge of Second Lien Obligations has occurred, and subject to the rights of the Grantors under the Second Lien Collateral Documents, all proceeds of any such policies and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect to the Collateral shall be paid to the Second Lien Administrative Agent for the benefit of the Second Lien Claimholders pursuant to the terms of the Second Lien Loan Documents and thereafter, to the extent no Second Lien Obligations are outstanding, and subject to the rights of the Grantors under the Third Lien Collateral Documents, to the Third Lien Administrative Agent for the benefit of the Third Lien Claimholders to the extent required under the Third Lien Collateral Documents and then, to the extent no Third Lien Obligations are outstanding, to the owner of the subject property, such other Person as may be entitled thereto or as a court of competent jurisdiction may otherwise direct. Until the Discharge of Second Lien Obligations has occurred, if the Third Lien Administrative Agent or any Third Lien Claimholders shall, at any time, receive any proceeds of any such insurance policy or any such award or payment in contravention of this Agreement, it shall pay such proceeds over to the Second Lien Administrative Agent in accordance with the terms of Section 4.2 of this Agreement.

5.3 <u>Amendments to First Lien Loan Documents, Second Lien Loan Documents and Third Lien Loan Documents.</u> (a) The First Lien Loan Documents may be amended, supplemented or otherwise modified in accordance with their terms and the First Lien Credit Agreement may be Refinanced, in each case, without notice to, or the consent of, the Junior Agents or the Junior Claimholders, all without affecting the lien subordination or other provisions of this Agreement; <u>provided, however,</u> that the holders of such Refinancing debt bind themselves in a writing addressed to each Junior Agent and the Junior Claimholders to the terms of this Agreement and any such amendment, supplement, modification or Refinancing shall not:

(1) contravene the provisions of this Agreement.

(2) increase the sum of the then outstanding aggregate principal amount of the First Lien Obligations in excess of the Maximum First Priority Lien Amount;

(3) increase the "Applicable Margin" or similar component of the interest rate or yield provisions applicable to the First Lien Obligations by more than 3% per annum (excluding increases resulting from the accrual of interest at the default rate); or

23

USActive 7067057.7

EXHIBIT 2 PAGE 112

(4)     modify (or have the effect of a modification of) the mandatory prepayment provisions of the First Lien Credit Agreement in a manner adverse to the lenders under any Junior Credit Agreement.

(b)     Without the prior written consent of the First Lien Administrative and the Third Lien Administrative Agent, no Second Lien Loan Document may be amended, supplemented or otherwise modified or entered into to the extent such amendment, supplement or modification, or the terms of any new Second Lien Loan Document, would:

(1)     contravene the provisions of this Agreement;

(2)     increase the "Applicable Margin" or similar component of the interest rate or yield provisions applicable to the Second Lien Obligations by more than 3% per annum (excluding increases resulting from the accrual of interest at the default rate);

(3)     change (to earlier dates) any dates on which payments of principal or interest are due on the Second Lien Obligations, or shorten the weighted average life to maturity of the Second Lien Obligations;

(4)     change any covenant, default or event of default thereunder in a manner adverse to the loan parties thereunder;

(5)     change any financial maintenance covenant therein in a manner that would not preserve, on equivalent or better economic terms, the absolute or percentage difference (whichever is greater) that exists on the date hereof between such numerical threshold or limitation in the First Lien Credit Agreement and the corresponding threshold or limitation in the Second Lien Credit Agreement or add any new financial maintenance covenant;

(6)     change the redemption, mandatory prepayment or defeasance provisions thereof or change the subordination provisions thereof (or of any guarantee thereof) in a manner adverse to the Loan Parties or the First Lien Claimholders or the Third Lien Claimholders;

(7)     change any collateral therefor (other than to release such collateral); or

(8)     increase the obligations of the loan parties thereunder or confer any additional rights on the Second Lien Lenders, in each case that would have a materially adverse effect on the loan parties under the First Lien Credit Agreement, the First Lien Claimholders, Third Lien Credit Agreement or the Third Lien Claimholders.

(c)     Without the prior written consent of the First Lien Administrative Agent and the Second Lien Administrative Agent, no Third Lien Loan Document may be amended, supplemented or otherwise modified or entered into to the extent such

24

EXHIBIT 2 PAGE 113

amendment, supplement or modification, or the terms of any new Third Lien Loan Document, would:

    (1) contravene the provisions of this Agreement;

    (2) increase the "Applicable Margin" or similar component of the interest rate or yield provisions applicable to the Third Lien Obligations by more than 3% per annum (excluding increases resulting from the accrual of interest at the default rate);

    (3) change (to earlier dates) any dates on which payments of principal or interest are due on the Third Lien Obligations, or shorten the weighted average life to maturity of the Third Lien Obligations;

    (4) change any covenant, default or event of default thereunder in a manner adverse to the loan parties thereunder;

    (5) change any financial maintenance covenant therein in a manner that would not preserve, on equivalent or better economic terms, the absolute or percentage difference (whichever is greater) that exists on the date hereof between such numerical threshold or limitation in the First Lien Credit Agreement (or, after the Discharge of First Lien Obligation, the Second Lien Credit Agreement) and the corresponding threshold or limitation in the Third Lien Credit Agreement or add any new financial maintenance covenant;

    (6) change the redemption, mandatory prepayment or defeasance provisions thereof or change the subordination provisions thereof (or of any guarantee thereof) in a manner adverse to the Loan Parties or the First Lien Claimholders and the Second Lien Claimholders;

    (7) change any collateral therefor (other than to release such collateral); or

    (8) increase the obligations of the loan parties thereunder or confer any additional rights on the Third Lien Lenders, in each case that would have a materially adverse effect on the loan parties under the First Lien Credit Agreement, the First Lien Claimholders, the Second Lien Credit Agreement or the Second Lien Claimholders.

  Each of the Junior Credit Agreements may be Refinanced to the extent the terms and conditions of such Refinancing debt are no less favorable in the aggregate to the Borrower and the Grantors and to the Senior Lenders or the other Senior Obligations than the Junior Loan Documents (as determined in the reasonable opinion of the Senior Agent, acting on behalf of the "Required Lenders" (as defined in the Senior Credit Agreement)), the average life to maturity thereof is greater than or equal to that of any Junior Credit Agreement and all other terms and provisions of such Refinancing debt are reasonably acceptable to the Senior Agent and the holders of such Refinancing debt bind themselves in writing to the terms of this Agreement.

25

USActive 7057057.7

EXHIBIT 2 PAGE 114

(d)     The Borrower agrees that each Junior Collateral Document shall include the following language (or language to similar effect approved by the Senior Agent):

"Notwithstanding anything herein to the contrary, the lien and security interest granted to the [Second][Third] Lien Administrative Agent pursuant to this Agreement and the exercise of any right or remedy by the [Second][Third] Lien Administrative Agent hereunder are subject to the provisions of the Amended and Restated Intercreditor Agreement, dated as of February __, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), among Lehman Commercial Paper Inc., as First Lien Administrative Agent, Lehman Commercial Paper Inc., as Second Lien Administrative Agent, and Lehman Commercial Paper Inc., as Third Lien Administrative Agent, and certain other persons party or that may become party thereto from time to time. In the event of any conflict between the terms of the Intercreditor Agreement and this Agreement, the terms of the Intercreditor Agreement shall govern and control."

In addition, the Borrower agrees that (x) each Second Lien Mortgage covering any Collateral shall contain such other language as the First Lien Administrative Agent may reasonably request to reflect the subordination of such Second Lien Mortgage to the First Lien Collateral Document covering such Collateral and (y) each Third Lien Mortgage covering any Collateral shall contain such other language as the most senior Senior Agent may reasonably request to reflect the subordination of such Third Lien Mortgage to the Senior Collateral Document covering such Collateral.

(e)     In the event any Senior Agent or the Senior Claimholders and the relevant Grantor enter into any amendment, waiver or consent in respect of any of the Senior Collateral Documents for the purpose of adding to, or deleting from, or waiving or consenting to any departures from any provisions of, any Senior Collateral Document or changing in any manner the rights of the Senior Agent, such Senior Claimholders, the Borrower or any other Grantor thereunder, then such amendment, waiver or consent shall apply automatically to any comparable provision of each Comparable Junior Collateral Document without the consent of any Junior Agent or the Junior Claimholders and without any action by the Junior Agents, the Borrower or any other Grantor, provided, that:

(1)     no such amendment, waiver or consent shall have the effect of:

(A)     removing assets subject to the Lien of the Junior Collateral Documents, except to the extent that a release of such Lien is permitted or required by Section 5.1 of this Agreement;

(B)     imposing duties on any Junior Agent without its consent;

26

EXHIBIT 2 PAGE 115

(C)  permitting other Liens on the Collateral not permitted under the terms of the Junior Loan Documents (after such amendment, waiver or consent becomes effective) or Section 6 hereof; or

(D)  being prejudicial to the interests of the Junior Claimholders to a greater extent than the Senior Claimholders; and

(2)  notice of such amendment, waiver or consent shall have been given to the Junior Agents within ten (10) Business Days after the effective date of such amendment, waiver or consent.

(f)  Each Junior Claimholder and the Junior Agents, on behalf of itself and the applicable Junior Claimholders, agrees that it shall not at any time execute or deliver any amendment or other modification to any of the Junior Loan Documents inconsistent with or in violation of this Agreement.

(g)  Each Senior Claimholder and the Senior Agent, on behalf of itself and the Senior Claimholders, agrees that it shall not at any time execute or deliver any amendment or other modification to any of the Senior Loan Documents inconsistent with or in violation of this Agreement.

5.4  Bailee for Perfection. (a) The most senior Senior Agent agrees to hold that part of the Collateral that is in its possession or control (or in the possession or control of its agents or bailees) to the extent that possession or control thereof is taken to perfect a Lien thereon under the Uniform Commercial Code (such Collateral being the "Pledged Collateral") as collateral agent for the applicable Senior Claimholders and as bailee for the Junior Agents (such bailment being intended, among other things, to satisfy the requirements of Section 8-301(a)(2) and 9-313(c) of the Uniform Commercial Code) and any assignee solely for the purpose of perfecting the security interest granted under the most senior Senior Loan Documents and the Junior Loan Documents, respectively, subject to the terms and conditions of this Section 5.4.

(b)  The most senior Senior Agent shall have no obligation whatsoever to the Senior Claimholders, the Junior Agents or any Junior Claimholder to ensure that the Pledged Collateral is genuine or owned by any of the Grantors or to preserve rights or benefits of any Person except as expressly set forth in this Section 5.4. The duties or responsibilities of the most senior Senior Agent under this Section 5.4 shall be limited solely to holding the Pledged Collateral as bailee in accordance with this Section 5.4.

(c)  The Senior Agent acting pursuant to this Section 5.4 shall not have by reason of the Senior Collateral Documents, the Junior Collateral Documents, this Agreement or any other document a fiduciary relationship in respect of the Senior Claimholders, the Junior Agents or any Junior Claimholder.

(d)  Upon the Discharge of First Lien Obligations under the First Lien Loan Documents to which the First Lien Administrative Agent is a party, the First Lien Administrative Agent shall deliver the remaining Pledged Collateral (if any) together with any necessary endorsements, _first_, to the Second Lien Administrative Agent to the

27

USActive 7067057.7

EXHIBIT 2 PAGE 116

extent Second Lien Obligations remain outstanding, <u>second</u>, to the Third Lien Administrative Agent to the extent no First Lien Obligations or Second Lien Obligations remain outstanding, and <u>third</u>, to the Borrower to the extent no First Lien Obligations, Second Lien Obligations or Third Lien Obligations remain outstanding (in each case, so as to allow such Person to obtain control of such Pledged Collateral). The First Lien Administrative Agent further agrees to take all other action reasonably requested by the Second Lien Administrative Agent or Third Lien Administrative Agent, as applicable, in connection with the Second Lien Administrative Agent or Third Lien Administrative Agent, as applicable, obtaining a first priority interest in the Collateral or as a court of competent jurisdiction may otherwise direct.

(c)    After the occurrence of a Control Change Event and upon the Discharge of Second Lien Obligations under the Second Lien Loan Documents to which the Second Lien Administrative Agent is a party, the Second Lien Administrative Agent shall deliver the remaining Pledged Collateral (if any) together with any necessary endorsements, <u>first</u>, to the Third Lien Administrative Agent to the extent Third Lien Obligations remain outstanding, and <u>second</u>, to the Borrower to the extent no Second Lien Obligations or Third Lien Obligations remain outstanding (in each case, so as to allow such Person to obtain control of such Pledged Collateral). The Second Lien Administrative Agent further agrees to take all other action reasonably requested by the Third Lien Administrative Agent in connection with the Third Lien Administrative Agent obtaining a first priority interest in the Collateral or as a court of competent jurisdiction may otherwise direct.

5.5    <u>When Discharge of Senior Obligations Deemed to Not Have Occurred</u>. If at any time after the Discharge of Senior Obligations has occurred the Borrower thereafter enters into any Refinancing of any Senior Loan Document evidencing a Senior Obligation which Refinancing is permitted by the Junior Loan Documents, then such Discharge of Senior Obligations shall automatically be deemed not to have occurred for all purposes of this Agreement (other than with respect to any actions taken as a result of the occurrence of such first Discharge of Senior Obligations), and, from and after the date on which the New Senior Debt Notice is delivered to the Junior Agents in accordance with the next sentence, the obligations under such Refinanced Senior Loan Document shall automatically be treated as Senior Obligations for all purposes of this Agreement, including for purposes of the Lien priorities and rights in respect of Collateral set forth herein, and the Senior Agent under such Senior Loan Documents shall be the Senior Agent for all purposes of this Agreement. Upon receipt of a notice (the "New Senior Debt Notice") stating that the Borrower has entered into a new Senior Loan Document (which notice shall include the identity of the new Senior Agent, such agent, the "New Agent"), each Junior Agent shall promptly enter into such documents and agreements (including amendments or supplements to this Agreement) as the Borrower or such New Agent shall reasonably request in order to provide to the New Agent the rights contemplated hereby, in each case consistent in all material respects with the terms of this Agreement and (b) deliver to the New Agent any Pledged Collateral held by it together with any necessary endorsements (or otherwise allow the New Agent to obtain control of such Pledged Collateral), <u>provided</u> that, in the event that such New Senior Debt Notice has been delivered in connection with the Refinancing of the Second

28

USActive 7067857.7

EXHIBIT 2 PAGE 117

Lien Obligations and the Discharge of First Lien Obligations has not occurred, such
Pledged Collateral, if any, shall be delivered to the First Lien Administrative Agent. The
New Agent shall agree to be bound by the terms of this Agreement. If the new Senior
Obligations under the new Senior Loan Documents are secured by assets of the Grantors
constituting Collateral that do not also secure the Junior Obligations, then the Junior
Obligations shall be secured at such time by a second priority (or third priority, as
applicable) Lien on such assets to the same extent provided in this Agreement and the
applicable Junior Collateral Documents.

5.6  Purchase Right. (a)  Without prejudice to the enforcement of the
First Lien Claimholders remedies, the First Lien Claimholders agree at any time
following an acceleration of the First Lien Obligations in accordance with the terms of
the First Lien Credit Agreement, the First Lien Claimholders will offer the Second Lien
Claimholders the option to purchase the entire aggregate amount of outstanding First
Lien Obligations (including unfunded commitments under the First Lien Credit
Agreement) at par (without regard to any prepayment penalty or premium), without
warranty or representation or recourse, on a pro rata basis across First Lien Claimholders.
The Second Lien Claimholders shall irrevocably accept or reject such offer within ten
(10) Business Days of the receipt thereof (the "Acceptance Deadline") and the parties
shall endeavor to close promptly thereafter; provided, however, that if the Second Lien
Claimholders do not unanimously reject or accept such offer, the First Lien Claimholders
shall give notice of same (the "Second Offer Notice") to the Second Lien Claimholders
who elected to accept such offer (the "Accepting Claimholders"), and one or more of the
Accepting Claimholders shall have the right to purchase the remaining portion of the
outstanding First Lien Obligations not accepted by the Acceptance Deadline within five
(5) Business Days of receipt of the Second Offer Notice (with the allocation of such
remaining portion made on a pro rata basis among the Accepting Claimholders who
desire to purchase such remaining portion). If one or more of the Second Lien
Claimholders accept such offer, it shall be exercised pursuant to documentation mutually
acceptable to each of the First Lien Administrative Agent and the Second Lien
Administrative Agent. If such offer is rejected (or the Second Lien Claimholders do not
accept such offer within the required timeframe), the First Lien Claimholders shall have
no further obligations pursuant to this Section 5.6(a) and may take any further actions in
their sole discretion in accordance with the First Lien Loan Documents and this
Agreement.

(b)  Without prejudice to the enforcement of the First Lien
Claimholders remedies or the Second Lien Claimholders remedies, the First Lien
Claimholders and the Second Lien Claimholders agree at any time the First Lien
Claimholders offer the Second Lien Claimholders the option to purchase the First Lien
Obligations pursuant to Section 5.6 above, (a) the First Lien Claimholders will
concurrently offer the Third Lien Claimholders the option to purchase the entire
aggregate amount of outstanding First Lien Obligations (including unfunded
commitments under the First Lien Credit Agreement) at par (without regard to any
prepayment penalty or premium), without warranty or representation or recourse, on a
pro rata basis across First Lien Claimholders and (b) the Second Lien Claimholders will
concurrently offer the Third Lien Claimholders the option to purchase the entire

29

EXHIBIT 2 PAGE 118

aggregate amount of outstanding Second Lien Obligations at par (without regard to any prepayment penalty or premium), without warranty or representation or recourse, on a pro rata basis across Second Lien Claimholders. The Third Lien Claimholders shall irrevocably accept or reject both offers within ten (10) Business Days of the receipt thereof (the "Third Lien Option Acceptance Deadline") and the parties shall endeavor to close promptly thereafter, provided that, (i) if the Third Lien Claimholders elect to accept any such offer, the Third Lien Claimholders shall be required accept both offers, (ii) if the Third Lien Claimholders elect to accept the offers, the Third Lien Claimholders shall purchase the entire amount of the First Lien Obligations and the Second Lien Obligations and (iii) in the event that the Third Lien Claimholders elect to accept the offers, the Third Lien Claimholders shall have the exclusive right to purchase both the First Lien Obligations and the Second Lien Obligations and such right shall supersede the offer made by the First Lien Claimholder to the Second Lien Claimholders pursuant to Section 5.6(a). If the Third Lien Claimholders accept such offers, they shall be exercised pursuant to documentation acceptable to each of the First Lien Administrative Agent, the Second Lien Administrative Agent and the Third Lien Administrative Agent. If such offer is rejected (or the Third Lien Claimholders do not accept such offer within the required timeframe), the First Lien Claimholders and the Second Lien Claimholders shall have no further obligations pursuant to this Section 5.6(b) and may take any further actions in their sole discretion in accordance with the First Lien Loan Documents or the Second Lien Loan Documents, as applicable, and this Agreement.

## SECTION 6

### INSOLVENCY OR LIQUIDATION PROCEEDINGS

6.1    Finance and Sale Issues.    Until the Discharge of Senior Obligations has occurred, if the Borrower or any other Grantor shall be subject to any Insolvency or Liquidation Proceeding and the most senior Senior Agent shall desire to permit the use of "Cash Collateral" (as such term is defined in Section 363(a) of the Bankruptcy Code), on which the most senior Senior Agent or any other creditor has a Lien or to permit the Borrower or any other Grantor to obtain financing, whether from the most senior Senior Claimholders or any other entity under Section 364 of the Bankruptcy Code or any similar Bankruptcy Law ("DIP Financing"), then each Junior Agent, on behalf of itself and the applicable Junior Claimholders, agrees that it will raise no objection to such Cash Collateral use or DIP Financing and will not request adequate protection or any other relief in connection therewith (except, as expressly agreed by the most senior Senior Agent or to the extent permitted by Section 6.3) and, to the extent the Liens securing the most senior Senior Obligations are subordinated to or pari passu with such DIP Financing, the Junior Agents will subordinate their respective Liens in the Collateral to the Liens securing such DIP Financing (and all Obligations relating thereto). Each Junior Agent on behalf of the applicable Junior Claimholders, agrees that it will raise no objection to, and not oppose, a motion to sell or otherwise dispose of any Collateral free and clear of its Liens or other claims under Section 363 of the Bankruptcy Code if the requisite most senior Senior Claimholders have consented to such sale or disposition of such assets, and such motion does not impair the rights of the Junior Claimholders under Section 363(k) of the Bankruptcy Code.

30

USActive 7057057.7

EXHIBIT 2 PAGE 119

6.2    <u>Relief from the Automatic Stay.</u>  Until the Discharge of Senior Obligations has occurred, each Junior Agent, on behalf of itself and the applicable Junior Claimholders, agrees that none of them shall seek (or support any other Person seeking) relief from the automatic stay or any other stay in any Insolvency or Liquidation Proceeding in respect of the Collateral, without the prior written consent of the most senior Senior Agent.

6.3    <u>Adequate Protection.</u>

(a)    Each Junior Agent, on behalf of itself and the Junior Claimholders, agrees that none of them shall contest (or support any other Person contesting):

(1)    any request by the Senior Agent or the Senior Claimholders for adequate protection; or

(2)    any objection by the Senior Agent or the Senior Claimholders to any motion, relief, action or proceeding based on the Senior Agent or the Senior Claimholders claiming a lack of adequate protection.

(b)    Notwithstanding the foregoing provisions in this Section 6.3, in any Insolvency or Liquidation Proceeding:

(1)    if the Senior Claimholders (or any subset thereof) are granted adequate protection in the form of additional collateral in connection with any Cash Collateral use or DIP Financing, then each Junior Agent, on behalf of itself or any of the applicable Junior Claimholders, may seek or request adequate protection in the form of a Lien on such additional collateral, which Lien will be subordinated to the Liens securing the Senior Obligations and such Cash Collateral use or DIP Financing (and all Obligations relating thereto) on the same basis as the other Liens securing the Junior Obligations are so subordinated to the Senior Obligations under this Agreement; and

(2)    in the event a Junior Agent, on behalf of itself and the applicable Junior Claimholders, seeks or requests adequate protection in respect of the applicable Junior Obligations and such adequate protection is granted in the form of additional collateral, then such Junior Agent, on behalf of itself or any of the applicable Junior Claimholders, agrees that the Senior Agent shall also be granted a senior Lien on such additional collateral as security for the Senior Obligations and for any Cash Collateral use or DIP Financing provided by the Senior Claimholders and that any Lien on such additional collateral securing the Junior Obligations shall be subordinated to the Lien on such additional collateral securing the Senior Obligations and any such DIP Financing provided by the Senior Claimholders (and all Obligations relating thereto) and to any other Liens granted to the Senior Claimholders as adequate protection on the same basis as the other Liens securing the Junior Obligations are so subordinated to such Senior Obligations under this Agreement. Except as otherwise expressly set forth in Section 6.1 of this Agreement or in connection with the exercise of remedies with

31

EXHIBIT 2 PAGE 120

respect to the Collateral, nothing herein shall limit the rights of the Junior Agents or the Junior Claimholders from seeking adequate protection with respect to their rights in the Collateral in any Insolvency or Liquidation Proceeding (including, without limitation, adequate protection in the form of cash payments of interest or otherwise).

6.4     No Waiver.  Subject to Sections 3.1(a) and (d) of this Agreement, nothing contained herein shall prohibit or in any way limit the Senior Agent or any Senior Claimholder from objecting in any Insolvency or Liquidation Proceeding or otherwise to any action taken by a Junior Agent or any of the Junior Claimholders, including the seeking by any Junior Agent or any Junior Claimholders of adequate protection or the asserting by such Junior Agent or any Junior Lien Claimholders of any of its rights and remedies under the applicable Junior Loan Documents or otherwise.

6.5     Avoidance Issues.  If any Senior Claimholder is required in any Insolvency or Liquidation Proceeding or otherwise to turn over or otherwise pay to the estate of the Borrower or any other Grantor any amount paid in respect of Senior Obligations (a "Recovery"), then the Senior Obligations shall be reinstated to the extent of such Recovery and deemed to be outstanding as if such payment had not occurred and the Discharge of Senior Obligations, if it shall have occurred, shall be deemed not to have occurred.  If this Agreement shall have been terminated prior to such Recovery, this Agreement shall be reinstated in full force and effect, and such prior termination shall not diminish, release, discharge, impair or otherwise affect the obligations of the parties hereto from such date of reinstatement.  The Junior Claimholders agree that none of them shall be entitled to benefit from any avoidance action affecting or otherwise relating to any distribution or allocation made in accordance with this Agreement, whether by preference or otherwise, it being understood and agreed that the benefit of such avoidance action otherwise allocable to them shall instead be allocated and turned over for application in accordance with the priorities set forth in this Agreement.

6.6     Reorganization Securities.  If, in any Insolvency or Liquidation Proceeding, debt obligations of the reorganized debtor secured by Liens upon any property of the reorganized debtor are distributed pursuant to a plan of reorganization or similar dispositive restructuring plan, both on account of the Senior Obligations and on account of Junior Obligations, then, to the extent the debt obligations distributed on account of the Senior Obligations and on account of the Junior Obligations are secured by Liens upon the same property, the provisions of this Agreement will survive the distribution of such debt obligations pursuant to such plan and will apply with like effect to the Liens securing such debt obligations..

6.7     Post-Petition Interest.  (a) Neither the Junior Agents nor any Junior Claimholder shall oppose or seek to challenge any claim by any Senior Agent or any Senior Claimholder for allowance in any Insolvency or Liquidation Proceeding of Senior Obligations consisting of post-petition interest, fees or expenses.

(b)     Neither the Senior Agents nor any other Senior Claimholder shall oppose or seek to challenge any claim by any Junior Agent or any Junior Claimholder for

32

USActive 7067057.7

EXHIBIT 2 PAGE 121

allowance in any Insolvency or Liquidation Proceeding of the applicable Junior Obligations consisting of post-petition interest, fees or expenses to the extent of the value of the Lien of the Junior Agent on behalf of the Junior Claimholders on the Collateral (after taking into account the Senior Collateral).

6.8  Waiver.  Each Junior Agent, for itself and on behalf of the applicable Junior Claimholders, waives any claim it may hereafter have against any Senior Claimholder arising out of the election of any Senior Claimholder of the application of Section 1111(b)(2) of the Bankruptcy Code, and/or out of any cash collateral or financing arrangement or out of any grant of a security interest in connection with the Collateral in any Insolvency or Liquidation Proceeding.

6.9  Separate Grants of Security and Separate Classification.  The Third Lien Administrative Agent, for itself and on behalf of the Third Lien Claimholders, the Second Lien Administrative Agent, for itself and on behalf of the Second Lien Claimholders, and the First Lien Administrative Agent for itself and on behalf of the First Lien Claimholders, acknowledges and agrees that (a) the grants of Liens pursuant to the First Lien Collateral Documents, the Second Lien Collateral Documents and the Third Lien Collateral Documents constitute three separate and distinct grants of Liens; and (b) because of, among other things, their differing rights in the Collateral, each of the Third Lien Obligations, Second Lien Obligations and First Lien Obligations are fundamentally different from each other and must be separately classified in any plan of reorganization proposed or adopted in an Insolvency or Liquidation Proceeding.  To further effectuate the intent of the parties as provided in the immediately proceeding sentence, if it is held that the claims of the Senior Claimholders and the Junior Claimholders in respect of the Collateral constitute only one secured claim (rather than separate classes of senior and junior secured claims), then each of the parties hereto hereby acknowledges and agrees that, subject to Sections 2.1 and 4.1, all distributions shall be made as if there were separate classes of senior and junior secured claims against the Grantors in respect of the Collateral (with the effect being that, to the extent that the aggregate value of the Collateral is sufficient (for this purpose ignoring all claims held by the Junior Claimholders), the Senior Claimholders shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other claims, all amounts owing in respect of post-petition interest, including any additional interest payable pursuant to the Senior Credit Agreement, arising from or related to a default, which is disallowed as a claim in any Insolvency or Liquidation Proceeding) before any distribution is made in respect of the claims held by the Junior Claimholders, with each Junior Agent, for itself and on behalf of the applicable Junior Claimholders, hereby acknowledging and agreeing to turn over to the Senior Agent, for itself and on behalf of the Senior Claimholders, amounts otherwise received or receivable by them to the extent necessary to effectuate the intent of this sentence, even if such turnover has the effect of reducing the claim or recovery of such Junior Claimholders.

6.10  Proofs of Claim.  Subject to the limitations set forth in this Agreement, the most senior Senior Agent may file proofs of claim and other pleadings and motions with respect to any Senior Obligations, any Junior Obligations or the Collateral in any Insolvency or Liquidation Proceeding. If a proper proof of claim has not

USActive 7067057.7

EXHIBIT 2 PAGE 122

been filed in the form required in such Insolvency or Liquidation Proceeding at least ten (10) days prior to the expiration of the time for filing thereof, the most senior Senior Agent shall have the right (but not the duty) to file an appropriate claim for and on behalf of the Junior Claimholders with respect to any of the Junior Obligations or any of the Collateral; provided that the most senior Senior Agent shall have provided written notice of its intent to file a proof of claim on behalf of the Junior Claimholders to the applicable Junior Agent at least the lesser of (x) three (3) days and (y) the number of days remaining in the ten (10) day period described in this sentence, in each case before so filing. In furtherance of the foregoing, the Junior Agent hereby appoints the most senior Senior Agent as its attorney-in-fact, with full authority in the place and stead of the Junior Agent and full power of substitution and in the name of the Junior Claimholders or otherwise, to execute and deliver any document or instrument that the Administrative Agent is required or permitted to deliver pursuant to this Section 6.10, such appointment being coupled with an interest and irrevocable.

6.11   Plans of Reorganization. None of the Junior Agents nor any of the Junior Claimholders shall support or vote in favor of any plan of reorganization (and each shall have voted to reject any plan of reorganization) unless such plan (a) provides for payment in full in cash of the Senior Obligations, or (b) is accepted by the class of holders of Senior Obligations voting thereon and is supported by the Senior Agent.

6.12   Other Matters.  To the extent that a Junior Agent or any Junior Claimholder has or acquires rights under Section 363 or 364 of the Bankruptcy Code with respect to any of the Collateral, such Junior Agent agrees, on behalf of itself and the other applicable Junior Claimholders not to assert any of such rights without the prior written consent of the First Lien Administrative Agent, provided that, if requested by the First Lien Administrative Agent, the Second Lien Administrative Agent shall timely exercise such rights in the manner requested by the First Lien Administrative Agent, including any rights to payments in respect of such rights.

6.13   Effectiveness in Insolvency Proceedings.  This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under section 510(a) of the Bankruptcy Code, shall be effective before, during and after the commencement of an Insolvency Proceeding.

## SECTION 7

## RELIANCE; WAIVERS; ETC.

7.1   Reliance.  Other than any reliance on the terms of this Agreement, each Senior Agent, on behalf of itself and the applicable Senior Claimholders under the applicable Senior Loan Documents, acknowledges that it and such Senior Claimholders have, independently and without reliance on any Junior Agent or any Junior Claimholders, and based on documents and information deemed by them appropriate, made their own credit analysis and decision to enter into such Senior Loan Documents and be bound by the terms of this Agreement and they will continue to make their own credit decision in taking or not taking any action under the applicable Senior Credit

34

USActive 7067057.7

EXHIBIT 2 PAGE 123

Agreement or this Agreement. Each Junior Agent, on behalf of itself and the Junior Claimholders, acknowledges that it and the Junior Claimholders have, independently and without reliance on the Senior Agent or any Senior Claimholder, and based on documents and information deemed by them appropriate, made their own credit analysis and decision to enter into each of the Junior Loan Documents and be bound by the terms of this Agreement and they will continue to make their own credit decision in taking or not taking any action under the Junior Loan Documents or this Agreement.

