# EXHIBIT A

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000014710

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Structured Asset Securities Corporation | 09-10558 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities. (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

SASC 2007-BC4 A4 II, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLC
2600 One Commerce Square
Philadelphia, PA 19103-7098

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

Name and address where payment should be sent (if different from above)

Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004

Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ **36,753,446.67**

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.***

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe: See attached Addendum
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**
SEP 17 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   **HAYDEN R. JONES   VICE PRESIDENT** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# ADDENDUM TO PROOF OF CLAIM
## OF SASC 2007-BC4 A4 II LLC
## BANKRUPTCY CASE NO. 09-10558 (JMP)
## IN RE STRUCTURED ASSET SECURITIES CORPORATION

SASC 2007-BC4 A4 II LLC, an affiliate of The Carlyle Group ("**Carlyle**"), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. ("**LBHI**") and Structured Asset Securities Corporation ("**SASC**" and, together with LBHI, "**Lehman**" or "**Debtors**").[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions: BNC Mortgage Loan Trust 2007-3 (the "**2007-3 Securitization**"), BNC Mortgage Loan Trust 2007-4 (the "**2007-4 Securitization**"), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the "**2007-BNC1 Securitization**") and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4. In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the "**Lehman Securities**") in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue. The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the "**Loans**").

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor. LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC. SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities. Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the "**Offering Materials**"). The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "**Securities Act**"), as well as various common law claims. In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines. For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]    The supporting documents for this claim are too voluminous to attach hereto. Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines." Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007 Prospectus Supplement at S-50. The Offering Materials for the other subject transactions contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed security is of the utmost importance to an investor in such security. Failure to properly verify occupancy, income, employment or other debt obligations, failure to take additional required steps when stated income is unreasonable and unsupported or property appraisals are unreasonably inflated, failure to obtain or provide required documentation and other similar underwriting deficiencies have a material adverse effect on the value of the related mortgage loan and, accordingly, the asset-backed security supported by such mortgage loan. Carlyle purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed an alarmingly high number of Loans which were not originated in accordance with the applicable underwriting guidelines. Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different employment information and providing stated income that was clearly unreasonable. The BNC Underwriting Guidelines expressly require verification of the borrower's job title listed on the application as part of the verbal verification of employment process, as well as review of the stated income for reasonableness for the verified position. The files, however, contain no evidence that the underwriter obtained the required employment verification or reviewed the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the borrower's income needed to qualify for the Loan. BNC Underwriting Guidelines specify that the dollar amount and consistency of deposits, monthly deposits versus withdrawals, ending balances each month, and inconsistent large deposits be considered in the analysis of the bank statements. Further, the guidelines provide that the "statements should be totally legible...[with] no erasures, white-outs or complete mark-throughs." Again, the file contained no evidence that the underwriter properly analyzed and addressed the deficiencies in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not originated in accordance with the BNC Underwriting Guidelines. Carlyle also made similar findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]  See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum, Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum, Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10, 2008 Prospectus Supplement at S-66.

BUSINESS # 1004613 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC
Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material
percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in
accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would
find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans
included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman
Securities pursuant to Offering Materials which were materially untrue and misleading. The
statements in the Offering Materials concerning compliance with the BNC Underwriting
Guidelines were materially untrue and misleading. In reality, a material portion of the loans did
not comply with those guidelines. The Offering Materials contained untrue statements and
omitted other facts necessary to make the statements not misleading. Lehman owed to the
purchasers of the securities the duty to make a reasonable and diligent investigation of the
statements contained in the Offering Materials at the time they became effective to ensure that
the statements were true and that there were no omissions of material fact which rendered the
statements therein materially untrue and misleading. Lehman did not make a reasonable
investigation or possess reasonable grounds to believe that the statements contained in the
Offering Materials were true and without omissions of any material facts and were not
misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least
$36,753,446.67 due to Lehman's actions. By reason of the foregoing, Lehman is liable for
violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered
pursuant to the Offering Materials identified above, including the various prospectuses. Those
Offering Materials contained untrue statements of material fact and omitted other facts necessary
to make the statements not misleading, and failed to disclose material facts as set forth above.
Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements
contained in the Offering Materials to ensure that such statements were true and that there was
no omission of material fact necessary to prevent the statements contained therein from being
misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to
believe that the statements contained in the Offering Materials were true and without any
omissions of any material facts and were not misleading. Carlyle purchased or otherwise
acquired securities in the Offerings pursuant to the materially untrue and misleading Offering
Materials and did not know, and with the exercise of reasonable diligence could not have known,
of the untruths and omissions contained in the Offering Materials. By virtue of the conduct
alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15
U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making
material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of
securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## **RESERVATION OF RIGHTS**

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

BUSINESS # 1004613 v.1



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Structured Asset Securities Corporation | Case No. of Debtor 09-10556 (JMP) |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)         0000014711

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

SASC 2007-BNC1 LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

Name and address where payment should be sent (if different from above)

Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004

Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**THIS SPACE IS FOR COURT USE ONLY**

1. **Amount of Claim as of Date Case Filed:** $ 5,023,782.85
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☑ Other

