# EXHIBIT C

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000029110

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

BRNP Holdings, L.L.C., 10 Saint James Avenue, Suite 2000, Boston, MA 02116
Notices to be sent to: Ropes & Gray LLP, One International Place, Boston, MA 02110, Attn: Matthew Terry

Telephone number: 617-951-7528    Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ See attached

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See attached
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____
   Value of Property: $_____    Annual Interest Rate _____ %
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____    Basis for perfection: _____
   Amount of Secured Claim: $_____    Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

FOR COURT USE ONLY
**FILED / RECEIVED**
SEP 22 2009
**EPIQ BANKRUPTCY SOLUTIONS, LLC**

| Date: 9/21/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. BRNP HOLDINGS, L.L.C. By: The Baupost Group, L.L.C. By: Thomas Blumenthal, Managing Director |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# IDENTIFICATION, BASIS AND CALCULATION OF CLAIM

BRNP Holdings, L.L.C. ("BRNP Holdings") is a holder of notes and certificates in SASCO Mortgage Loan Trust 2007-RNP1 (the "Trust"), which it purchased from Debtor Lehman Brothers Holdings, Inc. ("LBHI" or the "Debtor") in December 2007. Because of breaches and misrepresentations by LBHI in connection with this sale, BRNP Holdings now has claims arising from LBHI's improper treatment of servicing advances.

## I. The Servicing Advances

### A. Background

BRNP Holdings' claims relate to LBHI's improper diversion of certain funds that should have been paid to the Trust, for the benefit of the notes and certificates holders. The relevant background of the transaction with respect to this claim is as follows:

(a) In October 2007, an LBHI affiliate conveyed to the Trust a portfolio of residential mortgage loans, the majority of which were nonperforming. In exchange, the Trust issued notes and certificates.

(b) BRNP Holdings purchased a percentage of these notes and certificates issued by the Trust from LBHI.

(c) The Trust, at the time of conveyance of the loans, entered into a master servicing agreement with a master servicer, Aurora Loan Services LLC ("Aurora"), to manage the servicing of the loans. Aurora was and is a wholly-owned subsidiary of LBHI. Aurora, as master servicer, entered into a series of servicing agreements with entities (the "servicers") that agreed to service the loans.

Servicing agreements typically provide, *inter alia*, that the servicers are obligated to make servicing advances. "Servicing advances," generally speaking, are costs and expenses incurred by a servicer that are "reasonable, customary and necessary" for servicing a loan. These include, for example, outlays by a servicer to cover taxes or insurance that a mortgagor is obligated to make but does not. These advances are added to the amount the borrower owes the mortgage holder. Servicing agreements typically permit servicers to reimburse themselves for servicing advances they actually make. The reimbursement typically is taken from payments made by the mortgagor or out of loan liquidation proceeds.

In the sale of a preexisting mortgage loan portfolio, particularly one containing large numbers of nonperforming loans, the entity servicing the loans prior to the sale commonly has made servicing advances that have yet to be repaid by mortgagors. Typically, for nonperforming loan portfolios, the entity servicing the loans prior to the sale is not reimbursed for these payments by the new purchaser or its new servicer. Following the sale, however, the mortgagors remain obligated for these amounts and the new servicer must account for the advances made by the prior servicer and payments received from the mortgagors to repay them. To allow its own accounting system to recognize and process payments stemming from prior advances, the new

servicer typically either makes an appropriate bookkeeping accommodation in its own accounts or actually sets aside an amount equal to the prior advances in a "contra account."

In this case, the servicing agreements and accepted servicing practices dictate that, when payments stemming from prior advances are paid to the new servicer, either by the mortgagor or through a loan liquidating transaction, the funds are to be paid to the holder of the mortgage – here, the Trust. Aurora and LBHI departed from the standard industry practice, in contravention of the express terms of the contracts governing permissible use of payments associated with mortgage loans. Upon information and belief, the servicers did not make a bookkeeping accommodation or establish contra accounts as is standard in the industry. Instead, LBHI and/or its affiliate Lehman Brothers, Inc. ("LBI") instructed Aurora (its wholly-owned subsidiary) to cause servicers to make payments to LBHI and/or LBI equaling the amounts of all prior servicing advances. As payments or liquidation proceeds were received by the new servicers in respect of prior advances, Aurora then allowed the servicers to reimburse themselves for those payments to LBHI and/or LBI, as if the servicers had actually made those prior advances themselves, when in fact they had not. This scheme violates the terms of the operative agreements, which state that the Trust takes the Mortgage Assets unencumbered, and that servicers are entitled to reimbursement only for servicing advances that they themselves have made.

