Hearing Date and Time:  June 13, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline:  May 31, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :    **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :    **08-13555 (JMP)**
                                                                  :
                             Debtors.                        :    **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

**NOTICE OF HEARING ON PLAN ADMINISTRATOR'S OBJECTION
TO CLAIM NO. 11385 FILED BY FLAMINGO VALLEY VIEW, LLC**

**PLEASE TAKE NOTICE** that on April 29, 2013, Lehman Brothers Holdings Inc., as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22738] for the entities in the above referenced chapter 11 cases, filed its objection to proof of claim number 11385, filed by Flamingo Valley View, LLC (the "Objection to the Flamingo Valley Claim"), and that a hearing (the "Hearing") to consider the Objection to the Flamingo Valley Claim will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **June 13, 2013 at 10:00 a.m. (Prevailing Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection to the Flamingo Valley Claim must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for Lehman Brothers Holdings Inc., Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); and (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Susan Golden, Esq. and Andrea B. Schwartz, Esq.), so as to be so filed and received by no later than **May 31, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection to the Flamingo Valley Claim, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection to the Flamingo Valley Claim, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:   April 29, 2013
             New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

3

Hearing Date and Time:  June 13, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline:  May 31, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                              :    **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :    **08-13555 (JMP)**
                                                   :
                Debtors.                           :    **(Jointly Administered)**
------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S OBJECTION TO CLAIM**
**NO. 11385 FILED BY FLAMINGO VALLEY VIEW, LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator pursuant to the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan") for the entities in the above referenced chapter 11 cases (together, the "Chapter 11 Estates" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represents as follows:

**Preliminary Statement**

1.  The Plan Administrator files this objection seeking to disallow and expunge the proof of claim filed by Flamingo Valley View, LLC ("Flamingo Valley") on September 9, 2009 [Claim No. 11385] (the "Flamingo Valley Claim") on the basis that LBHI does not have any liability for the claims asserted therein. The Flamingo Valley Claim asserts an

US_ACTIVE:\43953110\10\58399.0011

unliquidated claim for damages that allegedly resulted from LBHI's bad faith conduct with respect to Flamingo Valley and certain property subject to a foreclosure sale.

2. The Flamingo Valley Claim asserts liabilities that are not valid causes of action for which LBHI can be held responsible. Further, the Flamingo Valley Claim includes unsubstantiated allegations regarding alleged wrongdoing of an entity which is not among the Chapter 11 Estates and for which LBHI is not liable. Accordingly, the Plan Administrator requests that the Flamingo Valley Claim be disallowed and expunged in its entirety, with prejudice.

### Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 14.1(c) of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

4. Commencing on September 15, 2008 and periodically thereafter, (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5. On December 6, 2011, the Court entered the order confirming the Plan [ECF No. 22737]. The Plan became effective on March 6, 2012 (the "Effective Date"). Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

2

**Relief Requested**

6.      The Plan Administrator files this objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(d) and seeks to disallow and expunge the Flamingo Valley Claim on the basis that LBHI has no liability for such claim.

**The Loan to Towers**

7.      On February 5, 2004, pursuant to that certain Land Purchase and Sale Agreement (as amended, the "Purchase Agreement"), between the manager of Flamingo Valley and Del American, Inc. ("Del American" or the "Developer"), Flamingo Valley agreed to sell approximately 9 acres of real property located in Las Vegas, Nevada (the "Property") to Del American for the construction of a luxury multifamily condominium project, for the purchase price of $50,000,000.  Del American subsequently assigned its rights under the Purchase Agreement to The Towers – Las Vegas, LLC ("Towers") and The Towers – LV, LLC ("Towers-LV").  Pursuant to the Purchase Agreement, Del American paid Flamingo Valley approximately $22,500,000 at closing, and the remaining $27,500,000 was paid in the form of a Promissory Note (the "Flamingo Note"), dated December 30, 2004, issued to the order of Flamingo Valley by a member of Towers-LV, The Towers-LV, Inc. ("Towers Inc.").  A copy of the Flamingo Note is attached hereto as Exhibit A.  The obligations of Towers Inc. under the Flamingo Note were secured by a pledge of the stock in Towers Inc. by its sole shareholder, Christopher DelGuidice.  Pursuant to the Flamingo Note, amounts owed thereunder were to be paid from the proceeds of condominium sales and were subordinated to the payment in full of the acquisition mortgage financing provided by LBHI.

