## EXHIBIT A

(Flamingo Note)

US_ACTIVE:\43953110\10\58399.0011

# PROMISSORY NOTE

$27,500,000.00 <div style="float:right">Las Vegas, Nevada<br>December 30, 2004</div>

FOR VALUE RECEIVED, the undersigned, **THE TOWERS-LV, INC.**, a Delaware corporation (hereinafter called "Borrower") promises to pay to the order of **FLAMINGO VALLEY VIEW, LLC.**, a Nevada limited liability company (hereinafter called the "Payee"), the principal sum of **TWENTY SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS ($27,500,000.00)** without interest.

## (I) PRINCIPAL REPAYMENT

Principal shall be payable on the first to occur of the following:

(a) five (5) years from the date hereof (the "Maturity Date"), provided however, Borrower shall have a right to extend the Maturity Date for two (2), one (1) year terms and in said instance the outstanding principal balance shall be increased by the amount of $4,000,000 for each one year extension (total of $8,000,000 if both extensions are exercised); or

(b) from the net sales proceeds of condominium units built on the property legally described the Property (defined below) owned by Borrowers affiliate, to wit: The Towers – Las Vegas, LLC, a Nevada limited liability company (the "Fee Owner").

Notwithstanding the foregoing, no payments of principal shall be required under subsection I (b) until the Borrower has:

(i) discharged any construction loan on the Property including any interest of any nature owed thereon; and

(ii) discharged mezzanine financing in the amount of up to $79,450,000 plus any interest reserved in favor of Lehman Brothers Holding, Inc. and/or its affiliates, together with all accrued interest thereon (the mezzanine loan shall be for a maximum of $79,450,000 and at an interest rate not to exceed 500 basis points over the 30 day LIBOR, with a "floor" of nine percent and an "exit fee" thereon of up to $35,000,000); and

1

  (iii) paid all project costs reflected on the "Development Budget" (described below) which are approved by Purchaser's construction lender.

**(II)**   **DEFINITION**

  **"UNIT".**

 (a) For purposes of this Note a "Unit" is defined as a condominium unit, a condominium hotel unit or a townhouse unit but shall not include a leased commercial space.

 (b) **Phase(s).** The Borrower is presently contemplating constructing a two phase project:

  (i) the first phase will be on approximately 7.42 +/- acres of land, and consist of 542 plus or minus Units (the "Phase One Project");

  (ii) the second phase contemplated to be built on the remaining approximate 1.41 acres of land which is situate on the northwest corner of the property at the intersection of Flamingo and Hugh Heffner Boulevard (the "1.41 Acre Parcel"), may consist of a casino, another condominium, a shopping area, a hotel, a combination of the foregoing, or some other permissible use under the zoning code.

 (c) **Development Budget** will be prepared by Buyer and shall provide that the only fees that the Borrower, and its affiliates, will be entitled to (collectively "Affiliate Fees") are:

  (i) A Development Fee of $9,500,000 for the Phase One Project and 3% of the total construction costs for the 1.41 Acre Parcel;

  (ii) A construction / management administration fee of $1,000,000 for the Phase One Project Built and 1.25% of the total construction costs for the 1.41 Acre Parcel; and

  (iii) A sales administration fee equal to 1½ % of the gross sales price of theUnits built on the Property.

 (d) **PROPERTY** shall mean the real property legally described on Exhibit "A".

2

### (III)  ADDITIONAL KICKER

In addition to repayment of the principal amount set forth above if the Borrower (or any affiliate of said entity), in its sole and absolute discretion, elects and is legally able to construct more that 542 Units on the Phase One Project (currently only 542 are permitted under the existing zoning), then in such event Payee shall be entitled to an "Additional Kicker" which shall be either: (a) ten percent (10%) of the gross sales price of any Units in excess of 542 on the entire Property (both phases), or (b) $75,000 whichever is the lesser of the two, unless the additional Units total less than fifty, in which event the $75,000 ceiling per Unit shall not apply, which fee will be paid as and when the additional units in excess of 542 Units are sold and closed on the Phase One Property. If Borrower (or any affiliate of said entity) resells the Property in an arms length bulk sale to a third-party prior to constructing 542 Units, then in that event, a $2,000,000 Additional Kicker will be due Payee (and not the lesser of 10% of the sales price in excess of 542 Units or $75,000 per Unit over 542 Units as provided above), payable at the close of the sale. The payment terms for any Additional Kicker does not alter the payment terms for repayment of the principal amount of the loan as set forth in I (a) and I (b) above.

