# EXHIBIT D

(Subordination Agreement)

## SUBORDINATION AGREEMENT

by and between

## LEHMAN BROTHERS HOLDINGS INC.

as Lender

and

## FLAMINGO VALLEY VIEW, LLC

as Subordinate Lender

Dated as of *December 30,* 2004

{10282830:3}

## SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT (this "**Agreement**"), dated as of _December 30_, 2004, by and between **FLAMINGO VALLEY VIEW, LLC**, a Nevada limited liability company, having an address at 2600 South Town Center Drive, Suite 1002, Las Vegas, Nevada 89135 ("**Subordinate Lender**"), and **LEHMAN BROTHERS HOLDINGS INC.**, doing business as Lehman Capital, a division of Lehman Brothers Holdings Inc., a Delaware corporation, having an office at 399 Park Avenue, 8th Floor, New York, New York 10022 ("**Lender**").

## RECITALS

A.    The Towers-Las Vegas, LLC, a Nevada limited liability company ("**Fee Owner**"), is on the date hereof and simultaneously herewith acquiring fee simple title to that certain 9.0185 acre ± parcel of vacant land located in Las Vegas, Nevada, as more particularly described in Exhibit A attached hereto and made a part hereof (the "**Property**") from Subordinate Lender. In connection therewith, Subordinate Lender has made or is about to make a loan to Borrower in the original principal amount of $27,500,000.00 (the "**Subordinate Loan**"), which Subordinate Loan is evidenced by a certain Promissory Note, dated _December 30_, 2004, made by The Towers-LV, Inc., a Delaware corporation ("**Subordinate Borrower**") to Subordinate Lender in the amount of the Subordinate Loan (the "**Subordinate Note**"), and secured by a Pledge Agreement, dated _December 30_, 2004, made by Christopher Del Guidice, the sole shareholders of Subordinate Borrower (the interests so pledged are referred to herein as the "**Subordinate Pledged Interests**") in favor of Subordinate Lender (the "**Subordinate Pledge**"; the Subordinate Note and the Subordinate Pledge, together with any other instruments and documents set forth on Exhibit B hereto, as any of the foregoing may be modified, amended, extended, supplemented, restated or replaced from time to time, subject to the limitations and agreements contained in this Agreement, are hereinafter referred to as the "**Subordinate Loan Documents**").

B.    Pursuant to the terms, provisions and conditions set forth in that certain Loan Agreement, dated as of _December 30_, 2004, by and among Fee Owner and The Towers-LV, LLC, a Delaware limited liability company (the "**Mezzanine Borrower**"; the Fee Owner and the Mezzanine Borrower are individually and collectively referred to herein as the "**Borrower**") and Lender (the "**Loan Agreement**"), Lender is the owner and holder of a loan to Borrower in the original principal amount of up to $79,450,000.00 (of which $9,450,000.00 will only be advanced by Lender if the Loan is sold and such holder or holders of the Loan requires a minimum pay rate in which case up to $9,450,000.00 will be funded into an interest reserve account to fund such minimum pay rate) with an additional fee of up to $35,000,000.00 plus interest (the "**Loan**"), which Loan is evidenced by that certain Secured Promissory Note, dated _December 30_, 2004, made by Borrower in favor of Lender in the amount of the Loan (the "**Note**"), and secured by, among other things, (i) a Deed of Trust and Security Agreement made by Fee Owner to Lawyers Title of Nevada, Inc., a Nevada corporation, for the benefit of Lender (the "**Mortgage**"), and (ii) a pledge of, and security interest in, (1) all membership interests of (x) Mezzanine Borrower in Fee Owner, (y) The Towers-LV Member, LLC, a Delaware limited liability company ("**Member LLC**"), the sole member of Mezzanine Borrower, in Mezzanine Borrower, (z) Subordinate Borrower, the sole member of Member LLC, in Member LLC (collectively, the "**Pledged Interests**"; Mezzanine Borrower, Member LLC and Subordinate

{10282830:3}

Borrower are sometimes collectively referred to herein as the "**Pledgors**"), and (2) all Collateral (as defined in the Pledge Agreements) associated with such Pledged Interests as evidenced by each of those certain Membership Pledge and Security Agreements dated *December 30*, 2004 made by each of the Pledgors in favor of Lender (collectively, the "**Pledge Agreements**"; the Loan Agreement, the Note, the Mortgage and the Pledge Agreements, together with all documents and instruments set forth on Exhibit C hereto, as any of the foregoing may be modified, amended, extended, supplemented, restated or replaced from time to time, subject to the limitations and agreements contained in this Agreement, are hereinafter referred to as the "**Loan Documents**").

