Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Chapter 11 Case No. 08-13555 (JMP)

4    Case No. 08-01420 (JMP)(SIPA)

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7    LEHMAN BROTHERS HOLDINGS, INC., ET AL.,

8            Debtors.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   In the Matter of:

11   LEHMAN BROTHERS INC.,

12           Debtor.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14                    U.S. Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    April 24, 2013

19                    10:02 AM

20

21   B E F O R E :

22   HON JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1    Hearing re:  Plan Administrator's Motion for Order in Aid of

2    Execution of the Modified Third Amended Chapter 11 Plan of

3    LB Rose Ranch LLC [ECF No. 36423]

4

5    Hearing re:  Motion for Approval of Settlement Agreement

6    with Lehman Brothers Finance AG (in Liquidation) [ECF No.

7    36300]

8

9    Hearing re:  Motion for an Order Pursuant to Section 105(a)

10   of the Bankruptcy Code and Bankruptcy Rule 9019, Authorizing

11   and Approving the Settlement Between LBF and the LBHI

12   Parties [ECF No. 51]

13

14   Hearing re:  Trustee's Twenty-Ninth Omnibus Objection to

15   General Creditor Claims (No Liability Claims) [LBI ECF No.

16   5776]

17

18   Hearing re:  Trustee's Thirty-Third Omnibus Objection to

19   General Creditor Claims (No Liability Claims) [LBI ECF No.

20   5835]

21

22   Hearing re:  Motion of Fidelity National Title Insurance

23   Company to Compel Compliance with Requirements of Title

24   Insurance Policies [ECF No. 11513]

25

Page 3

1    Hearing re:  Lehman Brothers Holdings Inc., et al. v.

2    JPMorgan Chase Bank, N.A., et al. [Case No. 10-03266] -

3    Motion for an Order Authorizing the Public Filing of an

4    Unredacted Reply.

5

6    Hearing re:  Motion of FirstBank Puerto Rico for (1)

7    Reconsideration, Pursuant to Section 502(j) of the

8    Bankruptcy Code and Bankruptcy Rule 9024, of the SIPA

9    Trustee's Denial of FirstBank's Customer Claim, and (2)

10   Limited Intervention, Pursuant to Bankruptcy Rule 7024 and

11   Local Bankruptcy Rule 9014-1, in the Contested Matter

12   Concerning the Trustee's Determination of Certain Claims of

13   Lehman Brothers Holding Inc. and Certain of its Affiliates

14   [LBI ECF No. 5197]

15

16   Hearing re:  Motion Pursuant to Federal Rule of Bankruptcy

17   Procedure 9019 for Entry of an Order Approving Settlement

18   Agreement [LBI ECF No. 5483]

19

20   Hearing re:  Trustee's Twenty-Eighth Omnibus Objection to

21   General Creditor Claims (Late-Filed Claims)[LBI ECF No.

22   5775]

23

24   Hearing re:  Trustee's Thirty-Seventh Omnibus Objection to

25   General Creditor Claims (No Liability Claims)[LBI ECF No.

1   5863]

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Jamie Gallagher

```
 1    A P P E A R A N C E S :

 2    WEIL, GOTSHAL & MANGES LLP

 3         Attorney for the Debtors

 4         767 Fifth Avenue

 5         New York, NY 10153

 6

 7    BY:  ZAW WIN, ESQ.

 8

 9    WEIL, GOTSHAL & MANGES LLP

10         Attorney for the Debtors

11         700 Louisiana

12         Suite 1800

13         Houston, TX 77002

14

15    BY:  ALFREDO R. PEREZ, ESQ.

16

17    HUGHES HUBBARD & REED LLP

18         Attorneys for SIPA Trustee

19         One Battery Park Plaza

20         New York, NY 10004

21

22    BY:  JEFFREY S. MARGOLIN, ESQ.

23         MEAGHAN C. GRAGG, ESQ.

24

25
```

