**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

--------------------------------------------------------------------------x     **Ref. Docket No. 36933**

<u>**AFFIDAVIT OF SERVICE**</u>

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK   )

KERRY O'NEIL, being duly sworn, deposes and says:

1.  I am employed as a Noticing Coordinator by Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017. I am over the age of eighteen years and am not a party to the above-captioned action.

2.  On April 30, 2013, I caused to be served the:

    a)  "Order Granting Plan Administrator's Omnibus Objection to Claims Filed by Deborah E. Focht," dated April 30, 2013 [Docket No. 3633], and

    b)  "Transcript," dated April 26, 2013, annexed hereto as <u>Exhibit A</u>,

    by causing true and correct copies to be:

    i.   enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed <u>Exhibit B</u>, and

    ii.  delivered via electronic mail to the party: AmericanReply@gmx.com.

3.  All envelopes utilized in the service of the foregoing contained the following legend:
    "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO THE ATTENTION OF
    ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

*/s/ Kerry O'Neil*
Kerry O'Neil

Sworn to before me this
1st day of May, 2013
*/s/ Cassandra Murray*
Notary Public, State of New York
No. 01MU6220179
Qualified in Queens County
Commission Expires April 12, 2014

**EXHIBIT A**

Page 1

1    STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-JMP

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    LEMAN BROTHERS HOLDINGS INC., et al.,

