**DECHERT LLP**
Glenn E. Siegel
Mauricio A. España
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
: 
In re: : Chapter 11
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
---------------------------------------------------------------X
: 
LEHMAN BROTHERS HOLDINGS INC., : Adv. Pro. No. __-__
: 
Plaintiff, :
: 
against :
: 
SYNCORA GUARANTEE INC., :
: 
Defendant. :
---------------------------------------------------------------X

**COMPLAINT SEEKING A DECLARATORY JUDGMENT THAT**
**SYNCORA GUARANTEE INC.'S CLAIM NUMBER 66099 IS**
**<u>DISALLOWED AND/OR SUBORDINATED</u>**

Lehman Brothers Holdings Inc. ("LBHI" or the "Debtor"), as Plaintiff in the above-captioned adversary proceeding, by and through its undersigned counsel of record, as and for its complaint (the "Complaint") against Syncora Guarantee Inc. ("Syncora" or the "Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1. LBHI seeks to disallow the contingent portions of, and subordinate the remainder of, Syncora's proof of claim numbered 66099 (the "Syncora Claim") against LBHI in the above-captioned, jointly administered cases. A copy of the Syncora Claim is attached hereto as Exhibit A.

2. Syncora, formerly known as XL Capital Assurance Inc., is a financial-guaranty insurance company that insured residential mortgage-backed securitization trusts, including the securitization transaction known as GreenPoint Mortgage Funding Trust 2006-HE1, Home Equity Loan Asset-Backed Notes, Series 2006-HE1 (the "Transaction") which is the subject of the Syncora Claim. Syncora sold insurance to the Trust (defined below) and provided an unconditional, irrevocable guarantee of payments of principal and interest to Investors (as defined below).

3. The Trust suffered a considerable decline of cash flows which caused shortfalls in its ability to make payments of principal and interest to Investors. As a result, the Trustee submitted claims to Syncora under the Policy (as defined below) for amounts equal to the shortfall in payments to the Investors.

4. Syncora has now filed the Syncora Claim, seeking amounts that, to date, Syncora has paid to the Trust, as well as amounts that it *may pay* to the Trust in the future, *i.e.*, the Contingent Amounts (as defined below). Through the Syncora Claim, Syncora seeks to have the

Court treat its *present* and *future* (if Syncora makes further payments to the Trust) reimbursement claims against LBHI *pari passu* with the claims of the Investors. Thus, Syncora is directly competing with the Investors, the beneficiaries of the Policy, over the limited proceeds of LBHI's estate.

5. The portion of the Syncora Claim that constitutes Contingent Amounts should be disallowed pursuant to section 502(e)(1)(B) of Title 11 of the United States Code (the "Bankruptcy Code"). Any portion of the Syncora Claim that is allowed should be subordinated under (i) section 509(c) of the Bankruptcy Code and (ii) the "make whole" doctrine.

## PARTIES

6. LBHI is the Plaintiff in this adversary proceeding.

7. Defendant Syncora is a New York corporation with its principal place of business at 135 West 50th Street, New York, New York 10020. Upon information and belief, Syncora provides credit enhancement for the obligations of debt insurers, including guarantees of asset-backed securities.

## JURISDICTION

8. This adversary proceeding is brought pursuant to Federal Rule of Bankruptcy Procedure 7001, Sections 502 and 509 of the Bankruptcy Code, and applicable state law.

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

10. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. This adversary proceeding is a core proceeding as that term is defined at 28 U.S.C. § 157(b)(2).

12. This Court may enter a final judgment on this Complaint.

**FACTUAL ALLEGATIONS**

13.     LBHI incorporates the allegations set forth in paragraphs 1 through 12 above as if fully set forth herein.

**The Transaction**

14.     The Transaction is governed by a set of inter-related agreements (the "Transaction Documents"), which include, among others, the Indenture (defined below), the Assignment and Assumption Agreement (defined below), the I&I Agreement (defined below), the Policy (defined below), the Trust Agreements (defined below), and the Transfer and Servicing Agreement (defined below).

15.     Prior to September 15, 2008 (the "Petition Date"), GreenPoint Mortgage Funding, Inc. ("GreenPoint") originated mortgage loans. Certain of those loans originated by GreenPoint were purchased by Lehman Brothers Bank FSB (the "Bank") pursuant to certain purchase agreements. Subsequently, the Bank assigned certain of those loans (the "Mortgage Loans") to LBHI pursuant to an Assignment and Assumption Agreement, dated as of August 1, 2006 by and between the Bank, as assignor, and LBHI, as assignee (the "Assignment and Assumption Agreement").

