UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr.P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| **Javano Management, L.L.C.** | **RBS Securities Inc.** |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:

    P.O. Box 6934
    New York, New York 10150
    E-mail: info@javanomgmt.net
    Phone: N/A
    Last Four Digits of Acct #: N/A

With a copy to:
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Attention:  Andrew N. Rosenberg
Phone: (212) 373-3158
Facsimile: (212) 492-0158
E-Mail:  arosenberg@paulweiss.com

Name and Address where transferee payments should be sent (if different from above):  N/A

---

Court Claim # (if known): 35433
Total Claim Amount: $10,253,736.85

Amount of Claim as Filed with respect to ISIN XS0281184498: $1,282,117.03
Amount of Claim as Filed with respect to ISIN XS0281184498 to be Transferred:  $1,282,117.03 (or 100.00% of the Amount of Claim as Filed)

Allowed Amount of Claim with respect to ISIN XS0281184498: $1,283,031.64
Allowed Amount of Claim with respect to ISIN XS0281184498 to be Transferred:  $1,283,031.64 (or 100.00% of the Allowed Amount of Claim)

Amount of Claim as Filed with respect to ISIN XS0287989031: $1,827,016.77
Amount of Claim as Filed with respect to ISIN XS0287989031 to be Transferred:  $1,827,016.77 (or 100.00% of the Amount of Claim as Filed)

Allowed Amount of Claim with respect to ISIN XS0287989031: $1,829,115.44
Allowed Amount of Claim with respect to ISIN XS0287989031 to be Transferred:  $1,829,115.44 (or 100.00% of the Allowed Amount of Claim)

Amount of Claim as Filed with respect to ISIN
XS0287990047: $2,027,000.00
Amount of Claim as Filed with respect to ISIN
XS0287990047 to be Transferred: $2,027,000.00 (or
100.00% of the Amount of Claim as Filed)

Allowed Amount of Claim with respect to ISIN
XS0287990047: $2,028,578.67
Allowed Amount of Claim with respect to ISIN
XS0287990047 to be Transferred: $2,028,578.67 (or
100.00% of the Allowed Amount of Claim)


Amount of Claim as Filed with respect to ISIN
XS0301889779: $4,919,483.05
Amount of Claim as Filed with respect to ISIN
XS0301889779 to be Transferred: $4,919,483.05 (or
100.00% of the Amount of Claim as Filed)

Allowed Amount of Claim with respect to ISIN
XS0301889779: $4,926,899.23
Allowed Amount of Claim with respect to ISIN
XS0301889779 to be Transferred: $4,926,899.23 (or
100.00% of the Allowed Amount of Claim)


Date Claim Filed: September 29, 2009

RBS Securities Inc.
600 Washington Boulevard
Stamford, CT 06901


**\*\*PLEASE SEE ATTACHED EXHIBITS\*\***

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____                  Date:  May 20, 2013
       Transferee/Transferee's Agent
       Andrew N. Rosenberg/Authorized Signatory

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.*

Exhibit A

Evidence of Transfer of Claim

EXECUTION COPY

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:      THE DEBTOR AND THE BANKRUPTCY COURT

1.      For value received, the adequacy and sufficiency of which are hereby acknowledged, RBS Securities Inc. ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Javano Management, L.L.C. (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the amounts specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to the claim evidenced by the Proof of Claim Number 35433 filed by or on behalf of Pyxis Finance Limited ("Predecessor") (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights, title and benefits of Seller and any prior seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or any other property, which may be paid or distributed with respect to the Purchased Claim (including for clarity, all amounts distributed on or after the date of this Agreement and Evidence of Transfer whether or not such date is before, on or after any record date with respect to an amount) or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to or evidencing the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, and any and all of Seller's right, title and interest in, to and under any right or remedy of Seller or any prior seller against any prior seller in respect of the Purchased Claim, (c) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto, and (d) any and all rights, remedies, claims and causes of actions regarding any of the foregoing; (e) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), (c), (d) and (e), the "Transferred Claims"). For the avoidance of doubt, (a) the Purchaser does not acquire any liabilities or obligations with respect to the Transferred Claims or the Seller or any prior seller and (b) the Transferred Claims do not include the right to receive any distribution made by the Debtor to Predecessor prior to the date of this Agreement and Evidence of Transfer.

The Purchased Claim was transferred from Predecessor to Seller as evidenced at docket #37186 in the Proceedings.

