Page 1

1    STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-JMP

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC., et al.,

8

9              Debtors.

10

11   - - - - - - - - - - - - - - - - - - - -x

12

13                        United States Bankruptcy Court

14                        One Bowling Green

15                        New York, NY 10004-1408

16                        April 25, 2013

17                        10:00 AM

18

19   B E F O R E:

20   HON. JAMES M. PECK

21   U.S. BANKRUPTCY JUDGE

22

23

24

25   ECRO:  TIFFANY

1   HEARING re Doc #36007 – Four Hundred Third Omnibus Objection to

2   Claims

3

4

5   HEARING re Doc #34303 – Plan Administrator's Omnibus Objections

6   to Claims filed by Deborah Focht

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Theresa Pullan

1    A P P E A R A N C E S :

2

3    WEIL, GOTSHAL & MANGES LLP

4           Attorneys for Debtors

5           767 Fifth Avenue

6           New York, NY  10153

7

8    BY:   ZAW WIN, ESQ.

9

10

11    TELEPHONIC APPEARANCES:

12

13    DEBORAH E. FOCHT

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1              P R O C E E D I N G S

2          THE COURT:  Be seated please.  I understand that we

3    have a creditor participating by telephone.  I just want to

4    verify for my purposes that the telephone hookup is working,

5    because I heard that there was a volume problem earlier.  It's

6    fine?  Okay.  Thank you.

7          MR. WIN:  Good morning, Your Honor, Zaw Win, Weil

8    Gotschal and Manges for Lehman Brothers Holdings Inc.  The

9    first matter on the agenda is the Four Hundred Third Omnibus

10   Objection, which is a no liability claims objection, it's

11   listed at ECF number 36007.  And it seeks to disallow and

12   expunge certain claims for benefits and employment related

13   compensation.  The debtors received two formal and one informal

14   response to this objection.  The response of Barry J. O'Brien,

15   whose claim is claim number 32520 and the objection is listed

16   at ECF number 36386, objects to all the relief sought and has

17   been adjourned without date.

18          The second response is a response of Wendy M. Uvino,

19   she has claim number 4770, and the response is listed at 36760,

20   objects to the relief sought only with respect to a portion of

21   Ms. Uvino's claim.  After consultation with her counsel, she

22   has agreed to the disallowance and expungement of a $91,000

23   portion of her claim, and the response with respect to the

24   remaining portion of her claim has also been adjourned.

25          In addition to those two, the debtors were contacted

Page 5

1    informally by counsel to claimant William Broadbend (phonetic)

2    whose claim is claim number 65126.  He filed a claim in the

3    amount of $1,870,078.90, and the motions filed requested that

4    $1,070,000 portion of that claim be disallowed and provided

5    that an $800,078.90 of the claim was not subject to the motion.

6    Upon consultation with his counsel, the exhibit proposed order

7    was revised to reflect the disallowance of a million dollar

8    portion of the claim and to provide that an $870,078.90 portion

9    of the claim is not subject to the objection.  With the

10   incorporation of that revision, we understand that Mr.

11   Broadbend does not dispute the relief requested.

12           So we'd ask that the order only be entered only to

13   the remaining portion of the motion with the first two claims

14   being adjourned and adjustment to the third claim.

15           THE COURT:  Fine, with that understanding, I'll enter

16   the order.

17           MR. WIN:  The last matter on the agenda today is the

18   Plan Administrator's Omnibus Objection to claims filed by

19   Deborah Focht.  The objection is listed at ECF Number 34303.

20   Ms. Focht filed two responses to the Plan Administrator's

21   Objection.  The first one is listed at ECF Number 35026 and the

22   second is listed at ECF Number 36165.

23           The plan administrator has also filed a reply to Ms.

24   Focht's responses which is listed at 36737 and that reply

25   included a declaration of Daniel Glanz, Mr. Glanz is in Court

Page 6

1    today.

2            The objection relates to five proofs of claim, claim

3    numbers 34380 and 42914 which are against BNC Mortgage, 34381

4    which is against LBHI, 42915 which is against Lehman Brothers

5    over the counter derivatives, and 42916 which is against Lehman

6    Brothers derivative products.

7            As set forth in our papers, the Plan Administrator

8    has identified substantive and procedural defects to each of

9    Ms. Focht's claims.  Additionally, the Plan Administrator has

10   reserved its rights to object to Focht's claims based on other

11   defects that were not included in these papers just out of a

12   desire to keep the papers as simple as possible at this point.

13   In the interest of clarity, I propose to address three separate

14   issues separately giving Ms. Focht an opportunity to respond to

15   each issue before moving on to the next.  Does that work for

16   the Court?

17           THE COURT:  I'm sorry, what was the question?

18           MR. WIN:  I'm proposing to address three issues

19   separately.

20           THE COURT:  Yes, that's fine.

21           MR. WIN:  Okay.  Those issues are the timeliness of

22   Ms. Focht's claims; and then second Ms Focht's derivative

23   contract and insurance based claims; and third, Ms. Focht's

24   loan origination claims.  Starting out with the timeliness

25   issue --

1          THE COURT:  Before we get into the substance of the

2     argument which you plan to present in three parts, I just want

3     to verify that Ms. Focht is on the line and can hear what's

4     being said, and as a result will be in a position to make

5     responses after you've made your argument.  So I'm just

6     checking to make sure that she's here and actively

7     participating telephonically.

8          MS. FOCHT: [indiscernible] can you hear me?

9          THE COURT:  I can barely hear you.  I think we have,

10    I'm glad I asked because we have something of a problem.  Just

11    one second.  Try again.

