Presentment Date and Time: June 21, 2013 at 12:00 p.m. noon (Prevailing Eastern Time)
Objection Deadline: June 10, 2013 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): June 19, 2013 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Financial Products Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br><br>Defendants. | Adversary Proceeding<br>No. 10-03544 (JMP) |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br><br>Counterclaimant,<br><br>- against - | |

US_ACTIVE:\44262473\5\58399.0008

LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO I, CORP., LIBERTY
SQUARE CDO I, LIMITED, LIBERTY SQUARE
CDO II, LIMITED, LIBERTY SQUARE CDO II,
CORP.,

    Counterclaim and Crossclaim Defendants,

    - and-

CEDE & CO., as nominee of THE DEPOSITORY
TRUST COMPANY, as the holder of certain notes,

    Additional Crossclaim Defendant.

### NOTICE OF PRESENTMENT OF
### STIPULATION, AGREEMENT AND ORDER AMONG LEHMAN
### BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS
### INC., LIBERTY SQUARE CDO II, LIMITED, AND LIBERTY SQUARE CDO II, CORP.

    **PLEASE TAKE NOTICE** that the undersigned will present the annexed

Stipulation, Agreement and Order Among Lehman Brothers Holdings Inc., Lehman Brothers

Financial Products Inc., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp. (the

"Stipulation, Agreement and Order") to the Honorable James M. Peck, United States Bankruptcy

Judge, for signature on **June 11, 2013 at 12:00 noon (Prevailing Eastern Time).**

    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation,

Agreement and Order shall be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General

Order M-242 (which can be found at *www.nysb.uscourts.gov*) by registered users of the

Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk,

preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format (with two hard copies delivered directly to Chambers), and shall be served

upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New

York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn: Richard L. Levine, Esq., and Jacqueline Marcus, Esq., attorneys for

Lehman Brothers Holdings Inc. and Lehman Brothers Financial Products Inc.; (iii) the Office of

the United States Trustee for Region 2 (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New

York, New York 10004, Attn: Tracy Hope Davis, Esq., Andrea B. Schwartz, Esq., and Susan

Golden, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street NW, Suite 1100,

Washington, District of Columbia 20006, Attn: David S. Cohen, Esq., attorneys for the

Litigation Subcommittee of the Official Committee of Unsecured Creditors appointed in these

cases; (v) Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004, Attn:

Jack Yoskowitz, Esq. and Benay L. Josselson, Esq., attorneys for Liberty Square CDO II,

Limited, and Liberty Square CDO II, Corp.; and (vi) Reed Smith LLP, 599 Lexington Avenue,

22nd Floor, New York, New York 10022, Attn: Eric Schaffer, Esq., and Michael Venditto, Esq.,

attorneys for The Bank of New York Mellon Trust Company, National Association as trustee, so

as to be so filed and received no later than **June 10, 2013 at 4:00 p.m. (prevailing Eastern

Time) (the "Objection Deadline")**.

       **PLEASE TAKE FURTHER NOTICE** that if an objection to the Stipulation,

Agreement and Order is not received by the Objection Deadline, the relief requested shall be

deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought

without a hearing.

       **PLEASE TAKE FURTHER NOTICE** that if an objection is timely filed prior

to the Objection Deadline, a hearing (the "Hearing") will be held to consider the Stipulation,

Agreement and Order on **June 19, 2013 at 10:00 a.m. (Prevailing Eastern Time)** before the

3

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated: June 3, 2013
      New York, New York

                                    /s/ Jacqueline Marcus
                                    Richard L. Levine
                                    Jacqueline Marcus
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    *Attorneys for Lehman Brothers Holdings Inc.*
                                    *and Lehman Brothers Financial Products Inc.*

US_ACTIVE:\44262473\5\58399.0008

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Financial Products Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br><br>Defendants. | Adversary Proceeding No. 10-03544 (JMP) |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br><br>Counterclaimant,<br><br>- against - | |

LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO I, CORP., LIBERTY
SQUARE CDO I, LIMITED, LIBERTY SQUARE
CDO II, LIMITED, LIBERTY SQUARE CDO II,
CORP.,

                    Counterclaim and Crossclaim Defendants,

                - and-

CEDE & CO., as nominee of THE DEPOSITORY
TRUST COMPANY, as the holder of certain notes,

                    Additional Crossclaim Defendant.

