Response Date: June 5, 2013 at 11:59 p.m. (extended by agreement)
Hearing Date: June 13, 2013 at 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
George A. Zimmerman
Max S. Polonsky
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Dr. H.C. Tschira Beteiligungs GmbH & Co. KG
and Klaus Tschira Stiftung gGmbH*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*,: | Case No. 08-13555 (JMP) |
| : | |
| Debtors. : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE OF DR. H.C. TSCHIRA BETEILIGUNGS GMBH & CO. KG AND
KLAUS TSCHIRA STIFTUNG GGMBH TO LBHI'S FOUR HUNDRED SECOND
OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

Dr. H.C. Tschira Beteiligungs GmbH & Co. KG ("KG") and Klaus Tschira Stiftung gGmbH ("KTS" and together with KG, the "Tschira Entities"), by and through their undersigned counsel, hereby respond (this "Response") to the Four Hundred Second Omnibus Objection to Claims (No Liability Derivatives Claims) [Dkt. No. 36006], as supplemented [Dkt. No. 36569] (the "Objection"). In support of the Response, the Tschira Entities respectfully represent as follows:

### I. Introduction

1. The Tschira Entities filed proofs of claim against Lehman Brothers Holdings, Inc. ("LBHI") solely in LBHI's capacity as guarantor of the obligations of its Swiss affiliate, Lehman

Brothers Finance, S.A. Netherlands Antilles Branch ("LBF") under certain ISDA Agreements between LBF and the Tschira Entities.

2. LBHI's obligations as guarantor are completely derivative of, and coextensive with, LBF's obligations under the ISDA Agreements. The Tschira Entities and LBF currently are litigating their rights and obligations under the ISDA Agreements in Switzerland (the "Swiss Proceedings"). The dispute centers on whether the Tschira Entities correctly calculated their "Loss" (as defined in the ISDA Agreements) suffered as a result of the Event of Default and termination triggered by the collapse and bankruptcy of the various Lehman entities. The Tschira Entities have already have filed an extensive pleading, including an evidentiary submission, and will prepare an expert report, in the Swiss Proceedings. The Tschira Entities anticipate that LBF will file its own extensive pleading within the next two months. The Objection here mirrors LBF's position as expressed in informal discussions and correspondence.

3. In light of the foregoing, the interests of judicial economy and efficiency are clearly best served by staying or adjourning this matter pending the Swiss Proceedings. This is consistent with Second Circuit guidance concerning overlapping U.S. and foreign proceedings. In the event LBF prevails there, the Tschira Entities concede that LBHI will have no liability as guarantor; in the event the Tschira Entities prevail in the Swiss Proceedings, LBHI's liability will be cemented or, if LBHI believes it has a defense against its obligations as absolute guarantor, it can raise them here at the appropriate time.

4. Alternatively, the Tschira Entities respectfully request that this Court adjourn the Objection for six months. At the end of this period, the parties can reconvene to advise the Court on (i) the status of the Swiss Proceedings and (ii) informal efforts to resolve the Tschira Entities'

claims against LBHI, which efforts have not yet begun and which the Tschira Entities would welcome.

5.  In the event the Court determines that a stay or adjournment of this case is not appropriate, it should overrule the Objection. The Tschira Entities correctly calculated their loss as of October 16, 2008, the proper valuation date under the facts of this case. That was the "earliest date reasonably practicable" (the governing standard) following the September 15 Early Termination Date for calculating the cost of replacing the extraordinarily complex, unique contracts at issue in this case; and, as set forth below, Lehman's own improper and misleading representations to the Tschira Entities during the course of their post-September 15 negotiations rendered any earlier valuation date improper.

## II.    Factual Background

6.  KTS, also known as the Klaus Tschira Foundation, is one of the largest, privately endowed non-profit foundations in all of Europe. Formed in 1995 by Dr. h.c. Klaus E. Tschira, the co-founder of today's SAP AG, its assets consist of over 70% of Dr. Tschira's earned wealth. Over the years, the Foundation has donated hundreds of millions toward its aims to advance the natural sciences, mathematics and information technology. KG is a limited partnership organized under German law whose objects are long-term wealth creation and protection through asset management.

