**EXECUTION**

FLOW BUSINESS LOAN PURCHASE AND WARRANTIES
AGREEMENT

between

LEHMAN BROTHERS HOLDINGS INC.,
SELLER

and

PACIFIC PREMIER BANK,
PURCHASER

FIXED AND ADJUSTABLE RATE
SMALL BALANCE COMMERCIAL LOANS

Dated as of May 1, 2008

Group No. 2008-FLOW

103R6/102
05/29/2008 6513534.8

**EXHIBIT A**

TABLE OF CONTENTS

Page

SECTION 1.   DEFINITIONS.........................................................................................5

SECTION 2.   CONVEYANCE FROM SELLER TO PURCHASER. .......................................10

SECTION 3.   PURCHASE PRICE. ...................................................................................12

SECTION 4.   SERVICING OF THE BUSINESS LOANS. ......................................................13

SECTION 5.   REPRESENTATIONS AND WARRANTIES OF SELLER.................................14

SECTION 6.   REPRESENTATIONS AND WARRANTIES OF PURCHASER.......................14

SECTION 7.   REMEDIES FOR BREACH OF REPRESENTATIONS AND
             WARRANTIES; ADDITIONAL REPURCHASE OBLIGATIONS;
             ADDITIONAL REMEDIES..............................................................................15

SECTION 8.   CLOSING. ..................................................................................................15

SECTION 9.   CLOSING DOCUMENTS. ............................................................................15

SECTION 10. COSTS. .......................................................................................................15

SECTION 11. PROTECTION OF CONFIDENTIAL INFORMATION. ....................................15

SECTION 12. NOTICES.....................................................................................................15

SECTION 13. SEVERABILITY CLAUSE. ..........................................................................15

SECTION 14. COUNTERPARTS. .....................................................................................15

SECTION 15. PLACE OF DELIVERY AND GOVERNING LAW. ........................................15

SECTION 16. FURTHER AGREEMENTS. ..........................................................................15

SECTION 17. INTENTION OF THE PARTIES. ...................................................................15

SECTION 18. SUCCESSORS AND ASSIGNS; ASSIGNMENT OF PURCHASE
             AGREEMENT.................................................................................................15

SECTION 19. WAIVERS; OTHER AGREEMENTS. ............................................................15

SECTION 20. NO PERSONAL SOLICITATION. .................................................................15

SECTION 21. EXHIBITS AND SCHEDULES. .....................................................................15

SECTION 22. GENERAL INTERPRETIVE PRINCIPLES. .......................................................15

SECTION 23. REPRODUCTION OF DOCUMENTS.............................................................15

SECTION 24. DOCUMENTS MUTUALLY DRAFTED.........................................................15

<u>EXHIBITS AND SCHEDULES</u>

SCHEDULE 1      REPRESENTATIONS AND WARRANTIES OF SELLER
SCHEDULE 2      REPRESENTATIONS AND WARRANTIES REGARDING
                      INDIVIDUAL BUSINESS LOANS

EXHIBIT A        FORM OF ACKNOWLEDGMENT AND CONVEYANCE
EXHIBIT B        FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT
EXHIBIT C        BUSINESS LOAN DOCUMENTS

## FLOW BUSINESS LOAN PURCHASE AND WARRANTIES
## AGREEMENT

This is a Flow Business Loan Purchase and Warranties Agreement (the "Agreement"), dated as of May 1, 2008, by and between Lehman Brothers Holdings Inc. (the "Seller") and Pacific Premier Bank (the "Purchaser").

WHEREAS, the Seller desires, from time to time, to sell to the Purchaser, and the Purchaser desires, from time to time, to purchase from the Seller, certain fixed and adjustable rate commercial or multi-family residential loans secured by real estate (the "Business Loans") on a servicing-released basis as described herein, and which shall be delivered as whole loans; and

WHEREAS, each Business Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a commercial or multi-family residential property located in the jurisdiction indicated on the related Business Loan Schedule;

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance and control of the Business Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

## SECTION 1. DEFINITIONS.

The following terms are defined as follows (except as otherwise agreed in writing by the parties):

Acknowledgment and Conveyance: The agreement, substantially in the form of Exhibit A hereto, to be executed by the Seller and the Purchaser on each Closing Date.

Agreement: This Flow Business Loan Purchase and Warranties Agreement and all amendments hereof and supplements hereto.

ALTA: The American Land Title Association or any successor thereto.

Appraised Value: The value set forth in an appraisal made in connection with the origination of the related Business Loan as the value of the related Mortgaged Property.

Assignment of Mortgage: An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to the Purchaser.

Business Loan: An individual commercial or multi-family residential loan which is the subject of this Agreement, each Business Loan originally sold and subject to this

Agreement being identified on the related Business Loan Schedule, which Business Loan includes without limitation the Business Loan Documents, the Monthly Payments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Business Loan.

Business Loan Documents: With respect to each Business Loan, the documents set forth on Exhibit C attached hereto.

Business Loan Interest Rate: The annual rate of interest borne on a Business Loan Note.

Business Loan Note: The note or other evidence of the indebtedness of an Obligor secured by a Mortgage.

Business Loan Package: A pool of Business Loans sold to the Purchaser by the Seller on a Closing Date.

Business Loan Schedule: With respect to each Business Loan Package, the schedule of Business Loans annexed to the related Acknowledgment and Conveyance.

Closing Date: The date set forth in the related Acknowledgment and Conveyance on which the Purchaser shall purchase and the Seller shall sell, the Business Loans listed on the related Business Loan Schedule.

Condemnation Proceeds: All awards or settlements in respect of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent domain or condemnation, to the extent not required to be released to an Obligor in accordance with the terms of the related Business Loan Documents.

Custodial Agreement: One or more custodial agreements that govern the custody of the Business Loan Documents.

Custodian: Shall have the meaning assigned thereto in Section 2(c) hereof.

Cut-off Date: With respect to each Business Loan in a Business Loan Package, the date set forth on the related Acknowledgment and Conveyance.

Deleted Business Loan: A Business Loan which is repurchased by the Seller in accordance with the terms of this Agreement.

Due Date: The day of the month on which the Monthly Payment is due on a Business Loan, exclusive of any days of grace. With respect to the Business Loans for which payment from the Obligor is due on a day other than the first day of the month, such Business Loans will be treated as if the Monthly Payment is due on the first day of the month following the actual Due Date.

Insurance Proceeds: With respect to each Business Loan, proceeds of insurance policies insuring the Business Loan or the related Mortgaged Property.

Liquidation Proceeds: Cash received in connection with the liquidation of a defaulted Business Loan, whether through the sale or assignment of such Business Loan, trustee's sale, foreclosure sale or otherwise, or the sale of the related Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Business Loan.

Monthly Payment: The scheduled monthly payment of principal and interest on a Business Loan.

Mortgage: The mortgage, deed of trust or other instrument securing a Business Loan Note, which creates a first lien on an unsubordinated estate in fee simple in real property securing the Business Loan Note.

Mortgaged Property: The real property securing repayment of the debt evidenced by a Business Loan Note.

Obligor: The obligor on a Business Loan Note.

Person: Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof.

Purchase Price: The price paid on a Closing Date by the Purchaser to the Seller in exchange for the Business Loans in the related Business Loan Package as calculated in Section 3(a) of this Agreement.

