Hearing Date and Time: July 17, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 3, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                :
In re                                                           :        **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        **08-13555 (JMP)**
                                                                :
                                    Debtors.          :        **(Jointly Administered)**
                                                                :
-------------------------------------------------------------------x

## NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC., PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, for

authorization to extend the stay of avoidance actions and for certain related relief, all as more

fully described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**July 17, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq. and Jacqueline Marcus, Esq., attorneys for LBHI; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Susan Golden, Esq. and Andrea Schwartz, Esq.; and (iv) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **July 3, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 21, 2013
        New York, New York

/s/ Jacqueline Marcus
Richard W. Slack
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**Hearing Date and Time: July 17, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: July 3, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                :
In re                                           :      Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :      08-13555 (JMP)
                                                :
                         Debtors.               :      (Jointly Administered)
                                                :
-------------------------------------------------------------------x
```

## MOTION OF LEHMAN BROTHERS HOLDINGS INC., PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), submits this motion (the "Motion"), and

respectfully represents:

### Preliminary Statement

1.      On September 15, 2008 and periodically thereafter (as applicable, the

"Commencement Date"), LBHI and certain of its subsidiaries (together, the "Chapter 11

Estates") commenced the largest and most complicated chapter 11 cases in history. After the

Commencement Date, the Chapter 11 Estates began their review and analysis of prepetition

transactions. Such review has been extremely difficult, time consuming, and complicated.

Nevertheless, in order to prevent the loss of avoidance causes of action prior to the expiration of

the applicable two-year statute of limitations, the Chapter 11 Estates commenced over 50 actions

seeking to avoid or recover significant transfers with respect to over 240 transactions under

sections 544, 545, 547, 548, 549, 550 and/or 553 of title 11 of the United States Code (the

"Bankruptcy Code"). In addition, the Chapter 11 Estates entered into tolling agreements with

more than 200 potential defendants.

2.        Pursuant to the *Order Staying Avoidance Actions and Granting Certain*

*Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule*

*7004(a)(1)*, dated October 20, 2010 [ECF No. 12199] (the "Initial Stay Order"), the Court stayed

all Avoidance Actions[1] for nine (9) months (the "Stay"). Pursuant to subsequent orders of the

Court (together with the Initial Stay Order, the "Stay Orders"), the Court has further extended the

Stay. Unless further action is taken by the Court, the Stay will expire on July 20, 2013.

3.        The Initial Stay Order also extended the deadline to effect service (the

"Service Deadline") on the Avoidance Action Defendants[2] to 180 days after the filing of a

complaint, without prejudice to the Chapter 11 Estates' right to seek further extensions. The

---

[1] A schedule of the pending actions involving avoidance claims of the Chapter 11 Estates is attached as Exhibit A to the proposed order. The relief requested by this Motion is with respect to all actions involving claims of the Chapter 11 Estates under sections 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code – those that have already been commenced and any additional avoidance action commenced hereinafter by the Plan Administrator (collectively, the "Avoidance Actions"). Avoidance Action, as used herein, does not include any adversary proceeding for which the Court has entered a scheduling order or for which the Stay (as defined below) otherwise has been lifted, and any such adversary proceeding is not included on Exhibit A attached to the proposed order. *See*, *e.g.*, *Lehman Brothers Holdings Inc., et al., v. Citibank, N.A., et al.*, Adv. Proc. No. 12-01044 (JMP) [ECF No. 5].

[2] "Avoidance Action Defendant" means any defendant in an Avoidance Action.

Court subsequently entered additional orders extending the Service Deadline, *inter alia*, to allow

the Chapter 11 Estates time to complete discovery to obtain information necessary to identify

parties and to effect service in certain of the Avoidance Actions.

4.      The Stay has allowed the Chapter 11 Estates to engage in an alternative

dispute resolution ("ADR") program that has been enormously successful in resolving often

difficult and complex matters that otherwise would have required expenditure of a huge amount

of time and expense for the Chapter 11 Estates to pursue through litigation and for the Court to

manage and oversee.  Largely as a result of the Stay, the Chapter 11 Estates have continued to

make substantial progress in consensually resolving the Avoidance Actions.  To date, the ADR

program has yielded more than $1.543 billion for the Chapter 11 Estates.

5.      The SPV Derivatives ADR Procedures (as defined below) have been

critical to the Chapter 11 Estates' ability to resolve disputes where a special purpose vehicle

("SPV") is a counterparty in one or more derivative swaps.  Currently, there are 132 Avoidance

Action Defendants that are subject to the SPV Derivatives ADR Procedures.  The Stay has

offered the Chapter 11 Estates an opportunity to reach consensual resolutions with SPV

counterparties and noteholders within the framework of the SPV Derivatives ADR Procedures

and otherwise.  Indeed, the Chapter 11 Estates have now reached final resolution, by settlement

or otherwise, with over 134 defendants in connection with the Avoidance Actions involving SPV

derivatives matters, and the Chapter 11 Estates are in the process of reaching resolution with

additional defendants, pending final documentation.  Much of this success would not have been

possible without the Stay, which has preserved the status quo in the litigation and, therefore,

provided the Chapter 11 Estates and counterparties with the opportunity to engage in the ADR

process as to SPV derivatives matters or otherwise resolve such matters.

