# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

555 California Street
San Francisco, California 94104

Mark E. McKane
To Call Writer Directly:
(415) 439-1473
mark.mckane@kirkland.com

(415) 439-1400

www.kirkland.com

Facsimile:
(415) 439-1500

July 2, 2013

**Via ECF and Hand Delivery**

Honorable James M. Peck
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
Courtroom: 601
New York, NY 10004-1408

    Re:    *In re Lehman Brothers Holdings Inc., et al.*, **Case No. 08-13555 (JMP)**

Dear Judge Peck:

    At this Court's request, LBREP Lakeside submits this letter brief in further opposition to LCPI's Motion seeking an evidentiary finding at a Sufficiency Hearing that the LCPI Settlement was a "good faith" settlement under California law.[1] As an initial matter, LBREP Lakeside regrets having to submit this supplemental letter brief ("Letter"). After the Court encouraged the parties to settle these claims at the Sufficiency Hearing, there was an initial discussion, but LCPI has made no attempt at resolution, including no offer to settle these claims.

    This Letter addresses four issues the Court raised at that Hearing. First, the Court noted that indemnity and contribution claims have to be properly preserved in order to be viable after settlement—as set forth *infra*, that is exactly what LBREP Lakeside has done to date. Second, the Court inquired as to the merit of LBREP Lakeside's claims. LBREP Lakeside's record establishes that LCPI bears substantial fault for the parties' liability to the SunCal Trustee—the relevant inquiry under California law. Third, the Court asked LCPI's counsel whether it took the position that approval of a settlement under Federal Rule of Bankruptcy Procedure ("Rule") 9019 established as a matter of law that the settlement constituted a "good faith" settlement under California law, where all parties have settled. LCPI retreated from this position, and case law confirms courts conduct good faith analysis even where all parties have settled. Fourth, the Court rightly questioned how it could possibly rule as a matter of law at this preliminary stage. Good faith analysis is a question of fact, but LBREP Lakeside has been enjoined from serving discovery, preventing a full opportunity to be heard. The claims should proceed to discovery and/or mediation so that the parties may resolve this matter.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning defined in LBREP Lakeside's Response and Cross-Motion, ECF No. 36870. In accordance with its pleadings, this Letter treats LCPI and LBHI jointly.

Chicago    Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    Shanghai    Washington, D.C.

**KIRKLAND & ELLIS LLP**

Honorable James M. Peck
July 2, 2013
Page 2

## I. LBREP LAKESIDE HAS CONSISTENTLY PRESERVED ITS CONTRIBUTION AND INDEMNITY RIGHTS.

At the Sufficiency Hearing the Court questioned whether the parties "ever contemplated that when they obtained orders of separate bankruptcy courts approving their separate settlements that there were reserved rights of indemnity and contribution."[2] Respectfully, that is exactly what the parties contemplated at the time of the LCPI Settlement approval hearings.

At every stage of these proceedings, LBREP Lakeside has preserved its already-filed contribution and indemnity claims. Both in front of this Court and the California Bankruptcy Court, LBREP Lakeside (1) objected to the LCPI Settlement in order to preserve contribution and indemnity rights against LCPI, (2) appeared at the respective hearings in order to preserve those rights, and (3) received a carve-out for such rights in both Courts' orders approving the LCPI Settlement. *See* Ex. J (Sep. 22, 2010 Hr'g Tr.) at 7; Ex. M (Dec. 21, 2010 Hr'g Tr.) at 32:15-18; Ex. I at 3; Ex. N at ¶ 5.[3]

At the hearing before this Court, given LBREP Lakeside's objection and appearance, LCPI's counsel stated that "the settlement does not seek to adversely modify any rights except the signatories to the term sheet" and that "there's nothing in this settlement that's affecting any of LBREP's rights." Ex. J at 96:20-21, 114:4-5. At the hearing before the California Bankruptcy Court, LBREP Lakeside's counsel cross-examined the SunCal Trustee to clarify the intent behind the LCPI Settlement, and the SunCal Trustee agreed he "didn't intend for the settlement to have any impact on any rights, claims or defenses that LBREP Lakeside may have." Ex. M at 32:15-18. This Court expressly preserved third-party rights in its order approving the LCPI Settlement at LBREP Lakeside's request. *See* Ex. I at 3. Likewise, the California Bankruptcy Court preserved third-party rights in its order approving the LCPI Settlement, in response to LBREP Lakeside's objection. *See* Ex. N at ¶ 5.

