# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur J. Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

July 2, 2013

**VIA ECF FILING**
The Honorable James M. Peck
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:    In re Lehman Brothers Holdings Inc., *et al.*; Case No. 08-13555
       **Further Submission in Connection With The Lehman Motion**

Dear Judge Peck:

On June 13, 2013, this Court conducted a hearing ("**Hearing**") in connection with the motion ("**Lehman Motion**") [ECF No. 36163] filed by Lehman Brothers Holdings Inc. ("**LBHI**") and Lehman Commercial Paper Inc. ("**LCPI**," and, with LBHI, "**Lehman**") seeking (i) a determination that the LCPI Settlement[1] was entered into in good faith pursuant to California Code of Civil Procedure §§ 877 and 877.6, and, based on such good faith finding, and for other reasons, (ii) disallowing and expunging the Claims filed by LBREP Lakeside SC Master I, LLC ("**Claimant**"). At the conclusion of the Hearing, while the Court noted the "technical question which [Claimant is] raising is one that I believe I could decide in [Lehman's] favor and that that would not be an abuse of discretion and it would not be reversed,"[2] it stated it wanted Lehman, in bullet point fashion, to make a further submission pointing out why the LCPI Settlement was entered into in good faith, and for Claimant to do the opposite, if it can. *See* TR at 104:19-105:5. In that regard, Lehman is filing this letter brief in further support of the Lehman Motion.

To frame the issue, both Lehman and Claimant entered into separate settlements with the SunCal Trustee. The LCPI Settlement resolved claims, *inter se*, asserted by the SunCal Trustee, on the one hand, and LCPI and other lenders, on the other hand, stemming from $320 million in loans ("**Loans**") made by LCPI and others to the SunCal Parent in 2006. The Dividend Action Settlement resolved claims asserted by the SunCal Trustee against, among others, Claimant stemming from a Dividend made to Claimant in 2006. The LCPI Settlement was approved pursuant to Bankruptcy

---
[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Lehman Motion.
[2]   *See* Transcript of June 13, 2013 Hearing ("**TR**"), at 103:21-24.

21137038v1

Honorable James M. Peck
July 2, 2013
Page 2

Rule 9019 by both this Court and the California Bankruptcy Court. The Dividend Action Settlement was approved by the California Bankruptcy Court. The SunCal Trustee obtained a determination from the California Bankruptcy Court that the Dividend Action Settlement was entered into "in good faith". Lehman now seeks that same determination with respect to the LCPI Settlement, which, if made, will expunge the Claims.[3] As requested by the Court, the following bullet points will demonstrate why the Claims should be expunged because the LCPI Settlement was entered into in good faith, and for other reasons.

**A.    The Court Has All Necessary Information To Make A Good Faith Determination As To The LCPI Settlement, And To Expunge The Claims For Other Reasons**

- Section 877.6(b) of the CCCP provides that the "issue of the good faith of a settlement may be determined by the court on the basis of affidavits . . . ." When determining good faith, "[t]he nonsettling defendant . . . is not entitled to a 'mini-trial' on the valuation issue, and the nature and extent of the procedure to be followed when a challenge is made is left to the discretion of the trial court. [citation omitted] Certainly the trial court could proceed based on affidavits or declarations submitted by the parties." *Arbuthnot v. Relocation Realty Service Corp.*, 278 Cal. Rptr. 135, 139 (Cal. Ct. App. 1991).

- Here, not only does the Court have the Brusco Declaration, but it has copies of all of the settlements papers and pleadings in relation thereto. As such, the Court has more information than usual where a settling defendant is seeking a good faith determination. It has (i) the settlements terms for **all** defendants; (ii) the **actual** amounts paid by each defendant; (iii) the roles each settling defendant played in the case, after substantial discovery was taken in the litigations; and (iv) the record of three settlement hearings relating to the litigations, including the settlement hearing already held by the Court, with the active participation of LCPI and the Claimant.

- The Court, therefore, has a more than sufficient record upon which it can make a good faith determination as to the LCPI Settlement, and to expunge the Claims for other reasons.

**B.    The Standard For Making A Good Faith Determination**

- Public policy strongly favors settlement, particularly of complex disputes, such as the one between LCPI and the SunCal Trustee. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1991). California courts recognize that defendants are unlikely to settle if the settlement won't "end the defendant's involvement in the litigation and will leave it vulnerable to further liability . . . ." *Bay Dev. Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1019 (1990).

- "The determination as to whether a settlement is in good faith is a matter left to the discretion of the trial court." *Mattco Forge, Inc. v. Arthur Young & Co.*, 38 Cal.App. 4th 1337, 1349 (Cal. Ct. App. 1995)

- The objecting party has the burden of proof that the proposed settlement lacks good faith. *See* Cal. Code Civ. P. § 877(6)(d).

