Hearing Date and Time: July 17, 2013 at 10:00 a.m.
Objection Date and Time: July 3, 2013 at 4:00 p.m.

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000

-and-

Craig M. Price (CP 9039)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,
TO MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 7004(a)(1), TO EXTEND
STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

U.S. Bank National Association, as Trustee (*"U.S. Bank"* or the *"Trustee"*) by its undersigned attorneys, respectfully submits this objection (the *"Objection"*) to the Motion (the *"Motion"*) of Lehman Brothers Holdings Inc. (*"LBHI"*) pursuant to Section 105(a) of the

3421636.01.08.doc
1697028

Bankruptcy Code and Rule 7004(a)(1) to Extend Stay of Avoidance Actions [ECF 38118], and in support thereof, respectfully states as follows:[1]

1.    The Trustee objects to the Motion to the extent it seeks to further extend the Stay of the Avoidance Actions because the Debtors have failed to carry their burden of providing proper justification to extend the Stay beyond the time previously granted pursuant to the Stay Order. Throughout the two years and nine months (over 1,000 days) that the Stay has been in place, the Trustee has been working with the Debtors to resolve various issues in dispute with respect to the SPV Derivative Transactions (as defined below). Most recently, the Trustee has been actively engaged in the Debtors' ADR process in conjunction with, and on behalf of, various holders of the notes and/or certificates and the SPV Counterparties (as defined below). The ADR process has resulted in progress on some transactions, while little or no progress has been made with respect to other transactions. However, regardless of how innovative the Debtors may be in employing procedures as an alternative to litigation, the Avoidance Action Defendants have a right to present their cases.

2.    Any further extension of the Stay of the Avoidance Actions should be denied because such an extension will adversely affect the rights of the Trustee and other parties. Such adverse effects include, but are not limited to, the following: (a) a case should not be stayed while a substantive and important matter of law is being decided in other proceedings that the Debtors will argue are precedential, as the Trustee has a right to be heard on issues that will affect its rights; (b) substantive rights of the trusts and other litigants may be adversely affected by the Stay through, *inter alia*, the running of any statute of limitations with regard to claims the trusts and other litigants may have to recover from third parties in connection with any judgment rendered against the trusts; (c) the Trustee may lose defenses because the passage of time; (d) the passage of time increases the

---

[1]    Terms not defined herein shall have the meaning ascribed to them in the Motion.

difficulty of obtaining discovery on the financial condition of the Debtors pre-petition, particularly from third parties; (e) a defendant-class action may be more difficult to define in the context of a Stay since it is unclear whether the class will change as notes and certificates change hands; (f) noteholders or certificateholders that have not received distributions in nearly five years for many transactions would be further delayed in receiving distributions of significant amounts of money that may be due; and (g) noteholders or certificateholders that have received distributions cannot invest those funds without risk that the Debtors will claw back those distributions. In addition, the Trustee should be allowed to respond to the Debtors' allegations that it engaged in intentional fraudulent transfers.

3.  Notwithstanding such adverse consequences, in the event this Court determines that a further extension of the Stay is appropriate, to maintain a more even balance between the parties, the Trustee respectfully requests certain changes in the proposed order including that: (i) the extension of the Stay be granted with prejudice to the Debtors' ability to request further extensions; (ii) the Court toll all applicable statutes of limitations among the Trustee, the trusts and all applicable certificateholders and noteholders *nunc pro tunc* to the date the Stay was originally issued and (iii) the order provide that in circumstances where a trustee has distributed assets from a trust, the Debtors may not seek monetary damages against the trustee.

## BACKGROUND

4.  The Trustee and to the extent appropriate, U.S. Bank Trust National Association, serve as trustee, owner trustee, indenture trustee and/or administrative agent in numerous transactions, including many which contain swap and derivative contracts (the "*SPV Derivatives Transactions*"), involving the Debtors. In connection with the SPV Derivatives Transactions, the Debtors established, or assisted in the establishment of, numerous special purpose vehicles

3

(the "*SPV Counterparties*"), many of which were created under the laws of the Cayman Islands and participated in the various SPV Derivatives Transactions.

