WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                   Debtors.               :    (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

**OMNIBUS REPLY IN SUPPORT OF MOTION OF LEHMAN**
**BROTHERS HOLDINGS INC., PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND**
**STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this reply to the objections interposed

to the motion of the Plan Administrator, dated June 21, 2013 [ECF No. 38118], to extend the

stay of avoidance actions and obtain certain related relief (the "Motion")[1] and respectfully

represents:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

**Preliminary Statement**

1.      The extension of the Stay affects hundreds of parties who are named

defendants in various Avoidance Actions filed by the Chapter 11 Estates.  Only the following

three objections have been filed:[2]

- Objections of Nationwide Life Insurance Company and Nationwide Mutual Insurance Company (together, the "Nationwide Parties"), dated July 3, 2013 [ECF No. 38390] (the "Nationwide Objection")

  o Joinder to the Nationwide Objection, filed by Ameritas Life Insurance Corporation  ("Ameritas"), dated July 3, 2013 [ECF No. 38415] (the "Ameritas Joinder")[3]

- Objection of U.S. Bank National Association, as Trustee ("U.S. Bank"), dated July 3, 2013 [ECF No. 38414] (the "U.S. Bank Objection")

- Limited Objection of First Trust Strategic High Income Fund II ("First Trust," and, together with the Nationwide Parties, Ameritas, and U.S. Bank, the "Objectors"), dated July 2, 2013 [ECF No. 38366] (the "First Trust Objection," and, together with the Nationwide Objection, the Ameritas Joinder, and the U.S. Bank Objection, the "Objections")

2.      The Nationwide Objection largely rehashes arguments that the Nationwide

Parties made in their previous objection to an extensions of the Stay [ECF No. 34136] (the "First

Nationwide Objection"), which was overruled by the Court.  Instead of objecting only to the

extension of the Stay, the Nationwide Parties now go even further and seek to collaterally attack

the stay imposed by the SPV Derivatives ADR Procedures (the "SPV ADR Stay"), a matter

which is not before the Court at this time.  The U.S. Bank Objection also recapitulates arguments

that U.S. Bank made in its previous objections to extensions of the Stay [ECF Nos. 11964,

17501] (together, the "Prior U.S. Bank Objections"), which were overruled by the Court as well.

First Trust, a noteholder, objects to the Motion primarily on the basis of its opposition to the

---

[2] JA Hokkaido Shinren also filed an objection to the Motion [ECF No. 38382], which has since been withdrawn [ECF No. 38614].

[3] The Plan Administrator's reply to the Nationwide Objection also constitutes a reply to the Ameritas Joinder.

2

continuing accrual of pre-judgment interest  As this Court has previously acknowledged in overruling a prior request to extend the Stay, "[i]f a party in interest affected by the accrual of interest wishes to take action, they are certainly free to do so."  Tr. of Hr'g, July 18, 2012, at 37:10-12.

3.     The Objectors are all currently subject to the ADR process and, thus, their Objections are particularly ill-timed.  It appears that the Objectors would rather expend money and litigate rather than even attempt to let the already-successful ADR process operate to facilitate a fair settlement.  Indeed, the Objectors are free to assert all their arguments before the mediator, including arguments regarding, among other things, the running of interest, the applicable statute of limitations, or relevant decisional law.  As set forth in the Motion, the Chapter 11 Estates have accelerated their pace in initiating SPV ADR proceedings with Avoidance Action Defendants.  Initiating such proceedings, and bringing the parties to the bargaining table where an impartial mediator may weigh the relative strengths and weaknesses of their respective arguments, is likely to promote, rather than hinder, a prompt and equitable resolution of the Avoidance Actions.  The Objectors seek to undermine the efficacy of this effort and bring all such disputes before the Court, potentially overwhelming its docket and embroiling the Chapter 11 Estates and all of the Avoidance Action Defendants in years of extensive and expensive litigation.  The Court should, therefore, overrule the Objections.

**An Extension of the Stay Is in the Best Interests of the Chapter 11 Estates,
Their Creditors, and the Avoidance Action Defendants and Should Be Approved**

4.     The Stay has enabled the Chapter 11 Estates to preserve valuable causes of action and, at the same time, to attempt to resolve disputes consensually, with minimal time and money spent on costly discovery, motion practice, and trial.  As set forth in the Motion, the Chapter 11 Estates continue to reach settlements of Avoidance Actions.

