WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
 :
Debtors. : (Jointly Administered)
 :
------------------------------------------------------------------x

### DECLARATION OF LAWRENCE BRANDMAN IN SUPPORT OF MOTION OF LEHMAN BROTHERS HOLDINGS INC., PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF

Pursuant to 28 U.S.C. § 1746, I, Lawrence Brandman, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, following my review of the business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and certain of its subsidiaries (together, the "Chapter 11 Estates") and/or my consultation with employees of the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Motion of Lehman Brothers Holdings Inc., Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule*

*7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated June 21, 2013 [ECF No. 38118] (the "Motion").[1]

3. I am Managing Director, Derivatives Legal, Head of Bankruptcy Strategic Advisory with LBHI. One of my primary areas of responsibility is managing the Chapter 11 Estates' ADR process, including mediations, relating to derivatives transactions. I also supervise the management of a portfolio of the Chapter 11 Estates' derivatives transactions, including with counterparties that are SPVs, noteholders, or trustees. In those roles I have independently reviewed, have become familiar with, and have personal knowledge regarding many derivatives transactions that the Chapter 11 Estates entered into before their bankruptcies, including the matters that are the subject of the Motion. I have been the primary representative for the Chapter 11 Estates in connection with the matters set forth in the Motion, including for the ADR process.

4. I am thus fully familiar with the facts underlying the Motion, which I approved prior to its filing. I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

5. I make this Declaration to explain (a) the substantial progress that the Chapter 11 Estates have made in consensually resolving the Avoidance Actions through the Court's ADR program while the Stay has been in place and (b) the need for an extension of the Stay so as to promote further consensual resolutions of the Avoidance Actions.

6. The Stay has allowed the Chapter 11 Estates to engage in an ADR program that has been enormously successful in resolving sometimes difficult and complex matters that otherwise would have taken a huge amount of time for the Chapter 11 Estates to pursue through litigation and the Court to manage. The Stay has also allowed the Chapter 11

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

Estates to pursue amicable resolutions with the Avoidance Action Defendants, including by communicating and negotiating with Avoidance Action Defendants through, among other things, the exchange of relevant documentation, evaluation of potential defenses, and consummation of settlements or dismissal of actions.

7. The Chapter 11 Estates comprise part of what was once the fourth largest investment bank in the United States. Prior to the Commencement Date, LBHI and its affiliates had a derivatives staff that numbered several hundred. There are now fewer than 100 employees working on derivatives. Consequently, if the Stay expires, the Chapter 11 Estates would be required to allocate their efforts between litigation demands and settlement efforts, including through the ADR process.

8. Under the Affirmative ADR Procedures, which include more than just the Avoidance Actions, the Chapter 11 Estates have recovered more than $1.547 billion dollars as a result of 265 ADR settlements with 360 counterparties, all without Court intervention. Of the 109 ADR matters that have reached the mediation stage and have been concluded, 101 have been settled in mediation.[2] Three additional mediations are scheduled to commence between now and the end of September. Currently, there are over 132 Avoidance Action Defendants that are subject to the SPV Derivatives ADR Procedures. In addition, the Chapter 11 Estates have now reached final resolution, by settlement or otherwise, with over 134 defendants in connection with the Avoidance Actions involving SPV derivatives matters, and the Chapter 11 Estates are in the process of reaching resolution with additional defendants, pending final documentation. The Chapter 11 Estates' success at commencing and consensually resolving ADRs through mediation and other settlements has produced material recoveries for the Chapter 11 Estates.

---

[2] Certain numbers set forth herein are different than the corresponding numbers set forth in paragraph 14 of the Motion because they have been updated through the date hereof.

3

9. The Chapter 11 Estates have devoted a considerable portion of their manpower to these consensual resolution efforts, and, at this time, virtually all identified Avoidance Action Defendants are engaged in some manner with the Chapter 11 Estates, including in ADR, settlement discussions outside ADR, or otherwise. The Stay has enabled the Chapter 11 Estates to commence SPV ADR proceedings as expeditiously as the unique circumstances of these chapter 11 cases have permitted. Extension of the Stay is essential to the continued efficacy of the ADR process.

