Hearing Date and Time: August 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: August 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Christopher J. Cox

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :     08-13555 (JMP)
                                          :
                    Debtors.              :     (Jointly Administered)
                                          :
------------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AND SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL**
**OF PARTIAL SETTLEMENT AGREEMENTS RELATING TO CERTAIN**
**CREDIT DEFAULT SWAP AGREEMENTS AND INDENTURES**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated July 17,

2013 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator")

as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman*

*Brothers Holdings Inc. and its Affiliated Debtors* for certain entities in the above-referenced

chapter 11 cases, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"),

pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the Federal

Rules of Bankruptcy Procedure for approval of partial settlements among LBSF, LBHI, U.S.

Bank National Association, as Trustee (the "Trustee"), and the following respective Issuers:

(i) Pebble Creek LCDO 2006-1; (ii) Exum Ridge CBO 2006-2; (iii) Exum Ridge CBO 2006-4;

(iv) Exum Ridge CBO 2006-5; and (v) Exum Ridge CBO 2007-1, as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at

the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 21, 2013 at**

**10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, and shall be filed

with the Bankruptcy Court electronically in accordance with General Order M-242 (which can

be found at *www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153,

Attn: Jacqueline Marcus, Esq. and Weil, Gotshal & Manges LLP, 201 Redwood Shores

Parkway, Redwood Shores, California 94065, Attn: Christopher J. Cox, attorneys for the Plan

Administrator; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street,

21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Susan Golden, Esq., and

Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street NW,

US_ACTIVE:\44293329\6\58399.0011

Suite 1100, Washington, District of Columbia 20006, Attn: David S. Cohen, Esq., attorneys for

the official committee of unsecured creditors appointed in these cases; and (v) Chapman and

Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603, Attn: Franklin H. Top, III, Esq.

and Scott A. Lewis, Esq., attorneys for U.S. Bank National Association, as Trustee, so as to be so

filed and received no later than **August 14, 2013 at 4:00 p.m. (prevailing Eastern Time) (the**

**"Objection Deadline").**

      PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

      PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York
      July 17, 2013

        /s/ Jacqueline Marcus
        Jacqueline Marcus
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Christopher J. Cox
        WEIL, GOTSHAL & MANGES LLP
        201 Redwood Shores Parkway
        Redwood Shores, California 94065
        Telephone: (650) 802-3000
        Facsimile: (650) 802-3100

        *Attorneys for Lehman Brothers Holdings Inc.*
        *and Lehman Brothers Special Financing Inc.*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Christopher J. Cox

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                        :
**In re**                                               :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*            :        **08-13555 (JMP)**
                                                        :
                          **Debtors.**                  :        **(Jointly Administered)**
                                                        :
------------------------------------------------------------------x

**MOTION PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AND SECTION 105(a) OF THE BANKRUPTCY CODE FOR**
**APPROVAL OF PARTIAL SETTLEMENT AGREEMENTS RELATING TO**
**CERTAIN CREDIT DEFAULT SWAP AGREEMENTS AND INDENTURES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator") as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan") for certain entities in the above-referenced

chapter 11 cases (the "Chapter 11 Estates"), on behalf of itself and Lehman Brothers Special

Financing Inc. ("LBSF"), submits this motion (the "Motion") and respectfully represents:

## Relief Requested

1.        By this Motion, pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), the Plan Administrator on behalf of itself and LBSF seeks

approval of certain partial settlements, and requests that such approval be immediately effective

and enforceable.  The terms of each partial settlement are incorporated in five separate settlement

agreements (collectively, the "Settlement Agreements") among LBHI, LBSF, U.S. Bank

National Association ("U.S. Bank" or the "Trustee"), solely in its capacity as trustee under the

indentures described on Exhibit A annexed hereto (collectively, the "Indentures"),[1] and the

following entities in their respective roles as the Issuer or Co-Issuer:[2]  (i) Pebble Creek LCDO

2006-1, Ltd., as Issuer, and Pebble Creek LCDO 2006-1, Corp., as Co-Issuer; (ii) Exum Ridge

CBO 2006-2, Ltd., as Issuer, and Exum Ridge CBO 2006-2, Corp., as Co-Issuer; (iii) Exum

Ridge CBO 2006-4 Ltd., as Issuer, and Exum Ridge CBO 2006-4, Corp., as Co-Issuer;

(iv) Exum Ridge CBO 2006-5, Ltd., as Issuer, and Exum Ridge CBO 2006-5, Corp., as Co-

Issuer; and (v) Exum Ridge CBO 2007-1, Ltd., as Issuer, and Exum Ridge CBO 2007-1, Corp.,

as Co-Issuer.  Each Settlement Agreement partially resolves disputes relating to a credit default

swap transaction (each a "Transaction").

