CADWALADER, WICKERSHAM & TAFT LLP
700 6th Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.

*Attorneys for John Greco*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                               :        Chapter 11
                                                     :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,             :        Case No. 08-13555 (JMP)
                                                     :
                Debtors.                             :        (Jointly Administered)
------------------------------------------------------------------ x

**RESPONSE OF JOHN GRECO TO THE PLAN ADMINISTRATOR'S**
**FOUR HUNDRED TWENTY-SECOND OMNIBUS OBJECTION TO CLAIMS**
**(EMPLOYMENT CLAIMS)**

John Greco (the "Claimant"), by and through his undersigned counsel,

respectfully submits this response to the *Four Hundred Twenty-Second Omnibus Objection to*

*Claims (Employment Claims)* (the "Objection") filed by Lehman Brothers Holdings Inc.

("LBHI"), as Plan Administrator under the Modified Third Amended Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors, and states as follows:

**PRELIMINARY STATEMENT**

1.      The Claimant's claim is based on his employment agreement (the

"Employment Agreement") with Lehman Brothers Commodity Services Inc. ("LBCS"), which

guaranteed Claimant a specified bonus payment for the 2008 performance year.  Claimant was

1

entitled to the bonus, unless he was terminated by LBCS for "Just Cause."[1]  The guaranteed

bonus constituted the overwhelming majority of Claimant's compensation from LBCS for the

2008 performance year.  Subsequently, Claimant was terminated by LBCS – without "Just

Cause" – upon the closing of Lehman's asset sale to Barclays Capital Inc. ("Barclays").

2.       The Plan Administrator's Objection disclaims LBCS's liability for the

Claimant's bonus based on the assertions that (i) pursuant to the Asset Purchase Agreement

between Lehman and Barclays, Lehman assigned responsibility for the bonus payment to

Barclays and (ii) the Claimant is estopped from recovering on his claim by this Court's previous

decision dismissing Lehman's claim against Barclays for $500 million in unpaid bonuses to

former Lehman employees.  The Objection simply fails to recognize that the Claimant's

Employment Agreement is between LBCS and the Claimant, and that LBCS either could not

transfer or did not properly transfer its obligations under the Claimant's Employment Agreement

to Barclays.  Regardless of the terms of the Asset Purchase Agreement between Lehman and

Barclays, LBCS remains liable to the Claimant for his guaranteed bonus pursuant to the terms of

his Employment Agreement.

3.       Recognizing the profound weakness of its objection, the Plan

Administrator also seeks to reduce the Claimant's claim based on severance payments made to

the Claimant by Barclays, following his termination by Barclays.  Under well-established law,

provisions concerning termination without cause, like the one contained in Claimant's contract

with LBCS, are treated as liquidated damages provisions and, accordingly, are not subject to

mitigation.  The amounts owing to the Claimant under the Employment Agreement thus cannot

be reduced by amounts subsequently paid to the Claimant by Barclays.  LBCS remains liable to

the Claimant for his guaranteed bonus under the Employment Agreement.

---

[1] A copy of the Employment Agreement is attached hereto as Exhibit A.

## BACKGROUND

### A.    The Claimant's Employment Agreement with LBCS.

4.    On or about May 5, 2008, the Claimant entered into his Employment Agreement with LBCS.  Pursuant to the terms of the Employment Agreement, Claimant's compensation for the 2008 performance year included a guaranteed minimum bonus of $492,000 (the "Guaranteed Bonus"), due on or about January 31, 2009.[2]  The Claimant's Guaranteed Bonus constituted roughly seventy-three  percent of his total compensation for the 2008 performance year.[3]

5.    The Employment Agreement specified that if the Claimant's employment was terminated by LBCS "without Just Cause" before payment in full of the Guaranteed Bonus, LBCS would pay the Claimant his Guaranteed Bonus at the time and in the amount stated.[4]  The Employment Agreement defines "Just Cause" as "(i) misconduct, (ii) breach of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily."[5]

### B.    The Debtors' Bankruptcy and Sale of Assets to Barclays.

6.    Beginning on September 15, 2008 and periodically thereafter, LBHI, LBCS and certain of their subsidiaries commenced voluntary cases in this Bankruptcy Court under chapter 11 of the Bankruptcy Code.

