CADWALADER, WICKERSHAM & TAFT LLP
700 6th Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.

*Attorneys for Christopher Dorland*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                              :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :        Case No. 08-13555 (JMP)
                                                    :
                    Debtors.                        :        (Jointly Administered)
------------------------------------------------------------------ x

**RESPONSE OF CHRISTOPHER DORLAND TO THE PLAN ADMINISTRATOR'S**
**FOUR HUNDRED TWENTY-SECOND OMNIBUS OBJECTION TO CLAIMS**
**(EMPLOYMENT CLAIMS)**

Christopher Dorland (the "Claimant"), by and through his undersigned counsel,

respectfully submits this response to the *Four Hundred Twenty-Second Omnibus Objection to*

*Claims (Employment Claims)* (the "Objection") filed by Lehman Brothers Holdings Inc.

("LBHI"), as Plan Administrator under the Modified Third Amended Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors, and states as follows:

**PRELIMINARY STATEMENT**

1.       The Claimant's claim is based on his employment agreement (the

"Employment Agreement") with Lehman Brothers Commodity Services Inc. ("LBCS"), which

guaranteed Claimant a specified bonus payment for the 2008 performance year.  Claimant was

1

entitled to the bonus, unless he was terminated by LBCS for "Just Cause."[1]  The guaranteed bonus constituted the overwhelming majority of Claimant's compensation from LBCS for the 2008 performance year.  Subsequently, Claimant was terminated by LBCS – without "Just Cause" – upon the closing of Lehman's asset sale to Barclays Capital Inc. ("Barclays").

2.        The Plan Administrator's Objection disclaims LBCS's liability for the Claimant's bonus based on the assertions that (i) pursuant to the Asset Purchase Agreement between Lehman and Barclays, Lehman assigned responsibility for the bonus payment to Barclays and (ii) the Claimant is estopped from recovering on his claim by this Court's previous decision dismissing Lehman's claim against Barclays for $500 million in unpaid bonuses to former Lehman employees.  The Objection simply fails to recognize that the Claimant's Employment Agreement is between LBCS and the Claimant, and that LBCS either could not transfer or did not properly transfer its obligations under the Claimant's Employment Agreement to Barclays.  Regardless of the terms of the Asset Purchase Agreement between Lehman and Barclays, LBCS remains liable to the Claimant for his guaranteed bonus pursuant to the terms of his Employment Agreement.

3.        Recognizing the profound weakness of its objection, the Plan Administrator also seeks to reduce the Claimant's claim based on severance payments made to the Claimant by Barclays, following his termination by Barclays.  Under well-established law, provisions concerning termination without cause, like the one contained in Claimant's contract with LBCS, are treated as liquidated damages provisions and, accordingly, are not subject to mitigation.  The amounts owing to the Claimant under the Employment Agreement thus cannot be reduced by amounts subsequently paid to the Claimant by Barclays.  LBCS remains liable to the Claimant for his guaranteed bonus under the Employment Agreement.

---

[1] A copy of the Employment Agreement is attached hereto as Exhibit A.

## BACKGROUND

### A.    The Claimant's Employment Agreement with LBCS.

4.    On or about August 10, 2007, the Claimant entered into his Employment Agreement with LBCS.  Pursuant to the terms of the Employment Agreement, Claimant's compensation for the 2008 performance year included a guaranteed minimum bonus of $1,275,000 (the "Guaranteed Bonus"), due on or about January 31, 2009.[2]  The Claimant's Guaranteed Bonus constituted roughly eighty-three percent of his total compensation for the 2008 performance year.[3]

5.    The Employment Agreement specified that if the Claimant's employment was terminated by LBCS "without Just Cause" before payment in full of the Guaranteed Bonus, the Claimant would "be paid any unpaid guaranteed minimum bonus(es), entirely in cash, on the applicable bonus payment date(s)."[4]  The Employment Agreement defines "Just Cause" as "(i) repeated or serious misconduct material to your employment, (ii) material breach of Firm policies or rules of which you have been made aware, (iii) your material and demonstrable dishonesty related to your employment, (iv) violation of laws or regulations material to your employment, (v) your willful or repeated failure to perform your duties hereunder, or (vi) gross negligence in the performance of your job duties."[5]

### B.    The Debtors' Bankruptcy and Sale of Assets to Barclays.

6.    Beginning on September 15, 2008 and periodically thereafter, LBHI, LBCS and certain of their subsidiaries commenced voluntary cases in this Bankruptcy Court under chapter 11 of the Bankruptcy Code.

