CADWALADER, WICKERSHAM & TAFT LLP
700 6th Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg, Esq.
John H. Thompson, Esq.

*Attorneys for David Wilson*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    Case No. 08-13555 (JMP)
                                                    :
                    Debtors.                        :    (Jointly Administered)
-------------------------------------------------- x

**RESPONSE OF DAVID WILSON TO THE PLAN ADMINISTRATOR'S**
**FOUR HUNDRED TWENTY-SECOND OMNIBUS OBJECTION TO CLAIMS**
**(EMPLOYMENT CLAIMS)**

David Wilson (the "Claimant"), by and through his undersigned counsel, respectfully submits this response to the *Four Hundred Twenty-Second Omnibus Objection to Claims (Employment Claims)* (the "Objection") filed by Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, and states as follows:

**PRELIMINARY STATEMENT**

1.  The Claimant's claim is based on his employment agreement (the "Employment Agreement") with Lehman Brothers Commodity Services Inc. ("LBCS"), which guaranteed Claimant a specified bonus payment for the 2008 performance year. Claimant was

1

entitled to the bonus, unless he was terminated by LBCS for "Just Cause."[1] The guaranteed bonus constituted a large portion of Claimant's compensation from LBCS for the 2008 performance year. Subsequently, Claimant was terminated by LBCS – without "Just Cause" – upon the closing of Lehman's asset sale to Barclays Capital Inc. ("Barclays").

2. The Plan Administrator's Objection disclaims LBCS's liability for the Claimant's bonus based on the assertions that (i) pursuant to the Asset Purchase Agreement between Lehman and Barclays, Lehman assigned responsibility for the bonus payment to Barclays and (ii) the Claimant is estopped from recovering on his claim by this Court's previous decision dismissing Lehman's claim against Barclays for $500 million in unpaid bonuses to former Lehman employees. The Objection simply fails to recognize that the Claimant's Employment Agreement is between LBCS and the Claimant, and that LBCS either could not transfer or did not properly transfer its obligations under the Claimant's Employment Agreement to Barclays. Regardless of the terms of the Asset Purchase Agreement between Lehman and Barclays, LBCS remains liable to the Claimant for his guaranteed bonus pursuant to the terms of his Employment Agreement.

3. Recognizing the profound weakness of its objection, the Plan Administrator also seeks to reduce the Claimant's claim based on severance payments made to the Claimant by Barclays, following his termination by Barclays. Under well-established law, provisions concerning termination without cause, like the one contained in Claimant's contract with LBCS, are treated as liquidated damages provisions and, accordingly, are not subject to

---

[1] The Claimant's Employment Agreement was filed as an attachment to Claim No. 772. However, there appears to have been an error in scanning and uploading Claim 772 to Epiq Systems' claims register, as only the last page of the Employment Agreement is currently included in the version of Claim No. 772 available on Epiq's website, and attached hereto as Exhibit A. Claimant has searched his records, but given the passage of time since filing his Claim in November 2008, he has not been able to locate a copy of the Employment Agreement. Claimant will continue to attempt to locate a copy of his Employment Agreement; however, Lehman should possess a copy in their files. Upon information and belief, Claimant's Employment Agreement is substantially similar to the Employment Agreement attached to Claim No. 599 filed by John Greco.

2

mitigation. The amounts owing to the Claimant under the Employment Agreement thus cannot be reduced by amounts subsequently paid to the Claimant by Barclays. LBCS remains liable to the Claimant for his guaranteed bonus under the Employment Agreement.

## BACKGROUND

### A.  The Claimant's Employment Agreement with LBCS.

4.  On or about December 19, 2007, the Claimant entered into his Employment Agreement with LBCS. Pursuant to the terms of the Employment Agreement, Claimant's compensation for the 2008 performance year included a guaranteed minimum bonus of $330,000 (the "Guaranteed Bonus"), due on or about January 31, 2009.

5.  The Employment Agreement specified that if the Claimant's employment was terminated by LBCS without "Just Cause" before payment in full of the Guaranteed Bonus, LBCS would pay the Claimant his Guaranteed Bonus at the time and in the amount stated. The Employment Agreement defines "Just Cause" as misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily.

