**Hearing Date and Time:  September 18, 2013, 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  August 23, 2013, 4:00 p.m. (Prevailing Eastern Time)**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Baupost Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | : |
| In re | : Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
| | : |
| Debtors. | : Jointly Administered |
| | : |

**NOTICE OF MOTION OF BAUPOST GROUP, LLC**
**TO QUASH DEBTORS' SUBPOENA ISSUED UNDER**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

        **PLEASE TAKE NOTICE** that, on September 18, 2013, at 10:00 a.m.

(prevailing Eastern Time), or as soon thereafter as the matter may be heard, before the

Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the

United States Bankruptcy Court, Southern District of New York, One Bowling Green,

New York, New York 10004, Baupost Group, LLC ("Baupost") will move (the

"Motion") to quash the Subpoena for Rule 2004 Examination, served on May 24, 2013

("Subpoena"),[1] propounded by Lehman Brothers Special Finance and Lehman Brothers

Holdings, Inc. (collectively, "Debtors").

**PLEASE TAKE FURTHER NOTICE** that any objection or response to

the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Rules for the United States Bankruptcy Court for the Southern

District of New York, and (i) shall be filed with the Bankruptcy Court electronically in

accordance with General Order M-242 (General Order M-242 and the User's Manual for

the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the

official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's

case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format ("PDF"), WordPerfect, or any other Windows-based word

processing format; and (ii) a hardcopy of such objection or response shall be served in

accordance with General Order M-242, upon (A) the chambers of the Honorable James

M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (B) Weil

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard

W. Slack, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq., Jacqueline Marcus, Esq.,

and Robert J. Lemons, Esq.), attorneys for Debtors; (C) the Office of the United States

Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick

Street, Suite 1006, New York, New York 10014 (Attn: Tracy Hope Davis, Esq.,

Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.); (D) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn:

---

[1]    The parties agreed to extend Baupost's deadline to file its Motion to July 23,
2013. Declaration of Matthew A. Schwartz, dated July 23, 2013, Exhibit I.

Dennis F. Dunne, Esq., Wilbur F. Foster, Jr., Esq., Dennis C. O'Donnell, Esq., and Evan R. Fleck, Esq.), attorneys for the official committee of unsecured creditors appointed in these cases; (E) the attorneys for any other official committee(s) appointed in these cases; and (F) Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004 (Attn: Bruce E. Clark, Esq. and Matthew A. Schwartz, Esq.), attorneys for Baupost Group, LLC, so as to be actually filed and received no later than August 23, 2013, at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
      July 23, 2013

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:    /s/ _____
        Bruce E. Clark
        Matthew A. Schwartz
        SULLIVAN & CROMWELL LLP
        125 Broad Street
        New York, New York 10004
        Telephone:  (212) 558-4000
        Facsimile:  (212) 558-3588

        *Attorneys for Baupost Group, LLC*

**Hearing Date and Time:  September 18, 2013, 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  August 23, 2013, 4:00 p.m. (Prevailing Eastern Time)**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Baupost Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
| | : |
| Debtors. | : Jointly Administered |
| | : |

**MOTION OF BAUPOST GROUP, LLC TO QUASH**
**DEBTORS' SUBPOENA ISSUED UNDER**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Baupost Group, LLC and its affiliated entities ("Baupost"), by its undersigned

counsel, hereby moves (the "Motion") to quash the Subpoena for Rule 2004 Examination, served

on May 24, 2013 ("Subpoena"), propounded by Lehman Brothers Special Finance ("LBSF") and

Lehman Brothers Holdings, Inc. ("LBHI"; and together with LBSF, "Debtors").  The Subpoena

is a clear abuse of the examination powers granted to Debtors by the Court under Rule 2004 of

the Federal Rules of Bankruptcy Procedure ("Rule 2004"), because Debtors seek irrelevant,

cumulative, and unduly burdensome discovery from Baupost.  Baupost and Debtors participated

in a meet and confer on June 24, 2013, but did not resolve this discovery dispute.

