# Exhibit E

Page 1

```
 1  UNITED STATES BANKRUPTCY COURT

 2  SOUTHERN DISTRICT OF NEW YORK

 3

 4  - - - - - - - - - - - - - - - - - - -x

 5  In the Matter of:

 6  LEHMAN BROTHERS HOLDINGS, INC.,          CAUSE NO.

 7  et al,                                   08-13555(JMP)

 8           Debtors.

 9  - - - - - - - - - - - - - - - - - - -x

10  In re

11  LEHMAN BROTHERS, INC.,                   CAUSE NO.

12           Debtor.                         08-01420(JMP)(SIPA)

13  - - - - - - - - - - - - - - - - - - -x

14

15                    U.S. Bankruptcy Court

16                    One Bowling Green

17                    New York, New York

18

19                    November 14, 2012

20                    10:02 AM

21

22  B E F O R E:

23  HON. JAMES M. PECK

24  U.S. BANKRUPTCY JUDGE

25  ECRO:  MATTHEW
```

Page 2

1  HEARING re Notice of Final Applications of Retained
2  Professionals for Final Allowance and Approval of
3  Compensation for Professional Services Rendered and
4  Reimbursement of Actual and Necessary Expenses Incurred from
5  September 15, 2008 to March 6, 2012 (ECF Nos. 31901)
6
7  HEARING re Plan Administrator's Cross-Motion to Compel
8  Giants Stadium LLC to comply with Rule 2004 Subpoenas and
9  Objection to Giants Stadium's Motion to Quash the Rule 2004
10 Subpoenas (ECF No. 31652)
11
12 HEARING re Motion to Quash a Subpoena filed by Bruce E.
13 Clark on behalf of Giants Stadium LLC (ECF No. 31339)
14
15 HEARING re Amended Motion of Giants Stadium LLC for Leave to
16 Conduct Discovery of the Debtors Pursuant to Federal Rule of
17 Bankruptcy Procedure 2004 (ECF No. 31105)
18
19 SIPA PROCEDURES
20 HEARING re Motion Pursuant to Federal Rule of Bankruptcy
21 Procedure 9019 for Entry of an Order Approving Settlement
22 Agreement Between the Trustee and Lehman Brothers Finance
23 AG, in Liquidation (a/k/a Lehman Brothers Finance SA, in
24 Liquidation)(LBI ECF No. 5362)
25

Page 3

```
 1   HEARING re Trustee's Motion Pursuant to Section 105(a) of
 2   the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b)
 3   for Approval of General Creditor Claim (I) Objections
 4   Procedures and (II) Settlement Procedures (LBI ECF No. 5392)
 5
 6   HEARING re Debtor's Three Hundred Fifty-Seventh Omnibus
 7   Objection to Claims (Misclassified Claims (ECF No. 31048)
 8
 9   HEARING re Objection to Claim No. 17763 Filed by Laurel Cove
10   Development, LLC (ECF No. 29187)
11
12   HEARING re Three Hundred Twentieth Omnibus Objection to
13   Claims (No Liability Rose Ranch LLC Claims)(ECF No. 29292)
14
15   HEARING re Debtor's Three Hundred Twenty-Ninth Omnibus
16   Objection to Claims (Misclassified Claims)(ECF No. 29324)
17
18   HEARING re Motion for an Order Pursuant to Section 105(a) of
19   the Bankruptcy Code and Bankruptcy Rule 9019, Authorizing
20   and Approving the Settlement with Lehman Brothers, Inc. (ECF
21   No. 43)
22
23   HEARING re Turnberry Centra Sub, LLC et al v Lehman Brothers
24   Holdings, Inc., et al (Adversary Case No. 09-01062)
25   Transcribed by:  Sheila Orms and William Garling
```

                                                                    Page 4

 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for Lehman Brothers Holdings, Inc.

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  RICHARD W. SLACK, ESQ.

 9        JACQUELINE MARCUS, ESQ.

10        KYLE ORTIZ, ESQ.

11        CANDACE ARTHUR, ESQ.

12

13   WEIL, GOTHAL & MANGES LLP

14        Attorneys for Lehman Brothers Holdings, Inc.

15        1395 Brickett Avenue

16        Suite 1200

17        Miami, FL  33131

18

19   BY:  EDWARD R. MCCARTHY, ESQ.

20

21

22

23

24

25

Page 5

```
 1   PAUL WEISS RIPKIND WHARTON & GARRISON LLP
 2        Attorneys for Houlihan Lokey Howard & Zukin Capital,
 3            Inc.
 4        1295 Avenue of the Americas
 5        New York, NY  10019
 6
 7   BY:   ALAN W. KORNBERG, ESQ.
 8         PHILLIP Q. WEINTRAUB, ESQ.
 9
10   LATHAM & WATKINS LLP
11        Attorneys for Ernest & Young LLP
12        53rd at Third, 855 Third Avenue
13        New York, NY  10022
14
15   BY:   MICHAEL RIELA, ESQ.
16
17   CARMODY MACDONALD
18        Attorneys for Alvarez & Marsal
19        120 S. Central Avenue
20        Suite 1800
21        St. Louis, MO  63105-1705
22
23   BY:   GREGORY D. WILLARD, ESQ.
24
25
```

08-13555-mg Doc 38941-6 Filed 07/26/13 Entered 07/26/13 14:42:57 Exhibit F
08-13555-mg Doc 35760-1 Filed 03/08/13 Entered 03/08/13 16:16:29 Exhibit A
Pg 7 of 20
Pg 7 of 464

Page 6

```
 1   HUGHES HUBBARD
 2         Attorneys for SIPA Trustee
 3         One Battery Park Plaza
 4         New York, NY  10004-1482
 5
 6   BY:   JEFFREY S. MARGOLIN, ESQ.
 7         JEFFREY M. GREILSHEIMER, ESQ.
 8         MEAGHAN C. GRAGG, ESQ.
 9
10   GODFREY KAHN S.C.
11         Attorneys for Fee Committee
12         One East Main Street
13         Suite 500
14         Madison, WI  54701
15
16   BY:   KATHERINE STADLER, ESQ.
17         RICHARD GITLIN, ESQ.
18
19   SULLIVAN & CROMWELL, LLP
20         Attorneys for Giants Stadium
21         125 Broad Street
22         New York, NY  10004
23
24   BY:   THOMAS JOHN WRIGHT, ESQ.
25         BRUCE E. CLARK, ESQ.
```

Page 7

```
 1   STAGG, TERENZI, CONFUSIONE & WAHNIK, LLP
 2        Attorneys for Laurel Cove Development
 3        401 Franklin Avenue
 4        Suite 300
 5        Garden City, NY  11530
 6
 7   BY:   CARA M. GOLDSTEIN, ESQ.
 8
 9   DECHERT, LLP
10        Attorneys for ???
11        1095 Avenue of the Americas
12        New York, NY  10036
13
14   BY:   NICOLE B. HERTHER-SPIRO, ESQ.
15
16   GIBSON DUNN
17        Attorneys for Lehman Brothers Finance AO
18        2100 McKinney Avenue
19        Dallas, TX  75201-6912
20
21   BY:   ROBERT B. KRAKOW, ESQ.
22
23
24
25
```

```
 1   CLEARY GOTTLIEB STEEN & HAMILTON LLP

 2        Attorneys for ???

 3        One Liberty Plaza

 4        New York, NY  10006

 5

 6   BY:   JOSH E. ANDERSON, ESQ.

 7

 8   MEISTER SEELIG & FEIN LLP

 9        Attorneys for ???

10        2 Grand Central Tower

11        140 East 45h Street

12        19th Floor

13        New York, NY  10017

14

15   BY:   STEPHEN B. MEISTER, ESQ.

16

17   UNITED STATES DEPARTMENT OF JUSTICE

18        Attorney for the Office of the United States Trustee

19        76 Chapel Street, Suite 200

20        Albany, NY 12207

21

22   BY:  SUSAN GOLDEN, ESQ. (TELEPHONICALLY)

23

24   OTHERS PRESENT:

25   THERESA CARPENTER, BREGAL INVESTMENTS, INC.
```

Page 9

1  TELEPHONIC APPEARANCES:

2

3  ANASTOLY BUSHLER, FARALLON CAPITAL MANAGEMENT

4  JEFFREY H. DAVIDSON, STUTMAN, TRIESTER & GLATT

5  NICK LANE, WITNESS, WEIL, GOTSHAL & MANGES LLP

6  TRISTA S. LYONS, PRO SE

7  MICHAEL NEUMEISTER, STUTMAN, TREISTER & GLATT

8  MITCHELL SOCKETT, KING STREET CAPITAL MANAGEMENT, LLC

9  KATHERINE A. TRADER, PAUL HASTINGS, LLP

10  JEFFREY H. DAVIDSON, STUTMAN, TREISTER & GLATT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 21

1  don't think it's fair to say, however, that the debtor has
2  insight as to why it was done, what's the timing of it, what
3  the basis of it is.  We haven't had insight into any of
4  that.
5              THE COURT:  Well, let me just ask you a question,
6  and I don't want to know anything about the substance of the
7  negotiations that took place between the parties.  But isn't
8  the first question that somebody sitting down to the
9  negotiating table would ask given this fact pattern, how on
10 earth can you justify an increase from $301 million to $585
11 million, what's that about?  Isn't that the first question?
12 Perhaps not expressed in that way, but I think there would
13 be an element of huge exasperation built in the question.
14             MR. SLACK:  There is that exasperation, and I'm
15 sure those were the subject of discussions, and again, there
16 was a piece of paper that's filed.  There is an amended
17 claim that was filed.  So, I mean, to the extent that
18 there's an amended claim, we could look at it and say here's
19 what's in it.  But in terms of why it was done, who made
20 that decision, why didn't their original financial advisor,
21 Goldman, reach that amount, you know, two and a half years
22 earlier.
23             Again, we haven't had any kind of insight into any
24 of those kinds of questions, and those have not been
25 answered.  And, of course, that's one of the reasons that we

Page 22

```
 1    wanted to continue the investigation.  So that's, I think,
 2    at least from our perspective, you may get another
 3    perspective the answer to number one.
 4              In terms of number two, at some point we were
 5    informed once Baupost, Goal Line acquired the interest that
 6    Sullivan and Cromwell was going to jointly represent Giant
 7    Stadium and Goal Line.  And so there have been
 8    representatives, you know, Sullivan and Cromwell's been
 9    involved, Baupost has been involved, and representatives
10    from Giant Stadium have been involved in the negotiations
11    throughout this period.
12              Now, that's not to say that every conversation
13    included representatives of all, but all parties at some
14    level have been involved in negotiations over the past year.
15              And I think that's -- I think that that somewhat
16    answers at least what we know about question three, which is
17    why is Sullivan and Cromwell still representing Giants.  My
18    understanding again is that they're jointly representing
19    Giants and Baupost and Goal Line in connection with this.
20              What I can say is again, we haven't had any
21    discovery into that sale.  We haven't seen the actual
22    transfer papers between Baupost, and I guess it's Bank of
23    America.  We did see the original papers between Giants and
24    Bank of America.  That's one of the things we asked for
25    again in our two thousand and --
```

08-13555-mg    Doc 35941-6    Filed 07/28/13    Entered 07/28/13 14:42:57    Exhibit F
08-13555-mg    Doc 35766-1    Filed 03/08/13    Entered 03/08/13 16:16:29    Exhibit A
Pg 13 of 20
Pg 24 of 64

Page 23

 1                 THE COURT:  Why is that even relevant at this

 2     point?

 3                 MR. SLACK:  The only thing that potentially is

 4     relevant is exactly I think the questions that you're

 5     asking.  We need to understand when we're talking to

 6     somebody, for example, who is the interest.  Who should we

 7     be talking to Baupost or not.  And that was part of it.

 8                 The other thing is, Baupost and Giant Stadium were

 9     on opposite sides of that deal.  I think we were entitled to

10     see what was disclosed during those negotiations, and we've

11     asked to see that.  And we -- they're not privileged, and we

12     should have access to it.

13                 THE COURT:  Well, whether you should or should not

14     have access to it, I'm just going to make the general

15     observation that ordinarily when claims are transferred and

16     the Lehman case has been one of the largest unregulated

17     trading markets and distressed claims in the world during

18     the past four years.  There's a routine that I'm familiar

19     with not from being a Judge, but having been a practitioner,

20     and you're not likely to find very much of value in the back

21     and forth relating to that claim tread, at least as it

22     relates to the value for purposes of any objection you might

23     file.

24                 These are trades between so-called big boys, and

25     everybody makes their own judgments as to the likelihood of

08-13555-mg    Doc 32941-6    Filed 07/28/13    Entered 07/28/13 14:42:57    Exhibit F
                                    Pg 14 of 20
08-13555-mg    Doc 35780-1    Filed 03/08/13    Entered 03/08/13 16:16:29    Exhibit A
                                    Pg 25 of 64

Page 24

1    success in future litigation with regard to the claim.  You

2    may or may not be ultimately entitled to obtain that

3    information, but even if you do, in my view, it's a big so

4    what.

5            MR. SLACK:  Might be.  Look, you know, what you're

6    saying obviously from experience makes sense.  What I would

7    say, Your Honor, is that this is a little bit unlike other

8    claims, in that it's obviously a very large one.  It's

9    obviously unliquidated.  It's obviously the main issues that

10   somebody looking to buy it are going to be asking themselves

11   are, at the end of the day, is it a receivable or is it a

12   payable, and if so, how much.

13           So I think, you know, it's a little bit different

14   than, you know, a claims market with liquidated claims.

15   But, you know, that's just the tiniest piece of what, you

16   know, we were seeking in our 2004.

17           So, Your Honor, would you like to hear the answers

18   to those questions from counsel, or would you like me to go

19   ahead with my argument?  I mean --

20           THE COURT:  I'd like to hear what counsel for Giant

21   Stadium has to say about the big picture questions that I

22   raised.  And one of the reasons why I'm focused on this is

23   that I am concerned about more than the discovery dispute

24   that has been presented to me, I'm frankly concerned as to

25   why we're having the dispute at all, and why this claim is

VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400

Page 25

```
 1   different from other claims, so many of which have already
 2   found their way into formal claims objections.
 3           And I'm interested in that question, but before
 4   getting to it, Mr. Slack, I'd like to hear comments from --
 5           MR. SLACK:  Okay.
 6           THE COURT:  -- counsel for Giant Stadium as to some
 7   of the preliminary questions that I asked.
 8           MR. SLACK:  Sure.
 9           MR. CLARK:  Thank you, Your Honor.  Again, Bruce
10   Clark for Giant Stadium.
11           Trying to take your questions in order, as to the
12   increase in the amount of the claim, when the claim was
13   originally filed, it was filed with five, I believe there
14   were five caveats as to items that have yet to be
15   quantified.  And when the claim was revised at least two of
16   those items were the cause of the increase from 301 to 585
17   million.
18           One of them reflects the amount of a capital
19   charge, which the person stepping into the shoes of Lehman,
20   in our view, would've had to incur, in order to protect
21   themselves by way of reserves against the likelihood of a
22   further default.  And the other was a difference in the
23   credit charge.  That difference came about because the
24   original deal with Lehman involved raps by insurance
25   companies, either Figik (ph) or FSA, both of whom at the
```

Page 56

1  look at the -- I know Your Honor's familiar with all this,
2  so I'm not going to belabor it, but if you look at the
3  background, the Cameron case and all the other cases that
4  dealt with the origins of Rule 2004.  Originally it dealt
5  with a situation where a receiver came in, wasn't familiar
6  with the debtor, and had to have an expansive and quick,
7  quick review of the debtor's assets in order to protect
8  creditors.  That's what any number of the cases have said.
9       It is not an excuse to allow a debtor in the
10 circumstances present here to just continue with their
11 investigation because the investigation is preliminary and
12 not final, and it's final because it's preliminary.  That's
13 what they're saying.  It's a little circular, and I think we
14 ought to move on.  Thank you.
15      THE COURT:  Okay.  Well, thank you for your candor
16 in answering the Court's questions and in your
17 presentations.  I don't see this as a typical use of Rule
18 2004.  Nor do I see it as a case that will open the
19 proverbial floodgates of other discovery in part because Mr.
20 Slack in his presentation, candidly observed that at this
21 juncture, more than four years into the Lehman bankruptcy
22 case, his client really doesn't fully understand all
23 elements of claims arising out of this complicated auction
24 rate hedge.
25      And it's apparent that if they could determine now

Page 57

```
 1   that they had an affirmative claim, they would assert it.
 2   Lehman has not been shy about asserting such claims in the
 3   past.  Additionally, it seems fairly obvious that if Lehman
 4   had sufficient information available to it that would
 5   support not just a shotgun approach objection but a specific
 6   and tailored objection to the claim, it would file it.
 7             Throughout this case, Lehman has been active in
 8   filing and pursuing objections to claims, and in fact, part
 9   of this morning's agenda relates to objections to claims.
10   And so I view this as an exceptional case.  And, in fact,
11   that was one of the reasons I asked a number of questions at
12   the outset to determine to what extent the issues that
13   related to this discovery dispute were exceptional and
14   unique, and to what extent this was just another example of
15   a derivatives dispute, this one happening to have the
16   negative gloss of active discovery disputes, as opposed to
17   active negotiations leading to a settlement.
18             I believe a continuing 2004 discovery under the
19   circumstances makes sense, although the fact that this is
20   occurring 14 months after our last discovery dispute is a
21   terribly negative fact.  One conclusion to be drawn from the
22   mere timing of this, is that this dispute is taking too long
23   to resolve, and that despite best efforts, reasonable people
24   are unable to get to yes, and they should.
25             And so I'm going to propose that counsel meet and
```

Page 58

1  confer in an effort to develop what I'll call a reciprocal
2  discovery protocol, and it is not necessarily limited to
3  2004.  I believe that one of the things that distinguishes
4  the dispute that I've heard a lot about this morning from
5  other disputes, is that there is no foreseeable outcome here
6  in which Lehman is not objecting, or bringing affirmative
7  claims relief.
8           This is not a situation in which Lehman is engaging
9  in a 2004 process to later shake hands, and say here's the
10 money.  I also believe even though everybody has denied this
11 that the 2004 dance that we're engaged in necessarily has
12 tactical aspects to it.  And so here's what I am directing.
13          Between now and the first of the year, I would like
14 the parties to develop and agreed discovery protocol that
15 will be applicable whether we're dealing with 2004 discovery
16 or claims related discovery.  It would be extraordinarily
17 wasteful for the discovery that's taken in 2004 to be
18 replicated again.  And in the case of Ms. Prokopse, that's
19 already happening.  Enough already.
20          I recognize that the 2004 sword is more properly
21 used by the debtor than by the creditor in this instance.
22 And so discovery from third parties and discovery from Giant
23 Stadium and discovery from Goal Line may be more appropriate
24 than discovery from the debtor.  But that does not mean that
25 some discovery from the debtor is not also to be part of

Page 59

1  this process.
2           One of the mysteries from the perspective of the
3  Court is that this third party discovery and discovery from
4  others is so critical from the debtor's perspective in being
5  able to formulate its own position with respect to the
6  claim.  But I accept the representations made that ongoing
7  2004 discovery is needed in order for the debtor to complete
8  its investigation to use its words.
9           I would ask the parties to report the results of
10 these efforts at the December omnibus hearing.  You don't
11 have to the point of an agreement, in fact, you could be to
12 the point of no agreement.  I'd like to know that, in which
13 case I will then be able to either rule or take this matter
14 under advisement, but I have I think provided sufficient
15 guidance here to suggest that what I consider to be an
16 appropriate result is reasonable discovery going in both
17 directions with the understanding that the need for that
18 discovery is more obviously greater for the debtor.  And
19 this is not an example of gotcha because I am indicating in
20 agreement that continued 2004 discovery is appropriate for
21 the debtor and the debtor's benefit.
22          I'm also noting the time's up in effect.  This has
23 to come to a conclusion.  And I don't expect there to be
24 another discovery dispute between the parties until there's
25 active litigation between you.  And I hope that doesn't

Page 60

1  occur at that point either.  So I'll hear from you next
2  time.
3           MR. CLARK:  Your Honor, just a question of
4  clarification.  How does the January 1st deadline fit with
5  the next omnibus hearing?  I'm not --
6           THE COURT:  I don't know.
7           MR. CLARK:  Okay.
8           THE COURT:  I'm just looking for a status report at
9  the next omnibus hearing.  And if it doesn't fit well for
10 the parties, it can always be put off, and then we can make
11 that a telephone conference.
12          MR. CLARK:  Thank you, Your Honor.
13          MS. MARCUS:  Your Honor, the December hearing is
14 December 19th.
15          THE COURT:  18th?
16          MS. MARCUS:  19th.
17          THE COURT:  That seems like a perfect date for a
18 status report.
19          MR. MARGOLIN:  The omnibus hearing is on December
20 12th, Your Honor.
21          THE COURT:  Why am I hearing different dates?
22          MS. MARCUS:  Sorry.  Sorry, Your Honor.  December
23 12th, sorry about that.
24          THE COURT:  December 12th is a perfect date, too.
25 Either one's fine.