JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Jayant W. Tambe
Benjamin Rosenblum

*Attorneys for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------X
                                          :
In re:                                    :    Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    Case No. 08-13555 (JMP)
                                          :
                 Debtors.                 :    (Jointly Administered)
                                          :
---------------------------------------------------------------X
```

**LBHI'S OPPOSITION TO CLAIMANTS' MOTION**
**TO WITHDRAW CLAIMS 32395 AND 22671 PURSUANT TO**
**RULE 3006 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), on behalf of

itself as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), by and through its

undersigned counsel, as and for its Opposition to the Motion of Dr. H.C. Tschira Beteiligungs

GmbH & Co. KG and Klaus Tschira Stiftung GGmbH ("Claimants") to Withdraw Claims 32395

and 22671 Pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure, respectfully

states as follows:

## INTRODUCTION

1.      On July 18, 2013, Claimants moved to withdraw, with prejudice, claims 32395 and 22671 (the "Claims") [ECF No. 38809] (Claimants' "Motion to Withdraw"), totaling over $600 million and filed under penalty of perjury nearly four years ago.

2.      Claimants concede, as they must, that pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure, they "may not withdraw the [C]laim[s] except on order of the court" because Lehman has objected to the Claims. And, while Claimants pay lip service to the requirement in Rule 3006 that any such "order *shall* contain such terms and conditions as the Court deems proper," Claimants' proposed order imposes no terms and conditions at all on the withdrawal. Fed. R. Bankr. P. 3006 (emphasis added). To the contrary, in their proposed order, in contravention of Rule 3006 and well-settled case law, Claimants seek to preserve for themselves purported "defenses (including, without limitation, setoff and/or recoupment)" that are conclusively and fully barred by a withdrawal with prejudice. Claimants' Proposed Order at 1-2, July 18, 2013 [ECF No. 38818].

3.      Claimants suggest that they somehow are compelled to withdraw the Claims because "LBHI has made it clear that it intends to broaden the scope of this matter in the hopes of extracting a ruling or finding that LBF can use to undermine the Tschira Entities' claims in the Swiss Proceedings." Mot. to Withdraw ¶ 3. That contention, the only excuse offered for the Motion to Withdraw, is patently false. As discussed below, the issues that LBHI seeks to litigate and resolve in this matter are precisely the same issues on which the Claims have been premised for the past four years. And, when only seven weeks ago, Claimants argued that this Court should stay these proceedings in favor of proceedings between Claimants and Lehman Brothers Finance SA – Netherlands Antilles branch ("LBF") in Switzerland (the "Swiss Proceedings"), they argued repeatedly that their Claims as well as the Swiss Proceedings centered on the

interpretation of the English-law governed agreements at issue here (the "ISDA Agreements").

Hr'g Tr. 20:10-18; 20:23-21:1, June 13, 2013; Claimants' Resp. to the Four Hundred Second

Omnibus Objection to Claims (No Liability Derivatives Claims) [ECF No. 37755] ¶¶ 2, 17, 20

(Claimants' "Response").[1]

4.    Claimants next suggest that their Motion to Withdraw is somehow blessed by this

Court and argue that "this Court previously indicated its desire to avoid issuing any ruling that

could adversely impact the Swiss Proceedings . . . ." Mot. to Withdraw ¶ 3.  That contention not

only mischaracterizes the record, but also seeks improperly to minimize the legal impact of

*Claimants'* unilateral decision to withdraw their Claims with prejudice.  As detailed below, a

withdrawal with prejudice is as a matter of law equivalent to a dismissal with prejudice and

"constitutes a final judgment with the preclusive effect of '*res judicata* not only as to all matters

litigated and decided by it, but as to all relevant issues which could have been but were not raised

and litigated in the suit.'"  *See Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (quoting

*Heiser v. Woodruff*, 327 U.S. 726, 735 (1946)); *see also In Re 20/20 Sport Inc.*, 200 B.R. 972,

979 (Bankr. S.D.N.Y. 1996) (holding a motion to withdraw a proof of claim under Fed. R.

Bankr. P. 3006 is governed by same considerations as motions for voluntary dismissal under

Fed. R. Civ. P. 41(a)).  LBHI is concerned that, under the bare bones order proposed by

Claimants, they may well feel free to assert in a foreign jurisdiction that their withdrawal with

prejudice somehow is not, as a matter of U.S. law, the functional equivalent of a final

adjudication on the merits.

---

[1]    References in the form "Hr'g Tr. __:__" are to the hearing transcript excerpts annexed to the
accompanying Declaration of Jayant W. Tambe, dated July 24, 2013 ("Tambe Decl.").  Other documents and
transcripts cited herein are also included as exhibits to the Tambe Declaration, or as exhibits to the Declarations of
Ines Pöschel ("Pöschel Decl.") or Jonathan Nash QC ("Nash Decl."), as specified below.

5.     Finally, Claimants seek a withdrawal with prejudice on the premise that "[b]y withdrawing their claims, the Tschira Entities have provided LBHI with essentially all of the relief sought in its objection." Mot. to Withdraw ¶ 4. Not so. As detailed below, on or about April 22, 2013, just one week after LBHI filed its detailed objection to the Claims in this Court [ECF No. 36569], Claimants filed a submission in the Swiss Proceedings attaching multiple valuations Claimants had sought and obtained during the week of September 15, 2008. One of those valuations provided a *detailed* calculation of each transaction at issue (the "Transactions") *as of* September 15, 2008, and demonstrated that (i) it was "reasonably practicable" to determine Loss as of September 15, 2008, (ii) there were "commercially reasonable determinants of value" as of September 15, 2008 and (iii) Claimants possessed a valuation that demonstrated that *LBF*, not Claimants, was owed money as a result of the termination. Thus, *no* claim under LBHI's guarantee could ever arise. Nonetheless, for the past four years, Claimants have imposed on LBHI immense costs and expense in evaluating, investigating and responding to these Claims, which never should have been filed.

6.     Moreover, the same baseless valuations that Claimants now seek to abandon in this Court form the basis for Claimants' objection to the Settlement of March 27, 2013 by and between LBF and the "LBHI Parties," as such term is defined therein (the "LBF-LBHI Settlement") in the Swiss Proceedings. As detailed in the accompanying Declaration of Ines Pöschel, Swiss counsel to LBHI, Claimants are the ***sole*** objector to that settlement in Switzerland, and threaten significantly to delay substantial distributions to LBHI and its creditors. Because, as discussed below, a proper valuation conducted as of September 15, 2008 leaves Claimants with no claim against either LBHI or LBF, Claimants quite simply lack standing to object to the LBF-LBHI Settlement. Claimants' withdrawal with prejudice, and their

proposed order, does nothing to address the prejudice to Lehman from Claimants' conduct to date.

7.    To underscore that LBHI's rights are protected, Claimants' withdrawal of the Claims should only be permitted on the condition that this Court enter findings of fact and conclusions of law as if the Claims had been adjudicated on the merits, to ensure that the meaning of this withdrawal is unambiguous, ***especially*** to those foreign courts who may be asked to opine on its collateral estoppel effect.  Absent such findings of fact and conclusions of law, LBHI may find its rights prejudiced by Claimants' actions in foreign proceedings even when those actions would plainly be estopped had LBHI secured a judgment on the merits following a trial as opposed to a withdrawal of the claims with prejudice.  Without the Court issuing such findings, Claimants would be free to continue to make the same frivolous valuation arguments in multiple jurisdictions despite this Court's entry of a final judgment and order dismissing the Claims with prejudice in the United States, and in spite of the fact that such a dismissal would be equivalent to a full and fair adjudication on the merits.

8.    Accordingly, and for the reasons stated more fully below, LBHI respectfully requests that:

a)    The Motion to Withdraw be denied, and the Court proceed to a hearing on the merits on the schedule previously agreed to by the parties; or

b)    If the Court is inclined to grant the Motion to Withdraw, it be granted subject to each of the following terms and conditions, as set forth in the accompanying proposed draft order and final judgment[2]:

i.    A clear statement that the Court's dismissal of the Claims with prejudice has the force and effect of a final adjudication on the merits of all matters asserted in the Claims, as well as all matters which could

---

[2]    LBHI's proposed draft order and final judgment is annexed as Exhibit 1 to the Tambe Declaration.

have been but were not raised and litigated in connection with the Claims;

ii.  For the avoidance of any doubt, findings of fact and conclusions of law that:

    a)  The Early Termination Date with respect to the Transactions was September 15, 2008;

    b)  The ISDA Agreements required termination valuation to be conducted as of September 15, 2008, or as soon thereafter as reasonably practicable;

    c)  Claimants had in their possession since no later than September 19, 2008, valuations of the Transactions, conducted as of September 15, 2008;

    d)  Claimants have failed to demonstrate, on the merits, that it was not reasonably practicable to determine Loss as of September 15, 2008;

    e)  No guarantee claim against LBHI could arise because it was reasonably practicable to conduct a valuation of the terminated Transactions, which demonstrated that, as of September 15, 2008, it was *LBF*, not Claimants, that was owed money as a result of the termination;

    f)  In addition, under section 562 of the Bankruptcy Code, Claimants were obligated to measure damages as of September 15, 2008;

    g)  Claimants have failed, on the merits, to prove that there were "no commercially reasonable determinants of value" as of September 15, 2008;

    h)  No guarantee claim against LBHI could arise because there existed commercially reasonable determinants of value as of September 15, 2008, which demonstrated that it was *LBF*, not Claimants, that was owed money as a result of the termination;

    i)  Claimants are foreclosed from asserting setoff and/or recoupment as defenses to any claim brought by LBHI;

    iii.    Claimants shall, no later than ten (10) days following entry of the Court's final judgment and order dismissing the Claims with prejudice, produce all documents in their possession, custody or control responsive to LBHI's Request for the Production of Documents, dated June 21, 2013; and

    iv.    Claimants shall reimburse LBHI for all reasonable attorneys' fees, costs and expenses, including costs and fees associated with LBHI's engagement of experts in connection with the Claims.

## STATEMENT OF FACTS

9.    The dispute arises out of guarantee claims filed against LBHI concerning two ISDA Master Agreements entered into between LBF and each of the Claimants, a total of four Transactions. As agreed upon by the parties, all Transactions under those two ISDA Agreements terminated automatically on September 15, 2008, upon the filing of LBHI's bankruptcy petition (the "Early Termination Date"). The plain language of the ISDA Agreements, as well as section 562 of the Bankruptcy Code, require Claimants to value their claims against LBHI as of the Early Termination Date. Notwithstanding this clear contractual and statutory mandate, the Claimants have valued their claims against LBHI as of October 16, 2008.

**The Proceedings in This Court**

10.    On September 21, 2009, Claimants filed the Claims at issue, which amount to "not less than" a total sum of $604,969,652.43.

11.    In response to the Derivatives Questionnaire filed in support of their Claims, Claimants identified the following contracts when asked to list the "agreements under which your claim arises:"

    The documents supporting Klaus Tschira Stiftung gGmbH's claim against Obligor have been uploaded above. Such documents include, without limitation (including all exhibits, annexes and schedules relating thereto, and all as amended, modified or supplemented from time to time): (i) ISDA Master Agreement, dated May 16, 2007; (ii) Variable Forward Transaction, dated May 23, 2007; (iii) Variable Forward Transaction,

dated April 18, 2008; and (iv) all other documents, agreements and correspondence relating to the foregoing.

12.      In exhibits appended to the Derivatives Questionnaire, Claimants annexed correspondence purporting to value the Transactions as of October 16, 2008.  Nowhere in these voluminous exhibits did Claimants even intimate, let alone disclose, that by no later than September 19, 2008, Claimants had solicited and obtained multiple valuations of the terminated Transactions.

13.      On April 15, 2013, LBHI filed its Supplemental Four Hundred Second Omnibus Objection to Claims 32395 and 22671 (No Liability Derivatives Claims) [ECF No. 36569] (LBHI's "Supplemental Objection"), in which LBHI requested that the Court "(i) disallow and expunge claim numbers 32395 and 22671 and (ii) award such further relief as the Court deems just and proper."  Supplemental Objection at 9.

14.      On June 5, 2013, Claimants filed their Response.  On June 11, 2013, LBHI filed a Reply in Further Support of the Objection [ECF No. 37860] and Declaration of Matthew Chow in Support of the Objection [ECF No. 37861].

15.      In their Response, Claimants declared that "LBHI's obligations as guarantor are completely derivative of, and coextensive with, LBF's obligations under the ISDA Agreements." Resp. ¶ 2.  Conceding that their Claims necessarily implicated questions of contract interpretation arising under the English-law governed ISDA Agreements, Claimants argued that they "should not have to litigate the interpretation of an English-law governed ISDA agreement in two courts at the same time . . . ."  Resp. ¶ 17.   Indeed, Claimants went one step further, when they contended that this case involved the same primary issue as the Swiss Proceedings: "interpretation of an English-law governed ISDA and the rights of a Swiss company under that ISDA in Swiss insolvency proceedings."  Resp. ¶ 20.

16.     Going further still, Claimants argued that they would prevail on the merits because English law supposedly favored Claimants' interpretation of the relevant provisions of the ISDA Agreements.  Resp. ¶ 23.  At the court hearing held on June 13, 2013 (the "June 13 Hearing"), Claimants underscored this contention, arguing that: (i) "the substantive rights of the parties under the ISDA agreement will be determined under English law" and (ii) "this return of collateral issue . . . [is] relevant both under English law, which governs the ISDA and under section 562."  Hr'g Tr. 20:11-12; 20:23-21:1, June 13, 2013.

17.     Additionally, both in their Response and at the June 13 Hearing, Claimants argued that the Court's interpretation of section 562 of the Bankruptcy Code also should be shaped by English law.  Hr'g Tr. 20:25-23:18, June 13, 2013; Resp. ¶ 25.  At the June 13 Hearing, counsel for Claimants, invoking the purported legislative history of section 562, argued that "the relevant state law standards that govern the creditor's rights under the ISDA agreement here is England."  Hr'g Tr. 25:10-11, June 13, 2013.  In fact, Claimants insisted that the Court take English law into account even when the Court stated that "I have the discretion – respond to this please – to completely ignore applicable English law . . . ."  Hr'g Tr. 24:7-8, June 13, 2013.

18.     Claimants have no tenable position under English law.  As evidenced by the accompanying Declaration of Jonathan Nash, QC, a leading authority on the interpretation of ISDA Master Agreements under English law: (i) September 15, 2008 was the Early Termination Date; (ii) the quotations as of September 15, 2008 obtained by Claimants no later than September 19, 2008 provide irrefutable proof that the Transactions were susceptible of, and the ISDA Agreements therefore required, valuation as of September 15, 2008; (iii) that it was accordingly "reasonably practicable" to value the Transactions as of September 15, 2008; and (iv) that the availability or unavailability of the Pledged Shares, as defined in the governing agreements, the

sole basis for Claimants' delayed October 16, 2008 valuation, is ***utterly irrelevant*** as a matter of English law.

19.    In their Response and at the June 13 Hearing, Claimants alluded to the fact that they had approached "three market makers with expertise" – JPMorgan, Goldman Sachs and Investment Bank Mediobanca p.p.A. ("Mediobanca") – to seek valuations for the terminated Transactions.  Resp. ¶ 10; Hr'g Tr. 21:18-25, June 13, 2013.   In those representations to the Court, Claimants artfully avoided any mention of the facts that (i) Claimants had received *responses* from all three market markers no later than September 19, 2008; (ii) one of those responses, from Mediobanca, contained a detailed, 15-page, valuation of each of the Transactions as of September 15, 2008; and (iii) that valuation demonstrated that, as of September 15, 2008, *LBF* was owed money, not Claimants.  Of course, Claimants' submissions to this Court also neglected to include copies of these valuation communications.

20.    On June 21, 2013, LBHI served a single document request on Claimants seeking production of any and all valuations of the terminated Transactions performed by or at the request of Claimants.  Tambe Decl. Ex. 4, p. 4.  Claimants served a wholesale objection to the document request on July 16, 2013.  Tambe Decl. Ex. 5.  Among other reasons, Claimants refused to produce valuation documents, and have not produced any documents, on the basis that (i) the documents sought allegedly were available to LBHI through public filings elsewhere – probably Switzerland (although Claimants do not so specify); and (ii) "they intend to withdraw their claims, thereby obviating the need for document discovery."  Tambe Decl. Ex. 5, p. 5.

21.    As instructed at the June 13 Hearing, LBHI and Claimants promptly met and conferred to agree upon an expedited schedule for discovery and briefing, with an anticipated hearing well before the end of September 2013.  Hr'g Tr. 37:1-9, June 13, 2013.  Specifically, the parties agreed that: (i) opening expert reports were to be served on July 19, 2013; (ii) rebuttal

expert reports were to be served on August 2, 2013; (iii) expert depositions were to take place

between August 5 and August 16, 2013; (iv) opening briefs were to be filed and served on

August 28, 2013; (v) responsive briefs were to be filed and served on September 13, 2013; and

(vi) the parties agreed to be ready to appear before the Court for a hearing between September

16, 2013 and September 20, 2013.

22.     As detailed in the accompanying Declaration of Daniel J. Ehrmann, Managing

Director with Alvarez & Marsal ("Ehrmann Decl."), LBHI set about preparing for the anticipated

evidentiary hearing following the June 13 Hearing.  Among other things, in light of the expedited

schedule, LBHI promptly interviewed and retained potential expert witnesses concerning the

central issues in the case: the relevant principles of English law and the valuation of complex

financial derivative transactions.  Indeed, when Claimants filed their Motion to Withdraw on

July 18, 2013, LBHI's experts had substantially completed their opening reports, then due the

very next day, and had done considerable work in anticipation of filing rebuttal reports, due two

weeks thereafter, on August 2, 2013.  Ehrmann Decl. ¶ 12.

23.     On July 18, 2013, Claimants filed their Motion to Withdraw.

**The Swiss Proceedings**

24.     On April 22, 2013, one week *after* LBHI filed its Supplemental Objection,

detailing the bases why the Claims should be expunged and disallowed, Claimants filed with the

presiding Judge in the Zurich District Court a complaint against LBF, dated April 22, 2013,

challenging the determination that their claims had not been admitted to the schedule of claims

with respect to LBF's Swiss insolvency proceedings (Claimants' "Swiss Complaint").  The

Swiss Complaint is comprised of 256 numbered paragraphs, and over 90 appendices.  Attached

to the Swiss Complaint was the valuation correspondence Claimants had with JPMorgan,

Goldman Sachs and Mediobanca during the week of September 15, 2008.

25.    On or about September 19, 2008, Claimants received valuations for certain of the terminated Transactions from Goldman Sachs International ("GSI") in an email from Miles Cohen to Bernd Kammerlander.  The valuations contained therein were as of September 15, 2008.  These valuations are attached as Exhibit 2 to the Declaration of Ines Pöschel.

26.    On or about September 19, 2008, Claimants received valuations for all of the terminated Transactions, as of September 15, 2008, from Mediobanca in the form of a memorandum from Mediobanca – Equity Solutions to Uwe Feuersenger and Bernd Kammerlander.  These valuations are attached as Exhibit 1 to the Declaration of Ines Pöschel (the "September 15 Mediobanca Valuation").

27.    In describing the September 15 Mediobanca Valuation, Claimants alleged that the Mediobanca employees who conducted the valuation were former Lehman employees who had structured and implemented the Transactions with Claimants at Lehman.  Claimants further asserted that Mediobanca was thus most familiar with Claimants' transactions and possessed the necessary expertise to be able to give a correct assessment of the costs of a substitute transaction shortly after the collapse of Lehman Brothers.  Pöschel Decl. ¶ 4.

28.    The September 15 Mediobanca Valuation included adjustments for Mediobanca's cost for hedging its exposure to the replacement transactions, adjustments for the size of the transaction and adjustments for the very long maturity of the transactions.  After accounting for all of these adjustments, Mediobanca valued the four terminated Transactions as a payable by Claimants to Mediobanca in the amount of €28.22 million.  Pöschel Decl. Ex. 1, pp. 6, 8. Assuming, solely for purposes of this submission, the accuracy of that valuation, and taking into account the €100 million in independent collateral held by Claimants, the September 15, 2008 Mediobanca Valuation required Claimants to return to LBF approximately €72 million.  Thus,

pursuant to the September 15, 2008 Mediobanca Valuation – a valuation solicited and obtained by Claimants themselves – Claimants had **_no claim_** against either LBF or LBHI.

29.     Also on or about September 19, 2008, Claimants received an email from Daniel Little of JPMorgan International Bank Limited ("JPMI") to Bernd Kammerlander, in which JPMI expressed its willingness to enter into a total return swap hedging Claimants' exposure on the contracts.  Notably, the JPMI correspondence clearly stated that JPMI was prepared to proceed on the basis of cash collateral of 25%.  That is, JPMI was not insisting on Claimants posting SAP shares as collateral for a replacement transaction.  These communications are attached as Exhibit 3 to the Declaration of Ines Pöschel.

30.     In addition to the Swiss Complaint, and in an effort to secure some negotiating leverage against LBHI, Claimants have sought to object to the LBF-LBHI Settlement of March 27, 2013.  As the Court is well aware, the Settlement was the result of years of extensive negotiations between LBHI and LBF, and resulted in the comprehensive settlement of claims with one of LBHI's material foreign affiliates.  Prior to the Settlement, LBF had asserted some of the largest claims against LBHI.  In particular, LBF initially filed claims against LBHI aggregating to approximately $59.3 billion. Although LBF filed amendments to these claims on December 13, 2011 that reduced LBF's aggregate claims against LBHI to approximately $15.4 billion, LBF's claims against LBHI remained extraordinary and among the largest Disputed Claims (as defined in the Plan) that remained unresolved against LBHI.  LBHI vigorously disputed LBF's claims.

31.     In addition, prior to the Settlement, LBHI had filed a substantial claim in the amount of approximately $14.2 billion against LBF in LBF's bankruptcy proceeding, based primarily on intercompany loan transactions.  LBF vigorously disputed LBHI's claims, including on the basis that it may have offsetting claims against LBHI under Swiss law.

32.    After extended negotiations, LBHI and LBF reached an economic resolution of the legal disputes summarized above.  Pursuant to the LBF-LBHI Settlement, approved by this Court on April 25, 2013, in full and final settlement of all of the intercompany claims between LBF and LBHI, LBHI will receive (i) an allowed claim against LBF in an amount equal to CHF 9.548875 billion (corresponding to $8.75 billion converted to Swiss Francs at the rate of USD/CHF 1.0913) (the "LBHI Claim") and (ii) assignment from LBF of LBF's claims against certain of LBHI's affiliates.  In addition, under the Settlement Agreement, LBF will have an allowed claim against LBHI in the amount of approximately $942 million on account of LBHI's guarantee of certain securities owned by LBF.  In the April 25, 2013 Order, this Court stated that it "shall retain jurisdiction with respect to all matters arising from or related to the interpretation and implementation of this matter."  Order Pursuant to Rule 9019 of the Fed. R. Bankr. P. for Approval of Settlement Agreement with Lehman Brothers Finance AG (in Liquidation), dated April 25, 2013 [ECF No. 36866].

33.    The LBF-LBHI Settlement positions LBF to begin making billions of dollars in distributions to its creditors, including LBHI.  For these reasons, this Court concluded that the LBF-LBHI Settlement is "mutually beneficial to the LBHI estate and also to the estate of Lehman Brothers Finance AG in Liquidation in Switzerland."  Hr'g Tr. 24:9-11, Apr. 24, 2013.

34.    As stated in the accompanying Declaration of Ines Pöschel, from a Swiss procedural point of view, the Settlement Agreement required approval of the Creditors' Committee, which was granted on April 24, 2013.  Further, two rights were to be granted to all creditors as follows:

(1)    Any LBF creditor was allowed to request assignment of the right to pursue all claims of LBF against the LBHI Parties and the right to object to the LBHI Parties' claims against LBF, subject to deposit of an amount of CHF 7 billion as settlement interest, within 20 days after the relevant publication, *i.e.*, no later than 22 May 2013.

(2)    Any LBF creditor was informed about the so-called realization plan with respect to the LBF-LBHI Settlement and the assignment of claims against affiliates by LBF to LBHI.  According to the applicable Swiss rules, LBF creditors were entitled to demand an appealable order from the Swiss Financial Market Supervisory Authority ("FINMA") relating to the LBF-LBHI Settlement within 20 days after relevant publication, *i.e.*, no later than 22 May 2013.

Pöschel Decl. ¶ 8.

35.    No creditor of LBF has requested an assignment as per paragraph 33(1) above within the relevant time period.  *Id.* ¶ 9.  The Claimants were the only creditors that have asked for an appealable order as per paragraph 33(2) above.  *Id.* ¶ 10.

36.    It is anticipated that FINMA will issue an appealable order in the coming weeks. It is further anticipated that FINMA's order will fully approve the LBF-LBHI Settlement. Claimants will have 20 days thereafter to file a challenge against the FINMA order with the Swiss Federal Administrative Court.  Claimants' challenge to the FINMA order could take not less than 14 to 18 months to resolve.  However, procedural delays could further prolong the resolution of Claimants' challenge.  *Id.* ¶¶ 12-13.

37.    Except for the expected challenge from Claimants, the LBF-LBHI Settlement is to be effective as soon as the last condition, as specified in Section 5.2(e) of the LBF-LBHI Settlement, is satisfied.  *Id.* ¶ 14.

38.    Thus, Claimants are the only party threatening to impede the consummation of a settlement that this Court has already approved and recognized as a significant achievement and of great benefit to LBHI's legitimate creditors:

I'm pleased to approve this transaction, which is mutually beneficial to the LBHI estate and also to the estate of Lehman Brothers Finance AG [in] Liquidation in Switzerland. . . .  [N]egotiations leading up to this resolution have been going on for approximately four years.  That's an extraordinarily long time to be negotiating anything.  It is at least one indication of how remarkably complicated these interrelationships are, particularly when dealing with law that is not clearly erroneous.  I think it is a significant achievement in the annals of cross-border insolvency and a testament to the capacity of well-informed professionals and others involved in the process to reconcile their differences.  And to that extent, is

important precedent, particularly in cases such as this that involve enterprises that operate across borders.

Tr. of Hr'g 24:8-25:1, Apr. 24, 2013.

## ARGUMENT

39.    Federal Rule of Bankruptcy Procedure provides that once an objection has been filed, a claim may not be withdrawn "except on order of the court," and such "order ***shall*** contain such terms and conditions as the Court deems proper."  Fed. R. Bankr. P. 3006 (emphasis added).

40.    A motion to withdraw a proof of claim under Bankruptcy Rule 3006 should not be granted if it results in legal prejudice.  *Chateaugay Corp. v. LTV Corp.* (*In re Chateaugay Corp.*), 165 B.R. 130, 133 (S.D.N.Y. 1994) ("[O]nce a claim is objected to, the claim should be heard by the bankruptcy court.  Withdrawal of the claim will not necessarily eliminate its impact on the debtor." (citing 8 Collier on Bankruptcy ¶ 3006.01 (15th ed. 1987))); *In re Agway, Inc.*, Nos. 02-65872 to 02-65877, 2008 WL 6786754 (Bankr. N.D.N.Y. Dec. 16, 2008) (holding liquidating trustee's interests would be "legally prejudiced," if after "receiv[ing] an unfavorable ruling in this Court and the District Court, [Claimant] apparently believes its best approach is to 'take its ball and go home' . . . before the [trustee] has had its final opportunity at bat"); *In re Armstrong*, 215 B.R. 730, 732 (Bankr. E.D. Ark. 1997) (stating that a motion to withdraw a proof of claim should in most instances be granted "unless the result is legal harm to another party in interest" and that factors to be considered by the Court are "prejudice to others [and] the importance of the claim to reorganization efforts"); 9 Collier on Bankruptcy ¶ 3006.01 (16th ed. rev. 2010) (stating that "once a claim is objected to, the claim objection should be heard by the bankruptcy court" because, *inter alia*, "a hearing on a claim objection may dispose of issues relevant in other proceedings").

41.     Precedent under Federal Rule of Civil Procedure 41 applies equally to motions for voluntary withdrawal under Bankruptcy Rule 3006.  *See* Fed. R. Bankr. P. 3006 advisory committee note ("This rule recognizes the applicability of the considerations underlying Rule 41(a) F.R.Civ.P. to the withdrawal of a claim after it has been put in issue by an objection.").

42.     The Second Circuit, in *Zagano v. Fordham University*, 900 F.2d 12 (2d Cir. 1990), has set forth the relevant considerations under Rule 41(a):

> Factors relevant to the consideration of a motion to dismiss without prejudice include the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss.

*Id.* at 14; *see also In re 20/20 Sport, Inc.*, 200 B.R. 972, 979 (Bankr. S.D.N.Y. 1996) (interpreting Rule 3006; citing *Zagano*).

43.     Here, Claimants concede that the withdrawal they seek is one with prejudice, akin to a dismissal with prejudice.  As the Second Circuit has held, "[a] dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action."  *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986).  Indeed, it is well settled that a dismissal with prejudice has the preclusive effect of *res judicata* not only as to all matters litigated and decided by the court, but as to all relevant issues which could have been but were not raised and litigated in the action.  *Id.* at 61 ("Such a dismissal constitutes a final judgment with the preclusive effect of 'res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.'" (quoting *Heiser v. Woodruff*, 327 U.S. 726, 735 (1946))); *see also Quincy Mall v. Parisian, Inc.*, 117 F. Supp. 2d 784, 788 (C.D. Ill. 2000) (upholding collateral estoppel effect of voluntary withdrawal with prejudice because "[a]ll triable issues,

including all damage issues, were fully litigated before the Bankruptcy Court for collateral estoppel purposes").

44.     Thus, under settled precedent, Claimants' withdrawal with prejudice necessarily is the functional and legal equivalent of a final adjudication on the merits of the Claims in favor of LBHI.  Moreover, it is also the equivalent of a final adjudication in favor of LBHI of all matters that were actually raised or could have been but were not raised by Claimants.

45.     The sole basis Claimants offer for their Motion to Withdraw with prejudice is their contention that LBHI "intends to broaden the scope of this matter in the hopes of extracting a ruling or finding that LBF can use to undermine the Tschira Entities' claims in the Swiss Proceedings."  Mot. to Withdraw ¶ 3.  Apparently, what Claimants are concerned of is LBHI's intention to litigate all the issues implicated by the Proofs of Claim, including but not limited to (i) the interpretation of the ISDA Agreements that form the basis for the Claims, and (ii) the applicability and effect of section 562 of the Bankruptcy Code.  As demonstrated above, none of these issues have been injected into the Claims by LBHI.  To the contrary, it is Claimants who have consistently and repeatedly argued (so long as it suited their needs) that their Claims are premised on the English-law governed ISDA Agreements.  *See* discussion *supra* ¶¶ 9-16.

46.     Far from seeking to avoid LBHI's anticipated use of a ruling by this Court, what Claimants actually are seeking is a result in this Court that would enable Claimants to argue in the Swiss Proceedings (or in any other forum) that this Court did not fully and finally resolve against the Claimants all issues that were actually raised or could have been raised by them.   So, while, on the one hand, Claimants purport to withdraw their Claims with prejudice, on the other hand, they seek to "further reserve their right to continue pursuing their claims against LBF in the Swiss Proceedings, as the Claims to be withdrawn in this action are only those asserted against LBHI (not LBF)."  Mot. to Withdraw ¶ 25.  In addition, even as they purport to withdraw

their claims with prejudice, Claimants purport to "expressly reserve their right to assert claims

for setoff and/or recoupment by way of defense should LBHI assert any affirmative claims

against the Tschira Entities . . . ." *Id.* ¶ 25. These so-called reservations of rights are nothing

less than an attempt impermissibly to cabin the *res judicata* effect of Claimants' withdrawal with

prejudice.

47.    To be sure, LBHI does not seek adjudication by this Court of what effect the

withdrawal with prejudice would have in the Swiss Proceedings. As a matter of Swiss law, a

determination on the merits against Claimants – which is what a withdrawal with prejudice is as

a matter of U.S. law – may or may not collaterally estop Claimants from pursuing some or all of

the actions they are currently pursuing, or may in the future pursue, in Switzerland or elsewhere.

By the same token, it would be improper for Claimants to contend that this Court has held that

the withdrawal with prejudice does not collaterally estop Claimants' actions in Switzerland or

elsewhere. Nor would it be proper for Claimants to contend that a withdrawal with prejudice is

somehow not the functional equivalent of a determination on the merits and against Claimants of

all issues that were raised or could have been raised in the Claims.

48.    Apparently, recognizing that they have a losing claim in *every jurisdiction*, what

Claimants are now seeking is to avoid an imminent ruling on the merits by this Court so as to

duck any conceivable collateral estoppel effect in the Swiss Proceedings or elsewhere. But

because the withdrawal they seek is one "with prejudice," the distinction they seek to draw is one

without a difference.

49.    To underscore that LBHI's rights are protected, Claimants' withdrawal of the

Claims should only be permitted on the condition that this Court enter findings of fact and

conclusions of law as if the Claims had been adjudicated on the merits, to ensure that the

meaning of this withdrawal is unambiguous, ***especially*** to those foreign courts who may be asked

to opine on its collateral estoppel effect.  Absent such findings of fact and conclusions of law,
LBHI may find its rights prejudiced by Claimants' actions in foreign proceedings even when
those actions would plainly be estopped had LBHI secured a judgment on the merits following a
trial as opposed to a withdrawal of the claims with prejudice.

50.    Without the Court issuing such findings, Claimants would be free to continue to
make the same frivolous valuation arguments in multiple jurisdictions despite this Court's entry
of a final judgment and order dismissing the Claims with prejudice in the United States, and in
spite of the fact that such a dismissal would be equivalent to a full and fair adjudication on the
merits.  *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955) (holding judgment was
"unaccompanied by findings and hence did not bind the parties on any issue . . . which might
arise in connection with another cause of action"); *Motrade v. Rizkozaan, Inc.*, No. 95-cv-6545,
1998 WL 108013, at *5 (S.D.N.Y. Mar. 11, 1998) ("To have a preclusive effect on specific
issues or facts, however, a voluntary dismissal also must be accompanied by specific findings
sufficient for a subsequent court to conclude that certain matters were actually decided.").

51.    In their Motion, Claimants argue that there should be no claim or issue preclusive
effect against LBF in the Swiss Proceedings because "the Claims to be withdrawn in this action
are only those asserted against LBHI (not LBF)."  Mot. to Withdraw ¶ 25.  Yet Claimants do not
cite any case indicating why this distinction is meaningful in light of the fact that the Claims
asserted by Claimants against LBF are premised on *identical* facts and legal issues as those in
this case.  Indeed, in advancing the proposition that their proposed withdrawal with prejudice
should not have preclusive effect, Claimants cite cases from various district courts that are
readily distinguishable.  In those cases, the courts declined to condition withdrawal on a finding
of preclusive effect *as to abstract issues* that *had not been actually litigated.  See In re*
*Appleseed's Intermediate Holdings LLC*, No. 11-10160 KG, 2012 WL 6629624, at *5 (Bankr. D.

Del. Dec. 20, 2012) ("The Court has not heard oral argument on the merits or issued findings, preliminary or otherwise.  Thus, the Court finds that the issue has not been actually litigated."); *In re Einstein/Noah Bagel Corp.*, 257 B.R. 499, 511 (Bankr. D. Ariz. 2000) (finding "issue was never actually litigated . . . .").  In this case, on the other hand, Claimants themselves have repeatedly admitted that the issues presented under their Claims against LBHI are identical to the claims they pursue against LBF.  Moreover, those issues have already been subject to briefing and argument before this Court, and but for Claimants' attempt to truncate these proceedings, would have been fully aired.[3]

### LBHI Is Entitled to Attorneys' Fees and Expenses

52.    In any event, Claimants should be required to reimburse LBHI for all of its reasonable expenses, costs and attorneys' fees incurred in connection with these Claims.  The Court has the inherent authority to award fees when a party litigates frivolously or in bad faith. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (noting the Court's inherent power to award attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]" (internal quotations omitted)).  Claimants sought recovery of over $600 million on the basis of an October 16, 2008 valuation, notwithstanding that they have possessed – since September 19, 2008 – a valuation of the terminated Transactions as of September 15, 2008.  It strains credulity and good faith for Claimants to have pressed their demands in the face of section 562 of the Bankruptcy Code, and the requirements of the ISDA Agreements and well-settled English law.  *See* Nash Decl. ¶¶ 6-42.

---

[3]    As a matter of U.S. law, if this matter were litigated to conclusion on all the issues presented by the Claims, including the contract interpretation issues, and LBHI prevailed, then Claimants arguably could be collaterally estopped from relitigating those contract interpretation issues in any other action against LBF.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002).

Certainly, no later than April 15, 2013, when LBHI filed its detailed Supplemental Objection, Claimants were on actual notice of the significant deficiencies in their Claims.

53.     Equally vexatious and dubious are Claimants' efforts to delay the consummation of the LBF-LBHI Settlement, considered at length and approved by this Court. Claimants are the only obstacle to that settlement agreement, and threaten to delay the distribution of significant assets to LBHI's legitimate creditors. The Court may legitimately conclude that Claimants are pursuing that objection for an improper purpose, effectively holding up the LBHI Estate.

## <u>CONCLUSION</u>

54.     For all of the foregoing reasons, LBHI respectfully requests:

a)     The Motion to Withdraw be denied, and the Court proceed to a hearing on the merits on the schedule previously agreed to by the parties; or

b)     The Motion to Withdraw be granted subject to each of the following terms and conditions, as set forth in the accompanying proposed draft order and final judgment:

i.     A clear statement that the Court's dismissal of the Claims with prejudice has the force and effect of a final adjudication on the merits of all matter asserted in the Claims, as well as all matters which could have been but were not raised and litigated in connection with the Claims;

ii.     For the avoidance of any doubt, findings of fact and conclusions of law that:

a)     The Early Termination Date with respect to the Transactions was September 15, 2008;

b)     The ISDA Agreements required termination valuation to be conducted as of September 15, 2008, or as soon thereafter as reasonably practicable;

c)     Claimants had in their possession since no later than September 19, 2008, valuations of the Transactions, conducted as of September 15, 2008;

d) Claimants have failed to demonstrate, on the merits, that it was not reasonably practicable to determine Loss as of September 15, 2008;

e) No guarantee claim against LBHI could arise because it was reasonably practicable to conduct a valuation of the terminated Transactions, which demonstrated that, as of September 15, 2008, it was *LBF*, not Claimants, that was owed money as a result of the termination;

f) In addition, under section 562 of the Bankruptcy Code, Claimants were obligated to measure damages as of September 15, 2008;

g) Claimants have failed, on the merits, to prove that there were "no commercially reasonable determinants of value" as of September 15, 2008;

h) No guarantee claim against LBHI could arise because there existed commercially reasonable determinants of value as of September 15, 2008, which demonstrated that it was *LBF*, not Claimants, that was owed money as a result of the termination;

i) Claimants are foreclosed from asserting setoff and/or recoupment as defenses to any claim brought by LBHI;

iii. Claimants shall, no later than ten (10) days following entry of the Court's final judgment and order dismissing the Claims with prejudice, produce all documents in their possession, custody or control responsive to LBHI's solitary Request for the Production of Documents, dated June 21, 2013; and

iv. Claimants shall reimburse LBHI for all reasonable attorneys' fees, costs and expenses, including costs and fees associated with LBHI's engagement of experts in connection with the Claims.

WHEREFORE, LBHI respectfully requests that the Court (i) deny Claimants' motion and direct the parties to resume expedited discovery and briefing, followed by a hearing and ruling on the merits, or (ii) grant Claimants' Motion to Withdraw subject to the conditions stated above.

Dated:  July 24, 2013                 JONES DAY
       New York, New York

                                   */s/ Jayant W. Tambe*
                                   Jayant W. Tambe
                                   Benjamin Rosenblum
                                   222 East 41st Street
                                   New York, New York  10017
                                   Telephone:  (212) 326-3939
                                   Facsimile:  (212) 755-7306

                                   *Attorneys for Lehman Brothers Holdings Inc.*