SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
George A. Zimmerman
Lauren E. Aguiar
Jeffrey S. Geier
Susan A. Arbeit
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Dr. H.C. Tschira Beteiligungs GmbH & Co. KG*
*and Klaus Tschira Stiftung gGmbH*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF GEORGE A. ZIMMERMAN IN SUPPORT OF MOTION OF DR.
H.C. TSCHIRA BETEILIGUNGS GMBH & CO. KG AND
KLAUS TSCHIRA STIFTUNG GGMBH TO WITHDRAW CLAIM NUMBERS 32395
AND 22671 PURSUANT TO RULE 3006 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE**

I, George A. Zimmerman, being fully sworn, hereby declare, under penalty of perjury,

that the following is true to the best of my knowledge, information, and belief:

1. I am an attorney admitted to practice before this Court and a member of Skadden,

Arps, Slate, Meagher & Flom LLP, attorneys for Dr. H.C. Tschira Beteiligungs GmbH & Co. KG

("KG") and Klaus Tschira Stiftung gGmbH ("KTS" and together with KG, the "Tschira Entities")

in the above-referenced chapter 11 cases.  Unless otherwise indicated, I have knowledge of the

facts set forth herein.

2.    I submit this declaration in support of the Motion of Dr. H.C. Tschira Beteiligungs

GmbH & Co. KG and Klaus Tschira Stiftung gGmbH to Withdraw Claim Numbers 32395 and

22671 pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure (the "Motion").

3.    A true and correct copy of the transcript of the June 13, 2013 Hearing in this matter

(pages 1 – 37 of the transcript) is attached hereto as Exhibit 1.


Dated:  July 26, 2013
        New York, New York

                                        */s/ George A. Zimmerman*
                                        George A. Zimmerman

878386-NYCSR06A - MSW

Exhibit 1

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555 (JMP)

4    Adv. Case No. 09-01062

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7    LEHMAN BROTHERS HOLDINGS INC., ET AL.,

8                 Debtors.

9     - - - - - - - - - - - - - - - - - - - - - - - - - - x

10     TURNBERRY CENTRA SUB, LLC, et al.,

11                 Plaintiffs,

12           v.

13   LEHMAN BROTHERS HOLDINGS, INC., et al,

14                 Defendants.

15   - - - - - - - - - - - - - - - - - - - - - - - - - - x

16                 U.S. Bankruptcy Court

17                 One Bowling Green

18                 New York, New York

19

20                 June 13, 2013

21                 10:04 AM

22

23   B E F O R E :

24   HON JAMES M. PECK

25   U.S. BANKRUPTCY JUDGE

Page 2

1   Hearing re:  Objection to Claim No. 62723 of Banesco

2   Holdings CA [ECF No. 37327]

3

4   Hearing re:  Four Hundred Second Omnibus Objection to Claims

5   32395 and 22671 (No Liability Derivatives Claims) [ECF No.

6   36006]

7

8   Hearing re:  Turnberry Centra Sub, LLC, et al. v. Lehman

9   Brothers Holdings Inc., et al. [Adversary Case No. 09-

10  01062].  Motion to Dismiss.

11

12  Hearing re:  Motion by Lehman Brothers Holdings Inc. and

13  Lehman Commercial Paper Inc. For an Order (i) Determining

14  that the LCPI Settlement was entered into in Good Faith

15  Pursuant to California Code of Civil Procedure paragraphs

16  877 and 877.6, and, Based on Such Good Faith Finding and for

17  Other Reasons, (ii) Disallowing and Expunging Proofs of

18  Claim Number 28845 and 28846 [ECF No. 36163]

19

20  Hearing re:  Debtors' Ninety-Seventh Omnibus Objection to

21  Claims (Insufficient Documentation) [ECF No. 14492]

22

23  Hearing re:  Debtors' One Hundred Twenty-Fifth Omnibus

24  Objection to Claims (Insufficient Documentation) [ECF No.

25  16079]

Page 3

1

2   Hearing re:  Debtors' One Hundred Thirty-Eighth Omnibus

3   Objection to Claims (No Liability Derivatives Claims) [ECF

4   No. 16865]

5

6   Hearing re:  Debtors' One Hundred Ninety-First Omnibus

7   Objection to Claims (Valued Derivative Claims) [ECF No.

8   19888]

9

10  Hearing re:  Three Hundred Twenty-Eighth Omnibus Objection

11  to Claims (No Liability Claims) [ECF No. 29323]

12

13  Hearing re:  Three Hundred Sixtieth Omnibus Objection to

14  Claims (Valued Derivative Claims) [ECF No. 31316]

15

16  Hearing re:  Three Hundred Ninetieth Omnibus Objection to

17  Claims (Valued Derivative Claims) [ECF No. 34044]

18

19  Hearing re:  Three Hundred Ninety-Fourth Omnibus Objection

20  to Claims (Valued Derivative Claims) [ECF No. 34728]

21

22  Hearing re:  Three Hundred Ninety-Eighth Omnibus Objection

23  to Claims (No Liability Derivatives Claims) [ECF No. 34732]

24

25  Hearing re:  Four Hundred Twelfth Omnibus Objection to

Page 4

1   Claims (Duplicative Claims) [ECF No. 37166]

2   Hearing re:  Debtors' Objection to Proof of Claim No. 66099

3   Filed by Syncora Guarantee, Inc. [ECF No. 20087]

4

5   Hearing re:  Plan Administrator's Omnibus Objection to

6   Claims Filed by Deborah E. Focht [ECF No. 34303]

7

8   Hearing re:  Objection to CMBS Claims and Request for

9   Subordination Pursuant to Sections 510(a)-(c) of the

10  Bankruptcy Code [ECF No. 36882]

11

12  Hearing re:  Merits Hearing With Respect to Proofs of Claim

13  Number 57069 and 45833

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Nicole Yawn, Jamie Gallagher, Pamela Skaw

Page 5

1   A P P E A R A N C E S :

2   WEIL, GOTSHAL & MANGES LLP

3        Attorneys for Debtors

4        767 Fifth Avenue

5        New York, NY 10153

6

7   BY:   JACQUELINE MARCUS, ESQ.

8        ALFREDO R. PEREZ, ESQ.

9        EDWARD MCCARTHY, ESQ.

10

11  JONES DAY

12       Attorneys for Debtors

13       222 East 41st Street

14       New York, NY 10017

15

16  BY:   JAYANT W. TAMBE, ESQ.

17       LOCKE R. MCMURRAY, ESQ.

18

19  KING & SPALDING

20       Attorneys for Debtors

21       1185 Avenue of the Americas

22       New York, NY 10036

23

24  BY:   SCOTT DAVIDSON, ESQ.

25       ARTHUR STEINBERG, ESQ.

Page 6

1    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

2         Attorney for KTS and Dr. Tschira

3         Four Times Square

4         New York, NY 10036

5

6    BY:  GEORGE A. ZIMMERMAN, ESQ.

7

8    MEISTER SEELIG & FEIN, LLP

9         Attorney for Plaintiffs, Turnberry Centra Sub, LLC

10        140 East 45th Street, 19th Floor

11        New York, NY 10017

12

13   BY:  CHRISTOPHER J. MAJOR, ESQ.

14

15   KIRKLAND & ELLIS, LLP

16        555 California Street

17        San Francisco, CA 94104

18

19   BY:  MARK MCKANE, ESQ.

20        MICHAEL ESSER, ESQ. (TELEPHONIC)

21

22

23

24

25

1   CHADBOURNE & PARKE, LLP

2        Attorney for Banesco Holdings

3        30 Rockefeller Plaza

4        New York, NY 10112

5

6   BY:  BONNIE DYE, ESQ.

7

8   APPEARED TELEPHONICALLY:

9   NICK MOURADIAN

10  MICHAEL NEUMEISTER

11  CHRISTOPH SCHMITT

12  MITCHELL SOCKETT

13  MICHAEL J. WALSH

14  MICHAIL ZEKYRGIAS

15

16

17

18

19

20

21

22

23

24

25

Page 8

```
1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Be seated, please.  Good morning.

4              MS. MARCUS:  Good morning, Your Honor.  Jacqueline

5    Marcus, Weil, Gotshal & Manges, on behalf of Lehman Brothers

6    Holdings, Inc. and its affiliates.

7              The first matter on the agenda this morning,

8    Your Honor, is an uncontested matter.  It pertains to the

9    objection to claim number 62723 of Banesco Holdings.

10             Lehman filed an objection to the claim of Banesco

11   and, since that time, has been engaged in discussions with

12   Banesco, and we've agreed to partially resolve the

13   objection.  So we have a form of revised order that Banesco

14   has approved, and it basically provides for the expungement

15   of one of the claims filed by Banesco and adjournment of the

16   hearing with respect to the other claim.

17             If I may, Your Honor, I have a blackline copy of

18   the order?

19             THE COURT:  You can hand that up.

20             Thanks.

21             MS. MARCUS:  And Ms. Dye is here on behalf of

22   Banesco, and I think she's going to confirm that we've

23   reached an agreement on the form of the order.

24             THE COURT:  You're so far away that, even if you

25   say you're in agreement, it won't be picked up by our
```

Page 9

1    recording equipment.

2         MS. DYE:  So I can come up to the podium?

3         THE COURT:  I think you're going to have to come

4    up and speak into a microphone, and please also identify

5    yourself for the record.

6         MS. DYE:  My name's Bonnie Dye.  I'm from

7    Chadbourne & Parke, and we represent Banesco Holdings, and

8    we agree with the proposed order as handed up to you this

9    morning, Your Honor.

10        THE COURT:  Thank you.

11        If I could just ask what's going to happen with

12   regard to the portion of this objection that's being

13   deferred to August 15th?

14        MS. MARCUS:  My understanding is that the parties

15   are continuing to discuss resolution of the claim.

16        UNIDENTIFIED SPEAKER:  That's correct.

17        MS. MARCUS:  So hopefully, there will be no need

18   to have a hearing, but I just can't assure the Court about

19   that.

20        THE COURT:  Understood, and, just for clarity --

21   I'm looking at the words in the blackline -- the response

22   deadline is August 15, and the matter is adjourned 'til

23   August 29.

24        MS. MARCUS:  That's correct.

25        THE COURT:  Okay.  That's fine.

1              MS. MARCUS:  Thank you, Your Honor.

2              Switching to the contested portion of the

3    calendar, Your Honor, the next matter, number two, will be

4    handled by Jay Tambe of Jones Day.

5              MR. TAMBE:  Good morning, Your Honor.  Jay Tambe

6    and Locke McMurray, from Jones Day, for debtor Lehman

7    Brothers Holdings, Inc.

8              This is LBHI's objection to claims number 32395

9    and 22671.  To the extent that any of the discussion rolls

10   over to a discussion of the LBHI, LBF Lehman Switzerland

11   settlement, I would defer to Mr. Perez from the Weil firm,

12   because I know he's intimately familiar, as is Your Honor,

13   with that settlement.

14             This hearing, Your Honor, is a legal sufficiency

15   hearing.  It is the basis of our objection that there is no

16   legal basis for the claim that has been submitted in these

17   two claims, 32395 and 22671.

18             Fundamentally, what you have here are a series of

19   derivatives contracts that were governed by the master

20   agreements.  Those contracts each contain automatic early

21   termination provisions so that, as soon as LBHI filed the

22   bankruptcy, each of those derivatives transactions was

23   terminated on September 15th, 2008.  There's no dispute as

24   to any of those issues.  What you have in these claims are

25   valuations that have been submitted not as of the early

Page 11

1   termination date, but as of a much later date, October 16th,

2   2008.

3           THE COURT:  What would be the difference in

4   valuation if the valuation had been done as of September 15,

5   2008 as opposed to the October date?

6           MR. TAMBE:  The claimants have not submitted any

7   valuation as of that date.  The debtors position is, as of

8   that date, based on the value of SAP stock, which is the

9   underlying, they, in fact, would have been a receivable to

10  LBF, and therefore, no claim with respect to Lehman Brothers

11  Holdings, Inc.

12          THE COURT:  Okay.

13          MR. TAMBE:  If I could briefly go into the

14  argument, Your Honor?

15          THE COURT:  Sure.

16          MR. TAMBE:  We have a small hearing binder with

17  just a couple of exhibits that I might want to draw your

18  attention to.  If I could hand those up, please?

19          THE COURT:  You may.

20      (Pause)

21          MR. TAMBE:  Your Honor, the following issues are

22  uncontested.  As I said, the early termination date is not

23  contested.  The fact that it was an automatic early

24  termination is uncontested.  It's uncontested that the

25  agreement required, in the first instance, for the

Page 12

1    calculation of the termination amount to be done as of the

2    early termination date, and it's uncontested that, under

3    section 562, September 15th, 2008 is the date on which the

4    contract should be valued, absent certain circumstances, and

5    the issue really is is there a basis to value these

6    contracts on a date other than September 15th, 2008.

7    Namely, is there a basis to value as of October 16th?

8              If I could draw your attention, Your Honor, to Tab

9    7 in the binder I just handed up.  Now, what Tab 7 is is a

10   stock price chart of SAP stock, and I've highlighted on that

11   stock price chart certain key events.  You have

12   September 15th, 2008, the early termination date.  You have

13   October 16th, 2008, which is the date as of which these

14   contracts were valued, and you've got December 1, 2008,

15   which is the date on which the valuation was actually done.

16             So you have a situation here where there is a

17   look-back valuation being done, and there's nothing wrong

18   with that.  We don't take issue with that.

19             However, the look-back doesn't look back to

20   September 15th, 2008.  The look-back only looks back to

21   October 16th.  Looking at the stock price chart, I could

22   speculate as to why that date was picked.  As you could

23   tell, there's a sharp dropoff in the SAP stock price from

24   mid-September to mid-October, and, while it's a complicated

25   set of derivatives transactions, quite simply, as the stock

Page 13

1      price of SAP went down, Lehman was out of the money.  All

2      right?  The stock price of SAP was high.  Lehman was in the

3      money.

4            Now, the rationale that's given for why when the

5      calculation was done in December -- it was done as of 10/16

6      as opposed to 9/15 is that well, it was only on 10/16/2008

7      that the claimants were told that they would not be getting

8      back certain collateral that had been posted with Lehman.

9      The calculation that was done on December 1, 2008 was done

10     on the basis of there being no return of collateral.

11           On December 1, they could just as easily have done

12     exactly the same type of calculation on the basis of no

13     return of collateral, but used the SAP stock price from

14     September 15th, 2008 as opposed to October 16th, 2008.  No

15     reason why they couldn't have used that stock price.

16     There's no reason why they have to do it as of October 16th,

17     2008, and the fact of the matter is it's not like they

18     entered into a replacement transaction on any particular

19     date.  This was a look-back valuation exercise.

20           The contract told them to do it as of 9/15.  562

21     of the bankruptcy code told them to do it as of 9/15.  They

22     chose to do it as of 10/16.

23           THE COURT:  Well, doesn't that get us into the

24     question of whether or not there is a justification to pick

25     a different date on account of the uncertainties surrounding

Page 14

1   the return of the collateral held by LBIE?

2            MR. TAMBE:  We would expect no, Your Honor,

3   because what they knew on December 1 when they did the

4   valuation is they would not be getting the collateral back.

5   That uncertainty that existed had been resolved by then.

6   Now, the simple question is now that that uncertainty has

7   been resolved, when do you apply that set of facts now to

8   the relevant values.

9            THE COURT:  I understand.

10           MR. TAMBE:  Now, --

11           THE COURT:  But it's their position.

12           MR. TAMBE:  It's their position.

13           THE COURT:  It's their position that there is some

14   justification for picking the 10/16 date, and --

15           MR. TAMBE:  And --

16           THE COURT:  -- you take the position that there is

17   no justification for any date other than September 15?

18           MR. TAMBE:  Absolutely.  I mean, if their

19   rationale is the reason it's 10/16 is because that's when

20   they learned they wouldn't be getting collateral back -- and

21   that's the only justification they've offered -- that's not

22   a reason for them not to calculate this as of 9/15.  Because

23   the test, again, is could they have calculated value, and

24   this was, in all instances, a look-back calculation.  Sure,

25   they could have calculated the value, because the

Page 15

1    calculation was done, not on 9/15, not on 10/16.  It was

2    done in December.

3           There's a further point that we've made in the

4    papers, and you don't have to reach it, but, if you need to

5    reach it, you could, and that has to do with whether it's

6    appropriate in any event to consider the posting of

7    collateral or whether collateral's available to be posted as

8    a matter of English law when you're doing this valuation,

9    and we've said that there's clear precedent from the Court

10   of Appeals in it (sic) that says under the 1992 master

11   agreement, when you do a valuation calculation, you do it on

12   the basis that all conditions precedent have been satisfied.

13   You assume that the collateral has been posted.  You assume

14   that all those conditions are satisfied.  You do it on a

15   value-clean basis.

16          So, even if you looked at the analysis from that

17   perspective and got to that level -- I don't think you need

18   to -- as a matter of English law, you'd have to calculate it

19   on 9/15, and this issue that they raised about the

20   availability of collateral would, in fact, be irrelevant.

21          THE COURT:  You're mentioning this law, and let me

22   just throw out a law school question that you probably have

23   the answer to.  There is a proceeding in Switzerland.  I

24   don't know all of the proceedings that are going on there,

25   but I've read about them, and I'm sure I'll hear about them

Page 16

1   from counsel for the claimant.

2           Do you know whether or not that proceeding in

3   Switzerland is applying principles of English law that

4   govern the transaction documents or applying Swiss law with

5   reference to the insolvency proceeding of LBF?  That's

6   question one, and question two is do you know if it is

7   permissible in the Swiss proceeding for the Swiss court to

8   consider the application of section 562 under our law,

9   because, as I'm understanding this, we have the law of at

10  least three jurisdictions that are implicated here.

11          We have a Swiss proceeding, which deals with the

12  main claim.  We have the U.S. bankruptcy proceeding, which

13  deals with the guarantee claim, and we have a choice of

14  governing substantive law, being the law of England and

15  Wales.  Do I have that right?

16          MR. TAMBE:  That's right, Your Honor.  Let me

17  maybe start with the second question first.

18          It is my understanding that the Swiss tribunal,

19  the Swiss court that's hearing the various Swiss

20  proceedings, will not, in fact, apply 562.  The 562 argument

21  is one that's raised by LBHI as a U.S. debtor --

22          THE COURT:  Yes.

23          MR. TAMBE:  -- in this forum.  The claim against

24  LBHI as guarantor is not present in the Swiss proceedings at

25  all.

1           THE COURT:  Okay.  So, if we get to the essence of

2      today's argument, which we actually haven't reached yet, it

3      is the request by the claimant that this proceeding be

4      stayed or deferred for six months in order to defer to the

5      Swiss tribunal, which you oppose, and one of the reasons

6      that you oppose it, I take it, is that we're able here to

7      apply section 562 principles and, based upon the movement of

8      the stock, make what amounts to a summary judgment

9      determination that this claimant has no claim.

10          MR. TAMBE:  That's right, Your Honor, and you can

11     make that determination as a threshold matter simply on the

12     basis that they have valued their claim as of the wrong

13     date.  The claim that has been submitted is valued

14     incorrectly, because it was valued as of the wrong date.

15          THE COURT:  Well, it's valued as of a date that,

16     under 562 language, you could argue is a permissible date

17     for valuation and that they would argue is not a permissible

18     date for valuation because of the collateral issue, which

19     you say is irrelevant.

20          MR. TAMBE:  That's right.  We would say, under

21     562, the permissible, the only permissible valuation date is

22     September 15th, 2008, unless they carry the burden of

23     demonstrating that there were no commercially-reasonable

24     determinates (sic) of value of that date, which they have

25     not done.

1           THE COURT:  Okay.  Let's continue with the

2     argument.

3           MR. TAMBE:  If I could turn to the stay argument,

4     we start with the premise that they claim that judicial

5     efficiency and avoidance of duplication should militate

6     (sic) this Court (sic) in staying its hand.  What we have

7     before the Court is a fully developed legal argument on 562

8     and the correct date for valuing the termination values.

9     It's our position no further submissions are needed on this.

10          Contrast that with what's going on in Switzerland,

11    where the proceedings have just gotten underway.  Tab 1 of

12    the binder I handed up, Your Honor, has some of the relevant

13    dates in it.  The first four dates deal with the

14    termination, but starting with March 15th, 2033, that's when

15    we filed the omnibus objection objecting to these claims in

16    their entirety.  March 25th, the claimants began the first

17    of multiple proceedings in Switzerland, and this was a

18    declaratory action against Lehman Switzerland in Zurich

19    District Court, so not only the bankruptcy proceeding, but

20    an ancillary or collateral proceeding in the Swiss courts

21    against LBF, not against LBHI.

22          Meanwhile, in this Court, we filed a more detailed

23    omnibus objection.  It was about a week after that that the

24    claimants first challenged Lehman Switzerland's zero

25    valuation of their claim in the LBF Swiss insolvency

Page 19

1   proceeding and then, more recently, less than a month ago,

2   they started yet another proceeding, and what they have done

3   there is object to the LBHI, LBF settlement.

4           So, to the extent they are complaining about

5   duplicative proceedings, they have started the duplicative

6   proceedings.  I mean, they are multiplying the proceedings

7   in Switzerland and saying aha, now we've got multiple

8   proceedings.  You've got to stay your hand here, Judge, even

9   though this is the only forum in which claims against LBHI

10  and LBHI's ability to invoke the protections of the

11  bankruptcy court are relevant.  Those issues aren't being

12  addressed anywhere else.

13          The standard against which any stay should be

14  measured -- and this comes from the Supreme Court decision

15  in Colorado River Water Conservation District.  The Court

16  has an unflagging obligation to exercise the jurisdiction

17  given to it and should stay a proceeding only under

18  exceptional circumstances, and we would submit, Your Honor,

19  they have not made out a case for exceptional circumstances.

20          THE COURT:  I agree.

21          MR. TAMBE:  Then I think I'll stop then with that

22  part of my argument here.  Happy to answer any questions the

23  Court might have, and I'll respond to whatever Mr. Zimmerman

24  has to say.

25          THE COURT:  I'll hear what Mr. Zimmerman has to

Page 20

1    say, but what he has to do is change my mind.

2          MR. ZIMMERMAN:  Good morning, Your Honor.  George

3    Zimmerman, representing KTS and Dr. Tschira, the claimants,

4    with my colleagues, Max Polonsky and Julie Cohen.

5          Let me change the entire order or my argument and

6    address and answer, from our perspective, the questions you

7    raised, because I think, frankly, you raised all the right

8    questions.  First, in the Swiss proceedings -- strike.  The

9    ISDA agreement, the underlying ISDA agreement is governed by

10   English law.  Nobody disputes that.  In the Swiss

11   proceedings, the substantive rights of the parties under the

12   ISDA agreement will be determined by English law.  In the

13   Swiss proceedings, the claimants have submitted a very

14   detailed evidentiary submission, about a hundred pages of

15   law and facts, evidentiary facts to take into account all

16   the factors that English law would look at to determine

17   whether there was a reasonable determinant of value on

18   September 15th, as Lehman says, or October 16th.

19         In those papers, the claimants also indicated --

20   because LBF obviously is going to get a chance to respond --

21   that they will be submitting an expert affidavit on English

22   law, precisely because the English law will be applied.

23   There is two issues about this return of collateral issue.

24   The reason -- and Lehman says that's irrelevant under

25   section 562.  Here's why it's relevant both under English

Page 21

1    law, which governs the ISDA and under section 562.

2         The English law affidavit will say, in sum and

3    substance, that, under English law, the reason there is

4    flexibility, albeit limited, to value either as of the early

5    termination date, or, if it's not reasonably practicable,

6    the earliest date thereafter as is -- the reason for that

7    flexibility is, under English law, to give the non-

8    defaulting party the opportunity to get, to try literally to

9    negotiate and get into and enter into an exact appropriate

10   replacement transaction, and, in fact, the claimants here

11   did -- whenever there's an early termination, a non-

12   defaulting party -- and you know this because you've been

13   involved with this -- can decide right away I don't want to

14   enter into a replacement transaction, and they can get a

15   quote, and you can argue about the quotes.

16        Other times, claimants do try to enter into

17   replacement transaction.  That's what happened here.

18   Claimants led to three market makers with expertise.  This

19   is a very exotic, complicated slope (sic).  It's very large.

20   There was very little market for it, and so, they went to

21   what they thought were the three primary experts in this

22   that could enter into transaction, and, because -- and this

23   is undisputed -- because there were discussions between the

24   claimants and Lehman entities -- and we can debate which

25   Lehman entities -- that led us to believe that the

Page 22

1    collateral would be released quickly, --

2            THE COURT:  That was LBIE, wasn't it?

3            MR. ZIMMERMAN:  No.  Okay, let me -- two answers

4    to that.  First, the submission in Switzerland says that

5    also included LBF, and they have the names of the LBF people

6    who are on the list, but, more to the point, the master

7    custody agreement that governs the placement of the shares

8    was a tripartite agreement, the claimants, LBIE, and LBF --

9    LBIE was just the custodian.

10           The 59 million shares of collateral were

11   specifically for the benefit of LBF, which is defined as the

12   chargee, and, under the terms of the March agreement -- and

13   I'll get you this in a minute.  We can hand it up.  LBF

14   determines when to release the collateral.  LBIE has to get

15   instructions from LBF.

16           So the notion that they have -- and this is one of

17   the dangers of asking for a ruling with no evidentiary

18   record where the evidentiary record is being developed in

19   another proceeding.  So, as a practical matter, it's LBF to

20   whom LBHI is the guarantor who made the determination who

21   first said, you know, we'll release it in short time and

22   then, on October 16th, said you're not going to get it, and

23   the reason that's important is because the English affidavit

24   will also say that the valuation date, because the

25   flexibility I talked about was designed to enable the party

Page 23

```
 1    to literally try to enter into replacement, an exact

 2    replacement transaction, which here would be a

 3    collateralized transaction -- as, under English law, it's

 4    only at the time you learn that you cannot enter that

 5    duplicate transaction.  That is the date that's the

 6    valuation date.  That's why October 16th was picked, because

 7    that -- it's undisputed that's when the claimants learned

 8    from LBF and LBIE that the collateral wouldn't be

 9    forthcoming, and that's why October 16th was selected.

10              So, with respect, when Lehman gets up here and

11    says I can speculate based on share prices why October 16th

12    was picked, that's not what the record reflects in

13    Switzerland.  The record reflects that that's English law.

14    That's when we found out the collateral was not going to be

15    released.

16              THE COURT:  But let me ask you a very fundamental

17    threshold question.  At least for me, it's a threshold

18    question.

19              MR. ZIMMERMAN:  Yes.

20              THE COURT:  Not withstanding the fact that we are

21    dealing with documents that are governed by English law,

22    there is a law of the case in this bankruptcy estate that I

23    apply safe harbor principles, regardless of the underlying

24    law that governs the ISDA contract, and am I not, under

25    section 562, making judgments that do not speak to the
```

Page 24

1   question of governing law as to the underlying safe harbor

2   qualified financial contract, but rather dealing with

3   principles of U.S. law that govern such questions?  The law

4   governing commercially-reasonable determinants of value does

5   not speak to as provided by certain English law governed

6   documents.  It rather is an open-ended question, and I

7   believe I have the discretion -- respond to this please --

8   to completely ignore applicable English law, to completely

9   ignore what an expert on English law would say, and to

10  completely ignore properly, under principles of comity, what

11  a Swiss court might say because the Swiss court is applying

12  different standards.  What do you say to that?

13            MR. ZIMMERMAN:  I say the following.  Section 562

14  actually -- and we agree with -- 562 is not going to be an

15  issue in Switzerland, and, even if it was, you're going to

16  decide 562, not a Swiss proceeding.  We get that.

17            562 has two concepts, and it has a legislative

18  history.  The legislative history, which is 2005 W. law,

19  832198, specifically talks about the section 910, which is

20  the section that was added to talk about the valuation date,

21  and what it says, as you well-know, is it's the date of

22  early termination, except if there are no commercially-

23  reasonable determinants of value as of such date.  Damages

24  are to be measured as of the earliest subsequent date or

25  dates in which there are commercially-reasonable

Page 25

1    determinants, which you just cited.

2            The legislative history goes on to say -- it talks

3    about the factors that one would consider in determining

4    commercial reasonableness, because that, by definition, is a

5    mixed question of law and fact, and then, it says, quote,

6    "The references to commercially-reasonable are intended to

7    reflect existing state law standards relating to a

8    creditor's actions in determining damages," close quote.

9            We say -- and I don't think it's in dispute --

10   that the relevant state law standards that govern the

11   creditor's rights under the ISDA agreement here is England.

12   So, even if -- not even if.  If the day comes -- because

13   let's play it out.  Let's be candid.  Let me be candid.

14           If the claimants lose in Switzerland, you're never

15   going to see us again, obviously.  There's no guarantee

16   issue, but, assuming for the moment that they're prevailing,

17   when we come back to you and there are no guarantee

18   defenses, because they basically -- it's an unconditional

19   guarantee, and Lehman waived all defenses, other than, I

20   believe, statute of limitations and payment.  So forget

21   that.

22           Your issue, Judge, will be the 562 issue.  Now,

23   you can do one of two things.  You can conclude that I'm

24   reading the legislative history wrong, or that you disagree

25   that 562 was intended on this particular point -- they're

Page 26

1   specifically talking about commercially-reasonable valuation

2   dates -- was intended to incorporate or look to the

3   applicable state law.  Even if you -- either you'll agree

4   with --

5            THE COURT:  Even if I do what the Supreme Court

6   and the Second Circuit does all the time, which is

7   effectively disregard legislative history, --

8            MR. ZIMMERMAN:  Fair enough.  If you disregard the

9   legislative history, Justice Scalia, two issues.  I think

10  even Justice Scalia only disregards if it, on its face,

11  contradicts or renders meaningless the plain words of the

12  statute, and I don't think the statute, as you correctly

13  pointed out, speaks to that issue.  So I don't think it

14  would be appropriate to -- but, even if you do, then what

15  you are being asked to do is today, based on 25 pages of

16  briefing, conclude as a matter of law with no facts, no

17  testing of factual assertions by either party in their

18  pleadings because these are lawyers --

19           THE COURT:  By the way, I'm not going to do that.

20  I'm not deciding that today.  So, in the same way that I

21  summarily agreed --

22           MR. ZIMMERMAN:  Okay.

23           THE COURT:  -- with Mr. Tambe, I'm agreeing with

24  you.  It's not happening today.

25           MR. ZIMMERMAN:  Let me close --

Page 27

1          THE COURT:  So does that make it easier for you?

2          MR. ZIMMERMAN:  Well, it certainly makes some of

3     it easier, yes.

4          THE COURT:  Right.

5          MR. ZIMMERMAN:  But let me then go to my final

6     point, at least for the moment.  I never say final point.

7     I'll think of something else, but let me go to the next

8     point.

9          What made a path, if I can suggest it, might

10    actually satisfy some of Lehman's issues.  As I said, the

11    status of the Swiss proceedings is the claimants put in the

12    substantive evidentiary brief.  They will, at the

13    appropriate time, put in an expert affidavit on a number of

14    things, including English law.

15          I think Lehman pointed out in their papers

16    correctly that there is some dispute in Switzerland about

17    the amount of bond that has to be posted.  We are not

18    counsel in the Swiss proceedings, but I've been advised of

19    what I'm about to tell you by the client.

20          The bond issue has been fully briefed.  I think it

21    was fully briefed as of last week or the week before.  So

22    the judge is going to make that decision.

23          Once that decision is made, LBF Lehman Switzerland

24    has 90 days to file their papers, and thereafter, claimants

25    have 60 days to file their reply.  So that's a little more

1    than six months, but that's what it is, and, at that point

2    in time, it's fully briefed, the judge then decides what he

3    or she wants to do, whether he's going to rule on the

4    papers, whether he wants more briefing, whether he wants

5    discovery, whatever, or whether he wants the parties to

6    consider settling.  That's kind of the timeframe, and that's

7    the best I can give you.  I can't predict anything beyond,

8    and you're correct.

9         We're not asking for perpetual estate, because I'm

10   not in a position to represent to you when a definitive

11   resolution is going to be.  So I get that, but the factors

12   on determining stays, which obviously is discretionary when

13   it comes to international issues -- we cited the Royal Sun

14   Alliance case, which -- and the language they cited has to

15   do with the issue of whether we were asking you to dismiss

16   because of the Swiss proceedings, and that's when the

17   unflagging obligation of courts to exercise jurisdiction

18   comes in.  We're not asking for that.

19        We're asking for a six-months date.  If you look

20   at the back of the Sun Alliance case, they cite -- they

21   specifically remand to the district court to consider -- you

22   may consider it, district court, whether it's appropriate to

23   stay.  They cite four circuit court of opinions, Eleven,

24   Second, and two Seventh Circuit opinions that stayed in

25   favor of pending foreign proceedings, temporarily, including

1    an Eleventh Circuit case that actually stayed -- its Turner

2    Entertainment against Degeto -- that stayed pending, I

3    think, Bermuda actions, notwithstanding the Court mentioned

4    that the Bermuda actions had barely had any progress

5    whatsoever.

6              So what I would respectfully suggest is this.  I

7    agree with Lehman that, at some point, if the claimants are

8    successful in Switzerland, we will get to the 562 issue.

9    Since that is inevitable, what you might think about is

10   whether the issue of 562, whether it should consider English

11   law or ignore, whether on these, what I would call a naked

12   record, 562, as a matter of law allows you to make a

13   determination as to whether this was, quote, "commercially-

14   reasonable" or not.

15             If you think briefing on those legal issues would

16   advance the ball since, if we end up before you, you could

17   get that head-start, that's something where I think you

18   could be comfortable that, while there may be a six-month

19   stay, it's not like nothing's going to be going on here, and

20   you can actually -- and the parties and the Court can

21   actually, depending on how the process goes and what the

22   decision ultimately is, may foster progress, but I don't

23   think -- and I took comfort by the fact that you're not

24   going to decide that today.  I do think a six-month stay and

25   then coming back to you and telling you where the parties

Page 30

1    are in six months -- and then, you could do whatever you

2    think is appropriate.  It makes some sense.

3              THE COURT:  Well, I agreed with Mr. Tambe earlier

4    when the issue was was I going to stay this, and I agreed

5    with him that I was not going to.  You're effectively

6    proposing something that amounts to a modified stay, but let

7    me tell you how I view this, and I'd like to get your

8    reactions.

9              I view what's going on in Switzerland as not

10   directly relevant to the claim resolution process in this

11   Court, although you've pointed out that, if you are

12   unsuccessful in the case against LBF in Switzerland, claims

13   here go away.  If you are successful, the 562 issue can

14   effectively be revisited then with reference to the

15   guarantee claim.  It's also possible that we can flip that

16   on its head and that I can deal preemptively with the

17   guarantee issue, under section 552, determine that you're

18   either right or wrong with respect to the existence of

19   commercially-reasonable determinants of value as of

20   October 16 or as of September 15, as argued by the debtor,

21   and you can either win or lose here.

22             If you lose here, that doesn't preclude your

23   ability to argue against LBF that my decision here was

24   predicated upon applicable bankruptcy law that isn't extant

25   for their purposes.  So I'm turning this argument right back

Page 31

1    at you.

2         Why should this proceeding be stayed a moment when

3    I can deal with these issues independently?  Why should I

4    stay these proceedings for a moment when the claims asserted

5    here are, as I understand it, so large that they actually

6    have a significant impact on reserves and distribution

7    rights of other creditors?  I'm not waiting.

8         MR. ZIMMERMAN:  I understand that, and I'm never

9    the one to ask questions when I'm standing at this side of

10   the podium, but I'm not sure --

11        THE COURT:  I reserve the right not to answer any

12   question that you ask.

13       (Laughter)

14        MR. ZIMMERMAN:  I can't do that -- well, I can do

15   that, but then I'm in trouble.  Because I'm not sure -- yes,

16   you're flipping it, but I'm not sure that doesn't get, if

17   I'm understanding you correctly, Judge, to the same place as

18   my modified plan, which is this.  If you are envisioning,

19   hopefully, because we haven't really -- certainly, since we

20   were moving to stay, I hope you understand we didn't fully

21   proof all the merits, because that would be self-defeating.

22        There is a lot to brief on the 562 issue.  The

23   legal issues -- I assume you're not having a trial on the

24   factual issues, but the legal issues, whatever they may be,

25   whatever Lehman thinks they are, whatever the claimants

Page 32

```
 1    think they are -- if that's what you have in mind, I think

 2    your idea is fine and more eloquently stated than my

 3    modified proposal, because it was intended -- my proposal

 4    was intended -- you're right.  If you conclude, heaven

 5    forbid, that we're wrong on 562, then that doesn't -- if

 6    it's a legal analysis, it doesn't interfere or preclude the

 7    claimants from getting whatever they can get in Switzerland.

 8    It just makes sure you never have to see us again.  And so,

 9    assuming we have the opportunity to fully brief all the

10    legal issues and we're not going to have a full-blown trial

11    as to the facts, that is kind of what I was maybe suggesting

12    as an alternative path, and if -- full stop.

13              THE COURT:  Let me hear what Mr. Perez has to say,

14    because he's standing up, even though Weil is not counsel

15    for these purposes.  So I'm going to presumably hear

16    something about --

17              MR. PEREZ:  Switzerland.

18              THE COURT:  -- the LBF proceeding in Switzerland.

19              MR. PEREZ:  Yes, Your Honor.  Just very quickly.

20    As the Court recalled, we were here before the Court on a

21    motion to approve a 9019, which was approved.  That 9019 had

22    several conditions preceding.  It has a drop-dead date of

23    September 30th.

24              We have worked through almost all -- there's one

25    minor condition precedent that we're still working on --
```

Page 33

1    involves obtaining approval in another estate, and it was

2    based on two things happening in the Swiss proceeding.  One

3    was the co-location plan, which is where the claims were

4    allowed or disallowed.  There were approximately 151 claims

5    that were treated in the co-location plan that were

6    guaranteed and probably another 20 claims that were treated

7    in the co-location plan that were not -- that didn't have

8    guaranteed claims here.  Of those, approximately 15 filed

9    objections, Tschira being one, and that's proceeding.

10            In addition to that, Your Honor, there is what's

11    called the realization plan, and, in essence, the

12    realization plan is the settlement between LBHI and LBF.

13    What Tschira has, in essence, done in Switzerland -- the

14    only party out of the 171 creditors is object and request an

15    order from FINRA asking to have an appealable order so that

16    they can, in essence, run out the clock and not allow us to

17    conclude the settlement.

18            I mean, my interest is first and foremost in

19    making sure that we don't lose because people run out the

20    clock, and there is -- universally, everybody believed that

21    the settlement was a win/win for both parties, and it's

22    obviously a litigation tactic, kind of the best defense is a

23    good offense, in order to object being the single party

24    objecting to the realization plan in order to, in essence,

25    either have the deal go away after four years of trying to

Page 34

1    get it done or, alternatively, negotiate something on behalf

2    of their client.

3            So I just wanted to put that into context,

4    Your Honor, because you can't -- this is part of a whole

5    picture, and I think that's a very important part.  Thank

6    you.

7            THE COURT:  Thank you for that.

8            MR. TAMBE:  If I may, Your Honor, just briefly, a

9    couple of points?  It seems to me where we are now is Your

10   Honor is not prepared to rule today on the application of

11   562, but I would submit that everything that the Court needs

12   to decide that issue is really -- comes out of their papers.

13   It's already in the record.

14           THE COURT:  Well, I'm not so sure that's true, and

15   I'll give you a chance to complete your argument, but I

16   believe there is a question as to what is meant by the

17   language commercially-reasonable determinants of value in a

18   setting that is as exotic as this.  This is probably

19   something that no congressman thought about.  To the extent

20   there is any relevant congressional history on this section,

21   I doubt that anybody was really thinking about the cross-

22   border aspects of section 562 application, and, if such

23   considerations were, in fact, made, this is complicated by

24   the fact that we have three bodies of applicable law

25   potentially to look at and a proceeding, which as Mr. Perez

Page 35

1    has explained, involves billions of dollars for the benefit

2    of the LBHI estate, billions of dollars in claims

3    represented by LBF that go away upon the effectiveness of

4    the settlement and issues being raised by an entity that, as

5    I understand it, is a foundation with a charitable purpose.

6    So I assume that, from their perspective, they don't

7    necessarily want to put themselves in the middle of this

8    vice, but they're doing that, presumably because they're

9    trying to get some value.

10          It is obvious from your chart that there is a

11   material difference in outcome based purely upon market

12   movements, depending on whether valuation is performed on

13   September 15, 2008 or October 16, 2008.  What a difference a

14   month makes, but I still need a record to determine whether

15   as of September 15 there were commercially-reasonable

16   determinants of value.  I'm unbiased on this subject, but I

17   believe that, generally speaking, it is a heavy burden for

18   the claimant to show that there were no commercially-

19   reasonable determinants of value on that date or any other

20   date, and I happen to believe that that language deals with

21   markets that are so thoroughly broken that it is not

22   possible as to the underlying asset to come up with a fair

23   valuation.

24          Here -- and this is a major obstacle for the

25   claimant -- the underlying assets are marketable securities

Page 36

1   where you can readily determine market value, and there was

2   a market for these securities on September 15, 2008.  On

3   that basis alone, I might be able to rule in your favor, but

4   this is a very important subject, and it's one that I

5   believe requires more than just a superficial assessment.

6           Claimant needs an opportunity to make an argument

7   why October 16 is right.  It may involve the use of experts.

8   Lehman may require experts as well.  I am not going to delay

9   on this.  I do not view this as a derivative of the Swiss

10  proceedings.  I view this as an independent claim matter to

11  be resolved expediently with a briefing schedule to be

12  determined by the parties, including such discovery -- and

13  it should be truly targeted -- that may be needed to address

14  what I view as a very narrow question.

15          With that, I suggest that you meet, confer, and

16  develop an appropriate schedule that takes into account the

17  truly relevant issues, which I view as being very

18  interesting and significant but not terribly fact-intensive,

19  and, as Mr. Zimmerman has requested, he would like an

20  opportunity to submit some further briefing on the subject,

21  and he'll have that right, as will you.

22          MR. TAMBE:  That's fine, Your Honor, and we're

23  happy to confer with them on a briefing schedule.  I would

24  just like to sort of set a parameter so we don't go off and

25  get a six-month briefing and discovery schedule.

Page 37

1          THE COURT:  No, we are not going to allow this

2     proceeding to extend beyond the break-up date for the LBF

3     settlement.  This is going to happen on a very accelerated

4     schedule.  This matter is not going to be held in abeyance

5     while the claimant postures in Europe to gain financial

6     advantage.

7          MR. TAMBE:  I'll confer with Mr. Perez.  We'll

8     come up with a schedule, with that being said, Your Honor.

9          THE COURT:  Consider this on a rocket docket.

10          MR. TAMBE:  I'll see if they'll sign, Your Honor.

11          Thank you, Your Honor.

12          MR. ZIMMERMAN:  Thank you.

13          MR. PEREZ:  Thank you.  May I be excused?

14          THE COURT:  Yes.

15       (Pause)

16          MS. MARCUS:  Your Honor, the next matter on the

17     agenda is in the adversary proceeding Turnberry Centra Sub,

18     LLC v. Lehman Brothers Holdings, Inc. and a motion to

19     dismiss.  It will be handled by my colleague, Ed McCarthy.

20       (Pause)

21          MR. MCCARTHY:  Your Honor, Ed McCarthy, here with

22     Jacqueline Marcus and Loren Alexander (ph) and also a

23     company representative, Christie Zull (ph).  We're here on

24     our clients Lehman Brothers Holding, Inc. and Lehman Bank

25     FSB motion to dismiss count three for promissory estoppel of