1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555 (JMP)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS, INC., ET AL,

8

9           Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                 U.S. Bankruptcy Court

14                 One Bowling Green

15                 New York, New York 1004-1408

16

17                 July 30, 2013

18                 11:01 AM

19

20   B E F O R E :

21   HON JAMES M. PECK

22   U.S. BANKRUPTCY JUDGE

23

24

25

Page 2

1    Hearing re:  Motion of Dr. H.C. Tschira Beteilingungs GmbH &

2    Co. KG and Klaus Tschira Stiftung GGmbH to Withdraw Claim

3    Numbers 32395 and 22671 Pursuant to Rule 3006 of the Federal

4    Rules of Bankruptcy Procedure [ECF No. 38809]

5

6        A. LBHI's Opposition to Claimants' Motion to Withdraw

7           Claims 32395 And 22671 Pursuant to Rule 3006 of the

8           Federal Rules of Bankruptcy Procedure [ECF No. 38975]

9

10       B. Declaration of Jayant W. Tambe in Support of LBHI's

11          Opposition to Claimants' Motion to Withdraw Claims

12          32395 And 22671 Pursuant to Rule 3006 of the Federal

13          Rules of Bankruptcy Procedure [ECF No. 38976]

14

15       C. Declaration of Ines Pöschel in Support of LBHI's

16          Opposition to Claimants' Motion to Withdraw Claims

17          32395 And 22671 Pursuant to Rule 3006 of the Federal

18          Rules of Bankruptcy? Procedure [ECF No. 38977]

19

20       D. Declaration of Jonathan Nash QC in Support or LBHI's

21          Opposition to Claimants' Motion to Withdraw Claims

22          32395 And 22671 Pursuant to Rule 3006 of the Federal

23          Rules of Bankruptcy Procedure [ECF No, 38979]

24

25

Page 3

1       E. Declaration of Daniel J. Ehrmann in Support of LBHI's

2           Opposition to Claimants' Motion to Withdraw Claims

3           32395 And 22671 Pursuant to Rule 3006 of the Federal

4           Rules of Bankruptcy Procedure [ECF No. 38979]

5

6       F. Reply in Support of the Motion of Dr. H.C. Tschira

7           Beteiligungs GmbH & Co. KG and Klaus Tschira Stiftung

8           GGmbH to Withdraw Claim Numbers 32395 and 22671

9           Pursuant to Rule 3006 of the Federal Rules of

10          Bankruptcy Procedure [ECF No. 39052]

11

12      G. Declaration of George A. Zimmerman in Support of the

13          Motion of Dr. H.C. Tschira Beteiligungs GmbH & Co. KG

14          and Klaus Tschira Stiftung GGmbH to withdraw Claim

15          Numbers 32395 and 22671 Pursuant to Rule 3006 of the

16          Federal Rules of Bankruptcy Procedure [ECF No. 39053]

17

18      H. Declaration of Bernd Kammerlander in Support of the

19          Motion of Dr. H.C. Tschira Beteiligungs GmbH & Co. KG

20          and Klaus Tschira Stiftung GGmbH to withdraw Claim

21          Numbers 32395 and 22671 Pursuant to Rule 3006 of the

22          Federal Rules of Bankruptcy Procedure [ECF No. 39054]

23

24   Hearing Re:  Status

25   Transcribed by:  Melissa Looney

Page 4

1   A P P E A R A N C E S :

2   JONES DAY

3          Attorneys for Debtors

4          222 East 41st Street

5          New York, NY 10017

6

7   BY:   JAYANT W. TAMBE, ESQ.

8          MATTHEW S. CHOW, ESQ.

9          LOCKE R. MCMURRAY, ESQ.

10

11

12   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

13          Attorneys for the KTS

14          Four Times Square

15          New York, NY 10036

16

17   BY:   GEORGE A. ZIMMERMAN, ESQ.

18          SUSAN A. ARBEIT, ESQ.

19          JEFFREY GEIER, ESQ.

20

21

22

23

24

25

Page 5

```
 1                      P R O C E E D I N G S

 2            THE COURT:  Let's proceed.  It's your motion?  Mr.

 3     Zimmerman, does the water bottle indicate you plan to talk

 4     for a very long time?

 5            MR. ZIMMERMAN:  I dry out quickly, but with that

 6     hint, I'll talk fast.

 7            Good morning, Your Honor.

 8            THE COURT:  Good morning.

 9            MR. ZIMMERMAN:  It's George Zimmerman representing

10     KTS.  Thank you for hearing these on short notice.

11            This is KTS' motion to withdraw its proof of

12     claim.  It would be with prejudice against ability to ever

13     bring any claim under the guarantee against LBHI in this or

14     any other court and without prejudice to continue its

15     litigation unfettered in Switzerland against LBF.

16            THE COURT:  Can I ask a very basic threshold

17     question?

18            MR. ZIMMERMAN:  Yes.

19            THE COURT:  This is a question really for both

20     sides.  Assuming for the sake of discussion that the only

21     thing that the order said was, quote, ordered that proofs of

22     claim numbers 32395 and 22671 are withdrawn with prejudice

23     period full stop.  And none of your without prejudice were

24     included and none of the particulars requested by LBHI were

25     included.  And it simply said withdrawn with prejudice, how
```

Page 6

1    would you be adversely affected if at all?

2              MR. ZIMMERMAN:  I believe that the only potential

3    issue would be if LBF or LBHI were to try to argue in the

4    Swiss proceedings that that was somehow with prejudice that

5    caused the dismissal as a matter of law without litigation

6    of the Swiss proceedings or the opposition to the settlement

7    agreement.  That would be the only conceivable way.

8              How would Swiss Court -- in the U.S. typically --

9    and I'm not familiar with Swiss law, U.S. typically the

10   collateral estoppel effect of your order, typically the

11   other court would look to how this Court would interpret

12   that.  What the Swiss rules are, I don't know.  So I'm not

13   sure at all subject to what I said that it would -- that it

14   would prejudice us.

15             THE COURT:  Okay.

16             MR. ZIMMERMAN:  So with that, let me just briefly

17   tell you where we are.  As you know, LBHI was the guarantor

18   of the underlying ISDA agreements between KTS -- the KTS

19   enteritis and LBF.  The exclusive jurisdiction for KTS to

20   assert its claim in LBF is in the Swiss proceedings, which

21   they did and there were full evidentiary submissions by KTS

22   and LBF is shortly to follow.  This was strictly a claim on

23   the guarantee.

24             You know the relief we want.

25             THE COURT:  Yes.

1          MR. ZIMMERMAN:  You know LBHI opposes it, you know

2     the relief they want.  They want you to make findings based

3     on evidence, in quotes, that was submitted after KTS moved

4     to withdraw -- affidavits that were never subjected to

5     discovery, deposition, cross-examination or full briefing.

6     And they want to use those findings for the purposes I just

7     talked about, to bar -- to argue in Switzerland that these

8     findings would somehow preclude KTS from pursuing its claims

9     against LBF and pursuing its objection to that settlement

10    agreement.

11          There is no case that they cite -- no case that

12    we've seen where a federal judge enters findings based on

13    evidence that was never litigated beforehand.  When we were

14    here at the stay proceeding, we specifically had this

15    dialogue where our theory of the stay was the threshold

16    issue first, in the Swiss case is English law and the

17    parties disputed English law governed the ISDA agreement.

18          What we proposed and what you counter proposed in

19    more direct language was that all of that may be true, but

20    the Section 562 issue is present uniquely in this Court.

21    It's a concept of U.S. Bankruptcy law.  It will never be

22    litigated in the Swiss proceeding.  And even if KTS prevail

23    -- if KTS loses in Switzerland, it's over.  If KTS -- even

24    if it prevails under English law, you still have to decide

25    two things.

1        Whether the theory of KTS advocated under English

2    law is consistent or inconsistent with 562.  And if the

3    latter, if it's inconsistent and you conclude that there was

4    a commercially reasonable determinant of value as of

5    September 15, that's the date LBHI advocates.  Then you

6    would presumably preclude that -- you would make whatever

7    conclusions you do.

8        And the dialogue -- because this is important as

9    to the scope of what we were here for -- in the transcript,

10   and we attached the full transcript to our papers.  We

11   didn't want to excerpt anything.

12       THE COURT:  I read it.  Thank you.

13       MR. ZIMMERMAN:  Okay.

14       THE COURT:  So feel free to highlight what you

15   want to highlight.

16       MR. ZIMMERMAN:  Thank you, Judge.  At pages 30 and

17   31 of the transcript you said, I view what's going on in

18   Switzerland is not directly relevant to the claim resolution

19   process in this Court, although you've pointed out -- that

20   was referring to me -- that if the Tschira entities are

21   unsuccessful in the case against LBF in Switzerland, claims

22   here go away.  If you are successful, the 562 issue can

23   effectively be revisited then with reference to the

24   guarantee claim, which is what I just said.

25       It's also possible we can flip that on its head

1   and I can preemptively deal with the guarantee issue under

2   562, determine you're either right or wrong with respect to

3   the existence of commercially reasonable determinants of

4   value as of October 16th of September 15th as argued by the

5   Debtor.  And you can either win or lose here.

6          And then you said this, if you lose here, that

7   doesn't preclude your ability to argue against LBF in the

8   Swiss proceeding, that my decision here was predicated on

9   applicable bankruptcy law that isn't extend for their

10  purposes.

11          THE COURT:  I think I said that rather well.

12          MR. ZIMMERMAN:  And since it's consistent with

13  opposition, I agree.

14          And the other thing you were concerned about, the

15  reason you wanted to speed it up was because the fact that

16  the claim here had, quote, a significant impact on reserves

17  in this case, because LBHI had to set aside a reserve for

18  this case.  That's gone.  The reserve is gone.  We're going

19  to drop our claim.  We're never suing LBH under the

20  agreement.

21          So we modeled our order precisely along the lines

22  as what you just meant in that quote.  They want to go

23  further.  They want to say, no you should use this -- take

24  the occasion to make findings on unvetted evidence that

25  would destroy -- that they would argue would destroy the

Page 10

1   ability in Switzerland.  There is no precedent for that.

2   There's no case to that.  And the test is Rule 3006, which

3   is also -- it's the analog to Federal Rule 41(a) and they're

4   kind of construed the same.

5          The test is, there's a policy towards granting

6   withdrawals to resolve conflicts.  But they can be

7   conditioned if the Court concludes that the withdrawal of

8   the claim would somehow prejudice the Defendant.

9          The only prejudice they have, they argue is that

10  well, there's the subjection by KTS to that settlement

11  agreement.  KTS is objecting in Switzerland, which is

12  holding up a potential distribution, which is true.  There

13  is an objection.  They have the right to do that.

14         But if you were to make a finding that allows the

15  elimination of that objection by ruining their standing as

16  creditor, well then we can speed up the distribution.

17         There's two problems with that.  That's not --

18  assuming that's legal prejudice -- which it's not -- that's

19  not caused by the withdrawal of the claim.  Had we never

20  brought the claim, obviously KTS could have objected to the

21  settlement agreement.  So withdrawing the claim just puts

22  the parties back where they were before the claim was

23  brought and that's what legal prejudice means.

24         And we cited -- the cases that have actually

25  looked at this issue where a party wants to withdraw a claim

Page 11

1   and the defendant wants to try to condition that on

2   preventing the withdrawing party from suing other people in

3   the same claim.  All of the cases -- all of the cases that

4   have looked at that -- uniformly hold that the withdrawal

5   will be with prejudice as against that defendant, you can

6   never sue that defendant affirmatively again, but without

7   prejudice to your ability to sue third parties.

8           And even if it means -- and in all those cases, or

9   most of the cases -- the defendants argued, well if you

10  permit the claimant to sure third parties that are related

11  to the defendant and he wins, those defendants then have an

12  indemnification contribution claim back against the debtor.

13  Now the Courts recognize that and say it doesn't matter,

14  because had they never brought the claim they could have

15  sued third parties and those third parties would have had

16  whatever rights they have.  So there's no cause and effect

17  and every case that has looked at this has concluded that

18  one way.  There is no case where a judge has made findings

19  based on completely unvetted evidence.  They're asking you

20  to go into uncharged territory without absolutely no reason

21  to do that.

22          One other point, if I may.  And it's -- it is not

23  germane but there is a constant theme that the tactics in

24  quote, that KTS is using is somehow were improper.  Let me

25  address that in two ways.

Page 12

1          Think about this.  The only harm as I just talked

2    about is that settlement agreement.  KTS filed its objection

3    in 2009.  There was no settlement agreement.  The settlement

4    agreement was in 2013.

5          THE COURT:  You said filed its objection.  Do you

6    mean filed its claim?

7          MR. ZIMMERMAN:  Sorry. Strike -- thank you, Judge.

8    Fled its proof of claims here in 2009.  Thank you.  Had LBHI

9    moved to overrule those claims earlier, either we would have

10   litigated that, we would have withdrawn it, there was no

11   issue about the settlement agreement.  There was no

12   settlement agreement.  LBHI chose not to -- to waive.

13   That's -- we don't impugn their motives.  Unlike them, every

14   time KTS makes a strategic decision, it's wrong, it's evil,

15   it's sinister.  We're not saying that.  A debtor has a

16   million things they have to prioritize.  We get it.

17          They decided for whatever legitimate reason, even

18   if it's legitimate, tactically to wait four years and that's

19   their right.  You have a right to make tactical decisions.

20   But when you make a tactical decision, you've got to live

21   with both the benefits and the burdens.  During that four

22   year interim period, the facts on the ground changed having

23   nothing to do -- totally not within the control of KTS.

24   There was a settlement reached.

25          Now, having waited all this time to try to move --

1    to overrule the claim, they are latching onto something that

2    they could have totally avoided had they moved earlier.  So

3    there's no way KTS is responsible even if that was legally

4    cognizable prejudice, which the cases say it's not.

5             Final point before I sit down.

6             THE COURT:  Before you make a final point.

7             MR. ZIMMERMAN:  Yes.

8             THE COURT:  Let's talk a little bit more about the

9    point you just articulated, which is the notion of your

10   client -- and I'm not sure if it's KTS or Tschira or how to

11   properly name them, but we'll use them interchangeably.  The

12   notion is that your client is a shameless opportunist and is

13   using the proceedings in Switzerland as a means to unfairly

14   extract value that you are not entitled to as a matter of

15   law because any reasonable person looking either at English

16   law or at Section 562 would conclude that you are due zero

17   dollars and in fact may owe dollars to the estate.

18             MR. ZIMMERMAN:  Uh-huh.

19             THE COURT:  And you are exercising these rights at

20   a particularly critical time to the life of both the estates

21   in Switzerland and here by threatening as the last person

22   standing a settlement that is demonstrably beneficial to all

23   parties in interest.  And so without saying anything

24   uncharitable, you appear to be at a minimum, opportunistic

25   and at a maximum, something I won't say.  But you know what

Page 14

1   I'm thinking.  You can read my mind and it's the word that

2   starts with a T.

3           MR. ZIMMERMAN:  Let me respond to that.  There is

4   -- first of all, let's look at the timing.  LBF didn't

5   publish its list of creditors that admitted -- let's call

6   them KTS if that's okay with you -- until I believe March of

7   2013.  That's when KTS objected -- started its claim in

8   Switzerland saying, I should be a creditor.  So before that,

9   there was no issue.  We know the timing of the settlement

10  agreement.

11          If the argument is that KTS and this timing was

12  totally in control of LBF when it published its list of

13  creditors and LBF and LBHI when to settle.  If the claim is

14  that somehow exercising what they perceive to be legitimate

15  rights is increasing their leverage first as against LBHI,

16  that's gone.  We're withdrawing the claim, there's no

17  negotiation, they won.  So that can't possibly be right.

18          To the extent -- I'm hoping you were paraphrasing

19  the Lehman's argument that a reasonable person could do

20  nothing but conclude that as a matter of English law under

21  the ISDA Or 562 or whatever law you want, that there's no

22  merit to the position, presumably if Swiss courts are

23  reasonable and they will demolish KTS and call them whatever

24  they want and issue whatever appropriate sanction is

25  applicable.

Page 15

1          But on that point, let me now get to the point --

2     the last point I wanted to make before I sit down because I

3     think it goes at least tangentially to your point.  One of

4     the things they argued is that obviously there was a

5     commercially reasonable determinative value as of September

6     15th, because there are these quotes, the three quotes,

7     Mediobanca, Golden Sachs, Lehman Brothers.  I'm sorry, JP

8     Morgan.  That somehow KTS tried to hide and that shows an

9     inconsistency in positions that KTS is trying to use two

10    courts against each other.

11         Let me just address that briefly, because it goes

12    to the -- it's not legally relevant, it goes to the

13    atmospherics, but it's important.  We have those affidavits

14    are attached to an exhibit that Lehman put in. I'm sorry;

15    the valuations are attached to an affidavit Lehman put in.

16    Not only were those valuations not hidden, the way they were

17    filed by KTS in the Swiss proceeding.  And they were filed

18    to show -- and again, just to refresh your recollection,

19    KTS' position is that under English law, the valuation date

20    is the date when you find out -- you're allowed to try to

21    enter into an exact replacement transaction, which in our

22    case was collateralized with 59 million shares.  It wasn't

23    until October 16th they found out they were not going to get

24    the collateral back and KTS' position is that under English

25    law, that's the valuation date.  And obviously LBHI

Page 16

1    disagrees both under English law and I think more

2    importantly for your purposes under Section 562.  And they

3    say, well you obviously got these valuations, so it's

4    commercially reasonably determinant as of September 15th.

5            There are two problems with that.  May I just hand

6    up those exhibits just to walk you through from one --

7            THE COURT:  You can hand up whatever you like.

8            MR. ZIMMERMAN:  Thank you.

9        (Pause)

10           THE COURT:  I've seen these before.

11           MR. ZIMMERMAN:  Yes.  They are Exhibits 1, 2 and 3

12   to -- I hope I'm pronouncing these right, the Poschel

13   affidavit -- P-O-S-C-H-E-L submitted by LBHI.

14           THE COURT:  Right.

15           MR. ZIMMERMAN:  The Mediobanca valuation which is

16   the first one is for a collateralized transaction, which is

17   the point KTS made in Switzerland because they say we

18   couldn't get -- we wouldn't be able to do a collateralized

19   transaction until October 16th.  But forget that.  Here's

20   what I want to get to.

21           If you look at page 1, they summarize the nature

22   of the transaction.  It has four tranches, two variable

23   forward sale, variable forward purchase.  And at the bottom

24   of that first page, they explain that in the variable

25   forward sale transaction, KTS is long a European put option

Page 17

1   and short a European call option.  Okay.  If you go to page

2   5 -- I'm sorry page 6.  Sorry, Your Honor.  Mediobanca

3   describes the second part of it which is the variable

4   forward purchase.  In those two transactions, KTS is

5   effectively short, but down an input option with rebate and

6   long down in call in (ph) option on shares.  That's the

7   transaction.

8           If you look at the next exhibit, Exhibit 2, which

9   is the Goldman Exhibit, it's the Goldman quote and on its

10  face you can see when you compare it to the description of

11  the transaction in Mediobanca.  Goldman only values the

12  variable forward sale.  That's when KTS was long to put in

13  short.  They don't value the variable forward purchase.  If

14  they -- it's not a valuation.  They weren't giving -- and if

15  you want to make implications -- as of September 15th is

16  because they couldn't come up with one.

17          And the third exhibit, which they claim is another

18  quote, it's the JP Morgan exhibit.  That's Exhibit 3.  And

19  again it's a cash collateralized transaction, but put that

20  aside.  It says, we are -- all three accounts have now been

21  opened.  We are ready to go with the total returns swap on

22  Monday if you'd like.  That's not this deal.  That's a

23  different kind of hedge.  And again, because KTS was looking

24  for the same transaction, if you want to make implications,

25  it's because JP Morgan couldn't come up with a valuation

Page 18

1    either.

2            Now, and we -- the recipient of all three of these

3    was Bernd Kammerlander and he put in an affidavit on our

4    behalf.  So one more point, so this whole notion -- so all

5    of this is perfectly consistent with KTS' positions in both,

6    that's why they put them in Switzerland.  They think it's

7    helpful to their case.  And as I just demonstrated, I think

8    it's helpful to our case here.

9            One final point, even if you ignore it, even if

10   these were legitimate quotes, if you look at -- and you made

11   this point last time and you were correct that there's a

12   presumptive -- there's a presumption that the markets act

13   right and if there's publicly traded stock, you can get a

14   value.  And it would be our burden to overcome that and

15   that's all fair.

16           There's an exception if there's a dysfunctional

17   market and that's what we were going to try to prove one or

18   the other, but here's the point.  One of the only cases, if

19   not the only case, to talk about 562 in any length is the

20   American Home case, Third Circuit opinion.  And the issue

21   was -- both sides conceded it was a dysfunctional market.

22   So the issue was is there any commercially reasonable

23   determinant way to value a mortgage backed security

24   portfolio without a functional market.  And in that

25   particular case, the Court found, yeah, you could do a

1    discounted cash flow, because it's a series of mortgages,

2    there's a finite period of time, a known cash flow, so you

3    can apply whatever discount.  That's legit.  But the Court

4    recognized, both the lower court and the Third Circuit,

5    quote, "Where the market is dysfunctional, it may be

6    difficult or impossible to use a market price to assign

7    value to an entire asset or asset pool in a single day…

8    because the nature of the market at a given time would

9    result in having to sell or liquidate the asset in a

10   commercially unreasonable manner."  Close quote.

11          And the Third Circuit in that same vein said it is

12   again you're starting point is the market.  Quote, "It is

13   only -- and this is for purposes of 562.  "It is only when

14   the market is dysfunctional and the market price does not

15   reflect an assets worth should one turn to other

16   determinants of value." Close quote.

17          So the only or certainly the most convincing case

18   law in 562, does not necessarily deem market price is

19   controlling.  That's the whole point about giving somebody

20   the opportunity.  And that's why 562 says, the presumption

21   is the determination date and if you couldn't come up with a

22   commercially reasonable determinant value, the first date

23   thereafter.  That's what this whole litigation was going to

24   be about.  That's why you wanted discovery.  That's why you

25   wanted expert testimony.  Notwithstanding the steep hill

Page 20

1     that you acknowledge we have.

2          So to put in three valuations, two of which are

3     dead wrong and actually show you couldn't value it, and to

4     put in one that was a collateralized transaction which KTS

5     could not do and then to have to suggest that that's

6     conclusive of anything and that, quote, no reasonable person

7     could ever argue that it's not these valuations.  It's just

8     not right.  It's wrong.  And there's no evidentiary record

9     to call out to any other conclusion, whatever preconceptions

10    LBHI may have.  That's what the litigation was going to be

11    about before u.  That's what we were going to brief and have

12    experts and the whole nine yards.  But we decided -- KTS

13    decided to focus on what it considers the underlying,

14    obviously primary claim.  And to free LBHI from any

15    affirmative liability and to free up the reserve.  I thank

16    you for listening.

17          THE COURT:  I've listened, but I'm not done

18    listening.

19          MR. ZIMMERMAN:  Oh, I'm sorry.  I apologize.

20          THE COURT:  I have a couple of more questions for

21    you.

22          MR. ZIMMERMAN:  Uh-huh.

23          THE COURT:  One of which relates to your last

24    argument, which in effect goes to the very merits that you

25    said I shouldn't be considering.  So I find it somewhat

Page 21

1   curious that you decided to close by arguing that there was

2   something potentially reasonable to have been presented here

3   had you not withdrawn your claim.  And you're in effect

4   using that as a reason why I should not condition withdrawal

5   of your claim on preclusive relief in favor of Lehman.  I

6   assume that's the reason that you made that argument.

7              MR. ZIMMERMAN:  No.  Just to be clear, as I said

8   before I started that argument, while it's not relevant, the

9   reason I made the argument was because they are suggesting

10  as part of the atmospherics that those valuations were

11  hidden --

12             THE COURT:  They're suggesting that you're a

13  nefarious -- your client is nefarious and scheming and

14  litigious to a fault.

15             MR. ZIMMERMAN:  But -- well I addressed that

16  before.  But specifically with respect, I'm talking about

17  the -- that's one of the disparagements.  The other one was

18  --

19             THE COURT:  Shall I come up with some other

20  disparagements?

21             MR. ZIMMERMAN:  No, no.  I just want to -- I just

22  want to explain what I just said, which is what the lead in

23  was.

24             THE COURT:  That's really what my question is, why

25  were you making that argument?

Page 22

1          MR. ZIMMERMAN:  Because the notion -- if they want

2     to -- if they want to impact your decision based on an

3     atmospheric argument, I wanted to clear the atmosphere, so

4     that whatever decision you make is on a justified proven

5     record.  And the point of that was the notion that KTS hid

6     the valuations when we refer to it in our papers, that those

7     valuations somehow show again atmospherically that KTS is

8     taking inconsistent positions before you and Switzerland and

9     that KTS is somehow trying to play one court off the other.

10          That atmospheric, which should have no bearing on

11     this is false.  And what I tried to explain by going through

12     it is not to litigate this.  I'm not an expert, obviously

13     that's not -- unlike -- that's not evidence that's been

14     subjected to cross-examination.  And it's not been vetted,

15     but it does go to this atmospheric point that they keep

16     throwing at you in the absence of any law that supports

17     their position.  That's why I made that -- that's why I

18     refer to the valuations.

19          THE COURT:  Well there's more to the atmospherics

20     which you haven't dispelled and I want to give you an

21     opportunity to dispel it now.  And that is apart from the

22     merits of any argument that might be made under Section 562

23     or applicable English law with regard to the proper

24     interpretation of the underlying ISDA agreement that your

25     client is involved in activities in Switzerland and here

1   that are designed to put maximum commercial and economic

2   pressure on a settlement that is demonstrably beneficial to

3   LBHI and frankly, also to all creditors of LBF, a settlement

4   that has been approved here and approved there.  And so part

5   of the atmosphere is that your client is taking a

6   questionable legal position for purposes of extracting value

7   now at a time when there is maximum leverage as against that

8   settlement.  That atmosphere is still in the room.  And

9   you've said nothing to dispel it.

10          MR. ZIMMERMAN:  The only -- here's all I can say.

11   And the Harrowlinda (ph) affidavit makes reference to this

12   too.

13          THE COURT:  That affidavit, if I'm remembering

14   correctly said, well we're the only really unhedged

15   creditor, whatever that means and I don't know what that

16   means.

17          MR. ZIMMERMAN:  Okay.

18          THE COURT:  And I don't know what your real

19   motivation is and I assume it's purely economic, but it's

20   also designed to delay the resolution of a very significant

21   settlement to the detriment -- economic detriment of many

22   other creditors, which makes you appear to be standing in

23   front of a tank and stopping it.

24          MR. ZIMMERMAN:  Here's what I know.

25          THE COURT:  I'm making you seem heroic with that

Page 24

1      image, by the way.

2              MR. ZIMMERMAN:  Oh, thank you.  But so long as the

3      train doesn't run me over, I don't mind being a hero.

4              Let me tell you what I know and then you're going

5      to have to draw whatever inference you want, because the

6      record is what it is.  I have no doubt -- you approved it --

7      the settlement is being in the best interest of LBHI.  I'm

8      not touching that.  It's been approved by the Court in

9      Switzerland.

10             THE COURT:  By the way, let me stop for a second.

11     Was there some reason why you did not object to the

12     settlement here?

13             MR. ZIMMERMAN:  I think -- well I believe the

14     procedure set up for objecting to the settlement was as

15     follows.  Settlement gets published, whatever.  Creditors

16     committee I think had to approve it.  You then publish it

17     and then they set up the settlement -- sorry the objection

18     vehicle that you can appeal to the financial institution,

19     FINRA I think it's called in Switzerland.

20             THE COURT:  You may be misunderstanding the

21     question.  I don't question what you're doing in Switzerland

22     in terms of the procedure.

23             MR. ZIMMERMAN:  Oh.

24             THE COURT:  I'm questioning why, if you know, your

25     client didn't step up to oppose approval of the settlement

Page 25

1      here?

2              MR. ZIMMERMAN:  Oh, I'm sorry.  Sure.  I can -- I

3      mean, I can reason why, which is as follows.

4              THE COURT:  But do you know?

5              MR. ZIMMERMAN:  No.  I never discussed it, but I

6      think my reasoning is compelling so let me just give it and

7      I --

8              THE COURT:  Okay.

9              MR. ZIMMERMAN:  Their position, by the way, is not

10     that the settlement -- that LBF gave up to much value to

11     LBHI full stop.  Maybe that's right, maybe that's not.

12     Naturally, you're not going to come to a bankruptcy court --

13     number one, they're a creditor, fundamentally the primary

14     claim as we've always said is against LBF.  That's where

15     they think they're going to prevail.  That's where they

16     think there's a significant pay out for creditors.  And

17     that's where they're hurt most if LBF gives up too much

18     value.

19              They're not -- the -- to come to you, Judge and

20     say we object to the settlement not because it gives -- it's

21     not in LBHI's best interest, it is.  In fact, I think their

22     position is too good.  It's hurting LBF in their Swiss

23     proceeding.  What does that have -- I don't -- I would --

24     not that I was involved, but it wouldn't dawn on me to come

25     to this Court to object either.  I would go to Switzerland

Page 26

1    because that's the entity that the client believes is giving

2    up too much value.

3           THE COURT:  Well, I don't mean to break in, but at

4    the time of approval of the settlement, I approved it both

5    in respect of the LBHI case and the Chapter 15 case for LBF.

6    And LBF's foreign representative was here as an advocate for

7    that settlement.  You had a perfect opportunity or at least

8    your client did to stand up and be counted then, but didn't.

9           And so it leads to the conclusion, not necessarily

10   the only conclusion, that part of what is going on here is a

11   gaming of that settlement there at a time when you have

12   increased potential leverage unrelated to the merits of your

13   claims, but rather related to the holdup value associated

14   with objecting.  And that's the negative atmosphere and

15   that's what you have not dispelled.

16          MR. ZIMMERMAN:  I've told you everything I know.

17          THE COURT:  Okay.

18          MR. ZIMMERMAN:  I haven't discussed this.  I'm not

19   going to speculate to you, Judge.  It's not fair to either

20   of us.  I've told you everything I know.  The rationale I

21   assumed happened.  I was not involved.  But I continue to

22   believe that the procedure was to object to try to get an

23   appealable order from FINRA, that's what they're doing.  And

24   if it turns out under Swiss law, they're as frivolous as

25   LBHI says, presumably there's a heavy price to pay.  But I

1   can't give you any more information that I just don't know.

2          THE COURT:  Do you know whether or not there is a

3   bonding requirement associated with taking an appeal from an

4   appealable FINRA order?

5          MR. ZIMMERMAN:  I believe -- what I said last time

6   and this was fresh on my mind last time.  The answer I

7   believe is yes and there was a dispute as to the amount.  I

8   don't know what -- and that issue on the amount or that

9   dispute when we were here last time had been or was about to

10  be joined and they were expecting a decision.  So I think

11  the answer is yes.  I think there is a dispute as to the

12  amount, but if I say anymore, I'm going to be speaking --

13  that's all I know.

14         THE COURT:  Okay.  And this is now my final

15  question and I'm picking up something that you do on

16  occasion, which is say that you're about to make a final

17  point and then there are three or four that follow.

18         MR. ZIMMERMAN:  Yeah.  Fair enough.

19         THE COURT:  But my final question is this and it's

20  in the category of if you know.  So if the answer is you

21  don't know, it becomes a very short answer.  Do you know if

22  there are any procedures available in the Swiss proceeding

23  to materially expedite the resolution of that proceeding as

24  it relates to the merits of your objection?

25         MR. ZIMMERMAN:  I do not know.

Page 28

1          THE COURT:  That's fine.  Thank you.

2          MR. ZIMMERMAN:  Thank you, Judge.

3          MR. TAMBE:  Your Honor, if I may just confer on

4   the final question you asked to see if I have an answer for

5   you -- your question.

6      (Pause)

7          MR. TAMBE:  Good morning, Your Honor.  Jay Tambe

8   on behalf of the Debtor.  Let me start by just answering the

9   questions Your Honor posed to Mr. Zimmerman at the end

10  there.  There is a bonding requirement.  We understand that

11  the bond has been set at a relatively low amount of Swiss

12  francs, 10,000.  It could be raised up to 50,000 Swiss

13  franc,, but that's my understanding.  And I don't know that

14  first hand.  That's based on information I just received.

15          Two, we don't believe that there is any procedure

16  for materially expediting the objection that has been filed

17  by the KT entities in Switzerland, so it's going to take a

18  while.

19          THE COURT:  What's the consequence, if you know,

20  the financial consequence of a party like KTS pursuing an

21  appeal unsuccessfully that results in demonstrable material

22  losses to LBHI and to LBF, is there recourse?

23          MR. TAMBE:  I don't know the answer to that, Your

24  Honor.  Whether there's any kind of a cost or a sanction

25  associated with that type of a tactic by someone like KTS in

1    the Swiss proceedings.  I don't know the answer to that. I

2    don't know if we have a remedy for the delay and the

3    prejudice that would be caused.

4            THE COURT:  Okay.  I'm sure someone at some point

5    will consider that and someone at some point will consider

6    whether KTS and the Tschira entities are embarking on a high

7    risk strategy, but that's not for me to decide today.

8            MR. TAMBE:  So let me start with where I think

9    there is at least some agreement.  There's some agreement

10   that at this juncture of the case, the claims cannot be

11   withdrawn except for an order by this Court.  And this Court

12   has discretion in fashioning the terms and conditions upon

13   which such a withdraw would be conditioned or concluding in

14   the alternative that the claim should not be permitted to be

15   withdrawn so that we in fact do go to a hearing, which was

16   to be done on an expedited basis in any event.

17           Clearly, you have two very differing views of what

18   an appropriate order should look like.  They have a bare

19   bones order that says, claims are dismissed prejudice except

20   where they're not.  And just taking that order at face

21   value, we clearly have objections with a notion that there

22   is a dismissal with prejudice except where it's not.  And

23   the two exceptions are fairly significant.

24           THE COURT:  Mr. Tambe let me ask you the very same

25   question that I started with when Mr. Zimmerman was making

Page 30

```
1    his presentation, which is in what way, if at all, would

2    LBHI be prejudiced if I were to enter a bare bones order

3    that was even more bare bones than the order proposed by KTS

4    and simply said, ordered that proofs of claim numbers 32395

5    and 22671 are withdrawn with prejudice period and the rest

6    of the proposed order doesn't appear, except in the

7    imagination of KTS?

8           MR. TAMBE:  Your Honor, the answer to that

9    question would be if all I was concerned with -- if all that

10   LBHI was concerned with was purely U.S. proceedings where

11   the only folks who would ever look at that order or have to

12   pass on what that order means were juris who were intimately

13   familiar with U.S. procedure and what it is, I may not press

14   my point as hard as I am pressing it.

15          The reason we think more needs to be said is

16   because a withdrawal with prejudice means something special

17   under U.S. jurisprudence, which is not captured just by

18   those words and certainly to a judge who is sitting half a

19   world away who sees for example a transcript where this

20   Court focused on 562 and the 562 aspects, that judge may

21   well conclude following Mr. Zimmerman's lead, that all that

22   was before this Court and all that could have been

23   determined or was determined were 562 issues.  No other

24   claims or issues were ever presented to this Court.  And

25   that I think would fundamentally mischaracterize and
```

Page 31

```
 1    misstate the nature of both what the claims were, what

 2    claims were filed and what it means to withdraw those claims

 3    with prejudice.

 4              A withdrawal of claims with prejudice is the

 5    functional equivalent of a Rule 41 dismissal with prejudice.

 6    And the cases are clear and I think there's no disagreement

 7    that you look to the Rule 41 cases for guidance on how Rule

 8    3006 ought to be construed.  And under Rule 41, if you have

 9    a dismissal with prejudice, it's not taking the parties back

10    to the status exactly.  It's actually saying these claims

11    have been resolved on the merits against the Plaintiff.

12    It's res judicata as to all claims that were filed or that

13    could have been filed.

14              We don't even need to talk about what claims could

15    have been filed.  Let's just focus on what claims were

16    filed.  I don't think there's any dispute here that the

17    claim that was filed was premised on a contract law

18    question, an interpretation of contract law.  What do these

19    master agreements mean?  What does it mean to value those

20    agreements as of a particular date?

21              You don't need to consider our declarations or the

22    valuations or any of that.  By withdrawing their claims with

23    prejudice, what they are saying in a U.S. Court is the

24    merits of those claims have been decided and they've been

25    decided against us.  That's what we're seeking in the
```

Page 32

1   findings of fact and conclusions of law.  What we're seeking

2   is an explication by this Court that when there is a

3   withdrawal with prejudice, here is what it means.  It means

4   that the claims that you were pursuing in this Court have

5   been decided against you.  Not because they were actually

6   litigated, but because that is the legal equivalent, that is

7   the legal import of what it means to withdraw with

8   prejudice.  That's why we have the set of findings of fact

9   and conclusions of law.

10          Now, whether that has any collateral estoppel

11   effect in Switzerland, we are not asking you to speak to at

12   all.  We think it's appropriate for a Swiss court to decide

13   whether or not that has any collateral estoppel effect.

14   Certainly if the Court wants to go further and believes as

15   an exercise of its jurisdiction there are additional

16   clarifications and conditions that the Court believes are

17   necessary, we certainly would not object to that.  But at a

18   minimum, I think we need some clarity as to what it means to

19   withdraw claims with prejudice.  That's what's behind the

20   findings of fact and conclusions of law.

21          We're not asking you to make evidentiary findings

22   based on the affidavits we've submitted.  What we're asking

23   you to do is find as a legal matter, that is the conclusion,

24   that is the effect of the step they have taken, which is the

25   withdrawal with prejudice.

1           Now, why have we provided you with the

2    declarations?  We've provided you with the declarations to

3    make the point that I think Your Honor picked on.  We don't

4    think there was any reasonable basis from back in 2009 for

5    these claims ever to have been filed.

6           There's a point that's made in the reply

7    submission that I wanted to focus on.  And it is on

8    paragraph 25 of the reply papers served by KT.  And they

9    declare indeed the so called valuations demonstrate that it

10   was not possible to obtain a quote for a replacement

11   transaction as of September 15, 2008.

12          If you look at the Mediobanca valuation if it was

13   anything, it was a quote, for a replacement transaction as

14   of September 15th, 2008.  Their quarrel with that quote is

15   simply that they could not actually enter into that

16   transaction, but there is no dispute that on its face, what

17   that was a quotation from a bank to enter into a replacement

18   transaction as of September 15th, 2008.  There's no two

19   things about it.  They may call it something else, but on

20   its face, that's what it is.

21          And certainly under both 562 and English law, the

22   ISDA master agreement and what the ISDA master agreement

23   requires, that values the transaction as of the early

24   termination date.  And they've had that piece of paper in

25   their possession since September 19th.

Page 34

1          This maybe should simply have never been filed and

2    they only thought about withdrawing it when their first

3    tactic failed, which is have this Court basically say, I'm

4    not going to touch the issue until the Swiss courts are done

5    with it.  That was our first response when we put in our

6    objection.  Their first response was, this Court needn't get

7    involved in it.  All these issues are being resolved in

8    Switzerland.

9          It's only when that tactic failed and when this

10   Court said, no we're going to have an evidentiary hearing,

11   we're going to have discovery and we're going to get to the

12   bottom of this issue and when we said, okay we want a trial

13   on these issues, we want all the issues tried.

14          I don't think there was anything said at the June

15   13th hearing that said that there would be a truncated trial

16   of only some issues and not other issues.  It's entirely

17   possible that your court -- that the Court could have

18   limited its ruling to just 562 issues.  But in terms of the

19   issues that were going to be developed by the parties, they

20   certainly include an English law as to the contract, the

21   interpretation of English law and the effect of English law

22   and the validity of these quotations and what effect that

23   had on the agreement and 562.

24          THE COURT:  I expect by the way, Mr. Tambe, not

25   that it matters, that the trial or hearing, however long it

Page 35

```
 1    might take, of the issues raised would include applicable

 2    English law as well as 562 largely because during his

 3    argument on the stay, Mr. Zimmerman focused on applicable

 4    English law as being appropriate law for me to consider and

 5    in effect the equivalent of considering state law under a

 6    state law governed ISDA.  This is English law under an

 7    English law governed ISDA.  And in the sense that Section

 8    562 may or may not be considered in a vacuum -- and that

 9    legal question hasn't been answered -- I would expect that

10    English law questions would be presented.  But this is an

11    entirely theoretical construct.  We don't actually need to

12    get into any of this now.  Although I know Mr. Zimmerman did

13    in his argument.

14          This argument in connection with a motion to

15    withdraw claim has become in effect, a derivative for the

16    litigation that might have been pursued if the claim hadn't

17    been withdrawn.

18          MR. TAMBE:  So I'm not going to belabor the point,

19    Your Honor.  Suffice to say that the reason we have in our

20    proposed order those findings of fact and conclusions of

21    law, are not to suggest that this Court has considered or

22    tried those issues, but that's the legal effect if they

23    withdraw with prejudice of the claims they presented.

24          THE COURT:  Okay.

25          MR. TAMBE:  There are two other aspects to the
```

Page 36

1   order that we seek as terms and conditions for the withdraw

2   with prejudice.  This has certainly been I think an

3   expensive undertaking for the estate.  It wasn't like they

4   played out this tactic when we first filed the objection in

5   March of this year, nor when we put in the more detailed

6   supplemental objection laying out precisely the reasons why

7   we believe this was an improper claim and the claim should

8   be expunged.  They stuck around and they fought it and they

9   argued that in fact it should remain alive, but stayed.

10          After we left this Court on June 13th we engaged

11  in meet and confers about the schedule.  And by any stretch,

12  it was a schedule that was going to be very tight and very

13  accelerated.  That required us to go ahead and hire experts

14  to prepare the legal submissions to prepare a single

15  discovery request which we served on them, which they found

16  to be overly burdensome.  But those costs were incurred by

17  the estate.  And as part of the order we would seek

18  reimbursement of those costs and expensive, both attorneys

19  fees as well as expert fees.

20          We'd also seek discovery.  The one discovery

21  request we have served on KTS is give us all of the

22  valuation information you have.  We see bits and pieces of

23  it.  We see some that you submit here.  We see some that

24  you've submitted in Switzerland.  What else do you have?

25  How many other valuations did you do between September and

Page 37

1    October of 2008 or thereafter?  The valuation that they

2    ultimately hang their hat on is a December 1, 2008

3    valuation.  So get us all the valuation information that you

4    have, that your advisors have.  They've been through several

5    advisors, give us that basic information.  It's a single

6    documents request.  I think it's again fair as a condition

7    given the atmospherics and given everything else that's

8    going on here.  That while they are subject to the Court's

9    jurisdiction, I think it's within the Court's power to say

10   they should comply with that minimal discovery request.

11            THE COURT:  Can I break in and ask you a question

12   I should have raised with Mr. Zimmerman but didn't and I'm

13   going to ask him the same question during his further

14   commentary on this point.  And you said, quote, "while KTS

15   is still subject to this Court's jurisdiction", close quote.

16            Assuming that I enter an order in one form or

17   another authorizing the withdrawal of claim numbers 32395

18   and 22671 absent some further agreement, is it your position

19   that KTS and Tschira entities are no longer subject to the

20   Bankruptcy Court's jurisdiction?

21            MR. TAMBE:  I don't definitely know the answer to

22   that, but that's certainly a risk we fear, that once they

23   have obtained an order giving them withdraw with prejudice,

24   they will take the position that they are no longer subject

25   to this Court's jurisdiction.

Page 38

1         THE COURT:  And assuming that is the case, in what

2    forum, if any would LBHI pursue affirmatively relief against

3    these entities?

4         MR. TAMBE:  There's at least one conceivable

5    avenue for affirmative relief and it hasn't really been the

6    subject of any of the briefing.

7         The week before the LBHI Bankruptcy filing, the KT

8    entities demanded and received 100 million Euros in

9    additional collateral.  Not tied to the valuation of the

10   trades, but just as a additional security that they demanded

11   from the Lehman entities.

12        Some time ago in light of potential statutes of

13   limitation, the parties had entered into a tolling

14   agreement.  I believe last week we terminated that tolling

15   agreement and one of the avenues that we are considering is

16   whether we will pursue either LBHI or LBHI or LBSF or some

17   combination would pursue an action against the Klaus Tschira

18   entities for return of that 100 million in collateral and as

19   potentially a preference action.

20        So that is one specific potential avenue of relief

21   that I can think about that we might consider pursuing.

22        THE COURT:  And is that an action that would be

23   brought in this Court?

24        MR. TAMBE:  We would certainly intend to bring it

25   in this Court, Your Honor.

1          THE COURT:  All right.  And if an action were

2     brought in another court, I presume there are other courts

3     of competent jurisdiction in Europe where this family of

4     companies does business and will be subject to jurisdiction

5     and they might even be subject to jurisdiction here.  I'm

6     not commenting.

7          MR. TAMBE:  And I don't want to rule out one way

8     or the other.  I think they certainly would be subject to

9     jurisdiction here given that they've come here and brought

10    their claims here.  They've also consented to jurisdiction

11    in the Courts of England and Wales pursuant to the ISDA

12    master agreement.  A forearm they seem to have seriously

13    avoided for the determination of any of their so called

14    rights under the ISDA master agreement.

15         THE COURT:  But to be clear you are not asking as

16    a condition of the order that there be an agreement on the

17    part of the withdrawing claim holders to ongoing

18    jurisdiction to the Bankruptcy Court with respect to any

19    affirmative claims that your client may have?

20         MR. TAMBE:  We have not sought that as part of our

21    proposed order, but should the Court believe that it's a

22    proper term and condition to be included, we would certainly

23    welcome it.

24         THE COURT:  Okay.  It's as to that question that

25    I'd like Mr. Zimmerman to comment later.

Page 40

```
 1        (Pause)

 2             MR. TAMBE:  The point we've made a couple of times

 3   and this is I think my last observation that in a sense, we

 4   have not cited any case to Your Honor that provides for the

 5   relief that we are seeking.  And my response to that is

 6   while what we are seeking may be unprecedented, it is not

 7   unprincipled.  This wouldn't be the first time in the Lehman

 8   Brothers Bankruptcy that this Court has had to rule on

 9   issues that have not previously been ruled on by other

10   courts.

11             But the principals that we're relying on, Your

12   Honor, are rock solid principles.  They go to Rule 41, what

13   does it mean to dismiss with prejudice?  What does it mean

14   for us to be subject to this continuing threat to the

15   settlement that this Court has already approved?  And how

16   can we be properly protected in this cross border scenario.

17   Where it may be perfectly understood what res judicata and

18   withdraw with prejudice means in the U.S. but it could be

19   subject to misinterpretation or misapprehension on the other

20   side of the pond.  And we simply want an order that spells

21   out exactly what it is that a withdraw with prejudice gives

22   us.

23             I'm happy to answer any other question the Court

24   may have.

25             THE COURT:  I don't have any others right now.
```

Page 41

1          MR. TAMBE:  Thank you, Your Honor.

2          THE COURT:  Mr. Zimmerman, do you want to speak to

3     the jurisdictional question?  And you can also respond to

4     other matters that you think appropriate to comment on.

5          MR. ZIMMERMAN:  Thank you.  Last week when LBHI

6     terminated that tolling agreement we had assumed that they

7     would be filing with a preference for whatever theory they

8     had on that $100 million amount that Mr. Tambe mentioned and

9     without having discussed it with the client, I had assumed

10    that that would be heard in this Court.  So I think -- I

11    hope that answers the question.

12         With respect to -- the only other point I'll make

13    with respect to the acknowledgement that there's no

14    precedent on this, but that you've had occasion in the past

15    in the Lehman Bankruptcy Case to rule on issues of first

16    impression, that's absolutely true.  But there is a -- there

17    is plenty of case law, unlike the cases you had, there is

18    plenty of case law in Rule 41 and 3006, plenty of times when

19    defendants have tried to object to withdraws of claims by

20    conditioning them on forfeiture of rights against third

21    parties and they all come out our way.  So subject to any

22    other questions you have, that's the only thing I need to

23    say to Mr. Tambe.

24         THE COURT:  Just a further question on retained

25    jurisdiction and that is do you have a position one way or

1   the other as to the impact on this Court's jurisdiction over

2   your client of your withdraw of proofs of claims with

3   prejudice -- in other words, to what extent, absent some

4   further litigation, does LBHI have a right to seek

5   affirmative relief with respect to the very same

6   transactions that were the subject of your proofs of claim

7   after the withdrawal of those proofs of claim?

8           MR. ZIMMERMAN:  As I stand here I don't, but I can

9   let you know KTS' position in 24 hours.  I don't know what

10  their contacts are with the U.S. separate from the

11  bankruptcy and whether it be an agreement -- whatever the

12  answer -- the legal answer to the question is, whether

13  there'd be a willingness to submit to the continuing

14  jurisdiction of this Court even with the claim withdrawn, I

15  can advise you when I get instructions in 24 hours.

16          THE COURT:  Okay.  Thank you.

17          Is there anything more on this?

18          MR. TAMBE:  No, Your Honor.

19          THE COURT:  This is a very interesting and as the

20  parties have acknowledged, unprecedented attempt to withdraw

21  a very significant claim against LBHI.  And it is very

22  unusual in my experience for the voluntary withdrawal of a

23  $600 million claim to result in such robust and strenuous

24  opposition on the part of the Debtor that notionally is

25  benefitted by the withdrawal of that claim.

1          In effect, we are arguing here, both in the papers

2     and in oral argument about matters that are not presently

3     pending before the Court.  If you look at this in the most

4     simple terms, KTS known as the Tschira entities along with

5     its affiliate KG are seeking to withdraw claims rather than

6     litigate those claims to conclusion here.

7          The fact that they have chosen to fold their tents

8     indicates a form of foreign selection on their part.  I

9     conclude that they have determined that they are better off

10    arguing issues relating to the replacement of the

11    transactions that are the subject of these claims in

12    Switzerland in the context of objecting to the LBF

13    settlement there, rather than litigating those very same

14    issues here.  And frankly, that's their right.

15         They voluntarily submitted to this Court's

16    jurisdiction with respect to the guarantee claims when they

17    filed those claims in 2009.  And after seeing the atmosphere

18    in this courtroom, particularly comments that I made in

19    reference to section 562, I believe they decided they were

20    better off simply moving on.

21         Regardless of their motivations, they have the

22    right, subject to appropriate conditions to withdraw proofs

23    of claims 32395 and 22671 after issue has been joined.

24         LBHI seeks to elaborately condition the withdrawal

25    of those claims upon a set of findings of fact and

Page 44

1   conclusions of law that potentially could have preclusive

2   impact upon the rights of the Tschira entities in the Swiss

3   proceedings.  In effect, LBHI seeks to convert a withdrawal

4   of a claim into the functional equivalent of a detailed

5   adjudication on the merits.

6         I am not prepared to do that and will not do that.

7   But what I will do is enter a form of order substantially

8   along the lines proposed by the Tschira entities with these

9   amendments.

10        As I foreshadowed in my questioning, the order

11  will end with the third decretal paragraph which states,

12  ordered that proofs of claim numbers 32395 and 22671 are

13  withdraw with prejudice and the sentence will stop there.

14  There will be a period inserted after the words with

15  prejudice.  And the exceptions will all be deleted.

16        There will be a further decretal paragraph and it

17  is further ordered that the Tschira entities shall continue

18  to be subject to this Court's jurisdiction with respect to

19  any affirmative claims of the Debtors or words to that

20  effect.

21        I believe that it is appropriate for the Swiss

22  court to have complete discretion in determining the manner

23  in which this order impacts claims and offenses in the Swiss

24  proceeding.  The Tschira entities will be free to argue as

25  to the legal consequences of having withdrawn their claims

Page 45

1    here with prejudice.  And LBHI and LBF similarly will be

2    free to argue as to the appropriate legal consequences

3    associated with the withdrawal of these proofs of claim.

4           Finally, I will make an observation that does not

5    fit neatly within this ruling with respect to the withdrawal

6    of these two proofs of claim.  I am frankly concerned that

7    the Tschira entities are engaged in legally permissible

8    activity that is also highly undesirable from the

9    perspective of both LBF and LBHI.  And more importantly,

10   from the perspective of parties in interest that have

11   supported and are benefitted by the settlement between LBHI

12   and LBF that was approved by this Court and the Swiss court.

13          I encourage the parties to explore economic

14   solutions to this dispute that makes sense relative to the

15   delay and expense associated with the Swiss litigation.  It

16   would be highly desirable for the parties to reach an

17   accommodation with each other before September 30.

18          To the extent that this Court can be helpful in

19   supervising settlement discussions between the parties, I

20   make myself available, particularly since the disputes in

21   question are to be adjudicated in the Swiss court and not

22   here.

23          I ask Mr. Zimmerman to report to my chambers

24   before the close of business tomorrow as to whether his

25   client will accept the condition that I have imposed on the

Page 46

1    withdrawal of these claims, namely that the Tschira agree to

2    be subject to the Bankruptcy Court's jurisdiction with

3    respect to any affirmative claims of LBHI.

4            That's the ruling of the Court.  Thank you very

5    much.

6            MR. TAMBE:  Thank you, Your Honor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                               INDEX

 2

 3                              RULING

 4                                          PAGE      LINE

 5   Motion of Withdraw Claim                42        18

 6   Numbers 32395 and 22671 Pursuant

 7   to Rule 3006 of the Federal Rules of

 8   Bankruptcy Procedure [ECF No. 38809]

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 48

1                   C E R T I F I C A T I O N

2

3    I, Melissa Looney, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5    Melissa          Digitally signed by Melissa Looney
                      DN: cn=Melissa Looney, o, ou,
                      email=digital1@veritext.com, c=US
     Looney           Date: 2013.08.01 15:29:27 -04'00'

6    _____

7    MELISSA LOONEY

8    AAERT Certified Electronic Transcriber CET**D - 607

9

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  July 30, 2013

17

18

19

20

21

22

23

24

25