# In The Matter Of:

*FIRSTBANK PUERTO RICO, v.*
*BARCLAYS CAPITAL INC.,*

*August  25, 2010*

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 08PJFIRM.txt, Pages 1-68

**Word Index included with this Min-U-Script®**

**This Page Intentionally Left Blank**

## Page 1

```
                08PJFIRM                 Motions
[1]   UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
[2]   -------------------------------x

[3]   FIRSTBANK PUERTO RICO,

[4]             Plaintiff,

[5]        v.                     09 Civ. 10317 GBD

[6]   BARCLAYS CAPITAL INC.,

[7]             Defendant.

[8]   -------------------------------x

[9]                               August 25, 2010
                                  10:31 a.m.
[10]
[11]
[12]  Before:

[13]            HON. GEORGE B. DANIELS,

[14]                              District Judge

[15]
[16]
[17]               APPEARANCES

[18]
      GIBBONS, PC (NY)
[19]       Attorneys for plaintiff
      BY:  JEFFREY A. MITCHELL, Esq.
[20]       DANIEL WEINBERGER, Esq.
               Of counsel
[21]
[22]  CLEARLY GOTTLIEB STEEN & HAMILTON, LP
          Attorneys for defendant
[23]  BY:  BOAZ MORAG, Esq.
           ARI MacKINNON, Esq.
[24]       AMY CHUNG, Esq.
               Of counsel
[25]
```

## Page 2

```
[1]              (In open court)

[2]              (Case called)

[3]         THE COURT:  Good morning.  Mr. Morag, why don't I hear

[4]    you on the motion.

[5]         MR. MORAG:  Good morning, your Honor.

[6]         As we indicated in our initial letters to this court

[7]    and the full briefing, it is the policy of this district and of

[8]    Congress to refer all matters that implicate the jurisdiction

[9]    of bankruptcy court to the bankruptcy court.  It is for that

[10]   reason and also because of the fact that Barclays is a party to

[11]   a number of proceedings currently pending in bankruptcy court

[12]   before Judge Peck and Lehman proceeding we believe this case

[13]   should be referred there as well.

[14]        Barclays signed a contract with Lehman that all

[15]   disputes under the asset purchase agreement and the sale order

[16]   would be resolved in the bankruptcy court.  We tendered to

[17]   Judge Peck an order that so provided that he retain

[18]   jurisdiction over any disputes, and we frankly think Judge Peck

[19]   would expect us to alert this court and seek to have all the

[20]   matters related to this case to the sale heard before him.

[21]        THE COURT:  Let me indicate to you both right now I

[22]   spoke to the bankruptcy court, spoke to Judge Peck on Monday

[23]   with regard to this issue, and in the abstract, and Judge Peck

[24]   did not -- the only way I can characterize it, he did not

[25]   express a decisive opinion one way or the other as to whether
```

## Page 3

```
[1]    or not this case should remain here or be remitted.

[2]         MR. MORAG:  Okay.  That is important information for

[3]    us to know.

[4]         Nonetheless, I do believe, given the way the issues

[5]    have been presented to your Honor by First Bank, that there is

[6]    no question that there is bankruptcy court jurisdiction.

[7]    Specifically this case does under the Second Circuit's test

[8]    arise in the bankruptcy court, the Lehman bankruptcy in that it

[9]    requires an interpretation and application and construction and

[10]   enforcement of the sale order that transferred assets from

[11]   Lehman Brothers, Inc. to Barclays.

[12]        We spent a long time before your Honor in April when

[13]   you had a chance to carefully review the complaint, the asset

[14]   purchase agreement, the sale order and other documents, and you

[15]   honed in on what your Honor believed was the critical issue in

[16]   the case, and that was frankly an issue that you recognized at

[17]   the outset of the argument and maintained throughout the

[18]   argument.

[19]        That is whether the securities in dispute, the

[20]   securities that First Bank claims it posted as collateral to

[21]   Lehman Brothers Specialty Finance that were transferred to

[22]   Barclays, "were purchased assets that were agreed to be sold

[23]   and were, in fact, included in the assets that were approved by

[24]   the bankruptcy court."  That is from your Honor's decision, at

[25]   Page 97 of the April 29th transcript.
```

## Page 4

[1]    Indeed, you reiterated that several different ways [2] during that hearing. At Page 51, the question is what was [3] intended to be bought and what was intended to be sold. Page [4] 100, the real question will be whether or not, in fact, the [5] evidence supports their contention that Barclays bought the [6] property, intended to buy the property and, in fact, it was [7] properly included within the purchased assets included and [8] designated as free and clear by the bankruptcy court.

[9]    Frankly, First Bank agreed with your Honor's analysis [10] at that hearing. Your Honor said at Page 51, the question is [11] what was intended to be bought and what was intended to be [12] sold, and Mr. Mitchell said that's right.

[13]    And then Page 105, based upon your Honor's decision [14] today, the claim in this case is whether basically what we have [15] here was this a purchase asset. Our allegation is it was a [16] purchased asset. That is what Mr. Mitchell said. Our [17] allegation, of course, is it is.

[18]    What the Second Circuit has said in cases that frankly [19] First Bank has never distinguished in their papers and [20] specifically the Jamaica Shipping versus Orient Shipping, and I [21] want to spend a couple of minutes on the facts of that case, [22] when an action turns on the terms of a sale order amounting to [23] a request that the bankruptcy court enforce that order, that is [24] core jurisdiction of the bankruptcy court. It arises in the [25] proceeding in which the bankruptcy court entered that order.

August 25, 2010

Page 5

[1]     The Supreme Court has held just as recently as 2008 in
[2] the travelers case that is cited in our papers that any court
[3] anywhere always has the jurisdiction to enforce and interpret
[4] its own orders. So clearly the bankruptcy court is being asked
[5] were these securities that are listed on a schedule filed with
[6] the bankruptcy court and part of this transaction there on
[7] purpose or by some sort of mistake.
[8]     It is important to remember here, your Honor, that the
[9] case law -- and this is where the facts of Jamaica Shipping are
[10] really relevant -- it is not whether the bankruptcy court
[11] possesses any special bankruptcy-related competence to decide
[12] the particular issue in this case, it is really a question of
[13] where does this dispute originate from. It originates in the
[14] sale agreement and the sale order approving it.
[15]     The Jamaica Shipping is important. What you had there
[16] was a company, that the debtor was a company that owned
[17] vessels. It went into bankruptcy. It naturally had contracts,
[18] charter parties with a variety of people. A party like
[19] Barclays bought the assets in bankruptcy, and those assets
[20] included assuming the various charter parties.
[21]     The party that bought the assets in bankruptcy then
[22] sold them to a second party, Jamaica, then found it was in the
[23] dispute with a charter party, again two totally unrelated to
[24] the debtors over which contract between the charter party and
[25] the debtor they had just assumed. Was it the May contract

Page 6

[1] which provided for certain rates for charter or was it the
[2] December contract?
[3]     Now, that is not a bankruptcy-related issue. If
[4] anything, it sounds maritime. The point was the Second Circuit
[5] affirmed there was bankruptcy court jurisdiction because you
[6] needed to figure out what contract was meant to be assigned to
[7] the buyer which then assigned it further on to the ultimate
[8] purchaser. That, the Second Circuit said, required an
[9] interpretation and application of the sale order in that case,
[10] the order that sold the assets. That is precisely what we have
[11] here.
[12]     THE COURT: Well, it is unclear to me. I think both
[13] sides on that issue are sort of talking past each other. It is
[14] unclear to me what it is that you say that the bankruptcy
[15] court -- let me back up.
[16]     Is it your position that -- I am not sure what your
[17] position is -- that the argument you need to be made to the
[18] bankruptcy court, what that argument is if, in fact, what they
[19] say is true.
[20]     If, in fact, these were pledged collateral securities,
[21] it did not belong to Lehman Brothers and should not have been
[22] on the list. Is it your argument that -- well, what is your
[23] argument beyond that, that the bankruptcy court uniquely is in
[24] a position to resolve I assume the bankruptcy court, although I
[25] have no reason to -- nothing in my conversation with Judge Peck

Page 7

[1] that went into this, but I would assume that it would not be
[2] the bankruptcy court's position that if something was
[3] mistakenly put on that list, that the bankruptcy court meant to
[4] include property that was not Lehman property simply because it
[5] was on a Schedule A.
[6]     I assume you won't make that argument even to the
[7] bankruptcy court if you go back to the bankruptcy court. So
[8] what is unique? I can assume what the bankruptcy court's
[9] interpretation of its order is. It agreed that the parties, it
[10] would approve what the parties represent to be the assets of
[11] Lehman Brothers that would be sold to Barclays and at the time
[12] that it was told that this was part of those assets.
[13]     For the sake of argument, let's assume they weren't
[14] part of those assets. What is your argument that you will make
[15] uniquely to the bankruptcy court that somehow the bankruptcy
[16] court's order meant to give you property that didn't belong to
[17] Lehman?
[18]     MR. MORAG: First of all, your Honor, as I think we
[19] lay out in our brief, it is the case that under the Second
[20] Circuit's standard, the sale order is final. If this was
[21] covered by the sale order, the Gucci case that we cite in our
[22] papers holds that the argument that an asset was not, in fact,
[23] property of the estate is foreclosed.
[24]     THE COURT: Well, that is a big if, though. It is the
[25] if that either I or Judge Peck is going to have to decide if

Page 8

[1] this property was, in fact, covered.
[2]     Are you saying that if someone had put on the Schedule
[3] A by mistake that Lehman Brothers was selling your car, that
[4] that would mean Barclays owns your car by the court's order if
[5] somebody put that on there by mistake? I assume that is not
[6] going to be your argument to the bankruptcy court or to this
[7] court. Maybe it will be. I don't know. That is what I am
[8] trying to --
[9]     MR. MORAG: Your Honor, the argument is we are
[10] operating from what your Honor said the issue was.
[11]     THE COURT: You should operate from what you say the
[12] issue was. You tell me.
[13]     MR. MORAG: We thought we established the intent of
[14] the parties through the papers. Your Honor said you couldn't
[15] take and resolve it on the papers, but the issue is the same.
[16] Was this intended to be transferred by Lehman?
[17]     Now, let us come to the issue of whether it could have
[18] been transferred by Lehman. Let's just get to that. That is
[19] what they're arguing. You should consider that question first.
[20] You should resolve it yourself. That is what they're arguing,
[21] asking you to do.
[22]     That is the most quintessentially core bankruptcy
[23] court question, what is or is not property of the estate,
[24] property of a bankrupt estate currently administered with
[25] ramifications for the entire administration of it. They are

---

**Page 9**

[1] asking you, if you look at their papers, their opposition
[2] brief, to answer the following questions all based on the
[3] bankruptcy code:
[4]     One, whether the securities were ever property of the
[5] Lehman estate within the meaning of the bankruptcy code. That
[6] is at Page 2, their opposition;
[7]     Whether 363 (b) of the bankruptcy code restricts the
[8] authority of LBI to transfer the securities. That is a
[9] question of the bankruptcy code;
[10]     Whether the fact that Lehman quote never sought
[11] permission from the bankruptcy code pursuant to 363 (c) to
[12] foreclose on the collateral posted by First Bank before closing
[13] with Barclays means First Bank wins. That is at Page 4.
[14]     THE COURT: Yes, but I don't know what it is you say
[15] in the bankruptcy code uniquely decides this issue beyond the
[16] argument that they're making that basic property rights decides
[17] this issue. The bankruptcy code doesn't address this issue.
[18] The bankruptcy code doesn't say -- there is nothing in the
[19] bankruptcy code that gives any particular guidance on whether
[20] or not if property is in the possession of a bankrupt and the
[21] bankrupt sells the property but the property doesn't belong to
[22] the bankrupt, that somehow there is some application of
[23] bankruptcy law that is different than any application of any
[24] other basic contract or property right law that applies in this
[25] situation.

**Page 10**

[1]     What uniquely applies in the bankruptcy law that you
[2] say that the bankruptcy court should apply?
[3]     MR. MORAG: Your Honor, they're asking you to apply
[4] the provisions of 363 (c) of the bankruptcy code. They're
[5] asking you to make findings with respect to compliance with
[6] Section 363 (c) of the bankruptcy code. The reason that's
[7] important and that may not --
[8]     THE COURT: Compliance in what way?
[9]     In what way does compliance -- in what way does
[10] compliance determine this issue in your favor if there is
[11] compliance, but in their favor if there is no compliance? I am
[12] not quite sure --
[13]     MR. MORAG: They say the court needed to conduct a
[14] hearing to foreclose on this collateral.
[15]     The point, they say the bankruptcy court needed to do
[16] that in order to have a valid transfer.
[17]     THE COURT: I am trying to figure out what you say the
[18] bankruptcy court needs to do, not what they say. You're the
[19] one who wants to go to the bankruptcy court. What do you think
[20] the bankruptcy court uniquely has --
[21]     MR. MORAG: This is not an issue of the well-pleaded
[22] complaint. Their complaint raises the issue of the sale order
[23] and why this is, why this was not transferred.
[24]     THE COURT: Sure. It is your motion to refer it to
[25] bankruptcy court. You are not arguing that I don't have

**Page 11**

[1] jurisdiction to resolve this issue. That is not what you're
[2] arguing.
[3]     MR. MORAG: The issue is whether the case, the
[4] dispute, the controversy raises bankruptcy issues. They are
[5] putting them front and center, not --
[6]     THE COURT: That is what I am trying to ask you. What
[7] is the bankruptcy issue?
[8]     MR. MORAG: They're, of course, asking you to decide
[9] if Section 363 (c) of the bankruptcy code has any relevance to
[10] this case whatsoever.
[11]     THE COURT: In what way?
[12]     Again, I am sorry, it is difficult for me to
[13] understand your argument when you keep saying that it is based
[14] on their argument. What is your argument that this -- that
[15] this should -- if you have an argument, is your argument simply
[16] that this should be in the bankruptcy court because they say
[17] bankruptcy law applies?
[18]     MR. MORAG: No.
[19]     THE COURT: Or is it your argument this should be in
[20] the bankruptcy court because you say bankruptcy law applies,
[21] and what bankruptcy law do you say applies and is
[22] determinative?
[23]     MR. MORAG: Your Honor, as we said, as we say in our
[24] brief, we say that any time you have to interpret an order and
[25] apply the court's order, it arises in that order.

**Page 12**

[1]     So the fact that Judge Peck has to decide whether this
[2] was a purchased asset or not, the fact that in the Jamaica
[3] Shipping case some judge, bankruptcy judge, had to decide
[4] whether they meant to incorporate the May charter party or the
[5] December charter party is itself within the jurisdiction the
[6] bankruptcy court. That is what the Second Circuit holds.
[7]     THE COURT: Just that nobody has articulated for me
[8] what you say the mental process is supposed to be to determine
[9] whether this is a purchased asset.
[10]     MR. MORAG: The mental process as we laid out in our
[11] opening brief, you would answer the following questions:
[12]     What was the intent of the parties?
[13]     Did Lehman mean to include this security on the list?
[14]     Was it in there by mistake?
[15]     Did Barclays agree to accept it?
[16]     Did the court approve it?
[17]     Those are the questions that go to the issue of
[18] whether it was intended to be transferred. We say that is the
[19] end of it.
[20]     THE COURT: You say that it is your position -- just
[21] trying to recollect from the earlier argument -- it is your
[22] position that regardless of whether they had the right to
[23] transfer, the property right to transfer, as long as they
[24] intended to transfer, that's dispositive of the issue?
[25]     MR. MORAG: We say that is dispositive. If it is not

---

**Page 13**

[1] dispositive, then you do have to look at the property right.
[2] That is also quintessentially a bankruptcy question.
[3]     **THE COURT:** Why is that a bankruptcy question? I am
[4] trying to focus the issue.
[5]     I assume you're not going to argue that Judge Peck
[6] knew the status of this property, had any knowledge whatsoever
[7] about the dispute or status of ownership of this property when
[8] he approved the basically $45 billion of assets to be sold and
[9] this $50 million of assets were on a list of Lehman Brothers
[10] claim, I assume you will acknowledge they claimed wrongfully
[11] that they owned it?
[12]     **MR. MORAG:** No, they owned it.
[13]     **THE COURT:** In what way did they own it?
[14]     That is the part I don't see in your papers, is it
[15] your argument that they owned --
[16]     **MR. MORAG:** That will be the factual argument, your
[17] Honor. We touched on this in the motion to dismiss and we
[18] didn't think it was appropriate for the purposes of deciding
[19] where the dispute goes to put in evidence before any discovery
[20] started. We didn't think we had any burden --
[21]     **THE COURT:** You don't have burden to put in evidence.
[22]     I am trying to understand your theory is they owned
[23] the property pledged as collateral where in any other common
[24] circumstance someone who puts up collateral, holding
[25] collateral, not owning the property, doesn't have the right to

**Page 14**

[1] sell it.
[2]     **MR. MORAG:** Your Honor, this is not a common law
[3] bailment; thus, is not a common law collateral. This is
[4] governed by a standard form ISDA agreement between First Bank
[5] and Lehman Brothers Special Finance.
[6]     **THE COURT:** Where is your theory this was their
[7] property and not First Bank's property?
[8]     **MR. MORAG:** That agreement, as we quoted in our
[9] papers, provides LBSF with the contractual right any time it is
[10] not -- prior to any time it is in default to sell,
[11] rehypothecate, transfer or assign the collateral.
[12]     We have now gone back and looked and we will be able
[13] to show the securities that we received were transferred for
[14] consideration from LBSF to LBI, and each one of them on a
[15] different date all prior to the bankruptcy filing. That is the
[16] factual issue that we will have to try and they will argue that
[17] that is not dispositive and those are issues that they intend
[18] to raise. That is how we will show that it was property of LBI
[19] or that LBI had the right to sell.
[20]     **THE COURT:** But explain to me how. And I am not here
[21] to dispute the merits of your case. I am just trying to
[22] understand under your theory that you intend to argue why the
[23] bankruptcy court is in some better or different position to
[24] analyze that than the district court.
[25]     **MR. MORAG:** Your Honor, I have to fight the premise.

**Page 15**

[1] The Second Circuit, the Third Circuit, all the case law that we
[2] have cited around, arising under, in no way considers the
[3] relative competence or expertise of the bankruptcy court versus
[4] the district court. That is not the question.
[5]     It is not particular competence, it is not where is
[6] the unique bankruptcy issue that arises in the case. For cases
[7] or disputes that involve the interpretation and enforcement of
[8] a bankruptcy court sale order, that is the only criteria. Does
[9] it require some jurist to go back, look at the sale order even
[10] if it clearly means delving into facts, even if it is
[11] ultimately not a pure bankruptcy question of which contract was
[12] meant to be incorporated or what terms the parties meant to
[13] agree to.
[14]     **THE COURT:** Yes, but that is not where you said the
[15] resolution of this case was going to be. You say it goes back
[16] to looking at the regional collateral agreement.
[17]     **MR. MORAG:** No. Was he said our position is whether
[18] or not it is a purchased asset, that is the intent of the
[19] parties. The intent, whether it was meant to be included, we
[20] stop there. They want to go back even further and say well,
[21] was Lehman authorized to sell it.
[22]     If that is their contention, that is what you have to
[23] consider as part of the dispute, and it is their contention.
[24]     **THE COURT:** No. What I have to consider is your
[25] contention that it is not.

**Page 16**

[1]     **MR. MORAG:** With all due respect --
[2]     **THE COURT:** And you contend it doesn't matter whether
[3] they owned it or not..
[4]     **MR. MORAG:** Even that is a bankruptcy question.
[5]     **THE COURT:** Why is that bankruptcy question?
[6]     **MR. MORAG:** The Second Circuit has said in the Gucci
[7] case when the sale is done pursuant to Section 363 (b) of the
[8] bankruptcy code, that cuts off rights unless there is a stay,
[9] and they included in the list of arguments that are cut off the
[10] complaint by a non-debtor that somehow property that is not of
[11] the debtor's was transferred.
[12]     **THE COURT:** You give me the right standard in your
[13] papers with regard to whether something is a core proceeding,
[14] but the argument you make here is different. The analysis is
[15] not whether or not I have to use, have to analyze bankruptcy
[16] law or the bankruptcy proceedings in order to resolve this
[17] issue. Usually the question with regard to a core issue is
[18] whether or not the resolution of this issue is going to
[19] uniquely affect the bankruptcy issue.
[20]     **MR. MORAG:** That is the question about related-to
[21] jurisdiction. That is the test with respect to related-to. We
[22] assert two bases of bankruptcy court jurisdiction. There are
[23] three, okay, that exist.
[24]     The claim arises in the bankruptcy code. We are not
[25] making that claim. The claim arises in a bankruptcy

Page 17

[1] proceeding. That is our lead argument. The second argument is
[2] that this relates to the bankruptcy proceeding of Lehman
[3] Brothers, and it relates to the bankruptcy proceeding of Lehman
[4] Brothers and that is where the conceivable effect on the estate
[5] comes in as the standard, and they don't dispute that is the
[6] standard.
[7]     That is the standard when what we say is that as your
[8] Honor recognized at the 29th hearing in April we paid money,
[9] our position is we paid money for these securities. If we have
[10] to give them up, we're out $50 million. That gives rise to a
[11] claim against the people who sold them to us, and those people
[12] are the bankruptcy court. This will affect their estate, and
[13] the only requirement that we need to show to invoke bankruptcy
[14] court jurisdiction is that the contribution or indemnity claim
[15] is at least reasonable. We don't have to show it is matured
[16] and we now have a judgment against us. We have to show it is a
[17] colorable and reasonable claim. Your Honor observed you
[18] couldn't discount that for precisely the reason of the economic
[19] logic. We paid for these. Now someone claims we have to give
[20] them over to someone else and get nothing in return. We're out
[21] $50 million. So the issue is whether we have rights against
[22] Lehman for some sort of replacement.
[23]     Let me add one more thing that is very important about
[24] the unique bankruptcy question here. If, in fact, this was all
[25] one big mistake, as they contend, there are remedies that the

Page 18

[1] bankruptcy court can impose that you cannot because you do not
[2] have jurisdiction over Lehman Brothers, Inc. or Lehman Brothers
[3] Special Finance. It is not entirely clear that if they are
[4] right, they get their securities back.
[5]     Maybe the remedy would be that we give them back to
[6] LBI, LBI gives them back to LBSF, and LBI gives us other
[7] substitute security for the fact this Was a mistake. Then
[8] First Bank is left to litigate with its counterparty over
[9] whether it should get those securities back or have a claim in
[10] their bankruptcy.
[11]     Those are all kinds of the issues that -- it does not
[12] necessarily follow that if Lehman didn't have the right to
[13] convey it, they win and they get their securities from us. It
[14] is very convenient but it doesn't always work that way.
[15]     The point is we cannot bring LBSF, LBI and the people
[16] who sold this stuff to us in this court. We are contractually
[17] committed to sue them only in bankruptcy court. Judge Peck
[18] says he may not mind this case being here. I don't believe
[19] anyone has asked him to let the LBI parties participate in this
[20] proceeding.
[21]     THE COURT: There is no reason for the LBI parties.
[22] The question of what LBI's liability may be to Barclays is
[23] irrelevant to a disposition of whether or not the property that
[24] Barclays is in possession of belongs to First Bank.
[25]     MR. MORAG: It may be irrelevant to the merits but it

Page 19

[1] is the question that has to be answered for the purpose of the
[2] jurisdiction analysis.
[3]     THE COURT: No, it doesn't have to be answered at all.
[4] You don't have any rights against First Bank. If First Bank
[5] owns the property, you only have recourse against Lehman
[6] Brothers.
[7]     MR. MORAG: That is not necessarily the case.
[8]     THE COURT: How do you have recourse against First
[9] Bank if First Bank establishes that this is property that
[10] should be returned to them?
[11]     MR. MORAG: Because you're making many assumptions.
[12] We don't need recourse against First Bank. All I am saying is
[13] there is a possibility here, not an outlandish possibility,
[14] that if the result that you find or Judge Peck finds, any
[15] jurist were to find this should not have been transferred, it
[16] it was a mistake, you put it back where that came from and that
[17] would be with the Lehman parties.
[18]     Whether First Bank gets it is yet another issue. It
[19] doesn't automatically go to First Bank. There are many, many,
[20] many parties who pledged collateral to LBSF where LBSF was
[21] holding it when the bankruptcy occurred. Not one has filed a
[22] motion and gotten their collateral back. That is all because
[23] the rules of the collateral posting essentially make use
[24] subject to creditworthiness of Lehman, and that is why everyone
[25] is filing claims against Lehman to try to get whatever they can

Page 20

[1] get out of bankruptcy. Not one has gotten their securities
[2] back as collateral.
[3]     So this is part of a much larger process. We have
[4] established that you need to interpret the sale order and, in
[5] addition, if they want to raise their issues, you would
[6] certainly have to decide what was property of the estate. That
[7] is not -- that is -- it is a state law issue, a property law
[8] issue, but it has such ramifications for the ongoing
[9] administration of the bankruptcy court.
[10]     Your decision could be entirely inconsistent with what
[11] Judge Peck finds in the Evergreen Solar case, a similar case
[12] pending against us in the bankruptcy court. They lent shares
[13] to Lehman instead of pledging them as collateral. Lehman
[14] transferred those shares to us. It is basically the same
[15] issue. They say the sale order precludes it and UCC precludes
[16] it. We say we are at risk of inconsistent adjudications on
[17] essentially the same issue.
[18]     That is why, for better or for worse, it is not that
[19] we don't want to be here. We feel we have to be there. We
[20] started there and that is where we have to have all of the
[21] decisions, for better or for worse.
[22]     THE COURT: I am not quite sure how that distinguishes
[23] this even under that argument. I don't understand how that
[24] makes this a core rather than a non-core-related issue.
[25]     MR. MORAG: Whether it is related to or arising in,

**Page 21**

[1] there is still bankruptcy jurisdiction.

[2] **THE COURT:** I understand that. Obviously there are
[3] two different considerations: If it is a core proceeding
[4] rather than non-core.

[5] **MR. MORAG:** Congress has in its wisdom concluded core
[6] proceedings are those not that not only arise in the bankruptcy
[7] code, but arise in the bankruptcy proceeding. I will give you
[8] other examples of things you --

[9] **THE COURT:** I am trying to understand why you say
[10] this -- how your argument is different with regard to a
[11] non-core proceeding, and most of what you're saying is related
[12] to a non-core proceeding as opposed to a core proceeding. In
[13] what way is this a core proceeding?

[14] **MR. MORAG:** Your Honor, I apologize if I am repeating
[15] myself. A controversy, a dispute looked at from the issues
[16] raised by both sides, that requires a jurist to construe, apply
[17] and enforce a sale order. A bankruptcy court sale order has
[18] been held repeatedly by the Second Circuit so arise in that
[19] bankruptcy proceeding in which the sale order was issued; and,
[20] therefore, anything arising in is core as opposed to non-core.
[21] That is the dichotomy. You have three bases of jurisdiction
[22] arising from the bankruptcy code, arising in a proceeding and
[23] related to. The first two arising ones are core and related to
[24] is non-core. That is how the statute reads.

[25] **THE COURT:** But in most instances and maybe in all the

**Page 22**

[1] cases you cite, the party involved in the dispute is the
[2] bankrupt itself.

[3] **MR. MORAG:** No, actually, no.

[4] **THE COURT:** Okay.

[5] **MR. MORAG:** In the Second Circuit case of Jamaica
[6] Shipping, no debtor is involved.

[7] In the Third Circuit case, none of these cases are
[8] debtor cases. We are not relying on a single case in which the
[9] debtor was a party. The dispute between the buyer of the
[10] debtor assets and the charter party, no debtor is involved
[11] there. The dispute between the buyer of a hospital and the
[12] union who represented the employees of the hospital, the Third
[13] Circuit case, there is no debtor party.

[14] The Third Circuit holds, Second Circuit holds that
[15] arises in the sale order because whether the buyer gets the
[16] rights, didn't get the rights is a question for interpretation
[17] of that order. That is core, arising in bankruptcy
[18] jurisdiction. That is the law. They don't deal with that.
[19] They don't distinguish those cases.

[20] They say that district courts have made rulings about
[21] what is and is not property of the estate. In two of the cases
[22] the district court did it after the bankruptcy court did it in
[23] the first instance which was an essentially an appellate
[24] process. In two of the other cases that they cite, the issue
[25] was never presented in the bankruptcy court. The bankruptcy

**Page 23**

[1] had closed and, yes, in that circumstance, of course, the
[2] district court would have to make a decision.

[3] We are talking about an ongoing, pending bankruptcy
[4] proceeding. I don't want you to make light of these issues
[5] that they raise. If they are serious about imposing the
[6] standards of Section 363 (c) on a Section 362 (b) bankruptcy
[7] sale, that is a very novel question of bankruptcy law. 363 (b)
[8] deals with sales out of the ordinary course. 363 (c) which
[9] they rely on deals with sales in the ordinary course.

[10] This is an issue, if you decide that it applies, would
[11] affect every single bankruptcy court judge in the country and
[12] virtually every Chapter 11 case. We are not the ones who are
[13] raising these issues of 363 of the bankruptcy code, but it
[14] seems to me like utterly ironic for them to be denying
[15] bankruptcy court jurisdiction when what they're asking you to
[16] apply is Title 11 of the bankruptcy code. They're asking you
[17] to make a finding about property of the estate which is what
[18] the bankruptcy court -- like the quintessential bankruptcy
[19] court issue whenever there is a dispute over it.

[20] Now there is the dispute over it so it goes to the
[21] bankruptcy court.

[22] **THE COURT:** Let me hear from Mr. Mitchell.

[23] **MR. MITCHELL:** Thank your Honor.

[24] Good morning.

[25] **THE COURT:** Good morning.

**Page 24**

[1] **MR. MITCHELL:** I want to start with one quote from Mr.
[2] Morag from the motion to dismiss argument. It is important to
[3] keep it in mind. Mr. Morag said at Page 14 of the transcript,
[4] "It is the case, and don't deny it, that the intention was
[5] that the only assets, the only securities sold to Barclays
[6] would be those that LBI, in fact, owned and had the power to
[7] convey."

[8] So what this case presents to your Honor is I think a
[9] very simple, ordinary case under state law that is brought to
[10] this court pursuant to 28 U.S.C. 1332 which places original
[11] jurisdiction in the district court for a determination of state
[12] law issues.

[13] Did Lehman own the asset or the assets that we allege
[14] are ours and are now in the possession of Barclays, two
[15] non-bankrupt parties in litigation with each other over
[16] ownership of a particular asset?

[17] Mr. Morag says we have evidence that it was
[18] transferred and that Lehman owned it. If, in fact, that is
[19] true, then I guess that will be the evidence that comes out in
[20] the case. However, that would be the only reason that they
[21] might have a very good argument in the case. We did present to
[22] the court in our motion as Exhibit A to Mr. Weinberger's
[23] affidavit documentary proof that certainly as of August 30,
[24] 2008 the asset was still reported as having belonged to First
[25] Bank. So we have 15 days.

**FIRSTBANK PUERTO RICO, v.**
**BARCLAYS CAPITAL INC.,**

August 25, 2010

Page 25

[1]       Did that asset get transferred somewhere within that
[2]   15 days because it had to be before the bankruptcy filing?
[3]       The only reason we cite to the bankruptcy code is not
[4]   for the purposes of having the court interpret the bankruptcy
[5]   code, but rather to understand that First Bank can't be
[6]   dispossessed of property rights under bankruptcy law by mistake
[7]   or without there having been some kind of due process because
[8]   the bankruptcy code protects First Bank. Due process is a very
[9]   common concept under our law. I have property, I own property,
[10]   I post it as collateral and somebody took it from me. I don't
[11]   think there is any dispute in this case that this was ours.
[12]       We posted it as collateral to secure certain financial
[13]   obligations or financial transactions that we entered into with
[14]   Lehman. It was collateral and meant to belong to us. As we
[15]   showed you from Exhibit A which was attached our papers, not
[16]   only were they on the account statement identified as belonging
[17]   with us, we got credit with interest on these things on a
[18]   regular basis.
[19]       As of the last account statement before Lehman filed
[20]   for bankruptcy, it still belonged to us. Now Barclays has it
[21]   and wants to keep it. Is that right? That is what this case
[22]   is about. That is a state law claim. Their defense in the
[23]   case is we bought it out of bankruptcy, that is the defense.
[24]   That is not our claim. Our claim is it belongs to us, nobody
[25]   ever took it from us, core process never took it to us. The

Page 26

[1]   only reason to cite it to the bankruptcy code is to say there
[2]   are processes.
[3]       The court mentioned also Exhibit A. You asked whether
[4]   Judge Peck knew anything about the $62 million in securities in
[5]   a $45 billion transaction. Exhibit A, Schedule A wasn't
[6]   delivered until December, long after the transaction closed.
[7]   Somebody did an inventory after-the-fact, created Schedule A.
[8]       The first time it is delivered is in December of 2008,
[9]   long after the closing. The answer is abundantly clear that,
[10]   no, Judge Peck did not know because it wasn't even a Schedule A
[11]   yet. Separately the only reason we mention 363 (c) of the code
[12]   is because there never was a motion to foreclose on our
[13]   collateral. So 363 (c) of the code says as a fundamental
[14]   matter of due process, you can't take our property without
[15]   notice or consent.
[16]       So we have no such motion. The point of 363 (c) of
[17]   the code is simply to say to the court there is an absence of
[18]   such a motion under the bankruptcy code. Therefore, there
[19]   would certainly appear to be no process of law that happened in
[20]   the bankruptcy court for Barclays to come in here and say this
[21]   was at least something that we had notice of, that we
[22]   participated in and we lost in the bankruptcy case. Then it
[23]   might be core proceeding or related to. I would give you that,
[24]   but it never happened.
[25]       That is all, that is the only point of all that. The

Page 27

[1]   separate part of it is, was it transferred pursuant to the
[2]   agreement? We see the intent of Barclays, Mr. Morag admitted
[3]   Barclays did not intent to buy things not owned by Lehman. The
[4]   issue in the case, a one-issue case, was this owned by Lehman
[5]   prior to the entry of a sale order by which assets are
[6]   transferred by Lehman Brothers, Inc. and Lehman Brothers
[7]   holdings to Barclays under the code.
[8]       The other question that has been before the court on a
[9]   motion to dismiss, an important argument that seems to be made
[10]   is Article VIII of the Uniform Commercial Code. Barclays seems
[11]   to have -- I don't know whether they're abandoning that
[12]   argument or continuing that argument. It is the equivalent of
[13]   a bona fide purchaser without notice. The point is that if
[14]   there is no motion in the bankruptcy court to disposess us of
[15]   our property rights by which we have notice, and the bankruptcy
[16]   code protects parties to post collateral, that is the point of
[17]   the whole thing.
[18]       You post collateral. Obviously, companies that file
[19]   for bankruptcy could be holding collateral, so the code says
[20]   you can't dispose of somebody else's collateral unless they
[21]   consent or there is a motion on notice which didn't happen.
[22]       **THE COURT:** Well, but as I look more closely at the
[23]   papers, it seems to me that the way you just described it is
[24]   the critical issue, is whether or not they had any authority to
[25]   sell this property, not, not necessarily the more limited issue

Page 28

[1]   of whether or not it was First Bank's property.
[2]       There seems to be at least some -- without resolving
[3]   that issue -- there is at least some reference even in the
[4]   original agreement that one might interpret as consent by First
[5]   Bank to Lehman Brothers to sell the collateral.
[6]       **MR. MITCHELL:** Your Honor, the point of that would
[7]   be -- I can concede to you -- you're talking about underlying
[8]   credit support assets?
[9]       **THE COURT:** Yeah -- well, I don't know the answer to
[10]   that question. Isn't there at least, isn't there at least
[11]   language, specific language that refers to their ability to
[12]   sell the collateral?
[13]       **MR. MITCHELL:** I agree with you, there is, your Honor.
[14]   What we say is obviously with the evidence before the
[15]   court is on this motion as of August 30, 2008, the last account
[16]   statement, it hadn't been sold yet because it is still being
[17]   accounted to us for us as ours. We are aware of no sale of
[18]   that collateral, which would be a question of fact in this
[19]   case. That is not a bankruptcy court issue. Was it sold
[20]   between August 30th, 2008 and the date Lehman Brothers Holdings
[21]   and Lehman Brothers, Inc. filed for bankruptcy on September
[22]   15th, 2008.
[23]       **THE COURT:** Why should I assume that is necessarily
[24]   going to be dispositive of the issue?
[25]       **MR. MITCHELL:** Because the agreement itself says once

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

Page 29

[1] Lehman Brothers Holdings files for bankruptcy, there is a
[2] default and there is no longer the ability to sell the asset.
[3] It has to have happened in that 16-day period or didn't happen.
[4] We don't think it happened at all.
[5]     I concede to you the credit support annex is a
[6] question of fact of this case. I think that is the issue or
[7] certainly a critical issue that will be before the court on
[8] this case. Was it, in fact, sold?
[9]     Now, you can go a step further. Let's say that
[10] Barclays was really smart and Barclays tried to concoct a
[11] transaction where they were going to, you know, effectuate a
[12] sale after the bankruptcy filing but before the -- because
[13] they're aware of this. We are talking about a sophisticated
[14] financial institution that obviously knows what these
[15] agreements are. They can't do that because they know once
[16] there is a default, LBSF is precluded from selling the
[17] collateral any longer. That is the date it ends.
[18]     THE COURT: Even if you're right as to all of that,
[19] that is not my issue right now. Let me assume for both sides
[20] that ultimately you are going to win on the merits. That
[21] doesn't resolve the issue of where those issues should be
[22] decided. The question here is even if you're right, why isn't
[23] it appropriate for the bankruptcy court to make that
[24] determination since it was the bankruptcy court that approved
[25] the sale?

Page 30

[1]     Isn't the issue -- so we can really put aside the
[2] issue as you framed it before. The issue is not who owned the
[3] property. That is not the dispositive issue. The issue is
[4] whether or not, when the property -- the issue is whether or
[5] not Lehman Brothers had the right and authority to sell the
[6] collateral; and, two, whether or not the bankruptcy court had
[7] the authority to approve such a sale.
[8]     Isn't that really the dispositive issue?
[9]     MR. MITCHELL: With all due respect, I disagree with
[10] your Honor. I think it is fundamental, like breathing. A
[11] bankruptcy court --
[12]     THE COURT: If you weren't breathing?
[13]     MR. MITCHELL: You can take judicial notice of the
[14] fact that a bankruptcy court does not have authority over
[15] assets that are not part of the estate.
[16]     THE COURT: That is a factual determination.
[17]     MR. MITCHELL: A hundred percent correct.
[18]     I am responding to your Honor's statement who owned it
[19] is not the issue. I think that is the issue. That is the real
[20] issue because what we establish -- and we certainly established
[21] for the purposes of this motion as a matter of evidence that as
[22] of August 30, 2008, we certainly were reported as having owned
[23] the collateral.
[24]     THE COURT: It doesn't matter. You have just
[25] conceded. Whether you owned the collateral or not is not

Page 31

[1] dispositive of whether they had the right to sell it.
[2]     MR. MITCHELL: It is, though, it is.
[3]     THE COURT: It is not because you concede they had the
[4] right to sell it at some point even though you did own it.
[5]     MR. MITCHELL: No, no, no. Then if that is what the
[6] court understood, let me be clear. They have a contractual
[7] right, but did they?
[8]     THE COURT: Wait a minute, the "did they" is the
[9] second part.
[10]     MR. MITCHELL: Why?
[11]     THE COURT: Because the first part is that even though
[12] you owned it, did they have a contractual right to sell it.
[13] The answer is yes, under certain circumstances.
[14]     MR. MITCHELL: Correct.
[15]     THE COURT: The fact is simply because you proved you
[16] owned it does not decide the issue of whether or not they had
[17] the right to sell it. Other facts determine whether or not
[18] they had the right to sell it beyond your own ownership.
[19]     Your ownership in and of itself did not prevent them
[20] from selling the collateral. You are saying up until the
[21] bankruptcy, you say even though you owned it, they had the
[22] right to sell it, or at least that is you're not in a position
[23] to argue pursuant to the agreement that even though you owned
[24] it, they had a right up until they filed bankruptcy to sell it.
[25]     What you're arguing is it is not the question of the

Page 32

[1] ownership; it is the question of the bankruptcy filing that
[2] determines whether or not they had the right to sell this
[3] property.
[4]     MR. MITCHELL: I think I am following you, but I see
[5] it as a little more mixed together. Let me articulate it how I
[6] see it and perhaps it answers the question, perhaps it doesn't.
[7] Let me try.
[8]     There is a contract, an outstanding contract entered
[9] into with Lehman long before Lehman filed for bankruptcy in
[10] which collateral is posted. It is a pledge agreement and it
[11] has standard pledge language which includes pledge language it
[12] can be a variety of different things you would expect in a
[13] pledge.
[14]     THE COURT: Right.
[15]     MR. MITCHELL: Lehman, which was at the time
[16] functioning as the largest financial institution in the world
[17] or one of the largest financial institutions in the world held
[18] it as collateral. They had agreements that allowed them to do
[19] things necessary to deal with the collateral.
[20]     THE COURT: Including sell it.
[21]     MR. MITCHELL: Including sell under certain
[22] circumstances, but it doesn't make it any less collateral. We
[23] know that. Obviously, Lehman was not in the business of
[24] stealing the collateral of its customers or it wouldn't be in
[25] business very long.

---

Page 33

[1] Obviously, it held this as collateral. It reported to
[2] First Bank it was holding it as collateral and it issued
[3] account statements that accounted for the assets as belonging
[4] to First Bank and paying interest on those assets to First Bank
[5] and reflected in the last account statement we received before
[6] Lehman filed for bankruptcy.
[7] Then you have what I will call in this case the dark
[8] period because there is a period between the last account
[9] statement and September 15th, 2008 which is 16 days where at
[10] this point we have had no discovery, we have had no documents
[11] and no evidence, but let's assume during the dark period if Mr.
[12] Morag is now saying he has evidence that it was sold during
[13] that period, we haven't seen it. That is a function for
[14] discovery in the case.
[15] Assuming it was not sold during the dark period which
[16] then we have to deal with that evidence to see what it shows,
[17] if it is not sold during the dark period, we know as of the
[18] moment of filing of bankruptcy, it still belonged to First
[19] Bank. Since the bankruptcy code says that the authority of the
[20] bankruptcy court is limited to assets of the estate, we know at
[21] the moment of filing it didn't belong to LBI, it just didn't.
[22] Therefore, it had no authority. We continue to own our
[23] property and the right to sell it no longer existed.
[24] **THE COURT:** That doesn't decide the issue before me.
[25] **MR. MITCHELL:** The transfer issue?

---

Page 34

[1] **THE COURT:** Yes.
[2] **MR. MITCHELL:** The transfer issue is different.
[3] **THE COURT:** It doesn't tell me who should make that
[4] determination in your favor and who is in the best position to
[5] do that and whether or not it is appropriate for the bankruptcy
[6] court to do that because if you characterize the issue, the
[7] issue, as I say, is somewhere in-between the way each of you
[8] wants to characterize it in your favor.
[9] The issue is not whether or not you owned the
[10] collateral. Obviously, under your argument, any time before
[11] they filed bankruptcy Lehman Brothers could have sold that
[12] collateral. I assume if they sold that collateral and got cash
[13] for it, that that cash equivalent would have to be turned back
[14] to First Bank if it no longer was necessary to be used as some
[15] sort of monetary collateral or if it was sold, the securities
[16] were sold for some amount above what was supposed to be the
[17] basis for the collateral, they would be entitled to the
[18] additional amount.
[19] If Lehman Brothers, even though First Bank owned the
[20] collateral, your argument is that pursuant to the agreement, if
[21] Lehman Brothers said well, you know what, we think this is what
[22] we're going to do: You owe us 50 million. We think the
[23] securities now are worth 60 million. We decide we want to sell
[24] it. We'll keep the 50 million in our bank account so you are
[25] fully collateralized and we'll give you 10 million back because

---

Page 35

[1] that is above what is needed for the collateral.
[2] Not only would First Bank have not complained about
[3] that, First Bank would have had no legal right to complain
[4] about that sale. Even if they said you know what, we don't
[5] want to sell the property.
[6] Under those circumstances, I am just assuming for the
[7] purposes of this argument, and this may not be the facts, I
[8] don't want any future determination to assume these are the
[9] facts, but if those are the facts and if the agreement allows
[10] them to sell the property, then the question is whether or not
[11] the, after you, as you characterized it, after they declared
[12] bankruptcy, did they have the authority to sell that property,
[13] continued authority to sell that property; and, two, did the
[14] bankruptcy court's order, did the bankruptcy court have the
[15] authority to approve that sale.
[16] **MR. MITCHELL:** May I?
[17] **THE COURT:** Go ahead.
[18] **MR. MITCHELL:** The answer to the question is no. I
[19] think that is abundantly clear under bankruptcy law it is not
[20] an asset of the estate. I don't think anybody will argue. Mr.
[21] Morag wouldn't argue to Judge Peck that Judge Peck would
[22] intentionally authorize the transfer of assets that didn't
[23] belong to Barclays that was presented. Judge Peck, we are
[24] advising you that within this bundle of assets or assets that
[25] don't belong to Lehman Brothers, Inc. and your order is

---

Page 36

[1] approval of the transfer of those assets that don't belong to
[2] Lehman to us, so we now own them to exclusion of third parties
[3] who are not here and have not been heard, no chance Judge Peck
[4] will say I agree to that.
[5] The bankruptcy court's authority -- because let's talk
[6] about the motion here. What does a bankruptcy court do? The
[7] bankruptcy court is created by Congress. Your Honor is a
[8] lifetime appointee. You're an Article III judge. This is a
[9] diversity case which asserts state law claims, not bankruptcy
[10] claims, and it is brought pursuant to a statute that puts
[11] original jurisdiction in the Federal District Court.
[12] As a plaintiff not filed for bankruptcy, not a party
[13] to the sale order, not a party to the -- stranger to all of the
[14] transactions that occurred in the bankruptcy court and not put
[15] on notice that our assets were, in fact, being transferred to
[16] Barclays, a stranger now comes to the district court after
[17] finding the party in possession of its property and asserts
[18] state law claims to give it back.
[19] **THE COURT:** You have left something out. It may or
[20] may not -- I don't think it is determinative but it is -- after
[21] you were claiming in the bankruptcy --
[22] **MR. MITCHELL:** We filed -- two different things --
[23] your Honor would, I am certain your Honor would concede that
[24] when you're a plaintiff in a case, you might sue multiple
[25] defendants with different theories.

---

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

Page 37

[1]     THE COURT: I understand.

[2]     MR. MITCHELL: We don't have the ability to sue Lehman
[3] here, but we have Barclays as a legitimate defendant and we
[4] passed the motion to dismiss stage so we have state law claims
[5] grounded in diversity issues against Barclays.

[6]     THE COURT: I understand that, but it does not support
[7] an argument that the nature of your claim is inappropriate to
[8] be adjudicated in the bankruptcy court because you went to the
[9] bankruptcy court right away.

[10]     In the first place, you would go because the
[11] bankruptcy court is going to control the distribution and sale
[12] of Lehman Brothers' assets and it is going to set the priority
[13] for creditors, security and unsecured, and give them an
[14] opportunity to enforce their rights there.

[15]     You are not arguing you could not have gotten the
[16] relief that you were entitled to from the bankruptcy court as a
[17] claimant? You are not arguing that now?

[18]     MR. MITCHELL: That is an interesting question because
[19] it is something we gave thought to before the lawsuit was
[20] filed. There are several things. First of all, the claim
[21] filed in bankruptcy is a prophylactic claim. We don't believe
[22] that we are an unsecured creditor of the Lehman estate. We
[23] believe our property is there.

[24]     Whether or not we are ultimately going to be treated
[25] as an unsecured creditor in the Lehman case may, in fact,

Page 38

[1] depend on the outcome of this case. Separate and apart from
[2] that, if you don't file the proof of claim, then you're barred.
[3] So the cases we cited to the court, cases in which the filing
[4] of a statement, a proof of claim in bankruptcy, Enron case and
[5] others, that is not dispositive of whether or not you have a
[6] claim against a non-bankrupt third party because there are
[7] certain rules that apply in bankruptcy. If you don't take care
[8] of those things, you may be barred forever. We never know how
[9] these things are going to turn out.

[10]     What we have in front of your Honor is a diversity
[11] case properly asserting claims between two non-bankrupt parties
[12] at which state law issues are before the court and which
[13] federal statute says original jurisdiction, original
[14] jurisdiction is in the district court. A significant matter is
[15] should the district court even defer to the bankruptcy court on
[16] an issue like that.

[17]     THE COURT: Because one argument is that, yes, because
[18] it is done pursuant to the bankruptcy court's order.

[19]     MR. MITCHELL: Not really. We are not suing pursuant
[20] to any order; but we are suing --

[21]     THE COURT: No, no, the sale and the transfer of
[22] assets is pursuant to the bankruptcy court's order. Isn't that
[23] the most logical analysis of why it would affect the bankruptcy
[24] proceeding?

[25]     MR. MITCHELL: It is a matter of evidence. If I could

Page 39

[1] jump ahead a bit because obviously I thought about this case a
[2] lot.

[3]     Mr. Morag concedes that Barclays did not intend to buy
[4] assets that didn't belong to it. We can assume that the
[5] bankruptcy court certainly didn't intend to bless the transfer
[6] of that, knowingly bless the transfer of assets that didn't
[7] belong to Lehman. I dare say when we deposed the lawyers, the
[8] lawyers who negotiated the documents are going to say it wasn't
[9] our intent to make sure that assets that didn't belong to
[10] Lehman get transferred.

[11]     I think a fact of this case, you can pretty well
[12] assume will be true is that nobody went into this deal
[13] intending to take assets that didn't belong to Lehman. You get
[14] to the second part is did it happen and, if so, can it stand.

[15]     THE COURT: That is really not the issue. That is not
[16] the issue. The issue is regardless of how they characterized
[17] it or how even the court would characterize it, the issue is
[18] whether or not they transferred property, anyone intended that
[19] they should transfer property that they didn't have the right
[20] to transfer. That is really what it comes down to, whether
[21] they sold property that they didn't have the right to sell.

[22]     As we have just discussed, that is not totally
[23] dispositive of who owned the property.

[24]     MR. MITCHELL: I agree with that.

[25]     THE COURT: The issue is not whether or not they

Page 40

[1] intended, dispositive issue is not whether or not they intended
[2] to sell property that didn't belong to them. The issue is
[3] whether or not they intended to sell property that they didn't
[4] have the right to sell. Isn't that really the issue?

[5]     MR. MITCHELL: I think what your Honor is saying,
[6] because I agree with with what your Honor said, it does come
[7] down to, because the intent issues will show that nobody
[8] intended this, but did it happen?

[9]     Did it happen and, if so --

[10]     THE COURT: But it only happened because the
[11] bankruptcy court approved it.

[12]     MR. MITCHELL: Not necessarily. I could have happened
[13] because of a mistake.

[14]     THE COURT: It wouldn't have happened unless the
[15] bankruptcy court approved it.

[16]     MR. MITCHELL: Since Schedule A comes in December, and
[17] since there is nothing presented to the bankruptcy court at the
[18] time of the transaction that says this is what we are giving
[19] them, kind of like an inventory after-the-fact, I think what
[20] you really have here, you have to start with the proposition of
[21] if you accept the fact that the bankruptcy court can't
[22] knowingly do it and they didn't intend to do it, then if it
[23] happened, how did it happen? That is the factual part of this
[24] case.

[25]     If the evidence comes out which we have to do if the

[1] argument is that during the black period it got sold, during
[2] the dark period when we don't know what happened, it got sold
[3] and we look at the circumstances under which it got sold, and
[4] then in theory I guess at the moment of sale it is very
[5] important that it was an asset of Lehman Brothers Inc. at the
[6] time of the transaction, and they have a good deny and they
[7] have no indemnity claim over against Barclays, against Lehman
[8] because they get to keep the asset.

[9] On the other hand, if it is not sold during that
[10] period and it wasn't the intent that assets not belonging to
[11] Lehman be transferred, and we are in a position where before
[12] there is any inventory, they take possession of something that
[13] didn't belong to Lehman, then presumably the value or the asset
[14] comes to us. At the end of the day nothing goes to Lehman.
[15] Lehman's out of the picture one way or the other because --
[16] that is, I think, the fundamental issue of transfer to
[17] bankruptcy court. This will not go to the administration of
[18] the Lehman estate.

[19] The property has left the estate. They moved on to
[20] other things. Whatever those other things are fighting, those
[21] are matters that must affect the creditors of Lehman. These
[22] are claims against Lehman, claims involving Lehman, claims that
[23] go to the estate.

[24] To the extent -- this has nothing to do with that. At
[25] in the end of the day the court's judgment in this case, does

[1] Barclays prevail? Does First Bank prevail? You are not going
[2] to issue any orders that have anything to do with or going to
[3] bind in any way, shape or form Lehman.

[4] THE COURT: What is the relief you say that, the form
[5] of the relief you say that you would ultimately seek from this
[6] court?

[7] MR. MITCHELL: We have claims for unjust enrichment,
[8] claims for conversion. Those are the primary claims that are
[9] before this court.

[10] THE COURT: You would want an order saying -- what are
[11] the remedies you seek?

[12] MR. MITCHELL: Monetary damages, the value of our
[13] asset which is in the hands of the defendant. So they would be
[14] unjust enrichment damages or conversion damages, which is what
[15] the court has allowed to proceed in this particular case.

[16] Your Honor, we have significant issues. We have
[17] addressed to the court obviously the case law. I don't know
[18] that we necessarily talked past each other. We have spoken
[19] differently about these issues. We cited to the court a case
[20] from IBM before Judge McMahon which involved patents which I
[21] think is very similar to this case. If you read that, it looks
[22] similar to this case.

[23] THE COURT: Are you making the argument, and if you
[24] are, why is this inappropriate for a determination by the
[25] bankruptcy court other than you don't want to be in the mess in

[1] the bankruptcy?

[2] MR. MITCHELL: We have a Constitutional right to be in
[3] the district court.

[4] THE COURT: I am asking you if you have a compelling,
[5] rational reason other than you don't want to be there? That is
[6] your argument.

[7] MR. MITCHELL: No. This is the right place to be.

[8] THE COURT: I want to know why that is the wrong place
[9] to be because I don't disagree with you this is the right place
[10] to be. The reality is, bankruptcy court has established here
[11] and bankruptcy court is the right place to be. The question
[12] is: Why is that? Why are you arguing that this is the right
[13] place to be and that is the wrong place to be?

[14] MR. MITCHELL: Neither of us are in bankruptcy because
[15] we are asserting state law claims under diversity of
[16] citizenship. Bankruptcy judges are not referees of disputes
[17] between non-bankrupt parties and the results of this case don't
[18] go to the benefit of the estate. Therefore, we should not be
[19] entwined in what would be a multitude of other issues that have
[20] nothing to do with us, nothing to do with this case.

[21] It will ensnare us in issues that go far beyond the
[22] discrete issues in this case, which are the Lehman bankruptcy
[23] issues which don't involve what we are talking about here.

[24] THE COURT: We only ensnare you if it is related.

[25] MR. MITCHELL: No, because we would --

[1] THE COURT: If.

[2] MR. MITCHELL: Take the Evergreen Solar case, a motion
[3] to dismiss by Evergreen Solar was filed in January of 2009. It
[4] hasn't been decided yet. That case is proceeding at a snail's
[5] pace. We will get a much faster resolution in this case. We
[6] have a right to be in this court. This is not a case -- has
[7] nothing to do with the Lehman bankruptcy other than the fact
[8] they say they bought it pursuant to the sale order.

[9] Your Honor clearly has the discretion to keep it.
[10] There is no question you do. Your Honor's familiar with the
[11] issues in the case. We certainly will focus the issues on what
[12] is simply in this case and this case alone. To the extent
[13] there are bankruptcy law things that you will look at, your
[14] Honor is certainly capable and has on many occasions I am also
[15] sure looked at other judges' orders, other course, other
[16] states, perhaps from the bankruptcy court.

[17] Ultimately, we have a demand for a jury trial. You
[18] can't have a jury trial in a bankruptcy court anyway. It is
[19] far more efficient for the purposes of resolution of the case
[20] to be here. I think from the standpoint of --

[21] THE COURT: You have a request for jury trial?

[22] It is difficult for me to anticipate what the disputed
[23] issues of fact could possibly be at the end of this litigation
[24] and how it won't be real clear that this case is appropriate
[25] for decision on summary judgment.

Page 45

**MR. MITCHELL:** It may very well be.

**THE COURT:** I don't know what could end up being a disputed issue of fact with regard to these issues.

**MR. MITCHELL:** I can never anticipate the court granting summary judgment. Ultimately we have a jury demand and it cannot be resolved that way.

I think what we really have here, to liken it to something else, I think your Honor will appreciate that. Sometimes there are multiple jurisdictions in which a case might be brought. In all candor with the court, I really think this was the right place to bring this. I seriously debated and doubted that it was the appropriate venue for a non-bankrupt plaintiff, you know, a non-debtor to sue a non-bankrupt party in bankruptcy court on state law claims. I don't think that is appropriate. I think this is where it belongs.

We chose a venue. Clearly the court has jurisdiction. Clearly under 28 U.S.C. 1332, not only does the court have jurisdiction, but original jurisdiction. It should be heard by a district court judge. That is the place that we as the plaintiff chose as the venue. Is there a compelling reason that has been presented to your Honor why your Honor is incapable or should not resolve this discrete dispute which has now we have alleged in front of your Honor on multiple occasions that your Honor is very familiar with the facts.

Page 46

We really know this is not that complicated a case, shouldn't be that complicated a case and is not that complicated a case. Doesn't it appropriately belong before your Honor since it is not an inappropriate venue for us to have brought it in the first place? Not that we were forum shopping. This is actually where it should have been brought. If you brought it in the bankruptcy court in the first instance, it is questionable whether that would be the appropriate venue based on the complaint.

**THE COURT:** I am not sure about that.

Quite frankly, if you, if you had been given prior notice that the sale was going to take place and that in that sale were going to be these assets, you would have been right there in the bankruptcy court and you would have made your case immediately to the bankruptcy court these were not assets that should have been included in this and that it was within the bankruptcy court's authority and responsibility to separate these assets and identify these assets as if at least not yours, disputed assets as to whether or not they had the right to sell. Then this case would have never arose in this district.

**MR. MITCHELL:** Right, which is why we point out to the court 363 (c) of the code. That didn't happen. As a result, we end up dispossessed of our property without any due process.

If you think about it logically as well, and I don't

Page 47

know Judge Peck, I have not been before Judge Peck, but presenting Barclays was a party to a transaction with Lehman, we are not a party to that transaction. We're in a neutral forum in front of your Honor where you can take a look at this in a way that does not -- because the benefits stay with Barclays or come to us. This is, I belive this is a fair and appropriate neutral forum in which to resolve the issue of ownership of this asset.

At the end of the day either Barclays gets to keep property that we all know was posted as collateral by us or it comes back to First Bank because it wasn't acquired in the bankruptcy court because there was nothing that happened to dispossess us of our property rights.

In that sense, I mean, you know, we are talking about a $45 billion transaction, $62 million of assets at .18 percent of the entirety of the transaction. I seriously doubt that Barclays would argue that this was the most important asset, these were the most important assets in connection with this transaction. I think that it is a very discrete, clean case that appropriately belongs in this court to decide whose property this is.

This is a fight between the party holding the property and the party that says it is mine. To the extent you need to look at anything that is bankruptcy-related, most of the bankruptcy issues and most of the things we cite are simply

Page 48

matters of it is common knowledge that you can't sell assets that belong -- these are the kinds of things. This is how it would work. It is like saying to somebody you can't be dispossessed of your home without the party holding your mortgage filing a foreclosure proceeding unless you signed a quitclaim deed over to the bank in advance. It is that thing.

I don't think anybody is saying we got due process here, we got specific notice our assets were being transferred. We didn't even know where they were. There is absolutely nothing here that compels this case on the facts of this case, which is all that is before the court, to go to the bankruptcy court because it doesn't affect the Lehman estate.

The only argument that they have that really goes to affecting the Lehman estate is this claim, possible claim for indemnification. We cited the Pacor case. We cited the case from Iowa with respect to Enron. Pacore, the leading case, it is the Third Circuit but has been adopted all over the country, the idea a possible claim for indemnification is not enough to transfer a case to bankruptcy.

First of all, a claim for indemnification does not arise until you suffer a loss. There are so many things that happened in cases before there is the right to claim indemnification, that the possibility that you may have it is not enough to cause the case between two non-bankrupt parties to the bankruptcy court.

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

Page 49

[1]     I think that is fairly well established law. You can
[2] think of the multitude of things that could happen. First of
[3] all, Barclays could win and hey have no indemnification claim
[4] at all. They prove it, they're proven right, they got it, it
[5] is theirs to get to keep. Let's assume it was not an asset of
[6] the estate, but the intent of the parties was only assets of
[7] the estate were paid for.
[8]     The judge had in the motion to dismiss his example was
[9] what if you bought a box of dolls and there was a ball that
[10] belonged to someone else in the box and asked Mr. Morag, are
[11] you saying you bought the ball? So if the finding in this case
[12] is that it is like the ball, you didn't buy this, then there is
[13] a possibility that your decision in this case at least with
[14] respect to Barclays may preclude Barclays from having an
[15] indemnification claim.
[16]     One of the fundamental reasons why it is not related
[17] to and doesn't force it is also because nothing we do here can
[18] bind Lehman. Lehman has all of its defenses for anything and
[19] everything, so whether Barclays will ever file an
[20] indemnification claim is far too speculative under the law
[21] right now to be a reason to transfer to the bankruptcy court.
[22] Other than that, all we have are state law claims on diversity
[23] of citizenship.
[24]     THE COURT: The fact you characterize it as bringing
[25] it as a state law claim is not only not determinative, it is

Page 50

[1] not really relevant to whether or not it is related to the
[2] bankruptcy. You can dress it up any way you want to dress it
[3] up. There are plenty of cases that stand for the proposition
[4] that you can't just avoid the court's jurisdiction by alleging
[5] state claims.
[6]     That applies even in the bankruptcy court. It doesn't
[7] matter you say it is only unjust enrichment or you say it is --
[8] whatever you want to call it. That is not the question. The
[9] question is what the facts are and whether or not those relate
[10] to the bankruptcy court.
[11]     The problem that I have, I am having difficulty
[12] getting over is that it is not the sale, it may be less
[13] important than the bankruptcy court's approval of the sale.
[14] That sale has already been approved by the bankruptcy court.
[15] So the question is why is it appropriate for me to say -- I
[16] mean, you can characterize it by saying well, Judge, we don't
[17] want you to say anything about what the bankruptcy court did or
[18] didn't do when they approved the sale. We just want you to say
[19] that the sale shouldn't have taken place in the first place.
[20]     Well, the bankruptcy court has already approved the
[21] sale. That is technically the status of this case. It is a
[22] sale that took place that included these assets that the
[23] bankruptcy court approved. The question is: In what way?
[24] What is the efficient, appropriate way to make a determination
[25] that makes the approval of the bankruptcy court null and void

Page 51

[1] without saying it is related to the bankruptcy proceeding?
[2]     MR. MITCHELL: I quibble with the use or your Honor's
[3] use of the word it approved the sale.
[4]     THE COURT: It did approve.
[5]     MR. MITCHELL: It approved a sale as reflected in a
[6] purchase agreement which was assets owned by LBI and LBHI.
[7]     THE COURT: No. At this point I have no reason, there
[8] is no reason to characterize the bankruptcy court's approval
[9] other than it approved the sale, the amount of money was paid
[10] for the assets and the assets were included in that sale. That
[11] is what the approval is, isn't it? You can't say they approved
[12] everything but this? They approved this sale.
[13]     MR. MITCHELL: No, they didn't. They approved a sale
[14] of assets to Barclays.
[15]     THE COURT: No. They approved these sales of these
[16] assets.
[17]     MR. MITCHELL: Your Honor --
[18]     THE COURT: There was no such thing as approval of a
[19] sale.
[20]     MR. MITCHELL: That is a question of fact in this
[21] case.
[22]     THE COURT: No, it is not a question of fact.
[23]     If you are telling me that the court said to them I
[24] give you authority to sell assets, but that's all that
[25] happened, maybe that would be your argument. But that is not,

Page 52

[1] as I understand the status at this point.
[2]     The status at this point is they gave them the
[3] authority to sell assets and they laid out for the court over a
[4] period of time what assets were being sold and what the price
[5] that was paid for those assets, and the court has approved that
[6] sale.
[7]     On what theory are you saying that the court, the
[8] bankruptcy court didn't approve the entire sale of the assets
[9] and the current status is not that all of the sale as it took
[10] place is currently approved by the bankruptcy?
[11]     MR. MITCHELL: The case we cite to the court, TM
[12] Patents LP versus IBM, 121 F. Supp. 2d 349 involved a dispute
[13] over certain patent rights that IBM asserted outside of
[14] bankruptcy and there was with respect to that case some
[15] question as to whether or not the asset had been transferred
[16] pursuant to the bankruptcy court sale order or whether IBM
[17] still retained ownership rights of those patents.
[18]     Judge McMahon said -- similar to the question you're
[19] asking, it somewhat answers the question -- Judge McMahon said
[20] IBM contends that no attempt was made in the bankruptcy
[21] proceedings to transfer any rights in thinking machine's
[22] patents beyond those the debtor actually owned. IBM is
[23] correct. The first amended joint plan of reorganization
[24] transferred only the debtor's right, title and interest in and
[25] to patents and patent applications of the debtor.

Page 53

[1] The collateral patent assignment assigned all of
[2] assignor's right, title and interest in the patents of TM
[3] Creditors. IBM observes correctly that nothing in the free and
[4] clear" language quoted from the bankruptcy court is
[5] inconsistent with that or expands on the inherent limitation of
[6] the plan and collateral assignment, namely, they convey and/or
[7] assign whatever interest the debtor has, and nothing more.
[8] We argue here the same thing. All the sale order
[9] approves is the transfer of whatever interest the debtor had
[10] and nothing more because that is all they could do.
[11] THE COURT: No, no, that is the purpose of a schedule.
[12] The purpose of a schedule is so that that is the property that
[13] is being identified as being sold.
[14] If there is some dispute between the parties with
[15] regard to whether that is the property intending to be sold,
[16] then that can be identified to the court. That has not
[17] occurred. In this case the court, the court approved the sale.
[18] The sale didn't say well, we're selling you whatever we own so
[19] go pick it up. It says that these are the things that are
[20] included on that list.
[21] So it is hard to argue that the property that is in
[22] dispute here, it is included on that list, somehow is not this
[23] current -- this current status isn't that the bankruptcy court
[24] has approved the sale of that asset absent someone coming into
[25] the bankruptcy court and saying no, that's not appropriately on

Page 54

[1] this list because the bankruptcy court approved the sale of
[2] everything on that list.
[3] MR. MITCHELL: There are several facts that need to be
[4] taken apart from that. At the moment of the transaction
[5] closes, there is no list.
[6] THE COURT: Right.
[7] MR. MITCHELL: The list then gets created in December
[8] of 2009, but is not publicly available.
[9] THE COURT: It is available to the bankruptcy court.
[10] MR. MITCHELL: I don't know that it is available. I
[11] don't know what happened because we don't have any evidence.
[12] THE COURT: It is available to you now.
[13] MR. MITCHELL: Do you know when?
[14] It was produced to us on the first time, according to
[15] Mr. Morag's papers, on reply in the motion to dismiss in April
[16] of 2010. That is the first time the list was made available.
[17] The first time it ever became visible to us was after we filed
[18] the lawsuit. They file a motion to dismiss, and not even on
[19] their motion papers in chief, but on reply they put in their
[20] papers that we just got permission to give you a copy of it and
[21] let you see it.
[22] Why is all of this such a secret? Where in the United
[23] States does a party get dispossessed of its ownership rights
[24] without notice and opportunity to be heard?
[25] THE COURT: They don't. The question is where do you

Page 55

[1] get that notice?
[2] MR. MITCHELL: There was a procedure to do that. Two
[3] sophisticated parties, Barclays and Lehman, engaged in a
[4] transaction, and the procedure to do that was to file a motion
[5] under 363 (c) of the code to the extent any collateral was
[6] being held and you wanted to take title to it, to clean it up.
[7] We are talking about very sophisticated parties.
[8] THE COURT: So is your party.
[9] MR. MITCHELL: We didn't know. The argument that
[10] Barclays made or makes, or I don't know whether they still make
[11] it, they are a bona fide purchaser without notice. We didn't
[12] know. We are the real innocent party. How about us? We post
[13] collateral. We don't know where the collateral is.
[14] THE COURT: You're going backwards and I am going
[15] forward. The question is not did you have prior notice; the
[16] question is once you do have notice, is it appropriate for
[17] those rights to be enforced in the bankruptcy court or
[18] appropriate for those rights to be enforced here?
[19] MR. MITCHELL: We got notice in this case --
[20] THE COURT: You have notice now.
[21] MR. MITCHELL: -- in this case --
[22] THE COURT: You have it now and that is all I care
[23] about. You want me to tell you whether tomorrow you should be
[24] in the bankruptcy court or you should in the district court.
[25] That is the only issue for me. I don't credit the fact you

Page 56

[1] only learned yesterday. That is not dispositive of this issue.
[2] The part of the problem I have, so you can focus on
[3] it -- and I need to take break so we can take this criminal
[4] case -- if I were to ask the bankruptcy court judge what the
[5] bankruptcy court did, I guarantee you that the conversation
[6] would be that I authorized them to sell their assets. They
[7] engaged in a sale. The items that they sold were ultimately
[8] put in a schedule and I have approved the sale of those assets
[9] that are on that schedule.
[10] If I were to say well, here is a Schedule A, do you
[11] mean everything on this Schedule A you approve as items were
[12] properly sold from Lehman brothers to Barclays, the court would
[13] say yes.
[14] MR. MITCHELL: When you use the word "properly," that
[15] is the part of it that I would --
[16] THE COURT: The court would not say improperly. You
[17] would come in and say improperly. You say what was the intent?
[18] The court has approved this sale as it took place. You're the
[19] one coming in saying that you think that they should not have
[20] approved this sale, and even though they have approved this
[21] sale, that this court should do something to undo that.
[22] MR. MITCHELL: That is not exactly. The properly part
[23] of it -- just to address the properly part because this is the
[24] part I think I understand what your Honor is saying -- the
[25] properly part here is that on this list was obviously were

Page 57

[1] certain assets that didn't belong to Lehman. I don't think
[2] Judge Peck would say that it was his intent to authorize the
[3] transfer of assets it did not belong to Lehman. We would all
[4] agree on that, nor is it Barclay's intent to acquire them,
[5] which to me seem to be the first place we should start.
[6]     THE COURT: I am sure Judge Peck would say it was my
[7] belief and is still my current belief that everything on this
[8] list was properly sold, and that continues, that continues to
[9] be the approved list and I continue to believe that is the case
[10] unless someone comes in and proves otherwise.
[11]     MR. MITCHELL: We are here in front of your Honor
[12] saying we own this, and they're in possession of something we
[13] owned and if to the extent it is on the list or it was listed
[14] on the list, it shouldn't have been on the list.
[15]     The law has certain other things. Not always does the
[16] purchaser get protection. A purchaser of stolen goods does not
[17] have better title than the owner of the goods from which they
[18] were stolen. There are circumstances under the law --
[19]     THE COURT: That is not the question. The question is
[20] in what forum do you resolve that dispute? You want to say
[21] that that is somehow determinative whether Judge Peck or I
[22] should determine this issue, and it is not. It is totally
[23] irrelevant to who should determine the issue. That is how it
[24] should be determined.
[25]     MR. MITCHELL: I understand. Your Honor did point

Page 58

[1] out -- and Barclays doesn't dispute -- that our assets, you
[2] know, are de minimis to them but important to First Bank of
[3] Puerto Rico, that our assets were never specifically discussed,
[4] brought to the attention of or the subject of a motion in the
[5] bankruptcy court.
[6]     The first time anyone has ever talked about our
[7] assets, looked at our assets or considered our claims would be
[8] in front of your Honor. So it is not as if we are asking for a
[9] reevaluation of what Judge Peck decided with respect to us. We
[10] were never on the table. We didn't find out about a list or
[11] the point that these were supposedly on the list was April 10th
[12] of 2010 on a reply before the argument on the motion to dismiss
[13] before your Honor.
[14]     Certainly at the time we filed the case we didn't have
[15] the list nor do we know what was on the list. So as a result,
[16] that is now a matter of evidence in this case, I submit to the
[17] court. Your Honor is well suited, because it is not unlike any
[18] other case, to look at the evidence in this case or a jury in
[19] the district court and make a determination whether, in fact,
[20] we still own the things that were ours at least 15 days before
[21] Lehman filed for bankruptcy, which is not a bankruptcy issue.
[22]     It is simply while it may touch upon things because
[23] they claim ownership of it pursuant to a sale order, the
[24] question of whether or not we still own it, we don't argue
[25] anything from any sale order. It doesn't affect us. As far as

Page 59

[1] we are concerned, it didn't involve us. We are not
[2] participating in it.
[3]     THE COURT: It didn't involve you because they are
[4] cloaked at this point with the authority of the bankruptcy
[5] court that has approved the sale of the asset and you can't
[6] pick it up because the bankruptcy court said that they approved
[7] the sale of those assets to Barclays.
[8]     MR. MITCHELL: If that is an absolute defense, we lose
[9] this case. It is not something your Honor can't decide. It is
[10] something certainly your Honor can decide, so that is their
[11] defense. It is our claim it didn't affect it. If their
[12] defense prevails and the sale order gave them title to the
[13] assets and that is what this court decides because it says it
[14] is clear it gets summary judgment, I presume we lose the case
[15] and we are stuck with --
[16]     THE COURT: Why should I make any judgment at all with
[17] regard to the sale order as opposed to the judge who wrote the
[18] order?
[19]     MR. MITCHELL: You are not making judgment with
[20] respect to the sale order; you're making a judgment with
[21] respect to our property rights.
[22]     THE COURT: Your property rights are only affected by
[23] the fact that the court approved the sale.
[24]     MR. MITCHELL: But your Honor knows that a bankruptcy
[25] court cannot authorize and approve the sale of assets that

Page 60

[1] don't belong to the estate. I realize it is somewhat circular.
[2]     THE COURT: Judge Peck knows that, too.
[3]     MR. MITCHELL: So we come back to the point.
[4]     THE COURT: He is the one you say did it.
[5]     MR. MITCHELL: When you were asking Mr. Morag
[6] questions, I agreed with your Honor. There is nothing uniquely
[7] bankruptcy-related that your Honor can't decide that should
[8] cause you to not, say, honor 28 U.S.C. 1332, which gives this
[9] court original jurisdiction of this diversity case where we
[10] have chosen to bring the case which everyone admits you have
[11] jurisdiction of, and there is really no fundamental bankruptcy
[12] issue vis-a-vis the dispute between Barclays and First Bank
[13] that compels that this case go before the bankruptcy court
[14] where it would be subsumed within legitimate claims that do
[15] affect the creditors of Lehman and where the benefits of were
[16] the results of what would be the adversary proceeding.
[17]     I am not sure what this case would be. It is not
[18] adversary because we don't have a claim against Lehman. I
[19] don't know what we would have, what you call in the bankruptcy
[20] court. It is classically a civil case under diversity of
[21] citizenship where they're raising defenses out of bankruptcy
[22] that your Honor is well suited to resolve.
[23]     THE COURT: All right. Let me just take a break
[24] before I hear you.
[25]     (Recess)

**Page 61**

[1]  THE COURT: Mr. Mitchell, did you have something else?

[2]  MR. MITCHELL: Just one final point to your Honor.
[3]  You were asking about it was on scheduled A, therefore, the
[4]  sale order approved it. There is in Paragraph 1 (a)(ii) a
[5]  proviso that says notwithstanding it is on the list, if there
[6]  are assets of LBHI or any of its subsidiaries, they're not
[7]  "purchased assets." Notwithstanding the appearance on the
[8]  schedule, there are still carve-outs-pursuant to the agreement
[9]  itself.

[10]  Separately, this was in the clarification letter. The
[11]  clarification letter says it is pursuant to the schedule that
[12]  has previously been provided, which as it turns out was not
[13]  previously provided. So I think the evidence would bear out
[14]  over a period of time here that not only was this not
[15]  specifically considered, discussed, there is no specific
[16]  consideration paid for First Bank's assets, but the appearance
[17]  of an asset on the schedule is not dispositive of the issue of
[18]  ownership which is also significant.

[19]  THE COURT: Okay.

[20]  MR. MORAG: Your Honor, I think you were exactly
[21]  correct.

[22]  THE COURT: Why do you guys all say that after I talk
[23]  to the other guy? You don't say that while I am talking to
[24]  you!

[25]  MR. MORAG: You are correct with respect to one issue.

**Page 62**

[1]  The sale order purported to approve the sale of these
[2]  securities, there is no question about it. The only way a
[3]  debtor can transfer assets is pursuant to a court order.

[4]  I want to review a few things with respect to the
[5]  facts because I don't think Mr. Mitchell had them exactly
[6]  right. These securities all came over to Barclays on September
[7]  18th, 2009 before the closing. The period of time between the
[8]  closing and the schedule was filed, filed with the court on
[9]  September 30th, 2008 was twelve days. The reason for the time
[10]  was to make sure, make sure what Barclays got what it was
[11]  supposed to get and it was filed after several revisions to the
[12]  schedule.

[13]  It was filed under seal. The reason it was filed
[14]  under seal was because it contained the trading positions that
[15]  Barclays was now acquiring in the billions of dollars which has
[16]  commercial sensitivity. It also said any creditor or any party
[17]  interested could get a copy of the schedule if they signed a
[18]  confidentiality agreement. Several did. There was no interest
[19]  in anyone finding out what was on there they were curious to
[20]  see if their property may possibly have been affected.

[21]  We cannot deny, it is not denied that this
[22]  had not came over to us from LBI. Presumptively it was there
[23]  subject to their arguments. You are entirely correct that
[24]  whatever the result of this, if they were to prevail, they are
[25]  attacking the sale order, they are attacking the piece of paper

**Page 63**

[1]  that purported to transfer these assets. If it was a mistake
[2]  and they shouldn't have been included, that is a different
[3]  story, but there is an order.

[4]  It is not just filed in the bankruptcy court, but
[5]  appealed on the district court claims on creditors there was
[6]  not adequate notice of the sale hearing and they don't know
[7]  where their property is, and that was overruled by Judge Cote
[8]  in a decision published in March of 2009.

[9]  That was the further appeal that was abandoned to the
[10]  Second Circuit. We have a final sale order. That is why we
[11]  maintain whatever is going to be done requires going back to
[12]  the author of that sale order who entered it, and if there is
[13]  going to be a modification, and I also want to highlight again,
[14]  let's rewind this case, let's assume we were back on October 1
[15]  and someone at Lehman says oops, I think we find a mistake, we
[16]  sent you some securities that really belong to LBSF. The
[17]  remedy then would have been to give them back to LBI and get
[18]  something in exchange.

[19]  These were not all the secures of Lehman brothers. We
[20]  put in the record that LBSF is holding $400 million of like
[21]  securities at this very moment. It is not entirely clear at
[22]  all that either we keep it or -- sorry -- we keep it and pay no
[23]  money or First Bank gets it.

[24]  To right the situation, if you were a judge in equity
[25]  in bankruptcy, you may say LBI, give them alternative property

**Page 64**

[1]  that comes back to LBI, credit to the account of LBSF. Then
[2]  First Bank and LBSF have to have their fight. They're trying
[3]  to avoid that fight by getting it back from Barclays. That is
[4]  not necessarily how this would go.

[5]  If it was a true mistake, then there are many ways of
[6]  correcting that mistake. We, yes, we rely on UCC where you
[7]  have no notice of this claim, you take it. This concept of you
[8]  can't buy good title from a thief is interesting but has no
[9]  application under Article VIII of the UCC, as we know in
[10]  discussion before you last time specifically says you can be a
[11]  thief and still convey good title with respect to securities.

[12]  The point is, we didn't know, they didn't know, but
[13]  this will affect the estate, it could conceivably affect the
[14]  estate. The cases they cite and they mention to you against
[15]  indemnity claims are being related, A, outside of this
[16]  jurisdiction and not consistent with Second Circuit law.

[17]  There is a lengthy opinion in the Worldcom case which
[18]  we cited which as long as there is a reasonable basis for the
[19]  claim, looking at it at the outset, not predicting who will win
[20]  and not saying you don't need it because if you are right, you
[21]  don't have a claim. Those are not the considerations. Just as
[22]  you know you don't decide jurisdiction on the basis of well,
[23]  they may ultimately prevail or there is no jurisdiction. Of
[24]  course, that is not the test. Is there a colorable claim? The
[25]  claim, of course, is colorable.

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

---

Page 65

[1]     We paid for this. We paid a sum of money and we got a
[2] certain value of securities. Every one of them is listed. If
[3] we are $15 million short on that transaction, we have a claim
[4] to be made whole from LBI or LBHI, another seller and was the
[5] guarantor of their obligations. There is no question that
[6] there was a way, very easy way, very natural way how LBI could
[7] have come into possession of these securities to sell them to
[8] us validly.
[9]     I would point out one of the other things that the
[10] bankruptcy court has done. It has appointed an examiner to
[11] look precisely at the question whether Barclays received any
[12] assets from LBHI affiliates, in other words, LBHI, people other
[13] than the ones they were supposed to get. They quibble whether
[14] or not the examiner specifically looked at these securities,
[15] but it is an issue that has been investigated, and the examiner
[16] could not find a single security that we got that we weren't
[17] supposed to get.
[18]     THE COURT: I don't have any information one way or
[19] the other. I shouldn't say that. As a matter of fact, I did
[20] raise that issue with Judge Peck. He was not in a position to
[21] indicate to me that he was provided any information, any
[22] specific information, although he said he got a very 22 page
[23] page --
[24]     MR. MORAG: 2200.
[25]     THE COURT: -- 2200-page report from the examiner, but

---

Page 66

[1] I assume that neither you nor I believe that the examiner has
[2] examined specifically this portion of the transaction or opined
[3] one way or the other with regard to this.
[4]     MR. MORAG: My view is they didn't. The only question
[5] is whether or not there were a few --
[6]     THE COURT: Your view is that they did? I saw you
[7] referenced the examiner, but I didn't see you reference
[8] anything that the examiner did that would at all relate to this
[9] issue.
[10]     MR. MORAG: I am saying there is an analysis.
[11]     THE COURT: Overall analysis?
[12]     MR. MORAG: No. About these specific securities on
[13] Schedule A.
[14]     THE COURT: What evidence is there that they analyzed
[15] these specific --
[16]     MR. MORAG: That is the point. They said in their
[17] report there were some securities they could not track, but the
[18] the vast majority they found were properly transferred. We
[19] don't know whether their securities were among the list of the
[20] majority or minority. All I am saying is the court has taken
[21] it upon itself in the bankruptcy court to look into this
[22] question. This would be the next step.
[23]     Now, with respect to the issue of how this proceeding
[24] would occur, there is no impediment. This case would be filed,
[25] would be transferred as-is, First Bank versus Barclays, it

---

Page 67

[1] would receive an adversary number. I am presently counsel to a
[2] number of matters in bankruptcy court where the debtor is not a
[3] party.
[4]     It would get assigned to Judge Peck and related to the
[5] Lehman bankruptcy. There would be a scheduling order issued
[6] for this particular case. It would be scheduled as the parties
[7] want and Judge Peck agrees. The hearings would be on the date
[8] the parties come for this case, not or for all Lehman
[9] proceedings. There would be a discovery schedule in this case.
[10] There would be summary judgment motion in this case just like
[11] any other litigation. What Judge Peck is doing with respect to
[12] the ongoing bankruptcy administration is not affecting the
[13] procedure in this case.
[14]     The other thing, I just want to reiterate that we are
[15] not grasping at straws here. Besides the fact -- I mean,
[16] everything is consistent with how Lehman got these securities.
[17] They acknowledged there was a right by LBSF any time prior to
[18] the bankruptcy to sell these securities. We think that is what
[19] happened. The same agreement says that they have to continue
[20] crediting your account. So the fact there is a piece of paper
[21] that says collateral data, which is what they're relying on
[22] that has the securities listed does not negate, and it is the
[23] common practice that, of course, your collateral is your
[24] collateral.
[25]     If they have a right to sell it, what you have is a

---

Page 68

[1] claim against LBSF to get it back. The fact they have an
[2] account statement doesn't mean they haven't done any of the
[3] things they're permitted to do under the contract. The
[4] contract provides no requirement to give notice that they've
[5] exercised their right to sell or rehypothecate. These are all
[6] facts that would come out and should come out, but the end
[7] result is going to be an attempt to amend, modify, interpret,
[8] work your way around the sale order. That is why it belongs in
[9] the bankruptcy court. One way or the other, that is what they
[10] want to do.
[11]     THE COURT: All right. I am going to go back to the
[12] papers quickly. I think I am going to go ahead and make this
[13] decision within the next few days. I am not going to issue a
[14] complicated opinion on this. I think it is sufficient to move
[15] us forward here to refer this to Judge Peck, and I will make
[16] that determination very quickly.
[17]     (Court adjourned)

---

**This Page Intentionally Left Blank**

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

**$**

)**$15** 65:3
**$400** 63:20
**$45** 13:8;26:5;47:15
**$50** 13:9;17:10,21
**$62** 26:4;47:15

**1**

**1** 61:4;63:14
**10** 34:25
**100** 4:4
**105** 4:13
**10th** 58:11
**11** 23:12,16
**121** 52:12
**1332** 24:10;45:18;60:8
**14** 24:3
**15** 24:25;25:2;58:20
**15th** 28:22;33:9
**16** 33:9
**16-day** 29:3
**18** 47:15
**18th** 62:7

**2**

**2** 9:6
**2008** 5:1;24:24;26:8;
)28:15,20,22;30:22;33:9;
62:9
**2009** 44:3;54:8;62:7;63:8
**2010** 54:16;58:12
**22** 65:22
**2200** 65:24
**2200-page** 65:25
**28** 24:10;45:18;60:8
**29th** 17:8
**2d** 52:12

**3**

**30** 24:23;28:15;30:22
**30th** 28:20;62:9
**349** 52:12
**362** 23:6
**363** 9:7,11;10:4,6;11:9;
16:7;23:6,7,8,13;26:11,13,
16;46:23;55:5

**4**

**4** 9:13

**5**

**50** 34:22,24
**51** 4:2,10
)

**6**

**60** 34:23

**A**

**abandoned** 63:9
**abandoning** 27:11
**ability** 28:11;29:2;37:2
**able** 14:12
**above** 34:16;35:1
**absence** 26:17
**absent** 53:24
**absolute** 59:8
**absolutely** 48:9
**abundantly** 36:5;35:19
**accept** 12:15;40:21
**according** 54:14
**account** 25:16,19;28:15;
33:3,5,8;34:24;64:1;67:20;
68:2
**accounted** 28:17;33:3
**acknowledge** 13:10
**acknowledged** 67:17
**acquire** 57:4
**acquired** 47:11
**acquiring** 62:15
**action** 4:22
**actually** 22:3;46:6;52:22
**add** 17:23
**addition** 20:5
**additional** 34:18
**address** 9:17;56:23
**addressed** 42:17
**adequate** 63:6
**adjourned** 68:17
**adjudicated** 37:8
**adjudications** 20:16
**administered** 8:24
**administration** 8:25;
20:9;41:17;67:12
**admits** 60:10
**admitted** 27:2
**adopted** 48:17
**advance** 48:6
**adversary** 60:16,18;67:1
**advising** 35:24
**affect** 16:19;17:12;23:11;
38:23;41:21;48:12;58:25;
59:11;60:15;64:13,13
**affected** 59:22;62:20
**affecting** 48:14;67:12
**affidavit** 24:23
**affiliates** 65:12
**affirmed** 6:5
**after-the-fact** 26:7;40:19
**again** 5:23;63:13
**Again** 11:12
**against** 17:11,16,21;19:4,
5,8,12,25;20:12;37:5;38:6;
41:7,7,22;60:18;64:14;68:1
**agree** 12:15;15:13;28:13;
36:4;39:24;40:6;57:4
**agreed** 4:9;7:9;60:6
**agreement** 5:14;14:4,8;

15:16;27:2;28:4,25;31:23;
32:10;34:20;35:9;51:6;
61:8;62:18;67:19
**agreements** 29:15;32:18
**agrees** 67:7
**ahead** 35:17;39:1;68:12
**all** 61:4
**allegation** 4:15,17
**allege** 24:13
**alleged** 45:24
**alleging** 50:4
**allowed** 32:18;42:15
**allows** 35:9
**alone** 44:12
**alternative** 63:25
**although** 6:24;65:22
**always** 5:3;18:14;57:15
**amend** 68:7
**amended** 52:23
**among** 66:19
**amount** 34:16,18;51:9
**amounting** 4:22
**analysis** 4:9;16:14;19:2;
38:23;66:10,11
**analyze** 14:24;16:15
**analyzed** 66:14
**and/or** 53:6
**annex** 29:5
**answered** 19:1,3
**anticipate** 44:22;45:4
**apart** 38:1;54:4
**apologize** 21:14
**appeal** 63:9
**appealed** 63:5
**appear** 26:19
**appearance** 61:7,16
**appellate** 22:23
**application** 6:9;9:22,23;
64:9
**applications** 52:25
**applies** 9:24;10:1;11:17,
20,21;23:10;50:6
**apply** 10:2,3;11:25;21:16;
23:16;38:7
**appointed** 65:10
**appointee** 36:8
**appreciate** 45:8
**appropriate** 13:18;29:23;
34:5;44:24;45:12,15;46:9;
47:7;50:15,24;55:16,18
**appropriately** 46:3;
47:20;53:25
**approval** 36:1;50:13,25;
51:8,11,18
**approve** 7:10;12:16;30:7;
35:15;51:4;52:8;56:11;
59:25;62:1
**approved** 13:8;29:24;
40:11,15;50:14,18,20,23;
51:3,5,9,11,12,13,15;52:5,
10;53:17,24;54:1;56:8,18,
20,20;57:9;59:5,6,23;61:4
**approves** 53:9

**approving** 5:14
**April** 17:8;54:15;58:11
**argue** 13:5;14:16,22;
31:23;35:20,21;47:17;53:8,
21;58:24
**arguing** 8:19,20;10:25;
11:2;31:25;37:15,17;43:12
**argument** 6:17,18,22,23;
7:6,13,14,22;8:6,9;9:16;
11:13,14,14,15,15,19;
12:21;13:15,16;16:14;17:1,
1,20:23;21:10;24:2,21;
27:9,12,12;34:10,20;35:7;
37:7;38:17;41:1;42:23;
43:6;48:13;51:25;55:9;
58:12
**arguments** 16:9;62:23
**arise** 21:6,7,18;48:21
**arises** 4:24;11:25;15:6;
16:24,25;22:15
**arising** 15:2;20:25;21:20,
22,22,23;22:17
**arose** 46:20
**around** 15:2;68:8
**Article** 27:10;36:8;64:9
**articulate** 32:5
**articulated** 12:7
**aside** 30:1
**as-is** 66:25
**assert** 16:22
**asserted** 52:13
**asserting** 38:11;43:15
**asserts** 36:9,17
**asset** 4:15,16;7:22;12:2,9;
15:18;24:13,16,24;25:1;
29:2;35:20;41:5,8,13;
42:13;47:8,17;49:5;52:15;
53:24;59:5;61:17
**assets** 4:7;5:19,19,21;
6:10;7:10,12,14;13:8,9;
22:10;24:5,13;27:5;28:8;
30:15;33:3,4,20;35:22,24,
24;36:1,15;37:12;38:22;
39:4,6,9,13;41:10;46:13,
15,18,18,19;47:15,18;48:1,
8;49:6;50:22;51:6,10,10,
14,16,24;52:3,4,5,8;56:6,8;
57:1,3;58:1,3,7,7;59:7,13,
25;61:6,7,16;62:3;63:1;
65:12
**assign** 14:11;53:7
**assigned** 6:6,7;53:1;67:4
**assignment** 53:1,6
**assignor's** 53:2
**assume** 6:24;7:1,6,8,13;
8:5;13:5,10;28:23;29:19;
33:11;34:12;35:8;39:4,12;
49:5;63:14;66:1
**assumed** 5:25
**assuming** 52:20;35:6
**Assuming** 33:15
**assumptions** 19:11
**attached** 25:15

**attacking** 62:25,25
**attempt** 52:20;68:7
**attention** 58:4
**August** 24:23;28:15,20;
30:22
**author** 63:12
**authority** 9:8;27:24;30:5,
7,14;33:19,22;35:12,13,15;
36:5;46:17;51:24;52:3;
59:4
**authorize** 35:22;57:2;
59:25
**authorized** 15:21;56:6
**automatically** 19:19
**available** 54:8,9,10,12,16
**avoid** 50:4;64:3
**aware** 28:17;29:13
**away** 37:9

**B**

**back** 6:15;7:7;14:12;15:9,
15,20;18:4,5,6,9;19:16,22;
20:2;34:13,25;36:18;47:11;
60:3;63:11,14,17;64:1,3;
68:1,11
**backwards** 55:14
**bailment** 14:3
**ball** 49:9,11,12
**bank** 34:24;48:6
**Bank** 4:9,19;9:12,13;14:4;
18:8,24;19:4,4,9,9,12,18,
19,24:25;25:5,8;28:5;33:2,
4,4,19;34:14,19;35:2,3;
42:1;47:11;58:2;60:12;
63:23;64:2;66:25
**bankrupt** 8:24;9:20,21,
22;22:2
**bankruptcy** 4:8,23,24,25;
5:4,6,10,17,19,21;6:5,14,
18,23,24;7:2,3,7,7,8,15,15;
8:6,22;9:3,5,7,9,11,15,17,
18,19,23;10:1,2,4,6,15,18,
19,20,25;11:4,7,9,16,17,
20,20,21;12:3,6;13:2,3;
14:15,23;15:3,6,8,11;16:4,
5,8,15,16,19,22,24,25;
17:2,3,12,13,24;18:1,10,
17;19:21;20:1,9,12;21:1,6,
7,17,19,22,22;27:22,25,25;
23:3,6,7,11,13,15,16,18,
18,21;25:2,3,4,6,8,20,23;
26:1,18,20,22;27:14,15,19;
28:19,21;29:1,12,23,24;
30:6,11,14;31:21,24;32:1,
9;33:6,18,19,20;34:5,11;
35:12,14,14,19;36:5,6,7,9,
12,14,21;37:8,9,11,16,21;
38:4,7,15,18,22,23;39:5;
40:11,15,17,21;41:17;
42:25;43:1,10,11,14,22;
44:7,13,16,18;45:14;46:7,
14,15,17;47:12,25;48:11,

19,25;49:21;50:2,6,10,13,
14,17,20,23,25;51:1,8;
52:8,10,14,16,20;53:4,23,
25;54:1,9;55:17,24;56:4,5;
58:5,21,21;59:4,6,24;
60:11,13,19,21;63:4,25;
65:10;66:21;67:2,5,12,18;
68:9
**Bankruptcy** 43:16
**bankruptcy-related**
5:11;6:3;47:24;60:7
**Bank's** 14:7;28:1;61:16
**Barclays** 4:5;5:19;7:11;
8:4;9:13;12:15;18:22,24;
24:5,14;25:20;26:20;27:2,
3,7,10;29:10,10;35:23;
36:16;37:3,5;39:3;41:7;
42:1;47:2,6,9,17;49:3,14,
14,19;51:14;55:3,10;56:12;
58:1;59:7;60:12;62:6,10,
15;64:3;65:11;66:25
**Barclay's** 57:4
**barred** 38:2,8
**based** 4:13;9:2;11:13;
46:9
**bases** 16:22;21:21
**basic** 9:16,24
**basically** 4:14;13:8;20:14
**basis** 25:18;34:17;64:18,
22
**bear** 61:13
**became** 54:17
**belief** 57:7,7
**belive** 47:6
**belong** 6:21;7:16;9:21;
25:14;33:21;35:23,25;36:1;
39:4,7,9,13;40:2;41:13;
46:3;48:2;57:1,3;60:1;
63:16
**belonged** 24:24;25:20;
33:18;49:10
**belonging** 25:16;33:3;
41:10
**belongs** 18:24;25:24;
45:16;47:20;68:8
**benefit** 43:18
**benefits** 47:5;60:15
**Besides** 67:15
**best** 34:4
**better** 14:23;20:18,21;
57:17
**beyond** 6:23;9:15;31:18;
43:21;52:22
**big** 7:24;17:25
**billion** 13:8;26:5;47:15
**billions** 62:15
**bind** 42:3;49:18
**bit** 39:1
**black** 41:1
**bless** 39:5,6
**bona** 27:13;55:11
**both** 6:12;21:16;29:19
**bought** 4:3,5,11;5:19,21;

25:23;44:8;49:9,11
**box** 49:9,10
**break** 56:3;60:23
**breathing** 30:10,12
**brief** 7:19;9:2;11:24;12:11
**bring** 18:15;45:11;60:10
**bringing** 49:24
**brothers** 56:12;63:19
**Brothers** 6:21;7:11;8:3;
13:9;14:5;17:3,4;18:2,2;
19:6;27:6,6;28:5,20,21;
29:1;30:5;34:11,19,21;
35:25;41:5
**Brothers'** 37:12
**brought** 24:9;36:10;
45:10;46:5,6,7;58:4
**bundle** 35:24
**burden** 13:20,21
**business** 32:23,25
**buy** 4:6;27:3;39:3;49:12;
64:8
**buyer** 6:7;22:9,11,15

**C**

**call** 33:7;50:8;60:19
**came** 19:16;62:6,22
**can** 7:8;18:1;19:25;28:7;
29:9;30:1,13;32:12;39:4,
11,14;45:4;47:4;49:1,17;
50:2,16;53:16;56:2,3;
59:10;62:3;64:10
**candor** 45:10
**capable** 44:14
**car** 8:3,4
**care** 38:7;55:22
**carve-outs-pursuant**
61:8
**case** 4:14,21;5:2,9,12;6:9;
7:19,21;11:3,10;12:3;
14:21;15:1,6,15;16:7;
18:18;19:7;20:11,11;22:5,
7,8,13;23:12;24:4,8,9,20,
21;25:11,21,23;26:22;27:4,
4;28:19;29:6,8;33:7,14;
36:9;24:37:25;38:1,4,11;
39:1,11;40:24;41:25;42:15,
17,19,21,22;43:17,20,22;
44:2,4,5,6,11,12,12,19,24;
45:9;46:1,2,3,14,20;47:19;
48:10,10,15,15,16,19,24;
49:11,13;50:21;51:21;
52:11,14;53:17;55:19,21;
56:4;57:9;58:14,16,18,18;
59:9,14;60:9,10,13,17,20;
63:14;64:17;66:24;67:6,8,
9,10,13
**cases** 4:18;15:6;22:1,7,8,
19,21,24;38:3,3;48:22;
50:3;64:14
**cash** 34:12,13
**cause** 48:24;60:8
**center** 11:5

**certain** 6:1;25:12;31:13;
32:21;36:23;38:7;52:13;
57:1,15;65:2
**certainly** 20:6;24:23;
26:19;29:7;30:20,22;39:5;
44:11,14;59:10
**Certainly** 58:14
**chance** 36:3
**Chapter** 23:12
**characterize** 34:6,8;
39:17;49:24;50:16;51:8
**characterized** 35:11;
39:16
**charter** 5:18,20,23,24;
6:1;12:4,5;22:10
**chief** 54:19
**chose** 45:17,21
**chosen** 60:10
**Circuit** 4:18;6:4,8;12:6;
15:1,1;16:6;21:18;22:5,7,
13,14,14;48:17;63:10;
64:16
**Circuit's** 7:20
**circular** 60:1
**circumstance** 13:24;
23:1
**circumstances** 31:13;
32:22;35:6;41:3;57:18
**cite** 7:21;22:1,24;25:3;
26:1;47:25;52:11;64:14
**cited** 5:2;15:2;38:3;42:19;
48:15,15;64:18
**citizenship** 43:16;49:23;
60:21
**civil** 60:20
**claim** 4:14;13:10;16:24,
25,25;17:11,14,17;18:9;
25:22,24,24;37:7,20,21;
38:2,4,6;41:7;48:14,14,18,
20,22;49:3,15,20,25;58:23;
59:11;60:18;64:7,19,21,24,
25;65:3;68:1
**claimant** 37:17
**claimed** 13:10
**claiming** 36:21
**claims** 17:19;19:25;36:9,
10,18;37:4;38:11;41:22,22,
22;42:7,8,8;43:15;45:14;
49:22;50:5;58:7;60:14;
63:5;64:15
**clarification** 61:10,11
**classically** 60:20
**clean** 47:19;55:6
**clear** 4:8;18:3;26:9;31:6;
35:19;44:24;53:4;59:14;
63:21
**clearly** 5:4;15:10;44:9
**Clearly** 45:17,18
**cloaked** 59:4
**closed** 23:1;26:6
**closely** 27:22
**closes** 54:5
**closing** 9:12;26:9;62:7,8

**code** 9:3,5,7,9,11,15,17,
18,19;10:4,6;11:9;16:8,24;
21:7,22;23:13,16;25:3,5,8;
26:1,11,13,17,18;27:7,16,
19;33:19;46:23;55:5
**Code** 27:10
**collateral** 6:20;9:12;
10:14;13:23,24,25;14:3,11;
15:16;19:20,22,23;20:2,13;
25:10,12,14;26:13;27:16,
18,19,20;28:5,12,18;29:17;
30:6,23,25;31:20;32:10,18,
19,22,24;33:1,2;34:10,12,
12,15,17,20;35:1;47:10;
53:1,6;55:5,13,13;67:21,
23,24
**collateralized** 34:25
**colorable** 17:17;64:24,25
**coming** 53:24;56:19
**commercial** 62:16
**Commercial** 27:10
**committed** 18:17
**common** 13:23;14:2,3;
25:9;48:1;67:23
**companies** 27:18
**company** 5:16,16
**compelling** 43:4;45:21
**compels** 48:10;60:13
**competence** 5:11;15:3,5
**complain** 35:3
**complained** 35:2
**complaint** 10:22,22;
16:10;46:9
**compliance** 10:5,9,10,
11,11
**Compliance** 10:8
**complicated** 46:1,2,3;
68:14
**concede** 28:7;29:5;31:3;
36:23
**conceded** 30:25
**concedes** 39:3
**conceivable** 17:4
**conceivably** 64:13
**concept** 25:9;64:7
**concerned** 59:1
**concluded** 21:5
**concoct** 29:10
**conduct** 10:13
**confidentiality** 62:18
**Congress** 21:5;36:7
**connection** 47:18
**consent** 26:15;27:21;28:4
**consider** 8:19;15:23,24
**consideration** 14:14;
61:16
**considerations** 21:3;
64:21
**considered** 58:7;61:15
**considers** 15:2
**consistent** 64:16;67:16
**Constitutional** 43:2
**construe** 21:16

**contained** 62:14
**contend** 16:2;17:25
**contends** 52:20
**contention** 4:5;15:22,23,
25
**continue** 33:22;57:9;
67:19
**continued** 35:13
**continues** 57:8,8
**continuing** 27:12
**contract** 5:24,25;6:2,6;
9:24;15:11;32:8,8;68:3,4
**contracts** 5:17
**contractual** 14:9;31:6,12
**contractually** 18:16
**contribution** 17:14
**control** 37:11
**controversy** 11:4;21:15
**convenient** 18:14
**conversation** 6:25;56:5
**conversion** 42:8,14
**convey** 18:13;24:7;53:6;
64:11
**copy** 54:20;62:17
**core** 4:24;8:22;16:13,17;
20:24;21:3,5,12,13,20,23;
22:17;25:25;26:23
**correcting** 64:6
**correctly** 53:3
**Cote** 63:7
**counsel** 67:1
**counterparty** 18:8
**country** 23:11;48:17
**couple** 4:21
**course** 4:17;11:8;23:1,8,
9;44:15;64:24,25;67:23
**court** 4:8,23,24,25;5:2,4,
6,10;6:5,15,18,23,24;7:3,7,
7,15;8:6,7,23;10:2,13,15,
18,19,20,25;11:16,20;12:6,
16;14:23,24;15:3,4,8;
16:22;17:12,14;18:1,16,17;
20:9,12;21:17;22:22,22,25;
23:2,11,15,18,19,21;24:10,
11,22;25:4;26:3,17,20;
27:8,14;28:15,19;29:7,23,
24;30:6,11,14;31:6;33:20;
34:6;35:14;36:6,7,14,16;
37:8,9,11,16;38:3,12,14,
15,15;39:5,17;40:11,15,17,
21;41:17;42:6,9,15,17,19,
25;43:3,10,11;44:6,16,18;
45:4,10,14,17,18,20;46:7,
14,15,23;47:12,20;48:11,
12,25;49:21;50:6,10,14,17,
20,23,25;51:23;52:3,5,7,8,
11,16;53:4,16,17,17,23,25;
54:1,9;55:17,24,24;56:4,5,
12,16,18,21;58:5,17,19;
59:5,6,13,23,25;60:9,13,
20;62:3,8;63:4,5;65:10;
66:20,21;67:2;68:9
**Court** 5:1;36:11;68:17

**FIRSTBANK PUERTO RICO, v.**
**BARCLAYS CAPITAL INC.,**

August 25, 2010

**COURT** 6:12;7:24;8:11;
9:14;10:8,17,24;11:6,11,
19;12:7,20;13:3,13,21;
14:6,20;15:14,24;16:2,5,
12;18:21;19:3,8;20:22;
21:2,9,25;22:4;23:22,25;
27:22;28:9,23;29:18;30:12,
16,24;31:3,8,11,15;32:14,
20;33:24;34:1,3;35:17;
36:19;37:1,6;38:17,21;
39:15,25;40:10,14;42:4,10,
23;43:4,8,24;44:1,21;45:22;
46:10;49:24;51:4,7,15,18,
22;53:11;54:6,9,12,25;
55:8,14,20,22;56:16;57:6,
19;59:3,16,22;60:2,4,23;
61:1,19,22;65:18,25;66:6,
11,14;68:11
**courts** 22:20
**court's** 7:2,8,16;8:4;
11:25;35:14;36:5;38:18,22;
41:25;46:17;50:4,13;51:8
**covered** 7:21;8:1
**created** 26:7;36:7;54:7
**credit** 25:17;28:8;29:5;
55:25;64:1
**crediting** 67:20
**creditor** 37:22,25;62:16
**creditors** 37:13;41:21;
60:15;63:5
**Creditors** 53:3
**creditworthiness** 19:24
**criminal** 56:3
**criteria** 15:8
**critical** 27:24;29:7
**curious** 62:19
**current** 52:9;53:23,23;
57:7
**currently** 8:24;52:10
**customers** 32:24
**cut** 16:9
**cuts** 16:8

**D**

**damages** 42:12,14,14
**dare** 39:7
**dark** 33:7,11,15,17;41:2
**data** 67:21
**date** 14:15;28:20;29:17;
67:7
**day** 41:14,25;47:9
**days** 24:25;25:2;33:9;
58:20;62:9;68:13
**de** 58:2
**deal** 22:18;32:19;33:16;
39:12
**deals** 23:8,9
**debated** 45:11
**debtor** 5:16,25;22:6,8,9,
10,10,13;52:22,25;53:7,9;
62:3;67:2
**debtors** 5:24

**debtor's** 16:11;52:24
**December** 6:2;12:5;26:6,
8;40:16;54:7
**decide** 5:11;7:25;11:8;
12:1,3;20:6;23:10;31:16;
33:24;34:23;47:20;59:9,10;
60:7;64:22
**decided** 29:22;44:4;58:9
**decides** 9:15,16;59:13
**deciding** 13:18
**decision** 4:13;20:10;23:2;
44:25;49:13;63:8;68:13
**decisions** 20:21
**declared** 35:11
**deed** 48:6
**default** 14:10;29:2,16
**defendant** 37:3;42:13
**defendants** 36:25
**defense** 25:22,23;59:8,
11,12
**defenses** 49:18;60:21
**defer** 38:15
**delivered** 26:6,8
**delving** 15:8
**demand** 44:17;45:5
**denied** 62:21
**deny** 24:4;41:6;62:21
**denying** 23:14
**depend** 38:1
**deposed** 39:7
**described** 27:23
**designated** 4:8
**determination** 24:11;
29:24;30:16;34:4;35:8;
42:24;50:24;58:19;68:16
**determinative** 11:22;
36:20;49:25;57:21
**determine** 10:10;12:8;
31:17;57:22,23
**determined** 57:24
**determines** 32:2
**dichotomy** 21:21
**different** 4:1;9:23;14:15,
23;16:14;21:3,10;32:12;
34:2;36:22,25;63:2
**differently** 42:19
**difficult** 11:12;44:22
**difficulty** 50:11
**disagree** 30:9;43:9
**discount** 17:18
**discovery** 13:19;33:10,
14;67:9
**discrete** 43:22;45:23;
47:19
**discretion** 44:9
**discussed** 39:22;58:3;
61:15
**discussion** 64:10
**dismiss** 13:17;24:2;27:9;
37:4;44:3;49:8;54:15,18;
58:12
**dispose** 27:20
**dispossess** 27:14;47:13

**dispossessed** 46:24;
54:23
**disposition** 18:23
**dispositive** 12:24,25;
13:1;14:17;28:24;30:3,8;
31:1;38:5;39:23;40:1;56:1;
61:17
**dispossessed** 25:6;48:4
**dispute** 5:13,23;11:4;
13:7,19;14:21;15:23;17:5;
21:15;22:1,9,11;23:19,20;
25:11;45:23;52:12;53:14,
22;57:20;58:1;60:12
**disputed** 44:22;45:3;
46:19
**disputes** 15:7;43:16
**distinguish** 22:19
**distinguished** 4:19
**distinguishes** 20:22
**distribution** 37:11
**district** 14:24;15:4;22:20,
22;23:2;24:11;36:16;38:14,
15;43:3;45:20;46:21;
55:24;58:19;63:5
**District** 36:11
**diversity** 36:9;37:5;
38:10;43:15;49:22;60:9,20
**documentary** 24:23
**documents** 33:10;39:8
**dollars** 62:15
**dolls** 49:9
**done** 16:7;38:18;63:11;
65:10;68:2
**doubt** 47:16
**doubted** 45:12
**down** 39:20;40:7
**dress** 50:2,2
**due** 16:1;25:7;26:14;30:9;
46:24;48:7
**Due** 25:8
**during** 4:2;33:11,12,15,
17;41:1,1,9

**E**

**earlier** 12:21
**easy** 65:6
**economic** 17:18
**effect** 17:4
**effectuate** 29:11
**efficient** 44:19;50:24
**either** 7:25;47:9;63:21
**else** 17:20;45:8;49:10;
61:1
**else's** 27:20
**employees** 22:12
**end** 12:19;41:14,25;44:23;
45:2;46:24;47:9;68:6
**ends** 29:17
**enforce** 4:23;5:3;21:17;
37:14
**enforced** 55:17,18
**enforcement** 15:7

**disposed** 46:24;
**engaged** 55:3;56:7
**enough** 48:18,24
**enrichment** 42:7,14;50:7
**Enron** 38:4;48:16
**ensnare** 43:21,24
**entered** 4:25;25:13;32:8;
63:12
**entire** 8:25;52:8
**entirely** 18:3;20:10;62:23;
63:21
**entirety** 47:16
**entitled** 34:17;37:16
**entry** 27:5
**entwined** 43:19
**equity** 63:24
**equivalent** 27:12;34:13
**essentially** 19:23;20:17;
22:23
**establish** 30:20
**established** 8:13;20:4;
30:20;43:10;49:1
**establishes** 19:9
**estate** 7:23;8:23,24;9:5;
17:4,12;20:6;22:21;23:17;
30:15;33:20;35:20;37:22;
41:18,19,23;43:18;48:12,
14;49:6,7;60:1;64:13,14
**even** 7:6;15:9,10,20;
20:23;26:10;28:3;29:22;
31:4,11,21,23;34:19;38:15;
39:17;48:9;50:6;54:18;
56:20
**Even** 16:4;29:18;35:4
**Evergreen** 21:11;44:2,3
**everyone** 19:24;60:10
**evidence** 4:5;13:19,21;
24:17,19;28:14;30:21;
33:11,12,16;38:25;40:25;
54:11;58:16,18;61:13;
66:14
**exactly** 56:22;61:20;62:5
**examined** 66:2
**examiner** 65:10,14,15,25;
66:1,7,8
**example** 49:8
**examples** 21:8
**exchange** 63:18
**exclusion** 36:2
**exercised** 68:5
**Exhibit** 24:22;25:15;26:3,
5
**exist** 16:23
**existed** 33:23
**expands** 53:5
**expect** 32:12
**expertise** 15:3
**explain** 14:20
**extent** 41:24;44:12;47:23;
55:5;57:13

**F**

**fact** 4:4,6;6:18,20;7:22;

**8:1;9:10;12:1,2;17:24;
18:7;24:6,18;28:18;29:6,8;
30:14;31:15;36:15;37:25;
39:11;40:21;44:7,23;45:3;
49:24;51:20,22;55:25;
58:19;59:23;65:19;67:15,
20;68:1
**facts** 4:21;5:9;15:10;
31:17;35:7,9,9;45:25;
48:10;50:9;54:3;62:5;68:6
**factual** 13:16;14:16;
30:16;40:23
**fair** 47:6
**fairly** 49:1
**familiar** 44:10;45:25
**far** 43:21;44:19;49:20;
58:25
**faster** 44:5
**favor** 10:10,11;34:4,8
**federal** 38:13
**Federal** 36:11
**feel** 20:19
**few** 62:4;66:5;68:13
**fide** 21:13;55:11
**fight** 14:25;47:22;64:2,3
**fighting** 41:20
**figure** 6:6;10:17
**file** 27:18;38:2;49:19;
54:18;55:4
**filed** 5:5;19:21;25:19;
28:21;31:24;32:9;33:6;
34:11;36:12,22;37:20,21;
44:3;54:17;58:14,21;62:8,
8,11,13,13;63:4;66:24
**files** 29:1
**filing** 14:15;19:25;25:2;
29:12;32:1;33:18,21;38:3;
48:5
**final** 7:20;61:2;63:10
**Finance** 14:5;18:3
**financial** 25:12,13;29:14;
32:16,17
**find** 19:14,15;58:10;
63:15;65:16
**finding** 23:17;36:17;
49:11;62:19
**findings** 10:5
**finds** 19:14;20:11
**first** 8:19;21:23;22:23;
26:8;31:11;37:10;46:5,7;
50:19;52:23;54:14,16,17;
57:5;58:6
**First** 4:9,19;7:18;9:12,13;
14:4,7;18:8,24;19:4,4,8,9,
12,18,19;24:24;25:5,8;
28:1,4;33:2,4,4,18;34:14,
19;35:2,3;37:20;42:1;
47:11;48:20;49:2;58:2;
60:12;61:16;63:23;64:2;
66:25
**focus** 13:4;44:11;56:2
**follow** 18:12
**following** 9:2;12:11;32:4

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

force 49:17
foreclose 9:12;10:14;
  26:12
foreclosed 7:23
foreclosure 48:5
forever 38:8
form 14:4;42:3,4
forum 46:5;47:4,7;57:20
forward 55:15;68:15
found 5:22;66:18
framed 30:2
frankly 4:18;46:11
Frankly 4:9
free 4:8;53:3
front 11:5;38:10;45:24;
  47:4;57:11;58:8
fully 34:25
function 33:13
functioning 32:16
fundamental 26:13;
  30:10;41:16;49:16;60:11
further 6:7;15:20;29:9;
  63:9
future 35:8

**G**

gave 37:19;52:2;59:12
gets 19:18;22:15;47:9;
  54:7;59:14;63:23
given 46:11
gives 9:19;17:10;18:6,6;
  60:8
giving 40:18
goes 13:19;15:15;23:20;
  41:14;48:13
good 24:21;41:6;64:8,11
Good 23:24,25
goods 57:16,17
governed 14:4
granting 45:5
grasping 67:15
grounded 37:5
guarantee 56:5
guarantor 65:5
Gucci 7:21;16:6
guess 24:19;41:4
guidance 9:19
guy 61:23
guys 61:22

**H**

hand 41:9
hands 42:13
happen 27:21;29:3;39:14;
  40:8,9,23;46:23;49:2
happened 26:19,24;29:3,
  4;40:10,12,14,23;41:2;
  47:12;48:22;51:25;54:11;
  67:19
hard 53:21
hear 23:22;60:24

heard 36:3;45:19;54:24
hearing 4:2,10;10:14;
  17:8;63:6
hearings 67:7
held 5:1;21:18;32:17;
  33:1;55:6
hey 49:3
highlight 63:13
holding 13:24;19:21;
  27:19;33:2;47:22;48:4;
  63:20
holdings 27:7
Holdings 28:20;29:1
holds 7:22;12:6;22:14,14
home 48:4
honor 60:8
Honor 4:10;5:8;7:18;8:9,
  10,14;10:3;11:23;13:17;
  14:2,25;17:8,17;21:14;
  23:23;24:8;28:6,13;30:10;
  36:7,23,23;38:10;40:5,6;
  42:16;44:9,14;45:8,22,22,
  24,25;46:4;47:4;51:17;
  56:24;57:11,25;58:8,13,17;
  59:9,10,24;60:6,7,22;61:2,
  20
Honor's 4:9,13;30:18;
  44:10;51:2
hospital 22:11,12
hundred 30:17

**I**

IBM 42:20;52:12,13,16,20,
  22;53:3
idea 48:18
identified 25:16;53:13,16
identify 46:18
III 36:8
immediately 46:15
impediment 66:24
important 5:8,15;10:7;
  17:23;24:2;27:9;41:5;
  47:17,18;50:13;58:2
impose 18:1
imposing 23:5
improperly 56:16,17
inappropriate 37:7;
  42:24;46:4
in-between 34:7
Inc 18:2;27:6;28:21;35:25;
  41:5
incapable 45:23
include 7:4;12:13
included 4:7,7;5:20;
  15:19;16:9;46:16;50:22;
  51:10;53:20,22;63:2
includes 32:11
including 32:20,21
inconsistent 20:10,16;
  53:5
incorporate 12:4
incorporated 15:12

indeed 4:1
indemnification 48:15,
  18,20,23;49:3,15,20
indemnity 17:14;41:7;
  64:15
indicate 65:21
information 65:18,21,22
inherent 53:5
innocent 55:12
instance 22:23;46:8
instances 21:25
instead 20:13
institution 29:14;32:16
institutions 32:17
intend 14:17;22;39:3,5;
  40:22
intended 4:3,3,6,11,11;
  8:16;12:18,24;39:18;40:1,
  1,3,8
intending 39:13;53:15
intent 8:13;12:12;15:18,
  19;27:2,3;39:9;40:7;41:10;
  49:6;56:17;57:2,4
intention 24:4
intentionally 35:22
interest 25:17;33:4;
  52:24;53:2,7,9;62:18
interested 62:17
interesting 37:18;64:8
interpret 5:3;11:24;20:4;
  25:4;28:4;68:7
interpretation 6:9;7:9;
  15:7;22:16
into 5:17;7:1;15:10;25:13;
  32:9;39:12;53:24;65:7;
  66:21
inventory 26:7;40:19;
  41:12
investigated 65:15
invoke 17:13
involve 15:7;43:23;59:1,3
involved 22:1,6,10;42:20;
  52:12
involving 41:22
Iowa 48:16
ironic 23:14
irrelevant 18:23,25;57:23
ISDA 14:4
issue 5:12;6:3,13;8:10,12,
  15,17;9:15,17,17;10:10,21,
  22;11:1,3,7;12:17,24;13:4;
  14:16;15:6;16:17,17,18,19;
  17:21;19:18;20:7,8,15,17,
  24;22:24;23:10,19;27:4,24,
  25;28:3,19,24;29:6,7,19,
  21;30:1,2,2,3,3,4,8,19,19,
  20:31;16;33:24,25;34:2,6,
  7,9;38:16;39:15,16,16,17,
  25;40:1,2,4;41:16;42:2;
  45:3;47:7;55:25;56:1;
  57:22,23;58:21;60:12;
  61:17,25;65:15,20;66:9,23;
  68:13

issued 21:19;33:2;67:5
issues 11:4;14:17;18:11;
  20:5;21:15;23:4,13;24:12;
  29:21;37:5;38:12;40:7;
  42:16,19;43:19,21,22,23;
  44:11,11,23;45:3;47:25
items 56:7,11

**J**

Jamaica 4:20;5:9,15,22;
  12:2;22:5
January 44:3
joint 52:23
judge 12:3,3;23:11;36:8;
  45:20;49:8;56:4;59:17;
  63:24
Judge 6:25;7:25;12:1;
  13:5;18:17;19:14;20:11;
  26:4,10;35:21,21,23;36:3;
  42:20;47:1,1;50:16;52:18,
  19;57:2,6,21;58:9;60:2;
  63:7;65:20;67:4,7,11;68:15
judges 43:16
judges' 44:15
judgment 17:16;41:25;
  44:25;45:5;59:14,16,19,20;
  67:10
judicial 30:13
jump 39:1
jurisdiction 4:24;5:3;6:5;
  11:1;12:5;16:21,22;17:14;
  18:2;19:2;21:1,21;22:18;
  23:15;24:11;36:11;38:13,
  14;45:17,19;50:4;60:9,
  11;64:16,22,23
jurisdictions 45:9
jurist 15:9;19:15;21:16
jury 44:17,18,21;45:5;
  58:18

**K**

keep 11:13;24:3;25:21;
  34:24;41:8;44:9;47:9;49:5;
  63:22,22
kind 25:7;40:19
kinds 18:11;48:2
knew 13:6;26:4
knowingly 39:6;40:22
knowledge 13:6;48:1
knows 29:14;59:24;60:2

**L**

laid 12:10;52:3
language 28:11,11;32:11,
  11;53:4
larger 20:3
largest 32:16,17
last 25:19;28:15;33:5,8;
  64:10
law 5:9;9:23,24;10:1;

11:17,20,21;14:2,3;15:1;
16:16;20:7,7;22:18;23:7;
24:9,12;25:6,9,22;26:19;
35:19;36:9,18;37:4;38:12;
42:17;43:15;44:13;45:14;
49:1,20,22,25;57:15,18;
64:16
lawsuit 37:19;54:18
lawyers 39:7,8
lay 7:19
LBHI 51:6;61:6;65:4,12,12
LBI 9:8;14:14,18,19;18:6,
6,6,15,19,21;24:6;33:21;
51:6;62:22;63:17,25;64:1;
65:4,6
LBI's 18:22
LBSF 14:9,14;18:6,15;
19:20,20;29:16;63:16,20;
64:1,2;67:17;68:1
lead 17:1
leading 48:16
learned 56:1
least 17:15;26:21;28:2,3,
10,10;31:22;46:18;49:13;
58:20
left 18:8;36:19;41:19
legal 35:3
legitimate 37:3;60:14
Lehman 6:21;7:4,11,17;
8:3,16,18;9:5,10;12:13;
13:9;14:5;15:21;17:2,3,22;
18:2,2,12;19:5,17,24,25;
20:13,13;24:13,18;25:14,
19;27:3,4,6,6;28:5,20,21;
29:1;30:5;32:9,9,15,23;
33:6;34:11,19,21;35:25;
36:2;37:2,12,22,25;39:7,
10,13;41:5,7,11,13,14,18,
21,22,22;42:3;43:22;44:7;
47:2;48:12,14;49:18,18;
55:3;56:12;57:1,3;58:21;
60:15,18;63:15,19;67:5,8,
16
Lehman's 41:15
lengthy 64:17
lent 20:12
less 32:22;50:12
letter 61:10,11
liability 18:22
lifetime 36:8
light 23:4
liken 45:7
limitation 53:5
limited 27:25;33:20
list 6:22;7:3;12:13;13:9;
16:9;53:20,22;54:1,2,5,7,
16;56:25;57:8,9,13,14,14;
58:10,11,15,15;61:5;66:19
listed 5:5;57:13;65:2;
67:22
litigate 18:8
litigation 24:15;44:23;
67:11

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

little 32:5
logic 17:19
logical 38:23
logically 46:25
long 12:23;26:6,9;32:9,
25;64:18
longer 29:2,17;33:23;
34:14
look 9:1;13:1;15:9;27:22;
41:3;44:13;47:4,24;58:18;
65:11;66:21
looked 14:12;21:15;
44:15;58:7;65:14
looking 15:16;64:19
looks 42:21
lose 59:8,14
loss 48:21
lost 26:22
lot 39:2
LP 52:12

**M**

machine's 52:21
maintain 63:11
majority 66:18,20
makes 20:24;50:25;55:10
making 9:16;16:25;19:11;
42:23;59:19,20
many 19:11,19,19,20;
44:14;48:21;64:5
March 63:8
maritime 6:4
matter 16:2;26:14;30:21,
24;38:14,25;50:7;58:16;
65:19
matters 41:21;48:1;67:2
matured 17:15
may 10:7;18:18,22,25;
35:7;36:19,20;37:25;38:8;
45:1;48:23;49:14;50:12;
58:22;62:20;63:25;64:23
May 5:25;12:4;35:16
maybe 21:25;51:25
Maybe 8:7;18:5
McMahon 42:20;52:18,19
mean 8:4;12:13;47:14;
50:16;56:11;67:15;68:2
meaning 9:5
means 9:13;15:10
meant 6:6;7:3,16;12:4;
15:12,12,19;25:14
mental 12:8,10
mention 26:11;64:14
mentioned 26:3
merits 14:21;18:25;29:20
mess 42:25
might 24:21;26:23;28:4;
36:24;45:10
million 13:9;17:10,21;
26:4;34:22,23,24,25;47:15;
63:20;65:3
mind 18:18;24:3

mine 47:23
minimis 58:2
minority 66:20
minute 31:8
minutes 4:21
mistake 5:7;8:3,5;12:14;
17:25;18:7;19:16;25:6;
40:13;63:1,15;64:5,6
mistakenly 7:3
Mitchell 4:12,16;23:22;
61:1;62:5
MITCHELL 23:23;24:1;
28:6,13,25;30:9,13,17;
31:2,5,10,14;32:4,15,21;
33:25;34:2;35:16,18;36:22;
37:2,18;38:19,25;39:24;
40:5,12,16;42:7;12;43:2,7,
14,25;44:2;45:1,4;46:22;
51:2,5,13,17,20;52:11;
54:3,7,10,13;55:2,9,19,21;
56:14,22;57:11,25;59:8,19,
24;60:3,5;61:2
mixed 32:5
modification 63:13
modify 68:7
moment 33:18,21;41:4;
54:4;63:21
monetary 34:15
Monetary 42:12
money 17:8,9;51:9;63:23;
65:1
Morag 24:2,3,17;27:2;
33:12;35:21;39:3;49:10;
60:5
MORAG 7:18;8:9,13;10:3,
13,21;11:3,8,18,23;12:10,
25;13:12,16;14:8;18:5,25;
15:17;16:1,4,6,20;18:25;
19:7;11;20:25;21:5,14;
22:3,5;61:20,25;65:24;
66:4,10,12,16
Morag's 54:15
more 17:23;27:22,25;
32:5;44:19;53:7,10
morning 23:24,25
mortgage 48:5
most 8:22;21:11,25;
38:23;47:17,18,24,25
motion 10:24;13:17;
19:22;24:2,22;26:12,16,18;
27:9,14,21;28:15;30:21;
36:6;37:4;44:2;49:8;54:15,
18,19;55:4;58:4,12;67:10
move 68:14
moved 41:19
much 20:3;44:5
multiple 36:24;45:9,24
multitude 43:19;49:2
must 41:21
myself 21:15

**N**

namely 53:6
natural 65:6
naturally 5:17
nature 37:7
necessarily 18:12;19:7;
27:25;28:23;40:12;42:18;
64:4
necessary 32:19;34:14
need 6:17;17:13;19:12;
20:4;47:23;54:3;56:3;
64:20
needed 6:6;10:13,15;35:1
needs 10:18
negate 67:22
negotiated 39:8
neither 66:1
Neither 43:14
neutral 47:3,7
next 66:22;68:13
nobody 12:7;25:24;
39:12;40:7
non-bankrupt 24:15;
38:6,11;43:17;45:13,14;
48:24
non-core 21:4,11,12,20,
24
non-core-related 20:24
non-debtor 16:10;45:13
none 22:7
nor 57:4;58:15;66:1
notice 26:15;21;27:13,15,
21;30:13;36:15;46:12;
48:8;54:24;55:1,1,1,5,16,
19,20;63:6;64:7;68:4
notwithstanding 61:5
Notwithstanding 61:7
novel 23:7
null 50:25
number 67:1,2

**O**

obligations 25:13;65:5
observed 17:17
observes 53:3
obviously 28:14;29:14;
39:1;42:17;56:25
Obviously 21:2;27:18;
32:23;33:1;34:10
occasions 44:14;45:25
occur 66:24
occurred 19:21;36:14;
53:17
October 63:14
off 16:8,9
once 28:25;29:15;55:16
one 10:19;14:14;17:23,25;
19:21;20:1;24:1;28:4;
32:17;38:17;41:15;56:19;
60:4;61:2,25;65:2,9,18;
66:3
One 9:4;49:16;68:9
one-issue 27:4

ones 21:23;23:12;65:13
ongoing 20:8;23:3;67:12
only 15:8;17:13;18:17;
19:5;21:6;24:5,5,20;25:3,
16;26:1,11,25;35:2;40:10;
43:24;45:18;48:13;49:6,25;
50:7;52:24;55:25;56:1;
59:22;61:14;62:2;66:4
oops 63:15
opening 12:11
operate 8:11
operating 8:10
opined 66:2
opinion 64:17;68:14
opportunity 37:14;54:24
opposed 21:12,20;59:17
opposition 9:1,6
order 4:22,23,25;5:14;6:9,
10;7:9,16,20,21;8:4;10:16,
22;11:24,25,25;15:8,9;
16:16;20:4,15;21:17,17,19;
22:15,17;27:5;35:14,25;
36:13;38:18,20,22;42:10;
44:8;52:16;53:8;58:23,25;
59:12,17,18,20;61:4;62:1,
3,25;63:3,10,12;67:5;68:8
orders 5:4;42:2;44:15
ordinary 23:8;9;24:9
Orient 4:20
original 24:10;28:4;
36:11;38:13,13;45:19;60:9
originate 5:13
originates 5:13
others 38:5
otherwise 57:10
ours 24:14;25:11;28:17;
58:20
out 6:6;7:19;10:17;12:10;
17:10,20;20:1;23:8;24:19;
25:23;36:19;38:9;40:25;
41:15;46:22;52:3;58:1,10;
60:21;61:12,13;62:19;65:9;
68:6,6
outcome 38:1
outlandish 19:13
outset 64:19
outside 52:13;64:15
outstanding 32:8
over 5:24;17:20;18:2,8;
23:19;20:24;15;30:14;41:7;
48:6,17;50:12;52:3,13;
61:14;62:6,22
Overall 66:11
overruled 63:7
owe 34:22
own 5:4;13:13;24:13;25:9;
31:4,18;33:22;36:2;53:18;
57:12;58:20,24
owned 5:16;13:11,12,15,
22;16:3;24:6,18;27:3,4;
30:2,18,22,25;31:12,16,21,
23;34:9,19;39:23;51:6;
52:22;57:13

owner 57:17
ownership 13:7;24:16;
31:18,19;32:1;47:8;52:17;
54:23;58:23;61:18
owning 13:25
owns 8:4;19:5

**P**

pace 44:5
Pacor 48:15
Pacore 48:16
page 65:22,23
Page 4:2,3,10,13;9:6,13;
24:3
paid 17:8,9,19;49:7;51:9;
52:5;61:16;65:1,1
paper 62:25;67:20
papers 4:19;5:2;7:22;
8:14,15;9:1;13:14;14:9;
16:13;25:15;27:23;54:15,
19,20;68:12
Paragraph 61:4
part 5:6;7:12,14;13:14;
15:23;20:3;27:1;30:15;
31:9,11;39:14;40:23;56:2,
15,22,23,24,25
participate 18:19
participated 26:22
participating 59:2
particular 5:12;9:19;15:5;
24:16;42:15;67:6
parties 5:18,20;7:9,10;
8:14;12:12;15:12,19;18:19,
21;19:17,20;24:15;27:16;
36:2;38:11;43:17;48:24;
49:6;53:14;55:3,7;67:6,8
party 5:18,21,22,23,24;
12:4,5;22:1,9,10,13;36:12,
13,17;38:6;45:14;47:2,3,
22,23;48:4;54:23;55:8,12;
62:16;67:3
passed 37:4
past 6:13;42:18
patent 52:13,25;53:1
patents 42:20;52:17,22,
25;53:2
Patents 52:12
pay 63:22
paying 33:4
Peck 6:25;7:25;12:1;13:5;
18:17;19:14;20:11;26:4,10;
35:21,21,23;36:3;47:1,1;
57:2,6,21;58:9;60:2;65:20;
67:4,7,11;68:15
pending 20:12;23:3
people 5:18;17:11,11;
18:15;65:12
percent 30:17;47:15
perhaps 32:6,6;44:16
period 29:3;33:8,8,11,13,
15,17;41:1,2,10;52:4;
61:14;62:7

**permission** 9:11;54:20
**permitted** 68:3
**pick** 53:19;59:6
**picture** 41:15
**piece** 62:25;67:20
**place** 37:10;43:7,8,9,11, 13,13;45:11,20;46:5,12; 50:19,19,22;52:10;56:18; 57:5
**places** 24:10
**plaintiff** 36:12,24;45:13, 21
**plan** 52:23;53:6
**pledge** 32:10,11,11,13
**pledged** 6:20;13:23;19:20
**pledging** 20:13
**plenty** 50:3
**point** 6:4;10:15;18:15; 26:16,25;27:13,16;28:6; 31:4;33:10;46:22;51:7; 52:1,2;57:25;58:11;59:4; 60:3;61:2;64:12;65:9; 66:16
**portion** 66:2
**position** 6:16,17,24;7:2; 12:20,22;14:23;15:17;17:9; 31:22;34:4;41:11;65:20
**positions** 62:14
**possesses** 5:11
**possession** 9:20;18:24; 24:14;36:17;41:12;57:12; 65:7
**possibility** 19:13,13; 48:23;49:13
**possible** 48:14,18
**possibly** 44:23;62:20
**post** 25:10;27:16,18; 55:12
**posted** 9:12;25:12;32:10; 47:10
**posting** 19:23
**power** 24:6
**practice** 67:23
**precisely** 6:10;17:18; 65:11
**preclude** 49:14
**precluded** 29:16
**precludes** 20:15,15
**predicting** 64:19
**premise** 14:25
**present** 24:21
**presented** 22:25;35:23; 40:17;45:22
**presenting** 47:2
**presently** 67:1
**presents** 24:8
**presumably** 41:13
**presume** 59:14
**Presumptively** 62:22
**pretty** 39:11
**prevail** 42:1,1;62:24; 64:23
**prevails** 59:12

**prevent** 31:19
**previously** 61:12,13
**price** 52:4
**primary** 42:8
**prior** 14:10,15;27:5;46:11; 55:15;67:17
**priority** 37:12
**problem** 50:11;56:2
**procedure** 55:2,4;67:13
**proceed** 42:15
**proceeding** 4:25;16:13; 17:1,2,3;18:20;21:3,7,11, 12,12,13,19,22;23:4;26:23; 38:24;44:4;48:5;51:1; 60:16;66:23
**proceedings** 16:16;21:6; 52:21;67:9
**process** 12:8,10;20:3; 22:24;25:7,8,25;26:14,19; 46:24;48:7
**processes** 26:2
**produced** 54:14
**proof** 24:23;38:2,4
**properly** 4:7;38:11;56:12, 14,22,23,25;57:8;66:18
**property** 4:6,6;7:4,4,16, 23;8:1,23,24;9:4,16,20,21, 21,24;12:23;13:1,6,7,23, 25;14:7,7,18;16:10;18:23; 19:5,9;20:6,7;22:21;23:17; 25:6,9,9;26:14;27:15,25; 28:1;30:3,4;32:3;33:23; 35:5,10,12,13;36:17;37:23; 39:18,19,21,23;40:2,3; 41:19;46:24;47:10,13,21, 22;53:12,15,21;59:21,22; 62:20;63:7,25
**prophylactic** 37:21
**proposition** 40:20;50:3
**protection** 57:10
**protects** 25:8;27:16
**prove** 49:4
**proved** 31:15
**proven** 49:4
**proves** 57:10
**provided** 6:1;61:12,13; 65:21
**provides** 14:9;68:4
**provisions** 10:4
**proviso** 61:5
**publicly** 54:8
**published** 63:8
**Puerto** 58:3
**purchase** 4:15;51:6
**purchased** 4:7,16;12:2,9; 15:18;61:7
**purchaser** 6:8;27:13; 55:11;57:16,16
**pure** 15:11
**purported** 62:1;63:1
**purpose** 5:7;19:1;53:11, 12
**purposes** 13:18;25:4;

30:21;35:7;44:19
**pursuant** 9:11;16:7; 24:10;27:1;31:23;34:20; 36:10;38:18,19,22;44:8; 52:16;58:23;61:11;62:3
**put** 7:3;8:2,5;13:19,21; 19:16;30:1;36:14;54:19; 56:8;63:20
**puts** 13:24;36:10
**putting** 11:5

**Q**

**questionable** 46:8
**quibble** 51:2;65:13
**quickly** 68:12,16
**quintessential** 23:18
**quintessentially** 8:22; 13:2
**quitclaim** 48:6
**quite** 10:12;20:22
**Quite** 46:11
**quote** 9:10;24:1
**quoted** 14:8;53:4

**R**

**raise** 14:18;20:5;23:5; 65:20
**raised** 21:16
**raises** 10:22;11:4
**raising** 23:13;60:21
**ramifications** 8:25;20:8
**rates** 6:1
**rather** 20:24;21:4;25:5
**rational** 43:5
**read** 42:21
**reads** 21:24
**real** 4:4;30:19;44:24;55:12
**reality** 43:10
**realize** 60:1
**really** 5:10,12;29:10;30:1, 8;38:19;39:15,20;40:4,20; 45:7,10;46:1;48:13;50:1; 60:11;63:16
**reason** 6:25;10:6;17:18; 18:21;24:20;25:3;26:1,11; 43:5;45:21;49:21;51:7,8; 62:9,13
**reasonable** 17:15,17; 64:18
**reasons** 49:16
**receive** 67:1
**received** 14:13;33:5; 65:11
**recently** 5:1
**Recess** 60:25
**recognized** 17:8
**recollect** 12:21
**record** 63:20
**recourse** 19:5,8,12
**reevaluation** 58:9
**refer** 10:24;68:15

**referees** 43:16
**reference** 28:3;66:7
**referenced** 66:7
**refers** 28:11
**reflected** 33:5;51:5
**regard** 16:13,17;21:10; 45:3;53:15;59:17;66:3
**regardless** 12:22;39:16
**regional** 15:16
**regular** 25:18
**rehypothecate** 14:11; 68:5
**reiterate** 67:14
**reiterated** 4:1
**relate** 50:9;66:8
**related** 20:25;21:11,23, 23;26:23;43:24;49:16; 50:1;51:1;64:15;67:4
**related-to** 16:20,21
**relates** 17:2,3
**relative** 15:3
**relevance** 11:9
**relevant** 5:10;50:1
**relief** 37:16;42:4,5
**rely** 23:9;64:6
**relying** 22:8;67:21
**remedies** 17:25;42:11
**remedy** 18:5;63:17
**remember** 5:8
**reorganization** 52:23
**repeatedly** 21:18
**repeating** 21:14
**replacement** 17:22
**reply** 54:15,19;58:12
**report** 65:25;66:17
**reported** 24:24;30:22; 33:1
**represent** 7:10
**represented** 22:12
**request** 4:23;44:21
**require** 15:9
**required** 6:8
**requirement** 17:13;68:4
**requires** 21:16;63:11
**resolution** 15:15;16:18; 44:5,19
**resolve** 6:24;8:15,20; 11:1;16:16;29:21;45:23; 47:7;57:20;60:22
**resolved** 45:6
**resolving** 28:2
**respect** 10:5;16:1,21; 30:9;48:16;49:14;52:14; 58:9;59:20,21;61:25;62:4; 64:11;66:23;67:11
**responding** 30:18
**responsibility** 46:17
**restricts** 9:7
**result** 19:14;46:23;58:15; 62:24;68:7
**results** 43:17;60:16
**retained** 52:17
**return** 17:20

**returned** 19:10
**review** 62:4
**revisions** 62:11
**rewind** 63:14
**Rico** 58:3
**right** 4:12;9:24;12:22,23; 13:1,25;14:9,19;16:12; 18:4,12;25:21;29:18,19,22; 30:5;31:1,4,7,12,17,18,22, 24;32:2;33:23;35:3;37:9; 39:19,21;40:4;43:2,7,9,11, 12;44:6;45:11;46:13,19; 48:22;49:4,21;52:24;53:2; 60:23;62:6;63:24;64:20; 67:17,25;68:5,11
**Right** 32:14;46:22;54:6
**rights** 9:16;16:8;17:21; 19:4;22:16,16;25:6;27:15; 37:14;47:13;52:13,17,21; 54:23;55:17,18;59:21,22
**rise** 17:10
**risk** 20:16
**rules** 19:23;38:7
**rulings** 22:20

**S**

**sake** 7:13
**sale** 4:22;5:14,14;6:9; 7:20,21;10:22;15:8,9;16:7; 20:4,15;21:17,17,19;22:15; 23:7;27:5;28:17;29:12,25; 30:7;35:4,15;36:13;37:11; 38:21;41:4;44:8;46:12,13; 50:12,13,14,18,19,21,22; 51:3,5,9,10,12,13,19;52:6, 8,9,16;53:8,17,18,24;54:1; 56:7,8,18,20,21;58:23,25; 59:5,7,12,17,20,23,25; 61:4;62:1,1,25;63:6,10,12; 68:8
**sales** 23:8,9;51:15
**same** 8:15;20:14,17;53:8; 67:19
**saw** 66:6
**saying** 8:2;11:13;19:12; 21:11;31:20;33:12;40:5; 42:10;48:3,7;49:11;50:16; 51:1;52:7;53:25;56:19,24; 57:12;64:20;66:10,20
**schedule** 5:5;53:11,12; 56:8;9:61:8,11,17;62:8,12, 17;67:9
**Schedule** 7:5;8:2;26:5,7, 10;40:16;56:10,11;66:13
**scheduled** 61:3;67:6
**scheduling** 67:5
**seal** 62:13,14
**second** 5:22;17:1;31:9; 39:14
**Second** 4:18;6:4,8;7:19; 12:6;15:1;16:6;21:18;22:5, 14;63:10;64:16

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

August 25, 2010

secret 54:22
Section 10:6;11:9;16:7;
23:6,6
secure 25:12
secures 63:19
securities 5:5;6:20;9:4,8;
14:13;17:9;18:4,9,13;20:1;
24:5;26:4;34:15,23;62:2,6;
63:16,21;64:11;65:2,7,14;
66:12,17,19;67:16,18,22
security 12:13;18:7;
37:13;65:16
seek 42:5,11
seem 57:5
seems 23:14;27:9,10,23;
28:2
sell 14:1,10,19;15:21;
27:25;28:5,12;29:2;30:5;
31:1,4,12,17,18,22,24;
32:2,20,21;33:23;34:23;
35:5,10,12,13;39:21;40:2,
3,4;46:20;48:1;51:24;52:3;
56:6;65:7;67:18,25;68:5
seller 65:4
selling 8:3;29:16;31:20;
53:18
sells 9:21
sense 47:14
sensitivity 62:16
sent 63:16
separate 27:1;46:17
Separate 38:1
Separately 26:11;61:10
September 28:21;33:9;
62:6,9
serious 23:5
seriously 45:11;47:16
set 37:12
several 4:1;37:20;54:3;
62:11
Several 62:18
shape 42:3
shares 20:12,14
Shipping 4:20,20;5:9,15;
12:3;22:6
shopping 46:6
short 65:3
show 14:13,18;17:13,15,
16;40:7
showed 25:15
shows 33:16
sides 6:13;21:16;29:19
signed 48:5;62:17
significant 38:14;42:16;
61:18
similar 20:11;42:21,22;
52:18
simple 24:9
simply 7:4;11:15;26:17;
31:15;44:12;47:25;58:22
single 22:8;23:11;65:16
situation 9:25;63:24
smart 29:10

snail's 44:4
Solar 20:11;44:2,3
sold 4:3,12;5:22;6:10;
7:11;13:8;17:11;18:16;
24:5;28:16,19;29:8;33:12,
15,17;34:11,12,15,16;
39:21;41:1,2,3,9;52:4;
53:13,15;56:7,12;57:8
somebody 8:5;25:10;
27:20;48:3
Somebody 26:7
somehow 7:15;9:22;
16:10;53:22;57:21
someone 8:2;13:24;
17:19,20;49:10;53:24;
57:10;63:15
Sometimes 45:9
somewhat 52:19;60:1
somewhere 25:1;34:7
sophisticated 29:13;
55:3,7
sorry 11:12;63:22
sort 5:7;6:13;17:22;34:15
sought 9:10
sounds 6:4
special 5:11
Special 14:5;18:3
specific 28:11;48:8;
61:15;65:22;66:12,15
specifically 4:20;58:3;
61:15;64:10;65:14;66:2
speculative 49:20
spend 4:21
spoken 42:18
stage 37:4
stand 39:14;50:3
standard 7:20;14:4;
16:12;17:5,6,7;32:11
standards 23:6
standpoint 44:20
start 24:1;40:20;57:5
started 13:20;20:20
state 20:7;24:9,11;25:22;
36:9,18;37:4;38:12;43:15;
45:14;49:22,25;50:5
statement 25:16,19;
28:16;30:18;33:5,9;38:4;
68:2
statements 33:3
states 44:16
States 54:23
status 13:6,7;50:21;52:1,
2,9;53:23
statute 21:24;36:10;38:13
stay 16:8;47:5
stealing 32:24
step 29:9;66:22
still 21:1;24:24;25:20;
28:16;33:18;52:17;55:10;
57:7;58:20,24;61:8;64:11
stolen 57:16,18
stop 15:20
story 63:3

stranger 36:13,16
straws 67:15
stuck 59:15
stuff 18:16
subject 19:24;58:4;62:23
submit 58:16
subsidiaries 61:6
substitute 18:7
subsumed 60:14
sue 18:17;36:24;37:2;
45:13
suffer 48:21
sufficient 68:14
suing 38:19,20
suited 58:17;60:22
sum 65:1
summary 44:25;45:5;
59:14;67:10
Supp 52:12
support 28:8;29:5;37:6
supports 4:5
supposed 12:8;34:16;
62:11;65:13,17
supposedly 58:11
Supreme 5:1
sure 6:16;10:12;20:22;
39:9;44:15;46:10;57:6;
60:17;62:10,10
Sure 10:24

**T**

table 58:10
talk 36:5;61:22
talked 42:18;58:6
talking 6:13;23:3;28:7;
29:13;43:23;47:14;55:7;
61:23
technically 50:21
telling 51:23
terms 4:22;15:12
test 16:21;64:24
theirs 49:5
theories 36:25
theory 13:22;14:6,22;
41:4;52:7
therefore 21:20;61:3
Therefore 26:18;33:22;
43:18
thief 64:8,11
thinking 52:21
third 36:2;38:6
Third 15:1;22:7,12,14;
48:17
though 7:24;31:2,4,11,21,
23;34:19;56:20
thought 8:13;37:19;39:1
three 16:23;21:21
thus 14:3
title 52:24;53:2;55:6;
57:17;59:12;64:8,11
Title 23:16
TM 52:11;53:2

today 4:14
together 32:5
told 7:12
tomorrow 55:23
took 25:10,25;25;50:22;
52:9;56:18
totally 5:23;39:22;57:22
touch 58:22
touched 13:17
track 66:17
trading 62:14
transaction 5:6;26:5,6;
29:11;40:18;41:6;47:2,3,
15,16,19;54:4;55:4;65:3;
66:2
transactions 25:13;
36:14
transcript 24:3
transfer 9:8;10:16;12:23,
23,24;14:11;33:25;34:2;
35:22;36:1;38:21;39:5,6,
19,20;41:16;48:19;49:21;
52:21;53:9;57:3;62:3;63:1
transferred 8:16,18;
10:23;12:18;14:13;16:11;
19:15;20:14;24:18;25:1;
27:1,6;36:15;39:10,18;
41:11;48:8;52:15,24;66:18,
25
travelers 5:2
treated 37:24
trial 44:17,18,21
tried 29:10
true 6:19;24:19;39:12;
64:5
try 14:16;19:25;32:7
trying 8:8;10:17;11:6;
12:21;13:4,22;14:21;21:9;
64:2
turn 38:9
turned 34:13
turns 4:22;61:12
twelve 62:9
two 5:23;16:22;21:3,23;
22:21,24;24:14;30:6;35:13;
36:22;38:11;48:24
Two 55:2

**U**

UCC 20:15;64:6,9
ultimate 6:7
ultimately 15:11;29:20;
37:24;42:5;56:7;64:23
Ultimately 44:17;45:5
unclear 6:12,14
under 7:19;14:22;15:2;
20:23;24:9;25:6,9;26:18;
27:7;31:13;32:21;34:10;
35:19;41:3;43:15;45:18;
49:20;55:5;57:18;60:20;
62:13,14;64:9;68:3
Under 35:6

underlying 28:7
understood 31:6
undo 56:21
Uniform 27:10
union 22:12
unique 7:8;15:6;17:24
uniquely 6:23;7:15;9:15;
10:1,20;16:19;60:6
United 54:22
unjust 42:7,14;50:7
unless 16:8;27:20;40:14;
48:5;57:10
unlike 58:17
unrelated 5:23
unsecured 37:13,22,25
up 6:15;13:24;17:10;
31:20,24;45:2;46:24;50:2,
3;53:19;55:6;59:6
upon 4:3;58:22;66:21
USC 24:10;45:18;60:8
use 16:15;19:23;51:2,3;
56:14
used 34:14
Usually 16:17
utterly 23:14

**V**

valid 10:16
validly 65:8
value 41:13;42:12;65:2
variety 5:18;32:12
various 5:20
vast 66:18
venue 45:12,17,21;46:4,9
versus 4:20;15:3;52:12;
66:25
vessels 5:17
view 66:4,6
VIII 27:10;64:9
virtually 23:12
vis-a-vis 60:12
visible 54:17
void 50:25

**W**

Wait 31:8
wants 10:19;25:21;34:8
way 10:8,9,9;11:11;13:13;
15:2;18:14;21:13;27:23;
34:7;41:15;42:3;45:6;47:5;
50:2,23,24;62:2;65:6,6,6,
18;66:3;68:8,9
ways 4:1;64:5
Weinberger's 24:22
well-pleaded 10:21
weren't 7:13;30:12;65:16
whatsoever 11:10;13:6
whenever 23:19
whole 27:17;65:4
whose 47:20
win 18:13;29:20;49:3;

FIRSTBANK PUERTO RICO, v.
BARCLAYS CAPITAL INC.,

64:19
**wins** 9:13
**wisdom** 21:5
**within** 4:7;9:5;12:5;25:1;
35:24;46:16;60:14;68:13
**without** 25:7;26:14;27:13;
28:2;46:24;48:4;51:1;
54:24;55:11
**word** 51:3;56:14
**words** 65:12
**work** 18:14;48:3;68:8
**world** 32:16,17
**Worldcom** 64:17
**worse** 20:18,21
**worth** 34:23
**wrong** 43:8,13
**wrongfully** 13:10
**wrote** 59:17

## Y

**yesterday** 56:1
**you!** 61:24