# Exhibit 3

Execution Copy

## CONFIRMATION

December 9, 1998

### TRANSACTION

Retirement Housing Foundation,
    on behalf of itself and the other
    Members of the Obligated Group
5150 East Pacific Coast Highway
Long Beach, CA 90804

Re:    Refunding Bonds relating to $28,000,000 Volusia County Industrial Development Authority Revenue and Refunding Bonds Series 1998 (Retirement Housing Foundation Obligated Group) Select Auction Variable Rate Securities (SAVRS) – Taxable/Tax-Exempt Bonds

Ladies and Gentlemen:

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between us on the Trade Date specified below (the "Transaction"). This letter agreement constitutes a "Confirmation" as referred to in the Master Agreement specified below.

The definitions and provisions contained in the 1992 ISDA U.S. Municipal Counterparty Definitions (as published by the International Swaps and Derivatives Association, Inc.) (the "Definitions") are incorporated into this Confirmation. In the event of any inconsistency between those Definitions and this Confirmation, this Confirmation will govern. When used herein, the term "SAVRS" shall have the meaning specified in paragraph 5 hereof.

    1.    This Confirmation supplements, forms part of, and is subject to the Master Agreement dated as of December 9, 1998 (the "Agreement") between you and us. All provisions contained in the Agreement govern this Confirmation except as expressly modified below.

    2.    The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Party A: | LEHMAN BROTHERS SPECIAL FINANCING INC. |
| Party B: | RETIREMENT HOUSING FOUNDATION, on behalf of itself and the other Members of the Obligated Group |
| Notional Amount: | $28,000,000, which shall reduce in such amounts and on such dates (each, a "Reduction Date") as specified in the Period Ending column as corresponds to the Principal column in the Bond Debt Service schedule set forth in Annex I hereto. The amount of such a reduction in Notional Amount shall be referred to herein as a "Notional Amount Reduction." |
| Trade Date: | November 19, 1998 |
| Effective Date: | December 9, 1998. |

NYB 1008942.2

| | |
|---|---|
| Termination Date: | December 1, 2028 |
| FIXED AMOUNTS: | |
| Fixed Rate Payer: | Party B |
| Fixed Rate Payer Payment Dates: | Ten (10) days prior to each of the interest payment dates on the $28,000,000 Volusia County Industrial Development Authority Revenue and Refunding Bonds Series 1998 (Retirement Housing Foundation Obligated Group) Select Auction Variable Rate Securities (the "SAVRS"), as set forth in the Bond Debt Service schedule in Annex II hereto and, with respect to a Notional Amount Reduction only, the corresponding Reduction Date, in each case subject to the Following Business Day Convention. |
| Fixed Rate Payer Period End Dates: | The interest payment dates on the SAVRS, as set forth in the Bond Debt Service schedule in Annex I hereto and, with respect to a Notional Amount Reduction only, the corresponding Reduction Date. |
| Taxable Fixed Rate: | 5.89% |
| Fixed Rate Day Count Fraction: | 30/360 |
| FLOATING AMOUNTS: | |
| Floating Rate Payer: | Party A |
| Floating Rate Payer Payment Dates: | Ten (10) days prior to each of the the interest payment dates on the SAVRS, as set forth in the Bond Debt Service schedule in Annex II hereto and, with respect to a Notional Amount Reduction only, the corresponding Reduction Date. |
| Floating Rate Payer Period End Dates: | The interest payment dates on the SAVRS, as set forth in the Bond Debt Service schedule in Annex I hereto and, with respect to a Notional Amount Reduction only, the corresponding Reduction Date, in each case subject to the Following Business Day Convention. |
| Taxable Floating Rate Option: | SAVRS Rate. "SAVRS Rate" means that the rate in respect of each Calculation Period will be the rate paid on the SAVRS (exclusive of interest on any late payments or interest in respect of retroactive tax gross-up or other payments, if any, not respecting scheduled interest payments on the SAVRS). |
| Taxable Floating Rate Day Count Fraction: | Actual/365 (Fixed) |
| Compounding: | Inapplicable |

2

NYB 1008942.2

| | |
|---|---|
| Taxable Alternative Floating Rate Option: | For each Calculation Period, the Taxable Alternative Floating Rate. "Taxable Alternative Floating Rate" means a per annum rate, not to exceed the maximum interest rate payable on the SAVRS, expressed as a decimal, equal to the arithmetic mean of the USD-LIBOR-BBA plus 0.30% in effect for each Taxable Alternative Floating Rate Reset Date in the relevant Calculation Period, calculated by multiplying each USD-LIBOR-BBA plus 0.30% by the number of Taxable Alternative Floating Rate Reset Dates such USD-LIBOR-BBA plus 0.30% is in effect, determining the sum of such products and dividing such sum by the number of Taxable Alternative Floating Rate Reset Dates in the Calculation Period. |
| Designated Maturity: | One Month |
| Taxable Alternative Floating Rate Reset Dates: | Each day on which commercial banks are open for business (including dealings in foreign exchange and foreign currency) in the City of London (each a "Reset Business Day") on and after the Alternative Floating Rate Date (and, if the Alternative Floating Rate Date is a day other than a Reset Business Day, the Reset Business Day next preceding the Alternative Floating Rate Date). |
| Taxable Alternative Floating Rate Day Count Fraction: | Actual/360 |
| Taxable Alternative Method of Averaging: | Unweighted Average |
| Alternative Floating Rate Date: | Upon the occurrence of an Alternative Floating Rate Date, the Taxable Floating Rate Option shall be the Taxable Alternative Floating Rate Option with respect to that portion of the Notional Amount of this Transaction for which the Taxable Floating Rate Option applies and the Tax-Exempt Floating Rate Option shall be the Tax-Exempt Alternative Floating Rate Option with respect to that portion of the Notional Amount of this Transaction for which the Tax-Exempt Floating Rate Option applies. An "Alternative Floating Rate Date" shall occur upon the occurrence (and, in the case of the events described in clauses 2, 3 and 4 below, the continuance) of any of the following: |

1.    Party B undertakes with respect to the SAVRS any of the following:
(a)    fixed rate conversion;
(b)    conversion to a mode other than the SAVRS mode;
(c)    unscheduled redemption without the consent of Party A; or
(d)    the Auction Period in respect of the SAVRS is adjusted to a period other than 35 days other than an adjustment in the Auction Period that has been consented to by Party A.

  2. The long term rating of the SAVRS falls below A- by S&P and A- by Fitch.

  3. Lehman Brothers is not the Broker-Dealer in respect of the SAVRS and Party A has not consented to such other Broker-Dealer.

  4. Party A has not consented in writing to the selection of the Auction Agent in respect of the SAVRS.

  3. On January 17, 2001, the Taxable Floating Rate Option shall convert to the Tax-Exempt Floating Rate Option with respect to $10,000,000 of the Notional Amount of this Transaction (the Taxable Floating Rate Option still being applicable to the remaining Notional Amount of this Transaction). On May 22, 2002, the Taxable Floating Rate Option shall convert to the Tax-Exempt Floating Rate Option with respect to the remaining Notional Amount of this Transaction. All Notional Amount Reductions occurring prior to May 22, 2002 shall be reductions in the Notional Amount of this Transaction with respect to which the Taxable Floating Rate Option applies. See Annex III for illustrative purposes. Upon any conversion of the Taxable Floating Rate Option to the Tax-Exempt Floating Rate Option, the original terms of this Transaction shall apply to the applicable portion of the Notional Amount with respect to which such conversion applied, except as such terms are modified below:

| | |
|---|---|
| Tax-Exempt Fixed Rate: | 5.19% |
| Tax-Exempt Alternative Fixed Rate Option: | For each Calculation Period, the Tax-Exempt Alternative Fixed Rate. "Tax-Exempt Alternative Fixed Rate" means the Tax-Exempt Fixed Rate plus 2.15%. |
| Tax-Exempt Alternative Fixed Rate Date: | Upon the occurrence of an Tax Exempt Alternative Fixed Rate Date, the Fixed Rate shall be the Tax-Exempt Alternative Fixed Rate Option. A "Tax-Exempt Alternative Fixed Rate Date" shall occur upon the occurrence and during the continuation of an Event of Taxability. |
| | Provided that, if any event described in (1) (A) of the definition of Events of Taxability is rescinded, withdrawn or rejected by the committee, department, legislature or service considering such action, the Fixed Rate Payer will resume paying the original Fixed Rate as provided herein, except that the Floating Rate Payer will not be obligated to return any payment made by the Fixed Rate Payer to it in respect of the Tax-Exempt Alternative Fixed Rate that occurred prior to such rescission, withdrawal or rejection (all such payments following the occurrence of such event and prior to such rescission, withdrawal or rejection being made in respect of the Tax-Exempt Alternative Fixed Rate). |
| | And, provided that, any Event of Taxability described in (2) of the definition of Events of Taxability will relate only to the portion of the SAVRS thereby affected and does not necessarily affect the entire Series. |
| Events of Taxability: | (1) (A) (i) Any legislation or constitutional amendment which directly relates to, or would have the effect of, eliminating or diminishing the tax exemption for municipal bonds or the relative tax advantages of municipal bonds is recommended to |

4

NYB 1008942.2

       Congress or otherwise endorsed for passage by the President of the United States, the Department of the Treasury, the Internal Revenue Service or the Chairman of the Committee on Finance of the Senate or the Committee on Ways and Means of the House of Representatives, or

       (ii) Any temporary or proposed ruling or regulation of the Department of the Treasury or the Internal Revenue Service which directly relates to, or would have the effect of, eliminating or diminishing the tax exemption for municipal bonds or the relative tax advantages of municipal bonds is issued or released and in the reasonable opinion of Party A the Floating Rate has been adversely affected thereby; and

       (B) The average of the Floating Rate (with respect to the Tax-Exempt Series) as a percentage of the average of the weekly USD-LIBOR-BBA (with a Designated Maturity of one month) has exceeded 75% for a period of more than the next preceding 90 days, or

    (2) With respect to the Tax-Exempt Series and one or more series of the underlying SAVRS interest on which is excludable from gross income for federal income tax purposes or is projected to be excludable from gross income for federal income tax purposes in the future:

       (A) Party B receives a copy of an opinion of nationally recognized bond counsel to the effect that interest on one or more series of the SAVRS received by any bondholder is includable in gross income, for federal income tax purposes; or

       (B) The interest on one or more series of the SAVRS becomes includable in the gross income, for federal income tax purposes, of any bondholder by reason of legislation or constitutional amendment, judicial decision or decree, or any final order, ruling or official release by the Department of Treasury or the Internal Revenue Service and Party B has received a copy of such action or other determination.

| | |
|---|---|
| Tax-Exempt Floating Rate Option: | SAVRS Rate. "SAVRS Rate" means that the rate in respect of each Calculation Period will be the rate paid on the SAVRS (exclusive of interest on any late payments or interest in respect of retroactive tax gross-up or other payments, if any, not respecting scheduled interest payments on the SAVRS). |
| Tax-Exempt Floating Rate Day Count Fraction: | Actual/365 (Fixed) |
| Tax-Exempt Alternative Floating Rate Option: | For each Calculation Period, the Tax-Exempt Alternative Floating Rate. "Tax-Exempt Alternative Floating Rate" means a per annum rate, not to exceed the maximum |

5

|  |  |
|---|---|
|  | interest rate payable on the SAVRS, expressed as a decimal, equal to 100.00% of the arithmetic mean of the Relevant Rates plus 0.40% in effect for each day on and after the Alternative Floating Rate Date in the relevant Calculation Period, calculated by multiplying each Relevant Rate by the number of days such Relevant Rate is in effect, determining the sum of such products and dividing such sum by the number of days in the Calculation Period. |
|  | "Relevant Rate" means, for any day, a per annum rate, expressed as a decimal equal to: |
|  | (A) If such day is a Tax-Exempt Alternative Floating Rate Reset Date, the PSA Municipal Swap Index (such index having been renamed the "BMA Municipal Bond Index" and referred to herein as the "BMA Index") on such day. |
|  | If Municipal Market Data no longer publishes the BMA Index the Relevant Rate shall be the Kenny Index. If neither the BMA Index nor the Kenny Index is published, Party A shall determine the rate on each Reset Date. The rate so determined by Party A shall equal the prevailing rate determined by Party A for bonds that are rated in the highest short-term rating category by Moody's Investors Service, Inc. ("Moody's") and Standard & Poor's Ratings Services, A Division of The McGraw-Hill Companies, Inc. ("S&P") in respect of issuers most closely resembling the component issuers selected by Municipal Market Data and that are subject to tender by the holders thereof for purchase on not more than seven days' notice and the interest on which is (a) variable on a weekly basis, (b) excludable from gross income for federal income tax purposes under the Internal Revenue Code of 1986, as amended (the "Code"), and (c) not subject to an "alternative minimum tax" or similar tax under the Code, unless all tax-exempt bonds are subject to such tax. |
|  | If Municipal Market Data fails or is unable to make available the BMA Index for any Reset Date, Party A shall determine the rate in the manner specified in the immediately preceding paragraph until Municipal Market Data makes available the BMA Index. |
|  | (B) If such day is not a Tax-Exempt Alternative Floating Rate Reset Date, the rate determined pursuant to clause (A) above for the next preceding Tax-Exempt Alternative Floating Rate Reset Date. |
| Tax-Exempt Alternative Floating Rate Reset Dates: | If the BMA Index is the Relevant Rate, each Thursday on and after the Alternative Floating Rate Date (and, if the Alternative Floating Rate Date is a day other than a Thursday, the Thursday next preceding the Alternative Floating Rate Date) or, if any Thursday is not a Business Day, the first succeeding Business Day. If the Kenny Index is the Relevant Rate, each Tuesday on and after the |

NYB 1008942.2

|  |  |
|---|---|
|  | Alternative Floating Rate Date (and, if the Alternative Floating Rate Date is a day other than a Tuesday, the Tuesday next preceding the Alternative Floating Rate Date) or, if any Tuesday is not a Business Day, the first succeeding Business Day. For purposes of this provision, "Business Day" means any day other than a Saturday, a Sunday, a day on which commercial banks in New York City are required to be closed or a day on which the New York Stock Exchange is closed. |
| Tax-Exempt Alternative Floating Rate Day Count Fraction: | Actual/Actual |
| Tax-Exempt Alternative Method of Averaging: | Weighted Average |

4. Additional Termination Event: The occurrence of an Alternative Floating Rate Date shall constitute an Additional Termination Event in respect of this Transaction. Party B, and only Party B, may designate an Early Termination Date in respect of such Additional Termination Event pursuant to Section 6 of the Agreement. If this Transaction is terminated by Party B upon the occurrence of an Alternative Floating Rate Date, the Taxable Alternative Floating Rate with respect to that portion of the Notional Amount of this Transaction for which the Taxable Floating Rate Option applies, the Tax-Exempt Alternative Floating Rate will be deemed effective and shall be used for valuation purposes with respect to that portion of the Notional Amount of this Transaction for which the Tax-Exempt Floating Rate Option applies and the Affected Party shall be Party B. If an Additional Termination Event occurs upon the occurrence of an Alternative Floating Rate Date, Party B may designate an Early Termination Date provided that Party B first or concurrently provides satisfactory evidence that Party B has sufficient available funds to pay the Settlement Amount to be paid by Party B, if any.

5. For purposes of this Transaction, the definition of "Business Day" shall not include April 14, April 15, December 30 or December 31.

6. Fees and Commission. In connection with the negotiation, execution and delivery of the Transactions under this Agreement by Party A, Party A has paid a fee to Cain Brothers and Company, LLC in the amount of $298,800.

7. Payment Instructions:

All Payments to Party A:

    The Chase Manhattan Bank NY
    ABA No. 021 000 021
    for the Account of Lehman Brothers Special Financing Inc.
    Account No. 066 143 543

All Payments to Party B:

    BK OF NYC
    BNF: IOC 565
    BBI: A/C# 443875
    A/C Name: RHF SWAP PAYMENT
    ABA#: 0210-00018

8. Please check this Confirmation carefully and immediately upon receipt so that errors or discrepancies can be promptly identified and rectified. Please confirm that the foregoing correctly sets forth the

terms of the agreement between Party A and Party B with respect to the particular Transaction to which this Confirmation relates by either (a) signing in the space provided below and immediately returning a copy of the executed Confirmation to Party A and/or (b) sending a return communication to Party A, substantially to the following effect:

"We acknowledge receipt of your communication dated December 9, 1998 with respect to the interest rate swap transaction entered into on December 9, 1998 (the "Transaction") between Lehman Brothers Special Financing Inc. and Retirement Housing Foundation, on behalf of itself and the other Members of the Obligated Group, with a Notional Amount of $28,000,000 and a Termination Date of December 1, 2028, and confirm that such communication correctly sets forth the terms of our agreement relating to the Transaction described therein. Very truly yours, Retirement Housing Foundation, on behalf of itself and the other Members of the Obligated Group, By: (specify name and title of authorized official)."

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us.

Yours sincerely,

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _T. Courtney Jenkins_ (signature)
Name:    T. Courtney Jenkins
Title:    Vice President

Confirmed as of the
date first above written

RETIREMENT HOUSING FOUNDATION,
on behalf of itself and the other
Members of the Obligated Group

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us.

Yours sincerely,

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____
Name:_____
Title:_____

Confirmed as of the
date first above written

RETIREMENT HOUSING FOUNDATION,
on behalf of itself and the other Members
of the Obligated Group

By: *[signature]*
Name: Dereen R Joseph
Title: President

By: *[signature]*
Name: Stephen J Margetic
Title: Asst Sec

9

NYB 1008944.1