# Exhibit

# 7

Cap Reference # 75



**BANK OF THE WEST**

TO:   Retirement Housing Foundation
      911 N. Studebaker Road
      Long Beach, CA 90815-4900

Contact:  Brian Magnone

RE:       INTEREST RATE CAP TRANSACTION CONFIRMATION

DATE:     January 13, 2010

Dear Mr. Magnone,

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Cap Transaction entered into between Bank of the West and Retirement Housing Foundation on the Trade Date specified below (the "Specified Transaction"). This Confirmation constitutes a "Confirmation" as referred to in the 1992 ISDA Master Agreement.

The definitions and provisions contained in the 2006 ISDA U.S. Definitions, as published by the International Swap Dealers Association, Inc. (ISDA), are incorporated into this Confirmation. In the event of any inconsistency between those definitions and provisions and this Confirmation, this Confirmation will govern.

Each party will make payment specified in the Confirmation as being payable by it, no later than the due date for value on that date in the place of the account specified below, in freely transferable funds and in the manner customary for payment in the required currency.

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement and Schedule dated as of January 11, 2010, and as amended and supplemented from time to time (the "Master Agreement"), between you and us. All provisions contained in the Master Agreement govern this Confirmation except as expressly modified below.

The terms of the Cap Transaction to which this Confirmation relates are as follows:

TYPE OF TRANSACTION:        Interest Rate Cap Transaction

NOTIONAL AMOUNT:            $32,500,000.00

TRADE DATE:                 January 13, 2010

EFFECTIVE DATE:             January 15, 2010

TERMINATION DATE:           January 15, 2015

Page 1 of 3

Retirement Housing Foundation
January 13, 2010
Page 2 of 3

## FIXED PAYMENT AMOUNTS:

| | |
|---|---|
| FIXED RATE PAYER (Cap Buyer): | Retirement Housing Foundation |
| FIXED RATE PREMIUM: | $458,000 |
| FIXED RATE SETTLEMENT DATE: | The Cap Buyer will pay the entire premium due to Cap Seller on January 15, 2010. |

## FLOATING AMOUNTS:

| | |
|---|---|
| FLOATING RATE PAYER (Cap Seller): | Bank of the West |
| CAP STRIKE RATE (Protected Rate): | 5.00% |
| FLOATING RATE PAYMENT DATES: | The fifteenth day of each month commencing February 15, 2010 to and including the termination date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| FLOATING RATE OPTION: | SIFMA Municipal Swap Index |
| DESIGNATED MATURITY: | Weekly Reset |
| SPREAD: | None |
| FLOATING RATE DAY COUNT FRACTION: | 30/360 |
| COMPOUNDING: | Not Applicable |
| CALCULATION AGENT: | Bank of the West |
| BUSINESS DAY CENTERS: | New York |
| ROUNDING CONVENTION: | The simple arithmetic mean of rates expressed as a percentage rounded to five decimal places. |
| RETIREMENT HOUSING FOUNDATION: | Retirement Housing Foundation |
| PAYMENT INSTRUCTIONS: | Bank of the West (BOW) will receive payment in full for the Cap Premium on January 15, 2010. |
| BANK OF THE WEST: | Bank of the West (BOW) |
| PAYMENT INSTRUCTIONS: | BOW will credit ACH California Bank & Trust, account # 03402423570 any resulting Cap payments (if cap strike rate hits) due to the customer. |

Retirement Housing Foundation
January 13, 2010
Page 3 of 3

Each party represents to the other party on the date hereof that (absent a written agreement between the parties that expressly imposes affirmative obligation to the contrary for this transaction):

(A) Non Reliance. It has made its own independent decision to enter into this transaction, is acting at arm's length for its own account, and is not relying on any communication (written or oral) of the other party as a recommendation or investment advice regarding this transaction.

(B) Evaluation and understanding. It has the capability to evaluate and understand (on its own behalf or through independent professional advice), and does understand, the terms, conditions and risks of this transaction and is willing to accept those terms and conditions and to assume (financially and otherwise) those risks.

Each party hereby agrees to make payments to the other in accordance with this Confirmation and the Master Agreement. **Please confirm your Agreement to be bound by the terms of the foregoing by executing this Confirmation and returning it to:**

Bank of the West - Capital Markets
Attention: Brandi Hairston
300 S. Grand Ave. Mail Sort SC-CAL-07 D
Los Angeles, CA 90071
Telephone number (213) 972-0547

We are very pleased to have executed this Interest Rate Cap Transaction with Retirement Housing Foundation

Confirmed as of the date first above written:

For and on behalf of:
**Bank of the West**

By: _____
Name: Robert Thomas
Title: Vice President & Compliance Manager

For and on behalf of:
**Retirement Housing Foundation**

By: _____
Name: Laverne R. Joseph
Title: President

By: _____
Name: Frank A. Rossello
Title: CFO/VP Finance



January 4, 2010

Retirement Housing Foundation
Attn: Brian Maguone
911 N Studebaker Rd.
Long Beach, CA 90815
Ph: 562-257-5108
Fax: 1-562-430-8614

Re: Interest Rate Cap Transaction between U.S. Bank National Association and Retirement Housing Foundation

Ladies/Gentlemen:

1.  U.S. Bank National Association ("Party A") is pleased to confirm the Transaction entered into on the Trade Date
with Retirement Housing Foundation ("Party B") under the circumstances described below. This
Confirmation incorporates the definitions and provisions contained in the 2000 ISDA Definitions (as published by
the International Swaps and Derivatives Association, Inc.). In the event of any inconsistency between those
definitions and provisions and this Confirmation, this Confirmation will govern.

The parties agree that this Confirmation shall supplement, form part of, and be subject to an agreement in the
form of the 1992 ISDA Master Agreement (Multicurrency-Cross Border) (the "Agreement"), as if the parties
had executed an agreement in such form (but without any Schedule except for the elections noted below) on the
Trade Date of this Confirmation with all provisions of the Agreement as modified by the elections below,
incorporated herein by reference. In the event of an any inconsistency between the Agreement and this
Confirmation, this Confirmation will govern. With respect to the Agreement, the parties agree as follows:

(a) The "Default under Specified Transaction" provisions of Section 5(a)(v) of the Agreement will apply to
Party A and to Party B.

(b) The "Cross-Default" provisions of Section 5(a)(vi) of the Agreement will apply to Party A and will not apply
to Party B, with (i) "Specified Indebtedness" having the meaning in Section 14 of the Agreement but not include
obligations in respect of deposits received in the ordinary course of Party A's banking business, and (ii) the
"Threshold Amount" with respect to Party A meaning, as of any date of calculation, 3% of stockholder's equity
of U.S. Bancorp.

(c) The "Credit Event Upon Merger" provisions of Section 5(b)(iv) of the Agreement will apply to Party A and
will not apply to Party B, provided, however, that the phrase "materially weaker" means that the actual or implied
credit rating of (A) the senior long-term debt of the resulting, surviving or transferee entity is rated less than
BBB+ by Standard & Poor's Corporation or Baa3 by Moody's Investors Service Inc., or (B) in the event that there
are no such Standard & Poor's Corporation or Moody's Investors Service, Inc. ratings, the Policies (as defined
below) in effect at the time, of the party which is not the Affected Party, would lead such non-Affected Party,
solely as a result of a change in the nature, character, identity or condition of the Affected Party from its state (as
a party to this Agreement) prior to such consolidation, amalgamation, merger or transfer, to decline to make an
extension of credit to, or enter into a Transaction with, the resulting, surviving or transferee entity. "Policies", for

the purposes of this definition means: (x)(i) internal credit limits applicable to individual entities or (ii) other
limits on doing business with entities domiciled or doing business in certain jurisdictions or engaging in certain
activities, or (y) internal restrictions on doing business with entities with whom the party which is not the
Affected Party has had prior adverse business relations.

(d) For purposes of Section 6( e) of the Agreement, Market Quotation and Second Method will apply.

2.  The terms of the Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Type of Transaction: | Interest Rate Cap |
| Notional Amount: | USD 32,500,000.00 |
| Trade Date: | December 31, 2009 |
| Effective Date: | January 4, 2010 |
| Termination Date: | January 4, 2015, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Fixed Rate Payer (Buyer): | Party B |
| Fixed Amount: | USD 435,000.00 |
| Fixed Rate Payer Payment Dates: | January 5, 2010 |
| Floating Rate Payer (Seller): | Party A |
| Cap Rate: | 5.00 % |
| Floating Rate Option: | USD-SIFMA Municipal Swap Index |
| Averaging Method: | Weighted |
| Floating Rate Day Count Fraction: | ACT/ACT |
| Floating Rate for Initial Calculation Period: | TBD |
| Floating Rate Payer Payment Dates: | Beginning February 1, 2010 and thereafter on the 1st day of each month, to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Reset Dates: | Each Thursday based on previous day's fixing. If such a day is not a New York Business Day, then the next succeeding New York Business Day during the Calculation Period. |
| Reset Business Days: | New York |
| Payment Business Days: | New York |
| Calculation Agent: | U.S. Bank National Association |

3.  On each Payment Date, the Floating Rate Payer will pay the Fixed Rate Payer the Floating Amount, if any, as
calculated by the product of:

(a)  the Notional Amount

(b)  the excess, if any, of the Floating Rate, as determined on the Rate Reset Date for the Calculation Period, over
the Cap Rate, and

(c) the Floating Rate Day Count Fraction

4. All payments hereunder shall be made in immediately available U.S. Dollar funds

Payments to Party A/PartyB:                        Please Provide

5. In connection with this Confirmation, each party represents and acknowledges to the other party that:

    i.   it has no recourse for and is not relying upon any legal, tax, regulatory, accounting or other advice, statements or recommendations (whether written or oral) of the other party regarding such Transaction, other than the written representations expressly made by that other party in the Agreement and in the Confirmations in respect of such Transaction;

    ii.  it has the capacity to evaluate (internally or through independent professional advice) such Transaction (including decisions regarding the appropriateness or suitability of such Transaction) and has made its own decision to enter into such Transaction;

    iii. it understands the terms, conditions and risks of such transaction and is willing to accept those terms and conditions and to assume (financially and otherwise) those risks;

    iv.  it is entering into such Transaction as principal and not as agent for any other party;

    v.   it acknowledges and agrees that the other party is not acting as a fiduciary or advisor to it in connection with such Transaction;

    vi.  it acknowledges that U.S. Bank National Association has advised counterparty to consult its own tax, accounting and legal advisors in connection with this transaction evidenced by this confirmation and that it has done so; and

    vii. it is entering into such Transaction for the purpose of managing its borrowings or investments, hedging its underlying assets or liabilities or in connection with a line of business, and not for purposes of speculation.

6. The Confirmation and Agreement shall be governed by and construed in accordance with the laws of the State of New York.

7. Each party may assign its rights or obligations hereunder to any other party only with the express consent of the other party hereto. This consent will not be unreasonably withheld or delayed.

*Our Ref: 455A*                                                                                   *Page 5*

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing this
Confirmation enclosed for that purpose and returning a copy via fax to:

U.S. Bank Deriv Products Group
Attention: Capital Market Derivatives
Fax # 312-325-8971

U.S. Bank National Association

By: Joseph M. Tessmer

Title: Assistant Vice President

Accepted and confirmed as of the date first above
written:

Retirement Housing Foundation

By:

Title:    Laverne R. Joseph
President

1/22/2010 10:03 AM