**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS NOTICE OF FOUR HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL, MAURICE HORWITZ, AT 212-310-8883.**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons
Ralph I. Miller

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
In re                                          :    Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :    08-13555 (JMP)
                                               :
                    Debtors.                   :    (Jointly Administered)
---------------------------------------------------------------x
```

### NOTICE OF HEARING ON FOUR HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

**PLEASE TAKE NOTICE** that on August 12, 2013, Lehman Brothers Holdings

Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for

the entities in the above-referenced chapter 11 cases, filed its Four Hundred Twenty-Ninth

omnibus objection to claims (the "Four Hundred Twenty-Ninth Omnibus Objection to Claims"),

and that a hearing (the "Hearing") to consider the Four Hundred Twenty-Ninth Omnibus

Objection to Claims will be held before the Honorable James M. Peck, United States Bankruptcy

Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New

York, One Bowling Green, New York, New York 10004, on **September 26, 2013, at 10:00 a.m.**

**(Eastern Time)**, or as soon thereafter as counsel may be heard.

      **PLEASE TAKE FURTHER NOTICE** that any responses to the Four Hundred

Twenty-Ninth Omnibus Objection to Claims must be in writing, shall conform to the Federal

Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with

the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system,

and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard

copy delivered directly to Chambers), in accordance with General Order M-182 (which can be

found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399

upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New

York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth

Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq., Ralph I. Miller, Esq., and

Maurice Horwitz, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S.

Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn:

Tracy Hope Davis, Esq., Susan Golden, Esq., and Andrea Schwartz, Esq.); so as to be so filed

and received by no later than **September 11, 2013 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

PLEASE TAKE FURTHER NOTICE that if no responses are timely filed and served with respect to the Four Hundred Twenty-Ninth Omnibus Objection to Claims or any claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Four Hundred Twenty-Ninth Omnibus Objection to Claims, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: August 12, 2013
      New York, New York

/s/ Robert J. Lemons
Robert J. Lemons
Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons
Ralph I. Miller

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
**In re**                                                        :    **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :    **08-13555 (JMP)**
                                                                 :
                                        **Debtors.**            :    **(Jointly Administered)**
-------------------------------------------------------------------x

**FOUR HUNDRED TWENTY-NINTH OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS FOUR HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT LEHMAN BROTHERS HOLDINGS INC.'S COUNSEL, MAURICE HORWITZ, AT 212-310-8883.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors [ECF No. 22737] (the "Plan") for the entities in the

above-referenced chapter 11 cases (collectively, the "Chapter 11 Estates"), respectfully

represents:

### Preliminary Statement

1.      The Plan Administrator files this four hundred twenty-ninth omnibus

objection to claims (the "Four Hundred Twenty-Ninth Omnibus Objection to Claims"), pursuant

to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order

approving procedures for the filing of omnibus objections to proofs of claim filed in these

chapter 11 cases (the "Procedures Order") [ECF No. 6664], seeking disallowance and

expungement of the claims listed on Exhibit A annexed hereto.

2.      The proofs of claim identified on Exhibit A (collectively, the "No Liability

Claims" and each a "No Liability Claim") were filed against LBHI by former employees of

Lehman Brothers Inc. ("LBI"), a subsidiary of LBHI that is not a debtor in the above-captioned

chapter 11 cases and over which LBHI has no control.  LBI is the subject of a separate

liquidation proceeding administered by the Bankruptcy Court for the Southern District of New

York (the "SIPA Court") under the Securities Investor Protection Act of 1970, as amended

("SIPA"): *Securities Investor Protection Corporation v. Lehman Brothers Inc.* (Case No. 08-

01420) (JMP) (SIPA).

3.    Each of the claimants listed on Exhibit A (the "LBI Employees" and each

an "LBI Employee") of the No Liability Claims (all of which are substantially identical to each

other) states that he or she "holds a claim(s) against [LBI]" and asserts that prior to the

commencement of these chapter 11 cases, (i) "LBI was managed and completely dominated by

[LBHI]," (ii) "[LBHI] wrongfully caused LBI to, among other things, operate without adequate

capital to maintain its operations," and (iii) "[a]s a direct result thereof, LBI has been left without

sufficient assets to pay [the LBI Employee] the full amount" of his or her claim.  For these

reasons, each LBI Employee asserts that LBHI is "responsible for the payment of all of LBI's

claims, including, but not limited to," the applicable No Liability Claim.

4.    Based on the assertions made in the No Liability Claims (cited above), the

LBI Employees have requested that the Court allow the No Liability Claims on the sole basis

that the corporate form separating LBHI and LBI should be disregarded.[1]  Such veil-piercing

claims have no merit.  Moreover, irrespective of the merits of any veil-piercing, alter ego, or

similar claim to disregard the corporate form (together and individually, "Alter Ego Claims"),

under binding Second Circuit precedent, the LBI Employees lack standing to assert Alter Ego

Claims against LBHI.  Because the only asserted legal basis for allowing the No Liability Claims

against LBHI is one that the LBI Employees lack standing to assert, the Plan Administrator

requests that the No Liability Claims be disallowed and expunged.

---

[1]    It is axiomatic that absent the disregard of an entity's corporate form, "affiliated corporations are, as a rule, treated separately and independently so that one will not be held liable for the contractual obligations of [an]other…."  *Krys v. Aaron* (*In re Refco Inc. Sec. Litig.*), 826 F.Supp.2d 478, 495 (S.D.N.Y. 2010) (*quoting Sheridan Broad. Corp. v. Small*, 798 N.Y.S.2d 45, 46-47 (N.Y. App. Div. 2005)).

US_ACTIVE:\44173205\3\58399.0011

5.    The Plan Administrator reserves its rights to object on any other basis to any No Liability Claim if the Court does not grant the relief requested herein, as to any particular claim.

### Jurisdiction

6.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

7.    Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.    On September 19, 2008, the District Court for the Southern District of New York entered an order adjudicating that customers of LBI are in need of protection under SIPA and appointing James W. Giddens as trustee (the "LBI Trustee") to oversee LBI's liquidation.

9.    On January 14, 2010, the Court entered the Procedures Order, which authorizes the filing of omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

10.    On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

4

11.    On February 21, 2013, the LBI Trustee and each of the Chapter 11 Estates entered into a settlement agreement (the "LBI Settlement Agreement"), a copy of which is attached hereto as Exhibit B.  Pursuant to the LBI Settlement Agreement, the LBI Trustee released LBHI from any claims that it might have against LBHI, including any Alter Ego Claims.  On April 16, 2013, the SIPA Court entered an order, a copy of which is attached hereto as Exhibit C, approving the LBI Settlement Agreement.  The order approving the LBI Settlement Agreement is now final and non-appealable, and the LBI Settlement Agreement, including the provisions that grant LBHI releases, has become effective.

### The LBI Employees Lack Standing To Assert Alter Ego Claims Against LBHI

12.    The No Liability Claims have no merit; but as importantly, under binding Second Circuit law, the LBI Employees lack standing to assert any form of Alter Ego Claims. The Second Circuit has held, unequivocally, that in the bankruptcy context, "[i]f under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or the debtor-in-possession." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993); *accord Duke Energy Trading And Mktg., L.L.C. v. Enron Corp. (In re Enron Corp.)*, No. 02-3609, 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. April 17, 2003).  Thus, the LBI Employees' standing depends on whether LBI can assert a claim to pierce its own corporate veil.

13.    Applying New York choice of law principles, courts in the Second Circuit uniformly hold that the law of a corporation's state of incorporation governs whether that corporation may pierce its own corporate veil.  *See, e.g.*, *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995) (applying Delaware law to a veil-piercing claim against a Delaware corporation); *In re Alper Holdings USA*, No. 07-12148, 2008 WL 541154, at *5 n.7 (Bankr.

5

S.D.N.Y. Feb. 25, 2008) (applying Delaware law because debtors were incorporated in Delaware

and, under New York choice of law principles, the law of the state of incorporation controls).

LBI is incorporated in Delaware.  Although no Delaware court has addressed whether a

Delaware corporation may pierce its own corporate veil, courts in the Southern District of New

York have construed Delaware law on this issue and have held that "a Delaware court would

permit a debtor corporation to assert a claim to pierce its own corporate veil."  *Duke Energy*,

2003 WL 1889040, at *3.

14.    Courts in the Second Circuit, therefore, consistently hold that if a debtor is

incorporated in Delaware, the debtor or trustee has exclusive standing to assert claims of a

general nature against the debtor's parent, such as Alter Ego Claims that may be brought by any

creditor.  *See, e.g.*, *id.* at *4; *Pereira v. Cogan*, No. 00-619, 2001 WL 243537, at *19-20

(S.D.N.Y. March 8, 2001).  This is because "[a]llowing the trustee or debtor-in-possession to

pursue [such] claim[s] avoids the prospect of creditors seeking to gain advantage over other

creditors by pursuing the alter ego claims on a first-come, first-serve basis."  *Duke Energy*, 2003

WL 1889040, at *4 (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700-

01 (2d Cir. 1989)).

15.    For example, in *Duke Energy*, the court held that the trustee or debtor-in-

possession had exclusive standing to bring a veil-piercing action against the debtors' corporate

parent, also a debtor.  *Id.* at *9.  In reaching that conclusion, the Court considered who would

have standing under Delaware law (the applicable law) to bring a veil-piercing action outside of

the bankruptcy context.  The court held, as follows:

> Based on the fact that Delaware law allows a subsidiary to
> maintain an action against a corporate parent, courts have found
> that a Delaware court would permit a debtor corporation to assert a
> claim to pierce its own corporate veil.  Thus, the trustee or debtor-

6

> in-possession would have exclusive standing to maintain a
> Delaware corporation's alter ego claim of a general nature.

*Id.* at *3 (citations omitted); *accord Pereira*, 2001 WL 243537, at *19-20 (holding that the

trustee had exclusive standing to bring an alter ego claim because a Delaware court would permit

the corporation to pierce its own corporate veil); *In re Alper Holdings*, 2008 WL 541154, at *6.

16.    That LBI, a Delaware corporation, is being liquidated pursuant to SIPA

has no impact on the question of standing because section 541 of the Bankruptcy Code (which

establishes and defines property of the estate) applies to LBI's SIPA proceeding pursuant to 15

U.S.C. § 78FFF(b).  Further, it is a well-established rule that "[the SIPA trustee] is empowered to

pursue . . . those claims that properly belonged to the debtor before it entered bankruptcy."

*Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 91 (S.D.N.Y. 2011).  Indeed, courts in the

Second Circuit have permitted a SIPA trustee to commence actions to pierce the corporate veil of

a debtor.  *See, e.g.*, *Mishkin v. Gurian* (*In re Adler, Coleman Clearing Corp.*), 469 F.Supp.2d

112 (S.D.N.Y. 2007) (granting summary judgment for SIPA trustee's alter ego and control

person causes of action); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293

(Bankr. S.D.N.Y. 1999) (permitting the SIPA trustee to prosecute a reverse veil-piercing claim

because the right to bring such an action was property of the estate).

17.    Accordingly, the LBI Employees lack standing to assert any form of Alter

Ego Claims against LBHI.  Rather, only LBI, which is now under the control of the LBI Trustee,

has standing to assert Alter Ego Claims against LBHI.  However, the LBI Trustee has not

asserted such claims against LBHI.  On the contrary, pursuant to section 6.01 of the LBI

Settlement Agreement, the LBI Trustee explicitly released LBHI from any form of Alter Ego

Claims.  Exhibit B at 26-27.[2]  Further, the SIPA Court expressly approved of such releases in the

order approving the LBI Settlement Agreement.  Exhibit C at 2-3.[3]  The LBI Employees are

bound by LBI's release of all Alter Ego Claims against LBHI and should not be permitted to

pursue such claims in light of the determination of LBI and the SIPA Court that the release of

LBI's Alter Ego Claims, among other things, "confers material benefits on, and is in the best

interest of, the LBI estate."  *Id.*

       18.     Even if the LBI Employees had standing to assert Alter Ego Claims

against LBHI (which they do not), such claims would lack merit.  However, because any

litigation over such claims is likely to be fact-intensive, prolonged and expensive, the Plan

Administrator seeks the disallowance of the No Liability Claims pursuant to the Four Hundred

Twenty-Ninth Omnibus Objection to Claims solely on the limited grounds that the LBI

Employees lack standing to assert Alter Ego Claims.  The Plan Administrator submits that

whether the LBI Employees lack standing to assert an Alter Ego Claim does not present any

genuine issues of material fact.

---

[2] Section 6.01 of the LBI Settlement Agreement provides as follows: "each LBI Releasing Party hereby irrevocably releases, discharges and acquits, fully and forever, each LBI Released Party from any and all Causes of Action of every kind, nature, character and description whatsoever, including, but not limited to, any Causes of Action that allege alter ego, veil piercing, enterprise liability, or similar theories of liability or that otherwise seek to disregard the corporate form of LBI or LBHI…."

[3] The order approving the LBI Settlement Agreement provides as follows: "Each of the releases provided for in the Settlement Agreement, which include, among other things, releases of Causes of Action that allege alter ego, veil piercing, enterprise liability or similar theories of liability or that otherwise seek to disregard the corporate form of LBI and LBHI and Causes of Action brought directly, indirectly, derivatively, representatively or in any other capacity, (i) is within the Court's jurisdiction, (ii) is essential to administering the LBI estate, (iii) is an integral element of the Settlement Agreement and/or to its effectuation, (iv) confers material benefits on, and is in the best interest of, the LBI estate, and (v) is important to the overall objectives of the Settlement Agreement." *Order Approving Settlement Agreement Between the Trustee and the LBHI Entities* at 3, *In re Lehman Brothers Inc.*, No. 08-01420 (Bankr. S.D.N.Y. April 16, 2013) [ECF No. 6020].

US_ACTIVE:\44173205\3\58399.0011

19.     For all the foregoing reasons, and because the only asserted legal basis for asserting the No Liability Claims against LBHI is one that the LBI Employees lack standing to assert, the No Liability Claims should be disallowed and expunged in their entirety.

## Notice

20.     No trustee has been appointed in these Chapter 11 Cases.  Notice of this Four Hundred Twenty-Ninth Omnibus Objection to Claims has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) each claimant listed on Exhibit A; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

21.     No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests that the Court enter the annexed order disallowing and expunging the No Liability Claims in their entirety and

9

granting such other and further relief as the Court may deem just and appropriate.

Dated: August 12, 2013
        New York, New York

/s/ Robert J. Lemons
Robert J. Lemons
Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

10

**EXHIBIT A**

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|---|
| 1 | ACKERMAN, DONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13828 | $406,721.82 | $406,721.82 * | None |
| 2 | ADES, SABAH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13827 | $314,085.13 | $314,085.13 * | None |
| 3 | ALAMO, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13832 | $60,761.78 | $60,761.78 * | None |
| 4 | ALESSANDRO, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13831 | $674,073.51 | $674,073.51 * | None |
| 5 | ALTMAN, ROGER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13830 | $179,585.20 | $179,585.20 * | None |
| 6 | AMBRECHT, KENNETH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13829 | $4,546,389.35 | $4,546,389.35 * | None |
| 7 | ANDERSON, BRENTON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13836 | $604,198.67 | $604,198.67 * | None |
| 8 | ANGST, CARLTON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13834 | $684,752.96 | $684,752.96 * | None |
| 9 | ASHE, KATHLEEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13833 | $204,910.53 | $204,910.53 * | None |
| 10 | ASHER, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13840 | $135,224.41 | $135,224.41 * | None |
| 11 | ATCHISON, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13839 | $1,648,719.77 | $1,648,719.77 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 12  AYOUB, ANTHONY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13838 | $393,289.45 | $393,289.45 * | None |
| 13  BAKER, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13837 | $929,533.23 | $929,533.23 * | None |
| 14  BARRETT, BERNARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13844 | $2,330,405.07 | $2,330,405.07 * | None |
| 15  BARY, ROBERTA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13843 | $73,755.48 | $73,755.48 * | None |
| 16  BATKIN, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13842 | $1,804,046.61 | $1,804,046.61 * | None |
| 17  BECKERMAN, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13841 | $878,524.27 | $878,524.27 * | None |
| 18  BELLAS, ALBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13847 | $1,408,871.84 | $1,408,871.84 * | None |
| 19  BELLINGER, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13846 | $1,650,779.41 | $1,650,779.41 * | None |
| 20  BENDER, DOUGLAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13845 | $604,243.54 | $604,243.54 * | None |
| 21  BENDER, THEODORE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13133 | $595,464.47 | $595,464.47 * | None |
| 22  BERKLEY, HENRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13132 | $1,031,621.43 | $1,031,621.43 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 23 BESSE, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13131 | $47,085.09 | $47,085.09 * | None |
| 24 BEST, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13130 | $402,767.98 | $402,767.98 * | None |
| 25 BIGGAR, ELIZABETH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13129 | $161,566.62 | $161,566.62 * | None |
| 26 BLUM, KEVIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13128 | $552,431.88 | $552,431.88 * | None |
| 27 BLUTINGER, NATAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13849 | $120,479.71 | $120,479.71 * | None |
| 28 BOE, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13855 | $220,272.56 | $220,272.56 * | None |
| 29 BORCHERS, LEON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13853 | $90,671.24 | $90,671.24 * | None |
| 30 BORRUSO, PATRICK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13852 | $91,789.11 | $91,789.11 * | None |
| 31 BOSHART, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13851 | $432,283.66 | $432,283.66 * | None |
| 32 BOURNE, GEORGE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/24/2009 | 34783 | $773,869.45 | $773,869.45 * | None |
| 33 BOYD, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13859 | $2,825,833.66 | $2,825,833.66 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 34  BOYLES, KENNETH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13858 | $396,680.15 | $396,680.15 * | None |
| 35  BRADY, JANE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13857 | $1,260,681.00 | $1,260,681.00 * | None |
| 36  BRAGER, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13856 | $97,587.59 | $97,587.59 * | None |
| 37  BRANDT, COLEMAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13646 | $797,490.26 | $797,490.26 | None |
| 38  BRECK, CHRISTOPHER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13648 | $425,095.78 | $425,095.78 | None |
| 39  BRECK, HENRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13647 | $496,253.01 | $496,253.01 | None |
| 40  BRECK, WILLIAM JR. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13848 | $486,032.81 | $486,032.81 * | None |
| 41  BRESNAN, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13649 | $309,537.84 | $309,537.84 | None |
| 42  BROADBENT, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13650 | $118,002.49 | $118,002.49 | None |
| 43  BRODA, KATHLEEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13651 | $144,010.00 | $144,010.00 | None |
| 44  BROWN, MELVILLE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13652 | $769,032.88 | $769,032.88 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|---|
| 45 | BROWN, ROBERT MOTT III | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13653 | $1,263,419.13 | $1,263,419.13 | None |
| 46 | BRYDSON, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13654 | $201,393.17 | $201,393.17 | None |
| 47 | BULS, DONNA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13655 | $83,168.72 | $83,168.72 | None |
| 48 | BURNS, PERRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13656 | $19,192.16 | $19,192.16 | None |
| 49 | BURNS, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13657 | $266,761.56 | $266,761.56 | None |
| 50 | BURTON, MARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13662 | $764,942.18 | $764,942.18 | None |
| 51 | BUSACCA, GARY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13661 | $393,289.45 | $393,289.45 | None |
| 52 | BUTTERS, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13660 | $810,278.95 | $810,278.95 | None |
| 53 | BUTTERY, STUART | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13659 | $668,605.25 | $668,605.25 | None |
| 54 | CAGNINA, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13658 | $836,141.87 | $836,141.87 | None |
| 55 | CAMPBELL, ROBERT H. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13672 | $818,878.27 | $818,878.27 | None |

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 56  CAPRA, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13671 | $190,537.50 | $190,537.50 | None |
| 57  CARBONE, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13670 | $805,594.08 | $805,594.08 | None |
| 58  CARBONE, RUDOLPH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16837 | $149,476.57 | $149,476.57 | None |
| 59  CARNS, LEWIS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16836 | $652,622.70 | $652,622.70 | None |
| 60  CARUANA, SALVATORE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16835 | $719,159.40 | $719,159.40 | None |
| 61  CEISLER, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16834 | $94,940.41 | $94,940.41 | None |
| 62  CERASIA, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16833 | $198,435.46 | $198,435.46 | None |
| 63  CHATLEY, BRUCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16832 | $68,131.18 | $68,131.18 | None |
| 64  CHEN, PHILIP | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16831 | $604,198.67 | $604,198.67 | None |
| 65  CHILDERS, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16316 | $217,274.66 | $217,274.66 * | None |
| 66  CIEMNIECKI, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16317 | $1,530,634.07 | $1,530,634.07 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 67  CLARK, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16318 | $402,018.29 | $402,018.29 * | None |
| 68  COGHLAN, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16319 | $1,162,463.56 | $1,162,463.56 * | None |
| 69  COHEN, LEONARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16320 | $130,116.86 | $130,116.86 * | None |
| 70  COHEN, PAUL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16321 | $117,670.71 | $117,670.71 * | None |
| 71  COHEN, SALLEE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16444 | $925,353.00 | $925,353.00 * | None |
| 72  COLACURCI, GLENN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16445 | $521,313.64 | $521,313.64 * | None |
| 73  COLE, EMRIED | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16446 | $153,384.94 | $153,384.94 * | None |
| 74  CONWAY, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16447 | $898,331.75 | $898,331.75 * | None |
| 75  COOPER, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16448 | $105,719.94 | $105,719.94 * | None |
| 76  CORONADO, FRANCISCO | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16449 | $11,730.18 | $11,730.18 * | None |
| 77  COSGROVE, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16451 | $747,261.32 | $747,261.32 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|---------------------------------------|
| 78 COUCH, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16450 | $83,070.57 | $83,070.57 * | None |
| 79 COX, TIMOTHY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16452 | $393,289.46 | $393,289.46 * | None |
| 80 CRONIN, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16453 | $1,590,011.50 | $1,590,011.50 * | None |
| 81 DAPUZZO, PETER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16455 | $698,995.07 | $698,995.07 * | None |
| 82 DARSKY, JUDITH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16454 | $258,306.69 | $258,306.69 * | None |
| 83 DAUMAN, STEWART | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16529 | $589,952.63 | $589,952.63 * | None |
| 84 DAVID DWORSKY TRUST U/A FOURTH OF WILL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16545 | $245,869.14 | $245,869.14 * | None |
| 85 DE SAINT PHALLE, FRANCOIS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16528 | $710,827.32 | $710,827.32 * | None |
| 86 DEGAGLIA, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16530 | $644,470.12 | $644,470.12 * | None |
| 87 DEGENNARO, MARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16531 | $196,642.09 | $196,642.09 * | None |
| 88 DEL CAMPO, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16532 | $440,546.57 | $440,546.57 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 89 DELLIPAOLI, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16533 | $483,930.25 | $483,930.25 * | None |
| 90 DEUTSCH, HARVEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16534 | $195,175.32 | $195,175.32 * | None |
| 91 DIXON, BARBARA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16535 | $2,198,861.78 | $2,198,861.78 * | None |
| 92 DOBIN, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16536 | $468,164.54 | $468,164.54 * | None |
| 93 DOEPKE, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16537 | $714,573.44 | $714,573.44 * | None |
| 94 DOLAN, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16538 | $393,289.45 | $393,289.45 * | None |
| 95 DORFMAN, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16539 | $1,693,866.15 | $1,693,866.15 * | None |
| 96 DORIS, MARTIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16540 | $684,752.96 | $684,752.96 * | None |
| 97 DOROSK, JEFFREY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16541 | $199,310.77 | $199,310.77 * | None |
| 98 DOYLE, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16542 | $72,198.78 | $72,198.78 * | None |
| 99 DRESCHER, DENNIS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16543 | $783,209.77 | $783,209.77 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 100 DRUSKIN, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16544 | $511,279.68 | $511,279.68 * | None |
| 101 EDMISTON, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16546 | $167,076.23 | $167,076.23 * | None |
| 102 EDWARDS, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16547 | $46,677.58 | $46,677.58 * | None |
| 103 EDWARDS, PAUL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16548 | $756,131.06 | $756,131.06 * | None |
| 104 EDWARDS, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16549 | $1,215,484.94 | $1,215,484.94 * | None |
| 105 EIGENFELD, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16550 | $32,282.03 | $32,282.03 * | None |
| 106 ELLIOTT, FREDERIC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16551 | $18,953,785.50 | $18,953,785.50 * | None |
| 107 ELLIS, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16552 | $255,051.37 | $255,051.37 * | None |
| 108 ELLNER, OLIVE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16553 | $161,993.76 | $161,993.76 * | None |
| 109 ESCHERT, ERWIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16554 | $662,026.66 | $662,026.66 * | None |
| 110 ESTEY, ARTHUR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16555 | $1,120,414.35 | $1,120,414.35 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|-----------|---------|------------------------------|--------------------------|----------------------------------------|
| 111 EVELO, JOSEPH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16556 | $388,934.25 | $388,934.25 * | None |
| 112 EVENSON, DONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16557 | $46,052.28 | $46,052.28 * | None |
| 113 FARLEY, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16558 | $1,689,506.35 | $1,689,506.35 * | None |
| 114 FELBERBAUM, ROGER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16559 | $172,848.37 | $172,848.37 * | None |
| 115 FELDMAN, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16560 | $939,160.28 | $939,160.28 * | None |
| 116 FELDMAN, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16561 | $246,802.53 | $246,802.53 * | None |
| 117 FELL, LAURENCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16562 | $422,758.52 | $422,758.52 * | None |
| 118 FENWICK, LARRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16563 | $198,586.70 | $198,586.70 * | None |
| 119 FINLAYSON, RODERICK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16564 | $725,038.80 | $725,038.80 * | None |
| 120 FISH, JASON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16565 | $725,038.80 | $725,038.80 * | None |
| 121 FISHBEIN, NORMAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16566 | $172,236.93 | $172,236.93 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 122 FORSHAGEN, DOUGLAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16567 | $792,985.22 | $792,985.22 * | None |
| 123 FOX, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16568 | $100,747.36 | $100,747.36 * | None |
| 124 FRANK, EDWIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16569 | $589,952.63 | $589,952.63 * | None |
| 125 FRANK, FREDERICK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16570 | $678,316.03 | $678,316.03 * | None |
| 126 FRANKEL, ARNOLD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16571 | $149,302.64 | $149,302.64 * | None |
| 127 FRIED, ARTHUR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16572 | $1,706,418.70 | $1,706,418.70 * | None |
| 128 FRIEDMAN, MARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16573 | $873,435.89 | $873,435.89 * | None |
| 129 FRY, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16574 | $1,099,882.87 | $1,099,882.87 * | None |
| 130 FULTON, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16575 | $125,565.37 | $125,565.37 * | None |
| 131 FULTZ, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16576 | $424,962.83 | $424,962.83 * | None |
| 132 GALLATIN, RONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 08/10/2010 | 67002 | $3,399,209.32 | $3,399,209.32 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 133  GALLEA, ANTHONY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16578 | $455,613.60 | $455,613.60 * | None |
| 134  GALLEHER, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16579 | $165,383.17 | $165,383.17 * | None |
| 135  GANZ, SUSAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16580 | $335,314.96 | $335,314.96 * | None |
| 136  GARBER, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16581 | $124,658.56 | $124,658.56 * | None |
| 137  GARD, RONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16582 | $145,373.59 | $145,373.59 * | None |
| 138  GARTLAND, JUDE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16583 | $635,105.80 | $635,105.80 * | None |
| 139  GARZARELLI, ELAINE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16584 | $805,594.08 | $805,594.08 * | None |
| 140  GELBAND, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16585 | $201,393.17 | $201,393.17 * | None |
| 141  GENGLER, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16586 | $390,184.99 | $390,184.99 * | None |
| 142  GENIRS, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16587 | $480,287.30 | $480,287.30 * | None |
| 143  GIOIELLA, HENRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16588 | $402,790.46 | $402,790.46 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|-----------|---------|------------------------------|--------------------------|----------------------------------------|
| 144  GLADSTONE, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16589 | $977,694.31 | $977,694.31 * | None |
| 145  GLASKY, JOEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16590 | $926,434.44 | $926,434.44 * | None |
| 146  GLISKER, GEORGE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16591 | $69,541.76 | $69,541.76 * | None |
| 147  GOLD, JONATHAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16592 | $954,916.85 | $954,916.85 * | None |
| 148  GOLDMAN, CLIFFORD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16593 | $201,485.72 | $201,485.72 * | None |
| 149  GOLDSCHMIDT, ELI | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16594 | $356,275.78 | $356,275.78 * | None |
| 150  GOODE, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16595 | $969,871.11 | $969,871.11 * | None |
| 151  GOODSPEED, ROGER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16596 | $1,416,746.53 | $1,416,746.53 * | None |
| 152  GOOGINS, GEORGE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16597 | $245,991.78 | $245,991.78 * | None |
| 153  GOTT, STEPHEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16598 | $1,764,188.02 | $1,764,188.02 * | None |
| 154  GOTTMANN, HENRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16599 | $688,254.28 | $688,254.28 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 155 GRABER, JERROLD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16600 | $43,171.91 | $43,171.91 * | None |
| 156 GRAVES, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16601 | $461,942.25 | $461,942.25 * | None |
| 157 GREEN, LAWRENCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16602 | $3,049,012.24 | $3,049,012.24 * | None |
| 158 GREGORY, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/24/2009 | 34782 | $72,302.88 | $72,302.88 * | None |
| 159 GUERNSEY, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16604 | $1,401,517.42 | $1,401,517.42 * | None |
| 160 HADLEY, EDWIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16605 | $88,004.43 | $88,004.43 * | None |
| 161 HAJIM, EDMUND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24034 | $434,465.24 | $434,465.24 * | None |
| 162 HAMENT, NANCY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24035 | $1,208,350.38 | $1,208,350.38 * | None |
| 163 HANKS, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24036 | $634,851.25 | $634,851.25 * | None |
| 164 HARCUM, JOSEPH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24037 | $336,992.95 | $336,992.95 * | None |
| 165 HART, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24038 | $398,634.80 | $398,634.80 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 166  HART, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24039 | $101,843.92 | $101,843.92 * | None |
| 167  HAYES, BRIAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24040 | $1,688,694.34 | $1,688,694.34 * | None |
| 168  HAYES, DENNIS LEE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24041 | $2,209,116.79 | $2,209,116.79 * | None |
| 169  HERRMANN, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24042 | $429,574.67 | $429,574.67 * | None |
| 170  HERSHBERG, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24043 | $787,881.87 | $787,881.87 * | None |
| 171  HERZER, CHARLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24044 | $725,038.80 | $725,038.80 * | None |
| 172  HETZEL, CHARLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24045 | $2,137,419.68 | $2,137,419.68 * | None |
| 173  HIGGINS, HARRISON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24046 | $2,958,423.46 | $2,958,423.46 * | None |
| 174  HILL, J. TOMLINSON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24048 | $2,769,162.25 | $2,769,162.25 * | None |
| 175  HIMELRIGHT, LORING | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24047 | $129,228.38 | $129,228.38 * | None |
| 176  HOFFMAN, ARNOLD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24049 | $489,560.79 | $489,560.79 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 177 HOFFMAN, KENNETH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24050 | $1,048,247.24 | $1,048,247.24 * | None |
| 178 HOOPES, L. SCOTT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24051 | $1,979,834.14 | $1,979,834.14 * | None |
| 179 HUBBARD, CHARLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24054 | $1,057,313.46 | $1,057,313.46 * | None |
| 180 HYLDAHL, BRUCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24052 | $61,630.48 | $61,630.48 * | None |
| 181 ILLGES, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24053 | $70,279.42 | $70,279.42 * | None |
| 182 ISLES, PHILIP | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24055 | $1,146,341.20 | $1,146,341.20 * | None |
| 183 JACKSON, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24056 | $572,291.20 | $572,291.20 * | None |
| 184 JACOBS, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24057 | $1,907,898.45 | $1,907,898.45 * | None |
| 185 JAMES, GRAEME | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24058 | $500,151.21 | $500,151.21 * | None |
| 186 JEFFREY K. ANDERSON ESTATE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13835 | $528,656.26 | $528,656.26 * | None |
| 187 KAPLAN, ALICE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24059 | $258,875.86 | $258,875.86 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|-----------|---------|------------------------------|--------------------------|---------------------------------------|
| 188  KAPLAN, JACK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24060 | $110,505.38 | $110,505.38 * | None |
| 189  KAROL, HERBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24061 | $304,478.94 | $304,478.94 * | None |
| 190  KATZ, EVAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24063 | $149,508.12 | $149,508.12 * | None |
| 191  KAUFMAN, JOEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24062 | $390,765.32 | $390,765.32 * | None |
| 192  KEARNS, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24064 | $248,963.31 | $248,963.31 * | None |
| 193  KELLY, BRIAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24065 | $312,605.37 | $312,605.37 * | None |
| 194  KILGORE, JON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24066 | $402,790.46 | $402,790.46 * | None |
| 195  KIRBY, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24067 | $171,790.26 | $171,790.26 * | None |
| 196  KLONSKY, DANIEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24069 | $820,520.00 | $820,520.00 * | None |
| 197  KOENEN, KATHLEEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24068 | $243,334.92 | $243,334.92 * | None |
| 198  KOPP, BRADFORD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24071 | $966,719.06 | $966,719.06 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 199  KOWSKI, GEORGE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24072 | $204,307.17 | $204,307.17 * | None |
| 200  KOZELETZ, STEPHEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24070 | $81,042.81 | $81,042.81 * | None |
| 201  KRA, HOWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25746 | $606,590.78 | $606,590.78 * | None |
| 202  KRANTZ, ERIC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25744 | $124,048.78 | $124,048.78 * | None |
| 203  KRUEGER, HARVEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25745 | $477,633.48 | $477,633.48 * | None |
| 204  KUNIGK, PETER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25743 | $789,698.47 | $789,698.47 * | None |
| 205  KURZROK, MORTON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25742 | $350,573.80 | $350,573.80 * | None |
| 206  LAKEFIELD, BRUCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25741 | $667,332.41 | $667,332.41 * | None |
| 207  LANCASTER, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25738 | $1,163,845.69 | $1,163,845.69 * | None |
| 208  LANDAU, ARNOLD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25740 | $153,406.42 | $153,406.42 * | None |
| 209  LANDGRAF, KARL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25739 | $604,198.67 | $604,198.67 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 210 LANE, JEFFREY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25737 | $3,744,393.79 | $3,744,393.79 * | None |
| 211 LAPCZYNSKI, ANTHONY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25736 | $118,600.48 | $118,600.48 * | None |
| 212 LATERMAN, BERNARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 25735 | $93,019.96 | $93,019.96 * | None |
| 213 LEETZOW, LEONARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24010 | $242,332.78 | $242,332.78 * | None |
| 214 LEHMAN, JACK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24011 | $2,070,572.63 | $2,070,572.63 * | None |
| 215 LEHR, SETH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24012 | $589,712.27 | $589,712.27 * | None |
| 216 LENTZ, HENRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24013 | $164,222.98 | $164,222.98 * | None |
| 217 LENZ, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24014 | $411,940.81 | $411,940.81 * | None |
| 218 LESSING, STEPHEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24017 | $1,012,689.62 | $1,012,689.62 * | None |
| 219 LESTER, RONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24018 | $54,283.16 | $54,283.16 * | None |
| 220 LEVINSON, ANDREW | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24019 | $653,994.12 | $653,994.12 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 221 LEVY, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24015 | $211,858.88 | $211,858.88 * | None |
| 222 LEVY, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24016 | $111,472.56 | $111,472.56 * | None |
| 223 LEWIS, DOROTHY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24025 | $2,051,318.02 | $2,051,318.02 * | None |
| 224 LIBMAN, SPENCER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24026 | $98,844.82 | $98,844.82 * | None |
| 225 LIND, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24027 | $402,790.46 | $402,790.46 * | None |
| 226 LINDSTROM, WARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24020 | $693,790.23 | $693,790.23 * | None |
| 227 LLOYD, MARCELLE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24024 | $1,407,492.00 | $1,407,492.00 * | None |
| 228 LONGO, NICHOLAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24021 | $1,268,915.46 | $1,268,915.46 * | None |
| 229 LORD, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24022 | $393,259.01 | $393,259.01 * | None |
| 230 LOVETT, NIGEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24023 | $2,064,072.17 | $2,064,072.17 * | None |
| 231 LUSARDI, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22479 | $201,393.17 | $201,393.17 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 232 MADDEN, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22480 | $3,026,304.05 | $3,026,304.05 | None |
| 233 MAGUIRE, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22481 | $1,280,230.23 | $1,280,230.23 | None |
| 234 MAHER, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22482 | $344,888.16 | $344,888.16 | None |
| 235 MANLEY, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22483 | $481,221.39 | $481,221.39 | None |
| 236 MARANTZ, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22484 | $474,809.11 | $474,809.11 | None |
| 237 MARINO, BENEDICT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22485 | $87,979.00 | $87,979.00 | None |
| 238 MARINO, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22486 | $393,289.45 | $393,289.45 | None |
| 239 MARKS, HERBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22487 | $201,407.92 | $201,407.92 | None |
| 240 MARTINDALE, WIGHT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22488 | $369,899.59 | $369,899.59 | None |
| 241 MARTINEZ, ROMAN IV | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22489 | $685,698.90 | $685,698.90 | None |
| 242 MARTOV, MARTIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22490 | $117,529.61 | $117,529.61 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 243 MAY, HAROLD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22522 | $307,642.61 | $307,642.61 | None |
| 244 MCCANN, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22523 | $177,567.50 | $177,567.50 | None |
| 245 MCCLEARY, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22524 | $1,037,736.66 | $1,037,736.66 | None |
| 246 MCCORMICK, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22507 | $740,413.68 | $740,413.68 | None |
| 247 MCDANIEL, ROGER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22583 | $195,075.06 | $195,075.06 * | None |
| 248 MCGLYNN, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22582 | $943,723.04 | $943,723.04 * | None |
| 249 MCGUINN, EDWIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22581 | $2,113,680.26 | $2,113,680.26 * | None |
| 250 MCHALE, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22580 | $94,509.53 | $94,509.53 | None |
| 251 MCKEOWN, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22579 | $603,625.74 | $603,625.74 | None |
| 252 MCLENDON, HEATH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22578 | $162,228.57 | $162,228.57 | None |
| 253 MCPHERSON, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22577 | $193,962.58 | $193,962.58 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|---------------------------------------|
| 254 MEHAFFEY, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22576 | $424,903.98 | $424,903.98 | None |
| 255 MEJEAN, PAUL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22575 | $1,123,799.82 | $1,123,799.82 | None |
| 256 MELNIK, RONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22574 | $267,611.36 | $267,611.36 | None |
| 257 MELZER, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22573 | $285,555.26 | $285,555.26 | None |
| 258 MESSINGER, CRAIG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22572 | $396,983.65 | $396,983.65 | None |
| 259 MICKEL, FRANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22571 | $432,123.27 | $432,123.27 | None |
| 260 MIKULICH, RAYMOND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22570 | $322,233.80 | $322,233.80 | None |
| 261 MILLARD, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22569 | $748,452.18 | $748,452.18 | None |
| 262 MILLER, JEROME | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22568 | $595,033.47 | $595,033.47 | None |
| 263 MILLER, RONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22567 | $85,443.55 | $85,443.55 | None |
| 264 MILVERSTED, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22566 | $322,233.80 | $322,233.80 | None |

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 265 MINTER, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22565 | $195,006.45 | $195,006.45 | None |
| 266 MONCRIEFFE, PEREGRINE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22564 | $127,691.45 | $127,691.45 | None |
| 267 MONTALBANO, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22563 | $687,975.52 | $687,975.52 | None |
| 268 MORGIA, CATALDO | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22562 | $178,910.74 | $178,910.74 | None |
| 269 MORTKOWITZ, HARRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22561 | $1,305,641.96 | $1,305,641.96 | None |
| 270 MOSCHELLA, JOSEPH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22560 | $485,549.24 | $485,549.24 | None |
| 271 MUNRO, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22559 | $430,539.81 | $430,539.81 | None |
| 272 MURPHY, NEWELL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22558 | $86,054.41 | $86,054.41 | None |
| 273 MURRAY, PHILLIP | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22557 | $309,331.90 | $309,331.90 | None |
| 274 NASTRO, CHARLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22556 | $238,865.61 | $238,865.61 | None |
| 275 NAVRUDE, STANLEY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22555 | $84,912.62 | $84,912.62 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 276 NEIL, FRANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22525 | $183,679.87 | $183,679.87 | None |
| 277 NESTOR, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22526 | $457,295.47 | $457,295.47 | None |
| 278 NEWMARK, PAUL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22527 | $553,185.15 | $553,185.15 | None |
| 279 ODERMATT, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22528 | $590,090.38 | $590,090.38 | None |
| 280 ORLINS, STEPHEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22529 | $1,009,317.51 | $1,009,317.51 | None |
| 281 OWENS, JOHNS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22530 | $268,532.28 | $268,532.28 | None |
| 282 PALATNEK, ARNOLD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22531 | $805,594.08 | $805,594.08 | None |
| 283 PASSMAN, SEYMOUR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22532 | $400,415.65 | $400,415.65 | None |
| 284 PAVLOFF, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22533 | $69,057.33 | $69,057.33 | None |
| 285 PENROSE, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22534 | $644,470.12 | $644,470.12 | None |
| 286 PETTIT, ANNE MARY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22535 | $1,989,654.99 | $1,989,654.99 | None |

\* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|---------------------------------------|
| 287  PHYFER, DANIEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22536 | $94,462.11 | $94,462.11 | None |
| 288  PLUMERI, JOSEPH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22537 | $1,409,794.75 | $1,409,794.75 | None |
| 289  POGGI, IRENE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22538 | $297,412.58 | $297,412.58 | None |
| 290  POLHEMUS, KENNETH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22539 | $585,010.20 | $585,010.20 | None |
| 291  POLLACK, HOWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22501 | $523,629.79 | $523,629.79 | None |
| 292  PONDT, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22502 | $629,270.57 | $629,270.57 | None |
| 293  PORTER, GRANT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22503 | $346,637.88 | $346,637.88 | None |
| 294  PRAVATO, FRANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22504 | $101,101.80 | $101,101.80 | None |
| 295  PUCCIARELLI, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22505 | $440,546.57 | $440,546.57 | None |
| 296  PULLING, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22506 | $732,806.98 | $732,806.98 | None |
| 297  QUAST, LANI | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22508 | $781,527.79 | $781,527.79 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 298  RANEY, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22510 | $143,205.03 | $143,205.03 | None |
| 299  RAYMOND, EUGENE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22509 | $478,079.55 | $478,079.55 | None |
| 300  REEF, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22512 | $424,962.83 | $424,962.83 | None |
| 301  REITZEL, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22511 | $1,437,698.19 | $1,437,698.19 | None |
| 302  RENEHAN, DANIEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22513 | $1,006,894.00 | $1,006,894.00 | None |
| 303  RENZI, FRANCES D. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22514 | $125,731.18 | $125,731.18 | None |
| 304  RING, CARL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22515 | $248,199.73 | $248,199.73 | None |
| 305  RITZ, NORMAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22516 | $336,401.99 | $336,401.99 | None |
| 306  ROBINSON, ROBY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22517 | $675,210.01 | $675,210.01 | None |
| 307  ROBSON, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22518 | $2,748,034.65 | $2,748,034.65 | None |
| 308  ROOSEVELT, THEODORE, IV | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22519 | $1,315,474.28 | $1,315,474.28 | None |

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 309  ROPER, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22520 | $805,594.08 | $805,594.08 | None |
| 310  ROSEE, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22551 | $129,228.38 | $129,228.38 | None |
| 311  ROSENBERG, NANETTE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22552 | $2,197,980.00 | $2,197,980.00 | None |
| 312  RYAN, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22553 | $116,541.23 | $116,541.23 | None |
| 313  SACCO, GREGORY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22554 | $660,586.88 | $660,586.88 | None |
| 314  SACK, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22585 | $276,498.41 | $276,498.41 * | None |
| 315  SAMRA, ALEXANDRA S. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13669 | $1,074,048.66 | $1,074,048.66 | None |
| 316  SAVARESE, LAWRENCE JR. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13668 | $457,136.74 | $457,136.74 | None |
| 317  SCANLON, JOSEPH | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13667 | $465,793.45 | $465,793.45 | None |
| 318  SCARAGGI, FRANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13666 | $1,208,399.28 | $1,208,399.28 | None |
| 319  SCHAEFER, GARY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13665 | $1,932,389.52 | $1,932,389.52 | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 320 SCHIFFER, CRAIG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13664 | $803,008.99 | $803,008.99 | None |
| 321 SCHOENTHAL, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13663 | $1,674,079.91 | $1,674,079.91 | None |
| 322 SCHULSINGER, JEFFREY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13601 | $834,616.89 | $834,616.89 * | None |
| 323 SCHWARZMAN, STEPHEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13600 | $233,190.74 | $233,190.74 * | None |
| 324 SEEGAL, FRED | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13599 | $220,957.22 | $220,957.22 * | None |
| 325 SEIBELS, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13537 | $129,770.83 | $129,770.83 * | None |
| 326 SHAFIROFF, MARTIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13536 | $974,562.05 | $974,562.05 * | None |
| 327 SHAFTEL, MEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13535 | $943,398.98 | $943,398.98 * | None |
| 328 SHAPIRO, ROBERT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13534 | $1,573,198.43 | $1,573,198.43 * | None |
| 329 SHEAN, ANNE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13533 | $2,129,050.00 | $2,129,050.00 * | None |
| 330 SHEINBERG, GEORGE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13532 | $733,237.23 | $733,237.23 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 331 SHELTON, CHARLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13531 | $299,710.67 | $299,710.67 * | None |
| 332 SHEPARD, FRANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13530 | $393,289.45 | $393,289.45 * | None |
| 333 SHERMAN, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13529 | $190,515.50 | $190,515.50 * | None |
| 334 SHERMAN, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13528 | $55,760.91 | $55,760.91 * | None |
| 335 SHORR, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13527 | $637,675.44 | $637,675.44 * | None |
| 336 SHUTZER, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13526 | $2,165,845.63 | $2,165,845.63 * | None |
| 337 SILVERBERG, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13525 | $71,198.51 | $71,198.51 * | None |
| 338 SIMMONS, HARDWICK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13524 | $1,485,056.68 | $1,485,056.68 * | None |
| 339 SIMONETTI, PHILIP | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13523 | $402,790.46 | $402,790.46 * | None |
| 340 SIMONINI, JULIUS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13522 | $1,013,258.96 | $1,013,258.96 * | None |
| 341 SINAI, ALLEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13521 | $618,173.96 | $618,173.96 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|-----------|---------|------------------------------|--------------------------|----------------------------------------|
| 342  SLIFER, STEPHEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13520 | $613,904.25 | $613,904.25 * | None |
| 343  SMITH, MICHAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13519 | $168,802.87 | $168,802.87 * | None |
| 344  SMITH, RUSSELL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13518 | $36,000.00 | $36,000.00 * | None |
| 345  SOBOTKA, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13517 | $571,660.64 | $571,660.64 * | None |
| 346  SOLOMON, PETER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13516 | $1,299,825.11 | $1,299,825.11 * | None |
| 347  SPAR, WARREN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13515 | $802,475.70 | $802,475.70 * | None |
| 348  SPIEGEL, STEVEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13514 | $1,134,094.29 | $1,134,094.29 * | None |
| 349  SPRING, BURKE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13513 | $315,486.24 | $315,486.24 * | None |
| 350  STEIN, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13512 | $144,741.57 | $144,741.57 * | None |
| 351  STERN, JAMES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22584 | $3,644,765.50 | $3,644,765.50 * | None |
| 352  STEVENSON, MARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13511 | $369,896.64 | $369,896.64 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 353 STONE, JERRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13510 | $292,360.84 | $292,360.84 * | None |
| 354 STRONG, ROGER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13509 | $46,343.99 | $46,343.99 * | None |
| 355 STRUBLE, RAYMOND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13508 | $977,477.50 | $977,477.50 * | None |
| 356 TERRELL, STEVEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13507 | $249,528.60 | $249,528.60 * | None |
| 357 TESCHE, ALLEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13506 | $156,019.74 | $156,019.74 * | None |
| 358 TILLES, GLENN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13503 | $201,393.17 | $201,393.17 * | None |
| 359 TIRELLO, ED JR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13502 | $128,222.32 | $128,222.32 * | None |
| 360 TOPOL, CLIFFORD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13504 | $1,619,950.65 | $1,619,950.65 * | None |
| 361 TROY, AUSTIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13501 | $1,050,496.37 | $1,050,496.37 * | None |
| 362 TUCKER, THOMAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13500 | $1,559,682.65 | $1,559,682.65 * | None |
| 363 URCIUOLI, CARMINE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13499 | $644,470.12 | $644,470.12 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|-----------|---------|------------------------------|--------------------------|----------------------------------------|
| 364  VANDENBOSSCHE, PAMELA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13498 | $907,296.13 | $907,296.13 * | None |
| 365  VIERING, DONALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13497 | $777,512.05 | $777,512.05 * | None |
| 366  VINCENT, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13496 | $750,219.36 | $750,219.36 * | None |
| 367  VIRANY, STEVEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13495 | $552,446.56 | $552,446.56 * | None |
| 368  VLACH, ROGER | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13563 | $473,118.93 | $473,118.93 * | None |
| 369  VOELKER, EDWARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13562 | $1,301,204.73 | $1,301,204.73 * | None |
| 370  VON STUTTERHEIM, KLAUS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13561 | $253,922.66 | $253,922.66 * | None |
| 371  WAIT, JARRETT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13560 | $713,145.57 | $713,145.57 * | None |
| 372  WALLACE, GENE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13559 | $34,541.53 | $34,541.53 * | None |
| 373  WALTHER, GARY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13558 | $408,396.00 | $408,396.00 * | None |
| 374  WASHKOWITZ, ALAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13557 | $1,720,565.69 | $1,720,565.69 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|---|---|---|---|---|---|---|---|
| 375  WEINBERG, RICHARD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13556 | $917,268.06 | $917,268.06 * | None |
| 376  WEISS, EUGENE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13554 | $42,923.28 | $42,923.28 * | None |
| 377  WELLS, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13553 | $71,904.34 | $71,904.34 * | None |
| 378  WEST, PATRICK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13552 | $375,335.47 | $375,335.47 * | None |
| 379  WESTON, GERALD | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13551 | $993,174.53 | $993,174.53 * | None |
| 380  WILLIAMS, PAUL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13550 | $185,346.15 | $185,346.15 * | None |
| 381  WILLIAMSON, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13549 | $589,952.63 | $589,952.63 * | None |
| 382  WILSON, JOHN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13548 | $1,078,049.06 | $1,078,049.06 * | None |
| 383  WINCHESTER, DAVID | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13547 | $613,373.96 | $613,373.96 * | None |
| 384  WOLFF, WILLIAM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13546 | $402,790.46 | $402,790.46 * | None |
| 385  WOLGEMUTH, KENT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13545 | $353,370.57 | $353,370.57 * | None |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 429: EXHIBIT A - NO LIABILITY**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | AMOUNTS NOT SUBJECT TO THIS OBJECTION |
|------|-------------|-------------|------------|---------|------------------------------|--------------------------|----------------------------------------|
| 386  WOLITZER, STEVEN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13544 | $2,172,236.60 | $2,172,236.60 * | None |
| 387  WRIGHT, JEANNIE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13543 | $182,122.63 | $182,122.63 * | None |
| 388  WRIGHT, JOHN K | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13542 | $451,348.09 | $451,348.09 * | None |
| 389  WYNN, BARRY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13541 | $765,673.02 | $765,673.02 * | None |
| 390  YARKIN, ALLAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13540 | $37,115.23 | $37,115.23 * | None |
| 391  ZATULOVE, PAUL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13539 | $124,430.23 | $124,430.23 * | None |
| 392  ZIPP, BRIAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13538 | $1,016,729.65 | $1,016,729.65 * | None |
| 393  ZOOK, GEORGE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13555 | $117,063.83 | $117,063.83 * | None |
| | | TOTAL | | | $280,144,932.99 | $280,144,932.99 | |

* - Indicates claim contains unliquidated and/or undetermined amounts

**EXHIBIT B**

US_ACTIVE:\44173205\3\58399.0011

EXECUTION COPY

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made and entered into as of February 21, 2013 among the LBI Trustee and the LBHI Entities.[1]  The LBI Trustee and the LBHI Entities, upon becoming signatories to this Agreement, shall each be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "**Chapter 11 Cases**");

WHEREAS, on September 19, 2008, the Honorable Gerard E. Lynch, District Judge of the United States District Court for the Southern District of New York, entered the LBI Liquidation Order which, among other things, (i) appointed the LBI Trustee as trustee for the liquidation of the business of LBI pursuant to section 78eee(b)(3) of SIPA and (ii) removed the case to the Bankruptcy Court pursuant to section 78eee(b)(1) of SIPA (the "**SIPA Proceeding**");

WHEREAS, certain of the LBHI Entities filed proofs of claim against LBI in the SIPA Proceeding;

WHEREAS, the LBI Trustee filed proofs of claim against certain of the LBHI Entities on behalf of LBI;

WHEREAS, pursuant to an order entered by the Bankruptcy Court on December 6, 2011 [ECF No. 23023], the Bankruptcy Court confirmed the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated December 5, 2011 [ECF No. 6039] (the "**Plan**"), which Plan became effective on March 6, 2012; and

WHEREAS, the LBI Trustee and the LBHI Entities desire to resolve all disputes and issues among them so as to avoid extensive, uncertain and expensive litigation;

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I
DEFINITIONS

SECTION 1.01.    *Definitions.*  Except as otherwise specified herein the following terms have the respective meanings set forth below for all purposes of this Agreement:

---

[1] Unless otherwise specified or defined herein, capitalized terms shall have the respective meanings ascribed to such terms in Section 1.01 of this Agreement.

**"A&M"** means Alvarez and Marsal North America, LLC, in its role on behalf of the LBHI Entities and their estates.

**"Additional Customer Claim Securities"** means the securities, including the R3 Securities, identified on Schedule O.

**"Affiliate"** has the meaning ascribed to it in section 101(2) of the Bankruptcy Code.

**"Agreed LBI Non-Debtor Receivables"** has the meaning set forth in Section 2.01(b) hereof.

**"Agreed LBI Non-Debtor Receivables Settlement Payment"** has the meaning set forth in Section 2.01(b) hereof.

**"Agreed PIK Notes Settlement Obligations"** has the meaning set forth in Section 2.01(b)(i) hereof.

**"Agreed PIK Notes Settlement Payees"** has the meaning set forth in Section 2.01(b)(i) hereof.

**"Agreement"** has the meaning set forth in the Preamble hereof.

**"Allowed Customer Claims"** has the meaning set forth in Section 2.02(a)(i) hereof.

**"Allowed General Unsecured Claims"** has the meaning set forth in Section 2.02(b)(ii) hereof.

**"Allowed Misdirected Wires Administrative Claim"** has the meaning set forth in ARTICLE IX hereof.

**"Bankruptcy Code"** has the meaning set forth in the Recitals hereof.

**"Bankruptcy Court"** has the meaning set forth in the Recitals hereof.

**"Bankruptcy Court Approval"** means the entry of a Final Order by the Bankruptcy Court in the SIPA Proceeding in form and substance acceptable to the Parties (i) authorizing the LBI Trustee to execute and deliver this Agreement, perform all of his obligations hereunder and comply with the terms of this Agreement, and (ii) approving the terms of the Agreement.

**"Barclays Litigation"** means the adversary proceeding before the Bankruptcy Court styled *James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc. v. Barclays Capital Inc.*, Case No. 09-01732 (JMP) and all appeals related thereto.

**"Barclays Transaction"** means the transaction pursuant to that certain Asset Purchase Agreement, dated as of September 16, 2008 among LBI, LBHI, LB 745 and BCI, to the extent amended, supplemented or clarified by (i) that certain First Amendment thereto dated as of September 19, 2008 among LBI, LBHI, LB 745 and BCI, and/or (ii) that certain letter agreement dated as of September 20, 2008 among the LBI Trustee, LBHI, LB 745 and BCI. and/or the following orders of the United States Bankruptcy Court, Southern District of New York: (i) Order under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of

Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (Docket No. 08-13555, ECF No. 258), and (ii) Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings Inc. Chapter 11 Proceeding, dated September 19, 2008 (Docket No. 08-01420, ECF No. 3).

**"Business Day"** means any day that is not a Saturday, Sunday, or other day on which commercial banks are authorized to close under the laws of, or are closed in, the State of New York.

**"Causes of Action"** means all manners of action, causes of action, judgments, executions, debts, liabilities, demands, rights, damages, costs, expenses, and Claims of every kind, nature, and character whatsoever.

**"CDA"** means that certain Collateral Disposition Agreement among JPMorgan Chase Bank, N.A. and the Debtors dated March 16, 2010, and approved by the Bankruptcy Court by an order entered on March 24, 2010 [ECF No.7785] as the same shall have been or shall be modified or amended from time to time.

**"CDA Collateral Ownership Stipulation"** means that certain Stipulation and Agreed Order Confirming Determination of Securities Collateral Under Collateral Disposition Agreement dated March 8, 2012, and approved by the Bankruptcy Court on March 23, 2012 [ECF No. 27151].

**"CDA Notice Waiver Stipulation"** means, collectively, that certain Stipulation and Agreed Order Waiving Certain Notice Requirement Pursuant to Order Approving the Collateral Disposition Agreement dated February 10, 2012, and approved by the Bankruptcy Court on February 27, 2012 [ECF No. 25828] and that certain Second Stipulation and Agreed Order Waiving Certain Notice Requirement Pursuant to Order Approving the Collateral Disposition Agreement dated August 2, 2012 and approved by the Bankruptcy Court on August 15, 2012 [ECF No. 30050].

**"CDA Order"** means that certain Bankruptcy Court order entered on March 24, 2010 [ECF No.7785] approving the CDA.

**"Chapter 11 Cases"** has the meaning set forth in the Recitals.

**"Citigroup Entities"** means Citigroup Inc., Citibank, N.A., Citigroup Global Markets Inc., Citibank Japan Ltd., Citibank Europe PLC, Citibank International PLC, Citigroup Pty Limited, Banco De Chile, Banco Nacional De Mexico SA, Citibank Del Peru Sa, Bank Handlowy, Zao Kb Citibank, Citibank AS, Citibank Maghreb.

**"Claim"** has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

**"CNS Proceeds"** has the meaning set forth in Article X hereof.

**"Controlled Entity Joinder"** has the meaning set forth in Section 19.02 hereof.

3

**"Corporate Action Receipts"** means cash (including principal payments), securities or other property (including stock dividends, but excluding cash dividends or interest) received by LBI or the LBI Trustee as a result of Corporate Actions in respect of the securities that are included in the Allowed Customer Claims.

**"Corporate Actions"** means maturities, redemptions, mergers, reclassifications, reorganizations, calls or other like corporate actions.

**"Customer Name Securities"** has the meaning ascribed to it in section 78lll(3) of SIPA.

**"Customer Property"** is the property so designated by Final Order of the Bankruptcy Court on motion of the LBI Trustee.

**"Debtor"** means each of the Parties hereto that commenced Chapter 11 Cases, identified on Schedule B annexed hereto.

**"Debtor-Controlled Entity"** means (i) each of the Non-Debtors and (ii) each Affiliate of the Debtors that is directly or indirectly managed or controlled by a Debtor as of the Execution Date that is identified on Schedule B annexed hereto and is a signatory to this Agreement as of the Execution Date, or subsequent thereto becomes a signatory to this Agreement by executing a Controlled Entity Joinder pursuant to Section 19.02 hereof.

**"Disputed Amended Claim Adjustment"** shall mean $32,000,000.00.

**"Duplicate Claim Accounts"** means the accounts identified on Schedule C annexed hereto that are subject to Duplicate Claims.

**"Duplicate Claim Counterparties"** means counterparties to transactions with LBSF or LOTC, as applicable, that filed Duplicate Claims.

**"Duplicate Claims"** means customer or general unsecured creditor claims filed against LBI by counterparties of LOTC and LBSF with respect to accounts that are included, respectively, in the LOTC Allowed Customer Claims, LBSF Allowed Customer Claims, LOTC Allowed General Unsecured Claims and LBSF Allowed General Unsecured Claims.

**"Effective Date"** has the meaning set forth in ARTICLE XII hereof.

**"Encumbrance"** means any interest of any Person (including any right to acquire, option or right of pre-emption) or any mortgage, charge, pledge, lien, assignment, hypothecation, option, restriction, right of first refusal, third-party right or interest, other encumbrance or security interest or arrangement of any kind, or another type of preferential arrangement (including a title transfer or retention arrangement) having similar effect and any agreement or obligation to create or grant any of the aforesaid.

**"Excess Asserted JPM Subrogated Claim"** has the meaning set forth in Section 2.02(b)(ii)(1)(B) hereof.

**"Excluded Claims"** means the proofs of claims listed on Schedule A annexed hereto that are not subject to this Agreement.

**"Execution Date"** means the date this Agreement is executed by all Parties who are not Non-Signing Controlled Entities.

"**Extended Lien Asset**" means any securities, money or other asset held by a Holding Affiliate that are subject to an Extended Lien Provision.

**"Extended Lien Claim"** means a Claim based on an Extended Lien Provision to recover an Extended Lien Asset.

**"Extended Lien Claimant"** means any Lehman Entity that may assert, and/or have, a Security Interest in one or more Extended Lien Assets held by or for a Holding Affiliate.

**"Extended Lien Provision"** means a term of an agreement between a Holding Affiliate and an Ownership Claimant that confers a Security Interest in respect of securities, money or other assets in relation to debts owed by such Ownership Claimant to such Holding Affiliate and any other Lehman Entity.

**"Final Order"** means an order of the Bankruptcy Court or any other court of competent jurisdiction (i) that is in full force and effect, (ii) is not reversed or vacated and (iii) as to which the time to appeal, petition for certiorari, seek a new trial under Rule 59 of the Federal Rules of Civil Procedure, or analogous rule under the Federal Rules of Bankruptcy Procedure, and move for reargument or rehearing has expired and (1) as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or (2) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been timely sought, such appeal, writ of certiorari, or reargument or rehearing shall have been withdrawn, denied or resolved by the highest court to which such order was appealed or from which certiorari, rehearing or reargument was sought and the time to further appeal, petition for certiorari or move for reargument or rehearing has expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or applicable law, may be filed with respect to such order shall not prevent such order from being a Final Order.

**"Group"** means (i) for U.S. federal income Tax purposes, any affiliated group of corporations within the meaning of section 1504 of the Tax Code, or (ii) for state or local income and franchise Tax purposes, any group of corporations that filed (or was required to file) as a combined, unitary or consolidated group under state or local Tax laws, in each case for a taxable period during which both LBI and at least one LBHI Member were members (but only for taxable years through the taxable year that includes the deconsolidation contemplated by Section 8.05 hereof).

**"Group Taxes"** means any Taxes of a Group for which the members of the Group each have liability for the amount of such Taxes under Treasury Regulation § 1.1502-6 or any comparable provision of state or local law, and shall include any income or franchise Taxes filed on the basis of a Group Tax Return even if the applicable taxing authority determines that filing on such basis was improper.

5

**"Group Tax Return"** means any return, declaration, form, election letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Group Taxes, including any schedule or attachment thereto or amendment thereof, and including any claim for a Group Tax refund.

**"Holding Affiliate"** means a Lehman Entity that holds assets for the benefit of one or more other Lehman Entities.

**"Indemnification Reserve"** has the meaning set forth in Section 2.02(b)(ii)(1)(A) hereof.

**"Insolvency Filing Time"** means the time at which a Lehman Entity commenced an insolvency, bankruptcy, administration, liquidation, winding-up, receivership or similar proceeding in such Lehman Entity's relevant jurisdiction (or the time at which such a proceeding was commenced in relation to such Lehman Entity), whether by the filing of one or more petitions or papers (including a petition under chapter 11 of the Bankruptcy Code), by the entry of an order for relief, by obtaining an order of a court of competent jurisdiction, or otherwise.

**"Interim Distribution"** means any distribution made by the LBI Trustee on allowed customer claims in advance of a final distribution by the LBI Trustee on all allowed customer claims.

**"JPM"** means JPMorgan Chase Bank, N.A.

**"JPM Entity"** means JPM or any of its Affiliates.

**"JPM Allowed Subrogated Claim"** means a $1,500,000,000.00 Allowed Unsecured General Claim against LBI in satisfaction of the JPM Subrogated Claim.

**"JPM Subrogated Claim"** means all claims for which LBHI is subrogated to a claim of any JPM Entity against LBI, to the extent of the payments made by LBHI or applied from LBHI's property to such claim of such JPM Entity pursuant to the CDA.

**"LBCC"** means Lehman Brothers Commercial Corporation.

**"LBCS"** means Lehman Brothers Commodity Services Inc.

**"LBHI"** means Lehman Brothers Holdings Inc.

**"LBHI Allowed Priority Claim"** has the meaning set forth in Section 2.02(b)(i) hereof.

**"LBHI Customer Claimants"** has the meaning set forth in Section 2.02(a)(i) hereof.

**"LBHI Entities"** means, collectively, the Debtors and Debtor-Controlled Entities, including the Non-Debtors, (individually, each an "LBHI Entity") identified on Schedule B annexed hereto that are signatories to this Agreement as of the Execution Date or subsequent thereto become signatories to this Agreement by executing a Controlled Entity Joinder.

**"LBHI Entity Allowed Claims"** means Allowed Customer Claims, the LBHI Allowed Priority Claim, Allowed General Unsecured Claims, the Disputed Amended Claim Adjustment, the

6

Allowed Misdirected Wires Administrative Claim, and LBHI Entity Allowed Subordinated Claims, collectively.

**"LBHI Entity Allowed Subordinated Claims"** has the meaning set forth in Section 2.02(c)(i) hereof.

**"LBHI Entity Extended Lien Asset"** means any Extended Lien Asset in respect of which LBHI is an Ownership Claimant.

**"LBHI Entity Non-Party Claim"** means any Claim of an LBHI Entity against any Person other than an LBHI Entity Released Party.

**"LBHI Entity Released Party"** means each of the following Persons: (i) LBI, (ii) the LBI Trustee, (iii) all past and present professionals and advisors of LBI and the LBI Trustee, respectively, and (iv) all successors, assigns, heirs, and personal representatives, and all past and present officers, directors, agents, representatives, consultants, financial advisors, accountants and attorneys, of each Person referred to in this definition, each of the foregoing solely in their respective capacity as such, except to the extent that any of the foregoing Persons referred to in this definition was an employee of a Lehman Entity and is obligated to either LBHI or LBI on a promissory note, in which case such Person shall not be an LBHI Entity Released Party.

**"LBHI Entity Releasing Party"** means (i) each LBHI Entity, each on behalf of itself, its estate, and any Person that may succeed to any Causes of Action of such LBHI Entity or its estate or that may seek to bring any Causes of Action through or on behalf of such LBHI Entity or its estate either derivatively or otherwise, and (ii) A&M, and any Person that may succeed to any Causes of Action of A&M or that may seek to bring Causes of Action through or on behalf of A&M either derivatively or directly.

**"LBHI Entity Retained Subrogation Claim"** means a claim of an LBHI Entity against LBI or the LBI Trustee, whether based on subrogation, reimbursement or contribution for an amount paid by such LBHI Entity to a Non-Party in respect of an obligation of LBI or the LBI Trustee to the Non-Party to the extent that:  (1) LBI's or the LBI Trustee's obligation to the Non-Party is an allowed direct, non-derivative, claim in the SIPA Proceeding; (2) the amount paid by the LBHI Entity to the Non-Party together with any consideration paid to the Non-Party by LBI, the LBI Trustee, and any other obligor equals the full distribution to which the Non-Party is entitled on such Non-Party's allowed claim in the SIPA Proceeding; and (3) LBI and the LBI Trustee have no obligation to make further distributions to such Non-Party on such Non-Party's allowed claim.  LBI and the LBI Trustee's liability in respect of an LBHI Entity Retained Subrogation Claim shall not exceed the aggregate amount that LBI or the LBI Trustee would distribute on account of such Non-Party's allowed claim minus any distribution(s) made, or to be made, by LBI or the LBI Trustee to such Non-Party.

**"LBHI Entity Settlement Accounts"** means one or more separate securities, brokerage or deposit accounts or sub-accounts, as applicable, that the LBI Trustee established on January 23, 2013, into which the LBI Trustee deposited the securities specified on Schedule O and Schedule P, as such securities are affected by Corporate Actions after January 23, 2013.

**"LBHI Entity Subordinated Claimants"** has the meaning set forth in Section 2.02(c)(i) hereof.

**"LBHI Filing Date"** means September 15, 2008, the date on which LBHI commenced a voluntary case under chapter 11 of the Bankruptcy Code.

**"LBHI Member"** means each of LBHI and any of its Affiliates (or any predecessors thereof) other than LBI.

**"LBHI Unsecured Claimants"** has the meaning set forth in Section 2.02(b)(ii) hereof.

**"LBI"** means Lehman Brothers Inc.

**"LBI Allowed Claims"** has the meaning set forth in Section 2.01(b)(i) hereof.

**"LBI Allowed Debtor Claims"** has the meaning set forth in Section 2.01(a) hereof.

**"LBI CDA Collateral"** means LBI assets transferred to LBHI pursuant to the CDA, the identification of which was confirmed by the CDA Collateral Ownership Stipulation.

**"LBI CDA Receipts"** has the meaning set forth in Section 2.02(b)(ii)(1)(D).

**"LBI-Citi Action"** has the meaning set forth in Article VII.

**"LBIE"** means Lehman Brothers International (Europe).

**"LBI Extended Lien Asset"** means any Extended Lien Asset in respect of which LBI is an Ownership Claimant.

**"LBI Filing Date"** means September 19, 2008, the date on which the SIPA Proceeding was commenced.

**"LBI Fund of Customer Property"** means the pool of assets that are part of the estate of LBI constituting Customer Property.

**"LBI General Estate"** means the pool of assets that are part of the estate of LBI that are not allocated to the LBI Fund of Customer Property.

**"LBI-LBIE Settlement Agreement"** means that certain Settlement Agreement made and entered into as of February 21, 2013 by and among the LBI Trustee and LBIE, by its Joint Administrators and the Joint Administrators, as such agreement may be amended, modified or supplemented, provided that LBHI consents to any material amendments, modifications or supplementation.

**"LBI Liquidation Order"** means the Order Commencing Liquidation, entered September 19, 2008, by the Honorable Gerard E. Lynch, District Judge of the United States District Court for the Southern District of New York, pursuant to the provisions of SIPA in the case captioned SIPC vs. LBI, Case No. 08-CIV-8119 (GEL).

**"LBI Non-Party Claim"** means any Claim of LBI or the LBI Trustee against any Person other than an LBI Released Party.

8

**"LBI Released Party"** means each of the following Persons: (i) each LBHI Entity, (ii) A&M, (iii) all past and present professionals and advisors of the LBHI Entities and A&M, respectively, and (iv) all successors, assigns, heirs, and personal representatives, and all past and present officers, directors, agents, representatives, consultants, financial advisors, accountants and attorneys, of each Person referred to in this definition, each of the foregoing solely in their respective capacity as such, except to the extent that any of the foregoing Persons referred to in this definition was an employee of a Lehman Entity and is obligated to either LBHI or LBI on a promissory note, in which case such Person shall not be an LBI Released Party.

**"LBI Releasing Parties"** means the LBI Trustee, on behalf of himself, LBI or its estate, and any Person that may succeed to any Causes of Action of the LBI Trustee, LBI or its estate, or that may seek to bring any Causes of Action through or on behalf of the LBI Trustee, LBI or its estate, either derivatively or otherwise.

**"LBI Retained Subrogation Claim"** means (a) a claim of the LBI Trustee against any Debtor, whether based on subrogation, reimbursement or contribution for an amount paid by LBI or the LBI Trustee in respect of a claim or obligation of such Debtor to a Non-Party to the extent that: (1) such Debtor's obligation to the Non-Party is an allowed direct, non-derivative, claim in the Debtor's Chapter 11 Case; (2) the amount paid by LBI or the LBI Trustee to the Non-Party together with any consideration paid to the Non-Party by the Debtor and any other obligor equals the full distribution to which the Non-Party is entitled on such Non-Party's allowed claim in the Debtor's Chapter 11 Case; and (3) the Debtor has no further liability to such Non-Party in connection with such Non-Party's allowed claim in the Debtor's Chapter 11 Case; or (b) a claim of the LBI Trustee against any Non-Debtor whether based on subrogation, reimbursement or contribution for an amount paid by LBI or the LBI Trustee in respect of a direct, non-derivative, claim of such Non-Party against such Non-Debtor. A Debtor's liability in respect of an LBI Retained Subrogation Claim shall not exceed the aggregate amount that such Debtor would distribute on account of such Non-Party's allowed claim minus any distribution(s) made, or to be made, by the Debtor to such Non-Party. A Non-Debtor's liability in respect of an LBI Retained Subrogation Claim shall not exceed the aggregate amount owed by such Non-Debtor minus any payment(s) to such Non-Party made to retire such obligation.

**"LBI Trustee"** means James W. Giddens, solely in his capacity as trustee in the liquidation proceeding of LBI pursuant to SIPA and any successor.

**"LBPA"** means Lehman Brothers PA LLC.

**"LBSF"** means Lehman Brothers Special Financing Inc.

**"LBSF Allowed Customer Claims"** means the Allowed Customer Claims of LBSF.

**"Lehman ALI"** means Lehman ALI Inc.

**"Lehman Entity"** means any entity that was directly or indirectly owned or controlled by LBHI on the LBHI Filing Date.

**"LOTC"** means Lehman Brothers OTC Derivatives Inc.

**"LOTC Allowed Customer Claims"** means the Allowed Customer Claims of LOTC.

**"LPS Trust Claims"** has the meaning set forth in the UK Settlement Agreement.

**"LPTSI"** means Lehman Pass-Through Securities Inc.

**"Non-Debtors"** means each of the Affiliates of LBHI identified on Schedule B annexed hereto.

**"Non-LBHI JPM Subrogated Claim Holder"** means any JPM Entity or other Person to whom LBHI conveys or reconveys the JPM Subrogated Claim, in whole or in part, or to whom any interest in the JPM Subrogated Claim is granted.

**"Non-Party"** means a Person who is not a Party.

**"Non-Signing Controlled Entities"** has the meaning set forth in Section 19.02 hereof.

**"Ownership Claimant"** means a Lehman Entity that has asserted a claim for securities or money held in an account under its name at a Holding Affiliate.

**"Person"** means an individual, partnership, government entity, corporation, limited liability company, limited liability partnership or any other entity.

**"PIK Note (Acquired Stock)"** means that certain payment-in-kind note and security agreement entered into between Lehman ALI and LBI on September 19, 2008 immediately prior to the commencement of the SIPA Proceeding in exchange for which LBI transferred certain of its direct subsidiaries to Lehman ALI and under which Lehman ALI agreed to pay LBI an amount equal to the fair market value of the stock and other equity interests of the transferred subsidiaries as of the LBI Filing Date and other value to be determined at a later date, the payment and performance of which were secured by the grant of a first priority lien on and security interest in the PIK Note (Acquired Stock) Collateral.

**"PIK Note (Acquired Stock) Collateral"** means the "Acquired Stock" and "Proceeds of the Acquired Stock," each as defined in the PIK Note (Acquired Stock).

**"PIK Note (IP)"** means that certain payment-in-kind note and security agreement entered into between Lehman ALI and LBI on September 19, 2008 immediately prior to the commencement of the SIPA Proceeding in exchange for which LBI transferred certain intangible intellectual property assets, including 7 patent applications and 20 trademarks, to Lehman ALI and under which Lehman ALI agreed to pay to LBI an amount equal to the fair market value of such intellectual property as of the LBI Filing Date and other value to be determined at a later date, the payment and performance of which were secured by the grant of a first priority lien on and security interest in the PIK Note (IP) Collateral.

**"PIK Note (IP) Collateral"** means the "Acquired Assets" and "Proceeds of the Acquired Assets," each as defined in the PIK Note (IP).

**"PIK Notes"** means, collectively, the PIK Note (Acquired Stock) and the PIK Note (IP).

**"PIK Notes Collateral"** means, collectively, the PIK Note (Acquired Stock) Collateral and the PIK Note (IP) Collateral.

**"Plan"** has the meaning set forth in the Recitals hereof.

**"Post-Filing Income Methodology and Allocation Order"** has the meaning set forth in Section 2.02(a)(ii)(2)(A) hereof.

**"Post-Petition D&I"** means interest payments and cash dividends received by LBI or the LBI Trustee after the LBI Filing Date with respect to the securities identified on Schedules O and P.

**"Proprietary Interest"** means any proprietary interest whatsoever (whether at law or in equity, and whether as trustee, beneficiary, absolute owner or otherwise).

**"R3"** means R3 Capital Partners Master L.P.

**"R3 Securities"** means the securities designated as R3 Securities on Schedule O that were included in the customer claims filed by R3 against LBI, which R3 assigned to LBHI pursuant to that certain Assignment of Claims Agreement, dated October 17, 2008, between R3 and LBHI, as well as any such securities that the LBI Trustee may obtain possession of after the Effective Date.

**"Realization Report"** has the meaning set forth in Section 8.03(b) hereof.

**"Released SIPC Persons"** means SIPC and all past and present advisors and professionals of SIPC and all successors, assigns, heirs, and personal representatives, and all past and present officers, directors, agents, representatives, consultants, financial advisors, accountants and attorneys, of each Person referred to in this definition, each of the foregoing solely in their respective capacity as such, except to the extent that any of the foregoing Persons referred to in this definition was an employee of a Lehman Entity and is obligated to either LBHI or LBI on a promissory note, in which case such Person shall not be a Released SIPC Person.

**"Sealed Information"** has the meaning set forth in Section 4.01(a) hereof.

**"Security Interest"** means any legal, equitable, contractual or possessory interest (or equivalent under any relevant legal system) of a Person in an Extended Lien Asset that is in the nature of a lien, pledge, charge or other right that encumbers or restricts the entitlement of the owner or holder of such Extended Lien Asset until one or more obligations owed to such Person are discharged in full.

**"SIPA"** means the Securities Investor Protection Act of 1970, as amended.

**"SIPA Proceeding"** has the meaning set forth in the Recitals hereof.

**"SIPC"** means the Securities Investor Protection Corporation.

**"Specified Post-Filing Receipts"** has the meaning set forth in Section 2.02(a)(ii)(2) hereof.

11

**"Specified Post-Filing Receipts Distributions"** has the meaning set forth in Section 2.02(a)(ii)(1) hereof.

**"Structured Securities"** means, collectively, the certain (i) structured notes issued by Lehman Brothers Treasury Co, B.V., (ii) certificates and warrants issued by Lehman Brothers Securities N.V., (iii) structured notes issued by LBHI, (iv) structured notes issued by Lehman Brothers Bankhaus A.G., (v) structured securities issued by Lehman Brothers (Luxembourg) S.A. (in liquidation), (vi) certificates issued by Lehman Brothers Finance S.A., (vii) any notes issued by any Lehman Entity under any notes program, including the European Medium Term Note Program and (viii) any securities issued by any Lehman Entity substantially similar to any of the foregoing.

**"Subordinated Claim"** means an allowed Claim against LBI that is either contractually or by operation of law subordinated in priority to other allowed Claims against LBI.

**"Surviving Contracts"** means all agreements between or among any of the Debtors during their respective Chapter 11 Cases, on the one hand, and LBI or the LBI Trustee, on the other hand, that (i) were entered into on or after September 19, 2008 or (ii) are set forth on Schedule D annexed hereto.

**"Tax Code"** means the Internal Revenue Code of 1986, as amended from time to time.

**"Taxes"** means (i) all federal, state, local, or foreign taxes, levies, duties, or assessments of any kind whatsoever, including gross income, net income, gross receipts, profits, windfall profits, sales, use, occupation, value-added, ad valorem, transfer, recording, license, franchise, withholding, payroll, employment, excise, estimated, stamp, premium, capital stock, production, net worth, alternative or add-on minimum, business and occupation, disability, severance, or real or personal property taxes, in each case imposed or required to be withheld by any governmental authority having jurisdiction over the assessment, determination, collection, or other imposition of any of the foregoing; and (ii) all interest, penalties, fines, additions to tax or additional amounts imposed by any taxing authority or paid in connection with any item described in clause (i) hereof.

**"Tax Return"** means any return, declaration, form, election letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, and including any claim for a Tax refund.

**"Tax Return Information"** has the meaning set forth in Section 8.03(b) hereof.

**"Transition Services Agreement"** means that certain Transition Services Agreement, dated as of June 2, 2010, between LBHI and the LBI Trustee.

**"UK Settlement Agreement"** means that certain settlement agreement, dated as of October 24, 2011, by and among the Debtors, the LBLIS Group Entities, the UK Administration Companies, the UK Liquidation Companies and the Other UK Affiliates (all as defined in the UK Settlement Agreement) which was approved by the Bankruptcy Court pursuant to an order entered on December 6, 2011, confirming the Plan [ECF No. 23023].

**"US Avoidance Action"** means (i) any and all actions under US Bankruptcy Law seeking the avoidance of a transfer or obligation, including under chapter 5 of the Bankruptcy Code; and (ii) any similar actions under applicable law.

**"US Bankruptcy Law"** means the Bankruptcy Code and SIPA.

SECTION 1.02.    *Other Definitional and Interpretative Provisions.*  The words "hereof", "herein" and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  The headings utilized herein are included for convenience of reference only and shall in no way affect the construction, meaning or interpretation hereof.  References to Articles, Sections and Schedules are to Articles, Sections and Schedules of this Agreement unless otherwise specified.  All Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any capitalized terms used in any Schedule but not otherwise defined therein, shall have the meaning as defined in this Agreement.  Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular.  Words importing a gender include every gender.  The word "or" shall not be exclusive.  Whenever the words "include", "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import.  References to "writing", "written" and comparable terms shall be deemed to refer to printing, typing and other means of reproducing words (including electronic media) in a visible form.  References to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder.  References to after, from or through any date mean, unless otherwise specified, after and including, from and including or through and including, respectively.  References to "law", "laws" or to a particular statute or law shall be deemed also to include any and all applicable law.  References to "third parties" shall be deemed to refer to Persons that are not LBI, the LBI Trustee or the LBHI Entities.  References to any agreement shall be deemed to refer to such agreement as amended, supplemented or otherwise modified from time to time.  References to "$" shall mean U.S. dollars.

## ARTICLE II
### SETTLEMENT OF CLAIMS

SECTION 2.01.    *LBI Claims Against LBHI Entities.*

(a)    *Against Debtors.*  On the Effective Date, LBI shall have an allowed, non-priority, unsecured claim against the Debtors as set forth on Schedule E annexed hereto (the "**LBI Allowed Debtor Claims**") in the aggregate amount of $12,734,067.00.  LBI shall be entitled to receive distributions on account of the LBI Allowed Debtor Claims in accordance with the applicable terms and provisions of the Plan with respect to allowed, non-priority, unsecured claims against the Debtors.

(b)    *Against Non-Debtors.*  Each applicable Non-Debtor listed on Schedule F annexed hereto hereby acknowledges its indebtedness, as of the Effective Date, to LBI in the amount set forth opposite such Non-Debtor's name in Schedule F (the "**Agreed LBI Non-Debtor Receivables**") totaling $15,212,659.00.  The Agreed LBI Non-Debtor Receivables shall

13

be settled for a one-time payment of $8,000,000.00 in immediately available funds within thirty (30) days of the Effective Date in full and final satisfaction of the applicable Non-Debtors' aggregate obligations with respect to the Agreed LBI Non-Debtor Receivables (the "**Agreed LBI Non-Debtor Receivables Settlement Payment**").  LBI and the LBI Trustee hereby assign their rights, interests in, and entitlement to receive the Agreed LBI Non-Debtor Receivables Settlement Payment to the LBHI Entities listed, and in the amounts listed, on Schedule G annexed hereto, in partial satisfaction of the Allowed Misdirected Wires Administrative Claim.

(i)     *PIK Notes*.  As of the Effective Date, (i) all obligations of Lehman ALI to LBI under the PIK Notes shall be settled in consideration for the settlement amount of $350,000,000.00 (the "**Agreed PIK Notes Settlement Obligations**" and collectively with the LBI Allowed Debtor Claims and the Agreed LBI Non-Debtor Receivables, the "**LBI Allowed Claims**"), (ii) the LBI Trustee and LBI shall assign all rights related to the Agreed PIK Notes Settlement Obligations and all other rights under the PIK Notes, including the security interest in the PIK Notes (Acquired Stock) Collateral granted by Lehman ALI to LBI pursuant to the PIK Note (Acquired Stock), to those LBHI Entities as set forth on Schedule N annexed hereto (the "**Agreed PIK Notes Settlement Payees**") based on each Agreed PIK Notes Settlement Payee's pro rata percentage of the cash component of the Agreed PIK Notes Settlement Payees' Allowed Customer Claims, (iii) said assignment shall be in partial satisfaction of the cash component of Allowed Customer Claims of such Agreed PIK Notes Settlement Payees as set forth in Section 2.02(a)(i), and the Agreed PIK Notes Settlement Payees shall accept said assignment as such partial satisfaction, (iv) the PIK Notes shall be amended and restated in the form of a single intercompany note from Lehman ALI to the Agreed PIK Notes Settlement Payees to evidence the Agreed PIK Notes Settlement Obligations (in the form to be mutually agreed between Lehman ALI and the Agreed PIK Notes Settlement Payees) and (v) LBI shall release its lien in and security interest in the PIK Note (IP) Collateral.  LBI and the LBI Trustee (A) hereby authorize the Agreed PIK Notes Settlement Payees or their counsel to file on or after the Effective Date, any financing statements or amendment with respect thereto necessary to evidence the assigned security interest in the PIK Notes (Acquired Stock) Collateral, (B) hereby authorize Lehman ALI, or its counsel, to file on or after the Effective Date any UCC-3 termination statements (to the extent necessary to evidence the termination of its lien on and security interest in the PIK Note (IP) Collateral), (C) shall execute and deliver to Lehman ALI such documents as Lehman ALI shall reasonably request to evidence such termination and shall file a termination of security assignments with the U.S. Patent and Trademark Office (to the extent necessary to evidence the termination of its lien on and security interest in the PIK Note (IP) Collateral) and (D) shall deliver to LBHI, as a bailee for the Agreed PIK Notes Settlement Payees, the PIK Note (Acquired Stock) Collateral consisting of certificated securities identified on Schedule R (as defined under the Uniform Commercial Code as in effect in the State of New York) that previously were delivered to LBI or the LBI Trustee and can be located through a reasonably diligent search within five (5) Business Days after the Effective Date; provided that with respect to certificated securities identified on Schedule R that LBI and the LBI Trustee are unable to locate through such diligent search, LBI and the LBI Trustee shall deliver to LBHI within such five (5) Business Days period an executed affidavit of lost certificate substantially in the form annexed hereto as Schedule S.  For all purposes related to this Agreement and distributions by the LBI Trustee or LBI, the Agreed PIK Notes Settlement Obligations shall be deemed to have a value of $350,000,000.00 without regard to the magnitude or timing of payments by Lehman ALI in respect of the Agreed PIK Notes Settlement Obligations, the actual

value of the PIK Notes Collateral or the perfection of any lien on a security in the PIK Notes Collateral.

(c)   *No Objections, Challenges or Defenses.*  The LBI Allowed Claims shall not be subject to objections, challenges or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of reducing or subordinating such claims to the claims of other general creditors of the applicable LBHI Entity.

SECTION 2.02.   *LBHI Entities' Claims Against LBI.*

(a)   *LBHI Entities' Customer Claims.*

(i)   *Allowed Claims.*  On the Effective Date, the LBHI Entities identified on Schedule H annexed hereto (the "**LBHI Customer Claimants**") shall have allowed customer claims against LBI for:  (1) cash and securities in the aggregate amount of $2,320,056,346.00 valued as of the LBI Filing Date, each applicable LBHI Customer Claimant having an allowed customer claim in the amount specified on Schedule H, and (2) the Additional Customer Claim Securities identified on Schedule O (the "**Allowed Customer Claims**").  As set forth in detail in Section 2.02(a)(iii) of this Agreement, the LBI Trustee shall distribute to the LBHI Customer Claimants the securities specified on Schedules O and P (as such securities are affected by Corporate Actions after January 23, 2013) and the cash amounts specified on Schedule Q annexed hereto on account of the Allowed Customer Claims.  Dollar amounts corresponding to the securities that make up the Allowed Customer Claims are based on the value of such securities as of the LBI Filing Date.  For all purposes related to this Agreement and distributions by the LBI Trustee or LBI, the assignment of the Agreed PIK Notes Settlement Obligations pursuant to this Agreement shall be deemed to constitute a distribution of $350,000,000.00 to the Agreed PIK Notes Settlement Payees in partial satisfaction of the cash portions of such entities' Allowed Customer Claims (in the respective amounts set forth opposite such Agreed PIK Notes Settlement Payees' names as specified in Schedule N annexed hereto), without regard to the magnitude or timing of payments by Lehman ALI in respect of the Agreed PIK Notes Settlement Obligations, the actual value of the PIK Notes Collateral, the perfection of any lien on or security interest in the PIK Notes Collateral, or any other fact, event or circumstance.

(ii)   *Specified Post-Filing Receipts.*

(1)   In addition to the distributions described in Section 2.02(a)(iii), the LBI Trustee shall make one or more distributions in respect of the Specified Post-Filing Receipts (the "**Specified Post-Filing Receipts Distributions**")

(2)   The "**Specified Post-Filing Receipts**" means, and will consist of (and only of), the following:

(A)   The amount of Post-Petition D&I to be distributed to each of the LBHI Entities pursuant to a Final Order entered by the Bankruptcy Court substantially in the form annexed hereto as Schedule T (the "**Post-Filing Income Methodology and Allocation Order**"), which (without duplication),

15

subject to the effects of any depository, or other intermediary, corrections, adjustments, chargebacks, reconciliations or the like, shall be comprised of:

(i)     the sum of $122,196,399.00, which the Parties agree reflects the Parties' mutual calculation of the amount of Post-Petition D&I for the period September 19, 2008 through (and including) December 31, 2012, as stated in Schedule L; plus

(ii)     the amount of Post-Petition D&I that would be distributed Pursuant to the Post-Filing Income Methodology and Allocation Order to each of the LBHI Entities for the period commencing (and including) January 1, 2013 through (and including) January 23, 2013; plus

(iii)     an amount equal to all Post-Petition D&I actually credited to the LBHI Entity Settlement Accounts on or after January 24, 2013 with respect to the securities carried therein, from time to time (it being acknowledged by the Parties that the LBI Trustee commenced the segregation on January 23, 2013 (i.e., prior to the Execution Date)).

(B)     The following Corporate Action Receipts, after reflecting the effects of any depository, or other intermediary, corrections, adjustments, chargebacks, reconciliations or the like:

(i)     all Corporate Action Receipts received by LBI or the LBI Trustee on or after January 1, 2013 through (and including) January 23, 2013; plus

(ii)     all Corporate Action Receipts actually credited to the LBHI Entity Settlement Accounts on or after January 24, 2013 with respect to those securities carried therein from time to time (it being acknowledged by the Parties that the LBI Trustee commenced the segregation on January 23, 2013 (i.e., prior to the Execution Date)).

(C)     To the extent that, for any period of time on or after January 24, 2013, any particular security listed on Schedule O or Schedule P was not or is not carried in an LBHI Entity Settlement Account, the amount of Post-Petition D&I or Corporate Action Receipts in relation to such security received by LBI or the LBI Trustee during such period of time, as determined in good faith by the LBI Trustee (which determination shall be final and binding absent manifest error).

(3)     Notwithstanding anything in this Agreement to contrary, the LBHI Entities shall have the right, and shall be given the opportunity, to review and audit Post-Petition D&I and Corporate Action Receipts except such receipts covered by Section 2.02(a)(ii)(2)(A)(iii) and Section 2.02(a)(ii)(2)(B)(ii); provided, however, that the Bank of New York shall remain subject to audit by the LBHI Entities or the LBI Trustee.

(4)     For the avoidance of doubt, the Post-Petition D&I is a separate pool of property distinct from the LBI Fund of Customer Property.  For the avoidance of doubt, Corporate Action Receipts are part of the LBI Fund of Customer Property and shall be paid from such fund.

(iii)    *Distributions.*  Subject to the LBI Trustee obtaining a Final Order, substantially in the form annexed hereto as Schedule T, allocating cash and securities to the LBI Fund of Customer Property in an amount that would enable the LBI Trustee to effect a 100% distribution on Allowed Customer Claims, and except as provided in Section 2.02(a)(i), the LBHI Customer Claimants shall receive distributions on their Allowed Customer Claims from the LBI Fund of Customer Property in the amounts and quantities, respectively, of cash and securities as follows:

(1)     the securities held in the LBHI Entity Settlement Accounts specified on Schedule O and Schedule P, as such securities are affected by Corporate Actions after January 23, 2013;

(2)     the cash distributions specified on Schedule Q, which include cash in lieu of certain securities; and

(3)     to the extent not duplicative of the distributions set forth in Section 2.02(a)(iii)(1)-(2), the Specified Post-Filing Receipts Distributions.

To the extent the LBI Trustee makes an Interim Distribution after the Effective Date, the LBI Trustee agrees to include the Allowed Customer Claims in such Interim Distribution in a manner consistent with other allowed customer claims.  To the extent the LBI Trustee makes any Interim Distribution prior to the Effective Date, within thirty (30) Business Days following the Effective Date, the LBI Trustee shall make a distribution to the LBHI Customer Claimants that is the same as the distribution that the LBHI Customer Claimants would have received in respect of their Allowed Customer Claims as if such Allowed Customer Claims had been agreed to and allowed as of the date of the relevant distribution.  Distributions by the LBI Trustee of the cash and securities referenced in this Section 2.02(a)(iii) shall be made to the LBHI Entities in the amounts and quantities, respectively, as specified in Schedule O, Schedule P and Schedule Q, or as otherwise instructed by the LBHI Entities in a manner consistent with the requirements of ARTICLE XXII.  Except as otherwise specified herein, distributions on account of Allowed Customer Claims shall be made in a manner consistent with all other claims of similar classification.

(b)    *LBHI Entities' Unsecured Claims.*

(i)    *Allowed Priority Claims.*  On the Effective Date, LBHI shall have an allowed claim against LBI in the amount of $240,000,000.00 at a level of priority equivalent to the priority afforded a taxing authority under section 507(a)(8) of the Bankruptcy Code (the **"LBHI Allowed Priority Claim"**).

(ii)    *Allowed General Unsecured Claims.*  On the Effective Date, the LBHI Entities identified on Schedule I annexed hereto (the "**LBHI Unsecured Claimants**")

17

shall have allowed, non-priority, general unsecured claims against LBI in the aggregate amount of $13,983,800,000.00, each applicable LBHI Unsecured Claimant having an allowed general unsecured claim in the amount set forth opposite such LBHI Unsecured Claimant's name, as specified in Schedule I (the "**Allowed General Unsecured Claims**").

(1)    *JPM Subrogated Claim.*  LBHI and the other LBHI Entities hereby settle the JPM Subrogated Claim in exchange for the LBI Trustee allowing the JPM Allowed Subrogated Claim as part of the Allowed General Unsecured Claims against LBI (provided, however, that for the avoidance of doubt such settlement shall not be binding upon the JPM Entities in the event of the reconveyance of the JPM Subrogated Claim pursuant to the provisions set forth below).  LBI hereby waives any claim concerning (a) the manner in which LBHI has liquidated the LBI CDA Collateral, and (b) any right to any proceeds of the LBI CDA Collateral.  Nothing in this Agreement is intended to affect the rights, if any, of a Non-LBHI JPM Subrogated Claim Holder in the LBI CDA Collateral.  The LBI Trustee's rights under the CDA and the CDA Order (as each has been modified by the CDA Notice Waiver Stipulation) or otherwise to receive reports or information concerning the LBI CDA Collateral, the application thereof to the JPM Subrogated Claim or any other assets held by LBHI pursuant to the CDA are expressly reserved; provided, however, that after the Effective Date, reports with respect to the application of all proceeds of LBI CDA Collateral shall instead be reports of the use of proceeds of the LBI CDA Collateral to satisfy any obligation, including but not limited to any distribution of the proceeds of LBI CDA Collateral to LBHI's creditors, which LBHI may deliver to LBI within twenty (20) days following such use or distribution of such proceeds.  The LBI Trustee expressly transfers all rights in the LBI CDA Collateral to LBHI.

(A)    *Conditions for Reconveyance of JPM Subrogated Claim.*  LBHI may reconvey the JPM Subrogated Claim only if LBHI has provided for or simultaneously with such reconveyance shall provide for a reserve of immediately available funds in an amount not less than the Indemnification Amount (the "**Indemnification Reserve**"), as defined in Section 2.02(b)(ii)(1)(C). The Indemnification Reserve shall be a cash reserve, but shall not be required to be maintained in a separate account.

(B)    *Reconveyance of JPM Subrogated Claim.*  To the extent the JPM Subrogated Claim is conveyed or reconveyed to a Non-LBHI JPM Subrogated Claim Holder, (x) LBHI shall transfer to each Non-LBHI JPM Subrogated Claim Holder an amount equal to its respective portion of (i) any distribution received by LBHI in respect of the JPM Allowed Subrogated Claim and (ii) its respective portion of any proceeds and distributions received by LBHI with respect to the LBI CDA Collateral prior to the date of the conveyance or reconveyance of such portion of the JPM Subrogated Claim to such Non-LBHI JPM Subrogated Claim Holder (provided, however, that the amounts distributed to such Non-LBHI JPM Subrogated Claim Holder pursuant to clauses (B)(x)(i) and (ii) shall not in the aggregate exceed the amount required to satisfy the remaining portion of the JPM Subrogated Claim held by such Non-LBHI JPM Subrogated Claim Holder), (y) LBI shall not contest such $1,500,000,000.00 allowed general unsecured claim and (z) in the event any one or more of the Non-LBHI JPM Subrogated Claim Holders assert and are allowed, in the aggregate,

18

additional secured or unsecured claims against LBI in the SIPA Proceeding or any other proceeding with respect to the JPM Subrogated Claim (with LBHI having asserted that such holder would not have the right to assert any secured claim) beyond the JPM Allowed Subrogated Claim (an "**Excess Asserted JPM Subrogated Claim**") and are allowed an Excess Asserted JPM Subrogated Claim, LBHI agrees to indemnify and hold harmless LBI and the LBI Trustee for any distribution made by LBI or the LBI Trustee to the Non-LBHI JPM Subrogated Claim Holders on such additional allowed Excess Asserted JPM Subrogated Claim (i.e., in excess of the distributions afforded to the JPM Allowed Subrogated Claim). LBHI's indemnity obligations to LBI and the LBI Trustee shall be deemed post-petition administrative claims pursuant to Bankruptcy Code Sections 503(b)(1) and 507(a)(2) against LBHI.

(C)     *Procedure for Indemnification.* In the event the JPM Subrogated Claim is conveyed or reconveyed to one or more Non-LBHI JPM Subrogated Claim Holders and LBI or the LBI Trustee receives written notice of the assertion of a deficiency claim in respect of the JPM Subrogated Claim or any portion thereof, the LBI Trustee shall promptly notify LBHI in writing of the assertion of such claim. Failure or delay in notifying LBHI shall not relieve LBHI of any of its obligations under Section 2.02(b)(ii)(1) above with respect to such claim unless, and only to the extent that, the defense of such claim or any of LBHI's rights or obligations is materially prejudiced by such failure. The LBI Trustee shall contest and defend such claim; provided, however, that (i) the LBI Trustee shall consult with LBHI regarding the proceeding related to such claim on an ongoing basis, (ii) LBI and the LBI Trustee will support any application by LBHI to participate in the defense against and objection to such claim at its own expense, including any objection that LBHI alone interposes, (iii) LBI and the LBI Trustee shall provide LBHI on a confidential basis with drafts of all notices, pleadings, and other papers to be filed or served in such proceeding by LBI and the LBI Trustee (and allow LBHI a reasonable opportunity to comment on such drafts before filing or serving such drafts), (iv) LBI and the LBI Trustee shall promptly provide copies to LBHI of all notices, pleadings, and other papers filed or served in such proceeding, and (v) LBI and the LBI Trustee shall cooperate in good faith with LBHI to the full extent reasonably possible to minimize LBHI's indemnification obligation with respect to an allowed Excess Asserted JPM Subrogated Claim. Any consensual resolution of the JPM Subrogated Claim reached by the LBI Trustee shall be subject to LBHI's approval. LBHI, at its own expense, shall cooperate and provide support to the LBI Trustee in connection with the defense of such claim.

(1)     *Indemnification Amount.* The Indemnification Amount shall initially be not less than the product of (i) $3,378,022,749.00 less (x) any proceeds and distributions realized from the LBI CDA Collateral after the Execution Date and (y) any reduction to the JPM Subrogated Claim as a result of litigation (e.g., resulting from LBHI's deficiency claims objection in the Chapter 11 Cases with respect to the JPM Entities' clearance claim) or settlement, and (ii)

19

the LBI Trustee's good faith estimate of general unsecured creditor distributions from LBI, based on the assumption that the LBI Trustee will reach a successful resolution of all disputed matters.

(2)     *Reduction of Indemnification Amount.*  The Indemnification Amount may be reduced (a) to the extent that such reductions are used to fulfill LBHI's indemnification obligation to the LBI Trustee in respect of the Excess Asserted JPM Subrogated Claim, (b) to satisfy any obligation to the Non-LBHI JPM Subrogated Claim Holders arising out of the resolution of such Excess Asserted JPM Subrogated Claim; (c) to account for the proceeds of any additional distributions on or proceeds of the liquidation of LBI CDA Collateral that are used to satisfy any obligation that reduces the aggregate outstanding amount of the JPM Subrogated Claim that would be transferred to Non-LBHI JPM Subrogated Claim Holders (such adjustment to the Indemnification Amount shall be limited to an adjustment of the calculation in Section 2.02(b)(1)(C)(1)(i)); (d) to the extent of any further reduction to the JPM Subrogated Claim as a result of litigation (e.g., resulting from LBHI's deficiency claims objection in the Chapter 11 Cases with respect to the JPM Entities' clearance claim) or settlement; (e) if the LBI Trustee consents to such reduction (such adjustment to the Indemnification Amount shall be limited to an adjustment of the calculation in Section 2.02(b)(1)(C)(1)(i)); or (f) the LBI Trustee reduces his good faith estimate of general unsecured creditor distributions from LBI.  The LBI Trustee will re-evaluate and, if appropriate, recalculate his estimate of general unsecured creditor distributions from LBI referenced in Section 2.02(b)(1)(C)(1)(ii) every six (6) months commencing six (6) months after the day that the Indemnification Reserve is established, and in any event within thirty (30) Business Days after entry of a Final Order that resolves a material disputed matter with respect to the LBI General Estate.

(3)     *LBHI Reporting Obligation.*  LBHI shall provide the LBI Trustee access to sufficient information to confirm that the Indemnification Reserve is fully provided for.

(4)     *Dispute as to Indemnification Amount.*  LBHI may seek a judicial determination from the Bankruptcy Court in the Chapter 11 Cases that the LBI Trustee's estimate of general unsecured creditor distributions from LBI was not a good faith estimate based on the assumptions in Section 2.02(b)(ii)(1)(C)(1)(ii); provided, however, (a) that LBHI shall first meet and confer with the LBI Trustee, and (b) that during the pendency of such judicial determination or settlement thereof, the Indemnification Reserve is maintained as calculated pursuant to Section 2.02(b)(ii)(1)(C)(1)(ii).

20

(D)      *Post-Filing Receipts on LBI CDA Collateral.*  The LBI Trustee shall deliver to LBHI receipts of principal, interest, dividends or other distributions derived from the LBI CDA Collateral (the "**LBI CDA Receipts**") that were received after the commencement of the SIPA Proceeding to the extent not already transferred or reduced to the possession and control of LBHI or JPM or applied to the JPM Subrogation Claim.  Such LBI CDA Receipts shall be delivered to LBHI within five (5) Business Days of the Effective Date, provided that the LBI Trustee is aware that such receipts are LBI CDA Receipts and the LBI Trustee retains possession of such LBI CDA Receipts.  If the LBI Trustee receives LBI CDA Receipts after the Execution Date, which the LBI Trustee is aware are derived from the LBI CDA Collateral or the LBI Trustee becomes aware after the Effective Date that previously received receipts are LBI CDA Receipts, and the LBI Trustee retains possession of such LBI CDA Receipts, the LBI Trustee shall deliver such LBI CDA Receipts to LBHI within five (5) Business Days of the LBI Trustee becoming aware that such receipts are LBI CDA Receipts.  If there is a dispute as to whether a receipt is an LBI CDA Receipt, the LBI Trustee shall not be required to deliver the receipt to LBHI unless such dispute is resolved in LBHI's favor.  Notwithstanding the foregoing, the LBI Trustee, however, shall have no obligation to deliver LBI CDA Receipts deposited in JPM account 066206677 or similar JPM accounts into which LBI CDA Receipts were received before or after the Effective Date and such LBI CDA Receipts have not been retained by the LBI Trustee; provided, however, the LBI Trustee (i) shall periodically notify LBHI of any LBI CDA Receipts that the LBI Trustee is aware are deposited in such accounts, specifying the accounts into which such receipts were deposited and (ii) authorizes LBHI, at LBHI's sole cost and expense, to obtain reasonable information from JPM to determine whether LBI CDA Receipts have been or are subsequently deposited in such accounts.

(iii)      *Distributions.*  The LBHI Allowed Priority Claim shall be paid from the LBI General Estate in a manner consistent with all other allowed unsecured claims against the LBI General Estate of the same or equivalent priority.  The Allowed General Unsecured Claims shall be paid from the LBI General Estate in a manner consistent with all other allowed general unsecured claims against the LBI General Estate.

(iv)      *Disputed Amended Claim Adjustment.*  The LBI Trustee disputes that LBCS timely asserted certain claims related to exchange traded derivatives as customer claims.  To resolve their dispute, the LBI Trustee and LBCS agree that the LBI Trustee shall pay LBCS the Disputed Amended Claim Adjustment as a stand-alone one-time cash payment within two (2) Business Days of the date on which the LBI Trustee makes an initial distribution on account of the Allowed Customer Claims.

(c)      *LBHI Entities' Subordinated Claims.*

(i)      *Allowed Claims.*  On the Effective Date, the LBHI Entities identified on Schedule J annexed hereto (the "**LBHI Entity Subordinated Claimants**") shall have allowed Subordinated Claims against LBI in the respective amounts specified in Schedule J (the "**LBHI Entity Allowed Subordinated Claims**"), totaling $14,188,924,097.00.

21

(ii)    *Distributions.*  The LBHI Entity Allowed Subordinated Claims shall be paid from the LBI General Estate (i) if and only to the extent there remain assets in the LBI General Estate after full satisfaction of all senior claims, as provided for in the governing documents, and (ii) in a manner consistent with all other allowed Subordinated Claims against the LBI General Estate.

(d)    *No Objections, Challenges or Defenses.*  The LBHI Entity Allowed Claims shall not be subject to objections, challenges or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or, with the exception of the LBHI Entity Allowed Subordinated Claims, any claim under section 510 of the Bankruptcy Code, section 78lll(2)(c)(ii) of SIPA or otherwise which would have the effect of subordinating such claims to the claims of other general creditors.

SECTION 2.03.    *Expungement and Disallowance of Claims.*  Other than as provided for in Sections 2.01 and 2.02, all proofs of claim filed by the LBHI Entities against LBI and all proofs of claims filed by the LBI Trustee on behalf of LBI against the LBHI Entities shall be expunged, disallowed and released in accordance with ARTICLE VI.  For the avoidance of doubt, the provisions of this Section 2.03 and ARTICLE VI do not apply to the Excluded Claims or to the Parties' claims and obligations under this Agreement.  Furthermore, notwithstanding anything in this Agreement to the contrary, none of the Claims that were assigned by LBI or the LBI Trustee in connection with the Barclays Transaction are the subject of, or are covered by, any of the provisions of this Agreement, including, but not limited to, this Section 2.03 and the release provisions in Section 6.01.

## ARTICLE III
### EXTENDED LIENS

SECTION 3.01.    *LBI Trustee's Release of Extended Liens.*  The LBI Trustee:

(a)    Waives and releases any Extended Lien Claim, and any right and entitlement that LBI or the LBI Trustee may have based on any Extended Lien Provision, over any LBHI Entity Extended Lien Asset; and

(b)    Covenants and agrees that he shall not, on behalf of himself, LBI or for the benefit of another Person, apply or exercise, or seek the application or exercise of any Extended Lien Provision or right of set-off or counterclaim or any similar or analogous procedure or right in respect of any LBHI Entity Extended Lien Asset.

SECTION 3.02.    *LBHI Entities' Release of Extended Liens.*  Each of the LBHI Entities:

(a)    Waives and releases any Extended Lien Claim, and any right and entitlement that any of the LBHI Entities may have based on any Extended Lien Provision, over any LBI Extended Lien Asset; and

(b)    Covenants and agrees that it shall not, on behalf of itself or for the benefit of another Person apply or exercise, or seek the application or exercise of any Extended Lien Provision or right of set-off or counterclaim or any similar or analogous procedure or right in respect of any LBI Extended Lien Asset.

22

SECTION 3.03.    *Valid Extended Lien Provision.*

(a)    *LBHI Extended Lien Asset.*  Notwithstanding Section 3.01(b), if (i) a Person other than LBI or the LBI Trustee asserts that it has an Extended Lien Claim in respect of an LBHI Entity Extended Lien Asset, and (ii) the Bankruptcy Court enters a Final Order modifying the automatic stay pursuant to section 362 of the Bankruptcy Code to allow the enforcement of such Extended Lien Claim against an LBHI Entity Allowed Claim, then the LBI Trustee shall follow any Final Order of the Bankruptcy Court resolving a dispute between the LBHI Entity and the Person asserting the Extended Lien Claim or, in the alternative, follow the joint instruction of the LBHI Entity and the Person asserting the Extended Lien Claim. Notwithstanding the foregoing, subject to approval of the Bankruptcy Court, all Extended Lien Claims not asserted prior to entry of the Final Order of the Bankruptcy Court approving this Agreement shall be deemed waived and the LBI Trustee shall make distributions to the LBHI Entities free and clear of any Extended Lien Claim in accordance with each Final Order of the Bankruptcy Court approving distributions by the LBI Trustee.

(b)    *LBI Extended Lien Asset.*  Notwithstanding Section 3.02(b), if:  (i) a Person other than an LBHI Entity asserts that it has an Extended Lien Claim in respect of an LBI Extended Lien Asset, and (ii) with respect to any Debtor, the Bankruptcy Court enters a Final Order modifying or lifting the automatic stay pursuant to section 362 of the Bankruptcy Code to allow the enforcement of such Extended Lien Claim against an LBI Allowed Claim, then the LBHI Entities shall follow any Final Order of the Bankruptcy Court resolving a dispute between the LBI Trustee and the Person asserting the Extended Lien Claim or, in the alternative, follow the joint instruction of the LBI Trustee and the Person asserting the Extended Lien Claim. Notwithstanding the foregoing, subject to approval of the Bankruptcy Court, all Extended Lien Claims not asserted prior to entry of the Final Order of the Bankruptcy Court approving this Agreement shall be deemed waived and the LBHI Entities shall make distributions to the LBI Trustee free and clear of any Extended Lien Claim.

## ARTICLE IV
## COVENANTS, REPRESENTATIONS & WARRANTIES

SECTION 4.01.    *Covenants, Representations & Warranties by the LBI Trustee.*  In order to induce the LBHI Entities to enter into and perform their obligations under this Agreement, the LBI Trustee hereby covenants, represents, warrants and acknowledges as follows:

(a)    *Bankruptcy Court Approval.*  As promptly as possible following the Execution Date, the LBI Trustee shall file a motion seeking Bankruptcy Court Approval.  The LBI Trustee shall at all times make reasonable efforts to secure Bankruptcy Court Approval.  In connection with the foregoing, the LBI Trustee (i) shall first file a motion seeking permission of the Bankruptcy Court to file Schedule O and Schedule P under seal (the "**Sealed Information**"), and (ii) may file this Agreement with the Bankruptcy Court, with the Sealed Information redacted (except to the extent the Bankruptcy Court otherwise directs).  The LBHI Entities shall join and support the LBI Trustee's motion seeking permission of the Bankruptcy Court to file the Sealed Information under seal.

23

(b)     *Authority.*  Subject to Bankruptcy Court Approval, (i) the LBI Trustee has the power and authority to execute, deliver and perform his obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance of this Agreement by the LBI Trustee and the consummation of the transactions contemplated herein have been duly authorized by all necessary actions on the part of the LBI Trustee and no other proceedings on the part of the LBI Trustee are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

(c)     *Validity.*  Subject to Bankruptcy Court Approval, this Agreement has been duly executed and delivered by the LBI Trustee and constitutes the legal, valid and binding agreement of the LBI Trustee, enforceable against the LBI Trustee in accordance with its terms.

(d)     *Authorization of Governmental Authorities and Creditors.*  Subject to Bankruptcy Court Approval, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by the LBI Trustee pursuant to this Agreement, other than as provided herein.

(e)     *No Reliance Other Than Express Representations, Warranties & Covenants.*  The LBI Trustee: (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, (iv) acknowledges that he has entered into this Agreement voluntarily and of his own choice and not under coercion or duress, and (v) has independently and without reliance upon any LBHI Entity, A&M or any of their respective Affiliates or any officer, employee, agent or representative thereof, and based on such information as the LBI Trustee has deemed appropriate, made his own analysis and decision to enter into this Agreement, provided, that the LBI Trustee has relied upon the express representations, warranties and covenants of the LBHI Entities in this Agreement.  The LBI Trustee acknowledges that, except for the representations and warranties referred to in the proviso to the preceding sentence, the LBHI Entities have not made and do not make (and hereby expressly disclaim) any other representations and warranties, express or implied, written or oral, to the LBI Trustee.

(f)     *Title; No Prior Transfer of Claims.*

(i)     As of the Execution Date, LBI owns and has good title to any Claims it may have against the LBHI Entities, including all Claims released hereunder, free and clear of any and all participations or Encumbrances created or incurred by or against the LBI Trustee and has not transferred or assigned to any other person any of such Claims that are the subject of this Agreement, in whole or in part.

(ii)     After the Effective Date, the LBI Trustee may convey, transfer, assign (by contract or by operation of law) or participate the LBI Allowed Claims, or any rights or interests arising thereunder, in whole or in part; provided, that any such conveyance, transfer, assignment or participation is consummated pursuant to a written agreement (in form and substance satisfactory to the LBHI Entities) that provides that the terms and provisions of this

24

Agreement shall be binding in all respects upon such transferees, and any successor transferees, and shall govern their acts as though they were parties hereto.

SECTION 4.02.    *Covenants, Representations & Warranties by the LBHI Entities.*  In order to induce the LBI Trustee to enter into and perform his obligations under this Agreement, each LBHI Entity hereby covenants, represents, warrants and acknowledges as follows:

(a)    *Authority.*  The LBHI Entities have the power and authority to execute, deliver and perform their obligations under this Agreement, and to consummate the transactions contemplated herein.  The execution, delivery and performance of this Agreement by the LBHI Entities and the consummation of the transactions contemplated herein have been duly authorized by all necessary actions on the part of the LBHI Entities and no other proceedings on the part of the LBHI Entities are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

(b)    *Validity.*  This Agreement has been duly executed and delivered by the LBHI Entities and constitutes the legal, valid and binding agreement of each LBHI Entity, enforceable against each LBHI Entity in accordance with its terms.

(c)    *Authorization of Governmental Authorities and Creditors.*  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by any LBHI Entity pursuant to this Agreement, other than as provided herein.

(d)    *No Reliance Other Than Express Representations, Warranties & Covenants.*  Each LBHI Entity (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, (iv) acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress, and (v) has independently and without reliance upon the LBI Trustee or any of the LBI Trustee's or LBI's respective Affiliates or any officer, employee, agent, counsel or other representative thereof, and based on such information as each LBHI Entity has deemed appropriate, made its own analysis and decision to enter into this Agreement, provided, that each LBHI Entity has relied upon the express representations, warranties and covenants of the LBI Trustee in this Agreement.  Each LBHI Entity acknowledges that, except for the representations and warranties referred to in the proviso to the preceding sentence, the LBI Trustee has not made and does not make (and hereby expressly disclaims) any other representations and warranties, express or implied, written or oral, to any LBHI Entity.

(e)    *LBHI Representation Concerning the JPM Subrogated Claim.*  LBHI represents and warrants that the JPM Subrogated Claim has been reduced from $6,344,403,970.00 to $4,878,022,749.00 through the liquidation of part of the LBI CDA Collateral.

25

(f)     *Title; No Prior Transfer of Claims.*

(i)     As of the Execution Date, each LBHI Entity owns and has good title to any Claims it may have against LBI, including all Claims released hereunder, free and clear of any and all participations or Encumbrances created or incurred by or against such LBHI Entity and has not transferred or assigned to any other person any of such Claims that are the subject of this Agreement, in whole or in part.

(ii)     After the Effective Date, any LBHI Entity may convey, transfer, assign (by contract or by operation of law) or participate any LBHI Entity Allowed Claims, or any rights or interests arising thereunder, in whole or in part; provided, that any such conveyance, transfer, assignment or participation is consummated pursuant to a written agreement (in form and substance satisfactory to the LBI Trustee) that provides that the terms and provisions of this Agreement shall be binding in all respects upon such transferees, and any successor transferees, and shall govern their acts as though they were parties hereto.

## ARTICLE V
## SURVIVING CONTRACTS

Unless expired or terminated pursuant to their own terms, or as otherwise agreed between the parties thereto (or where LBI is a party thereto, the LBI Trustee and the other party or parties thereto), the Surviving Contracts shall survive the execution, consummation or termination of this Agreement, and the Debtors shall not reject any Surviving Contracts pursuant to sections 365 or 1123(b)(2) of the Bankruptcy Code.  Any claims that arise from the rejection of any prepetition contracts between any of the LBHI Entities and LBI will be deemed to be satisfied in full under this Agreement.

## ARTICLE VI
## RELEASES

SECTION 6.01.    *LBI Trustee Release.*

(a)     Effective upon the occurrence of the Effective Date, except with respect to (1) the LBI Allowed Claims and any rights (including distribution entitlements) in respect thereof, (2) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (3) the rights and performance of obligations under the Surviving Contracts, (4) the LBI Retained Subrogation Claim, and (5) the performance of the obligations set forth in this Agreement, and in consideration of and in exchange for the foregoing, including the mutual release provisions of this ARTICLE VI, each LBI Releasing Party hereby irrevocably releases, discharges and acquits, fully and forever, each LBI Released Party from any and all Causes of Action of every kind, nature, character and description whatsoever, including, but not limited to, any Causes of Action that allege alter ego, veil piercing, enterprise liability, or similar theories of liability or that otherwise seek to disregard the corporate form of LBI or LBHI, whether accrued or unaccrued, known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, certain or contingent, now held or subsequently acquired through assignment, operation of law or otherwise, whether based on contract, federal, state, local, statutory or common law or any other law, rule or regulation of any jurisdiction, or otherwise, that have been or could have been or might hereafter be asserted in any action, suit or proceeding, whether

26

directly, indirectly, derivatively, representatively or in any other capacity, in law or in equity, against any LBI Released Party, that arise from, are based on, connected with, alleged in or related to any facts or circumstances in existence prior to the date hereof, including, without limitation, (i) any administrative expense claim arising under applicable US Bankruptcy Law, (ii) any US Avoidance Action, (iii) any right of subrogation other than the LBI Retained Subrogation Claim, (iv) any claim based upon, arising from, or related to Structured Securities, including any LPS Trust Claims asserted by LBIE on behalf of its Affiliates or third parties (except to the extent that such claim is assigned to LBIE under the LBI-LBIE Settlement Agreement), and (v) any Claim based upon any Extended Lien Provision.  The release in this Section 6.01 by the LBI Releasing Parties shall be a waiver and relinquishment, to the fullest extent permitted by law, of all provisions, laws and rules limiting relinquishment of unknown or unsuspected claims, including the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and all provisions, rights and benefits of any similar statute or common law rule of any other jurisdiction.  Nothing in this Agreement shall operate as a release or waiver of any LBI Non-Party Claim.  Nothing in this Agreement shall operate as a release or waiver of any direct, non-derivative, claim that a customer or creditor of LBI has against any of the LBHI Entities, including claims based upon securities that have been or will be distributed by the LBI Trustee to LBI's customers and creditors.  Nothing in this Agreement shall impair the LBI Trustee's right to receive payments from Persons who are indenture trustees or similar Persons (but not including LBIE) of funds that were distributed by the Debtors on account of claims of such Persons allowed in the Chapter 11 Cases.

(b)     The LBI Trustee shall execute and deliver to R3 a general release in a form that is mutually acceptable to the LBI Trustee and R3, provided that R3 executes and delivers to the LBI Trustee a general release in a form that is mutually acceptable to the LBI Trustee and R3.

SECTION 6.02.    *LBHI Entities' Releases.*

(a)     Effective upon the occurrence of the Effective Date, except with respect to (1) the LBHI Entity Allowed Claims and any rights (including distribution entitlements) in respect thereof, (2) any Claims assigned by the LBHI Entities to LBIE pursuant to the UK Settlement Agreement, (3) the JPM Allowed Subrogated Claim, (4) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (5) the rights and performance of obligations under the Surviving Contracts, (6) the LBHI Entity Retained Subrogation Claim, and (7) the performance of the obligations set forth in this Agreement, and in consideration of and in exchange for the foregoing, including the mutual release provisions of this ARTICLE VI, each LBHI Entity Releasing Party hereby irrevocably releases, discharges and acquits, fully and forever, each LBHI Entity Released Party from any and all Causes of Action of

27

every kind, nature, character and description whatsoever, including, but not limited to, any Causes of Action that allege alter ego, veil piercing, enterprise liability, or similar theories of liability or that otherwise seek to disregard the corporate form of LBI or LBHI, whether accrued or unaccrued, known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, certain or contingent, now held or subsequently acquired through assignment, operation of law or otherwise, whether based on contract, federal, state, local, statutory or common law or any other law, rule or regulation of any jurisdiction, or otherwise, that have been or could have been or might hereafter be asserted in any action, suit or proceeding, whether directly, indirectly, derivatively, representatively or in any other capacity, in law or in equity, against any LBHI Entity Released Party, that arise from, are based on, connected with, alleged in or related to any facts or circumstances in existence prior to the date hereof, including, without limitation, (i) any administrative expense claim arising under applicable US Bankruptcy Law, (ii) any US Avoidance Action, (iii) any right of subrogation other than the JPM Subrogated Claim and the LBHI Entity Retained Subrogation Claim, and (iv) any Claim based upon any Extended Lien Provision. The release in this Section 6.02 by the LBHI Entity Releasing Parties shall be a waiver and relinquishment, to the fullest extent permitted by law, of all provisions, laws and rules limiting relinquishment of unknown or unsuspected claims, including the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and all provisions, rights and benefits of any similar statute or common law rule of any other jurisdiction. Nothing in this Agreement shall operate as a release or waiver of any LBHI Entity Non-Party Claim.

(b)     Each LBHI Releasing Party, other than LBHI, contingent only upon receiving a distribution from the LBI Trustee of all the cash and securities in respect of such party's Allowed Customer Claims as provided for in this Agreement, hereby remises, releases, and forever discharges each Released SIPC Person of and from any and all claims or causes of action arising out of or relating to such party's claims against LBI, the circumstances that gave rise to the claims against LBI, any account(s) the LBHI Releasing Party had with LBI, and any other transactions or dealings with LBI or any entity or other person affiliated with LBI relating to the claims against LBI, which the LBHI Releasing Party now has, or hereafter can, shall, or may have, for or by any reason of any cause, matter, or thing whatsoever, prior to and including the date of execution hereof.

(c)     LBHI hereby remises, releases, and forever discharges each Released SIPC Person of and from any and all claims or causes of action arising out of or relating to LBHI's claims against LBI, the circumstances that gave rise to the claims against LBI, any account(s) LBHI had with LBI, and any other transactions or dealings with LBI or any entity or other person affiliated with LBI relating to the claims against LBI, which LBHI now has, or hereafter can, shall, or may have, for or by any reason of any cause, matter, or thing whatsoever, prior to and including the date of execution hereof.

(d)     Each Released SIPC Person is an intended third-party beneficiary of this Agreement.

## ARTICLE VII
### CITIGROUP

The LBI Trustee has asserted claims against the Citigroup Entities in the action captioned *Lehman Brothers Inc. v. Citibank, N.A. et al.*, Adv. Proc. No. 11-01681 (JMP) (the "**LBI-Citi Action**").  The LBI Trustee agrees that, to the extent that LBI is entitled to any recovery from the Citigroup Entities, such recovery shall be obtained exclusively through the LBI-Citi Action.  To the extent that either LBCC or LBSF obtains a recovery from the Citigroup Entities, such recovery shall inure exclusively to the benefit of LBCC or LBSF, respectively, and LBI shall not directly participate in such recovery.

## ARTICLE VIII
### TAXES

SECTION 8.01.   *Group Tax Liabilities; Indemnification.*

(a)     LBHI shall indemnify and hold LBI and the LBI Trustee harmless against all Group Taxes (with respect to any past, current or future taxable year), regardless of whether such Taxes are shown as due and payable on a filed Group Tax Return, and any and all reasonable costs and expenses associated with a contest with a taxing authority with respect to Group Taxes (except as contemplated by Section 8.04).  LBI and the LBI Trustee shall be responsible for all other Taxes incurred by LBI.

(b)     The indemnification of LBI and the LBI Trustee provided in this Section 8.01 shall be treated as a post-petition administrative claim pursuant to Bankruptcy Code sections 503(b)(1) and 507(a)(2).  LBI and the LBI Trustee shall provide LBHI written notice and reasonable substantiation of any indemnified Group Taxes LBI is required to pay no later than the later of (i) forty-five (45) days prior to any such payment or (ii) five (5) Business Days after becoming aware of such obligation; provided, however, that LBI and the LBI Trustee shall not pay any Group Taxes without LBHI's prior written consent (which shall not be unreasonably withheld or delayed) unless LBI or the LBI Trustee is legally required to pay such Taxes at such time without any right to defer or delay payment.  LBHI shall promptly reimburse LBI and the LBI Trustee for their respective payment of any indemnified Group Taxes under this Section 8.01; provided further, however, that upon the written request of LBI and the LBI Trustee reasonably in advance of the date on which LBI or the LBI Trustee would be required to make a distribution to a taxing authority on an allowed claim (including an allowed administrative claim) in the SIPA Proceeding for indemnified Group Taxes (which request shall certify the amount of the allowed claim, the amount of the upcoming distribution to which the claim is entitled and which LBI or the LBI Trustee would be required to pay, and the date set for the distribution), LBHI shall, prior to the date set for the distribution, pay directly to the taxing authority, or to LBI or the LBI Trustee for distribution to such taxing authority, the amount the taxing authority would otherwise receive in the distribution from LBI or the LBI Trustee, which amount shall be in lieu of such distribution and applied in satisfaction (in whole or in part, as applicable) of the allowed claim.  If LBHI pays to LBI or the LBI Trustee on behalf of a taxing

authority any amount on account of an allowed claim of such taxing authority under this Section 8.01, LBI and the LBI Trustee shall remit such amounts to the applicable taxing authority.

SECTION 8.02.   *Tax Assets; Refunds.*  LBI shall not be entitled to (i) any Group Tax refund or equivalent credit for any taxable period or (ii) any compensation from, or claim against, any LBHI Member with respect to the use or absorption by such entity or any other member of the Group of any net operating losses, capital losses, foreign tax credits or other Group Tax assets attributable to LBI.  To the extent that any Group Tax refund is received by LBI, the LBI Trustee shall promptly notify, and transfer such Group Tax refund to, LBHI.

SECTION 8.03.   *Group Tax Filings, and Tax Proceedings.*

(a)     LBHI shall have exclusive control over (i) the preparation and filing of all Group Tax Returns (including amended Group Tax Returns), including any tax elections of or relating to the Group, and any extensions and estimated payment statements required as part of a taxable year's filing process, and (ii) the administration and defense of any audit, investigation, litigation or other Tax proceeding relating to Group Taxes, including with respect to the settlement and resolution thereof; and in furtherance thereof, the LBI Trustee shall not take an inconsistent position in connection with, or relating to, such Group Tax Returns or Tax proceedings.  LBHI shall owe no duty to LBI in respect of the exercise of such control (including with respect to any elections LBHI makes under applicable Treasury Regulations with respect to the subsidiaries that were the subject of the PIK Notes transaction); provided, however, that LBHI (x) shall not claim a worthless stock deduction under section 165 of the Tax Code with respect to its stock in LBI, but may elect to reattribute a portion of any net operating loss carryforwards under Treasury Regulation § 1.1502-36(d) in an amount not to exceed the excess of LBI's net operating loss carryforwards as of the date of deconsolidation over $3,000,000,000.00, and (y) subject to clause (x), shall elect to reduce its tax basis under Treasury Regulation § 1.1502-36(d) to the extent that LBI otherwise would be required to reduce its tax attributes under that section.

(b)     Within sixty (60) days of the Execution Date in the case of each taxable year ending December 31, 2008 through December 31, 2011, and within sixty (60) days prior to the due date for the filing of any Group Tax Return for a subsequent taxable year (determined taking into account any available extensions), the LBI Trustee shall provide to LBHI (to the extent not previously provided) the following information ("**Tax Return Information**"), based upon the information available at such time:  (i) the LBI balance sheet with respect to such year prepared for the purposes of other filings in the SIPA Proceeding, (ii) the realization report with respect to such year that describes the cumulative changes in LBI's accounts since the commencement of the SIPA Proceeding (along with supporting "Great Plains General Ledger" entries) prepared for the purposes of other filings in the SIPA Proceeding, and promptly provide any subsequent updates thereto with respect to such year (the "**Realization Report**"), and (iii) the aggregate amount of dividend and interest proceeds for the period from September 19, 2008 through December 31, 2011 and for each taxable year following 2011 the aggregate amount of dividend and interest proceeds for such year.  The Parties acknowledge that with respect to periods through December 31, 2011, the LBI Trustee has heretofore provided the required Tax Return Information as such existed as of June 19, 2012, other than the Great Plains General Ledger Entries.  With respect to each taxable year ending after December 31, 2011 for

which a Group Tax Return is due, the LBI Trustee shall, on or about (but no later than) the 1st day of the third month (*i.e.,* March 1st, assuming no change in the taxable year) following the end of the taxable year, provide to LBHI good faith estimates of the Tax Return Information for such preceding taxable year, based upon the information available to the LBI Trustee at such time.  For purposes of the preceding sentence, the LBI Trustee shall have no affirmative duty to perform additional research, analysis, or compilation services with respect to the information on hand (but to the extent any such research, analysis, or compilation has been done, shall take such information into account).

(c)    The LBI Trustee shall promptly notify LBHI in the event he or LBI receives any correspondence from a taxing authority with respect to any Group Taxes, and provide LBHI a copy of such correspondence.

SECTION 8.04.    *Cooperation; Retention.*

(a)    *Cooperation and Access to Information.*  The LBI Trustee and LBHI shall fully and promptly cooperate with each other, and provide reasonable access to information in such party's possession (including reasonable access to its accountants and financial records), to the extent the other reasonably so requests, in connection with the preparation, filing, examination and defense of any Tax Returns (including any schedules, consents, elections, information statements or claims for refund), whether or not a Group Tax Return, and any other Tax proceedings (including audits, investigations, litigations or other Tax proceedings, and also including, in the event LBHI determines to make an election relating to a Group Tax Return consistent with the provisions of this ARTICLE VIII that requires the signed consent of LBI, the LBI Trustee executing such consent).  The reasonable costs and expenses incurred by each Party in connection with complying with this Section 8.04(a) (including the fees of any outside advisors) shall be borne by such Party; provided, however, that the requesting Party shall reimburse the other Party for any reasonable out-of-pocket costs and expenses incurred (including the reasonable fees of any outside advisors) in complying with such request but (i) only with respect to, and to the extent, the information sought requires the other Party or its advisors to re-formulate any existing information in a form or manner that such Party would not otherwise have been required to do for any other purpose not relating to Taxes and (ii) only if, prior to incurring such amounts, the other Party provides the requesting Party with an estimate of the out-of-pocket costs and expenses expected to be incurred (it being understood that the estimate shall not be a limitation on the actual amount to be reimbursed).

(b)    *Retention.*  The LBI Trustee shall retain all materials (including all books and records, accounting information, financial statements, returns, supporting schedules, work papers, correspondence, and other documents) in its possession relating to Group Tax Returns until after the expiration of the applicable statute of limitations (including any waivers or extensions thereof) of the taxable periods to which such returns and other documents relate; provided, however, whether before or after such period, if the LBI Trustee intends to destroy any such material records or documents, the LBI Trustee shall provide LBHI with reasonable advance notice and the opportunity to copy or take possession of such records and documents. LBHI shall retain all materials (including all books and records, accounting information, financial statements, returns, supporting schedules, work papers, correspondence, and other documents) in its possession relating to all Tax Returns of which LBI is a joint filer or other Tax

31

Returns LBI reasonably selects on the basis that it has potential liability therefor (and so informs LBHI in writing within three months after the Execution Date), in each case until after the expiration of the applicable statute of limitations (including any waivers or extensions thereof) of the taxable periods to which such returns and other documents relate; provided, however, whether before or after such period, if LBHI intends to destroy any such material records or documents, LBHI shall provide the LBI Trustee with reasonable advance notice and the opportunity to copy or take possession of such records and documents.

(c)    *Tax Preparation Assistance.*  To the extent that the LBI Trustee specifically requests assistance from LBHI in addition to the provision of information and the retention of materials as described in Section 8.04(a) and Section 8.04(b) and, with respect to assistance more than two years after the Effective Date, LBHI chooses to provide such assistance, the LBI Trustee will reimburse LBHI for any reasonable costs incurred in the provision of such assistance in accordance with the provisions of Section 4.01(a) and Exhibit C of the Transition Services Agreement (it being understood that the LBI Trustee is under no obligation to request such assistance and, two years following the Effective Date, LBHI is under no obligation to provide such assistance).  For purposes of this Section 8.04(c), the definition of "Service Charges" in the Transition Services Agreement will govern the determination and calculation of such costs.

SECTION 8.05.    *Deconsolidation, and Transfer of Remaining Stock of LBI.*

(a)    LBHI and the LBI Trustee shall mutually cooperate and work towards the deconsolidation or other removal of LBI from each Group for U.S. federal, state and local income tax purposes as soon as practicable by transferring 21 percent of its stock in LBI to an unrelated third party or, if the foregoing becomes impracticable, in a manner reasonably determined by LBHI, subject to the approval of the LBI Trustee (which shall not be unreasonably withheld or delayed).  With respect to periods ending on or prior to the date of such transfer, the parties shall continue to file Group Tax Returns with respect to federal income tax, the State of Florida, New York State and New York City.

(b)    Subject to any transfer of the stock of LBI in furtherance of the deconsolidation of LBI pursuant to Section 8.05(a) or with the prior approval of the LBI Trustee, LBHI shall not transfer its remaining common stock in LBI to a Person to whom the stock would not be wholly reattributed to LBHI (or LBHI's stockholders) under the constructive ownership rules of Section 382 and the Treasury Regulations thereunder, except in connection with the final (or close to final) transfer, sale or other disposition of LBHI's assets (whether to creditors, a liquidating trust, an unrelated third party or otherwise).

SECTION 8.06.    *Allocation Between Principal and Interest.*

(a)    Except to the extent otherwise required by law, any payments made by a party pursuant to this Agreement on account of any claim shall be allocated first to the principal portion of such claim and only thereafter, to the extent such principal portion has been satisfied in full, to any portion representing previously accrued but unpaid interest on such claim.

(b)      Lehman ALI and LBI hereby agree that the $350,000,000.00 settlement amount in respect of the PIK Notes provided for under Section 2.01(b)(i) of this Agreement is inclusive of any interest due thereunder.  Accordingly, for federal, state and local income tax purposes, the $350,000,000.00 settlement amount will be treated as $256,000,000.00 of principal and $94,000,000.00 of capitalized interest.

SECTION 8.07.   *Exclusivity.*  Notwithstanding anything to the contrary in this Agreement, this ARTICLE VIII shall exclusively govern the treatment of any Group Taxes among the LBHI Entities, on the one hand, and LBI, on the other hand.

## ARTICLE IX
### MISDIRECTED WIRES

The LBI Trustee shall fix and allow in the amount of $35,072,889.00 (the "**Allowed Misdirected Wires Administrative Claim**") an administrative expense claim to resolve the LBHI Entities' assertions that (1) LBI received funds from third parties after the commencement of the SIPA Proceeding related to transactions between an LBHI Entity and such third party and (2) under the documents governing the transaction, LBI had no entitlement to, or proprietary interest in, the funds received from such third party.  The Allowed Misdirected Wires Administrative Claim shall be satisfied (i) in part through the assignment of the $8,000,000.00 Agreed LBI Non-Debtor Receivables Settlement Payment as specified in Section 2.01(b) of this Agreement and (ii) in part through a payment of $27,072,889.00 by the LBI Trustee within ten (10) Business Days of the Effective Date to the LBHI Entities listed on Schedule K annexed hereto, in the amounts specified.

## ARTICLE X
### PROCEEDS FROM SALE OF CUSTOMER NAME SECURITIES

To the extent the LBI Trustee, as of the Effective Date, holds or thereafter obtains proceeds from the sale of Customer Name Securities registered in the name of an LBHI Entity ("**CNS Proceeds**") and prior to the applicable claims bar date established in the SIPA Proceeding such LBHI Entity claimed such Customer Name Securities, the LBI Trustee shall pay the amount of such CNS Proceeds to the applicable LBHI Entity within twenty (20) Business Days of the receipt or awareness of possession of such CNS Proceeds.

## ARTICLE XI
### DUPLICATE CLAIMS

LOTC and LBSF shall work with Duplicate Claim Counterparties to resolve Duplicate Claims such that either LOTC or LBSF, as applicable, or the Duplicate Claim Counterparties will withdraw their customer claim to the Duplicate Claim Accounts.  The LBI Trustee shall withhold distributions on that portion of LOTC Allowed Customer Claims, LOTC Allowed General Unsecured Claims and LBSF Allowed Customer Claims that are subject to a Duplicate Claim until such time that (i) LOTC or LBSF, as applicable, withdraws its portion of its Allowed Customer Claim or Allowed General Unsecured Claim related to the Duplicate Claim Account, (ii) the Duplicate Claim Counterparty withdraws its customer claim related to such Duplicate Claim Account, (iii) LOTC or LBSF and such Duplicate Claim Counterparty provide the LBI

Trustee with a written agreement (in form and substance reasonably acceptable to the LBI Trustee) allocating such Allowed Customer Claim or Allowed General Unsecured Claim or (iv) in the event that LOTC or LBSF, as applicable, and the Duplicate Claim Counterparty are unable to resolve the Duplicate Claim, the LBI Trustee seeks judicial resolution as to the allowance of the Duplicate Claims, including through objection, interpleader or other proceeding, in his sole discretion but after consultation with LOTC or LBSF, as applicable, and the Bankruptcy Court enters a Final Order resolving the LBI Trustee's application.

## ARTICLE XII
### EFFECTIVENESS OF AGREEMENT

Except as to Section 8.03(b) hereof, which shall be effective as of the Execution Date, this Agreement shall become effective when the last of the following conditions to effectiveness are satisfied or, where permitted herein, waived (the "**Effective Date**"):

(a)    The LBI Trustee obtains Bankruptcy Court Approval;

(b)    The effectiveness of the LBI-LBIE Settlement Agreement; provided that if the only reason the LBI-LBIE Settlement Agreement has not become effective is that this Agreement is not effective, then this condition shall be deemed satisfied;

(c)    The LBI Trustee obtains a Final Order, substantially in the form annexed hereto as Schedule T, approving the allocation of sufficient cash and securities as Customer Property to allow for a 100% distribution on account of the customer claims allowed in the SIPA Proceeding; and

(d)    The LBI Trustee obtains a Final Order approving the distribution to the LBHI Entities of the cash and securities as set forth in Section 2.02(a)(iii) and Schedules O, P and Q hereof in satisfaction of their Allowed Customer Claims.

## ARTICLE XIII
### TERMINATION

SECTION 13.01.  *Automatic Termination*.  This Agreement shall automatically terminate three (3) Business Days after the entry of a Final Order denying Bankruptcy Court Approval.

SECTION 13.02.  *The LBI Trustee's Right to Terminate*.  Solely prior to the Effective Date, the LBI Trustee, in his sole discretion, shall have the right to terminate this Agreement by written notice to the LBHI Entities consistent with ARTICLE XXII hereof if there is a material breach of the representations, warranties or covenants of any of the LBHI Entities hereunder, and the relevant LBHI Entity fails to cure such breach within ten (10) Business Days following receipt of written notice of such breach from the LBI Trustee.

SECTION 13.03.  *The LBHI Entities' Right to Terminate*.  Solely prior to the Effective Date, the LBHI Entities, in their sole discretion, shall have the right to terminate this Agreement by written notice from LBHI to the LBI Trustee consistent with ARTICLE XXII hereof if there is a material breach of the representations, warranties or covenants of the LBI Trustee hereunder,

and the LBI Trustee fails to cure such breach within ten (10) Business Days following receipt of written notice of such breach from LBHI.

SECTION 13.04.  *Effect of Termination*.  In the event that this Agreement is terminated in accordance with its terms, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement, shall have any *res judicata* or collateral estoppel effect or be of any force or effect.  Each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed (except as to this Section) and the Parties hereto shall be automatically relieved of any further obligations hereunder; provided that Section 13.04 of this Agreement shall survive any termination of this Agreement.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties' rights and remedies and the Parties hereby reserve all Claims, defenses and positions that they may have with respect to each other.

## ARTICLE XIV
## VENUE AND CHOICE OF LAW

SECTION 14.01.  *Venue*.  To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.  Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.  If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction.  Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in ARTICLE XXII hereof.  Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

SECTION 14.02.  *Choice of Law*.  This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and US Bankruptcy Law, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or US Bankruptcy Law.

## ARTICLE XV
### CONSTRUCTION

This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

## ARTICLE XVI
### NON-SEVERABILITY

Each of the provisions of this Agreement is an integrated, essential and non-severable part of this Agreement.

## ARTICLE XVII
### BINDING EFFECT; SUCCESSOR AND ASSIGNS; ASSIGNMENT

Any declaration or statement of the LBI Trustee shall only be made in his capacity and function as the LBI Trustee and shall in no circumstance be construed as being a declaration or statement of the LBI Trustee on his own and personal behalf. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. This Agreement may not be assigned by any Party without the prior written consent of the other Parties and any purported assignment in violation hereof shall be of no force or effect.

## ARTICLE XVIII
### ENTIRE AGREEMENT

This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof. This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof. The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

## ARTICLE XIX
### AMENDMENTS; NO ORAL MODIFICATIONS

SECTION 19.01. This Agreement may not be modified or amended except by a writing signed by a duly authorized representative of each affected Party hereto. No waiver of any provision of this Agreement shall be valid unless in writing signed by the waiving Party. No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach. No failure or delay by any Party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or be construed as a waiver or variation of it or preclude its exercise at any subsequent time, and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

SECTION 19.02. The LBHI Entities who are not signatories to this Agreement as of the Execution Date (the "**Non-Signing Controlled Entities**") may be added to this Agreement at any time after the Execution Date by executing an amendment to this Agreement, substantially in the form annexed hereto as Schedule M (the "**Controlled Entity Joinder**"). The Debtors agree

36

to use their best efforts to cause the LBHI Entities that are Non-Signing Controlled Entities to execute the Controlled Entity Joinder. The LBHI Entities shall not enter into any transaction pursuant to which a Non-Signing Controlled Entity ceases to be controlled by the LBHI Entities without such Non-Signing Controlled Entity executing the Controlled Entity Joinder.

## ARTICLE XX
### NO ADMISSION OF LIABILITY

Each Party acknowledges that this Agreement effects a settlement of potential claims, counterclaims and factual disputes that are in whole or in part denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

## ARTICLE XXI
### COUNTERPARTS

This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart. A copy or a facsimile of a signature shall be binding upon the signatory as if it were an original signature.

## ARTICLE XXII
### NOTICES

All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the Party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three (3) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

If to the LBI Trustee at:

> Hughes Hubbard & Reed LLP
> One Battery Park Plaza
> New York, New York 10004
> Attn: James B. Kobak, Jr. and Jeffrey M. Greilsheimer
> Email: kobak@hugheshubbbard.com
>       greilshe@hugheshubbard.com

If to any of the LBHI Entities at:

> 1271 Avenue of the Americas, 40th Floor
> New York, New York 10020
> Attn: Daniel J. Ehrmann
> Facsimile: (646) 834-0874
> Email: dehrmann@alvarezandmarsal.com

<u>With a copy (which shall not constitute notice) to:</u>

       Weil, Gotshal & Manges LLP
       767 Fifth Avenue
       New York, New York 10153
       Attn: Lori R. Fife
       E-mail:lori.fife@weil.com

or to such other address(es) as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

## ARTICLE XXIII
### COOPERATION

Subject to applicable data privacy restrictions, confidentiality obligations owed to third parties and other applicable restrictions on their respective ability to provide information, the LBI Trustee and the Debtors agree to use reasonable efforts to provide one another information relating to the SIPA Proceeding and the Chapter 11 Cases, respectively, in order to assist each other in resolving claims of Affiliates and other creditors and otherwise concluding the administration of their respective bankruptcy cases; provided that (i) any information supplied by either the LBI Trustee or any of the Debtors pursuant to this ARTICLE XXIII shall be supplied on the terms that the providing party incur no obligation or liability to the receiving party in connection therewith, and (ii) the obligation to cooperate set forth in this ARTICLE XXIII shall not require either the LBI Trustee or any Debtor, as applicable, to expend any funds which it considers unreasonable or unduly burdensome. Nothing in this ARTICLE XXIII shall require the LBI Trustee or any Debtor, as applicable, to act in any manner that it considers, in its sole discretion, to be adverse to its interests or inconsistent with its fiduciary duties.

## ARTICLE XXIV
### EXPENSES

Except as set forth in Article VIII and in the Surviving Contracts, the fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, shall be paid by such Party.

## ARTICLE XXV
### NO PERSONAL LIABILITY

The LBI Trustee and A&M act as agents for and on behalf LBI and the LBHI Entities, respectively, and neither they, their firm, member, partners, directors, officers, employees, agents, and their representatives or other professional advisors shall incur any personal liability whatsoever in respect of any of the obligations undertaken by LBI or any of the LBHI Entities, or in respect of any failure on the part of LBI or any of the LBHI Entities to observe, perform or comply with any such obligation. The exclusion of liability set forth in this ARTICLE XXV shall arise and continue notwithstanding the termination of the agency of the LBI Trustee or

A&M and shall operate as a waiver of any claims in tort as well as under the laws of contract and any claims otherwise at law or in equity. The Persons identified in this ARTICLE XXV are express third-party beneficiaries hereunder and may enforce and rely on this paragraph to the same extent as if they or it were a party hereto. Each Party accepts and agrees that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the Persons described in this Article and, to the extent any such personal liability existed, each Party explicitly waives any and all potential rights and Claims against all of the aforementioned Persons. Any Claim by a Party against the LBI Trustee or LBI arising under, related to, or connected with this Agreement shall only be satisfied out of the assets of LBI. Any Claim by a Party against A&M as agent for an LBHI Entity, or against such LBHI Entity arising under, related to, or connected with this Agreement shall only be satisfied out of the assets of such LBHI Entity.

## ARTICLE XXVI
### DISTRIBUTION INSTRUCTIONS

The LBHI Entities shall provide instructions with respect to the delivery of the distributions contemplated herein to the LBI Trustee, in a form suitable to the LBI Trustee, prior to the Effective Date. The failure of the LBHI Entities to provide such instructions shall not constitute a breach of this Agreement. If the LBHI Entities fail to provide delivery instructions prior to the Effective Date, then the LBI Trustee's time to make any distribution contemplated by this Agreement shall be extended by the number of days after the Effective Date that such instructions are received by the LBI Trustee.

## ARTICLE XXVII
### TIMING OF DISTRIBUTIONS

Although the LBI Trustee will endeavor to cause distributions to the LBHI Entities to be made within the time periods specified herein, notwithstanding anything to the contrary in this Agreement, it shall not be a breach of this Agreement, if the LBI Trustee completes such distributions within sixty (60) days of each specified date for wire transfers or one hundred eighty (180) days of each specified date for the delivery of securities.

## ARTICLE XXVIII
### NO EXTENSION OF BAR DATES

Nothing in this Agreement shall be construed to extend or have the effect of extending any claims bar dates that are applicable in the Chapter 11 Cases and the SIPA Proceeding.

## ARTICLE XXIX
### WAIVER OF JURY TRIAL

EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION

THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS ARTICLE XXIX IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

## ARTICLE XXX
### NON-DISCLOSURE

Unless otherwise agreed by the Parties, no Party shall disclose the terms of this Agreement, or this Agreement itself, until a motion with the Bankruptcy Court seeking Bankruptcy Court Approval has been filed by the LBI Trustee in the SIPA Proceeding. Notwithstanding the foregoing, any Party to this Agreement may disclose this Agreement in conjunction with the filing of a motion with the Bankruptcy Court for approval of this Agreement.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**LBI TRUSTEE:**

James W. Giddens, solely in his capacity as
trustee for the SIPA liquidation of Lehman
Brothers Inc., without personal liability


_____
James W. Giddens

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Lehman Brothers Holdings Inc.

By: _____
       Name:  Daniel Ehrmann
       Title:   Senior Vice President

Lehman Brothers Special Financing Inc.

By: _____
       Name:  Daniel Ehrmann
       Title:   President and Chief Operating Officer

ARS Holdings II LLC
BNC Mortgage LLC
Bromley LLC
CES Aviation II LLC
CES Aviation III LLC
CES Aviation IV LLC
CES Aviation IX LLC
CES Aviation LLC
CES Aviation V LLC
CES Aviation VI LLC
CES Aviation VII LLC
CES Aviation X LLC
CES Aviation XI LLC
CES Aviation XII LLC
CES Aviation XIII LLC
CES Aviation XIV LLC
CES Aviation XV LLC
Cohane Rafferty, LLC
Diogenes Management Company Inc.
DL Mortgage Corp.
E-Valuate GP, LLC (f/k/a E-Valuate II GP, LLC)
GA Dekalb Inc.
Industrial Holdings Corporation
Jet Partners, LLC
LB 2080 Kalakaua Owners LLC
LB 745 LLC

LB Burrage House Inc.
LB Funding Corp. II
LB Hercules Holdings LLC
LB I Group Inc.
LB Preferred Somerset LLC
LB Private Wealth Management, Inc. (f/k/a Executive Monetary Management)
LB PWC, LLC (f/k/a Sage Partners LLC)
LB Renar LPGA Inc.
LB Rose Ranch LLC
LB Somerset LLC
LCPI Properties Inc.
Lehman ABS Corporation
Lehman ALI Inc.
Lehman Brothers Asset Management Inc.
Lehman Brothers Bancorp Inc.
Lehman Brothers Commercial Corporation
Lehman Brothers Commodity Services Inc.
Lehman Brothers Communications Associates Inc.
Lehman Brothers Derivative Products Inc.
Lehman Brothers Financial Products Inc.
Lehman Brothers Futures Asset Management Corp.
Lehman Brothers International Services Inc.
Lehman Brothers Investment Holding Company Inc.
Lehman Brothers MBLP, Inc.
Lehman Brothers Merchant Banking Advisors II Inc.
Lehman Brothers MLP Opportunity Associates LLC
Lehman Brothers OTC Derivatives Inc.
Lehman Brothers Overseas Inc.
Lehman Brothers PA LLC
Lehman Brothers Private Fund Management GP, LLC (f/k/a Lehman Crossroads Investment
Company GP, LLC)
Lehman Brothers Private Funds Investment Company LP, LLC
Lehman Brothers Venture Associates Inc.
Lehman CMBS Funding Inc.
Lehman CMO Inc.
Lehman Commercial Paper Inc.
Lehman Housing Capital Inc.
Lehman Investments Inc.
Lehman Pass-Through Securities Inc.
Lehman Residential Opportunities Corp.
Lehman Syndicated Loan Inc.
LIBRO Holdings I Inc.
LUBS Inc.
LW-LP Inc.
Merit LLC
MMP Funding Corp.

PAMI Statler Arms LLC
Picnic II Inc.
Principal Transactions II Inc.
Property Asset Management Inc.
Real Estate Private Equity Inc.
RIBCO LLC
RIBCO SPC, Inc.
Select Asset Inc.
Structured Asset Securities Corporation II
Structured Assets Securities Corporation
West Dover, LLC
Wharf Reinsurance Inc.
Woodlands Commercial Corporation

By:

     Name:  Daniel Ehrmann
     Title:   Vice President


ARS Holdings I LLC
Clarks Summit I, LLC
Equity Strategies Loan LLC
Laminar Holdings LLC
LB 745 Leasco I LLC
LB 745 Leasco II LLC
Lehman Brothers Venture Associates V LLC
REPE LBREP II LLC
Tax Exempt Affordable Mortgage Acceptance Company LLC
W 6 Holdings LLC

By:

     Name:  Daniel Ehrmann
     Title:   Authorized Signatory


The Main Office Management Company, LP (f/k/a The Main Office Management Company II
LP)

By:   The Main Office Management Company GP, LLC, its general partner

     By:

          Name:  Daniel Ehrmann
          Title:   Vice President

CA II LP (f/k/a Capital Analytics II, LP)

By:  CA II GP LLC, its general partner

By: _____
Name: Daniel Ehrmann
Title:  Vice President


E-Valuate, LP (f/k/a E-Valuate II, LP)

By:  E-Valuate GP, LLC, its general partner

By: _____
Name: Daniel Ehrmann
Title:  Vice President


Able Health Ventures LLC
Royalty Asset Investment, LLC

By:  LB I Group Inc., its managing member

By: _____
Name: Daniel Ehrmann
Title:  Vice President


Lehman Brothers Private Fund Advisers, LP (f/k/a Lehman Crossroads Investment Advisers, LP)

By:  Lehman Brothers Private Fund Advisers GP, LLC, its general partner

By: _____
Name: Daniel Ehrmann
Title:  Vice President

LBK Ribco L.P.

By:   LB I Group Inc., its general partner

By:
Name: Daniel Ehrmann
Title:   Vice President


LPJ Aircraft Finance LLC

By:   Lehman Commercial Paper Inc., its managing member

By:
Name: Daniel Ehrmann
Title:   Vice President


Lehman Brothers European Mezzanine Associates 2003 Ltd.
Lehman Brothers Offshore Communications Associates Ltd.
Global Commercial Real Estate (Cayman) Inc.
Stockholm Investments Ltd.
Lehman Brothers Global Services Ltd.

By:
Name:   Daniel Ehrmann
Title:     Director


Lehman Scottish Finance L.P.

By:   Property Asset Management Inc., its general partner

By:
Name: Daniel Ehrmann
Title:   Vice President

East Dover Limited

By: _____
     Name: Daniel Ehrmann
     Title:   Director and Duly Authorized Officer


Luxembourg Residential Properties Loan Finance S.a.r.l.
Nopelo Mexico S. de R.L. de C.V.

By: _____
     Name: Daniel Ehrmann
     Title:  Manager


Lehman VIP Investment LDC

By:   LB I Group Inc., a Deemed Director

     By: _____
       Name: Daniel Ehrmann
       Title:  Vice President

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the
date first written above.

314 Commonwealth Ave. Inc.
745 Special Assets LLC
Appalachian Asset Management Corp.
Area GP Corporation
Brookwood Energy & Properties Inc.
CA II GP LLC (f/k/a Capital Analytics II GP LLC)
Canope Credit Corp.
CES Aviation VIII LLC
DA Group Holdings Inc.
LB Hercules Agency, Inc. (f/k/a Neuberger & Berman Agency, Inc.)
LB Hercules Art Advisory Services Inc. (f/k/a Neuberger Berman Art Advisory Services Inc.)
LB Hercules Investment Services LLC (f/k/a Neuberger Berman Investment Services LLC)
LB Hercules Technology Management LLC (f/k/a Neuberger Berman Technology Management
LLC)
LB Markets LLC
LBAC Holdings I Inc.
LCCI GP LLC (f/k/a Lehman Crossroads Corporate Investors GP, LLC)
LCCI II GP LLC (f/k/a Lehman Crossroads Corporate Investors II GP, LLC)
Lehman Brothers Europe Inc.
Lehman Brothers Global Infrastructure Associates Holdings L.L.C.
Lehman Brothers Investments Japan Inc.
Lehman Brothers Loan Opportunity Associates (Cayman) LLC
Lehman Brothers Loan Opportunity Associates Holdings LLC (f/k/a Lehman Brothers Loan
Opportunity Associates LLC)
Lehman Brothers/MBGP Inc.
Lehman Brothers Merchant Banking Partners II Inc.
Lehman Brothers Private Fund Advisers GP, LLC (f/k/a Lehman Crossroads Investment
Advisers GP LLC)
Lehman Brothers Private Funds Investment Company GP, LLC
Lehman Brothers U.K. Holdings (Delaware) Inc.
Lehman Brothers/FW Inc.
Lehman Brothers/Rosecliff Inc.
Lehman Housing Lending Corp.
Lehman Risk Advisors Inc.
Lehman/SDI Inc.
Lehman Structured Securities Corp.
Lehman Syndicated Loan Funding Inc.
Lehman VIP Holdings Inc.
Leveraged Loan Trading Holdings Inc.
NJ Somerset Inc.
PAMI Harbor Park Inc.
Pentaring Inc.

Peterborough 850 LLC
Picnic 1 Inc.
Real Estate Private Equity Inc.
Security Assurance Advisers GP, LLC (f/k/a Security Assurance Advisers II GP, LLC)
Stamford Investment Realty Inc.
Tallus Inc.
The Main Office Management Company GP, LLC (f/k/a The Main Office Management
Company II GP, LLC)

By:
      Name:  Daniel Ehrmann
      Title:   Vice President


Clarks Summit I, LLC
LB Hercules Asset Management, LLC (f/k/a Neuberger Berman Asset Management, LLC)
LB Hyderabad Investments I LLC
Lehman Brothers Special Lending LLC
Lehman Brothers Venture Associates 2003 LLC
Lehman Brothers Venture Associates II LLC
Lehman Wealth Services Holdings LLC
REPE LBREM LLC (f/k/a PAMI LBREM LLC)
REPE LBREP III LLC

By:
      Name:  Daniel Ehrmann
      Title:   Authorized Signatory


LCCI LP (f/k/a Lehman Crossroads Corporate Investors LP)

By:  LCCI GP LLC, its general partner

      By:
          Name: Daniel Ehrmann
          Title:  Vice President

LCCI II LP (f/k/a Lehman Crossroads Corporate Investors II LP)

By:   LCCI II GP LLC, its general partner

By:
Name: Daniel Ehrmann
Title:   Vice President


Lehman Brothers Private Fund Management LP (f/k/a Lehman Crossroads Investment Company LP)

By:   Lehman Brothers Private Fund Management GP, LLC, its general partner

By:
Name: Daniel Ehrmann
Title:   Vice President


Security Assurance Advisers, LP (f/k/a Security Assurance Advisers II, LP)

By:   Security Assurance Advisers GP, LLC, its general partner

By:
Name: Daniel Ehrmann
Title:   Vice President


Lehman Brothers Asset Securitization LLC

By:   Lehman Commercial Paper Inc., its managing member

By:
Name: Daniel Ehrmann
Title:   Vice President

08-01420-jmp    Doc 8785    Filed 02/26/13    Entered 02/26/13 14:18:57    Main Document
Pg 3 of 159

Revival Fund Management Korea LLC

By:   Revival Fund Management LLC, its managing member

    By:   Principal Transactions Inc., its sole member

      By: _____
          Name: Daniel Ehrmann
          Title:  Vice President

LB Investments (UK) Limited
Lehman Brothers Opportunity Holdings Inc.
Lehman Brothers (Cayman Islands) Ltd.
Lehman Brothers Latin America Limited
Lehman Brothers Offshore Partners II Ltd.
Lehman Brothers Offshore Partners Ltd.
Lehman Risk Services (Bermuda) Ltd.
O.M.B. Limited Partner Ltd.

By: _____
        Name:  Daniel Ehrmann
        Title:  Director


Lehman Brothers Hong Kong Olympus Funding LP

By:  LBQ Hong Kong Services Ltd., trustee of the general partner

    By: _____
        Name:  Daniel Ehrmann
        Title:  Director


Mansfield II SARL

By:    314 Commonwealth Ave., Inc., majority shareholder

    By: _____
        Name:  Daniel Ehrmann
        Title:  Vice President

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Global Taiwan Investments Ltd

By:

    Name:    Daniel Ehrmann

    Title:    Vice President


CJC Investments Inc.
Thai Investor I Inc.
Thai Investor II Inc.
Thai Investor III Inc.
Thai Investor IV Inc.
Thai Investor V Inc.
Thai Investor VI Inc.
Thai Investor VII Inc.
Thai Investor VIII Inc.
Thai Investor IX Inc.
Thai Investor X Inc.
Falcon Holdings II Inc.
Global Korea Investments Ltd
Eagle Investors I Inc
Eagle Investors II Inc
Eagle Investors III Inc
Eagle Investors IV Inc
Eagle Investors V Inc
Eagle Investors VI Inc
Eagle Investors VII Inc
Eagle Investors VIII Inc
Eagle Investors IX Inc
Eagle Investors X Inc
GKI Korea Limited
Lehman Brother ASEAN Opportunity Ltd.
Japan Hospitality Management Inc.
Eagle Holdings II Inc
Falcon Holdings III Inc.
Falcon Holdings IV Inc.
GKI Commercial Real Estate 2 Ltd.
Lehman Brothers Asian Investments Limited
TSAF Investor I Inc.
TSAF Investor II Inc.
TSAF Investor III Inc.

TSAF Investor IV Inc.
TSAF Investor V Inc.
TSAF Investor VI Inc.
TSAF Investor VII Inc.
TSAF Investor VIII Inc.
TSAF Investor IX Inc.
TSAF Investor X Inc.
SOGKI Inc.
SOGKI Management Inc.
GKI Korea Management Limited
GTI Taiwan Limited
Revival Holdings Limited

By: _____
      Name: Daniel Ehrmann
      Title:  Director


Japan TK Investor I LLC

By:  Japan TK Investor I (Cayman) Holdings Inc., its managing member

By: _____
      Name: Daniel Ehrmann
      Title:  Director

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Opal Finance Holdings Ireland Ltd.

By: _____
     Name: John Shanahan
     Title:  Director

[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (RELEASING ENTITIES) – SHANAHAN]

Maewha K-Stars Limited

By: _____

Name: Paul Forgue

Title:   Director

[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (RELEASING ENTITIES)–FORGUE]

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Palarp Asset Management Company Limited
Lehman Brothers South East Asia Investments Pte. Ltd.
Karaboon Company Limited
Quanta Asset Company Limited
Japan Real Estate Investment Partnership Inc.
Lehman Brothers HY Opportunities Korea Inc.
Y.K. Marlin International
Japan Investment Partnership Holdings Inc.
L.B.D. Y.K.
Japan Investment Partnership Inc.

By: _____
     Name: Paul Forgue
     Title: Director

Y.K. Duckhorn

By: _____
     Name: Paul Forgue
     Title: Authorized Signatory

[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (RELEASING ENTITIES)–FORGUE]

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Lehman Brothers (Thailand) Limited

By: _____

Name:  William J. Fox

Title:  Director

By: _____

Name:  Paul Forgue

Title:   Director

[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (RELEASING ENTITIES)– FOX]

08-01420-jmp   Doc 3785   Filed 02/26/13   Entered 02/26/13 14:18:50   Main Document
Pg 99 of 159

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.


Y.K.Birch
Keian  Y.K.
Y.K. Meisho Estate
Y.K.Elmwood
L.B.E. Y.K.
Y.K.Reindeer
Y.K.Superior
Y.K.Yellowtail International
Y.K. Alfonsino International
Y.K.Louise


*L. Oxley*

Name:  Lauren Oxley
Title:  Liquidator


[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (RELEASING ENTITIES)– EHRMANN]

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the
date first written above.


Asia Indo Opportunity I Ltd.
Capital Growth Investments Ltd.
LB India Holdings Mauritius II Ltd.
LB India Holdings Mauritius III Ltd.


By: _____
    Name: William J. Fox
    Title: Director


[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (RELEASING ENTITIES) – FOX]

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Lehman Brothers Private Equity Advisers LLC

By: _____
    Name:   William J. Fox
    Title:    Executive Vice President and Chief Financial Officer

LB India Holdings Mauritius I Ltd.
Lehman Brothers Opportunity Ltd.
LB Investment Management Company Ltd. (f/k/a Lehman Brothers India Holdings Cayman II)

By: _____
    Name:   William J. Fox
    Title:    Director

[SIGNATURE PAGE TO SETTLEMENT AGREEMENT (SETTLEMENT ENTITIES) – FOX]

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

LBTC Transfer Inc.

By: _____
     Name: William J. Fox
     Title:  Executive Vice President and Chief Financial Officer

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Saijai Asset Company Limited

By: _____

Name: Pardorn Suchiva
Title:   Director

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above.

Phuket Capital Resort Co., Ltd

By: _____
        Name:   Benyapa Paisarnkool
        Title:    Liquidator

Schedule A
EXCLUDED CLAIMS

| **Claimant** | **Claim Number** |
|---|---|
| Eagle Energy Management. LLC | 900006447 |
| LB (Luxembourg) Equity Finance SA | 900006724 |
| LB (Luxembourg) Equity Finance SA | 900006725 |
| LBC YK | 5436 |
| Lehman Brothers Finance (Japan) Inc. | 5421 |
| Neuberger Berman LLC | 900006500 |
| Neuberger Berman LLC | 900006501 |
| Neuberger Berman LLC | 900006502 |
| Neuberger Berman LLC | 900006503 |
| Neuberger Berman LLC | 900006504 |
| Neuberger Berman LLC | 900006505 |
| Neuberger Berman LLC | 900006506 |
| Neuberger Berman LLC | 900006507 |
| Neuberger Berman LLC | 900006508 |
| Neuberger Berman LLC | 900006509 |
| Neuberger Berman LLC | 900006510 |
| Neuberger Berman LLC | 900006512 |
| Neuberger Berman LLC | 900006513 |
| Neuberger Berman LLC | 900006514 |
| Neuberger Berman LLC | 900006515 |
| Neuberger Berman LLC | 900006516 |
| Neuberger Berman LLC | 900006517 |

| **Claimant** | **Claim Number** |
| --- | --- |
| Neuberger Berman LLC | 900006518 |
| Neuberger Berman LLC | 900006519 |
| Neuberger Berman LLC | 900006520 |
| Neuberger Berman LLC | 900006521 |
| Neuberger Berman LLC | 900006522 |
| Neuberger Berman LLC | 900006523 |
| Neuberger Berman LLC | 900006524 |
| Neuberger Berman LLC | 900006525 |
| Neuberger Berman LLC | 900006526 |
| Neuberger Berman LLC | 900006527 |
| Neuberger Berman LLC | 900006528 |
| Neuberger Berman LLC | 900006529 |
| Neuberger Berman LLC | 900006530 |
| Neuberger Berman LLC | 900006531 |
| Neuberger Berman LLC | 900006532 |
| Neuberger Berman LLC | 900006427 |
| 737 Portfolio Trust | 5435 |

Schedule B
DEBTOR, NON-DEBTOR AND DEBTOR-CONTROLLED ENTITIES

| **Debtors** |
| --- |
| BNC Mortgage LLC |
| CES Aviation IX LLC |
| CES Aviation LLC |
| CES Aviation V LLC |
| East Dover Limited |
| LB 2080 Kalakaua Owners LLC |
| LB 745 LLC. |
| LB Preferred Somerset LLC |
| LB Rose Ranch LLC |
| LB Somerset LLC |
| Lehman Brothers Commercial Corporation |
| Lehman Brothers Commodity Services Inc. |
| Lehman Brothers Derivative Products Inc. |
| Lehman Brothers Financial Products Inc. |
| Lehman Brothers Holdings Inc. ("LBHI") |
| Lehman Brothers OTC Derivatives Inc. ("LOTC") |
| Lehman Brothers Special Financing Inc. ("LBSF") |
| Lehman Commercial Paper Inc. |
| Lehman Scottish Finance L.P. |
| Luxembourg Residential Properties Loan Finance S.a.r.l. |
| Merit LLC |
| PAMI Statler Arms LLC |

| Debtors |
| --- |
| Structured Assets Securities Corporation |


| Non-Debtors |
| --- |
| Able Health Ventures LLC |
| ARS Holdings I LLC |
| ARS Holdings II LLC |
| Bromley LLC |
| CA II LP (f\k\a Capital Analytics II LP) |
| CES Aviation II LLC |
| CES Aviation III LLC |
| CES Aviation IV LLC |
| CES Aviation VI LLC |
| CES Aviation VII LLC |
| CES Aviation X LLC |
| CES Aviation XI LLC |
| CES Aviation XII LLC |
| CES Aviation XIII LLC |
| CES Aviation XIV LLC |
| CES Aviation XV  LLC |
| Clarks Summit I, LLC |
| Cohane Rafferty, LLC |
| Diogenes Management Company Inc. |

| **Non-Debtors** |
|---|
| DL Mortgage Corp. |
| Equity Strategies Loan LLC |
| E-Valuate GP, LLC (f/k/a E-Valuate II GP, LLC) |
| E-Valuate LP, LLC (f/k/a E-Valuate II LP, LLC) |
| GA Dekalb Inc. |
| Global Commercial Real Estate (Cayman) Inc. |
| Industrial Holdings Corporation |
| Jet Partners LLC |
| Laminar Holdings LLC |
| LB 745 Leasco I LLC |
| LB 745 Leasco II LLC |
| LB I Group Inc. |
| LB Burrage House Inc. |
| LB Funding Corp. II |
| LB Hercules Holdings LLC |
| LB Investment Management Company Ltd. (f/k/a Lehman Brothers India Holdings Cayman II) |
| LB Private Wealth Management, Inc. (f/k/a Executive Monetary Management Inc.) |
| LB PWC, LLC (f\k\a Sage Partners LLC) |
| LB Renar LPGA Inc. |
| LBK Ribco LP |
| LCPI Properties Inc. |
| Lehman ABS Corporation |
| Lehman ALI  Inc |

| **Non-Debtors** |
| --- |
| Lehman Brothers Asset Management Inc. |
| Lehman Brothers Bancorp Inc. |
| Lehman Brothers Communications Associates Inc |
| Lehman Brothers European Mezzanine Associates 2003 Ltd |
| Lehman Brothers Futures Asset Management Corp. |
| Lehman Brothers Global Services Ltd. |
| Lehman Brothers India Holdings Mauritius I Ltd. |
| Lehman Brothers International Services Inc. |
| Lehman Brothers Investment Holding Company Inc. |
| Lehman Brothers MBLP, Inc. |
| Lehman Brothers Merchant Banking Advisors II Inc. |
| Lehman Brothers MLP Opportunity Associates LLC |
| Lehman Brothers Offshore Communications Associates Ltd. |
| Lehman Brothers Opportunity Ltd. |
| Lehman Brothers Overseas Inc. |
| Lehman Brothers PA LLC |
| Lehman Brothers Private Equity Advisers LLC |
| Lehman Brothers Private Fund Management GP, LLC (f/k/a/ Lehman Crossroads Investment Company GP) |
| Lehman Brothers Private Funds Investment Company LP |
| Lehman Brothers Venture Associates Inc. |
| Lehman Brothers Venture Associates V LLC |
| Lehman CMBS Funding Inc. |
| Lehman CMO Inc. |

| Non-Debtors |
| --- |
| Lehman Brothers Private Fund Advisors, LP (f/k/a Lehman Crossroads Investment Advisors, LP) |
| Lehman Housing Capital Inc. |
| Lehman Investments Inc |
| Lehman Pass-Through Securities Inc. |
| Lehman Residential Opportunities Corp. |
| Lehman Syndicated Loan Inc. |
| Lehman VIP Investment LDC |
| LIBRO Holdings I Inc. |
| LPJ Aircraft Finance LLC |
| LUBS Inc. |
| LW-LP Inc. |
| MMP Funding Corp. |
| Nopelo Mexico Srl De Cv |
| Picnic II Inc. |
| Principal Transactions II Inc. |
| Property Asset Management Inc. |
| Real Estate Private Equity Inc. |
| REPE LBREP II LLC (f/k/a/PAMI LBREP II LLC) |
| RIBCO LLC |
| RIBCO SPC, INC. |
| Royalty Asset Investment, LLC |
| Select Asset Inc. |
| Stockholm Investments Ltd |

LBI-LBHI Settlement Agreement Schedules Page 7

| Non-Debtors |
|---|
| Structured Asset Securities Corporation II |
| Tax Exempt Affordable Mortgage Acceptance Company LLC |
| The Main Office Management Company LP<br>(FKA The Main Office Management Company II LP) |
| W 6 Holdings LLC |
| West Dover, LLC |
| Wharf Reinsurance Inc |
| Woodlands Commercial Corporation |

| Debtor-Controlled Entities |
|---|
| 314 Commonwealth Ave. Inc. |
| 745 Special Assets LLC |
| Acadia RJV, LLC |
| Appalachian Asset Management Corp. |
| Area GP Corporation |
| Asia Indo Opportunity I Ltd |
| Brookwood Energy & Properties Inc. |
| CA II GP LLC (f/k/a Capital Analytics II GP LLC) |
| Canope Credit Corp. |
| Capital Growth Investments Ltd. |
| CES Aviation VIII LLC |
| CJC Investments Inc. |

| **Debtor-Controlled Entities** |
|---|
| Clarks Summit I, LLC |
| DA Group Holdings Inc. |
| Eagle Holdings II Inc |
| Eagle Investors I Inc |
| Eagle Investors II Inc |
| Eagle Investors III Inc |
| Eagle Investors IV Inc |
| Eagle Investors V Inc |
| Eagle Investors VI Inc |
| Eagle Investors VII Inc |
| Eagle Investors VIII Inc |
| Eagle Investors IX Inc |
| Eagle Investors X Inc |
| Falcon Holdings II Inc. |
| Falcon Holdings III Inc. |
| Falcon Holdings IV Inc. |
| GKI Commercial Real Estate 2 Ltd. |
| GKI Korea Limited |
| GKI Korea Management Limited |
| Global Korea Investments Ltd |
| Global Taiwan Investments Ltd |
| GTI Taiwan Limited |
| HY Investments (Ireland) Limited |

| Debtor-Controlled Entities |
|---|
| Japan Hospitality Management Inc. |
| Japan Investment Partnership Holdings Inc. |
| Japan Investment Partnership Inc. |
| Japan Real Estate Investment Partnership Inc. |
| Japan TK Investor I LLC |
| Karaboon Company Limited |
| Keian Y.K. |
| L.B.D. Y.K. |
| L.B.E. Y.K. |
| LB Funding Bv |
| LBAC Holdings I Inc. |
| LB Helsinki Holdings S.a.r.l. |
| LB Hercules Agency, Inc. (f/k/a Neuberger & Berman Agency, Inc.) |
| LB Hercules Art Advisory Services Inc. (f/k/a Neuberger Berman Art Advisory Services Inc.) |
| LB Hercules Asset Management, LLC (f/k/a Neuberger Berman Asset Management, LLC) |
| LB Hercules Investment Services LLC (f/k/a Neuberger Berman Investment Services LLC) |
| LB Hercules Technology Management LLC (f/k/a Neuberger Berman Technology Management LLC) |
| LB Hyderabad Investments I LLC |
| LB India Holdings Mauritius II Ltd |
| LB India Holdings Mauritius III Ltd |
| LB Investments (UK) Limited |
| LB Markets LLC |
| LBSP Holding (Ireland) I Plc. |

| Debtor-Controlled Entities |
|---|
| LBSP Limited |
| LBTC Transfer Inc. |
| LCCI GP LLC (f/k/a Lehman Crossroads Corporate Investors GP, LLC) |
| LCCI II GP LLC (f/k/a Lehman Crossroads Corporate Investors II GP, LLC) |
| LCCI II LP (f/k/a Lehman Crossroads Corporate Investors II LP) |
| LCCI LP (f/k/a Lehman Crossroads Corporate Investors LP) |
| Lehman Brothers ASEAN Opportunity Ltd. |
| Lehman Brothers (Thailand) Limited |
| Lehman Brothers Asian Investments Limited |
| Lehman Brothers Asset Securitization LLC |
| Lehman Brothers (Cayman Islands) Ltd |
| Lehman Brothers Europe Inc. |
| Lehman Brothers Global Infrastructure Associates Holdings LLC |
| Lehman Brothers Hong Kong Olympus Funding LP |
| Lehman Brothers HY Opportunities Korea Inc. |
| Lehman Brothers Investments Japan Inc |
| Lehman Brothers Latin America Limited |
| Lehman Brothers Loan Opportunity Associates (Cayman) LLC |
| Lehman Brothers Loan Opportunity Associates Holdings LLC (f/k/a Lehman Brothers Loan Opportunity Associates LLC) |
| Lehman Brothers/MBGP Inc. |
| Lehman Brothers Merchant Banking Partners II Inc. |
| Lehman Brothers Offshore Partners II Ltd. |
| Lehman Brothers Offshore Partners Ltd. |

| Debtor-Controlled Entities |
| --- |
| Lehman Brothers Opportunity Holdings Inc. |
| Lehman Brothers Private Fund Advisers GP, LLC (f/k/a Lehman Crossroads Investment Advisers GP LLC) |
| Lehman Brothers Private Fund Management LP (f/k/a Lehman Crossroads Investment Company LP) |
| Lehman Brothers Private Funds Investment Company GP, LLC |
| Lehman Brothers Southeast Asia Investments Pte. Ltd. |
| Lehman Brothers Special Lending LLC |
| Lehman Brothers U.K. Holdings (Delaware) Inc. |
| Lehman Brothers Venture Associates 2003 LLC |
| Lehman Brothers Venture Associates II LLC |
| Lehman Brothers/FW Inc. |
| Lehman Brothers/Rosecliff Inc. |
| Lehman Housing Lending Corp. |
| Lehman Risk Advisors Inc. |
| Lehman Risk Services (Bermuda) Ltd. |
| Lehman/SDI Inc. |
| Lehman Structured Securities Corp. |
| Lehman Syndicated Loan Funding Inc. |
| Lehman VIP Holdings Inc. |
| Lehman Wealth Services Holdings LLC |
| Leveraged Loan Trading Holdings Inc. |
| Maewha K-Stars Ltd |
| Mansfield II SARL |

| Debtor-Controlled Entities |
| --- |
| NJ Somerset Inc. |
| Novacorp Realty/GP Inc. |
| O.M.B. Limited Partner Ltd. |
| Opal Finance Holdings Ireland Ltd. |
| Palarp Asset Management Company Limited |
| PAMI Harbor Park Inc. |
| Pentaring Inc. |
| Peterborough 850 LLC |
| Phuket Capital Resort Co, Ltd |
| Picnic 1 Inc. |
| Quanta Asset Company Limited |
| Real Estate Private Equity Inc. |
| REPE LBREM LLC (f/k/a PAMI LBREM LLC) |
| REPE LBREP III LLC |
| Revival Fund Management Korea LLC |
| Revival Holdings Limited |
| Saijai Asset Company Limited |
| Security Assurance Advisers GP, LLC (f/k/a Security Assurance Advisers II GP, LLC) |
| Security Assurance Advisers, LP (f/k/a Security Assurance Advisers II, LP) |
| SOGKI Inc. |
| SOGKI Management Inc. |
| Stamford Investment Realty Inc. |
| Tallus Inc. |

| **Debtor-Controlled Entities** |
| --- |
| Thai Investor I Inc. |
| Thai Investor II Inc. |
| Thai Investor III Inc. |
| Thai Investor IV Inc. |
| Thai Investor V Inc. |
| Thai Investor VI Inc. |
| Thai Investor VII Inc. |
| Thai Investor VIII Inc. |
| Thai Investor IX Inc. |
| Thai Investor X Inc. |
| The Main Office Management Company GP, LLC (f/k/a The Main Office Management Company II GP, LLC) |
| TSAF Investor I Inc. |
| TSAF Investor II Inc. |
| TSAF Investor III Inc. |
| TSAF Investor IX Inc. |
| TSAF Investor V Inc. |
| TSAF Investor IV Inc. |
| TSAF Investor VI Inc. |
| TSAF Investor VII Inc. |
| TSAF Investor VIII Inc. |
| TSAF Investor X Inc. |
| Y.K. Alfonsino International |
| Y.K. Duckhorn |

08-01420-jmp   Doc 8785   Filed 09/26/13   Entered 09/26/13 14:18:50   Main Document
Pg 130 of 163

| **Debtor-Controlled Entities** |
|---|
| Y.K. Marlin International |
| Y.K. Meisho Estate |
| Y.K.Birch |
| Y.K.Elmwood |
| Y.K.Louise |
| Y.K. Pluto Realty |
| Y.K.Reindeer |
| Y.K.Superior |
| Y.K.Yellowtail International |

Schedule C
DUPLICATE CLAIM ACCOUNTS

| **LBHI Entity Claimant** | **Duplicate Claim Counterparty** | **Account Number** |
|---|---|---|
| Lehman Brothers Special Financing Inc. | DCI LLC as Agent for GIC | |
| Lehman Brothers Special Financing Inc. | Ross Financial Corporation | |
| Lehman Brothers OTC Derivatives Inc. | BRM Group Ltd. | |
| Lehman Brothers OTC Derivatives Inc. | Frank M Paris | |
| Lehman Brothers OTC Derivatives Inc. | Harry C Moore Tst May 19,1986 | |
| Lehman Brothers OTC Derivatives Inc. | Jason J Wallace | |
| Lehman Brothers OTC Derivatives Inc. | Louise Beale | |
| Lehman Brothers OTC Derivatives Inc. | Marie Papillon | |
| Lehman Brothers OTC Derivatives Inc. | Mark Mazzatta& Michelle Mchugh-Mazzatta | |
| Lehman Brothers OTC Derivatives Inc. | Robert A Meister | |
| Lehman Brothers OTC Derivatives Inc. | Robert A Schoellhorn Trust | |
| Lehman Brothers OTC Derivatives Inc. | Stephen & Elizabeth Mackenzie | |

Schedule D
SURVIVING CONTRACTS

1.    ALL AGREEMENTS (INCLUDING STIPULATIONS) INVOLVING ONE OR MORE
      OF THE LBHI ENTITIES AND THE LBI TRUSTEE THAT HAVE BEEN
      APPROVED BY THE BANKRUPTCY COURT IN THE SIPA PROCEEDING
      AND/OR THE CHAPTER 11 CASES

2.    ASSIGNMENT AGREEMENT, DATED SEPTEMBER 14, 2010, BETWEEN JAMES
      W. GIDDENS, TRUSTEE FOR SIPA LIQUIDATION OF LEHMAN BROTHERS INC.
      AND LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

3.    LETTER AGREEMENT, DATED NOVEMBER 4, 2011 AMENDING ASSIGNMENT
      AGREEMENT, DATED SEPTEMBER 14, 2010, BETWEEN JAMES W. GIDDENS,
      TRUSTEE FOR SIPA LIQUIDATION OF LEHMAN BROTHERS INC. AND
      LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

4.    DATA SHARING AGREEMENT BETWEEN JAMES W. GIDDENS, AS TRUSTEE
      FOR THE LIQUIDATION OF LEHMAN BROTHERS INC UNDER THE
      SECURITIES INVESTOR PROTECTION ACT AND LEHMAN BROTHERS
      HOLDINGS INC., DATED FEBRUARY 12, 2009

5.    LBI ESTATES PROTOCOL, DATED AS OF FEBRUARY 20, 2013, AMONG JAMES
      W. GIDDENS, AS TRUSTEE FOR THE LIQUIDATION OF LEHMAN BROTHERS
      INC., LEHMAN BROTHERS HOLDINGS, INC. AND LEHMAN BROTHERS
      INTERNATIONAL (EUROPE)

Schedule E
ALLOWED LBI CLAIMS AGAINST THE DEBTORS

| Debtor against which Claim is Allowed | Amount of Allowed Claim (USD) | Classification of Claim under Plan |
|---|---|---|
| Lehman Brothers Derivative Products Inc. | 10,000,000 | 4B |
| Lehman Brothers Financial Products Inc. | 721,553 | 4B |
| BNC Mortgage LLC | 966,092 | 4B |
| CES Aviation LLC | 470,254 | 4B |
| CES Aviation V LLC | 289,347 | 4B |
| CES Aviation IX LLC | 286,821 | 4B |
| **Total** | 12,734,067 | |

Schedule F
AGREED LBI RECEIVABLES FROM NON-DEBTORS

| Non-Debtor | Amount of LBI Receivables (USD) |
|---|---|
| Able Health Venture LLC | 60,959 |
| ARS Holdings I LLC | 395,120 |
| ARS Holdings II LLC | 428,611 |
| CA II LP (f\k\a Capital Analytics II LP) | 205,392 |
| CES Aviation II LLC | 269,735 |
| CES Aviation III LLC | 499,792 |
| CES Aviation IV LLC | 353,526 |
| CES Aviation VI LLC | 383,210 |
| CES Aviation VII LLC | 623,808 |
| CES Aviation X LLC | 81,902 |
| CES Aviation XI LLC | 327,940 |
| CES Aviation XII LLC | 311,458 |
| CES Aviation XIII LLC | 501,984 |
| CES Aviation XIV LLC | 283,323 |
| CES Aviation XV LLC | 243,940 |
| Diogenes Management Company Inc. | 95,499 |
| Dl Mortgage Corp. | 36,484 |
| E-Valuate GP, LLC (f/k/a E-Valuate II GP, LLC) | 413,043 |
| E-Valuate LP, LLC (f/k/a E-Valuate II LP, LLC) | 11,736 |
| GA Dekalb Inc. | 508,697 |
| Industrial Holdings Corporation | 11,918 |

| Non-Debtor | Amount of LBI Receivables (USD) |
|---|---|
| LB Burrage House Inc. | 244,573 |
| Lehman Brothers Private Funds Investment Company LP, LLC | 241,935 |
| LB Private Wealth Management, Inc. (f\k\a Executive Monetary Management Inc.) | 1,377,870 |
| LB PWC, LLC (f\k\a Sage Partners LLC (SAGNB)) | 202,014 |
| LB Renar LPGA Inc. | 244,211 |
| LBK Ribco LP | 7,796 |
| Lehman Brothers Bancorp Inc. | 20,000 |
| Lehman ABS Corporation | 103,325 |
| Lehman Brothers Communications Associates Inc | 34,668 |
| Lehman Brothers European Mezzanine Associates 2003 Ltd | 33,246 |
| Lehman Brothers India Holdings Mauritius I | 4,250,000 |
| Lehman Brothers MBLP, Inc. | 33,318 |
| Lehman Brothers Merchant Banking Advisors II Inc. | 130,194 |
| Lehman Brothers MLP Opportunity Associates LLC | 34,755 |
| Lehman Brothers Offshore Communications Associates Ltd. | 7,986 |
| Lehman Brothers Opportunity Ltd. | 10,000 |
| Lehman Brothers Private Equity Advisers LLC | 11,263 |
| Lehman Brothers Private Fund Management Company GP, LLC (f/k/a Lehman Crossroads Investment Company GP, LLC) | 14,283 |
| Lehman Brothers Venture Associates Inc. | 45,800 |
| Lehman Brothers Venture Associates V LLC | 10,943 |
| Lehman CMBS Funding Inc. | 6,385 |
| Lehman Cmo Inc. | 6,250 |

| Non-Debtor | Amount of LBI Receivables (USD) |
|---|---:|
| LIBRO Holdings I Inc. | 493,585 |
| LUBS Inc. | 306,516 |
| LW-LP Inc. | 20,228 |
| MMP Funding Corp. | 73,180 |
| Nopelo Mexico Srl De Cv | 15,310 |
| REPE LBREP II LLC (f/k/a/PAMI LBREP II LLC) | 227,113 |
| RIBCO SPC, Inc. | 6,445 |
| Royalty Asset Investment, LLC | 7,576 |
| Select Asset Inc | 6,341 |
| Structured Asset Securities Corporation II | 23,705 |
| Tax Exempt Affordable Mortgage Acceptance Company LLC | 350,996 |
| The Main Office Management Company LP (f\k\a The Main Office Management Co II LP) | 445,096 |
| W 6 Holdings LLC | 48,924 |
| Wharf Reinsurance Inc | 68,752 |
| **Total** | 15,212,659 |

Schedule G
AGREED LBI NON-DEBTORS RECEIVABLE SETTLEMENT PAYMENT ASSIGNEE

| **Non-Debtor** | **Amount of LBI Receivables (USD)** |
|---|---|
| Lehman Brothers Commercial Corporation | 7,501,385 |
| Lehman Brothers Special Financing Inc. | 498,615 |
| **Total** | 8,000,000 |

Schedule H
LBHI ENTITY ALLOWED CUSTOMER CLAIMS AGAINST LBI

| LBHI Entity | Amount of Allowed Customer Claims (USD) |
| --- | --- |
| Lehman Brothers OTC Derivatives Inc. | 1,329,000,000 |
| Woodlands Commercial Corporation | 523,056,346 |
| Lehman Brothers Special Financing Inc. | 210,000,000 |
| Lehman Brothers Holdings Inc. | 177,000,000 |
| Lehman Pass-Through Securities Inc. | 49,515,928 |
| Lehman Syndicated Loans Inc. | 17,100,000 |
| Lehman Brothers PA LLC | 13,136,732 |
| Lehman Housing Capital Inc. | 1,247,340 |
| **Total** | 2,320,056,346 |

Schedule I
LBHI ENTITY ALLOWED GENERAL UNSECURED CLAIMS AGAINST LBI

| **LBHI Entity** | **Allowed General Claims (USD)** |
|---|---|
| East Dover Limited | 9,237,182 |
| LB 745 LLC | 8,166,956 |
| Lehman Brothers Commercial Corporation | 733,000,000 |
| Lehman Brothers Commodity Services Inc. | 920,000,000 |
| Lehman Brothers Holdings Inc | 10,216,372,800 |
| Lehman Brothers Holdings Inc (JPM Subrogated Claim) | 1,500,000,000 |
| Lehman Brothers OTC Derivatives Inc. | 178,000,000 |
| Lehman Commercial Paper Inc. | 56,000,000 |
| Structured Asset Securities Corporation | 7,573,516 |
| Bromley LLC | 13,948,785 |
| Clarks Summit I, LLC | 399,797 |
| Cohane Rafferty, LLC | 3,689,746 |
| Equity Strategies Loan LLC | 59,583 |
| Global Commercial Real Estate (Cayman) Inc. | 183,951 |
| Jet Partners LLC | 16,229,729 |
| Laminar Holdings LLC | 3,309,401 |
| LB 745 Leasco I LLC | 16,827,089 |
| LB 745 Leasco II LLC | 16,460,612 |
| LB Investment Management Company Ltd (f/k/a Lehman Brothers India Holdings Cayman II) | 82,812,466 |
| LCPI Properties Inc. | 332,353 |

| LBHI Entity | Allowed General Claims (USD) |
|---|---:|
| Lehman ALI Inc | 95,075 |
| Lehman Brothers Asset Management Inc | 13,348,266 |
| Lehman Brothers Futures Asset Management Corp. | 3,053,839 |
| Lehman Brothers Global Services Ltd. | 2,911,009 |
| LB Hercules Holdings LLC | 21,800,250 |
| Lehman Brothers International Services Inc. | 71,400 |
| Lehman Brothers Investment Holding Company Inc. | 632,166 |
| Lehman Brothers Overseas Inc. | 216,510 |
| Lehman Brothers PA LLC | 5,400,000 |
| Lehman Brothers Private Fund Advisors, LP (f/k/a Lehman Crossroads Investment Advisors, LP) | 60,000 |
| Lehman Housing Capital Inc. | 4,354,925 |
| Lehman Investments Inc. | 11,505,614 |
| Lehman Pass-Through Securities Inc. | 58,271,950 |
| Lehman Residential Opportunities Corp. | 1,818,401 |
| Lehman VIP Investment LDC | 10,059,204 |
| LPJ Aircraft Finance LLC | 11,602,647 |
| Picnic II Inc. | 2,000,000 |
| Principal Transactions II Inc. | 6,611,607 |
| Property Asset Management Inc | 1,934,310 |
| Real Estate Private Equity Inc. | 260,000 |
| RIBCO LLC | 26,915,598 |
| Stockholm Investments Ltd | 2,177,869 |

08-01420-jmp    Doc 8785    Filed 02/26/13    Entered 02/26/13 14:18:50    Main Document
Pg 141 of 163

| LBHI Entity | Allowed General Claims (USD) |
|-------------|------------------------------|
| West Dover, LLC | 16,095,394 |
| **Total** | 13,983,800,000 |

Schedule J
ALLOWED SUBORDINATED CLAIMS AGAINST LBI[1]

| Claimant | Allowed Amount (USD) |
|---|---|
| LB I Group Inc. | 746,010,459 |
| Lehman Brothers Commercial Corporation | 3,300,171,192 |
| LB Funding Corp. II | 1,502,279,948 |
| Lehman Brothers Special Financing Inc. | 8,640,462,498 |
| **Total** | 14,188,924,097 |

---

[1]Included in the amounts above are subordinated claims previously allowed in the SIPA Proceeding pursuant to certain Letters of Determination issued by the LBI Trustee, dated November 5, 2010.

Schedule K
ALLOWED MISDIRECTED WIRES ADMINISTRATIVE CLAIM AGAINST LBI

| **LBHI Entity** | **Amount (USD)** |
|---|---|
| Lehman Brothers Commercial Corporation | 11,252,078 |
| Lehman Brothers Special Financing Inc. | 4,918,473 |
| Lehman Pass-Through Securities Inc. | 10,902,338 |
| **Total** | 27,072,889 |

Schedule L
## AGREED POST PETITION DIVIDENDS AND INTEREST TO BE PAID BY LBI

| LBHI Entity | Amount (USD) |
|---|---|
| Lehman Brothers Holdings Inc. | 28,860 |
| Lehman Brothers Holdings Inc. as assignee for R3 | 2,006,628 |
| Lehman Brothers OTC Derivatives Inc. | 9,892,821 |
| Lehman Brothers Special Financing Inc. | 21,940,022 |
| Lehman Pass-Through Securities Inc. | 87,556,719 |
| Woodlands Commercial Corporation | 771,349 |
| **Total** | 122,196,399 |

Schedule M
CONTROLLED ENTITY JOINDER

AMENDMENT TO SETTLEMENT AGREEMENT

Pursuant to Section 19.02 of that certain Settlement Agreement, dated February 21, 2013, between the LBI Trustee and the LBHI Entities (the "Settlement Agreement")[1], the undersigned (the "Joining Entity"), hereby agrees to join and be party to the Settlement Agreement as an LBHI Entity Releasing Party and an LBI Released Party for the sole purpose of providing and receiving the mutual releases set forth in Sections 6.01 and 6.02 of the Settlement Agreement. The Joining Entity agrees to be bound only by the terms of the Settlement Agreement set forth in Sections 6.01 and 6.02 thereof and any terms and provisions incorporated by reference in those sections of the Settlement Agreement.

[NAME OF ENTITY]

_____
By:
Title:

---

[1] Unless otherwise specified or defined herein, capitalized terms shall have the respective meanings ascribed to such terms in Section 1.01 of the Settlement Agreement.

Schedule N
Agreed PIK Notes Settlement Payees

| Agreed PIK Notes Settlement Payee | Amount (USD) |
|---|---|
| Lehman Brothers OTC Derivatives Inc. | 280,000,000 |
| Lehman Brothers Special Financing Inc. | 35,000,000 |
| Lehman Brothers Holdings Inc. | 35,000,000 |
| **Total** | 350,000,000 |

Schedule O
ADDITIONAL CUSTOMER CLAIM SECURITIES

# [TO BE FILED UNDER SEAL]

Schedule P
CUSTOMER CLAIM SECURITIES INCLUDED IN $2,320,056,346.00 VALUATION

# [TO BE FILED UNDER SEAL]

Schedule Q
DISTRIBUTION OF CASH IN RESPECT OF
LBHI ENTITY ALLOWED CUSTOMER CLAIMS

| **LBHI Entity** | **Amount (USD)** |
|---|---:|
| Lehman Brothers Holdings Inc. | 140,508,775 |
| Lehman Brothers Holdings Inc. as assignee for R3 | 69,390 |
| Lehman Brothers OTC Derivatives Inc. | 1,106,526,226 |
| Lehman Brothers PA LLC | 20,211,288 |
| Lehman Brothers Special Financing Inc. | 138,726,544 |
| Lehman Housing Capital Inc. | 1,247,340 |
| Lehman Pass Through Securities Inc. | 30,606,765 |
| Lehman Syndicated Loans Inc. | 17,100,000 |
| Woodlands Commercial Corporation | 522,426,790 |
| **Total** | 1,977,423,118 |

08-01420-jmp    Doc 8785    Filed 02/26/13    Entered 02/26/13 14:18:50    Main Document
Pg 150 of 163

Schedule R

## CERTIFICATED SECURITIES DELIVERED TO LBI OR THE LBI TRUSTEE

Stock certificates issued by the following entities:

1.  Lehman Brothers (Israel) Inc.
2.  Lehman Brothers Derivative Products Inc.
3.  Lehman Brothers Financial Products Inc.
4.  Lehman Brothers Investment Holding Company Inc.
5.  Lehman Brothers Overseas Inc.
6.  Lehman Brothers Special Financing Inc.
7.  Lehman Commercial Paper Inc.
8.  Lehman Realty & Development Corp.
9.  RIBCO SPC, Inc.
10. Lehman Brothers International Services Inc.
11. Lehman Brothers Holdings International Inc.
12. LB Leasing Inc.
13. FRAH Special Services Inc.
14. LB I Group Inc.
15. MBR/GP Corp.
16. Lehman Brothers Europe Inc.
17. Lehman Brothers Finance (Japan) Inc.

Schedule S
AFFIDAVIT OF LOST CERTIFICATE

STATE OF New York        )
                         :  ss.:
COUNTY OF New York       )

AFFIDAVIT OF LOST CERTIFICATE

The undersigned, being duly sworn, hereby declares that:

1.    On September 19, 2008, the Honorable Gerard E. Lynch, District Judge of the United States District Court for the Southern District of New York, entered the LBI Liquidation Order which, among other things, (i) appointed James W. Giddens as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI") pursuant to the Securities Investor Protection Act of 1970, as amended ("SIPA"), and (ii) removed the SIPA liquidation proceeding of LBI to the United States Bankruptcy Court for the Southern District of New York pursuant to section 78eee(b)(1) of SIPA.

2.    I am the court-approved trustee for the liquidation of the business of LBI, and I am acting solely in that capacity (and not individually) in giving this affidavit for the benefit of Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers OTC Derivatives Inc. ("LOTC", with each of LBHI, LBSF and LOTC, an "Assignee" and together, the "Assignees").

3.    The possessory collateral described in the chart below along with their corresponding transfer powers (collectively, the "Collateral") were delivered to LBI to be held as collateral security under that certain PIK Note and Security Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), dated as of September 19, 2008 and executed by Lehman ALI Inc. ("Obligor") in favor of LBI.

**Stock Certificates:**

| Issuer | Certificate No. | Registered Owner | Number and Class of Equity Interest |
|--------|-----------------|------------------|-------------------------------------|
|        |                 |                  |                                     |

4.    I have no knowledge of the whereabouts of the Collateral.  The Collateral cannot be located at the offices of LBI and is therefore assumed to have been lost, misplaced or destroyed and cannot now be produced.

5.    LBI has not nor do I have actual knowledge (after reasonably diligent search) of anyone who has, sold, assigned, pledged, transferred, deposited under any agreement or hypothecated the Collateral or any interest therein, or signed any power of attorney or any authorization respecting the same that is now outstanding and in force, or otherwise disposed of

LBI-LBHI Settlement Agreement Schedules Page 36

the same, except as provided in the Settlement Agreement by and among LBI, the Assignees and the Obligor, among others, dated as of February 21, 2013.

6.    If LBI should find or recover the Collateral, I shall promptly and without consideration surrender the Collateral to or at the direction of LBHI (or its counsel).

7.    The LBI estate will indemnify, defend and hold harmless each Assignee from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, charges and expenses of any kind which may at any time be imposed on, incurred by or asserted against such Assignee in any way relating to or arising out of the loss, misplacement or destruction of the applicable Collateral.

8.    This affidavit shall be governed by the law of the State of New York.

IN WITNESS WHEREOF, the undersigned has executed this instrument as of the date first written above.

> JAMES W. GIDDENS, AS TRUSTEE FOR THE LIQUIDATION OF LEHMAN BROTHERS, INC.
>
> By:_____
>       Name:
>       Title:

Sworn to and subscribed
before me this ____ day
of _____, 2013.

_____

**EXHIBIT C**

US_ACTIVE:\44173205\3\58399.0011

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (JMP) SIPA

## ORDER APPROVING SETTLEMENT AGREEMENT
## BETWEEN THE TRUSTEE AND THE LBHI ENTITIES

Upon the motion dated February 26, 2013 (the "Motion")[1] of James W. Giddens

(the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI")

under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), seeking, *inter*

*alia*, entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") approving the settlement and compromise entered into by the Trustee and

the LBHI Entities (collectively, the "Parties"), dated as of February 21, 2013 (as amended by

Amendment #1 to Settlement Agreement dated April 15, 2013, the "Settlement Agreement");

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with SIPA § 78eee(b)(4); and venue being proper before this Court pursuant to SIPA

§ 78eee(a)(3) and 15 U.S.C. § 78aa; and

Upon consideration of the Motion, any objections thereto, briefs and arguments of

counsel; and due and proper notice of the Motion having been provided, including in accordance

with the Amended Case Management Order, to all parties in interest, and it appearing that the

---

1.  Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement (defined below).

notice of the Motion is sufficient, adequate, and timely under the circumstances of this case and

that no other or further notice need be provided; and a reasonable opportunity to object or be

heard regarding the Motion having been given to all such parties; and a full and fair opportunity

having been afforded to litigate all issues raised in all objections, or which might have been

raised; and all objections having been withdrawn or overruled;

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.  The Parties have engaged in substantial information exchange and reconciliation with respect to

the disputes being settled pursuant to the Settlement Agreement.

B.  In evaluating the reasonableness of the settlement, the Court has taken into consideration the

Motion, as well as the supporting documentation and other evidence supplied by the Trustee.

C.  After careful consideration of the record, the Court finds that the settlement of the Parties'

disputes, including claims asserted by the Parties against each other in their respective

bankruptcy and SIPA liquidation proceedings, as reflected in the Settlement Agreement is fair

and within the range of reasonableness.  The Court has canvassed the issues to evaluate the

reasonableness of the settlement and finds that:

> a)  a full litigation of the disputes resolved by the Settlement Agreement
> would be extremely complex, protracted and expensive, and would
> significantly delay the Trustee's ability to make distributions to customers
> and creditors of the LBI estate and to complete this SIPA liquidation;
>
> b)  the Settlement Agreement is in the best interests of the LBI estate and its
> customers and creditors, is supported by good business reasons, and
> enables the Trustee to successfully complete his administration of this
> SIPA liquidation;
>
> c)  both the Trustee's counsel and the LBHI Entities' counsel have substantial
> experience and are competent in advising on complex bankruptcy and
> litigation matters and in negotiating commercial resolutions thereof; and
>
> d)  the Settlement Agreement was negotiated, proposed, and entered into by
> the Trustee and the LBHI Entities without collusion, in good faith, and
> from arm's length bargaining positions.

2

D.  Each of the releases provided for in the Settlement Agreement, which include, among other

things, releases of Causes of Action that allege alter ego, veil piercing, enterprise liability or

similar theories of liability or that otherwise seek to disregard the corporate form of LBI and

LBHI and Causes of Action brought directly, indirectly, derivatively, representatively or in any

other capacity, (i) is within the Court's jurisdiction, (ii) is essential to administering the LBI

estate, (iii) is an integral element of the Settlement Agreement and/or to its effectuation, (iv)

confers material benefits on, and is in the best interests of, the LBI estate, and (v) is important to

the overall objectives of the Settlement Agreement.

E.  The Settlement Agreement reflects an integrated and comprehensive settlement of disputes

between the Parties, including claims asserted, or that could have been asserted, by the Parties

against each other in their respective bankruptcy and SIPA liquidation proceedings, and each

component and protection contained therein and in this Order, including the releases, is an

integral part thereof.  The entry of this Order as a Final Order as described in the Settlement

Agreement is necessary for the Settlement Agreement to become effective and achieve its goals,

which are in the best interest of the LBI estate.

F.  The Settlement Agreement brings certainty to the LBI estate and will permit the Trustee to

effectively complete the SIPA liquidation proceeding of LBI.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Motion is GRANTED.

2.  Any objections to the Motion that have not otherwise been withdrawn or resolved are overruled.

3.  The Settlement Agreement, including all of its terms, covenants, waivers, releases, assignments,

distributions, conditions, and the rights, duties and obligations of the Parties set forth therein, is

approved in its entirety and shall become effective on the Effective Date as set forth in the

Settlement Agreement.

4.    The Parties are authorized to execute, deliver and carry out all transactions and perform all

actions contemplated by the Settlement Agreement in its entirety and are further authorized to

take any necessary or appropriate steps to effectuate and implement the Settlement Agreement in

accordance with its terms.  No consents are required to implement the Settlement Agreement,

this Order, or the relief provided herein.

5.    Upon the occurrence of the Effective Date:

   a.    The LBHI Entities and the Trustee shall have allowed claims against each other in the

        amounts, classifications and priorities set forth in and subject to the terms of the

        Settlement Agreement.

   b.    The Trustee is authorized and directed to make the distributions to the LBHI Entities of

        the cash and securities specified in the Settlement Agreement in respect of the LBHI

        Entity Allowed Claims in accordance with and subject to the terms of the Settlement

        Agreement.

   c.    All proofs of claim filed by the LBHI Entities against LBI and all proofs of claims filed

        by the LBI Trustee on behalf of LBI against the LBHI Entities, other than as allowed

        pursuant to the terms of the Settlement Agreement, and all other claims between the

        Parties not expressly allowed or preserved in the Settlement Agreement shall be

        expunged, disallowed, and released in accordance with the terms of the Settlement

        Agreement.

   d.    The releases set forth in the Settlement Agreement, which include the release of, among

        other things, Causes of Action that allege alter ego, veil piercing, enterprise liability or

4

similar theories of liability or that otherwise seek to disregard the corporate form of LBI

and LBHI and Causes of Action brought directly, indirectly, derivatively,

representatively or in any other capacity, are approved and, except as otherwise expressly

provided in the Settlement Agreement, shall be effective upon the occurrence of the

Effective Date.

e. In accordance with and subject to the terms of the Settlement Agreement, the Parties are

permanently enjoined from pursuing in any manner any Claims released pursuant to the

Settlement Agreement.

f. Unless otherwise provided for in the Settlement Agreement, all provisions of the

Settlement Agreement shall be binding on the Parties.

g. The Objection filed by the LBHI Entities on September 28, 2011 (ECF No. 4584) to the

Trustee's determination of their claims shall be deemed withdrawn.

h. The Trustee shall promptly file on the Court's docket notice of the Effective Date.

6. The distributions to be made by the Trustee in respect of the LBHI Entity Allowed Claims in

accordance with and subject to the terms of the Settlement Agreement will be a legal, valid, and

effective transfer of all of the legal, equitable and beneficial right, title and interest of LBI and

the Trustee in those assets, and free and clear of all liens, claims, and encumbrances.

7. All Extended Lien Claims of any Person, other than the Parties, with respect to an LBHI

Extended Lien Asset or an LBI Extended Lien Asset that are not asserted prior to this Order

becoming a Final Order shall be deemed waived and all distributions to the LBHI Entities and

the Trustee on Allowed Claims under the Settlement Agreement shall be free and clear of any

Extended Lien Claim.

5

8. Except as provided for in the preceding paragraph of this Order and Section 3.03 of the Settlement Agreement, nothing in this Order or in the Settlement Agreement affects the rights of Persons who are not Parties to the Settlement Agreement (including Duplicate Claimants, as defined in the Motion), other than with respect to the ability of all such Persons to bring derivative claims on behalf of one or more of the Parties against another Party, such non-direct, derivative claims being expressly released under the terms of the Settlement Agreement.

9. If the parties agree or in the event that (a) LOTC or LBSF, as applicable, and a Duplicate Claim Counterparty are unable to resolve a Duplicate Claim, and (b) the Bankruptcy Court determines by a Final Order that the claim of a Duplicate Claim Counterparty, and not a claim of LOTC or LBSF, should be allowed in respect of a Duplicate Claim Account (the "Allowed Duplicate Claim"), then, notwithstanding any provision in the Settlement Agreement or this Order to the contrary, the portion of the LOTC or LBSF Allowed Customer Claim or Allowed General Unsecured Claim that relates to the Allowed Duplicate Claim, and any associated distribution, shall be accordingly reduced.

10. The failure to specifically include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Trustee's implementation of the transactions contemplated in the Settlement Agreement be approved in its entirety.

11. All Persons are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Parties to transfer property and claims pursuant to and subject to the terms of the Settlement Agreement.

12. In the event of any conflict between the Settlement Agreement and this Order, the terms of the Settlement Agreement shall govern.

13. Nothing contained in any subsequent settlement, or in any other order, decision, or judgment, nor

    any act of any Party, shall alter, conflict with, or derogate from the provisions of the Settlement

    Agreement or this Order, except pursuant to (i) a successful appeal or certiorari from this Court

    or (ii) an order of this Court approving an amendment or modification to the Settlement

    Agreement as agreed by the Parties in accordance with the Settlement Agreement's terms.

14. The Court shall retain jurisdiction to hear and determine all matters arising from or related to this

    Order.

15. This Order shall be effective and enforceable immediately upon entry and shall constitute a final

    order within the meaning of 28 U.S.C. § 158(a).  To the extent applicable, Bankruptcy Rule

    6004(h) is hereby waived.


**Dated: April 16, 2013**
**New York, New York**

                                        **/s/ James M. Peck**
                                        _____
                                        **Hon. James M. Peck**
                                        **United States Bankruptcy Judge**


7

**PROPOSED ORDER**

US_ACTIVE:\44173205\3\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                    :    **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                                         :
                            **Debtors.**    :    **(Jointly Administered)**
------------------------------------------------------------------x

## ORDER GRANTING FOUR HUNDRED TWENTY-NINTH
## OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

Upon the four hundred twenty-ninth omnibus objection to claims, dated August

12, 2013 (the "Four Hundred Twenty-Ninth Omnibus Objection to Claims"), of Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors (the "Plan"),[1] in accordance with section 502(b) of title 11 of the United States Code

(the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this

Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF

No. 6664] (the "Procedures Order"), seeking disallowance and expungement of the No Liability

Claims on the basis that they assert claims against LBHI for which LBHI has no liability, all as

more fully described in the Four Hundred Twenty-Ninth Omnibus Objection to Claims; and due

and proper notice of the Four Hundred Twenty-Ninth Omnibus Objection to Claims having been

provided; and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the Four Hundred Twenty-Ninth Omnibus

Objection to Claims is in the best interests of the Chapter 11 Estates, their creditors, and all

parties in interest and that the legal and factual bases set forth in the Four Hundred Twenty-Ninth

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Four Hundred Twenty-Ninth Omnibus Objection to Claims.

Omnibus Objection to Claims establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Four Hundred Twenty-Ninth Omnibus

Objection to Claims is granted to the extent provided herein; and it is further

ORDERED that, as alleged creditors of LBI, the LBI Employees listed on

Exhibit 1 annexed hereto lack standing to assert against LBHI any alter ego claim, veil-piercing

claim, or similar claim to disregard the corporate form of LBHI or LBI, and that any such claims

are the property of the LBI estate and, as such, have been irrevocably released, discharged, and

acquitted by the LBI Trustee pursuant to the LBI Settlement; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on Exhibit 1 annexed hereto are disallowed and expunged in their entirety with prejudice;

and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of, and all rights to object and defend on any basis are

expressly reserved with respect to, any claim listed on Exhibit A annexed to the Four Hundred

Twenty-Ninth Omnibus Objection to Claims that is not listed on Exhibit 1 annexed hereto; and it

is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2013
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\44173205\3\58399.0011