WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                  :   Chapter 11 Case No.
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,           :   08-13555 (JMP)
                                                       :
                              Debtors.                 :   (Jointly Administered)
------------------------------------------------------------------x

**RESPONSE OF PLAN ADMINISTRATOR TO MOTION OF
RBC DOMINION SECURITIES INC. TO COMPEL REISSUANCE OF CHECKS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan"),[1] files this response to the motion of RBC Dominion Securities Inc. ("RBC") to compel the Plan Administrator to reissue forfeited Plan Distributions [ECF No. 39062] (the "Motion") and respectfully represents as follows:

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

**PRELIMINARY STATEMENT**

1. Epiq Bankruptcy Solutions LLC ("Epiq") mailed three Distribution checks to RBC in respect of claim no. 51231 (the "RBC Claim"). RBC did not cash the first two checks but did cash the third. All three checks were sent to the same address via first class mail. Pursuant to section 8.9 of the Plan, the funds in respect of the two uncashed checks were *irrevocably* forfeited. (Plan ¶ 8.9.)

2. RBC argues either excusable neglect or sections 105(a), 347(b), 1142(b), or 1143 of the Bankruptcy Code or Bankruptcy Rule 3021 support reissuance of forfeited Distributions; however, RBC has not alleged facts sufficient to support a finding of excusable neglect under Bankruptcy Rule 9006(b)(2), and neither the Bankruptcy Code nor the Bankruptcy Rules support the relief requested. For these reasons, the Motion should be denied.

**RELEVANT BACKGROUND**

3. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its affiliates commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4. On October 28, 2009, RBC filed the RBC Claim against LBHI.

5. Paragraph 8.9 of the Plan provides:

> Time Bar to Cash Payment Rights. Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued. *Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90 day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor and its property.*

2

(Plan ¶ 8.9) (emphasis added).

6.      On September 26, 2011, as stated in the *Declaration of Herb Baer Regarding Checks To RBC Dominion Securities Inc.* attached hereto as Exhibit A (the "Baer Decl."), Epiq Bankruptcy Solutions, LLC ("Epiq") mailed a copy of the Plan and Disclosure Statement and a ballot for voting on the Plan to RBC at the address listed on the RBC Claim. (Baer Decl. ¶4.) None was returned to Epiq as undeliverable. (*Id.*)

7.      On November 11, 2011, Epiq mailed a notice to RBC at the address listed on the RBC Claim requesting that RBC submit an Internal Revenue Service tax form (the "Tax Form"). (Baer Decl. at ¶ 3.) On December 5, 2011, Epiq received a signed Tax Form from RBC. (Baer Decl. ¶ 6.). On December 6, 2011, Epiq mailed a notice to RBC at the address listed on the RBC Claim requesting that RBC resubmit its W-8 form with an original signature. (*Id.*) The notice was not returned to Epiq as undeliverable. (*Id.*) On January 3, 2012, Epiq received a revised Tax Form with an original signature. (*Id.*)

8.      On January 19, 2012, Epiq Bankruptcy Solutions, LLC ("Epiq") mailed a *Notice of Confirmation Order* (the "Confirmation Notice") to RBC at the address listed on the RBC Claim, announcing that the Plan had been confirmed. (Baer Decl. ¶5.) The Confirmation Notice was not returned to Epiq as undeliverable. (*Id.*)

9.      On March 6, 2012 the Plan Administrator filed a *Notice of Effective Date and Distribution Date* [ECF No. 26039], announcing that the Effective Date of the Plan had occurred and that initial Distributions under the Plan would commence on April 17, 2012. On the same date, the Plan Administrator issued a press release. Both the notice and the press release were posted on the website maintained by the Chapter 11 Estates, www.lehman-docket.com (the "Website").

10. On April 11, 2012, the Plan Administrator filed a *Notice Regarding Initial Distributions* [ECF No. 27312] (the "First Distribution Notice"), specifying the percentage recovery that will be distributed to each class of Allowed Claims commencing on April 17, 2012. On the same date, the Plan Administrator issued a press release. Both the notice and the press release were posted on the Website.

11. On April 17, 2012, Epiq mailed check #2140 in the amount of $183,338.42 (the "First Check") to RBC at the address listed for payment on the RBC Claim. (Baer Decl. ¶7].) The First Check was not returned to Epiq as undeliverable. (*Id.*)

12. On July 2, 2012, Epiq mailed a personalized letter to RBC, at the address listed on the RBC Claim, offering RBC the option to have future Plan Distributions sent via wire transfer (the "Wire Solicitation Letter"). (*Id.* at ¶8.) The Wire Solicitation Letter was never returned to Epiq as undeliverable. (*Id.*) Epiq did not receive any request from RBC to have Plan Distributions sent via wire transfer. (*Id.*)

13. On September 25, 2012, the Plan Administrator filed a *Notice Regarding Second Distributions* [ECF No. 31082] (the "Second Distribution Notice"), announcing that additional Distributions under the Plan would commence on October 1, 2012 and specifying the percentage recovery that will be distributed to each class of Allowed Claims. On the same date, the Plan Administrator issued a press release. Both the notice and the press release were posted on the Website.

14. On October 1, 2012, Epiq mailed check #20931 in the amount of $123,720.37 (the "Second Check" and, together with the First Check, the "Forfeited Checks") to RBC. Epiq mailed the Second Check to the address listed by RBC for payment on the RBC Claim. (Baer Decl. at ¶9.) The Second Check was not returned to Epiq as undeliverable. (*Id.*)

4

15. On October 16, 2012, the amount represented by the First Check irrevocably reverted to LBHI pursuant to section 8.9 of the Plan.

16. On January 31, 2013, Epiq mailed a notice (the "January Notice") to the address listed by RBC for payment on the RBC Claim warning RBC that the Second Check had not been negotiated and risked forfeiture on April 2, 2013. (*Id.* at ¶10.) RBC did not respond to the January Notice. (*Id.*) The January notice was never returned to Epiq as undeliverable. (*Id.*)

17. On March 15, 2013, because RBC failed to respond to the January Notice, Epiq mailed a copy of the January Notice to the address on RBC's Tax Form. (*Id.* at ¶11].)

18. On April 2, 2013, the amount represented by the Second Check irrevocably reverted to LBHI pursuant to section 8.9 of the Plan.

19. On April 4, 2013, Epiq mailed check # 30897 in the amount of $156,267.92 (the "Third Check") to RBC. Epiq mailed the Third Check to the address listed by RBC for payment on the RBC Claim, *i.e.*, *the same address to which the Forfeited Checks were sent*. (*Id.* at ¶12.) The Third Check cleared on May 1, 2013. (*Id.*)

## RESPONSE

### I.  RBC Has Failed To Demonstrate Excusable Neglect

20. RBC argues that this Court should order the Plan Administrator to reissue the Forfeited Checks because RBC's failure to negotiate the checks resulted from RBC's excusable neglect.

21. Bankruptcy Rule 9006(b) provides that "on motion made after the expiration of the specified period [the court may] permit the act to be done where the failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). The determination of whether a claimant's neglect of a deadline is excusable is an equitable determination in which a

5

court should consider all relevant circumstances surrounding the claimant's omission, including: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Serv. Co. v. Brunswick Assocs L.P.*, 507 U.S. 380, 395 (1993).

22. In applying the *Pioneer* factors, the Second Circuit has taken a "hard line" approach that does not give the four factors equal weight, and that focuses on the third *Pioneer* factor—the reason for the delay, including whether the cause of such delay was within the reasonable control of the movant—as the most critical. *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005). The court focuses on the reason for the delay because the other factors delineated in *Pioneer* will typically weigh in favor of the movant. *Id.* at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)).

### A. Reason for the Delay

23. RBC argues as its sole reason for delay in cashing the Forfeited Checks or requesting new checks that the Forfeited Checks failed to reach RBC. As set forth below and in the Baer Declaration, both Forfeited Checks were mailed to RBC at the address set forth on the RBC Claim. The "rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States,* 285 U.S. 427, 430 (1932); *see also in re Wintrade, Inc.*, 2007 WL 3104029 at *1 (Bankr. S.D.N.Y. October 22, 2007) ("When notice is properly addressed and mailed, a rebuttable presumption of proper receipt arises.") (citing *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985); *In re Mid-Miami Diagnostics, LLP*, 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996) (collecting cases).

6

24. The Second Circuit requires more evidence than a claimant's mere denial of receipt to rebut the presumption that mail was received. *See Meckel*, 758 F. 2d at 817; *see also, In re Dana Corp.*, 2007 WL 1577763 at *4 (Bankr. S.D.N.Y. May 30, 2007) ("While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary."); *In re Enron Corp.*, 2003 WL 21756785 at *3 (Bankr. S.D.N.Y. July 30, 2003) (finding that a CFO's "self-serving declaration asserting non receipt of the Notice Package is insufficient to rebut th[e] presumption of receipt."); *Cablevision Sys. Corp. v. Malandra (In re Malandra)*, 206 B.R. 667, 673 (Bankr. E.D.N.Y.1997) (federal courts in New York "hold quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt.").

25. Courts require clear and convincing evidence of an objective nature to overcome the presumption of delivery. *Dana*, 2007 WL 1577763 at *4 (collecting cases). For example, certain courts have required evidence that "mailing was not, in fact, accomplished," *see Moody v. Bucknum (In re Bucknam)*, 951 F.2d 204, 207 (9th Cir. 1997); proof that mail was returned unclaimed, *see CUNA Mutual Ins. Group v. Williams (In re Williams)*, 185 B.R. 598, 600 (9th Cir. BAP 1995); evidence that the debtor's failure to include the correct street address or post office box would prevent the postal service from delivering the mail, *see Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992); or evidence that mail is processed pursuant to rigorous standardized operating procedures of a sophisticated institution, *compare In re STN Enterprises, Inc.*, 94 B.R. 329, 335 (Bankr. D. Vt. 1988) (testimony that creditor opens and reviews each document that he receives in the mail insufficient), *with Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dodd (In re Dodd)*, 82 B.R. 924, 928 (N.D. Ill. 1987) (testimony that large financial institution maintains rigorous procedure for sorting, routing,

7

responding to and recording notices from bankruptcy court sufficient to rebut presumption of receipt).

26. If the Forfeited Checks were lost, it was within RBC's reasonable control to request that they be reissued. RBC was aware and on notice of the first two Distributions, stating that "RBC affiliates have received a significant number of distributions in respect of their allowed claims against LBHI and its affiliated debtors." (Mot. ¶ 7.) It was also fully within RBC's reasonable control to avoid receiving checks by mail by requesting that Distributions be made to RBC by wire transfer. To date, RBC has not made such a request.

27. RBC has not submitted sufficient evidence to rebut the presumption of receipt of the Forfeited Checks.[2]

B. **Prejudice to the Debtors**

28. "Prejudice" includes not only the harm to the debtor but also the adverse impact on the judicial administration of the case. *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 1002, 1007 (S.D.N.Y. 1993); *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995). RBC does not adequately consider the effect of the relief requested in the Motion on the administration of these cases.

29. As this Court has recognized, the prejudice to the Debtors is traceable "to the impact of permitting exceptions that will encourage others to seek similar leniency." *In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010), *aff'd.* 445 B.R. 137 (S.D.N.Y. 2011). Paragraph 8.9 was incorporated into the Plan both to provide creditors with a

---

[2] The current circumstances are distinguishable from the only occasion when this Court has directed the Plan Administrator to reissue distribution checks pursuant to Bankruptcy Rule 9006(b)(2). In the instance cited by RBC at paragraph 16 of the Motion, several of the checks sent to the claimant had been returned to Epiq as undeliverable.

8

fair and reasonable opportunity (180 days) to negotiate or request a reissuance of Distribution checks, and to ensure that the assets of the Debtors could be distributed in an orderly and efficient manner. To date, approximately 380 Distribution checks have been forfeited pursuant to section 8.9 of the Plan. Certain creditors have consistently neglected to cash checks, and others, through their own negligence, are likely to do so as well. It is therefore likely that the amount of forfeited Distributions will increase after each Distribution Date. As the Debtors continue to liquidate and distribute cash, it becomes increasingly likely that funds will not be available to reissue forfeited funds. The Debtors will not always be in a position to reissue checks for all creditors who, like RBC, have failed to negotiate the checks sent to them by Epiq and have chosen not to request that Distributions be made to them via wire transfer. For the orderly administration of future Distributions in these cases, it is imperative that this Court consistently enforce section 8.9 of the Plan, particularly in circumstances such as the present where, as stated above, RBC has not demonstrated a single defensible reason for its delay in negotiating or requesting reissuance of the Forfeited Checks.

      **C.**  **Length of Delay**

    30.  RBC focuses on the few months subsequent to the January Notice, instead of the more than 15 months that have passed since RBC failed to negotiate the First Check. During these 15 months, RBC neither took note of the missing Distributions in respect of the RBC Claim nor contacted Epiq to request a reissuance of the Forfeited Checks. The length of the delay weighs against a finding of excusable neglect.

**II.**  **Bankruptcy Code Sections 105(a), 347(b), 1142(b), and 1143
and Bankruptcy Rule 3021 Do Not Support the Relief Requested**

    31.  RBC has waived its right to argue that the Plan cannot modify the five-year time period prescribed by sections 1147 and 347(b) of the Bankruptcy Code. The Plan and

9

all of its provisions are binding on RBC. *See* 11 U.S.C. 1141(a). It is well settled that once a confirmation order becomes final, it is *res judicata* and parties may no longer attack the enforceability of its provisions, even if such provisions would be vulnerable to attack prior to confirmation. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 154 (2009) (holding that broad release given to debtor's insurance carriers is not subject to collateral attack even where its scope arguably exceeds subject matter jurisdiction of the bankruptcy court); *Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938) (once an order is final, *res judicata* precludes inquiry into "erroneous judgment" of a bankruptcy court confirming a plan of reorganization); *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999) (confirmation orders are final "even if the confirmed bankruptcy plan contains illegal provisions."). The Court has already found that the Plan complies with Bankruptcy Code section 1129(a)(1), and thus all applicable provisions of the Bankruptcy Code, *see Confirmation Order* ¶ K, and the Confirmation Order, which was entered without objection, became a final, non-appealable order on December 20, 2011. RBC was served with a copy of the Plan and Disclosure Statement when it received its voting ballot. (Baer Decl. ¶4.) RBC is now barred from challenging the enforceability of section 8.9 of the Plan, having failed to raise this objection prior to confirmation.

    32.  Nonetheless, Bankruptcy Code sections 105(a), 347(b), 1142(b), and 1143 and Bankruptcy Rule 3021 do not support the relief requested.[3] To the contrary, together with the caselaw cited by RBC, they support the enforcement of the clear, mandatory language of the Plan and the established rules for an orderly distribution of the assets in these cases. The Motion, instead, requests an order directing a Distribution *in contravention* of the Plan.

---

[3] The Court has previously denied similar relief. *See Order Authorizing Plan Administrator To Reissue Distribution Checks To Traxis Fund LP And Traxis Emerging Market Opportunities Fund LP*, entered on March 28, 2013 [ECF No. 36251] (granting motion "based solely upon a funding…of excusable neglect" but denying the motion on all other grounds).

Paragraph 8.9 of the Plan requires that checks issued in respect of Allowed Claims be null and void if not negotiated within 90 days after the date of issuance thereof.  If no claim in respect of such a voided check is made on or before 180 days (approximately six (6) months) following the date of issuance of such check, the amount represented by such voided check shall irrevocably revert to the Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor and its property.  Accordingly, RBC's reliance on Bankruptcy Code sections 105(a), 347(b), 1142(b), and 1143 and Bankruptcy Rule 3021 is inapposite.

33. RBC's suggestion that sections 347(b) or 1143 of the Bankruptcy Code prevent enforcement of paragraph 8.9 of the Plan is equally misplaced.  Sections 347(b) and 1143 do not mandate a five-year window for creditors to cash checks issued pursuant to a chapter 11 plan.[4]  Indeed, all four of the cases cited by RBC make clear that such a window is an outside limit that can be reduced under the provisions of a chapter 11 plan.

34. In *In re George Rodman, Inc.*, for example, the bankruptcy court reasoned: "[t]he logic is that a period of time *not to exceed* five years from the order of

---

[4] Section 1143 provides:

> If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken *not later than* five years after the date of the entry of the order of confirmation. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

11 U.S.C. § 1143 (emphasis added).  Section 347(b) provides:

> Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9, 11, or 12 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943 (b), 1129, 1173, or 1225 of this title, as the case may be, becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be.

11 U.S.C. § 347(b).

11

confirmation *be fixed* for an entity to present itself and cash the check." *In re George Rodman, Inc.*, 50 B.R. 313, 314 (Bankr. W.D. Ok.1985) (emphasis added). Unlike the Lehman Plan, the chapter 11 Plan in *Rodman* did "not specifically deal with unclaimed property." *Id.* at 313. It was only under those circumstances, i.e., "[s]ince no period has been fixed in this case," that the bankruptcy court reasoned: "by implication the trustee holds the funds for the *maximum* period and then follows the requirements of § 347(b)." *Id* at 314. (emphasis added).

35. Likewise, in *In re TLI, Inc.*, the district court stated: "sections 347(b) and 1143 together establish an *outer limit* of five years from entry of a plan confirmation order within which a creditor required to perform an act as a condition of participating in a plan distribution must accomplish the act or relinquish its right to participate." *In re TLI, Inc.*, 213 B.R. 946, 950 (N.D. Tex. 1997) (emphasis added), *aff'd*, 159 F.3d 1355 (5th Cir. 1998). In fact, the district court noted the desirability of shortening the outer limit in liquidating cases "by confirming a plan that provides for appropriate property disposition prior to the five-year deadline." *Id.* at 955 (citing 3 COLLIER ON BANKRUPTCY ¶ 347.03[2] (Lawrence P. King, ed., 15th ed. 1996) ("The best solution may be to draft plan provisions that provide alternate dispositions of property to take effect before the time that section 347(b) would become applicable.")).

36. The bankruptcy court in *In re Sterling Financial Services of Florida - 1, Inc.* did not question the validity of a plan's claim forfeiture provision, which included a shorter timeframe than the one contained in the Plan. *In re Sterling Fin. Servs. of Florida - 1, Inc.*, 374 B.R. 327, 331-32 (Bankr. M.D. Fl. 2007). Applying the provision, the court simply was "unpersuaded that claim forfeiture has occurred pursuant to the terms of the confirmed plan." *Id.* at 332. The plan in that case imposed a "two-step process: the claimant's failure to negotiate a final distribution check within 90 days of issuance, and the failure to negotiate the check within

an additional 30 days after the reorganized debtor has given specific notice of the prospective forfeiture." *Id.* at 331. The debtor had "not offered any evidence" that the claimants were given the second 30-day notice required for forfeiture. *Id.* at 332. The decision implies that the claims would have been forfeited if the claim forfeiture provision had been fully complied with and the distribution checks had not yet been negotiated by the deadline.

37.     Finally, the bankruptcy court decision in *In re IBIS Corp.* lends no additional support to the Motion. *In re IBIS Corp.*, 272 B.R. 883 (Bankr. E.D. Va. 2001). The decision does not address a chapter 11 plan provision addressing the disposition of unclaimed funds. *See Id*. at 887 n.5 ("The confirmed plan of reorganization makes no provision for the circumstances presented by this case. It is, therefore, unnecessary to decide whether the five-year deadline can be reduced or extended in a chapter 11 plan.").

## RESERVATION OF RIGHTS

38.     The Plan Administrator reserves the right to request that the hearing to consider the Motion be adjourned to permit the Plan Administrator to take discovery in connection with the Motion and to supplement this filing as a result thereof.

US_ACTIVE:\44304827\3\58399.0011

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Motion should be denied and the Plan Administrator should be granted such other and further relief as the Court may deem just and appropriate.

Dated: August 14, 2013
      New York, New York

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

# **EXHIBIT A**

US_ACTIVE:\44304827\3\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                                        :
In re                                                                   :    Chapter 11 Case No.
                                                                        :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**                              :    08-13555 (JMP)
                                                                        :
                         Debtors.                                       :    (Jointly Administered)
                                                                        :
------------------------------------------------------------------------x

**DECLARATION OF HERB BAER**
**REGARDING CHECKS TO RBC DOMINION SECURITIES INC.**

Pursuant to 28 U.S.C. § 1746, I, Herb Baer, declare:

1. I am employed by Epiq Bankruptcy Solutions, LLC ("Epiq"), located at 757 Third Avenue, New York, New York 10017. I am over the age of eighteen years and am not a party to the above-captioned proceedings. Unless otherwise stated herein, the facts set forth in this affidavit are based upon my personal knowledge or the personal knowledge of employees of Epiq who report to me, reasonable inquiry, review by me or those who report to me of records maintained by Epiq. If called to testify, I could testify to the truth of the matters set forth herein.

2. Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (together with LBHI, the "Debtors") retained Epiq as their Claims and Noticing Agent pursuant to an Order of the Court dated September 16, 2008. Accordingly, Epiq maintains the official claims register reflecting all claims listed in the Debtor's Schedules of Liabilities, as amended, and all filed proofs of claim. Additionally, Epiq maintains a database of names and addresses of all potential creditors of the Debtors listed in their creditor matrix.

3. RBC Dominion Securities Inc. ("RBC") filed a proof of claim against LBHI, claim no. 51231 (the "RBC Claim"). On November 11, 2011, Epiq mailed a notice to RBC Dominion Securities, Attn: Lance Longmore, 277 Front Street W., 4th Floor, Toronto ON M5V 2X4, Canada, the address listed for payment on the RBC Claim, requesting that RBC submit an Internal Revenue Service tax form (the "Tax Form"). The notice was not returned to Epiq as undeliverable.

4. On September 26, 2011, Epiq served by first class mail delivery a copy of the Plan, Disclosure Statement, and a ballot for voting on the Plan to RBC Dominion Securities, Attn: Lance Longmore, 277 Front Street W., 4th Floor, Toronto ON M5V 2X4, Canada, the address listed for payment on the RBC Claim. Neither the Plan, Disclosure Statement, nor ballot were returned to Epiq as undeliverable.

5. On January 19, 2012, Epiq mailed a *Notice of Confirmation Order* to RBC at the address listed on the RBC Claim, announcing that the *Modified Third Amended Joint Chapter 11*

DECLARATION OF HERB BAER – PAGE 1

US_ACTIVE:\44306230\2\58399.0011

*Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan") had been confirmed. The notice was not returned to Epiq as undeliverable.

6. On December 5, 2011, Epiq received an Internal Revenue Service tax form from RBC (the "Tax Form"). On December 6, 2011, Epiq mailed a notice to RBC Dominion Securities, Attn: Lance Longmore, 277 Front Street W., 4th Floor, Toronto ON M5V 2X4, Canada, the address listed for payment on the RBC Claim, requesting that RBC resubmit its W-8 form with an original signature. The notice was not returned to Epiq as undeliverable.

7. On April 17, 2012, Epiq served by first class mail delivery check #2140 in the amount of $183,338.42 (the "First Check") to RBC Dominion Securities, Attn: Lance Longmore, 277 Front Street W., 4th Floor, Toronto ON M5V 2X4, Canada, the address listed for payment on the RBC Claim. The First Check was never returned to Epiq as undeliverable.

8. On July 2, 2012, Epiq served by first class mail delivery a personalized letter to RBC, at the address listed on the RBC Claim, offering RBC the option to have future Plan Distributions sent via wire transfer (the "Wire Solicitation Letter"). Epiq did not receive any request from RBC to have Plan Distributions sent via wire transfer. The Wire Solicitation Letter was never returned to Epiq as undeliverable.

9. On October 1, 2012, Epiq served by first class mail delivery check #20931 in the amount of $123,720.37 (the "Second Check" and, together with the First Check, the "Forfeited Checks") to RBC Dominion Securities, Attn: Lance Longmore, 277 Front Street W., 4th Floor, Toronto ON M5V 2X4, Canada, the address listed for payment on the RBC Claim. The Second Check was never returned to Epiq as undeliverable.

10. On January 31, 2013, Epiq mailed a notice (the "January Notice") to the address listed by RBC for payment on the RBC Claim warning RBC that the Second Check had not been negotiated and risked forfeiture. RBC did not respond to the January Notice. The January notice was never returned to Epiq as undeliverable.

11. On March 15, 2013, because RBC failed to respond to the January Notice, Epiq mailed a copy of the January Notice to RBC Dominion Securities, PO Box 50, Royal Bank Plaza, Toronto, ON M5J 2W7, Canada, which is the address on RBC's Tax Form.

12. On April 4, 2013, Epiq mailed check # 30897 in the amount of $156,267.92 (the "Third Check") to RBC Dominion Securities, Attn: Lance Longmore, 277 Front Street W., 4th Floor, Toronto ON M5V 2X4, Canada, the address listed for payment on the RBC Claim. The Third Check cleared on May 1, 2013

Executed on this 14th day of August, 2013.

/s/ Herb Baer
Herb Baer

DECLARATION OF HERB BAER – PAGE 2

US_ACTIVE:\44306230\2\58399.0011