Hearing Date: August 28, 2013 @ 10:00 a.m. (prevailing Eastern Time)
Response Deadline: August 15, 2013

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Peter Feldman
John Bougiamas
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

Attorneys for Federal Deposit Insurance Corporation
a Receiver for Westernbank Puerto Rico

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
*In re* : **Chapter 11**
:
LEHMAN BROTHERS HOLDINGS INC., *et al.* : **Case No. 08-13555 (JMP)**
:
Debtors. : **(Jointly Administered)**
:
:
---------------------------------------------------------------x

**RESPONSE OF THE FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR WESTERNBANK PUERTO RICO TO DEBTORS' ONE
HUNDRED THIRTY-EIGHT OMNIBUS OBJECTION TO CLAIMS
(NO LIABILITY DERIVATIVE CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Federal Deposit Insurance Corporation as Receiver ("FDIC-R") for

Westernbank Puerto Rico ("Westernbank"), by its undersigned counsel, hereby submits

this response (the "Response") to the One Hundred Thirty-Eight Omnibus Objection to

Claims (No Liability Derivative Claims) dated May 16, 2011 [Docket No. 16865] (the

3131493.2

"Objection"), filed by Lehman Brothers Holdings inc. ("LBHI") and its affiliated debtors in the above-captioned case (together with LBHI, the "Debtors") and respectfully states: [1]

## BACKGROUND

1. Pursuant to the Bar Date Order, on September 14, 2009, Westernbank timely filed Proof of Claim No. 12590 against LBSF (the "Westernbank Claim").[2] On May 16, 2011, the Debtors filed the Objection seeking to disallow and expunge the Westernbank Claim in its entirety.

2. The Westernbank Claim arises from certain derivative transactions between Westernbank and Lehman Brothers Special Financing, Inc. ("LBSF") that were governed by an ISDA Master Agreement dated as of October 26, 1998, as amended (with the Schedules, Annexes and Confirmations thereto, collectively, the "Master Agreement"). The Westernbank Claim is in the amount of $2,009,225, of which $1,519,650 is a secured claim arising from setoff rights and $489,575 is an unsecured claim, representing the net difference between certain collateral held by LBSF and the amount payable under the Master Agreement.

3. Pursuant to the terms of the Master Agreement, Lehman Brothers Holdings, Inc. ("LBHI") served as Credit Support Provider[3] and Guarantor under the Master Agreement.[4]

---

[1] The time for the FDIC-R to file its Response to the Objection was adjourned to August 15, 2013 at the request of the FDIC-R and with the consent of the Debtors.

[2] The Westernbank Claim amends and supersedes a prior claim filed by Westernbank against LBSF on May 4, 2009 that was assigned claim number 4120.

[3] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Master Agreement.

[4] Westernbank timely filed Proof of Claim No. 12589 against LBHI seeking recovery in an amount of $489,575 on account of LBHI's guarantee of LBSF's obligations under the Master Agreement (the "LBHI Claim"). The LBHI Claim is not the subject of the Objection.

3131493.2                                    2

4.     On April 30, 2010, Westernbank was closed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico, and the FDIC-R was appointed as Receiver. As of that date, the FDIC-R became the holder of the Westernbank Claim, as a matter of law in accordance with Title 12 of the United States Code.

## TERMINATION OF THE DERIVATIVE TRANSACTIONS

5.     On September 15, 2008, LBHI commenced its voluntary case under Chapter 11 of Title 11 (the "Chapter 11 Case"), United Sates Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

6.     Pursuant to Section 5(a)(vii) of the Master Agreement, LBHI's commencement of the Chapter 11 Case constituted an Event of Default, which, pursuant to Section 6(a) of the Master Agreement, entitled Westernbank, as the Non-defaulting Party, to designate an Early Termination Date on which all outstanding transactions under the Master Agreement would be terminated.

7.     As a result, in the exercise of its rights under Section 6(a) of the Master Agreement and in accordance with Section 12 of the Master Agreement, Westernbank delivered written notice dated September 18, 2008 to LBSF (the "Termination Notice") stating that (i) an Event of Default occurred under Section 5(a)(vii) of the Master Agreement by reason of the filing of the Chapter 11 Case by LBHI and (ii) Westernbank terminated the Master Agreement and all outstanding Transactions thereunder effective as of September 19, 2008.

8.     As of the date of the Termination Notice, Westernbank and LBSF were parties to nine derivative Transactions under the Master Agreement consisting of four

3131493.2                                                 3

callable interest rate swaps, four amortizing interest rate swaps and one amortizing interest rate swap.  Moreover, in connection with the Master Agreement, LBSF held as collateral for the Transactions a note owned by Westernbank that had been issued by the Federal Home Loan Bank in the face amount of $2 million (the "Note").  Pursuant to Paragraph 8(b) of the Credit Support Annex, Westernbank had the right to setoff against any amounts it owed to LBSF in the then current value of the Note.

## SECOND METHOD AND MARKET QUOTATION APPLIES TO DETERMINE AMOUNTS PAYABLE FOR THE TERMINATED TRANSACTIONS

9. Pursuant to Section 6(e) and Part 1(f) of the Schedule to the Master Agreement, the Second Method and Market Quotation methodology would apply to determine any amount due upon Early Termination.

10. Moreover, pursuant to Section 6(e) of the Master Agreement, upon Early Termination, as the Non-defaulting Party, Westernbank was the party charged with determining any amount due.  Specifically, Section 6(e)(i)(3) of the Master Agreement provides: "If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount (*determined by the Non-defaulting Party*) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party." (Emphasis added)[5]

---

[5] Section 14 of the Master Agreement defines "Settlement Amount" as follows: "[T]he sum of: (a) the Termination Currency Equivalent of the Market Quotations … for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation is determined; and (b) such party's Loss … for each Terminated Transaction or group of Terminated Transactions for which a Market quotation cannot be determined or would not (in the reasonable belief of the party making the determination) produce a commercially reasonable result."

3131493.2                              4

11. Section 14 of the Master Agreement, in turn, defines "Market Quotation" as an amount that is determined on the basis of quotes from Reference Market-makers of the pricing of transactions equivalent to the Terminated Transactions that would have the effect of preserving for the Non-defaulting Party the economic equivalent of any payment or delivery by the parties in respect of the Terminated Transactions. As set forth in the Westernbank Claim, as the Non-defaulting Party, Westernbank, proceeding in good faith, obtained quotes from Reference Market-makers in calculating the amounts payable under the Terminated Transactions.

### WESTERNBANK PROPERLY FOLLOWED THE PROCEDURES IN CALCULATING AMOUNTS PAYABLE FOR THE TERMINATED TRANSACTIONS

12. In accordance with the Master Agreement, following the Termination Notice, Westernbank calculated the termination value with the respect to the Terminated Transactions using the Second Method and Market Quotation procedure:

(a) Westernbank obtained quotes as of September 18, 2008 for each of the Terminated Transactions from four recognized financial institutions (Barclays, JP Morgan, Credit Suisse and Citigroup);

(b) Westernbank excluded the highest and lowest such quotes (*i.e.*, the quotes from Credit Suisse and Citigroup) and calculated the average of the remaining two quotes (*i.e.,* the quotes from Barclays and JP Morgan); and

(c) the resulting amount (*i.e.*, the average of the two median quotes) was then determined to be the value of the Terminated Transactions under the Second Method and Market Quotation procedure.

13. Based on the foregoing procedure, and as required by the Master Agreement, Westernbank determined the amount payable from the Terminated Transactions to be $1,519,650 in favor of LBSF. The Note, however, had a market value of $2,004,225 (inclusive of accrued interest of $2,975) (the "Note Amount").

14. Accordingly, pursuant to Paragraph 8(b) of the Credit Support Annex, Westernbank setoff the Note Amount from the amount that Westernbank owed LBSF. By reason of this calculation, as of the Termination Date, LBSF owed Westernbank the amount of $489,575 ($2,004,225 less $1,519,650) plus $5,000 in identifiable fees and expenses pursuant to Section 11 of the Master Agreement for a total of $489,575 (the "Termination Amount").

## THE PROOF OF CLAIM AND THE OBJECTION

15. On July 2, 2009, the Bankruptcy Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Docket No. 4271) (the "Bar Date Order"). The Bar Date Order established September 22, 2009 as the deadline to file proofs of claim (the "Bar Date").

16. Westernbank timely filed the Westernbank Claim on September 14, 2009. In addition, consistent with the requirements of the Bar Date Order, on October 19, 2009, Westernbank timely filed additional supporting information in connection with its submission of the derivative and guarantee questionnaires (together, the "Questionnaires").

17. In accordance with the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to

Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated April 19, 2010, all of the supporting information and documents that Westernbank submitted in connection with the Proofs of Claim and Questionnaires are part of the record, the FDIC-R need not resubmit them in connection with this Response, and they are deemed to be fully incorporated herein by reference.

18. On May 16, 2011, the Debtors filed the Objection seeking to disallow and expunge the Westernbank Claim. Notwithstanding the substantial evidence supporting the Westernbank Claim annexed to the Westernbank Claim and in the Questionnaires, the Debtors did not provide any evidence in support of their Objection. Rather, as their *sole* ground for the Objection, the Debtors set forth mere conclusory boilerplate, stating only that:

> After a review of the claimant's supporting documentation and the Debtors' books and records, the Debtors have determined that, based on the fair, accurate, and reasonable values of the subject Derivatives Contracts and the netting provisions thereunder, the Debtors do not owe any amounts to the claimants but rather either no amounts are owed…or the respective claimants actually owe money to the Debtors…and therefore…the [claims] do not constitute valid *prima facie* claims.

Objection at ¶¶ 2, 11.

## ARGUMENT

### THE WESTERNBANK CLAIM WAS PROPERLY CALCULATED IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT

19. The Objection should be denied. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a properly-filed proof of claim "shall constitute *prima facie* evidence of the validity and amount to the claim."

The Westernbank Claim was properly filed in a manner consistent with the Bankruptcy Rules and the Bar Date Order. Accordingly, such claim is *prima facie* valid.

20. Moreover, the validity of the Westernbank Claim is fully supported by the information and documents submitted in connection with the Questionnaires establishing that the Westernbank Claim was calculated in accordance with the Master Agreement. In particular, all of the requirements of Sections 6(e) and 6(d)(i) of the Master Agreement have been satisfied. As set forth in the Questionnaire, Westernbank properly calculated the amount payable in respect of the Westernbank Claim under the Second Method and Market Quotation, as required.

21. The Westernbank Claim retains its *prima facie* validity until an objecting party offers sufficient proof to the contrary. *See Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000), *aff'd,* 242 F.3d 367 (2d Cir. 2000) *citing In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1999) ("To overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believe, would refute at least one of the allegations essential to the claim"); *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (same); *See also*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y 2009), *aff'd sub nom. Peter J. Solomon, L.P. v. Oneida Ltd.*, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) (citations omitted) ("the objector bears the initial burden of persuasion … The burden then shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency"); *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (same).

22. The Debtors have not provided *any* evidence to rebut the *prima facie* validity of the Westernbank Claim, dispute the amount of the Westernbank Claim or otherwise shift the burden of proof to the FDIC-R. The Objection only provides the Debtors' bald, conclusory allegations. As a matter of law, that is not sufficient to overcome the *prima facie* validity of the Westernbank Claim. *See e.g.*, Bankruptcy Rule 3001(f); *Sherman v. Novak (In re Reilly)*, 245 B.R. at 773. Accordingly, the Court should deny the Debtors' Objection and allow the Westernbank Claim against LBSF in an amount of $489,575.

23. Even assuming, *arguendo*, that the Debtors were successful in their attempt to refute even a single allegation essential to the legal sufficiency of the Westernbank Claims, the FDIC-R must then be afforded the opportunity to refute the Objection and to prove that the Westernbank Claim should be allowed. *See Oneida,* 400 B.R. at 389 ("When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed"); *DJK Residential*, 416 B.R. at 105 (same); *Allegheny Int'l*, 954 F.2d at 174 ("If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to provide the validity of the claim by a preponderance of the evidence").

24. Accordingly, to the extent the court does not overrule the Objection, the Objection to the Westernbank Claim should proceed in accordance with the Court's order authorizing the Debtors to implement claims hearing procedures and alternative dispute resolution procedures for claims against the Debtors entered on April 19, 2010, as amended by Order entered on December 13, 2012 [Docket Nos. 8474 and 32212] This is

particularly appropriate in view of the failure of the Debtors to submit, as necessary, evidence in support of their Objection.

WHEREFORE, the FDIC-R respectfully requests that the Court overrule the Objection as it pertains to the Westernbank Claim and grant such other or further relief as the Court deems just and proper.

Dated: New York, New York
August 15, 2013

**OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**

 /s/ Peter Feldman
Peter Feldman
John Bougiamas
230 Park Avenue
New York, NY 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104

Counsel for the Federal Deposit Insurance Corporation as Receiver of Westernbank Puerto Rico