JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Jayant W. Tambe
Locke R. McMurray
Benjamin Rosenblum

Attorneys for Lehman Brothers Holdings Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
In re:                                                        :   Chapter 11
                                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                      :   Case No. 08-13555 (JMP)
                                                              :
                           Debtors.                           :   (Jointly Administered)
                                                              :
---------------------------------------------------------------X
                                                              :
LEHMAN BROTHERS HOLDINGS INC.,                                :
                                                              :
                           Plaintiff,                         :
                                                              :
                                                              :   Adv. Proc. No. 13-_____ (JMP)
v.                                                            :
                                                              :
DR HC TSCHIRA BETEILIGUNGS GMBH &                             :
CO KG, and KLAUS TSCHIRA STIFTUNG                             :
GGMBH,                                                        :
                                                              :
                           Defendants.         X
---------------------------------------------------------------

## ADVERSARY COMPLAINT

Lehman Brothers Holdings Inc. ("LBHI"), on behalf of itself as Plan Administrator under

the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan"), by and through its undersigned counsel, as and for its Adversary

Complaint against Defendants Dr HC Tschira Beteiligungs GmbH & Co KG ("KG") and Klaus

NYI-4509094

Tschira Stiftung GGmbH ("Stiftung," and together with KG, the "Defendants"), hereby alleges as follows:

## INTRODUCTION

1.  This adversary proceeding is brought by LBHI to avoid and recover extraordinary transfers totaling €100 million (the "Voidable Transfers")[1] made to or for the benefit of Defendants on September 12, 2008, just one business day prior to LBHI's historic bankruptcy filing. The Voidable Transfers constitute actual and constructively fraudulent transfers or, alternatively, preferential payments under the Bankruptcy Code and applicable non-bankruptcy law. LBHI also seeks to recover interest from Defendants from the date of the Voidable Transfers, as well as fees and costs. LBHI further asserts common law claims of unjust enrichment, constructive trust and fraud against Defendants, to recover the Voidable Transfers and other damages as the Court may deem just and proper.

## JURISDICTION AND VENUE

2.  This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as well as sections 541, 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code").

3.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court has retained jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraphs RR and 77 of the order confirming the Plan.

4.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] As of August 22, 2013, €100 million amounted to approximately $133,560,000. As of September 12, 2008, €100 million amounted to approximately $142,400,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1409 because LBHI's bankruptcy case is pending in this district.

6. This Court has personal jurisdiction over Defendants based on, among other things, Defendants' submission of proofs of claim in LBHI's bankruptcy case.

7. Pursuant to Defendants' agreement and an order of this Court dated August 2, 2013, Defendants' proofs of claim were withdrawn with prejudice, and this Court expressly retained jurisdiction over Defendants with respect to any affirmative claims by LBHI.

## PARTIES

8. On September 15, 2008 (the "Petition Date"), LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. LBHI's chapter 11 case has been consolidated with the other above-captioned debtors and debtors-in-possession for procedural purposes only, and those cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). LBHI is a Delaware corporation with its principal place of business located at 1271 Sixth Avenue, New York, New York 10020.

9. On December 6, 2011, the Court approved and entered an order confirming the Plan. The Plan became effective on March 6, 2012. Pursuant to the Plan, LBHI, as Plan Administrator, is authorized to prosecute litigation claims on behalf of its estate and interpose and prosecute objections to claims against the estate.

10. Upon information and belief, KG is a German limited liability company, whose office is located at Wiesenstrasse 2, 69190 Walldorf, Germany.

11. Upon information and belief, Stiftung is a German limited liability company, whose office is located at Villa Bosch, Schloss-Wolfsbrumnenweg 33, 69118 Heidelberg, Germany.

**BACKGROUND**

12.  Lehman Brothers Finance SA – Netherlands Antilles branch ("LBF") was party to certain variable forward transactions (the "Transactions") with Defendants which were governed by (i) ISDA Master Agreements dated May 16, 2007, (ii) Schedules thereto dated May 16, 2007, (iii) Credit Support Annexes to the Schedules dated July 14, 2008, and (iv) the Confirmations of the Transactions thereunder (collectively, and as amended from time to time prior to the events described herein, the "Master Agreements").[2] Defendants also entered into "tri-party" Master Custody Deeds dated May 16, 2007 (the "Custody Agreements") with (i) Lehman Brothers International (Europe) ("LBIE") as custodian and (ii) LBF, pursuant to which LBIE would hold on behalf of LBF collateral in the form of securities transferred by Defendants.

13.  The Custody Agreements also contemplated that Defendants could deposit, and Defendants had so deposited as of the time of the Petition Date, additional "free" assets with LBIE that would not be subject to a lien in favor of LBF. The "free" assets did not constitute collateral with respect to the Transactions and did not otherwise have any connection to the Transactions.

14.  Prior to the Petition Date, LBHI was LBF's Credit Support Provider under the Master Agreements, and LBHI had issued a Restated Guarantee to each Defendant dated May 15, 2008.

15.  On September 11, 2008 and September 12, 2008, LBF was "in the money" on the overall mark-to-market value of the Transactions.

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Master Agreements.

16. Upon information and belief, on or around September 11, 2008, Defendants grew increasingly concerned about the solvency and financial viability of the Lehman Brothers group of companies, including LBHI, LBF and LBIE (collectively, "Lehman"). Indeed, LBHI was already insolvent at that time.

17. On September 11, 2008 – two business days before LBHI petitioned for bankruptcy protection – representatives of Defendants contacted Lehman representatives regarding Defendants' demand for an amendment to the Credit Support Annexes, whereby LBF would transfer cash or assets to Defendants to secure LBF's prospective and inchoate obligations to Defendants that would materialize if the mark-to-market value of the Transactions swung in favor of Defendants – something which did not actually occur, nor even come close to occurring, in the period between September 11, 2008 and the Petition Date.

18. Upon information and belief, Defendants were similarly if not more concerned about the viability of LBIE and its ability to perform its obligations under the Custody Agreements in relation to Defendants' assets, which at the time consisted of materially valuable shares in SAP AG that were either (i) pledged as collateral or (ii) "free" assets that had no connection to the Transactions.

19. Among the representatives for Defendants were employees of Aeris Capital (advisors to Defendants), including Bernd Kammerlander ("Kammerlander"). In addition to having an advisory capacity, Kammerlander served as Defendants' investment manager and held a power of attorney giving him full authority to execute transactions on Defendants' behalf.

20. Upon information and belief, on September 11, 2008, Kammerlander contacted representatives of Lehman and requested an additional €300 to €400 million in collateral.

Kammerlander was assured that transferring additional collateral to Defendants was a "top priority" and that the transfer of collateral would be done "as fast as possible."

21. Kammerlander and Defendants knew there was no legitimate or contractual basis for the demand. Defendants had the right under the Credit Support Annexes to demand collateral if and only if the Transactions had a mark-to-market value in favor of Defendants. Defendants did not seek to exercise this right.

22. Instead, on September 12, 2008 – just one day after Defendants made their demand for collateral, and the last business day of Lehman's existence – Defendants and LBF entered into amendments (the "Amendments") to the Credit Support Annexes requiring LBF to post €100 million of collateral as "Independent Amounts" to Defendants.[3] The Amendments were entered into despite the facts that (i) LBF had no present obligation to post collateral to Defendants under the existing agreements, (ii) the Transactions represented an overall positive mark-to-market value in favor of LBF, (iii) LBF and LBHI received nothing of value in exchange and (iv) Defendants' obligations to LBF remained essentially the same.

23. The Voidable Transfers were truly gratuitous in the sense that they were not even made to Lehman's "mission critical" clearing banks in an attempt to preserve its on-going ability to conduct business. Defendants played no such integral role in Lehman's operations.

24. The Amendments also included an extraordinary term under which the Independent Amounts would be returned to LBF after the passage of just one week – on September 19, 2008, effectively protecting Defendants through "Lehman week-end" and its immediate aftermath while removing assets from the hands of creditors in the event of an LBHI

---

[3] Under the terms of the Amendments, LBF was required to post Independent Amounts of €54 million and €46 million to KG and Stiftung, respectively.

bankruptcy filing. If Lehman were to have been acquired or otherwise rescued, then the Independent Amounts would have been returned. If Lehman failed, the Voidable Transfers would have been – and in fact continue to be – kept by Defendants. Accordingly, the Voidable Transfers were, in essence, transfers conditioned on bankruptcy.

25. Notwithstanding LBHI's insolvency and/or undercapitalization at the time, on September 12, 2008, LBHI made the Voidable Transfers in the amount of €100 million to Defendants not on LBHI's behalf, but rather on behalf of its affiliates, LBF, and, implicitly given Defendants' concerns, LBIE. The Voidable Transfers were made from LBHI directly to Defendants' accounts.

26. Entry into the Amendments was an extraordinary transaction that was approved on an "urgent" basis at the highest levels of Lehman's management both in Europe and globally.

27. The Amendments were unique in that the Debtors are unaware of many, if any, transfers of such an amount in Lehman's derivatives book that were made by way of "urgent" amendment to a Credit Support Annex in the same period of time as when the Voidable Transfers were made.

28. In the early morning of the next business day, LBHI filed for bankruptcy relief, and the Transactions were terminated as of September 15, 2008.

29. On September 15, 2008, the Transactions had an overall positive mark-to-market value in favor of LBF, and Defendants were "out of the money" on the Transactions.

30. There was no justification for why the Amendments were executed on such an "urgent" basis before LBHI's bankruptcy petition. In addition, under the Amendments, LBF's obligation to post the additional €100 million of collateral to Defendants only existed for the

one-week period of September 12, 2008 through September 18, 2008. The only explanation for the Amendments was to provide for a transfer to Defendants conditioned on bankruptcy.

31.  Under the plain terms of the Amendments, Defendants were obligated to return the €100 million by September 19, 2008. Defendants had no legitimate basis for continuing to retain the €100 million after September 18, 2008, notwithstanding the termination of the Transactions. Defendants nonetheless continue to retain the €100 million.

32.  Accordingly, based on the above, and as set forth more fully below, LBHI transferred €100 million to Defendants (i) on the eve of Lehman's global collapse, that was (ii) conditioned on bankruptcy, (iii) on behalf of affiliate insiders, (iv) at a time when LBHI was insolvent, (v) without receiving reasonably equivalent value, and (vi) with actual intent to hinder, delay and/or defraud its creditors.

## FIRST CAUSE OF ACTION
### (Actual Fraudulent Transfer – 11 U.S.C. § 548)

33.  LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

34.  The Voidable Transfers constitute a transfer of an interest of LBHI in property.

35.  The Voidable Transfers were made by LBHI to or for the benefit of Defendants on September 12, 2008, within two years before the Petition Date.

36.  LBHI made the Voidable Transfers to or for the benefit of insiders.

37.  LBHI was insolvent at the time of the Voidable Transfers.

38.  LBHI received inadequate consideration in exchange for the Voidable Transfers.

39.  LBHI made the Voidable Transfers gratuitously and uniquely to Defendants.

40. The Voidable Transfers were made with an actual intent to hinder, delay and/or defraud LBHI's creditors. Such intent can be inferred from the badges of fraud surrounding the Voidable Transfers.

41. LBHI retained an interest in the Voidable Transfers in the sense that it anticipated return of the Voidable Transfers in one week and, therefore, the Voidable Transfers were made solely with the intent of removing assets from the hands of creditors in the event of an LBHI bankruptcy filing.

42. The threat of litigation existed at the time of the Voidable Transfers.

43. The Voidable Transfers represented an extraordinary transaction that was unusual and not customary for LBHI or its affiliates.

44. The Voidable Transfers were made close in time to LBHI's bankruptcy filing, namely, only one business day prior to the Petition Date.

45. As a result of the Voidable Transfers, LBHI and its creditors have been harmed.

46. The Voidable Transfers constitute transfers which should be avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

**SECOND CAUSE OF ACTION**
**(Constructively Fraudulent Transfer – 11 U.S.C. § 548)**

47. LBHI repeats and incorporates the allegations contained in the preceding paragraphs as if set forth fully herein.

48. The Voidable Transfers constitute transfers of an interest of LBHI in property.

49. The Voidable Transfers were made by LBHI to or for the benefit of Defendants within two years before the Petition Date

50. LBHI did not receive fair consideration, or a fair equivalent, or reasonably equivalent value in exchange for the Voidable Transfers.

51. Based on information and belief, on the date of the Voidable Transfers, (i) LBHI was insolvent, or became insolvent as a result of the Voidable Transfers, and the present fair salable value of LBHI's assets was less than the amount that was required to pay LBHI's probable liability on its existing debts as they became absolute and matured, (ii) LBHI was engaged in business or a transaction, or was about to engage in business, for which any property remaining with LBHI was an unreasonably small capital, and/or (iii) LBHI intended to incur, or believed that it would incur, debts that would be beyond LBHI's ability to pay as such debts matured.

52. The Voidable Transfers constitute transfers which should be avoided pursuant to section 548 of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
**(Actually Fraudulent Transfer – 11 U.S.C. § 544)**

53. LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

54. Pursuant to section 544(b) of the Bankruptcy Code, LBHI has the rights of an existing unsecured creditor of LBHI and is permitted to assert claims and causes of action that such a creditor could assert under applicable law.

55. On the date of the Voidable Transfers, there existed creditors of LBHI holding claims which remain unsatisfied.

56. The Voidable Transfers constitute transfers of an interest of LBHI in property.

57. The Voidable Transfers were made by LBHI to or for the benefit of the Defendants on September 12, 2008, one business day prior to the Petition Date and within the applicable limitations period.

58. LBHI made the Voidable Transfers to or for the benefit of insiders.

59. LBHI was insolvent at the time of the Voidable Transfers.

60. LBHI received inadequate consideration in exchange for the Voidable Transfers.

61. LBHI made the Voidable Transfers gratuitously and uniquely to Defendants.

62. The Voidable Transfers were made with an actual intent to hinder, delay and/or defraud LBHI's creditors. Such intent can be inferred from the badges of fraud surrounding the Voidable Transfers.

63. The threat of litigation existed at the time of the Voidable Transfers.

64. The Voidable Transfers represented an extraordinary transaction that was unusual and not customary for LBHI or its affiliates.

65. The Voidable Transfers were made close in time to LBHI's bankruptcy filing, namely, only one business day prior to the Petition Date.

66. As a result of the Voidable Transfers, LBHI and its creditors have been harmed.

67. The Voidable Transfers constitute transfers which should be avoided pursuant to section 544 of the Bankruptcy Code.

## FOURTH CAUSE OF ACTION
### (Constructively Fraudulent Transfer – 11 U.S.C. § 544)

68. LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

69. Pursuant to section 544(b) of the Bankruptcy Code, LBHI has the rights of an existing unsecured creditor of LBHI and is permitted to assert claims and causes of action that such a creditor could assert under applicable law.

70. On the date of the Voidable Transfers, there existed creditors of LBHI holding claims which remain unsatisfied.

71. The Voidable Transfers constitute transfers of an interest of LBHI in property.

72. The Voidable Transfers were made by LBHI to or for the benefit of Defendants within the applicable period pursuant to applicable law as incorporated by section 544(b) of the Bankruptcy Code.

73. LBHI did not receive fair consideration, or a fair equivalent, or reasonably equivalent value in exchange for the Voidable Transfers.

74. Based on information and belief, on the date of the Voidable Transfers, (i) LBHI was insolvent, or became insolvent as a result of the Voidable Transfers, and the present fair salable value of LBHI's assets was less than the amount that was required to pay LBHI's probable liability on its existing debts as they became absolute and matured, (ii) LBHI was engaged in business or a transaction, or was about to engage in business, for which any property remaining with LBHI was an unreasonably small capital, and/or (iii) LBHI intended to incur, or believed that it would incur, debts that would be beyond LBHI's ability to pay as such debts matured.

75. The Voidable Transfers constitute transfers which should be avoided pursuant to section 544 of the Bankruptcy Code and applicable law.

### FIFTH CAUSE OF ACTION
(Preference – 11 U.S.C. § 547)

76. LBHI repeats and incorporates the allegations contained in the preceding paragraphs as if set forth fully herein.

77. Sections 547(b) and 550(a) of the Bankruptcy Code empower a debtor in possession, for the benefit of its estate, to avoid and recover a transfer made to or for the benefit of a creditor of an interest of the debtor in property if the requirements set forth therein are met.

78. Pursuant to section 547(b) of the Bankruptcy Code, a debtor in possession may avoid any transfer of an interest of the debtor in property (a) to or for the benefit of a creditor,

(b) for or on account of an antecedent debt owed by the debtor before such transfer was made, (c) made while the debtor was insolvent, (d) made on or within 90 days, or in certain circumstances within one year, before the filing of the petition, and (e) that enables such creditor to receive more in satisfaction of its claims than it would receive in a case under chapter 7 of the Bankruptcy Code if the transfer had not been made.

79.  Further, pursuant to section 551 of the Bankruptcy Code, any preference avoidable pursuant to section 547(b) of the Bankruptcy Code is automatically preserved for the benefit of the debtor's estate.

80.  On September 12, 2008, during the 90-day period prior to the Petition Date, LBHI transferred €100 million to or for the benefit of Defendants.

81.  The Voidable Transfers were made to or for the benefit of Defendants.

82.  The Voidable Transfers were for or on account of antecedent debt owed by LBHI before such transfer was made.

83.  The Voidable Transfers were made at a time when, pursuant to 11 U.S.C. § 547(f), LBHI was presumed to have been insolvent.

84.  At the time LBHI made the Voidable Transfers to Defendants, the debts and liabilities of LBHI to Defendants were unsecured obligations.  The Voidable Transfers thus enabled Defendants to receive more in satisfaction of their claims against LBHI than they would have received in a case under chapter 7 of the Bankruptcy Code had the payments not been made.

85.  By reason of the foregoing, the Voidable Transfers should be avoided and set aside as preferential and the money transferred should be returned to LBHI.  LBHI is entitled to

recover from Defendants an amount to be determined that is not less than €100 million, plus interest thereon to the date of payment.

## SIXTH CAUSE OF ACTION
### (Recovery – 11 U.S.C. § 550)

86. LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

87. The Voidable Transfers are avoidable as actually fraudulent transfers pursuant to section 548(a)(1)(A) and 544 of the Bankruptcy Code.

88. The Voidable Transfers are also avoidable as constructively fraudulent transfers pursuant to section 548(a)(1)(B) and 544 of the Bankruptcy Code.

89. Alternatively, the Voidable Transfers are avoidable as preferential transfers pursuant to section 547(b) of the Bankruptcy Code.

90. The Voidable Transfers were made to or for the benefit of Defendants.

91. Alternatively, Defendants constituted subsequent transferees of the Voidable Transfers.

92. Accordingly, pursuant to section 550 of the Bankruptcy Code, LBHI is entitled to recover from Defendants the value of the Voidable Transfers, plus interest from the date of the Voidable Transfers, and costs and fees.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

93. LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

94. One business day before LBHI's bankruptcy, Defendants demanded and received €100 million of collateral from LBHI without legitimate justification. Defendants have therefore

benefitted in the amount of millions of dollars at the expense of LBHI, and Defendants have knowledge thereof.

95. LBF and LBHI received nothing of value in exchange for LBHI's transfer of €100 million to Defendants.

96. Defendants voluntarily accepted and continue to retain the benefit of the €100 million.

97. As a result of the foregoing, Defendants have been unjustly enriched, and LBHI has been damaged, in an amount to be determined at trial. Equity and good conscience demand the return of these LBHI assets to LBHI, or an award of damages equivalent to the value of such assets. LBHI is also entitled to any and all damages that resulted from Defendants' unauthorized and unlawful withholding of these assets.

### EIGHTH CAUSE OF ACTION
**(Constructive Trust)**

98. LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

99. On September 11 and 12, 2008, in the context of the close and confidential relationship between Defendants and LBF, Defendants demanded that LBF enter into the Amendments and transfer €100 million in LBHI assets to Defendants.

100. In connection with this demand, Defendants agreed in the Amendments that they would return the €100 million to LBHI by September 19, 2008.

101. In reliance upon Defendants' representation that they would return the €100 million by September 19, 2008, LBF agreed to the Amendments and LBHI transferred the €100 million in LBHI assets.

102. Defendants refuse to return the €100 million to LBHI. To date, Defendants are unjustly enriched by their continued and wrongful withholding of €100 million in LBHI assets.

103. The €100 million is property of LBHI's estate because Defendants hold such funds in a constructive trust for LBHI.

104. Defendants are in possession, custody and/or control of the €100 million, which is of substantial value or benefit to LBHI's estate and which is property belonging to LBHI that may be used, sold or leased by LBHI. Defendants should be ordered to turn over the €100 million to LBHI immediately.

### NINTH CAUSE OF ACTION
### (Fraud)

105. LBHI repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

106. As described above, on September 11 and 12, 2008, Defendants demanded that LBF enter into the Amendments and, as a result, LBHI transferred €100 million to Defendants.

107. LBF was not obligated to enter into the Amendments. However, to induce LBF to enter into the Amendments, and to induce LBHI to transfer the collateral, Defendants represented that the €100 million in LBHI assets would be returned by September 19, 2008, and this representation was memorialized in the Amendments themselves.

108. In reliance on Defendants' representations, LBF agreed to the Amendments and LBHI agreed transfer €100 million to Defendants.

109. At the time Defendants made these representations and induced LBHI to post the €100 million as collateral, Defendants had no intention of returning the €100 million to LBHI.

110. As a result, LBHI has been damaged is entitled to an award of damages in the amount of €100 million, as well as all other damages resulting from Defendants' misconduct, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that judgment be entered as follows:

(1)  Avoiding the Voidable Transfers;

(2)  Directing Defendants to pay to LBHI the amount of the Voidable Transfers, in an amount to be determined at trial that is not less than €100 million;

(3)  Awarding interest in an amount to be determined at trial;

(4)  Awarding costs and fees in an amount to be determined at trial; and

(5)  Awarding such further relief as the Court deems just and proper.

Dated: August 23, 2013  
New York, New York

Respectfully submitted,

JONES DAY

*/s/ Jayant W. Tambe*  
Jayant W. Tambe  
Locke R. McMurray  
Benjamin Rosenblum  
222 East 41st Street  
New York, New York  10017  
Telephone:  (212) 326-3939  
Facsimile:  (212) 755-7306

*Attorneys for Lehman Brothers Holdings Inc.*