```
                                              Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555 (JMP)

4    Case No. 08-01420 (JMP)(SIPA)

5    Adv. Case No. 09-01032

6    - - - - - - - - - - - - - - - - - - - - - - - - - x

7    In the Matter of:

8

9    LEHMAN BROTHERS HOLDINGS, INC., et al.

10

11          Debtors.

12   - - - - - - - - - - - - - - - - - - - - - - - - - x

13   In the Matter of:

14

15   LEHMAN BROTHERS, INC.,

16

17             Debtor.

18   - - - - - - - - - - - - - - - - - - - - - - - - - x

19   In the Matter of:

20   LBSF,

21                 Plaintiff,

22          v.

23   BALLYROCK ABD CDO 2007-1 Limited, et al.,

24                 Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - x
```

1

2                    U.S. Bankruptcy Court

3                    One Bowling Green

4                    New York, New York

5

6                    August 21, 2013

7                    10:10 AM

8

9    B E F O R E :

10   HON  JAMES M. PECK

11   U.S. BANKRUPTCY JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1     Hearing re: Motion for Approval of Partial Settlement

2     Agreements Relating to Certain Credit Default Swap

3     Agreements and Indentures [ECF No. 38757]

4

5     Hearing re:  LBSF v. Ballyrock ABD CDO 2007-1 Limited and

6     Wells Fargo Bank, N.A., Trustee [Case No. 09-01032], Motion

7     to Compel Barclays Bank, PLC, Long Island International

8     Limited for the Production of Documents

9

10    Hearing re:  Motion of Fidelity National Title Insurance

11    Company to Compel Compliance with Requirements of Title

12    Insurance Policies [ECF No. 11513]

13

14    Hearing re:  Motion of Giants Stadium LLC for Leave to

15    Conduct Discovery of LBI Pursuant to Federal Rule of

16    Bankruptcy Procedure 2004 [ECF No. 36874]

17

18    Hearing re: Motion of RBC Dominion Securities Inc. to Compel

19    Lehman Brothers Holdings, Inc. to Reissue Checks for Allowed

20    Claim [ECF No. 39062]

21

22    Hearing re:  Motion of FirstBank Puerto Rico for (1)

23    Reconsideration, Pursuant to Section 502(j) of the

24    Bankruptcy Code and Bankruptcy Rule 9024, of the SIPA

25    Trustee's Denial of FirstBank's Customer Claim, and (2)

Page 4

1    Limited Intervention, Pursuant to Bankruptcy Rule 7024 and

2    Local Bankruptcy Rule 9014-1, in the Contested Matter

3    Concerning the Trustee's Determination of Certain Claims of

4    Lehman Brothers Holdings, Inc. and Certain of Its Affiliates

5    [LBI ECF No. 5197]

6

7    Hearing re:  Trustee's Eighty-Second Omnibus Objection to

8    General Creditor Claims (No Liability Claims) [LBI ECF No.

9    6373]

10

11   Hearing re:  Trustee's Eighty-Fifth Omnibus Objection to

12   General Creditor Claims (Amended and Superseded Claims) [LBI

13   ECF No. 6426]

14

15   Hearing re:  Trustee's Eighty-Seventh Omnibus Objection to

16   General Creditor Claims (No Liability Claims) [LBI ECF No.

17   6556]

18

19   Hearing re:  Trustee's Eighty-Eighth Omnibus Objection to

20   General Creditor Claims (No Liability Claims) [LBI ECF No.

21   6566]

22

23   Hearing re:  Trustee's Ninety-Fifth Omnibus Objection to

24   General Creditor Claims (No Liability Claims) [LBI ECF No.

25   6682]

Page 5

1

2    Hearing re:  Trustee's Ninety-Seventy Omnibus Objection to

3    General Creditor Claims (No Liability Claims) {LBI ECF No.

4    6684]

5

6    Hearing re:  Trustee's Ninety-Eighth Omnibus Objection to

7    General Creditor Claims (No Liability Claims) [LBI ECF No.

8    6699]

9

10   Hearing re:  Trustee's Objection to General Creditor Proof

11   of Claim of Riverside Holdings, L.L.P. (Claim No. 9004770)

12   [LBI ECF No. 6389]

13

14   Hearing re:  Trustee's One Hundred First Omnibus Objection

15   to General Creditor Claims (Employee Equity Claims) [LBI ECF

16   No. 6728]

17

18

19

20

21

22

23

24

25   Transcribed by:  Pamela A. Skaw

Page 6

1    A P P E A R A N C E S :

2    WEIL GOTSHAL & MANGES, LLP

3         Attorneys for Debtor

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:  RICHARD W. SLACK, ESQ.

8         CANDANCE M. ARTHUR, ESQ.

9

10   CHAPMAN AND CUTLER, LLP

11        Attorney for U.S. Bank National Association as Trustee

12        111 West Monroe Street

13        Chicago, IL 60603

14

15   BY:  FRANKLIN H. TOP, III, ESQ.

16

17   SIDLEY AUSTIN LLP

18        Attorneys for Black Rock Mortgage

19        787 Seventh Avenue

20        New York, NY 10019

21

22   BY:  NICHOLAS CROWELL, ESQ.

23        ALEX J. KAPLAN, ESQ.

24

25

Page 7

1   SULLIVAN & CROMWELL, LLP

2        Attorney for Barclays Capital Inc. and Long Island

3        International LLC

4        125 Broad Street

5        New York, NY 10004

6

7   BY:  ROBINSON B. LACY, ESQ.

8

9   ALSO APPEARING:

10  H.D. CHRISTIAN (TELEPHONIC)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All right. Be seated, please.

3              MS. ARTHUR:  Good morning.

4              THE COURT:  Good morning.

5              MS. ARTHUR:  Good morning, Your Honor.  For the

6    record, Candace Arthur of Weil, Gotshal & Manges on behalf

7    of Lehman Brothers Holdings Inc. as plan administrator.

8              Your Honor, as reflected on the agenda, the first

9    matter before the Court today is the plan administrator's

10   motion on behalf of itself and Lehman Brothers Special

11   Financing, Inc., which I'll refer to LBSF moving forward,

12   seeking approval of five partial settlement agreements.

13             Each of the agreements, in and of themselves,

14   resolve disputes relating to credit default swap

15   transactions.

16             Your Honor, before discussing the substance of the

17   relief requested in the motion, I would like to note for the

18   Court that although the agenda lists the motion under

19   contested matters, it is the plan administrator's position

20   that the objecting noteholder, Canyon Value Realization Fund

21   LP is essentially opting out of one of the five settlement

22   agreements and is not objecting to the relief requested in

23   the motion.

24             Effectively, the motion before the Court today is

25   actually uncontested and the noteholder is specifically

Page 9

1    requesting to be carved out of the Axim (ph) Ridge CBO 2007-

2    1 settlement agreement, pursuant to the terms provided in

3    the agreement for those noteholders that are objecting to

4    the terms of the settlement.

5              By way of background, Your Honor, each settlement

6    agreement is among LBHI, LBSF, the U.S. Bank National

7    Association, solely in its capacity as Trustee under certain

8    indentures, and the various entities referenced in the

9    motion as either issuer or a co-issuer.

10             Each settlement agreement will allow LBSF to

11   capture a substantial amount of the value of these

12   transaction and the notes that it owns for its estate.

13             Given that we have come before the Court to seek

14   approval of very similar settlement agreements, I realize

15   that the Court is familiar with the terms of the agreements

16   themselves, but to just briefly highlight the salient

17   points.

18             The issuer and the trustee shall redeem or

19   otherwise liquidate the collateral held in their position

20   and deposit the net proceeds for later distribution in

21   accordance with order priority and procedures set forth in

22   the respective settlement agreements.  The proceeds are to

23   be used to satisfy any outstanding fees and expenses of the

24   trustee to pay each noteholder, other than LBSF, that does

25   not object to the settlement, an amount specified in the

Page 10

1    agreement in full satisfaction of their claims.  Create an

2    interest bearing account in a set amount reserved for

3    certain of the trustee's fees and expenses.  Create an

4    escrow amount securing payment of the claims of any

5    objecting noteholder and, subject to certain conditions, to

6    pay the remaining amount of proceeds to LBSF.

7         Of the notes that LBSF does not hold, it agrees

8    that it will not assert it is entitled to be paid on a

9    senior or power to sue basis with such notes.  LBSF has,

10   however, reserved its right to assert that it is entitled to

11   be paid certain amounts owed under the notes that it owns on

12   a junior basis, to those notes it does not own, in a certain

13   amount.

14        Although the terms of each settlement agreement

15   are virtually identical, each agreement is separate from the

16   other and the amounts that are placed in the reserve or

17   escrow accounts will be separate for each of the five

18   transactions and the conditions to effect (indiscernible -

19   00:03:18) agreements, may actually vary as well.

20        Your Honor, it is the plan administrator's

21   position that each of the settlement agreements were entered

22   into in good faith and negotiated at arm's length.

23   Additionally, we believe that each of the five agreements

24   are fair and equitable, well within the range of

25   reasonableness and are in the best interests of LBSF's

Page 11

1    estate and its creditors.

2              Unless the Court has any questions, the debtors

3    respectfully request entry of an order approving the motion.

4              THE COURT:  My principal question probably can't

5    be answered on the public record and may require a chambers

6    conference.

7              The motions, the supporting papers, the

8    declarations, even the positions filed by U.S. Bank National

9    Association in support of all of their efforts to notify

10   noteholders are opaque as it relates to the economics of the

11   transaction and the benefits to the estate.

12             And so even though you characterize this as

13   uncontested, I don't have any information concerning the

14   actual benefit to the estate associated with the proposed

15   settlements.  I'm perfectly prepared to approve them but

16   will need some more information.

17             In the past, unredacted copies of settlement

18   agreements have been furnished to chambers.  We couldn't

19   find such materials.  I don't know if they were delivered or

20   not, but they weren't brought to my attention.  And so I'm

21   going to need to speak with representatives of both the

22   debtors and U.S. Bank, if U.S. Bank wishes to participate,

23   so that I'm provided with the information I need to better

24   understand what's going on here.

25             MS. ARTHUR:  We understand.  I do have extra

Page 12

1    copies of the settlement agreements.  We provided the United

2    States Trustee, counsel for the creditors committee, and

3    chambers copies of the settlement agreements on August 14th.

4    However, I do agree that, to the extent that Your Honor

5    doesn't have the economics, that it would probably be in the

6    best interests for us to meet and discuss it and provide you

7    with a copy to review as well.

8            THE COURT:  Okay.  My suggestion then and I'll

9    hear from counsel for U.S. Bank in the moment.  I see that

10   he's standing.  My suggestion is that we complete the public

11   portion of the hearing, including the status conference with

12   respect to Ballyrock, and then simply go off the record and

13   clear the courtroom to the extent appropriate so that I can

14   then be advised as to what's going on with regard to this

15   motion for partial settlement.

16           And there'll be no need for further on the record

17   presentations.  I treat the papers as supporting approval.

18   I simply need to know more so that I can confirm that I'm

19   going to enter an order approving this.

20           MS. ARTHUR:  Thank you, Your Honor.

21       (Pause)

22           MR. TOP:  Your Honor, Frank Top on behalf of U.S.

23   Bank National Association as trustee for five of these cash

24   hybrid transactions that are before this Court today.

25           In fact, these settlements will fully resolve

Page 13

1   three, if not four, of the transactions entirely.  So, while

2   it's been characterized as partial, that was to enable

3   noteholders to opt out of the settlement if they so chose --

4   choose to do so.  While we heard from a number of

5   noteholders with respect to the resolution, only one

6   noteholder advised the trustee that they had an objection

7   and that was the Axim 2007-1 transaction.

8           I subsequently learned that he may have another

9   position in another one of these transactions.  He only

10  directed us to file an objection on one.  I'm not sure

11  whether he even has that position or whether he intended to

12  object with respect to the other ones.  That's another thing

13  that I would like to determine.

14          But that doesn't affect the (indiscernible -

15  00:07:47) or anything like that.  At worst, all they'd

16  become is an objecting noteholder and it's governed by the

17  terms of the settlement agreement and reserves are going to

18  be held with respect to all objecting noteholders.  That's

19  if they ultimately prevail in the litigation, they would be

20  paid their principal and interest, in full.

21          THE COURT:  Your objection on behalf of the

22  noteholder does not provide any grounds for the objection.

23  It simply states that there is an objection.  I -- are you

24  aware of any grounds for the objection?

25          MR. TOP:  The only ground for the objection is

Page 14

1    that they were not happy with the settlement amount, which

2    is their prerogative.  They don't have to accept the amount.

3    They can choose not to accept it and they just become an

4    objecting noteholder and are subject to mediation,

5    litigation or whatever.

6              THE COURT:  Okay.  And -- I won't ask more

7    questions about it.  That's fine.  Thank you.

8              MR. TOP:  Thank you, Your Honor.

9              THE COURT:  So is there anyone else who wishes to

10   be heard with regard to this motion for approval of a

11   partial settlement?

12        (Pause)

13             THE COURT:  I'm going to treat the record as

14   closed with the understanding that certain information

15   relating to the economics of the settlement will be provided

16   to me privately, consistent with the confidential nature of

17   various aspects of the settlement.

18             But unless I hear something that would cause me to

19   question the business judgment of the debtors in entering

20   into these arrangements, for record purposes, these are all

21   going to be approved and I will enter an order subject to my

22   being provided with the information off the record.

23             We can move on to the next matter.

24        (Pause)

25             MR. SLACK:  Good morning, Your Honor.

Page 15

1    Richard Slack from Weil, Gotshal for the debtors.

2              The next matter, as Your Honor pointed out, is the

3    Ballyrock status conference.  You had asked the parties to

4    get together and discuss two things.  One is whether the

5    action overall can be settled and the second is whether

6    there is a way of resolving the privilege motion that had

7    been brought.

8              The parties have done both and I can talk to both

9    of those.  So, with respect to the settlement piece, at Your

10   Honor's urging the parties have met and have actually had

11   very productive settlement discussions that are ongoing.

12             THE COURT:  Good.

13             MR. SLACK:  With respect to the privilege motion,

14   we've also had simultaneous discussions and there have been

15   a number of creative proposals that have been exchanged and

16   the parties are working through those.  I'm optimistic that

17   we can and will reach an agreement on it.  But we haven't

18   yet.

19             THE COURT:  When you say you're optimistic that

20   you can reach an agreement on it --

21             MR. SLACK:  On the --

22             THE COURT:  -- do you mean to say that there may

23   be a consensual resolution of all of the issues that were

24   briefed and argued or are you saying that you're optimistic

25   that the issues before the Court will be, in some fashion,

Page 16

1   streamlined or limited?

2            MR. SLACK:  I believe that if the proposals we're

3   talking about now get agreed to in some fashion that they

4   will resolve the motion entirely at this point.

5            THE COURT:  Great.

6            MR. SLACK:  So -- and I really don't want to go

7   through the discussions.  Obviously, there might be some

8   things that are deferred but I think the motion would be

9   withdrawn is my understanding as to how our discussions are

10  going right now.

11           THE COURT:  Okay.  I'll give Mr. Lacy an

12  opportunity to comment, if he wishes to.  But I'm interested

13  just for docket control purposes and understanding what the

14  likely timing is both with respect to a comprehensive

15  resolution to the extent that's feasible and this more

16  narrow question involving discovery.

17           MR. SLACK:  I'm not sure that it's something that

18  I can address in terms of timing, at least as to the overall

19  settlement.  The parties are still discussing and having

20  discussions and, as I've said, they've been productive.  But

21  I wouldn't venture a guess as to whether they're going to

22  stall or whether they're going to keep moving.  I don't

23  really have a crystal ball on that.

24           With respect to the privilege motion, we have

25  presented a proposal, a fairly detailed proposal, recently

Page 17

1   to counsel for Barclays and Black Rock and, again, I'm

2   optimistic because we've had some prior discussions and we

3   tried to be true to those discussions.  So, we'll -- I

4   assume we'll be getting some kind of a response to that in

5   the near future and hopefully it will be a positive one and

6   that can move more quickly.

7           THE COURT:  Okay.  Thank you.

8           Does anyone else wish to say anything?

9       (Pause)

10          MR. LACY:  Your Honor, Robinson Lacy from Sullivan

11  & Cromwell for Barclays Capital and Long Island

12  International.

13          I am in general agreement with everything

14  Mr. Slack has said.  I do want to clarify that -- you'll

15  recall that Your Honor's suggestion concerning the motion to

16  compel involved trying to -- I think you said de-mist the

17  issue of the timing of the petitions and you had observed

18  that a certain amount was known and I think you at least

19  understood that a certain amount could be determined by

20  testimony.

21          The discussions we're having concerning the

22  privilege motion would, I think, totally resolve the other

23  branch, which is the motion to compel production of

24  documents concerning the structuring of the transactions,

25  things that happened in 1997.

1           Whether or not it will resolve the branch having

2    to do with the timing depends on what people say.  And we

3    don't know what they're going to say yet.  So at least some

4    of them are going to be LBSF's witnesses.

5           So I don't -- I'm not quite as optimistic as

6    Mr. Slack that the entire motion would get resolved as a

7    result of these procedures.  But they will certainly make --

8    we will certainly accomplish a great deal if we can get this

9    worked out.

10          THE COURT:  Accomplish as much as you can.

11      (Pause)

12          MR. CROWELL:  Good morning, Your Honor.

13   Nick Crowell from Sidley Austin for Black Rock.

14          I generally agree with what Mr. Slack said as

15   well.  We have made progress as far as the global resolution

16   of the case with respect to my client.  However, the only

17   thing I will add is that, as far as I know, the negotiations

18   between, at least, my client and Lehman have stalled at this

19   point.  So I'm hoping that they will pick back up again.

20   But at this point, they have stalled.  So I just wanted to

21   make the Court aware of that.

22          THE COURT:  Okay.  Before you step away, this is

23   just a general question.  I take it that the conversations

24   relating to what we're terming a global resolution are

25   happening directly and that -- do not involve mediation, at

Page 19

1    the moment?

2              MR. CROWELL:  My understanding is they're

3    happening directly between business people from my client

4    and from Lehman.  That is correct.

5              THE COURT:  Okay.  And I'm just going to ask a

6    question more generally for the parties who've been involved

7    in these conversations, as to whether it would be productive

8    to return to mediation or is sufficient progress being made

9    despite the fact that there's a current stall, that the

10   parties believe that they're capable of moving the process

11   forward through their own efforts.

12             MR. CROWELL:  I would put that question to

13   Mr. Slack.  I hope so, but I would put that question to him.

14             MR. LACY:  Your Honor, I'll say that because it's

15   -- because these negotiations are conducted by business

16   people, it tends to be sort of one defendant at a time.  So

17   sometimes we don't hear anything and Mr. Crowell's client is

18   talking.  Sometimes he doesn't hear anything, and my client

19   is talking.

20             I think this week is my client's time to talk and

21   I think that's probably the sense of stalling that he's

22   getting.  But the discussions are, in fact, going on

23   actively with Barclays.  I don't think a mediator would be

24   able to contribute anything at this stage.

25             THE COURT:  Okay.  So --

Page 20

```
 1              MR. SLACK:  I mean, Your Honor, the only thing

 2    I --

 3              THE COURT:  -- everybody's a little bit in the

 4    dark it seems.

 5              MR. SLACK:  No, the only thing I would add is that

 6    my understanding is that the negotiations are ongoing with

 7    both parties and so I'm surprised to hear that the

 8    negotiations have stalled.  That's not my understanding

 9    coming in.  But we had had a global meeting and then, Your

10    Honor, the principals have essentially been talking.  And

11    again I think they've been productive.

12              But the lawyers, I assume, are all getting reports

13    but have not been directly involved and so I think that's

14    the -- you know, that's been the process that we've had.  I

15    can tell you from the debtors' standpoint that if these were

16    to stall, we would -- we've found mediation to be helpful in

17    many circumstances, as Your Honor knows.

18              What I would say here is that I think, right now,

19    the negotiations are proceeding quicker outside of mediation

20    because in order for us to set a mediation date with our

21    very busy mediators would be sometime in the future.  So I

22    wouldn't want to stop in order to do that.  And if they do

23    stall, that's something I would certainly be willing to

24    discuss with both parties.

25              MR. LACY:  I completely agree with that position.
```

```
 1            THE COURT:  Okay.  I only brought up the issue of

 2     mediation in part because of the reference to the

 3     discussions having stalled and I'm now understanding that it

 4     may simply be that the discussions are not entirely visible

 5     to counsel.

 6            MR. CROWELL:  That may be the case, Your Honor.

 7     But I think it's more likely what Mr. Lacy said, which is

 8     that perhaps it's Barclays week and not my client's week.

 9        (Laughter)

10            THE COURT:  Okay.  And I take no position on

11     whether it's desirable for these conversations to be

12     happening separately as opposed to collectively and I

13     presume that people are acting in a way that fits their

14     respective schedules and their views as to how to deal with

15     these difficult questions as productively as possible from a

16     business perspective.  I do not want to intrude on that at

17     all.

18            However, I do wish to have some docket control

19     over this and will ask even now for some guidance as to when

20     you think it would be reasonable for there to be a follow up

21     report concerning progress and status -- 30 days, 45 days,

22     60 days?

23            MR. CROWELL:  I would prefer a shorter period of

24     time, say 30 days, at least for my client.

25            MR. SLACK:  That's acceptable, Your Honor.  We can
```

Page 22

1    certainly report back at the next omnibus.

2            MR. LACY:  That is also our preference.

3            THE COURT:  Okay.  Fine.

4            So, why don't we do this?  This doesn't need to be

5    on the record if you're still satisfied that you're making

6    good progress.  And my recollection is that during the

7    Ballyrock mediation, which took place a number of years ago,

8    we had a process of periodic telephonic status reports.  I

9    don't think I'm confusing Ballyrock with another case, but

10   it's possible.

11           Mr. Lacy, do you recall that -- that we --

12           MR. LACY:  It wasn't during the mediation.  It was

13   during the pendency of the motion to dismiss.  But that is

14   correct.  We had -- I think every two or three weeks, we

15   were having telephone calls.

16           THE COURT:  We had periodic discussions in which

17   we didn't in any way discuss the substance of the

18   negotiations that were ongoing, but I was being provided

19   with information concerning the ongoing discussions and

20   whether or not progress was being made.  And maybe we can

21   adopt the same general approach now and have a telephone

22   conference in approximately 30 days that you can arrange

23   directly with my law clerks, at a time that works for

24   everybody.  And the timing on this is approximate.  It

25   doesn't need to be exactly 30 days.  It may turn out to be

Page 23

1  35 days, or 26 days.  It doesn't matter.  But that's the

2  general time frame.

3          MR. LACY:  Fine.  That works.

4          MR. SLACK:  Certainly that works.

5          THE COURT:  Okay.  And then if there's a

6  breakdown, or there's a need for putting anything on the

7  record, we can always schedule that.

8          All right.  Thank you very much.  I appreciate the

9  update.

10      (Chorus of thank you)

11          THE COURT:  And then I'm going to suggest that

12  everybody here who's involved in Ballyrock, other than

13  Mr. Slack, who's certainly welcome to stay, will be excused

14  and then we're going to go off the record and have a

15  conversation about the details of the settlement discussed

16  earlier this morning.

17      (Whereupon these proceedings were concluded at 10:34

18  AM)

19

20

21

22

23

24

25

Page 24

1                    C E R T I F I C A T I O N

2

3    I, Pamela A. Skaw, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6

7

8        Pamela A          Digitally signed by Pamela A Skaw
                            DN: cn=Pamela A Skaw, o, ou,
                            email=digital1@veritext.com,
9        Skaw               c=US
                            Date: 2013.08.22 17:16:57 -04'00'

10

11

         Veritext
12

         200 Old Country Road
13

         Suite 580
14

         Mineola, NY 11501
15

16

17

         Date:  August 22, 2013
18

19

20

21

22

23

24

25