

FRANK TOLIN JR. (Pro Se)
3713 Bloomfield Ln
Frisco, Tx. 75033
Telephone (917)-670-2165
Facsimile: (469)-200-4591

UNITED STATES BAKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

In reply to:                          :        **Chapter 11**
                                      :        **Case No. 08-13555 (JMP)**
                                      :
**LEHMAN BROTHERS HODLINGS INC., et al.** :
**Administered)**                              **(Jointly**
                                      :
                Debtors.              :
                                      :
—————————————————————x

## RESPONSE TO OBJECTION OF PROOF OF CLAIM NO. 33514 FILED BY FRANK TOLIN JR.

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

I, Frank Tolin Jr., represent myself, pro se, and respectfully reply to an "Objection to Claim" as follows:

1.      In the Objection to Claim, BNC Mortgage, LLC ("BNC"), through legal representative, contend that there was no fraud and that there was no agency relationship between Gordon, Gordon, and Gordon, Inc. ("GORDON, INC."). Both of these contentions are false.

2.      In signed affidavits filed, in the United States District Court for the Eastern District of New York, by Barbara Gordon ("Ms. Gordon") of GORDON, INC., Ms. Gordon repeatedly admits, in three separate documents, that there was fraud committed by her employee, Patricia Washington ("Ms. Washington"). These admissions are attached as "Exhibit A."

3.      In Exhibit A, avers that she was contacted by BNC, INC.'s ("BNC") closing attorney, Mr. Chaim "Charles" Liechtung ("Mr. Liechtung") and was informed that a closing took place for the property located at 108-36 154 Street. Ms. Gordon admitted

that Ms. Washington had committed fraud and that before receiving the call from Mr. Liechtung that Ms. Gordon had no knowledge of the closing and immediately fired Ms. Washington.

4.     Records obtained from the NY State Banking Authority reveal that Ms. Gordon fired Ms. Washington on May 3, 2005---the day of the closing.

5.     Neither GORDON, INC. nor Mr. Liechtung informed Frank Tolin of the fraud. Both GORDON, INC. and Mr. Liechtung were paid from the closing and failed to notify me of any fraud or impropriety.

6.     It is believed that BNC, INC. had multiple opportunities when it knew or should have known of fraud.  For example, on May 3, 2005, GORDON, INC., as agent for BNC, knew of the fraud and failed to disclose this information to Frank Tolin or BNC. Alternatively, if GORDON, INC. notified BNC then BNC should have notified Frank Tolin immediately.  Mr. Liechtung, as attorney for BNC, did not notify Frank Tolin of his conversation with Ms. Gordon, and if, Mr. Liechtung notified BNC then BNC should have notified Frank Tolin immediately.

7.     Prior to May 3, 2005, BNC's own records indicate that there was knowledge of fraud and/or impropriety.  For example, BNC's records show that there was a "fraud alert" raised in their search and that they should contact Frank Tolin immediately. However, BNC failed to act in accordance with BNC's own records.  In addition, any disclosure documents that should have been by BNC sent prior to the May 3, 2005 closing date were sent to a fictitious address.  Those documents should have been returned to BNC and upon receipt, by BNC, thereof BNC should have contacted Frank Tolin.

8.     There was an agency relationship between BNC and the GORDON, INC. For example, GORDON, INC. had to have a business relationship (i.e., a prior business agreement) to act as agent by bringing loans to BNC.  GORDON, INC. was paid an incentive (e.g., a yield spread premium) for bringing a high interest loan to BNC (without notifying Frank Tolin of any conflict of interest).  The preexisting business relationship coupled with the yield spread premium paid by BNC amounts to an agency relationship between BNC and GORDON, INC.

9.      Fees paid to the GORDON, INC. (including agent Ms. Washington) are in excess of $5,549.00.

10.     It is believed that the incentive paid by BNC, INC. was the impetus for Ms. Washington to stall the loan process.

11.     Frank Tolin respectfully submits that other issues raised on behalf of BNC, in the Objection to Claim, are also erroneous.

12.     There was no attempt by Frank Tolin to circumvent foreclosure of a home lived in by Ms. Washington. Ms. Washington contacted me sometime prior to the closing and again informed me that she had high regards for my character and integrity. She requested that her home be put in my name in case something ever happened to her (because of alleged health issues) that she trusted me to look after the best interest of her and her adult children. I did not agree to have her home put into my name for her to avoid foreclosure or to circumvent any other laws. Ms. Washington's home was never put in my name nor was Ms. Washington's home in her name (so it could not have been to prevent foreclosure).

13.     Ms. Washington asked for more money than I wanted (and again acted as though that were a mistake). I did loan her money from the proceeds of the loan. I would not have allowed Ms. Washington to obtain a mortgage for me nor would I have loaned someone money who had an unsavory moral character.

14.     The terms of the May 3, 2005 were not presented in accordance with TILA or RESPA. For example, I was not given the terms of the loan prior to the May 3, 2005 closing. In fact even at the closing the terms of the loan vary on the documents presented to me at the closing.

15.     Ms. Washington was paid $2,500.00 broker's fee and failed to disclose this in the HUD-1 presumably because she knew that that activity was illegal. This broker's fee amounts to an illegal kick-back and is in violation of RESPA §8.

16.     Although I am an attorney, I do not (nor have I ever) specialize in real estate law.

17.     Attorneys are not exempt from becoming a victim of either fraud and/or breach of fiduciary duty.

18.     Although Frank Tolin filed a voluntary dismissal, in the United States District Court for the Eastern District of New York ("EDNY"), that was only done after spending

$30,000.00 in litigation fees and after BNC filed bankruptcy. That voluntary dismissal was filed to dismiss some of the other defendants and not BNC.

19.    Appearances in the EDNY were made before United States Magistrate Judge Lois Bloom and United States Judge John Gleeson. In the EDNY BNC (through representation by a substantially large law firm) made multiple attempts (e.g., questioning lead counsel's admission to practice law and my residency in the state of Illinois) to dismiss the case against them and were unsuccessful.

20.    A sale of the property was scheduled to take place on July 26, 2013. At the closing a check was about to be presented to me. However, I noticed that the check did not take into account the mortgage at issue before this Court. I informed the bank attorney Mr. Leichtung, the title company, and my attorney Mr. Agrippina of the error. A required title search for this closing showed no mortgage being recorded. The closing was rescheduled and America's Servicing Company ("ASC") was contacted to get a payoff amount (about $150,000.00). ASC received payment in full. My honesty and integrity was acknowledged by all present. Over $5,000.00 was paid to the title company ("Alliance Land Transfer") on May 3, 2005 to record that loan. Although ASC received $150,000.00 on an unsecured loan they refused to return $5,000.00 that was paid for services that were not performed.

## Frank Tolin's Claim for Relief

21.    Frank Tolin Jr. requests that this Court deny the Objection to Claim.

22.    Frank Tolin Jr. reaffirms his assertion of fraud and breach of fiduciary duty claims (as well as his assertions presented in his originally filed Proof of Claim) for $1 million in damages against BNC Mortgage, LLC ("BNC").


Dated August 14, 2013                    /s/ Frank Tolin Jr.

                                         Frank Tolin Jr.
                                         (Pro Se)
                                         3713 Bloomfield Ln
                                         Frisco, Texas 75033
                                         Phone (917)-670-2165

# BANKRUPTCY EXHIBIT 1A

ORIGINAL

DEFENDANTS:

BARBARA GORDON
NICOLE GORDON-CUNEO
KIMBERLY GORDON
Gordon, Gordon & Gordon Inc.

ANSWER
DOCKET NUMBER:
08 Civ. 1811 (JG) (LB)
AND COUNTER CLAIMS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FRANK TOLIN JR.
    v.
PATRICIA WASHINGTON AKA JANE DOE
ET AL., DEFENDANTS



I

## ADMISSIONS AND DENIALS

1. We disagree. This loan was not submitted to the bank by us. The only signature that can be on a 1003 is the signature of the mortgage broker. Patricia Washington did not have the authority to submit this loan or to sign and give any disclosures. She acted on her own and when we discovered this, she was immediately removed from my undertaking.
2. We do not know
3. We do not know
4. We do not know
5. We do not know
6. Does not pertain to us
7. The county is Nassau not Queens
8. We agree the corporation is still active but no longer doing any business.
9. We agree
10. We disagree the county is Nassau not Queens.
11. We agree
12. We disagree, address is wrong.
13. We agree
14. We disagree, address is wrong.
15. Does not pertain to us.

16. Does not pertain to us
17. Does not pertain to us
18. Does not pertain to us
19. Does not pertain to us
20. We agree if the property is 1-4 family owner-occupied
21. We do not know
22. We do not know
23. Does not pertain to us
24. Does not pertain to us
25. Does not pertain to us
26. Does not pertain to us
27. Does not pertain to us
28. Does not pertain to us
29. Does not pertain to us
30. Does not pertain to us
31. Does not pertain to us
32. Does not pertain to us
33. Does not pertain to us
34. Does not pertain to us
35. We agree that she was a solicitor, her responsibility was to refer loans, not make them. She had no authority to present or sign any mortgage documents. We did not prepare or sign any loan documents for Frank Tolin Jr.
36. We agree, she was removed because she submitted and closed a loan through a bank that she knew without our knowledge or consent.
37. We do not know
38. Does not pertain to us
39. There is no rescission period on an investment property
40. Does not pertain to us
41. The broker fee is paid directly from the closing table by the bank attorney to the mortgage broker. The $2500 was paid directly to Patricia Washington the day after the closing. Any monies given to Patricia Washington does not pertain to us.
42. Does not pertain to us
43. Does not pertain to us
44. Does not pertain to us
45. Does not pertain to us
46. Does not pertain to us
47. Does not pertain to us, they were not documents we prepared
48. Does not pertain to us
49. Does not pertain to us
50. Does not pertain to us
51. Does not pertain to us
52. We disagree, Patricia Washington was supposed to act as a solicitor, instead, she illegally acted as a mortgage broker and basically fraudulently used our license without our knowledge or consent.
53. We disagree, our name was put on the application without our knowledge or consent. We weren't aware of the closing until after the fact.

54. We strongly disagree
55. We do not understand
56. We disagree
57. Does not pertain to us
58. Does not pertain to us
59. Does not pertain to us
60. We do not understand
61. Does not pertain to us
62. We disagree
63. Docs not pertain to us
64. Does not pertain to us
65. Does not pertain to us
66. We disagree on any allegations pertaining to us.
67. Does not pertain to us
68. Does not pertain to us
69. We disagree on any allegations pertaining to us
70. Does not pertain to us
71. Does not pertain to us
72. We disagree on any allegations pertaining to us
73. Does not pertain to us
74. Does not pertain to us
75. We disagree on any allegations pertaining to us
76. Does not pertain to us
77. Does not pertain to us
78. Does not pertain to us
79. We disagree on any allegations pertaining to us
80. We strongly disagree
81. We do not understand what that has to do with us
82. We strongly disagree
83. We strongly disagree, Patricia Washington and Frank Tolin Jr. were long time friends.
84. We strongly disagree, we never supplied Frank Tolin Jr. with any documentation or information.
85. We disagree on any allegations pertaining to us.
86. We disagree
87. We disagree
88. We disagree
89. We disagree
90. We disagree on any allegations pertaining to us
91. We disagree
92. We disagree
93. We strongly disagree
94. We strongly disagree
95. We repeat that we disagree on any allegations pertaining to us
96. We disagree, we had no relationship or contact with Frank Tolin Jr,
97. We strongly disagree

98. We strongly disagree
99. We repeat that we disagree with any allegations pertaining to us
100.     This does not pertain to us
101.     This does not pertain to us
102.     We strongly disagree
103.     We strongly disagree
104.     This does not pertain to us
105.     We disagree
106.     We repeat that we disagree with any allegations pertaining to us
107.     We agree for 1-4 family owner-occupied primary residences
108.     We disagree
109.     We repeat the we disagree with any allegations pertaining to us
110.     We did not engage in any deceptive practices with Frank Tolin Jr,.  We never had any written or verbal contact with this person.
111.     We strongly disagree
112.     We disagree
113.     We repeat that we disagree on all allegations pertaining to us
114.     We disagree
115.     We disagree
116.     We disagree
117.     We disagree


## II

## DEFENSES

Since we are not represented by an attorney, we cannot state any legal theory, other than this seems to be a nuisance suit brought about so Frank Tolin Jr. can get back the money he lent to his then friend Patricia Washington.
To drag in the entire mortgage industry seems to be a misuse of the judiciary system by a man who is an attorney.


## III

## COUNTERCLAIMS

1. Frank Tolin Jr. had a long time relationship with Patricia Washington.
2. Patricia Washington was only under my undertaking for less than 2 months.
3. In his summons, Frank Tolin Jr, admitted to putting her house in his name in August of 2004.  This is usually done to stop the bank from foreclosing and I would assume that the house was listed as his primary residence.
4.  This action shows a history of both Frank Tolin Jr. and Patricia Washington engaging in possible bank fraud.

5. It is our belief that both Frank Tolin Jr. and Patricia Washington conspired to get this mortgage.
6. The mortgage was put under our license without our knowledge or consent.
7. This constitutes fraud and because of that we immediately removed Patricia Washington from our undertaking.
8. We believe that the facts show a strong relationship between Frank Tolin Jr. and Patricia Washington.
9. Her house was put in his name.
10. On three separate occasions he gave her, $2500, $10,000 & another $10,000.
11. This does not represent a normal mortgage consultant and client relationship.
12. Long after this loan closed, they were still in contact and he continued to loan her money.
13. We are putting in a counterclaim for defamation of character, we were accused of predatory lending, rascism, bank fraud etc.
14. We have suffered expenses and humiliation because of this lawsuit and request that Frank Tolin Jr. as well as Patricia Washington be held accountable for their actions.

Wherefore we demand judgment against Frank Tolin Jr in the sum of $25,000

Signature
Barbara Gordon
Address 64 Garden Street
Garden City, NY 11530
516-747-0456

Signature Nicole Gordon-Cuneo
Nicole Gordon-Cuneo
Address 64 Garden Street
Garden City, NY 11530
516-747-0456

Signature
Kimberly Gordon
64 Garden Street
Garden City, NY 11530
516-747-0456

Signature (as President)
Gordon, Gordon & Gordon Inc.
64 Garden Street
Garden City,NY 11530
516-747-0456

August 27, 2008

To Whom It May Concern:

This is in response to the summons we received from United States District Court, case number 08CV1811 (JG)(LB).

We are responding as Gordon, Gordon and Gordon Inc., Barbara Gordon, Nicole Gordon-Cuneo and Kimberly Gordon.

Let it be known that we had no knowledge of the terms of this loan until after it closed. The application, disclosures, fee agreements were all signed by Patricia Washington. She submitted this loan without my knowledge and legally had no right to do so. The broker of record is the only one that can sign a mortgage application and submit the loan. She used my license without my knowledge or consent. As you can see we removed Patricia Washington from our company on the day this loan closed. She refused to give me any paperwork or disclose any terms. I did receive the application and processing fee directly from the bank attorney after the loan had closed, but by that time it was too late for me to stop anything. I also ended up having to pay the appraiser directly for the appraisal that was never paid for.

I reviewed the application that was sent with the summons and saw it was for an investment property. There is no rescission period for either an investment property or a second home. After investigating how this loan was originated, I discovered that Patricia Washington was a long time friend of Frank Tolin and that the purpose of this loan was to give her a loan and take out cash for himself. To accuse me of predatory lending is ridiculous since the only money I received was the application and processing fee.

After reviewing the documents, the only two people that were complicit in any type of fraud were Frank Tolin and Patricia Washington. He had no right to give the points charged directly to Patricia Washington. The points in any loan are paid directly to the mortgage broker. He was in collusion with Patricia Washington and the proof is not only the points he paid her directly but the money he lent her out of the proceeds of the loan.

We also discovered that Frank Tolin is or was an attorney. To claim that he was misled and misinformed is questionable since his profession centers around reading and understanding contracts.

The only people defrauded and misled in this situation were myself, my company and the banks he and Patricia Washington did business with. To me this seems like an attempt for Frank Tolin to get back the money he lent to Patricia Washington. This is a frivolous law suit that is wasting everyone's time. Please let me know what the next step is, I will glady testify under oath and before a jury.

Yours truly,
Barbara Gordon, Nicole Gordon-Cuneo, Kimberly Gordon, Gordon Gordon & Gordon Inc.

cc. Frank Tolin Jr.
1301 W. MADISON STREET
UNIT 412
CHICAGO, IL 60607

DEFENDANTS:
BARBARA GORDON
NICOLE GORDON-CUNEO
KIMBERLY GORDON
Gordon, Gordon & Gordon Inc.

MOTION TO DISMISS SECOND

AMENDED COMPLAINT AND

REQUEST FOR A JURY TRIAL

DOCKET NUMBER:
08 Civ. 1811 (JG) (LB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 03 2008 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FRANK TOLIN JR.
v.
PATRICIA WASHINGTON AKA JANE DOE
ET AL., DEFENDANTS

This is in response to the second amended complaint submitted by Frank Tolin .

Part A – Parties and Jurisdiction, we disagree with the following points.

1. Patricia Washington was not a mortgage broker, she was only allowed to refer her clients to my company. She did not have the right to submit a loan in her name.
2. Nicole Gordon was never an owner or corporate officer of Gordon, Gordon and Gordon Inc.
3. Kimberly Gordon was never an owner or corporate officer of Gordon, Gordon and Gordon Inc.
4. There was never any representation from my company regarding this loan. There cannot be fraud without intent and since this loan was done without my knowledge or consent, therefore there could not be any intent.

Part B – Facts Common to All Counts

With respect to the selling of mortgage loans, all clients are given a Truth-In-Lending document at the time of application, again at the time of commitment and a final one at closing. This document clearly spells out if the loan is going to be kept or sold. It also states that the terms of the loan remain the same no matter if it is kept or sold. New York State Banking Department has strict rules and regulations regarding disclosures. The client must be notified by the bank once the loan is submitted by the broker. When the loan is approved by the underwriter, the terms of the loan are then sent with the commitment letter, along with any additional conditions. The client, at that point, can accept or reject the loan. The mortgage broker does not control the rate or the terms of the loan, they can only give a ball-park idea based on the credit and type of loan the client is looking for. Once the file goes into underwriting, credit may be pulled again and that can change the entire profile of the loan and greatly affect the rate.

The only time the broker has control over the rate is when the bank pays points directly to the broker. Each point can raise the rate about .5%. This loan was done at par pricing, which means that the broker was never paid any extra because of the rate Frank Tolin received. He didn't pay any points either. The only fees he paid directly to my company was $750.00. The appraisal fee was paid to the appraiser after the closing.

## C. Claims for relief

1.  Patricia Washington had no authority to broker this loan. She was not a loan officer or mortgage broker. Whatever promises she made was between herself and Frank Tolin. Neither one ever spoke to me about this loan. I was not even aware it closed until the bank attorney informed me. I never received any paperwork from this loan aside from the HUD settlement statement that was signed at the closing.
2.  Normally the bank sends a copy to the broker of all correspondence sent to the borrower. I never received anything because on the loan application,, Patricia Washington put down her address, phone and fax number.
3.  I neither had a confidential or fiduciary responsibility to a borrower I knew nothing about and had no business dealings with what so ever.
4.  There was no conspiracy to commit fraud because there were never any conversations about this loan, my company was basically kept in the dark.

We, therefore disagree with all counts and would like to move to dismiss.

Respectfully submitted,

Barbara Gordon

Signature _Nicole Grd-Rno_
Nicole Gordon-Cuneo
Address 64 Garden Street
Garden City, NY 11530
516-747-0456

Signature
Kimberly Gordon
64 Garden Street
Garden City, NY 11530
516-747-0456

Signature (as President)
Gordon, Gordon & Gordon Inc.
64 Garden Street
Garden City, NY 11530
516-747-0456

TO: JUDGE GLEASON

FAX # - 718-613-2316

FROM: BARBARA GORDON.

RE: DOCKET # 08-CV-01811 (JG)(LB)

# OF PAGES (INCLUDING COVER) - 6