Hearing Date: September 18, 2013 at 10:00 a.m.

Jeff J. Friedman
Kevin M. Baum
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for RBC Dominion Securities Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
In re: : Chapter 11
:
LEHMAN BROTHERS HOLDINGS, INC., et al., : Case No. 08-13555 (JMP)
:
Debtor. : (Jointly Administered)
:
------------------------------------------------------------ x

### REPLY OF RBC DOMINION SECURITIES INC. TO RESPONSE OF PLAN ADMINISTRATOR WITH RESPECT TO MOTION TO REISSUE CHECKS FOR ALLOWED CLAIM

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

RBC Dominion Securities Inc. ("RBC"), by and through its undersigned counsel, hereby submits its reply (the "Reply") to the Response of Lehman Brothers Holdings, Inc. ("LBHI"), as Plan Administrator, dated August 14, 2013 (the "Response") to RBC's Motion for entry of an order pursuant to (a) Rule 9006(b)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), or in the alternative, (b) sections 105(a), 347(b), 1142(b) and 1143 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 3021, compelling LBHI to reissue certain distribution checks payable to RBC in respect of its allowed claim (the

1

Hearing Date: September 18, 2013 at 10:00 a.m.

"Allowed Claim") against the Debtor (the "Motion"). In support of this Reply, RBC respectfully represents as follows:

## Introduction

1. The Response does not alter the conclusion that RBC satisfies the "excusable neglect" standard set forth in Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P., 507 U.S. 380 (1993). Moreover, in the context of motions to reconsider a disallowed claim, this Court has used the somewhat more lenient standard for excusable neglect set forth in American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57 (2nd Cir. 1996). RBC submits that the relief it seeks is more analogous to reconsideration of a disallowed claim than to the more common fact pattern of the failure to file a timely proof of claim in the face of a claims bar date. RBC submits, however, that it satisfies both the Pioneer and American Alliance standards.

2. In its Response, LBHI spends a great deal of effort in establishing that the case law provides that properly addressed mail that is not returned as undelivered is presumed to have been delivered. LBHI submits with its Response an affidavit of Herb Baer of Epiq Bankruptcy Solutions LLC ("Epiq") stating that the Missing Distribution Checks,[1] among other documents, were mailed to RBC at the Proof of Claim Address and were not returned to Epiq as undeliverable. RBC did not contend in its Motion that Epiq did not mail the Missing Distribution Checks, although that was at least one possible explanation for why RBC did not receive them. The RBC addressee, Lance Longmore ("Mr. Longmore"), submitted a sworn declaration with the Motion (the "Longmore Declaration") that he did not receive them. While RBC acknowledges that under applicable case law, such a declaration, by itself, is insufficient to overcome the presumption of delivery, RBC submitted the Longmore Declaration in support of

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

2

Hearing Date: September 18, 2013 at 10:00 a.m.

its position that its Motion should be granted on the basis of excusable neglect – a doctrine that presumes the relevant notice was constructively or actually received.

3. Had Mr. Longmore actually received the Missing Distribution Checks (the first for over $120,000 and the second for over $180,000) and, twice, simply forgot to cash them (or forward them to the group at RBC responsible for cashing them), the case for *excusable* neglect would be extremely weak, at best. Assuming, *arguendo*, and consistent with the legal presumption that the Missing Distribution Checks were received by RBC, RBC and Mr. Longmore have been unable to determine why the Missing Distribution Checks never made it into Mr. Longmore's hands, or, as set forth below, into the possession of the group at RBC responsible generally for receiving and processing checks in respect of securities owned by RBC (either for its own account or the account of its clients) that are the subject of bankruptcy claims.

### RBC Was Not Expecting To Receive Checks

4. The Response suggests that by virtue of notices of intended distributions merely published on the Lehman web site maintained by Epiq, RBC should have been on the lookout for the Missing Distribution Checks. Yet, RBC had no reason to do so based on the history of payments in respect of its claims subsequent to the commencement of bankruptcy and insolvency proceedings of LBHI and its affiliates both in the United States and in foreign jurisdictions. Until RBC received the check for the third distribution made by LBHI in April of this year, every post-bankruptcy payment it received in respect of the securities included in RBC's Allowed Claim, as well as payments in respect of other LBHI securities which were part of the Lehman Program Securities protocol, were made by wire transfer. Payments for LBHI-issued Program Securities that were disregarded in RBC's proof of claim because they were dealt with in the Court's order regarding LBHI Program Securities, as well as payments by Lehman Brothers

3

Hearing Date: September 18, 2013 at 10:00 a.m.

Treasury B.V. in respect of securities it issued and which were guaranteed by LBHI, have all been made by wire transfer. Indeed, for Program Securities issued by LBHI, RBC received wire transfers corresponding to the dates of the three distributions made by the chapter 11 debtors.

5.  Attached hereto as Exhibit A is a declaration of Deborah Nicholas ("Nicholas Dec.") who heads RBC's Shareholders Services Department, the group at RBC that is responsible for receiving and processing any check received by RBC in respect of the securities comprising the Allowed Claim as well as the other Lehman securities that RBC owned but which were Lehman Program Securities and dealt with outside of the proof of claim. Ms. Nicholas states that until RBC received a check from Epiq for the third distribution from LBHI, no checks had been received since the LBHI bankruptcy case was commenced from either LBHI or any of the LBHI's affiliates in respect of claims of RBC arising from RBC's ownership of securities issued by LBHI or other Lehman affiliates.[2] Nicholas Dec. at ¶¶ 7-8. Conversely, attached as Exhibit B hereto is a declaration of Meeling Boos ("Boos Dec."), who heads the group at RBC that receives and processes wire transfers in respect of "mandatory corporate events" which include wire transfers in respect of the claims asserted in the bankruptcy cases and insolvency proceedings of LBHI and its affiliates both in and outside of the United States. Ms. Boos states that since the LBHI bankruptcy case was commenced, RBC has received approximately 19 wires in respect of securities listed in the proof of claim and other LBHI securities that were the subject of claims by indenture trustees or were Lehman Program Securities. Boos Dec. at ¶ 7. Thus, not only was RBC not expecting distributions by check before it was made aware of the Missing Distribution Checks, even assuming Mr. Longmore received the wire transfer option document

---

[2] Subsequent to the receipt of the one check from Epiq, Ms. Nicholas's group received checks for claims in the class action known as the *Lehman Equity/Debt Securities Litigation* following a settlement reached last month with certain of the defendants in the class action.

4

from Epiq, as far as RBC was aware, it was already receiving wire transfers for its claims arising from Lehman securities.

### RBC Satisfies the Excusable Neglect Standards

6.      While each of the four Pioneer factors favor RBC, this Court has also looked to the somewhat more lenient standard set forth in American Alliance when deciding whether to reconsider a disallowed claim, which is closer to the relief RBC seeks.  See In re Fairpoint Communications, Inc., 462 B.R. 75, 81 (Bankr. S.D.N.Y 2012).  See also In re Coxeter, 2009 WL 4893170 *4 (Bankr. N.D.N.Y. December 10, 2009) (noting Southern District's use of American Alliance factors).  In its analysis, LBHI focuses most heavily on the reason for RBC's delay noting that RBC's sole reason for the delay was that it did not receive the Missing Distribution Checks.  While it is of course true that RBC took no action until it became aware of Missing Distribution Checks in April of this year, LBHI's reliance on the so-called "mailbox rule" to argue that RBC waited 15 months to make its Motion because that is when it is deemed to have received the first of the Missing Distribution Checks makes no sense.  See Fairpoint, 462 B.R. at 81 (finding claimant promptly sought relief based on excusable neglect after it received *actual* notice of its failure to timely object to an estimation motion); see also In re Journal Register Co., 2010 WL 5376278 at *3 (Bankr. S.D.N.Y Dec. 23, 2010) (even though attorney tardily discovered claim objection in his possession, claimant did not act willfully because she did not have actual knowledge and promptly sought relief).

7.      In Fairpoint, Judge Lifland was faced with a motion under section 502(j) of the Bankruptcy Code for reconsideration of an order reducing a claim following an estimation hearing.  The Court relied on the 2nd Circuit's three-factor "excusable neglect" test in American Alliance.  The first of those factors was whether the claimant's failure to respond initially to the

5

estimation motion was willful, *i.e.*, something more than mere negligence. See Fairpoint, 462 B.R. at 80. The second factor was whether the claimant had a meritorious defense and the third was prejudice to the debtor. Id. The facts here are more analogous to the request for reconsideration of a disallowed claim than they are to failure to assert a timely claim in the face of receipt of a bar date notice where courts typically look to the Pioneer test.

8. LBHI does not suggest that Mr. Longmore (or anyone else at RBC) received envelopes with six-figure checks in them in April and October 2012 and intentionally did nothing about them. Indeed, the evidence is that in early April 2013, as soon as a responsible person at RBC received the reissued warning letter from Epiq concerning the forfeiture of the second distribution and had *actual* notice of the problem, RBC promptly contacted Epiq to ask for reissuance of the Missing Distribution Checks. When it finally became clear that the Motion was the only way to obtain reissuance of the checks, RBC retained counsel and filed the Motion. Thus, both the reason for delay – that RBC did not have actual notice of Missing Distribution Checks until April 2013 and had been receiving wire transfers in respect of its claims against LBHI and other LBHI affiliates – and the length of delay, with the Motion having been filed within a couple of weeks from discovery of the problem and conclusion by RBC of an internal investigation of the facts, militate in favor of finding excusable neglect under both the Pioneer and American Alliance tests.

9. Judge Lifland also found the claimant in Fairpoint to have a meritorious defense, thus satisfying the second factor in American Alliance. Here, RBC holds an undisputed Allowed Claim based on securities guaranteed by LBHI.

10. The remaining two Pioneer factors, RBC's good faith and prejudice to the Debtor, also favor RBC. Appropriately, LBHI in its Response does not even contend that RBC has acted

6

other than in good faith. RBC had no reason not to want to receive and cash distribution checks as soon as possible, and even if the Court grants the Motion, RBC will have lost the time value of the money represented by the Missing Distribution Checks.

11. Turning to the prejudice to LBHI, a factor in both <u>Pioneer</u> and <u>American Alliance</u>, LBHI makes two arguments, both of which should be rejected by the Court. First, Lehman essentially makes a "floodgates" argument noting that approximately 380 checks were forfeited. Yet, to RBC's knowledge, this is only the second motion in the 17 months since the first distribution was made by LBHI seeking the relief RBC seeks here and the cases make clear that questions of excusable neglect are necessarily fact specific. RBC cannot explain why other creditors have not cashed checks, but based on sworn declarations from both Lance Longmore (attached to the Motion) and Deborah Nicholas of RBC, the reason RBC did not cash the Missing Distribution Checks is because neither Mr. Longmore or Ms. Nicholas's group actually received them. Moreover, except for the third distribution check in respect of its Allowed Claim, RBC has received only wire transfers in respect of its Lehman securities claims (approximately 19 in total) and it was not obvious to RBC that it had not received the Missing Distribution Checks.

12. LBHI's second argument – that it will not always be in a position to reissue checks as it continues to liquidate and distribute cash – is essentially an admission that there is currently no prejudice to LBHI. As with each of the <u>Pioneer</u> and <u>American Alliance</u> factors, prejudice is a also fact specific inquiry. If RBC's Motion was made at a time when LBHI had distributed most of its cash and the balance was carefully budgeted and earmarked for other LBHI purposes, there might very well be prejudice that would tip the scale in LBHI's favor. In fact though, LBHI is currently holding billions of dollars in cash as it is involved in hundreds of

7

claim disputes. Moreover, the Plan provides that the forfeited funds are to be distributed to LBHI's creditors. If RBC's distributions in respect of undisputed LBHI bond obligations are forfeited, it will merely result in an unwarranted windfall for other creditors.

13. For the reasons set forth in the Motion and this Reply, RBC requests entry of an order directing the Debtor to reissue to RBC checks for the Missing Distribution Checks, and granting such other relief as is necessary or appropriate.

Dated: New York, New York
September 11, 2013

         KATTEN MUCHIN ROSENMAN LLP
         *Attorneys for RBC Dominion Securities Inc.*

         By: */s/ Jeff J. Friedman*
           Jeff J. Friedman
         575 Madison Avenue
         New York, New York 10022-2585
         Telephone: (212) 940-8800
         Facsimile: (212) 940-8776

# EXHIBIT A

# Nicholas Declaration

08-13555-mg    Doc 40029    Filed 09/11/13    Entered 09/11/13 11:03:53    Main Document
Pg 9 of 16

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
In re:                                                           :   Chapter 11
                                                                 :
LEHMAN BROTHERS HOLDINGS, INC., et al.,                          :   Case No. 08-13555(JMP)
                                                                 :
                    Debtors.                                     :   (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

### DECLARATION OF DEBORAH NICHOLAS IN SUPPORT OF MOTION OF RBC DOMINION SECURITIES, INC. TO COMPEL LEHMAN BROTHERS HOLDINGS, INC. TO REISSUE CHECKS FOR ALLOWED CLAIM

I, Deborah Nicholas, hereby declare:

1. I am the Manager of the Shareholder Services Department of RBC Dominion Securities, Inc. ("RBC"). I make this declaration in support of the *Motion of RBC Dominion Securities, Inc. to Compel Lehman Brothers Holdings, Inc. to Reissue Checks for Allowed Claim* [Doc. No. 39602] (the "Motion").

2. RBC holds an allowed claim [Claim No. 51231] against Lehman Brothers Holdings, Inc. ("LBHI") in the allowed amount of $5,079,712.40 (the "Allowed Claim") comprised of claims for securities issued by LBHI or issued by LBHI's affiliates and guaranteed by LBHI. In addition to the securities contained in the Allowed Claim, RBC owns LBHI Program Securities (or Program Securities guaranteed by LBHI) and LBHI securities for which an indenture trustee holds the allowed claim (collectively, "Other LBHI Securities Claims"). Further, RBC owns other securities of LBHI affiliates which are in insolvency proceedings outside of the United States.

1

100023865

3. In the ordinary course of RBC's business, all checks representing payments made in respect of securities owned by RBC that are the subject of claims in bankruptcies, class actions and similar proceedings ("Special Action Claims"), including any checks for securities issued by LBHI or its affiliates, would be delivered to the Shareholder Services department, consisting of myself, Donald Garcia or Calvin Trieu, both of whom work directly under and report to me as Shareholder Services Officers.

4. All checks representing payments in respect of RBC Special Action Claims are copied by Mr. Trieu. Next, he prepares a deposit slip for the checks which I sign. Once the checks are deposited, Mr. Trieu reconciles the amount of the checks received against lists of obligations owed to RBC or to RBC's clients and allocates the payments accordingly.

5. I, as his manager, review Mr. Trieu's work on this reconciliation on a regular basis. As such, I am aware of all checks received by RBC in respect of RBC Special Action Claims either for its own account or for the benefit of RBC's clients.

6. In the ordinary course of RBC's business, I and RBC employees working directly under my supervision regularly prepare and maintain such business records indicating all Special Action Claims payments received by RBC by check.

7. Neither I, nor my team ever received from LBHI, Epiq Bankruptcy Solutions, LLC ("Epiq"), the Debtor's bankruptcy claims agent, or from any other affiliate of LBHI, a check, dated on or about April 17, 2012, for $183,338.42 in respect of the Allowed Claim or a check, dated on or about October 1, 2012, for $123,720.37 in respect of the Allowed Claim.

8. Indeed, with the exception of a check dated on or about April 4, 2013, for $156,267.92 in respect of the Allowed Claim received from Epiq and, subsequently, certain checks in respect of RBC Special Action Claims in the Lehman Brothers Equity/Debt Securities

100023865

Litigation, since LBHI's chapter 11 case was commenced on September 15, 2008, my team and I have not received any checks in respect of the Allowed Claim, Other LBHI Securities Claims or any RBC claim against LBHI, from or on behalf of LBHI or any LBHI affiliate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Toronto, Ontario, Canada
Executed on September 6, 2013

_____
Deborah Nicholas

# EXHIBIT B

# Boos Declaration

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                    :

In re:                                           Chapter 11

LEHMAN BROTHERS HOLDINGS, INC., et al.,     Case No. 08-13555(JMP)

               Debtors.                         (Jointly Administered)

---------------------------------------------------------------- x

## DECLARATION OF MEELING BOOS IN SUPPORT OF MOTION OF RBC DOMINION SECURITIES, INC. TO COMPEL LEHMAN BROTHERS HOLDINGS, INC. TO REISSUE CHECKS FOR ALLOWED CLAIM

I, Meeling Boos, hereby declare:

1.     I am the Manager of the Reorganizations Department of RBC Dominion Securities, Inc. ("RBC"). My duties include oversight and supervision of the RBC personnel that receive wire transfers in respect of so-called "mandatory corporate events." I make this declaration in support of the *Motion of RBC Dominion Securities, Inc. to Compel Lehman Brothers Holdings, Inc. to Reissue Checks for Allowed Claim* [Doc. No. 39602] (the "Motion").

2.     RBC holds an allowed claim [Claim No. 51231] against Lehman Brothers Holdings, Inc. ("LBHI") in the allowed amount of $5,079,712.40 (the "Allowed Claim") comprised of claims for securities issued by LBHI or issued by LBHI's affiliates and guaranteed by LBHI. In addition to the securities contained in the Allowed Claim, RBC owns LBHI Program Securities (or Program Securities guaranteed by LBHI) and LBHI securities for which an indenture trustee holds the allowed claim (collectively, "Other LBHI Securities Claims"). Further, RBC owns other securities of LBHI affiliates which are in insolvency proceedings outside of the United States.

1

3. In the ordinary course of RBC's business, all funds sent via wire transfer (e.g., by DTCC and Euroclear) in respect of any mandatory corporate event with respect to securities owned by RBC are sent to Jake Burton, a Mandatory Reorganizations Officer at RBC who works directly for and is supervised by me. Mandatory corporate events are those where there is no option for the security holder, examples of which include, mandatory cash mergers, name changes, exchanges, liquidations, reverse stock splits. Wire transfers in respect of the Allowed Claims, Other LBHI Securities Claims and claims based on Lehman securities against LBHI affiliates made in insolvency proceedings outside of the United States are considered payments in respect of mandatory corporate events because RBC has no option except to receive plan and scheme distributions in respect of its securities claims.

4. After Mr. Burton receives a wire transfer of funds, he reconciles the amount of such payment against lists of obligations owed to RBC, either for its own account or for the account of RBC clients, allocates the payments accordingly and balances the reconciliation.

5. As his manager and direct supervisor, I review Mr. Burton's work on this reconciliation on a daily basis. As such, I am aware of all mandatory corporate event payments in respect of securities owned by RBC that are made via wire transfer.

6. I and those RBC employees working directly under my supervision regularly prepare such reconciliations indicating all payments made via wire transfer in respect of mandatory corporate events. The reconciliations and other documents created in the process are business records of RBC created and maintained in the ordinary course of RBC's business.

7. Since LBHI filed its bankruptcy petition on September 15, 2008, my team and I have received approximately 19 wire transfers from or on behalf of LBHI or affiliates of LBHI in respect of securities comprising the Allowed Claim, Other LBHI Securities Claims and RBC

securities claims against affiliates of LBHI which are in insolvency proceedings outside of the United States.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Toronto, Ontario, Canada
Executed on September 6, 2013

                                                      Meeling Boos