KLESTADT & WINTERS, LLP  
570 Seventh Avenue, 17th Floor  
New York, New York 10018  
Tel.: (212) 972-3000  
Tracy L. Klestadt  
John E. Jureller, Jr.  
Lauren C. Kiss

Hearing Date: Sept. 18, 2013, at 10:00 a.m. (EST)  
Objection Deadline: Sept. 11, 2013 at 4:00 p.m. (EST)

REUBEN RAUCHER & BLUM  
10940 Wilshire Blvd., 18th Floor  
Los Angeles, California 90024  
Tel.: (310) 777-1990  
Timothy D. Reuben

Attorneys for *Retirement Housing Foundation and its affiliates, Foundation Property Management, Bixby Knolls Towers, Inc., Gold Country Health Center, Inc., Mayflower Gardens Health Facilities, Inc., Mayflower RHF Housing, Inc., Sun City RHF Housing, Holly Hill RHF Housing, Inc., Merritt Island RHF Housing, Inc., Martin Luther Foundation, Inc., Yellowwood Acres, Inc., Bluegrass RHF Housing, Inc., St. Catherine RHF Housing, Inc. and DeSmet RHF Housing, Inc.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------------X  
In re:                                                  :  Chapter 11  
                                                        :  
LEHMAN BROTHERS HOLDINGS, INC., *et al.*                :  Case No. 08-13555 (JMP)  
                                                        :  (Jointly Administered)  
                    Debtors.                            :  
                                                        :  
------------------------------------------------------------------X

**REPLY OF RETIREMENT HOUSING FOUNDATION AND ITS AFFILIATES  
TO PLAN ADMINISTRATOR'S OBJECTION TO THE MOTION FOR A DETERMINATION  
THAT THE AUTOMATIC STAY DOES NOT BAR COMMENCEMENT OF CERTAIN  
LITIGATION AGAINST THE DEBTORS RELATED TO POST-PETITION CLAIMS AND/OR  
GRANTING RELIEF FROM THE AUTOMATIC STAY TO PERMIT COMMENCEMENT OF  
SUCH LITIGATION; AND SEPARATELY, TO GRANT RHF RELIEF FROM THE  
AUTOMATIC STAY TO LITIGATE THE TORT CLAIM IN  
<u>THE CALIFORNIA STATE COURT</u>**

Retirement Housing Foundation and its affiliates[1] (collectively "<u>RHF</u>") hereby files its reply (the "<u>Reply</u>") to the Objection (the "<u>Objection</u>") of the Plan Administrator to RHF's

---

[1] Retirement Housing Foundation's affiliates include Foundation Property Management, Bixby Knolls Towers, Inc., Gold Country Health Center, Inc., Mayflower Gardens Health Facilities, Inc., Mayflower RHF Housing, Inc., Sun City RHF Housing, Holly Hill RHF Housing, Inc., Merritt Island RHF Housing, Inc., Martin Luther Foundation, Inc., Yellowwood Acres, Inc., Bluegrass RHF Housing, Inc., St. Catherine RHF Housing, Inc. and DeSmet RHF Housing, Inc.

1

Motion[2], which seeks entry of an order (i) declaring that RHF is not prohibited, under 11 U.S.C. §362(a), from commencing an action in California state court seeking a declaratory judgment on the issue of the validity of its early termination of certain interest rate derivative swap transactions between RHF and LBSF and LBHI, or alternatively, granting RHF relief from the automatic stay to permit RHF to immediately commence such a declaratory judgment action in California state court, and (ii) granting relief from the automatic stay to permit RHF to immediately commence litigation in California state court against Lehman with respect to the Tort Claim. For the reasons set forth herein, it is respectfully requested that the Motion be granted in all respects, and that the Objection be overruled in its entirety.

## PRELIMINARY STATEMENT

1.  More than four (4) years after RHF properly noticed Lehman of the Early Termination of the 2008 Swap and provided its commercially reasonable Termination Calculation, Lehman has taken no action to address their purported dispute over the Early Termination Notice. Lehman was aware of RHF's position regarding the terminated 2008 Swap in June 2009[3], which position RHF has held consistently and provided support for throughout this entire ordeal. This termination could not have been a surprise to anyone as Lehman was no longer able to provide any of the agreed protections under the 2008 Swap. The facts are undisputed that RHF issued the Early Termination Notice as a result of Lehman's bankruptcy.[4]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[3] To be clear, Lehman had knowledge of the possibility that RHF would terminate the 2008 Swap in November 2008, as RHF had served Lehman with a Notice of Default on November 7, 2008. Although Lehman claims no knowledge or receipt of such notice in its Objection, a copy of the Notice of Default, and fax transmission confirmation, are annexed as Exhibit A to the Declaration of Brian Magnone (the "Magnone Decl.").
[4] Although Lehman has alleged, albeit unsupported, that RHF has somehow forfeited its rights to terminate the 2008 Swap due to some kind of purposeful actions to ride the market, the facts are clear that RHF took commercially reasonable actions starting in November 2008 to terminate the 2008 Swap due to Lehman's bankruptcy. Whether other parties had to jump through the same hoops as RHF is irrelevant to the determination of this matter. Lehman has shown no facts to dispute that the Early Termination was resultant of anything other than Lehman's bankruptcy and its inability to meet *any* of its obligations under the 2008 Swap.

2

In March 2010, and without any obligation to do so[5], RHF provided additional support for the Early Termination Notice and Termination Calculation. At that time, RHF specifically requested whether Lehman disputed the Termination Calculation, and if so to provide support for such a position (as RHF was also voluntarily doing at the time); however, Lehman never responded to these requests. At no time did Lehman state that it disputed the Early Termination Notice or Termination Calculation until its issuance of the ADR Notice in March 2012.[6] To the contrary, Lehman representative Colarossi specifically admitted in 2010 to RHF representatives that Lehman was in default on the swap.[7] It was undisputed that Lehman could never meet its obligations under the 2008 Swap, leaving RHF "high and dry" with no protection against interest rate fluctuation which was the sole reason for entry into the 2008 Swap. Although Lehman claims, or more accurately misrepresents, that Lehman put RHF on notice of their intention to treat the 2008 Swap as "live" (despite an undisputed inability to meet any obligations thereunder), Lehman still has never taken any action to seek a determination of this Court regarding this position. Now, blatantly attempting to use the automatic stay as a sword in these proceedings, Lehman claims that RHF owes more than $31 million in *missed payments* and *interest* accrued over the last four (4) years when Lehman strategically chose to do nothing, not inclusive of the approximate $19 million that Lehman alleges is the present value of the "live" swap, a swap for which RHF never received, and will never receive, any of its negotiated contractual rights or benefits. These facts only point to one party playing the market – Lehman, the true expert in swap speculation – not RHF, a charity that manages senior housing, has no

---

[5] Pursuant to section 6(e)(i)(3), RHF as the Non-Defaulting Party had the sole right to determine the settlement amount. As such, RHF does not concede that Lehman ever had a right to dispute the Termination Calculation unless determined to not be commercially reasonable.
[6] *See* Magnone Decl.
[7] *See* Magnone Decl., at 10.

3

expertise in swaps and does not "play the market." Such a practice would be inconsistent with RHF's core non-profit mission.

2. As set forth more fully in the Motion and below herein, the granting of relief from the automatic stay, if necessary, is appropriate with respect to both the Swap Claim and the Tort Claim. The granting of the Motion will permit RHF to finally obtain clarity on the validity of the Early Termination Notice and Termination Calculation, and also permit RHF to liquidate its Tort Claim, which may be necessary for a final determination of the parties' obligations under the 2008 Swap.[8] First, the determination of the validity of the Early Termination Notice is a post-petition action which should not be subject to the automatic stay in any event. The facts here are unique to RHF's circumstances. Although the issue has not specifically been addressed in prior court decisions, it is clear that the claim could only arise post-petition in a derivative transaction, which is specifically exempted under certain circumstances from the automatic stay. Further, even if the claims were deemed to be pre-petition, the Debtors' plan has now been confirmed and the need to continue the automatic stay on this matter, more than four (4) years after the issue arose, is no longer appropriate. Lehman is using the automatic stay as a *sword*, rather than a *shield*, all to RHF's detriment.

**ARGUMENTS**

**I.    The Automatic Stay does not apply to the Declaratory Judgment Action.**

3. Lehman has argued that Section 362(a) of the Bankruptcy Code prohibits RHF from commencing a declaratory action in the California state court to seek a determination of the validity of the Early Termination Notice. However, the facts and law do not follow their

---

[8] RHF has, in the alternative, asserted a claim against Lehman for rescission of the 2008 Swap based upon, *inter alia*, fraud in the inducement, which will involve similar facts and circumstances as currently being litigated in the California Action and relates solely to pre-petition acts of Lehman. Any final determination related to the 2008 Swap will necessarily require the litigation of these causes of action, and the lifting of the automatic stay will thus promote further judicial economy and avoid possible conflicting decisions in different forums.

4

reasoning.

4.   Pursuant to the "Safe Harbor" provisions under Section 560 of the Bankruptcy Code, the termination of a swap, and the resultant calculation of the settlement amount and the contractual right to set-off, as a result of the bankruptcy filing of the swap counterparty is an exception to the automatic stay under Section 362(a).  This is undisputed.  It follows then that any necessary action to determine whether the exercise of such right, i.e. the early termination notice, was valid or invalid, would also be an exception to the automatic stay and within the Safe Harbor under Section 560.  Section 560, in pertinent part, involves the "exercise of any contractual right of any swap participant or financial participant to cause *the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1).* See 11 U.S.C. § 560 (emphasis added).  This differs from *In re Enron,* 306 B.R. 465 (Bankr. S.D.N.Y. 2004), as cited by Lehman, in which a party was seeking a declaratory judgment that the swap itself was not a valid binding agreement, or alternatively that the person who terminated the swap on their behalf had no authority to do so.  *Id.* at 470.  These issues go well beyond the issues in this matter, which are solely the validity of the Early Termination Notice and Termination Calculation, i.e. the *liquidation, termination, or acceleration* of the 2008 Swap.  It is interesting to note that the Court in *Enron* did agree that the counterparty could have brought a declaratory action with respect to the swap termination in the Bankruptcy Court.  *Id.* at 477.

5.   The other cases cited by Lehman are inapposite.  Each of the cases involved a party seeking a determination that certain claims arising from the debtor's post-petition rejection of a pre-petition contract were not subject to the automatic stay.  *See, e.g., Grocery Haulers, Inc. v. The Great Atl. & Pac. Tea Co., Inc. (In re The Great Atl. & Pac. Tea Co.)*, 467 B.R. 44, 59

5

(S.D.N.Y. 20120) (affirming bankruptcy court's holding that claims which arose out of rejection of pre-petition trucking agreement with debtor entitled company to pre-petition claim); *In re Old Carco LLC*, 424 B.R. 633, 649 (Bankr. S.D.N.Y. 2010) (denying car dealers administrative expense priority claims for damages sustained as a result of the debtor's rejection of executory contract).  Lehman cannot hide behind this concept to support its contention that the automatic stay shields prosecution of its post-petition liability.  These cases did not involve derivative transactions subject to the Safe Harbor provisions under Section 560.  Further, if the Court determines that the Early Termination Notice was valid as argued by RHF, then there is no executory contract to be assumed or rejected by the Debtors.  Although Lehman has curiously argued that the Master Agreement will still be valid, the only remaining issue would be whether RHF's calculation was reasonable, not the continuation of the 2008 Swap.

      6.      It is submitted that the instant matter falls more squarely within the decisions in those cases cited in the Motion, cases that did not involve a claim arising from, or relating in any way to, a debtor's rejection of a pre-petition contract.  *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985); *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991).  In each case, the court found that the post-petition claim did not fall within protections afforded by the automatic stay.

      7.      Lehman also argues that the automatic stay does not apply based upon the Court's Lehman decisions in *Metavante*, *BNY* and *Ballyrock*.  However, it is again submitted that the decisions on these cases simply do not address the issue at hand, namely whether RHF can seek relief from the automatic stay to commence an action for a declaratory judgment as to the validity of the Early Termination Notice and Termination Calculation.  In *BNY* and *Ballyrock*, the Court stated that a counterparty could terminate a swap agreement under the Safe Harbor of

6

Section 560 without violating the automatic stay; however, the Court further held that certain *ipso facto* clauses in those swap agreements, which specifically modified the priority of the right to payments under the swap as a result of the bankruptcy filing, were violations of the automatic stay. In *BNY,* the derivative agreement contained a "flipping provision" which altered the priority of payment solely as a result of the bankruptcy filing, resulting in the debtor being subordinated to the non-debtor parties. *Lehman Bros. Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd., (In re Lehman Bros. Holdings, Inc.),* 422 B.R. 407, 413 (Bankr. S.D.N.Y. 2010). In *Ballyrock,* the derivative agreement contained a provision that would have deprived LBSF of its right to collect the termination payment on account of the bankruptcy filing (effectively moving LBSF from the third priority position to the nineteenth priority position). *Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd. (In re Lehman Bros. Holdings, Inc.),* 452 B.R. 31, 36 (Bankr. S.D.N.Y. 2011). These provisions were found to be invalid *ipso facto* clauses that penalized a party solely as a result of its bankruptcy, which was the main reason for the protection afford by the automatic stay under Section 362(a). *Id.* at 43; *BNY Corp.*, 422 B.R. at 420. However, by this Motion, RHF only seeks a determination as to the validity of the Early Termination Notice and Termination Calculation under the 2008 Swap, both of which are expressly provided for under the Safe Harbor of Section 560.

8. As set forth in the Motion, this matter is completely distinguishable from this Court's opinion in *Metavante*, though that is a determination that must wait for another day. In *Metavante*, the issue before this Court was whether the swap counterparty, Metavante, was entitled not to perform under the swap because its counterparty, LBSF, could no longer meet the "conditions precedent" to the swap, as set forth under Section 2(a)(iii), and therefore permit it to ride the market until either the market changed in its favor or the swap matured or terminated. *In*

7

*re Lehman Bros. Holdings Inc.*, September 15, 2009, 107–109.  The Court was not asked to determine the reasonableness or timeliness of any Early Termination Notice, <u>as Metavante never exercised its right to terminate the swap</u>.  By contrast, RHF met all obligations under the 2008 Swap, and provided notice of the Early Termination as required under the ISDA terms, in compliance with Section 560 of the Bankruptcy Code.  The Court's opinion in *Metavante* should not have any bearing on the Motion.

## II.  Lehman Is Improperly Wielding the Automatic Stay as a Sword, and the *Sonnax* Factors Weigh in Favor of RHF.

9.    Lehman argues that the granting of relief from the automatic stay would open the flood gates for other swap counterparties, effectively removing the Bankruptcy Court from all decisions related to Lehman's derivative contracts.  However, there is no evidence that this will occur.  RHF's facts and circumstances are unique, and any determination of the validity of the Early Termination Notice and Termination Calculation will be unique to RHF.  The fact that some other parties may contend under their particular facts that they terminated their swaps is not reason enough to deny the Motion.

10.   Despite all of Lehman's arguments against relief from the automatic stay, Lehman fails to address the main issue – namely that for more than four (4) years they have chosen not to take any action regarding their dispute of the Early Termination Notice and Termination Calculation, or with respect to their claim that the 2008 Swap is still "live".  The reason for this inaction is quite obvious based upon their own "calculations"; if the 2008 Swap was still "live" then RHF would owe more than $31 million in missed payments and interest, with an additional payment purportedly required to account for the present value of the 2008 Swap.  But for this strategic delay by Lehman the issue would have already been determined, whether in RHF's favor or not, eliminating each of these alleged missed payments and interest.  There can be no

doubt that the favorable market conditions for Lehman, resultant from its own bankruptcy filing, were the basis for the delay. Why seek a determination of the validity of the Early Termination Notice when Lehman could ride the favorable market as long as possible, all to the detriment of RHF which has continued to assert that the termination was valid? The question is how quickly Lehman would have acted had the market conditions changed against it. It is a classic case of riding the market, and using the automatic stay as a sword rather than a shield.

11. The basis for the automatic stay is to provide the debtor with breathing room from the claims of its creditors, and "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *The Great Atl. & Pac. Tea Company, Inc.*, 467 B.R. at 51. Five years after the bankruptcy filing, Lehman should no longer be able to hide behind the automatic stay, all to its benefit. The automatic stay is one of the fundamental protections afforded to a debtor, and is intended to be used as a shield, not a sword. *See In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3249641, at *2 (Bankr. S.D.N.Y. Aug. 7, 2012). *See also In re McHenry*, 179 B.R. 165, 169 (B.A.P. 9th Cir. 1995) ("The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment."). There is no doubt that Lehman is wielding a sword in this case.

12. Lehman's positions with respect to "cause" under the *Sonnax* factors are unsupported. Addressing the most egregious of these positions as follows:

- o  Lehman has asserted that the lifting of the stay will not result in the complete resolution of the case, pointing specifically to certain legal issues related to the contractual right of set-off under the ISDA terms of the Master Agreement.

9

      While Lehman has alleged that RHF is improperly attempting to set-off any claim through the California state court, RHF has not taken that position. Instead, RHF has argued that the California state court action, if the stay is lifted, will result in the final determination of (i) the validity of the Early Termination Notice and Termination Calculation, which judgment, for either party, will then be addressed through the Debtors' Plan, and (ii) the <u>liquidation</u> of the Tort Claim through the pending California proceeding. After the liquidation of these claims, the Bankruptcy Court can then address any set-off issue, if appropriate, in compliance with applicable bankruptcy law and the Debtors' plan, including whether any such set-off is allowed under the Court's prior rulings.[9]

- o  The California state courts have sufficient expertise to finally determine whether or not RHF's purported alter ego claims are valid under applicable laws. These are factual issues that are unique to RHF's facts and circumstances, and are already being litigated in the context of the ongoing California Action.

- o  Lehman has argued that permitting RHF to seek declaratory relief on the validity of the Early Termination Notice and Termination Calculation will interfere with the bankruptcy case. However, again, these are factual issues unique to RHF's circumstances, i.e. the circumstances surrounding the timing of the notice of

---

[9] Lehman cites to the decision in *Lehman Bros. Holdings, Inc. v. Credit Agricole Corp. & Inv. Bank (In re Lehman Bros. Holdings, Inc.)*, No. 13-3373 (S.D.N.Y. Aug. 8, 2013) ("<u>Credit Agricole</u>") with respect to the set-off issue, an order signed on the date RHF filed the Motion and of which it thus had no knowledge. However, this Motion is distinguishable from that determination. First, RHF does not seek to set-off, merely to liquidate the possible set-off claim which involves similar facts and claims as in the California Action. RHF agrees that any determination as to set-off would revert to the Bankruptcy Court. Second, Lehman had previously commenced an adversary proceeding against Credit Agricole, who then sought to remove the entire matter to the District Court. In contrast, here, despite more than four (4) years, Lehman has not taken any action with respect to its purported dispute of the Early Termination Notice or Termination Calculation. RHF, on the other hand, has been prosecuting similar facts and circumstances in the California Action, and therefore there can be no support for a claim of forum shopping as in *Credit Agricole*. Further, there is no evidence the RHF has sought to evade any purported adverse decisions in the Bankruptcy Court, as there have been none that are applicable.

10

termination, and calculation of the Termination Calculation. There is no indication that there are any swap counterparties with similar circumstances, and Lehman has indicated as much. After four (4) years, this factor now weighs in RHF's favor.

- o There has been no forum shopping by RHF, or more precisely, it is <u>Lehman</u> that is forum shopping in this matter. RHF commenced its California state court action against, among others, Lehman's directors and officers in 2008. This case has been actively prosecuted since that time. It would be far more efficient and a much better use of court resources to consolidate RHF's claims against Lehman in the California Action, as the Complex Litigation court in Los Angeles is well-versed in the unique facts of the case. RHF does not seek to evade the Bankruptcy Court's prior decisions, in part because RHF does not believe that the Bankruptcy Court's prior decisions, including those in the *Metavante, BNY* and *Ballyrock* cases cited by Lehman, address the facts and legal issues of the RHF matter (as set forth above herein). Lehman has delayed this matter for more than four (4) years, has taken no action to dispute the 2008 Swap, and has claimed that $31 million in damages has accrued during this delay period. RHF has already timely sought redress for its damages in the California state court, and now seeks to try to finally prosecute and liquidate this matter in full. A claim of forum shopping by Lehman is a case of the kettle calling the pot black.

- o Lehman has argued that the stay should not be lifted because RHF's proposed California state court complaint is legally deficient; however, this is a matter to be addressed by the Los Angeles Complex Litigation court, which is well-versed in

11

the case and more than capable of making such legal determinations. Lehman would waive no right to assert these arguments as a result of the granting of the Motion, but the Motion is not the proper forum to litigate these issues. Legal efficiency dictates that these legal arguments be determined in the California Action, which has been ongoing since 2008 on these specific facts and circumstances.

- o  Whether or not LBHI or LBSF is a fiduciary is an issue for determination by the Court liquidating the claims. The facts presented by RHF make clear that it believed Lehman was, through many of its entities including LBSF and LBHI as counterparty and credit support provider under the RHF swaps, a fiduciary in these complex financial transactions.

- o  Lehman has argued that the Motion must be denied because its witnesses are all located in New York. However, witnesses employed by Lehman will have little or nothing to add to RHF's claim for declaratory relief with respect to the Early Termination Notice, and Lehman's potential witnesses with respect to the Tort Claim no longer work at Lehman or are already named defendants in the California Action. In contrast, all of the key RHF personnel who will be witnesses work out of RHF's Long Beach, California headquarters. *See* Magnone Decl., at 11.

- o  The pending California Action has been actively litigated for almost five (5) years. By comparison, Lehman has spent four (4) years strategically refusing to address its purported dispute of the Early Termination Notice and Termination Calculation, and even as of the date of this Motion has still failed to take any

12

action. It is submitted that the California state court is more ready to address these unique facts and circumstances at this point.

13. It is submitted that a close analysis of the *Sonnax* factors supports a determination that they weigh in favor of RHF in this matter, and support a finding of "cause" for relief from the automatic stay.

WHEREFORE, RHF respectfully requests that the Motion be granted in all respects, together with such other and further relief as this Court deems just and proper.

Dated: September 16, 2013
New York, New York

KLESTADT & WINTERS, LLP

By: */s/ John E. Jureller, Jr.*
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss
570 Seventh Avenue, 17th Floor
New York, NY 10018-1603
(212) 972-3000 (Telephone)
(212) 972-2245 (Facsimile)

REUBEN RAUCHER & BLUM

Timothy D. Reuben
Stephen L. Raucher
10940 Wilshire Blvd., 18th Floor
Los Angeles, CA 90024
(310) 777-1990 (Telephone)
(310) 777-1989 (Facsimile)

*Attorneys for Retirement Housing Foundation and its affiliates*