KLESTADT & WINTERS, LLP
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel.: (212) 972-3000
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss

REUBEN RAUCHER & BLUM
10940 Wilshire Blvd., 18th Floor
Los Angeles, California 90024
Tel.: (310) 777-1990
Timothy D. Reuben

Attorneys for *Retirement Housing Foundation and its affiliates, Foundation Property Management, Bixby Knolls Towers, Inc., Gold Country Health Center, Inc., Mayflower Gardens Health Facilities, Inc., Mayflower RHF Housing, Inc., Sun City RHF Housing, Holly Hill RHF Housing, Inc., Merritt Island RHF Housing, Inc., Martin Luther Foundation, Inc., Yellowwood Acres, Inc., Bluegrass RHF Housing, Inc., St. Catherine RHF Housing, Inc. and DeSmet RHF Housing, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                      :    Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*    :    Case No. 08-13555 (JMP)
                                                            :    (Jointly Administered)
            Debtors.                                        :
                                                            :
-------------------------------------------------------------X

## DECLARATION OF BRIAN MAGNONE IN SUPPORT OF RETIREMENT HOUSING FOUNDATION'S MOTION RE: AUTOMATIC STAY

Brian Magnone, under penalties of perjury, certifies and declares:

1. I am Vice President/Treasury of moving party Retirement Housing Foundation ("RHF"). I was originally employed as the Director of the Treasury of RHF in January 2004. I have direct personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to those facts under oath.

2. RHF is a charitable, non-profit foundation devoted to the mission of providing safe and affordable housing and services for senior citizens, persons with disabilities,

1

and low income families. Although its headquarters are in Long Beach, California, RHF has sponsored, developed and/or managed senior citizen apartments, nursing facilities, and low income housing throughout the country. Since it was founded in 1961 by two United Church of Christ clergy and a layman with $7,000 and a vision of providing quality housing and services for the underprivileged, RHF has become one of the nation's largest non-profit housing providers with 165 communities in 25 states, as well as the District of Columbia, Puerto Rico and the Virgin Islands. RHF develops and manages its facilities through affiliated entities – each facility is typically owned by a separate affiliate. RHF's retirement communities are non-denominational and RHF currently manages over 17,000 residents.

3. RHF is not a financial institution and has no expertise in swaps. RHF engaged in a complicated refinancing transaction in 1998 which involved swaps with Lehman Brothers. The purpose of the refinancing was to decrease and stabilize the indebtedness on a number of our senior housing facilities in multiple states, with the swap component supposedly providing RHF with protection against interest rate fluctuations. In 2008, RHF refinanced again, entering into the swaps with Lehman that are at issue in this case. Once more, the purpose of entering into the swap agreements was to provide RHF with protection against interest rate fluctuation. RHF has at no time "played the market" with respect to the termination of the Lehman swaps. Such financial machinations would be inconsistent with RHF's core non-profit mission, which is to provide quality housing for seniors and others in need.

4. When I began working at RHF, as part of my job duties, I was the point person with respect to monitoring RHF's interest rate swaps with Lehman before Lehman filed for bankruptcy, and dealing with the aftermath of that bankruptcy filing, including communicating with RHF's bank lenders, as well as Lehman itself.

5. I have reviewed the Declaration of David Colarossi submitted in support of the Objection to RHF's Motion Re: Automatic Stay, and noted numerous factual inaccuracies and incorrect conclusions in it. I submit this Declaration to respond to some of those inaccuracies and incorrect conclusions.

6. First, Mr. Colarossi claims that Lehman Brothers Special Financing, Inc. ("LBSF") has no record of receiving the Notice of Default served promptly after LBSF and LBHI filed for bankruptcy. I personally arranged for this notice to be faxed and sent via Federal Express to LBSF. A true and correct copy of that Notice of Default dated November 7, 2008 is attached hereto as Exhibit A, <u>including the fax confirmation</u> showing it was received by LBSF. There was no response to this notice.

7. As Mr. Colarossi acknowledges, RHF subsequently sent an Early Termination Notice to LBSF on June 11, 2009. Mr. Colarossi claims that RHF was on notice that LBSF disputed the validity of the Early Termination Notice by virtue of a response letter sent to RHF on June 22, 2009, which appeared to me to be a form letter. In any event, by the terms of that letter, LBSF simply "reserves the right to dispute the validity of the Termination Notice." The letter did <u>not</u> state that LBSF was actually disputing the validity of the Termination Notice.

8. RHF did receive some random invoices from LBSF in late 2009 and early 2010, shortly after RHF had served its Early Termination Notice, and RHF's outside counsel did send correspondence to LBSF reminding it that RHF had terminated the swaps. <u>LBSF subsequently stopped sending the invoices to RHF</u>. This conduct hardly made clear what LBSF's position was going to be – to the contrary, we did not understand what position Lehman was taking.

3

9. Mr. Colarossi asserts that RHF took a position in its audited financial statements that is contrary to its loss calculation. That is not correct. Generally Accepted Accounting Principles prevented RHF from recording a gain on amounts owed by Lehman; however, the receivable from Lehman was documented in footnote 6 (page 30) of the 2009 Obligated Group audited financial statements (attached as Exhibit G to Mr. Colarossi's declaration).

10. Mr. Colarossi is correct that, beginning in August 2009 and continuing through 2010, RHF, through me and RHF's Chief Financial Officer, Frank Rossello, had a series of communications with Lehman, during which Lehman asked for information from RHF, which was provided. Those communications primarily related to the basis for RHF's termination calculation, but also included a request for an explanation of the reasons for the delay in serving RHF's Early Termination Notice, which RHF provided. I understood (and outside counsel confirmed in writing) that these were settlement discussions, as reflected in Exhibit O to Mr. Colarossi's declaration. In any event, Mr. Colarossi's statement in Paragraph 24 of his declaration that, during a conference call on January 22, 2010, LBSF affirmatively asserted that RHF had improperly terminated the swap agreements is simply not correct. Indeed, if that were the case, LBSF would presumably have clearly stated as much in the written communications preceding and following that conference call; they did not. To the contrary, Mr. Colarossi acknowledged during that call that Lehman was in default, but disputed RHF's termination calculation.

11. While RHF understood that Lehman was reserving its rights, it did not understand that Lehman was affirmatively taking the position that the Early Termination Notice was ineffective until LBSF actually did affirmatively take that position on or about March 16,

4

2012 in the context of its ADR Notice.

12. Moreover, other than in the court-ordered (and confidential) ADR process which started in 2012, Lehman's just-filed Objection to RHF's pending motion represents <u>the first time</u> that Lehman has quantified the full amount which it contends it is entitled to. Frankly, we were astonished by Lehman's contentions. Obviously, we strongly disagree with Mr. Colarossi's computation and position, and in fact we did our utmost to follow the ISDA agreement in properly terminating the swaps and believe we did effectively terminate them.

13. I understand that Lehman argues that one reason RHF's motion should be denied is because LBHI's witnesses are mostly located in New York. However, witnesses employed by LBHI or LBSF would have little or nothing to add to RHF's claim for declaratory relief with respect to the Early Termination Notice. In contrast, all of the key RHF personnel who will be witnesses – including myself and Mr. Rossello – work out of RHF's Long Beach, California headquarters. In addition, RHF will be compelled to call its bank lenders as potential witnesses with regards to the conditions precedent to the termination of the 2008 Swap, and the actions taken by RHF in meeting these conditions precedent. Those witnesses are overwhelmingly located in California, including the following:

- Barbara Readick, First Vice President and Regional Manager, KBC Bank (Los Angeles, CA);

- Tiena Johnson-Hall, former VP-Regional Manager Community Lending, US Bank (Los Angeles, CA);

- Charmaine Atherton, SVP Community Development Banking - So. California, Bank of America Merrill Lynch (Los Angeles, CA); and

5

- Astrid Kramarz, Senior Relationship Manager / Vice President, REID/Healthcare Lending (Trinidad, CO).

14. Forcing RHF to litigate its claims against Lehman in New York would be burdensome and expensive, particularly since RHF is a nonprofit corporation. Moreover, this burden would be increased by the fact that RHF is already litigating similar issues in California at substantial cost.

15. The suggestion that the California action has not advanced very far is not correct. I have personally already been deposed for four days, and RHF's Chief Executive Officer, the Rev. Dr. Laverne Joseph, has also been deposed for one day. A number of other depositions have been started, though not finished. In addition to the thousands of documents produced by the defendants and third parties, RHF alone has produced over 220,000 pages of discovery materials in the California action.

Executed on September 13, 2013 in Long Beach, California.

_____
Brian Magnone