**Hearing Date and Time: October 23, 2013, at 10:00 a.m. (Prevailing Eastern Tine)**
**Reply Deadline: October 16, 2013, at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard W. Slack
Robert J. Lemons
Lauren Hoelzer Helenek

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
|   |   |   |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
|   | : |   |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|   | : |   |
| Debtors. | : | **(Jointly Administered)** |
-------------------------------------------------------------x

**OPPOSITION TO MOTION OF GIANTS STADIUM LLC FOR AUTHORIZATION TO**
**ISSUE THIRD-PARTY DEPOSITION SUBPOENAS**
**UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016**

Lehman Brothers Special Financing ("LBSF") and Lehman Brothers Holdings,

Inc. ("LBHI," and together with LBSF, "Lehman") by their undersigned counsel hereby oppose

the motion of Giants Stadium LLC ("Giants Stadium") for authorization to issue third-party

deposition subpoenas under Federal Rules of Bankruptcy Procedure 2004 ("Rule 2004") and

Federal Rule of Bankruptcy Procedure 9016 ("Rule 9016"), filed on August 28, 2013 (the

"Motion").

## INTRODUCTION

1.      Giants Stadium has moved for an order authorizing it to serve deposition

subpoenas on three individuals, David Lo, Robert Taylor, and Sean Teague, on the grounds that

the "proposed depositions will assist the parties in narrowing the issues on which there is disagreement and promote the efficient and proper resolution of the claim." Motion at ¶ 1. For the reasons set forth below, authorization to issue such subpoenas under Rule 2004 should be denied.

2.      First, depositions should not be taken before document discovery has been completed and the parties are in a position to take depositions that can be used in an adversary or claims objection proceeding.  Under the discovery protocol agreement into which the parties entered, the parties agreed not to duplicate discovery taken under Rule 2004 in any adversary or claims objection proceeding.  The predicate to this agreement, however, is the parties' receipt of the documents necessary to take a deposition.  One party should not be able to "jump the gun" in an effort to obtain a strategic advantage by taking a deposition of a potential witness before all documents have been collected.

3.      In this regard, the parties have neither served subpoenas for documents on Messrs. Taylor, Lo, and Teague nor served subpoenas on nor received documents from Barclays, the current or former employer of these three individuals.  *See* Declaration of Richard Slack ("Slack Dec.") ¶¶ 5, 19-21, Exs. B, N, O.  In addition, there remain numerous Rule 2004 subpoenas for the production of documents outstanding from third parties.  *See id.* ¶¶ 11-12.  Document productions pursuant to such subpoenas are expected to fill in many of the remaining holes in existing document discovery.  It is largely for this reason that Lehman has determined not to seek depositions of anyone under Rule 2004.  Instead, it is expected that any appropriate persons will be deposed by both parties in an orderly and comprehensive manner in connection with an adversary or claims objection proceeding.

US_ACTIVE:\44335583\3\58399.0011

4.      Lehman agrees that Mr. Taylor and Mr. Lo are likely to possess knowledge with respect to issues in dispute, and their testimony almost certainly will be taken in connection with an adversary or claims objection proceeding.  Accordingly, it is imperative that the parties have the benefit of a full documentary record in advance of their depositions.

5.      The same logic applies to Mr. Teague, who appears to be an employee of Barclays Capital.  *See id.* ¶ 20, Ex. O.  Neither a current nor former employee of Lehman nor its affiliates, as Giants Stadium asserts in the Motion (Motion at ¶ 14), Lehman has not had access to Mr. Teague's documents (or any relevant documents from his employer, Barclays).

6.      Second, Lehman independently opposes the Motion with respect to Robert Taylor on the basis that he is not an appropriate deponent for Rule 2004 discovery.  The purpose of discovery under Rule 2004 is to investigate the nature of claims against a debtor's estate and ferret out possible wrongdoing—not to create a full record for litigation.  Giants Stadium neglects to disclose in the Motion that it already has conducted an extensive voluntary interview of Mr. Taylor.  Thus, Giants Stadium has no need to obtain information from Mr. Taylor in the Rule 2004 investigatory process; the only purpose Mr. Taylor's deposition could serve is an improper one under Rule 2004—for record-making purposes for use in litigation.  Because Giants Stadium already has information from Mr. Taylor, any deposition should be taken in the litigation under the Federal Rules of Civil Procedure.

7.      Third, given Giants Stadium's misidentification of Mr. Teague as a former employee of Lehman, Giants Stadium provides no justification for taking a Rule 2004 examination of him.  Mr. Teague had no involvement with respect to the swap transactions at issue and Giants Stadium provides no sufficient cause for taking an examination under Rule 2004 of a non-Lehman employee regarding post-bankruptcy matters.

US_ACTIVE:\44335583\3\58399.0011

8.      Fourth, Giants Stadium's request is in violation of the discovery protocol agreement to which the parties agreed.  The protocol expressly provides for Giants Stadium to seek Rule 2004 discovery of no more than two "Lehman" deponents.  Giants Stadium already has issued a notice of deposition for current or former Lehman employees Seth Konheim and Julia Nand as part of the Rule 2004 process and also purports to seek the depositions through this motion of former Lehman employees Robert Taylor and David Lo.  Giants Stadium should not be able to evade the two-Lehman-employee restriction by "noticing" two Lehman employees and seeking the issuance of Rule 2004 subpoenas for two other Lehman employees.

9.      Finally, it is noteworthy that Lehman has confirmed, based on information collected to date, that Giants Stadium owes LBSF significant amounts under the swap transactions, and therefore has determined to file an adversary complaint.  Lehman has conducted Rule 2004 discovery concerning a number of theories and issues, and it has determined not to bring claims with respect to some of those theories; accordingly, the complaint will narrow and focus the issues in dispute.  Thus, the discovery in an adversary proceeding is likely to be tailored to the complaint and narrower than the broad focus of Giants Stadium's Rule 2004 requests.  LBSF is prepared to conduct discovery in the adversary proceeding quickly.  In this context, the parties shortly will have ample opportunity to examine witnesses under the protections of the Federal Rules of Civil Procedure, as appropriate.

10.      Accordingly, to promote orderly administration of the litigation and prevent duplicative discovery, the parties should complete any outstanding document discovery currently pending under Rule 2004 document subpoenas and take depositions in the adversary proceeding as appropriate and governed by the Federal Rules of Civil Procedure.

US_ACTIVE:\44335583\3\58399.0011

## **FACTUAL BACKGROUND**

11.     In 2007, LBSF and Giants Stadium entered into interest rate swap transactions governed by two substantially similar ISDA Master Agreements.  Giants Stadium terminated the swaps on September 18, 2008, following the chapter 11 filing of LBHI, who served as LBSF's guarantor under the swaps.  The ISDA Master Agreements provided that whichever party was in-the-money at the time of any early termination of the swaps would receive a payment from the other.  On October 2, 2008, Giants Stadium sent Lehman a calculation statement that valued the swaps as being a payable to Giants Stadium of approximately $301 million.  On October 17, 2008, Giants Stadium filed proofs of claim against LBHI and LBSF in that same amount.

12.     On November 23, 2009, the Court entered the Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities.  *See id.* Ex. A.  Pursuant to this order, Lehman served requests for documents on Giants Stadium and took one deposition—the Rule 2004 examination of Christine Procops, Giants Stadium's CFO and representative—in order to evaluate, among other things, the proofs of claim and potential claims against Giants Stadium arising out of the swaps.  *See id.* ¶ 3.  This deposition, however, was taken before Giants Stadium attempted to amend its proofs of claim from approximately $300 million to approximately $600 million.  To date, while LBSF has sought documents from many parties, it has taken only one deposition in its Rule 2004 investigation.

13.     As part of Lehman's Rule 2004 investigation, Lehman's counsel interviewed Robert Taylor, who formerly was a Managing Director in Municipal Derivatives at LBSF.  *See id.* ¶ 4.  During this interview, Lehman learned that counsel for Giants Stadium separately had interviewed Mr. Taylor.  *See id.*

5

14.    On December 6, 2011, Giants Stadium filed an amendment of the proofs of claim that doubled the amounts sought by Giants Stadium.  In an effort to understand the amendments and to determine how to respond thereto, Lehman sought Rule 2004 discovery from Giants Stadium by issuing a Rule 2004 document subpoena on April 9, 2012, seeking, among other things, information about the amended claims.  *See id.* ¶ 7.

15.    Giants Stadium moved to quash Lehman's subpoena for Rule 2004 examination and moved to conduct Rule 2004 discovery of Lehman.  *See id.* ¶ 8.  On November 14, 2012, the Court heard the parties' motions concerning Rule 2004 discovery and ordered the parties to develop a protocol to govern such discovery in order to limit the breadth of discovery and avoid duplicative discovery, among other things.  *See id*. Ex. C (November 14, 2012 Transcript ("Omnibus Tr.")) at 58:13-19 ("I would like the parties to develop and agree to a discovery protocol that will applicable whether we're dealing with 2004 discovery or claims related discovery.  It would be extraordinarily wasteful for the discovery that's taken in 2004 to be replicated again.").

16.    Accordingly, on April 1, 2013, Giants Stadium and Lehman executed the Discovery Protocol Agreement (the "Protocol"), pursuant to which the parties agreed on processes for identifying, noticing, and serving third parties, among other things.  *See id.* Ex. D.

17.    The Protocol provides specific procedures for identifying Lehman and non-Lehman deponents.  With respect to Lehman witnesses, the Protocol provides:

> At this Rule 2004 stage, neither side will seek a Rule 30(b)(6) deposition of the other. Each side may seek to depose one or more specific individuals with personal knowledge (***not more than two individuals in connection with the 2004 process***) from either Giants Stadium or Lehman, and will provide notice to the other side of such depositions on or before May 14, 2013. At the time of the notice, the party seeking the deposition will make a proffer of the relevant personal knowledge they seek to elicit in the deposition.

*Id.* ¶ 2 (emphasis added).

6

18.     At the time the Protocol was entered, none of the Lehman employees who were involved in the issuance of the Giants Stadium bonds or the swaps between LBSF and Giants Stadium were employed by the estate.  Paragraph 2 therefore would have no meaning if it applied only to "current" Lehman employees.  Indeed, the Protocol expressly does not limit Paragraph 2's application to "current" employees.  Instead, the Protocol was designed to allow third party deposition discovery of true third parties, but only limited deposition discovery of both Giants Stadium employees and Lehman employees in the Rule 2004 process.

19.     With respect to identifying third party deponents, the Protocol states that "[e]ach party will make a good faith attempt to identify by [the notice deadline] any third parties from whom they may seek documents or testimony in the 2004 process . . . .  Lehman reserves the right to object to any such motion on any and all grounds." *Id.* at ¶ 3.

20.     The Protocol further provides that discovery taken under the Protocol will be "treated as useable in any eventual adversary proceeding or contested matter, and not to be repeated in any such contest, absent a showing of good cause." *Id.* at ¶ 4.

21.     Pursuant to the Protocol, Lehman has served third party subpoenas for the production of documents pursuant to Rule 2004 upon the following third-parties:  Financial Guaranty Insurance Company ("FGIC"), Financial Security Assurance, Inc. ("FSA"), Goldman, Sachs & Co. ("Goldman"), and Baupost Group, LCC ("Baupost").  *See id.* Exs. E - H.  These subpoenas request documents about the termination and valuation of the swaps, among other things.  In addition, under the Protocol, Giants Stadium has filed a motion to serve at least one third party Rule 2004 subpoena for the production of documents pursuant to Rule 2004 upon Lehman Brothers Inc. ("LBI").  *See id.* Ex. I.[1]

---

[1] LBSF recently learned that LBI voluntarily produced documents to Giants Stadium.  This production unfortunately was made without redacting for privilege and without the knowledge of LBHI in violation of an agreement between

7

22.    On August 13, 2013, Giants Stadium sent a letter purportedly pursuant to the Protocol "to identify the individuals that Giants Stadium seeks to depose," and therein identified *twenty* individuals without proffering the testimony that Giants Stadium would seek to elicit from each. *See id.* Ex. J.

23.    On August 15, 2013, Lehman responded via letter, expressing, among other things, its concern that "seeking to depose twenty individuals in the Rule 2004 discovery process is excessive and unjustified," and noting that Giants Stadium's letter failed to provide the notice required under the Protocol. *See id.* Ex. K. Lehman also complained that nearly all of the potential deponents Giants Stadium identified appeared to be current or former Lehman employees in contravention of Paragraph 2 of the Protocol, which limits each party to no more than two party deponents. *See id.*

24.    On August 28, 2013, Giants Stadium served a Notice of Deposition pursuant to Rule 2004 on Lehman for Julia Nand and Seth Konheim. *See id.* Exs. L, M. On the same date, Giants Stadium filed this Motion, moving under Rule 2004 and Rule 9016 for an order authorizing Giants Stadium to issue subpoenas for three individuals, David Lo, Robert Taylor, and Sean Teague. *See* Dkt. No. 39898.

25.    To date, documents remain to be produced pursuant at least four of Lehman's third-party Rule 2004 subpoenas for the production of documents—those served on FGIC, FSA, Goldman, and Baupost. *See id.* ¶ 12, Exs. E- H. Baupost has refused to produce any documents whatsoever and its determination not to produce any documents is the subject of a motion to quash that will be heard on October 23, 2013. *See* Dkt. Nos. 38941 and 39947. The hearing date

LBI and LBHI in this bankruptcy—based on LBI and LBHI's common access to certain of the same documents in a shared database—that LBI would preserve LBHI's privileges and would not produce documents without first allowing LBHI to review them from a privilege, relevance, and confidentiality prospective. In conversations with counsel for LBI, LBI has recognized its error and has contacted Giants Stadium's counsel to retrieve its inadvertently-made production.

US_ACTIVE:\44335583\3\58399.0011

for Giants Stadium's motion to authorize the LBI subpoena has been adjourned numerous times and the deadline to oppose such subpoena has not yet passed. *See also* Slack Dec. ¶ 14.

## ARGUMENT

### I.    APPLICABLE STANDARD UNDER RULE 2004

26.    The scope of examination under Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).  As this Court has held, a "party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." *In re Hilsen*, 2008 WL 2945996, *4 (Bankr. S.D.N.Y. July 25, 2008) (Peck, J.) (citations omitted).

27.    Courts have limited Rule 2004 discovery where a motion seeks discovery beyond the scope of Rule 2004 or which will not serve the purposes of the rule. *See In re Johns-Manville Corp.*, 42 B.R. 362, 365 (S.D.N.Y. 1984) (reversing bankruptcy court order permitting Rule 2004 discovery because the purpose of the discovery—to facilitate negotiations between the parties—was outside the scope of Rule 2004); *In re Cont'l Forge Co., Inc.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987) (denying Rule 2004 discovery as outside the scope because "examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper").

### II.    DEPOSITIONS SHOULD NOT BE TAKEN UNTIL OUTSTANDING RULE 2004 DOCUMENT DISCOVERY IS COMPLETE

28.    Lehman opposes the Motion because it seeks depositions that have nothing to do with obtaining information for an investigation, but instead seeks to create an inefficient and unfair process for taking depositions of witnesses—before documents have been collected—for

US_ACTIVE:\44335583\3\58399.0011

the purpose of taking testimony for an adversary proceeding. Deposing these witnesses before document discovery is complete would be counterproductive and unfair.

29.    Lehman agrees that both Mr. Taylor and Mr. Lo likely will need to be deposed as part of an adversary or claims objection proceeding, but that is precisely why those depositions should wait until both parties have all the documents and are fully prepared to take them. Indeed, Giants Stadium states in the Motion that "Mr. Taylor appears to have knowledge about, *inter alia*, (i) the planning, structure, and negotiation of the swaps at issue; (ii) the valuation of the bonds; (iii) the refinancing efforts; (iv) the termination of the swaps; (v) the market quotation measure required to calculate the termination payment owned to Giants Stadium, and (vi) post-bankruptcy activities," and that "Mr. Lo appears to have knowledge about, *inter alia*, (i) the valuation of the bonds, (ii) the auction process, (iii) the profitability of the swaps, and (iv) the resignation of the broker-dealer." Motion at ¶ 14(a)-(b). Having Giants Stadium depose these two Lehman employees outside of the adversary proceeding where the issues will be narrowed, and without full document discovery, almost certainly would lead to multiple depositions of the same witness, among other inefficiencies—inefficiencies that both the Court and the parties sought to avoid through the Protocol.[2]

30.    To the extent that it should be taken at all, any deposition of Sean Teague, too, should wait. The parties have not taken any discovery with respect to Mr. Teague, and indeed, Giants Stadium's misidentification of Mr. Teague as a current or former employee of Lehman or

---

[2] Courts routinely limit discovery to prevent needless duplicative discovery. *See Bassett v. Bando Sangsa Co., Ltd.*, 94 A.D.2d 358, 361, 464 N.Y.S.2d 500, 502 (1983) (instructing plaintiffs not to duplicate topics covered in interrogatories in depositions and finding that "[a]ny future disclosure should be limited to supplementation, not duplication"); *Kimmel v. Paul, Weiss, Rifkind, Wharton & Garrison*, 214 A.D.2d 453, 625 N.Y.S.2d 202 (1995) (interrogatories improperly requested information that was predominantly duplicative of information already obtained through earlier discovery).

a Lehman affiliate (Motion at ¶ 14(c)) only underscores the need for document discovery before his deposition is taken.

31.    Finally, nothing in this opposition will prevent Giants Stadium from taking depositions in connection with the adversary proceeding where the issues will be properly narrowed, at a time when all document discovery will be completed and the witnesses and parties will have the protections of the Federal Rules of Civil Procedure.

## III.    THE MOTION SHOULD BE DENIED WITH RESPECT TO ROBERT TAYLOR AND SEAN TEAGUE

32.    Giants Stadium's request for authority to issue subpoenas for Rule 2004 depositions of Messrs. Taylor and Teague should be denied for independent reasons.

33.    The fact-finding, investigatory purpose of Rule 2004 discovery (*see In re Bennett Funding Group*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)) is in no way served by deposing Mr. Taylor, who Giants Stadium already has interviewed.  A Rule 2004 deposition of Mr. Taylor would provide no additional benefit to the parties with respect to the investigation of the claims and defenses; it merely would be for strategic reasons for use in the adversary proceeding, which LBSF soon will commence.  Moreover, because the issues will be narrowed by the adversary complaint, Mr. Taylor's deposition should be taken after the complaint is filed and in the context of the narrowed adversary proceeding.

34.    Mr. Teague is a third-party, non-Lehman witness who does not appear to have had any role in Giants Stadium's valuations of the swaps and who was not involved negotiating or executing the swaps in any way.  Indeed, Mr. Teague does not appear to have any direct knowledge of the "auction process, . . . valuation of the bonds, [or] risks associated with the swaps" before the termination of the swaps by Giants Stadium—the reasons Giants Stadium proffers for seeking his testimony (Motion at ¶ 14(c)).  "Third parties," like Mr. Teague, "are . . .

US_ACTIVE:\44335583\3\58399.0011

subject to examination under [Rule 2004] if they possess knowledge of a debtor's acts, conduct, or financial affairs which relate to the bankruptcy proceeding."  *Id.* (citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)); *In re Ecam Publications, Inc.,* 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991)); *see also Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (holding that the party sought to be examined was not properly subject to a Rule 2004 examination because he "has not been shown to have been involved in the debtor's business affairs in any way, save for his purchase of the Sherman Avenue apartment property").  On the face of the Motion, Giants Stadium does not provide any post-termination justification for taking Mr. Teague's deposition pursuant to Rule 2004.

35.    Notably, Sullivan & Cromwell LLC itself, representing Baupost—the current holder of the amended proofs of claim—moved to quash a Rule 2004 subpoena that Lehman served on Baupost by taking seemingly inconsistent positions from those taken in this Motion. Specifically, Baupost moved to quash the subpoena on the grounds it "had no involvement in the circumstances and events underlying the Claim" because Baupost acquired the claims after the relevant transactions were terminated.  *See* Dkt. No. 38941 ¶ 13.  Sullivan & Cromwell, in fact, argued that "a third party's valuation of the Bonds or Actual Rate Swaps is plainly irrelevant to the administration of Debtor's bankruptcy estates and accordingly no good cause can exist to compel discovery of, if any, Baupost valuations."  *See* Dkt. No. 38941 ¶ 25.  While Baupost was a direct participant in the matters concerning the swaps—most notably, the decision to improperly amend the proofs of claim years after the termination of the swaps and the bar date in the bankruptcy—Mr. Teague was never, as Giants Stadium erroneously asserts, an employee of Lehman, and Giants Stadium has not provided any justification for taking the deposition of Mr. Teague in the Rule 2004 process.

US_ACTIVE:\44335583\3\58399.0011

36.      When a deposition or document discovery is sought for a purpose other than factual investigation, Rule 2004 is not the proper vehicle.  *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'") (citations omitted).  As noted above, LBSF is preparing to proceed to orderly litigation of the issues through an adversary proceeding.  These depositions should be conducted within an adversary proceeding, under the appropriate federal rules, and only after all document discovery has been completed.  *See In re Bennett Funding Group*, 203 B.R. at 28 (explaining the "well recognized rule that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 et seq., rather than by a Fed. R. Bankr. P. 2004 examination.").

37.      Indeed, "[t]he scope and propriety of an examination pursuant to Fed. R. Bankr. P. 2004 in the shadow of a pending adversary proceeding has been the subject of much judicial discussion and 'line drawing'" for good reason.  *See id.*  Rule 2004 discovery does not provide the procedural safeguards provided for in the Federal Rules of Civil Procedure.  Important among those safeguards (and absent in discovery under Rule 2004) is the "right to object to immaterial or improper questions."  *See id.* (citing *In re Dinubilo*, 177 B.R. at 939-940; *In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr. D. Mass. 1983)).  Here, where Lehman will soon file an adversary complaint that narrows the issues in dispute, the ability to make sure witnesses—especially third party witnesses—are not burdened with immaterial or irrelevant deposition questions makes sense.

## IV.    GIANTS STADIUM FAIED TO COMPLY WITH THE PROTOCOL

US_ACTIVE:\44335583\3\58399.0011

38.    Finally, Giants Stadium violated the Protocol by seeking the depositions of more than two Lehman deponents.  The Protocol permits "[e]ach side [to] seek to depose one or more specific individuals with personal knowledge (***not more than two individuals in connection with the 2004 process***) from either Giants Stadium or Lehman."  Slack Dec., Ex. D, ¶ 2 (emphasis added).

39.    Giants Stadium already noticed the depositions of Seth Konheim and Julia Nand as part of the Rule 2004 process and seeks the depositions by issuance of a subpoena, under Rule 2004, of at least two other former Lehman employees—Mr. Taylor and Mr. Lo.  Giants Stadium recognized this issue in its motion, arguing that it has complied with the Protocol because *former* employees are third-parties and "there is no limit on the number of third-party witnesses that Giants Stadium may depose."  Motion at n.4.[3]  But the language of Paragraph 2 does not limit "individuals . . . from . . . Lehman" to current employees; that construction makes no sense where, as here, not one of the witnesses with personal knowledge of the execution of the underlying swaps during the relevant time period continues to work at the estate.  Thus, the parties intended the Protocol to include any employees from Lehman—both current and former.

40.    In any event, Giants Stadium will have ample opportunity to depose appropriate witnesses under the Federal Rules of Civil Procedure.  Accordingly, to promote orderly administration of the litigation and non-duplicative, streamlined discovery, the parties should

---

[3] None of the cases that Giants Stadium cites in support of its argument (Motion at n.4) are germane.  First, Giants Stadium ignores the operative language of the paragraph at issue—"individuals with personal knowledge (***not more than two individuals in connection with the 2004 process***) from . . . Lehman" which defines the scope of the prohibition.  Slack Dec. Ex. D, ¶ 2.  This operative language provides no limitation that the witness "from Lehman" be a current employee.  Second, none of the cases have even remotely analogous facts.  For example, in *Dale v. First Am. Nat'l Bank*, 395 F. Supp. 2d 451 (S.D. Miss. 2005), the court evaluated whether a former employee was a "party" witness for the purpose of determining whether transfer of venue based on the convenience of the parties was warranted.  *Pecorino v. Vutec Corp.*, 2012 WL 5989918 (E.D.N.Y. Nov. 30, 2012) and *In re Connetics Sec. Litig.*, 2007 WL 1522614 (S.D.N.Y. May 23, 2007) similarly analyze the position of former employees in the context of a venue dispute.  Cases of civil procedure disputes are of no import in determining, as must be done here, whether the parties intended to include former employees as party deponents in a protocol governing Rule 2004 discovery.  The remaining cases cited by Giants Stadium, *LeClair v. Napoli Group, LLC*, 2011 WL 2517228 (D. Vt. June 23, 2011) and *Jewell-Rung Agency, Inc. v. Haddad Org., Ltd.*, 814 F. Supp. 337 (S.D.N.Y. 1993), consider the ethical implications of counsel for a corporation representing former employees—an issue not raised in the Motion.

14

complete any outstanding document discovery and commence depositions in the adversary proceeding expeditiously thereafter.

## <u>CONCLUSION</u>

For the reasons stated herein, Lehman respectfully requests that the Court deny the Motion.

Dated: September 26, 2013
New York, New York

By:  /s/ Richard W. Slack
       Richard W. Slack
       Robert J. Lemons
       Lauren Hoelzer Helenek

       WEIL, GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York 10153
       Telephone: (212) 310-8000
       Facsimile: (212) 310-8007

       *Attorneys for Lehman Brothers Holdings Inc.*
       *and Lehman Brothers Special Financing Inc.*