WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard W. Slack
Robert J. Lemons
Lauren Hoelzer Helenek

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| **In re** | :    **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | :    **08-13555 (JMP)** |
| | : |
| **Debtors.** | :    **(Jointly Administered)** |

---------------------------------------------------------------------x

**DECLARATION OF RICHARD W. SLACK IN SUPPORT OF**
**OPPOSITION TO MOTION OF GIANTS STADIUM LLC FOR AUTHORIZATION TO**
**ISSUE THIRD-PARTY DEPOSITION SUBPOENAS**
**UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016**

I, RICHARD W. SLACK, hereby declare:

1.     I am a member of the Bar of this Court and a partner of Weil, Gotshal & Manges

LLP, attorneys for Lehman Brothers Special Financing ("LBSF") and Lehman Brothers

Holdings, Inc. ("LBHI," and, together with LBSF, "Lehman").  I submit this declaration in

support of Lehman's opposition to the motion ("Motion") of Giants Stadium, LLC ("Giants

Stadium") for authorization to issue third-party deposition subpoenas under Federal Rule of

Bankruptcy Procedure 2004 ("Rule 2004") and Federal Rule of Bankruptcy Procedure 9016.

2.     On November 23, 2009, the Bankruptcy Court issued an order authorizing the

Debtors to serve 2004 discovery.  Attached hereto as Exhibit A is a true and correct copy of the

Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and

Authorizing the Examination of Persons and Entities, dated November 23, 2009.

      3.      Pursuant to that order, Lehman served requests for documents on Giants Stadium

and took one Rule 2004 deposition of Christine Procops, Giants Stadium's CFO and a

representative of Giants Stadium, in order to, among other things, help it evaluate the proofs of

claim that Giants Stadium had filed in Lehman's chapter 11 proceedings as well as potential

claims against Giants Stadium arising out of swap transactions between LBSF and Giants

Stadium.

      4.      As part of Lehman's Rule 2004 investigation, Lehman's counsel interviewed

Robert Taylor, a former Managing Director in Municipal Derivatives at LBSF who no longer

works for Lehman.  During this interview, Lehman learned that counsel for Giants Stadium

previously had interviewed Mr. Taylor concerning the swaps between LBSF and Giants Stadium.

      5.      Attached hereto as Exhibit B is a true and correct copy of a screen shot of a

LinkedIn webpage purporting to be Rob Taylor's LinkedIn Profile, *available at*

http://www.linkedin.com/profile/view?id=33979649&authType=NAME_SEARCH&authToken

=aMx_&locale=en_US&srchid=263819362138020708956&srchindex=1&srchtotal=19&trk=vs

rp_people_res_name&trkInfo=VSRPsearchId%3A263819362138020708956%2CVSRPtargetI

d%3A33979649%2CVSRPcmpt%3Aprimary, accessed on September 26, 2013, which states that

Rob Taylor moved from Lehman to Barclays in 2008 and currently is a Managing Director at

Barclays.

      6.      On December 6, 2011, three years after the termination of the swaps and two

years after filing its original proofs of claim, Giants Stadium filed a supposed amendment of the

proofs of claim that doubled the amounts sought by Giants Stadium from approximately $300 million to approximately $600 million.

7.    In an effort to understand the basis for the amendment to the proofs of claim, Lehman sought additional Rule 2004 discovery from Giants Stadium by issuing a Rule 2004 document subpoena on April 9, 2012, seeking, among other things, information about the amended claims.

8.    Giants Stadium moved to quash this subpoena and filed a motion to conduct Rule 2004 discovery of Lehman.

9.    On November 14, 2012, the Court heard the parties' motions concerning Rule 2004 discovery.  Excerpts of a true and correct copy of the transcript of the November 14, 2012 Omnibus transcript are attached hereto as Exhibit C.

10.    On April 1, 2013, Giants Stadium and Lehman executed a discovery protocol agreement (the "Protocol"), a true and correct copy of which is attached hereto as Exhibit D.

11.    Lehman has served third-party subpoenas for the production of documents pursuant to Rule 2004 upon third parties.  A true and correct copy of the subpoena served on Financial Guaranty Insurance Company ("FGIC") on April 9, 2012 is attached hereto as Exhibit E.  A true and correct copy of the subpoena served on Financial Security Assurance, Inc. ("FSA") on July 19, 2013 is attached hereto as Exhibit F.  A true and correct copy of the subpoena served on Goldman, Sachs & Co. ("Goldman") on May 8, 2013 is attached hereto as Exhibit G.  A true and correct copy of the subpoena served on Baupost Group, LCC ("Baupost") on May 24, 2013 is attached hereto as Exhibit H.

12.    Currently, Lehman is waiting to receive documents from FGIC, FSA, Goldman, and Baupost in response to the subpoenas.

13.     In addition, Giants Stadium has filed a motion to serve a third-party subpoena for the production of documents pursuant to Rule 2004 upon Lehman Brothers Inc. ("LBI"), a true and correct copy of which is attached hereto as Exhibit I.

14.     The hearing date for Giants Stadium's motion to authorize the LBI subpoena has been adjourned numerous times and the deadline to oppose such subpoena has not yet passed.

15.     Attached hereto as Exhibit J is a true and correct copy of the letter sent by Bruce Clark, counsel for Giants Stadium, to me, dated August 13, 2013.

16.     Attached hereto as Exhibit K is a true and correct copy of the letter sent by my colleague, Lauren Hoelzer, to Bruce Clark, dated August 15, 2013.

17.     Attached hereto as Exhibit L is a true and correct copy of the Notice of Deposition for Julia Nand, served August 28, 2013.  Julia Nand is a former employee of Lehman.

18.     Attached hereto as Exhibit M is a true and correct copy of the Notice of Deposition for Seth Konheim, served August 28, 2013.  Seth Konheim is a current employee of Lehman.

19.     Attached hereto as Exhibit N is a true and correct copy of a screen shot of a LinkedIn webpage purporting to be David Lo's Linkedin Profile, *available at* http://www.linkedin.com/profile/view?id=186079036&authType=NAME_SEARCH&authToken=dKHc&locale=en_US&srchid=2638193621380207057417&srchindex=1&srchtotal=1&trk=vsrp_people_res_name&trkInfo=VSRPsearchId%3A2638193621380207057417%2CVSRPtargetId%3A186079036%2CVSRPcmpt%3Aprimary, accessed on September 26, 2013, which states that Mr. Lo worked at Lehman Brothers from August 1999 until September 2008, and worked at Barclays Capital from September 2008 until May 2013.

US_ACTIVE:\44335270\7\58399.0011

20.     Attached hereto as Exhibit O is a true and correct copy of a screen shot of a LinkedIn webpage purporting to be Sean Teague's Linkedin Profile, *available at* <http://www.linkedin.com/profile/view?id=180968058&authType=NAME_SEARCH&authToken=PXhw&locale=en_US&srchid=2638193621380207019164&srchindex=2&srchtotal=2&trk=vsrp_people_res_name&trkInfo=VSRPsearchId%3A2638193621380207019164%2CVSRPtargetId%3A180968058%2CVSRPcmpt%3Aprimary>, accessed on September 26, 2013, which states that Mr. Teague currently works at Barclays Capital and indicates that Mr. Teague never worked for Lehman.

21.     Neither Lehman not Giants Stadium has issued subpoenas for documents to Barclays Capital, Mr. Taylor, Mr. Lo, or Mr. Teague.

Executed on this 26th day of September, 2013, in New York, New York.

I declared under penalty of perjury that the foregoing is true and correct.

  /s/  Richard W. Slack
    Richard W. Slack, Esq.

5

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                              :
                              **Debtors.**    :        **(Jointly Administered)**
                                              :
-----------------------------------------------------------------------x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

4

ORDERED that, this Order is without prejudice to the Debtors' right to

file further motions seeking additional documents and testimony pursuant to Bankruptcy

Rule 2004(a) or any other applicable law.

Dated: New York, New York
      November 23, 2009

                   *s/ James M. Peck*
                 HONORABLE JAMES M. PECK
                 UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B





Search for people, jobs, companies, and more... Business Services Upgrade

Paralegal Cert In 14 Week - Get your Paralegal Certificate Online from Boston U CPE in only 14 Weeks! | Read More »

# Rob Taylor

Managing Director at Barclays

Greater New York City Area | Financial Services

| | |
|---|---|
| Current | Barclays Capital |
| Previous | Lehman Brothers, smith barney |
| Education | Princeton University |

**115** connections

www.linkedin.com/pub/rob-taylor/b/468/195

## Background

### Experience

**Managing Director**
Barclays Capital
2008 – Present (5 years)

**Managing Director**
Lehman Brothers
1992 – 2008 (16 years)

**2nd VP**
smith barney
1987 – 1992 (5 years)

### Education

**Princeton University**
MS, MAE
1984 – 1987

## Groups

**Municipal Bond Forum**
Join

**Princeton Dynamics ...**
Join

## Following

**Financial Services**
414,343 followers
Follow

**Barclays Investment Bank**

## People Similar to Rob

**Chase Landreth,**
Managing Director, Barclays
**Connect**

ADS YOU MAY BE INTERESTED IN

**107 New NY Clients**
107 new legal clients seeking a New York attorney. View their cases today.

**Legal Marketing Magazine**
LMA is Offering a Free Copy of "Strategies" a Legal Marketing Journal Now.

**Master of Public Admin**
Master of Public Administration Online from UNC. US News Top-25 Program.

## People Also Viewed

**Charlie Ellinwood**
Managing Director at Barclays Capital

**David Stephan**
Director at Barclays Capital

**Kym Arnone**
Managing Director at Barclays Capital

**Gary Brandt**
Managing Director at Wells Fargo Securities

**Craig Kornett**
Managing Director at H2C Hammond Hanlon Camp LLC

**Ben Klemz**
Director at Hammond Hanlon Camp LLC

**Violeta Sacara**
Senior Analyst at Barclays Capital

**James Molloy**
Principal at Hammond Hanlon Camp LLC

**Robert Kintner**
Senior Vice President, Director of Echo Monitoring Solutions

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | **Upgrade Your Account**

LinkedIn Corporation © 2013   | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | **Send Feedback**

# EXHIBIT C

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS, INC.,        CAUSE NO.

7    et al,                                 08-13555(JMP)

8           Debtors.

9    - - - - - - - - - - - - - - - - - x

10   In re

11   LEHMAN BROTHERS, INC.,                 CAUSE NO.

12          Debtor.                         08-01420(JMP)(SIPA)

13   - - - - - - - - - - - - - - - - - -x

14

15                    U.S. Bankruptcy Court

16                    One Bowling Green

17                    New York, New York

18

19                    November 14, 2012

20                    10:02 AM

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25   ECRO:  MATTHEW

Page 2

1   HEARING re Notice of Final Applications of Retained

2   Professionals for Final Allowance and Approval of

3   Compensation for Professional Services Rendered and

4   Reimbursement of Actual and Necessary Expenses Incurred from

5   September 15, 2008 to March 6, 2012 (ECF Nos. 31901)

6

7   HEARING re Plan Administrator's Cross-Motion to Compel

8   Giants Stadium LLC to comply with Rule 2004 Subpoenas and

9   Objection to Giants Stadium's Motion to Quash the Rule 2004

10  Subpoenas (ECF No. 31652)

11

12  HEARING re Motion to Quash a Subpoena filed by Bruce E.

13  Clark on behalf of Giants Stadium LLC (ECF No. 31339)

14

15  HEARING re Amended Motion of Giants Stadium LLC for Leave to

16  Conduct Discovery of the Debtors Pursuant to Federal Rule of

17  Bankruptcy Procedure 2004 (ECF No. 31105)

18

19  SIPA PROCEDURES

20  HEARING re Motion Pursuant to Federal Rule of Bankruptcy

21  Procedure 9019 for Entry of an Order Approving Settlement

22  Agreement Between the Trustee and Lehman Brothers Finance

23  AG, in Liquidation (a/k/a Lehman Brothers Finance SA, in

24  Liquidation)(LBI ECF No. 5362)

25

Page 3

1    HEARING re Trustee's Motion Pursuant to Section 105(a) of

2    the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b)

3    for Approval of General Creditor Claim (I) Objections

4    Procedures and (II) Settlement Procedures (LBI ECF No. 5392)

5

6    HEARING re Debtor's Three Hundred Fifty-Seventh Omnibus

7    Objection to Claims (Misclassified Claims (ECF No. 31048)

8

9    HEARING re Objection to Claim No. 17763 Filed by Laurel Cove

10   Development, LLC (ECF No. 29187)

11

12   HEARING re Three Hundred Twentieth Omnibus Objection to

13   Claims (No Liability Rose Ranch LLC Claims)(ECF No. 29292)

14

15   HEARING re Debtor's Three Hundred Twenty-Ninth Omnibus

16   Objection to Claims (Misclassified Claims)(ECF No. 29324)

17

18   HEARING re Motion for an Order Pursuant to Section 105(a) of

19   the Bankruptcy Code and Bankruptcy Rule 9019, Authorizing

20   and Approving the Settlement with Lehman Brothers, Inc. (ECF

21   No. 43)

22

23   HEARING re Turnberry Centra Sub, LLC et al v Lehman Brothers

24   Holdings, Inc., et al (Adversary Case No. 09-01062)

25   Transcribed by:  Sheila Orms and William Garling

Page 4

1   A P P E A R A N C E S :

2

3   WEIL, GOTSHAL & MANGES LLP

4        Attorneys for Lehman Brothers Holdings, Inc.

5        767 Fifth Avenue

6        New York, NY 10153

7

8   BY:   RICHARD W. SLACK, ESQ.

9        JACQUELINE MARCUS, ESQ.

10        KYLE ORTIZ, ESQ.

11        CANDACE ARTHUR, ESQ.

12

13   WEIL, GOTHAL & MANGES LLP

14        Attorneys for Lehman Brothers Holdings, Inc.

15        1395 Brickett Avenue

16        Suite 1200

17        Miami, FL  33131

18

19   BY:   EDWARD R. MCCARTHY, ESQ.

20

21

22

23

24

25

Page 5

```
 1   PAUL WEISS RIPKIND WHARTON & GARRISON LLP

 2         Attorneys for Houlihan Lokey Howard & Zukin Capital,

 3            Inc.

 4         1295 Avenue of the Americas

 5         New York, NY  10019

 6

 7   BY:   ALAN W. KORNBERG, ESQ.

 8         PHILLIP Q. WEINTRAUB, ESQ.

 9

10   LATHAM & WATKINS LLP

11         Attorneys for Ernest & Young LLP

12         53rd at Third, 855 Third Avenue

13         New York, NY  10022

14

15   BY:   MICHAEL RIELA, ESQ.

16

17   CARMODY MACDONALD

18         Attorneys for Alvarez & Marsal

19         120 S. Central Avenue

20         Suite 1800

21         St. Louis, MO  63105-1705

22

23   BY:   GREGORY D. WILLARD, ESQ.

24

25
```

Page 6

```
 1   HUGHES HUBBARD

 2          Attorneys for SIPA Trustee

 3          One Battery Park Plaza

 4          New York, NY  10004-1482

 5

 6   BY:  JEFFREY S. MARGOLIN, ESQ.

 7          JEFFREY M. GREILSHEIMER, ESQ.

 8          MEAGHAN C. GRAGG, ESQ.

 9

10   GODFREY KAHN S.C.

11          Attorneys for Fee Committee

12          One East Main Street

13          Suite 500

14          Madison, WI  54701

15

16   BY:  KATHERINE STADLER, ESQ.

17          RICHARD GITLIN, ESQ.

18

19   SULLIVAN & CROMWELL, LLP

20          Attorneys for Giants Stadium

21          125 Broad Street

22          New York, NY  10004

23

24   BY:  THOMAS JOHN WRIGHT, ESQ.

25          BRUCE E. CLARK, ESQ.
```

Page 7

1   STAGG, TERENZI, CONFUSIONE & WAHNIK, LLP

2       Attorneys for Laurel Cove Development

3       401 Franklin Avenue

4       Suite 300

5       Garden City, NY  11530

6

7   BY:   CARA M. GOLDSTEIN, ESQ.

8

9   DECHERT, LLP

10      Attorneys for ???

11      1095 Avenue of the Americas

12      New York, NY  10036

13

14   BY:   NICOLE B. HERTHER-SPIRO, ESQ.

15

16   GIBSON DUNN

17      Attorneys for Lehman Brothers Finance AO

18      2100 McKinney Avenue

19      Dallas, TX  75201-6912

20

21   BY:   ROBERT B. KRAKOW, ESQ.

22

23

24

25

Page 8

1    CLEARY GOTTLIEB STEEN & HAMILTON LLP

2         Attorneys for ???

3         One Liberty Plaza

4         New York, NY  10006

5

6    BY:   JOSH E. ANDERSON, ESQ.

7

8    MEISTER SEELIG & FEIN LLP

9         Attorneys for ???

10        2 Grand Central Tower

11        140 East 45h Street

12        19th Floor

13        New York, NY  10017

14

15   BY:   STEPHEN B. MEISTER, ESQ.

16

17   UNITED STATES DEPARTMENT OF JUSTICE

18        Attorney for the Office of the United States Trustee

19        76 Chapel Street, Suite 200

20        Albany, NY 12207

21

22   BY:   SUSAN GOLDEN, ESQ. (TELEPHONICALLY)

23

24   OTHERS PRESENT:

25   THERESA CARPENTER, BREGAL INVESTMENTS, INC.

1   TELEPHONIC APPEARANCES:

2

3   ANASTOLY BUSHLER, FARALLON CAPITAL MANAGEMENT

4   JEFFREY H. DAVIDSON, STUTMAN, TRIESTER & GLATT

5   NICK LANE, WITNESS, WEIL, GOTSHAL & MANGES LLP

6   TRISTA S. LYONS, PRO SE

7   MICHAEL NEUMEISTER, STUTMAN, TREISTER & GLATT

8   MITCHELL SOCKETT, KING STREET CAPITAL MANAGEMENT, LLC

9   KATHERINE A. TRADER, PAUL HASTINGS, LLP

10   JEFFREY H. DAVIDSON, STUTMAN, TREISTER & GLATT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 56

1    look at the -- I know Your Honor's familiar with all this,

2    so I'm not going to belabor it, but if you look at the

3    background, the Cameron case and all the other cases that

4    dealt with the origins of Rule 2004.  Originally it dealt

5    with a situation where a receiver came in, wasn't familiar

6    with the debtor, and had to have an expansive and quick,

7    quick review of the debtor's assets in order to protect

8    creditors.  That's what any number of the cases have said.

9         It is not an excuse to allow a debtor in the

10   circumstances present here to just continue with their

11   investigation because the investigation is preliminary and

12   not final, and it's final because it's preliminary.  That's

13   what they're saying.  It's a little circular, and I think we

14   ought to move on.  Thank you.

15        THE COURT:  Okay.  Well, thank you for your candor

16   in answering the Court's questions and in your

17   presentations.  I don't see this as a typical use of Rule

18   2004.  Nor do I see it as a case that will open the

19   proverbial floodgates of other discovery in part because Mr.

20   Slack in his presentation, candidly observed that at this

21   juncture, more than four years into the Lehman bankruptcy

22   case, his client really doesn't fully understand all

23   elements of claims arising out of this complicated auction

24   rate hedge.

25        And it's apparent that if they could determine now

Page 57

1    that they had an affirmative claim, they would assert it.

2    Lehman has not been shy about asserting such claims in the

3    past.  Additionally, it seems fairly obvious that if Lehman

4    had sufficient information available to it that would

5    support not just a shotgun approach objection but a specific

6    and tailored objection to the claim, it would file it.

7            Throughout this case, Lehman has been active in

8    filing and pursuing objections to claims, and in fact, part

9    of this morning's agenda relates to objections to claims.

10   And so I view this as an exceptional case.  And, in fact,

11   that was one of the reasons I asked a number of questions at

12   the outset to determine to what extent the issues that

13   related to this discovery dispute were exceptional and

14   unique, and to what extent this was just another example of

15   a derivatives dispute, this one happening to have the

16   negative gloss of active discovery disputes, as opposed to

17   active negotiations leading to a settlement.

18           I believe a continuing 2004 discovery under the

19   circumstances makes sense, although the fact that this is

20   occurring 14 months after our last discovery dispute is a

21   terribly negative fact.  One conclusion to be drawn from the

22   mere timing of this, is that this dispute is taking too long

23   to resolve, and that despite best efforts, reasonable people

24   are unable to get to yes, and they should.

25           And so I'm going to propose that counsel meet and

Page 58

1    confer in an effort to develop what I'll call a reciprocal

2    discovery protocol, and it is not necessarily limited to

3    2004.  I believe that one of the things that distinguishes

4    the dispute that I've heard a lot about this morning from

5    other disputes, is that there is no foreseeable outcome here

6    in which Lehman is not objecting, or bringing affirmative

7    claims relief.

8         This is not a situation in which Lehman is engaging

9    in a 2004 process to later shake hands, and say here's the

10   money.  I also believe even though everybody has denied this

11   that the 2004 dance that we're engaged in necessarily has

12   tactical aspects to it.  And so here's what I am directing.

13        Between now and the first of the year, I would like

14   the parties to develop and agreed discovery protocol that

15   will be applicable whether we're dealing with 2004 discovery

16   or claims related discovery.  It would be extraordinarily

17   wasteful for the discovery that's taken in 2004 to be

18   replicated again.  And in the case of Ms. Prokopse, that's

19   already happening.  Enough already.

20        I recognize that the 2004 sword is more properly

21   used by the debtor than by the creditor in this instance.

22   And so discovery from third parties and discovery from Giant

23   Stadium and discovery from Goal Line may be more appropriate

24   than discovery from the debtor.  But that does not mean that

25   some discovery from the debtor is not also to be part of

Page 59

1     this process.

2              One of the mysteries from the perspective of the

3     Court is that this third party discovery and discovery from

4     others is so critical from the debtor's perspective in being

5     able to formulate its own position with respect to the

6     claim.  But I accept the representations made that ongoing

7     2004 discovery is needed in order for the debtor to complete

8     its investigation to use its words.

9              I would ask the parties to report the results of

10    these efforts at the December omnibus hearing.  You don't

11    have to the point of an agreement, in fact, you could be to

12    the point of no agreement.  I'd like to know that, in which

13    case I will then be able to either rule or take this matter

14    under advisement, but I have I think provided sufficient

15    guidance here to suggest that what I consider to be an

16    appropriate result is reasonable discovery going in both

17    directions with the understanding that the need for that

18    discovery is more obviously greater for the debtor.  And

19    this is not an example of gotcha because I am indicating in

20    agreement that continued 2004 discovery is appropriate for

21    the debtor and the debtor's benefit.

22             I'm also noting the time's up in effect.  This has

23    to come to a conclusion.  And I don't expect there to be

24    another discovery dispute between the parties until there's

25    active litigation between you.  And I hope that doesn't

Page 60

1   occur at that point either.  So I'll hear from you next

2   time.

3           MR. CLARK:  Your Honor, just a question of

4   clarification.  How does the January 1st deadline fit with

5   the next omnibus hearing?  I'm not --

6           THE COURT:  I don't know.

7           MR. CLARK:  Okay.

8           THE COURT:  I'm just looking for a status report at

9   the next omnibus hearing.  And if it doesn't fit well for

10  the parties, it can always be put off, and then we can make

11  that a telephone conference.

12          MR. CLARK:  Thank you, Your Honor.

13          MS. MARCUS:  Your Honor, the December hearing is

14  December 19th.

15          THE COURT:  18th?

16          MS. MARCUS:  19th.

17          THE COURT:  That seems like a perfect date for a

18  status report.

19          MR. MARGOLIN:  The omnibus hearing is on December

20  12th, Your Honor.

21          THE COURT:  Why am I hearing different dates?

22          MS. MARCUS:  Sorry.  Sorry, Your Honor.  December

23  12th, sorry about that.

24          THE COURT:  December 12th is a perfect date, too.

25  Either one's fine.

# EXHIBIT D

## DISCOVERY PROTOCOL AGREEMENT

On behalf of their clients, the undersigned hereby agree as follows:

1.    Responses and objections to document demands.  Giants Stadium LLC ("Giants Stadium") and Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc. (jointly, "Lehman") each have document demands pending against the other.  Each will serve responses and objections or amended responses and objections to those pending demands. Written responses to document requests should be served by March 15, 2013, with responsive documents produced by April 30, 2013.  Lehman and Giants Stadium reserve all rights to serve additional document requests at any time, and to serve responses and objections to such requests. For purposes of Rule 2004 document demands only between Lehman and Giants Stadium, neither side will be required to prepare or serve a privilege log.  Lehman and Giants Stadium do not waive their rights to obtain a privilege log from any third party which they subpoena under the Rule 2004 order.  Each side reserves the right to require privilege logs in discovery in a contested matter or adversary proceeding, if necessary, and the parties reserve the right to object as necessary.

2.    Party depositions.  At this Rule 2004 stage, neither side will seek a Rule 30(b)(6) deposition of the other.  Each side may seek to depose one or more specific individuals with personal knowledge (not more than two individuals in connection with the 2004 process) from either Giants Stadium or Lehman, and will provide notice to the other side of such depositions on or before May 14, 2013.  At the time of the notice, the party seeking the deposition will make a proffer of the relevant personal knowledge they seek to elicit in the deposition.  The parties agree to meet and confer, if necessary, concerning those depositions.  Depositions will commence after June 3, 2013.

3.    Third-party subpoenas. Each party will make a good faith attempt to identify by May 14, 2013 any third parties from whom they may seek documents or testimony in the 2004 process. This identification is not meant to limit the third-party discovery that may be sought in either the 2004 process or in a contested matter or adversary proceeding. Each party will serve notices and subpoenas on third parties or seek the Bankruptcy Court's permission to do so on or before May 22, 2013. Each party will be allowed to participate in any such third-party deposition, and each party will send to the other party documents it receives in response to a third-party subpoena. Giants Stadium acknowledges that to the extent it wishes to serve discovery requests on any third party, it must seek permission from the Bankruptcy Court to do so under Rule 2004. Lehman reserves the right to object to any such motion on any and all grounds.

4.    All discovery from the date of this agreement forward is to be governed by the existing confidentiality agreement and treated as useable in any eventual adversary proceeding or contested matter, and not to be repeated in any such contest, absent a showing of good cause.

5.    Nothing in this agreement prevents Lehman, in its sole discretion, from concluding at any time its 2004 investigation and making a determination to pursue litigation or file an objection to the claims submitted by Giants Stadium. In that event, the 2004 process and this agreement will terminate, except for paragraph 4 and except that discovery and/or depositions already properly noticed or subpoenaed (or referred to the Court for an issuance of a subpoena) may be completed subject to all objections (which are expressly preserved herein) other than the termination of Lehman's 2004 investigation, and the parties will be entitled to whatever rights they have in any adversary proceeding or contested matter to conduct or object to discovery.

2

Dated: April 1, 2013

Bruce E. Clark
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Giants Stadium LLC*

Richard W. Slack
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Lehman Brothers*
*Holdings Inc. and Lehman Brothers*
*Special Financing Inc.*

# EXHIBIT E

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

Southern _____ DISTRICT OF _____ New York

In re Lehman Brothers Holdings Inc., et al.,

**SUBPOENA FOR RULE 2004 EXAMINATION**

                        Debtor

Case No. 08-13555(JMP) _____

To:
Financial Guaranty Insurance Co.
125 Park Avenue
New York, New York  10017

Chapter 11 _____

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below, by an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A To The Order Attached Hereto.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

## Documents Requested By Exhibit A Attached Hereto

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | May 11, 2012 at 10:00 A.M. (EST) |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *Peter Gruenberger* | 4/9/12 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Peter Gruenberger; Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

FORM 254 Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE                                    SIGNATURE OF SERVER


                                                        ADDRESS OF SERVER


Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED BY FGIC

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

2.    "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF, dated October 2, 2008.

3.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

4.    "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

5.    "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings including, but not limited to, phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

6.    "Financing Transaction" shall mean shall mean any transaction(s) entered into by Giants Stadium to replace, refinance, or restructure the Bonds, and/or finance or refinance an open-air NFL stadium, whether or not the terms of such transaction(s) are identical to the transaction(s) relating to the Bonds.

7.    "FGIC," "You," and "Your" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

8.    "FSA" shall mean Financial Security Assurance, Inc. and its successor entity and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

9.    "Giants Stadium" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

10.    "Goldman Sachs" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

11.    "Indenture" shall mean the Indenture of Trust dated as of August 1, 2007, entered into by Giants Stadium and The Bank of New York, as trustee.

12.    "Insurance and Indemnity Agreement" shall mean the Insurance and Indemnity Agreement dated as of August 16, 2007, entered into by Giants Stadium and FGIC.

13.     "LBHI" shall mean Lehman Brothers Holdings, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

14.     "LBSF" shall mean Lehman Brothers Special Financing, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

15.     "LBI" shall mean Lehman Brothers, Inc.

16.     "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

17.     "Market Quotation" shall have the meaning ascribed to it in Section 12 of the Master Agreement, as amended in the relevant Confirmation.

18.     "Master Agreement" shall mean any of the following: (i) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FGIC; and/or (ii) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FSA.

19.     "NFL" shall mean the National Football League, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

20.     "Reference Market-makers" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

21.    "Replacement Transaction" shall mean any transaction entered into by Giants Stadium to replace, or establish a hedge in lieu of, the Transactions, whether or not the terms of such Replacement Transaction are identical to the terms of the Transactions.

22.    "S&C" shall mean the law firm of Sullivan & Cromwell LLP.

23.    "Supplemental Indenture" shall mean any supplement to the Indenture, including, but not limited to the Third Supplemental Indenture of Trust to the Indenture, dated and effective as of September 18, 2008, between Giants Stadium and The Bank of New York Mellon, as trustee.

24.    "Third Supplemental Indenture" shall mean the Third Supplemental Indenture of Trust dated and effective as of September 18, 2008, entered into by Giants Stadium and The Bank of New York Mellon, as trustee.

25.    "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

26.    "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

27.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

28.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

29.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

30.    If any Document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

31.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

32.    If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege

shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

33.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request.  The method for production of each category is to be identified at the time of production.  Documents are to be produced in full and unexpurgated form.

34.    Each page of each document should be numbered consecutively.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

35.    Documents attached to each other (physically or via electronic mail) should not be separated.

36.    In producing the requested documents, even though the requests are directed to "You," furnish all documents that are available to You, including documents in the possession of any of Your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such documents in Your possession.

37.    The requests that follow are to be regarded as continuing, and You are requested to provide by the way of supplementary compliance herewith, such additional documents as You may hereafter obtain, which will augment the documents now produced in response to the requests below.  Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after Your receipt thereof.

38.    At a future date, LBHI may request the production of additional documents based on information revealed during this document request.

39.    At a future date, LBHI may request to depose additional individuals based on information revealed during this document request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2007, through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents concerning the Indenture, any Supplemental Indenture, the Master Agreements, and the Confirmations, including, but not limited to, the negotiation (including drafts) and execution of the above agreements, and the meaning and/or interpretation of the terms of the above agreements.

REQUEST NO. 2

The final executed version of the Insurance and Indemnity Agreement.

REQUEST NO. 3

All documents concerning the Insurance and Indemnity Agreement (and all drafts thereof), including the negotiation and execution of the Insurance and Indemnity Agreement.

REQUEST NO. 4

All documents reflecting communications between and among, or on behalf of, You and any other party, including but not limited to LBHI, LBSF, LBI, Giants Stadium, Goldman Sachs, S&C, the NFL, and FSA concerning (i) the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, or the Insurance and Indemnity Agreement, (ii) the broker dealer function performed by LBI in connection with the Bonds,

including, but not limited to, LBI ceasing to be broker dealer, or (iii) Giants Stadium's purported

termination of the Transactions on or about September 18, 2008.

REQUEST NO. 5

All documents concerning Giants Stadium's purported termination of the

Transactions on or about September 18, 2008.

REQUEST NO. 6

All documents concerning the Third Supplemental Indenture.

REQUEST NO. 7

All documents concerning the Termination Letters and the Calculation

Statements, including all drafts thereof.

REQUEST NO. 8

All documents concerning any Replacement Transaction, even if such

Replacement Transaction ultimately was not consummated.

REQUEST NO. 9

All documents concerning any attempts by Giants Stadium to obtain Market

Quotations from Reference Market-makers in connection with Giants Stadium's purported

termination of the Transactions on or about September 18, 2008.

REQUEST NO. 10

All documents concerning any Financing Transaction, even if such Financing

Transaction ultimately was not consummated.

REQUEST NO. 11

All documents concerning Goldman Sachs' assumption of the broker dealer

function in connection with the Bonds.

REQUEST NO. 12

All documents concerning any valuation of the Transactions both prior to and following their purported termination on or about September 18, 2008.

REQUEST NO. 13

All documents concerning any valuation of the Bonds, both prior to and following September 18, 2008.

REQUEST NO. 14

Documents sufficient to identify persons who approved, consented to and/or had notice of Giants Stadium's intention to terminate the Transactions on or about September 18, 2008.

REQUEST NO. 15

Documents sufficient to identify persons who were involved in the negotiation and execution of the Third Supplemental Indenture.

REQUEST NO. 16

All documents concerning any proof of claim filed by Giants Stadium in the Lehman Bankruptcy.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                          :
In re                                     :    **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                          :
                      **Debtors.**        :    **(Jointly Administered)**
                                          :
--------------------------------------------------------------------x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

        ORDERED that the Motion is granted; and it is further

        ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

        ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

        ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

ORDERED that, this Order is without prejudice to the Debtors' right to

file further motions seeking additional documents and testimony pursuant to Bankruptcy

Rule 2004(a) or any other applicable law.


Dated: New York, New York
          November 23, 2009

       *s/ James M. Peck*
       HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT F

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

<u>SOUTHERN</u>_____DISTRICT OF_____<u>NEW YORK</u>

In re Lehman Brothers Holdings Inc., et al.,

                            Debtor

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No. <u>08-13555(JMP)</u>_____

Chapter <u>11</u>_____

To:
Assured Guaranty Municipal Corp.
31 West 52nd Street
New York, NY 10019

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below. A copy of the court order authorizing the examination is also attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | August 13, 2013 at 9:30 am (EST) |

| ISSUING OFFICER SIGNATURE AND TITLE                    , Attorney | DATE<br>July 12, 2013 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard W. Slack, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

US_ACTIVE:\44093360\4\58399.0011

FORM 254  Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED BY FSA

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

2.    "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF, dated October 2, 2008.

3.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

4.    "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

5.    "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings including phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

6.      "Financing Transaction" shall mean any transaction(s) entered into by Giants Stadium to replace, refinance, or restructure the Bonds, and/or finance or refinance an open-air NFL stadium, whether or not the terms of such transaction(s) are identical to the transaction(s) relating to the Bonds, including any long-term debt private placement.

7.      "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

8.      "FSA," "You" and "Your" shall mean Financial Security Assurance, Inc. and its successor entity and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

9.      "Giants Stadium" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

10.     "Goldman Sachs" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

11.     "Indenture" shall mean the Indenture of Trust dated as of August 1, 2007, entered into by Giants Stadium and The Bank of New York, as trustee.

12.     "Insurance and Indemnity Agreement" shall mean the Insurance and Indemnity Agreement dated as of August 16, 2007, entered into by Giants Stadium and FSA.

13.     "LBHI" shall mean Lehman Brothers Holdings Inc. and any person or entity acting on its behalf or under its control, but only to the extent acting in such capacity,

2

including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

14.    "LBSF" shall mean Lehman Brothers Special Financing Inc. and any person or entity acting on its behalf or under its control, but only to the extent acting in such capacity, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

15.    "LBI" shall mean Lehman Brothers Inc.

16.    "Lehman" shall mean LBHI and LBSF, collectively.

17.    "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

18.    "Market Quotation" shall have the meaning ascribed to it in Section 12 of the Master Agreement, as amended in the relevant Confirmation.

19.    "Master Agreement" shall mean the two standard form 1992 ISDA Master Agreements entered into by Giants Stadium and LBSF as of July 27, 2007, including any schedules and annexes thereto, and any confirmations thereunder.

20.    "NFL" shall mean the National Football League and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

21.    "Reference Market-makers" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

3

22.     "Replacement Transaction" shall mean any transaction entered into by Giants Stadium to replace, or establish a hedge in lieu of, the Transactions, whether or not the terms of such Replacement Transaction are identical to the terms of the Transactions.

23.     "S&C" shall mean the law firm of Sullivan & Cromwell LLP.

24.     "Supplemental Indenture" shall mean any supplement to the Indenture, including the Third Supplemental Indenture of Trust to the Indenture, dated and effective as of September 18, 2008, between Giants Stadium and The Bank of New York Mellon, as trustee.

25.     "Third Supplemental Indenture" shall mean the Third Supplemental Indenture of Trust to the Indenture dated and effective as of September 18, 2008, entered into by Giants Stadium and The Bank of New York Mellon, as trustee.

26.     "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

27.     "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

28.     The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all Documents which might otherwise be considered to be outside of that scope.

29.     The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this request Documents which might otherwise be beyond its scope.

30.     The word "including" shall means including, but not limited to.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

4

31.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

32.    If any Document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

33.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

34.    If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

5

35.     All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

36.     Each page of each Document should be numbered consecutively. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

37.     Documents attached to each other (physically or via electronic mail) should not be separated.

38.     In producing the requested Documents, even though the requests are directed to "You," furnish all Documents that are available to You, including Documents in the possession of any of Your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such Documents in Your possession.

39.     The requests that follow are to be regarded as continuing, and You are requested to provide by the way of supplementary compliance herewith, such additional Documents as You may hereafter obtain, which will augment the Documents now produced in response to the requests below. Such additional Documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after Your receipt thereof.

40.     At a future date, Lehman may request the production of additional Documents not herein requested, including information revealed as a result of information produced pursuant to this request or information revealed by other parties during the 2004 process or discovery in a proceeding.

6

41.    At a future date, Lehman may request to depose individuals based on information revealed during this request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2007, through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All Documents concerning the Indenture, any Supplemental Indenture, the Master Agreements, and the Confirmations, including the negotiation (including drafts) and execution of the above agreements, and the meaning and/or interpretation of the terms of the above agreements.

REQUEST NO. 2

The final executed version of the Insurance and Indemnity Agreement.

REQUEST NO. 3

All Documents concerning the Insurance and Indemnity Agreement (and all drafts thereof), including the negotiation and execution of the Insurance and Indemnity Agreement.

REQUEST NO. 4

All Documents reflecting communications between and among, or on behalf of, You and any other party, including LBHI, LBSF, LBI, Giants Stadium, Goldman Sachs, S&C, the NFL, and FGIC, concerning (i) the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, or the Insurance and Indemnity Agreement, (ii) the broker dealer function performed by LBI in connection with the Bonds, including LBI ceasing to

be broker dealer, or (iii) Giants Stadium's purported termination of the Transactions on or about

September 18, 2008.

REQUEST NO. 5

      All Documents concerning Giants Stadium's purported termination of the

Transactions on or about September 18, 2008.

REQUEST NO. 6

      All Documents concerning the Third Supplemental Indenture.

REQUEST NO. 7

      All Documents concerning the Termination Letters and the Calculation

Statements, including all drafts thereof.

REQUEST NO. 8

      All Documents concerning any Replacement Transaction, even if such

Replacement Transaction ultimately was not consummated.

REQUEST NO. 9

      All Documents concerning any attempts by Giants Stadium to obtain Market

Quotations from Reference Market-makers in connection with Giants Stadium's purported

termination of the Transactions on or about September 18, 2008.

REQUEST NO. 10

      All Documents concerning any Financing Transaction, even if such Financing

Transaction ultimately was not consummated.

US_ACTIVE:\44093360\4\58399.0011

REQUEST NO. 11

All Documents concerning Goldman Sachs' assumption of the broker dealer function in connection with the Bonds.

REQUEST NO. 12

All Documents concerning any valuation of the Transactions both prior to and following their purported termination on or about September 18, 2008.

REQUEST NO. 13

All Documents concerning any valuation of the Bonds, including any credit assessment of Giants Stadium or the New York Giants football club, both prior to and following September 18, 2008.

REQUEST NO. 14

Documents sufficient to identify persons who approved, consented to and/or had notice of Giants Stadium's intention to terminate the Transactions on or about September 18, 2008.

REQUEST NO. 15

Documents sufficient to identify persons who were involved in the negotiation and execution of the Third Supplemental Indenture.

REQUEST NO. 16

All Documents concerning any proof of claim filed by Giants Stadium in the Lehman Bankruptcy.

9

# EXHIBIT G

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

In re Lehman Brothers Holdings Inc., et al.,          **SUBPOENA FOR RULE 2004 EXAMINATION**

                              Debtor          Case No. 08-13555(JMP) _____

                                              Chapter 11 _____
To:
Goldman, Sachs & Co.
200 West Street
New York, NY 10282

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below.  A copy of the court order authorizing the examination is also attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP 767 Fifth Avenue New York, New York 10153 | June 9, 2013 at 9:30 am (EST) |

| ISSUING OFFICER SIGNATURE AND TITLE                    , Attorney | DATE 5/8/13 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard W. Slack, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

US_ACTIVE:\44251279\2\58399.0011

FORM 254  Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

2.    "Bridge Loan" shall mean the bridge refinancing transaction executed between Giants Stadium and Goldman Sachs in 2009.

3.    "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF, dated October 2, 2008.

4.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

5.    "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

6.    "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings including phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if

necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

7.    The word "including" shall mean including, but not limited to.

8.    "Financing Transaction" shall mean any transaction(s) entered into by Giants Stadium to replace, refinance, or restructure the Bonds, and/or finance or refinance an open-air NFL stadium, whether or not the terms of such transaction(s) are identical to the transaction(s) relating to the Bonds, including any long-term debt private placement.

9.    "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

10.    "FSA" shall mean Financial Security Assurance, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

11.    "Giants Stadium" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

12.    "Goldman Sachs," "You" and "Your" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

13.    "Indenture" shall mean the Indenture of Trust dated as of August 1, 2007, entered into by Giants Stadium and The Bank of New York, as trustee.

14.    "Insurance and Indemnity Agreement" shall have the meaning ascribed to it in Part 3(l) of the schedule to the Master Agreement.

15.    "LBHI" shall mean Lehman Brothers Holdings, Inc. and any person or entity acting on its behalf or under its control, but only to the extent acting in such capacity, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

16.    "LBSF" shall mean Lehman Brothers Special Financing, Inc. and any person or entity acting on its behalf or under its control, but only to the extent acting in such capacity, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

17.    "LBI" shall mean Lehman Brothers, Inc.

18.    "Lehman" shall mean LBHI and LBSF, collectively.

19.    "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

20.    "Master Agreement" shall mean the two standard form 1992 ISDA Master Agreements entered into by Giants Stadium and LBSF as of July 27, 2007, including any schedules and annexes thereto, and any confirmations thereunder.

21.    "NFL" shall mean the National Football League and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

22.    "Proofs of Claim" means any and all proofs of claim, including amended proofs of claim, filed by Giants Stadium in the Lehman Bankruptcy.

3

23.    "Reference Market-makers" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

24.    "Replacement Transaction" shall mean any transaction entered into by Giants Stadium to replace, or establish a hedge in lieu of, the Transactions, whether or not the terms of such Replacement Transaction are identical to the terms of the Transactions.

25.    "S&C" shall mean the law firm of Sullivan & Cromwell LLP.

26.    "Supplemental Indenture" shall mean any supplement to the Indenture, including the Third Supplemental Indenture of Trust to the Indenture, dated and effective as of September 18, 2008, between Giants Stadium and The Bank of New York Mellon, as trustee.

27.    "Third Supplemental Indenture" shall mean the Third Supplemental Indenture of Trust to the Indenture dated and effective as of September 18, 2008, entered into by Giants Stadium and The Bank of New York Mellon, as trustee.

28.    "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

29.    "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

30.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

31.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

4

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

32.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

33.    If any Document requested herein was formerly in your possession, custody or control (or that of your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

34.    If any Document requested herein is withheld on the basis of any claim of privilege, you are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

35.    If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege

5

shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

36.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

37.    Each page of each document should be numbered consecutively. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

38.    Documents attached to each other (physically or via electronic mail) should not be separated.

39.    In producing the requested documents, even though the requests are directed to "you," furnish all documents which are available to you, including documents in the possession of any of your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such documents in your possession.

40.    The requests which follow are to be regarded as continuing, and Goldman Sachs is requested to provide by the way of supplementary compliance herewith, such additional documents as Goldman Sachs may hereafter obtain, which will augment the documents now produced in response to the requests below. Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after receipt thereof.

41.    At a future date, Lehman may request the production of additional documents not requested herein, including information revealed as a result of information

6

produced pursuant to this document request or information revealed by other parties during the 2004 process or discovery in a proceeding.

42.    At a future date, Lehman may request to depose individuals based on information revealed during this document request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2007 through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents concerning the Transactions, including (i) their purported termination by Giants Stadium on or about September 18, 2008, (ii) any communications between Goldman and any party concerning the Transactions, and (iii) any communications between or among employees of Goldman concerning the Transactions.

### REQUEST NO. 2

All documents concerning any valuation of the Transactions, including (i) the valuation(s) contained in the Calculation Statements and the Proofs of Claim, and (ii) the methodology or methodologies used, considered and rejected in determining the value of the Transactions.

### REQUEST NO. 3

All documents received, reviewed, considered or analyzed in connection with the valuation of the Transactions and preparation of the Calculation Statements and Proofs of Claim.

US_ACTIVE:\44149302\9\58399.0011

REQUEST NO. 4

All documents concerning the Calculation Statements.

REQUEST NO. 5

All documents concerning the Proofs of Claim filed in the Lehman Bankruptcy, including documents concerning Giants Stadium's decision to supplement or amend its Proofs of Claim.

REQUEST NO. 6

All documents concerning any swap agreement(s) entered into by Giants Stadium and Goldman Sachs in connection with Subseries A-2 and A-3 of the Bonds.

REQUEST NO. 7

All documents concerning any actual or considered Replacement Transaction.

REQUEST NO. 8

All documents concerning the Bridge Loan, including documents relating to refinancing alternatives to the Bridge Loan both before and after execution of the Bridge Loan.

REQUEST NO. 9

All documents concerning any Financing Transaction, whether consummated or considered, including (i) any consideration paid or received in connection with a Financing Transaction, (ii) the names of any entity that arranged and/or underwrote a Financing Transaction, (iii) when any such transaction was effected, (iv) offering documents, closing documents, indentures, and all other relevant documentation, and (v) views regarding the availability and cost of traditional fixed-rate financing.

REQUEST NO. 10

8

All documents concerning the credit profile of Giants Stadium and the New York Giants football club, including any analysis of the NFL's policies regarding credit quality and debt of member organizations.

REQUEST NO. 11

All documents concerning the Third Supplemental Indenture.

REQUEST NO. 12

All documents concerning the cessation of LBI's function as broker dealer in connection with the Bonds.

REQUEST NO. 13

All documents concerning any actual or considered replacement of LBI as the broker dealer for the Bonds, either before or after the termination of LBI in that role, including Goldman Sachs' assumption of the broker dealer function in connection with the Bonds.

REQUEST NO. 14

All documents reflecting, discussing or concerning internal or external communications regarding the impact and effect of the Lehman Bankruptcy on Giants Stadium, the Bonds, and the Transactions, and the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy.

REQUEST NO. 15

All documents concerning the value of the Bonds, both prior to and following September 18, 2008.

9

REQUEST NO. 16

All internal communications concerning any auction in connection with the

Bonds, including any views that Goldman may have expressed regarding (i) where an auction

might set the coupon and (ii) the auction rate market generally.

REQUEST NO. 17

All documents concerning the "additional analyses" that accompanied the email

Zach Effron sent to Christine Procops at 4:39 p.m. on September 24, 2008.

10

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                              :

In re                                  :        Chapter 11 Case No.
                              :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :        08-13555 (JMP)
                              :

                  Debtors.        :        (Jointly Administered)
                              :
-------------------------------------------------------------------x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

      ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

      ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

ORDERED that, this Order is without prejudice to the Debtors' right to

file further motions seeking additional documents and testimony pursuant to Bankruptcy

Rule 2004(a) or any other applicable law.

Dated: New York, New York
November 23, 2009

_____s/ James M. Peck_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT H

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

In re Lehman Brothers Holdings Inc., et al.,

**SUBPOENA FOR RULE 2004 EXAMINATION**

Debtor

Case No. 08-13555(JMP) _____

To:
The Baupost Group, L.L.C.
10 St. James Avenue, Suite 1700
Boston, MA 02116

Chapter 11 _____

A TRUE COPY, ATTEST
5/24/13
Constable, Boston Ma.    Date

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below. A copy of the court order authorizing the examination is also attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | June 27, 2013 at 9:30 am (EST) |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| , Attorney | 5/23/2013 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard W. Slack, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

FORM 254  Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.    .

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return,

sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED
## BY BAUPOST

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      "Bank of America" shall mean Bank of America Corporation and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

2.      "Baupost," "You" and "Your" shall mean Baupost Group, L.L.C. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

3.      "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

4.      "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF dated October 2, 2008.

5.      "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

6.      "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts,

photographs, sound recordings including phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

7.    "Giants Stadium" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

8.    "Goal Line" shall mean Goal Line Partners LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

9.    "Lehman" shall mean LBHI and LBSF, collectively.

10.    "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

11.    "LBHI" shall mean Lehman Brothers Holdings Inc. and any person or entity acting on its behalf or under its control, but only to the extent acting in such capacity, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

12.    "LBSF" shall mean Lehman Brothers Special Financing Inc. and any person or entity acting on its behalf or under its control, but only to the extent acting in such capacity, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

5

13.     "Master Agreement" shall mean the two standard form 1992 ISDA Master Agreements entered into by Giants Stadium and LBSF as of July 27, 2007, including any schedules and annexes thereto, and any confirmations thereunder.

14.     "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

15.     "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

16.     The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all Documents which might otherwise be considered to be outside of that scope.

17.     The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this request Documents which might otherwise be beyond its scope.

18.     The word "including" shall mean including, but not limited to.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

19.     Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

20.     If any Document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document

6

was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

21.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

22.    If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

23.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

24.    Each page of each Document should be numbered consecutively. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

7

25.     Documents attached to each other (physically or via electronic mail) should not be separated.

26.     In producing the requested Documents, even though the requests are directed to "You," furnish all Documents that are available to You, including Documents in the possession of any of Your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such Documents in Your possession.

27.     The requests that follow are to be regarded as continuing, and You are requested to provide by the way of supplementary compliance herewith, such additional Documents as You may hereafter obtain, which will augment the Documents now produced in response to the requests below.  Such additional Documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after Your receipt thereof.

28.     At a future date, Lehman may request the production of additional Documents not requested herein, including information revealed as a result of information produced pursuant to  this Request or information revealed by other parties during the 2004 process or discovery in a proceeding.

29.     At a future date, Lehman may request to depose individuals based on information revealed during this request.

## RELEVANT TIME PERIOD

The relevant time period for each of the following requests is from and including September 15, 2008 through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All Documents concerning any valuation of the Transactions, both prior to and following their purported termination on September 18, 2008, including the valuation(s) contained in the Calculation Statements and any proofs of claim (or amended proofs of claim) filed by Giants Stadium in the Lehman Bankruptcy.

REQUEST NO. 2

All Documents concerning any valuation of the Bonds, both prior to and following September 18, 2008.

REQUEST NO. 3

All Documents concerning the purchase or transfer of Giants Stadium's claims in the Lehman Bankruptcy by or to Baupost, Bank of America, and/or Goal Line, including any Documents shared with any purchaser or seller (or prospective purchaser or seller) of Giants Stadium's claims, and Documents concerning the value of the claims.

REQUEST NO. 4

Documents reflecting the value of the claims (and amended claims) filed by Giants Stadium in the Lehman Bankruptcy, including any financial statement or other financial Documents reflecting directly or indirectly any value of the claim.

REQUEST NO. 5

All Documents concerning the respective roles of Giants Stadium and Baupost with respect to the pursuit of claims in the Lehman Bankruptcy in connection with the Transactions, including any Documents concerning the respective portion of any recoveries that Giants Stadium and Baupost may receive pursuant to such claims.

9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
                                :

In re                           :     Chapter 11 Case No.
                                :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :    08-13555 (JMP)
                                :

           Debtors.           :    (Jointly Administered)
                                :
————————————————————————x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

        Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval
of the relief requested in the Motion being within the sound discretion of the Court; and
the Court having determined that the relief sought in the Motion is in the best interests of
the Debtors, their creditors and all parties in interest; and the Court having determined
that the legal and factual bases set forth in the Motion establish just cause for the relief
granted herein; and upon all of the proceedings had before the Court and after due
deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule
2004, to issue such subpoenas as may be necessary to compel the production of
documents and the testimony of witnesses in connection with the administration of these
cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor,
witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin
production on a rolling basis, which production shall be completed prior to the later of
seventy-five (75) days from the service of a subpoena or such other date agreed to by the
Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's
subpoena, other than those documents withheld under a claim of privilege or (2) serve on
the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the
objection within ten (10) days following the date such objection is served on the Debtor
(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection
with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a
witness withholds any documents from the production based upon a claim of privilege,
such witness is directed to provide counsel for the Debtor with a privilege log, containing
the information required under Bankruptcy Rule 7026, within ten (10) days following the
completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination
upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)
days of the date of the service of a deposition subpoena upon such witness (unless such
subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any
other party under applicable law to object to or oppose any subpoena the Debtors may
serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the
Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by
the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this
Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange
Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the
Southern District of New York and (iv) counsel for the party subject to such subpoena
that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

# EXHIBIT I

**Hearing Date and Time:  May 15,  2013, at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  May 2, 2013, at 4:00 p.m. (Prevailing Eastern Time)**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

|  |  |
|---|---|
| In re | :  Chapter 11 |
|  | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | :  Case No. 08-13555 (JMP) |
|  | : |
| Debtors. | :  Jointly Administered |
|  | : |

————————————————————————

**NOTICE OF MOTION OF GIANTS STADIUM LLC FOR LEAVE**
**TO CONDUCT DISCOVERY OF LBI PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

**PLEASE  TAKE  NOTICE** that, on May 15, 2013, at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as the matter may be heard, before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York, 10004, Giants Stadium LLC ("Giants Stadium") will move for entry of an order granting leave to conduct discovery of Lehman Brothers, Inc. ("LBI") pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any objection or response to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Rules for the United States Bankruptcy Court for the Southern

District of New York, and (i) shall be filed with the Bankruptcy Court electronically in

accordance with General Order M-242 (General Order M-242 and the User's Manual for

the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the

official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's

case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format ("PDF"), WordPerfect, or any other Windows-based word

processing format; and (ii) a hardcopy of such objection or response shall be served in

accordance with General Order M-242, upon (A) the chambers of the Honorable James

M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (B) Weil

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard

W. Slack, Esq., Michael J. Firestone, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq.,

Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the Debtors; (C) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Esq., Paul

Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis,

Esq.); (D) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and

Evan R. Fleck, Esq.), attorneys for the official committee of unsecured creditors

appointed in these cases; (E) the attorneys for any other official committee(s) appointed

in these cases; and (F) Sullivan & Cromwell LLP, 125 Broad Street, New York, New

York 10004 (Attn: Bruce E. Clark, Esq.), attorneys for Giants Stadium, so as to be

actually filed and received no later than May 2, 2013, at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

        **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

        **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York  
      April 25, 2013

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:   /s/_____  
      Bruce E. Clark  
      Matthew A. Schwartz  
      SULLIVAN & CROMWELL LLP  
      125 Broad Street  
      New York, New York 10004  
      Telephone:  (212) 558-4000  
      Facsimile:  (212) 558-3588

      *Attorneys for Giants Stadium LLC*

**Hearing Date and Time:  May 15, 2013, at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  May 2, 2013, at 4:00 p.m. (Prevailing Eastern Time)**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
|  | : |
| Debtors. | : Jointly Administered |
|  | : |

_____

**MOTION OF GIANTS STADIUM LLC FOR LEAVE**
**TO CONDUCT DISCOVERY OF LBI**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Giants Stadium LLC ("Giants Stadium") hereby moves this Court pursuant to Federal Rule of Bankruptcy Procedure 2004 for entry of an order granting Giants Stadium leave to conduct discovery of Lehman Brothers, Inc. ("LBI") with respect to the document requests contained in Schedule 1 attached hereto (the "Motion").

<u>INTRODUCTION</u>

1.      LBI possesses discoverable material relating to issues that bear directly on Giants Stadium's claims against Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF," and together with LBHI, the "Debtors"). Giants Stadium seeks discovery from LBI to clarify and narrow these issues.

## FACTUAL BACKGROUND

2.      In mid-2007, Giants Stadium financed its portion of the New Meadowlands Stadium ("Stadium") by issuing over $700 million in auction-rate bonds ("Bonds").  Giants Stadium sought to reduce its risk on the Bonds by entering into an actual bond-rate swap with LBSF, under which Giants Stadium would pay LBSF a fixed-rate of 6.1885%, and LBSF would pay to Giants Stadium the actual rate on the Bonds, as determined at each auction.  Giants Stadium and LBSF consummated this proposal on July 27, 2007, by executing two ISDA Master Agreements (the "ISDA Masters"; transactions described therein "Actual Rate Swaps").

3.      LBI, LBSF's broker-dealer affiliate, was named as broker-dealer on the Bonds.  *See* Declaration of Matthew A. Schwartz ("Schwartz Decl."), dated April 25, 2013, Exhibit A ¶ 7 ("[Giants Stadium] and Lehman Brothers Inc. ("LBI"), an affiliate of Lehman, will enter into a broker-dealer agreement in customary form pursuant to which LBI agrees to serve as broker-dealer for the Related Bonds during the term of the Related Bonds . . . .").  LBI routinely held the Bonds at the very low "All-Hold Rate" and, in so doing, limited LBSF's financial exposure under the Actual Rate Swaps.

4.      On September 15, 2008, LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  LBHI's bankruptcy filing was an Event of Default under the ISDA Masters.  On September 18, 2008, Giants Stadium sent two letters to LBSF (collectively, the "Termination Letters") (i) notifying LBSF that an Event of Default pursuant to Section 5(a)(vii) of the ISDA Masters had occurred; and (ii) designating September 18, 2008, as the Early Termination Date with respect to the Actual Rate Swaps.

-2-

5.      On September 19, 2008, LBI voluntarily resigned as broker-dealer on the Bonds and later that day entered its own SIPA liquidation proceeding.

6.      Giants Stadium then determined its loss due to the terminations and filed two proofs of claim: one against LBSF and one against LBHI, as LBSF's guarantor.[1]

7.      Several years of discovery disputes ensued, during which time Giants Stadium produced nearly 64,000 pages of documents and Debtors completed a seven-hour deposition of Giants Stadium's authorized representative, Christine Procops.

8.      On April 1, 2013, Giants Stadium and Debtors entered into a Discovery Protocol Agreement (the "Agreement"). Schwartz Decl., Exhibit B. Under the Agreement, "[e]ach party will serve notice and subpoenas on third parties or seek the Bankruptcy Court's permission to do so on or before May 22, 2013. . . . Giants Stadium acknowledges that to the extent it wishes to serve discovery requests on any third party, it must seek permission from the Bankruptcy Court to do so under Rule 2004. [Debtors] reserve[] the right to object to any such motion on any and all grounds." *Id.* ¶ 3.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion is Rule 2004 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

10.     Giants Stadium requests the entry of an order pursuant to Rule 2004 (i) granting Giants Stadium leave to conduct discovery of LBI with respect to the

---

[1]      Giants Stadium has subsequently filed amended Claims, most recently on December 6, 2011.

document requests contained in Schedule 1; (ii) authorizing the issuance of a subpoena compelling such document production in the manner provided in Federal Rule of Bankruptcy Procedure 9016; and (iii) granting such other and further relief as the Court deems just and proper.

## ARGUMENT

11.     Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  The scope of discovery under Rule 2004 relates to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).  Under Rule 2004, a moving party is entitled to both the examination of a witness and the production of requested documents. Fed. R. Bankr. P. 2004(c).

12.     Under Rule 2004, "good cause" for an examination is shown "if the examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (finding creditor had good cause to participate in debtors' Rule 2004 discovery process and noting that "It is not the debtors' . . . function to prevent discovery of a claim, but rather one of their functions as fiduciaries is to see that substantial justice is provided to all estate claimants.").

13.     Giants Stadium has good cause for seeking discovery under Rule 2004. *First*, Giants Stadium has a reasonable basis to believe that LBI has discoverable material relating to the claims in this case for several reasons, including that:

-4-

a)      Giants Stadium and Debtors disagree over the meaning and effect of certain provisions of the ISDA Masters.  LBI was designated as the broker-dealer in the ISDA Masters at LBSF's request, and Giants Stadium believes that LBSF sought this arrangement to protect Debtors' interests in relation to the auction process.  Accordingly, Giants Stadium seeks discovery relating to the negotiation, drafting, and execution of the ISDA Masters and has a reasonable basis to believe that LBI has such discoverable material in its possession, custody, or control.

b)      As broker-dealer for the Bonds, LBI determined whether the Bonds were held at the "All-Hold Rate" or put out to auction.  This conduct is pivotal to current disagreements between Giants Stadium and Debtors regarding the ISDA Masters and the value of the Claims.  Giants Stadium therefore seeks discovery relating not only to LBI's conduct, decisions, and communications as broker-dealer for the Bonds, but also to Debtors' and the market's valuation of the Auction Rate Swaps.  Giants Stadium has a reasonable basis to believe that LBI has such discoverable material in its possession, custody, or control.

c)      LBI voluntarily resigned as broker-dealer on the Bonds after LBHI filed its chapter 11 petition, an "Event of Default" under the ISDA Masters, and after counsel for Giants Stadium delivered the Termination Letters to LBSF.  This conduct is also pivotal to current disagreements between Giants Stadium and Debtors regarding the ISDA Masters and the value of the Claims.  For example, Giants Stadium has presented Debtors with ample evidence of swap termination, but Debtors continue to press the argument that the swaps were not *properly* terminated in order to advance their "receivable" theory.   Giants Stadium therefore seeks discovery relating to LBI's

resignation as broker-dealer and the termination of the Auction Rate Swaps and has a reasonable basis to believe that LBI has such discoverable material in its possession, custody, or control.

14.    *Second*, Giants Stadium's narrowly tailored discovery will not be overly burdensome, costly or disruptive to LBI.  The discovery requests contained in Schedule 1 address solely issues within LBI's purview that are the subject of disagreement between Giants Stadium and Debtors.

15.    *Third*, Debtors refuse to provide such responsive documents to Giants Stadium.  In response to document requests nearly identical to those described herein and contained in Schedule 1, Debtors objected to searching or producing documents from LBI on the ground that such documents are not in their actual possession.  Schwartz Decl., Exhibit C, General Objections ¶ 5.  More specifically, Debtors expressly stated that they "will not search for or produce documents in the possession, custody, or control of LBI." *Id.*

16.    Accordingly, the equities favor Giants Stadium's requested relief and, pursuant to Rule 2004, Giants Stadium requests that the Court enter an order granting Giants Stadium leave to take discovery of LBI concerning the matters described herein and in Schedule 1.

<u>NO PRIOR REQUEST</u>

17.    This Motion is the first request by Giants Stadium for leave to conduct discovery solely of LBI.[2]

---

[2]    On September 26, 2012, Giants Stadium moved for leave to conduct discovery of both Debtors and LBI, attaching document requests similar to those contained in Schedule 1.  (Dkt. No. 31105.)  The SIPA Trustee filed a statement indicating that it did not consider LBI to be a party to the dispute between

## WAIVER OF MEMORANDUM OF LAW

18.    As there are no novel issues of law relating to the Motion, Giants Stadium requests that the Court waive the requirement that Giants Stadium file a separate memorandum of law in support of the Motion.

## CONCLUSION

19.    By this Motion, Giants Stadium seeks discoverable material from LBI relating to matters central to resolution of the Giant Stadium's claims against the Debtors. The information sought relates to the property, liabilities, financial condition, and administration of the Debtors' estate, and is therefore well within the scope of Rule 2004.

**WHEREFORE**, for the reasons stated herein, Giants Stadium respectfully requests that the Court enter an Order, pursuant to Rule 2004, in the form attached hereto as Exhibit A:  (i) granting Giants Stadium leave to conduct discovery of LBI with respect to the document requests attached hereto as Schedule 1; (ii) authorizing the issuance of a subpoena compelling such document production; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 25, 2013

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:    /s/ _____
      Bruce E. Clark
      Matthew A. Schwartz
      SULLIVAN & CROMWELL LLP
      125 Broad Street
      New York, New York 10004
      Telephone:  (212) 558-4000
      Facsimile:  (212) 558-3588

      *Attorneys for Giants Stadium LLC*

---

Giants Stadium and Debtors.  (Dkt. No. 32024).   LBI has not produced any documents in connection with this matter.

**SCHEDULE 1**

## REQUEST FOR PRODUCTION OF DOCUMENTS

## DEFINITIONS

1.      The term "AUCTIONS" as used herein shall mean the process for determining the interest rate on the BONDS subject to an interest swap as governed by the ISDA MASTER AGREEMENTS.

2.      The term "BONDS" as used herein shall mean the auction-rate securities issued by GIANTS STADIUM that were subject to an interest rate swap as governed by the ISDA MASTER AGREEMENTS.

3.      The term "BROKER-DEALER" as used herein shall mean the entity responsible for acting as auction broker for AUCTIONS on the BONDS.

4.      The term "COMPUTER" as used herein includes, but is not limited to, all mainframe computers, personal computers, microcomputers, desktop and portable, laptop or notebook computers, and personal digital assistants ("PDAs").

5.      The term "DEBTORS" as used herein shall mean and refer to Lehman Brothers Holdings Inc. and/or Lehman Brothers Special Financing Inc. and any of their respective affiliates, officers, directors, employees, associates, consultants, attorneys, representatives, agents, or any other person working on their behalf, including their predecessors and successors in interest, and bankruptcy estates.

6.      The term "DOCUMENT" or "DOCUMENTS" as used herein shall have the meaning given to "document" in Local Civil Rule 26.3(c)(2) of the United States District Court for the Southern District of New York.

7.      The term "ELECTRONIC DATA" as used herein shall mean and refer to the original and any non-identical copies of any COMPUTER program, software, database, file, email, source code, or operating system, including ASCII files, word processing documents, spreadsheets, charts, and graphs, whether active, deleted, or fragmented.

8.      The term "ELECTRONIC MEDIA" as used herein shall mean and refer to any magnetic or other storage device used to record, store, or maintain ELECTRONIC DATA, including, but not limited to, any disk, minidisk, floppy disk, hard drive, disk drive, CD ROM, optical disk, memory card, personal computer, network, magnetic tape, microfiche, punch card, computer chip, back up, or any other means of storing, recording or retaining information generated by or input to or on a COMPUTER.

9.      The term "GIANTS STADIUM" as used herein shall mean and refer to Giants Stadium LLC and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or other any person working on its behalf, including its predecessors and successors in interest.

10.      The term "ISDA MASTER AGREEMENTS" as used herein shall mean and refer to the two ISDA Master Agreements, together with the schedules and exhibits thereto and each confirmation exchanged with regard to transactions thereunder, entered into by and between Giants Stadium and LBSF as of July 27, 2007 and insured by FSA and FGIC, respectively, and guaranteed by LBHI.

11.      The term "LBHI" as used herein shall mean and refer to Lehman Brothers Holdings Inc., and any of its respective officers, directors, employees, associates,

-2-

consultants, attorneys, representatives, agents, or any other person working on its behalf, including its predecessors and successors in interest.

12.     The term "LBI" as used herein shall mean and refer to Lehman Brothers, Inc., and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or any other person working on its behalf, including its predecessors and successors in interest.

13.     The term "LBSF" as used herein shall mean and refer to Lehman Brothers Special Financing Inc., and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or other any person working on its behalf, including its predecessors and successors in interest.

14.     The term "RELATE TO" or "REFER TO" as used herein shall mean and refer to all documents that in any manner or form are relevant in any way to the subject matter in question.

15.     The term "TERMINATED TRANSACTIONS" as used herein shall mean and refer to transactions entered into pursuant to the ISDA MASTER AGREEMENTS and terminated by GIANTS STADIUM in the TERMINATION LETTERS.

16.     The term "TERMINATION LETTERS" as used herein shall mean and refer to the letters from GIANTS STADIUM to LBSF dated September 18, 2008.

17.     The terms "YOU" and "YOUR" as used herein shall mean LBI, as defined herein.

18.     For the purposes hereof, the reference to any entity shall include any and all officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other person or entity representing such entity or acting on its behalf as well

-3-

as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

<u>INSTRUCTIONS</u>

1.    In responding to these requests for production, YOU are requested to furnish all DOCUMENTS that are in YOUR actual or constructive possession, custody, or control or in the possession, custody, or control of any of YOUR representatives, agents, or attorneys.  In responding to these requests for production, YOU may elect to produce the original or, if the original is not available, a legible copy, of each requested document.

2.    In responding to these requests for production, YOU are requested to produce all DOCUMENTS either as they are kept in the usual course of YOUR business affairs or they shall be organized and labeled to correspond with the requests herein.  If a DOCUMENT is responsive to more than one request, only one exemplar of the DOCUMENT needs to be produced.  Similarly, if YOU have more than one copy of the same DOCUMENT, the additional copies need not be produced.  A version of a DOCUMENT that differs in any way from the original of such DOCUMENT because it constitutes a prior draft or subsequent version, because it contains any interlineations or marginalia, or because it differed in any other respect from the original, is not an exact duplicate of such DOCUMENT.  Each different version of such DOCUMENT is required to be produced.

3.    If YOU cannot respond to any of the following requests in full after exercising reasonable diligence to secure the information requested therein, please so

-4-

state and respond to the extent possible, specifying the reasons for any inability to respond and stating whatever information YOU do have concerning such request.

4.      If a responsive DOCUMENT consists of ELECTRONIC DATA, is stored on ELECTRONIC MEDIA or a COMPUTER, or is otherwise unreadable in its ordinary state, the responding party shall take reasonable steps to produce and translate all such responsive items into a useable or readable form.

5.      If any privilege is claimed or if any objection is made regarding the production of any DOCUMENTS, with respect to each such DOCUMENT:  (1) identify the privilege or objection involved; (2) state the basis for claiming the privilege or making the objection; (3) describe the type of DOCUMENT and the date of its creation; (4) identify each person who (a) has knowledge of the DOCUMENT or the information that the DOCUMENT contains, (b) prepared or made the DOCUMENT, (c) signed the DOCUMENT, and/or (d) now possesses the DOCUMENT or a copy, summary, or digest thereof; and (5) identify each person to whom the DOCUMENT or a copy, summary, or digest thereof was directed, circulated, distributed, or shown.

<div align="center">REQUESTS FOR PRODUCTION</div>

REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS that RELATE TO the negotiation, drafting, and execution of the ISDA MASTER AGREEMENTS or any other contracts that RELATE TO the TERMINATED TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS that RELATE TO the economic, business, or contractual intent of the parties in entering into the TERMINATED TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS that RELATE TO the meaning, interpretation, economics, business purpose, or other intent behind any contractual provision within the ISDA MASTER AGREEMENTS or any other contracts that RELATE TO the TERMINATED TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS that RELATE TO LBI's appointment or anticipated or actual role as BROKER-DEALER for the BONDS.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS that RELATE TO GIANTS STADIUM's ability to terminate or replace LBI as BROKER-DEALER for the BONDS.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS that RELATE TO any contemplated conversion of the TERMINATED TRANSACTIONS to LIBOR-rate swaps.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS that RELATE TO the conduct of LBI as BROKER-DEALER for the BONDS, including but not limited to its conduct of the AUCTIONS and any decision made to hold, auction, or sell the BONDS, including any economic, business, or other purpose behind each such decision.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS that RELATE TO discussions between LBI as BROKER-DEALER for the BONDS and DEBTORS as parties to the TERMINATED TRANSACTIONS, including any discussions regarding the economic, business, or other purposes behind decisions to have LBI hold the BONDS at the "All-Hold Rate."

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS that RELATE TO the resignation of LBI as BROKER-DEALER for the BONDS.

REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS that RELATE TO the valuation of the TERMINATED TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS that RELATE TO the TERMINATION of the TERMINATED TRANSACTIONS, including all DOCUMENTS that RELATE TO

receipt of the TERMINATION NOTICES or whether the TERMINATED TRANSACTIONS were actually TERMINATED.

REQUEST FOR PRODUCTION NO. 12:

All DOCUMENTS that RELATE TO any capital allocated by DEBTORS to satisfy any requirements to maintain capital in relation to the TERMINATED TRANSACTIONS before they were terminated, including, but not limited to, DOCUMENTS sufficient to show the rate charged or allocated by DEBTORS on capital lent internally within DEBTORS.

REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS that RELATE TO the preservation or destruction of documents relating to the ISDA MASTER AGREEMENTS or the TERMINATED TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 14:

DOCUMENTS, including working group and contact lists, sufficient to identify all entities and persons involved in: (i) the negotiation, drafting, and execution of the ISDA MASTER AGREEMENTS; (ii) LBI's appointment as BROKER-DEALER for the BONDS the TERMINATED TRANSACTIONS; (iii) the conduct of LBI as BROKER-DEALER for the BONDS, including but not limited to its conduct of the AUCTIONS and any decision made to hold, auction, or sell the BONDS; (iv) the resignation of LBI as BROKER-DEALER for the BONDS; (v) the valuation of the

-8-

TERMINATED TRANSACTIONS; and (vi) TERMINATION of the TERMINATED

TRANSACTIONS.

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|                                        |     |                          |
| -------------------------------------- | --- | ------------------------ |
|                                        | :   |                          |
| In re                                  | :   | Chapter 11               |
|                                        | :   |                          |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | :   | Case No. 08-13555 (JMP)  |
|                                        | :   |                          |
| Debtors.                               | :   | Jointly Administered     |
|                                        | :   |                          |

_____

### ORDER ON MOTION OF GIANTS STADIUM LLC FOR LEAVE TO CONDUCT DISCOVERY OF LBI PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon the Motion (the "Motion") of Giants Stadium LLC ("Giants Stadium") for the entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") (i) granting Giants Stadium leave to obtain the production of documents by Lehman Brothers, Inc. ("LBI") in response to the document requests attached as Schedule 1 to the Motion; and (ii) authorizing the issuance of a subpoena compelling such document production; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B); and upon consideration of the Motion; and due and appropriate notice of the Motion having been given, it is hereby **ORDERED** that:

1.      The Motion is GRANTED.

2.      Giants Stadium is authorized to serve upon LBI document requests substantially in the form of Schedule 1 to the Motion.

3.      Giants Stadium is authorized to issue a subpoena to LBI, pursuant to Federal Rule of Bankruptcy Procedure 9016, for the above-ordered document production.

Dated: _____, 2013
       New York, New York

_____
THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT J

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

August 13, 2013

<u>Via E-mail</u>

Richard W. Slack,
    Weil, Gotshal & Manges LLP,
        767 Fifth Avenue,
            New York, New York  10153-0119.

           Re:    *In re Lehman Brothers Holdings Inc., et al.*
                <u>08-13555 (Bankr. S.D.N.Y.)</u>

Dear Richard:

        Pursuant to the Discovery Protocol Agreement, entered on April 1, 2013, I write on behalf of Giants Stadium LLC ("Giants Stadium") to identify the individuals that Giants Stadium seeks to depose.  Those individuals are, in alphabetical order, as follows:[1]

| | | | |
|---|---|---|---|
| Matthew Casner | Steven Howard | Stephen Lessing | Michael Sung |
| Katie Chan | Kyle Ingram | David Lo | Robert Taylor |
| Peter Coleman | Gary Killian | Julia Nand | Sean Teague |
| Edward Fanter | Seth Konheim | Gia Rys | Jacopo Visentini |
| Michael Ferraro | Jeff Kirshenbaum | Gregory Shlionsky | Anatoly Zelikoff |

        Please notify me by the close of business on Friday, August 16, 2013 as to which of the above individuals are current employees of Legacy Asset Management Company LLC (LAMCO) or any of its affiliated entities.  Giants Stadium will proceed with serving third-party notices and subpoenas on any individual not identified as an employee by this deadline (or seek the Bankruptcy Court's permission to do so).

        Sincerely,

Bruce E. Clark

---

[1] Giants Stadium reserves the right to identify additional individuals as discovery proceeds.

# EXHIBIT K

# Weil, Gotshal & Manges LLP

BY E-MAIL

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Lauren Hoelzer Helenek**
+1 (212) 310-8581
lauren.hoelzer@weil.com

August 15, 2013

Bruce E. Clark, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Re: _Lehman Brothers Holdings, Inc., et al._, Case No. 08-13555 (JMP)

Dear Bruce:

I write on behalf of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI," and together with LBSF, "Lehman") in response to your letter of August 13, 2013, in which you purport to "identify the individuals that Giants Stadium seeks to depose."

As you know, the discovery protocol among Lehman and Giants Stadium LLC ("Giants Stadium"), dated April 1, 2013 (the "Protocol") provides specific procedures for identifying party and third-party deponents. With respect to identifying party deponents, the Protocol states that "[e]ach side may seek to depose one or more specific individuals with personal knowledge (*not more than two individuals in connection with the 2004 process*) from either Giants Stadium or Lehman" (emphasis added). With respect to identifying third-party deponents, the Protocol states that "[e]ach party *will make a good faith attempt to identify by [the notice deadline]* any third parties from whom they may seek documents or testimony in the 2004 process" (emphasis added).

Your letter is deficient in a number of respects and ultimately fails to provide the notice contemplated by the Protocol. It is impossible to discern from the twenty-person list of unlabeled, alphabetized names in your letter who Giants Stadium intends to call as a party deponent and who Giants Stadium intends to call as a third-party deponent; lumping the proposed party and non-party deponents together in this fashion does not provide Lehman sufficient notice to react to Giants Stadium's proposals, as contemplated by the Protocol. Moreover, to the extent any of these names are from Lehman (which all or virtually all appear to be), (1) Giants Stadium is, of course, limited to two such depositions under the Protocol, and (2) Giants Stadium was obligated under the Protocol to proffer the relevant personal knowledge that it seeks to elicit in the deposition of each such witness.

We note that your notice requests that we identify which of the persons listed in your letter we will represent. Before we undertake that exercise, we believe that Giants Stadium should submit a proper notice that complies with the plain terms of the Protocol. Once Giants Stadium properly has identified the two Lehman

**Weil, Gotshal & Manges LLP**

August 15, 2013
Page 2

witnesses, if any, you will seek to depose in the Rule 2004 discovery process (and makes a good faith proffer as to the areas of testimony) and identifies the third-party, non-Lehman witness, if any, you will seek to depose in the Rule 2004 discovery process, we will be in position to tell you which witnesses we will represent.

We remain willing to work cooperatively with you in this process to avoid unnecessary and premature motion practice in front of the Court.

Finally, putting aside the deficiencies in your notice, we believe that seeking to depose twenty individuals in the Rule 2004 discovery process is excessive and unjustified. The 2004 process is not meant to be a substitute for discovery in a litigation. That is one of the reasons the Protocol permits only two depositions of Lehman and Giant Stadium witnesses—a limitation your notice apparently ignores entirely.

We look forward to receiving your revised and proper notice.

Sincerely,

Lauren Hoelzer Helenek

Cc:    Matthew A. Schwartz
       Lara J. Loyd
       Thomas Hommel
       Richard W. Slack

# EXHIBIT L

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

**NOTICE OF DEPOSITION OF JULIA NAND**
**UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

      **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Bankruptcy Procedure 2004, the Bankruptcy Court's ruling at the hearing on November 14, 2012, and the Discovery Protocol Agreement, executed on April 1, 2013, among Giants Stadium LLC ("Giants Stadium"), Lehman Brothers Special Finance, and Lehman Brothers Holdings, Inc., Giants Stadium will take the deposition upon oral examination of Julia Nand, a current employee of Legacy Asset Management Company, LLC (LAMCO), at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, at a time and date to be determined in the future. The deposition will be taken before an individual authorized by law to administer oaths and take depositions, will be recorded by stenographic means and videotaped, and will continue from day to day until completed.

A list of parties or attorneys for parties on whom this Notice of Deposition

is being served is shown on the accompanying Certificate of Service.

Dated: New York, New York
       August 28, 2013

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:   /s/_____
       Bruce E. Clark
       Matthew A. Schwartz
       SULLIVAN & CROMWELL LLP
       125 Broad Street
       New York, New York 10004
       Telephone: (212) 558-4000
       Facsimile: (212) 558-3588

*Attorneys for Giants Stadium LLC*

-2-

# EXHIBIT M

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

**NOTICE OF DEPOSITION OF SETH KONHEIM**
**UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Bankruptcy Procedure 2004, the Bankruptcy Court's ruling at the hearing on November 14, 2012, and the Discovery Protocol Agreement, executed on April 1, 2013, among Giants Stadium LLC ("Giants Stadium"), Lehman Brothers Special Finance, and Lehman Brothers Holdings, Inc., Giants Stadium will take the deposition upon oral examination of Seth Konheim, a current employee of Legacy Asset Management Company, LLC (LAMCO), at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, at a time and date to be determined in the future. The deposition will be taken before an individual authorized by law to administer oaths and take depositions, will be recorded by stenographic means and videotaped, and will continue from day to day until completed.

A list of parties or attorneys for parties on whom this Notice of Deposition

is being served is shown on the accompanying Certificate of Service.

Dated: New York, New York        Respectfully submitted,
       August 28, 2013

                          **SULLIVAN & CROMWELL LLP**

                          By:    /s/_____
                                  Bruce E. Clark
                                  Matthew A. Schwartz
                                  SULLIVAN & CROMWELL LLP
                                  125 Broad Street
                                  New York, New York 10004
                                  Telephone:  (212) 558-4000
                                  Facsimile:  (212) 558-3588

                                  *Attorneys for Giants Stadium LLC*

# EXHIBIT N





Search for people, jobs, companies, and more... Advanced 4

Home Profile Network Jobs Interests Business Services Upgrade

Paralegal Master's Degree - Become at Paralegal at GW - One of the Top Law Schools in the Country! | **Read More »**

# David Lo

3rd

Partner at Raineth Housing Fund

New York, New York | Financial Services

Previous Barclays Capital, Lehman Brothers, Tommy Hilfiger

Education New York University

Connect | Send David InMail

**219** connections

www.linkedin.com/pub/david-lo/52/398/764

## Background

### Experience

**Partner**

Raineth Housing Fund

May 2013 – Present (5 months)

Private Equity Firm developing and implementing residential real estate investment opportunities.

**Director**

Barclays Capital

September 2008 – May 2013 (4 years 9 months)

BARCLAYS

**Director**

Lehman Brothers

August 1999 – September 2008 (9 years 2 months)

LEHMAN BROTHERS

**VP**

Tommy Hilfiger

April 1993 – March 1997 (4 years)

TOMMY HILFIGER

### Skills & Expertise

Most endorsed for...

- 6 Fixed Income
- 5 Bonds
- 4 Capital Markets
- 4 Trading
- 3 Series 7
- 1 Municipal Bonds
- Series 63
- Money Market

**People Similar to David**

**Stephen Juter**
Director at UBS
**Connect**

ADS YOU MAY BE INTERESTED IN

**Attn: Paralegals**
Earn a Master's in Conflict Resolution. Online and Accredited. Learn more.

**Attn: Paralegals**
Earn a Masters Degree Online with Focus in Managerial Law. Learn more!

**Paralegal Cert In 14 Week**
Get your Paralegal Certificate Online from Boston U CPE in only 14 Weeks!

**People Also Viewed**

**Ed Renwick**
CEO Raineth Housing

**Jay Chen**
Founding Partner at Raineth Housing Fund

**Wah Chen**
Founding Partner at Raineth Housing

**Jack Rubin**
Partner, Raineth Housing

**Bret Enerson**
Acquisition Manager at Raineth Housing

**Guy Murray**
Director at Barclays Capital

**Julia Nand**
Director at Barclays Capital

**Sean Meehan**
Director: Taxable Municipal Trading

**Jared Topalian**
Writing and Editing Professional

**Jack Rubin**
Sir at None

series 55
Credit Trading
Search for people, jobs, companies, and more... Advanced
Home Profile Network Jobs Interests Business Services Upgrade

David also knows about...

Real Estate

## Languages

**Japanese**

## Education

**New York University**
Master of Business Administration (MBA), Finance/Marketing
1998 – 1999

**New York University**
BS, Accounting
1987 – 1991

**How You're Connected**

You

Andrew McGuigan

Andrew can introduce you to someone who knows David
Get introduced

David Lo

**In Common with David**

Location

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | Upgrade Your Account
LinkedIn Corporation © 2013 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

# EXHIBIT O



Search for people, jobs, companies, and more...

Business Services    Upgr

Paralegal Cert In 14 Week - Get your Paralegal Certificate Online from Boston U CPE in only 14 Weeks! | **Read More »**

## Sean Teague

3rd

Director (IVC - Fixed Income) at Barclays Capital

Maplewood, New Jersey | Financial Services

| | |
|---|---|
| Current | Barclays |
| Previous | Commerzbank AG |
| Education | SUNY Binghamton |

Connect    Send Sean InMail ▾

**189**
connections

www.linkedin.com/pub/sean-teague/50/732/a76

ADS YOU MAY BE INTERESTED IN



**Attn: Paralegals**
Earn a Master's in Conflict
Resolution. Online and
Accredited. Learn more.



**Attn: Paralegals**
Earn a Masters Degree Online
with Focus in Managerial Law.
Learn more!



**107 New NY Clients**
107 new legal clients seeking a
New York attorney. View their
cases today.

**Background**

### Experience

**Director (IVC - Fixed Income)**

Barclays

June 2005 – Present (8 years 4 months)New York, New York

•Oversee policies, procedures and independent valuation methodology applied to Fixed Income instruments
•Report and present variances to Business, Risk & PC Mgmt
•Liaise with Trading, Risk, Compliance as well as Regulators and External Audit.
•Manage team of 17 individuals.

**Alternative Investment Strategies**

Commerzbank AG

January 2004 – June 2005 (1 year 6 months)

•Responsible for conducting due diligence on new hedge funds as well as performing recurring due diligence on existing investments for global fund-of-funds business
•Meet with hedge fund managers to review oversight related to risk management, valuations, compliance, and operational risk.
•Designed executive reporting utilizing best practices to capture pricing/valuation, risk controls/monitoring, operational/forward control (fraud controls), regulatory (compliance), and management team/experience

**Structured Credit Trader**

Commerzbank AG

March 2003 – January 2004 (11 months)

•Involved in Synthetic CDO deal origination including building cash flow models, running portfolio testing, and liasing with rating agencies.
•Traded CDS, Treasury Bonds and Asset Swaps for hedging purposes.

### Skills & Expertise

| | | |
|---|---|---|
| 8 | Fixed Income | ▶ |
| 7 | Risk Management | ▶ |
| 4 | Valuation | ▶ |
| 3 | Financial Risk | ▶ |

Search for people, jobs, companies, and more...

Education

**SUNY Binghamton**
Bachelor of Arts in Political Science / Economics
1992 – 1994

**SUNY New Paltz**
N/A
1990 – 1992

**Help Center** | About | Press | Blog | Careers | Advertising | Talent Solutions | Tools | Mobile | Developers | Publishers | Language | **Upgrade Your Account**

LinkedIn Corporation © 2013 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | **Send Feedback**