**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
:
In re                                                                    :          **Chapter 11**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,          :          **Case No. 08-13555 (JMP)**
:
Debtors.                                     :          **(Jointly Administered)**
:
------------------------------------------------------------------------x          **Ref. Docket No. 40246**

<u>**AFFIDAVIT OF SERVICE**</u>

STATE OF NEW YORK          )
) ss.:
COUNTY OF NEW YORK     )

CAROL ZHANG, being duly sworn, deposes and says:

1.   I am employed as a Noticing Coordinator by Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017. I am over the age of eighteen years and am not a party to the above-captioned action.

2.   I caused to be served the:

    a)   "Order Establishing Hearing on Plan Administrator's Omnibus Objection to Claims Filed by Deborah E. Focht," dated September 30, 2013 [Docket No. 40246], ("Order"), and

    b)   *Transcript from September 26, 2013 Hearing,* a sample of which is annexed here to as <u>Exhibit A</u>, (the "Transcript"),

by causing true and correct of the:

    i.      Order, to be delivered via electronic mail to the following party: americanreply@gmail.com, on September 30, 2013,

    ii.     Order, to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed <u>Exhibit B</u>, on September 30, 2013,

    iii.    Transcript, to be delivered via electronic mail to the following party: americanreply@gmail.com, on October 1, 2013, and

    iv.    Transcript, to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed <u>Exhibit C</u>, on October 1, 2013.

3.  All envelopes utilized in the service of the foregoing contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO THE ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

<i>/s/ Carol Zhang</i><br>Carol Zhang

Sworn to before me this
1st day of October, 2013
*/s/ Elli Krempa*
Notary Public, State of New York
No. 01KR6175879
Qualified in Suffolk County
Commission Expires October 22, 2015

**EXHIBIT A**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   In re:

5                               08-13555(JMP)

6   LEHMAN BROTHERS HOLDINGS INC.,    (Jointly Administered)

7   ET AL.,

8               Debtors.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   In re:

11                               08-01420(JMP)(SIPA)

12   LEHMAN BROTHERS INC.,

13               Debtor.

14   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15

16               U.S. Bankruptcy Court

17               One Bowling Green

18               New York, New York

19

20               September 26, 2013

21               10:04 AM

22

23   B E F O R E :

24   HON JAMES M. PECK

25   U.S. BANKRUPTCY JUDGE

1   Hearing re:  Plan Administrator's Omnibus Objection to

2   Claims Filed by Deborah E. Focht [ECF No. 34303]

3

4   Hearing re:  Trustee's Twenty-Eighth Omnibus Objection to

5   General Creditor Claims (Late-filed Claims) [LBI ECF No.

6   5775]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorney for the Debtors

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:  ZAW WIN, ESQ.

8

9    HUGHES HUBBARD

10        Attorney for the SIPA Trustee

11        One Battery Park Plaza

12        New York, NY 10004-1482

13

14   BY:  MEAGHAN C. GRAGG, ESQ.

15

16   RABINOWITZ, LUBETTIN & TULLY, L.L.C.

17        Attorney for Stephen Thomas

18        293 Eisenhower Parkway

19        Suite 100

20        Livingston, NJ 07039

21

22   BY:  JEFFREY A. COOPER, ESQ.

23

24

25

**Page 4**

1   SECURITIES INVESTOR PROTECTION CORPORATION

2       805 15th Street, N.W.

3       Suite 800

4       Washington, D.C. 20005-2215

5

6   BY:  KENNETH J. CAPUTO

7

8   FARRELL FRITZ, P.C.

9       Attorney for CA, Inc.

10      1320 RXR Plaza

11      Uniondale, NY 11556-1320

12

13  BY:  PATRICK T. COLLINS, ESQ.

14

15  BURNS & LEVINSON LLP

16      Attorney for ZPR

17      125 Summer Street

18      Boston, MA 02110-1624

19

20  BY:  TAL M. UNRAD, ESQ. (TELEPHONIC)

21

22  ALSO PRESENT:

23  ADAM EPSTEIN

24

25

Page 5

1                    P R O C E E D I N G S

2             THE COURT:  Be seated, please.  Good morning.

3    Good morning.

4             MR. WIN:  Good morning, Your Honor.  Zaw Win,

5    Weil, Gotshal & Manges for Lehman Brothers Holdings Inc.

6             The first matter on today's agenda is the plan

7    administrator's omnibus objection to claims filed by Deborah

8    Focht.

9             I understand that the purpose of the hearing today

10   is to come up with a plan to resolve this objection, which

11   has been pending since last January, and as such I think it

12   would be helpful to briefly review the procedural history of

13   this objection.

14            THE COURT:  I would appreciate that.

15            MR. WIN:  The plan administrator first filed its

16   objection to Ms. Focht claim on January 29th, 2013, it's

17   listed at ECF number 34303.  The hearing on that omnibus

18   objection was originally scheduled for February 28th, 2013.

19            On February 21st, Ms. Focht filed a response to

20   the plan administrator's objection, which is listed at ECF

21   number 35026, in which he requested additional time to

22   respond.

23            Accordingly, the plan administrator consented to

24   this first adjournment and the hearing was adjourned until

25   March 28th, 2013.

Page 6

1           On March 22nd the plan administrator further

2    adjourned that -- the hearing on its objection to

3    April 25th.

4           And on March 25th, Ms. Focht filed an amended

5    response to the plan administrator's omnibus objection.

6           And shortly after on April 22nd the plan

7    administrator filed its reply to Ms. Focht's two responses.

8    That reply is listed at ECF number 36737.

9           This Court first held a hearing on the plan

10   administrator's omnibus objection on April 25th, and

11   following the hearing the Court entered an order disallowing

12   three out of Ms. Focht's five claims.  The three disallowed

13   claims were claim numbers 42914, 42915, and 42916.  This

14   order was listed as ECF number 36993.

15          The order also adjourned the hearing on the

16   omnibus objection as it related to the two remaining claims,

17   which are claim numbers 34380 and 34381, until June 13th,

18   2013.

19          In response to a further request from Ms. Focht

20   the plan administrator agreed to another adjournment, this

21   time pushing the hearing from June 6th to June 27th, again,

22   2013.

23          On June 20th Ms. Focht filed a second amended

24   response to the plan administrator's omnibus objection,

25   which is listed at ECF number 38147.

Page 7

1           And on June 24th the plan administrator filed its

2    reply to Ms. Focht's second amended response, which is

3    listed at ECF number 38138.

4           On June 25th the hearing was further adjourned

5    until July 17th.

6           On July 16th Ms. Focht filed a motion to strike

7    the plan administrator's reply, which is listed at ECF

8    number 38796, and at a hearing on July 17th the Court gave

9    Ms. Focht what the plan administrator understood to be a

10   final chance to provide a plausible argument as to why the

11   two remaining claims should not be disallowed.  The Court

12   also adjourned the hearing on the plan administrator's

13   objection to August 29th, 2013.

14          At Ms. Focht's request on August 26th the hearing

15   on the plan administrator's omnibus objection was further

16   adjourned until today.

17          On September 25th, which is yesterday, Ms. Focht

18   contacted plan administrator's counsel to request a further

19   adjournment.

20          So to date Ms. Focht -- this matter has been

21   adjourned five times, Ms. Focht has had three hearings on

22   her response to the plan administrator's objection, and

23   she's had an opportunity to file four separate responses,

24   each one of which has been fairly voluminous.

25          The plan administrator has reviewed all the

Page 8

1   documents that Ms. Focht submitted and continues to be of

2   the view that there's no merit to the two remaining claims.

3           As such the plan administrator would like to come

4   up with some kind of a schedule which in relatively short

5   period of time would allow this matter to be resolved.

6           THE COURT:  I totally agree, and I recall the

7   hearing that took place this summer when I gave Ms. Focht a

8   last and final opportunity to appear and to explain her

9   position, and since then there have been two additional

10  requests for continuance for adjournment.  The most recent

11  being yesterday.

12          My courtroom deputy received word of this and

13  discussed it with me in chambers yesterday afternoon, and I

14  concluded that given the fact that Ms. Focht lives in

15  Florida, is acting on her own behalf, has been advised

16  repeatedly that time is running out and that she needs to

17  either appear personally or appear through counsel to

18  explain her position, because the Court does not find her

19  documentation and her written submissions to be self-

20  sustaining.

21          I believe it is necessary now for there to be what

22  amounts to a last and final opportunity, what is really

23  another last and final opportunity, for her to deal with

24  this matter.

25          Recognizing the enormity of Lehman case, which has

Page 9

1    been pending now for more than five years, this single claim

2    objection has already consumed more judicial time than any

3    other claim objection that this Court has considered.  That

4    statement is really quite extraordinary, but true.

5            And so what I suggest is that an order be prepared

6    that sets forth a final hearing date, that that order

7    provide for a hearing on October 24, which I believe is the

8    next omnibus hearing date for claims, that it recite the

9    very same history of adjournments that have occurred as you

10   have indicated on the record, and that it provide that there

11   will be no further adjournments, and that if Ms. Focht fails

12   to appear, either in person to act on her own behalf or

13   through counsel, that I will proceed in her absence on that

14   date to hear your final arguments as to why the remaining

15   claims should not be disallowed.

16           She should be given actual notice of this order

17   and perhaps by separate mailing or email a copy of the

18   transcript of today's hearing as it relates to her claim.

19           MR. WIN:  Thank you, Your Honor.

20           That concludes the Chapter 11 portion of today's

21   agenda, so I'll turn the podium over to Hughes Hubbard for

22   the LBI portion.

23           May I be excused?

24           THE COURT:  You may be excused.  Thank you very

25   much.

Page 10

1            MR. WIN:  Thank you.

2       (Pause)

3            THE COURT:  Please proceed.

4            MS. GRAGG:  Good morning, Your Honor, Meaghan

5    Gragg with Hughes Hubbard & Reed for the SIPA trustee.

6            On the calendar today is the trustee's 28th

7    omnibus objection to late filed claims.  We're here today on

8    four claims that were adjourned from the hearing that was

9    held on June 19th.

10            Since that hearing Your Honor issued a memorandum

11    decision upholding the trustee's determination and

12    disallowing and expunging the claims heard at the June

13    hearing.  The Court's order has become final and non-

14    appealable as to those claims.

15            We have apprised all of the claimants presently

16    before the Court today of the Court's decision but they

17    continue to prosecute their claims.

18            Apart from Your Honor's issuance of the decision

19    on the late filed claims before the Court in June

20    Mr. Thomas' counsel filed a letter with the Court Monday

21    evening seeking a factual hearing on the circumstances

22    surrounding his filing of his claim after the mandatory six-

23    month bar date.

24            Our papers lay out the trustee's position as to

25    the claims before the Court today and we believe that this

Page 11

1    Court's decision should be applied with respect to those

2    claims.

3             For the reasons set forth in the trustee's reply

4    brief and in the Court's opinion we believe that a factual

5    hearing regarding Mr. Thomas' claims is unwarranted and that

6    the claims before the Court today should be disallowed and

7    expunged because they were untimely.

8             Mr. Caputo of SIPC is present in court today and

9    the trustee and SIPC with respond to any arguments made by

10   the claimants today or any questions that Your Honor may

11   have.

12            THE COURT:  Okay.  I think it would be useful to

13   allow each of the affected claimants to comment about their

14   particular situation and what it is about their situation

15   that distinguishes their treatment from the treatment

16   discussed in the Court's July 11 opinion with regard to

17   other similarly situated claimants.  And that may be a

18   decent way for us to proceed, in effect looking for

19   distinguishing characteristics, if there are any.

20            MS. GRAGG:  Okay.  Thank you.

21            MR. COOPER:  Good morning, Judge, Jeffrey Cooper,

22   Rabinowitz, Lubetkin & Tully for claimant Stephen Thomas.

23   Good morning.

24            Your Honor, counsel for the trustee probably

25   inadvertently misstated what our request was.  It was not to

Page 12

1    have a hearing on Mr. Thomas' conduct, rather it was a

2    request to have a hearing on the trustee's conduct in

3    compliance with the order requiring notice.

4             We are aware of Your Honor's opinion.  In that

5    opinion Your Honor indicated in passing that Mr. Thomas did

6    not get notice because the trustee's representative saw that

7    they were not in the books and records of the company.

8    Mr. Thomas on the other hand has submitted documents to the

9    Court, including a letter on Lehman Brothers stationery

10   dated December 4th, 2004, which was sent to Mr. Thomas at

11   his address, and Mr. Thomas indicates and the letter

12   indicates -- and we've attached that also to our papers

13   today for convenience, there's so many papers in the case --

14   that this letter indicates essentially that LBI filed

15   (indiscernible - 00:12:37) be getting further notice going

16   forward, and Mr. Thomas in fact did not get further notice

17   of the bar date as Your Honor noted in the opinion, because

18   as I say, the statement made by trustee's representative was

19   that he was not in the books and records.  Well --

20            THE COURT:  Let me just --

21            MR. COOPER:  Sure.

22            THE COURT:  -- interject for a moment in reference

23   to this December 4, 2008 letter.

24            MR. COOPER:  Yes.

25            THE COURT:  The omnibus reply papers of the

Page 13

```
 1   trustee filed before my decision in July of this year
 2   specifically addresses this letter, and indicates that, if I
 3   recall it correctly, the trustee did not know who in fact
 4   prepared or sent the letter, but that the letter in question
 5   is at least enough to put your client on inquiry notice and
 6   to take appropriate and diligent action to protect his
 7   interests, and in fact there's a phone number and a
 8   reference to a website in the letter itself.
 9           So the letter is kind of a mixed message from your
10   perspective.  It's both actual notice of the need to do
11   something and an indication that nothing was done between
12   this date and the bar date.
13           MR. COOPER:  I -- I'm sorry.  I understand that,
14   Judge, and it is a mixed message and it does have, you know,
15   perhaps different angles dependent upon how you approach it.
16   But let me take a step back here.
17           It does say in the letter that the claimant would
18   receive future information on how to make a claim, and
19   presumably obviously somebody had the address of Mr. Thomas,
20   he got this letter, he didn't get the subsequent letter.
21           More importantly for this case as I understand it,
22   Your Honor, is that the order that Your Honor had entered
23   some time ago with regard to the service indicated that the
24   trustee shall cause documents in the form annexed to be
25   mailed to persons who as identified from the debtors' books
```

Page 14

1   and records may potentially assert claims as customers or

2   general creditors on December 1st.

3          Critically in case or this matter for Mr. Thomas

4   is a creditor or a potential creditor of the debtor, not a

5   customer.

6          Therefore when you look at the governing rules –

7   the governing rules concerning the books and records of a

8   company I would presume that if you're talking about a

9   customer there are customary records in which stock

10  ownership is held and they could look at those records

11  within the prior year.  But with regard to the customer --

12  I'm sorry -- with regard to the creditor claim of

13  Mr. Thomas, to the extent that both Your Honor recognized

14  and the rule recognizes that with regard to a claimant a

15  creditor you look to Title 11 general jurisprudence in terms

16  of fair notice and so forth.  And I know Your Honor is aware

17  of it and I know that the cases go through it.

18          In the terms of this case where Lehman Brothers or

19  someone on behalf of Lehman Brothers -- I'm not sure how the

20  trustee can just say, well, we didn't know about the letter,

21  that's -- we don't know who sent it, that's fine -- either

22  this letter is a record of the company that the trustee

23  should have reviewed with due diligence to send the notice

24  or the letter at the very least reflects that somebody on

25  some books and records of the company had Mr. Thomas'

Page 15

1    address.

2           THE COURT:  Well, let me just --

3           MR. COOPER:  I'm sorry.

4           THE COURT:  -- let me just break in, because the

5    letter itself provides some clues.  I don't know whether or

6    not the clues are misleading or informative, but the middle

7    paragraph of the letter suggests to a reader that it's a

8    letter prepared by someone with particular reference to the

9    Executive and Select Employees Plan.  This is not a form

10   letter that went to anybody else except a member of that

11   class.

12          So a fair reading of the letter is that it put

13   Mr. Thomas on notice that this isn't just about general

14   claims with respect to the SIPA proceeding but rather claims

15   arising out of a particular relationship he must have had

16   with Lehman Brothers in the past and he certainly must have

17   known his employer, assuming he was employed.  I don't know

18   if that's in fact true.  I don't know when he retired, if in

19   fact he is retired.  And I don't know the facts and

20   circumstances that I'm now talking about.  I'm simply

21   reading the letter.

22          And it could lead an observer to conclude that

23   there were two kinds of notice being given here, not only

24   the notice with respect to Mr. Giddens and the

25   administration of the LBI SIPA liquidation, but also to do

1    more with respect to protecting his interests that are class

2    based, not individually based, and to find out what, if

3    anything, he needed to do to protect his rights.

4              It to me is not a letter that calls for being

5    Passive, but rather for being active.

6              MR. COOPER:  Your Honor, I understand your point

7    and certainly if, you know, a lawyer had read this I think

8    it would have been a different response.

9              I don't know and I would suggest that what we're

10   asking Your Honor to do with -- to these types of questions

11   is to have that evidentiary hearing on that exact question.

12             We're not asking you today to say based upon the

13   record we have here let the claim go in.  We're saying

14   there's enough question of fact here as to what the trustee

15   should have done with due diligence.

16             Let me just make one point, not to belabor it.  In

17    the subsequent paragraph to that that you reference it does

18   say that at some point in the future the trustee will be

19   sending a publishing notice of the procedures for the filing

20   of claims the day by which those claims shall be filed.  So

21   a reasonable person could say, you know, I'm going to wait

22   for that date.

23             Understood that you or I or someone else may have

24   said wait a second, I'm owed a lot of money here, I'm not

25   going to just sit around, I'm going to call and then do

1   this, do that.  That's fine.

2            Specifically, Judge, your order compelling notice

3   requires that the trustee cause documents in the forms

4   attached to Exhibit A, B, and C to persons who are

5   identified from the debtors' books and records that they

6   potentially have a claim.

7            Whether this letter comprises that notice it

8   doesn't.  I mean it simply doesn't have the A, B, and C, it

9   doesn't strictly comply.  And to the extent that this

10  gentleman is a creditor, not a customer, he's entitled to

11  the due process generally in jurisprudence under the

12  Bankruptcy Code Title 11.

13           And what we're asking for today, Judge, is not an

14  ultimate decision, but to say there are enough facts here

15  that don't make any sense, Judge.  How could -- how can this

16  letter be here and yet the trustee's representative says

17  they reviewed the books and records but didn't have his

18  address?  It just doesn't make sense.  What happened, did

19  they not look at the letter?  Did they not look at the

20  underlying document that led to this address?

21           We think that under due process under Title 11,

22  not SIPA, but under Title 11 that Mr. Thomas is entitled to

23  an evidentiary hearing on the circumstances.

24           You may decide ultimately that given all that

25  happened here the equities are not in his favor, but we do

Page 18

1  believe that under these circumstances the equities are in

2  favor of this Court having an evidentiary hearing on the

3  circumstances.

4        THE COURT:  But let me follow up on that --

5        MR. COOPER:  Sure.

6        THE COURT:  -- argument a little bit.

7        Let's just say for the sake of discussion that you

8  conduct some discovery over the questions that we're

9  discussing, including what people worked on collectingly

10 (sic), addresses, what diligence went into identifying

11 creditors, what cross-referencing may have taken place

12 between and among various lists in order to come up with a

13 master list.  Things of that sort.  And let's just say, for

14 the sake of argument, that it is determined -- and here's my

15 hypothetical -- that the notice that went to Mr. Thomas on

16 December 4th on Lehman Brothers' stationery was prepared by

17 someone who was particularly focused on the Executive and

18 Select Employees Plan and had an address list that was

19 limited to participants in that plan.  Let's just say for

20 the sake of argument that that's true.

21        And let's also assume for the sake of argument

22 that people on this list, in addition to Mr. Thomas, didn't

23 get actual notice.  That might be probative of something.

24 But let's just say that it proved that a whole class of

25 individuals didn't get notice.

Page 19

1          The curiosity here is that Mr. Thomas is the only

2    claimant at the moment who seems not to have gotten notice.

3    There seems to be no explanation for that.

4          So I have a couple of questions.  One is, assuming

5    that there was excusable neglect on the part of the trustee

6    in failing to meld address lists and his name was

7    inadvertently dropped off that list, what does that give you

8    in terms of a right of action to get relief from the bar

9    date if you nonetheless acknowledge that you had actual

10   notice of the SIPA proceeding on December 4, you have a

11   sophisticated client, there's a failure to take diligent

12   action, and a court under the standards of the opinion in

13   July could reasonably conclude that even in those events the

14   facts don't provide a distinguishing excuse?

15         In that event there's no -- the discovery, even if

16   it produces something that might lead to an argument,

17   doesn't necessarily lead to an outcome that benefits your

18   client.

19         MR. COOPER:  Understood, Judge.  I think -- and

20   two things I've mentioned.

21         I realize that you're just talking in general

22   terms.  I don't know if my client would qualify as a

23   sophisticated client, and I'm not trying to be pejorative of

24   Your Honor's characterization or of him, that may be a term

25   of art in this case, it's a very sophisticated case, there's

Page 20

```
1    all kinds of issues.  He I think was --

2              THE COURT:  Did he work for Lehman Brothers?

3              MR. COOPER:  No, he worked for a prior company.

4    He worked for one of the prior brokers taking over, I think

5    Shearson, but I think he was a broker.  I -- he --

6              THE COURT:  Well, generally speaking people who

7    work on Wall Street are pretty sophisticated when it comes

8    to financial matters, or at least they should be.

9              MR. COOPER:  I think he worked -- I don't want to

10   (indiscernible - 00:25:12) the record -- I think he work out

11   where he lives now in Texas, I think he was a local broker,

12   and that's not to say he's not working on Wall Street, if

13   you will, I only say that to say that I don't know if that's

14   a standard of response.

15             But more specifically Your Honor's opinion really

16   I think went to the, as you commented, draconian effect of

17   the SIPA notice procedures, and everyone seems to agree they

18   are and Congress made them that way and Your Honor found

19   them to be that way, but my client is a different situation.

20   He is one of these creditors that's not under the -- that's

21   sword of Damocles, so to speak, he's under the Bankruptcy

22   Code's excusable neglect under Pioneer and so forth and so

23   on.

24             I don't know specifically whether to answer your

25   question whether the trustee's conduct could be viewed
```

1   within the rubric of an excusable neglect.  I understood

2   that had to do with the claimant's response, and I'm --

3            THE COURT:  Oh, you're absolutely right, I was --

4   I was making a rhetorical flourish, I wasn't -- I wasn't

5   doing anything more than that, I was just suggesting for the

6   sake of argument let's just say they could say, you know, we

7   were dealing with tens of thousands of these creditors and

8   customers, it was the biggest bankruptcy of its kind in the

9   history of the world, we had the LBHI case going on, we had

10   the LBI case going on, the LBI liquidation is the largest

11   broker dealer liquidation in history, we were doing or very

12   best, and in fact we did a great job, we're really sorry in

13   my hypothetical that Mr. Thomas didn't get actual notice,

14   but I think their answer would be we did our best, so what?

15   He didn't get notice, he was on actual notice on

16   December 4th, 2008 any way.

17            MR. COOPER:  Understood, Judge, and as I say,

18   ultimately in that second hearing, if you will, whatever the

19   facts were, Your Honor might make that ruling.

20            But specifically this is a man half of whose

21   income -- retirement income is in this fund, it's $630,000

22   of his own money.  My understanding is that he put this

23   money into Shearson and it was managed by Shearson and then

24   Lehman.

25            You know, I -- the -- under the equities of this

Page 22

1   case I think it's relevant to see what the trustee did.  And

2   very specifically whoever signed the declaration saying

3   that, you know, he didn't get notice because he wasn't on

4   the books and records I'd like to ask that person or some

5   representative what they looked at?  Did they look at the --

6   did they look at this customer?  I mean just to know what

7   they did so Your Honor can weigh and balance the equities.

8          This is a gentleman now who's 65, retired, thought

9   he'd be getting payments over time of over, you know,

10  $630,000, he's now had to get a job now at a local Wal-Mart

11  to make ends meet.  I don't know that those are one of the

12  equities ultimately here, but I do think that this man and

13  the Bankruptcy Code requires due process such that we at

14  least know what the trustee did.

15         It may be that the trustee did everything he

16  possibly could do and he couldn't have found this out and it

17  just dash that's just the way it is.  But it could also be

18  that in the size of this case that this poor gentleman got

19  lost in the shuffle and the equities of a creditor in this

20  situation should be allowed the claim.  I really doubt it's

21  going to break the bank in terms of paying his creditors.

22         And I'm not trying to be facetious about that,

23  Judge, all I'm saying that the equities should allow this

24  Court to see what the parties did and then Your Honor can

25  make a judgment on those subsequent equities.  But I think

Page 23

```
 1    we ought to know how did they not know this -- how would

 2    they not know about this letter?

 3              I understand what Your Honor said.  Your Honor's

 4    order that Your Honor relied upon in order to make the

 5    draconian application required specific things to be done,

 6    and Your Honor said if you did all these things you're going

 7    to be okay.  They didn't do these things or they may not

 8    have done these things.  They clearly didn't give notice to

 9    someone whose address is on what seems to be a record and

10    possibly, you know, obviously they've got the address in the

11    books and records.  So that's our argument.  Not to

12    ultimately determine today but to essentially do what Your

13    Honor is suggesting, to give us a shot.

14              And I'm not talking about massive discovery.  I

15    mean Your Honor essentially asked the questions I would be

16    asking.  You know, what'd you guys look at?  Talk to this

17    person?  Did you look at or how'd you cross-reference it?

18    It may be that their protocols were so sophisticated under

19    the circumstances that you say look, you know, I'm sorry

20    this guy got stuck.  But it also may be that even if he got

21    stuck because of that that the equities still say under the

22    Bankruptcy Code and its jurisprudence that there's

23    sufficient excusable neglect here and he should be allowed

24    to go forward with his claim.

25              Thank you, Judge.
```

Page 24

```
 1                  THE COURT:  That's your argument.

 2                  MR. COOPER:  That's correct, Judge.

 3                  THE COURT:  I'll hear from the trustee and from

 4      SIPA.  I think I misspoke, I said SIPA, it's SIPC.

 5                  MS. GRAGG:  Hello, Your Honor.

 6                  I have a few points in response to Mr. Cooper.

 7                  One is that -- well, I mean I guess I would just

 8      first off start by saying that, you know, we acknowledge

 9      that Mr. Thomas did not receive actual notice, that he was

10      not mailed notice of --

11                  THE COURT:  Do you know why that occurred?

12                  MS. GRAGG:  He wasn't on the list of potential

13      customers and creditors that was identified by Legacy Lehman

14      employees that was provided to Epiq, the trustee's claims

15      agent.  So --

16                  THE COURT:  Is there a whole class of individuals

17      of this sort who were dropped off the list or was he just

18      one of those unfortunate ones to have missed the opportunity

19      of getting the actual notice?

20                  MS. GRAGG:  To the trustee's knowledge there is

21      not a class of individuals that was missed.

22                  This letter -- and I guess I'll sort of interrupt

23      myself a little bit to just --

24                  THE COURT:  To talk about the letter?

25                  MS. GRAGG:  -- to talk about the letter a little
```

Page 25

1    bit.

2            So there are a couple points about this letter.

3    This letter indicates that Mr. Thomas is an ESEP claimant

4    potentially, which is this Executive and Selective Employees

5    Plan, we have a number -- numerous claimants who are

6    claiming on the basic of the ESEP in -- participation in

7    several ESEP plans.  We've already actually submitted

8    several omnibus objections to those claims seeking to

9    subordinate them under the contractual provisions of the

10   ESEP plan, which is an argument for another date, but we

11   have numerous ESEP claimants in the LBI proceeding.

12           So -- and then the other thing about this letter

13   is it's on Lehman Brothers' stationery.  There's actually no

14   indication at all that this was sent by the trustee or

15   Lehman Brothers Inc.  It couldn't have been sent by Lehman

16   Brothers Inc. because at that time on December 4th, 2008

17   Lehman Brothers Inc. was in liquidation.  So it would have

18   to have been sent by the trustee.  This was not sent by the

19   trustee.  So we don't know who sent it.

20           We can look for clues too.  The phone number -- we

21   called the phone number, that is the phone number to the

22   SIPA -- the SIPA hot line phone number, but the website

23   listed on the bottom is the Chapter 11 holdings website.  So

24   we don't know who sent this, but it wasn't the trustee.

25           So this doesn't -- this doesn't -- this doesn't

Page 26

1   give any evidence that Mr. Thomas was in fact on LBI's books

2   and records and then was missed by the trustee and the

3   trustee's professionals in compiling the list of potential

4   customers and creditors.

5         THE COURT:  Let's just say for the sake of

6   argument however -- and I'm not sure if it makes it a legal

7   difference -- that there was neglect on the part of the

8   trustee in failing to include Mr. Thomas' name and address

9   on the mailing that sent out actual notice of the bar date

10   bar date for the SIPA liquidation.  And let's say that it's

11   not willful, wanton misconduct, it's just ordinary course

12   we're managing a huge estate, we're really sorry we made a

13   mistake.  That kind of error.  And let's just say that

14   discovery is taken that proves that there is a mistake of

15   that sort.  What would the consequence be?

16         MS. GRAGG:  Your Honor, the trustee's position is

17   that there would be no consequences, that's why we don't

18   think that fact discovery is warranted here.

19         SIPA governs the notice requirements here and it

20   does for creditors incorporate Title 11, but Title 11, which

21   ordinary -- as Your Honor recognized in your decision in

22   July -- it ordinarily calls for notice to be given by mail,

23   but bankruptcy courts can decide that notifying creditors by

24   publication is sufficient or desirable under the

25   circumstances.

Page 27

1          And the claims process order here applied both to

2     customers and creditors and it ordered the trustee to

3     identify potential customers and creditors based on the

4     books and records and also to publish notice in three

5     newspapers of general circulation, which the trustee did.

6          Even if factual discovery were to uncover that

7     Mr. Thomas' address was on the books and records and somehow

8     he was not identified and did not receive notice he still is

9     on constructive notice through publication notice in the

10    newspapers and actually through receiving this mysterious

11    letter.

12         He could have -- he could have easily called the

13    number in the letter, he also -- the SIPA bar date is

14    ascertainable based on the filing date.

15         So unlike a Chapter 11 proceeding where the Court

16    sets the bar date he could have found out the bar date.

17         THE COURT:  So there are really two parts to your

18    argument.  First that he was on constructive notice.  And

19    second, regardless of any negligence on the part of the

20    trustee that could be shown the claimant himself failed to

21    take appropriate action to protect his interests; is that

22    right?

23         MS. GRAGG:  Yeah, I think that's right.  And also

24    -- yes, that's right.

25         And I guess I would just add that the trustee, you

Page 28

1  know, regardless of what happened with respect to Mr. Thomas

2  in particular met the requirements of SIPA, which

3  incorporates Title 11 as to him and due process, which

4  requires that the trustee take actions that are reasonably

5  calculated under all the circumstances to apprise interested

6  parties of the proceeding, and in a case of this magnitude

7  where we mailed notice to over 900,000 potential customers

8  and creditors the trustee's position is that he did take

9  actions that were reasonably calculated to apprise

10  interested parties under these circumstances.

11          THE COURT:  Okay.  Thank you.

12          Mr. Caputo, do you have anything to add?

13          MR. CAPUTO:  A few brief comments, Your Honor.

14          Good morning, Kenneth Caputo on behalf of the

15  Securities Investor Protection Corporation.

16          Your Honor, I'm echoing mainly the comments of the

17  trustee, but I'd like to just stress a few points.

18          The standard for notification for general

19  creditors is found in the case law under Title 11, and there

20  seems to be a difference between known creditors and unknown

21  creditors.

22          So the question posed by the Court was what if

23  discovery were to ascertain that the trustee somehow missed

24  it, that Mr. Thomas' address was ascertainable somehow on

25  the books and records, would that matter?  And counsel for

Page 29

1    the trustee indicated that even were that to be the case it

2    would not matter.  And we agree.  And we agree because of

3    the reasons they stated -- that counsel for the trustee

4    stated that are grounded in the fact that Mr. Thomas

5    received this letter on December 4th of 2008, which apprises

6    him of some very specific information, which differs from

7    the information that creditors receive or had received under

8    the various cases that talk about the standard.

9            In the ordinary bankruptcy the -- under a Chapter

10   11 case under the Code the bar date is not readily

11   ascertainable from the notice that a creditor may receive

12   that a case has begun.  It is not readily ascertainable from

13   an initial mailing by the estate.  Because that bar date

14   gets -- is set later.

15           But in this letter that Mr. Thomas received from

16   whomever it was it specifies quite clearly that this is a

17   liquidation, and I'll quote, "under the Securities Investor

18   Protection Act of 1970, as amended SIPA."  So it gives the

19   individual notice that this is not an ordinary bankruptcy

20   case but in fact a liquidation proceeding under a

21   specialized statute.  And the difference under SIPA is that

22   the bar date for filing claims is easily ascertainable

23   because it is set out at six months from the notice.

24           So it is clear to us that Mr. Thomas was at least

25   on inquiry notice with regard to his rights and his remedies

1    in the liquidation proceeding.

2             The only other comment that I'd like to make with

3    regard to Mr. Thomas is that if he's a known creditor or was

4    a known creditor the trustee would have had to taken an

5    action that was capable of determining whether it was

6    reasonably ascertainable that the creditor could be

7    identified through reasonably diligent efforts, and I'm

8    citing the Supreme Court case of Mennonite that is cited by

9    the Third Circuit in Chemtron, which is New Century TRS

10   Holdings case refers to, and the New Century case was found

11   in your opinion on late filed claims that was cited this

12   year.

13            Those cases are very consistent with the result

14   that the Second Circuit has espoused under the Wegner (ph)

15   decision versus City of New York where the court says,

16   "Particularly where mailing is supplemented by other forms

17   of notice, such as posting a publication, the risk of non-

18   receipt is constitutionally acceptable."

19            In this case not only did the trustee undertake

20   reasonably diligent efforts to ascertain the full list of

21   creditors -- and I think in that box the aside is that the

22   Shearson Lehman break up was more than two decades ago --

23   and it is not unreasonable to assume that individuals who

24   participated in that were not readily ascertainable from a

25   standard customer or creditor list that Lehman maintained in

1    2008.

2           The second point is if they weren't they were

3    still receiving constitutionally acceptable notice because

4    the trustee complied with, as counsel for the claimant urges

5    this Court that he must, Title 11, specifically Rule 2002

6    Sub L of the Bankruptcy Rules, which provides for the

7    supplemental notice by publication.  And one thing that is

8    grounded again in the Securities Investor Protection Act is

9    that extra step.

10           And here the trustee complied with that by

11   publishing notice in four did newspapers of general

12   circulation throughout the country.

13           One would have to assume that if you didn't know

14   that Lehman Brothers failed in the end of 2008 you were

15   either on a very long vacation or some other fact pattern

16   existed in your life which would have removed you from the

17   mainstream.

18           THE COURT:  I thought you were going to say some

19   other planet.

20           MR. CAPUTO:  That too would be sufficient.  But

21   even if Mr. Thomas was on another planet or in some way

22   incommunicado, on December 4th of 2008 by his own admission

23   he becomes aware of a particular liquidation proceeding

24   under a particular statute which has a very strict time

25   limit, and he is not only on inquiry notice but he is really

Page 32

```
 1    due bound to take steps -- affirmative steps to protect his
 2    interests.  He did not and there is no argument that he can
 3    make in this case that it constitutes excusable neglect.
 4    Because excusable neglect does not apply in a SIPA
 5    proceeding under the standards espoused under Pioneer.
 6              Thank you, Your Honor.
 7              THE COURT:  Let me probe what you said just a
 8    little bit further.
 9              One of the curiosities of the argument is that
10    everybody focuses on the December 4th, 2008 letter to
11    Mr. Thomas, but the trustee necessarily distances himself
12    from the letter because it's not his letter.  Can't take
13    credit for the letter.  But you are making the argument that
14    whoever authored it put Mr. Thomas on notice that he had
15    some work to do to protect his rights.
16              Let's just say for the sake of discussion that
17    this good Samaritan author of this letter didn't write the
18    letter and the letter was never sent but that Mr. Thomas'
19    identity and address were ascertainable facts from business
20    records and he didn't get notice.  Is it your position that
21    publication notice in that circumstance would be adequate?
22              MR. CAPUTO:  It is my position that it would be
23    adequate, and I think under the standards espoused by the
24    Second Circuit it would be constitutionally acceptable.
25              Wegner versus city of New York following Maleen
```

1    (ph) versus Central Bank, and that standard is clear that

2    the publication notice is a sufficient safeguard to provide

3    an individual with notice to satisfy the due process

4    requirements under the constitution.

5              THE COURT:  Let's assume further, different

6    hypothetical, that Mr. Thomas' name appears in records and

7    somebody makes a terrible mistake, they get down to the

8    bottom of a page and they turn the page and in turning the

9    page they miss his name and address and we're able to

10   conclude that he has -- he's included in the list, he should

11   have received notice, he didn't receive notice, and he

12   doesn't read general circulation newspapers, he reads only

13   the daily newspaper published in Austin, Texas, which is

14   where he lives.  Let's just say that.

15             And let's just say he's working at Wal-Mart

16   because he likes it and the people who go there are not

17   financially sophisticated people for the most part and they

18   don't talk about the Lehman Brothers bankruptcy, they talk

19   about other things.  He actually has no notice, but he was

20   entitled to notice.  Is it still adequate?

21             MR. CAPUTO:  It is.  Cases that have discussed

22   various fact patterns that are troubling and difficult to

23   deal with indicate that the policy standards that exist for

24   the statutory subsection of SIPA, which we're talking about,

25   are -- they're important.  They are grounded in a need for a

Page 34

1    prompt and orderly liquidation of the estate, a calculation

2    of what the demand on the fund is.  And you'll find in those

3    decisions some very difficult outcomes for investors who

4    claim not to have notice.

5              In one case in particular, for example, in the

6    Southern District of Florida in the case of In re:

7    Government Securities, the Court was faced with a situation

8    where a customer claimant, even a higher standard of

9    creditor -- and again, I think it's somewhat of an aside or

10   a footnote here that the trustee has taken -- filed a number

11   of motions in this case to indicate that even the ESEP

12   claimants in this case are to be subordinated under the very

13   contract.  Now that has not been decided, but that is before

14   the Court, and that's where Mr. Thomas would end up, in that

15   same group, which is a potentially subordinated group of

16   creditors even were his claim to be accepted.

17             But nevertheless this one customer claimant in

18   SIPA lived in Peru and did not get actual notice.  And the

19   Court determined as a matter of fact that only four copies

20   of the Wall Street Journal were mailed to the nation of Peru

21   on the particular day of notice, and the Court found that to

22   be acceptable notice under the statute and denied the claim.

23   That's a very strict decision.

24             And in this case we know that the hypotheticals

25   that the Court posed, both of them, don't meet the test --

Page 35

1      or don't meet the facts as we see them before us today, the

2      facts that are in evidence before the Court and upon which

3      the Court can take judicial notice.

4              We believe that it is clear that Mr. Thomas by his

5      own submission indicates that he was on inquiry notice, he

6      received inquiry notice about this proceeding and the

7      particular liquidation proceeding under SIPA.  He had more

8      than a hunch that his rights would be affected, and because

9      of the totality of the circumstances here, which the Court

10     already has before it and the evidence is clear, we believe

11     that the Court could determine today that any further

12     inquiry requested even at the eleventh hour of Tuesday night

13     before a court hearing today, even that effort would be

14     futile as a matter of law.

15             THE COURT:  Well, that's actually one of the

16     reasons I've been asking these hypotheticals to get to that

17     question.

18             MR. COOPER:  Judge, if I may, just very briefly,

19     and just based upon comments by counsel for the trustee.

20             I think what counsel indicated was that among

21     other things -- and I'm assuming this is a proffer -- that

22     they looked to Legacy employees of Lehman Brothers Inc. to

23     determine these various lists.  And it's curious, but the

24     letter that we've been talking about, this December 4th

25     letter, has a Lehman Brothers reference on the top but

Page 36

1    nothing on the bottom.

2            And although I know Your Honor does not have this

3    I'd be happy to hand it up or put it into evidence at an

4    appropriate time.

5            Mr. Thomas received his ESEP account statement on

6    or about March 13th, 2008, and it's signed by a woman named

7    -- a woman I assume -- Erin D'Souza, D apostrophe,

8    S-O-U-Z-A, looks like it has similar to the same top of the

9    page, but the bottom is Lehman Brothers (indiscernible –

10   00:50:38) Americas typical address.

11           So among other things at the very least I'd like

12   to know whether Ms. D'Souza was one of these Legacy

13   employees who compiled the list.  Because if she was she had

14   written a letter in March to this gentleman at this address.

15           And I think, you know, whether the constitution

16   permits something doesn't mean that it's fair in this court.

17   I'm sorry.  You know there's a fairness here that this

18   gentleman ought to at least be able to understand what the

19   trustee did.

20           Your Honor may well rule ultimately that, you

21   know, that doesn't matter, that he should have done this or

22   that or the other thing, and you know, now I hear his claim

23   by the subject to subordination claims any way, which is

24   obviously another issue, but we're talking about just bear

25   I mean if this system does nothing procedural due process is

1    the essence of it, and here he ought to at least know

2    whether this person, Ms. D'Souza, was one of the people that

3    they talked to and whether she -- I am certain she didn't

4    intentionally leave his name out, you know, but if she made

5    a mistake or someone else made a mistake we ought to know

6    and then evaluate that conduct to see the equities of this

7    case.

8            Thanks, Judge.

9            THE COURT:  Thank you.

10           MR. COOPER:  And I have a copy.  I apologize I

11   didn't -- until coming I didn't realize that Ms. D'Souza had

12   actually signed it or who had done the inquiry.  At an

13   appropriate time I can submit it to the Court in affidavit

14   form.

15           THE COURT:  I won't need it, but thank you any

16   way.

17           These issues as noted in my decision of July 11,

18   2013 are troublesome in part because the Court is being

19   asked to deal with issues of notice and the requirements of

20   SIPA that are quite onerous with respect to exceptions to

21   the rule that you have six months, it's a strict time limit,

22   and excusable neglect is for all practical purposes an

23   irrelevancy.

24           My decision includes in the conclusion a sentence

25   that applies here as well.  I write in declarative words,

1    "It would be an abuse of discretion for the couth to grant

2    the exception of relief sought by the respondents."  And

3    that applies to Mr. Thomas' request to take discovery.

4            One of the things that the argument has elucidated

5    is that the discovery would be a waste of time, because for

6    all practical purposes, regardless of what the discovery

7    uncovers, the trustee and SIPC will still revert to the same

8    familiar theme, namely it doesn't matter, the individual in

9    question by his own admission was placed on actual notice of

10   the existence of a SIPA case affecting his rights in

11   December of 2008 and then did not take appropriate action.

12           In effect it's as simple as that.  And for that

13   reason there's no distinction that I can legitimately draw

14   between Mr. Thomas' situation and those of the other

15   claimants that I considered in my most recent decision on

16   the subject.

17           In fact in the case of one of the claimants,

18   Mr. Monello, I treat a different argument going to the

19   question of whether or not the strict application of the

20   SIPA bar date in his case should be overridden on a standard

21   of manifest injustice, and I found no basis for doing so.

22           So while the outcome is potentially difficult to

23   explain to an individual living in Austin, Texas who could

24   legitimately say, well, I never got actual notice, I never

25   I never read those newspapers, I didn't know about it, but

1    the standards for notice here are still met.

2            So regrettable as it may be and harsh as it may

3    seem the trustee's objection to this claim is sustained as

4    an untimely claim for the reasons stated just now on the

5    record and for the reasons also included in my decision from

6    July.

7            Let's hear from the next claimant.

8            MR. COLLINS:  Good morning.

9            THE COURT:  Good morning.

10           MR. COLLINS:  Patrick Collins, Farrell Fritz on

11   behalf of CA, Inc.

12           The July 11th decision does not mean the

13   disallowance of CA's claim.

14           CA is a known general creditor of LBI for whom

15   notice of the proof of claim bar date was sent to an

16   incorrect address.

17           THE COURT:  This went to the lock box?

18           MR. COLLINS:  Correct.  There was a lock box in

19   Pittsburgh, Pennsylvania maintained by Mellon Bank for the

20   purpose of receiving payments.  The lock box was closed in

21   2007, and customers of CA were instructed to send payments

22   to a new lock box that was established in Philadelphia.  And

23   the invoices that CA sent to its customers actually in

24   addition to the lock box address for remitting payments

25   provided an address where correspondence was supposed to be

1    sent.

2           Publication notice of the bar date is not

3    sufficient to bar CA, because CA as a creditor, other than a

4    customer, was entitled to receive actual written notice of

5    the bar date in accordance with the Bankruptcy Code and

6    rules, which are expressly incorporated into the SIPA

7    statute.

8           Because CA did not receive actual written notice

9    of the bar date the deadline cannot be a basis for

10   disallowing CA's claim.

11          CA is a leading developer of business enterprise

12   software, it licenses -- it licensed software to LBI and

13   provided maintenance services in connection with those

14   licenses.

15          After receiving notices in 2008 regarding the LBHI

16   cases CA caused a proof of claim and then an amended proof

17   of claim to be filed in the LBHI cases.  The amended proof

18   of claim was filed on April 17th, 2009 for $394,000.  CA did

19   not receive the bar date notice concerning the LBI case.

20          In April 2012 LBHI objected to CA's claim

21   asserting that it was not the party liable on CA's claim,

22   and that if anything other Lehman entities that were not

23   subject to the LBHI case were the ones responsible for the

24   CA claim.

25          Upon receipt of LBHI's objection CA investigated

Page 41

1    its records and determined that the Lehman entity with whom

2    it had contracted was LBI and not LBHI.

3              THE COURT:  How could they not have known that it

4    was LBI from the get go?  I don't understand how you can be

5    standing here claiming an entitlement to an exception from

6    the bar date when you're dealing with a sophisticated party,

7    you characterized them as a leading developer of software,

8    they clearly weren't living in Austin, Texas at the time and

9    they weren't working at Wal-Mart, they were well aware of

10   what they were dealing with and they didn't know that it was

11   LBI?  How could they possibly have been confused about that?

12             MR. COLLINS:  Well, many -- much of the

13   correspondence that came out of the LBHI company simply says

14   Lehman Brothers on the top of it.

15             THE COURT:  But still this is a -- this is an

16   enterprise that engages in business with any number of

17   sophisticated users of its software.  I don't know what the

18   services were that are in question here, but it almost

19   doesn't matter for purposes of my skeptical inquiry.

20             MR. COLLINS:  Uh-huh.

21             THE COURT:  What's the excuse?  It just --

22             MR. COLLINS:  I don't think an excuse is

23   necessary, Your Honor.  I think --

24             THE COURT:  Oh, yes -- oh, yes it is.

25             MR. COLLINS:  I'm certainly if you think so, but I

Page 42

1    -- CA submits that creditors are entitled to actual written

2    notice of the bar date.  That's what Title 11 says of the

3    BGI case that we cited in our briefs says that creditors are

4    entitled to actual written notice of the bar date, not you

5    know, an awareness of the -- that the Lehman cases --

6           THE COURT:  There are any number of cases that

7    involve parties just like your client that didn't receive

8    actual notice and are still held to the bar date, especially

9    in SIPA cases, and here we have a situation in which notice

10   was in fact given, and by your own admission it was given to

11   a dead letter office as it turns out, but it was given and

12   there was constructive notice and you have a sophisticated

13   client and you have no equitable grounds to say that any

14   special exception should apply to you.

15          So, with respect, I don't understand how you can

16   distinguish yourself from the impact of the July 11, 2013

17   decision, and that's what I set up for this argument.  Not a

18   complete recitation of the papers that I've read --

19          MR. COLLINS:  The July --

20          THE COURT:  -- but an argument -- an argument that

21   actually deals with today's reality.

22          You have a very difficult law of the case problem

23   to overcome, and you haven't done it yet.  Try doing it now.

24          MR. COLLINS:  The July 11th decision says "that

25   none of the respondents have produced direct and substantial

Page 43

1    evidence to rebut the presumption that the addressee of a

2    properly addressed and mailed notice actually receives that

3    notice."

4              The presumption doesn't even apply to CA because

5    the bar date notice was sent to a completely wrong address.

6              Unlike all the other parties that came before the

7    Court involved in the July 11th order the bar date -- the

8    mailing of the bar date notice to CA was patently incorrect,

9    sent to a --

10             THE COURT:  Okay, let's accept that.

11             MR. COLLINS:  Okay.

12             THE COURT:  Let's say that it was deficient -- it

13   was a deficient notice, it was an attempt to send notice,

14   your client was on a list and it went to the wrong address.

15   These cases by the way come up all the time.  Now what?

16   That's the extent of the argument?

17             MR. COLLINS:  The extent of the argument is that

18   CA is entitled to actual written notice of the bar date.

19             THE COURT:  Okay.  Do you have anything --

20             MR. COLLINS:  Of the bar date, and if --

21             THE COURT:  Do you have anything --

22             MR. COLLINS:  -- the mailing --

23             THE COURT:  That's -- your papers say that too.

24   Do you have anything more to say with respect to -- to this

25   question?

1          MR. COLLINS:  No, since the mailing was

2    insufficient the publication does not rescue it, because

3    under Title 11 known creditors are entitled to notice by

4    mail.  The publication can be a supplement, but under the --

5    I disagree with Mr. Caputo's characterization of the Maleen

6    decision, I believe the Maleen decision dictates that known

7    creditors receive notice by mail in addition to notice by

8    publication if they are known.  That's what it holds.

9    Publication is only for unknown creditors.

10         THE COURT:  Well let's just say for the sake of

11   discussion that the notice was given consistent with LBI's

12   books and records, but it turns out to be in your example an

13   incorrect address.  I suspect that what I'll be hearing from

14   the trustee -- I don't want to anticipate their argument,

15   but I've heard it before -- is that that's sufficient.  That

16   there's no duty that the trustee has to look beyond the

17   books and records of the broker dealer.  And if your

18   address, the lock box address, was in fact the address

19   maintained at LBI, and if your client didn't even know that

20   it was dealing with LBI I don't really understand your

21   argument anymore.  Because notice was given and your client

22   seems to have been negligent in not even understanding who

23   its counterparty or client was.

24         MR. COLLINS:  If -- if CA had received the LBI bar

25   date notice timely CA would have had both of the notices in

Page 45

1      front of them and had been able to ascertain that there are

2      distinctions between the two and that you need to drill down

3      to the granule level to figure out which entity.

4              And with regard to the trustee's argument, which I

5      heard in response to the discussion on Mr. Thomas regarding

6      whether it would matter if the address in LBI's books and

7      records is the wrong address, I think it does matter.

8              Under the SIPA statute the notion that the trustee

9      all the trustee needs to do is send mailings to the address

10     shown in the debtors' books and records that applies to

11     customers, it doesn't apply to creditors.  That sentence is

12     in reference to customer claims.  That sentence is not in

13     reference to creditor claims.

14             So I think we're moving under Title 11 with

15     respect to the notice issue, Title 11 governs, and a

16     creditor is entitled to receive notice at the correct

17     address.

18             THE COURT:  Okay.  I understand your argument.

19             MR. COLLINS:  Okay.

20             THE COURT:  I'll hear from the trustee and from

21     SIPC if anything needs to be added.

22             MS. GRAGG:  I'll actually keep my response very

23     brief.

24             I think our -- the trustee's reply lays out our

25     position very clearly on CA, Inc.'s argument, in particular

Page 46

1   the decision of the Bankruptcy Court for the Northern

2   District of Illinois In re: Chicago Partnership Board, Inc.

3   should apply to CA's case.

4        In that case the facts were substantially similar.

5   The trustee sent notice to the claimant's lock box address

6   as in this case.  That address was identified by the

7   trustee's claims agent based on the broker dealer's books

8   and records.

9        As in that -- as in this case in that case the

10  trustee did not receive any -- any unreturned mail notice as

11  a result of having mailed the notice to the lock box.

12       And most importantly in that case and in this case

13  there was notice by a publication, and the In re: Chicago

14  Partnership Board court found that regardless of whether the

15  claimant received actual notice by mail that notice by

16  publication was sufficient under SIPA and due process

17  requirements.

18       THE COURT:  What do you say to the argument that

19  Title 11 notice requires that there be actual delivery of

20  written notice of the bar date to CA?

21       MS. GRAGG:  Title 11 requires that there be mailed

22  notice to known creditors.  The trustee mailed notice to CA,

23  Inc. at its address as it appeared on LBI's books and

24  records.  In a case such as this receipt of -- actual

25  receipt of mailed notice is not required.

1          THE COURT:  And it doesn't matter that the notice

2     was sent to a closed lock box?

3          MS. GRAGG:  No.  And Title 11, as this Court

4     recognized in its July decision, allows for the Bankruptcy

5     Court to order notice by a publication if it's desirable and

6     appropriate under the circumstances, which this Court did in

7     the claims process order, which applied to both general

8     creditor and customer claims.

9          THE COURT:  Okay.  Thank you.

10         Mr. Caputo, do you have anything to add?

11         MR. CAPUTO:  Just briefly, Your Honor.  Kenneth

12    Caputo on behalf of Securities Investor Protection

13    Corporation.

14         Your Honor, in its papers C -- I think a key point

15    that counsel for the trustee just made is that CA, Inc.

16    ignores Bankruptcy Rule 2011 -- 2002 Sub L which provides

17    for that supplemental notice by publication.  And if at any

18    rate that occurred here, and that's a fact that can't be

19    avoided.

20         They rely on three cases.  And the first case is

21    Green River Biodiesel from the Northern District of Alabama.

22    It's a Chapter 11 case.  And it involves notice sent to a

23    lock box address, but it does not deal with additional

24    notice by publication and the policy implications underlying

25    the strict time limits in SIPA.

Page 48

1              The second case they cite is Spring Ford

2      Industries from the Eastern District of Pennsylvania.

3      Again, a Chapter 11 case, it involves excusable negligent.

4      Also not applicable here.  And it does not deal with the

5      additional notice by publication and the policy implications

6      underlying the strict time limitations in SIPA.

7              And the third case they deal with, which is very

8      curious, is Breen (ph) versus Baltimore Gas & Electric, or

9      as referred to by counsel, the BG&E case, and that case

10     deals with a willful violation of the automatic stay and

11     just some dicta about mailing by BG&E.  Not a controlling

12     case.

13             But one case that is particularly imformative was

14     a case I litigated that counsel referred to, which was the

15     Chicago Partnership Board case, and in that case there was a

16     mailing to a lock box that was not the proper receipt for

17     all notice to that debtor -- to that creditor, and the Court

18     found that nevertheless notice was complied with for two

19     reasons.  The trustee complied with his obligation to mail

20     notice, he did that to the address that they had on the

21     books and records, and he published notice.

22             CA is seeking equitable relief here by the Court,

23     an exception to the very strict limits.

24             I think it's notable that it its response at

25     paragraph 9 that it -- and I'll quote -- "It mistakenly

Page 49

1    identified the debtor as LBHI instead of LBI in its proof of

2    claim."  It made the mistake in its papers and we point this

3    out in our brief at page 14, footnote 9.

4              You can readily ascertain from the affidavit that

5    CA, Inc. submitted that there are no fewer than four

6    instances where it can be clearly discerned on the face of

7    the document that the counterparty was LBI.

8              As Your Honor held in the decision in July, SIPA

9    does not tolerate the garden variety excuses for failure to

10   comply with the strict time limitations.  It should not

11   tolerate it here and we respectfully submit that the

12   objection by CA, Inc. to the trustee's motion should be

13   denied.

14              THE COURT:  Thank you.

15              MR. COLLINS:  May I reply briefly, Your Honor?

16              THE COURT:  Sure.

17              MR. COLLINS:  Further to the question of, you

18   know, how CA could be confused as to who its obligor was.

19   Lehman Brothers Holdings scheduled claims in favor of CA on

20   its bankruptcy schedules and only years later amended its

21   schedules to delete those claims.  So it's not as if there

22   wasn't a basis for CA to believe that Lehman Brothers

23   Holdings might be the obligor on the claim.  And that's set

24   out in our papers.

25              Our response papers cite the BGI, Inc. case, 476

Page 50

1    Bankruptcy Reporter 812 that says "that adequate notice

2    entails actual written notice of the bankruptcy filing in

3    the bar date," and that is a Chapter 11 case.  And also the

4    Drexel Burn & Lambert (ph) group case, 151 Bankruptcy

5    Reporter 674, which says essentially the same thing.

6            They've discussed the Chicago Partnership Board

7    case in support of a proposition that a notice sent to a

8    lock box is sufficient under SIPA.  The reason CA didn't

9    cite that case is because we don't think it applies.  It

10   involves a customer, not a general creditor.  It involved a

11   mail drop maintained by the claimant, not a lock box

12   maintained by a third-party bank.  And more importantly the

13   lock box here was closed.  The lock box was closed in 2007

14   and moved to an entirely new address.

15           THE COURT:  Okay, but let's -- let's focus on

16   Mr. Caputo's argument.  I think what he's saying is that it

17   doesn't matter, and I believe that what he is saying is that

18   if notice is actually sent to a bad address but notice is

19   supplemented by publication that's all you need to do as

20   long as that bad address is within the business records of

21   the broker dealer.

22           And if that's true you lose, because all of these

23   distinguishing characteristics don't matter.  Actual notice

24   for these purposes, the actual receipt at the proper address

25   of a bar date notice is not a requirement when applying the

Page 51

1    SIPA bar date.  And in effect I don't think you can get out

2    from under that argument, even though you are making an

3    equitable argument and I understand why you're making it.

4              But it's also true that your client, as stated in

5    paragraph 9, determined that it mistakenly identified the

6    debtor as LBHI.

7              So with all respect you're not going to prevail

8    today, and the grounds for it are set forth in the July

9    opinion and the colloquy of today's hearing.

10             MR. COLLINS:  Would you like me to respond, or are

11   you --

12             THE COURT:  No, actually what I just said is --

13   I've ruled and you might as well sit down.

14             MR. COLLINS:  Okay, I understand that, that's why

15   I asked.

16             THE COURT:  But I'd like to hear from Mr. Caputo

17   if I have correctly characterized his legal position,

18   because I believe that is what it is.

19             MR. CAPUTO:  You did, Your Honor, quite well.

20   Thank you very much.

21             THE COURT:  Okay.  And I accept it.  I believe

22   that is the proper interpretation of the provisions of SIPA

23   that are interpreted in my most recent decision on the

24   subject.

25             MR. COLLINS:  Thank you, Your Honor.

```
 1              THE COURT:  Okay.  Thank you for the argument.

 2         What's next?

 3              MR. EPSTEIN:  Good morning, I'm Adam Epstein, I am

 4    a -- I had a brokerage account at Lehman, it had some shares

 5    in it.  I thought that my risk was in the underlying

 6    companies that I bought the shares in, not in the custodian

 7    of my account.  I guess I was wrong.

 8              I was here in June and I've heard several people

 9    make arguments as to why they case should be allowed, and

10    I've read -- I heard Mr. Caputo make several convincing

11    arguments as to why they should not be, and I've read

12    through your opinion in July that says you have very little

13    to no discretion in these matters.

14              I'm here today to make two points.

15              One is I believe my case is fundamentally

16    different from all that we've heard thus far, and because of

17    the circumstances in my case my claim ought to be allowed.

18              And number two is Mr. Caputo had offered some

19    interpretations of what Congress' intent was and the dire

20    consequences should a late filed claim ever be allowed.  I

21    have a different interpretation of those things.

22              So first of all the particulars of my case I

23    thought that my account had been transferred to Barclays.

24    Why did I think that?  Because they told me it had.  I got

25    lots of letters from Barclays in '08 and '09 saying welcome
```

Page 53

1    to Barclays.  Here's one of them I got from Barclays with my

2    Barclays' account number on it and my Barclays' financial

3    information.

4              THE COURT:  So what happened?

5              MR. EPSTEIN:  I -- well -- and here's more.  Years

6    later I realized I had not received a statement from

7    Barclays in a while.  I called them up and said, what's

8    going on with my account, I moved, maybe you don't have any

9    current address.  And they said, well, we don't have a

10   record of you ever being a client of ours, talk to Lehman.

11   I talked at a Lehman and they said, well, you have to file a

12   claim, but it's too late, it's a late filed claim any way so

13   it doesn't matter.  So that's why I'm here today.

14             THE COURT:  And your claim is a -- would be a

15   customer claim?

16             MR. EPSTEIN:  A customer -- it was broker's

17   account, yeah.

18             THE COURT:  Got a brokerage account, you had

19   securities in your account?

20             MR. EPSTEIN:  Yes.

21             THE COURT:  It started out small and it ended up

22   small --

23             MR. EPSTEIN:  Yes.

24             THE COURT:  -- if I remember correctly.  You

25   started out with about 1,000 and you ended up with about

Page 54

1    5,000 and change.

2           MR. EPSTEIN:  Yes.

3           THE COURT:  Okay.  I don't understand what

4    happened.

5           MR. EPSTEIN:  I don't either, but I do know that

6    they sent me letters well after the bar date from Barclays

7    saying, dear client.  Now no wonder I thought I was a bar

8    clays client.

9           Now the backdrop of which I'm getting these

10    letters Mr. Caputo has argued that Barclays -- that Lehman

11    is the biggest bankruptcy of all time, you had to have known

12    when it happened unless you were living on a different

13    planet.

14           What I interpret, what I saw was that Barclays

15    had bought Lehman.  There were articles all over the press

16    about that.  I did some Goggling recently, there were over

17    100 articles in the New York Times about Barclays buying

18    Lehman in a two-week period.  In fact it was global news.  I

19    looked globally, I looked country by country.  Here's an

20    article from Albania saying Barclays has bought Lehman.

21    Here's an article from Bangladesh.  You can go

22    alphabetically by country.  Cambodia.

23           THE COURT:  We actually don't usually do that.

24    I'll take judicial notice --

25           MR. EPSTEIN:  Okay.

1            THE COURT:  -- that everybody in the world knows

2     about it.

3            MR. EPSTEIN:  Everybody in the world knew that

4     Barclays had bought Lehman, and that's why I thought

5     Barclays had my account.  It turned out not to have been the

6     case apparently or a mistake was made somewhere.

7            Now everything that I've heard thus far talks

8     about errors that the claimant makes.  There are no

9     excusable errors that a claimant makes, that's too bad.

10           What -- there was some subtext of what you were

11    saying was errors of omission by the trustee.  If they had

12    not sent out those letters, if they had not filed the

13    articles in the newspaper then presumably they wouldn't be

14    allowed to take the funds.

15           But a whole different category that we haven't

16    talked about is errors of commission.  They made a crucial

17    mistake here in giving my account information to Barclays.

18    If Barclays wasn't buying my account or taking my account

19    why did -- Lehman had no business in giving them my account

20    information.  And the fact that they did that, that they

21    committed a crucial mistake led to where we are today.

22           THE COURT:  Okay.  I understand your argument and

23    it does seem different to me, so let's hear what the trustee

24    has to say.

25           MS. GRAGG:  Your Honor, I would start off by

Page 56

1    saying that notice was mailed to Mr. Epstein at his mailing

2    address as it appeared on LBI's books and records.  This was

3    the same mailing address that appears on the account

4    statement that he submitted with his late-filed claim.

                                                      th
5           He, in his papers in response to our 28

6    objection, asserted that he didn't receive notice possibly

7    because he had moved.  This is actually the first tame that

8    we're hearing what his belief that his account was

9    transferred was based on.  I've never seen any of the

10   statements from Barclays that he's referring to today.

11          THE COURT:  Do you think it would be worthwhile to

12   adjourn this particular matter so that you can examine these

13   facts?

14          MS. GRAGG:  I don't because of the Adler, Coleman

15   (ph) decision of the Southern -- Bankruptcy Court for the

16   Southern District of New York from 1997.

17          In that case claimants, Laird and Susan Kelly,

18   were mailed notice of the SIPA proceeding.  They also

19   believed that their account had been transferred.  And in

20   fact I think it was supposed to have been transferred, but

21   Adler, Coleman failed to -- failed to successfully transfer

22   the account.

23          The Court in that case found that while it was

24   unfortunate that the Kellys didn't understand their

25   obligations to file a claim in the proceeding based on their

Page 57

1    belief that their account had been transferred, their

2    failure to timely file a claim did not fit with any of the

3    exceptions to SIPA's mandatory six-month bar date.

4              THE COURT:  Okay.  One of the things about the

5    SIPA bar date, it sure does have a lot of unfair

6    repercussions when applied on an individual basis.

7              Mr. Caputo?

8              MR. CAPUTO:  Kenneth Caputo on behalf of

9    Securities Investor Protection Corporation.

10             And the first comment I have is yes, it does have

11   some very adverse consequences.  It is a very strict

12   statute.

13             And I said at the outset of my argument in the

14   June hearing that this is never a good day when SIPC has to

15   come before the Court and argue that claimants should be

16   denied protection under a statute that is designed to afford

17   protection to investors simply because they are late.  But

18   that is the law and that's the law that we are duty bound to

19   uphold.  It is a strict law.

20             THE COURT:  I understand, and when I wrote the

21   decision that we've been referencing I felt that it was a

22   harsh decision as to the claimants that were affected, and I

23   think that the decisions I've made today so far are harsh

24   decisions.

25             We're now dealing with an individual claimant who

Page 58

1    has a $5,000 customer account and he has documentation that

2    he's holding that appears to be from Barclays welcoming him

3    as a customer.  And I have an argument from the trustee that

4    he received actual notice of the bar date.

5         But here's the question.  Assume for a moment that

6    notice was proper, and assume as a result that the bar date

7    should be strictly complied with.  Why isn't it a excuse

8    that this particular claimant, Mr. Epstein, was lulled into

9    a sense of I don't really have a problem with my account

10   because it appears to have been transferred to Barclays when

11   they bought Lehman Brothers?  So maybe it's safe for me to

12   disregard this piece of paper that must have been sent to me

13   in error.  Of course he didn't get it because it went to the

14   wrong address.  But let's just say we're mixing those two

15   messages and he either didn't get the notice, which is what

16   he claims, or he did get the notice but he disregarded it,

17   which is my hypothetical.

18         Isn't the fact that he was given good faith

19   information that was unintentionally so misleading?  It was

20   legitimate Barclay stationery welcoming him as a customer.

21   What am I supposed to do with that?

22         MR. CAPUTO:  It's difficult in a third party

23   provides information to an individual that is potentially

24   misleading.  But as counsel for the trustee stated in the

25   Adler, Coleman case, we -- the Court had already addressed

Page 59

1    that type of a claim, a very specific claim by the Kellys.

2    I litigated that case.  Another tough case.  Their account

3    was transferred from Alder, Coleman, a clearing firm, to a

4    new clearing firm pursuant to an account agreement and they

5    had received notice that it had moved, but because of some

6    peculiar circumstances the account bounced back to Adler,

7    Coleman as is the case here.

8            And the notice that the individuals were given and

9    that was sent to his address -- and again, I think -- I

10   believe it's the same address that he submitted his

11   objection from, the mailing was made to the same exact

12   address, why he didn't get it we don't know -- but the very

13   difficult result was that the Kellys were found not to be

14   permitted an opportunity to pursue a claim because they were

15   late.

16           And in this case the strict result is that

17   Mr. Epstein falls under that same unfortunate result.

18           THE COURT:  Okay.  I understand.  Thank you.

19           MR. CAPUTO:  Thank you.

20           THE COURT:  Mr. Epstein, I don't know there's much

21   more to say, and this is one of those times when I wish

22   there was more that I could do.

23           The sentence that I read earlier applies to you.

24   It's -- it's regrettable and I wish it weren't so, but when

25   I spent some time this summer considering the other

Page 60

1   claimants whose cases I heard that led to the issuance of

2   the decision on July 11 I struggled to come up with a way

3   that I could do something to help claimants like yourself.

4          And I concluded based upon my careful evaluation

5   of the applicable law and the underlying policy of the SIPA

6   statute that it would be an abuse of discretion for me to

7   grant any exceptional relief, and regrettably that applies

8   to you as well.

9          And so I'm sorry to say that even with the obvious

10  pieces of paper that I could see you holding that are

11  obviously Barclays' documents and that gave you a reason to

12  believe that you were secure, it turns out that you're not

13  and I'm sorry about that.

14         MR. EPSTEIN:  May I reply to two comments that

15  they just made that are new today, if I may just as long as

16  I'm here?

17         What he said is that they can't be held

18  responsible for a mistake that a third party makes, they're

19  not responsible for what Barclays does for me is what he

20  said.

21         The only way that Barclays got my information is

22  that if Lehman gave it to them.  That was the crucial

23  mistake.  They had no business giving my account information

24  to somebody else unless they were actually selling the

25  account.

Page 61

1            THE COURT:  Well, as Mr. Caputo said, something

2      similar to that happened in the Adler, Coleman case, and the

3      same result unfortunately occurred.

4            So I can't -- I can't tell you that this feels

5      Fair, because it's quite the opposite, it feels unfair, but

6      there's nothing I can do about it.

7            MR. EPSTEIN:  And he said just now in the Adler,

8      Coleman case that it bounced back.  Is there a time limit on

9      it bouncing back?  What if today all of the Barclays'

10     accounts, the 110,000 that were transferred all of a sudden

11     bounced back, would that have been too long a period to

12     wait?  I mean what's too late to wait for a bounce back?

13     I'd still be imperiled if I were a Barclays customer that

14     had actually been transferred.

15            THE COURT:  Well, there's another element of this

16     and I don't mean to get into it, but one of the arguments

17     that the trustee made in his papers was that you didn't do

18     much to monitor what was going on in the account after you

19     believed it was transferred.  And I don't want to make that

20     something we're going to talk about now.

21            Suffice it to say I have concluded that you have

22     compelling equitable arguments, but they don't suffice to

23     override the statute.

24            MR. EPSTEIN:  In your July opinion you said I have

25     no discretion and then you hypothetically said in a couple

Page 62

1   cases it could conceivably happen such as quote "a life

2   threatening accident or an unexpected serious medical

3   emergency."  I'm not claiming those.  But what I am claiming

4   is that what you might want to add to that list of things is

5   a critical mistake on the part of a trustee.

6              THE COURT:  Well, I'm not sure that we have a

7   critical mistake on the part of the trustee.

8              MR. EPSTEIN:  Well they gave my information to

9   them.

10             THE COURT:  What we have is something that

11  resulted in your being misled.  Whether or not that's

12  sufficient cause to override a bar date when you were given

13  notice of the bar date is a debatable proposition.

14             What I think I will do is at least give the

15  trustee an opportunity to take a look at the paperwork and

16  consider the particular facts that you have at your disposal

17  concerning what happened in your situation to see if with

18  informal discovery between the two of you anything can be

19  done jointly to suggest an exception in this instance.

20             Based upon the law as I have described it I don't

21  see a basis for that exception, but I think you should have

22  an opportunity to discuss this question with counsel for the

23  trustee at the conclusion of the hearing, and I think we

24  should move on to the next matter.

25             MR. EPSTEIN:  Thank you.

1            THE COURT:  Which is ZPR.  Is anyone --

2            MR. UNRAD:  Your Honor --

3            THE COURT:  Is anyone here on --

4            MR. UNRAD:  Yes, Your Honor, Tal Unrad of Levinson

5     on the phone.

6            THE COURT:  You're doing this by telephone?

7            MR. UNRAD:  Yes, Your Honor.

8            THE COURT:  Where are you?

9            MR. UNRAD:  I'm located in Boston.

10            THE COURT:  Excuse me?

11            MR. UNRAD:  In Boston.

12            THE COURT:  Okay.

13            MR. UNRAD:  Your Honor, first off I appreciate

14     your allowing me to appear on behalf of ZPR by telephone,

15     and having heard the arguments previously proffered to the

16     Court today I will quickly bypass the actual notice argument

17     which is quite similar to Mr. Thomas' argument in which ZPR,

18     like Mr. Thomas, did not receive actual notice and that's

19     acknowledged by the trustee.

20            Moving beyond that to the constructive notice

21     Argument.  While other parties may have received

22     constructive notice giving rise to an inquiry notice based

23     on the fact that people the world over knew that Lehman

24     Brothers was in bankruptcy, our client looked at that

25     information and quickly concluded their inquiry based on the

Page 64

1    fact that they had not received anything from LBI but had in

2    fact received something from LBHI.

3              So like CA and other claimants ZPR filed a claim

4    in the LBHI case.

5              What distinguishes ZPR is the fact that they

6    received no actual notice to the contrary that LBI, as

7    opposed to LBHI, was the correct debtor entity with which

8    they had been doing business.

9              The one flaw as you pointed out to CA, the flaw in

10   our claim is that we, as ZPR, did not actually know who we

11   were doing business with.

12             And it's our position that the LB paperwork,

13   including the contract, which for two sophisticated parties

14   to enter into a one-page contract, which I'm looking at now,

15   which simply says the name of the vice president and signed

16   for Lehman Brothers with an address, no corporate

17   distinction added onto that actual contract language for

18   the --

19             THE COURT:  Let me just break in, I'm looking at

20   that contract language now, and I don't know that it

21   matters, and that's part of the problem.

22             You billed it to Lehman Brothers, you dealt with

23   Lehman Brothers, but of course the ZPR international

24   letterhead appears to have written Lehman Brothers itself,

25   and the contract appears to be something that was prepared

Page 65

1    by you.

2            So the informality of the contract appears to be a

3    function of ZPR's drafting.  In fact this could be proof of

4    negligence at the beginning in not having identified with

5    specificity your counterparty.

6            MR. UNRAD:  I would agree that it could be

7    negligence on the part of ZPR, but I believe that's overcome

8    by the negligence of LBI in this situation.

9            Like others have presented LBI is a party here

10   which has unclean hands.  They have not pursued creditors

11   with the diligence that they should have, they should have

12   taken notice of who their actual clients were.

13           THE COURT:  Well, let me cut you off right now.

14   We're not making an unclean hands argument here.

15           This is a strict application of a legal

16   requirement, you have not distinguished your situation from

17   that of every other creditor that we have been dealing with

18   both today and at the earlier hearing that resulted in the

19   July 11th decision.

20           I've considered your argument, I've looked at the

21   papers, and I don't see an excuse.

22           MR. UNRAD:  I understand the Court's position, and

23   as I've stated I believe the distinction is the inaccurate

24   information which LBI had which resulted directly in our

25   filing a claim in the wrong case.

Page 66

1               THE COURT:  Does the trustee have anything to say?

2               MS. GRAGG:  No, Your Honor.

3               THE COURT:  Does the -- does SIPC have anything to

4     say?

5               MR. CAPUTO:  Nothing to add, Your Honor.

6               THE COURT:  Okay.  The disposition of the ZPR

7     claim is the same as that of other similarly situated

8     claimants.

9               The trustee's objection to the claim is sustained

10    substantially for the reasons provided in the colloquy of

11    today's hearing and in the written decision of July 11,

12    2013.

13               And we're adjourned.

14               MR. UNRAD:  Thank you, Your Honor.

15          (Whereupon, these proceedings concluded at 11:45 a.m.)

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                    RULINGS

4                                        Page        Line

5   Plan Administrator's Omnibus Objection to

6   Claims Filed by Deborah E. Focht [ECF No.

7   34303]                                8           6

8

9   Trustee's Twenty-Eighth Omnibus Objection

10  to General Creditor Claims (Late-filed

11  Claims) [LBI ECF No. 5775] – Stephen H.

12  Thomas                                37          17

13

14  Trustee's Twenty-Eighth Omnibus Objection

15  to General Creditor Claims (Late-filed

16  Claims) [LBI ECF No. 5775] – CA, Inc.   51          87

17

18  Trustee's Twenty-Eighth Omnibus Objection

19  to General Creditor Claims (Late-filed

20  Claims) [LBI ECF No. 5775] – Adam Epstein  62        14

21

22  Trustee's Twenty-Eighth Omnibus Objection

23  to General Creditor Claims (Late-filed

24  Claims) [LBI ECF No. 5775] – ZPR

25  International, Inc.                    66          6



Page 68

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 69

1                    C E R T I F I C A T I O N

2

3      I, Dawn South, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6

7

8

9      AAERT Certified Electronic Transcriber CET**D-408

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15     Date:  September 27, 2013

16

17

18

19

20

21

22

23

24

25

[& - address]                                                                    Page 1

**&**

**&**  3:2,16 4:15 5:5
  10:5 11:22 48:8
  50:4

**0**

**00:12:37**  12:15
**00:25:12**  20:10
**00:50:38**  36:10
**02110-1624**  4:18
**07039**  3:20
**08**  52:25
**08-01420**  1:11
**08-13555**  1:5
**09**  52:25

**1**

**1,000**  53:25
**100**  3:19 54:17
**10004-1482**  3:12
**10153-0119**  3:5
**10:04**  1:21
**11**  9:20 11:16 14:15
  17:12,21,22 25:23
  26:20,20 27:15 28:3
  28:19 29:10 31:5
  37:17 42:2,16 44:3
  45:14,15 46:19,21
  47:3,22 48:3 50:3
  60:2 66:11
**110,000**  61:10
**11501**  69:14
**11556-1320**  4:11
**11:45**  66:15
**11th**  39:12 42:24
  43:7 65:19
**125**  4:17
**1320**  4:10
**13th**  6:17 36:6
**14**  49:3 67:20
**151**  50:4
**15th**  4:2
**16th**  7:6
**17**  67:12
**17th**  7:5,8 40:18
**1970**  29:18
**1997**  56:16

**19th**  10:9
**1st**  14:2

**2**

**200**  69:12
**20005-2215**  4:4
**2002**  31:5 47:16
**2004**  12:10
**2007**  39:21 50:13
**2008**  12:23 21:16
  25:16 29:5 31:1,14
  31:22 32:10 36:6
  38:11 40:15
**2009**  40:18
**2011**  47:16
**2012**  40:20
**2013**  1:20 5:16,18
  5:25 6:18,22 7:13
  37:18 42:16 66:12
  69:15
**20th**  6:23
**21st**  5:19
**22nd**  6:1,6
**24**  9:7
**24th**  7:1
**25th**  6:3,4,10 7:4,17
**26**  1:20
**26th**  7:14
**27**  69:15
**27th**  6:21
**28**  56:5
**28th**  5:18,25 10:6
**293**  3:18
**29th**  5:16 7:13

**3**

**34303**  2:2 5:17 67:7
**34380**  6:17
**34381**  6:17
**35026**  5:21
**36737**  6:8
**36993**  6:14
**37**  67:12
**38138**  7:3
**38147**  6:25
**38796**  7:8
**394,000**  40:18

**4**

**4**  12:23 19:10
**408**  69:9
**42914**  6:13
**42915**  6:13
**42916**  6:13
**476**  49:25
**4th**  12:10 18:16
  21:16 25:16 29:5
  31:22 32:10 35:24

**5**

**5,000**  54:1 58:1
**51**  67:16
**5775**  2:6 67:11,16
  67:20,24
**580**  69:13

**6**

**6**  67:7,25
**62**  67:20
**630,000**  21:21 22:10
**65**  22:8
**66**  67:25
**674**  50:5
**6th**  6:21

**7**

**767**  3:4

**8**

**8**  67:7
**800**  4:3
**805**  4:2
**812**  50:1
**87**  67:16

**9**

**9**  48:25 49:3 51:5
**900,000**  28:7

**a**

**a.m.**  66:15
**aaert**  69:9
**able**  33:9 36:18
  45:1
**absence**  9:13
**absolutely**  21:3
**abuse**  38:1 60:6

**accept**  43:10 51:21
**acceptable**  30:18
  31:3 32:24 34:22
**accepted**  34:16
**accident**  62:2
**account**  36:5 52:4,7
  52:23 53:2,8,17,18
  53:19 55:5,17,18,18
  55:19 56:3,8,19,22
  57:1 58:1,9 59:2,4,6
  60:23,25 61:18
**accounts**  61:10
**accurate**  69:4
**acknowledge**  19:9
  24:8
**acknowledged**
  63:19
**act**  9:12 29:18 31:8
**acting**  8:15
**action**  13:6 19:8,12
  27:21 30:5 38:11
**actions**  28:4,9
**active**  16:5
**actual**  9:16 13:10
  18:23 19:9 21:13,15
  24:9,19 26:9 34:18
  38:9,24 40:4,8 42:1
  42:4,8 43:18 46:15
  46:19,24 50:2,23,24
  58:4 63:16,18 64:6
  64:17 65:12
**adam**  4:23 52:3
  67:20
**add**  27:25 28:12
  47:10 62:4 66:5
**added**  45:21 64:17
**addition**  18:22
  39:24 44:7
**additional**  5:21 8:9
  47:23 48:5
**address**  12:11 13:19
  15:1 17:18,20 18:18
  19:6 23:9,10 26:8
  27:7 28:24 32:19
  33:9 36:10,14 39:16
  39:24,25 43:5,14
  44:13,18,18,18 45:6

[address - bar]                                                                                                     Page 2

45:7,9,17 46:5,6,23
47:23 48:20 50:14
50:18,20,24 53:9
56:2,3 58:14 59:9
59:10,12 64:16
**addressed** 43:2
58:25
**addressee** 43:1
**addresses** 13:2
18:10
**adequate** 32:21,23
33:20 50:1
**adjourn** 56:12
**adjourned** 5:24 6:2
6:15 7:4,12,16,21
10:8 66:13
**adjournment** 5:24
6:20 7:19 8:10
**adjournments** 9:9
9:11
**adler** 56:14,21
58:25 59:6 61:2,7
**administered** 1:6
**administration**
15:25
**administrator** 5:15
5:23 6:1,7,20 7:1,9
7:25 8:3
**administrator's** 5:7
5:20 6:5,10,24 7:7
7:12,15,18,22
**administrator's** 2:1
67:5
**admission** 31:22
38:9 42:10
**adverse** 57:11
**advised** 8:15
**affidavit** 37:13 49:4
**affirmative** 32:1
**afford** 57:16
**afternoon** 8:13
**agenda** 5:6 9:21
**agent** 24:15 46:7
**ago** 13:23 30:22
**agree** 8:6 20:17
29:2,2 65:6

**agreed** 6:20
**agreement** 59:4
**al** 1:7
**alabama** 47:21
**albania** 54:20
**alder** 59:3
**allow** 8:5 11:13
22:23
**allowed** 22:20 23:23
52:9,17,20 55:14
**allowing** 63:14
**allows** 47:4
**alphabetically**
54:22
**amended** 6:4,23 7:2
29:18 40:16,17
49:20
**americas** 36:10
**amounts** 8:22
**angles** 13:15
**annexed** 13:24
**answer** 20:24 21:14
**anticipate** 44:14
**anybody** 15:10
**anymore** 44:21
**apart** 10:18
**apologize** 37:10
**apostrophe** 36:7
**apparently** 55:6
**appealable** 10:14
**appear** 8:8,17,17
9:12 63:14
**appeared** 46:23
56:2
**appears** 33:6 56:3
58:2,10 64:24,25
65:2
**applicable** 48:4
60:5
**application** 23:5
38:19 65:15
**applied** 11:1 27:1
47:7 57:6
**applies** 37:25 38:3
45:10 50:9 59:23
60:7

**apply** 32:4 42:14
43:4 45:11 46:3
**applying** 50:25
**appreciate** 5:14
63:13
**apprise** 28:5,9
**apprised** 10:15
**apprises** 29:5
**approach** 13:15
**appropriate** 13:6
27:21 36:4 37:13
38:11 47:6
**april** 6:3,6,10 40:18
40:20
**argue** 57:15
**argued** 54:10
**argument** 7:10 18:6
18:14,20,21 19:16
21:6 23:11 24:1
25:10 26:6 27:18
32:2,9,13 38:4,18
42:17,20,20 43:16
43:17 44:14,21 45:4
45:18,25 46:18
50:16 51:2,3 52:1
55:22 57:13 58:3
63:16,17,21 65:14
65:20
**arguments** 9:14
11:9 52:9,11 61:16
61:22 63:15
**arising** 15:15
**art** 19:25
**article** 54:20,21
**articles** 54:15,17
55:13
**ascertain** 28:23
30:20 45:1 49:4
**ascertainable** 27:14
28:24 29:11,12,22
30:6,24 32:19
**aside** 30:21 34:9
**asked** 23:15 37:19
51:15
**asking** 16:10,12
17:13 23:16 35:16

**assert** 14:1
**asserted** 56:6
**asserting** 40:21
**assume** 18:21 30:23
31:13 33:5 36:7
58:5,6
**assuming** 15:17
19:4 35:21
**attached** 12:12 17:4
**attempt** 43:13
**attorney** 3:3,10,17
4:9,16
**august** 7:13,14
**austin** 33:13 38:23
41:8
**author** 32:17
**authored** 32:14
**automatic** 48:10
**avenue** 3:4
**avoided** 47:19
**aware** 12:4 14:16
31:23 41:9
**awareness** 42:5

**b**

**b** 1:23 17:4,8
**back** 13:16 59:6
61:8,9,11,12
**backdrop** 54:9
**bad** 50:18,20 55:9
**balance** 22:7
**baltimore** 48:8
**bangladesh** 54:21
**bank** 22:21 33:1
39:19 50:12
**bankruptcy** 1:1,16
1:25 17:12 20:21
21:8 22:13 23:22
26:23 29:9,19 31:6
33:18 40:5 46:1
47:4,16 49:20 50:1
50:2,4 54:11 56:15
63:24
**bar** 10:23 12:17
13:12 19:8 26:9,10
27:13,16,16 29:10
29:13,22 38:20
39:15 40:2,3,5,9,19

41:6 42:2,4,8 43:5,7
43:8,18,20 44:24
46:20 50:3,25 51:1
54:6,7 57:3,5 58:4,6
62:12,13
**barclay** 58:20
**barclays** 52:23,25
53:1,1,2,2,7 54:6,10
54:14,17,20 55:4,5
55:17,18 56:10 58:2
58:10 60:11,19,21
61:9,13
**based** 16:2,2,12
27:3,14 35:19 46:7
56:9,25 60:4 62:20
63:22,25
**basic** 25:6
**basis** 38:21 40:9
49:22 57:6 62:21
**battery** 3:11
**bear** 36:24
**beginning** 65:4
**begun** 29:12
**behalf** 8:15 9:12
14:19 28:14 39:11
47:12 57:8 63:14
**belabor** 16:16
**belief** 56:8 57:1
**believe** 8:21 9:7
10:25 11:4 18:1
35:4,10 44:6 49:22
50:17 51:18,21
52:15 59:10 60:12
65:7,23
**believed** 56:19
61:19
**benefits** 19:17
**best** 21:12,14
**beyond** 44:16 63:20
**bg&e** 48:9,11
**bgi** 42:3 49:25
**biggest** 21:8 54:11
**billed** 64:22
**biodiesel** 47:21
**bit** 18:6 24:23 25:1
32:8

**board** 46:2,14
48:15 50:6
**books** 12:7,19 13:25
14:7,25 17:5,17
22:4 23:11 26:1
27:4,7 28:25 44:12
44:17 45:6,10 46:7
46:23 48:21 56:2
**boston** 4:18 63:9,11
**bottom** 25:23 33:8
36:1,9
**bought** 52:6 54:15
54:20 55:4 58:11
**bounce** 61:12
**bounced** 59:6 61:8
61:11
**bouncing** 61:9
**bound** 32:1 57:18
**bowling** 1:17
**box** 30:21 39:17,18
39:20,22,24 44:18
46:5,11 47:2,23
48:16 50:8,11,13,13
**break** 15:4 22:21
30:22 64:19
**breen** 48:8
**brief** 11:4 28:13
45:23 49:3
**briefly** 5:12 35:18
47:11 49:15
**briefs** 42:3
**broker** 20:5,11
21:11 44:17 46:7
50:21
**broker's** 53:16
**brokerage** 52:4
53:18
**brokers** 20:4
**brothers** 1:6,12 5:5
12:9 14:18,19 15:16
18:16 20:2 25:13,15
25:16,17 31:14
33:18 35:22,25 36:9
41:14 49:19,22
58:11 63:24 64:16
64:22,23,24

**burn** 50:4
**burns** 4:15
**business** 32:19
40:11 41:16 50:20
55:19 60:23 64:8,11
**buying** 54:17 55:18
**bypass** 63:16

**c**

**c** 3:1,14 5:1 17:4,8
47:14 69:1,1
**ca** 4:9 39:11,14,21
39:23 40:3,3,8,11
40:16,18,24,25 42:1
43:4,8,18 44:24,25
45:25 46:20,22
47:15 48:22 49:5,12
49:18,19,22 50:8
64:3,9 67:16
**ca's** 39:13 40:10,20
40:21 46:3
**calculated** 28:5,9
**calculation** 34:1
**calendar** 10:6
**call** 16:25
**called** 25:21 27:12
53:7
**calls** 16:4 26:22
**cambodia** 54:22
**capable** 30:5
**caputo** 4:6 11:8
28:12,13,14 31:20
32:22 33:21 47:10
47:11,12 51:16,19
52:10,18 54:10 57:7
57:8,8 58:22 59:19
61:1 66:5
**caputo's** 44:5 50:16
**careful** 60:4
**case** 8:25 12:13
13:21 14:3,18 19:25
19:25 21:9,10 22:1
22:18 28:6,19 29:1
29:10,12,20 30:8,10
30:10,19 32:3 34:5
34:6,11,12,24 37:7
38:10,17,20 40:19
40:23 42:3,22 46:3

46:4,6,9,9,12,12,24
47:20,22 48:1,3,7,9
48:9,12,13,14,15,15
49:25 50:3,4,7,9
52:9,15,17,22 55:6
56:17,23 58:25 59:2
59:2,7,16 61:2,8
64:4 65:25
**cases** 14:17 29:8
30:13 33:21 40:16
40:17 42:5,6,9
43:15 47:20 60:1
62:1
**category** 55:15
**cause** 13:24 17:3
62:12
**caused** 40:16
**central** 33:1
**century** 30:9,10
**certain** 37:3
**certainly** 15:16 16:7
41:25
**certified** 69:9
**certify** 69:3
**cet** 69:9
**chambers** 8:13
**chance** 7:10
**change** 54:1
**chapter** 9:20 25:23
27:15 29:9 47:22
48:3 50:3
**characteristics**
11:19 50:23
**characterization**
19:24 44:5
**characterized** 41:7
51:17
**chemtron** 30:9
**chicago** 46:2,13
48:15 50:6
**circuit** 30:9,14
32:24
**circulation** 27:5
31:12 33:12
**circumstance** 32:21
**circumstances**
10:21 15:20 17:23

clays  54:8
clear  29:24 33:1
  35:4,10
clearing  59:3,4
clearly  23:8 29:16
  41:8 45:25 49:6
client  13:5 19:11,18
  19:22,23 20:19 42:7
  42:13 43:14 44:19
  44:21,23 51:4 53:10
  54:7,8 63:24
clients  65:12
closed  39:20 47:2
  50:13,13
clues  15:5,6 25:20
code  17:12 22:13
  23:22 29:10 40:5
code's  20:22
coleman  56:14,21
  58:25 59:3,7 61:2,8
collectingly  18:9
collins  4:13 39:8,10
  39:10,18 41:12,20
  41:22,25 42:19,24
  43:11,17,20,22 44:1
  44:24 45:19 49:15
  49:17 51:10,14,25
colloquy  51:9 66:10
come  5:10 8:3 18:12
  43:15 57:15 60:2
comes  20:7
coming  37:11
comment  11:13
  30:2 57:10
commented  20:16
comments  28:13,16
  35:19 60:14
commission  55:16
committed  55:21
companies  52:6
company  12:7 14:8
  14:22,25 20:3 41:13
compelling  17:2
  61:22
compiled  36:13
compiling  26:3

complete  42:18
completely  43:5
compliance  12:3
complied  31:4,10
  48:18,19 58:7
comply  17:9 49:10
comprises  17:7
conceivably  62:1
concerning  14:7
  40:19 62:17
conclude  15:22
  19:13 33:10
concluded  8:14
  60:4 61:21 63:25
  66:15
concludes  9:20
conclusion  37:24
  62:23
conduct  12:1,2 18:8
  20:25 37:6
confused  41:11
  49:18
congress  20:18
  52:19
connection  40:13
consented  5:23
consequence  26:15
consequences  26:17
  52:20 57:11
consider  62:16
considered  9:3
  38:15 65:20
considering  59:25
consistent  30:13
  44:11
constitutes  32:3
constitution  33:4
  36:15
constitutionally
  30:18 31:3 32:24
constructive  27:9
  27:18 42:12 63:20
  63:22
consumed  9:2
contacted  7:18
continuance  8:10

continue  10:17
continues  8:1
contract  34:13
  64:13,14,17,20,25
  65:2
contracted  41:2
contractual  25:9
contrary  64:6
controlling  48:11
convenience  12:13
convincing  52:10
cooper  3:22 11:21
  11:21 12:21,24
  13:13 15:3 16:6
  18:5 19:19 20:3,9
  21:17 24:2,6 35:18
  37:10
copies  34:19
copy  9:17 37:10
corporate  64:16
corporation  4:1
  28:15 47:13 57:9
correct  24:2 39:18
  45:16 64:7
correctly  13:3
  51:17 53:24
correspondence
  39:25 41:13
counsel  7:18 8:17
  9:13 10:20 11:24
  28:25 29:3 31:4
  35:19,20 47:15 48:9
  48:14 58:24 62:22
counterparty  44:23
  49:7 65:5
country  31:12
  54:19,19,22 69:12
couple  19:4 25:2
  61:25
course  26:11 58:13
  64:23
court  1:1,16 5:2,14
  6:9,11 7:8,11 8:6,18
  9:3,24 10:3,16,19
  10:20,25 11:6,8,12
  12:9,20,22,25 15:2
  15:4 18:2,4,6 19:12

18:1,3 23:19 26:25
  28:5,10 35:9 47:6
  52:17 59:6
cite  48:1 49:25 50:9
cited  30:8,11 42:3
citing  30:8
city  30:15 32:25
claim  5:16 6:13,17
  9:1,3,18 10:22
  13:18 14:12 16:13
  17:6 22:20 23:24
  34:4,16,22 36:22
  39:3,4,13,15 40:10
  40:16,17,18,20,21
  40:24 49:2,23 52:17
  52:20 53:12,12,14
  53:15 56:4,25 57:2
  59:1,1,14 64:3,10
  65:25 66:7,9
claimant  11:22
  13:17 14:14 19:2
  25:3 27:20 31:4
  34:8,17 39:7 46:15
  50:11 55:8,9 57:25
  58:8
claimant's  21:2
  46:5
claimants  10:15
  11:10,13,17 25:5,11
  34:12 38:15,17
  56:17 57:15,22 60:1
  60:3 64:3 66:8
claiming  25:6 41:5
  62:3,3
claims  2:2,5,5 5:7
  6:12,13,16 7:11 8:2
  9:8,15 10:7,8,12,14
  10:17,19,25 11:2,5
  11:6 14:1 15:14,14
  16:20,20 24:14 25:8
  27:1 29:22 30:11
  36:23 45:12,13 46:7
  47:7,8 49:19,21
  58:16 67:6,10,11,15
  67:16,19,20,23,24
class  15:11 16:1
  18:24 24:16,21

20:2,6 21:3 22:24
24:1,3,11,16,24
26:5 27:15,17 28:11
28:22 30:8,15 31:5
31:18 32:7 33:5
34:7,14,19,21,25
35:2,3,9,11,13,15
36:16 37:9,13,15,18
39:9,17 41:3,15,21
41:24 42:6,20 43:7
43:10,12,19,21,23
44:10 45:18,20 46:1
46:14,18 47:1,3,5,6
47:9 48:17,22 49:14
49:16 50:15 51:12
51:16,21 52:1 53:4
53:14,18,21,24 54:3
54:23 55:1,22 56:11
56:15,23 57:4,15,20
58:25 59:18,20 61:1
61:15 62:6,10 63:1
63:3,6,8,10,12,16
64:19 65:13 66:1,3
66:6
court's  10:13,16
  11:1,4,16 65:22
courtroom  8:12
courts  26:23
couth  38:1
credit  32:13
creditor  2:5 14:4,4
  14:12,15 17:10
  22:19 29:11 30:3,4
  30:6,25 34:9 39:14
  40:3 45:13,16 47:8
  48:17 50:10 65:17
  67:10,15,19,23
creditors  14:2
  18:11 20:20 21:7
  22:21 24:13 26:4,20
  26:23 27:2,3 28:8
  28:19,20,21 29:7
  30:21 34:16 42:1,3
  44:3,7,9 45:11
  46:22 65:10
critical  62:5,7

critically  14:3
cross  18:11 23:17
crucial  55:16,21
  60:22
curiosities  32:9
curiosity  19:1
curious  35:23 48:8
current  53:9
custodian  52:6
customary  14:9
customer  14:5,9,11
  17:10 22:6 30:25
  34:8,17 40:4 45:12
  47:8 50:10 53:15,16
  58:1,3,20 61:13
customers  14:1
  21:8 24:13 26:4
  27:2,3 28:7 39:21
  39:23 45:11
cut  65:13

## d

d  5:1 36:7 67:1 69:9
d'souza  36:7,12
  37:2,11
d.c.  4:4
daily  33:13
damocles  20:21
dash  22:17
date  7:20 9:6,8,14
  10:23 12:17 13:12
  13:12 16:22 19:9
  25:10 26:9,10 27:13
  27:14,16,16 29:10
  29:13,22 38:20
  39:15 40:2,5,9,19
  41:6 42:2,4,8 43:5,7
  43:8,18,20 44:25
  46:20 50:3,25 51:1
  54:6 57:3,5 58:4,6
  62:12,13 69:15
dated  12:10
dawn  2:25 69:3
day  16:20 34:21
  57:14
dead  42:11
deadline  40:9

deal  8:23 33:23
  37:19 47:23 48:4,7
dealer  21:11 44:17
  50:21
dealer's  46:7
dealing  21:7 41:6
  41:10 44:20 57:25
  65:17
deals  42:21 48:10
dealt  64:22
dear  54:7
debatable  62:13
deborah  2:2 5:7
  67:6
debtor  1:13 14:4
  48:17 49:1 51:6
  64:7
debtors  1:8 3:3
  13:25 17:5 45:10
decades  30:22
december  12:10,23
  14:2 18:16 19:10
  21:16 25:16 29:5
  31:22 32:10 35:24
  38:11
decent  11:18
decide  17:24 26:23
decided  34:13
decision  10:11,16
  10:18 11:1 13:1
  17:14 26:21 30:15
  34:23 37:17,24
  38:15 39:5,12 42:17
  42:24 44:6,6 46:1
  47:4 49:8 51:23
  56:15 57:21,22 60:2
  65:19 66:11
decisions  34:3
  57:23,24
declaration  22:2
declarative  37:25
deficient  43:12,13
delete  49:21
delivery  46:19
demand  34:2
denied  34:22 49:13
  57:16

dependent  13:15
deputy  8:12
described  62:20
designed  57:16
desirable  26:24
  47:5
determination
  10:11
determine  23:12
  35:11,23
determined  18:14
  34:19 41:1 51:5
determining  30:5
developer  40:11
  41:7
dicta  48:11
dictates  44:6
difference  26:7
  28:20 29:21
different  13:15 16:8
  20:19 33:5 38:18
  52:16,21 54:12
  55:15,23
differs  29:6
difficult  33:22 34:3
  38:22 42:22 58:22
  59:13
diligence  14:23
  16:15 18:10 65:11
diligent  13:6 19:11
  30:7,20
dire  52:19
direct  42:25
directly  65:24
disagree  44:5
disallowance  39:13
disallowed  6:12
  7:11 9:15 11:6
disallowing  6:11
  10:12 40:10
discerned  49:6
discovery  18:8
  19:15 23:14 26:14
  26:18 27:6 28:23
  38:3,5,6 62:18
discretion  38:1
  52:13 60:6 61:25

**discuss**  62:22
**discussed**  8:13
  11:16 33:21 50:6
**discussing**  18:9
**discussion**  18:7
  32:16 44:11 45:5
**disposal**  62:16
**disposition**  66:6
**disregard**  58:12
**disregarded**  58:16
**distances**  32:11
**distinction**  38:13
  64:17 65:23
**distinctions**  45:2
**distinguish**  42:16
**distinguished**  65:16
**distinguishes**  11:15
  64:5
**distinguishing**
  11:19 19:14 50:23
**district**  1:2 34:6
  46:2 47:21 48:2
  56:16
**document**  17:20
  49:7
**documentation**
  8:19 58:1
**documents**  8:1 12:8
  13:24 17:3 60:11
**doing**  21:5,11 38:21
  42:23 63:6 64:8,11
**doubt**  22:20
**draconian**  20:16
  23:5
**drafting**  65:3
**draw**  38:13
**drexel**  50:4
**drill**  45:2
**drop**  50:11
**dropped**  19:7 24:17
**due**  14:23 16:15
  17:11,21 22:13 28:3
  32:1 33:3 36:25
  46:16
**duty**  44:16 57:18

### e

**e**  1:23,23 2:2 3:1,1
  5:1,1 67:1,6 69:1
**earlier**  59:23 65:18
**easily**  27:12 29:22
**eastern**  48:2
**ecf**  2:2,5 5:17,20 6:8
  6:14,25 7:3,7 67:6
  67:11,16,20,24
**echoing**  28:16
**effect**  11:18 20:16
  38:12 51:1
**effort**  35:13
**efforts**  30:7,20
**eighth**  2:4 67:9,14
  67:18,22
**eisenhower**  3:18
**either**  8:17 9:12
  14:21 31:15 54:5
  58:15
**electric**  48:8
**electronic**  69:9
**element**  61:15
**eleventh**  35:12
**elucidated**  38:4
**email**  9:17
**emergency**  62:3
**employed**  15:17
**employees**  15:9
  18:18 24:14 25:4
  35:22 36:13
**employer**  15:17
**ended**  53:21,25
**ends**  22:11
**engages**  41:16
**enormity**  8:25
**entails**  50:2
**enter**  64:14
**entered**  6:11 13:22
**enterprise**  40:11
  41:16
**entirely**  50:14
**entities**  40:22
**entitled**  17:10,22
  33:20 40:4 42:1,4
  43:18 44:3 45:16

**entitlement**  41:5
**entity**  41:1 45:3
  64:7
**epiq**  24:14
**epstein**  4:23 52:3,3
  53:5,16,20,23 54:2
  54:5,25 55:3 56:1
  58:8 59:17,20 60:14
  61:7,24 62:8,25
  67:20
**equitable**  42:13
  48:22 51:3 61:22
**equities**  17:25 18:1
  21:25 22:7,12,19,23
  22:25 23:21 37:6
**erin**  36:7
**error**  26:13 58:13
**errors**  55:8,9,11,16
**esep**  25:3,6,7,10,11
  34:11 36:5
**especially**  42:8
**espoused**  30:14
  32:5,23
**esq**  3:7,14,22 4:13
  4:20
**essence**  37:1
**essentially**  12:14
  23:12,15 50:5
**established**  39:22
**estate**  26:12 29:13
  34:1
**et**  1:7
**evaluate**  37:6
**evaluation**  60:4
**evening**  10:21
**event**  19:15
**events**  19:13
**everybody**  32:10
  55:1,3
**evidence**  26:1 35:2
  35:10 36:3 43:1
**evidentiary**  16:11
  17:23 18:2
**exact**  16:11 59:11
**examine**  56:12
**example**  34:5 44:12

**exception**  38:2 41:5
  42:14 48:23 62:19
  62:21
**exceptional**  60:7
**exceptions**  37:20
  57:3
**excusable**  19:5
  20:22 21:1 23:23
  32:3,4 37:22 48:3
  55:9
**excuse**  19:14 41:21
  41:22 58:7 63:10
  65:21
**excused**  9:23,24
**excuses**  49:9
**executive**  15:9
  18:17 25:4
**exhibit**  17:4
**exist**  33:23
**existed**  31:16
**existence**  38:10
**explain**  8:8,18
  38:23
**explanation**  19:3
**expressly**  40:6
**expunged**  11:7
**expunging**  10:12
**extent**  14:13 17:9
  43:16,17
**extra**  31:9
**extraordinary**  9:4

### f

**f**  1:23 69:1
**face**  49:6
**faced**  34:7
**facetious**  22:22
**fact**  8:14 12:16 13:3
  13:7 15:18,19 16:14
  21:12 26:1,18 29:4
  29:20 31:15 33:22
  34:19 38:17 42:10
  44:18 47:18 54:18
  55:20 56:20 58:18
  63:23 64:1,2,5 65:3
**facts**  15:19 17:14
  19:14 21:19 32:19
  35:1,2 46:4 56:13

62:16
**factual** 10:21 11:4
27:6
**failed** 27:20 31:14
56:21,21
**failing** 19:6 26:8
**fails** 9:11
**failure** 19:11 49:9
57:2
**fair** 14:16 15:12
36:16 61:5
**fairly** 7:24
**fairness** 36:17
**faith** 58:18
**falls** 59:17
**familiar** 38:8
**far** 52:16 55:7
57:23
**farrell** 4:8 39:10
**favor** 17:25 18:2
49:19
**february** 5:18,19
**feels** 61:4,5
**felt** 57:21
**fewer** 49:5
**fifth** 3:4
**figure** 45:3
**file** 7:23 53:11
56:25 57:2
**filed** 2:2,5 5:7,15,19
6:4,7,23 7:1,6 10:7
10:19,20 12:14 13:1
16:20 30:11 34:10
40:17,18 52:20
53:12 55:12 56:4
64:3 67:6,10,15,19
67:23
**filing** 10:22 16:19
27:14 29:22 50:2
65:25
**final** 7:10 8:8,22,23
9:6,14 10:13
**financial** 20:8 53:2
**financially** 33:17
**find** 8:18 16:2 34:2
**fine** 14:21 17:1

**firm** 59:3,4
**first** 5:6,15,24 6:9
24:8 27:18 47:20
52:22 56:7 57:10
63:13
**fit** 57:2
**five** 6:12 7:21 9:1
**flaw** 64:9,9
**florida** 8:15 34:6
**flourish** 21:4
**focht** 2:2 5:8,16,19
6:4,19,23 7:6,9,17
7:20,21 8:1,7,14
9:11 67:6
**focht's** 6:7,12 7:2
7:14
**focus** 50:15
**focused** 18:17
**focuses** 32:10
**follow** 18:4
**following** 6:11
32:25
**footnote** 34:10 49:3
**ford** 48:1
**foregoing** 69:3
**form** 13:24 15:9
37:14
**forms** 17:3 30:16
**forth** 9:6 11:3 14:16
20:22 51:8
**forward** 12:16
23:24
**found** 20:18 22:16
27:16 28:19 30:10
34:21 38:21 46:14
48:18 56:23 59:13
**four** 7:23 10:8
31:11 34:19 49:5
**fritz** 4:8 39:10
**front** 45:1
**full** 30:20
**function** 65:3
**fund** 21:21 34:2
**fundamentally**
52:15
**funds** 55:14

**further** 6:1,19 7:4
7:15,18 9:11 12:15
12:16 32:8 33:5
35:11 49:17
**futile** 35:14
**future** 13:18 16:18

## g

**g** 5:1
**garden** 49:9
**gas** 48:8
**general** 2:5 14:2,15
15:13 19:21 27:5
28:18 31:11 33:12
39:14 47:7 50:10
67:10,15,19,23
**generally** 17:11
20:6
**gentleman** 17:10
22:8,18 36:14,18
**getting** 12:15 22:9
24:19 54:9
**giddens** 15:24
**give** 19:7 23:8,13
26:1 62:14
**given** 8:14 9:16
15:23 17:24 26:22
42:10,10,11 44:11
44:21 58:18 59:8
62:12
**gives** 29:18
**giving** 55:17,19
60:23 63:22
**global** 54:18
**globally** 54:19
**go** 14:17 16:13
23:24 33:16 41:4
54:21
**goggling** 54:16
**going** 12:15 16:21
16:25,25 21:9,10
22:21 23:6 31:18
38:18 51:7 53:8
61:18,20
**good** 5:2,3,4 10:4
11:21,23 28:14
32:17 39:8,9 52:3
57:14 58:14

**gotshal** 3:2 5:5
**gotten** 19:2
**governing** 14:6,7
**government** 34:7
**governs** 26:19
45:15
**gragg** 3:14 10:4,5
11:20 24:5,12,20,25
26:16 27:23 45:22
46:21 47:3 55:25
56:14 66:2
**grant** 38:1 60:7
**granule** 45:3
**great** 21:12
**green** 1:17 47:21
**grounded** 29:4 31:8
33:25
**grounds** 42:13 51:8
**group** 34:15,15
50:4
**guess** 24:7,22 27:25
52:7
**guy** 23:20
**guys** 23:16

## h

**h** 67:11
**half** 21:20
**hand** 12:8 36:3
**hands** 65:10,14
**happen** 62:1
**happened** 17:18,25
28:1 53:4 54:4,12
61:2 62:17
**happy** 36:3
**harsh** 39:2 57:22,23
**hear** 9:14 24:3
36:22 39:7 45:20
51:16 55:23
**heard** 10:12 44:15
45:5 52:8,10,16
55:7 60:1 63:15
**hearing** 2:1,4 5:9,17
5:24 6:2,9,11,15,21
7:4,8,12,14 8:7 9:6
9:7,8,18 10:8,10,13
10:21 11:5 12:1,2
16:11 17:23 18:2

21:18 35:13 44:13
51:9 56:8 57:14
62:23 65:18 66:11
**hearings** 7:21
**held** 6:9 10:9 14:10
42:8 49:8 60:17
**hello** 24:5
**help** 60:3
**helpful** 5:12
**higher** 34:8
**history** 5:12 9:9
21:9,11
**holding** 58:2 60:10
**holdings** 1:6 5:5
25:23 30:10 49:19
49:23
**holds** 44:8
**hon** 1:24
**honor** 5:4 9:19 10:4
10:10 11:10,24 12:5
12:17 13:22,22
14:13,16 16:6,10
20:18 21:19 22:7,24
23:3,4,6,13,15 24:5
26:16,21 28:13,16
32:6 36:2,20 41:23
47:11,14 49:8,15
51:19,25 55:25 63:2
63:4,7,13 66:2,5,14
**honor's** 10:18 12:4
19:24 20:15 23:3
**hot** 25:22
**hour** 35:12
**how'd** 23:17
**hubbard** 3:9 9:21
10:5
**huge** 26:12
**hughes** 3:9 9:21
10:5
**huh** 41:20
**hunch** 35:8
**hypothetical** 18:15
21:13 33:6 58:17
**hypothetically**
61:25
**hypotheticals** 34:24
35:16

## i

**identified** 13:25
17:5 24:13 27:8
30:7 46:6 49:1 51:5
65:4
**identify** 27:3
**identifying** 18:10
**identity** 32:19
**ignores** 47:16
**illinois** 46:2
**informative** 48:13
**impact** 42:16
**imperiled** 61:13
**implications** 47:24
48:5
**important** 33:25
**importantly** 13:21
46:12 50:12
**inaccurate** 65:23
**inadvertently** 11:25
19:7
**inc.'s** 45:25
**include** 26:8
**included** 33:10 39:5
**includes** 37:24
**including** 12:9 18:9
64:13
**income** 21:21,21
**incommunicado**
31:22
**incorporate** 26:20
**incorporated** 40:6
**incorporates** 28:3
**incorrect** 39:16
43:8 44:13
**indicate** 33:23
34:11
**indicated** 9:10 12:5
13:23 29:1 35:20
**indicates** 12:11,12
12:14 13:2 25:3
35:5
**indication** 13:11
25:14
**indiscernible** 12:15
20:10 36:9

**individual** 29:19
33:3 38:8,23 57:6
57:25 58:23
**individually** 16:2
**individuals** 18:25
24:16,21 30:23 59:8
**industries** 48:2
**informal** 62:18
**informality** 65:2
**information** 13:18
29:6,7 53:3 55:17
55:20 58:19,23
60:21,23 62:8 63:25
65:24
**informative** 15:6
**initial** 29:13
**injustice** 38:21
**inquiry** 13:5 29:25
31:25 35:5,6,12
37:12 41:19 63:22
63:25
**instance** 62:19
**instances** 49:6
**instructed** 39:21
**insufficient** 44:2
**intent** 52:19
**intentionally** 37:4
**interested** 28:5,10
**interests** 13:7 16:1
27:21 32:2
**interject** 12:22
**international** 64:23
67:25
**interpret** 54:14
**interpretation**
51:22 52:21
**interpretations**
52:19
**interpreted** 51:23
**interrupt** 24:22
**investigated** 40:25
**investor** 4:1 28:15
29:17 31:8 47:12
57:9
**investors** 34:3
57:17

**invoices** 39:23
**involve** 42:7
**involved** 43:7 50:10
**involves** 47:22 48:3
50:10
**irrelevancy** 37:23
**issuance** 10:18 60:1
**issue** 36:24 45:15
**issued** 10:10
**issues** 20:1 37:17,19
**i'd** 28:17

## j

**j** 4:6
**james** 1:24
**january** 5:11,16
**jeffrey** 3:22 11:21
**jmp** 1:5,11
**job** 21:12 22:10
**jointly** 1:6 62:19
**journal** 34:20
**judge** 1:25 11:21
13:14 17:2,13,15
19:19 21:17 22:23
23:25 24:2 35:18
37:8
**judgment** 22:25
**judicial** 9:2 35:3
54:24
**july** 7:5,6,8 11:16
13:1 19:13 26:22
37:17 39:6,12 42:16
42:19,24 43:7 47:4
49:8 51:8 52:12
60:2 61:24 65:19
66:11
**june** 6:17,21,21,23
7:1,4 10:9,12,19
52:8 57:14
**jurisprudence**
14:15 17:11 23:22

## k

**keep** 45:22
**kelly** 56:17
**kellys** 56:24 59:1,13
**kenneth** 4:6 28:14
47:11 57:8

[key - mandatory]                                                                              Page 9

**key** 47:14
**kind** 8:4 13:9 21:8
  26:13
**kinds** 15:23 20:1
**knew** 55:3 63:23
**know** 13:3,14 14:16
  14:17,20,21 15:5,17
  15:18,19 16:7,9,21
  19:22 20:13,24 21:6
  21:25 22:3,6,9,11
  22:14 23:1,1,2,10
  23:16,19 24:8,11
  25:19,24 28:1 31:13
  34:24 36:2,12,15,17
  36:21,22 37:1,4,5
  38:25 41:10,17 42:5
  44:19 49:18 54:5
  59:12,20 64:10,20
**knowledge** 24:20
**known** 15:17 28:20
  30:3,4 39:14 41:3
  44:3,6,8 46:22
  54:11
**knows** 55:1

**l**

**l** 31:6 47:16
**l.l.c.** 3:16
**laird** 56:17
**lambert** 50:4
**language** 64:17,20
**largest** 21:10
**late** 2:5 10:7,19
  30:11 52:20 53:12
  53:12 56:4 57:17
  59:15 61:12 67:10
  67:15,19,23
**law** 28:19 35:14
  42:22 57:18,18,19
  60:5 62:20
**lawyer** 16:7
**lay** 10:24
**lays** 45:24
**lb** 64:12
**lbhi** 21:9 40:15,17
  40:20,23 41:2,13
  49:1 51:6 64:2,4,7

**lbhi's** 40:25
**lbi** 2:5 9:22 12:14
  15:25 21:10,10
  25:11 39:14 40:12
  40:19 41:2,4,11
  44:19,20,24 49:1,7
  64:1,6 65:8,9,24
  67:11,16,20,24
**lbi's** 26:1 44:11
  45:6 46:23 56:2
**lead** 15:22 19:16,17
**leading** 40:11 41:7
**leave** 37:4
**led** 17:20 55:21
  60:1
**legacy** 24:13 35:22
  36:12
**legal** 26:6 51:17
  65:15
**legitimate** 58:20
**legitimately** 38:13
  38:24
**lehman** 1:6,12 5:5
  8:25 12:9 14:18,19
  15:16 18:16 20:2
  21:24 24:13 25:13
  25:15,15,17 30:22
  30:25 31:14 33:18
  35:22,25 36:9 40:22
  41:1,14 42:5 49:19
  49:22 52:4 53:10,11
  54:10,15,18,20 55:4
  55:19 58:11 60:22
  63:23 64:16,22,23
  64:24
**letter** 10:20 12:9,11
  12:14,23 13:2,4,4,8
  13:9,17,20,20 14:20
  14:22,24 15:5,7,8
  15:10,12,21 16:4
  17:7,16,19 23:2
  24:22,24,25 25:2,3
  25:12 27:11,13 29:5
  29:15 32:10,12,12
  32:13,17,18,18
  35:24,25 36:14
  42:11

**letterhead** 64:24
**letters** 52:25 54:6
  54:10 55:12
**level** 45:3
**levinson** 4:15 63:4
**liable** 40:21
**licensed** 40:12
**licenses** 40:12,14
**life** 31:16 62:1
**likes** 33:16
**limit** 31:25 37:21
  61:8
**limitations** 48:6
  49:10
**limited** 18:19
**limits** 47:25 48:23
**line** 25:22 67:4
**liquidation** 15:25
  21:10,11 25:17
  26:10 29:17,20 30:1
  31:23 34:1 35:7
**list** 18:13,18,22 19:7
  24:12,17 26:3 30:20
  30:25 33:10 36:13
  43:14 62:4
**listed** 5:17,20 6:8,14
  6:25 7:3,7 25:23
**lists** 18:12 19:6
  35:23
**litigated** 48:14 59:2
**little** 18:6 24:23,25
  32:8 52:12
**lived** 34:18
**lives** 8:14 20:11
  33:14
**living** 38:23 41:8
  54:12
**livingston** 3:20
**llp** 3:2 4:15
**local** 20:11 22:10
**located** 63:9
**lock** 39:17,18,20,22
  39:24 44:18 46:5,11
  47:2,23 48:16 50:8
  50:11,13,13
**long** 31:15 50:20
  60:15 61:11

**look** 14:6,10,15
  17:19,19 22:5,6
  23:16,17,19 25:20
  44:16 62:15
**looked** 22:5 35:22
  54:19,19 63:24
  65:20
**looking** 11:18 64:14
  64:19
**looks** 36:8
**lose** 50:22
**lost** 22:19
**lot** 16:24 57:5
**lots** 52:25
**lubetkin** 11:22
**lubettin** 3:16
**lulled** 58:8

**m**

**m** 1:24 4:20
**ma** 4:18
**magnitude** 28:6
**mail** 26:22 44:4,7
  46:10,15 48:19
  50:11
**mailed** 13:25 24:10
  28:7 34:20 43:2
  46:11,21,22,25 56:1
  56:18
**mailing** 9:17 26:9
  29:13 30:16 43:8,22
  44:1 48:11,16 56:1
  56:3 59:11
**mailings** 45:9
**mainstream** 31:17
**maintained** 30:25
  39:19 44:19 50:11
  50:12
**maintenance** 40:13
**making** 21:4 32:13
  51:2,3 65:14
**maleen** 32:25 44:5,6
**man** 21:20 22:12
**managed** 21:23
**managing** 26:12
**mandatory** 10:22
  57:3

manges 3:2 5:5
manifest 38:21
march 5:25 6:1,4
  36:6,14
mart 22:10 33:15
  41:9
massive 23:14
master 18:13
matter 5:6 7:20 8:5
  8:24 14:3 28:25
  29:2 34:19 35:14
  36:21 38:8 41:19
  45:6,7 47:1 50:17
  50:23 53:13 56:12
  62:24
matters 20:8 52:13
  64:21
meaghan 3:14 10:4
mean 17:8 22:6
  23:15 24:7 36:16,25
  39:12 61:12,16
medical 62:2
meet 22:11 34:25
  35:1
meld 19:6
mellon 39:19
member 15:10
memorandum
  10:10
mennonite 30:8
mentioned 19:20
merit 8:2
message 13:9,14
messages 58:15
met 28:2 39:1
middle 15:6
mineola 69:14
misconduct 26:11
misleading 15:6
  58:19,24
misled 62:11
missed 24:18,21
  26:2 28:23
misspoke 24:4
misstated 11:25
mistake 26:13,14
  33:7 37:5,5 49:2

55:6,17,21 60:18,23
  62:5,7
mistakenly 48:25
  51:5
mixed 13:9,14
mixing 58:14
moment 12:22 19:2
  58:5
monday 10:20
monello 38:18
money 16:24 21:22
  21:23
monitor 61:18
month 10:23 57:3
months 29:23 37:21
morning 5:2,3,4
  10:4 11:21,23 28:14
  39:8,9 52:3
motion 7:6 49:12
motions 34:11
move 62:24
moved 50:14 53:8
  56:7 59:5
moving 45:14 63:20
mysterious 27:10

n

n 3:1 5:1 67:1 69:1
n.w. 4:2
name 19:6 26:8
  33:6,9 37:4 64:15
named 36:6
nation 34:20
necessarily 19:17
  32:11
necessary 8:21
  41:23
need 13:10 33:25
  37:15 45:2 50:19
needed 16:3
needs 8:16 45:9,21
neglect 19:5 20:22
  21:1 23:23 26:7
  32:3,4 37:22
negligence 27:19
  65:4,7,8
negligent 44:22
  48:3

never 32:18 38:24
  38:24,25 56:9 57:14
nevertheless 34:17
  48:18
new 1:2,18,18 3:5
  3:12 30:9,10,15
  32:25 39:22 50:14
  54:17 56:16 59:4
  60:15
news 54:18
newspaper 33:13
  55:13
newspapers 27:5,10
  31:11 33:12 38:25
night 35:12
nj 3:20
non 10:13 30:17
northern 46:1
  47:21
notable 48:24
noted 12:17 37:17
notice 9:16 12:3,6
  12:15,16 13:5,10
  14:16,23 15:13,23
  15:24 16:19 17:2,7
  18:15,23,25 19:2,10
  20:17 21:13,15,15
  22:3 23:8 24:9,10
  24:19 26:9,19,22
  27:4,8,9,9,18 28:7
  29:11,19,23,25
  30:17 31:3,7,11,25
  32:14,20,21 33:2,3
  33:11,11,19,20 34:4
  34:18,21,22 35:3,5
  35:6 37:19 38:9,24
  39:1,15 40:2,4,8,19
  42:2,4,8,9,12 43:2,3
  43:5,8,13,13,18
  44:3,7,7,11,21,25
  45:15,16 46:5,10,11
  46:13,15,15,19,20
  46:22,22,25 47:1,5
  47:17,22,24 48:5,17
  48:18,20,21 50:1,2
  50:7,18,18,23,25
  54:24 56:1,6,18

58:4,6,15,16 59:5,8
  62:13 63:16,18,20
  63:22,22 64:6 65:12
notices 40:15 44:25
notification 28:18
notifying 26:23
notion 45:8
number 5:17,21 6:8
  6:14,25 7:3,8 13:7
  25:5,20,21,21,22
  27:13 34:10 41:16
  42:6 52:18 53:2
numbers 6:13,17
numerous 25:5,11
ny 3:5,12 4:11
  69:14

o

o 1:23 5:1 36:8 69:1
objected 40:20
objection 2:1,4 5:7
  5:10,13,16,18,20
  6:2,5,10,16,24 7:13
  7:15,22 9:2,3 10:7
  39:3 40:25 49:12
  56:6 59:11 66:9
  67:5,9,14,18,22
objections 25:8
obligation 48:19
obligations 56:25
obligor 49:18,23
observer 15:22
obvious 60:9
obviously 13:19
  23:10 36:24 60:11
occurred 9:9 24:11
  47:18 61:3
october 9:7
offered 52:18
office 42:11
oh 21:3 41:24,24
okay 11:12,20 23:7
  28:11 43:10,11,19
  45:18,19 47:9 50:15
  51:14,21 52:1 54:3
  54:25 55:22 57:4
  59:18 63:12 66:6

[old - proceeding]

**old** 69:12
**omission** 55:11
**omnibus** 2:1,4 5:7
  5:17 6:5,10,16,24
  7:15 9:8 10:7 12:25
  25:8 67:5,9,14,18
  67:22
**onerous** 37:20
**ones** 24:18 40:23
**opinion** 11:4,16
  12:4,5,17 19:12
  20:15 30:11 51:9
  52:12 61:24
**opportunity** 7:23
  8:8,22,23 24:18
  59:14 62:15,22
**opposed** 64:7
**opposite** 61:5
**order** 6:11,14,15
  9:5,6,16 10:13 12:3
  13:22 17:2 18:12
  23:4,4 27:1 43:7
  47:5,7
**ordered** 27:2
**orderly** 34:1
**ordinarily** 26:22
**ordinary** 26:11,21
  29:9,19
**originally** 5:18
**ought** 23:1 36:16
  37:1,5 52:17
**outcome** 19:17
  38:22
**outcomes** 34:3
**outset** 57:13
**overcome** 42:23
  65:7
**overridden** 38:20
**override** 61:23
  62:12
**owed** 16:24
**ownership** 14:10

**p**

**p** 3:1,1 5:1
**p.c.** 4:8
**page** 33:8,8,9 36:9
  49:3 64:14 67:4

**paper** 58:12 60:10
**papers** 10:24 12:12
  12:13,25 42:18
  43:23 47:14 49:2,24
  49:25 56:5 61:17
  65:21
**paperwork** 62:15
  64:12
**paragraph** 15:7
  16:17 48:25 51:5
**park** 3:11
**parkway** 3:18
**part** 19:5 26:7
  27:19 33:17 37:18
  62:5,7 64:21 65:7
**participants** 18:19
**participated** 30:24
**participation** 25:6
**particular** 11:14
  15:8,15 28:2 31:23
  31:24 34:5,21 35:7
  45:25 56:12 58:8
  62:16
**particularly** 18:17
  30:16 48:13
**particulars** 52:22
**parties** 22:24 28:6
  28:10 42:7 43:6
  63:21 64:13
**partnership** 46:2,14
  48:15 50:6
**parts** 27:17
**party** 40:21 41:6
  50:12 58:22 60:18
  65:9
**passing** 12:5
**passive** 16:5
**patently** 43:8
**patrick** 4:13 39:10
**pattern** 31:15
**patterns** 33:22
**pause** 10:2
**paying** 22:21
**payments** 22:9
  39:20,21,24
**peck** 1:24

**peculiar** 59:6
**pejorative** 19:23
**pending** 5:11 9:1
**pennsylvania** 39:19
  48:2
**people** 18:9,22 20:6
  33:16,17 37:2 52:8
  63:23
**period** 8:5 54:18
  61:11
**permits** 36:16
**permitted** 59:14
**person** 9:12 16:21
  22:4 23:17 37:2
**personally** 8:17
**persons** 13:25 17:4
**perspective** 13:10
**peru** 34:18,20
**ph** 30:14 33:1 48:8
  50:4 56:15
**philadelphia** 39:22
**phone** 13:7 25:20
  25:21,21,22 63:5
**piece** 58:12
**pieces** 60:10
**pioneer** 20:22 32:5
**pittsburgh** 39:19
**place** 8:7 18:11
**placed** 38:9
**plan** 2:1 5:6,10,15
  5:20,23 6:1,5,6,9,20
  6:24 7:1,7,9,12,15
  7:18,22,25 8:3 15:9
  18:18,19 25:5,10
  67:5
**planet** 31:19,21
  54:13
**plans** 25:7
**plausible** 7:10
**plaza** 3:11 4:10
**please** 5:2 10:3
**podium** 9:21
**point** 16:6,16,18
  31:2 47:14 49:2
**pointed** 64:9
**points** 24:6 25:2
  28:17 52:14

**policy** 33:23 47:24
  48:5 60:5
**poor** 22:18
**portion** 9:20,22
**posed** 28:22 34:25
**position** 8:9,18
  10:24 26:16 28:8
  32:20,22 45:25
  51:17 64:12 65:22
**possibly** 22:16
  23:10 41:11 56:6
**posting** 30:17
**potential** 14:4 24:12
  26:3 27:3 28:7
**potentially** 14:1
  17:6 25:4 34:15
  38:22 58:23
**practical** 37:22 38:6
**prepared** 9:5 13:4
  15:8 18:16 64:25
**present** 4:22 11:8
**presented** 65:9
**presently** 10:15
**president** 64:15
**press** 54:15
**presumably** 13:19
  55:13
**presume** 14:8
**presumption** 43:1,4
**pretty** 20:7
**prevail** 51:7
**previously** 63:15
**prior** 14:11 20:3,4
**probably** 11:24
**probative** 18:23
**probe** 32:7
**problem** 42:22 58:9
  64:21
**procedural** 5:12
  36:25
**procedures** 16:19
  20:17
**proceed** 9:13 10:3
  11:18
**proceeding** 15:14
  19:10 25:11 27:15
  28:6 29:20 30:1

[proceeding - request]                                                                Page 12

31:23 32:5 35:6,7
56:18,25
**proceedings** 66:15
69:4
**process** 17:11,21
22:13 27:1 28:3
33:3 36:25 46:16
47:7
**produced** 42:25
**produces** 19:16
**professionals** 26:3
**proffer** 35:21
**proffered** 63:15
**prompt** 34:1
**proof** 39:15 40:16
40:16,17 49:1 65:3
**proper** 48:16 50:24
51:22 58:6
**properly** 43:2
**proposition** 50:7
62:13
**prosecute** 10:17
**protect** 13:6 16:3
27:21 32:1,15
**protecting** 16:1
**protection** 4:1
28:15 29:18 31:8
47:12 57:9,16,17
**protocols** 23:18
**proved** 18:24
**proves** 26:14
**provide** 7:10 9:7,10
19:14 33:2
**provided** 24:14
39:25 40:13 66:10
**provides** 15:5 31:6
47:16 58:23
**provisions** 25:9
51:22
**publication** 26:24
27:9 30:17 31:7
32:21 33:2 40:2
44:2,4,8,9 46:13,16
47:5,17,24 48:5
50:19
**publish** 27:4

**published** 33:13
48:21
**publishing** 16:19
31:11
**purpose** 5:9 39:20
**purposes** 37:22
38:6 41:19 50:24
**pursuant** 59:4
**pursue** 59:14
**pursued** 65:10
**pushing** 6:21
**put** 13:5 15:12
21:22 32:14 36:3

### q

**qualify** 19:22
**question** 13:4 16:11
16:14 20:25 28:22
35:17 38:9,19 41:18
43:25 49:17 58:5
62:22
**questions** 11:10
16:10 18:8 19:4
23:15
**quickly** 63:16,25
**quite** 9:4 29:16
37:20 51:19 61:5
63:17
**quote** 29:17 48:25
62:1

### r

**r** 1:23 3:1 5:1 69:1
**rabinowitz** 3:16
11:22
**rate** 47:18
**read** 16:7 33:12
38:25 42:18 52:10
52:11 59:23
**reader** 15:7
**readily** 29:10,12
30:24 49:4
**reading** 15:12,21
**reads** 33:12
**reality** 42:21
**realize** 19:21 37:11
**realized** 53:6

**really** 8:22 9:4
20:15 21:12 22:20
26:12 27:17 31:25
44:20 58:9
**reason** 38:13 50:8
60:11
**reasonable** 16:21
**reasonably** 19:13
28:4,9 30:6,7,20
**reasons** 11:3 29:3
35:16 39:4,5 48:19
66:10
**rebut** 43:1
**recall** 8:6 13:3
**receipt** 30:18 40:25
46:24,25 48:16
50:24
**receive** 13:18 24:9
27:8 29:7,11 33:11
40:4,8,19 42:7 44:7
45:16 46:10 56:6
63:18
**received** 8:12 29:5,7
29:15 33:11 35:6
36:5 44:24 46:15
53:6 58:4 59:5
63:21 64:1,2,6
**receives** 43:2
**receiving** 27:10
31:3 39:20 40:15
**recitation** 42:18
**recite** 9:8
**recognized** 14:13
26:21 47:4
**recognizes** 14:14
**recognizing** 8:25
**record** 9:10 14:22
16:13 20:10 23:9
39:5 53:10 69:4
**records** 12:7,19
14:1,7,9,10,25 17:5
17:17 22:4 23:11
26:2 27:4,7 28:25
32:20 33:6 41:1
44:12,17 45:7,10
46:8,24 48:21 50:20
56:2

**reed** 10:5
**reference** 12:22
13:8 15:8 16:17
23:17 35:25 45:12
45:13
**referencing** 18:11
57:21
**referred** 48:9,14
**referring** 56:10
**refers** 30:10
**reflects** 14:24
**regard** 11:16 13:23
14:11,12,14 29:25
30:3 45:4
**regarding** 11:5
40:15 45:5
**regardless** 27:19
28:1 38:6 46:14
**regrettable** 39:2
59:24
**regrettably** 60:7
**related** 6:16
**relates** 9:18
**relationship** 15:15
**relatively** 8:4
**relevant** 22:1
**relied** 23:4
**relief** 19:8 38:2
48:22 60:7
**rely** 47:20
**remaining** 6:16
7:11 8:2 9:14
**remedies** 29:25
**remember** 53:24
**remitting** 39:24
**removed** 31:16
**repeatedly** 8:16
**repercussions** 57:6
**reply** 6:7,8 7:2,7
11:3 12:25 45:24
49:15 60:14
**reporter** 50:1,5
**representative** 12:6
12:18 17:16 22:5
**request** 6:19 7:14
7:18 11:25 12:2
38:3

[requested - sought]                                                      Page 13

requested 5:21
  35:12
requests 8:10
required 23:5 46:25
requirement 50:25
  65:16
requirements 26:19
  28:2 33:4 37:19
  46:17
requires 17:3 22:13
  28:4 46:19,21
requiring 12:3
rescue 44:2
resolve 5:10
resolved 8:5
respect 11:1 15:14
  15:24 16:1 28:1
  37:20 42:15 43:24
  45:15 51:7
respectfully 49:11
respond 5:22 11:9
  51:10
respondents 38:2
  42:25
response 5:19 6:5
  6:19,24 7:2,22 16:8
  20:14 21:2 24:6
  45:5,22 48:24 49:25
  56:5
responses 6:7 7:23
responsible 40:23
  60:18,19
result 30:13 46:11
  58:6 59:13,16,17
  61:3
resulted 62:11
  65:18,24
retired 15:18,19
  22:8
retirement 21:21
revert 38:7
review 5:12
reviewed 7:25
  14:23 17:17
rhetorical 21:4
right 19:8 21:3
  27:22,23,24 65:13

rights 16:3 29:25
  32:15 35:8 38:10
rise 63:22
risk 30:17 52:5
river 47:21
road 69:12
rubric 21:1
rule 14:14 31:5
  36:20 37:21 47:16
ruled 51:13
rules 14:6,7 31:6
  40:6
ruling 21:19
rulings 67:3
running 8:16
rxr 4:10

s

s 3:1 5:1 36:8
safe 58:11
safeguard 33:2
sake 18:7,14,20,21
  21:6 26:5 32:16
  44:10
samaritan 32:17
satisfy 33:3
saw 12:6 54:14
saying 16:13 22:2
  22:23 24:8 50:16,17
  52:25 54:7,20 55:11
  56:1
says 17:16 30:15
  41:13 42:2,3,24
  50:1,5 52:12 64:15
schedule 8:4
scheduled 5:18
  49:19
schedules 49:20,21
seated 5:2
second 6:23 7:2
  16:24 21:18 27:19
  30:14 31:2 32:24
  48:1
secure 60:12
securities 4:1 28:15
  29:17 31:8 34:7
  47:12 53:19 57:9

see 22:1,24 35:1
  37:6 60:10 62:17,21
  65:21
seeking 10:21 25:8
  48:22
seen 56:9
select 15:9 18:18
selective 25:4
self 8:19
selling 60:24
send 14:23 39:21
  43:13 45:9
sending 16:19
sense 17:15,18 58:9
sent 12:10 13:4
  14:21 25:14,15,18
  25:18,19,24 26:9
  32:18 39:15,23 40:1
  43:5,9 46:5 47:2,22
  50:7,18 54:6 55:12
  58:12 59:9
sentence 37:24
  45:11,12 59:23
separate 7:23 9:17
september 1:20
  7:17 69:15
serious 62:2
service 13:23
services 40:13
  41:18
set 11:3 29:14,23
  42:17 49:23 51:8
sets 9:6 27:16
shares 52:4,6
shearson 20:5 21:23
  21:23 30:22
short 8:4
shortly 6:6
shot 23:13
shown 27:20 45:10
shuffle 22:19
sic 18:10
signed 22:2 36:6
  37:12 64:15
similar 36:8 46:4
  61:2 63:17

similarly 11:17 66:7
simple 38:12
simply 15:20 17:8
  41:13 57:17 64:15
single 9:1
sipa 1:11 3:10 10:5
  15:14,25 17:22
  19:10 20:17 24:4,4
  25:22,22 26:10,19
  27:13 28:2 29:18,21
  32:4 33:24 34:18
  35:7 37:20 38:10,20
  40:6 42:9 45:8
  46:16 47:25 48:6
  49:8 50:8 51:1,22
  56:18 57:5 60:5
sipa's 57:3
sipc 11:8,9 24:4
  38:7 45:21 57:14
  66:3
sit 16:25 51:13
situated 11:17 66:7
situation 11:14,14
  20:19 22:20 34:7
  38:14 42:9 62:17
  65:8,16
six 10:22 29:23
  37:21 57:3
size 22:18
skeptical 41:19
small 53:21,22
software 40:12,12
  41:7,17
somebody 13:19
  14:24 33:7 60:24
somewhat 34:9
sophisticated 19:11
  19:23,25 20:7 23:18
  33:17 41:6,17 42:12
  64:13
sorry 13:13 14:12
  15:3 21:12 23:19
  26:12 36:17 60:9,13
sort 18:13 24:17,22
  26:15
sought 38:2

**south**  2:25 69:3
**southern**  1:2 34:6
  56:15,16
**speak**  20:21
**speaking**  20:6
**special**  42:14
**specialized**  29:21
**specific**  23:5 29:6
  59:1
**specifically**  13:2
  17:2 20:15,24 21:20
  22:2 31:5
**specificity**  65:5
**specifies**  29:16
**spent**  59:25
**spring**  48:1
**standard**  20:14
  28:18 29:8 30:25
  33:1 34:8 38:20
**standards**  19:12
  32:5,23 33:23 39:1
**standing**  41:5
**start**  24:8 55:25
**started**  53:21,25
**stated**  29:3,4 39:4
  51:4 58:24 65:23
**statement**  9:4 12:18
  36:5 53:6 56:4
**statements**  56:10
**states**  1:1
**stationery**  12:9
  18:16 25:13 58:20
**statute**  29:21 31:24
  34:22 40:7 45:8
  57:12,16 60:6 61:23
**statutory**  33:24
**stay**  48:10
**step**  13:16 31:9
**stephen**  3:17 11:22
  67:11
**steps**  32:1,1
**stock**  14:9
**street**  4:2,17 20:7
  20:12 34:20
**stress**  28:17
**strict**  31:24 34:23
  37:21 38:19 47:25

**48:6,23 49:10 57:11
  57:19 59:16 65:15
**strictly**  17:9 58:7
**strike**  7:6
**struggled**  60:2
**stuck**  23:20,21
**sub**  31:6 47:16
**subject**  36:23 38:16
  40:23 51:24
**submission**  35:5
**submissions**  8:19
**submit**  37:13 49:11
**submits**  42:1
**submitted**  8:1 12:8
  25:7 49:5 56:4
  59:10
**subordinate**  25:9
**subordinated**  34:12
  34:15
**subordination**
  36:23
**subsection**  33:24
**subsequent**  13:20
  16:17 22:25
**substantial**  42:25
**substantially**  46:4
  66:10
**subtext**  55:10
**successfully**  56:21
**sudden**  61:10
**suffice**  61:21,22
**sufficient**  23:23
  26:24 31:20 33:2
  40:3 44:15 46:16
  50:8 62:12
**suggest**  9:5 16:9
  62:19
**suggesting**  21:5
  23:13
**suggests**  15:7
**suite**  3:19 4:3 69:13
**summer**  4:17 8:7
  59:25
**supplement**  44:4
**supplemental**  31:7
  47:17

**supplemented**
  30:16 50:19
**support**  50:7
**supposed**  39:25
  56:20 58:21
**supreme**  30:8
**sure**  12:21 14:19
  18:5 26:6 49:16
  57:5 62:6
**surrounding**  10:22
**susan**  56:17
**suspect**  44:13
**sustained**  39:3 66:9
**sustaining**  8:20
**sword**  20:21
**system**  36:25

**t**

**t**  4:13 69:1,1
**take**  13:6,16 19:11
  27:21 28:4,8 32:1
  32:12 35:3 38:3,11
  54:24 55:14 62:15
**taken**  18:11 26:14
  30:4 34:10 65:12
**tal**  4:20 63:4
**talk**  23:16 24:24,25
  29:8 33:18,18 53:10
  61:20
**talked**  37:3 53:11
  55:16
**talking**  14:8 15:20
  19:21 23:14 33:24
  35:24 36:24
**talks**  55:7
**tame**  56:7
**telephone**  63:6,14
**telephonic**  4:20
**tell**  61:4
**tens**  21:7
**term**  19:24
**terms**  14:15,18 19:8
  19:22 22:21
**terrible**  33:7
**test**  34:25
**texas**  20:11 33:13
  38:23 41:8

**th**  56:4
**thank**  9:19,24 10:1
  11:20 23:25 28:11
  32:6 37:9,15 47:9
  49:14 51:20,25 52:1
  59:18,19 62:25
  66:14
**thanks**  37:8
**theme**  38:8
**thing**  25:12 31:7
  36:22 50:5
**things**  18:13 19:20
  23:5,6,7,8 33:19
  35:21 36:11 38:4
  52:21 57:4 62:4
**think**  5:11 11:12
  16:7 17:21 19:19
  20:1,4,5,9,10,11,16
  21:14 22:1,12,25
  24:4 26:18 27:23
  30:21 32:23 34:9
  35:20 36:15 41:22
  41:23,25 45:7,14,24
  47:14 48:24 50:9,16
  51:1 52:24 56:11,20
  57:23 59:9 62:14,21
  62:23
**third**  30:9 48:7
  50:12 58:22 60:18
**thomas**  3:17 10:20
  11:5,22 12:1,5,8,10
  12:11,16 13:19 14:3
  14:13,25 15:13
  17:22 18:15,22 19:1
  21:13 24:9 25:3
  26:1,8 27:7 28:1,24
  29:4,15,24 30:3
  31:21 32:11,14,18
  33:6 34:14 35:4
  36:5 38:3,14 45:5
  63:17,18 67:12
**thought**  22:8 31:18
  52:5,23 54:7 55:4
**thousands**  21:7
**threatening**  62:2
**three**  6:12,12 7:21
  27:4 47:20

**time**  5:21 6:21 8:5
8:16 9:2 13:23 22:9
25:16 31:24 36:4
37:13,21 38:5 41:8
43:15 47:25 48:6
49:10 54:11 59:25
61:8
**timely**  44:25 57:2
**times**  7:21 54:17
59:21
**title**  14:15 17:12,21
17:22 26:20,20 28:3
28:19 31:5 42:2
44:3 45:14,15 46:19
46:21 47:3
**today**  5:9 7:16 10:6
10:7,16,25 11:6,8
11:10 12:13 16:12
17:13 23:12 35:1,11
35:13 51:8 52:14
53:13 55:21 56:10
57:23 60:15 61:9
63:16 65:18
**today's**  5:6 9:18,20
42:21 51:9 66:11
**told**  52:24
**tolerate**  49:9,11
**top**  35:25 36:8
41:14
**totality**  35:9
**totally**  8:6
**tough**  59:2
**transcribed**  2:25
**transcriber**  69:9
**transcript**  9:18 69:3
**transfer**  56:21
**transferred**  52:23
56:9,19,20 57:1
58:10 59:3 61:10,14
61:19
**treat**  38:18
**treatment**  11:15,15
**troublesome**  37:18
**troubling**  33:22
**trs**  30:9
**true**  9:4 15:18
18:20 50:22 51:4

**trustee**  3:10 10:5
11:9,24 13:1,3,24
14:20,22 16:14,18
17:3 19:5 22:1,14
22:15 24:3 25:14,18
25:19,24 26:2,8
27:2,5,20,25 28:4
28:17,23 29:1,3
30:4,19 31:4,10
32:11 34:10 35:19
36:19 38:7 44:14,16
45:8,9,20 46:5,10
46:22 47:15 48:19
55:11,23 58:3,24
61:17 62:5,7,15,23
63:19 66:1
**trustee's**  10:6,11,24
11:3 12:2,6,18
17:16 20:25 24:14
24:20 26:3,16 28:8
39:3 45:4,24 46:7
49:12 66:9
**trustee's**  2:4 67:9
67:14,18,22
**try**  42:23
**trying**  19:23 22:22
**tuesday**  35:12
**tully**  3:16 11:22
**turn**  9:21 33:8
**turned**  55:5
**turning**  33:8
**turns**  42:11 44:12
60:12
**twenty**  2:4 67:9,14
67:18,22
**two**  6:7,16 7:11 8:2
8:9 15:23 19:20
27:17 30:22 45:2
48:18 52:14,18
54:18 58:14 60:14
62:18 64:13
**type**  59:1
**types**  16:10
**typical**  36:10

**u**

**u**  36:8
**u.s.**  1:16,25
**uh**  41:20
**ultimate**  17:14
**ultimately**  17:24
21:18 22:12 23:12
36:20
**unclean**  65:10,14
**uncover**  27:6
**uncovers**  38:7
**underlying**  17:20
47:24 48:6 52:5
60:5
**understand**  5:9
13:13,21 16:6 23:3
36:18 41:4 42:15
44:20 45:18 51:3,14
54:3 55:22 56:24
57:20 59:18 65:22
**understanding**
21:22 44:22
**understood**  7:9
16:23 19:19 21:1,17
**undertake**  30:19
**unexpected**  62:2
**unfair**  57:5 61:5
**unfortunate**  24:18
56:24 59:17
**unfortunately**  61:3
**unintentionally**
58:19
**uniondale**  4:11
**united**  1:1
**unknown**  28:20
44:9
**unrad**  4:20 63:2,4,4
63:7,9,11,13 65:6
65:22 66:14
**unreasonable**  30:23
**unreturned**  46:10
**untimely**  11:7 39:4
**unwarranted**  11:5
**uphold**  57:19
**upholding**  10:11
**urges**  31:4

**useful**  11:12
**users**  41:17
**usually**  54:23

**v**

**vacation**  31:15
**variety**  49:9
**various**  18:12 29:8
33:22 35:23
**veritext**  69:11
**versus**  30:15 32:25
33:1 48:8
**vice**  64:15
**view**  8:2
**viewed**  20:25
**violation**  48:10
**voluminous**  7:24

**w**

**wait**  16:21,24 61:12
61:12
**wal**  22:10 33:15
41:9
**wall**  20:7,12 34:20
**want**  20:9 44:14
61:19 62:4
**wanton**  26:11
**warranted**  26:18
**washington**  4:4
**waste**  38:5
**way**  11:18 20:18,19
21:16 22:17 31:21
36:23 37:16 43:15
53:12 60:2,21
**we've**  12:12 25:7
35:24 52:16 57:21
**website**  13:8 25:22
25:23
**week**  54:18
**wegner**  30:14 32:25
**weigh**  22:7
**weil**  3:2 5:5
**welcome**  52:25
**welcoming**  58:2,20
**went**  15:10 18:10
18:15 20:16 39:17
43:14 58:13

| | |
|---|---|
| **what'd**  23:16 | **zpr's**  65:3 |
| **willful**  26:11 48:10 | |
| **win**  3:7 5:4,4,15 | |
| 9:19 10:1 | |
| **wish**  59:21,24 | |
| **woman**  36:6,7 | |
| **wonder**  54:7 | |
| **word**  8:12 | |
| **words**  37:25 | |
| **work**  20:2,7,10 | |
| 32:15 | |
| **worked**  18:9 20:3,4 | |
| 20:9 | |
| **working**  20:12 | |
| 33:15 41:9 | |
| **world**  21:9 55:1,3 | |
| 63:23 | |
| **worthwhile**  56:11 | |
| **write**  32:17 37:25 | |
| **written**  8:19 36:14 | |
| 40:4,8 42:1,4 43:18 | |
| 46:20 50:2 64:24 | |
| 66:11 | |
| **wrong**  43:5,14 45:7 | |
| 52:7 58:14 65:25 | |
| **wrote**  57:20 | |

| **x** |
|---|
| **x**  1:3,9,14 67:1 |

| **y** |
|---|

**yeah**  27:23 53:17
**year**  13:1 14:11
30:12
**years**  9:1 49:20
53:5
**yesterday**  7:17 8:11
8:13
**york**  1:2,18,18 3:5
3:12 30:15 32:25
54:17 56:16

| **z** |
|---|

**z**  36:8
**zaw**  3:7 5:4
**zpr**  4:16 63:1,14,17
64:3,5,10,23 65:7
66:6 67:24

**EXHIBIT B**

Deborah Focht
1613 Ingram Ave.
Sarasota, FL  34232

Deborah Focht
530 E. Laurel Rd.
Nokomis, FL 34275

**EXHIBIT C**

Deborah Focht
1613 Ingram Ave.
Sarasota, FL  34232

Deborah Focht
530 E. Laurel Rd.
Nokomis, FL 34275