**Objection Deadline: October 17, 2013 at 4:00 p.m. (Prevailing Eastern Time).**
**Hearing Date and Time: October 24, 2013 at 10:00 a.m. (Prevailing Eastern Time).**

WHITE & CASE LLP
Abraham L. Zylberberg, Esq.
Richard A. Graham, Esq.
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Counsel for Certain Members and
Customers of the Members of the
*Deutscher Sparkassen- und Giroverband*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | 08-13555(JMP) |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,: | | (Jointly Administered) |
| **DEBTORS.** | : | |
| | : | |

------------------------------------------------------------------x

**MOTION OF CERTAIN MEMBERS AND CUSTOMERS OF MEMBERS OF THE
DEUTSCHER SPARKASSEN UND GIROVERBAND FOR A DETERMINATION OF
CLASSIFICATION OF CLAIMS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Certain members[1] and customers of members of the *Deutscher Sparkassen- und Giroverband* (the "Movants"), through their undersigned counsel, White & Case LLP ("White & Case"), file this motion for a determination of the proper classification of Claims (as defined below)[2] under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings

---

[1] The identity of such members are set forth in Exhibit A.
[2] The Claims are set forth by Blocking Number on the spreadsheet attached hereto as Exhibit B.

Inc. and its Affiliated Debtors (the "Plan"), and state as follows:

## BACKGROUND

### A. The DSGV Creditors and Their Claims

1.      The *Deutscher Sparkassen- und Giroverband* (the German Savings Banks Association or "DSGV") is the umbrella organization of the *Sparkassen-Finanzgruppe* and its 422 savings banks, 8 *Landesbank* Groups, 10 *Landesbausparkassen*, 11 public insurance companies and many other financial service providers (collectively, the "DSGV Members"). DSGV initially assisted about 120 members of the *Sparkassen-Finanzgruppe* and 10,000 retail customers of DSGV Members that hold, or as of the Commencement Date (as defined below) held, certain debt securities and other debt instruments issued by the Debtors and their affiliates (the "Lehman Programs Securities") and, in some cases, guaranteed by Lehman Brothers Holdings Inc. ("LBHI," and such DSGV Members and customers, the "DSGV Creditors") in obtaining information and counsel in respect of their rights in the various insolvency proceedings of Lehman entities owing obligations to the DSGV Creditors in connection with the Lehman Programs Securities.

2.      Most of the DSGV Creditors' claims were based on various guarantees issued by LBHI of payments to be made by its Dutch subsidiary, Lehman Brothers Treasury Co. B.V. ("LBT"). LBT was the issuer of various types of bonds which were sold under, *inter alia*, the USD 4,000,000,000 German Note Issuance Program and the USD 100,000,000,000 Euro Medium Term Note Program.

3.      The Lehman Programs Securities are generally governed by German law and do not provide for indenture trustees or similar agents that can act on behalf of holders. While each of the above-described Lehman Programs Securities was ultimately held of record by and registered

in the name of a central securities depository such as Euroclear, the rights to the economic benefits thereof were, as of the Commencement Date, held by the DSGV Creditors through depository account holders and other intermediaries.

### B. Objection to Proposed Bar Date Order and Subsequent Resolution

4. On September 15, 2008 (the "Commencement Date"), LBHI (as debtor in possession, the "Debtor," and together with affiliated debtors in possession, the "Debtors") filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

5. At the invitation of the DSGV Member from whom the DSGV Creditor bought the Lehman Programs Securities upon which its claim(s) was (were) based, each of the DSGV Creditors retained White & Case, through its Frankfurt office, to present the DSGV Creditor's claims against LBHI and certain of its affiliates in their respective insolvency proceedings. White & Case charged each DSGV Creditor a small flat fee (negotiated through the DSGV) for such service.

6. On May 26, 2009, the Debtors filed a *Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form* [Docket No. 3654] (the "Bar Date Motion") on presentment. The Bar Date Motion was unusual in that it included a request for a number of special rules and procedures that would impose amorphous and burdensome evidentiary and electronic data delivery requirements on claimholders exceeding what the law requires and which, to the extent not met before the filing deadline, would have exposed meritorious claims—for which otherwise validly filed proofs of claim would have existed—to disallowance.

7.     The Bar Date Motion led to the filing of over forty objections, including one from the DSGV Creditors represented by White & Case: the *Objection of Certain Members and Customers of the Members of the Deutscher Sparkassen- und Giroverband to Motion, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form* [Docket No. 3883] (the "Objection"). The substance of the Objection was that the requested requirements that were to have been imposed under the proposed bar date order would have (i) been too burdensome for individual holders of the Lehman Program Securities who were without indenture trustee representation and facing a foreign language and an unfamiliar legal system and (ii) forced disclosure of their personal information in violation of German/European Union public policy. Other objections raised similar concerns.

8.     As a result of the DSGV Creditors' Objection and those of similarly situated creditors, the Court approved a compromise reached with the Debtors under which claims based on Lehman Programs Securities could be filed by a "filing entity" and would not be disallowed because of the identity of the "filing entity": "claims based on any Lehman Program Security shall not be disallowed on the ground that such claims were not filed by the proper party or an authorized agent, as contemplated by Bankruptcy Rule 3001(b)." See *Order Pursuant to Section 502(2)(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* [Docket No. 4271] (the "Bar Date Order") at 14. Moreover, to address efficiency and privacy concerns, the Bar Date Order assured the DSGV Creditors that, "[f]or the avoidance of doubt, a Filing Entity that files a claim on behalf of multiple account holders or

holders of any Lehman Program Security shall not be required to provide identifying information for such account holders or holders of any Lehman Program Security." Id.

9.  In accordance with the procedures established by the Bar Date Order, White & Case, as "filing entity" and attorney for each of the DSGV Creditors, executed and filed an Official Bankruptcy Form 10 (as modified in accordance with the Bar Date Order), to which it appended a spreadsheet individually setting forth the required information for each DSGV Creditor's claim(s), e.g., address for payments, claim amount, and applicable International Securities Identification Number ("ISIN") and Blocking Number (as defined in the Bar Date Order). Each column on the spreadsheet corresponded to a block on the Official Form,[3] the individual Blocking Number essentially serving as a privacy proxy for the DSGV Creditors. The form, spreadsheet and accompanying annex made clear that multiple claims and claimants were involved.

10. In connection with the filing of the Plan, the Court entered the *Order Approving Procedures for Determination of the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc.* [Docket No. 19120] (the "Structured Securities Procedures Order") on August 10, 2011. The Structured Securities Procedures Order was designed to enable the Debtors to more efficiently reconcile claims based on structured securities issued or guaranteed by LBHI. The Debtor delivered an individualized proposed allowed amount for each of the DSGV Creditors' claims, which the DSGV Creditors accepted after becoming comfortable with the Debtor's methodology for determining such amounts.

---

[3] A copy is annexed hereto as Exhibit C.

### C. The Treatment of the Claims Under the Plan

11.     On December 6, 2011, the Debtors obtained confirmation of the Plan. The Plan included a convenience class for, among other things, certain third party guarantees claims against LBHI in respect of Lehman Program Securities ("Class 6B").[4] The convenience class threshold amount is set at USD 50,000. See 11 U.S.C. § 1122(b), Plan § 1.35. Under the terms of the Plan, claims in Class 6B are entitled to a 4.8% quotient differential over that of otherwise similar claims ("Senior Third-Party Guarantee Claims" residing in "Class 5"), and the full Plan distribution to Class 6B is to be paid in a single installment as opposed to multiple installments as is the case with non-convenience claim distributions.

12.     Although some of the DSGV Creditors subsequently transferred their asserted claims to other parties, of the remaining claims, a total of USD 193,882,076.31 (such total, the "Remaining Claim") was allowed pursuant to the valuation methodology provided in the Structured Securities Procedures Order.

13.     Prior to the initial Plan distribution, on August 30, 2012, the Court entered a *Stipulation and Order Regarding Claim Number 60631* [Docket No. 30556] (the "Stipulation and Order"), whereby White & Case and LBHI agreed that all Plan distributions made on account of the Remaining Claim be sent directly to the DSGV Members that own or act as custodians of the securities (the "Claimed Securities") upon which the DSGV Creditors' claims are based. (Such

---

[4] Under the Plan, Class 6B provides for Convenience Guarantee Claims against LBHI. "Convenience Guarantee Claim means any Senior Third-Party Guarantee Claim or Third-Party Guarantee Claim other than a Claim on account of a public debt security issued by LBHI, a Claim asserted by a nominee on behalf of one or more beneficial holders of such Claim or a Claim of a Designated Entity that is (a) Allowed in an amount of fifty thousand dollars ($50,000) or less or (b) Allowed in an amount greater than fifty thousand dollars ($50,000) but which is reduced to fifty thousand dollars ($50,000) (i) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot or (ii) pursuant to a settlement agreement between the applicable Debtor and holder of such Claim entered into after the Voting Deadline . . . ." Plan § 1.35. A Senior Third-Party Guarantee Claim is defined as "any Guarantee Claim asserted by a third-party that is not an Affiliate of LBHI that is entitled to a contractual right of priority in payment . . . ." Plan § 1.144.

DSGV Members were, in any event, listed as addressees for payment for the DSGV Creditors' claims in the spreadsheet attached to the proof of claim form.) Additionally, the Stipulation and Order provided that for the sake of administrative convenience, the parties agreed to deem the DSGV Members the holders of portions of the Remaining Claim corresponding to the Claimed Securities they hold (either for their own account or for the benefit of their customers). Id. at 4.

14. After Plan distributions were made on the DSGV Creditors' claims, it became evident that all of the DSGV Creditors' claims received distributions pursuant to the treatment to be afforded Class 5 claims against LBHI,[5] even though many such claims were allowed in amounts equal to or less than the USD 50,000 threshold required to qualify for convenience class treatment under Class 6B (such qualifying claims, the "Claims").

15. The DSGV approached the LBHI's management to request that the Claims be classified as Class 6B Convenience Guaranty Claims, but its response, provided by counsel, was that its existing classifications are proper.

## REQUEST FOR RELIEF

16. The Movants request that an order be entered (i) classifying the Claims as Class 6B Convenience Guaranty Claims and (ii) directing that a distribution be made as soon as practicable sufficient to provide the holders Class 6B treatment on account of the Claims (after accounting for distributions made to date).

## ARGUMENT

17. The Claims qualify as Class 6B claims. There is no question that they are Senior Third Party Guarantee Claims or that they were allowed in amounts less than or equal to USD 50,000.

---

[5] Class 5 consists of Senior Third-Party Guarantee Claims against LBHI. See Plan § 4.6.

18. It appears that the only difference between the Claims and claims that LBHI has accorded Class 6B treatment is the fact that the Claims were filed together by a filing entity in accordance with the Bar Date Order. Discriminating against the Claims for that reason has no basis in the Bankruptcy Code, which allows discrimination only on the exceptional basis of <u>claim amount</u>, <u>see</u> 11 U.S.C. § 1122(b), or the Plan, which was confirmed on the basis that it complies with the applicable provisions of the Bankruptcy Code, <u>see</u> 11 U.S.C. § 1129(a)(1), and should be construed to do so. The proof of claim form, accompanying annex and spreadsheet White & Case filed make clear that it represented and filed on behalf of multiple individual DSGV Creditors. The facts that the claims agent assigned a single number to all the claims and that the Stipulation and Order provided that the DSGV Members would be deemed the holders of the Remaining Claim corresponding to the Claimed Securities they hold are matters only of administrative efficiency and should not affect substantive treatment of the Claims.

## CONCLUSION

Wherefore, the Movants respectfully request that the Court enter an order directing that (i) the Claims be classified as Class 6B Convenience Guarantee Claims and (ii) a distribution sufficient to provide the current holders of the Claims Class 6B treatment on account of the Claims (after accounting for distributions made to date) be made as soon as practicable, and (iii) granting such other and further relief as the Court deems just and proper.

[The remainder of this page is intentionally left blank.]

| | |
|---|---|
| Dated:  October 7, 2013<br>　　　New York, New York | Respectfully submitted,<br><br>WHITE & CASE LLP<br>1155 Avenue of the Americas<br>New York, New York 10036-2787<br>Telephone: (212) 819-8200<br>Facsimile:  (212) 354-8113<br>Abraham L. Zylberberg<br><br>By: */s/ Abraham L. Zylberberg*<br>　　　Abraham L. Zylberberg<br>　　　Richard A. Graham<br><br>Attorneys for Certain Members and Customers of Members of the *Deutscher Sparkassen- und Giroverband* |