SCHULTE ROTH & ZABEL LLP
Adam Harris (AH-4641)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Davidson Kempner Capital Management LLC, as Investment Advisor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | : |
| In re | : Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
| | : |
| Debtors. | : Jointly Administered |
| | : |

**MOTION OF DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC, AS**
**INVESTMENT ADVISOR, FOR LEAVE TO EXAMINE LBHI PURSUANT**
**TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Davidson Kempner Capital Management LLC (the "Movant"), in its capacity as manager

of certain funds holding substantial claims against Lehman Brothers Holdings Inc. ("LBHI"),

LBHI's U.S. debtor affiliates, and various foreign affiliates, including Lehman Brothers

International (Europe) (in administration) ("LBIE"), hereby moves this Court for an order

pursuant to Bankruptcy Rule 2004 and this Court's individual rules directing that LBHI and each

of the members of the Board of Directors of LBHI (the "LBHI Board") respond to the document

requests contained in Schedule 1 attached to the proposed Order attached hereto as Exhibit A,

and provide for examination of (i) LBHI's representative, or representatives, who are most

knowledgeable about the matters set forth herein; (ii) certain members of the LBHI Board,

consisting of (among others) Frederick Arnold, Robert G. Gifford, Sean O. Mahoney, and David

Pauker (the "LBHI Board Members") and (iii) Daniel J. Ehrmann of Alvarez & Marsal.  In

support of this Motion (the "Motion"), the Movant respectfully states as follows:[1]

## PRELIMINARY STATEMENT

1.        Prior to the filing of the Motion, Movant's sole appearance before this Court with

respect to these cases was by filing a joinder in support of confirmation of the *Modified Third*

*Amended Joint Chapter 11 Plan of LBHI and its Affiliated Debtors* [Docket No. 22973] (the

"Plan").  Notwithstanding Movant's limited appearance before this Court, Movant has had

substantial "behind the scenes" involvement in these Chapter 11 cases, including in connection

with the negotiation of the Plan.  Movant has and continues to enjoy a strong working

relationship with the reorganized Debtors and their management, and has great respect for the

estate and its professionals that have worked hard to liquidate estate assets for the benefit of

creditors.  However, after careful consideration, and in light of the facts and circumstances

presented, Movant is compelled to bring this Motion to obtain the information necessary to

evaluate whether the LBHI estate and its creditors will receive the highest and best value

achievable from the Proposed Transaction (defined below).  Movant has advised members of the

Board and management of its strong belief that greater transparency (provided through the

requested relief, if necessary) will benefit all parties, and allay the significant concerns regarding

the Proposed Transaction expressed by Movant and other large creditors of LBHI.  Hopefully,

such transparency will prove that despite the "red flags" raised by the manner in which the

Proposed Transaction was arrived at, the Proposed Transaction as currently contemplated is in

---

[1] Movant is aware that a motion seeking similar relief has been filed by CarVal Investors, LLC  (the "CarVal 2004 Motion") [Dkt. No. 40469], and that a number of other large LBHI creditors have filed joinders to that Motion.  In order to avoid unnecessary burden on this Court, Movant incorporates by reference  Exhibits B through I to the CarVal 2004 Motion.  In the event the Court determines to grant the relief requested in both this Motion and the CarVal 2004 Motion, Movant will work with CarVal and the other creditors to minimize any duplication of document requests and/or oral examinations, and any associated burden on LBHI or the LBHI Board Members.
DOC ID - 20688375.3

fact in the best interest of creditors and consistent with the mandates of the Plan and the previous

exemplary actions of the LBHI Board and management.  Alternatively, it may provide a critical

first step towards an alternative outcome that's in the best interest of all of the estate's creditors.

2.      On October 1, 2013, LBHI and its U.K. subsidiary, LB Holdings Intermediate 2

Limited (in administration) ("LBHI2" and together with LBHI, the "Lehman Sellers")

announced that they had entered into a commitment letter (the "Commitment") with Elliott

Management Corporation and King Street Capital Management, L.P. (together, the "Proposed

Purchasers") to purchase certain claims (collectively, the "Claims") that LBHI2 holds against the

estate of LBIE, including LBHI2's £1.25 billion subordinated claim against LBIE (the "Proposed

Transaction").  The press release announcing the Proposed Transaction (a copy of which is

attached to the CarVal 2004 Motion as Exhibit B), stated that the purchase price for the Claims

will be approximately £650 million in cash plus the right of LBHI2 to receive future contingent

amounts from the Proposed Purchasers and to share in certain claims held by the Proposed

Purchasers against LBIE.  No additional information has been disclosed to date concerning the

terms of the Proposed Transaction.  Prior to announcing the Proposed Transaction, LBHI and its

UK affiliates had received various expressions of interest from different funds, which are all

large creditors of LBHI and its affiliates, for the acquisition of the Claims.  Those funds then

urged the estate fiduciaries to submit the sale of the Claims to a competitive bidding process.

3.      LBHI is the indirect majority creditor and ultimate shareholder of LBHI2, and

LBHI recently estimated that it will receive 87% of all distributions made by LBHI2.  In light of

the potential value of the Claims, one of the largest remaining sources for distributions to LBHI

creditors in these Chapter 11 cases, the sale of such Claims (through the Proposed Transaction or

otherwise) will have a material impact on the distributions to LBHI's creditors, including

Movant.  Therefore, it is imperative that the sale of the Claims maximize value to the LBHI

estate.  Notwithstanding the fact that the information made public concerning the Proposed

Transaction is extremely limited, it appears that the transaction severely undervalues the Claims.

This view is supported by the LBIE Joint Administrators' Tenth Progress Report for the Period

From 15 March 2013 to 14 September 2013 (the "LBIE 10th Progress Report") -- which was

distributed eleven days after the announcement of the Proposed Transaction -- and which

increased the projected surplus by approximately £3 billion in the high case.[2]  The Report thus

suggests that there is significantly more value available to creditors of LBIE than was previously

recognized, and that the Claims are worth substantially more than the announced purchase price

of the Proposed Transaction.  As a holder of substantial claims against LBIE, Movant is very

familiar with the likely amount of distributions by LBIE and believes that while the Joint

Administrators' view is still likely conservative, the 10th Progress Report is indicative of the

significant value from the LBIE estate that is likely to accrue to LBHI.

    4.    Beyond being the indirect majority creditor and ultimate shareholder of LBHI2,

LBHI also is a party to the Proposed Transaction.  As such, it appears to be undisputed that

LBHI played a major role in the negotiation of the Proposed Transaction and the acceptance of

its terms by the Lehman Sellers.  The Proposed Transaction, and the limited facts available

regarding the negotiation of the transaction, raise several red flags.  First, notwithstanding the

amounts and potential value of the Claims that are the subject of the Proposed Transaction,

Movant understands that the sale was a "closed" process where competing bids have not been,

and absent this Court's intervention will not be, solicited or considered.  This process stands in

---

[2] The Joint Administrators' estimates have consistently increased through a series of semi-annual reports.
DOC ID - 20688375.3

stark contrast to the sale by LBHI of other material assets, such as the sale of its claims against

LBI, where a competitive process was undertaken to ensure the maximization of value.

5.      Second, the process utilized by LBHI and LBHI2 to negotiate the Proposed

Transaction appears to be inconsistent with the requirement of the *Modified Third Amended Joint*

*Chapter 11 Plan of LBHI and its Affiliated Debtors* [Docket No. 22973] (the "Plan") that LBHI,

as Plan Administrator, take such actions as are necessary to "maximize Distributions to holders

of Allowed Claims."  Plan Section 6.1(b)(iii).

6.      Third, conducting a "closed" sale process is especially questionable in this

instance, where the Claims constitute one of the largest remaining sources for distributions to

LBHI creditors in these Chapter 11 cases, and where the disposition will materially impact

distributions to LBHI's creditors.  It is not surprising that a "closed" sale – an unorthodox

approach that contradicts fundamental tenets of the Bankruptcy Code – whose terms remain

undisclosed to anyone but the Lehman Sellers and the Proposed Purchasers, may not maximize

value.

7.      As a significant creditor of LBHI, Movant is rightfully concerned about the

possible failure of the Proposed Transaction to maximize value and the effect that will have on

distributions to be made by LBHI.  Without receiving information on the Proposed Transaction,

it is impossible to assess whether the Proposed Transaction maximizes value to the LBHI estate,

or whether an alternative transaction might yield greater value.  The need for this analysis is

amplified by the fact that, based on the information publicly available regarding the purchase

price and the Claims, the Proposed Transaction appears to significantly undervalue the Claims.

Therefore, Movant, along with other significant creditors of LBHI, has repeatedly requested

information from LBHI about the Proposed Transaction on an informal basis to assess its impact

on the LBHI estate.  LBHI has responded that due to constraints imposed by the terms of the Commitment, it cannot provide any information beyond that which is contained in the October 1, 2013 press release.  Thus, the only means available to obtain the information required to evaluate the Proposed Transaction is through intervention of the Court.

8.    The ultimate test for whether value is being maximized is the yardstick of competing bids.  On September 30, 2013, prior to the announcement of the Proposed Transaction, CarVal Investors, LLC delivered a letter to the LBHI Board (a copy of which is attached to the CarVal 2004 Motion as Exhibit C) expressing that "CarVal would like the opportunity to participate in any negotiations concerning [the sale of the Sub-Debt Interests] and to bid to acquire the Sub-Debt Interests."  On October 3, 2013, two days after the announcement of the Proposed Transaction, the chairman of the LBHI Board responded to the CarVal letter (a copy of which is attached to the CarVal 2004 Motion as Exhibit D) stating that, due to certain terms of the Commitment, LBHI was not at liberty to discuss the Proposed Transaction beyond the scope of the October 1, 2013 press release.  The chairman's letter did not address CarVal's request to bid on the Claims.

9.    Also on October 3, 2013, certain managers of funds holding substantial claims against LBHI made an offer by letter to the one of the joint administrators of LBHI2 (a copy of which is attached to the CarVal 2004 Motion as Exhibit E),[3] to purchase the Claims for £700 million in cash – £50 million more than the announced Proposed Transaction purchase price – and other contingent consideration.  The offer was not subject to any financing or diligence contingency.  The joint administrator responded by letter dated October 4, 2013 (a copy of which is attached to the CarVal 2004 Motion as Exhibit F) stating that he was not in a position to

---

[3] While Movant was not initially a party to that offer, Movant subsequently agreed to participate.

consider the offer.  The joint administrator also stated that he had "consulted with LBHI, who

indirectly, are the majority creditor of LBHI2 and they support the transaction [with the

Proposed Purchasers]."

10.     On October 14, 2013, following the publication of the LBIE 10th Progress

Report, CarVal sent a letter to the joint administrators of LBHI2 (a copy of which is attached to

the CarVal 2004 Motion as Exhibit G), with a copy to a member of the LBHI Board, which

contained an offer for the Claims of £900 million plus future contingent consideration and

certain of CarVal's rights against LBIE, without any financing conditions.  The fact that CarVal

has offered to pay £250 million more for the Claims than the announced purchase price of the

Proposed Transaction – a premium of almost 40% – strongly suggests that value is not being

maximized through the Proposed Transaction for the LBHI estate.  At the very least, CarVal's

offer demonstrates the need for transparency and disclosure of the terms and the underlying facts

of the Proposed Transaction so that the necessity and appropriateness of further relief can be

determined.

11.     As discussed further below, Movant and several other large creditors attempted to

obtain on a consensual basis the information necessary to evaluate the Proposed Transaction.  To

that end, Movant and several other large creditors of LBHI requested a meeting with the LBHI

Board.  Although the LBHI Board agreed to and in fact attended a meeting, the Board indicated

that it could not – and ultimately it did not – discuss the terms of the Proposed Transaction

beyond the scope of the October 1, 2013 press release.  Moreover, on October 9, 2013, another

large creditor provided LBHI's counsel with a draft request for information pursuant to Rule

2004; no information regarding the Proposed Transaction was provided in response.  Thus,

without a Court order directing the production of the requested information, LBHI and the LBHI

Board will not provide any further information about the Proposed Transaction or the facts and circumstances leading to the execution of the Commitment.

12.     It is Movant's understanding that the Proposed Transaction has not closed. Movant, however, cannot attest to when the Proposed Transaction is scheduled to close because LBHI has indicated in response to queries from Movant and other significant creditors that, under the terms of the Commitment, LBHI cannot disclose that information.  Movant respectfully submits that it is imperative that LBHI provide, prior to the closing of the Proposed Transaction, the information necessary to determine whether value to the LBHI estate and its creditors has been maximized.

## RELIEF REQUESTED

13.     By this Motion, Movant requests entry of an order pursuant to Bankruptcy Rule 2004 authorizing and directing (i) the production, on an expedited basis, of documents by LBHI and the LBHI Board Members in response to the document requests attached as Schedule 1 to the proposed Order attached hereto as Exhibit A; (ii) the deposition of the representative, or representatives, of LBHI who is most knowledgeable about the subject matters set forth in this Motion; (iii) the deposition of certain of the LBHI Board Members and Daniel J. Ehrmann of Alvarez & Marsal; (iv) the issuance of one or more subpoenas compelling such document production and attendance at such deposition in the manner provided in Bankruptcy Rule 9016; and (v) granting such other and further relief as the Court deems appropriate and just.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief

requested in this Motion is Bankruptcy Rule 2004.  Article XIV of the Plan provides that the

Court retains exclusive jurisdiction of the matters requested in this Motion.

**PROCEDURAL BACKGROUND**

15.     On September 15, 2008, LBHI filed a voluntary petition for relief under chapter

11 of title 11 of the United States Code.  LBHI's chapter 11 case is being jointly administered

with the cases of certain of its subsidiaries pursuant to Bankruptcy Rule 1015(b).

16.     On January 14, 2009, LBHI2 and certain other affiliates of LBHI were placed into

administration under the laws of England and Wales.  LBHI2 is currently being operated by joint

administrators appointed to manage its affairs (the "Joint Administrators").  LBHI is the ultimate

shareholder and indirect significant majority creditor of LBHI2.

17.     On December 6, 2011, the Court approved and entered an order confirming the

Plan.  The Plan became effective on March 6, 2012.

18.     The Plan appointed LBHI to serve as the Plan Administrator (the "Plan

Administrator") and to implement the provisions of the Plan, including controlling the wind

down and sale of assets of LBHI and LBHI's controlled entities as necessary to "maximize

Distributions to holders of Allowed Claims" against LBHI and its affiliated debtors.  Plan § 6.1

(a), (b)(iii).

19.     The Plan also provides that, subsequent to Plan confirmation, the LBHI Board is

responsible for instructing and supervising LBHI, as the Plan Administrator, with respect to

LBHI's responsibilities under the Plan.  Plan § 7.2(c)(i).

**FACTUAL BACKGROUND**

20.     Movant manages funds that hold substantial claims against LBHI, LBHI's U.S.

debtor affiliates, and various foreign affiliates, including LBIE.  Any value realized from the sale

or other disposition of the Claims will have a material impact on distributions that creditors of

LBHI, including Movant, will receive on account of their allowed claims.

21.     On October 1, 2013, LBHI2's Joint Administrators issued a press release (a copy

of which is attached to the CarVal 2004 Motion  as Exhibit B), which announced LBHI and

LBHI2's entry into the Commitment and related terms.  Movant does not believe that competing

bids were solicited or considered in connection with the Proposed Transaction.

22.     As stated in the press release, in addition to being a party to the Agreement, LBHI

"is the ultimate shareholder and indirect significant majority creditor of LBHI2."  It does not

appear to be disputed that LBHI, as Plan Administrator, Commitment counterparty, and LBHI2

shareholder and indirect majority creditor, played a significant part in the negotiation of the

Proposed Transaction and the entry into the Commitment by the parties.

23.     The press release further states that, in connection with the Proposed Transaction,

LBHI2 will receive an initial payment of approximately £650 million in cash plus the right to

receive future contingent amounts and to share in certain claims against LBIE held by the

Proposed Purchasers.  No further information is publicly available concerning the Proposed

Transaction.

24.     On September 30, 2013, prior to the announcement of the Proposed Transaction,

CarVal Investors, LLC delivered a letter to LBHI's Board expressing that "CarVal would like

the opportunity to participate in any negotiations concerning [the sale of the Sub-Debt Interests]

and to bid to acquire the Sub-Debt Interests."  On October 3, 2013, two days after the

announcement of the Proposed Transaction, the chairman of the LBHI Board responded to

CarVal by letter stating that, due to certain terms of the Commitment, LBHI was not at liberty to

discuss the Proposed Transaction beyond the scope of the October 1, 2013 press release.  The chairman's letter did not address CarVal's request to bid on the Claims.

25.    On October 2, 2013,  certain managers of funds holding substantial claims against LBHI sent a letter to the Joint Administrators of LBHI2 offering to purchase the Claims for £700 million in cash – £50 million more than the announced Proposed Transaction purchase price – and other contingent consideration. [4]   The offer was not subject to any financing or diligence contingency.

26.    On October 3, 2013, the Movant, together with other managers of funds holding substantial claims against LBHI, sent a letter to the LBHI Board (a copy of which is attached to the CarVal 2004 Motion  as Exhibit H) (i) reiterating their objections to the Proposed Transaction sale process, (ii) expressing their view that the offer of October 2, 2013 would result in significantly greater distributions to creditors of LBHI's estate, and (iii) requesting a meeting with the LBHI Board to discuss the Proposed Transaction and related sale process.

27.    On October 4, 2013, the LBHI Board responded in writing to the October 3 2013 letter from Movant and the other managers (a copy of which is attached to the CarVal 2004 Motion as Exhibit I).  In its response, the LBHI Board agreed to meet, but indicated that, because of restrictions in the Commitment, the LBHI Board "will not be at liberty to discuss the terms of the transaction and related matters at the upcoming meeting due to certain provisions of the commitment letter LBHI has entered into."  The LBHI Board also acknowledged that it "supported LBHI2's commitment decision, and also committed LBHI to this transaction, because we believed it to be in the best interests of the Lehman estate and its creditors."

---

[4] While Movant was not initially a party to that offer, Movant subsequently agreed to participate.
DOC ID - 20688375.3

28.    On October 14, 2013, CarVal sent a letter to the joint administrators of LBHI2, with a copy to a member of the LBHI Board, which contained an offer for the Claims of £900 million plus future contingent consideration and certain of CarVal's rights against LBIE, without any financing conditions. CarVal's offer is £250 million greater than the announced purchase price of the Proposed Transaction, which represents a premium of almost 40%. This offer demonstrates that a competitive sale process is likely to increase value realized by the LBHI estate on account of the Claims.

## ARGUMENT

29.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Bankruptcy Rule 2004(b) further provides that the scope of the examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

30.    The purpose of a Bankruptcy Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, and examining transactions. *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (granting Rule 2004 motion and stating that any third party who has relationship with a debtor is subject to Rule 2004 investigation). Courts have consistently emphasized that the scope of a Bankruptcy Rule 2004 examination is extremely broad, broader than discovery available under the Federal Rules of Civil Procedure, and can legitimately be in the nature of a "fishing expedition." *See, e.g., In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[I]t is well settled that the scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules

of Civil Procedure and may be in the nature of a 'fishing expedition'"); *see also In re Lehman Bros. Inc.*, 2008 WL 5423214 (Bankr. S.D.N.Y. 2008) ("The broad scope of Rule 2004 is well recognized."); *Recoton Corp.*, 307 B.R. at 756 ("The scope of Rule 2004 examination is very broad, broader even than discovery under the Federal Rules of Civil Procedure.").  As such, a Bankruptcy Rule 2004 motion need not be tied to specific factual allegations at issue between parties.  *See In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (stating that Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").  Moreover, Bankruptcy Rule 2004 can be employed after confirmation of a plan of reorganization to investigate matters related to the "administration of the case post-confirmation."  *In re Express One Int'l*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (granting post-confirmation Rule 2004 examination) (citing *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373 (Bankr. E.D. Pa. 1988).

31.    Movant is concerned that the Proposed Transaction will not maximize value for the LBHI estate, thereby adversely affecting distributions to creditors.  This concern is particularly justified following the recent issuance of the LBIE 10th Progress Report, which suggests that the Proposed Transaction significantly undervalues the Claims and results in a windfall to the Proposed Purchasers.  In addition, the fact that CarVal is apparently willing to pay £900 million for the Claims – £250 million more than, and almost 40% above, the purchase price of the Proposed Transaction – suggests that the "closed" bidding process did not maximize value for the Claims.  Upon information and belief, other significant creditors of LBHI (including Movant) are also interested in bidding on the Claims in a competitive sale process, which may result in even greater value to the estate.  It is incumbent on LBHI, as Plan

Administrator, to endeavor to realize that value for the benefit of the LBHI estate and its

creditors, consistent with its obligations under the Plan.

32.    Movant, along with a number of other large creditors of LBHI, have made every

possible attempt to obtain the information on the Proposed Transaction necessary to determine

whether value has been maximized.  Despite these efforts, it is clear that information will not be

forthcoming absent intervention of this Court.  The need for disclosure is especially warranted

where, as here, a "closed" sale process has been conducted for the sale of assets that are among

the largest remaining sources for distributions to LBHI creditors in these Chapter 11 cases,

without the solicitation or consideration of competing bids.  The consideration of alternative

offers for the sale of a major asset is the norm in bankruptcy, not the exception.  To wit, LBHI

has conducted robust, competitive processes for previous sales of material assets, including

claims against affiliates such as LBI.  It is unclear why LBHI has chosen to support the Proposed

Transaction without market-testing its reasonableness.  Even absent further analysis, a "closed"

sale is not designed to yield the greatest value for the Claims.  A "closed" sale for the Claims is a

radical departure from the norm – and from fundamental tenets of the Bankruptcy Code – and is

therefore an appropriate subject for Rule 2004 examination.

33.    In addition, the Plan is clear that, in exercising its authority, the Plan

Administrator shall act "as necessary to maximize Distributions to holders of Allowed Claims."

Plan Section 6.1(b)(iii).  There is ample reason to believe that the value realized for the Claims –

and hence distributions to LBHI creditors -- are not being maximized through the Proposed

Transaction.  Thus, the Proposed Transaction calls into question LBHI's compliance, as Plan

Administrator, with Section 6.1(b)(iii) of the Plan.  Enforcing plan compliance is a central

component of post-confirmation case administration.  One of the primary purposes, if not the

primary purpose, of the Plan is to provide a mechanism to liquidate assets to maximize

distributions for creditors holding allowed claims.  In this context, a proposed transaction

involving a proposed purchase price of approximately $1 billion[5] that will significantly impact

LBHI creditor recoveries is undeniably an appropriate subject for inquiry and examination.

Moreover, to the extent the Proposed Transaction satisfies the Plan's mandate of maximizing

value, it is unclear why the Lehman Sellers and the Proposed Purchasers would resist disclosing

the information necessary to establish that fact.  Disclosure of the limited information sought

through this Motion would either dispel any doubts concerning the Proposed Transaction or pave

the way for an alternative transaction.

34.    The requested examination is limited to information regarding the administration

of LBHI under the Plan and the liquidation of the Claims post-confirmation.  It is narrowly

tailored to information necessary to analyze the Proposed Transaction and any alternative

transactions considered by the LBHI Board, the impact on creditor recoveries, the availability of

alternatives and the extent to which the Commitment has prohibited LBHI from supporting the

solicitation of competing bids.  These issues are precisely the type of discovery Bankruptcy Rule

2004 permits.  In the event that LBHI, the LBHI Board or their respective advisors believe that

they will not be able to respond to all of the requests immediately, Movant requests that LBHI

and the LBHI Board produce documents on a rolling basis, beginning with the Commitment and

any transaction documents and analyses concerning the Proposed Transaction that are readily

available.  Movant respectfully submits that there would be no undue hardship to LBHI in

allowing the requested examination. Any costs incurred by LBHI will be modest relative to the

value of the Claims to LBHI's estate and its creditors.

---

[5] Based upon the purchase price of £650 million contained in the Commitment.  If the most recent CarVal offer were to be accepted, the purchase price (and value to LBHI2 and LBHI creditors) would exceed $1.25 billion.

35.     Movant respectfully submits that the disclosure of information on the terms of the

Proposed Transactions, and of the facts and circumstances that gave rise to the Proposed

Transaction, will enable LBHI's stakeholders to determine whether value is being maximized

and whether alternative transactions should be considered.  Transparency will also dispel

concerns that value is not being captured.  An opaque sale process will reduce the likelihood of

obtaining the best sale price and raise concerns about the fulfillment of the Plan's mandate.

## NO PRIOR REQUEST

36.     No prior Motion for the relief requested herein has been made to this or any other

court.

## NOTICE

37.     Pursuant to the Court's individual rules as set forth on the Court's website,

"[r]equests for 2004 orders may be submitted ex parte, but the Court, in its discretion, may

require notice and a hearing."  Movant has nonetheless provided courtesy copies of the Motion

(by email upon counsel) to LBHI and the LBHI Board.

*[remainder of page left blank by intention]*

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, Movant respectfully requests that the Court enter an Order, pursuant to Bankruptcy Rule 2004, in the form attached hereto as <u>Exhibit A</u>:  (i) requiring the production of documents from LBHI and the LBHI Board Members responsive to the document requests attached as <u>Schedule 1</u> to the proposed Order; (ii) requiring LBHI to produce the representative, or representatives, for examination who are most knowledgeable about the subject matters set forth in this Motion; (iii) authorizing the deposition of certain of the LBHI Board Members and Daniel J. Ehrmann of Alvarez & Marsal; (iv) authorizing the issuance of one or more subpoenas compelling such document production and appearance for examination; and (v) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       October 16, 2013

**SCHULTE ROTH & ZABEL LLP**

By:  /s/ Adam Harris
      Adam Harris

919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to Davidson Kempner Capital Management LLC, as Investment Advisor*

**EXHIBIT A**

Proposed Order

DOC ID - 20688375.3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

### ORDER GRANTING MOTION OF DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC FOR LEAVE TO EXAMINE LBHI PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon consideration of the motion (the "Motion")[6] of Davidson Kempner Capital

Management LLC ("Movant") seeking an order, pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), granting Movant leave to obtain documents

from and examine under oath Lehman Brothers Holdings Inc. ("LBHI") and the members of the

Board of Directors of LBHI (the "LBHI Board"), as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates, creditors and other

parties in interest, and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is hereby ORDERED, ADJUDGED and DECREED  as follows:

1.      The Motion is GRANTED.

2.      LBHI and each of the members of the LBHI Board shall respond to the document

requests contained in Schedule 1 attached hereto on or before October __, 2013 on a rolling

---

[6]      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

basis; *provided*, *that*, (i) the Commitment and (ii) any transaction documents and analyses

concerning the Proposed Transaction that are readily available be produced to Movant

immediately.

3.      LBHI and the LBHI Board Members shall designate an individual or individuals

with knowledge of the matters and documents described in <u>Schedule 1</u> and produce such

individual(s), as well as Daniel J. Ehrmann of Alvarez & Marsal, to be examined by Movant

under oath and in accordance with Bankruptcy Rule 2004 on such date and time and at such

location as may be designated in writing by Movant.

4.      Movant may issue discovery requests and subpoenas as may be necessary to

accomplish the discovery authorized by this Order.

5.      To the extent necessary, Movant's rights are reserved to request additional

documents and depositions under Bankruptcy Rule 2004 based on any information that may be

revealed as a result of the documents provided pursuant to this Order.

6.      This Court retains jurisdiction to resolve all matters arising under or related to this

Order, including any disputes regarding discovery, or any subpoena issued pursuant to this

Order, that may arise between or among the parties, and to interpret, implement and enforce the

provisions of this Order.

Dated: _____, 2013
       New York, New York


_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

1.      Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Davidson Kempner Capital Management LLC hereby requests that on or before October __, 2013 Lehman Brothers Holdings, Inc. ("LBHI") and each member of the LBHI Board (as defined below) produce for examination, inspection, or copying all documents in each of their possession, custody, or control that are responsive to the following requests for the production of documents (the "Requests") to Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam Harris), counsel to Davidson Kempner Capital Management LLC.

## DEFINITIONS

2.      The following definitions apply with respect to these Requests.  If a term in these Requests is not explicitly defined, it shall have the commonly accepted definition of the term.  In addition to the terms previously defined herein, the following terms used herein shall have the meanings set forth below:

"Advisors" means lawyers, financial advisors (including, but not limited to, investment banks), accountants, brokers, consultants, or any other agents or representatives employed by LBHI or LBHI2 (as defined below) to evaluate, advise, or analyze the transfer or financial value of the Claims and Interests (as defined below), the terms and nature of the Proposed Transaction (as defined below), or the terms and nature of any other bids or expressions of interest for the Claims and Interests.

"Claims and Interests" means, collectively, all claims of LBHI2 against, or interests of LBHI2 in, the estate of LBIE (as defined below), any interests in any such claims, or any portion of such claims, that are subject to the Proposed Transaction (as defined below).  Claims and Interests as defined in these Requests shall include, but shall not be limited to, the subordinated notes between LBHI2 and LBIE, and any interest thereon.

"Communication" means every manner of transmitting, receiving, or recording any transmission or receipt of facts, ideas, inquiries, or otherwise, including, but not limited to, oral or written statements or exchanges of words, thoughts, or ideas, conveyed or made by one person to another, whether in person, by telephone, letter, facsimile, e-mail, or by another process, electric, electronic, digital or otherwise and any documents delivered by one person to another.

"Concerning" means relating to, referring to, describing, evidencing, or constituting.

"Contingent Rights" means the right to receive future contingent rights, sums, or other consideration with respect to any of Claims and Interests.

"Document" means "documents or electronically stored information" as used in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.  A draft or non-identical copy of a Document is a separate Document within the meaning of this term.

"Due Diligence Materials" means all Documents related to the process by which LBHI or LBHI2 (or their Advisors) provided information to any third parties (or their Advisors) for use in evaluating, analyzing, or considering the Claims and Interests for purchase, as well as any

Communications with any third parties (or their Advisors) that occurred in connection with that process.

"Identify" means when referring to a person means to give, to the extent known, the person's full name, present or last known address, and present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed to a subsequent interrogatory requesting the identification of that person. When referring to a Document, Identify means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) its author(s), addressee(s), and recipient(s).

"LBHI Board" means the Board of Directors of Lehman Brothers Holdings Inc.

"LBHI2" means LB Holdings Intermediate 2 Limited (in Administration).

"LBHI2 Joint Administrators" means the administrators of LHBI2, namely AV Lomas, SA Pearson, DA Howell, JG Parr, and GE Bruce.

"LBIE" means Lehman Brothers International (Europe) (in Administration).

"October 1 Press Release" means the press release issued on October 1, 2013, by LBHI2 announcing the Proposed Transaction.

"Proposed Transaction" means the pending transaction between LBHI2 and the Purchasing Entities (as defined below) for the transfer of interests in the Claims and Interests, any future contingent sums and claims of the Purchasing Entities against LBIE, Concerning which the October 1 Press Release was issued, and any related transactions.

"Purchasing Entities" means King Street Capital Management, Elliott Management Corporation, their relevant respective affiliates, and any other entity that is a party to any agreement Concerning the Proposed Transaction.

The singular form of a word shall be interpreted as the plural form of the word, and the plural shall be interpreted as singular as necessary to give the word the broadest possible meaning.

## <u>INSTRUCTIONS</u>

The Requests shall be deemed continuing in nature. Any responsive Document later obtained or located shall promptly be produced.

All Documents are to be produced as they are maintained in the normal course of business. Documents attached to each other (physically or via electronic mail) should not be separated.

Documents should be produced in a form as listed below in order of preference:

DOC ID - 20688375.3

provide Documents in native electronic format (*e.g.*, Word (.doc), Excel (.xls) files) unmodified with all format information, equation(s) (mathematical or otherwise), metadata, and logical information intact;

provide Documents not available in native electronic format as described above in a searchable and printable electronic format such as .TIFF image file or Adobe PDF files, along with a certifying statement that the Documents being provided are not available in the electronic format described above; and

provide Documents not available in the electronic formats described above in hard copy.

If there are no Documents responsive to any particular Request, please so state in a written response to that Request.

Where a claim of privilege is asserted to withhold responsive Documents, Identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by a particular state or country law, indicate the state's or country's privilege rule being invoked. The following information shall also be provided in the objection unless divulgence of such information would cause disclosure of the allegedly privileged information:

For Documents:

the type of Document (*e.g.*, letter or memorandum);

the general subject matter of the Document;

the date of the Document; and

the author of the Document, the addressees of the Document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

For oral Communications:

the name of the person making the Communication and the names of persons present while the Communication was made and, where not apparent, the relationship of the persons present to the person making the Communication;

the date and place of the Communication; and

the general subject matter of the Communication.

If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be redacted

from the Document, the instructions in the preceding paragraph shall be applicable and the rest of the Document shall be produced.

If a Document called for by a Request has been lost, destroyed, or otherwise disposed of, please state in the written response to that Request (i) the author of the Document; (ii) each addressee and recipient of the Document; (iii) the date on which the Document was prepared; (iv) the date(s) on which the Document was received, and by whom in each instance; (v) a description of the Document's contents and subject matter; (vi) the date and manner of the Document's loss or destruction; (vii) the reason for its loss, destruction or disposal; (viii) if destroyed or disposed of, the name, title, and address of the person authorizing its destruction or disposal; (ix) the name, title, and address of the person who lost, destroyed, or disposed of the Document; and (x) a description of efforts undertaken to locate the Document (including any copies, whether in hard copy or electronic form).

The following rules of construction apply to all Requests:

All/Any/Each:  The terms "all," "any" and "each" shall each be construed as encompassing any and all.

And/Or:  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

Number:  The use of the singular form of any word includes the plural and vice versa.

If you claim not to understand all or part of any Request, Definition or Instruction, please advise counsel for Davidson Kempner Capital Management LLC immediately so that any lack of understanding may promptly be corrected.

Unless otherwise stated, these Requests cover Documents effective on or generated on or after January 1, 2013 through the date of LBHI's response to these Requests.

## REQUESTS FOR PRODUCTION

All Documents Concerning any contract or other agreement between LBHI and/or LBHI2 and the Purchasing Entities.  This Request includes, but is not limited to, contracts or other agreements Concerning the Proposed Transaction.

All minutes of each formal or informal meeting of the LBHI Board and/or any relevant committee of the LBHI Board at which the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests were discussed.

For any formal or informal meeting of the LBHI Board and/or any relevant committee of the LBHI Board at which the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests were discussed: (i) all Documents created or distributed Concerning such meeting(s); (ii) all Documents made available to the LBHI directors at such meeting(s); and (iii) all Documents distributed to participants following such meeting(s).

DOC ID - 20688375.3

All financial analyses prepared by LBHI or LBHI2 (or their Advisors) Concerning the impact of the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests on the LBHI estate or LBHI creditor recoveries.

All analyses prepared by LBHI or LBHI2 (or their Advisors) Concerning the terms and conditions of the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests.

All Documents provided by any of LBHI's or LBHI2's Advisors to LBHI or LBHI2 Concerning that Advisor's evaluation or review of the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests.

All Documents reviewed by the LBHI Board, any LBHI officer or executive, or the LBHI2 Joint Administrators in connection with reviewing the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests.

All Documents Concerning any bids or indications of interest received by LBHI or LBHI2 in connection with the Claims and Interests, the Proposed Transaction, or any other bids or expressions of interest for the Claims and Interests.

All Documents Concerning any analysis prepared by LBHI or LBHI2 (or their Advisors) Concerning the expected recovery on any Contingent Rights LBHI or LBHI2 expects to obtain in connection with the Proposed Transaction, including, but not limited to, any analysis of the value of the "future contingent sums" referenced in the October 1 Press Release.

Documents reflecting the precise terms and conditions of any rights LBHI or LBHI2 expects to obtain with respect to "certain claims against the LBIE estate held by the [Purchasing Entities]," as referenced in the October 1 Press Release.  This Request includes, but is not limited to, the amounts and nature of the "certain claims" referenced in the October 1 Press Release.

All Documents Concerning any analysis prepared by LBHI or LBHI2 (or their Advisors) Concerning the expected recovery on any rights LBHI or LBHI2 expects to obtain with respect to "certain claims against the LBIE estate held by the [Purchasing Entities]," as referenced in the October 1 Press Release.

All Documents Concerning any appraisal, valuation, opinion, or analysis conducted by LBHI or LBHI2 (or their Advisors) Concerning the current or future value of any or all of the Claims and Interests.

Documents reflecting any Communications between LBIE (or anyone acting on LBIE's behalf) and LBHI and/or LBHI2 (or anyone acting on their behalf) Concerning the current or future value of the Claims and Interests.

Documents reflecting any Communications between LBIE (or anyone acting on LBIE's behalf) and LBHI and/or LBHI2 (or anyone acting on their behalf) Concerning the Proposed Transaction or any other bids or expressions of interest for the Claims and Interests.

Documents reflecting any Communications between LBHI, any member of the LBHI Board of Directors, LBHI2, the LBHI2 Joint Administrators, or LBIE, on the one hand, and any of the Purchasing Entities, on the other, Concerning the Claims and Interests.