Hearing Date and Time: October 24, 2013 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION TO EFETNET, B.V.'S MOTION FOR ENTRY OF AN ORDER**
**TO (I) PERMIT A LATE FILED PROOF OF CLAIM OR (II) PERMIT**
**AMENDMENT OF AN INFORMAL PROOF OF CLAIM AGAINST**
**LEHMAN BROTHERS COMMODITY SERVICES INC.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Commodity Services Inc. ("LBCS") and Lehman Brothers Holdings

Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") under the Modified Third Amended

Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1]

respectfully submit this response in opposition (the "Objection") to the motion, dated September 6,

2013, of EFETnet, B.V. ("EFETnet") for an order permitting EFETnet to file a late proof of claim

pursuant to Bankruptcy Rule 9006(b)(1) or permit amendment of an informal proof of claim against

LBCS (the "Motion"), and respectfully represent as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**Preliminary Statement**

1.      EFETnet's request to file a late proof of claim, filed nearly four years after the bar date, must be denied.  EFETnet's entire argument is premised on its allegation that LBCS did not serve EFETnet with the Bar Date Notice (as defined herein).  The only evidence provided by EFETnet to support this allegation is the original affidavit of service of the Bar Date Notice, filed on July 10, 2009 by Herb Baer, director of client services at Epiq (the "Original Affidavit of Service") [ECF No. 4349], which lists EFETnet's address as being in the Republic of Niger.  But this was nothing more than a typographical error in the creation of the Original Affidavit of Service. The corrected affidavit of service of Herb Baer, filed on June 2, 2010 (the "Corrected Affidavit of Service") [ECF No. 9395], clearly indicates that EFETnet was properly served with the Bar Date Notice at the correct address in the Netherlands.  As indicated in the declaration of Herb Baer, filed concurrently with the corrected affidavit of service, errors in the original affidavit of service did not affect actual service of the Bar Date Notice.  EFETnet has failed to rebut the presumption that it received the Bar Date Notice, and consequently to carry its burden to show that its failure timely to file a proof of claim against LBCS is the result of excusable neglect.

2.      EFETnet has also failed to explain why it waited until almost four years after the bar date to seek the Court's authority to file a claim against LBCS.  EFETnet, which had a contract specifically with LBCS, could not reasonably have believed it had sufficiently protected its rights against LBCS by filing a claim in an entirely separate proceeding, and the proof of claim it filed against Lehman Brothers Inc. ("LBI") cannot constitute a valid informal proof of claim against LBCS.  The liquidation of LBI under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* (the "LBI Proceeding") is an entirely separate proceeding from LBCS's chapter 11 case, and until recently, the claims register in LBI's liquidation was not even publicly available.  EFETnet's proof of

2

claim against LBI therefore did not notify LBCS, the Court, or any of LBCS's creditors of EFETnet's intent to hold LBCS Liable.  Accordingly, the Plan Administrator respectfully requests that the Court deny the Motion.

## Jurisdiction

3.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### I.      The Chapter 11 Cases

4.      On September 15, 2008 and periodically thereafter, the Debtors commenced with this Court voluntary cases under the Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

5.      By order dated July 2, 2009 (the "Bar Date Order"), the Court established (a) September 22, 2009 at 5:00 p.m. as the Bar Date[2] and (b) October 22, 2009 at 5:00 p.m. as the deadline for the filing of Derivative Questionnaires and Guarantee Questionnaires (each as defined in the Bar Date Order) against the Debtors in these Chapter 11 Cases.  [ECF No. 4271 at 2, 7-8].   The Bar Date Order specifically stated that, if any claimant that "asserts a claim against more than one Debtor or has claims against different Debtors," then "a separate Proof of Claim must be filed with respect to each Debtor." *Id.* at 9.  The Bar Date Notice also stated that any claimant asserting a claim against more than one Debtor must file separate proofs of claim with respect to such Debtors. *Id.* Ex. A at 4.  Further, the

---

[2] A separate bar date of November 2, 2009 was established for claims based upon Lehman Program Securities (as defined in the Bar Date Order).

sample proof of claim form annexed to the Bar Date Order instructed any claimant with a claim against multiple Debtors to "complete a separate form for each Debtor." *Id.* Ex. B at 2. Last, the Bar Date Order stated that any holder of a claim against the Debtors that fails to file a proof of claim in accordance with the Bar Date Order would "forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ." *Id.* at 9-10.

6. In addition to providing the Bar Date Notice by mail to all parties known to the Debtors as having potential claims against the Debtors' estates, the Bar Date Notice was published in The New York Times (International Edition), The Wall Street Journal (International Edition), and The Financial Times.

7. On July 8, 2009, the Debtors provided actual notice of the deadline to file proofs of claim (the "Bar Date Notice") to, *inter alia*, EFETnet by first class mail at the following address: Keizersgracht 62-64, Amsterdam 1015 CS, Netherlands. *See* Corrected Aff. of Service. The Bar Date Notice the Debtors sent to EFETnet was never returned as undeliverable. *See* Affidavit of Herb Baer in Support of the Motion (the "Baer Affidavit") ¶ 7.

8. The Original Affidavit of Service incorrectly listed the addresses of certain parties that were served and provided that certain Bar Date Notices that were sent to parties located in Amsterdam, Netherlands, were sent to addresses in Amsterdam, Niger. As described in further detail in the Baer Affidavit, this systemic topographical error occurred only in the creation of the Original Affidavit of Service, not in the actual mailing of the Bar Date Notice and the Bar Date Order. To correct any errors on the Original Affidavit of Service, Mr. Baer filed the Corrected Affidavit of Service, which fully supersedes the Original Affidavit of Service, as well as the Baer Affidavit. The Original Affidavit of Service and the Baer Affidavit note that the Bar Date Notice was sent to the true and correct address of EFETnet in the Netherlands. Baer Aff. ¶ 6; Corrected Aff. of Service Ex. D at 1265.

4

9.    On December 6, 2011, the Court approved and entered an order confirming the

Plan (the "Confirmation Order"). [ECF No. 23023].  Pursuant to the Confirmation Order, after the

Effective Date of the Plan (as defined in the Plan), no proofs of claim "relating to a prepetition Claim"

may be filed or amended without the authority of the Court. *Id.* ¶ 86.  The Plan became effective on

March 6, 2012.

## II.    The Claim

10.    On February 23, 2009, EFETnet filed a proof of claim in the LBI Proceeding,

asserting a claim against LBI in the amount of $49,155 (the "LBI Claim").  *See* Mot. Ex. 1.[3]  Attached to

the LBI Claim was an EFETnet Accession Agreement dated July 31, 2008, between EFETnet and

LBCS, as well as two invoices, both dated August 6, 2008, that were addressed to a representative of

LBCS.  On May 16, 2013, James W. Giddens, as trustee (the "Trustee") in the LBI Proceeding objected

to the LBI Claim on the basis that EFETnet was "seeking to collect amounts in connection with services

rendered or goods provided to Lehman entities other than LBI."  [Case No. 08-01420, ECF No. 6221].

EFETnet filed its opposition to the Trustee's objection to the LBI Claim on June 12, 2013.  EFETnet

withdrew its opposition on July 8, 2013, [Case No. 08-01420, ECF No. 6742], and the Court disallowed

the LBI Claim on July 15, 2013.  [Case No. 08-01420, ECF No. 6796].  One hundred thirteen days after

the Trustee objected to the LBI Claim, and 53 days after the LBI Claim was disallowed, EFETnet filed

the Motion.  [ECF No. 40004].

## Argument

11.    EFETnet has not provided any evidence to support its assertion that it did not

receive actual notice of the Bar Date.  As a result, EFETnet's conclusory arguments fail to rebut the

presumption of receipt of the Bar Date Notice.  Further, EFETnet has not shown that its failure timely to

---

[3] EFETnet submitted invoices suggesting the amount of its claim may have been €49,155.

US_ACTIVE:\44340577\6\58399.0011

file a proof of claim is the result of excusable neglect.  Last, EFETnet's argument that the LBI Claim—
filed in the LBI Proceeding—constitutes an informal proof of claim against LBCS must fail because the
LBI Claim was filed in a separate case, and because it does not evidence EFETnet's intent to hold LBCS
liable.

## I.    EFETnet Received Actual Notice of the Bar Date

12.    EFETnet's conclusory allegation that it did not receive actual notice of the Bar
Date is entirely without evidentiary support.  EFETnet simply points to the Original Affidavit of
Service, as though it is dispositive evidence that it never received the Bar Date Notice.  But, as
explained by the Corrected Affidavit of Service and the Baer Affidavit, the error affecting the Original
Affidavit of Service did not affect actual service of the Bar Date Notice to EFETnet.  In this case, it
appears that EFETnet is attempting to obfuscate the fact that it failed to abide by the clear rules set forth
in the Bar Date Notice by pointing to the erroneous Original Affidavit of Service.

13.    "Courts uniformly presume that an addressee receives a properly mailed item
when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail."
*In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May 30, 2007);
*Hagner v. United States*, 285 U.S. 427, 430 (1932) ("proof that a letter properly directed was placed in a
post office creates a presumption that it reached its destination in usual time and was actually received
by the person to whom it was addressed").  "While the presumption is a rebuttable one, it is a very
strong presumption and can only be rebutted by specific facts and not by invoking another presumption
and not by mere affidavit to the contrary." *Dana*, 2007 WL 1577763, at *4 (internal citations omitted).

14.    Further, courts in the Second Circuit require more than a mere denial of receipt to
rebut the presumption that a notice was received.  *See Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d
Cir. 1985); *Dana*, 2007 WL 1577763, at *4 (citing *Ms. Interpret v. Rawe Druck-und-Veredlungs-GMBH*

*(In re Ms. Interpret)*, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (testimony of non-receipt, standing alone, does not rebut the presumption); *Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) ("general denials" of receipt of notice of bankruptcy insufficient to rebut the presumption)).

15.     Here, EFETnet has not even produced testimony or an affidavit denying actual receipt of the Bar Date Notice. As the multiple affidavits of Mr. Baer make clear, the Debtors correctly addressed the Bar Date Notice and mailed it to EFETnet in the manner required by the Bar Date Order, as described in the Corrected Affidavit of Service and the Baer Affidavit. Now, more than four years after the Bar Date, EFETnet should not be permitted to rely on allegations that are unsupported by any evidence to permit it to file a late claim.

## II.     EFETnet's Neglect Timely to File a Proof of Claim is Not Excusable

16.     Determining whether neglect of a deadline is excusable is an equitable determination that requires consideration of all relevant circumstances surrounding the failure to file a claim on time, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993). In applying this test, the Second Circuit focuses on the third Pioneer factor—the reason for the delay in filing, including whether the cause of such delay was within the reasonable control of the movant—as the most critical. *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122-24 (2d Cir. 2005). The remaining three factors "are significant only in close cases." *Williams v. KFC Nat'l Mgmt. Co.,* 391 F.3d 411, 415-16 (2d Cir. 2004). Further, "[t]he burden of proving excusable neglect lies with the late-claimant." *Id.* at 121.

7

a. EFETnet Has Provided
No Justification for Its Lengthy Delay

17.    EFETnet argues that it did not timely file a proof of claim because it did not

receive actual notice of the Bar Date, and because "[h]aving received, and timely filed, a pre-formatted

proof of claim from LBI, EFETnet simply had no reason to inquire as to whether [sic] it had any further

obligation to act in order to protect its rights in connection with the Lehman Brothers cases more

generally." Mot. ¶ 17. EFETnet's excuses are undone, however, by (i) the Corrected Affidavit of

Service which clearly states that EFETnet was properly served with the Bar Date Notice, and its failure

to rebut the presumption that it received the Bar Date Notice, and (ii) the fact that its contract

counterparty was clearly LBCS and not LBI. EFETnet has also failed to provide any explanation

whatsoever for the four-year delay in between when it filed the LBI Claim and its discovery that it had

filed a proof of claim in the wrong case.

18.    As stated above, EFETnet was served with, and presumed to have received, actual

notice of the Bar Date by mail. Its remaining excuse—which is undermined by the fact that it received

actual notice of the Bar Date—is that it "had no reason to inquire" whether it needed to take further

action to protect its rights against LBCS. However, a party's mistake regarding the applicability of a

rule only amounts to excusable neglect where such party "consciously endeavor[s] to comply with the

bar date and establishe[s] that their delay was the result of justifiable confusion over the application of

the bar date to their particular claims." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 127 (Bankr.

S.D.N.Y. 2010) (mistake regarding applicability of a rule). *See also Mich. Self-Insurers' Sec. Fund. v.

DPH Holdings Corp. (In re DPH Holdings Corp.)*, 434 B.R. 77, 85 (S.D.N.Y. 2010) (state fund's

neglect to file a timely proof of claim was not excusable where the fund erroneously believed it did not

possess a claim against the debtors as of the bar date). Here, EFETnet has provided no evidence that

could lead this Court to conclude that EFETnet conducted any degree of diligence to confirm whether it

8

filed a proof of claim in the right case against the correct party. Moreover, even if it had not received

actual notice of the Bar Date, EFETnet had every reason to inquire whether it needed to take further

action to protect its claim against LBCS because the only other proof of claim form it received was for

the purpose of filing a proof of claim against LBI, not LBCS.

19.    The facts and circumstances do not justify a finding of excusable neglect in this

case. The Bar Date in LBCS's case occurred nearly one year after the commencement of LBCS's

chapter 11 proceeding, and seventy-six days after EFETnet was served with actual notice of the Bar

Date. EFETnet has offered no explanation for why it waited nearly four years—including 113 days after

the Trustee objected to the LBI Claim, and 53 day after the Court disallowed the LBI Claim—to file the

Motion. Furthermore, EFETnet's purported belief that it had taken the necessary steps to protect its

rights against LBCS are unjustifiable in light of the fact that EFETnet is a sophisticated party that

received actual notice of the Bar Date and was fully aware that its contract counterparty was LBCS, not

LBI.

b.    The Length of EFETnet's Delay is Inexcusably Long

20.    EFETnet filed the LBI Claim on February 23, 2009. On July 8, 2009, the Debtors

provided EFETnet with actual notice of the Bar Date, which passed on September 22, 2009. On May

16, the Trustee objected to the LBI Claim, and the Court disallowed it on July 15, 2013. Nearly four

months after the Trustee objected to the LBI Claim, and nearly two months after the LBI Claim was

disallowed, EFETnet filed the Motion. EFETnet's only reason for its nearly four year delay is that, in

light of its assertion that it never received the Bar Date Notice, it believed it had taken all of the

necessary steps to protect its rights against LBCS. However, EFETnet has failed to rebut the

presumption that it received actual notice of the Bar Date and has failed to explain why it would

conclude that filing a claim against LBI sufficiently protected its rights when it knew that its contract

counterparty was LBCS.

US_ACTIVE:\44340577\6\58399.0011

21.    In determining whether a delay is too long, "the lateness of a claim must be considered in the context of the proceeding as a whole." *Enron*, 419 F.3d at 128. This "evaluation of lateness should, at least to some extent, also take into account the creditor's explanation for the delay. Thus, a long delay . . . with a strong explanation might be more acceptable than a short delay with a weak explanation—even if both explanations are credible." *Id.  See also In re Kmart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) (lapse of 81 days between bar date and filing of motion was inexcusable in light of party's lack of explanation).

22.    Whether this Court analyzes EFETnet's delay in relation to the passage of the Bar Date (*i.e.* four years), or in relation to the denial of the LBI Claim (*i.e.* nearly two months), the result is the same. In both scenarios, EFETnet has not provided a reasonable justification for the length of such a delay. Accordingly, the Plan Administrator respectfully submits that the second *Pioneer* factor also weighs against EFETnet.

   c.  Granting EFETnet's Motion Would Cause
       Substantial Prejudice to the Plan Administrator

23.    Determining whether the Plan Administrator will be prejudiced by allowing claimants to file claims after the Bar Date involves consideration of more than the single claim at issue, but of "the impact of permitting exceptions that will encourage others to seek similar leniency." *Lehman Bros.*, 433 B.R. at 121. *See also In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 1002, 1007 (S.D.N.Y. 1993); *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995). Allowing EFETnet to file a proof of claim four years after the Bar Date invites claims from other parties that failed to timely file proofs of claim nearly four years ago. While the Motion does not address this factor of the *Pioneer* test at all, the Plan Administrator submits that EFETnet has not—and cannot—satisfy this factor.

US_ACTIVE:\44340577\6\58399.0011

d.  Good Faith

24.    The Plan Administrator has no evidence that EFETnet acted in bad faith when it

filed the Motion.  This factor typically weighs in favor of the party moving to file a late claim and does

not outweigh the other *Pioneer* factors that weigh in the Plan Administrator's favor, particularly whether

the reason for the delay was within the control of the moving party, discussed above, which the Second

Circuit has deemed to be the most critical in the determining of whether a movant's neglect is excusable.

*See Enron*, 419 F.3d at 122-23.  Accordingly, EFETnet has not carried its burden to demonstrate that its

failure timely to file a proof of claim is the result of excusable neglect.

## III.    EFETnet's Claim, Filed in the SIPA Liquidation of LBI, Never Showed an Intent to Hold LBCS Liable for the Claim

25.    The unrebutted fact that EFETnet received actual notice of the Bar Date

"asphyxiates their informal proof of claim theory," because if EFETnet "received actual notice, it should

have filed an actual proof of claim."  *In re Drexel Burnham Lambert Grp. Inc.*, 129 B.R. 22, 26 (Bankr.

S.D.N.Y. 1991).  Further, as a party to a contract with LBCS specifically, EFETnet should have known

that it needed to file a claim against LBCS.

26.    Moreover, EFETnet's informal proof of claim argument must fail because it is

meritless.  Courts will grant informal proof of claim status to a filing where it shows a clear "intent to

state a claim against an estate, but where [such] filings fail to conform to the technical requirements of a

proof of claim."  *In re Dana Corp.*, No. 06–10354 (BRL), 2008 WL 2885901, at *3 (Bankr. S.D.N.Y.

July 23, 2008) (internal citations omitted).  "To qualify as an informal proof of claim, a document

purporting to evidence such claim must (1) have been timely filed with the bankruptcy court and have

become part of the judicial record, (2) state the existence and nature of the debt, (3) state the amount of

the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt."

*Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y.

11

1995).  *See also In re Carmelo Bambace, Inc.*, 134 B.R. 125, 129 (Bankr. S.D.N.Y. 1991) ("a document must explicitly state the claimant's intent to hold the debtor liable as well as articulate the existence, nature, and amount of the claim") (collecting cases).  The LBI Claim does not satisfy this standard.

        a.   The LBI Claim was Not Filed in the Same Case

27.    Courts in this district have declined to grant informal proof of claim status to documents filed in a separate case.  *See, e.g.*, *Drexel Burnham*, 129 B.R. at 26-27 (denying party's motion to deem demand letter informal proof of claim because party never filed anything with the bankruptcy court regarding its claim); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2010 WL 502837, at *3 (Bankr. S.D.N.Y. Feb. 9, 2010) (a complaint filed with the EEOC could not constitute an informal proof of claim where there was "no contention that [c]laimant made any filing" in the bankruptcy case).  *See also, e.g.*, *Berger v. Trans World Airlines (In re Trans World Airlines)*, 182 B.R. 102, 108 (D. Del. 1995) (counterclaims filed by creditor in litigation pending in federal district court in Missouri do not qualify as informal claims in bankruptcy case pending in Delaware because they were not filed of record in the bankruptcy court).

28.    In this case, the LBI Claim was "filed with the bankruptcy court," but because it was filed in a completely separate case, the first *Houbigant* factor cannot be satisfied.  *Houbigant*, 190 B.R. at 187.  Accepting EFETnet's argument that a claim filed in the LBI Proceeding satisfies the first *Houbigant* factor would circumvent the entire purpose of the *Houbigant* test.  Accordingly, the Plan Administrator respectfully submits that EFETnet cannot show that the LBI Claim satisfied the first *Houbigant* factor.

        b.   The LBI Claim Does Not Evidence an Intent to Hold LBCS Liable

29.    A proof of claim filed against the wrong debtor in the same jointly administered cases cannot constitute an informal proof of claim against another debtor.  *See In re Enron Corp.*, No. 01-16034 (AJG), 2007 WL 294114, at *7 (Bankr. S.D.N.Y. Jan. 31, 2007).  In *Enron*, the bar date order

"explicitly and unambiguously stated a creditor must file a separate proof of claim for each specific

Enron entity the creditor desired to hold liable." The claimant filed a claim against one debtor, Enron

North America Corporation ("ENA"), but did not file a separate guarantee-based proof of claim against

Enron Corp. ("Enron"). *Id.* Both were debtors in separate but jointly administered chapter 11 cases.

However, the court refused to grant informal proof of claim status to the proof of claim against ENA

because that it did not evidence an intent to hold Enron liable. *Id.*

30. Here, the LBI Claim specifically evidences an intent to hold LBI, and not LBCS,

liable. In *Enron*, the court refused to allow a claim filed against ENA to be deemed an informal proof

against Enron because of the requirements of the bar date order and because a proof of claim filed

against one debtor cannot show a claimant's intent to hold a different debtor liable. Here, like in *Enron*,

the Bar Date Order specifically directed claimants with claims against more than one debtor to file

separate claims. In *Enron*, in light of the clear and unambiguous language of the bar date order, the

court held that a claim against one debtor could not constitute an informal proof of claim against another

debtor in the same jointly administered case. Here, the LBI Claim was not even filed against one of

LBCS's co-debtors. Applying the reasoning of *Enron*, the LBI Claim cannot evidence an intent to hold

LBCS liable. Accordingly, because EFETnet cannot satisfy the *Houbigant* test, the Plan Administrator

respectfully submits that the LBI Claim cannot constitute an informal proof of claim against LBCS.

31. As this Court is aware, LBI is a completely separate entity from any of the

Debtors. The LBI Claim was filed in the LBI Proceeding, which is administered separately. Moreover,

the claims register in the LBI Proceeding was not publically available until June 2013. For these

reasons, the LBI Claim suffers from more than a failure to satisfy the technical requirements of an

informal proof of claim. The LBI Claim was filed in the wrong case, and was completely unknown to

13

any of the Debtors or their creditors during the Chapter 11 Cases.  As such, the LBI Claim cannot

qualify as an informal proof of claim in the Chapter 11 Cases.

## Conclusion

32.     EFETnet had a contract with LBCS.  However, even though EFETnet was

provided with actual notice of the Bar Date against LBCS, it only filed a claim in the LBI Proceeding.

EFETnet claims that it did not receive the Bar Date Notice and that it believes that it did everything

necessary to protect its rights when it filed the LBI Claim.  However, EFETnet provides no evidence to

rebut the presumption that it received actual notice of the Bar Date.  EFETnet has not produced any

evidence to carry its burden to show that its failure to file a proof of claim against LBCS is the result of

excusable neglect.  Furthermore, the fact that EFETnet may have believed it had done everything

necessary to protect its rights against LBCS does not excuse the fact that it filed a proof of claim against

the wrong entity in a completely different case.  Last, EFETnet's informal proof of claim theory must

fail because the LBI Claim was filed in a separate case, against a separately administered entity, and

therefore could not possibly have demonstrated to LBCS, this Court, or LBCS's creditors of EFETnet's

intent to hold LBCS liable.  Accordingly, the Plan Administrator respectfully requests that the Court

deny the Motion in all respects.

## Reservation of Rights

33.     In the event that the Court determines to grant the relief requested in the Motion,

the Plan Administrator reserves all of its rights to object to the validity and amount of any claims that

may be filed by EFETnet.

34.     The Plan Administrator reserves the right to conduct discovery as to the matters

raised in the Motion and to supplement this filing as a result thereof.

US_ACTIVE:\44340577\6\58399.0011

**WHEREFORE** the Plan Administrator respectfully requests the Court deny the Motion

and grant such other and further relief as is just and proper.

Dated:   October 17, 2013
         New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

US_ACTIVE:\44340577\6\58399.0011