# EXHIBIT A

| United States Bankruptcy Court/Southern District of New York | | **PROOF OF CLAIM** |
|---|---|---|
| Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | |

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 1000221282 |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Holdings Inc.** | Case No. of Debtor<br>08-13555 | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)    0000033568 |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>LBH (CREDITOR.DBF, CREDNUM) CREDNUM # 1000221282******<br>FEDERAL HOME LOAN MORTGAGE CORPORATION<br>ATTN: MARK LANDMAN<br>LANDMAN, CORSI, BALLAINE & FORD P.C.<br>120 BROADWAY<br>NEW YORK, NY 10271<br><br>Telephone number: 212-238-4800    Email Address: mlandman@lcbf.com | ☐ Check this box<br>this claim amends a previously filed claim.<br><br>Court Claim Number:<br>_____<br>(If known)<br><br>Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above)<br>George Kielman, Esq.<br>Federal Home Loan Mortgage Corporation<br>8200 Jones Branch Dr. - MS 202<br>McLean, VA  22102    George Kielman<br>Telephone number: 703-903-2640    Email Address: freddiemac.com | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed: $ 1,202,241,875 (interest as of 9/15/08) | 5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

2. Basis for Claim:  see attached Addendum and exhibits
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____  Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection: _____
Amount of Secured Claim: $_____  Amount Unsecured: $_____

Amount entitled to priority:

$_____

**\*See attached re 12 USC 4617(b)(15) priority**

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

FOR COURT USE ONLY
FILED BANKRUPTCY COURT S.D.N.Y. '09 SEP 22 PM 1:07

| Date:<br>9-18-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Raymond G. Romano, EVP<br>Chief Credit Officer    Raymond G. Romano |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim Form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re

LEHMAN BROTHERS HOLDINGS INC., et al.,

Debtors.

Chapter 11 Case No.
08-13555 (JMP)

(Jointly Administered)

------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM OF
## FEDERAL HOME LOAN MORTGAGE CORPORATION

1.      Federal Home Loan Mortgage Corporation in conservatorship (hereinafter

referred to as "Freddie Mac") is a government-sponsored enterprise that not only plays a critical

role in the United States mortgage finance market but also is inextricably interwoven into the

nation's financial system.  On September 6, 2008, the Federal Housing Finance Agency

("FHFA"), an independent agency of the United States Government, was appointed as Freddie

Mac's conservator (the "Conservator").  The goal of the conservatorship is to restore confidence

in Freddie Mac, enhance its capacity to fulfill its mission and mitigate the systemic risk that has

contributed to the instability in the current market.  Freddie Mac is filing this proof of claim in

these chapter 11 cases at the direction of the Conservator.

2.      In August 2008, Freddie Mac made two separate transactions for the transfer of

funds totaling $1.2 billion through the Federal Reserve System from Freddie Mac's account at

the Federal Reserve Bank of New York to Lehman Brothers Holdings Inc.'s ("LBHI," or the

"Debtor") account with Citibank.  The transactions were executed on August 19th and August

20th in the amounts of $450,000,000 and $750,000,000, respectively, and brokered through

Tullet Prebon, an interdealer broker.  A copy of the supporting documents is attached hereto as

Exhibit A. Pursuant to the terms of the transaction, LBHI was scheduled to repay the funds on an "early return" basis; that is, prior to the opening of the capital markets, together with accrued interest on September 15, 2008. In order to effect an "early return" repayment of the loan, LBHI was to set aside the repayment amount and request the requisite wire transfer prior to September 15, 2008 so that the transfer could be made on an "early return" basis prior to the opening of the capital markets on September 15, 2008. Such transfer was not initiated, however, and, to date, Freddie Mac has not received payment of the $1.2 billion plus $2,241,875.00 in accrued interest. See Exhibit B. Accordingly, Freddie Mac is asserting a claim for $1,202,241,875.00 which includes interest as of September 15, 2008.[1]

       3.    Pursuant to 12 U.S.C. § 4617(b), as amended by P.L. 110-289, the Conservator has the powers necessary to locate and protect Freddie Mac's assets, which as a matter of law, have been taken over by the Conservator. Pursuant to 12 U.S.C. § 4617(b)(15)(A), the Conservator is authorized to "avoid a transfer of any interest of an entity-affiliated party, or any person determined by the conservator ... to be a debtor of the regulated entity, in property, or any obligation incurred by such party or person that was made within 5 years of the date on which the Agency was appointed conservator ..., if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the regulated entity, the Agency, the conservator, or receiver." Section 4617(b)(15)(D) further states that the Conservator's power to avoid a fraudulent transfer is "superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11." Therefore, the Conservator, on behalf of Freddie Mac, reserves all its rights pursuant to its

---

[1] Freddie Mac has filed a separate Proof of Claim for $885,839,087.33 related to derivative transactions and loan servicing related obligations.

statutory authorization, including with respect to the transfer of any property in which the Debtor had an interest to the extent such transfer was made with the intent to hinder or delay the "early return" payment of the $1.2 billion due and owing to Freddie Mac on September 15, 2008, for which claim is made hereunder, with any recovery on account of such claim being entitled to a priority recovery under Section 4617(b)(15)(D).

4.    In addition to the foregoing, by way of this Proof of Claim, Freddie Mac adopts and reasserts each and every claim scheduled by the Debtor as payable to Freddie Mac.

5.    Freddie Mac is filing this proof of claim in anticipation of the claims bar date (the "Bar Date"), which has been set as September 22, 2009, pursuant to the Court's July 2, 2009 Order pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form. Freddie Mac reserves the right to amend, modify, and/or supplement this proof of claim at any time, including, without limitation, for the purpose of asserting additional claims, whether arising from the transactions or documents described in Freddie Mac's proof of claim, this attachment, or otherwise. Freddie Mac also reserves its rights to assert any and all rights of setoff that it may have against the Debtor in respect of its claims, including, without limitation, the right to set off its claims against any claims that the Debtor (or any successor, assignee or person claiming through the Debtor, as the case may be) may assert against Freddie Mac or its successors or assigns, whether or not arising under the transactions set forth in this proof of claim. Freddie Mac also reserves its right to pursue claims (including, but not limited to, the claims described herein) against the Debtor based upon additional or alternative legal theories, and reserves the right to assert administrative expense claims.

6.      Freddie Mac further reserves its right to seek to have the reference withdrawn
with respect to the subject matter of these claims, any objection or other proceedings commenced
with respect thereto, or any other proceedings commenced in this case or otherwise involving
Freddie Mac.  By filing this proof of claim, neither Freddie Mac nor the Conservator intends to
submit to the jurisdiction of the Bankruptcy Court for any purpose other than the allowance of
this claim for purposes of these chapter 11 cases.

```
TID                                      08192008-003463
Account Id                               MS FED FUNDS
Status String                            PROC_DLVR/CONF
Txn Class                                Funds Delivers
Type Code                                1600
Amount                                   $450,000,000.00
(3000) Adj Reason Code
(3000) As of Adj Date
(3100) Sender's ABA                      021039513
(3100) Sender's Tele Name                FHLMC INVESTOR PI
(3320) Sender Reference                  08192008 003463
(3400) Receiver's ABA                    021000089
(3400) Receiver's Tele Name              CITIBANK NYC
(3600) Business Function Code            FFS
(3600) SWIFT Transaction Type Code
(3700) Charges: Detail
(3700) Charges: Currency Code 1
(3700) Charges: Senders Charges 1
(3700) Charges: Currency Code 2
(3700) Charges: Senders Charges 2
(3700) Charges: Currency Code 3
(3700) Charges: Senders Charges 3
(3700) Charges: Currency Code 4
(3700) Charges: Senders Charges 4
(3710) Inst Amt: Currency Code 1
(3710) Inst Amt: Amount
(3720) Exchange Rate
(4000) Intermediary's FI Id Code
(4000) Intermediary's FI Ident
(4000) Intermediary's FI Name
(4000) Intermediary's FI Addr
(4100) Benef's FI Id Code
(4100) Benef's FI Ident
(4100) Benef's FI Name
(4100) Benef's FI Addr
(4200) Beneficiary Id Code               D
(4200) Beneficiary Ident                 40615202
(4200) Beneficiary Name                  LEHMAN BROTHERS HOLDING
(4200) Beneficiary Addr
(4320) Ref for Beneficiary
(4400) Acct Db Drwdown Id Code
(4400) Acct Db Drwdown Ident
(4400) Acct Db Drwdown Name
(4400) Acct Db Drwdown Addr
(5000) Originator Id Code                D
(5000) Originator Ident                  487100
(5000) Originator Name                   FM HSA FED FUNDS
(5000) Originator Addr
(5100) Origin's FI Id Code
(5100) Origin's FI Ident
(5100) Origin's FI Name
(5100) Origin's FI Addr
(5200) Instructing FI Id Code
(5200) Instructing FI Ident
(5200) Instructing FI Name
(5200) Instructing FI Address
(5400) Account Cr in Drwdown
(6000) Origin. to Benef. info            OVERNIGHT FED FUNDS
(6100) Receiver's FI Info
(6110) Drwdown Db Acct Adv Code
(6110) Drwdown Db Acct Adv Info
(6200) Intermediary FI Info
(6210) Intermediary's FI Adv Code
(6210) Intermediary's FI Adv Info
(6300) Benef's FI Info
(6310) Benef's FI Adv Code
(6310) Benef's FI Adv Info
(6400) Beneficiary Info
(6410) Beneficiary Adv Code
(6410) Beneficiary Adv Info
(6420) Beneficiary MOP
(6420) Beneficiary Mop Info
(6430) Payment Limitation
(6500) FI to FI Info
(9000) Free Text
IMAD                                     20080819B1Q8283C000105
Message Disposition
Acceptance Timestamp
OMAD
Error field
Cost Center                              NA
GL Account Cash                          NA
GL Account Offset                        NA
Group Id
Trade ID
XRef No.                                 ALAD.487   .-1762   .8
Repetitive ID                            MS LBHC CI
Counterparty ID
Settlement Date                          08/19/2008
Process Date                             08/19/2008
Priority                                 5
```

```
MEMO
SAFEID          08/19/08 14:15:18.836 PEND_DLVR/HOLD Created
F354356         08/19/08 17:14:49.266 PEND_DLVR Released
F354356         08/19/08 17:14:54.346 PROC_DLVR/UNACK Delivered
safeid          08/19/08 17:16:02.410 PROC_DLVR/CONF Confirmed, IMAD:20080819B108263C000105
```

```
Compliance Audit
08192008 17:14:54 OFAC Rules Passed (4200) Beneficiary Name          BROTHERS|(90000006)*LEHMAN:OCCURS;
```

```
TID                                   08202008-004807
Account Id                            MS FED FUNDS
Status String                         PROC_DLVR/CONF
Txn Class                             Funds Delivers
Type Code                             1600
Amount                                $750,000,000.00
(3000) Adj Reason Code
(3000) As of Adj Date
(3100) Sender's ABA                   021039513
(3100) Sender's Tele Name             FNLMC INVESTOR PI
(3320) Sender Reference               08202008 004807
(3400) Receiver's ABA                 021000089
(3400) Receiver's Tele Name           CITIBANK NYC
(3600) Business Function Code         FFS
(3600) SWIFT Transaction Type Code
(3700) Charges: Detail
(3700) Charges: Currency Code 1
(3700) Charges: Senders Charges 1
(3700) Charges: Currency Code 2
(3700) Charges: Senders Charges 2
(3700) Charges: Currency Code 3
(3700) Charges: Senders Charges 3
(3700) Charges: Currency Code 4
(3700) Charges: Senders Charges 4
(3710) Inst Amt: Currency Code 1
(3710) Inst Amt: Amount
(3720) Exchange Rate
(4000) Intermediary's FI Id Code
(4000) Intermediary's FI Ident
(4000) Intermediary's FI Name
(4000) Intermediary's FI Addr
(4100) Benef's FI Id Code
(4100) Benef's FI Ident
(4100) Benef's FI Name
(4100) Benef's FI Addr
(4200) Beneficiary Id Code            D
(4200) Beneficiary Ident              40615202
(4200) Beneficiary Name               LEHMAN BROTHERS HOLDING
(4200) Beneficiary Addr
(4320) Ref for Beneficiary
(4400) Acct Db Drwdown Id Code
(4400) Acct Db Drwdown Ident
(4400) Acct Db Drwdown Name
(4400) Acct Db Drwdown Addr
(5000) Originator Id Code             D
(5000) Originator Ident               487100
(5000) Originator Name                FN MSA FED FUNDS
(5000) Originator Addr
(5100) Origin's FI Id Code
(5100) Origin's FI Ident
(5100) Origin's FI Name
(5100) Origin's FI Addr
(5200) Instructing FI Id Code
(5200) Instructing FI Ident
(5200) Instructing FI Name
(5200) Instructing FI Address
(5400) Account Cr in Drwdown
(6000) Origin. to Benef. info         OVERNIGHT FED FUNDS
(6100) Receiver's FI Info
(6110) Drwdown Db Acct Adv Code
(6110) Drwdown Db Acct Adv Info
(6200) Intermediary FI Info
(6210) Intermediary's FI Adv Code
(6210) Intermediary's FI Adv Info
(6300) Benef's FI Info
(6310) Benef's FI Adv Code
(6310) Benef's FI Adv Info
(6400) Beneficiary Info
(6410) Beneficiary Adv Code
(6410) Beneficiary Adv Info
(6420) Beneficiary MOP
(6420) Beneficiary Mop Info
(6430) Payment Limitation
(6500) FI to FI Info
(9000) Free Text
IMAD                                  20080820B1Q8284C000032
Message Disposition
Acceptance Timestamp
OMAD
Error field
Cost Center                           NA
GL Account Cash                       NA
GL Account Offset                     NA
Group Id
Trade ID
XRef No.                              ALAD.487   .-1767   .3
Repetitive ID                         MS LBHC CI
Counterparty ID
Settlement Date                       08/20/2008
Process Date                          08/20/2008
Priority                              5
```

```
MEMO
SAFEID          08/20/08 10:52:51.513 PEND_DLVR/HOLD Created
F351598         08/20/08 11:40:19.356 PEND_DLVR Released
F351598         08/20/08 11:41:16.513 PROC_DLVR/UNACK Delivered
safeid          08/20/08 11:42:26.250 PROC_DLVR/CONF Confirmed, IMAD:20080820B1Q8284C000032

Compliance Audit
08202008 11:41:16 OFAC Rules Passed {4200} Beneficiary Name          BROTHERS|(90000006)*LEHMAN:OCCURS;
```



ATTN: TOMMY FUQUA
A/C FREDDIE MAC FED FUNDS
1551 PARK RUN DR
MAIL STOP D5N
MCLEAN, VA 22102-3110

Invoice Date :     Page :     1

Reference :     24404/15/28/00/0808-117695

**The following deals were arranged by the EURODOLLAR CASH division.**

| Date | Deal # | Counterparty | From | To | Days | Rate | Notional Amount | | Amount |
|------|--------|--------------|------|-----|------|------|-----------------|---|--------|
| 01-Aug-08 | 73130 | SOCIETE GENERALE-NEW YORK. | 8/01/08 | 8/15/08 | 14 | 2.28000 LN | 250,000,000.00 | US | 2,100.00 |
| 05-Aug-08 | 75243 | RBS CITIZENS BANK NA - RI | 8/05/08 | 8/15/08 | 10 | 2.20000 LN | 300,000,000.00 | US | 1,800.00 |
| 20-Aug-08 | 86093 | US CENTRAL CU-LENEXA | 8/20/08 | 9/15/08 | 26 | 2.60000 LN | 500,000,000.00 | US | 7,800.00 |
| 21-Aug-08 | 86985 | UNION BK OF CAL-L.A. | 8/21/08 | 9/15/08 | 25 | 2.43000 LN | 200,000,000.00 | US | 3,000.00 |
| 25-Aug-08 | 88685 | BK OF IRELAND-STAMFORD | 8/25/08 | 9/15/08 | 21 | 2.37500 LN | 200,000,000.00 | US | 2,520.00 |
| 26-Aug-08 | 89518 | NATIXIS - NY | 8/26/08 | 9/15/08 | 20 | 2.35000 LN | 150,000,000.00 | US | 1,800.00 |
| 28-Aug-08 | 91244 | BCO BILBAO VIZ ARG SA-NY | 8/28/08 | 9/15/08 | 18 | 2.37000 LN | 250,000,000.00 | US | 2,700.00 |
| 29-Aug-08 | 92082 | WESTERN CORP FCU-SAN DIMAS | 8/29/08 | 9/15/08 | 17 | 2.37000 LN | 400,000,000.00 | US | 4,080.00 |

SHORT DATES                BROKERAGE SUBTOTAL :         44,790.00

BROKERAGE TOTAL IN USD :         44,790.00

# Freddie Mac

## NEW TRADE

PMG:                                    AMM    Trade Ops:                    JSL

**MSA-FRB**
Trade No. 1080, Vs. 1
Aug 19, 2008 18:05:07 GMT

## LEND    LBHC CASH/FEDF                2.55000 Sep 15, 2008

| | | | |
|---|---|---|---|
| **Asset ID:** | **B5A0703R7** | Payment Delay: | 0 |
| **Ticker:** | **LBHC** | Date Convention: | ACT/360 |
| Coupon: | 2.55000 | Accrual Date: | Aug 19, 2008 |
| Coupon Type: | MAT | First Coupon Date: | Sep 15, 2008 |
| Frequency: | ZERO | Next Pay Date: | Sep 15, 2008 |
| Reset Term: | | Odd First Pmt: | ☐ Yes ☑ No |
| Maturity Date: | Sep 15, 2008 | AMT: | ☐ Yes ☑ No |
| Issue Date: | Aug 19, 2008 | ERISA: | ☐ Yes ☐ No |
| Min Trade Size: | N/A | 144A: | ☐ Yes ☑ No |
| Min Trade Increment: | N/A | Notional: | ☐ Yes ☑ No |

| | |
|---|---|
| Trade Date: | Aug 19, 2008 |
| Settle Date: | Aug 19, 2008 |
| Counterparty: | LBHC |
| LEHMAN BROTHERS HOLDINGS INC. | |
| Counterparty Cont | MARTIN WALSH |
| Original Par: | 450,000,000.000 |
| Factor: | 1.000000000 |
| Factor Date: | |
| Current Par: | 450,000,000.000 |

**General Use**
  Early Return for Trust
**Delivery Instructions**
  FEDFUND/MS LBHC CI
  *BANK NAME:*        CITIBANK NYC
  *ABA#:*               021000089
  *A/C#:*               40815202
  *A/C NAME:*        LEHMAN BROTHERS HOLDING
  *BANK TO BANK:*   OVERNIGHT FED FUNDS
**Miscellaneous Information**
  TrdPurpose:       MSA
**Fifo Information**

| trade | relation | amount |
|---|---|---|
| 710 | SPEC | -450,000,000.00 |

| | |
|---|---|
| Price: | 100.000 |
| | 100.000000000 |
| Principal: | (450,000,000.00) |
| Interest: | 0.00 |
| Total Charges: | 0.00 |
|   Broker Commission: | (7,290.00) |
| Net Money: | (450,000,000.00) |
| Currency: | USD |
| Net Cash Flow: | OUT |

| | |
|---|---|
| Exchange rate: | |
| Discount: | |
| Option Type: | |

| | |
|---|---|
| Prepay: | 100.00 |
| Yield: | 2.550 |
| YTC: | |
| Duration: | 0.07406 |
| Convexity: | 0.00000 |

| S & P | Moody | DBRS |
|---|---|---|
| | | |
| **Fitch** | **NAIC** | |
| | | |

| | |
|---|---|
| Discretionary: | ☐ Yes ☑ No |
| Liquid: | ☑ Yes ☐ No |
| Segregate: | ☑ Yes ☐ No |
| Release: | ☐ Yes ☑ No |

| | |
|---|---|
| Exec: | 2008-08-19 17:35:38 GMT |
| Exec Source: | Auth Time |
| Executing Broker: | PREB |
| | PREBON |

Mortgage Securities Account (MSA-FRB)
Trade No. 1080, Vs. 1

Created: Sep 15, 2008 16:25:29 GMT

FreddieMac

A/C# NA                    Copyright © 2008 BlackRock Inc. All Rights Reserved.                    NO CUSTODIAN

# Freddie Mac | NEW TRADE

**MSA-FRB**
Trade No. 710, Vs. 1
Sep 12, 2008 22:30:48 GMT

PMG:                           rm_mat    Trade Ops:              rm_mat

## MAT | LBHC CASH/FEDF

**2.55000 Sep 15, 2008**

| | | | | | |
|---|---|---|---|---|---|
| Asset ID: | B5A0703R7 | Payment Delay: | 0 | Trade Date: | Sep 15, 2008 |
| Ticker: | LBHC | Date Convention: | ACT/360 | Settle Date: | Sep 15, 2008 |
| Coupon: | 2.55000 | Accrual Date: | | Broker: | |
| Coupon Type: | MAT | First Coupon Date: | Sep 15, 2008 | | UNKNOWN |
| Frequency: | ZERO | Next Pay Date: | | Broker Contact: | rm_mat |
| Reset Term: | | Odd First Pmt: | ☐ Yes ☑ No | | |
| Maturity Date: | Sep 15, 2008 | AMT: | ☐ Yes ☑ No | Original Par: | 450,000,000.000 |
| Issue Date: | Aug 19, 2008 | ERISA: | ☐ Yes ☐ No | Factor: | 1.000000000 |
| Min Trade Size: | N/A | 144A: | ☐ Yes ☐ No | Factor Date: | |
| Min Trade Increment: | N/A | Notional: | ☐ Yes ☑ No | Current Par: | 450,000,000.000 |

**Fifo Information**

| trade | relation | amount |
|---|---|---|
| 1080 | SPEC | -450,000,000.00 |

| | |
|---|---|
| Price: | 100.000 |
| | 100.000000000 |
| Principal: | 450,000,000.000 |
| Interest: | 0.00 |
| Commission: | 0.00 |
| Net Money: | 450,000,000.00 |
| Currency: | USD |
| Net Cash Flow: | IN |

| | |
|---|---|
| Exchange rate: | |
| Discount: | |
| Option Type: | |

| | |
|---|---|
| Prepay: | 0.00 |
| Yield: | |
| YTC: | |
| Duration: | 0.00000 |
| Convexity: | 0.00000 |

| S & P | Moody | DBRS |
|---|---|---|
| Fitch | NAIC | |

| | | |
|---|---|---|
| Discretionary: | ☐ Yes | ☑ No |
| Liquid: | ☑ Yes | ☐ No |
| Segregate: | ☐ Yes | ☑ No |
| Release: | ☑ Yes | ☐ No |

| | | |
|---|---|---|
| Exec: | 2008-09-12 22:30:48 GMT | |
| Exec Source: | Auth Time | |

*Mortgage Securities Account (MSA-FRB)*
*Trade No. 710, Vs. 1*

*FreddieMac*

*Created: Sep 15, 2008 18:23:39 GMT*

A/C# NA

Copyright © 2008 BlackRock Inc. All Rights Reserved.

NO CUSTODIAN



# Freddie Mac | NEW TRADE

**MSA-FRB**
Trade No. 1084, Vs. 1
Aug 20, 2008 14:45:31 GMT

PMG:                    AMM | Trade Ops:                    TEF

## LEND | LBHC CASH/FEDF | 2.55000 Sep 15, 2008

| | | |
|---|---|---|
| Asset ID: | **B5A070KA5** | Payment Delay: | 0 | Trade Date: | **Aug 20, 2008** |
| Ticker: | **LBHC** | Date Convention: | ACT/360 | Settle Date: | **Aug 20, 2008** |
| Coupon: | 2.55000 | Accrual Date: | Aug 20, 2008 | Counterparty: | LBHC |
| Coupon Type: | MAT | First Coupon Date: | Sep 15, 2008 | LEHMAN BROTHERS HOLDINGS INC. |
| Frequency: | ZERO | Next Pay Date: | Sep 15, 2008 | Counterparty Cont | MARTY WALSH |

| | |
|---|---|
| Reset Term: | | Odd First Pmt: | ☐ Yes ☑ No | |
| Maturity Date: | Sep 15, 2008 | AMT: | ☐ Yes ☑ No | Original Par: | 750,000,000.000 |
| Issue Date: | Aug 20, 2008 | ERISA: | ☐ Yes ☐ No | Factor: | 1.000000000 |
| Min Trade Size: | N/A | 144A: | ☐ Yes ☑ No | Factor Date: | |
| Min Trade Increment: | N/A | Notional: | ☐ Yes ☑ No | Current Par: | 750,000,000.000 |

### General Use
  Early Return for Trust
### Delivery Instructions
  FEDFUND/MS LBHC CI
  *BANK NAME:*       CITIBANK NYC
  *ABA#:*             021000089
  *A/C#:*             40615202
  *A/C NAME:*        LEHMAN BROTHERS HOLDING
  *BANK TO BANK:*    OVERNIGHT FED FUNDS
### Miscellaneous Information
  TrdPurpose:        MSA
### Fifo Information

| trade | relation | amount |
|---|---|---|
| 711 | SPEC | -750,000,000.00 |

| | |
|---|---|
| Price: | 100.000 |
| | 100.000000000 |
| **Principal:** | (750,000,000.00) |
| Interest: | 0.00 |
| Total Charges: | 0.00 |
|   Broker Commission: | (11,700.00) |
| **Net Money:** | (750,000,000.00) |
| Currency: | USD |
| Net Cash Flow: | OUT |

| | |
|---|---|
| Exchange rate: | |
| Discount: | |
| Option Type: | |

| | |
|---|---|
| Prepay: | 100.00 |
| Yield: | 2.550 |
| YTC: | |
| Duration: | 0.07132 |
| Convexity: | 0.00000 |

| S & P | Moody | DBRS |
|---|---|---|
| | | |
| Fitch | NAIC | |
| | | |

| | |
|---|---|
| Discretionary: | ☐ Yes ☑ No |
| Liquid: | ☑ Yes ☐ No |
| Segregate: | ☑ Yes ☐ No |
| Release: | ☐ Yes ☑ No |

| | |
|---|---|
| Exec: | 2008-08-20 13:49:44 GMT |
| Exec Source: | Auth Time |
| Executing Broker: | PREB |
| | PREBON |

*Mortgage Securities Account (MSA-FRB)*
*Trade No. 1084, Vs. 1*

*FreddieMac*

Created Sep 15, 2008 16:25:46 GMT

A/C# NA

Copyright © 2008 BlackRock Inc. All Rights Reserved.

NO CUSTODIAN

## Freddie Mac

### NEW TRADE

**MSA-FRB**
Trade No. 711, Vs. 1
Sep 12, 2008 22:30:48 GMT

| PMG: | rm_mat | Trade Ops: | rm_mat |

### MAT   LBHC
### CASH/FEDF

**2.55000 Sep 15, 2008**

| | | | | |
|---|---|---|---|---|
| Asset ID: | B5A070KA5 | Payment Delay: | 0 | |
| Ticker: | LBHC | Date Convention: | ACT/360 | |
| Coupon: | 2.55000 | Accrual Date: | | |
| Coupon Type: | MAT | First Coupon Date: | Sep 15, 2008 | |
| Frequency: | ZERO | Next Pay Date: | | |
| Reset Term: | | Odd First Pmt: | ☐ Yes ☑ No | |
| Maturity Date: | Sep 15, 2008 | AMT: | ☐ Yes ☑ No | |
| Issue Date: | Aug 20, 2008 | ERISA: | ☐ Yes ☐ No | |
| Min Trade Size: | N/A | 144A: | ☐ Yes ☐ No | |
| Min Trade Increment: | N/A | Notional: | ☐ Yes ☑ No | |

| Trade Date: | Sep 15, 2008 |
|---|---|
| Settle Date: | Sep 15, 2008 |
| Broker: | |
| | UNKNOWN |
| Broker Contact: | rm_mat |

| Original Par: | 750,000,000.00 |
|---|---|
| Factor: | 1.000000000 |
| Factor Date: | |
| Current Par: | 750,000,000.00 |

**Fifo Information**

| trade | relation | amount |
|---|---|---|
| 1084 | SPEC | -750,000,000.00 |

| Price: | 100.000 |
|---|---|
| | 100.000000000 |
| Principal: | 750,000,000.00 |
| Interest: | 0.00 |
| Commission: | 0.00 |
| Net Money: | 750,000,000.00 |
| Currency: | USD |
| Net Cash Flow: | IN |

| Exchange rate: | |
|---|---|
| Discount: | |
| Option Type: | |

| Prepay: | 0.00 |
|---|---|
| Yield: | |
| YTC: | |
| Duration: | 0.00000 |
| Convexity: | 0.00000 |

| S & P | Moody | DBRS |
|---|---|---|
| | | |
| Fitch | NAIC | |
| | | |

| Discretionary: | ☐ Yes ☑ No |
|---|---|
| Liquid: | ☑ Yes ☐ No |
| Segregate: | ☐ Yes ☑ No |
| Release: | ☑ Yes ☐ No |

| Exec: | 2008-09-12 22:30:48 GMT |
|---|---|
| Exec Source: | Auth Time |

Created: Sep 15, 2008 16:24:05 GMT

Mortgage Securities Account (MSA-FRB)
Trade No. 711, Vs. 1

FreddieMac

A/C# NA

Copyright © 2008 BlackRock Inc. All Rights Reserved.

NO CUSTODIAN



```
09/17/2008  13:53    201-557-5902              TULLETT PREBON              PAGE  01/02
                                                                                      S2
TLR0012            85363 V.00        DETAILS                   Ent date:   8/19/08
eal date:   8/19/08   Val date:  8/19/08   Due date:   9/15/08   Chg date:   8/19/08
eal number:   85363   Batch #:  999   Section #: 15   Type: 74
umber of Days    27
ELLER   FREDDIE MAC MSA FED FUNDS     BUYER    LEHMAN BROS HLDG INC (NY)
urr1:  US            Thru1: PYN        Curr2:              Thru2: PYN
ro:              Dsk 20 EURODOLLAR    Bro:              Dsk 27 FED FUNDS
roker 20052      WALSH, MARTIN        Broker 20257      FARMER, KEVIN
ebate:           .00  RD 000          Rebate:           .00  RD 000
roker                                 Broker
orres BRO:       .00                  Corres BRO:       .00  Swap#
ate:   000255        Amount:    450,000,000   Code:         Old deal#:
Rate:                SPrice:                   BRate:        BPrice:
el amt:                               Del amt:
ay FEDERAL RESERVE BK-N.Y.            Repay FEDERAL RESERVE BK-N.Y.
nstruction ACC FHLMC INVESTOR PI      Instruction
/C FREDDIE MAC MSA FED FUNDS          A/C CITIBANK NA-NY
instruction ABA 0210-3951-3 ACC 487100   Instruction ABA 0210-0008-9
AV .                                  FAV LEHMAN BROS HLDG INC (NY)
nstruction *EARLY RETURN BY 9:30AM    Instruction ACC 40615202
pecial instr.
F9=NO RE-TLX
                                         F10=Pay Ins.
                                      F6=Retlx F7=Tlx mnt F8=Tlx Inq
```

```
09/17/2008  13:53    201-557-5902                 TULLETT PREBON            PAGE  02/02
                     86087 V.00         DETAILS                                         S2
Deal date:  8/20/08  Val date:  8/20/08  Due date:  9/15/08  Ent date:  8/20/08
Deal number: 86087   Batch #:  999  Section #: 15  Type: 74  Chg date:  8/20/08
Number of Days    26
SELLER  FREDDIE MAC MSA FED FUNDS        BUYER   LEHMAN BROS HLDG INC (NY)
Curr1:  US                Thru1:  PYN    Curr2:                  Thru2: PYN
Bro:                      Dsk 20 EURODOLLAR  Bro:                Dsk 27 FED FUNDS
Broker 20052       WALSH, MARTIN         Broker 20257     FARMER,KEVIN
Rebate:            .00  RD 000           Rebate:          .00  RD 000
Broker                                   Broker
Corres BRO:              .00             Corres BRO:             .00  Swap#
Rate:    000255          Amount:         Rate:                   .00  Old deal#:
SRate:                   SPrice:  750,000,000  Code:
Del amt:                                 BRate:                  BPrice:
Pay FEDERAL RESERVE BK-N.Y.              Del amt:
Instruction ACC FHLMC INVESTOR PI        Repay FEDERAL RESERVE BK-N.Y.
A/C FREDDIE MAC MSA FED FUNDS            Instruction
Instruction ABA 0210-3951-3 ACC 487100   A/C CITIBANK NA-NY
FAV .                                    Instruction ABA 0210-0008-9
Instruction *EARLY RETURN BY 9:30AM      FAV LEHMAN BROS HLDG INC (NY)
Special instr.                           Instruction ACC 40615202
 F9=NO RE-TLX


                                          F10=Pay Ins.
                                          F6=Retlx F7=Tlx mnt F8=Tlx Inq
```

| Fund | Trd Num | CUSIP | Ticker/Coupon/Maturity | Counterparty | Tran Type | Orig. Face | Net Money | Group/Type | Trade Price | Trade Date | Settle Date | Int @ Mat | Maturity |
|------|---------|-------|------------------------|--------------|-----------|------------|-----------|------------|-------------|------------|-------------|-----------|----------|
| MSA-FRB | 1080 | BSA070367 | LBHC 2.550 09/15/2008 | LBHC | LEND | 450,000,000.00 | -450,000,000.00 | CASH/FEDF | 100 | 8/19/2008 | 8/19/2008 | -850,625.00 | 9/15/2008 |
| MSA-FRB | 1094 | BSA070645 | LBHC 2.550 09/15/2008 | LBHC | LEND | 750,000,000.00 | -750,000,000.00 | CASH/FEDF | 100 | 8/20/2008 | 8/20/2008 | -1,381,250.00 | 9/15/2008 |

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC, *et. al.* | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

### STIPULATION AND AGREEMENT BY
### AND AMONG FANNIE MAE, FREDDIE MAC AND THE
### DEBTORS REGARDING THE DEBTORS' THIRD AMENDED PLAN

This stipulation ("**Stipulation**") is entered into as of this 29th day of November 2011, by and among (i) the Federal National Mortgage Association ("**Fannie Mae**"), (ii) the Federal Home Loan Mortgage Corporation ("**Freddie Mac**," and together with Fannie Mae, the "**GSEs**"), and (iii) Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors and debtors-in-possession (collectively with LBHI, the "**Debtors**," and together with Fannie Mae and Freddie Mac, the "**Parties**," and each of them, a "**Party**") in the jointly administered chapter 11 bankruptcy cases captioned In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP) (the "**Bankruptcy Cases**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

### RECITALS

WHEREAS, on September 6, 2008, the Federal Housing Finance Agency ("**FHFA**") was appointed conservator for Fannie Mae and Freddie Mac (the "**Conservator**"), and granted all rights, titles, powers and privileges as Conservator thereof, pursuant to 12 U.S.C. § 4617, as amended by P.L. 110-289, which was enacted as part of the Housing and Economic Recovery Act of 2008 ("**HERA**");

WHEREAS, LBHI and certain of the Debtors commenced the Bankruptcy Cases on September 15, 2008, with additional chapter 11 petitions filed thereafter for certain of the other Debtors. The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, on July 2, 2009, the Bankruptcy Court entered an *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (Docket No. 4271), which, among other things set September 22, 2009, as the general bar date for filing proofs of claim in the Bankruptcy Cases;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (together with any supplements, amendments and exhibits thereto, and as each may be further modified from time to time, collectively, the "**Third Amended Plan**") and a related disclosure statement (the "**Disclosure Statement**"). On September 1, 2011, the Bankruptcy Court entered the order approving the adequacy of the information in the Disclosure Statement (the "**Disclosure Statement Order**");

WHEREAS, on October 25, 2011, the Debtors filed their Plan Supplement to the Third Amended Plan (the "**Plan Supplement**"), which Plan Supplement includes "Exhibit 2, Part D – Residential Real Estate Agreements";[1]

---

[1]    Exhibit 2, Part D of the Plan Supplement states, in part:

> The Debtors intend to assume all loan servicing contracts relating to residential mortgage loans and real estate owned properties ("REO") owned by the Debtors, including, but not limited to, loan servicing contracts that may be contained within and severable from other contracts that the Debtors do not seek to assume. To the extent any such contracts do not appear on Exhibit 2, Part D, for any reason, such

Footnote continued on next page

### Fannie Mae Claims

WHEREAS, Fannie Mae timely filed the below proofs of claim in the Bankruptcy Cases

(collectively, the "**Fannie Mae Claims**"):[2]

| Claim Number | Debtor | Filed Claim Amount | Basis for Claim |
|---|---|---|---|
| 29556 (amended and superseded by 40611) | LBSF | Unliquidated | • Derivative Contract |
| 29557 (the "**Fannie Mae LBHI Claim**") | LBHI | $19.058 billion | • Guarantee of Derivative Contract<br>• LBHI's obligation to repurchase mortgage loans and participation interests<br>• LBHI's breach of representations and warranties<br>• Material misstatements or omissions in connection with LBHI's sale of certain bonds to Fannie Mae<br>• Violations by LBHI of Sections 11 and 12 of the Securities Act of 1933 in connection with LBHI's sale of certain notes to Fannie Mae |

---

Footnote continued from previous page

contracts shall be treated as if they were listed herein and assumed as of the Effective Date and the required cure amounts for such contracts shall be zero.

The Debtors have not listed on Exhibit 2, Part D, any contracts pursuant to which the Debtors have retained mortgage loan servicing rights or a retained fee interest, either through exclusion or affirmative conveyance, in connection with residential mortgage loans and/or REO currently or previously owned by the Debtors, because of their conclusion that such contracts are not executory. In the event that the Bankruptcy Court determines that such contracts are executory contracts, then all such contracts shall be treated as if they were listed herein and assumed as of the Effective Date and the required cure amounts for such contracts shall be zero.

[2]    The descriptions of the Fannie Mae Claims contained in this Stipulation are for reference only, and are subject in all respects to the terms and conditions of the Fannie Mae Claims, as more specifically set forth therein and, except to the extent any of the Fannie Mae Claims have previously been separately allowed by an order of the Bankruptcy Court or agreement by the Parties, does not represent any admission by the Debtors in any respect.

3

WHEREAS, pursuant to a settlement agreement, Claim Number 40611 and a portion of Claim Number 29557 were allowed (i) against Lehman Brothers Special Financing Inc. ("**LBSF**") as a general, non-priority unsecured claim in the amount of $110 million (the "**Allowed Fannie Mae LBSF Claim**"); and (ii) against LBHI as a general, non-priority unsecured claim in the amount of $110 million (the "**Allowed Fannie Mae LBHI Claim**," and together with the Allowed Fannie Mae LBSF Claim, the "**Allowed Fannie Mae Claims**");

**Freddie Mac Claims**

WHEREAS, Freddie Mac timely filed the below proofs of claim in the Bankruptcy Cases (collectively, the "**Freddie Mac Claims**", and together with the Fannie Mae Claims, the "**Claims**")[3]:

| Claim Number | Debtor | Filed Claim Amount | Basis for Claim |
|---|---|---|---|
| 33568 (the "**Freddie Mac Priority Claim**") | LBHI | $1,202,241,875.00 | • Two (2) loans made by Freddie Mac to LBHI on August 19 and August 20, 2008, in the amounts of $450,000,000 and $750,000,000, respectively |
| 33569 | LBSF | $17,239,087.33 | • Derivative Contract |
| 33576 (the "**Freddie Mac LBHI Claim**") | LBHI | $885,839,087.33 | • Guarantee of Derivative Contract<br>• Seller/servicer related obligations |

WHEREAS, pursuant to that certain Termination Agreement, dated July 27, 2011, Claim Number 33569 and a portion of Claim Number 33576 were allowed (i) against LBSF as a general, non-priority unsecured claim in the amount of $16,394,310.08 (the "**Allowed Freddie**

---

[3]    The descriptions of the Freddie Mac Claims contained in this Stipulation are for reference only, and are subject in all respects to the terms and conditions of the Freddie Mac Claims, as more specifically set forth therein and, except to the extent any of the Freddie Mac Claims have previously been separately allowed by an order of the Bankruptcy Court or agreement by the Parties, does not represent any admission by the Debtors in any respect.

**Mac LBSF Claim**"); and (ii) against LBHI as a general, non-priority unsecured claim in the amount of $16,100,024.63 (the "**Allowed Freddie Mac LBHI Claim**", and together with the Allowed Freddie Mac LBSF Claim, the "**Allowed Freddie Mac Claims**");

**Priority Claims**

WHEREAS, pursuant to the Fannie Mae Claims and the Freddie Mac Claims, the GSEs and FHFA as Conservator have asserted that the claims are entitled to priority "superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11 [of the United States Code]," pursuant to 12 U.S.C. § 4617(b)(15)(D);

WHEREAS, subsequent to the filing of the Fannie Mae Claims, and as of the date hereof, Fannie Mae, and FHFA as Conservator thereof, have determined that Fannie Mae and FHFA will not assert any priority under 12 U.S.C. § 4617(b)(15)(D) with respect to approximately $16 billion of the amounts sought in the Fannie Mae LBHI Claim. Fannie Mae, and FHFA as Conservator thereof, continue to assert the statutory priority with respect to approximately a $2.7 billion portion of the Fannie Mae LBHI Claim (the "**Fannie Mae Priority Claim**");

WHEREAS, subsequent to the filing of the Freddie Mac Claims, Freddie Mac, and FHFA as Conservator thereof, determined that Freddie Mac and FHFA will not assert any priority under 12 U.S.C. § 4617(b)(15)(D) as to the Freddie Mac LBHI Claim, but they continue to assert a priority under 12 U.S.C. § 4617(b)(15)(D) as to the full amount of the Freddie Mac Priority Claim (the Freddie Mac Priority Claim, together with the Fannie Mae Priority Claim, the "**Priority Claims**");

**Mortgage Servicing Rights**

WHEREAS, LBHI has historically been a seller/servicer of portfolios of residential mortgage loans to each of Fannie Mae and Freddie Mac (the "**GSE Loans**"), and designated

5

Aurora Bank FSB (the "**Bank**") and/or Aurora Loan Services, LLC ("**Aurora**") as subservicer of such loans. In its capacity as seller of such residential mortgage loans, LBHI has certain obligations, including representations and warranties regarding the status of the loans, such as the regularity of the loan documents and compliance with all applicable GSE guidelines and requirements (collectively, the "**Seller Obligations**"). In addition, any transfer by LBHI of any mortgage servicing rights with respect to any GSE Loans requires the approval of the applicable GSE, and, unless otherwise agreed to by such GSE, any transfer of the applicable mortgage servicing rights is subject to the assumption of the Seller Obligations by the new servicer;

WHEREAS, pursuant to certain Orders entered on July 15, 2010 (Docket No.10222) (the "**July 15 Order**") and on September 23, 2010 (Docket No. 11566) (the "**September 23 Order**," and together with the July 15 Order, the "**Aurora Settlement Orders**"), the Bankruptcy Court approved certain settlements reached among the Debtors, the Bank and certain of their respective affiliated entities, including Aurora (collectively, the "**Aurora Settlement**").[4] In connection with the Aurora Settlement, LBHI agreed to transfer to Aurora all right, title and interest of LBHI in and to all residential mortgage servicing rights (including any mortgage servicing agreements under which LBHI has any such right) with a GSE (either for loans directly owned by such GSE or held in a securitization sponsored by such GSE) owned by LBHI in partial resolution and satisfaction of the Bank's claims against the Debtors, but only to the extent that the loans subject to such mortgage servicing rights were then currently being serviced by Aurora, either as master servicer, servicer or subservicer. LBHI agreed to transfer such mortgage servicing rights, free and clear of all liens and encumbrances; provided, however, that in the

---

[4]    The description of the Aurora Settlement and the Aurora Settlement Orders are for reference purposes only and subject in all respect to the terms and conditions of the Aurora Settlement and the Aurora Settlement Orders.

6

event that an applicable GSE failed to approve the transfer of any such mortgage servicing rights to Aurora, LBHI agreed to transfer and assign to Aurora all income attributable to or derived from such excluded mortgage servicing rights from and after the closing date of the Aurora Settlement until such time as such GSE provided the requisite approval of the transfer of such mortgage servicing rights to Aurora;

### Transfer of Fannie Mae Mortgage Servicing Rights

WHEREAS, as set forth in (i) that certain letter agreement, dated July 9, 2010, among Fannie Mae, the Bank and Aurora (the "**Fannie Mae/Aurora Letter Agreement**"); (ii) the Aurora Settlement Orders; and (iii) those agreements, documents and undertakings entered into among, inter alia, Fannie Mae, LBHI and certain of the other Debtors, in furtherance of the Aurora Settlement, the Fannie Mae/Aurora Letter Agreement and the Aurora Settlement Orders (such agreements, Aurora Settlement Orders and related documents and undertakings, in the aggregate, the "**Fannie Mae MSR Transfer Agreements**"), Fannie Mae agreed and consented to the transfer all of LBHI's mortgage servicing rights related to Fannie Mae sponsored residential mortgage loans, mortgages owned or pooled by Fannie Mae, and mortgage loans contained in certain REMIC Trusts (such mortgage servicing rights being collectively referred as the "**Fannie Mae Mortgage Servicing Rights**"), in each case serviced by LBHI or Aurora as the designated subservicer of such mortgage loans, to the Bank or Aurora, as contemplated in the Aurora Settlement and the Fannie Mae MSR Transfer Agreements, without requiring the assumption of responsibility of such assignee of the applicable Seller Obligations;

7

### Transfer of Freddie Mac Mortgage Servicing Rights

WHEREAS, notwithstanding the Aurora Settlement Orders and LBHI's authorization and agreement to transfer to the Bank or Aurora all mortgage servicing rights owned by LBHI related to the portfolio of Freddie Mac residential mortgage loans (such mortgage servicing rights, including, without limitation, pursuant to the terms and conditions set forth in a certain Master Commitment, dated as of April 26, 2005 (the "**Master Commitment**"), being collectively referred to as the "**Freddie Mac Mortgage Servicing Rights**"), Freddie Mac has not agreed or consented to the transfer of the Freddie Mac Mortgage Servicing Rights to the Bank or Aurora incident to the Aurora Settlement. Specifically, in connection with the approval of the Aurora Settlement and the entry of the September 23 Order, LBHI stipulated on the record that it had not yet received Freddie Mac's consent to the transfer of the Freddie Mac Mortgage Servicing Rights, and that it would not assign any income received or receivable by the Debtors attributable to or derived from the Freddie Mac Mortgage Servicing Rights without Freddie Mac's consent for a period of at least 120 days, which stipulated period has been extended from time to time by further agreement between Freddie Mac and LBHI, and remains in full force and effect (the "**Servicing Rights Stipulation**");

### Third Amended Plan

WHEREAS, prior to the Court's approval of the Disclosure Statement, the GSEs and FHFA informally raised certain objections to the disclosure related to the asserted priority of the Fannie Mae Priority Claim and the Freddie Mac Priority Claim, and the rights, titles, powers, and privileges of FHFA, in its statutory capacity under HERA as Conservator, with respect to such claims;

WHEREAS, the GSEs and FHFA have informally raised certain objections to the Third Amended Plan, including, without limitation, in respect of the classification and treatment of the Priority Claims, the amount to be reserved on account of any Priority Claim, the assumption/treatment of the agreements and documents giving rise to each of the Fannie Mae Mortgage Servicing Rights (collectively, the "**Fannie Mae Mortgage Servicing Agreements**") and the Freddie Mac Mortgage Servicing Rights, including, without limitation, the Master Commitment (collectively, the "**Freddie Mac Mortgage Servicing Agreements**") and the assignability of such mortgage servicing rights, and the reservation of the rights, titles, powers, and privileges of FHFA, in its statutory capacity under HERA as Conservator, including specifically in respect of the Third Amended Plan (the "**Potential Plan Objections**");

WHEREAS, the Debtors agreed to extend the deadline by which the GSEs and FHFA were required to file any objections to the Third Amended Plan (the "**Plan Objection Deadline**") in order to allow the parties additional time to engage in discussions regarding the Potential Plan Objections;

WHEREAS, in order to resolve the Objection of the GSEs and FHFA, in respect of the classification and treatment of the Priority Claims, the Debtors have amended the definition of Priority Non-Tax Claim in the Third Amended Plan as follows: "Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code or Claims under 12 U.S.C. § 4617(b)(15)"; and

WHEREAS, the Parties have agreed that it is in their mutual interests to enter into this Stipulation in order to consensually address and resolve the remaining Potential Plan Objections, and to preserve all rights, claims and defenses of each of the Parties, and FHFA as Conservator,

in respect thereof, including specifically the rights, titles, powers and privileges of FHFA, as

Conservator, under HERA.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants, agreements and

conditions contained herein, and for other good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, upon the

foregoing recitals, which are incorporated herein in all respects, the Parties enter into this

Stipulation for purposes of addressing the remaining Potential Plan Objections, and to that end,

agree as follows:

### Effectiveness of Stipulation

1.  This Stipulation shall become effective on the date (the "**Stipulation Effective**

**Date**") that the Stipulation has been (i) executed by each of the Parties; (ii) approved by entry of

an Order of the Bankruptcy Court, which Order may be entered by the Bankruptcy Court "so

ordering" this Stipulation; and (iii) entry of a final Order of the Bankruptcy Court confirming the

Third Amended Plan (the "**Confirmation Order**").

### Reserves For Distribution Purposes

2.  In order to ensure that Fannie Mae and/or Freddie Mac, or FHFA, as applicable, shall

receive any priority recovery under or in respect of the Third Amended Plan determined to be

payable on account of all or any portion of the Fannie Mae Priority Claim and/or the Freddie

Mac Priority Claim, the Debtors shall establish cash reserves on account of the Priority Claims

(i) on account of the Freddie Mac Priority Claim in the amount of $1,202,241,875.00; and (ii) on

account of the Fannie Mae Priority Claim in such amount as agreed upon among Fannie Mae,

and FHFA as Conservator thereof, on the one hand, and LBHI, on the other hand; underlined(provided,

however, that in the event that Fannie Mae, FHFA and LBHI fail to reach agreement on the

amount to be reserved on account of the Fannie Mae Priority Claim, either Fannie Mae or LBHI

may petition the Bankruptcy Court on shortened notice for a hearing on or before January 15,

2012 seeking a determination as to the proper amount to be reserved on account of the Fannie

Mae Priority Claim.

### Reservation of Rights

3.   Except to the extent of the Allowed Freddie Mac Claims and the Allowed Fannie Mae

Claims, the Parties hereby reserve all rights of the Parties and FHFA relating to the amount,

allowance, classification and/or priority of the Claims for all purposes, including in connection

with any distributions under the Third Amended Plan or otherwise in respect of these Bankruptcy

Cases, and nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits,

supplements, or agreements filed or entered into incident thereto, or the confirmation thereof),

the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall

(i) have any effect on or prejudice the Debtors in respect of the Claims, including the amount,

allowance, classification and/or priority of such Claims, or in respect of distributions on account

thereof, and nothing herein shall be deemed an admission, release or waiver of the Debtors'

rights with respect to such Claims, nor (ii) have any effect on, enjoin, or otherwise prejudice the

rights of the GSEs and FHFA in respect of the Claims, including the amount, allowance,

classification and/or priority of such Claims, or in respect of distributions on account thereof,

including their right to assert that the Fannie Mae Priority Claim and the Freddie Mac Priority

Claim are entitled to be treated as priority claims based on the rights, titles, powers, and

privileges of FHFA under HERA, and all rights of the GSEs and FHFA under HERA, are fully

reserved in that regard, and nothing herein, or in the Third Amended Plan or the Confirmation

Order, shall be deemed an admission, release or waiver of the rights of, or otherwise prejudice, the GSEs and FHFA with respect to such Claims. In addition, nothing in this Stipulation, or in the Third Amended Plan or the Confirmation Order, shall affect, limit or otherwise prejudice FHFA's rights, titles, powers and privileges under HERA, as Conservator.

4.    Nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit, enjoin or otherwise prejudice FHFA's rights, titles, powers, and privileges under HERA as the Conservator, including, without limitation the rights of Fannie Mae and/or Freddie Mac, or FHFA as Conservator thereof, to seek priority status and recovery in respect of the Fannie Mae Priority Claim and/or the Freddie Mac Priority Claim, and nothing in the Third Amended Plan or Confirmation Order shall be construed to restrain or limit any applicable regulatory or enforcement action that may be taken by FHFA, or to confer exclusive jurisdiction of the Bankruptcy Court over matters in respect of Fannie Mae, Freddie Mac, or FHFA as Conservator thereof.

5.    With respect to the Fannie Mae Mortgage Servicing Agreements and the Fannie Mae Mortgage Servicing Rights, nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit or otherwise modify the agreements reached among Fannie Mae and the Debtors in respect of the Fannie Mae Mortgage Servicing Agreements and the Fannie Mae Mortgage Servicing Rights, all as set forth in the Fannie Mae MSR Transfer Agreements, or otherwise affect, enjoin, limit or otherwise prejudice the rights of Fannie Mae,

12

FHFA or the Debtors in respect thereof, including, without limitation, with respect to the transfer
and assignment of the Fannie Mae Mortgage Servicing Rights and the requirement for Fannie
Mae's consent to any such transfer and assignment, and all rights of the parties are hereby
reserved in all such respects.

6.   With respect to the Freddie Mac Mortgage Servicing Agreements and the Freddie
Mac Mortgage Servicing Rights, nothing in this Stipulation, the Third Amended Plan (or any
amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the
confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in
connection therewith, shall affect, limit or otherwise modify the agreements reached among
Freddie Mac and the Debtors in respect of the Freddie Mac Mortgage Servicing Agreements and
the Freddie Mac Mortgage Servicing Rights, including as set forth and provided for in the
Aurora Settlement and the September 23 Order, or otherwise affect, enjoin, limit or otherwise
prejudice the rights of Freddie Mac, FHFA or the Debtors in respect thereof, including, without
limitation, with respect to the transfer and assignment of the Freddie Mac Mortgage Servicing
Rights and the requirement for Freddie Mac's consent to any such transfer and assignment, and
all rights of the Parties and FHFA are hereby reserved in all such respects.

**Deferred Rejection Deadline**

7.   In connection with the Freddie Mac Mortgage Servicing Agreements, including,
without limitation, the Master Commitment, and the Debtors' possible assumption or rejection of
such agreements, Freddie Mac has asserted that the Master Commitment is an executory contract
among Freddie Mac and one or more of the Debtors that must be assumed or rejected by the
Debtors, and that the assumption of the Master Commitment by the Debtors and the cure of all
pre-petition and post-petition defaults thereunder are preconditions to the transferability of the

13

Freddie Mac Mortgage Servicing Rights. To the extent, if any, that the Debtors fail to pay post-petition amounts in the ordinary course of business, Freddie Mac reserves the right to assert claims for such amounts. The Debtors have asserted that the Master Commitment (and any retained master servicing rights) is not an executory contract or otherwise contains severable obligations and, as set forth in the last paragraph of Exhibit 2, Part D, of the Plan Supplement, the Freddie Mac Mortgage Servicing Rights are, in fact, retained rights not requiring assumption or rejection by the Debtors. In addition, the Debtors have also asserted that nothing shall ever convert any prepetition claims of Freddie Mac based on alleged Seller Obligations to cure payments under the Third Amended Plan. In this regard, nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit or otherwise modify the Master Commitment or convert any prepetition claims of Freddie Mac based on alleged Seller Obligations to postpetition cure payments under the Third Amended Plan or prejudice the rights of Freddie Mac, FHFA and the Debtors in respect thereof or otherwise, and all rights of the parties are hereby reserved in all such respects; provided, however, that in the event that Freddie Mac and the Debtors fail to resolve their disputes in respect of the Master Commitment prior to the Confirmation Hearing, Freddie Mac and the Debtors hereby agree that, notwithstanding anything in this Stipulation, the Third Amended Plan or the Confirmation Order to the contrary, upon execution of this Stipulation by the Parties hereto, the date by which the Debtors shall be required to elect to either assume or reject the Freddie Mac Mortgage Servicing Agreements, including, without limitation, the Master Commitment, or seek a determination that the Master Commitment is not an executory contract or otherwise contains severable obligations, shall be

14

extended until such date that is ten (10) business days after either Freddie Mac or LBHI shall provide written notice to the other party that consensual agreement is not likely to be reached with respect to the Master Commitment and the rights of the parties in respect thereof, and the Debtors failure to make any such election or seek any such determination prior to the expiration of said ten (10) business day period shall constitute the Debtors' election to treat the Freddie Mac Mortgage Servicing Agreements, including the Master Commitment, as executory contracts rejected by the Debtors, subject to the right of Freddie Mac to file any claim on account of rejection damages within thirty (30) days after such deemed rejection.

### Miscellaneous

8.   The Parties further agree that the Confirmation Order shall include a decretal paragraph ordering the approval and incorporation of this Stipulation.

9.   Fannie Mae and Freddie Mac each agree that, subject to the occurrence of the Stipulation Effective Date, and except as otherwise provided in this Stipulation, it will not participate in the formulation of, file, prosecute, consent to or support any objection to the Third Amended Plan, or take any other action to alter, delay or impede the confirmation and consummation of the Third Amended Plan.

10. Each Party acknowledges that (a) this Stipulation was drafted jointly by the Parties, (b) it has consulted with attorneys of its choosing and fully understands the terms hereof, (c) it has received legal advice regarding the advisability of entering into this Stipulation, and (d) it is executing this Stipulation voluntarily.  This Stipulation shall not be strictly construed against any Party on the grounds that the rules for the construction of contracts require the resolution of any ambiguity against the Party that drafted the document.

11. This Stipulation shall apply to and be binding upon and inure to the benefit of each Party and their respective agents, employees, successors (including the Debtors' bankruptcy estates and including any trustee appointed to administer the Bankruptcy Cases or any subsequent chapter 7 case(s)) and assigns, and any entity into which such Party may be merged or consolidated.

12. Each individual signing this Stipulation on behalf of any Party hereto acknowledges and, with respect to his or her own signature below, warrants and represents that he/she is authorized to execute this Stipulation in his/her representative capacity, as reflected below and on behalf of the Party indicated.

13. The provisions of this Stipulation are severable, and the illegality or unenforceability of any part or provision shall not affect the enforceability of any other part or provision, and this Stipulation shall be construed as if such illegal or unenforceable part or provision were omitted but only to the extent of such illegality or unenforceability.

14. This Stipulation may be signed in counterparts and by fax signature or in portable document format (PDF), each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the Parties.

15. Notwithstanding Bankruptcy Rule 6004 or otherwise, this Stipulation shall be effective immediately upon entry of an Order approving this Stipulation.

16. This Stipulation contains the entire agreement between the Parties hereto regarding the subject matter hereof and may not be modified other than by a signed writing executed by all Parties and delivered to each Party.

IN WITNESS WHEREOF, THIS STIPULATION HAS BEEN READ AND SIGNED IN

DUPLICATE ORIGINALS BY EACH OF THE PARTIES:

WEIL, GOTSHAL & MANGES LLP                    WINSTON & STRAWN LLP


/s/ Alfredo R Pérez                          /s/ David Neier
Alfredo R. Pérez                             David Neier
700 Louisiana, Suite 1600                    200 Park Avenue
Houston, Texas 77002-2755                    New York, New York 10166-4193
(713) 546-5040                               (212) 294-6700

*Attorneys for the Debtors and Debtors-in-   *Attorneys for Federal National Mortgage
Possession*                                  Association*


                                             LANDMAN CORSI BALLAINE & FORD
                                             P.C.

                                             /s/ Mark S. Landman
                                             Mark S. Landman
                                             120 Broadway
                                             New York, New York 10271
                                             (212) 238-4800

                                             *Attorneys for Federal Home Loan Mortgage
                                             Corporation*


SO ORDERED:

Dated: New York, New York
       December 6, 2011


                                                  s/ James M. Peck
                                             United States Bankruptcy Judge