ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn

*Attorneys for the Federal Housing Finance Agency as*
*Conservator of the Federal Home Loan Mortgage Corporation*

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848
Mark S. Landman

*Attorneys for the Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. 08-13555 (JMP) |
| | : | Jointly Administered |
| LEHMAN BROTHERS HOLDINGS INC., | : | |
| *et al.*, | : | 13 Civ. _____ |
| Debtors. | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE FEDERAL HOUSING**
**FINANCE AGENCY AND THE FEDERAL HOME LOAN MORTGAGE**
**CORPORATION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................. 4

    A.    The Housing and Economic Recovery Act of 2008 ................................... 4

    B.    Freddie Mac's Lending Activities ............................................................. 5

    C.    August Loans to LBHI ............................................................................... 6

    D.    Freddie Mac and FHFA Assert Rights Under HERA in the LBHI Bankruptcy ...... 8

    E.    Statutory Bases of HERA Priority Claim .................................................. 9

    F.    LBHI's Motion to Classify ...................................................................... 12

ARGUMENT ..................................................................................................................... 13

THIS PROCEEDING IS SUBJECT TO MANDATORY WITHDRAWAL OF THE
REFERENCE ..................................................................................................................... 13

    A.    Withdrawal of the Reference Is Mandatory when a Proceeding Requires
            Substantial and Material Consideration of Federal Non-Bankruptcy Law ........... 13

    B.    LBHI's Motion to Classify Requires Substantial and Material Consideration
            of HERA ................................................................................................... 15

          i.    A Court Will Be Required to Determine the Effect of HERA's Grant
                 of Superior Rights to FHFA upon the Priority Scheme under the
                 Bankruptcy Code ......................................................................... 15

          ii.    A Court Will Be Required to Determine Whether HERA Entitles
                 FHFA To a Priority Recovery From the LBHI Bankruptcy Estate .......... 17

          iii.    Withdrawal of the Reference Is Particularly Appropriate in View of
                 the Lack of Case Authority Analyzing HERA Section 4617(b)(15) ........ 19

          iv.    Withdrawal of the Reference is Consistent with Applicable Law
                 Within the Second Circuit ............................................................. 21

CONCLUSION .................................................................................................................. 24

## TABLE OF AUTHORITIES

Page(s)

CASES:

*AT&T Co. v. Chateaugay Corp.,*
   88 B.R. 581 (S.D.N.Y. 1988)................................................................14, 15, 21, 22

*Barnhart v. Sigmon Coal Co.,*
   534 U.S. 438 (2002)................................................................................15, 16

*Bear, Stearns Sec. Corp. v. Gredd,*
   No. 01 Civ. 4379 (NRB),
   2001 WL 840187 (S.D.N.Y. July 25, 2001) ................................................14, 17

*Chemtura Corp. v. United States,*
   No. 10 Civ. 503 (RMB),
   2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) ...............................................14, 20

*City of New York v. Exxon Corp.,*
   932 F.2d 1020 (2d Cir. 1991)......................................................................13, 21

*Enron Corp. v. J.P. Morgan Sec., Inc.,*
   388 B.R. 131 (S.D.N.Y. 2008)...........................................................................14

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.,*
   No. 04 Civ. 8177 (RCC),
   2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ...............................................13, 14

*Fed Hous. Fin. Agency v. UBS Americas Inc.,*
   712 F.3d 136 (2d Cir. 2013).......................................................................4, 5, 19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
   No. 03 MDL 1529 (LMM), 05 Civ. 9050, 05 Civ. 9250, 05 Civ. 9285,
   2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)...........................................................22

*In re Colonial Realty Co.,*
   980 F.2d 125 (2d Cir. 1992).............................................................................21

*In re Dana Corp.,*
   379 B.R. 449 (S.D.N.Y. 2007)...................................................................14, 15, 17, 22

*In re Fairfield Cmtys., Inc.,*
   No. LR-M-91-160,
   1992 WL 158642 (E.D. Ark. Apr. 14, 1992) ................................................22, 23

*In re Fed. Home Loan Mort. Corp. Derivative Litig.*,
   643 F. Supp. 2d 790 (E.D. Va. 2009),
   *aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v. FHFA*,
   434 F. App'x 188 (4th Cir. 2011) .................................................................................19

*In re Horizon Air, Inc.*,
   156 B.R. 369 (N.D.N.Y. 1993) ......................................................................................15

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990)...........................................................................................13

*In re Manhattan Inv. Fund Ltd.*,
   343 B.R. 63 (S.D.N.Y. 2006)....................................................................................14, 20

*In re VistaCare Grp., LLC*,
   678 F.3d 218 (3d Cir. 2012)...........................................................................................16

*Koch Supply & Trading LP v. Giddens*,
   484 B.R. 18 (S.D.N.Y. 2012)..........................................................................................22

*Picard v. Avellino*,
   469 B.R. 408 (S.D.N.Y. 2012).........................................................................................22

*Picard v. Fairfield Greenwich Ltd.*,
   486 B.R. 579 (S.D.N.Y. 2013).........................................................................................14

*Picard v. JPMorgan Chase & Co.*,
   454 B.R. 307 (S.D.N.Y. 2011)...................................................................................13, 14

*Picard v. Schneiderman*,
   492 B.R. 133 (S.D.N.Y. 2013).........................................................................................14

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
   No. 96 Civ. 3669 (JGK),
   1997 WL 31194 (S.D.N.Y. Jan. 28, 1997),
   *aff'd*, 138 F.3d 65 (2d Cir. 1998) ..................................................................................18

*Robinson v. Shell Oil Co.*,
   519 U. S. 337 (1997)......................................................................................................16

*United States v. Ron Pair Enters.*,
   489 U.S. 235 (1989).......................................................................................................16

**STATUTES AND OTHER AUTHORITIES:**

12 U.S.C. § 1821(d)(17) ...............................................................................................19, 21

12 U.S.C. § 4501, *et seq.*.............................................................................................. *passim*

iii

12 U.S.C. § 4617(b)(2)(A) ................................................................................5

12 U.S.C. § 4617(b)(2)(B)(ii) ..........................................................................5

12 U.S.C. § 4617(b)(2)(B)(iv) ..........................................................................5

12 U.S.C. § 4617(b)(2)(D)(i) ............................................................................5

12 U.S.C. § 4617(b)(15)(A) ...................................................................... *passim*

12 U.S.C. § 4617(b)(15)(B) ...............................................................10, 11, 17, 18

12 U.S.C. § 4617(b)(15)(D) ..................................................................... *passim*

28 U.S.C. § 157(d) ................................................................................. *passim*

H.R. Rep. No. 109-171, pt. 1 (2005) ...................................................................4

The Federal Housing Finance Agency ("FHFA" or the "Conservator"), as Conservator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4501, *et seq.*, and Freddie Mac, respectfully submit this Memorandum of Law in support of their Motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference to the bankruptcy court of (i) the Motion to Classify and Allow the Claim Filed by the Federal Home Loan Mortgage Corporation (Claim No. 33568) in LBHI Class 3 filed by Lehman Brothers Holdings Inc. ("LBHI"), and (ii) FHFA's and Freddie Mac's Opposition to the Motion to Classify.[1]  As set forth below, this proceeding meets the requirements for mandatory withdrawal of the reference and accordingly must be adjudicated in the district court.

## PRELIMINARY STATEMENT

Pursuant to HERA, a non-bankruptcy federal statute, FHFA, as Conservator of Freddie Mac, and Freddie Mac, are asserting a statutory right to a priority recovery in the amount of over $1.2 billion, on account of a Claim filed by Freddie Mac in the LBHI bankruptcy proceedings (the "HERA Priority Claim").[2]  LBHI's Motion to Classify asserts that the Bankruptcy Code's procedures and priority scheme trump Freddie Mac's and FHFA's rights under HERA.  Because resolution of LBHI's Motion to Classify will require substantial and material consideration of HERA, a federal non-bankruptcy law, and will require significant interpretation of HERA in regard to matters of first impression, withdrawal of the reference as to LBHI's Motion to Classify is mandatory.

---

[1]    References to "Exs." are to the exhibits attached to the accompanying Declaration of Nancy G. Milburn ("Milburn Declaration").  The Motion to Classify is attached as Ex. A, and the Opposition is Ex. B.

[2]    The HERA Priority Claim is attached as Ex. C to the Milburn Declaration.

HERA confers upon FHFA, as Conservator of Freddie Mac, the right to avoid and recover any transfers made or any obligations incurred by a debtor of an entity regulated by FHFA (Freddie Mac being the entity regulated in this case) with the intent to hinder, delay, or defraud such regulated entity.[3]  In addition, HERA expressly makes such rights "superior" to any rights of any other party in a bankruptcy case, including a bankruptcy trustee.  FHFA has asserted these rights under HERA in the LBHI bankruptcy case, seeking, by way of the HERA Priority Claim, to avoid and recover $1.2 billion (plus all accrued interest) that Freddie Mac loaned to LBHI less than one month before the filing of LBHI's Chapter 11 bankruptcy petition. These loans were made based upon information LBHI provided concerning its creditworthiness and ability to repay, which Freddie Mac and FHFA now assert was false, and the repayment of which was made impossible by transfers of funds made by LBHI to third parties with the "intent to hinder, delay, or defraud" Freddie Mac's repayment.  On the establishment of these facts, HERA grants to the Conservator a priority right to recover the $1.2 billion, plus all accrued interest, out of the LBHI bankruptcy estate.

LBHI's Motion to Classify ignores these facts and instead distorts the powers which Congress expressly granted to FHFA and the interplay between HERA and the Bankruptcy Code. The Motion erroneously seeks to classify the HERA Priority Claim as a senior unsecured claim in LBHI's bankruptcy proceeding, rather than as a claim entitled to priority recovery under HERA.  The Motion to Classify also seeks the release of a cash reserve of $1.2 billion that LBHI

---

[3]    The rights of FHFA in this regard are also applicable with respect to any transfers made or obligations incurred by an entity-affiliated party pursuant to Section 4617(b)(15)(A).

expressly agreed to set aside pending resolution of the priority recovery asserted by Freddie Mac

and FHFA in respect of the HERA Priority Claim.[4]

Without disputing that the HERA Priority Claim is a valid claim, *i.e.*, that the

Conservator is owed $1.2 billion plus interest, LBHI asserts without basis that, although HERA

may empower FHFA with a right to recover transfers from third-party transferees, HERA does

not provide a priority recovery against the LBHI bankruptcy estate, and that Congress did not

intend to grant FHFA as Conservator any priority rights in respect of property of a Chapter 11

debtor. LBHI's argument is based upon a misreading of HERA and a mischaracterization of the

relationship between HERA and the Bankruptcy Code.

The Court should withdraw the reference of the Motion to Classify and the Opposition

filed by FHFA and Freddie Mac. Where a proceeding requires substantial consideration of a

federal non-bankruptcy statute, as is clear in this case, then 28 U.S.C. § 157(d) requires

withdrawal of the reference. Resolution of the conflict between the provisions of HERA

governing Freddie Mac's and FHFA's entitlement to a priority recovery on account of the HERA

Priority Claim, on the one hand, and the Bankruptcy Code, on the other hand, is a matter of first

impression and requires substantial and material consideration of HERA. Accordingly, FHFA

and Freddie Mac respectfully request that the Court withdraw the reference of the Motion to

Classify.

---

[4]    The Motion to Classify focuses on two issues of statutory interpretation under HERA and ignores the underlying facts and circumstances of the HERA Priority Claim, including LBHI's inducement of Freddie Mac to make the August Loans (defined below) based on alleged misrepresentations, and with knowledge that it could not repay the August Loans, and LBHI's transfer of funds to third parties with knowledge that such transfers would render it unable to repay Freddie Mac, which actions entitle FHFA to avoid the transactions at issue under Section 4617(b)(15)(A). These underlying facts and circumstances will need to be litigated or otherwise resolved by the parties before there can be a final determination of the HERA Priority Claim.

# BACKGROUND

## A.  The Housing and Economic Recovery Act of 2008

Congress enacted HERA on July 30, 2008, in response to the nationwide economic crisis.[5] HERA created FHFA as an "independent agency of the Federal Government" vested with the responsibility, among other things, of rehabilitating and supervising Freddie Mac, a government-sponsored entity ("GSE") that, at the time HERA was enacted, was anticipated to experience difficulties.[6] Freddie Mac provides liquidity, stability, and affordability to the United States housing market by purchasing mortgage loans and mortgage-related securities for investment, and by pooling mortgages purchased from banks and issuing guaranteed mortgage-related securities to institutional investors.[7] In this regard, Freddie Mac plays a critical role in the mortgage finance market in the United States, and is inextricably interwoven into the nation's financial system.

On September 6, 2008, pursuant to the authority granted under HERA, and after determining that Freddie Mac could not "continue to operate safely and soundly and fulfill [its] critical public mission," the Director of FHFA placed Freddie Mac under the conservatorship of FHFA.[8] As the Second Circuit explained, "Congress . . . created FHFA in response to the housing and economic crisis, precisely because it wanted to address the dire financial condition of . . . Freddie Mac." *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 142 (2d Cir.

---

[5]    *See* Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (2008).

[6]    *See* H.R. Rep. No. 109-171, pt. 1, at 81 (2005).

[7]    *See* Case Study:  Freddie Mac's Unsecured Lending to Lehman Brothers Prior to Lehman Brothers' Bankruptcy; Federal Housing Finance Agency, Office of Inspector General (Mar. 14, 2013) (the "FHFA Report"), at 6 (a copy of the report is attached to the Motion to Classify as Ex. A thereto).

[8]    Statement of FHFA Director James B. Lockhart, at 5 (Sept. 7, 2008), attached to the Milburn Declaration as Ex. D.

2013). Upon being appointed Conservator, FHFA "immediately succeeded to . . . all rights, titles, powers, and privileges of [Freddie Mac]," and was accorded broad powers under HERA to "preserve and conserve the assets and property" of Freddie Mac, to "collect all obligations and money due to the regulated entity," and to "take such action as may be . . . necessary to put [Freddie Mac] in a sound and solvent condition."[9]

Section 4617(b)(15) of HERA grants FHFA, as Conservator, the express power to avoid any transfer made or any obligation incurred by a debtor of Freddie Mac, if such transfer or obligation was made or incurred "with the intent to hinder, delay, or defraud" Freddie Mac or its Conservator, such that the Conservator may recover assets and money on behalf of and for the benefit of Freddie Mac or FHFA.[10] Critically, HERA expressly makes these rights of FHFA "superior" to "any rights of a trustee or any other party" under the Bankruptcy Code, other than another governmental agency.[11] These broad powers granted to FHFA as Conservator, and the concomitant priority right to recover under HERA, are crucial to enabling FHFA to fulfill its purpose and Congressional mandate of preserving and conserving the assets of Freddie Mac.

### B. Freddie Mac's Lending Activities

Freddie Mac collects billions of dollars each month on account of principal and interest payments made by mortgagors, and distributes such funds to holders of mortgages or beneficiaries of the securities backed by such mortgages. Between the time when Freddie Mac receives the applicable principal and interest payments on the underlying mortgages and the time when Freddie Mac is required to distribute such funds to the holders or beneficiaries, Freddie

---

[9]   12 U.S.C. §§ 4617(b)(2)(A), (b)(2)(B)(ii), (b)(2)(B)(iv), and (b)(2)(D)(i).

[10]   *Id.* § 4617(b)(15)(A)-(B).

[11]   *Id.* § 4617(b)(15)(D).

Mac invests the funds in short-term financial instruments, or makes loans to creditworthy

counterparties, with the loans generally repayable immediately prior to the time when Freddie

Mac is required to make payments to the holders or beneficiaries of applicable mortgages or

mortgage-backed securities.

## C. August Loans to LBHI

Between January and August 2008, Freddie Mac made loans ranging from $1 billion to

$1.2 billion to LBHI,[12] which LBHI used to meet its liquidity needs.  Following the collapse of

Bear Stearns in March 2008, credit officers within Freddie Mac raised concerns regarding the

creditworthiness and liquidity of LBHI.[13]  Freddie Mac and FHFA will demonstrate that during

the summer of 2008, LBHI made misrepresentations to Freddie Mac concerning LBHI's

financial health and liquidity position to deceive Freddie Mac into continuing to make loans to

LBHI, and that LBHI had significantly less liquidity than was affirmatively represented to

Freddie Mac.  Moreover, Freddie Mac and FHFA will demonstrate that, at the time of the

incurrence of the subject loans, LBHI knew it was facing a liquidity crisis arising from a loss of

market confidence, making it impossible for LBHI to continue its businesses and satisfy its

funding requirements in the ordinary course.[14]

On August 19, 2008, Freddie Mac loaned LBHI $450,000,000, and on August 20, 2008,

Freddie Mac loaned LBHI another $750,000,000 (collectively, the "August Loans").[15]  Freddie

Mac and FHFA will demonstrate that Freddie Mac made these loans to LBHI based upon

---

[12]    *See* Report of Anton Valukas, Examiner, Mar. 10, 2010 (the "Examiner Report"), at 1952.  The
excerpts of the Examiner Report referred to herein are attached to the Milburn Declaration as Ex. E.

[13]    FHFA Report, at 11.

[14]    *See* Examiner Report, at 10, 645, 717.

[15]    *See id.* at 1952.

LBHI's false assurances about its liquidity and ability to repay, and was kept unaware of the

severe financial crisis and insolvency then facing LBHI, despite direct inquiry of LBHI in this

regard.  The August Loans were short-term unsecured loans between two financial institutions.[16]

The August Loans were scheduled to be repaid on September 15, 2008, on an "early return"

basis—meaning that repayment was required to be completed before the markets opened on

September 15, 2008.[17]

Based on evidence developed by the Examiner and through Freddie Mac's and FHFA's

own investigation, Freddie Mac and FHFA assert that LBHI incurred this $1.2 billion obligation

knowing that it could not repay the August Loans as and when they became due.  The Examiner

Report establishes that, shortly before its obligation to repay Freddie Mac the $1.2 billion came

due, LBHI transferred several billion dollars to third parties, including to financial institutions

such as JPMorgan Chase and Citibank,[18] the result of which, Freddie Mac and FHFA assert

LBHI knew, was to leave LBHI unable to pay its obligations to Freddie Mac as they came due.

On Friday, September 12, 2008, LBHI began to take certain steps required to prepare for

the repayment of the August Loans.  However, the repayment process was inexplicably halted

over the weekend between September 12 and 15, 2008.  During that time, LBHI continued to

withdraw funds from the account used to repay Freddie Mac and to transfer such funds to other

institutions and counterparties,[19] without regard to the fact that, Freddie Mac and FHFA will

assert, it knew its actions would leave insufficient funds available to repay the August Loans on

the morning of September 15, 2008.

---

[16]  *See id.* at 1952, 1954.

[17]  *See* HERA Priority Claim, and the supporting documentation.

[18]  *See generally* Examiner Report, Vols. 4-5.

[19]  *See id.* at 1955 n.7249, and sources cited therein.

### D. Freddie Mac and FHFA Assert Rights Under HERA in the LBHI Bankruptcy

On September 15, 2008, LBHI and certain of its subsidiaries commenced their

Chapter 11 bankruptcy cases.  On September 22, 2009, Proof of Claim No. 33568 was timely

filed asserting entitlement to repayment of the $1.2 billion, plus $2,241,875 on account of

accrued interest.[20]  On the Proof of Claim, Freddie Mac noted "see attached re:

12 USC 4617(b)(15) priority."  In the Addendum to the Proof of Claim, Freddie Mac stated that,

pursuant to 12 U.S.C. § 4617(b)(15)(A), FHFA was entitled to avoid any transfer made "with the

intent to hinder, delay, or defraud" Freddie Mac or FHFA, and that, pursuant to 12 U.S.C. §

4617(b)(15)(D), its "power to avoid a fraudulent transfer is 'superior to any rights of a trustee or

any other party (other than any party which is a Federal agency) under Title 11.'"[21]  The

Addendum further asserted that FHFA, on behalf of Freddie Mac, reserved all its rights pursuant

to its statutory authorization, including rights with regard to any transfer, to the extent such

transfer was made with the intent to hinder or delay the "early return" payment of $1.2 billion to

Freddie Mac on September 15, 2008.[22]

In advance of confirmation of LBHI's Third Amended Plan of Reorganization (the

"Plan"), Freddie Mac and FHFA raised objections directly with counsel to LBHI regarding

confirmation of the Plan because it failed to provide any class for recovery on account of the

over $1.2 billion HERA Priority Claim.  In response, LBHI agreed to amend the definition of

"Priority Non-Tax Claim" in the Plan to include a claim entitled to priority recovery under

---

[20]    *See* HERA Priority Claim.

[21]    *Id.* at ¶ 3.

[22]    *Id.*

HERA.[23]  Freddie Mac and LBHI also entered into a stipulation, so ordered and entered by the

Bankruptcy Court on December 6, 2011 (the "Plan Stipulation") [Docket No. 22998],[24] which

provided for the establishment of a cash reserve in respect of the HERA Priority Claim in the

amount of $1.2 billion to ensure payment on account of such claim to the extent it was ultimately

determined to be entitled to a priority status under HERA, and also expressly reserved all of

FHFA's rights, titles, powers, and privileges under HERA.[25]

On December 6, 2011, LBHI's Plan was confirmed, and the Bankruptcy Court entered an

order confirming the Plan [Docket No. 23023], and so ordered the Plan Stipulation.  The Plan

became effective on March 6, 2012 [Docket No. 26039].

### E.  Statutory Bases of HERA Priority Claim

The HERA Priority Claim is founded upon the priority recovery provided in Section

4617(b)(15) of HERA.  Section 4617(b)(15)(A) provides that FHFA may avoid a transfer made

---

[23]  *See* Third Am. Plan, § 1.127, Ex. A to the Confirmation Order [Docket No. 23023].  An excerpt of
the Plan is attached to the Milburn Declaration as Ex. G.

[24]  A copy of the Plan Stipulation is attached to the Milburn Declaration as Ex. F.

[25]  The Plan Stipulation provides:

> Nothing in this Stipulation, the Third Amended Plan (or any
> amendments, exhibits, supplements, or agreements filed or entered into
> incident thereto, or the confirmation thereof), the Confirmation Order, or
> any other pleadings or documents filed in connection therewith, shall
> affect, limit, enjoin or otherwise prejudice FHFA's rights, titles, powers,
> and privileges under HERA as the Conservator, including, without
> limitation the rights of Fannie Mae and/or Freddie Mac, or FHFA as
> Conservator thereof, to seek priority status and recovery in respect of the
> [priority claims of Fannie Mae and Freddie Mac], and nothing in the
> Third Amended Plan or Confirmation Order shall be construed to restrain
> or limit any applicable regulatory or enforcement action that may be
> taken by FHFA, or to confer exclusive jurisdiction of the Bankruptcy
> Court over matters in respect of Fannie Mae, Freddie Mac, or FHFA as
> Conservator thereof.

Plan Stipulation, ¶ 4.

- 9 -

or an obligation incurred, to the extent that it was intended to hinder, delay, or defraud the

Conservator or its regulated entity:

> The Agency, as conservator or receiver, *may avoid a transfer* of
> any interest of an entity-affiliated party, or any person determined
> by the conservator or receiver to be a debtor of the regulated entity,
> in property, *or any obligation incurred* by such party or person,
> that was made within 5 years of the date on which the Agency was
> appointed conservator or receiver, if such party or person
> voluntarily or involuntarily made such transfer or incurred such
> liability *with the intent to hinder, delay, or defraud* the regulated
> entity, the Agency, the conservator, or receiver.

12 U.S.C. § 4617(b)(15)(A) (emphases added).

Pursuant to Section 4617(b)(15)(D), the Conservator's rights under Section 4617(b)(15)

—including the right to avoid any transfers made or any obligations incurred under Section

4617(b)(15)(A) and to recover in the amount of the avoided debt or transaction—are superior to

any rights of any party in a bankruptcy proceeding, including a trustee:

> The rights under this paragraph of the conservator or receiver
> described under subparagraph (A) shall be superior to any rights of
> a trustee or any other party (other than any party which is a Federal
> agency) under title 11.

12 U.S.C. § 4617(b)(15)(D).

In addition, if a prohibited transfer made by a debtor of a regulated entity is avoided

under Section 4617(b)(15)(A), HERA grants FHFA the additional right to seek recovery of the

value of such property under Section 4617(b)(15)(B) directly from the initial transferee of such

transfer, or any immediate or mediate transferee of such initial transferee.[26]

---

[26]    12 U.S.C. § 4617(b)(15)(B) provides:

> To the extent a transfer is avoided under subparagraph (A), the
> conservator or receiver may recover, for the benefit of the regulated
> entity, the property transferred, or, if a court so orders, the value of such
> property (at the time of such transfer) from (i) the initial transferee of

The Conservator's claim for priority recovery under HERA is based on two theories. *First*, on August 19 and 20, 2008, when LBHI borrowed $1.2 billion from Freddie Mac, it knew it was insolvent such that it would be unable to repay the August Loans on September 15, 2008.[27] In accepting the August Loans under these pretenses, LBHI incurred obligations to Freddie Mac to repay the August Loans "with the intent to hinder, delay, or defraud" Freddie Mac. FHFA is thus entitled to avoid the incurrence of the obligation by LBHI and to recover the $1.2 billion, plus interest accrued to date. This statutory right of recovery vested in the Conservator is superior to "any right" of any party, including any party in a bankruptcy proceeding. *Second*, in the days and weeks immediately preceding LBHI's bankruptcy filing, unbeknownst to Freddie Mac or FHFA, LBHI made transfers of billions of dollars in liquidity to its banks and to a non-debtor affiliate. To the extent LBHI made these transfers with knowledge that it was then insolvent, or that in making the transfers it would be rendered insolvent (which LBHI appears to acknowledge in pleadings filed in separate adversary proceedings against JP Morgan Chase and Citibank in the Chapter 11 Cases),[28] such that the transfers would render LBHI unable to repay the August Loans when due, then LBHI intentionally hindered, delayed, or defrauded Freddie Mac and the Conservator in the repayment of the August Loans.

---

such transfer or the entity-affiliated party or person for whose benefit
such transfer was made; or (ii) any immediate or mediate transferee of
any such initial transferee.

[27]  Freddie Mac and FHFA will demonstrate that as inducement for Freddie Mac to continue providing loans to LBHI, LBHI misrepresented its financial health and stability to Freddie Mac during the summer of 2008.

[28]  *See* First Am. Compl. at ¶¶ 52, 54, *Lehman Brothers Holdings Inc. v. Citibank, N.A.*, Adv. Pr. No. 12-01044-JMP (Bankr. S.D.N.Y. Nov. 16, 2012) [Docket No. 13]; *see also* First Am. Compl. at ¶¶ 29-30, 60, 66, *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank*, N.A., Adv. Pr. No. 10-03266-JMP (Bankr. S.D.N.Y. Sept. 15, 2010) [Docket No. 19].

Accordingly, FHFA asserts that it is entitled to avoid the incurrence of the August Loans and the subject transfers, and that its rights are superior to the rights of all other creditors.

## F. **LBHI's Motion to Classify**

On September 13, 2013, LBHI filed its Motion seeking to classify and allow the HERA Priority Claim as a senior unsecured claim, rather than as a claim entitled to a priority recovery under HERA, as asserted in the HERA Priority Claim. The Motion to Classify asserts that Section 4617(b)(15)(D), despite its explicit language, does not grant Freddie Mac and FHFA any right to a priority recovery because HERA does not alter or affect the priority rights of creditors under the Bankruptcy Code. LBHI argues further that even if Freddie Mac and FHFA were entitled to a priority recovery under HERA, they would be barred from recovery from the LBHI bankruptcy estate because, under HERA, FHFA may only avoid transfers made by LBHI to third-party transferees with the intent to hinder, delay, or defraud, and may recover on such transfers only from such third party transferees. Mot. to Classify, pp. 9-10. LBHI mischaracterizes the text, meaning, and the intent of the HERA statute.

FHFA and Freddie Mac have filed in the Bankruptcy Court their Opposition to LBHI's Motion to Classify and a motion for a stay pending a determination of this Motion to Withdraw the Reference. The Opposition demonstrates that the plain language of HERA expressly grants a priority right of recovery in the LBHI bankruptcy proceeding and that HERA authorizes FHFA, as Conservator of Freddie Mac, to recover directly from LBHI, with respect to any property transferred and/or any obligations incurred, with the intent to hinder, delay, or defraud Freddie Mac or its Conservator.

- 12 -

## ARGUMENT

**THIS PROCEEDING IS SUBJECT TO MANDATORY WITHDRAWAL OF THE REFERENCE**

### A. Withdrawal of the Reference Is Mandatory when a Proceeding Requires Substantial and Material Consideration of Federal Non-Bankruptcy Law

Section 157(d) of Title 28 provides for mandatory withdrawal of the reference to the Bankruptcy Court:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. *The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.*

28 U.S.C. § 157(d) (emphasis added).

Section 157(d) requires withdrawal of the reference "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (internal quotation marks and citations omitted); *see also City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (requiring mandatory withdrawal where a court must "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes"). Courts have withdrawn the reference in cases that would require the bankruptcy judge to engage in "'more than routine application of [federal laws] outside the Bankruptcy Code.'" *Picard v. JPMorgan Chase & Co.*, 454 B.R. 307, 315 (S.D.N.Y. 2011) (quoting *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004)).

Under the mandatory withdrawal provision, "the district court is not required to find that novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference." *Enron Corp. v. J.P. Morgan Sec., Inc.*, 388 B.R. 131, 139 (S.D.N.Y. 2008); *accord Enron Power Mktg.*, 2004 WL 2711101, at *2. However, where, as here, "'matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.'" *Chemtura Corp. v. United States*, No. 10 Civ. 503 (RMB), 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (quoting *In re Manhattan Inv. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) (citations omitted)); *see also Picard v. Fairfield Greenwich Ltd.*, 486 B.R. 579, 582 (S.D.N.Y. 2013).

In determining whether to withdraw the reference, courts do not need to "evaluate the merits of the parties' positions." *Bear, Stearns Sec. Corp. v. Gredd*, No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001). Instead, "the test . . . is whether, at the time of withdrawal, it appears that the proceeding will involve 'substantial and material consideration' of federal non-bankruptcy law." *Picard v. Schneiderman*, 492 B.R. 133, 137 (S.D.N.Y. 2013); *see also JP Morgan Chase & Co.*, 454 B.R. at 312. Thus, courts have found the test of whether consideration is "substantial and material" has been met "where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code." *See, e.g.*, *In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007).

"Section 157(d) reflects Congress's perception that specialized courts should be limited in their control over matters outside their areas of expertise," and also assures parties that the interpretation of non-bankruptcy law "will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and [is] 'better equipped to determine them than are bankruptcy

- 14 -

judges.'" *AT&T Co. v. Chateaugay Corp.*, 88 B.R. 581, 583-84 (S.D.N.Y. 1988) (citations

omitted); *accord In re Dana Corp.*, 379 B.R. at 458 & n.66 (stating, in the context of a CERCLA

claim objection, that mandatory withdrawal was warranted where the bankruptcy court would be

required "to engage in careful and significant consideration of . . . a statute 'outside its realm of

expertise,' and to apply it to a complex body of facts") (quoting *In re Horizon Air, Inc.*, 156 B.R.

369, 374 n.5 (N.D.N.Y. 1993)).

### B. LBHI's Motion to Classify Requires Substantial and Material Consideration of HERA

The issues raised in LBHI's Motion to Classify the HERA Priority Claim, described more

fully below, will require substantial and material consideration of HERA and, in particular, will

require a court to interpret the special statutory powers Congress granted to the Conservator to

allow it to fulfill its statutory mission to conserve and protect the assets of Freddie Mac. In

addition to withdrawal of the reference being mandatory, withdrawal is particularly appropriate

here, as the scope and effect of Section 4617(b)(15) present issues of first impression as to which

there is little case authority.

#### i. A Court Will Be Required to Determine the Effect of HERA's Grant of Superior Rights to FHFA upon the Priority Scheme under the Bankruptcy Code

In its Motion to Classify, LBHI argues that "nothing in subparagraphs (A)-(D) [of

Section 4617(b)] elevates claims asserted by the Conservator to priority status in a chapter 11

case . . . . " Mot. to Classify, at ¶ 22. LBHI contends that Section 4617(b)(15)(D) does not

provide for a priority recovery in LBHI's bankruptcy proceedings because "[c]laims based on the

Conservator's avoidance powers are not listed" in the Bankruptcy Code. Mot. to Classify, ¶ 20.

LBHI's argument fails because it overlooks the plain language of the statute. As the

United States Supreme Court has stated, in all cases requiring that a court construe a statute, "we

- 15 -

begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).

"The first step 'is to determine whether the language at issue has a plain and unambiguous

meaning with regard to the particular dispute in the case.'" *Id.* (quoting *Robinson v. Shell Oil

Co.*, 519 U. S. 337, 340 (1997)). The inquiry ceases "if the statutory language is unambiguous

and 'the statutory scheme is coherent and consistent.'" *Id.*; *see also United States v. Ron Pair

Enters.*, 489 U.S. 235, 240 (1989).

Here, Section 4617(b)(15)(A) expressly grants to FHFA the right to avoid transfers made

or obligations incurred by LBHI with the intent to defraud Freddie Mac or FHFA, and, by its

plain terms, Section 4617(b)(15)(D) requires that FHFA's rights to avoid and recover property

(or its equivalent) not be subordinate to any other competing rights in a bankruptcy proceeding.

In their Opposition, FHFA and Freddie Mac demonstrate that LBHI's reading of Section

4617(b)(15)(D) is contrary to the statutory language, and that in enacting HERA, including its

express provision granting the Conservator rights that are "superior to any rights of a trustee or

any party" under title 11, Congress can be presumed to have been well aware of the Bankruptcy

Code and the priority scheme of Section 507 of the Bankruptcy Code. *See In re VistaCare Grp.,

LLC*, 678 F.3d 218, 226 (3d Cir. 2012) (stating that "[w]hen Congress enacts legislation, it is

presumed to act with knowledge of the 'existing law and judicial concepts'" (citation omitted)).

Indeed, the text of subparagraph (D) makes clear that Congress intended that the superior rights

granted to the Conservator in a bankruptcy case be given full effect, notwithstanding competing

rights asserted by parties under Section 507 of the Bankruptcy Code, or otherwise.[29]

---

[29]   LBHI even acknowledged the co-existence of the priority rights of recovery that exist under Section
507 of the Bankruptcy Code and the Conservator's priority rights under HERA by amending the Plan to
specifically include all of such rights, together, under the definition of "Priority Non-Tax Claim." Thus,
the Plan's definition of "Priority Non-Tax Claim" includes a valid claim under HERA.

To resolve this dispute, a court will have to interpret the provisions of Section

4617(b)(15)(A) and (D) and determine whether, as LBHI argues, the priority right of the

Conservator asserted therein is a nullity because claims based on the Conservator's avoidance

powers are not listed as a claim entitled to a priority in Section 507 of the Bankruptcy Code, or

whether, in enacting Section 4617(b)(15) and the express provision granting the Conservator

"superior" rights in subparagraph (D), Congress intended that the superior rights would be

interpreted to grant the Conservator a priority recovery over and above the rights of any other

parties, including in a bankruptcy proceeding.  Resolving this alleged conflict between the

Bankruptcy Code and HERA over the scope of the authority granted by Congress to the

Conservator will require precisely the type of "substantial and material consideration" of a

federal non-bankruptcy statute that courts hold must be undertaken by an Article III judge.  *See*

*In re Dana Corp.*, 379 B.R. at 459 (withdrawal of the reference required where there was

"arguably" a conflict between CERCLA and the Bankruptcy Code); *Gredd*, 2001 WL 840187, at

*4 (withdrawing the reference to address, in part, the provisions of Section 546(e) of the

Bankruptcy Code that "arguably conflicts with other federal regulations in this area").

     **ii.    A Court Will Be Required to Determine Whether HERA Entitles FHFA
          To a Priority Recovery From the LBHI Bankruptcy Estate**

LBHI's Motion to Classify also argues that HERA merely gives the Conservator the right

to avoid transfers made by LBHI to third party transferees and to recover such transfers from the

transferees to the extent that such transfers were made with the intent to hinder, delay, or defraud

a regulated entity, and that HERA does not give FHFA the right to recover against the property

of the LBHI estate.  LBHI's argument is based on a misreading of Section 4617(b)(15)(B) of

HERA—which is an explicitly permissive subparagraph that allows FHFA to recover transfers

from third-party transferees. LBHI argues, without reference to any authority, that Section 4617(b)(15)(B) limits FHFA to recovery "only" from such transferees.

To the contrary, Section 4617(b)(15)(A) provides broad authority to FHFA to avoid and recover transfers made or obligations incurred by *any* counterparty of Freddie Mac who acted with the intent to hinder, delay, or defraud Freddie Mac or its Conservator. That would include LBHI, or in this case, its bankruptcy estate. Far from limiting FHFA's rights, Section 4617(b)(15)(B) expands FHFA's authority further, by providing that FHFA "may" also recover transfers from third-party transferees of a debtor of Freddie Mac who may have improperly received transferred assets or funds. Thus, the language of Section 4617(b)(15)(B) is permissive, not mandatory—it does not provide that FHFA "shall" or "shall only" recover from third-party transferees of a debtor of the regulated entity.

LBHI's interpretation of HERA would render meaningless FHFA's rights under Section 4617(b)(15)(A), as well as FHFA's superior right to recover on account of any avoidance under Section 4617(b)(15)(D), since, if a person defrauded a regulated entity but kept the ill-gotten gains and never transferred the funds to a third party, limiting FHFA to recovery solely from transferees would leave the Conservator without a remedy to recover such funds on a priority basis. A statute should not be construed in a manner that renders portions of the statute "meaningless." *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, No. 96 Civ. 3669 (JGK), 1997 WL 31194, at *3 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65 (2d Cir. 1998).

In order to determine the scope of FHFA's superior rights in this regard, and to resolve the apparent conflict between such rights and the competing interests of parties to the LBHI bankruptcy under the Bankruptcy Code, the Court must engage in significant interpretation of Subsections 4617(b)(15)(A), (B) and (D) of HERA.

### iii.    Withdrawal of the Reference Is Particularly Appropriate in View of the Lack of Case Authority Analyzing HERA Section 4617(b)(15)

In deciding these issues raised in the Motion to Classify, a court will have minimal guidance from prior case law.  There are no reported decisions directly analyzing the scope or nature of FHFA's rights under Section 4617(b)(15).  Courts have addressed other aspects of HERA, including the anti-injunction provision, and have consistently construed the statute broadly, recognizing the special powers accorded to FHFA under HERA to take all action necessary to preserve and conserve the assets of Freddie Mac.[30]  In addition, 12 U.S.C. § 1821(d)(17), a bank regulatory statute granting authority to the Federal Deposit Insurance Corporation ("FDIC") in its role as a bank receiver, contains a fraudulent transfer provision with language that is virtually identical to the language of Section 4617(b)(15); thus, case law under that provision will provide guidance to the Court in interpreting Section 4617(b)(15).[31]  However, the issues raised here, in regard to FHFA's authority under HERA, will be matters of first impression for any court, and the court that decides these issues will have to undertake an

---

[30]  *See, e.g., UBS Americas Inc.*, 712 F.3d at 138-41 ("Congress created FHFA as an 'independent agency of the Federal Government,' and conferred upon FHFA broad power to appoint itself conservator or receiver of the GSEs, and to 'take such action as may be . . . necessary to put the [GSEs] in a sound and solvent condition; and appropriate to carry on the business of the [GSEs] and preserve and conserve [their] assets and property.'  Congress specifically authorized FHFA, as conservator or receiver, to 'collect all obligations and money due the [GSEs].'")

[31]  Indeed, courts that have analyzed other provisions relating to FHFA's authority and obligations under HERA have relied on cases invoking similar or identical provisions of FIRREA.  *See, e.g., UBS Americas Inc.*, 712 F.3d at 142 n.2 ("In drawing on FIRREA's language, Congress intended for § 4617(b)(12) of HERA to serve a similar purpose with respect to FHFA."); *In re Fed. Home Loan Mort. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009) ("[T]he Court is persuaded by decisions that have reached the same conclusion when interpreting [FIRREA], whose provisions regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA."), *aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011).

independent analysis of HERA.  This lack of direct authority under HERA to guide a court's analysis lowers the burden of establishing FHFA's right to mandatory withdrawal.[32]

      A court's analysis of FHFA's avoidance and recovery powers under HERA cannot be informed by authority under the fraudulent transfer provisions under Sections 548(a) and 550 of the Bankruptcy Code because while a bankruptcy trustee is authorized to avoid transfers and obligations incurred by the bankruptcy debtor that it administers, FHFA is authorized to avoid transfers and obligations incurred by a debtor of a regulated entity such as Freddie Mac.  When a bankruptcy trustee avoids an obligation incurred by a debtor, that obligation is cancelled and the debtor is no longer obligated on the debt.  With respect to FHFA's power under HERA to avoid an obligation incurred by a debtor of Freddie Mac with the intent to hinder, delay, or defraud, to simply cancel such obligation, such as LBHI's incurrence of the obligation to repay the August Loans, without requiring the return of the wrongfully obtained funds on a priority basis, would be inapposite of the superior rights that HERA grants to FHFA.  Moreover, the fundamental purpose of any statute that provides such remedies is to return the wronged party to the position it was in before the prohibited conduct occurred, and gives rise to a claim to that effect.  To the extent such prohibited conduct is perpetrated against a regulated entity, such as Freddie Mac, Section 4617(b)(15)(D) elevates the right of recovery on account of such conduct to a priority status as against other creditors.  Thus, if LBHI intended to hinder, delay, or defraud Freddie Mac in connection with the incurrence of the August Loans, HERA mandates that LBHI must repay Freddie Mac and FHFA the $1.2 billion, plus interest thereon, on a priority basis in order to return Freddie Mac to its status before LBHI incurred such obligations.

---

[32]    *See, e.g., Fairfield Greenwich Ltd.*, 486 B.R. at 582; *Chemtura Corp.*, 2010 WL 1379752, at *1; *In re Manhattan Inv. Fund Ltd.*, 343 B.R. at 67.

### iv.    Withdrawal of the Reference is Consistent with Applicable Law Within the Second Circuit

Withdrawal of the reference in this case is consistent with applicable authority in the Second Circuit.  In a case involving a conflict between a similar transfer provision in another federal non-bankruptcy statute, 12 U.S.C. § 1821(d)(17), and the Bankruptcy Code, the Second Circuit recognized that the reference should have been withdrawn to the district court.  In *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992), the court considered whether the FDIC's pursuit of fraudulent conveyance claims as Conservator under FIRREA had violated the automatic stay.  The court stated that, "[a]lthough the issue is moot at this juncture, it would appear that the FDIC's motion [to withdraw the reference] should have been granted, pursuant to § 157(d), in view of the FDIC's timely motion and the asserted conflict between provisions of the Bankruptcy Code and other federal statutes." *Id.* at 128 n.5.

That LBHI's Motion to Classify raises a dispute over the classification of a claim in a bankruptcy proceeding does not render withdrawal of the reference any less mandatory where the resolution of that dispute will require the material and substantial consideration of non-bankruptcy federal law.  *See, e.g., Exxon*, 932 F.2d at 1026 (noting that proceedings "must be withdrawn under § 157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce," and that the mandatory withdrawal standard does not depend on whether such proceeding falls within the bankruptcy court's "core" or "non-core" jurisdiction or whether it relates to the "allowance or disallowance of claims"); *Chateaugay Corp.*, 88 B.R. at 587-88 (finding withdrawal of reference mandatory to address, *inter alia*, a contribution claim brought against the debtors under CERCLA in an adversary proceeding because resolution of the claim—which implicated issues under the Bankruptcy Code concerning, among other things, the dischargeability and priority of the claim—would "require

- 21 -

significant interpretation of CERCLA and consideration of the ways in which the values of

environmental preservation it was enacted to protect can be reconciled with the familiar concerns

of the Bankruptcy Code").

Indeed, in the context of bankruptcy-related claims disputes and insolvency proceedings

involving the consideration and interpretation of federal non-bankruptcy statutes, courts have

repeatedly found that mandatory withdrawal of the reference is required. *See, e.g., In re Dana,*

379 B.R. at 457-62 (withdrawing the reference related to the debtors' objection to the

Government's proofs of claim and the debtors' motion for an order establishing procedures to

estimate those claims on the basis that such claim proceedings would require significant

consideration, interpretation, and application of CERCLA and would require a court to "confront

the conflict between the underlying goals of CERCLA and those of the Bankruptcy Code"); *In re*

*Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 05 Civ. 9050, 05

Civ. 9250, 05 Civ. 9285, 2006 WL 337667, at *1-*3 (S.D.N.Y. Feb. 10, 2006) (withdrawing the

reference in adversary proceedings brought by the Unsecured Creditors' Committee against

Adelphia's commercial lenders related to claims brought under RICO and the Bank Holding

Company Act); *see also Koch Supply & Trading LP v. Giddens*, 484 B.R. 18, 25 (S.D.N.Y.

2012) (concluding that withdrawal of the reference was mandatory where resolution of the

adversary proceeding "necessitate[d] significant interpretation of 17 C.F.R. § 190.08(a)(1)(i)(E),

a non-bankruptcy federal law that regulates interstate commerce" in that the CFTC's definition

of "customer property" conflicted with the definition set forth in Section 761(10) of the

Bankruptcy Code); *Picard v. Avellino*, 469 B.R. 408, 412 (S.D.N.Y. 2012) (concluding that

withdrawal of the reference was mandatory to address, *inter alia*, how securities laws affect the

"good faith" standard under the Bankruptcy Code's fraudulent transfer provisions); *In re*

*Fairfield Cmtys., Inc.*, No. LR-M-91-160, 1992 WL 158642, *2 (E.D. Ark. Apr. 14, 1992)

(withdrawing the reference to address the debtor's objection to a class proof of claim because

resolving the claim would "require substantial and material consideration of securities law").

## CONCLUSION

For the foregoing reasons, FHFA and Freddie Mac respectfully request that the Court grant their motion for withdrawal of the reference to the Bankruptcy Court of LBHI's Motion to Classify the HERA Priority Claim as a senior unsecured claim and the Opposition of FHFA and Freddie Mac to the Motion to Classify, and grant such other relief as the Court may deem just and proper.

Dated:  New York, New York
       October 18, 2013

   /s/ Michael J. Canning
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399

*Attorneys for the Federal Housing Finance Agency
as Conservator of the Federal Home Loan
Mortgage Corporation*

   /s/ Mark S. Landman
Mark S. Landman
LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York  10271
Telephone:  (212) 238-4800
Facsimile:  (212) 238-4848

*Attorneys for the Federal Home Loan Mortgage
Corporation*