ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn

*Attorneys for the Federal Housing Finance Agency as
Conservator of the Federal Home Loan Mortgage Corporation*

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848
Mark S. Landman

*Attorneys for the Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 Case No. 08-13555 (JMP) |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., | : |
| *et al.*, | : Jointly Administered |
| Debtors. | : |
| | : |

**MOTION OF THE FEDERAL HOUSING FINANCE AGENCY AND THE FEDERAL
HOME LOAN MORTGAGE CORPORATION TO STAY LEHMAN BROTHERS
HOLDINGS INC.'S MOTION TO CLASSIFY AND ALLOW THE CLAIM FILED
BY THE FEDERAL HOME LOAN MORTGAGE CORPORATION
<u>(CLAIM NO. 33568) IN LBHI CLASS 3</u>**

The Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), under the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4501, *et seq.*, and Freddie Mac, hereby move this Court (the "Stay Motion"), pursuant to Rule 5011(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 5011-1, for the entry of an order staying consideration of the *Motion to Classify and Allow the Claim Filed by the Federal Home Loan Mortgage Corporation (Claim No. 33568) in LBHI Class 3* (the "Motion to Classify")[1] filed by Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), in the Bankruptcy Court on September 13, 2013 [Docket No. 40066], pending consideration of FHFA's and Freddie Mac's motion to withdraw the reference (the "Motion to Withdraw the Reference")[2] to the Bankruptcy Court so as to be heard by the United States District Court for the Southern District of New York (the "District Court").  In support of this Stay Motion, FHFA and Freddie Mac respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      By this Stay Motion, FHFA and Freddie Mac respectfully request that the Bankruptcy Court exercise its equitable powers to issue a stay, pursuant to Bankruptcy Rule 5011(c), of any matters relating to the Motion to Classify, pending the District Court's decision on the Motion to Withdraw the Reference.  Specifically, FHFA and Freddie Mac

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in FHFA's and Freddie Mac's Opposition to the Motion to Classify (the "Opposition") [Docket No. 40550].

[2]     A copy of the Memorandum in Support of the Motion to Withdraw the Reference, which is being filed simultaneously with this Stay Motion, is attached hereto as Exhibit A.

request that the Bankruptcy Court stay any proceedings against FHFA and Freddie Mac concerning, *inter alia*, (i) the Motion to Classify regarding the priority treatment of the HERA Priority Claim (defined below), which claim relates to two unpaid loans that aggregate approximately $1.2 billion, plus interest thereon, that LBHI failed to repay Freddie Mac prior to the commencement of the Chapter 11 Cases, and (ii) the release of the cash reserve of $1.2 billion that is currently being held in a separate account pursuant to the Plan Stipulation (defined below).

2.     LBHI has styled its objection to the priority treatment asserted under HERA as a "Motion to Classify," and has made unsupported assertions of law and fact in order to mask the well-founded factual and statutory basis for the HERA Priority Claim. The issues raised in the Motion to Classify and the Opposition require the interpretation of Section 4617(b)(15) of HERA—specifically, whether Freddie Mac and FHFA are entitled to a priority recovery under Section 4617(b)(15)(D) of HERA from the LBHI bankruptcy estate in respect of the HERA Priority Claim. Therefore, because the issues raised in LBHI's Motion to Classify and the Opposition require significant interpretation of Section 4617(b)(15) of HERA, a non-bankruptcy federal statutory provision that has never been analyzed by another federal court, withdrawal of the reference is mandatory pursuant to 28 U.S.C. § 157(d).

3.     A stay of LBHI's Motion to Classify is appropriate because, *inter alia*, (i) FHFA's and Freddie Mac's pending Motion to Withdraw the Reference is likely to be successful, in view of the significant and novel federal non-bankruptcy law issues that the Motion to Classify and the Opposition raise; (ii) considerations of judicial economy counsel in favor of permitting the District Court to determine the Motion to Withdraw the Reference prior to consideration of LBHI's Motion to Classify; (iii) LBHI will not be prejudiced by a stay

pending the outcome of the Motion to Withdraw the Reference; and (iv) consideration by the

Bankruptcy Court of LBHI's Motion to Classify while the Motion to Withdraw the Reference is

pending before the District Court will be harmful and prejudicial to FHFA and Freddie Mac.

## BACKGROUND AND FACTS[3]

4.    Freddie Mac is a government-sponsored enterprise that provides liquidity,

stability, and affordability to the United States housing market by purchasing mortgage loans and

mortgage-related securities for investment, and by pooling mortgages purchased from banks and

issuing guaranteed mortgage-backed securities to institutional investors.  In this regard, Freddie

Mac plays a critical role in the mortgage finance market in the United States, and is inextricably

interwoven into the nation's financial system.

5.    On September 6, 2008, pursuant to the authority granted under HERA, the

Director of FHFA placed Freddie Mac under the conservatorship of FHFA.  Upon being

appointed Conservator, FHFA "immediately succeeded to . . . all rights, titles, powers, and

privileges of [Freddie Mac]," and was accorded broad powers under HERA to "preserve and

conserve the assets and property" of Freddie Mac, to "collect all obligations and money due to

the regulated entity," and to "take such action as may be . . . necessary to put [Freddie Mac] in a

sound and solvent condition."[4]

6.    In enacting HERA, Congress gave FHFA, as Conservator of Freddie Mac, the

right to avoid and recover not only any transfer of property, but also the incurrence of any

obligation, in each case to the extent that such transfer was made or such obligation was incurred

by an entity that is a debtor of a regulated entity with the intent to hinder, delay, or defraud the

---

[3]    For a fuller discussion of the background and facts relating to the HERA Priority Claim, *see* pp. 6-14 of the Opposition.

[4]    12 U.S.C. §§ 4617(b)(2)(A), (b)(2)(B)(ii), (b)(2)(B)(iv), and (b)(2)(D)(i).

regulated entity or FHFA.[5]  Under the express language of HERA, this right is "superior" to the "rights of a trustee or any other party" under Title 11.  *See generally* 12 U.S.C. § 4617(b)(15).

7.    On September 15, 2008, LBHI and certain affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, as amended, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the Bankruptcy Court (the "Chapter 11 Cases").

8.    Thereafter, on September 22, 2009, Proof of Claim No. 33568 in the amount of $1,202,241,875 (the Proof of Claim form, together with the Addendum attached thereto, the "HERA Priority Claim") was timely filed by Freddie Mac in respect of two separate transactions that occurred in mid-August 2008, whereby Freddie Mac transferred funds totaling $1.2 billion (the "August Loans") to LBHI.

9.    As more specifically set forth in the HERA Priority Claim, in addition to asserting the $1.2 billion claim amount, together with interest thereon, the HERA Priority Claim asserted a priority right to recovery under HERA.  Specifically, on the Proof of Claim itself, in paragraph 5, Freddie Mac noted, "see attached re:  12 USC 4617(b)(15) priority," and in the Addendum to the Proof of Claim, Freddie Mac stated, "the Conservator, on behalf of Freddie Mac, reserves all its rights pursuant to its statutory authorization, including with respect to the transfer of any property in which [LBHI] had an interest to the extent such transfer was made with the intent to hinder or delay the 'early return' payment of the $1.2 billion due and owing to Freddie Mac on September 15, 2008, for which claim is made hereunder, with any recovery on account of such claim being entitled to a priority recovery under Section 4617(b)(15)(D)." [6]

---

[5]    The rights of FHFA in this regard are also applicable with respect to any transfers made or obligations incurred by an entity-affiliated party pursuant to Section 4617(b)(15)(A).

[6]    Proof of Claim, at § 3.

10.    On or about August 31, 2011, the Debtors filed the Plan and a related disclosure statement (the "Disclosure Statement"). Freddie Mac, together with FHFA, as Conservator thereof, had previously raised objections to the Disclosure Statement and the Plan directly with counsel to the Debtors. With respect to the Disclosure Statement, after considerable discussions among counsel to each of the Debtors, Freddie Mac and FHFA, the parties agreed, *inter alia,* on language to be included in the Disclosure Statement addressing the HERA Priority Claim and the associated priority being asserted with respect thereto. As to the Plan, in order to resolve Freddie Mac's and FHFA's objection that the failure to provide treatment for a validly asserted priority claim could result in the non-confirmability of the Plan, the Debtors agreed to amend the definition of "Priority Non-Tax Claim"[7] in the Plan so as to provide that any claim entitled to a priority under HERA would receive payment of 100% under the Plan.

11.    At the hearing on the confirmation of the Plan, on December 6, 2011, the Court "so ordered" a stipulation (the "Plan Stipulation") regarding, *inter alia,* the treatment of the HERA Priority Claim and the establishment of a cash reserve in the amount of $1.2 billion to secure the HERA Priority Claim [Docket No. 22998]. In addition, the Plan Stipulation also fully reserved all of the statutory rights, titles, powers, and privileges of FHFA under HERA.

12.    On September 13, 2013, LBHI filed the Motion to Classify seeking to classify and allow the HERA Priority Claim as a senior unsecured claim, rather than as a priority claim entitled to a priority recovery under HERA. In the Motion to Classify, LBHI does not dispute that the HERA Priority Claim is a valid claim. Instead, LBHI seeks only: (i) a determination by this Court that the HERA Priority Claim is not entitled to a priority recovery, or if it is entitled to

---

[7]    The amended definition of "Priority Non-Tax Claim[s]" in the Plan "means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code *or under 12 U.S.C. § 4617(b)(15)*." (emphasis added). Third Am. Plan, §1.127, Ex. A to the Confirmation Order [Docket No. 23023].

a priority recovery, such recovery is limited to the right to recover from transferees of LBHI; and (ii) authority to release the $1.2 billion cash reserve that LBHI agreed to set aside pursuant to the Plan Stipulation pending resolution of the priority recovery asserted by Freddie Mac and FHFA under HERA in respect of the HERA Priority Claim.

13.    In connection with the filing of this Stay Motion, FHFA and Freddie Mac filed the Opposition to LBHI's Motion to Classify, wherein FHFA and Freddie Mac demonstrate that if LBHI incurred the August Loans or failed to timely repay such amount, in either case with the intent to hinder, delay, or defraud Freddie Mac or FHFA, then HERA expressly grants FHFA the power to avoid the incurrence of such obligations or any transfers made in respect thereof, and, pursuant to Section 4617(b)(15)(D), a priority recovery in respect of any such obligation or transfer avoided under Section 4617(b)(15)(A). The Opposition also demonstrates that the $1.2 billion cash reserve set aside pursuant to the Plan Stipulation was intended by the parties to secure Freddie Mac's and FHFA's potential recovery in respect of the HERA Priority Claim, and any release of such reserve prior to the final determination of the priority recovery asserted by Freddie Mac and FHFA would impose irreparable harm and prejudice to Freddie Mac and FHFA.

## ARGUMENT

### THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE MOTION TO STAY PENDING A DECISION ON THE MOTION TO WITHDRAW THE REFERENCE

**A.    The Bankruptcy Court Has Discretion to Stay These Proceedings, Pending Determination of the Motion to Withdraw the Reference**

14.    Bankruptcy Rule 5011(c) provides, in relevant part, that "the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of [a] motion [to withdraw the reference]." Fed. R. Bankr. P. 5011(c).

15.    In considering a motion to stay pursuant to Bankruptcy Rule 5011(c) pending a decision by the district court on a motion to withdraw the reference, courts follow "the same standards as any motion for stay." *See* 9-5011 Collier on Bankruptcy P. 5011.03[2][b]; *see also Eagle Enters., Inc. v. Vigilant Ins. Co.*, 259 B.R. 83, 86-87 (Bankr. E.D. Pa. 2001). Specifically, courts consider whether the movant has demonstrated the following: "the likelihood of prevailing on the merits, *i.e.*, that the pending motion will be granted; that movant will suffer irreparable injury if the stay is denied; that the other party will not be substantially harmed by the stay; and that the public interest will be served by granting the stay." *Id.*[8]

16.    As set forth below, because each of the elements for granting the stay requested herein is satisfied, FHFA and Freddie Mac respectfully submit that the Court should stay determination of the Motion to Classify pending the District Court's resolution of the Motion to Withdraw the Reference.

---

[8]    *Cf. In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 688 (S.D.N.Y. 1995) (setting forth the same factors in context of approving a motion to stay an order approving Chapter 11 confirmation and any distributions pursuant to such plan pending appeal); *In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992) (setting forth the same factors in context of approving a motion to stay an order denying application to assume stipulation of settlement entered into by parties in lessor's eviction proceeding pending appeal).

**B.    FHFA and Freddie Mac Are Likely to Prevail on the Merits of the Motion to Withdraw the Reference**

17.    As discussed more fully in the Motion to Withdraw the Reference, withdrawal of the reference is *mandatory* where, as is the case in this matter, "substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (internal quotation marks and citations omitted); *see also City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir. 1991) (requiring mandatory withdrawal where court must "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes"). Courts have thus withdrawn the reference in cases that would require the bankruptcy judge to engage in "'more than routine application of [federal laws] outside the Bankruptcy Code.'" *Picard v. JPMorgan Chase & Co.*, 454 B.R. 307, 315 (S.D.N.Y. 2011) (quoting *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004)).

18.    In its Motion to Classify, LBHI argues that "nothing in subparagraphs (A)-(D) [of Section 4617(b)] elevates claims asserted by the Conservator to priority status in a chapter 11 case," and contends that Section 4617(b)(15)(D) does not provide for a priority recovery in LBHI's bankruptcy proceedings because "[c]laims based on the Conservator's avoidance powers are not listed" in the Bankruptcy Code. Mot. to Classify, at ¶¶ 20, 22. In responding to this argument in the Opposition, FHFA and Freddie Mac demonstrate that LBHI misconstrues the HERA statute. It is apparent that the legal positions espoused in both LBHI's Motion to Classify and Freddie Mac's and FHFA's Opposition will require substantial and material consideration of HERA, and will require the Court to interpret the powers granted to the Conservator under HERA.

- 8 -

19.    Moreover, the parties' respective positions regarding the issues are founded upon an analysis and construction of Section 4617(b)(15) of HERA, and such analysis of HERA will require precisely the type of "substantial and material consideration" of a federal non-bankruptcy statute that courts hold must be undertaken by an Article III judge. *See, e.g., In re Dana,* 379 B.R. 449, 455-58 (S.D.N.Y. 2007) (finding withdrawal of the reference was mandatory where it was "undisputed" that the resolution of certain issues would require "careful and significant consideration of CERCLA"); *see also Am. Tel. & Tel. v. Chateauguay,* 88 B.R. 581, 584-88 (S.D.N.Y. 1988) (same).

20.    Case law further counsels that withdrawal is mandatory where, as here, the action presents issues at the intersection of bankruptcy law and another federal, non-bankruptcy statute. *See, e.g., Koch Supply & Trading LP v. Giddens,* 484 B.R. 18, 25 (S.D.N.Y. 2012); *Picard v. Avellino,* 469 B.R. 408, 412 (S.D.N.Y. 2012). Indeed, there can be little question that the resolution of the HERA Priority Claim and the Motion to Classify will require both "significant interpretation" of HERA, as well as reconciling HERA with the Bankruptcy Code. *See, e.g., In re Dana,* 379 B.R. at 459 (withdrawal of the reference required where there was "arguably" a conflict between CERCLA and the Bankruptcy Code); *Bear, Stearns Sec. Corp. v. Gredd,* No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001) (withdrawing the reference to address, in part, the provision of Section 546(e) of the Bankruptcy Code that "arguably conflicts with other federal regulations in this area").

21.    In a case involving a conflict between a similar fraudulent transfer provision in another federal non-bankruptcy statute, FIRREA, 12 U.S.C. § 1821(j), and the Bankruptcy Code, the Second Circuit recognized that the reference should have been withdrawn to the district court. *See In re Colonial Realty Co.,* 980 F.2d 125, 128 n.5 (2d Cir. 1992) (where the Second

Circuit stated that "[a]lthough the issue is moot at this juncture, it would appear that the FDIC's motion [to withdraw the reference] should have been granted, pursuant to § 157(d), in view of the FDIC's timely motion and the asserted conflict between provisions of the Bankruptcy Code and other federal statutes").

22.     Here, any resolution of LBHI's Motion to Classify and Freddie Mac's and FHFA's Opposition in respect of HERA will require substantial and material consideration of such federal non-bankruptcy statute, as well as resolving issues relating to the intersection of bankruptcy law and such federal statute, a resolution of the parties' respective rights in this regard should be decided in a District Court, and, accordingly, Freddie Mac and FHFA are likely to succeed on the merits of the Motion to Withdraw the Reference.

**C.      The Remaining Stay Factors Weigh in Favor of Granting the Motion to Stay Pending the District Court's Consideration of the Motion to Withdraw the Reference**

23.     This Court should also grant the Motion to Stay because the remaining factors— *i.e.*, the public interest and the balance of the equities between the parties—favor the granting of a stay.

24.     Were this Court to proceed with consideration of the Motion to Classify while the Motion to Withdraw the Reference is pending, it could unnecessarily burden both the District Court and the Bankruptcy Court with significant motion practice and briefing, with the avoidable end result that the Bankruptcy Court and the District Court could reach conflicting conclusions in regards to Section 4617(b)(15) of HERA, a statutory provision as to which there is currently no case authority.  In addition, such duplicative review of the Motion to Classify and Opposition will result in the expenditure of judicial resources that could otherwise be avoided by granting a stay.

25.     In this case, there is no reason not to stay the proceedings to allow the District
Court to first resolve the Motion to Withdraw the Reference. Indeed, the Motion to Classify
represents the only pleading filed by LBHI in respect of the HERA Priority Claim, with the
Opposition just filed in response thereto. *See In re Eagle Enters.*, 259 B.R. at 88-89 (granting
the stay to avoid, in part, duplicative costs, and noting that "[p]laintiffs would sustain minimal
harm if the Complaint were stayed" as the case was relatively new and discovery had not yet
commenced); *see also In re Beach First Nat'l Bancshares, Inc.*, Bankr. No. 10–03499–DD,
Adversary No. 10–80143–DD, 2011 WL 2441501, at *2 (Bankr. D.S.C. Jan. 21, 2011) (granting
the stay and finding that "[n]o harm will be suffered by waiting until the District Court rules on
the Withdrawal Motion," as "[the] adversary proceeding is in the very early stages of the
proceedings"). Thus, imposing a stay to allow sufficient time for LBHI to respond to the Motion
to Withdraw the Reference, and the District Court to resolve such motion, will not impose
prejudice on any party, but instead will allow the District Court to resolve the withdrawal request
unimpeded by any competing proceedings.

26.     Indeed, it has been over five years since the commencement of the Chapter 11
Cases, and over four years since the filing of the HERA Priority Claim, with LBHI having only
just recently objected to the HERA Priority Claim. Thus, it would not be credible for LBHI to
now argue that it would be prejudiced by the requested stay.

27.     In contrast, if the Motion to Classify is not stayed pending resolution of the
Motion to Withdraw the Reference, not only would there be an otherwise avoidable misuse of
judicial resources, each of FHFA, Freddie Mac and LBHI will be required to incur the
considerable cost and expenses that will be attendant to litigation in two forums regarding the
same issues for an undetermined period of time—which, in the case of Freddie Mac and FHFA,

- 11 -

will be at the direct expense of U.S. taxpayers. This collective waste of resources and incurrence

of needless expenses alone constitutes sufficient harm to stay the proceeding. *In re Eagle*

*Enters.*, 259 B.R. at 88 ("Were we not to stay the Complaint pending the District Court's ruling

on the Withdrawal Motion, [the party] would suffer harm in the form of duplicative costs of

litigating in this Court and in New York."). In addition to the incurrence of unnecessary

expenses, dual-track proceedings related to the interpretation of HERA, including specifically

FHFA's right to a priority recovery in respect of the HERA Priority Claim, may also inevitably

lead to unnecessary appeals, which could be protracted, thereby impeding the ultimate resolution

of the HERA Priority Claim.

28.     Finally, in the Motion to Classify, LBHI asserts that it is pursuing the Motion to

Classify so as to avoid prejudice to other creditors occasioned by the continued maintenance of

the $1.2 billion reserve previously agreed to by the parties and so ordered by this Court. In fact,

the only meaningful impact on other creditors is a potential delay in recovery, which ironically is

largely a result of LBHI's failure to engage in meaningful discussions to resolve the HERA

Priority Claim. In contrast, an improper, premature release of the reserve would impose

irreparable harm and prejudice to Freddie Mac and the Conservator by eliminating the agreed

upon reserve prior to a final resolution in respect of the HERA Priority Claim, a result that could

leave insufficient funds remaining in the Debtors' estate to pay the HERA Priority Claim. A stay

to allow the District Court sufficient time to determine the proper forum to address the Motion to

Classify and the rights and powers of FHFA under HERA, including specifically FHFA's

asserted priority recovery, will best facilitate a timely and efficient resolution of the HERA

Priority Claim and the administration of the LBHI bankruptcy estate.

## CONCLUSION

29.    For the reasons stated above, the Court should grant the Motion to Stay, as to do so is in the best interests of all parties. *First*, a stay will mitigate against the potential for inconsistent rulings by the Bankruptcy Court and the District Court with respect to the HERA Priority Claim and the priority asserted thereunder, and thereby promote uniformity and efficiency. *Second*, a stay pending a determination on the Motion to Withdraw the Reference will avoid the misuse of resources and the incurrence of needless expenses by all parties. *Third*, a stay ensures that the cash reserve of $1.2 billion established pursuant to the Plan Stipulation— which is currently being held in a separate account pending resolution of the HERA Priority Claim—remains in place until a proper determination of the HERA Priority Claim and FHFA's entitlement to a priority recovery under HERA, which is in the best interests of all creditors. *Finally*, a stay is consistent with the Congressional mandate in respect of HERA:  that the Conservator shall be entitled to take all actions necessary to preserve and conserve the assets and property of Freddie Mac while pursuing the HERA Priority Claim, consistent with the broad powers, privileges, and rights to supervise and rehabilitate Freddie Mac granted the Conservator under HERA.  Accordingly, FHFA and Freddie Mac respectfully submit that the stay requested herein is appropriate and warranted by the facts and circumstances.

- 13 -

WHEREFORE, for all the foregoing reasons, FHFA and Freddie Mac request entry of an order granting (i) FHFA's and Freddie Mac's Motion to Stay the Motion to Classify, and (ii) such other and further relief as is just.

Dated: New York, New York
        October 18, 2013

/s/ Michael J. Canning
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

*Attorneys for the Federal Housing Finance Agency as Conservator of the Federal Home Loan Mortgage Corporation*

/s/ Mark S. Landman
Mark S. Landman

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848

*Attorneys for the Federal Home Loan Mortgage Corporation*

- 14 -

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. 08-13555 (JMP) |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., | : | |
| *et al.*, | : | Jointly Administered |
| Debtors. | : | |
| | : | |

## [PROPOSED] ORDER STAYING THE MOTION TO CLASSIFY AND ALLOW THE CLAIM FILED BY THE FEDERAL HOME LOAN MORTGAGE CORPORATION (CLAIM NO. 33568) IN LBHI CLASS 3

This matter coming before the Court on the Federal Housing Finance Agency's and Federal Home Loan Mortgage Corporation's motion to stay (the "Stay Motion")[1] consideration of LBHI's motion to classify and allow the claim filed by the Federal Home Loan Mortgage Corporation (Claim No. 33568) in LBHI Class 3; due and proper notice of the Stay Motion having been provided; and it appearing that the relief requested in the Stay Motion is appropriate and warranted; and after due deliberation and sufficient cause,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Stay Motion is GRANTED.

2.      All further proceedings with respect to the Motion to Classify and the Opposition are hereby stayed pending the District Court's ruling on FHFA's and Freddie Mac's Motion to Withdraw the Reference.

3.      LBHI shall be required to maintain the $1.2 billion cash reserve for the HERA Priority Claim as required by the Plan Stipulation.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Stay Motion.

4.      Nothing in this Order shall be construed as affecting any rights or defenses that Freddie Mac or FHFA may have with respect to the jurisdiction of this Court to determine the HERA Priority Claim or to confer jurisdiction of the Bankruptcy Court over matters in respect of Freddie Mac or FHFA.


Dated: _____, 2013


_____
United States Bankruptcy Judge

# Exhibit A

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn

*Attorneys for the Federal Housing Finance Agency as
Conservator of the Federal Home Loan Mortgage Corporation*

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848
Mark S. Landman

*Attorneys for the Federal Home Loan Mortgage Corporation*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. 08-13555 (JMP) |
| | : | Jointly Administered |
| LEHMAN BROTHERS HOLDINGS INC., | : | |
| *et al.,* | : | 13 Civ. _____ |
| Debtors. | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF THE MOTION OF THE FEDERAL HOUSING FINANCE AGENCY AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION TO WITHDRAW THE REFERENCE

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ......................................................................................................................... 4

    A.    The Housing and Economic Recovery Act of 2008 ................................................ 4

    B.    Freddie Mac's Lending Activities ........................................................................... 5

    C.    August Loans to LBHI.............................................................................................. 6

    D.    Freddie Mac and FHFA Assert Rights Under HERA in the LBHI Bankruptcy...... 8

    E.    Statutory Bases of HERA Priority Claim ............................................................... 9

    F.    LBHI's Motion to Classify .................................................................................... 12

ARGUMENT ............................................................................................................................. 13

    THIS PROCEEDING IS SUBJECT TO MANDATORY WITHDRAWAL OF THE
    REFERENCE.......................................................................................................................... 13

    A.    Withdrawal of the Reference Is Mandatory when a Proceeding Requires
        Substantial and Material Consideration of Federal Non-Bankruptcy Law........... 13

    B.    LBHI's Motion to Classify Requires Substantial and Material Consideration
        of HERA ................................................................................................................. 15

        i.    A Court Will Be Required to Determine the Effect of HERA's Grant
            of Superior Rights to FHFA upon the Priority Scheme under the
            Bankruptcy Code ...................................................................................... 15

        ii.    A Court Will Be Required to Determine Whether HERA Entitles
            FHFA To a Priority Recovery From the LBHI Bankruptcy Estate .......... 17

        iii.    Withdrawal of the Reference Is Particularly Appropriate in View of
            the Lack of Case Authority Analyzing HERA Section 4617(b)(15) ........ 19

        iv.    Withdrawal of the Reference is Consistent with Applicable Law
            Within the Second Circuit......................................................................... 21

CONCLUSION.......................................................................................................................... 24

## TABLE OF AUTHORITIES

<u>Page(s)</u>

<u>CASES</u>:

*AT&T Co. v. Chateaugay Corp.,*
    88 B.R. 581 (S.D.N.Y. 1988)................................................................14, 15, 21, 22

*Barnhart v. Sigmon Coal Co.,*
    534 U.S. 438 (2002).............................................................................15, 16

*Bear, Stearns Sec. Corp. v. Gredd,*
    No. 01 Civ. 4379 (NRB),
    2001 WL 840187 (S.D.N.Y. July 25, 2001) ...................................14, 17

*Chemtura Corp. v. United States,*
    No. 10 Civ. 503 (RMB),
    2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) ...............................14, 20

*City of New York v. Exxon Corp.,*
    932 F.2d 1020 (2d Cir. 1991).........................................................13, 21

*Enron Corp. v. J.P. Morgan Sec., Inc.,*
    388 B.R. 131 (S.D.N.Y. 2008)..............................................................14

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.,*
    No. 04 Civ. 8177 (RCC),
    2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)...............................13, 14

*Fed Hous. Fin. Agency v. UBS Americas Inc.,*
    712 F.3d 136 (2d Cir. 2013)...........................................................4, 5, 19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
    No. 03 MDL 1529 (LMM), 05 Civ. 9050, 05 Civ. 9250, 05 Civ. 9285,
    2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)..........................................22

*In re Colonial Realty Co.,*
    980 F.2d 125 (2d Cir. 1992)..................................................................21

*In re Dana Corp.,*
    379 B.R. 449 (S.D.N.Y. 2007).........................................................14, 15, 17, 22

*In re Fairfield Cmtys., Inc.,*
    No. LR-M-91-160,
    1992 WL 158642 (E.D. Ark. Apr. 14, 1992).....................................22, 23

*In re Fed. Home Loan Mort. Corp. Derivative Litig.,*
    643 F. Supp. 2d 790 (E.D. Va. 2009),
    *aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v. FHFA,*
    434 F. App'x 188 (4th Cir. 2011) ...................................................................19

*In re Horizon Air, Inc.,*
    156 B.R. 369 (N.D.N.Y. 1993) ........................................................................15

*In re Ionosphere Clubs, Inc.,*
    922 F.2d 984 (2d Cir. 1990)............................................................................13

*In re Manhattan Inv. Fund Ltd.,*
    343 B.R. 63 (S.D.N.Y. 2006).....................................................................14, 20

*In re VistaCare Grp., LLC,*
    678 F.3d 218 (3d Cir. 2012)............................................................................16

*Koch Supply & Trading LP v. Giddens,*
    484 B.R. 18 (S.D.N.Y. 2012)...........................................................................22

*Picard v. Avellino,*
    469 B.R. 408 (S.D.N.Y. 2012).........................................................................22

*Picard v. Fairfield Greenwich Ltd.,*
    486 B.R. 579 (S.D.N.Y. 2013).........................................................................14

*Picard v. JPMorgan Chase & Co.,*
    454 B.R. 307 (S.D.N.Y. 2011)....................................................................13, 14

*Picard v. Schneiderman,*
    492 B.R. 133 (S.D.N.Y. 2013).........................................................................14

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,*
    No. 96 Civ. 3669 (JGK),
    1997 WL 31194 (S.D.N.Y. Jan. 28, 1997),
    *aff'd,* 138 F.3d 65 (2d Cir. 1998) ..................................................................18

*Robinson v. Shell Oil Co.,*
    519 U. S. 337 (1997)........................................................................................16

*United States v. Ron Pair Enters.,*
    489 U.S. 235 (1989).........................................................................................16

## STATUTES AND OTHER AUTHORITIES:

12 U.S.C. § 1821(d)(17) ..............................................................................19, 21

12 U.S.C. § 4501, *et seq.*........................................................................ *passim*

12 U.S.C. § 4617(b)(2)(A) ..............................................................................................5

12 U.S.C. § 4617(b)(2)(B)(ii) .........................................................................................5

12 U.S.C. § 4617(b)(2)(B)(iv) ........................................................................................5

12 U.S.C. § 4617(b)(2)(D)(i) ..........................................................................................5

12 U.S.C. § 4617(b)(15)(A) .................................................................................. *passim*

12 U.S.C. § 4617(b)(15)(B) .................................................................10, 11, 17, 18

12 U.S.C. § 4617(b)(15)(D) .................................................................................. *passim*

28 U.S.C. § 157(d) ................................................................................................ *passim*

H.R. Rep. No. 109-171, pt. 1 (2005) ...........................................................................4

iv

The Federal Housing Finance Agency ("FHFA" or the "Conservator"), as Conservator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4501, *et seq.*, and Freddie Mac, respectfully submit this Memorandum of Law in support of their Motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference to the bankruptcy court of (i) the Motion to Classify and Allow the Claim Filed by the Federal Home Loan Mortgage Corporation (Claim No. 33568) in LBHI Class 3 filed by Lehman Brothers Holdings Inc. ("LBHI"), and (ii) FHFA's and Freddie Mac's Opposition to the Motion to Classify.[1] As set forth below, this proceeding meets the requirements for mandatory withdrawal of the reference and accordingly must be adjudicated in the district court.

## PRELIMINARY STATEMENT

Pursuant to HERA, a non-bankruptcy federal statute, FHFA, as Conservator of Freddie Mac, and Freddie Mac, are asserting a statutory right to a priority recovery in the amount of over $1.2 billion, on account of a Claim filed by Freddie Mac in the LBHI bankruptcy proceedings (the "HERA Priority Claim").[2] LBHI's Motion to Classify asserts that the Bankruptcy Code's procedures and priority scheme trump Freddie Mac's and FHFA's rights under HERA. Because resolution of LBHI's Motion to Classify will require substantial and material consideration of HERA, a federal non-bankruptcy law, and will require significant interpretation of HERA in regard to matters of first impression, withdrawal of the reference as to LBHI's Motion to Classify is mandatory.

---

[1]   References to "Exs." are to the exhibits attached to the accompanying Declaration of Nancy G. Milburn ("Milburn Declaration"). The Motion to Classify is attached as Ex. A, and the Opposition is Ex. B.

[2]   The HERA Priority Claim is attached as Ex. C to the Milburn Declaration.

HERA confers upon FHFA, as Conservator of Freddie Mac, the right to avoid and recover any transfers made or any obligations incurred by a debtor of an entity regulated by FHFA (Freddie Mac being the entity regulated in this case) with the intent to hinder, delay, or defraud such regulated entity.[3] In addition, HERA expressly makes such rights "superior" to any rights of any other party in a bankruptcy case, including a bankruptcy trustee. FHFA has asserted these rights under HERA in the LBHI bankruptcy case, seeking, by way of the HERA Priority Claim, to avoid and recover $1.2 billion (plus all accrued interest) that Freddie Mac loaned to LBHI less than one month before the filing of LBHI's Chapter 11 bankruptcy petition. These loans were made based upon information LBHI provided concerning its creditworthiness and ability to repay, which Freddie Mac and FHFA now assert was false, and the repayment of which was made impossible by transfers of funds made by LBHI to third parties with the "intent to hinder, delay, or defraud" Freddie Mac's repayment. On the establishment of these facts, HERA grants to the Conservator a priority right to recover the $1.2 billion, plus all accrued interest, out of the LBHI bankruptcy estate.

LBHI's Motion to Classify ignores these facts and instead distorts the powers which Congress expressly granted to FHFA and the interplay between HERA and the Bankruptcy Code. The Motion erroneously seeks to classify the HERA Priority Claim as a senior unsecured claim in LBHI's bankruptcy proceeding, rather than as a claim entitled to priority recovery under HERA. The Motion to Classify also seeks the release of a cash reserve of $1.2 billion that LBHI

---

[3]    The rights of FHFA in this regard are also applicable with respect to any transfers made or obligations incurred by an entity-affiliated party pursuant to Section 4617(b)(15)(A).

expressly agreed to set aside pending resolution of the priority recovery asserted by Freddie Mac and FHFA in respect of the HERA Priority Claim.[4]

Without disputing that the HERA Priority Claim is a valid claim, *i.e.*, that the Conservator is owed $1.2 billion plus interest, LBHI asserts without basis that, although HERA may empower FHFA with a right to recover transfers from third-party transferees, HERA does not provide a priority recovery against the LBHI bankruptcy estate, and that Congress did not intend to grant FHFA as Conservator any priority rights in respect of property of a Chapter 11 debtor. LBHI's argument is based upon a misreading of HERA and a mischaracterization of the relationship between HERA and the Bankruptcy Code.

The Court should withdraw the reference of the Motion to Classify and the Opposition filed by FHFA and Freddie Mac. Where a proceeding requires substantial consideration of a federal non-bankruptcy statute, as is clear in this case, then 28 U.S.C. § 157(d) requires withdrawal of the reference. Resolution of the conflict between the provisions of HERA governing Freddie Mac's and FHFA's entitlement to a priority recovery on account of the HERA Priority Claim, on the one hand, and the Bankruptcy Code, on the other hand, is a matter of first impression and requires substantial and material consideration of HERA. Accordingly, FHFA and Freddie Mac respectfully request that the Court withdraw the reference of the Motion to Classify.

---

[4]    The Motion to Classify focuses on two issues of statutory interpretation under HERA and ignores the underlying facts and circumstances of the HERA Priority Claim, including LBHI's inducement of Freddie Mac to make the August Loans (defined below) based on alleged misrepresentations, and with knowledge that it could not repay the August Loans, and LBHI's transfer of funds to third parties with knowledge that such transfers would render it unable to repay Freddie Mac, which actions entitle FHFA to avoid the transactions at issue under Section 4617(b)(15)(A). These underlying facts and circumstances will need to be litigated or otherwise resolved by the parties before there can be a final determination of the HERA Priority Claim.

## BACKGROUND

### A. The Housing and Economic Recovery Act of 2008

Congress enacted HERA on July 30, 2008, in response to the nationwide economic crisis.[5] HERA created FHFA as an "independent agency of the Federal Government" vested with the responsibility, among other things, of rehabilitating and supervising Freddie Mac, a government-sponsored entity ("GSE") that, at the time HERA was enacted, was anticipated to experience difficulties.[6] Freddie Mac provides liquidity, stability, and affordability to the United States housing market by purchasing mortgage loans and mortgage-related securities for investment, and by pooling mortgages purchased from banks and issuing guaranteed mortgage-related securities to institutional investors.[7] In this regard, Freddie Mac plays a critical role in the mortgage finance market in the United States, and is inextricably interwoven into the nation's financial system.

On September 6, 2008, pursuant to the authority granted under HERA, and after determining that Freddie Mac could not "continue to operate safely and soundly and fulfill [its] critical public mission," the Director of FHFA placed Freddie Mac under the conservatorship of FHFA.[8] As the Second Circuit explained, "Congress . . . created FHFA in response to the housing and economic crisis, precisely because it wanted to address the dire financial condition of . . . Freddie Mac." *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 142 (2d Cir.

---

[5]  *See* Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (2008).

[6]  *See* H.R. Rep. No. 109-171, pt. 1, at 81 (2005).

[7]  *See* Case Study:  Freddie Mac's Unsecured Lending to Lehman Brothers Prior to Lehman Brothers' Bankruptcy; Federal Housing Finance Agency, Office of Inspector General (Mar. 14, 2013) (the "FHFA Report"), at 6 (a copy of the report is attached to the Motion to Classify as Ex. A thereto).

[8]  Statement of FHFA Director James B. Lockhart, at 5 (Sept. 7, 2008), attached to the Milburn Declaration as Ex. D.

2013). Upon being appointed Conservator, FHFA "immediately succeeded to . . . all rights, titles, powers, and privileges of [Freddie Mac]," and was accorded broad powers under HERA to "preserve and conserve the assets and property" of Freddie Mac, to "collect all obligations and money due to the regulated entity," and to "take such action as may be . . . necessary to put [Freddie Mac] in a sound and solvent condition."[9]

Section 4617(b)(15) of HERA grants FHFA, as Conservator, the express power to avoid any transfer made or any obligation incurred by a debtor of Freddie Mac, if such transfer or obligation was made or incurred "with the intent to hinder, delay, or defraud" Freddie Mac or its Conservator, such that the Conservator may recover assets and money on behalf of and for the benefit of Freddie Mac or FHFA.[10] Critically, HERA expressly makes these rights of FHFA "superior" to "any rights of a trustee or any other party" under the Bankruptcy Code, other than another governmental agency.[11] These broad powers granted to FHFA as Conservator, and the concomitant priority right to recover under HERA, are crucial to enabling FHFA to fulfill its purpose and Congressional mandate of preserving and conserving the assets of Freddie Mac.

## B. Freddie Mac's Lending Activities

Freddie Mac collects billions of dollars each month on account of principal and interest payments made by mortgagors, and distributes such funds to holders of mortgages or beneficiaries of the securities backed by such mortgages. Between the time when Freddie Mac receives the applicable principal and interest payments on the underlying mortgages and the time when Freddie Mac is required to distribute such funds to the holders or beneficiaries, Freddie

---

[9]    12 U.S.C. §§ 4617(b)(2)(A), (b)(2)(B)(ii), (b)(2)(B)(iv), and (b)(2)(D)(i).

[10]    *Id.* § 4617(b)(15)(A)-(B).

[11]    *Id.* § 4617(b)(15)(D).

Mac invests the funds in short-term financial instruments, or makes loans to creditworthy counterparties, with the loans generally repayable immediately prior to the time when Freddie Mac is required to make payments to the holders or beneficiaries of applicable mortgages or mortgage-backed securities.

## C. August Loans to LBHI

Between January and August 2008, Freddie Mac made loans ranging from $1 billion to $1.2 billion to LBHI,[12] which LBHI used to meet its liquidity needs. Following the collapse of Bear Stearns in March 2008, credit officers within Freddie Mac raised concerns regarding the creditworthiness and liquidity of LBHI.[13] Freddie Mac and FHFA will demonstrate that during the summer of 2008, LBHI made misrepresentations to Freddie Mac concerning LBHI's financial health and liquidity position to deceive Freddie Mac into continuing to make loans to LBHI, and that LBHI had significantly less liquidity than was affirmatively represented to Freddie Mac. Moreover, Freddie Mac and FHFA will demonstrate that, at the time of the incurrence of the subject loans, LBHI knew it was facing a liquidity crisis arising from a loss of market confidence, making it impossible for LBHI to continue its businesses and satisfy its funding requirements in the ordinary course.[14]

On August 19, 2008, Freddie Mac loaned LBHI $450,000,000, and on August 20, 2008, Freddie Mac loaned LBHI another $750,000,000 (collectively, the "August Loans").[15] Freddie Mac and FHFA will demonstrate that Freddie Mac made these loans to LBHI based upon

---

[12]  *See* Report of Anton Valukas, Examiner, Mar. 10, 2010 (the "Examiner Report"), at 1952. The excerpts of the Examiner Report referred to herein are attached to the Milburn Declaration as Ex. E.

[13]  FHFA Report, at 11.

[14]  *See* Examiner Report, at 10, 645, 717.

[15]  *See id.* at 1952.

LBHI's false assurances about its liquidity and ability to repay, and was kept unaware of the severe financial crisis and insolvency then facing LBHI, despite direct inquiry of LBHI in this regard. The August Loans were short-term unsecured loans between two financial institutions.[16] The August Loans were scheduled to be repaid on September 15, 2008, on an "early return" basis—meaning that repayment was required to be completed before the markets opened on September 15, 2008.[17]

Based on evidence developed by the Examiner and through Freddie Mac's and FHFA's own investigation, Freddie Mac and FHFA assert that LBHI incurred this $1.2 billion obligation knowing that it could not repay the August Loans as and when they became due. The Examiner Report establishes that, shortly before its obligation to repay Freddie Mac the $1.2 billion came due, LBHI transferred several billion dollars to third parties, including to financial institutions such as JPMorgan Chase and Citibank,[18] the result of which, Freddie Mac and FHFA assert LBHI knew, was to leave LBHI unable to pay its obligations to Freddie Mac as they came due.

On Friday, September 12, 2008, LBHI began to take certain steps required to prepare for the repayment of the August Loans. However, the repayment process was inexplicably halted over the weekend between September 12 and 15, 2008. During that time, LBHI continued to withdraw funds from the account used to repay Freddie Mac and to transfer such funds to other institutions and counterparties,[19] without regard to the fact that, Freddie Mac and FHFA will assert, it knew its actions would leave insufficient funds available to repay the August Loans on the morning of September 15, 2008.

---

[16]  *See id.* at 1952, 1954.

[17]  *See* HERA Priority Claim, and the supporting documentation.

[18]  *See generally* Examiner Report, Vols. 4-5.

[19]  *See id.* at 1955 n.7249, and sources cited therein.

### D. Freddie Mac and FHFA Assert Rights Under HERA in the LBHI Bankruptcy

On September 15, 2008, LBHI and certain of its subsidiaries commenced their Chapter 11 bankruptcy cases. On September 22, 2009, Proof of Claim No. 33568 was timely filed asserting entitlement to repayment of the $1.2 billion, plus $2,241,875 on account of accrued interest.[20] On the Proof of Claim, Freddie Mac noted "see attached re: 12 USC 4617(b)(15) priority." In the Addendum to the Proof of Claim, Freddie Mac stated that, pursuant to 12 U.S.C. § 4617(b)(15)(A), FHFA was entitled to avoid any transfer made "with the intent to hinder, delay, or defraud" Freddie Mac or FHFA, and that, pursuant to 12 U.S.C. § 4617(b)(15)(D), its "power to avoid a fraudulent transfer is 'superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11.'"[21] The Addendum further asserted that FHFA, on behalf of Freddie Mac, reserved all its rights pursuant to its statutory authorization, including rights with regard to any transfer, to the extent such transfer was made with the intent to hinder or delay the "early return" payment of $1.2 billion to Freddie Mac on September 15, 2008.[22]

In advance of confirmation of LBHI's Third Amended Plan of Reorganization (the "Plan"), Freddie Mac and FHFA raised objections directly with counsel to LBHI regarding confirmation of the Plan because it failed to provide any class for recovery on account of the over $1.2 billion HERA Priority Claim. In response, LBHI agreed to amend the definition of "Priority Non-Tax Claim" in the Plan to include a claim entitled to priority recovery under

---

[20]   *See* HERA Priority Claim.

[21]   *Id.* at ¶ 3.

[22]   *Id.*

HERA.[23]  Freddie Mac and LBHI also entered into a stipulation, so ordered and entered by the

Bankruptcy Court on December 6, 2011 (the "Plan Stipulation") [Docket No. 22998],[24] which

provided for the establishment of a cash reserve in respect of the HERA Priority Claim in the

amount of $1.2 billion to ensure payment on account of such claim to the extent it was ultimately

determined to be entitled to a priority status under HERA, and also expressly reserved all of

FHFA's rights, titles, powers, and privileges under HERA.[25]

On December 6, 2011, LBHI's Plan was confirmed, and the Bankruptcy Court entered an

order confirming the Plan [Docket No. 23023], and so ordered the Plan Stipulation.  The Plan

became effective on March 6, 2012 [Docket No. 26039].

### E.  Statutory Bases of HERA Priority Claim

The HERA Priority Claim is founded upon the priority recovery provided in Section

4617(b)(15) of HERA.  Section 4617(b)(15)(A) provides that FHFA may avoid a transfer made

---

[23]  *See* Third Am. Plan, § 1.127, Ex. A to the Confirmation Order [Docket No. 23023].  An excerpt of
the Plan is attached to the Milburn Declaration as Ex. G.

[24]  A copy of the Plan Stipulation is attached to the Milburn Declaration as Ex. F.

[25]  The Plan Stipulation provides:

> Nothing in this Stipulation, the Third Amended Plan (or any
> amendments, exhibits, supplements, or agreements filed or entered into
> incident thereto, or the confirmation thereof), the Confirmation Order, or
> any other pleadings or documents filed in connection therewith, shall
> affect, limit, enjoin or otherwise prejudice FHFA's rights, titles, powers,
> and privileges under HERA as the Conservator, including, without
> limitation the rights of Fannie Mae and/or Freddie Mac, or FHFA as
> Conservator thereof, to seek priority status and recovery in respect of the
> [priority claims of Fannie Mae and Freddie Mac], and nothing in the
> Third Amended Plan or Confirmation Order shall be construed to restrain
> or limit any applicable regulatory or enforcement action that may be
> taken by FHFA, or to confer exclusive jurisdiction of the Bankruptcy
> Court over matters in respect of Fannie Mae, Freddie Mac, or FHFA as
> Conservator thereof.

Plan Stipulation, ¶ 4.

or an obligation incurred, to the extent that it was intended to hinder, delay, or defraud the

Conservator or its regulated entity:

> The Agency, as conservator or receiver, *may avoid a transfer of*
> any interest of an entity-affiliated party, or any person determined
> by the conservator or receiver to be a debtor of the regulated entity,
> in property, *or any obligation incurred* by such party or person,
> that was made within 5 years of the date on which the Agency was
> appointed conservator or receiver, if such party or person
> voluntarily or involuntarily made such transfer or incurred such
> liability *with the intent to hinder, delay, or defraud* the regulated
> entity, the Agency, the conservator, or receiver.

12 U.S.C. § 4617(b)(15)(A) (emphases added).

Pursuant to Section 4617(b)(15)(D), the Conservator's rights under Section 4617(b)(15)

—including the right to avoid any transfers made or any obligations incurred under Section

4617(b)(15)(A) and to recover in the amount of the avoided debt or transaction—are superior to

any rights of any party in a bankruptcy proceeding, including a trustee:

> The rights under this paragraph of the conservator or receiver
> described under subparagraph (A) shall be superior to any rights of
> a trustee or any other party (other than any party which is a Federal
> agency) under title 11.

12 U.S.C. § 4617(b)(15)(D).

In addition, if a prohibited transfer made by a debtor of a regulated entity is avoided

under Section 4617(b)(15)(A), HERA grants FHFA the additional right to seek recovery of the

value of such property under Section 4617(b)(15)(B) directly from the initial transferee of such

transfer, or any immediate or mediate transferee of such initial transferee.[26]

---

[26]    12 U.S.C. § 4617(b)(15)(B) provides:

> To the extent a transfer is avoided under subparagraph (A), the
> conservator or receiver may recover, for the benefit of the regulated
> entity, the property transferred, or, if a court so orders, the value of such
> property (at the time of such transfer) from (i) the initial transferee of

The Conservator's claim for priority recovery under HERA is based on two theories. *First*, on August 19 and 20, 2008, when LBHI borrowed $1.2 billion from Freddie Mac, it knew it was insolvent such that it would be unable to repay the August Loans on September 15, 2008.[27] In accepting the August Loans under these pretenses, LBHI incurred obligations to Freddie Mac to repay the August Loans "with the intent to hinder, delay, or defraud" Freddie Mac. FHFA is thus entitled to avoid the incurrence of the obligation by LBHI and to recover the $1.2 billion, plus interest accrued to date. This statutory right of recovery vested in the Conservator is superior to "any right" of any party, including any party in a bankruptcy proceeding. *Second*, in the days and weeks immediately preceding LBHI's bankruptcy filing, unbeknownst to Freddie Mac or FHFA, LBHI made transfers of billions of dollars in liquidity to its banks and to a non-debtor affiliate. To the extent LBHI made these transfers with knowledge that it was then insolvent, or that in making the transfers it would be rendered insolvent (which LBHI appears to acknowledge in pleadings filed in separate adversary proceedings against JP Morgan Chase and Citibank in the Chapter 11 Cases),[28] such that the transfers would render LBHI unable to repay the August Loans when due, then LBHI intentionally hindered, delayed, or defrauded Freddie Mac and the Conservator in the repayment of the August Loans.

---

such transfer or the entity-affiliated party or person for whose benefit such transfer was made; or (ii) any immediate or mediate transferee of any such initial transferee.

[27] Freddie Mac and FHFA will demonstrate that as inducement for Freddie Mac to continue providing loans to LBHI, LBHI misrepresented its financial health and stability to Freddie Mac during the summer of 2008.

[28] *See* First Am. Compl. at ¶¶ 52, 54, *Lehman Brothers Holdings Inc. v. Citibank, N.A.*, Adv. Pr. No. 12-01044-JMP (Bankr. S.D.N.Y. Nov. 16, 2012) [Docket No. 13]; *see also* First Am. Compl. at ¶¶ 29-30, 60, 66, *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Pr. No. 10-03266-JMP (Bankr. S.D.N.Y. Sept. 15, 2010) [Docket No. 19].

Accordingly, FHFA asserts that it is entitled to avoid the incurrence of the August Loans and the subject transfers, and that its rights are superior to the rights of all other creditors.

### F. LBHI's Motion to Classify

On September 13, 2013, LBHI filed its Motion seeking to classify and allow the HERA Priority Claim as a senior unsecured claim, rather than as a claim entitled to a priority recovery under HERA, as asserted in the HERA Priority Claim. The Motion to Classify asserts that Section 4617(b)(15)(D), despite its explicit language, does not grant Freddie Mac and FHFA any right to a priority recovery because HERA does not alter or affect the priority rights of creditors under the Bankruptcy Code. LBHI argues further that even if Freddie Mac and FHFA were entitled to a priority recovery under HERA, they would be barred from recovery from the LBHI bankruptcy estate because, under HERA, FHFA may only avoid transfers made by LBHI to third-party transferees with the intent to hinder, delay, or defraud, and may recover on such transfers only from such third party transferees. Mot. to Classify, pp. 9-10. LBHI mischaracterizes the text, meaning, and the intent of the HERA statute.

FHFA and Freddie Mac have filed in the Bankruptcy Court their Opposition to LBHI's Motion to Classify and a motion for a stay pending a determination of this Motion to Withdraw the Reference. The Opposition demonstrates that the plain language of HERA expressly grants a priority right of recovery in the LBHI bankruptcy proceeding and that HERA authorizes FHFA, as Conservator of Freddie Mac, to recover directly from LBHI, with respect to any property transferred and/or any obligations incurred, with the intent to hinder, delay, or defraud Freddie Mac or its Conservator.

- 12 -

## ARGUMENT

## THIS PROCEEDING IS SUBJECT TO MANDATORY WITHDRAWAL OF THE REFERENCE

### A. Withdrawal of the Reference Is Mandatory when a Proceeding Requires Substantial and Material Consideration of Federal Non-Bankruptcy Law

Section 157(d) of Title 28 provides for mandatory withdrawal of the reference to the

Bankruptcy Court:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. *The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.*

28 U.S.C. § 157(d) (emphasis added).

Section 157(d) requires withdrawal of the reference "where substantial and material

consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the

proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (internal quotation

marks and citations omitted); *see also City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d

Cir. 1991) (requiring mandatory withdrawal where a court must "engage in significant

interpretation, as opposed to simple application, of federal laws apart from the bankruptcy

statutes"). Courts have withdrawn the reference in cases that would require the bankruptcy judge

to engage in "'more than routine application of [federal laws] outside the Bankruptcy Code.'"

*Picard v. JPMorgan Chase & Co.*, 454 B.R. 307, 315 (S.D.N.Y. 2011) (quoting *Enron Power

Mktg., Inc. v. Cal. Power Exch. Corp.*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2

(S.D.N.Y. Nov. 23, 2004)).

Under the mandatory withdrawal provision, "the district court is not required to find that novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference." *Enron Corp. v. J.P. Morgan Sec., Inc.*, 388 B.R. 131, 139 (S.D.N.Y. 2008); *accord Enron Power Mktg.*, 2004 WL 2711101, at *2. However, where, as here, "'matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.'" *Chemtura Corp. v. United States*, No. 10 Civ. 503 (RMB), 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (quoting *In re Manhattan Inv. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) (citations omitted)); *see also Picard v. Fairfield Greenwich Ltd.*, 486 B.R. 579, 582 (S.D.N.Y. 2013).

In determining whether to withdraw the reference, courts do not need to "evaluate the merits of the parties' positions." *Bear, Stearns Sec. Corp. v. Gredd*, No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001). Instead, "the test . . . is whether, at the time of withdrawal, it appears that the proceeding will involve 'substantial and material consideration' of federal non-bankruptcy law." *Picard v. Schneiderman*, 492 B.R. 133, 137 (S.D.N.Y. 2013); *see also JP Morgan Chase & Co.*, 454 B.R. at 312. Thus, courts have found the test of whether consideration is "substantial and material" has been met "where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code." *See, e.g., In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007).

"Section 157(d) reflects Congress's perception that specialized courts should be limited in their control over matters outside their areas of expertise," and also assures parties that the interpretation of non-bankruptcy law "will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and [is] 'better equipped to determine them than are bankruptcy

- 14 -

judges.'" *AT&T Co. v. Chateaugay Corp.*, 88 B.R. 581, 583-84 (S.D.N.Y. 1988) (citations

omitted); *accord In re Dana Corp.*, 379 B.R. at 458 & n.66 (stating, in the context of a CERCLA

claim objection, that mandatory withdrawal was warranted where the bankruptcy court would be

required "to engage in careful and significant consideration of . . . a statute 'outside its realm of

expertise,' and to apply it to a complex body of facts") (quoting *In re Horizon Air, Inc.*, 156 B.R.

369, 374 n.5 (N.D.N.Y. 1993)).

## B. LBHI's Motion to Classify Requires Substantial and Material Consideration of HERA

The issues raised in LBHI's Motion to Classify the HERA Priority Claim, described more

fully below, will require substantial and material consideration of HERA and, in particular, will

require a court to interpret the special statutory powers Congress granted to the Conservator to

allow it to fulfill its statutory mission to conserve and protect the assets of Freddie Mac.  In

addition to withdrawal of the reference being mandatory, withdrawal is particularly appropriate

here, as the scope and effect of Section 4617(b)(15) present issues of first impression as to which

there is little case authority.

### i. A Court Will Be Required to Determine the Effect of HERA's Grant of Superior Rights to FHFA upon the Priority Scheme under the Bankruptcy Code

In its Motion to Classify, LBHI argues that "nothing in subparagraphs (A)-(D) [of

Section 4617(b)] elevates claims asserted by the Conservator to priority status in a chapter 11

case . . . . " Mot. to Classify, at ¶ 22.  LBHI contends that Section 4617(b)(15)(D) does not

provide for a priority recovery in LBHI's bankruptcy proceedings because "[c]laims based on the

Conservator's avoidance powers are not listed" in the Bankruptcy Code.  Mot. to Classify, ¶ 20.

LBHI's argument fails because it overlooks the plain language of the statute.  As the

United States Supreme Court has stated, in all cases requiring that a court construe a statute, "we

begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U. S. 337, 340 (1997)). The inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.*; *see also United States v. Ron Pair Enters.*, 489 U.S. 235, 240 (1989).

Here, Section 4617(b)(15)(A) expressly grants to FHFA the right to avoid transfers made or obligations incurred by LBHI with the intent to defraud Freddie Mac or FHFA, and, by its plain terms, Section 4617(b)(15)(D) requires that FHFA's rights to avoid and recover property (or its equivalent) not be subordinate to any other competing rights in a bankruptcy proceeding. In their Opposition, FHFA and Freddie Mac demonstrate that LBHI's reading of Section 4617(b)(15)(D) is contrary to the statutory language, and that in enacting HERA, including its express provision granting the Conservator rights that are "superior to any rights of a trustee or any party" under title 11, Congress can be presumed to have been well aware of the Bankruptcy Code and the priority scheme of Section 507 of the Bankruptcy Code. *See In re VistaCare Grp., LLC*, 678 F.3d 218, 226 (3d Cir. 2012) (stating that "[w]hen Congress enacts legislation, it is presumed to act with knowledge of the 'existing law and judicial concepts'" (citation omitted)). Indeed, the text of subparagraph (D) makes clear that Congress intended that the superior rights granted to the Conservator in a bankruptcy case be given full effect, notwithstanding competing rights asserted by parties under Section 507 of the Bankruptcy Code, or otherwise.[29]

---

[29]    LBHI even acknowledged the co-existence of the priority rights of recovery that exist under Section 507 of the Bankruptcy Code and the Conservator's priority rights under HERA by amending the Plan to specifically include all of such rights, together, under the definition of "Priority Non-Tax Claim." Thus, the Plan's definition of "Priority Non-Tax Claim" includes a valid claim under HERA.

To resolve this dispute, a court will have to interpret the provisions of Section 4617(b)(15)(A) and (D) and determine whether, as LBHI argues, the priority right of the Conservator asserted therein is a nullity because claims based on the Conservator's avoidance powers are not listed as a claim entitled to a priority in Section 507 of the Bankruptcy Code, or whether, in enacting Section 4617(b)(15) and the express provision granting the Conservator "superior" rights in subparagraph (D), Congress intended that the superior rights would be interpreted to grant the Conservator a priority recovery over and above the rights of any other parties, including in a bankruptcy proceeding. Resolving this alleged conflict between the Bankruptcy Code and HERA over the scope of the authority granted by Congress to the Conservator will require precisely the type of "substantial and material consideration" of a federal non-bankruptcy statute that courts hold must be undertaken by an Article III judge. *See In re Dana Corp.*, 379 B.R. at 459 (withdrawal of the reference required where there was "arguably" a conflict between CERCLA and the Bankruptcy Code); *Gredd*, 2001 WL 840187, at *4 (withdrawing the reference to address, in part, the provisions of Section 546(e) of the Bankruptcy Code that "arguably conflicts with other federal regulations in this area").

### ii. A Court Will Be Required to Determine Whether HERA Entitles FHFA To a Priority Recovery From the LBHI Bankruptcy Estate

LBHI's Motion to Classify also argues that HERA merely gives the Conservator the right to avoid transfers made by LBHI to third party transferees and to recover such transfers from the transferees to the extent that such transfers were made with the intent to hinder, delay, or defraud a regulated entity, and that HERA does not give FHFA the right to recover against the property of the LBHI estate. LBHI's argument is based on a misreading of Section 4617(b)(15)(B) of HERA—which is an explicitly permissive subparagraph that allows FHFA to recover transfers

- 17 -

from third-party transferees.  LBHI argues, without reference to any authority, that Section 4617(b)(15)(B) limits FHFA to recovery "only" from such transferees.

To the contrary, Section 4617(b)(15)(A) provides broad authority to FHFA to avoid and recover transfers made or obligations incurred by *any* counterparty of Freddie Mac who acted with the intent to hinder, delay, or defraud Freddie Mac or its Conservator.  That would include LBHI, or in this case, its bankruptcy estate.  Far from limiting FHFA's rights, Section 4617(b)(15)(B) expands FHFA's authority further, by providing that FHFA "may" also recover transfers from third-party transferees of a debtor of Freddie Mac who may have improperly received transferred assets or funds.  Thus, the language of Section 4617(b)(15)(B) is permissive, not mandatory—it does not provide that FHFA "shall" or "shall only" recover from third-party transferees of a debtor of the regulated entity.

LBHI's interpretation of HERA would render meaningless FHFA's rights under Section 4617(b)(15)(A), as well as FHFA's superior right to recover on account of any avoidance under Section 4617(b)(15)(D), since, if a person defrauded a regulated entity but kept the ill-gotten gains and never transferred the funds to a third party, limiting FHFA to recovery solely from transferees would leave the Conservator without a remedy to recover such funds on a priority basis.  A statute should not be construed in a manner that renders portions of the statute "meaningless."  *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, No. 96 Civ. 3669 (JGK), 1997 WL 31194, at *3 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65 (2d Cir. 1998).

In order to determine the scope of FHFA's superior rights in this regard, and to resolve the apparent conflict between such rights and the competing interests of parties to the LBHI bankruptcy under the Bankruptcy Code, the Court must engage in significant interpretation of Subsections 4617(b)(15)(A), (B) and (D) of HERA.

### iii.  Withdrawal of the Reference Is Particularly Appropriate in View of the Lack of Case Authority Analyzing HERA Section 4617(b)(15)

In deciding these issues raised in the Motion to Classify, a court will have minimal guidance from prior case law. There are no reported decisions directly analyzing the scope or nature of FHFA's rights under Section 4617(b)(15). Courts have addressed other aspects of HERA, including the anti-injunction provision, and have consistently construed the statute broadly, recognizing the special powers accorded to FHFA under HERA to take all action necessary to preserve and conserve the assets of Freddie Mac.[30] In addition, 12 U.S.C. § 1821(d)(17), a bank regulatory statute granting authority to the Federal Deposit Insurance Corporation ("FDIC") in its role as a bank receiver, contains a fraudulent transfer provision with language that is virtually identical to the language of Section 4617(b)(15); thus, case law under that provision will provide guidance to the Court in interpreting Section 4617(b)(15).[31] However, the issues raised here, in regard to FHFA's authority under HERA, will be matters of first impression for any court, and the court that decides these issues will have to undertake an

---

[30]  *See, e.g., UBS Americas Inc.*, 712 F.3d at 138-41 ("Congress created FHFA as an 'independent agency of the Federal Government,' and conferred upon FHFA broad power to appoint itself conservator or receiver of the GSEs, and to 'take such action as may be . . . necessary to put the [GSEs] in a sound and solvent condition; and appropriate to carry on the business of the [GSEs] and preserve and conserve [their] assets and property.' Congress specifically authorized FHFA, as conservator or receiver, to 'collect all obligations and money due the [GSEs].'")

[31]  Indeed, courts that have analyzed other provisions relating to FHFA's authority and obligations under HERA have relied on cases invoking similar or identical provisions of FIRREA. *See, e.g., UBS Americas Inc.*, 712 F.3d at 142 n.2 ("In drawing on FIRREA's language, Congress intended for § 4617(b)(12) of HERA to serve a similar purpose with respect to FHFA."); *In re Fed. Home Loan Mort. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009) ("[T]he Court is persuaded by decisions that have reached the same conclusion when interpreting [FIRREA], whose provisions regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA."), *aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011).

independent analysis of HERA. This lack of direct authority under HERA to guide a court's analysis lowers the burden of establishing FHFA's right to mandatory withdrawal.[32]

A court's analysis of FHFA's avoidance and recovery powers under HERA cannot be informed by authority under the fraudulent transfer provisions under Sections 548(a) and 550 of the Bankruptcy Code because while a bankruptcy trustee is authorized to avoid transfers and obligations incurred by the bankruptcy debtor that it administers, FHFA is authorized to avoid transfers and obligations incurred by a debtor of a regulated entity such as Freddie Mac. When a bankruptcy trustee avoids an obligation incurred by a debtor, that obligation is cancelled and the debtor is no longer obligated on the debt. With respect to FHFA's power under HERA to avoid an obligation incurred by a debtor of Freddie Mac with the intent to hinder, delay, or defraud, to simply cancel such obligation, such as LBHI's incurrence of the obligation to repay the August Loans, without requiring the return of the wrongfully obtained funds on a priority basis, would be inapposite of the superior rights that HERA grants to FHFA. Moreover, the fundamental purpose of any statute that provides such remedies is to return the wronged party to the position it was in before the prohibited conduct occurred, and gives rise to a claim to that effect. To the extent such prohibited conduct is perpetrated against a regulated entity, such as Freddie Mac, Section 4617(b)(15)(D) elevates the right of recovery on account of such conduct to a priority status as against other creditors. Thus, if LBHI intended to hinder, delay, or defraud Freddie Mac in connection with the incurrence of the August Loans, HERA mandates that LBHI must repay Freddie Mac and FHFA the $1.2 billion, plus interest thereon, on a priority basis in order to return Freddie Mac to its status before LBHI incurred such obligations.

---

[32] *See, e.g., Fairfield Greenwich Ltd.*, 486 B.R. at 582; *Chemtura Corp.*, 2010 WL 1379752, at *1; *In re Manhattan Inv. Fund Ltd.*, 343 B.R. at 67.

### iv.    Withdrawal of the Reference is Consistent with Applicable Law Within the Second Circuit

Withdrawal of the reference in this case is consistent with applicable authority in the Second Circuit. In a case involving a conflict between a similar transfer provision in another federal non-bankruptcy statute, 12 U.S.C. § 1821(d)(17), and the Bankruptcy Code, the Second Circuit recognized that the reference should have been withdrawn to the district court. In *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992), the court considered whether the FDIC's pursuit of fraudulent conveyance claims as Conservator under FIRREA had violated the automatic stay. The court stated that, "[a]lthough the issue is moot at this juncture, it would appear that the FDIC's motion [to withdraw the reference] should have been granted, pursuant to § 157(d), in view of the FDIC's timely motion and the asserted conflict between provisions of the Bankruptcy Code and other federal statutes." *Id.* at 128 n.5.

That LBHI's Motion to Classify raises a dispute over the classification of a claim in a bankruptcy proceeding does not render withdrawal of the reference any less mandatory where the resolution of that dispute will require the material and substantial consideration of non-bankruptcy federal law. *See, e.g., Exxon*, 932 F.2d at 1026 (noting that proceedings "must be withdrawn under § 157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce," and that the mandatory withdrawal standard does not depend on whether such proceeding falls within the bankruptcy court's "core" or "non-core" jurisdiction or whether it relates to the "allowance or disallowance of claims"); *Chateaugay Corp.*, 88 B.R. at 587-88 (finding withdrawal of reference mandatory to address, *inter alia*, a contribution claim brought against the debtors under CERCLA in an adversary proceeding because resolution of the claim—which implicated issues under the Bankruptcy Code concerning, among other things, the dischargeability and priority of the claim—would "require

- 21 -

significant interpretation of CERCLA and consideration of the ways in which the values of

environmental preservation it was enacted to protect can be reconciled with the familiar concerns

of the Bankruptcy Code").

Indeed, in the context of bankruptcy-related claims disputes and insolvency proceedings

involving the consideration and interpretation of federal non-bankruptcy statutes, courts have

repeatedly found that mandatory withdrawal of the reference is required. *See, e.g., In re Dana*,

379 B.R. at 457-62 (withdrawing the reference related to the debtors' objection to the

Government's proofs of claim and the debtors' motion for an order establishing procedures to

estimate those claims on the basis that such claim proceedings would require significant

consideration, interpretation, and application of CERCLA and would require a court to "confront

the conflict between the underlying goals of CERCLA and those of the Bankruptcy Code"); *In re*

*Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 05 Civ. 9050, 05

Civ. 9250, 05 Civ. 9285, 2006 WL 337667, at *1-*3 (S.D.N.Y. Feb. 10, 2006) (withdrawing the

reference in adversary proceedings brought by the Unsecured Creditors' Committee against

Adelphia's commercial lenders related to claims brought under RICO and the Bank Holding

Company Act); *see also Koch Supply & Trading LP v. Giddens*, 484 B.R. 18, 25 (S.D.N.Y.

2012) (concluding that withdrawal of the reference was mandatory where resolution of the

adversary proceeding "necessitate[d] significant interpretation of 17 C.F.R. § 190.08(a)(1)(i)(E),

a non-bankruptcy federal law that regulates interstate commerce" in that the CFTC's definition

of "customer property" conflicted with the definition set forth in Section 761(10) of the

Bankruptcy Code); *Picard v. Avellino*, 469 B.R. 408, 412 (S.D.N.Y. 2012) (concluding that

withdrawal of the reference was mandatory to address, *inter alia*, how securities laws affect the

"good faith" standard under the Bankruptcy Code's fraudulent transfer provisions); *In re*

*Fairfield Cmtys., Inc.*, No. LR-M-91-160, 1992 WL 158642, *2 (E.D. Ark. Apr. 14, 1992)

(withdrawing the reference to address the debtor's objection to a class proof of claim because

resolving the claim would "require substantial and material consideration of securities law").

## CONCLUSION

For the foregoing reasons, FHFA and Freddie Mac respectfully request that the Court grant their motion for withdrawal of the reference to the Bankruptcy Court of LBHI's Motion to Classify the HERA Priority Claim as a senior unsecured claim and the Opposition of FHFA and Freddie Mac to the Motion to Classify, and grant such other relief as the Court may deem just and proper.

Dated: New York, New York
October 18, 2013

_/s/ Michael J. Canning_
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399

*Attorneys for the Federal Housing Finance Agency as Conservator of the Federal Home Loan Mortgage Corporation*

_/s/ Mark S. Landman_
Mark S. Landman
LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York  10271
Telephone:  (212) 238-4800
Facsimile:  (212) 238-4848

*Attorneys for the Federal Home Loan Mortgage Corporation*