WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Christopher J. Cox

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                      :
**In re**                                             :          **Chapter 11 Case No.**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*          :          **08-13555 (JMP)**
                                                      :
                    **Debtors.**                      :          **(Jointly Administered)**
                                                      :
---------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND**
**SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL OF**
**(I) PARTIAL SETTLEMENT AGREEMENTS RELATING TO CERTAIN CREDIT**
**DEFAULT SWAP AGREEMENTS AND INDENTURES AND (II) AMENDMENT TO**
**PARTIAL SETTLEMENT AGREEMENT RELATING TO PEBBLE CREEK LCDO**
**2007-3 CREDIT DEFAULT SWAP AGREEMENT AND INDENTURE**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated October

18, 2013 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan

Administrator") as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan*

*of Lehman Brothers Holdings Inc. and its Affiliated Debtors* for certain entities in the above-

referenced chapter 11 cases, on behalf of itself and Lehman Brothers Special Financing Inc.

("LBSF"), pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the

Federal Rules of Bankruptcy Procedure for approval of the (i) partial settlement agreements among LBSF, LBHI, U.S. Bank National Association, as Trustee (the "Trustee"), ABS LIBOR Fund, Ltd. (the "LIBOR Fund"), and either Exum Ridge CBO 2006-1, Ltd. and Exum Ridge CBO 2006-1, Corp., or Exum Ridge CBO 2007-2, Ltd. and Exum Ridge CBO 2007-2, Corp.; and (ii) amendment to the partial settlement agreement dated as of March 8, 2013, among LBSF, LBHI, the Trustee, the LIBOR Fund, Pebble Creek LCDO 2007-3, Ltd. and Pebble Creek LCDO 2007-3, Corp., as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 20, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at *www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Jacqueline Marcus, Esq. and Christopher J. Cox, Esq., attorneys for the Plan

2

Administrator; (iii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite

1006, New York, New York 10014, Attn: Tracy Hope Davis, Esq., Susan Golden, Esq., and

Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street NW,

Suite 1100, Washington, District of Columbia 20006, Attn: David S. Cohen, Esq., attorneys for

the official committee of unsecured creditors appointed in these cases; and (v) Chapman and

Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603, Attn: Franklin H. Top, III, Esq.

and Scott A. Lewis, Esq., attorneys for U.S. Bank National Association, as Trustee, so as to be so

filed and received no later than **November 13,  2013 at 4:00 p.m. (Prevailing Eastern Time)**

**(the "Objection Deadline")**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York
          October 18, 2013                    /s/ Jacqueline Marcus
                                              Jacqueline Marcus
                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone: (212) 310-8000
                                              Facsimile: (212) 310-8007

                                              Christopher J. Cox
                                              WEIL, GOTSHAL & MANGES LLP
                                              201 Redwood Shores Parkway
                                              Redwood Shores, California 94065
                                              Telephone: (650) 802-3000
                                              Facsimile: (650) 802-3100

                                              *Attorneys for Lehman Brothers Holdings Inc.*
                                              *and Lehman Brothers Special Financing Inc.*

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Christopher J. Cox

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :   08-13555 (JMP)
                                          :
              Debtors.                    :   (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

**MOTION PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE AND**
**SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL OF**
**(I) PARTIAL SETTLEMENT AGREEMENTS RELATING TO CERTAIN CREDIT**
**DEFAULT SWAP AGREEMENTS AND INDENTURES AND (II) AMENDMENT TO**
**PARTIAL SETTLEMENT AGREEMENT RELATING TO PEBBLE CREEK LCDO**
**2007-3 CREDIT DEFAULT SWAP AGREEMENT AND INDENTURE**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator") as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan") for certain entities in the above-referenced

chapter 11 cases, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"),

submits this motion (the "Motion") and respectfully represents:

## Relief Requested

1.        By this Motion, pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), the Plan Administrator on behalf of itself and LBSF seeks

approval of two partial settlements among the parties identified below, and requests that such

approval be immediately effective and enforceable.  The terms of each partial settlement are

incorporated in two separate settlement agreements (the "Exum Ridge Agreements").  The Exum

Ridge Agreements are among LBHI, LBSF, U.S. Bank National Association ("U.S. Bank" or the

"Trustee"), solely in its capacity as trustee under the indentures described on Exhibit A annexed

hereto (collectively, the "Exum Ridge Indentures"), ABS LIBOR Fund, Ltd. (the "LIBOR

Fund") and the following entities in their respective roles as the Issuer or Co-Issuer:  (i) Exum

Ridge CBO 2006-1, Ltd., as Issuer, and Exum Ridge CBO 2006-1, Corp., as Co-Issuer; and

(ii) Exum Ridge CBO 2007-2 Ltd., as Issuer, and Exum Ridge CBO 2007-2, Corp., as Co-Issuer.

2.        In addition, the Plan Administrator seeks approval of an amendment to the

partial settlement agreement, dated as of March 8, 2013 (the "Initial Pebble Creek Agreement"),

among LBHI, LBSF, the LIBOR Fund, Pebble Creek LCDO 2007-3, Ltd., as Issuer, and Pebble

Creek LCDO 2007-3, Corp., as Co-Issuer, and the Trustee, solely in its capacity as trustee under

the Indenture, dated as of July 19, 2007, among Pebble Creek LCDO 2007-3, Ltd., as Issuer,

Pebble Creek LCDO 2007-3, Corp., as Co-Issuer, and U.S. Bank (as supplemented from time to

2

time, the "Pebble Creek Indenture"),[1] which was approved by the Court on April 23, 2013 [ECF

No. 36763] (the "Amended Pebble Creek Agreement" and, together with the Exum Ridge

Agreements, the "Settlement Agreements").[2]

## Background

3.        Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF,

commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11

of the Bankruptcy Code.

4.        On September 17, 2009, the Court entered the *Alternative Dispute*

*Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts*

[ECF No. 5207] (the "ADR Procedures Order").

5.        On March 3, 2011, the Court entered the *Alternative Dispute Resolution*

*Procedures Order for Affirmative Claims of the Debtors under Derivatives Transactions with*

*Special Purpose Vehicle Counterparties* [ECF No. 14789] (the "SPV ADR Procedures Order").

6.        On December 6, 2011, the Court approved and entered an order

confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

## Jurisdiction

7.        This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] The Exum Ridge Indentures and the Pebble Creek Indenture (together, the "Indentures") are voluminous and have not been attached hereto.  The Plan Administrator shall furnish a copy of any referenced indenture upon request by a party in interest.

[2] Each Settlement Agreement is among, LBHI, LBSF, the Trustee, the LIBOR Fund and a party identified as the Issuer or the Co-Issuer.  Unless otherwise stated, any reference herein to the Issuer or Co-Issuer is applicable to each entity identified as such in the Settlement Agreements.

3

**The Exum Ridge Credit Default Swap Agreements and The Exum Ridge Indentures**

8.      LBSF and each Issuer identified in the Exum Ridge Agreements (each an "Exum Ridge Issuer"), entered into a credit default swap transaction (each an "Exum Ridge Transaction") pursuant to a form ISDA Master Agreement (the "ISDA Master Agreement"), as amended and supplemented by a certain Schedule to ISDA Master Agreement (the "Schedule"), and a confirmation (the "Confirmation").  LBHI guaranteed LBSF's obligations under each ISDA Master Agreement, Schedule and Confirmation (the "Guarantee" and, together with each ISDA Master Agreement, Schedule, and Confirmation, an "Exum Ridge Credit Default Swap Agreement").[3]

9.      Under each Exum Ridge Credit Default Swap Agreement, LBSF agreed to make periodic payments to the Exum Ridge Issuer in exchange for the Exum Ridge Issuer's promise to make payments to LBSF in respect of losses incurred in respect of certain specified reference obligations.  In effect, LBSF, as the "Swap Counterparty," purchased protection from the Exum Ridge Issuer, which sold protection on the creditworthiness of the obligations referenced in the applicable Exum Ridge Credit Default Swap Agreement.

10.     Each Exum Ridge Issuer issued various classes of notes (the "Notes") under its respective Indenture and preference shares under a shares paying agency agreement (the "Preference Shares" and, together with the Notes, the "Securities").  The Notes were secured by a pool of collateral (the "Collateral") that also secured the Exum Ridge Credit Default Swap Agreement.  Through a series of note purchases, LBSF is now both a holder of certain of the Notes and the Swap Counterparty under each Exum Ridge Credit Default Swap Agreement (in

---

[3] A description of each Exum Ridge Credit Default Swap Agreement is set forth on Exhibit B annexed hereto.  The Exum Ridge Credit Default Swap Agreements are voluminous and have not been attached.  The Plan Administrator shall furnish a copy of any Exum Ridge Credit Default Swap Agreement upon request by a party in interest.

4

such latter capacity, the "Swap Counterparty").  Each Exum Ridge Issuer pledged the Collateral

to the Trustee for the benefit and security of the holders of the Notes (the "Noteholders"), which

now include LBSF, and to LBSF, in its capacity as Swap Counterparty.  The Trustee continues to

hold the Collateral under the Indenture for the benefit of the holders of the Notes (including

LBSF) and LBSF as Swap Counterparty.

      11.    Pursuant to the Granting Clause of each Exum Ridge Indenture, the Exum

Ridge Issuer granted to the Trustee, for the benefit and security of the secured parties, all of its

right, title and interest, whether now owned or hereafter acquired, in, to and under, *inter alia*, the

Exum Ridge Issuer's rights under the Exum Ridge Credit Default Swap Agreement, the

Collateral, and substantially all other assets of the Exum Ridge Issuer.

      12.    Under the terms of the Exum Ridge Indentures, the Trustee applies

payment proceeds received generally in accordance with a "waterfall" provision.  *See* Exum

Ridge Indenture § 11.1.  Section 11.1(B)(i) clause "third" of the Indenture provides that a

termination payment owed to LBSF as Swap Counterparty will be paid in advance of any

distributions to Noteholders unless, *inter alia*, LBSF is the defaulting party under the

Transaction.  *See id.* § 11.1(B)(i).  Under clause "second" of Section 11.1(B)(xiv), if, *inter alia*,

LBSF is the defaulting party under the Exum Ridge Transaction, the termination payment owed

to LBSF is paid after the Noteholders and before the holders of Preference Shares (the

"Preference Shareholders").  *See id.* § 11.1(B)(xiii).[4]  As a result, Section 11.1(B)(i) clause

"third" and Section 11.1(B)(xiv) clause "second" of the Exum Ridge Indentures (the "Waterfall

Provisions") purport to provide that LBSF will receive termination payments before any

---

[4] In the Exum Ridge Indenture, dated as of May 2, 2007, among Exum Ridge CBO 2007-2, Ltd., as Issuer, Exum Ridge CBO 2007-2, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time, the applicable section is Section 11.1(B)(xi).

US_ACTIVE:\44340877\1\58399.0011

distributions are made to Noteholders unless, *inter alia*, LBSF is the defaulting party under the Exum Ridge Transaction.

### The Dispute

13.     Since the Commencement Date, neither LBSF as Swap Counterparty nor the Trustee has paid any amounts that have become due under the Exum Ridge Indentures and the Exum Ridge Credit Default Swap Agreements.  On November 25, 2008, the Trustee received a letter from LBSF's counsel advising, *inter alia*, that (a) any action taken to exercise remedies with respect to the Notes would violate the automatic stay and, therefore, any actions to make distributions to Noteholders would violate the stay, and (b) any provision subordinating any termination payment due LBSF would be unenforceable.  On November 28, 2008, each Issuer sent to LBSF a "Notice of Early Termination" which terminated each applicable Transaction (as defined below) as of November 28, 2008.  As a result of LBSF's dispute regarding, among other things, the enforceability of the Waterfall Provisions (the "Payment Dispute"), none of the parties to any Exum Ridge Credit Default Swap Agreement has paid any amounts (including termination payments) that became due to the other applicable parties on or after November 28, 2008.

14.     On April 20, 2010, LBSF commenced Derivatives ADR No. 157 by serving an ADR Notice upon the Trustee and each Issuer pursuant to the ADR Procedures Order.  On June 4, 2010, the Trustee served an ADR Response upon LBSF as required by the ADR Procedures Order.

15.     On September 14, 2010, LBSF filed a complaint against, among others, the Trustee and each Issuer.  *See* Adversary Proceeding No. 10-03542-JMP (the "Litigation").  At issue in Derivatives ADR No. 157 and in the Litigation is the Payment Dispute, including questions as to the proper interpretation of the Exum Ridge Credit Default Swap Agreements and

6

the Exum Ridge Indentures.  The Litigation relates to the instant Payment Dispute among the

Parties, as well as other similar disputes involving other issuers and trustees.

16.    In the Litigation, LBSF seeks a declaratory judgment that provisions

purporting to modify LBSF's economic rights to a termination payment premised on the

bankruptcy filing of either LBHI or LBSF constitute unenforceable *ipso facto* clauses that

inappropriately modify a debtor's interest in property, in violation of sections 365(e)(1) and

541(c)(1) of the Bankruptcy Code.  LBSF also seeks a declaratory judgment that effectuation of

the Waterfall Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy

Code because it involves an improper exercise of control over property of LBSF's estate.  *See

generally Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd.* (*In re Lehman

Bros. Holdings Inc.*), 452 B.R. 31 (Bankr. S.D.N.Y. 2011); *Lehman Bros. Special Fin. Inc. v.

BNY Corp. Tr. Servs. Ltd.* (*In re Lehman Bros. Holdings Inc.*), 422 B.R. 407 (Bankr. S.D.N.Y.

2010).  In the alternative, LBSF seeks a declaratory judgment that, if the Waterfall Provisions

ultimately are found to be enforceable in whole or in part, they constitute either (i) a preferential

transfer of an interest of LBSF in property that may be avoided under section 547 of the

Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the

benefit of LBSF's estate under section 551 of the Bankruptcy Code; (ii) a constructive fraudulent

transfer of an interest of LBSF in property that may be avoided under section 548(a)(1)(B) of the

Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the

benefit of LBSF's estate under section 551 of the Bankruptcy Code; or (iii) an unauthorized

postpetition transfer of property of LBSF's estate that may be avoided under section 549 of the

Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the

US_ACTIVE:\44340877\1\58399.0011

benefit of LBSF's estate under section 551 of the Bankruptcy Code.  The positions advanced by LBSF in the Litigation are not those of the Trustee.

17.    On October 20, 2010, the Court entered the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [ECF No. 12199], thereby staying, among other things, certain adversary proceedings, including the Litigation, to allow parties to the Litigation and other similar actions time to explore the possibility of resolving their disputes without the need for litigation (the "Stay").  The Stay has been subsequently extended by orders of the Court, most recently pursuant to the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated July 18, 2013 [ECF No. 38806], which extended the Stay until January 20, 2014.  Accordingly, as a result of the Stay, the Issuers and the Trustee have not answered or otherwise moved for any relief in the Litigation.

18.    On April 1, 2011, LBSF submitted an SPV Derivatives ADR Election pursuant to which LBSF recommenced the ADR process under the SPV ADR Procedures Order. The Trustee served an amended ADR Response on June 13, 2011, and LBSF served its ADR Reply on July 5, 2011.  LBSF and the Trustee participated in mediations pursuant to the ADR process on and after December 7, 2012.  At various junctures following the commencement of the Litigation and through and including the mediation, LBSF and the Trustee have engaged in settlement discussions.

19.    Throughout the course of its settlement negotiations with LBSF and its participation in the Litigation, the Trustee has made numerous attempts to contact Noteholders and Preference Shareholders for direction regarding the Payment Dispute and the application of

proceeds from the sale of the Collateral.[5]  However, with limited exceptions, Noteholders and

Preference Shareholders have not adequately responded to the Trustee's communications.  As a

result, the Trustee has advised LBSF that it is prepared to enter into the Exum Ridge

Agreements, provided the Court approves of the terms of the Exum Ridge Agreements pursuant

to the terms of Bankruptcy Rule 9019.  Entry of an order by this Court, in the form annexed

hereto, is a condition precedent to the effectiveness of the Settlement Agreements.

### The Initial Pebble Creek Agreement

20.     The credit default swap transaction relating to Pebble Creek LCDO 2007-

3, Ltd. and Pebble Creek LCDO 2007-3, Corp. (the "Pebble Creek Transaction" and, together

with the Exum Ridge Transactions, the "Transactions"), is described more fully in the motion

seeking approval of the Initial Pebble Creek Agreement [ECF No. 35813].  The Pebble Creek

Transaction has waterfall provisions that are similar to the Exum Ridge Transactions and that are

also subject of the Litigation.  The Initial Pebble Creek Agreement partially resolved disputes

relating to the Pebble Creek Transaction by authorizing the Trustee to make distributions to

LBSF in respect of all the Notes that LBSF had acquired, and providing for an escrow account

for amounts relating to Notes not owned by LBSF.  In May 2013, LBSF receive distributions

owing under the Initial Settlement Agreement.

21.     Based on the most recent negotiations between LBSF and the Trustee,

LBHI, LBSF, the Trustee, Pebble Creek LCDO 2007-3, Ltd. and Pebble Creek LCDO 2007-3,

LLC, have agreed to amend the Initial Pebble Creek Agreement to provide a more

comprehensive settlement with respect to the Pebble Creek Transaction.  The revised settlement

reflected in the Amended Pebble Creek Agreement includes terms that are similar to the Exum

---

[5]  The Trustee will file an affidavit detailing its attempts to contact Noteholders and Preference Shareholders in
advance of the hearing on this Motion.

Ridge Agreements, as well as other more recent settlements relating to credit default swap transactions.  The Amended Pebble Creek Agreement provides LBSF with the means to settle its dispute with Noteholders, which will likely provide LBSF with an additional distribution from the Pebble Creek escrow account.

### The Settlement Agreements[6]

22.    Although the terms of each Exum Ridge Agreement are virtually identical, each Exum Ridge Agreement is separate from the other.  As a result, the reserve and escrow accounts described below will be separate for each Exum Ridge Transaction.  Likewise, the conditions to effectiveness may be satisfied to one Exum Ridge Transaction and not the other.

23.    The salient terms of each Exum Ridge Agreement are as follows:

a.    The Exum Ridge Issuer and the Trustee shall take such actions as shall be necessary to cause certain assets held in respect of the Collateral to be redeemed or otherwise liquidated, and to cause the net proceeds thereof to be deposited with the Trustee (the "Investment Proceeds"), for further application as set forth below.

b.    Notwithstanding any provision to the contrary in the Indenture, the Trustee shall distribute and apply the Investment Proceeds, as well as certain other amounts as set forth in the Settlement Agreement, as follows, and in the following order and priority:

1.    Pay the outstanding fees and expenses of the Trustee.

2.    Pay to each Noteholder other than LBSF that does not object to the Settlement Agreement or this Motion an amount equal to the Settlement Offer (as defined in the Settlement Agreement) (the "Noteholder Settlement Amount"), in full satisfaction of claims of such holders of such Notes; provided however that payment of the

---

[6] In keeping with the confidentiality provisions of the Parties' partial settlement, and due to LBHI's and LBSF's desire to keep the economic terms of the settlement confidential, the Settlement Agreements are not included as exhibits to this Motion.  The Parties will provide the Settlement Agreements to the Court, the U.S. Trustee, and the Creditors' Committee.  Noteholders and holders of Preference Shares must contact the Trustee for copies of the Settlement Agreement relating to their applicable Securities and, before receiving any such copies, such Noteholders or holders of Preference Shares will be required to execute an agreement binding them to the confidentiality restrictions of the parties' partial settlement, including paragraph 13 of the SPV ADR Procedures Order.

US_ACTIVE:\44340877\1\58399.0011

Noteholder Settlement Amount is subject to the receipt by the Trustee of an opinion or information regarding the fairness and reasonableness of the Noteholder Settlement Amount, or waiver of such receipt by the Trustee as to all or some of the Notes (such receipt or waiver of receipt, the "<u>Noteholder Settlement Amount Condition</u>").

3.   Place into an interest-bearing account an amount to be held in respect of a reserve, which the Trustee may use for fees and expenses as enumerated in the Settlement Agreement, which amount may be invested in Eligible Investments as defined in the Indenture (the "<u>Reserve Amount</u>").

4.   With respect to any Noteholder that timely objects to an Exum Ridge Agreement or this Motion (an "<u>Objecting Noteholder</u>"), place into an account with the Trustee, which may be invested in Eligible Investments as defined in the Indenture, an amount (the "<u>Escrow Amount</u>") to secure payment of the claims of any such Objecting Noteholder; provided however, that if the Noteholder Settlement Amount Condition is not met, the Escrow Amount shall be an amount sufficient to secure payment of the claims of any and all Noteholders other than LBSF.

5.   Upon LBSF's delivery of its Notes to the Trustee as set forth in the Settlement Agreement, pay the remaining amount (the "<u>Settlement Amount</u>") to LBSF.

c.   LBSF retains all rights as Noteholder or Swap Counterparty except as otherwise explicitly set forth in the Settlement Agreement.

d.   To the extent that LBSF, subsequent to execution and delivery of the Settlement Agreement, purchases the remaining issued and outstanding Notes of the Issuer and the Co-Issuer existing outside of LBSF's ownership (the "<u>Remaining Notes</u>") and purchases Notes from Objecting Noteholders (together, the "<u>Subsequent Lehman Settlement Amount</u>") that it does not currently hold, commensurate *pro rata* amounts will be deducted from the Escrow Amount and paid to LBSF.

e.   Distribution of any remaining Escrow Amount and any remaining Reserve Amount to LBSF will be subject to certain conditions set forth in the Settlement Agreement.

f.   LBSF, solely in its capacity as Noteholder, agrees not to assert that it is entitled to be paid on a senior or *pari passu* basis with the Notes that it does not hold (but LBSF reserves the right to assert

11

that it is entitled to be paid amounts owing under the Notes it owns on a junior basis to the Notes it does not own and in an amount not to exceed the lesser of (a) the unpaid amount of principal and interest due on the Notes that LBSF owns (after taking into account the Settlement Payment or applicable Subsequent Settlement Payment, as the case may be, to the extent any such payment is deemed to be a payment under the Notes that LBSF owns, as the case may be), or (b) the then remaining Escrow Amount).

g.  Upon distribution of the remaining Escrow Amount, any proof of claim filed by the Trustee, the Exum Ridge Issuer or the Co-Issuer that is related to the Transaction and subject to the Settlement Agreement, shall be withdrawn.  The Trustee, Issuer and Co-Issuer (or the Trustee on their behalf) authorize the Plan Administrator to execute and deliver an Instruction Letter to Epiq Bankruptcy Solutions, LLC, the claims agent, to update the claims register accordingly.

h.  Upon release of the remaining Escrow Amount, the Indenture shall be deemed discharged and terminated, and each of the Issuer and Co-Issuer shall undertake their dissolution.

i.  LBSF and the Plan Administrator acknowledge and agree that they, and any agents and assigns thereof, as applicable, will only seek payment for damages and other relief, including interest thereon, with respect to or in connection with the Transaction (including, without limitation, any termination payment), the Notes, the Preference Shares, the Indenture and/or the Credit Default Swap Agreement in the adversary proceeding, *Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, et al.*, Adversary Proceeding No. 10-3542 (JMP), pending in this Court, in an aggregate amount not greater than the then remaining Escrow Amount.

24.     The salient terms of the Amended Pebble Creek Agreement are as

follows:[7]

a.  Notwithstanding any provision to the contrary in the Pebble Creek Indenture or the Initial Pebble Creek Agreement, the Trustee shall distribute and apply the Investment Proceeds, as well as certain

---

[7] Unless otherwise defined herein, capitalized terms utilized in this paragraph shall have the same meanings ascribed to such terms in this Motion, except that they shall refer to the Pebble Creek Transaction.

12

US_ACTIVE:\44340877\1\58399.0011

other amounts as set forth in the Amended Pebble Creek Agreement, as follows, and in the following order and priority:

1. Pay the outstanding fees and expenses of the Trustee.

2. Pay to each Noteholder other than LBSF that does not object to the Settlement Agreement or this Motion the Noteholder Settlement Amount, in full satisfaction of claims of such holders of such Notes; provided however that payment of the Noteholder Settlement Amount is subject to the Noteholder Settlement Amount Condition.

3. With respect to any Objecting Noteholder, leave in the existing Escrow Account, an amount to secure payment of the claims of any such Objecting Noteholder; provided however, that if the Noteholder Settlement Amount Condition is not met, the Escrow Amount shall be an amount sufficient to secure payment of the claims of any and all Noteholders other than LBSF.

4. Pay any remaining amount to LBSF.

b. Upon distribution of the remaining Escrow Amount, any proof of claim filed by the Trustee, the Issuer or the Co-Issuer that is related to the Transaction and subject to the Settlement Agreement, shall be withdrawn. The Trustee, Issuer and Co-Issuer (or the Trustee on their behalf) authorize the Plan Administrator to execute and deliver an Instruction Letter to Epiq Bankruptcy Solutions, LLC, the claims agent, to update the claims register accordingly.

c. Upon release of the remaining Escrow Amount, the Pebble Creek Indenture shall be deemed discharged and terminated, and each of the Issuer and Co-Issuer shall undertake their dissolution.

### The Partial Settlements Are in LBSF's Best Interests and Should Be Approved

25. The Plan Administrator on behalf of itself and LBSF submits that the Settlement Agreements are in LBSF's best interests and should be approved under Rule 9019 of the Bankruptcy Rules. Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr.

13

S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."  *Id.*; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

26.    Compromises are "a normal part of the process of reorganization."  *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  Compromises may be effected separately during the reorganization proceedings or in the body of the plan itself.  *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 758.  The decision to approve a particular compromise lies within the sound discretion of the Court.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The Court's discretion may be exercised "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate."  *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).  The court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."  *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

27.    Courts typically consider the following factors in determining whether a settlement should be approved:  (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who

14

affirmatively support, the proposed settlement; (v) the competence and experience of counsel

who support the settlement; (vi) the relative benefits to be received by members of any affected

class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and

not the product of fraud or collusion; and (viii) the debtor's informed judgment that the

settlement is fair and reasonable.  *See Protective Comm. for Indep. Stockholders of TMT Trailer*

*Ferry, Inc.*, 390 U.S. at 424; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y.

1998); *In re Best Prods. Co.*, 168 B.R. at 50.

28.     While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re*

*W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation.

*Drexel Burnham Lambert Group*, 134 B.R. at 496.  Moreover, in reviewing a global

compromise, a court need not be aware of or decide the particulars of each individual claim

resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need

only canvass the issues and see whether the settlement falls 'below the lowest point in the range

of reasonableness.'"  *Shugrue*, 165 B.R. at 123.  As one court explained in assessing a global

settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its*

*entirety* is appropriate for the . . . estate."  *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust*

*Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d

Cir. 1993) (emphasis added).

29.     Here, each Settlement Agreement will benefit LBSF and its creditors by

allowing LBSF to capture a substantial amount of the value of each Transaction and the Notes

that it owns for its estate.  The Settlement Agreements will not resolve the Payment Dispute:

15

LBSF retains the right to maintain its positions in respect of the Payment Dispute in the

Litigation or elsewhere, subject to the limitations as to the amount of its recovery set forth in the

Settlement Agreements.   Regardless, in the Plan Administrator's informed business judgment,

the compromises set forth in the Settlement Agreements are "fair and equitable," are well within

the "range of reasonableness," and are in the best interests of LBSF's estate and its creditors.

Accordingly, the Plan Administrator requests that the Settlement Agreements be approved,

effective immediately upon entry of an order granting the relief requested herein.

**The Bankruptcy Court Has Authority Pursuant to
Section 105(a) of the Bankruptcy Code to Approve the Settlement Agreements**

30.     The Plan Administrator seeks approval of the Settlement Agreements

pursuant to section 105(a) of the Bankruptcy Code so that the Collateral may be liquidated and

disposed of as set forth in the Settlement Agreement.  This Court has authority under the broad

equitable powers of the Bankruptcy Code, as set forth in section 105(a), to approve the

Settlement Agreements.  Courts have used their equitable powers to permit deviations in trust

agreements in order to preserve and protect a trust or where circumstances exist that would

defeat or substantially impair the accomplishment of the purposes of the trust.  *See, e.g., In re*

*A.H. Robbins*, 880 F.2d 769, 776 (4th Cir. 1989) (noting that section 105(a) authorizes the court

to "issue any order, process or judgment that is necessary or appropriate to carry out the

provisions" of the Bankruptcy Code and finding that matters relating to the control and

supervision of trusts are within the equity jurisdiction of the court); *In re Joint Eastern and*

*Southern Districts Asbestos Litigation*, 878 F. Supp 473 (E.D.N.Y. & S.D.N.Y. 1995) and 129

B.R. 710 (E.D.N.Y. & S.D.N.Y. 1991) (holding that section 105(a) authorizes the federal courts

in bankruptcy cases to approve a settlement modifying distributions, obligations, and payment

procedures under a trust).  Accordingly, the Court has authority under section 105(a) of the

US_ACTIVE:\44340877\1\58399.0011

Bankruptcy Code to direct the Trustee to deviate from the terms of the Indenture, where strict adherence to the terms of the Indenture would frustrate the Issuer's economic stakeholders from realizing the value of their interests in the Collateral held under the Indenture by the Trustee for the benefit of the Noteholders, including LBSF.

31.    The Court has granted similar relief in these chapter 11 cases, pursuant to section 105(a) of the Bankruptcy Code.  On August 22, 2013, the Court entered an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving five similar partial settlement agreements among LBSF, LBHI, the LIBOR Fund, U.S. Bank, as trustee, and various issuers and co-issuers relating to certain credit default swap agreements and indentures [ECF No. 39624].  *See also*, *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Partial Settlement Agreement Relating to Airlie CDO I, Ltd*. [ECF No. 39017]; *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Partial Settlement Agreement Relating to Pebble Creek LCDO 2007-3, Ltd*. [ECF No. 36867]; *Order Approving Settlement Agreement and Indemnity Between Lehman Brothers Special Financing Inc. and Deutsche Bank Trust Company Americas, as Trustee, Relating to Credit Default Swap Agreement* [ECF No. 30096].

32.    The use of the Court's equitable authority is justified and appropriate. First, LBSF is entitled to the Settlement Amount in each Transaction either in its capacity as Swap Counterparty or in its capacity as Noteholder and, as a result, payment of the Settlement Amount to LBSF is appropriate regardless of the outcome of the Payment Dispute.  Second, the Settlement Agreements protect the interests of other Noteholders by providing for the reservation of the Escrow Amount, which the Plan Administrator and LBSF believe is sufficient to pay the claims of the Objecting Noteholders, if the Noteholder Settlement Amount Condition is met or

17

waived, or the claims of all Noteholders other than LBSF, if the Noteholder Settlement Amount

Condition is not met or waived.  In addition, the Settlement Agreements provide for the

reservation of the Reserve Amount, which the Trustee may use for fees and expenses as

enumerated in each Settlement Agreement.  Third, regardless of the outcome of the Payment

Dispute, the payment rights of the Preference Shareholders will be subordinated to those of both

the Noteholders and LBSF, as Swap Counterparty; as a result, the Preference Shareholders

should be indifferent to the approval of the Settlement Agreements because they will not receive

a payment under the waterfall under any scenario.  Moreover, any interested parties that may

object to the terms of the Settlement Agreements will have the opportunity to lodge an objection

with and be heard by this Court.

33.     The Amended Pebble Creek Agreement puts in place a mechanism

virtually identical to the one set forth in each Exum Ridge Agreement.  The Amended Pebble

Creek Agreement will afford LBSF the ability to implement a further settlement of the

underlying dispute in the Litigation and to receive an additional distribution, while continuing to

preserve the rights of any Noteholders who object to the Amended Settlement Agreement or this

Motion.

### Notice

34.     No trustee has been appointed in these chapter 11 cases.  The Plan

Administrator has served notice of this Motion in accordance with the procedures set forth in the

second amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

Southern District of New York; (v) the attorneys for the Trustee; and (vi) all parties who have

US_ACTIVE:\44340877\1\58399.0011

requested notice in the Chapter 11 Cases.  The Plan Administrator submits that no other or further notice need be provided.

35.    No previous request for the relief sought herein has been made by the Plan Administrator to this or any other court.

WHEREFORE the Plan Administrator on behalf of itself and LBSF respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
      October 18, 2013

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Christopher J. Cox
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

19

**Exhibit A**

Exum Ridge Indentures

- Indenture, dated as of February 16, 2006, among Exum Ridge CBO 2006-1, Ltd., as Issuer, Exum Ridge CBO 2006-1, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

- Indenture, dated as of May 2, 2007, among Exum Ridge CBO 2007-2, Ltd., as Issuer, Exum Ridge CBO 2007-2, Corp., as Co-Issuer, and U.S. Bank National Association, as trustee, as supplemented from time to time.

**Exhibit B**

Exum Ridge Credit Default Swap Agreements

Exum Ridge CBO 2006-1, Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of February 16, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-1, Ltd., as amended from time to time.
- Confirmation, dated February 16, 2006, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2006-1, Ltd., as amended from time to time.
- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of February 16, 2006.

Exum Ridge CBO 2007-2, Ltd.:

- 1992 ISDA Master Agreement (including a Schedule thereto), dated as of May 2, 2007, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2007-2, Ltd., as amended from time to time.
- Confirmation, dated May 2, 2007, between Lehman Brothers Special Financing Inc. and Exum Ridge CBO 2007-2, Ltd., as amended from time to time.
- Guarantee executed by Lehman Brothers Holdings Inc. of Lehman Brothers Special Financing Inc.'s obligations under the ISDA Master Agreement, Schedule and Confirmation, dated as of May 2, 2007.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                         :
In re                                    :      Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :      08-13555 (JMP)
                                         :
             Debtors.                    :      (Jointly Administered)
                                         :
--------------------------------------------------------------x
```

**ORDER PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE AND**
**SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL OF**
**(I) PARTIAL SETTLEMENT AGREEMENTS RELATING TO CERTAIN CREDIT**
**DEFAULT SWAP AGREEMENTS AND INDENTURES AND (II) AMENDMENT TO**
**PARTIAL SETTLEMENT AGREEMENT RELATING TO PEBBLE CREEK LCDO**
**2007-3 CREDIT DEFAULT SWAP AGREEMENT AND INDENTURE**

Upon the motion, dated October 18, 2013 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI" or the "Plan Administrator") as Plan Administrator under the *Modified*

*Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated*

*Debtors*, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"), pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section

105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of two partial

settlement agreements and an amendment to the partial settlement agreement dated as of March

8, 2013, each as described on Exhibit 1 annexed hereto (collectively, the "Settlement

Agreements"), all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance

with the procedures set forth in the amended order entered on June 17, 2010, governing case

management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S.

Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the

United States Attorney for the Southern District of New York; (v) the attorneys for the Trustee;

and (vi) all parties who have requested notice in the Chapter 11 Cases, and it appearing that no

other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Motion; and the Trustee having provided reasonable notice to the Noteholders

and the Preference Shareholders; and the Court having found and determined that the relief

sought in the Motion is in the best interests of LBHI and LBSF, their estates, their creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement Agreements

are approved; and it is further

ORDERED that LBSF is authorized to execute, deliver, implement and fully

perform any and all obligations, instruments, documents and papers and to take any and all

actions reasonably necessary or appropriate to consummate the Settlement Agreements and to

perform any and all obligations contemplated therein; and it is further

ORDERED that, pursuant to section 105(a) of the Bankruptcy Code, the Trustee

is authorized and directed to take such actions as it reasonably deems necessary or appropriate to

US_ACTIVE:\44340877\1\58399.0011

consummate the Settlement Agreements and to perform any and all obligations contemplated therein, including without limitation to cause certain assets held in respect of the applicable Collateral[1] to be redeemed or otherwise liquidated, and to distribute and apply the proceeds therefrom, as well as certain other amounts that have accrued on or are otherwise available with respect to assets of the applicable Issuer, as provided for in the Settlement Agreements; and it is further

ORDERED that this Order is final, binding and effective on the Chapter 11 Estates, all current and future Noteholders and Preference Shareholders, as well as the Trustee and any successor thereto.  The Chapter 11 Estates and U.S. National Bank Association, in its individual capacity and as Trustee, and its current and former officers, directors, shareholders, employees, agents, attorneys, successors and assigns, shall be and hereby are, fully exculpated and shall not have liability to each other, the Chapter 11 Estates, Noteholders or Preference Shareholders arising out of, relating to, or in connection with the Motion, the Settlement Agreements or this Order, except to the extent of any obligations set forth in the Settlement Agreements that have not been performed; and it is further

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion and shall refer to the applicable Transaction.

3

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: New York, New York
         _____, 2013


_____
UNITED STATES BANKRUPTCY JUDGE

4

**Exhibit 1**

Settlement Agreements

- First Amendment to Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated July 19, 2007, Pebble Creek LCDO 2007-3, Ltd., as Issuer, and Pebble Creek LCDO 2007-3, Corp., as Co-Issuer.

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated February 16, 2006, ABS LIBOR Fund, Ltd., Exum Ridge CBO 2006-1, Ltd., as Issuer, and Exum Ridge CBO 2006-1, Corp., as Co-Issuer.

- Settlement Agreement among Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., U.S. Bank National Association, solely in its capacity as trustee under the Indenture, dated September 15, 2006, ABS LIBOR Fund, Ltd., Exum Ridge CBO 2007-2, Ltd., as Issuer, and Exum Ridge CBO 2007-2, Corp., as Co-Issuer.