WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Lori R. Fife
Alfredo R. Pérez

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

**OBJECTION TO THE MOTION OF THE**
**FEDERAL HOUSING FINANCE AGENCY AND THE FEDERAL HOME LOAN**
**MORTGAGE CORPORATION TO STAY LEHMAN BROTHERS HOLDINGS INC.'S**
**MOTION TO CLASSIFY AND ALLOW THE CLAIM FILED BY THE FEDERAL**
**HOME LOAN MORTGAGE CORPORATION (CLAIM NO. 33568) IN LBHI CLASS 3**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") files this objection to the motion [ECF No.

40570] (the "Stay Motion") of the Federal Housing Finance Agency (the "FHFA" or

"Conservator") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and together

with the FHFA, the "Movants") seeking to stay LBHI's *Motion to Classify and Allow the Claim*

*Filed by the Federal Home Loan Mortgage Corporation (Claim No. 33568) in LBHI Class* 3

[ECF No. 40066] (the "Classification Motion")[1] pending consideration of Freddie Mac's motion

to withdraw the reference [ECF No. 40567] (the "Motion to Withdraw the Reference") and

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      At the eleventh hour, and less than one week before the hearing on the

Classification Motion, Movants filed the Stay Motion in an attempt to further delay the

straightforward adjudication of the Classification Motion.  Although LBHI was provided with

insufficient time to properly respond to the Stay Motion, LBHI submits this objection to the

Stay Motion and reserves all rights to further supplement its objection.

2.      Movants have failed to overcome their burden of demonstrating that a stay of the

hearing on the Classification Motion is warranted.  Fatally, Movants have failed to demonstrate

that they are likely to prevail on the merits of the Motion to Withdraw the Reference because

they have not shown that the adjudication of the Classification Motion requires application of

non-bankruptcy law.  To the contrary, the Classification Motion requires a straightforward

application of section 507 of the Bankruptcy Code.  Furthermore, a balancing of harms favors

denial of the Stay Motion because Movants have not shown that they would be harmed, whereas

LBHI, its creditors, and the public interest would be harmed by the delay of distributions caused

by the stay.

3.      Accordingly, the Plan Administrator requests that the Court deny the Stay

Motion.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Classification Motion.

US_ACTIVE:\44352884\5\58399.0011

## FACTUAL BACKGROUND

4.      On September 6, 2008, the FHFA was appointed as Conservator for Freddie Mac pursuant to the Housing and Economic Recovery Act of 2008 ("HERA").  On September 22, 2009, Freddie Mac filed claim number 33568 against LBHI in the aggregate liquidated amount of $1,202,241,875 (the "Claim").

5.      On September 13, 2013, LBHI filed the Classification Motion seeking to classify and allow the claim in LBHI Class 3 setting it for hearing on October 24, 2013, six weeks later. On October 17, 2013, the Movants filed an objection to the Classification Motion [ECF No. 40550].  On October 18, 2013, the Movants filed (i) the Motion to Withdraw the Reference, seeking to withdraw the litigation of the Classification Motion to the United States District Court for the Southern District of New York (the "District Court") and (ii) the Stay Motion, seeking to stay the hearing on the Classification Motion pending a decision on the Motion to Withdraw the Reference.  On October 22, 2013, LBHI filed a reply in support of the Classification Motion [ECF No. 40630], attached hereto as Exhibit A.

## THE STAY MOTION SHOULD BE DENIED

6.      In order to prevail on the Stay Motion, Movants bear the burden of demonstrating that (i) they are likely to prevail on the merits of the Motion to Withdraw the Reference, (ii) they will suffer irreparable harm if the stay is denied, (iii) LBHI will not be substantially harmed by the stay, and (iv) the public interest will be served by granting the stay.  *See In re Chrysler, LLC, et al.,* No. 09-50002 (AJG), 2009 WL 7386569, at *1 (Bankr. S.D.N.Y. May 20, 2009).  For the reasons set forth below, Movants have failed to meet their burden for each of these factors.

US_ACTIVE:\44352884\5\58399.0011

**A.**     **Movants are not likely to prevail on the merits of the Motion to Withdraw the Reference.**

7.     Once again, Movant's presumptions prove fatal to their arguments.  In order to adjudicate the Classification Motion, the Court need not look any further than the Bankruptcy Code.  Section 507 of the Bankruptcy Code provides an exhaustive list of the types of claims that are entitled to priority.  Claims arising from HERA-related recovery actions are not included.

8.     Historically, Congress has amended section 507 of the Bankruptcy Code when it sought to entitle additional types of claims to priority classification.  For example, Congress amended section 507 of the Bankruptcy Code by adding section 507(a)(9), which grants a priority to any "allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution." 11 U.S.C. 507(a)(9); *see* Comprehensive Crime Control Act of 1990, H.R. Rep. No. 681(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6584-90 (amending section 507 of the Bankruptcy Code).  Significantly, the Crime Control Act of 1990 also granted a conservator acting on behalf of an insured depository institution avoidance powers that are identical to the avoidance powers asserted by the FHFA in this case. *Compare* 12 U.S.C. § 4617(b)(15) *with* 12 U.S.C. § 1821(d)(17).  Had Congress intended for the FDIC conservator's avoidance powers to result in the FDIC obtaining a priority claim, Congress would have amended section 507, as it did with respect to the FDIC's claims for capital maintenance commitments.  Similarly, had Congress wanted HERA to grant the FHFA a priority claim against debtors under chapter 11, it would have done so expressly by amending section 507.   Section 507, however, was never amended to provide the FHFA with the priority status that it now claims.

4

9.       Furthermore, the Movants ignore the decisions of the Supreme Court and Second Circuit, which hold that claims are not entitled to priority treatment unless the Bankruptcy Code explicitly provides for such treatment.  *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) ("preferential treatment of a class of creditors is in order only when clearly authorized by Congress"); *Nathanson v. N.L.R.B.*, 344 U.S. 25, 29 (1952) ("[I]f one claimant is to be preferred over others, the purpose should be clear from the [Bankruptcy Act]."); *Trs. of Amalgamated Ins. Fund. v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed").

10.      The plain language of the Bankruptcy Code <u>alone</u> resolves all disputes arising under the Classification Motion in LBHI's favor.  Because Freddie Mac is not entitled to a priority claim based on the plain language of the Bankruptcy Code, the Movant's insistence that the Court must substantively analyze HERA to adjudicate the Classification Motion fails as a matter of law.

11.      Movants are correct that "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. 157(d).  However, resolution of the proceeding requires consideration of title 11 alone, and as such, the District Court will likely deny the Motion to Withdraw the Reference.

12.      Having failed to overcome their burden of demonstrating that the Motion to Withdraw the Reference is likely to prevail on the merits, the first factor weighs in favor of denying the Stay Motion.

US_ACTIVE:\44352884\5\58399.0011

**B.    Movants will not suffer irreparable harm if the stay is denied.**

13.    "In order to succeed, the movant must demonstrate that 'irreparable injury is *likely* in the absence of an injunction." *In re Chrysler, LLC, et al.,* 2009 WL at *2 (citations omitted) (emphasis in original).  Freddie Mac has failed to show that any harm — let alone irreparable harm — likely would result from failure to stay litigation of the Classification Motion.

14.    Movants' allegation that release of the Priority Reserve would harm Freddie Mac is unfounded.  If the Court determines that the Claim should be classified in LBHI Class 3, it necessarily follows that Freddie Mac will not be harmed by a release of the Priority Reserve because Freddie Mac would have no entitlement to a 100% recovery on its Claim from LBHI.

15.    Moreover, irrespective of the classification of the Claim, the Conservator retains all its rights under HERA, including its right to commence an avoidance action and recover property for the benefit of Freddie Mac.  To the extent a transfer was made with the actual intent to hinder, delay or defraud Freddie Mac, the Conservator is free to assert, as part of such actions, that HERA grants it a right of avoidance and/or recovery that is "superior" to the rights of LBHI, notwithstanding the Claim's classification in LBHI Class 3.  As such, there will be no prejudice to Freddie Mac if the Claim is classified in LBHI Class 3 and if the Priority Reserve is released.

16.    Additionally, the circumstances under which Movant argues that judicial resources could be wasted in the absence of a stay — a simultaneous litigation of the Classification Motion in both the Bankruptcy Court and District Court — are highly unlikely to occur.  Even if the District Court granted the Motion to Withdraw the Reference, the District Court would likely send this matter back to the Bankruptcy Court for adjudication and the

US_ACTIVE:\44352884\5\58399.0011

issuance of a report and recommendation.  Therefore, no additional judicial or governmental resources would be expended absent a stay, and Movants would not suffer any harm.

17.    Movants have not overcome their burden of demonstrating that they are likely to suffer irreparable harm if the stay is denied, and, therefore, the second factor weighs in favor of denying the Stay Motion.

**C.    <u>LBHI will be substantially harmed by the stay and granting the stay will not serve the public interest.</u>**

18.    "In the bankruptcy context, a court must concern itself not only with harm to the nonmovant from a stay, but harm to the interests of the entire bankruptcy estate." *In re Chrysler, LLC, et al.*, 2009 WL at *2 (citations omitted).  Whereas the relief requested in the Motion would not prejudice Movants in any way, the continued maintenance of the Priority Reserve would be prejudicial to the thousands of creditors holding allowed claims against LBHI.  Indeed, these creditors are being deprived of their *pro rata* share of the hundreds of millions of dollars that would be made available for distribution upon proper classification of the Claim and the elimination of the excess from the Priority Reserve.

US_ACTIVE:\44352884\5\58399.0011

19.    Movants have not overcome their burden of demonstrating that LBHI will be substantially harmed by the stay and granting the stay will not serve the public interest.  Thus, the third and fourth factors weigh in favor of denying the Stay Motion.

## **CONCLUSION**

WHEREFORE, for the reasons discussed above, the Plan Administrator respectfully requests that the Court overrule the Stay Motion and grant the Plan Administrator such other and further relief as is just.

Dated: October 22, 2013
      New York, New York

                       /s/ Alfredo R. Pérez_____
                       David J. Lender
                       Lori R. Fife
                       Alfredo R. Pérez

                       WEIL, GOTSHAL & MANGES LLP
                       767 Fifth Avenue
                       New York, New York 10153
                       Telephone: (212) 310-8000
                       Facsimile: (212) 310-8007

                       Attorneys for Lehman Brothers Holdings Inc.
                       and Certain of Its Affiliates

US_ACTIVE:\44352884\5\58399.0011

## **EXHIBIT A**

US_ACTIVE:\44352884\5\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Lori R. Fife
Alfredo R. Perez

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                                            :
                               **Debtors.**                 :    **(Jointly Administered)**
-----------------------------------------------------------------x

**REPLY IN SUPPORT OF MOTION TO**
**CLASSIFY AND ALLOW THE CLAIM FILED BY THE FEDERAL**
**HOME LOAN MORTGAGE CORPORATION (CLAIM NO. 33568) IN LBHI CLASS 3**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") files this reply to the objection (the

"Objection") interposed by the Federal Housing Finance Agency (the "FHFA" or "Conservator")

and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and together with the FHFA,

the "Objectors") to the motion of the Plan Administrator, dated September 13, 2013 [ECF No.

40066] (the "Motion"),[1] seeking to classify and allow proof of claim number 33568 (the

"Claim") in LBHI Class 3 and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Objection filed by the FHFA and Freddie Mac fails to address the key

arguments in the Motion while disingenuously addressing others – often conflating concepts

and reading words into the Bankruptcy Code and 12 U.S.C. § 4617 ("HERA") that do not exist.

2.      First, nowhere do the Objectors address the fundamental flaw in their argument

that section 4617(b)(15) of HERA does not create a priority claim under the Bankruptcy Code.

When Congress wanted to create a priority claim under the Bankruptcy Code, it amended

section 507 to provide for such a priority.  For instance, Congress amended section 507 by

adding section 507(a)(9), which grants a priority to any "allowed unsecured claims based upon

any commitment by the debtor to a Federal depository institutions regulatory agency (or

predecessor to such agency) to maintain the capital of an insured depository institution."

11 U.S.C. § 507(a)(9).  A plain reading of the Bankruptcy Code reveals no such priority for a

claim based on section 4617(b)(15) of HERA.  The Court does not need to go any further to

grant the relief requested in the Motion.

3.      Second, assuming the Objectors can overcome the plain language of the

Bankruptcy Code, section 4617(b)(15) of HERA does not help in creating a priority claim

against LBHI.  Similar to section 548(a) (avoidance) of the Bankruptcy Code, subparagraph

4617(b)(15)(A) (avoidance) provides: "The [FHFA] may avoid a transfer of . . . a debtor

[LHBI] of the regulated entity [Freddie Mac] . . . or any obligation incurred by such party or

person, . . . if such party or person . . . made such transfer or incurred such liability with the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

intent to hinder, delay, or defraud the regulated entity . . . ."  Similar to section 550(a)

(recovery) of the Bankruptcy Code, subparagraph 4617(b)(15)(B) (recovery) provides: "To the

extent a transfer is avoided under subparagraph (A), the [FHFA] may recover, for the benefit of

the regulated entity, the property transferred, or, if a court so orders, the value of such property

(at the time of such transfer) . . ."  Then, subparagraph 4617(b)(15)(D) states that the rights of

the FHFA described in subparagraph (A) (avoidance) shall be superior to any rights of a trustee

or any other party under title 11.  Again, whatever superior rights subparagraph 4617(b)(15)(D)

creates with respect to the avoidance powers of the Conservator, it does not create a priority

claim under the Bankruptcy Code against LBHI.

4.      Third, the Objectors disingenuously argue that "[P]ursuant to the Plan Stipulation,

LBHI acknowledged Freddie Mac's and FHFA's right to a priority recovery if the HERA

Priority Claim is determined to be valid under HERA by amending the Plan to specifically

include such claim in the definition of "Priority Non-Tax Claim. . . ."  Objection at ¶ 39.  This

argument conveniently ignores the page-long reservation of rights in the Plan Stipulation[2] in

which the amount, allowance, classification, and/or priority of the Claim was reserved for all

purposes, including in connection with any distributions under the Plan.  Again, Freddie Mac's

argument does not create a priority claim under the Bankruptcy Code against LBHI.

5.      Fourth, the Objectors, again disingenuously, read words into HERA that do not

exist.  For instance, the Objectors argue: "[s]ection 4617(b)(15)(A) grants FHFA the right to

avoid *and recover* against such debtor any such *obligation or transfer* . . . ."  Objection at ¶ 34

(emphasis added).  The term "recover" is not mentioned anywhere in subparagraph (A) and no

section of the statute grants the Conservator a recovery right in respect of avoided *obligations*.

---

[2] The Plan Stipulation was attached as <u>Exhibit B</u> to the Objection.

3

Instead, the Conservator's recovery rights are provided exclusively in subparagraph (B), which grants the Conservator a recovery right only to the extent of avoided *transfers* and only against *transferees*. Again, reading words into HERA that do not exist does not create a priority claim under the Bankruptcy Code against LBHI.

6.      Finally, contrary to Freddie Mac's assertions, granting the relief requested in the Motion will not prejudice Freddie Mac. A determination that the Claim should be classified in LBHI Class 3 will not affect Freddie Mac's right to commence avoidance actions. Moreover, to the extent that HERA grants Freddie Mac a "superior" right to commence such actions and/or recover the proceeds of such actions ahead of other parties, Freddie Mac will retain these rights even if the Claim is classified in LBHI Class 3.

7.      Accordingly, the Plan Administrator requests that the Court classify the Claim in LBHI Class 3 in accordance with the Plan and allow such claim pursuant to sections 502, 1122(a), 1142(b), and 105 of the Bankruptcy Code and Rule 3013 of the Bankruptcy Rules.

## FACTUAL BACKGROUND

8.      The Claim, which was filed in the aggregate liquidated amount of $1,202,241,875.00, seeks a recovery from LBHI in respect of the Unsecured Loans that were made by Freddie Mac to LBHI in August 2008 but were never repaid as a result of LBHI's bankruptcy filing. In its proof of claim, Freddie Mac asserted the Claim as a priority claim and, in support of its claimed priority status, reserved its rights under HERA to avoid certain unidentified transfers made by LBHI "to the extent such transfer[s] [were] made with the intent to hinder or delay the 'early return' payment of the [Unsecured Loans]." Claim at ¶ 3.

9.      Now, Freddie Mac asserts that it intends to avoid not only certain unspecified transfers made by LBHI, but also the transfer of funds to LBHI as part of the Unsecured Loans. Freddie Mac has still not provided LBHI with any theory to support or suggest that LBHI ever

4

made a transfer or incurred an obligation with the actual "intent to hinder, delay, or defraud" Freddie Mac.[3]  Meanwhile, an investigatory report prepared by the FHFA's Office of the Inspector General (the "FHFA Report")[4] concluded that the origination of the Unsecured Loans did not involve fraud.  FHFA Report at 19.  Indeed, in a section titled "Findings," the FHFA Report stated: "[t]he $1.2 billion loss on the Lehman loans was facilitated by a corporate culture at Freddie Mac that overrode existing written policies and procedures. . . .  As a consequence, Freddie Mac did not move to revoke Lehman's short-term unsecured credit with [Freddie Mac] until Lehman filed for bankruptcy and it was too late."  *Id.*

10.    Notwithstanding the lack of a factual or legal basis for its assertion of a priority claim, Freddie Mac continues to pursue the Claim against LBHI and has refused to agree to a consensual release of the Priority Reserve.

## THE CLAIM SHOULD BE CLASSIFIED AND ALLOWED IN LBHI CLASS 3

**A.    Neither the Bankruptcy Code
Nor HERA Grants Freddie Mac a Priority Claim in LBHI's Chapter 11 Case**

11.    The Claim is not entitled to priority treatment under the Bankruptcy Code. Section 507 of the Bankruptcy Code lists the claims that are entitled to priority treatment in cases under title 11.  11 U.S.C. § 507.  Claims based on the Conservator's avoidance powers are not listed in section 507, nor are they mentioned in any other section of the Bankruptcy Code. On this basis alone, the Claim should be classified as an unsecured, non-priority claim.  This conclusion is consistent with binding precedent, holding that claims are entitled to priority

---

[3] Freddie Mac misleadingly suggests that "Freddie Mac and Fannie Mae provided the Debtors with access to significant relevant underlying data, expert reports and samplings, as applicable, in an effort to reach consensual resolution of these claims."  Objection at ¶ 26.  In fact, no such data has ever been provided on the Claim.  The only data and documents provided by Freddie Mac and Fannie Mae relate to claims that are *unrelated* to the Claim.

[4] The FHFA Report was attached as Exhibit A to the Motion.

US_ACTIVE:\44346335\12\58399.0001

treatment in a bankruptcy case *only if* the Bankruptcy Code expressly provides for such treatment. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) ("preferential treatment of a class of creditors is in order only when clearly authorized by Congress"); *Nathanson v. NLRB*, 344 U.S. 25, 29 (1952) ([I]f one claimant is to be preferred over others, the purpose should be clear from the [Bankruptcy Act]."); *Trs. of Amalgamated Ins. Fund. v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed").

12.    In their Objection, the Objectors ignore the fact that the Bankruptcy Code does not grant the Claim priority status. The Objectors similarly ignore the decisions of the Supreme Court and Second Circuit cited above, which hold that claims are not entitled to priority treatment unless the Bankruptcy Code explicitly provides for such treatment. Instead, the Objectors argue, without support, that HERA implicitly altered the priority scheme established by the Bankruptcy Code when it granted the Conservator its avoidance powers. Specifically, the Objectors argue as follows:

> Congress is presumed to have been well aware of the Bankruptcy Code and the priority scheme of section 507 of the Bankruptcy Code, and fully intended that the superior rights granted to the Conservator in a bankruptcy case would not be interpreted so as to render such rights meaningless by reason of their non-inclusion in section 507.

Objection at ¶ 41.

13.    This argument must fail. When Congress wants to grant claims priority treatment under the Bankruptcy Code, it expressly amends section 507 to provide for such priority treatment. For example, as part of the Comprehensive Crime Control Act of 1990, Congress amended section 507 by adding section 507(a)(9), which granted a priority to any "allowed

6

unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution."  11 U.S.C. § 507(a)(9); *see* Comprehensive Crime Control Act of 1990, H.R. Rep. No. 681(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6584-90 (amending section 507 of the Bankruptcy Code).  Significantly, the Crime Control Act of 1990 also granted the Federal Deposit and Insurance Corporation (the "<u>FDIC</u>"), when acting a conservator for an insured depository institution (the "<u>FDIC Conservator</u>"), avoidance powers that are nearly identical to the avoidance powers of the Conservator.  *See* H.R. Rep. No. 681(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6584-90.  Had Congress intended for the FDIC Conservator's avoidance powers to result in the FDIC obtaining a priority claim, Congress would have amended section 507, as it did with respect to the FDIC's claims for capital maintenance commitments.  Similarly, had Congress wanted HERA to grant the Conservator a priority claim against debtors under chapter 11, it would have done so expressly by amending section 507.  Section 507, however, was never amended to provide the Conservator with the priority status that it now claims.

14.     Moreover, nothing in section 4617(b)(15), entitled "Fraudulent transfers," purports to alter the priority scheme established by the Bankruptcy Code for claims asserted against a debtor in a chapter 11 case.  Instead, section 4617(b)(15) grants the Conservator, at most, certain "superior" rights in respect of avoidance actions.  As plainly stated *by the Conservator* in a pleading filed in the *Residential Capital, LLC* case:

> . . . [HERA] grants the FHFA] first priority, ahead of all stakeholders, to recoveries of certain estate avoidance actions preserved under the Plan.
> . . .

7

> . . . To the extent the Preserved Avoidance Actions constitute actions to avoid actual fraudulent conveyances made by the Subject Debtors, FHFA is entitled to priority recovery therefrom.
> . . .
> . . . even if the Debtors succeed in subordinating FHFA's Proofs of Claim, FHFA nonetheless is entitled to first recoveries, ahead of all other stakeholders, from Preserved Avoidance Actions covered by . . . HERA.

Objection of the Federal Housing Finance Agency to Approval of Proposed Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, *et al*. and the Official Committee of Unsecured Creditors at ¶¶ 15-24, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 13, 2013), ECF No. 4587 (the "FHFA's Res. Cap. Objection").

15. As illustrated by the foregoing excerpts, the FHFA has previously conceded that HERA grants it "superior" rights *only* in respect of the proceeds of avoidance actions. Having a "priority" right to recover proceeds of an avoidance action is vastly different than having a "priority claim" against a debtor in a chapter 11 case. The FHFA recognized this distinction when it stated that "even if the Debtors succeed in *subordinating* FHFA's Proofs of Claim, FHFA nonetheless is entitled to first recoveries . . . from Preserved Avoidance Actions." *Id*. at ¶ 24 (emphasis added). In other words, the FHFA recognized that its bankruptcy claims in *In re Residential Capital, LLC* might be subordinated – *i.e.*, might lack priority under the Bankruptcy Code – and yet the Conservator would still retain certain "superior" rights under HERA.

16. Here, LBHI is seeking to classify the Claim as a senior unsecured, non-priority claim in LBHI Class 3. Such a classification is entirely consistent with, and will not affect, the "superior" rights asserted by the FHFA in the *Residential Capital* case because the Conservator will retain all of its rights to commence avoidance actions and recover the proceeds of such

8

avoidance actions in accordance with HERA.  As such, classifying the Claim in LBHI Class 3

will not render section 4617(b)(15)(D) meaningless as suggested by the Objectors.

**B.**    **The Plan Stipulation Does Not Preclude Classification of the Claim in LBHI Class 3**

17.    In support of their argument that HERA grants Freddie Mac a priority claim in

LBHI's chapter 11 case, the Objectors also argue, disingenuously, that "pursuant to the Plan

Stipulation, LBHI acknowledged Freddie Mac's and FHFA's right to a priority recovery if the

HERA Priority Claim is determined to be valid under HERA by amending the Plan to

specifically include such claim in the definition of 'Priority Non-Tax Claim,' which claims are

entitled to a 100% recovery under the Plan."  Objection at ¶ 39.  The Objectors' reading of the

Plan Stipulation conveniently ignores a page-long reservation of rights section wherein the

parties broadly reserved all their rights with respect to the Claim, including LBHI's right to

challenge the asserted priority of the Claim.

18.    For example, the reservation of rights section of the Plan Stipulation provided as

follows:

> [T]he Parties hereby reserve all rights of the Parties and FHFA
> relating to the amount, allowance, *classification, and/or priority* of
> the Claims for all purposes, including in connection with any
> distributions under the Third Amended Plan or otherwise in respect
> of these Bankruptcy Cases. . . . [N]othing in this Stipulation, the
> [Plan], the Confirmation Order, or any other pleadings or
> documents filed in connection therewith, *shall (i) have any effect
> on or prejudice [LBHI] in respect of the Claims*, including the
> amount, allowance, *classification and/or priority* of such Claims,
> or in respect of distributions on account thereof, and nothing herein
> shall be deemed an admission, release or waiver of [LBHI's] rights
> with respect to such Claims.

Plan Stipulation at ¶ 3 (emphasis added).  Similarly, in the disclosure statement filed in respect

of the Plan, LBHI stated:

> The Debtors intend to challenge and dispute that [the Claim] is
> entitled to be treated as a priority claim.  Notwithstanding anything

9

in this section V.G. or in the Plan to the contrary, nothing herein or
in the Plan or the order confirming the Plan shall have any impact
on the validity or classification of the Freddie Mac Claim.

Debtors' Disclosure Statement For Third Amended Joint Chapter 11 Plan Of Lehman Brothers

Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code at 53,

*In re Lehman Bros. Holdings, Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Aug. 31,

2011), ECF No. 19629 (the "Disclosure Statement").

19.    Both the Plan Stipulation and the Disclosure Statement confirm the intent of the

parties; namely, that the Plan does not preclude classification of the Claim in LBHI Class 3.

## C.    HERA Does Not Grant the Conservator a Right of Recovery Against LBHI, And, Therefore, Freddie Mac Does Not Have a Priority Claim Against LBHI

20.    Even assuming, *arguendo*, that the Objectors can overcome the plain language of

section 507 of the Bankruptcy Code, HERA does not grant the Conservator any right of

recovery against LBHI, and, therefore, Freddie Mac does not have a priority claim against

LBHI.  The language of section 4617(b)(15)(A) is clear and unambiguous: the Conservator may

avoid transfers only if (i) they are made by an "entity-affiliated party," such as a director or

officer of Freddie Mac,[5] with the actual "intent to hinder, delay, or defraud" Freddie Mac, or

(ii) they are made by a debtor of Freddie Mac, such as LBHI, with the actual "intent to hinder,

delay, or defraud" Freddie Mac.  The Objectors do not allege that an "entity-affiliated party"

made a transfer with the requisite fraudulent intent.  Presumably, they do not do so because

FHFA's own internal investigation of the origination of the Unsecured Loans did not conclude

that the loans were fraudulently made.  FHFA Report at 19.  Therefore, the only transfers that

the Conservator may target for avoidance under subparagraph (A) are the alleged transfers from

---

[5] The term "entity-affiliated party" is defined to include, among others, "any director, officer, employee, or
controlling stockholder of, or agent for, a regulated entity."  12 U.S.C. § 4502 (11).

10

LBHI to certain third parties prior to the Commencement Date.  Even assuming, *arguendo*, that

the Conservator could prove all the necessary elements to avoid such transfers – which it

cannot – the plain and unambiguous terms of subparagraph (B) provide that the Conservator has

a right of recovery only from the third-party transferees – not a right of recovery from LBHI,

the alleged transferor.

21.    The Objectors assert that subparagraph (A) also grants the Conservator the power

to avoid LBHI's incurrence of the obligation to repay the Unsecured Loans.  *See, e.g.*, Objection

at ¶ 46 ("[FHFA] is granted the power and authority under section 4617(b)(15)(A) of HERA to

avoid the incurrence of such obligation and recover $1.2 billion plus interest from the LBHI

bankruptcy estate. . . .").  LBHI does not dispute the fact that subparagraph (A) grants the

Conservator the right to avoid obligations incurred by a debtor of Freddie Mac if such

obligations were incurred with the requisite fraudulent intent.  However, both the plain terms of

HERA and well-established case law from the bankruptcy context are clear: the avoidance of an

obligation does not grant a party such as the Conservator any right to recover property.  Instead,

the avoidance of an obligation renders the obligation unenforceable.  *See, e.g.*, *U.S. Bank Nat'l

Ass'n v. Verizon Commc'ns. Inc.*, No 3:10-1842, 2012 WL 3100778, at *4 (N.D. Tex. July 31,

2012) ("While a debtor can recover under section 550 for a transfer of property, it cannot

recover under section 550 for an obligation incurred"); *In re Asia Global Crossing Ltd.*, 333

B.R. 199, 202 (Bankr. S.D.N.Y. 2005) ("If . . . he avoids an obligation, the obligation is

rendered unenforceable, there is nothing to return, and § 550 affords no remedy.").

22.    Accordingly, regardless of whether the Conservator succeeds in avoiding LBHI's

alleged transfers to third parties or LBHI's incurrence of the obligation to repay the Unsecured

US_ACTIVE:\44346335\12\58399.0011

Loans, HERA does not grant the Conservator a right of recovery against LBHI.  The plain and

unambiguous language of HERA cannot be read any other way.

**1)  The Objectors ignore HERA's clear and unambiguous language**

23.    In cases involving statutory interpretation, the Supreme Court has directed courts

to "begin with the language of the statute."  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450

(2002).  "The first step is to determine whether the language at issue has a plain and

unambiguous meaning with regard to the particular dispute in the case."  *Id.* (citation and

internal quotation marks omitted).   If the statute is unambiguous, "the inquiry ceases."  *Id.*

24.    Although the Objectors perfunctorily cite the foregoing instructions from the

Supreme Court, they then proceed to ignore such instructions by reading words into HERA that

do not exist.  Specifically, the Objectors argue (i) that subparagraph (A) grants the Conservator

both a right to avoid *and a right to recover*, and (ii) that the Conservator may recover property

transferred, even where the Conservator merely avoids the incurrence of an obligation.  *See*

Objection at ¶ 46.  Neither of these arguments is supported by the plain language of HERA.

25.    The plain and unambiguous terms of subparagraph (A) grant the Conservator only

a right of avoidance, not a right of recovery.  Subparagraph (A) reads, in pertinent part, as

follows:

> The Agency, as conservator or receiver, may *avoid* a transfer of
> any interest of an entity-affiliated party, or any person determined
> by the conservator or receiver to be a debtor of the regulated entity,
> in property, or any obligation incurred by such party or person . . .
> if such party or person voluntarily or involuntarily made such
> transfer or incurred such liability with the intent to hinder, delay,
> or defraud the regulated entity . . . .

12 U.S.C. § 4617(b)(15)(A) (emphasis added).  The terms "recover" or "recovery" are not found

anywhere in subparagraph (A).  Nevertheless, the Objectors inappropriately read these terms into

subparagraph (A) when they argue that "[s]ection 4617(b)(15)(A) grants FHFA the right to avoid

12

*and recover* against such debtor any such obligation or transfer . . . ."  Objection at ¶ 34

(emphasis added).  Had Congress wanted to grant the Conservator a right of recovery in

subparagraph (A), it would have done so explicitly.

26.      Subparagraph (B) – and only subparagraph (B) – grants the Conservator a right of

recovery.  Subparagraph (B) reads, in pertinent part, as follows:

> *Right of recovery.  To the extent a transfer is avoided* under
> subparagraph (A), the conservator or receiver may recover, for the
> benefit of the regulated entity, *the property transferred*, or if a
> court so orders, the value of such property (at the time of such
> transfer) from – (i) the *initial transferee* of such transfer . . . or (ii)
> any *immediate or mediate transferee* of any such initial transferee.

12 U.S.C. § 4617(b)(15)(B) (emphasis added).  Subparagraph (B), which is aptly titled, "Right of

recovery," is the only subparagraph of section 4617(b)(15) that contains the terms "recover" or

"recovery."  As such, the plain and unambiguous terms of HERA are clear: subparagraph (A)

grants a right of avoidance; subparagraph (B) grants a right of recovery.

27.      The Objectors' reading of subparagraphs (A) and (B) is not only inconsistent with

the plain language of the statute, but it is also inconsistent with courts' interpretations of

12 U.S.C. § 1821(d)(17) and sections 548(a) and 550(a) of the Bankruptcy Code – the statutory

provisions upon which the Conservator's avoidance powers are modeled.  Numerous courts

have held that a bankruptcy trustee's powers of avoidance are addressed in section 548(a),

whereas the bankruptcy trustee's separate and distinct powers of recovery are addressed

exclusively in section 550(a).  *See, e.g.*, *Diaz-Barba v. Kismet Acquisition, LLC*, No. 08-1446,

2010 WL 2079738, at *6 (S.D. Cal. May 20, 2010) ("[A] court's avoidance of a transfer of real

property under § 548 is distinct from a court's subsequent recovery of that property under

§ 550."); *Leonard v. Mountainwest Fin. Corp.* (*In re Whaley*), 229 B.R. 767, 772 (Bankr. D.

Minn. 1999); *see also Suhar v. Burns* (*In re Burns*)*, 322 F.3d 421, 427 (6th Cir. 2003); *Savage*

& *Assocs., P.C. v. BLR Servs. SAS* (*In re Teligent, Inc.*), 307 B.R. 744, 749 (Bankr. S.D.N.Y.

2004); *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 312 (Bankr. S.D.N.Y. 1999) (Once the

grounds for setting aside a transfer have been shown, the Trustee faces the second hurdle of

establishing a means of recovery under § 550(a), the remedies section, which requires the

Trustee to identify a specific category of persons from whom recovery of the fraudulent transfer

may be had.").

28.     Subparagraph (A) of section 4617(b)(15) is analogous to section 548(a) and

subparagraph (B) is analogous to section 550(a).  Viewed as such, it is clear that Congress

intended for subparagraph (A) to grant the Conservator only the power to avoid and for

subparagraph (B) – and only subparagraph (B) – to grant the Conservator the power to recover.

Indeed, Congress is presumed to be aware of courts' interpretations of sections 548 and 550 of

the Bankruptcy Code.  *See In re VistaCare Grp., LLC*, 678 F.3d 218, 226 (3d Cir. 2012)

("When Congress enacts legislation, it is presumed to act with knowledge of the existing law

and judicial concepts.") (citation and internal quotation marks omitted).  If Congress had

wanted section 4617(b)(15) to work differently than sections 548 and 550, Congress would have

made that intent clear.  It did not.

29.     Further, the District Court for the District of Columbia has determined that the

FDIC Conservator's avoidance powers are addressed exclusively in subparagraph (A), whereas

the FDIC Conservator's recovery rights are addressed exclusively in subparagraph (B).  *See*

*Jahn v. FDIC*, 828 F. Supp. 2d 305, 312-13 (D.D.C. 2011).  In reaching this conclusion, the

District Court cited to cases from the bankruptcy context and observed that the FDIC

Conservator's avoidance powers under subparagraph (A) are analogous to a bankruptcy

trustee's avoidance rights under section 548(a), whereas the FDIC Conservator's recovery

14

powers under subparagraph (B) are analogous to a bankruptcy trustee's recovery rights under section 550(a). *See id.* ("[A] comparison with a bankruptcy trustee's powers to avoid transfers and recover property is instructive because section 1821(d)(17) parallels the fraudulent transfer avoidance and recovery provisions of the Bankruptcy Code."). Given the nearly identical wording of 12 U.S.C. § 1821(d)(17) and 12 U.S.C. § 4617(b)(15), it follows that subparagraph (A) of section 4617(d)(15) is analogous to section 548(a) and subparagraph (B) of section 4617(d)(15) is analogous to section 550(a).[6] Accordingly, it is clear from the text of the statute and from the persuasive authority cited above that Congress intended for subparagraph (A) to grant the Conservator only the power to avoid and for subparagraph (B) – and only subparagraph (B) – to grant the Conservator the power to recover.

30.    Notwithstanding the foregoing, the Objectors attempt to paint subparagraph (B) as an "additional" or "permissive" grant of authority to recover property by focusing on the statute's use of the term "may." Objection at ¶ 44. According to the Objectors, because "section 4617(b)(15)(B) provides that FHFA 'may' recover from such transferees, subparagraph (B) is clearly a grant of additional authority to the Conservator to follow the money." *Id.* The Objectors' reliance on the term "may" is misplaced. Section 550(a) of the Bankruptcy Code, which is analogous to subparagraph (B), also contains the word "may." 11 U.S.C. § 550. Courts have not interpreted Congress's use of the term "may" in section 550(a) to mean that this section grants the Conservator a right to recover property which is in addition to recovery rights found elsewhere in the Bankruptcy Code. To the contrary, courts have universally held that section 550(a) provides the exclusive means to recover property that was avoided. *See, e.g.*,

---

[6] Again, Congress is presumed to be aware of court precedent, including with respect to the District Court's reading of *Jahn*. *See VistaCare*, 678 F.3d at 226. If Congress had wanted 4617(b)(15) to work differently than the District Court's interpretation of section 1821(d)(17), Congress would have made that intent clear. It did not.

15

*Stratton Oakmont,* 234 B.R. at 312; *Cassirer v. Sterling Nat'l Bank & Trust Co.* (*In re Schick*), 223 B.R. 661, 664 (Bankr. S.D.N.Y. 1998).  This Court should similarly hold that the term "may" does not imply that the right of recovery in subparagraph (B) is in addition to the alleged recovery rights contained elsewhere, particularly because no other subparagraph of section 4617(b)(15) even contains either the word "recover" or "recovery."

31.    Finally, HERA is also clear and unambiguous in that the Conservator's right of recovery under subparagraph (B) applies only "to the extent *a transfer* is avoided under subparagraph (A)."  12 U.S.C. § 4617(b)(15)(B) (emphasis added).  In other words, the Conservator has no right to recover property if it avoids *an obligation* incurred by a debtor of Freddie Mac.  This reading of subparagraph (B) is not only required by the plain text of the statute, but it is also consistent with well-established case law that interprets section 550 of the Bankruptcy Code.  Indeed, courts have universally held that the avoidance of an obligation does not grant a bankruptcy trustee any rights to recover property under section 550 of the Bankruptcy Code.  *See, e.g.*, *U.S. Bank*, 2012 WL 3100778, at *4; *Asia Global*, 333 B.R. at 202 ("If . . . he avoids an obligation, the obligation is rendered unenforceable, there is nothing to return, and § 550 affords no remedy.").  Consistent with the notion that the Conservator may only recover property if it avoids a transfer, (as opposed to an obligation), subparagraph (B) also unambiguously provides that the Conservator may only recover "from (i) the initial *transferee of such transfer . . .* or (ii) any immediate or mediate *transferee*." 12 U.S.C. § 4617(b)(15)(B) (emphasis added).

32.    As stated above, Freddie attempts to (i) read a right of recovery into subparagraph (A) where none exists, and (ii) concoct a right of recovery in respect of avoided obligations

16

where none exists.  However, neither the language of the statute nor case law from the

bankruptcy or FDIC contexts supports the Objectors' interpretation of HERA.

### 2) The Conservator cannot recover the funds initially transferred to LBHI in respect of the Unsecured Loans

33.     The Unsecured Loans involved both a transfer of funds by Freddie Mac to LBHI

and the incurrence of an obligation by LBHI to repay the Unsecured Loans.  With respect to the

transfer of funds, under the plain and unambiguous terms of HERA, the Conservator has the

right to avoid the transfer to LBHI only if such transfer was made by an "entity-affiliated party"

– *i.e.*, an officer, director, or employee of Freddie Mac – with the intent to hinder, delay, or

defraud Freddie Mac or the Conservator.[7]  Indeed, subparagraph (A) provides, in pertinent part:

> The Agency, as conservator or receiver, may avoid *a transfer of
> any interest of an entity-affiliated party* . . . in property . . . if such
> *party* or person voluntarily or involuntarily *made such transfer* . . .
> with the intent to hinder, delay, or defraud the regulated entity . . . .

12 U.S.C. § 4617(b)(15)(A) (emphasis added).  This right to avoid transfers made by an "entity-

affiliated party" is modeled after a similar right granted to the FDIC Conservator to avoid

transfers made by "institution-affiliated parties."  In the FDIC context, this right, which was

granted to the FDIC Conservator in the wake of the savings and loan crisis, was designed to

recover assets that were fraudulently transferred by a bank's directors, officers, or employees for

the benefit of an insolvent bank's customers and creditors.  *See* H.R. Rep. No. 681(I) (1990),

*reprinted in* 1990 U.S.C.C.A.N. 6472, 6584-90.

34.     Here, the Objectors do not allege that any "entity-affiliated party" made the

transfer of $1.2 billion in funds to LBHI with the actual "intent to hinder, delay, or defraud"

---

[7] The Conservator may also target for avoidance transfers made by a debtor of Freddie Mac, but it is undisputed that the initial transfer of funds from Freddie Mac to LBHI, by definition, did not involve a transfer made by a debtor of Freddie Mac.

17

Freddie Mac. Accordingly, the Conservator cannot avoid and, therefore, cannot recover the initial transfer of funds from Freddie Mac to LBHI. As such, HERA cannot grant Freddie Mac a priority claim against LBHI in respect of the initial transfer of funds from Freddie Mac.

35.     Notwithstanding the foregoing, the Objectors allege, without any support, that LBHI incurred the obligation to repay the Unsecured Loans with the intent to defraud Freddie Mac and that the avoidance of this obligation grants the Conservator a recovery right against LBHI under subparagraph (A). Even assuming, *arguendo*, that Freddie Mac were able to prove that LBHI fraudulently incurred the obligation to repay the Unsecured Loan – which it did not – Freddie Mac would not have a recovery right against LBHI. First, as discussed above, subparagraph (A) does not grant the Conservator <u>any</u> recovery right, let alone a recovery right in respect of avoided obligations. *See supra* at ¶¶ 26-31. Second, subparagraph (B) does not grant Freddie Mac the right to recover property from LBHI as a result of the avoidance of an obligation. *See supra* at ¶ 32. Rather, subparagraph (B) expressly limits the Conservator's recovery rights to situations in which "*a transfer* is avoided under subparagraph (A)." 12 U.S.C. 4617(b)(15)(B) (emphasis added). Such a reading of the statute is consistent with courts' interpretations of 12 U.S.C. § 1821(d)(17) and sections 548 and 550 of the Bankruptcy Code. *See supra* at ¶ 32. As such, HERA cannot grant Freddie Mac a priority claim against LBHI in respect of LBHI's incurrence of the obligation to repay the Unsecured Loans.

36.     The Objectors argue that the foregoing interpretation of HERA would lead to unintended results because it would allow a third party, which fraudulently induced Freddie Mac into making a loan, to keep the loan proceeds, so long as the third party did not transfer those proceeds to another party. This argument must fail because even in the hypothetical presented by the Objectors, the fraudulent actor would not necessarily be permitted to keep the

18

ill-gotten gains.  For example, Freddie Mac would still be able to pursue any number of

statutory or common law remedies against the fraudulent actor in order to recover the property

transferred, or its value, including causes of action for fraudulent inducement.

37.    Freddie Mac and the FHFA urge this Court to look to the broad scope and overall

purpose of HERA and suggest that the goal of protecting taxpayers and the financial markets

cannot be squared with LBHI's reading of HERA.  LBHI's reading of HERA is premised on the

plain language of the statute.  This Court is prohibited from altering the plain and unambiguous

meaning of HERA to accommodate the policy objectives of the FHFA.  *See Barnhart*, 534 U.S.

at 462 ("We will not alter the [statutory] text in order to satisfy the policy preferences of the

Commissioner [of Social Security].  These are battles that should be fought among the political

branches and the industry.  Those parties should not seek to amend the statute by appeal to the

Judicial Branch").  Indeed, as stated by the Second Circuit, "[i]t is axiomatic that the plain

meaning of a statute controls its interpretation and that judicial review must end at the statute's

unambiguous terms."  *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) (internal

citation omitted).

**3)  With respect to the allegedly fraudulent transfers made by LBHI to certain third
parties, HERA only grants Freddie Mac a right of recovery against the third parties**

38.     Even assuming, *arguendo*, that the Conservator is able to avoid a transfer made

by LBHI on the basis that it was made with the "intent to hinder, delay, or defraud" Freddie

Mac, the Conservator is not entitled to a right of recovery from LBHI under HERA's express

terms.  Section 4617(b)(15)(B) of HERA provides as follows:

> Right of recovery.  To the extent a transfer is avoided under
> subparagraph (A), the conservator or receiver may recover, for the
> benefit of [Freddie Mac], the property transferred, or, if a court so
> orders, the value of such property (at the time of such transfer)
> *from* – (i) *the initial transferee* of such transfer or the entity-
> affiliated party or person for whose benefit such transfer was

19

made; or (ii) *any immediate or mediate transferee of any such initial transferee*.

*Id.* (emphasis added).  Under its plain and unambiguous terms, subparagraph (B) grants the Conservator a right of recovery only from a "transferee," not from an alleged transferor, such as LBHI.  No other provision of HERA grants the Conservator a right of recovery.  *See supra* at ¶¶ 26-31.  Accordingly, even if the Conservator successfully prosecutes an action to avoid a transfer made by LBHI, the Conservator will not have a right of recovery under HERA against LBHI, but merely will retain its underlying LBHI Class 3 claim.  Therefore, contrary to the Objectors' suggestion, HERA does not grant Freddie Mac a priority claim against LBHI in respect of LBHI's allegedly fraudulent transfers to third parties.

**4)  LBHI's Position Does Not Render the Conservator's "Superior" Rights Meaningless**

39.    Contrary to the Objectors' position, LBHI's interpretation of HERA does not render meaningless the superior rights granted to the Conservator in subparagraph (D) of section 4617(b)(15).  Under LBHI's interpretation of HERA, if the Conservator proves that an "entity-affiliated party" or a debtor of Freddie Mac made a transfer with the "intent to hinder, delay, or defraud" Freddie Mac, subparagraph (D) grants the Conservator the right to recover such property, or its value, directly from the transferee, notwithstanding any competing rights provided to another party by title 11.

40.    This interpretation of the "superior" rights of the Conservator is entirely consistent with the reading of HERA espoused by the FHFA when it objected to the disclosure statement filed in the *Residential Capital, LLC* case.  The FHFA's objection reads as follows:

> . . . [HERA grants the FHFA] first priority, ahead of all stakeholders, to recoveries of certain estate avoidance actions preserved under the Plan.
> . . .
> Section 4617(b)(15) of HERA provides FHFA with explicit authority to avoid intentional fraudulent transfers made by debtors

20

of Freddie Mac and to recover such transfers or their value. Moreover, the statute expressly gives FHFA priority over any party under the Bankruptcy Code (other than another Federal agency) with respect to such recovery . . .

In *In re Colonial Realty Co.*, the Second Circuit – evaluating the Federal Deposit Insurance Corporation's ("FDIC") rights under 12 U.S.C. § 1821(d)(17), which is nearly identical to section 4617(b)(15) of HERA – held that where a bankruptcy estate's claims overlap with those of the FDIC, the FDIC retains a *superior* right to receive *first recoveries* of the proceeds thereof. . .

As set forth in the Disclosure Statement, estate avoidance actions against parties other than the Debtor Released Parties will be preserved under the Plan (the "Preserved Avoidance Actions") and may be brought by the Liquidating Trust for the benefit of unsecured Creditors (excluding FHFA). To the extent the Preserved Avoidance Actions constitute actions to avoid actual fraudulent conveyances made by the Subject Debtors, FHFA is entitled to priority recovery therefrom.

. . .

. . . even if the Debtors succeed in subordinating FHFA's Proofs of Claim, FHFA nonetheless is entitled to first recoveries, ahead of all other stakeholders, from Preserved Avoidance Actions covered by . . . HERA.

FHFA's Res. Cap. Objection at ¶¶ 15-24 (emphasis in original). As stated by the FHFA in *Residential Capital*, subparagraph (D) grants the Conservator "superior" rights in respect of avoidance actions that seek to recover transfers made by a debtor of the regulated entity to third parties. *Id.* Contrary to the Objectors' position in this case, however, no provision in section 4617(b)(15) grants Freddie Mac a priority claim under the Bankruptcy Code. In addition, no provision of section 4617(b)(15) grants the Conservator the right to recover property from a debtor of Freddie Mac in the event that the Conservator avoids an obligation fraudulently incurred by the debtor.

### D.     Freddie Mac Will Not Be Prejudiced By a Release of the Priority Reserve

41.     The Objectors finally argue that the release of the Priority Reserve will cause it irreparable harm by eliminating the Priority Reserve prior to a final resolution in respect of the

21

Claim, "a result that could leave insufficient funds remaining in the Debtors' estate to pay the [Claim]." Objection at ¶ 8. The irreparable harm alleged by the Objectors is imaginary.

42.    As discussed above, section 507 of the Bankruptcy Code does not provide Freddie Mac with a priority claim against LBHI, and HERA does not alter, whether explicitly or implicitly, the priority scheme established by the Bankruptcy Code for claims asserted against a debtor in a chapter 11 case. If the Court determines that the Claim should be classified in LBHI Class 3 based on the foregoing, it necessarily follows that Freddie Mac will not be harmed by a release of the Priority Reserve because Freddie Mac would have no entitlement to a 100% recovery on its Claim from LBHI.

43.    Moreover, even if the Claim is classified in LBHI Class 3, to the extent that HERA grants Freddie Mac a "superior" right to commence avoidance actions and/or recover the proceeds of such actions ahead of other parties, Freddie Mac will retain any such rights. For example, Freddie Mac may commence avoidance actions against LBHI's third-party transferees, such as JPMorgan Chase Bank, N.A. Indeed, the Objection reveals that Freddie Mac and the FHFA have entered into a "tolling agreement with a transferee where the Debtors' recovery action against such transferee has not yet been resolved." Objection at ¶ 51. As noted by the District Court for the District of Columbia in *Jahn*, the FDIC Conservator must typically institute an avoidance action to recovery property pursuant to its avoidance powers. *See Jahn*, 828 F. Supp. at 314 ("In a more typical case, the FDIC would need to bring an action for both avoidance and recovery"). Here, irrespective of the classification of the Claim, the Conservator retains all its rights to bring such an action against third-party transferees, and the Conservator is free to assert, as part of such actions, that HERA grants it a right of avoidance and/or

22

recovery that is "superior" to the rights of LBHI.  As such, there will be no prejudice to Freddie

Mac if the Claim is classified in LBHI Class 3.

44.    Whereas the relief requested in the Motion would not prejudice Freddie Mac in

any way, the continued maintenance of the Priority Reserve would be prejudicial to the

thousands of creditors holding allowed claim against LBHI.  Indeed, these creditors are being

deprived of their *pro rata* share of the hundreds of millions of dollars that would be made

available for distribution upon proper classification of the Claim and the elimination of the

excess from the Priority Reserve.

## CONCLUSION

WHEREFORE, for the reasons discussed above and in the Motion, the Plan

Administrator respectfully requests that the Court overrule the Objection, enter the Order, and

grant the Plan Administrator such other and further relief as is just.


Dated:  October 22, 2013
         New York, New York

                                        /s/ Alfredo R. Perez
                                        David J. Lender
                                        Lori R. Fife
                                        Alfredo R. Perez

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Lehman Brothers Holdings Inc.
                                        and Certain of Its Affiliates