**Hearing Date & Time: October 24, 2013 at 11:00 a.m. (EST)**

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Kenneth Pasquale
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel to CarVal Investors, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**REPLY OF CARVAL INVESTORS, LLC TO THE OBJECTION OF PLAN
ADMINISTRATOR TO MOTION FOR LEAVE TO EXAMINE LBHI PURSUANT
FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

CarVal Investors, LLC ("CarVal" or "Movant"), in its capacity as manager of certain funds holding in excess of $12 billion of notional claims against Lehman Brothers Holdings Inc. ("LBHI") and its U.S. debtor affiliates, as well as in excess of £2.1 billion of notional claims against Lehman Brothers International (Europe) (in administration) ("LBIE"), by and through its undersigned counsel, respectfully submits this reply (the "Reply") to the objection of LBHI (the "Objection") [Dkt. No. 40611] to the *Motion of Carval Investors, LLC for Leave to Examine LBHI Pursuant to Federal Rule of Bankruptcy Procedure 2004* (the "Motion") [Dkt. No. 40469].[1] In support of this Reply, CarVal respectfully represents as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

## REPLY

1.  The Motion, the related motion filed by Davidson Kempner Capital Management LLC [Dkt. No. 40532], and the multiple joinders to the motions filed by other creditors with significant claims against LBHI [Dkt. Nos. 40497, 40539, 40543, 40520] are a result of LBHI's obstinate refusal to share any information with these creditors concerning the Proposed Transaction. Rather than recognize the legitimate interests of these LBHI creditors in ensuring that recoveries are maximized and providing them with basic information concerning the Proposed Transaction, LBHI instead in its Objection raises as many procedural roadblocks as it can muster to oppose the request. Yet, LBHI does not refute that it, as Plan Administrator, owes creditors of these estates a fiduciary duty to maximize Distributions (as that term is defined in the Plan). It does not refute that the Claims at issue are valued in excess of £1.25 billion and that they represent one of the largest, if not the largest, remaining asset of the estates, given that LBHI will receive approximately 87% of recoveries on such Claims. And it does not refute that no market test or competitive process was pursued to ensure that the consideration to be obtained for the Claims through the Proposed Transaction actually maximizes Distributions to LBHI's creditors.

2.  CarVal, holding over $12 billion of notional claims against LBHI, has a singular focus in prosecuting the Motion: to obtain information regarding the Proposed Transaction to ensure that value is not lost that should revert to it and LBHI's other creditors. That so many significant creditors of these estates have joined with CarVal to seek the same relief speaks volumes as to their mutual belief that the Proposed Transaction fails to maximize the recovery to LBHI's creditors. And, although CarVal also holds very significant claims against LBIE (as do the creditors that are parties to the Proposed Transaction), those interests have nothing to do with the relief requested by the Motion, which solely concerns recoveries to LBHI's creditors.

2

3. LBHI chooses to hide behind procedural arguments rather than simply agree to share information concerning the Proposed Transaction with CarVal and other significant creditors. It argues that it is subject to a confidentiality restriction and therefore cannot produce information concerning the Proposed Transaction. Such a contractual restriction, however, would in no way restrict this Court's ability to order production of the information – and LBHI does not argue otherwise.[2]

4. LBHI argues that the underlying issues "primarily" involve the United Kingdom administration proceedings of LBIE and LBHI2. *See* Obj. ¶ 4. To the contrary, LBHI admits that it "ent[ered] into the Commitment Letter on September 30, 2013" (Obj. ¶ 24) and never, in any of the communications with CarVal and the other creditors, did LBHI claim otherwise or that these issues did not involve LBHI. Indeed, LBHI concedes that it is "an ultimate beneficiary of recoveries by LBHI2 and [is] a litigant with standing that has been acting in support of LBHI2's claims." Obj. ¶ 4.

5. Moreover, LBHI tries in its Objection to walk a fine line between arguing for the merits of the Proposed Transaction without disclosing any of its material terms. But, LBHI fails to submit a sworn statement from any of its directors or other person with knowledge of the Proposed Transaction to properly demonstrate the purported propriety of the transaction. That silence is deafening. Accordingly, this Court should ignore the unsupported statements of LBHI's counsel as to the LBHI Board's consideration of the terms of the Proposed Transaction and the arguable merits of that deal. The appropriate mechanism for ascertaining the merits of the Proposed Transaction is through the document production and examinations sought under the Motion pursuant to Bankruptcy Rule 2004.

---

[2] CarVal will execute an appropriate confidentiality agreement to maintain the confidentiality of all information to be produced. Accordingly, LBHI's concerns regarding providing access to sensitive commercial information (*see* Obj. ¶¶ 47-50) is a moot point.

3

**I.    CarVal's Actions are Motivated Solely by Its Substantial Holdings of Claims Against LBHI**

6.    LBHI contends that CarVal's motivations are based on its position as a potential bidder for the Claims and in litigation in the English court (the "Litigation") concerning the priority of claims among LBHI, LBHI2 and LBIE. *See* Obj. ¶ 23. These arguments are speculative and irrelevant. CarVal's interest in bringing the Motion is to ensure that the LBHI Board abides by its duty to maximize the recoveries of all LBHI creditors. Notwithstanding the significance of the Claims to LBHI's creditors' recoveries, the Proposed Transaction provides for a payment to LBHI2 of only £650 million, together with the right to receive future contingent sums – a price that is merely 52% of the subordinated debt face value of the Claims. The Proposed Transaction, on its face, therefore vastly understates the value of the Claims.

7.    The need for the disclosure sought by the Motion is well demonstrated by the information recently disclosed by the LBIE Joint Administrators. The Commitment Letter for the Proposed Transaction was executed by LBHI on September 30, 2013. *See* Obj. at ¶ 24. Just eleven days later, on October 11, 2013, the LBIE Joint Administrators issued the LBIE 10th Progress Report, which indicated "a number of positive developments in the period resulting in better than expected asset recoveries and a reduction in claim reserves." *See* LBIE 10th Progress Report, attached hereto as Exhibit A, at 6. The Joint Administrators disclosed that "[t]he recent strengthening in the financial position of the Administration now suggests that an outcome close to 100% recovery is likely in the Low case scenario, whilst in the High case scenario there would be sufficient funds to settle in full all ordinary ranking (unsubordinated) claims with a significant surplus available to fund claims by Shareholders and/or other unsecured creditors' claims for post-Administration interest." *Id*. According to the Joint Administrators, the improvement in the

4

"High" case scenario between March 2013 and September 2013 was just under £3 billion. *Id*. at 9. The LBHI Board entered into the Commitment Letter just days before extremely positive information was disclosed indicative of the significantly higher value of the Claims. Creditors should be afforded transparency into the terms of the Proposed Transaction in these circumstances, when it appears from the information available that very substantial value was left behind by LBHI under the Proposed Transaction.

8. Concerned about the potential loss in value from the Proposed Transaction, CarVal (and, at times, certain other creditors) offered to purchase the Claims subject to the Proposed Transaction. CarVal's most recent offer is for £900 million (an amount £250 million greater than the announced purchase price), to ensure a maximum recovery to LBHI's creditors. The LBHI Board and other parties should be pleased to have higher and better offers for the Claims, but have instead refused to engage with the potential bidders. If LBHI has any concerns concerning CarVal's motivations as a result of its bid for the Claims, CarVal is prepared to (i) act as a stalking horse bidder for the Claims, or (ii) recuse itself entirely from any sale or competitive process, provided that the price floor for bids is set appropriately. CarVal believes that the open market clearing price for the asset will be greater than £900 million particularly when post-petition interest is taken into account.

9. As discussed herein and in the Motion, CarVal submits that the disclosure of information concerning the terms of the Proposed Transaction and the facts and circumstances that gave rise to the Proposed Transaction will enable LBHI's substantial stakeholders to determine whether the value of one of LBHI's greatest remaining assets is being maximized pursuant to the Plan. Accordingly, CarVal respectfully requests that the Court grant the relief sought in the Motion.

**II.    Bankruptcy Rule 2004 is Applicable Post-Confirmation**

10.    LBHI also argues that relief under Rule 2004 is not available post-Effective Date. LBHI is wrong in claiming that relief under Bankruptcy Rule 2004 is not available to CarVal and the other creditors. *See* Obj. ¶ 29. LBHI is also wrong in arguing that it was necessary for the Plan to preserve a creditor's right to seek information pursuant to Rule 2004. *See id.* ¶ 30. These arguments wholly ignore the case law that directly provides that a creditor can seek discovery pursuant to Bankruptcy Rule 2004 after a plan of reorganization is confirmed.

11.    For instance, in *Express One Int'l, Inc.*, 217 B.R. 215 (Bank. E.D. Tx. 1998), a creditor filed a claim seeking payment for post-petition maintenance work and the debtor filed a counterclaim. The court held a hearing and took the matter under advisement, and, prior to a determination, the debtor's plan was confirmed. The issue before the court was whether an examination pursuant to Bankruptcy Rule 2004 is allowable after a debtor emerges from bankruptcy. The court specifically held that a 2004 examination was allowable post-confirmation because that "[t]he language of Rule 2004(b) allows, in a narrow context, the use of a Rule 2004 examination post-confirmation." *Id.* at 217. The court in *Express One* held that a post-confirmation 2004 examination "must be limited to issues that the court still has the power to entertain. 'That is, it is restricted to the administration of the case post-confirmation.'" *Id.* (quoting *In re Cinderella Clothing Industries, Inc.,* 93 B.R. 373 (Bankr. E.D. Pa. 1988)).

12.    Moreover, in *In re Cinderella Clothing Industries, Inc.,* 93 B.R. 373 (Bankr. E.D. Pa. 1988), the court allowed a creditor to seek discovery of the debtor's principals and attorneys on a limited basis after confirmation of the debtor's plan. The court reasoned that bankruptcy courts retain a certain "residue, albeit limited, of court authority over a confirmed chapter 11 case." *Id.* at 377 (citing 11 U.S.C. §§ 105, 1112, 1127, 1142 and 1144). Accordingly, the court

6

granted the 2004 examination and held that "[t]he examination, though, must be limited to issues which the court, at that time, still has the power to entertain. That is, it is restricted to the administration of the case post-confirmation." *Id.*

13.     Here, this Court retained the exclusive jurisdiction "of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan." Plan § 14.1. Specifically, the Plan provides that this Court retained exclusive jurisdiction "[t]o hear and determine any actions brought against the Plan Administrator in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan." Plan § 14.1(j). Furthermore, pursuant to the Plan, LBHI, as Plan Administrator, is required to take such actions as are necessary to "maximize Distributions to holders of Allowed Claims." Plan § 6.1(b)(iii). Nothing in the Plan precludes a creditor such as CarVal from seeking relief pursuant to Bankruptcy Rule 2004.

14.     Accordingly, as in the cases cited above, this Court may grant CarVal the relief requested in the Motion pursuant to Bankruptcy Rule 2004. The requests pertain to the Plan Administrator's duty to maximize Distributions to creditors of the estates. Contrary to LBHI's suggestion in its Objection, the Proposed Transaction is anything but routine, and there is no risk that granting the Motion would open the floodgates to creditors routinely making such requests to question the LBHI Board's decision making. The Claims at issue exceed £1.25 billion in value and are one of the most significant remaining sources of value to LBHI's creditors. CarVal holds approximately $12 billion in Allowed Claims against LBHI's estate. This is not a run-of-the-mill issue and the amounts at stake are significant. No precedent will be set by granting this Motion.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein and in the Motion, CarVal respectfully requests that the Court enter an Order, pursuant to Bankruptcy Rule 2004, in the form attached to

the Motion as <u>Exhibit A</u>: (i) requiring the production of documents from LBHI and the LBHI Board Members responsive to the document requests attached as <u>Schedule 1</u> to the proposed Order; (ii) requiring LBHI to produce the representative, or representatives, for examination who are most knowledgeable about the subject matters set forth in this Motion; (iii) authorizing the deposition of certain of the LBHI Board Members and Daniel J. Ehrmann of Alvarez & Marsal; (iv) authorizing the issuance of one or more subpoenas compelling such document production and appearance for examination; and (v) granting such other and further relief as the Court deems just and proper.

Dated: October 23, 2013  
       New York, New York

**STROOCK & STROOCK & LAVAN LLP**

By: /s/ Kenneth Pasquale  
    Kristopher M. Hansen  
    Kenneth Pasquale  
    180 Maiden Lane  
    New York, New York 10038-4982  
    Telephone: (212) 806-5400  
    Facsimile: (212) 806-6006

*Counsel to CarVal Investors, LLC*