Mark I. Bane (MB 4883)
Anne H. Pak (AP 3641)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for The Baupost Group, L.L.C., as manager*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| Debtors. | : | Jointly Administered |

**REPLY OF THE BAUPOST GROUP, L.L.C. TO OBJECTION OF
PLAN ADMINISTRATOR TO MOTIONS FOR LEAVE TO EXAMINE
LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 2004 AND JOINDERS THERETO**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Baupost Group, L.L.C., as manager on behalf of certain funds ("Baupost") files this reply (the "Reply") to the objection (the "Objection")[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), to the motions for leave to conduct discovery of LBHI pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and joinders thereto (collectively, the "2004 Motions"), including the joinder filed by Baupost [Docket No.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

40497] (the "Baupost Joinder"). In support of this Reply, Baupost respectfully states as follows:

## ARGUMENT

*A.   The Plan Expressly Provides Certain Specifically Bargained-For Protections to Creditors that are Meaningful only if Rule 2004 can be Applied.*

1.   The Objection repeatedly, and wrongly, argues that the 2004 Motions represent an attempt to inject a requirement for creditor approval into post-confirmation transactions. The Objection further asserts that such efforts are inconsistent with the express terms of the Plan, negotiated between LBHI and the creditors, which declines to require such creditor approval. Objection at ¶¶ 3, 14-17, 29-32.  To the contrary, however, the relief sought in the 2004 Motions reflects an express and bargained-for provision of this heavily negotiated Plan.

2.   The Plan requires the Plan Administrator to:

> exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the assets of the Debtors and/or Debtor-Controlled Entities under the Plan as necessary to maximize Distributions to holders of Allowed Claims;

*Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* dated June 30, 2011 [Docket No. 18204], at §6.1 (b)(iii) (emphasis added).  The phrase "as necessary to maximize Distributions to holders of Allowed Claims" (the "Duty to Maximize Provision") was added at the insistence of the creditors, and was not reflected in the initial versions of the Plan filed with the Court.[2] It is

---

[2] The Objection cites this provision as the basis for LBHI's uncontroverted authority to enter post-confirmation transactions without first obtaining Bankruptcy Court approval. Objection at ¶ 15. In citing

illogical for LBHI to assert that the Duty to Maximize Provision does not allow for creditor investigations of possible violations of this Plan provision. Absent the opportunity for creditors to examine actions taken by the Plan Administrator, the Duty to Maximize Provision would become meaningless verbiage, rather than a substantive limitation added at the behest of creditors who, by virtue of these negotiations, agreed to support the modified Plan.

3. The Duty to Maximize Provision of Plan §6.1(a)(iii) was one of the terms specifically demanded by the creditors in the context of the extensive Plan negotiations, noted in the Objection. The initially-filed draft of the Plan, dated March 15, 2010, did not include the Duty to Maximize Provision, or the specific reference to a "sale".[3] This provision continued to remain absent from the subsequent two filed versions of the Plan, dated April 14, 2010 and January 25, 2011, respectively.[4] It was only subsequent to the filing of the January 25 version of the Plan that significant negotiations ensued among LBHI and its creditors, during which the creditors demanded the inclusion of the Duty to Maximize Provision.

4. The provision was thus added in the next filed version of the Plan, dated June 30, 2011, at about the same time as various creditors, including Baupost, entered into Plan Support Agreements with the Debtors. The Objection argues that the relief sought in the 2004 Motions is an attempt to introduce a requirement for creditor approval

---

the provision and interpreting it, however, the Objection emphasizes the introductory clause regarding LBHI's reasonable business judgment but conveniently ignores the additional final clause that LBHI agreed to include at the creditors' insistence.

[3] *See* Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Docket No. 7572], at §6.1 (b)(iii).

[4] *See* Revised Chapter 11 Plan [Docket No. 8330] at §6.1 (b)(iii); First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Docket No. 14150] at §6.1 (b)(iii); .

of post-confirmation transactions. This is a gross mischaracterization. In fact, all the 2004 Motions are intending to do is explore possible violations of the Duty to Maximize Provision of the Plan.

    *B.    LBHI's Resistance to Discovery Cannot Be Justified by Arguments about the Movants' Lack of Specificity.*

    5.    In numerous instances in the Objection, LBHI challenges the relief sought in the 2004 Motions on the grounds that the parties filing the 2004 Motions (the "Movants") and other creditors fail to fashion their arguments or alternative bids with greater specificity. It appears that LBHI fails to appreciate the irony, if not ludicrousness, of lamenting the Movants' lack of specificity when it is exactly that inability to be specific that the 2004 Motions seek to correct. LBHI is introducing a classical "Catch-22" by complaining about the creditors providing insufficient detail while simultaneously depriving creditors of the information necessary to specify such detail.

    6.    While arguing that that the Movants do not need the information requested in the 2004 Motions to evaluate the Transaction or to prepare a competing offer, Objection at ¶ 10, the Objection simultaneously (i) accuses the 2004 Motions of mischaracterizing the assets involved in, and nature of, the Transaction (Objection at ¶¶ 4, 34-35); (ii) alleges that the 2004 Motions failed to identify any aspect of the Transaction that could suggest a breach of the Plan Administrator's duties (Objection at ¶¶ 33-35); and (iii) maintains that both of the bona fide purchase offers from Movants were not fully formed for lack of material terms (Objection at ¶¶ 26, 28).

    7.    It is no surprise that the 2004 Motions point to only disconcerting "red flags" and do not identify details or facts about the Transaction to evidence LBHI's

failure to satisfy the Duty to Maximize Provision. The purpose of Rule 2004 discovery is to allow creditors to examine these types of "red flags" that could lead to concrete allegations or to putting any concerns to rest.

8.  Similarly, the Objection insists that LBHI never received fully formulated competing offers for the Transaction assets (Objection at ¶¶ 26, 28). The Objection dismisses CarVal's written £900 million purchase offer as "lack[ing] any supporting details relating to contingent payment rights or the structure of a proposed multi-dimensional transaction, which would take into account the complex and interrelated issues considered by the Board in evaluating the Transaction." Objection at ¶ 28. The Objection also insists that "nothing prevented the Funds or other creditors from formulating a credible, well-developed offer and providing it to LBHI2 and the Plan Administrator." Objection at ¶ 41. The Objection ignores, however, LBHI's steadfast refusal to provide the information and details necessary for any possible bidder to formulate a fully comprehensive offer.

9.  Finally, the Objection's protest that LBHI and LBHI2 received competing offers for the Claims only after entry into the Commitment Letter, though accurate, is also disingenuous. A potentially interested bidder rarely conveys a fully formulated offer for assets prior to information that the assets are available for purchase. This is all the more so when the seller has previously sold assets only through a competitive bidding process. It is equally disingenuous to suggest that LBHI had no idea that other parties would be interested in bidding for the Claims. Several days prior to LBHI's entry into the Commitment Letter, Baupost had already expressed interest in the process for the sale of the Claims in its September 27, 2013 letter to the LBHI Board and had even earlier

expressed interest in bidding on the Claims in its September 26, 2013 email to a Joint Administrator of LBHI2.[5] LBHI had every reason to believe that other parties would be interested in bidding on the transaction, but chose not to explore these alternatives.

    C.    *The Extraordinary Level of Creditor Concern Regarding the Transaction Supports Granting Discovery.*

    10.    During the five years since LBHI's bankruptcy petition was first filed, Baupost has been actively involved in these cases. During that time, on not a single occasion has Baupost appeared before this Court expressing concern regarding any of the estates' many proposed transactions. This practice evidences that Baupost is not inclined to embark on fishing expeditions and resists opposition unless there is a real cause for concern.

    11.    Indeed, no previous pre-confirmation or post-confirmation transaction has generated such an outpouring of concern by so many of the very significant creditors of the Debtors. The extraordinary number of LBHI's substantial creditors seeking discovery and expressing serious concerns relating to the Transaction should evidence to the Court the serious degree of legitimate concern that the Transaction has generated, and that mandates granting the requested Rule 2004 discovery.

    D.    *Potential Fraudulent Conveyance Action*

    12.    In addition to concerns about LBHI breaching the Plan's Duty to Maximize Provision, the Baupost Joinder also sought 2004 discovery to analyze the possibility that the Transaction could constitute a constructive fraudulent conveyance. *See* Baupost Joinder at ¶ 12. LBHI is clearly an insolvent entity and the limited publicly

---

[5] A copy of Baupost's letter to the LBHI Board is attached to the Baupost Joinder as <u>Exhibit A</u> thereto.

available information, pending Rule 2004 discovery, suggests that value LBHI will receive from the Transaction would be dramatically lower than the value that will be lost. For example, (i) Movants have already made two competing offers for the Claims, one with guaranteed minimum proceeds nearly 40% greater than those to be received in the Transaction;[6] (ii) 11 days after announcement of the Transaction LBIE published a report detailing a projected surplus increase of approximately £3 billion;[7] and (iii) an extraordinary number of substantial creditors have expressed serious concern about the lack of equivalent value being received under this Transaction.

13. Discovery that affords a detailed understanding of the Transaction is necessary to a determination of whether the Transaction is being made for equivalent value. Equally significant, Rule 2004 discovery is also needed to explore whether the transfers between LBHI2 and the Transaction's purchasers are properly collapsed into a single transaction that includes LBHI, and value being forfeited by LBHI. It is access to this very type of information that Rule 2004 was intended to produce.

E. *The 2004 Motions Are Specifically Limited to LBHI and Are Clearly Within the Jurisdiction of the Bankruptcy Court*

14. The Objection repeatedly argues that the relief sought in the 2004 Motions is more properly pursued in the U.K. courts, and LBHI incorrectly asserts that the discovery being demanded relates exclusively to LBHI2, and not to LBHI. Objection at

---

[6] *See* 2004 Motion filed by Davidson Kempner Capital Management LLC on October 16, 2013 [ECF No. 40532] (the "DK Motion") at ¶¶ 9-10, 25, 28.

[7] Id. at ¶ 3.

¶¶ 4, 19-23, 35, 36.[8]  The Plan expressly provides that the Court retains jurisdiction to enforce the Plan, which includes the Duty to Maximize Provision. Plan § 14.1.  On their face, the 2004 Motions all seek relief exclusively regarding LBHI's role in the Transaction and the Transaction's impact on the LBHI estate.

15.    It is undeniable that LBHI is a signatory to the Transaction, as expressly reported in the Press Release announcing the Transaction.  Objection at ¶ 18.  Moreover, LBHI, itself acknowledges that the LBHI Board was required to exercise its business judgment with regard to the Transaction.  In fact, LBHI Board representatives specifically told the Movants that the Board had applied its business judgment and executed its duties to maximize distributions to creditors when entering into the Transaction.  *See* Objection at ¶¶ 7, 8, 11, 27.  LBHI can hardly assert that the Transaction is unrelated to LBHI, and that the concerning dimensions of the Transaction have no place before this Court, while simultaneously maintaining that the LBHI Board exercised reasonable business judgment in becoming a signatory to the Transaction.

WHEREFORE, for the reasons stated herein, Baupost respectfully requests that the Court deny the relief requested in the Objection and grant the relief

---

[8] The Objection states that the Transaction "primarily" involves claims of LBHI2, but does not explain what other assets are involved.  Objection at ¶ 4.

sought in the 2004 Motions, with the additional provisions for participation by Baupost as described in the Baupost Joinder, and grant such other and further relief as is just and proper.

Dated: New York, New York
       October 23, 2013

Respectfully submitted,

ROPES & GRAY LLP

By:   /s/ *Mark I. Bane*
     Mark I. Bane (MB 4883)
     Anne H. Pak (AP 3641)
     1211 Avenue of the Americas
     New York, NY 10036-8704
     Telephone: (212) 596-9000
     Facsimile: (212) 596-9090

*Attorneys for The Baupost Group, L.L.C., as manager*