Hearing Date and Time: November 22, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: November 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                                            :
In re                                                       :   Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,                      :   08-13555 (JMP)
                                                            :
                    Debtors.                                :   (Jointly Administered)
                                                            :
------------------------------------------------------------x
```

**NOTICE OF MOTION OF LEHMAN BROTHERS**
**HOLDINGS INC. FOR EXTENSION OF THE PERIOD TO**
**FILE OBJECTIONS TO AND REQUESTS TO ESTIMATE CLAIMS**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, for

an extension of the period to file objections to and requests to estimate claims, all as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**November 22, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Jacqueline Marcus, Esq. and Garrett A. Fail, Esq., attorneys for LBHI; (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Tracy Hope Davis, Esq., Susan Golden, Esq. and Andrea Schwartz, Esq.; (iv) all holders of disputed claims; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **November 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

US_ACTIVE:\44359209\3\58399.0011

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 1, 2013
      New York, New York

                          /s/ Jacqueline Marcus
                          Jacqueline Marcus
                          Garrett A. Fail

                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone: (212) 310-8000
                          Facsimile: (212) 310-8007

                          Attorneys for Lehman Brothers Holdings Inc.
                          and Certain of Its Affiliates

Hearing Date and Time: November 22, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: November 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                        :   Chapter 11 Case No.
                                             :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, :   08-13555 (JMP)
                                             :
                        Debtors.             :   (Jointly Administered)
                                             :
------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR EXTENSION OF**
**THE PERIOD TO FILE OBJECTIONS TO AND REQUESTS TO ESTIMATE CLAIMS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, dated December 5, 2011 [ECF No. 22737] (the "Plan"), submits this motion for an order extending the period to file objections to and requests to estimate claims, and respectfully represents:

**Preliminary Statement**

1. Following the commencement of the largest cases in history, creditors filed approximately 69,000 proofs of claim asserting approximately $1.3 trillion in liabilities

US_ACTIVE:\44309833\19\58399.0003

against the twenty-three chapter 11 debtors (the "Debtors"). Evaluating such a large number of claims is a monumental task, but the innovative and diligent efforts of the Debtors and their professionals have already led to the resolution of more than 64,500 claims asserting more than $1.2 trillion.[1] Virtually all of the progress to date has been achieved without contest before the Court. To date, the Plan Administrator has distributed more than $62.8 billion to holders of more than 25,500 allowed claims, including indenture trustees and affiliates that, in turn, make further wide distributions. Only approximately 4,500 claims – less than 7% in number and 11% in amount asserted against the Debtors – remain unresolved.

2. Pursuant to the Plan, the Plan Administrator has until March 6, 2014 to file objections to and request estimation of claims. While the Plan Administrator has made great progress in the resolution of Disputed Claims (as defined herein), it requests additional time to continue the process for the benefit of all parties in interest. The relief requested herein is contemplated by the Plan and does not prejudice any creditor, as the Plan provides reserves for liquidated Disputed Claims pending distribution. Absent the relief requested, the Plan Administrator would be forced to object prematurely and in an unorganized fashion to the remaining Disputed Claims to prevent a windfall to some creditors at the expense of others.

## Jurisdiction

3. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

4. On September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced cases under chapter

---

[1] Unless otherwise specified, the number, amount, and percentage of claims referred to herein is as of September 30, 2013.

2

11 of title 11 of the United States Code (the "Bankruptcy Code").  The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order").  The Plan became effective on March 6, 2012 (the "Effective Date").

5. Pursuant to the Plan and that certain *Order Modifying Certain Existing Claims Orders*, dated July 18, 2012 [ECF No. 29505], the Plan Administrator is exclusively authorized to object to and compromise and settle claims subject, in certain cases, to Court approval.  *See* Plan at §§ 6.1(b)(i), 9.4.

6. Pursuant to section 9.1 of the Plan, "[o]bjections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is 2 years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown."  Plan at § 9.1.  Based upon the occurrence of the Effective Date, the deadline for filing objections to or requests to estimate claims (the "Objection Deadline") is March 6, 2014, unless otherwise extended by the Court.

**Progress to Date**

7. The Debtors began the process of gathering and consolidating information relating to their liabilities long before creditors filed proofs of claim in these cases, when preparing their schedules and statements of financial affairs.  The volume of information required to be disclosed by the Debtors was unprecedented.  The process was hampered by the fact that the Debtors' prepetition, single, unified information network was dispersed widely and, in many instances, was controlled postpetition by non-controlled affiliates or third-party purchasers of assets.  Given these circumstances, compiling the Debtors' schedules of assets and

3

liabilities and executory contracts and leases was a massive task. Accordingly, with the Court's authority, the Debtors did not file their schedules until approximately six months after the Commencement Date, on March 12, 2009.[2]

8.  Creditors then had at least six months from that point until the general bar date for filing proofs of claim, which was established as September 22, 2009. *See* ECF No. 4271 (the "Bar Date Order").[3] Creditors submitting claims based on derivative contracts or guarantees had an additional one month to submit detailed questionnaires designed by the Debtors. Creditors submitting claims based on certain securities issued by the Debtors or their affiliates to retail investors outside of the United States were also permitted to submit claims more than one month after the general bar date. As a result, the Debtors did not know the full universe of claims or supporting information until well after the first anniversary of the Commencement Date.

9.  The Debtors developed and proposed various protocols and procedures to address the volume, novelty, and complexity of the claims issues that arose throughout these chapter 11 cases. The Court entered numerous orders and granted the Debtors authority "designed to maximize the efficiency" of the process and "promote the fair resolution of the tens of thousands of filed claims." *See In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010), *aff'd*, 445 B.R. 137 (S.D.N.Y. 2011). The Debtors' claims resolution process has been facilitated by the following orders:

- *Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts*,

---

[2] Merit LLC, LB Somerset LLC and LB Preferred Somerset LLC filed their petitions on December 14, 2009 and December 22, 2009, respectively, and filed their schedules on February 12, 2010. Certain of the Debtors amended their schedules from time to time.

[3] The Bar Date for Merit LLC, LB Somerset LLC, and LB Preferred Somerset LLC was June 11, 2010. *See* ECF No. 8818.

4

dated December 16, 2008 [ECF No. 2257] (as amended from time to time), which authorized the Debtors to enter into termination agreements for many of the more than 10,000 prepetition derivatives contracts, to fix amounts owed for many of the approximately 1.7 million prepetition transactions, and to allow claims without Court approval;

- *Order Approving The Proposed Cross-Border Insolvency Protocol For The Lehman Brothers Group of Companies*, dated June 17, 2009 [ECF No. 4020], which facilitated the resolution of hundreds of billions of dollars of claims asserted against the Debtors by their foreign affiliates;

- *Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities*, dated November 23, 2009 [ECF No. 5910], which authorized the Debtors to issue subpoenas in order to obtain information from various parties, and pursuant to which approximately 1,100 subpoenas have been served in connection with the claims reconciliation process;

- *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objection Procedures*, dated January 14, 2010 [ECF No. 6664], which expanded both the bases on which omnibus objections could be filed and the number of claims that could be subject to a single omnibus objection and, and pursuant to which the Debtors and Plan Administrator have filed approximately 444 objections to reduce, reclassify, and/or disallow claims;

- *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Approving Settlement Procedures*, dated March 31, 2010 [ECF No. 7936], which authorized the Debtors to compromise and settle claims without Court approval, provided an efficient and cost-effective means to do so, and minimized the number of objections and motions that had to filed;

- *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors*, dated April 19, 2010 [ECF No. 8474] (as amended from time to time, the "Claims Hearing and ADR Procedures Order"), which established (i) a streamlined structure for prosecuting objections based on a claim's merits or legal sufficiency, distinguishing between objections for which an evidentiary hearing is required and objections for which one is not required and (ii) an alternative dispute resolution ("ADR") process to expedite the consensual resolution of claims and reduce burdens on the Court; and

- *Order Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Procedures for the Determination of the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc.*, dated August 10, 2011 [ECF No. 19120], pursuant to which the Debtors employed an innovative approach to allow more than 24,700 claims based on structured securities and notes issued by LBHI and certain of its foreign affiliates.

5

10. The negotiations that culminated with the filing of the Plan and its ultimate confirmation were another critical step in the claims reconciliation process. During the course of plan negotiations, the Debtors entered into settlement agreements with ten of their thirteen largest derivatives counterparties, eliminating potentially time-consuming and expensive litigation and reducing counterparty claims to approximately 50% of their aggregate asserted amount. In addition, the Plan incorporated comprehensive settlements with nine administrators who together control eighty-seven of the Debtors' foreign, non-controlled affiliates and certain third-parties (reducing claims of such parties alone by more than $295 billion). The Plan also allowed the claims of approximately 240 Debtor-controlled affiliates totaling approximately $16.7 billion and approximately $41 billion of claims between Debtors.

11. By the time the Plan was confirmed, the efforts of the Debtors and their professionals had led to the allowance, withdrawal, reduction, reclassification, disallowance or expungement of approximately 48,000 claims in the amount of approximately $765 billion. By the commencement of initial Plan distributions in April 2012, the Plan Administrator had reconciled and was able to make distributions of more than $22.5 billion to holders of approximately 23,500 allowed claims. The Plan Administrator believes this to be the largest initial distribution ever made by a company emerging from bankruptcy. At that time, approximately 11,500 claims remained unresolved.

12. In the more than 19 months since the Effective Date, the Plan Administrator has made dramatic progress in further reconciling claims by filing additional objections, resolving claims already subject to pending objections, conducting discovery, and resolving or reaching settlements involving claims for which objections have not yet been filed. In the post-Effective Date period alone, the Plan Administrator filed over 172 additional

6

objections to more than 3,600 claims and commenced approximately 27 ADRs under the Claims Hearing and ADR Procedures Order. In total, through objections, settlements, and other negotiations, the Plan Administrator allowed approximately 2,300 additional claims and achieved the withdrawal, expungement, reclassification or estimation (at zero dollars) of approximately 5,200 claims following the Effective Date. To date, the Plan Administrator has reconciled 61% of the claims that remained unresolved after the Effective Date and 93% of the total claims asserted against the Debtors.

13. During the same post-Effective Date period, the Debtors' team of personnel and professionals made substantial progress in liquidating the assets of the Debtors' estates, including successes in: the affirmative recovery of more than $857 million through settlements of approximately 96 ADR matters with 168 derivative counterparties (many of whom originally asserted claims *against* the Debtors); the negotiation and consummation of a global settlement with Lehman Brothers Inc. and subsequent sales of more than $7 billion of the general unsecured claims allowed pursuant to the settlement; and several significant real-estate related sales, including the sale of Archstone Enterprise LP for cash and stock with an aggregate value of approximately $6.5 billion, the sale of a portfolio of industrial properties for approximately $960 million, and the sale of a portfolio of office properties for approximately $859 million.

14. The Plan Administrator was able to distribute approximately $40.3 billion over the second, third and fourth Plan distributions to holders of over 25,900 allowed claims.[4] Since the Effective Date, the Plan Administrator has also reduced the claim reserves for Disputed Claims by approximately $58 billion.

---

[4] Additional claims were reconciled and allowed or withdrawn or expunged subsequent to the fourth distribution date.

**Relief Requested**

15.     In accordance with sections 9.1 and 14.1 of the Plan, sections 105(a) and 1142(b) of the Bankruptcy Code, and Bankruptcy Rule 9006(b), the Plan Administrator hereby requests that the Court extend the Objection Deadline by eighteen (18) months to September 6, 2015, without prejudice to the ability of the Plan Administrator to request further extensions.

**Basis for Relief**

16.     The Court has the express authority pursuant to the Plan to extend the Objection Deadline and cause exists for it to do so.

17.     Pursuant to the Confirmation Order, the Court retained exclusive jurisdiction over all matters arising under or related to these chapter 11 cases, including to: "hear and determine any objection to or motion to estimate Claims," "issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code," and "enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce . . . the Plan, the Confirmation Order or any other order of the Bankruptcy Court." Confirmation Order, at ¶ 77; Plan § 14.1(c), (e), (i).

18.     As set forth above, section 9.1 of the Plan specifically provides for an extension of the Objection Deadline "for cause shown." Plan, at § 9.1. Further, Bankruptcy Rule 9006(b) provides, in relevant part that,

> [w]hen an act is required or allowed to be done . . . within a specified period by . . . order of court, *the court for cause shown may at any time in its discretion* . . . order the period enlarged if the request therefore is made before the expiration of the period originally prescribed . . . .

FED. R. BANKR. P. 9006(b)(1) (emphasis added).

19.     Extending the Objection Deadline is also consistent with the Court's broad authority, pursuant to section 105(a) and 1142(b) of the Bankruptcy Code, to issue orders

8

necessary to implement the provisions of the Plan and the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); 11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is necessary for the consummation of the plan."); *see also Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain post-confirmation jurisdiction to the extent provided by the plan); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances."); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. §1142(b)… and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.'") (internal citations omitted).

20. The Court has "the inherent power to control its docket, including controlling the timing of proceedings on that docket. Such control is a matter of judicial discretion." *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 770 (Bankr. E.D. Cal. 1990); *see, e.g.*, *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96-97 (2d Cir. 2012) (referring to the power "inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quoting *Landis v. N. Am.*

*Co.*, 299 U.S. 248, 254 (1936)); *In re World Wide Gifts, Inc.*, 10 B.R. 761, 765 (Bankr. S.D.N.Y. 1981) (same).

21.  Extensions of the time to object to claims have been routinely granted to other chapter 11 debtors in this district. *See*, *e.g.*, *In re Extended Stay Inc.*, Case No. 09-13764 (JMP) (Bankr. S.D.N.Y. Oct. 19, 2011) (initial 90-day deadline extended by more than one year); *In re Refco Inc.*, Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. July 8, 2010) (initial 90-day deadline extended by more than three years and eight months); *In re Musicland Holding Corp.*, Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. June 10, 2010) (initial one-year deadline extended by more than two years and four months); *see also In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 26, 2007) (initial 180-day deadline doubled). It has been noted that "courts should be liberal in granting extensions of time sought before the period to act has elapsed, as long as the moving party has not been guilty of negligence or bad faith and the privilege of extensions has not been abused . . . ." 10 COLLIER ON BANKRUPTCY 9006.06[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. (2010)).

### Good and Sufficient Cause Exists to Extend the Objection Deadline

22.  The Debtors and the Plan Administrator have acted diligently and persistently to reconcile the massive number of claims asserted in these cases. By the Effective Date, the Debtors had reconciled 83% of the total claims population, and since that time, the Debtors and the Plan Administrator have reconciled 61% of the number of remaining claims. These efforts have enabled the Plan Administrator to distribute a total of approximately $62.8 billion pursuant to the Plan.

23.  The progress achieved is impressive by any measure and even more so when considered in light of the circumstances in which it was achieved, including, the lack of information relating to non-controlled affiliates, the need to value bespoke financial instruments

that form the basis of asserted liabilities, and the need to obtain information from and engage in negotiations with a global creditor base. Those claims that do remain unreconciled, or "Disputed" (as that term is defined or used in the Plan) (collectively, the "Disputed Claims") include those that involve some of the more complex legal issues or fact patterns. More than 750 of the remaining claims were filed in unliquidated amounts and were not subsequently amended.

24. Because of the nature of the issues involved, the rate of resolution for the remaining population of Disputed Claims may not be commensurate with the rate of resolution thus far. The Plan Administrator believes that the requested eighteen month extension is required and reasonable in light of the circumstances, but that additional time may be necessary for a more limited number of claims in the future.

25. Extension of the Objection Deadline will benefit all creditors and parties in interest. It will, for example, allow the Plan Administrator to continue to engage in meaningful negotiations (both individual and, frequently, multilateral) to resolve claims consensually, obviating the need to file objections. Resolving a claim without a formal objection benefits both the holder of the Disputed Claim and the holders of all allowed claims against the particular Debtor, as both the Disputed creditor and the Debtor are spared the time and expense of litigation. Further, if the Objection Deadline is not extended, the Plan Administrator will be compelled to divert the Debtors' resources to object to all of the remaining approximately 4,500 Disputed Claims within the next 4 months. Moreover, the Plan Administrator would be compelled to interpose further objections on alternative bases to the approximately 1,100 claims that are subject to pending and adjourned objections.[5] If the requested relief were not granted, the Plan Administrator would have two choices, neither of which is in the best interests of the

---

[5] For example, absent the relief requested, the Plan Administrator would otherwise lose the opportunity to object to a Disputed Claim on a substantive basis if a pending objection on a procedural basis were overruled.

11

Debtors.  The Plan Administrator might need to forego filing certain meritorious objections, creating a windfall for holders of Disputed Claims and prejudicing other creditors.  Alternatively, the Plan Administrator could file massive prophylactic objections before the Objection Deadline, which would be inefficient and burdensome for the Court and inconvenient holders of Disputed Claims, and would provide no offsetting benefit for creditors.[6]

26.     Holders of Disputed Claims will not be prejudiced by an extension of the Objection Deadline, which was contemplated by the Plan.  Whether or not the Objection Deadline is extended, holders of such claims will have a full and fair opportunity to be heard if and when an objection is litigated.  The Plan provides for reserves for liquidated Disputed Claims pending resolution and distribution.  *See* Plan, at § 8.4.  Unless a lower amount is agreed to by a particular creditor, a reserve for each Disputed Claim is maintained based on the filed, liquidated amount of such claim, and the holder of such claim is entitled to the interest earned on account of such reserve if and when the claim becomes allowed.  *See id.*[7]

27.     In short, good and sufficient cause exists to grant the requested extension of the Objection Deadline to September 6, 2015.

### Notice

28.     No trustee has been appointed in these chapter 11 cases.  Notice of this Motion has been served in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the United States Trustee for Region 2; (ii) the Securities and

---

[6] The Plan Administrator has scheduled a hearing on the Motion on November 22, 2013, well in advance of the Objection Deadline, because in the event that the Court does not grant the relief requested, the Plan Administrator's personnel and professionals will need several months to prepare objections to the approximately 4,500 Disputed Claims that remain unresolved.

[7] No amounts are required to be reserved on account of unliquidated claims.  *See id.* Claims may be amended only with Court order.  *See* Confirmation Order at ¶ 86.

12

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all parties who have requested notice in these chapter 11 cases; and (vi) all holders of Disputed Claims.

## Conclusion

29.    For the reasons set forth herein, the Motion should be granted.  The proposed extension of the Objection Deadline (i) is reasonable and fair, (ii) does not modify the substantive rights of any of the holders of Disputed Claims, and (iii) promotes consensual resolution of Disputed Claims at reduced costs to the Debtors as well as the holders of all claims.

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated: November 1, 2013
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                          :

In re                                             :            Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :            08-13555 (JMP)

                     Debtors.              :           (Jointly Administered)

------------------------------------------------------------x

## ORDER EXTENDING THE PERIOD TO FILE
## OBJECTIONS TO AND REQUESTS TO ESTIMATE CLAIMS

Upon the motion, dated November 1, 2013 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure, to extend the Objection Deadline, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures [ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all parties who have requested notice in these chapter 11 cases; and (vi) all holders of Disputed Claims, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that the Objection Deadline imposed by section 9.1 of the Plan is hereby extended for a period of eighteen (18) months to September 6, 2015, without prejudice to the ability of the Plan Administrator to request further extensions; and it is further

      ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2013
      New York, New York

                                                         _____
                                                         UNITED STATES BANKRUPTCY JUDGE