NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | ) Case No. 08-13555 (JMP) |
| | ) |
| Debtors. | ) |
| | ) |

## MEMORANDUM DECISION DISALLOWING AND EXPUNGING PROOFS OF CLAIM NUMBERS 28845 AND 28846

KING & SPALDING
*Attorneys for the Debtors*
1185 Avenue of the Americas
New York, NY 10036

     Arthur J. Steinberg, Esq.
     Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for LBREP Lakeside SC Master I, LLC*
555 California Street
San Francisco, CA 94104

     Mark E. McKane, Esq.

JAMES M. PECK
United States Bankruptcy Judge

### *Introduction*

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI",

and together with LBHI, "Lehman") seek a determination that a 2010 settlement between LCPI

and Alfred H. Siegel as Chapter 11 trustee (the "Trustee") for LBREP/L-SunCal Master I, LLC

(the "SunCal Parent") was a good-faith settlement for purposes of Sections 877 and 877.6 of the

California Code of Civil Procedure ("CCCP").  *See* Mot. by Lehman for an Order (I)

Determining that the LCPI Settlement was Entered into in Good Faith Pursuant to CCCP §§ 877

and 877.6, and, Based on such Good Faith Finding and for Other Reasons, (II) Disallowing and

Expunging Proofs of Claim Number 28845 and 28846, March 25, 2013, ECF No. 36164 (the

"Motion").  The Court previously approved the settlement under Rule 9019 of the Federal Rules

of Bankruptcy Procedure ("Rule 9019") on September 29, 2010.  The Motion calls for

consideration of whether approval of a settlement under Rule 9019 also constitutes a

determination of good faith under these sections of the CCCP.

The Motion is opposed by LBREP Lakeside SC Master I, LLC ("LBREP Lakeside"), a

putative joint tortfeasor with LCPI that entered into a separate settlement with the Trustee.

LBREP Lakeside takes the position that the settlement between LCPI and the Trustee does not

qualify as a good-faith settlement under applicable sections of the CCCP because, when

compared with LCPI, LBREP Lakeside may have paid a disproportionately larger percentage of

the settlement.  LBREP Lakeside objects to the Motion in order to preserve its ability to pursue

claims in the Lehman bankruptcy cases based on contribution and indemnity.

The question presented is whether such claims can survive bankruptcy court approval of

settlements previously made with the Trustee.  The Court finds that earlier approvals under Rule

9019 preclude recovery and resolve this question.  Compliance with a 9019 standard is sufficient

to establish the good faith of a settlement with the Trustee under the CCCP and must be

dispositive of the issues presented.  Accordingly, and for the reasons stated in this decision, the

2

Motion is granted and the contribution and indemnity claims made by LBREP Lakeside in the

Lehman bankruptcy cases are no longer viable and are disallowed.

### *Background*

*The Loan Facilities and Related Dividend*

LCPI provided financing to SunCal Parent, a holding company organized to fund real

estate development projects owned by its operating subsidiaries ("SunCal Subsidiaries").  *See*

Reply (defined below) Ex. A – Decl. of Robert Brusco in Support of Mot. of LCPI Pursuant to

Section 105 of the Bankr. Code and Fed. R. Bankr. P. 9019 for Approval of That Certain Am.

and Restated Compromise by and among LCPI, the Trustee, and the Official Comm. of

Unsecured Creditors in the SunCal Bankr. Cases, Sept. 20, 2010, at ¶ 8 ("Brusco Decl.").

LBREP Lakeside owns approximately 90% of SunCal Parent's equity.  *Id.*[1]

During 2006 and 2007, SunCal Parent entered into three secured credit agreements with

LCPI and other lenders.  Brusco Decl. at ¶¶ 10-12.  Specifically, on or about January 19, 2006,

SunCal Parent borrowed a total of $320 million under (i) a revolving credit facility of $75

million and term loan facility of $160 million under a first lien credit agreement with certain first

lien lenders (collectively, the "First Lien Lenders"), and (ii) an $85 million term loan facility

under a second lien credit agreement with certain second lien lenders.  *Id.* at ¶ 11.  On or about

February 6, 2007, SunCal Parent borrowed an additional $75 million under a third lien term loan

credit agreement with certain third lien lenders.  *Id.* at ¶ 12.  The three loans were guaranteed by

the SunCal Subsidiaries and secured by liens on properties held by the SunCal Subsidiaries (the

---

[1] The remaining equity is owned by an entity called SCC Ranch.  *Id.*

"Collateral"). *Id.* at ¶¶ 11-12. LCPI served as the initial administrative agent under all three of these credit agreements. *Id.*[2]

Of the secured financing incurred by SunCal Parent, LCPI held approximately $69 million (30%) of the first lien debt, $13 million (15%) of the second lien debt, and $49 million (65%) of the third lien debt. Brusco Decl. at ¶¶ 11-12. These financing arrangements allowed SunCal Parent to pay a dividend to its equity holders, including LBREP Lakeside, in the amount of $144 million (the "Dividend"). *See* Objection (defined below) Ex. R. – Decl. of Mark E. McKane in Supp. of the LBREP Defs.' Mem. of P. & A. in Supp. of Mot. for Good Faith Settlement Determination, Nov. 13, 2012, at ¶ 2 (the "McKane Decl.").

*The SunCal Parent Bankruptcy*

On September 10 and 11, 2008, involuntary Chapter 11 petitions were filed against SunCal Parent and certain of its affiliates in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"). *In re LBREP/L-SunCal Master I LLC*, No. 08-15588 (EAS); Brusco Decl. at ¶ 14. Alfred H. Siegel was appointed as Trustee on October 29, 2008, and orders for relief were entered on October 30, 2008. Brusco Decl. at ¶ 14.

As of the filing date, SunCal Parent had defaulted under the first, second, and third lien credit agreements. Brusco Decl. at ¶ 15. Appraisals of the Collateral and market data indicated that the Collateral was worth materially less than the amount outstanding under even the first lien credit agreement. *Id.* at ¶¶ 15, 19.[3]

---

[2] Gramercy Warehouse Funding I, LLC later replaced LCPI as administrative agent for the second lien credit agreement, and Square Mile Structured Debt (One), LLC and Square Mile Structured Debt (Two), LLC collectively replaced LCPI as administrative agent for the third lien credit agreement. *Id.*

[3] The claim filed by the First Lien Lenders in the SunCal Parent Chapter 11 cases was $235 million while a 2008 appraisal valued the Collateral at only $62 million. *Id.* at ¶ 19.

4

*The Lift Stay Motions*

On October 2, 2008, LCPI, acting on its own behalf and as administrative agent for the First Lien Lenders, filed a motion in the California Bankruptcy Court to lift the automatic stay to permit foreclosure on the Collateral.   Brusco Decl. at ¶ 16.  The motion was opposed by the Trustee and the official committee of unsecured creditors of SunCal Parent (the "SunCal Committee") that challenged the amount and validity of the First Lien Lenders' liens.  *Id.*  A determination on the motion was suspended to allow the parties to pursue a consensual resolution.  *Id.* at ¶ 17.[4]

After a breakdown of an initial settlement agreement among the First Lien Lenders (including LCPI) and the Trustee, the Trustee filed a motion on June 17, 2010 in these Chapter 11 proceedings to lift the automatic stay to allow it to sell the Collateral free and clear of LCPI's liens and to deny their right to credit bid on the assets.  Brusco Decl. at ¶¶ 20-23.  The Trustee sought such relief by alleging that the claims of LCPI are subject to equitable subordination, the security interests held by LCPI are avoidable as fraudulent transfers, and the Trustee has claims against LCPI for certain lender liability.  *Id.* at ¶ 24.

*The LCPI Settlement*

LCPI, on behalf of itself and as administrative agent for the First Lien Lenders, and the Trustee entered into a settlement dated August 18, 2010 resolving the lift stay motions and other related litigation and setting forth a process for the disposition of the Collateral (the "LCPI Settlement").  Brusco Decl. at ¶ 27.  Specifically, under the LCPI Settlement, the Trustee received, among other things, $5.5 million in cash ($3.5 million for administrative expenses of

---

[4] In addition to filing a motion to lift the automatic stay, LCPI also opposed the SunCal Parent's continued use of the First Lien Lenders' cash collateral. *Id.* at ¶18.

the SunCal Parent Chapter 11 cases and $2 million to maintain and preserve the Collateral), and 3.5% of the net recovery to be realized from the sale of the Collateral.  *Id.* at ¶¶ 30-33.

Under the LCPI Settlement, LCPI and the other First Lien Lenders obtained a secured claim equal to the proceeds of the Collateral, a general unsecured claim for the remaining deficiency claim, and general releases from the Trustee and related debtor parties, including the SunCal Committee.  Brusco Decl. at ¶ 28.  The LCPI Settlement also contemplated that the First Lien Lenders and the Trustee would split any additional recovery by the Trustee.  *Id.* at ¶¶ 31-32.

The Court approved the LCPI Settlement in accordance with Rule 9019.  *See* Order Pursuant to Section 105 of the Bankr. Code and Rule 9019 Approving That Certain Am. and Restated Compromise By and Among LCPI, the Trustee, and the SunCal Committee, Sept. 29, 2010, ECF No. 11683 (the "NY LCPI Settlement Order").  A number of months later, the California Bankruptcy Court also approved the LCPI Settlement under the standards of Rule 9019.  Motion Ex. F – Order Granting Mot. to Approve Am. and Restated Compromise Between the Trustee, the SunCal Committee, and LCPI, in its Individual Capacity and as Admin. Agent for the First Lien Lenders, Jan. 27, 2011 (the "California LCPI Settlement Order").

*The LBREP Settlement*

On October 29, 2010, the Trustee brought suit in California against, among others, the equity holders of SunCal Parent, including LBREP Lakeside, seeking to recover the Dividend ($144 million) as a fraudulent transfer.   McKane Decl. at ¶ 6.  The complaint included allegations that the equity holders breached their fiduciary duties and brought claims for unlawful distribution, conversion, unjust enrichment, accounting, aiding and abetting, and conspiracy.  *Id.* at ¶ 7.

6

Following a mediation conducted by the Honorable Mitchel R. Goldberg, Retired, the

defendants (including LBREP Lakeside) and the Trustee resolved all issues in the litigation and

reached a settlement in which the equity holders agreed to pay $16 million in exchange for

releases from the Trustee (the "LBREP Settlement").  McKane Decl. at ¶¶ at 12, 16, 26.  LBREP

Lakeside's share of the amount paid to the Trustee was $13.8 million.  *Id.* at ¶ 27.[5]

The parties presented the LBREP Settlement for approval by the California Bankruptcy

Court under Rule 9019 and sought an additional finding that the LBREP Settlement was a "good

faith" settlement pursuant to Section 877.6 of the CCCP.  The California Bankruptcy Court

approved the LBREP Settlement and also determined that it was a good faith settlement under

the California statute by order dated November 29, 2012.  Objection Ex. T – Order Granting the

Trustee's Mot. for Order Approving and Authorizing (1) Compromise Between the Trustee,

Dividend Action Defendants and SunCal Management, LLC Pursuant to Rule 9019; (2) Good

Faith Settlement Determination Pursuant to CCCP § 877.6; and (3) Compensation to Special

Litigation Counsel Orrick, Herrington & Sutcliffe LLP Pursuant to 11 U.S.C. § 328, Nov. 29,

2012.

*The LBREP Lakeside Proofs of Claims*

Prior to the settlements with the Trustee described above, LBREP Lakeside filed timely

proofs of claim (claim numbers 28845 and 28846)  against LBHI and LCPI respectively based

on alleged indemnity and contribution claims (the "Claims").  In accordance with the confirmed

plan of reorganization in these Chapter 11 cases, Lehman reserved $280 million on account of

the Claims.  By stipulation, this reserve has been reduced to $20 million.  Stipulation and Order

---

[5] At the hearing on the Motion, counsel for LBREP Lakeside stated that approximately 45% of the LBREP
Settlement was paid through insurance.  Mot. Hr'g Tr. at 97:16-98:4, June 13, 2013, ECF No. 38065.

Reducing Reserve Concerning Proofs of Claim Number 28845 and 28846, Feb. 28, 2013, ECF.
No. 35624.

*The Motion*

Lehman filed the Motion on March 25, 2013 seeking to expunge the Claims based upon
the characterization of the LCPI Settlement as a "good faith" settlement under CCCP §§ 877 and
877.6.  The Motion relies upon the orders of this Court and the California Bankruptcy Court
finding that the LCPI Settlement was within the range of reasonableness under the standards of
Rule 9019.  Motion at ¶¶ 40-45.  Lehman asserts that a finding of reasonableness under Rule
9019 is the functional equivalent of a good faith finding under the California statute.  Thus,
according to Lehman, LBREP Lakeside no longer should have any ongoing right to pursue the
Claims for contribution and indemnity.  *Id.* at ¶¶ 46-49.

LBREP Lakeside objects that the Motion fails to provide any evidence comparing the
proportionate liability of LCPI with that of LBREP Lakeside and contends that LBREP Lakeside
actually paid a disproportionately larger share of the consideration paid to the Trustee.  *See*
LBREP Lakeside's (A) Resp. to the Mot. by Lehman for an Order (I) Determining that the LCPI
Settlement was Entered into in Good Faith Pursuant to CCCP §§ 877 and 877.6, and, Based on
such Good Faith Finding and for Other Reasons, (II) Disallowing and Expunging Proofs of
Claim Number 28845 and 28846, and (B) Cross-Motion to Transfer for Improper Forum, April
25, 2013, ECF No. 36870, at ¶¶ 30-38 (the "Objection").  The Objection points out that no
evidence of proportionate liability was offered when the settlements with the Trustee were
approved.  *Id.* at ¶¶ 39-42.

LBREP Lakeside also seeks to have this issue of comparative responsibility heard in
California and has cross-moved to transfer these proceedings to the California Bankruptcy Court

because (i) LCPI consented to jurisdiction of the California Bankruptcy Court in connection with

negotiation of the LCPI Settlement, (ii) the California Bankruptcy Court considered both the

LCPI Settlement and the LBREP Settlement, and (iii) the California Bankruptcy Court has

knowledge of the underlying claims of the Trustee against LCPI and LBREP Lakeside.

Objection at ¶¶ 20-25.

Lehman has replied to the Objection and opposes any change of venue.  *See* Lehman's (I)

Reply to the Resp. of LBREP Lakeside to Lehman's Motion (A) Seeking a Good Faith

Determination for the LCPI Settlement, and Based on that Good Faith Finding and for Other

Reasons (B) Objecting to the Proofs of Claim Filed by LBREP Lakeside, and (II) Objection to

LBREP Lakeside's Cross-Motion to Transfer Venue, June 6, 2013, ECF No. 37790, at ¶¶ 15-20

(the "Reply").  LBREP Lakeside responded to the Reply urging that the Motion should be

transferred to the California Bankruptcy Court to conserve judicial resources.  *See* LBREP

Lakeside's Reply in Supp. of its Cross-Motion to Transfer for Improper Forum, June 11, 2013,

ECF No. 37856.

A hearing on the Motion took place on June 13, 2013.  After oral argument, the parties

were given the opportunity to provide additional submissions on the questions presented, and

supplemental letter briefs were filed on July 2, 2013.  ECF Nos. 38373 and 38374.

At the hearing, the Court stated that it would decide this dispute on the merits and would not

transfer venue to the California Bankruptcy Court.  The reasons for retaining this contested

matter in the Southern District of New York are discussed briefly in the next section of this

decision.

***This Court is the most appropriate forum to decide whether claims against Lehman have
continuing viability or should be disallowed***

Since Lehman filed for bankruptcy on September 15, 2008, the Bankruptcy Court for the
Southern District of New York has been the exclusive forum for resolving all manner of disputes
arising out of these enormously complex Chapter 11 cases.  With respect to the allowance of
claims in particular, all omnibus claims objections have been filed and prosecuted here, and the
process of allowing and disallowing claims has been handled by a single court in a manner that
promotes consistency and efficiency.  The first omnibus objection to claims was filed by Lehman
on January 29, 2010.  Since that date, four hundred forty-five such objections have been filed.
The claims reconciliation process is continuing, and it is foreseeable that it will take years to
complete.

Despite the heavy concentration of activity in this Court with respect to the potential
disallowance of claims, LBREP Lakeside has requested transfer of the Motion to the California
Bankruptcy Court pursuant to Section 1412 of Title 28 which states that "[a] district court may
transfer a case or proceeding under title 11 to a district court for another district, in the interest of
justice or for the convenience of the parties."   28 U.S.C. § 1412.[6]  The request is based primarily
upon the alleged familiarity of the California tribunal with proceedings in the SunCal Parent's
bankruptcy case and the need to apply and interpret sections of the CCCP.  The request may also
stem from a tactical desire to obtain a ruling on the viability of the Claims from a court that lacks
any direct connection to the Lehman claims process and that conceivably may be more favorably
disposed to the arguments of LBREP Lakeside.

---

[6] Although 28 U.S.C. § 1412 refers to the District Court, the Bankruptcy Court is authorized to exercise the District Court's power to transfer a case or proceeding under Sections 157(a) and 1334(b) of Title 28 and the amended standing order of reference in this district.  *In re Enron Corp.*, 317 B.R. 629, 638 (Bankr. S.D.N.Y. 2004) (citations omitted); *In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).

The party requesting a change of venue has the burden of proof, and that burden must be carried by a preponderance of the evidence. *Gulf States Exp. Prods. Corp. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390-91 (2d Cir. 1990) (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr. E.D.N.Y. 1985); *In re Butcher*, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985); King, 1 Collier on Bankruptcy ¶ 3.02[4][a], at 3-153 (15th ed. 1989)). The power to transfer venue should be "exercised cautiously" by courts. *Enron*, 317 B.R. at 638 (citations omitted). Further, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Manville*, 896 F.2d at 1391 (citing *In re Lionel Corp.*, 24 B.R. 141, 143 (Bankr. S.D.N.Y. 1982); 1 Collier, *supra*, ¶ 3.02[4][a], at 3-153).

The Motion expressly addresses the Claims that were filed in the Lehman bankruptcy cases by LBREP Lakeside, and the subject matter necessarily impacts estate administration in this Court. Adjudicating claims disputes is essential to the core functions of the bankruptcy court. 28 U.S.C. §157(b)(2)(B). Indisputably, resolution of the Motion will affect distributions to creditors. For this reason, absent truly unusual circumstances, the court with direct responsibility for a bankruptcy case, large or small, ordinarily should adjudicate claims disputes that impact the rights of creditors in that case. This obvious proposition is particularly compelling in light of the enormous scale of the claims reconciliation efforts in the Lehman cases.

LBREP Lakeside argues unpersuasively that the California Bankruptcy Court is better equipped to hear the Motion because it presided over both the LCPI Settlement and the LBREP Settlement, and also because the Motion involves interpretation of a California statute, but "bankruptcy courts routinely apply and interpret other states' laws. . . ." *In re Patriot Coal*

11

*Corp.*, 482 B.R. 718, 752 (Bankr. S.D.N.Y. 2012). Without doubt, the California Bankruptcy

Court is a logical and permissible forum to consider California law, but in this instance it is not

the proper forum. Transferring the Motion to the California Bankruptcy Court is neither

economic nor efficient and would be inconsistent with broader objectives of orderly case

administration. Accordingly, the Court has denied the LBREP Lakeside request to transfer the

Motion.

### *Settlements approved under Rule 9019 are good faith settlements under California law*

The relevant California statutes which govern whether a settlement is a good faith

settlement are CCCP §§ 877 and 877.6. CCCP § 877 provides in pertinent part:

> Where a release, dismissal with or without prejudice, or a covenant
> not to sue or not to enforce judgment is **given in good faith** before
> verdict or judgment to one or more of a number of tortfeasors
> claimed to be liable for the same tort, or to one or more other co-
> obligors mutually subject to contribution rights, it shall have the
> following effect:
>
> (a) It shall not discharge any other such party from liability unless
>     its terms so provide, but it shall reduce the claims against the
>     others in the amount stipulated by the release, the dismissal or
>     the covenant, or in the amount of the consideration paid for it,
>     whichever is the greater.
>
> (b) **It shall discharge the party to whom it is given from all
>     liability for any contribution to any other parties**.
>
> . . . .

CCCP § 877 (emphasis added). CCCP § 877.6 specifies procedures for determining whether a

settlement is a good faith settlement. That section states as follows:

> (a)(1) Any party to an action in which it is alleged that two or more
> parties are joint tortfeasors or co-obligors on a contract debt shall
> be entitled to a hearing on the issue of the good faith of a
> settlement entered into by the plaintiff or other claimant and one or
> more alleged tortfeasors or co-obligors . . . .

12

(2) In the alternative, a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order. . . .

(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.

(c) **A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.**

(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

. . . .

CCCP § 887.6 (emphasis added).

As set forth in the statute, the party contesting the good faith of a settlement has the burden of proof. CCCP § 887.6(d). The seminal decision of the Supreme Court of California in *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal.3d 488 (1985), thoroughly explains the intent and purpose of CCCP §§ 877 and 877.6. As discussed at length in *Tech-Bilt*, these sections were enacted to remedy the inability of joint tortfeasors, at common law, to seek contribution against co-defendants. *Tech-Bilt*, 38 Cal.3d at 493-94 ("The primary purpose of the bill was the equitable objective of ameliorating the punitive effect of the no-contribution rule upon joint tortfeasors.").

The consequence of the rigid no-contribution rule was to make it less likely that individual defendants in multi-defendant suits would want to settle with the plaintiff. *Id.* at 493. With the enactment of CCCP §§ 877 and 877.6, individual defendants can seek a finding that their settlement is a good-faith settlement, thereby preventing co-defendants from seeking

13

contribution claims against them.  The California Supreme Court in *Tech-Bilt*, in adopting a

"reasonable range test," listed the following relevant factors to consider when determining

whether a settlement is a good faith settlement:

> [T]he intent and policies underlying section 877.6 require that a
> number of factors be taken into account including a rough
> approximation of plaintiffs' total recovery and the settlor's
> proportionate liability, the amount paid in settlement, the allocation
> of settlement proceeds among plaintiffs, and a recognition that a
> settlor should pay less in settlement than he would if he were found
> liable after a trial. Other relevant considerations include the
> financial conditions and insurance policy limits of settling
> defendants, as well as the existence of collusion, fraud, or tortious
> conduct aimed to injure the interests of nonsettling defendants.
> Finally, practical considerations obviously require that the
> evaluation be made on the basis of information available at the
> time of settlement. A defendant's settlement figure must not be
> grossly disproportionate to what a reasonable person, at the time of
> the settlement, would estimate the settling defendant's liability to
> be.

*Id.* at 499 (internal citations and quotations omitted).

This test does not yield an exact calculation of pro rata liability for each defendant.  The

*Tech-Bilt* decision makes clear that an acceptable settlement range --- like that under a Rule 9019

analysis --- is extremely broad.  *See Tech-Bilt*, 38 Cal.3d at 499-500, 501 n. 9 ((i) noting that the

settlement figure must not be "grossly disproportionate" to what a reasonable person would pay,

(ii) permitting an objector to demonstrate, "if he can, that the settlement is so far "out of the

ballpark" such that it is inconsistent with equitable objectives of the statute," and (iii)

emphasizing the "broad parameters of the "ballpark" within which settlements will be deemed to

be in good faith").

Notably, a party objecting to the good faith of a settlement has no right to a mini-trial on

valuation; instead the procedure for determining whether the settlement was made in good faith

is left to the discretion of the trial court.  *Abbott Ford, Inc. v. Superior Court*, 43 Cal.3d 858, 880

14

n. 23 (1987).  The mere fact that a settling party may be shown to have paid less than its

theoretical proportionate share of liability to the plaintiff does not establish any lack of good

faith.  *Tech-Bilt*, 38 Cal.3d at 499.  The foregoing judicial gloss on the provisions of the CCCP

suggests that the process of determining whether a particular settlement actually satisfies the

good faith standard is more art than science.  In that respect, it is an art form not unlike that

practiced by bankruptcy courts in approving settlements proposed under the authority of Rule

9019.

Applying the above interpretive guidance to the LCPI Settlement, the settlements

negotiated by the Trustee easily meet the good faith test contemplated in *Tech-Bilt*.  Importantly,

substantially all of the questions that might be raised relating to the settlements under provisions

of the CCCP, in practical terms, have already been answered by virtue of the approval process

that took place both in this Court and the California Bankruptcy Court.  Separate settlements

with the Trustee were approved by separate orders of each bankruptcy court, and that is

sufficient precedent to support the conclusion that the settlements, relative to one another, are

good faith settlements.

Although not equivalent to a finding of good faith under CCCP §§ 877 and 877.6, Rule

9019 calls upon the bankruptcy court to exercise discretion that is analogous to that of a

California state court judge and does not expressly describe the standards to be applied in

approving settlements.[7]  Rule 9019 provides that "after notice and a hearing, the court may

---

[7] A recent California bankruptcy decision from the northern district compared approval of settlements under Rule 9019 and CCCP § 877.6.  *In re Plant Insulation Co.*, 469 B.R. 843, 884-86 (Bankr.N.D.Cal. 2012) , *aff'd*, 485 B.R. 203 (N.D.Cal. 2012), *rev'd on other grounds*, --- F.3d ---, Nos. 12-17466, 12-17467, 2013 WL 5779568 (9th Cir. Oct. 28, 2013).  Specifically, the *Plant Insulation* court was determining whether or not post-confirmation settlements with insurance companies, which cutoff rights of non-settling insurance companies to seek equitable contribution from settling insurance companies, should be approved in accordance with the Rule 9019 standard.  In finding that Rule 9019 provided the correct standard, the court stated that the standard under Rule 9019 "is actually more exacting than the section 877.6 standard, because under Rule 9019 the party proposing the settlement has the

approve a compromise or settlement." Fed.R.Bankr.P. 9019(a).  The Supreme Court's seminal

decision in *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,

390 U.S. 414 (1968) breathes substance into the approval process.  According to the Supreme

Court, settlements must be "fair and equitable," and the bankruptcy judge must apprise "himself

of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate

success should the claim be litigated." *TMT Trailer Ferry*, 390 U.S. at 424 (citing *Ashbach v.*

*Kirtley*, 289 F.2d 159 (8th Cir. 1961); *Conway v. Silesian-Am. Corp.*, 186 F.2d 201 (2d Cir.

1950)).  The Supreme Court further explained that:

> [T]he judge should form an educated estimate of the complexity,
> expense, and likely duration of such litigation, the possible
> difficulties of collecting on any judgment which might be obtained,
> and all other factors relevant to a full and fair assessment of the
> wisdom of the proposed compromise. Basic to this process in
> every instance, of course, is the need to compare the terms of the
> compromise with the likely rewards of litigation.

*Id.* at 424-25.

The Court already has applied this standard when it approved the LCPI Settlement.  *See*

Mot. of LCPI Pursuant to Section 105 of the Bankruptcy Code and Rule 9019 for Approval of

the LCPI Settlement, Sept. 2, 2010, ECF No. 11153.  A number of parties filed responses to the

approval motion, including LBREP Lakeside.  *See* LBREP Lakeside's Objection to the Mot. of

LCPI Pursuant to Section 105 of the Bankruptcy Code and Rule 9019 for Approval of the LCPI

Settlement, Sept. 16, 2010, ECF No. 11407.

A hearing on LCPI's motion occurred on September 22, 2010, and the Court reserved

decision.  *See* Transcript, ECF No. 12227.  The Court thereafter overruled all objections and

entered the NY LCPI Settlement Order and found that approval of the LCPI Settlement under

---

burden of proof, while under section 877.6 the party opposing the settlement has the burden of proof." *Id.* at 886
(citations omitted).

Rule 9019 was "in the best interests of LCPI and its estate."  NY LCPI Settlement Order at 2.

The California Bankruptcy Court also approved the LCPI Settlement under Rule 9019 by

entering the California LCPI Settlement Order.[8]

Upon review, this history supports a finding that the LCPI Settlement falls within the

reasonable range test articulated in *Tech-Bilt*.  First, two bankruptcy courts, this Court and the

California Bankruptcy Court, determined that the LCPI Settlement should be approved under a

Rule 9019 standard.  As the Supreme Court in *TMT Trailer Ferry* instructed, both courts

considered the propriety of the LCPI Settlement and found that it represented a reasonable

alternative to litigation.  It is inconceivable that terms of any settlement could be robust enough

to meet the "fair and equitable" standard of Rule 9019 while at the same time be so inadequate

relative to real exposure as to be "grossly disproportionate" and outside the broad parameters of

the "ballpark" articulated in *Tech-Bilt*.

Second, as a practical matter, it is virtually impossible to reliably measure the liability of

LBREP Lakeside in comparison with LCPI at the time of the LCPI Settlement.  Part of the

difficulty arises from the fact that at the time the parties entered into the LCPI Settlement, the

Trustee had not yet brought claims against LBREP Lakeside.  Moreover, LCPI, as a lender, and

LBREP Lakeside, as a recipient of a dividend, were exposed to claims that were based on

different legal theories and entirely different transactions.  The exposure is not really

comparable: LCPI provided financing that enabled LBREP Lakeside to receive allegedly

voidable transfers.

Third, all parties were represented by experienced counsel and were motivated to resolve

the litigation brought by the Trustee for agreed settlement consideration that was deemed

---

[8] LBREP Lakeside points out on numerous occasions that it reserved rights to seek contribution from LCPI in the NY LCPI Settlement Order and the California LCPI Settlement Order, but a reservation of rights does not preserve or revitalize rights that are illusory.

acceptable by the parties following good-faith, arms'-length negotiations.  LBREP Lakeside has

not identified anything improper in relation to the settlement or misconduct of any sort.  LBREP

Lakeside's complaint is subjective: it believes that it may have overpaid and is looking to

Lehman for reimbursement.  Given the approval of the LCPI Settlement by two bankruptcy

courts, that is no longer possible.

### *Conclusion*

Lehman has objected to the Claims on the theory that approvals of the LCPI Settlement

under Rule 9019 must mean that the settlement also meets the definition of a good faith

settlement under CCCP §§ 877 and  877.6.  The Court agrees.  The Claims are disallowed, and

Lehman is directed to submit an order consistent with this decision.

SO ORDERED.

Dated: New York, New York         *s/ James M. Peck*
      November 4, 2013          JAMES M. PECK
                             United States Bankruptcy Judge