Hearing Date and Time: November 22, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: November 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)

Robin E. Keller, Esq.
**HOGAN LOVELLS US LLP**
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for QVT Fund LP, Quintessence Fund L.P. & Piney Branch Park Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**LIMITED OBJECTION OF QVT FUND LP, QUINTESSENCE FUND L.P.
AND PINEY BRANCH PARK INC. TO MOTION OF LEHMAN BROTHERS
HOLDINGS INC. FOR EXTENSION OF THE PERIOD
TO FILE OBJECTIONS TO AND REQUESTS TO ESTIMATE CLAIMS**

QVT Fund LP ("**QVT Fund**"), Quintessence Fund L.P. ("**Quintessence**") and Piney Branch Park Inc. ("**Piney Branch**") (collectively, "**QVT**"), by and through their undersigned counsel, hereby submit this limited objection (the "**Objection**") to the *Motion of Lehman Brothers Holdings Inc. for Extension of the Period to File Objections to and Requests to Estimate Claims* [Docket No. 40939] (the "**Motion**").[1] In support of this Objection, QVT respectfully states as follows:

**PRELIMINARY STATEMENT**

1. QVT submits this limited objection to the extension of time requested by the Debtors, as it pertains to those certain derivatives and guaranty claims described more fully below and on

---

[1] Capitalized terms used but not defined herein shall have such meanings ascribed to them in the Motion.

Annex 1 attached hereto (collectively, the "**QVT Claims**"), filed by QVT against LBHI, LBSF, LBOTC and LBCS. QVT has substantial derivatives claims against the Debtors currently totaling in the aggregate approximately $280 million, and does not owe them any amounts. QVT's claims include Corporate and Sovereign Credit Default Swap ("**CDS**") Claims, Mortgage-related CDS Claims, swap contracts, Pay as You Go ("**PAUG**") CDS Claims and significant Preferred Stock CDS ("**PCDS**") Claims. QVT closed out its positions shortly following the bankruptcy filings, searched out bids in the marketplace in compliance with its ISDA obligations while experiencing the substantial market turmoil following the bankruptcy filings, and quantified its damage claims. QVT timely filed its Proofs of Claim, and the supporting documentation with this Court in September and October, 2009. The Debtors filed objections to the QVT Claims in April, 2011 (objecting to the Piney Branch claims) and June, 2011 (objecting to the QVT Fund and Quintessence claims), which objections have been adjourned indefinitely by the Debtors' action.

2. QVT believes that the major differences between QVT and the Debtors relate to approximately thirty PCDS Claims and two PAUG CDS Claims. QVT has attempted to negotiate informally the resolution of the QVT Claims with representatives of the Debtors since early 2010, making its personnel available for numerous calls and meetings over the years with a changing roster of such representatives. QVT has submitted pages and pages of analysis and documentation of its claims, which it has painstakingly explained to one after another of the Debtors' representatives. QVT has even engaged an independent expert, Professor Paul Pfleiderer of Stanford University, to examine the reasonableness of the QVT Claims and present his conclusions to the Debtors.

3. Despite these repeated efforts by QVT to explain to the Debtors' representatives the

\\NY - 002509/000004 - 2959459 v6

basis for the QVT Claims, the Debtors have failed again and again to engage in a process that could lead to an agreed valuation and liquidation of the QVT Claims. QVT has requested that the QVT Claims get scheduled for mediation, as required by the derivatives claims liquidation procedures set by this Court, and had hoped to commence mediation in the third quarter of this year. Instead, the Debtors' representatives, after initially offering to schedule mediation, have ignored QVT's calls citing a need for further internal discussion, in essence suggesting the QVT Claims will be pushed to the "back of the queue."

4. QVT believes that the PCDS and PAUG CDS positions in question were mismarked on the Debtors' books at the time of the bankruptcy filings, which has ultimately led to the dispute concerning QVT's liquidation calculations. It is five years since QVT liquidated its derivatives positions, nearly 2-1/2 years since the Debtors objected to QVT's claims, and over 18 months since the Debtors' Plan became effective. QVT has been more than forthcoming with its time and information in support of its claims, and wants to find a path to resolution, so it can receive the large amount of money it is indisputably owed by the Debtors. On information and belief, over $100 million is frozen in reserves pending the resolution of the QVT Claims. QVT cannot determine from the Motion filed by the Debtors what the status of the other remaining disputed claimants is, but it does know that it wants to get the QVT Claims resolved, and should not be forced to wait for another two years, or more, before it receives what is due and owing to it. QVT requests that the Court condition entry of the extension order with a requirement that the Debtors (i) immediately put QVT on the mediation schedule, or (ii) require the Debtors to report to the Court on whether they are engaging in a good faith effort to resolve these disputes, with (iii) a firm timetable for the resolution process to move forward promptly.

**BACKGROUND**

5. QVT, investment funds managed by QVT Financial LP, entered into multiple ISDA Master Agreements, including the Schedules, Confirmations and Credit Support Annexes to those certain ISDA Master Agreements (each a "**Master Agreement**" and collectively, the "**Master Agreement Documents**"), with various subsidiaries and affiliates of Lehman Brothers Holdings Inc. ("**LBHI**"), including Lehman Brothers Commodity Services Inc. ("**LBCS**"),[2] Lehman Brothers Special Financing Inc. ("**LBSF**")[3] and Lehman Brothers OTC Derivatives Inc. ("**LBOTC**").[4]

6. Pursuant to the Master Agreement Documents, QVT entered into numerous equity, credit default, interest rate and commodity derivative transactions with LBOTC, LBSF and LBCS. Each transaction under the Master Agreement Documents was explicitly and unconditionally guaranteed by LBHI, which guaranteed the "due and punctual payment of all amounts payable" (each a "**LBHI/QVT Guarantee**" and collectively, the "**LBHI/QVT Guarantee Documents**").[5]

7. Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its affiliates, including LBCS, LBSF and LBOTC (collectively, the "**Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy**

---

[2] LBCS entered into Master Agreements with QVT Fund and Quintessence on June 14, 2007, and with Piney Branch on March 22, 2007.
[3] LBSF entered into a Master Agreement with QVT Fund on February 25, 2005, and with Quintessence on June 18, 2007.
[4] LBOTC entered into Master Agreements with QVT Fund and Quintessence on September 25, 2007.
[5] QVT Fund entered into LBHI/QVT Guarantee Documents with respect to its Master Agreement with LBCS on July 6, 2007, its Master Agreement with LBOTC on October 8, 2007, and its Master Agreement with LBSF on February 25, 2005. Quintessence entered into LBHI/QVT Guarantee Documents with respect to its Master Agreement with LBCS on July 6, 2007, its Master Agreement with LBOTC on October 8, 2007, and its Master Agreement with LBSF on July 9, 2007. Piney Branch entered into LBHI/QVT Guarantee Documents with LBHI on March 23, 2007.

\\NY - 002509/000004 - 2959459 v6

Court"), thereby triggering multiple events of default under the Master Agreement Documents, including but not limited to, Section 5(a)(vii) of each of the Master Agreements, entitling QVT Fund and Quintessence to terminate the Master Agreements.

8. By letters dated September 15, 2008, QVT provided to the Debtors notices specifying the events of default and designating September 15, 2008 as the Early Termination Date (as defined in the Master Agreements) with respect to all outstanding transactions under the Master Agreement Documents (the "**Notice of Default & Early Termination**"). Pursuant to Section 6(d)(i) of each of the Master Agreements, QVT subsequently provided to the Debtors Statements of Calculations as required by the Master Agreement Documents, which Statements of Calculations subsequently were revised by QVT (the "**Statements of Calculations**").

9. On July 2, 2009, this Court entered the *Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* [Docket No. 4271] (the "**Bar Date Order**").

10. On or about September 21, 2009, QVT timely filed derivatives claims against LBSF, LBOTC, LBCS and guaranty claims against LBHI, currently totaling approximately $280 million.

11. Pursuant to the terms of the Bar Date Order, on October 21, 2009, QVT timely completed and uploaded the required Derivative Questionnaires and Guarantee Questionnaires in connection with the QVT Claims (together, the "**Questionnaires**").

12. When submitting the Questionnaires QVT included copies of the Master Agreements, the LBHI/QVT Guarantee Documents, the Notice of Default & Early Termination, the Statements of Calculations, and related documentation supporting the QVT Claims.

13. Beginning in early 2010, QVT was approached by representatives of the Debtors

5

and asked to engage in voluntary discussions regarding the QVT Claims. Since then, QVT has met repeatedly with representatives of the Debtors and provided extensive additional information regarding the nature, amount and methodology of calculating the QVT Claims with a view towards resolving any dispute with respect to the QVT Claims, including detailed presentations explaining their claims calculations and liquidation procedures which were delivered to the Debtors in April, May, June, July and October 2010, March and May 2011, May, July and September 2012, and June, July and October 2013.

14.     Notwithstanding this voluntary cooperation, on April 18, 2011 and June 7, 2011, the Debtors filed (i) *Debtors' One Hundred Thirty-Second Omnibus Objection to Claims (Valued Derivative Claims)* (the "**First Claims Objection**") [Docket No. 16117], and (ii) *Debtors' One Hundred Fifty-Fifth Omnibus Objection to Claims (Valued Derivative Claims)* [Docket No. 17468] (the "**Second Claims Objection**", and together with the First Claims Objection, the "**Claims Objections**"), respectively, seeking, among other things, reduction of the QVT Claims. The Claims Objections were based solely on the Debtors' assertion that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values" of the QVT Claims as determined by the Debtors. *See* Claims Objections ¶ 2 and ¶ 11.  The Debtors submitted no documentary or other evidence in support of their objection to the QVT Claims. On June 21, 2011 and August 12, 2011, QVT filed responses to the Claims Objections [Docket Nos. 17942 and 19207, respectively] arguing, among other things, that the Debtors failed to substantiate any basis for the proposed reduction of the QVT Claims, and the QVT Claims were *prima facie* valid, absent evidence to the contrary. This Court ultimately entered orders approving certain aspects of the Claims Objections (the "**Claims Orders**", [Docket Nos. 17363 and 18706, respectively]), but adjourning the Claims Objections as to the QVT Claims

6

indefinitely.

15.     In June and July, 2013, the Debtors again approached QVT to suggest a mediation procedure outside of the general mediation procedures established by this Court for derivatives claims. QVT engaged in discussion over the terms of such mediation, and, at the request of the Debtors' representatives, confirmed in writing on July 17, 2013 its willingness to proceed. However, the Debtors, after significant delay, suggested another meeting outside of mediation which took place on October 9, 2013. The discussion at the meeting did not advance resolution of the QVT Claims, so QVT requested that the Debtors either engage in a substantive discussion regarding valuation methodology or immediately submit the QVT Claims to the mediation procedures established by this Court. Since that time, there has been no communication from the Debtors' representatives, despite having been contacted by QVT.

## QVT'S LIMITED OBJECTION

16.     The Debtor's Motion requests that the Objection Deadline for filing objections to or requests to estimate claims, as described in section 9.1 of the Debtors' Plan, be extended from March 6, 2014 to September 6, 2015. QVT submits that this extension may be appropriate for other parties, but is not for QVT. Since the Claims Orders, the resolution of the QVT Claims has effectively been held in limbo by the Debtors, with the Debtors making no progress toward resolving the ongoing dispute behind the valuation of the QVT Claims so QVT can obtain a recovery on its claims. QVT has spent countless hours and incurred significant cost in the process of engaging with the Debtors, documenting the QVT Claims and pursuing a recovery, and submits to the Court that the time has come for a resolution. The Debtors should not be permitted to stall a resolution of the QVT Claims any longer.

17.     Not only is the delay in addressing and resolving their objections to the QVT

7

Claims unconscionable given QVT's good faith efforts to document its claims, and engage in substantive discussions, but the refusal to schedule mediation leaves QVT with no recourse or remedy in the Courts, due to the procedures orders obtained by the Debtors.  Moreover, the extension of the Objection Deadline, as requested by the Debtors in the Motion, is without prejudice to the ability of the Plan Administrator to request further extensions.  If granted, the Motion will set the precedent for QVT to be delayed for additional years, prevented from recovering amounts that are due and owing to it, while large sums of money sit in reserve, delaying the distributions to other parties as well.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

18. For the reasons set forth above, QVT submits that the relief requested in the Motion, as it relates to the QVT Claims, be conditioned with the following relief: a requirement that the Debtors (i) immediately put QVT on the mediation schedule, or (ii) require the Debtors to report to the Court on whether they are engaging in a good faith effort to resolve these disputes, with (iii) a firm timetable for the resolution process to move forward promptly, and grant such other, further relief as this Court may deem just and proper. QVT further requests that it be excused from having to serve this Objection by mail on thousands of other disputed claimants, as required by the Motion. Service of this Objection will be made on the Debtors, the Rule 2002 list, and key parties in interest whose names are readily available from the court records, and can be served by email. Service on all disputed claimants would be prohibitively costly, would not be timely, and would not serve the interests of justice.

Respectfully submitted,

Dated: November 14, 2013
New York, New York

**HOGAN LOVELLS US LLP**

By: /s/ Robin E. Keller

Robin E. Keller
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Email: robin.keller@hoganlovells.com

*Attorneys for QVT Fund LP, Quintessence Fund L.P. & Piney Branch Park Inc.*

\\NY - 002509/000004 - 2959459 v6

# ANNEX 1

## QVT Claims[1]

1. Claim No. 21222 by QVT Fund against LBOTC in the amount of $8,430,170.00

2. Claim No. 21139 by QVT Fund against LBHI in the amount of $8,430,170.00

3. Claim No. 21217 by QVT Fund against LBSF in the amount of $257,669,148.00

4. Claim No. 21140 by QVT Fund against LBHI in the amount of $257,669,148.00

5. Claim No. 21202 by QVT Fund against LBCS in the amount of $1,340,737.00

6. Claim No. 21138 by QVT Fund against LBHI in the amount of $1,340,737.00

7. Claim No. 21225 by Quintessence against LBOTC in the amount of $905,461.00

8. Claim No. 21145 by Quintessence against LBHI in the amount of $905,461.00

9. Claim No. 21205 by Quintessence against LBCS in the amount of $264,750.00

10. Claim No. 21144 by Quintessence against LBHI in the amount of $264,750.00

11. Claim No. 20421 by Quintessence against LBSF in the amount of $28,959,067.00

12. Claim No. 21146 by Quintessence against LBHI in the amount of $28,959,067.00

13. Claim No. 21216 by Piney Branch against LBCS in the amount of $3,496,091.00

14. Claim No. 21150 by Piney Branch against LBHI in the amount of $3,496,091.00

---

[1] The claim amounts as filed have been amended from time to time as numbers have been refined, as described in materials presented to the Debtors and discussions with the Debtors' representatives.