# EXHIBIT A

# US bank.

usbank.com

■ CORPORATE TRUST
P.O. Box 960778
Boston, MA 02196-0778

<u>**Notice to holder of Notes Issued by Exum Ridge CBO 2007-2, Ltd. with respect to the receipt by
the Issuer and Trustee of Derivatives ADR Notice No.: 157**</u>

*THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO
THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES.  PLEASE EXPEDITE RE-
TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.*

<u>**NOTICE TO THE HOLDERS OF NOTES ISSUED BY**</u>

## Exum Ridge CBO 2007-2, Ltd. (the *"Notes"*)
**CUSIP Numbers are attached on Exhibit B**
(Notice Date:  May 3, 2010)

Reference is made to that certain Indenture dated as of May 2, 2007 (the *"Indenture"*) by and
between Exum Ridge CBO 2007-2, Ltd., Issuer (the *"Issuer"*), Exum Ridge CBO 2007-2, Corp., Co-
Issuer (the *"Co-Issuer"*) and U.S. Bank National Association, as Trustee (the *"Indenture Trustee"*).  Any
capitalized terms used herein and not otherwise expressly defined shall have the respective meanings
assigned to such terms in the Indenture.

<u>**The Indenture Trustee Has Received a Derivatives Alternative Dispute
Resolution Notice ("*ADR Notice*") from Lehman Brothers Special Financing
Inc.; The Trustee is seeking the identity of Noteholders and the Participation,
Directions and Instructions from Noteholders.**</u>

Under the terms of the Indenture, the Issuer entered into a credit derivatives transaction with
Lehman Brothers Special Financing Inc. as a counterparty documented by that certain ISDA Master
Agreement (Multicurrency - Cross Border) dated as of May 2, 2007 by and between Lehman Brothers
Special Financing Inc. (*"LBSF"*) and the Issuer (the *"Master Agreement"*), that certain Schedule to the
Master Agreement dated as of May 2, 2007 between LBSF and the Issuer (the *"Schedule"*) and that
certain Confirmation to the Issuer from LBSF dated May 2, 2007 (the *"Confirmation"* and collectively
with the Master Agreement and Schedule, the *"Swap Transaction"*).

On September 15, 2008, Lehman Brothers Holdings Inc. (*"LBHI"*) filed a voluntary petition
seeking relief under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the *"Bankruptcy Code"*), and thereafter on
October 3, 2008, LBSF filed a voluntary petition under the Bankruptcy Code.  Both of these proceedings
are pending in the United States Bankruptcy Court for the Southern District of New York and are
consolidated for administrative purposes under Case No. 08-13555.  The Honorable James M. Peck
presides over the proceedings.  Information with respect to those proceedings may be found at
http://www.Lehman-Docket.com.

Exum Ridge 07-2.doc



As a result of the defaults under the terms of the Swap Transaction, the Indenture Trustee delivered a Notice of Early Termination to LBSF and LBHI on September 17, 2008 designating October 14, 2008 as an Early Termination Date. The Issuer likewise terminated the Swap Transaction by Notice to LBSF and LBHI dated November 28, 2008 designating November 28, 2008 as the Early Termination Date.

On November 25, 2008, the Indenture Trustee received a notice from counsel to LBHI and LBSF advising the Indenture Trustee that (a) any action taken to exercise remedies with respect to the Notes may violate the automatic stay and therefore any actions to make distributions to holders may violate the automatic stay, (b) the termination notices may be defective, and (c) any provision subordinating any termination payment due may be unenforceable.

Under the terms of the Swap Transaction and the Indenture, because LBSF is the defaulting party under the terms of the Swap Transaction, any termination payment due LBSF is paid after any payment to the holders of the notes. See Indenture, Section 11.1(B), and the Schedule, Part 1(c). Please take notice, however, that in a decision rendered on January 25, 2010 in *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited*, Adv. Proc. No. 09-12342, the Bankruptcy Court ruled, in the context of that case, that a particular provision subordinating a termination payment as a result of a bankruptcy proceeding of a counterparty was unenforceable as an *ipso facto* clause. It is the Indenture Trustee's understanding that this decision is being appealed.

The Indenture Trustee continues to hold the collateral pledged under the Indenture.

The Indenture Trustee received a Derivatives ADR Notice dated April 19, 2010 demanding a payment by the Issuer to LBSF in the amount of $ Redacted consisting of $ Redacted in a termination payment plus $ Redacted in interest thereon. A copy of the Derivatives ADR Notice is attached hereto as *Exhibit C* and will be posted on the Indenture Trustee's Securities Investor website at http://www.usbank.com/abs. Under the terms of the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts dated September 17, 2009 (the "*ADR Order*"), Docket No. 5207 in *In Re Lehman Brothers Holdings Inc.*, et al., Case Number 08-13555 pending in the United States Bankruptcy Court for the Southern District of New York, generally a response to the Derivatives ADR Notice from the Indenture Trustee must be served upon the Debtors within 45 days. A response to the Derivatives ADR Notice and participation in subsequent mediation proceedings is mandatory.

Pursuant to Section 5(b) of the ADR Order, the Indenture Trustee is (a) providing you notice that LBSF made a demand for a termination payment plus interest thereon, (b) seeking the identity of all Noteholders in order to facilitate participation of Noteholders in the Derivatives ADR Procedures (as defined in the ADR Order) and to facilitate direct communications with LBSF regarding these matters, and (c) seeking direction and instruction from the Noteholders with respect to participation by the Indenture Trustee in the Derivative ADR Procedures. Further, as required by the ADR Order, the Indenture Trustee (a) invites you to participate in the Derivatives ADR Procedures as an alternative to litigation, (b) encourages you to communicate directly with the Debtors and (c) consistent with Indenture and applicable law, offers to take your direction with regard to the Derivatives ADR Notice. In order to facilitate participation, communication, direction and instruction in connection with the ADR Procedures, we would appreciate it if you would complete the Certificate of Beneficial Interest attached hereto as *Exhibit A*.

Receipt of this notice should not be construed as evidence or acknowledgment of any requirement applicable to, or of any right or authority on the part of any recipient under the Indenture to direct, the

matters addressed herein, or of any obligations on the part of the Indenture Trustee with respect thereto, and the Indenture Trustee expressly reserves all rights in determining appropriate actions and requirements concerning these matters.

Prior to any distribution to Noteholders, funds held under the Indenture may be used first for payment of the fees and costs incurred or to be incurred by the Indenture Trustee in performing its duties, as well as for any indemnities owing or to become owing to the Indenture Trustee. These include, but are not limited to, compensation for time spent, and the fees and costs of counsel and other agents employed, to respond to the Derivatives ADR Notice and otherwise to pursue remedies, defend claims, or take other actions to protect the interests of the Noteholders and the Issuer, respectively.

The Indenture Trustee reserves all rights under the Indenture. Please be aware that the Indenture Trustee may conclude that a specific response to particular inquiries from individual Noteholders is not consistent with equal and full dissemination of information to all Noteholders. Noteholders should not rely on the Indenture Trustee as their sole source of information. The Indenture Trustee makes no recommendations, gives no investment, legal or tax advice. Each Noteholder should seek advice from an independent advisor based on such Noteholder's particular circumstances.

U.S. Bank National Association,
as Indenture Trustee

<u>CERTIFICATION OF BENEFICIAL OWNERSHIP OF</u>

## Exum Ridge CBO 2007-2, Ltd.

### NOTES

---

**<u>Complete and sign (with signature guarantee) Section A and Section B and return to:</u>**

U.S. Bank National Association at
One Federal Street, 3rd Floor
Boston, Massachusetts 02110
Attention: Donald Higgins
tel.: (617) 603-6717, facsimile: (866) 592-7151, or
e-mail: donald.higgins@usbank.com
**Capitalized terms have the meanings given to them in the Indenture for the above-referenced securities, more particularly identified below.**

---

## A. <u>EXECUTION BY BENEFICIAL OWNER</u>

The undersigned beneficial owner hereby represents and warrants that it is a beneficial owner of the Notes described below and is duly authorized to deliver this Certification to the Trustee, and that such power has not been granted or assigned to any other Person.

Name of Beneficial Owner:_____
Address:_____
Contact Person Name:_____
Phone:_____
Fax:_____
E-mail:_____
Custodian/DTC Participant Name:_____
DTC Participant No.:_____

| Note and/or Class | Cusip | Original Principal Amount Held |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**The Trustee is hereby authorized to disclose to other Noteholders or beneficial owners, the other transaction parties in the Exum Ridge CBO 2007-2, Ltd. transaction, and any court in which a related**

legal proceeding may be commenced, the existence, but not the amounts, of the undersigned's holdings in the Notes.

**[PLEASE CHECK ONE:]   Yes:_____ ;   No:_____.**

Signature[1]:_____
(Print Name of Authorized Signatory):_____
Title:_____
Date:_____

*Signature Guaranteed:*

_____

*Participant in a Recognized*
*Signature Guarantee Medallion*
*Program*

## B. EXECUTION BY NOMINEE OR INTERMEDIARY/ADVISOR

The undersigned hereby represents and warrants that it is the nominee or intermediary/advisor for the beneficial owner indicated below with respect to the Note position described below, and that such beneficial owner has granted to the undersigned the power and authority to deliver this Certification to the Trustee on behalf of such beneficial owner, and that such power has not been granted or assigned to any other Person.

Name of Nominee or Intermediary/Advisor:_____
Address:_____
Contact Person Name:_____
Phone:_____
Fax:_____
E-mail:_____
Name of Beneficial Owner(s):_____
Class and CUSIP No. of Notes Owned:_____
DTC Participant Name:_____
DTC Participant No.:_____

| Note and/or Class | Cusip | Original Principal Amount Held |
|---|---|---|
|  |  |  |
|  |  |  |

---

[1]    *The execution of this Certification should be confirmed by a signature guarantee by a recognized participant in the Securities Transfer Agents Medallion Program, the New York Stock Exchange Medallion Signature Program, the Stock Exchange Medallion Program or another similar medallion stamp signature guarantee program acceptable to the Trustee.*

|  |  |  |
|---|---|---|

**The Trustee is hereby authorized to disclose to other Noteholders or beneficial owners, the other transaction parties in the Exum Ridge CBO 2007-2, Ltd. transaction, and any court in which a related legal proceeding may be commenced, the existence, but not the amounts, of the undersigned's holdings in the Notes.**

**[PLEASE CHECK ONE:]  Yes:_____;  No:_____.**

Signature[2]:_____
(Print Name of Authorized Signatory):_____
Title:_____
Date:_____

*Signature Guaranteed:*

_____

*Participant in a Recognized*
*Signature Guarantee Medallion*
*Program*

---

2       *See footnote 1 above.*

**CUSIPs**

**EXUM RIDGE CBO 2007-2, LTD**

| Security | CUSIP |
|---|---|
| **Class A Notes** | |
| Class A Rule 144A Certificated Note | 30228AAA8 |
| Class A Certificated Note | 30228AAD2 |
| Class A Regulation S Global Note | G3286VAA1 |
| **Class B Notes** | |
| Class B Rule 144A Global Note | 30228AAB6 |
| Class B Certificated Note | 30228AAE0 |
| Class B Regulation S Global Note | G3286VAB9 |
| **Class C Certificated Notes** | |
| Class C Rule 144A Global Note | 30228AAC4 |
| Class C Certificated Notes | 30228AAG5 |
| Class C Regulation S Global Note | G3286VAC7 |
| **Class D Certificated Notes** | |
| Class D Rule 144A Global Note | 30228BAA6 |
| Class D Certificated Note | 30228BAB4 |
| Class D Regulation S Global Note | G3286WAA9 |
| **Preference Shares** | |
| Certificated U.S. Preference Shares | 30228B306 |
| Regulation S Global Preference Share | G3286W200 |

The above CUSIP numbers are included solely for the convenience of the Noteholders. The Trustee is not responsible for the selection or use of the CUSIP numbers, or for the accuracy or correctness of CUSIP numbers printed on the Notes or as indicated in this notice.

**Derivatives ADR Notice**

Derivatives ADR Notice No.: 157

Debtor(s):     Lehman Brothers Special Financing Inc. ("LBSF")

Derivatives
Counterparties and Related Parties:

As used in this Derivative ADR Notice, the term "Derivative Counterparties and Related Parties" shall mean (i) the Cash-Synthetic Hybrid Issuers (as defined below) and (ii) U.S. Bank National Association, in its capacity as trustee ("Trustee") under the indentures executed by the Trustee and each of the Cash-Synthetic Hybrid Issuers.

   "Cash-Synthetic Hybrid Issuers" shall mean collectively:

   AIRLIE CDO I, LTD. ("Airlie I")

   AIRLIE LCDO I (AVIV LCDO 2006-3), LTD. ("Airlie LCDO I")

   AIRLIE LCDO II (PEBBLE CREEK 2007-1), LIMITED ("Airlie LCDO II")

   AVIV LCDO 2006-1, LIMITED ("Aviv 2006-1")

   AVIV LCDO 2006-2, LIMITED ("Aviv 2006-2")

   EXUM RIDGE CBO 2006-1, LTD. ("Exum 2006-1")

   EXUM RIDGE CBO 2006-2, LTD. ("Exum 2006-2")

   SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3), LTD. ("Exum 2006-3")

   EXUM RIDGE CBO 2006-4, LTD. ("Exum 2006-4")

   EXUM RIDGE CBO 2006-5, LTD. ("Exum 2006-5")

   EXUM RIDGE CBO 2007-1, LTD. ("Exum 2007-1")

   EXUM RIDGE CBO 2007-2, LTD. ("Exum 2007-2")

   PEBBLE CREEK LCDO 2006-1, LIMITED ("Pebble Creek 2006-1")

   PEBBLE CREEK LCDO 2007-3, LTD. "Pebble Creek 2007-3")

   WHITE MARLIN CDO 2007-1, LTD. ("White Marlin")

If the Cash-Synthetic Hybrid Issuers and the Trustee would prefer to re-group, or sub-categorize the transactions that are the subject of this Derivatives ADR Notice, LBSF is amenable to considering such a suggestion.

Derivatives Contracts and Related Documents:

As used in this Derivative ADR Notice, the term "Derivatives Contracts and Related Documents" shall be defined collectively as the documents listed below executed by Cash-Synthetic Hybrid Issuers. Capitalized terms used herein but not defined herein shall have the meaning in the applicable swap agreement executed in connection with the applicable transaction.

1. ISDA Master Agreement, dated as of January 18, 2007, between Airlie I and LBSF (together with any confirmations and schedules thereto, the "Airlie I Swap Agreement" and the transaction evidenced thereby the "Airlie I Transaction"), the Notice of Early Termination, dated November 28, 2008, from Airlie I to LBSF, and the Indenture, dated as of January 18, 2007, by and among Airlie I, as Issuer, Airlie CDO I, Corp., as Co-Issuer, and the Trustee.

2. ISDA Master Agreement, dated as of November 1, 2006, between Airlie LCDO I and LBSF (together with any confirmations and schedules thereto, the "Airlie LCDO I Swap Agreement" and the transaction evidenced thereby the "Airlie LCDO I Transaction"), the Notice of Early Termination, dated November 28, 2008, from Airlie LCDO I to LBSF, and the Indenture, dated as of November 1, 2006, by and among Airlie LCDO I, as Issuer, Airlie LCDO I (Aviv LCDO 2006-3), Corp., as Co-Issuer, and the Trustee.

3. ISDA Master Agreement, dated as of January 30, 2007, between Airlie LCDO II and LBSF (together with any confirmations and schedules thereto, the "Airlie LCDO II Swap Agreement" and the transaction evidenced thereby the "Airlie LCDO II Transaction"), the Notice of Early Termination, dated November 28, 2008, from Airlie LCDO II to LBSF, and the Indenture, dated as of January 30, 2007, by and among Airlie LCDO II, as Issuer, Airlie LCDO II, (Pebble Creek 2007-1), Corp., as Co-Issuer, and the Trustee.

4. ISDA Master Agreement, dated as of September 12, 2006, between Aviv 2006-1 and LBSF (together with any confirmations and schedules thereto, the "Aviv 2006-1 Swap Agreement" and the transaction evidenced thereby the "Aviv 2006-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Aviv 2006-1 to LBSF, and the Indenture, dated as of September 12, 2006, by and among Aviv 2006-1, as Issuer, Aviv LCDO 2006-1, Corp., as Co-Issuer, and the Trustee.

5. ISDA Master Agreement, dated as of October 5, 2006, between Aviv 2006-2 and LBSF (together with any confirmations and schedules thereto, the "Aviv 2006-2 Swap Agreement" and the transaction evidenced thereby the "Aviv 2006-2 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Aviv 2006-2 to LBSF, and the Indenture, dated as of October 5, 2006, by and

among Aviv 2006-2, as Issuer, Aviv LCDO 2006-2, Corp., as Co-Issuer, and the Trustee.

6.  ISDA Master Agreement, dated as of February 16, 2006, between Exum 2006-1 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-1 Swap Agreement" and the transaction evidenced thereby" the "Exum 2006-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-1 to LBSF, and the Indenture, dated as of February 16, 2006, by and among Exum 2006-1, as Issuer, Exum Ridge CBO 2006-1, Corp., as Co-Issuer, and the Trustee.

7.  ISDA Master Agreement, dated as of March 8, 2006, between Exum 2006-2 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-2 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-2 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-2 to LBSF, and the Indenture, dated as of March 8, 2006, by and among Exum 2006-2, as Issuer, Exum Ridge CBO 2006-2, Corp., as Co-Issuer, and the Trustee.

8.  ISDA Master Agreement, dated as of July 25, 2006, between Exum 2006-3 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-3 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-3 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-3 to LBSF, and the Indenture, dated as of July 25, 2006, by and among Exum 2006-3, as Issuer, SGS HY Credit Fund I (Exum Ridge CBO 2006-3), Corp., as Co-Issuer, and the Trustee.

9.  ISDA Master Agreement, dated as of September 15, 2006, between Exum 2006-4 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-4 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-4 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-4 to LBSF, and the Indenture, dated as of September 15, 2006, by and among Exum 2006-4, as Issuer, Exum Ridge CBO 2006-4, Corp., as Co-Issuer, and the Trustee.

10. ISDA Master Agreement, dated as of October 12, 2006, between Exum 2006-5 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-5 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-5 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-5 to LBSF, and the Indenture, dated as of October 12, 2006, by and among Exum 2006-5, as Issuer, Exum Ridge CBO 2006-5, Corp., as Co-Issuer, and the Trustee.

11. ISDA Master Agreement, dated as of March 8, 2007, between Exum 2007-1 and LBSF (together with any confirmations and schedules thereto, the "Exum 2007-1 Swap Agreement" and the transaction evidenced thereby the "Exum 2007-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2007-1 to LBSF, and the Indenture, dated as of March 8, 2007, by and

among Exum 2007-1, as Issuer, Exum Ridge CBO 2007-1, Corp., as Co-Issuer, and the Trustee.

12. ISDA Master Agreement, dated as of May 2, 2007, between Exum 2007-2 and LBSF (together with any confirmations and schedules thereto, the "Exum 2007-2 Swap Agreement" and the transaction evidenced thereby the "Exum 2007-2 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2007-2 and LBSF, and the Indenture, dated as of May 2, 2007, by and among Exum 2007-2, as Issuer, Exum Ridge CBO 2007-2, Corp., as Co-Issuer, and the Trustee.

13. ISDA Master Agreement, dated as of November 29, 2006, between Pebble Creek 2006-1 and LBSF (together with any confirmations and schedules thereto, the "Pebble Creek 2006-1 Swap Agreement" and the transaction evidenced thereby the "Pebble Creek 2006-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Pebble Creek 2006-1 to LBSF, and the Indenture, dated as of November 29, 2006, by and among Pebble Creek 2006-1, as Issuer, Pebble Creek LCDO 2006-1, Corp., as Co-Issuer, and the Trustee.

14. ISDA Master Agreement, dated as of July 19, 2007, between Pebble Creek 2007-3 and LBSF (together with any confirmations and schedules thereto, the "Pebble Creek 2007-3 Swap Agreement" and the transaction evidenced thereby the "Pebble Creek 2007-3 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Pebble Creek 2007-3 to LBSF, and the Indenture, dated as of July 19, 2007, by and among Pebble Creek 2007-3, as Issuer, Pebble Creek LCDO 2007-3, LLC, as Co-Issuer, and the Trustee.

15. ISDA Master Agreement, dated as of June 22, 2007, between White Marlin and LBSF (together with any confirmations and schedules thereto, the "White Marlin Swap Agreement" and the transaction evidenced thereby the "White Marlin Transaction"), the Notice of Early Termination, dated November 28, 2008, from White Marlin to LBSF, and the Indenture, dated as of June 22, 2007, by and among White Marlin, as Issuer, White Marlin CDO 2007-1, Corp., as Co-Issuer, and the Trustee.

Settlement Demand:

Pursuant to this Derivative ADR Notice, LBSF hereby submits the following settlement demand against each Cash-Synthetic Hybrid Issuer, which represents the amount required to be paid to LBSF upon termination, including the return of LBSF's posted collateral, plus the mark-to-market value of the early termination amount, net of any Unpaid Amounts (collectively, "Termination Payments"), plus interest accrued thereon at the applicable rate of interest.

1.

# REDACTED

2.

**REDACTED**

3.

4.

**REDACTED**

5.

6

7.

REDACTED

8.

9.

REDACTED

10.

11

# REDACTED

12. <u>Exum 2007-2 Transaction</u>:  $ Redacted , plus interest thereon for the period
from and including November 28, 2008 to but excluding January 2, 2009 the date
by which it was reasonably practicable for LBSF to have been provided a
Calculation Statement, as required under the Exum 2007-2 Transaction, at the
Termination Rate (as defined in the Exum 2007-2 Swap Agreement) in the
amount of $ Redacted plus interest thereon for the period from January 2, 2009 to
and including April 1, 2010 at the Default Rate (as defined in the Exum 2007-2
Swap Agreement) in the amount of $ Redacted ) plus interest at the Default Rate
for the period thereafter until the date of payment to LBSF; and

13.

# REDACTED

14.

# REDACTED

15.

# REDACTED

Explanation of Basis for Settlement Demand:

The Settlement Demand of LBSF with respect to each transaction entered into with the Cash-Synthetic Hybrid Issuers is set forth in the table below and is based on the terms of the applicable Derivatives Contracts and Related Documents and consists of (i) Termination Payments (as defined above) and (ii) Accrued Interest (as defined below).

| Transaction | Termination Payments | Accrued Interest |
|---|---|---|
| | | |
| | REDACTED | |
| Exum 2007-2 | | |
| REDACTED | | |

1.    Termination Payments.    LBSF is owed Termination Payments that total $ Redacted  based on the terms of the Derivatives Contracts and Related Documents. Each transaction terminated with LBSF being owed a substantial sum and the Trustee is threatening to withhold the Termination Payments from LBSF on the grounds that LBSF's priority to such payment has been modified because LBSF was the Defaulting Party. However, any provision that purports to modify LBSF's payment priority with respect to any of the Cash Synthetic Hybrid Transactions is an impermissible *ipso facto* provision under U.S. Bankruptcy Law that falls outside of any safe harbors and, furthermore, is unenforceable as a penalty under New York common law.

2.

# REDACTED

# REDACTED

| | |
|---|---|
| Date of Derivatives ADR Notice: | April 19, 2010 |
| Date of Service: | April 20, 2010 |
| Response Due Date: | May 20, 2010 |

Debtor Contact:
Locke R. McMurray
Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, New York 10020
Telephone Number: (646) 285-9700
Email: locke.mcmurray@lehmanholdings.com

Lawrence Brandman
Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, New York 10020
Telephone Number: (646) 285-9650
Email: lawrence.brandman@lehmanholdings.com

WGM Contact:
Christopher J. Cox
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone Number: (650) 802-3029
Email: chris.cox@weil.com

Nancy E. Lynch
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone Number: (212) 310-8306
Email: nancy.lynch@weil.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                            :       Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*         :       08-13555 (JMP)
                                                 :
                    Debtors.                     :       (Jointly Administered)
                                                 :
                                                 :
------------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

The following alternative dispute resolution procedures (the "Derivatives ADR

Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc.

and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various

chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

### FINDINGS

On motion of Debtors, the Court FINDS that numerous open and terminated

derivatives contracts, including any derivative contract that is a "swap agreement" or "forward

contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to

which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty,

its affiliates, or related parties (the "Derivatives Contracts with Recovery Potential"). The Court

further FINDS that certain common issues exist regarding these contracts, including questions

involving appropriateness of setoff, termination, valuation and computation of termination

payments, and notice. The Court further FINDS that substantial value may be recovered for the

estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes

and recoveries under such contracts can be achieved without the need for trial of adversary

proceedings or other litigation. The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings

and have reduced costs for all parties.

      The procedures described below are ORDERED to promote consensual recovery

with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective

communication between the affected parties, consultation, negotiation, and, when necessary,

mediation procedures.

      1.  Standing Mediation Order.  All provisions of the General Order #M-143,

adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in

Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District

of New York and all existing and further amendments thereto (the "Standing Order") shall apply

to the mediations to be conducted under this Order.

      2.  Derivatives ADR Counterparties.  To date, the Debtors have identified

approximately two hundred fifty (250) counterparties (which number will surely increase) to

Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors

to believe that disagreement exists over the amounts that may be owed to Debtors under such

contracts (whether or not an actual lawsuit or adversary proceeding has been commenced),

whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of

such counterparty or a person or entity who exercised or failed to exercise duties in relation to

such a contract (collectively, the "Derivatives Counterparties"); provided, however, that the term

Derivatives Contract with Recovery Potential shall not include any cash-market purchase or sale

of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the

standard settlement cycle for the relevant market), exchange-traded future or option, securities

loan transaction or repurchase agreement in respect of securities or loans.

3.   Derivatives ADR Disputes.  Any Debtor may designate any dispute regarding a Derivatives Contract with Recovery Potential to the Derivatives ADR Procedures by serving on a Derivatives Counterparty a copy of this Order and a Derivatives ADR Notice (as defined below) (collectively, the "Derivatives ADR Package").

a.   Debtors shall not implement Derivatives ADR Procedures with respect to a Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated and (ii) with respect to which a Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Derivatives Contract with Recovery Potential that purports to permit a Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).

b.   Debtors shall make commercially reasonable efforts to minimize the frequency of service of Derivatives ADR Notices on any one Derivatives Counterparty.

c.   Any trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such persons or entities collectively referred to as "Indenture Trustees," and each singly as an "Indenture Trustee") shall be subject to this Order.

d.   For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives Counterparty or Indenture Trustee, as the case may be, shall be deemed adequate if such service or notice is provided to such Derivatives Counterparty, such Indenture Trustee, a legal guardian, estate representative, or other representative and such party's counsel who have appeared in these cases by (i) email and (ii) at the option of the Debtors either (x) hand delivery, or (y) first class mail, or (z) overnight mail.

3

    4.   <u>Settlement of Disputes During the Derivatives ADR Procedures</u>. Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Derivatives ADR Dispute at any time before, during, or following the designation of a Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the parties, provided that such settlement

    a.   complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or

    (iii) other orders in these bankruptcy cases permitting such settlement, or

    b.   is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors' Committee (the "<u>Creditors' Committee</u>"), the contents of any papers submitted during the mediation stage described below, and all discussions in mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

    5.   <u>Participation Mandatory</u>.

    a.   Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty or Indenture Trustee with Authority (as defined below), after service of a Derivatives ADR Package on a Derivatives Counterparty or Indenture Trustee with Authority (i) compliance with the Derivatives ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for the

applicable Debtor or Debtors, Derivatives Counterparty and Indenture Trustee with Authority; and (ii) no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Derivatives ADR Package, each Derivatives Counterparty, and each Indenture Trustee with Authority must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such Derivatives ADR Package.

   b.   With respect to any Derivatives ADR Package served on an Indenture Trustee, within the period provided in paragraph 8(b) for service of a response thereto by an Indenture Trustee, Debtors and such Indenture Trustee shall review the governing documents to determine whether the Indenture Trustee has authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ("Authority").

   i.   If the Indenture Trustee has Authority, it shall participate in the Derivatives ADR Procedures on behalf of holders to the extent authorized by such documents.

   ii.   If the Indenture Trustee lacks Authority via the governing documents, it shall contact the holders for which it acts as Indenture Trustee through the clearing systems or when possible by a direct written communication that: (v) advises such holders that the Debtors dispute holders' claims; (w) transmits to them the applicable Derivatives ADR Notice; (x) invites them to participate in the Derivatives ADR Procedures as an alternative to litigation;

5

(y) encourages them to communicate directly with the Debtors;

and (z) offers to take holders' direction in accordance with the

governing documents to participate in the Derivatives ADR

Procedures on behalf of such directing holders.

    iii.    In taking the steps outlined in this paragraph 5(b), Indenture

Trustees shall make commercially reasonable efforts to act as

promptly as possible under the prevailing circumstances.

    c.    Nothing contained in this paragraph 5 with respect to Indenture Trustees

shall relieve or be construed to relieve any Derivatives Counterparty from compliance with this

Order.

    d.    All rights, remedies, claims and defenses of any Derivatives Counterparty,

Indenture Trustees, holders and Debtor in good faith compliance with the Derivatives ADR

Procedures shall not be impaired, waived or compromised in any further proceedings in these

cases should no settlement or compromise result from participation in these Derivatives ADR

Procedures. Participation in the Derivatives ADR Procedures by a Derivatives Counterparty,

Indenture Trustee, or holder shall not waive the defense of lack of in personam jurisdiction, if

any, which defense shall be preserved.

    6.    <u>No Substitute For Claims Procedures</u>. The Derivatives ADR Procedures are

not intended and shall not be utilized as a substitute for chapter 11 claims procedures. Nothing

contained herein, however, shall (a) prevent a Derivatives Counterparty from asserting in any

respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR

Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a

Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand

6

thereunder or (b) be construed to abridge, enlarge, or otherwise modify the rights and obligations

of Debtors or Derivatives Counterparties under a Derivatives Contract with Recovery Potential

or applicable law or to provide a right or remedy under a Derivatives Contract with Recovery

Potential to Debtors or Derivatives Counterparties that is not provided thereby or by applicable

law.

      7.  <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by</u>

<u>Derivatives Counterparties</u>.  If a Derivatives Counterparty previously has commenced, any

action or proceeding in any other court or forum, or any action or proceeding in any other court

or forum following service upon it of a Derivatives ADR Package, the Debtors reserve their

right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court

any such lawsuit, proceeding, or claim and to defend or take action in any such other court or

proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed

under the Derivatives ADR Procedures.

<strong><u>NOTICE/RESPONSE STAGE</u></strong>

      8.  <u>Notice/Response</u>.  The initial stage of the Derivatives ADR Procedures will be

a notice/response stage, providing the parties with an opportunity to exchange settlement offers,

schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR

Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").  The Notice/Response Stage shall

include:

      a.  <u>Derivatives ADR Notice</u>.  Debtors shall serve upon a Derivatives

             Counterparty or Indenture Trustee (and its attorneys who have appeared in

             these cases) a notice containing sufficient information regarding the

             Derivatives ADR Dispute to make the Derivatives Counterparty or

             Indenture Trustee aware of the nature of Debtor's affirmative claim, a

7

brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "Derivatives ADR Notice"). Service of a completed Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order.

b.   Derivatives Counterparty's Response to Notice. A Derivatives Counterparty must respond to the Derivatives ADR Notice in writing within thirty (30) calendar days from the date of the Derivatives Counterparty's receipt of the Notice. An Indenture Trustee with Authority contained in the governing documents must respond to the Derivatives ADR Notice in writing within forty-five (45) calendar days from the date of such Indenture Trustee's receipt of the Derivatives ADR Notice, and an Indenture Trustee with Authority obtained by way of direction from holders pursuant to paragraph 5(b) above, must respond to the Derivatives ADR Notice within thirty (30) days from the date of receipt of such direction from holders. The response options available to a Derivatives Counterparty or an Indenture Trustee with Authority are as follows (the "Responses"):

i.   Agreeing to Settle the Demand. If a Derivatives Counterparty or an Indenture Trustee with Authority agrees

8

to settle the demand in the Derivatives ADR Notice, the
Counterparty shall state in writing that the offer of
settlement in the Derivatives ADR Notice is accepted. The
parties will then execute a settlement and general release
(including a confidentiality provision) and, if the matter is
in litigation, the Debtor shall dismiss any applicable claims
in a lawsuit or adversary proceeding with prejudice upon
execution of the release; or

ii.   Denying the Demand. A Derivatives Counterparty or
Indenture Trustee with Authority may decline to settle for
the amount stated in the demand in the Derivatives ADR
Notice, in which case the Derivatives Counterparty or
Indenture Trustee with Authority must include a brief
explanation in the Response to the Derivatives ADR Notice
setting forth the reason(s) for such denial. In addition, the
Derivatives Counterparty or Indenture Trustee with
Authority may provide a counteroffer to the demand in the
Derivatives ADR Notice. Service of a completed Response
to a Derivatives ADR Notice in the form annexed to this
Order as Exhibit "B" shall presumptively be deemed to
comply with this Order.

c.   Failure to Respond. Failure to provide a timely Response to the
Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

9

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Derivatives Counterparty or Indenture Trustee)

for Sanctions (as defined below) as set forth below, including an order or

judgment for recovery of amounts demanded by Debtors in the

Derivatives ADR Notice, or immediate entry into the mediation stage.

d.    Reply to Response.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a Reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor shall (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its

demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer

in which case the Derivatives ADR Dispute will automatically proceed to

the Mediation Stage.

9.    Request for Initial Settlement Conference.  At any time in the

Notice/Response Stage, either a Debtor, Derivatives Counterparty or Indenture Trustee with

Authority may request an initial telephonic settlement conference by written request, to be held

within ten (10) calendar days, and, in the case of Indenture Trustees with Authority, to be held

within fifteen (15) business days.  Within four (4) business days of a receipt of such a request,

the other parties must respond by acceptance of one of the proposed dates and times or by a

proposal for an initial settlement call no later than five (5) calendar days from the earliest date set

forth in the written request.  In the case of Indenture Trustees with Authority, within ten (10)

business days of a receipt of such a request, the other parties must respond by acceptance of one

of the proposed dates and times or by a proposal for an initial settlement call no later than fifteen (15) business days from the earliest date set forth in the written request. If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage. At least one hour shall be reserved for the initial conference to discuss settlement. No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present. Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## MEDIATION STAGE

10. <u>Mediation</u>. Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>"). The Debtors shall transmit on a rolling basis as promptly as possible to the mediators appointed pursuant to paragraph 10(a) hereof sets of Derivatives ADR Notices and any applicable Response(s) and Replies thereto for purposes of allocating specific mediations pursuant to paragraph 10(b)(i) hereof.

a.    <u>Choice of Mediator</u>. James Freund, David Geronemus and Ralph Mabey are APPOINTED as the mediators for Derivatives ADR Disputes reaching the Mediation Stage. If any named mediator is not available to serve as mediator, an alternate mediator shall be selected by the Court upon notice to the Debtors, the Creditors' Committee, all Derivatives Counterparties and Indenture Trustees.

11

b.    <u>Powers of Mediator</u>.  The mediators shall have the broadest possible discretion consistent with the Standing Order, including (i) the manner of allocating among themselves specific mediations on a fair and equitable basis; and (ii) the ability to consolidate mediations involving the same Derivatives Counterparty upon application by such Derivatives Counterparty and consultation with the Debtors.

c.    Once a specific mediator has been selected and notice of such selection has been conveyed to the parties, the Debtor and the Derivatives Counterparty or Indenture Trustee with Authority together shall contact the mediator to schedule the initial mediation date.

d.    <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.

e.    <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.  Any such Mediation Brief shall be served and filed so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.    Appearance at Mediations.  Unless otherwise ordered by the mediator all

participants in the mediation for the applicable Derivatives ADR Dispute,

must appear in person with a business principal who has settlement

authority; *provided, however*, that, to the extent acceptable to the

mediator, the business principal with settlement authority on behalf of a

Derivatives Counterparty may attend the mediation by video conference at

the sole expense of the Derivatives Counterparty.  The Creditors'

Committee may attend and participate in all mediations hereunder.

Counsel may also be present and participate.

g.    End of Mediation.  The mediation shall end upon request of a party and

concurrence by the mediator.

## OTHER PROVISIONS

11. Deadlines.  Notwithstanding any of the provisions set forth above, any of the

deadlines contained herein may be modified by: (i) the mutual consent of the Debtors and the

Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12. Sanctions for Parties.  Each Debtor, Derivatives Counterparty and Indenture

Trustee must participate in good faith with these Derivatives ADR Procedures with regard to the

ADR Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a

hearing, the Court determines that a party has not complied with the Derivatives ADR

Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors,

Derivatives Counterparty or Indenture Trustee, as the case may be, may be subject to such

sanctions as the Court deems appropriate (the "Sanctions").  If a mediator reports to the Court

that any party subject to this Order is not cooperating in good faith with the Derivatives ADR

Procedures, the Court may, without the need for further motion by any party, schedule a hearing

13

and order Sanctions. Litigation with respect to the issuance of Sanctions shall not delay the

commencement of the Mediation Stage of these procedures upon completion of the

Notice/Response Stage. Sanctions may include, but are not limited to:

      a.    Against Debtors: (i) attorneys' fees incurred by a Derivatives

Counterparty (including an Indenture Trustee with Authority) with respect

to the Derivatives ADR Procedures after the receipt of an ADR Package;

(ii) fees and costs of the Mediator; (iii) termination of the Derivatives

ADR Procedures as to one or more Derivatives Contracts with Potential

Recovery; and/or (iii) rejection of some or all claims asserted by Debtors

in the applicable Derivatives ADR Dispute.

      b.    Against Derivatives Counterparties (including Indenture Trustees with

Authority): (i) attorneys' fees incurred by the Debtors with respect to the

Derivatives ADR Procedures after the sending of an ADR Package; (ii)

fees and costs of the Mediator; (iii) an award of the Derivatives ADR

Dispute up to the amount specified in the Derivatives ADR Notice.

13. Confidentiality. The confidentiality provisions of section 5.0 of the Standing

Order are hereby incorporated by reference into this Order. No statements or arguments made or

positions taken by the mediator, the applicable Debtors, Derivatives Counterparties, Indenture

Trustee or the Creditors' Committee during any part of the alternative dispute resolution process,

including Settlement Conferences and the Mediation Stage may be disclosed by the mediator or

any such parties or their attorneys and advisors to the Court or any third party; *provided,*

*however*, that Indenture Trustees may disclose such statements, arguments and positions as may

become necessary with their respective noteholders and advisors subject to these same

14

confidentiality provisions. Similarly, all briefs, records, reports, and other documents received

or made by the mediator while serving is such capacity shall remain confidential and not be

provided to the Court, unless they would be otherwise admissible. In addition, the mediator shall

not be compelled to disclose such records, reports, and other documents in connection with any

hearing held by the Court; *provided, however*, the mediator shall on a monthly basis beginning

60 days following entry of this Order report to the Court the status of the mediation efforts but

shall not disclose the content thereof, which report shall include the number of ADR Notices

served on Derivatives Counterparties, the number of settlements reached after mediation, the

number of mediations still pending, the number of mediations that have terminated without

settlement, and the cumulative dollar amount of settlements reached with Derivatives

Counterparties following service of ADR Notices. Rule 408 of the Federal Rules of Evidence

shall apply to all aspects of the Derivatives ADR Procedures including Settlement Conferences

and Mediation Stage.

14. Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights

Unaffected. Unless a Derivatives Counterparty, Indenture Trustee or a Debtor affirmatively

waives its right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may

exist, participation in the Derivatives ADR Procedures shall not waive or otherwise modify such

rights. All parties' rights and defenses to contest the assertion of a jury trial or arbitration or

exclusive foreign forum selection right by any other party are fully preserved.

15. Fees. Except as otherwise provided herein, each party to the Mediation shall

bear its own counsel fees and other costs of the Derivatives ADR Procedures, including

Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs

charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this

Order and (ii) nothing contained herein shall be deemed to vary the terms of any Derivative

Contract with Recovery Potential in respect of the reimbursement of fees and expenses.

**SO ORDERED:**

Dated: New York, New York
      September 17, 2009

                              *s/ James M. Peck*
                              UNITED STATES BANKRUPTCY JUDGE

Exhibit A

**Form of Derivatives ADR Notice**

Derivatives ADR Notice No.: _____

Debtor(s): _____          Derivatives Counterparty: _____
         Name(s)                         Name(s)

                      or

                    Indenture Trustee: _____
                              Name

Derivatives Contract: _____
_____
_____

Settlement Demand: $ _____

Explanation of Basis for Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____

Date of Derivatives ADR Notice: _____

Date of Service: _____

Response Due Date: _____

Debtor Contact:    [Name]
                  [Address]
                  Telephone Number: _____
                  Email: _____

Exhibit B

**Form of Response to Derivatives ADR Notice**

Derivatives Counterparty: _____
                                    Name

    or

Indenture Trustee with Authority: _____
                                             Name

Response to Derivatives ADR Notice No.: _____

☐ Agree to Settlement Demand

☐ Denial of Settlement Demand         ☐ Counteroffer

                              Counteroffer Amount: $_____

Explanation of Basis for Counteroffer/Denial of Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____
_____

Counterparty Contact:  [Name]
                          Telephone Number: _____
                          Email: _____

# US bank.

usbank.com

■ CORPORATE TRUST

P.O. Box 960778
Boston, MA 02196-0778

**Notice to holder of Notes Issued by Pebble Creek LCDO 2007-3, Ltd. with respect to the receipt by
the Issuer and Trustee of Derivatives ADR Notice No.: 157**

*THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO
THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES. PLEASE EXPEDITE RE-
TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.*

## NOTICE TO THE HOLDERS OF NOTES ISSUED BY

## Pebble Creek LCDO 2007-3, Ltd. (the "*Notes*")
**CUSIP Numbers are attached on Exhibit B**
(Notice Date: May 3, 2010)

Reference is made to that certain Indenture dated as of July 19, 2007 (the *"Indenture"*) by and
between Pebble Creek LCDO 2007-3, Ltd., Issuer (the *"Issuer"*), Pebble Creek LCDO 2007-3, Corp., Co-
Issuer (the *"Co-Issuer"*) and U.S. Bank National Association, as Trustee (the *"Indenture Trustee"*). Any
capitalized terms used herein and not otherwise expressly defined shall have the respective meanings
assigned to such terms in the Indenture.

## The Indenture Trustee Has Received a Derivatives Alternative Dispute Resolution Notice ("*ADR Notice*") from Lehman Brothers Special Financing Inc.; The Trustee is seeking the identity of Noteholders and the Participation, Directions and Instructions from Noteholders.

Under the terms of the Indenture, the Issuer entered into a credit derivatives transaction with
Lehman Brothers Special Financing Inc. as a counterparty documented by that certain ISDA Master
Agreement (Multicurrency - Cross Border) dated as of July 19, 2007 by and between Lehman Brothers
Special Financing Inc. ("*LBSF*") and the Issuer (the *"Master Agreement"*), that certain Schedule to the
Master Agreement dated as of July 19, 2007 between LBSF and the Issuer (the "*Schedule*") and that
certain Confirmation to the Issuer from LBSF dated July 19, 2007 (the "*Confirmation*" and collectively
with the Master Agreement and Schedule, the "*Swap Transaction*").

On September 15, 2008, Lehman Brothers Holdings Inc. ("*LBHI*") filed a voluntary petition
seeking relief under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "*Bankruptcy Code*"), and thereafter on
October 3, 2008, LBSF filed a voluntary petition under the Bankruptcy Code. Both of these proceedings
are pending in the United States Bankruptcy Court for the Southern District of New York and are
consolidated for administrative purposes under Case No. 08-13555. The Honorable James M. Peck
presides over the proceedings. Information with respect to those proceedings may be found at
http://www.Lehman-Docket.com.

Pebble Creek 07-3.doc



As a result of the defaults under the terms of the Swap Transaction, the Indenture Trustee delivered a Notice of Early Termination to LBSF and LBHI on September 17, 2008 designating October 14, 2008 as an Early Termination Date. The Issuer likewise terminated the Swap Transaction by Notice to LBSF and LBHI dated November 28, 2008 designating November 28, 2008 as the Early Termination Date.

On November 25, 2008, the Indenture Trustee received a notice from counsel to LBHI and LBSF advising the Indenture Trustee that (a) any action taken to exercise remedies with respect to the Notes may violate the automatic stay and therefore any actions to make distributions to holders may violate the automatic stay, (b) the termination notices may be defective, and (c) any provision subordinating any termination payment due may be unenforceable.

Under the terms of the Swap Transaction and the Indenture, because LBSF is the defaulting party under the terms of the Swap Transaction, any termination payment due LBSF is paid after any payment to the holders of the notes. See Indenture, Section 11.1(B), and the Schedule, Part 1(c). Please take notice, however, that in a decision rendered on January 25, 2010 in *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited*, Adv. Proc. No. 09-12342, the Bankruptcy Court ruled, in the context of that case, that a particular provision subordinating a termination payment as a result of a bankruptcy proceeding of a counterparty was unenforceable as an *ipso facto* clause. It is the Indenture Trustee's understanding that this decision is being appealed.

The Indenture Trustee continues to hold the collateral pledged under the Indenture.

The Indenture Trustee received a Derivatives ADR Notice dated April 19, 2010 demanding a payment by the Issuer to LBSF in the amount of Redacted consisting of Redacted in a termination payment plus $ Redacted in interest thereon. A copy of the Derivatives ADR Notice is attached hereto as *Exhibit C* and will be posted on the Indenture Trustee's Securities Investor website at http://www.usbank.com/abs. Under the terms of the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts dated September 17, 2009 (the "*ADR Order*"), Docket No. 5207 in *In Re Lehman Brothers Holdings Inc.*, et al., Case Number 08-13555 pending in the United States Bankruptcy Court for the Southern District of New York, generally a response to the Derivatives ADR Notice from the Indenture Trustee must be served upon the Debtors within 45 days. A response to the Derivatives ADR Notice and participation in subsequent mediation proceedings is mandatory.

Pursuant to Section 5(b) of the ADR Order, the Indenture Trustee is (a) providing you notice that LBSF made a demand for a termination payment plus interest thereon, (b) seeking the identity of all Noteholders in order to facilitate participation of Noteholders in the Derivatives ADR Procedures (as defined in the ADR Order) and to facilitate direct communications with LBSF regarding these matters, and (c) seeking direction and instruction from the Noteholders with respect to participation by the Indenture Trustee in the Derivative ADR Procedures. Further, as required by the ADR Order, the Indenture Trustee (a) invites you to participate in the Derivatives ADR Procedures as an alternative to litigation, (b) encourages you to communicate directly with the Debtors and (c) consistent with Indenture and applicable law, offers to take your direction with regard to the Derivatives ADR Notice. In order to facilitate participation, communication, direction and instruction in connection with the ADR Procedures, we would appreciate it if you would complete the Certificate of Beneficial Interest attached hereto as *Exhibit A*.

Receipt of this notice should not be construed as evidence or acknowledgment of any requirement applicable to, or of any right or authority on the part of any recipient under the Indenture to direct, the

matters addressed herein, or of any obligations on the part of the Indenture Trustee with respect thereto, and the Indenture Trustee expressly reserves all rights in determining appropriate actions and requirements concerning these matters.

Prior to any distribution to Noteholders, funds held under the Indenture may be used first for payment of the fees and costs incurred or to be incurred by the Indenture Trustee in performing its duties, as well as for any indemnities owing or to become owing to the Indenture Trustee. These include, but are not limited to, compensation for time spent, and the fees and costs of counsel and other agents employed, to respond to the Derivatives ADR Notice and otherwise to pursue remedies, defend claims, or take other actions to protect the interests of the Noteholders and the Issuer, respectively.

The Indenture Trustee reserves all rights under the Indenture. Please be aware that the Indenture Trustee may conclude that a specific response to particular inquiries from individual Noteholders is not consistent with equal and full dissemination of information to all Noteholders. Noteholders should not rely on the Indenture Trustee as their sole source of information. The Indenture Trustee makes no recommendations, gives no investment, legal or tax advice. Each Noteholder should seek advice from an independent advisor based on such Noteholder's particular circumstances.

U.S. Bank National Association,
as Indenture Trustee

<u>CERTIFICATION OF BENEFICIAL OWNERSHIP OF</u>

## Pebble Creek LCDO 2007-3, Ltd.

### NOTES

---

<u>**Complete and sign (with signature guarantee) Section A and Section B and return to:**</u>

U.S. Bank National Association at
One Federal Street, 3rd Floor
Boston, Massachusetts 02110
Attention: John Leurini
tel.: (617) 603-6766, facsimile: (866) 350-0109, or
e-mail:john.leurini@usbank.com

**Capitalized terms have the meanings given to them in the Indenture for the above-referenced securities, more particularly identified below.**

---

## A. <u>EXECUTION BY BENEFICIAL OWNER</u>

The undersigned beneficial owner hereby represents and warrants that it is a beneficial owner of the Notes described below and is duly authorized to deliver this Certification to the Trustee, and that such power has not been granted or assigned to any other Person.

Name of Beneficial Owner:_____

Address:_____

Contact Person Name:_____

Phone:_____

Fax:_____

E-mail:_____

Custodian/DTC Participant Name:_____

DTC Participant No.:_____

| Note and/or Class | Cusip | Original Principal Amount Held |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**The Trustee is hereby authorized to disclose to other Noteholders or beneficial owners, the other transaction parties in the Pebble Creek LCDO 2007-3, Ltd. transaction, and any court in which a**

related legal proceeding may be commenced, the existence, but not the amounts, of the undersigned's holdings in the Notes.

**[PLEASE CHECK ONE:]  Yes:_____; No:_____.**

Signature[1]:_____
(Print Name of Authorized Signatory):_____
Title:_____
Date:_____

*Signature Guaranteed:*

_____

*Participant in a Recognized*
*Signature Guarantee Medallion*
*Program*

## B. EXECUTION BY NOMINEE OR INTERMEDIARY/ADVISOR

The undersigned hereby represents and warrants that it is the nominee or intermediary/advisor for the beneficial owner indicated below with respect to the Note position described below, and that such beneficial owner has granted to the undersigned the power and authority to deliver this Certification to the Trustee on behalf of such beneficial owner, and that such power has not been granted or assigned to any other Person.

Name of Nominee or Intermediary/Advisor:_____
Address:_____
Contact Person Name:_____
Phone:_____
Fax:_____
E-mail:_____
Name of Beneficial Owner(s):_____
Class and CUSIP No. of Notes Owned:_____
DTC Participant Name:_____
DTC Participant No.:_____

| Note and/or Class | Cusip | Original Principal Amount Held |
|---|---|---|
|  |  |  |
|  |  |  |

---

[1]    *The execution of this Certification should be confirmed by a signature guarantee by a recognized participant in the Securities Transfer Agents Medallion Program, the New York Stock Exchange Medallion Signature Program, the Stock Exchange Medallion Program or another similar medallion stamp signature guarantee program acceptable to the Trustee.*

| | | |
|---|---|---|
| | | |

**The Trustee is hereby authorized to disclose to other Noteholders or beneficial owners, the other transaction parties in the Pebble Creek LCDO 2007-3, Ltd. transaction, and any court in which a related legal proceeding may be commenced, the existence, but not the amounts, of the undersigned's holdings in the Notes.**

**[PLEASE CHECK ONE:]    Yes:_____;    No:_____.**

Signature[2]:_____

(Print Name of Authorized Signatory):_____

Title:_____

Date:_____

*Signature Guaranteed:*

_____

*Participant in a Recognized*
*Signature Guarantee Medallion*
*Program*

---

2      *See footnote 1 above.*

## CUSIPs

### PEBBLE CREEK LCDO 2007-3

| Security | CUSIP | ISIN |
|---|---|---|
| **Class A Notes** | | |
| Class A Rule 144A Certificated Note | 70509DAA8 | US70509DAA81 |
| Certificated Class A Note | 70509DAF7 | US70509DAF78 |
| Class A Regulation S Global Note | G6966BAA5 | USG6966BAA55 |
| **Class B Notes** | | |
| Class B Rule 144A Certificated Note | 70509DAB6 | US70509DAB64 |
| Certificated Class B Note | 70509DAG5 | US70509DAG51 |
| Class B Regulation S Certificated Note | G6966BAB3 | USG6966BAB39 |
| **Class C Notes** | | |
| Class C Rule 144A Global Note | 70509DAC4 | US70509DAC48 |
| Certificated Class C Note | 70509DAH3 | US70509DAH35 |
| Class C Regulation S Global Note | G6966BAC1 | USG6966BAC12 |
| **Class D Notes** | | |
| Class D Rule 144A Global Note | 70509DAD2 | US70509DAD21 |
| Certificated Class D Note | 70509DAJ9 | US70509DAJ90 |
| Class D Regulation S Global Note | G6966BAD9 | USG6966BAD94 |
| **Class E Notes** | | |
| Class E Rule 144A Global Note | 70509DAE0 | US70509DAE04 |
| Certificated Class E Note | 70509DAK6 | US70509DAK63 |
| Class E Regulation S Global Note | G6966BAE7 | USG6966BAE77 |
| **Preference Shares** | | |
| Certificated U.S. Preference Shares | 70509C300 | US70509C3007 |
| Regulation S Global Preference Shares | G6966A109 | KYG6966A1094 |

The above CUSIP numbers are included solely for the convenience of the Noteholders. The Trustee is not responsible for the selection or use of the CUSIP numbers, or for the accuracy or correctness of CUSIP numbers printed on the Notes or as indicated in this notice.

## <u>Derivatives ADR Notice</u>

Derivatives ADR Notice No.: <u>157</u>

<u>Debtor(s)</u>:    Lehman Brothers Special Financing Inc. ("LBSF")

Derivatives
<u>Counterparties and Related Parties</u>:

As used in this Derivative ADR Notice, the term "<u>Derivative Counterparties and Related Parties</u>" shall mean (i) the Cash-Synthetic Hybrid Issuers (as defined below) and (ii) U.S. Bank National Association, in its capacity as trustee ("<u>Trustee</u>") under the indentures executed by the Trustee and each of the Cash-Synthetic Hybrid Issuers.

"<u>Cash-Synthetic Hybrid Issuers</u>" shall mean collectively:

AIRLIE CDO I, LTD. ("<u>Airlie I</u>")

AIRLIE LCDO I (AVIV LCDO 2006-3), LTD. ("<u>Airlie LCDO I</u>")

AIRLIE LCDO II (PEBBLE CREEK 2007-1), LIMITED ("<u>Airlie LCDO II</u>")

AVIV LCDO 2006-1, LIMITED ("<u>Aviv 2006-1</u>")

AVIV LCDO 2006-2, LIMITED ("<u>Aviv 2006-2</u>")

EXUM RIDGE CBO 2006-1, LTD. ("<u>Exum 2006-1</u>")

EXUM RIDGE CBO 2006-2, LTD. ("<u>Exum 2006-2</u>")

SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3), LTD. ("<u>Exum 2006-3</u>")

EXUM RIDGE CBO 2006-4, LTD. ("<u>Exum 2006-4</u>")

EXUM RIDGE CBO 2006-5, LTD. ("<u>Exum 2006-5</u>")

EXUM RIDGE CBO 2007-1, LTD. ("<u>Exum 2007-1</u>")

EXUM RIDGE CBO 2007-2, LTD. ("<u>Exum 2007-2</u>")

PEBBLE CREEK LCDO 2006-1, LIMITED ("<u>Pebble Creek 2006-1</u>")

PEBBLE CREEK LCDO 2007-3, LTD. "<u>Pebble Creek 2007-3</u>")

WHITE MARLIN CDO 2007-1, LTD. ("<u>White Marlin</u>")

If the Cash-Synthetic Hybrid Issuers and the Trustee would prefer to re-group, or sub-categorize the transactions that are the subject of this Derivatives ADR Notice, LBSF is amenable to considering such a suggestion.

<u>Derivatives Contracts and Related Documents:</u>

As used in this Derivative ADR Notice, the term "<u>Derivatives Contracts and Related Documents</u>" shall be defined collectively as the documents listed below executed by Cash-Synthetic Hybrid Issuers. Capitalized terms used herein but not defined herein shall have the meaning in the applicable swap agreement executed in connection with the applicable transaction.

1. ISDA Master Agreement, dated as of January 18, 2007, between Airlie I and LBSF (together with any confirmations and schedules thereto, the "<u>Airlie I Swap Agreement</u>" and the transaction evidenced thereby the "<u>Airlie I Transaction</u>"), the Notice of Early Termination, dated November 28, 2008, from Airlie I to LBSF, and the Indenture, dated as of January 18, 2007, by and among Airlie I, as Issuer, Airlie CDO I, Corp., as Co-Issuer, and the Trustee.

2. ISDA Master Agreement, dated as of November 1, 2006, between Airlie LCDO I and LBSF (together with any confirmations and schedules thereto, the "<u>Airlie LCDO I Swap Agreement</u>" and the transaction evidenced thereby the "<u>Airlie LCDO I Transaction</u>"), the Notice of Early Termination, dated November 28, 2008, from Airlie LCDO I to LBSF, and the Indenture, dated as of November 1, 2006, by and among Airlie LCDO I, as Issuer, Airlie LCDO I (Aviv LCDO 2006-3), Corp., as Co-Issuer, and the Trustee.

3. ISDA Master Agreement, dated as of January 30, 2007, between Airlie LCDO II and LBSF (together with any confirmations and schedules thereto, the "<u>Airlie LCDO II Swap Agreement</u>" and the transaction evidenced thereby the "<u>Airlie LCDO II Transaction</u>"), the Notice of Early Termination, dated November 28, 2008, from Airlie LCDO II to LBSF, and the Indenture, dated as of January 30, 2007, by and among Airlie LCDO II, as Issuer, Airlie LCDO II, (Pebble Creek 2007-1), Corp., as Co-Issuer, and the Trustee.

4. ISDA Master Agreement, dated as of September 12, 2006, between Aviv 2006-1 and LBSF (together with any confirmations and schedules thereto, the "<u>Aviv 2006-1 Swap Agreement</u>" and the transaction evidenced thereby the "<u>Aviv 2006-1 Transaction</u>"), the Notice of Early Termination, dated November 28, 2008, from Aviv 2006-1 to LBSF, and the Indenture, dated as of September 12, 2006, by and among Aviv 2006-1, as Issuer, Aviv LCDO 2006-1, Corp., as Co-Issuer, and the Trustee.

5. ISDA Master Agreement, dated as of October 5, 2006, between Aviv 2006-2 and LBSF (together with any confirmations and schedules thereto, the "<u>Aviv 2006-2 Swap Agreement</u>" and the transaction evidenced thereby the "<u>Aviv 2006-2 Transaction</u>"), the Notice of Early Termination, dated November 28, 2008, from Aviv 2006-2 to LBSF, and the Indenture, dated as of October 5, 2006, by and

among Aviv 2006-2, as Issuer, Aviv LCDO 2006-2, Corp., as Co-Issuer, and the Trustee.

6. ISDA Master Agreement, dated as of February 16, 2006, between Exum 2006-1 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-1 Swap Agreement" and the transaction evidenced thereby" the "Exum 2006-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-1 to LBSF, and the Indenture, dated as of February 16, 2006, by and among Exum 2006-1, as Issuer, Exum Ridge CBO 2006-1, Corp., as Co-Issuer, and the Trustee.

7. ISDA Master Agreement, dated as of March 8, 2006, between Exum 2006-2 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-2 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-2 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-2 to LBSF, and the Indenture, dated as of March 8, 2006, by and among Exum 2006-2, as Issuer, Exum Ridge CBO 2006-2, Corp., as Co-Issuer, and the Trustee.

8. ISDA Master Agreement, dated as of July 25, 2006, between Exum 2006-3 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-3 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-3 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-3 to LBSF, and the Indenture, dated as of July 25, 2006, by and among Exum 2006-3, as Issuer, SGS HY Credit Fund I (Exum Ridge CBO 2006-3), Corp., as Co-Issuer, and the Trustee.

9. ISDA Master Agreement, dated as of September 15, 2006, between Exum 2006-4 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-4 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-4 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-4 to LBSF, and the Indenture, dated as of September 15, 2006, by and among Exum 2006-4, as Issuer, Exum Ridge CBO 2006-4, Corp., as Co-Issuer, and the Trustee.

10. ISDA Master Agreement, dated as of October 12, 2006, between Exum 2006-5 and LBSF (together with any confirmations and schedules thereto, the "Exum 2006-5 Swap Agreement" and the transaction evidenced thereby the "Exum 2006-5 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2006-5 to LBSF, and the Indenture, dated as of October 12, 2006, by and among Exum 2006-5, as Issuer, Exum Ridge CBO 2006-5, Corp., as Co-Issuer, and the Trustee.

11. ISDA Master Agreement, dated as of March 8, 2007, between Exum 2007-1 and LBSF (together with any confirmations and schedules thereto, the "Exum 2007-1 Swap Agreement" and the transaction evidenced thereby the "Exum 2007-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2007-1 to LBSF, and the Indenture, dated as of March 8, 2007, by and

among Exum 2007-1, as Issuer, Exum Ridge CBO 2007-1, Corp., as Co-Issuer, and the Trustee.

12. ISDA Master Agreement, dated as of May 2, 2007, between Exum 2007-2 and LBSF (together with any confirmations and schedules thereto, the "Exum 2007-2 Swap Agreement" and the transaction evidenced thereby the "Exum 2007-2 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Exum 2007-2 and LBSF, and the Indenture, dated as of May 2, 2007, by and among Exum 2007-2, as Issuer, Exum Ridge CBO 2007-2, Corp., as Co-Issuer, and the Trustee.

13. ISDA Master Agreement, dated as of November 29, 2006, between Pebble Creek 2006-1 and LBSF (together with any confirmations and schedules thereto, the "Pebble Creek 2006-1 Swap Agreement" and the transaction evidenced thereby the "Pebble Creek 2006-1 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Pebble Creek 2006-1 to LBSF, and the Indenture, dated as of November 29, 2006, by and among Pebble Creek 2006-1, as Issuer, Pebble Creek LCDO 2006-1, Corp., as Co-Issuer, and the Trustee.

14. ISDA Master Agreement, dated as of July 19, 2007, between Pebble Creek 2007-3 and LBSF (together with any confirmations and schedules thereto, the "Pebble Creek 2007-3 Swap Agreement" and the transaction evidenced thereby the "Pebble Creek 2007-3 Transaction"), the Notice of Early Termination, dated November 28, 2008, from Pebble Creek 2007-3 to LBSF, and the Indenture, dated as of July 19, 2007, by and among Pebble Creek 2007-3, as Issuer, Pebble Creek LCDO 2007-3, LLC, as Co-Issuer, and the Trustee.

15. ISDA Master Agreement, dated as of June 22, 2007, between White Marlin and LBSF (together with any confirmations and schedules thereto, the "White Marlin Swap Agreement" and the transaction evidenced thereby the "White Marlin Transaction"), the Notice of Early Termination, dated November 28, 2008, from White Marlin to LBSF, and the Indenture, dated as of June 22, 2007, by and among White Marlin, as Issuer, White Marlin CDO 2007-1, Corp., as Co-Issuer, and the Trustee.

Settlement Demand:

Pursuant to this Derivative ADR Notice, LBSF hereby submits the following settlement demand against each Cash-Synthetic Hybrid Issuer, which represents the amount required to be paid to LBSF upon termination, including the return of LBSF's posted collateral, plus the mark-to-market value of the early termination amount, net of any Unpaid Amounts (collectively, "Termination Payments"), plus interest accrued thereon at the applicable rate of interest.

1. 

2.

REDACTED

3.

4.

5.

REDACTED

6.

7.

REDACTED

8.

9.

REDACTED

10

11.

**REDACTED**

12.

13.

**REDACTED**

14. <u>Pebble Creek 2007-3 Transaction</u>:  $ Redacted , plus interest thereon for the period from and including November 28, 2008 to but excluding January 2, 2009 the date by which it was reasonably practicable for LBSF to have been provided a Calculation Statement, as required under the Pebble Creek 2007-3 Transaction, at the Termination Rate (as defined in the Pebble Creek 2007-3 Swap Agreement) in the amount of $ Redacted plus interest thereon for the period from January 2, 2009 to and including April 1, 2010 at the Default Rate (as defined in the Pebble Creek 2007-3 Swap Agreement) in the amount of $ Redacted } plus interest at the Default Rate for the period thereafter until the date of payment to LBSF; and

15.

**REDACTED**

# REDACTED

Explanation of Basis for Settlement Demand:

The Settlement Demand of LBSF with respect to each transaction entered into with the Cash-Synthetic Hybrid Issuers is set forth in the table below and is based on the terms of the applicable Derivatives Contracts and Related Documents and consists of (i) Termination Payments (as defined above) and (ii) Accrued Interest (as defined below).

| Transaction | Termination Payments | Accrued Interest |
|---|---|---|
| | | |
| | **REDACTED** | |
| | | |
| Pebble Creek 2007-3 | | |

1.    Termination Payments.    LBSF is owed Termination Payments that total $ Redacted based on the terms of the Derivatives Contracts and Related Documents. Each transaction terminated with LBSF being owed a substantial sum and the Trustee is threatening to withhold the Termination Payments from LBSF on the grounds that LBSF's priority to such payment has been modified because LBSF was the Defaulting Party. However, any provision that purports to modify LBSF's payment priority with respect to any of the Cash Synthetic Hybrid Transactions is an impermissible *ipso facto* provision under U.S. Bankruptcy Law that falls outside of any safe harbors and, furthermore, is unenforceable as a penalty under New York common law.

2.

# REDACTED

# REDACTED

| | |
|---|---|
| Date of Derivatives ADR Notice: | April 19, 2010 |
| Date of Service: | April 20, 2010 |
| Response Due Date: | May 20, 2010 |

Debtor Contact:

Locke R. McMurray
Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, New York 10020
Telephone Number: (646) 285-9700
Email: locke.mcmurray@lehmanholdings.com

Lawrence Brandman
Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, New York 10020
Telephone Number: (646) 285-9650
Email: lawrence.brandman@lehmanholdings.com

WGM Contact:

Christopher J. Cox
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone Number: (650) 802-3029
Email: chris.cox@weil.com

Nancy E. Lynch
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone Number: (212) 310-8306
Email: nancy.lynch@weil.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :    08-13555 (JMP)
                                                :
                          Debtors.              :    (Jointly Administered)
                                                :
                                                :
-------------------------------------------------------------x

### ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

The following alternative dispute resolution procedures (the "Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

### FINDINGS

On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including any derivative contract that is a "swap agreement" or "forward contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties (the "Derivatives Contracts with Recovery Potential"). The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice. The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation. The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

        The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

        1.  <u>Standing Mediation Order</u>.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "<u>Standing Order</u>") shall apply to the mediations to be conducted under this Order.

        2.  <u>Derivatives ADR Counterparties</u>.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "<u>Derivatives Counterparties</u>"); provided, however, that the term Derivatives Contract with Recovery Potential shall not include any cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans.

2

3. <u>Derivatives ADR Disputes</u>. Any Debtor may designate any dispute regarding a Derivatives Contract with Recovery Potential to the Derivatives ADR Procedures by serving on a Derivatives Counterparty a copy of this Order and a Derivatives ADR Notice (as defined below) (collectively, the "<u>Derivatives ADR Package</u>").

a. Debtors shall not implement Derivatives ADR Procedures with respect to a Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated and (ii) with respect to which a Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Derivatives Contract with Recovery Potential that purports to permit a Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).

b. Debtors shall make commercially reasonable efforts to minimize the frequency of service of Derivatives ADR Notices on any one Derivatives Counterparty.

c. Any trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such persons or entities collectively referred to as "<u>Indenture Trustees</u>," and each singly as an "<u>Indenture Trustee</u>") shall be subject to this Order.

d. For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives Counterparty or Indenture Trustee, as the case may be, shall be deemed adequate if such service or notice is provided to such Derivatives Counterparty, such Indenture Trustee, a legal guardian, estate representative, or other representative and such party's counsel who have appeared in these cases by (i) email and (ii) at the option of the Debtors either (x) hand delivery, or (y) first class mail, or (z) overnight mail.

3

4. <u>Settlement of Disputes During the Derivatives ADR Procedures</u>. Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Derivatives ADR Dispute at any time before, during, or following the designation of a Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the parties, provided that such settlement

a.   complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or

(iii) other orders in these bankruptcy cases permitting such settlement, or

b.   is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors' Committee (the "<u>Creditors' Committee</u>"), the contents of any papers submitted during the mediation stage described below, and all discussions in mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

5. <u>Participation Mandatory</u>.

a.   Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty or Indenture Trustee with Authority (as defined below), after service of a Derivatives ADR Package on a Derivatives Counterparty or Indenture Trustee with Authority (i) compliance with the Derivatives ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for the

4

applicable Debtor or Debtors, Derivatives Counterparty and Indenture Trustee with Authority;

and (ii) no party is required to settle or compromise any dispute or enter into a particular

settlement or compromise, but each Debtor serving a Derivatives ADR Package, each

Derivatives Counterparty, and each Indenture Trustee with Authority must serve the required

responses, engage in the specified communications to discuss settlement, participate in any

mediation in good faith, follow directions of the mediator, and otherwise comply with the

Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such

Derivatives ADR Package.

b.    With respect to any Derivatives ADR Package served on an Indenture

Trustee, within the period provided in paragraph 8(b) for service of a response thereto by an

Indenture Trustee, Debtors and such Indenture Trustee shall review the governing documents to

determine whether the Indenture Trustee has authority to participate and to settle the Derivatives

ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ("Authority").

    i.    If the Indenture Trustee has Authority, it shall participate in

the Derivatives ADR Procedures on behalf of holders to the

extent authorized by such documents.

    ii.    If the Indenture Trustee lacks Authority via the governing

documents, it shall contact the holders for which it acts as

Indenture Trustee through the clearing systems or when possible

by a direct written communication that: (v) advises such holders

that the Debtors dispute holders' claims; (w) transmits to them the

applicable Derivatives ADR Notice; (x) invites them to participate

in the Derivatives ADR Procedures as an alternative to litigation;

5

(y) encourages them to communicate directly with the Debtors;
and (z) offers to take holders' direction in accordance with the
governing documents to participate in the Derivatives ADR
Procedures on behalf of such directing holders.

  iii. In taking the steps outlined in this paragraph 5(b), Indenture
Trustees shall make commercially reasonable efforts to act as
promptly as possible under the prevailing circumstances.

  c. Nothing contained in this paragraph 5 with respect to Indenture Trustees
shall relieve or be construed to relieve any Derivatives Counterparty from compliance with this
Order.

  d. All rights, remedies, claims and defenses of any Derivatives Counterparty,
Indenture Trustees, holders and Debtor in good faith compliance with the Derivatives ADR
Procedures shall not be impaired, waived or compromised in any further proceedings in these
cases should no settlement or compromise result from participation in these Derivatives ADR
Procedures.  Participation in the Derivatives ADR Procedures by a Derivatives Counterparty,
Indenture Trustee, or holder shall not waive the defense of lack of in personam jurisdiction, if
any, which defense shall be preserved.

  6. No Substitute For Claims Procedures.  The Derivatives ADR Procedures are
not intended and shall not be utilized as a substitute for chapter 11 claims procedures.  Nothing
contained herein, however, shall (a) prevent a Derivatives Counterparty from asserting in any
respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR
Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a
Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand

thereunder or (b) be construed to abridge, enlarge, or otherwise modify the rights and obligations

of Debtors or Derivatives Counterparties under a Derivatives Contract with Recovery Potential

or applicable law or to provide a right or remedy under a Derivatives Contract with Recovery

Potential to Debtors or Derivatives Counterparties that is not provided thereby or by applicable

law.

      7.  <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by</u>

<u>Derivatives Counterparties</u>.  If a Derivatives Counterparty previously has commenced, any

action or proceeding in any other court or forum, or any action or proceeding in any other court

or forum following service upon it of a Derivatives ADR Package, the Debtors reserve their

right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court

any such lawsuit, proceeding, or claim and to defend or take action in any such other court or

proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed

under the Derivatives ADR Procedures.

<u>NOTICE/RESPONSE STAGE</u>

      8.  <u>Notice/Response</u>.  The initial stage of the Derivatives ADR Procedures will be

a notice/response stage, providing the parties with an opportunity to exchange settlement offers,

schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR

Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").  The Notice/Response Stage shall

include:

      a.  <u>Derivatives ADR Notice</u>.  Debtors shall serve upon a Derivatives

      Counterparty or Indenture Trustee (and its attorneys who have appeared in

      these cases) a notice containing sufficient information regarding the

      Derivatives ADR Dispute to make the Derivatives Counterparty or

      Indenture Trustee aware of the nature of Debtor's affirmative claim, a

7

brief explanation setting forth the basis for the demand and the amount,

and of its demand for settlement (which demand shall have been

determined with the benefit of consultation between Debtors and the

Creditors' Committee), including an amount of monetary recovery

Debtor(s) would accept in full settlement and compromise (a "Derivatives

ADR Notice"). Service of a completed Derivatives ADR Notice in the

form annexed to this Order as Exhibit "A" shall presumptively be deemed

to comply with this Order.

b.    Derivatives Counterparty's Response to Notice. A Derivatives

Counterparty must respond to the Derivatives ADR Notice in writing

within thirty (30) calendar days from the date of the Derivatives

Counterparty's receipt of the Notice. An Indenture Trustee with Authority

contained in the governing documents must respond to the Derivatives

ADR Notice in writing within forty-five (45) calendar days from the date

of such Indenture Trustee's receipt of the Derivatives ADR Notice, and an

Indenture Trustee with Authority obtained by way of direction from

holders pursuant to paragraph 5(b) above, must respond to the Derivatives

ADR Notice within thirty (30) days from the date of receipt of such

direction from holders. The response options available to a Derivatives

Counterparty or an Indenture Trustee with Authority are as follows (the

"Responses"):

i.    Agreeing to Settle the Demand. If a Derivatives

Counterparty or an Indenture Trustee with Authority agrees

8

to settle the demand in the Derivatives ADR Notice, the
Counterparty shall state in writing that the offer of
settlement in the Derivatives ADR Notice is accepted. The
parties will then execute a settlement and general release
(including a confidentiality provision) and, if the matter is
in litigation, the Debtor shall dismiss any applicable claims
in a lawsuit or adversary proceeding with prejudice upon
execution of the release; or

ii.    Denying the Demand. A Derivatives Counterparty or
Indenture Trustee with Authority may decline to settle for
the amount stated in the demand in the Derivatives ADR
Notice, in which case the Derivatives Counterparty or
Indenture Trustee with Authority must include a brief
explanation in the Response to the Derivatives ADR Notice
setting forth the reason(s) for such denial. In addition, the
Derivatives Counterparty or Indenture Trustee with
Authority may provide a counteroffer to the demand in the
Derivatives ADR Notice. Service of a completed Response
to a Derivatives ADR Notice in the form annexed to this
Order as Exhibit "B" shall presumptively be deemed to
comply with this Order.

c.    Failure to Respond. Failure to provide a timely Response to the
Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

9

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Derivatives Counterparty or Indenture Trustee)

for Sanctions (as defined below) as set forth below, including an order or

judgment for recovery of amounts demanded by Debtors in the

Derivatives ADR Notice, or immediate entry into the mediation stage.

d.    Reply to Response. The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a Reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor shall (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its

demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer

in which case the Derivatives ADR Dispute will automatically proceed to

the Mediation Stage.

9.    Request for Initial Settlement Conference. At any time in the

Notice/Response Stage, either a Debtor, Derivatives Counterparty or Indenture Trustee with

Authority may request an initial telephonic settlement conference by written request, to be held

within ten (10) calendar days, and, in the case of Indenture Trustees with Authority, to be held

within fifteen (15) business days. Within four (4) business days of a receipt of such a request,

the other parties must respond by acceptance of one of the proposed dates and times or by a

proposal for an initial settlement call no later than five (5) calendar days from the earliest date set

forth in the written request. In the case of Indenture Trustees with Authority, within ten (10)

business days of a receipt of such a request, the other parties must respond by acceptance of one

10

of the proposed dates and times or by a proposal for an initial settlement call no later than fifteen

(15) business days from the earliest date set forth in the written request. If an acceptable date

cannot be achieved through this process, the parties shall immediately proceed to the Mediation

Stage. At least one hour shall be reserved for the initial conference to discuss settlement. No

mediator or representative of the Court will participate in this discussion, but the initial

conference call specified in this paragraph, together with any continuations or rescheduled

settlement calls or meetings arising from that initial settlement conference, will be covered by

Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the

confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator

were present. Settlement conferences during the Notice/Response Stage may be held in person if

both parties agree in writing.

## MEDIATION STAGE

10. Mediation. Derivatives ADR Disputes that are not resolved through the

Notice/Response Stage will proceed to mediation (the "Mediation Stage"). The Debtors shall

transmit on a rolling basis as promptly as possible to the mediators appointed pursuant to

paragraph 10(a) hereof sets of Derivatives ADR Notices and any applicable Response(s) and

Replies thereto for purposes of allocating specific mediations pursuant to paragraph 10(b)(i)

hereof.

a.    Choice of Mediator. James Freund, David Geronemus and Ralph Mabey

are APPOINTED as the mediators for Derivatives ADR Disputes reaching

the Mediation Stage. If any named mediator is not available to serve as

mediator, an alternate mediator shall be selected by the Court upon notice

to the Debtors, the Creditors' Committee, all Derivatives Counterparties

and Indenture Trustees.

11

b.   <u>Powers of Mediator</u>.  The mediators shall have the broadest possible
discretion consistent with the Standing Order, including (i) the manner of
allocating among themselves specific mediations on a fair and equitable
basis; and (ii) the ability to consolidate mediations involving the same
Derivatives Counterparty upon application by such Derivatives
Counterparty and consultation with the Debtors.

c.   Once a specific mediator has been selected and notice of such selection
has been conveyed to the parties, the Debtor and the Derivatives
Counterparty or Indenture Trustee with Authority together shall contact
the mediator to schedule the initial mediation date.

d.   <u>Mediation Sites</u>.  All mediation proceedings will take place in New York,
New York, unless agreed to by the parties and the mediator.

e.   <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation
Brief, with service upon the other parties to the Mediation and upon the
Creditors' Committee; provided, however, the Mediator may order that the
parties to serve upon each other, the Mediator, and the Creditors'
Committee a Mediation Brief.  If a party to the Mediation opts to serve a
Mediation Brief upon another party to the Mediation hereunder, such
Mediation Brief shall also be filed with the Mediator and the Creditors'
Committee.  Any such Mediation Brief shall be served and filed so as to
be received no later than five (5) calendar days prior to the scheduled
initial Mediation Date.  No Mediation Brief shall be filed with the Court.

12

f.    <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority; *provided, however*, that, to the extent acceptable to the mediator, the business principal with settlement authority on behalf of a Derivatives Counterparty may attend the mediation by video conference at the sole expense of the Derivatives Counterparty.  The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

g.    <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

**OTHER PROVISIONS**

11. <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12. <u>Sanctions for Parties</u>.  Each Debtor, Derivatives Counterparty and Indenture Trustee must participate in good faith with these Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that a party has not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors, Derivatives Counterparty or Indenture Trustee, as the case may be, may be subject to such sanctions as the Court deems appropriate (the "<u>Sanctions</u>").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing

and order Sanctions. Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage. Sanctions may include, but are not limited to:

    a.    Against Debtors: (i) attorneys' fees incurred by a Derivatives Counterparty (including an Indenture Trustee with Authority) with respect to the Derivatives ADR Procedures after the receipt of an ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

    b.    Against Derivatives Counterparties (including Indenture Trustees with Authority): (i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; (iii) an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice.

    13. Confidentiality. The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order. No statements or arguments made or positions taken by the mediator, the applicable Debtors, Derivatives Counterparties, Indenture Trustee or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage may be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party; *provided, however*, that Indenture Trustees may disclose such statements, arguments and positions as may become necessary with their respective noteholders and advisors subject to these same

14

confidentiality provisions. Similarly, all briefs, records, reports, and other documents received

or made by the mediator while serving is such capacity shall remain confidential and not be

provided to the Court, unless they would be otherwise admissible. In addition, the mediator shall

not be compelled to disclose such records, reports, and other documents in connection with any

hearing held by the Court; *provided, however*, the mediator shall on a monthly basis beginning

60 days following entry of this Order report to the Court the status of the mediation efforts but

shall not disclose the content thereof, which report shall include the number of ADR Notices

served on Derivatives Counterparties, the number of settlements reached after mediation, the

number of mediations still pending, the number of mediations that have terminated without

settlement, and the cumulative dollar amount of settlements reached with Derivatives

Counterparties following service of ADR Notices. Rule 408 of the Federal Rules of Evidence

shall apply to all aspects of the Derivatives ADR Procedures including Settlement Conferences

and Mediation Stage.

14. Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights

Unaffected. Unless a Derivatives Counterparty, Indenture Trustee or a Debtor affirmatively

waives its right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may

exist, participation in the Derivatives ADR Procedures shall not waive or otherwise modify such

rights. All parties' rights and defenses to contest the assertion of a jury trial or arbitration or

exclusive foreign forum selection right by any other party are fully preserved.

15. Fees. Except as otherwise provided herein, each party to the Mediation shall

bear its own counsel fees and other costs of the Derivatives ADR Procedures, including

Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs

charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this

15

Order and (ii) nothing contained herein shall be deemed to vary the terms of any Derivative

Contract with Recovery Potential in respect of the reimbursement of fees and expenses.

**SO ORDERED:**

Dated: New York, New York
         September 17, 2009

                        _s/ James M. Peck_____
                        UNITED STATES BANKRUPTCY JUDGE

16

<u>Exhibit A</u>

**<u>Form of Derivatives ADR Notice</u>**

Derivatives ADR Notice No.: _____

<u>Debtor(s)</u>: _____        <u>Derivatives Counterparty</u>: _____
                Name(s)                                    Name(s)

                                  or

                                  <u>Indenture Trustee</u>: _____
                                                  Name

<u>Derivatives Contract</u>: _____
_____
_____

<u>Settlement Demand</u>:  $ _____

<u>Explanation of Basis for Settlement Demand</u>: _____
_____
_____
_____
_____
_____
_____
_____

                                  <u>Date of Derivatives ADR Notice</u>: _____

                                  <u>Date of Service</u>: _____

                                  <u>Response Due Date</u>: _____

<u>Debtor Contact</u>:        [Name]
                         [Address]
                         Telephone Number: _____
                         Email: _____

Exhibit B

**Form of Response to Derivatives ADR Notice**


Derivatives Counterparty: _____
                                    Name

     or

Indenture Trustee with Authority: _____
                                              Name

Response to Derivatives ADR Notice No.: _____


☐ Agree to Settlement Demand

☐ Denial of Settlement Demand          ☐ Counteroffer

                                        Counteroffer Amount: $_____


Explanation of Basis for Counteroffer/Denial of Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____


Counterparty Contact:  [Name]
                              Telephone Number: _____
                              Email: _____