**SILVERMANACAMPORA LLP**
Counsel to Caisse des Dépôts et Consignations,
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Jay S. Hellman
Brett S. Silverman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re                                                                                        Chapter 11

LEHMAN BROTHERS HOLDING INC., *et al.*              Case No. 08-13555 (JMP)

                                            Debtors.                          (Jointly Administered)
-------------------------------------------------------------------X

**CAISSE DES DÉPÔTS ET
CONSIGNATIONS' REPLY TO THE OBJECTION FILED
BY LEHMAN BROTHERS SPECIAL FINANCING INC. TO THE SECOND
MOTION FOR ENTRY OF AN ORDER TO PERMIT A LATE-FILED PROOF OF CLAIM**

Caisse des Dépôts et Consignations ("**CDC**"), by and through its undersigned counsel, for its reply (the "**Reply**") to the objection (the "**Objection**") filed by Lehman Brothers Special Financing Inc. ("**LBSF**") and its affiliated co-debtors in the above-captioned jointly administered cases (collectively, the "**Debtors**") to CDC's second motion for entry of an order to permit a late-filed proof of claim against LBSF, with such claim being deemed timely filed (the "**Motion**"), respectfully represents as follows:

**I.**

**CDC DID NOT RECEIVE ACTUAL NOTICE OF THE BAR DATE**

1.      The Objection should be overruled and the Motion granted because, despite the multiple attempts at service on CDC, the Debtors never provided CDC with "actual," legally sufficient notice of the claims bar date in the Debtors' cases (the "**Bar Date**").

2.      In the Objection, the Debtors assert that CDC was provided with "actual" notice of the Bar Date because: (a) CDC was noticed by publication through the International Editions of the Wall Street Journal, Financial Times, and New York Times; (b) notice was mailed to CDC

CM/1409859.2/060177

Capital, Inc., in New York, and to an alternate CDC office in Paris, France, and neither notice was returned; and (c) notice of the Bar Date was mailed to CDC at its main address (without the specific routing information required by the Master Agreement).[1]

3. Under applicable bankruptcy law, creditors are entitled to different types of notice depending on whether a creditor is "known" or "unknown." *See In re Brunswick Hosp. Ctr., Inc.*, 1997 WL 836684, *3 (Bankr. E.D.N.Y. Sept. 12, 1997).

4. "According to well-established case law, due process requires that a debtor's ***known creditors be afforded actual written notice of the bankruptcy filing and of the bar date***." *In re Brunswick Hosp. Ctr., Inc.*, 1997 WL 836684 at *3 (emphasis supplied) (*citing In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 674, 680 (Bankr.S.D.N.Y.1993); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir.1995); *Waterman Steamship Corp. v. Aguiar*, 141 B.R. 552, 557 (Bankr. S.D.N.Y. 1992); *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 443–44 (Bankr. S.D.N.Y. 1991)).[2]

5. Moreover, "knowledge of a corporate reorganization petition does not necessarily enable a creditor to estimate the bar date." *In re XO Communications, Inc.*, 301 B.R. 782, 792, n.5 (Bankr. S.D.N.Y. 2003) (*quoting In re Medaglia*, 52 F.3d 451 (2d Cir. 1995).[3]  In *In re*

---

[1] Capitalized terms not defined herein have the same meaning ascribed to them in the Motion.

[2] *See also In re L.F. Rothschild Holdings, Inc.*, 1992 WL 200834, *3 (S.D.N.Y. Aug. 3, 1992) ("[I]t is well established that a debtor's known creditors are entitled to actual notice of the bar date for filing claims.") (*citing City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296 (1953)); *In re Chateaugay Corp. Reomar, Inc.*, 2009 WL 367490, *5 (Bankr. S.D.N.Y. Jan. 15, 2009) ("[t]o discharge claims of known creditors, due process requires that known creditors receive actual notice"); *In re Victory Memorial Hosp.*, 435 B.R. 1, *5 (Bankr. E.D.N.Y. 2010) ("all known creditors must be given actual notice of the bar date").

[3] *See also In re Brunswick Hosp. Ctr., Inc.*, 1997 WL 836684 at *3 (*quoting In re Somar Concrete, Inc.*, 102 B.R. 44, 50 (n. 4) (Bankr.D.Md.1989) ("[T]he creditor with actual knowledge of the bankruptcy case has a burden of inquiry in an individual case while a creditor with knowledge of a corporate Chapter 11 case suffers no prejudice unless it has actual knowledge of the bar date.")).

2

*Brunswick Hosp. Ctr., Inc.*, the court stated that "[a] known creditor must receive proper, adequate notice before its claim is barred forever."[4]

6.  It is undisputed that CDC was a "known" creditor of LBSF since the Master Agreement was listed on Schedule "G" of the Debtors' chapter 11 petitions as an unexpired executory derivative contract with specific reference to Master Derivative Account Number 080494CDDC.[5] Accordingly, due to its status as a "known" creditor of LBSF, the Debtors were obligated to provide CDC with "actual" notice of the Bar Date.

<u>Notice By Publication Is Not Legally Sufficient</u>

7.  Attempted notice through publication is only sufficient where a potential creditor is unknown. *See In re Thomas McKinnon Sec. Inc.,* 130 B.R. 717 (Bankr. S.D.N.Y. 19910). In this case, CDC was listed as a creditor due to the Master Agreement on Schedule G of the Debtors' schedules. Accordingly, it was entitled to "actual," legally sufficient notice, which publication notice did not provide.

8.  Notice by publication is not legally sufficient notice for "known" creditors of a debtor. *See In re Brunswick Hosp. Ctr., Inc.*, 1997 WL 836684 at *3 ("notice by newspaper publication does not satisfy the minimum due process protections to which known creditors are entitled.").[6] Moreover, as the court in *In re Thomson McKinnon Securities Inc.*,[7] stated:

---

[4] 1997 WL 836684 at *3 (*quoting In re Best Prods. Co., Inc.*, 140 B.R. 352 (Bankr.S.D.N.Y.1992); *see also In re XO Commc'ns., Inc.*, 301 B.R. at 792 ("If a creditor is 'known' to a debtor, actual notice of a debtor's bankruptcy filing and bar date must be given to the creditor in order to achieve a legally effective discharge of the creditor's claim.").

[5] The Master Agreement was annexed to the Motion as Exhibit "A". The Master Agreement was entered into between CDC and LBSF on July 29, 1994, and was intended to govern certain financial transactions between CDC and LBSF pursuant to the terms and conditions contained therein.

[6] See also *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319–20, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *In re Allegheny Int'l*, 158 B.R. 356, 359 (Bankr. W.D.Pa. 1993) (notice by publication in national newspapers is insufficient to give actual notice of bankruptcy filing to known creditors); *In re Grand Union Co.*, 204 B.R. 864, 872 (Bankr. D. Del. 1997) (published notice of claims bar date notice is inadequate for known creditors) ("[C]onstructive notice by publication is not reasonable notice to creditors whose names, addresses and interests are known to the debtor.").

[7] 130 B.R. 717 (Bankr. S.D.N.Y. 1991).

3

> Notice by publication satisfies the requirements of due process when the names, addresses and interests of potential parties are unknown. 130 B.R. at 719; *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

9.     Based on the foregoing, notice by publication is not legally sufficient notice and should not foreclose CDC's claims against the Debtors. Therefore, the Debtors' claim that Notice by Publication is sufficient, is without merit.

Actual Notice was Not Legally Sufficient

10.    "Actual" notice ***must*** be "legally sufficient" notice and, as such, the Debtors failed to provide proper notice to CDC regarding the Bar Date.

11.    The Debtors assert that, even if the notice provided to CDC at the scheduled address was not "sufficient or reasonable under the circumstances," the Motion should be denied because mailing of the notice of the Bar Date to (a) CDC Capital, Inc., in New York, and (b) an alternate CDC office in Paris, France (collectively, the "**Alternative Mailings**") was "actual" notice. The Debtors further assert that the Alternative Mailings created a rebuttable presumption that CDC cannot overcome. Lastly, relying predominantly upon *In re Drexel Burnham Lambert Group, Inc., et al.*,[8] the Debtors assert that CDC, once in receipt of the Alternative Mailings, was responsible for routing it to the proper personnel within its organization.

12.    However, as more thoroughly set forth in the Motion, CDC never received notice of the Bar Date (the "**Bar Date Notice**") as required by the Master Agreement.

13.    The notices provided by the mailings to the CDC Capital office in New York and alternate CDC office in Paris, France were not legally sufficient. Moreover, the mailing of the Bar Date Notice to the CDC main office without the appropriate routing information under the Master Agreement was not legally sufficient notice.

---

[8] 129 B.R. 22 (Bankr. S.D.N.Y. 1991).

4

*Notice To CDC Capital Was Not Legally Sufficient Notice*

14. The mailing of the Bar Date Notice to the CDC Capital office was not legally sufficient notice.

15. The address to which the notice in New York was sent is the address for an unaffiliated entity. Prior to the execution of the Master Agreement, CDC had been affiliated with CDC Capital, but in or about 2007, prior to the LBHI bankruptcy filing, CDC sold all its interests in CDC Capital. Although CDC Capital was no longer affiliated with CDC at the time of the LBHI bankruptcy filing, Epiq served the Bar Date Notice on CDC Capital, an act that did *not* provide CDC with sufficient notice of the Bar Date.

16. Moreover, Section 13(c) of the Master Agreement contains notice procedures whereby is it was *only* acceptable to notice CDC Capital in the event of a direct dispute between the Debtors and CDC that related *only* to business transacted through CDC Capital. Service upon CDC Capital was improper for a variety of reasons, among them: (i) none of the business relating to the potential claim was conducted through CDC Capital; and (ii) the Bar Date did not constitute a "dispute" between the parties to the Master Agreement.

17. Thus, mailing the Bar Date Notice to CDC Capital was not legally sufficient notice required for a known creditor.

*Notice to the CDC Alternative Paris Office was Not Legally Sufficient Notice*

18. The mailing of the Bar Date Notice to an alternative office in Paris, France was not legally sufficient notice because, pursuant to the Master Agreement, CDC was entitled to notice specifically addressed to **Service FMP 20/Back Office Monetaire**, and not an alternate office in the same city.

19. The office to which the Bar Date Notice was sent was not the main office, and therefore not the central processing for all mailings.

20. Mailing to the alternative office in Paris did not provide CDC with legally sufficient notice under the Master Agreement.

5

*Unlabeled Notice to the CDC Main Office was Not Legally Sufficient Notice*

21. The improperly addressed Bar Date Notice sent to CDC at its main office was not legally sufficient notice for a known creditor.

22. As explained in the Motion, because the Bar Date Notice did not contain a specific department as required by the Master Agreement, it was returned to sender. The Debtors' argument that because the Master Agreement was in English, and, therefore, members of the mail room staff at CDC should speak and understand English, is without merit. Without the specific noticing provision, which is used to prevent potential mishaps due to improperly labeled mail containing foreign language documents, the mail room workers did not know to which department the Bar Date Notice should be routed.

23. Moreover, the mail room workers, particularly the temporary workers, have limited English comprehension and, as such, were unaware of the potential department or office to which a letter mailed to "President" or "Legal Counsel" should be routed because no such positions exist.

24. Accordingly, the mailing to the CDC office without the appropriate routing information was not legally sufficient notice because CDC was entitled to notice as more particularly set out in the Master Agreement.

25. The Debtors did not satisfy their contractual obligations under the Master Agreement to serve the Bar Date Notice upon CDC at the specified address contained in the Master Agreement.

26. Neither the Alternative Mailings, nor the mailing to CDC's main address without the specific routing information contained in the Master Agreement, constituted legally sufficient notice required for a known creditor.

27. Since Notice of Publication is not legally sufficient notice for known creditors, and all of the mailings to CDC, including the Alternative Mailings, did not provide CDC with notice required under the Master Agreement, CDC never received legally sufficient notice.

6

Accordingly, despite the Debtors' assertion, CDC was never properly served with the Bar Date Notice.

## II.

## THE DELAYS IN FILING ARE EXCUSABLE

28.     The Objection should be overruled, and the Motion should be granted, because CDC's delay in filing the First Motion was due to the lack of notice required under the Master Agreement.

29.     As more thoroughly set forth in the Motion, the length of time between the Bar Date and the filing of the First Motion was because CDC did not receive "actual," legally sufficient notice of the Bar Date.

30.     CDC's delinquency is further excused because, as a foreign creditor with no familiarity in American bankruptcy laws or procedure, CDC did not have the background to appropriately investigate in a timely manner.

31.     By the time CDC determined it should file a proof of claim in the Debtors' bankruptcy, the Bar Date had already passed.  Additionally, CDC had to retain local counsel.

32.     Moreover, the Objection should be overruled, and the Motion should be granted because CDC's delay in filing a second motion after this Court denied the First Motion was due to changes in personnel at CDC.

33.     After the First Motion was denied, this office contacted CDC to discuss its claim and the Motion.  At that time, new personnel at CDC had been appointed to oversee this matter. Unlike the prior employees, the new personnel were not familiar with the Master Agreement, the Debtors' bankruptcy case, CDC's potential claim, or the First Motion.

34.     Accordingly, this office spent considerable time and resources in an attempt to explain the situation to new personnel.  This challenge was exacerbated by the fact that the new personnel did not speak English to the extent necessary to comprehend the intricate details of American Bankruptcy Law.

7

35. Moreover, once CDC's new personnel understood the issues, CDC's new personnel needed to obtain authority to proceed with the Motion. As with any other governmental agency, CDC took considerable time to obtain the necessary permission to proceed and again retain this firm to continue to represent its interests.

36. Accordingly, the delay in filing the Motion is excusable based on the language barrier and difficulties facing a multi-national legal issue.

## Conclusion

37. CDC respectfully requests that the Court (a) overrule the Objection, and (b) enter an order to permit a late-filed claim against the Debtors, with such claim being deemed timely filed, together with such other and further relief as the Court deems just and proper.

Dated: Jericho, New York
     November 19, 2013

                       **SILVERMANACAMPORA LLP**
                       Counsel to Caisse des Dépôts et
                       Consignations

                By:    s/Jay S. Hellman
                       Ronald J. Friedman
                       Jay S. Hellman
                       Members of the Firm
                       100 Jericho Quadrangle, Suite 300
                       Jericho, New York 11753
                       (516) 479-6300