WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                        :        Chapter 11 Case No.
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        08-13555 (JMP)
                                                                :
                        Debtors.                     :        (Jointly Administered)
                                                                :
------------------------------------------------------------------x

### DECLARATION OF THOMAS BEHNKE IN SUPPORT OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR EXTENSION OF THE PERIOD TO FILE OBJECTIONS TO AND REQUESTS TO ESTIMATE CLAIMS

Pursuant to 28 U.S.C. § 1746, I, Thomas Behnke, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, following my review of the business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and certain of its subsidiaries (together, the "Debtors") and/or my consultation with employees of the Debtors. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Motion of Lehman Brothers Holdings Inc. for Extension of the Period to File Objections to and Requests to Estimate Claims*, dated November 1, 2013 [ECF No. 40939] (the "Motion").[1]

3. I am a Senior Director of Alvarez & Marsal North America, LLC. My primary area of responsibility is managing the Debtors' claims reconciliation and distribution process. In this role I have independently reviewed, have become familiar with, and have personal knowledge regarding the allowance of and objections to claims, including the matters that are the subject of the Motion.

4. I am thus fully familiar with the facts underlying the Motion, which I approved prior to its filing. I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

5. I make this Declaration to explain (a) the substantial progress that the Debtors and the Plan Administrator have made in the claims reconciliation process and (b) the need for an extension of the Objection Deadline.

6. The Debtors and the Plan Administrator have made remarkable progress in resolving the extraordinary number of claims filed in the largest chapter 11 cases in history. Creditors filed approximately 69,000 proofs of claim asserting approximately $1.3 trillion in liabilities against the twenty-three Debtors. Evaluating such a large number of claims is a monumental task, but the Debtors and their professionals have already resolved more than 64,500 claims asserting more than $1.2 trillion.[2]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[2] Unless otherwise specified, the number, amount, and percentage of claims referred to herein is as of September 30, 2013.

2

7. Virtually all of the progress to date has been achieved without contest before the Court. To date, the Plan Administrator has distributed more than $62.8 billion to holders of more than 25,500 allowed claims, including indenture trustees and affiliates that, in turn, make further wide distributions. Only approximately 4,500 claims – fewer than 7% in number and less than 11% in amount asserted against the Debtors – remain unresolved. Approximately 1,100 claims of those claims are subject to pending and adjourned objections.

8. At the same time that the Debtors were engaged in the intensive, complex process of formulating and negotiating the Plan, the Debtors were resolving tens of thousands of claims. By the time the Plan was confirmed, the efforts of the Debtors and their professionals had led to the allowance, withdrawal, reduction, reclassification, disallowance or expungement – including by the filing of approximately 266 omnibus objections – 48,000 claims in the amount of approximately $765 billion. By the commencement of initial Plan distributions in April 2012, the Plan Administrator had reconciled and was able to make distributions of more than $22.5 billion to holders of approximately 23,500 allowed claims. I believe this is the largest initial distribution ever made by a company emerging from bankruptcy.

9. At the time of the initial Plan distributions that occurred shortly after the Effective Date, approximately 11,500 claims remained unresolved. In the more than 19 months since the Effective Date, the Plan Administrator has made dramatic progress in further reconciling these claims by filing additional objections, resolving claims already subject to pending objections, conducting discovery, and resolving or reaching settlements involving claims for which objections have not yet been filed.

10. In the post-Effective Date period alone, the Plan Administrator has filed approximately 181 additional omnibus objections to more than 3,600 claims and commenced

3

approximately 27 ADRs under the Claims Hearing and ADR Procedures Order. In total, through objections, settlements, and other negotiations, the Plan Administrator has allowed approximately 2,300 additional claims and achieved the withdrawal, expungement, reclassification or estimation (at zero dollars) of approximately 5,200 claims following the Effective Date. The Plan Administrator has reconciled 61% of the claims that remained unresolved after the Effective Date and 93% of the total claims asserted against the Debtors.

11. The Plan Administrator has been able to distribute approximately $40.3 billion over the second, third and fourth Plan distributions to holders of over 25,900 allowed claims. Since the Effective Date, the Plan Administrator has also reduced the claim reserves for Disputed Claims by approximately $58 billion. Moreover, subsequent to September 30, 2013, additional claims have been reconciled and allowed or withdrawn or expunged, resulting in the further reduction of Disputed Claims by more than $3.2 billion.

12. In resolving claims, the Debtors and the Plan Administrator have had to deal with the lack of information relating to non-controlled affiliates, the need to value bespoke financial instruments that form the basis of asserted liabilities, and the need to obtain information from and engage in negotiations with a global creditor base. The remaining Disputed Claims include those that involve some of the more complex legal issues or fact patterns. More than 750 of the remaining claims were filed in unliquidated amounts and were not subsequently amended.

13. Because of the nature of the issues involved, the rate of resolution for the remaining population of Disputed Claims may not be commensurate with the rate of resolution thus far. The Plan Administrator believes that the requested eighteen month extension is required and reasonable in light of the circumstances, but that additional time may be necessary for a more limited number of claims in the future.

14. I believe that the extension of the Objection Deadline will benefit all creditors and parties in interest. It will, for example, allow the Plan Administrator to continue to engage in meaningful negotiations (both individual and, frequently, multilateral) to resolve claims consensually, obviating the need to file objections. Resolving a claim without a formal objection benefits both the holder of the Disputed Claim and the holders of all allowed claims against the particular Debtor, as both the holder of the Disputed Claim and the Debtor are spared the time and expense of litigation. Further, if the Objection Deadline is not extended, the Plan Administrator will be compelled to divert the Debtors' resources to object to all of the remaining approximately 4,500 Disputed Claims within the next 4 months. Moreover, the Plan Administrator would be compelled to interpose further objections on alternative bases to the approximately 1,100 claims that are subject to pending and adjourned objections.

15. I do not believe that holders of Disputed Claims will be prejudiced by an extension of the Objection Deadline. The Plan provides for reserves for liquidated Disputed Claims pending resolution and distribution. Unless a lower amount is agreed to by a particular creditor, a reserve for each Disputed Claim is maintained based on the filed, liquidated amount of such claim, and the holder of such claim is entitled to the interest earned on account of such reserve if and when the claim becomes allowed.

16. The Debtors and the Plan Administrator have acted diligently to reconcile the massive number of claims asserted in these cases. Accordingly, I believe that good and

US_ACTIVE:\44373856\3\58399.0003

sufficient cause exists to grant the requested extension of the Objection Deadline to September 6, 2015.

17. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 20th day of November 2013.

                                  /s/ Thomas Behnke
                                  Thomas Behnke

US_ACTIVE:\44373856\3\58399.0003