**BARBARA M. ROTH(Formerly FARAHAT)**
**1216 S. MISSOURI AVENUE, #414**
**CLEARWATER, FL 33756**
**727-348-4751 / E-MAIL: bmral14@yahoo.com**

November 12, 2013

*RECEIVED*
*NOV 14 2013*
*U.S. BANKRUPTCY COURT*
*SO. DIST OF NEW YORK*

*VIA OVERNIGHT-PRIORITY MAIL/SIGNATURE CONFIRMATION*
Ms. Carol Rado
Veba Trustee – Human Resources
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 39th Fl
New York, NY 10020
646-285-9237 (O)/E-Mail: Carol.Rado@LehmanHoldings.com

RE:    **Lehman Brothers Bankruptcy Case #08-13555:**
       **July 19, 2013** – Lehman Brothers ("LB") Letter - Aetna Insurance Coverage for Former Employees on
       Long Term Disability ("LTD"); Termination of Major Medical Benefits Premiums (the "BENEFITS"),
       Effective, December 31, 2013 - **(Exhibit A)**

Dear Ms. Rado:

Per our telephone conversation today regarding Lehman Brothers letter dated, July 19, 2013, concerning Aetna Insurance
Coverage for Former Employees on Long Term Disability ("LTD") - currently scheduled for termination of funding of
Medical Benefits, effective, December 31, 2013, please find attached, pertinent documentation **(Exhibits K-T)**, inclusive
of various Lehman Brothers Letters from Human Resources, as well as, Lehman Brothers LTD Medical Benefits
Summary Plan, to substantiate my claim, that I am entitled to continue to receive my medical benefits, as I'm vested and
bridged by the Company as outlined in the Letters etc, as Lehman Brothers paid my medical premiums according to the
LTD Benefits Plan and Summary Plan Descriptions prior to 1994, whereby it doesn't say anything about the Company
has the right to mend, change or terminate medical benefits or premiums, as verified and testified at the court
proceedings, November 16, 2011, by former employee, Ms. Marianne Ramussen, Chief Benefits Executive; especially
since I worked at Lehman Brothers from 1983-1995, whereby I encountered all the IPO's and Mergers and Acquisitions
and as a result of such, have an enormous amount of documents in my possession highlighting the various IPO changes of
company names, inclusive of documents while actively employed, as well as, documents sent to me while on LTD -
disability from the Benefits Department that didn't pertain to me regarding coverage.  I continually called and was told
while on disability you cannot change your coverage and we inadvertently sent you the wrong benefits information
**(Exhibit U)**, including Fidelity **(Exhibit V)** and Aetna Plan Updates beginning 2014, prepared September 2013, and
received via mail October 23, 2013, **(Exhibit W)** etc.

Per our last conversation, July 23, 2013, I requested the Lehman Brother's Vested Rights Analysis, Lehman Brothers
Proposal documentation be disseminated, however, to date, I didn't receive such, nor had Dechert LLP Council ever
contacted me to review any documents in my possession to substantiate my claim.  As a result, I contacted Leonard H.
Gerson, Esq., Dept of Labor in July 2013, and notified him of the Termination Letter received, as well as, Lehman
Brothers and Dechert didn't provide any scheduled or updated documentation with regard to the VEBA, the VRA or LB
Proposal, as promised by Lehman Brothers and or the Debtor's Attorney, to any previous employees, retirees or LTD, as
outlined in the legal documentation.  Mr. Leonard Gerson, Esq. forwarded me such in September 2013 **(Exhibit S & T)**.

I planned on scheduling a meeting with you in New York in September of 2013, however, I was hospitalized while in NY
and was unable to arrange a meeting to recap and review the documents.  Hence, if you need any additional information
or have any questions, please feel free to contact me at the above fore mentioned phone number; as I previously
mentioned to you, I am still reviewing all the records disseminated from from1983 until present, both Lehman Brothers,
Lehman Brothers Holdings Inc, Aetna and Fidelity etc.

I would like to take the opportunity to thank you in advance for your time, attention and cooperation and I look forward to
hearing a satisfactory resolution to the matter.

Sincerely,

Barbara M. Roth

BMR/Enclosures: 152  (single and double sided)

**November 11, 2013** – Barbara M. Roth (Formerly Farahat) Letter – Honorable James M. Peck

**July 19, 2013 Letter** – LB Termination of Aetna Insurance Coverage Medical Benefits Premiums (the BENEFITS"), for Former Employees on LTD (**Exhibit A**)

**October 26, 2009 Letter** –LB– Notice of Termination of LTD Employee Benefits to Employees under LTD as of December 31, 2009 (**Exhibit B**).

**October 21, 2011 Letter** - **LBHI** - Notice of Motion and Settlement Agreement ("NOM&SA"), Regarding LHCT–VEBA (**Exhibit C**).

**November 16, 2011** Barbara Roth vs. Lehman Brother's Holding Inc ("LBHI"), et al, - LB Bankruptcy Case #08-13555 – NOM&SA - LHCT and VEBA and Telephone Court Conference, ID4560260, Appearance, a Division of CourtCall Confirmation and Invoice (**Exhibit D**)

**November 16, 2011 Letter** – Weil, Gotshal & Manges LLP - LBHI, et al, Debtors - Chapter 11 Case No.  08-13555 (JMP) (Jointly Administered) and LBI, Debtor - Case No. 08-01420 (JMP) (SIPA) – Debtors' Reply to Objections, etc. (**Exhibit E**)

**November 29, 2011 Letter** - U.S. DOL, Leonard H. Gerson, Esq, Trial Attorney - LBHI, et al, Debtors - Chapter 11 Case No. 08-13555 (JMP) (Jointly administered) – Letter to Honorable James M. Peck and Transcript. (**Exhibit F**)

**December 15, 2012 E-Mail** – Barbara Roth's Revised Transcript Request to Dion Rupa at Veritext, P. 50-51, (**Exhibit G**)

**November 23, 2011 Letter** – Weil, Gotshal & Manges LLP - LBHI, et al, Debtors - Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) and LBI, Debtor - Case No. 08-01420 (JMP) (SIPA) – Letter to Honorable James M. Peck, United Bankruptcy Judge (**Exhibit H**).

**November 29, 2012 Letter** – 2013 Medical Benefits through Aetna (Dechert Counsel LLP to advise LB) – (**Exhibit I**)

**January 11, 2011 – Letters (1)** – LBHCT - Medical Coverage Though COBRA and Aetna – Dear LBPP (Active) (**Exhibit J**) & **January 11, 2011 – Letters – (2)** LBHCT – Retiree Medical Coverage through Aetna – Dear LB Retiree (Active-Letter 5) (**Exhibit  J**)

**Lehman Brothers Letter** – Emmanuel Callias, Assistant VP, Human Resources – January 11, 2007 - **Medical Benefits – Lehman Brothers** Long Term Disability ("LTD") Recipients Benefits Summary Plan; Facsimile Cover Letter – September 9, 1994; **Shearson Lehman Brothers, Inc.** Group LTD Policy – January 1, 1993 & **Lehman Brothers Inc.,** LTD Benefits Summary and Group LTD Claim Form – March 1994 (**Exhibit K**)

**Lehman Brothers Letter** – Julie Kagan, VP, Fixed Income Human Resources – Employment Verification & LTD Benefits Date (**Exhibit L**)

**Lehman Brothers Letter** – Julie Kagan, VP, Fixed Income Human Resources – August 31, 1994 – Employment and Group Insurance (**Exhibit M**)

**Lehman Brothers Letter** – Natalie Nance, Senior Benefits Administrator, Group Insurance Department – February 17, 1995 – LTD and Medical Benefits (**Exhibit N**)

**Lehman Brothers Letter** – April 1, 1995 – Group Insurance Confirmation (**Exhibit O**)

**Lehman Brothers Letter** – Julie Kagan, VP, Fixed Income Human Resources – September 22, 1995 (**Exhibit P**)

**Lehman Brothers Letter** – Lauren Carver, Senior Benefits Specialist/Assistant Manager, Group Insurance/Group Insurance Administration – May 26, 1998 & August 5, 1998 – Eligibility for Medicare and LB Aetna Medical Coverage – Secondary & Medicare Primary Coverage Confirmation (**Exhibit Q**)

**Barbara Meryl Roth Outline –** Overview of My Employment Benefits and Highlight Recap since commencement of Bankruptcy Hearing Court Call Appearance, November 16, 2011 (**Exhibit R**)

**Vested Rights Analysis ("VRA") –** Oringer (**Exhibit S**)

**Leonard H. Gerson, Esq. & Barbara Meryl Roth E-Mails** – (**Exhibit T**)

**Lehman Brothers Letter** – 2005 Open Enrollment Benefits Election Guide – N/A to me (**Exhibit U**)

**Lehman Brothers Savings Plan Sumaary Plan Description (Fidelity)** - January 1, 2008; **Lehman Brothers Letter Changes to Saving Plan** – March 7, 2013 – N/A to me; **Fidelity Investments Letter** – October 13, 2013 – N/A to me (**Exhibit V**)

**Aetna Letter -Updates to your Pharmacy Benefits 2014** – Notice Date September 2013 – Received October 23, 2013 (**Exhibit W**)

cc:  Honorable James M. Peck (w/o Exhibits A-T)          Leonard H. Gerson, Esq. (w/o Exhibits A-T)
     United States Bankruptcy Judge                      Plan Benefits Security Division
     Southern District of New York                       Office of the Solicitor
     One Bowling Green, Courtroom 601                    Department of Labor
     New York, NY 10004                                  P.O. Box 1914
     212-668-2870                                        Washington, DC 20013
     Ms. Linda Calveron – 212- 668-2870 Ext - 4055 &     (202) 693-5615
     Mary Lopez  Ext - 3670)                             E-Mail: Gerson.Leonard@dol.gov

C:/MyDocuments/LehmanBrothersBankruptcy/CarolRadoLtr.Nov12,2013.doc

*Alda*
*Dental Plan*
*Manny Callias*

# LEHMAN BROTHERS

To:     All U.S. Benefits Eligible Employees

From:  Lehman Brothers Benefits Service Center

Re:     2005 Open Enrollment

*Not Applicable to me p.e Manny Callias*

We are pleased to provide you with the details of the 2005 Open Enrollment for the Firm's employee benefit plans.  Open Enrollment is the annual opportunity for you to make changes to certain employee benefit plan elections and to add or remove dependents.

In addition, this year there is a one time special Open Enrollment for the Supplemental LTD and Supplemental Group Term Life Insurance programs.  Details about the enrollment are summarized below.

## *2005 Open Enrollment Highlights*

- **Medical Plan**
  - *No increase in contributions for 2005*
  - Wellness benefit improved to cover annual physicals
  - Discounts on eyeglasses and contact lenses are available

- **Dental Plan**
  - *Increased Annual Benefit Limit*: Increased by $500 to cover $2,500 of in-network services or $1,500 of out-of-network services
  - *Increased Lifetime Orthodontic Benefit Maximum*: Increased by $500 to $3,000 of in-network services or $2,000 of out-of-network services
  - *No increase in contributions for 2005*

- **Flexible Spending Accounts**
  - *New Administrator*: WageWorks
  - *New Health Card*: Use the health card to purchase eligible health care services and items at qualified merchants who accept MasterCard®

- **Supplemental Long Term Disability Insurance**
  - New enrollments permitted for 2005 for employees not currently enrolled, without having to provide a "proof of good health" statement
  - Voluntary coverage of up to $12,500 of monthly long term disability insurance

**EXHIBIT** U

- **Supplemental Term Life Insurance**
  - *New Coverage Limits*: Voluntary coverage of up to nine (9) times Insurance Earnings to a maximum of $1.9 million of term life insurance
  - *New Dependent Benefit:* Voluntary coverage of up to $100,000 for your spouse/domestic partner and up to $10,000 per child
  - Coverage available to all employees with Insurance Earnings, as defined in the Summary Plan Description, of $200,000 or less (employees with Insurance Earnings in excess of $200,000 receive coverage through the GVUL program)
  - *Special one-time open enrollment subject to the following limitations*:
    a) If you were previously denied coverage through the plan, you are not eligible for this special open enrollment
    b) If you previously waived coverage, you may elect coverage of up to three (3) times Insurance Earnings without providing a "proof of good health" statement. Coverage in excess of three (3) times Insurance Earnings can be elected by providing a "proof of good health" statement
    c) If you previously elected coverage, you may increase your coverage level by one (1) times Insurance Earnings without providing a "proof of good health" statement. Coverage increases in excess of one (1) times Insurance Earnings can be elected by providing a "proof of good health" statement.

For complete information on the Firm's benefit plans please visit the Benefits section of Lehman & You. If you have any questions regarding the 2005 Open Enrollment, please contact the Benefits Service Center by email at BServices@lehman.com or by phone at 5-2363 (212-526-2363).

# 2005

# BENEFITS ELECTION GUIDE

## LEHMAN BROTHERS

# Lehman Brothers Savings Plan

EXHIBIT V

---

## *Summary Plan Description*
*January 1, 2008*

**This document constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.**

*Stock + 401K – Stock Plan of Service*
  *↳ Option & Plan*

As a result of the Lehman bankruptcy, the Firm will no longer be making employer basic or matching contributions to the Lehman Brothers Savings Plan. Effective with the 2008 plan year, all employer basic and matching contributions have ceased. You may continue to make your own elective deferrals including Roth contributions to the Plan. If you have any questions about your Plan participation or account information, you can log on to www.401k.com or call the Service Center at 866-LEHMAN6.

This document is a Summary of Material Modifications (SMM), which revises the explanation of the Plan set forth in the Summary Plan Description and should be kept together with your copy of that document. You are entitled to request a paper copy of this SMM at no cost through either the website or phone line referenced above.

3.LB-C-765B.100

9/29/12 @ 8:41am
SS#
password # ?   Reset.) dob
              2) grad hs
Acct: 7N552 – Leave of     3) hawley1234 ⟨Keypad.⟩
absence 2001 (May 9)           on Line
but Returned in 93.       42753 9/234

⟮ Benefits – Lynn Peutch @ Fidelity Investments 866-534-6266 ⟯ LB PLAN Acct #  BMR

EFFECTIVE
August
20, 2012
LB
→ Residual balance was transferred LB Plan 7N451
~~transferred to~~→ Neuberger Acct #
20830 ———→ or Aura Bank.

Acct # 01764, but I have 0 balance. Status code is L for BMR – Leave of absence. I'm

Still active w/ Leave of absence on May 9, 2001. Lehman never updated employee profile to show return of employment in 1993 – bridging me for full benefits.

BMR is L STATUS
Lehman's → STATUS CODE: L (Leave of absence) if active can contribute
LT DISABILITY: D (Disability)
: T (Terminated)

www.wa.bac.gov
Fidelity No longer pension now w/ BBC.
2009 – Pens plan no longer w/ Lehman Bros.
1-800-400-7242
Corp.

# LEHMAN BROTHERS

**March 7, 2013**

Re: **Changes to Lehman Brothers Savings Plan**

**Dear Lehman Brothers Savings Plan Participant:**

The Lehman Brothers Savings Plan is a key benefit, and it's important that you're informed about changes to the Plan. The changes described in this Notice will take place without any action required on your part.  However, if you wish to modify your current decisions as a result of this change, please log in to Fidelity NetBenefits® at https://netbenefits.fidelity.com or contact the Lehman Brothers Retirement Service Center at 1-866-Lehman6 (1-866-534-6266).

**If you would like a paper version, please contact the Lehman Brothers Retirement Service Center at 1-866-Lehman6 (1-866-534-6266).**

**Plan Administrative Fees and Expenses**

Plan administrative fees may include legal, accounting, trustee, recordkeeping, and other administrative fees and expenses associated with maintaining the Plan. The following **change is** being made:

Effective April 15, 2013, a new plan administration fee will be added to the Plan in the amount of $62 per year. The fee is charged by Fidelity to provide administrative and recordkeeping services to the Plan and will be determined by the Plan's investment options share of revenue from their expense ratios which offset recordkeeping costs. The revenue shared from the investment option expense ratios may not cover the entire cost of recordkeeping the Plan.

Beginning later this year, your quarterly statement may include a Plan Administration Fee to cover the shortfall of no more than $15.50 per quarter. Current projections indicate the fee charged each quarter will be approximately $5.00, which is subject to change. The Plan Administration Fee that is charged may vary from quarter to quarter due to differences in the Plan's operating costs or differences in the fees collected from the investment options in the Plan.

**Please keep in mind that fees are subject to change.  If any individual fees are actually deducted from your account, they will be reflected on your Plan account statement.**

Brokerage services are provided through Fidelity Brokerage Services LLC, Member NYSE, SIPC, 900 Salem Street, Smithfield, RI 02917

Fidelity Investments Institutional Operations Company, Inc., 82 Devonshire Street, Boston MA 02109

642230.1.0                                                              3.EPCP74452657MC.100

4.EPCP74452657MC / 3.EPCP74452657MC                    4.10BW14569E2 / R103220690 / 001002811





October 2013

Re: **Changes to the Lehman Brothers Savings Plan Investment Line-up**

Lehman Brothers periodically reviews the Lehman Brothers Savings Plan to make sure it continues to help you meet your retirement and financial goals. As a result of a recent review, Lehman Brothers has decided to make the following changes to the Lehman Brothers' investment lineup.

The changes described on the following pages will take place without any action required on your part. However, if you are not satisfied with how your current investment elections will be modified, you will have the opportunity to make changes. Go to the "What Do I Need to Do?" sections to learn more.

# CHANGES TO THE LEHMAN BROTHERS SAVINGS PLAN

## Investment Options Being Removed

When the market closes (generally 4:00 p.m. Eastern time) on November 12, 2013, two investment options offered through the Lehman Brothers Savings Plan will no longer be available. As a result, all existing balances and future contributions will be transferred to current investment options. See the chart below for details.

The transfer of balances will appear as an exchange on your account history and quarterly statement. You may also receive a prospectus as a result of this transaction.

| Old Investment Options | | Existing Investment Options |
|---|---|---|
| Nueberger Berman Genesis Fund Instiutional Class<br>Ticker Symbol: NBGIX<br>Expense Ratio: 0.86% | → | RS Partners Fund Class Y<br>Ticker Symbol: RSPYX<br>Expense Ratio: 1.20% |
| Nueberger Berman Socially Responsive Fund<br>Ticker Symbol: NBSLX<br>Expense Ratio: 0.71% | → | MFS Value Fund Class I<br>Ticker Symbol: MEIIX<br>Expense Ratio: 0.71% |

Expense Ratio as of September 30, 2013.

## What Do I Need to Do?

If you are satisfied with how your current investment elections will be modified, as shown above, no action is required on your part. Lehman Brothers has worked carefully to move the existing balances and future contributions to investment options that they believe have the most similar investment objectives.

However, if you do not want these changes to take place, you must contact Fidelity Investments and complete a change of investments. Log on to Fidelity NetBenefits® at https://netbenefits.fidelity.com or call 1-866-Lehman-6 (1-866-534-6266), Monday through Friday, between 8:30 a.m. and midnight Eastern time.

4.EPCP7445215/M2 / 3.EPCP7445215/M2                    4.10BW14569E2 / R110119031 / 001000016

**Aetna cares about the environment**

## Access Aetna's Preferred drug Information online

For up-to-date preferred drug (formulary) information, visit www.aetna.com/formulary. If you prefer a paper copy of the Aetna Preferred Drug Guide, please detach and mail the business reply card to the right.

2014

08





Received 10/23/13

32916318

☑

**YES, I would like a paper copy of the *Aetna Preferred Drug Guide*. Please send my copy to the address below.**

```
******************AUTO**3-DIGIT 337
L08  125792        701  495
Roth Barbara
1216 S Missouri Ave Unit 414
Clearwater FL 33756-9011
```



Quality health plans & benefits
Healthier living
Financial well-being
Intelligent solutions

**Updates to your pharmacy benefits**

**aetna**

Plan updates beginning in 2014. More details inside

EXHIBIT W



**Notice Date:**
September 2013

**Need more Information?**
Visit www.aetna.com and log in to Aetna Navigator®, your secure
member website.
Or call the appropriate toll-free number on your member ID card.

# Changes to your prescription drug coverage for 2014

Thank you for being an Aetna member. We value your membership and
want to help you get the most from your pharmacy benefits coverage.

Below are details about upcoming plan changes and drug safety
updates. Our Preferred Drug (formulary) List is meant to give you a
general view of drugs covered by your plan. Changes are based on the
latest medical findings as well as information from the U.S. Food and
Drug Administration (FDA) and drug makers.

### What's changing?

To help encourage appropriate, safe and cost-effective drug therapy, we
are enhancing your plan's precertification, quantity limits and step
therapy programs. The enclosed chart shows the changes that will begin
January 1, 2014.

The drugs on our Preferred Drug List are chosen based on sound
medical data, safety and cost. For 2014, we are adding some brand-
name and generic drugs while other drugs are being removed. One
reason changes may happen is when a brand-name drug's patent
expires during the year and a generic becomes available. We remove
the brand from the list and replace it with its less-costly generic
equivalent.

If your prescriptions are affected by any of these updates, the amount
you pay for these drugs may also change. Talk to your doctor about your

08_ANOC2014_OPEN_NO_PREC_NO_STEP-final

**BARBARA M. ROTH (formerly FARAHAT)**
**1216 S. MISSOURI AVENUE, #414**
**CLEARWATER, FL 33756**
**727-348-4751**
**E-MAIL:  bmral14@yahoo.com**

November 11, 2013

***VIA PRIORITY MAIL/SIGNATURE CONFIRMATION***
Honorable James M. Peck
United States Bankruptcy Judge
Southern District of New York
One Bowling Green, Courtroom 601
New York, NY 10004
212-668-2870

RE:     **Lehman Brothers Bankruptcy Case #08-13555**
        **July 19, 2013** – Lehman Brothers ("LB") Letter - Aetna Insurance Coverage for Former Employees on
        Long Term Disability ("LTD"); Termination of Major Medical Benefits Premiums (the "BENEFITS"),
        Effective, December 31, 2013 - **(Exhibit A)**

        **October 26, 2009** – Lehman Brothers ("LB") Letter – Notice of Termination of LTD Employee Benefits to
        Employees under LTD as of December 3, 2009 - **(Exhibit B)**.

Dear Honorable James M Peck:

Per my telephone discussion with Ms. Linda Calveron on Tuesday, October 22, 2013, regarding Lehman Brothers
Bankruptcy Case #08-13555; please find enclosed pertinent documentation pertaining to Lehman Brothers Holdings
Inc. ("LBHI") Bankruptcy Case, under Chapter 11 of the US Bankruptcy Code, filed September 15, 2008, whereby
Lehman Brothers, July 19, 2013, letter states, Termination of my Long Term Disability ("LTD") Major Medical
Benefits Premiums (the "BENEFITS") through Aetna, on December 31, 2013 – **(Exhibit A)**, but will continue to
fund my Long Term Disability ("LTD") Monthly Salary Payments through UNUM.    As previously testified via
CourtCall, November 16, 2011, I contemplate I was vested in the Company after five (5) years of service, whether
active, disabled or retired and entitled to Benefits, under the LB Plan.  I received the same benefits as an active
employee and Lehman Brothers paid my premiums according to the Plan Description.   The **Lehman Brothers**
**Medical Benefits LTD Recipients Summary Plan (Exhibit K)**, as well as, the Summary Plan Descriptions, prior
to 1994, doesn't say anything about the Company has the right to amend, change or terminate medical benefits or
premiums, especially since I worked at Lehman Brothers Kuhn Loeb Rhoades Inc. from 1983 to 1995, whereby the
Company went through a handful of mergers and acquisitions-IPO's.  Please see **Ms. Marianne Rasmussen's**
**testimony**, Former LB Chief Benefits Human Recourses Executive, 24 years of service (1994-2001), Transcript P.
45, Line 9 – P. 48, Line 9 **(Exhibit F)**, which summarizes such.  In addition, also enclosed for your review are
various Lehman Brothers Letters from Human Resources **(Exhibits L-Q's)**, as well as, an outline overview of my
Employment Benefits and Highlight Recap since the commencement of the Bankruptcy **(Exhibit R)**, to substantiate
my claim, that I am entitled to continue to receive my medical benefits, as I believe I'm vested in the Company, as
Lehman Brothers paid my medical premiums according to the LTD Benefits Plan and Summary Plan Descriptions
prior to 1994.   Hence, I worked in the Futures/Commodities Division, which was purchased and acquired from
Barclays Capitol and aren't they accountable for the P&L #00266 cost, as they acquired that Department/Division?

**To recap** since such, LB has <u>funded</u> all my LTD Benefits Premiums – inclusive of medical, prescription drug,
dental, vision, life insurance, as well as, my LTD monthly salary payment premiums, without any cost to me, with
the utilization of the Lehman Health Care Trust (the "LHCT") – Voluntary Employees' Beneficiary Association (the
"VEBA"), established on September 12, 2008, with  $95M **(Exhibit B)** and accordingly until the funds are
exhausted, as promised per our telephone discussion, December 15, 2009, by Ms. Carol Rado, LB Employee,
Benefits Department, Trustee for the **VEBA**, which now has a balance of $20M and will only fund active employees
working on the Bankruptcy.  Upon receipt of the initial letter, October 26, 2009, **(Exhibit B)**, Lehman claims, they
terminated my status as employee, which resulted in loss of coverage as employee, but I wasn't informed properly
and per my follow-up telephone call with Ms. Carol Rado, she stated on December 15, 2009, "I have good news,
your reinstated, same coverage in 2010, as last years medical benefits and without any interruptions to your
coverage and premiums costs to you.   You will continue with health benefits coverage and everything remains the
same, so I believed I wasn't terminated and nothing changed regarding my status, as well as, two (2) LB letters
dated January 11, 2010, (i) addressed to Dear LB Plan Participant and (ii) Dear Lehman Brothers Retiree **(Exhibit**
**J)**. Please see, **Mr. Steve Delaney's testimony**, Retiree, Lehman Brothers, employment 1983, Transcript, P. 38,
Line 23 – P. 45, Line 5 **(Exhibit F)**.

Barbara M. Roth
Page -2-

On October 21, 2011, a Notice of Motion and Settlement Agreement ("NOM&SA"), Regarding the LHCT and VEBA, (Exhibit C), was filed whereby LB seeks reimbursement for eligible benefits LBHI paid on behalf of retirees, former employees on LTD and currently employees beginning April 1, 2009, approximately $25M. I received the letter on October 25, 2011, which allotted me only eleven (11) business days to file an objection letter and notification of Hearing. As a result, I was unable to secure legal representation, how to file, case numbers and pages missing from the letter, as well as, two (2) hours prior to my testimony at the Hearing, the November 16, 2011 letter - Debtors' Reply to Objections (Exhibit E) was received; Barbara Roth ID 4560260 vs. Lehman Brother's Holding Inc ("LBHI"), et al, - LB Bankruptcy Case #08-13555 – via CourtCall, (Exhibit D). Attached is a partial transcript, P. 49, Line 3 to P. 52. Line 14 (Exhibit F); with my revised transcript revisions request to Veritext (Exhibit G). **What are the applicable governing laws with regard to notification of legal instruments; being served by certified mail to confirm receipt, as in the past I didn't receive mailings and pages and information were missing? Aren't LB & the Debtors Attorney required to disseminate legal information within 90 days notice of such termination and are they in violation of applicable laws, as per my understanding** of the statement from the Transcript, 90 days Notice of Termination of Benefits, is sufficient time to inform Participants, Transcript P. 35 Line 7 & November 23, 2011- (Exhibit F).

Per the November 23, 2011, letter (Exhibit H), LBHI had a fiduciary responsibility to provide (i) reports to former employees on LTD ("LTD, also referred to as the "Retirees") regarding the status of medical benefits, balance and estimated funds remaining in the VEBA Fund, of the exemption application that LBHI intends to file with the DOL, vested medical Benefits under the Group Benefit Plan per Section 1114 of the Bankruptcy Code-whereby LBHI cannot terminate vested medical benefits; as terminating a vested individual medical plan, without going through 1114 process if vested, would be a violation of ERISA Laws, unlike bankruptcy (Exhibit F); (ii) vested medical benefits due diligence information and conclusions, per the Group Benefits Plan, which LB failed to disseminate. **What are my ERISA and legal rights regarding the law, as LB is in violation of the Court and the Department of Labor? Both my Medical and LTD Benefits are Group Insurance Employee Benefits-the Benefits Plan and as outlined in the documents in my possession, I believe I was vested in the Company (Exhibits K-R).**

The November 29, 2011, letter from Leonard H. Gerson, Esq., Trial Attorney, U.S. DOL, (Exhibit F/Page 1 & 2) that the Debtors' proposal to: (i) seek special counsel to prepare analysis as to which, if any, of the Retirees and LTD collectively, the ("Retirees") are vested (the "**Vested Right Analysis**") and (ii) have LBHI provide Retirees with reports regarding the status of their medical benefits" (the "**LBHI Report Proposal**") is a viable approach and the Secretary would like to see the **retention application** and also be provided with a **copy of analysis.** I contacted Leonard Gerson, Esq. previously and on July 23, 2013, regarding termination of my benefits and LBHI's failure to notify me of my vested rights or contact me regarding counsel's findings or request of proof of being vested, as well as, obtain a copy of the vested right analysis (Exhibit S) and LBHI Proposal, but still haven't received a response from all interested parties involved.

**LBHI Report Proposal falls short of what the Court requested. First,** it appears LBHI has been the primary provider of information to the Retirees in the past, as many responses to the Motion reflected considerable confusion as to the status and right of the Retirees, the LBHI Report Proposal does not explain how it will address these past failures and continues to fail to release or disseminate any information about the status of our vested rights or counsel representation or status -- a basic goal of Section 1114 may be accomplished by the appointment of special counsels pursuant to Your Honor's powers under section 105(a) of the Bankruptcy Code, so that those separate classes (current employees, retirees and those on LTD) can be advised in a thoughtful and understandable way as to what their rights are. Please see transcript P. 56, Lines 4-6 (Exhibit F).

Upon receipt of LB's letter dated, Nov 29, 2012, regarding – 2013 Medical Benefits through Aetna (Dechert Counsel LLP to advise LB (Exhibit I), I contacted LB, Ms. Carol Rado, and she stated, "Counsel would contact me for information about being vested and the documentation I have in my possession and would inform me of it's findings based on its review of the relevant documentation and applicable law." Hence, as of November 29, 2012, I waited to hear from LB and the Counsel to represent and provide us, the "Retirees/LTD" regarding our vested rights and what category we fall upon. **However, such never transpired and upon receipt of the July 19, 2013 letter,** notifying me of termination of my medical benefits, effective December 31, 2013, **I telephoned Ms. Rado, on July 23, 2013,** and objected to termination of my LTD medical benefits and requested being reinstated; that I was vested and entitled to my Benefits, with premiums paid by LB and was denied such and further advised to find secondary insurance for 2014, at my own expense.

Barbara M. Roth
Page -3-

Furthermore, to reiterate, I requested the Lehman Brother's Vested Rights Analysis, Lehman Brothers Proposal documentation be disseminated, however, to date, I still didn't receive such, nor has Dechert LLP Counsel ever contacted me to review any documents in my possession to substantiate my claim. As a result, once again, I contacted Leonard H. Gerson, Esq., Dept of Labor and notified him of the Termination Letter received, as well as, Lehman Brothers and Dechert failure to provide any scheduled or updated documentation with regard to the VEBA, the VRA or LB Proposal, as promised and outlined in the legal documents by Lehman Brothers and or the Debtor's Attorney.

Hence, I contacted Leonard Gerson, Esq., Dept. of Labor, on July 25, 2013, August 16, 2013, September 4, 2013, September 9, 2013 and scheduled a conference call on September 11, 2013, regarding Lehman Brothers Letter July 19, 2013 - Aetna Insurance Coverage for Former Employees on Long Term Disability ("LTD"); Termination of Major Medical Benefits Premiums (the "BENEFITS"), effective, December 31, 2013 - (**Exhibit A**), which he requested I e-mail to him for review (**Exhibit T**). Furthermore, I informed him that Lehman Brothers, the Debtor's Attorney, Dechert Counsel LLP, never contacted me to disseminate documentation to substantiate my claim and validate I'm vested in the Company, nor did they provide any information regarding Dechert's findings of the **Vested Right Analysis Report**, dated January 28, 2013, with a cover letter to your attention, dated January 29, 2013, (**Exhibit S**), which was forwarded to me, per my request, by mail, by Leonard Gerson, Esq. on September 13, 2013, nine (9) months after the review by Dechert LLP Council and (ii) whereby LBHI was to provide to any previous employees, retirees or LTD, as outlined in the legal documentation and (ii) the "**LBHI Report Proposal**", including, the status of medical benefits, balance and estimated funds remaining in the VEBA Fund, of the exemption application that LBHI intends to file with the DOL, vested medical Benefits under the Group Benefit Plan per Section 1114 of the Bankruptcy Code-whereby LBHI cannot terminate vested medical benefits; as terminating a vested individual medical plan, without going through 1114 process if vested, would be a violation of ERISA Laws, unlike bankruptcy (**Exhibit F**) per Leonard Gerson, Esq.

LBHI failed to abide to disseminating information in the past and present, as outlined in the court proceedings and legal documents. The only notification I received from them regarding such, was Lehman Brothers Letter July 19, 2013 - Aetna Insurance Coverage for Former Employees on Long Term Disability ("LTD"); Termination of Major Medical Benefits Premiums (the "BENEFITS"), effective, December 31, 2013 - (**Exhibit A**). I worked for the Company for a long duration of time and have a large volume of documents. If you need any additional supporting documentation to substantiate my claim to entitlement to continue to receive my Long Term Disability Medical Benefits, I would be more than happy to provide you with such.

I would like to take the opportunity to thank you in advance for your time, attention and cooperation and I look forward to hearing a favorable and satisfactory response to such.

Sincerely,

Barbara M. Roth
BMR/Enclosures: 131 (single and double sided)

**July 19, 2013 Letter** – LB Termination of Aetna Insurance Coverage Medical Benefits Premiums (the BENEFITS"), for Former Employees on LTD (**Exhibit A**)
**October 26, 2009 Letter** –LB– Notice of Termination of LTD Employee Benefits to Employees under LTD as of December 31, 2009 (**Exhibit B**).
**October 21, 2011 Letter** - LBHI - Notice of Motion and Settlement Agreement ("NOM&SA"), Regarding LHCT–VEBA (**Exhibit C**).
**November 16, 2011** Barbara Roth vs. Lehman Brother's Holding Inc ("LBHI"), et al, - LB Bankruptcy Case #08-13555 – NOM&SA - LHCT and VEBA and Telephone Court Conference, ID4560260, Appearance, a Division of CourtCall Confirmation and Invoice (**Exhibit D**)
**November 16, 2011 Letter** – Weil, Gotshal & Manges LLP - LBHI, et al, Debtors - Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) and LBI, Debtor - Case No. 08-01420 (JMP) (SIPA) – Debtors' Reply to Objections, etc. (**Exhibit E**)
**November 29, 2011 Letter** - U.S. DOL, Leonard H. Gerson, Esq, Trial Attorney - LBHI, et al, Debtors - Chapter 11 Case No. 08-13555 (JMP) (Jointly administered) – Letter to Honorable James M. Peck and Transcript. (**Exhibit F**)
**December 15, 2012 E-Mail** – Barbara Roth's Revised Transcript Request to Dion Rupa at Veritext, P. 50-51, (**Exhibit G**)
**November 23, 2011 Letter** – Weil, Gotshal & Manges LLP - LBHI, et al, Debtors - Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) and LBI, Debtor - Case No. 08-01420 (JMP) (SIPA) – Letter to Honorable James M. Peck, United Bankruptcy Judge (**Exhibit H**).
**November 29, 2012 Letter** – 2013 Medical Benefits through Aetna (Dechert Counsel LLP to advise LB) – (**Exhibit I**)
**January 11, 2011** – Letters (1) – LBHCT - Medical Coverage Though COBRA and Aetna – Dear LBPP (Active) (**Exhibit J**) & **January 11, 2011** – Letters – (2) LBHCT – Retiree Medical Coverage through Aetna – Dear LB Retiree (Active-Letter 5) (**Exhibit J**)

Barbara M. Roth
Page -4-

**Lehman Brothers Letter** – Emmanuel Callias, Assistant VP, Human Resources – January 11, 2007 - **Medical Benefits** – **Lehman Brothers** Long Term Disability ("LTD") Recipients Benefits Summary Plan; Facsimile Cover Letter – September 9, 1994; **Shearson Lehman Brothers, Inc.** Group LTD Policy – January 1, 1993 & **Lehman Brothers Inc.**, LTD Benefits Summary and Group LTD Claim Form – March 1994 **(Exhibit K)**

**Lehman Brothers Letter** – Julie Kagan, VP, Fixed Income Human Resources – Employment Verification & LTD Benefits Date **(Exhibit L)**

**Lehman Brothers Letter** – Julie Kagan, VP, Fixed Income Human Resources – August 31, 1994 – Employment and Group Insurance **(Exhibit M)**

**Lehman Brothers Letter** – Natalie Nance, Senior Benefits Administrator, Group Insurance Department – February 17, 1995 – LTD and Medical Benefits **(Exhibit N)**

**Lehman Brothers Letter** – April 1, 1995 – Group Insurance Confirmation **(Exhibit O)**

**Lehman Brothers Letter** – Julie Kagan, VP, Fixed Income Human Resources – September 22, 1995 **(Exhibit P)**

**Lehman Brothers Letter** – Lauren Carver, Senior Benefits Specialist/Assistant Manager, Group Insurance/Group Insurance Administration – May 26, 1998 & August 5, 1998 – Eligibility for Medicare and LB Aetna Medical Coverage – Secondary & Medicare Primary Coverage Confirmation **(Exhibit Q)**

**Barbara Meryl Roth Outline** – Overview of My Employment Benefits and Highlight Recap since commencement of Bankruptcy Hearing Court Call Appearance, November 16, 2011 **(Exhibit R)**

**Vested Rights Analysis ("VRA")** – Oringer **(Exhibit S)**

**Leonard H. Gerson, Esq. & Barbara Meryl Roth E-Mails** – **(Exhibit T)**


cc: Linda Calveron – 212- 668-2870 (x-4055) &
    Mary Lopez (x-3670)
    C/O Honorable James M. Peck
    United States Bankruptcy Judge
    Southern District of New York
    One Bowling Green, Courtroom 601
    New York, NY 10004


    Leonard H. Gerson, Esq. (without Exhibits A-T)
    Plan Benefits Security Division, Office of the Solicitor
    Department of Labor
    P.O. Box 1914
    Washington, DC 20013
    (202) 693-5615
    E-Mail: Gerson.Leonard@dol.gov


    Ms. Carol Rado
    Veba Trustee – Human Resources
    Lehman Brothers Holdings Inc.
    1271 Avenue of the Americas, 39th Fl
    New York, NY 10020
    646-285-9237 (O)
    E-Mail: Carol.Rado@LehmanHoldings.com

# LEHMAN BROTHERS

EXHIBIT A

July 19, 2013

Barbara Roth
1216 S. Missouri Avenue
Apt. 414
Clearwater, FL 33756

RE:  Aetna Insurance Coverage for Former Employees on Long-
Term Disability

Dear Barbara:

You are receiving this letter because you are enrolled in coverage made available to former
employees on long-term disability by Aetna for 2013.  While the Lehman Health Care Trust (the
"VEBA") has funded a significant portion of your medical premiums for 2010, 2011, 2012 and
will continue to do so through the end of 2013, such funding is scheduled to end on December
31, 2013.  We believe that this notification gives you sufficient time to consider alternative
arrangements for 2014 and subsequent years.

Although Lehman will not provide funding for premiums after 2013, we have arranged to offer
you access to the services of a Medicare plan selection service, Allsup Medicare Advisors, to
assist you in making an informed decision about choosing an appropriate healthcare coverage
option for 2014.  A representative from Allsup will contact you directly to discuss the services
they can provide in this matter.   Note that utilization of Allsup's services is strictly optional and
payment of any premiums for coverage selected based on Allsup's review will be solely your
responsibility, although Lehman Brothers will bear the cost of Allsup's services.

As a recap of what has occurred to date, at the end of 2009, Lehman terminated your status as an
employee, which resulted in a loss of your coverage as an employee under the Lehman medical
plan and in your right to voluntarily elect continued medical coverage at your sole expense under
such plan for up to three years (*i.e.*, until December 31, 2012).  Our records indicate that you
continued medical coverage (oftentimes referred to as "COBRA coverage") through December
31, 2012.  Although Lehman was not required to share the cost of your COBRA coverage, the
Lehman Health Care Trust (the "VEBA") contributed to the cost of such coverage for 2010,
2011 and 2012.   In addition, although as of December 31, 2012, your right to COBRA coverage
expired and you were no longer eligible to continue coverage under Lehman's medical plan,
Lehman arranged for Aetna to directly and separately offer medical insurance coverage on an
individual basis to you for 2013 (such coverage is offered by Aetna and not by Lehman or under
any Lehman employee benefit plan).  In addition, the Lehman Health Care Trust (the "VEBA")
contributed and will continue to contribute to the cost of such coverage through December 31,
2013.

Please contact the Lehman Brothers HR Service Center by telephone (646-285-9800 or 1-866-
994-6381) or email (hrservices@lehmanholdings.com) if you have any questions.

LEHMAN BROTHERS HOLDINGS INC.
1271 AVENUE OF THE AMERICAS, 39TH FLOOR
NEW YORK, NY 10020




*Allsup Medicare Advisor*®
*Plan Selection Service*

## Allsup Experts are Ready to Help

The process of finding the Medicare plan that works best for you can be time-consuming and overwhelming without sufficient guidance. As trusted experts who specialize in disability and who helped you obtain your SSDI benefits, we understand your unique needs and how to simplify the complicated process of selecting Medicare coverage. *Allsup Medicare Advisor* can remove a significant burden during the Medicare plan selection process by providing the knowledge and guidance needed to help you easily and confidently choose the plan that's right for you.

*Allsup Medicare Advisor* combines live, one-on-one personal guidance from specialists with convenient and secure access to online web features where you can:

- Review activity and check account status
- Update contact information
- View, download and print your completed customized report
- Participate in the *Allsup Medicare Advisor* referral program
- Access news and helpful information about Medicare

**Call us today at (866) 521-7655 to learn more about the *Allsup Medicare Advisor* plan selection service, or visit medicare.allsup.com.**



*Sterline (left) with Allsup employee Jennifer (right). Sterline is an Allsup Medicare Advisor customer.*

Helping you choose the Medicare coverage that best meets your healthcare needs.



FSC
www.fsc.org
MIX
Paper from responsible sources
FSC® C016008

TAMC.CC 1112 18

*Allsup Medicare Advisor*®
(866) 521-7655
medicare.allsup.com



Allsup
Life Reclaimed



Allsup
Life Reclaimed



## We Make Medicare Simple

*Allsup Medicare Advisor* is a Medicare plan selection service. We do not sell Medicare plans. With help from *Allsup Medicare Advisor*, you'll be able to make a more informed decision about choosing the healthcare coverage that's right for you.

One of the major benefits of receiving your Social Security Disability Insurance (SSDI) award is qualifying for Medicare coverage. But understanding which Medicare options could work best can be confusing and frustrating. *Allsup Medicare Advisor* simplifies the Medicare plan selection process by educating you on the choices that are available and identifying the plans that best meet your medical and financial needs.

*Allsup Medicare Advisor* is a fee-based service that offers three options:

- *Allsup Medicare Advisor* Complete offers research and analysis of all coverage options including traditional Medicare, Medicare Advantage plans and Medicare Part D, with or without Medigap

- *Allsup Medicare Advisor* Medigap and Part D reviews options for Medigap plans in combination with traditional Medicare and Medicare Part D

- *Allsup Medicare Advisor* Part D offers a closer look at Medicare Part D plans

## Understanding Medicare Options

Traditional Medicare usually is not costly (Part A for hospital coverage is free; Part B for medical coverage is relatively inexpensive), but coverage can be limited — which is why many people seek out supplemental insurance (Medigap) and prescription drug coverage (Part D), both at an extra cost.

Medicare Advantage plans, at a minimum, cover everything offered by traditional Medicare Parts A and B. Many Medicare Advantage plans also include dental care, hearing and vision screening, and prescription drug coverage, often at a minimal cost.

Medicare Part D (prescription drug coverage) plans are not provided within the traditional Medicare program. There are hundreds of available plans to choose from and some plans' formularies, or list of covered drugs, are more extensive than others.

Medigap (supplemental insurance) plans cover the gaps in traditional Medicare, usually covering the cost of co-pays, deductibles and other Medicare-related costs.

## An Unbiased Look at Medicare Options

*Allsup Medicare Advisor* reviews your specific needs and preferences and examines all available Medicare options to provide an in-depth, objective analysis. We do not accept or receive any fees or commissions from Medicare Advantage or supplement insurance plan providers.

## Personal Guidance from Experts

*Allsup Medicare Advisor* provides the knowledge and guidance needed to understand and choose the best available plan at an affordable price. Our knowledgeable specialists do all the research and hard work, so you can get a clear, concise view of real and comparable costs, such as premiums, deductibles, co-pays and coverage limits.

The analysis and results produced by *Allsup Medicare Advisor* are heavily based on the information provided by individual subscribers to the service. As such, Allsup assumes no liability resulting from inaccurate, incomplete, or invalid information provided by *Allsup Medicare Advisor* subscribers. Subscribers are also solely responsible for coordinating their Medicare coverage with any benefits and health insurance coverage offered through an employer or otherwise. Additionally, plan information provided in the report is obtained from the Medicare plans and the Centers for Medicare & Medicaid Services, which manages the plan data. Allsup is not liable for inaccurate, incomplete or invalid information supplied by Medicare or participating Medicare plans.

Allsup does not provide tax, legal, investment, financial planning or medical advice or counsel under the *Allsup Medicare Advisor* and related services. You are responsible for making all decisions with respect to the products or services you utilize under the *Allsup Medicare Advisor*, including but not limited to selecting a Medicare plan that best matches your needs, and for obtaining any personal tax, legal, investment, financial planning, medical or other advice or counsel that you believe is necessary or advisable with respect to such products or services. To review the full *Allsup Medicare Advisor* terms and conditions, visit www.amaterms.com. If you would like to have the terms and conditions mailed to you, please let us know and we will be happy to send you a copy.

As trusted experts who specialize in disability, we understand the daily physical and mental challenges that are faced by those with a disability. With that in mind, we know how to simplify the complicated process of selecting the Medicare coverage that works best for each individual.

Choosing *Allsup Medicare Advisor* as your Medicare plan selection service means you'll receive:

- Access to a Medicare specialist who can answer your questions and assess your specific healthcare needs.

- Help understanding all your Medicare options and how certain types of Medicare plans can benefit you.

- Information on the plans most likely to provide the coverage you need.

- Unbiased and impartial analysis of all coverage options available in your local area.

- An easy-to-understand customized report providing you with the details needed to evaluate your coverage options and make an informed decision.

- Assistance enrolling in the Medicare coverage of your choice.

- Alerts about upcoming enrollment periods and the opportunity to re-examine your coverage options annually (available at an additional cost).

## Making an Informed Choice

Choosing the wrong coverage can be a costly mistake and can result in thousands of dollars of unnecessary out-of-pocket expenses. *Allsup Medicare Advisor* considers the cost of your healthcare coverage and budget to determine which plan options work best. With assistance from our specialists, you can avoid the confusion, worry and often expensive mistakes involved in choosing a Medicare plan by yourself.

*Allsup Medicare Advisor* can help you choose Medicare coverage wisely. Call us today at (866) 521-7655, or visit medicare.allsup.com.

# LEHMAN BROTHERS

October 26, 2009

## NOTICE OF TERMINATION OF LONG-TERM DISABILITY EMPLOYEE BENEFITS TO EMPLOYEES UNDER LONG TERM DISABILITY AS OF DECEMBER 31, 2009

You are receiving this letter because you are a participant under Lehman Brothers Holdings Inc. Group Benefits Plan sponsored by Lehman Brothers Holdings Inc. ("LBHI") on behalf of itself and its subsidiaries ("Lehman"). Pursuant to the LBHI Group Benefits Plan, Lehman provides health care benefits, including medical, vision, dental, life insurance and other similar benefits to retirees and non-active employees on long-term disability (the "LTD Employee Benefits").

On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of the United States Bankruptcy Code. It has become clear that Lehman will not emerge from chapter 11 on a size and scale comparable to its pre-petition enterprise. Moreover, given LBHI's funding in trust prior to the commencement of LBHI's chapter 11 case for medical benefits, among other things, generally described at the end of this letter, continued funding would represent, from LBHI's perspective, duplicative expenditure of such benefits. Accordingly, LBHI has determined that it can no longer continue to pay the costs associated with maintaining the LTD Employee Benefits.

**Please be advised that, consistent with the terms of the LBHI Group Benefits Plan, LBHI is hereby exercising its right to terminate all LTD Employee Benefits effective December 31, 2009 (other than continuation of long-term disability payments in accordance with the Long-Term Disability Insurance contracts).** In connection with the cessation of the LTD Employee Benefits coverage, LBHI is treating your status as a non-active employee to concurrently terminate on December 31, 2009.

<u>Availability of Alternative Coverage</u>

LBHI believes that a December 31, 2009 effective date allows sufficient time for you to consider alternative arrangements. In addition, you are eligible for continued coverage of LTD Employee Benefits pursuant to the Consolidated Omnibus Budget Recovery Act of 1985, as amended ("COBRA"). If you would like to participate in such coverage, LBHI will take all actions that may be reasonably necessary and appropriate to allow you to obtain such benefits, provided that the cost associated with coverage under COBRA is borne entirely by you or someone on your behalf. Additional information regarding your rights under COBRA and the applicable election forms will be provided to you by December 31, 2009.

Additionally, if you would like to convert your life insurance, please contact the HR Service Center at 1-866-994-6381 before 11/30/2009 and request a coverage form.

LEHMAN BROTHERS HOLDINGS INC.

1271 AVENUE OF THE AMERICAS 38TH FLOOR NEW YORK NY 10020

PHONE: 646 333 8311 FAX: 646 758 1415 EMAIL: WUVINO@LEHMAN.COM

<u>The VEBA Trust</u>

      With respect to the pre-chapter 11 funding referred to above, on September 12, 2008, LBHI funded in excess of $95 million to its wholly owned subsidiary Lehman Brothers Inc. ("LBI") to enable it to establish a trust (the "Trust") intended to qualify as a voluntary employee beneficiary association or a "VEBA" under section 501(c)(9) of the federal tax code. The purpose of the Trust was to fund medical, dental, prescription drug, death and other eligible benefits for participants in the LBHI Group Benefits Plan eligible for benefits.

      On September 19, 2008, a liquidation proceeding under the Securities Investor Protection Act of 1970 with respect to LBI was commenced and James W. Giddens was appointed as the trustee to administer LBI's estate (the "LBI Trustee"). Although the Trust was initially fulfilling its intended purpose to fund eligible health and medical benefits, including LTD Employee Benefits, on or about March 6, 2009, the LBI Trustee suspended all payments by the Trust. Accordingly, to avoid an immediate halt of your LTD Employee Benefits, LBHI resumed payment of LTD Employee Benefits on or about that date. However, for the reasons stated above, LBHI can no longer continue to pay for LTD Employee Benefits.

      While we understand that there is currently approximately $45 million in the Trust, given the LBI Trustee's suspension of payments, there is significant uncertainty as to whether or not the LBI Trustee intends to use the Trust funds for payment of eligible benefits. We refer you to the following website maintained by the LBI Trustee for information regarding the status of the LBI proceeding: www.lehman-docket.com.

      We regret that this decision has been made, but under the current circumstances of a bankruptcy, LBHI cannot continue to make payments in respect of LTD Employee Benefits. LBHI has taken all reasonable steps to try to minimize any hardship that you may suffer as a consequence of this difficult determination.

      If you have any questions or concerns, please contact the HR Service Center at 1-866-994-6381.

EXHIBIT C

**NOTICE OF MOTION AND SETTLEMENT**
**AGREEMENT REGARDING LEHMAN HEALTH CARE TRUST**

Please be advised that Lehman Brothers Holdings Inc. ("LBHI") and James W. Giddens (the "SIPA Trustee"), Trustee for the SIPA Liquidation of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended ("SIPA") (the SIPA Trustee, together with LBHI, the "Parties") have reached an agreement and settlement (the "Settlement Agreement") regarding the Lehman Health Care Trust established under section 501(c)(9) of the Internal Revenue Code of 1986, otherwise known as a voluntary employees' beneficiary association (the "VEBA").

Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries (the "Debtors") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 19, 2008, the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, entered an order commencing liquidation with respect to LBI pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL) and appointed the SIPA Trustee for the SIPA liquidation of the business of LBI pursuant to SIPA § 78eee(b)(3).

In September 2008, the VEBA was established and funded with a $95 million contribution to fund the payment of eligible health and medical benefits (the "Benefits") to participants in the group health plan sponsored by LBHI (the "Group Benefits Plan"). Effective January 1, 2010, LBHI terminated the Group Benefits Plan as to retirees and arranged for Aetna Life Insurance Company to offer to these individuals, at their option, substitute health care insurance coverage through a Group Access-only Plan (the "Aetna Plan") and converted disabled employees to COBRA continuation under the Group Benefits Plan as former employees, in each case at their sole cost. The Aetna Plan is not an employee benefit plan of LBHI, and LBHI has no responsibility, obligation or liability under such insurance arrangement. Since January 2010, the VEBA has been reimbursing retirees for their premiums under the Aetna Plan and former disabled employees for the COBRA premiums under the Group Benefits Plan by directly paying such premiums on their behalf. The VEBA has been amended to permit such reimbursements to be made, but there is no obligation to continue such reimbursements. Approximately $37 million in funds remain in the VEBA. The Parties have agreed to transfer control of the VEBA to LBHI, and the Parties have agreed to release each other from certain claims.

LBHI intends to seek a reimbursement for eligible Benefits LBHI paid on behalf of retirees, former employees on long term disability and current employees beginning in April 2009, in the amount of approximately $25 million. Such amount will be set aside for LBHI and will not be used to fund insurance premiums under the Group Access-only Program for retirees or the Group Benefits Plan for former employees on long term disability. LBHI intends to use the remaining VEBA funds exceeding the set aside amount (the "Excess Funds") to continue to

fund insurance premiums of retirees under the Aetna Plan and former employees on long term disability under the Group Benefits Plan, and will simultaneously pay covered Benefits for the Debtors' current employees and any costs of administration of the VEBA, until the Excess Funds have been exhausted or Aetna discontinues the Group Access-only Program or the COBRA continuation period for former employees on long term disability expires. LBHI and LBI will not make, nor are they obligated to make, any future contributions to the VEBA.

       Although the VEBA is expected to continue to pay insurance premiums under the Aetna Plan on behalf of retirees and the Group Benefits Plan for former employees on long term disability, no payments will be made on behalf of such individuals after the VEBA funds have been exhausted or Aetna discontinues the Aetna Plan or the COBRA continuation period for former employees on long term disability expires. LBHI and LBI will not make any contributions to the VEBA and LBHI is not reinstating the Group Benefits Plan or undertaking any obligation to fund retiree and long term disability Benefits. Such costs remain the sole obligation of the individuals.

       On October 21, 2011, the Parties filed a joint motion (the "Motion") seeking approval of the Settlement Agreement. A hearing (the "Hearing") will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 on November 16, 2011 at 10:00 a.m. (Prevailing Eastern Time) to consider approval of the Motion and the Settlement Agreement.

       If you choose to object to the Motion and the Settlement Agreement, you must file a written objection, with proof of service, with the Clerk of the Court and mail courtesy copies to: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 610; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Ave., New York, New York 10153, Attn: Richard P. Krasnow, Esq., and (iii) attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Jeffrey S. Margolin, Esq., so as to be received by no later than November 9, 2011 at 4:00 p.m. (Prevailing Eastern Time).

       **If you do not object to the approval of the Motion and the Settlement Agreement, you do not need to attend the Hearing.** Your failure to respond will be deemed to be a no-objection to the Motion and the Settlement Agreement. You may wish to consult legal counsel to the extent you deem appropriate.

       If you would like to obtain complete copies of the Motion and/or the Settlement Agreement and its related documents, please visit www.lehman-docket.com for free access to such documents. Hard copies of these documents can also be requested from the Lehman Legal Hotline at lehmanteam@weil.com or 212-310-8040.

**EXHIBIT D**

| | |
|---|---|
| **ATTORNEY OF RECORD:**<br><br>Barbara Roth<br><br>Barbara Roth - In Pro Per/Pro Se<br><br>Phone: (727) 348-4751  Fax No: ~~(727) 725-6741~~  727-998-8328<br><br>BMRoth14@yahoo.com<br><br>State Bar No. _____<br><br>ATTORNEY FOR (Name)In Propria Persona, Barbara Roth  / LIVE | DO NOT FILE WITH COURT<br><br>**COMPLETELY FILL OUT/CORRECT FORM BEFORE SUBMITTING TO COURT CONFERENCE!!**<br><br>Court Conference ID#:    4560260 |
| **U.S. Bankruptcy Court-S.D. New York**<br><br>Case Name:  Lehman Brother's Holding Inc., et al | **CASE NUMBER: 08-13555**<br><br>**DEPARTMENT:**<br>**601/Judge James M. Peck**<br><br>**DATE/TIME: Wednesday, November 16th, 2011/10:00 AM ET**<br>**HEARING:** Hearing |
| **REQUEST FOR COURT CONFERENCE TELEPHONIC APPEARANCE** | Our Tax ID#: 95-4568415 |

1/. _____Barbara Roth_____(Name of specific attorney appearing telephonically) requests a Court Conference telephonic calendar appearance at the above referenced proceeding and agrees to provisions of the Rule/Order/Procedure Re: Court Conference Telephonic Appearances. I UNDERSTAND THAT I DIAL INTO THE CALL FIVE MINUTES BEFORE ITS SCHEDULED START TIME. **COURT CONFERENCE DOES NOT DIAL OUT TO ME.**

2/. A copy of this document was served on all other parties at the time it was faxed to Court Conference, Telephonic Appearance Program Administrator at (866) 533-2946.

3/. The Court Conference Appearance Fee in the sum of $30.00 which will be supplemented based on the length of the call as follows: 0-45 minutes - $30.00, 46-60 minutes - $37.00, 61 minutes and above an additional $7.00 per each additional 15 minute increment, will be paid as follows:

___Check - (copy attached-**write Court Conference ID# on check**-and faxed to Court Conference at (866) 533-2946, payable to CourtCall, LLC and original mailed to Court Conference at 6383 Arizona Circle, Los Angeles, CA  90045, Tel: (866) 582-6878. **INDIVIDUALS REPRESENTING THEMSELVES MUST PAY BY CREDIT CARD!**

___Charged - to Court Conference Debit Account No.:_____
✓ Charged - to VISA, Mastercard or American Express:

To be completed only on the copy submitted to Court Conference:

| |
|---|
| Credit Card Number: ████████████████     Expiration Date: ████████<br><br>To pay by credit card, the copy of this form submitted to Court Conference must be signed by the person whose credit card is to be charged and must be faxed to Court Conference at (866) 533-2946 with the above credit card information completed. The signature below constitutes authorization to charge the above referenced credit card.<br><br>_____██████ (Barbara Roth)_____   _____██████_____<br>Type Name                           Signature |

4. Request forms are processed within 24 hours of receipt.  Call Court Conference if you do not receive a faxed Confirmation within 24 hours.  WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURT CONFERENCE CALENDAR AND MAY BE PRECLUDED FROM APPEARING TELEPHONICALLY! COURT CONFERENCE'S LIABILITY CONCERNING THIS TELEPHONIC APPEARANCE IS LIMITED TO THE FEE PAID TO COURT CONFERENCE.  Matters continued at the time of the hearing require a new form and a new fee for the continued date. It is counsel's responsibility to notify CourtCall of any continuance or cancelation, prior to the scheduled hearing time by calling (866) 582-6878.

5. MY SIGNATURE ON THIS DOCUMENT SERVES AS CONSENT FOR COURT CONFERENCE TO CONTINUE TO FAX (AT THE FAX NUMBER LISTED ABOVE UNDER "ATTORNEY OF RECORD") OR EMAIL NOTICES TO ME OR MY FIRM ADVISING OF UPCOMING APPEARANCES AND/OR OTHER OFFERINGS FROM COURT CONFERENCE UNTIL I OR MY FIRM ADVISES COURT CONFERENCE OTHERWISE.

Date: __11/4/11__                    Signature: __████████████__

Mayra Enriquez [CS]

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT E**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :     Chapter 11 Case No.
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                   :     08-13555 (JMP)
                                                               :
                                    Debtors.                   :     (Jointly Administered)
---------------------------------------------------------------x
                                                               :
In re                                                          :     Case No.
                                                               :
**LEHMAN BROTHERS INC.**,                                      :     08-01420 (JMP) (SIPA)
                                                               :
                                    Debtor.                    :
---------------------------------------------------------------x

**DEBTORS' REPLY TO OBJECTIONS AND IN FURTHER
SUPPORT OF JOINT MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND JAMES W. GIDDENS, AS TRUSTEE
FOR LEHMAN BROTHERS INC., PURSUANT TO SECTIONS
105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) FOR
AUTHORIZATION AND APPROVAL OF A STOCK PURCHASE
AGREEMENT REGARDING THE VEBA AND (II) FOR AUTHORIZATION
AND APPROVAL OF A SETTLEMENT REGARDING THE SAME**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman") file this Reply to Objections to the Joint

Motion of LBHI and James W. Giddens, as Trustee for Lehman Brothers Inc., Pursuant to

Sections 105(a) and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of

Bankruptcy Procedures (I) For Authorization and Approval of a Stock Purchase Agreement

Regarding the VEBA and (II) For Authorization and Approval of a Settlement Regarding the

Same, filed October 21, 2011, ECF No. 21109 (the "Motion"),[1] and respectfully represent:

## DEBTORS' REPLY

1.    The Motion seeks narrow and limited relief: (i) authorization and

approval, for LBHI and the SIPA Trustee, on behalf of LBI, to enter into the Stock Purchase

Agreement pursuant to which LBHI will purchase LBI's 100% ownership interest in Aceso (the

"Shares") and (ii) the settlement and release of all claims held by LBHI or LBI against each

other or their affiliates related to the VEBA.  While over 1,100 parties received notice of the

Motion, less than 15 written responses (the "Responses") were received by LBHI.  In addition,

telephone calls generally seeking information were received at the Debtors' call center.  None of

the Responses overcome the Debtors' and the SIPA Trustee's sound business judgment to enter

into the Stock Purchase Agreement and exchange the releases.

2.    The Responses largely express concern that the funds in the VEBA will

not be used exclusively for the benefits of retirees under the Aetna Policy, notwithstanding that

the VEBA expressly states that its funds may be used to pay claims or premiums under the

Group Benefits Plan for participants and beneficiaries of the Group Benefits Plan, including

active employees, and that such expenses have not been paid by the VEBA pending this Court's

approval of the transfer of Aceso and the VEBA to LBHI.  Some Responses raise two issues: (i)

the Debtors' intentions with respect to the VEBA in the event the Department of Labor (the

_According to Epiq, the Claims Agent overflow of the volume of calls & they responded 4 days thereafter w/o any info ⟨priority⟩_

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

_↓ veba funds to be utilized until exhausted per motion Letter Regarding Lehman Health care trust - Oct 21, 2011._
_- When will funds be exhausted?_

"DOL") does not authorize the reimbursement of $25 million of eligible expenses from the

VEBA to LBHI, and (ii) whether the Debtors properly terminated retiree health benefits in

October 2009. Both of these objections are irrelevant to the consideration of the specific, limited

relief sought by the Debtors. Specifically, the Responses can be summarized as follows and

overruled for the reasons set forth below:

- **Objection:** The DOL, which has questionable standing to appear in connection with this Motion, concedes that it "has no objection to the limited relief which is explicitly being sought," DOL Response ¶ 1. Rather, the DOL takes issue with and requests clarification of the Debtors' future intentions for the VEBA in the event the DOL exemption is not granted.

  Debtors' Response: While the Debtors can confirm that all of their future actions with respect to the VEBA will comply with applicable law, including ERISA, the Debtors' future intentions with the VEBA are not the subject of the Motion and are irrelevant to the relief requested. The Debtors are not seeking the Court's approval of the future use of the VEBA. In that regard, the Debtors and the SIPA Trustee have revised the proposed order to make clear that the Court is only approving the narrow and limited relief sought by the Motion, *i.e.*, the approval of the purchase of the Shares and the exchange of limited mutual releases between, and only between, the Debtors and the SIPA Trustee. A blackline reflecting the modifications to the order is annexed hereto as Exhibit A.

*[handwritten: Exhaustion of funds?]*

- **Objection:** Approximately a dozen retirees submit that the termination of retiree benefits is unfair (but did not allege that they had vested rights) and/or that the VEBA should be used solely for the benefit of retirees and not active employees or for reimbursement to LBHI.

*[handwritten: ✳]*

  Debtors' Response: While the Debtors are sympathetic to the circumstances of retirees and the impact that the demise of the Lehman enterprise has had on such individuals, the Debtors must exercise their fiduciary duties in the interests of creditors. As such, the Debtors believe that a prudent exercise of business judgment requires that they utilize the VEBA for its original stated purposes, which includes the payment of medical expenses for active employees under the Group Benefits Plan. In addition, the Debtors seek to preserve the ability to pursue a reimbursement from the VEBA for costs and expenses that they should not have incurred if the SIPA Trustee had permitted the VEBA to have been used for its intended purposes, *i.e.*, the payment of medical expenses of the Debtors' active employees and the retirees, from April through December 2009. See Hershan Declaration at ¶ 5.

*[handwritten left margin: what abt fudiciury responsibility to previous employers who now are vested, worked hard, loyal & are now disabled w/o being able to earns an income to exobisuch highcosts.]*

*[handwritten right margin: I have vested rights & Veba should be used for the sole purpose of retirees & disabled individuals for insurance purposes. D/N have access to files, in Hospital & called Lehman many ocassions re: such]*

*Handwritten margin notes (right side):*
Legally LB ✗ D/N provide adequate time frame regarding notification of such termination

All facets of this bankruptcy proceeding d/n provide any detail or plans of such. Each time I called Lehman or EPIQ, I don't know was response. Complete shock to learn of such

*Handwritten margin notes (left side):*
CAROL RADO
Reinstated tape machine October 31, 09
never notified of such info. papers never served

- **Objection:** Ms. Wendy Uvino, a former employee of Lehman's human resources department and former trustee for the VEBA, alleges that retiree benefits may have been improperly terminated due to alleged vested rights and disputes certain facts surrounding the termination of retiree benefits, although such statements are not included among her stated objections. *See* Objection of Wendy Uvino, filed Nov. 9, 2011, ECF No. 21797, at ¶¶ 1-7.

**Debtors' Response:** Ms. Uvino lacks standing and is not a party in interest with respect to the Motion. Moreover, Ms. Uvino's allegations had not previously been made during her employment at the time of termination of retiree benefits covered under the Group Benefits Plan and are baseless and may be motivated by the circumstances surrounding her departure from LBHI in July 2010.[2] Contrary to Ms. Uvino's allegations, LBHI's termination of retiree benefits, which was implemented, in part, with the assistance and planning of Ms. Uvino in her then-capacity as a senior vice president in the human resources department, was in compliance with the terms of the Debtors' prepetition health care plans and applicable law. Indeed, it is telling that, in over two years since the notice of termination of retiree health care benefits, which was given seventy-five days before the termination was effective, no retirees have contended that they had vested benefits that could not be terminated by the Debtors.

3.    Neither the DOL nor Ms. Uvino, the former trustee of the VEBA, dispute

that the VEBA failed to pay claims under the Group Benefits Plan, notwithstanding that the

payment of such claims was the sole and explicit purpose of the VEBA during the period before

termination.  It was this inappropriate failure, which LBHI was compelled to address by making

direct payments, that LBHI will be seeking to remedy through the proposed reimbursement.  The

Debtors believe that they will be able to satisfy the requirements to obtain the authorization from

the DOL for the reimbursement.  The DOL and Ms. Uvino have not and cannot identify any

legal or contractual prohibition that precludes the VEBA from segregating funds until the

reimbursement described in the Motion is confirmed.  In the event the DOL denies the

exemption, which exemption is not a condition to LBHI's purchase of the Shares, the Debtors

---

[2] Ms. Uvino brought a wrongful termination suit against the Debtors. *See* Adv Proc. No. 10-05428 (JMP). A majority of Ms. Uvino's complaint was dismissed by the Court. *Memorandum Decision Granting Motion to Dismiss But Allowing Quantum Meruit Claims for Work Performed in 2010*, May 23, 2011. A motion to dismiss Ms. Uvino's amended complaint is scheduled for hearing on November 16, 2011 at 2:00 p.m.

will consider the circumstances at such time and evaluate the most beneficial and appropriate use of the VEBA, consistent with all applicable law, including ERISA.  To be clear, the Debtors are not seeking the Court's approval of the Debtors' future conduct or the Debtors' request for reimbursement.  The Debtors are simply providing notice to all parties of their current intentions.

4.      In addition, contrary to the Responses raised by approximately a dozen retirees, the Motion does not seek to terminate the payment of eligible health and medical benefits for retirees.  All retiree health benefits were terminated effective December 31, 2009, in accordance with the terms of the various Lehman health care plans.  Notice of such termination was served by LBHI to all Lehman retirees, on or about October 16, 2009.  Affected parties have had over two years to voice an objection to the termination of their benefits, and the Debtors are not aware that any parties sought to challenge the Debtors' authority to terminate retiree health benefits or contended that they had vested benefits.  Indeed, although certain retirees have objected to the Motion on the grounds that it allegedly terminates retiree benefits, none of the retirees have challenged the Debtors' legal authority to terminate such benefits.  Case law within this district clearly establishes that the Debtors had the authority to terminate health care benefits for retirees, in December 2009, and that the regime of section 1114 of the Bankruptcy Code is inapplicable to these circumstances.  *In re Delphi Corp.*, Ch. 11 Case No. 05-44481 (RDD), 2009 WL 637315 at *1 (Bankr. S.D.N.Y. March 10, 2009) ("section 1114's regime does not apply … because the various welfare plans are, under the terms of the plan documents themselves, modifiable at will"); Transcript of Record at 109:25-110:2, *In re Gen. Motors Corp.*, 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) ("section 1114 does not trump any agreement between a company and its employees that gives the company the right to amend or terminate a welfare plan"); *see also In re Doskocil Cos., Inc.*, 130 B.R. 870, 877 (Bankr. D. Kan. 1991)

*Handwritten margin notes:*
*October 31 2009*
*in hospital*
*4 months.*

*Trying to get own lawyer 11 days notice of motion.*
*Disability Lawyer vs. Bankruptcy Lawyer, Esq.*
*Wasn't allocated enough time to do such*

5

(concluding that section 1114 of the Bankruptcy Code does not apply to modifications to retiree benefits that the debtor has the right to modify or terminate at will under applicable non-bankruptcy law).

     5.     While the termination of retiree benefits is not the subject of the Motion, the Debtors believe that it is appropriate to clarify the factual record in light of some of the statements in the Responses.

- The Debtors conducted diligence of the retiree benefits being paid by the estate between April 2009 through January 2010 as well as the relevant terms of the policies.[3]

- In October 2009, notice of termination of retiree benefits was sent to all retirees whose benefits were being paid, in part, by LBHI (the "Termination Notice"), attached hereto as Exhibit B.

- The Termination Notice clearly stated, "LBHI is hereby exercising its right to terminate all Retiree Health Benefits effective December 31, 2009." The Termination Notice further stated that "LBHI has arranged for Aetna Life Insurance Company ("Aetna") to offer substitute healthcare . . . The premium cost of your coverage must be borne entirely by you and LBHI will not be responsible for any cost associated with the Group Access-only Plan." (emphasis added)

- At the time of the termination, the VEBA was not available to pay the benefits of retirees and the Termination Notice did not indicate that the VEBA would pay the costs of retirees under Group Access-only Plan.

- No responses were received that objected to the Termination Notice or asserted vested rights.

- The VEBA was subsequently amended by the SIPA Trustee in the beginning of 2010 to allow for the payments of retiree benefits, and a notice of the amendment was sent to retirees on January 11, 2010 (the "Amendment Notice"). A copy of the Amendment Notice is attached hereto as Exhibit C. The Amendment Notice makes clear that while the VEBA would pay retiree benefits temporarily, there was no obligation to continue payments and that any continuation of benefits was still at the retirees' own cost. No responses

---

[3] Ms. Uvino was intimately involved in the decision-making process regarding the termination of retiree benefits and the due diligence process.

*[Handwritten margin note: Health Plan coverage notice received Tues for retiree & then resent wrong docs with medical coverage w/ a deadline of Nov. 18. 2011. Again, not serviced and fund]*

were received that objected to the Amendment Notice or asserted vested rights.

6.    Finally, the DOL's and Ms. Uvino's assertions that insufficient time was given for retirees to object to the Motion should be overruled. Notice of the Motion complied with the Case Management Order entered in these cases and the applicable Bankruptcy Rules. An individualized notice was delivered to retirees detailing the relief sought by the Motion. The Debtors provided over 25 days' notice of the Motion. The notice included an email and phone number so that individuals could voice their concerns to the Debtors. Indeed, the Debtors have been responding to a number of inquiries from retirees and making information available to them. Accordingly, due and proper notice of the Motion has been provided.

7.    While the Responses address a myriad of issues, none of these issues are relevant to the limited relief requested in the Motion, *i.e.*, the approval of the SIPA Trustee's sale and LBHI's purchase of the Shares, and the exchange of limited mutual releases between the SIPA Trustee and LBHI. The Debtors submit that the showing that the Debtors have made in the Motion and in the Hershan Declaration as to the Debtors' exercise of sound and prudent business judgment in deciding to proceed with the proposed transactions, as well as the reasonableness of those to the proposed releases, have not been rebutted. The Motion should, therefore, be granted.

WHEREFORE LBHI respectfully requests that the Court grant the relief requested herein, in the form of proposed order annexed hereto, and such other and further relief as it deems just and proper.

Dated: November 14, 2011
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession