# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

-------------------------------------------------------------------x

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. |
| Debtor. | 08-01420 (JMP) (SIPA) |

-------------------------------------------------------------------x

### ORDER GRANTING JOINT MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND JAMES W. GIDDENS, AS TRUSTEE FOR LEHMAN BROTHERS INC., PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION AND APPROVAL OF A STOCK PURCHASE AGREEMENT REGARDING THE VEBA AND (II) FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT REGARDING THE SAME

Upon the joint motion, dated October 21, 2011 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors") and

James W. Giddens (the "SIPA Trustee"), as trustee for the SIPA liquidation of Lehman

Brothers Inc. ("LBI"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

US_ACTIVE:\43857507\01\02\58399.0008

Procedure (the "Bankruptcy Rules"), for (i) authorization and approval of a Stock

Purchase Agreement (the "Stock Purchase Agreement") between LBHI and the SIPA

Trustee, pursuant to which LBHI will purchase and LBI will sell its 100% ownership

interest (the "Shares") in Aceso Holdings Inc., a wholly-owned subsidiary of LBI that

owns the VEBA, and (ii) authorization and approval of the settlement and release of all

claims by LBHI or LBI against each other or their affiliates related to the VEBA, all as

more fully described in the Motion; and upon the Declarations of Robert Hershan on

behalf of LBHI and of Spencer L. Harrison, Esq. on behalf of the SIPA Trustee in

support of the Motion; and the Court having jurisdiction in the Chapter 11 Cases to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein in

the Chapter 11 Cases being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

as to the Chapter 11 Cases being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having jurisdiction to consider the Motion and the relief

requested in the SIPA Proceeding pursuant to SIPA § 78eee(b)(4); and venue as to the

SIPA Proceeding being proper before this Court pursuant to SIPA § § 78eee(a)(3) and

78aa; and due and proper notice of the Motion having been provided in accordance with

the procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for the chapter 11 cases, LBHI ECF No.

9635, to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; and (vi) all parties who have requested notice in these chapter 11 cases; and

due and proper notice of the Motion having been provided in accordance with the

amended order entered in the SIPA Proceeding implementing certain notice and case

management procedures and other related relief, LBI ECF No. 3466; and personalized

notice of the Motion having been provided to each of Lehman's retirees and their

beneficiaries, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion; and the Court

having found and determined that the relief sought in the Motion is in the best interests of

LBHI and LBI, their estates and creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in all respects; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the

Bankruptcy Code, the Stock Purchase Agreement is approved and LBHI is authorized to

purchase and the SIPA Trustee, on behalf of LBI, is authorized to sell Aceso on the terms

and conditions set forth therein; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, LBHI

shall take title to and possession of LBI's interest in the Shares free and clear of all liens,

claims, encumbrances and other interests of any kind or nature whatsoever; and it is

further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI and the SIPA Trustee's settlement and release of claims regarding the VEBA as set forth in the Stock Purchase Agreement is authorized and approved; and it is further

ORDERED that LBHI is a good-faith purchaser of LBI's interest in the Shares and shall be entitled to all of the benefits and protections afforded in section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the consideration provided by LBHI for LBI's interest in the Shares is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that the Court shall retain jurisdiction to enforce and implement the terms and provisions of the Stock Purchase Agreement and this Order, and resolve disputes thereunder; and it is further

ORDERED that all objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

ORDERED that the failure to specifically include any particular provision of the Stock Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the implementation of the transactions ~~contemplated~~provided for in the Stock Purchase Agreement be approved in its entirety; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), this Order shall be

effective and enforceable immediately upon entry.

Dated: _____, 2011
      New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

WGM_TRAILER

# LEHMAN BROTHERS

October 16, 2009

Re:    NOTICE OF TERMINATION OF RETIREE HEALTH
       AND MEDICAL BENEFITS AS OF DECEMBER 31, 2009

You are receiving this letter because you are or may be eligible to become a participant or beneficiary under one of the post-retirement health care programs sponsored by Lehman Brothers Holdings Inc. ("LBHI") on behalf of itself and its subsidiaries ("Lehman"). Throughout its history, Lehman offered, under the LBHI Group Benefits Plan, the following programs for the provision of post-retirement health care benefits, including medical, prescription drug, mental health, vision, extended care, hearing and other similar benefits (collectively, the "Retiree Health Benefits"):

- Retiree Healthcare Program
- Retiree Medical Program
- Senior Care Plus
- Medicare Plus Plan
- AARP Extended Medicare Supplement

On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of the United States Bankruptcy Code. It has become clear that Lehman will not emerge from chapter 11 on a size and scale comparable to its pre-petition enterprise. Moreover, given LBHI's funding in trust prior to the commencement of LBHI's chapter 11 case for medical benefits, among other things, generally described at the end of this letter, continued funding would represent, from LBHI's perspective, duplicative expenditure of such benefits. Accordingly, LBHI has determined that it can no longer continue to pay the costs associated with maintaining Retiree Health Benefits.

**Please be advised that, consistent with each of the aforementioned programs, LBHI is hereby exercising its right to terminate all Retiree Health Benefits effective December 31, 2009.**

## Availability of Alternative Coverage

LBHI believes that a December 31, 2009 effective date allows sufficient time for you to consider alternative arrangements. For your consideration, LBHI has arranged for Aetna Life Insurance Company ("Aetna") to offer substitute healthcare through a Group Access-only Plan if you are over 65 years of age, which will provide similar benefits as your current healthcare coverage. The premium cost of your coverage must be borne entirely by you and LBHI will not be responsible for any cost associated with the Group Access-only Plan. LBHI reserves its rights to terminate its consent to the Group Access-only Plan at any time for any reason. In addition, the Group Access-only Plan will be administered exclusively by Aetna. You will receive information in a second mailing with details on the plan design, rates and how to opt out if you do not wish to continue coverage. **<continued on reverse side>**

LEHMAN BROTHERS HOLDINGS INC.

1271 AVENUE OF THE AMERICAS 35TH FLOOR NEW YORK NY 10020

PHONE: 866-994-6381

October 16, 2009
Page 2



For those under the age of 65 that are not currently eligible for the Group Access-only Plan, LBHI will allow you to continue to maintain your current healthcare coverage for the time being, but the entire cost of such coverage must be borne by you. The premium payments that you will be responsible to pay in full will be determined from time to time (adjusted on an annual basis) by Aetna. LBHI will not be responsible for any cost associated with your continued healthcare coverage and reserves its right to terminate or amend your healthcare coverage or the terms thereof at any time for any reason. This offer is being made solely as an accommodation to allow you to transition to the Group Access-only Plan when you turn 65 years old. You will receive information in a second mailing with details on the Plan design and rates.

**The VEBA Trust**

With respect to the pre-chapter 11 funding referred to above, on September 12, 2008, LBHI funded in excess of $95 million to its wholly owned subsidiary Lehman Brothers Inc. ("LBI") to enable it to establish a trust (the "Trust") intended to qualify as a voluntary employee beneficiary association or a "VEBA" under section 501(c)(9) of the federal tax code. The purpose of the Trust was to fund medical, dental, prescription drug, death and other eligible benefits for participants in the LBHI Group Benefits Plan eligible for benefits, without distinction between active employees and retirees.

On September 19, 2008, a liquidation proceeding under the Securities Investor Protection Act of 1970 with respect to LBI was commenced and James W. Giddens was appointed as the trustee to administer LBI's estate (the "LBI Trustee"). Although the Trust was initially fulfilling its intended purpose to fund eligible health and medical benefits, on or about March 2009, the LBI Trustee suspended all payments by the Trust. Accordingly, to avoid an immediate halt of your health and medical coverage, LBHI resumed payment of Retiree Health Benefits on or about that date. However, for the reasons stated above, LBHI can no longer continue to pay for Retiree Health Benefits.

While we understand that there is currently approximately $45 million in the Trust, given the LBI Trustee's suspension of payments, there is significant uncertainty as to whether or not the LBI Trustee intends to use the Trust funds for payment of eligible benefits. We refer you to the following website maintained by the LBI Trustee for information regarding the status of the LBI proceeding: www.lehman-docket.com.

We regret that this decision has been made, but under the current circumstances of a bankruptcy, LBHI cannot continue to make payments in respect of Retiree Health Benefits. LBHI has taken all reasonable steps to try to minimize any hardship that you may suffer as a consequence of this difficult determination.

If you have any questions or concerns, please contact the Lehman Brothers Human Resources Service Center at 1-866-994-6381 or e-mail HRServices@lehmanholdings.com.

# EXHIBIT C

WGM_TRAILER

# LEHMAN GROUP HEALTH CARE TRUST

January 11, 2010

Re: Retiree Medical Coverage Through Aetna

Dear Lehman Brothers Retiree:

You previously received letters from Lehman Brothers Holdings Inc. ("LBHI") advising you of the termination of the Lehman Retiree Health and Medical Plan ("Retiree Plan") and alternative coverage options available separately through Aetna ("Aetna Policy"). The purpose of this letter is to advise you of a recent development relating to the funding of premiums under the Aetna Policy.

**Change in Funding**

Lehman Brothers Inc. ("LBI"), is in the midst of a liquidation proceeding under the Securities Investor Protection Act of 1970 ("SIPA"). James W. Giddens, Trustee for the SIPA liquidation of the business of LBI ("Trustee"), recently determined to permit the Lehman Group Health Care Trust ("Health Care Trust") sponsored by Aceso Holdings, Inc. ("Aceso"), a wholly owned subsidiary of LBI, to fund a portion of the premiums under the Aetna Policy for retirees. In any case, you will nonetheless be required to pay a portion of the premiums in the amount established for 2010 and from time to time thereafter, unless you opt out of coverage.

**LBI has been informed by LBHI that the Lehman benefit plans previously providing Retiree Health Benefits terminated on December 31, 2009, and are not being reinstated.** As a result, the Aetna Policy will be modified to permit premium payments directly by the Health Care Trust. The amount of premiums paid by the Health Care Trust can change at any time, and the Aetna Policy may be amended or terminated at any time.

You were previously advised that there was uncertainty as to whether the Health Care Trust would be used for payment of eligible benefits for retirees. The Trustee has expressed his intent to permit the Health Care Trust to be used for payment of premiums, but arrangements to permit such payments to occur have not been finalized. The Trustee, LBHI and Aetna have begun discussions to work out how the Health Care Trust can pay premiums under the Aetna Policy for retirees.

**No Increase in Your Costs; New Plan Design Applies**

Assuming arrangements for the Health Care Trust to pay premiums are finalized, your plan costs for 2010 will not increase over 2009 costs and therefore you will not be responsible for the full cost of coverage. You will pay the same amount in 2010 as you paid during 2009. The 2010 plan design mailed to you in November will apply, including, if applicable, the Medicare Open[SM] Plan and Enhanced Medicare Part D prescription drug coverage.

The Aetna arrangements and the amounts paid by the Health Care Trust are subject to change from year to year, or at any other time.

US_ACTIVE:\43257045\06\58399.0003

*[handwritten annotations:]*

↑ ACTWBI-DIFFERENT LETTER (SAME DATE)

PLease See Exhibit J- I received 2 Letters - Dear LB Retirees-Letter b?
- Dear LB Participant ?

Letter 5 - Who am I ?
How many Letter were sent + addressed to who?

**Enrollment & Opt Out Process**

You will be automatically enrolled in the new 2010 benefit plan, unless you contact us **to opt out of the plan.**

If you previously contacted the Lehman Brothers HR Service Center to opt out and you now wish to make a change based on the plan funding, please contact us at **646-285-9800 or 866-994-6381.** Please indicate that you are a Lehman Brothers retiree and be ready to provide the last 4 digits of your Social Security number.

**Questions?**

If you have any questions, please call Aetna toll free at **1-800-307-4830** (TTY/TDD: 1-800-628-3323). The Aetna plan specialists are available Monday through Friday, 8 a.m. to 6 p.m. to personally help you with any questions you might have. You can also visit Aetna online at www.aetnamedicare.com.



U.S. Department of Labor

**EXHIBIT F**

November 29, 2011

**UPS OVERNIGHT DELIVERY**



**U.S. Department of Labor**

N4611

200 Constitution Avenue, N.W.
Washington, D.C. 20210-0002

NTD

Honorable James M. Peck
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, NY 10004

Re:    In re Lehman Brothers Holdings Inc. et al, 08-13555 (JPM)
       (Jointly Administered)

Dear Judge Peck:

We write to express the disagreement of the Secretary of the United States
Department of Labor to certain portions of the Debtors' proposal in their letter dated
November 23, 2011(the "Letter') in response to Your Honor's request at the November
16 hearing that "what amounts to a funded lawyer" be provided to the participants and
beneficiaries of the LBHI Plan (the "Participants"). Hearing Transcript at page 56, line 2.
A copy of the transcript is attached for the Court's convenience.

In satisfaction of Your Honor's request, the Debtors propose to (i) seek and pay
for the retention of special counsel to prepare an analysis as to which, if any, of the
retirees and long term disabled (collectively, the "Retirees") are vested (the "Vested
Rights Analysis"), and (ii) have LBHI provide the Retirees "with reports regarding the
status of their medical benefits" (the "LBHI Report Proposal"). Letter at 2. The Vested
Rights Analysis appears to be a viable approach. The Secretary would like to see the
retention application and also be provided with a copy of the analysis. Also, as Your
Honor suggested at the hearing, the Secretary believes that the universe of the analysis
should be expanded to include active employees as some may have vested rights to
retiree medical benefits

The LBHI Report Proposal, however, appears to fall short of what the Court
requested. First, it appears that LBHI has been the primary provider of information to the

*H/N received any reports to date*

Retirees in the past. As the many responses to the Motion reflected considerable confusion as to the status and rights of the Retirees, the LBHI Report Proposal does not explain how it will address these past failures.

We understand that it may be too late in the case for the appointment of a retiree committee pursuant to section 1114, but respectfully suggest that a basic goal of section 1114 may be accomplished by the appointment of special counsels pursuant to Your Honor's powers under section 105(a) of the Bankruptcy Code. For example, section 105(a) has been used to extend the reach of section 362(a) to non-debtors, where appropriate, e.g., SMF Realty Co. v. Consolini, 903 F.Supp. 656, 662 (S.D.N.Y. 1995); to appoint a legal representative for future claimants in asbestos cases, e.g., In re Johns-Manville Corp., 36 B.R. 743, 757 (Bankr. S.D.N.Y. 1984); and to appoint special counsel to assist a patient care ombudsman. In re Synergy Hematology-Oncology Medical Associates, 433 B.R. 316, 319 (Bankr. C.D. Cal. 2010). By these means, "those separate classes [current employees, retirees and those on long term disability] can be advised in a thoughtful and understandable way as to what their rights are." Hearing Transcript at page 56, lines 4 – 6.

In the alternative, ERISA and the terms of the VEBA would allow the VEBA trustee herself at the cost of the Debtors to retain special counsels for this purpose. Because these special counsels may be representing different classes of participants and beneficiaries as opposed to the VEBA, it would be problematic for the VEBA to pay for their representation.

2

We will be available, if Your Honor has any questions on these matters for which we may be of assistance.

Respectfully submitted,

Leonard H. Gerson
Trial Attorney, SOL/PBSD
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
Room N-4611
P.O. Box 1914
Washington, DC 20013
(202) 693-5615
gerson.leonard@dol.gov

cc:  Richard Krasnow, Esq.

Ms. Carol Rado, VEBA Trustee

3

Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case Nos. 08-13555(JMP)(Jointly Administered),

5            08-01420(JMP)(SIPA)

6   - - - - - - - - - - - - - - - - - - - -x

7   In the Matter of:

8   LEHMAN BROTHERS HOLDINGS, INC., et al.,

9            Debtors.

10  - - - - - - - - - - - - - - - - - - - -x

11  In the Matter of:

12  LEHMAN BROTHERS INC.,

13           Debtor.

14  - - - - - - - - - - - - - - - - - - - -x

15

16           United States Bankruptcy Court

17           One Bowling Green

18           New York, New York

19

20           November 16, 2011

21           10:09 AM

22

23  B E F O R E:

24  HON. JAMES M. PECK

25  U.S. BANKRUPTCY JUDGE

516-608 2438
Mr. Dimn Rupa, Esq.

Page 2

1

2     HEARING re Motion of Colorado Plaintiffs Authorizing 2004

3     Examination of Debtors [ECF No. 15200]

4

5     HEARING re Motion of Colorado Plaintiffs for Relief from the

6     Automatic Stay  [ECF No. 15201]

7

8     HEARING re Debtors' Motion to Establish Procedures for the

9     Consensual Amendment and Assumption of Certain Non-Terminated

10    Prepetition Derivatives Contracts [ECF No. 21297]

11

12    HEARING re Debtors' Motion Pursuant to Section 105(a) of the

13    Bankruptcy Code and Bankruptcy Rule 9019 for Approval of a

14    Settlement and Compromise with Danske Bank A/S [ECF No. 21298]

15

16    HEARING re Joint Motion of Lehman Brothers Holdings Inc. and

17    James W. Giddens, as Trustee for Lehman Brothers Inc., Pursuant

18    to Sections 105(a) and 363 of the Bankruptcy Code and Rule 9019

19    of the Federal Rules of Bankruptcy Procedure (i) for

20    Authorization and Approval of a Stock Purchase Agreement

21    Regarding the VEBA and (ii) for Authorization and Approval of a

22    Settlement Regarding the Same [Case No. 08-13555, ECF No. 21109

23    and Case No. 08-01420, ECF No. 4654]

24

25

Page 3

1

2    HEARING re The Providence Funds' Motion for an Order Settling

3    Hearing Date and Establishing Discovery and Briefing Schedule

4    or, in the Alternative, for a Status Conference [LBI ECF No.

5    4678]

6

7    HEARING re Joint Motion of Lehman Brothers Holdings Inc. and

8    James W. Giddens, as Trustee for Lehman Brothers Inc., Pursuant

9    to Sections 105(a) and 363 of the Bankruptcy Code and Rule 9019

10   of the Federal Rules of Bankruptcy Procedure (i) for

11   Authorization and Approval of a Stock Purchase Agreement

12   Regarding the VEBA and (ii) for Authorization and Approval of a

13   Settlement Regarding the Same [Case No. 08-13555, ECF No. 21109

14   and Case No. 08-01420, ECF No. 4654]

15

16   HEARING re Uvino v. Lehman Brothers Holdings Inc. [Case No. 10-

17   05428]

18

19   Adjourned Matters:

20   Motion of Official Committee of Unsecured Creditors for

21   Reconsideration of Court's September 17, 2008 Interim Order (i)

22   Authorizing Debtor to Obtain Post-petition Financing Pursuant

23   to Sections 363 and 364 of Bankruptcy Code and (ii) Granting

24   Liens and Superpriority Claims to Postpetition Lenders Pursuant

25   to Section 364 of Bankruptcy Code [ECF No. 434]

Page 4

1

2   Motion of Fativa, Inc., et al. to Compel Immediate Payment of

3   Postpetition Administrative Expense Claims [ECF No. 7102]

4

5   Motion of Fidelity National Title Insurance Company to Compel

6   Compliance with Requirements of Title Insurance Policies [ECF

7   No. 11513]

8

9   Motion of Jason T. Taylor for Relief from the Automatic Stay

10  [ECF No. 14377]

11

12  Motion of Phillip Walsh for Relief from the Automatic Stay [ECF

13  No. 14571]

14

15  Motion of Giants Stadium LLC for Leave to Conduct Discovery of

16  the Debtors Pursuant to Federal Rule of Bankruptcy Procedure

17  2004 [ECF No. 16016]

18

19

20

21

22

23

24

25  Transcribed by:   Sharona Shapiro

Page 5

1

2       A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Debtors

5          767 Fifth Avenue

6          New York, NY 10153

7

8    BY:    JACQUELINE MARCUS, ESQ.

9           RICHARD KRASNOW, ESQ.

10          ERIKA DEL NIDO, ESQ.

11          LAWRENCE J. BAER, ESQ.

12

13

14   BROWN RUDNICK LLP

15          Attorneys for Providence Funds

16          Seven Times Square

17          New York, NY 10036

18

19   BY:    DAVID J. MOLTON, ESQ.

20          HOWARD STEEL, ESQ.

21

22

23

24

25

Page 6

1    CHAPMAN & CUTLER, LLP

2          111 West Monroe Street

3          Chicago, IL 60603

4

5    BY:   JAMES HEISER, ESQ. (TELEPHONICALLY)

6          FRANKLIN H. TOP, III, ESQ. (TELEPHONICALLY)

7

8

9    HUGHES HUBBARD

10          Attorneys for SIPA Trustee

11          One Battery Park Plaza

12          New York, NY 10004-1482

13

14    BY:   MICHAEL E. SALZMAN, ESQ.

15          JEFFREY S. MARGOLIN, ESQ.

16

17

18    THE LAW OFFICES OF AVRUM J. ROSEN, PLLC

19          Attorneys for Wendy Uvino

20          38 New Street

21          Huntington, NY 11743

22

23    BY:   AVRUM J. ROSEN, ESQ.

24

25

Page 7

1    LEVIN LEE LLP

2       Attorneys for SIPA Trustee

3       570 Lexington Avenue, 16th Floor

4       New York, NY 10022

5

6    BY:  KENNETH E. LEE, ESQ.

7

8

9    LINKLATERS LLP

10      Attorneys for Lehman Brothers International (Europe)

11      1345 Avenue of the Americas

12      New York, NY 10105

13

14    BY:  JAMES R. WARNOT, JR., ESQ.

15

16

17    MILBANK, TWEED, HADLEY & MCCLOY LLP

18      Attorneys for Official Committee

19      One Chase Manhattan Plaza

20      New York, NY  10005

21

22    BY:  EVAN R. FLECK, ESQ.

23      GRACE M. GILLIGAN, ESQ.

24

25

Page 8

1   STUTMAN TREISTER & GLATT

2        Attorneys for Creditor, Elliot

3        1901 Avenue of the Stars, 12th Floor

4        Los Angeles, California 90067

5

6   BY:   MICHAEL NEUMEISTER, ESQ. (TELEPHONICALLY)

7         JEFFREY H. DAVIDSON, ESQ. (TELEPHONICALLY)

8         MARINA FINEMAN, ESQ. (TELEPHONICALLY)

9

10

11  U.S. DEPARTMENT OF LABOR

12        Office of the Solicitor

13        200 Constitution Avenue, NW

14        Room N 4611

15        Washington, DC 20210

16

17  BY:   LEONARD H. GERSON, ESQ.

18

19

20

21

22

23

24

25

Page 9

1    VENABLE LLP

2        Attorneys for the Deutsche Bank A/S London Branch

3        Rockefeller Center

4        1270 Avenue of the Americas

5        Twenty-Fifth Floor

6        New York, NY 10020

7

8    BY:   CAROLLYNN H.G. CALLARI, ESQ.

9

10

11   ALSO PRESENT TELEPHONICALLY:

12   ANATOLY BUSHLER, Farallon Capital Management

13   BARBARA ROTH, In Pro Per/Pro Se

14

15

16

17

18

19

20

21

22

23

24

25

Page 10

P R O C E E D I N G S

THE COURT:  Be seated.  Good morning.

MS. MARCUS:  Good morning, Your Honor.  Jacqueline
Marcus of Weil Gotshal & Manges on behalf of Lehman Brothers
Holdings Inc. and its affiliated debtors.

Items number 1 and 2 on the agenda this morning are
related to each other.  They are the motions of the Colorado
plaintiffs for Rule 2004 examinations and for relief from the
automatic stay.  The debtors objected to both motions several
months ago and since then have been trying to reach a
consensual resolution.

The Colorado plaintiffs are involved in litigation in
state court in Colorado.  They allege that they have claims
relating to the design, construction or maintenance of a golf
course owned by debtor LB Rose Ranch LLC.

The debtors and the Colorado plaintiffs have entered
into a stipulation, subject to the approval of the Court, which
provides as follows -- I have a copy of it, Your Honor, if I
may approach.

THE COURT:  Please approach.  Thank you.

MS. MARCUS:  The automatic stay in the cases of LBHI
and Rose Ranch will be modified solely to permit the Colorado
plaintiffs to assert any and all claims relating to the design,
construction or maintenance of the golf course and prosecute
such claims against LBHI, Rose Ranch and/or their insurers in

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1    while the retirees are losing health benefits.

2            THE COURT:  Okay --

3            MR. DELANEY:  Okay?

4            THE COURT:  Thanks for your --

5            MR. DELANEY:  Thank you very much.

6            THE COURT:  -- presentation, Mr. Delaney.

7            Is there anyone else who wishes to be heard?

8            You may come forward.

9            MS. RASMUSSEN:  Thank you, Your Honor.  My name is

10   Marianne Rasmussen.  I'm a beneficiary of the trust but also I

11   had been chief human resources officer at Lehman from 1994 to

12   2001 and I had twenty-nine years of experience with the firm

13   and then prior to that, Shearson Lehman and American Express,

14   so it was all bridged.

15           A few things that were said today -- just doing math,

16   when we talk about if the VEBA comes down to only twelve

17   million, my calculation is that that would probably be only,

18   like, maximum five months left.  The reason I say that is

19   because if we do the math, we've gone through almost fifty

20   million dollars of the fund so far.  So if we take away that --

21   I'm sorry; maybe it's -- 150 -- but the 12 million dollars left

22   would probably be substantially taken by year end because many,

23   many people hold all their bills and they send them and submit

24   them all at once.  So that's one part of it, so it's usually a

25   significant portion that eats up all that money at that point.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1  And even if we have twelve million, it's probably four to five

2  months left.

3            Also, there are a couple of things that were raised in

4  counsels' response that I'd like to address.  They talked

5  about -- only about a dozen people responding.  I talked to a

6  number of people that I know.  Three of the six people said

7  they didn't even receive that one letter and the other three

8  people that I spoke to -- well, I submitted an objection letter

9  and so did Antoinette LaBelle.  Other people just feel like

10  they don't have the expertise and the ability to do it, so we

11  do it as laypeople.  But, also, Wendy Uvino's letter that was

12  sent to the Court, even though it said an objection letter, I

13  think it was more like an amicus friend of the Court letter

14  that she was trying to do because she certainly had lots of

15  experience.  Some of the things that counsel said that she had

16  to do -- well, she was employed by the firm so of course she

17  had to go through this extensive research.

18            They also said there was only some response to the

19  October 16th, 2009 letter that was Exhibit B.  I happen to know

20  that I personally tried to call and I was asked to call back

21  several times because they had so many phone calls about that.

22            Then, it was also said that people didn't really call

23  too much after -- between that two-year period of time.  Well,

24  I guess the question is why would they if they received a

25  January 11th, 2010 letter which said, in bold, "No increase in

LEHMAN BROTHERS HOLDINGS INC., ET AL.



1    your cost, new plan design applies, assuming arrangements for

2    the health care trust to pay premiums are finalized.  Your plan

3    costs for 2010 will not increase over 2009 cost and therefore

4    you will not be responsible for the full cost of coverage."  So

5    it's literally telling us it's going back to the way it was

6    three months prior to when we received that October 2009

7    letter.

8             So people -- of course they didn't respond because

9    they thought everything had been taken care of.  Again, most of

10   the people that we're talking about are not sophisticated

11   people.  Forgetting about the percentage of people that are

12   investment bankers and the traders.  Seventy percent of the

13   people were paid an average amount for their job.  They were

14   operations people, they were technology people, they were

15   secretaries, et cetera.  So when they receive a letter like

16   this, they are confused and they probably don't know what to

17   do.

18            Many of the trust beneficiaries are the old Shearson

19   people.  When I say old, I mean they're equivalent to almost

20   our parents' age.  I believe that many of them did have defined

21   vested rights because many of them had the old Shearson wording

22   and they have nothing else.  And those did not -- those summary

23   plan descriptions did not say anything about the company had

24   the right to mend (sic), change or terminate.  That was prior

25   to 1994, prior to the IPO and many of these people have been

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 48

1    retired for many, many years.  These -- some of these people

2    that are being affected are eighty-five, ninety year old

3    people.  And, as I said before, these people also -- not only

4    are they aged people, but they also probably also lack the

5    resources -- both the ability and the finance to really address

6    some of these issues.

7              And with that, I thank the Court very much for your

8    time.

9              THE COURT:  Thank you, Ms. Rasmussen.

10             Is there anyone else in court who wishes to be heard

11   on this issue?

12             Mr. Gerson?

13             MR. GERSON:  Yes.  I -- the statements of the retirees

14   just reinforces our view in our papers that Section 1114

15   doesn't apply and even in the Delphi case, where Judge Drain

16   decided it wasn't applicable where there was an absolutely

17   right to modify, he still appointed a committee to represent

18   the interests of the retirees with respect to the open issues.

19   I think that leave exists in this case.

20             THE COURT:  Well, I hear what you said and before

21   commenting further, I'd like to ask if there are any other

22   affected retirees or objectors who wish to be heard who may be

23   on the telephone, rather than present in court?

24             MR. GERSON:  Of course, Your Honor.  Thank you.

25             THE COURT:  Okay.  I hear --

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 37

1   of LBHI, its creditors, and should be approved.

2          THE COURT:  Before asking if any of the objectors who

3   are on the phone or present in court wish to be heard, I'm

4   going to ask counsel for the SIPA trustee to explain, from his

5   perspective, why this transaction makes sense.

6          MR. LEE:  Your Honor, Ken Lee, for the SIPA trustee.

7          The transaction makes sense from the perspective of

8   the SIPA trustee, Your Honor, because it was our conclusion,

9   after doing extensive fact investigation as to the purposes

10  behind the creation of the VEBA and the purposes for which it

11  was intended that the funds had a very limited purpose and

12  could not be really directed to the benefit for any claimants

13  in the SIPA proceeding -- any customer claims or other non-

14  customer claims -- and that, in addition to that, it was

15  requiring the trustee to expend some amount of time and

16  attention on managing an entity over which it didn't actually

17  have full control since the -- as explained, the VEBA has its

18  own trustee.  And LBHI is involved with respect to various

19  benefit plans and administering benefits to current and former

20  employees.

21          In addition to that, there were a number of disputes

22  between LBI and LBHI concerning the funding of the VEBA and as

23  to whether there were claims going in both directions for those

24  sums of money.  And this proposed transaction resolves all of

25  those claims and, therefore, settles a significant matter that

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1    is open between LBI and LBHI.

2            So for those reasons, we believe that it is in the

3    best interest of the LBI estate as well.

4            THE COURT:  Okay.

5            MR. LEE:  Thank you, Your Honor.

6            THE COURT:  You wish to be heard on behalf of the

7    committee?

8            MR. O'DONNELL:  Dennis O'Donnell, Milbank, Tweed,

9    Hadley & McCloy, on behalf of the official committee.

10           Just to note that we have had extensive discussions

11   with the debtors about this motion as well and believe that in

12   its narrow form, the form presented to the Court today, in

13   terms of the two components, it should be granted.  Obviously,

14   based on Mr. Krasnow's presentation, there are lots of issues

15   that will need to be dealt with after this transaction is

16   consummated.  And we're simply reserving our rights with

17   respect to how all those should turn out.

18           THE COURT:  All right.  I'll now hear from anybody who

19   is in court, either as an individual or through counsel or by

20   telephone, who have lodged objections to the requested relief.

21   You can come forward if you wish.

22           Please identify yourself for the record.

23           MR. DELANEY:  Yes, sir.  Judge, first of all, thank

24   you very much for letting me come here.  My name is Steve

25   Delaney.  I am a retiree from Lehman Brothers.  I worked there

1   for about twenty-four years and retired in 2006.

2        I raise this just because I heard about standing.  I

3   thought it'd be good if I could just explain what the program

4   was that I was involved with.  I don't know anything about the

5   disabled programs, the COBRA programs or what have you.  But

6   when I went to work at Lehman Brothers, part of the procedure

7   and part of the policy indicated that if you stayed at Lehman

8   Brothers -- and this is back in 1983 -- and retired from Lehman

9   Brothers at fifty-five, you would have lifetime retiree health

10  benefits.

11        You had to do some things.  First of all, you had to

12  be an employee, I think, before 1990.  So the universe is

13  fairly small with regard to that.  Second thing is you had to

14  retire at age fifty-five, so you had to have longevity.  And

15  the accumulation of your age and time in service had to be

16  seventy-five pts.  In --

17        THE COURT:  Can I ask you, was fifty-five viewed as

18  regular retirement or early retirement?

19        MR. DELANEY:  I don't know the answer to that, Judge.

20  I know at fifty-five, you qualify for all the retirement

21  benefits.  There was no mandatory retirement --

22        THE COURT:  This is what bankrupted Greece, you know.

23        MR. DELANEY:  It probably may have bankrupted -- I

24  don't think this bankrupted Lehman Brothers.  I'm pretty sure

25  of that.

Page 40

1       THE COURT:  All right.

2       MR. DELANEY:  So as far as standing, that's where I

3   am.  I am a retiree.  I've been receiving the benefits.

4       I heard today from counsel that this program was

5   terminated at one point in time, somewhere in 2009.  It may

6   have been terminated in the back rooms with other people

7   discussing, but the reality of it is, for the retirees, when

8   they would notify of a termination of this program, what do

9   they all do?  They all call human resources.  I called human

10  resources.  This is important benefit, what is going on?  The

11  response was not that you're not going to have health coverage.

12  The response is very simply do not worry, it's going to be

13  taken care of, you're going to continue to have your health

14  coverage and it's still going to be the same program,

15  administered by Aetna, and you'll still pay the same

16  coverage -- I have the same -- paying the same premium.

17      THE COURT:  Who made the --

18      MR. DELANEY:  So the reality of it was --

19      THE COURT:  Excuse me, just -- who made these

20  representations to you?

21      MR. DELANEY:  Human resources at Lehman Brothers HI.

22  And it wasn't so much the representations.  It was because

23  after they announced to us that we were going to get this

24  coverage and it was going to be through LBHI, we proceeded to

25  get our quarterly bill from Aetna which was the same insurance

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1  coverage for the exact same amount and we had the same

2  coverage.

3          And I've been having that coverage for the last two-

4  and-a-half years.  And I think it's absolutely great.  I get a

5  bill every quarter from Aetna under the term Lehman Brothers

6  Holdings, Inc.  Special program -- special statement for my

7  health insurance.

8          So as far as what I knew and what other retirees -- I

9  can't speak for them -- knew, there was no termination.  We

10  continue to have the same coverage for the same amount for the

11  period of time that we're into bankruptcy.

12          Now, I really didn't understand -- I hate to

13  apologize -- the machinations that went on before in terms of

14  what was really being asked for.  When I read the document, I

15  literally viewed this as two things: one, the holding company

16  wants to end retiree health benefits and, two, they got a pot

17  of gold of thirty-seven million dollars and they want to take

18  twenty-five million and turn that over to LBHI to pay for the

19  employee health benefits while they continue to work at Lehman

20  Brothers after the bankruptcy.

21

22  Now I can understand looking at this that the money was put

23  aside for the benefit of retirees and other people.  At some

24  point in time, there becomes an important decision as who are

25  we working for.



LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 42

1       In my letter, I indicated that as of the filing of

2   bankruptcy, the Lehman creditors, really, were the only party

3   in interest as far as what was left of the estate.  If Lehman

4   Brothers at that point in time had been dissolved or liquidated

5   within six months, the creditors would have gotten X cents on

6   the dollar.  I think at the CDS auction -- I don't know -- who

7   knows -- the price was somewhere around eight and a half, nine

8   cents on the dollar.  A decision was made at the holding

9   company to keep this in operation.  Why?  For the benefit of

10  the creditors.  And it was a very good benefit, because if we

11  look at the benefits to the creditors, the value of their bonds

12  which were in CDS at eight or nine cents on the dollar, are now

13  trading -- at least on the bid side, at twenty-four, which

14  means they're probably worth a lot more.

15      So by keeping this entity alive for two and a half

16  years, what I understand from press releases, there's 160 of

17  billion of debt out there, at 18 points, keeping Lehman alive

18  has resulted in a benefit to the creditors of about 22 billion

19  dollars.  Having received that benefit, which can be totally

20  liquidated right now in the market, but I think they'll all

21  hang on for the recovery, now we have LBHI coming back to a pot

22  and saying we want twenty-five million out of that to pay for

23  the health benefits for individuals who were employed to

24  increase the value of the holdings of the creditors.  Which

25  they did.  And it's great.  And I don't begrudge, you know, the

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1   creditors getting their piece of the action out of this.  But

2   we have a trust that may have come to an end in terms of health

3   benefits for LBHI in seven months; they're now trying to milk

4   this for another two and a half years while they reap the

5   benefit of this.

6           As I look through the Bankruptcy Rule -- because I've

7   got to admit I only used Google for this, so probably not the

8   most extensive coverage, there are two things that I saw about

9   benefits; one, has anyone been appointed to represent us?  I

10  don't know.  The only thing I got was that notice in the mail

11  to which I filed an objection.  It talks in terms of what's

12  fair and equitable for all parties; the debtor, the creditor,

13  retirees, whatever they may be.  The -- I understand that what

14  you did today certainly didn't impact us directly.  But I

15  think --

16          THE COURT:  I haven't done anything yet.

17          MR. DELANEY:  oh, I'm sorry, Judge.  But --

18          THE COURT:  I'm just --

19          MR. DELANEY:  -- it sounded like --

20          THE COURT:  I'm just listening.

21          MR. DELANEY:  Okay.  But it seems to me, looking at

22  what has gone on over this period of time -- it's been three

23  and a half years.  I honestly do not know what benefits I have

24  under any statute, bankruptcy or risk or anything like that.

25  We've got a million lawyers here and not one of them can tell



LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 44

1    me just what my benefits are?

2         I don't want to rabble rouse, but I'd like to know

3    where we stand and I'd like to know why can't we have someone

4    appointed to represent us?  We're spending a lot of money in

5    this case for lawyers sitting around and doing things that may

6    be beneficial or not beneficial.  We have a statute that seems

7    to convey some sort of interest to the retirees in this case,

8    and if it's recognized, why can't we have someone speak on our

9    behalf who is knowledgeable?  I certainly am not knowledgeable

10   in this area.

11        And the other things -- I'm requesting is one, I'd

12   like to have someone appointed to make sure that we are fully

13   versed in what our rights are.  Second of all, I think the

14   twenty-five million payments which may not be on the floor

15   today but was certainly raised by those -- the motion should be

16   denied.  I don't know whether I'm going to around to get

17   notice.  As time goes on, the universe of these retirees gets

18   smaller and smaller.  As I say, you had to be you had to be

19   retired at fifty-five and be employed at Lehman before 1990.

20   So it's a smaller and smaller group and they're not around --

21   it would seem to that to protect these people to the extent

22   they are entitled to protection under the statute, that someone

23   should be appointed to oversee what's going on.  And I

24   definitely think it's not fair in assessing the value to all

25   parties that LBHI reap the gain of another twenty-five million

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1    while the retirees are losing health benefits.

2              THE COURT:  Okay --

3         MR. DELANEY:  Okay?

4              THE COURT:  Thanks for your --

5         MR. DELANEY:  Thank you very much.

6              THE COURT:  -- presentation, Mr. Delaney.

7         Is there anyone else who wishes to be heard?

8         You may come forward.

9         MS. RASMUSSEN:  Thank you, Your Honor.  My name is

10   Marianne Rasmussen.  I'm a beneficiary of the trust but also I

11   had been chief human resources officer at Lehman from 1994 to

12   2001 and I had twenty-nine years of experience with the firm

13   and then prior to that, Shearson Lehman and American Express,

14   so it was all bridged.

15        A few things that were said today -- just doing math,

16   when we talk about if the VEBA comes down to only twelve

17   million, my calculation is that that would probably be only,

18   like, maximum five months left.  The reason I say that is

19   because if we do the math, we've gone through almost fifty

20   million dollars of the fund so far.  So if we take away that --

21   I'm sorry; maybe it's -- 150 -- but the 12 million dollars left

22   would probably be substantially taken by year end because many,

23   many people hold all their bills and they send them and submit

24   them all at once.  So that's one part of it, so it's usually a

25   significant portion that eats up all that money at that point.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1          MS. ROTH:  If it please Your Honor --

2          THE COURT:  Please identify yourself.

3          MS. ROTH:  Yes, good morning, Your Honor.  My name is

4     Barbara Roth (ph.), I.D. 45606260 --

5          THE COURT:  You're going to have to speak up because

6     you're coming through in a somewhat soft way.

7          MS. ROTH:  I'm sorry, Your Honor.  Good morning, Your

8     Honor, Judge James Peck.  My name is Barbara Roth, ID number

9     4600260.  I'm calling from Clearwater, Florida and wanted to

10    thank you for the opportunity to present my case to you today

11    regarding the notice of motion and settlement agreement

12    regarding Lehman health care trust.

13          I submitted (sic) documentation from you with regard

14    to the motion which was received via mail on October 25th at 6

15    p.m. in route to the emergency room and I was admitted to the

16    hospital from 10/25 and released this past weekend which did

17    not give me the opportunity to present myself in New York.  I

18    believe that this motion was not given enough allocation (sic)

19    for me get a legal representation.  While I was in the hospital

20    I had the benefit of contacting your office, Mary Lopez, the

21    case administrator, and Epiq and also the debitors (sic) for

22    Lehman Brothers Holding, Inc. with regard to how I need to file

23    the motion.

24          According to Ms. Lopez, the lawyers filed -- excuse

25    me, Your Honor, Weil, Gotshal & Manges, a former firm that I

*[handwritten margin note: Not 90 days notice]*

*[handwritten margin note: Legal rep.]*

1  worked with, with Lehman, left out documentation with regard to

2  how to file, where to file and the case number was missing

3  because there were sub cases with each motion.  Furthermore,

4  per this letter, I contacted Lehman's hotline and left a voice

5  mail message to find out how I can utilize forwarding this

6  motion to you and I did not receive a response that was

7  favorable until I was specifically told we are -- represent

8  you, we're not at liberty to disseminate any information.  And

9  I explained to her my scenario of being in the hospital was --

10  that I told to you --

11        THE COURT:  Excuse me for breaking in.  But I wonder

12  if you could, rather than going through the background, tell me

13  what your objection is.  Just tell me what it is in plain

14  language.

15        MS. ROTH:  Well, my objection to you is I did not

16  leave the do -- receive the documation (sic) in time to hire a

17  lawyer.  I also thought that I was best in the company.  I

18  worked with Lehman Brothers from 1993 to 1995.  I'm on

19  disability and I've never seen any information with regard to

20  the plan being terminated.  I had various conversations with

21  Carol Rayo (ph.) when they notified me that it was going to be

22  seized and then I received a phone call which I had on tape

23  stating that there's no need to worry, everything will be

24  reinstated, there'll be no charges for insurance and you'll be

25  covered.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 51

1        THE COURT:  Okay.

2        MS. ROTH:  And so there was a lot of confusion and --

3        THE COURT:  I think I understand what you're saying as

4   follows.

5        MS. ROTH:  I have been with the company --

6        THE COURT:  If I could just -- if I could just break

7   in for a moment because --

8        MS. ROTH:  Yes, sir.

9        THE COURT:  -- I'm sympathetic to your situation but I

10  have a docket that I need to move through.  I need to find out

11  if there are other objectors and we need to move forward with

12  this morning's calendar.

13       It seems to me from what I've heard that you complain

14  that you did not have adequate notice of today's hearing, that

15  you want an opportunity to be able to express your opposition

16  to the relief being requested in a more formal way in which you

17  believe that it is unfair for you to be deprived of ongoing

18  benefits under the plan that is before the Court.

19       Did I fully summarize your position?        Lehman Brothers

20       MS. ROTH:  Yes, you did.                     Kuhn, Loeb, Inc.
                                                      (cont'd)
21       THE COURT:  Okay.

22       MS. ROTH:  And I was under the assumption since I

23  started at the very beginning with Lehman Brothers -- Inc. and   in 1983

24  went through every merger and acquisition, that I still have
                          stating
25  documents here saying I'm covered until I'm sixty -- at which
                                                        five

Primary carrier and Aetna is your secondary insurance
-- essentially what I have now -- being on disability

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 52

1    THE COURT:  I think I understand the nature of your

2    concern and I'm going to ask if there's anyone else who's on

3    the phone who wishes to be heard, to express something

4    different.

5    MS. ROTH:  Thank you, Your Honor.

6    THE COURT:  Thank you.

7    Is there anyone else who wishes to be heard on this

8    point?

9    MS. ROTH:  If I may add just one other issue?  I think



10   it would be fair and justice (sic) to have some type of Lehman

11   representative set up to answer questions and I guess further

12   explain the process and policies because there's so much

13   documentation that's conflicting.  And whomever I have called

14   has -- have no assistance whatsoever.

15   THE COURT:  Okay.  I understand -- I understand the

16   nature of your complaint.  Thank you very much.

17   I'm going to give the debtor through counsel an

18   opportunity to comment with reference to the individual

19   objections that have been lodged, but only if counsel feels

20   there's a need to comment.

21   MR. KRASNOW:  No, Your Honor.  We can't help but feel

22   sympathetic for some of the concerns that have been expressed,

23   but unfortunately, Lehman is where it is and we are not seeking

24   relief today that really goes to the issues that these people

25   have addressed and raised.  but to make one thing clear in

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1    twenty-five million and what we envision the future uses will

2    be.  I cannot speak, Your Honor, to what rights, if any, the

3    retirees will have, once we give them the notice, under

4    applicable law.  But whatever rights they may have, whatever

5    notices LBHI is required to give, it will give.

6              As I noted earlier, Your Honor, it's not clear we had

7    to give ninety days' notice when we decided to terminate the

8    plan as it related to them, but we thought it was the right

9    thing to do.  I would like to think, Your Honor, that that

10   approach will continue even after our emergence from Chapter

11   11.

12             I hope I've been responsive to Your Honor.

13             THE COURT:  You have been responsive, although I

14   suspect anybody who's listening to this won't really understand

15   what, if any, notice they're going to be able to get.  And I

16   think that's probably because you don't know.

17             MR. KRASNOW:  You're absolutely right, Your Honor.

18             THE COURT:  Okay.

19             MR. KRASNOW:  I've tried to explain it as best I can.

20             THE COURT:  Now, I do have a fundamental question that

21   I just don't know the answer to on the basis of looking at the

22   papers, which is whether or not the change in equity control of

23   Aceso, A-C-E-S-O, will lead to any change in ongoing management

24   of the VEBA in terms of the identity of the trustee, the

25   decision process with respect to the VEBA and the management of

Handwritten margin notes:
H/N Heard anything + made numerous attempts + forest!
D/N give 90 days!

Page 36

1    its assets.

2         MR. KRASNOW:  I think the answer is we don't believe

3    there will be any.  In fact, I don't want to speak for the SIPA

4    trustee, but I think one of the motivations that the SIPA

5    trustee had in agreeing to this transaction was that we were in

6    a better position to manage the VEBA than, frankly, the SIPA

7    trustee is.  They have a different focus than we have had.

8         I don't believe that today there is a view that there

9    will be a change in who is the trustee --

10        THE COURT:  Who is the trustee now?

11        MR. KRASNOW:  Carol Rado, I think is the trustee, who

12   is an employee of either LBHI or LAMCO.

13        UNIDENTIFIED SPEAKER:  LBHI.

14        MR. KRASNOW:  Of LBHI, Your Honor.

15        So there has been an LBHI employee who has been a

16   trustee of the VEBA since the commencement of the Chapter 11

17   case.  So that's -- there -- to that extent, LBHI, if you will,

18   has been involved -- certainly has been aware.  So we do not

19   envision, as of today, any change.

20        THE COURT:  Okay.  Is there anything more you wish to

21   add at this point?

22        MR. KRASNOW:  Your Honor, for the reasons set forth in

23   the motion and on the record, and I also would refer to the

24   declaration of Mr. Hershan, which was filed with the motion, we

25   believe that the proposed transaction is in the best interest

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 56

1   going to be taken, it may affect their rights, and provide them

2   with what amounts to a funded lawyer; a lawyer that can

3   represent the interests of the classes of affected

4   beneficiaries so that those separate classes can be advised in

5   a thoughtful and understandable way as to what their rights

6   are.  And it seems to me -- and I may not have every class

7   clearly in mind, but the three classes that may need separate

8   representation; by (sic) those who are current employees, those

9   who are retirees and those who are on disability.  It may be

10  that those who are on disability and those who are retirees

11  fall into the same category.  But I am not satisfied simply by

12  proving what amounts to a benign transaction in a setting that

13  includes so much obvious pain and concern on the part of those

14  who are looking to the VEBA as a source of Health care

15  coverage.

16          Now, having said what I've said, I do not mean to

17  overstep my prerogatives and jurisdiction.  For that reason,

18  I'm conditioning this on not an order from the Court, but a

19  strong suggestion with a request for voluntary compliance.  I

20  won't enter the order unless and until I hear a report as to

21  whether or not what I have suggested can be arranged.  If it

22  can't be, for good reason, I'll reconsider the conditions I've

23  imposed.

24          If there's anyone who wishes to say anything in

25  response to what I've said, this is the time to do it.

Page 55

1   to cover individuals who are otherwise subject to the

2   protection of the group benefit plan.

3           It is really that twenty-five million dollar

4   reimbursement that has been proposed but that is not part of

5   the motion itself that I believe has generated most of the

6   objections that we have heard today.  Additionally, I believe

7   that the objections are motivated by a profound sense of fear

8   and insecurity as to what will happen to particularly

9   vulnerable individuals who are dependent upon the health care

10  benefits that are funded by the VEBA.

11          I am extremely sympathetic to the objections that have

12  been raised and I recognize that counsel for the debtor has

13  also expressed sympathy.  In effect, however, those are hollow

14  words because expressing sympathy does not provide any

15  significant relief nor does it provide the information that the

16  individuals appear to require.

17          I will grant the relief requested but I'm going to

18  condition that relief upon something that may or may not be

19  within my powers.  I do not know whether or not I have any


20  ability to direct that the trustee of the VEBA or those working

21  at LBHI who are in control of the VEBA through Aceso, but I

22  would like the individuals who are in a position to make a

23  difference, to provide meaningful information to all of the

24  beneficiaries, both current employees, retirees and those on

25  disability, as to precisely what is going on, when action is

RE: Vertex regarding transcription to Hearing Nov 16, 2011

Hi, Barbara   Sign Out   Options   Help          Preview Mail w/ Y! Toolbar

Search

**EXHIBIT G**

Lehman Brothers 11/...

View your
2012 Credit Report

**Lehman Brothers 11/16/11 AMENDED TRANSCRIPT**    1         Hide Details

Inbox

FROM:  Dion Rupa                          Wednesday, January 11, 2012 2:27 PM

Drafts        120
TO:  nysbdrtranscripts@nysb.uscourts.gov
Sent

Spam        200     CC:  Barbara Roth

Trash         27

Folders        Please find the attached amended hearing transcript for the 11/16 hearing of Lehman Brothers.

Online Contacts    The following revisions were made:

Facebook Friends
Page 50  Line 7  Change "are" to "don't"          *High* - See Flash Drive for revisions &
Applications      Page 50  Line 17  Change "best" to "vested"      full disclosure, disseminated
Page 50  Line 21 Change Rayo (ph.) to Rado
All My Purchases   Page 51  Line 22 Add the words "Kuhn, Loeb"     by Vertext to all parties
Thank you!
Attach Large Files  -Dion Rupa                                    involved- 111 pages.
-Bankruptcy Department Manager
Calendar        -Veritext
-Department Line  888-706-4576
My Cool Fonts     -Direct  516-608-2438
-Fax  866-384-5124
Notepad

Stationery       Our Online Order Form can be located here:  http://www.veritext.com/bankruptcy-online-
form.aspx
Unsubscriber

**Please consider the environment before printing this email.**

**Veritext Deposition & Litigation Services**
*"Better in every case"*
Visit us at http://www.veritext.com

This E-Mail message and any documents accompanying this transmission may contain privileged and/or
confidential information and is intended solely for the addressee(s) named above.  If you are not the intended
addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the
contents of this e-mail information is strictly prohibited and may result in legal action against you. Please reply to
the sender advising of the error in transmission and immediately delete/destroy the message and any
accompanying documents.

This email has been scanned by the Symantec Email Security.cloud service.

1 Attached files  |  252KB

Lehman1116

Download

Reply to Dion Rupa                                     Send

Delete   Reply   Forward   Spam   Print

Lehman Brothers 11/16/11 AMENDED TRANSCRIPT - Yahoo! Mail      Page 1 of 1

08-13555-mg    Doc 41228-1    Filed 11/14/13    Entered 11/21/13 15:59:58    Exhibit

Pg 49 of 151

| leonard gers | | Search Web | bmral14 | Profile | | | Sign Out | Home |

**We Found Leonard Gerst⊃rLeonard Gersonamp; More.**         www.PeopleS...    Sponsored

### Lehman Brothers 11/16/11 AMENDED TRANSCRIPT

Wednesday, January 11, 2012 2:27 PM

From:    "Dion Rupa" <drupa@veritext.com>

To:    nysbdrtranscripts@nysb.uscourts.gov

Cc:    "Barbara Roth" <bmral14@yahoo.com>

1 Files    252KB    Download All

```
PDF   252KB
Lehman11
1611.pdf
```
Save

Please find the attached amended hearing transcript for the 11/16 hearing of Lehman Brothers.

The following revisions were made:

Page 50  Line 7  Change "are" to "don't"
Page 50  Line 17  Change "best" to "vested"
Page 50 Line 21 Change Rayo (ph.) to Rado
Page 51  Line 22 Add the words "Kuhn, Loeb"
Thank you!
-Dion Rupa
-Bankruptcy Department Manager
-Veritext
-Department Line  888-706-4576
-Direct  516-608-2438
-Fax  866-384-5124

Our Online Order Form can be located here: http://www.veritext.com/bankruptcy-online-form.aspx

Please consider the environment before printing this email.

Veritext Deposition & Litigation Services
"Better in every case"
Visit us at http://www.veritext.com

This E-Mail message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above.  If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this e-mail information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents.

This email has been scanned by the Symantec Email Security.cloud service.

Accepted Changes:

| Page | Line | Requested Change that was accepted |
|------|------|-------------------------------------|
| 50 | 7 | Change "are" to "don't" |
| 50 | 17 | Change "best" to "vested" |
| 50 | 21 | Change Rayo (ph.) to Rado |
| 51 | 22 | Add the words "Kuhn, Loeb" |

Rejected Changes:

| Page | Line | Requested Change | Reason change was not accepted |
|------|------|------------------|-------------------------------|
| 50 | 16 | Delete words "leave the do" | These words are stated in the audio. |
| 50 | 17 | Add the words "after 5 years of service" | These words are **not** stated in the audio. |
| 50 | 18 | Change 1993 to 1983 | The audio states 1993 |
| 50 | 25 | Add the words "without any premium costs to you as usual" | These words are **not** stated in the audio. |
| 51 | 23 | Add the word "1983" | 1983 is **not** stated in the audio. |
| 51 | 25 | Change "saying" to "stating" | The audio states "saying" |
| 51 | 25 | Add the words "five at which time Medicare becomes your primary carrier and Aetna is you secondary insurance -- essentially what I have now -- being on disability" | These words are **not** stated in the audio. |

Dear Mr. Rupa:

Per our telephonic discussion today, please find attached two separate scanned pages, 50 and 51, in pdf format, that illustrate and highlight the revisions on the transcript with regard to my objection regarding the VEBA, via telephone, for the above referenced hearing on Novmeber 16, 2011 -- Lehman Brothers Inc & Lehman Brothers Holdings, Inc., as the telephonic teleconferencing connection was relatively difficult to hear and somewhat muffled.

If you have any questions with regard to the changes, please feel free to contact me via telephone at 727-348-4751 at at your earliest convenience.   Upon completion of such, I would appreciate it if you could distribute to all appropriate parties involved, as well as, sending me an updated version for my file.

I would like to take this opportunity to thank you in advance for your rapid response, attention and cooperation.

Best wishes to you and your family for a happy, healthy and safe holiday season.

Sincerely,

Barbara Roth

---

This email has been scanned by the Symantec Email Security.cloud service.

---

Veritext Deposition & Litigation Services

*"Better in every case"*

Visit us at http://www.veritext.com

**Subject:**    RE: Revisions to Transcript -- Lehman Brothers Inc./LBHI Hearing November 16, 2011

**From:**    Dion Rupa (drupa@veritext.com)

**To:**    bmral14@yahoo.com;

**Date:**    Friday, December 9, 2011 10:13 AM


Good Morning Ms. Roth.


My transcriber has completed her review, and I've attached a word document detailing which changes she agreed with, and which she disagreed with.


Unfortunately a majority of the proposed edits the transcriber disagreed with as it was not stated in the audio files according to her.  We are only permitted to transcribe what was heard on the audio files.  We will redistribute the hearing transcript as soon as we are able.


Thank you,


-Dion Rupa
-Bankruptcy Department Manager
-Veritext Court Reporting
-Department Line  888-706-4576

-Direct  516-608-2438

-Fax  866-384-5124


Our Online Order Form can be located here:  http://www.veritext.com/bankruptcy/order


**Please consider the environment before printing this email.**

_____

**From:** Barbara Roth [mailto:bmral14@yahoo.com]
**Sent:** Thursday, December 08, 2011 1:04 PM
**To:** Dion Rupa
**Subject:** Revisions to Transcript -- Lehman Brothers Inc./LBHI Hearing November 16, 2011

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page

1    worked with, with Lehman, left out documentation with regard

2    how to file, where to file and the case number was missing

3    because there were sub cases with each motion.  Furthermore,

4    per this letter, I contacted Lehman's hotline and left a voice

5    mail message to find out how I can utilize forwarding this

6    motion to you and I did not receive a response that was

7    favorable until I was specifically told we are -- represent   *don't*

8    you, we're not at liberty to disseminate any information.  And

9    I explained to her my scenario of being in the hospital was --

10   that I told to you --

11         THE COURT:  Excuse me for breaking in.  But I wonder

12   if you could, rather than going through the background, tell me

13   what your objection is.  Just tell me what it is in plain

14   language.

15         MS. ROTH:  Well, my objection to you is I did not

16   leave the -- receive the documacion (sic) in time to hire a

17   lawyer.  I also thought that I was best in the company.  I    *vested*

18   worked with Lehman Brothers from 1983 to 1995.  I'm on         *1983*

19   disability and I've never seen any information with regard to

20   the plan being terminated.  I had various conversations with

21   Carol Rago (ph.) when they notified me that it was going to be  *Rago*

22   seized and then I received a phone call which I had on tape

23   stating that there's no need to worry, everything will be

24   reinstated, there'll be no charges for insurance and you'll be

25   covered. *w/o any premium costs to you. As usual.*

*after 5 years of service*

*vested X*

*1983 X*

*RADO, X*
*LB,*
*Trustee*
*( Veba )*

*without*

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                   516-608-2400

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1          THE COURT:  Okay.

2          MS. ROTH:  And so there was a lot of confusion and --

3          THE COURT:  I think I understand what you're saying as

4     follows.

5          MS. ROTH:  I have been with the company --

6          THE COURT:  If I could just -- if I could just break

7     in for a moment because --

8          MS. ROTH:  Yes, sir.

9          THE COURT:  -- I'm sympathetic to your situation but I

10    have a docket that I need to move through.  I need to find out

11    if there are other objectors and we need to move forward with

12    this morning's calendar.

13          It seems to me from what I've heard that you complain

14    that you did not have adequate notice of today's hearing, that

15    you want an opportunity to be able to express your opposition

16    to the relief being requested in a more formal way in which you

17    believe that it is unfair for you to be deprived of ongoing

18    benefits under the plan that is before the Court.

19          Did I fully summarize your position?

20          MS. ROTH:  Yes, you did.                    *Lehman Brothers,*
                                                        *Kuhn, Loeb, INC.*

21          THE COURT:  Okay.

22          MS. ROTH:  And I was under the assumption since I

→ X 23    started at the very beginning with Lehman Brothers -- Inc. and  *in 1983*

24    went through every merger and acquisition, that I still have

→ X 25    documents here saying *stating* I'm covered until I'm sixty *five* -- *at which*

*time Medicare* VERITEXT REPORTING COMPANY *becomes your*
212-267-6868          www.veritext.com                516-608-2400
*primary carrier and Aetna is your secondary insurance*
*-- essentially what I have now -- being on disability.*

EXHIBIT H

## Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Richard P. Krasnow
1-212-310-8493
richard.krasnow@weil.com

BY HAND DELIVERY

November 23, 2011

Honorable James M. Peck
United States Bankruptcy Judge
One Bowling Green
New York, NY 10004

Re:  In re Lehman Brothers Holdings Inc. et al, 08-13555 (JPM) (Jointly Administered) (the "Chapter 11
Cases"); In re Lehman Brothers Inc., Case No. 08-01420 (JPM) (the "SIPA Proceeding")

Dear Honorable Sir,

      We are writing to you on behalf of Lehman Brothers Holdings, Inc. ("LBHI") with
respect to the Joint Motion of LBHI and its affiliated chapter 11 debtors (collectively, the "Debtors"),
and James W. Giddens (the "SIPA Trustee"), the Trustee for the SIPA Liquidation of Lehman Brothers
Inc. ("LBI") under the Securities Investor Protection Act, as amended, pursuant to Sections 105(a) and
363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedures for (I)
Authorization and Approval of a Stock Purchase Agreement Regarding the VEBA and (II)
Authorization and Approval of a Settlement Regarding the Same (the "Motion") Chapter 11 Cases ECF
No. 21109; SIPA Proceeding ECF No. 4654.[1]

      During the course of the hearing held in respect of the Motion on November 16, 2011
(the "Hearing"), the Court was advised by LBHI and the SIPA Trustee, and confirmed by the
Department of Labor (the "DOL"), that the objection that the DOL had filed to the Motion had been
resolved based on an agreement by LBHI and the SIPA Trustee that the proposed order would be
revised to make it clearer that the only claims the LBHI and the SIPA Trustee, on behalf of LBI, will be
releasing against each other are claims, if any, that are property of their respective estates.  Accordingly,
on behalf of LBHI and the SIPA Trustee, we are providing you herewith both clean and blacklined
copies of a revised order reflecting the same.  A disk is enclosed as well.  *NO DISK ENCLOSED.*

      A copy of the revised order has been provided to the DOL.  The DOL, which is copied on
this letter, has authorized us to inform the Court that it has no objection to the form of the enclosed
order.

---

[1] All capitalized terms not defined in this letter have the meaning accredited to them in the Motion.

Honorable James M. Peck                                    **Weil, Gotshal & Manges LLP**
November 23, 2011
Page 2

At the conclusion of the Hearing, the Court indicated that it was prepared to grant the narrow, limited relief that LBHI and the SIPA Trustee sought in the Motion regarding the shares of Acesco, Inc. stock and the mutual releases, but requested that LBHI independently consider addressing two issues that had been raised by certain retirees either in filings with the Court or statements made in the record of the Hearing.

First, it was evident to the Court and LBHI that former employees on long term disability and retirees (collectively, for definitional purposes only, "Retirees") should be provided with reports regarding the status of their medical benefits. LBHI will provide such reports to Retirees, with respect to the balance remaining in the VEBA, including (1) estimated funds available in the VEBA for the payments of the premiums under the Aetna Policy; (2) payments made for the benefit of Retirees; and (3) the status of the exemption application that LBHI intends to file with the DOL with respect to LBHI's proposed reimbursement from the VEBA of medical benefit payments (including insurance premiums) that LBHI paid that should have been paid by the VEBA.

Second, it was also evident that a limited number of Retirees believe, or might believe, that they have vested medical benefits. By way of background, given the current nature of the Debtors' operations, in the Summer of 2009, LBHI concluded that, consistent with its fiduciary obligations, it could no longer continue to fund Retiree benefits. It then undertook an analysis to determine whether or not any Retirees had vested rights under the Group Benefits Plan. That was relevant because, although the Group Benefits Plan provides that LBHI has the right to modify or terminate medical benefits, absent application of the process provided for in section 1114 of the Bankruptcy Code it might not be able to do so with respect to anyone who has such vested rights.

After conducting due diligence, LBHI concluded that no one had vested rights under the Group Benefits Plan and accordingly, consistent with the terms of the Group Plan, and after giving approximately 90 days notice, LBHI terminated it as to retirees effective as of December 31, 2009. As to individuals who were on long term disability, such individuals were treated as continuing inactive employees and provided medical coverage in the same manner as active employees up to age 65. As of December 31, 2009, LBHI terminated their status as employees and thereafter offered them continued medical coverage under the Group Benefits Plan (and not the Aetna Policy) as required by COBRA as a result of their termination of employment. However, as noted, such termination might not be effective with respect to any individual Retiree who has vested rights. Accordingly, LBHI has the same interest as the retirees or disabled employees in verifying whether there are any individuals who have such rights.

At the Hearing, the Court suggested that LBHI consider a process by which current employees, those former employees on long term disability and retirees could be better informed as to whether or not they might have vested medical benefit rights. The Debtors submit that because the Debtors continue, and are planning to continue, to provide a contribution to the medical premiums of its workforce as provided in the Group Benefit Plan even after VEBA funds are no longer available, there is no need to address the interests of its current employees. The same, however, is not the case for Retirees. Given that, for the foregoing reasons, LBHI has a similar interest in the matter, and taking into account what can be implemented consistent with the applicable provisions of the Bankruptcy Code, and in particular the proscription under section 327(e) of the Bankruptcy Code of any counsel retained by debtors representing an interest adverse to the estate in respect of the matters for which it is retained (thus precluding the Debtors from retaining or compensating counsel for the Retirees), LBHI intends to

Honorable James M. Peck                                    **Weil, Gotshal & Manges LLP**
November 23, 2011
Page 3

*[handwritten left margin: never advised on such. * LD on numerous occasions. No response!]*

Cretain special counsel tasked with undertaking an independent analysis, on an expedited basis, of whether or not, based on any relevant documentation that LBHI and any Retirees provide to such counsel, any Retirees have vested medical benefit entitlements. Such counsel would provide its conclusions to both LBHI and Retirees, and would file a report with the Court describing the results of their analysis.

We have generally described the forgoing to the DOL, and it has advised that it disagrees with the Debtors' approach. The Debtors' submit that the foregoing is consistent with the objectives outlined by the Court at the Hearing, takes into account both the current status of the Chapter 11 Cases and what is permissible under the Bankruptcy Code and is in the best interests of all concerned. LBHI is currently in the process of identifying a professional with the requisite expertise. Once that is done, LBHI will retain that professional consistent with section 327 of the Bankruptcy Code and retention procedures orders that have been entered by the Court.

*[handwritten right margin: [o date] No documentation re status- still waiting.]*

We are available should the Court have any questions regarding the foregoing.

Respectfully submitted

*[signature]*

Richard P. Krasnow

cc: See Attached List

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                                     :      Chapter 11 Case No.

                                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      08-13555 (JMP)

                                                          :

            Debtors.                                      :      (Jointly Administered)

                                                          :

                                                          :

-------------------------------------------------------------x

In re                                                     :

                                                          :      Case No.

LEHMAN BROTHERS INC.,                            :

                                                          :      08-01420 (JMP) (SIPA)

            Debtor.                                       :

                                                          :

-------------------------------------------------------------x

ORDER GRANTING JOINT MOTION
OF LEHMAN BROTHERS HOLDINGS
INC. AND JAMES W. GIDDENS, AS TRUSTEE
FOR LEHMAN BROTHERS INC., PURSUANT TO
SECTIONS 105(a) AND 363 OF THE BANKRUPTCY
CODE AND RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION
AND APPROVAL OF A STOCK PURCHASE AGREEMENT
REGARDING THE VEBA AND (II) FOR AUTHORIZATION
AND APPROVAL OF A SETTLEMENT REGARDING THE SAME

        Upon the joint motion, dated October 21, 2011 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors") and

James W. Giddens (the "SIPA Trustee"), as trustee for the SIPA liquidation of Lehman

Brothers Inc. ("LBI"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for (i) authorization and approval of a Stock

Purchase Agreement (the "Stock Purchase Agreement") between LBHI and the SIPA

Trustee, pursuant to which LBHI will purchase and LBI will sell its 100% ownership

interest (the "Shares") in Aceso Holdings Inc., a wholly-owned subsidiary of LBI that

owns the VEBA, and (ii) authorization and approval of the settlement and release of all

claims by LBHI or LBI against each other or their affiliates related to the VEBA, all as

more fully described in the Motion; and upon the Declarations of Robert Hershan on

behalf of LBHI and of Spencer L. Harrison, Esq. on behalf of the SIPA Trustee in

support of the Motion; and the Court having jurisdiction in the Chapter 11 Cases to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein in

the Chapter 11 Cases being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

as to the Chapter 11 Cases being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having jurisdiction to consider the Motion and the relief

requested in the SIPA Proceeding pursuant to SIPA § 78eee(b)(4); and venue as to the

SIPA Proceeding being proper before this Court pursuant to SIPA § § 78eee(a)(3) and

78aa; and due and proper notice of the Motion having been provided in accordance with

the procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for the chapter 11 cases, LBHI ECF No.

9635, to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; and (vi) all parties who have requested notice in these chapter 11 cases; and

due and proper notice of the Motion having been provided in accordance with the

amended order entered in the SIPA Proceeding implementing certain notice and case

management procedures and other related relief, LBI ECF No. 3466; and personalized

notice of the Motion having been provided to each of Lehman's retirees and their

beneficiaries, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion; and the Court

having found and determined that the relief sought in the Motion is in the best interests of

LBHI and LBI, their estates and creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the

Bankruptcy Code, the Stock Purchase Agreement is approved and LBHI is authorized to

purchase and the SIPA Trustee, on behalf of LBI, is authorized to sell Aceso on the terms

and conditions set forth therein; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, LBHI

shall take title to and possession of LBI's interest in the Shares free and clear of all liens,

claims, encumbrances and other interests of any kind or nature whatsoever; and it is

further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI and the SIPA

Trustee's settlement and release of those claims of LBHI and LBI, if any, that constitute

property of their respective estates regarding the VEBA as set forth in the Stock Purchase

Agreement is authorized and approved; and it is further

ORDERED that LBHI is a good-faith purchaser of LBI's interest in the Shares and shall be entitled to all of the benefits and protections afforded in section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the consideration provided by LBHI for LBI's interest in the Shares is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that the Court shall retain jurisdiction to enforce and implement the terms and provisions of the Stock Purchase Agreement and this Order, and resolve disputes thereunder; and it is further

ORDERED that all objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

ORDERED that the failure to specifically include any particular provision of the Stock Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the implementation of the transactions provided for in the Stock Purchase Agreement be approved in its entirety; provided, however, that such approval shall not expand the scope of the releases provided for in the Stock Purchase Agreement beyond the scope of the same as authorized and approved in the third decretal paragraph of this Order; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), this Order shall be

effective and enforceable immediately upon entry.

Dated: _____, 2011
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------x
                                                 :
In re                                            :      Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,           :      08-13555 (JMP)
                                                 :
                    Debtors.                     :      (Jointly Administered)
                                                 :
                                                 :
                                                 :
-------------------------------------------------x
                                                 :
In re                                            :
                                                 :      Case No.
LEHMAN BROTHERS INC.,                            :
                                                 :      08-01420 (JMP) (SIPA)
                    Debtor.                       :
                                                 :
                                                 :
-------------------------------------------------x
```

## ORDER GRANTING JOINT MOTION
## OF LEHMAN BROTHERS HOLDINGS
## INC. AND JAMES W. GIDDENS, AS TRUSTEE
## FOR LEHMAN BROTHERS INC., PURSUANT TO
## SECTIONS 105(a) AND 363 OF THE BANKRUPTCY
## CODE AND RULE 9019 OF THE FEDERAL RULES OF
## BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION
## AND APPROVAL OF A STOCK PURCHASE AGREEMENT
## REGARDING THE VEBA AND (II) FOR AUTHORIZATION
## AND APPROVAL OF A SETTLEMENT REGARDING THE SAME

Upon the joint motion, dated October 21, 2011 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors") and

James W. Giddens (the "SIPA Trustee"), as trustee for the SIPA liquidation of Lehman

Brothers Inc. ("LBI"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for (i) authorization and approval of a Stock

Purchase Agreement (the "Stock Purchase Agreement") between LBHI and the SIPA

Trustee, pursuant to which LBHI will purchase and LBI will sell its 100% ownership

interest (the "Shares") in Aceso Holdings Inc., a wholly-owned subsidiary of LBI that

owns the VEBA, and (ii) authorization and approval of the settlement and release of all

claims by LBHI or LBI against each other or their affiliates related to the VEBA, all as

more fully described in the Motion; and upon the Declarations of Robert Hershan on

behalf of LBHI and of Spencer L. Harrison, Esq. on behalf of the SIPA Trustee in support

of the Motion; and the Court having jurisdiction in the Chapter 11 Cases to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334

and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting

C.J.); and consideration of the Motion and the relief requested therein in the Chapter 11

Cases being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue as to the

Chapter 11 Cases being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

and the Court having jurisdiction to consider the Motion and the relief requested in the

SIPA Proceeding pursuant to SIPA § 78eee(b)(4); and venue as to the SIPA Proceeding

being proper before this Court pursuant to SIPA § § 78eee(a)(3) and 78aa; and due and

proper notice of the Motion having been provided in accordance with the procedures set

forth in the second amended order entered on June 17, 2010 governing case management

and administrative procedures for the chapter 11 cases, LBHI ECF No. 9635, to (i) the

United States Trustee for Region 2; (ii) the attorneys for the Official Committee of

Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal
Revenue Service; (v) the United States Attorney for the Southern District of New York;
and (vi) all parties who have requested notice in these chapter 11 cases; and due and
proper notice of the Motion having been provided in accordance with the amended order
entered in the SIPA Proceeding implementing certain notice and case management
procedures and other related relief, LBI ECF No. 3466; and personalized notice of the
Motion having been provided to each of Lehman's retirees and their beneficiaries, and it
appearing that no other or further notice need be provided; and a hearing having been
held to consider the relief requested in the Motion; and the Court having found and
determined that the relief sought in the Motion is in the best interests of LBHI and LBI,
their estates and creditors, and all parties in interest and that the legal and factual bases set
forth in the Motion establish just cause for the relief granted herein; and after due
deliberation and sufficient cause appearing therefor, it is

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the
Bankruptcy Code, the Stock Purchase Agreement is approved and LBHI is authorized to
purchase and the SIPA Trustee, on behalf of LBI, is authorized to sell Aceso on the terms
and conditions set forth therein; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, LBHI
shall take title to and possession of LBI's interest in the Shares free and clear of all liens,
claims, encumbrances and other interests of any kind or nature whatsoever; and it is
further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI and the SIPA

Trustee's settlement and release of ~~claims~~those claims of LBHI and LBI, if any, that

constitute property of their respective estates regarding the VEBA as set forth in the Stock

Purchase Agreement is authorized and approved; and it is further

ORDERED that LBHI is a good-faith purchaser of LBI's interest in the

Shares and shall be entitled to all of the benefits and protections afforded in section

363(m) of the Bankruptcy Code; and it is further

ORDERED that the consideration provided by LBHI for LBI's interest in

the Shares is fair and reasonable and may not be avoided under section 363(n) of the

Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that the Court shall retain jurisdiction to enforce and

implement the terms and provisions of the Stock Purchase Agreement and this Order, and

resolve disputes thereunder; and it is further

ORDERED that all objections to the Motion that have not been

withdrawn, waived, or settled, and all reservations of rights included therein, are

overruled on the merits; and it is further

ORDERED that the failure to specifically include any particular provision

of the Stock Purchase Agreement in this Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the implementation of

the transactions provided for in the Stock Purchase Agreement be approved in its entirety;

provided, however, that such approval shall not expand the scope of the releases provided

for in the Stock Purchase Agreement beyond the scope of the same as authorized and

approved in the third decretal paragraph of this Order; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry.

Dated: _____, 2011
    New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

### Service List (letter plus copies of proposed order)

Gerson, Leonard
Gerson.Leonard@dol.gov        *202 203-5615*

Perlman, Leslie
Perlman.Leslie@dol.gov

Kenneth Lee        *(Represents LB)*
klee@levinelee.com

Jeffrey Margolin
margolin@hugheshubbard.com

Dennis C. O'Donnell
DODonnell@milbank.com

Donald B. Beets
8116 Penn Lane
Kansas City, MO 64114

Donald S. Bean
4132 S. Rainbow
Las Vegas, NV 89103-2058

Robert I. Coleman, Jr.
430 Village Place, Apt 302
Longwood, FL 32779

*RETIREE 1973-2006*        Steven G. Delaney        *OBJECTION LETTER*
4 Valley Ridge Road        *AT HEARING*
Harrison, New York 10528        *SEE TRANSCRIPT*

Jack E. Desens
PO Box 2079
Orleans, MA 02653

Anne Di Pasquale
57 South Emerson Ave.
Amity Harbor, NY 11701

Armita Fucci
1548 SW Mockinbird Circle
Port Saint Lucie, FL 34986

David W. Kelly
PO Box 1083
Truro, MA 02666

*OBJECTION LETTER FILED*

Antoinette La Belle
353 East 83rd St, 12F
New York, NY 10028
antoinettelabelle@msn.com

Barbara Malina
15 Hillcrest Rd
Berkeley, CA 94705

William J. Munro
1406 Grant Rd.
Northbrook, IL 60062

Marilyn B. Nader
9255 Short Chip Circle
Port St. Lucie, FL 34986

Robert & Sandra Nash
6 Venturi Ct.
Florham Park, NJ 07932

*HR –LB OBJECTION LETTER*                    *SEE TRANSCRIPT AT HEARING.*

MaryAnne Rasmussen
166 East 63rd Street, Apt 19A
New York, NY 10065

Louise Roberto
134 Buel Ave.
Staten Island, NY 10305

*OBJECTION LETTER*

Barbara Roth
1216 South Missouri Ave, #414   *VIA COURTCALL*
Clearwater, FL 33756
bmrall4@yahoo.com

John G. Till
1320 Vista Morada
Santa Fe, NM 87506
jgtill@usa.net

OBJECTION LETTER

Wendy M. Uvino
50 East 89th Street
New York, New York 10128

COURT APPEARANCE
SEE TRANSCRIPT

3

# LEHMAN BROTHERS

EXHIBIT I

November 29, 2012

RE: 2013 Medical Benefits through Aetna

Dear Former Employee on LTD:

We are writing to confirm that medical benefits coverage will be made available to you by Aetna for 2013. As in 2012, the Lehman Health Care Trust will be permitted to fund a portion of the premiums due to Aetna.

The coverage available for 2013 remains an Open Access "Point of Service" plan allowing for both in-network and out-of-network coverage, and provides the same benefits as the 2012 coverage. The Core, Buy-Up 1 and Buy Up 2 plan designs in effect for 2012 will continue for 2013. Monthly premiums may be adjusted if you select a different plan option than you were enrolled in for 2012.

As you may recall, a Notice of Termination of Long-Term Disability Employee Benefits, informing you that Lehman Brothers Holdings Inc. (LBHI) exercised its right to change your status and thereby terminate all employee benefits (other than continuation of long term disability payments in accordance with the Long-Term Disability Insurance contracts) effective December 31, 2009. Although coverage was terminated, alternate coverage was made available to you through Aetna. In addition, the Lehman Health Care Trust was permitted to subsidize a significant portion of the annual premiums for 2010, 2011 and 2012, and will continue to do so through December 31, 2013.

Please note that Lehman Brothers Holdings Inc. has engaged Dechert LLP to serve as special counsel to the company to provide advice regarding whether any retired individuals or former employees on long term disability have vested benefits under the plan. Dechert LLP will inform individuals of its findings based on its review of the relevant documentation and the applicable law. Upon completion of Dechert's review we will provide you with additional information concerning coverage for 2014 and beyond.

Please review the enclosed materials regarding the coverage offered for 2013. **Please note that if you wish to continue your current coverage for 2013 you do not need to take any action.**

**If you wish to _change_ your coverage level for 2013, please complete the enclosed enrollment form and return it to the HR Service Center on or before December 14, 2012.**

If you **do not** wish to enroll in coverage for 2013, please notify the Lehman Brothers HR Service Center on or before December 14, 2012.

Lehman Brothers HR Service Center
1271 Avenue of the Americas, 39th Floor
New York, NY 10020
Tel: 646-285-9800
Toll Free: 1-866-994-6381
Email: hrservices@lehmanholdings.com
Fax: 646-285-9319

*Sent to me by a Lehman Bros Retiree Employee*

*EXHIBIT C, JANUARY 11, 2010 - DEAR LB Retiree:*
*RE: RETIREE MEDICAL COVERAGE THROUGH AETNA*

# LEHMAN GROUP HEALTH CARE TRUST

January 11, 2010

Re: Medical Coverage Through COBRA and Aetna

**EXHIBIT J**

Dear Lehman Brothers Plan Participant: 

You previously received letters from Lehman Brothers Holdings Inc. ("LBHI") advising you of the termination of your Lehman health care coverage and your opportunity to elect, at your cost, continued coverage ("COBRA continuation option").

The purpose of this letter is to advise you of a recent development relating to the funding of health care coverage and how it might affect your COBRA continuation option.

You were previously advised that there was uncertainty as to whether the Lehman Group Health Care Trust ("Health Care Trust") would be used for payment of eligible benefits for retirees, including former employees on disability or other permitted leave of absence. The Health Care Trust is sponsored by Aceso Holdings, Inc. ("Aceso"), a wholly owned subsidiary of Lehman Brothers Inc. ("LBI"), which is in the midst of a liquidation proceeding under the Securities Investor Protection Act of 1970 ("SIPA"). James W. Giddens, Trustee for the SIPA liquidation of the business of LBI ("Trustee"), recently determined to permit the Health Care Trust to fund a portion of the costs of health care coverage of retirees, including former employees on disability or other permitted leave of absence.

*No premium cost to me.*

In any case, you will nonetheless be required to pay a portion of the cost of your continued health care coverage in the amount established for 2010 and from time to time thereafter, unless you opt out of coverage.

The Trustee has expressed his intent to permit the Health Care Trust to be used for payment of premiums (including COBRA continuation premiums), but arrangements to permit such payments to occur have not been finalized. Many retirees had an opportunity to elect health care coverage, at their expense, under an insured arrangement separately with Aetna, and the Trustee, LBHI and Aetna have begun discussions to work out how the Health Care Trust can pay premiums under the Aetna Policy for retirees. Due to the availability of COBRA continuation coverage, the Aetna arrangement was not made available to you. However, the Trustee, LBHI and Aetna will also discuss coverage under the Aetna Policy for former employees on disability or other permitted leave of absence.

**Change in Funding**

**LBI has been informed by LBHI that the termination of your health benefits coverage under the Lehman benefit plans, occurred as scheduled on December 31, 2009, and such coverage is not being reinstated.**

However, in the event arrangements are finalized to permit the Health Care Trust to pay for a portion of the costs of health care coverage for former employees on disability or other permitted

*7 ACTIVE - DIFFENT LETTER (SAME DATE)*

leave of absence, such payment could be made towards COBRA continuation coverage or under a modified Aetna Policy directly by the Health Care Trust.  The amount of premiums paid by the Health Care Trust can change at any time, and the Aetna Policy may be amended or terminated at any time.

**No Increase in Your Costs; New Plan Design Applies**
Assuming arrangements for the Health Care Trust to pay premiums are finalized, your plan costs for 2010 will not increase over 2009 costs and therefore you will not be responsible for the full cost of coverage. You will pay the same amount in 2010 as you paid during 2009.  The 2010 plan design mailed to you in November will apply, including, if applicable, the Medicare Open$^{SM}$ Plan and Enhanced Medicare Part D prescription drug coverage.

The Aetna arrangements and the amounts paid by the Health Care Trust are subject to change from year to year, or at any other time.

**Enrollment & Opt Out Process**
You will be automatically enrolled in the new 2010 benefit plan, unless you contact us **to opt out of the plan.**

If you previously contacted the Lehman Brothers HR Service Center to opt out and you now wish to make a change based on the plan funding, please contact us at **646-285-9800 or 866-994-6381.** Please indicate that you are a Lehman Brothers retiree and be ready to provide the last 4 digits of your Social Security number.

**Questions?**
If you have any questions, please call Aetna toll free at **1-800-307-4830** (TTY/TDD: 1-800-628-3323).  The Aetna plan specialists are available Monday through Friday, 8 a.m. to 6 p.m. to personally help you with any questions you might have. You can also visit Aetna online at www.aetnamedicare.com.

**EXHIBIT E**

*[handwritten: Weil, Gotshal & Manges LLP (Nov 14, 2011)]*

*[handwritten: Second letter sent out with same dated material and addressed to Dear LB Participant (See Exhibit J)]*

## LEHMAN GROUP HEALTH CARE TRUST

January 11, 2010

Re: Retiree Medical Coverage Through Aetna

Dear Lehman Brothers Retiree:

You previously received letters from Lehman Brothers Holdings Inc. ("LBHI") advising you of the termination of the Lehman Retiree Health and Medical Plan ("Retiree Plan") and alternative coverage options available separately through Aetna ("Aetna Policy"). The purpose of this letter is to advise you of a recent development relating to the funding of premiums under the Aetna Policy.

**Change in Funding**

Lehman Brothers Inc. ("LBI"), is in the midst of a liquidation proceeding under the Securities Investor Protection Act of 1970 ("SIPA"). James W. Giddens, Trustee for the SIPA liquidation of the business of LBI ("Trustee"), recently determined to permit the Lehman Group Health Care Trust ("Health Care Trust") sponsored by Aceso Holdings, Inc. ("Aceso"), a wholly owned subsidiary of LBI, to fund a portion of the premiums under the Aetna Policy for retirees. In any case, you will nonetheless be required to pay a portion of the premiums in the amount established for 2010 and from time to time thereafter, unless you opt out of coverage.

**LBI has been informed by LBHI that the Lehman benefit plans previously providing Retiree Health Benefits terminated on December 31, 2009, and are not being reinstated.** As a result, the Aetna Policy will be modified to permit premium payments directly by the Health Care Trust. The amount of premiums paid by the Health Care Trust can change at any time, and the Aetna Policy may be amended or terminated at any time.

You were previously advised that there was uncertainty as to whether the Health Care Trust would be used for payment of eligible benefits for retirees. The Trustee has expressed his intent to permit the Health Care Trust to be used for payment of premiums, but arrangements to permit such payments to occur have not been finalized. The Trustee, LBHI and Aetna have begun discussions to work out how the Health Care Trust can pay premiums under the Aetna Policy for retirees.

**No Increase in Your Costs; New Plan Design Applies**

Assuming arrangements for the Health Care Trust to pay premiums are finalized, your plan costs for 2010 will not increase over 2009 costs and therefore you will not be responsible for the full cost of coverage. You will pay the same amount in 2010 as you paid during 2009. The 2010 plan design mailed to you in November will apply, including, if applicable, the Medicare Open$^{SM}$ Plan and Enhanced Medicare Part D prescription drug coverage.

The Aetna arrangements and the amounts paid by the Health Care Trust are subject to change from year to year, or at any other time.

US_ACTIVE:\43257045\06\58399.0003

**Enrollment & Opt Out Process**
You will be automatically enrolled in the new 2010 benefit plan, unless you contact us **to opt out of the plan.**

If you previously contacted the Lehman Brothers HR Service Center to opt out and you now wish to make a change based on the plan funding, please contact us at **646-285-9800 or 866-994-6381.** Please indicate that you are a Lehman Brothers retiree and be ready to provide the last 4 digits of your Social Security number.

**Questions?**
If you have any questions, please call Aetna toll free at **1-800-307-4830** (TTY/TDD: 1-800-628-3323). The Aetna plan specialists are available Monday through Friday, 8 a.m. to 6 p.m. to personally help you with any questions you might have. You can also visit Aetna online at www.aetnamedicare.com.

# LEHMAN BROTHERS

**EXHIBIT K**

EMMANUEL CALLIAS
ASSISTANT VICE PRESIDENT

January 11, 2007

Barbara Roth
1216 S. Missouri Avenue
#414
Clearwater, FL 33756

Dear Barbara:

Please accept this letter as notification that there will be no change to your medical plan for 2008.  You will continue to be covered under the Aetna LTD Major Medical plan, group number 697759-010-00012. Enclosed you will find a copy of the LTD Major Medical plan document.  Please note that effective January 1, 2007 the lifetime maximum has been eliminated.

Please feel free to contact me by phone at (212) 320-7048 or via email at emmanuel.callias@lehman.com with any questions.

Sincerely,

Emmanuel Callias
Assistant Vice President
Lehman Brothers Inc.
1301 Avenue of the Americas
6th Floor
New York, NY 10019

Enclosure

Aetna

Jan 10, 2008 @ 3:44 pm - V/M   Anthony (Aetna) 215 775 8044

No emails per conversation - Refuses to b/4
verbal conversation in writing

Lehman Brothers   9:59 pm   Manny Callius - Will forward in writing
documentation that I will remain in
the indemnity plan. In addition,
he will include no maximum
cap on policy - unlimited insurance.
Will call Aetna re: hospital admit
as 1 visit w/o new deductibles
Will call Aetna + C/b grap #.



| | From: | AetnaMemberServices@aetna.com |
| | To: | bmral14@yahoo.com |
| | Date: | Mon, 7 Jan 2008 13:39:15 -0500 (EST) |
| | Subject: | Re: Contact Us |

Secure Reply

---

Dear Barbara:

Thank you for using the Aetna Navigator website to contact Aetna Member
Services.

Your medical plan is a Comprehensive Indemnity plan which allows you to
use any providers.  You would have to contact Merck Medco at
800-597-0179 for information on your prescription plan.

If you have questions, you can reach Member Services by logging on to
www.aetnanavigator.com and select "Contact Us."  You may also call the
toll-free number on your member ID card.

Sincerely,
Internet Response Team
Aetna
12194259

"This e-mail may contain confidential or privileged information.  If you
think you have received this e-mail in error, please advise the sender
by reply e-mail and delete this message immediately.  Thank You. Aetna."

*NA NEMABB - Other - Blue Bell

Original Message Excluded:
------------------------

---

**PostX Secured Email**



**From:** AetnaMemberServices@aetna.com
**To:** bmral14@yahoo.com
**Date:** Tue, 8 Jan 2008 08:25:28 -0500 (EST)
**Subject:** Re: Contact Us

Secure Reply

*Voided error on aethena's part*

Dear Barbara:

Thank you for using the Aetna Navigator website to contact Aetna Member Services.

Please note that e-mails are not secure. To help protect your confidential information, use our Online form to send future messages. The Online form provides greater security than standard Internet e-mail.

We apologize for the error. Our records indicate that effective 1/1/08 your plan changed from a Comprehensive Indemnity plan to a Choice POS II plan.

This new plan has both in and out of network benefits. In network coverage is generally at 90% or 100% of the allowed amount with no deductible. There is a copy of $20 for primary care physicians and $30 for specialists. Out of network coverage is at 70% of the allowed amount after a $400 deductible.

If this plan change is not correct, you will need to contact your benefits or HR department.

If you have questions, you can reach Member Services by logging on to www.aetnanavigator.com and select "Contact Us." You may also call the toll-free number on your member ID card.

Sincerely,
Internet Response Team
Aetna
12197173

"This e-mail may contain confidential or privileged information. If you think you have received this e-mail in error, please advise the sender by reply e-mail and then delete this e-mail immediately. Thank you. Aetna"


General pool

Original Message Excluded:
------------------------

**PostX Secured Email**

For Long Term Disability Recipients

EXHIBIT K

# Benefits

LEHMAN BROTHERS

# Table of Contents

Introduction ................................................................1
    Eligibility ...........................................................1
    For Further Information.......................................1

Insurance Earnings...................................................1
    Definition of Insurance Earnings ........................2

LTD Income Payments ..........................................2
    Benefit Offsets ...................................................3
    Assumed Receipt of Benefits ...............................3

Semi-Annual Billing ...............................................4

Medical Coverage ...................................................4
    Medical Plan for LTD Recipients .......................4
    LTD Medical Plan Benefits at-a-Glance..............7

Ætna Dental PPO ...................................................8
    Highlights of the Dental PPO Plan                    8

Vision Care Plan.....................................................9
    Highlights of the Vision Care Plan ......................9

Life Insurance ......................................................10
    Use of Insurance Earnings to Determine Coverage...............10
    Reduction at Age 65 and Over.............................10

Lehman Brothers Savings Plan ...........................10
    Outstanding Loans ............................................11
    Distribution of Savings Plan Balance ..................11

Retirement Plan ...................................................12

Stock Award Plan .................................................12

Brokerage Accounts..............................................13

# Introduction

This booklet is designed to explain your Lehman Brothers benefit plan options now that you are a Long Term Disability (LTD) Recipient. As an LTD Recipient, you are entitled to continue some – but not all – of the benefits you had while you were an active employee.

## Eligibility

In order to be an LTD Recipient, you must be:

- ❑ a formerly active Lehman Brothers employee who was eligible to participate in the Firm's U.S. benefits plan while active; and

- ❑ approved by Cigna Life Insurance Company ("Cigna"), our LTD insurance carrier, to receive Long Term Disability income payments.

*HAVE UNUM NOT CIGNA
as LTD Insurance Carrier*

If you accept a lump sum payment from Cigna, in lieu of monthly LTD income payments, you cease to be an LTD Recipient and are no longer eligible for LTD Recipient benefits.

### Important Notice – No New Dependents

No new dependents (spouse, domestic partner or dependent child) can be added to your medical, dental and/or vision care coverages. Only dependents who were covered under your plans while you were an active employee are eligible for coverage now that you are an LTD Recipient.

## For Further Information

If you have questions about your LTD income payments, please contact the Cigna Disability unit at 800-532-9288.

If you have specific questions about your other benefits, please contact the Lehman Brothers Benefits Service Center by telephone at 201-524-2363, or by E-mail at BServices@lehman.com.

# Insurance Earnings

Your LTD income payments, your life insurance coverage and your portion of the cost of Medical Plan coverage are all based on your insurance earnings in effect on your last day worked. Although the Firm recalculates Insurance Earnings for active employees every April 1, that recalculation does not affect LTD Recipients.

For example, if your last day worked was February 15, you would become eligible for LTD benefits on or about August 15. Your Insurance Earnings, however, would be based on those in effect on February 15. The Firm's April 1 recalculation would not change the amount of your Insurance Earnings or your life insurance coverage.

## Definition of Insurance Earnings

While you were an active employee, the Firm recalculated your Insurance Earnings each year, using the following:

- ❖ annualized base salary in effect on December of the prior year;

- ❖ eligible bonuses for the prior year's performance paid through February of the current year, including the discounted value of any Restricted Stock Units ("RSUs") awarded as part of the bonus;

- ❖ production compensation paid in the prior year, including the discounted value of RSUs awarded as part of your production compensation.

The Insurance Earnings calculation is based on gross earnings prior to any deferrals for the Lehman Brothers Savings Plan or your Flexible Spending Account.

# LTD Income Payments

Your monthly LTD income payments, also sometimes referred to as "LTD benefits" are based on your Insurance Earnings in effect on your last day worked (see the "Insurance Earnings" section on page 1).

If you were enrolled in the Basic LTD Plan while you were active, you are eligible for LTD income payments of 60% of your Insurance Earnings to a maximum of $50,000 of Insurance Earnings. The maximum LTD income under the Basic LTD Plan is $2,500 per month. Because the Basic LTD Plan was paid for by the Firm, LTD income payments under the plan are taxable to you.

If you were also enrolled in the Supplemental LTD Plan while you were active, you are eligible for additional LTD income payments of 60% of any Insurance Earnings over $50,000 to a maximum of $250,000 of additional Insurance Earnings. The maximum LTD income under the Supplemental LTD Plan is $12,500 per month. Because the Supplemental LTD Plan was paid for by you, LTD income payments under the plan are *not* taxable to you.

Your monthly LTD income payments may be reduced by other disability income. See the "Benefit Offsets" section on page 3 for details.

2

# Benefit Offsets

The actual amount of your monthly LTD income will take into consideration other disability income you receive. LTD income will be reduced by:

1. any amounts you *or your dependents* receive on account of your disability under:

   - ❖ the Firm's salary continuation policy;
   - ❖ any state disability or retirement benefits which you receive, or are assumed to receive* on your own behalf;
   - ❖ any group or franchise insurance or similar plan for persons in a group;
   - ❖ the Canada and Quebec Pension Plans;
   - ❖ any local, provincial or federal government disability or retirement plan or law;
   - ❖ the Jones Act; or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;
   - ❖ any work loss provision in the mandatory part of any "no-fault" auto insurance policy;

2. any disability or old age benefits payable under the federal Social Security Act which you receive or are assumed to receive* on your own behalf, on behalf of your dependents, or which your dependents receive on account of your receipt or assumed receipt* of such benefits; and

3. any retirement benefits which you receive under (a) the Lehman Brothers Holdings Inc. Retirement Plan; (b) the Canada and Quebec Pension Plans; (c) the Railroad Retirement Act or the Railroad Unemployment Act, to the extent these benefits are funded by the Employer.

Payments under an individually-owned disability policy do not reduce your benefit under the Firm-sponsored LTD Plan.

# Assumed Receipt of Benefits

If you are covered under the U.S. Social Security Act for any disability or old age benefit, state disability (if applicable), workers' compensation or similar laws, you must file for these benefits and you will be assumed to be receiving such benefits for yourself (and for your dependents, if applicable). These "assumed benefits" will be the amount the insurance company, Cigna, estimates you (and your dependents, if applicable) are eligible to receive. This assumption will not be made if you give Cigna proof that:

   - ❖ you have applied for these benefits; and
   - ❖ payments were denied.

---

* See the "Assumed Receipt of Benefits" section, beginning on this page, for details.

However, if payments for disability are denied solely because your disability is not expected to last at least 12 consecutive months, you will be assumed to be receiving such benefits after your disability has continued for 12 consecutive months. This assumption will not be made if you give Cigna proof that:

- ❖ you have re-applied for these benefits; and
- ❖ payments were again denied.

Cigna will not assume receipt of, nor reduce your monthly benefits by, any elective, actuarially reduced early retirement benefits under such laws unless and until you actually receive such benefits.

## Semi-Annual Billing

While you are an LTD Recipient, you will be billed twice a year – in January and July – for any benefit premiums you owe. You may choose to cancel any or all of your benefit plans at any time, by contacting the Lehman Brothers Benefits Service Center by E-mail at BServices@lehman.com or by telephone at 201-524-2363.

*Not applicable as Ni premiums cost $0 LB pays premiums while on LTD*

## Medical Coverage

If you were enrolled in the Medical Plan while you were active, you are entitled to continue your medical coverage while you are on LTD. You will be required to pay the employee cost of the premium (equal to the active employee premium) for your medical coverage, and the Firm will continue to pay the employer cost. See the "Semi-Annual Billing" section on page 4 for details.

*Not applicable as No premiums $0 costs LB pays premium while on LTD*

If you were enrolled in an HMO while you were active, you may remain in that HMO. If you were enrolled in the Ætna Open Choice or Cigna PPO option while you were active, you will be transferred automatically into the Medical Plan for LTD Recipients.

## Medical Plan for LTD Recipients

The Medical Plan for LTD Recipients (the "LTD Medical Plan" or the "Plan"), which is administered by Ætna, reimburses a portion of covered medical expenses incurred due to illness or injury after you have met the annual *deductible*. Typically, after the annual deductible has been met, covered expenses under the LTD Medical Plan are reimbursed at 80% of *reasonable and customary expenses*. Once you have met your annual *out-of-pocket maximum*, the Plan reimburses at 100% of reasonable and customary expenses. The chart on page 7 contains a brief outline of the LTD Medical Plan benefits.

LTD Handbook1.doc

## New Identification Cards

Ætna will mail your new identification card (two cards if you have family coverage) to your home address. Be sure to show your new ID card every time you go to the hospital or see a physician.

## Claim Forms

Medical claim forms are available from Ætna Customer Service at 800-345-4432 or from the Lehman Brothers Benefits Service Center at 201-524-2363.

## Medicare

If you have been approved for Social Security Disability and have been receiving Social Security Disability benefits for a period of 24 months, you will become eligible for Medicare Parts A and B. If you are still an LTD Recipient at that time, the LTD Medical Plan will become the *secondary* payer of medical expenses and Medicare will be the primary payer.

It is very important that you properly enroll in both Medicare Parts A and B to maintain your full coverage. You will receive Medicare enrollment information from the Social Security Administration after you have been receiving Social Security Disability benefits for 20 months.

## Deductible

The deductible is the initial amount of covered expenses you must pay each year before the Plan begins to reimburse you. The deductible may be met with covered hospital, medical or prescription drug* expenses. The LTD Medical Plan deductible is $350 per person, per calendar year.

The family deductible limit is $700. Once any combination of covered expenses reaches $700, the Plan will reimburse covered expenses for all covered family members.

## Out-of-Pocket Maximum

The LTD Medical Plan puts a maximum on the total annual amount that you and your covered dependents have to pay for covered expenses. This is called the out-of-pocket maximum, and it is made up of the 20% of covered expenses (after the deductible) that the Plan does not reimburse. When your share of covered expenses exceeds a certain amount, the Plan begins to reimburse covered expenses at 100% of reasonable and customary charges for the remainder of the calendar year.

The LTD Medical Plan out-of-pocket maximum is $3,500 per person, per calendar year.

---

* Copays for the Mail Service Prescription Drug Program do *not* count toward your deductible or out-of-pocket maximum.

## Reasonable and Customary Expenses

Covered expenses are reimbursed at 80% of "reasonable and customary" charges. The reasonable and customary charge for a service or supply is the lower of: (a) the provider's usual charge for furnishing it; or (b) the charge Ætna determines to be the prevailing charge level made for it in the geographic area where it is furnished.

In determining the reasonable and customary charge for a service or supply that is unusual or not often provided in your area, or provided by only a small number of providers in your area, Ætna may take into account factors such as: complexity, degree of skill needed, type of specialty of the provider, range of services or supplies provided by a facility and the prevailing charge in other areas.

## Pretreatment Review

You or your doctor should contact Ætna before any major procedure to determine the reasonable and customary charge for that procedure. Contact Ætna Member Services at (800) 345-4432 to obtain a "pretreatment estimate" form.

## Medical Necessity

In order for an expense to be covered under the LTD Medical Plan, it must be determined by Ætna to be medically necessary. A service or supply furnished by a particular provider is deemed medically necessary if Ætna determines that it is appropriate for the diagnosis, the care or the treatment of the disease or injury involved.

## Maximum Lifetime Benefits

You and your covered family members each have a lifetime maximum of $1,000,000 under the LTD Medical Plan.

# LTD Medical Plan Benefits at-a-Glance

| Plan Provision | Benefit |
|---|---|
| Annual deductible | $350 |
| Out-of-pocket maximum | $3,500 |
| Lifetime maximum benefit | $1,000,000 |
| Precertification | Yes (in-patient hospitalization only) |
| Office visits (including specialist) | 80% after deductible |
| Choice of doctors | Any provider |
| Claim forms required | Yes |
| *Hospital Services* | |
| Semi-private room and board | 80% after deductible |
| Surgery (in- or out-patient) | 80% after deductible |
| Emergency room | 80% after deductible |
| Emergency room for non-emergency care | **Not covered** |
| *Preventive Care* | |
| Routine physical | **Not covered**[*] |
| Ob/gyn (one per year) | **Not covered**[*] |
| Well-baby care (to age 6) | 80% no deductible |
| *Mental Health Benefits* | |
| In-patient | 80% after deductible Benefit maximum, 30 days per year |
| Out-patient | 50% after deductible Benefit maximum, 30 visits per year |
| *Prescription Drugs* | |
| Retail pharmacy (discounted price available with Prescription Card) | 80% after deductible |
| Mail order pharmacy (for mail order forms, contact the Benefits Service Center at 201-524-2363) | 100% after copayment $7 generic; $20 brand name |
| *Maternity Care* | |
| Doctor and hospital charges | 80 % after deductible |

---

[*] The LTD Medical Plan includes a $100 annual wellness care allowance. The $100 allowance can be applied to any preventive service.

# Ætna Dental PPO

If you were enrolled in the Ætna Dental PPO Plan while you were active, you are entitled to continue your dental coverage while you are on LTD. You will be required to pay the employee cost of the premium (equal to the active employee premium) for your dental coverage, and the Firm will continue to pay the employer cost. See the "Semi-Annual Billing" section on page 4 for details.

## Highlights of the Dental PPO Plan        *Jennifer*

The Ætna Dental PPO Plan offers both in- and out-of-network benefits. That is, you have the choice to go in- or out-of-network each time you seek dental care. The following chart contains a brief outline of the in- and out-of-network benefits.

| Plan Feature | In-Network | Out-of-Network |
|---|---|---|
| **Deductible** | | |
| Individual | $0 | $50 |
| Family | $0 | $100 |
| **Annual Maximum** | $2,000[1] | $1,000[1] |
| **Covered Expenses** | **Reimbursement Percentage** | |
| **Preventive Services:**<br>■ Routine examination (2 per year)<br>■ X-rays: full x-rays every 36 months or bitewing x-rays every 12 months<br>■ Cleanings/scalings/polishings (2 per year)<br>■ Fluoride treatment (under age 16 only) | 100% | 80%[2] |
| **Minor Restoration Services:**<br>■ Fillings<br>■ Non-molar root canal therapy<br>■ Emergency treatment of tooth pain<br>■ Routine extractions | 80% | 60% |
| **Major Services, including:**<br>■ Molar root canal therapy<br>■ Periodontal treatment<br>■ Wisdom tooth extraction<br>■ Bridgework and dentures<br>■ Crowns | 60% | 50% |
| **Orthodontics (Children Only)**<br>Lifetime Maximum | 50%<br>$2,500 | 50%<br>$1,500 |

---

[1] The maximum reimbursement under the Plan is $2,000, even when using combined in-and out-of-network benefits.
[2] Deductible is waived for preventive services.

8

# Vision Care Plan

If you were enrolled in the Vision Care Plan while you were active, you are entitled to continue your vision coverage while you are on LTD. You will be required to pay the employee cost of the premium (equal to the active employee premium) for your vision coverage. See the "Semi-Annual Billing" section on page 4 for details.

## Highlights of the Vision Care Plan

*not Enrolled*

The Vision Care Plan, administered by Davis Vision, offers in- and out-of-network benefits. When you use Davis Vision providers and materials, there is virtually no out-of-pocket cost to you. There are *very limited* out-of-network benefits. If you do not use the Davis Vision providers, the Plan provides only a small, fixed reimbursement.

Below is a list of some of the highlights of the Vision Care Plan:

❑ Comprehensive eye examination from a Davis Vision network provider every 12 months – no copay.
❑ Choose from any one of Davis Visions' 300 name-brand and designer frames every 24 months – no copay.
❑ Virtually any type of eyeglass lenses available every 12 months – most with no copay.
❑ Fixed dollar allowances if you wish to purchase eyeglass frames or contact lenses that are not covered under the Plan, or if you go to a non-network provider.
❑ If you use the Davis Vision provider network, you do not need to file any claim forms.

## Special Features

Some special eyeglass lens features require an additional copay. For example:

| Special Feature | Copay |
| --- | --- |
| Polaroid Lenses | $75 |
| Glare Resistant Treatment | 35 |
| Transitions® Lenses – Single Vision or Multifocal Lenses | 65 |

## Contact Lenses

❑ In lieu of eyeglass lenses, every 12 months the Plan provides a $125 credit toward the purchase of contact lenses, including fitting fees and follow-up care. You are responsible for any cost in excess of the $125 credit.
❑ The $125 credit is applicable to any type of contact lenses in your provider's selection, including toric or gas permeable lenses.
❑ A mail order replacement contact lens service, Lens 1-2-3®, is also available. For more information, including costs, please call Lens 1-2-3® at 1-800-536-7123.

# Life Insurance

You are entitled to keep your Group Term Life and/or your Group Variable
Universal Life insurance in effect while you are on LTD. To do so, you will
be required to pay the employee cost for your coverage. You may choose to
keep both your Basic and Supplemental coverage in effect, or to cancel one or
both coverages. See the "Semi-Annual Billing" section on page 4 for details.

## Use of Insurance Earnings to Determine Life Insurance Coverage

Coverage amounts for Group Term Life insurance are based on your
Insurance Earnings as of your last day worked, rounded to the next highest
$1,000. While you were an active employee, your Insurance Earnings
changed automatically with the annual recalculation of Insurance Earnings on
April 1st. If your Insurance Earnings increased or decreased, your Group
Term Life Insurance coverages increased or decreased, too.

If you are covered under the Firm's Group Variable Universal Life ("GVUL")
insurance with MassMutual, your coverage amounts were also based on your
Insurance Earnings, rounded to the next higher $1,000. While you were an
active employee, your Supplemental GVUL changed automatically each April
1st with the annual recalculation of Insurance Earnings. However, if your
Insurance Earnings decreased, your Supplemental GVUL coverage (and
corresponding premiums) continued to be based on your highest lifetime
Insurance Earnings.

## Reduction at Age 65 and Over

If you are still receiving disability payments from Cigna on the April 1st
following your 65th birthday, your Basic Term Life, Accidental Death and
Dismemberment, Frozen Life and Supplemental Term Life Insurance
coverages in effect will be reduced by 35%. There will be additional
reductions at age 70, 75 and 80.

# Lehman Brothers Savings Plan

For the purposes of the Lehman Brothers Savings Plan, the Firm's 401(k)
Plan, once you become an LTD Recipient you are no longer considered an
active employee.

You can continue to access your Savings Plan account balance through the
Fidelity web site at www.401k.com or by telephone at 866-Lehman-6 (866-
534-6266).

10

## Outstanding Loans

If you have an outstanding loan, the entire outstanding balance will become due when you become an LTD Recipient. You will be notified that you have 90 days from the date you became an LTD Recipient to repay your loan in full. If you do not repay your outstanding loan balance by that date, the outstanding loan balance will become taxable and the amount will be reported to the Internal Revenue Service as ordinary income.

In addition, if you have not yet reached age 59½ or were under age 55 when you became an LTD Recipient, you may be subject to a ten percent (10%) premature distribution penalty.

| Fidelity Investments |
|---|
| To find out your Savings Plan balance, you may access the Fidelity Investments web site at www.401k.com or call Fidelity, worldwide, at 866-Lehman-6 (866-534-6266). |
| Fidelity will have your most recent account balance available. |

## Distribution of Savings Plan Balance

You can request a final distribution of your account balance through the Fidelity web site at www.401k.com or by telephone at 866-Lehman-6 (866-534-6266).

If the value of your account in the Savings Plan is *$5,000 or less,* you will receive a lump sum payment as soon as administratively possible after you become an LTD Recipient.

If the value of your account in the Savings Plan is *more than $5,000,* you may elect to receive a distribution of your account balance or leave the balance in the Savings Plan until a later date.

### Distribution Options

You may take a full or partial distribution of your Savings Plan balance. All Savings Plan distributions are made in cash, unless you elect to receive a distribution in whole shares of Lehman Brothers or American Express stock.

If you have a balance in the Lehman Brothers and/or American Express Stock fund, you may elect to receive this portion of your account in kind. If you request a distribution in shares, you will receive any fractional shares and any non-stock portions of your account in cash.

### Tax Consequences of a Distribution

Generally, you may roll over some or all of the taxable portion of your Savings Plan distribution into an IRA, thereby continuing the tax-deferred status of your account balances. Distributions may be subject to IRS withholding regulations that became effective January 1, 1993. The taxable portion of your distribution will be subject to 20% federal tax withholding unless you elect a direct rollover of your distribution to an IRA or another qualified plan.

If you choose not to roll over some or all of your distribution, the portion not rolled over will be subject to ordinary income tax in the year it is paid to you. If you are not yet 59½ years old or satisfy one of the other exceptions when you receive your distribution, you may be subject to an additional ten percent penalty tax on the amounts not rolled over.

*It is recommended that you consult with your accountant or tax advisor concerning the tax effects of receiving a distribution from the Savings Plan.*

For more detailed information regarding the Savings Plan, refer to the applicable Summary Plan Description, which may be obtained by calling Fidelity at 866-Lehman-6 (866-534-6266).

# Retirement Plan

If are a participant in the Retirement Plan, the retirement benefit that you have earned, as of your Long Term Disability effective date, will be frozen.

If you are vested in the Retirement Plan (had 5 complete years of service) prior to your disability, you will be eligible to receive your Retirement benefits at age 65, the normal retirement age under the plan. Benefits may be available earlier if you are age 55 with a minimum of 10 years of service with the Firm.

If you do not have 10 years of service as of your Long Term Disability effective date, you will continue to earn vesting credit while you are on disability, until the combination of active service and disability service equals ten years. To inquire about your distribution options under the plan, please contact the Lehman Brothers Benefits Service Center at (201) 524-2363.

# Stock Award Plan

If your Long Term Disability application is approved by both Cigna and by the Social Security Administration, all unvested Restricted Stock Units (RSUs) held by you shall become immediately vested. You shall, as soon as practicable thereafter, receive one share of Common Stock for each RSU you hold. At that time, you will recognize ordinary income equal to the market value of your shares and you will be subject to withholding tax liability on that amount.

For further information regarding your RSUs, please contact the Lehman Brothers Compensation Department at (212) 526-5126.

## Brokerage Accounts

As an LTD Recipient, you are not required to maintain your brokerage account(s) at Lehman Brothers Inc. or Fidelity Investments. In addition, you are not required to obtain pre-approval of trades or to comply with the investment holding period requirements that are prescribed for active employees. Your brokerage account will still be identified as an employee account and you will still be entitled to the employee commission discount.

While you are receiving long term disability payments, subsequent changes in the opening or closing of brokerage accounts must be reported to the Legal and Compliance department. If you have any questions, please contact Keith Andre at 646-836-2101.

EXHIBIT K

# Facsimile Cover Sheet

**To:** Linda Sibirski
**Company:** Lehman Brothers Inc.
**Phone:** 212-528-7459 ~~526 3078~~
**Fax:** 212-528-~~7736~~ 526-2879

**From:** Barbara Farahat
**Company:** Lehman Brothers
**Phone:** 212-528-8095
**Fax:** 212-528-7937

**Date:** 9·2·94
**Pages including this cover page:** 6

## Comments:

DEAR LINDA:

AS WE DISCUSSED TODAY BY TELEPHONE, I HAVE ATTACHED THE FORMS PREVIOUSLY SUPPLIED TO ME BY HUMAN RESOURCES AND IN ADDITION, COMPLETED THE APPLICATION FOR AN EMPLOYEE MEDICAL LEAVE OF ABSENCE.  DUE TO THE TIMING OF THE MEDICAL LEAVE, THE HOLIDAY WEEKEND, AND JEWISH HOLIDAY NEXT WEEK, PLEASE CHECK TO SEE IF PART A AND B ARE ACCEPTABLE MEASURES, IN LIEU OF THE FORMS FROM THE GREEN HANDBOOK WHICH I JUST RECEIVED TODAY.  \

PLEASE CALL ME IF YOU HAVE ANY QUESTIONS.  THANK YOU FOR YOUR CONTINUED SUPPORT AND HELP.


BARBARA FARAHAT

# LEHMAN BROTHERS

## Application for an
## Employee Medical Leave of Absence

An employee Medical Leave of Absence is available if you have an illness, injury, or other serious health condition and this condition will require that you be absent from work. Please refer to the attached policy for specific policy provisions and eligibility requirements.

**Note:** If you need a leave because your child, spouse, or parent has a serious health condition, you should apply for a Family Medical Leave, not an Employee Medical Leave.

| | |
|---|---|
| **Instructions** | Please fill out the employee section of this form (Section A) and have your health care provider fill out Section C. Then submit this form to the HR contact for your business unit (a list appears on page 20) or to Group Insurance, located on the 16th floor of 2 World Trade Center, New York, NY 10048, for approval and processing. |
| | If the leave will last for more than five consecutive days, you must also complete the form, "Notice of Proof of Claim for Disability Benefits," which is attached, and submit it to the HR contact or Group Insurance along with this form. |
| | In addition to this form, you will also need a statement from your health care provider for your manager. Unlike this form, the statement for your manager should only confirm that you need such a leave, saying how long the health care provider expects your condition to require you to be away from work. |

**Section A**
*To be completed by you.*

Employee Name/First: **BARBARA**    Middle: **M**    Last: **FARAHAT**

Social Security Number: ~~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~~    Department P&L or Branch Number: **00266**    Date of Hire: **10·5·83**

Is this an application for an extension of an already approved EMLOA for the same or a related condition?    ☒ No    ○ Yes

**Section B**
*To be completed by Group Insurance.*

Employee Medical Leave approved by:    Print name: _____

Signature: _____    Date: _____

**Section C**
*To be completed by your health care provider.*

**Notice:** The above-named employee has requested an Employee Medical Leave of Absence from work due to a serious health condition. Please provide the following information to assist us in evaluating the employee's request.

**Diagnosis**
*Attach additional sheets if necessary.*

Describe the condition.

PLEASE SEE EXPLANATION APPEARING ON ATTACHED
DISABILITY FORMS AND DOCTORS NOTE
FOR LEAVE OF ABSENCE.

Date condition commenced: _____    Probable duration of condition: _____

13

**Regimen of Treatment to Be Prescribed**

Indicate number of visits, general nature and duration of treatment, including referral to another provider of health services. Include schedule of visits or treatment if it is medically necessary for the employee to be off work on an intermittent basis or to work less than the employee's normal schedule of hours per day or days per week.

a. By Physician or Practitioner

SEE ATTACHMENTS FOR EXPLANATION

b. By another provider of health services, if referred by Physician or Practitioner

| | No | Yes |
|---|---|---|
| 1)  Is in-patient care at a hospital, hospice, or other residential medical care facility required? | ○ No | ☒ Yes |
| 2)  Is the employee, or will the employee be, unable to perform work of any kind? (If Yes, skip Items 3 and 4.) | ○ No | ☒ Yes |
| 3)  Is the employee, or will the employee be, unable to perform the functions of his or her position? (Answer after reviewing the statement from the employer describing the essential functions of the employee's position or, if none is provided, after discussing it with the employee.) | ○ No | ☒ Yes |
| 4)  Does or will the employee require continuing treatment by a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, it would likely result in incapacity for more than three business days? | ○ No | ☒ Yes |

5)  Please estimate the period during which the employee will be unable to perform the functions of his or her position.

Leave start date  **9·12·94**

Return to work date  **undetermined (1-2 Months)**

Signature of Health Care Provider                              Date

Type of Practice (Field of Specialization, if any)

14

# LEHMAN BROTHERS

**Notice of Proof of Claim For Disability Benefits**   *

## PART A - CLAIMANT'S STATEMENT

*PLEASE PRINT OR TYPE ALL INFORMATION. ALL THE ITEMS IN THIS SECTION MUST BE COMPLETED*

1. Claimant's Name/First Name: **BARBARA**  Middle: **M.**  Last: **FARAHAT**
2. Claimant's Social Security Number: 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
3. Claimant's Address/Number and Street: **160 WEST 24TH STREET, APT. 4L**  City or Town: **NY**  State: **NY**  ZIP Code: **10011**  Apt. No.  Telephone No. **212-691-4719**
4. Claimant's Age: **31**
5. Claimant's Marital Status (check one): ☐ Married  ☒ Not Married
6. Claimant's Disability (if injury, also state how, when and where it occurred): **SURGICAL**

7. Date Disability Began (Month/Day/Year): **SEPTEMBER 12, 1994**   Did Claimant work on this day? ☐ Worked ☒ Did Not Work
8. Claimant's Job is or was/Occupation: **Administrative Coordinator -- Managed Clearing Futures Division**   Work Telephone No. **212 5286304**

9. For the period of disability covered by this claim, answer the following questions:

| | No | Yes | If Yes, Claimant has | From | For the period From | To |
|---|---|---|---|---|---|---|
| a. Is Claimant receiving or claiming Workers' Compensation for work-connected disability? | ☒ | ☐ | ☐ Received ☐ Claimed | | | |
| b. Is Claimant receiving or claiming damages for personal injury? | ☒ | ☐ | ☐ Received ☐ Claimed | | | |
| c. Is Claimant receiving or claiming Unemployment Insurance Benefits? | ☒ | ☐ | ☐ Received ☐ Claimed | | | |
| d. Is Claimant receiving or claiming Disability Benefits under the Federal Social Security Act? | ☒ | ☐ | ☐ Received ☐ Claimed | | | |

10. Has the Claimant received disability benefits for another period or periods of disability within the 52 weeks immediately before the present disability began?  ☒ No ☐ Yes

11. Claimant's Statement:
I have read all of the above. I hereby claim Disability Benefits and certify that, for the period covered by the claim, I was disabled; and that the foregoing statements, including any accompanying statements, are to the best of my knowledge true and complete.

Claimant's Signature: *Barbara Farahat*   Date: **8-31-94**

Return this completed form to:  Lehman Brothers Inc.
Group Insurance Department
~~388 Greenwich Street, 7th Floor~~ 2 World Trade Center, 16TH FLOOR
New York, NY ~~10013~~ 10048

*Any person who knowingly and with intent to defraud any insurance company, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.*

(continued on other side)

LBF4809XM

## PART B - DOCTOR'S STATEMENT

*PLEASE PRINT OR TYPE ALL INFORMATION.*

*This Doctor's Statement must be filled in completely. For Item 10, you may give the approximate date. If the disability is caused by or arising in connection with pregnancy, enter the estimated delivery date under "Remarks".*

| 1. Claimant's Name/First Name | Middle | | 2. Claimant's Age | 3. Claimant's Sex |
|---|---|---|---|---|
| Barbara | Farahat | | 31 | ☐ Male ☒ Female |

**4. Diagnosis/Analysis**

a. Claimant's Symptoms: ~~Chronic Constipation~~

b. Objective Findings:

**5. Was the Claimant hospitalized?** ☒ No ☐ Yes   If Yes, From _____ To _____

**6. Was an operation indicated?** ☐ No ☒ Yes   If Yes, Type: Subtotal Colectomy   Date 9/13/94

**7. What was the date of your first treatment for this disability?**  Month 07  Day 21  Year 94

**8. What was the date of your most recent treatment for this disability?**  Month 08  Day 03  Year 94

**9. What was the date Claimant was unable to work because of this disability?**  Month 09  Day 12  Year 94

**10. What was the date Claimant will be able to perform regular work?** Even if considerably overdue state, estimate date. Avoid use of terms such as UNKNOWN or INDEFINITE.  Month ___ Day ___ Year ___  undetermined

**11. In your opinion, is the disability the result of injury arising out of and in the course of employment or occupational disease?** ☒ No ☐ Yes   If Yes, has item C-4, C-60 or C-3P been filed with the Worker's Compensation Board? ☐ No ☐ Yes

**12. Remarks** (attach additional sheets, if necessary)

Miss. Farahat will have subtotal colectomy on 9/13/94. I am ~~also~~ prescribing that she remains out of work until I examine her in follow up appointments and feel she will be well enough to return. At this time, it is undetermined as to when this will be.

**13. Doctor's Affirmation**

I affirm that I am a: Physician (Physician, Dentist, Chiropractor, Etc.)   Licensed in the State of N.Y.   License number 162960-1

| Doctor's Signature | Doctor's Name (please print) | Doctor's Telephone Number | Date |
|---|---|---|---|
| [signature] | Richard Whelan | 212-305-6136 | 8/30/94 |

Office Address/Number and Street: 622 W. 168 St.   City or Town: N.Y.   State: N.Y.   Zip Code: 10032

Return this completed form to: Lehman Brothers Inc., Group Insurance Dept., 388 Greenwich St., 7th Flr, New York, NY 10013

*Any person who knowingly and with intent to defraud any insurance company, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.*

TOTAL P.01

# College of Physicians & Surgeons of Columbia University

RICHARD L. WHELAN, M.D.
ASSISTANT PROFESSOR OF SURGERY
DIRECTOR, SECTION OF COLON AND RECTAL SURGERY
DIRECTOR, ANORECTAL PHYSIOLOGY LAB

622 West 168th Street
New York, New York 10032
Telephone: (212) 305-0136

August 30, 1994

To Whom It May Concern:

Re:   Barbara Farahat
      160 W. 24th Street
      New York, NY 10011

Barbara Farahat has been a patient in my office since July 21, 1994, for a painful rectal condition. She has undergone various procedures which have shown that an operation is quite necessary. Therefore, I will be performing exploratory laparotomy and subtotal colectomy on September 13, 1994.

It will be imperative for Ms. Farahat to remain out of work from September 12, 1994, through the following 2 months. Ms. Farahat will need these 2 months to recuperate from this operation. If she returns to work any sooner she would most likely aggravate this area and set herself back in the healing process. Kindly excuse her accordingly.

I will see Ms. Farahat many times after the operation for follow up appointments. I will be seeing how she is healing and I will know when I feel she is strong enough to return to work.

If you have any questions please feel free to call my office and I will be more than happy to answer them. Thank you for your attention.

Sincerely,

Richard L. Whelan, M.D.

RLW/nr

EXHIBIT K

Policyholder: SHEARSON LEHMAN BROTHERS, INC.

Policy Number: 541139

Policy Effective Date: January 1, 1993

Premium Due Dates: January 1 and the first day of each following month.

Governing Jurisdiction: NEW YORK

Policy Anniversary: January 1, 1994, and each following January 1.

**GROUP**
**LONG**
**TERM**
**DISABILITY**
**INSURANCE**
**POLICY**
**NON**
**PARTICIPATING**

First UNUM Life Insurance Company (referred to as the Company) will pay the benefits provided in this policy. The Company makes this promise subject to all of this policy's provisions.

The policyholder should read the policy specifications carefully and contact the Company promptly with any questions.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

Signed for the Company at Tarrytown, New York on the policy effective date.

*Kevin J. Tierney*          *Robert E. Cash*

Secretary                          President

First UNUM Life Insurance Company

# Lehman Brothers Inc.  

## Long Term Disability

**What Is Long Term Disability Insurance?** ........................................... 125

**Eligibility and Enrollment** ........................................... 125
    Basic LTD ........................................... 125
    Supplemental LTD ........................................... 125
    Late Enrollment/Changing Your Enrollment ........................................... 125
    Insurance Earnings ........................................... 126

**Cost** ........................................... 127

**Plan Benefits** ........................................... 128
    Definition of "Totally Disabled" ........................................... 128
    Partial Disability ........................................... 128
    Successive Periods of Disability ........................................... 128
    Monthly Benefit Calculation ........................................... 129
    Length of Disability ........................................... 129
    Benefit Offset ........................................... 130
    Assumed Receipt of Benefits ........................................... 130
    Maximum Monthly Benefit ........................................... 131
    Family Survivor Benefits ........................................... 131

**Limitations and Exclusions** ........................................... 131
    Pre-existing Conditions Exclusion ........................................... 131
    Mental Illness and/or Substance Abuse ........................................... 132
    Other Exclusions ........................................... 132

**How to File a Claim** ........................................... 132

**When Coverage Ends** ........................................... 133
    Converting Your LTD Coverage ........................................... 133

❑ Loss resulting while the covered individual is in or on, or boarding or alighting from any aircraft:

❖ in the capacity of pilot or crew member; or

❖ owned, or leased (except on a single trip charter basis) by the Firm or by an employee of the Firm; or

❖ operated by an employee of the Firm; or

❖ not having a current unrestricted airworthiness certificate, unless such aircraft is operated by a military air transport service.

---

## Beneficiary

In the case of the accidental death of a covered employee, the beneficiary is the beneficiary designated by that employee for Group Life Insurance coverage (see page 111). You may designate a different beneficiary by submitting a separate memo to the Benefits Department, 3 World Financial Center, 24th Floor, New York, NY 10285. The memo should include your name and Social Security number.

In the case of a covered accidental injury, the beneficiary is the employee.

---

## How to File a Claim

To report the death or accidental injury of a covered employee, contact the Benefits Department at 5-5115 (212-526-5115). In the event of the death of a covered employee, the Benefits Representative will contact the beneficiary(ies) directly in writing, requesting a copy of the death certificate, required tax information and copies of any and all accident/police reports as well as copies of any newspaper articles reporting the accident.

Death benefit information is confidential. No coverage or beneficiary information can be released without the beneficiary's consent. In the case of multiple beneficiaries, the Benefits Department will contact each beneficiary separately.

---

## When Coverage Ends

Business Travel Accident Insurance coverage terminates at midnight on your last day of employment with the Firm. You cannot convert Business Travel Accident Insurance to an individual policy.

**123**

# What Is Long Term Disability Insurance?

The **Lehman Brothers Inc. Long Term Disability (LTD) Insurance Plan**, underwritten by INA Life Insurance Company of New York, is designed to replace a portion of your income if you become totally disabled and cannot work. The definition of "totally disabled" appears on page 128. LTD benefit payments begin after you have been totally disabled and unable to work for more than 180 consecutive days.

Both **Basic LTD** and **Supplemental LTD** coverages are available on the first day of employment for all U.S. benefits-eligible employees (see definition on page 2). Hourly employees whose status changes to salaried part-time or full-time are eligible for LTD coverage on the day their status change takes effect.

## Basic LTD

The Basic LTD plan provides coverage of 60% of your Insurance Earnings, up to a maximum of $50,000* of Insurance Earnings. This benefit is provided by the Firm **at no cost to you.** Insurance Earnings are defined on page 126.

Basic LTD benefits represent taxable income to you when paid.

## Supplemental LTD

The Supplemental LTD plan provides coverage of 60% of your Insurance Earnings over $50,000, up to a maximum of $300,000* of Insurance Earnings. Insurance Earnings are defined on page 126.

Supplemental LTD coverage is not automatic. Eligible employees must enroll within 31 days of their date of hire, or within 31 days of becoming an eligible employee due to a change in status. If your Insurance Earnings on your date of hire (or status change) are $50,000 or less, you will not pay a premium for Supplemental LTD coverage until your Insurance Earnings exceed $50,000. It is, however, important for you to enroll within the 31-day period, since you will be required to submit evidence of good health to enroll at a later date.

Supplemental LTD benefits are not taxable to you when paid.

## Late Enrollment/Changing Your Enrollment

Employees who do not enroll in Supplemental LTD coverage within 31 days of hire (or change in employment status) will be required to furnish proof of good health before being accepted for coverage at a later date.

---

**Long Term Disability Insurance**

**Eligibility and Enrollment**

**Basic or Supplemental Coverage?**

If your Insurance Earnings at the time of hire are $50,000 or less, you may still want to enroll in the Supplemental LTD plan.

Supplemental coverage – and any premiums for that coverage – would then automatically take effect if your future Insurance Earnings go over $50,000.

If you **don't** enroll in the Supplemental plan at the time of hire, you will have to provide evidence of good health, and possibly undergo a physical in order to enroll. Coverage can be denied depending on your medical condition.

**125**

\* Minus other benefits – see "Benefit Offset" on page 130.

You *may* be eligible to enroll in Supplemental LTD without providing proof of good health if you undergo one of the family status changes listed in the table below. If you have a family status change, you have 31 days from the qualifying event to enroll in Supplemental LTD. Send a memo and a copy of the appropriate documentation to: Benefits Department, 3 World Financial Center, 24th Floor, New York, NY 10285.

The memo should include your full name, Social Security number and details of your family status change. If you are unable to supply the required documentation within the 31-day period (for example, a birth certificate for your new child), *you must still send the request memo* to the Benefits Department.

**Eligible Family Status Changes**

| Type of Status Change | Documentation Required |
| --- | --- |
| Marriage | Marriage Certificate |
| Divorce/Legal Separation | Divorce Decree/Separation Agreement |
| Birth or Adoption of a Child | Birth Certificate/Adoption Papers |

## Insurance Earnings

Each year on April 1st, Lehman Brothers performs a scheduled recalculation of your "Insurance Earnings". Your Insurance Earnings are used to determine your coverage and premium amounts for LTD coverage.

For example, on April 1, 1996 your Insurance Earnings (and therefore your coverage and premiums) were calculated to include:

❖ annualized base salary as of December 31, 1995;

❖ eligible bonuses for 1995 performance paid to you through February 1996, including the discounted value of Restricted Stock Units ("RSUs") awarded as part of your bonus;

❖ bonuses paid to Branch Managers in the last three quarters of 1995 and the first quarter of 1996; and

❖ 1995 commissions before deferrals.

The Insurance Earnings calculation is based on gross earnings prior to any deferrals for the Tax Deferred Savings Plan, the Voluntary Deferred Compensation Plan or your Flexible Spending Account.

### New Hires

Until the April 1st following your date of hire, salaried employees will have Insurance Earnings equal to your base salary and commissioned Investment Representatives will be considered to be earning $50,000. Sign-on bonuses are not included in Insurance Earnings.

# Cost

Your *annual* cost for Supplemental LTD coverage is $0.53 per $100 of Insurance Earnings in excess of $50,000 to a maximum of $300,000 of Insurance Earnings.

For example, if your Insurance Earnings are $150,000, the first $50,000 of your earnings is insured under the Basic LTD Plan at no cost to you. The additional $100,000 of your earnings is insured under the Supplemental LTD Plan at a cost of $530 per year ($44.16 per month). Monthly premiums are calculated by dividing the annual cost by 12, as follows:

$$\frac{Insurance\ Earnings - \$50,000}{\$100} \times \$0.53 \div 12\ months = \$44.16/month$$

More examples of monthly premiums can be found on the chart below.

The LTD Plan insures a percentage of your exact Insurance Earnings. If you elect Supplemental LTD coverage and your Insurance Earnings are $150,000, for example, your premiums and coverage are based on those earnings, not the maximum earnings of the Plan.

Employee contributions for Supplemental LTD coverage are made on an after-tax basis. Deductions for Supplemental LTD coverage will appear on your paystub as "SuppLTD."

## Examples of LTD Premiums and Benefits

| Insurance Earnings | Annual Disability Income | Monthly Disability Benefit | Monthly Premium |
|---|---|---|---|
| $ 15,000 | $ 9,000 | $ 750 | Firm-paid |
| 20,000 | 12,000 | 1,000 | Firm-paid |
| 25,000 | 15,000 | 1,250 | Firm-paid |
| 30,000 | 18,000 | 1,500 | Firm-paid |
| 40,000 | 24,000 | 2,000 | Firm-paid |
| 50,000 | 30,000 | 2,500 | Firm-paid |
| 60,000 | 36,000 | 3,000 | $ 4.42 |
| 75,000 | 45,000 | 3,750 | 11.04 |
| 90,000 | 54,000 | 4,500 | 17.66 |
| 100,000 | 60,000 | 5,000 | 22.08 |
| 150,000 | 90,000 | 7,500 | 44.16 |
| 200,000 | 120,000 | 10,000 | 66.25 |
| 300,000 | 180,000 | 15,000 | 110.42 |
| Over 300,000 | 180,000 | 15,000 | 110.42 |

# Plan Benefits

## Definition of "Totally Disabled"

Under the LTD Plan, "totally disabled" is defined as follows:

*The inability to perform all the essential duties of your occupation. After monthly benefits have been payable for 24 months, "total disability" is defined as the inability to perform all the essential duties of any occupation for which you are or may reasonably become qualified based on your education, training or experience.*

## Determinations

The insurance company makes all determinations of whether you qualify for full or partial disability benefits under the LTD Plan.

## Partial Disability

Partial disability means that, because of illness or injury, you are unable to perform *all* essential duties of your own occupation on a full-time basis, but

❶ You are able to perform at least *one* of the material duties of your own or another occupation on a part-time or full-time basis **and**

❷ You are now earning *at least 20%* less than your indexed prior earnings, due solely to that disability.

Your partial disability monthly benefit is calculated based on a percentage of earnings and of total disability benefits. For example, if your earnings while partially disabled equal 40% of your earnings *before* you were disabled, your partial disability monthly benefit would equal 60% of your total disability monthly benefit.

Partial disability must start within 31 days after the end of a period of total disability for which monthly benefits are payable and must result from the same injury or sickness that caused you to be totally disabled.

## Successive Periods of Disability

Separate periods of total disability resulting from the same or related causes will be considered *one* period of total disability unless separated by your return to active service for at least 6 consecutive months.

Separate periods of total disability resulting from unrelated causes will be considered *one* period of total disability unless separated by your return to active service for at least one full day.

**128**

## Monthly Benefit Calculation

The LTD Plan is designed to provide you with income while you are unable to work due to a covered disability. The term "monthly benefit" refers to the amount payable to you on a monthly basis under the terms of the LTD Plan. Your monthly benefit is determined based on your Insurance Earnings in effect your last day worked and is calculated by taking 60% of your Insurance Earnings (or the coverage maximum, whichever is less) and dividing it by 12.

For example, if you become disabled and your last day of work is November 12, 1996, you will become eligible for monthly benefits beginning May 11, 1997. However, your benefit amount is based on the Insurance Earnings in effect on the last day you worked. In this example, the Insurance Earnings in effect would be those calculated on April 1, 1996 (described on page 126) or your date of hire, if later, but not those calculated on April 1, 1997.

> **Mental Health and/or Substance Abuse Limitation**
>
> Monthly benefits for any total disability contributed to or caused by mental illness, alcoholism or drug abuse while you are not confined in a hospital is limited to a 24-month benefit. See page 132 for details.

## Length of Disability

### When Monthly Benefits Begin

If you become totally disabled while covered under the LTD Plan, you will be eligible to receive monthly benefits beginning on the 181st day following your last day worked.

### When Monthly Benefits End

Monthly benefits* will end on the *earlier* of:

❖ the date you are no longer disabled (as determined by the insurer), or

❖ whichever of the end dates on the following table is applicable to you.

#### Disability End Dates

| Age when Total Disability Begins | Date Monthly Benefits End |
| --- | --- |
| Age 62 or Under | later of: ❶ your 65th birthday; or ❷ date the 42nd monthly benefit is payable |
| Age 63 | date the 36th monthly benefit is payable |
| Age 64 | date the 30th monthly benefit is payable |
| Age 65 | date the 24th monthly benefit is payable |
| Age 66 | date the 21st monthly benefit is payable |
| Age 67 | date the 18th monthly benefit is payable |
| Age 68 | date the 15th monthly benefit is payable |
| Age 69 or Over | date the 12th monthly benefit is payable |

* Except for disabilities contributed to or caused by mental illness or substance abuse. See page 132 for mental illness and/or substance abuse limitations.

# Benefit Offset

The actual amount of your monthly LTD benefits will take into consideration other disability income you receive. The LTD benefit will be reduced by:

**❶** any amounts you *or your dependents* receive on account of your disability under:

- ❖ the Firm's salary continuation policy;
- ❖ any state disability or retirement benefits which you receive, or are assumed to receive* on your own behalf;
- ❖ any group or franchise insurance or similar plan for persons in a group;
- ❖ the Canada and Quebec Pension Plans;
- ❖ any local, provincial or federal government disability or retirement plan or law;
- ❖ the Jones Act; or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;
- ❖ any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

**❷** any disability or old age benefits payable under the federal Social Security Act which you receive or are assumed to receive* on your own behalf, on behalf of your dependents, or which your dependents receive on account of your receipt or assumed receipt* of such benefits; and

**❸** any retirement benefits which you receive under (a) the Lehman Brothers Holdings Inc. Retirement Plan; (b) the Canada and Quebec Pension Plans; (c) the Railroad Retirement Act or the Railroad Unemployment Act, to the extent these benefits are funded by the Employer.

Payments under an individually-owned policy do **not** reduce your benefit under the LTD Plan.

# Assumed Receipt of Benefits

If you are covered under the U.S. Social Security Act, for any disability or old age benefit, state disability (if applicable), workers' compensation, or similar laws, you must file for these benefits and you will be assumed to be receiving such benefits for yourself (and for your dependents, if applicable). These "assumed benefits" will be the amount the insurance company, INA, estimates you (and your dependents, if applicable) are eligible to receive. This assumption will not be made if you give INA proof that:

*See the "Assumed Receipt of Benefits" section below.

❖ you have applied for these benefits; and

❖ payments were denied.

However, if payments for disability are denied solely because your disability is not expected to last at least 12 consecutive months, you will be assumed to be receiving such benefits after your disability has contin- ued for 12 consecutive months. This assumption will not be made if you give INA proof that:

❖ you have re-applied for these benefits; and

❖ payments were again denied.

INA will not assume receipt of, nor reduce your monthly benefits by, any elective, actuarially reduced, early retirement benefits under such laws unless and until you actually receive such benefits.

## Maximum Monthly Benefit

The maximum monthly benefit under the Basic LTD Plan is $2,500, and under the Supplemental LTD Plan is $12,500, for a total (including family Social Security disability) of $15,000. This benefit is reduced by any other disability or retirement or pension benefit. See "Benefit Offset" on page 130.

## Family Survivor Benefits

If you die while you are receiving a monthly LTD benefit and you had collected LTD monthly benefits for a least 6 months at the time of your death, your eligible survivor may be eligible to receive a survivor benefit equal to 3 times your monthly LTD benefit. Your eligible survi- vor is your lawful spouse; otherwise your unmarried children under age 21 who are living with you at the time of your death, in equal shares. Family survivor benefits will not be paid if there is no lawful spouse or unmarried child.

## Pre-existing Condition Exclusion

If you become disabled during your first 12 months of coverage under the LTD Plan, no benefits will be paid if your disability results directly or indirectly from a "pre-existing condition".

A pre-existing condition is defined as an injury or sickness for which, during the three (3) months prior to becoming covered under the plan, you:

❖ incurred expenses;

❖ received medical treatment;

❖ took prescribed drugs or medicines; or

❖ consulted a physician.

# Limitations and Exclusions

**131**

## Mental Illness and/or Substance Abuse

The Plan will pay monthly benefits for no more than 24 months during your lifetime for any total disability or partial disability caused or contributed to by one or more of the following:

- ❑ Alcoholism
- ❑ Bipolar affective disorder
- ❑ Delusional (paranoid) disorders
- ❑ Drug addiction or abuse
- ❑ Mental illness
- ❑ Psychotic, depressive, anxiety, or eating disorders
- ❑ Schizophrenia
- ❑ Somatoform disorders (psychosomatic illness)

This limitation does not apply for any period of time during which an employee is confined for more than 14 consecutive days in a hospital licensed to provide care and treatment for the condition causing total disability.

You will be considered confined in a hospital only if you are confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the total disability.

## Other Exclusions

The LTD Plan does not cover any disability caused by or resulting from the following:

❶ war, declared or undeclared, or any act of war; or

❷ intentionally self-inflicted injuries.

No monthly benefit will be paid for any period of total disability when you are not under the care of a licensed physician.

No benefits will be paid for any period of partial disability during which your loss of earnings is not solely due to disability.

# How to File a Claim

If you become unable to work due to a serious medical illness or injury, contact the Benefits Department at 5-5115 (212-526-5115) to begin processing your claim for disability benefits. If your disability lasts longer than three (3) months, you will be contacted by both the Benefits Department and the INA Life Insurance Company of New York, the LTD Plan insurance company, to begin the LTD claims process.

Under this Plan, you are required to file for Social Security disability benefits. Also, if you are age 65 or older, you are required to begin collecting your Lehman Brothers Holdings Inc. Retirement Plan benefit (see "Assumed Receipt of Benefits" on page 130).

You will not qualify for LTD monthly benefits until after the 180-day waiting period has been satisfied. However, you will be asked to supply certain information in advance of that date in order to ensure that your monthly benefits begin as soon as your claim has been approved.



### First UNUM.

First UNUM Life Insurance Company

# Group LTD
# Long Term Disability Claim

Employer: _____

Group Policy Number: _____

↓ NY 229-88  (3/94)  ✳

# FIRST UNUM.

**Long Term Disability Claim
Employee's Statement**

**To Be Completed By The Employee**

## A. Information about you

| Last Name | First | Middle Initial |
|---|---|---|

| Address | City | State/Province | Zip |
|---|---|---|---|

| Telephone ( ) | Social Security Number | U.S. Citizen ☐ Yes ☐ No |
|---|---|---|

| Date of Birth (Month, Day, Year) | Height | Weight | ☐ Male ☐ Female | ☐ Single ☐ Married | ☐ Widowed ☐ Divorced |
|---|---|---|---|---|---|

Your Employer (include division if applicable)

Occupation

## B. Information about your family (required to determine your eligibility for Social Security benefits)

Spouse's Name (Last, First)

| Spouse's Social Security Number | Date of Birth (Month, Day, Year) | Is your spouse employed? ☐ Yes ☐ No |
|---|---|---|

Children under age 25:   Name (Last, First)

| Name | Date of Birth (Month, Day, Year) | Married | Attending School? |
|---|---|---|---|
| _____ | _____ | ☐ Yes ☐ No | ☐ Yes ☐ No |
| _____ | _____ | ☐ Yes ☐ No | ☐ Yes ☐ No |
| _____ | _____ | ☐ Yes ☐ No | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No | ☐ Yes ☐ No |

## C. Information about the condition causing your disability

**1. For pregnancy or illness, answer the following questions:**

What were your first symptoms?

| When did you first notice them? | Date you were first treated by a physician (Month, Day, Year) |
|---|---|

**2. For an injury, answer the following questions:**

Where and how did the injury occur?

| Date the injury occurred (Month, Day, Year) | Date you were first treated by a physician (Month, Day, Year) |
|---|---|

**3. For illness or injury, answer the following questions:**

Why are you unable to work?

Before you stopped working, did your condition require you to change your job or the way you did your job?
☐ Yes   ☐ No   If yes, explain

Is your condition related to your occupation?
☐ Yes   ☐ No   If yes, explain

Have you filed, or do you intend filing a Workers' Compensation claim?
☐ Yes   ☐ No

## D. Information about the disability

| Last day you worked before the disability (Month, Day, Year) | Did you work a full day? ☐ Yes   ☐ No   If no, explain | Date you were first unable to work (Month, Day, Year) |
|---|---|---|
| Have you returned to work? ☐ Yes   Part time (date)_____   Full time (date)_____ ☐ No | | If you have not returned to work, do you expect to? ☐ Yes   Part time (date)_____   Full time (date)_____ ☐ No |

(Continued on Reverse) - 2 -

**E. Information about physicians and hospitals**

First medical attention for the current disability was given by (complete below):

| Doctor's Name | Telephone: (    )<br>Fax: (    ) | Specialty |
|---|---|---|
| Address (Street, City, State, Zip) | | Dates Seen<br>　　　　To |

List all other physicians and hospitals you have seen for this condition:

| Doctor's Name | Telephone: (    )<br>Fax: (    ) | Specialty |
|---|---|---|
| Address (Street, City, State, Zip) | | Dates Seen<br>　　　　To |
| Doctor's Name | Telephone: (    )<br>Fax: (    ) | Specialty |
| Address (Street, City, State, Zip) | | Dates Seen<br>　　　　To |
| Doctor's Name | Telephone: (    )<br>Fax: (    ) | Specialty |
| Address (Street, City, State, Zip) | | Dates Seen<br>　　　　To |
| Hospital | | |
| Address (Street, City, State, Zip) | | Dates of Confinement<br>　　　　To |

Have you ever had the same or a similar condition in the past?
☐ Yes  ☐ No    If yes, complete the following concerning your past treatment:

| Doctor's Name | Telephone: (    )<br>Fax: (    ) | Specialty |
|---|---|---|
| Address (Street, City, State, Zip) | | Dates Seen<br>　　　　To |
| Hospital | | |
| Address (Street, City, State, Zip) | | Dates of Confinement<br>　　　　To |

**F. Information about other disability income**

(Check the other income benefits you are receiving or are eligible to receive as a result of your disability and complete the information requested.)

| Source of Income | Amount | /(week, month) | Date claim was filed | Date payments began | Date payments ended |
|---|---|---|---|---|---|
| Social Security/Retirement | $_____ | /_____ | _____ | _____ | _____ |
| Social Security/Disability | $_____ | /_____ | _____ | _____ | _____ |
| Canadian Pension Plan | $_____ | /_____ | _____ | _____ | _____ |
| Workers' Compensation | $_____ | /_____ | _____ | _____ | _____ |
| State Disability | $_____ | /_____ | _____ | _____ | _____ |
| Pension/Retirement | $_____ | /_____ | _____ | _____ | _____ |
| Pension/Disability | $_____ | /_____ | _____ | _____ | _____ |
| Short Term Disability | $_____ | /_____ | _____ | _____ | _____ |
| Unemployment | $_____ | /_____ | _____ | _____ | _____ |
| No-Fault Insurance | $_____ | /_____ | _____ | _____ | _____ |
| Other (include individual or group benefits): | $_____ | /_____ | _____ | _____ | _____ |

**G. Information about income tax withholding**

If your request for benefits is approved, should UNUM withhold income taxes from your benefit checks?
☐ Yes  ☐ No    If yes, how much should be withheld from each check. Federal taxes (minimum is $87.00 per month)　$_____ .00
State taxes (minimum is $10.00 per month)　$_____ .00

**H. Signature (Required for all claims)**

Under what other UNUM policies are you currently covered?

The above statements are true and complete to the best of my knowledge and belief.

X_____    _____
Signature of Employee                                                         Date

# FIRST UNUM.

**To Be Completed By The Employee**

---

**Mandatory Authorization** (Authorization to obtain additional information concerning this claim.)

### AUTHORIZATION FOR RELEASE OF INFORMATION

PERSONS OR INSTITUTIONS: This authorizes you to give First UNUM Life Insurance Company, its affiliates and representatives, any information, data or records you have regarding my medical history and treatment (including records pertaining to psychiatric, drug or alcohol use, and any medical condition I may now have or have had), and any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, credit, financial, earnings and employment history) needed to evaluate my claim for benefits. I understand that any such information obtained may be provided to a person or agency requested by First UNUM to assist with this purpose. This authorization is valid during the pendency of my claim. I understand that I have the right to request and receive a copy of this authorization. A photocopy of this authorization is as valid as the original.

X _____        _____
   Signature                                      Date

---

**Optional Authorization** (Authorization to provide information to your employer)

You are not required to sign this authorization in order to submit a claim for long term disability benefits to First UNUM.

I (your name)_____ authorize First UNUM to disclose or furnish to my employer any and all information in First UNUM's possession with respect to any illness, including mental illness, drug or alcohol abuse, or any injury and to provide information regarding any medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records that may be requested. My employer will not disclose to any third party any information received from First UNUM pursuant to this authorization without my express written consent.

A photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

X _____        _____
   Signature                                      Date

---

# FIRST UNUM.

<div align="right">

**Long Term Disability Claim
Physician's Statement**

</div>

This form should be completed by the physician who was treating the claimant when he or she last worked. Other physicians should complete the Additional Physician's Statement available from the plan administrator.

**To Be Completed By The Attending Physician**

**A. General Information**

This claim is for (Patient's Name)

| Patient's Social Security Number | Height | Weight | Blood Pressure | Date of Birth (Month, Day, Year) |
|---|---|---|---|---|
| | | | | |

Primary Diagnosis including ICD 9 or DSM code

**B. Complete this section for normal pregnancy, then go to section E.**

| What was the date of the last menstrual period? | What is the expected date of delivery? |
|---|---|
| | |

| What is the expected length of postpartum recovery? | What was the first date of treatment? | What was the last date of treatment? |
|---|---|---|
| | | |

**C. Complete this section for all conditions except normal pregnancy.**

Symptoms

Objective Findings

Are there secondary conditions contributing to the disability?
☐ Yes  ☐ No    If yes, what are they?

| If this is a cardiac condition, what is the functional capacity? (American Heart Association) | ☐ Class 1 - No limitation ☐ Class 2 - Slight limitation | ☐ Class 3 - Marked limitation ☐ Class 4 - Complete limitation |
|---|---|---|
| When did symptoms first appear? | Date of the patient's first visit (Month, Day, Year) | Date you believe the patient was first unable to work (Month, Day, Year) |
| Date of the patient's last visit (Month, Day, Year) | | How often do you see the patient? |

Is the patient's condition work related?
☐ Yes  ☐ No    If yes, explain:

Has the patient undergone surgery?
☐ Yes  ☐ No    If yes, give date, procedure and result.

If no, do you expect surgery to be performed in the future?
☐ Yes  ☐ No    If yes, give date and type of surgery.

What medication is the patient currently taking?

Please indicate other types and frequencies of treatment.

Has the patient been referred to a medical rehabilitation or therapy program?
☐ Yes  ☐ No    If yes, give details.

Have you referred the patient for other types of consultations?
☐ Yes  ☐ No    If yes, give details.

Has the patient been hospital confined?
☐ Yes  ☐ No    If yes, complete the following:

Name of Hospital

| Address | Dates of Confinement |
|---|---|
| | through |

**D. Information about the patient's inability to work**

Briefly describe restrictions and limitations.

Restrictions (What the patient SHOULD NOT do)

_____

Limitations (What the patient CANNOT do)

_____

What is your prognosis for recovery?

_____

Has patient achieved maximum medical improvement?

☐ Yes    ☐ No    If no, complete the following:

How soon do you expect fundamental changes in the patient's medical condition?

☐ 3 - 4 months          ☐ 1 - 2 months          ☐ 5 - 6 months          ☐ more than 6 months

Give details concerning expected improvement or deterioration:

_____

Additional remarks:

_____

**E. Required Attachments and Signature**

After you have fully completed this form, attach copies of the following materials:

- Consulting physician reports
- Hospital discharge summaries
- Test results showing objective findings
- Office notes for the period of treatment or the last two years

| Your Name | Degree |
| --- | --- |
| Specialty | Telephone: (    )<br>Fax: (    ) |
| Address | |

X _____          _____
Signature of Attending Physician (no stamp)          Date

# FIRST UNUM.

<div align="right">

**Long Term Disability Claim
Employer's Statement**

</div>

**To Be Completed By The Employer**

| This claim is for (Employee's Name) | Social Security Number | Date of Birth |
|---|---|---|
| | | |

**A. Information about the employer**

| Company's Name | Group Policy Number |
|---|---|
| Address (Street, City, State, Zip) | Telephone: (     ) <br> Fax: (     ) |

Name and address of division where employee works (if different from above)

**B. Information about the employee**

| Date employee was hired (Month, Day, Year) | Date employee became insured under this plan? | What was the employee's regularly scheduled work week? _____ hours per week |
|---|---|---|
| | | |

**C. Information needed for withholding and reporting taxes**

Does employee contribute post-tax dollars toward the premium? ☐ Yes ☐ No    If yes, what percent is paid by the employee? _____ %
**If you leave this section blank, we will assume it is 100% employer contribution and calculate FICA taxes accordingly.**

**D. Information about the claim**

Were there any changes to the employee's job responsibilities due to the disabling condition before the employee became fully disabled?
☐ Yes  ☐ No  If yes, what were the changes and when were they made?

| What was the employee's permanent job on his or her last day at work? | How long had the employee been in this job? |
|---|---|
| Last day employee actually worked (Month, Day, Year) | On that day, did the employee work a full day? ☐ Yes  ☐ No   If no, how many hours were worked? |
| Why did employee stop working? | Is the employee's condition work related? ☐ Yes  ☐ No |

Has a claim been filed with Workers' Compensation?
☐ Yes  ☐ No    If yes, send initial report of illness or injury and award notice.

Name and Address of your compensation carrier

Name and Address of your medical insurance carrier

**E. Information about your pension plan (do not complete for maternity claim)**

| Do you have a pension plan? <br> ☐ Yes  ☐ No | If yes, what type? | ☐ Defined benefit <br> ☐ Defined contribution | ☐ 401(k) <br> ☐ Profit sharing | ☐ Other: (specify) |
|---|---|---|---|---|
| Is the employee eligible for your pension plan? <br> ☐ Yes  ☐ No  If no, why? | | If eligible, does the employee participate? <br> ☐ Yes   ☐ No   If no, why? | | |

If the employee is participating, when is he or she eligible for benefits under the plan? (Month, Day, Year)

**F. Information about your rehire or return-to-work policies**

Does your company have a rehire or return-to-work policy for disabled employees?
☐ Yes  ☐ No

What is the name and title of the manager we should contact if we identify a rehabilitation or return-to-work option?

**G. Information about the employee's salary**

The employee (Check all that apply)
☐ is paid hourly (what is the hourly rate?) $ _____  ☐ is salaried    ☐ receives commissions    ☐ receives bonuses

Will employee file for disability benefits provided by any employer/employee labor management, state disability or union welfare plan?
☐ Yes  ☐ No  If yes, what is the weekly amount? $ _____  When do benefits begin? _____  End? _____

Is this employee eligible for salary continuation?
☐ Yes  ☐ No  If yes, what is the weekly amount? $ _____  When do benefits begin? _____  End? _____

(Continued on Reverse)

**Reporting the employee's basic monthly earnings** (For assistance, call the benefits office 800 number shown on the inside front cover of this form)

Find the definition of basic monthly earnings that matches your contract for this employee and follow the instructions given.

**Definitions of Basic Monthly Earnings**

a. salary only (no commissions, bonuses, etc.), complete question 1 below
b. previous year's W-2 form, complete question 5 below (attach W-2)
c. sole proprietor, complete question 8 below
d. previous year's K-1 form, complete question 6 below (attach K-1)

e. salary and commissions, complete questions 1 and 3 below
f. salary, commissions and bonuses, complete questions 1, 3 and 4 below
g. salary and deferred compensation, complete questions 1 and 2 below
h. salary, deferred compensation and commissions, complete questions 1, 2, and 3 below
i. salary, deferred compensation, commissions and bonuses, complete questions 1, 2, 3, and 4 below
j. salary and K-1 earnings, complete questions 1 and 6 below

k. W-2 with deferred compensation, complete questions 2 and 5 below
l. partnership agreement, complete question 7 below
m. teacher's contract, complete question 1 below
n. any other definition, complete question 9 below

1) On the last day the employee worked, what was his or her basic monthly salary?
   (Divide annual salary by 12 or multiply weekly salary by 52 and divide by 12. Teachers divide annual salary by 12)    1 _____

2) On the last day the employee worked, what was his or her monthly pre-tax contribution to your deferred compensation plan?    2 _____

3) How much had the employee received in commissions in the 12 months (or the period of employment if less than 12 months)
   immediately preceding the last day worked? $ _____
   Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly commissions.    3 _____

4) How much had the employee received in bonuses in the 12 months (or the period of employment if less than 12 months)
   immediately preceding the last day worked? $ _____
   Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly bonuses.    4 _____

5) What were the employee's earnings as shown on the W-2 form of the year immediately preceding the disability?    5 _____

6) What were the employee's earnings as shown on the K-1 form of the year immediately preceding the disability?    6 _____

7) As of the last day the employee worked, what were the budgeted annual earnings as determined by the written
   partnership agreement in effect? (Do not include dividends, interest or return of capital) $ _____ .    7 _____

8) As of the last day the employee worked, what was the sole proprietor's annual net profit (1040 Schedule C gross income
   minus total deductions minus depreciation) averaged over the 3 years immediately preceding the disability or the period
   of sole proprietorship if less than 3 years?    8 _____

9) For definitions other than those above, calculate the monthly earnings as they are defined in your contract.  If earnings are
   based on salary as expressed on a particular document, send us a copy of the document.    9 _____

---

**H. Required Attachments and Signature**

If the employee contributes to the premiums, attach a copy of the enrollment form.
If salary is based on a W-2, K1, 1099, or a similar document, attach a copy of the document.
If you have medical information from the employee's file relating to this disability, please attach copies.
If a workers' compensation claim is filed, send initial report of injury or illness and award notice.

Name of person completing this form (If this claim is approved for disability benefits, the benefit check will be sent to the employee with a carbon copy to you.)

_____

X _____    _____    _____
  Signature                      Title                        Date

# FIRST UNUM.

<div align="right"><strong>Long Term Disability Claim<br>Job Analysis</strong></div>

**To Be Completed By The Employee's Supervisor**

This claim is for (Employee's Name)

| Employee's Social Security Number | Date of Disability (Month, Day, Year) |
|---|---|

**A. General Information about the employee's job**

| Job Title | Minimum education or training required |
|---|---|

Does the employee perform supervisory functions?
☐ Yes  ☐ No    If yes, how many people are supervised? _____ Describe job duties.

Check the items below that relate to the employee's job.  Use these definitions for the frequency of occurrence:
    **Occasionally** means the person does the activity up to 33% of the time.
    **Frequently** means the person does the activity 34% to 66% of the time.
    **Continuously** means the person does the activity 67% to 100% of the time.

|  | OCCASIONALLY | FREQUENTLY | CONTINUOUSLY |
|---|---|---|---|
| Relate to others | ☐ | ☐ | ☐ |
| Written and verbal communication | ☐ | ☐ | ☐ |
| Reasoning, math and language | ☐ | ☐ | ☐ |
| Makes independent judgments | ☐ | ☐ | ☐ |

Which of the following describe the employee's working environment?  Check all that apply.
☐ Unprotected heights  ☐ Changes in temperature or humidity  ☐ Exposure to dust, fumes and gases
☐ Being near moving machinery  ☐ Driving automotive equipment  ☐ Other hazards

Is the employee required to travel?
☐ Yes  ☐ No    If yes, complete the following information:

| How does the employee travel?  (Automobile, plane, train, etc.) | Where does the employee travel? | What percent of the time does the employee travel? |
|---|---|---|

**B. Information about the physical aspects of the employee's job**

Check the items below that relate to the employee's job and complete the information requested.  Use these definitions for the frequency of occurrence:
    **Occasionally** means the person does the activity up to 33% of the time.
    **Frequently** means the person does the activity 34% to 66% of the time.
    **Continuously** means the person does the activity 67% to 100% of the time.

| ACTIVITY | FREQUENCY OF OCCURRENCE | | | | |
|---|---|---|---|---|---|
|  | OCCASIONALLY | FREQUENTLY | CONTINUOUSLY | DESCRIBE ACTIVITY | WEIGHT |
| ☐ Standing | ☐ | ☐ | ☐ | | |
| ☐ Walking | ☐ | ☐ | ☐ | | |
| ☐ Sitting | ☐ | ☐ | ☐ | | |
| ☐ Balancing | ☐ | ☐ | ☐ | | |
| ☐ Stooping | ☐ | ☐ | ☐ | | |
| ☐ Kneeling | ☐ | ☐ | ☐ | | |
| ☐ Crouching | ☐ | ☐ | ☐ | | |
| ☐ Crawling | ☐ | ☐ | ☐ | | |
| ☐ Reaching/working overhead | ☐ | ☐ | ☐ | | |
| ☐ Climbing: | ☐ | ☐ | ☐ | | |
|   ☐ Stairs | ☐ | ☐ | ☐ | | |
|     Number of stairs: _____ | | | | | |
|   ☐ Ladders | ☐ | ☐ | ☐ | | |
|     Height of Ladder: _____ | | | | | |
| ☐ Pushing | ☐ | ☐ | ☐ | _____ | _____ lbs. |
| ☐ Pulling | ☐ | ☐ | ☐ | _____ | _____ lbs. |
| ☐ Lifting/carrying | ☐ | ☐ | ☐ | _____ | _____ lbs. |

(Continued on Reverse)

- 9 -

Can the job be performed by alternating sitting and standing?
☐ Yes ☐ No

Does the job require using the feet to operate foot controls?
☐ Yes ☐ No If yes, on what type of equipment?

How important is good vision in the job?

What are the major tasks requiring use of one or both hands?

| | One Hand | Both Hands |
|---|---|---|
| | ☐ | ☐ |
| | ☐ | ☐ |
| | ☐ | ☐ |
| | ☐ | ☐ |

**C. Information about the job as it relates to the disability**

Can the job be modified to accommodate the disability either temporarily or permanently?
☐ Yes ☐ No If yes, explain

Is it possible to offer the employee assistance in doing the job (through use of technology or personal assistance for example)?
☐ Yes ☐ No If yes, explain

**D. Attachments and Signature** (Attach a copy of the employee's job description)

Name of person completing this form

X

Signature Title Date

Telephone ( ) Fax ( )

# LEHMAN BROTHERS

EXHIBIT L

To whom it may concern:

Barbara Roth was working as an Administrative Coordinator in the Lehman Brothers Futures Administration business unit.  She was an employee in good standing with dates of employment from October, 1983 through October, 1990 and then returned to Lehman Brothers in October, 1992.

Barbara has been receiving Long Term Disability benefits through the Firm since September 11, 1995.

If you have any questions, do not hesitate to call me at (212) 526-7333.

Sincerely,

*Julie R. Kagan*

Julie R. Kagan
Vice President
Fixed Income Human Resources

cc:    Natalie Nance - Lehman Brothers Group Insurance
       Barbara Roth

EXHIBIT M

# LEHMAN BROTHERS

8/3/94

doctors note

JULIE KAGAN
VICE PRESIDENT

Orig DOH   10/17/83

10/5/92

recent DOH   2/22/93

7
+
1
8 weeks

11 - 2 = 9 weeks

Grp. Insurance

7 - 9420

OVER

8-24-94

If your here longer than you left
they credit Lt + your bridged

170
180

call doctor for note.

September 12, 1994 -
November 4, 1994

Short term begins.
$170.00. (60%)
Forms - Dr. Whalen.

1-800-345-4432

Aetna --
Form --
disability
report.

copy to LB.

o/w receive Dr. Whalens
bill for
$14500.

LEHMAN BROTHERS INC.
3 WORLD FINANCIAL CENTER   NEW YORK, NY 10285   212 640 7333

# LEHMAN BROTHERS

EXHIBIT N

February 17, 1995

Ms. Barbara Farahat
160 W. 24th Street
New York, NY 10011

Dear Barbara:

Our records indicate that you may be eligible for Long Term Disability benefits effective March 13, 1995, provided your disability continues through this date. You are currently enrolled in the Basic Plan which provides a benefit of up to 60% of your insurance earnings to a maximum of $50,000 of insurance earnings, if you have been deemed totally disabled for more than one hundred and eighty days. For purposes of the Lehman Brothers Long Term Disability Plan, insurance earnings include gross salary, bonuses, and commissions, before any deferrals (such as TDSP, VDCP, ADCP or FSA). All insurance earnings are recalculated once each year on April 1. Your insurance earnings as of the date of your disability were $47,020.00.

First UNUM Life Insurance Company will be sending you an application for Long Term Disability benefits. Any Long Term Disability benefit you receive may be offset (reduced) by the full amount of certain benefit payments, including but not limited to: Social Security, State Disability, Worker's Compensation, Commissions, or Retirement benefits. The minimum Long Term Disability monthly benefit payment will not be less than $100.00 after any offsets.

All employees who apply for Long Term Disability benefits must apply for Social Security Disability benefits. The Social Security benefits determination process takes a minimum of six months. Therefore, it is imperative that you apply for Social Security Disability benefits after you have been out on this medical leave for more than three months. You may file an application for Social Security Disability benefits at your nearest Social Security administration office, you can submit your UNUM Long Term Disability application to UNUM prior to receiving a decision from Social Security. Should you receive a denial from Social Security, UNUM will pay the entire 60% benefit if your Long Term Disability application is approved.

If your Long Term Disability application is approved, you will be enrolled in our Long Term Disability Comprehensive Major Medical Plan, which is similar to the current Comprehensive Major Medical Plan you have now with the Firm, except for the following changes:

- Out-of-pocket maximum is $3,500
- Deductible is $350 for individual coverage and $700 for family coverage
- Pre-certification is required for certain procedures

Enclosed is an outline of the pre-certification clause and a Designation of Beneficiary form for you to complete and return to:

> Lehman Brothers Inc.
> 3 World Financial Center, 24th Fl.
> New York, NY 10285
> Attn: Natalie Nance

Currently, the firm is paying to keep your coverage in force, therefore, no changes can be made by you to any of these benefits. For example, if you are enrolled in individual medical coverage at the time of your Long Term Disability approval, coverage must remain as individual and cannot be increased to family. If you are enrolled in family coverage at the time of your Long Term Disability approval, no additional family members can be added to your plan. If you remain disabled for a period of two consecutive years, are still receiving disability benefits through Lehman Brothers, and have been approved for Social Security Disability, you may become eligible for Medicare Part A and Part B. If approved, your LTD Medical Plan will become a secondary coverage to your Medicare coverage and under Part B claims will be paid accordingly. **All Long Term Disability recipients who are eligible, must enroll in Medicare Part B in order for their LTD Medical Plan to continue with Lehman Brothers.**

If you have any questions or concerns regarding your Long Term Disability application, you may call UNUM at 1-800-321-0745, or me (212) 526-3083.

Sincerely,

*Natalie Nance*

Natalie Nance
Sr. Benefits Administrator
Group Insurance Department

# LEHMAN BROTHERS



201-524-2363 -Keith

## GROUP INSURANCE CONFIRMATION

**FARAHAT, BARBARA**          00266/0000

*** INTER-OFFICE ***

Date: April    01, 1995

N.Y. INSTITUTIONAL FUTURES
WORLD FINANCIAL CENTER
200 VESEY ST 7TH FL
NEW YORK          NY 10285

Dear  BARBARA

For information purposes only, listed below are your current Group Insurance Coverages and monthly premium deductions as of    April   01, 1995.      Also listed are monthly firm costs. Changes to your coverages cannot be made on this form. Your insurance earnings in force from April    01, 1995 to March 31, 1996 are   $48,746.00 .
Most of the coverage and premiums are based on these earnings.

| | COVERAGE | EMPLOYEE COST | FIRM COST |
|---|---|---|---|
| BASIC LIFE | $ 49,000 | $   .00 | $ 11.76 |
| AD&D | $ 24,500 | $   .00 | $   .61 |
| SUPPL-LIFE | NOT ENROLLED | $   .00 | $   .00 |
| VOL AD&D | NOT ENROLLED | $   .00 | $   .00 |
| LTD | BASIC PLAN | $   .00 | $ 14.62 |
| CMM-AETNA | INDIVIDUAL | $ 18.76 | $151.24  Nov. |
| DENTAL PLAN | INDIVIDUAL | $ 5.00 | $ 12.94 |
| MONTHLY TOTAL | | $ 23.76 | $ 191.17 |

This is to confirm your designation of the following as your primary life insurance beneficiaries, as of March    01, 1995 :

1. SUSAN ROTH          percent: 25.00%     relationship: MOTHER
2. MITCHELL ROTH          percent: 25.00%     relationship: BROTHER
3. JOSEPH FARAHAT          percent: 25.00%     relationship: FRIEND
4. DONNA PORTAGALLO          percent: 25.00%     relationship: FRIEND

This is to confirm your designation of the following as your contingent life insurance beneficiaries, as of March    01, 1995 :

(YOU DID NOT DESIGNATE A CONTINGENT BENEFICIARY)

If the above information is incorrect, please make your corrections on this letter and sign, date and return it to the Group Ins. Dept., Three World Financial Center, 24th Floor, N.Y., 10285. If you wish to make changes or cancel any of the above, call the Group Insurance Department at (212) 526-5115.

Note:    These coverages will remain in force until one of the following events occur:
The annual recalculation of Insurance Earnings in April, a change in your employment status, your termination or retirement from the Firm, attaining age 65 or older, or a change to your coverage(s).

EMPLOYEE SIGNATURE:_____          DATE:_____

201-524-2363 Benefits
B Services@lehman.COM

# LEHMAN BROTHERS

**EXHIBIT P**

September 22, 1995

Ms. Barbara Farahat
160 West 24th Street, Apt. 4L
New York, NY 10011

Dear Barbara,

In light of your recent medical leave of absence, I wanted to provide you with some information regarding your employment with Lehman Brothers.

## MEDICAL LEAVE OF ABSENCE

I have reviewed your dates of employment and status history with a representative in our Group Insurance area. Within the last 52 weeks, you have taken two medical leave of absences for a combined total of 26 weeks (9/13/94 - 12/9/94, and then 12/15/94 - 3/9/95), after which time you were approved for Long Term Disability (LTD). You received LTD benefits for 8 weeks and 1 day (3/10/95 - 5/5/95). According to our current Long Term Disability policy, you are eligible to re-apply for LTD benefits (for the same or related condition) because you returned from LTD within the past six months. Upon approval, you will be placed on Long Term Disability effective September 11, 1995 without having to satisfy the 180 day waiting period. You are not eligible to receive salary continuation benefits during this leave. Your monthly Long Term Disability benefits will remain at the same level as you received on your previous leave.

## VACATION ELIGIBILITY

You have asked me to clarify your vacation eligibility. Full-time, exempt employees are eligible for three weeks of vacation annually after the first full calendar year of employment. Vacation eligibility is impacted by a break in service as follows: if the employee is employed for more than one year, and is gone less than one year, prior service will be added to current service to determine vacation eligibility. In your case, you were not employed by the Firm from 10/5/1990 through 2/21/93 and then returned as a regular, full-time employee on February 22, 1993. Presently, you are eligible for three weeks of vacation. You will be eligible for four weeks vacation after you have been employed for ten years from the February 22 re-hire date.

## VACATION PAY

There seems to be some confusion regarding what was communicated to you regarding with respect to using your vacation time during your leave last year. You were eligible to use any available vacation time during your leave in order to continue your salary during that period. Our records indicate that you did not use ten days of your vacation time in 1994, and we will pay you for that unused vacation time. Please understand that we are doing this on an exception basis only due to the apparent misunderstanding regarding your ability to use this time during your leave.

Barbara Farahat
page 2

Ron has been keeping me up-to-date regarding your status.  Our thoughts are with you.

If  you have any questions regarding the above, do not hesitate to call me at (212) 526-7333.

Sincerely,

*Julie R. Kagan*

Julie R. Kagan
Vice President

cc:    Ron Filler
       Natalie Nance

# LEHMAN BROTHERS

EXHIBIT Q

May 26, 1998

Ms. Barbara Roth
1186 Broadway,  Apt 406
New York,  NY  10001

Dear Ms. Roth:

According to our records, you became eligible for Medicare on or about April 1, 1998. Effective with this date, your medical coverage with Lehman Brothers will become secondary to Medicare.  This means that your medical claims will have to be submitted to Medicare first.  Once reimbursements and an "Explanation of Benefits" are received from Medicare, claims can be submitted to the Lehman Brothers Major Medical Option (Aetna).

You should have already received Medicare enrollment information from the Social Security Administration during your 20th month of disability.   To receive maximum coverage under Medicare, you should be enrolled in Medicare Parts A and B.   The premium will be deducted from your monthly Social Security check.

When Lehman Brothers receives confirmation from Medicare that your status has been updated as "Medicare Primary", we will notify you under separate cover that you must begin submitting medical claims to Medicare first and then to the Lehman Brothers Medical Plan.

If you are already enrolled in Medicare Parts A and B or have primary coverage under another medical plan, please contact us upon receipt of this letter, so we can update our records.

If you have any questions, please call me at (212) 526-5204 or your local Social Security Administration Office.

Sincerely,

Lauren Carver
Sr. Benefits Specialist
Group Insurance

# LEHMAN BROTHERS

August 5, 1998

Ms. Barbara Roth
1186 Broadway, Apt. 406
New York, NY 10001



Dear Ms. Roth:

As a follow-up to my letter to you dated May 26, 1998, I am writing to inform you that
notification has been received from Medicare confirming Lehman Brothers medical plan is
no longer the primary payer for your medical claims. Enclosed is a copy of the letter we
received from Medicare. Your records have been properly updated to show Medicare as
your primary payer effective April 1, 1998.

Effective immediately, you should advise all providers of medical services to begin
submitting medical claims as follows:

- First, to Medicare as primary payer
- Second, to Lehman Brothers medical plan as secondary payer

If you have any questions, please call me at (212) 526-5204 or your local Social Security
Administration office.

Sincerely,

Lauren Carver
Assistant Manager
Group Insurance Administration


cc: Scott Emrick/Aetna US Healthcare

LEHMAN BROTHERS INC.

3 WORLD FINANCIAL CENTER  NEW YORK, NY 10285-2400

**Name:** Barbara Meryl Beth (Formerly Barbara Meryl Farahat)

| | |
|---|---|
| **Firm Name:** | Employed at Lehman Brothers Kuhn Loeb Rhoades Inc., Lehman Brothers Kuhn Loeb, Shearson Loeb Rhoades, Shearson American Express, Shearson Lehman Brothers/American Express Shearson Lehman Hutton, Shearson Lehman Brothers, Smith Barney Shearson, Lehman Brothers Inc etc. |
| **Department:** | Administration – LB Futures Administration-Commodities Division - Acquired by Barclays Capitol, P&L 00266 |
| **Employment:** | October 17, 1983 – October 05, 1992/Returned Feb 22, 1993 – September 11, 1995 |
| **Benefits Bridged: & Vested** | Vested In Company and Group Benefits Plan per Julie Kagan, HR letter upon return to Lehman Brothers, as an active employee on February 22, 1993, your vested and bridged as long as your employment with the Company is longer then when you resigned and left the Company.  Upon your return your still vested and credited with Lehman -- they credit and bridge you including LTD. |
| **Group Insurance Confirmation:** | Basic Life, AD&D & LTD, without any cost to me--Firm's Cost, even per LTD documents. While active paid Aetna & Dental Individual Cost, as well as the Firms Paid Cost |
| **Medical Leave:** | September 13, 1994-December 9, 1994 & December 15, 1994-March 9, 1995 |
| **Disabled:** | September 11, 1995 – No cost to me per LTD Benefit Handbook Salary Determination Salary/Insurance Earnings Calculated on April 1 every year for LTD. |
| **LTD Insurance Premium:** | Paid by Firm.  Unum Life Insurance Co. – 60% of Salary – Offset by SSD Payments. If your LTD application is approved, you will be enrolled in our LTD Comprehensive Major Medical Plan.  Currently, the Firm is paying to keep your coverage in force, therefore, no changes can be made by you to any of these benefits.  All LTD recipients, must enroll in Medicare Part A & B in order for their LTD Medical Plan to continue with LB. (LB Letter Feb 17, 1995). |
| **SSD:** | Monthly Payment based on work credits.  I pay a monthly Medicare Plan Premium, Part A & B. |

### Highlights-Recap

Vested in Company after five (5) years of service.

Employed 1983 -1995 – Lehman Brothers Kuhn Loeb Rhoades Inc., many IPO's. – went through every M&A, have documents here stating I'm covered/vested for benefits—at 65 Medicare becomes your primary carrier and Aetna becomes your secondary (Same as LTD Benefits ("the Benefits"-under the "Plan).

Prior to 1994, old Shearson employee have vested rights because the summary plan descriptions did not say anything about the Company had the right to amend, change or terminate the Plan.

Lack of Notification of Motion Letter Resulting in loss of securing legal representation at November 16, 2011 Trial & CourtCall teleconference vs. appearance in NY.

Documents missing from Motion Letter, including case #, instructions on how to file objection, where to file and what to file etc., as well as, documents weren't disseminated in a legal timeframe, or delivery.

Didn't have adequate notice of hearing, deprived of ongoing benefits under the Plan, and what classification do I fall under – who am I?

2008-Present -- Many phone calls to all Parties without a favorable response -just a lot of confusion.  Asked to call back several times due to the volume and nature of the calls regarding the Letter and some people didn't even receive the mailing or only partial mailings.

Received phone call from Carol Rado (tape recorded), stating, "that there's no need to worry, everything will be reinstated, there'll be no changes for insurance and you'll be covered (without any premium costs to you)— December 2009 for 2010 and to present."—which lead me to believe I wasn't terminated.

January 11, 2010, (2 Letters), which said in bold, "no increase in your cost, your plan costs for 2010 will not increase over 2009, so it's literally telling us it's going back to the way it was prior to when we received that October 2009 letter, however, I never had any LTD premium costs, only as active employee.

I requested some form of representation be appointed to answer questions and further explain the process and policies because there's so much documentation that's conflicting and whomever I call, cannot provide any answers. Lehman Brothers just says don't worry, everything remains the same every year, **but not according to the July 19, 2013, termination of medical benefits letter**; whereby I contacted Carol Rado, upon receipt of the Scheduled Termination of Funding Letter for medical benefits, effective December 31, 2013, and requested dissemination of Dechert LLP findings of the Vested Rights Analysis, as well as, LBHI Report Proposal, which to date I didn't receive, per the Court's order.  Furthermore, I requested to be reinstated for Benefits and why didn't Dechert LLP contact me for review of my documents from Lehman Brothers—no response.

**Gerson, Leonard - SOL**

**EXHIBIT S**

| | |
|---|---|
| From: | Gerson, Leonard - SOL |
| Sent: | Thursday, September 12, 2013 4:21 PM |
| To: | 'Barbara' |
| Subject: | RE: Lehman Brothers |
| Attachments: | Oringer Vesting Analysis.pdf |

Dear Ms. Roth:

Thank you for sending me the July 19, 2013 notice of scheduled termination of funding for medical benefits. Attached is a copy of the vesting analysis which Lehman did in response to the bankruptcy court's request. If you have a copy of the benefit plan or summary of plan benefits in existence at the time that you were hired in 1983 I would appreciate seeing it.

Regards,

Leonard H. Gerson
Plan Benefits Security Division
Office of the Solicitor
Department of Labor
PO Box 1914
Washington DC 20013
Tel: 202-693-5615

---

**From:** Barbara [mailto:bmral14@yahoo.com]
**Sent:** Wednesday, September 11, 2013 8:57 PM
**To:** Gerson, Leonard - SOL
**Subject:** Lehman Brothers Medical Coverage Termination Letter Dated, July 19, 2013

Dear Mr. Gerson:

Per our telephone discussion today and your request, please find attached, in pdf format, Lehman Brothers letter, dated July 19, 2013, regarding termination of Aetna (Medical) Insurance Coverage, for Former Employees on Long Term Disability, effective December 31, 2013.

I look forward upon receipt of the "Vested Rights Analysis", as well as, the "LBHI Report Proposal" for review, as I sincerely believe I'm entitled to continue to receive my medical benefits.

I would like to take the opportunity to thank you for your time, attention and cooperation, as I appreciate your assistance regarding such.

Sincerely,
Barbara Roth
1216 S. Missouri Avenue, #414
Clearwater, FL 33756
(727) 348-4751
E-Mail: bmral14@yahoo.com
Barbara Roth

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Robert J. Lemons**
+1 212 310 8924
robert.lemons@weil.com

BY HAND DELIVERY

January 29, 2013

Honorable James M. Peck
United States Bankruptcy Judge
One Bowling Green
New York, New York 10004

Re:  *In re Lehman Brothers Holdings Inc., et al.,* 08-13555 (JMP) (the "Chapter 11 Cases")

Dear Honorable Sir:

We are writing to you on behalf of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated chapter 11 debtors with respect to whether retirees (the "Retirees") may have vested benefits under the Lehman Brothers Group Benefit Plan (the "Plan").

A hearing was held on November 16, 2011 with respect to the Joint Motion of LBHI and James W. Giddens, the Trustee for the Liquidation of Lehman Brothers Inc. under the Securities Investor Protection Act, as amended ("SIPA"), pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedures for (I) Authorization and Approval of a Stock Purchase Agreement Regarding the VEBA and (II) Authorization and Approval of a Settlement Regarding the Same (the "Motion"), Chapter 11 Cases ECF No. 21109; SIPA Proceeding ECF No. 4654. At the conclusion of the hearing, the Court indicated that it was prepared to grant the narrow, limited relief that LBHI sought in the Motion, but requested that LBHI independently consider addressing concerns raised by a limited number of Retirees who believe that they have vested medical benefits. In a letter to the Court, LBHI represented that it intended to retain special counsel tasked with undertaking an independent analysis of whether or not, based on any relevant documentation, any Retirees have vested medical benefit entitlements. LBHI represented that such counsel would provide its conclusions to both LBHI and the Retirees, and would file a report with the Court describing the results.

Dechert LLP ("Dechert") was retained in connection with these matters and was provided with Plan-related documentation by LBHI. Dechert prepared a report of its conclusions (the "Report"), which is attached hereto.

Honorable James M. Peck
January 29, 2013
Page 2

<div align="right">**Weil, Gotshal & Manges LLP**</div>

       The Motion represented that LBHI would seek an exemption from the Department of Labor to obtain reimbursement for eligible expenses it paid for a total of approximately $25 million. LBHI is no longer seeking an exemption and will not endeavor to obtain reimbursement.

       We are available should the Court have any questions regarding the foregoing.

Respectfully submitted,

Robert J. Lemons



# Dechert
### LLP

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

---

**ANDREW L. ORINGER**

andrew.oringer@dechert.com
+1 212 698 3571 Direct
+1 212 698 3599 Fax

January 28, 2013

TO:   Honorable James M. Peck
      United States Bankruptcy Court
      One Bowling Green
      New York, NY 10004

Re:   In re Lehman Brothers Holdings Inc., et al., Case No. 08-
      13555 (JMP) (Jointly Administered); In re Lehman
      Brothers Inc., Case No. 08-01420 (JMP) (SIPA)

Dear Honorable James M. Peck:

Reference is made to the joint motion dated October 21, 2011 (the "Motion") to the U.S. Bankruptcy Court, Southern District of New York (the "Court") by Lehman Brothers Holdings Inc. (the "Company") and its affiliated debtors and James W. Giddens (the "SIPA Trustee") for the approval of the sale of 100% of the stock of Aceso Holdings Inc. by the SIPA Trustee to the Company, including a settlement and release of all claims relating to a certain health care trust. We understand that, during a hearing held in respect of the Motion on November 16, 2011, the Court requested the Company to consider addressing the question of whether any individuals may have vested retiree benefits under the Lehman Brothers Group Benefit Plan (the "Plan"). Dechert LLP has been retained by the Company to serve as special counsel to the Company in connection therewith, and this letter describes our findings regarding that question.



**I.      Facts**

The Company has maintained the Plan generally to provide a variety of health benefits to eligible employees of the Company and its affiliates (collectively, "Lehman Brothers"), including certain retiree health benefits. Under Section 4.3 of the Plan, the Company reserved the right to "amend or terminate the Plan and any Arrangement included therein at any time and from time to time, in whole or in part, both with respect to current employees and former employees" and "[n]o individual shall have any vested right to a continuation of any Arrangement or component thereof." Similarly, the related summary plan descriptions ("SPDs") that we have reviewed stated generally that the Plan may be amended or terminated.



In connection with the bankruptcy proceedings relating to the Company, the Company acted to eliminate all retiree coverage under the Plan effective December 31, 2009. The Company thereafter arranged for Aetna Life Insurance Company ("Aetna") to offer substitute health care coverage to certain retirees on an individual basis. The substitute coverage for 2010, 2011 and 2012 provided by Aetna has ultimately been provided on a partially Company-subsidized basis. We understand that the Company's subsidization of the Aetna-insured individual coverage will end on December 31, 2013.

In connection with the Motion, the U.S. Department of Labor and certain Lehman Brothers retirees generally raised the question of whether certain individuals may have had the right to continue participating in Company-provided retiree health coverage notwithstanding the reservation of rights in the Plan to amend or terminate the Plan. The Court requested the Company to review the question of whether any individuals may have vested retiree benefits under the Plan. As indicated above, we have been retained by the Company to assist the Company with that review.

## II.    Legal Background[1]

Subtitle B of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which generally governs "welfare" plans such as the Plan, *see* ERISA §§ 4 (generally setting out ERISA's scope), 3(1) (defining a "welfare plan"), 514 (generally setting out ERISA's preemptive effect), does not provide for any vesting standards applicable to welfare plans. *See also* ERISA § 201 (limiting to "pension plans" the scope of Part 2 of Subtitle B of Title I of ERISA, which includes the vesting standards of Section 203 of ERISA). Thus, as a general matter, employers would be free under ERISA to modify or terminate such plans. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)); *Schonholz v. Long Isl. Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996), *cert. denied*, 519 U.S. 1008 (1996).[2]

---

[1] We note that the Court is in the Second Circuit, and we have proceeded here accordingly.

[2] We note that at least one Plan SPD states that the Plan may be amended or terminated "at the sole discretion of the Employee Benefit Plans Committee" (the "Committee"). While Section 4.3 of the Plan, in reserving the right of the Company to amend or terminate the Plan, does not delegate that right to the Committee, a question could nevertheless arise as to whether a procedural provision in the SPD regarding plan amendment or termination is enforceable, or whether the existence or absence of any Committee action is otherwise somehow relevant to the elimination of retiree coverage under the Plan. Under *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), the Plan's procedures generally govern the manner in

(footnote continued)



However, an employer may, by its own actions, limit the ability to reduce or terminate benefits in certain circumstances. For example, it has been indicated that, if an employer makes a specific written statement that is reasonably susceptible to interpretation as a promise to vest benefits, then such promise may enforceably bind the employer. *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 84 (2d Cir. 2001), *cert. denied*, 537 U.S. 1170 (2003) (quoting *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999)). However, it has also been held that benefits are vested only if there is an affirmative language promising vested benefits, and that the absence of such language would not generally be viewed as indicating an intent to vest benefits. *See, e.g., Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 61 (2d Cir. 2006); *Joyce*, 171 F.3d at 135. Even where an employer makes an affirmative promise to vest benefits, but the employer expressly reserves the rights to reduce or terminate benefits in the same document, such reservation of rights may negate any inference that the employer intended to vest benefits. *See Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 99 (2d Cir. 2001), *cert. denied*, 537 U.S. 1170 (2003).

Generally, to establish a claim for vested health benefits, it may be necessary that there be an affirmative written promise to vest benefits in a plan document such as the written plan, or in the related SPD. *See, e.g., Coriale v. Xerox Corp.*, No. 11-1724-cv (2d Cir. Aug. 3, 2012); *Bouboulis*, 442 F.3d at 60. However, any Plan-related written communications may be considered in determining whether benefits have vested, if such communications are sufficiently formal so as to be treated as binding statements under the plan. *See Bouboulis*, 442 F.3d at 61-62.

---

(footnote continued)
which a plan is amended. Further, under *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), an SPD generally is not itself a plan document, *but see Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011) (reading *Amara* narrowly to stand for the proposition that (i) the terms of an SPD are not enforceable when they conflict with governing plan documents, or (ii) an SPD cannot create terms that are not authorized by, or reflected in, governing plan documents), although we note that, here, Section 2.2 of the Plan states that the SPD is incorporated by reference into the Plan. It is by no means clear to us on the instant facts that, even if the Committee did not act to amend the Plan to eliminate the retiree coverage thereunder, the effectiveness of the 2009 Plan amendment would be compromised merely on account of the procedural provision noted above in the SPD that refers to the Committee. Regardless, however, present outside Company counsel, which served as such during the relevant period, has stated to us that "the record is clear that the . . . Committee exercised its authority to terminate [the retiree medical benefits under the Plan] as of 12/31/2009."



## III.    Analysis

In connection with our review, we have examined the Plan, related SPDs, enrollment forms and other Plan-related communication with which we have been provided, in the context of the ERISA rules noted above. Having reviewed this material and relevant legal authority, we have not found any Plan or Plan-related documentation that would cause us to believe that the Company has made any commitments to provide vested coverage to any Lehman Brothers retirees.

We note that we have been provided with certain Plan-related communication where there was some mention of continuing benefits to certain individuals. In two particular individual letters (the "Spousal Letters"), it was stated that the surviving spouse will be "entitled to lifetime (medical) coverage." The Spousal Letters do not mention any specific type of coverage or level of benefits that are allegedly promised to certain individuals – one Spousal Letter merely states that the surviving spouse will be charged an individual premium for continuing coverage and the other Spousal Letter informs the recipients that the surviving spouse will be mailed information about coverage and an enrollment form upon the retiree's death. Each of the Spousal Letters appears to be a response to an individual inquiry regarding coverage of the surviving spouse under the Plan.

In this regard, *Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583 (W.D.N.Y. 2011), *aff'd*, No. 11-1724-cv (2d Cir. Aug. 3, 2012) is arguably relevant. There, retirees challenged a series of decisions by Xerox Corporation ("Xerox") to shift the cost of health coverage to retirees. Specifically, the plaintiffs asserted that Xerox promised them free lifetime health benefits in a number of written communications, including a guidebook issued by Xerox which included a statement that the retiree and his or her spouse will participate in the health plans "for the rest of their lives," and a letter to an employee by a benefit services officer, which stated that "Xerox is required to provide you with lifetime medical and dental coverage as a condition of the retirement benefits policy." As an initial matter, the court held that many of the documents relied upon by the plaintiffs could not be considered plan documents because they were similar to the informal communications that had been held in other cases not to constitute plan documents. *See Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492-93 (2d Cir. 1988) (filmstrips and other presentations that used language such as "lifetime" or "at no cost" but did not purport to be complete binding statements of plan terms did not override the express reservations of the right to amend or terminate the plan in the SPD); *Alday v. Container Corp. of America*, 906 F.2d 660, 665-66 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991) (individual "Summary of Personnel Benefits" booklets and letters sent to retiring employees did not qualify as plan documents); *see also Bouboulis*, 442 F.3d at 62-63 (a letter from the union president on official stationery sent to all participants in the union-staff health plan detailing modifications to the plan "could potentially be



construed as a statutorily required notice of a material modification, and thus sufficiently formal to be considered"). The court held that, even if such documents could be considered plan documents, mere assurances therein that retirees (or their spouses) would participate in the plan for the rest of their lives, without a promise of any particular level of benefits or a promise never to reduce benefits, did not create an enforceable promise of vested benefits.

Here, the Spousal Letters state that certain surviving spouses are entitled to lifetime benefits without further promising any particular level of benefits or a promise never to reduce benefits. It would seem in a number of respects that the Spousal Letters here are similar to the guidebook and the letter discussed in the *Coriale* case. *See also Peterson v. Windham Community Memorial Hospital*, 803 F. Supp. 2d 96, 104 (D. Conn. 2011) (although several letters and memoranda addressed to all employees and retirees included language bearing on the duration of benefits, they did not guarantee receipt of specified benefits and could not be reasonably interpreted as creating an enforceable promise to vest benefits).

We have also been provided with a certain settlement and general release between Lehman Brothers Inc. and a former employee in connection with the termination of his employment (the "Employee Settlement"), which provides in relevant part that the former employee "shall continue to participate in the [Plan], pursuant to the terms and conditions of that Plan." The Employee Settlement does not otherwise include an affirmative promise to provide a specific type of coverage or level of benefits.

In this regard, *Adams v. Tetley USA, Inc.*, 363 F. Supp. 2d 94 (D. Conn. 2005) is arguably relevant. There, the plaintiffs who retired pursuant to an early retirement agreement with Tetley USA, Inc. ("Tetley") challenged Tetley's decision to terminate its retiree medical benefit plan, asserting that Tetley promised them lifetime health benefits as consideration for early retirement. The court held that Tetley did not promise vested benefits to any early retirees because each of the early retirement agreements made reference to the retiree benefit plan maintained for regular retirees, which in turn was subject to Tetley's express reservation of rights to terminate the plan. By way of contrast, in *Boban v. Bank Julius Baer Postretirement Health and Life Ins. Program*, 723 F. Supp. 2d 560 (S.D.N.Y. 2010), in which plaintiffs challenged the defendant bank's decision to increase retirees' share of the premium, the court held that the defendant might have promised the plaintiffs an enforceable right to a specific contribution rate for retiree health coverage. In so holding, the court observed that each of their separation agreements with the defendant specified the required contribution rate applicable to the retiree health coverage, without making reference to a plan document which allegedly included a reservation of right to amend the plan. The court further noted that the separation agreements might be sufficiently formal to contain an enforceable promise because parties have not shown that a formal plan document existed at the time the separation agreements were signed.

**Dechert**
LLP

Here, the Employee Settlement states that the former employee will continue to participate in the Plan, which in turn is subject to the Company's reservation of rights to amend or terminate the Plan. It would seem in a number of respects that the Employee Settlement is akin to the early retirement agreements in the *Tetley* case.

### IV.    Conclusion

We have not found any written communication that would cause us to believe that the Company has made a promise to provide vested retiree coverage under the Plan.

\*        \*        \*

Should the Court have any questions or concerns regarding the matter discussed herein, please do not hesitate to contact the undersigned (1-212-698-3571).

Respectfully submitted,

*Andrew L. Oringer*

Andrew L. Oringer

cc:    Michael K. Kam, Esq.
       Ms. Carol L. Rado
       Ms. Patricia Vozza

*[Handwritten annotations:]*

Why wasn't the settlement statement (Employee) & the "VRA" disseminated to former LB Employees, Retirees, Participants, Former Employees on "LTD", as outlined per the court documents & debtor's attorney & LBHI.

( LBHI' Failure To Disseminate Information )
No dissemination of such was forwarded to me & nor was I contacted regarding the findings of the "VRA"; until I contacted Leonard Gerson, Esq.; "DOL" - Dept of Labor, September 2013, after I tried to ascertain such from LBHI, Carol Rado - Reba Trustee on July 23, 2013, via telephone request, after receipt of "Exhibit A" - LB Termination Ltr, July 19, 2013; Re: Aetna Insurance Coverage Scheduled Funding of Medical Premiums for "LTD" (Former Employees on Long Term Disability) to terminate, December 31, 2013.

L Gerson

**U.S. Department of Labor**

N-4611 N-412

200 Constitution Avenue, N.W., N-4611
Washington, D.C. 20210

Ms. Barbara Roth
1216 S. Missouri Ave. # 414
Clearwater, FL 33756

33756$$01

20

**BARBARA M. ROTH (Formerly FARAHAT)**
**1216 S. MISSOURI AVENUE, #414**
**CLEARWATER, FL 33756**
**727-348-4751**
**E-MAIL: bmral14@yahoo.com**

October 19, 2013

***VIA PRIORITY MAIL***
Leonard H. Gerson, Esq.
Plan Benefits Security Division, Office of the Solicitor
Department of Labor
P.O. Box 1914
Washington, DC 20013
(202) 693-5615
E-Mail: Gerson.Leonard@dol.gov

RE:    Lehman Brothers Medical Benefits Plan Summary Etc.

Dear Mr. Gerson:

Thank you for forwarding me the Lehman Brothers Vested Rights Analysis and as promised, per our discussion, I have forwarded you via mail, the Lehman Brothers Medical Benefits Summary Plan, including various Lehman Brothers Letters from Human Resources and documentation to substantiate my claim that I am entitled to continue to receive my medical benefits, which are scheduled to be terminated on December 31, 2013, per the previous letter I forwarded to you from Lehman Brothers, dated July 19, 2013.

Can you please notify me via telephone upon receipt of such package, as my internet has limited operating capacity due to construction?  Hence, if you need any additional documentation illustrating my claim, including the LTD Benefits Book, I would be more than happy to furnish any hard copies necessary to you under separate cover.

I look forward to hearing a favorable satisfactory response from you and would like to take the opportunity to thank you, once again, in advance for your time, attention and cooperation.

Sincerely,

Barbara Roth
BR/
Enclosures: 17

C:/MyDocuments/LehmanBrothersBankruptcy/LeonardH.GersonEsqDOLLtrOct19,2013.doc

Lehman Brothers Medical Coverage Termination Letter Dated, July 19, 2013 - Yahoo! M... Page 1 of 1

08-13555-mg   Doc 41228-1   Filed 11/14/13   Entered 11/21/13 15:59:58   Exhibit
Pg 144 of 151

| leonard gers | | bmral14 | Profile | | | Sign Out | Home |

**EXHIBIT T**

We Found Leonard Gerst jrLeonard Gersonamp; More.          www.PeopleS...   Sponsored

**Lehman Brothers Medical Coverage Termination Letter Dated, July**, September 11, 2013 8:56 PM
**y 19, 2013**

From:   "Barbara" <bmral14@yahoo.com>

To:   "gerson.leonard@dol.gov" <gerson.leonard@dol.gov>

3 Files    3 MB    Download All

| PDF 818KB | PDF 923KB | PDF 1 MB |
|---|---|---|
| LB Ltr July 19, 2013 | LB Allsup Pg 1.pdf | LB Allsup Pg 2.pdf |
| Save | Save | Save |

Dear Mr. Gerson:

Per our telephone discussion today and your request, please find attached, in pdf
format, Lehman Brothers letter, dated July 19, 2013, regarding termination of Aetna
(Medical) Insurance Coverage, for Former Employees on Long Term Disability, effective
December 31, 2013.

I look forward upon receipt of the "Vested Rights Analysis", as well as, the "LBHI Report
Proposal" for review, as I sincerely believe I'm entitled to continue to receive my medical
benefits.

I would like to take the opportunity to thank you for your time, attention and cooperation, as I
appreciate your assistance regarding such.

Sincerely,
Barbara Roth
1216 S. Missouri Avenue, #414
Clearwater, FL 33756
(727) 348-4751
E-Mail: bmral14@yahoo.com
Barbara Roth



leonard gers[  ]    Search Web    bmral14    Profile    [  ]    Sign Out    Home

We Found Leonard Gerst}rLeonard Gersonamp; More.                www.PeopleS...    Sponsored

**RE: Lehman Brothers**                                      Thursday, September 12, 2013 4:21 PM

From:   "Gerson   Leonard - SOL" <Gerson.Leonard@dol.gov>

To:   "Barbara" <bmral14@yahoo.com>

**1 Files    379KB    Download All**

PDF   379KB

Oringer
Vesting
Analysis.p

Save

Dear Ms. Roth:

Thank you for sending me the July 19, 2013 notice of scheduled termination of funding for medical benefits. Attached is a copy of the vesting analysis which Lehman did in response to the bankruptcy court's request. If you have a copy of the benefit plan or summary of plan benefits in existence at the time that you were hired in 1983 I would appreciate seeing it.

Regards,

Leonard H. Gerson
Plan Benefits Security Division
Office of the Solicitor
Department of Labor
PO Box 1914
Washington DC 20013
Tel: 202-693-5615

---

**From:** Barbara [mailto:bmral14@yahoo.com]
**Sent:** Wednesday, September 11, 2013 8:57 PM
**To:** Gerson, Leonard - SOL
**Subject:** Lehman Brothers Medical Coverage Termination Letter Dated, July 19, 2013

Dear Mr. Gerson:

Per our telephone discussion today and your request, please find attached, in pdf format, Lehman Brothers letter, dated July 19, 2013, regarding termination of Aetna (Medical) Insurance Coverage, for Former Employees on Long Term Disability, effective December 31, 2013.

I look forward upon receipt of the "Vested Rights Analysis", as well as, the "LBHI Report Proposal" for review, as I sincerely believe I'm entitled to continue to receive my medical benefits.

I would like to take the opportunity to thank you for your time, attention and cooperation, as I appreciate your assistance regarding such.

Sincerely,
Barbara Roth
1216 S. Missouri Avenue, #414
Clearwater, FL 33756
(727) 348-4751
E-Mail: bmral14@yahoo.com
Barbara Roth



leonard gers         Search Web         bmral14    Profile         Sign Out    Home

We Found Leonard Gerst Leonard Gersonamp; More.

www.PeopleS...    Sponsored

## Re: Lehman Brothers

Saturday, September 14, 2013 7:17 AM

From:    "Barbara" <bmral14@yahoo.com>

To:    "Gerson   Leonard - SOL" <Gerson.Leonard@dol.gov>

Dear Mr. Gerson:

Thank you for your prompt response for disseminating the attached "Lehman Brothers Vesting Right Analysis", but as previously mentioned, LB didn't provide any scheduled updated documentation with regard to the "VEBA", the "VRA" or LB Proposal, as promised by Lehman and or the Debtor's attorney, to any previous employees, retirees or LTD, as outlined in the legal docuemntation. I will review the VRA, as well as, all the documents in my possession and forward such, but as discussed, my LTD disability is under review, a year earlier than normal guidelines of the Insurance Company UNUM and is a priority at this time.

Hence, upon completion of such, I will notify you via telephone of the status of when and how the documenation of the Summary Plan Benefits and or Benefit Plan will be forwarded, as well as, any other documentation that states what we discussed concerning being vested, as Lehman Brothers paid my medical premiums according to the LTD Benefits Plan and Summary Plan Descriptions prior to 1994, whereby it doesn't say anything about the Company has the right to amend, change or terminate benefits or premiums, as verified at the court proceedings, November 16, 2011, by former employee, Ms. Marianne Ramussen, Chief Benefits Executive; especially since I worked at Lehman Brothers Kuhn Loeb Rhoades Inc. from 1983 to 1995, whereby my LTD commenced in the later portion of the year 1995.

Thank you in advance for your assistance and cooperation.

Sincerely,
Barbara Roth
727-348-4751
E-Mail: bmral14@yahoo.com

*(handwritten margin note:)* Please Note, Upon Medical + LTD Leave, LB Provided "New" LTD. Medical (Exhibit K) Summary in lieu of Green Handbook from 1983.

From: "Gerson, Leonard - SOL" <Gerson.Leonard@dol.gov>
To: Barbara <bmral14@yahoo.com>
Sent: Thursday, September 12, 2013 4:21 PM
Subject: RE: Lehman Brothers

Dear Ms. Roth:
Thank you for sending me the July 19, 2013 notice of scheduled termination of funding for medical benefits. Attached is a copy of the vesting analysis which Lehman did in response to the bankruptcy court's request. If you have a copy of the benefit plan or summary of plan benefits in existence at the time that you were hired in 1983 I would appreciate seeing it.
Regards,

Leonard H. Gerson
Plan Benefits Security Division
Office of the Solicitor
Department of Labor
PO Box 1914
Washington DC 20013
Tel: 202-693-5615

From: Barbara [mailto:bmral14@yahoo.com]
Sent: Wednesday, September 11, 2013 8:57 PM
To: Gerson, Leonard - SOL
Subject: Lehman Brothers Medical Coverage Termination Letter Dated, July 19, 2013

Dear Ms. Gerson:

Dear Mr. Gerson:

Per our telephone discussion today and your request, please find attached, in pdf
format, Lehman Brothers letter, dated July 19, 2013, regarding termination of Aetna
(Medical) Insurance Coverage, for Former Employees on Long Term Disability, effective
December 31, 2013.

I look forward upon receipt of the "Vested Rights Analysis", as well as, the "LBHI Report
Proposal" for review, as I sincerely believe I'm entitled to continue to receive my medical
benefits.

I would like to take the opportunity to thank you for your time, attention and cooperation, as I
appreciate your assistance regarding such.

Sincerely,
Barbara Roth
1216 S. Missouri Avenue, #414
Clearwater, FL 33756
(727) 348-4751
E-Mail: bmral14@yahoo.com
Barbara Roth

RE: Lehman Brothers Medical Benefits Plan Summary etc. - Yahoo! Mail
Page 1 of 2

08-13555-mg    Doc 41228-1    Filed 11/14/13    Entered 11/21/13 15:59:58    Exhibit
Pg 150 of 151

leonard gers [ ]  [ Search Web ]  bmral14    Profile    [ ]  [ ]    Sign Out    Home

**We Found Leonard Gerst, Leonard Gerson, & More.**         www.PeopleS...    Sponsored

### RE: Lehman Brothers Medical Benefits Plan Summary etc.    Saturday, October 19, 2013 5:47 PM

From:   "Barbara" <bmral14@yahoo.com>

To:   "Leonard - SOLGerson" <Gerson.Leonard@dol.gov>

RE: Lehman Brothers Medical Benefits Plan Summary etc. - Yahoo! Mail          Page 2 of 2

08-13555-mg    Doc 41228-1    Filed 11/14/13    Entered 11/21/13 15:59:58    Exhibit
Pg 151 of 151

Dear Mr. Gerson:

Thank you for forwarding me the Lehman Brothers Vested Rights Analysis and as promised, per our discussion, I have forwarded you via mail, the Lehman Brothers Medical Benefits Summary Plan, including various Lehman Brothers Letters from Human Resources and documentation to substantiate my claim that I am entitled to continue to receive my medical benefits, which are scheduled to be terminated on December 31, 2013, per the previous letter I forwarded to you from Lehman Brothers, dated July 19, 2013.

Can you please notify me via telephone upon receipt of such package, as my internet has limited operating capacity due to construction.  Hence, if you need any additional documentation illustrating my claim, including the LTD Benefits Book, I would be more than happy to furnish any hard copies necessary to you under separate cover.

I look forward to hearing a favorable staisfactory response from you and would like to take the opportunity to thank you, once again, in advance for your time, attention and cooperation.

Sincerely,
Barbara Roth
(727)348-4751

-----------------------------------------
On Thu, 9/12/13, Gerson, Leonard - SOL <Gerson.Leonard@dol.gov> wrote:

Subject: RE: Lehman Brothers
To: "Barbara" <bmral14@yahoo.com>
Date: Thursday, September 12, 2013, 4:21 PM

Dear Ms. Roth:Thank you for sending me the
July 19, 2013 notice of scheduled termination of funding for
medical benefits. Attached is a copy of the vesting analysis
which Lehman did in response to the bankruptcy court's
request. If you have a copy of the benefit plan or summary
of plan benefits in existence at the time that you were
hired in 1983 I would appreciate seeing it.Regards,  Leonard H. GersonPlan Benefits Security
DivisionOffice of the
SolicitorDepartment of
LaborPO Box 1914Washington DC
20013Tel:
202-693-5615  From: Barbara [mailto:bmral14@yahoo.com]
Sent: Wednesday, September 11, 2013 8:57 PM
To: Gerson, Leonard - SOL
Subject: Lehman Brothers Medical Coverage Termination
Letter Dated, July 19, 2013   Dear Mr.
Gerson: Per
our telephone discussion today and your request, please find
attached, in pdf format, Lehman Brothers letter,
dated July 19, 2013, regarding termination of Aetna
(Medical) Insurance Coverage, for Former Employees
on Long Term Disability, effective December 31,
2013. I
look forward upon receipt of the "Vested Rights
Analysis", as well as, the "LBHI Report Proposal" for review, as I
sincerely believe I'm entitled to continue to receive my
medical benefits. I
would like to take the opportunity to thank you for your
time, attention and cooperation, as I appreciate your
assistance regarding such. Sincerely,Barbara Roth1216
S. Missouri Avenue, #414Clearwater, FL
33756(727)
348-4751E-Mail: bmral14@yahoo.comBarbara
Roth