WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF PLAN ADMINISTRATOR TO MOTION OF
BLACK DIAMOND OFFSHORE LTD. AND DOUBLE BLACK DIAMOND
OFFSHORE LTD. FOR LEAVE TO CONDUCT LIMITED RULE 2004
DISCOVERY OF DEBTORS AND CERTAIN FORMER EMPLOYEES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1] submits this response to the *Motion of Black Diamond Offshore Ltd. and Double Black Diamond Offshore Ltd. for Leave to Conduct Limited Rule 2004 Discovery of Debtors and Certain Former Employees* [ECF No. 41112] (the "Motion"), and respectfully represents as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**Preliminary Statement**

1. Black Diamond Offshore Ltd. and Double Black Diamond Offshore Ltd. (together, "Black Diamond") seek discretionary authority to take extensive discovery to advance the allowance of two proofs of claim as to which no objection is pending.

2. Black Diamond's request for discovery is not ripe. Discovery by a creditor in connection with a claim that is not subject to an objection is premature and, generally, use of Bankruptcy Rule 2004 by a creditor in this context is inappropriate. While granting the motion will impose a substantial burden on the Plan Administrator, denial of the Motion will not prejudice Black Diamond, as Black Diamond will retain its right, subject to orders of the Court, to take discovery if an objection to its claims is interposed.

3. Black Diamond's two claims are among approximately 4,275 others in what the Court identified last month as a "class of, as yet, unresolved claims." Nov. 22, 2013 Hr'g Tr. at 78:25-79:2 [ECF No. 41343] ("November Hearing Transcript"). The Court recognized that "everyone in that category presumably has cause to assert a personal priority and ask what about me?" Nov. Hr'g Tr. at 81:17-21, and that "everybody wants to be first." *Id.* at 83:17-18. But, in denying attempts of a minority of creditors "try[ing] to gain a procedural advantage relative to timing" of the resolution of their claims, *id.* at 81:3-9, the Court identified the issue was one of "appropriate case management on a global basis." *Id.* at 73:10-11. The Court did not think "that any party in interest should ever be incentivized to seek separate treatment," *id.* at 74:9-11, and found "no reason" for "a squeaky wheel . . . to get the grease." *Id.* at 85:17-18. For the same reasons, the Motion should be denied.

2

**Relevant Background**

4.     The Debtors and the Plan Administrator have resolved approximately 64,825 of the more than 69,000 claims filed in these cases. As a result of the Debtors' and the Plan Administrators' efforts, only approximately 4,275 claims remained unresolved as of December 1, 2013. Virtually all of the progress to date has been achieved without litigation before the Court.

5.     To approach this claims reconciliation process of unprecedented size and complexity, the Debtors and the Plan Administrator innovated and implemented protocols and procedures to address the volume, novelty, and complexity of the claims, and the Court entered orders and granted the Debtors authority "designed to maximize the efficiency" of the process and "promote the fair resolution of the tens of thousands of filed claims." *See In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010), *aff'd*, 445 B.R. 137 (S.D.N.Y. 2011). Among other things, these orders provided the Debtors and the Plan Administrator with the sole discretion to schedule and adjourn hearings to consider claims objections and to commence alternative dispute resolution for claims to which they have objected. *See* ECF No. 8474. In addition, the Court has imposed a "Temporary Litigation Injunction," enjoining discovery related to claims that become subject to an objection. *Id.* As explained by the Debtors when seeking this relief:

> The Temporary Litigation Injunction is critical to the successful implementation of the Claims Hearing Procedures and the ADR Procedures. Without it, Claimants may attempt to commence litigation or take discovery while they are subject to a Sufficiency Hearing or in Negotiation or Mediation, potentially defeating the purpose of such procedures. A litigation or discovery free-for-all would defeat the purpose of the Claims Hearing Procedures and the ADR Procedures and burden the resources of both the Court and the Debtors. Moreover, litigation of discovery issues would divert value that would otherwise be recoverable by creditors. The

3

>Temporary Litigation Injunction promotes cost savings and enforces the streamlined procedures for resolving Claims as provided for in the Claims Hearing Procedures and the ADR Procedures, while respecting the due process rights of the Claimants.

[ECF No. 8474 ¶ 21].

6. The Court's order confirming the Plan (the "Confirmation Order") [ECF No. 23023] specifically preserves the Debtors' rights under Rule 2004 and the Court's *Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities* [ECF No. 5910], following the effective date or the Plan (the "Effective Date") and through the closing of the chapter 11 cases. (Confirmation Order ¶ 65.) Neither the Plan nor the Confirmation Order preserves any rights of third parties to obtain discovery after the Effective Date pursuant to Rule 2004.

7. On November 25, 2013, the Court entered an order extending the deadline for the Plan Administrator to object or seek to estimate proofs of claim to September 6, 2015, without prejudice to the ability of the Plan Administrator to request further extensions. [ECF No. 41286]. In doing so, the Court overruled objections of creditors that sought to have their claims reconciled and allowed sooner. The Court found the objections to be

>a misappropriation of . . . motion practice to obtain preferential treatment or, if not preferential treatment, to try to gain a procedural advantage relative to timing . . . [of the] orderly resolution of all of the as yet unresolved claims.

Feb. Hr'g Tr. at 81:2-9.

**Objection**

8. A request for discovery under Rule 2004 is committed to the sound discretion of the bankruptcy court. *See In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001). To the extent a party is entitled to pursue relief under Rule

4

2004, the party must first establish good cause, *i.e.*, that "the examination is necessary to establish the claim of the party seeking the examination, or [that] denial of such request would cause the examiner undue hardship or injustice." *In re MF Global Inc.*, 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) (citing *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). The burden of showing good cause "is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (citing *Freeman v. Seligson*, 405 F.2d 1326, 1334 (D.C. Cir. 1968); *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984)). Further, the Court must "weigh the relevance of the discovery against the burden it will impose on the producing party." *MF Global*, 2013 WL 74580, at *1 (citing *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991)). Here, Black Diamond cannot demonstrate either that an examination at this time is necessary or that relevance of the information it seeks outweighs the significant prejudice the relief requested would impose.

9.      The permitted uses of Rule 2004 post-confirmation are extremely limited. It is for this reason that the Plan Administrator's rights to pursue discovery pursuant to Rule 2004 was explicitly preserved pursuant to the Confirmation Order. No other party's rights were similarly preserved. Accordingly, the Motion should be denied.

A.      **Discovery by Black Diamond Is Premature**

10.     Black Diamond seeks discovery with respect to a dispute that does not yet exist. The Plan Administrator has not yet objected to Black Diamond's claims. Discovery by Black Diamond now will inevitably lead to increased costs: diversion of time and expenditure of money and resources of LBHI and Lehman Brothers Special Financing Inc. – which will be borne disproportionately by other creditors of these companies; and of judicial resources to resolve discovery-related objections and disputes. Such costs would be borne unnecessarily if

ultimately either the Plan Administrator determines not object to Black Diamond's claims, and the claims are Allowed, or the Plan Administrator objects to the claims and the parties settle the claims during the pendency of the Temporary Litigation Injunction through ADR or otherwise.

11.     The issue here is akin to the ripeness doctrine, which reflects the determination that courts should decide only "a real, substantial controversy," not a mere hypothetical question. *Longway v. Jefferson Cnty. Bd. of Supervisors*, 24 F.3d 397, 400 (2d Cir. 1994) (internal citations omitted).  The central concern is that the court will be asked to resolve a dispute revolving around uncertain or contingent future events that may never occur.[2] "[R]ipeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (internal citation omitted).

12.     The Court should not permit Black Diamond to propound discovery requests unless and until necessary to resolve a real, tangible controversy.  At this time, the Plan Administrator has not exhausted its options to resolve Black Diamond's claims without the need for discovery by Black Diamond or judicial intervention.  The Debtors and the Plan Administrator have been able to resolve the majority of claims against the chapter 11 estates, and the vast majority of affirmative collection actions for the benefit of creditors in these cases, without the need or expense of discovery by creditors.  The Plan Administrator should be afforded the time to continue to do so in this instance.  Black Diamond will not suffer any hardship as a result of denial of the Motion, as it will retain the right to seek discovery if the Plan Administrator objects to Black Diamond's claims, subject to the expiration of the Temporary

---

[2] A court may find that an issue is not ripe even though "case or controversy" requirements are satisfied. *Buckley v. Valeo*, 424 U.S. 1, 114 (1976) (*per curiam*) ("We have recently recognized the distinction between jurisdictional limitations imposed by [Article III] and 'problems of prematurity and abstractness' that may prevent adjudication in all but the exceptional case.") (citing *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 (1972)).

Litigation Injunction. By contrast, granting the Motion will impose substantial hardship on the Plan Administrator.

**B.        Discovery By Black Diamond Would Lead to Unintended Consequences**

13.    In overruling objections to the Plan Administrator's motion to extend the deadline to object to or seek to estimate claims, the Court recently rejected attempts by creditors to use motion practice as a means to jockey for position in line for resolution of their claims. The Court did not want to incentivize creditors to attempt to compel the Plan Administrator to object to particular claims ahead of others. Nov. Hr'g Tr. at 74:9-11. Likewise, earlier in these cases, the Court dismissed an adversary proceeding brought by prepetition creditors seeking to liquidate prepetition claims and to determine administrative or other priority of such claims. *See* Jan. 21, 2010 Hr'g Tr. at 77, *Swabsin v. Lehman Bros. Holdings Inc.*, No. 09-01482, ECF No. 13 ("January Hearing Transcript"). In *Swabsin*, the Court criticized the plaintiffs' attempt to get "ahead of the line" by filing an adversary proceeding, Jan Hr'g Tr. at 72:14-15, and expressed concern about creditors pursuing their claims outside of a "claims allowance process that is well regulated, well respected, has bankruptcy rules that specifically relate to it and in this case a series of procedural orders that have been specially crafted to the needs of the case." Jan. Hr'g Tr. at 70:12-16. In conducting a balance of harm analysis under different circumstances, this Court has properly considered the impact of permitting exceptions that will encourage others to seek similar relief. *See Lehman Bros.*, 433 B.R. at 127 (relying, in part, on such analysis in denying motion to permit late filing of claim).

14.    Granting one creditor the right to take discovery with respect to a claim that is not yet subject to an objection would encourage all other similarly situated creditors to seek the same relief. More than 3,000 claims are not subject to an objection and yet have not

7

been allowed. A discovery free-for-all would burden the resources of the Court and the Plan Administrator. Rule 2004 "examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor." *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987). To avoid the cost and diversion attendant to potentially unnecessary discovery, the Plan Administrator could be compelled to file objections to claims prematurely, simply to invoke the Temporary Litigation Injunction. This result would improperly incentivize creditors to compel the Plan Administrator to object to or compromise particular claims ahead of others. This in turn could compromise the ability of the Plan Administrator to maximize recoveries to creditors. Consequently, the necessity of the discovery sought by Black Diamond is significantly outweighed by the burden that granting the Motion would impose in these cases.

## Conclusion

15. Black Diamond is attempting to divert the Plan Administrator's attention and the Debtors' resources to two of Black Diamond's claims ahead of approximately 4,275 other claims remaining to be resolved in these chapter 11 cases. The Plan Administrator has a compelling interest in ensuring that the claims reconciliation process is streamlined and efficiently managed. The relief requested would upend that process for the benefit of a single creditor. It is incumbent on the Plan Administrator and the Court to take into account the interests of all creditors and the chapter 11 estates as a whole. Viewed in this light, the Court should exercise its discretion to deny the Motion.

## Reservation of Rights

16. The Plan Administrator reserves all of its rights to (i) object to any specific request for documents or examination pursuant to Bankruptcy Rule 2004, (ii) submit its own request for documents or examination, and (iii) seek protective orders.

8

**WHEREFORE** the Plan Administrator respectfully requests the Court deny the Motion and grant such other and further relief as is just and proper.

Dated:   December 13, 2013
        New York, New York

    /s/ Garrett A. Fail
    Garrett A. Fail

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Lehman Brothers Holdings Inc.
    and Certain of Its Affiliates