7.2    No Warranties or Liability. Each Senior Agent, on behalf of itself and the applicable Senior Claimholders under the applicable Senior Loan Documents, acknowledges and agrees that each of the Junior Agent and the Junior Claimholders have made no express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectibility or enforceability of any of the Junior Loan Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon. Except as otherwise provided herein, the Junior Claimholders will be entitled to manage and supervise their respective loans and extensions of credit under the Junior Loan Documents in accordance with law and as they may otherwise, in their sole discretion, deem appropriate. Except as otherwise provided herein, the Junior Agent, on behalf of itself and the Junior Obligations, acknowledges and agrees that the Senior Agents and the Senior Claimholders have made no express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectibility or enforceability of any of the Senior Loan Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon. Except as otherwise provided herein, the Senior Claimholders will be entitled to manage and supervise their respective loans and extensions of credit under their respective Senior Loan Documents in accordance with law and as they may otherwise, in their sole discretion, deem appropriate. The Junior Agents and the Junior Claimholders shall have no duty to the Senior Agents or any of the Senior Claimholders, and the Senior Agents and the Senior Claimholders shall have no duty to any of Junior Agents or any of the Junior Claimholders, to act or refrain from acting in a manner which allows, or results in, the occurrence or continuance of an event of default or default under any agreements with the Borrower or any other Grantor (including the Senior Loan Documents and the Junior Loan Documents), regardless of any knowledge thereof which they may have or be charged with.

7.3    No Waiver of Lien Priorities. (a) No right of the Senior Claimholders, the Senior Agents or any of them to enforce any provision of this Agreement or any Senior Loan Document shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of the Borrower or any other Grantor or by any act or failure to act by any Senior Claimholder or any Senior Agent, or by any noncompliance by any Person with the terms, provisions and covenants of this Agreement, any of the Senior Loan Documents or any of the Junior Loan Documents, regardless of any knowledge thereof which the Senior Agents or the Senior Claimholders, or any of them, may have or be otherwise charged with.

(b)    Without in any way limiting the generality of the foregoing paragraph (but subject to the rights of the Borrower and the other Grantors under the

35

USActive 7067057.7

EXHIBIT 2 PAGE 124

Senior Loan Documents and subject to the provisions of Section 5.3(a)), the Senior
Claimholders, the Senior Agent and any of them may, at any time and from time to time
in accordance with the Senior Loan Documents and/or applicable law, without the
consent of, or notice to, the Junior Agents or any Junior Claimholders, without incurring
any liabilities to the Junior Agents or any Junior Claimholders and without impairing or
releasing the Lien priorities and other benefits provided in this Agreement (even if any
right of subrogation or other right or remedy of the Junior Agents or any Junior
Claimholders is affected, impaired or extinguished thereby) do any one or more of the
following:

    (1)    change the manner, place or terms of payment or change or
extend the time of payment of, or amend, renew, exchange, increase or alter, the
terms of any of the Senior Obligations or any Lien on any Senior Collateral or
guaranty thereof or any liability of the Borrower or any other Grantor, or any
liability incurred directly or indirectly in respect thereof (including any increase in
or extension of the Senior Obligations, without any restriction as to the tenor or
terms of any such increase or extension) or otherwise amend, renew, exchange,
extend, modify or supplement in any manner any Liens held by the Senior Agent
or any of the Senior Claimholders, the Senior Obligations or any of the Senior
Loan Documents; provided that any such increase in the Senior Obligations shall
not increase the principal amount of the Senior Obligations to an amount in
excess of the Maximum Second Priority Lien Amount;

    (2)    sell, exchange, release, surrender, realize upon, enforce or
otherwise deal with in any manner and in any order any part of the Senior
Collateral or any liability of the Borrower or any other Grantor to the Senior
Claimholders or the Senior Agent, or any liability incurred directly or indirectly in
respect thereof;

    (3)    settle or compromise any Senior Obligation or any other
liability of the Borrower or any other Grantor or any security therefor or any
liability incurred directly or indirectly in respect thereof and apply any sums by
whomsoever paid and however realized to any liability (including the Senior
Obligations) in any manner or order; and

    (4)    exercise or delay in or refrain from exercising any right or
remedy against the Borrower or any security or any other Grantor or any other
Person, elect any remedy and otherwise deal freely with the Borrower, any other
Grantor or any Senior Collateral and any security and any guarantor or any
liability of the Borrower or any other Grantor to the Senior Claimholders or any
liability incurred directly or indirectly in respect thereof.

    (c)    Except as otherwise provided herein, each of the Junior Agents, on
behalf of itself and the applicable Claimholders, also agrees that the Senior Claimholders
and the Senior Agent shall have no liability to the Junior Agents or any Junior
Claimholders, and each Junior Agent, on behalf of itself and the applicable Junior
Claimholders, hereby waives any claim against any Senior Claimholder or the Senior

36

EXHIBIT 2 PAGE 125

Agent, arising out of any and all actions which the Senior Claimholders or the Senior Agent may take or permit or omit to take with respect to:

      (1)    the Senior Loan Documents;

      (2)    the collection of the Senior Obligations; or

      (3)    the foreclosure upon, or sale, liquidation or other disposition of, any Senior Collateral. Each Junior Agent, on behalf of itself and the applicable Junior Claimholders, agrees that the Senior Claimholders and the Senior Agent have no duty to them in respect of the maintenance or preservation of the Senior Collateral, the Senior Obligations or otherwise.

      (d)    Until the Discharge of Senior Obligations, each Junior Agent, on behalf of itself and the applicable Junior Claimholders, agrees not to assert and hereby waives, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or otherwise claim the benefit of, any marshalling, appraisal, valuation or other similar right that may otherwise be available under applicable law with respect to the Collateral or any other similar rights a junior secured creditor may have under applicable law.

      7.4    <u>Obligations Unconditional</u>. All rights, interests, agreements and obligations of the Senior Agent and the Senior Claimholders and each Junior Agent and the applicable Junior Claimholders, respectively, hereunder shall remain in full force and effect irrespective of:

      (a)    any lack of validity or enforceability of any Senior Loan Documents or any Junior Loan Documents;

      (b)    except as otherwise expressly set forth in this Agreement, any change in the time, manner or place of payment of, or in any other terms of, all or any of the Senior Obligations or Junior Obligations, or any amendment or waiver or other modification, including any increase in the amount thereof, whether by course of conduct or otherwise, of the terms of any Senior Loan Document or any Junior Loan Document;

      (c)    except as otherwise expressly set forth in this Agreement, any exchange, release, voiding, avoidance or non-perfection of any security interest in any Collateral or any other collateral, or any amendment, waiver or other modification, whether in writing or by course of conduct or otherwise, or any refinancing, replacement, refunding or restatement of all or a portion of all or any of the Senior Obligations or Junior Obligations or any guaranty thereof;

      (d)    the commencement of any Insolvency or Liquidation Proceeding in respect of the Borrower or any other Grantor; or

      (e)    any other circumstances which otherwise might constitute a defense available to, or a discharge of, the Borrower or any other Grantor in respect of

37

EXHIBIT 2 PAGE 126

the Senior Agent, the Senior Obligations, or any Senior Claimholder, the Junior Agents, the Junior Obligations or any Junior Claimholder in respect of this Agreement.

## SECTION 8

## MISCELLANEOUS

8.1 <u>Conflicts</u>. In the event of any conflict between the provisions of this Agreement and the provisions of the First Lien Loan Documents, the Second Lien Loan Documents or the Third Lien Loan Documents, the provisions of this Agreement shall govern and control.

8.2 <u>Effectiveness; Continuing Nature of this Agreement; Severability</u>. This Agreement shall become effective when executed and delivered by the parties hereto. This is a continuing agreement of lien subordination and the Senior Claimholders may continue, at any time and without notice to the Junior Agents or any Junior Claimholder subject to the applicable Junior Loan Documents, to extend credit and other financial accommodations and lend monies to or for the benefit of Borrower or any Grantor constituting Senior Obligations in reliance hereof. Each Junior Agent, on behalf of itself and the Junior Claimholders, hereby waives any right it may have under applicable law to revoke this Agreement or any of the provisions of this Agreement. The terms of this Agreement shall survive, and shall continue in full force and effect, in any Insolvency or Liquidation Proceeding. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. All references to Borrower or any other Grantor shall include Borrower or such Grantor as debtor and debtor in possession and any receiver or trustee for Borrower or such Guarantor in any Insolvency or Liquidation Proceeding. This Agreement shall terminate and be of no further force and effect:

(a) with respect to the Senior Agent, the Senior Claimholders and the Senior Obligations, the date of Discharge of Senior Obligations, subject to the rights of the Senior Claimholders under Section 6.5; and

(b) with respect to the Junior Agents, the Junior Claimholders and the Junior Obligations, upon the later of (1) the date upon which the obligations under the Junior Credit Agreement terminate if there are no other Junior Obligations outstanding on such date and (2) if there are other Junior Obligations outstanding on such date, the date upon which such Junior Obligations terminate.

8.3 <u>Amendments; Waivers</u>.

(a) No amendment, modification or waiver of any of the provisions of this Agreement by the Third Lien Administrative Agent, the Second Lien Administrative Agent or the First Lien Administrative Agent shall be deemed to be made unless the same shall be in writing signed on behalf of each party hereto or its authorized agent and each

38

USActive 7067057.7

EXHIBIT 2 PAGE 127

waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the parties making such waiver or the obligations of the other parties to such party in any other respect or at any other time. Notwithstanding the foregoing, the Borrower shall not have any right to consent to or approve any amendment, modification or waiver of any provision of this Agreement except to the extent their rights are directly affected (which includes, but is not limited to any amendment to the Grantors' ability to cause additional obligations to constitute First Lien Obligations, Second Lien Obligations or Third Lien Obligations as the Borrower may designate).

(b)     It is understood that the First Lien Administrative Agent, the Second Lien Administrative Agent and the Third Lien Administrative Agent, without the consent of any other First Lien Claimholder, Second Lien Claimholder or Third Lien Claimholder, may in their discretion determine that a supplemental agreement (which may take the form of any amendment and restatement of this Agreement) is necessary or appropriate to facilitate having additional indebtedness or other obligations ("Additional Debt") of any of the Loan Parties become First Lien Obligations, Second Lien Obligations or Third Lien Obligations, as the case may be, under this Agreement, which supplemental agreement shall specify whether such Additional Debt constitutes First Lien Obligations, Second Lien Obligations or Third Lien Obligations, provided, that such Additional Debt is permitted to be incurred by the First Lien Credit Agreement, the Second Lien Credit Agreement and the Third Lien Credit Agreement then extant, and is permitted by said Agreements to be subject to the provisions of this Agreement as First Lien Obligations, Second Lien Obligations or Third Lien Obligations, as applicable.

8.4     Information Concerning Financial Condition of the Borrower and their Subsidiaries. Each of the First Lien Administrative Agent and the First Lien Claimholders, the Second Lien Claimholders and the Second Lien Administrative Agent, the Third Lien Claimholders and the Third Lien Administrative Agent, shall each be responsible for keeping themselves informed of (a) the financial condition of the Borrower and their respective Subsidiaries and all endorsers and/or guarantors of the First Lien Obligations, the Second Lien Obligations or the Third Lien Obligations and (b) all other circumstances bearing upon the risk of nonpayment of the First Lien Obligations, the Second Lien Obligations or the Third Lien Obligations. The Senior Agent and the Senior Claimholders shall have no duty to advise the Junior Agents or any Junior Claimholder of information known to it or them regarding such condition or any such circumstances or otherwise. In the event the Senior Agent or any of the Senior Claimholders, in its or their sole discretion, undertakes at any time or from time to time to provide any such information to the Junior Agents or any Junior Claimholder, it or they shall be under no obligation:

(a)     to make, and the Senior Agent and the Senior Claimholders shall not make, any express or implied representation or warranty, including with respect to the accuracy, completeness, truthfulness or validity of any such information so provided;

(b)     to provide any additional information or to provide any such information on any subsequent occasion;

39

EXHIBIT 2 PAGE 128

(c)     to undertake any investigation; or

(d)     to disclose any information which, pursuant to accepted or reasonable commercial finance practices, such party wishes to maintain confidential or is otherwise required to maintain confidential.

8.5     <u>Subrogation</u>. With respect to the value of any payments or distributions in cash, property or other assets that any of the Junior Claimholders or any of the Junior Agents pays over to the Senior Agent or the Senior Claimholders under the terms of this Agreement, the Junior Claimholders and the Junior Agents shall be subrogated to the rights of the Senior Agent and the Senior Claimholders; <u>provided</u> that, each Junior Agent, on behalf of itself and the Junior Claimholders, hereby agrees not to assert or enforce all such rights of subrogation it may acquire as a result of any payment hereunder until the Discharge of Senior Obligations has occurred. The Borrower acknowledge and agree that the value of any payments or distributions in cash, property or other assets received by any Junior Agent or the Junior Claimholders that are paid over to the Senior Agent or the Senior Claimholders pursuant to this Agreement shall not reduce any of the Junior Obligations.

8.6     <u>Application of Payments</u>. All payments received by the Senior Agent or the Senior Claimholders may be applied, reversed and reapplied, in whole or in part, to such part of the Senior Obligations provided for in the Senior Loan Documents. Each Junior Administrative Agent, on behalf of itself and the applicable Junior Claimholders, assents to any extension or postponement of the time of payment, subject to Section 5.3(a)(3), of the Senior Obligations or any part thereof and to any other indulgence with respect thereto, to any substitution, exchange or release of any security which may at any time secure any part of the Senior Obligations and to the addition or release of any other Person primarily or secondarily liable therefor.

8.7     <u>SUBMISSION TO JURISDICTION; WAIVERS</u>. (a) ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY ARISING OUT OF OR RELATING HERETO MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE, COUNTY AND CITY OF NEW YORK. BY EXECUTING AND DELIVERING THIS AGREEMENT, EACH PARTY, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY:

(1)     ACCEPTS GENERALLY AND UNCONDITIONALLY THE NONEXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS;

(2)     WAIVES ANY DEFENSE OF FORUM NON CONVENIENS;

(3)     AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO

40

USActive 7067057.7

EXHIBIT 2 PAGE 129

THE APPLICABLE PARTY AT ITS ADDRESS PROVIDED IN
ACCORDANCE WITH SECTION 8.8; AND.

(4)     AGREES THAT SERVICE AS PROVIDED IN CLAUSE
(3) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION
OVER THE APPLICABLE PARTY IN ANY SUCH PROCEEDING IN ANY
SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND
BINDING SERVICE IN EVERY RESPECT.

(b)     EACH OF THE PARTIES HERETO HEREBY AGREES TO
WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR
CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER. THE SCOPE OF
THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL
DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE
SUBJECT MATTER HEREOF, INCLUDING CONTRACT CLAIMS, TORT CLAIMS,
BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND
STATUTORY CLAIMS. EACH PARTY HERETO ACKNOWLEDGES THAT THIS
WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS
RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN
ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO
RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS. EACH PARTY
HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED
THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND
VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING
CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE,
MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN
WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY
REFERRING TO THIS SECTION 8.7(b) AND EXECUTED BY EACH OF THE
PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT
AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO.
IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A
WRITTEN CONSENT TO A TRIAL BY THE COURT.

(c)     EACH OF THE PARTIES HERETO WAIVES ANY RIGHT IT
MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON,
OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT
OR ANY OTHER FIRST LIEN LOAN DOCUMENT, SECOND LIEN LOAN
DOCUMENT OR THIRD LIEN LOAN DOCUMENT, OR ANY COURSE OF
CONDUCT, COURSE OF DEALING, VERBAL OR WRITTEN STATEMENT OR
ACTION OF ANY PARTY HERETO.

8.8     Notices. All notices to the First Lien Claimholders, the Second
Lien Claimholders and the Third Lien Claimholders and permitted or required under this
Agreement shall also be sent to the First Lien Administrative Agent, the Second Lien
Administrative Agent and the Third Lien Administrative Agent, respectively. Unless
otherwise specifically provided herein, all notices shall be in writing (including by
telecopy), and, unless otherwise expressly provided herein, shall be deemed to have been

41

USActive 7087057.7

EXHIBIT 2 PAGE 130

duly given or made when delivered, or three Business Days after being deposited in the mail, postage prepaid, or, in the case of telecopy notice, when received; provided, that any notice, request or demand to or upon any First Lien Claimholder, Second Lien Claimholder, Third Lien Claimholder, the First Lien Administrative Agent, the Second Lien Administrative Agent or the Third Lien Administrative Agent shall not be effective until received. For the purposes hereof, the addresses of the parties hereto shall be as set forth below each party's name on the signature pages hereto, or, as to each party, at such other address as may be designated by such party in a written notice to all of the other parties.

Notices and other communications to the parties hereunder may be delivered or furnished by electronic communications pursuant to procedures approved by the Senior Agent. Any of the First Lien Claimholders, Second Lien Claimholders, Third Lien Claimholders, the First Lien Administrative Agent, the Second Lien Administrative Agent, the Third Lien Administrative Agent or the Borrower may, each in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.

8.9   Further Assurances.  The First Lien Administrative Agent, on behalf of itself and the First Lien Claimholders under the First Lien Loan Documents, and the Second Lien Administrative Agent, on behalf of itself and the Second Lien Claimholders under the Second Lien Loan Documents, and the Third Lien Administrative Agent, on behalf of itself and the Third Lien Claimholders under the Third Lien Loan Documents and the Borrower, agree that each of them shall take such further action and shall execute and deliver such additional documents and instruments (in recordable form, if requested) as the First Lien Administrative Agent, the Second Lien Administrative Agent or the Third Lien Administrative Agent may reasonably request to effectuate the terms of and the Lien priorities contemplated by this Agreement.

8.10   APPLICABLE LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

8.11   Binding on Successors and Assigns.  This Agreement shall be binding upon the First Lien Administrative Agent, the First Lien Claimholders, the Second Lien Administrative Agent, the Second Lien Claimholders, the Third Lien Administrative Agent, the Third Lien Claimholders and their respective successors and assigns.

8.12   Specific Performance.  Each of the First Lien Administrative Agent, the Second Lien Administrative Agent and the Third Lien Administrative Agent may demand specific performance of this Agreement. The First Lien Administrative Agent, on behalf of itself and the First Lien Claimholders under the First Lien Loan Documents, the Second Lien Administrative Agent, on behalf of itself and the Second Lien Claimholders, and the Third Lien Administrative Agent, on behalf of itself and the Third Lien Claimholders hereby irrevocably waive any defense based on the adequacy of

42

USActive 7067057.7

EXHIBIT 2 PAGE 131

a remedy at law and any other defense which might be asserted to bar the remedy of specific performance in any action which may be brought by the First Lien Administrative Agent or the First Lien Claimholders, the Second Lien Administrative Agent or the Second Lien Claimholders, or the Third Lien Administrative Agent or the Third Lien Claimholders as the case may be.

8.13    Headings. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

8.14    Counterparts. This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Agreement or any document or instrument delivered in connection herewith by telecopy shall be effective as delivery of a manually executed counterpart of this Agreement or such other document or instrument, as applicable.

8.15    Authorization. By its signature, each Person executing this Agreement on behalf of a party hereto represents and warrants to the other parties hereto that it is duly authorized to execute this Agreement.

8.16    No Third Party Beneficiaries. This Agreement and the rights and benefits hereof shall inure to the benefit of each of the parties hereto and its respective successors and assigns and shall inure to the benefit of each of the First Lien Claimholders, the Second Lien Claimholders and the Third Lien Claimholders. No other Person shall have or be entitled to assert rights or benefits hereunder. Nothing in this Agreement shall impair, as between the Borrower and the other Grantors and the First Lien Administrative Agent and the First Lien Claimholders, or as between the Borrower and the other Grantors and the Second Lien Administrative Agent and the Second Lien Claimholders, or as between the Borrower and the other Grantors and the Third Lien Administrative Agent and the Third Lien Claimholders, the obligations of the Borrower and the other Grantors to pay principal, interest, fees and other amounts as provided in the First Lien Loan Documents, the Second Lien Loan Documents and the Third Lien Loan Documents, respectively.

8.17    Provisions Solely to Define Relative Rights. The provisions of this Agreement are and are intended solely for the purpose of defining the relative rights of the First Lien Claimholders, the Second Lien Claimholders and the Third Lien Claimholders on the other hand. None of the Borrower, any other Grantor or any other creditor thereof shall have any rights hereunder and neither the Borrower nor any Grantor may rely on the terms hereof. Nothing in this Agreement is intended to or shall impair the obligations of the Borrower or any other Grantor, which are absolute and unconditional, to pay the First Lien Obligations, the Second Lien Obligations or the Third Lien Obligations as and when the same shall become due and payable in accordance with their terms.

43

EXHIBIT 2 PAGE 132

[signature pages follow]

44

USActive 7067057.7

EXHIBIT 2 PAGE 133

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

<u>FIRST LIEN ADMINISTRATIVE AGENT</u>

LEHMAN COMMERCIAL PAPER INC.,
as First Lien Administrative Agent

By: _____
Name:
Title:      Francis X. Gilhool
            Authorized Signatory

Address for notices:

[Signature Page for Amended and Restated Intercreditor Agreement]

EXHIBIT 2 PAGE 134

SECOND LIEN ADMINISTRATIVE AGENT

LEHMAN COMMERCIAL PAPER INC.,
as Second Lien Administrative Agent

By: _____
Name:
Title:    Francis X. Gilhool
          Authorized Signatory

Address for notices:

[Signature Page for Amended and Restated Intercreditor Agreement]

EXHIBIT 2 PAGE 135

THIRD LIEN ADMINISTRATIVE AGENT

LEHMAN COMMERCIAL PAPER INC.,
as Third Lien Administrative Agent

By: _____
Name:
Title:    Francis X. Gilhool.
       Authorized Signatory

Address for notices:

[Signature Page for Amended and Restated Intercreditor Agreement]

EXHIBIT 2 PAGE 136

Consent of the Borrower

The Borrower has read the foregoing Agreement and consents thereto. The Borrower agrees not to take any action that would be contrary to the provisions of the foregoing Agreement as they relate to the relative rights of the First Lien Claimholders, Second Lien Claimholders and Third Lien Claimholders, provided, however, that nothing in the foregoing Agreement shall amend, modify, change or supersede the First Lien Loan Documents, the Second Lien Loan Documents or the Third Lien Loan Documents as among the Borrower, on the one hand, and the First Lien Claimholders, the Second Lien Claimholders and the Third Lien Claimholders, as applicable, on the other hand. The Borrower understands that the foregoing Agreement is for the sole benefit of the First Lien Claimholders, the Second Lien Claimholders and the Third Lien Claimholders and their respective successors and assigns, and that none of the Borrower nor any Subsidiary of the Borrower is an intended beneficiary or third party beneficiary thereof.

LBREP/L-SUNCAL MASTER I LLC,

By: _____
Name: BRUCE V. COOK,
Name: Authorized Signatory

Address for notices:

2392 Morse Avenue
Irvine, CA 92614

[Amended and Restated Intercreditor Agreement Signature Page]

EXHIBIT 2 PAGE 137

# EXHIBIT 3

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  | **WEILAND, GOLDEN,**
   | **SMILEY, WANG EKVALL & STROK, LLP**
2  | Evan D. Smiley, State Bar No. 161812
   | esmiley@wgllp.com
3  | Hutchison B. Meltzer, State Bar No. 217166
   | hmeltzer@wgllp.com
4  | Robert S. Marticello, State Bar No. 244256
   | rmarticello@wgllp.com
5  | 650 Town Center Drive, Suite 950
   | Costa Mesa, CA 92626
6  | Telephone:  (714) 966-1000
   | Facsimile:   (714) 966-1002
7  |
8  | Attorneys for Alfred H. Siegel
   | Chapter 11 Trustee

9  | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

| 12 | In re | Case No. 8:08-bk-15588-ES |
| 13 | LBREP/L-Sun Cal Master I LLC, et al., | Chapter 11 |
| 14 | Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
| 15 | ___ Affects LBREP/L-SunCal Master I LLC, Only | |
| 16 | | **OVERBID PROCEDURES** |
| 17 | ___ Affects LBREP/L-SunCal McAllister Ranch LLC, Only | |
| 18 | ___ Affects LBREP/L-SunCal McSweeny Farms LLC, Only | |
| 19 | | |
| 20 | ___ Affects LBREP/L-SunCal Summerwind Ranch LLC, Only | |
| 21 | | |
| 22 | _X_ Affects All Debtors. | |

23 |     Set forth below are the overbid procedures (the "Overbid Procedures") to be

24 | employed by Alfred H. Siegel, the chapter 11 trustee (hereinafter "Seller" or "Trustee")

25 | of the jointly adminstered bankruptcy estates of LBREP/L-SunCal McAllister Ranch LLC,

26 | LBREP/L-SunCal McSweeney Farms LLC, and LBREP/L-SunCal Summerwind Ranch

27 | LLC (collectively, the "Subsidiary Debtors"), and by LBREP/L-SunCal Master I LLC,

28 | in the auction sale (the "Auction") of certain real property of the Subsidiary Debtors.

554802.1                                     OVERBID PROCEDURES

EXHIBIT 3 PAGE 138

## I.    THE PROPERTIES

LBREP/L-SunCal McAllister Ranch LLC ("McAllister Ranch LLC"), is the owner of that certain real property described on the attached Exhibit "A-1" (the "McAllister Ranch Real Property").  LBREP/L-SunCal McSweeney Farms LLC ("McSweeny Farms, LLC"), is the owner of that certain real property described on the attached Exhibit "A-2" (the "McSweeny Farms Real Property"), and LBREP/L-SunCal Summerwind Ranch LLC ("Summerwind Ranch LLC"), is the owner of that certain real property described on the attached Exhibit "A-3" (the "Summerwind Ranch Real Property").

By reason of the filing of the Bankruptcy Cases and the appointment of the Seller as the Chapter 11 trustee in those Cases, all right, title and interest of McAllister Ranch LLC in and to the McAllister Ranch Real Property, all right, title and interest of McSweeny Farms LLC in and to the McSweeny Farms Real Property, and all right, title and interest of Summerwind Ranch LLC in and to the Summerwind Ranch Real Property, became vested in the Seller, as trustee in the Bankruptcy Case of each such Debtor.  Each such property (including various rights associated with and/or appurtenant to the property) is referred to herein as a "Property," and all three Properties are referred to as the "Properties."

Trustee desires to sell each of the Properties in accordance with these Overbid Procedures.

## II.    THE LCPI LIEN AND LCPI CREDIT BID

Lehman Commercial Paper Inc. ("LCPI"), in its capacity as the administrative agent for the first-position secured lenders (the "1st Lien Lenders"), asserts a senior (first priority) lien (the "LCPI Lien") against the Properties.  The Trustee shall consult with LCPI with respect to determinations to be made by the Trustee pursuant to these Overbid Procedures, and LCPI reserves its right to object to the Trustee's determinations.  LCPI, in its capacity as the administrative agent for the 1st Lien Lenders, will be the initial bidder for each of the Properties.  LCPI's initial credit bid will be in the minimum aggregate amount of $45,000,000.00, which amount shall be allocated among the Properties (each, an

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

EXHIBIT 3 PAGE 139

1  "Initial Credit Bid" and collectively, the "Initial Credit Bids") by the Trustee and LCPI in
2  consultation with their brokers. LCPI may increase any or all of the Initial Credit Bids,
3  incrementally during the bidding process contemplated by these Overbid Procedures, and
4  in accordance with these Overbid Procedures and the Plan, not to exceed the maximum
5  allocated credit bid amounts established by the Trustee and LCPI (each, a "Maximum
6  Allocated Credit Bid Amount" and collectively, the "Maximum Credit Bid Amounts"). In the
7  event LCPI submits a bid for any Property in excess of the Maximum Allocated Credit Bid
8  Amount for that Property, the amount bid in excess of the Maximum Allocated Credit Bid
9  Amount must be paid in cash. Notwithstanding the foregoing, the Trustee reserves the
10 right, with LCPI's consent, to designate a "Stalking Horse Bidder" for the Properties and,
11 with respect to each Property, the bid of such Stalking Horse Bidder as the "Stalking
12 Horse Bid." Any "Potential Bidders" (defined below) may obtain the amount of the Initial
13 Credit Bids or the Stalking Horse Bids, as the case may be, and the Maximum Allocated
14 Credit Bid Amounts by contacting:

15                     Terry V. Ruckle

16        Land Advisors Organization - California Division

17              8105 Irvine Center Drive, Suite 1460

18                  Irvine, California 92618

19                   (949) 952-8288 x44

20               truckle@landadvisors.com

21

22  **III.   DETERMINATION OF "QUALIFIED BIDDER" STATUS**

23        Only "Qualified Bidders" may bid on a Property. LCPI will be deemed to be a
24  Qualified Bidder. Any other person (a "Potential Bidder") who wishes to participate in the
25  contemplated auction sale ("Auction") of the Properties must deliver to the Trustee's
26  counsel, Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP ("Weiland Golden"), the
27  following qualifying materials (the "Qualifying Materials") on or before the Bid Deadline
28  (defined below):

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

554802.1                              3                      OVERBID PROCEDURES

EXHIBIT 3 PAGE 140

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1.    An executed confidentiality agreement acceptable to the Trustee (the "Confidentiality Agreement");

2.    Written proof satisfactory to the Trustee that the Potential Bidder is financially capable of consummating the proposed transaction (including such financial and other information as may be requested by the Trustee to allow the Trustee to make a reasonable determination, in his sole and absolute discretion), as to the Proposed Bidder's financial and other capabilities to consummate the transaction, including financial statements, copies of recent statements of bank accounts, evidence of certified funds, and/or a commitment for financing;

3.    An executed copy of the asset purchase agreement ("APA") attached hereto as Exhibit "A," as may be modified by the Trustee, with an acknowledgement that the signed APA is binding and enforceable on the Potential Bidder and is subject only to Court approval;

4.    Proof that such Potential Bidder may be entitled to a good faith purchaser finding pursuant to 11 U.S.C. § 363(m); and

5.    Any other documents as the Trustee may reasonably request.

Qualified Bidder status shall be determined by the Trustee in his sole discretion, and no Potential Bidder shall have standing to challenge the Trustee's determination.

**IV.**   **DUE DILIGENCE**

Only Qualified Bidders may obtain Due Diligence material regarding the Properties by contacting:

Terry V. Ruckle

Land Advisors Organization - California Division

8105 Irvine Center Drive, Suite 1460

Irvine, California 92618

(949) 952-8288 x44

554802.1                              4                              OVERBID PROCEDURES

EXHIBIT 3 PAGE 141

truckle@landadvisors.com

All Due Diligence must be completed by the Bid Deadline (as defined below).

**V.**     **BID REQUIREMENTS**

Only Qualified Bidders may submit bids.  Bids for the purchase of the Properties must meet the following requirements:

1. A bid must be in writing in the form of an executed APA, with all exhibits, including the initialing by the bidder of the Liquidated Damages provision set forth in the APA.  A separate APA is required for each Property bid upon, regardless of whether a Qualified Bidder is submitting a bid for more than one Property.

2. A bid must be irrevocable and unconditional, subject to only Bankruptcy Court approval.

3. A bid must be submitted by the Bid Deadline as specified below.

4. A bid must propose a closing date no later than the "Closing Performance Date" as defined in the APA.

5. A Qualified Bidder may submit a bid for all or any one of the Properties.  In the event the bid provides for the purchase of more than one Property, the bid should specify the price offered for each Property.

6. For each Property bid upon, the amount of the bid must exceed the amount of the Initial Credit Bid or the Stalking Horse Bid , as the case may be, by not less than $10,000.00, plus the amount of the "Break-Up Fee" (defined below), if any; provided, however, that Trustee, in Trustee's sole discretion, may at any time reduce that minimum bid increment to $5,000.00, upon written or oral notice to any Qualified Bidders participating in the Auction.

7. A bid must also be accompanied by the Qualifying Materials and a deposit in the amount of $250,000.00 per Property bid upon (the "Deposit"), made by wire transfer, certified funds, or cashier's check payable to Alfred H. Siegel,

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

EXHIBIT 3 PAGE 142

1         Chapter 11 Trustee, which Deposit is refundable only if the Potential Bidder

2         is not deemed the Winning Bidder (as defined below) or if the Potential

3         Bidder is deemed the Winning Bidder but the sale could not be

4         consummated because the Trustee could not satisfy one or more conditions

5         to closing as specified in the APA.

6    8.    The bid must not request or entitle the Qualified Bidder to any break-up fee,

7         topping fee, termination fee, broker's fee, expense reimbursement, or similar

8         type of payment.

9    9.    With respect to each Property bid upon, the bid must specify the executory

10         contracts and/or unexpired leases that the Qualified Bidder requests that the

11         Trustee assume and assign.

12    A bid received from a Qualified Bidder that meets all of the above requirements

13  will be deemed a "Qualified Bid."

14

15  **VI.**    **THE BID DEADLINE**

16    The Bid Deadline is 5:00 p.m. (P.S.T.) on March 25, 2011 (the "Bid Deadline"). A

17  Qualified Bidder that desires to make a bid shall deliver four (4) written copies of the bid

18  (in the form of original executed and APA's as discussed above), with by mail or personal

19  delivery, with original signatures by the Bid Deadline to:

20                 Terry V. Ruckle

21          Land Advisors Organization - California Division

22            8105 Irvine Center Drive, Suite 1460

23              Irvine, California 92618

24               (949) 952-8288 x44

25             truckle@landadvisors.com

26    The Trustee in his sole discretion may extend the Bid Deadline once or

27  successively, but is not obligated to do so. If the Trustee extends the Bid Deadline, then

28

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 he will promptly notify all Qualified Bidders of the extension in writing. No bid will be

2 considered unless it is received on or before the Bid Deadline.

3

4 **VII. INITIAL SUCCESSFUL BID**

5      After all of the Qualified Bids have been received, the Trustee will, in his sole

6 discretion, determine the highest and best Qualified Bid received by the Bid Deadline for

7 each Property or the Properties, and will select an "Initial Successful Bid." The Qualified

8 Bidder(s) who submitted the Initial Successful Bid(s) (the "Initial Successful Bidder(s)")

9 shall be promptly notified. The Initial Successful Bidder(s) will be entitled and required to

10 purchase the Property or Properties successfully bid upon on the terms set forth in the

11 APA, unless the Initial Successful Bid is not the Winning Bid (as defined below).

12

13 **VIII. AUCTION**

14      If no Qualified Bid is received by the Trustee by the Bid Deadline, then the Trustee

15 will request that the Court approve the sale of the Properties to LCPI, and there will be no

16 Auction. If a Qualified Bid other than LCPI is timely received by the Trustee, then the

17 Trustee will hold the Auction. The Auction on the Properties will take place at 10:00 a.m.

18 (P.S.T.) on March 29, 2011, at the offices of Weiland Golden, 650 Town Center Drive,

19 Suite 950, Costa Mesa, California 92626, or such later time or other place as may be

20 determined by the Trustee in his sole discretion. Any change in the time or place of the

21 Auction shall be promptly provided in writing to all Qualified Bidders who have submitted

22 Qualified Bids. The Auction shall be governed by the following procedures:

23      1.     Only Qualified Bidders who submitted a Qualified Bid (including LCPI) are

24           eligible to attend and bid at the Auction;

25      2.     Any person attending and wishing to bid at the Auction on behalf of a

26           Qualified Bidder must certify that he or she have the authority to bind the

27           Qualified Bidder by any bid that is submitted and by the outcome of the

28           Auction;

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

554802.1

7

OVERBID PROCEDURES

EXHIBIT 3 PAGE 144

3. Only Qualified Bidders who submitted a Qualified Bid (including LCPI) may submit new bids at the Auction;

4. The Auction will be held in person;

5. The Auction will be conducted openly and with all competing bids submitted in the presence of other bidders; and

6. The bidding shall start at the amount of the Initial Successful Bid(s), which will be announced at or prior to the commencement of the Auction.

## IX.   OVERBID PROCEDURES

Qualified Bidders present at the Auction will be entitled to overbid the Initial Successful Bid(s). The Auction shall be governed by the following overbid procedures:

1. A Qualified Bidder may bid for all or any one of the Properties;

2. For each Property, the initial overbid (the "Initial Overbid") must be at least $10,000.00 more than the Initial Successful Bid;

3. For each Property, subsequent overbids must be in minimum increments of $10,000.00, provided that the Trustee, in his sole discretion, may reduce that minimum bid increment to $5,000.00, upon written or oral notice to all Qualified Bidders participating in the Auction;

4. The Auction shall continue until the Trustee determines, in his sole discretion, which bid (or bids) is the highest and best bid for the Properties (the "Winning Bid"), subject to final Bankruptcy Court approval. In making this decision, the Trustee shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the net cash proceeds to be received by the Trustee, the likelihood of the bidder's ability to close the transaction and perform thereunder, and the timing thereof. Neither the Initial Successful Bidder nor any Qualified Bidder shall have standing to challenge the Trustee's determination of the Winning Bid. The Qualified Bidder submitting such Winning Bid shall be the "Winning Bidder,"

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax714-966-1002

554802.1

8

OVERBID PROCEDURES

EXHIBIT 3 PAGE 145

and shall have such rights and responsibilities of the purchaser, as set forth in the APA;

5. The Trustee may, in his sole discretion and subject to Bankruptcy Court approval, designate one or more bids as a "Back-Up Bid", which shall become the Winning Bid if the Winning Bidder fails to consummate the sale;

6. The Winning Bid(s) and any Back-Up Bid(s) are irrevocable;

7. The Winning Bid(s) and the Back-Up Bid(s) shall be subject to Bankruptcy Court approval;

8. The difference between the Winning Bidder's Deposit of $250,000.00, required as a condition to being considered a "Qualified Bidder," and the $1,000,000.00 "Initial Deposit" required pursuant to the APA, shall be wire transferred to the Trustee within 48 hours of the conclusion of the Auction; and

9. With the exception of the 1st Lien Lenders, no holder of a lien on the Properties shall be permitted to credit bid pursuant to § 363(k) of the Bankruptcy Code.

## X.  CONFIRMATION HEARING

The results of the Auction will be confirmed and the sale of the Properties to the Winning Bidder(s) will be approved in connection with the hearing on the confirmation of the Trustee's Chapter 11 Plan held before the Bankruptcy Court on April 1, 2011 at 10:00 a.m., and, to the extent necessary, on April 8, 2011 (the "Confirmation Hearing"). Prior to the Confirmation Hearing, the Trustee will file a supplemental brief (the "Supplement") identifying the Winning Bid(s) and seeking approval of the sale of the Properties to the Winning Bidder(s). If the Auction is held after the Confirmation Hearing, then the results of the Auction will be confirmed and the sale of the Properties to the Winning Bidder(s) will be approved through a separate duly noticed proceeding. The Trustee's submission of the Winning Bid(s) to the Bankruptcy Court for approval does not contractually bind the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Smiley, Welland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1 │ Trustee to consummate the sale of the Properties to the Winning Bidder(s). The Trustee's

2 │ obligation to consummate a sale of one or more of the Properties to a Winning Bidder

3 │ shall only arise when the Bankruptcy Court approves the sale at the Confirmation Hearing

4 │ and the Winning Bidder tenders the full purchase price. If a Winning Bidder fails to

5 │ consummate the sale, then the Back-Up Bid will be deemed the new Winning Bid and the

6 │ Trustee will be authorized, but not required, to consummate the sale with the new Winning

7 │ Bidder without further order of the Bankruptcy Court. In such case, the defaulting Winning

8 │ Bidder's deposit shall be forfeited to the Trustee, and the Trustee specifically reserves the

9 │ right to seek all available damages against the defaulting Winning Bidder.

10 │

11 │ **XI. RETURN OF GOOD FAITH DEPOSIT**

12 │ Except for the Deposit of the Winning Bidder(s) and the Back-Up Bidder(s),

13 │ the Deposits shall be returned within five (5) business days after the conclusion of the

14 │ Auction. The Deposit of the Back-Up Bidder(s) shall be returned by the earlier of two (2)

15 │ business days after the closing of the sale to the applicable Winning Bidder(s) and five (5)

16 │ business days after entry of a final order approving the sale of the Properties to the

17 │ Winning Bidder(s), unless such Back-Up Bidder became the Winning Bidder, in which

18 │ case the procedures regarding the Deposit of the Winning Bidder shall govern. The

19 │ Deposit of a Winning Bidder is non-refundable if the Bankruptcy Court approves the sale

20 │ of one or more of the Properties to the Winning Bidder pursuant to the terms of the

21 │ Winning Bid. In the event the Bankruptcy Court approves the sale but the Winning Bidder

22 │ fails to close the sale, the Deposit shall be forfeited to the Trustee free and clear of any

23 │ claims or interests of the Winning Bidder, and the Trustee specifically reserves the right to

24 │ seek all available damages against the defaulting Winning Bidder.

25 │

26 │ **XII. BREAK-UP FEE AND EXPENSE REIMBURSEMENT**

27 │ There will be no break-up fees, expense reimbursements, or other fees, costs or

28 │ expenses paid to any Qualified Bidder or Proposed Bidder in connection with the Auction

1  or these Overbid Procedures; provided, however, with LCPI's consent, the Trustee may

2  agree to pay the Stalking Horse Bidder a break-up fee and/or an expense reimbursement

3  in an amount not to exceed the greater, in the aggregate, of (i) $1,000,000.00, and (ii) 2%

4  of the aggregate amount of the Stalking Horse Bids (the "Break-Up Fee").

5

6  **XIII.  MODIFICATIONS**

7      The Trustee may determine, in his sole discretion, which Qualified Bid(s), if any,

8  is/are the highest or otherwise best offer and reject at any time before the entry of an

9  order of the Bankruptcy Court approving one or more Winning Bids, any Qualified Bid that,

10  in the Trustee's sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with

11  the requirements of the Bankruptcy Code, the Overbid Procedures or the terms or

12  conditions of sale, or (iii) not within the best interest of the bankruptcy states.  At or before

13  the Confirmation Hearing, the Bankruptcy Court or the Trustee may modify the terms and

14  conditions contained herein or impose such other terms and conditions as they may

15  determine to be in the best interests of the bankruptcy estates.

16      FOR FURTHER INFORMATION concerning the Properties or the Overbid

17  Procedures, contact:

18              Terry V. Ruckle

19      Land Advisors Organization - California Division

20          8105 Irvine Center Drive, Suite 1460

21              Irvine, California 92618

22              (949) 952-8288 x44

23          truckle@landadvisors.com

24

25

26

27

28

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

554802.1                                    11                        OVERBID PROCEDURES

EXHIBIT 3 PAGE 148

Property: _____     Escrow No. _____

# AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY
# AND JOINT ESCROW INSTRUCTIONS

This Agreement for Purchase and Sale of Real Property and Joint Escrow Instructions ("**Agreement**") is made, executed and entered into on _____, 2011 ("**Execution Date**") by and between:

_____, a _____ ("**Buyer**"), who may designate another Person to accept title to the Property, and assign to that Person its rights under this Agreement, on the terms set forth in Section 3.10; and

Alfred H. Siegel ("**Seller**"), acting solely in his capacity as the chapter 11 trustee of the administratively consolidated bankruptcy estates (each, an "**Estate**") of the following chapter 11 debtors (each, a "**Debtor**"), in the following bankruptcy cases (each, a "**Bankruptcy Case**"), each of which was initiated by the filing by the Debtor of an involuntary petition pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "**Bankruptcy Court**"):

> LBREP/L-SunCal Master I LLC, a Delaware limited liability company ("**SunCal Master I LLC**"), Case No. 8:08-bk-15588-ES;

> LBREP/L-SunCal McAllister Ranch LLC, a Delaware limited liability company ("**McAllister Ranch LLC**"), Case No. 8:08-bk-15637-ES;

> LBREP/L-SunCal McSweeny Farms LLC, a Delaware limited liability company ("**McSweeny Farms LLC**"), Case No. 8:08-bk-15639-ES; and

> LBREP/L-SunCal Summerwind Ranch LLC, a Delaware limited liability company ("**Summerwind Ranch LLC**"), Case No. 8:08-bk-15640-ES;

(each, individually, a "**Party**", and both, collectively, the "**Parties**"), with regard to the following facts, circumstances, understandings and beliefs (collectively, the "**Recitals**"):

## R E C I T A L S:

A.    Section 1.1 identifies various words and phrases that have specifically assigned meanings for the purposes of this Agreement.

B.    At the time the Bankruptcy Cases were filed, McAllister Ranch LLC owned the real property (the "**McAllister Ranch Real Estate**") described on the attached Exhibit "A-1", McSweeny Farms LLC owned the real property (the "**McSweeny Farms Real Estate**") described on the attached Exhibit "A-2", and Summerwind Ranch LLC owned the real property (the "**Summerwind Ranch Real Estate**") described on the attached Exhibit "A-3".

C.    By reason of the filing of the Bankruptcy Cases and the appointment of the Seller as the Chapter 11 trustee in those Cases, all rights, titles and interests of McAllister Ranch LLC in and to the McAllister Ranch Real Estate, all rights, titles and interests of McSweeny Farms LLC in and to the McSweeny Farms Real Estate, and all rights, titles and interests of Summerwind Ranch LLC in and to the Summerwind Ranch Real Estate, became vested in the Seller, as trustee in the Bankruptcy Case of each such Debtor.

EXHIBIT 3 PAGE 149

**D.** This Agreement relates to the _____ Real Estate (the **"Real Property"**), described on the attached Exhibit "A- ", and **NOT** to the _____ Real Estate or the _____ Real Estate.

**E.** Lehman Commercial Paper Inc. (**"LCPI"**), in its capacity as the administrative agent for the first-position secured lenders, asserts a senior (first priority) lien (**"LCPI Lien"**) against the McAllister Ranch Real Estate, the McSweeny Farms Real Estate, and the Summerwind Ranch Real Estate. LCPI is the debtor in that certain Chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the Southern District of New York (**"New York Bankruptcy Court"**), which is being jointly administered under the lead case of Lehman Brothers Holdings, Inc., Case No. 08-13555 (**"LMP"**). LCPI and Seller have entered into an agreement pursuant to which LCPI has consented to the purchase and sale transaction (the **"Sale"**) contemplated by Buyer and Seller under this Agreement, which agreement was approved by the New York Bankruptcy Court pursuant to an order entered in the LCPI Bankruptcy Case on or around September 29, 2010.

**F.** Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, as a sale free and clear of liens and interests pursuant to Section 363(f) of the Bankruptcy Code, and in accordance with the terms and conditions of this Agreement, the Property, including all rights, titles and interests of Seller in and to the Real Property.

**G.** The purchase and sale of the Property pursuant to this Agreement is subject to approval by the Bankruptcy Court, and to the possibility of overbidding by other prospective purchasers.

**H.** Buyer and Seller desire that this Agreement supersede all prior and contemporaneous discussions, negotiations, understandings and agreements between Buyer and Seller relating to the purchase and sale of the Property.

**PURSUANT TO THE RECITALS**, and in consideration of the covenants, agreements, warranties, representations and declarations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions of this Agreement, the Parties, intending to be legally bound by this Agreement, hereby covenant, agree, warrant, represent and declare as follows:

## ARTICLE 1.
## DEFINITIONS, CONVENTIONS AND RULES OF CONSTRUCTION

**1.1. Definitions.** The following capitalized words and phrases will have the meaning assigned to them in this Agreement when used in this Agreement, unless the context in which such capitalized word or phrase is used reasonably prohibits the application of such meaning:

**"Affiliate"** means, with respect to any Person, any other Person that: (a) owns or controls, or is owned or controlled by, or is under common ownership or control with, such Person, whether directly or indirectly, with direct or indirect ownership of three percent (3%) or more of the equity of the Person (whether shares, membership interests or partnership interests) constituting ownership, or direct or indirect control of three percent (3%) or more of the voting interests of the Person constituting control; (b) is an officer, director, manager, managing member, managing partner or general partner of the Person; (c) is, if the Person is an officer, director, manager, managing member, managing partner or general partner, the corporation, limited liability company, partnership or other entity for which the Person acts in such capacity; or (d) is, if the Person is a human being, legally related to the Person by birth, adoption or marriage within three or fewer degrees of separation.

"Agreement" is defined in the Introductory Paragraph.

"Appeal" means any appeal, motion for reconsideration or for judgment notwithstanding a verdict, or other motion seeking to reverse, vacate, set aside or remand an entered order.

"Approval Order" is defined in Section 2.2.

"Bankruptcy Case" is defined in the Introductory Paragraph.

"Bankruptcy Code" is defined in the Introductory Paragraph.

"Bankruptcy Court" is defined in the Introductory Paragraph.

"Bankruptcy Court Approval Condition" is defined in Section 2.2.

"Benefits" means, to the extent assignable, all of Seller's rights, titles and interests, if any, in and to all deposits, pre-paid fees, fee credits and other credits, rights to reimbursements, benefits of any cost sharing agreements, insurance benefits and proceeds, California Department of Real Estate rights, deposits and reserves (including any homeowner's association reserves), community facilities districts and other assessment and benefit districts, to the extent related to the Real Property, but excluding any right, title or interest in the Reserved Matters.

"Brokerage Commission" is defined in Section 3.9.

"Business Day" means any day upon which a majority of federally insured banks within the State of California are open for business.

"Buyer" is defined in the Introductory Paragraph.

"Buyer's Agents" means Buyer's principals (including shareholders, members, limited partners and general partners), directors, officers, employees, agents, representatives, architects, engineers, accountants, attorneys, brokers, consultants and advisors.

"Buyer's Broker" means the broker identified as Buyer's Broker in Section 6.16.

"Buyer's Cost Deposit" is defined in Section 3.5.

"Buyer's Costs" is defined in Section 3.14.

"Buyer's Designee" is defined in Section 3.10.

"Buyer's Representations" is defined in Section 4.1.

"Claim" means any indebtedness, obligation, demand, allegation, cause of action, action, damage, injury, cost, charge, lien, encumbrance, levy, judgment, order, liability or claim.

"Closing" is defined in Section 3.23.

"Closing Performance Date" is defined in Section 3.12.

"Confirmation Hearing" is defined in Section 2.3.

"Conveyance Instruments" is defined in <u>Section 3.13</u>.

"Debtor" is defined in the Introductory Paragraph.

"Default" is defined in <u>Section 5.1</u>.

"Deposit" means any deposit provided for in this Agreement, including the Initial Deposit and Buyer's Cost Deposit.

"Dollars" or "$" will mean and refer to United States Dollars.

"Escrow" is defined in <u>Section 3.2</u>.

"Escrow Holder" means the escrow company or title company escrow department identified as Escrow Holder in <u>Section 6.16</u>.

"Excluded Matter" means and includes: (1) the Yucaipa Proceeds, (2) the MRID Deposit, (3) any litigation claims held by Seller, any of the Debtors, or any of the Estates, including any preference, fraudulent conveyance or equitable subordination claim, or (4) any cash or funds in accounts in the possession or under the control of the Trustee as of the Closing, including any cash or funds held on behalf of LCPI, any affiliate of LCPI, any of the Debtors, or any of the Estates, including approximately $13,800,000 held by the Trustee on behalf of LCPI, any affiliates of LCPI, any of the Debtors, or any of the Estates, on the Execution Date; provided, however, that (a) any cash or funds in accounts in the possession or under the control of Seller as of the Closing that has been received between the Execution Date and the Closing on account of any Benefits or Intangible Property to the extent primarily related to the Real Property will not be included in the Reserved Matters and shall be part of the assets acquired by Buyer. If for any reason Buyer or any of its affiliates receive any payments, development credits or offsets or other savings or economic benefits following the Closing from or as a result of any of the Reserved Matters, Buyer will, within ten (10) days following such time as Buyer actually receives the sums or benefit, deliver to Seller an accounting thereof along with a payment to Seller equal to the economic benefit received as of the time of the accounting. Buyer's obligations hereunder will survive the Closing.

"Execution Date" is defined in the Introductory Paragraph.

"Final Deposit" is defined in <u>Section 3.4(b)</u>.

"Government Entity" means any federal, state, county, city or other government authority of competent jurisdiction, including any official or body thereof, lawfully entitled to exercise any executive, legislative, judicial, administrative, police, regulatory or taxing authority.

"Initial Deposit" is defined in <u>Section 3.4(a)</u>.

"Intangible Property" means, to the extent assignable, all of Seller's rights, titles and interests, if any, in and to all development rights, governmental approvals and entitlements, applications, permits, variances, maps, development plans, development agreements, homeowner's association rights and benefits, engineering studies, reports and data, architectural plans, drawings and CAD files, contracts, warranties, guarantees, assurances, entitlement rights, fee credit agreements, and other rights and benefits and privileges to the extent primarily related to the Real Property, including without limitation, the specific items

EXHIBIT 3 PAGE 152

identified on the attached Exhibit "B", but excluding any right, title or interest in the Reserved Matters.

"**Interest**" means any right, title, interest, ownership, indicia of title, indicia of ownership, right of possession, or other legal, equitable or possessory interest.

"**Introductory Paragraph**" means the first paragraph of this Agreement.

"**Law**" means any statute, code, ordinance, regulation, rule, principal of common law, order or other law that is binding upon the Property or any Party, as amended from time to time.

"**LCPI**" is defined in Recital "E".

"**LCPI Bankruptcy Case**" is defined in Recital "E".

"**Lender's Endorsement**" is defined in Section 3.11(a).

"**Lien**" means any mortgage, deed of trust, security interest, pledge, hypothecation, encumbrance, mechanics lien, judgment lien, notice of pending action, or other lien.

"**Liquidated Damages**" means any damages payable to Seller pursuant to Section 5.2.

"**McAllister Ranch LLC**" is defined in the Introductory Paragraph.

"**McAllister Ranch Real Estate**" is defined in Recital "B".

"**McSweeny Farms LLC**" is defined in the Introductory Paragraph.

"**McSweeny Farms Real Estate**" is defined in Recital "B".

"**MRID Deposit**" means any and all deposits, cash or funds at, with or which are held by, the McAllister Ranch Irrigation District which are subject to a dispute by or between the parties in the adversary proceeding currently pending before the Bankruptcy Court which was filed by Superior Pipelines, Inc., as Adversary Proceeding No. 8:09-01318-ES.

"**New York Bankruptcy Court**" is defined in Recital "E".

"**Notice**" means any notice, consent, approval, acceptance, disapproval, objection, waiver, or other communication required or intended to be given pursuant to this Agreement.

"**Owner's Title Policy**" is defined in Section 3.11(a).

"**Party**" and "**Parties**" are defined in the Introductory Paragraph.

"**Permitted Title Exceptions**" is defined in Section 3.11(a).

"**Person**" means any human being, trust, estate, corporation, limited liability company, partnership, joint venture, agency, labor union, Government Entity or other entity.

"**Personal Property**" means, to the extent transferrable, all rights, titles and interests of Seller, if any, in and to the: (1) Tangible Property, (2) Intangible Property and (3) Benefits.

"Plan" is defined in <u>Section 2.3</u>.

"Pro Forma Title Policy" means the pro forma title policy attached as <u>Exhibit "D"</u>.

"Property" means, to the extent transferrable, all rights, titles and interests of Seller, if any, in and to: (1) the Real Property, and (2) the Personal Property.

"Purchase Price" is defined in <u>Section 3.3</u>.

"Real Property" is defined in <u>Recital "D"</u>, and means that the real property described on the attached Exhibit "A-_".

"Recitals" is defined in the Introductory Paragraph.

"Sale" is defined in <u>Section 2.2</u>.

"Seller" is defined in the Introductory Paragraph.

"Seller's Agents" means the principals, employees, agents, representatives, attorneys, accountants, property managers, brokers and other advisors and professionals of Seller.

"Seller's Broker" means the broker identified as Seller's Broker in <u>Section 6.16</u>.

"Seller's Costs" is defined in <u>Section 3.15</u>.

"Seller's Representations" is defined in <u>Section 4.2</u>.

"Summerwind Ranch LLC" is defined in the Introductory Paragraph.

"Summerwind Ranch Real Estate" is defined in <u>Recital "B"</u>.

"SunCal Master I LLC" is defined in the Introductory Paragraph.

"Tangible Property" means, to the extent assignable, all of Seller's rights, titles and interests, if any, in and to all equipment and other tangible personal property situated on the Real Property and intended to be used in connection with the ownership, development or physical maintenance of the Real Property, including without limitation, the specific items, if any, identified on the attached <u>Exhibit "C"</u>, but excluding any right, title or interest in the Reserved Matters, and any right, title or interest of Seller as the lessee under any lease.

"Title Report" means a current title report for the Real Property issued by Title Company.

"Yucaipa Proceeds" means any funds which Seller, any of the Debtors or any of the Estates may receive or be entitled to by reason of any settlement in effect or any litigation pending on the Execute Date, which relate primarily to the Summerwind Property, including the approximately $434,000.00 held by the Yucaipa Water District.

**1.2.** <u>Conventions</u>. This Agreement incorporates the following conventions:

**(a)** The words **"include"**, **"includes"** and **"including"** will be deemed and construed to be immediately followed by the words "without limitation".

EXHIBIT 3 PAGE 154

**(b)**    The words **"will"** and **"shall"** refer to a mandatory act or obligation, unless the context in which the word is used logically prohibits the application of this convention.

**(c)**    Unless otherwise stated, all references to **"days"** will mean calendar days, and all references to **"years"** will mean calendar years.

**(d)**    Words or phrases denoting the **singular** will include the plural, words or phrases denoting the **plural** will include the singular, and words or phrases denoting **gender** will include all genders including the masculine, feminine and neuter, unless applying this convention would be contrary to the obvious intent of this Agreement.

**(e)**    A reference to any Party or any party to any other contract or document will include such Person's **successors and permitted assigns.**

**1.3.    Rules of Construction.**    The provisions of this Agreement will be liberally construed to effectuate the Sale. Article and Section headings are for convenience only and will not be given undue consideration in resolving questions of construction or interpretation. Each Party is deemed to have had equal bargaining strength in the negotiation of this Agreement and equal responsibility for the preparation of this document, such that neither this document, nor any uncertainty or ambiguity therein, will be arbitrarily construed or resolved against any Party pursuant to any rule of construction or other Law to the effect that ambiguities in documents are to be construed against the drafter of the document.

**ARTICLE 2.**
**CONTINGENCY WAIVER AND REQUIREMENT FOR COURT APPROVAL**

**2.1.    Buyer's Waiver of All Contingencies.**    Buyer hereby irrevocably waives all contingencies to the Sale and the Closing other than: (a) issuance of the Title Policy effective upon the Closing; and (b) satisfaction of the Bankruptcy Court Approval Condition.

**2.2.    Requirement for Bankruptcy Court Approval.**    Because of the Bankruptcy Case, Seller cannot sell or commit to sell the Property to Buyer without the approval of the Bankruptcy Court. For that reason, Article 3, which sets forth the obligation of Seller to sell the Property to Buyer, and the terms of the Sale, will become binding upon and enforceable only if and when the following condition (**"Bankruptcy Court Approval Condition"**) is satisfied: An order (**"Approval Order"**) approving the sale and conveyance of the Property to Buyer pursuant to this Agreement (**"Sale"**), as a sale free and clear of liens and interests pursuant to Bankruptcy Code Section 363(f), is entered by the Bankruptcy Court in the Bankruptcy Case, and the Approval Order:

**(a)**    is not on Appeal, is no longer subject to Appeal, and has not been reversed, vacated or remanded for further action following an Appeal; or

**(b)**    is not subject to a stay pending Appeal (including pursuant to Federal Rule of Bankruptcy Procedure 7062), and contains a finding that Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code.

**2.3.    Obligation to Seek Bankruptcy Court Approval.**    Seller will seek Bankruptcy Court approval to sell the Property to Buyer pursuant to this Agreement in connection with and through the confirmation by the Seller of a Chapter 11 Plan, as may be amended from time to time (the **"Plan"**), subject, however, to the continuing right of Seller, exercisable by Seller at Seller's sole and absolute discretion, to solicit, evaluate, and accept, counter or reject, competing offers for the Property. If, as of the hearing (**"Confirmation Hearing"**) on the confirmation of the Plan, Seller

determines, in Seller's sole and absolute discretion based on all factors deemed relevant by Seller, that the offer by Buyer evidenced by this Agreement is the most desirable offer, then Seller will request that the Bankruptcy Court enter the Approval Order, identifying Buyer as the approved buyer with a finding that Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and a waiver of the 14 day stay set forth in Bankruptcy Rule 6004(h); or, if Seller determines that the offer by Buyer evidenced by this Agreement is not the best offer, but a desirable back-up offer nonetheless, then Seller will request that the Approval Order designate Buyer as an approved back-up bidder to whom the Property will be sold, if for any reason the high bidder fails to purchase the Property. Each Party will exercise all efforts required of such Party to cause the Bankruptcy Court Approval Condition to be satisfied, including: (a) promptly executing and delivering any motions, declarations or items of support required in connection therewith; (b) appearing at the Confirmation Hearing (including any continuances thereof) and any other hearings relating to this Agreement, the Sale, or any Appeal of any action by the Bankruptcy Court relating to this Agreement or the Sale; and (c) if an Appeal of the Approval Order is filed, then exercise its best efforts to have the Appeal dismissed, overruled or denied, and to have vacated any stay of the enforcement of the Approval Order.

**2.4.** **Failure to Obtain Approval.** If, despite the continued good faith efforts of the Parties, the Bankruptcy Court Approval Condition is not satisfied within 120 days following the Execution Date, then any Party not in Default may terminate this Agreement pursuant to <u>Section 5.3(a)</u>.

**2.5.** **Over-Bidding.** The Sale of the Property to Buyer is subject to possible over-bidding by other prospective buyers. Until such time as the Sale of the Property to Buyer has been approved by the Bankruptcy Court, Seller may solicit, negotiate and accept competing offers for the Property. Seller will not be deemed to have breached this Agreement or to have acted in bad faith by reason of soliciting, negotiating or accepting any competing offer for the Property. Seller will have the sole and absolute discretion to determine the best offer for the Property, taking into account differences among competing offers not only with regard to purchase price, but also with regard to sales costs and other terms and conditions, and Seller may accept or reject offers for less than the entirety of the Property, or offers to purchase as part of the same transaction the Property and other property of Seller. Absent a Default by Buyer, any Deposits made by Buyer pursuant to this Agreement will be promptly refunded to Buyer in the event of a Sale of the Property to a Person other than Buyer.

**2.6.** **No Inconsistent Actions.** No Party will take any action inconsistent with this Agreement, pending either the Closing or the termination of the Sale.

**ARTICLE 3.**
**SALE TERMS AND ESCROW INSTRUCTIONS**

**3.1.** **Purchase and Sale Obligation.** Subject to the terms and conditions of this Agreement, Seller will sell the Property to Buyer, and Buyer will purchase the Property from Seller.

**3.2.** **Escrow.** The Parties will provide Escrow Holder with an executed copy of this Agreement, and authorize Escrow Holder to open an escrow account (**"Escrow"**) and serve as Escrow Holder in accordance with this Agreement. In the event of a conflict between this Agreement and any general provisions of Escrow Holder executed or otherwise approved by any Party, this Agreement will govern and control.

**3.3.** **Purchase Price.** The price (**"Purchase Price"**) for the Property will be $\_\_,\_\_\_,\_\_\_.00, or any higher price that results from the competitive bidding process referred to in <u>Section 2.5</u>.

**3.4.** **Payment of Purchase Price.** Buyer will deposit and pay the Purchase Price as follows:

(a) **Initial Deposit.** On the Execution Date, Buyer will deposit with Seller an initial deposit ("**Initial Deposit**") in the sum of **$1,000,000.00**.

(b) **Final Deposit.** On or before the Closing Performance Date, Buyer will deposit into Escrow, with Escrow Holder, the entire balance of the Purchase Price (the "**Final Deposit**").

(c) **Application of Deposits.** Upon the Closing, Escrow Holder will release the Final Deposit to Seller, and Seller's receipt of the Initial Deposit and Final Deposit will be credited toward Buyer's payment of the Purchase Price.

(d) **Forfeiture of Initial Deposit as Liquidated Damages.** If the Sale fails to occur by reason of a Default by Buyer, then the entire Initial Deposit will be immediately forfeited to Seller as Liquidated Damages pursuant to Section 5.2.

**3.5.** **Buyer's Cost Deposit.** On or before the Closing Performance Date, Buyer will deposit into Escrow, with Escrow Holder, a cash deposit ("**Buyer's Cost Deposit**") in an amount equal to Buyer's Closing Costs as reasonably estimated by Escrow Holder.

**3.6.** **Form of Payment.** The Initial Deposit shall be paid in cash, by certified cashier's check, and all other Deposits and other payments required pursuant to this Agreement will be deposited or paid in cash, by certified cashier's check or federal wire transfer of funds.

**3.7.** **Maintenance of Deposits.** Escrow Holder will promptly deposit any Deposits received by Escrow Holder pursuant to this Agreement into an account in Escrow Holder's name at a federally insured bank, maintain the Deposits and all interest earned thereon in that account until disbursed, and disburse such funds in accordance with the terms of this Agreement. If Escrow Holder will be holding any Deposits made pursuant to this Agreement that exceed, in the aggregate, $25,000.00, for a period of more than 10 days, then said account shall be an interest bearing account.

**3.8.** **Benefit of Interest.** All interest earned on any Deposits held by Escrow Holder will accrue to the benefit of Buyer. No interest will be payable with respect to any funds deposited with Seller.

**3.9.** **Brokerage Commission.** Upon the Closing and solely from the proceeds of the Sale, Seller will pay a fee ("**Brokerage Commission**") equal to _____ percent of the Purchase Price to, and divided among, the Seller's Broker and the Buyer's Broker, as identified in Section 6.16, in according with a separate written agreement between Seller, Seller's Broker and Buyer's Broker.

**3.10.** **Designation of Alternate Vestee.** At any time prior to the Closing Performance Date, Buyer may designate another Person ("**Buyer's Designee**") to accept title to the Property upon the Closing, by providing written notice of such designation to Seller, provided that: (a) such action will not release Buyer from any obligation or liability under this Agreement, (b) Buyer's Designee assumes all obligations and liabilities of Buyer under this Agreement pursuant to a separate written assignment and assumption agreement executed by Buyer (as assignor) and Buyer's Designee (as assignee) and delivered to Seller in form and content reasonably acceptable to Seller, (c) Buyer's Designee is not an Affiliate of Debtor unless disclosed to and expressly approved by the Bankruptcy Court, and (d) Buyer will provide Seller with all information regarding Buyer's Designee required to obtain the Title Policy and lawfully transact the Sale.

**3.11.** **Title Insurance.**

EXHIBIT 3 PAGE 157

(a) **Title Policy.** Escrow Holder will cause the Title Company to issue and deliver at Closing: (A) to Buyer, a standard ALTA owner's policy of title insurance (**"Owner's Title Policy"**), in a form substantially identical to that of the Pro Forma Title Policy attached as Exhibit "D", with coverage equal to the amount of the Purchase Price; and (B) to any lender financing the Sale with a loan secured by a deed of trust on the Property, a standard lender's endorsement (**"Lender's Endorsement"**) to the Owner's Title Policy with lender's coverage equal to the amount of the loan. The Owner's Title Policy and any Lenders Endorsement are collectively referred to as the **"Title Policy"**. The Title Policy will be subject only to the following exceptions (**"Permitted Title Exceptions"**):

   (1) Any title exceptions set forth in the Pro Forma Title Policy;

   (2) The lien and encumbrance of non-delinquent real property taxes and assessments, and non-delinquent owners association assessments, prorated as of the Closing;

   (3) Any title exceptions arising in connection with any financing obtained by Buyer in connection with the Sale; and

   (4) any other title exceptions approved by Buyer in writing.

(b) **Buyer's Title Insurance Obligations.** Buyer will promptly complete, execute and deliver to Escrow Holder and Title Company any statements of identity, information reports, affidavits and other documents or information reasonably required by the Title Company to issue any Title Policy(s) to be issued pursuant to this Agreement.

**3.12. Closing Performance Date.** Each Party will perform all acts required of it to enable the Closing to be transacted on or before the first Business Day (**"Closing Performance Date"**) following the 14 day anniversary of the date the Bankruptcy Court Approval Condition is satisfied.

**3.13. Conveyance Instruments.** On or before the Closing Performance Date, the Parties will cause to be prepared, and the appropriate Party will execute, before a Notary Public as required, any deeds, bills of sale, assignments and instruments (collectively, **"Conveyance Instruments"**) required to assign and convey the Property to Buyer upon the Closing.

**3.14. Buyer's Costs.** On or before the Closing Performance Date, Escrow Holder will reasonably estimate and collect from Buyer, and pay and charge to Buyer's account upon Closing, the following costs (**"Buyer's Costs"**):

(a) One-half of Escrow Holder's basic fee, plus any additional escrow fees incurred as a result of any financing obtained by Buyer in connection with the Sale;

(b) All documentary transfer taxes;

(c) All recording fees and filing fees, including for the deed to the Property, and any mortgages, deeds of trust or financing statements associated with any financing obtained by Buyer;

(d) The additional premium, if any, in excess of the premium payable by Seller pursuant to Section 3.15(c), for any Lender's Endorsements, or other endorsements issued at the request of Buyer or Buyer's lender; -

(e) Any prorations, transfers, credits, debits, adjustments or other payments required of Buyer pursuant to Section 3.16; and

(f)    Any other closing costs not allocated in this Agreement which are customarily paid by the purchaser of real property in the county in which the Property is located.

**3.15.  Seller's Costs.**  Escrow Holder will collect from the net sales proceeds payable to Seller at Closing and pay and charge to Seller's account the following costs ("**Seller's Costs**"):

(a)    One-half of Escrow Holder's basic fee;

(b)    The Brokerage Commission;

(c)    The premium for a standard ALTA owner's title policy;

(d)    Any prorations, transfers, credits, debits, adjustments or other payments required of Seller pursuant to <u>Section 3.16</u>; and

(e)    Any other closing costs not allocated in this Agreement which are customarily paid by the seller of real property in the county in which the Property is located.

**3.16.  Prorations.**  Except as otherwise set forth in this Agreement, Seller will receive the benefit of all income from and the burden of all expenses of the Property prior to the Closing, and Buyer will receive the benefit of all income from and the burden of all expenses of the Property following the Closing. In furtherance of the forgoing intent, Escrow Holder will prorate the following income and expense items as of 12:00 midnight at the end of the day preceding the date of the Closing, based on the total number of days in the month and year in which the Closing occurs and the actual number of days elapsed in the month and year in which the Closing occurs:

(a)    Rents and other income from the Property, if any; provided, however, that: (1) unpaid rent which is not more than 60 days past due will be credited to Seller when calculating the proration; (2) unpaid rent that is more than 60 days past due will not be credited to Seller when calculating the proration; (3) Buyer will own all unpaid rents included in the proration; (4) Seller will own any unpaid rents not included in the proration, and will have a continuing right to enforce, at Seller's cost, the collection of any unpaid rents not included in the proration; and (5) if any unpaid rent not included in the proration is thereafter paid to Buyer or Buyer's Agents, then Buyer will immediately tender such payment to Seller;

(b)    Real property taxes and assessments, and personal property taxes and assessments, based upon the latest available tax and assessment bills;

(c)    Owners association dues and assessments, if any; and

(d)    Utility costs and other third party costs relating to the use and operation of the Property.

**3.17.  <u>Buyer's Assumption of Liability for Tenant Security Deposits and Prepaid Rents</u>.** Within five (5) Business Days prior to the Closing Performance Date, Seller will provide Buyer and Escrow Holder with a Schedule of Tenant Security Deposits and Prepaid Rents for the Property, which Escrow Holder will use in calculating the appropriate closing prorations and adjustments. Following the Closing, Buyer will be solely responsible and liable for all obligations and liabilities relating to any security deposits and prepaid rents reflected in that Schedule and will fully indemnify, defend and hold harmless Seller, Seller's Agents, the Debtors and the Estates, from and against any and all Claims related thereto.

**3.18.** **Utility Deposits.** Seller will receive a credit for any utility deposits the ownership or benefit of which is assigned or transferred to Buyer as of the Closing, but only if Seller gives Notice of the same to Buyer and Escrow Holder prior to the Closing.

**3.19.** **Tax Rebates.** If Buyer receives a rebate from any taxing authority on any real or personal property taxes or assessments applicable to any periods prior to the Closing, then Buyer will forward such rebated funds to Seller less only the costs incurred by Buyer to obtain such rebate. However, Buyer will have no obligation to seek or pursue any tax rebate for the benefit of Seller.

**3.20.** **Insurance.** Seller has no obligation to Buyer to maintain any insurance on the Property. Except as set forth in Section 3.24, no insurance policy maintained by Seller will be assigned to Buyer. Seller may at any time and without Notice to Buyer cancel any insurance policy maintained by Seller, and collect for its own account any refund available as a result of such cancellation.

**3.21.** **Buyer's Closing Obligations.** On or before the Closing Performance Date and effective as of the Closing, Buyer will:

**(a)** Cause Buyer's Representations to be true and correct in all material respects;

**(b)** Deposit the Final Deposit and Buyer's Cost Deposit with Escrow Holder; and

**(c)** Perform or cause to be performed all other acts required of Buyer pursuant to this Agreement to enable the Closing to occur as contemplated by this Agreement.

**3.22.** **Seller's Closing Obligations.** On or before the Closing Performance Date and effective as of the Closing, Seller will:

**(a)** Cause Seller's Representations to be true and correct in all material respects;

**(b)** Execute and deliver into Escrow with Escrow Holder the Conveyance Documents and any other documents required of Seller to enable the Closing to occur; and

**(c)** Perform or cause to be performed all other acts required of Seller pursuant to this Agreement to enable the Closing to occur as contemplated by this Agreement.

**3.23.** **Closing.** The "Closing" will consist of all of the following events, which the Parties and Escrow Holder will cause to occur concurrently in accordance with this Agreement:

**(a)** Delivery of the Purchase Price to Seller;

**(b)** Delivery of the executed Conveyance Documents to Buyer, including causing the deed to the Property to be recorded with the County Recorder for the county in which the Property is located; and

**(c)** Issuance of the Title Policy(s).

**3.24.** **Condemnation and Damage.** If, prior to the Closing Performance Date, Seller receives Notice or otherwise learns of any proposed condemnation or other taking through eminent domain of all or any part of the Property, then Seller will give Notice thereof to Buyer, and Buyer will have 7 days following the date of such Notice in which to either: (a) terminate the Sale, in which event the Initial Deposit and any other Deposits by Buyer, less any Escrow cancellation charges, will be promptly returned to Buyer; or (b) elect to proceed with the Sale, subject to any other conditions

set forth in this Agreement, in which event Buyer will be entitled to receive any condemnation proceeds payable in connection with such condemnation if the Closing occurs. If, prior to the Closing Performance Date, Seller receives Notice or otherwise learns of any material damage to the Property, then Seller will give prompt Notice thereof to Buyer, and (1) if the cost to repair the damage is reasonably estimated to equal to two percent (2.00%) of the Purchase Price, or more, then Buyer will have 7 days following the date of such Notice in which to: (A) terminate the Sale, in which in which event the Initial Deposit and any other Deposits by Buyer, less any Escrow cancellation charges, will be promptly returned to Buyer; or (B) elect to proceed with the Sale, subject to any other conditions set forth in this Agreement, in which event Buyer will be entitled to receive any insurance proceeds payable in connection with such damage if the Closing occurs; or (2) if the cost to repair the damage is reasonably estimated to be less than two percent (2.00%) of the Purchase Price, then Buyer will proceed with the Sale, subject to any other conditions set forth in this Agreement, and Buyer will be entitled to receive any insurance proceeds payable in connection with such damage if the Closing occurs.

**3.25.** **Conflicting Demands and Interpleader.** If conflicting demands are made upon the Escrow Holder with respect to this Agreement, or the rights of any Party, or any money or property deposited into Escrow or otherwise affected by this Agreement, and Escrow Holder is unable to resolve such conflict based upon this Agreement, then Escrow Holder will have the right to discontinue any or all further acts and to commence or defend any action or proceedings for the determination of the issue, including without limitation a suit in interpleader to resolve the issue.

## ARTICLE 4.
## WARRANTIES, REPRESENTATIONS AND WAIVERS

**4.1.** **Representations and Warranties by Buyer.** Buyer hereby makes the following representations and warranties ("**Buyer's Representations**") to Seller:

**(a)** **Legal Capacity of Buyer.** Subject to the provisions of this Agreement relating to the entry of the Approval Order: (1) Buyer has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Agreement and to perform its obligations under this Agreement, (2) any Person executing and delivering this Agreement on behalf of Buyer is duly authorized to do so; and (3) neither this Agreement nor the performance by Buyer of any obligation of Buyer under this Agreement will violate any provision of any article, by-law, operating agreement or partnership agreement of Buyer or any contract, covenant, agreement, condition, restriction, injunction or order by which Buyer is bound.

**(b)** **No Undisclosed Inducements to Buyer.** Buyer entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and that no representations, warranties or promises other than those set forth in this Agreement were made by Seller or any agent, employee or counsel of Seller to induce Buyer to execute or enter into this Agreement.

**(c)** **Buyer Represented by Legal Counsel.** Buyer acted pursuant to the advice of legal counsel of its own independent choosing in connection with the negotiation, preparation and execution of this Agreement, or was advised to obtain the advice of such legal counsel, had fair and ample opportunity to obtain the advice of such legal counsel and willfully declined to obtain the advice of such legal counsel.

**(d)** **Buyer's Representation Regarding Brokerage Fees.** Except for Buyer's Broker, if any, identified as such in Section 6.16, Buyer has not engaged or utilized the services of any broker, sales agent or finder in connection with the Sale. Except for the Brokerage

EXHIBIT 3 PAGE 161

Commission, if any, payable pursuant to <u>Section 3.9</u>, no broker's commission, sales agent's commission, finder's fee or other consideration or compensation is or will be due or owing in connection with the Sale by reason of any conduct by Buyer. The only fee payable to Buyer's Broker, if any, is a portion of the Brokerage Commission described in <u>Section 3.9</u>, if any, the distribution of which will be governed by a separate written agreement between Buyer's Broker, if any, and the broker, if any, identified as Seller's Broker in <u>Section 6.16</u>.

**4.2.** **Representations and Warranties by Seller.** Seller hereby makes the following representations and warranties ("**Seller's Representations**") to Buyer:

**(a)** <u>Legal Capacity of Seller.</u> Subject to the provisions of this Agreement relating to the Approval Order: (1) Seller has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Agreement and to perform the obligations of Seller under this Agreement, (2) any Person executing and delivering this Agreement on behalf of Seller is duly authorized to do so; and (3) neither this Agreement nor the performance by Seller of any obligation of Seller under this Agreement will violate any provision of any article, by-law, operating agreement or partnership agreement of Seller or any contract, covenant, agreement, condition, restriction, injunction or order by which Seller is bound.

**(b)** <u>No Undisclosed Inducements to Seller.</u> Seller entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and that no representations, warranties or promises other than those set forth in this Agreement were made by Buyer or any agent, employee or counsel of Buyer to induce Seller to execute or enter into this Agreement.

**(c)** <u>Seller Represented by Legal Counsel.</u> Seller acted pursuant to the advice of legal counsel of its own independent choosing in connection with the negotiation, preparation and execution of this Agreement, or was advised to obtain the advice of such legal counsel, had fair and ample opportunity to obtain the advice of such legal counsel and willfully declined to obtain the advice of such legal counsel.

**(d)** <u>Seller's Representation Regarding Brokerage Fees.</u> Except for Seller's Broker, if any, identified as such in <u>Section 6.16</u>, Seller has not engaged or utilized the services of any broker, sales agent or finder in connection with the Sale. Except for the Brokerage Commission, if any, payable pursuant to <u>Section 3.9</u>, no broker's commission, sales agent's commission, finder's fee or other consideration or compensation is or will be due or owing in connection with the Sale by reason of any conduct by Seller. The only fee payable to Seller's Broker, if any, is a portion of the Brokerage Commission described in <u>Section 3.9</u>, if any, the distribution of which will be governed by a separate written agreement between Seller's Broker, if any, and the broker, if any, identified as Buyer's Broker in <u>Section 6.16</u>.

**4.3.** **WAIVER OF IMPLIED WARRANTIES AND REPRESENTATIONS, AND "AS IS" SALE.** BUYER IS PURCHASING THE PROPERTY "AS IS", "WHERE IS", "WITH ALL FAULTS", AND IN ITS PRESENT CONDITION. SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, REGARDING THE PROPERTY, INCLUDING WITH RESPECT TO: (A) LOCATION, QUALITY, CONDITION, STATE OF REPAIR, FITNESS, HABITABILITY, OR SUITABILITY FOR INTENDED USE; (B) OWNERSHIP, POSSESSION OR STATUS OF TITLE; (C) COMPLIANCE WITH LAWS OR INSURANCE REQUIREMENTS; (D) REQUIREMENTS FOR, VALIDITY OF, OR COMPLIANCE WITH, GOVERNMENT PERMITS; (E) WATER, ELECTRICITY, GAS, SEWER, TELEPHONE, DATA COMMUNICATION CONNECTIONS OR CONDUITS, OR OTHER UTILITIES; OR (F) PRESENCE, ABSENCE OR LEGALITY OF HAZARDOUS OR TOXIC SUBSTANCES AT, WITHIN OR MIGRATING FROM THE PROPERTY (INCLUDING ASBESTOS,

UREA-FORMALDEHYDE, OR ANY OTHER ENVIRONMENTALLY HAZARDOUS MATERIAL). AS A MATERIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT, BUYER NOW AND FOREVER WAIVES ANY AND ALL IMPLIED WARRANTIES AND REPRESENTATIONS REGARDING THE PROPERTY, INCLUDING WITH RESPECT TO THE FORGOING MATTERS, AND NOW AND FOREVER WAIVES ANY AND ALL CLAIMS AGAINST SELLER AND SELLER'S AGENTS, REPRESENTATIVES AND LEGAL COUNSEL, REGARDING ANY SUCH MATTERS. WITHOUT LIMITING THE FORGOING, BUYER WILL RELY SOLELY ON THE APPROVAL ORDER AND THE OWNER'S TITLE POLICY WITH RESPECT TO ALL MATTERS RELATING TO TITLE, AND UPON BUYER'S OWN INSPECTIONS, ANALYSIS AND DUE DILIGENCE WITH RESPECT TO ALL OTHER MATTERS RELATING TO THE PROPERTY.

**4.4.** **Waiver of Representations or Warranties.** The Buyer's Representations set forth in Section 4.1 and the representations set forth in Section 4.3 are for the sole and exclusive benefit of Seller and may be waived only by Seller, and only in an express written waiver executed by Seller. The Seller's Representations set forth in Section 4.2 are for the sole and exclusive benefit of Buyer and may be waived only by Buyer, and only in an express written waiver executed by Buyer.

**4.5.** **Truth, Accuracy and Survival.** Each warranty and representation set forth in this Agreement will be true and accurate, and the Party making the same will cause the same to be true and accurate, on the Execution Date, the Closing Performance Date, and the actual date and time of the Closing. Each representation, warranty, covenant, indemnity, disclaimer, waiver and release contained in this Agreement will survive the Closing or any termination of the Sale.

## ARTICLE 5.
## DEFAULTS, REMEDIES AND RIGHTS OF TERMINATION

**5.1.** **Default.** A Party will be in default ("Default") of this Agreement if such Party: (a) fails to make any payment or deposit when due; (b) fails to perform any act required of such Party to enable the Closing to occur on the Closing Performance Date; or (c) is otherwise in material breach of this Agreement if such breach continues uncured for a period of more than 3 Business Days following the date of Notice of such breach by the other Party, provided, however, that if the breach is not of a type that can be cured by the payment of money and more than 3 Business Days are reasonably required to cure the breach, then there will be no Default by reason of the breach if the breach does not delay the Closing and the Party in breach: (1) commences a cure within 3 Business Days of the date of the Notice of the breach, (2) promptly, diligently and in good faith prosecutes the cure to completion, and (3) completes the cure by no later than 3 Business Days prior to the Closing Performance Date.

**LIQUIDATED DAMAGES - SELLER'S REMEDY.** IF THE SALE FAILS TO OCCUR BY REASON OF A BUYER DEFAULT, OR IF BUYER FAILS, WITHOUT LEGAL EXCUSE, TO COMPLETE THE SALE IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, THEN SELLER WILL SUFFER REAL AND SIGNIFICANT DAMAGES AS A RESULT, INCLUDING LOST OPPORTUNITY COSTS, INTEREST COSTS, TRANSACTIONAL COSTS, LEGAL COSTS, AND OTHER REAL AND SIGNIFICANT DAMAGES, THE PRECISE AMOUNT WHICH WOULD BE DIFFICULT TO ASCERTAIN. THE PARTIES THEREFORE DESIRE TO LIQUIDATE SUCH DAMAGES AS OF THE EXECUTION DATE. ACCORDINGLY, BUYER AND SELLER HEREBY COVENANT AND AGREE THAT IF THE SALE FAILS TO OCCUR BY REASON OF A BUYER DEFAULT, OR IF BUYER FAILS, WITHOUT LEGAL EXCUSE, TO COMPLETE THE SALE IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, THEN SELLER WILL KEEP AS REASONABLE AGREED UPON LIQUIDATED DAMAGES FOR SUCH DEFAULT OR FAILURE, THE ENTIRE INITIAL DEPOSIT IN THE AMOUNT OF $1,000,000.00.
INITIALED ON BEHALF OF SELLER: _____ INITIALED ON BEHALF OF BUYER: _____

**5.2.** <u>Termination of the Sale.</u> . The Sale may be terminated prior to the Closing, as follows:

**(a)** Commencing on the 120 day anniversary of the Execution Date, any Party not in Default may terminate the Sale if the Bankruptcy Court Approval Condition remains unsatisfied.

**(b)** Commencing on the 180 day anniversary of the Execution Date, any Party not in Default may terminate the Sale.

**(c)** Seller, if not in Default, may terminate the Sale upon any Default by Buyer.

**(d)** Buyer, if not in Default, may terminate the Sale upon any Default by Seller, and seek money damages on account of such Default in accordance with <u>Section 5.6(c)</u>, or alternately, not terminate the Sale, and instead seek specific performance pursuant to <u>Section 5.6(c)</u>.

**5.3.** · <u>No Obligation to Terminate.</u>   No Party having the right to terminate the Sale will be required to exercise such right of termination, or otherwise be prohibited from enforcing this Agreement by reason of having any such unexercised right to terminate the Sale.

**5.4.** <u>Notice of Termination.</u>  Any Party who terminates the Sale will give immediate Notice of such termination to the other Party, specifying in the Notice the specific reason for such termination and the provision of this Agreement pursuant to which the termination is made.

**5.5.** <u>Effect of Termination or Seller Default.</u>

**(a)** If the Sale is terminated pursuant to any of <u>Sections 5.3(a) or 5.3(b)</u>, then (1) any Deposits made by Buyer will be promptly returned, (2) each Party will promptly return to the other Party any documents or property of the other Party within its possession or control received pursuant to this Agreement; and (3) neither Party will have any further obligations to the other Party with regard to the Sale.

**(b)** If the Sale is terminated pursuant to <u>Section 5.3(c)</u>, then (1) the entire Initial Deposit will be immediately forfeited to Seller as Liquidated Damages pursuant to <u>Section 5.2</u>, (2) except for such Liquidated Damages, each Party will promptly return to the other Party any documents or property of the other Party within its possession or control received pursuant to this Agreement, and (3) neither Party will have any further obligations to the other Party with regard to the Sale.

**(c)** In the event of a Default by Seller, Buyer may terminate the Sale pursuant to <u>Section 5.3(d)</u>, in which event any Deposits made by Buyer will be promptly returned, and Buyer may seek money damages on account of any damages suffered by Buyer on account of such Default by Seller, not to exceed the sum of $100,000.00, with any such damages payable solely by the Debtor's Bankruptcy Estate which owns the Real Property and not by the Trustee personally, or any other Estate.

**ARTICLE 6.**
**GENERAL PROVISIONS:**

**6.1.** <u>Integration.</u> This Agreement sets forth the sole and entire agreement between the Parties regarding the Sale. All prior and contemporaneous discussions, negotiations understandings and agreements between the Parties, oral or written, regarding the Sale, are hereby superseded.

EXHIBIT 3 PAGE 164

No Person has the authority to orally modify this Agreement, or to make any oral representation regarding this Agreement or the Sale.

**6.2.**  **Amendment.**  No modification of, deletion from, or addition to this Agreement will be effective unless made in writing and executed by each Party.

**6.3.**  **No Obligations to Third Parties.**  This Agreement will not confer any rights upon any Person not a Party, nor will it obligate any Party to any Person not a Party. However, nothing in this Section or elsewhere in this Agreement will limit or restrict the binding effect of the Approval Order on Persons not a Party to this Agreement.

**6.4.**  **Expenses of Negotiation, Documentation and Performance.**  Each Party will bear all costs and expenses incurred by such Party in connection with the negotiation and documentation of this Agreement and in the performance of its obligations under this Agreement.

**6.5.**  **Further Assurances.**  Each Party will promptly execute and deliver all documents and take all actions, including the payment of money, reasonably required to effectuate the Sale and perform its duties pursuant to this Agreement.

**6.6.**  **Time is of the Essence.**  With respect to all dates and time periods set forth or referred to in this Agreement, time is of the essence, such that each Party will perform all acts required of such Party pursuant to this Agreement by the date or within the time period required pursuant to this Agreement.

**6.7.**  **Performance Dates.**  If the date by which or upon which any obligation otherwise must be performed pursuant to this Agreement, or any Notice otherwise must be given pursuant to this Agreement, occurs on a day other than a Business Day, then the date by which or upon which such obligation must be performed or such Notice must be given will be deemed automatically extended until the next Business Day.

**6.8.**  **Governing Law, Jurisdiction and Venue.**  This Agreement is made under and will be construed in accordance with and governed by the Bankruptcy Code and the substantive laws of the State of California, without giving effect to the principles of conflicts of law. The Parties consent to the exclusive jurisdiction of the Bankruptcy Court and to venue in Orange County, California, for the purpose of resolving any Claim, controversy or disagreement which may arise among the Parties with respect to this Agreement, the Sale or the Property. It will be a material breach of this Agreement to seek to resolve any such Claim, controversy or disagreement in any other court or forum. However, nothing in this Section will constitute a waiver by any Party of the right to appeal any decision or action of the Bankruptcy Court.

**6.9.**  **Enforcement.**  Subject to the provisions of this Agreement including those which relate to venue, jurisdiction and the limitation of remedies or damages, each Party will have the right to enforce by proceedings at law or in equity all of the provisions of this Agreement, including the right to prosecute proceedings at law or in equity against any Person who violates or attempts to violate any of such provisions, to enjoin any such Person from doing so, to cause such violation to be remedied, and to recover damages for such violation.

**6.10.**  **Waiver.**  The failure by any Party to enforce any provision of this Agreement will not constitute a waiver of the right to enforce the same provision, or any other provision of this Agreement, thereafter. No waiver by any Party of any provision of this Agreement will be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor will any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

EXHIBIT 3 PAGE 165

**6.11. Severability.** If any provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement will nonetheless remain in force and effect, unless the portion of this Agreement found to be illegal, invalid or unenforceable is so material and significant that its deletion would violate the obvious primary purpose and intent of the Parties.

**6.12. Litigation Costs and Attorneys' Fees.** If any Party commences legal proceedings against any other Party to enforce this Agreement or to declare any rights or obligations under this Agreement, then the prevailing Party will recover from the losing Party its costs of suit, including reasonable attorneys' fees, as will be determined by the court in such proceeding.

**6.13. Inurement.** This Agreement will inure to the benefit of and be binding upon the Parties and their respective successors, assigns, grantees, administrators and trustees, including any successor trustee appointed in the Bankruptcy Case.

**6.14. Execution.** This Agreement may be executed in any number of identical counterparts, each of which is an original, and all of which together will constitute one and the same agreement. The delivery of an executed counterpart of a signature page to this Agreement and an initialed counterpart of any "Liquidated Damages" clause contained in this Agreement by electronic mail (email), electronic facsimile transmittal (fax), telecopy or other electronic means will be as effective as the physical delivery of an executed counterpart of this Agreement.

**6.15. Exhibits.** The following Exhibits are attached to this Agreement and incorporated into and made a part of this Agreement as though fully set forth herein:

| | | |
|---|---|---|
| Exhibit "A-1" | – | Legal Description of the McAllister Ranch Real Estate |
| Exhibit "A-2" | – | Legal Description of the McSweeny Farms Real Estate |
| Exhibit "A-3" | – | Legal Description of the Summerwind Ranch Real Estate |
| Exhibit "B" | – | Description of Certain Specific Items of Intangible Property |
| Exhibit "C" | – | Description of Certain Specific Items of Tangible Property |
| Exhibit "D" | – | Pro Forma Title Policy for the Subject Real Property |

**6.16. Notices.** Any Notice by any Party to any other Party pursuant to this Agreement must be made in writing and delivered to the other Party at the address below, until written notice of a different address is given by the other Party pursuant to this Section. Payments to be made pursuant to this Agreement will be deemed made only upon actual receipt. Notices given by personal service will be deemed received upon delivery. Notices given by first class mail, postage prepaid, addressed to the address required by this Section, will be deemed received 3 Business Days following the deposit thereof with the United States Post Office. Notices given by overnight courier service will be deemed received on the date of delivery confirmed by the courier service. Notices given by electronic facsimile transmission will be deemed received on the date upon which the recipient's facsimile machine confirms electronically the receipt of the Notice, provided that a copy of any Notice given by facsimile transmission must also be sent to the recipient by first class mail, postage prepaid, addressed to the address required by this Section. The rejection by a Party of a Notice, refusal by a Party to accept a Notice, or inability of another Party to deliver a Notice because of either a change of address of a Party for which no Notice of change of address is given pursuant to this Agreement, or a failure by a Party to ensure that its correct name, address,

telephone number, facsimile number and email address are set forth below prior to the execution of this Agreement by the Party will constitute delivery of the Notice; provided, however, that telephone numbers and e-mail addresses, if listed below, have been listed solely for convenience purposes, and not for the purpose of giving any Notice pursuant to this Agreement. If any of the contact information provided for below is missing as of the time of the execution of this Agreement, then the absence of such information will not invalidate this Agreement, but rather, will constitute a continuing obligation of the Parties to cause such information to be correctly inserted into this Agreement as promptly as reasonably possible following the execution of this Agreement.

**Seller:**              Alfred H. Siegel, Trustee

              Telephone:  ( ) ___-____
              Facsimile:  ( ) ___-____
              E-Mail:  _____.com

**Any Notice to Seller**  Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
**must also be sent to**  Attention: _____
**Seller's Counsel at:**  650 Town Center Drive - Suite 950
              Costa Mesa, California 92660
              Telephone:  (714) 966-1000
              Facsimile:  (714) 966-1002
              E-Mail:  _____@wgllp.com

**Buyer:**

              Attention: _____

              Telephone:  ( ) ___-____
              Facsimile:  ( ) ___-____
              E-Mail:  _____.com

**Any Notice to Buyer**
**must also be sent to**  Attention: _____
**Buyer's Counsel at:**

              Telephone:  ( ) ___-____
              Facsimile:  ( ) ___-____
              E-Mail:  _____.com

**Escrow Holder:**  Lawyers Title Insurance Corporation
              Attention: _____, Escrow Officer
              Reference:  Escrow No. _____

              Telephone:  ( ) ___-____
              Facsimile:  ( ) ___-____

E-Mail: _____.com

**Title Company:**    Lawyers Title Insurance Corporation
                     Attention: _____, Title Officer
                     Reference: Title Order No. _____

                     Telephone: (___) ___-_____
                     Facsimile: (___) ___-_____
                     E-Mail: _____.com

**Seller's Broker:**  _____

                     Attention: _____, Title Officer

                     Telephone: (___) ___-_____
                     Facsimile: (___) ___-_____
                     E-Mail: _____.com

**Buyer's Broker:**   _____

                     Attention: _____, Title Officer

                     Telephone: (___) ___-_____
                     Facsimile: (___) ___-_____
                     E-Mail: _____.com

**THE UNDERSIGNED PARTIES** made, executed, entered into and delivered this Agreement on the Execution Date.

**Buyer:**

_____
a _____

By: _____
    (signature)

    _____
    (typed or printed name)

Its: _____
     (title or capacity)

**Seller:**

_____
Alfred H. Siegel, acting solely in his
capacity as the duly appointed trustee
in the above-referenced Bankruptcy Cases

# EXHIBIT 4

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Robert S. Marticello, State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone:  (714) 966-1000
Facsimile:  (714) 966-1002

Attorneys for Alfred H. Siegel
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:08-bk-15588-ES |
| LBREP/L-Sun Cal Master I LLC, et al., | Chapter 11 |
| Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
| _____ Affects LBREP/L-SunCal Master I LLC, Only | NOTICE OF SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED UNDER THE CHAPTER 11 TRUSTEE'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED JANUARY 7, 2011) |
| _____ Affects LBREP/L-SunCal McAllister Ranch LLC, Only | |
| _____ Affects LBREP/L-SunCal McSweeny Farms LLC, Only | |
| _____ Affects LBREP/L-SunCal Summerwind Ranch LLC, Only | Plan Confirmation Hearing: |
| __X__ Affects All Debtors. | DATE:    April 8, 2011, and April 22, 2011<br>TIME:    10:00 a.m.<br>PLACE:   Courtroom 5A<br>411 W. Fourth St.<br>Santa Ana, CA 92701 |

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS AND THEIR COUNSEL, AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that pursuant to Section VII.A. of the First Amended Chapter 11 Plan of Reorganization (Dated January 7, 2011) (the "Plan"), filed by Alfred H. Siegel (the "Trustee"); the chapter 11 trustee of the jointly administered estates of LBREP/L-Lehman SunCal Master I LLC, LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and LBREP/L-SunCal Summerwind Ranch LLC (collectively, the "Debtors"), the Trustee submits the attached schedule of executory contracts and unexpired leases that the Trustee intends to assume and assign

566658.1    1    NOTICE

EXHIBIT 4 PAGE 169

(the "Assumption Schedule") in the event that the Court confirms the Plan.[1] The proposed cure amounts, if any, are included on the attached Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE** that if you are a party to an executory contract or unexpired lease to be assumed and assigned and you object to the assumption and assignment of your lease or contract and/or you dispute the Cure Amount related to your lease or contract, then you must File a written objection and serve it upon counsel for the Trustee (Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, attn: Robert S. Marticello, Esq., 650 Town Center Drive, Suite 950, Costa Mesa, California 92626) so as to be received by no later than **March 14, 2011**. An objection to the Cure Amount must also set forth the amount you contend to be the correct Cure Amount and contain evidence to support such amount. Failure to timely File an objection as provided herein shall be deemed consent to the proposed assumption and assignment and to the Cure Amount and a waiver of any and all rights to challenge such assumption and assignment and the Cure Amount. Absent a timely objection as provided herein, the Confirmation Order will constitute a Court order approving the assumption and assignment, on the Effective Date, of the executory contracts and unexpired leases then identified on the Assumption Schedule, and shall constitute a final determination of the Cure Amount and that the Trustee has shown adequate assurance of future performance. Furthermore, any Cure Amount ordered by the Court, through entry of the Confirmation Order, and paid shall be deemed to satisfy any and all defaults arising from, out of or related to the executory contract or unexpired lease, including any tort claims that were or could be asserted by the non-debtor party to the contract or lease on or prior to the entry of the Confirmation Order, and all actual or pecuniary losses that have resulted from such defaults.

**PLEASE TAKE FURTHER NOTICE** that the Trustee reserves the right to amend the Assumption Schedule to delete any executory contract or unexpired lease and provide for its rejection at any time prior to the Confirmation Hearing. The Trustee reserves the right to amend the Assumption Schedule up to twenty-eight (28) days prior to the Confirmation Hearing to (1) add any executory contract or unexpired lease and provide for its assumption and assignment, or (2) modify the Cure Amount for any particular executory contract or unexpired lease.

**PLEASE TAKE FURTHER NOTICE** that with respect to each executory contract and unexpired lease identified on the Assumption Schedule, if no dispute arises regarding the Cure Amount, adequate assurances, or some other matter related to the assumption of the executory contract or unexpired lease, then the Cure Amount set forth in the Assumption Schedule shall be paid to the applicable non-debtor party in Cash on the Effective Date or as soon as reasonably practicable thereafter. If a dispute arises regarding (a) whether the Trustee has provided adequate assurance of future performance of an executory contract or unexpired lease to be assumed, or (b) any other matter pertaining to a proposed assumption and assignment, the Cure Amount will be paid on the later of (1) the Effective Date or as soon as practicable thereafter, or (2) within thirty (30) days after entry of a Final Order resolving the dispute and approving the assumption and assignment; provided, however, if a dispute arises regarding any of the foregoing, the Trustee reserves for himself and the Liquidating Trustee the right to completely forego assumption and assignment of and, instead, reject the subject executory contract or unexpired lease.

**PLEASE TAKE FURTHER NOTICE** that if a party to an executory contract or unexpired lease identified on the Assumption Schedule Files an objection disputing the

---

[1] Any capitalized terms not defined in this Notice or the Assumption Schedule shall have the meaning given to them in the Plan.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000 Fax 714-966-1002

EXHIBIT 4 PAGE 170

1  Cure Amount, then the Trustee may amend the Assumption Schedule at any time prior to
   the Confirmation Hearing to delete the subject executory contract or unexpired lease and
2  provide for its rejection. Executory contracts or unexpired leases not so deleted shall be
   conditionally assumed, subject to the Liquidating Trustee's right to file a Motion to
3  determine the appropriate Cure Amount up to the first (1st) Business Day that is at least
   sixty (60) days following the Effective Date. The Liquidating Trustee will serve any such
4  Motion on the party to the executory contract or unexpired lease affected by the Motion (or
   its attorney, if any). If the Liquidating Trustee does not file a Motion to determine the
5  appropriate Cure Amount, then the executory contract or unexpired lease shall be
   assumed and assigned, as of the Effective Date, and the Cure Amount shall be the
6  alternative Cure Amount asserted by the non-debtor party to the subject executory
   contract or unexpired lease in its objection to the Plan. The Cure Amount shall be paid as
7  soon as reasonably practicable following the expiration of the 60-day deadline.

8      **PLEASE TAKE FURTHER NOTICE** that if the Liquidating Trustee files a Motion to
   determine the appropriate Cure Amount, then the Liquidating Trust shall have the right to
9  amend the Assumption Schedule to completely forego assumption and assignment of
   and, instead, reject the subject executory contract or unexpired lease up to the first (1st)
10 Business Day that is at least fifteen (15) days after the entry of an order fixing the Cure
   Amount. The Liquidating Trustee will provide notice of any amendment to the Assumption
11 Schedule to the party to the executory contract or unexpired lease affected by the
   amendment. If the Liquidating Trustee has filed such a Motion and does not timely amend
12 the Assumption Schedule within fifteen (15) days after entry of an order fixing the Cure
   Amount, then the executory contract or unexpired lease shall be assumed and assigned,
13 as of the Effective Date, and the Cure Amount shall be fixed as the Cure Amount ordered
   by the Court. The Cure Amount shall be paid as soon as reasonably practicable following
14 the expiration of the 15-day deadline.

15     **PLEASE TAKE FURTHER NOTICE** that on the Effective Date, the Trustee will be
   deemed to have rejected any and all executory contracts and unexpired leases <u>not</u>
16 identified on the Assumption Schedule. The Confirmation Order will constitute a Court
   order approving the rejection, as of the Effective Date, of such executory contracts and
17 unexpired leases. If you are a party to a lease or contract to be rejected and you object to
   the rejection of your lease or contract, then you must File a written objection and serve it
18 upon counsel for the Trustee (Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, attn:
   Robert S. Marticello, Esq., 650 Town Center Drive, Suite 950, Costa Mesa, California
19 92626) so as to be received by no later than **March 14, 2011**.

20

21                              Respectfully submitted,

22 Dated: March 4, 2011        WEILAND, GOLDEN,
                               SMILEY, WANG EKVALL & STROK, LLP
23

24                             By: _____
                                   ROBERT S. MARTICELLO
25                                 Attorneys for Alfred H. Siegel,
                                   Chapter 11 Trustee
26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

566658.1                          3                              NOTICE

EXHIBIT 4 PAGE 171

# ASSUMPTION

# SCHEDULE

EXHIBIT 4 PAGE 172

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Cure | Cure Amount |
|------|-------------|------|-------------|
| A.G.I. Geotechnical, Inc.<br>16555 Sherman Way, #A<br>Van Nuys, CA 91406 | Evaluate Soils Removal Depths | | $0.00 |
| A.G.I. Geotechnical, Inc.<br>16555 Sherman Way, #A<br>Van Nuys, CA 91406 | Never Existed | Cancelled-Wrong Vendor-SF | $0.00 |
| Advance Utility Design, Inc. – Temecula<br>27403 Ynez Road, Suite 213<br>Temecula, CA 92591 | | | $84,901.14 |
| Aleco Corporation, The<br>PO Box 81136<br>Bakersfield, CA 93380 | Pipe Purchase | | $707,204.00 |
| Aleco Corporation, The<br>PO Box 81136<br>Bakersfield, CA 93380 | James Canal Siphon Pipe | | $0.00 |
| Asbestos Service Inc.<br>2130 East Brundage Lane<br>Bakersfield, CA 93307 | Hazardous material cleanup | | $0.00 |
| Bakersfield Well & Pump Co.<br>7212 Fruitvale Avenue<br>Bakersfield, CA 93308 | Panama Lane Well Abandonment | | $0.00 |
| BP Media Group dba SoftMirage<br>17993 Cowan 2nd Floor<br>Irvine, CA 92614 | | | $0.00 |
| Chameleon Design, Inc.<br>1150 Clay Street, Suite 3<br>San Francisco, CA 94108 | | Lawsuit | $0.00 |
| Chameleon Design, Inc.<br>1711 Westcliff Dr #B<br>Newport Beach, CA 92660 | | Proof of Claim filed 3/26/09 -$85,467.74 | $0.00 |
| Construction Protective Services<br>436 W Walnut Street<br>Gardena, CA 90248 | Contruc. Site Security | Lawsuit | $0.00 |

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|------|-------------|---------|-------------|
| Creative Design Consultants, LLC 2915 Red Hill Avenue, Suite G-201 Costa Mesa, CA 92626 | Interior Design-Info Center | | $0.00 |
| Crider Construction, Inc. PO Box 20847 Bakersfield, CA 93390 | Oil Well Abandonment | Oil Well Abandonment Lawsuit Mechanic's Lien | $0.00 |
| Crider Construction, Inc. P.O. Box 41364 Bakersfield, CA 93384 | | Proof of Claim filed 1/29/09 -$97,864.62 | $0.00 |
| DGW Budget Preparation 24401 Santa Clara Avenue Dana Point, CA 92629 | HOA Budget Prep | | $0.00 |
| Diane L. Mitchell No Address | Environmental Consultant | New | $0.00 |
| Economics Research Associates 31 W 27th Street, Floor 12 New York, NY 10001 | Market Studies | McAllister Golf Course | $50,940.00 |
| Elco Water Truck 2301 El Toro Viejo Rd Bakersfield, CA 93312 | | | $0.00 |
| Elco Water Truck 2301 El Toro Viejo Rd Bakersfield, CA 93312 | | | $0.00 |
| Elco Water Truck 2301 El Toro Viejo Rd Bakersfield, CA 93312 | | | $0.00 |
| Elco Water Truck 2301 El Toro Viejo Rd Bakersfield, CA 93312 | | | $0.00 |
| Elco Water Truck 2301 El Toro Viejo Rd Bakersfield, CA 93312 | | | $0.00 |
| Elco Water Truck 2301 El Toro Viejo Rd Bakersfield, CA 93312 | | | $0.00 |

566859_1.XLS

Page 2

EXHIBIT 4 PAGE 174

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|------|-------------|---------|-------------|
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | construction water | | $0.00 |
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | Additional-Construction Water | | $0.00 |
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | Additional-Construction Water | | $0.00 |
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | Construction Water | | $0.00 |
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | Construction Water | | $0.00 |
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | Water for Dust Control | | $0.00 |
| Elco Water Truck<br>2301 El Toro Viejo Rd<br>Bakersfield, CA 93312 | Water for Dust Control | | $0.00 |
| Genesis Golf Builders, Inc.<br>PO Box 2979<br>Payson, AZ 85547 | Golf Course construction | Golf Course construction<br>Lawsuit<br>Mechanic's Lien<br>Proof of Claim filed 12/1/08 - Secured<br>$830,530.00 | $0.00 |
| Genesis Golf Builders, Inc.<br>PO Box 2979<br>Payson, AZ 85547 | Golf Course construction | Golf Course construction | $0.00 |
| Golden State Fence Company<br>870 N Main Street<br>Riverside, CA 92501 | Perimeter Walls & Fences | Mechanic's Liens<br>Proof of Claim filed 03/20/09 - Secured<br>$561,055.12 | $0.00 |
| Gordon Bricken & Associates, Inc.<br>1621 E 17th Street # K<br>Santa Ana, CA 92705-8518 | | | $0.00 |

566659_1.XLS

EXHIBIT 4 PAGE 175

MCALLISTER RANCH
SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Granite Construction Company 38000 Monroe Street Indio, CA 92203 | | | $0.00 |
| Granite Construction Company 38000 Monroe Street Indio, CA 92203 | Street Improv | Street Improvements Subject to Setoff | $166,310.80 |
| Greg Norman Golf Course Design, Inc. 2041 Vista Pkwy Level 2 West Palm Beach, FL 33411 | Design Golf | New | $122,821.68 |
| Guinn Construction 804 N Mcdurmitt Hamilton, TX 76531 | Grading Impro | | $0.00 |
| Higher Ground Land Surveying 3950 N Chestnut Diagonal #106 Fresno, CA 93726 | Construction S | Mechanic's Lien | $0.00 |
| Higher Ground Engineering & Land Surveying 700 22nd Street Bakersfield, CA 93301 | | Proof of Claim filed 11/24/08 – $139,900.58 | $0.00 |
| Jeanette C. Justin Associates, Inc. No Address | | | $0.00 |
| Jones & Stokes Associates, Inc. 2600 V Street Sacramento, CA 95818 | Archeo–Ph 2 | | $13,458.97 |
| Klassen Corporation 2021 Westwind Drive Bakersfield, CA 93301 | ConstructGolf C | Lawsuit Mechanic's Lien | $0.00 |
| Klassen Corporation Daniel T. Clifford, Esq. Clifford & Brown 1430 Tuxtun Avenue, Suite 900 Bakersfield, CA 93301 | | Proof of Claim filed 3/19/09 – Secured $1,017,596.96 | $0.00 |
| Krazan & Associates, Inc. 215 West Dakota Avenue Clovis, CA 93612 | Soils Engineering | KRA001/01 | $34,800.50 |

Page 4

566659_1.XLS

EXHIBIT 4 PAGE 176

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Landscape Development, Inc.<br>28447 Witherspoon Pkwy<br>Valencia, CA 91355 | Monument Walls at Entries | Lawsuit<br>Mechanic's Lien | $0.00 |
| Landscape Development, Inc.<br>28447 Witherspoon Pkwy<br>Valencia, CA 91355 | | | $0.00 |
| Landscape Development, Inc.<br>28447 Witherspoon Pkwy<br>Valencia, CA 91355 | Info Center Maintenance | | $0.00 |
| Landscape Development, Inc.<br>28447 Witherspoon Pkwy<br>Valencia, CA 91355 | Golf Course – Transition Buffer | | $0.00 |
| Leighton and Associates, Inc.<br>3934 Murphy Canyon Road, B205<br>San Diego, CA 92123 | | | $0.00 |
| Masonry Plus<br>5116 W Avenue K-8<br>Lancaster, CA 93536 | Ph 1 Landscape Walls | Lawsuit<br>Mechanic's Lien | $0.00 |
| Maverick Asphalt and Construction<br>3131 Wear Street<br>Bakersfield, CA 93308 | Street Improvement – Asphalt | | $0.00 |
| Maverick Asphalt and Construction<br>3131 Wear Street<br>Bakersfield, CA 93308 | Ste Imprvmts - Intract 5900 A | | $0.00 |
| Maverick Asphalt and Construction<br>3131 Wear Street<br>Bakersfield, CA 93308 | Intract 6561A | | $0.00 |
| Maverick Asphalt and Construction<br>3131 Wear Street<br>Bakersfield, CA 93308 | Reclassed 001 to 502 - PH | Intract Str Imprvmnts-Tr 6560A | $0.00 |
| McIntosh & Associates<br>2001 Wheelan Court<br>Bakersfield, CA 93309 | | | $73.02 |

566659_1.XLS

Page 5

EXHIBIT 4 PAGE 177

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| McIntosh & Associates 2001 Wheelan Court Bakersfield, CA 93309 | Civil Eng Design Services | | $0.00 |
| McIntosh & Associates 2001 Wheelan Court Bakersfield, CA 93309 | Tract maps 7057 through 7063 | | $0.00 |
| McKenna's Club & Gutter Co., Inc. PO Box 42335 Bakersfield, CA 93384 | Street Improvements | Mechanic's Lien | $0.00 |
| McKenna's Club & Gutter Co., Inc. PO Box 42335 Bakersfield, CA 93384 | In-tract concrete | | $0.00 |
| McKenna's Club & Gutter Co., Inc. PO Box 42335 Bakersfield, CA 93384 | Tract 6900A Street Improvement | | $0.00 |
| McKenna's Club & Gutter Co., Inc. PO Box 42335 Bakersfield, CA 93384 | Intract 6561 A – Undrgrnd Imp | | $0.00 |
| McKenna's Club & Gutter Co., Inc. PO Box 42335 Bakersfield, CA 93384 | Ph 1 Intract 6559 A – Str Impr | | $0.00 |
| McKenna's Club & Gutter Co., Inc. PO Box 42335 Bakersfield, CA 93384 | Ph 1 Intract 6563 A – Str Impr | | $0.00 |
| Meyer Civil Engineering, Inc. 110 S Montclair St, Suite 104 Bakersfield, CA 93309 | | Proof of Claim filed 12/12/08 –$2,651.07 | $2,651.07 |
| Michael D. & Elizabeth Antongiovanni 6501 Yosemite Place Bakersfield, CA 93309 | Agricultural Lease | | $0.00 |
| Michael Madden Associates 24795 Eaton Lane Laguna Niguel, CA 92677 | Architectural Design Guideline | | $0.00 |

Page 6

566659_1.XLS

EXHIBIT 4 PAGE 178

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Mobile Modular Management Corp.<br>770 Corporation Yard Way<br>Corona, CA 92880 | | | $0.00 |
| ModSpace<br>7100 District Blvd.<br>Bakersfield, CA 93313 | Equipment Lease | United 614985<br>G-House<br>8'x4' | $0.00 |
| Outdoor Dimensions<br>5325 E Hunter Ave<br>Anaheim, CA 92807 | Signage for Grndbkg Event | Proof of Claim filed 1/14/09 –<br>$19,750.48 | $29,745.48 |
| Outdoor Dimensions<br>5325 E Hunter Ave<br>Anaheim, CA 92807 | Signage Fabrication and Instal | | $0.00 |
| Pacific Advanced Civil Engineering, Inc.<br>17520 Newhope Street #200<br>Fountain Valley, CA 92708 | Golf Course Lake Design Dev | | $9,327.64 |
| Pacific Advanced Civil Engineering, Inc.<br>17520 Newhope Street #200<br>Fountain Valley, CA 92708 | Lake & Storm Water Mngmnt | | $0.00 |
| Park West Landscape Inc.<br>22421 Gilberto Suite A<br>Rancho Santa Margarita, CA 92688 | Landscape City & HOA areas | Lawsuit<br>Mechanic's Lien | $0.00 |
| Park West Landscape Inc.<br>22421 Gilberto Suite A<br>Rancho Santa Margarita, CA 92688 | McAllister - Infrastructure | | $0.00 |
| Park West Landscape Inc.<br>Steven M. Garber & Associates, A.P.C.<br>1901 Avenue of the Stars Suite 1100<br>Los Angeles, CA 90067 | | Proof of Claim filed 9/4/09 – Secured<br>$938,056.47 | $0.00 |
| Patricia Logan & Associates<br>3911 Mandeville Canyon Road<br>Los Angeles, CA 90049 | Marketing Consultant | | $0.00 |
| Petrotech Resources Company Inc.<br>4520 California Ave #310<br>Bakersfield, CA 93308 | Manage re-abandonment oil well | Lawsuit<br>Mechanic's Lien | $0.00 |

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Petrotech Resources Company Inc.<br>5400 Rosedale Highway<br>Bakersfield, CA 93308 | | Proof of Claim filed 1/29/09 -<br>$230,759.50 | |
| Pinnacle Engineering<br>150 North Wiget Lane, Suite 103<br>Walnut Creek, CA 94598 | Master Dev. Plans - Ph 1 | | $0.00 |
| Pinnacle Engineering<br>150 North Wiget Lane, Suite 103<br>Walnut Creek, CA 94598 | ALTA Survey | PIN002/01 - old contact SCC | $0.00 |
| R.L. Abbott & Associates<br>1903 Mineral Court<br>Bakersfield, CA 93309 | Political/Govmnt Consultant | | $20,000.00 |
| Roddan Paolucci Roddan Adv. & Public Relations<br>2516 Via Tejon #114<br>Palos Verdes Estates, CA 90274 | | | $149.50 |
| San Joaquin Engineering, Inc.<br>5309 Bold Ruler Court<br>Bakersfield, CA 93312 | Engineering & Survey Services | | $0.00 |
| San Joaquin Engineering, Inc.<br>5309 Bold Ruler Court<br>Bakersfield, CA 93312 | Ph2 Tent Tr Map - Prep&process | | $0.00 |
| Sheridan Drilling Inc.<br>PO Box 20778<br>Bakersfield, CA 93390 | Potholing work | | $8,212.50 |
| Sheridan Drilling Inc.<br>PO Box 20778<br>Bakersfield, CA 93390 | Potholing work | | $0.00 |
| Sheridan Drilling Inc.<br>PO Box 20778<br>Bakersfield, CA 93390 | Potholing work | | $0.00 |
| Sheridan Drilling Inc.<br>PO Box 20778<br>Bakersfield, CA 93390 | Potholing Existing Facilities | | $0.00 |

Page 8

566659_1.XLS

EXHIBIT 4 PAGE 180

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Sheridan Drilling Inc.<br>PO Box 20778<br>Bakersfield, CA 93390 | Potholing/Locate Existing Lines | | $0.00 |
| Sierra Cascade Construction, Inc.<br>1043 West Avenue M-4 Ste E<br>Palmdale, CA 93551 | Sewer Improvements | Lawsuit | $0.00 |
| Sierra Cascade Construction, Inc.<br>Kirk S. MacDonald<br>130 N. Brand Blvd. #405<br>Glendale, CA 91203 | | Proof of Claim filed 1/6/09 - Secured $446,744.78 | $0.00 |
| South Valley Pump Company<br>P.O. Box 78760<br>Bakersfield, CA 93383 | Construction Water | | $0.00 |
| South Valley Pump Company<br>P.O. Box 78760<br>Bakersfield, CA 93383 | Repair construction water pump | | $0.00 |
| Stantec Consulting – Chicago<br>13980 Collections Center Drive<br>Chicago, IL 60696 | Ph 2 Intract Impvmmnt&Fnl Maps | | $0.00 |
| Stantec Consulting – Chicago<br>13980 Collections Center Drive<br>Chicago, IL 60696 | Project Management | | $0.00 |
| Stantec Consulting – Chicago<br>13980 Collections Center Drive<br>Chicago, IL 60696 | Site Improvement Plans | | $0.00 |
| Stantec Consulting – Sacramento<br>13980 Collections Center Drive<br>Chicago, IL 60696 | Eng Master Dev Plans | | $0.00 |
| Stantec Consulting – Sacramento<br>13980 Collections Center Drive<br>Chicago, IL 60696 | Phase 2 Loting Studies | | $0.00 |
| Stantec Consulting Services<br>19 Technology Drive, Suite 200<br>Irvine, CA 92618 | Civil Engineering | CR0001/04 | $0.00 |

566659_1.XLS

EXHIBIT 4 PAGE 181

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amounts |
|---|---|---|---|
| Stantec<br>19 Technology Dr<br>Irvine, CA 92618 | | Lawsuit<br>Mechanic's Lien | $0.00 |
| Stantec<br>19 Technology Dr<br>Irvine, CA 92618 | Site Improvement Engineering | | $0.00 |
| Summers/Murphy & Partners, Inc.<br>34197 Pacific Coast Hwy #200<br>Dana Point, CA 92629 | Prelim Landscape Design | Lawsuit | $0.00 |
| Summers/Murphy & Partners, Inc.<br>34197 Pacific Coast Hwy #200<br>Dana Point, CA 92629 | | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Storm drain & water improvements | Lawsuit<br>Mechanic's Lien<br>Proof of Claim filed 3/11/09 –<br>$7,460,120.14 ($1,000,000 Unsecured,<br>$6,460,120.14 Secured) | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Sewer, water, storm drain impr | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Intract Str. Improvements | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | InTract 6559-SD/Water/Sewer | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Intract 5900 – Water & Sewer | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Tract 6561A- Water, Sewer, StormD | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Street Imprvmnt-Intract 6563A | | $0.00 |

566669_1.XLS

EXHIBIT 4 PAGE 182

## MCALLISTER RANCH
### SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Water Trucks for Dust Control | | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Dry Utilities | Dry Utilities | $0.00 |
| Superior Pipeline Inc.<br>PO Box 81387<br>Bakersfield, CA 93380 | Water Wells | Water Wells | $0.00 |
| SWPPP USA, Inc.<br>9530 Hageman Rd Ste B-112<br>Bakersfield, CA 93312 | Air Quality Studies | | $2,660.00 |
| SWPPP USA, Inc.<br>9530 Hageman Rd Ste B-112<br>Bakersfield, CA 93312 | Dust Control/Air Quality | | $0.00 |
| Troon Golf, LLC<br>15044 N Scottsdale Rd #300<br>Scottsdale, AZ 85254 | Management Agreement | Management Agreement<br>Proof of Claim filed 12/15/08 -<br>$225,189.50 | $227,903.84 |
| Turman Construction Co., Inc.<br>4301 Park Circle<br>Bakersfield, CA 93309 | Construction Trailer Yard | | $0.00 |
| Turman Construction Co., Inc.<br>4301 Park Circle<br>Bakersfield, CA 93309 | Construction Trailer Yard | | $0.00 |
| Turman Construction Co., Inc.<br>4301 Park Circle<br>Bakersfield, CA 93309 | Grading | Grading | $0.00 |
| Valley Crest Tree Company<br>24151 Ventura Boulevard<br>Calabasas, CA 91302 | Box Trees for Landscaping | | $0.00 |
| W&S Consultants<br>2242 Stinson Street<br>Simi Valley, CA 93065 | Ph 11 Archaeological Testing | New | $0.00 |

Page 11

## MCALLISTER RANCH
### SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Walker Concrete Constructors, Inc., aka Byron Walker 18007 Rosedale Highway Bakersfield, CA 93314 | | | $0.00 |
| West Coast Utility Serv. - San Diego 449 Bougainvillea Lane Glendora, CA 91741 | | | $0.00 |
| West Coast Utility Serv. - San Diego 449 Bougainvillea Lane Glendora, CA 91741 | | | $0.00 |
| West Coast Utility Serv. - San Diego 449 Bougainvillea Lane Glendora, CA 91741 | Dry Utilities Consulting | New | $0.00 |
| Weston/Mason Marketing c/o Toni Weston 3130 Wilshire Bl 4th Floor Santa Monica, CA 90403 | Marketing Consulting Services | | $0.00 |
| Whitten Pumps, Inc. 502 County Line Road Delano, CA 93215 | Golf Course Irrigation well | | $0.00 |
| Williams & Paddon Architects 2237 Douglas Blvd. #160 Roseville, CA 95661 | Architectural Golf Clubhouse | | $0.00 |
| Williams & Paddon Architects 2237 Douglas Blvd, #160 Roseville, CA 95661 | Beach Clubhse, Gazebo, Boathse | | $0.00 |
| Williiams + Paddon Architects + Planners, Inc. c/o Hauser & Mouzes 18826 N. Lower Sacramento Rd., Suite H Woodbridge, CA 95258 | | Proof of Claim filed 3/10/09 – $103,425.31 | $0.00 |

Page 12

566659_1.XLS

EXHIBIT 4 PAGE 184

## MCALLISTER RANCH
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Williams + Paddon Architects + Planners, Inc.<br>c/o Hauser & Mouzes<br>18826 N. Lower Sacramento Rd., Suite H<br>Woodbridge, CA 95258 | | Proof of Claim filed 3/11/09 - Secured<br>$30,531.21 | $0.00 |
| Wiredhat Interactive<br>250 Lombard #7<br>Thousand Oaks, CA 91360 | Website Hosting $ Maint | | $0.00 |

Page 13

566659_1.XLS

EXHIBIT 4 PAGE 185

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| AEI Consultants<br>2500 Camino Diablo<br>Walnut Creek, CA 94597 | This Contract Void | Refer to 4538 PH2- | $0.00 |
| AEI Consultants<br>2500 Camino Diablo<br>Walnut Creek, CA 94597 | Phase 1 Equestrian Center | Void Per Arcy 11-03-05 | $0.00 |
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | Infrastructure storm drain | Lawsuit<br>Mechanic's Lien | $0.00 |
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | Ph. 3 Lotting & Grading | | $0.00 |
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | Additional Work | | $0.00 |
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | Final Engineering | | $0.00 |
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | Park site preliminary engineer | | $0.00 |
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | | AE1002/02 | $0.00 |

Page 1

EXHIBIT 4 PAGE 186

**MCSWEENY FARMS**
**SCHEDULE OF ASSUMED AGREEMENTS**

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | Prelim Eng. Ph2 & Infra Ph1 | AE1002/05 Prelim Engineering | $0.00 |
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | AE1002/06 - Const. Staking | AE1002/06 - Const. Staking | $0.00 |
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | PH 1 Engineering Svcs. | AE10022/10 | $0.00 |
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | | AE100201 | $0.00 |
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | Phase 1 Equestrian Center | Equestrian Center | $0.00 |
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | Staking | Void- Recreated as 4753 Co#15 | $0.00 |
| AEI-CASC Engineering, Inc. c/o William D. Coffee, Esq. Songstad & Randall, LLP 2201 Dupont Drive, #100 Irvine, CA 92612 | WRC Addenda | WRC Addenda | $0.00 |

566661_1.XLS

Page 2

EXHIBIT 4 PAGE 187

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| AEI-CASC Engineering, Inc.<br>c/o William D. Coffee, Esq.<br>Songstad & Randall, LLP<br>2201 Dupont Drive, #100<br>Irvine, CA 92612 | 4538 | Void Per Arcy Refer to | $0.00 |
| All American Asphalt<br>c/o Devirian & Shinmoto<br>11400 W. Olympic Blvd., Suite 200<br>Los Angeles, CA 90064 | Street Improvements | Lawsuit<br>Mechanic's Lien<br>Two Proofs of Claim filed 03/31/09 -<br>Secured $1,737,545 | $0.00 |
| All American Asphalt<br>c/o Devirian & Shinmoto<br>11400 W. Olympic Blvd., Suite 200<br>Los Angeles, CA 90064 | State Street Extension | | $0.00 |
| Allied Traffic Equipment<br>41806 Ivy Street<br>Murrieta, CA 92562 | Traffic Control at Rec. Center | | $0.00 |
| Allied Traffic Equipment<br>41806 Ivy Street<br>Murrieta, CA 92562 | Signage/Traffic Control Plan | | $0.00 |
| Allied Traffic Equipment<br>41806 Ivy Street<br>Murrieta, CA 92562 | Traffic Signs Rec Center Open | | $0.00 |
| Answer California<br>No address | Personal Answering Service | Cancelled Per T. Hardcastle | $0.00 |
| BIA Riverside Sign Program<br>3891 - 11th Street<br>Riverside, CA 92591 | Off-Site Directional Signs | Cancelled per T. Champion<br>Proof of Claim Filed 12/29/08 - $5,175.00 | $0.00 |
| BIA Riverside Sign Program<br>3891 - 11th Street<br>Riverside, CA 92591 | Check Request Instead | Void Per Tiffany 01/30/06 | $0.00 |
| BIA Riverside Sign Program<br>3891 - 11th Street<br>Riverside, CA 92591 | Check Request Instead | Void Per Tiffany 01/30/06 | $0.00 |
| BIA/Baldy View Chapter<br>8711 Monroe Ct, Suite B<br>Rancho Cucamonga, CA 91730 | Phase Marketing | Cancelled Per T. Champion | $6,240.00 |

Page 3

566661_1.XLS

EXHIBIT 4 PAGE 188

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| BIA/Baldy View Chapter<br>8711 Monroe Ct, Suite B<br>Rancho Cucamonga, CA 91730 | BIA Signage @ Ph 1,2,& 3 | Cancelled per Tiffany Hardcase | $0.00 |
| Bob Walker Signs<br>12436 1st Street<br>Yucaipa, CA 92399 | Dust Control & Directional Signs | Dust Control & Directional Signs | $0.00 |
| Borrm Associates, Inc.<br>5161 California Avenue<br>Irvine, CA 92617 | Structural Engineering | Structural Engineering | $0.00 |
| BP Media Group dba SoftMirage<br>17993 Cowan, 2nd Floor<br>Irvine, CA 92614-4622 | Digital Design Video | | $20,665.80 |
| Bridge Tek Inc.<br>23444 Skyview Terrace<br>Los Gatos, CA 95033 | Concrete Arch Storm | | $0.00 |
| Bridge Tek Inc.<br>23444 Skyview Terrace<br>Los Gatos, CA 95033 | Concrete Arch Storm | Cancelled Per R. Henderson | $0.00 |
| Brown, Vence & Associates, Inc.<br>120 Montgomery Street<br>San Francisco, CA 94104 | Inspection & Testing | Inspection & Testing | $0.00 |
| Cal West Underground, Inc.<br>951 Sixth Street<br>Norco, CA 92860-1442 | Electrical Street Sleeving | | $0.00 |
| California Living & Energy<br>3015 Dale Court<br>Ceres, CA 95307 | Rec center/pool area | Cancel Per CT 10-13-06 | $0.00 |
| California Living & Energy<br>3015 Dale Court<br>Ceres, CA 95307 | T24 Cales & MEP's Design | T24 Cales & MEP's Design | $0.00 |
| Cass Construction, Inc.<br>P.O. Box 309<br>El Cajon, CA 92022 | Dry Utility Street Xngs. | Cancel per R. Henderson 4-7-6 | $0.00 |
| Closson and Closson, Inc.<br>12452 Vista Panorama<br>Santa Ana, CA 92705-1343 | Landscape architecture | Proof of Claim Filed 11/24/08 -<br>$26,871.00 | $26,871.00 |

Page 4

566861_1.XLS

EXHIBIT 4 PAGE 189

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Community Technologies, Inc.<br>1 Polaris Way, #100<br>Aliso Viejo, CA 92656 | Contract Intranet Site | Construct Intranet Site | $0.00 |
| Community Technologies, Inc.<br>1 Polaris Way, #100<br>Aliso Viejo, CA 92656 | Intranet Maintenance 12 Months | Intranet Maintenance 12 Months | $0.00 |
| Community Technologies, Inc.<br>1 Polaris Way, #100<br>Aliso Viejo, CA 92656 | Intranet Hosting | Void Per Marketing 1/10/07 | $0.00 |
| Creative Design Consultants, LLC<br>2915 Red Hill Avenue, Suite G-201<br>Costa Mesa, CA 92626 | Void Refer to 5168 | | $0.00 |
| Creative Design Consultants, LLC<br>2915 Red Hill Avenue, Suite G-201<br>Costa Mesa, CA 92626 | Interior Design/décor | Cancelled see 4769 OS | $0.00 |
| Creative Design Consultants, LLC<br>2915 Red Hill Avenue, Suite G-201<br>Costa Mesa, CA 92626 | Interior Design/décor | New | $0.00 |
| Creative Design Consultants, LLC<br>2915 Red Hill Avenue, Suite G-201<br>Costa Mesa, CA 92626 | Interior Design/décor | New | $0.00 |
| Creative Design Consultants, LLC<br>2915 Red Hill Avenue, Suite G-201<br>Costa Mesa, CA 92626 | Design Svcs for Clubhouse | Void Per TC 10/24/05 | $0.00 |
| Creative Design Consultants, LLC<br>2915 Red Hill Avenue, Suite G-201<br>Costa Mesa, CA 92626 | Interior Design/décor | Void Refer to 5168 OM | $0.00 |
| David A. Suplee Architectural Illustrators<br>1302 Devon Glen<br>Houston, TX 77977 | PO for Recreation Center Illus. | | $0.00 |
| Debby Cobb Consulting<br>8215 E. White Oak Ridge, #77<br>Orange, CA 92869 | CFD Consultant | Two Proofs of Claim filed 12/01/08 -<br>$2,917.82 and $1,815.00<br>One Proof of Claim filed 01/12/09 -<br>$1,815.00 | $2,917.82 |

566681_1.XLS

Page 5

EXHIBIT 4 PAGE 190

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Vendor Name | Brief Description | Remark | Cure Amount |
|---|---|---|---|
| Developers Research, Inc.<br>9913 Ilits Drive<br>Des Moines, IA 50322 | | | $0.00 |
| Events Masters International, Inc.<br>9870 Research Drive<br>Irvine, CA 92618 | Weekend Sky Speere Advertsing | Void Per Marketing | $0.00 |
| Excel Bridge Manufacturing Company<br>12001 Shoemaker Avenue<br>Santa Fe Springs, CA 90670 | Windmill entry statement | Cancelled Per D. Haywood 11/06 | $0.00 |
| Excel Bridge Manufacturing Company<br>12001 Shoemaker Avenue<br>Santa Fe Springs, CA 90670 | Western Cedar Wood Tower-Install | New | $0.00 |
| Excel Bridge Manufacturing Company<br>12001 Shoemaker Avenue<br>Santa Fe Springs, CA 90670 | Western Cedar Wood Tower-Install | New | $0.00 |
| Genesis Construction<br>PO Box 7067<br>Hemet, CA 92545 | 24" Water Transmission Line | | $0.00 |
| Genesis Construction<br>PO Box 7067<br>Hemet, CA 92545 | Off-Site Reclaimed Water | | $0.00 |
| Genesis Construction<br>PO Box 7067<br>Hemet, CA 92545 | Off-Site Domestic Water | | $0.00 |
| Genesis Construction<br>PO Box 7067<br>Hemet, CA 92545 | 30" CMLC Waterline | 30" CMLC Waterline | $0.00 |
| Genesis Construction<br>PO Box 7067<br>Hemet, CA 92545 | Ph 1 Infrastucture sewer | OCIP | $0.00 |
| Gerald Ray Basham Water Trucks<br>No Address | Water Truck Rental | New | $0.00 |
| Gerald Ray Basham Water Trucks<br>No Address | Water Truck Rental | New | $0.00 |

566661_1.XLS

Page 6

EXHIBIT 4 PAGE 191

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Glenn Lukos Associates, Inc.<br>29 Orchard<br>Lake Forest, CA 92639-8300 | Environmental Support Svcs. | GLE001/10 | $2,017.66 |
| Golden State Fince Company<br>870 N. Main Street<br>Riverside, CA 92501 | 3-Rail White Vinyl Fence-Newport | | $847.40 |
| Golden State Fince Company<br>870 N. Main Street<br>Riverside, CA 92501 | Replace Tubular Steel Panel @ Paseo | | $0.00 |
| Griffin Structures, Inc.<br>385 Second Street<br>Laguna Beach, CA 92651 | Per Construction design consul | | $0.00 |
| Griffin Structures, Inc.<br>385 Second Street<br>Laguna Beach, CA 92651 | Management services for recrea. | | $0.00 |
| Griffin Structures, Inc.<br>385 Second Street<br>Laguna Beach, CA 92651 | Design & Engineering for Pool | Cancelled - Work not performed | $0.00 |
| Group Seven Landscape Dev., Inc.<br>41655 Reagan Way, Ste. J<br>Murrieta, CA 92563 | Landscape/Streetscape | Lawsuit<br>Mechanic's Lien | $0.00 |
| Group Seven Landscape Dev., Inc.<br>41655 Reagan Way, Ste. J<br>Murrieta, CA 92563 | Landscape/Hardscape/Facilities | | $0.00 |
| Group Seven Landscape Dev., Inc.<br>41655 Reagan Way, Ste. J<br>Murrieta, CA 92563 | Landscape/Hardscape/Facilities | Cancelled - See 5918/OS | $0.00 |
| Hall & Foreman, Inc.<br>420 Exchange, Ste. 100<br>Irvine, CA 92602-1301 | Temp erosion control | | $2,148.20 |
| Hall & Foreman, Inc.<br>420 Exchange, Ste. 100<br>Irvine, CA 92602-1301 | Stormwater Implementation | | $0.00 |
| Henry M. Fehlman<br>No Address | Sediment Transport Analysis | | $0.00 |

566661_1.XLS

Page 7

EXHIBIT 4 PAGE 192

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Hillwig-Goodrow, LLC<br>No Address | Construction Staking - Perimeter Wall | Void | $0.00 |
| Hillwig-Goodrow, LLC<br>No Address | Staking of Perimeter Wall | Void - Needs to be consulting agreement | $0.00 |
| Hunter Media<br>P.O. Box 520<br>Yucaipa, CA 92399-0520 | Billboard signage | | $5,500.00 |
| Inland Erosion Control Services, Inc.<br>31630 Railroad Canyon Road, # 6<br>Canyon Lake, CA 92587 | | | $14,094.25 |
| Inland Erosion Control Services, Inc.<br>P.O. Box 2340<br>Sun City, CA 93380-1687 | SWPPP & Erosion Control | Proof of Claim Filed 03/19/08 - Secured $12,742.82 | $0.00 |
| Instant Space, Inc.<br>12890 Magnolia Avenue<br>Riverside, CA 92503 | Construction Trailer | Construction Trailer | $0.00 |
| Jeff Carpenter, Inc.<br>1380 W. Oleander Avenue<br>Perris, CA 92571-7863 | Exploratory Excavation/CDF Bac. | | $38,094.71 |
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | | Mechanic's Lien | $0.00 |
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | | | $0.00 |
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | Conceptual prelim design | | $0.00 |
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | Preparation of design study of | | $0.00 |
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | Landscape Architectual | | $0.00 |

566661_1.XLS

EXHIBIT 4 PAGE 193

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Party Name & Address | Description | Remark | Cure Amount |
|---|---|---|---|
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | | | $0.00 |
| John Hanna & Associates<br>663 Valley Avenue, #100<br>Solana Beach, CA 92075-4404 | New Contract | Conceptual Design | $0.00 |
| KIP Incorporated<br>25740 Washington Avenue<br>Murrieta, CA 92562-7242 | Storm Drain Improvements | Lawsuit<br>Mechanic's Lien | $0.00 |
| KIP Incorporated<br>25740 Washington Avenue<br>Murrieta, CA 92562-7242 | Storm Drain Improvements-State St. | | $0.00 |
| Knitter & Associates<br>20151 SW Birch St Ste 100<br>Newport Beach, CA 92660 | Landscape Design | KN1001/02 | $0.00 |
| Kring & Chung, LLP<br>38 Corporate Park<br>Irvine, CA 92606 | | | $0.00 |
| La Jolla Pacific of California, LTD<br>9571 Irvine Center Drive<br>Irvine, CA 92618-4654 | Rec Center/Pool Area Inspection | Cancel Per CT 10/13/06 | $783.60 |
| LDB & Associates, Inc.<br>3051 Edinger Avenue<br>Tustin, CA 92780 | Electrical Engineering Service | Proof of Claim Filed 12/11/08 - $23,600 | $2,637.80 |
| LDB & Associates, Inc.<br>3051 Edinger Avenue<br>Tustin, CA 92780 | Design of Street Lights, Ph 2 | | $0.00 |
| Linscott, Law & Greenspan Engineers<br>1580 Corporate Drive, #122<br>Costa Mesa, CA 92626-1460 | Traffic Signal Design | | $0.00 |
| Linscott, Law & Greenspan Engineers<br>1580 Corporate Drive, #122<br>Costa Mesa, CA 92626-1460 | Traffic Engineering | | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park, Suite 200<br>Irvine, CA 92614-4739 | Consulting/Monitoring | Proof of Claim Filed 12/08/08 - $48,920.60 | $0.00 |

566661_1.XLS

Page 9

EXHIBIT 4 PAGE 194

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Vendor Address Name | Description | Remark | Cure Amount |
|---|---|---|---|
| LSA Associates, Inc.<br>20 Executive Park, Suite 200<br>Irvine, CA 92614-4739 | Cultural/Paleontological Resou. | | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park, Suite 200<br>Irvine, CA 92614-4739 | | LSA00107 | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park, Suite 200<br>Irvine, CA 92614-4739 | Paleo/Archaeological Monitor | Paleo/Archaeolgical Monitor | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park, Suite 200<br>Irvine, CA 92614-4739 | Monitoring/Fossil Preparation | Recreated as CO on 6091/OC | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park, Suite 200<br>Irvine, CA 92614-4739 | | Voided CO 2 per Cheryl T | $0.00 |
| Masonry Group, The<br>8188 Lincoln Avenue, Suite 100<br>Riverside, CA 92504 | Block Retaining Walls | | $0.00 |
| Masonry Group, The<br>8188 Lincoln Avenue, Suite 100<br>Riverside, CA 92504 | Plaster Walls - Perimeter Wall | Void Per M. Baumheher 9/6/07 | $0.00 |
| McSweeny Land Venture, LLC<br>7809 Bonanza Drive<br>Bakersfield, CA 93307 | Clearing & Grub | | $0.00 |
| McSweeny Land Venture, LLC<br>7809 Bonanza Drive<br>Bakersfield, CA 93307 | Clearing & Grub | | $0.00 |
| Merit Association Services, Inc.<br>1 Polaris Way, Ste. 100<br>Aliso Viejo, CA 92656-5360 | Developer Services | | $937.50 |
| Merit Association Services, Inc.<br>1 Polaris Way, Ste. 100<br>Aliso Viejo, CA 92656-5360 | DRE | New Contract | $0.00 |
| Mesa Pacific Construction, Inc.<br>151 Kalmus Dr Ste F5<br>Costa Mesa, CA 92626 | Changes/Insp. Requirements/city | | $33,724.95 |

Page 10

566661_1.XLS

EXHIBIT 4 PAGE 195

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Mesa Pacific Construction, Inc.<br>151 Kalmus Dr Ste F5<br>Costa Mesa, CA 92626 | Recreation Center | | $0.00 |
| Michael C. McGovern, PE<br>4049 Reid Street<br>Palatka, FL 32177 | | MIC011/12 | $0.00 |
| Michael Madden Associates<br>24795 Eaton Lane<br>Laguna Niguel, CA 92677 | Community Planning | | $0.00 |
| Murrieta Development Co.<br>42540 Rio Nedo Road<br>Temecula, CA 92590-3727 | EMWD Signs: Water Meters/Mains | | $3,237.25 |
| Native Ground Monitoring & Research Inc.<br>1012 Pauma Road<br>Pauma Valley, CA 92061 | Native American Monitoring | | $0.00 |
| Natural Resource Consultants<br>1590 S. Pacific Coast Hwy, # 17<br>Laguna Beach, CA 92651 | Biological Consulting | Cancel Per CT 10/13/06 | $0.00 |
| Natural Resource Consultants<br>1590 S. Pacific Coast Hwy, # 17<br>Laguna Beach, CA 92651 | Cancel Per CT 10/13/06 | NAT001/09 | $0.00 |
| Nissho of California, Inc.<br>c/o Christopher R. Mordy<br>Peterson & Price APC<br>655 W. Broadway, Ste. 1600<br>San Diego, CA 92101-8494 | Erosion Control | Lawsuit | $0.00 |
| Nissho of California, Inc.<br>c/o Christopher R. Mordy<br>Peterson & Price APC<br>655 W. Broadway, Ste. 1600<br>San Diego, CA 92101-8494 | Temp erosion control | | $0.00 |
| Outdoor Dimensions<br>5325 E. Hunter Avenue<br>Anaheim, CA 92807-2054 | Rec. Center Signage | Proof of Claim Filed 01/14/09 -<br>$118,856.07 | $0.00 |

Page 11

566661_1.XLS

EXHIBIT 4 PAGE 196

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Outdoor Dimensions<br>5325 E. Hunter Avenue<br>Anaheim, CA 92807-2054 | Signage | | $0.00 |
| Outdoor Dimensions<br>5325 E. Hunter Avenue<br>Anaheim, CA 92807-2054 | Signage | | $0.00 |
| Outdoor Dimensions<br>5325 E. Hunter Avenue<br>Anaheim, CA 92807-2054 | Phase Marketing | | $0.00 |
| Outdoor Dimensions<br>5325 E. Hunter Avenue<br>Anaheim, CA 92807-2054 | Phase Marketing | | $0.00 |
| Outdoor Sales, Inc.<br>2161 Adair Street<br>San Marino, CA 91108-2605 | Billboard #72161 Maintenance | | $32,854.15 |
| Outdoor Sales, Inc.<br>2161 Adair Street<br>San Marino, CA 91108-2605 | Outdoor Bulletin #7012 Maint. | | $0.00 |
| Outdoor Sales, Inc.<br>2161 Adair Street<br>San Marino, CA 91108-2605 | Outdoor Bulletin Signs #33682 | | $0.00 |
| PACE<br>No Address | | | $0.00 |
| PACE<br>No Address | Professional Design Services | | $0.00 |
| Pacific Erosion Control, Inc.<br>10541 - A Prospect Avenue<br>Santee, CA 92071 | Temporary Erosion Control | | $0.00 |
| Pacific Erosion Control, Inc.<br>5520 Wellesley Street, #100<br>La Mesa, CA 91942 | Traffic Control, Clear & Grub, R | Lawsuit<br>Mechanic's Lien | $0.00 |
| Pacific Soils Engineering, Inc. – Tustin<br>P.O Box 2249<br>Cypress, CA 92630 | Observation/Testing Rough Grad | Proof of Claim Filed 12/19/08 - Secured<br>$81,970.49 | $63,910.38 |

EXHIBIT 4 PAGE 197

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Names | Description | Remarks | Cure Amount |
|---|---|---|---|
| Pacific Soils Engineering, Inc. - Tustin P.O Box 2249 Cypress, CA 92630 | Storm Drain Imp. Plan Review | | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Geotechnical Services | | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Geotechnical Monitoring | | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Geotechnical | | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Geotechnical Testing | New Contract | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Add'l Preliminary Soil Reports | New Contract | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Prelim Geotech Investigation | PAC004/16 | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Geotech Grading Monitoring/Rpt. | Re: Negotiated Replaces 742OC | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Phase 1 Storm Drain | Replaces 4633 OS | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Infrastructure Sewer | Replaces 4641 OS | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Infrastructure Reclaimed Water | Replaces 4661 OS | $0.00 |
| Pacific Soils Engineering, Inc. 13331 Garden Grove Blvd., Unit N Garden Grove, CA 92843 | Infrastructure Water | Replaces 4662 OS | $0.00 |

Page 13

566661_1.XLS

EXHIBIT 4 PAGE 198

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Pacific States/Thomas Pipeline 30125 Wickerd Road Menifee, CA 92584 | Phase 1 Storm Drain | Void Refer to 4871 OS Lawsuit | $0.00 |
| Pacific States Engineering, Inc. Montaleona & McCrory LLP 200 W. Santa Ana Blvd., Ste. 200 Santa Ana, CA 92701 | | Proof of Claim Filed 03/16/09 - Secured 76,866.97 | |
| Pacific States/Thomas Pipeline 30125 Wickerd Road Menifee, CA 92584 | Infrastructure Sewer | Void Refer to 4872 OS | $0.00 |
| Pacific States/Thomas Pipeline 30125 Wickerd Road Menifee, CA 92584 | Infrastructure Reclaimed Water | Void Refer to 4873 | $0.00 |
| Pacific States/Thomas Pipeline 30125 Wickerd Road Menifee, CA 92584 | Infrastructure Water | Void Refer to 4874 OS | $0.00 |
| Patricia Logan & Associates 3911 Mandeville Canyon Road Los Angeles, CA 90049 | Mkt. & Sales Consulting | PAT002/06 | $0.00 |
| Pechanga Indian Reservation Post Office Box 1477 Temecula, CA 92593 | | | $0.00 |
| Portosan Company, LLC 4611 North Rowland Drive El Monte, CA 91731 | No Retention - Rental Only | Temp Fence & Toilets | $0.00 |
| Power Plus Utility Service 1210 N. Red Gun Street Anaheim, CA 92806 | Monthly rental of power equipment | | $112.50 |
| Power Plus Utility Service 1210 N. Red Gun Street Anaheim, CA 92806 | | | $0.00 |
| Power Plus Utility Service 1210 N. Red Gun Street Anaheim, CA 92806 | 9 Month Rental for Rec. Center | | $0.00 |

Page 14

EXHIBIT 4 PAGE 199

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Power Plus Utility Service<br>1210 N. Red Gun Street<br>Anaheim, CA 92806 | 6 Month Equipment Rental | | $0.00 |
| Power Plus Utility Service<br>1210 N. Red Gun Street<br>Anaheim, CA 92806 | Temporary Power | | $0.00 |
| Power Plus Utility Service<br>1210 N. Red Gun Street<br>Anaheim, CA 92806 | Provide/Install Phone Lines | Provide/Install Phone Lines | $0.00 |
| Power Plus Utility Service<br>1210 N. Red Gun Street<br>Anaheim, CA 92806 | Temp Pwr. Construction Trailer | Temp Pwr. Construction Trailer | $0.00 |
| Project Liason, LLC<br>No Address | Liason work w/mgmt. team | Liason work w/mgmt. team | $0.00 |
| R&S Madrigal Construction, Inc.<br>2181 Van Dell Road<br>Riverside, CA 92509 | Equip/Labor on Restroom Bldg. | | $0.00 |
| R&S Madrigal Construction, Inc.<br>2181 Van Dell Road<br>Riverside, CA 92509 | Sidewalk Grade | | $0.00 |
| R&S Madrigal Construction, Inc.<br>2181 Van Dell Road<br>Riverside, CA 92509 | Grading Services | | $0.00 |
| R&S Madrigal Construction, Inc.<br>2181 Van Dell Road<br>Riverside, CA 92509 | Grade Park | | $0.00 |
| Rivertech Inc.<br>P.O. Box 3397<br>Laguna Hills, CA 92654 | Review of Concept Plan | | $0.00 |
| Roddan Paolucci Roddan Adv. & Public Relations<br>2516 Vie Tejon, #114<br>Palos Verdes Estates, CA 90274-6803 | | | $0.00 |
| Sierra Pacific Electrical Cont.<br>2542 Avalon Street<br>Riverside, CA 92509-2095 | Street Lighting System | Lawsuit<br>Mechanic's Lien | $0.00 |

Page 15

566661_1.XLS

EXHIBIT 4 PAGE 200

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Sierra Pacific Electrical Cont.<br>2542 Avalon Street<br>Riverside, CA 92509-2095 | State St. @ Domenigoni/Gibbel | | $0.00 |
| Skyview Imaging<br>23091 Coffee Berry Circle<br>Corona, CA 92883-8139 | Oblique Angle Aerial Photograph | | $525.00 |
| Skyview Imaging<br>23091 Coffee Berry Circle<br>Corona, CA 92883-8139 | Oblique Angle Aerial Photograph | | $0.00 |
| So. Cal Pump & Well Drilling, Inc.<br>1510 Palmyrita Avenue<br>Corona, CA 92883-6358 | Well Abandonment | | $898.35 |
| So. Cal Sandbags, Inc.<br>12620 Bosley Lane<br>Corona, CA 92883-6358 | | Lawsuit<br>Mechanic's Lien | $0.00 |
| So. Cal Sandbags, Inc.<br>12620 Bosley Lane<br>Corona, CA 92883-6358 | Erosion Control Jan-April 08 | | $0.00 |
| So. Cal Sandbags, Inc.<br>12620 Bosley Lane<br>Corona, CA 92883-6358 | 2008-09 Erosion Control Instal | | $0.00 |
| Soboba Band of Luiseno Indians<br>P.O. Box 487<br>San Jacinto, CA 92581-0487 | Native American Monitoring | Proof of Claim Filed 01/22/09 -<br>$48,585.94 | $48,585.94 |
| Soboba Band of Luiseno Indians<br>P.O. Box 487<br>San Jacinto, CA 92581-0487 | Native American Monitoring | | $0.00 |
| Southwestern Equipment, LLC<br>John M. Turner, Esq.<br>550 West C St., Ste. 1150<br>San Diego, CA 92101-8582 | Basins "A" & "B" & Water Quality | Mechanic's Lien | $0.00 |
| Southwestern Equipment, LLC<br>John M. Turner, Esq.<br>550 West C St., Ste. 1150<br>San Diego, CA 92101-8582 | Drainage Swale & Berms | Void Per Purchasing | $0.00 |

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Southwestern Equipment, LLC<br>John M. Turner, Esq.<br>550 West C St., Ste. 1150<br>San Diego, CA 92101-8582 | Park Site Grading | Void Per Purchasing 5/23/07 | $0.00 |
| Stacy Dukes Design<br>3201 W Warner Avenue<br>Santa Ana, CA 92704 | Monument Signs & Graphics | Monument Signs & Graphics | $0.00 |
| Stormwater Compliance Specialists, Inc.<br>455 N. Twin Oaks Valley Road<br>San Marcos, CA 92069-1708 | SWPPP/Inspections/Training/Pla | | $2,750.00 |
| Superior Masonry, Inc.<br>300 W. Olive St., Ste. A<br>Colton, CA 92324-1765 | Splitface Masonry Walls | Lawsuit<br>Mechanic's Lien | $0.00 |
| Tenner Johnson, LLP<br>11810 Pierce Street, #300<br>Riverside, CA 92505 | | | $0.00 |
| The Public Restroom Company<br>13300 Arrowsprings Drive<br>Reno, NV 89511 | Provide & Install bathroom fac. | | $0.00 |
| The Public Restroom Company<br>13300 Arrowsprings Drive<br>Reno, NV 89511 | Wainscott, Door Closers, Sink | | $0.00 |
| Thomas Olsen Associates, Inc.<br>1724 N Mesa Drive<br>Flagstaff, AZ 86001 | | | $0.00 |
| Thomas Pipeline, Inc.<br>33630 Zeiders Road<br>Menifee, CA 92584-9615 | Delivery Svc. For Pipe & Gravel | Delivery Svc. For Pipe & Gravel | $0.00 |
| TNT Grading, Inc.<br>40335 Winchester Rd., Ste. E<br>Temecula, CA 92591-5518 | Mass Excavation | Lawsuit<br>Mechanic's Lien | $0.00 |
| TNT Grading, Inc.<br>40335 Winchester Rd., Ste. E<br>Temecula, CA 92591-5518 | Phase 2 Grading | Cancelled per R. Henderson | $0.00 |

566661_1.XLS

Page 17

EXHIBIT 4 PAGE 202

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| TNT Grading, Inc.<br>40335 Winchester Rd., Ste. E<br>Temecula, CA 92591-5518 | Mass & Rough Grading - Ph1 | | $0.00 |
| Topline Concrete & Landscape, Inc.<br>P.O. Box 1294<br>Wildomar, CA 92595-1294 | Sidewalk / R&R | Mechanic's Lien | $0.00 |
| UCS Trenching, Inc.<br>Kring & Chung, LLP<br>3602 Inland Empire Blvd., Ste. B-208<br>Ontario, CA 91764 | | Proof of Claim Filed 03/20/09 - Secured<br>$28,049.35 | |
| UCS Trenching, Inc.<br>2420 Railroad Street<br>Corona, CA 92880 | Transfer from 5708/OS & new work | Lawsuit<br>Mechanic's Lien | $0.00 |
| UCS Trenching, Inc.<br>2420 Railroad Street<br>Corona, CA 92880 | Balance Forwarded from 5708/OS | Cancelled- Reissued 6242&6246 | $0.00 |
| Urban Crossroads - Irvine<br>41 Corporate Park, #300<br>Irvine, CA 92606 | Prelim Noise Study | . | $0.00 |
| Urban Crossroads - Irvine<br>41 Corporate Park, #300<br>Irvine, CA 92606 | Fair Share Eval/Traffic Analysis | | $0.00 |
| Urban Crossroads - Irvine<br>41 Corporate Park, #300<br>Irvine, CA 92606 | Design Review & Ops Analysis | URB004/12 | $0.00 |
| Urban Crossroads - Riverside<br>3685 Main Street, #350<br>Riverside, CA 92501 | Trans, Mit. & Imp. Fee Rvw Svc. | | $0.00 |
| Urban Crossroads - Riverside<br>3685 Main Street, #350<br>Riverside, CA 92501 | Trans, Mit. & Imp. Fee Rvw Svc. | Refer to 4539 PH 1 | $0.00 |
| Utility Conduit Systems<br>P.O. Box 1803<br>Corona, CA 92878-1803 | Bal. Trans to UCS Trenching | Mechanic's Lien | $0.00 |

Page 18

566661_1.XLS

EXHIBIT 4 PAGE 203

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Utility Conduit Systems<br>P.O. Box 1803<br>Corona, CA 92878-1803 | Remaining Balance 5708/OS | | $0.00 |
| Utility Specialists<br>4429 Moreno Blvd.<br>San Diego, CA 92117-4325 | Coordinate Dry Utilities | Proof of Claim Filed 11/21/08 - $20,950 | $20,950.00 |
| Utility Specialists Southwest, Inc.<br>4429 Moreno Blvd.<br>San Diego, CA 92117-4325 | Dry Utility | | $0.00 |
| Utility Specialists Southwest, Inc.<br>4429 Moreno Blvd.<br>San Diego, CA 92117-4325 | Composite Utility Plan | | $0.00 |
| Utility Specialists Southwest, Inc.<br>4429 Moreno Blvd.<br>San Diego, CA 92117-4325 | | UT100/02 | $0.00 |
| VS. Fire & Security Services<br>1011 East Lacy Avenue<br>Anaheim, CA 92805 | Design Fire Sprinkler Plans | | $0.00 |
| Warner Water Works, Inc.<br>19249 Seaton Avenue<br>Perris, CA 92570 | Water Truck Service | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Construction Water | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Construction Water Dvlpmn | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Re-rout existing invasion line | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Construction | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Water Line Repairs/Line Relocation | | $0.00 |

566661_1.XLS

EXHIBIT 4 PAGE 204

## MCSWEENY FARMS
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|------|-------------|---------|-------------|
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Construction Water Development | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Construction Water Development | | $0.00 |
| Waterforce, Inc.<br>8266 East Woodwind Avenue<br>Orange, CA 92869 | Rec Cnter Water-Rent &<br>Disassemb. | | $0.00 |
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Blvd, 4th Floor<br>Santa Monica, CA 90403-2358 | | | $0.00 |
| Wiredhat Interactive<br>250 Lombard #7<br>Thousand Oaks, CA 91360 | Web Hosting and Maintenance | | $0.00 |

Page 20

566661_1.XLS

EXHIBIT 4 PAGE 205

**SUMMERWIND**
**SCHEDULE OF ASSUMED AGREEMENTS**

| Name | Description | Remarks | Cure Amount |
|------|-------------|---------|-------------|
| 5th Gear, LLC<br>8695 W Washington Bl #2<br>Culver City, CA 90232 | | | $27,682.25 |
| 5th Gear, LLC<br>8695 W Washington Bl #2<br>Culver City, CA 90232 | | | $0.00 |
| 5th Gear, LLC<br>8695 W Washington Bl #2<br>Culver City, CA 90232 | | | $0.00 |
| 5th Gear, LLC<br>8695 W Washington Bl #2<br>Culver City, CA 90232 | | | $4,048.70 |
| Absolute Soil Control, Inc.<br>PO Box 2125<br>Palm Springs, CA 92263 | Erosion/Dust Control - Weed Abat | | $0.00 |
| Advanced GeoEnvironmental, Inc.<br>381 Thor Place<br>Brea, CA 92821 | PH 1 Environmental Assessment | PH 1 Environmental Assessment | $0.00 |
| Albert E. Hazbun Consulting<br>No Address | Consult for Recycled H2O use | Consult for Recycled H2O use | |
| All American Asphalt<br>PO Box 2229<br>Corona, CA 92878 | Street Improvements | Lawsuit<br>Mechanic's Lien | $0.00 |
| All American Asphalt<br>c/o Devitian & Shinmoto<br>11400 W Olympic Blvd., Suite 200<br>Los Angeles, CA 90064 | | Proof of Claim filed 3/11/09 - Secured<br>$81,609.00 | $0.00 |
| Architectural Precision Models<br>Linda K. Murphy<br>P.O. Box 851<br>81-1073 A Captain Cook Road<br>Captain Cook, HI 96704 | | | $0.00 |
| Borthwick, Guy, Bettenhausen, Inc.<br>2462 Dupont Drive<br>Irvine, CA 92612 | Peer Review/Landscape Archi | | $625.00 |
| Cal West Underground, Inc.<br>951 Sixth Street<br>Norco, CA 92860 | Backbone/Xing/Lights/Meter Pd | | $35,643.25 |

Page 1

566660_1.XLS

EXHIBIT 4 PAGE 206

**SUMMERWIND**
**SCHEDULE OF ASSUMED AGREEMENTS**

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| California Environmental Cont. 8739 Washington Avenue Whittier, CA 90601 | 1 Gorman-Rupp 6x6 Lift Station | Cancelled-Vendor rejected PO | $0.00 |
| Cash Grading Contractors, Inc. 555 West State Street Ontario, CA 91762 | Parkway/Street Grading, Tr32702 | VOID Per Purchasing | $0.00 |
| Chameleon Design, Inc. 1150 Clay Street Suite 3 San Francisco, CA 94108 | | | $0.00 |
| Chameleon Design, Inc. 1150 Clay Street Suite 3 San Francisco, CA 94108 | | | $0.00 |
| Chameleon Design, Inc. 1150 Clay Street Suite 3 San Francisco, CA 94108 | | | $0.00 |
| Charles E. Skaggs 3890 N Like Oak Ave. Rialto, CA 92377 | Political Consultant | CHA012/01 Proof of Claim filed 11/20/08 – $8,011.28 | $0.00 |
| Concord Group, The 130 Newport Center Drive, Suite 230 Newport Beach, CA 92660 | Market Study for CFD | | $0.00 |
| Contech Construction Products Inc. dba Ohio Contech Construction Products Inc. 9025 Centre Pointe Drive, Suite 400 West Chester, OH 45069 | 65' x 6' Continental Bridge | | $0.00 |
| Contech Construction Products Inc. dba Ohio Contech Construction Products Inc. 9025 Centre Pointe Drive, Suite 400 West Chester, OH 45069 | 24" Diameter x .250 thick wall | | $0.00 |
| Contech Construction Products Inc. dba Ohio Contech Construction Products Inc. 9025 Centre Pointe Drive, Suite 400 West Chester, OH 45069 | Fabrication Inspection | | $0.00 |
| Contech Construction Products Inc. dba Ohio Contech Construction Products Inc. 9025 Centre Pointe Drive, Suite 400 West Chester, OH 45069 | Oca-80'x6" Continental Bridge | | $0.00 |

Page 2

EXHIBIT 4 PAGE 207

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remarks | Cure Amount |
|---|---|---|---|
| Contech Construction Products Inc.<br>dba Ohio Contech Construction Products Inc.<br>9025 Centre Pointe Drive, Suite 400<br>West Chester, OH 45069 | 100' of 24" Dia x .250 Thick | | $0.00 |
| Continental Bridge, Inc.<br>dba Contech Bridge Solutions, Inc.<br>9025 Centre Pointe Drive, Suite 400<br>West Chester, OH 45069 | Pedestrian Bridge | | $0.00 |
| Continental Bridge, Inc.<br>dba Contech Bridge Solutions, Inc.<br>9025 Centre Pointe Drive, Suite 400<br>West Chester, OH 45069 | Pedestrian Bridge Design/Fabr | Cancelled - Recreated as 1543OP | $0.00 |
| Debby Cobb Consulting<br>8215 E White Oak Ridge #77<br>Orange, CA 92869 | CFD Consultant | | $1,815.00 |
| Development Planning & Finance Group, Inc.<br>27127 Calle Arroyo #1910<br>San Juan Capistrano, CA 92675 | Storm Drain Financial Study | | $3,750.00 |
| Dexter Wilson Engineering, Inc.<br>2234 Faraday Avenue<br>Carlsbad, CA 92008 | Value Engineering-Sewer TP | | $0.00 |
| Douglas Bender & Associates, Inc.<br>11860 Pierce Street Suite 100<br>Riverside, CA 92505 | Engineering | | $11,340.00 |
| Douglas Bender & Associates, Inc.<br>11860 Pierce Street Suite 100<br>Riverside, CA 92505 | Peer Review of Final Plans | | $0.00 |
| Douglas Bender & Associates, Inc.<br>557 Wald<br>Irvine, CA 92618 | | Proof of Claim filed 11/26/08 -<br>$11,340.00 | $0.00 |
| Dust Control, Inc.<br>22904 Banbury Court<br>Murrieta, CA 92562 | Weed Abatement | | $191,129.26 |
| Dust Control, Inc.<br>22904 Banbury Court<br>Murrieta, CA 92562 | Erosion Control | | $0.00 |

EXHIBIT 4 PAGE 208

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Current Amount |
|------|-------------|--------|----------------|
| Elite Bobcat Service, Inc.<br>1320 E Sixth Street #100<br>Corona, CA 92879 | Grade/Pave/Stripe 3" Cherry Blvd | | $17,122.50 |
| Ewing Irrigation Product, Inc.<br>3441 E Harbour Drive<br>Phoenix, AZ 85034 | Calsense Irrigation Controller | | $0.00 |
| Ewing Irrigation Product, Inc.<br>3441 E Harbour Drive<br>Phoenix, AZ 85034 | Calsense Irrigation Controller | Void Per D. Dennig/C. Ochoa | $0.00 |
| Glenn Lukos Associates, Inc.<br>29 Orchard<br>Lake Forest, CA 92630 | Regulatory Support Services | | $16,462.13 |
| Glenn Lukos Associates, Inc.<br>29 Orchard<br>Lake Forest, CA 92630 | Regulatory Support Services | | $0.00 |
| Glenn Lukos Associates, Inc.<br>29 Orchard<br>Lake Forest, CA 92630 | Regulatory Support Services | | $0.00 |
| Glenn Lukos Associates, Inc.<br>29 Orchard<br>Lake Forest, CA 92630 | Regulatory Support Services | | $0.00 |
| Gorman Rupp Company, The<br>P.O. Box 1217<br>Mansfield, OH 44901-1217 | Sewage Lift Station | Cancelled Per C. Ochoa | $0.00 |
| Griffin Structures, Inc.<br>385 Second Street<br>Laguna Beach, CA 92651 | Representation Services | | $0.00 |
| Hall & Forman, Inc.<br>17782 17th Street, Suite 200<br>Tustin, CA 92780 | Temp Erosion Control | | $2,148.22 |
| Hall & Forman, Inc.<br>420 Exchange, Suite 100<br>Irvine, CA 92602 | | Proof of Claim filed 3/20/09 -<br>$244.44 | $0.00 |
| Helix Environmental Planning, Inc.<br>7578 El Cajon Boulevard, Suite 200<br>La Mesa, CA 91942 | Environmental Permitting Serv. | | $0.00 |

566660_1.XLS

Page 4

EXHIBIT 4 PAGE 209

**SUMMERWIND**

**SCHEDULE OF ASSUMED AGREEMENTS**

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Helix Environmental Planning, Inc.<br>7578 El Cajon Boulevard, Suite 200<br>La Mesa, CA 91942 | Environmental Permitting Serv. | | $0.00 |
| Helix Environmental Planning, Inc.<br>7578 El Cajon Boulevard, Suite 200<br>La Mesa, CA 91942 | Environmental Permitting Serv. | | $0.00 |
| Helix Environmental Planning, Inc.<br>7578 El Cajon Boulevard, Suite 200<br>La Mesa, CA 91942 | Environmental Permitting Serv. | | $0.00 |
| Innovative Inclosures<br>41745 Elm Street #402<br>Murrieta, CA 92562 | Native Slope Restoration | | $38,361.25 |
| Keith Companies, The - Inland Empire<br>13980 Collections Center Drive<br>Chicago, IL 60693 | Construction Staking, topograp | | $57,724.50 |
| Keith Companies, The - Inland Empire<br>13980 Collections Center Drive<br>Chicago, IL 60693 | Phase 2 Infastructure Plans | | $0.00 |
| Keith Companies, The - Inland Empire<br>13980 Collections Center Drive<br>Chicago, IL 60693 | TM 33536 In-Tract Plans | Cancelled - Recreated - Stantec | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | | | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | | Alta Survey | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | New Contract | Caltrans Fwy Crossing Design | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Phase 3 | Prelim Eng. & TMs | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Engineering & TMs | Prelim Eng. Phase 4 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | re-coded from 849oc | Prelim Engineering | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | New Contract - Phase 2 | Prelim Engineering & TMs | $0.00 |

Page 5

566660_1.XLS

EXHIBIT 4 PAGE 210

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Other Amount |
|------|-------------|--------|--------------|
| Keith Companies, The - Los Angeles<br>No Address | Re-coded was 8640c | Prelim Engineering Phase 3 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | re-coded from 8660c | Prelim Engineering Phase 4 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | re-coded from 8670c | Prelim Engineering Phase 5 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Engineering & TMs | Prelim Eng. - Phase 5 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Engineering Services | THE004/20 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Preliminary Engineering | THE004/20 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Construction Staking | THE004/27 | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | TPM 33105 Final Engineering | TPM 33105 Final Engineering | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | TT32702 Final Engineering | TT32702 Final Engineering | $0.00 |
| Keith Companies, The - Los Angeles<br>No Address | Tent. Parcel Map Final Engin | Test Purpose Only VOID | $0.00 |
| KIP Incorporated<br>25740 Washington Ave | Pedestrian Bridge Installation | | $0.00 |
| Laer Pearce & Associates<br>22892 Mill Creek Drive<br>Laguna Hills, CA 92653 | Consultant Services | | $0.00 |
| Laer Pearce & Associates<br>22892 Mill Creek Drive<br>Laguna Hills, CA 92653 | for Chamber of Commerce | LAE001-02 - Website Design | $0.00 |
| Laer Pearce & Associates<br>22892 Mill Creek Drive<br>Laguna Hills, CA 92653 | Political Consultant | LAE001/02 | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park Suite 200<br>Irvine, CA 92614 | Resource Mitigation | | $0.00 |
| LSA Associates, Inc.<br>20 Executive Park Suite 200<br>Irvine, CA 92614 | Cultural & Paleo Mitigation | | $0.00 |

566660_1.XLS

Page 6

EXHIBIT 4 PAGE 211

# SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amounts |
|---|---|---|---|
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Cultural & Paleo Mitigation | | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Cultural & Paleo Mitigation | | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Cultural & Paleo Mitigation | | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Oak Tree Inventory | LSA001/06 | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Due Diligence | LSA001/08 | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Permitting Services | LSA001/09 | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | G & J Street Alignment | LSA001/10 | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | Specific Plan 1 Amendment | LSA001/11 | $0.00 |
| LSA Associates, Inc. 20 Executive Park Suite 200 Irvine, CA 92614 | New Contract | Off Site Water Tank BioReport | $0.00 |
| Merit Association Services, Inc. 1 Polaris Way Suite 100 Aliso Viejo, CA 92656 | HOA CC&R Legal Service | | $6,451.59 |
| Michael C. McGovern, PE 4049 Reid Street Palatka, FL 32177 | Project Consultant | MIC011/01 | $0.00 |
| Michael Madden Associates 24795 Eaton Lane Laguna Niguel, CA 92677 | Prototypical Residentail Exhib | Prototypical Residentail Exhib | $0.00 |

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| Moote Group, The<br>1516 Brookhollow Drive<br>Santa Ana, CA 92705 | Cost Share Study | | $0.00 |
| O'Reilly Public Relations<br>3403 10th Street, Suite 110<br>Riverside, CA 92501 | Commty/Govt/Media Relations | | $0.00 |
| Pacific Advanced Civil Engineering, Inc.<br>17520 Newhope Street #200<br>Fountain Valley, CA 92708 | Scour & Lateral Erosion Contrl | | $38,930.00 |
| Pacific Soils Engineering, Inc. – Cypress<br>10653 Progress Way<br>Cypress, CA 90630 | Observation & Testing of Rough | | $157,393.97 |
| Pacific Soils Engineering, Inc. – Cypress<br>10653 Progress Way<br>Cypress, CA 90630 | Geotech Investigation | PAC004/17 | $0.00 |
| Pacific Soils Engineering, Inc. – Cypress<br>10653 Progress Way<br>Cypress, CA 90630 | Phase 2 Breakout from Phase 1 | Phase 2 Breakout from Phase 1 | $0.00 |
| Pacific Soils Engineering, Inc. – Cypress<br>10653 Progress Way<br>Cypress, CA 90630 | Phase 3 Breakout of Phase 1 | Phase 3 Breakout of Phase 1 | $0.00 |
| Pacific Soils Engineering, Inc. – Cypress<br>10653 Progress Way<br>Cypress, CA 90630 | Phase 4 Breakout of Phase 1 | Phase 4 Breakout of Phase 1 | $0.00 |
| Pacific Soils Engineering, Inc. – Cypress<br>10653 Progress Way<br>Cypress, CA 90630 | Phase 5 Breakout of Phase 1 | Phase 5 Breakout of Phase 1 | $0.00 |
| Pacific Soils Engineering, Inc.<br>Darren Burge Esq.<br>Cohen & Burge LLP<br>699 Hampshire Rd, Suite 207<br>Thousand Oaks, CA 91361 | | Proof of Claim filed 12/10/08 - Secured<br>$157,393.97 | $0.00 |
| Patricia Logan & Associates<br>3911 Mandeville Canyon Road<br>Los Angeles, CA 90049 | Marketing sales consulting | | $0.00 |

EXHIBIT 4 PAGE 213

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | (Euro) Amount |
|------|-------------|--------|---------------|
| Planning Company Associates, Inc. 35 North Lake Avenue, Suite 640 Pasadena, CA 91101 | Interstate Highway plan | | $0.00 |
| Power Plus Utility Serv. 1210 N Red Gum Street Anaheim, CA 92806 | Temp Power/Equipment Rental | | $0.00 |
| Power Plus Utility Serv. 1210 N Red Gum Street Anaheim, CA 92806 | 350 kw generator | PO 4101006 | $0.00 |
| R&S Madrigal Construction & Supply, Inc. P.O. Box 3548 Riverside, CA 92519 | Grading Services | | $0.00 |
| RBF Consulting - Irvine Div. 14725 Alton Parkway Irvine, CA 92618 | Prelim Bridge Design | Lawsuit Mechanic's Lien | $0.00 |
| RBF Consulting - Irvine Div. 14725 Alton Parkway Irvine, CA 92618 | | RBF001/05 | $0.00 |
| RBF Consulting - Irvine Div. 14725 Alton Parkway Irvine, CA 92618 | Prelim Engineering | RBF001/05 | $0.00 |
| RBF Consulting - Irvine Div. 14725 Alton Parkway Irvine, CA 92618 | | RBF001/06 | $0.00 |
| S & S Seeds, Inc. P.O. Box 1275 Carpinteria, CA 93014-1275 | Purchase Order | Acorn Collection | $0.00 |
| Schilling Corporation 697 Greenfield Drive El Cajon, CA 92021 | Gas Main Extension Fee | Lawsuit Lien | $0.00 |
| Schilling Corporation c/o Scott A. Schaelen, APLC 3565 7th Avenue San Diego, CA 92103 | | Proof of Claim filed 1/15/09 - Secured $210,631.01 | $0.00 |
| Signs & Pinnick, Inc. PO Box 945 El Cajon, CA 92022 | Grading | | $65,939.49 |

566660_1.XLS

Page 9

EXHIBIT 4 PAGE 214

# SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Current Amount |
|------|-------------|--------|----------------|
| Signs & Pinnick, Inc.<br>PO Box 945<br>El Cajon, CA 92022 | Grading | Refer to 5175 as Unit K | $0.00 |
| So.Cal Sandbags, Inc.<br>12620 Bosley Lane<br>Corona, CA 92883 | 2008-09 Erosion Control Instal | | $0.00 |
| SoCal Pump & Well Drilling Inc.<br>P.O. Box 5488<br>Riverside, CA 92517 | Water well abandonment | | $14,793.60 |
| SoCal Pump & Well Drilling Inc.<br>P.O. Box 5488<br>Riverside, CA 92517 | Rental & Maintenance of Pump | | $0.00 |
| SoCal Pump & Well Drilling Inc.<br>P.O. Box 5488<br>Riverside, CA 92517 | Pump Rental/Monthly Maintenance | | $0.00 |
| SoCal Pump & Well Drilling Inc.<br>P.O. Box 5488<br>Riverside, CA 92517 | Purchase Order | Clean Out Well & Set up Test | $0.00 |
| SoCal Pump & Well Drilling Inc.<br>1510 Palmyrita Ave<br>Riverside, CA 92507 | | Proof of Claim filed 11/26/08 -<br>$29,733.51 | $0.00 |
| Southern California Pipeline<br>1100 Irvine Boulevard, Suite 37<br>Tustin, CA 92780 | Storm Drain | Lawsuit<br>Mechanic's Lien | $0.00 |
| Stantec Consulting - Sacramento<br>13980 Collections Center Drive<br>Chicago, IL 60693 | TM 33536 In-Tract Plans | Lawsuit | $0.00 |
| Stantec<br>19 Technology Dr<br>Irvine, CA 92618 | Master Infrastructure Changes | Lawsuit<br>Mechanic's Lien<br>Proof of Claim filed 2/2/09 -<br>$779,322.86 | $0.00 |
| Stantec<br>19 Technology Dr<br>Irvine, CA 92618 | Ph. 1 Various Design Changes | | $0.00 |
| Stantec<br>19 Technology Dr<br>Irvine, CA 92618 | Prelim Engineer-Grading Limit | | $0.00 |

Page 10

566660_1.XLS

EXHIBIT 4 PAGE 215

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|---|---|---|---|
| Stantec<br>19 Technology Dr<br>Irvine, CA 92618 | Prelim Engineer-Grading Limits | | $0.00 |
| Stormwater Compliance Specialists, Inc.<br>455 N Twin Oaks Valley Road<br>San Marcos, CA 92069 | SWPPP/Inspection/Traings/Site | | $2,850.00 |
| Superior Masonry, Inc.<br>300 W Olive Street Suite A<br>Colton, CA 92324 | Block Walls for Tract 32702 | | $0.00 |
| Sweeny & Associates, Inc.<br>8440 Market Street<br>Suite 202<br>Boardman, OH 44512 | Drip/Conventional Spray Irriga | | $0.00 |
| T&B Planning Consultants<br>17542 East 17th Street Suite 100<br>Tustin, CA 92780 | | Lawsuit<br>Mechanic's Lien | $2,461.16 |
| TC Construction Company<br>c/o Jack Gleifels<br>10540 Prospect Avenue<br>Santee, CA 92071 | Water well abandonment | | $0.00 |
| TC Construction Company<br>c/o Jack Gleifels<br>10540 Prospect Avenue<br>Santee, CA 92071 | Offsite Water | | $0.00 |
| TC Construction Company<br>c/o Jack Gleifels<br>10540 Prospect Avenue<br>Santee, CA 92071 | Jack & Bore I-10 Crossing | | $0.00 |
| TC Construction Company<br>c/o Jack Gleifels<br>10540 Prospect Avenue<br>Santee, CA 92071 | Infrastructure Sewer | | $0.00 |
| TC Construction Company<br>c/o Jack Gleifels<br>10540 Prospect Avenue<br>Santee, CA 92071 | Force Main/Lift Stations | | $0.00 |

566860_1.XLS

Page 11

EXHIBIT 4 PAGE 216

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amount |
|------|-------------|--------|-------------|
| TC Construction Company c/o Jack Gleffels 10540 Prospect Avenue Santee, CA 92071 | Dig Pit for Relocation-Info Cn | | $0.00 |
| Ted Dayton Photography No Address | Photography Costs | | $0.00 |
| Tree of Life Nursery P.O. Box 635 San Juan Capistrano, CA 92675 | Deliverable Dec. 2007 | 2500 Oak Trees in 15 Gal Pots | $0.00 |
| Urban Crossroads - Irvine 41 Corporate Park Suite 300 Irvine, CA 92606 | | | $19,027.15 |
| Urban Crossroads - Irvine 41 Corporate Park Suite 300 Irvine, CA 92606 | | URB004/10 | $0.00 |
| Urban Crossroads - Irvine 41 Corporate Park Suite 300 Irvine, CA 92606 | Noise Analysis | URB004/11 | $0.00 |
| Urban Crossroads - Irvine 41 Corporate Park Suite 300 Irvine, CA 92606 | Air Quality Analysis | URN004/15 | $0.00 |
| Urban Crossroads - Irvine 41 Corporate Park Suite 300 Irvine, CA 92606 | Refer to 677 OC | VOID | $0.00 |
| Urban Crossroads - Irvine 41 Corporate Park Suite 300 Irvine, CA 92606 | | VOID | $0.00 |
| Urban Crossroads - Riverside 3685 Main Street Suite 350 Riverside, CA 92501 | Traffic Signal Plans | | $29,390.00 |
| Urban Crossroads - Riverside 3685 Main Street Suite 350 Riverside, CA 92501 | I-10 Freeway Interchange Imprv | | $0.00 |
| Utility Specialists Southwest 4429 Morena Blvd San Diego, CA 92117 | In-Tract Dry Utility Coormatn | Proof of Claim filed 11/21/08 - $34,228.50 | $34,228.50 |

566660_1.XLS

Page 12

EXHIBIT 4 PAGE 217

## SUMMERWIND
### SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Due Amount |
|------|-------------|--------|------------|
| Utility Specialists Southwest<br>4429 Morena Blvd<br>San Diego, CA 92117 | Relocation/Conversion & Meeting | | $0.00 |
| Utility Specialists Southwest<br>4429 Morena Blvd<br>San Diego, CA 92117 | In-Tract Dry Utilities | Cancel - Test In-Tract Entry | $0.00 |
| Utility Specialists Southwest<br>4429 Morena Blvd<br>San Diego, CA 92117 | New Contract | Due Diligence | $0.00 |
| Utility Specialists Southwest<br>4429 Morena Blvd<br>San Diego, CA 92117 | Dry Utility Consulting | New | $0.00 |
| Van Dyke Landscape Architects<br>2970 Fifth Avenue #240<br>San Diego, CA 92103 | L/A open space trail | | $18,998.78 |
| Van Dyke Landscape Architects<br>2970 Fifth Avenue #240<br>San Diego, CA 92103 | L/A open space trail | | $0.00 |
| Van Dyke Landscape Architects<br>2970 Fifth Avenue #240<br>San Diego, CA 92103 | L/A open space trail | | $0.00 |
| Van Dyke Landscape Architects<br>2970 Fifth Avenue #240<br>San Diego, CA 92103 | Hardscape/Landscpe/Irrigation | | $0.00 |
| Van Dyke Landscape Architects<br>2970 Fifth Avenue #240<br>San Diego, CA 92103 | Park "A" Electrical Design | | $0.00 |
| Van Dyke, LLP<br>2970 Fifth Avenue, Suite 240<br>San Diego, CA 92103 | Plase 1 Services | | $1,627.50 |
| Van Dyke, LLP<br>2970 Fifth Avenue, Suite 240<br>San Diego, CA 92103 | Professional Services | VAN005/01 | $0.00 |
| Van Dyke, LLP<br>2970 Fifth Avenue, Suite 240<br>San Diego, CA 92103 | | VAN005/02 | $0.00 |

Page 13

# SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Ours Amount |
|------|-------------|--------|-------------|
| Waterforce Inc.<br>PO Box 12093<br>Orange, CA 92859 | Temp. Water Line | | $12,640.00 |
| Waterforce Inc.<br>PO Box 12093<br>Orange, CA 92859 | Rental for Temp 8" Highline | | $0.00 |
| Waterforce Inc.<br>PO Box 12093<br>Orange, CA 92859 | Temp Water Line for Dust Contr | | $0.00 |
| Waterforce Inc.<br>PO Box 12093<br>Orange, CA 92859 | | | $0.00 |
| Waterforce Inc.<br>PO Box 12093<br>Orange, CA 92859 | Tie Into Existing Water Supply | VOID Per J. Osborne | $0.00 |
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Bl 4th Floor<br>Santa Monica, CA 90403 | One Year Preliminary Budget | | $6,094.61 |
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Bl 4th Floor<br>Santa Monica, CA 90403 | | | $0.00 |
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Bl 4th Floor<br>Santa Monica, CA 90403 | | | $0.00 |
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Bl 4th Floor<br>Santa Monica, CA 90403 | | | $0.00 |
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Bl 4th Floor<br>Santa Monica, CA 90403 | Market Research Retainer | Market Research Retainer | $0.00 |

Page 14

566660_1.XLS

EXHIBIT 4 PAGE 219

## SUMMERWIND
## SCHEDULE OF ASSUMED AGREEMENTS

| Name | Description | Remark | Cure Amounts |
|------|-------------|--------|--------------|
| Weston/Mason Marketing<br>c/o Toni Weston<br>3130 Wilshire Bl 4th Floor<br>Santa Monica, CA 90403 | Purchase Order | Purchase Order | $0.00 |
| William Hezmalhalch Architects, Inc.<br>2850 Redhill Avenue #200<br>Santa Ana, CA 92705 | Architectural Services 9000 sf | Lawsuit | $14,857.63 |
| Williams & Paddon Architects<br>2237 Douglas Blvd. #160<br>Roseville, CA 95661 | Design Rec. Bldg. | WIL010/04 | $0.00 |
| Wiredhat Interactive<br>250 Lombard #7<br>Thousand Oaks, CA 91360 | Web Hosting & Maintenance | | $1,396.94 |

Page 15

566660_1.XLS

EXHIBIT 4 PAGE 220

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**650 Town Center Drive, Suite 950, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document described as NOTICE OF SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED UNDER THE CHAPTER 11 TRUSTEE'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED JANUARY 7, 2011) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 4, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On **March 4, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 4, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY:**
Honorable Erithe A. Smith, Ctrm. 5A
United States Bankruptcy Court
411 W. 4th St.
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 3/4/11 | Audrey Wilson | /s/ Audrey Wilson |
|--------|---------------|-------------------|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                   **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 4 PAGE 221

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING:

Joey R Abramson    jralaw1@pacbell.net
Austin K Barron    abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
Jeffrey W Broker    jbroker@brokerlaw.biz
Joseph P Buchman    jbuchman@bwslaw.com
Kathleen A Cashman-Kramer    kcashman@psdslaw.com
Cathrine M Castaldi    ccastaldi@rusmiliband.com
Tara Castro Narayanan    tara.narayanan@msrlegal.com
Scott C Clarkson    sclarkson@lawcgm.com
Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
Jonathan S Dabbieri    dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
Terrence T Egland    ecf@kleinlaw.com
Lei Lei Wang Ekvall    lekvall@wgllp.com
Marc C Forsythe    kmurphy@goeforlaw.com
Heather Fowler    heather.fowler@lw.com, colleen.rico@lw.com
Steven M Garber    steve@smgarberlaw.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
Marshall F Goldberg    mgoldberg@glassgoldberg.com
Kelly G Griffith    bkemail@harrisbeach.com
Michael J Hauser    michael.hauser@usdoj.gov
Gil Hopenstand    gh@lnbrb.com
Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
Yale K Kim    ykim@allenmatkins.com
Kerri A Lyman    klyman@irell.com
John T Madden    jmadden@wgllp.com
Eve A Marsella    emarsella@lawcgm.com
Robert S Marticello    Rmarticello@wgllp.com
Robert C Martinez    rmartinez@mclex.com
Hutchison B Meltzer    hmeltzer@wgllp.com
Joel S. Miliband    jmiliband@rusmiliband.com
James M Miller    jmiller@millerbarondess.com
Ramon Naguiat    rnaguiat@skadden.com
Samuel A Newman    snewman@gibsondunn.com
Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
Craig M Rankin - DECEASED -    cmr@lnbrb.com
Daniel H Reiss    dhr@lnbrb.com
Todd C. Ringstad    becky@ringstadlaw.com
Martha E Romero    Romero@mromerolawfirm.com
Ronald Rus    rrus@rusmiliband.com
Mark C Schnitzer    mschnitzer@rhlaw.com
Alfred H Siegel    ahstrustee@horwathcal.com, asiegel@ecf.epiqsystems.com
Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
Evan D Smiley    esmiley@wgllp.com
Autumn D Spaeth    aspaeth@wgllp.com
Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
Andrew Troop    andrew.troop@cwt.com, scott.griffin@cwt.com;jill.kaylor@cwt.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Michael D Warner    echou@warnerstevens.com
David R Zaro    dzaro@allenmatkins.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 4 PAGE 222

#580350

## SERVICE LIST

**II. SERVED VIA U.S. MAIL**

United States Trustee
Attn: Michael J. Hauser, Esq.
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701-8000

Alfred H. Siegel
Siegel Gottlieb Mangel & Levine
15233 Ventura Boulevard, 9th Floor
Sherman Oaks, CA 91403-2201
**CHAPTER 11 TRUSTEE**

Daniel H. Reiss, Esq.
Levene Neale Bender Rankin & Brill
LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067-6200
**COUNSEL FOR CREDITORS
COMMITTEE**

~~LBREP/L-SunCal Master I LLC~~
~~3500 West Olive Ave., Suite 650~~
~~Burbank, CA 91505-5501~~
DEBTOR
MAIL RETURNED 12/5/10

LBREP/L SunCal Master I LLC
2392 Morse Avenue
Irvine, CA 92614-6234
**DEBTOR**

LBREP/L-SunCal Summerwind Ranch
LLC
2392 Morse Ave
Irvine, CA 92614
**DEBTOR**

LBREP/L-SunCal McSweeny Farms
LLC
2392 Morse Ave
Irvine, CA 92614
**DEBTOR**

LBREP/L-SunCal McAllister Ranch LLC
2392 Morse Ave
Irvine, CA 92614
**DEBTOR**

Ronald Rus
Cathrine Castaldi
Rus Miliband & Smith
Von Karman Towers
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
**Attorneys for Sun Cal Management**

EXHIBIT 4 PAGE 223

In re McSweeny-#580334

## SERVICE LIST

5th Gear, LLC
8695 W Washington Bl #2
Culver City, CA 90232

Absolute Soil Control, Inc.
PO Box 2125
Palm Springs, CA 92263

Advanced GeoEnvironmental, Inc.
381 Thor Place
Brea, CA 92821

All American Asphalt
PO Box 2229
Corona, CA 92878

All American Asphalt
c/o Devirian & Shinmoto
11400 W Olympic Blvd., Suite 200
Los Angeles, CA 90064

Architectural Precision Models
Linda K. Murphy
P.O. Box 851
81-1073 A Captain Cook Road
Captain Cook, HI 96704

Borthwick, Guy. Bettenhausen, Inc.
2462 Dupont Drive
Irvine, CA 92612

Cal West Underground, Inc.
951 Sixth Street
Norco, CA 92860

California Environmental Cont.
6739 Washington Avenue
Whittier, CA 90601

Cash Grading Contractors, Inc.
555 West State Street
Ontario, CA 91762

Chameleon Design, Inc.
1150 Clay Street Suite 3
San Francisco, CA 94108

Charles E. Skaggs
3690 N Like Oak Ave.
Rialto, CA 92377

Concord Group, The
130 Newport Center Drive, Suite 230
Newport Beach, CA 92660

Contech Construction Products Inc.
dba Ohio Contech Construction
Products Inc.
9025 Centre Pointe Drive, Suite 400
West Chester, OH 45069

Continental Bridge, Inc.
dba Contech Bridge Solutions, Inc.
9025 Centre Pointe Drive, Suite 400
West Chester, OH 45069

Debby Cobb Consulting
8215 E White Oak Ridge #77
Orange, CA 92869

Development Planning & Finance
Group, Inc.
27127 Calle Arroyo #1910
San Juan Capistrano, CA 92675

Dexter Wilson Engineering, Inc.
2234 Faraday Avenue
Carlsbad, CA 92008

Douglas Bender & Associates, Inc.
11860 Pierce Street Suite 100
Riverside, CA 92505

EXHIBIT 4 PAGE 224

Douglas Bender & Associates, Inc.
557 Wald
Irvine, CA 92618

Dust Control, Inc.
22904 Banbury Court
Murrieta, CA 92562

Elite Bobcat Service, Inc.
1320 E Sixth Street #100
Corona, CA 92879

Ewing Irrigation Product, Inc.
3441 E Harbour Drive
Phoenix, AZ 85034

Glenn Lukos Associates, Inc.
29 Orchard
Lake Forest, CA 92630

Gorman Rupp Company, The
P.O. Box 1217
Mansfield, OH 44901-1217

Griffin Structures, Inc.
385 Second Street
Laguna Beach, CA 92651

Hall & Forman, Inc.
17782 17th Street, Suite 200
Tustin, CA 92780

Hall & Forman, Inc.
420 Exchange, Suite 100
Irvine, CA 92602

Helix Environmental Planning, Inc.
7578 El Cajon Boulevard, Suite 200
La Mesa, CA 91942

Innovative Inclosures
41745 Elm Street #402
Murrieta, CA 92562

Keith Companies, The - Inland Empire
13980 Collections Center Drive
Chicago, IL 60693

KIP Incorporated
25740 Washington Ave
Murrieta, CA 92562

Laer Pearce & Associates
22892 Mill Creek Drive
Laguna Hills, CA 92653

LSA Associates, Inc.
20 Executive Park Suite 200
Irvine, CA 92614

Merit Association Services, Inc.
1 Polaris Way Suite 100
Aliso Viejo, CA 92656

Michael C. McGovern, PE
4049 Reid Street
Palatka, FL 32177

Michael Madden Associates
24795 Eaton Lane
Laguna Niguel, CA 92677

Moote Group, The
1516 Brookhollow Drive
Santa Ana, CA 92705

O'Reilly Public Relations
3403 10th Street, Suite 110
Riverside, CA 92501

Pacific Advanced Civil Engineering, Inc.
17520 Newhope Street #200
Fountain Valley, CA 92708

Pacific Soils Engineering, Inc. - Cypress
10653 Progress Way
Cypress, CA 90630

EXHIBIT 4 PAGE 225

Pacific Soils Engineering, Inc.
Darren Burge Esq.
Cohen & Burge LLP
699 Hampshire Rd, Suite 207
Thousand Oaks, CA 91361

Patricia Logan & Associates
3911 Mandeville Canyon Road
Los Angeles, CA 90049

Planning Company Associates, Inc.
35 North Lake Avenue, Suite 640
Pasadena, CA 91101

Power Plus Utility Serv.
1210 N Red Gum Street
Anaheim, CA 92806

R&S Madrigal Construction & Supply, Inc.
P.O. Box 3548
Riverside, CA 92519

RBF Consulting - Irvine Div.
14725 Alton Parkway
Irvine, CA 92618

S & S Seeds, Inc.
P.O. Box 1275
Carpinteria, CA 93014-1275

Schilling Corporation
697 Greenfield Drive
El Cajon, CA 92021

Schilling Corporation
c/o Scott A. Schaelen, APLC
3565 7th Avenue
San Diego, CA 92103

Signs & Pinnick, Inc.
PO Box 945
El Cajon, CA 92022

So.Cal Sandbags, Inc.
12620 Bosley Lane
Corona, CA 92883

SoCal Pump & Well Drilling Inc.
P.O. Box 5488
Riverside, CA 92517

SoCal Pump & Well Drilling Inc.
1510 Palmyrita Ave
Riverside, CA 92507

Southern California Pipeline
1100 Irvine Boulevard, Suite 37
Tustin, CA 92780

Stantec Consulting - Sacramento
13980 Collections Center Drive
Chicago, IL 60693

Stormwater Compliance Specialists, Inc.
455 N Twin Oaks Valley Road
San Marcos, CA 92069

Superior Masonry, Inc.
300 W Olive Street Suite A
Colton, CA 92324

Sweeny & Associates, Inc.
8440 Market Street
Suite 202
Boardman, OH 44512

T&B Planning Consultants
17542 East 17th Street Suite 100
Tustin, CA 92780

TC Construction Company
c/o Jack Gieffels
10540 Prospect Avenue
Santee, CA 92071

Tree of Life Nursery
P.O. Box 635
San Juan Capistrano, CA 92675

EXHIBIT 4 PAGE 226

Urban Crossroads - Irvine
41 Corporate Park Suite 300
Irvine, CA 92606

Urban Crossroads - Riverside
3685 Main Street Suite 350
Riverside, CA 92501

Utility Specialists Southwest
4429 Morena Blvd
San Diego, CA 92117

Van Dyke Landscape Architects
2970 Fifth Avenue #240
San Diego, CA 92103

Van Dyke, LLP
2970 Fifth Avenue, Suite 240
San Diego, CA 92103

Waterforce Inc.
PO Box 12093
Orange, CA 92859

Weston/Mason Marketing
c/o Toni Weston
3130 Wilshire Bl 4th Floor
Santa Monica, CA 90403

William Hezmalhalch Architects, Inc.
2850 Redhill Avenue #200
Santa Ana, CA 92705

Williams & Paddon Architects
2237 Douglas Blvd. #160
Roseville, CA 95661

Wiredhat Interactive
250 Lombard #7
Thousand Oaks, CA 91360

EXHIBIT 4 PAGE 227

McAllister #580315

## SERVICE LIST

A.G.I. Geotechnical, Inc.
16555 Sherman Way, #A
Van Nuys, CA 91406

Advance Utility Design, Inc. - Temecula
27403 Ynez Road, Suite 213
Temecula, CA 92591

Aleco Corporation, The
PO Box 81136
Bakersfield, CA 93380

Asbestos Service Inc.
2130 East Brundage Lane
Bakersfield, CA 93307

Bakersfield Well & Pump Co.
7212 Fruitvale Avenue
Bakersfield, CA 93308

BP Media Group dba SoftMirage
17993 Cowan 2nd Floor
Irvine, CA 92614

Chameleon Design, Inc.
1150 Clay Street, Suite 3
San Francisco, CA 94108

Chameleon Design, Inc.
1711 Westcliff Dr #B
Newport Beach, CA 92660

Construction Protective Services
436 W Walnut Street
Gardena, CA 90248

Creative Design Consultants, LLC
2915 Red Hill Avenue, Suite G-201
Costa Mesa, CA 92626

Crider Construction, Inc.
PO Box 20847
Bakersfield, CA 93390

Crider Construction, Inc.
P.O. Box 41364
Bakersfield, CA 93384

DGW Budget Preparation
24401 Santa Clara Avenue
Dana Point, CA 92629

Economics Research Associates
31 W 27th Street, Floor 12
New York, NY 10001

Elco Water Truck
2301 El Toro Viejo Rd
Bakersfield, CA 93312

Genesis Golf Builders, Inc.
PO Box 2979
Payson, AZ 85547

Golden State Fence Company
870 N Main Street
Riverside, CA 92501

Gordon Bricken & Associates, Inc.
1621 E 17th Street # K
Santa Ana, CA 92705-8518

Granite Construction Company
38000 Monroe Street
Indio, CA 92203

Greg Norman Golf Course Design, Inc.
2041 Vista Pkwy Level 2
West Palm Beach, FL 33411

EXHIBIT 4 PAGE 228

Guinn Construction
804 N Mcdurmitt
Hamilton, TX 76531

Higher Ground Land Surveying
3950 N Chestnut Diagonal #106
Fresno, CA 93726

Higher Ground Engineering & Land
Surveying
700 22nd Street
Bakersfield, CA 93301

Jones & Stokes Associates, Inc.
2600 V Street
Sacramento, CA 95818

Klassen Corporation
2021 Westwind Drive
Bakersfield, CA 93301

Klassen Corporation
Daniel T. Clifford, Esq.
Clifford & Brown
1430 Tuxtun Avenue, Suite 900
Bakersfield, CA 93301

Krazen & Associates, Inc.
215 West Dakota Avenue
Clovis, CA 93612

Landscape Development, Inc.
28447 Witherspoon Pkwy
Valencia, CA 91355

Leighton and Associates, Inc.
3934 Murphy Canyon Road, B205
San Diego, CA 92123

Masonry Plus
5116 W Avenue K-8
Lancaster, CA 93536

Maverick Asphalt and Construction
3131 Wear Street
Bakersfield, CA 93308

McIntosh & Associates
2001 Wheelan Court
Bakersfield, CA 93309

McKenna's Club & Gutter Co., Inc.
PO Box 42335
Bakersfield, CA 93384

Meyer Civil Engineering, Inc.
110 S Montclair St, Suite 104
Bakersfield, CA 93309

Michael D. & Elizabeth Antongiovanni
6501 Yosemite Place
Bakersfield, CA 93309

Michael Madden Associates
24795 Eaton Lane
Laguna Niguel, CA 92677

Mobile Modular Management Corp.
770 Corporation Yard Way
Corona, CA 92880

ModSpace
7100 District Blvd.
Bakersfield, CA 93313

Outdoor Dimensions
5325 E Hunter Ave
Anaheim, CA 92807

Pacific Advanced Civil Engneering, Inc.
17520 Newhope Street #200
Fountain Valley, CA 92708

Park West Landscape Inc.
22421 Gilberto Suite A
Rancho Santa Margarita, CA 92688

Park West Landscape Inc.
Steven M. Garber & Associates, A.P.C.
1901 Avenue of the Stars Suite 1100
Los Angeles, CA 90067

EXHIBIT 4 PAGE 229

Patricia Logan & Associates
3911 Mandeville Canyon Road
Los Angeles, CA 90049

Petrotech Resources Company Inc.
4520 California Ave #310
Bakersfield, CA 93308

Petrotech Resources Company Inc.
5400 Rosedale Highway
Bakersfield, CA 93308

Pinnacle Engineering
150 North Wiget Lane, Suite 103
Walnut Creek, CA 94598

R.L. Abbott & Associates
1903 Mineral Court
Bakersfield, CA 93309

Roddan Paolucci Roddan Adv. & Public
Relations
2516 Via Tejon #114
Palos Verdes Estates, CA 90274

San Joaquin Engineering, Inc.
5309 Bold Ruler Court
Bakersfield, CA 93312

Sheridan Drilling Inc.
PO Box 20778
Bakersfield, CA 93390

Sierra Cascade Construction, Inc.
1043 West Avenue M-4 Ste E
Palmdale, CA 93551

Sierra Cascade Construction, Inc.
Kirk S. MacDonald
130 N. Brand Blvd. #405
Glendale, CA 91203

South Valley Pump Company
P.O. Box 78760
Bakersfield, CA 93383

Stantec Consulting - Chicago
13980 Collections Center Drive
Chicago, IL 60696

Stantec Consulting Services
19 Technology Drive, Suite 200
Irvine, CA 92618

Summers/Murphy & Partners, Inc.
34197 Pacific Coast Hwy #200
Dana Point, CA 92629

Superior Pipeline Inc.
PO Box 81387
Bakersfield, CA 93380

SWPPP USA, Inc.
9530 Hageman Rd Ste B-112
Bakersfield, CA 93312

Troon Golf, LLC
15044 N Scottsdale Rd #300
Scottsdale, AZ 85254

Turman Construction Co., Inc.
4301 Park Circle
Bakersfield, CA 93309

Valley Crest Tree Company
24151 Ventura Boulevard
Calabasas, CA 91302

W&S Consultants
2242 Stinson Street
Simi Valley, CA 93065

Walker Concrete Constructors, Inc., aka
Byron Walker
18007 Rosedale Highway
Bakersfield, CA 93314

West Coast Utility Serv. - San Diego
449 Bougainvillea Lane
Glendora, CA 91741

EXHIBIT 4 PAGE 230

Weston/Mason Marketing
c/o Toni Weston
3130 Wilshire Bl 4th Floor
Santa Monica, CA 90403

Whitten Pumps, Inc.
502 County Line Road
Delano, CA 93215

Williams & Paddon Architects
2237 Douglas Blvd. #160
Roseville, CA 95661

Williams + Paddon Architects +
Planners, Inc.
c/o Hauser & Mouzes
18826 N. Lower Sacramento Rd., Ste H
Woodbridge, CA 95258

Wiredhat Interactive
250 Lombard #7
Thousand Oaks, CA 91360

EXHIBIT 4 PAGE 231

In re Summerwind

## SERVICE LIST

5th Gear, LLC
8695 W Washington Bl #2
Culver City, CA 90232

Absolute Soil Control, Inc.
PO Box 2125
Palm Springs, CA 92263

Advanced GeoEnvironmental, Inc.
381 Thor Place
Brea, CA 92821

All American Asphalt
PO Box 2229
Corona, CA 92878

All American Asphalt
c/o Devirian & Shinmoto
11400 W Olympic Blvd., Suite 200
Los Angeles, CA 90064

Architectural Precision Models
Linda K. Murphy
P.O. Box 851
81-1073 A Captain Cook Road
Captain Cook, HI 96704

Borthwick, Guy. Bettenhausen, Inc.
2462 Dupont Drive
Irvine, CA 92612

Cal West Underground, Inc.
951 Sixth Street
Norco, CA 92860

California Environmental Cont.
6739 Washington Avenue
Whittier, CA 90601

Cash Grading Contractors, Inc.
555 West State Street
Ontario, CA 91762

Chameleon Design, Inc.
1150 Clay Street Suite 3
San Francisco, CA 94108

Charles E. Skaggs
3690 N Like Oak Ave.
Rialto, CA 92377

Concord Group, The
130 Newport Center Drive, Suite 230
Newport Beach, CA 92660

Contech Construction Products Inc.
dba Ohio Contech Construction
Products Inc.
9025 Centre Pointe Drive, Suite 400
West Chester, OH 45069

Debby Cobb Consulting
8215 E White Oak Ridge #77
Orange, CA 92869

Development Planning & Finance
Group, Inc.
27127 Calle Arroyo #1910
San Juan Capistrano, CA 92675

Dexter Wilson Engineering, Inc.
2234 Faraday Avenue
Carlsbad, CA 92008

Douglas Bender & Associates, Inc.
11860 Pierce Street Suite 100
Riverside, CA 92505

Douglas Bender & Associates, Inc.
557 Wald
Irvine, CA 92618

EXHIBIT 4 PAGE 232

Dust Control, Inc.
22904 Banbury Court
Murrieta, CA 92562

Elite Bobcat Service, Inc.
1320 E Sixth Street #100
Corona, CA 92879

Ewing Irrigation Product, Inc.
3441 E Harbour Drive
Phoenix, AZ 85034

Glenn Lukos Associates, Inc.
29 Orchard
Lake Forest, CA 92630

Gorman Rupp Company, The
P.O. Box 1217
Mansfield, OH 44901-1217

Griffin Structures, Inc.
385 Second Street
Laguna Beach, CA 92651

Hall & Forman, Inc.
17782 17th Street, Suite 200
Tustin, CA 92780

Hall & Forman, Inc.
420 Exchange, Suite 100
Irvine, CA 92602

Helix Environmental Planning, Inc.
7578 El Cajon Boulevard, Suite 200
La Mesa, CA 91942

Innovative Inclosures
41745 Elm Street #402
Murrieta, CA 92562

Keith Companies, The - Inland Empire
13980 Collections Center Drive
Chicago, IL 60693

KIP Incorporated
25740 Washington Ave
Murrieta, CA 92562

LSA Associates, Inc.
20 Executive Park Suite 200
Irvine, CA 92614

Merit Association Services, Inc.
1 Polaris Way Suite 100
Aliso Viejo, CA 92656

Michael C. McGovern, PE
4049 Reid Street
Palatka, FL 32177

Michael Madden Associates
24795 Eaton Lane
Laguna Niguel, CA 92677

Moote Group, The
1516 Brookhollow Drive
Santa Ana, CA 92705

O'Reilly Public Relations
3403 10th Street, Suite 110
Riverside, CA 92501

Pacific Advanced Civil Engineering, Inc.
17520 Newhope Street #200
Fountain Valley, CA 92708

Pacific Soils Engineering, Inc. - Cypress
10653 Progress Way
Cypress, CA 90630

Pacific Soils Engineering, Inc.
Darren Burge Esq.
Cohen & Burge LLP
699 Hampshire Rd, Suite 207
Thousand Oaks, CA 91361

Patricia Logan & Associates
3911 Mandeville Canyon Road
Los Angeles, CA 90049

EXHIBIT 4 PAGE 233

Planning Company Associates, Inc.
35 North Lake Avenue, Suite 640
Pasadena, CA 91101

Power Plus Utility Serv.
1210 N Red Gum Street
Anaheim, CA 92806

R&S Madrigal Construction & Supply,
Inc.
P.O. Box 3548
Riverside, CA 92519

RBF Consulting - Irvine Div.
14725 Alton Parkway
Irvine, CA 92618

S & S Seeds, Inc.
P.O. Box 1275
Carpinteria, CA 93014-1275

Schilling Corporation
697 Greenfield Drive
El Cajon, CA 92021

Schilling Corporation
c/o Scott A. Schaelen, APLC
3565 7th Avenue
San Diego, CA 92103

Signs & Pinnick, Inc.
PO Box 945
El Cajon, CA 92022

So.Cal Sandbags, Inc.
12620 Bosley Lane
Corona, CA 92883

SoCal Pump & Well Drilling Inc.
P.O. Box 5488
Riverside, CA 92517

SoCal Pump & Well Drilling Inc.
1510 Palmyrita Ave
Riverside, CA 92507

Southern California Pipeline
1100 Irvine Boulevard, Suite 37
Tustin, CA 92780

Stantec Consulting - Sacramento
13980 Collections Center Drive
Chicago, IL 60693

Stantec
19 Technology Dr
Irvine, CA 92618

Stormwater Compliance Specialists, Inc.
455 N Twin Oaks Valley Road
San Marcos, CA 92069

Superior Masonry, Inc.
300 W Olive Street Suite A
Colton, CA 92324

Sweeny & Associates, Inc.
8440 Market Street
Suite 202
Boardman, OH 44512

T&B Planning Consultants
17542 East 17th Street Suite 100
Tustin, CA 92780

TC Construction Company
c/o Jack Gieffels
10540 Prospect Avenue
Santee, CA 92071

Tree of Life Nursery
P.O. Box 635
San Juan Capistrano, CA 92675

Urban Crossroads - Irvine
41 Corporate Park Suite 300
Irvine, CA 92606

Urban Crossroads - Riverside
3685 Main Street Suite 350
Riverside, CA 92501

EXHIBIT 4 PAGE 234

Utility Specialists Southwest
4429 Morena Blvd
San Diego, CA 92117

Van Dyke Landscape Architects
2970 Fifth Avenue #240
San Diego, CA 92103

Waterforce Inc.
PO Box 12093
Orange, CA 92859

Weston/Mason Marketing
c/o Toni Weston
3130 Wilshire Bl 4th Floor
Santa Monica, CA 90403

William Hezmalhalch Architects, Inc.
2850 Redhill Avenue #200
Santa Ana, CA 92705

Williams & Paddon Architects
2237 Douglas Blvd. #160
Roseville, CA 95661

Wiredhat Interactive
250 Lombard #7
Thousand Oaks, CA 91360

EXHIBIT 4 PAGE 235

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 950, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document described as **EXHIBIT "1" TO ORDER CONFIRMING THE CHAPTER 11 TRUSTEE'S SECOND AMENDED CHAPTER 11 PLAN (DATED APRIL 21, 2011)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 21, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On *Fill in Date Document is Filed*, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 21, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY:**
Honorable Erithe A. Smith, Ctrm. 5A
United States Bankruptcy Court
411 W. 4th St.
Santa Ana, CA 92701

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4.21.11 | Audrey Wilson | /s/ Audrey Wilson |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*  **F 9013-3.1.PROOF.SERVICE**

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING:**

Joey R Abramson    jralaw1@pacbell.net
David F Anderson    danderson@hsmlaw.com
Austin K Barron    abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
Jeffrey W Broker    jbroker@brokerlaw.biz
Joseph P Buchman    jbuchman@bwslaw.com
Kathleen A Cashman-Kramer    kcashman@psdslaw.com
Cathrine M Castaldi    ccastaldi@rusmiliband.com
Tara Castro Narayanan    tara.narayanan@msrlegal.com
Scott C Clarkson    sclarkson@lawcgm.com
Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
Jonathan S Dabbieri    dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
Terrence T Egland    ecf@kleinlaw.com
Lei Lei Wang Ekvall    lekvall@wgllp.com
Marc C Forsythe    kmurphy@goeforlaw.com
Heather Fowler    heather.fowler@lw.com, colleen.rico@lw.com
Steven M Garber    steve@smgarberlaw.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
Marshall F Goldberg    mgoldberg@glassgoldberg.com
Kelly C Griffith    bkemail@harrisbeach.com
Thomas W Harman    wharman@orrick.com
Michael J Hauser    michael.hauser@usdoj.gov
Gil Hopenstand    gh@lnbrb.com
Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
Yale K Kim    ykim@allenmatkins.com
Kerri A Lyman    klyman@irell.com
John T Madden    jmadden@wgllp.com
Eve A Marsella    emarsella@lawcgm.com
Robert S Marticello    Rmarticello@wgllp.com
Robert C Martinez    rmartinez@mclex.com
Hutchison B Meltzer    hmeltzer@wgllp.com
Joel S. Miliband    jmiliband@rusmiliband.com
James M Miller    jmiller@millerbarondess.com
Ramon Naguiat    rnaguiat@skadden.com
Samuel A Newman    snewman@gibsondunn.com
Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
Daniel H Reiss    dhr@lnbyb.com
Todd C. Ringstad    becky@ringstadlaw.com
Martha E Romero    Romero@mromerolawfirm.com
Ronald Rus    rrus@rusmiliband.com
John P Schafer    jschafer@mandersonllp.com
Mark C Schnitzer    mschnitzer@rhlaw.com
Alfred H Siegel    ahstrustee@horwathcal.com,
asiegel@ecf.epiqsystems.com;bita.kamran@crowehorwath.com;lisa.irving@crowehorwath.com
Alfred H Siegel (TR)    al.siegel@crowehorwath.com,
asiegel@ecf.epiqsystems.com;bita.kamran@crowehorwath.com;lisa.irving@crowehorwath.com
Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
Evan D Smiley    esmiley@wgllp.com
Autumn D Spaeth    aspaeth@wgllp.com
Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
Andrew Troop    andrew.troop@cwt.com, scott.griffin@cwt.com;jill.kaylor@cwt.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Michael D Warner    echou@warnerstevens.com
David R Zaro    dzaro@allenmatkins.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                 F 9013-3.1.PROOF.SERVICE

## III. SERVED BY EMAIL:

Van C. Durrer II, Esq. - vdurrer@skadden.com
Ramon M. Naguiat, Esq. - rnaguiat@skadden.com
Kimberly D. Jaimez, Esq. - kjaimez@skadden.com
**Counsel for Gramercy Warehouse Funding**

Ronald Rus, Esq. - rrus@rusmiliband.com
Joel S. Miliband, Esq. - jmiliband@rusmiliband.com
Catherine M. Castaldi, Esq. - ccastaldi@rusmiliband.com
Stephen R. Cook, Esq. - scook@rusmiliband.com
**Counsel for SunCal Management, LLC**

Mark E. McKane, Esq. - mark.mckane@kirkland.com
Christopher W. Keegan, Esq. - christopher.keegan@kirkland.com
**Counsel for LBREP Lakeside SC Master I, LLC**

Gerald N. Sims, Esq. - jerrys@psdslaw.com
Kathleen A. Cashman-Kramer, Esq. - kcashman@psdslaw.com
Richard G. Carlston, Esq. - richard.carlston@msrlegal.com
Amy Matthew, Esq. - amy.matthew@msrlegal.com
Tara Castro Narayanan, Esq. - tara.narayanan@msrlegal.com
Brian D. Shaffer, Esq. - brian.shaffer@msrlegal.com
**Counsel for Fidelity National Title Insurance Company**

T. Scott Belden - sbelden@kleinlaw.com
Barry Goldner - bgoldner@kleinlaw.com
Terrence T. England - tengland@kleinlaw.com
**Attorneys for Superior Pipelines, Crider Construction, Inc. and Petrotech Resources Company, Inc.**

Jeffrey W. Broker, Esq. - jbroker@brokerlaw.biz
Kelly C. Griffith, Esq. - kgriffith@harrisbeach.com
**Counsel for Bond Safeguard Insurance Co. and Lexon Insurance Co.**

Daniel H. Reiss, Esq. - dhr@lnbyb.com
**Counsel for Creditors Committee**

David R. Zaro, Esq. - dzaro@allenmatkins.com
Yale K. Kim, Esq. - ykim@allenmatkins.com
George A. Davis, Esq. - george.davis@cwt.com
Andrew M. Troop, Esq. - andrew.troop@cwt.com
Arthur J. Steinberg, Esq. - asteinberg@kslaw.com
**Counsel for Lehman Commercial Paper Inc.**

Austin K. Barron, Esq., abarron@buchalter.com
Bo Bollinger, Esq. - bbollinger@buchalter.com
**Counsel for Oak Valley Partners, L.P. and Terra Verde Group, LLC**

David F. Anderson, Esq. - danderson@hsmlaw.com
**Attorneys for Secured Mechanics Lien Claimant
Creditor Williams + Paddon Architects, Inc.**

Steven M. Garber, Esq. - steve@smgarberlaw.com
Geoffrey Crisp, Esq. - geoffrey@smsgarberlaw.com
**Attorneys for Creditor Park West Landscape, Inc.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

Oscar Garza, Esq. - OGarza@gibsondunn.com
**Counsel for Paulson RERF Acquisition Corp.**

William Coffee, Esq. - bcoffee@sr-firm.com
**Counsel for AEI/CASC Engineering, Inc.**

Steven Gibbs, Esq. -  lawgibbs@pacbell.net
**Counsel for John D. Scripter, individually and dba Masonry Plus**

Robet Hartsock, Esq. - Robert@mcmurtreyhartsock.com
**Counsel for Kern River Fan Group**

.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                          **F 9013-3.1.PROOF.SERVICE**