Describe: See attached Addendum

Value of Property: $_____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection: _____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:

$_____

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 17 2009
[EPIQ] BANKRUPTCY SOLUTIONS, LLC

| Date: 9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

HAYDEN R. JONES
VICE PRESIDENT

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# ADDENDUM TO PROOF OF CLAIM
## OF SASC 2007-BNC1 LLC
## BANKRUPTCY CASE NO. 09-10558 (JMP)
## IN RE STRUCTURED ASSET SECURITIES CORPORATION

SASC 2007-BNC1 LLC, an affiliate of The Carlyle Group ("**Carlyle**"), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. ("**LBHI**") and Structured Asset Securities Corporation ("**SASC**" and, together with LBHI, "**Lehman**" or "**Debtors**").[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions:  BNC Mortgage Loan Trust 2007-3 (the "**2007-3 Securitization**"), BNC Mortgage Loan Trust 2007-4 (the "**2007-4 Securitization**"), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the "**2007-BNC1 Securitization**") and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4.  In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the "**Lehman Securities**") in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue.  The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the "**Loans**").

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor.  LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC.  SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities.  Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the "**Offering Materials**").  The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "**Securities Act**"), as well as various common law claims.  In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines.  For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]    The supporting documents for this claim are too voluminous to attach hereto.  Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines." Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007 Prospectus Supplement at S-50.  The Offering Materials for the other subject transactions contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed security is of the utmost importance to an investor in such security.  Failure to properly verify occupancy, income, employment or other debt obligations, failure to take additional required steps when stated income is unreasonable and unsupported or property appraisals are unreasonably inflated, failure to obtain or provide required documentation and other similar underwriting deficiencies have a material adverse effect on the value of the related mortgage loan and, accordingly, the asset-backed security supported by such mortgage loan.  Carlyle purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed an alarmingly high number of Loans which were not originated in accordance with the applicable underwriting guidelines.  Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different employment information and providing stated income that was clearly unreasonable.  The BNC Underwriting Guidelines expressly require verification of the borrower's job title listed on the application as part of the verbal verification of employment process, as well as review of the stated income for reasonableness for the verified position.  The files, however, contain no evidence that the underwriter obtained the required employment verification or reviewed the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the borrower's income needed to qualify for the Loan.  BNC Underwriting Guidelines specify that the dollar amount and consistency of deposits, monthly deposits versus withdrawals, ending balances each month, and inconsistent large deposits be considered in the analysis of the bank statements.  Further, the guidelines provide that the "statements should be totally legible...[with] no erasures, white-outs or complete mark-throughs."  Again, the file contained no evidence that the underwriter properly analyzed and addressed the deficiencies in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not originated in accordance with the BNC Underwriting Guidelines.  Carlyle also made similar findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]   See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum, Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum, Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10, 2008 Prospectus Supplement at S-66.

BUSINESS # 1004597 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman Securities pursuant to Offering Materials which were materially untrue and misleading. The statements in the Offering Materials concerning compliance with the BNC Underwriting Guidelines were materially untrue and misleading. In reality, a material portion of the loans did not comply with those guidelines. The Offering Materials contained untrue statements and omitted other facts necessary to make the statements not misleading. Lehman owed to the purchasers of the securities the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that the statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue and misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least $5,023,782.85 due to Lehman's actions. By reason of the foregoing, Lehman is liable for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered pursuant to the Offering Materials identified above, including the various prospectuses. Those Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as set forth above. Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without any omissions of any material facts and were not misleading. Carlyle purchased or otherwise acquired securities in the Offerings pursuant to the materially untrue and misleading Offering Materials and did not know, and with the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials. By virtue of the conduct alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of securities issued and sold by Debtors, and Debtors made material misrepresentations in

BUSINESS # 1004597 v.1

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## **RESERVATION OF RIGHTS**

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

BUSINESS # 1004597 v.1



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Structured Asset Securities Corporation | 09-10558 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000014712

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

SASC 2007-BC4 A4, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052   Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone number: 202-729-5233   Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.   Amount of Claim as of Date Case Filed:** $ 51,293,673.21

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** _____
**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.   Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☑ Other
Describe:   See attached Addendum
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other -- Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:
$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**
SEP 17 2009
EPIQ BANKRUPTCY SOLUTIONS LLC

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 9/15/09 | HAYDEN R. JONES   VICE PRESIDENT |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50.  The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security.  Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan.  Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines.  Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable.  The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position.  The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan.  BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements.  Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs."  Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines.  Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]   See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
      Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
      Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
      2008 Prospectus Supplement at S-66.

BUSINESS # 1004595 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman Securities pursuant to Offering Materials which were materially untrue and misleading. The statements in the Offering Materials concerning compliance with the BNC Underwriting Guidelines were materially untrue and misleading. In reality, a material portion of the loans did not comply with those guidelines. The Offering Materials contained untrue statements and omitted other facts necessary to make the statements not misleading. Lehman owed to the purchasers of the securities the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that the statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue and misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least $51,293,673.21 due to Lehman's actions. By reason of the foregoing, Lehman is liable for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered pursuant to the Offering Materials identified above, including the various prospectuses. Those Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as set forth above. Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without any omissions of any material facts and were not misleading. Carlyle purchased or otherwise acquired securities in the Offerings pursuant to the materially untrue and misleading Offering Materials and did not know, and with the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials. By virtue of the conduct alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

BUSINESS # 1004595 v.1



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Structured Asset Securities Corporation | 09-10558 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000014713

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)
BNC 2007-4, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004

Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1.  Amount of Claim as of Date Case Filed:  $  4,816,484.01

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2.  Basis for Claim:  Securities Law Violations
(See instruction #2 on reverse side.)

3.  Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4.  Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☑ Other
Describe:  See attached Addendum ✚
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:

$_____

6.  Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY
FILED / RECEIVED
SEP 17 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |

HAYDEN R. JONES
VICE PRESIDENT

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ADDENDUM TO PROOF OF CLAIM
## OF BNC 2007-4, LLC
## BANKRUPTCY CASE NO. 09-10558 (JMP)
## IN RE STRUCTURED ASSET SECURITIES CORPORATION

BNC 2007-4, LLC, an affiliate of The Carlyle Group ("**Carlyle**"), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. ("**LBHI**") and Structured Asset Securities Corporation ("**SASC**" and, together with LBHI, "**Lehman**" or "**Debtors**").[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions:  BNC Mortgage Loan Trust 2007-3 (the "**2007-3 Securitization**"), BNC Mortgage Loan Trust 2007-4 (the "**2007-4 Securitization**"), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the "**2007-BNC1 Securitization**") and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4.  In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the "**Lehman Securities**") in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue.  The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the "**Loans**").

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor.  LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC.  SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities.  Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the "**Offering Materials**").  The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "**Securities Act**"), as well as various common law claims.  In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines. For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]    The supporting documents for this claim are too voluminous to attach hereto.  Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines." Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007 Prospectus Supplement at S-50. The Offering Materials for the other subject transactions contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed security is of the utmost importance to an investor in such security. Failure to properly verify occupancy, income, employment or other debt obligations, failure to take additional required steps when stated income is unreasonable and unsupported or property appraisals are unreasonably inflated, failure to obtain or provide required documentation and other similar underwriting deficiencies have a material adverse effect on the value of the related mortgage loan and, accordingly, the asset-backed security supported by such mortgage loan. Carlyle purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed an alarmingly high number of Loans which were not originated in accordance with the applicable underwriting guidelines. Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different employment information and providing stated income that was clearly unreasonable. The BNC Underwriting Guidelines expressly require verification of the borrower's job title listed on the application as part of the verbal verification of employment process, as well as review of the stated income for reasonableness for the verified position. The files, however, contain no evidence that the underwriter obtained the required employment verification or reviewed the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the borrower's income needed to qualify for the Loan. BNC Underwriting Guidelines specify that the dollar amount and consistency of deposits, monthly deposits versus withdrawals, ending balances each month, and inconsistent large deposits be considered in the analysis of the bank statements. Further, the guidelines provide that the "statements should be totally legible...[with] no erasures, white-outs or complete mark-throughs." Again, the file contained no evidence that the underwriter properly analyzed and addressed the deficiencies in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not originated in accordance with the BNC Underwriting Guidelines. Carlyle also made similar findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]   See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum, Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum, Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10, 2008 Prospectus Supplement at S-66.

BUSINESS # 1004576 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC
Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material
percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in
accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would
find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans
included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman
Securities pursuant to Offering Materials which were materially untrue and misleading. The
statements in the Offering Materials concerning compliance with the BNC Underwriting
Guidelines were materially untrue and misleading. In reality, a material portion of the loans did
not comply with those guidelines. The Offering Materials contained untrue statements and
omitted other facts necessary to make the statements not misleading. Lehman owed to the
purchasers of the securities the duty to make a reasonable and diligent investigation of the
statements contained in the Offering Materials at the time they became effective to ensure that
the statements were true and that there were no omissions of material fact which rendered the
statements therein materially untrue and misleading. Lehman did not make a reasonable
investigation or possess reasonable grounds to believe that the statements contained in the
Offering Materials were true and without omissions of any material facts and were not
misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least
$4,816,484.01 due to Lehman's actions. By reason of the foregoing, Lehman is liable for
violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered
pursuant to the Offering Materials identified above, including the various prospectuses. Those
Offering Materials contained untrue statements of material fact and omitted other facts necessary
to make the statements not misleading, and failed to disclose material facts as set forth above.
Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements
contained in the Offering Materials to ensure that such statements were true and that there was
no omission of material fact necessary to prevent the statements contained therein from being
misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to
believe that the statements contained in the Offering Materials were true and without any
omissions of any material facts and were not misleading. Carlyle purchased or otherwise
acquired securities in the Offerings pursuant to the materially untrue and misleading Offering
Materials and did not know, and with the exercise of reasonable diligence could not have known,
of the untruths and omissions contained in the Offering Materials. By virtue of the conduct
alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15
U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making
material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of
securities issued and sold by Debtors, and Debtors made material misrepresentations in

BUSINESS # 1004576 v.1

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## **RESERVATION OF RIGHTS**

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

BUSINESS # 1004576 v.1



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held **Structured Asset Securities Corporation** | Case No. of Debtor **09-10558 (JMP)** |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000014714

0000014714

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)
Carlyle Mortgage Capital, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004

Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 30,202,707.55
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. **Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe: See attached Addendum ⊞
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

| **FOR COURT USE ONLY** |
|---|
| **FILED / RECEIVED** |
| SEP 17 2009 |
| EPIQ BANKRUPTCY SOLUTIONS, LLC |

Date: 9/15/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

HAYDEN R. JONES
VICE PRESIDENT

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# ADDENDUM TO PROOF OF CLAIM
# OF CARLYLE MORTGAGE CAPITAL, LLC
# BANKRUPTCY CASE NO. 09-10558 (JMP)
# IN RE STRUCTURED ASSET SECURITIES CORPORATION

Carlyle Mortgage Capital, LLC, an affiliate of The Carlyle Group (**"Carlyle"**), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. (**"LBHI"**) and Structured Asset Securities Corporation (**"SASC"** and, together with LBHI, **"Lehman"** or **"Debtors"**).[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions: BNC Mortgage Loan Trust 2007-3 (the **"2007-3 Securitization"**), BNC Mortgage Loan Trust 2007-4 (the **"2007-4 Securitization"**), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the **"2007-BNC1 Securitization"**) and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4. In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the **"Lehman Securities"**) in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue. The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the **"Loans"**).

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor. LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC. SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities. Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the **"Offering Materials"**). The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the **"Securities Act"**), as well as various common law claims. In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the **"Exchange Act"**) and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines. For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1] The supporting documents for this claim are too voluminous to attach hereto. Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50.  The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security.  Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan.  Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines.  Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable.  The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position.  The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan.  BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements.  Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs."  Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines.  Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]  See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
2008 Prospectus Supplement at S-66.

BUSINESS # 1004575 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## **LEGAL CLAIMS**

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman Securities pursuant to Offering Materials which were materially untrue and misleading. The statements in the Offering Materials concerning compliance with the BNC Underwriting Guidelines were materially untrue and misleading. In reality, a material portion of the loans did not comply with those guidelines. The Offering Materials contained untrue statements and omitted other facts necessary to make the statements not misleading. Lehman owed to the purchasers of the securities the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that the statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue and misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least $20,202,707.55 due to Lehman's actions. By reason of the foregoing, Lehman is liable for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered pursuant to the Offering Materials identified above, including the various prospectuses. Those Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as set forth above. Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without any omissions of any material facts and were not misleading. Carlyle purchased or otherwise acquired securities in the Offerings pursuant to the materially untrue and misleading Offering Materials and did not know, and with the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials. By virtue of the conduct alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

4



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000014715

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)
SASC 2007-BC4 A4 II, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLC
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.** Amount of Claim as of Date Case Filed: $ 36,753,446.67
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

**2.** Basis for Claim: Securities Law Violations
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.** Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☑ Other
Describe: See attached Addendum
Value of Property: $_____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection: _____
Amount of Secured Claim: $_____  Amount Unsecured: $_____

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

**6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

**7.** Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.** Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

FOR COURT USE ONLY
**FILED / RECEIVED**
SEP 17 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. HAYDEN R. JONES VICE PRESIDENT |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# ADDENDUM TO PROOF OF CLAIM
## OF SASC 2007-BC4 A4 II LLC
## BANKRUPTCY CASE NO. 08-13555 (JMP)
## IN RE LEHMAN BROTHERS HOLDINGS INC.

SASC 2007-BC4 A4 II LLC, an affiliate of The Carlyle Group ("**Carlyle**"), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. ("**LBHI**") and Structured Asset Securities Corporation ("**SASC**" and, together with LBHI, "**Lehman**" or "**Debtors**").[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions:  BNC Mortgage Loan Trust 2007-3 (the "**2007-3 Securitization**"), BNC Mortgage Loan Trust 2007-4 (the "**2007-4 Securitization**"), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the "**2007-BNC1 Securitization**") and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4.  In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the "**Lehman Securities**") in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue.  The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the "**Loans**").

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor.  LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC.  SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities.  Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the "**Offering Materials**").  The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "**Securities Act**"), as well as various common law claims.  In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines.  For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]   The supporting documents for this claim are too voluminous to attach hereto.  Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50. The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security. Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan. Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines. Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable. The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position. The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan. BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements. Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs." Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines. Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]    See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
2008 Prospectus Supplement at S-66.

BUSINESS # 1004615 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman Securities pursuant to Offering Materials which were materially untrue and misleading. The statements in the Offering Materials concerning compliance with the BNC Underwriting Guidelines were materially untrue and misleading. In reality, a material portion of the loans did not comply with those guidelines. The Offering Materials contained untrue statements and omitted other facts necessary to make the statements not misleading. Lehman owed to the purchasers of the securities the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that the statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue and misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least $36,753,446.67 due to Lehman's actions. By reason of the foregoing, Lehman is liable for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered pursuant to the Offering Materials identified above, including the various prospectuses. Those Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as set forth above. Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without any omissions of any material facts and were not misleading. Carlyle purchased or otherwise acquired securities in the Offerings pursuant to the materially untrue and misleading Offering Materials and did not know, and with the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials. By virtue of the conduct alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of securities issued and sold by Debtors, and Debtors made material misrepresentations in

BUSINESS # 1004615 v.1

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

4



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000014716

| In Re:
Lehman Brothers Holdings Inc., et al.
Debtors. | Chapter 11
Case No. 08-13555 (JMP)
(Jointly Administered) |
| Name of Debtor Against Which Claim is Held
Lehman Brothers Holdings Inc. | Case No. of Debtor
08-13555 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities. (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

SASC 2007-BNC1 LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052   Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004

Telephone number: 202-729-5233   Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 5,023,782.75

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

**2. Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☑ Other

Describe: See attached Addendum   +

Value of Property: $ _____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____   Basis for perfection: _____

Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____**
(See instruction #6 on reverse side.)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

Amount entitled to priority:

$ _____

**7. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FILED/RECEIVED
SEP 17 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:
9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |

HAYDEN R. JONES
VICE PRESIDENT

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

### ADDENDUM TO PROOF OF CLAIM
### OF SASC 2007-BNC1 LLC
### BANKRUPTCY CASE NO. 09-13555 (JMP)
### IN RE LEHMAN BROTHERS HOLDINGS INC.

SASC 2007-BNC1 LLC, an affiliate of The Carlyle Group ("**Carlyle**"), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. ("**LBHI**") and Structured Asset Securities Corporation ("**SASC**" and, together with LBHI, "**Lehman**" or "**Debtors**").[1]

### FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions:  BNC Mortgage Loan Trust 2007-3 (the "**2007-3 Securitization**"), BNC Mortgage Loan Trust 2007-4 (the "**2007-4 Securitization**"), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the "**2007-BNC1 Securitization**") and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4.  In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the "**Lehman Securities**") in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue.  The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the "**Loans**").

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor.  LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC.  SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities.  Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the "**Offering Materials**").  The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "**Securities Act**"), as well as various common law claims.  In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines.  For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]  The supporting documents for this claim are too voluminous to attach hereto.  Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50.  The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security.  Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan.  Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines.  Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable.  The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position.  The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan.  BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements.  Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs."  Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines.  Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]   See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
      Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
      Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
      2008 Prospectus Supplement at S-66.

BUSINESS # 1004869 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman Securities pursuant to Offering Materials which were materially untrue and misleading. The statements in the Offering Materials concerning compliance with the BNC Underwriting Guidelines were materially untrue and misleading. In reality, a material portion of the loans did not comply with those guidelines. The Offering Materials contained untrue statements and omitted other facts necessary to make the statements not misleading. Lehman owed to the purchasers of the securities the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that the statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue and misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least $5,023,782.85 due to Lehman's actions. By reason of the foregoing, Lehman is liable for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered pursuant to the Offering Materials identified above, including the various prospectuses. Those Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as set forth above. Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without any omissions of any material facts and were not misleading. Carlyle purchased or otherwise acquired securities in the Offerings pursuant to the materially untrue and misleading Offering Materials and did not know, and with the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials. By virtue of the conduct alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

4



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

## PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000014717

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

SASC 2007-BC4 A4, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(if known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 51,293,673.21

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ONTO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. **Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☑ Other
Describe: See attached Addendum
Value of Property: $ _____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____    Basis for perfection: _____
Amount of Secured Claim: $ _____    Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____**
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED

SEP 17 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   HAYDEN R. JONES   VICE PRESIDENT |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ADDENDUM TO PROOF OF CLAIM
## OF SASC 2007-BC4 A4, LLC
## BANKRUPTCY CASE NO. 08-13555 (JMP)
## IN RE LEHMAN BROTHERS HOLDINGS INC.

SASC 2007-BC4 A4, LLC, an affiliate of The Carlyle Group (**"Carlyle"**), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. (**"LBHI"**) and Structured Asset Securities Corporation (**"SASC"** and, together with LBHI, **"Lehman"** or **"Debtors"**).[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions:  BNC Mortgage Loan Trust 2007-3 (the **"2007-3 Securitization"**), BNC Mortgage Loan Trust 2007-4 (the **"2007-4 Securitization"**), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the **"2007-BNC1 Securitization"**) and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4.  In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the **"Lehman Securities"**) in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue.  The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the **"Loans"**).

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor.  LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC.  SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities.  Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the **"Offering Materials"**).  The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the **"Securities Act"**), as well as various common law claims.  In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the **"Exchange Act"**) and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines.  For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]  The supporting documents for this claim are too voluminous to attach hereto.  Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50. The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security. Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan. Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines. Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable. The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position. The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan. BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements. Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs." Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines. Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]   See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
      Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
      Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
      2008 Prospectus Supplement at S-66.

BUSINESS # 1004586 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman Securities pursuant to Offering Materials which were materially untrue and misleading. The statements in the Offering Materials concerning compliance with the BNC Underwriting Guidelines were materially untrue and misleading. In reality, a material portion of the loans did not comply with those guidelines. The Offering Materials contained untrue statements and omitted other facts necessary to make the statements not misleading. Lehman owed to the purchasers of the securities the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that the statements were true and that there were no omissions of material fact which rendered the statements therein materially untrue and misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least $51,293,673.21 due to Lehman's actions. By reason of the foregoing, Lehman is liable for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered pursuant to the Offering Materials identified above, including the various prospectuses. Those Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as set forth above. Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and without any omissions of any material facts and were not misleading. Carlyle purchased or otherwise acquired securities in the Offerings pursuant to the materially untrue and misleading Offering Materials and did not know, and with the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Materials. By virtue of the conduct alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

4



| | |
|---|---|
| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |

| | |
|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 (JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000014718

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

BNC 2007-4, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Telephone number: 215-564-8052    Email Address: ppatterson@stradley.com

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone number: 202-729-5233    Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 4,816,484.01

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

**2. Basis for Claim:** Securities Law Violations
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☑ Other
Describe: See attached Addendum
Value of Property: $_____    Annual Interest Rate ____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____
**Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If you or any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**7. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 17 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| | |
|---|---|
| Date:<br>9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>HAYDEN R. JONES<br>VICE PRESIDENT |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# ADDENDUM TO PROOF OF CLAIM
## OF BNC 2007-4, LLC
## BANKRUPTCY CASE NO. 08-13555 (JMP)
## IN RE LEHMAN BROTHERS HOLDINGS INC.

BNC 2007-4, LLC, an affiliate of The Carlyle Group ("**Carlyle**"), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. ("**LBHI**") and Structured Asset Securities Corporation ("**SASC**" and, together with LBHI, "**Lehman**" or "**Debtors**").[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions: BNC Mortgage Loan Trust 2007-3 (the "**2007-3 Securitization**"), BNC Mortgage Loan Trust 2007-4 (the "**2007-4 Securitization**"), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the "**2007-BNC1 Securitization**") and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4. In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the "**Lehman Securities**") in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue. The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the "**Loans**").

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor. LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC. SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities. Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the "**Offering Materials**"). The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "**Securities Act**"), as well as various common law claims. In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the **"Exchange Act"**) and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines. For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1]   The supporting documents for this claim are too voluminous to attach hereto. Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50.  The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security.  Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan.  Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines.  Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable.  The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position.  The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan.  BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements.  Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs."  Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines.  Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]    See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
       Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
       Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
       2008 Prospectus Supplement at S-66.

BUSINESS # 1004579 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC
Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material
percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in
accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would
find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans
included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman
Securities pursuant to Offering Materials which were materially untrue and misleading. The
statements in the Offering Materials concerning compliance with the BNC Underwriting
Guidelines were materially untrue and misleading. In reality, a material portion of the loans did
not comply with those guidelines. The Offering Materials contained untrue statements and
omitted other facts necessary to make the statements not misleading. Lehman owed to the
purchasers of the securities the duty to make a reasonable and diligent investigation of the
statements contained in the Offering Materials at the time they became effective to ensure that
the statements were true and that there were no omissions of material fact which rendered the
statements therein materially untrue and misleading. Lehman did not make a reasonable
investigation or possess reasonable grounds to believe that the statements contained in the
Offering Materials were true and without omissions of any material facts and were not
misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least
$4,816,484.01 due to Lehman's actions. By reason of the foregoing, Lehman is liable for
violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered
pursuant to the Offering Materials identified above, including the various prospectuses. Those
Offering Materials contained untrue statements of material fact and omitted other facts necessary
to make the statements not misleading, and failed to disclose material facts as set forth above.
Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements
contained in the Offering Materials to ensure that such statements were true and that there was
no omission of material fact necessary to prevent the statements contained therein from being
misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to
believe that the statements contained in the Offering Materials were true and without any
omissions of any material facts and were not misleading. Carlyle purchased or otherwise
acquired securities in the Offerings pursuant to the materially untrue and misleading Offering
Materials and did not know, and with the exercise of reasonable diligence could not have known,
of the untruths and omissions contained in the Offering Materials. By virtue of the conduct
alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15
U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making
material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of
securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

4

BUSINESS # 1004579 v.1



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings Inc. | 08-13555 (JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                    0000014719

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Carlyle Mortgage Capital, LLC
c/o Paul A. Patterson, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Telephone number: 215-564-8052   Email Address: ppatterson@stradley.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Brian Nelsen, The Carlyle Group
1001 Pennsylvania Avenue N.W.
Washington, DC 20004

Telephone number: 202-729-5233   Email Address: brian.nelsen@carlyle.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 20,202,707⁵⁵

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Securities Law Violations
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. **Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☑ Other
   Describe: See attached Addendum
   Value of Property: $_____   Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____   Basis for perfection: _____

   Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**

SEP 17 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  HAYDEN R. JONES  VICE PRESIDENT |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ADDENDUM TO PROOF OF CLAIM
## OF CARLYLE MORTGAGE CAPITAL, LLC
## BANKRUPTCY CASE NO. 08-13555 (JMP)
## IN RE LEHMAN BROTHERS HOLDINGS, INC.

Carlyle Mortgage Capital, LLC, an affiliate of The Carlyle Group (**"Carlyle"**), hereby submits this Addendum to Proof of Claim against debtors-in-possession, Lehman Brothers Holdings Inc. (**"LBHI"**) and Structured Asset Securities Corporation (**"SASC"** and, together with LBHI, **"Lehman"** or **"Debtors"**).[1]

## FACTUAL BACKGROUND

This claim arises from and relates to one or more of the following four securitization transactions: BNC Mortgage Loan Trust 2007-3 (the **"2007-3 Securitization"**), BNC Mortgage Loan Trust 2007-4 (the **"2007-4 Securitization"**), Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 (the **"2007-BNC1 Securitization"**) and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4. In one or more of these securitizations, Carlyle purchased Mortgage Pass-Through Certificates issued by Lehman (the **"Lehman Securities"**) in reliance upon statements in the related offering documents that Carlyle subsequently learned were untrue. The Lehman Securities are asset-backed securities, backed by the cash flows derived from pools of residential mortgage loans (the **"Loans"**).

In each of the subject transactions, LBHI acted as the sponsor and seller, and SASC, a wholly-owned indirect subsidiary of LBHI, acted as the depositor. LBHI, in its capacities as sponsor and seller, arranged the securitizations and sold the Loans to SASC. SASC, in its capacity as depositor, purchased the Loans and sold them to trustees for the benefit of the holders of the related Lehman Securities. Contemporaneously with the transfers of the Loans, SASC issued the Lehman Securities to investors, including Carlyle.

The Lehman Securities were offered pursuant to one or more registration statements, prospectuses, prospectus supplements or private placement memorandums (collectively, the **"Offering Materials"**). The Offering Materials contained material misrepresentations and omissions and, as a result, Carlyle asserts claims with respect to the Lehman Securities under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the **"Securities Act"**), as well as various common law claims. In addition, as discussed below, Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the **"Exchange Act"**) and Rule 10b-5 thereunder for material misrepresentations in the sale of a security.

The Offering Materials utilized for each securitization included specific statements about the characteristics of the underlying Loans, as well as a specific representation that the Loans were originated in accordance with applicable underwriting guidelines. For example, the Prospectus Supplement for the 2007-BNC1 Securitization expressly stated that "[a]ll of the

---

[1] The supporting documents for this claim are too voluminous to attach hereto. Supporting documents will be produced upon appropriate request.

Mortgage Loans were originated in accordance with the BNC Underwriting Guidelines."
Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, November 8, 2007
Prospectus Supplement at S-50. The Offering Materials for the other subject transactions
contained similar statements.[2]

The prudent and proper underwriting of mortgage loans underlying an asset-backed
security is of the utmost importance to an investor in such security. Failure to properly verify
occupancy, income, employment or other debt obligations, failure to take additional required
steps when stated income is unreasonable and unsupported or property appraisals are
unreasonably inflated, failure to obtain or provide required documentation and other similar
underwriting deficiencies have a material adverse effect on the value of the related mortgage
loan and, accordingly, the asset-backed security supported by such mortgage loan. Carlyle
purchased the Lehman Securities in reliance on the Offering Materials disclosure stating that the
underwriting of the Loans conformed to the applicable underwriting guidelines.

Unfortunately, a review by Carlyle of a representative sampling of Loans underlying two
of the subject transactions, the 2007-3 Securitization and the 2007-4 Securitization, has revealed
an alarmingly high number of Loans which were not originated in accordance with the applicable
underwriting guidelines. Two examples of such noncompliance are set forth below:

- One of the Loan origination files contained two loan applications, each indicating different
  employment information and providing stated income that was clearly unreasonable. The
  BNC Underwriting Guidelines expressly require verification of the borrower's job title listed
  on the application as part of the verbal verification of employment process, as well as review
  of the stated income for reasonableness for the verified position. The files, however, contain
  no evidence that the underwriter obtained the required employment verification or reviewed
  the stated income for reasonableness.

- Another Loan origination file contained bank statements that were visibly altered to boost the
  borrower's income needed to qualify for the Loan. BNC Underwriting Guidelines specify
  that the dollar amount and consistency of deposits, monthly deposits versus withdrawals,
  ending balances each month, and inconsistent large deposits be considered in the analysis of
  the bank statements. Further, the guidelines provide that the "statements should be totally
  legible...[with] no erasures, white-outs or complete mark-throughs." Again, the file
  contained no evidence that the underwriter properly analyzed and addressed the deficiencies
  in the provided bank statements in accordance with the specified underwriting guidelines.

Of the 432 Loans reviewed from the 2007-3 Securitization, 193 Loans with an initial aggregate
principal balance of approximately $54,358,150, or 44.68% of the Loans reviewed, were not
originated in accordance with the BNC Underwriting Guidelines. Carlyle also made similar
findings in its review of a sampling of Loans from the 2007-4 Securitization – 40.67% of the

---

[2]   See also BNC Net Interest Margin Securities, Series 2007-3, July 19, 2007 Private Placement Memorandum,
Exhibit A at S-54, BNC Mortgage Loan Trust 2007-4, January 8, 2008 Private Placement Memorandum,
Exhibit A at S-68, and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC4, January 10,
2008 Prospectus Supplement at S-66.

BUSINESS # 1004569 v.1

Loans reviewed in that transaction were not originated in accordance with the BNC
Underwriting Guidelines.

Based on Carlyle's findings with respect to the sampled Loans, it is clear that a material
percentage of the Loans in the 2007-3 and 2007-4 Securitizations were not originated in
accordance with the BNC Underwriting Guidelines. Carlyle has reason to believe that it would
find a similar percentage of noncompliant Loans if it were to review all of the underlying Loans
included in the 2007-3 and 2007-4 Securitizations, as well as the other two subject transactions.

## LEGAL CLAIMS

Lehman is liable for violations of the Securities Act arising out of the sale of the Lehman
Securities pursuant to Offering Materials which were materially untrue and misleading. The
statements in the Offering Materials concerning compliance with the BNC Underwriting
Guidelines were materially untrue and misleading. In reality, a material portion of the loans did
not comply with those guidelines. The Offering Materials contained untrue statements and
omitted other facts necessary to make the statements not misleading. Lehman owed to the
purchasers of the securities the duty to make a reasonable and diligent investigation of the
statements contained in the Offering Materials at the time they became effective to ensure that
the statements were true and that there were no omissions of material fact which rendered the
statements therein materially untrue and misleading. Lehman did not make a reasonable
investigation or possess reasonable grounds to believe that the statements contained in the
Offering Materials were true and without omissions of any material facts and were not
misleading. Accordingly, Lehman is liable to Carlyle. Carlyle has sustained damages of at least
$20,202,707.55 due to Lehman's actions. By reason of the foregoing, Lehman is liable for
violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

Lehman was a seller, offeror and/or solicitor of sales of the Lehman Securities offered
pursuant to the Offering Materials identified above, including the various prospectuses. Those
Offering Materials contained untrue statements of material fact and omitted other facts necessary
to make the statements not misleading, and failed to disclose material facts as set forth above.
Lehman owed to Carlyle a duty to make a reasonable and diligent investigation of statements
contained in the Offering Materials to ensure that such statements were true and that there was
no omission of material fact necessary to prevent the statements contained therein from being
misleading. Lehman did not make a reasonable investigation or possess reasonable grounds to
believe that the statements contained in the Offering Materials were true and without any
omissions of any material facts and were not misleading. Carlyle purchased or otherwise
acquired securities in the Offerings pursuant to the materially untrue and misleading Offering
Materials and did not know, and with the exercise of reasonable diligence could not have known,
of the untruths and omissions contained in the Offering Materials. By virtue of the conduct
alleged herein, Lehman violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

Debtors may also be liable to Carlyle pursuant to Section 10(b) of the Exchange Act, 15
U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, for making
material misrepresentations in connection with the sale of securities. Carlyle was a purchaser of
securities issued and sold by Debtors, and Debtors made material misrepresentations in

3

connection with these sales. Carlyle relied upon Debtors' representations and was harmed thereby. Debtors' misrepresentations were the proximate cause of Carlyle's damages. Should facts arise showing that Debtors acted with scienter (intent to deceive or recklessness), then a complete Section 10(b) and Rule 10b-5 cause of action will accrue to Carlyle. Carlyle therefore reserves the right to add a Section 10(b) and Rule 10b-5 cause of action to this Proof of Claim at a later time.

In addition to the claims under the Securities Act (and potential claim under the Exchange Act), the actions of Lehman constitute common law fraud and misrepresentation.

## RESERVATION OF RIGHTS

Carlyle reserves the right to amend, add detail, supplement and/or modify this claim from time to time. This claim is filed as an unsecured claim. Without limiting the foregoing or in anyway waiving, modifying or prejudicing its rights, Carlyle reserves the right to: (i) assert that all or a portion of this claim is an administrative expense; or (ii) assert all or any portion of this claim as a secured claim. This claim is filed without waiver, limitation and/or modification of any of Carlyle's rights and remedies against the Debtors or any other person or entity.

The assertion of claims by Carlyle in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of Carlyle. The execution and filing of this Proof of Claim does not constitute: (a) a waiver or release of Carlyle's rights against any other entity or person liable for all or part of the claims; (b) a consent by Carlyle to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving Carlyle; (c) a consent by Carlyle to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference with respect to the subject matter of the claims or otherwise, including, without limitation, any objection or other proceedings commenced with respect thereto, or any proceedings commenced against or otherwise involving Carlyle; (e) a waiver of any right to the subordination, in favor of Carlyle, of indebtedness or liens held by other creditors of either of the Debtors; (f) an election of remedies that waives or otherwise affects any other remedies; or (g) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable. Carlyle expressly reserves its right to amend and supplement this Proof of Claim to specify (and quantify) damages, costs, expenses and other charges or claims incurred by Carlyle and to file additional Proofs of Claim for additional claims, including without limitation (i) claims for post-petition interest, legal fees and related expenses that are not ascertainable at this time, and (ii) claims arising from or relating to the avoidance of transfers made to Carlyle or any other entity.

4