BRNP Holdings' damages arise from LBHI's and/or LBI's improper instructions to Aurora. Having caused the servicers to make the improper payments to LBHI and/or LBI (as instructed), Aurora subsequently allowed the servicers to reimburse themselves for the payments as, over time, the loans are paid or liquidated. As a result, the Trust in which BRNP Holdings holds notes and certificates has been deprived of approximately $8.6 million in reimbursements to date, and BRNP Holdings, as a beneficiary, has suffered at least $5 million in actual damages. LBHI, as seller, thus misrepresented the value of the securities and breached its representations and warranties in the operative sale agreement with BRNP Holdings.

    B.    Terms of the Residential Loan Trust 2008-2

These actions by LBHI were in conflict with the specific terms of the operative agreements. As stated above, BRNP Holdings holds securities in the SASCO Mortgage Loan Trust 2007-RNP1. The Mortgage Assets held by this Trust were originally assigned by The CIT Group to Lehman Capital (a division of LBHI) on October 16, 2007. (Mortgage Loan Sale Agreement.) LBHI conveyed the Mortgage Assets[1] to its affiliate, Structured Asset Securities Corporation ("SASCO"). (*See* Sale and Assignment Agreement.) SASCO then transferred the assets to the Trust. (*See* Transfer and Servicing Agreement.) At the same time, Aurora agreed to act as the Master Servicer for the loans. (*Id.* § 4.01.) LBHI then sold securities issued by the Trust to BRNP Holdings. (*See* Securities Purchase Agreement.)

The transaction documents set forth the circumstances under which servicers can be reimbursed from a Collection Account. None of the documents permit LBHI to depart from accepted servicing practices by accepting for itself funds equal to the amount of pre-transfer prior

---

[1] All capitalized terms are defined by the operative agreements with respect to Residential Loan Trust 2008-2.

servicing advances. The Transfer and Servicing Agreement specifies that Aurora allow servicers to reimburse themselves for servicing advances that they made "pursuant to the related Servicing Agreement." (Transfer and Servicing Agreement § 4.08(i).) By definition, this excludes servicing advances made pursuant to *prior* servicing agreements, the terms of which had been supplanted. Thus, the operative agreements did not contemplate or permit that Aurora would divert amounts for prior servicing advances to LBHI or its affiliates and then allow the servicers to reimburse themselves for those amounts.

Rather than adhering to the terms of the parties' agreements, LBHI (or its affiliate) instructed Aurora to cause the servicers to send it funds equal to the prior servicing advances and then retain monies in respect of those prior advances that were rightfully the property of the Trust.

## II. BRNP Holdings' Claims

As a result of the circumstances stated above, BRNP Holdings now has claims against LBHI as follows:

- Breach of contract, for breach of representations and warranties of clear title.

- Violation of Section 10(b) of the Securities Exchange Act of 1934, based on misrepresentations and omissions (as described above) made in connection with the sale of securities to BRNP Holdings.

- Fraud, based on the same material misrepresentations and omissions.

- Claims under M.G.L. ch. 93A § 11, for unfair and deceptive business practices based on intentional nondisclosure of material facts in connection with its sale of securities to BRNP Holdings.

Although BRNP Holdings does not have access to all the records necessary to calculate damages precisely, estimated damages to the Trust resulting from improper handling of prior service advances are $8.6 million, with damages to BRNP Holdings amounting to at least $5 million. This represents a good faith estimate, calculated using the best information available to BRNP Holdings.

***

BRNP Holdings reserves the right to amend its Proof of Claim from time to time to restate the amount of this claim as further information becomes available. BRNP Holdings also reserves, without limitation, all rights of setoff and recoupment and the right to claim all amounts due in respect of any additional interest, fees, costs, expenses, legal fees or expenses, default interest, make-whole premiums and postpetition interest.

This Proof of Claim is filed under the compulsion of the bar date established in this proceeding and is filed, among other reasons, to protect BRNP Holdings from forfeiture of claims by reason of such bar date and to preserve BRNP Holdings' rights. The filing of this Proof of Claim is not and shall not be deemed or construed as a waiver or release of BRNP Holdings' rights against any person, entity or property (including, without limitation, any person or entity that is or may become a debtor in a case pending in this Court), or any other right, remedy, claim or defense of BRNP Holdings whatsoever.

Voluminous transaction documents are available on request to Debtor by contacting Matthew Terry at Ropes & Gray LLP.

**HAND DELIVERY**

RECEIVED BY: A K

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

DATE

TIME: 9:23