3

8. On December 30, 2004, simultaneously with the title closing, LBHI entered into that certain Loan Agreement (as amended, the "Loan Agreement")[1] with Towers and Towers-LV (together, the "Borrower"), pursuant to which LBHI agreed to loan up to $86,439,063 (the "Loan"), of which $37,500,000 was to fund the acquisition of the Property and predevelopment costs. The Loan was evidenced by that certain Secured Promissory Note, dated December 30, 2004, made by the Borrower in favor of LBHI (as amended, the "Lehman Promissory Note," a copy of which is attached hereto as Exhibit C), and secured by a pledge of, and security interest in, the Borrower and Towers Inc., and by that certain Deed of Trust, dated December 30, 2004 (as amended, the "Deed of Trust"). Mr. DelGuidice guaranteed the Borrower's obligations to LBHI under the Loan Agreement.

9. The Loan Agreement expressly provides that, upon any Event of Default, the Lender has certain rights and remedies which it may pursue "concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender." *Loan Agreement*, § 11.1. LBHI, as lender, had the right, in its sole discretion, to exercise any and all rights and remedies granted to a secured party upon an Event of Default, including, without limitation, the right to take possession of the Property. *See Loan Agreement*, § 11.1(i).

10. On December 30, 2004, LBHI also entered into that certain Subordination Agreement with Flamingo Valley, a copy of which is attached hereto as Exhibit D, pursuant to which Flamingo Valley agreed to subordinate the amounts owed under the Flamingo Note to the payment in full of amounts owed to LBHI under the Loan Agreement (the "Subordination Agreement"). Section 6 of the Subordination Agreement expressly states the following:

---

[1] A copy of the Loan Agreement (without exhibits) is attached hereto as Exhibit B. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

4

> In the event of a default under any of the Loan Documents, [LBHI] shall have the absolute right, without Subordinate Lender's consent, or approval, to pursue any and all of its remedies and rights under the Loan Documents in any manner and in any order, including, without limitation, the right to . . . (i) accelerate the Loan . . . (iii) foreclose the Mortgage . . . (vii) succeed to or designate a successor to take title to the Property . . .

*Subordination Agreement*, §6.  The Subordination Agreement further provides that the "[LBHI] shall have the right without the consent of Subordinate Lender in each instance to enter into any amendment, deferral, extension, modification, increase, renewal, replacement, consolidation, supplement or waiver of the Loan or the Loan Documents." *Subordination Agreement*, §7(c).

### The Foreclosure

11.     In accordance with the terms of the Loan Agreement, LBHI declared an Event of Default on July 6, 2006 (the "Default Date"), due to the Borrower's failure to satisfy certain covenants under the Loan Agreement.  As of the Default Date, LBHI had advanced $50,000,000 of the principal amount of the Loan and was owed unpaid interest in the amount of $6,837,476.91.  Additionally, in accordance with the Lehman Promissory Note, the Borrower owed LBHI an Additional Fee in the amount of approximately $25,000,000.  LBHI notified both Towers and Towers-LV of the Event of Default by letter dated July 6, 2006 (the "Default Letter").  A copy of the Default Letter is attached hereto as Exhibit E.

12.     Pursuant to that certain General Assignment of Loan Documents, Indebtedness and Collateral Security (the "Assignment Agreement"), dated September 7, 2006, a copy of which is attached hereto as Exhibit F, LBHI assigned to Flamingo Land LLC ("Flamingo Land") all of LBHI's rights, title and interest in, among other things, (i) the Loan Documents (as defined in the Assignment Agreement); (ii) the liabilities and obligations of the Borrower, the Developer, Christopher DelGuidice, Towers Inc., Towers-LV Member, LLC, Flamingo Valley, and the title agent; and (iii) all real and personal property collateral liens, security interests,

5

assignments, pledges and other grants for the Loan and the Borrower's obligations with respect thereto. On the same date, LBHI also assigned all of its right, title, and interest under that certain Assignment of Leases and Rents, dated as of December 30, 2004, to Flamingo Land. Flamingo Land is an indirect subsidiary of LBHI that is not one of the Chapter 11 Estates.

13. In accordance with its rights and remedies afforded under the Loan Documents, Flamingo Land commenced foreclosure proceedings in September 2006. As required under the laws of the State of Nevada, Flamingo Land provided a Notice of Breach and Election to Sell Under Deed of Trust, dated as of September 21, 2006, to the Borrower and Flamingo Valley (the "Notice of Breach and Election to Sell"). *See* Nev. Rev. Stat. § 107.080(2)(c). A copy of the Notice of Breach and Election to Sell is attached hereto as Exhibit G. First American Title Insurance Company, the duly appointed trustee (the "Trustee") under the Deed of Trust, recorded the Notice of Breach and Election to Sell with the Las Vegas, Clark County Recorder on September 27, 2006.

14. On February 13, 2007, approximately five (5) months after the Notice of Breach and Election to Sell was recorded, the Trustee conducted a public foreclosure sale. At the sale Flamingo Land, as the beneficiary under the Deed of Trust, provided the opening bid, which was a credit bid in the amount of $65 million. *See* Beneficiary's Authorization to Bid issued by the Trustee, a copy of which is attached hereto as Exhibit H. Flamingo Land was the highest bidder at said sale and consequently became the owner of the Property.

**The Flamingo Valley Claim**

15. The Flamingo Valley Claim asserts that an award of damages is warranted because of certain alleged wrongful acts. The Flamingo Valley Claim, however, merely contains unfounded allegations of wrongdoing and no further detail or documentation regarding the

wrongful acts allegedly committed by Lehman.  Moreover, the Flamingo Valley Claim does not distinguish between LBHI and Flamingo Land; rather, Flamingo Valley treats two separate legal entities as if they were one and the same.  *See Flamingo Valley View Claim*, ¶¶ 13 – 30.

16. Although the Flamingo Valley Claim was filed as unliquidated, it appears that Flamingo Valley is seeking the difference between the amount Lehman loaned to the Borrower ($50 million) and the appraised value of the Property.  Flamingo Valley submits that a valuation for the Property was issued at the request of Flamingo Valley by certified general appraisers on April 30, 2007, and the valuation report, a copy of which has not been provided, allegedly concludes that the market value of the Property as of February 13, 2007, was $76,300,000.00 (the "Appraised Value").  Thus, it appears, although it is not certain, that Flamingo Valley is seeking $26.3 million.

### The Flamingo Valley Claim Should Be Disallowed and Expunged

17. A filed proof of claim is "deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  Flamingo Valley has not satisfied its burden to demonstrate that it is entitled to collect any amounts under the Flamingo Valley Claim from LBHI.

7

A.   *Lehman was not a Party to the Transaction
     <u>Between Flamingo Valley and the Borrower</u>*

18.   The Flamingo Valley Claim is based upon the unsubstantiated accusations of a sophisticated creditor that is attempting to obtain damages from LBHI because, in hindsight, it has seller's remorse regarding a transaction to which it expressly agreed.

19.   Neither LBHI nor Flamingo Land was a party to the Purchase Agreement or took part in the negotiations between Del American and Flamingo Valley with respect thereto. Accordingly, LBHI cannot be held liable for Flamingo Valley's decision, made of its own volition, to accept a promissory note in partial payment for the Property and then to subordinate its interest in the Property to a first mortgage lender. Indeed, Flamingo Valley entered into the Purchase Agreement fully aware that its interest would likely be subordinated to any entity that provided Del American with financing to be used to develop the Property. The Purchase Agreement explicitly states that "[t]o the extent required by the entity extending mezzanine financing, [Flamingo Valley] will enter into appropriate subordination and Intercreditor agreements evidencing their interest is subordinate in all respects to said lender." *Purchase Agreement*, §2.1. Accordingly, even prior to LBHI's involvement, Flamingo Valley had the expectation that its interest would be subordinated.

20.   LBHI was specifically referenced in subsequent documents relating to Flamingo Valley after LBHI agreed to provide financing to the Borrower. The Flamingo Note states that "no payments of principal shall be required . . . until the Borrower has – discharged mezzanine financing in the amount of $79,450,000 plus any interest reserved in favor of [LBHI] and/or its affiliates . . . and an "exit fee" thereon of up to $35,000,000." *Flamingo Note*, § I(b)(ii). Similarly, Section 8 of the Subordination Agreement states:

8

> Subordinate Lender hereby subordinates and makes junior the Subordinate Loan, the Subordinate Loan Documents and the liens and security interests created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Loan, including, without limitation, any Protective Advances and Additional Advances and interest accruals thereon and any compounding thereof, (ii) the liens and security interests created by the Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Loan Documents . . . .

*Subordination Agreement*, § 8(a).  In light of the express language of the Purchase Agreement, the subordination language in the Subordination Agreement and the Flamingo Note, and the lack of a contractual relationship between LBHI and Flamingo Valley other than pursuant to the Subordination Agreement, Flamingo Valley cannot credibly assert that it was induced by LBHI to sell the Property and carry a portion of the purchase price as a structurally subordinated mezzanine loan.  Flamingo Valley is a sophisticated party that was aware of its structural subordination and, therefore, cannot dispute any such subordination.

B.     *Flamingo Valley Lacks Standing to Assert Any Claims Against LBHI as Lender and Has Waived Such Claims*

21.     The Flamingo Valley Claim also asserts, in part, that an award of damages is warranted because LBHI acted in bad faith in connection with certain of its obligations under the Loan Agreement.  Flamingo Valley was not a party to the Loan Agreement.  Moreover, Section 20.10 of the Loan Agreement specifically eliminates the rights of third party beneficiaries and provides the following:

> Rights of Third Parties.  All conditions to the performance of the obligations of Lender under this Agreement, the Pledge Agreements and the other Loan Documents are imposed solely and exclusively for the benefit of Lender and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms, and no other Person shall, under any circumstances, be deemed to be a beneficiary of such conditions, any and all of which may be freely waived in whole or in part by Lender at any time if in its sole and absolute discretion it deems it desirable to do so.

9

*Loan Agreement*, §20.10.  Accordingly, Flamingo Valley may not seek damages resulting from LBHI's actions under the Loan Agreement under which it is neither a party nor a third party beneficiary.

   22.  Additionally, the Subordination Agreement unambiguously states the following:

> Subordinate Lender acknowledges and agrees that . . . in the event Lender or its successor, assign or designee or any other purchaser at a mortgage foreclosure sale or a UCC sale obtains title to the Property or the Pledged Interests, as the case may be, (1) Subordinate Lender shall have no rights with respect to, or recourse against, the Property or any portion thereof . . . and (2) Subordinate Lender shall have no recourse against any Successor Party or Lender . . . for, any sums due Subordinate Lender, including, without limitation, the sums due under the [Flamingo] Note, the "Additional Kicker" (as defined in the [Flamingo] Note), any profit generated from the Property . . . or any other sums, fees, interests or penalties due Subordinate Lender.

*Subordination Agreement*, §8(b).  Flamingo Valley, therefore, waived any recourse to LBHI and Flamingo Land for monies due under the Flamingo Note.

C.  *The Flamingo Valley Claim Is an Impermissible Collateral Attack On a Valid Foreclosure*

   23.  The Plan Administrator submits that the foreclosure of the Property was conducted in accordance with Nevada state law, as set forth in Nevada Revised Statute § 107.080.  Indeed, Flamingo Valley did not seek to exercise any possible state law remedies prior to filing the Flamingo Valley Claim over two and one-half years after the foreclosure sale. The Flamingo Valley Claim is an impermissible attempt to set aside a valid foreclosure when such action is precluded under Nevada state foreclosure law, which establishes a ninety (90) day period after a foreclosure sale to challenge the validity of the sale.  *See* Nev. Rev. Stat. Ann. § 107.080(5)(b).

10

24. Moreover, Flamingo Valley's attempt to recoup the difference between the foreclosure price and the fair market value of the Property at the time of the sale contravenes established case law which holds that the price obtained at a foreclosure sale conducted in accordance with applicable state law is presumptively made for reasonably equivalent value. *See Bfp v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) ("We deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with."); *In re Lindsay*, 59 F. 3d 942 (9th Cir. BAP 1994) ("Gross inadequacy of price is . . . not a federal standard independent of state law enabling a bankruptcy court to set aside a foreclosure sale."). Nevada state law does not void a foreclosure based upon the foreclosure price obtained at a valid foreclosure proceeding. *See*, *e.g.*, *Long v. Towne*, 639 p.2D 528, 530 (Nev. 1982) (stating "[m]ere inadequacy of price is not sufficient to justify setting aside a foreclosure sale without proof of some element of fraud, unfairness, or oppression". . . that could account for and bring about the inadequacy of price). Accordingly, given that Flamingo Land complied with Nevada State foreclosure law, the foreclosure price for the Property is presumptively fair value. Thus, the unsubstantiated damage award sought in the Flamingo Valley Claim is improper.

D.  *The Flamingo Valley Claim Asserts Liabilities*
     *Against an Entity that Is not a Chapter 11 Estate*

25. The Flamingo Valley Claim also fails to recognize that LBHI's interest in and obligations under the Loan were assigned to Flamingo Land prior to the foreclosure. As a result of LBHI's assignment of the Loan Agreement and related documents to Flamingo Land, LBHI no longer had any interest in the Loan or the Property as of September 27, 2006. Absent a compelling reason to ignore the corporate separateness of the various Lehman entities, the

11

potential liability of a non-debtor affiliate such as Flamingo Land does not result in a claim against LBHI. *See De Jesus v. Sears*, *Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (holding that pleadings were devoid of any specific facts or circumstances supporting plaintiffs' assertions, thus failing to overcome the presumption of separateness afforded to related corporations); *In re Gartner v. Snyder*, 607 F.2d 582 (2d Cir. 1979) (noting New York courts disregard corporate form reluctantly). Accordingly, any portion of the Flamingo Valley Claim related to or based on actions taken after such transfer, including any claim relating to the conduct of the foreclosure sale, should be disallowed and expunged.

26. The Plan Administrator has examined the Flamingo Valley Claim and has determined that such claim should be disallowed and expunged on the basis that it provides no basis of liability as to LBHI or any of the Chapter 11 Estates. Upon a review of the Flamingo Valley Claim and an internal review of the Chapter 11 Estates' books and records, the Plan Administrator has determined that the Flamingo Valley Claim is based upon speculative accusations and the requested damages are unsubstantiated and unwarranted.

27. The Plan Administrator has determined, after a thorough review, that the Flamingo Valley Claim does not contain any actual or contingent claims against LBHI or the Chapter 11 Estates. The Effective Date has occurred and initial distributions began on April 17, 2012. If the Flamingo Valley Claim remains on the claims register, the potential exists for recoveries by Flamingo Valley, which does not hold a valid claim against the Chapter 11 Estates. Accordingly, the Plan Administrator respectfully requests that the Court enter an order disallowing and expunging the Flamingo Valley Claim in its entirety.

**Reservation of Rights**

28. The Plan Administrator reserves all rights to object on any basis to the Flamingo Valley Claim in the event that the relief requested herein is not granted.

**Notice**

29. No trustee has been appointed in the Chapter 11 Cases. Notice of this objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Flamingo Valley; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635]. The Plan Administrator submits that no other or further notice need be provided.

30. No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: April 29, 2013
New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

13