### (IV)  ADDITIONAL PROPERTY

Under the phased plan of development the 1.41 Acre Parcel will be constituted as the second phase of this development, the current zoning for this 1.41 acre parcel does not permit anything to be built on it. Borrower in its sole and absolute discretion may develop the same, find a joint venture partner to develop the same or sell the 1.41 Acre Parcel outright to a third party. Borrower retains complete development control over this 1.41 Acre Parcel, subject to governmental restraints, and may as set forth above develop it, sell it, joint venture it, or alternatively use it to develop the 542 condominium units presently contemplated on the Phase One Project if but only if governmental restraints prevent it from being further developed, and Borrower has used good faith efforts to overcome any and all such restraints. If the 1.41 Acre Parcel is developed as a condominium or condominium hotel then the remainder of this Paragraph IV shall not be applicable and Seller shall be entitled to the Additional Kicker as provided for in paragraph III above as Units are sold on the 1.41 Acre Tract which Additional Kicker shall be either 10% of the gross sales price of any Units in excess of 542 on the entire Property (both phases), or $75,000, whichever is the lesser of the two, unless the additional Units total less than 50, in which event the $75,000 ceiling per Unit shall not apply.

Provided however, if the 1.41 Acre Parcel is sold or developed for something other than the sale of Units then and only in such event it is agreed and understood that the Payee shall be akin to a silent limited partner in connection with the development and/or construction of the 1.41 Acre Parcel and shall be entitled as a silent limited partner to 50% of the profits generated from both the operation and/or sale of this 1.41 Acre Parcel.

If Borrower develops the 1.41 Acre Parcel separate from the Phase I Project, then there shall be reasonable and customary development costs including a typical developer fee, management fee, construction management fee, and the like payable to the Borrower and/or its Affiliates and the Payee shall not participate in these development fees. All expenses of every nature including mezzanine financing, kicker fees to the mezzanine lender, construction loan interest, real estate taxes, developmental costs and allocable share of site costs, insurance premiums, joint venture interests payable to third party investors, and the like shall all be accounted for purposes of determining Payee's entitlement to 50% of profits provided the Purchase Price of the land and the Payee's Additional Kicker as provided in paragraph III above will be excluded from said value determination. Payee shall be a "silent partner" with no decision making authority with respect to the development of this parcel.

Notwithstanding the foregoing, if Borrower can legally separate the 1.41 acre parcel from the Phase One Parcel and Borrower elects to sell the 1.41 Acre Parcel to a bona fide independent third party pursuant to a written arm's length offer (which may take the format of a letter of intent), then Payee shall have a ten day right of first refusal to match any offer which Borrower procures and after deducting therefrom the anticipated 50 % of profits that Payee would have otherwise been entitled to as a silent partner in the sale of the 1.41 Acre Parcel to a third party, the remaining 50% interest would be paid by Payee to Borrower on the same terms and conditions as the independent third party offer. No recorded document shall evidence the foregoing, however, disclosure of the provisions of this First Refusal shall be made to all investors, lenders, joint venture partners, and the like.

It is agreed and understood that Borrower shall have complete developmental control as aforedescribed over the 1.41 Acre Parcel, subject to governmental restraints and subject to Payee's first refusal right and right to participate in 50% of profits.

As a silent partner, Payee shall have no obligation for cash calls or to invest cash into the development of this 1.41 Acre Parcel. Any monies which Borrower invests into the project shall be entitled to a preferred return of 10% and shall be paid back on a priority basis before distributions of Payee's 50% interest in profits. If Borrower elects in its discretion to offer outside investors the opportunity to invest, it will extend a similar offer inviting Payee to invest, and said offer shall be for a time period not to exceed 20 days.

## (V) DEFAULT

If any payment is not made in full within thirty (30) days from the Maturity Date as the same may be extended, or if Borrower or any affiliated entity of Borrower commits a default under any

4

provision of this Note or any documents securing this Note, the entire unpaid principal and accrued interest, less any unearned interest and any interest in excess of the maximum allowed by law and any rebates required by law, shall at the option of the holder become immediately due and payable without notice. Failure to exercise the option shall not constitute a waiver of the subsequent right to exercise such option.

Borrower promises and agrees to pay in the event of a default, all costs expenses incurred in the collection of this Note, including reasonable attorney's fees as may be reasonable and just, and also which shall include attorney's fees incurred in appellate proceedings.

### (VI) MISCELLANEOUS

(A)  This Note is payable in United States dollars at the place as the Payee or holder hereof may hereafter designate in writing. All payments shall be applied first to accrued interest then to principal. This Note may be prepaid in whole or in part at any time.

(B)  The provisions of this Note shall be construed and interpreted and all rights and obligations hereunder determined in accordance with Nevada law. All nouns and pronouns contained in this instrument shall mean and include the plural as well as the singular, and the masculine, feminine and neuter gender whenever and wherever the context so admits or requires.

(C)  In no event shall interest (including any charge or fee held to be interest by a court of competent jurisdiction e.g. the "Additional Kicker") accrue to be payable hereon in excess of the highest contract rate allowable by law for the time such indebtedness shall be outstanding and unpaid, and if by reason of acceleration of maturity of such indebtedness, or for any other reason, interest in excess of the highest legal rate shall be due or paid, any such excess shall constitute and be treated as a payment on the principal hereof and shall operate to reduce such principal by the amount of such excess, or if in excess of the principal indebtedness such excess shall be refunded to the maker. Without limiting the generality of the foregoing, and notwithstanding any oral or written agreement, no deposit of funds shall be required in connection with this Note in an amount which will, when deducted from the principal amount outstanding hereunder, cause the rate of interest hereunder to exceed the maximum lawful rate.

### (VII) PLEDGE AGREEMENT

This Note is secured by a pledge from the member of the Borrower of their interest in the Borrower. This Note and any pledge given by said member is subordinate in all respects to the mezzanine loan given to Borrower by Lehman Brothers Holding Inc ("Lehman"). Additionally, it is understood that this Note and repayment of the same is subordinate in all respects to repayment of the Lehman of the Lehman loan. Payee agrees to enter into such Subordination Agreement as Lehman may reasonably request evidencing the same and which will provide in pertinent part that Lehman is to be paid off in total before Payee receives payment of any portion of its loan, that in the event of default, the Payee will "stand still" and not exercise its rights to foreclose on its security until after Lehman first exercises its superior rights and that any and all default notices must be

tendered to Lehman, which will then, at its sole option, have an additional fifteen (15) days to cure the Borrowers default if it elects in its sole discretion.

### (VIII) OPTION

As additional consideration for this Note, the Payee shall have the option to acquire up to four (4) condominium units (which will not include any luxury townhouse units) in the 542 Unit building Borrower constructs on the Property after all loans to institutional lenders including the mezzanine loan to Lehman are discharged. The purchase price under the Land Purchase and Sale Agreement between Borrower and Payee for said four (4) condominium units will be 85% of the lowest sales price offered to the public for similar units in the 542 Unit building. Notwithstanding the foregoing, the option will only be applicable to condominium units which have not been sold to third parties.

### (IX) WAIVER OF JURY TRIAL

LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER EXTENDING CREDIT TO BORROWER. FURTHER, BORROWER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

BORROWER:

BY: THE TOWERS – LV INC.,
A Delaware Corporation

By: _____
Christopher DelGuidice
President

6