C.    Lender is unwilling to fund the Loan to Borrower unless Subordinate Lender has (i) consented to the making of the Loan, (ii) consented to the encumbrance of the Pledged Interests and the mortgaging of the Property, (iii) consented to the execution, delivery and performance of the Mortgage, the Pledge Agreements and the other Loan Documents, and (iv) entered into this Agreement with Lender so as to provide for the subordination of the Subordinate Loan and the Subordinate Loan Documents to the Loan and the Loan Documents in all respects as provided herein.

**NOW, THEREFORE**, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Subordinate Lender and Lender hereby agree as follows:

Section 1.    Consent to Loan.

Subordinate Lender consents to the making of the Loan, the terms and provisions of the Loan Documents, the encumbrance of the Pledged Interests and the mortgaging of the Property by Fee Owner for the benefit of Lender and agrees that the execution, delivery and performance of the Loan Documents shall not constitute a default (or an event which, with the giving of notice or the lapse of time, or both, would constitute a default) under the terms and provisions of the Subordinate Loan Documents. Subordinate Lender hereby acknowledges and agrees that any conditions precedent to Subordinate Lender's consent to any financing as may be set forth in the Subordinate Loan Documents or any other agreements with Borrower or Subordinate Borrower, as they apply to the Loan Documents or the making of the Loan, have been either satisfied or waived.

Section 2.    Consent to Subordinate Loan.

Subject to the terms and conditions of this Agreement, Lender consents to the making of the Subordinate Loan, the terms and provisions of the Subordinate Loan Documents and the encumbrance of the Subordinate Pledged Interests and agrees that the execution, delivery and performance of the Subordinate Loan Documents shall not constitute a default (or an event which, with the giving of notice or the lapse of time, or both, would constitute a default) under the terms and provisions of the Loan Documents.

Section 3.    Representations and Warranties.

(a)    Subordinate Lender hereby represents and warrants as follows:

(i)      Exhibit B attached hereto and made a part hereof is a true, correct and complete listing of the Subordinate Loan Documents as of the date hereof. To Subordinate Lender's knowledge, there currently exists no default or event which, with the giving of notice or the lapse of time, or both, would constitute a default under any of the Subordinate Loan Documents. True and complete copies of the Subordinate Loan Documents have been delivered to Lender.

(ii)     There are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived.

(iii)    Subordinate Lender (and the undersigned representative of Subordinate Lender) has the full power and authority to execute and deliver this Agreement, and the same constitutes the legal, valid, and binding obligation of Subordinate Lender and is enforceable against Subordinate Lender in accordance with its terms, subject to (x) applicable bankruptcy, reorganization, insolvency and moratorium laws, and (y) general principles of equity which may apply regardless of whether a proceeding is brought in law or in equity.

(iv)     The Subordinate Loan is not cross-defaulted with the Loan nor with any other loan. The Property does not secure any other loan from Subordinate Lender to Borrower, Subordinate Borrower or any other individual or entity, directly or indirectly, through one or more intermediaries, controlling, controlled by or under common control with Borrower or Subordinate Borrower.

(b)      Lender hereby represents and warrants as follows:

(i)      Exhibit C attached hereto and made a part hereof is a true, correct and complete listing of all of the Loan Documents as of the date hereof. To Lender's knowledge, there currently exists no default or event which, with the giving of notice or the lapse of time, or both, would constitute a default under any of the Loan Documents. True and complete copies of the Loan Documents have been delivered to Subordinate Lender.

(ii)     There are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived.

(iii)    Lender (and the undersigned representative of Lender) has the full power and authority to execute and deliver this Agreement, and the same constitutes the legal, valid, and binding obligation of Lender and is enforceable against Lender in accordance with its terms, subject to (x) applicable bankruptcy, reorganization, insolvency and moratorium laws, and (y) general principles of equity which may apply regardless of whether a proceeding is brought in law or in equity.

(iv)     The Loan is not cross-defaulted with any loan.

Section 4.      Transfer of Loan or Subordinate Loan.

(a)      Lender may, from time to time, in its sole discretion (without consent by, or notice to, Subordinate Lender) pledge, assign, hypothecate, issue a participation interest in,

{10282830;3}                                    3

grant a security interest in, transfer, convey or sell the Loan Documents or all or any portion of the legal and/or beneficial interests in the Loan.

(b)     Subordinate Lender shall not directly or indirectly, encumber, grant a security interest in, issue a participation interest in, pledge, assign, hypothecate, transfer, convey or sell the Subordinate Loan Documents or any interest in the Subordinate Loan.

Section 5.     Default Under Subordinate Loan Documents.

For as long as the Loan remains outstanding, Subordinate Lender shall forbear from exercising any of its rights and remedies under the Subordinate Note, the Subordinate Pledge and/or any of the other Subordinate Loan Documents, including, without limitation, accelerating the Subordinate Loan or commencing a foreclosure of the Subordinate Pledge. Subordinate Lender agrees and acknowledges that the Subordinate Loan Documents and Subordinate Lender's rights and remedies thereunder are in all respects subject and subordinate to the Loan Documents and Lender's rights and remedies thereunder.

Section 6.     Default Under Loan Documents.

In the event of a default under any of the Loan Documents, Lender shall have the absolute right, without Subordinate Lender's consent, or approval, to pursue any and all of its remedies and rights under the Loan Documents in any manner and in any order, including, without limitation, the right to (i) accelerate the Loan, (ii) commence an action against any guarantor under the Loan, (iii) foreclose the Mortgage, (iv) accept a deed in lieu of foreclose, (v) foreclose the Pledge Agreements, (vi) succeed to or designate a successor to the Pledged Interests of Borrower, whether by foreclosure, assignment in lieu of foreclosure, or otherwise, (vii) succeed to or designate a successor to take title to the Property, whether by foreclosure, assignment in lieu of foreclosure, or otherwise, and (viii) advance additional funds to complete the construction project as contemplated by the Loan Documents or advance additional funds in the case of a work-out or restructuring of the Loan (the "**Additional Advances**"). No failure by Lender to exercise and no delay in exercising any such right, power or privilege shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or privilege preclude any other or future exercise thereof or the exercise of any other right, power or privilege, including the right of Lender to enforce the Mortgage and/or the Pledge Agreements. Nothing contained herein shall limit or restrict the right of Lender to exercise its rights and remedies, in law or in equity, or otherwise, to realize upon any collateral, including, without limitation, the Property and the Pledged Interests.

Section 7.     Amendments to Loan Documents.

(a)     Subordinate Lender shall not without the prior written consent of Lender, which consent may be given or denied in Lender's sole and absolute discretion, enter into any amendment, deferral, extension, modification, increase, renewal, replacement, consolidation, supplement or waiver (collectively, a "**Subordinate Loan Modification**") of the Subordinate Loan or the Subordinate Loan Documents.

(b)     Subject to compliance with Section 7(a) above, Subordinate Lender shall deliver to Lender copies of any and all Subordinate Loan Modifications (including, without limitation, any side letters, waivers or consents entered into, executed or delivered by

Subordinate Lender) within a reasonable time after any of such applicable instruments have been executed by Subordinate Lender. No such instrument shall be binding upon Lender unless and until Lender receives an executed copy of same.

(c)    Lender shall have the right without the consent of Subordinate Lender in each instance to enter into any amendment, deferral, extension, modification, increase, renewal, replacement, consolidation, supplement or waiver (collectively, a "**Loan Modification**") of the Loan or the Loan Documents. In addition, Lender may make any Protective Advances. "Protective Advances" means all sums advanced by the Lender for the purpose of payment of real estate taxes (including special payments in lieu of real estate taxes), maintenance costs, insurance premiums, discharge of liens, payment of ground rent and rent under proprietary leases; other items (including capital items) reasonably necessary to protect the Property from forfeiture, casualty, loss or waste; completing construction of the improvements on the Property or altering such improvements to the Property, and reasonable enforcement costs actually incurred, including reasonable legal fees and expenses, following the declaration of a default under the Loan Documents.

(d)    Lender shall deliver to Subordinate Lender copies of any and all modifications, amendments, extensions, consolidations, spreaders, restatements, alterations, changes or revisions to anyone or more of the Loan Documents (other than any waivers or consents entered into, executed or delivered by Lender) within a reasonable time after any of such applicable instruments have been executed by Lender. No such applicable instruments shall be binding upon Subordinate Lender unless and until an executed copy thereof is delivered to Subordinate Lender.

Section 8.    Subordination  of  Subordinate  Loan  and  Subordinate  Loan Documents.

(a)    Subordinate Lender hereby subordinates and makes junior the Subordinate Loan, the Subordinate Loan Documents and the liens and security interests created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Loan, including, without limitation, any Protective Advances and Additional Advances and interest accruals thereon and any compounding thereof, (ii) the liens and security interests created by the Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Loan Documents, and no amendments or modifications to the Loan Documents made in accordance with Section 7(c) above or waivers of any provisions of the Loan Documents shall affect the subordination thereof as set forth in this Section 8(a).

(b)    Subordinate Lender acknowledges and agrees that notwithstanding anything to the contrary contained in (i) that certain Land Purchase and Sale Agreement, dated February 5, 2003, by and between Paul Dino Bertuccini, Trustee, as Seller, and Del American, Inc., as Purchaser, as amended by that certain First Amendment to Land Purchase Agreement, dated as of May 1, 2004, by and between Paul Dino Bertuccini, Manager of Flamingo Valley View, LLC, as Seller, and Del American, Inc., as Purchaser, as further amended by that certain Second Amendment to Land Purchase and Sale Agreement, dated June 28, 2004, by and between Subordinate Lender, as Seller, and Del American, Inc., as Purchaser (collectively, the "**Purchase Agreement**"), or (ii) the Subordinate Note, the Subordinate Pledge or any other Subordinate Loan Agreement, in the event Lender or its successor, assign or designee or any other purchaser

at a mortgage foreclosure sale or a UCC sale (each a "**Successor Party**") obtains title to the Property or the Pledged Interests, as the case may be, (1) Subordinate Lender shall have no rights with respect to, or recourse against, the Property or any portion thereof, including without limitation, any right of first refusal as set forth in Section IV of the Subordinate Note or any other right of first refusal as may be set forth in any Subordinate Loan Document or otherwise, or any option to purchase condominium units as set forth in Section VIII of the Subordinate Note or any other option with respect to the Property, any portion thereof, or any condominium unit to be constructed on any portion of the Property, as may be set forth in any Subordinate Loan Document or otherwise, and (2) Subordinate Lender shall have no recourse against any Successor Party or Lender or Lender's successors and/or assigns or the Property, and Successor Party and Lender and Lender's successors and assigns shall not be liable for, any sums due Subordinate Lender, including, without limitation, the sums due under the Subordinate Note, the "Additional Kicker" (as defined in the Subordinate Note), any profit generated from the Property whether through sale, development or otherwise, or any other sums, fees, interests or penalties due Subordinate Lender. The terms and conditions of the Purchase Agreement, the Subordinate Note, the Subordinate Pledge Agreement and the other Subordinate Loan Agreements shall not apply to any Successor Party and shall be null and void with respect to the Property and any Successor Party.

(c)     Notwithstanding anything to the contrary contained in the Purchase Agreement, the Subordinate Note or any other Subordinate Loan Document, any right of first refusal or option to purchase held by Subordinate Lender is hereby waived and released against Lender, its successor and/or assigns.

Section 9.     Payments on Subordinate Loan Indebtedness.

All of Subordinate Lender's rights to payment of the Subordinate Loan and the obligations evidenced by the Subordinate Loan Documents are hereby subordinated to all of Lender's rights to payment by Borrower of the Loan, including, without limitation, any Protective Advances and Additional Advances, and the obligations secured by the Loan Documents, and Subordinate Lender shall not accept or receive payments (including, without limitation, whether in cash or other property and whether received directly, indirectly or by set-off, counterclaim or otherwise) from Borrower or Subordinate Borrower and/or from the Property prior to the date that all of the obligations of Borrower to Lender under the Loan Documents are paid. Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Lender before Subordinate Lender is entitled to receive any payment on account of the Subordinate Loan. All payments or distributions upon or with respect to the Subordinate Loan which are received by Subordinate Lender contrary to the provisions of this Agreement shall be received and held in trust by the Subordinate Lender for the benefit of Lender and shall be paid over to Lender in the same form as so received (with any necessary endorsement) to be applied (in the case of cash) to, or held as collateral (in the case of non-cash property or securities) for, the payment or performance of the Loan in accordance with the terms of the Loan Documents.

Section 10.     Insurance and Condemnation Proceeds.

In the event of a casualty to the buildings or improvements, if any, constructed on *any portion of the Property* or a condemnation or taking under a power of eminent domain of all

or any portion of the Property, Lender shall have a first and prior interest in and to any payments, awards, proceeds, distributions, or consideration arising from any such event.

Section 11.    Bankruptcy of Borrower.

(a)    Each of Lender and Subordinate Lender hereby waives any requirement for marshaling of assets thereby in connection with any foreclosure of any security interest or any other realization upon collateral in respect of the Loan Documents or the Subordinate Loan Documents, as applicable, or any exercise of any rights of set-off or otherwise. Each of Lender and Subordinate Lender assumes all responsibility for keeping itself informed as to the condition (financial or otherwise) of Borrower, Mezzanine Borrower, the Subordinate Borrower, the condition of the Property and all other collateral and other circumstances and neither Lender nor Subordinate Lender shall have any duty whatsoever to obtain, advise or deliver information or documents to the other relative to such condition, business, assets and/or operations. Subordinate Lender agrees that Lender owes no fiduciary duty to Subordinate Lender in connection with the administration of the Loan and the Loan Documents and Subordinate Lender agrees not to assert any such claim. Lender agrees that Subordinate Lender owes no fiduciary duty to Lender in connection with the administration of the Subordinate Loan and the Subordinate Loan Documents and Lender agrees not to assert any such claim.

(b)    No payment or distribution to Lender pursuant to the provisions of this Agreement shall entitle Subordinate Lender to exercise any right of subrogation in respect thereof prior to the payment in full of the Subordinate Loan, and Subordinate Lender agrees that, except with respect to the enforcement of its remedies under the Loan Documents permitted hereunder, prior to the full satisfaction of the Loan it shall not acquire, by subrogation or otherwise, any lien, estate, right or other interest in any portion of the Property or any other collateral now securing the Loan or the proceeds therefrom that is or may be prior to, or of equal priority to, any of the Loan Documents or the liens, rights, estates and interests created thereby.

(c)    The provisions of this Agreement shall be applicable both before and after the commencement, whether voluntary or involuntary, of any case, proceeding or other action against Borrower or any member of Borrower under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization or relief of debtors (a "**Proceeding**"). For as long as the Loan shall remain outstanding, Subordinate Lender shall not, and shall not solicit any person or entity to, and shall not direct Subordinate Borrower to direct or cause either Borrower or any entity which controls Borrower (the "**Borrower Group**") to: (i) commence any Proceeding; (ii) institute proceedings to have Borrower or any member of Borrower adjudicated a bankrupt or insolvent; (iii) consent to, or acquiesce in, the institution of bankruptcy or insolvency proceedings against Borrower or any member of Borrower; (iv) file a petition or consent to the filing of a petition seeking reorganization, arrangement, adjustment, winding-up, dissolution, composition, liquidation or other relief by or on behalf of Borrower or any member of Borrower; (v) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for Borrower or any member of Borrower, the Property (or any portion thereof) or any other collateral securing the Loan (or any portion thereof); (vi) make an assignment for the benefit of any creditor of Borrower or any member of Borrower; (vii) seek to consolidate the Property or any other assets of Borrower with the assets of Subordinate Borrower or any member of the Borrower Group in any proceeding

relating to bankruptcy, insolvency, reorganization or relief of debtors; or (viii) take any action in furtherance of any of the foregoing.

(d)    If Subordinate Lender is deemed to be a creditor of Borrower in any Proceeding (i) Subordinate Lender hereby agrees that it shall not make any election, give any consent, commence any action or file any motion, claim, obligation, notice or application or take any other action in any Proceeding by or against Borrower without the prior consent of Lender, (ii) Lender may vote in any such Proceeding any and all claims of Subordinate Lender, and Subordinate Lender hereby appoints the Lender as its agent, and grants to Lender an irrevocable power of attorney coupled with an interest, and its proxy, for the purpose of exercising any and all rights and taking any and all actions available to the Subordinate Lender in connection with any case by or against the Borrower or any member of the Borrower in any Proceeding, including without limitation, the right to file and/or prosecute any claims, to vote to accept or reject a plan, to make any election under Section 1111(B) of the Bankruptcy Code, and (iii) Subordinate Lender shall not challenge the validity or amount of any claim submitted in such Proceeding by Lender in good faith or any valuations of the Property or other Loan collateral submitted by Lender in good faith, in such Proceeding or take any other action in such Proceeding, which is adverse to Lender's enforcement of its claim or receipt of adequate protection (as that term is defined in the Bankruptcy Code).

(e)    To the extent any payment under the Loan Documents (whether by or on behalf of Borrower, as proceeds of security or enforcement of any right of set-off or otherwise) is for any reason repaid or returned to Borrower or its insolvent estate, or avoided, set aside or required to be paid to Borrower, a trustee, receiver or other similar party under any bankruptcy, insolvency, receivership or similar law, then the Loan or part thereof originally intended to be satisfied shall be deemed to be reinstated and outstanding to the extent of any repayment, return, or other action as if such payment had not occurred.

Section 12.    Notices.

All notices, demands, requests, consents, approvals or other communications required, permitted, or desired to be given hereunder shall be in writing and shall be hand delivered or sent by Federal Express or other reputable courier service or by registered or certified mail, return receipt requested, and shall be deemed given (i) when received at the following addresses if hand delivered or sent by Federal Express, or other reputable courier service, and (ii) three (3) business days after being postmarked and addressed as follows if sent by registered or certified mail, return receipt requested, in each case addressed to the parties as follows:

To Lender:

Lehman Brothers Holdings Inc.
399 Park Avenue
New York, New York 10022
Attn: Mr. David Ridini
MTS# VH21/Asset #1107301

With a copy to:

Lehman Brothers Holdings Inc.
399 Park Avenue, 8th Floor
New York, New York 10022

|                        |                                                          |
|------------------------|----------------------------------------------------------|
|                        | Attn: David Broderick, Esq.                              |
|                        | MTS# VH21/Asset #1107301                                 |
| And with a copy to:    | Windels Marx Lane & Mittendorf, LLP                      |
|                        | 156 West 56th Street                                     |
|                        | New York, New York 10019                                 |
|                        | Attn: James J. Thomas, Esq.                              |
| And with a copy to:    | Trimont Real Estate Advisors, Inc.                       |
|                        | Monarch Tower                                            |
|                        | 3424 Peachtree Road, N.E.                                |
|                        | Suite 2200                                               |
|                        | Atlanta, Georgia 30326                                   |
|                        | Attn: Mr. J. Gregory Winchester                          |
|                        | MTS# VH21/Asset #1107301                                 |
| To Subordinate Lender: | Flamingo Valley View, LLC                                |
|                        | 2600 South Town Center Drive                             |
|                        | Suite 1002                                               |
|                        | Las Vegas, Nevada 89135                                  |
|                        | Attn: Mr. Paul Dino Bertuccini                           |
| With a copy to:        | Albright, Stoddard, Warnick & Palmer                     |
|                        | Quail Park, Suite D-4                                    |
|                        | 801 S. Rancho Drive                                      |
|                        | Las Vegas, Nevada 89106                                  |
|                        | Attn: William H. Stoddard, Esq.                          |
| With a copy to:        | William Underhill                                        |
|                        | 2555 Montessouri Street                                  |
|                        | Suite D                                                  |
|                        | Las Vegas, Nevada 89171                                  |

Section 13.   Estoppel.

Each of Lender and Subordinate Lender shall furnish to the other, within ten (10) days following a request, with a written statement setting forth the then current outstanding principal balance, the aggregate accrued and unpaid interest, and stating whether any default has occurred under the applicable loan.

Section 14.   Further Assurances.

So long as all or any portion of the Loan and the Subordinate Loan remains unpaid, Lender and Subordinate Lender will each execute, acknowledge and deliver in recordable form and upon demand of the other, any other instruments or agreements reasonably required in order to carry out the provisions of this Agreement or to effectuate the intent and purposes hereof.

Section 15.    No Third Party Beneficiaries; No Modification.

The parties hereto do not intend the benefits of this Agreement to inure to Borrower, Subordinate Borrower or any other party, except for the successors and assigns of Lender. This Agreement may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change is sought.

Section 16.    Successors and Assigns.

This Agreement shall bind all successors and permitted assigns of Subordinate Lender and Lender and shall inure to the benefit of all successors and permitted assigns of Lender and Subordinate Lender.

Section 17.    Counterpart Originals.

This Agreement may be executed in counterpart originals, each of which shall constitute an original, and all of which together shall constitute one and the same agreement.

Section 18.    Legal Construction.

In all respects, including, without limitation, matters of construction and performance of this Agreement and the obligations arising hereunder, this Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York applicable to agreements intended to be wholly performed within the State of New York.

Section 19.    No Joint Venture.

Nothing provided herein is intended to create a joint venture, partnership, tenancy-in-common or joint tenancy relationship between or among any of the parties hereto.

Section 20.    Captions.

The captions in this Agreement are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be a part hereof.

Section 21.    Conflicts.

In the event of any conflict, ambiguity or inconsistency between the terms and conditions of this Agreement and the terms and conditions of any of the Loan Documents or the Subordinate Loan Documents, the terms and conditions of this Agreement shall control.

Section 22.    Continuing Agreement.

This Agreement is a continuing agreement and shall survive the repayment in full of the Loan.

Section 23.    Severability.

In the event that any provision of this Agreement or the application hereof to any party hereto shall, to any extent, be invalid or unenforceable under any applicable statute,

regulation, or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform to such statute, regulation or rule of law, and the remainder of this Agreement and the application of any such invalid or unenforceable provisions to parties, jurisdictions or circumstances other than to whom or to which it is held invalid or unenforceable, shall not be affected thereby nor shall same affect the validity or enforceability of any other provision of this Agreement.

Section 24.    Expenses.

To the extent not paid by Borrower or out of or from any collateral securing the Loan which is realized by Lender, Subordinate Lender agrees upon demand to pay to Lender the amount of any and all reasonable expenses, including, without limitation, the reasonable fees and expenses of its counsel and of any experts or agents, which Lender may incur in connection with the (i) exercise or enforcement of any of the rights of Lender against Subordinate Lender hereunder or (ii) failure by Subordinate Lender to perform or observe any of the provisions hereof; provided, however, that if Lender does not prevail in its exercise or enforcement of such rights, then Subordinate Lender shall have no obligation to pay such expenses.

Section 25.    Mutual Disclaimer.

Each of Lender and Subordinate Lender are sophisticated lenders and/or investors in real estate and their respective decision to enter into the Loan and the Subordinate Loan is based upon their own independent expert evaluation of the terms, covenants, conditions and provisions of, respectively, the Loan Documents and the Subordinate Loan Documents and such other matters, materials and market conditions and criteria which each of Lender and Subordinate Lender deem relevant. Each of Lender and Subordinate Lender has not relied in entering into this Agreement, and respectively, the Loan, the Loan Documents, the Subordinate Loan or the Subordinate Loan Documents, upon any oral or written information, representation, warranty or covenant from the other, or any of the other's representatives, employees, Affiliates or agents other than the representations and warranties of the other contained herein. Each of Lender and Subordinate Lender further acknowledges that no employee, agent or representative of the other has been authorized to make, and that each of Lender and Subordinate Lender have not relied upon, any statements, representations, warranties or covenants other than those specifically contained in this Agreement. Without limiting the foregoing, each of Lender and Subordinate Lender acknowledges that the other has made no representations or warranties as to the Loan or the Subordinate Loan or the Property (including, without limitation, the cash flow of the Property, the value, marketability, condition or future performance thereof, the existence, status, adequacy or sufficiency of the leases, the tenancies or occupancies of the Property, or the sufficiency of the cash flow of the Property, to pay all amounts which may become due from time to time pursuant to the Loan or the Subordinate Loan).

Section 26.    Tri-Party Agreement.

Subordinate Lender acknowledges that Fee Owner intends to obtain a construction loan from a construction lender to develop the Property and that upon the closing of such construction loan, Lender may either release the Mortgage or subordinate the Mortgage to the deed of trust and security agreement and other loan documents held by construction lender. Subordinate Lender agrees to enter into a Tri-Party Agreement on the closing date of the

construction loan with Lender and construction lender which will confirm the subordination of Subordinate Lender's rights to the payment of the Subordinate Loan and the obligations evidenced by the Subordinate Loan Documents to (1) the Loan and the Loan Documents and (2) the construction loan and the construction loan documents, and will contain other terms and conditions substantially similar to those contained herein, including without limitation, Section 8 hereof, benefiting both Lender and construction lender and otherwise will be on terms and conditions satisfactory to Lender and construction lender (the **Tri-Party Agreement**"). Subordinate Lender, within ten days after demand but in no event later than the date of the construction loan closing, shall execute and deliver to Lender the Tri-Party Agreement and Subordinate Lender hereby authorizes and grants to Lender an irrevocable power of attorney coupled with an interest to execute in the name of Subordinate Lender or without the signature of Subordinate Lender to the extent Lender may lawfully do so, the Tri-Party Agreement.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, Lender and Subordinate Lender have executed this Agreement as of the date and year first set forth above.

SUBORDINATE LENDER:

**FLAMINGO VALLEY VIEW, LLC,**
a Nevada limited liability company

By
    Name: Paul Dino Bertuccini
    Title:  Manager

LENDER:

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation

By:_____
    Name:
    Title: Authorized Signatory

{10282830:3}

**IN WITNESS WHEREOF**, Lender and Subordinate Lender have executed this Agreement as of the date and year first set forth above.

SUBORDINATE LENDER:

**FLAMINGO VALLEY VIEW, LLC,**
a Nevada limited liability company

By _____
     Name: Paul Dino Bertuccini
     Title:  Manager

LENDER:

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation

By: _____
     Name: Chris McKenna
     Title: Authorized Signatory

## EXHIBIT A

[Legal Description of Property]

File No.: **02103684**

**EXHIBIT "A"**

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

A portion of land lying within the Northeast Quarter (NE ¼) of the Northeast Quarter (NE ¼) of Section 19, Township 21 South, Range 61 East, M.D.M., Clark County, Nevada, more particularily described as follows:

Commencing at the Section corner common to Sections 17, 18, 19 and 20 in said Township 21 South, Range 61 East, M.D.M., also being on the centerline of Valley View Boulevard;
Thence South 01°29'27" East, along said Section line and the centerline of Valley View Boulevard, a distance of 94.35 feet;
Thence South 88°30'33" West, a distance of 50.00 feet to the West right-of-way line of Valley View Boulevard and the **Point of Beginning**;
Thence South 01°29'27" East, along said West right-of-way line, a distance of 566.56 feet to the North right-of-way line of Nevso Drive;
Thence the next three courses along said North right-of-way line: South 89°25'32" West, a distance of 425.89 feet;
Thence North 84°00'55" West, a distance of 201.31 feet;
Thence North 00°34'28" West, a distance of 7.00 feet to the beginning of a non-tangent curve, concave Northeasterly, having a radius of 15.00 feet and a central angle of 89°14'49" and having at said point a radial line which bears South 00°34'28" East;
Thence Northwesterly along the arc of said curve to the right, a distance of 23.36 feet, to a point of tangency, also the East right-of-way line of Hugh Heffner Drive;
Thence North 01°19'39" West, along said East right-of-way line, a distance of 530.45 feet
Thence North 01°32'06" East, a distance of 20.16 feet to the beginning of a non-tangent curve, concave Southeasterly, having a radius of 24.00 feet and a central angle of 91°28'46" and having at said point a radial line which bears South 89°12'51" West;
Thence Northeasterly along the arc of said curve to the right, a distance of 38.32 feet, to a point of tangency, also the South right-of-way line of Flamingo Road;
Thence North 89°25'20" East, along said South right-of-way line, a distance of 559.53 feet to the beginning of a curve, concave Southwesterly, having a radius of 54.00 feet and a central angle of 89°05'13";
Thence Southeasterly along the arc of said curve to the right, a distance of 83.96 feet, to the **Point of Beginning**.

ALTA Owner's Policy (10-17-92)

File No.: **02103684**

## EXHIBIT "A" Continued

More commonly known as 3821 West Flamingo Road, Las Vegas, Nevada 89103

Assessors Parcel No.: 162-19-502-002

Assessor's Parcel Number:  **162-19-502-002**

ALTA Owner's Policy (10-17-92)

## **EXHIBIT B**

<u>Subordinate Loan Documents</u>

1.    Promissory Note in the amount of $27,500,000.00 dated as of December 30, 2004 by Subordinate Borrower to the order of Subordinate Lender.

2.    Pledge Agreement by Subordinate Borrower to Subordinate Lender dated as of December 30, 2004.

## EXHIBIT C

### Loan Documents

1.  Secured Promissory Note in the principal amount of up to $79,450.000.00 made by Borrower in favor of Lehman Brothers Holdings Inc. ("Lender");

2.  Deed of Trust by Fee Owner to Lawyers Title of Nevada, Inc. for the use and benefit of Lender;

3.  Assignment of Leases and Rents made by Fee Owner to Lender;

4.  Loan Agreement between Borrower and Lender;

5.  Membership Pledge and Security Agreement (The Towers-LV, LLC's interests in The Towers-Las Vegas, LLC) together with its respective Control Agreement;

6.  Membership Pledge and Security Agreement (The Towers-LV Member, LLC's interest in The Towers-LV, LLC) together with its respective Control Agreement;

7.  Membership Pledge and Security Agreement (The Towers-LV, Inc.'s interest in The Towers-LV Member, LLC) together with its respective Control Agreement

8.  UCC-1 Financing Statement by Fee Owner, as Debtor, and Lehman Brothers Holdings Inc., as Secured Party, filed with the Clark County Clerk, Nevada;

9.  UCC-1 Financing Statement by Fee Owner, as Debtor, and Lehman Brothers Holdings Inc., as Secured Party, filed with the Secretary of State, Nevada;

10. UCC-1 Financing Statement by Mezzanine Borrower, as Debtor, and Lehman Brothers Holdings Inc., as Secured Party, filed with the Secretary of State, Delaware;

11. UCC-1 Financing Statement by The Towers-LV Member, LLC, as Debtor, and Lehman Brothers Holdings Inc., as Secured Party, filed with the Secretary of State, Delaware;

12. UCC-1 Financing Statement by Subordinate Borrower, as Debtor, and Lehman Brothers Holdings Inc., as Secured Party, filed with the Secretary of State, Delaware ;

13. Guaranty by Christopher DelGuidice;

14. Environmental Indemnity Agreement by Borrower and Principal, in favor of Lender;

15. Assignment of Permits, Agreements, Licenses, Franchises and Authorizations by Borrower in favor of Lender;