Page 6

1    CHAPMAN AND CUTLER, LLP

2         Attorney for U.S. Bank, NA

3         111 West Monroe Street

4         Chicago, IL 60603

5

6    BY:  FRANKLIN H. TOP, III, ESQ.

7

8    GIBSON, DUNN & CRUTCHER, LLP

9         Attorney for Lehman Brothers Finance

10        200 Park Avenue

11        New York, NY 10166

12

13   BY:  MICHAEL A. ROSENTHAL, ESQ.

14

15   GIBSON, DUNN & CRUTCHER, LLP

16        Attorney for Lehman Brothers Finance

17        2100 McKinney Avenue

18        Dallas, TX 75201

19

20   BY:  ROBERT B. KRAKOW, ESQ.

21

22

23

24

25

**Page 7**

1   UNITED STATES DEPARTMENT OF JUSTICE

2        Assistant United States Attorney

3        U.S. Attorney's Office

4        86 Chambers Street

5        3rd Floor

6        New York, NY 10007

7

8   BY:  JOSEPH N. CORDARO, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 8

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Be seated, please.  We're in a strange

 3     place today.   My courtroom is being renovated,

 4     notwithstanding the sequester.

 5            MR. WIN:  Good morning, Your Honor.  Zaw Win, Weil

 6     Gotshal & Manges for Lehman Brothers Holdings, Inc.

 7            THE COURT:  Good morning.

 8            MR. WIN:  The first item on today's agenda is the

 9     plan administrator's motion for an order in aid of execution

10     of the plan of LB Rose Ranch, LLC.  It's at ECF Number

11     36423.  In support of this motion, the plan administrator

12     also filed the declaration of Jeffrey Fitts, which is at ECF

13     Number 36561.

14            The objection deadline for this motion was

15     April 17, 2013, and no objections were filed.  However,

16     counsel for the Colorado plaintiffs has reached out to us on

17     an informal basis to request that certain language be added

18     to the order to make it clear that nothing in this order

19     affects the stipulation that was previously entered into

20     amongst certain of the debtors and the Colorado plaintiffs.

21            Since that wasn't the intent of the order, the

22     debtors didn't have an issue with adding the language.  I

23     have a black line of the order if Your Honor would like to

24     take a look?

25            THE COURT:  Sure, I'll take a look at it.
```

Page 9

1              MR. WIN:  May I approach?

2              THE COURT:  Yes.  We're going to have to do a

3     double hand up.  Thank you.

4              I have a -- just a question about notice on this.

5     If I understand what is going on in this uncontested matter

6     seeking an order in aid of implementation of the plan, there

7     are certain deed restrictions in reference to affordable

8     housing relating to an agreement between the developer and

9     the local county in reference to assuring that affordable

10    housing units would be always part of this project.

11             Do I understand that correctly?

12             MR. WIN:  That's correct.

13             THE COURT:  I just want to understand if notice

14    was given to county officials and others in a position to

15    enforce those restrictions from a public policy perspective.

16             MR. WIN:  Your Honor, notice of the motion was

17    served on the county, and I also understand that certain

18    representatives of the debtors have also reached out to the

19    county following the filing of the motion on an informal

20    basis, just to discuss the plan with the county.

21             And I understand from them that the county is

22    generally supportive of the relief that we're seeking in

23    this motion.

24             THE COURT:  That's fine.  That's very reassuring.

25    It's unopposed and approved.

Page 10

1          MR. WIN:  Thank you, Your Honor.

2          My colleague, Alfredo Perez will handle the next

3    matter on the agenda.

4          MR. PEREZ:  Good morning, Your Honor.  It's been a

5    long time since I've been here, but I'm happy to be here

6    today settling I think one of the very last affiliate claims

7    involving LBF.  We had been here obviously before in

8    connection with the estimation hearing.

9          Your Honor, this has been really a long time in

10   coming.  Although the general economic parameters have been

11   in place for a couple of years, it's really been the

12   details, how to meld the two systems, how to effectuate the

13   settlement that has been at the core of the parties'

14   disputes, if you will.  And we've spent a lot of time, and

15   frankly for the last year almost meeting on an every other

16   month basis to try to resolve this issue.

17         Had -- if we had to litigate this, I think it

18   would raise issues of first impression in Switzerland as

19   well as very detailed fact-oriented issues regarding the

20   corporate (indiscernible - 00:03:53) claims.  At its

21   economic heart, Your Honor, the settlement is really very

22   simple, and it has three components.

23         First, we reduce our claim in the -- in the Swiss

24   proceeding and allow a priority distribution to the third

25   party creditors of up to 1.275 billion or 50 percent of

Page 11

1    their claims.  And in return for that, we get the assignment

2    of the affiliate claims, other than LBIE, but for the most

3    part all of the affiliate claims.  And the 14 -- initially

4    50 something, subsequently $14 billion claim goes away in

5    this case with the exception of the $942 million claim that

6    they have on account of the securities that they own.

7           Your Honor, we think that this is a tremendous

8    outcome for the estate, and we believe it's -- based on all

9    of the litigation, I think we'd say -- it's a win, win

10   overall.  It is conditioned on several things happening and

11   we're involved in the process, we're moving along.  This was

12   obviously one component of that, but we're not there yet,

13   but hopefully we'll be -- we will be there soon.  So, this

14   is part of the process.  We have every expectation that we

15   will be able to consummate the merger.

16          Your Honor, we did not receive any objections by

17   the objection deadline.  So, we would request that the Court

18   approve the motion.

19          THE COURT:  I just have a few questions.  One is,

20   you mentioned conditions that need to be fulfilled, can you

21   describe those and the means to fulfill them?

22          MR. PEREZ:  Yes, Your Honor.  The settlement

23   provides several conditions precedent to the effective date,

24   including creditor's committee approval in Switzerland,

25   which I believe is happening and publication of the co-

Page 12

```
 1    location plan, which has also happened.

 2              There is what's called a realization plan, which

 3    is in essence a mini plan treatment of our claim, which as

 4    soon as this is approved, that will go out.  And under the

 5    Swiss system, when you publish the realization plan, you

 6    make -- you offer creditors the ability to come in -- to

 7    come in and stand in your shoes and basically take the

 8    claims against LBF.

 9              Obviously, if a creditor steps up to that, than

10    that would -- that would terminate the settlement agreement.

11    We don't believe any creditors have.  We've talked to many,

12    many of the substantial creditors and understand, Your

13    Honor, that for the most part almost all of the creditors in

14    the Swiss proceeding are the creditors in our case because

15    there are guaranteed claims with respect to those.  So,

16    we've talked to many of the creditors and we don't believe

17    that's it.

18              There are some claims from some of the affiliates,

19    which we need to get waived, including the claim of LBF and

20    a small claim from Aurora Bank.  And in addition to that,

21    we've set up a mechanism whereby the -- in particular, with

22    respect to Lehman Brothers Asia Holdings Hong Kong, what we

23    called Hong Kong, those claims are being assigned to us.

24    Some of those claims are positive.  Some of those claims are

25    negatives.
```

```
 1              We think on balance, we're going to get a

 2     substantial recovery from Hong Kong.  But because those

 3     claims are -- all the claims are being assigned to us, LBF

 4     did not want any issue where we get the winners and they get

 5     the losers.  So we put -- we will put up collateral in order

 6     to secure the fact -- them not being paid on the claims.

 7              We actually think that there is already a

 8     settlement with Hong Kong once that settlement between LBF

 9     and Hong Kong is approved, that condition would go away.

10              THE COURT:  Okay.  With all of the familiarity

11     that you and Mr. Rosenthal no doubt have as to the details

12     that I don't have, one of the things that's obscure to me as

13     I looked over the papers is what this really means to the

14     LBHI estate and what this really means to the LBF Chapter 15

15     case -- we'll hear about that in a minute -- in terms of

16     real economics and real projected recoveries, because the

17     numbers are very large, but they always were because they

18     were inflated.  No offense, but they were hugely inflated.

19              It's very hard to tell as this net's down to other

20     numbers that are very large, what it really means in terms

21     of realizable recoveries to creditors in the United States

22     and realizable benefits to creditors in Switzerland.  So,

23     that's one of my fundamental questions, to drill down into

24     this and understand in true economic terms what has been

25     achieved here.
```

Page 14

1            MR. PEREZ:  Yes, Your Honor.  I'll let

2    Mr. Rosenthal address LBF, but let me address LBHI.

3            Your Honor, we have two sources of recovery here.

4    One is the assignment of the claims that we're going to

5    receive, as well as the participation after the priority

6    distribution.  Based on the numbers now, and based on the

7    declaration of the LBF liquidator, we -- they believe that

8    there's going to be about a 60 cent on the dollar recovery.

9    Assuming that we don't participate in the first part of that

10   with an $8 billion even if we get 10 cents after the

11   recovery, that's an $800 million recovery.  We think it's

12   obviously -- we believe it's going to be more.

13           In addition to that, Your Honor, we will have --

14   we already have allowed claims of approximately four plus

15   billion into LBT and three plus billion into LBS.  LBT is a

16   -- paying a substantial dividend.  So, in terms of economic

17   recovery, while I don't know the exact numbers, this is in

18   the billions, Your Honor, for the estate.

19           THE COURT:  Okay.

20           MR. PEREZ:  And let me say on the flip side, we've

21   mitigated $14 billion in claims that would otherwise be part

22   of the estate.  And with respect to the 942 million

23   structured security claim, Your Honor, that's being allowed

24   on the same basis as the 21,000 other structured securities

25   claim pursuant to the protocol.  So, they're getting the

Page 15

1   absolute same treatment that we've accounted for in all of

2   our dealings.

3           THE COURT:  Fine, thank you.  Because this is a

4   reciprocal motion in which we have a Chapter 15 matter that

5   is the flip side of the LBHI matter, I'll defer approving

6   until I hear from LBT.

7           MR. ROSENTHAL:  Good morning, Your Honor.  Michael

8   Rosenthal with Robert Krakow from Gibson, Dunn & Crutcher on

9   behalf of Lehman Brothers Finance.

10          Your Honor, you're right.  We -- this is a

11  companion motion.  I am as happy to be here as Mr. Perez.

12  We're happy to be able to resolve this very large dispute

13  between Lehman Brothers Finance and LBHI.  With me here

14  today is Christiana Suhr Brunner, a partner of Price

15  Waterhouse Coopers, sitting on the front row.  Ms. Suhr

16  Brunner is a partner with PWC, which is the Swiss bankruptcy

17  liquidator of Lehman Brothers Finance.  And she, along with

18  her colleague, Pascal Portman, negotiated this settlement

19  from the Lehman Brothers Finance perspective.

20          Your Honor, the -- it has been a very long, hard

21  fought series of negotiations over some very, very complex

22  issues, which if they had to have been litigated would have

23  raised, as Mr. Perez says novel -- novel issues both in the

24  United States and in Switzerland, novel in terms of the

25  issues themselves and also issues that would have

Page 16

1    potentially put the United States at issue with some of the

2    laws of Switzerland.

3           We have filed the declaration of Ms. Suhr Brunner

4    in support of the motion to compromise and settle, and I

5    think she sums it up by saying at the end the settlement

6    agreement is the product of intensive and arms length

7    negotiations between knowledgeable professionals and their

8    experienced counsel.  It's my firm belief that the

9    settlement is fair and reasonable, and would be in the best

10   interest of the creditors of LBF.

11          Now, Your Honor, Mr. Perez did indicate the

12   principal components of the settlement.  There will be a

13   priority distribution allowed to all third party -- all

14   third party creditors of Lehman Brothers Finance.

15          Your question that you just posed was how does

16   this treat the U.S. versus the non-U.S. creditors.  All

17   creditors are treated the same in Switzerland.  These third

18   party creditors, whether they're Swiss, or U.S., or Belgian,

19   or whatever country they're from are all part of the group

20   that is entitled to this priority distribution.

21          And the distribution, as Mr. Perez said, is set at

22   the lesser of 50 percent of their claims or a maximum amount

23   of $1.275 billion.  Based on the -- what is called the co-

24   location plan that has now been filed in Switzerland by

25   Lehman Brothers Finance, which is effectively the equivalent

Page 17

1     of our schedule of claims -- based on the claims that have

2     been allowed in that co-location plan, the estimate is that

3     third party creditors would receive approximately 60 percent

4     distributions on their claims.  This is to be compared with

5     much smaller distributions, distributions in the range of 30

6     percent had we not been able to resolve the LBHI claim

7     through this settlement agreement, and had LBHI prevailed in

8     their arguments about their claim in Switzerland.

9              Now, we believe that this settlement is fair, is

10    reasonable.  It appropriately takes into consideration all

11    of the issues that the parties have -- that the parties have

12    been discussing over a long period of time.  Your question

13    about what happens with a Chapter 15 case, I think it

14    resolves the Chapter 15 case.  I think there are -- other

15    than the claims that we have related to the Lehman paper,

16    the $942 million in claims against the Lehman estate, I

17    don't believe that there's any further need for Chapter 15

18    relief.  We'll be reviewing it, but I don't believe there is

19    and I believe we will be coming to the Court to conclude --

20    to conclude that case.

21             Does Your Honor have any -- well, you asked

22    questions about conditions precedent.  So, Mr. Perez

23    indicated many of them.  One is this Court's approval, we're

24    here today.  Another is approval by the creditor's committee

25    in Switzerland, the Lehman Brothers Finance creditor's

Page 18

1    committee in Switzerland.  That approval was obtained two

2    days ago.  A third condition is that we receive a waiver of

3    some claims that Lehman Brothers, the Luxemburg entities

4    would have -- have threatened to file against Lehman

5    Brothers Finance.  And Mr. Perez can address that, but we're

6    -- that is a condition of the settlement and we're told that

7    LBHI has that in hand and is prepared to be able to deliver

8    us that waiver.

9          Mr. Perez mentioned that there is a further

10   requirement in Swiss law that creditors, even though the

11   committee has proved that creditors be allowed to in effect

12   take over the claim, and pursue the claim against LBHI or

13   defend the claims that LBHI has filed.  That process still

14   is ongoing.  Mr. Perez told you that he did not think that

15   anyone would actually take on that obligation, and I agree

16   with him.

17         But what he didn't tell you was that in order to

18   -- for creditor to take advantage of that opportunity, they

19   have to effectively indemnify the Lehman Brothers Finance

20   estate against any damage that might be caused if that ever

21   is unsuccessful.  The way that that indemnity works is that

22   the creditor who wants to take that claim over has to post

23   what's -- what we've called the settlement interest amount

24   in this settlement agreement.  The settlement interest

25   amount is at least $6 billion.  So, that is a --

1              THE COURT:  That's a pretty high barrier to entry,

2       isn't it?

3              MR. ROSENTHAL:  Relatively high barrier.  Other

4       than that, Your Honor, I agree with Mr. Perez's statements.

5       We believe that the standards for approval of 9019 motions

6       in this District have been more than satisfied.  This is a

7       settlement well within the range of reason.

8              THE COURT:  I agree and having heard from both of

9       you, I'm convinced that that's true.  I do have just a

10      question based more on personal curiosity than a need to

11      know in order to approve this obviously mutually beneficial

12      arrangement and that is how you were able to resolve the

13      various cross-border issues that you've described, because

14      you're describing not just issues that relate to Swiss law

15      and U.S. law, but issues relating to other Lehman affiliates

16      whose winding up proceedings are pending in various other

17      countries.

18              I'm wondering if you could simply illuminate the

19      question of whether the protocol was useful in this regard

20      and if not, what procedures were implemented in order to

21      achieve this global result, and the use of the term global

22      is not misplaced here.

23              MR. ROSENTHAL:  I think the protocol was useful.

24      I don't think that it was, with all due respect, I don't

25      think it was, you know, absolutely dispositive because the

Page 20

1    Swiss proceeding had its own rules that it had to abide by,

2    and in some instances there were requirements of Swiss law

3    that were just -- just didn't fit as well within the

4    protocol as, I guess, we all would have liked.  But I think

5    it did set a framework that people used to resolve things.

6         One of the problems with -- one of the issues with

7    this entire settlement was it was a -- it was truly like

8    putting a puzzle together.  The value that LBHI derives from

9    this settlement comes in part from their distribution on

10   their $8.75 billion claim against the LBF estate.  But

11   remember, they have effectively subordinated that claim to

12   priority distributions to third party creditors.

13        So, it's the other part that I think is a key

14   aspect of the value of the settlement for LBHI.  And that is

15   what the assignment of the claims against the other Lehman

16   affiliates, which are valuable claims.  And until those

17   could be further evaluated, potentially further locked down,

18   it was impossible to -- it was difficult to determine how

19   valuable those claims were, both in terms of what LBHI was

20   getting and in terms of what LBF was giving up.  And I think

21   the protocol was important in evaluating those claims and

22   having some consistency in how they would be evaluated.

23        THE COURT:  Fine.

24        MR. PEREZ:  I would just --

25        THE COURT:  Mr. Perez?

1            MR. PEREZ:  Yeah, just a -- on that issue, Your

2    Honor.

3            The protocol clearly set the framework that

4    allowed us, LBHI, to evaluate the economics of the deal

5    because it recognized the various intercompany accounts.  It

6    said, you know, we're just going to start on September 12th

7    and then, you know, obviously to the extent that there's an

8    issue, we're going to do it.

9            A couple of interesting things is that to my

10   knowledge, this is one of the very first times that a debtor

11   has been recognized in a Swiss proceeding without having to

12   start an ancillary proceeding.  So, that took a long time

13   for FINMA to recognize us.  They allowed us initially to

14   file claims without starting a proceeding, and then it was

15   just only in the last two or three months before the

16   settlement was signed that they actually issued an opinion

17   or an order saying that we did not have to file an ancillary

18   proceeding in order to be recognized over there.

19           And that -- while seemingly not as important, it

20   was very important because that's -- that was really the

21   only way we could conclude the settlement with the certainty

22   and not having, you know, a liquidator appointed in

23   Switzerland for these assets.

24           THE COURT:  Thank you.  Someone wishes to be

25   heard?

Page 22

1          MR. CORDARO:  Good morning, Your Honor.  Joseph

2   Cordaro, Assistant United States Attorney on behalf of the

3   United States.

4          And I just wanted to briefly point out one thing

5   that the United States is mildly concerned with.  There is a

6   provision in the settlement agreement that provides that

7   governmental approvals are not necessary to carry out the

8   transaction on LBHI's side.  And we don't interpret that at

9   all as dispensing with any requirements under U.S. law to

10  carry out the transaction, but I just wanted to be sure that

11  to the extent that under U.S. law that any agency approvals,

12  or consents, or permits are required to carry out the

13  transaction from the LBHI side that this order wouldn't --

14  is not -- should not be taken as prospectively granting any

15  of those agency approvals, or permits, or authorizations.

16          So, we just wanted to be clear about that.  We

17  don't think that's controversial, and actually we don't

18  think that's the intent here, but I just wanted to put that

19  on the record to make sure that it's clear to everyone.

20          THE COURT:  Let me just ask Mr. Perez to confirm

21  that there is no intention in the documentation or in the

22  order to be entered approving this settlement to dispense

23  with the agency approval requirements, if any, that may

24  apply.

25          MR. PEREZ:  Your Honor, that's correct.  But I

1    think Mr. Cordaro's referring to Section 7.4 in which we

2    make a representation to LBF and LBF in 6.4 makes a

3    representation to us that there is no additional approval

4    necessary, and we don't believe there is, Your Honor.

5              In essence, we're doing three things.  We're

6    compromising a receivable.  We're taking an assignment.  And

7    we're allowing a claim.  There's no business here.  We're

8    not running an airline.  We're not running a

9    telecommunications company.  So, I'm not quite sure where

10   this is coming from.

11             THE COURT:  I recognize based upon my experience

12   in the Lehman bankruptcy case that you are not running an

13   airline any longer anyway.  There were a lot of private

14   airplanes at one point.  But I think this is the U.S.

15   Attorney's Office being particularly cautious.  Their

16   representation is fairly standard in transactions and given

17   that this is the mutual agreement to compromise intercompany

18   claims, I can't imagine any government approval as being

19   required under any circumstances.

20             But the point is noted to the extent that there

21   are any such approvals, the fact that a representation is

22   being made doesn't dispense with them.

23             MR. CORDARO:  Thank you, Your Honor.  And again, I

24   don't see a scenario where any governmental approvals would

25   have to be transferred to affect these transactions, but

Page 24

1    again it would be the same idea that this order wouldn't

2    prospectively dispense with any law -- U.S. law governing

3    those transfers.

4              THE COURT:  Okay, that's fine.

5              MR. CORDARO:  Thank you, Your Honor.

6              THE COURT:  Is there anything more on this?

7              MR. ROSENTHAL:  No, Your Honor.

8              THE COURT:  I'm pleased to approve this

9    transaction, which is mutually beneficial to the LBHI estate

10   and also to the estate of Lehman Brothers Finance AG and

11   Liquidation in Switzerland.

12             As the papers have noted, both those filed in the

13   Chapter 11 case and those in the Chapter 15 case, the

14   negotiations leading up to this resolution have been going

15   on for approximately four years.  That's an extraordinarily

16   long time to be negotiating anything.  It is at least one

17   indication of how remarkably complicated these

18   interrelationships are, particularly when dealing with law

19   that is not clearly harmonious.

20             I think it is a significant achievement in the

21   annals of cross-border insolvency and a testament to the

22   capacity of well-informed professionals and others involved

23   in the process to reconcile their differences.  And to that

24   extent, is important precedent, particularly in cases such

25   as this that involve enterprises that operate across

Page 25

1    borders.  I'm pleased to approve it.

2          MR. PEREZ:  Thank you, Your Honor.

3          MR. ROSENTHAL:  Thank you very much, Your Honor.

4    Should we hand up the order or do you -- do you have the

5    orders, or should we hand up one?

6          UNIDENTIFIED SPEAKER:  We'll hand one up at the

7    end of the hearing.

8          MR. PEREZ:  Your Honor, may we be excused?

9          THE COURT:  Yes.  Have orders been handed up?

10         MR. PEREZ:  No.

11         THE COURT:  I think we're now ready to move onto

12   the LBI docket.

13       (Pause)

14         MR. PEREZ:  Thank you, Your Honor.

15         THE COURT:  Thank you.

16         MS. GRAGG:  Good morning, Your Honor.  Meaghan

17   Gragg of Hughes Hubbard & Reed for the SIPA Trustee.

18         On the calendar today there are two omnibus

19   objections to which the trustee has received responses.  The

20   trustee's 29th omnibus objection and the trustee's 33rd

21   omnibus objection, both relate to claims by holders of

22   securities that were issued by LBHI pursuant to indentures

23   dated September 1, 1987 and February 1, 1996.

24         The claims, the responses, the documentation

25   provided by the claimants in the publicly available

Page 26

1    documents filed with the SEC all show that the claims

2    securities were not issued by LBI or guaranteed by LBI.

3            The 29th objection covers 54 claims, with a total

4    asserted amount of approximately 34 million.  The 33rd

5    objection covers 66 claims with a total asserted amount of

6    approximately 11 million.  The trustee received two

7    responses to each objection.  One -- for each objection, one

8    of the responses was filed on the docket, the other was

9    received by the trustee and it doesn't appear that it was

10   filed on the docket, but it was attached with our omnibus

11   reply.

12           In an effort to resolve these responses without

13   involving the Court, the trustee's counsel contacted each

14   respondent, but the respondents have continued to press

15   their claims.

16           THE COURT:  Apparently some of the parties who

17   received calls were not pleased to have received those

18   calls.  I saw a response indicating some anxiety associated

19   with one of your associates who contacted that person.

20           MS. GRAGG:  I think there was some

21   misunderstanding.  Our intention in communication with that

22   respondent was to explain to her the basis for the trustee's

23   objection, and also to explain to her the fact that the

24   indentured trustee had filed a claim on her behalf in LBHI.

25   But she was informed that, you know, she had a right to file

Page 27

1    an objection and I think he just asked if she cared to

2    withdraw her claim, or to continue to press it.  So, it was

3    purely an effort to try and resolve it --

4              THE COURT:  I understand.

5              MS. GRAGG:  -- outside the Court.

6              The trustee's financial advisor, Deloitte, filed

7    declarations to support the omnibus objections and the

8    omnibus reply and is here today if the Court has any

9    questions regarding the underlying claims and the SEC

10   documentation supporting the trustee's determination that

11   LBI is not liable.

12             None of the claimants' responses provides

13   references, any document, fact, or legal theory that would

14   give rise to LBI liability.  Three of the four responses are

15   similar and simply replicate or reiterate the basis for the

16   liability asserted in the claims, which is that the

17   respondents hold LBHI's issued securities.

18             Mr. Stovic's response raises some additional

19   issues, but he still fails to establish any basis for LBI

20   liability.  In his response, he appears to assert a claim

21   against controlling persons of LBHI and LBI for breach of

22   contract, fraudulent misrepresentation, and fraudulent

23   misrepresentation in connection with the LBHI securities,

24   but he doesn't provide any document, fact, or legal theory

25   sufficient to support that claim.

```
                                                        Page 28

 1              The shelf registration that he provides, which is

 2    signed by the controlling persons that he references,

 3    doesn't relate to the security that he claims.  And even if

 4    it did, the -- it's clear from the document that the

 5    signatories were acting as directors and officers of LBHI,

 6    not LBI.

 7              As I mentioned before, with respect to Ms. Smith's

 8    letter, we have identified the (indiscernible - 00:32:51)

 9    for each of the securities claimed by each of the

10    respondents in the corresponding global proofs of claim

11    filed by the indenture trustee for the securities on behalf

12    of the respondents in the LBHI Chapter 11 proceeding, which

13    is consistent with our determination that LBHI issued the

14    claim securities.

15              Just -- the claimants subject to the trustee's

16    29th and 33rd omnibus objections have failed to meet their

17    burden on demonstrating the validity of their claims, and so

18    on that basis, unless the Court has any questions, we

19    request that the relief requested in the 29th and 33rd

20    objections be granted and that the responses filed in

21    opposition to the objections be overruled.

22              THE COURT:  Are any of the parties who have

23    responded to the trustee's objections to claims present or

24    participating by telephone?

25         (Pause)
```

Page 29

1             I hear no response.  These contested matters all

2   appear to fall within the same general category of

3   individuals who acquired Lehman Brothers Securities, but who

4   pursued claims against the SIPA estate under the

5   misapprehension that LBI has legal liability of some sort in

6   reference to these securities issued by other affiliates of

7   Lehman that are parties to the Chapter 11 cases.

8             Is that a correct statement?

9             MS. GRAGG:  Yes.

10            THE COURT:  Under the circumstances, these claim

11   objections are all granted.

12            MS. GRAGG:  Thank you, Your Honor.  We filed and

13   will provide copies to your law clerk after the hearing, the

14   proposed orders which reflect the relief we're requesting.

15            THE COURT:  Okay, thank you.  Is there anything

16   more for today?

17            MS. GRAGG:  No.

18            THE COURT:  In that case, we're adjourned, thank

19   you.

20        (Whereupon this proceeding was concluded at 10:37 AM)

21

22

23

24

25

Page 30

1                        I N D E X

2

3                         RULINGS

4                                              Page        Line

5    Plan Administrator's Motion for Order in      9          25

6    Aid of Execution of the Modified Third

7    Amended Chapter 11 Plan of LB Rose Ranch

8    LLC [ECF No. 36423]

9

10   Motion for an Order Pursuant to Section      24           8

11   105(a) of the Bankruptcy Code and Bankruptcy

12   Rule 9019, Authorizing and Approving the

13   Settlement Between LBF and the LBHI Parties

14   [ECF No. 51]

15

16   Trustee's Twenty-Ninth Omnibus Objection to  29          11

17   General Creditor Claims (No Liability Claims)

18   [LBI ECF No. 5776]

19

20   Trustee's Thirty-Third Omnibus Objection     29          11

21   to General Creditor Claims (No Liability

22   Claims) [LBI ECF No. 5835]

23

24

25

1              C E R T I F I C A T I O N

2

3     I, Jamie Gallagher, certify that the foregoing transcript is

4     a true and accurate record of the proceedings.

5

6

7

8

      Veritext

9

      200 Old Country Road

10

      Suite 580

11

      Mineola, NY 11501

12

13

      Date:  April 25, 2013

14

15

16

17

18

19

20

21

22

23

24

25