8

9              Debtors.

10

11   - - - - - - - - - - - - - - - - - - - -x

12

13                        United States Bankruptcy Court

14                        One Bowling Green

15                        New York, NY 10004-1408

16                        April 25, 2013

17                        10:00 AM

18

19   B E F O R E:

20   HON. JAMES M. PECK

21   U.S. BANKRUPTCY JUDGE

22

23

24

25   ECRO:  TIFFANY

1   HEARING re Doc #36007 - Four Hundred Third Omnibus Objection to

2   Claims

3

4

5   HEARING re Doc #34303 - Plan Administrator's Omnibus Objections

6   to Claims filed by Deborah Focht

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Theresa Pullan

Page 3

```
 1  A P P E A R A N C E S :

 2

 3  WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for Debtors

 5        767 Fifth Avenue

 6        New York, NY  10153

 7

 8  BY:   ZAW WIN, ESQ.

 9

10

11  TELEPHONIC APPEARANCES:

12

13  DEBORAH E. FOCHT

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Be seated please.  I understand that we

3    have a creditor participating by telephone.  I just want to

4    verify for my purposes that the telephone hookup is working,

5    because I heard that there was a volume problem earlier.  It's

6    fine?  Okay.  Thank you.

7              MR. WIN:  Good morning, Your Honor, Zaw Win, Weil

8    Gotschal and Manges for Lehman Brothers Holdings Inc.  The

9    first matter on the agenda is the Four Hundred Third Omnibus

10   Objection, which is a no liability claims objection, it's

11   listed at ECF number 36007.  And it seeks to disallow and

12   expunge certain claims for benefits and employment related

13   compensation.  The debtors received two formal and one informal

14   response to this objection.  The response of Barry J. O'Brien,

15   whose claim is claim number 32520 and the objection is listed

16   at ECF number 36386, objects to all the relief sought and has

17   been adjourned without date.

18              The second response is a response of Wendy M. Uvino,

19   she has claim number 4770, and the response is listed at 36760,

20   objects to the relief sought only with respect to a portion of

21   Ms. Uvino's claim.  After consultation with her counsel, she

22   has agreed to the disallowance and expungement of a $91,000

23   portion of her claim, and the response with respect to the

24   remaining portion of her claim has also been adjourned.

25              In addition to those two, the debtors were contacted

Page 5

1    informally by counsel to claimant William Broadbend (phonetic)

2    whose claim is claim number 65126.  He filed a claim in the

3    amount of $1,870,078.90, and the motions filed requested that

4    $1,070,000 portion of that claim be disallowed and provided

5    that an $800,078.90 of the claim was not subject to the motion.

6    Upon consultation with his counsel, the exhibit proposed order

7    was revised to reflect the disallowance of a million dollar

8    portion of the claim and to provide that an $870,078.90 portion

9    of the claim is not subject to the objection.  With the

10   incorporation of that revision, we understand that Mr.

11   Broadbend does not dispute the relief requested.

12          So we'd ask that the order only be entered only to

13   the remaining portion of the motion with the first two claims

14   being adjourned and adjustment to the third claim.

15          THE COURT:  Fine, with that understanding, I'll enter

16   the order.

17          MR. WIN:  The last matter on the agenda today is the

18   Plan Administrator's Omnibus Objection to claims filed by

19   Deborah Focht.  The objection is listed at ECF Number 34303.

20   Ms. Focht filed two responses to the Plan Administrator's

21   Objection.  The first one is listed at ECF Number 35026 and the

22   second is listed at ECF Number 36165.

23          The plan administrator has also filed a reply to Ms.

24   Focht's responses which is listed at 36737 and that reply

25   included a declaration of Daniel Glanz, Mr. Glanz is in Court

Page 6

1    today.

2           The objection relates to five proofs of claim, claim

3    numbers 34380 and 42914 which are against BNC Mortgage, 34381

4    which is against LBHI, 42915 which is against Lehman Brothers

5    over the counter derivatives, and 42916 which is against Lehman

6    Brothers derivative products.

7           As set forth in our papers, the Plan Administrator

8    has identified substantive and procedural defects to each of

9    Ms. Focht's claims.  Additionally, the Plan Administrator has

10   reserved its rights to object to Focht's claims based on other

11   defects that were not included in these papers just out of a

12   desire to keep the papers as simple as possible at this point.

13   In the interest of clarity, I propose to address three separate

14   issues separately giving Ms. Focht an opportunity to respond to

15   each issue before moving on to the next.  Does that work for

16   the Court?

17           THE COURT:  I'm sorry, what was the question?

18           MR. WIN:  I'm proposing to address three issues

19   separately.

20           THE COURT:  Yes, that's fine.

21           MR. WIN:  Okay.  Those issues are the timeliness of

22   Ms. Focht's claims; and then second Ms Focht's derivative

23   contract and insurance based claims; and third, Ms. Focht's

24   loan origination claims.  Starting out with the timeliness

25   issue --

Page 7

1          THE COURT:  Before we get into the substance of the

2    argument which you plan to present in three parts, I just want

3    to verify that Ms. Focht is on the line and can hear what's

4    being said, and as a result will be in a position to make

5    responses after you've made your argument.  So I'm just

6    checking to make sure that she's here and actively

7    participating telephonically.

8          MS. FOCHT:  [indiscernible] can you hear me?

9          THE COURT:  I can barely hear you.  I think we have,

10   I'm glad I asked because we have something of a problem.  Just

11   one second.  Try again.

12         MS. FOCHT:  Can you hear me now?

13         THE COURT:  Try again.

14         MS. FOCHT:  Again, can you hear me now?

15         THE COURT:  I can hear you now, but I must tell you

16   it's faint.  This is like a Verizon commercial.  Do you want to

17   try again just for testing purposes?

18         MS. FOCHT:  Yes.  Can you hear me now?

19         THE COURT:  I can hear you but you are faint.  I

20   think what, and this is certainly not your fault, but I'll

21   simply note that given the economies of having to travel in

22   person to deal with a matter of this sort, I understand why

23   you're participating by telephone.  But it is almost by

24   definition less effective than being present in person in the

25   courtroom, and we'll deal with it.  But I'm letting you know

Page 8

1   even before we get into the substance that from a technical

2   perspective, you're not coming through loud and clear, at least

3   not uniformly so.  But let's proceed with the argument.  My

4   real question was whether you can hear us clearly so that

5   you're in an position to hear counsel's argument and then be in

6   a position to respond to it.

7              MS. FOCHT:  Yes, I can hear very good.

8              THE COURT:  Okay.  Let's proceed.

9              MR. WIN:  Okay, so getting back to --

10             MS. FOCHT:  May I ask a question?

11             THE COURT:  Yes, you may ask a question.

12             MS. FOCHT:  Are you Judge Peck?

13             MR. WIN:  She asked if you were Judge Peck.

14             THE COURT:  Oh yes, I am.

15             MS. FOCHT:  Okay.  And Michael, is this the name of

16  the attorney?

17             MR. WIN:  No, my name is Zaw Win, Z-A-W last name

18  Win, W-I-N.

19             MS. FOCHT:  Okay, thank you.

20             THE COURT:  Sir, please proceed with your argument.

21             MR. WIN:  Okay.  So the first issue that I'd like to

22  discuss is the timeliness of Ms. Focht's claims.  As the Court

23  knows, the bar date in this case was established for September

24  22nd, 2009 at 5:00 p.m.  According to the time stamps inserted

25  by Epic onto the claims, two of Ms. Focht's claims were

Page 9

1    received within one day of the bar date, those are claim

2    numbers 34380 and 34381.  My administrator is not objecting to

3    the timeliness of those claims at this time.

4            The remainder of Ms. Focht's claims, 42914, 42915 and

5    42916 were received by Epic on October 23rd which is almost a

6    month after the bar date.  Nothing in Ms. Focht's papers have

7    established any basis for excusable neglect that would justify

8    the late filing of Ms. Focht's claims.  In addition, it is

9    clear that Ms. Focht had actual notice of the bar date because

10   she did file two claims that were nearly timely.  So her

11   arguments about notice of the bar date are also similarly

12   unavailing.  And because she filed those two claims that were

13   basically on time, there's really no reason that she couldn't

14   have filed the other three claims at the same time.  So the

15   plan administrator would ask that the Court disallow claims

16   42914, 42915 and 42916.

17           THE COURT:  Okay.  Ms. Focht, let's focus

18   particularly on this procedural question.  And a procedural

19   question is limited to these three claims that were filed about

20   one month after the bar date.  I have previously issued rulings

21   in this case and a written opinion dealing with the strict

22   application of the bar date to all claimants.  I'm not

23   suggesting that you need to review that opinion, but it does

24   reflect this Court's view as to the importance of the bar date

25   particularly in a case as massive as the Lehman Brothers

Page 10

1   bankruptcy cases.  So I'd like you to comment and please speak

2   up as loudly as you can for purposes of not only my ability to

3   hear but also your ability to be effectively recorded on the

4   transcript of today's hearing.  And explain if you can the

5   reason that these three claims were filed approximately one

6   month after your initial two claims.  That's I think an

7   important questions for me to have answered.

8            MS. FOCHT:  I'd like to point out that in the

9   beginning I wasn't really receiving anything and I didn't

10  understand what was going on because I never had had anything

11  to do with Lehman Brothers as far as I ever knew and that while

12  the battle was going down in the state court, I had asked for

13  discovery.  And I also asked for discovery from BNC before they

14  went into the bankruptcy court.  And all I was told was no, or

15  I can't or [indiscernible] motions to compel, and as time went

16  by [indiscernible] the very first time I found out about Lehman

17  Brothers was on with the letters LBH [indiscernible] Your Honor

18  and I attached that to my creditor's amended response to the

19  Plan Administrator's Omnibus Objections.  On it all I could go

20  by was those three letters LBH.  At that time that was probably

21  way after [indiscernible].  At any rate, I still wasn't getting

22  discovery, and later towards the end of the year which was

23  around the time that I was filing that was the bar date, is

24  when I heard about this [indiscernible] from the law professor

25  [indiscernible] he was discussing the matter with derivatives

Page 11

1    [indiscernible].  And the reason why I put that in there, Your

2    Honor, was because I could not understand what was going on,

3    why these people were attacking me so much down here, and there

4    had to be a reason, it made no sense.  I already let them know

5    that they were collecting on the wrong account, they would not

6    give me discovery, a lot of the discovery until after I already

7    filed my claims history report.  And some of that discovery was

8    false, was showing two different properties as I've been saying

9    all along.  Now I'd like to object to the plan, the Plan

10   Administrator's reply that was given to me like two days ago

11   because --

12            THE COURT:  Can I just break?  I don't mean to break

13   in, but we really need to focus on the question of why these

14   three claims were filed one month after the initial two claims.

15   That's my question.  This has nothing to do with discovery.  It

16   has to do with whether or not you have an excuse that is

17   legally sufficient to explain why certain claims were filed

18   late.  And it appears that the first two claims were filed

19   with knowledge that there was a bar date.  I'd like a yes or no

20   answer to the following question.  Did you know that there was

21   a bar date?  That's a yes or a no.

22            MS. FOCHT:  No, Your Honor.  As soon as I found out

23   about it, I worked on it, I rushed it through and I eventually

24   had to amend it because [indiscernible].

25            THE COURT:  I'm sorry, I didn't understand your

Page 12

1    answer.  I want it to be a yes or a no.  The question is, did

2    you know that there was a bar date.

3                MS. FOCHT:  No, Your Honor.

4                THE COURT:  Okay, thank you.  And then the question

5    is, why did you not file claims 42914, 42915 and 42916 prior to

6    the bar date?

7                MS. FOCHT:  Your Honor, that was because I was

8    unaware of the other names that they had listed as

9    subsidiaries, and like I said I am unfamiliar with bankruptcy

10   proceedings.

11               THE COURT:  Okay.  Do you want to respond?

12               MR. WIN:  Yes, I mean with due respect I find the

13   answer implausible.  I mean she must have gone on the Epic

14   website to download the proof of claim form, and on the Epic

15   website was a list of all of the debtors.  So all of that

16   information was available to her when she filed the first two

17   claims, which as we've said were within one day of the bar date

18   and which we're not objecting to on the basis of timeliness at

19   this point.  She also attached to her proofs of claim

20   correspondence that she had with Epic in connection with the

21   filing of the first two claims which also suggests that she was

22   aware that there was a timeliness issue.

23               And I guess the third thing is that the legal

24   theories that she's asserted in the three claims that we are

25   asserting are late, are identical to the legal theories that

Page 13

1    she asserted in the two claims that were timely.  So really the

2    only difference between the claims that were filed within a day

3    of the bar date and the claims that were filed a month late are

4    that for two of the claims she added additional debtors, Lehman

5    Brothers OTC and Lehman DP.  And that information, all that

6    information was available to her and could have been included

7    in claims filed within, at the same time as the first two

8    claims.  So there's really no reason that I can think of that

9    she couldn't have filed all of her claims at the same time she

10   filed claim numbers 34380 and 34381.

11          And I guess the third thing is she mentioned parties

12   attacking her in Florida, and I'd just like to point out that

13   similar to many of her other allegations, those parties are not

14   before this Court, they're third parties, the parties that

15   acquired the loan after BNC sold it and they were not

16   controlled by Lehman and not doing Lehman's bidding.

17          THE COURT:  Okay.  Ms. Focht, do you have any further

18   comments with regard to the timeliness of these three claims?

19          MS. FOCHT:  Yes, Your Honor.  I would like to

20   reiterate that I'm not familiar with the bankruptcy procedures.

21          THE COURT:  If I could just interject.  Your lack of

22   familiarity with bankruptcy procedure is irrelevant to the

23   question that I proposed to you because you had sufficient

24   knowledge of bankruptcy procedure to file the earlier two

25   claims which were a day late, but nonetheless reflected an

Page 14

```
 1   awareness that there was a date in the case that mattered.  And

 2   you acknowledged that you were aware of that in my earlier

 3   question.  Correct?

 4            MS. FOCHT:  Yes, Your Honor, I would like to add some

 5   more please.

 6            THE COURT:  This is a matter of fundamental case

 7   administration in every bankruptcy case, bar dates matter, and

 8   there are adverse consequences to creditors that fail to file

 9   their claims on or before the bar date.  It is possible to

10   argue credibly that a one month delay is excusable due to

11   excusable neglect, but it becomes almost impossible to credibly

12   make that argument when claims are filed in recognition of the

13   bar date a month before the three claims that we're now talking

14   about.

15            And so I conclude based upon our discussion which I

16   am treating as the functional equivalent of an evidentiary

17   record, that Ms. Focht had an awareness of the bar date,

18   something which she admitted in this telephone conversation and

19   attempts to explain the delay in filing the three claims

20   presently being discussed, 42914, 42915 and 42916, on the basis

21   of being unsophisticated in bankruptcy matters generally and

22   being somewhat confused.  I find that that is not a sufficient

23   reason to excuse the late filing of these three claims in light

24   of the fact that substantially similar claims were filed one

25   month earlier against different parties.  Moreover,
```

Page 15

1    particularly with respect to LBOTC and LBDT, there is zero

2    nexus between the facts alleged and the proof of claim and

3    these debtors.  So that even if we were to deal on the merits

4    with these claims and ignore the fact that they are untimely,

5    it is highly likely that I would find that there is no right to

6    payment in any event.

7            For that reason, the claims are all disallowed as

8    untimely and we'll proceed to deal with claims 34380 and 34381.

9            MR. WIN:  Thank you, Your Honor.  Moving on to claim

10   34381, this was a claim that was filed against Lehman Brothers

11   Holdings, Inc.  As far as I can tell, Ms. Focht's basis for

12   this claim is an allegation that LBHI held some kind of an

13   insurance policy or derivative contract that was designed to

14   pay LBHI, according to Ms. Focht, 3 million upon default of Ms.

15   Focht's loan.  As set forth in our papers, the debtors have not

16   been able to identify, and Ms. Focht doesn't identify, any

17   insurance policy or derivative contract that was directly

18   related to the loan.  And more importantly perhaps, even if

19   such an insurance policy derivative contract did exist, Ms.

20   Focht doesn't allege any basis that would establish a right to

21   payment for her from the proceeds of such insurance policy or

22   derivative contract.  So she's failed to establish a prima

23   facie case for any right to payment in connection with this

24   claim, or really even any connection between herself and these

25   alleged financial instruments that LBHI may or may not have

Page 16

1   held at the time of bankruptcy.

2           THE COURT:  Is that argument limited to the claim

3   against LBHI 34381?

4           MR. WIN:  It would also be applicable to the claims

5   against LBDT and LBOTC, but as I understand the Court has

6   already disallowed those claims.  At this point it would only

7   apply to the remaining claim against LBHI.

8           THE COURT:  And you're not making an argument at this

9   moment with respect to claim 34380 against BNC?

10          MR. WIN:  My understanding, and again it's a little

11  hard from the pleadings to specifically identify which claims

12  Ms. Focht is asserting against which debtor. but the way I

13  understand her argument is that the claims against LBHI are

14  related to the insurance policy and the derivative contract,

15  and the remaining claims that relate to the origination of the

16  loan are against BNC.  It may be that that's not her intent,

17  but based on, you know, our good faith reading of her papers,

18  that was the conclusion that we drew.

19          THE COURT:  Okay.  Let's look for an explanation from

20  Ms. Focht herself.  The claim against LBHI which we're now

21  discussing appears to be a claim based upon an insurance

22  contract or a derivatives contract.  Is that right?

23          MS. FOCHT:  Yes it would be also due to the fact that

24  [indiscernible] of the $109,000.  And I put that in as an

25  exhibit under [indiscernible] my amended response to the plan,

1    objections.

2            THE COURT:  If I could just ask a very, very basic

3    question, and if you could answer it in the simplest way that

4    you can, why do you think you have any claims against LBHI

5    inasmuch as you did not have any dealings with LBHI of any

6    sort?

7            MS. FOCHT:  Your Honor, I was just explaining that

8    the exhibit shows that [indiscernible] the $109,000 from me,

9    but I did not receive this until after, after I had filed my

10   original claim.  The only thing that I could base this on is I

11   was told to go in the Lehman Brothers because like I said

12   [indiscernible] had at that time.  And right now they're also

13   sending me a new reply which I wanted to object to because I

14   did not receive this in time, it just shows further

15   inconsistencies with discovery.  So that was my reason for

16   putting in my statement [indiscernible] I needed discovery in

17   order to amend my motion and my claims properly [indiscernible]

18   before I could even start my case.  So I don't know how else to

19   do this without the record, so my request was for discovery and

20   I haven't received it, I haven't received it.

21           THE COURT:  Well, according to the papers that I have

22   reviewed that have been filed in response to your opposition to

23   the expungement of your claims, based upon a review an internal

24   review that I gather is supported by a witness here.

25           MR. WIN:  That's correct.

Page 18

1           MS. FOCHT:  Your Honor --

2           THE COURT:  I'm just in the middle of speaking, so

3    for record purposes, let's just let me finish.  And then you'll

4    have a courteous opportunity to say what you need to say in

5    response.  Based upon the assertions made by a responsible

6    witness from the Plan Administrator, there are no documents

7    that are responsive to your general request, and so even if you

8    were to formally pursue discovery, the answer would be the same

9    and there is a declaration which has been submitted and the

10   witness who provided that declaration is in court today.  The

11   only question I suppose I would ask and this is a very

12   difficult matter to handle with you on the telephone speaking

13   in a manner that is still in my view quite faint relative to

14   the other volume levels of people who are appearing live in

15   Court, and that would be for Mr. Glanz to come to the podium

16   and explain in his own words the content of his declaration

17   which has been submitted in support of the reply.  It's a

18   declaration dated April 22, 2013 consisting of some 18

19   paragraphs.  But I don't know if you've seen that.  And even if

20   you have seen it, it may be that it would be useful for him to

21   explain the substance of that declaration.  And if you have

22   questions concerning his statements, you can ask those

23   questions right now, and he can then further respond.  That way

24   in effect, you'll be getting some of the discovery that you

25   claim to require.  Would that be all right?

Page 19

1        MS. FOCHT:  Excuse me, Your Honor.  Is there a

2    [indiscernible] before I respond?

3        THE COURT:  I'm sorry, I'm not understanding you.

4        MS. FOCHT:  I just received this in the mail, so I

5    didn't get a chance to really carefully go through it, all I

6    saw was one line across the sheet here just saying

7    [indiscernible] I mean it doesn't really have a document to it

8    [indiscernible] so I don't have any transfer information on

9    what happened at all.

10        THE COURT:  Ms. Focht, the issue here is whether you

11    have a viable claim against LBHI, that's the issue.

12        MS. FOCHT:  Okay.

13        THE COURT:  And we are going to deal with that today.

14    And we have a witness who is going to provide information to

15    you concerning the discovery that you have requested in a

16    variety of informal ways in the context of this claim objection

17    proceeding.  And I'd like you to have that information so that

18    you can be satisfied that in fact there are no documents that

19    relate to an insurance contract or derivative contract

20    applicable to your mortgage from BNC.  I'm going to ask Mr.

21    Glanz to now make a presentation for your benefit, because I

22    can read the declaration, but I think it would be useful for

23    him to explain what that declaration consists of and for you to

24    have an opportunity if you wish to avail yourself with that

25    opportunity to ask him questions about his statements made to

Page 20

```
 1   me.  Is that all right?

 2            MR. WIN:  That's all right, Your Honor.  Would it be

 3   helpful if I asked him questions to elicit the testimony that

 4   he included in his declaration?

 5            THE COURT:  That might be a good way to develop it on

 6   the record.  And if Ms. Glanz (sic) wishes to ask further

 7   questions, that's fine.  But in this manner, she'll be able to

 8   hear for herself what Mr. Glanz has to say in response to your

 9   questions.  Why don't we do that?  And Mr. Glanz, you can sit

10   in the witness stand and we can proceed in that manner.

11                        TESTIMONY OF MR. GLANZ

12   BY MR. WIN:

13   Q.   Can you please state your name for the record?

14   A.   Daniel Glanz.

15   Q.   And can you please give us your title at Lehman Brothers?

16   A.   Vice president.

17   Q.   And can you give us a little bit of background of how long

18   you've worked at Lehman Brothers and what your job is?

19   A.   Sure.  I've been with Lehman since September of 2001.  I

20   was, I've been working in the mortgage area of Lehman's since

21   then.  Prior to bankruptcy, I was working with the information

22   technology area at Lehman Brothers where I was responsible for

23   one of the technology platforms, the platform I refer on my

24   declaration is called Hold On Tracking (phonetic), and post

25   petition, I've been working in the group responsible for the
```

Page 21

1   wind down and managing of the assets remaining in the mortgage

2   business.

3   Q.   What does the Hold On Tracking system do?

4   A.   The Hold On Tracking platform was built to be the system

5   of record to maintain a record of all the loans that Lehman

6   [indiscernible] purchased and either held or sold and it was a

7   place for Lehman to keep track of the loans that it owned, get

8   regular updates on their performance and ultimately track if

9   they were sold, that sale of those mortgages.

10  Q.   So is it fair to say that Lehman business people depended

11  on information that was contained in the Hold On Tracking

12  system to show things like sales or assignments of loans out of

13  the estate to third parties?

14  A.   Yes.

15  Q.   Thank you.  Attached to your declaration was a one page

16  exhibit.  Can you describe that exhibit a little bit for me?

17  A.   Sure.

18  Q.   Would it be helpful if I gave you a copy of it?

19  A.   Absolutely, just to refresh my memory.  Thank you.  The

20  exhibit attached just really just one line --

21          MR. WIN:  Excuse me for one second.  For the record,

22  I handed Mr. Glanz a document that was attached to his

23  declaration as Exhibit 1.

24  BY MR. WIN:

25  A.   The exhibit is an extract, a report from the underlying

Page 22

1    database, the Hold On Tracking.  Just a bit of background which

2    I explained as well in the declaration, Hold On tracking

3    essentially is two pieces, the database that stored data and

4    then a software application that allowed users to access the

5    data to view the data and to modify it through their ordinary

6    business dealings.  Post bankruptcy the system was shut down,

7    it was no longer in use and the database itself was maintained

8    by the estate for the purposes of research and having access to

9    those records.  That database was, what we call, it's been put

10   into a read only mode so you couldn't modify the data, all you

11   could do is read from it and generate reports from the system.

12   The record that I provided here was the only information I was

13   able to find on the loan in question.  It's a very brief

14   record, it doesn't state much.  As I mentioned as well, the

15   system, you know, as Lehman grew, as the business grew, the

16   system itself was continually evolved and improved.  In the

17   early 2000s, 2001, '02, '03, the system had, I would say a

18   somewhat more limited data than for example what you'd see in

19   the declarations that I provided for loans that were transacted

20   upon closer to petition date.  And where that manifested itself

21   here specifically in the first data field showing the page

22   where it identifies the name of the buyer there was no record

23   kept in this system specifically who the buyer was.  It just

24   used the generic moniker, the street, which is meant to

25   identify any non-Lehman company.  So all this record is really

Page 23

th

1   telling you is that on December 30  of 2002, this loan was sold

2   and it was sold to a third party.  The name of that third party

3   was not recorded in this system, and then there were no further

4   records maintained on this loan.  Generally, once Lehman sold

5   the loan, it did not keep track of it, it had no relationship

6   to it and it just did not interact with that loan any further.

7   Q.   So following the date of sale which is listed here as

8   December 30th, 2002, were you able to uncover any documents or

9   other evidence that would suggest that Lehman had anything else

10  to do with this loan?

11  A.   No, I searched not only in this system but we have just

12  electronic archives that we maintain postpetition, did a search

13  for them for both the property address and the loan number, and

14  I was not able to locate any further documentation or any

15  further records.

16          MR. WIN:  Thank you.

17          THE COURT:  I have a question Mr. Glanz.  Are there

18  any records regardless of whether it's with reference to this

19  loan that Lehman maintains that purport to connect the

20  insurance contracts or derivative contracts with mortgage loans

21  that had been originated by BNC at any time?

22          THE WITNESS:  Not that I'm aware of.

23          THE COURT:  All right.  Thank you.  Ms. Focht, do you

24  have any questions you would like to ask of Mr. Glanz?

25          MS. FOCHT:  Your Honor, I don't want to, I believe

Page 24

1   that I misunderstood what was going on, but I could barely hear

2   him, I'll just say that and [indiscernible].  The court

3   reporter probably did and I can listen to it later on.

4           THE COURT:  We're unable to hear you.  We're unable

5   to hear you in a manner sufficient to record what you're saying

6   on the record of this hearing.  Are you speaking on a regular

7   land line?

8           MS. FOCHT:  Yes.

9           THE COURT:  Can you please speak up as, I don't want

10  you to scream into your phone and I'm not suggesting that it's

11  your phone's fault, but our equipment here is not picking you

12  up very clearly.

13          MS. FOCHT:  Thank you, Your Honor.  I was wondering

14  if he said that there were no records.  Is that what he was

15  saying, he had no records?

16          THE COURT:  He's saying that the only records that

17  relate to your loan within the entire data entry system

18  maintained by Lehman Brothers is a one line statement which

19  reads, if you don't have it in front of you, buyer, the street,

20  that means the loan was sold to an entity, a financial

21  institution, or a securitization trust or some third party that

22  is not Lehman related, that's what that term, the street,

23  means.  There's a loan I.D. number which is 107127821; there's

24  an address, 530 Loral Road; there's a city, Nokomis, Florida;

25  there's a zip code, 34275; there's a servicer listed, Option

Page 25

1   One Mortgage is the name of the servicer; there's a sold

2   settled date which is 12/30/02.  And there's another line, the

3   last line it says lien position and it says one, I assume that

4   means it's a first lien mortgage.  Is that right, Mr. Glanz?

5            MR. GLANZ:  Correct, Your Honor.

6            THE COURT:  All right.  So that's the only

7   information that is available in the Lehman system.  I also

8   asked Mr. Glanz a much more general question which was whether

9   regardless of whether we're talking about your loan, but

10  talking about all loans that may have been originated by BNC to

11  any and all borrowers that may have obtained financing through

12  that source, did Lehman Brothers maintain any records that were

13  identified as either insurance contracts or derivate contracts

14  that would be identified to a particular loan.  And the answer

15  was no.  That means based upon this inquiry that I'm satisfied

16  that there is no discovery to be had here because there are no

17  documents and I am satisfied that Mr. Glanz is a credible and

18  responsible witness who is able to provide information

19  concerning the records of Lehman Brothers.

20           Is there anything more that you, however, would wish

21  to ask Mr. Glanz?

22           MS. FOCHT:  Yes, Your Honor, thank you.  I am blaming

23  myself because I have completely different paperwork

24  [indiscernible] and it doesn't name Option One and I'm just

25  wondering is there another person I can speak to who would have

Page 26

1   access to records and who was providing records to Wells Fargo

2   [indiscernible] or any other source regarding Care Bank,

3   Capital Corp, regarding Aurora Loan Services, regarding Lehman

4   Capital, which is a division of Lehman Brothers Holdings Inc.,

5   and that would have been dated as of September 1st, 2002

6   [indiscernible] servicing agreement.

7           THE COURT:  Mr. Glanz, do you understand the

8   question?

9           MR. GLANZ:  I'm not entirely sure what the question

10  for me is, Your Honor.

11          THE COURT:  Ms. Glanz, excuse me, Ms. Focht, do you

12  have the ability to travel to New York to participate in a

13  further hearing because I find that unless we're able to fix

14  our equipment that your participation by telephone is

15  insufficient for our purposes to be able to hear and respond to

16  what you have to say.  I want you to have a full and fair

17  hearing, but I must tell you, I don't think that at least I'm

18  able to understand all that you're trying to do here.  It may

19  be that you are seeking discovery unrelated to the bankruptcy

20  cases and if that's true, that's not anything you'll be able to

21  get through this bankruptcy court.

22          I also have an understanding that the property in

23  question has been foreclosed, that you mentioned in your last

24  question the financial institution Wells Fargo.  I understand

25  that Wells Fargo was a trustee for securitization trust that

Page 27

1   ending up holding the mortgage that was originated by BNC.  But

2   this witness is not in a position to talk about documentation

3   that belongs to other financial institutions, nor could any

4   witness from Lehman Brothers be in a position to talk about

5   such documentation.  And I am frankly concerned that you may be

6   trying to use the bankruptcy process for a purpose that it is

7   not intended to be used for.  It is not a means to obtain third

8   party discovery in connection with litigation claims that you

9   may in fact have against third parties.  I make no comment with

10  respect to that.  But this is probably the wrong forum in which

11  to pursue such objectives.  Are you still there?

12          MS. FOCHT:  Yes, I'm here.

13          THE COURT:  Is there any other question?  First of

14  all, maybe you can restate your question for Mr. Glanz in a way

15  that he can understand it, and then he can provide you with an

16  answer.

17          MS. FOCHT:   Thank you.  My questions is this.  As I

18  stated they're down here collecting on the wrong

19  [indiscernible] this case is under appeal for many reasons.  At

20  any rate, information that you provided to the Court is very

21  different than information that I was provided in discovery

22  down here, which is actually [indiscernible] and that is

23  they're collecting on the wrong loan account and this is the

24  reason why I'm requesting discovery to find out [indiscernible]

25  what and when and according to what you're sending in as a

Page 28

1    document it appears that it's showing [indiscernible] and I

2    provided evidence if you've seen the attachments where you're

3    also pointing out another [indiscernible] which I found out is

4    related to Lehman Brothers as well.  Do you understand?

5              MR. WIN:  May I jump in here, Your Honor?

6              THE COURT:  Why don't you say what you have to say.

7              MR. WIN:  Sure.  I think two things.  I mean I think

8    first thing is that Lehman Brothers is not involved in the

9    foreclosure action in Florida.  To the extent that Ms. Focht

10   believes that she has claims against the entities that are

11   involved in that action, she has a venue to raise those claims

12   which is the Florida foreclosure action.

13             And second, to the extent that she claims against

14   Aurora, Aurora is not a debtor and she's free to bring any

15   claims that she feels that she has against Aurora in the

16   appropriate state occur.  But a claim against Aurora, even if

17   such a claim existed does not create a claim against Lehman

18   Brothers Holdings Inc. or BNC or any of the other debtors.

19             THE COURT:  Let me add to what counsel just said.

20   Ms. Focht, you are not the only person who as a homeowner with

21   a mortgage that has gone into foreclosure, has sought to

22   explore whether there was any recourse in this bankruptcy case.

23   There have been a handful, not many, a handful of other

24   individuals all over the United States, perhaps three, that

25   come to mind that have similarly sought to connect their

Page 29

1    misfortunes as parties who got caught up in the mortgage crises

2    of the 2000s into some kind of right of action against Lehman

3    Brothers or Aurora.  No one has been able to demonstrate a

4    connection between Aurora and LBHI because Aurora is a

5    subsidiary of LBHI that never went into bankruptcy.  It's

6    simply not before this Court.  And claims, if any, against

7    Aurora or against third party mortgage servicers have no place

8    in this bankruptcy court.

9              So to the extent that you have a complaint against

10   Wells Fargo or any other financial institution that may have

11   had some connection to the loan after it was sold in 2002, that

12   truly has nothing to do with this bankruptcy or any of the

13   debtors that are before this Court.  And so if we were to have

14   a merit based discussion, you would lose, I regret to tell you.

15   Now let's deal with the claim.

16             MS. FOCHT:  Your Honor, may I speak?

17             THE COURT:  Excuse me?

18             MS. FOCHT:  May I speak?

19             THE COURT:  Of course.

20             MS. FOCHT:  I don't want to, I don't think that your,

21   I don't think that these, I don't [indiscernible] the way that

22   you said it.  My claim here is someone has the record and has

23   not provided them, my second claim was someone is collecting on

24   the wrong loan account, and the attorneys on the other side

25   accusing me as if I'm running in here because I'm fighting a

Page 30

```
 1   foreclosure.  I am not, they are down there collecting on the

 2   wrong loan account.  So but my other statement was that I did

 3   not realize how much evidence I need to put in all at once

 4   because it seems that [indiscernible] now I'm going by what the

 5   state court down here is notating in one of my orders and one

 6   of those orders was for me to file [indiscernible] so this gets

 7   kind of confusing to me when I'm being you know going back and

 8   forth trying to get these records, trying to file

 9   [indiscernible] so I am doing that.  And I also [indiscernible]

10   bankruptcy from BNC.  Now I'm hearing from you and I believe

11   you are telling me I'm not [indiscernible].

12             THE COURT:  What I'm telling you is that based upon

13   the evidence that has been presented today, which points out

14   that there is no contract or derivative associated with this

15   loan that belongs to Lehman that can be tracked by Lehman, that

16   Lehman has any tie to whatsoever, not only with respect to this

17   loan but with respect to any other loans that were originated

18   by BNC.  A proof of claim against LBHI that purports to be

19   based upon some unspecified liability associated with an

20   insurance contract or a derivative contract, fails to state a

21   claim against LBHI that can be proven, and as a result I don't

22   believe there is any evidence that you could present that would

23   support that claim.

24             MS. FOCHT:  [indiscernible]

25             THE COURT:  I'm granting the objection as to this
```

1    particular claim, and we should now go to the BNC claim.

2              MS. FOCHT:  Are you also objecting to my evidence of

3    the exhibit [indiscernible].

4              THE COURT:  I don't know what you just said.

5              MS. FOCHT:  Are you also objecting to the evidence

6    [indiscernible] that Lehman Brothers has taken the funds, my

7    funds, 109,000?

8              THE COURT:  What evidence are you referring to?

9              MS. FOCHT:  I had attached an exhibit, exhibit B to

10   my creditor amended response.

11             THE COURT:  Well there are several responses.  Maybe

12   counsel for Lehman can point me in the right direction.

13             MR. WIN:  Are you referring to exhibit B which is the

14   document entitled loan disbursement instructions?

15             MS. FOCHT:  Yes, Your Honor, that's it.

16             THE COURT:  Counsel, can you comment with respect to

17   that document?

18             MR. WIN:  Yeah.  I mean I guess I have, I can

19   describe what the document looks like to me, and then I have a

20   question to Ms. Focht about her interpretation of this

21   document.  It's a document titled loan disbursement

22   instructions, and it looks to me like a document that a

23   mortgage originator would send internally in the Lehman case

24   from BNC to either Lehman Brothers Holdings Inc. or Lehman

25   Brothers Inc, it's not clear from the document, instructing the

Page 32

1    entity in this case with the funds which would be Holdings or

2    LBI to disburse the loan to the borrower, which in this case

3    would be Ms. Focht.  It's consistent with the amount of the

4    loan, which I understand to be around, approximately 10,000.

5    It looks like they started with that amount and then they

6    deduct it for title insurance, loan service, I mean sort of

7    basic origination fees.  And then at the bottom, there's the

8    amount that was actually transmitted to Ms. Focht.  But what

9    I'm hearing Ms. Focht say suggests that she's alleging that she

10   actually in taking out a loan gave Lehman Brothers money which

11   doesn't make a whole lot of sense.  So I guess I'm a little

12   confused by that.

13          Ms. Focht, is that what you're stating that you paid

14   BNC or LBHI $110,000?

15          MS. FOCHT:  Yes.  This money came from me at the

16   closing [indiscernible] reference to Lehman Brothers.

17          MR. WIN:  So at a closing of a loan transaction where

18   you were the borrower, you paid the entity $110,000?

19          MS. FOCHT:  Yes, Your Honor, and I received a problem

20   [indiscernible] 2007 is when I realized they're collecting on

21   the wrong loan, and instead of settling this matter with me,

22   they send an investigation letter which they never did anything

23   with instead filed a foreclosure behind my back, so I was stuck

24   trying to get what was going on.  I didn't know about Wells

25   Fargo, I never heard of Wells Fargo, they were the ones at the

Page 33

1    foreclosure, I can't find anything valid with them.  And at any

2    rate --

3              THE COURT:  Ms. Focht, let me ask you a question.  I

4    don't mean to interrupt you.  Was this loan from BNC a loan

5    that you took out in connection with the original purchase of a

6    home or was it a refinancing?

7              MS. FOCHT:  On this particular one this was the

8    purchase of a home.

9              THE COURT:  Was the purchase of a home.

10             MS. FOCHT:  Yes.

11             THE COURT:  And how much equity did you put down on

12    the home?

13             MS. FOCHT:  At the closing I provided them with close

14    to $110,000, that's all I remember, I was in an accident I was

15    brought into this, rushed into this [indiscernible] you know

16    suffer from post traumatic stress disorder which I still have

17    [indiscernible].

18             THE COURT:  I'm going to make a suggestion.  This is

19    an unusually difficult hearing because the individual most

20    affected by it, Deborah Focht, is participating from Florida by

21    telephone on a telephone line that is not coming through as

22    clearly as it might, and there are a number of facts being

23    alleged by Ms. Focht as a witness even though she is not

24    physically present in Court for me to judge her demeanor and

25    she also has not been sworn to tell the truth.

Page 34

1      To some extent what she is saying relates to personal

2    recollection, to some extent it relates to documents.  The

3    record I find is unclear with regard to much of what she is

4    saying to me or trying to explain.  I believe that it may be of

5    some value for Ms. Focht to have her deposition taken or for

6    her to appear in person at her expense to participate in a

7    hearing in which she will be able to present her case as a live

8    witness, with or without counsel.  I would note that as a lay

9    witness and as a party who is apparently preparing documents on

10   her own, perhaps with the assistance of a lawyer, that it is

11   very, very difficult for me to follow precisely what she is

12   saying.

13      And the last question and answer from counsel which

14   elicited the statement that this witness believes that she paid

15   Lehman directly or indirectly $110,000, if that's the right

16   number, to me sounds preposterous.  But it may be true, I have

17   no way of knowing.  It sounds as if it may be money paid in

18   connection with the acquisition of real property as the down

19   payment, the mortgage financing being part of the purchase

20   price, but I don't know if that is true, I don't know what the

21   transactional relationship might be.  For that reason, I would

22   urge that counsel for LBHI and BNC in this matter endeavor to

23   find out with greater clarity in a manner that the Court can

24   actually evaluate it, what this witness is actually saying

25   because I truly don't understand it.  And Ms. Focht, I have

Page 35

1    been sitting as the bankruptcy Judge in the Lehman Brothers'

2    case for over four and a half years, and this is about the most

3    confusing hearing I have had in all that time.

4            MS. FOCHT:  Sorry.

5            THE COURT:  I'm just telling you that it's not clear

6    to me what you're saying, what you want and the basis for it.

7    I'm also telling you that as a homeowner in Florida whose

8    mortgage ended up in a securitization pool, and who ended up in

9    foreclosure, you are one of millions of Americans who ended up

10   having their home loan mortgages originated by an originator

11   and then having the loans sold into a securitization facility

12   and then because of an inability to service the mortgage, ended

13   up in foreclosure.  I am sympathetic and I'm sorry that

14   happened to you, but that has nothing to do with LBHI.  LBHI is

15   the parent company in this bankruptcy case of a number of

16   affiliates, some in bankruptcy, many, many not in bankruptcy.

17   And one of those affiliates happens to be Aurora Bank, an

18   entity that I have heard about through this bankruptcy case,

19   but it is not a debtor, and as a result it is not before this

20   Court.

21           We need to get to the bottom of this.  If in fact

22   your proof of claim relates to money that you believe you gave

23   to Lehman Brothers, that is a very different fact pattern from

24   the one that I believe I have analyzed.  What I believe I have

25   analyzed is that you borrowed money from a mortgage originator,

Page 36

1    in this instance, BNC, that you alleged generally that the

2    transaction at the time was for reasons not clearly specified

3    to me fraudulent or improper or in some manner actionable by

4    you, and you have then sought to find avenues of liability

5    throughout the Lehman family even though the BNC loan was sold

6    many years ago into a securitization vehicle that has zero

7    connection to any Lehman entity.

8            If the facts are as I have described them, you have

9    no basis to pursue any claim in this bankruptcy case.  If the

10   facts are different you may have a basis to pursue a claim in

11   this bankruptcy case.  I need to know those facts before I can

12   take further action with regard to the two remaining proofs of

13   claim.  So we'll have further proceedings another day or this

14   will be resolved by agreement.  We're adjourned.

15

16   (Proceedings concluded at 11:01 AM)

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3                             RULINGS

4     DESCRIPTION                                              PAGE

5     HEARING re Doc #36007 – Four Hundred Third

6     Omnibus Objection to Claims                                5

7

8

9     HEARING re Doc #34303 – Plan Administrator's

10    Omnibus Objections to Claims filed by

11    Deborah Focht                              15 (partial)

12                                        Second part cont'd

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 38

1                           CERTIFICATION

2              I, Theresa Pullan, certify that the foregoing is a

3    correct transcript from the official electronic sound recording

4    of the proceedings in the above-entitled matter.

5

6    AAERT Certified Electronic Transcriber CET**00650

7    Theresa Pullan

8    April 26, 2013

9

10

11

12

13

14

15

16

17

18

19

20

21

22   Veritext

23   200 Old Country Road

24   Suite 580

25   Mineola, NY  11501

**EXHIBIT B**

DEBORAH E.  FOCHT
1613 INGRAM AVE.
SARASOTA, FL 34232

DEBORAH E. FOCHT
530 LAUREL ROAD
NOKOMIS, FL