16.     The Mortgage Loans were subsequently transferred to GreenPoint Mortgage Funding Trust 2006-HE1 (the "Trust") pursuant to a Transfer and Servicing Agreement, dated as of August 1, 2006 by and among the Trust, as issuer, Structured Asset Securities Corporation ("SASCO"), as depositor, GMAC Mortgage Corporation ("GMACM"), as servicer, and U.S. Bank National Association, as indenture trustee (the "Transfer and Servicing Agreement"), a copy of which is attached hereto as Exhibit B. The Trust then issued mortgage-backed notes which were secured by the Mortgage Loans. The Trust is governed by an Indenture, dated as of

3

August 1, 2006 by and between the Trust, as issuer, and U.S. Bank National Association ("Trustee"), as indenture trustee (the "Indenture"), a copy of which is attached hereto as Exhibit C. The Indenture provides for, among other things, the issuance of Class Ax notes (the "Class Ax Notes") and Class Ac notes representing indebtedness of the Trust, each containing $1,331,838,000 and $500,000,000 in aggregate principal amount, respectively.

**Syncora's Policy**

17. At the time of the Transaction, Syncora entered into an Insurance and Indemnity Agreement, dated as of August 28, 2006 by and among Syncora, as insurer, LBHI, as sponsor, SASCO, as depositor, the Trust, as issuer, GMACM, as servicer, and U.S. Bank National Association, as indenture trustee (the "I&I Agreement"), a copy of which was attached to the Syncora Claim as Exhibit 1. Syncora also issued a financial guaranty insurance policy, effective as of August 28, 2006 to the Trustee (the "Policy"), a copy of which is attached hereto as Exhibit D.

18. Pursuant to the Policy, in consideration of insurance premiums, Syncora provided an unconditional, irrevocable guarantee that investors in Class Ax Notes (the "Investors") would receive the promised payments of principal and interest on the Class Ax Notes when due regardless of any shortfall in cash flow that the Trust may experience.

19. After the Policy was issued, many of the Mortgage Loans went into payment default. Such payment defaults caused a considerable decline of cash flows, *i.e.*, the source of payments to the Trust, and ultimately caused a shortfall in the Trust's payments of principal and interest to the Investors. As a result, the Trustee submitted claims to Syncora under the Policy for amounts equal to the shortfall in payments to the Investors.

20.     Upon information and belief, as of the date hereof, Syncora has paid approximately $510 million under the Policy.

### The Syncora Claim

21.     On January 13, 2010, Syncora filed the Syncora Claim against LBHI. The Syncora Claim amended and superseded Syncora's previous proof of claim against LBHI which was filed on September 16, 2009 and numbered 13909.[1]

22.     In the Syncora Claim, Syncora asserts a breach of contract and indemnification claim in an amount not less than one billion three hundred thirty-one million eight hundred and thirty-eight thousand dollars ($1,331,838,000.00).

23.     More specifically, Syncora seeks reimbursement from LBHI pursuant to Section 3.04(a) of the I&I Agreement for, among other things, all claims arising out of GreenPoint's and LBHI's breach of any representation, warranty, or covenant (the "Representations and Warranties") under any of the Transaction Documents to which Syncora is a party and any untrue or allegedly untrue statement of material fact contained in certain operative documents and registration statements, including the prospectus or prospectus supplement. *See* Exhibit A, at Exhibit A, ¶ 8.

24.     As a result of GreenPoint's alleged breaches of Representations and Warranties, and because LBHI allegedly remade those same Representations and Warranties, Syncora seeks

---

[1]     Proof of claim number 13909 was subsequently expunged from LBHI's claims registry. Prior to the filing of this Complaint, LBHI filed an objection to the Syncora Claim. *See* Case No. 08-13555, Docket No. 20087. That objection is presently scheduled for consideration by the Court on June 13, 2013. LBHI reserves any and all of its rights to be heard in connection with that objection, as well as its rights to raise supplemental and additional legal and factual arguments in connection therewith. Nothing in this Complaint or any other pleading filed by LBHI in this adversary proceeding shall be deemed to be a waiver of any rights and/or defenses with respect to the Syncora Claim, including the right to seek to consolidate such objection and this adversary proceeding, nor should this Complaint be deemed to be a modification or withdrawal of that objection.

reimbursement from LBHI for the total amount of claims that have been, or may be, submitted to Syncora under the Policy. *Id.* at ¶ 11-12.

25. Pursuant to Section 3.03(d) of the I&I Agreement, Syncora also asserts a claim for interest on all amounts sought from LBHI pursuant to either Section 3.03(b) or Section 3.04(a) of the I&I Agreement. *Id.* at ¶ 12. In addition, Syncora asserts claims for "breach, indemnity, damages and otherwise, in connection with the Transaction arising under the Transaction documents or under applicable law, including (without limitation) state and federal securities laws and the common law." *Id.* at ¶ 13.

26. Essentially, the amounts claimed in the Syncora Claim fall into two baskets: (i) amounts for payments that Syncora has allegedly paid under the Policy (the "Covered Losses"), and (ii) hypothetical amounts that Syncora may be obligated to pay in the future (the "Contingent Amounts," and together with the Covered Losses, the "Total Loss Claim").

**Trustee's Proof of Claim**

27. On September 21, 2009, the Trustee, in its capacity as indenture trustee under pertinent trust agreements (the "Trust Agreements") in respect of numerous trusts, including GreenPoint Mortgage Funding Trust 2006-HE1, filed a proof of claim against LBHI, numbered 20587 (the "Trustee Claim"), a copy of which is attached hereto as Exhibit E.[2]

---

[2] The Trustee filed the Trustee Claim in its capacity as trustee in respect to nine trusts. *See* Exhibit E at Addendum. The Trustee Claim relates to the securitization of mortgage loans under the GreenPoint Funding Trust series of trusts. LBHI does not admit or concede that the Trustee has a valid claim. The Trustee Claim is subject to a prior pending objection, and LBHI reserves the right to be heard in connection with such objection and to object to the Trustee Claim on other and further grounds. Nothing in this Complaint or any other pleading filed by LBHI in this adversary proceeding should be deemed to be a withdrawal or modification of LBHI's objection to the Trustee Claim.

28. In the Trustee Claim, the Trustee alleged that, pursuant to the Trust Agreements, LBHI made certain Representations and Warranties regarding the Mortgage Loans to, or for the benefit of, the Trustee.

29. The Trustee alleged that certain Representations and Warranties were incorrect or untrue, and materially and adversely affected the value of the Mortgage Loans. As a result of the alleged breaches of Representations and Warranties by SASCO, as depositor, and/or LBHI, as sponsor, the Trustee asserted a claim against LBHI:

> in an amount not less than the repurchase price as and when required by the Trust Agreements and/or [certain Mortgage Loan Sale and Assignment Agreements], plus such additional amount for any other breaches of the obligations to repurchase as may exist from time to time plus interest on any past due amount…[.] (the "Put-Back Claim").

Exhibit E, at Addendum, § 2.

30. As of July 31, 2009, the Trustee asserted a repurchase claim for a total of 11,534 Mortgage Loans with a total outstanding principal balance of $647,550,226.64. *Id.* at sched. B.[3]

### Disallowance and Subordination of the Syncora Claim

31. The nature of, and purpose behind, the Transaction dictates that it would be inequitable for the Syncora Claim to be *pari passu* with the Trustee Claim to the extent the

---

[3] In addition, in order to correct missing or defective documentation in certain Mortgage Loans, the Trustee asserted a cure claim up to the lesser of the full principal amount of the Mortgage Loans containing defective documentation or the outstanding balance of the notes. *See* Exhibit E, at Addendum § 3. As of December 31, 2008, the full principal amount of the Mortgage Loan files with missing or defective documentation was $402,883,798.35. *Id.* at sched. C. Additionally, as of August 30, 2009, the outstanding balance on the notes was $647,550,226.64. *Id.* at sched. D. The Trustee, therefore, asserts a cure claim against LBHI on account of documentary exceptions in the amount of $402,883,798.35. Moreover, the Trustee asserted a contingent and unliquidated claim with respect to undiscovered missing or defective documentation. *Id.* at § 3. The Trustee also asserted indemnification claims for fees and expenses incurred by the Trustee and, as appropriate, by the master servicer, custodian, owner trustee, credit risk manager, administrator, or the Trust. *Id.* at § 6.

Trustee Claim relates to the losses incurred by the Investors. After electing to bear the risk of insuring the payments to the Investors, Syncora now seeks to shift all of its losses to LBHI and to dilute the Trust's recovery from the estate. Its attempt to dilute the Trust's recovery from the estate places Syncora directly at odds with the very Investors whose holdings it agreed to insure. Having participated in the Transaction solely for the protection of Investors, Syncora should not—and under the Bankruptcy Code cannot—seek to have this Court give equal priority to its claim and the claims of the Investors and directly compete with them for the limited assets of LBHI's estate.

32. Although Syncora has paid certain amounts to the Trust for Covered Losses, as of the date hereof, Syncora's claim against LBHI exceeds the amounts that it has paid to the Trust. Because Syncora has not paid a significant portion of the amounts for which it seeks reimbursement, those claims are contingent and should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code.

33. Moreover, any portion of the Syncora Claim that is allowed should be subordinated to the Trustee's claims under section 509(c) of the Bankruptcy Code and the make-whole doctrine to ensure that Syncora does not receive payments before the Trust's Put-Back Claim is satisfied.

### DESCRIPTION OF SYNCORA'S CLAIM FOR REIMBURSEMENT AND LIABILITY

**A.    Syncora Is Co-Liable with LBHI for a Portion of the Trust's Put-Back Claim**

34. Pursuant to the terms of the Policy, Syncora, in consideration of payments of premiums, unconditionally and irrevocably guaranteed certain payments of principal and interest to the Investors in the event that there is a shortfall in the cash flow to those Investors regardless of the cause of that shortfall.

8

35. Upon notification by the Trustee to Syncora that the funds available from payments on Mortgage Loans are inadequate to satisfy the Trust's obligations to the Investors, Syncora is required to provide to the Trustee for distribution to the Investors funds equal to the shortfall. This would include, among other things, any shortfall in cash flow to the Class Ax Notes associated with breaches of Representations and Warranties.

36. Upon information and belief, as of the date hereof, Syncora has paid to the Trust principal and interest payments of approximately $510 million pursuant to the Policy.

37. Because the Policy requires that Syncora cover any shortfall in the cash flow to the Class Ax Notes associated with breaches of Representations and Warranties, Syncora effectively guarantees payments to Investors in an amount not less than the Class Ax Notes' proportionate share of the Trustee's Put-Back Claim against LBHI.

38. The difference between the Trustee's Put-Back Claim amount and Syncora's Total Loss Claim amount is due to Syncora's alleged findings with respect to the breach rate applicable to the Representations and Warranties. Each Representation and Warranty relating to the Mortgage Loans is incorporated into the I&I Agreement for the benefit of Syncora.[4] To the extent Syncora is able to successfully assert claims for breaches of Representations and Warranties in an amount equal to the original aggregate principal amount of the Class Ax Notes, the Trustee would also be able to successfully assert a Put-Back Claim against LBHI for the same amount.[5] Therefore, the Trustee's Put-Back Claim with respect to the Class Ax Notes

---

[4] *See, e.g.*, Exhibit A, at Exhibit 1, §2.01(m) (incorporating the representations and warranties by LBHI, SASCO, and the Trust, found in, among others, the Indenture and Trust Agreement for the benefit of Syncora).

[5] LBHI does not admit or concede that Syncora has a valid claim on account of breaches of Representations and Warranties. Similarly, LBHI does not admit or concede that the Trustee's claim on account of breaches of Representations and Warranties is valid.

9

against LBHI is identical to Syncora's Total Loss Claim, and Syncora and LBHI are necessarily each liable to the Trust for the same amount. Accordingly, to the extent the Trustee's Put-Back Claim and Syncora's Total Loss Claim are valid, LBHI and Syncora share that liability to the Investors.

**B.     Syncora Asserts Claims for Reimbursement**

39.    In the Syncora Claim, Syncora alleges a claim of "not less than $1,331,838,000.00" against LBHI based on, *inter alia*: breaches by LBHI of various Representations and Warranties regarding the quality of the Mortgage Loans and the practices pursuant to which such loans were originated and underwritten and LBHI's reimbursement obligations under the I&I Agreement with respect to both its own breaches and those of GreenPoint, as originator. *See* Exhibit A, at Exhibit A, ¶ 5 & 10-12.

40.    In particular, with respect to claims purportedly related to the I&I Agreement, Syncora seeks damages for "payment and reimbursement" from LBHI pursuant to the I&I Agreement with respect to "more than $323 million in claims having been submitted to Syncora under its insurance policy for the Class Ax Notes" and "[f]uture losses to the Transaction" underlying the Class Ax Notes. These damages include LBHI's alleged liability for interest payments in connection with amounts allegedly owed by LBHI to Syncora. *See id.* at ¶ 10-12.

41.    More specifically, Syncora seeks damages with respect to its reimbursement claims in an amount equal to amounts Syncora has paid, or is expected to pay in the future, plus interest, with respect to its obligations under the I&I Agreement and other Transaction Documents. Thus, in the Syncora Claim, Syncora asserts claims for reimbursement by LBHI for amounts Syncora has paid or may pay to the Trust for the benefit of the Investors.

**C.    The Unpaid Portions of the Syncora Claim Are Contingent**

42.    Syncora asserts that it has suffered damages of "not less than $1,331,838,000.00," even though, upon information and belief, it has actually paid only approximately $510 million in claims to the Investors under the Policy.

43.    The Syncora Claim states that "[f]uture losses to the Transaction will result in Syncora's having to pay millions more." Exhibit A, at Exhibit A, ¶ 11. Additionally, Syncora asserts a claim of more than $1.3 billion based on alleged findings that its "total claims payments over the life of the Transaction *may* approach the full amount of the original aggregate principal balance of the Class Ax Notes." *Id.* (emphasis added).

44.    Because Syncora presents no evidence that it has paid the full amount of $1,331,838,000.00 to the Trust for the benefit of the Investors, the unpaid portion of Syncora's claim constitutes a contingent claim.

## CAUSES OF ACTION

### COUNT I

**Declaratory Judgment: Syncora's Contingent Claims Are
Disallowed Pursuant to 11 U.S.C. § 502(e)(1)(B)**

45.    LBHI incorporates by reference and realleges paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.    Syncora seeks reimbursement for amounts owed to the Trust for which both LBHI and Syncora are liable.

47.    Syncora's claims are contingent to the extent that Syncora seeks reimbursement for payments that Syncora has not yet made to the Trust under the Policy.

48. Syncora's claims for reimbursement of Contingent Amounts, as reflected in the Syncora Claim, should be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B).

49. Based on the foregoing, LBHI, as Debtor, requests a declaratory judgment that Contingent Amounts of the Syncora Claim are disallowed pursuant to 11 U.S.C. § 502(e)(1)(B).

## COUNT II

**Declaratory Judgment: To the Extent the Portions of the Syncora Claim Are Allowed, They Should Be Subordinated Pursuant to 11 U.S.C. § 509(c) to the Trustee's Claims on behalf of the Class Ax Notes**

50. LBHI incorporates by reference and realleges paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Syncora seeks reimbursement for amounts owed to the Trust for which both LBHI and Syncora are liable.

52. To the extent that any portion of the Syncora Claim is allowed, those portions of the Syncora Claim that seek reimbursement of Covered Losses and Contingent Amounts, as reflected in the Syncora Claim, are subordinated to the claims of Trust pursuant to 11 U.S.C. § 509(c).

53. Based on the foregoing, LBHI, as Debtor, requests a declaratory judgment that the portions of the Syncora Claim that are not disallowed, are subordinated pursuant to 11 U.S.C. § 509(c) to the claims asserted by the Trustee on behalf of the Class Ax Notes that Syncora agreed to insure.

## COUNT III

**Declaratory Judgment: To the Extent Portions of the Syncora Claim Are Allowed, They Are Subordinated Pursuant to the Make Whole Doctrine to the Trustee's Claims on behalf of the Class Ax Notes**

54. LBHI incorporates by reference and realleges paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. As between the Investors and Syncora, Syncora assumed the risk that there would be a shortfall in funds available to make payments of principal and interest to Investors.

56. Syncora has accepted premiums from the Trust in consideration of its guarantee of payments of principal and interest to the Investors.

57. In the absence of subordination, the principal purpose of the Transaction Documents, the Policy and the I&I Agreement, would be thwarted because the risk of loss would be shifted back to the Investors.

58. Pursuant to the make-whole doctrine, Syncora is not entitled to receive reimbursement for payments it makes pursuant to the Policy until the Investors are paid in full.

59. The Investors have not been paid in full.

60. Based on the foregoing, LBHI, as Debtor, requests a declaratory judgment that the portions of the Syncora Claim that are not disallowed are subordinated pursuant to the make-whole doctrine to the claims asserted by the Trustee on behalf of the Class Ax Notes that Syncora agreed to insure.

**RELIEF REQUESTED**

WHEREFORE, the Debtor respectfully requests:

    (i)    disallowance of the portions of the Syncora Claim that are contingent pursuant to 11 U.S.C. § 502(e)(1)(B);

    (ii)    entry of an order declaring that the allowed portions of the Syncora Claim are subordinated to the claims asserted by US Bank in the Trustee Claim; and

    (iii)    such other relief as the Court deems just and proper under the circumstances.

Dated: May 2, 2013
New York, New York

/s/   Glenn Siegel
Glenn E. Siegel
Mauricio A. España
DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Email: glenn.siegel@dechert.com
       mauricio.espana@dechert.com

*Attorneys for*
*Lehman Brothers Holdings Inc.*