2.      Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) based on the truth and accuracy of the representations and warranties given to Seller by Predecessor (the "Predecessor Reps"), Seller owns and has good legal and marketable title to the Transferred Claims, free and clear of any and all liens, claims, objections, set-off rights, security interests, participations, factoring agreements or encumbrances created or incurred by Seller or against Seller and all filings required to evidence Seller's title to the Transferred Claim have been duly and timely filed with the Court; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; (f) the Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will give rise to any setoff, defense or counterclaim or that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsubordinated unsecured claims; (g) Seller has delivered to Purchaser a true and correct copy of the Notice of Proposed Allowed Claim Amount received by Seller, dated August 24, 2011, which relates to the Proof of Claim, and as of the date hereof, Seller has not received any revised Notice of Proposed Allowed Claim

Amount; (h) solely to the extent and in the form delivered to Seller by Predecessor, Seller has delivered to Purchaser a true and correct copy of each remittance notice received by Predecessor in connection with previous distributions made by the Debtor in respect of the Transferred Claims on or about October 1, 2012 and April 4, 2013; (i) to the best of its knowledge, and based on the truth and accuracy of the Predecessor Reps, there are no objections to the Transferred Claims and all documents provided to Purchaser by Seller are true, accurate and complete copies of such documents; (j) all predecessor agreements are substantially similar (and similar in all material respects) to this Agreement, and all such predecessor agreements contain representations, warranties, covenants, agreements and indemnities from the seller to the purchaser that are not materially less favorable than those contained herein; and (k) to the best of its knowledge, no distributions, proceeds, assets, cash or other amounts have been received by Seller or (based on the truth and accuracy of the Predecessor Reps) prior seller in respect of the Transferred Claims as of the date of this Agreement and Evidence of Transfer, other than the distributions set forth in the predecessor document between Seller and Predecessor and distributions made in respect of the Purchased Security on or around May 8, 2013.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives, with respect only to the Transferred Claims, to the fullest extent permitted by law any notice or right to receive notice of a hearing with respect to such transfer pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, that result from Seller's breach of its representations, warranties, covenants and agreements made herein.

5.      Seller shall promptly (but in any event by no later than three (3) business days after receipt or full execution of this Agreement and Evidence of Transfer of Claim, whichever is later) remit any payments, distributions or proceeds received by Seller after April 19, 2013 on account of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, (but in any event on no later than the third (3rd) business day following the date hereof), to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security. Seller shall act or omit to act with respect to the Transferred Claims solely to the extent reasonably directed by Purchaser.

6.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered (including, on Seller's part, causing any prior seller to execute or deliver), all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions (including, on Seller's part, causing any prior seller to deliver distributions and proceeds received by any prior seller and to act) and other actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim. Seller agrees that all distributions, amounts, proceeds, assets, cash and other property received by Seller or any prior seller on or after the date of this Agreement and Evidence of Transfer (whether or not such date is before, on or after any record date for such amounts) are for the account of Purchaser, and at the election of the Purchaser, (i) the Purchaser may net, setoff and reduce the purchase price payable by it and any other amounts owed by it in respect of the Transferred Claims against the

distributions, assets, cash, property and amounts payable by Seller to it in respect of distributions, assets, cash, property and amounts received by Seller on and after the date of this Agreement and Evidence of Transfer, or (ii) the Seller shall pay such amounts received by Seller on or after the date of this Agreement and Evidence of Transfer in respect of the Transferred Claims to the account information provided to it by Purchaser on the date of this Agreement.

7.    Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 20 day of May, 2013.

RBS SECURITIES INC.                          JAVANO MANAGEMENT, L.L.C.


By:                                          By:
Name:                                        Name: Andrew N. Rosenberg
Title:   KAREN BREWER                        Title: Authorized Signatory
         DIRECTOR

600 Washington Boulevard                     P.O. Box 6934
Stamford, Connecticut 06901                  New York, NY 10150
                                             info@javanomgmt.net

distributions, assets, cash, property and amounts payable by Seller to it in respect of distributions, assets, cash, property and amounts received by Seller on and after the date of this Agreement and Evidence of Transfer, or (ii) the Seller shall pay such amounts received by Seller on or after the date of this Agreement and Evidence of Transfer in respect of the Transferred Claims to the account information provided to it by Purchaser on the date of this Agreement.

7.    Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 20 day of May, 2013.

RBS SECURITIES INC.                          JAVANO MANAGEMENT, L.L.C.


By: _____            By: _____
Name:                                                    Name: Andrew N. Rosenberg
Title:                                                      Title: Authorized Signatory

600 Washington Boulevard                   P.O. Box 6934
Stamford, Connecticut  06901              New York, NY 10150
                                                            info@javanomgmt.net

Schedule 1

Transferred Claims

Purchased Claims

100% of the Proof of Claim relating to ISIN XS0281184498, which is equal to $1,283,031.64 as allowed pursuant to the Notice of Proposed Allowed Claim Amount for the Proof of Claim.

100% of the Proof of Claim relating to ISIN XS0287989031, which is equal to $1,829,115.44 as allowed pursuant to the Notice of Proposed Allowed Claim Amount for the Proof of Claim.

100% of the Proof of Claim relating to ISIN XS0287990047, which is equal to $2,028,578.67 as allowed pursuant to the Notice of Proposed Allowed Claim Amount for the Proof of Claim.

100% of the Proof of Claim relating to ISIN XS0301889779, which is equal to $4,926,899.23 as allowed pursuant to the Notice of Proposed Allowed Claim Amount for the Proof of Claim.

Lehman Programs Securities to which Transfer Relates

| ISIN/CUSIP | Issuer | Guarantor | Principal/ Notional Amount | Allowed Amount |
|---|---|---|---|---|
| XS0281184498 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | HKD 10,000,000.00 | USD 1,283,031.64 |
| XS0287989031 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | HKD 14,250,000.00 | USD 1,829,115.44 |
| XS0287990047 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | USD 2,027,000.00 | USD 2,028,578.67 |
| XS0301889779 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | HKD 38,370,000.00 | USD 4,926,899.23 |

<u>Exhibit B</u>

Proof of Claim

United States Bankruptcy Court/Southern District of New York

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**LEHMAN SECURITIES PROGRAMS PROOF OF CLAIM**

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)   0000035433

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Pyxis Finance Limited
by HSBC Trustee (C.I.) Limited (as attorney)
P.O. Box 88, 1 Grenville Street, St Helier, Jersey JE4 9PF, Channel Islands
Attention: Ian Graham, Senior Manager, Corporate Services

Telephone number: +44 (0) 1534 672674     Email Address: ian.r.graham@hsbcpb.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:          Email Address:

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

**Amount of Claim:** See attached _____ **(Required)**

☒ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN):** See attached _____ **(Required)**

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

See attached _____ **(Required)**

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**

See attached _____ **(Required)**

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 29 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date. September 29, 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

J F Braid

Name: Jacki Braid  Title: Manager, Corporate Services ~~Ian Graham, Senior Vice Director~~
for and on behalf of HSBC Trustee (C.I.) Limited acting as attorney of the Claimant pursuant to clause 6.11 of the Principal Trust Deed (as defined in paragraph 1 of the Annex to this Proof of Claim, a copy of which is attached as Exhibit 1).

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:                                                                                    Chapter 11

Lehman Brothers Holdings Inc., *et al.*                          Case No. 08-13555 (JMP)

                                                                                          (Jointly Administered)

                                            Debtors.
----------------------------------------------------------------X

### ANNEX TO PROOF OF CLAIM OF
### HSBC TRUSTEE (C.I.) LIMITED FOR AND ON BEHALF OF PYXIS FINANCE
### LIMITED AS CREDITOR

1.    <u>Claimant</u>.  HSBC Trustee (C.I.) Limited ("HSBC"), acting as attorney of Pyxis

Finance Limited  (the "Claimant") pursuant to the power of attorney granted by the Claimant to

HSBC under clause 6.11 (*Attorney*) of the Principal Trust Deed dated October 9, 2002 (the

"Principal Trust Deed") between the Claimant and HSBC, hereby files the accompanying proof

of claim (the "Proof of Claim") on behalf of the Claimant against Lehman Brothers Holdings Inc.

(the "Debtor"), a debtor and debtor in possession in the above-referenced chapter 11 cases.  A

copy of the Principal Trust Deed is set forth in Exhibit 1.  The Claimant holds claims against the

Debtor arising from certain transactions that occurred prior to September 15, 2008 (the "Petition

Date"), as described more fully below.

2.    <u>Transactions Between the Parties</u>.  The Claimant is the holder of certain securities

issued by Lehman Brothers Treasury Co. B.V. (the "Obligor") and guaranteed by the Debtor

(each a "Program Security" and, together, the "Program Securities") identified on the list of

Lehman Program Securities, which is available on the Debtors' website, http://www.lehman-

docket.com under the heading "Key Documents".  The International Securities Identification

Number ("ISIN") identifying each Program Security, along with the respective Euroclear Bank

electronic instruction reference number or Clearstream Bank blocking reference number and the

Clearstream Bank, Euroclear Bank or other depository participant account number relating to the Program Securities, is detailed on <u>Exhibit 2</u> attached hereto. Evidence of the ownership of the securities described in <u>Exhibit 2</u> is provided in <u>Exhibit 4</u> attached hereto. The Debtor also fully guaranteed the payment of all liabilities, obligations and commitments of the Obligor to the Claimant, pursuant to board resolutions adopted by the Executive Committee of the Debtor's Board of Directors, including but not limited to those certain resolutions adopted by unanimous written consent on June 9, 2005 and certain other guarantees extended to affiliates of the Debtor and/or Lehman related entities (the "2005 Guarantee").

3.      <u>Claim</u>. The Claimant is the holder of certain securities described more fully in <u>Exhibit 2</u> hereto and on account thereof and in accordance with the terms of the documentation relating thereto and under the 2005 Guarantee, hereby asserts a claim against the Debtor in an amount of not less than USD$10,055,616.85, <u>plus</u>, to the extent provided pursuant to the underlying documents associated with each Program Security, fees and expenses of USD$198,120 as of September 22, 2009 and all other interest, costs, fees and expenses allowed under applicable law (the "Claim"). An itemization of certain amounts comprising the Claim are set forth on <u>Exhibit 3</u> attached hereto.

4.      <u>Security Interests and Priority Status</u>. The Claim is filed as a general unsecured claim, without any prejudice to any and all rights of the Claimant to assert that any portion of the Claim is entitled to administrative priority under Sections 503 and 507 of the Bankruptcy Code.

5.      <u>Claims, Counterclaims, Setoffs and Defenses</u>. The Claim is not subject to any known claims, counterclaims, setoffs or defenses by the Debtor. The Claimant also reserves any and all rights of setoff and recoupment that the Claimant or any of its affiliates may have against the Debtor or its related entities.

2

6.      <u>Reservation of Rights</u>.  The execution and filing of this Proof of Claim is not and shall not be deemed:  (a) a waiver or release of the Claimant's rights against any other entity or person liable for all or any part of the Claim asserted herein; (b) a consent by the Claimant to the jurisdiction of this Court with respect to any proceeding commenced in this case against or otherwise involving the Claimant; (c) a waiver of the right to withdraw the reference with respect to the subject matter of the Claim, any objection or other proceedings commenced with respect thereto or any other proceedings commenced in this case against or otherwise involving the Claimant; (d) a waiver or release by the Claimant of its right to trial by jury, or a consent by the Claimant to a trial by jury, in this Court or any other court; (e) a waiver of any right to the subordination, in favor of the Claimant, of indebtedness or liens held by any creditors of the Debtor or any of its affiliates; (f) an election of remedies which waives or otherwise affects any other remedy; (g) waiver of the Claimant's rights to assert that no claims hereunder have been or may be discharged and to file other claims which are not covered by this Proof of Claim; or (h) a waiver of the Claimant's rights, if any, of arbitration, to the extent provided by any applicable agreements with the Debtor or its affiliates.

7.      <u>Amendments</u>.  The Claimant expressly reserves its right to file any separate or additional proofs of claim with respect to the Claim set forth herein or otherwise (which proofs of claim, if so filed, shall not be deemed to supersede this proof of claim unless expressly so stated therein), to amend or supplement this Proof of Claim in any respect, including with respect to the filing of an additional or amended claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of claim in respect of additional amounts or for any other reason.

3

**EXHIBIT 1**

Conformed Copy

Dated 9 October 2002

# PYXIS FINANCE LIMITED

and

# PYXIS FINANCE II LIMITED

and

# HSBC TRUSTEE (C.I.) LIMITED

# PRINCIPAL TRUST DEED

relating to the Secured Note Programme
arranged by
**LEHMAN BROTHERS ASIA LIMITED**

## Linklaters

One Silk Street
London EC2Y 8HQ

Telephone (44 20) 7456 2000
Facsimile (44 20) 7456 2222

Ref AMS/DAXL/014520575

This Principal Trust Deed is made on 9 October 2002 between:

(1)    **Pyxis Finance Limited ("PFL");**

(2)    **Pyxis Finance II Limited ("PFIIL"); and**

(3)    **HSBC Trustee (C.I.) Limited** (the "Trustee", which expression, where the context so admits, includes any other trustee for the time being of this Principal Trust Deed for any Series of Notes or other Transactions).

**WHEREAS:-**

(A)    PFL and PFIIL (in such capacity each an "Issuer" and, together with any New Issuers (as defined below), the "Issuers") each propose to issue from time to time under the Secured Note Programme arranged by Lehman Brothers Asia Limited (the "Programme") secured notes and to borrow under, buy, sell or enter into other financial transactions including, without limitation, loans, swaps and options and the incurring by the Issuer of indebtedness in forms other than secured notes, in the case of each Issuer in an aggregate nominal amount outstanding at any one time not exceeding the Programme Limit applicable to that Issuer in accordance with the Dealer Agreement.

(B)    It is intended that certain companies other than PFL and PFIIL may issue Notes pursuant to the Programme (each such company, a "New Issuer"). Pursuant to the provisions of the Master Documents (as defined below), a new company may agree to be bound by all the terms of the Programme, and thereby become a New Issuer, by the execution of a Deed of Adherence (as defined in Clause 2). It is intended that from and after the execution and delivery of a Deed of Adherence in accordance with the provisions thereof by each of the parties thereto, such New Issuer shall be bound by all the terms of the Programme and shall become and be treated as an "Issuer" for the purposes of the Programme.

(C)    The Trustee has agreed to act as trustee of this Principal Trust Deed on the following terms and conditions.

(D)    The establishment of the Programme was authorised by a resolution of the board of directors of PFL passed on 8 October 2002 and by a resolution of the board of directors of PFIIL passed on 8 October 2002.

(E)    Each Series and each other Transaction issued or entered into will be constituted in the case of Notes and secured in the case of Notes and other Transactions by a deed supplemental to this Principal Trust Deed made between the Relevant Issuer, the Trustee and (if applicable) certain other parties.

(F)    Transactions other than Notes will be limited recourse obligations secured in the manner described in the documentation relating thereto.

**This deed witnesses and it is declared as follows:**

**1      Interpretation**

    **1.1      Definitions:** Expressions defined in the Conditions and not defined herein have the meanings given to them in the Conditions when used herein. In this Principal Trust Deed:

    "**Agency Agreement**" means the agency agreement relating to the Programme dated 9 October 2002 between PFL, PFIIL, HSBC Trustee (C.I.) Limited as Trustee,

---

A02127514/3.0/08 Oct 2002

HSBC Bank plc as initial Issuing and Paying Agent and the other agents mentioned in it

"**Agents**" means the Issuing and Paying Agent, the other Paying Agents, the Calculation Agent, the Registrar, the other Transfer Agents and the Custodian or any of them

"**Alternative Custodian**" means Lehman Brothers Japan Inc.

"**Bearer Note**" means a Note that is in bearer form, and includes any replacement Bearer Note issued pursuant to the Conditions and any temporary Global Note or permanent Global Note

"**Beneficiary**" means the party named as such in the Supplemental Trust Deed

"**Beneficiary Claim**" means the claims of each Beneficiary under the relevant Contract

"**Calculation Agent**" means any person named as such in the Conditions or any Successor Calculation Agent

"**Certificate**" means a registered certificate representing one or more Registered Notes of the same Series and, save as provided in the Conditions, comprising the entire holding by a Noteholder of his Registered Notes of that Series and, save in the case of Global Certificates, being substantially in the form set out in Schedule 2

"**Clearstream, Luxembourg**" means Clearstream Banking, société anonyme

"**Collateral**" means the rights, title and interest (if any) of the Relevant Issuer in and under the Securities, each Credit Support Document, each Swap and each Securities Agreement

"**Conditions**" means in respect of the Notes of each Series the terms and conditions applicable to them which shall be substantially in the form set out in Schedule 2 as modified, with respect to any Notes represented by a Global Certificate or a Global Note, by the provisions of such Global Certificate or Global Note, shall incorporate any additional provisions forming part of such terms and conditions set out in the Supplemental Trust Deed relating to the Notes of that Series and shall be endorsed on the Definitive Notes subject to amendment and completion as referred to in the first paragraph of Schedule 2 Part C and any reference to a particularly numbered Condition shall be construed accordingly

"**Contract**" has the meaning specified as such in the relevant Supplemental Trust Deed

"**Contractual Currency**" means, in relation to any payment obligation arising under any Note or other Transaction, the currency in which that payment obligation is expressed and, in relation to Clause 9, U.S. dollars or such other currency as may be agreed between the Relevant Issuer and the Trustee from time to time

"**Counterparty**" means the counterparty to any Securities Agreement as specified in the Supplemental Trust Deed

"**Counterparty Claim**" means the claims of each Counterparty under the relevant Securities Agreement

"**Coupons**" means the bearer coupons relating to interest bearing Bearer Notes or, as the context may require, a specific number of them and includes any replacement Coupons issued pursuant to the Conditions

"**Credit Support Document**" means the agreement or undertaking described as such in the Supplemental Trust Deed

"**Credit Support Provider**" means the person specified to be such in the Supplemental Trust Deed

"**Creditor A Direction**" means where sums are due to the Beneficiary and/or the Counterparty and/or the Swap Counterparty and/or the Custodian and/or the Issuing and Paying Agent (the claims in respect of which are secured) a direction in writing by any such party (unless this would in the Trustee's opinion be contrary to the interests of the holders of Notes, Coupons or Receipts)

"**Creditor B Direction**" means where sums are due to the Beneficiary and/or the Counterparty and/or the Swap Counterparty and/or the Custodian and/or the Issuing and Paying Agent (the claims in respect of which are secured) a direction in writing by any such party

"**Custodian**" means HSBC Bank plc as initial custodian under the Agency Agreement, the Alternative Custodian, and any Successor or other alternative custodian appointed pursuant to the terms of the Agency Agreement with the prior approval of the Trustee

"**Custodian Claim**" means the claims of the Custodian for reimbursement of payments properly made by it to any person of sums receivable in respect of the Collateral

"**Custody Agreement**" means the agreement entered into in relation to any Transaction by the Relevant Issuer, the Trustee and the Custodian substantially in the form of Schedule 9 to the Agency Agreement

"**Dealer Agreement**" means the Dealer Agreement relating to the Programme dated today between PFL, PFIIL, Lehman Brothers Asia Limited as arranger of the Programme, Lehman Brothers Commercial Corporation Asia Limited as dealer and the other dealers and arrangers named in it or appointed under it

"**Definitive Note**" means a Bearer Note in definitive form having, where appropriate, Coupons, Receipt(s) and/or a Talon attached on issue and, unless the context requires otherwise, means a Certificate (other than a Global Certificate) and includes any replacement Note or Certificate issued pursuant to the Conditions

"**Euroclear**" means Euroclear Bank S.A./N.V. as operator of the Euroclear System

"**Event of Default**" means an event described in Condition 13 in relation to which the Trustee has given notice to the Relevant Issuer resulting in the Notes becoming due and payable

"**Exchangeable Bearer Note**" means a Bearer Note that is exchangeable in accordance with its terms for a Registered Note

"**Extraordinary Resolution**" has the meaning set out in Schedule 3

"**Extraordinary Resolution Direction**" means a direction by an Extraordinary Resolution of Noteholders

"**Global Certificate**" means a Certificate substantially in the form set out in Schedule 1 Part C representing Registered Notes of one or more Tranches of the same Series that are registered in the name of a nominee for Euroclear, Clearstream, Luxembourg and/or any other clearing system

"**Global Note**" means a temporary Global Note and/or, as the context may require, a permanent Global Note

"**holder**" in relation to a Note, Receipt, Coupon or Talon, and "**Couponholder**" and "**Noteholder**" have the meanings given to them in the Conditions

"**Holder Request**" means a request in writing by the holders of at least one-fifth in aggregate nominal amount of the Notes then outstanding

"**Issue Date**" means, in relation to each Tranche, the date on which the Notes of that Tranche have been issued or, if not yet issued, the date agreed for their issue between the Relevant Issuer and the Relevant Dealer(s) and, in relation to each other Transaction, the date on which such Transaction is entered into

"**Issuing and Paying Agent**" means the person named as such in the Conditions or any Successor Issuing and Paying Agent in each case at its specified office

"**Issuing and Paying Agent Claim**" means the claims of the Issuing and Paying Agent for reimbursement of payments properly made by it to any person in discharge of an Obligation

"**Listing Agent**" means any listing agent or sponsor appointed in relation to any listing of any Notes on any Stock Exchange

"**Master Documents**" means this Principal Trust Deed, the Agency Agreement, the Dealer Agreement, the Procedures Memorandum, any custody agreement entered into pursuant to Clause 3.4 of the Agency Agreement and any calculation agency agreement entered into pursuant to Clause 3.6 of the Dealer Agreement

"**Mortgaged Property**" means the assets and contractual rights in respect of the agreements comprising the mortgaged property on which each Transaction is secured, all as specified in the Supplemental Trust Deed

"**Noteholder Claim**" means the claims of the Noteholders and Couponholders rateably in respect of the Notes, Coupons and Receipts

"**Notes**" means the secured notes to be issued under the Programme

"**Obligee**" means each person that is entitled to the benefit of the obligations and duties of the Relevant Issuer pursuant to a Transaction other than an issue of Notes, such obligations and duties being subject to Security for the benefit of each such person

"**Offering Circular**" means the Offering Circular prepared in connection with the Programme dated 9 October 2002 including all amendments thereto or replacements therefor and including, in relation to each Series of Notes, the Offering Circular Supplement relating to such Series and, in relation to the accession of any New Issuer to the Programme, the respective supplemental Offering Circular

required to be published pursuant to Clause 2.3 of the Dealer Agreement in connection therewith

"**Offering Circular Supplement**" means, in relation to a Tranche, an offering circular supplement, supplemental to the Offering Circular specifying the relevant issue details of such Tranche, substantially in the form of Schedule A to the Procedures Memorandum

"**Other Creditor**" means each person that is entitled to the benefit of the obligations and duties of the Relevant Issuer under each Secured Agreement

"**outstanding**" means, in relation to the Notes, all the Notes issued except (a) those that have been redeemed in accordance with the Conditions, (b) those in respect of which the date for redemption has occurred and the redemption moneys (including all interest accrued on such Notes to the date for such redemption and any interest payable after such date) have been duly paid to the Trustee or to the Issuing and Paying Agent as provided in Clause 2 and remain available for payment against presentation and surrender of Notes, Certificates, Receipts and/or Coupons, as the case may be, (c) those that have become void or in respect of which claims have become prescribed, (d) those that have been purchased and cancelled as provided in the Conditions, (e) those mutilated or defaced Bearer Notes that have been surrendered in exchange for replacement Bearer Notes, (f) (for the purpose only of determining how many Notes are outstanding and without prejudice to their status for any other purpose) those Bearer Notes alleged to have been lost, stolen or destroyed and in respect of which replacement Notes have been issued, (g) those Exchangeable Bearer Notes that have been exchanged for Registered Notes, and (h) any Global Note to the extent that it shall have been exchanged for a permanent Global Note or for one or more Definitive Notes, in either case pursuant to its provisions

"**Pari Passu Ranking**" means in respect of any claims specified in a Supplemental Trust Deed, that any such claims shall rank rateably inter se

"**Paying Agents**" means the persons (including the Issuing and Paying Agent) referred to as such in the Conditions or any Successor Paying Agents in each case at their respective specified offices

"**permanent Global Note**" means a Global Note representing Bearer Notes of one or more Tranches of the same Series, either on issue or upon exchange of a temporary Global Note, or part of it, and which shall be substantially in the form set out in Schedule 1 Part B

"**Potential Event of Default**" means an event or circumstance that could with the giving of notice, lapse of time and/or issue of a certificate become an Event of Default

"**Procedures Memorandum**" means the document dated 9 October 2002 setting out the administrative procedures and guidelines relating to the settlement of issues of Notes amended or varied from time to time by agreement between the Issuers, the Trustee, the Permanent Dealers (as defined in the Dealer Agreement) and the Issuing and Paying Agent

"**Programme Limit**" means, in respect of each Issuer, the maximum aggregate nominal amount of Notes and other Transactions that may be issued and

outstanding at any time under the Programme, as such limit may be increased pursuant to the Dealer Agreement

**"Receipts"** means the receipts for the payment of instalments of principal in respect of Bearer Notes of which the principal is repayable in instalments or, as the context may require, a specific number of them and includes any replacement Receipts issued pursuant to the Conditions

**"Redemption Amount"** means the Final Redemption Amount, Early Redemption Amount or Optional Redemption Amount, as the case may be, all as defined in the Conditions

**"Register"** means the register maintained by the Registrar

**"Registered Note"** means a Note in registered form

**"Registrar"** means the person named as such in the Conditions or any Successor Registrar in each case at its specified office

**"Relevant Dealer"** means, in relation to any Tranche, the Dealer or Dealers with or through whom an agreement to issue Notes has been concluded, or is being negotiated, by the Relevant Issuer

**"Relevant Issuer"** means, in relation to any Tranche, the Issuer which has concluded, or is negotiating, an agreement with the Relevant Dealer(s) to issue, or which has issued, the Notes of that Tranche

**"Repayable Assets"** has the meaning given in the Conditions

**"Secured Agreements"** means each Contract, Swap and/or Securities Agreement entered into in relation to a Series of Notes

**"Securities"** means one or more transferable securities issued by or representing obligations of one or more persons as specified in the Supplemental Trust Deed

**"Securities Agreement"** has the meaning specified as such in the Supplemental Trust Deed

**"Security"** means the security constituted by the Supplemental Trust Deed and/or any additional security document specified in the Supplemental Trust Deed

**"Series"** means a series of Notes comprising one or more Tranches, whether or not issued on the same date, that (except in respect of the first payment of interest and their issue price) have identical terms on issue (including whether or not the Notes are listed) and are expressed to have the same series number

**"specified office"** means, in relation to a Paying Agent, the Registrar or a Transfer Agent the office identified with its name at the end of the Conditions or any other office approved by the Trustee and notified to Noteholders pursuant to Clause 8.1.10

**"Stock Exchange"** means the Luxembourg Stock Exchange and/or any other or further stock exchange(s) or securities market(s) on which any Notes may from time to time be listed or on which any Notes are from time to time to be listed

**"Successor"** means, in relation to an Agent such other or further person as may from time to time be appointed by the Relevant Issuer as such Agent with the written

approval of, and on terms approved in writing by, the Trustee and notice of whose appointment is given to Noteholders pursuant to Clause 8.1.10

"**Supplemental Trust Deed**" means the relevant supplemental trust deed substantially in the form set out in Schedule 5 or such other form as may be approved by the Trustee, supplemental to this Principal Trust Deed and dated the Issue Date between the Relevant Issuer, the Trustee and (if applicable) the other parties named in it and which may constitute (in the case of Notes) and secure (in the case of Notes and other Transactions) one or more Series of Notes or a Transaction

"**Swap**" means, in relation to any Series, any interest rate and/or currency and/or other exchange agreement entered into by the Relevant Issuer and a Swap Counterparty (including any guarantee given by the Swap Guarantor) in relation to that Series

"**Swap Counterparty**" means the counterparty to any Swap Agreement entered into by the Relevant Issuer in relation to that Series as specified in the Supplemental Trust Deed

"**Swap Counterparty Claim**" means the claims of each Swap Counterparty under the relevant Swap

"**Swap Guarantor**" means the party named as such in the relevant Supplemental Trust Deed

"**Talons**" mean talons for further Coupons or, as the context may require, a specific number of them and includes any replacement Talons issued pursuant to the Conditions

"**TARGET System**" means the Trans-European Automated Real-Time Gross Settlement Express Transfer (TARGET) System or any successor thereof

"**temporary Global Note**" means a Global Note representing Bearer Notes of one or more Tranches of the same Series on issue and which shall be substantially in the form set out in Schedule 1 Part A

"**Tranche**" means, in relation to a Series, those Notes of that Series that are issued on the same date at the same issue price and in respect of which the first payment of interest is identical

"**Transaction**" means any financial transaction entered into by the Relevant Issuer, including the issue of Notes but not involving the guarantee by it, or its becoming obligated for, the debts of any other person or entity, and including, without limitation, loans, swaps and options, and the incurring by the Relevant Issuer of indebtedness in forms other than the Notes, in each case where recourse in respect of such Transactions is limited to the proceeds of enforcement of the Security over the assets of the Relevant Issuer on which such Transactions are secured pursuant to a Supplemental Trust Deed in similar terms, *mutatis mutandis*, to Clause 20 of this Principal Trust Deed

"**Transfer Agents**" means the persons (including the Registrar) referred to as such in the Conditions or any Successor Transfer Agents in each case at their specified offices

"trust corporation" means a trust corporation (as defined in the Law of Property Act 1925) or a corporation entitled to act as a trustee pursuant to applicable foreign legislation relating to trustees

"Trust Deed" means this Principal Trust Deed and the relevant Supplemental Trust Deed and

"Unlisted Notes" means Notes which are not intended to be listed on any Stock Exchange and are so designated in the relevant Offering Circular Supplement.

1.2    **Construction of Certain References:** References to:

1.2.1    costs, charges, remuneration or expenses include any value added, turnover or similar tax charged in respect thereof and

1.2.2    an action, remedy or method of judicial proceedings for the enforcement of creditors' rights include references to the action, remedy or method of judicial proceedings in jurisdictions other than England as shall most nearly approximate thereto.

1.3    **Headings:** Headings shall be ignored in construing this Principal Trust Deed.

1.4    **Contracts:** References in this Principal Trust Deed to this Principal Trust Deed or any other document are to this Principal Trust Deed or those documents as amended, supplemented or replaced from time to time in relation to the Programme and include any document that amends, supplements or replaces them.

1.5    **Schedules:** The Schedules are part of this Principal Trust Deed and have effect accordingly.

1.6    **Alternative Clearing System:** References in this Principal Trust Deed to Euroclear and/or Clearstream, Luxembourg shall, wherever the context so permits, be deemed to include reference to any additional or alternative clearing system approved by the Relevant Issuer, the Trustee and the Issuing and Paying Agent.

1.7    **Contracts (Rights of Third Parties) Act 1999:** A person who is not a party to this Trust Deed has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Trust Deed.

2    **Accession**

2.1    **Deed of Adherence:** Lehman Brothers Asia Limited (the "**Arranger**") shall have the right but not the obligation to nominate, from time to time, additional companies to accede to the Programme as a New Issuer. On or prior to the first issue of any Series of Notes by a New Issuer, such New Issuer will execute a deed of adherence substantially in the form set out in Schedule 6 hereto (a "**Deed of Adherence**") pursuant to which the New Issuer will agree to be bound by all the terms of the Master Documents and any other documents executed in accordance with the Master Documents as if it were originally named as an Issuer under the Programme. From and after the execution and delivery of a Deed of Adherence as aforesaid in accordance with the provisions thereof by each of the parties thereto, such New Issuer shall become and be treated as an "Issuer" for the purposes of the Programme, the Master Documents and any other documents executed in accordance with the Master Documents and each New Issuer shall be bound by all the terms of the Programme, the Master Documents and all documents relating

thereto and each party hereto agrees that each such New Issuer shall have the benefit of all the rights and shall assume all the obligations as an Issuer under the Programme without any further formality.

**2.2**    **Rights and Liabilities of each Issuer:** The liability of each Issuer under this Trust Deed is several. Each Issuer shall be bound by this Trust Deed only in respect of any Series of Notes issued by it and/or any other Transaction entered into by it and matters relating thereto. No Issuer shall be bound by this Trust Deed in respect of any Series of Notes issued or any Transaction entered into by any other Issuer. The failure of any Issuer to perform its obligations under this Trust Deed shall not release any other Issuer from its obligations under this Trust Deed.

**3**    **Issue of Notes; Transactions and Covenant to Pay**

**3.1**    **Issue of Notes:** Each Issuer may from time to time issue Notes in Tranches of one or more Series on a continuous basis with no minimum issue size in accordance with the Dealer Agreement. Before issuing any Tranche, the Relevant Issuer shall give written notice or procure that it is given to the Trustee of the proposed issue of such Tranche, specifying the details to be included in the relevant Offering Circular Supplement. For each Series, any Notes created and issued pursuant to the provisions of this Clause shall be constituted by this Principal Trust Deed and the Supplemental Trust Deed and secured as set out in the Supplemental Trust Deed and the Relevant Issuer shall execute and deliver to the Trustee in respect of each Series such a Supplemental Trust Deed containing such provisions as the Trustee shall require. Transactions entered into by the Relevant Issuer other than Notes shall be secured as set out in the Supplemental Trust Deed and the Relevant Issuer shall execute and deliver to the Trustee in respect of any such Transaction a Supplemental Trust Deed containing such provisions as the Trustee shall require. A memorandum of every Supplemental Trust Deed shall be endorsed by the Trustee on Schedule 4 to this Principal Trust Deed and by the Relevant Issuer on the duplicate of this Principal Trust Deed.

**3.2**    **Separate Series:** Where Notes are issued or other Transactions entered into, unless for any purpose the Trustee in its absolute discretion shall determine otherwise, all the provisions of this Principal Trust Deed shall apply *mutatis mutandis* separately and independently to each Series and, where appropriate, each Transaction and in respect of each such Series the expressions "**Noteholders**", "**Certificates**", "**Receipts**", "**Coupons**", "**Couponholders**", "**Talons**", "**Collateral**", "**Credit Support Document**", "**Credit Support Provider**", "**Swap Counterparty**", "**Swap Guarantor**", "**Counterparty**", "**Beneficiary**", "**Other Creditor**", and, in respect of each such Series and each such other Transaction, "**Securities**" and "**Mortgaged Property**" together with all other terms that relate to Notes or their Conditions as to other Transactions, shall be construed as referring to those of the particular Series or other Transaction in question and not of all Series unless expressly so provided, so that each Series shall be constituted by a separate trust and that, unless expressly provided, events affecting one Series or other Transaction shall not affect any other.

**3.3**    **Covenant to Pay:** The Relevant Issuer shall on any date when any Notes become due to be redeemed, in whole or in part, unconditionally pay to or to the order of the Trustee in the Contractual Currency, in the case of any Contractual Currency other

[Note: The remainder of this Proof of Claim was redacted by Transferee due to volume, and is available from Transferee upon request.]