12         MS. FOCHT:  Can you hear me now?

13         THE COURT:  Try again.

14         MS. FOCHT:  Again, can you hear me now?

15         THE COURT:  I can hear you now, but I must tell you

16    it's faint.  This is like a Verizon commercial.  Do you want to

17    try again just for testing purposes?

18         MS. FOCHT:  Yes.  Can you hear me now?

19         THE COURT:  I can hear you but you are faint.  I

20    think what, and this is certainly not your fault, but I'll

21    simply note that given the economies of having to travel in

22    person to deal with a matter of this sort, I understand why

23    you're participating by telephone.  But it is almost by

24    definition less effective than being present in person in the

25    courtroom, and we'll deal with it.  But I'm letting you know

Page 8

1   even before we get into the substance that from a technical

2   perspective, you're not coming through loud and clear, at least

3   not uniformly so.  But let's proceed with the argument.  My

4   real question was whether you can hear us clearly so that

5   you're in an position to hear counsel's argument and then be in

6   a position to respond to it.

7           MS. FOCHT:  Yes, I can hear very good.

8           THE COURT:  Okay.  Let's proceed.

9           MR. WIN:  Okay, so getting back to --

10          MS. FOCHT:  May I ask a question?

11          THE COURT:  Yes, you may ask a question.

12          MS. FOCHT:  Are you Judge Peck?

13          MR. WIN:  She asked if you were Judge Peck.

14          THE COURT:  Oh yes, I am.

15          MS. FOCHT:  Okay.  And Michael, is this the name of

16  the attorney?

17          MR. WIN:  No, my name is Zaw Win, Z-A-W last name

18  Win, W-I-N.

19          MS. FOCHT:  Okay, thank you.

20          THE COURT:  Sir, please proceed with your argument.

21          MR. WIN:  Okay.  So the first issue that I'd like to

22  discuss is the timeliness of Ms. Focht's claims.  As the Court

23  knows, the bar date in this case was established for September

24  22nd, 2009 at 5:00 p.m.  According to the time stamps inserted

25  by Epic onto the claims, two of Ms. Focht's claims were

Page 9

1    received within one day of the bar date, those are claim

2    numbers 34380 and 34381.  My administrator is not objecting to

3    the timeliness of those claims at this time.

4           The remainder of Ms. Focht's claims, 42914, 42915 and

5    42916 were received by Epic on October 23rd which is almost a

6    month after the bar date.  Nothing in Ms. Focht's papers have

7    established any basis for excusable neglect that would justify

8    the late filing of Ms. Focht's claims.  In addition, it is

9    clear that Ms. Focht had actual notice of the bar date because

10   she did file two claims that were nearly timely.  So her

11   arguments about notice of the bar date are also similarly

12   unavailing.  And because she filed those two claims that were

13   basically on time, there's really no reason that she couldn't

14   have filed the other three claims at the same time.  So the

15   plan administrator would ask that the Court disallow claims

16   42914, 42915 and 42916.

17          THE COURT:  Okay.  Ms. Focht, let's focus

18   particularly on this procedural question.  And a procedural

19   question is limited to these three claims that were filed about

20   one month after the bar date.  I have previously issued rulings

21   in this case and a written opinion dealing with the strict

22   application of the bar date to all claimants.  I'm not

23   suggesting that you need to review that opinion, but it does

24   reflect this Court's view as to the importance of the bar date

25   particularly in a case as massive as the Lehman Brothers

Page 10

1    bankruptcy cases.  So I'd like you to comment and please speak

2    up as loudly as you can for purposes of not only my ability to

3    hear but also your ability to be effectively recorded on the

4    transcript of today's hearing.  And explain if you can the

5    reason that these three claims were filed approximately one

6    month after your initial two claims.  That's I think an

7    important questions for me to have answered.

8         MS. FOCHT:  I'd like to point out that in the

9    beginning I wasn't really receiving anything and I didn't

10   understand what was going on because I never had had anything

11   to do with Lehman Brothers as far as I ever knew and that while

12   the battle was going down in the state court, I had asked for

13   discovery.  And I also asked for discovery from BNC before they

14   went into the bankruptcy court.  And all I was told was no, or

15   I can't or [indiscernible] motions to compel, and as time went

16   by information was only trickling in.  The very first time I

17   found out about Lehman Brothers was on with the letters Leh on

18   one of my exhibits, Your Honor, and I attached that to my

19   creditor's amended response to the Plan Administrator's Omnibus

20   Objections.  On it all I could go by was those three letters

21   Leh.  At that time that was probably way after [indiscernible].

22   At any rate, I still wasn't getting discovery, and later

23   towards the end of the year which was around the time that I

24   was filing that was the bar date, is when I heard about this

25   [indiscernible] from the law professor [indiscernible] he was

Page 11

1    discussing the matter with derivatives and discussing credit

2    default swaps.  And the reason why I put that in there, Your

3    Honor, was because I could not understand what was going on,

4    why these people were attacking me so much down here, and there

5    had to be a reason, it made no sense.  I already let them know

6    that they were collecting on the wrong account, they would not

7    give me discovery, a lot of the discovery until after I already

8    filed my claims into your court.  And some of that discovery

9    was false, was showing two different properties as I've been

10   saying  all along.  Now I'd like to object to the plan, the

11   Plan Administrator's reply that was given to me like two days

12   ago because --

13          THE COURT:  Can I just break?  I don't mean to break

14   in, but we really need to focus on the question of why these

15   three claims were filed one month after the initial two claims.

16   That's my question.  This has nothing to do with discovery.  It

17   has to do with whether or not you have an excuse that is

18   legally sufficient to explain why certain claims were filed

19   late.   And it appears that the first two claims were filed

20   with knowledge that there was a bar date.  I'd like a yes or no

21   answer to the following question.  Did you know that there was

22   a bar date?  That's a yes or a no.

23          MS. FOCHT:  No, Your Honor.  As soon as I found out

24   about it, I worked on it, I rushed it through and I eventually

25   had to amend it because [indiscernible].

Page 12

1            THE COURT:  I'm sorry, I didn't understand your

2    answer.  I want it to be a yes or a no.  The question is, did

3    you know that there was a bar date.

4            MS. FOCHT:  No, Your Honor.

5            THE COURT:  Okay, thank you.  And then the question

6    is, why did you not file claims 42914, 42915 and 42916 prior to

7    the bar date?

8            MS. FOCHT:  Your Honor, that was because I was

9    unaware of the other names that they had listed as

10   subsidiaries, and like I said I am unfamiliar with bankruptcy

11   proceedings.

12           THE COURT:  Okay.  Do you want to respond?

13           MR. WIN:  Yes, I mean with due respect I find the

14   answer implausible.  I mean she must have gone on the Epic

15   website to download the proof of claim form, and on the Epic

16   website was a list of all of the debtors.  So all of that

17   information was available to her when she filed the first two

18   claims, which as we've said were within one day of the bar date

19   and which we're not objecting to on the basis of timeliness at

20   this point.  She also attached to her proofs of claim

21   correspondence that she had with Epic in connection with the

22   filing of the first two claims which also suggests that she was

23   aware that there was a timeliness issue.

24           And I guess the third thing is that the legal

25   theories that she's asserted in the three claims that we are

Page 13

1   asserting are late, are identical to the legal theories that

2   she asserted in the two claims that were timely.  So really the

3   only difference between the claims that were filed within a day

4   of the bar date and the claims that were filed a month late are

5   that for two of the claims she added additional debtors, Lehman

6   Brothers OTC and Lehman DP.  And that information, all that

7   information was available to her and could have been included

8   in claims filed within, at the same time as the first two

9   claims.  So there's really no reason that I can think of that

10  she couldn't have filed all of her claims at the same time she

11  filed claim numbers 34380 and 34381.

12          And I guess the third thing is she mentioned parties

13  attacking her in Florida, and I'd just like to point out that

14  similar to many of her other allegations, those parties are not

15  before this Court, they're third parties, the parties that

16  acquired the loan after BNC sold it and they were not

17  controlled by Lehman and not doing Lehman's bidding.

18          THE COURT:  Okay.  Ms. Focht, do you have any further

19  comments with regard to the timeliness of these three claims?

20          MS. FOCHT:  Yes, Your Honor.  I would like to

21  reiterate that I'm not familiar with the bankruptcy procedures.

22          THE COURT:  If I could just interject.  Your lack of

23  familiarity with bankruptcy procedure is irrelevant to the

24  question that I proposed to you because you had sufficient

25  knowledge of bankruptcy procedure to file the earlier two

Page 14

1    claims which were a day late, but nonetheless reflected an

2    awareness that there was a date in the case that mattered.  And

3    you acknowledged that you were aware of that in my earlier

4    question.  Correct?

5            MS. FOCHT:  Yes, Your Honor, I would like to add some

6    more please.

7            THE COURT:  This is a matter of fundamental case

8    administration in every bankruptcy case, bar dates matter, and

9    there are adverse consequences to creditors that fail to file

10   their claims on or before the bar date.  It is possible to

11   argue credibly that a one month delay is excusable due to

12   excusable neglect, but it becomes almost impossible to credibly

13   make that argument when claims are filed in recognition of the

14   bar date a month before the three claims that we're now talking

15   about.

16           And so I conclude based upon our discussion which I

17   am treating as the functional equivalent of an evidentiary

18   record, that Ms. Focht had an awareness of the bar date,

19   something which she admitted in this telephone conversation and

20   attempts to explain the delay in filing the three claims

21   presently being discussed, 42914, 42915 and 42916, on the basis

22   of being unsophisticated in bankruptcy matters generally and

23   being somewhat confused.  I find that that is not a sufficient

24   reason to excuse the late filing of these three claims in light

25   of the fact that substantially similar claims were filed one

Page 15

1  month earlier against different parties.  Moreover,

2  particularly with respect to LBOTC and LBDT, there is zero

3  nexus between the facts alleged and the proof of claim and

4  these debtors.  So that even if we were to deal on the merits

5  with these claims and ignore the fact that they are untimely,

6  it is highly likely that I would find that there is no right to

7  payment in any event.

8          For that reason, the claims are all disallowed as

9  untimely and we'll proceed to deal with claims 34380 and 34381.

10         MR. WIN:  Thank you, Your Honor.  Moving on to claim

11  34381, this was a claim that was filed against Lehman Brothers

12  Holdings, Inc.  As far as I can tell, Ms. Focht's basis for

13  this claim is an allegation that LBHI held some kind of an

14  insurance policy or derivative contract that was designed to

15  pay LBHI, according to Ms. Focht, 3 million upon default of Ms.

16  Focht's loan.  As set forth in our papers, the debtors have not

17  been able to identify, and Ms. Focht doesn't identify, any

18  insurance policy or derivative contract that was directly

19  related to the loan.  And more importantly perhaps, even if

20  such an insurance policy derivative contract did exist, Ms.

21  Focht doesn't allege any basis that would establish a right to

22  payment for her from the proceeds of such insurance policy or

23  derivative contract.  So she's failed to establish a prima

24  facie case for any right to payment in connection with this

25  claim, or really even any connection between herself and these

Page 16

1   alleged financial instruments that LBHI may or may not have

2   held at the time of bankruptcy.

3           THE COURT:  Is that argument limited to the claim

4   against LBHI 34381?

5           MR. WIN:  It would also be applicable to the claims

6   against LBDT and LBOTC, but as I understand the Court has

7   already disallowed those claims.  At this point it would only

8   apply to the remaining claim against LBHI.

9           THE COURT:  And you're not making an argument at this

10  moment with respect to claim 34380 against BNC?

11          MR. WIN:  My understanding, and again it's a little

12  hard from the pleadings to specifically identify which claims

13  Ms. Focht is asserting against which debtor. but the way I

14  understand her argument is that the claims against LBHI are

15  related to the insurance policy and the derivative contract,

16  and the remaining claims that relate to the origination of the

17  loan are against BNC.  It may be that that's not her intent,

18  but based on, you know, our good faith reading of her papers,

19  that was the conclusion that we drew.

20          THE COURT:  Okay.  Let's look for an explanation from

21  Ms. Focht herself.  The claim against LBHI which we're now

22  discussing appears to be a claim based upon an insurance

23  contract or a derivatives contract.  Is that right?

24          MS. FOCHT:  Yes it would be also due to the fact that

25  there was a fraudulent transfer and fraudulent taking of the

Page 17

1   $109,000 that they took from me.  And I put that in as an

2   exhibit under my amended response to the plan, objections.

3           THE COURT:  If I could just ask a very, very basic

4   question, and if you could answer it in the simplest way that

5   you can, why do you think you have any claims against LBHI

6   inasmuch as you did not have any dealings with LBHI of any

7   sort?

8           MS. FOCHT:  Your Honor, I was just explaining that

9   the exhibit shows that Lehman Brothers took the funds, $109,000

10  from me, but I did not receive this until after, after I had

11  filed my original claim.  The only thing that I could base this

12  on is I was told to go in the Lehman Brothers because like I

13  said Leh was on the mortgage and that's all I had at that time.

14  And right now they're also sending me a new reply which I

15  wanted to object to because I did not receive this in time, it

16  just shows further inconsistencies with discovery.  So that was

17  my reason for putting in my statement [indiscernible] I needed

18  discovery in order to amend my motion and my claims properly

19  [indiscernible] before I could even start my case.  So I don't

20  know how else to do this without the record, so my request was

21  for discovery and I haven't received it, I haven't received it.

22          THE COURT:  Well, according to the papers that I have

23  reviewed that have been filed in response to your opposition to

24  the expungement of your claims, based upon a review an internal

25  review that I gather is supported by a witness here.

Page 18

1          MR. WIN:  That's correct.

2          MS. FOCHT:  Your Honor, that's the one I'm objecting

3     to.

4          THE COURT:  I'm just in the middle of speaking, so

5     for record purposes, let's just let me finish.  And then you'll

6     have a courteous opportunity to say what you need to say in

7     response.  Based upon the assertions made by a responsible

8     witness from the Plan Administrator, there are no documents

9     that are responsive to your general request, and so even if you

10    were to formally pursue discovery, the answer would be the same

11    and there is a declaration which has been submitted and the

12    witness who provided that declaration is in court today.  The

13    only question I suppose I would ask and this is a very

14    difficult matter to handle with you on the telephone speaking

15    in a manner that is still in my view quite faint relative to

16    the other volume levels of people who are appearing live in

17    Court, and that would be for Mr. Glanz to come to the podium

18    and explain in his own words the content of his declaration

19    which has been submitted in support of the reply.  It's a

20    declaration dated April 22, 2013 consisting of some 18

21    paragraphs.  But I don't know if you've seen that.  And even if

22    you have seen it, it may be that it would be useful for him to

23    explain the substance of that declaration.  And if you have

24    questions concerning his statements, you can ask those

25    questions right now, and he can then further respond.  That way

Page 19

1    in effect, you'll be getting some of the discovery that you

2    claim to require.  Would that be all right?

3           MS. FOCHT:  Excuse me, Your Honor.  Is there a time

4    span that you're supposed to provide me before I respond?

5           THE COURT:  I'm sorry, I'm not understanding you.

6           MS. FOCHT:  I just received this in the mail, so I

7    didn't get a chance to really carefully go through it, all I

8    saw was one line across the sheet here just saying

9    [indiscernible] I mean it doesn't really have a document to it,

10   it's just typed in information so I don't have any transfer

11   information on what happened at all.

12          THE COURT:  Ms. Focht, the issue here is whether you

13   have a viable claim against LBHI, that's the issue.

14          MS. FOCHT:  Okay.

15          THE COURT:  And we are going to deal with that today.

16   And we have a witness who is going to provide information to

17   you concerning the discovery that you have requested in a

18   variety of informal ways in the context of this claim objection

19   proceeding.  And I'd like you to have that information so that

20   you can be satisfied that in fact there are no documents that

21   relate to an insurance contract or derivative contract

22   applicable to your mortgage from BNC.  I'm going to ask Mr.

23   Glanz to now make a presentation for your benefit, because I

24   can read the declaration, but I think it would be useful for

25   him to explain what that declaration consists of and for you to

Page 20

1    have an opportunity if you wish to avail yourself with that

2    opportunity to ask him questions about his statements made to

3    me.  Is that all right?

4            MR. WIN:  That's all right, Your Honor.  Would it be

5    helpful if I asked him questions to elicit the testimony that

6    he included in his declaration?

7            THE COURT:  That might be a good way to develop it on

8    the record.  And if Ms. Glanz (sic) wishes to ask further

9    questions, that's fine.  But in this manner, she'll be able to

10   hear for herself what Mr. Glanz has to say in response to your

11   questions.  Why don't we do that?  And Mr. Glanz, you can sit

12   in the witness stand and we can proceed in that manner.

13                        TESTIMONY OF MR. GLANZ

14   BY MR. WIN:

15   Q.   Can you please state your name for the record?

16   A.   Daniel Glanz.

17   Q.   And can you please give us your title at Lehman Brothers?

18   A.   Vice president.

19   Q.   And can you give us a little bit of background of how long

20   you've worked at Lehman Brothers and what your job is?

21   A.   Sure.  I've been with Lehman since September of 2001.  I

22   was, I've been working in the mortgage area of Lehman's since

23   then.  Prior to bankruptcy, I was working with the information

24   technology area at Lehman Brothers where I was responsible for

25   one of the technology platforms, the platform I refer on my

Page 21

1   declaration is called Hold On Tracking (phonetic), and post

2   petition, I've been working in the group responsible for the

3   wind down and managing of the assets remaining in the mortgage

4   business.

5   Q.   What does the Hold On Tracking system do?

6   A.   The Hold On Tracking platform was built to be the system

7   of record to maintain a record of all the loans that Lehman

8   [indiscernible] purchased and either held or sold and it was a

9   place for Lehman to keep track of the loans that it owned, get

10  regular updates on their performance and ultimately track if

11  they were sold, that sale of those mortgages.

12  Q.   So is it fair to say that Lehman business people depended

13  on information that was contained in the Hold On Tracking

14  system to show things like sales or assignments of loans out of

15  the estate to third parties?

16  A.   Yes.

17  Q.   Thank you.  Attached to your declaration was a one page

18  exhibit.  Can you describe that exhibit a little bit for me?

19  A.   Sure.

20  Q.   Would it be helpful if I gave you a copy of it?

21  A.   Absolutely, just to refresh my memory.  Thank you.  The

22  exhibit attached just really just one line --

23          MR. WIN:  Excuse me for one second.  For the record,

24  I handed Mr. Glanz a document that was attached to his

25  declaration as Exhibit 1.

Page 22

1    BY MR. WIN:

2    A.     The exhibit is an extract, a report from the underlying

3    database, the Hold On Tracking.  Just a bit of background which

4    I explained as well in the declaration, Hold On tracking

5    essentially is two pieces, the database that stored data and

6    then a software application that allowed users to access the

7    data to view the data and to modify it through their ordinary

8    business dealings.  Post bankruptcy the system was shut down,

9    it was no longer in use and the database itself was maintained

10   by the estate for the purposes of research and having access to

11   those records.  That database was, what we call, it's been put

12   into a read only mode so you couldn't modify the data, all you

13   could do is read from it and generate reports from the system.

14   The record that I provided here was the only information I was

15   able to find on the loan in question.  It's a very brief

16   record, it doesn't state much.  As I mentioned as well, the

17   system, you know, as Lehman grew, as the business grew, the

18   system itself was continually evolved and improved.  In the

19   early 2000s, 2001, '02, '03, the system had, I would say a

20   somewhat more limited data than for example what you'd see in

21   the declarations that I provided for loans that were transacted

22   upon closer to petition date.  And where that manifested itself

23   here specifically in the first data field showing the page

24   where it identifies the name of the buyer there was no record

25   kept in this system specifically who the buyer was.  It just

Page 23

1    used the generic moniker, the street, which is meant to

2    identify any non-Lehman company.  So all this record is really

     th

3    telling you is that on December 30  of 2002, this loan was sold

4    and it was sold to a third party.  The name of that third party

5    was not recorded in this system, and then there were no further

6    records maintained on this loan.  Generally, once Lehman sold

7    the loan, it did not keep track of it, it had no relationship

8    to it and it just did not interact with that loan any further.

9    Q.   So following the date of sale which is listed here as

10   December 30th, 2002, were you able to uncover any documents or

11   other evidence that would suggest that Lehman had anything else

12   to do with this loan?

13   A.   No, I searched not only in this system but we have just

14   electronic archives that we maintain postpetition, did a search

15   for them for both the property address and the loan number, and

16   I was not able to locate any further documentation or any

17   further records.

18             MR. WIN:  Thank you.

19             THE COURT:  I have a question Mr. Glanz.  Are there

20   any records regardless of whether it's with reference to this

21   loan that Lehman maintains that purport to connect the

22   insurance contracts or derivative contracts with mortgage loans

23   that had been originated by BNC at any time?

24             THE WITNESS:  Not that I'm aware of.

25             THE COURT:  All right.  Thank you.  Ms. Focht, do you

Page 24

1    have any questions you would like to ask of Mr. Glanz?

2            MS. FOCHT:  Your Honor, I don't want to, I believe

3    that I misunderstood what was going on, but I could barely hear

4    him, I'll just say that and [indiscernible].  The court

5    reporter probably did and I can listen to it later on.

6            THE COURT:  We're unable to hear you.  We're unable

7    to hear you in a manner sufficient to record what you're saying

8    on the record of this hearing.  Are you speaking on a regular

9    land line?

10           MS. FOCHT:  Yes.

11           THE COURT:  Can you please speak up as, I don't want

12   you to scream into your phone and I'm not suggesting that it's

13   your phone's fault, but our equipment here is not picking you

14   up very clearly.

15           MS. FOCHT:  Thank you, Your Honor.  I was wondering

16   if he said that there were no records.  Is that what he was

17   saying, he had no records?

18           THE COURT:  He's saying that the only records that

19   relate to your loan within the entire data entry system

20   maintained by Lehman Brothers is a one line statement which

21   reads, if you don't have it in front of you, buyer, the street,

22   that means the loan was sold to an entity, a financial

23   institution, or a securitization trust or some third party that

24   is not Lehman related, that's what that term, the street,

25   means.  There's a loan I.D. number which is 107127821; there's

Page 25

1    an address, 530 Loral Road; there's a city, Nokomis, Florida;

2    there's a zip code, 34275; there's a servicer listed, Option

3    One Mortgage is the name of the servicer; there's a sold

4    settled date which is 12/30/02.  And there's another line, the

5    last line it says lien position and it says one, I assume that

6    means it's a first lien mortgage.  Is that right, Mr. Glanz?

7             MR. GLANZ:  Correct, Your Honor.

8             THE COURT:  All right.  So that's the only

9    information that is available in the Lehman system.  I also

10   asked Mr. Glanz a much more general question which was whether

11   regardless of whether we're talking about your loan, but

12   talking about all loans that may have been originated by BNC to

13   any and all borrowers that may have obtained financing through

14   that source, did Lehman Brothers maintain any records that were

15   identified as either insurance contracts or derivate contracts

16   that would be identified to a particular loan.  And the answer

17   was no.  That means based upon this inquiry that I'm satisfied

18   that there is no discovery to be had here because there are no

19   documents and I am satisfied that Mr. Glanz is a credible and

20   responsible witness who is able to provide information

21   concerning the records of Lehman Brothers.

22            Is there anything more that you, however, would wish

23   to ask Mr. Glanz?

24            MS. FOCHT:  Yes, Your Honor, thank you.  I am

25   bringing this up myself because I have completely different

Page 26

1  paperwork from another source down here in the state and it

2  doesn't name Option One and I'm just wondering is there another

3  person I can speak to who would have access to records and who

4  was providing records to Wells Fargo or Select Portfolio or any

5  other source regarding Fairbanks, Capital Corp, regarding

6  Aurora Loan Services, regarding Lehman Capital, which is a

7  division of Lehman Brothers Holdings Inc., and that would have

8  been dated as of December 1st, 2002 called a securitization

9  servicing agreement.

10         THE COURT:  Mr. Glanz, do you understand the

11  question?

12         MR. GLANZ:  I'm not entirely sure what the question

13  for me is, Your Honor.

14         THE COURT:  Ms. Glanz, excuse me, Ms. Focht, do you

15  have the ability to travel to New York to participate in a

16  further hearing because I find that unless we're able to fix

17  our equipment that your participation by telephone is

18  insufficient for our purposes to be able to hear and respond to

19  what you have to say.  I want you to have a full and fair

20  hearing, but I must tell you, I don't think that at least I'm

21  able to understand all that you're trying to do here.  It may

22  be that you are seeking discovery unrelated to the bankruptcy

23  cases and if that's true, that's not anything you'll be able to

24  get through this bankruptcy court.

25         I also have an understanding that the property in

Page 27

1    question has been foreclosed, that you mentioned in your last

2    question the financial institution Wells Fargo.  I understand

3    that Wells Fargo was a trustee for securitization trust that

4    ending up holding the mortgage that was originated by BNC.  But

5    this witness is not in a position to talk about documentation

6    that belongs to other financial institutions, nor could any

7    witness from Lehman Brothers be in a position to talk about

8    such documentation.  And I am frankly concerned that you may be

9    trying to use the bankruptcy process for a purpose that it is

10   not intended to be used for.  It is not a means to obtain third

11   party discovery in connection with litigation claims that you

12   may in fact have against third parties.  I make no comment with

13   respect to that.  But this is probably the wrong forum in which

14   to pursue such objectives.  Are you still there?

15           MS. FOCHT:  Yes, I'm here.

16           THE COURT:  Is there any other question?  First of

17   all, maybe you can restate your question for Mr. Glanz in a way

18   that he can understand it, and then he can provide you with an

19   answer.

20           MS. FOCHT:   Thank you.  My questions is this.  As I

21   stated they're down here collecting on the wrong

22   [indiscernible] this case is under appeal for many reasons.  At

23   any rate, information that you provided to the Court is very

24   different than information that I was provided in discovery

25   down here, which is actually [indiscernible] and that is

Page 28

1    they're collecting on the wrong loan account and this is the

2    reason why I'm requesting discovery to find out [indiscernible]

3    what and when and according to what you're sending in as a

4    document it appears that it's showing multiple sales and I

5    provided evidence if you've seen the attachments where you're

6    also pointing out another Note Investor as Aurora, which I

7    found out is related to Lehman Brothers as well.  Do you

8    understand?

9            MR. WIN:  May I jump in here, Your Honor?

10           THE COURT:  Why don't you say what you have to say.

11           MR. WIN:  Sure.  I think two things.  I mean I think

12   first thing is that Lehman Brothers is not involved in the

13   foreclosure action in Florida.  To the extent that Ms. Focht

14   believes that she has claims against the entities that are

15   involved in that action, she has a venue to raise those claims

16   which is the Florida foreclosure action.

17           And second, to the extent that she claims against

18   Aurora, Aurora is not a debtor and she's free to bring any

19   claims that she feels that she has against Aurora in the

20   appropriate state occur.  But a claim against Aurora, even if

21   such a claim existed does not create a claim against Lehman

22   Brothers Holdings Inc. or BNC or any of the other debtors.

23           THE COURT:  Let me add to what counsel just said.

24   Ms. Focht, you are not the only person who as a homeowner with

25   a mortgage that has gone into foreclosure, has sought to

1    explore whether there was any recourse in this bankruptcy case.

2    There have been a handful, not many, a handful of other

3    individuals all over the United States, perhaps three, that

4    come to mind that have similarly sought to connect their

5    misfortunes as parties who got caught up in the mortgage crises

6    of the 2000s into some kind of right of action against Lehman

7    Brothers or Aurora.  No one has been able to demonstrate a

8    connection between Aurora and LBHI because Aurora is a

9    subsidiary of LBHI that never went into bankruptcy.  It's

10   simply not before this Court.  And claims, if any, against

11   Aurora or against third party mortgage servicers have no place

12   in this bankruptcy court.

13           So to the extent that you have a complaint against

14   Wells Fargo or any other financial institution that may have

15   had some connection to the loan after it was sold in 2002, that

16   truly has nothing to do with this bankruptcy or any of the

17   debtors that are before this Court.  And so if we were to have

18   a merit based discussion, you would lose, I regret to tell you.

19   Now let's deal with the claim.

20           MS. FOCHT:  Your Honor, may I speak?

21           THE COURT:  Excuse me?

22           MS. FOCHT:  May I speak?

23           THE COURT:  Of course.

24           MS. FOCHT:  I don't want to, I don't think that your,

25   I don't think that these, I don't [indiscernible] the way that

Page 30

1    you said it.  My claim here is someone has the record and has

2    not provided them, my second claim was someone is collecting on

3    the wrong loan account, and the attorneys on the other side

4    confusing the issue as if I'm running in here because I'm

5    fighting a foreclosure.  I am not, they are down there

6    collecting on the wrong loan account.  So but my other

7    statement was that I did not realize how much evidence I need

8    to put in all at once because it seems that [indiscernible] now

9    I'm going by what the state court down here is notating in one

10   of my orders and one of those orders was for me to file

11   [indiscernible] so this gets kind of confusing to me when I'm

12   being you know going back and forth trying to get these

13   records, trying to file [indiscernible] so I am doing that.

14   And I also [indiscernible] bankruptcy from BNC.  Now I'm

15   hearing from you and I believe you are telling me I'm not

16   [indiscernible].

17             THE COURT:  What I'm telling you is that based upon

18   the evidence that has been presented today, which points out

19   that there is no contract or derivative associated with this

20   loan that belongs to Lehman that can be tracked by Lehman, that

21   Lehman has any tie to whatsoever, not only with respect to this

22   loan but with respect to any other loans that were originated

23   by BNC.  A proof of claim against LBHI that purports to be

24   based upon some unspecified liability associated with an

25   insurance contract or a derivative contract, fails to state a

Page 31

1    claim against LBHI that can be proven, and as a result I don't

2    believe there is any evidence that you could present that would

3    support that claim.

4              MS. FOCHT:  [indiscernible]

5              THE COURT:  I'm granting the objection as to this

6    particular claim, and we should now go to the BNC claim.

7              MS. FOCHT:  Are you also objecting to my evidence of

8    the exhibit [indiscernible].

9              THE COURT:  I don't know what you just said.

10             MS. FOCHT:  Are you also objecting to the evidence

11   [indiscernible] that Lehman Brothers has taken the funds, my

12   funds, 109,000?

13             THE COURT:  What evidence are you referring to?

14             MS. FOCHT:  I had attached an exhibit, exhibit B to

15   my creditor amended response.

16             THE COURT:  Well there are several responses.  Maybe

17   counsel for Lehman can point me in the right direction.

18             MR. WIN:  Are you referring to exhibit B which is the

19   document entitled loan disbursement instructions?

20             MS. FOCHT:  Yes, Your Honor, that's it.

21             THE COURT:  Counsel, can you comment with respect to

22   that document?

23             MR. WIN:  Yeah.  I mean I guess I have, I can

24   describe what the document looks like to me, and then I have a

25   question to Ms. Focht about her interpretation of this

Page 32

1   document.  It's a document titled loan disbursement

2   instructions, and it looks to me like a document that a

3   mortgage originator would send internally in the Lehman case

4   from BNC to either Lehman Brothers Holdings Inc. or Lehman

5   Brothers Inc, it's not clear from the document, instructing the

6   entity in this case with the funds which would be Holdings or

7   LBI to disburse the loan to the borrower, which in this case

8   would be Ms. Focht.  It's consistent with the amount of the

9   loan, which I understand to be around, approximately 10,000.

10  It looks like they started with that amount and then they

11  deduct it for title insurance, loan service, I mean sort of

12  basic origination fees.  And then at the bottom, there's the

13  amount that was actually transmitted to Ms. Focht.  But what

14  I'm hearing Ms. Focht say suggests that she's alleging that she

15  actually in taking out a loan gave Lehman Brothers money which

16  doesn't make a whole lot of sense.  So I guess I'm a little

17  confused by that.

18          Ms. Focht, is that what you're stating that you paid

19  BNC or LBHI $110,000?

20          MS. FOCHT:  Yes.  This money came from me at the

21  closing [indiscernible] reference to Lehman Brothers.

22          MR. WIN:  So at a closing of a loan transaction where

23  you were the borrower, you paid the entity $110,000?

24          MS. FOCHT:  Yes, Your Honor, and I received a problem

25  [indiscernible] 2007 is when I realized they're collecting on

Page 33

1   the wrong loan, and instead of settling this matter with me,

2   they send an investigation letter which they never did anything

3   with instead filed a foreclosure behind my back, so I was stuck

4   trying to get what was going on.  I didn't know about Wells

5   Fargo, I never heard of Wells Fargo, they were the ones at the

6   foreclosure, I can't find anything valid with them.  And at any

7   rate --

8           THE COURT:  Ms. Focht, let me ask you a question.  I

9   don't mean to interrupt you.  Was this loan from BNC a loan

10  that you took out in connection with the original purchase of a

11  home or was it a refinancing?

12          MS. FOCHT:  On this particular one this was the

13  purchase of a home.

14          THE COURT:  Was the purchase of a home.

15          MS. FOCHT:  Yes.

16          THE COURT:  And how much equity did you put down on

17  the home?

18          MS. FOCHT:  At the closing I provided them with close

19  to $110,000, that's all I remember, I was in an accident I was

20  brought into this, rushed into this [indiscernible] you know

21  suffer from post traumatic stress disorder which I still have

22  [indiscernible].

23          THE COURT:  I'm going to make a suggestion.  This is

24  an unusually difficult hearing because the individual most

25  affected by it, Deborah Focht, is participating from Florida by

Page 34

1    telephone on a telephone line that is not coming through as

2    clearly as it might, and there are a number of facts being

3    alleged by Ms. Focht as a witness even though she is not

4    physically present in Court for me to judge her demeanor and

5    she also has not been sworn to tell the truth.

6         To some extent what she is saying relates to personal

7    recollection, to some extent it relates to documents.  The

8    record I find is unclear with regard to much of what she is

9    saying to me or trying to explain.  I believe that it may be of

10   some value for Ms. Focht to have her deposition taken or for

11   her to appear in person at her expense to participate in a

12   hearing in which she will be able to present her case as a live

13   witness, with or without counsel.  I would note that as a lay

14   witness and as a party who is apparently preparing documents on

15   her own, perhaps with the assistance of a lawyer, that it is

16   very, very difficult for me to follow precisely what she is

17   saying.

18        And the last question and answer from counsel which

19   elicited the statement that this witness believes that she paid

20   Lehman directly or indirectly $110,000, if that's the right

21   number, to me sounds preposterous.  But it may be true, I have

22   no way of knowing.  It sounds as if it may be money paid in

23   connection with the acquisition of real property as the down

24   payment, the mortgage financing being part of the purchase

25   price, but I don't know if that is true, I don't know what the

Page 35

1   transactional relationship might be.  For that reason, I would

2   urge that counsel for LBHI and BNC in this matter endeavor to

3   find out with greater clarity in a manner that the Court can

4   actually evaluate it, what this witness is actually saying

5   because I truly don't understand it.  And Ms. Focht, I have

6   been sitting as the bankruptcy Judge in the Lehman Brothers'

7   case for over four and a half years, and this is about the most

8   confusing hearing I have had in all that time.

9           MS. FOCHT:  Sorry.

10          THE COURT:  I'm just telling you that it's not clear

11   to me what you're saying, what you want and the basis for it.

12   I'm also telling you that as a homeowner in Florida whose

13   mortgage ended up in a securitization pool, and who ended up in

14   foreclosure, you are one of millions of Americans who ended up

15   having their home loan mortgages originated by an originator

16   and then having the loans sold into a securitization facility

17   and then because of an inability to service the mortgage, ended

18   up in foreclosure.  I am sympathetic and I'm sorry that

19   happened to you, but that has nothing to do with LBHI.  LBHI is

20   the parent company in this bankruptcy case of a number of

21   affiliates, some in bankruptcy, many, many not in bankruptcy.

22   And one of those affiliates happens to be Aurora Bank, an

23   entity that I have heard about through this bankruptcy case,

24   but it is not a debtor, and as a result it is not before this

25   Court.

Page 36

```
 1              We need to get to the bottom of this.  If in fact

 2    your proof of claim relates to money that you believe you gave

 3    to Lehman Brothers, that is a very different fact pattern from

 4    the one that I believe I have analyzed.  What I believe I have

 5    analyzed is that you borrowed money from a mortgage originator,

 6    in this instance, BNC, that you alleged generally that the

 7    transaction at the time was for reasons not clearly specified

 8    to me fraudulent or improper or in some manner actionable by

 9    you, and you have then sought to find avenues of liability

10    throughout the Lehman family even though the BNC loan was sold

11    many years ago into a securitization vehicle that has zero

12    connection to any Lehman entity.

13              If the facts are as I have described them, you have

14    no basis to pursue any claim in this bankruptcy case.  If the

15    facts are different you may have a basis to pursue a claim in

16    this bankruptcy case.  I need to know those facts before I can

17    take further action with regard to the two remaining proofs of

18    claim.  So we'll have further proceedings another day or this

19    will be resolved by agreement.  We're adjourned.

20

21    (Proceedings concluded at 11:01 AM)

22

23

24

25
```

1                           I N D E X

2

3                             RULINGS

4     DESCRIPTION      PAGE

5     HEARING re Doc #36007 – Four Hundred Third

6     Omnibus Objection to Claims                              5

7

8

9     HEARING re Doc #34303 – Plan Administrator's

10    Omnibus Objections to Claims filed by

11    Deborah Focht                           15 (partial)

12                                            Second part cont'd

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 38

1    CERTIFICATION

2            I, Theresa Pullan, certify that the foregoing is a

3    correct transcript from the official electronic sound recording

4    of the proceedings in the above-entitled matter.

5

6    AAERT Certified Electronic Transcriber CET**00650

7    Theresa Pullan

8    April 26, 2013

9    Revised May 23, 2013

10

11

12

13

14

15

16

17

18

19

20

21

22    Veritext

23    200 Old Country Road

24    Suite 580

25    Mineola, NY  11501