---

**STIPULATION, AGREEMENT AND ORDER AMONG LEHMAN
BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS
INC., LIBERTY SQUARE CDO II, LIMITED, AND LIBERTY SQUARE CDO II, CORP.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       This Stipulation, Agreement and Order (the "Stipulation, Agreement and Order")

is entered into by Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan

Administrator") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") on behalf of LBHI and Lehman Brothers

Financial Products Inc. ("LBFP" and, together with LBHI, "Lehman") and Liberty Square CDO

II, Limited, and Liberty Square CDO II, Corp. (the Liberty Square entities together, the "LS II

Issuers").  Lehman and the LS II Issuers are collectively referred to in this Stipulation,

Agreement and Order as the "Parties" and each a "Party."

### RECITALS

       A.          On September 15, 2008 and October 5, 2008, LBHI and LBFP,

respectively, commenced with this Court voluntary cases under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").

2

B.         On March 13, 2013, the Plan Administrator filed the *Motion Pursuant to Section 105(a) of the Bankruptcy Code for Approval of the Termination Agreement by and among Lehman Brothers Holdings Inc., Lehman Brothers Financial Products Inc., Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp.* [ECF No. 35908; Adv. Proc. ECF No. 29] (the "Original Settlement Motion"),[1] seeking from this Court approval of that certain termination agreement by and among Liberty Square CDO I, Limited ("LS I Ltd."), Liberty Square CDO I, Corp. ("LS I Corp., and together with LS I Ltd., the "LS I Issuers"), the LS II Issuers, LBHI, and LBFP (the "Original Termination Agreement").  The Original Termination Agreement provides for the resolution of disputes between LBFP and each of the LS I Issuers and the LS II Issuers, respectively.

C.         By order dated April 4, 2013, this Court contingently approved the Original Termination Agreement [ECF No. 36409; Adv. Proc. ECF No. 41] (the "Original Settlement Order").  Specifically, as sought by the Original Settlement Motion, this Court's approval of the Original Termination Agreement was contingent upon the Plan Administrator filing a certification that no interested party, other than a party to the Original Termination Agreement, had appeared and asserted a claim to the Disputed Funds, or a right to the Disputed Funds under the Issuer Transaction Documents for either of the LS I Issuers or the LS II Issuers, or stated any objection to the Termination Agreement, before April 19, 2013 (the "Interpleader Deadline").

D.         Only one objection to the Original Settlement Agreement was filed prior to the Interpleader Deadline.  On April 18, 2013, certain claimed holders of Notes issued by

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Original Settlement Motion.

US_ACTIVE:\44262473\5\58399.0008

the LS I Issuers filed the *Objection to Motion Pursuant to Section 105(a) of the Bankruptcy Code for Approval of the Termination Agreement by and Among Lehman Brothers Holdings Inc., Lehman Brothers Financial Products., Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp.* [Adv. Proc. ECF No. 42] (the "LS I Noteholder Objection").  No other Noteholders (or any other person or entity, other than a party hereto) filed any objection to the Original Termination Agreement, or the settlements embodied therein, or asserted any claim to the Disputed Funds.  In particular, no holder of Notes issued by the LS II Issuers (any such holder, a "LS II Noteholder") objected to the Original Termination Agreement, or the settlements embodied therein, or asserted a claim to the Disputed Funds.  Nevertheless, as a result of the LSI I Noteholder Objection, the Original Settlement Order was ineffective in accordance with its terms and the Interpleader Action remains pending and unresolved.

E.        In light of the fact that no interested party, other than a party hereto, has asserted any claim to the Disputed Funds relating to the LS II Issuers or objected to the settlement relating to the LS II Issuers embodied in the Original Termination Agreement, the Parties wish to proceed with their agreed settlement concerning the LS II Issuers embodied in the Original Termination Agreement.  To that end, the Parties have entered into the Amended LS II Termination Agreement, a copy of which is annexed (in redacted form) hereto as Exhibit A (the "Amended LS II Termination Agreement").[2]  The Amended LS II Termination Agreement

---

[2] In keeping with paragraphs 4 and 13 of the SPV ADR Procedures Order and the confidentiality provisions of the Amended LS II Termination Agreement, and due to LBHI and LBFP's desire to keep the economic terms of the settlement confidential, the settlement payment amount has been redacted from the Amended LS II Termination Agreement annexed as Exhibit A.  The Parties will provide a non-redacted version of the Amended LS II Termination Agreement to the Court, the U.S. Trustee for Region 2, the Creditors' Committee, and any other party directed by the Court.  A non-redacted version of the Amended LS II Termination Agreement also will be provided by Lehman on behalf of the Trustee to the LS II Noteholders who agree in writing to maintain the confidentiality of the settlement payment amount and to abide by the confidentiality provisions of the SPV ADR Procedures Order and the Amended LS II Termination Agreement.

4

reflects substantially the same terms relating to the LS II Issuers as set forth in the Original

Termination Agreement but is limited to resolution of the dispute between Lehman and the LS II

Issuers and the allocation of the approximately $3.9 million of the Disputed Funds relating to the

LS II Issuers reserved by the Trustee pending resolution of the dispute between Lehman and the

LS II Issuers (such reserved amount, the "<u>LS II Disputed Funds</u>").[3]

F.          The Amended LS II Termination Agreement will supersede the

Original Termination Agreement only as it relates to the settlement amongst the Parties and the

Original Termination Agreement otherwise will remain in full force and effect.  The Parties will

not have any further rights or obligations under the Original Termination Agreement as it relates

to the LS II Disputed Funds, the LS II ISDA Master Agreement, and each other generally.

G.          This Court already has authorized the Plan Administrator to enter

into settlements such as the one at issue here pursuant to section 6.1(b)(iv) of the Plan, which

provides the Plan Administrator with authority to compromise all "Litigation Claims" in the Plan

Administrator's discretion without Court approval.  The Amended LS II Termination

Agreement, however, includes, as a condition precedent to its effectiveness, this Court's

approval.  The Parties, therefore, file this Stipulation, Agreement and Order for the purpose of

satisfying that provision.

H.          Because (i) the settlement contained in the Amended LS II

Termination Agreement is substantially the same as the settlement embodied in the Original

Termination Agreement with respect to the LS II Issuers, (ii) absent LS II Noteholders already

were provided with notice and an opportunity to state a claim to the LS II Disputed Funds and/or

voice an objection to the settlement as embodied in the Original Termination Agreement, and

---

[3] The descriptions of documents set forth herein are being provided as summaries only.  In the case of an inconsistency between the summary herein and the documents, the terms of the documents shall control.

US_ACTIVE:\44262473\5\58399.0008

(iii) no LS II Noteholders (or any other person or entity, other than a party hereto) stated such a

claim or objected to such agreement before (or any time after) the Interpleader Deadline, the

Parties have agreed that notice of the Amended LS II Termination Agreement to all LS II

Noteholders would be duplicative and unnecessary.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

1. This Stipulation, Agreement and Order shall have no force or effect unless

and until the date it is approved by the Court (the "Effective Date").

2. Upon the Effective Date, the Amended LS II Termination Agreement is

approved.

3. Upon the Effective Date, the Trustee is authorized to and shall distribute

the LS II Disputed Funds in accordance with and pursuant to the terms set forth in the Amended

LS II Termination Agreement.

4. Upon the Effective Date, the Interpleader Action as it relates to the LS II

Disputed Funds shall be deemed resolved.

5. Subject to compliance with the terms of this Stipulation, Agreement and

Order, as of the Effective Date, the Parties are authorized to complete and deliver all instruments

and documents and take all other actions as may be necessary or appropriate to execute,

implement, consummate and effectuate the Amended LS II Termination Agreement.

6. This Stipulation, Agreement and Order has no effect on the validity of,

and all rights and obligations of the LS I Issuers and Lehman are reserved with respect to, the

Original Termination Agreement as it relates to the remaining Disputed Funds (*i.e.*, the Disputed

6

Funds other than the LS II Disputed Funds), the LS I ISDA Master Agreement, and any rights or

obligations of Lehman and the LS I Issuers relating to each other under such agreement.

7.    This Stipulation, Agreement and Order may only be amended or otherwise

modified by a signed writing executed by or on behalf of the Parties.

8.    Each person who executes this Stipulation, Agreement and Order on

behalf of a Party represents and warrants that he or she has been duly authorized and empowered

to execute and deliver this Stipulation, Agreement and Order on behalf of such Party.

9.    This Stipulation, Agreement and Order may be executed in counterparts,

each of which shall be deemed an original but all of which together shall constitute one and the

same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement and Order

to present any copy, copies, electronic copies, or facsimiles signed by the Parties.

10.    Each Party to this Stipulation, Agreement and Order represents that it fully

understands the terms hereof.  This Stipulation, Agreement and Order shall not be strictly

construed against any Party on the ground that the rules for the construction of contracts require

the resolution of any ambiguity against the Party that drafted the document.

11.    This Stipulation, Agreement and Order shall be binding upon and inure

solely to the benefit of the Parties hereto and their respective successors and assigns.  Nothing

contained herein, express or implied, is intended to or shall confer upon any other person or

entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by

reason of this Stipulation, Agreement and Order.


*[The remainder of this page is intentionally left blank]*


7

12.     This Stipulation, Agreement and Order shall be governed by and in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code applies, without regard to principles of conflicts of law that would require the application of laws of another jurisdiction.  This Court shall retain jurisdiction to resolve any disputes or controversies arising from this Stipulation, Agreement and Order.

Dated: June 3, 2013
          New York, New York

/s/ Jack Yoskowitz
Jack Yoskowitz
Benay L. Josselson

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Liberty Square CDO II, Limited
and Liberty Square CDO II, Corp.*

Dated: June 3, 2013
          New York, New York

/s/ Jacqueline Marcus
Richard L. Levine
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Lehman Brothers Financial Products Inc.*

SO ORDERED, this ___ day of June, 2013 in New York

_____
United States Bankruptcy Judge

8

**Exhibit A**

**(Redacted Amended LS II Termination Agreement)**

## AMENDED LS II TERMINATION AGREEMENT

This Amended LS II Termination Agreement (the "LS II Termination Agreement") is made and entered into as of May 31, 2013, by and among Liberty Square CDO II, Ltd. ("LS II Ltd."), Liberty Square CDO II, Corp. ("LS II Corp.") (LS II Ltd. and LS II Corp. collectively, "LS II"), Lehman Brothers Financial Products Inc. ("Lehman"), acting through its Plan Administrator, Lehman Brothers Holdings Inc. (solely in its capacity as such, the "Plan Administrator"), and Lehman Brothers Holdings Inc. (solely in its capacity as credit support provider of Lehman, "Holdings"), also acting through the Plan Administrator (each of the foregoing a "Party" and collectively the "Parties"). For the avoidance of doubt, whenever Lehman or Holdings is required hereunder to take any actions or assume any obligations, the Plan Administrator shall cause Lehman or Holdings, as the case may be, to take such actions or assume such obligations.

## RECITALS:

WHEREAS, LS II and Lehman entered into one or more transactions (each a "Transaction" and, together, the "Transactions") that were governed by a 1992 ISDA Agreement, dated as of April 26, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, substantially all of LS II's assets were held in trust pursuant to the terms of the indenture dated May 8, 2001, by and among LS II and JPMorgan Chase Bank, N.A. (f/k/a The Chase Manhattan Bank) as trustee (the "LS II Indenture").

WHEREAS, commencing on September 15, 2008, and periodically thereafter, Holdings and certain of its affiliates, including Lehman (collectively, the "Chapter 11 Entities"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of October 22, 2008.

WHEREAS, on September 14, 2010, Lehman filed an action against The Bank of New York Mellon Trust Company, National Association, as successor trustee (the "Trustee") under the LS II Indenture, and LS II to challenge certain contractual provisions in the LS II Indenture as unenforceable *ipso facto* clauses or as avoidable, preferential, or fraudulent transfers in violation of the Bankruptcy Code, Adversary Proc. No. 10-3544 (JMP) (the "Adversary Proceeding").

WHEREAS, on March 30, 2011, the court having jurisdiction over the Bankruptcy Cases (the "Bankruptcy Court") entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, as amended by the Bankruptcy Court on July 18, 2012 (as so amended, the "SPV ADR Order").

1

WHEREAS, pursuant to the SPV ADR Order, Lehman served LS II with an SPV Derivatives ADR Election Notice, to which LS II responded, and Lehman replied (with prior ADR pleadings and the subsequent mediation, the "ADR Proceeding").

WHEREAS, the Trustee has placed approximately $3,900,000 in escrow on behalf of LS II pending the resolution of the ADR Proceeding (such amounts, the "Escrowed Funds").

WHEREAS, on December 6, 2011, the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") and the Plan became effective on March 6, 2012.

WHEREAS, pursuant to Sections 13.1 and 6.1 of the Plan, Lehman Brothers Holdings Inc. was appointed as Plan Administrator for each of the Chapter 11 Entities, including Lehman, and is authorized on behalf of each of the Chapter 11 Entities, including Lehman, to prosecute, elect not to pursue, compromise, settle, abandon, dismiss or otherwise dispose of all causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever assertable by each of the Chapter 11 Entities, including Lehman.

WHEREAS, on November 16, 2012, following a mediation as part of the ADR Proceeding, the Parties and Liberty Square CDO I, Ltd. ("LS I Ltd."), and Liberty Square CDO I, Corp. ("LS I Corp.") (LS I Ltd. and LS I Corp. collectively, "LS I") entered into a termination agreement (the "Original Termination Agreement").

WHEREAS, on January 28, 2013, the Trustee filed in the Adversary Proceeding a counterclaim and crossclaim for interpleader and declaratory relief seeking to (i) obtain a ruling as to which parties are entitled to receive the Escrowed Funds and certain funds escrowed on behalf of LS I (collectively, the "Preserved Funds"), and (ii) provide absent LS II and LS I noteholders with the opportunity to state a claim to the Preserved Funds and/or voice objection to the Original LS Termination Agreement (the "Interpleader Action"), and the Trustee provided notice of the Interpleader Action and the Original LS Termination Agreement to noteholders who hold an interest in LS I or LS II.

WHEREAS, on April 4, 2013, the Bankruptcy Court approved the Original LS Termination Agreement, contingent on the Plan Administrator filing a certificate that no party claiming an interest in the Preserved Funds had appeared in the Interpleader Action and stated an objection to the Original LS Termination Agreement by April 18, 2013 (the "Original Settlement Order"), and the Trustee provided notice of the Original Settlement Order to noteholders who hold an interest in LS I or LS II.

WHEREAS, on April 18, 2013, certain claimed holders of Class C notes in LS I filed an objection to the Original LS Termination Agreement, but no party with an interest in LS II filed an objection to the Original LS Termination Agreement.

WHEREAS, given the absence of any objection by an LS II Noteholder, or any other party claiming an interest in the Escrowed Funds, to the LS II settlement embodied in the Original LS Termination Agreement, the Parties wish to go forward with their agreed settlement as to LS II as reflected therein, including payments by the Trustee to Lehman on behalf of LS II

2

in the amount of $███████ (the "Settlement Amount") in satisfaction of any and all claims by Lehman, arising under or related to the Agreement Documents and the Transactions.

WHEREAS, in accordance with Section 14.15 of the LS II Indenture, the Settlement Amount shall be recoverable only from and to the extent of the collateral under the LS II Indenture, including the Escrowed Funds.

WHEREAS, as part of the settlement embodied herein, the Parties wish to expunge and release any and all proofs of claim, whether liquidated, unliquidated, or contingent in nature (the "Related Claims"), filed by LS II and the Trustee with the Bankruptcy Court in respect of the Agreement Documents and the Transactions.

NOW, THEREFORE, in consideration of the recitals set forth above and the promises made herein, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Payment and Release.  LS II shall instruct the Trustee to pay, and the Trustee shall pay, the Settlement Amount, without deduction, set-off, or counterclaim, to Lehman within five (5) business days of the date this LS II Termination Agreement is effective pursuant to Section 4 of this LS II Termination Agreement.  In consideration of each other Party's execution of this LS II Termination Agreement and the terms hereof, including the payment of the Settlement Amount without deduction, set-off, or counterclaim to Lehman, each Party, on behalf of itself and any other party, person, or entity claiming under or through it, hereby generally releases, discharges, and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, bondholders, principals, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, obligations, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have, or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination. For the avoidance of doubt, the foregoing release does not include the Parties' obligations under this LS II Termination Agreement.

Section 2.    Representations.  Each Party represents and warrants to each other Party that (i) the execution, delivery, and performance by such Party of this LS II Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this LS II Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those

3

expressly set forth in this LS II Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this LS II Termination Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose new or additional facts material to the Agreement Documents or this LS II Termination Agreement, and (vii) it knowingly waives any and all claims that this LS II Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this LS II Termination Agreement based upon presently existing facts, known or unknown. Additionally, Lehman and Holdings represent and warrant to LS II that this LS II Termination Agreement is being entered into in accordance with, and pursuant to, the authority granted to Lehman and the Plan Administrator by the Plan. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into this LS II Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this LS II Termination Agreement. These representations and warranties shall survive the execution of this LS II Termination Agreement indefinitely without regard to statutes of limitations.

Section 3.    <u>Execution in Counterparts</u>.  This LS II Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.  Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 4.    <u>Effectiveness</u>.  This LS II Termination Agreement shall become effective on the date following entry of an order by the Bankruptcy Court, including but not limited to in the form of a "so ordered" stipulation, approving this LS II Termination Agreement (the "Approval Order") that becomes final because the time to appeal by any party with standing to appeal, if any, has run with no appeal being filed or, if appealed, is affirmed and such affirmance is not subject to further appeal or the time for the appeal has run with no further appeal being filed (a "Final Order").  For the avoidance of doubt, any Transactions that are not already terminated according to their terms will terminate automatically on the effective date of this LS II Termination Agreement.  Unless and until the parties have executed this LS II Termination Agreement and the Bankruptcy Court has entered the Approval Order and it has become a Final Order, this LS II Termination Agreement shall remain ineffective.  In the event that the Bankruptcy Court does not enter an Approval Order or the Approval Order does not become a Final Order, this LS II Termination Agreement shall be null and void and of no force and effect and it shall not have any res judicata or collateral estoppel effect against the Parties, and each of the Parties' respective interests, rights, remedies, and defenses shall be restored as if this LS II Termination Agreement had never been executed.

Section 5.    <u>Further Assurances</u>.  The Parties agree that they (i) shall cooperate in determining the best procedure for, and use reasonable best efforts in, seeking entry of the Approval Order, (ii) shall execute and deliver, or shall cause to be executed and delivered, such documents and other papers and shall take, or shall cause to be taken, such further actions as may be reasonably required to carry out the provisions of this LS II Termination Agreement and give

4

effect to the transactions contemplated by the LS II Termination Agreement; (iii) shall refrain from taking any actions that could reasonably be expected to impair, delay, or impede the entry of the Approval Order; and (iv) without limiting the foregoing, shall use their reasonable best efforts to cause all of the conditions to the obligations of themselves and the other Party hereunder to be satisfied. The Parties further agree that they will use reasonable best efforts to obtain the Approval Order by alternative procedural means if necessary.

Section 6.    Related Claims.    The Parties acknowledge and agree that Lehman, Holdings, and any of the Chapter 11 Entities may object through a filing with the Bankruptcy Court to any proofs of claim filed against any of them in relation to the Agreement Documents or the Transactions. Pending the filing of such objections, any such proofs of claim and related Derivatives Questionnaires and/or Guarantee Questionnaires shall be deemed amended to reflect that any amounts sought from any of the Chapter 11 Entities is $0.0. LS II agrees not to challenge or object to such objections if filed.

Section 7.    Dismissal of Adversary Proceeding.    Lehman agrees that, within 30 days after the Approval Order becomes a Final Order, it will dismiss LBFP's causes of action in the Adversary Proceeding against LS II and the Trustee, solely as trustee with respect to the LS II Transactions and the LS II Indenture, if the Adversary Proceeding is still pending.

Section 8.    Governing Law.    This LS II Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this LS II Termination Agreement or to enforce the terms hereof and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 9.    Special Provision for Unknown Claims.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 1. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 10.    Confidentiality.    The Parties shall not disclose the Settlement Amount (the "Confidential Information") to any person other than to their directors, officers, employees, counsel, Wellington Asset Management (solely in its role as Investment Manager of LS II), and other advisors (hereinafter, "Related Party" or collectively, the "Related Parties") (it being understood that the Parties shall ensure that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and that the Confidential Information is subject to the SPV ADR Order, and will be directed to maintain the confidentiality of such Confidential Information), except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws, provided that the

Confidential Information may be disclosed pursuant to the terms of the SPV ADR Order to LS II noteholders who agree in writing to maintain the confidentiality of the Confidential Information and to abide by the confidentiality provisions of the SPV ADR Order. Notwithstanding the foregoing, the Settlement Amount shall be disclosed to the Bankruptcy Court, the Office of the United States Trustee for Region 2, the Official Committee of Unsecured Creditors, and any other party directed by the Bankruptcy Court. The Parties acknowledge and agree that any motion or stipulation publicly filed with the Bankruptcy Court for purposes of obtaining entry of the Approval Order shall include a copy of this LS II Termination Agreement from which the Settlement Amount shall be redacted and that the Parties shall endeavor to keep the Settlement Amount out of the public record.

If any Party or any Related Party becomes legally obligated (whether by court or regulatory order or otherwise) to disclose the Confidential Information, that Party or such Related Party, as the case may be, will promptly provide the other Parties, if permitted by law, with notice of such proposed disclosure so that such other Parties may seek a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, the Party or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and the Party or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

Section 11.    Successors and Assigns.    The provisions of this LS II Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 12.    Amendment.    This LS II Termination Agreement may only be amended, modified, superseded, or canceled and any of the terms, covenants, representations, warranties, or conditions hereof may only be waived by an instrument in writing signed by each of the Parties.

Section 13.    Entire Agreement.    This LS II Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof. For the avoidance of doubt, this LS II Termination Agreement supersedes the Original LS Termination Agreement only as it relates to the settlement between Lehman and LS II, and the Original LS Termination Agreement otherwise remains in full force and effect, but neither Lehman nor LS II have any further rights or obligations under the Original LS Termination Agreement as it relates to LS II. This LS II Termination Agreement thus shall not have any effect on the obligations of Lehman and LS I under the Original LS Termination Agreement.

Section 14.    Capacity.    Each of the Parties acknowledges and agrees that Lehman Brothers Holdings Inc. is executing this LS II Termination Agreement on behalf of Lehman in its capacity as Plan Administrator of Lehman and shall not be subject to any liability or responsible to take any action on its own behalf by virtue of signing this LS II Termination Agreement in such capacity.

Section 15.    Construction.    This LS II Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require

6

the construction of this LS II Termination Agreement or any of its provisions against the Party responsible for drafting this LS II Termination Agreement will not apply in any construction or interpretation of this LS II Termination Agreement.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this LS II Termination Agreement on the date first written above.

LIBERTY SQUARE CDO II, LIMITED

By: _____
Name: Martin Couch
Title: Director

LIBERTY SQUARE CDO II, CORP.

By: _____
Name:   Donald J. Puglisi
Title:    President

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By: _____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By: _____
Name:
Title:

7

the construction of this LS II Termination Agreement or any of its provisions against the Party responsible for drafting this LS II Termination Agreement will not apply in any construction or interpretation of this LS II Termination Agreement.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this LS II Termination Agreement on the date first written above.

LIBERTY SQUARE CDO II, LIMITED

By: _____
Name:
Title:

LIBERTY SQUARE CDO II, CORP.

By: _____
Name:
Title:

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By: _____
Name: Daniel Ehrmann
Title: Senior Vice President

LEHMAN BROTHERS HOLDINGS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By: _____
Name: Daniel Ehrmann
Title: Senior Vice President

7