7.  The Tschira Entities' assets have consisted and still consist mainly of SAP shares. Given this high concentration of SAP shares, the Tschira Entities prudently entered into several hedging transactions (the "<u>Transactions</u>") with LBF to protect against fluctuations in SAP's stock price. The Transactions included the following:

3

- KTS entered into (i) a 1992 ISDA Master Agreement, dated May 16, 2007, as amended by an update dated July 14, 2008; (ii) a Variable Forward Transaction, dated May 23, 2007 and (iii) a Variable Forward Transaction, dated April 18, 2008.

- KG entered into (i) a 1992 ISDA Agreement, dated May 16, 2007, as amended by an update dated July 14, 2008; (ii) a Variable Forward Transaction, dated May 23, 2007; (iii) an Amendment to the Variable Forward Transaction, dated January 25, 2008 and (iv) a Variable Forward Transaction, dated April 18, 2008.

- The Transactions benefitted from a guaranty by LBHI, evidenced by a Restated Guarantee of Lehman Brothers Holdings Inc., dated May 15, 2008.

8. In addition to their substantial size and unusually long duration, the Transactions had many bargained-for features. For example, LBF and the Tschira Entities chose to use the 1992 form of ISDA Master Agreement, even though the 2002 form was available at the time, and agreed that the "Loss" calculation should treat the insolvent party and counterparty equally. To collateralize the Transactions, KTS pledged 27 million SAP shares in favor of LBF, and KG pledged 32 million SAP shares in favor of LBF. Lehman Brothers International (Europe) ("LBIE") held the pledged shares in custody. These 59 million shares represented a substantial portion of the Tschira Entities' assets and amounted to approximately 4.7% of the company's then-outstanding shares. The pledge did not involve a full assignment of rights to the shares. This enabled the Tschira Entities to retain voting rights and dividends, which added funds available for charitable aims. This collateral structure made the Transactions even more bespoke.

4

9. On September 15, 2008, LBHI filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). By the terms of the Transactions' governing documents, the Transactions automatically terminated when LBHI filed its Chapter 11 petition.

10. Immediately upon LBHI's bankruptcy filing and in the weeks thereafter, the Tschira Entities' representatives contacted representatives of JPMorgan, Goldman Sachs and Investment Bank Mediobanca p.p.A. ("Mediobanca")[1] in attempts to enter into replacement trades. The Tschira Entities were required to post SAP shares as collateral with any prospective new counterparty or proceed on a much more expensive uncollateralized basis. Unfortunately, those shares remained in LBIE's custody, and the Tschira Entities neither had, nor could they borrow, the additional millions of shares of SAP necessary to collateralize a replacement trade.

11. For weeks, the Tschira Entities' representatives worked with senior Lehman representatives to obtain the release of the 59 million pledged SAP shares. The Tschira Entities relied in good faith on Lehman's representations that the shares would be released within a reasonable period of time. During this time, the Tschira Entities continued negotiations with JPMorgan, Goldman Sachs and Mediobanca regarding potential replacement collateralized transactions or their economic equivalents. However, the return of the pledged shares continued to be a gating issue.

12. On October 16, 2008, LBIE's attorneys informed the Tschira Entities for the first time, that the full amount of pledged shares would not be returned within the foreseeable future. It thus became known on October 16 that, contrary to Lehman's previous assurances, the Tschira

---

[1] Mediobanca employed former staff of LBIE's derivatives team, including the personnel that had structured and implemented the Transactions, and thus had extensive knowledge of the Transactions and valuation expertise.

5

Entities would not be able to enter into collateralized replacement transactions. Ultimately, Mediobanca offered a quote for an unsecured replacement transaction as of October 16, 2008. This quote is the basis for the challenged claims.

13. On information and belief, on October 29, 2008, the Swiss Financial Market Supervisory Authority ordered LBF to be liquidated and, on December 22, 2008, bankruptcy was ordered.

14. On September 21, 2009, KTS filed proof of claim number 22671, asserting a $259,126,673.93 claim against LBHI based on its guaranty of LBF's obligations under certain of the Transactions. On September 22, 2009, KG filed proof of claim number 32395, asserting a $345,842,978.50 claim against LBHI based on its guaranty of LBF's obligations under certain of the Transactions. The Tschira Entities subsequently completed guaranty questionnaires and uploaded voluminous documents on or about October 15, 2009. Neither LBHI nor LBF disputes the calculations behind the Proofs of Claim. Rather, the basis of their objection is that the proper valuation date is September 15, 2008 rather than October 16, 2008. This, despite the facts that (i) the parties were in active negotiations after September 15 for the return of the SAP collateralized shares and (ii) Lehman's misrepresentations were the direct cause for the inability to value a replacement transaction prior to October 16.

15. LBF and the Tschira Entities have been engaged in protracted discussions regarding the Tschira Entities' claims and formal litigation has now been commenced in Switzerland. The parties have filed various pleadings, including an evidentiary submission, in Switzerland. At no time since the 2009 bar date has LBHI made any contact with the Tschira Entities about the Claims until LBHI filed the Objection.

### III. These Proceedings Should Be Stayed Pending the Swiss Proceedings

16. LBHI's omnibus objection should be stayed pending the Swiss Proceedings or, alternatively, adjourned for six months, at which time the parties should reconvene to advise the Court on (i) the status of the Swiss Proceedings and (ii) efforts to resolve the claims against LBHI, which efforts have not yet begun.

#### A. The interests of judicial efficiency and fairness weigh heavily in favor of a stay.

17. The Tschira Entities should not have to litigate the interpretation of an English-law governed ISDA agreement in two courts at the same time; and given the fact that LBHI's objection here completely mirrors LBF's arguments in the more advanced Swiss Proceedings, it is clear that duplicative litigation is inevitable if both proceedings go forward. Moreover, LBHI's obligations as guarantor are completely derivative of LBF's. Accordingly, the Swiss Proceeding either will moot this case (if LBF prevails), or conclusively determine this case (if the Tschira Entities prevail), subject to any "guarantee" objections LBHI may have—none of which it asserted in the Objection. This Court therefore should stay this matter pending the outcome of the Swiss Proceedings.

18. LBHI clearly can claim no prejudice by this adjournment since it has waited nearly four years to challenge the Tschira Entities' claims. On the contrary, during the pendency of a stay, the Tschira Entities will be willing, as they have always been, to engage in constructive settlement discussions.

19. A temporary stay is consistent with Second Circuit guidance on international comity principles. In *Royal & Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006), the Second Circuit explained that a temporary stay may be appropriate when a district court is faced with parallel foreign litigation: "a measured temporary stay [is] a lesser intrusion on the principle of obligatory jurisdiction, which might permit the

7

district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties, [and] is an alternative that normally should be considered before a comity-based dismissal is entertained." *Royal*, 466 F.3d at 96. Moreover, "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) (collecting cases).

20.    Several comity factors and the totality of the circumstances, *see Royal*, 466 F.3d at 94, militate strongly in favor of a stay here:

- The two cases involve the same primary issue—interpretation of an English-law governed ISDA and the rights of a Swiss company under that ISDA in Swiss insolvency proceedings.
- LBHI cannot seriously dispute that the Swiss court is an adequate forum to hear this issue when (i) it created a Swiss subsidiary whose primary business was to enter into derivatives contracts and (ii) LBF is in a Swiss insolvency proceeding.  Moreover, a Swiss court is more convenient for the Tschira Entities, LBF and LBIE personnel, all of whom are or are likely to be based in Europe.
- LBHI's and LBF's interests are directly and perfectly aligned.  LBF is a primary obligor and LBHI is its guarantor and ultimate parent.  *See, e.g.*, *Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 415 (E.D.N.Y. 2007) (finding affiliated companies are relatively similar).
- The Tschira Entities will be prejudiced by the costs of litigating the same issue in two different forums on different schedules.  On the contrary, there is no reason prohibiting LBHI from conferring with its Swiss affiliate and participating in fact and expert discovery in the Swiss Proceeding.

21.    Accordingly, the Court should stay this case pending resolution of the Swiss Proceeding or, alternatively, adjourn LBHI's objection for six months, after which the parties will apprise the Court of further developments.

### IV.    Alternatively, the Objection Should be Overruled

22.    It is undisputed that the parties selected the "Loss" measure of damages if the Transactions terminated upon a bankruptcy default.  "Loss" compensates the payee with the

8

amount that must be paid to the non-defaulting party to put that party in the same position as it would have been had the proposed transaction properly taken place. In other words, "Loss" compensates the non-defaulting party for the costs of a replacement transaction, whether or not such a transaction is actually achieved.

23. The non-defaulting party is charged with calculating "Loss" and has discretion in calculating the amount reasonably owed to it, provided that it acts in good faith. Contrary to LBHI's position, "Loss" need not be determined as of an early termination date. Section 14 of the ISDA form agreement explicitly states that "A party will determine its Loss as of the relevant Early Termination Date, <u>or</u>, <u>if</u> <u>that</u> <u>is</u> <u>not</u> <u>reasonably</u> <u>practicable</u>, as of the earliest date thereafter as is reasonably practicable." (emphasis added). This affords the non-defaulting party the latitude to negotiate an adequate replacement transaction. Moreover, the Tschira Entities' expert report in the Swiss Proceedings will establish that applicable English law allows a non-defaulting counterparty to do whatever is needed to attempt to obtain a replacement transaction and, once that transaction no longer appears possible, to calculate "Loss" as of that date.

24. LBHI's focus on the "Early Termination Date"—the date of its bankruptcy filing—not only ignores the explicit contract language cited above, but also ignores the fact that its own conduct in refusing to release the 59 million margined SAP shares rendered that date "not reasonably practicable." The Tschira Entities made every effort to obtain a replacement transaction with potential counterparties, while simultaneously working with Lehman's decision-makers at the highest levels to obtain the release of the pledged SAP shares—which Lehman repeatedly assured was forthcoming. It was not until October 16, after Lehman reversed its previous assurances to the Tschira Entities and indicated that a release of the shares would not be forthcoming, that the Tschira Entities learned that the replacement transaction would have to be

9

an uncollateralized one. Under these circumstances, Lehman's insistence upon a calculation based on a collateralized replacement transaction—which was made impossible by virtue of Lehman's own actions—must fail.

25. Section 562 of the Bankruptcy Code, which LBHI relies on, does not alter the foregoing analysis. Subsection (a) of § 562 is premised on commercially reasonable determinants of value being available as of a termination date. However, subsection (b) provides that "If there are not any commercially reasonable determinants of value as of any date referred to in paragraph (1) or (2) of subsection (a), damages shall be measured as of the earliest subsequent date or dates on which there are commercially reasonable determinants of value." 11 U.S.C. § 562(b). "The references to 'commercially reasonable' are intended to reflect existing state law standards relating to a creditor's actions in determining damages." H.R. Rep. No. 109-31(I), at 135 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 195. As established above, under the governing English law, October 16, 2008 was the earliest subsequent date for these purposes.

26. Finally, LBHI's assertion that the Tschira Entities could have replaced the shares with cash or other shares cannot be taken seriously. Lehman has not asserted, and cannot establish, that it would have been feasible or even possible for the Tschira Entities to have acquired 59 million SAP shares, or offered to provide $2 billion in cash collateral in a potential replacement trade (even ignoring the strong likelihood that a new counterparty would still have insisted on obtaining the shares as collateral) to alleviate Lehman's refusal to release the margined SAP shares.[2]

---

[2] During the time immediately after LBHI's bankruptcy filing, the price of SAP shares rose as market participants sought to close out short positions. To hedge its exposure to the Transactions, LBF had borrowed shares from market participants in securities lending transactions. The lenders promptly closed their short positions when they realized they would not recover the lent SAP shares. The increased demand led to a short-term increase of SAP's stock price.

10

**Notice**

27. Pursuant to Federal Rule of Bankruptcy Procedure 9017, which makes Federal Rule of Civil Procedure 44.1 applicable to this case, the Tschira Entities hereby give notice that the Objection may raise issues of English, German and Swiss law.

**Conclusion**

Based on the foregoing, the Tschira Entities respectfully request that the Court stay these proceedings pending the Swiss Proceedings, or, alternatively, adjourn the Objection for six months and thereafter hold a Status Conference for a further update. Finally, in the event the Court refuses either alternative, the Tschira Entities request that the Court entertain a briefing and discovery schedule for an evidentiary hearing. The Tschira Entities reserve their right to supplement this Response.

Dated: New York, New York
June 5, 2013

Respectfully submitted,

*/s/ George A. Zimmerman*
George A. Zimmerman
Max S. Polonsky
Four Times Square
New York, NY 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Dr. H.C. Tschira Beteiligungs GmbH & Co. KG
and Klaus Tschira Stiftung gGmbH*

11

993843-NYCSR02A - MSW