Purchaser: Pacific Premier Bank, or its successor in interest or assigns or any successor to the Purchaser under this Agreement as herein provided.

REO Disposition Proceeds: All amounts received with respect to a disposition of real estate owned property.

Repurchase Price:  With respect to any Business Loan, as defined in the related Acknowledgment and Conveyance.

Seller: Lehman Brothers Holdings Inc. or its successor in interest or assigns or any successor to the Seller under this Agreement as herein provided.

Servicing Advances:  All customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable attorneys' fees and disbursements) incurred in the performance by the Seller of its servicing obligations, including, but not limited to, the cost of (i) the preservation, inspection, restoration and protection of the Mortgaged Property, (ii) any enforcement or administrative or judicial proceedings, including foreclosures and bankruptcies, (iii) the management and liquidation of the Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage, (iv) taxes, assessments, water rates, sewer rents and other charges which are or may become a lien upon the Mortgaged Property, and primary mortgage policy premiums and fire and hazard insurance coverage, and (v) any losses sustained by the Seller with respect to the liquidation of the Mortgaged Property.

<u>Unpaid Principal Balance</u>:  As to each Business Loan, as of any date of determination, (i) the unpaid principal balance of the Business Loan at the related Cut-off Date after giving effect to payments of principal received on or before such date, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Business Loan prior to such date representing payments or recoveries of principal or advances in lieu thereof.

## SECTION 2.  CONVEYANCE FROM SELLER TO PURCHASER.

(a) <u>Conveyance of Business Loans</u>.

On the related Closing Date the Seller, simultaneously with the execution and delivery of the related Acknowledgment and Conveyance Agreement, does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement, all rights, title and interest of the Seller in and to (i) the Business Loans in the related Business Loan Package, and (ii) the related Business Loan Documents for each Business Loan in the related Business Loan Package.

The Purchaser, on each Closing Date, does hereby assume for the benefit of the Seller all of the rights, title, interest, and obligations of the Seller arising from and after the related Closing Date, in and to (i) the Business Loans in the related Business Loan Package and (ii) with respect to each Business Loan in the related Business Loan Package, the related Business Loan Documents.

(b) <u>Books and Records</u>.

From and after the sale of the Business Loans in each Business Loan Package to the Purchaser all rights arising out of the Business Loans including but not limited to all funds received by Seller after the Cut-Off Date on or in connection with the Business Loans, shall be received and held by the Seller for the benefit of the Purchaser as owner of the Business Loans. Seller shall transmit any and all such funds to the Purchaser within five (5) calendar days.

The sale of each Business Loan shall be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller.

(c) <u>Delivery of Business Loan Documents</u>.

Except as previously disclosed by the Seller to the Purchaser, the Business Loan Documents are being held in custody on behalf of the Seller by one or more independent third party document custodians (the "<u>Custodian</u>").  The Seller will cause the related Custodial Agreements to be terminated with respect to the Business Loans and shall pay any outstanding custodial fees with respect to such Business Loans. Promptly following the related Closing Date, Seller shall deliver to Purchaser all Business Loan Documents and all customary documents in Purchaser's possession related to the Business Loans.

## SECTION 3.  PURCHASE PRICE.

(a) With respect to each Closing Date, the Purchase Price shall be the "Purchase Price Percentage" as defined in the related Acknowledgment and Conveyance, multiplied by the

aggregate Unpaid Principal Balance of the Business Loans listed on the related Business Loan Schedule as of the related Cut-off Date, plus accrued but unpaid interest on such Business Loans at the Business Loan Interest Rate from the last paid installment date through the day prior to the related Closing Date, inclusive.

(b) The Purchase Price for each Business Loan Package shall be paid by the Purchaser on the related Closing Date by wire transfer of immediately available federal funds.

(c) The Purchaser shall be entitled to (i) all principal received after the related Cut-off Date, and (ii) all payments of interest received after the related Cut-off Date on the Business Loans at the Business Loan Interest Rate.

(d) If, subsequent to the related Closing Date, the principal amount on which the Purchase Price with respect to a Business Loan was based is found to be in error, or if, for any other reason, the Purchase Price or such other amounts are found to be in error, within ten (10) business days of the receipt of information sufficient to provide notice that payment is due the party benefiting from the error shall pay an amount sufficient to correct and reconcile the Purchase Price.

## SECTION 4. SERVICING OF THE BUSINESS LOANS.

The Business Loans shall be sold by Seller to Purchaser on a servicing released basis. On each Closing Date, Seller, simultaneously with the execution and delivery of the related Acknowledgment and Conveyance Agreement, does hereby sell, transfer, assign and deliver to Purchaser, the servicing rights relating to such Business Loans sold. On each Closing Date, the Purchaser shall reimburse the Seller or its designated servicer for all unreimbursed Servicing Advances with respect to the Business Loans included in the related Business Loan Package.

## SECTION 5. REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby makes the representations and warranties set forth on Schedule 1 attached hereto to the Purchaser as of each Closing Date. As to each Business Loan, the Seller hereby makes the representations and warranties set forth on Schedule 2 attached hereto to the Purchaser as of the related Closing Date.

## SECTION 6. REPRESENTATIONS AND WARRANTIES OF PURCHASER.

The Purchaser hereby makes the following representations and warranties to the Seller as of each Closing Date:

(a) Due Organization and Authority. The Purchaser is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing to do business in each jurisdiction in which the conduct of its business or the ownership of its assets so requires. The Purchaser has the full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution,

-7-

delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of the Purchaser; and all requisite corporate action has been taken by the Purchaser to make this Agreement valid and binding upon the Purchaser in accordance with its terms;

(b) No Conflicts. Neither the execution and delivery of this Agreement, the acquisition of the Business Loans by the Purchaser or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Purchaser's charter or by-laws;

(c) No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to the best of the Purchaser's knowledge, threatened against the Purchaser which, either in any one instance or in the aggregate, would draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of the Purchaser contemplated herein; and

(d) No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Purchaser of or compliance by the Purchaser with this Agreement, or the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the Closing Date.

## SECTION 7.  REMEDIES FOR BREACH OF REPRESENTATIONS AND WARRANTIES; ADDITIONAL REPURCHASE OBLIGATIONS; ADDITIONAL REMEDIES.

(a) It is understood and agreed that the representations and warranties set forth in Section 5 and the provisions of Section 7(b) below shall survive the Closing Date, the sale of the Business Loans to the Purchaser and the delivery of the Business Loan Documents to the Purchaser, and shall inure to the benefit of the Purchaser, notwithstanding any examination of the Business Loan Documents or Mortgaged Property prior to the related Closing Date by or for the benefit of the Purchaser. Upon discovery by either the Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value or enforceability of the Business Loans or the interest of the Purchaser in the related Business Loan in the case of a representation and warranty relating to a particular Business Loan (a "Breach"), the party discovering such Breach shall give prompt written notice to the other.

Within sixty (60) days of the earlier of either discovery by or notice to the Seller of any Breach of a representation or warranty, the Seller shall, at its option, repurchase such Business Loan at the Repurchase Price or cure such Breach in all material respects at its sole expense. If Seller fails or is unable to cure such Breach within such sixty (60) day period, Seller shall immediately repurchase such Business Loan related to such Breach at the Repurchase Price.

At the time of repurchase, the Purchaser and the Seller shall arrange for the reassignment of the Deleted Business Loan to the Seller and the delivery to the Seller of any documents held by the Purchaser or its designee relating to the Deleted Business Loan.

In addition to such repurchase obligation, the Seller shall indemnify the Purchaser and its affiliates, directors, employees and agents and hold them each harmless against any and all losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a Breach of the Seller's representations and warranties contained in this Agreement.

It is understood and agreed that the obligations of the Seller set forth in this Section to cure or repurchase a defective Business Loan and to indemnify the Purchaser as set forth in the preceding paragraph constitute the sole remedies of the Purchaser respecting a Breach of the foregoing representations and warranties.

(b) It is understood and agreed that the representations and warranties set forth in Section 6 and the provisions of this clause (b) shall survive the Closing Date and shall inure to the benefit of the Seller.

Purchaser shall indemnify the Seller and its affiliates, directors, employees and agents and hold them each harmless against any and all losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from a Breach of the Purchaser's representations and warranties contained in this Agreement.

## SECTION 8. CLOSING.

Each closing for the purchase and sale of the Business Loans shall take place on the related Closing Date by facsimile, electronic mail, or in such other manner as the parties shall agree.

Each closing shall be subject to each of the following conditions:

(a) the Purchaser shall have received, or the Purchaser's attorneys shall have received in escrow, all Closing Documents as specified in Section 9 of this Agreement, in such forms as are mutually agreed upon, duly executed by all signatories other than the Purchaser as required pursuant to the respective terms thereof;

(b) the Seller shall have delivered and released to the Purchaser or the Purchaser's bailee, all Business Loan Documents;

(c) all other terms and conditions of this Agreement shall have been complied with; and

(d) the Purchaser shall have paid to the Seller on the related Closing Date the Purchase Price by wire transfer of immediately available funds to the account designated by the Seller.

## SECTION 9.  CLOSING DOCUMENTS.

The Closing Documents to be delivered on the initial Closing Date shall consist of a fully executed original of this Agreement.  The Closing Documents to be delivered on each Closing Date (including the initial Closing Date) shall consist of a fully executed original of the Acknowledgment and Conveyance.

## SECTION 10.   COSTS.

The Seller shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys.  The costs and expenses incurred in connection with the transfer and delivery of the Business Loans and Business Loan Documents, including the initial set of recording fees, fees for title policy endorsements and continuations shall be paid by the Seller. Each of the Seller and the Purchaser shall pay all costs due their respective brokers, if any.

## SECTION 11.   PROTECTION OF CONFIDENTIAL INFORMATION.

The parties hereto shall keep confidential and shall not divulge to any party, without the other party's prior written consent, the Purchase Price paid by the Purchaser for the Business Loans, except to the extent that it is appropriate for the applicable party to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

## SECTION 12.   NOTICES.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address shown below.

(i)   if to the Purchaser:

Pacific Premier Bank
1600 Sunflower Avenue
Costa Mesa, CA 92626
Attention: Mr. Eddie Wilcox

(ii)   if to Seller:

Lehman Brothers Holdings Inc.
745 Seventh Avenue
13th Floor
New York, New York 10019
Attention:  Contract Finance

Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

### SECTION 13.    SEVERABILITY CLAUSE.

Any part, provision, representation or warranty of this Agreement that is prohibited or that is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement that is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Business Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law that prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure, the economic effect of which is as close as possible to the economic effect of this Agreement, without regard to such invalidity.

### SECTION 14.    COUNTERPARTS.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

### SECTION 15.    PLACE OF DELIVERY AND GOVERNING LAW.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

### SECTION 16.    FURTHER AGREEMENTS.

The Purchaser and the Seller each agree to execute and deliver to the other such additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

### SECTION 17.    INTENTION OF THE PARTIES.

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling, 100% ownership interest in the Business Loans and not a debt instrument of the Seller or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Business

Loans. Moreover, the arrangement under which the Business Loans are held shall be consistent with classification of such arrangement as a grantor trust in the event it is not found to represent direct ownership of the Business Loans. Prior to the Closing Date, the Purchaser shall have the right to review the Business Loans and the related Business Loan Documents to determine the characteristics of the Business Loans which shall affect the Federal income tax consequences of owning the Business Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

### SECTION 18.    SUCCESSORS AND ASSIGNS; ASSIGNMENT OF PURCHASE AGREEMENT.

This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective successors and assigns of the Seller and the Purchaser. This Agreement shall not be assigned, pledged or hypothecated by Seller to a third party without the prior written consent of the Purchaser.

No transfer of a Business Loan may be made unless such transfer is in compliance with the terms hereof. For the purposes of this Agreement, the Seller shall be under no obligation to deal with any Person with respect to this agreement or the Business Loans unless the books and records show such Person as the owner of the Business Loan. The Purchaser may, subject to the terms of this Agreement, sell and transfer one or more of the Business Loans, provided, however, that the transferee will not be deemed to be a Purchaser hereunder binding upon the Seller unless such transferee shall agree in writing to be bound by the terms of this Agreement and an original counterpart of the instrument of transfer and an assignment and assumption of this Agreement in the form of Exhibit B hereto executed by the transferee shall have been delivered to the Seller. The Purchaser also shall advise the Seller of the transfer. Upon receipt of notice of the transfer, the Seller shall mark its books and records to reflect the ownership of the Business Loans of such assignee, and shall release the previous Purchaser from its obligations hereunder with respect to the Business Loans sold or transferred.

### SECTION 19.    WAIVERS; OTHER AGREEMENTS.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

### SECTION 20.    NO PERSONAL SOLICITATION.

(a)    From and after the related Closing Date, the Seller hereby agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on its behalf, to personally, by telephone or mail, solicit the borrower or obligor under any Business Loan for the purpose of refinancing a Business Loan, without the prior written consent of the Purchaser. Notwithstanding the foregoing, it is understood and agreed that promotions undertaken by the Seller or any of its affiliates which are directed to the general public at large, including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements shall not constitute solicitation under this Section. In addition, it is understood

and agreed that upon: (i) the receipt of a verification of mortgage; (ii) a request for demand for payoff, (iii) an Obligor initiated written or verbal communication indicating a desire to prepay the related Business Loan, or (iv) an Obligor initiated written or verbal communication initiating a title search, contact from the Seller shall not constitute solicitation under this Section.

(b)   For a period of one (1) year following each Closing Date under this Agreement, the Purchaser shall not directly solicit for employment any employee of the "Small Business Finance" division of the Seller who became known to the Purchaser in connection with the purchase and sale of the related Business Loan Package on such Closing Date. Further, for a period of one (1) year following each Closing Date under this Agreement, the "Small Business Finance" division of the Seller shall not directly solicit for employment any employee of the Purchaser who became known to the "Small Business Finance" division of the Seller in connection with the purchase and sale of the related Business Loan Package on such Closing Date.   For the avoidance of doubt, this Section 20(b) shall apply solely to Small Business Finance, a division of Lehman Brothers Bank, FSB, and shall not apply to any other division or affiliate of the Seller.

### SECTION 21.   EXHIBITS AND SCHEDULES.

The exhibits and schedules to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

### SECTION 22.   GENERAL INTERPRETIVE PRINCIPLES.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c) references herein to "Articles", "Sections", "Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d) a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f) the term "include" or "including" shall mean without limitation by reason of enumeration.

-13-

### SECTION 23.    REPRODUCTION OF DOCUMENTS.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

### SECTION 24.    DOCUMENTS MUTUALLY DRAFTED.

The Seller and the Purchaser agree that this Agreement and each other document prepared in connection with the transactions set forth herein have been mutually drafted and negotiated by each party, and consequently such documents shall not be construed against either party as the drafter thereof.

(Signature Page Immediately Follows)

-14-

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.
(Seller)

By:_____
    Name:  William Walenczyk
    Title:   Authorized Signatory


PACIFIC PREMIER BANK
(Purchaser)

By:_____
    Name:  Eddie Wilcox
    Title:   Authorized Signatory

## SCHEDULE 1

## REPRESENTATIONS AND WARRANTIES OF SELLER

(a) <u>Due Organization and Authority</u>. The Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Seller, and in any event the Seller is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of the related Business Loan in accordance with the terms of this Agreement; the Seller has the full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of the Seller; and all requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms;

(b) <u>Ordinary Course of Business</u>. The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller;

(c) <u>No Conflicts</u>. Neither the execution and delivery of this Agreement, the acquisition of the Business Loans by the Seller, the sale of the Business Loans to the Purchaser or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws;

(d) <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or, to the best of the Seller's knowledge, threatened against the Seller which, either in any one instance or in the aggregate, would draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein;

(e) <u>No Consent Required</u>. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement, or the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the Closing Date; and

(f) <u>Sale Treatment</u>. The Seller intends to treat the disposition of the Business Loans pursuant to this Agreement as a sale for accounting and tax purposes.

SCHEDULE 2

REPRESENTATIONS AND WARRANTIES REGARDING
INDIVIDUAL BUSINESS LOANS

Seller hereby represents, warrants, and covenants to Purchaser that, as of the related Closing Date for each Business Loan:

(a) <u>Business Loans as Described</u>. The information set forth in the related Business Loan Schedule is true and correct in all material respects;

(b) <u>No Outstanding Charges</u>.  There are no defaults in complying with the terms of the Mortgage, the Business Loan Note or any related guaranty, and all taxes, governmental assessments, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  There has been no delinquency of more than thirty (30) days in any payment by the Obligor.  The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Obligor, directly or indirectly, for the payment of any amount required under the Business Loan, except for interest accruing from the date of the Business Loan Note or date of disbursement of the Business Loan proceeds, whichever is later, to the day which precedes by one month the Due Date of the first installment of principal and interest;

(c) <u>Original Terms Unmodified</u>. The terms of the Business Loan Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary to protect the interests of the Purchaser and which has been delivered to the Custodian, unless otherwise previously disclosed in writing by the Seller to the Purchaser.  The terms of any such waiver, alteration or modification are reflected in the Business Loan Documents and, to the extent relating to a data field included in the related Business Loan Schedule, on such Business Loan Schedule.  No Obligor has been released, in whole or in part, except in connection with an assumption agreement approved by the title insurer, to the extent required by the policy, and which assumption agreement is, unless otherwise previously disclosed by the Seller to the Purchaser, part of the Business Loan Documents delivered to the Purchaser or its designee and the terms of which are reflected in the related Business Loan Schedule;

(d) <u>No Defenses</u>. The Business Loan is not subject to any right of rescission, set-off, nullification, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Business Loan Note or the Mortgage, or the exercise of any right thereunder, render either the Business Loan Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, nullification, counterclaim or defense has been asserted with respect thereto.  No Obligor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Business Loan was

originated and no Obligor is a debtor in any bankruptcy or insolvency proceeding on the Closing Date;

(e) <u>Hazard Insurance</u>. Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured for at least the lesser of (i) the Unpaid Principal Balance of such Mortgage Loan or (ii) the full replacement value, in each case by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located. If upon origination of the Business Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) a flood insurance policy meeting the requirement of the current regulations and guidelines of the Federal Flood Insurance Administration is in effect. All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid. The Mortgage obligates the Obligor thereunder to maintain the hazard insurance policy at the Obligor's cost and expense for at least the lesser of (i) the Unpaid Principal Balance of such Mortgage Loan or (ii) the full replacement value of all buildings or other improvements upon the Mortgaged Property, and on the Obligor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Obligor's cost and expense, and to seek reimbursement therefor from the Obligor. Where required by state law or regulation, the Obligor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding obligation of the insurer and is in full force and effect. The Seller has not engaged in, and has no knowledge of the Obligor's having engaged in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other Person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(f) <u>Compliance with Applicable Laws</u>. Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, equal credit opportunity or disclosure laws applicable to the Business Loan have been complied with;

(g) <u>No Satisfaction of Mortgage</u>. The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Obligor of any action, if the Obligor's failure to perform such action would cause the Business Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Obligor;

(h) <u>Location and Type of Mortgaged Property</u>. The Mortgaged Property is a fee simple property and consists of a single legal parcel or multiple legal parcels of real property that is a commercial or multi-family residential property;

2-2

(i) <u>Valid First Lien</u>. The Mortgage is a valid, subsisting enforceable and perfected first lien on the Mortgaged Property, including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing. The lien of the Mortgage is subject only to:

    (1) the lien of current real property taxes and assessments not yet due and payable;

    (2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Business Loan and (i) referred to or to otherwise considered in the appraisal made for the originator of the Business Loan or (ii) which do not adversely affect the appraised value of the Mortgaged Property set forth in such appraisal; and

    (3) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Business Loan establishes and creates a valid, subsisting and enforceable first lien and first priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser;

(j) <u>Validity of Business Loan Documents</u>. The Business Loan Documents are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Business Loan Note and the Mortgage and any other related agreement had legal capacity to enter into the Business Loan and to execute and deliver the Business Loan Note and the Mortgage and any other related agreement, and the Business Loan Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. To the best of the Seller's knowledge, the documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading;

(k) <u>Full Disbursement of Proceeds</u>. The Business Loan has been closed and, other than a Business Loan subject to a repair holdback, the proceeds of the Business Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Business Loan and the recording of the Mortgage were paid, and the Obligor is not entitled to any refund of any amounts paid or due under the Business Loan Note or Mortgage;

(l) <u>Ownership</u>. The Seller is the sole owner and holder of the Business Loan. The Business Loan is not assigned or pledged, and the Seller has good and marketable title thereto, and has full right to transfer and sell the Business Loan therein to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Business Loan pursuant to this Agreement;

(m) <u>Title Insurance</u>. The Business Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance, issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage against the Mortgaged Property in the original principal amount of the Business Loan. Where required by state law or regulation, the Obligor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against material encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and, to the best of the Seller's knowledge, no prior holder of the Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm or other Person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(n) <u>Location of Improvements; No Encroachments</u>. All improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation;

(o) <u>Customary Provisions</u>. The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Upon default by an Obligor on a Business Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Business Loan will be able to deliver good and merchantable title to the Mortgaged Property. There is no homestead or other exemption available to the Obligor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage;

(p) <u>Deeds of Trust</u>. In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by

the Purchaser to the trustee under the deed of trust, except as caused by actions or omissions taken by the Purchaser or in connection with a trustee's sale after default by the Obligor;

(q) <u>Transfer of Business Loans</u>. The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(r) <u>Application of Funds</u>. All payments received by the servicer with respect to any Business Loan have been remitted and properly accounted for as required. All funds received by the servicer in connection with the satisfaction of Business Loans, including but not limited to foreclosure proceeds and insurance proceeds from hazard losses, have been deposited in the appropriate principal and interest account or taxes and insurance included among the related escrow accounts; and all such funds have been applied to reduce the principal balance of the Business Loans in question, or for reimbursement of repairs to the Mortgaged Property in question, or as otherwise required; or are and will be in one of the related escrow accounts on the related Closing Date;

(s) There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Business Loan Note and, to the best of Seller's knowledge, no event which, with the passage of time or the giving of notice, or both, would constitute a default, breach, violation or event of acceleration;

(t) There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and to the best of Seller's knowledge no rights are outstanding that could give rise to any such lien) affecting the related Mortgaged Property which are prior to, or equal or coordinate with, the lien of the related Mortgage;

(u) No Mortgage is cross-collateralized or otherwise secures any debt or obligation other than the Business Loan sold to Purchaser pursuant to this Agreement. Further, no Business Loan is cross-defaulted with any other loan or obligation that is not secured by the related Mortgaged Property;

(v) To the best of Seller's knowledge, the Mortgaged Property is free of damage or there is no proceeding pending for the total or partial condemnation or taking by eminent domain thereof;

(w) The Mortgaged Property and use thereof constitute a legal and conforming use under applicable zoning regulations;

(x) Seller has no knowledge that the Mortgaged Property is not in compliance with all environmental laws, statutes, ordinances, regulations, orders, rules, decrees and similar requirements of federal, state, municipal and any other governmental authorities relating thereto. Neither Seller nor, to the best of Seller's knowledge, the Obligor has received notification from any federal, state, or other governmental authority of any potential, known, or threat of, release of hazardous substance on or from the Mortgaged Property or any potential or known liability which has resulted in or may result in a lien on the Mortgaged Property. Seller is not aware of any environmental audits on the Mortgaged Property which indicate any environmental problems. For the purpose of this representation, the term "hazardous substance" (i) shall have

the meaning given by any applicable federal, state, municipal or other law and courts of the jurisdiction where the Mortgaged Property is located and (ii) shall include asbestos;

(y) With respect to each Business Loan, each scheduled monthly payment by Obligor, if paid and applied on the applicable Due Date, results in a principal reduction of the indebtedness evidenced by the Business Loan Note, and if not, the Business Loan Note provides that the monthly payment can be recalculated either at the scheduled interest rate change date or at any time the monthly payment is insufficient to fully amortize the remaining outstanding indebtedness by the maturity date stated in the Business Loan Note;

(z) With respect to each Business Loan, each scheduled monthly payment by Obligor, if paid and applied on the applicable Due Date, results in payment in full of the interest accrued, and if not, the Business Loan Note provides that the indebtedness can be recalculated either at the scheduled interest rate change date or at any time a payment is insufficient to cover interest accrued;

(aa)    The origination, servicing and collection practices used by Seller and any servicer with respect to each Business Loan Note, Mortgage, and any related agreements have met customary standards utilized by mortgage lenders or servicers, as applicable, in their commercial mortgage origination and servicing business; and

(bb)    With respect to each Business Loan, Seller is not aware of any pending or threatened litigation which would adversely affect the rights of Purchaser to enforce the Business Loan or realize the benefits of the security provided by the Mortgage.

EXHIBIT A

FORM OF ACKNOWLEDGMENT AND CONVEYANCE

This is an Acknowledgment and Conveyance Agreement delivered pursuant to that certain Flow Business Loan Purchase and Warranties Agreement, dated as of May 1, 2008 (the "Agreement"), by and between Lehman Brothers Holdings Inc., as Seller, and Pacific Premier Bank, as Purchaser. All capitalized terms used herein without definition shall have the meanings ascribed thereto in the Purchase Agreement.

The Purchaser and the Seller hereby confirm that they have reached agreement on the purchase and sale of the Business Loans described on the Business Loan Schedule attached as Exhibit 1 hereto on the terms and conditions set forth in the Agreement (which terms and conditions are incorporated herein by this reference) and this Acknowledgment and Conveyance.

Accordingly, on this __ day of _____, 200_, the Seller does hereby sell, transfer, assign, set over and convey to the Purchaser all rights, title and interest of the Seller in and to the Business Loans listed on the Business Loan Schedule attached hereto, together with the related rights and obligations arising under the related Business Loan Documents. Pursuant to Section 2 of the Agreement, the Seller has delivered to the Custodian the documents for each Business Loan to be purchased as set forth in the Agreement. The ownership of each Business Loan Document is vested in the Purchaser and the ownership of all records and documents with respect to the related Business Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be delivered promptly by the Seller to the Purchaser.

The Seller confirms to the Purchaser that the representations and warranties set forth in Schedule 2 of the Agreement with respect to each of the Business Loans listed on the Business Loan Schedule attached hereto, and the representations and warranties in Schedule 1 of the Agreement with respect to the Seller, are true and correct as of the date hereof.

For purposes of the Agreement, with respect to the Business Loans listed on the Business Loan Schedule attached hereto: (a) the Closing Date shall be the date hereof, (b) the Cut-Off Date shall be [_____], (c) the Repurchase Price shall be [_____], and (d) the Purchase Price Percentage shall be [_____].

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

(Signature page immediately follows)

A-1

This Acknowledgment and Conveyance Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed an original, and all such counterparts shall constitute one and the same instrument.

PACIFIC PREMIER BANK
(Purchaser)


By:_____

Name:_____

Title:_____


LEHMAN BROTHERS HOLDINGS INC.
(Seller)


By:_____

Name:_____

Title:_____

EXHIBIT 1 to
Acknowledgment and Conveyance

## BUSINESS LOAN SCHEDULE

EXHIBIT B

FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT, dated _____ __, 200__, between _____, a [STATE] [ENTITY] ("Assignor") and _____, a [STATE] [ENTITY] ("Assignee"):

For and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration the receipt and sufficiency of which hereby are acknowledged, and of the mutual covenants herein contained, the parties hereto hereby agree as follows:

1.    The Assignor hereby grants, transfers and assigns to Assignee, as Purchaser, all of the right, title and interest of Assignor under that certain Flow Business Loan Purchase and Warranties Agreement (the "Purchase Agreement") dated as of May 1, 2008, by and between Lehman Brothers Holdings Inc. (the "Seller") and Pacific Premier Bank (the "Purchaser").

2.    The Assignor warrants and represents to, and covenants with, the Assignee that:

a.    The Assignor is the lawful owner of the Business Loans with the full right to transfer the Business Loans free from any and all claims and encumbrances whatsoever;

b.    The Assignor has not received notice of, and has no knowledge of, any offsets, counterclaims or other defenses available to the Seller with respect to the Purchase Agreement or the Business Loans;

c.    The Assignor has not waived or agreed to any waiver under, or agreed to any amendment or other modification of, the Purchase Agreement, including without limitation, the transfer of the servicing obligations under the Purchase Agreement. The Assignor has no knowledge of, and has not received notice of, any waivers under or amendments or other modifications of, or assignments of rights or obligations under, the Purchase Agreement; and

d.    Neither the Assignor nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Business Loans, any interest in the Business Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Business Loans, any interest in the Business Loans or any other similar security from, or otherwise approached or negotiated with respect to the Business Loans, any interest in the Business Loans or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action which would constitute a distribution of the Business Loans under the Securities Act of 1933 (the "33 Act") or which would render the disposition of the Business Loans a violation of Section 5 of the 33 Act or require registration pursuant thereto.

3.    The Assignee warrants and represents to, and covenants with, the Assignor and the Seller pursuant to the Agreements that:

B-1

a.    The Assignee agrees to be bound, as Purchaser, by all of the terms, covenants and conditions of the Purchase Agreement, the Business Loans, and from and after the date hereof, the Assignee assumes for the benefit of each of the Seller and the Assignor all of the Assignor's obligations as Purchaser thereunder;

b.    The Assignee understands that the Business Loans have not been registered under the 33 Act or the securities laws of any state;

c.    The purchase price being paid by the Assignee for the Business Loans is in excess of $250,000 and will be paid by cash remittance of the full purchase price within 60 days of the sale;

d.    The Assignee is acquiring the Business Loans for investment for its own account only and not for any other person;

e.    The Assignee considers itself a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Business Loans;

f.    The Assignee has been furnished with all information regarding the Business Loans that it has requested from the Assignor or the Seller;

g.    Neither the Assignee nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Business Loans, any interest in the Business Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Business Loans, any interest in the Business Loans or any other similar security from, or otherwise approached or negotiated with respect to the Business Loans, any interest in the Business Loans or any other similar security with, any person in any manner which would constitute a distribution of the Business Loans under the '33 Act or which would render the disposition of the Business Loans a violation of Section 5 of the '33 Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Business Loans; and

h.    Either: (1) the Assignee is not an employee benefit plan ("Plan") within the meaning of section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or a plan (also "Plan") within the meaning of section 4975(e)(1) of the Internal Revenue Code of 1986 ("Code"), and the Assignee is not directly or indirectly purchasing the Business Loans on behalf of, investment manager of, as named fiduciary of, as Trustee of, or with assets of, a Plan; or (2) the Assignee's purchase of the Business Loans will not result in a prohibited transaction under section 406 of ERISA or section 4975 of the Code.

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption Agreement to be executed by their duly authorized officers as of the date first above written.

_____          _____
Assignor                                              Assignee

B-2

By:_____    By:_____

Its:_____    Its:_____

EXHIBIT C

BUSINESS LOAN DOCUMENTS

With respect to each Business Loan, the Business Loan Documents shall consist of the following:

(a)     the original Business Loan Note bearing all intervening endorsements and including any riders to the Business Loan Note endorsed "Pay to the order of _____, without recourse and signed in the name of the previous owner by an authorized officer;

(b)     the original of any guarantee executed in connection with the Business Loan Note (if applicable);

(c)     the original Mortgage with evidence of recording thereon or, copies certified by the related recording office or if the original Mortgage has not yet been returned from the recording office, a certified copy indicating that such Mortgage has been delivered for recording;

(d)     the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon or, if an original of any of these documents has not been returned from the recording office, a certified copy thereof;

(e)     the original Assignment of Mortgage as appropriate, in recordable form, for each Business Loan to _____;

(f)     the originals of any intervening recorded Assignments of Mortgage showing a complete chain of assignment from origination to the Seller, including warehousing assignments, with evidence of recording thereon, (or, if any original intervening Assignment of Mortgage has not been returned from the recording office, a certified copy thereof;

(g)     with respect to each Business Loan, the original mortgage title insurance policy or, if an original mortgage title insurance policy has not been issued as of the Closing Date, a title commitment, title binder or preliminary report.   In each instance where the original mortgage title insurance policy has not been issued as of the Closing Date, Seller shall provide the Purchaser with the original mortgage title insurance policy within 180 calendar days after the Closing Date;

(h)     in the case of Business Loans including collateral properly perfected by the filing of a UCC financing statement, the original UCC-1(s), with evidence of filing thereon; and

(i)     in the case of Business Loans including collateral properly perfected by the filing of a UCC financing statement, original UCC-3 assignment(s) of any related UCC-1(s), if applicable.

C-1

## ACKNOWLEDGMENT AND CONVEYANCE
### (Group No. 2008-1)

This is an Acknowledgment and Conveyance Agreement delivered pursuant to that certain Flow Business Loan Purchase and Warranties Agreement, dated as of May 1, 2008 (the "Agreement"), by and between Lehman Brothers Holdings Inc., as Seller, and Pacific Premier Bank, as Purchaser. All capitalized terms used herein without definition shall have the meanings ascribed thereto in the Purchase Agreement.

The Purchaser and the Seller hereby confirm that they have reached agreement on the purchase and sale of the Business Loans described on the Business Loan Schedule attached as Exhibit 1 hereto on the terms and conditions set forth in the Agreement (which terms and conditions are incorporated herein by this reference) and this Acknowledgment and Conveyance.

Accordingly, on this 30th day of May, 2008, the Seller does hereby sell, transfer, assign, set over and convey to the Purchaser all rights, title and interest of the Seller in and to the Business Loans listed on the Business Loan Schedule attached hereto, together with the related rights and obligations arising under the related Business Loan Documents. Pursuant to Section 2 of the Agreement, the Seller has delivered to the Custodian the documents for each Business Loan to be purchased as set forth in the Agreement. The ownership of each Business Loan Document is vested in the Purchaser and the ownership of all records and documents with respect to the related Business Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be delivered promptly by the Seller to the Purchaser.

The Seller confirms to the Purchaser that, except as set forth in this paragraph below, the representations and warranties set forth in Schedule 2 of the Agreement with respect to each of the Business Loans listed on the Business Loan Schedule attached hereto, and the representations and warranties in Schedule 1 of the Agreement with respect to the Seller, are true and correct as of the date hereof. Notwithstanding anything herein or in the Agreement to the contrary, the Purchaser hereby acknowledges that as of the Closing Date, the property taxes relating to the Mortgaged Property located at 16101-16129 East Old Valley Boulevard and 16132 Abbey Street, which secures the Business Loan identified by the parties as loan number ███████30-99, have not been paid when due and are delinquent (the "Delinquent Taxes"). The Purchaser has agreed to purchase such Business Loan despite the existence of the Delinquent Taxes; thus the Purchaser hereby agrees that it shall not assert a breach of a representation or warranty under the Agreement relating to the Delinquent Taxes for the Business Loan identified by the parties as loan number ███████30-99.

For purposes of the Agreement, with respect to the Business Loans listed on the Business Loan Schedule attached hereto: (a) the Closing Date shall be the date hereof, (b) the Cut-Off Date shall be May 26, 2008, (c) the Repurchase Price shall be the Unpaid Principal Balance of the Business Loan to be repurchased as of the date of repurchase, plus interest on such Unpaid Principal Balance at the Business Loan interest rate from the date on which interest has last been paid and distributed to the Purchaser to the date of repurchase, plus all unreimbursed Servicing Advances with respect to the Business Loan to be repurchased, plus,

solely in the event that such repurchase takes place on or prior to the date that is two years from the date hereof, an amount equal to the product of the Unpaid Principal Balance of the Business Loan at the time of repurchase times the purchase price premium paid by the Purchaser (i.e., the percentage over par) for the Business Loan, and (d) the Purchase Price Percentage shall be 101.75000%.

This Acknowledgment and Conveyance Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed an original, and all such counterparts shall constitute one and the same instrument.

PACIFIC PREMIER BANK
(Purchaser)

By:_____
Name: Eddie Wilcox
Title:  Authorized Signatory


LEHMAN BROTHERS HOLDINGS INC.
(Seller)


By:_____
Name: William Walenczyk
Title:  Authorized Signatory

EXHIBIT 1 to
Acknowledgment and Conveyance

## BUSINESS LOAN SCHEDULE

| LOAN ID | MTS | ORIGINAL BALANCE | CURRENT BALANCE | PRICE | PURCHASE PREMIUM | PURCHASE BALANCE | RATE | PT DATE | ACCRUED DAYS | ACCRUED INTEREST | TOTAL WIRE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00-99 | VH65 | 500,000.00 | 498,115.31 | 101.75 | 8,717.02 | 506,832.33 | 7.42 | 5/5/2008 | 24 | 2,464.01 | 509,296.34 |
| 22-99 | VH65 | 500,000.00 | 497,844.15 | 101.75 | 8,712.27 | 506,556.42 | 7.51 | 5/5/2008 | 24 | 2,492.54 | 509,048.96 |
| 02-99 | VH65 | 1,750,000.00 | 1,738,773.45 | 101.75 | 30,428.54 | 1,769,201.99 | 6.43 | 5/1/2008 | 28 | 8,695.80 | 1,777,897.79 |
| 30-99 | VH65 | 1,600,000.00 | 1,593,890.23 | 101.75 | 27,893.08 | 1,621,783.31 | 7.37 | 5/5/2008 | 24 | 7,831.31 | 1,629,614.62 |
| 36-99 | VH75 | 250,000.00 | 248,723.60 | 101.75 | 4,352.66 | 253,076.26 | 7.57 | 5/28/2008 | 1 | 52.30 | 253,128.56 |
| 64-99 | VH65 | 1,900,000.00 | 1,894,427.32 | 101.75 | 33,152.48 | 1,927,579.80 | 7.16 | 4/29/2008 | 30 | 11,303.42 | 1,938,883.22 |
| 40-99 | VH75 | 1,200,000.00 | 1,198,314.55 | 101.75 | 20,970.50 | 1,219,285.05 | 7.15 | 5/7/2008 | 22 | 5,235.97 | 1,224,521.02 |
| 19-99 | VH65 | 767,000.00 | 766,340.94 | 101.75 | 13,410.97 | 779,751.91 | 6.15 | 5/7/2008 | 22 | 2,880.16 | 782,632.07 |
| 94-99 | VH65 | 1,125,000.00 | 1,122,690.93 | 101.75 | 19,647.09 | 1,142,338.02 | 5.95 | 4/25/2008 | 34 | 6,308.90 | 1,148,646.92 |
| 64-99 | VH65 | 800,000.00 | 799,372.76 | 101.75 | 13,989.02 | 813,361.78 | 7.75 | 5/1/2008 | 28 | 4,818.44 | 818,180.22 |
| 46-97 | VH65 | 500,000.00 | 499,166.26 | 101.75 | 8,735.41 | 507,901.67 | 8.85 | 5/8/2008 | 21 | 2,576.95 | 510,478.62 |
| 11 | | 10,892,000.00 | 10,857,659.50 | 101.75 | 190,009.04 | 11,047,668.54 | 7.03 | | | 54,659.80 | 11,102,328.34 |

## ACKNOWLEDGMENT AND CONVEYANCE
### (Group No. 2008-1)

This is an Acknowledgment and Conveyance Agreement delivered pursuant to that certain Flow Business Loan Purchase and Warranties Agreement, dated as of May 1, 2008 (the "Agreement"), by and between Lehman Brothers Holdings Inc., as Seller, and Pacific Premier Bank, as Purchaser. All capitalized terms used herein without definition shall have the meanings ascribed thereto in the Purchase Agreement.

The Purchaser and the Seller hereby confirm that they have reached agreement on the purchase and sale of the Business Loans described on the Business Loan Schedule attached as Exhibit 1 hereto on the terms and conditions set forth in the Agreement (which terms and conditions are incorporated herein by this reference) and this Acknowledgment and Conveyance.

Accordingly, on this 30th day of May, 2008, the Seller does hereby sell, transfer, assign, set over and convey to the Purchaser all rights, title and interest of the Seller in and to the Business Loans listed on the Business Loan Schedule attached hereto, together with the related rights and obligations arising under the related Business Loan Documents. Pursuant to Section 2 of the Agreement, the Seller has delivered to the Custodian the documents for each Business Loan to be purchased as set forth in the Agreement. The ownership of each Business Loan Document is vested in the Purchaser and the ownership of all records and documents with respect to the related Business Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be delivered promptly by the Seller to the Purchaser.

The Seller confirms to the Purchaser that, except as set forth in this paragraph below, the representations and warranties set forth in Schedule 2 of the Agreement with respect to each of the Business Loans listed on the Business Loan Schedule attached hereto, and the representations and warranties in Schedule 1 of the Agreement with respect to the Seller, are true and correct as of the date hereof. Notwithstanding anything herein or in the Agreement to the contrary, the Purchaser hereby acknowledges that as of the Closing Date, the property taxes relating to the Mortgaged Property located at 16101-16129 East Old Valley Boulevard and 16132 Abbey Street, which secures the Business Loan identified by the parties as loan number ██████30-99, have not been paid when due and are delinquent (the "Delinquent Taxes"). The Purchaser has agreed to purchase such Business Loan despite the existence of the Delinquent Taxes; thus the Purchaser hereby agrees that it shall not assert a breach of a representation or warranty under the Agreement relating to the Delinquent Taxes for the Business Loan identified by the parties as loan number ██████30-99.

For purposes of the Agreement, with respect to the Business Loans listed on the Business Loan Schedule attached hereto: (a) the Closing Date shall be the date hereof, (b) the Cut-Off Date shall be May 26, 2008, (c) the Repurchase Price shall be the Unpaid Principal Balance of the Business Loan to be repurchased as of the date of repurchase, plus interest on such Unpaid Principal Balance at the Business Loan interest rate from the date on which interest has last been paid and distributed to the Purchaser to the date of repurchase, plus all unreimbursed Servicing Advances with respect to the Business Loan to be repurchased, plus,

solely in the event that such repurchase takes place on or prior to the date that is two years from the date hereof, an amount equal to the product of the Unpaid Principal Balance of the Business Loan at the time of repurchase times the purchase price premium paid by the Purchaser (i.e., the percentage over par) for the Business Loan, and (d) the Purchase Price Percentage shall be 101.75000%.

This Acknowledgment and Conveyance Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed an original, and all such counterparts shall constitute one and the same instrument.

PACIFIC PREMIER BANK
(Purchaser)

By: _____
Name: Eddie Wilcox
Title: Authorized Signatory


LEHMAN BROTHERS HOLDINGS INC.
(Seller)


By: _____
Name: William Walenczyk
Title: Authorized Signatory

EXHIBIT 1 to
Acknowledgment and Conveyance

BUSINESS LOAN SCHEDULE

| LOAN ID | MTS | ORIGINAL BALANCE | CURRENT BALANCE | PRICE | PURCHASE PREMIUM | PURCHASE BALANCE | RATE | PT DATE | ACCRUED DAYS | ACCRUED INTEREST | TOTAL WIRE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00-99 | VH65 | 500,000.00 | 498,115.31 | 101.75 | 8,717.02 | 506,832.33 | 7.42 | 5/5/2008 | 24 | 2,464.01 | 509,296.34 |
| 22-99 | VH65 | 500,000.00 | 497,844.15 | 101.75 | 8,712.27 | 506,556.42 | 7.51 | 5/5/2008 | 24 | 2,492.54 | 509,048.96 |
| 02-99 | VH65 | 1,750,000.00 | 1,738,773.45 | 101.75 | 30,428.54 | 1,769,201.99 | 6.43 | 5/1/2008 | 28 | 8,695.80 | 1,777,897.79 |
| 30-99 | VH65 | 1,600,000.00 | 1,593,890.23 | 101.75 | 27,893.08 | 1,621,783.31 | 7.37 | 5/5/2008 | 24 | 7,831.31 | 1,629,614.62 |
| 36-99 | VH75 | 250,000.00 | 248,723.60 | 101.75 | 4,352.66 | 253,076.26 | 7.57 | 5/28/2008 | 1 | 52.30 | 253,128.56 |
| 64-99 | VH65 | 1,900,000.00 | 1,894,427.32 | 101.75 | 33,152.48 | 1,927,579.80 | 7.16 | 4/29/2008 | 30 | 11,303.42 | 1,938,883.22 |
| 40-99 | VH75 | 1,200,000.00 | 1,198,314.55 | 101.75 | 20,970.50 | 1,219,285.05 | 7.15 | 5/7/2008 | 22 | 5,235.97 | 1,224,521.02 |
| 19-99 | VH65 | 767,000.00 | 766,340.94 | 101.75 | 13,410.97 | 779,751.91 | 6.15 | 5/7/2008 | 22 | 2,880.16 | 782,632.07 |
| 94-99 | VH65 | 1,125,000.00 | 1,122,690.93 | 101.75 | 19,647.09 | 1,142,338.02 | 5.95 | 4/25/2008 | 34 | 6,308.90 | 1,148,646.92 |
| 64-99 | VH65 | 800,000.00 | 799,372.76 | 101.75 | 13,989.02 | 813,361.78 | 7.75 | 5/1/2008 | 28 | 4,818.44 | 818,180.22 |
| 46-97 | VH65 | 500,000.00 | 499,166.26 | 101.75 | 8,735.41 | 507,901.67 | 8.85 | 5/8/2008 | 21 | 2,576.95 | 510,478.62 |
| 11 | | 10,892,000.00 | 10,857,659.50 | 101.75 | 190,009.04 | 11,047,668.54 | 7.03 | | | 54,659.80 | 11,102,328.34 |

# Lehman Portfolio Purchase

| Loan Number | PPB Loan Number | Borrower | City | Original Balance | Current Balance | Origination Date | Maturity Date | Term | Rate | WACC | PPB Reviewed Value | PPB LTV | Loan Type | Prepay | Program | % Owner Occupied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40-99 | 53-22 | Cisco Specialty | Orange | 1,200,000 | 1,198,315 | 1/10/2008 | 2/1/2038 | 360 | 7.150% | 0.789% | 2,450,000 | 49.0% | 5/1 Hybrid | 3,3,3,3,3 | Limited Doc | 100% |
| 46-97 | 54-20 | Carlos Patti | Anaheim | 500,000 | 499,166 | 10/31/2007 | 11/1/2037 | 360 | 8.85% | 0.407% | 1,400,000 | 35.7% | Fixed | 10,9,8,7,6,5,4,3,2,1 | Limited Doc | 100% |
| 00-99 | 55-18 | Mousar Oliver | Los Angeles | 500,000 | 498,115 | 10/18/2007 | 11/1/2037 | 360 | 7.42% | 0.340% | 1,600,000 | 31.3% | Fixed | 10,10,10,10,10 | Full Doc | 100% |
| 30-99 | 56-16 | Nacso Perez | La Puente | 1,600,000 | 1,593,890 | 10/16/2007 | 11/1/2037 | 360 | 7.37% | 1.082% | 2,600,000 | 61.5% | Fixed | 10,9,8,7,6,5,4,3,2,1 | Full Doc | 100% |
| 22-99 | 57-14 | Mahavish Enterprises | San Francisco | 500,000 | 497,844 | 9/28/2007 | 10/1/2037 | 360 | 7.51% | 0.344% | 1,350,000 | 37.0% | Fixed | 10,10,10,10,10 | Full Doc | 76% |
| 36-99 | 58-12 | Kenneth Isaak | Fullerton | 250,000 | 249,293 | 11/20/2007 | 12/1/2037 | 360 | 7.57% | 0.174% | 790,000 | 31.6% | Fixed | 10,10,10,10,10 | Full Doc | 100% |
| 19-99 | 59-21 | Donald Skala | Norwalk | 767,000 | 766,341 | 2/14/2008 | 3/1/2038 | 360 | 6.15% | 0.434% | 1,450,000 | 52.9% | Fixed | 10,9,8,7,6,5,4,3,2,1 | Full Doc | 100% |
| 64-99 | 71-12 | Jack Kethchian | Los Angeles | 800,000 | 799,372 | 3/18/2008 | 4/1/2038 | 360 | 7.75% | 0.571% | 2,700,000 | 29.6% | 5/1 Hybrid | 10,9,8,7,6,5,4,3,2,1 | Full Doc | 100% |
| 02-99 | 70-14 | Skeeter Trust | Van Nuys | 1,750,000 | 1,738,773 | 9/13/2007 | 10/1/2037 | 360 | 6.43% | 1.030% | 5,000,000 | 35.0% | Fixed | 10% for 10 years | Limited Doc | 49% |
| 94-99 | 60-13 | Brian Hoyt | Anaheim | 1,125,000 | 1,122,691 | 3/18/2008 | 4/1/2038 | 360 | 5.950% | 0.615% | 1,900,000 | 59.2% | Fixed | 10,9,8,7,6,5,4,3,2,1 | Full Doc | 19% |
| 64-99 | 69-22 | William Blurock | Costa Mesa | 1,900,000 | 1,894,427 | 1/24/2008 | 2/1/2038 | 360 | 7.16% | 1.249% | 3,870,000 | 49.1% | Fixed | 10,10,10,10,10 | Full Doc | 0% |
| 11 Loans | | | | 10,892,000 | 10,858,227 | | | | | 7.035% | | 46.1% | | | | |

Purchase Price    101.75%    $ 11,048,246