6.    Moreover, in recent months, the Chapter 11 Estates have accelerated the pace of initiating SPV ADR proceedings as to Avoidance Action Defendants.  The Chapter 11 Estates currently anticipate that ADRs will be commenced, or resolutions otherwise reached, as to virtually all of the SPV derivatives matters within the next six weeks, other than with respect to those defendants in the Distributed Action (as defined below) who have not already been identified or as to which the amount in dispute is not yet clear.  The Stay has enabled the Chapter 11 Estates to commence SPV ADR proceedings as expeditiously as the unique circumstances of these chapter 11 cases have permitted.  Extension of the Stay for a discrete period is essential to the continued efficacy of the ADR process.

7.    Previous motions to extend the Stay have not generated significant objection from the defendants in the Avoidance Actions – thus suggesting that there is consensus that the Stay is beneficial to both the Chapter 11 Estates and the Avoidance Action Defendants in allowing them to reach consensual resolutions to their disputes without the expense and distraction of active litigation and the need for intervention of the Court.  In fact, only Nationwide Life Insurance Company and Nationwide Mutual Insurance Company (together, the "Nationwide Parties") filed an objection to the last motion to extend the Stay, and in May 2013, ADR was commenced as to the Nationwide Parties.

8.    In order to most efficiently fulfill their fiduciary duties regarding the Avoidance Actions, the Chapter 11 Estates require a further extension of the Stay that will allow continued negotiations with Avoidance Action Defendants so as to consensually resolve the Avoidance Actions that remain pending without the need for Court intervention and the cost and burden of full-blown litigation.  A further extension of the Service Deadline is also necessary in

order to ensure that the Chapter 11 Estates are able to effect service of the Second Amended

Complaint on all defendants in the Distributed Action (as defined below).

9.    The Plan Administrator, therefore, requests a further six (6) month

extension of the Stay to January 20, 2014, and an extension of the Service Deadline with respect

to the Distributed Action until January 20, 2014.  The extension of the Stay will enable the

Chapter 11 Estates to continue their efforts toward consensually resolving the Avoidance

Actions, while avoiding the enormous costs to and burdens on all parties and the Court

associated with pursuing active litigation in the Avoidance Actions.  If the Stay is not extended,

the Chapter 11 Estates will be forced to divert their resources from actively pursuing consensual

resolutions of the Avoidance Actions to responding to discovery demands, engaging in motion

practice and preparing for contested proceedings and trials.  Not only would wide-scale litigation

of the Avoidance Actions drain the Chapter 11 Estates' resources, it would also monopolize the

Court's docket.  The extension of the Service Deadline will preserve the benefit of the

Distributed Action, which the Chapter 11 Estates will not be able to prosecute if the summons

and complaint cannot be served by the current Service Deadline.

## Jurisdiction

10.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

11.    The Chapter 11 Estates' cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to section 1015(b) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

13.      The Creditors' Committee was given standing and authority to prosecute and settle certain Avoidance Actions (collectively, the "LMA Actions") pursuant to the *Order Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., to Prosecute and, If Appropriate, Settle Causes of Action on Behalf of Lehman Commercial Paper Inc.*, dated September 15, 2011 [ECF No. 20019].

14.      On September 17, 2009, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 5207], approving ADR procedures for the Chapter 11 Estates' derivative contracts with recovery potential (the "Derivatives ADR Procedures").  On May 2, 2012, the Court entered the *Order Amending the Tier 2 Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 27698], approving ADR procedures for the Chapter 11 Estates' derivative contracts with recovery potential for which a Chapter 11 Estate's claim is equal to or less than $5 million (the "Tier 2 Derivatives ADR Procedures").  On July 18, 2012, the Court entered the *Amended Order Providing for Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties* [ECF No. 29507], approving ADR procedures related to SPVs (the "SPV Derivatives ADR Procedures," and, together with the Derivatives ADR Procedures and the Tier 2 Derivatives ADR Procedures, as each may have been amended and/or modified from time to time, the "Affirmative ADR Procedures").  Under the Affirmative ADR Procedures, the Chapter 11 Estates have recovered more than $1.543 billion as a result of

264 ADR settlements with 358 counterparties, all without Court intervention.  *See Letter to Hon. James M. Peck Regarding Forty-Third ADR Status Report*, dated June 19, 2013 [ECF No. 38036].

15.  On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012 (the "Effective Date").

16.  Pursuant to section 6.1(b)(iv) of the Plan, the Plan Administrator is authorized to prosecute the Avoidance Actions on behalf of the Chapter 11 Estates.  Pursuant to section 15.1 of the Plan, on the Effective Date, the Creditors' Committee was dissolved for all purposes except for certain purposes not relevant to this Motion.  Following the Effective Date, the litigation subcommittee of the Creditors' Committee (the "Litigation Subcommittee") was permitted to continue functioning for limited purposes, including involvement in the resolution process for certain pending litigation.  Consequently, the Litigation Subcommittee has taken over the Creditors' Committee's role with respect to the Avoidance Actions.

## Relief Requested

17.  Pursuant to section 105(a) of the Bankruptcy Code and Rule 4(m) of the Federal Rules of Civil Procedure, as incorporated and made applicable hereto by Bankruptcy Rule 7004(a)(1), the Plan Administrator requests a further six (6) month extension of the Stay, to January 20, 2014, and extension until January 20, 2014 to complete service of the Second Amended Complaint on the defendants in the Distributed Action, each without prejudice to the ability of the Plan Administrator to request further extensions.[3]

---

[3] Although the Creditors' Committee or the Litigation Subcommittee, as applicable, was a co-movant in the Plan Administrator's prior motions to extend the Stay, the Plan Administrator has been advised that the Litigation Subcommittee does not need a further extension of the Stay as to the LMA Actions.

### The Court Should Exercise its Discretion and Extend the Stay

18.     The Court has the power to extend the Stay and should exercise its

discretion to do so.  Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of"

the Bankruptcy Code.  11 U.S.C. § 105(a).  "[T]he power to stay proceedings is incidental to the

power inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants."  *Landis v. North Am. Co.*, 299 U.S.

248, 254 (1936); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998).

Bankruptcy courts have this inherent power.  *See Uni-Rty Corp. v. Guangdong Bldg., Inc. (In re

Uni-Rty Corp.)*, No. 96 Civ 4573 (DAB), 1998 WL 299941, at *7 (S.D.N.Y. June 9, 1998); *In re

Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (court has inherent

power to stay proceedings before it, particularly where stay will promote judicial economy);

*Kistler v. Cleveland (In re Cleveland)*, 353 B.R. 254, 260 (Bankr. E.D. Cal. 2006) (staying

adversary proceeding pursuant to court's inherent power to stay proceedings before it); *Swift v.

Bellucci (In re Bellucci)*, 119 B.R. 763, 770 (Bankr. E.D. Cal. 1990) ("a bankruptcy court has the

inherent power to control its docket, including controlling the timing of proceedings on that

docket").  The determination whether a stay of proceedings is appropriate "calls for the exercise

of judgment, which must weigh competing interests and maintain an even balance."  *Landis*, 299

U.S. at 254-55.

19.     The Avoidance Actions had to be commenced to preserve significant

causes of action and to fulfill the fiduciary duties of the Chapter 11 Estates to maximize value for

creditors.  Having commenced the Avoidance Actions and preserved their rights, the Chapter 11

Estates have utilized a practical approach to the Avoidance Actions that has to date minimized

(and, in some cases, eliminated) the costs and burdens to all parties that would be incurred by full-blown litigation of these matters. The Chapter 11 Estates have made substantial progress with respect to the Avoidance Actions during the pendency of the Stay. The Chapter 11 Estates have pursued amicable resolutions with the Avoidance Action Defendants including by communicating and negotiating with Avoidance Action Defendants through, among other things, the exchange of relevant documentation, evaluation of potential defenses, and consummation of settlements or dismissal of actions. As a result of these efforts, the Chapter 11 Estates have resolved Avoidance Actions, as well as avoidance claims subject to tolling agreements, with over 250 parties, including through settlements, dismissal of complaints, and termination of tolling agreements, without engaging in time-consuming and costly litigation. Thus, to date, the Stay has promoted judicial economy and minimized the burdens on the Court from the prosecution of these actions.

20.    The Stay also has permitted the Chapter 11 Estates to employ innovative procedures as an alternative to litigation to efficiently administer these cases. In approving a prior extension of the Stay, the Court recognized that "the alternative dispute resolution procedures that have adopted [sic] here have produced remarkable successes." Tr. of Hr'g, June 15, 2011, at 31:10-11. The Court has also called ADR "indisputably a success" and observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court . . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion." Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2.

21.    The Chapter 11 Estates have commenced many adversary proceedings, including *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, Adv. Proc. No. 10-03545 (JMP), involving derivatives litigation in which the

underlying assets have not been distributed to noteholders (together, the "<u>Non-Distributed Actions</u>").  The following facts demonstrate the substantial progress that has been made in the Non-Distributed Actions:

- Out of approximately 150 defendants in the Non-Distributed Actions collectively, the Chapter 11 Estates have reached final resolution with over 110 defendants, which either have been dismissed or are in the process of being dismissed from the applicable Non-Distributed Action.

- There are pending ADR proceedings with respect to 32 defendants in the Non-Distributed Actions.

- Nine remaining defendants in the Non-Distributed Actions are being further evaluated, or prepared for ADR, or other, resolution.

  o The Chapter 11 Estates have reached settlements in principle with 3 of the remaining 9 defendants.

  o The Chapter 11 Estates are likely to commence ADR proceedings with respect to 3 of the remaining 9 defendants in the next few weeks.

22.    Much of the success in resolving disputes with counterparties would likely not have been possible without the Stay, which has permitted the Chapter 11 Estates and counterparties to effect such results without costly and burdensome litigation.  Further extension of the Stay is similarly critical to continued efforts towards consensual resolutions with all remaining defendants in the Non-Distributed Actions.

23.    In *Lehman Brothers Special Financing Inc. v. Bank of America National Association*, et al., Adv. Proc. No. 10-03547 (JMP) (the "<u>Distributed Action</u>"), which involves SPVs with "flip clauses" in which the underlying assets have already been distributed to noteholders of collateralized debt obligation transactions, Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") has asserted claims against such noteholders as a defendant class action.

24.    As a result of the *Order Granting Plaintiff's Motion for Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014 and Establishing a Protocol Governing*

*the Confidentiality of and Access to Certain Discovery Material*, dated October 25, 2010, Adv.

Proc. No. 10-03547 [ECF No. 27] (the "Discovery Order"), LBSF sought leave to amend its First

Amended Complaint in July 2012 in order to name 165 additional entities as defendants, which

were identified as potential beneficial owners of notes that received distributions. Also, based on

facts learned in discovery, in the Second Amended Complaint LBSF removed from the caption

14 entities named as noteholder defendants in the First Amended Complaint.

25.    LBSF has been and continues to be engaged in the time-consuming, multi-

step discovery process required to identify and/or confirm the identities, addresses, and status of

noteholders that received the challenged distributions, much of which is necessary to commence

the ADR process.[4]  The discovery LBSF has received to date has provided valuable information

necessary for LBSF to (i) amend the First Amended Complaint, (ii) complete of service of

process upon the named defendant class members, and (iii) identify members of the putative

noteholder defendant class.[5]  To date, LBSF has identified over 170 noteholders (consisting of

the noteholder defendant class members identified in the Second Amended Complaint and the

originally identified noteholder defendant class members) which are members of the putative

defendant class and the beneficial owners of $2.8 billion worth of distributions.

26.    LBSF continues to receive further information confirming the extent to

which the named noteholder defendants are the beneficial owners of the notes at issue in the

---

[4] The discovery process is fully described in the *Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), for an Extension of Deadline for Service of Avoidance Actions to June 30, 2011*, dated February 14, 2011 [ECF No. 14487].

[5] The Stay has been critical in enabling LBSF to conduct the painstaking discovery required to ascertain the current identity, address, and status for each named class member as required to effect service of the amended complaints upon all named class members that received challenged distributions and amend, or seek to amend, the amended complaints to reflect newly identified class members as appropriate.  Absent the Stay, litigation of the Distributed Action may have commenced before LBSF was able to discover such class members' identities and amend the First Amended Complaint to reflect newly identified class members as appropriate.

Distributed Action, in addition to the names and addresses of currently unknown putative defendants.  It appears, however, that the beneficial owners of approximately $400 million worth of distributions must still be identified, and it is LBSF's belief that these yet-unidentified noteholders are likely located in foreign countries.  LBSF is conducting further discovery upon certain defendants identified in the Distributed Action, which LBSF has discovered may be custodians or other interim holding repositories of distributions, in order to determine the specific identities of beneficial owners of notes that actually received distributions.  As contemplated by the Discovery Order, upon the identification of such additional beneficial owners, LBSF plans to amend its Second Amended Complaint, dated June 29, 2012, to further identify the unnamed noteholders individually and as members of the putative noteholder defendant class.

27.    The Distributed Action has 45 transactions at issue, 8 trustee defendants, 79 issuer and co-issuer defendants (many of which are foreign entities) and over 170 noteholder defendants (nearly half of which are foreign entities), named individually and as representatives of a putative defendant class, and numerous unnamed class members.  Resolution of the Distributed Action has proven to be more difficult than the Non-Distributed Action for a variety of reasons, including the fact that there are more defendants, more than half of which are located abroad, and some of which have yet to be identified.  Nevertheless, the Chapter 11 Estates have continued to make substantial progress in the Distributed Action.

- LBSF has served ADR notices upon 100 defendants in the Distributed Action since February 2013.

- LBSF has dismissed 24 defendants, in addition to the 14 entities named as noteholder defendants in the First Amended Complaint which have been removed from the Distributed Action.

- o Since the Stay was last extended in February 2013, LBSF has been able to dismiss 8 defendants in the Distributed Action, 2 of which were resolved as a result of settlements achieved outside of the ADR process.

- LBSF expects to dismiss up to 3 other defendants within the next few weeks.

- LBSF is preparing to serve ADR notices upon approximately 20 defendants in the Distributed Action within the next six weeks.

- The remaining approximately 40 identified defendants in the Distributed Action, for which ADR has not been commenced, fall into three general categories:

  - o For approximately 30-35 noteholder defendants identified in the Second Amended Complaint, LBSF is conducting further discovery to obtain information that is necessary to commence the ADR process, and following the receipt of such information, LBSF intends to commence ADR as to each such noteholder defendant.

  - o LBSF is conducting additional discovery of approximately 5 defendants in the Distributed Action in order to determine the identities of additional beneficial owners of notes that received distributions. It is unknown exactly how many beneficial owners may be identified through such discovery, but following their identification, LBSF anticipates the commencement of ADR proceedings as to such putative noteholder defendants.

  - o LBSF is engaged in informal negotiations outside of the ADR process with one noteholder defendant, which is party to numerous transactions, some of which are the subject of the Distributed Action.

28.    An extension of the Stay will afford LBSF and the defendants in the

Distributed Action the opportunity to negotiate settlements as well as to participate in the ADRs

that have been commenced.  Indeed, after amending the First Amended Complaint to identify

new parties, and serving many of the defendants with process, LBSF has received a number of

overtures from defendants regarding possible settlement.  LBSF intends for this process to

continue following amendment of the Second Amended Complaint.

29.    In addition to Avoidance Actions involving SPVs, there are currently 10 pending Avoidance Action complaints involving, among other defendants, trade vendors and other third parties.  The Chapter 11 Estates are either engaged in, or are pursuing, settlement discussions with respect to each named defendant in such actions.  Since the last extension of the Stay, the Chapter 11 Estates have settled or otherwise dismissed 5 Avoidance Actions and avoidance claims subject to tolling agreements that involve trade vendors and other third parties.  Extension of the Stay will provide the Chapter 11 Estates and the defendants with additional time to continue their efforts to pursue negotiated resolutions in a timely and efficient manner without the burdens and expense of active litigation.

30.    This Court already has exercised its discretion under section 105(a) of the Bankruptcy Code to manage its docket in these cases and, more importantly, to issue and extend the Stay.  *See generally* Tr. of Hr'g, June 15, 2011, at 31:8-9 ("there are huge advantages to case administration and having the continuation of the stay") (remarks of Peck, J.).  The sheer number and complexity of the Avoidance Actions will require substantial resources if litigation is to proceed in the near future.  Expiration of the Stay would force the Chapter 11 Estates and the Avoidance Action Defendants to respond to discovery demands, respond to motions to dismiss and other dispositive motions, and participate in contested matters and trials instead of using that effort to attempt to settle.  Absent extension of the Stay, the Chapter 11 Estates will be forced to litigate all of the Avoidance Actions at the same time, which will be costly, burdensome, and time-consuming.  Extending the Stay, and providing the Chapter 11 Estates and the Avoidance Action Defendants with an opportunity to try to achieve settlements, is a far better alternative than immediate litigation, which may include the filing of claims objections by the Plan Administrator against such Avoidance Action Defendants.

31.    As the Court has noted, the Stay was "designed to benefit the entire administration of the Lehman cases" and is "beneficial."  *See* Tr. of Hr'g, Feb. 16, 2011, at 147:20-21, 24.  Extending the Stay of the Avoidance Actions will allow the Chapter 11 Estates to continue their significant progress in pursuing consensual resolutions of claims – whether by settlement or dismissal as appropriate – with minimized costs.  In particular, the continuation of the Stay will enable the Chapter 11 Estates to continue to focus on negotiation or meditation of the Avoidance Actions, including through the "extraordinarily" successful ADR program, without diverting vital resources from those efforts to litigate the Avoidance Actions.  *See* Tr. of Hr'g, Feb. 13, 2013, at 41:18-20 ("I think the ADR process is one of the most extraordinarily successful aspect [sic] of case administration in this massive case.") (remarks of Peck, J.).

32.    To date, there has been no prejudice to the Avoidance Action Defendants as a result of the Stay, and such defendants will suffer no prejudice from an extension of the Stay, as they will not need to expend time and resources defending the lawsuits.  The fact that so few objections have been made by Avoidance Action Defendants confirms the lack of prejudice.  All rights of the parties will be preserved while the Stay is in effect.  Moreover, as has been the case since the issuance of the Stay Orders, the Avoidance Action Defendants have the right to move before the Court for a modification of the Stay for good cause shown at any time.  *See also* Tr. of Hr'g, Jan. 11, 2012, at 25:20-21 ("[D]efendants can seek to have the stay terminated before the, in this case, six-month extension.") (response of Chapter 11 Estates' counsel to query from the Court as to whether "individual defendants have the unfettered right to seek relief from this blanket stay to the extent that it can be demonstrated that a party is prejudiced or that the stay is no longer a useful exercise because the parties have negotiated to frustration," *id*. at 25:14-18).

33.    At the last hearing to extend the Stay, the Court indicated its increasing sensitivity to the "*potential* for incremental prejudice" to the Avoidance Action Defendants, citing the passage of time as the possible source of such prejudice.  *See* Tr. of Hr'g, Feb. 13, 2013, at 51:3-7, 52:1-7 (emphasis added).  Nevertheless, finding actual prejudice "to the case administration function associated with lifting the stay or refusing to extend the stay prematurely," the Court extended the stay for an additional six months, "recognizing that the stay has produced and is continuing to produce dramatic benefits in case administration" and "not[ing] that the settlements that have been achieved demonstrate that the alternative dispute resolution system is functioning at a high level."  *See* Tr. of Hr'g, Feb. 13, 2013, at 51:11-13, 19-24.  The Court cautioned, however, that the Stay "cannot go on indefinitely."

34.    Mindful of the Court's concern, the Chapter 11 Estates have sought to capitalize on their success in resolving SPV derivatives matters by accelerating the pace of initiating SPV ADR proceedings with Avoidance Action Defendants since the last extension of the Stay.  The Chapter 11 Estates have devoted considerable resources to this endeavor, and, at this time, virtually all identified Avoidance Action Defendants are engaged with the Chapter 11 Estates in mediation, settlement discussions outside mediation, or otherwise.

35.    At the same time the Chapter 11 Estates have been trying to manage and resolve the Avoidance Actions, they have also been addressing the balance of their substantial derivatives portfolio that is not subject to the Avoidance Actions.  Thus, they have been evaluating and preparing both SPV and non-SPV matters for ADR, negotiating settlements with derivatives counterparties, and, in some instances, participating in litigation.  These non-Avoidance Action activities have required considerable amounts of time and attention from the

Chapter 11 Estates, whose manpower has been sharply reduced, as well as the Chapter 11

Estates' outside professionals.

36.    In order to expedite ADR proceedings as to the entire derivatives

portfolio, the Chapter 11 Estates sought, and the Court has recently entered, an order to

supplement the Derivatives ADR Procedures and the SPV Derivatives ADR Procedures to add

two additional mediators.  *See Order Supplementing the Tier One and SPV Alternative Dispute

Resolution Procedures Orders to Add Two Additional Mediators*, dated June 13, 2013 [ECF No.

37940].  The Court's addition of two more mediators will enable the Chapter 11 Estates to avoid

some or all future scheduling conflicts with, and alleviate the burden on, the four current

mediators and expedite mediations and settlements.

37.    The Chapter 11 Estates' accelerated pace of initiating SPV ADR

proceedings with Avoidance Actions Defendants and the Court's recent addition of two more

mediators are mutually reinforcing steps designed to resolve the Avoidance Actions as

expeditiously as possible by using the ADR process, of which the Court is a "huge proponent."

*See* Tr. of Hr'g, Feb. 13, 2013, at 41:14-15.  These affirmative steps taken by the Chapter 11

Estates will be undermined if the Stay is not extended, causing actual prejudice to the Chapter 11

Estates' ability to use the ADR process in the most efficient manner and thereby hindering their

progress in reaching consensual resolutions with Avoidance Action Defendants.  At this time,

any potential prejudice to the Avoidance Action Defendants remains just that – potential and

hypothetical – while the steps taken by the Chapter 11 Estates since the last extension of the Stay

represent tangible efforts aimed at avoiding any such potential prejudice.

38.    In addition, with respect to the multi-defendant Distributed Action,

expiration of the Stay may be particularly prejudicial, not only to the Chapter 11 Estates but to

the Avoidance Action Defendants as well. If the Stay is not extended, certain defendants in that action may be subject to ADR and, therefore, a stay of litigation, while other defendants in the same action may not. The Chapter 11 Estates would then be in the position of litigating with certain defendants in the Distributed Action while engaging in ADR with other defendants in the same litigation, all of whom are members of a putative defendant class, creating a procedural nightmare for all parties. Moreover, defendants subject to ADR who are not litigation-inclined and wish to continue the ADR process may be prejudiced by other defendants' efforts to pursue disposition of decisive legal and/or factual issues.

39.    Although the Chapter 11 Estates' cases are unprecedented in terms of their size and complexity, relief similar to the relief granted in the Stay Orders and requested herein has been granted by bankruptcy judges in this district in other large chapter 11 cases. *See In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Aug. 16, 2007) [ECF No. 9105] (order authorizing stay of approximately 740 avoidance actions and granting other related relief, including ability to amend complaints during pendency of stay and extending deadline for service of process); *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 5, 2004) [ECF No. 18230] (order issuing 90-day stay of discovery in approximately 1,100 avoidance actions to enable the debtors to develop procedures for conducting discovery in a coordinated and efficient manner).

40.    Extending the Stay is in the best interests of the Chapter 11 Estates and their creditors and should be approved. For all of the reasons that the Court has granted and extended the Stay previously, as well as the considerable progress the Chapter 11 Estates have made in initiating ADR proceedings and consensually resolving the Avoidance Actions, the Court should exercise its discretion here and extend the Stay.

### The Court Should Extend the Deadline for Service of Process

41.     The Federal Rules of Civil Procedure state that when a plaintiff shows good cause, "the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m). "In determining whether good cause is shown, a court should consider (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." *American Int'l Tel., Inc. v. Mony Travel Serv.*, 203 F.R.D. 95, 97 (S.D.N.Y. 2001). Furthermore, courts readily extend the service deadlines in cases, such as these, that involve service in foreign jurisdictions. Rule 4(m) of the Federal Rules of Civil Procedure expressly contemplates that the service deadline may be extended for service outside the United States. FED. R. CIV. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(l)."); *In re South African Apartheid Litigation*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("the 120-day time period for service can be extended for service outside of the United States") (quotations and citations omitted)). A significant number of the defendants in the Distributed Action are located in foreign jurisdictions, making service of process more difficult and time consuming.

42.     The Debtors have demonstrated "reasonableness and diligence" in serving many of the foreign and domestic defendants to date.

43.     LBSF seeks an extension of the Service Deadline for the Distributed Action. Pursuant to the Discovery Order, LBSF has used discovery received to date to amend the First Amended Complaint and serve the Second Amended Complaint. On July 18, 2012, this Court granted LBSF's motion for leave to amend its First Amended Complaint to identify 165 new or misnamed noteholder defendant class members, many of which are foreign entities. Since July 2012, LBSF has been diligently attempting to serve its Second Amended Complaint upon each of the named defendants. As explained below, LBSF seeks an extension of time for

foreign judicial authorities and/or their agents to complete service of process upon the defendants in certain countries to make all of the work it performed pursuant to the Discovery Order worthwhile.

44.     To date, LBSF has served all 8 trustee defendants, 34 co-issuer defendants, and 40 of the 45 issuer defendants.  LBSF is in the process of reinstating the registered office of the five remaining issuer defendants in the Cayman Islands to properly serve them with process.[6]  With respect to the noteholder defendants, LBSF has served 85 of the 87 noteholder defendants located in the United States.[7]  Of the two outstanding noteholder defendants, one is currently in liquidation and a stay is in place, prohibiting LBSF from serving the entity with process.  The other noteholder defendant has been dissolved.  LBSF also has served all but three noteholder defendants located in foreign jurisdictions.[8]  Of the remaining foreign noteholder defendants, one entity is still being served by the judicial authorities through Requests for Judicial Assistance (Letter Rogatory) in Austria and two entities are being served by the judicial authorities and/or their agents in China and Chile through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  Service in these countries is a slow-moving process and can take up to nine months.  LBSF has taken all necessary steps to effect service of process on these noteholder defendants, and service has been underway for months.  While service is expected to be completed in the next few months, out of an abundance of caution, LBSF seeks an extension of the Service Deadline for an additional six months to ensure that service of the Second Amended Complaint is completed.

---

[6] LBSF is in the process of reinstating the remaining issuer defendants and serving them with process.  LBSF estimates that service of process on such defendants will be completed within the next few weeks.

[7] The total number of US noteholder defendants does not include the entities which LBSF has dismissed from the Distributed Action.

[8] The number of foreign noteholder defendants served does not include foreign entities that are dissolved.

45.     An extension of the Service Deadline will not prejudice any of the Avoidance Action Defendants.  All of the Avoidance Actions are currently stayed pursuant to the Stay Orders, and should the Court grant the instant Motion, the Avoidance Actions will continue to be stayed.  Therefore, Avoidance Action Defendants who are served following an extension of the Service Deadline will be in the same position as those parties who have already been served. Moreover, one of the central purposes of the Stay is to give the Chapter 11 Estates an opportunity to pursue amicable resolutions of the Avoidance Actions.  The extension of the Service Deadline will further this purpose by giving the Chapter 11 Estates adequate time to contact each Avoidance Action Defendant and initiate discussions regarding resolution.

46.     Finally, because of the large number of defendants in the Distributed Action, many of which are located in foreign jurisdictions, as explained above, an extension of the Service Deadline should be permitted, as contemplated by Rule 4(m) of the Federal Rules of Civil Procedure.  Service in foreign jurisdictions is a complicated and time consuming process which justifies the requested extension.

47.     In short, there is good cause to grant the request for an extension until January 20, 2014 to complete service of the Second Amended Complaint on the defendants in the Distributed Action.

48.     In addition to the prior extensions of the Service Deadline issued in these cases, similar relief has been granted by this Court in other large chapter 11 cases.  *See In re Quebecor World (USA), Inc.*, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. July 1, 2010) [ECF No. 4039] (order extending service of process deadline by 60 days with respect to certain avoidance actions); *Id.*, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. Aug. 26, 2010) [ECF No. 4105] (decision on the record further extending service of process deadline by 6 months with

respect to certain foreign avoidance action defendants); *In re Ames Dep't Stores, Inc.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. Feb 3, 2004) [ECF No. 2524] (order extending service of process deadline by approximately 120 days with respect to certain preference actions).

## Notice

49.     No trustee has been appointed in these chapter 11 cases.  Notice of this Motion has been served in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all parties who have requested notice in these chapter 11 cases; and (vi) all known and identified Avoidance Action Defendants or their agents or representatives, except for Avoidance Action Defendants as to whom the respective Avoidance Action has been settled or dismissed.

## Conclusion

50.     For the reasons set forth herein, the Motion should be granted.  The proposed scope of the Stay (i) is balanced and fair, (ii) does not modify the substantive rights of any of the Avoidance Action Defendants, and (iii) promotes settlements at minimal costs to the Chapter 11 Estates as well as the Avoidance Action Defendants.  In addition, an extension of the Service Deadline will further this purpose by giving the Chapter 11 Estates adequate time to

serve the Second Amended Complaint on each defendant in the Distributed Action.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.

Dated: June 21, 2013
　　　　New York, New York

　　　　　　　　　　　　　　/s/ Jacqueline Marcus
　　　　　　　　　　　　　　Richard W. Slack
　　　　　　　　　　　　　　Jacqueline Marcus

　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　　Telephone: (212) 310-8000
　　　　　　　　　　　　　　Facsimile: (212) 310-8007

　　　　　　　　　　　　　　Attorneys for Lehman Brothers Holdings Inc.
　　　　　　　　　　　　　　and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                              :

In re                                 :       Chapter 11 Case No.
                                              :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :      **08-13555 (JMP)**
                                              :

                Debtors.         :       **(Jointly Administered)**
                                              :
                                              :
-------------------------------------------------------------------x

### ORDER EXTENDING STAY OF AVOIDANCE ACTIONS AND GRANTING CERTAIN RELATED RELIEF PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1)

Upon the motion, dated June 21, 2013 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4(m) of the Federal Rules of Civil Procedure, as incorporated and made applicable hereto by Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure, to extend the stay for each of the adversary proceedings identified on Exhibit A hereto and any other avoidance actions that may be commenced by the Plan Administrator under sections 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions") and to grant certain related relief, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [ECF No. 12199] (the "Initial Stay Order") the *Order Extending the Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated June 16, 2011 [ECF No. 17763], the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 11, 2012 [ECF No. 24198], the *Order Extending Stay of Avoidance Actions Pursuant to Section 105(a) of the Bankruptcy Code*, dated July 18, 2012 [ECF No. 29506], the *Bridge Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 17, 2013 [ECF No. 33970], and the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated February 15, 2013 [ECF No. 34697] (together with the Initial Stay Order, the "Stay Orders"); and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures [ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all parties who have requested notice in these chapter 11 cases; and (vi) each of the known and identified defendants to the Avoidance Actions or their agents or representatives (the "Avoidance Action Defendants"), except for Avoidance Action Defendants as to whom the respective Avoidance Action has been settled or dismissed, and it appearing that

no other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Motion; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Stay imposed by the Stay Orders is hereby extended for a

period of six (6) months to January 20, 2014, without prejudice to the ability of the Plan

Administrator to request further extensions; and it is further

ORDERED that the Chapter 11 Estates shall have until January 20, 2014 to

complete service of the Second Amended Complaint on each defendant in the Distributed

Action, without prejudice to the ability of the Chapter 11 Estates to request further extensions;

and it is further

ORDERED that, unless the Stay is extended by order of the Court or as otherwise

agreed by the parties, each Avoidance Action Defendant shall be required to answer or otherwise

respond to any Avoidance Action complaint by the later of March 5, 2014, or, if such complaint

is amended or further amended, 30 days after the date of the filing of any such amended

complaint or further amended complaint, as applicable; *provided*, *however*, that if the Stay is

lifted by (i) the Plan Administrator's filing and service of a notice of intention to prosecute an

Avoidance Action or (ii) the Court's entry of an order modifying the Stay over an Avoidance

Action, then the applicable Avoidance Action Defendant shall be required to answer or otherwise

respond to the Avoidance Action complaint within 30 days after the date of, as applicable,

service of a notice of intention to prosecute such Avoidance Action or the Court's order

modifying the Stay over such Avoidance Action; and it is further

ORDERED that, except as set forth herein, all other terms and provisions of the

Stay Orders shall remain unaltered and in full force and effect; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: July __, 2013
     New York, New York

_____
    UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**(Schedule of Pending Avoidance Actions)**

US_ACTIVE:\44255473\16\58399.0003

| Adversary Proceeding No. | Adversary Proceeding |
|---|---|
| 10-03542 (JMP) | Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, *et al*. |
| 10-03544 (JMP) | Lehman Brothers Financial Products Inc. v. The Bank of New York Mellon Trust Co., National Association, *et al*. |
| 10-03545 (JMP) | Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, *et al*. |
| 10-03547 (JMP) | Lehman Brothers Special Financing Inc. v. Bank of America National Association, *et al*. |
| 10-03548 (JMP) | Lehman Brothers Holdings Inc. v. AXA, S.A., *et al*. |
| 10-03552 (JMP) | Lehman Brothers Holdings Inc. v. Fragomen, Del Ray, Bernsen and Loewy, LLP |
| 10-03553 (JMP) | Lehman Brothers Holdings Inc. v. GMAC Mortgage Corporation |
| 10-03558 (JMP) | Lehman Brothers Holdings Inc. v. Earth Thebault Inc. |
| 10-03560 (JMP) | Lehman Brothers Holdings Inc. v. EMortgage Logic LLC |
| 10-03598 (JMP) | Lehman Brothers Holdings Inc. v. First American Residential Value View LLC |
| 10-03606 (JMP) | Lehman Brothers Holdings Inc. v. Stewart Lender Services |
| 10-03609 (JMP) | Lehman Brothers Holdings Inc. v. Deutsche Bank Trust Company Americas |
| 10-03811 (JMP) | Lehman Brothers Special Financing Inc. v. Bank of New York Mellon National Association |
| 11-01661 (JMP) | Lehman Brothers Holdings Inc. v. Bullet Communications Inc. |
| 12-01043 (JMP) | Lehman Brothers Holdings Inc. v. CitiMortgage, Inc. |