LBREP Lakeside has preserved its claims on multiple occasions at great effort. LCPI knew at the time of the approval hearings, as it knows now, that LBREP Lakeside's claims were preserved.

## II. LBREP LAKESIDE'S CONTRIBUTION AND INDEMNITY CLAIMS ARE VALID.

At the Sufficiency Hearing LCPI's counsel initially stated LCPI "will accept the notion that for purposes of the California statute, that we are joint tortfeasors." Ex. X at 69:20-22. When counsel later backtracked on that stipulation, the Court asked how it could "determine that there is no valid contribution and indemnity claim." *Id.* at 90:9-10. The Court cannot make such a determination at this Sufficiency Hearing stage—the Court applies a motion to dismiss standard and LBREP Lakeside asserted strong claims.

---

[2] Transcript of June 13, 2013 Hearing on LCPI's Motion to Expunge, attached as LBREP Exhibit X, at 102:16-19.

[3] All exhibit references not otherwise defined herein refer to the exhibits in support of LBREP Lakeside's Response and Cross-Motion, ECF No. 36870.

## KIRKLAND & ELLIS LLP

Honorable James M. Peck
July 2, 2013
Page 3

In California, the elements of a cause of action for indemnity are "(1) a showing of *fault* on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Expressions at Rancho Niguel Ass'n v. Ahmanson Devs., Inc.*, 86 Cal. App. 4th 1135, 1139 (Cal. Ct. App. 2001). The California Supreme Court has interpreted the equitable indemnity doctrine to "permit a tortfeasor to obtain indemnity, on a comparative fault basis, from other concurrent tortfeasors." *Expressions*, 86 Cal. App. 4th at 1141 (citing *American Motorcycle Assn. v. Superior Court*, 20 Cal. 3d 578, 591 (1978)). The definition of joint tortfeasors is broad under California law. *See Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1272-73 (Cal. Ct. App. 2006) ("Joint tortfeasors are '*concurrent* tortfeasors (defendants whose independent negligence or other tortious acts have occurred to cause plaintiff's injury)' and 'those *derivatively or vicariously liable* for the settling defendants' acts.'" (citation omitted)).[4]

LBREP Lakeside has viable indemnity and contribution claims because LCPI and LBREP Lakeside are "joint torfeasors." *Id.* As stated in further detail in LBREP Lakeside's pleadings, LCPI sized and syndicated the First Lien Loan that funded the Dividend to LBREP Lakeside. *See* Ex. K (LCPI Interrogatory Responses). It also imposed the $50 million liquidity restriction that the SunCal Trustee seized upon in his constructive fraudulent transfer causes of action. *See* Ex. P (Chilton Ratings Agency Update); Ex. Q (Nolan Email to Chilton re "Ratings Agency Update"). Finally, it collaborated with LBREP Lakeside to redistribute equity from the SunCal Debtors, the alleged breach of fiduciary duty. *See* Ex. O (email discussing Chilton proposal). These actions and allegations drove both the LCPI Settlement and the LBREP Lakeside Settlement and resulted in LBREP Lakeside overpaying vis-à-vis LCPI. LCPI bears substantial fault for the SunCal Trustee's alleged harm yet has not been held responsible for the corresponding financial burden, and LBREP Lakeside has been damaged as a result. LBREP Lakeside has stated a cognizable claim.

### III.    THE COURT'S PREVIOUS APPROVAL OF THE LCPI SETTLEMENT DOES NOT ESTABLISH GOOD FAITH.

At the Sufficiency Hearing this Court questioned whether a "good faith" analysis is necessary where all potential defendants have settled. *See* Ex. X at 84:21-22 ("does a good faith finding need to be made at all"). The Court then asked LCPI's counsel whether its position was that where two settlements have been approved under Rule 9019, "it is not possible in interpreting Section [877.6] of the California Code to find that either settlement is grossly disproportionate with respect to liability because each settlement has been separately approved by a court of competent jurisdiction." Ex. X at

---

[4] In *In re JTS Corp.*, 617 F.3d 1102 (9th Cir. 2010), the Ninth Circuit ruled that California's contribution statute applied to joint tortfeasors defending against constructive fraudulent transfer claims. *See also Gackstetter*, 135 Cal. App. 4th at 1262 (analyzing contribution and indemnity claims arising from harm resulting from alleged breach of fiduciary duty among other claims). Just as in *JTS*, LBREP Lakeside has valid contribution and indemnity claims arising from the alleged fraudulent transfer. 617 F.3d at 1117 ("the plaintiff need not allege the same tort against the tortfeasors, but must only claim that the tortfeasors caused the same harm").

## KIRKLAND & ELLIS LLP

Honorable James M. Peck
July 2, 2013
Page 4

91:14-23.  Notably, LCPI's counsel responded, "I'm not sure whether I would go that far." *Id.* at 91:24-25.

California jurisprudence confirms that courts should evaluate Section 877.6 and the *Tech-Bilt* factors even where all parties have settled for less than full value of the claims. *See Wilshire Ins. Co. v. Tuff Boy Holding, Inc.*, 86 Cal. App. 4th 627 (Cal. Ct. App. 2001) (holding nothing in Section 877.6 requires that there be defendants in the action who have not settled with the plaintiff at the time of a good faith determination and applying *Tech-Bilt* factors in determining whether the settlement was made in good faith); *Regal Recovery Agency, Inc. v. Superior Court*, 207 Cal. App. 3d 693 (Cal. Ct. App. 1989) (holding a good faith determination under Section 877.6 can be analyzed as part of an independent action initiated after the underlying action has been settled by all of the parties). Section 877.6 is not satisfied merely because all defendants have settled, and courts do not merely look at the relative size of the settlements.  *See id.*

At the Sufficiency Hearing, LCPI intimated that LBREP Lakeside suggested in its own Section 877.6 motion before the California Bankruptcy Court that proportionate liability is not at issue in a "good faith" analysis. False.  LCPI ignores that LBREP Lakeside listed and analyzed each and every *Tech-Bilt* factor, the most important of which is a "rough approximation of plaintiffs' total recovery and the settlor's **proportionate liability**."[5]  As LBREP Lakeside argued in detail in its pleadings, that standard involves a wholly different inquiry than that of Rule 9019, under which the inquiry is whether a settlement is in the "best interests of the estate." *In re MF Global Inc.*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012).  LCPI's affidavits in support of its Rule 9019 motion conclude that the LCPI Settlement was in the "best interests of LCPI and its estate and creditors,"[6] but LCPI has not presented evidence to satisfy Section 877.6—it has not offered any evidence establishing the alleged proportionate fault of the parties.  This Court's approval of the LCPI Settlement under Rule 9019 does not establish good faith.

### IV.    LBREP LAKESIDE HAS A DUE PROCESS RIGHT TO DISCOVERY.

At the Sufficiency Hearing the Court observed that LCPI is attempting to extinguish LBREP Lakeside's claim "as a matter of law." Ex. X at 90:11.  Importantly, the Sufficiency Hearing is a non-evidentiary hearing, but "[g]ood or bad faith is a question of fact in each case." *River Garden Farms, Inc. v. Superior Court*, 26 Cal. App. 3d 986, 998 (Cal. Ct. App. 1972) (citation omitted).

---

[5] LBREP Lakeside Memorandum of Points and Authorities In Support of Motion for Good Faith Settlement Determination, attached as Exhibit H to LCPI's Motion, ECF No. 36164, at 6 (emphasis added).

[6] Exhibit A to Lehman Brothers Holdings Inc.'s and Lehman Commercial Paper Inc.'s (I) Reply to the Response of LBREP Lakeside SC Master I, LLC to Lehman's Motion (A) Seeking a Good Faith Determination for the LCPI Settlement, and Based on that Good Faith Finding and For Other Reasons, (B) Objecting to the Proofs of Claim filed by LBREP Lakeside, and (II) Objection to LBREP Lakeside's Cross Motion to Transfer Venue, ECF No. 37790, at ¶ 39.

## KIRKLAND & ELLIS LLP

Honorable James M. Peck
July 2, 2013
Page 5

      This Court's Claims Hearing Procedures have enjoined LBREP Lakeside from taking discovery pertinent to the *Tech-Bilt* factors until a Notice of Merits Hearing is served.  *See* Ex. V ¶¶ 4, 8.  This limitation has the potential to violate LBREP Lakeside's due process rights, because, as California courts have recognized, "[s]uch a limitation renders [the objecting party's] opportunity to be heard in a later good faith hearing relatively meaningless."  *Singer Co. v. Superior Court*, 179 Cal. App. 3d 875, 896 (Cal. Ct. App. 1986).

      Courts have accordingly held that it is an abuse of discretion to prevent an objecting party from conducting discovery to address the *Tech-Bilt* factors.  *See id.* at 897 ("We therefore conclude that the abuse of discretion here involved was not respondent court's finding of good faith based on the evidence before it, but rather its refusal to postpone the hearing on the good faith of Cool-Temp's settlement with plaintiffs until such time as Singer could complete pertinent discovery directed to those factors enumerated in *Tech-Bilt* . . . .").  As a result, "it would be appropriate for the objecting non-settlor to move for a continuance of the hearing, if necessary, for the purpose of gathering facts, which could include further formal discovery."  *City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1265 (Cal. Ct. App. 1987) ("this procedure will ensure that the expanded scope of the hearing dictated by *Tech-Bilt* will be followed, the evidence will be intelligently assessed, and the objectives of *Tech-Bilt* will be attained").

      Each of LBREP Lakeside's responsive pleadings has requested the opportunity to take discovery.[7]  As LBREP Lakeside's counsel argued at the Sufficiency hearing, LCPI's counsel made multiple inaccurate factual assertions that are "demonstrably not true."  Ex. X at 96:1.  Even if *arguendo* LCPI has met its foundational burden to establish proportionate liability, LBREP Lakeside should be given an opportunity to conduct discovery and move beyond a Sufficiency Hearing to mediation in order to be fully heard.

## **CONCLUSION**

      LBREP Lakeside's claims should proceed to discovery or mediation in order to resolve this dispute.

                                      Sincerely,

                                      */s/ Mark E. McKane*

                                      Mark E. McKane

---

[7] *See* Response and Cross Motion at 3, 15; Reply In Support of Cross-Motion at 8.

# Exhibit X

Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 08-13555 (JMP)
4  Adv. Case No. 09-01062
5  - - - - - - - - - - - - - - - - - - - - - - - - - - - x
6  In the Matter of:
7  LEHMAN BROTHERS HOLDINGS INC., ET AL.,
8              Debtors.
9  - - - - - - - - - - - - - - - - - - - - - - - - - - - x
10  TURNBERRY CENTRA SUB, LLC, et al.,
11              Plaintiffs,
12         v.
13  LEHMAN BROTHERS HOLDINGS, INC., et al,
14              Defendants.
15  - - - - - - - - - - - - - - - - - - - - - - - - - - - x
16              U.S. Bankruptcy Court
17              One Bowling Green
18              New York, New York
19
20              June 13, 2013
21              10:04 AM
22
23  B E F O R E :
24  HON JAMES M. PECK
25  U.S. BANKRUPTCY JUDGE

Page 2

1  Hearing re:  Objection to Claim No. 62723 of Banesco
2  Holdings CA [ECF No. 37327]
3
4  Hearing re:  Four Hundred Second Omnibus Objection to Claims
5  32395 and 22671 (No Liability Derivatives Claims) [ECF No.
6  36006]
7
8  Hearing re:  Turnberry Centra Sub, LLC, et al. v. Lehman
9  Brothers Holdings Inc., et al. [Adversary Case No. 09-
10 01062].  Motion to Dismiss.
11
12 Hearing re:  Motion by Lehman Brothers Holdings Inc. and
13 Lehman Commercial Paper Inc. For an Order (i) Determining
14 that the LCPI Settlement was entered into in Good Faith
15 Pursuant to California Code of Civil Procedure paragraphs
16 877 and 877.6, and, Based on Such Good Faith Finding and for
17 Other Reasons, (ii) Disallowing and Expunging Proofs of
18 Claim Number 28845 and 28846 [ECF No. 36163]
19
20 Hearing re:  Debtors' Ninety-Seventh Omnibus Objection to
21 Claims (Insufficient Documentation) [ECF No. 14492]
22
23 Hearing re:  Debtors' One Hundred Twenty-Fifth Omnibus
24 Objection to Claims (Insufficient Documentation) [ECF No.
25 16079]

Page 3

```
 1
 2    Hearing re:  Debtors' One Hundred Thirty-Eighth Omnibus
 3    Objection to Claims (No Liability Derivatives Claims) [ECF
 4    No. 16865]
 5
 6    Hearing re:  Debtors' One Hundred Ninety-First Omnibus
 7    Objection to Claims (Valued Derivative Claims) [ECF No.
 8    19888]
 9
10    Hearing re:  Three Hundred Twenty-Eighth Omnibus Objection
11    to Claims (No Liability Claims) [ECF No. 29323]
12
13    Hearing re:  Three Hundred Sixtieth Omnibus Objection to
14    Claims (Valued Derivative Claims) [ECF No. 31316]
15
16    Hearing re:  Three Hundred Ninetieth Omnibus Objection to
17    Claims (Valued Derivative Claims) [ECF No. 34044]
18
19    Hearing re:  Three Hundred Ninety-Fourth Omnibus Objection
20    to Claims (Valued Derivative Claims) [ECF No. 34728]
21
22    Hearing re:  Three Hundred Ninety-Eighth Omnibus Objection
23    to Claims (No Liability Derivatives Claims) [ECF No. 34732]
24
25    Hearing re:  Four Hundred Twelfth Omnibus Objection to
```

```
                                                              Page 4

 1   Claims (Duplicative Claims) [ECF No. 37166]

 2   Hearing re:  Debtors' Objection to Proof of Claim No. 66099

 3   Filed by Syncora Guarantee, Inc. [ECF No. 20087]

 4

 5   Hearing re:  Plan Administrator's Omnibus Objection to

 6   Claims Filed by Deborah E. Focht [ECF No. 34303]

 7

 8   Hearing re:  Objection to CMBS Claims and Request for

 9   Subordination Pursuant to Sections 510(a)-(c) of the

10   Bankruptcy Code [ECF No. 36882]

11

12   Hearing re:  Merits Hearing With Respect to Proofs of Claim

13   Number 57069 and 45833

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Nicole Yawn, Jamie Gallagher, Pamela Skaw
```

Page 5

```
 1  A P P E A R A N C E S :
 2  WEIL, GOTSHAL & MANGES LLP
 3        Attorneys for Debtors
 4        767 Fifth Avenue
 5        New York, NY 10153
 6
 7  BY:   JACQUELINE MARCUS, ESQ.
 8        ALFREDO R. PEREZ, ESQ.
 9        EDWARD MCCARTHY, ESQ.
10
11  JONES DAY
12        Attorneys for Debtors
13        222 East 41st Street
14        New York, NY 10017
15
16  BY:   JAYANT W. TAMBE, ESQ.
17        LOCKE R. MCMURRAY, ESQ.
18
19  KING & SPALDING
20        Attorneys for Debtors
21        1185 Avenue of the Americas
22        New York, NY 10036
23
24  BY:   SCOTT DAVIDSON, ESQ.
25        ARTHUR STEINBERG, ESQ.
```

Page 6

1  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
2       Attorney for KTS and Dr. Tschira
3       Four Times Square
4       New York, NY 10036
5
6  BY:  GEORGE A. ZIMMERMAN, ESQ.
7
8  MEISTER SEELIG & FEIN, LLP
9       Attorney for Plaintiffs, Turnberry Centra Sub, LLC
10      140 East 45th Street, 19th Floor
11      New York, NY 10017
12
13 BY:  CHRISTOPHER J. MAJOR, ESQ.
14
15 KIRKLAND & ELLIS, LLP
16      555 California Street
17      San Francisco, CA 94104
18
19 BY:  MARK MCKANE, ESQ.
20      MICHAEL ESSER, ESQ. (TELEPHONIC)
21
22
23
24
25

```
 1   CHADBOURNE & PARKE, LLP
 2        Attorney for Banesco Holdings
 3        30 Rockefeller Plaza
 4        New York, NY 10112
 5
 6   BY:  BONNIE DYE, ESQ.
 7
 8   APPEARED TELEPHONICALLY:
 9   NICK MOURADIAN
10   MICHAEL NEUMEISTER
11   CHRISTOPH SCHMITT
12   MITCHELL SOCKETT
13   MICHAEL J. WALSH
14   MICHAIL ZEKYRGIAS
15
16
17
18
19
20
21
22
23
24
25
```

1  million and you just kept the money in an interest account

2  and you got 1.9 percent on your money, that's essentially

3  what they gave back.

4  　　　　And by the way, what they gave back of $13.8

5  million specifically to the claimant, had some insurance

6  component, meaning that some insurance component paid some

7  of that $13.8 million.  They've never disclosed how much of

8  it was actually paid by insurance to reflect what their out

9  of pocket is.

10 　　　　Now, there are seven fundamental principles that I

11 think we actually agree on, which kind of shape the

12 underlying facts that I just talked about.  One is that Your

13 Honor may recall that when we went to Your Honor to approve

14 the LCPI settlement with the SunCal trustee, there was an

15 argument that they were raising that the lender to a

16 dividend and the recipient of a dividend should be deemed to

17 be joint tortfeasors for purposes of state law.

18 　　　　At that point in time, they were arguing New York

19 law and we were -- we did letter briefing to Your Honor on

20 the New York law and California law.  But we will accept the

21 notion that for purposes of the California statute, that we

22 are joint tortfeasors, even though it doesn't fit within the

23 natural paradigm of what -- how most people can -- joint

24 tortfeasors act.

25 　　　　So, the first principle is that we're joint

08-13555-mg   Doc 38373   Filed 07/02/13   Entered 07/02/13 15:56:52   Main Document
    Pg 15 of 20

Page 84

1            MR. STEINBERG:  Well, I think, Your Honor, that

2   the Tech-Bilt case, and as they say in their own papers, you

3   look at what a reasonable person should pay in the context

4   of their liability to the plaintiff.  Did they pay their

5   fair share to the plaintiff.  If they did, they're released

6   out of potential contribution and indemnity claims.  That's

7   the basis upon which we had to get these settlements

8   approved.

9            Did we pay a fair share to the SunCal trustee in

10  the context of the settlement that had been agreed to?  The

11  Court found that it was reasonable, fair and adequate.

12  That's --

13           THE COURT:  So here's the question, I think -- or

14  at least, here's a question I am about to articulate.  Where

15  you have a settlement with the SunCal trustee that is

16  approved in the New York Bankruptcy Court and a separate

17  settlement with the SunCal trustee that is approved by the

18  California Bankruptcy Court and the settlements are made by

19  parties that are arguably, in fact, you've stipulated to

20  this, joint tortfeasors for purposes of the California Code,

21  Section 877 and 877.6, does a good faith finding need to be

22  made at all if there are existing, separate 9019 findings

23  that the settlements, viewed separately, necessarily are

24  fair?

25           MR. STEINBERG:  Your Honor, I think the answer to

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

1  occurred.

2  Is there a valid contribution claim based on what
3  they paid and what they received versus what we paid and
4  what we received in the context of how we settled the case?
5  You could get to the same spot without reference to the
6  California statute either because the facts aren't in
7  dispute.

8  THE COURT: Understood. But how we you get to
9  that result? How would you determine that there is no valid
10 contribution and indemnity claim? How do you, today, as a
11 matter of law erase their claim?

12 MR. STEINBERG: Because we know what the result
13 was of what they paid. We know the result of what we paid.
14 We know what our loss was. We know what their loss was. We
15 know what the claims were that were asserted against us. We
16 know what the claims were that was asserted against them.
17 That's all the facts that you need to know to see whether
18 there is a contribution claim.

19 Your Honor has it easier because many times you're
20 asked to look at this stuff before you have the full
21 picture. You have all the picture here. No one is
22 quarrelling as to what that picture is.

23 The issue is something that they have. They've
24 agreed that the California statute applied. They've set
25 forth what the test is. The test doesn't have what

Page 91

1  proportionality, at least as far as they asserted it in the
2  California Bankruptcy Court and we're saying to Your Honor
3  that the case law that we cited says that the 9019 standard
4  is the California standard for purposes of assessing this
5  situation.
6      And Your Honor has ruled and the California Court
7  has ruled that the 9019 standard has been met a fortiori it
8  should be met here as well.  You have all of what's needed
9  to make these resolutions and this certainly belongs before
10  Your Honor as a claims resolution matter.
11      THE COURT:  So, let me sum up and then give Mr.
12  McKane an opportunity to say a few words because I can see
13  how impatient he is to jump up and have his day in court.
14      Your position, in summary, is that where a
15  bankruptcy court has approved a settlement under a 9019
16  standard in New York and a California bankruptcy court has
17  approved a separate settlement under 9019 standards in
18  California that, as a matter of law, it is not possible in
19  interpreting Section 8.776 of the California Code to find
20  that either settlement is grossly disproportionate with
21  respect to liability because each settlement has been
22  separately approved by a court of competent jurisdiction
23  applying an appropriate standard.
24      MR. STEINBERG:  I'm not sure whether I would go
25  that far, Your Honor.  I would first add that the California

1   put money back in, those are demonstrably not true.

2          And while you may not know that, Judge Smith does

3   because Judge Smith saw that record.  They know that we

4   actually didn't make money on the deal.  We lost money.

5   LBREP Lakeside put $38 million back in after taking out the

6   dividend.  And that we didn't earn a profit.  And that when

7   we put forward our record getting the good faith finding in

8   front of her, it wasn't just a stale record.  It was

9   affidavits.  It was affidavit-based after discovery,

10  including affidavits from me and the mediator in the case.

11  And it was done on a record after they settled up, which is

12  fine, which is what the process should be.

13         So our position is, you know, 9019 does not

14  automatically equal an 877.6 finding.  It's an

15  (indiscernible -- 02:11:44) question whether if everybody

16  got a 9019, is it possible?  We believe it is because they

17  can under pay and we can over pay.  And our point on this

18  is, you know, there's a conflation of facts and a conflation

19  of standards.

20         The California law on this isn't just Tech-Bilt.

21  But there are other cases as well.  And, in particular, you

22  know, another case to look at is the Mattco Forge case that

23  we cited.  And in that case an appellate court in California

24  reversed the trial court's decision granting a 90 -- sorry,

25  an 80 -- a good faith finding, under 87.6 because there

08-13555-mg   Doc 38373   Filed 07/02/13   Entered 07/02/13 15:56:52   Main Document
Pg 19 of 20

Page 102

1   requires your time and the time of your associates?

2          MR. MCKANE:  Yeah.

3          THE COURT:  Why are we in court today fighting

4   over this legal principle?  What's the real economics?

5          MR. MCKANE:  Right.  The real economics are not

6   large, as you sense, and there has been an inability between

7   my client, which is a former affiliate of his client, to be

8   able to come to rest on a number, I think because of this --

9   either because of a fundamental legal disconnect, which is

10  possible, or stubbornness, which is also possible.

11         But I would like to think that getting a ruling on

12  this one way or another will bring the parties closer

13  together to resolve this matter.  That's the goal.

14         THE COURT:  Well, let me say that as a -- just as

15  a matter of principle within the context of this massive

16  bankruptcy, I don't believe that parties ever contemplated

17  that when they obtained orders of separate bankruptcy courts

18  approving their separate settlements that there were

19  reserved rights of indemnity and contribution.

20         And certainly I never assumed and I doubt that

21  Judge Smith ever assumed that there would be further finger

22  pointing and claims made as between the settling parties

23  after the settlements were approved.  We are now years later

24  in the context of a settled process that has been in place

25  in this Court for years relating to claims allowance,

VERITEXT REPORTING COMPANY

212-267-6868              www.veritext.com              516-608-2400

```
 1                C E R T I F I C A T I O N
 2
 3   I, Nicole Yawn, certify that the foregoing transcript is a
 4   true and accurate record of the proceedings.
 5
 6
 7   Nicole Yawn
     Digitally signed by Nicole Yawn
     DN: cn=Nicole Yawn, o, ou,
     email=digital1@veritext.com,
     c=US
     Date: 2013.06.14 15:02:04 -04'00'
 8
 9
10   I, Pamela A. Skaw, certify that the foregoing transcript is
     a true and accurate record of the proceedings.
11
12
13   Pamela A Skaw
     Digitally signed by Pamela A Skaw
     DN: cn=Pamela A Skaw, o, ou,
     email=digital1@veritext.com,
     c=US
     Date: 2013.06.14 15:02:39 -04'00'
14
15
16
17   I, Jamie Gallagher, certify that the foregoing transcript is
     a true and accurate record of the proceedings.
18
19   Jamie Gallagher
     Digitally signed by Jamie Gallagher
     DN: cn=Jamie Gallagher, o, ou,
     email=digital1@veritext.com,
     c=US
     Date: 2013.06.14 15:03:22 -04'00'
20
21   Veritext
22   200 Old Country Road
23   Suite 580
24   Mineola, NY 11501
25   Date:  June 14, 2013
```