- The objector must show that the settlement "is so far 'out of the ballpark' to [the factors discussed in *Tech-Bilt*] as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc. v. Woodward Clyde & Assoc.*, 38 Cal.3d 488, 500 (1985).

---

[3]    By agreement, the $280 million reserve established in connection with the Claims was reduced to $20 million.

Honorable James M. Peck
July 2, 2013
Page 3

- An opponent to the good faith request must demonstrate that "the settlement is ***grossly disproportionate*** to what a reasonable person at the time of the settlement would estimate the settlor's liability to be." *City of Grand Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1262 (1987) (emphasis added).

- Both this Court and the California Bankruptcy Court approved the LCPI Settlement pursuant to Bankruptcy Rule 9019. "California courts have adopted a test comparable to the Rule 9019 test for determining whether a settlement payment is sufficient to justify a bar against equitable contribution rights. . . . The Rule 9019 standard is ***actually more exacting*** than the section 877.6 standard, because under Rule 9019 the party proposing the settlement has the burden of proof, while under section 877.6 the party opposing the settlement has the burden of proof." *In re Plant Insulation Co.*, 469 B.R. 843, 885-86 (Bankr. N.D. Cal. 2012) (emphasis added).

- The factors articulated by Claimant in the LBREP Defendants Memo (filed in support of the good faith determination), which LCPI agrees with, are "(1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability; (ii) the amount paid in settlement; (3) a recognition that a settlor should pay less in settlement than if found liable after trial; (4) the allocation of the settlement proceeds among plaintiffs; (5) the settlor's financial condition and insurance policy limits, if any; and (6) evidence of collusion, fraud, or tortious conduct between the settlor and the plaintiff aimed at making the non-settling party pay more than their fair share." LBREB Defendant Memo, p. 6 (citing *Tech-Bilt*).[4]

- It is not necessarily bad faith if a settling defendant pays "less than his theoretical proportionate or fair share" because "[s]uch a rule would unduly discourage settlements." *Tech-Bilt*, 38 Cal.3d at 499 (internal quotation marks omitted).

### C.    The LCPI Settlement And The Losses Incurred By LCPI

- LCPI and the First Lien Lenders gave up approximately $11 to $12 million in value in connection with the LCPI Settlement. *See* Lehman Motion, ¶ 20. LCPI's 30% share is approximately $3.5 million.

- LCPI and the First Lien Lenders ***lost approximately 75% of their loan principal*** (the aggregate loss for the First Lien Lenders is anticipated to be approximately $170 million). This does not take into account LCPI's losses associated with the second lien loan and third lien loan. In total, LCPI ***lost over $110 million of principal*** in its loans to SunCal Parent.

### D.    The Dividend Action Settlement And Claimant's
### Retention Of A Substantial Portion Of The Dividend

- Claimant's portion of the Dividend Action Settlement ***was not*** $13.8 million, but only 55% of that figure, as 45% was paid through insurance. TR at 97:16-98:4. Accordingly, Claimant's portion of the Dividend Action Settlement was approximately $ 7.5 million.

- In contrast to LCPI's substantial loss in connection with the Loans (over $110 million), Claimant was ***paid*** a dividend of almost $109 million (which was approximately 75% of the overall $144 million Dividend) seven years prior to entering into the Dividend Action

---

[4]    Certain of these factors are not applicable here. There was no allegation of collusion, fraud or tortious conduct in connection with the settlement negotiations undertaken in this case. Similarly, there was no issue with respect to the allocation of the settlement proceeds among plaintiffs. And, it was uncontroverted that LCPI should pay less in settlement then if found liable after trial.

Honorable James M. Peck
July 2, 2013
Page 4

Settlement. Claimant had the use of such funds for this extended period of time.

- Claimant's portion of the Dividend Action Settlement, in relation to the amount of the Dividend it received, is a mere **7%**.
- Of the $144 million Dividend paid in 2006, $41 million was *profit*.
- In connection with the Dividend Action Settlement, Claimant returned *only a portion of the profit it originally received* to the SunCal Trustee and was able to retain the rest (as well as its original investment).
- LCPI and other lenders made loans to the SunCal Parent for the Dividend received by Claimant. LCPI's loan loss is directly related to the sizeable return retained by Claimant on its SunCal Parent investment.

E.    **The LCPI Settlement Was Entered Into In Good Faith**

- Both LCPI and Claimant asserted that the SunCal Trustee's claims had no merit. It is clear from the record of the two settlements and relatively small amounts paid by LCPI and Claimant in relation to the amount of the claims asserted against them that the SunCal Trustee's claims were very weak. This Court recognized that, remarking at the Hearing that the claims against LCPI and Claimant have "been settled out for relatively modest sums." Tr. 101:11-12.
- Claimant's focus here at the Hearing was on Lehman's "proportionate liability" in connection with the claims asserted by the SunCal Trustee against Claimant. To do a proportionate liability review when claims asserted against parties were settled for relative "nuisance" value makes little sense.
- There were essentially two types of claims asserted by the SunCal Trustee against Claimant: (i) fraudulent conveyance claims, and (ii) breach of fiduciary duty claims.
- The fraudulent conveyance claims asserted against Claimant were for a money judgment based on its receipt of the Dividend. In contrast, the related claims asserted against LCPI and the other lenders concerned the validity of that portion of the Loans which was used by SunCal Parent to make the Dividend. The SunCal Trustee did not seek a money judgment for these claims; rather he sought to avoid the security interests granted in connection with such Loans, and to subordinate the First Lien Lenders' `claims to that of general unsecured creditors.
- As no money judgment was sought against LCPI in connection with the SunCal Trustee's challenge to its claims, the settlement thereof did not have a direct financial impact on Claimant's exposure on the fraudulent conveyance claims asserted against it. After the LCPI Settlement, Claimant was still sued for the full amount of the Dividend received by it.
- The different roles that LCPI and Claimant had in connection with the Dividend is significant. LCPI and other lenders made substantial loans to the SunCal Parent; less than half of the loan proceeds was used to make the Dividend. In contrast, Claimant was the initial transferee of the Dividend which was being challenged as a fraudulent transfer. In that context, assessing "proportionate liability" for different types of claims relating to the same transaction cannot be meaningfully done with any type of precision. In fact, it is dubious whether there is any contribution or indemnity claim that a recipient of a fraudulent transfer can make against the lender who financed the fraudulent transfer to its own detriment. Claimant has not cited any case which would support such a claim.
- Since no monetary judgment was alleged against LCPI for financing a portion of the Dividend, the only meaningful analysis conducted by the Court in approving the LCPI Settlement

Honorable James M. Peck
July 2, 2013
Page 5

(other than the cost and expense of litigation) was whether LCPI was paying a fair amount for the release of claims against it. That is the same "good faith" inquiry which the Court needs to make in connection with the Lehman Motion.

- The only overlapping claim asserted by the SunCal Trustee against both LCPI and Claimant where a money judgment was sought against both of them was the breach of fiduciary duty claim. Specifically, Claimant was involved in the decision to pay itself the Dividend. LCPI was alleged to be an affiliate of Claimant and therefore, through Claimant, was also somehow allegedly responsible for the payment of the Dividend by SunCal Parent. These claims were never given any serious consideration in connection with the settlements reached. The SunCal Trustee's LCPI Settlement motion filed in the California Bankruptcy Court [ECF No. 487] never mentions the breach of fiduciary duty claim. Aside from a passing reference to all claims asserted against Claimant in the complaint, the SunCal Trustee's Dividend Action Settlement motion filed in the California Bankruptcy Court [ECF No. 933] does not discuss the breach of fiduciary duty claim.

- Moreover, a review of the complaint filed by the SunCal Trustee against Claimant (Exhibit "A" to Claimant's response to the Lehman Motion) illustrates that all claims asserted against the Claimant (including the breach of fiduciary duty claim) sought the return of the same amount—the $144 million Dividend. Thus, it is clear that the breach of fiduciary duty claim is derivative of the fraudulent conveyance claim. In other words, if the SunCal Trustee was not successful in avoiding the Dividend as a fraudulent conveyance, it necessarily follows that he would not have been able to recover on his breach of fiduciary duty claim. Conversely, if he was successful in recovering the Dividend, the breach of fiduciary duty claim would be superfluous since it sought the same damages, already recovered. Thus, the breach of fiduciary claim was a "throw away" claim not given any serious consideration in connection with the settlements reached with the SunCal Trustee.

- A comparison of the actual settlements demonstrates that LCPI's "proportionate liability" was not "so far out of the ball park" to warrant denial of a good faith determination. Specifically, Claimant paid approximately $7.5 million and LCPI paid approximately $3.5 million to the SunCal Trustee. The total recovery by the SunCal Trustee was approximately $28 million ($16 million from the Dividend Action Settlement plus $12 million from the LCPI Settlement). LCPI's and Claimant's percentage of the total recovery is 14% and 27%, respectively. Given the different roles LCPI and Claimant played in this matter, and the fact that **LCPI lost over $110 million** while **Claimant retained a profit plus its original investment**, it is clear that the LCPI Settlement was not "so far out of the ballpark" or "grossly disproportionate" to what a reasonable person at the time of the settlement would estimate LCPI's liability to be.

Accordingly, the Court should find that the LCPI Settlement was entered into in good faith pursuant to Sections 877 and 877.6 of the California Code of Civil Procedure, and the Claims should be expunged for this and other reasons.

Respectfully submitted,

/s/ Arthur Steinberg

Arthur Steinberg

cc:  Mark McKane, Esq.