5. With respect to each type of transaction, the rights and obligations of the SPV Counterparties, the Trustee and the holders of the notes and/or certificates are each specifically set forth in the governing documents. While various Debtor entities are parties to the swap and derivative agreements with the SPV Counterparties, the Debtors are not parties to the indentures and/or trust agreements. In performing its obligations under the SPV Derivatives Transactions, the Trustee relies upon the specific terms of the governing documents and upon directions, instructions, and indemnities with respect to all of the actions it takes in connection with such trusts. The Trustee serves as a mere conduit making payments of amounts received in accordance with the instructions provided to it in the operative documents. The Trustee has no monetary interest in the underlying transactions themselves or in the SPV Counterparties (with the exception of the Trustee's fees, costs and expenses in connection with its service under the relevant governing documents).

6. Approximately two years after the commencement of their chapter 11 cases, the Debtors filed the Avoidance Actions subject to the Stay. Pursuant to the Avoidance Actions, the Debtors have asserted claims against numerous parties, including the SPV Counterparties for, among other things, a termination payment that the Debtors believe is due them under certain swap agreements entered into in connection with the SPV Derivatives Transactions. Related claims, including avoidance claims under chapter 5 of the Bankruptcy Code, are also asserted against the Trustee and noteholders. The Debtors' claims with respect to the termination payments often involve millions of dollars. Pursuant to the Debtors' previous requests, the Avoidance Actions have been stayed by this Court until July 20, 2013 and the Motion, if granted, would further extend the Stay for an additional six months to January 20, 2014.

4

**SUMMARY OF ARGUMENTS**

7.  Although some progress has been made in resolving the various outstanding issues between the Debtors and the various Avoidance Action Defendants, the Trustee objects to the Motion because the Debtors have failed to carry their burden of providing proper justification to further extend the Stay.  Contrary to LBHI's suggestion in the Motion, the previous silence of the Avoidance Action Defendants regarding the extension of the Stay does not necessarily mean that a consensus exists that the Stay is beneficial.  The Debtors' counsel has cloaked each request to extend the Stay in the guise of reasonability – the Debtors only ask for a short extension of the Stay each trip to Court, under the ever-present argument that "progress" is being made.  Of course, the Debtors can always come to Court and allege progress when no benchmarks or principles are laid out to measure such progress.  Moreover, progress alone should not be sufficient grounds to indefinitely delay the Trustee's rights to adjudicate or plausibly threaten to adjudicate the issues.  The waiting game created by the Stay overwhelmingly favors the Debtors, which are winding down their businesses and have no pressures to make profits or returns to meet the demands of investors, clients, holders and/or retirees.  A never-ending stay only serves to pressure holders to give in to the Debtors' demands, regardless of the underlying merits.  Moreover, if progress is the ultimate measure of success, settlements will be faster and fairer if the legal conclusions in *In re Lehman Bros. Holdings Inc.*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) (*"Perpetual"*) and in *In re Lehman Bros. Holdings Inc.*, 452 B.R. 31 (Bankr. S.D.N.Y.) (*"Ballyrock"*), among others, are further tested or at least open to the threat of a test by the Avoidance Action Defendants.

8.  Tellingly, no Avoidance Action Defendant has filed a brief in support of the Motion.  While the litigation has been frozen, the note and certificate holders that could not wait 1,000 days for the Debtors to finally "accelerate[ ] the pace of initiating SPV ADR proceedings

5

…[,]" (Motion, at ¶ 6), have sold and likely continue to sell their holdings with a loss of principal. In addition, the Trustee should be allowed to respond to the unfounded allegations of the Debtors in the Distributed Action that it made intentional fraudulent transfers, which directly impacts its reputation as a "trustee."

9. As previously argued by the Trustee in the *Objection to U.S. Bank National Association, as Trustee, to Joint Motion of Lehman Brothers Holdings Inc. and Litigation Subcommittee of Creditors' Committee, Pursuant to Section 105(a) of the Bankruptcy Code, to Extend Stay of Avoidance Actions* [ECF 17501], an extension of the Stay of the Avoidance Actions should be denied. The strength of the arguments contained in the Trustee's previous objections and herein only increases as time passes and has now reached a tipping point. If, notwithstanding such arguments, this Court determines that a further extension of the Stay is appropriate, the Trustee requests that the Court amend the proposed order as set forth herein.

## ARGUMENT

10. Before issuing or extending a stay of proceedings, the Court must exercise sound judgment and weigh all parties' interests. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). If a "fair" possibility exists that a stay will cause damage to the non-movant, the applicant must make a clear case of hardship or inequity. *Id.* at 255. The movant has the burden of demonstrating the wisdom and justice of the stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("[t]he proponent of a stay bears the burden of establishing its need"); *John's Insulation, Inc. v. Siska Const. Co., Inc.*, 671 F.Supp. 289, 297 (S.D.N.Y. 1987). Any stay must maintain "an even balance" between the interests at stake. *Landis,* 299 U.S. at 254-55. As described below, the Debtors have failed to demonstrate that an extension of the Stay is just or make out a "clear case" of hardship. Further, the Debtors have failed to establish that furthering the Stay will maintain a fair balance between the various parties. Rather, as described below, the Trustee and other

defendants are the litigants that will continue to suffer hardship and inequity from the extension of the Stay.

I.   **The Justifications Advanced by the Debtors for Extending the Stay are Inadequate**

11.  The merits of a stay are analyzed on a case-by-case basis. Factors considered include: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests and burdens of the defendants; (3) the interests of the courts; (4) the interests of the persons not party to the litigation; and (5) the public interest." *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, at *1 (S.D.N.Y. April 19, 2005). The objective is the avoidance of prejudice, and "[t]he party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Export-Import Bank of the United States v. Hi-Films S.A de C.V.*, 2010 WL 3743826, at *12 (S.D.N.Y. Sept. 24, 2010); *Consol. Edison Co. of N.Y. v. U.S.*, 30 F.Supp.2d 385, 389 (S.D.N.Y. 1998) (declining to stay a declaratory judgment action upon balancing of factors).[2]

12.  The Motion fails on each account. The Debtors do not attempt to satisfy the balancing of factors set forth above. Rather, the Debtors main argument is that the extension of the Stay allows "the Chapter 11 Estates to continue their significant progress in pursuing consensual resolution of claims-whether by settlement or dismissal as appropriate-with minimized costs." (Motion, at ¶ 31). However, costs will only be minimized if settlements are actually reached, otherwise costs will rise due to the increased costs of obtaining information and additional challenges in obtaining evidence due to the lapse of time. Moreover, the Debtors'

---

[2] The first factor is irrelevant when the plaintiff requests a stay. *See LaSala v. Needham & Co., Inc.*, 399 F.Supp.2d 421, 428 (S.D.N.Y. 2005).

7

assert claims for default interest, which interest continues to accrue each month in an amount that likely far exceeds the costs of litigation and is multiples higher than the rate of interest that the Debtors can earn in the marketplace. As such, the Stay may not save costs – it may instead just shift them to the defendants. Owning to such factors, time only serves to increase the Debtors' leverage in settlement negotiations. Settlements reached under such circumstances may be consensual, but may not be fair. Moreover, the continuation of settlement discussions is an empty justification as parties to litigation can always engage in settlement discussions. In fact, the Trustee has been attempting to resolve issues with the Debtors since the commencement of the cases – nearly five years ago – and, possibly, the process would be further along if the Initial Stay Order had not been granted. The reality of costly and lengthy litigation, which threatens costs on all parties, often serves as a catalyst for a fair resolution of disputes. The costs of litigation are often the price that must be paid to determine the truth of the matter.

13. Furthermore, a lack of financial resources to litigate multiple suits should not evidence unfair prejudice to the Debtors. See *Export-Import Bank of the United States*, 2010 WL 3743826 at *13; *Paine, Webber, Jackson & Curtis, Inc., v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980); *Motorola, Inc. v. Abeckaser*, 2009 WL 816343, at *3 (E.D.N.Y. March 26, 2009). All debtors in bankruptcy have limited resources-that alone cannot be an adequate justification for extending the Stay. Despite previous claims of limited resources, however, the Debtors now boast that they have received more that $1.543 billion for the estates through the ADR program, (Motion, ¶ 4), so financial resources are certainly available for litigation.[3] The defendants are entitled to their day in court, especially when the Debtors allege

---

[3] The reason the Debtors confront so much litigation is that they chose to bring several "test cases" which presented the best opportunity for a favorable ruling, while waiting until several days before the statute of limitations expired to file claims against the Trustee. The fact that the Debtors face so much litigation at this stage of the case is entirely of their own making and they should not receive continued equitable relief on this basis.

fraud against the Trustee and other defendants on the thinnest of grounds. As the district court has noted in analyzing justifications for granting a stay, "'[b]urdensome and oppressive' is a shibboleth of little value to this Court." *Walter v. Conner*, 1985 WL 2522, *1 (S.D.N.Y. September 12, 1985) (finding that stay of discovery may not be granted "without a strong showing of 'good cause'" and that conclusory claims of "inconvenience and expense" do not suffice.) Moreover, the unresolved claims against the indenture trustees and other intermediaries in the Avoidance Actions under chapter 5 of the Bankruptcy Code make it difficult to determine whether indenture trustees now have increased liability, which affects the entire debt and securitization industry.

14.     As further described below, even if the Court overlooks the Debtors' failure to establish the factors required to obtain and extend the Stay, the substantial prejudice that the Trustee and other defendants would suffer is sufficient to tip the balance in favor of denying the Debtors' request for an extension. The Trustee is in possession of a significant amount of funds and investments that will continue to remain in judicial limbo if a further extension to the Stay is granted. Whether LBSF or the noteholders are ultimately entitled to these funds, the Avoidance Actions need to move forward as expeditiously as possible so that assets may be redeployed. Investors have, in certain instances, waited almost five years for their distributions – it is time that they be able to determine whether they are entitled to such amounts or not.

15.     Finally, while each motion must be evaluated on its own merits, the Debtors attempt to point to two cases where stays were granted in an effort to justify the relief requested. However, neither of the cases involved the sweeping relief previously granted and again sought by the Debtors. *cf. In re Dephi Corp.*, Case No. 05-44481 (RDD), ¶ 8-9 (Bankr. S.D.N.Y. Aug. 16, 2007) [ECF 9105] (stay terminated automatically upon service of summons and complaint); *In re Enron Corp., et. al.*, Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. May 5, 2004)

9

[Dkt. No. 18230] (granting "temporary stay" relating to discovery only, not entire case). Rather, the Debtors' failure to identify any case where such a sweeping stay was granted and extended suggests that such extraordinary relief is unwarranted under the circumstances. When set against the backdrop of the prejudice described below that the Trustee and other defendants may suffer, the Motion should be denied.

II. **The Prejudice to the Trustee Outweighs any Purported "Judicial Economy" or "Cost" Savings**

16.     The Debtors take a simplistic view of the lack of prejudice that defendants would suffer as a result of an extension of the Stay. The Debtors assert that the defendants will not be prejudiced from the extension of the Stay and that the defendants instead will benefit from the extension because the defendants will not have to expend time and resources defending the actions. (Motion, at ¶ 32). However, those assertions are wrong. As described below, the Trustee and noteholders may suffer significant prejudice if the Stay is further extended, and the additional delay may provide the Debtors with a continued inequitable tactical advantage in the litigation.

A. **The Extension of the Stay Further Prejudices the Trustee's Right to be Heard on Important Issues of Substantive Law**

17.     While this Court is vested with discretion to control its docket by staying a case under certain circumstances, such discretion is not unlimited. In this case, the further extension of the Stay must be denied because the Trustee cannot be made to continue to standby while its rights and the rights of noteholders and certificateholders are determined in other proceedings:

> The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

10

*Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971); *see also Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting that Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them); *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (reversing a stay where a pressing need was not shown and noting that district court had "paramount obligation to exercise jurisdiction timely in cases properly before it.")   Here, other than the costs associated with litigation that the Debtors commenced, the Motion fails to cite any hardship or inequity that the Debtors will suffer in being required to go forward.  On the other hand, in addition to the reputational and economic harm which defendants will suffer from a delay in resolution of these proceedings, the Trustee will also be denied an opportunity to present its own arguments to this Court as to the termination provisions at issue in the adversary cases.

18.    For example, in *Perpetual* and *Ballyrock*, this Court made legal determinations with respect to the scope of Sections 365(e)(1), 541(c)(1)(B) and 560 of the Bankruptcy Code. This Court noted in those holdings that the *ipso facto* provisions of the Code – sections 365(e)(1) and 541(c)(1)(B) – prohibit modification of the Debtors' rights by a contract provision conditioned on the commencement of *a case* under the Code and do not limit the definition of "case" to "*by or against the debtor*."  The absence of this limiting language, the Court found, is significant.  The Court determined that under the plain language of these provisions, "of a case under the Code" does not refer to the commencement of a specific case, but rather presumably addresses any case that in some appropriate manner relates to the contracting parties.  In *Perpetual*, this Court recognized the Court's novel interpretation of these provisions. 422 B.R. at 422. In addition, this Court made findings in *Perpetual* and *Ballyrock* with respect to the scope of the safe harbor provisions of Section 560 of the Bankruptcy Code.  Although these findings came in the context of the facts and circumstances facing the Court in connection with those

11

specific matters, the Court may rely upon the holdings of *Perpetual* and *Ballyrock* when deciding the Avoidance Actions. The Court cited its holdings in *Perpetual* as support for its holdings in *Ballyrock*. 452 B.R. at 38-39.

        19.    As of the date hereof, counterparties in many other transactions, including the Trustee, have not had the opportunity to have a judicial determination made with respect to similar provisions in their respective agreements. Numerous key questions remain, including whether the waterfall provisions are contained in the swap agreement, whether transactions were effectively terminated, the impact of when the Notice of Termination was given and the impact of the Letter, dated November 25, 2008, from Weil, Gotshal & Manges LLP (which demanded that the Trustee and other third parties cease and desist taking actions pursuant to the transaction documents). The full extent of this Court's rulings (and perhaps the scope of appellate rulings) will not be fully explored if these Avoidance Actions continue to be stayed. In addition, since the Stay was initially granted, rulings in *In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011); *In re Quebecor World (USA) Inc.*, 480 B.R. 468 (S.D.N.Y. 2012) and *In re Lehman Bros. Holdings*, 469 B.R. 415 (Bankr. S.D.N.Y. 2012) create precedent that the Debtors' avoidance claims are unenforceable under 11 U.S.C. § 546(g) and 11 U.S.C. § 546(e), which should be heard by the Court in the proper setting. As noted in *Landis*, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." 299 U.S. at 255. Defendants ought to be able to decide for themselves whether to agree to a stay of proceedings based upon the individual facts and circumstances of their situations. Moreover, the Debtors' claims for interest continue to accrue. The Court should not extend the Stay and give the Debtors a continued advantage over the defendants. If the extension of the Stay does not

12

prejudice the defendants, as the Debtors contend, the parties should be able to agree to tolling agreements and discovery schedules without the Court's assistance.

> **B.    Defendants May Lose Critical Rights Against Third Parties if These Cases Remain Stayed and the Extension of the Stay May Impede Discovery of Important Facts**

20.    In this instance, the defendants may be prejudiced in at least three additional ways as a result of the continued delay in the prosecution of these actions.

> **1.    Continued Delay in the Avoidance Actions May Make it More Difficult to Track the Recipients of any Allegedly Avoidable Transfers**

21.    It is difficult to determine the beneficial holders of interests in public securities on a current-time basis, let alone at earlier times, which the Debtors recognize. See *Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) for an Extension of Deadline for Service of Avoidance Actions to June 30, 2011*, at pp. 9-10 [ECF No. 14487] (arguing in a previous motion that the difficulty in determining the true holder of securities supported an extension of the deadline for service of process for the Avoidance Actions). The Trustee is a mere conduit of funds, and the actual recipients are holders of the underlying securities. Many public securities are not directly held by the beneficial holder, but rather are held by The Depository Trust Company ("*DTC*") through its nominee, Cede & Co ("*Cede*"). Cede maintains lists of those DTC participants that hold certain securities. Generally, however, these DTC participants are not the beneficial holders; rather, the true beneficial owners may be layers of ownership removed from the participants. While a trustee may also be the registrar for the securities, its books and records generally only reflect the record holders of the securities, and the record holder is often Cede. While the Trustee may know the DTC participant through DTC, it relies upon DTC and others down the "ownership" chain to communicate with holders. The Trustee often only knows the beneficial holders to the extent that the beneficial

13

holders elect to identify themselves to the Trustee. As a result, a continued stay may result in difficulties identifying the recipient of a given purportedly fraudulent transfer (or verify the Debtors' findings in the discovery that they have been permitted to pursue)  Under these circumstances, the further extension of the Stay should be denied. *Clinton*, 520 U.S. at 707-08 (denying stay where there was a "danger of prejudice resulting from the loss of evidence.").

        **2.**      **Extension of the Stay May Negatively Impact the Claims of Defendants Against Third Parties, Both Legally and In Terms of Collection**

22.    Importantly, some of the defendants in these Avoidance Actions, like the Trustee, are intermediaries, and may not be the ultimate beneficiary of any of the distributions that may determined to be avoidable as fraudulent conveyances, preferences or otherwise. The Trustee is concerned that the Debtors are improperly attempting to hold intermediary trustees, and not merely the beneficiaries, liable, for distributions that were made post-petition in reliance upon what was reasonably believed to be the state of the law with respect to the scope of the *ipso facto* provisions of the Bankruptcy Code and the safe harbors for swap agreements contained in the code. In the event that the Trustee or other defendants serving as intermediaries are sought to be held liable to the Debtors, the Trustee believes that it and the trusts would have claims against third-party recipients of the distributions. If any statute of limitations that may be applicable to claims of the Trustee and trusts against third parties runs while the Debtors' potential claims against the defendants remain dormant and/or stayed, the Stay and any extension thereof adversely affects the rights of the Trustee and trusts. Further, time only increases the risk of uncollectability of amounts determined to be due from third parties. Upon information and belief, some of these beneficiaries are intermediaries that make distributions to their investors.

14

      **3.    A Further Extension of the Stay of the Avoidance Actions and Discovery May Make it More Difficult for Defendants to Obtain Discovery of Relevant Facts in the Hands of Third Parties**

    23.    In addition, continued delay in the prosecution of the Avoidance Actions may negatively impact the ability of the defendants to obtain discovery in these proceedings. Nearly five years have elapsed since the filing of the voluntary petitions initiating these cases. The determination of solvency, particularly if the determination date significantly precedes the petition dates, and whether LBSF's and LBHI's bankruptcy filings are a single filing or separate filings, are fact-intensive determinations. Important evidence that was recently uncovered in the *Ballyrock* proceeding regarding the single or separate filing issue may never have come to light if that proceeding had been stayed. The availability and accessibility to documents held by third parties and the Debtors will continue to erode over time, impeding defendants' defenses and taking parties further from the truth of the matter.

**III.    THE AVOIDANCE ACTIONS SHOULD INSTEAD BE EXPEDITED TO ENABLE INVESTORS TO RECEIVE DISTRIBUTIONS**

    24.    On and after September 15, 2008, the Trustee began the process of assessing the respective rights and interests of investors under the terms of the Indentures, Trust Agreements and swaps. When the Debtors' counsel gave their November 25, 2008 letter to trustees with respect to their interpretation of the breadth of the automatic stay, the Trustee ceased its activities to terminate swaps, liquidate collateral and/or underlying assets and make distributions to investors. Further, the Debtors have not made any payments on any swaps since the date of the petitions. As a result, there are a number of investors who have not received distributions of any kind on their investments since prior to September 15, 2008. An extension of the Stay of the Avoidance Actions may only serve to further delay distributions to noteholders. Investors that have received distributions cannot re-invest those proceeds without the risk of claw back by the Debtors. In addition, an extension of the Stay may increase the difficulty in defining and

15

indentifying those investors constituting the defendant class as a result of the deterioration in the quality of records in the hands of third parties. Determination of class defendants ought to be promptly made. Delay leaves possible doubt with respect to putative class members.

## IV. In the Alternative, Any Order Implementing a Stay Should be Amended to Be More Fair and Equitable to the Defendants

25. In the event this Court determines that an extension of the Stay of the Avoidance Actions is appropriate, the Trustee respectfully requests that the Order implementing the Stay be amended so that: (i) the Stay be granted with prejudice to the Debtors' ability to request further extensions; (ii) all applicable statutes of limitations among the Trustee, the trusts and all applicable certificateholders and noteholders be tolled *nunc pro tunc* from the date that the Stay was originally issued; and (iii) in circumstances where a trustee has distributed assets prior to receiving the Debtors' letter of November 25, 2008, the Debtors be barred from seeking monetary damages against such trustee.

26. As noted above, the Trustee is concerned about statutes of limitations that may exist in connection with recovering any distribution from third-party recipients for which the Trustee or trusts are individually subject to judgment in the Avoidance Actions. Any Order should provide protections for the defendants in connection with any limitations periods, including expressly tolling any limitations periods during the duration of the Stay and assuring that there will be no prejudice of any rights, claims or defenses of the Trustee or trusts due to the imposition of a Stay in relation to third parties. Many of the Trustee's issues can be resolved by simply providing in the Order that the Debtors are barred and prohibited from pursuing trustees in their individual capacities for any distributions made.

16

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that this Court deny the Motion to the extent it seeks to extend the Stay of the Avoidance Actions; but to the extent this Court decides to extend the Stay, condition the Stay as follows: (i) the extension of the Stay be granted with prejudice to the Debtors' ability to request further extensions; (ii) all applicable statutes of limitations among the Trustee, the trusts and all applicable certificateholders and noteholders be tolled *nunc pro tunc* from the date that the Stay was originally issued; and (iii) in circumstances where a trustee has distributed assets prior to receiving the Debtors' letter of November 25, 2008, the Debtors be barred from seeking monetary damages against such trustee.

Dated:  July 3, 2013
       New York, New York

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE

By: _s/ Craig M. Price_____
    One of Its Attorneys

17