3

5.      The Nationwide Parties and U.S. Bank argue that progress is not a sufficient justification for extension of the Stay.  The thrust of the Nationwide Objection and the U.S. Bank Objection is that the Court should engage in a balancing test, weighing the harms to the Objectors against the benefits accruing solely to the Chapter 11 Estates, as if this were a simple two-party dispute.  As demonstrated below, however, the harms to the Objectors are exaggerated or unrelated to the Stay itself.  Meanwhile, the benefits are not just to the Chapter 11 Estates, as the Objectors suggest, but to the hundreds of Avoidance Action Defendants, who would prefer not to expend money defending claims if a consensual settlement is possible, the creditors of the Chapter 11 Estates, and the Court.  In sum, the benefits resulting from the Stay are tremendous.  Any balancing test should take into account the benefits received by the Chapter 11 Estates' creditors, the vast majority of Avoidance Action Defendants who have not objected to an extension of the Stay, and the Court.

6.      The Nationwide Parties and U.S. Bank seem to assume that the Chapter 11 Estates' primary reason for seeking to extend the Stay is that it will be too expensive to prosecute the Avoidance Actions or that there are too many defendants.  The Nationwide Parties and U.S. Bank disregard the fact that the incremental cost of litigation, including the delay attendant thereto, would simply be a waste of assets of the Chapter 11 Estates.  Such assets would be better spent either in resolving Avoidance Actions consensually or in funding distributions to creditors.  Moreover, while conserving financial resources is one reason for the Stay, such conservation works both ways – during the pendency of the Stay, Avoidance Action Defendants, most of whom have not objected to an extension of the Stay, do not need to expend any resources engaging in formal discovery or motion practice.

7.      Indeed, the Nationwide Parties' and U.S. Bank's focus on financial resources is myopic.  The Chapter 11 Estates comprise part of what was once the fourth largest

4

investment bank in the United States.  Prior to the Commencement Date, LBHI and its affiliates had a derivatives staff that numbered several hundred.  There are now fewer than 100 employees working on derivatives.  Consequently, if the Stay expires, the Chapter 11 Estates would be required to allocate their efforts between litigation demands and settlement efforts, including through the ADR process.

8.    The Nationwide Parties and U.S. Bank minimize the ramifications of the relief they seek.  The Nationwide Parties argue that the relief they seek, which entails discovery and filing dispositive motions, is limited and narrow and would improve efficiency, *see* Nationwide Objection, at pp. 1, 7-9, but they fail to take into account that they are just two parties in one Avoidance Action.  The Distributed Action alone includes over 250 additional defendants; there are also a multitude of defendants in the other Avoidance Actions.  Moreover, inasmuch as other Avoidance Action Defendants might want to litigate other legal issues, the Nationwide Parties cannot provide any assurance that the carve-out from the Stay will be limited at all.  U.S. Bank similarly argues that parties can engage in settlement discussions even if the litigation proceeds.  *See* U.S. Bank Objection, at ¶ 12.  Like the Nationwide Parties, U.S. Bank disregards the sheer number of Avoidance Action Defendants who would be forced into active litigation if the Stay is not extended.  The theoretical possibility that those defendants may be able to engage in settlement discussions while such litigation proceeds does not outweigh the costs and burdens imposed attendant to the litigation.

9.    First Trust contends that it is prejudiced by the continuing accrual of pre-judgment interest.  It ignores the fact, however, that it can abate the continuing accrual of interest by paying the Chapter 11 Estates the amounts that are due, subject to repayment in the event that the matter proceeds to litigation and First Trust prevails.  This is particularly appropriate where, as here, the Court has already ruled in *In re Lehman Bros. Holdings Inc.*, 422 B.R. 407 (Bankr.

5

S.D.N.Y. 2010) ("*BNY*") that the "flip clause" upon which First Bank bases its entitlement to the money it is withholding from the Chapter 11 Estates is an invalid *ipso facto* clause.  Moreover, implicit in First Trust's argument is its assumption that the ADR process will fail.  Having participated in ADRs for nearly four years and witnessed many of the thorniest disputes resolved, the Chapter 11 Estates remain optimistic that even the most difficult and contentious disputes can be resolved in ADR.

10.      The Objectors all ignore the fact that expiration of the Stay, whether to litigate a purportedly narrow issue or otherwise, would trigger extensive litigation, forcing the Chapter 11 Estates to divert their efforts from attempting to consensually resolve the Avoidance Actions to participating in discovery and litigation.  Defendants who wish to continue engaging in ADR or settlement discussions outside of litigation would be harmed, as they might well feel it is necessary to join in active litigation being pursued by other defendants in the same action, and as the Chapter 11 Estates' ability to engage in those efforts would be sharply constrained by the overwhelming burdens imposed by litigation.

11.      The Chapter 11 Estates' consensual resolution strategy and ADR process, which is quicker than litigation, has minimized the burdens – financial and otherwise – on all parties that would otherwise result from litigation.  Furthermore, the burden on the Court has been virtually eliminated to date.  Looking at the balance among *all* parties holistically, the balance clearly weighs in favor of an extension of the Stay.

12.      Far from being irrelevant, the progress in reaching consensual resolutions shows that the Stay has had the salutary effect for which it was intended.  Given these successes and, as described in the Motion, the progress being made in resolving all of the Avoidance Actions, including through the Court's ADR procedures, the Chapter 11 Estates should be

6

granted the time and the opportunity to achieve similar successes and make continued progress in resolving the Avoidance Actions without Court intervention.

**The Nationwide Objection**

13.    The Nationwide Parties, two affiliated noteholder defendants in the Distributed Action, renew the First Nationwide Objection, and seek a carve-out to (i) conduct limited discovery of the Chapter 11 Estates and (ii) file a limited motion to dismiss on the purported threshold legal issue of whether the claims asserted against them in the Second Amended Complaint are barred by the applicable statute of limitations.  The relief sought by the Nationwide Parties is virtually identical to the relief sought in the First Nationwide Objection.

14.    Yet the Nationwide Parties have ignored a critical change in circumstances.  On May 8, 2013, the Chapter 11 Estates issued the Nationwide Parties ADR notices, thereby initiating ADR pursuant to the *Amended Order Providing for Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties* [ECF No. 29507] (the "SPV Derivatives ADR Order").  A termination of the Stay would have no immediate impact on the Nationwide Parties because they are subject to the separate SPV ADR Stay effectuated under the SPV Derivatives ADR Order.  Perhaps recognizing that, the Nationwide Parties fail to challenge the extension of the Stay requested in the Motion, but instead inappropriately attack the SPV ADR Stay.[4]

15.    The SPV ADR Stay, however, is not an issue before the Court.  The hearing on the Motion to extend the Stay is a wholly inappropriate forum to litigate issues related

---

[4] The Nationwide Parties incorrectly assert that once a defendant is served with a notice pursuant to the SPV Derivatives ADR Order, litigation relating to that defendant is stayed "indefinitely."  *See* Nationwide Objection, pp. 2-4.  Rather, the SPV Derivatives ADR Order specifically provides for a stay of the relevant litigation "pending completion of the SPV Derivatives ADR Procedures through settlement or termination of mediation."  *See* SPV Derivatives ADR Order, at ¶ 2(d).

US_ACTIVE:\44289984\7\58399.0003

to the SPV ADR Stay. The SPV ADR Stay is a key component of the SPV Derivatives ADR Procedures and was approved by the Court in 2011. On numerous occasions, the Court has expressed wholehearted approval of the ADR process.

16.     The Nationwide Parties' collateral attack on the SPV ADR Stay is revelatory: they do not want to participate in ADR; they want to litigate. Instead of attempting to resolve the dispute quickly and efficiently by engaging with the Chapter 11 Estates in the same type of consensual resolution process that has proven successful for so many other parties to date, the Nationwide Parties want to bypass that process and have the Court adjudicate their dispute. The collateral attack on the SPV ADR Order by the Nationwide Parties would undermine the entire ADR process and should be summarily rejected.

17.     The Nationwide Parties' arguments are not directed at an extension of the Stay. If the Court believes it is appropriate to address the SPV ADR Stay, then the Court should nevertheless overrule their Objection. The Nationwide Parties have renewed their argument that, because the Court has permitted the Chapter 11 Estates to take discovery as to the identities of noteholders, the Court should likewise allow the Nationwide Parties to take discovery of the Chapter 11 Estates. *See* Nationwide Objection, at pp. 1, 3-4, 7-9. As set forth in the Plan Administrator's reply to the First Nationwide Objection [ECF No. 34248],[5] the Nationwide Parties' argument completely misses the point and reflects a fundamental misunderstanding of the Avoidance Actions and the effect of the Stay and the SPV ADR Stay.

18.     LBSF conducted discovery, pursuant to the *Order Granting Plaintiff's Motion for Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014 and Establishing a Protocol Governing the Confidentiality of and Access to Certain Discovery Materials*, dated

---

[5] The Plan Administrator comprehensively responded to the Nationwide Parties' arguments that are repeated herein in the Plan Administrator's reply to First Nationwide Objection, which is incorporated by reference as if set forth herein.

US_ACTIVE:\44289984\7\58399.0003

October 25, 2010, Adv. Pro. No. 10-3547 [ECF No. 27] (the "Expedited Discovery Order"), to

determine whether the Nationwide Parties, among others, had received potentially avoidable

distributions.  Discovery pursuant to the Expedited Discovery Order was conducted *before* the

Nationwide Parties were even identified as defendants in the Second Amended Complaint.

19.    This portion of the Nationwide Objection makes even less sense in the

current context.  Under the SPV ADR Stay, the Chapter 11 Estates are precluded from

conducting further discovery with respect to the Nationwide Parties until the SPV ADR Stay no

longer applies and the parties proceed to litigation.  The discovery standstill effected by the SPV

ADR Stay is evenhanded and does not prejudice the Nationwide Parties.[6]

20.    The Nationwide Parties also argue once again that after they conduct

discovery they should be allowed to file dispositive motions on what they call a threshold legal

issue.  *See* Nationwide Objection, at pp. 1, 8.  The SPV Derivatives ADR Procedures would lose

most, if not all, of their efficacy, if parties were able to file dispositive motions at the same time

as they were engaging in ADR.  When the Stay and the SPV ADR Stay no longer apply, if the

parties do not settle before that time, the Nationwide Parties will have a full and fair opportunity

to litigate the statute of limitations issue.

21.    The result of the Nationwide Parties' carve-out – whether from the Stay or

the SPV ADR Stay – would be anything but narrow, and their arguments, rather than supporting

any such carve-out, actually demonstrate the continued need for the Stay.  The Objection should,

therefore, be overruled.

22.    *Cont'l Ins. Co. v. N. Ind. Pub. Serv. Co.*, 2011 U.S. Dist. LEXIS 37095

(N.D. Ind. Apr. 5, 2011) and *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F.Supp.2d 558 (E.D.

---

[6] In point of fact, the Chapter 11 Estates will not conduct further discovery of the Nationwide Parties until both the Stay and the SPV ADR Stay no longer apply.

US_ACTIVE:\44289984\7\58399.0003

Va. 2011), non-bankruptcy cases which the Nationwide Parties cite as support for their argument that the Chapter 11 Estates should litigate the Distributed Action and engage in settlement discussions simultaneously, do not speak to the unique dynamics of these cases. The stays sought in those cases each implicated one plaintiff and one defendant, where it may have been manageable to conduct settlement discussions while litigation was ongoing. If the Court adopted that process here and allowed the Avoidance Action Defendants to conduct discovery or file dispositive motions, both the Chapter 11 Estates and the hundreds of non-objecting Avoidance Action Defendants would be forced to divert critical resources from resolving the Avoidance Actions consensually to active litigation, including responding to an onslaught of discovery requests and motions to dismiss, which would contravene the purpose of the Stay.

23.    Contrary to the Nationwide Parties' assertion that appearing before the Court on a threshold issue would improve the efficiency of the Distributed Action, this would actually decrease the efficiency of the Distributed Action by redirecting the Chapter 11 Estates' resources away from their settlement efforts, including through the Court's ADR procedures, and to litigation. Regardless of how limited or narrow the Nationwide Parties seek to portray it, extensive litigation over the statute of limitations issue (and any other issues that other defendants may deem to be threshold issues) would ensue, overwhelming the Court's docket with disputes that may have been resolvable outside of Court. The Nationwide Parties fail to consider the useful impact the Stay has had on the Court's docket, which would suddenly be teeming with litigation.

24.    Finally, the Nationwide Parties contend that the stay (they do not indicate which stay) operates for the unilateral benefit of the Chapter 11 Estates because it permits them to benefit from this Court's decision in *BNY*. The Nationwide Parties would have the Court ignore the fact that the ADR process is, at the end of the day, a purely consensual process – no

10

party can be forced to settle on terms to which it does not agree.  Moreover, during ADR, the

Nationwide Parties can make any arguments to the mediator regarding the likelihood that the

*BNY* decision will withstand appeal.  Likewise, the Nationwide Parties can make any arguments

regarding the statute of limitations issue to the mediator.  The mediators are sophisticated

attorneys (including some former judges) who are capable of weighing (and have weighed in

many mediations) various arguments.  If the Nationwide Parties' case is as clear-cut as they

appear to believe it is, the mediator is well-positioned to make such an evaluation.

   25.  It is evident that the Nationwide Parties simply want to avoid ADR and

the SPV ADR Stay.  Accordingly, and in light of the substantial benefits that have inured and

will continue to inure to the Chapter 11 Estates, their creditors, the hundreds of other Avoidance

Action Defendants, and the Court as a result of the Stay, the Nationwide Objection should be

overruled and the Stay extended.

## The U.S. Bank Objection

   26.  U.S. Bank, which serves as the trustee for a multitude of derivatives

transactions involving SPVs, including some that are the subject of the Avoidance Actions, also

renews the Prior U.S. Bank Objections.  U.S. Bank again urges the Court to deny the Plan

Administrator's request to extend the Stay; alternatively, in the event the Court extends the Stay,

U.S. Bank urges the Court to impose several rather extraordinary requirements.  Specifically,

U.S. Bank requests that the Court (a) grant an extension of the Stay with prejudice to the Plan

Administrator's ability to seek further extensions, (b) toll all applicable statutes of limitations

between certain parties to the litigation (*nunc pro tunc* to the date the Stay was initially

imposed), and (c) bar the Chapter 11 Estates from seeking monetary damages from U.S. Bank in

SPV transactions where U.S. Bank made distributions to noteholders prior to receiving the letter

of November 25, 2008 concerning the automatic stay.

US_ACTIVE:\44289984\7\58399.0003

27.    While U.S. Bank again makes legal arguments that have been considered and rejected by the Court,[7] U.S. Bank asserts that the strength of its prior arguments against an extension of the Stay has increased and reached a purported tipping point.  As discussed below, the Chapter 11 Estates disagree; U.S. Bank still has failed to demonstrate any prejudice resulting from the extension of the Stay.

28.    U.S. Bank also argues that the progress made by the Chapter 11 Estates in consensually resolving the Avoidance Actions is insufficient justification for extending the Stay. U.S. Bank makes this argument, even while admitting that it has made progress with the Chapter 11 Estates on a number of SPV transactions through the ADR process.  *See* U.S. Bank Objection, at ¶ 1.  Instead of acknowledging the value that the Stay has provided in promoting such progress, U.S. Bank focuses on the transactions where progress has purportedly not been made and asserts that it has a right to present its case regarding those transactions.

29.    U.S. Bank argues that the conclusions reached in *BNY* and *In re Lehman Bros. Holdings Inc.*, 452 B.R. 31 (Bankr. S.D.N.Y. 2011) ("*Ballyrock*") favor the Chapter 11 Estates in settlement negotiations and should be tested in other litigation.  U.S. Bank argues that because similar provisions may be at issue in the SPV transactions to which it is a party, it should be able to litigate the scope of those decisions and related issues now.  U.S. Bank also contends that certain decisions in the Second Circuit, the United States District Court for the Southern District of New York, and this Court create precedent that render the Chapter 11 Estates' avoidance claims unenforceable, and should be heard by the Court in the "proper setting."  *See* U.S. Bank Objection, at ¶ 19.

---

[7] U.S. Bank's legal arguments, not all of which are discussed herein, have been comprehensively addressed by the Chapter 11 Estates in their replies to the Prior U.S. Bank Objections [ECF Nos. 12052, 17602], which are incorporated by reference as if set forth herein.

US_ACTIVE:\44289984\7\58399.0003

30.     U.S. Bank's argument is flawed for two reasons.  First, the mere possibility that the Court may rely on *BNY* and *Ballyrock* when deciding the Avoidance Actions does not trigger a right of U.S. Bank to litigate immediately issues that it believes are similar. The existence of the Stay does not prejudice the right of U.S. Bank to present these very arguments to the Court if the Avoidance Actions to which it is a party are unable to be resolved consensually and proceed to litigation.  U.S. Bank made this argument in the Prior U.S. Bank Objections, which were overruled.

31.     Second, and more importantly, as it undoubtedly knows, U.S. Bank is free to present these arguments to the mediator during the ADR process.  Given that U.S. Bank made this argument in the Prior U.S. Bank Objections but has since admittedly made progress with the Chapter 11 Estates on SPV transactions, U.S. Bank apparently has been able to address the *BNY* and *Ballyrock* decisions appropriately during its negotiations with the Chapter 11 Estates.

32.     U.S. Bank also restates another argument that it originally set forth in the Prior U.S. Bank Objection:  U.S. Bank argues that it is prejudiced by the Stay because the passage of time may make it more difficult to identify the recipients of any alleged transfers.  *See* U.S. Bank Objection, at ¶¶ 2, 21.  This objection ignores both the purpose and the express terms of the Expedited Discovery Order, which permits trustees like U.S. Bank to request and obtain from LBSF discovery material that LBSF has received pertaining to SPV transactions in which the trustee serves in such capacity.  *See* Expedited Discovery Order, at ¶ 4.  Furthermore, an extension of the Stay would not preclude U.S. Bank from conducting its own independent investigations to identify the recipients of any alleged transfers to the extent it believes such action is necessary.  Accordingly, U.S. Bank's objection that the Stay necessarily will delay this process is unfounded.

US_ACTIVE:\44289984\7\58399.0003

33.    U.S. Bank's next complaint, that its claims against third parties could be prejudiced, *see* U.S. Bank Objection, at ¶¶ 2, 22, 26, is purely hypothetical.  U.S. Bank has not demonstrated that it holds claims against third parties or why those claims would be compromised by the Stay.  As to the alleged expiration of statutes of limitations, under New York law, claims for contribution or reimbursement against third parties do not accrue until the liability has been fixed.  *See McDermott v. City of New York*, 50 N.Y.2d 211 (1980); *Bay Ridge Air Rights, Inc. v. State of New York*, 44 N.Y.2d 49 (1978) (cause of action accrues upon payment of a judgment by the plaintiff seeking contribution or indemnification).  An action for indemnification is considered to be an action for either express or implied contractual rights and, thus, is governed by the six-year statute of limitations under N.Y. C.P.L.R. 213(2) (governing actions based on, *inter alia*, contractual obligations).  *McDermott*, 50 N.Y.2d at 216-17.  This rule applies even when the underlying claim for which indemnification or contribution is sought is based in tort.  *Id.* at 218.

34.    Consequently, even if U.S. Bank has any indemnification claims, the six year statute of limitations would not start to run until after there is a judgment against U.S. Bank.  Thus, U.S. Bank's statute of limitations argument neither justifies denying an extension of the Stay nor an order tolling, *nunc pro tunc* to the date the Stay was initially imposed, any applicable statutes of limitations applicable to claims by or against parties that are not even before the Court.

35.    U.S. Bank further objects to the extension of the Stay because it is holding funds that have not been distributed and because noteholders may be concerned about having to pay back prior distributions.  *See* U.S. Bank Objection, at ¶¶ 2, 14, 24.  This argument only makes any sense if litigation would be more expeditious than ADR.  The Chapter 11 Estates, however, do not believe that this is the case.  Throughout the course of these cases, the Chapter

14

11 Estates have resolved dozens of disputes with U.S. Bank through negotiation or ADR.  In contrast, it is not unusual for an active litigation to last many years such as with the *Ballyrock* adversary proceeding [Adv. Pro. No. 10-1032], which is not an Avoidance Action and, therefore is not stayed.

36.    Moreover, U.S. Bank fails to appreciate that the Chapter 11 Estates, likewise, have not been paid what they are owed under these same transactions for the same period of time.  In doing so, U.S. Bank neglects to consider the interests of the Chapter 11 Estates' creditors who are also waiting for funds to which they are legally entitled.  The Chapter 11 Estates are endeavoring to make distributions to their creditors as expeditiously as possible; they have no interest in delaying that process by slowing down resolution of the Avoidance Actions; to the contrary, the Stay makes sense only because it has had and will likely continue to have the effect of accelerating resolution of disputes.  The Chapter 11 Estates have determined that, for the Avoidance Actions, the ADR process is the most expeditious means of recovering funds for the benefit of its creditors.  The Chapter 11 Estates' track record in resolving these disputes through ADR demonstrates that is the case.

37.    Finally, U.S. Bank argues that if the Stay is extended, it should be absolved of any direct liability to the Chapter 11 Estates for wrongful acts that U.S. Bank may have committed in distributing assets that may have belonged to the Chapter 11 Estates.  There is no basis to require the Chapter 11 Estates to waive such claims or any basis for the Court to issue a ruling on such substantive claims in the context of determining whether the Stay should be extended.[8]

---

[8] As to the claims for actual fraudulent transfers, U.S. Bank appears to misconstrue the statute, which refers to actual fraud by the trustee or debtor in possession.  *See* U.S. Bank Objection, at ¶¶ 2, 8, 13.  Thus, the assertion of such claims does not impugn the integrity of U.S. Bank, and its concern for reputational harm, *see id.*, ¶¶ 8, 17, is baseless.

15

## The First Trust Objection

38.      First Trust argues that it would be prejudiced by an extension of the Stay due to the continuing accrual of pre-judgment interest.  First Trust, in essence, seeks to hold onto funds that rightfully belong to the Chapter 11 Estates but to be absolved from having to pay for the use of such funds.  Like the other Objectors, First Trust mistakenly assumes that litigation will be quicker than ADR.  As set forth above, the Chapter 11 Estates do not believe that is the case.

39.      First Trust will be free to make its arguments regarding whether it should be charged for pre-judgment interest in the ADR that the Chapter 11 Estates commenced on June 12, 2013.  And, if it wants to minimize the incurrence of additional pre-judgment interest, First Trust could pay to the Chapter 11 Estates the amounts due, subject to repayment in the event that the matter proceeds to litigation and First Trust prevails.

40.      In short, First Trust should not be able to leverage its failure to pay amounts due to the Chapter 11 Estates into a viable basis for objecting to the extension of the Stay.  Moreover, First Trust is now subject to the SPV ADR Stay, which will continue to apply whether or not the Court grants the relief requested in the Motion.

## Conclusion

41.      The Stay has been enormously beneficial to the consensual resolution of numerous Avoidance Actions, and an extension of the Stay is also an integral part of the implementation of the Court's ADR procedures in these cases.  The Plan Administrator has met its burden of demonstrating that the Stay and the Service Deadline should be extended.[9]  The Chapter 11 Estates have accelerated the pace of SPV ADRs so that defendants can no longer

---

[9] The extension of the Service Deadline is unopposed.

US_ACTIVE:\44289984\7\58399.0003

complain that they are being left out of the ADR process.  The Court should not allow the

parochial litigation strategy of the Objectors to derail a process that has been extremely

successful and that has benefited hundreds of other parties.  The Plan Administrator, therefore,

respectfully requests that the Court extend the Stay and the Service Deadline for an additional six

(6) months, without prejudice to their ability to request further extensions.

WHEREFORE the Plan Administrator respectfully requests that the Court overrule the

Objection, enter the Order, and grant the Plan Administrator such other and further relief as is

just.

Dated: July 15, 2013
       New York, New York

/s/ Jacqueline Marcus
Richard W. Slack
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

US_ACTIVE:\44289984\7\58399.0003