10. In recent months, a significant portion of the Chapter 11 Estates' derivatives team has been devoted to accelerating the pace of initiating SPV ADR proceedings as to Avoidance Action Defendants. Since February 2013, the Chapter 11 Estates have served ADR notices upon 100 defendants in the Distributed Action. The Chapter 11 Estates are also preparing to serve ADR notices upon approximately 20 additional defendants in the Distributed Action. The Chapter 11 Estates currently anticipate that ADRs will be commenced, or resolutions otherwise reached, as to virtually all of the SPV derivatives matters within the next several weeks, other than with respect to those defendants in the Distributed Action who have not already been identified or as to which the amount in dispute is not yet clear. Overall to date, the Chapter 11 Estates have served 425 ADR notices.

11. The Chapter 11 Estates' consensual resolution strategy and ADR process has proven extremely successful to date, with the Chapter 11 Estates resolving Avoidance Actions, as well as avoidance claims subject to tolling agreements, with over 250 parties, including through settlements, dismissal of complaints, and termination of tolling agreements, without engaging in time-consuming and costly litigation. As discussed above, the ADR process, of which mediation is a key component, has been particularly successful.

4

12. I have participated in ADRs for nearly four years and witnessed many of the most complicated disputes resolved. The Chapter 11 Estates remain optimistic that even the most difficult and contentious disputes can be resolved in ADR, including through mediation. During the mediations in which I have participated, parties have raised a wide range of issues, including the following:

- construction and interpretation of numerous provisions of different 1992 and 2002 standard form ISDA agreements
- appropriate valuation measures;
- deductible charges and expenses;
- *ipso facto* clauses and the Court's decisions in *BNY* and *Ballyrock*;
- extent of permitted interest;
- mutuality of attempted setoffs;
- effectiveness of notices of termination; and
- applicability of sections 541, 542, 560, and 561 of the Bankruptcy Code.

13. The mediators are sophisticated attorneys (including some former judges) who are capable of weighing (and have weighed in many mediations) various arguments related to all of the foregoing issues. They are well-positioned to evaluate and fairly consider any issues raised by parties, as they have done to date.

14. Mediation has been a productive part of the ADR process, which requires the participation of the Chapter 11 Estates' derivatives team. If the Stay expires, the Chapter 11 Estates will be forced to divert their finite manpower from attempting to consensually resolve the Avoidance Actions through ADR and settlement discussions to participating in discovery and litigation.

15. If the Stay expires, litigation will begin for all Avoidance Action Defendants except those subject to the SPV ADR Stay. The costs of such litigation could run into millions of dollars, and the Chapter 11 Estates will have to redeploy a significant percentage their derivatives manpower, including business and legal personnel, to litigation efforts. This redeployment would have a material impact on the Chapter 11 Estates' ability to pursue consensual resolution of the Avoidance Actions, including through the ADR process. In addition, based on my experience in consensually resolving Avoidance Actions, I believe that the incremental cost of litigation, including the delay attendant thereto, would be a waste of assets of the Chapter 11 Estates. I believe that such assets would be better spent either in resolving Avoidance Actions consensually or in funding distributions to creditors.

16. Further extension of the Stay is critical to continued efforts towards consensual resolutions of all Avoidance Actions. Much of the success in consensually resolving Avoidance Actions may not have been possible without the Stay, which has permitted the Chapter 11 Estates to effect such results without costly, burdensome, and time-consuming litigation. Moreover, the Stay has promoted judicial economy and minimized the burdens on the Court from the prosecution of all of the Avoidance Actions at the same time. Extending the Stay and providing the Chapter 11 Estates with an opportunity to try to achieve settlements with the Avoidance Action Defendants is a far better alternative than immediate litigation. For all of the foregoing reasons, the Plan Administrator determined that extending the Stay is in the best

6

interests of the Chapter 11 Estates and their creditors.

17. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 15th day of July 2013.

/s/ Lawrence Brandman
Lawrence Brandman