## Background

2.        Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF,

---

[1] The Indentures are voluminous and have not been attached hereto.  The Plan Administrator shall furnish a copy of any Indenture upon request by a party in interest.

[2] Each Settlement Agreement is among LBSF, LBHI, the Trustee and a party identified as the Issuer or the Co-Issuer, each a "Party" and collectively referred to herein as the "Parties."  Unless otherwise stated, any reference herein to the Issuer or Co-Issuer is applicable to each entity identified as such in the Settlement Agreements.

2

commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

3.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4.      On September 17, 2009, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [ECF No. 5207] (the "ADR Procedures Order").

5.      On March 3, 2011, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors under Derivatives Transactions with Special Purpose Vehicle Counterparties* [ECF No. 14789] (the "SPV ADR Procedures Order").

6.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

## Jurisdiction

7.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## The Credit Default Swap Agreement and Indenture

8.      LBSF and each Issuer entered into a Transaction pursuant to a form ISDA Master Agreement (the "ISDA Master Agreement"), as amended and supplemented by a certain Schedule to ISDA Master Agreement, (the "Schedule"), and a confirmation (the "Confirmation").  LBHI guaranteed LBSF's obligations under each ISDA Master Agreement,

3

Schedule and Confirmation (the "Guarantee" and, together with each ISDA Master Agreement, Schedule, and Confirmation, a "Credit Default Swap Agreement").[3]

9.    Under each Credit Default Swap Agreement, LBSF agreed to make periodic payments to the Issuer in exchange for the Issuer's promise to make payments to LBSF in respect of losses incurred in respect of certain specified reference obligations. In effect, LBSF, as the "Swap Counterparty," purchased protection from the Issuer, which sold protection on the creditworthiness of the obligations referenced in the applicable Credit Default Swap Agreement.

10.    Each Issuer issued various classes of notes (the "Notes") under its respective Indenture and preference shares under a shares paying agency agreement (the "Preference Shares" and, together with the Notes, the "Securities"). The Notes were secured by a pool of collateral (the "Collateral") that also secured the Credit Default Swap Agreement. Through a series of note purchases, LBSF is now both a holder of certain of the notes and the Swap Counterparty under each Credit Default Swap Agreement (in such latter capacity, the "Swap Counterparty"). Each Issuer pledged the Collateral to the Trustee for the benefit and security of the holders of the Notes (the "Noteholders"), which now include LBSF, and to LBSF, in its capacity as Swap Counterparty. The Trustee continues to hold the Collateral under the Indenture for the benefit of the holders of the Notes (including LBSF) and LBSF as Swap Counterparty.

11.    Pursuant to the Granting Clause of each Indenture, the Issuer granted to the Trustee, for the benefit and security of the secured parties, all of its right, title and interest,

---

[3] A description of the Credit Default Swap Agreements is set forth on Exhibit B annexed hereto. The Credit Default Swap Agreements are voluminous and have not been attached. The Plan Administrator shall furnish a copy of any Credit Default Swap Agreement upon request by a party in interest.

4

whether now owned or hereafter acquired, in, to and under, *inter alia*, the Issuer's rights under the Credit Default Swap Agreement, the Collateral, and substantially all other assets of the Issuer.

12.     Under the terms of the Indentures, the Trustee applies payment proceeds received generally in accordance with a "waterfall" provision. *See* Indenture § 11.1. Section 11.1(B)(i) clause "third" of the Indenture provides that a termination payment owed to LBSF as Swap Counterparty will be paid in advance of any distributions to Noteholders unless, *inter alia*, LBSF is the defaulting party under the Transaction. *See id.* § 11.1(B)(i). Under clause "second" of Section 11.1(B)(xiv),[4] if, *inter alia*, LBSF is the defaulting party under the Transaction, the termination payment owed to LBSF is paid after the Noteholders and before the holders of Preference Shares. *See id.* § 11.1(B)(xiii).[5] As a result, Section 11.1(B)(i) clause "third" and Section 11.1(B)(xiv)[6] clause "second" of the Indentures (the "Waterfall Provisions") purport to provide that LBSF will receive termination payments before any distributions are made to Noteholders unless, *inter alia*, LBSF is the defaulting party under the Transaction.

### The Dispute

13.     Since the Commencement Date, neither LBSF as Swap Counterparty nor the Trustee has paid any amounts that have become due under the Indentures and the Credit Default Swap Agreements. On November 25, 2008, the Trustee received a letter from LBSF's counsel advising, *inter alia*, that (a) any action taken to exercise remedies with respect to the

---

[4] In the Indenture, dated as of November 29, 2006, among Pebble Creek LCDO 2006-1, Ltd., as Issuer, Pebble Creek LCDO 2006-1, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time (the "Pebble Creek Indenture"), the applicable section is Section 11.1(B)(xii).

[5] In the Indenture, dated as of March 8, 2007, among Exum Ridge CBO 2007-1, Ltd., as Issuer, Exum Ridge CBO 2007-1, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time, the applicable section is Section 11.1(B)(xi).

[6] In the Pebble Creek Indenture, the applicable section is Section 11.1(B)(xii).

5

Notes would violate the automatic stay and, therefore, any actions to make distributions to Noteholders would violate the stay, and (b) any provision subordinating any termination payment due LBSF would be unenforceable.  On November 28, 2008, each Issuer sent to LBSF a "Notice of Early Termination" which terminated each applicable Transaction as of November 28, 2008.  As a result of LBSF's dispute regarding, among other things, the enforceability of the Waterfall Provisions (the "Payment Dispute"), none of the parties to any Credit Default Swap Agreement has paid any amounts (including termination payments) that became due to the other applicable parties on or after November 28, 2008.

14.     On April 20, 2010, LBSF commenced Derivatives ADR No. 157 by serving an ADR Notice upon the Trustee and each Issuer pursuant to the ADR Procedures Order. On June 4, 2010, the Trustee served an ADR Response upon LBSF as required by the ADR Procedures Order.

15.     On September 14, 2010, LBSF filed a complaint against, among others, the Trustee and each Issuer.  *See* Adversary Proceeding No. 10-03542-JMP (the "Litigation"). At issue in Derivatives ADR No. 157 and in the Litigation is the Payment Dispute, including questions as to the proper interpretation of the Credit Default Swap Agreement and the Indenture.  The Litigation relates to the instant Payment Dispute among the Parties, as well as other similar disputes involving other issuers and trustees.

16.     In the Litigation, LBSF seeks a declaratory judgment that provisions purporting to modify LBSF's economic rights to a termination payment premised on the bankruptcy filing of either LBHI or LBSF constitute unenforceable *ipso facto* clauses that inappropriately modify a debtor's interest in property, in violation of sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.  LBSF also seeks a declaratory judgment that effectuation of

6

the Waterfall Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy

Code because it involves an improper exercise of control over property of LBSF's estate.  *See*

*generally Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd. (In re Lehman*

*Bros. Holdings Inc.)*, 452 B.R. 31 (Bankr. S.D.N.Y. 2011); *Lehman Bros. Special Fin. Inc. v.*

*BNY Corp. Tr. Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 407 (Bankr. S.D.N.Y.

2010).  In the alternative, LBSF seeks a declaratory judgment that, if the Waterfall Provisions

ultimately are found to be enforceable in whole or in part, they constitute either (i) a preferential

transfer of an interest of LBSF in property that may be avoided under section 547 of the

Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the

benefit of LBSF's estate under section 551 of the Bankruptcy Code; (ii) a constructive fraudulent

transfer of an interest of LBSF in property that may be avoided under section 548(a)(1)(B) of the

Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the

benefit of LBSF's estate under section 551 of the Bankruptcy Code; or (iii) an unauthorized

postpetition transfer of property of LBSF's estate that may be avoided under section 549 of the

Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the

benefit of LBSF's estate under section 551 of the Bankruptcy Code.  The positions advanced by

LBSF in the Litigation are not those of the Trustee.

        17.    On October 20, 2010, the Court entered the *Order Staying Avoidance*

*Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code*

*and Bankruptcy Rule 7004(a)(1)* [ECF No. 12199], thereby staying, among other things, certain

adversary proceedings, including the Litigation, to allow parties to the Litigation and other

similar actions time to explore the possibility of resolving their disputes without the need for

litigation (the "Stay").  The Stay has been subsequently extended by orders of the Court, most

7

recently pursuant to the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated February 13, 2013 [ECF No. 34697], which extended the Stay until July 20, 2013.  Accordingly, as a result of the Stay, the Issuers and the Trustee have not answered or otherwise moved for any relief in the Litigation.

18.      On April 1, 2011, LBSF submitted an SPV Derivatives ADR Election pursuant to which LBSF recommenced the ADR process under the SPV ADR Procedures Order. The Trustee served an amended ADR Response on June 13, 2011, and LBSF served its ADR Reply on July 5, 2011.  LBSF and the Trustee participated in mediations pursuant to the ADR process on and after December 7, 2012.  At various junctures following the commencement of the Litigation and through and including the mediation, LBSF and the Trustee have engaged in settlement discussions.

19.      Throughout the course of its settlement negotiations with LBSF and its participation in the Litigation, the Trustee has made numerous attempts to contact Noteholders and holders of Preference Shares for direction regarding the Payment Dispute and the application of proceeds from the sale of the Collateral.[7]  However, with limited exceptions, Noteholders and holders of Preference Shares have not adequately responded to the Trustee's communications. As a result, the Trustee has advised LBSF that it is prepared to enter into the Settlement Agreements, provided the Court approves of the terms of the Settlement Agreements pursuant to the terms of Bankruptcy Rule 9019.  Entry of an order by this Court, in the form annexed hereto, is a condition precedent to the effectiveness of the Settlement Agreements.

---

[7] The Parties will file an affidavit detailing the Trustee's attempts to contact Noteholders and holders of Preference Shares in advance of the hearing on this Motion.

US_ACTIVE:\44293329\6\58399.0011

## The Settlement Agreements[8]

20.     Although the terms of each Settlement Agreement are virtually identical, each Settlement Agreement is separate from the others.  As a result, the reserve and escrow accounts described below will be separate for each Transaction.  Likewise, the conditions to effectiveness may be satisfied to some Transactions and not others.

21.     The salient terms of each Settlement Agreement are as follows:

   a.   The Issuer and the Trustee shall take such actions as shall be necessary to cause certain assets held in respect of the Collateral to be redeemed or otherwise liquidated, and to cause the net proceeds thereof to be deposited with the Trustee (the "Investment Proceeds"), for further application as set forth below.

   b.   Notwithstanding any provision to the contrary in the Indenture, the Trustee shall distribute and apply the Investment Proceeds, as well as certain other amounts as set forth in the Settlement Agreement, as follows, and in the following order and priority:

      1.   Pay the outstanding fees and expenses of the Trustee.

      2.   Pay to each Noteholder other than LBSF that does not object to the Settlement Agreement or this Motion an amount equal to the Settlement Offer (as defined in the Settlement Agreement) (the "Noteholder Settlement Amount"), in full satisfaction of claims of such holders of such Notes; provided however that payment of the Noteholder Settlement Amount is subject to the receipt by the Trustee of an opinion or information regarding the fairness and reasonableness of the Noteholder Settlement Amount, or waiver of such receipt by the Trustee as to all or some of the Notes (such receipt or waiver of receipt, the "Noteholder Settlement Amount Condition").

---

[8] In keeping with the confidentiality provisions of the Parties' partial settlement, and due to LBHI's and LBSF's desire to keep the economic terms of the settlement confidential, the Settlement Agreements are not included as exhibits to this Motion.  The Parties will provide the Settlement Agreements to the Court, the U.S. Trustee, and the Creditors' Committee.  Noteholders and holders of Preference Shares must contact the Trustee for copies of the Settlement Agreement relating to their applicable Securities and, before receiving any such copies, such Noteholders or holders of Preference Shares will be required to execute an agreement binding them to the confidentiality restrictions of the parties' partial settlement, including paragraph 13 of the SPV ADR Procedures Order.

US_ACTIVE:\44293329\6\58399.0011

3. Place into an interest-bearing account an amount to be held in respect of a reserve, which the Trustee may use for fees and expenses as enumerated in the Settlement Agreement, which amount may be invested in Eligible Investments as defined in the Indenture (the "<u>Reserve Amount</u>").

4. With respect to any Noteholder that timely objects to the Settlement Agreement or this Motion (an "<u>Objecting Noteholder</u>"), place into an account with the Trustee, which may be invested in Eligible Investments as defined in the Indenture, an amount (the "<u>Escrow Amount</u>") to secure payment of the claims of any such Objecting Noteholder; provided however, that if the Noteholder Settlement Amount Condition is not met, the Escrow Amount shall secure payment of the claims of any and all Noteholders other than LBSF.

5. Upon LBSF's delivery of its Notes to the Trustee as set forth in the Settlement Agreement, pay the remaining amount (the "<u>Settlement Amount</u>") to LBSF.

c. LBSF retains all rights as Noteholder or Swap Counterparty except as otherwise explicitly set forth in the Settlement Agreement.

d. To the extent that LBSF subsequently purchases Notes from Objecting Noteholders that it does not currently hold, commensurate *pro rata* amounts will be deducted from the Escrow Amount and paid to LBSF.

e. Distribution of any remaining Escrow Amount and any remaining Reserve Amount to LBSF will be subject to certain conditions set forth in the Settlement Agreement.

f. LBSF, solely in its capacity as Noteholder, agrees not to assert that it is entitled to be paid on a senior or *pari passu* basis with the Notes that it does not hold (but LBSF reserves the right to assert that it is entitled to be paid amounts owing under the Notes it owns on a junior basis to the Notes it does not own and in an amount not to exceed the lesser of (a) the unpaid amount of principal and interest due on the Notes that LBSF owns (after taking into account the Settlement Payment or applicable Subsequent Settlement Payment, as the case may be, to the extent any such payment is deemed to be a payment under the Notes that LBSF owns, as the case may be), or (b) the then remaining Escrow Amount).

US_ACTIVE:\44293329\6\58399.0011

g.  LBSF and the Plan Administrator acknowledge and agree that they, and any agents and assigns thereof, as applicable, will only seek payment for damages and other relief, including interest thereon, with respect to or in connection with the Transaction (including, without limitation, any termination payment), the Notes, the Preference Shares, the Indenture and/or the Credit Default Swap Agreement in the adversary proceeding, *Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, et al.*, Adversary Proceeding No. 10-3542 (JMP), pending in the United States Bankruptcy Court for the Southern District of New York, in an aggregate amount not greater than the then remaining Escrow Amount.

### The Partial Settlements Are in LBSF's Best Interests and Should Be Approved

22.    The Plan Administrator on behalf of itself and LBSF submits that the Settlement Agreements are in LBSF's best interests and should be approved under Rule 9019 of the Bankruptcy Rules.  Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement."  Fed. R. Bankr. R. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."  *Id.*; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

23.    Compromises are "a normal part of the process of reorganization."  *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  Compromises may be effected separately during the reorganization proceedings or in the body of the plan itself.  *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 758.  The decision to approve a particular compromise lies within the sound discretion of the Court.  *See Nellis v.*

11

*Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The Court's discretion may be exercised "in light

of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R.

41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of

whether it is "fair and equitable, and in the best interest of the [debtor's] estate." *In re Best

Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). The court must

apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the

probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep.

Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

        24.    Courts typically consider the following factors in determining whether a

settlement should be approved: (i) the probability of success in litigation, with due consideration

for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment;

(iii) the complexity and likely duration of the litigation and any attendant expense,

inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who

affirmatively support, the proposed settlement; (v) the competence and experience of counsel

who support the settlement; (vi) the relative benefits to be received by members of any affected

class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and

not the product of fraud or collusion; and (viii) the debtor's informed judgment that the

settlement is fair and reasonable. *See Protective Comm. for Indep. Stockholders of TMT Trailer

Ferry, Inc.*, 390 U.S. at 424; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y.

1998); *In re Best Prods. Co.*, 168 B.R. at 50.

        25.    While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re*

*W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation.

*Drexel Burnham Lambert Group*, 134 B.R. at 496.  Moreover, in reviewing a global

compromise, a court need not be aware of or decide the particulars of each individual claim

resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need

only canvass the issues and see whether the settlement falls 'below the lowest point in the range

of reasonableness.'"  *Shugrue*, 165 B.R. at 123.  As one court explained in assessing a global

settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its*

*entirety* is appropriate for the . . . estate."  *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust*

*Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d

Cir. 1993) (emphasis added).

26.     Here, each partial settlement will benefit LBSF and its creditors by

allowing LBSF to capture a substantial amount of the value of each Transaction and the Notes

that it owns for its estate.  The partial settlements will not resolve the Payment Dispute: LBSF

retains the right to maintain its positions in respect of the Payment Dispute in the Litigation or

elsewhere, subject to the limitations as to the amount of its recovery set forth in the Settlement

Agreements.   Regardless, in the Plan Administrator's informed business judgment, the

compromises set forth in the Settlement Agreements are "fair and equitable," are well within the

"range of reasonableness," and are in the best interests of LBSF's estate and its creditors.

Accordingly, the Plan Administrator requests that the Settlement Agreements be approved,

effective immediately upon entry of an order granting the relief requested herein.

## The Bankruptcy Court Has Authority Pursuant to
## Section 105(a) of the Bankruptcy Code to Approve the Settlement Agreements

27.     The Plan Administrator seeks approval of the Settlement Agreements

pursuant to section 105(a) of the Bankruptcy Code so that the Collateral may be liquidated and

US_ACTIVE:\44293329\6\58399.0011

disposed of as set forth in the Settlement Agreements.  This Court has authority under the broad

equitable powers of the Bankruptcy Code, as set forth in section 105(a), to approve the

Settlement Agreements.  Courts have used their equitable powers to permit deviations in trust

agreements in order to preserve and protect a trust or where circumstances exist that would

defeat or substantially impair the accomplishment of the purposes of the trust.  *See, e.g., In re*

*A.H. Robbins*, 880 F.2d 769, 776 (4th Cir. 1989) (noting that section 105(a) authorizes the court

to "issue any order, process or judgment that is necessary or appropriate to carry out the

provisions" of the Bankruptcy Code and finding that matters relating to the control and

supervision of trusts are within the equity jurisdiction of the court); *In re Joint Eastern and*

*Southern Districts Asbestos Litigation*, 878 F. Supp 473 (E.D.N.Y. & S.D.N.Y. 1995) and 129

B.R. 710 (E.D.N.Y. & S.D.N.Y. 1991) (holding that section 105(a) authorizes the federal courts

in bankruptcy cases to approve a settlement modifying distributions, obligations, and payment

procedures under a trust).  Accordingly, the Court has authority under section 105(a) of the

Bankruptcy Code to direct the Trustee to deviate from the terms of the Indentures, where strict

adherence to the terms of the Indentures would frustrate the Issuers' economic stakeholders from

realizing the value of their interests in the Collateral held under the Indentures by the Trustee for

the benefit of the Noteholders, including LBSF.

28.     The Court has granted similar relief in these chapter 11 cases, pursuant to

section 105(a) of the Bankruptcy Code.  On April 25, 2013, the Court entered an order, pursuant

to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving a similar partial

settlement agreement among LBSF, LBHI, Pebble Creek LCDO 2007-3, Ltd., Pebble Creek

LCDO 2007-3, LLC, the LIBOR Fund, and the Trustee, relating to a certain credit default swap

agreement and an indenture [ECF No. 36867].  Additionally, by order dated August 16, 2012

[ECF No. 30096], the Court, *inter alia*, approved a settlement among LBSF and Gemstone CDO VI Ltd., Gemstone CDO VI Corp., and Deutsche Bank Trust Company Americas, and authorized Deutsche Bank Trust Company Americas, as trustee, to take certain action in order to effectuate the terms of the settlement.  Similarly, on March 25, 2010, this Court entered an order [ECF No. 7830], pursuant to section 105(a) of the Bankruptcy Code, approving the Trustee's motion, dated January 28, 2010 [ECF No. 6811], seeking authorization for, among other things, the disposition of the assets of the Lehman Brothers ABS Enhanced Libor Fund (the "Feeder Fund") through the exchange of the units in the Feeder Fund for shares in the Lehman Brothers ABS Enhanced Libor, Ltd. (the "Master Fund") and the transfer of the rights to manage the Master Fund's portfolio to TCW Asset Management Company.

29.    The use of the Court's equitable authority is justified and appropriate. First, LBSF is entitled to the Settlement Amount in each Transaction either in its capacity as Swap Counterparty or in its capacity as Noteholder and, as a result, payment of the Settlement Amount to LBSF is appropriate regardless of the outcome of the Payment Dispute.  Second, the Settlement Agreements protect the interests of other Noteholders by providing for the reservation of the Escrow Amount, which the Plan Administrator and LBSF believe is sufficient to pay the claims of the Objecting Noteholders, if the Noteholder Settlement Amount Condition is met or waived, or the claims of all Noteholders other than LBSF, if the Noteholder Settlement Amount Condition is not met or waived.  In addition, the Settlement Agreements provide for the reservation of the Reserve Amount, which the Trustee may use for fees and expenses as enumerated in each Settlement Agreement.  Third, regardless of the outcome of the Payment Dispute, the payment rights of the holders of Preference Shares will be subordinated to those of both the Noteholders and LBSF, as Swap Counterparty; as a result, the holders of Preference

15

Shares should be indifferent to the approval of the Settlement Agreements because they will not receive a payment under the waterfall under any scenario.  Moreover, any interested parties that may object to the terms of the Settlement Agreements will have the opportunity to lodge an objection with and be heard by this Court.

### Notice

30.    No trustee has been appointed in these chapter 11 cases.  The Plan Administrator has served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the Trustee; and (vi) all parties who have requested notice in the Chapter 11 Cases.  The Plan Administrator submits that no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the Plan

Administrator to this or any other court.

WHEREFORE the Plan Administrator on behalf of itself and LBSF respectfully

requests that the Court grant the relief requested herein and such other and further relief as it

deems just and proper.

Dated: New York, New York
       July 17, 2013                      /s/ Jacqueline Marcus
                                          Jacqueline Marcus
                                          WEIL, GOTSHAL & MANGES LLP
                                          767 Fifth Avenue
                                          New York, New York 10153
                                          Telephone: (212) 310-8000
                                          Facsimile: (212) 310-8007

                                          Christopher J. Cox
                                          WEIL, GOTSHAL & MANGES LLP
                                          201 Redwood Shores Parkway
                                          Redwood Shores, California 94065
                                          Telephone: (650) 802-3000
                                          Facsimile: (650) 802-3100

                                          *Attorneys for Lehman Brothers Holdings Inc.*
                                          *and Lehman Brothers Special Financing Inc.*

**Exhibit A**

Indentures

- Indenture, dated as of November 29, 2006, among Pebble Creek LCDO 2006-1, Ltd., as Issuer, Pebble Creek LCDO 2006-1, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

- Indenture, dated as of March 8, 2006, among Exum Ridge CBO 2006-2, Ltd., as Issuer, Exum Ridge CBO 2006-2, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

- Indenture, dated as of September 15, 2006, among Exum Ridge CBO 2006-4, Ltd., as Issuer, Exum Ridge CBO 2006-4, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

- Indenture, dated as of October 12, 2006, among Exum Ridge CBO 2006-5, Ltd., as Issuer, Exum Ridge CBO 2006-5, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

- Indenture, dated as of March 8, 2007, among Exum Ridge CBO 2007-1, Ltd., as Issuer, Exum Ridge CBO 2007-1, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

**Exhibit B**

Credit Default Swap Agreements

Pebble Creek LCDO 2006-1 Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of November 29, 2006, between Lehman Brothers Special Financing Inc. and Pebble Creek LCDO 2006-1, Ltd., as amended from time to time.
- Confirmation, dated November 29, 2006, between Lehman Brothers Special Financing Inc. and Pebble Creek LCDO 2006-1, Ltd., as amended from time to time.
- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of November 29, 2006.

Exum Ridge CBO 2006-2, Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of March 8, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-2, Ltd., as amended from time to time.
- Confirmation, dated March 8, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-2, Ltd., as amended from time to time.
- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of March 8, 2006.

Exum Ridge CBO 2006-4, Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of September 15, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-4, Ltd., as amended from time to time.
- Confirmation, dated September 15, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-4, Ltd., as amended from time to time.
- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of September 15, 2006.

Exum Ridge CBO 2006-5, Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of October 12, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-5, Ltd., as amended from time to time.
- Confirmation, dated October 12, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-5, Ltd., as amended from time to time.

- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of October 12, 2006.

Exum Ridge CBO 2007-1, Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of March 8, 2007, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2007-1, Ltd., as amended from time to time.
- Confirmation, dated March 8, 2007, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2007-1, Ltd., as amended from time to time.
- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of March 8, 2007.

US_ACTIVE:\44293329\6\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                              :

In re                                    :      **Chapter 11 Case No.**
                                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                                              :

                        **Debtors.**          :      **(Jointly Administered)**
                                              :

-------------------------------------------------------------------x

**ORDER PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AND SECTION 105(a) OF THE BANKRUPTCY CODE APPROVING**
**PARTIAL SETTLEMENT AGREEMENTS RELATING TO CERTAIN**
**CREDIT DEFAULT SWAP AGREEMENTS AND INDENTURES**

Upon the motion, dated July 17, 2013 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI" or the "Plan Administrator") as Plan Administrator under the *Modified*

*Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated*

*Debtors*, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"), pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section

105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of five partial

settlement agreements described on Exhibit 1 annexed hereto (collectively, the "Settlement

Agreements"), each relating to a credit default swap agreement and an indenture, all as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with the procedures set

forth in the amended order entered on June 17, 2010, governing case management and

administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the

Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States

Attorney for the Southern District of New York; (v) the attorneys for the Trustee; and (vi) all

parties who have requested notice in the Chapter 11 Cases, and it appearing that no other or

further notice need be provided; and a hearing (the "Hearing") having been held to consider the

relief requested in the Motion; and the Trustee having provided reasonable notice to the

Noteholders and the Preference Shareholders; and the Court having found and determined that

the relief sought in the Motion is in the best interests of LBSF, its estate, its creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement Agreements

are approved; and it is further

ORDERED that LBSF is authorized to execute, deliver, implement and fully

perform any and all obligations, instruments, documents and papers and to take any and all

actions reasonably necessary or appropriate to consummate the Settlement Agreements and to

perform any and all obligations contemplated therein; and it is further

ORDERED that, pursuant to section 105(a) of the Bankruptcy Code, the Trustee

is authorized and directed to take such actions as it reasonably deems necessary or appropriate to

consummate the Settlement Agreements and to perform any and all obligations contemplated

therein, including without limitation to cause certain assets held in respect of the applicable

Collateral[1] to be redeemed or otherwise liquidated, and to distribute and apply the proceeds

therefrom, as well as certain other amounts that have accrued on or are otherwise available with

respect to assets of the Issuer, as provided for in the Settlement Agreements; and it is further

ORDERED that this Order is final, binding and effective on the Chapter 11

Estates, all current and future Holders of Notes and Preference Shares, as well as the Trustee and

any successor thereto.  The Chapter 11 Estates and U.S. National Bank Association, in its

individual capacity and as Trustee, and its current and former officers, directors, shareholders,

employees, agents, attorneys, successors and assigns, shall be and hereby are, fully exculpated

and shall not have liability to each other, the Chapter 11 Estates, Noteholders or Holders of

Preference Shares arising out of, relating to, or in connection with the Motion, the Settlement

Agreements or this Order, except to the extent of any obligations set forth in the Settlement

Agreements that have not been performed; and it is further

ORDERED that the terms of this Order shall be immediately effective and

enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

3

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated:  New York, New York
        July ___, 2013


_____
UNITED STATES BANKRUPTCY JUDGE

4

**Exhibit 1**

Settlement Agreements

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated November 29, 2006, Pebble Creek LCDO 2006-1, Ltd., as Issuer, and Pebble Creek LCDO 2006-1, Corp., as Co-Issuer.

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated March 8, 2006, Exum Ridge CBO 2006-2, Ltd., as Issuer, and Exum Ridge CBO 2006-2, Corp., as Co-Issuer.

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated September 15, 2006, Exum Ridge CBO 2006-4, Ltd., as Issuer, and Exum Ridge CBO 2006-4, Corp., as Co-Issuer .

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated October 12, 2006, Exum Ridge CBO 2006-5, Ltd., as Issuer, and Exum Ridge CBO 2006-5, Corp., as Co-Issuer.

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated March 8, 2007, Exum Ridge CBO 2007-1, Ltd., as Issuer, and Exum Ridge CBO 2007-1, Corp., as Co-Issuer.