7.    On September 17, 2008, the Debtors filed a motion seeking court approval of the sale of Lehman's North American broker-dealer business to Barclays (the "Sale

---

[2] Employment Agreement, 1.
[3] See id.
[4] Id. at 1-2.
[5] Id.

Motion").[6]  The Bankruptcy Court entered an order approving the Barclays sale on September

20, 2008 (the "Sale Order").[7]  The approved form of the Asset Purchase Agreement (the "APA")

among Barclays, LBHI and LBI was filed with the Bankruptcy Court on September 22, 2008.[8]

8.        In its Sale Motion, Lehman sought authorization to assume certain

contracts related to its business, and assign those contracts to Barclays as of the closing date of

the sale (such contracts, the "Closing Date Contracts").[9]  Parties to the Closing Date Contracts

received notice that their executory contracts were to be assumed and assigned pursuant to the

Sale Motion, and therefore had the opportunity to object to the assignment or to Lehman's

proposed cure amounts.[10]  The Bankruptcy Court approved Lehman's assumption of the Closing

Date Contracts and its assignment of those contracts to Barclays in the Sale Order.[11]  The

Claimant's Employment Agreement was not designated as a Closing Date Contract. [12]

9.        In the Sale Motion, Lehman also sought authorization to allow Barclays to

designate additional executory contracts for assumption and assignment during the sixty day

period immediately following the closing date of the sale (such contracts, the "Designated

Contracts").[13]  Pursuant to a subsequent order of the Bankruptcy Court, parties to Designated

Contracts received notice of the assignment and were granted ten days from the date of the notice

---

[6] Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [Dkt. No. 60] [hereinafter Sale Motion].
[7] Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 258] [hereinafter Sale Order].
[8] Notice of Filing of Purchase Agreement Approved Under 11 U.S.C. §§ 105, 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 280].
[9] Sale Motion ¶ 28.
[10] Id. ¶ 22.
[11] Sale Order ¶ 12.
[12] See List of Non-IT Closing Date Contracts (excluding Corporate Real Estate), available at http://dm.epiq11.com/LBH/Project, under the headings "Barclays Sale" and "Closing Date Contracts."
[13] Id. ¶ 28.

to submit an objection to the assignment or to Lehman's proposed cure amount.[14]  The

Claimant's Employment Agreement was not among the Designated Contracts assumed by

Lehman and assigned to Barclays.[15]

### C.    Claimant's Employment with and Separation from Barclays.

10.    On or about September 22, 2008, the Claimant accepted an offer of

employment from Barclays, where he worked for less than one month.  On or about October 17,

2008, Barclays informed the Claimant that he was part of a workforce reduction.  Claimant was

not required to attend work after October 17, 2008 and his employment at Barclays officially

terminated on or about November 16, 2008.  Barclays did not pay Claimant his Guaranteed

Bonus.

### D.    Lehman's Adversary Proceeding Against Barclays.

11.    On November 16, 2009, Lehman filed an adversary complaint against

Barclays asserting a number of claims in connection with the Lehman-Barclays asset sale.[16]  In

count two of the adversary complaint, Lehman argued that Barclays breached the APA by failing

to pay approximately $500 million in bonuses to former Lehman employees that later became

employees of Barclays.[17]

12.    The parties filed cross-motions for summary judgment on the breach of

contract claim.[18]  In its motion, Lehman argued that the $500 million was a form of consideration

---

[14] Order Granting Debtors' Motion Pursuant to Sections 105, 365, and 554(a) of the Bankruptcy Code to Establish
Procedures for the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases of Non
Residential Real Property and Abandonment of Related Personal Property [Dkt. No. 628].
[15] See Notices of Assumption and Assignment of Executory Contracts and Unexpired Leases, available at
http://dm.epiq11.com/LBH/Project, compiled under the headings "Barclays Sale" and "Designated Contracts."
[16] Adversary Complaint at ¶¶ 2-3, Lehman Bros. Holdings Inc. v. Barclays Capital (In re Lehman Bros. Holdings
Inc.), Adv. Proc. No. 09-01731 (Bankr. S.D.N.Y. Nov. 16, 2009) [Dkt. No. 1].
[17] Id. at ¶ 87.
[18] See Notice of LBHI's Motion for Summary Judgment on Count II of its Adversary Complaint, Barclays
Adversary (Bankr. S.D.N.Y. May 18, 2011) [Dkt. No. 7]; Notice of Motion by Barclays Capital Inc. for Summary

that Barclays agreed to pay to Lehman under the APA in exchange for Lehman's broker-dealer

business.[19]  Lehman asserted that Barclays breached the APA by failing to pay Lehman's bonus

liabilities in full, resulting in $500 million in damages to Lehman.[20]

13.    On September 14, 2011, the Bankruptcy Court issued an opinion denying

Lehman's motion for summary judgment and granting Barclays' cross-motion for summary

judgment.[21]  In its opinion, the Bankruptcy Court stated,

> [Lehman] relies on the truth of three propositions, but, upon examination, not one of
> these is valid and sustainable.  The propositions are: (i) a presumed finding of fact within
> the 60(b) Opinion regarding the agreement to compensate Transferred Employees that is
> not to be found within the text of the opinion, (ii) an alleged but non-existent firm
> commitment to pay $2 billion in bonus compensation these employees that is
> contradicted by the trial record and (iii) an asserted right to breach of contract damages
> that Lehman has not suffered and is unable to demonstrate.[22]

### E.    The Claimant's Proof of Claim and the Plan Administrator's Objection.

14.    On November 12, 2008, the Claimant filed proof of claim number 599 in

the amount of $572,928.75 against LBCS (the "Claim").  The Claim is based on the $492,000

Guaranteed Bonus payment due to the Claimant under the terms of his Employment Agreement.

15.    On June 19, 2013, LBHI, as Plan Administrator, filed the Objection to the

Claim, asserting that the Claim is based on compensation for which the Chapter 11 Estates are no

longer liable.  In its Objection, the Plan Administrator asserts that Barclays assumed certain

compensation liabilities with respect to Transferred Employees pursuant to the terms of the APA.

The Plan Administrator further argues that this Court's decision regarding Lehman's breach of

---

Judgment on Count II of LBHI's Adversary Complaint, <u>Barclays Adversary</u> (Bankr. S.D.N.Y. June 22, 2011) [Dkt. No. 10].

[19] LBHI's Memorandum of Law in Support of its Motion for Summary Judgment on Count II of its Adversary Complaint Against Barclays Capital Inc. at ¶ 9, <u>Barclays Adversary</u> (Bankr. S.D.N.Y. May 18, 2011) [Dkt. No. 7].

[20] <u>Id.</u> at ¶ 47.

[21] <u>Lehman Bros. Holdings Inc. v. Barclays Capital, Inc. (In re Lehman Bros. Holdings Inc.)</u>, 456 B.R. 213 (Bankr. S.D.N.Y. 2011).

[22] <u>Id.</u> at 215.

contract claim in the Barclays adversary proceeding prohibits the Claimant from recovering on his Claim.  In the alternative, the Plan Administrator seeks to reduce the Claimant's Claim by the amount of severance payments that Barclays made to the Claimant following his termination by Barclays.

## ARGUMENT

16.    A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim.[23]  In order to overcome the prima facie validity of a claim, a party objecting to the claim must present "evidence in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[24]  An objecting party cannot merely rely on conclusory statements to overcome the presumption of prima facie validity.  Instead, the objecting party must produce sufficient rebuttal evidence in order to shift the burden of proof back to the claimant.[25]

**A.    Lehman Has Not Produced Evidence Demonstrating that LBCS Transferred the Claimant's Employment Agreement to Barclays.**

17.    In its Objection, the Plan Administrator fails to offer evidence that LBCS is no longer liable to the Claimant for his Guaranteed Bonus.  To succeed on its argument, the Plan Administrator must come forward with probative evidence that the Claimant's Employment Agreement was transferred by LBCS to Barclays.  However, the Plan Administrator has not offered any evidence in support of this proposition – and he cannot.

18.    The Plan Administrator's Objection rests on the incorrect assertion that Section 9.1(c) of the APA, which provides that Barclays will pay former Lehman employee

---

[23] See Fed. R. Bankr. P. 3001(f).
[24] In re Onieda, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992)).
[25] See Allegheny Int'l, 954 F.2d at 174.

bonuses as a form of consideration for Lehman's transfer of its broker-dealer business, affects the Claimant's rights under his Employment Agreement with LBCS. While the Claimant became an employee of Barclays following the Lehman bankruptcies, the Claimant's Employment Agreement was never transferred (i.e., assumed and assigned) to Barclays. As a result, LBCS remains liable to the Claimant for the amount of his Guaranteed Bonus.

19. Section 365 of the Bankruptcy Code allows a debtor in possession "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor."[26] As a threshold matter, the debtor in possession may assume and assign only "executory contracts," or contracts "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute material breach excusing the performance of the other."[27] Whether a contract is executory is determined as of the date of the debtor's bankruptcy petition.[28]

20. To the extent that the Claimant's Employment Agreement does not qualify as an executory contract as of the petition date, the Employment Agreement was not capable of being assumed by LBCS and assigned to Barclays, and the Claimant is entitled to a general unsecured claim against the LBCS estate for breach of his Employment Agreement.[29] The APA, which is effectively a side deal between Barclays and Lehman, does not affect LBCS's ultimate liability to the Claimant under the terms of his Employment Agreement.

21. Moreover, section 365(c)(1) of the Bankruptcy Code prohibits the assignment of an employment agreement to a new employer with the employee's consent.[30]

---

[26] 11 U.S.C. § 365(a).
[27] See, e.g., RenGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.), 547 F.3d 484, 488 n.1 (2d Cir. 2008) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)).
[28] In re Spectrum Info. Techs, Inc., 190 B.R. 741, 747 (Bankr. E.D.N.Y. 1996).
[29] See, e.g., Enter. Energy Corp. v. IRS (In re Columbia Gas Sys.), 50 F.3d 233, 239-40 (3d Cir. 1995).
[30] 11 U.S.C § 365(c)(1).

8

22.    To the extent that Claimant's Employment Agreement does qualify as an executory contract and was capable of assignment, the Employment Agreement was never properly assumed by Lehman and assigned to Barclays.  Federal Rules of Bankruptcy Procedure 6006 and 9014 require a debtor in possession that wishes to assume an executory contract outside of the plan process to (i) file a motion for assumption, (ii) provide reasonable notice to the contract counterparty that the debtor in possession intends to assume the contract, and (iii) provide the contract counterparty with an opportunity to be heard.[31]  Courts require strict adherence with the procedures outlined in section 365 and Bankruptcy Rules 6006 and 9014 "out of concern with protecting unknowing contractual partners from the consequences of an assumption of which they had no notice and which they had no opportunity to contest."[32]

23.    Indeed Lehman was careful to extend these required protections to both the Closing Date Contract and Designated Contract counterparties.  Under the procedures approved by this Court, Lehman requested authorization to assume the Closing Date and Designated Contracts by motion, the affected parties received notice that their contracts were being assumed by Lehman pursuant to the APA, and the affected parties were afforded an opportunity to be heard.  Claimant's Employment Agreement was not among the Closing Date Contracts or the Designated Contracts.  If the Claimant's Employment Agreement had been identified as a Closing Date Contract or a Designated Contract to be assumed by Lehman and assigned to Barclays, the Claimant would have been on notice that LBCS had transferred the liability for his Guaranteed Bonus to Barclays, and the Claimant would have had this key piece of information when negotiating his severance package with Barclays.  For that reason, the Plan Administrator's objection is untenable.

---

[31] Fed. R. Bankr. P. 6006(a), 9014(a).
[32] Century Indemnity Co. v. Nat'l Gypsum Settlement Trust (In re Nat'l Gypsum), 208 F.3d 498, 512 (5th Cir. 2000) (citations omitted).

24.     It may or may not be true that, in the APA, Barclays agreed to assume Lehman's obligation to pay bonuses, perhaps including the Guaranteed Bonus owed to the Claimant.  To the extent that is true, it may give Lehman rights against Barclays.  Whether such rights exist is entirely a matter between Lehman and Barclays.  It has no bearing on the Claimant.  The Claimant received a contractual promise from LBCS.  He is entitled to pursue a claim based on LBCS's failure to perform on that promise.  That LBCS may or may not have rights against another party for reimbursement is not the Claimant's concern, and has no impact on the Claimant's rights.

25.     Accordingly, this Court's decision regarding Lehman's breach of contract claim in the Barclays adversary proceeding is not material to the Claim.  The decision relates solely to Lehman's rights against Barclays.  The Claimant was not a party to that litigation.  He cannot accordingly be estopped by it.  Moreover, his rights against LBCS were not at issue.  The decision stands for nothing more or less than the proposition that Lehman was not entitled to an additional $500 million from Barclays on account of the amount of discretionary bonuses Barclays paid to former Lehman employees who it subsequently employed.

26.     Claimant entered into an Employment Agreement with LBCS that guaranteed the Claimant a bonus of $492,000 unless he was terminated by LBCS without Just Cause.  The Claimant was terminated by LBCS without Just Cause upon the closing of the Barclays sale.  The Claimant Employment Agreement was either not assumable by Lehman or was not properly assumed by Lehman and assigned to Barclays.  As a result, Claimant's Employment Agreement remains an obligation of LBCS.    The Claimant is entitled to the full value of his Guaranteed Bonus under the terms of the Employment Agreement, and LBCS should be required to honor the Claimant's contractual rights.

**B.    Lehman Has Not Produced Evidence Demonstrating that Claimant's Severance Package From Barclays Eliminates LBCS's Obligations Under the Employment Agreement.**

27.    The Plan Administrator's Objection also rests on the incorrect assertion that the Claimant's damages for LBCS's breach of the Employment Agreement should be reduced by a severance package that the Claimant received from Barclays following his termination from Barclays.[33]  While mitigation of damage is a general rule of contract damages that applies in the employment context,[34] the Employment Agreement contains provisions that establish the damages to be paid to the Claimant by LBCS in the event that LBCS terminated the Claimant without "Just Cause."  Specifically, if the Claimant was terminated without "Just Cause," LBCS remained liable to the Claimant for any unpaid Guaranteed Bonus amounts.[35]  New York courts have found that if an employment contract contains a specified damages amount, that amount "becomes fixed, and there is no further inquiry to be made as to possible mitigation by subsequent employment."[36]

28.    In Modern Deb, the seminal case on this issue under New York law, the plaintiff's employment contract with Modern Deb provided that he would receive full compensation and bonuses for a five year term if he was discharged without cause.[37]  The trial court reduced the plaintiff's damages by the amount that the plaintiff earned from subsequent employment.  However, the Appellate Division held that the reduction was improper and restored the plaintiff's full damages award.[38]  In its decision, the Appellate Division held that the provision concerning discharge without cause was "in essence a liquidated damages clause" that

---

[33] Objection, ¶ 38.
[34] See, e.g., Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 74 (1966).
[35] Employment Agreement, 2.
[36] Boyle v. Petrie Stores Corp., 518 N.Y.S.2d 854, 862 (N.Y. Sup. Ct. 1987); see also Malinowski v. Wall Street Source, Inc., 2011 WL 6019245 (S.D.N.Y. Dec. 2, 2011); Musman v. Modern Deb, Inc., 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1975).
[37] Modern Deb, 377 N.Y.S.2d at 19.
[38] Id.

"fixes the exposure of the employer following a discharge without cause and thus serves to remove such a case from the ordinary rule requiring the employee to mitigate damages."[39]

29.     <u>Modern Deb</u> and its progeny are on all fours with the Claimant's case. The Claimant was terminated by LBCS without "Just Cause" upon the closing of the Barclays sale. The Claimant's Employment Agreement contains provisions establishing damages to be paid by LBCS in the event that the Claimant was terminated without "Just Cause." The Claimant's damages amount was fixed by the parties, and as a result, mitigation of damages from subsequent employment income is not a factor. The Claimant is entitled to the full value of his Guaranteed Bonus under the terms of his Employment Agreement, and LBCS should be required to honor the Claimant's contractual rights.

30.     The Claimant reserves all rights, claims and defenses, including, without limitation, the right to discovery in connection with the Plan Administrator's Objection.

## CONCLUSION

WHEREFORE, the Claimant respectfully requests that the Court (i) overrule the Objection and allow Claim 599 in the amount of $492,000, and (ii) grant such other and further relief as this Court deems just and proper under the circumstances.

---

[39] <u>Id.</u>

Dated:  Washington, DC
       July 19, 2013

                    CADWALADER, WICKERSHAM & TAFT LLP

                    /s/ Mark C. Ellenberg
                    Mark C. Ellenberg, Esq.
                    John H. Thompson, Esq.
                    700 6th Street, NW
                    Washington, DC 20001
                    Telephone:  (202) 862-2200
                    Facsimile:  (202) 862-2400

                    *Attorneys for John Greco*

# EXHIBIT A

# LEHMAN BROTHERS

SATU PARIKH
MANAGING DIRECTOR

April 28, 2008, *Revise May 5, 2008*

John Greco
63 Sienna Park Grove
Calgary AB T3H3L3                                      **PRIVATE & CONFIDENTIAL**

Dear John:

Re.    **Offer of Employment**

We are pleased to provide you with this offer of employment to join Lehman Brothers
Commodities Services ("LBCS"). The purpose of this letter is to set out the terms of your
employment.

## Position, Term and Start Date

You will assume the position of Vice President in the Fixed Income Division, reporting initially
to Christopher Dorland on an indefinite term basis. Your employment is expected to begin May
19, 2008, unless we come to some other agreement.

## Compensation

For performance year 2008 (your hire date through November 30, 2008), your compensation will
be comprised as follows:

- Monthly base salary of CAD 14,853.33, which is the equivalent of CAD 175,000 per
  year, less applicable deductions required by law; and

- A minimum bonus for the 2008 performance year in the amount of US $492,000, less
  applicable deductions required by law, payable at the time Lehman Brothers pays its
  annual 2008 bonus distribution (on or about January 31, 2009).

Your base salary will be paid for all periods of your active employment with the Lehman
Brothers in performance year 2008. For the 2008 performance year, the foreign exchange
conversion for US dollar payments described in this letter will be made on the basis of an
average daily exchange rate for the fiscal year. Such exchange rate is typically determined in
October of the applicable fiscal year.

The 2008 bonus amount set forth above will be paid at the time and in the amount stated, except
that such bonus will not be payable if you have failed to obtain and/or maintain in good standing
all applicable licenses and registrations or if, before the date of scheduled payment, you have
resigned, or have been terminated by the Firm with "Just Cause", i.e., (i) misconduct, (ii) breach

John Greco
April 28, 2008, *Revised May 5, 2008*
Page 2 of 5

of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (iv) substantial and continuing failure to perform employment duties or obligations satisfactorily.

You should also be aware the bonus amount set forth above may, in some cases, be reduced in the event of an approved leave of absence during the applicable performance year.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and tax withholding and other applicable deductions. Your compensation for all periods after performance year 2008 will be determined at the sole discretion of Lehman Brothers.

## Equity Award Program

At the Firm's discretion, a portion of your 2008 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (contingent stock awards and/or other equity-based awards) pursuant to the Firm's Equity Award Program or in such other non-cash form as may be provided pursuant to other Firm-sponsored programs that may be established by the Firm from time to time and generally in effect for employees at your level. The terms and conditions of the Equity Award Program, including terms and conditions relating to application of full and limited conditions, exercisability, and forfeiture, or any other Firm sponsored program will be established by the Firm from time to time in its discretion. With respect to your compensation guarantee for performance year 2008 only, the deferral and delivery schedule for the portion of your total compensation payable in conditional equity awards shall be as set forth in the attached Equity Award Schedule for employees with a 2008 Bonus Guarantee. Note that your equity award will be calculated based on your corporate title effective in the 2008 performance year. Except as outlined above with respect to the deferral and delivery schedules, all other terms and conditions of your 2008 equity awards (for example, application of full and limited conditions, discount, and termination provisions) will be the same as those generally applicable to employees at your level who receive a 2008 equity award. For the avoidance of doubt, in the event your employment is terminated by the Firm without Just Cause before the payment in full of the guaranteed minimum bonus for performance year 2008, you will be paid on the applicable bonus payment date any unpaid guaranteed minimum bonus for such year, payable part in cash and part in conditional equity awards, and the disposition of the equity portion of such award shall be determined in accordance with the Equity Award Program as then in effect.

You have advised us that you will forfeit certain ConocoPhillips Stock as a result of your separation from ConocoPhillips and subsequent employment by our Firm (the "Forfeited Awards"). Provided you fully comply with the documentation obligation set forth below no later than 60 days after your start date, and subject to final approval by the Compensation Committee of the Board of Directors (or its appropriate designee), Lehman Brothers Holdings, Inc. ("LBHI") will grant you an award of Special Contingent Stock Awards ("Special CSAs"), with a market value at the time of the award equivalent to the value of the Forfeited Awards. The valuation of the Forfeited Awards will be at LBHI's reasonable discretion, based (where applicable) on the average closing price of ConocoPhillips common stock for the five trading days immediately preceding your first day of employment. LBHI will make reasonable efforts to establish schedules for provision of freely-transferable shares and/or for application of full and limited conditions upon continued employment which are consistent with the corresponding

John Greco
April 28, 2008, *Revised May 5, 2008*
Page 3 of 5

schedules for the Forfeited Awards. Our current administrative practice is to set share delivery dates for the Special CSAs on the 15th of the month in which the related Forfeited Awards would have converted to freely tradable shares (or, in the case of options, become exercisable). It is your obligation to provide LBHI with documentation reasonably deemed necessary by LBHI to verify and evaluate the Forfeited Awards and to structure the Special CSA award. LBHI's Special CSA award will be made as of your first day of employment with the Firm and will be based on the closing price of LBHI common stock on the New York Stock Exchange on that day. In the event your employment with the Firm ends for any reason other than death, Disability (as defined in the LBHI Equity Award Program), or a termination by the Firm without Cause (as defined above or, in the absence of such definition, as defined in the LBHI Equity Award Program) before the date when limited conditions apply to your Special CSAs, you will forfeit such Special CSAs. If your employment is terminated by the Firm without Cause, any Special CSAs that are not subject to limited conditions at the time of separation will continue to be eligible for application of limited conditions on the regularly scheduled dates, provided that you execute a Firm-standard release agreement, in accordance with then applicable Firm policy, and provided further that, through such dates, you have not engaged in Detrimental Activity (as defined in the LBHI Equity Award Program). In the event of your death or Disability, your Special CSAs will convert to freely transferable shares of LBHI stock in accordance with the applicable death and Disability terms of the LBHI Equity Award Program. For purposes of this paragraph, the term "limited conditions" means that the applicable Special CSAs shall be forfeitable if you are determined to have engaged in "Detrimental Activity" (as defined in the Contingent Stock Award letter under LBHI's 2007 Equity Award Program for employees having your corporate title). Except as provided under this paragraph with respect to (i) pricing of the Special CSAs, (ii) schedules for provision of freely transferable shares and/or for application of full and limited conditions upon continued employment and (iii) forfeiture of such portion of your Special CSAs as are still subject to full conditions upon your separation from the Firm's employment, the terms of the LBHI Equity Award program will govern your award of Special CSAs. For purposes of this paragraph, "LBHI Equity Award Program" refers to the Contingent Stock Award letter under LBHI's 2007 Equity Award Program for employees having your corporate title. Notwithstanding any other provision of this paragraph, the Firm has discretion to replace the Forfeited Awards with cash in lieu of Special CSAs.

## Vacation

You will receive 4 weeks' paid vacation in accordance with Lehman Brothers' vacation policy as established from time to time. In your first year of active employment, you will be entitled to 2 weeks' paid vacation, upon completing your first six months of service. Vacation is to be taken on approval of your supervisor at a mutually convenient time.

## Compliance with Policies and Procedures

You are required to comply at all times with Lehman Brothers' policies and procedures which are dictated by Lehman Brothers Inc. Attached is the current "Guide to Working at Lehman Brothers Canada", which provides details related to group employee benefits, bonus, leaves of absence and other prerequisite policies which will undoubtedly be important aspects of your employment with Lehman Brothers. You should understand the Guide is incorporated by reference into this offer and forms part of the terms and conditions of your employment.

John Greco
April 28, 2008, *Revised May 5, 2008*
Page 4 of 5

You should understand that the terms and conditions of your employment are governed by standard policies. This means that this offer of employment is conditional on the successful completion of all pre-employment screening requirements and confirmation that you maintain in good standing all applicable licenses and registrations required for this position.

## Termination

Lehman Brothers may terminate your employment at any time without notice or pay in lieu of notice for just cause. Lehman Brothers may terminate your employment without just cause at any time by providing you with notice or pay in lieu of notice and severance pay, if applicable, in accordance with the attached Severance Plan. Notwithstanding anything to the contrary in the Severance Plan, Lehman Brothers agrees that in the event that you are eligible for severance under the Severance Plan, the minimum amount of severance that you shall receive will be 6 months. Your eligibility for and the calculation of such severance shall be subject to all other terms and conditions of the Severance Plan. You should understand the Severance Plan is incorporated by reference into this offer and forms part of the terms and conditions of your employment and you further agree that the payments afforded under the Severance Plan is the maximum compensation to which you are entitled with respect to reasonable notice and is in full and complete satisfaction of any reasonable notice period that you would otherwise be entitled to receive at common law.

## Representations

In making this offer of employment, the Firm has relied on your representations (a) that you are not subject to any duty or obligation that would prevent you from becoming employed with us on your start date or that would in any way prevent you from performing the duties of your position, and (b) that you are not subject to any non-competition, non-solicitation or other restrictive covenant that might affect your employment by the Firm as contemplated by this letter.

You understand that this letter represents the complete agreement between you and the Firm with respect to your compensation and other matters addressed in this letter, and that this letter replaces any prior written or oral agreements or understandings. We encourage you to seek legal advice prior to accepting this offer of employment.

If you are in agreement with the terms of this offer of employment, we must receive your signed offer of employment on or before May 10, 2008. Kindly return this letter to Kimmy Gardner in the enclosed envelope no later than May 10, 2008. An additional copy of this letter is enclosed for your files. Please contact me at 212-526-2714 if you have any additional questions or concerns.

John Greco
April 28, 2008, *Revised May 5, 2008*
Page 5 of 5


John, we are very excited to have you as part of our team and know that your skill and expertise
will be fundamental to the success of this exciting opportunity.


Yours truly,


Satu Parikh
Managing Director
LEHMAN BROTHERS COMMODITIES SERVICES




    I have read, understood and agree to the above conditions of employment, including
those related to the termination of my employment.  I have had a reasonable opportunity to
consider this letter and the matters set out herein and acknowledge that I have not signed this
letter under any type of duress and acknowledge that no representations were made to induce
execution of this letter which are not expressly contained in this letter.  I have also had an
opportunity to obtain independent legal advice prior to the signing of this agreement and have
been given a reasonable opportunity to obtain such advice.


_____  _____

John Greco                                    Date