---

[2] Employment Agreement, 1.
[3] See id.
[4] Id. at 2.
[5] Id.

7.      On September 17, 2008, the Debtors filed a motion seeking court approval of the sale of Lehman's North American broker-dealer business to Barclays (the "Sale Motion").[6]  The Bankruptcy Court entered an order approving the Barclays sale on September 20, 2008 (the "Sale Order").[7]  The approved form of the Asset Purchase Agreement (the "APA") among Barclays, LBHI and LBI was filed with the Bankruptcy Court on September 22, 2008.[8]

8.      In its Sale Motion, Lehman sought authorization to assume certain contracts related to its business, and assign those contracts to Barclays as of the closing date of the sale (such contracts, the "Closing Date Contracts").[9]  Parties to the Closing Date Contracts received notice that their executory contracts were to be assumed and assigned pursuant to the Sale Motion, and therefore had the opportunity to object to the assignment or to Lehman's proposed cure amounts.[10]  The Bankruptcy Court approved Lehman's assumption of the Closing Date Contracts and its assignment of those contracts to Barclays in the Sale Order.[11]  The Claimant's Employment Agreement was not designated as a Closing Date Contract. [12]

9.      In the Sale Motion, Lehman also sought authorization to allow Barclays to designate additional executory contracts for assumption and assignment during the sixty day period immediately following the closing date of the sale (such contracts, the "Designated

---

[6] Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [Dkt. No. 60] [hereinafter Sale Motion].

[7] Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 258] [hereinafter Sale Order].

[8] Notice of Filing of Purchase Agreement Approved Under 11 U.S.C. §§ 105, 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 280].

[9] Sale Motion ¶ 28.

[10] Id. ¶ 22.

[11] Sale Order ¶ 12.

[12] See List of Non-IT Closing Date Contracts (excluding Corporate Real Estate), available at http://dm.epiq11.com/LBH/Project, under the headings "Barclays Sale" and "Closing Date Contracts."

4

Contracts").[13]  Pursuant to a subsequent order of the Bankruptcy Court, parties to Designated

Contracts received notice of the assignment and were granted ten days from the date of the notice

to submit an objection to the assignment or to Lehman's proposed cure amount.[14]  The

Claimant's Employment Agreement was not among the Designated Contracts assumed by

Lehman and assigned to Barclays.[15]

### C.    Claimant's Employment with and Separation from Barclays.

10.    On or about September 22, 2008, the Claimant accepted an offer of

employment from Barclays, where he worked for less than one month.  On or about October 17,

2008, Barclays informed the Claimant that he was part of a workforce reduction.  Claimant was

not required to attend work after October 17, 2008 and his employment at Barclays officially

terminated on or about November 16, 2008.  Barclays did not pay Claimant his Guaranteed

Bonus.

### D.    Lehman's Adversary Proceeding Against Barclays.

11.    On November 16, 2009, Lehman filed an adversary complaint against

Barclays asserting a number of claims in connection with the Lehman-Barclays asset sale.[16]  In

count two of the adversary complaint, Lehman argued that Barclays breached the APA by failing

to pay approximately $500 million in bonuses to former Lehman employees that later became

employees of Barclays.[17]

---

[13] Id. ¶ 28.
[14] Order Granting Debtors' Motion Pursuant to Sections 105, 365, and 554(a) of the Bankruptcy Code to Establish Procedures for the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases of Non Residential Real Property and Abandonment of Related Personal Property [Dkt. No. 628].
[15] See Notices of Assumption and Assignment of Executory Contracts and Unexpired Leases, available at http://dm.epiq11.com/LBH/Project, compiled under the headings "Barclays Sale" and "Designated Contracts."
[16] Adversary Complaint at ¶¶ 2-3, Lehman Bros. Holdings Inc. v. Barclays Capital (In re Lehman Bros. Holdings Inc.), Adv. Proc. No. 09-01731 (Bankr. S.D.N.Y. Nov. 16, 2009) [Dkt. No. 1].
[17] Id. at ¶ 87.

12.     The parties filed cross-motions for summary judgment on the breach of

contract claim.[18]  In its motion, Lehman argued that the $500 million was a form of consideration

that Barclays agreed to pay to Lehman under the APA in exchange for Lehman's broker-dealer

business.[19]  Lehman asserted that Barclays breached the APA by failing to pay Lehman's bonus

liabilities in full, resulting in $500 million in damages to Lehman.[20]

13.     On September 14, 2011, the Bankruptcy Court issued an opinion denying

Lehman's motion for summary judgment and granting Barclays' cross-motion for summary

judgment.[21]  In its opinion, the Bankruptcy Court stated,

> [Lehman] relies on the truth of three propositions, but, upon examination, not one of
> these is valid and sustainable.  The propositions are: (i) a presumed finding of fact within
> the 60(b) Opinion regarding the agreement to compensate Transferred Employees that is
> not to be found within the text of the opinion, (ii) an alleged but non-existent firm
> commitment to pay $2 billion in bonus compensation these employees that is
> contradicted by the trial record and (iii) an asserted right to breach of contract damages
> that Lehman has not suffered and is unable to demonstrate.[22]

**E.     The Claimant's Proof of Claim and the Plan Administrator's Objection.**

14.     On October 14, 2008, the Claimant filed proof of claim number 180 in the

amount of $1,275,000 against LBCS (the "Claim").  The Claim is based on the $1,275,000

Guaranteed Bonus payment due to the Claimant under the terms of his Employment Agreement.

15.     On June 19, 2013, LBHI, as Plan Administrator, filed the Objection to the

Claim, asserting that the Claim is based on compensation for which the Chapter 11 Estates are no

---

[18] See Notice of LBHI's Motion for Summary Judgment on Count II of its Adversary Complaint, Barclays
Adversary (Bankr. S.D.N.Y. May 18, 2011) [Dkt. No. 7]; Notice of Motion by Barclays Capital Inc. for Summary
Judgment on Count II of LBHI's Adversary Complaint, Barclays Adversary (Bankr. S.D.N.Y. June 22, 2011) [Dkt.
No. 10].
[19] LBHI's Memorandum of Law in Support of its Motion for Summary Judgment on Count II of its Adversary
Complaint Against Barclays Capital Inc. at ¶ 9, Barclays Adversary (Bankr. S.D.N.Y. May 18, 2011) [Dkt. No. 7].
[20] Id. at ¶ 47.
[21] Lehman Bros. Holdings Inc. v. Barclays Capital, Inc. (In re Lehman Bros. Holdings Inc.), 456 B.R. 213 (Bankr.
S.D.N.Y. 2011).
[22] Id. at 215.

longer liable.  In its Objection, the Plan Administrator asserts that Barclays assumed certain

compensation liabilities with respect to Transferred Employees pursuant to the terms of the APA.

The Plan Administrator further argues that this Court's decision regarding Lehman's breach of

contract claim in the Barclays adversary proceeding prohibits the Claimant from recovering on

his Claim.  In the alternative, the Plan Administrator seeks to reduce the Claimant's Claim by the

amount of severance payments that Barclays made to the Claimant following his termination by

Barclays.

## ARGUMENT

16.    A properly filed proof of claim constitutes prima facie evidence of the

validity and amount of the claim.[23]  In order to overcome the prima facie validity of a claim, a

party objecting to the claim must present "evidence in equal force to the prima facie case . . .

which, if believed, would refute at least one of the allegations that is essential to the claim's legal

sufficiency."[24]  An objecting party cannot merely rely on conclusory statements to overcome the

presumption of prima facie validity.  Instead, the objecting party must produce sufficient rebuttal

evidence in order to shift the burden of proof back to the claimant.[25]

### A.    Lehman Has Not Produced Evidence Demonstrating that LBCS Transferred the Claimant's Employment Agreement to Barclays.

17.    In its Objection, the Plan Administrator fails to offer evidence that LBCS

is no longer liable to the Claimant for his Guaranteed Bonus.  To succeed on its argument, the

Plan Administrator must come forward with probative evidence that the Claimant's Employment

---

[23] See Fed. R. Bankr. P. 3001(f).
[24] In re Onieda, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992)).
[25] See Allegheny Int'l, 954 F.2d at 174.

Agreement was transferred by LBCS to Barclays. However, the Plan Administrator has not offered any evidence in support of this proposition – and he cannot.

18.    The Plan Administrator's Objection rests on the incorrect assertion that Section 9.1(c) of the APA, which provides that Barclays will pay former Lehman employee bonuses as a form of consideration for Lehman's transfer of its broker-dealer business, affects the Claimant's rights under his Employment Agreement with LBCS. While the Claimant became an employee of Barclays following the Lehman bankruptcies, the Claimant's Employment Agreement was never transferred (i.e., assumed and assigned) to Barclays. As a result, LBCS remains liable to the Claimant for the amount of his Guaranteed Bonus.

19.    Section 365 of the Bankruptcy Code allows a debtor in possession "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor."[26] As a threshold matter, the debtor in possession may assume and assign only "executory contracts," or contracts "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute material breach excusing the performance of the other."[27] Whether a contract is executory is determined as of the date of the debtor's bankruptcy petition.[28]

20.    To the extent that the Claimant's Employment Agreement does not qualify as an executory contract as of the petition date, the Employment Agreement was not capable of being assumed by LBCS and assigned to Barclays, and the Claimant is entitled to a general unsecured claim against the LBCS estate for breach of his Employment Agreement.[29] The APA,

---

[26] 11 U.S.C. § 365(a).
[27] See, e.g., RenGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.), 547 F.3d 484, 488 n.1 (2d Cir. 2008) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)).
[28] In re Spectrum Info. Techs, Inc., 190 B.R. 741, 747 (Bankr. E.D.N.Y. 1996).
[29] See, e.g., Enter. Energy Corp. v. IRS (In re Columbia Gas Sys.), 50 F.3d 233, 239-40 (3d Cir. 1995).

which is effectively a side deal between Barclays and Lehman, does not affect LBCS's ultimate liability to the Claimant under the terms of his Employment Agreement.

21.     Moreover, section 365(c)(1) of the Bankruptcy Code prohibits the assignment of an employment agreement to a new employer with the employee's consent.[30]

22.     To the extent that Claimant's Employment Agreement does qualify as an executory contract and was capable of assignment, the Employment Agreement was never properly assumed by Lehman and assigned to Barclays.  Federal Rules of Bankruptcy Procedure 6006 and 9014 require a debtor in possession that wishes to assume an executory contract outside of the plan process to (i) file a motion for assumption, (ii) provide reasonable notice to the contract counterparty that the debtor in possession intends to assume the contract, and (iii) provide the contract counterparty with an opportunity to be heard.[31]  Courts require strict adherence with the procedures outlined in section 365 and Bankruptcy Rules 6006 and 9014 "out of concern with protecting unknowing contractual partners from the consequences of an assumption of which they had no notice and which they had no opportunity to contest."[32]

23.     Indeed Lehman was careful to extend these required protections to both the Closing Date Contract and Designated Contract counterparties.  Under the procedures approved by this Court, Lehman requested authorization to assume the Closing Date and Designated Contracts by motion, the affected parties received notice that their contracts were being assumed by Lehman pursuant to the APA, and the affected parties were afforded an opportunity to be heard.  Claimant's Employment Agreement was not among the Closing Date Contracts or the Designated Contracts.  If the Claimant's Employment Agreement had been

---

[30] 11 U.S.C § 365(c)(1).
[31] Fed. R. Bankr. P. 6006(a), 9014(a).
[32] Century Indemnity Co. v. Nat'l Gypsum Settlement Trust (In re Nat'l Gypsum), 208 F.3d 498, 512 (5th Cir. 2000) (citations omitted).

identified as a Closing Date Contract or a Designated Contract to be assumed by Lehman and

assigned to Barclays, the Claimant would have been on notice that LBCS had transferred the

liability for his Guaranteed Bonus to Barclays, and the Claimant would have had this key piece

of information when negotiating his severance package with Barclays.  For that reason, the Plan

Administrator's objection is untenable.

        24.      It may or may not be true that, in the APA, Barclays agreed to assume

Lehman's obligation to pay bonuses, perhaps including the Guaranteed Bonus owed to the

Claimant.  To the extent that is true, it may give Lehman rights against Barclays.  Whether such

rights exist is entirely a matter between Lehman and Barclays.  It has no bearing on the

Claimant.  The Claimant received a contractual promise from LBCS.  He is entitled to pursue a

claim based on LBCS's failure to perform on that promise.  That LBCS may or may not have

rights against another party for reimbursement is not the Claimant's concern, and has no impact

on the Claimant's rights.

        25.      Accordingly, this Court's decision regarding Lehman's breach of contract

claim in the Barclays adversary proceeding is not material to the Claim.  The decision relates

solely to Lehman's rights against Barclays.  The Claimant was not a party to that litigation.  He

cannot accordingly be estopped by it.  Moreover, his rights against LBCS were not at issue.  The

decision stands for nothing more or less than the proposition that Lehman was not entitled to an

additional $500 million from Barclays on account of the amount of discretionary bonuses

Barclays paid to former Lehman employees who it subsequently employed.

        26.      Claimant entered into an Employment Agreement with LBCS that

guaranteed the Claimant a bonus of $1,275,000 unless he was terminated by LBCS without Just

Cause.  The Claimant was terminated by LBCS without Just Cause upon the closing of the

10

Barclays sale.  The Claimant Employment Agreement was either not assumable by Lehman or

was not properly assumed by Lehman and assigned to Barclays.  As a result, Claimant's

Employment Agreement remains an obligation of LBCS.    The Claimant is entitled to the full

value of his Guaranteed Bonus under the terms of the Employment Agreement, and LBCS

should be required to honor the Claimant's contractual rights.

**B.      Lehman Has Not Produced Evidence Demonstrating that Claimant's Severance Package From Barclays Eliminates LBCS's Obligations Under the Employment Agreement.**

27.    The Plan Administrator's Objection also rests on the incorrect assertion

that the Claimant's damages for LBCS's breach of the Employment Agreement should be

reduced by a severance package that the Claimant received from Barclays following his

termination from Barclays.[33]  While mitigation of damage is a general rule of contract damages

that applies in the employment context,[34] the Employment Agreement contains provisions that

establish the damages to be paid to the Claimant by LBCS in the event that LBCS terminated the

Claimant without "Just Cause."  Specifically, if the Claimant was terminated without "Just

Cause," LBCS remained liable to the Claimant for any unpaid Guaranteed Bonus amounts.[35]

New York courts have found that if an employment contract contains a specified damages

amount, that amount "becomes fixed, and there is no further inquiry to be made as to possible

mitigation by subsequent employment."[36]

28.    In Modern Deb, the seminal case on this issue under New York law, the

plaintiff's employment contract with Modern Deb provided that he would receive full

---

[33] Objection, ¶ 38.
[34] See, e.g., Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 74 (1966).
[35] Employment Agreement, 2.
[36] Boyle v. Petrie Stores Corp., 518 N.Y.S.2d 854, 862 (N.Y. Sup. Ct. 1987); see also Malinowski v. Wall Street Source, Inc., 2011 WL 6019245 (S.D.N.Y. Dec. 2, 2011); Musman v. Modern Deb, Inc., 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1975).

compensation and bonuses for a five year term if he was discharged without cause.[37]  The trial

court reduced the plaintiff's damages by the amount that the plaintiff earned from subsequent

employment.  However, the Appellate Division held that the reduction was improper and

restored the plaintiff's full damages award.[38]  In its decision, the Appellate Division held that the

provision concerning discharge without cause was "in essence a liquidated damages clause" that

"fixes the exposure of the employer following a discharge without cause and thus serves to

remove such a case from the ordinary rule requiring the employee to mitigate damages."[39]

29.    Modern Deb and its progeny are on all fours with the Claimant's case.

The Claimant was terminated by LBCS without "Just Cause" upon the closing of the Barclays

sale.  The Claimant's Employment Agreement contains provisions establishing damages to be

paid by LBCS in the event that the Claimant was terminated without "Just Cause."  The

Claimant's damages amount was fixed by the parties, and as a result, mitigation of damages from

subsequent employment income is not a factor.  The Claimant is entitled to the full value of his

Guaranteed Bonus under the terms of his Employment Agreement, and LBCS should be required

to honor the Claimant's contractual rights.

30.    The Claimant reserves all rights, claims and defenses, including, without

limitation, the right to discovery in connection with the Plan Administrator's Objection.

## CONCLUSION

WHEREFORE, the Claimant respectfully requests that the Court (i) overrule the

Objection and allow Claim 180 in the amount of $1,275,000, and (ii) grant such other and further

relief as this Court deems just and proper under the circumstances.

---

[37] Modern Deb, 377 N.Y.S.2d at 19.
[38] Id.
[39] Id.

Dated:  Washington, DC
          July 19, 2013

CADWALADER, WICKERSHAM & TAFT LLP

/s/ Mark C. Ellenberg
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.
700 6th Street, NW
Washington, DC 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

*Attorneys for Christopher Dorland*

# EXHIBIT A

# LEHMAN BROTHERS

FRANK NAPOLITANO
PRESIDENT

July 19, 2007, *Revised August 10, 2007*

Christopher Dorland                                         **PRIVATE & CONFIDENTIAL**
3041 Elbow Drive SW
Calgary, AB T2S 2J3

Dear Chris:

**Re.    Offer of Employment**

We are pleased to provide you with this offer of employment to join Lehman Brothers
Commodities Services ("LBCS").  The purpose of this letter is to set out the terms of your
employment.

**Position, Term and Start Date**

You will assume the position of Senior Vice President in the Fixed Income Division, reporting
initially to Griff Jones and Satu Parikh on an indefinite term basis.  Your employment is
expected to begin September 12, 2007, unless we come to some other agreement.

**Compensation**

For performance year 2007 and 2008 (your hire date through November 30, 2008), your
compensation will be comprised as follows:

- Monthly base salary of CAD 22,083.33, which is the equivalent of CAD 265,000 per
year, less applicable deductions required by law; and

- A minimum bonus for the 2007 performance year in the amount of US $2,025,000, less
applicable deductions required by law, payable at the time Lehman Brothers pays its
annual 2007 bonus distribution (on or about January 31, 2008).

- A minimum bonus for the 2008 performance year in the amount of US $1,275,000, less
applicable deductions required by law, payable at the time Lehman Brothers pays its
annual 2008 bonus distribution (on or about January 31, 2009).

Your base salary will be paid for all periods of your active employment with Lehman Brothers in
performance year 2007 and 2008.  For the 2007 and 2008 performance years, the foreign
exchange conversion for US dollar payments described in this letter will be made on the basis of
an average daily exchange rate for the fiscal year.  Such exchange rate is typically determined in
October of the applicable fiscal year.

The 2007 and 2008 bonus amounts set forth above will be paid at the times and in the amounts
stated, except that such bonuses will not be payable if, before the date of scheduled payment, you

Christopher Dorland
July 19, 2007, *Revised August 10, 2007*
Page 2 of 5

have resigned without "Good Reason", or have been terminated by the Firm with "Just Cause". For purposes of this agreement, a termination by the Firm for "Just Cause" means a termination because of (i) repeated or serious misconduct material to your employment, (ii) material breach of Firm policies or rules of which you have been made aware, (iii) your material and demonstrable dishonesty related to your employment, (iv) violation of laws or regulations material to your employment, (v) your wilful or repeated failure to perform your duties hereunder, or (vi) gross negligence in the performance of your job duties. For purposes of this agreement, a resignation by you for "Good Reason" means requiring you to be based at an office outside of Calgary, Alberta, without your consent. For clarity, in the event your employment is terminated by the Firm without "Just Cause" or by you for "Good Reason" before the payment in full of the guaranteed minimum bonus for performance years 2007 or 2008, you will be paid any unpaid guaranteed minimum bonus(es), entirely in cash, on the applicable bonus payment date(s).

You should also be aware the bonus amount set forth above may, in some cases, be reduced in the event of an approved leave of absence during the applicable performance year.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and tax withholding and other applicable deductions. Your compensation for all periods after performance year 2008 will be determined at the sole discretion of Lehman Brothers.

## Equity Award Program

At the Firm's discretion, a portion of your 2007 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (contingent stock awards and/or other equity-based awards) pursuant to the Firm's Equity Award Program as then generally in effect for employees with your position and corporate title. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, will be established by the Firm from time to time in its discretion.

## UBS Buyout

You have advised us that you will forfeit certain UBS Stock as a result of your separation from UBS and subsequent employment by Lehman Brothers (the "Forfeited Awards"). Provided you comply with the documentation obligation set forth below no later than 60 days after your start date, and subject to final approval by the Compensation Committee of the Board of Directors (or its appropriate designee), Lehman Brothers Holdings Inc. ("LBHI") will grant you Special Contingent Stock Awards ("Special CSAs"), with a market value at the time of the award equivalent to the value of the Forfeited Awards. The valuation of the Forfeited Awards will be at LBHI's reasonable discretion. LBHI will make reasonable efforts to establish schedules for provision of freely-transferable shares and/or for application of full and limited conditions upon continued employment which are consistent with the corresponding schedules for the Forfeited Awards. Our current administrative practice is to set share issuance dates for the Special CSAs on the 15th of the month in which the related Forfeited Awards would have converted to freely tradable shares (or, in the case of options, become exercisable). It is your obligation to provide LBHI with documentation reasonably deemed necessary by LBHI to verify and evaluate the

Christopher Dorland
July 19, 2007, *Revised August 10, 2007*
Page 3 of 5

Forfeited Awards and to structure the Special CSA award. LBHI's Special CSA award will be made as of your first day of employment with the Firm and will be based on the closing price of LBHI common stock on the New York Stock Exchange on that day. In the event your employment with the Firm ends for any reason other than death, Disability (as defined in the LBHI Equity Award Program), a resignation by you for "Good Reason" (as defined above), or a termination by the Firm without "Just Cause" (as defined above) before the date when limited conditions apply to your Special CSAs, you will forfeit such Special CSAs. If your employment is terminated by the Firm without "Just Cause" or you resign for "Good Reason", any Special CSAs that are not subject to limited conditions at the time of separation will continue to be eligible for application of limited conditions on the regularly scheduled dates, provided that you execute a Firm-standard release agreement, in accordance with then applicable Firm policy, and provided further that, through such dates, you have not engaged in Detrimental Activity as defined in the LBHI Equity Award Program). In the event of your death or Disability, your Special CSAs will convert to freely transferable shares of LBHI stock in accordance with the applicable death and Disability terms of the LBHI Equity Award Program. For purposes of this paragraph, the term "limited conditions" means that the applicable Special CSAs shall be forfeitable if you are determined to have engaged in "Detrimental Activity" (as defined in the Contingent Stock Award letter under LBHI's 2006 Equity Award Program for employees having your corporate title). Except as provided under this paragraph with respect to (i) pricing of the Special CSAs, (ii) schedules for provision of freely transferable shares and/or for application of full and limited conditions upon continued employment and (iii) forfeiture of such portion of your Special CSAs as are still subject to full conditions upon your separation from the Firm's employment, the terms of the LBHI Equity Award program will govern your award of Special CSAs. For purposes of this paragraph, "LBHI Equity Award Program" refers to the Contingent Stock Award letter under LBHI's 2006 Equity Award Program for employees having your corporate title) will govern your award of Special CSAs. Notwithstanding any other provision of this paragraph, the Firm has discretion to replace the Forfeited Awards with cash in lieu of Special CSAs.

## Vacation

You will receive 4 weeks' paid vacation in accordance with Lehman Brothers' vacation policy as established from time to time. In your first year of active employment, you will be entitled to 2 weeks' paid vacation, upon completing your first six months of service. Vacation is to be taken on approval of your supervisor at a mutually convenient time. Notwithstanding anything set forth in this paragraph or in the Firm policies, the Firm has agreed that you will be allowed to take paid vacation time in 2007 for your honeymoon.

## Compliance with Policies and Procedures

You are required to comply at all times with Lehman Brothers' policies and procedures which are dictated by Lehman Brothers Inc. Attached is the current "Guide to Working at Lehman Brothers Canada", which provides details related to group employee benefits, bonus, leaves of absence and other prerequisite policies which will undoubtedly be important aspects of your employment with Lehman Brothers. You should understand the Guide is incorporated by reference into this offer and forms part of the terms and conditions of your employment.

Christopher Dorland
July 19, 2007, *Revised August 10, 2007*
Page 4 of 5

You should understand that the terms and conditions of your employment are governed by standard policies. This means that this offer of employment is conditional on the successful completion of all pre-employment screening requirements.

## Termination

Lehman Brothers may terminate your employment at any time without notice or pay in lieu of notice for just cause. Lehman Brothers may terminate your employment without just cause at any time by providing you with notice or pay in lieu of notice and severance pay, if applicable, in accordance with the attached Severance Plan. You should understand the Severance Plan is incorporated by reference into this offer and forms part of the terms and conditions of your employment and you further agree that the payments afforded under the Severance Plan is the maximum compensation to which you are entitled with respect to reasonable notice and is in full and complete satisfaction of any reasonable notice period that you would otherwise be entitled to receive at common law.

## Representations

In making this offer of employment, the Firm has relied on your representations that, to the best of your knowledge, (a) you are not subject to any duty or obligation that would prevent you from becoming employed with us on your start date or that would in any way prevent you from performing the duties of your position, and (b) you are not subject to any non-competition, non-solicitation or other restrictive covenant that might affect your employment by the Firm as contemplated by this letter. With respect to the foregoing, the Firm acknowledges that you have advised us of your 30-day notice requirement to your current employer and your non-solicitation obligations with respect to the employees of UBS.

We encourage you to seek legal advice prior to accepting this offer of employment.

If you are in agreement with the terms of this offer of employment, we must receive your signed offer of employment on or before August 17, 2007. Kindly return this letter to Kimmy Gardner in the enclosed envelope no later than August 17, 2007. An additional copy of this letter is enclosed for your files. Please contact me at 212-526-4940 if you have any additional questions or concerns.

Christopher Dorland
July 19, 2007, *Revised August 10, 2007*
Page 5 of 5

Chris, we are very excited to have you as part of our team and know that your skill and expertise will be fundamental to the success of this exciting opportunity.

Yours truly,

*Frank Napolitano*

Frank Napolitano
President
LEHMAN BROTHERS COMMODITIES SERVICES

I have read, understood and agree to the above conditions of employment, including those related to the termination of my employment. I have had a reasonable opportunity to consider this letter and the matters set out herein and acknowledge that I have not signed this letter under any type of duress. I have also had an opportunity to obtain independent legal advice prior to the signing of this agreement and have been given a reasonable opportunity to obtain such advice.

_____        08 / 12 / 07
Christopher Dorland                              Date