### B.  The Debtors' Bankruptcy and Sale of Assets to Barclays.

6.  Beginning on September 15, 2008 and periodically thereafter, LBHI, LBCS and certain of their subsidiaries commenced voluntary cases in this Bankruptcy Court under chapter 11 of the Bankruptcy Code.

7.  On September 17, 2008, the Debtors filed a motion seeking court approval of the sale of Lehman's North American broker-dealer business to Barclays (the "Sale

3

Motion").[2] The Bankruptcy Court entered an order approving the Barclays sale on September 20, 2008 (the "Sale Order").[3] The approved form of the Asset Purchase Agreement (the "APA") among Barclays, LBHI and LBI was filed with the Bankruptcy Court on September 22, 2008.[4]

8.  In its Sale Motion, Lehman sought authorization to assume certain contracts related to its business, and assign those contracts to Barclays as of the closing date of the sale (such contracts, the "Closing Date Contracts").[5] Parties to the Closing Date Contracts received notice that their executory contracts were to be assumed and assigned pursuant to the Sale Motion, and therefore had the opportunity to object to the assignment or to Lehman's proposed cure amounts.[6] The Bankruptcy Court approved Lehman's assumption of the Closing Date Contracts and its assignment of those contracts to Barclays in the Sale Order.[7] The Claimant's Employment Agreement was not designated as a Closing Date Contract.[8]

9.  In the Sale Motion, Lehman also sought authorization to allow Barclays to designate additional executory contracts for assumption and assignment during the sixty day period immediately following the closing date of the sale (such contracts, the "Designated Contracts").[9] Pursuant to a subsequent order of the Bankruptcy Court, parties to Designated Contracts received notice of the assignment and were granted ten days from the date of the notice

---

[2] Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [Dkt. No. 60] [hereinafter Sale Motion].

[3] Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 258] [hereinafter Sale Order].

[4] Notice of Filing of Purchase Agreement Approved Under 11 U.S.C. §§ 105, 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 280].

[5] Sale Motion ¶ 28.

[6] Id. ¶ 22.

[7] Sale Order ¶ 12.

[8] See List of Non-IT Closing Date Contracts (excluding Corporate Real Estate), available at http://dm.epiq11.com/LBH/Project, under the headings "Barclays Sale" and "Closing Date Contracts."

[9] Id. ¶ 28.

to submit an objection to the assignment or to Lehman's proposed cure amount.[10] The Claimant's Employment Agreement was not among the Designated Contracts assumed by Lehman and assigned to Barclays.[11]

### C. Claimant's Employment with and Separation from Barclays.

10. On or about September 22, 2008, the Claimant accepted an offer of employment from Barclays, where he worked for less than one month. On or about October 17, 2008, Barclays informed the Claimant that he was part of a workforce reduction. Claimant was not required to attend work after October 17, 2008 and his employment at Barclays officially terminated on or about November 16, 2008. Barclays did not pay Claimant his Guaranteed Bonus.

### D. Lehman's Adversary Proceeding Against Barclays.

11. On November 16, 2009, Lehman filed an adversary complaint against Barclays asserting a number of claims in connection with the Lehman-Barclays asset sale.[12] In count two of the adversary complaint, Lehman argued that Barclays breached the APA by failing to pay approximately $500 million in bonuses to former Lehman employees that later became employees of Barclays.[13]

12. The parties filed cross-motions for summary judgment on the breach of contract claim.[14] In its motion, Lehman argued that the $500 million was a form of consideration

---

[10] Order Granting Debtors' Motion Pursuant to Sections 105, 365, and 554(a) of the Bankruptcy Code to Establish Procedures for the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases of Non Residential Real Property and Abandonment of Related Personal Property [Dkt. No. 628].
[11] See Notices of Assumption and Assignment of Executory Contracts and Unexpired Leases, available at http://dm.epiq11.com/LBH/Project, compiled under the headings "Barclays Sale" and "Designated Contracts."
[12] Adversary Complaint at ¶¶ 2-3, Lehman Bros. Holdings Inc. v. Barclays Capital (In re Lehman Bros. Holdings Inc.), Adv. Proc. No. 09-01731 (Bankr. S.D.N.Y. Nov. 16, 2009) [Dkt. No. 1].
[13] Id. at ¶ 87.
[14] See Notice of LBHI's Motion for Summary Judgment on Count II of its Adversary Complaint, Barclays Adversary (Bankr. S.D.N.Y. May 18, 2011) [Dkt. No. 7]; Notice of Motion by Barclays Capital Inc. for Summary

5

that Barclays agreed to pay to Lehman under the APA in exchange for Lehman's broker-dealer business.[15] Lehman asserted that Barclays breached the APA by failing to pay Lehman's bonus liabilities in full, resulting in $500 million in damages to Lehman.[16]

13.    On September 14, 2011, the Bankruptcy Court issued an opinion denying Lehman's motion for summary judgment and granting Barclays' cross-motion for summary judgment.[17] In its opinion, the Bankruptcy Court stated,

> [Lehman] relies on the truth of three propositions, but, upon examination, not one of these is valid and sustainable. The propositions are: (i) a presumed finding of fact within the 60(b) Opinion regarding the agreement to compensate Transferred Employees that is not to be found within the text of the opinion, (ii) an alleged but non-existent firm commitment to pay $2 billion in bonus compensation these employees that is contradicted by the trial record and (iii) an asserted right to breach of contract damages that Lehman has not suffered and is unable to demonstrate.[18]

E.    **The Claimant's Proof of Claim and the Plan Administrator's Objection.**

14.    On November 17, 2008, the Claimant filed proof of claim number 772 in the amount of $330,000 against LBCS (the "Claim"). The Claim is based on the $330,000 Guaranteed Bonus payment due to the Claimant under the terms of his Employment Agreement.

15.    On June 19, 2013, LBHI, as Plan Administrator, filed the Objection to the Claim, asserting that the Claim is based on compensation for which the Chapter 11 Estates are no longer liable. In its Objection, the Plan Administrator asserts that Barclays assumed certain compensation liabilities with respect to Transferred Employees pursuant to the terms of the APA. The Plan Administrator further argues that this Court's decision regarding Lehman's breach of

---

Judgment on Count II of LBHI's Adversary Complaint, Barclays Adversary (Bankr. S.D.N.Y. June 22, 2011) [Dkt. No. 10].
[15] LBHI's Memorandum of Law in Support of its Motion for Summary Judgment on Count II of its Adversary Complaint Against Barclays Capital Inc. at ¶ 9, Barclays Adversary (Bankr. S.D.N.Y. May 18, 2011) [Dkt. No. 7].
[16] Id. at ¶ 47.
[17] Lehman Bros. Holdings Inc. v. Barclays Capital, Inc. (In re Lehman Bros. Holdings Inc.), 456 B.R. 213 (Bankr. S.D.N.Y. 2011).
[18] Id. at 215.

contract claim in the Barclays adversary proceeding prohibits the Claimant from recovering on his Claim.  In the alternative, the Plan Administrator seeks to reduce the Claimant's Claim by the amount of severance payments that Barclays made to the Claimant following his termination by Barclays.

## ARGUMENT

16.    A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim.[19]  In order to overcome the prima facie validity of a claim, a party objecting to the claim must present "evidence in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[20]  An objecting party cannot merely rely on conclusory statements to overcome the presumption of prima facie validity.  Instead, the objecting party must produce sufficient rebuttal evidence in order to shift the burden of proof back to the claimant.[21]

### A.    Lehman Has Not Produced Evidence Demonstrating that LBCS Transferred the Claimant's Employment Agreement to Barclays.

17.    In its Objection, the Plan Administrator fails to offer evidence that LBCS is no longer liable to the Claimant for his Guaranteed Bonus.  To succeed on its argument, the Plan Administrator must come forward with probative evidence that the Claimant's Employment Agreement was transferred by LBCS to Barclays.  However, the Plan Administrator has not offered any evidence in support of this proposition – and he cannot.

18.    The Plan Administrator's Objection rests on the incorrect assertion that Section 9.1(c) of the APA, which provides that Barclays will pay former Lehman employee

---

[19] See Fed. R. Bankr. P. 3001(f).
[20] In re Onieda, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992)).
[21] See Allegheny Int'l, 954 F.2d at 174.

7

bonuses as a form of consideration for Lehman's transfer of its broker-dealer business, affects the Claimant's rights under his Employment Agreement with LBCS. While the Claimant became an employee of Barclays following the Lehman bankruptcies, the Claimant's Employment Agreement was never transferred (i.e., assumed and assigned) to Barclays. As a result, LBCS remains liable to the Claimant for the amount of his Guaranteed Bonus.

19. Section 365 of the Bankruptcy Code allows a debtor in possession "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor."[22] As a threshold matter, the debtor in possession may assume and assign only "executory contracts," or contracts "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute material breach excusing the performance of the other."[23] Whether a contract is executory is determined as of the date of the debtor's bankruptcy petition.[24]

20. To the extent that the Claimant's Employment Agreement does not qualify as an executory contract as of the petition date, the Employment Agreement was not capable of being assumed by LBCS and assigned to Barclays, and the Claimant is entitled to a general unsecured claim against the LBCS estate for breach of his Employment Agreement.[25] The APA, which is effectively a side deal between Barclays and Lehman, does not affect LBCS's ultimate liability to the Claimant under the terms of his Employment Agreement.

21. Moreover, section 365(c)(1) of the Bankruptcy Code prohibits the assignment of an employment agreement to a new employer with the employee's consent.[26]

---

[22] 11 U.S.C. § 365(a).
[23] See, e.g., RenGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.), 547 F.3d 484, 488 n.1 (2d Cir. 2008) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)).
[24] In re Spectrum Info. Techs, Inc., 190 B.R. 741, 747 (Bankr. E.D.N.Y. 1996).
[25] See, e.g., Enter. Energy Corp. v. IRS (In re Columbia Gas Sys.), 50 F.3d 233, 239-40 (3d Cir. 1995).
[26] 11 U.S.C § 365(c)(1).

8

22. To the extent that Claimant's Employment Agreement does qualify as an executory contract and was capable of assignment, the Employment Agreement was never properly assumed by Lehman and assigned to Barclays. Federal Rules of Bankruptcy Procedure 6006 and 9014 require a debtor in possession that wishes to assume an executory contract outside of the plan process to (i) file a motion for assumption, (ii) provide reasonable notice to the contract counterparty that the debtor in possession intends to assume the contract, and (iii) provide the contract counterparty with an opportunity to be heard.[27] Courts require strict adherence with the procedures outlined in section 365 and Bankruptcy Rules 6006 and 9014 "out of concern with protecting unknowing contractual partners from the consequences of an assumption of which they had no notice and which they had no opportunity to contest."[28]

23. Indeed Lehman was careful to extend these required protections to both the Closing Date Contract and Designated Contract counterparties. Under the procedures approved by this Court, Lehman requested authorization to assume the Closing Date and Designated Contracts by motion, the affected parties received notice that their contracts were being assumed by Lehman pursuant to the APA, and the affected parties were afforded an opportunity to be heard. Claimant's Employment Agreement was not among the Closing Date Contracts or the Designated Contracts. If the Claimant's Employment Agreement had been identified as a Closing Date Contract or a Designated Contract to be assumed by Lehman and assigned to Barclays, the Claimant would have been on notice that LBCS had transferred the liability for his Guaranteed Bonus to Barclays, and the Claimant would have had this key piece of information when negotiating his severance package with Barclays. For that reason, the Plan Administrator's objection is untenable.

---

[27] Fed. R. Bankr. P. 6006(a), 9014(a).
[28] Century Indemnity Co. v. Nat'l Gypsum Settlement Trust (In re Nat'l Gypsum), 208 F.3d 498, 512 (5th Cir. 2000) (citations omitted).

9

24. It may or may not be true that, in the APA, Barclays agreed to assume Lehman's obligation to pay bonuses, perhaps including the Guaranteed Bonus owed to the Claimant. To the extent that is true, it may give Lehman rights against Barclays. Whether such rights exist is entirely a matter between Lehman and Barclays. It has no bearing on the Claimant. The Claimant received a contractual promise from LBCS. He is entitled to pursue a claim based on LBCS's failure to perform on that promise. That LBCS may or may not have rights against another party for reimbursement is not the Claimant's concern, and has no impact on the Claimant's rights.

25. Accordingly, this Court's decision regarding Lehman's breach of contract claim in the Barclays adversary proceeding is not material to the Claim. The decision relates solely to Lehman's rights against Barclays. The Claimant was not a party to that litigation. He cannot accordingly be estopped by it. Moreover, his rights against LBCS were not at issue. The decision stands for nothing more or less than the proposition that Lehman was not entitled to an additional $500 million from Barclays on account of the amount of discretionary bonuses Barclays paid to former Lehman employees who it subsequently employed.

26. Claimant entered into an Employment Agreement with LBCS that guaranteed the Claimant a bonus of $330,000 unless he was terminated by LBCS without Just Cause. The Claimant was terminated by LBCS without Just Cause upon the closing of the Barclays sale. The Claimant Employment Agreement was either not assumable by Lehman or was not properly assumed by Lehman and assigned to Barclays. As a result, Claimant's Employment Agreement remains an obligation of LBCS. The Claimant is entitled to the full value of his Guaranteed Bonus under the terms of the Employment Agreement, and LBCS should be required to honor the Claimant's contractual rights.

> B. **Lehman Has Not Produced Evidence Demonstrating that Claimant's Severance Package From Barclays Eliminates LBCS's Obligations Under the Employment Agreement.**

27. The Plan Administrator's Objection also rests on the incorrect assertion that the Claimant's damages for LBCS's breach of the Employment Agreement should be reduced by a severance package that the Claimant received from Barclays following his termination from Barclays.[29] While mitigation of damage is a general rule of contract damages that applies in the employment context,[30] the Employment Agreement contains provisions that establish the damages to be paid to the Claimant by LBCS in the event that LBCS terminated the Claimant without "Just Cause." Specifically, if the Claimant was terminated without "Just Cause," LBCS remained liable to the Claimant for any unpaid Guaranteed Bonus amounts.[31] New York courts have found that if an employment contract contains a specified damages amount, that amount "becomes fixed, and there is no further inquiry to be made as to possible mitigation by subsequent employment."[32]

28. In Modern Deb, the seminal case on this issue under New York law, the plaintiff's employment contract with Modern Deb provided that he would receive full compensation and bonuses for a five year term if he was discharged without cause.[33] The trial court reduced the plaintiff's damages by the amount that the plaintiff earned from subsequent employment. However, the Appellate Division held that the reduction was improper and restored the plaintiff's full damages award.[34] In its decision, the Appellate Division held that the provision concerning discharge without cause was "in essence a liquidated damages clause" that

---

[29] Objection, ¶ 38.
[30] See, e.g., Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 74 (1966).
[31] Employment Agreement, 2.
[32] Boyle v. Petrie Stores Corp., 518 N.Y.S.2d 854, 862 (N.Y. Sup. Ct. 1987); see also Malinowski v. Wall Street Source, Inc., 2011 WL 6019245 (S.D.N.Y. Dec. 2, 2011); Musman v. Modern Deb, Inc., 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1975).
[33] Modern Deb, 377 N.Y.S.2d at 19.
[34] Id.

11

"fixes the exposure of the employer following a discharge without cause and thus serves to remove such a case from the ordinary rule requiring the employee to mitigate damages."[35]

29. Modern Deb and its progeny are on all fours with the Claimant's case. The Claimant was terminated by LBCS without "Just Cause" upon the closing of the Barclays sale. The Claimant's Employment Agreement contains provisions establishing damages to be paid by LBCS in the event that the Claimant was terminated without "Just Cause." The Claimant's damages amount was fixed by the parties, and as a result, mitigation of damages from subsequent employment income is not a factor. The Claimant is entitled to the full value of his Guaranteed Bonus under the terms of his Employment Agreement, and LBCS should be required to honor the Claimant's contractual rights.

30. The Claimant reserves all rights, claims and defenses, including, without limitation, the right to discovery in connection with the Plan Administrator's Objection.

## CONCLUSION

WHEREFORE, the Claimant respectfully requests that the Court (i) overrule the Objection and allow Claim 772 in the amount of $330,000, and (ii) grant such other and further relief as this Court deems just and proper under the circumstances.

[35] Id.

Dated: Washington, DC
July 19, 2013

        CADWALADER, WICKERSHAM & TAFT LLP

        /s/ Mark C. Ellenberg
        Mark C. Ellenberg, Esq.
        John H. Thompson, Esq.
        700 6th Street, NW
        Washington, DC 20001
        Telephone: (202) 862-2200
        Facsimile: (202) 862-2400

        *Attorneys for David Wilson*

# **EXHIBIT A**

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|
| Name of Debtor: Lehman Brothers Commodity Services Inc | Case Number: 08-13885 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): DAVID WILSON

Name and address where notices should be sent:
DAVID WILSON
1223 KILLEARN AVENUE S.W. CALGARY, AB
T2V 2N5 CANADA

Telephone number: 403 607 8061    dwilson100@shaw.ca

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: ___
(If known)

Filed on: ___

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 330,000.00

   If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Employment Compensation
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** ___

   3a. Debtor may have scheduled account as: ___
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   **Nature of property or right of setoff:**    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   **Describe:**

   **Value of Property:** $___    **Annual Interest Rate** ___%

   **Amount of arrearage and other charges as of time case filed included in secured claim,**

   **if any:** $___    **Basis for perfection:** ___

   **Amount of Secured Claim:** $___    **Amount Unsecured:** $___

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a___).

   **Amount entitled to priority:**
   $___

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7, and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Attached Employment Contract

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000000772

**Date:** Nov 17, 2008

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature]

FILED / RECEIVED
NOV 17 2008
EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/07) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

_____**DEFINITIONS**_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____**INFORMATION**_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

David Wilson
December 12, 2007, *December 19, 2007*
Page 3 of 3

incorporated by reference into this offer and forms part of the terms and conditions of your employment and you further agree that the payments afforded under the Severance Plan is the maximum compensation to which you are entitled with respect to reasonable notice and is in full and complete satisfaction of any reasonable notice period that you would otherwise be entitled to receive at common law.

### Representations

In making this offer of employment, the Firm has relied on your representations (a) that you are not subject to any duty or obligation that would prevent you from becoming employed with us on your start date or that would in any way prevent you from performing the duties of your position, and (b) that you are not subject to any non-competition, non-solicitation or other restrictive covenant that might affect your employment by the Firm as contemplated by this letter.

We encourage you to seek legal advice prior to accepting this offer of employment.

If you are in agreement with the terms of this offer of employment, we must receive your signed offer of employment on or before January 1, 2008. Kindly return this letter to Kimmy Gardner in the enclosed envelope. An additional copy of this letter is enclosed for your files. Please contact me at 212-526-2714 if you have any additional questions or concerns.

David, we are very excited to have you as part of our team and know that your skills and expertise will be fundamental to the success of this exciting opportunity.

Yours truly,

*[signature]*

Frank Napolitano
President
LEHMAN BROTHERS COMMODITIES SERVICES


I have read, understood and agree to the above conditions of employment, including those related to the termination of my employment. I have had a reasonable opportunity to consider this letter and the matters set out herein and acknowledge that I have not signed this letter under any type of duress. I have also had an opportunity to obtain independent legal advice prior to the signing of this agreement and have been given a reasonable opportunity to obtain such advice.

_____          _____
David Wilson                                                  Date