<u>INTRODUCTION</u>

1.     Debtors' Subpoena seeks documents concerning (a) any valuation of the auction-rate bonds that Giants Stadium LLC ("Giants Stadium") issued to finance its portion of the New Meadowlands Stadium ("Bonds") (Request No. 2); (b) any valuation of the auction-rate swaps that Giants Stadium entered into with LBSF to reduce its risk on the Bonds (Request No. 1); and (c) the value, purchase or transfer, and pursuit of the two proofs of claim ("Claims") filed by Giants Stadium after the termination of the actual bond-rate swap (Request Nos. 3, 4, and 5). Declaration of Matthew A. Schwartz, dated July 23, 2013 ("Schwartz Decl."), Exhibit A.

2.     All of these requests seek inappropriate, overbroad, and unduly burdensome discovery from Baupost.  Baupost had no involvement in the circumstances and events underlying the Claims.  Rather, Baupost owns and advises the funds and accounts that created Goal Line Partners, LLC ("Goal Line"), which purchased an interest in the Claims long after they were filed, and so the only documents that Baupost may have would be either (i) documents prepared during the course of litigating the Claims, and thereby protected from discovery by the attorney-client privilege, work product doctrine, and/or other applicable privileges and protections, (ii) irrelevant documents prepared by Baupost prior to Goal Line's purchase of certain rights in the Claims, (iii) irrelevant documents concerning Baupost's purchase of certain rights to the Claims, or (iv) documents duplicative of documents Debtors have already sought and received from Giants Stadium itself.

3.     Accordingly, any information that Baupost may have is neither relevant to the rights or interests of Debtors in the Chapter 11 case nor reasonably calculated to assist in the administration of Debtors' bankruptcy estates.  By contrast, Debtors' Subpoena would require

Baupost to undertake a burdensome and disruptive collection and review of numerous documents, including a substantial privilege and/or work product review of those documents in order to create and produce a privilege log. The Court should quash the Subpoena.

## FACTUAL BACKGROUND

4.      In mid-2007, Giants Stadium financed its portion of the New Meadowlands Stadium by issuing over $700 million of auction-rate bonds. Giants Stadium sought to reduce its risk on the Bonds by entering into an actual bond-rate swap with LBSF, under which Giants Stadium would pay LBSF a fixed rate of 6.1885%, and LBSF would pay to Giants Stadium the actual rate on the Bonds, as determined at each auction. Giants Stadium and LBSF consummated this proposal on July 27, 2007, by executing two ISDA Master Agreements (the "ISDA Masters;" and transactions described therein, "Actual Rate Swaps"). LBHI was LBSF's guarantor on the Actual Rate Swaps.

5.      On September 15, 2008, LBHI filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). LBHI's bankruptcy filing was an Event of Default under the ISDA Masters. On September 18, 2008, Giants Stadium hand-delivered two letters to LBSF (i) notifying LBSF that an Event of Default pursuant to Section 5(a)(vii) of the ISDA Masters had occurred; and (ii) designating September 18, 2008, as the Early Termination Date with respect to the Actual Rate Swaps.

6.      Giants Stadium then determined its loss due to the terminations of the Actual Rate Swaps and filed two proofs of claim: one against LBSF and one against LBHI.

7.      On April 27, 2009, Giants Stadium transferred certain rights to the Claims to Bank of America, but retained a financial interest in, and litigation control over, the Claims.[2] Bank of America subsequently sold its rights to the Claims to Goal Line, an entity owned and created by funds and accounts advised by Baupost.  Prior to its purchase of these rights, Baupost had no involvement in the circumstances or events underlying the Claims.

8.      Although the Claims have been pending for nearly five years, Debtors have not yet objected to the Claims.  Rather, Debtors continue to pursue extensive Rule 2004 discovery concerning the Claims under the guise of gathering information to aid their decision whether to object to the Claims, even though it has been clear for years that Debtors will object to the Claims and possibly seek a receivable to the Debtors' bankruptcy estates.  Schwartz Decl. ¶ 14. Indeed, Debtors have routinely sought discovery designed to bolster their planned objection.  *Id.*

9.      Debtors' extensive efforts, including requests for the information sought in the Subpoena, include (a) two subpoenas to Giants Stadium, Schwartz Decl., Exhibits C and D; (b) a subpoena to Goldman, Sachs & Co., the underwriter for a portion of the Bonds; (c) subpoenas to Financial Guaranty Insurance Company and Assured Guaranty Municipal f/k/a Financial Security Assurance Inc., the insurers of the Bonds; (d) a subpoena to the NFL; and (e) the

---

[2]      Giants Stadium has already produced to Debtors documents concerning the transfer agreement with Bank of America.  *See, e.g.*, Schwartz Decl., Exhibits B-1 to B-4, at GStad_LB_0062762-GStad_LB_0062797 (drafts of transfer agreement and other related documents), GStad_LB_0062806-GStad_LB_0062812 (submission of transfer agreement for FSA approval), GStad_LB_0062876-GStad_LB_0062967 (executed transfer agreement and other related documents), and GStad_LB_0063359-GStad_LB_0063381 (communication with National Football League, Inc. ("NFL") regarding transfer agreement).

deposition of Giants Stadium's authorized representative, Christine Procops, with the request for depositions of other individuals.  Schwartz Decl. ¶ 15.

10.     Debtors have, at a minimum, received over 70,000 pages of documents from Giants Stadium, a copy of 6,505 pages of documents that Giants Stadium procured on its own initiative from Debtors' affiliate Lehman Brothers Inc., and 538 pages of documents from the NFL.  Schwartz Decl. ¶ 16.

11.     On September 26, 2012, Giants Stadium moved for leave to conduct Rule 2004 discovery of Debtors or, in the alternative, an order directing Debtors to cease their Rule 2004 discovery and simply state their objections to the Claims.  (Dkt. No. 31105.)  Giants Stadium argued that Debtors were abusing Rule 2004 discovery by, among other things, seeking to develop and hone their arguments for an adversary proceeding rather than investigating any genuine issues implicating their determination of whether to object to the Claims.  Debtors objected (Dkt. No. 31767), but at the November 14, 2012 hearing, the Court granted Giants Stadium's motion to take Rule 2004 discovery.  The Court recognized that "[t]here is no foreseeable outcome here in which Lehman is not objecting, or bringing affirmative claims relief," Schwartz Decl., Exhibit E at 58:5-7, and expressed doubt that Debtors need additional

discovery.  Schwartz Decl., Exhibit E at 59:2-8.[3]  However, the Court directed the parties to

reach an agreement on a discovery protocol.[4]  Schwartz Decl., Exhibit E at 57:25-58:7.

12.    Giants Stadium and Debtors entered into the Discovery Protocol Agreement on

April 1, 2013, Schwartz Decl., Exhibit F, and since then have been engaging in mutual Rule

2004 discovery.

13.    Despite the fact that Baupost had no involvement in the circumstances and events

underlying the Claims, Baupost is the latest target of Debtors' strategy to avoid directly

addressing the Claims by hiding behind Rule 2004 discovery.   On May 24, 2013, Debtors served

the Subpoena on Baupost.

14.    The Subpoena seeks documents concerning (a) "any valuation of the [Actual

Rate Swaps]" and "any valuation of the Bonds" prior to or following September 18, 2008;

---

[3]    Specifically, the Court stated:  "One of the mysteries from the perspective of the Court is
that this third party discovery and discovery from others is so critical from the debtor's
perspective in being able to formulate its own position with respect to the claim.  But I accept the
representations made that ongoing 2004 discovery is needed in order for the debtor to complete
its investigation to use its words."  Schwartz Decl., Exhibit E at 59:2-8.

[4]    Debtors make much ado about the Court's statement during the November 14, 2012
hearing that "discovery from third parties and discovery from Giant [sic] Stadium and discovery
from Goal Line may be more appropriate than discovery from the debtor," Schwartz Decl.,
Exhibit H, at 1-2 (quoting Schwartz Decl., Exhibit E at 58:22-24), but ignore the context of the
Court's statement.  The Court was considering whether Giants Stadium is entitled to conduct
Rule 2004 discovery of Debtors and ultimately determined that Giants Stadium may do so due to
the unique nature of the dispute.  The Court's full statement was as follows:

THE COURT:  I recognize that the 2004 sword is more properly used by the
debtor than by the creditor in this instance. And so discovery from third parties
and discovery from Giant [sic] Stadium and discovery from Goal Line may be
more appropriate than discovery from the debtor. But that does not mean that
some discovery from the debtor is not also to be part of this process.

Schwartz Decl., Exhibit E, at 58:20-59:1.

(b) "the purchase or transfer of Giants Stadium's [C]laims in the Lehman Bankruptcy by or to Baupost, Bank of America, and/or Goal Line"; (c) "the value of the claims (and amended claims) filed by Giants Stadium in the Lehman Bankruptcy"; and (d) "the respective roles of Giants Stadium and Baupost with respect to the pursuit of claims in the Lehman Bankruptcy in connection with the [Actual Rate Swaps]."  Schwartz Decl., Exhibit A, Requests Nos. 1-5.

15.    These requests seek the same information about which Giants Stadium has already produced non-privileged documents to Debtors, Schwartz Decl. ¶ 17, including documents concerning, *inter alia*, (a) "any valuation of the [Actual Rate Swaps]"; (b) "the [Claims] including . . . (ii) any sale, transfer, or participation thereof"; (c) "documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the [Claims]"; and (d) "communications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the Lehman Bankruptcy . . . or the [Claims] filed in the Lehman Bankruptcy by Giant [sic] Stadium."   Schwartz Decl., Exhibit C, Request Nos. 1 and 23; Schwartz Decl., Exhibit D, Request Nos. 2 and 7.

16.    On June 7, 2013, Baupost timely served Debtors with its Objections to the Subpoena (the "Objections").  Schwartz Decl., Exhibit G.  Baupost objected on the grounds that, *inter alia*, (a) the Subpoena seeks "information that is [i] irrelevant to any party's claim or defense, [ii] not reasonably calculated to lead to the discovery of admissible evidence, and [iii] neither relevant to the claims, rights, or interests of Debtors in the Chapter 11 case nor reasonably calculated to assist in the administration of Debtors' bankruptcy estates"; (b) the Subpoena seeks "information protected by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product protection, or any other applicable

-7-

privilege, immunity, or protection from disclosure"; (c) the Subpoena "purports to impose burdens or duties . . . that exceed or are different from the requirements or permissible scope of discovery" under the applicable laws, rules, or judicial orders; and (d) the Subpoena seeks "information that is unreasonably cumulative or duplicative of information already obtained in discovery from Giants Stadium or that is obtainable from another source that is more convenient, less burdensome, or less expensive."  Schwartz Decl., Exhibit G ¶¶ 1-2, 4-6.

17.    On June 14, 2013, Debtors sent Baupost a letter responding to Baupost's Objections.  Schwartz Decl., Exhibit H.

18.    On June 24, 2013, Baupost and Debtors held a meet and confer, but the parties were unable to come to a resolution and mutually agreed that Baupost should proceed with filing this Motion.  Schwartz Decl. ¶ 20.

19.    On July 15, 2013, Baupost and Debtors agreed to extend Baupost's deadline to file its Motion to July 23, 2013.  Schwartz Decl., Exhibit I.

<u>JURISDICTION AND VENUE</u>

20.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in this Motion is Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure and Rule 45 of the Federal Rules of Civil Procedure.  *In re Parikh*, 397 B.R. 518, 526 (Bankr. E.D.N.Y. 2008) ("Rule 45 allows the recipient [of a Rule 2004 subpoena] . . . to move to have the subpoena quashed if it . . . requires the disclosure of privileged material, or subjects someone to undue burden.").

RELIEF REQUESTED

21.     Baupost requests the entry of an order (i) quashing the Subpoena and (ii) granting

such other and further relief as the Court deems just and proper.

ARGUMENT

22.     Rule 2004 discovery is limited "*only* to the acts, conduct, or property or to the

liabilities and financial condition of the debtor, or to any matter which may affect the

administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P.

2004(b) (emphasis added); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)

("[T]he availability of Rule 2004 as a discovery tool is not unlimited.") (citation omitted).  A

debtor can use Rule 2004 discovery to investigate the nature and extent of the estate, including to

"inquire into the basis for a filed proof of claim." *Matter of Sutera*, 141 B.R. 539, 541 (Bankr.

D. Conn. 1992) (citing *In re Arkin-Medo, Inc.*, 44 B.R. 138, 140 (Bankr. S.D.N.Y. 1984)); *see

also In re Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25,

2008); *In re Enron Corp.*, 281 B.R. at 840.  But the Court may "limit, condition[,] or forbid"

Rule 2004 discovery that is designed to abuse or harass the subpoenaed party, *In re Recoton

Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004), *see also In re MF Global Inc.*, No. 11-02790

(MG), 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013), or that "stray[s] into matters which

are not relevant to the basic inquiry."  *In re MF Global Inc.*, 2013 WL 74580, at *1 (citation

omitted).

23.     When a subpoenaed party moves to quash a debtor's Rule 2004 subpoena, as

Baupost does here, the debtor bears the initial burden to prove that "good cause" exists for the

requested discovery (*i.e.*, the discovery is necessary or denial would cause undue hardship or

injustice).  *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *see also In re Coffee*

-9-

*Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (insufficient that "justice would not be impeded by production") (citation omitted).  Only then does the burden shift to the subpoenaed party to show that the requested discovery is oppressive or burdensome.  *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011).

24.    Debtors' Subpoena is designed solely to annoy, harass, and oppress Baupost in direct contravention of the purpose and permissible use of the Rule 2004 discovery process. None of the discovery sought by Debtors could contribute to Debtors' decision regarding whether to object to the Claims or otherwise assist in the administration of the Debtors' bankruptcy estates, and it is puzzling that Debtors continue to pursue Rule 2004 when, as the Court has already recognized, "there is no foreseeable outcome here in which Lehman is not objecting, or bringing affirmative claims [for] relief."  Schwartz Decl., Exhibit E at 58:5-7. Debtors have failed to articulate good cause for seeking discovery of Baupost—a non-participant in the Bonds and the Actual Rate Swaps—at this stage of the litigation.  Schwartz Decl., Exhibit E at 59:2-6 ("One of the mysteries from the perspective of the Court is that this third party discovery and discovery from others is so critical from the debtor's perspective in being able to formulate its own position with respect to the claim.").

25.    *First*, Debtors' requests for valuation and other information created by Goal Line and/or Baupost *prior to* Goal Line's acquisition of certain rights in the Claims are irrelevant and unnecessarily burdensome.  Baupost did not acquire rights in the Claims until long after Debtors and Giants Stadium entered into the transactions underlying the Claims and the circumstances and events surrounding the Actual Rate Swaps and their termination.  Any such Baupost valuation was based solely on publicly available information on the Claims, and so was purely

-10-

speculative and lacking in probative value relating to Debtors' decision whether to object to the

Claims. A third party's valuation of the Bonds or Actual Rate Swaps is plainly irrelevant to the

administration of Debtors' bankruptcy estates and accordingly no good cause can exist to compel

the discovery of, if any, Baupost valuations.

26.    The Court made clear at the November 14, 2012 hearing that it considered

Debtors' interest in Baupost's valuations and acquisition of certain rights in the Claims to be

futile, at least at this stage of the litigation. Specifically, the Court recognized that documents

concerning Baupost's acquisition of the Claims are irrelevant at this stage of the proceeding:

> THE COURT:  . . . I'm just going to make the general observation that ordinarily
> when claims are transferred and the Lehman case has been one of the
> largest unregulated trading markets and distressed claims in the world during the
> past four years. There's a routine that I'm familiar with not from being a Judge,
> but having been a practitioner, and you're not likely to find very much of value in
> the back and forth relating to that claim trade, at least as it relates to the value for
> purposes of any objection you might file.
>
> These are trades between so-called big boys, and everybody makes their own
> judgments as to the likelihood of success in future litigation with regard to the
> claim. You may or may not be ultimately entitled to obtain that information, but
> even if you do, **in my view, it's a big so what**.

Schwartz Decl., Exhibit E, at 23:13-24:4 (emphasis added).[5]    That sentiment still holds true;

Baupost's documents, if any, relating to the acquisition or its valuation of the Claims, are

---

[5]    Although Debtors insist otherwise, Schwartz Decl., Exhibit H, at 1-2, Baupost properly
characterizes the Court's observations as addressing the relevance of Debtors' interest in
Baupost's valuations both here and in its Objections. The Court asked counsel for Debtors to
explain why "the actual transfer papers between Baupost, and . . . Bank of America" are "even
relevant at this point[]." Schwartz Decl., Exhibit E, at 22:20-25, 23:1-2. Counsel for Debtors
avoided the Court's question—instead asserting that Debtors are "entitled to see what was
disclosed during those negotiations," Schwartz Decl., Exhibit E, at 23:3-12—and the Court
responded by observing that Debtors' requests are irrelevant. *Id*. at 23:13-24:2.

irrelevant to the true value of the Claims.   Debtors' continued insistence on the production of these documents, despite the Court's clear guidance, further evidences the abusive and harassing nature of the Subpoena.

27.     *Second*, Debtors' requests for valuation and other information created *after* Goal Line's acquisition of certain rights in the Claims improperly attempts to invade Baupost's privilege, work product, and other protections.   Baupost is not required to disclose these protected documents, and it would be unduly burdensome and expensive for Baupost to collect and review documents only to produce a privilege log to Debtors.[6]   Neither Debtors' decision whether to object to the Claims nor the administration of their bankruptcy estates would benefit from this exercise, and thus its utility is nonexistent.

28.     For example, the work product doctrine shields from disclosure any document that Baupost prepared or obtained "because of the prospect of litigation."   *United States* v. *Adlman*, 134 F.3d 1194, 1202-03 (2d Cir. 1998) (citation omitted); *In re Initial Publ. Offering Sec. Litig.*, 220 F.R.D. 30, 34 (S.D.N.Y. 2003); *see also Hickman* v. *Taylor*, 329 U.S. 495, 510-12 (1947) ("[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate

---

[6]     Giants Stadium and Debtors' Discovery Protocol Agreement relieves both parties of the obligation to "prepare or serve a privilege log" during Rule 2004 discovery, but that agreement expressly excludes extending such an accommodation to a third party such as Baupost.   *See* Schwartz Decl., Exhibit F ¶ 1 ("For purposes of Rule 2004 document demands only between Lehman and Giants Stadium, neither side will be required to prepare or serve a privilege log."). Baupost raised this issue during the June 24, 2013 meet and confer with Debtors, but Debtors made no offer to compromise or otherwise address this burden.   *See* Schwartz Decl. ¶ 20.

reasons to justify production through a subpoena or court order."); *Strougo* v. *BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) ("An attorney must show merely that the documents were prepared 'with an eye toward litigation.'") (citations omitted); *see, e.g.*, *William A. Gross Const., Assocs., Inc.* v. *Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 359 (Bankr. S.D.N.Y. 2009) (Peck, J.) (noting the elements of the work product doctrine).

29.     The Claims, which Debtors clearly intend to object to, are tantamount to litigation against Debtors, and therefore Baupost necessarily anticipated litigation when it prepared or obtained documents in considering or negotiating the acquisition of the Claims and certainly acted to assist in litigation when it prepared or obtained documents after the acquisition of the Claims.  Any valuation or other information concerning the Claims that Debtors now seek is thus *per se* protected by the work product doctrine.  Debtors seem to have taken the same position with respect to their own valuation information, as they are asserting privilege to withhold their own valuations of the bonds, swaps, and Claims dated after the initiation of the bankruptcy based on the work product doctrine.  *See* Schwartz Decl. ¶¶ 18-19.  It is puzzling that Debtors insist on Baupost producing its valuation materials, especially given that Baupost acquired an interest in the Claims (and thus did not have the opportunity to create valuations until) long after the bankruptcy commenced.

30.     *Third*, Debtors' requests are unreasonably cumulative or duplicative of discovery that Debtors have already obtained from another source.  Any probative evidence on these issues resides with Giants Stadium or the other participants in the Bonds and Actual Rate Swaps, not a non-participant such as Baupost that merely acquired rights in the Claims.  Debtors have already requested—and received—non-privileged information sought by the Subpoena from participants

-13-

in the circumstances and events relevant to the Claims, *see supra* paragraphs 7-10.  Participants such as Giants Stadium have conducted extensive yet burdensome searches for documents responsive to Debtors' requests and have already made voluminous productions to Debtors of the non-privileged, responsive documents that exist.  Debtors made over thirty-five different requests for documents from Giants Stadium, *see* Schwartz Decl., Exhibits C and D, some of which seek the same information as the Subpoena.  Debtors' claims to the contrary, *see* Schwartz Decl., Exhibit H, at 2, are clearly misguided as set forth below.

| BAUPOST SUBPOENA | GIANTS STADIUM SUBPOENAS[7] |
|---|---|
| "[A]ny valuation of the [Actual Rate Swaps]" prior to and following September 18, 2008. (Schwartz Decl., Exhibit A, Request No. 1.) | "[A]ny valuation of the Terminated Transactions, both prior to and following their purported termination on September 18, 2008, including, but not limited to, the valuation(s) contained in the Calculation Statements."   (Schwartz Decl., Exhibit C, Request No. 1.)<br><br>"[C]ommunications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the value of the Transactions both prior to, and after, their purported termination on or about September 18, 2008." (Schwartz Decl., Exhibit D, Request No. 8.) |
| "[A]ny valuation of the Bonds" prior to and following September 18, 2008. (Schwartz Decl., Exhibit A, Request No. 2.) | "[C]ommunications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant [sic] Stadium."   (Schwartz Decl., Exhibit D, Request No. 7.) |

---

[7]     Giants Stadium objected to these requests as irrelevant and/or privileged, *see* Schwartz Decl., Exhibits J and K, but upon meeting and conferring, Giants Stadium nonetheless agreed to engage in a burdensome review and made a production of the few non-privileged documents responsive to these requests.  *See* Schwartz Decl. ¶ 17.

| BAUPOST SUBPOENA | GIANTS STADIUM SUBPOENAS[7] |
|---|---|
| "[T]he purchase or transfer of Giants Stadium's [C]laims in the Lehman Bankruptcy by or to Baupost, Bank of America, and/or Goal Line . . . ." (Schwartz Decl., Exhibit A, Request No. 3.) | "[T]he Proofs of Claim including . . . (ii) any sale, transfer, or participation thereof."  (Schwartz Decl., Exhibit C, Request No. 23.)<br><br>"[T]he sale of Giants Stadium's claims in the Lehman Bankruptcy to Goal Line." (Schwartz Decl., Exhibit D, Request No. 6.)<br><br>"[T]he sale of Giants Stadium's claims in the Lehman Bankruptcy."  (Schwartz Decl., Exhibit D, Request No. 3.) |
| "[T]he value of the claims (and amended claims) filed by Giants Stadium in the Lehman Bankruptcy . . . ." (Schwartz Decl., Exhibit A, Request No. 4.). | "Giants Stadium's [Claims] filed in the Lehman Bankruptcy . . . including, but not limited to, (i) documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the proofs of claim, (ii) documents including, but not limited to, spreadsheets, emails and Giants Stadium's books and records that concern the amount claimed in the proofs of claim, (iii) documents concerning the Supplemental Statement attached to the proofs of claim, including all drafts thereof, (iv) all communications with Goldman Sachs, the NFL, Baupost, Bank of America, or Goal Line concerning any proofs of claim filed in the Lehman Bankruptcy, and [v] all documents concerning Giants Stadium's decision to supplement or amend its proofs of claim previously filed in the Lehman Bankruptcy on or about September 22, 2009." (Schwartz Decl., Exhibit D, Request No. 2.) |
| "[T]he respective roles of Giants Stadium and Baupost with respect to the pursuit of claims in the Lehman Bankruptcy in connection with the [Actual Rate Swaps] . . . ." (Schwartz Decl., Exhibit A, Request No. 5.) | "All documents concerning the sale of Giants Stadium's claims in the Lehman Bankruptcy to Goal Line."  (Schwartz Decl., Exhibit D, Request No. 6.)<br><br>"Giants Stadium's [Claims] filed in the Lehman Bankruptcy . . ., including, but not limited to, (i) documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the proofs of claim, (ii) documents including, but not limited to, spreadsheets, emails and Giants Stadium's books and records that concern the amount claimed in the proofs of claim, (iii) documents concerning the Supplemental Statement attached to the proofs of claim, including all drafts thereof, (iv) all communications with Goldman Sachs, the NFL, Baupost, Bank of America, or Goal Line concerning any proofs of claim filed in the Lehman Bankruptcy, and [v] all documents concerning Giants Stadium's decision to supplement or amend its proofs of claim previously filed in the Lehman Bankruptcy on or about September 22, 2009." (Schwartz Decl., Exhibit D, Request No. 2.)<br><br>"All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant [sic] Stadium." (Schwartz Decl., Exhibit D, Request No. 7.) |

31.     Debtors miss the point by claiming that Baupost is the appropriate party to produce the discovery sought because Giants Stadium stated at the November 14, 2012 hearing that it did not have any material to produce or disclose.  Schwartz Decl., Exhibit H, at 2.  The documents relating to Baupost's involvement in the transfer of the Claims are non-responsive, privileged, or subject to work product protection.   Any potentially relevant non-privileged documents are those Baupost received from Giants Stadium, and are therefore duplicative of discovery Debtors have already received from Giants Stadium directly.

32.     Baupost should not be subjected to an unduly burdensome and costly review yielding no unique non-privileged or unprotected information.   Any documents unique to Baupost are privileged or irrelevant and thus are not discoverable under Rule 2004.   It is unnecessary and unwarranted to subject Baupost to a burdensome, futile discovery exercise that is so completely duplicative of Debtors' other discovery efforts.

<u>NO PRIOR REQUEST</u>

33.     No prior motion for the relief requested herein has been made to this or any other court.

<u>WAIVER OF MEMORANDUM OF LAW</u>

34.     As there are no novel issues of law relating to the Motion, Baupost requests that the Court waive the requirement that Baupost file a separate memorandum of law in support of the Motion.

-16-

CONCLUSION

35.    For the reasons stated herein, Baupost respectfully requests that the Court enter an

Order, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure and Rule

45 of the Federal Rules of Civil Procedure, in the form attached hereto as Exhibit A, (i) quashing

the Subpoena and (ii) granting such other and further relief as the Court deems just and proper.


Dated: New York, New York            Respectfully submitted,
        July 23, 2013

                                     **SULLIVAN & CROMWELL LLP**

                                     By:    /s/_____
                                            Bruce E. Clark
                                            Matthew A. Schwartz
                                            SULLIVAN & CROMWELL LLP
                                            125 Broad Street
                                            New York, New York 10004
                                            Telephone:  (212) 558-4000
                                            Facsimile:  (212) 558-3588

                                            *Attorneys for Baupost Group, LLC*

-17-

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|                                          |     |                          |
|------------------------------------------|-----|--------------------------|
| In re                                    | :   | Chapter 11               |
|                                          | :   |                          |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | :   | Case No. 08-13555 (JMP)  |
|                                          | :   |                          |
| Debtors.                                 | :   | Jointly Administered     |
|                                          | :   |                          |

_____

### ORDER ON MOTION OF BAUPOST GROUP, LLC
### TO QUASH DEBTORS' SUBPOENA ISSUED UNDER
### FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon the Motion ("Motion") of Baupost Group LLC ("Baupost") for the entry of

an order pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure

and Rule 45 of the Federal Rules of Civil Procedure quashing the Subpoena for Rule

2004 Examination, served on May 24, 2013 ("Subpoena"), propounded by Lehman

Brothers Special Finance and Lehman Brothers Holdings, Inc.; and upon consideration of

the Motion and related papers; and due and appropriate notice of the Motion having been

given, it is hereby **ORDERED** that:

1.      The Motion is GRANTED.

2.      The Subpoena is quashed.

Dated: _____, 2013
      New York, New York

_____
THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE