**THIS OBJECTION SEEKS TO CLASSIFY AS SUBORDINATED CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE OF THE FOUR HUNDRED FORTY-NINTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT COUNSEL FOR LEHMAN BROTHERS HOLDINGS INC., ADAM M. LAVINE, AT 212-310-8290.**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------x

### NOTICE OF HEARING ON THE FOUR HUNDRED
### FORTY-NINTH OMNIBUS OBJECTION TO CLAIMS (510(b) CLAIMS)

**PLEASE TAKE NOTICE** that on December 20, 2013, Lehman Brothers

Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors for the entities in the above referenced chapter 11 cases, filed the four hundred forty-ninth omnibus objection to claims (the "Four Hundred Forty-Ninth Omnibus Objection to Claims"), and that a hearing (the "Hearing") to consider the Four Hundred Forty-Ninth Omnibus Objection to Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **January 28, 2014 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Four Hundred Forty-Ninth Omnibus Objection to Claims shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable Portable Document Format (PDF) (with a hard copy delivered directly to Chambers), and shall be served upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ralph I. Miller, Esq., Robert J. Lemons, Esq., and Maurice Horwitz, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **January 21, 2014 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

2

served with respect to the Four Hundred Forty-Ninth Omnibus Objection to Claims or any claim

set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the Four

Hundred Forty-Ninth Omnibus Objection to Claims, which order may be entered with no further

notice or opportunity to be heard offered to any party.

Dated:  December 20, 2013
         New York, New York

                                        /s/ Robert J. Lemons
                                        Ralph I. Miller
                                        Robert J. Lemons

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Lehman Brothers Holdings Inc.
                                        and Certain of Its Affiliates

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

**FOUR HUNDRED FORTY-NINTH**
**OMNIBUS OBJECTION TO CLAIMS (510(b) CLAIMS)**

---

**THIS OBJECTION SEEKS TO CLASSIFY AS SUBORDINATED CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS FOUR HUNDRED FORTY-NINTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT COUNSEL FOR LEHMAN BROTHERS HOLDINGS INC., ADAM M. LAVINE, AT 212-310-8290.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-

referenced chapter 11 cases (the "Chapter 11 Estates"), respectfully represents as follows:

**RELIEF REQUESTED**

1.      The Plan Administrator files this four hundred forty-ninth omnibus

objection to claims (the "Four Hundred Forty-Ninth Omnibus Objection to Claims") pursuant to

section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), section 510(b) of

the Bankruptcy Code, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus

objections to proofs of claim filed in these chapter 11 cases (the "Procedures Order") [ECF No.

6664].

2.      The proofs of claim listed on Exhibit A annexed hereto assert that LBHI is

liable for indemnification, reimbursement, and/or contribution in connection with litigations or

other proceedings that have been, or may be, commenced against the holders of the proofs of

claim (the "Claimants"). According to the proofs of claim, in each of the litigations or other

proceedings that have been commenced against the Claimants, the complainants seek damages

from the Claimants arising from the purchase or sale of securities of LBHI.

3.      The majority of the Claimants are underwriters of securities issued by

LBHI (collectively, the "Underwriter Claimants"). Many of the Underwriter Claimants have

been sued for damages under state and/or federal securities laws based upon alleged false and

misleading statements contained in the offering documents of securities issued by LBHI and

2

underwritten by the Underwriter Claimants.  The remaining Claimants are financial institutions

(collectively, the "Broker Claimants") that either sold securities issued by LBHI or its affiliates

to individual investors or were otherwise vested with the authority to purchase or sell securities

issued by LBHI or its affiliates on behalf of individual investors or their representatives.

Exhibit A annexed hereto specifies which claims are held by Underwriter Claimants (the

"Underwriter Claims") and which claims are held by Broker Claimants (the "Broker Claims").

4.      The Underwriter Claims and the Broker Claims should be classified as

subordinated pursuant to the Plan and section 510(b) of the Bankruptcy Code.  Section 510(b) of

the Bankruptcy Code requires mandatory subordination of claims for "reimbursement or

contribution" to the extent such claims are on account of claims arising from the purchase or sale

of securities of a debtor or its affiliates.  The Underwriter Claims and the Broker Claims seek

reimbursement or contribution from LBHI in connection with litigations or other proceedings

arising from the purchase or sale of securities issued by LBHI or its affiliates.  Accordingly, the

Underwriter Claims and the Broker Claims fall squarely within the plain text of section 510(b) of

the Bankruptcy Code.  The Plan Administrator respectfully requests that the Court classify the

Underwriter Claims and the Broker Claims as subordinated under the Plan.

5.      The Plan Administrator reserves its rights to object to any of the

Underwriter Claims and Broker Claims on any other basis as to which the Court does not grant

the relief requested herein.

## **JURISDICTION**

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3

## BACKGROUND

### Chapter 11 Case Background

7.    Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.    On January 14, 2010, the Court entered the Procedures Order, which authorizes the filing of omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

9.    On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order").  The Plan became effective on March 6, 2012. Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

10.    The Plan classifies claims against LBHI that are subject to section 510(b) of the Bankruptcy Code in LBHI Class 11, unless such claims arise out of Equity Interests[1] in LBHI, in which case the Plan classifies them in LBHI Class 12.  Plan at §§ 4.16, 4.17.

### The Underwriter Claims

11.    The Underwriter Claims seek indemnification, reimbursement, and/or contribution from LBHI in connection with litigations or other proceedings that have been, or

---

[1] The Plan defines Equity Interests to include "Allowed Claims against LBHI arising out of, relating to, or in connection with any [shares of common stock, preferred stock, other forms of ownership interest, or any other equity security] that are subject to section 510(b) of the Bankruptcy Code."  Plan at § 1.51.

4

may be, commenced against the Underwriter Claimants.  LBHI's alleged indemnification,

reimbursement, and contribution obligations purportedly arise from contractual relationships

between LBHI and the Underwriter Claimants, such as their underwriting agreements, and/or

provisions of federal and state securities and other laws.  Citing to these alleged indemnification,

reimbursement, and contribution obligations, the Underwriter Claimants seek a recovery from

LBHI for liability, settlement amounts, defense costs, and/or expenses that have been, or may be,

incurred by the Underwriter Claimants in defending litigations or other proceedings that have

been, or may be, commenced or threatened against them.  Certain of the Underwriter Claims

were filed in liquidated amounts, whereas others were filed as either wholly or partially

contingent and unliquidated.

12.     According to the proofs of claim filed by the Underwriter Claimants, in

each of the litigations or other proceedings that have been commenced against the Underwriter

Claimants (collectively, the "Securities Fraud Litigations"), the complainants seek damages

arising from alleged false statements and/or omissions in the offering materials of securities

issued by LBHI and underwritten by the Underwriter Claimants.  Certain of the Underwriter

Claimants have settled the underlying securities litigations commenced against them.  *See, e.g.*,

Judgment and Order Approving Settlement Between Lead Plaintiffs and the Settling Underwriter

Defendants, ¶ 14(a), 1:08-cv-5523, ECF No. 397.

**The Broker Claims**

13.     Of the two Broker Claims, one asserts a claim for "indemnification from

LBHI for costs, demands, expenses and liabilities" on account of a civil lawsuit commenced

against the Broker Claimant arising from the Broker Claimant's alleged failure to execute a sale

of LBHI common stock shortly before the Commencement Date.  *See* Proof of Claim Number

32062, attached as <u>Exhibit B</u> ("<u>Claim No. 32062</u>").  The underlying complaint against this

Broker Claimant alleges, among other things, breach of contract and breach of fiduciary duty.

*Id.*  The other Broker Claim asserts a contingent claim against LBHI for "contribution" on

account of any causes of action that may be brought against the Broker Claimant as a result of

the Broker Claimant's sale of securities issued by LBHI or its affiliates.  *See* Proof of Claim

Number 26388, attached as <u>Exhibit C</u> ("<u>Claim No. 26388</u>").

**THE UNDERWRITER CLAIMS AND**
**<u>THE BROKER CLAIMS SHOULD BE CLASSIFIED AS SUBORDINATED</u>**[2]

14.    The Underwriter Claims and the Broker Claims should be classified as

subordinated pursuant to the Plan and section 510(b) of the Bankruptcy Code.  The Bankruptcy

Code mandates the subordination of claims for "reimbursement or contribution" on account of

claims for damages arising from the purchase or sale of securities of a debtor or an affiliate of the

debtor.  11 U.S.C. § 510(b).  Specifically, section 510(b) of the Bankruptcy Code states:

> [A] claim . . . for damages arising from the purchase or sale of [a
> security of the debtor or an affiliate of the debtor] or for
> reimbursement or contribution allowed under section 502 on
> account of such a claim . . . shall be subordinated to all claims or
> interests that are senior to or equal the claim or interest represented
> by such security, except that if such security is common stock,
> such claim has the same priority as common stock.

*Id.*  As detailed below, both the Underwriter Claims and the Broker Claims fall squarely within

the plain text of section 510(b) of the Bankruptcy Code.  Therefore, subordination of the

Underwriter Claims and the Broker Claims is mandatory.

---

[2]  The Plan Administrator need not commence an Adversary Proceeding because (i) such claims are not yet
"allowed" and (ii) the Plan provides for subordination of claims subject to section 510(b) of the Bankruptcy Code.
FED R. BANKR. P. 7001(8) ("The following are adversary proceedings… (8) a proceeding to subordinate any
*allowed* claim or interest, *except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for
subordination*") (emphasis added).

6

A.     **The Bankruptcy Code Mandates the Subordination of the Underwriter Claims**

       15.     Numerous courts, including this Court, have subordinated underwriter indemnification claims arising from litigation involving securities issued by the debtor. *See, e.g.*, *In re De Laurentiis Entm't. Group, Inc.*, 124 B.R. 305, 310 (C.D. Cal. 1998) (subordinating the indemnification claim of the debtor's underwriter for attorneys' fees incurred in defending actions brought by the debtor's stockholders); *In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002) (holding that claims filed by the debtor's underwriters should be subordinated where such claims sought the recovery of costs incurred by the underwriters in connection with a class action lawsuit arising from the initial public offering of the debtor's stock); *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 824 (Bankr. D. Del. 1999) (subordinating the indemnification claims of a debtor's underwriters for costs and expenses incurred in defense of a securities fraud action commenced by the debtor's shareholders); *In re Walnut Equip. Leasing Co., Inc.*, No. 97-19699, 1999 WL 1271762, at *5-6 (Bankr. E.D. Pa. Dec. 28, 1999) (agreeing with "courts [that] have concluded that defense costs incurred by underwriters in connection with securities violations are subordinated" under section 510(b) "regardless of whether the indemnification obligation is based on a statute, a contractual agreement or otherwise"); *see also In re Touch America Holdings, Inc.*, 381 B.R. 95 (Bankr. D. Del. 2008) (requiring subordination of officers' and directors' indemnification claims pursuant to section 510(b)); *In re Public Serv. Co. of N.H.*, 129 B.R. 3, 5 (Bankr. D.N.H. 1991) (same). Accordingly, the weight of authority requires subordination of the Underwriter Claims.[3]

---

[3] In a pleading filed in the liquidation proceeding of Lehman Brothers Inc., certain of the Underwriter Claimants tacitly acknowledged that *De Laurentiis*, *Jacom Computer*, and *Mid-American Waste* are applicable to the Underwriter Claims they filed against LBHI. *See* Response of UBS Financial Services Inc. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability) at ¶¶ 34-35, *In re Lehman Brothers Inc.*, Case No. 08-01420 (Bankr. S.D.N.Y.), ECF No. 7206 ("As the Trustee points out, indemnification claims of underwriters against bankrupt issuers have been properly subordinated . . . . [where] the securities at issue in the

7

16.    Moreover, the plain text of section 510(b) also requires subordination of the Underwriter Claims.  First, the Underwriter Claims qualify as claims for "reimbursement or contribution" as such terms are used in section 510(b).  Each of the Underwriter Claims seeks "reimbursement," "contribution," and/or "indemnification."  As such, many of the Underwriter Claimants have conceded that their claims are for "reimbursement or contribution."  *See, e.g.*, Proof of Claim Number 13323 filed by Loop Capital Markets LLC at 3 (claiming that LBHI agreed to "reimburse" Claimant); Proof of Claim Number 26977 filed by BNY Mellon Capital Markets, LLC at 3 (asserting that Claimant has certain "indemnification and/or contribution" rights against LBHI").  Although certain Underwriter Claimants seek "indemnification," a term not used in section 510(b) of the Bankruptcy Code, courts have noted that "reimbursement by definition includes indemnification."  *Jacom*, 280 B.R. at 572 ("This Court is not persuaded by Underwriters' characterization of their claim as one for 'indemnification' as opposed to 'reimbursement' (the term used in the statute)."); *accord De Laurentiis*, 124 B.R. at 308.  Indeed, numerous courts have subordinated underwriter claims for "indemnification." *See, e.g.*, *De Laurentiis*, 124 B.R. at 310; *Jacom*, 280 B.R. at 572.

17.    Second, the securities in the underlying Securities Fraud Litigations are "securit[ies] of the debtor or of an affiliate of the debtor."  Section 101(49) of the Bankruptcy Code defines "security" broadly to include notes, stock, bonds, debentures, and any other claim or interest commonly referred to as a security.  11 U.S.C. § 101(49).  There can be no dispute that the securities at issue in the underlying Securities Fraud Litigations are "securities" within the meaning ascribed to such term by section 101(49) of the Bankruptcy Code.  Indeed, in their

---

transactions related to the subordinated claims were those of the debtor, and thus represented claims or interests in the bankruptcy proceeding where the claims were filed.")

8

proofs of claim, the Underwriter Claimants repeatedly refer to the stock, notes, and bonds at issue as "securities." *See, e.g.*, Proof of Claim Number 30409 filed by Scotia Capital (USA) Inc. at 3; Proof of Claim Number 26977 filed by BNY Mellon Capital Markets, LLC at 1. Similarly, there can be no dispute that these securities are securities "of the debtor." Each of the Underwriter Claimants underwrote the issuance of securities by LBHI, and each of the Underwriter Claims involves claims for indemnification, reimbursement, and/or contribution arising from securities issued by LBHI. *See, e.g.*, Proof of Claim Number 13323 filed by Loop Capital Markets LLC at 3; Proof of Claim Number 26977 filed by BNY Mellon Capital Markets, LLC at 1; Proof of Claim Number 30409 filed by Scotia Capital (USA) Inc. at 3.

18.     Third, each of the Underwriter Claims is "on account of" claims for "damages arising from the purchase or sale" of securities issued by LBHI. As stated in the Underwriter Claims, in the Securities Fraud Litigations, complainants asserted claims under state and/or federal securities laws against the Underwriter Claimants based upon alleged false and misleading statements contained in the offering documents for the relevant securities. Securities fraud claims such as these clearly qualify as claims for "damages arising from the purchase or sale of securities." Courts routinely subordinate claims pursuant to section 510(b) of the Bankruptcy Code where such claims allege that the debtor's fraud led claimants to purchase or retain securities to their detriment. *See, e.g.*, *In re WorldCom, Inc.*, 329 B.R. 10, 15 (Bankr. S.D.N.Y. 2005) ("The damage and harm sustained by [claimant], whether proximately caused by fraud in the inducement of its purchase, or the retention of its ownership . . . arises from and is based upon [claimant's] purchase and ownership of WorldCom stock and as such is squarely within the scope of section 510(b)."). Further, the Underwriter Claims, which seek indemnification, reimbursement, and/or contribution in connection with the Securities Fraud

9

Litigations, are clearly "on account of" claims for "damages arising from the purchase of sale" of securities of LBHI. *See De Laurentiis*, 124 B.R. at 310; *Jacom*, 280 B.R. at 572; *Mid-American Waste*, 228 B.R. at 824.

**B.    The Bankruptcy Code Also Mandates the Subordination of the Broker Claims**

19.    The Broker Claims also fall squarely within the text of section 510(b) of the Bankruptcy Code.  Subordination is therefore mandatory.  First, the Broker Claims qualify as claims for "reimbursement or contribution" as such terms are used in section 510(b).  The holder of Claim No. 26388 admits that its claim is for "contribution."  *See* Claim No. 26388 at 2.  Although the holder of Claim No. 32062 asserts a claim for "indemnification" – as opposed to a claim for "reimbursement or contribution" – *see* Claim No. 32062 at 2, courts routinely subordinate claims for "indemnification" on the basis that such claims qualify as claims for "reimbursement" under section 510(b).  *See De Laurentiis*, 124 B.R. at 310; *Jacom*, 280 B.R. at 572 ("This Court is not persuaded by Underwriters' characterization of their claim as one for 'indemnification' as opposed to 'reimbursement' (the term used in the statute).").

20.    Second, the securities in the underlying Securities Fraud Litigations are "securit[ies] of the debtor or of an affiliate of the debtor."  In their proofs of claim, the Broker Claimants identify the securities at issue as securities that were either issued by LBHI or issued by an affiliate of LBHI and guaranteed by LBHI.  *See* Claim No. 32062 (claim based upon an underlying litigation involving LBHI common stock); Claim No. 26388 (claim based upon the Broker Claimants' potential liability in respect of various notes included on the "Lehman Program Securities" list).

21.    Third, both of the Broker Claims are "on account of" claims for "damages arising from the purchase or sale" of securities of LBHI or its affiliates.  Claim No. 32062 seeks

10

"indemnification" on account of a civil lawsuit that asserts, among other things, breach of contract and breach of fiduciary duty claims against the Broker Claimant based on the Broker Claimant's failure to sell the complainant's LBHI stock.  *See* Claim No. 32062 at 2.  With respect to Claim No. 26388, no litigation had been commenced against the Broker Claimant at the time the proof of claim was filed.  Nevertheless, Claim No. 26388 seeks contingent and unliquidated claims for "contribution . . . resulting from . . . any claims, causes of action or judgments brought by the Noteholders or other persons/entities against [the Broker Claimant] related to the Securities [issued by LBHI or its affiliates]."  Claim No. 32062 at 2.

22.    Even if the complainants in the litigations that have been, or may be, commenced against the Broker Claimants do not assert that their damages flow directly from a fraudulent securities transaction, such claims still "aris[e] from" the purchase or sale of securities.  Indeed, the term "arising from" has been granted an expansive reading by courts in this district.  *See, e.g.*, *In re Enron Corp.*, 341 B.R. 141, 159-62 (S.D.N.Y 2006) (subordinating breach of contract claims, among others, pursuant to section 510(b)); *In re WorldCom, Inc*, 329 B.R. 10, 15 (Bankr. S.D.N.Y 2005) ("From the perspective of Section 510(b), it makes no difference whether the stockholder's loss in the value of his stock was caused by a pre-purchase fraud which induced his purchase, or a post-purchase fraud, embezzlement, looting, or other corporate misconduct which undermine the value of his stock.").

23.    Other courts agree with the courts in this district that section 510(b) should be read expansively to encompass many types of claims related to the purchase or sale of securities, including claims for breach of contract and breach of fiduciary duty.  *See, e.g.*, *In re Telegroup, Inc.*, 281 F.3d 133 (3d Cir. 2002) (subordinating claims arising from the debtor's alleged breach of its agreement to use its best efforts to ensure that certain stock was registered

11

and freely tradeable); *Mid-American Waste*, 228 B.R. at 825 n.5 ("[T]he claims contemplated by

section 510(b) can also be based on other case law and statutory law dealing with fraudulent

conduct generally, breach of fiduciary duty and similar types of misconduct"); *In re Public Serv.

Co. of N.H.*, 129 B.R. 3, 5 (Bankr. D.N.H. 1991) (stating that "the language of 510(b) is broad

enough to include breach of contract and related actions as well"); *see also* COLLIER ON

BANKRUPTCY 510.04[3] (16th ed. 2009) (acknowledging that courts have adopted a broad

reading of the term "arising from" and that "under this broad reading, the claim need not flow

directly from the securities transaction or arise contemporaneously with the purchase or sale of

the security… if the transaction is part of the causal link leading to the injury").

24.    Based on the foregoing, it is clear that the damage claims that have been,

or may be, asserted against the Broker Claimants "aris[e] from" the purchase or sale of securities

issued by LBHI or its affiliates.  Further, the Broker Claims, which seek "indemnification" or

"contribution" in connection with these damage claims, are clearly "on account of" such damage

claims.  *See De Laurentiis*, 124 B.R. at 310; *Jacom*, 280 B.R. at 572; *Mid-American Waste*, 228

B.R. at 824.  As such, the Broker Claims are exactly the types of claims for which section 510(b)

of the Bankruptcy Code mandates subordination.

### Notice

25.    No trustee has been appointed in these Chapter 11 Cases.  The Plan

Administrator has served notice of this Four Hundred Forty-Ninth Omnibus Objection to Claims

on: (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii)

the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New

York; (v) the claimants listed on Exhibit A attached to this Four Hundred Forty-Ninth Omnibus

Objection to Claims; and (vi) all other parties entitled to notice in accordance with the

12

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [ECF No. 9635].  The Plan

Administrator submits that no other or further notice need be provided.

26.    No previous request for the relief sought herein has been made by LBHI

or the Plan Administrator to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order

granting the relief requested herein and such other and further relief as is just.

Dated:  December 20, 2013
        New York, New York

/s/ Robert J. Lemons
Ralph I. Miller
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

13

**<u>EXHIBIT A</u>**

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 449: EXHIBIT A - 510(b) CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE SUBORDINATED | CATEGORY OF CLAIMS |
|---|------|-------------|-------------|-----------|---------|------------------------------|----------------------------|--------------------|
| 1 | A.G. EDWARDS & SONS, INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26972 | Undetermined | Undetermined | Underwriter Claim |
| 2 | ABN AMRO INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26971 | $25,639.17 * | $25,639.17* | Underwriter Claim |
| 3 | ALANDSBANKEN ABP (FINLAND), SVENSK FILIAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26388 | Undetermined | Undetermined | Broker Claim |
| 4 | ANZ SECURITIES, INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26973 | $46,755.47 * | $46,755.47* | Underwriter Claim |
| 5 | BANCA IMI SPA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27018 | $7,915.01 * | $7,915.01* | Underwriter Claim |
| 6 | BANK OF NEW YORK MELLON, THE, | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 32062 | $411,572.47 * | $411,572.47* | Broker Claim |
| 7 | BBVA SECURITIES, INC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26976 | $72,818.13 * | $72,818.13* | Underwriter Claim |
| 8 | BMO CAPITAL MARKETS CORP. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24938 | Undetermined | Undetermined | Underwriter Claim |
| 9 | BMO CAPITAL MARKETS CORP. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24939 | Undetermined | Undetermined | Underwriter Claim |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 449: EXHIBIT A - 510(b) CLAIMS

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE SUBORDINATED | CATEGORY OF CLAIMS |
|---|---|---|---|---|---|---|---|
| 10  BNP PARIBAS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 03/02/2012 | 67938 | $775,094,830.49 * | Undetermined* | Underwriter Claim |

For the avoidance of doubt, this Objection does not seek to classify as subordinated any portions of this proof of claim other than the portions seeking indemnification, reimbursement, and/or contribution.

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE SUBORDINATED | CATEGORY OF CLAIMS |
|---|---|---|---|---|---|---|---|
| 11  BNY MELLON CAPITAL MARKETS, LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26977 | $115,849.49 * | $115,849.49* | Underwriter Claim |
| 12  CABRERA CAPITAL MARKETS LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26978 | $39,111.36 * | $39,111.36* | Underwriter Claim |
| 13  CIBC WORLD MARKETS CORP | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15847 | Undetermined | Undetermined | Underwriter Claim |
| 14  COMMERZBANK CAPITAL MARKETS CORP. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26980 | $26,334.76 * | $26,334.76* | Underwriter Claim |
| 15  COUNTRYWIDE SECURITIES CORP. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 29863 | $7,915.01 * | $7,915.01* | Underwriter Claim |
| 16  CREDIT AGRICOLE SECURITIES (USA) INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/11/2009 | 11422 | $32,029.76 * | $32,029.76* | Underwriter Claim |
| 17  DNB NOR MARKETS, INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26981 | $48,943.73 | $48,943.73 | Underwriter Claim |
| 18  EDWARD D. JONES & CO. L.P. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26982 | $1,950.98 | $1,950.98 | Underwriter Claim |

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 449: EXHIBIT A - 510(b) CLAIMS

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE SUBORDINATED | CATEGORY OF CLAIMS |
|------|-------------|-------------|------------|---------|------------------------------|----------------------------|---------------------|
| 19 HSBC SECURITIES (USA) INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 28681 | $49,384.21 * | $49,384.21* | Underwriter Claim |
| 20 INCAPITAL LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 19207 | $47,465.36 * | $47,465.36* | Underwriter Claim |
| 21 ING FINANCIAL MARKETS LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26983 | $27,474.48 * | $27,474.48* | Underwriter Claim |
| 22 LOOP CAPITAL MARKETS LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13323 | Undetermined | Undetermined | Underwriter Claim |
| 23 NABCAPITAL SECURITIES, LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24635 | Undetermined | Undetermined | Underwriter Claim |
| 24 NABCAPITAL SECURITIES, LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24981 | Undetermined | Undetermined | Underwriter Claim |
| 25 NATIONAL AUSTRALIA BANK LIMITED | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 32762 | Undetermined | Undetermined | Underwriter Claim |
| 26 NATIONAL AUSTRALIA BANK LIMITED | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 32763 | Undetermined | Undetermined | Underwriter Claim |
| 27 NATIONAL FINANCIAL SERVICES LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26986 | $9,546.01 | $9,546.01 | Underwriter Claim |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 449: EXHIBIT A - 510(b) CLAIMS

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE SUBORDINATED | CATEGORY OF CLAIMS |
|---|---|---|---|---|---|---|---|
| 28 OPPENHEIMER & CO. INC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 07/10/2009 | 5244 | Undetermined | Undetermined | Underwriter Claim |
| 29 RAYMOND JAMES & ASSOCIATES, INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 05/28/2009 | 4787 | $3,286.88 * | $3,286.88* | Underwriter Claim |
| 30 RBC CAPITAL MARKETS CORPORATION | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/16/2009 | 13494 | Undetermined | Undetermined | Underwriter Claim |
| 31 RBS SECURITIES INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26987 | $9,508.02 * | $9,508.02* | Underwriter Claim |
| 32 SANTANDER INVESTMENT | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26988 | $39,830.87 * | $39,830.87* | Underwriter Claim |
| 33 SCOTIA CAPITAL (USA) INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 30409 | $102,500,000.00 * | $102,500,000.00* | Underwriter Claim |
| 34 SCOTT & STRINGFELLOW, LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26989 | $6,363.13 | $6,363.13 | Underwriter Claim |
| 35 SMH CAPITAL INC. (FKA SANDERS MORRIS HARRIS INC.) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 32547 | $3,961,950.00 | $3,961,950.00 | Underwriter Claim |
| 36 SOVEREIGN BANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 05/29/2009 | 4661 | Undetermined | Undetermined | Underwriter Claim |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

**OMNIBUS OBJECTION 449: EXHIBIT A - 510(b) CLAIMS**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE SUBORDINATED | CATEGORY OF CLAIMS |
|---|---|---|---|---|---|---|---|
| 37 STANDARD CHARTERED BANK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26990 | $10,782.00 * | $10,782.00* | Underwriter Claim |
| 38 SUN TRUST ROBINSON HUMPHREY, INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22903 | Undetermined | Undetermined | Underwriter Claim |
| 39 TD AMERITRADE HOLDING CORP. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26991 | $6,363.13 * | $6,363.13* | Underwriter Claim |
| 40 TD SECURITIES (USA) LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/03/2009 | 10176 | Undetermined | Undetermined | Underwriter Claim |
| 41 UBS FINANCIAL SERVICES INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 17889 | Undetermined | Undetermined | Underwriter Claim |
| 42 UBS SECURITIES LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22891 | Undetermined | Undetermined | Underwriter Claim |
| 43 WACHOVIA CAPITAL MARKETS, LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26993 | $139,077.92 * | $139,077.92* | Underwriter Claim |
| 44 WELLS FARGO SECURITIES, LLC | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26994 | $106,383.76 * | $106,383.76* | Underwriter Claim |
| 45 WILLIAMS CAPITAL GROUP, L.P., THE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/22/2009 | 26992 | $67,315.51 | $67,315.51 | Underwriter Claim |
| | | TOTAL | | | $882,916,397.11 | $107,821,566.62 | |

* - Indicates claim contains unliquidated and/or undetermined amounts

## **EXHIBIT B**

| **United States Bankruptcy Court/Southern District of New York** | | **PROOF OF CLAIM** |
|---|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., El Al.<br>08-13555 (JMP)        0000032062 |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

The Bank of New York Mellon
One Wall Street
11th Floor
New York, NY 10286
attn: Jonathan Goldblatt
jonathan.goldblatt@bnymellon.com

Telephone number: 212-635-1575        Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

**Name and address where payment should be sent (if different from above)**

Telephone number:        Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ SEE ATTACHED _____
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Contractual indemnification for suit based on Claimant's acting as Debtor's Transfer Agent
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. **Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other

Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 22 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br><br>9/21/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>JONATHAN GOLDBLATT<br>MANAGING DIRECTOR |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## *THE CLAIM*

This attachment provides background and other information regarding a claim by The Bank of New York Mellon ("BNY Mellon" or "Claimant") against Lehman Brothers Holdings Inc. ("LBHI") for certain non-contingent, liquidated amounts and certain contingent, unliquidated amounts of legal fees, expenses, and potential losses that have been , will be, and/or may be incurred as a result of a lawsuit filed against Claimant in its capacity as Transfer Agent for certain LBHI securities.

Claimant is a New York banking organization with a principal place of business at One Wall Street, New York, NY 10286. Claimant is duly authorized and empowered to make this claim.

## *BACKGROUND*

On March 3, 2009, Roger J. Weiss and Suzanne Weiss, as Co-Executors of the Estate of Stephen H. Weiss ("Plaintiff"), filed a civil lawsuit against The Bank of New York Mellon's parent corporation, in a matter entitled <u>Weiss v. The Bank of New York Mellon Corporation,</u> Index No. 600666/2009 (N.Y. Supr. Ct., N.Y. County). The complaint alleges that Plaintiff requested the immediate sale of 21,129 shares of LBHI common stock on August 8, 2008 and August 11, 2008, but that BNY Mellon failed to execute the sale. The complaint asserts causes of action for breach of contract, breach of fiduciary duties, promissory estoppel, negligence and negligent misrepresentation. The complaint claims damages of "at least $400,000 plus interest."

## *BNY MELLON'S RIGHT TO INDEMNIFICATION*

BNY Mellon is entitled to indemnification from LBHI for costs, demands, expenses and liabilities that BNY Mellon incurs in defending itself in the <u>Weiss</u> matter. Such indemnification rights arise from the Stock Transfer Agency Agreement between Lehman Brothers Holdings Inc. and The Bank of New York (now known as The Bank of New York, dated November 9, 1998 (and as amended on November 9, 1998 and on January 29, 2002) (together, the "Transfer Agent Agreement").

*The Transfer Agent Agreement*

Article VIII, paragraph 6 of the Transfer Agent Agreement states that "Customer [i.e., LBHI] shall indemnify and hold harmless the Bank [i.e., BNY Mellon] from against any and all claims (whether with or without basis of law), costs, demands, expenses and liabilities, including reasonable attorney's fees, which the Bank may sustain or incur or which may be asserted against the Bank except for any liability which the Bank has assumed pursuant to the immediately preceding section. The Bank shall be deemed not to have acted with negligence and not to have engaged in willful misconduct by reason of or as a result of any action taken or omitted to be taken by the Bank without its own negligence or willful misconduct in reliance upon (i) any provision of this Agreement, (ii) any instrument, order or share certificate reasonably believed by it to be genuine and to be

signed, countersigned or executed by any duly authorized Officer of the Customer, (iii) any Certificate or other instructions of an Officer , (iv) any opinion of legal counsel for the Customer or the Bank, or (v) any law, act, regulation or any interpretation of the same even though such law, act, regulation or any interpretation may thereafter have been altered, changed, amended or repealed.  This paragraph also states that, "nothing contained herein shall limit or in any way impair the right of the Bank to indemnification under any other provision of this Agreement. "

Further, Article VIII, paragraph 5 states, "The Bank shall only be liable for any loss or damage arising out of its own negligence or willful misconduct; provided, however, that the Bank shall not be liable for any indirect, special, punitive or consequential damages."

### *AMOUNT DUE TO CLAIMANT*

Because the Weiss case is pending and ongoing, the amount of Claimant's total legal fees, expenses, and liabilities for which it has an indemnification claim against LBHI cannot be determined at this time.  Claimant therefore makes a claim for the contingent, unliquidated amounts.

In addition, Claimant makes a claim for its reasonable legal fees and expenses accrued to date in defending itself in the Weiss case, which amount is neither contingent nor unliquidated.  **These legal fees and expenses to date amount to at least $ 11,572.47**, which is the amount billed to date.  Any amounts not yet billed but accrued to date are neither contingent nor unliquidated.

In support of this claim, Claimant has attached copies of (i) Plaintiff's complaint in the Weiss case, (ii) the Transfer Agent Agreement (with the 1998 and 2002 Amendments), and (iii) redacted invoices paid by BNY Mellon to its counsel in the Weiss case, Lazare Potter & Giacovas LLP.

Any notices in connection with this claim should be addressed to Claimant at the address below:

Jonathan R. Goldblatt
BNY Mellon
One Wall Street, 11th Floor
New York, NY 10286
Tel:    (212) 635-1575
Fax:    (212) 635-6590
Email: jonathan.goldblatt@bnymellon.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------X

ROGER J. WEISS and SUZANNE WEISS, as
Co-Executors of the Estate of Stephen H. Weiss

                              Plaintiffs,

              -against-

THE BANK OF NEW YORK MELLON
CORPORATION

                              Defendant.

---------------------------------------------------------X

Index No.: _____

**SUMMONS**

TO THE ABOVE-NAMED DEFENDANT:

        You are hereby summoned and required to submit to plaintiffs' attorneys,

Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York, 10110, your answer

to plaintiffs' complaint in this action within 20 days after the service of this summons, exclusive

of the day of service, or within 30 days after service is complete if this summons is not

personally delivered to you within the State of New York.  In the case of your failure to appear

or answer, judgment will be taken against you by default for the relief demanded in the

complaint.

*Joseph Mawry*
*March 04, 2009*
*3:56 p.m.*

Plaintiffs designate New York County as the place of trial. The basis of venue designated is that pursuant to C.P.L.R. § 503, defendant's principal place of business.

Dated: New York, New York
       March 3, 2009

WOLLMUTH, MAHER & DEUTSCH LLP

By:_____
        William F. Dahill
        Adam M. Bialek

500 Fifth Avenue
New York, New York 10110
(212) 382-3300

Attorneys for Plaintiffs

TO:    The Bank of New York Mellon Corporation
       One Wall Street
       New York, New York 10286
       Attn:  General Counsel

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------X

ROGER J. WEISS and SUZANNE WEISS, as
Co-Executors of the Estate of Stephen H. Weiss

                          Plaintiffs,

            -against-

THE BANK OF NEW YORK MELLON
CORPORATION

                         Defendant.

----------------------------------------------------------------X

Index No.:

**COMPLAINT**

NEW YORK
COUNTY CLERK'S OFFICE

MAR – 3 2009

NOT COMPARED
WITH COPY FILED

Plaintiffs Roger J. Weiss and Suzanne Weiss, as Co-Executors of the Estate of Stephen H. Weiss, as for their complaint against defendant The Bank of New York Mellon Corporation ("BNY Mellon"), allege as follows:

### NATURE OF THE ACTION

1.    This action arises from defendant BNY Mellon's failure, wrongful refusal and/or inability to execute the Estate of Stephen H. Weiss (the "Estate of Weiss")'s directions (i) to sell all shares of Lehman Brothers Holdings, Inc. ("Lehman Brothers") at a price of $18.50 or better (and the price exceeded $18.50 at the time the direction was given), and then (ii) to sell all shares immediately. These directions were given both in writing in the form requested by BNY Mellon and by telephone on August 8, 2008 and August 11, 2008. BNY Mellon acknowledged receiving such directions from the Estate of Weiss but failed to execute the sale. Ultimately, the Lehman Brothers' shares became worthless, resulting in damages to the Estate of Weiss of not less then $400,000.

## THE PARTIES

2.      Roger J. Weiss is a resident of Rye, New York and is a co-executor of the Estate of Weiss (the "Co-Executor")

3.      Suzanne Weiss is a resident of Greenwich, Connecticut and is a co-executor of the Estate of Weiss.

4.      BNY Mellon is a Delaware corporation with its principal place of business located at One Wall Street, New York, New York 10286.  BNY Mellon describes itself as "a global financial services company focused on helping clients manage and service their financial assets, operating in 34 countries and serving more than 100 markets."  BNY Mellon further boasts that "[t]he company is a leading provider of financial services for institutions, corporations and high-net-worth individuals, providing superior asset management and wealth management, asset servicing, issue services, clearing services and treasury services through a worldwide client-focused team."

## JURISDICTION AND VENUE

5.      The Court has personal jurisdiction over the defendant pursuant to C.P.L.R. § § 301 and 302.

6.      Venue is proper in New York County pursuant to C.P.L.R. § 503.

## FACTUAL BACKGROUND

7.      Prior to his death, Stephen H. Weiss was employed by Lehman Brothers and earned 21,440 shares under the Lehman Brothers Equity Award Program (the "Lehman Brothers Shares").

8.      Upon his death, on April 16, 2008, Mr. Weiss's Lehman Brothers Shares vested and were transferred to the Estate of Weiss.

9.     At all times, the Lehman Brothers Shares were being held by BNY Mellon, which acted as the transfer agent and account administrator for Lehman Brothers and the Estate of Weiss.

10.     As transfer agent and account administrator for the Estate of Weiss, BNY Mellon understood the critical nature of its work to its clients who relied upon BNY Mellon's skill in following their directions.

11.     BNY Mellon, through its BuyDIRECT Direct Purchase and Dividend Reinvestment Plan (the "Plan"), represented to the Estate of Weiss that his Lehman Brothers Shares could "be easily sold" through BNY Mellon.

12.     BNY Mellon, through its Plan, also represented that the sale of "any or all shares held in the Plan ... [could be performed] without having to go through a broker."

13.     Further, BNY Mellon, through its Plan, stated that the Estate of Weiss could sell any or all of his Lehman Brothers Shares held in his account by instructing BNY Mellon by mail or over the telephone.

14.     On August 7, 2008, the Co-Executor of the Estate of Weiss instructed BNY Mellon in writing to "sell all shares of Lehman Brothers common stock registered in the name of the Estate of Stephen H. Weiss at a price of $18.50 or better...," with a medallion guaranteed signature (the "Sale Instruction Letter"). (A true and correct copy is annexed hereto as Ex. A.)

15.     The Sales Instruction Letter was in a form requested by BNY Mellon.

16.     According to the Federal Express tracking receipt, the Sales Department of BNY Mellon received the Sale Instruction Letter on August 8, 2008, at 10:03 a.m., and "R. Rose" signed for it. (A true and correct copy is annexed hereto as Ex. B.)

3

17.    On August 8, 2008, Lehman Brothers' stock was trading above $18.50.

18.    Accordingly, the Sale Instruction Letter constituted a market order and the Lehman Brothers Shares should have been sold promptly.

19.    That same day, Frances M. Andrus, on behalf of the Co-Executor, spoke to Kathy Ferlick from BNY Mellon's Preferred Shareholder Relations Services to confirm that the Estate of Weiss's Lehman Brothers Shares were in fact sold. Ms. Andrus informed Ms. Ferlick that a sale instruction letter, signed by the Co-Executor with a medallion signature guarantee, was sent to BNY Mellon via Federal Express, to which Ms. Ferlick replied, "OK, that's good, that is taken care of then." When Ms. Ferlick checked BNY Mellon's "system," however, she noted that the Sale Instruction Letter had not yet been entered into the "system." Ms. Andrus informed Ms. Ferlick that the Sale Instruction Letter had been received and signed for that same morning by R. Rose of BNY Mellon. Ms. Ferlick assured Ms. Andrus that the sale order would be entered into the "system" later that day or on Monday, August 11, at the latest.

20.    Later on August 8, the Co-Executor called BNY Mellon to confirm the sale of the Lehman Brothers Shares. When he was told that the Sale Instruction Letter was not in the "system," he definitively issued a sell order by directing BNY Mellon to "sell immediately," all of the Lehman Brothers Shares owned by the Estate of Weiss. In response, the BNY Mellon representative stated that the Lehman Brothers Shares would be sold later that day or on Monday, August 11, 2008, at the latest. The Co-Executor relied upon BNY Mellon's statement that the shares would be sold later that day or on Monday at the latest.

21.    At the end of the day, Friday, August 8, 2008, Lehman Brothers shares were selling at $18.62 per share.

4

22.     On Monday, August 11, 2008, Eileen Carpiniello, the Co-Executor's assistant, spoke again with BNY Mellon and was informed that despite receiving the Sale Instruction Letter and having entered it into the "system," BNY Mellon could not sell the Lehman Brothers Shares without the Co-Executor giving them oral instructions to do so.

23.     While such instruction was contrary to BNY Mellon's prior instruction on how to sell shares, and the Co-Executor had already given an oral sale order on August 8, the Co-Executor immediately called BNY Mellon and once again gave directions to "sell now." BNY Mellon's personnel said that the sale would take place later that day.  The Co-Executor relied upon BNY Mellon's statement that the sale would take place later that day.

24.     On Monday, August 11, 2008, Lehman Brothers shares opened at $18.90 and had a high of $19.18.

25.     Accordingly, as of August 11, 2008, BNY Mellon had three standing sell orders at market price for the Estate of Weiss's Lehman Brothers Shares.

26.     While representatives of the Estate of Weiss spoke to BNY Mellon on August 8, 2008 and August 11, 2008, none of BNY Mellon's personnel stated that BNY could not accept the instructions as they were given, and instead informed the representatives of the Estate of Weiss that the instructions were being entered into the "system," and that the Lehman Brothers Shares would be sold on August 8 or August 11 at the latest.

27.     BNY Mellon, however, did not sell the Estate of Weiss's Lehman Brothers Shares, and instead ignored the clear directives to do so.

28.     As a result, the Estate of Weiss has lost no less than $400,000 as the Lehman Brothers Shares currently have no value.

### First Cause of Action
(Breach of Fiduciary Duty)

29.     Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 28 above as though fully set forth herein.

30.     BNY Mellon induced the Estate of Weiss to believe it was capable and responsible for executing sale orders by the Estate of Weiss of its Lehman Brothers Shares.  In addition, when BNY Mellon accepted the sell orders from the Estate of Weiss, it became bound by a fiduciary duty to BNY Mellon.

31.     As a result, BNY Mellon stood as fiduciaries to the Estate of Weiss in executing sale orders issued by the Estate of Weiss regarding its Lehman Brothers Shares and owed it a duty to act in good faith, with reasonable care, skill and diligence.

32.     In addition, by the virtue of its possession, custody and control of the Lehman Brothers Shares, BNY Mellon was entrusted with, among other things, the duty and obligation to timely and completely notify the Estate of Weiss of any inability to (i) execute a sale order and/or (ii) accept instructions as they were given.

33.     BNY Mellon breached its fiduciary duty by failing to follow not less than three clear orders to execute the sale of the Estate of Weiss's Lehman Brothers Shares.

34.     BNY Mellon breached its fiduciary duty by failing to timely and completely notify the Estate of Weiss of any inability to (i) execute a sale order and/or (ii) accept instructions as they were given.

35.     As a result, the Estate of Weiss was harmed by an amount to be determined at trial but at least $400,000.

6

**Second Cause of Action**
**(Negligence)**

36.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 35 above as though fully set forth herein.

37.    As a transfer agent and/or account administrator, the BNY Mellon owed the Estate of Weiss a duty of care to properly execute all trades in accordance with clear directives.

38.    By engaging in the conduct described herein, BNY Mellon breached its duty of care by failing to execute a trade in direct contravention of clear directives from Plaintiffs.

39.    Plaintiffs have suffered monetary damages in an amount to be determined at trial but at least $400,000 as a result of BNY Mellon's carelessness and negligence.

**Third Cause of Action**
**(Promissory Estoppel)**

40.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 39 above as though fully set forth herein.

41.    As set forth above, on August 8, 2008 and August 11, 2008, BNY Mellon clearly and unambiguously promised on at least three occasions that BNY Mellon had received the Estate of Weiss's sale order and that the Lehman Brothers Shares would be sold on August 8, 2008 or at the latest August 11, 2008.  BNY Mellon intended that the Estate of Weiss would rely upon these promises.

42.    The Estate of Weiss reasonably and foreseeably relied on BNY Mellon's representations and promises.

7

43.    BNY Mellon breached these promises by failing to sell the Lehman Brothers Shares.

44.    As a result of the Estate of Weiss's reliance on BNY Mellon's promises, the Estate of Weiss was harmed by an amount to be determined at trial, but at least $400,000.

### Fourth Cause of Action
### (Negligent Misrepresentation)

45.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

46.    BNY Mellon represented (i) in its Plan and (ii) orally that it would accept sale orders of the Lehman Brothers Shares in writing and/or orally.

47.    BNY Mellon made statements assuring the Estate of Weiss that it received its sale orders and that the Lehman Brothers Shares would be sold on August 8, 2008 or, at the latest, August 11, 2008.

48.    The Estate of Weiss relied on BNY Mellon's statements in furtherance of that purpose.

49.    As a direct and proximate result of BNY Mellon's misrepresentations and omissions, the Estate of Weiss has sustained damages in an amount to be determined at trial, but at least $400,000.

### Fifth Cause of Action
### (Breach of Contract)

50.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 49 above as though fully set forth herein.

51.    At all times, the Lehman Brothers Shares were being held by BNY Mellon, which acted as the transfer agent and/or account administrator for the Estate of Weiss.

52.    Upon information and belief, BNY Mellon and the Estate of Weiss agreed that the BNY Mellon's function was to execute its clients' orders to purchase and sell Lehman Brothers stock.

53.    Upon information and belief, BNY Mellon and the Estate of Weiss agreed that BNY Mellon charged a service fee for executing clients' directives to purchase and sell Lehman Brothers stock.

54.    Upon information and belief, BNY Mellon breached its contractual obligations by failing to execute the Estate of Weiss's three sale orders on August 8, 2008 and August 11, 2008 directing BNY Mellon to sell all of the Lehman Brothers Shares.

55.    Upon information and belief, BNY Mellon's breaches are material.

56.    Upon information and belief, the Estate of Weiss has duly performed all the duties imposed on it under the agreement and at all times has remained ready, willing and able to continue to do so.

57.    As a result of said breaches, the Estate of Weiss has suffered damages in an amount to be determined at trial, but at least $400,000.

WHEREFORE, Plaintiffs Roger J. Weiss and Suzanne Weiss, as Co-Executors of the Estate of Stephen H. Weiss, respectfully request the following relief:

(a)    on the first cause of action for breach of fiduciary duty, a judgment against the Defendant in the amount of at least $400,000 plus interest;

(b)    on the second cause of action for negligence, a judgment against the Defendant in the amount of at least $400,000 plus interest;

(c)    on the third cause of action for promissory estoppel, a judgment against the Defendant in the amount of at least $400,000 plus interest;

9

(d)     on the fourth cause of action for negligent misrepresentation, a judgment

against the Defendant in the amount of at least $400,000 plus interest;

(e)     on the fifth cause of action for breach of contract, a judgment against the

Defendant in the amount of at least $400,000 plus interest; and

(f)     costs, disbursements, and such other relief as the Court deems just and

proper.

Dated: New York, New York
      March 3, 2009

WOLLMUTH MAHER & DEUTSCH LLP

By:_____
      William F. Dahill
      Adam M. Bialek

500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Plaintiffs*

10



A

The Estate of Stephen H. Weiss
Roger J. Weiss, Executor


August 5, 2008


<u>Federal Express</u>

Bank of NY Mellon
Sales Department
500 Ross Street
Floor 6
Pittsburgh, PA  15219

Re:    <u>Estate of Stephen H. Weiss, deceased</u>

Gentlemen:

As Executor of the above estate I ask that you please sell all shares of Lehman Brothers common stock registered in the name of the Estate of Stephen H. Weiss at a price of $18.50 or better and remit the net sales proceeds to the following:

Estate of Stephen H. Weiss
Attn:  Roger A. Goldman Esq.
c/o Ehrenkranz & Ehrenkranz LLP
375 Park Avenue
New York, New York 10152

Thank you.

Sincerely,

Roger J. Weiss, Executor



## FRAN ANDRUS

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Friday, August 08, 2008 10:09 AM |
| **To:** | FRAN ANDRUS |
| **Subject:** | FedEx Shipment 797047817236 Delivered |

This tracking update has been requested by:

| | |
|---|---|
| Company Name: | Ehrenkranz & Ehrenkranz, LLP |
| Name: | Frances Andrus |
| E-mail: | fandrus@eallp.com |

Our records indicate that the following shipment has been delivered:

| | |
|---|---|
| Ship (P/U) date: | Aug 7, 2008 |
| Delivery date: | Aug 8, 2008 10:03 AM |
| Sign for by: | R.ROSE |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Priority Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |

Tracking number:                    797047817236

| Shipper Information | Recipient Information |
|---|---|
| Frances Andrus | Sales Department |
| Ehrenkranz & Ehrenkranz, LLP | Bank of NY Mellon |
| 375 Park Avenue;Suite 2800 | 500 Ross Street;Floor 6 |
| New York | Pittsburgh |
| NY | PA |
| US | US |
| 10152 | 15219 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:08 AM CDT on 08/08/2008.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

8/18/2008



# THE BANK OF NEW YORK

---

STOCK TRANSFER AGENCY AGREEMENT

between

LEHMAN BROTHERS HOLDINGS INC.

and

THE BANK OF NEW YORK

Dated as of November 9, 1998

ACCOUNT NUMBER(S) _____

## STOCK TRANSFER AGENCY AGREEMENT

AGREEMENT, made as of November 9, 1998 by and between LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware (hereinafter referred to as the "Customer"), and THE BANK OF NEW YORK, a New York trust company (hereinafter referred to as the "Bank").

### W I T N E S S E T H:

That for and in consideration of the mutual promises hereinafter set forth, the parties hereto covenant and agree as follows:

### ARTICLE I
### DEFINITIONS

Whenever used in this Agreement, the following words and phrases shall have the following meanings:

1.   "Business Day" shall be deemed to be each day on which the Bank is open for business.

2.   "Certificate" shall mean any notice, instruction, or other instrument in writing, authorized or required by this Agreement to be given to the Bank by the Customer which is signed by any Officer, as hereinafter defined, and actually received by the Bank.

3.   "Officer" shall be deemed to be the Customer's Chief Executive Officer, President, any Vice President, the Secretary, the Treasurer, the Controller, any Assistant Treasurer, and any Assistant Secretary duly authorized by the Board of Directors of the Customer to execute any Certificate, instruction, notice or other instrument on behalf of the Customer and named in a Certificate, as such Certificate may be amended from time to time.

4.   "Shares" shall mean all or any part of each class of the shares of capital stock of the Customer which from time to time are authorized and/or issued by the Customer and identified in a Certificate of the Secretary of the Customer under corporate seal, as such Certificate may be amended from time to time, with respect to which the Bank is to act hereunder.

### ARTICLE II
### APPOINTMENT OF BANK

1.   The Customer hereby constitutes and appoints the Bank as its agent to perform the services described herein and as more particularly described in Schedule I attached hereto (the "Services"), and the Bank hereby accepts appointment as such

-2-

agent and agrees to perform the Services in accordance with the terms hereinafter set forth.

2. In connection with such appointment, the Customer shall deliver the following documents to the Bank:

(a) A certified copy of the Certificate of Incorporation or other document evidencing the Customer's form of organization (the "Charter") and all amendments thereto;

(b) A certified copy of the By-Laws of the Customer;

(c) A Certificate certified by the Secretary of the Customer as to the appointment of the Bank to perform the Services and authorizing the execution and delivery of this Agreement;

(d) A Certificate signed by the Secretary of the Customer specifying: the number of authorized Shares, the number of such authorized Shares issued and currently outstanding, and the names and specimen signatures of all persons duly authorized by the Board of Directors of the Customer to execute any Certificate on behalf of the Customer, as such Certificate may be amended from time to time;

(e) A Specimen Share certificate for each class of Shares in the form approved by the Board of Directors of the Customer, together with a Certificate signed by the Secretary of the Customer as to such approval and covenanting to supply a new such Certificate and specimen whenever such form shall change;

(f) An opinion of counsel for the Customer, in a form satisfactory to the Bank, with respect to the validity of the authorized and outstanding Shares, the obtaining of all necessary governmental consents, whether such Shares are fully paid and non-assessable and the status of such Shares under the Securities Act of 1933, as amended, and any other applicable law or regulation (i.e., if subject to registration, that they have been registered and that the Registration Statement has become effective or, if exempt, the specific grounds therefor);

(g) A list of the name, address, social security or taxpayer identification number of each Shareholder, number of Shares owned, certificate numbers, and whether any "stops" have been placed; and

(h) An opinion of counsel for the Customer, in a form satisfactory to the Bank, with respect to the due authorization by the Customer and the validity and

-3-

effectiveness of the use of facsimile signatures by the Bank in connection with the countersigning and registering of Share certificates of the Customer.

3. The Customer shall furnish the Bank with a sufficient supply of blank Share certificates and from time to time will renew such supply upon request of the Bank. Such blank Share certificates shall be properly signed, by facsimile or otherwise, by Officers of the Customer authorized by law or by the By-Laws to sign Share certificates, and, if required, shall bear the corporate seal or a facsimile thereof.

## ARTICLE III
## AUTHORIZATION AND ISSUANCE OF SHARES

1. The Customer shall deliver to the Bank the following documents on or before the effective date of any increase, decrease or other change in the total number of Shares authorized to be issued:

   (a) A certified copy of the amendment to the Charter giving effect to such increase, decrease or change;

   (b) An opinion of counsel for the Customer, in a form satisfactory to the Bank, with respect to the validity of the Shares, the obtaining of all necessary governmental consents, whether such Shares are fully paid and non-assessable and the status of such Shares under the Securities Act of 1933 as amended, and any other applicable federal law or regulations (i.e., if subject to registration, that they have been registered and that the Registration Statement has become effective or, if exempt, the specific grounds therefor); and

   (c) In the case of an increase, if the appointment of the Bank was theretofore expressly limited, a certified copy of a resolution of the Board of Directors of the Customer increasing the authority of the Bank.

2. Prior to the issuance of any additional Shares pursuant to stock dividends, stock splits or otherwise, and prior to any reduction in the number of Shares outstanding, the Customer shall deliver the following documents to the Bank:

   (a) A certified copy of the resolutions adopted by the Board of Directors and/or the shareholders of the Customer authorizing such issuance of additional Shares of the Customer or such reduction, as the case may be;

   (b) A certified copy of the order or consent of each governmental or regulatory authority required by law as a prerequisite to the issuance or reduction of such

-4-

Shares, as the case may be, and an opinion of counsel for the Customer that no other order or consent is required; and

(c) An opinion of counsel for the Customer, in a form satisfactory to the Bank, with respect to the validity of the Shares, the obtaining of all necessary governmental consents, whether such Shares are fully paid and non-assessable and the status of such Shares under the Securities Act of 1933, as amended, and any other applicable law or regulation (i.e., if subject to registration, that they have been registered and that the Registration Statement has become effective, or, if exempt, the specific grounds therefor).

## ARTICLE IV
## RECAPITALIZATION OR CAPITAL ADJUSTMENT

1.    In the case of any negative stock split, recapitalization or other capital adjustment requiring a change in the form of Share certificates, the Bank will issue Share certificates in the new form in exchange for, or upon transfer of, outstanding Share certificates in the old form, upon receiving:

(a) A Certificate authorizing the issuance of Share certificates in the new form;

(b) A certified copy of any amendment to the Charter with respect to the change;

(c) Specimen Share certificates for each class of Shares in the new form approved by the Board of Directors of the Customer, with a Certificate signed by the Secretary of the Customer as to such approval;

(d) A certified copy of the order or consent of each governmental or regulatory authority required by law as a prerequisite to the issuance of the Shares in the new form, and an opinion of counsel for the Customer that the order or consent of no other governmental or regulatory authority is required; and

(e) An opinion of counsel for the Customer, in a form satisfactory to the Bank, with respect to the validity of the Shares in the new form, the obtaining of all necessary governmental consents, whether such Shares are fully paid and non-assessable and the status of such Shares under the Securities Act of 1933, as amended, and any other applicable law or regulation (i.e., if subject to registration, that the Shares have been registered and that the Registration Statement has

-5-

become effective or, if exempt, the specific grounds
therefor).

2. The Customer shall furnish the Bank with a sufficient
supply of blank Share certificates in the new form, and from time
to time will replenish such supply upon the request of the Bank.
Such blank Share certificates shall be properly signed, by
facsimile or otherwise, by Officers of the Customer authorized by
law or by the By-Laws to sign Share certificates and, if
required, shall bear the corporate seal or a facsimile thereof.

## ARTICLE V
## ISSUANCE AND TRANSFER OF SHARES

1. The Bank will issue Share certificates upon receipt of a
Certificate from an Officer, but shall not be required to issue
Share certificates after it has received from an appropriate
federal or state authority written notification that the sale of
Shares has been suspended or discontinued, and the Bank shall be
entitled to rely upon such written notification. The Bank shall
not be responsible for the payment of any original issue or other
taxes required to be paid by the Customer in connection with the
issuance of any Shares.

2. Shares will be transferred upon presentation to the Bank
of Share certificates in form deemed by the Bank properly
endorsed for transfer, accompanied by such documents as the Bank
deems necessary to evidence the authority of the person making
such transfer, and bearing satisfactory evidence of the payment
of applicable stock transfer taxes. In the case of small estates
where no administration is contemplated, the Bank may, when
furnished with an appropriate surety bond, and without further
approval of the Customer, transfer Shares registered in the name
of the decedent where the current market value of the Shares
being transferred does not exceed such amount as may from time to
time be prescribed by the various states. The Bank reserves the
right to refuse to transfer Shares until it is satisfied that the
endorsements on Share certificates are valid and genuine, and for
that purpose it may require, unless otherwise instructed by an
Officer of the Customer, a guaranty of signature by an "eligible
guarantor institution" meeting the requirements of the Bank,
which requirements include membership or participation in STAMP
or such other "signature guarantee program" as may be determined
by the Bank in addition to, or in substitution for, STAMP, all in
accordance with the Securities Exchange Act of 1934, as amended.
The Bank also reserves the right to refuse to transfer Shares
until it is satisfied that the requested transfer is legally
authorized, and it shall incur no liability for the refusal in
good faith to make transfers which the Bank, in its judgment,
deems improper or unauthorized, or until it is satisfied that
there is no basis to any claims adverse to such transfer. The
Bank may, in effecting transfers of Shares, rely upon those
provisions of the Uniform Act for the Simplification of Fiduciary

-6-

Security Transfers or the Uniform Commercial Code, as the same may be amended from time to time, applicable to the transfer of securities, and the Customer shall indemnify the Bank for any act done or omitted by it in good faith in reliance upon such laws.

3. All certificates representing Shares that are subject to restrictions on transfer (e.g., securities acquired pursuant to an investment representation, securities held by controlling persons, securities subject to stockholders' agreement, etc.), shall be stamped with a legend describing the extent and conditions of the restrictions or referring to the source of such restrictions. The Bank assumes no responsibility with respect to the transfer of restricted securities where counsel for the Customer advises that such transfer may be properly effected.

## ARTICLE VI
## DIVIDENDS AND DISTRIBUTIONS

1. The Customer shall furnish to the Bank a copy of a resolution of its Board of Directors or authorized Committee thereof, certified by the Secretary or any Assistant Secretary, either (i) setting forth the date of the declaration of a dividend or distribution, the date of accrual or payment, as the case may be, the record date as of which shareholders entitled to payment, or accrual, as the case may be, shall be determined, the amount per Share of such dividend or distribution, the payment date on which all previously accrued and unpaid dividends are to be paid, and the total amount, if any, payable to the Bank on such payment date, or (ii) authorizing the declaration of dividends and distributions on a periodic basis and authorizing the Bank to rely on a Certificate setting forth the information described in subsection (i) of this paragraph.

2. Prior to the payment date specified in such Certificate or resolution, as the case may be, the Customer shall, in the case of a cash dividend or distribution, pay to the Bank an amount of cash, sufficient for the Bank to make the payment, specified in such Certificate or resolution, to the shareholders of record as of such payment date. The Bank will, upon receipt of any such cash, (i) in the case of shareholders who are participants in a dividend reinvestment and/or cash purchase plan of the Customer, reinvest such cash dividends or distributions in accordance with the terms of such plan, and (ii) in the case of shareholders who are not participants in any such plan, make payment of such cash dividends or distributions to the shareholders of record as of the record date by mailing a check, payable to the registered shareholder, to the address of record or dividend mailing address. The Bank shall not be liable for any improper payment made in accordance with a Certificate or resolution described in the preceding paragraph. If the Bank shall not receive sufficient cash prior to the payment date to make payments of any cash dividend or distribution pursuant to

subsections (i) and (ii) above to all shareholders of the Customer as of the record date, the Bank shall, upon notifying the Customer, withhold payment to all shareholders of the Customer as of the record date until sufficient cash is provided to the Bank.

3.   It is understood that the Bank shall in no way be responsible for the determination of the rate or form of dividends or distributions due to the shareholders.

4.   It is understood that the Bank shall file such appropriate information returns concerning the payment of dividends and distributions with the proper federal, state and local authorities as are required by law to be filed by the Customer but shall in no way be responsible for the collection or withholding of taxes due on such dividends or distributions due to shareholders, except and only to the extent required of it by applicable law.

## ARTICLE VII
### CONCERNING THE CUSTOMER

1.   The Customer shall promptly deliver to the Bank written notice of any change in the Officers authorized to sign Share certificates, Certificates, notifications or requests, together with a specimen signature of each new Officer. In the event any Officer who shall have signed manually or whose facsimile signature shall have been affixed to blank Share certificates shall die, resign or be removed prior to issuance of such Share certificates, the Bank may issue such Share certificates as the Share certificates of the Customer notwithstanding such death, resignation or removal, and the Customer shall promptly deliver to the Bank such approvals, adoptions or ratifications as may be required by law.

2.   Each copy of the Charter of the Customer and copies of all amendments thereto shall be certified by the Secretary of State (or other appropriate official) of the state of incorporation, and if such Charter and/or amendments are required by law also to be filed with a county or other officer or official body, a certificate of such filing shall be filed with a certified copy submitted to the Bank. Each copy of the By-Laws and copies of all amendments thereto, and copies of resolutions of the Board of Directors of the Customer, shall be certified by the Secretary or an Assistant Secretary of the Customer under the corporate seal.

3.   Customer hereby represents and warrants:

(a)   It is a corporation duly organized and validly existing under the laws of Delaware.

-8-

(b) This Agreement has been duly authorized, executed and delivered on its behalf and constitutes the legal, valid and binding obligation of Customer. The execution, delivery and performance of this Agreement by Customer do not and will not violate any applicable law or regulation and do not require the consent of any governmental or other regulatory body except for such consents and approvals as have been obtained and are in full force and effect.

## ARTICLE VIII
### CONCERNING THE BANK

1.   The Bank shall not be liable and shall be fully protected in acting upon any oral instruction, writing or document reasonably believed by it to be genuine and to have been given, signed or made by the proper person or persons and shall not be held to have any notice of any change of authority of any person until receipt of written notice thereof from an Officer of the Customer. It shall also be protected in processing Share certificates which it reasonably believes to bear the proper manual or facsimile signatures of the duly authorized Officer or Officers of the Customer and the proper countersignature of the Bank.

2.   The Bank may establish such additional procedures, rules and regulations governing the transfer or registration of Share certificates as it may deem advisable and consistent with such rules and regulations generally adopted by bank transfer agents.

3.   The Bank may keep such records as it deems advisable but not inconsistent with resolutions adopted by the Board of Directors of the Customer. The Bank may deliver to the Customer from time to time at its discretion, for safekeeping or disposition by the Customer in accordance with law, such records, papers, Share certificates which have been cancelled in transfer or exchange and other documents accumulated in the execution of its duties hereunder as the Bank may deem expedient, other than those which the Bank is itself required to maintain pursuant to applicable laws and regulations, and the Customer shall assume all responsibility for any failure thereafter to produce any record, paper, cancelled Share certificate or other document so returned, if and when required. The records maintained by the Bank pursuant to this paragraph which have not been previously delivered to the Customer pursuant to the foregoing provisions of this paragraph shall be considered to be the property of the Customer, shall be made available upon request for inspection by the Officers, employees and auditors of the Customer, and shall be delivered to the Customer upon request and in any event upon the date of termination of this Agreement, as specified in Article IX of this Agreement, in the form and manner kept by the Bank on such date of termination or such earlier date as may be requested by the Customer.

-9-

4. The Bank may employ agents or attorneys-in-fact at the expense of the Customer, and shall not be liable for any loss or expense arising out of, or in connection with, the actions or omissions to act of its agents or attorneys-in-fact, so long as the Bank acts in good faith and without negligence or willful misconduct in connection with the selection of such agents or attorneys-in-fact.

5. The Bank shall only be liable for any loss or damage arising out of its own negligence or willful misconduct; provided, however, that the Bank shall not be liable for any indirect, special, punitive or consequential damages.

6. The Customer shall indemnify and hold harmless the Bank from and against any and all claims (whether with or without basis in fact or law), costs, demands, expenses and liabilities, including reasonable attorney's fees, which the Bank may sustain or incur or which may be asserted against the Bank except for any liability which the Bank has assumed pursuant to the immediately preceding section. The Bank shall be deemed not to have acted with negligence and not to have engaged in willful misconduct by reason of or as a result of any action taken or omitted to be taken by the Bank without its own negligence or willful misconduct in reliance upon (i) any provision of this Agreement, (ii) any instrument, order or Share certificate reasonably believed by it to be genuine and to be signed, countersigned or executed by any duly authorized Officer of the Customer, (iii) any Certificate or other instructions of an Officer, (iv) any opinion of legal counsel for the Customer or the Bank, or (v) any law, act, regulation or any interpretation of the same even though such law, act, or regulation may thereafter have been altered, changed, amended or repealed. Nothing contained herein shall limit or in any way impair the right of the Bank to indemnification under any other provision of this Agreement.

7. Specifically, but not by way of limitation, the Customer shall indemnify and hold harmless the Bank from and against any and all claims (whether with or without basis in fact or law), costs, demands, expenses and liabilities, including reasonable attorney's fees, of any and every nature which the Bank may sustain or incur or which may be asserted against the Bank in connection with the genuineness of a Share certificate, the Bank's due authorization by the Customer to issue Shares and the form and amount of authorized Shares.

8. At any time the Bank may apply to an Officer of the Customer for written instructions with respect to any matter arising in connection with the Bank's duties and obligations under this Agreement, and the Bank shall not be liable for any action taken or omitted to be taken by the Bank in good faith in accordance with such instructions. Such application by the Bank for instructions from an Officer of the Customer may, at the option of the Bank, set forth in writing any action proposed to be taken or omitted to be taken by the Bank with respect to its

duties or obligations under this Agreement and the date on and/or after which such action shall be taken, and the Bank shall not be liable for any action taken or omitted to be taken in accordance with a proposal included in any such application on or after the date specified therein unless, prior to taking or omitting to take any such action, the Bank has received written instructions in response to such application specifying the action to be taken or omitted. The Bank may consult counsel to the Customer or its own counsel, at the expense of the Customer, and shall be fully protected with respect to anything done or omitted by it in good faith in accordance with the advice or opinion of such counsel.

9.    When mail is used for delivery of non-negotiable Share certificates, the value of which does not exceed the limits of the Bank's Blanket Bond, the Bank shall send such non-negotiable Share certificates by first class mail, and such deliveries will be covered while in transit by the Bank's Blanket Bond. Non-negotiable Share certificates, the value of which exceed the limits of the Bank's Blanket Bond, will be sent by insured registered mail. Negotiable Share certificates will be sent by insured registered mail. The Bank shall advise the Customer of any Share certificates returned as undeliverable after being mailed as herein provided for.

10.    The Bank may issue new Share certificates in place of Share certificates represented to have been lost, stolen or destroyed upon receiving instructions in writing from an Officer and indemnity satisfactory to the Bank. Such instructions from the Customer shall be in such form as approved by the Board of Directors of the Customer in accordance with applicable law or the By-Laws of the Customer governing such matters. If the Bank receives written notification from the owner of the lost, stolen or destroyed Share certificate within a reasonable time after he has notice of it, the Bank shall promptly notify the Customer and shall act pursuant to written instructions signed by an Officer. If the Customer receives such written notification from the owner of the lost, stolen or destroyed Share certificate within a reasonable time after he has notice of it, the Customer shall promptly notify the Bank and the Bank shall act pursuant to written instructions signed by an Officer. The Bank shall not be liable for any act done or omitted by it pursuant to the written instructions described herein. The Bank may issue new Share certificates in exchange for, and upon surrender of, mutilated Share certificates.

11.    The Bank will issue and mail subscription warrants for Shares, Shares representing stock dividends, exchanges or splits, or act as conversion agent upon receiving written instructions from an Officer and such other documents as the Bank may deem necessary.

12.    The Bank will supply shareholder lists to the Customer from time to time upon receiving a request therefor from an Officer of the Customer.

-11-

13.   In case of any requests or demands for the inspection of the shareholder records of the Customer, the Bank will notify the Customer and endeavor to secure instructions from an Officer as to such inspection.   The Bank reserves the right, however, to exhibit the shareholder records to any person whenever it is advised by its counsel that there is a reasonable likelihood that the Bank will be held liable for the failure to exhibit the shareholder records to such person.

14.   At the request of an Officer, the Bank will address and mail such appropriate notices to shareholders as the Customer may direct.

15.   Notwithstanding any provisions of this Agreement to the contrary, the Bank shall be under no duty or obligation to inquire into, and shall not be liable for:

(a)   The legality of the issue, sale or transfer of any Shares, the sufficiency of the amount to be received in connection therewith, or the authority of the Customer to request such issuance, sale or transfer;

(b)   The legality of the purchase of any Shares, the sufficiency of the amount to be paid in connection therewith, or the authority of the Customer to request such purchase;

(c)   The legality of the declaration of any dividend by the Customer, or the legality of the issue of any Shares in payment of any stock dividend; or

(d)   The legality of any recapitalization or readjustment of the Shares.

16.   The Bank shall be entitled to receive and the Customer hereby agrees to pay to the Bank for its performance hereunder (i) out-of-pocket expenses (including legal expenses and attorney's fees) incurred in connection with this Agreement and its performance hereunder, and (ii) the compensation for services as set forth in Schedule I.

17.   The Bank shall not be responsible for any money, whether or not represented by any check, draft or other instrument for the payment of money, received by it on behalf of the Customer, until the Bank actually receives and collects such funds.

18.   The Bank shall have no duties or responsibilities whatsoever except such duties and responsibilities as are specifically set forth in this Agreement, and no covenant or obligation shall be implied against the Bank in connection with this Agreement.

-12-

## ARTICLE IX
### TERMINATION

Either of the parties hereto may terminate this Agreement by giving to the other party a notice in writing specifying the date of such termination, which shall be not less than 60 days after the date of receipt of such notice. In the event such notice is given by the Customer, it shall designate a successor transfer agent. In the event such notice is given by the Bank, the Customer shall provide a Certificate certified by its Secretary designating a successor transfer agent. In the absence of such designation by the Customer, the Bank may designate a successor transfer agent. If the Customer fails to designate a successor transfer agent and if the Bank is unable to find a successor transfer agent, the Customer shall, upon the date specified in the notice of termination of this Agreement and delivery of the records maintained hereunder, be deemed to be its own transfer agent and the Bank shall thereafter be relieved of all duties and responsibilities hereunder. Upon termination hereof, the Customer shall pay to the Bank such compensation as may be due to the Bank as of the date of such termination, and shall reimburse the Bank for any disbursements and expenses made or incurred by the Bank and payable or reimbursable hereunder.

## ARTICLE X
### MISCELLANEOUS

1. The indemnities contained herein shall be continuing obligations of the Customer, its successors and assigns, notwithstanding the termination of this Agreement.

2. Any notice or other instrument in writing, authorized or required by this Agreement to be given to the Customer shall be sufficiently given if addressed to the Customer and mailed or delivered to it at 3 World Financial Center, 24th Floor, N.Y., N.Y., Attention: Corporate Secretary, or at such other place as the Customer may from time to time designate in writing.

3. Any notice or other instrument in writing, authorized or required by this Agreement to be given to the Bank shall be sufficiently given if addressed to the Bank and mailed or delivered to it at its office at 101 Barclay Street (22W), New York, New York 10286 or at such other place as the Bank may from time to time designate in writing.

4. This Agreement may not be amended or modified in any manner except by a written agreement duly authorized and executed by both parties. Any duly authorized Officer may amend any Certificate naming Officers authorized to execute and deliver Certificates, instructions, notices or other instruments, and the Secretary or any Assistant Secretary may amend any Certificate listing the shares of capital stock of the Customer for which the Bank performs Services hereunder.

-13-

5. This Agreement shall extend to and shall be binding upon the parties hereto and their respective successors and assigns; provided, however, that this Agreement shall not be assignable by either party without the prior written consent of the other party, and provided, further, that any reorganization, merger, consolidation, or sale of assets, by the Bank shall not be deemed to constitute an assignment of this Agreement.

6. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

7. This Agreement may be executed in any number of counterparts each of which shall be deemed to be an original; but such counterparts, together, shall constitute only one instrument.

8. The provisions of this Agreement are intended to benefit only the Bank and the Customer, and no rights shall be granted to any other person by virtue of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective corporate officers, thereunto duly authorized and their respective corporate seals to be hereunto affixed, as of the day and year first above written.

Attest:

Attest:

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name: Karen M. Muller
Title: VP

THE BANK OF NEW YORK

By: _____
Name: John I. Sivertsen
Title: Vice President

k:\users\blubitz\lehman\stragmt

<u>SCHEDULE I</u>

COPY

Not an Original

### AMENDMENT NO. 1 TO
### STOCK TRANSFER AGENCY AGREEMENT

This Amendment No. 1 ("Amendment") to the Stock Transfer Agency Agreement dated as of November 1998, by and between Lehman Brothers Holding, Inc. , a Delaware corporation (the "Customer") and THE BANK OF NEW YORK, a New York banking corporation (the "Bank").

### RECITALS:

WHEREAS, the Bank and the Lehman Brothers Holding, Inc. entered into a Stock Transfer Agency Agreement dated as of November 1998(the "Agreement"); and

WHEREAS, the Lehman Brothers Holding, Inc. desires to have shares maintained by the Bank in book-entry form known as the "Direct Registration System" ("DRS");

NOW, in consideration of the mutual promises hereinafter set forth, the parties hereto covenant and agree as follows:

1.    The following sentence shall be added to the beginning of Article V, Section 1:

"The Bank will issue and transfer shares in certificated form as follows:"

2.    Article V, Section 1 shall now be designated (a).

3.    Article V, Section 2 shall now be designated (b).

4.    Article V, Section 3 shall now be designated (c).

5.    The following Section shall be added to Article V:

"2.    The Bank will issue and transfer Shares in book-entry form as follows:

(a)    Shares may be maintained by the Bank in book-entry form known as the "Direct Registration System" ("DRS"). Upon issuance of Shares, the Shares of each registered owner will be credited to the account of each such registered

2

owner (the registered owner of Shares is referred to herein as, or, if there are more than one registered owner of the same Shares, such registered owners are collectively referred to herein as, the "Registered Owner").

(b)    Customer understands that Profile is a required feature of DRS. Profile allows a DTC participant claiming to act on behalf of the Registered Owner of Shares, to direct the Bank to transfer to such DTC participant the Shares designated by such DTC participant without receipt by the Bank of such prior written authorization from the Registered Owner to transfer such Shares.

(c)    Customer understands the Bank will not verify, determine or otherwise ascertain that the DTC participant which is claiming to be acting on behalf of a Registered Owner is, in fact, authorized to act on behalf of such Registered Owner. Moreover, Customer agrees that the Bank shall have no liability for relying upon and complying with directions from a DTC participant as set forth above; and Customer shall indemnify and hold harmless the Bank from and against any liability, expense, damage, loss and judgment arising from or related to the foregoing (including reasonable attorneys fees and expenses and expenses arising from or connected with the enforcement of this provision). For the avoidance of doubt, (i) the Bank shall be fully protected by the foregoing limitation of liability and indemnification with respect to reliance upon and compliance with instructions from the DTC participant even if the Bank's reliance on, and compliance with, such instructions is determined by a final, non-appealable

3

order or judgment of a court of competent jurisdiction to constitute negligence, willful misconduct, breach of any duty owed by the Bank to such Registered Owner or violation of any law and (ii) the forgoing shall not apply to the manner in which the Bank carries out actual transfer of the Shares which are the subject of the DTC participant's instruction, which transfer shall continue to be governed by Article VIII, Section 6 hereof. By way of example and not by way of limitation, if a court determines that the transfer of Shares pursuant to a DTC participant's instruction without obtaining prior authorization from the Registered Owner constitutes negligence, the Bank will nevertheless be protected under this subparagraph (c); on the other hand, in carrying out such instructions, if the Bank transfers Shares from the wrong account or to the wrong DTC participant, the obligation to indemnify the Bank shall be determined in accordance with Article VIII, Section 6 hereof."

6.    Except as amended hereby, the Agreement shall remain in full force and effect and is hereby ratified and confirmed in all respects.

7.    This Amendment and the performance of the parties hereunder shall be interpreted, construed, and enforced in accordance with the laws of the State of New York.

8.    This Amendment may be executed in multiple counterparts. Each such counterpart shall be an original and all together shall constitute but one and the same Amendment.

IN WITNESS WHEREOF, the parties have executed this Amendment No. 1 to the Agreement on the date set forth herein.

4

By: _____

Name: O Buudl

Title: ViP.


**THE BANK OF NEW YORK**


By: Robert Rinaudo

Name: Robert Rinaudo

Title: AVP

Amendment to Stock Transfer Agency Agreement

Amendment, made as of ⟶ January 27, 2002, by and between Lehman Brothers, a corporation organized and existing under the laws of the State of Delaware (hereinafter referred to as the "Customer") and The Bank of New York, a New York banking corporation (hereinafter referred to as the "Bank"), to Stock Transfer Agency Agreement (the "Agreement") dated as of November, 1998 between the Customer and the Bank.

WHEREAS, the Bank provides Stock Transfer Agency Services for the Customer pursuant to the Agreement.

WHEREAS, one of the features of the services provided by the Bank to the Customer is the Dividend Reinvestment program whereby a shareholder of the Customer may reinvest dividend payment in, or make additional purchases of, Shares of the Company through debits to a shareholder's account through the ACH Funds Transfer System.

WHEREAS, under certain circumstances, a shareholder may have a right to reverse such debit, resulting in a potential risk of loss to the Bank.

In consideration of the foregoing, the Customer and the Bank desire to amend the Agreement as follows:

1. The following sentence shall be added at the end of Article VIII, Section 4:

"The Customer shall indemnify and hold the Bank harmless from and against any and all claims, costs, demands, expenses and liabilities, including reasonable attorney's fees, which the Bank may sustain or incur or which may be asserted against the Bank as a result of a Shareholder's right to have an account recredited as a result of a debit through the ACH Funds Transfer System," "but only to the extent such claims, costs, demands, expenses and liabilities do not arise from the Bank's negligence or willful misconduct."

2. All other terms and conditions that govern the Agreement shall govern this Amendment.

3. This Amendment shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective corporate officer.

-2-

LEHMAN BROTHERS

By: _____
Name: O' Budde
Title: V.P.

THE BANK OF NEW YORK

By: Robert Rinaudo
Name: Robert Rinaudo
Title: AVP

u:\blubitz\4611ACHDEBIT.doc

# LAZARE POTTER & GIACOVAS LLP

950 Third Avenue
New York, New York 10022

(212) 758-9300

## *INVOICE*

---

The Bank of New York Mellon Corp.                                   May 12, 2009
One Wall Street, 11th Floor,
New York, New York 10286

Attention:    Nandani Mani, Esq.                    File #:        2819-03
                                                    Inv #:         34883

LP&G TAX ID NO.: 13-369-3800

RE:    Roger J. Weiss and Susan Weiss, as co-executors of the Estate of Stephen
       H. Weiss v. Bank of New York Mellon Corporation

| DATE | LAWYER | DESCRIPTION | HOURS |
|------|--------|-------------|-------|
| Apr-13-09 | RAG | | 1.90 |
| | LC | | 0.50 |
| Apr-15-09 | RAG | | 0.70 |
| | LC | | 3.00 |
| Apr-17-09 | RAG | | 0.30 |
| Apr-20-09 | LC | | 3.50 |
| Apr-21-09 | RAG | | 1.70 |
| | LC | | 2.00 |

Invoice #:      34883                      Page   2                      May 12, 2009

| Apr-22-09 | LC  | 1.50 |
|-----------|-----|------|
| Apr-23-09 | RAG | 0.30 |
|           | LC  | 0.50 |

Total Hours                                                             15.90
*(Balance Summary on Following Page)*

Invoice #:     34883                    Page   3                    May 12, 2009

**FEE SUMMARY**

| Lawyer | Hours | Effective Rate | Amount |
|--------|-------|----------------|--------|
| Robert A. Giacovas | 4.90 | $275.00 | $1,347.50 |
| Lainie Cohen | 11.00 | $260.00 | $2,860.00 |

| | | | |
|---|---|---|---|
| Total Fees | | | $4,207.50 |

**DISBURSEMENTS**                                                        **Amount**

| | |
|---|---|
| Postage | 1.17 |
| Total Disbursements | $1.17 |

**TOTAL FEES AND DISBURSEMENTS THIS INVOICE**                $4,208.67

Balance due from previous invoices                          $0.00

**BALANCE NOW DUE**                                         $4,208.67



# LAZARE POTTER & GIACOVAS LLP
950 Third Avenue
New York, New York 10022

(212) 758-9300

## *INVOICE*

---

The Bank of New York Mellon Corp.                                    Jun 08, 2009
One Wall Street, 11th Floor,
New York, New York 10286

| | | | |
|---|---|---|---|
| **Attention:** | Nandani Mani, Esq. | File #: | 2819-03 |
| | | Inv #: | 35061 |

L.P&G TAX ID NO.: 13-369-3800

RE:    Roger J. Weiss and Susan Weiss, as co-executors of the Estate of Stephen
       H. Weiss v.Bank of New York Mellon Corporation

| DATE | LAWYER | DESCRIPTION | HOURS |
|---|---|---|---|
| May-12-09 | RAG | | 0.20 |
| May-13-09 | RAG | | 0.20 |
| May-27-09 | RAG | | 0.10 |
| May-29-09 | RAG | | 1.00 |
| | RAG | | 1.80 |
| | LC | | 0.50 |
| **Total Hours** | | | 3.80 |

*(Balance Summary on Following Page)*

Invoice #:    35061                    Page   2                    June 8, 2009

**FEE SUMMARY**

| Lawyer | Hours | Effective Rate | Amount |
|--------|-------|----------------|--------|
| Robert A. Giacovas | 3.30 | $275.00 | $907.50 |
| Lainie Cohen | 0.50 | $260.00 | $130.00 |

Total Fees     $1,037.50

**DISBURSEMENTS**     Amount

Computer Research/Cite Checking - April 2009     8.18

Total Disbursements     $8.18

**TOTAL FEES AND DISBURSEMENTS THIS INVOICE**     $1,045.68

Balance due from previous invoices     $4,208.67

**BALANCE NOW DUE**     $5,254.35

# LAZARE  POTTER & GIACOVAS LLP

Attorneys at Law
950 Third Avenue • New York, New York 10022
Telephone (212) 758-9300 • Facsimile (212) 888-0919
www.lpgllp.com

WRITER'S EMAIL
rgiacovas@lpgllp.com

WRITER'S DIRECT DIAL
(212) 784-2403

July 14, 2009

The Bank of New York Mellon Corp
One Wall Street, 11th Flr
New York, NY 10286

Attention: Nadini Mani, Esq.

                    Re:    Roger J. Weiss and Susan Weiss, as co-executors of the Estate of
                           Stephen H. Weiss v. Bank of New York Mellon Corporation/
                           Our file no.: 2819-03

Dear Ms. Mani:

        Enclosed is our invoice covering services rendered and disbursements incurred
through June 30, 2009 in connection with the above matter.

        Please do not hesitate to call me should you have any questions.

                                        Cordially,

                                        Robert A. Giacovas

RAG/sg
Enclosure

# LAZARE POTTER & GIACOVAS LLP

950 Third Avenue
New York, New York 10022

(212) 758-9300

## *INVOICE*

---

The Bank of New York Mellon Corp.                                                                 Jul 14, 2009
One Wall Street, 11th Floor,
New York, New York 10286

| | |
|---|---|
| File #: | 2819-03 |
Attention:   Nandani Mani, Esq.
| Inv #: | 35240 |

LP&G TAX ID NO.: 13-369-3800

RE:   Roger J. Weiss and Susan Weiss, as co-executors of the Estate of Stephen
      H. Weiss v.Bank of New York Mellon Corporation

| DATE | LAWYER | DESCRIPTION | HOURS |
|------|--------|-------------|-------|
| Jun-01-09 | RAG | | 2.00 |
| Jun-02-09 | RAG | | 0.40 |
| Jun-09-09 | RAG | | 0.40 |
| Jun-10-09 | RAG | | 0.30 |
| Jun-18-09 | RAG | | 0.80 |
| | LC | | 1.50 |

Total Hours                                                                                          5.40
*(Balance Summary on Following Page)*

Invoice #:     35240                          Page   2                          July 14, 2009

## FEE SUMMARY

| Lawyer | Hours | Effective Rate | Amount |
|--------|-------|----------------|--------|
| Robert A. Giacovas | 3.90 | $275.00 | $1,072.50 |
| Lainie Cohen | 1.50 | $260.00 | $390.00 |

|  |  |  |  |
|--|--|--|--|
| Total Fees | | | $1,462.50 |

**DISBURSEMENTS**                                                        **Amount**

| Express Mail | 26.81 |
|--------------|-------|
| Total Disbursements | $26.81 |

**TOTAL FEES AND DISBURSEMENTS THIS INVOICE**                    $1,489.31

Balance due from previous invoices                              $5,254.35

**BALANCE NOW DUE**                                             $6,743.66

# LAZARE POTTER & GIACOVAS LLP

950 Third Avenue
New York, New York 10022

(212) 758-9300

## *INVOICE*

The Bank of New York Mellon Corp.                          Aug 19, 2009
One Wall Street, 11th Floor,
New York, New York 10286

|  |  |
|---|---|
| File #: | 2819-03 |
| Inv #: | 35404 |

Attention:   Nandini Mani, Esq.

LP&G TAX ID NO.: 13-369-3800

RE:   Roger J. Weiss and Susan Weiss, as co-executors of the Estate of Stephen
     H. Weiss v. Bank of New York Mellon Corporation

| DATE | LAWYER | DESCRIPTION | HOURS |
|------|--------|-------------|-------|
| Jul-14-09 | RAG | | 0.30 |
| | LC | | 0.60 |
| Jul-24-09 | RAG | | 0.30 |
| Jul-30-09 | RAG | | 1.80 |
| Jul-31-09 | RAG | | 1.00 |
| | LC | | 1.50 |

Total Hours                                                         5.50
*(Balance Summary on Following Page)*

Invoice #:    35404                          Page   2                    August 19, 2009

## FEE SUMMARY

| Lawyer | Hours | Effective Rate | Amount |
|--------|-------|----------------|--------|
| Robert A. Giacovas | 3.40 | $275.00 | $935.00 |
| Lainie Cohen | 2.10 | $260.00 | $546.00 |
| Total Fees | | | $1,481.00 |

## TOTAL FEES AND DISBURSEMENTS THIS INVOICE $1,481.00

Balance due from previous invoices                      $1,489.31

## BALANCE NOW DUE                                      $2,970.31

# LAZARE  POTTER & GIACOVAS LLP

Attorneys at Law
950 Third Avenue • New York, New York 10022
Telephone (212) 758-9300 • Facsimile (212) 888-0919
www.lpgllp.com

WRITER'S EMAIL
rgiacovas@lpgllp.com

WRITER'S DIRECT DIAL
(212) 784-2403

September 9, 2009

The Bank of New York Mellon Corp
One Wall Street, 11th Flr
New York, NY 10286

Attention: Nadini Mani, Esq.

Re:   Roger J. Weiss and Susan Weiss, as co-executors of the Estate of
       Stephen H. Weiss v. Bank of New York Mellon Corporation/
       Our file no.: 2819-03

Dear Ms. Mani:

        Enclosed is our invoice covering services rendered and disbursements incurred
through August 31, 2009 in connection with the above matter.

        Please do not hesitate to call me should you have any questions.

                                    Cordially,

                                    Robert A. Giacovas

RAG/sg
Enclosure

# LAZARE POTTER & GIACOVAS LLP

950 Third Avenue
New York, New York 10022

(212) 758-9300

## *INVOICE*

The Bank of New York Mellon Corp.                                     Sep 09, 2009
One Wall Street, 11th Floor,
New York, New York 10286

|  |  |
|---|---|
| File #: | 2819-03 |
| Inv #: | 35599 |

Attention:    Nandini Mani, Esq.

LP&G TAX ID NO. 13-369-3800

RE:    Roger J. Weiss and Susan Weiss, as co-executors of the Estate of Stephen
H. Weiss v.Bank of New York Mellon Corporation

| DATE | LAWYER | DESCRIPTION | HOURS |
|------|--------|-------------|-------|
| Aug-28-09 | RAG | | 0.40 |
| | LC | | 0.50 |
| Aug-31-09 | RAG | | 0.50 |
| | Total Hours | | 1.40 |

*(Balance Summary on Following Page)*

Invoice #:     35599                    Page   2                    September 9, 2009

## FEE SUMMARY

| Lawyer | Hours | Effective Rate | Amount |
|--------|-------|----------------|--------|
| Robert A. Giacovas | 0.90 | $275.00 | $247.50 |
| Lainie Cohen | 0.50 | $260.00 | $130.00 |

| | | |
|---|---|---|
| Total Fees | | $377.50 |

**TOTAL FEES AND DISBURSEMENTS THIS INVOICE**                    **$377.50**

Balance due from previous invoices                    $2,970.31

**BALANCE NOW DUE**                    **$3,347.81**

9/15/09

## UPS CampusShip: View/Print Label

1. **Print the label(s):**  Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.**  Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers without a Daily Pickup**
   - Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   - Hand the package to any UPS driver in your area.
   - Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services℠ (including via Ground) are also accepted at Drop Boxes.
   - To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   **Customers with a Daily Pickup**
   - Your driver will pickup your shipment(s) as usual.

FOLD HERE



**<u>EXHIBIT C</u>**

US_ACTIVE:\44391352\3\58399.0011

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)

0000026388

| In re: Lehman Brothers Holdings Inc., et al | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Ålandsbanken Sverige AB (publ)
c/o Brown Rudnick LLP
Nina E. Andersson-Willard, Esq.
One Financial Center
Boston, MA 02111
Telephone number: 617.856.8319   Email Address: NAndersson@brownrudnick.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:          Email Address:

1. **Amount of Claim as of Date Case Filed:** $ See Exhibit A, Attached
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See Exhibit A, Attached
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a   Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:
Value of Property: $ _____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____   Basis for perfection: _____
Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(5).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(2).

**Amount entitled to priority:**

$ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $** _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

Date:
9/22/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

By: _____ (signature)

Howard S. Steel, Esq., Attorney for Ålandsbanken Sverige AB (publ)

FILED / RECEIVED
SEP 22 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## EXHIBIT A

## ADDENDUM TO PROOF OF CLAIM OF ÅLANDSBANKEN SVERIGE AB

1.      Certain customers (the "Noteholders") have directly or indirectly acquired securities (the "Securities") through Ålandsbanken Sverige AB (publ) ("ÅBS"). The Securities are identified on the "Lehman Program Securities" list pursuant to those certain issuances with the following ISIN numbers: XS0277538681 dated 2 March 2007, XS0282145969 dated 10 April 2007, XS0289028085 dated 14 May 2007, XS0292822771 dated 11 June 2007, XS0309103546 dated 11 July 2007, XS0372634195 dated 2 July 2008, XS0294123830 dated 16 April 2007, XS0345204613 dated 14 February 2008, SE0002379271 dated 11 March 2008, SE0002419242 dated 15 April 2008, CH0027120846, XS0286179923 and XS0286181077. The Noteholders' Securities are, with some few exceptions registered on their various custody accounts at ÅBS pursuant to custodian agreements Depå-/kontoavtal in ÅBS's standard form (the "Custodian Agreement"). ÅBS is in the process of translating the Custodian Agreement into English and will file such translations as supplements to this Proof of Claim.

2.      ÅBS hereby asserts a claim against Lehman Brothers Holdings Inc. ("LBHI") for contribution for, including, but not limited to, any costs, losses, or damages incurred by ÅBS resulting from, including, but not limited to, any claims, causes of action or judgments brought by the Noteholders or other persons/entities against ÅBS related to the Securities.

3.      As the damages described above are contingent, unliquidated and likely to continue, the exact amount of ÅBS's total claim as set forth herein is unknown at this

time. ÅBS reserves the right to amend or supplement this Proof of Claim from time to time hereafter as it may deem necessary and proper.

4.      ÅBS reserves all of its rights and defenses, whether under title 11 of the United States Code or other applicable law, as to any claims that may be asserted against ÅBS by LBHI, including, without limitation, any rights of setoff and/or recoupment not expressly observed above. ÅBS reserves the right to amend and/or supplement this Proof of Claim and any Exhibit attached hereto at any time and in any manner. ÅBS reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents. ÅBS reserves the right to file additional proofs of claim for administrative expenses or other claims entitled to priority. ÅBS reserves the right to file claims for the payment of interest (subject to applicable law) and for the reimbursement of all reasonable expenses (including attorneys' fees and collection fees) incurred by ÅBS in connection with the claims described herein. ÅBS further reserves all of its rights as against the other debtors in these Chapter 11 proceedings and against other Lehman entities, including Lehman Brothers Inc. and Lehman Brothers International (Europe), in any other Lehman proceeding in the United States or overseas.

5.      This Proof of Claim is filed under the compulsion of the bar date set in this case and is filed to protect ÅBS from forfeiture of its claim by reason of said bar date. The filing of this Proof of Claim shall not constitute: (a) a waiver, release, or limitation of ÅBS's rights against any person, entity or property (including, without limitation, LBHI or any other person or entity that is or may become a debtor in a case pending in this Court) in which ÅBS has a security interest or lien, (b) a consent by ÅBS to the jurisdiction or venue of this Court or any other court with respect to the

proceedings, if any, commenced in any case against or otherwise involving ÅBS with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving ÅBS, (c) a waiver, release, or limitation of the right of ÅBS to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the U.S. Constitution, (d) a consent by ÅBS to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise, (e) a waiver, release, or limitation of ÅBS's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a U.S. District Court Judge, (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving ÅBS, (g) a consent to the termination of LBHI's liability to ÅBS by any particular court, including, without limitation, this Court, (h) a consent to the final determination or adjudication of any claim or right pursuant to 28 U.S.C. § 157(c), or (i) an election of remedies. No judgment has been rendered on this claim. This claim is not subject to any setoff or counterclaim rights by LBHI.

6.    All notices and distributions in respect of this claim should be forwarded

to:  Ålandsbanken Sverige AB, c/o Brown Rudnick LLP, Nina E. Andersson-Willard,

Esq., One Financial Center, Boston, MA 02111.

## POWER OF ATTORNEY

Know all by these presents, Ålandsbanken Sverige AB (publ) a company organized under the laws of Sweden (organizational number: 593200-1745) hereby constitutes and appoints Brown Rudnick LLP, a Massachusetts limited liability partnership ("Attorney-in-Fact") as its attorney-in-fact, with the power of substitution, for it and in its name, place and stead, to (i) execute and file with the United States Bankruptcy Court Southern District Of New York in the matter: In re: LEHMAN BROTHERS HOLDINGS INC., et al., Chapter 11 Case No.: 08-13555 (JMP) (Jointly Administered) the proof of claim substantially in the form attached hereto as <u>Exhibit A</u> with such changes, additions and amendments as the Attorney-in-Fact deems necessary ("Proof of Claim"); and (ii) to execute and file all other documents necessary to be executed by it in connection therewith.

This Power of Attorney shall remain in full force and effect until revoked by the undersigned in a signed writing delivered to the attorney-in-fact.

IN WITNESS WHEREOF, the undersigned has caused this Power of Attorney to be executed as of this 22nd day of September, 2009.

Ålandsbanken Sverige AB (publ)

By:

Its:

Mats Andersson
CEO
Ålandsbanken Sverige AB

# 1686326 v1 - ANDERSNE - 009999/0001

Exhibit A

Proof of Claim

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In re: <br> Lehman Brothers Holdings Inc., et al | Chapter 11 <br> Case No. 08-13555 (JMP) <br> (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held <br> Lehman Brothers Holdings Inc. | Case No. of Debtor <br> 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Ålandsbanken Sverige AB (publ)

c/o Brown Rudnick LLP

Nina E. Andersson-Willard, Esq.

One Financial Center

Boston, MA 02111

Telephone number: 617.856.8319 Email Address: NAndersson@brownrudnick.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number:_____
(If known)

Filed on:_____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: Email Address:

---

**1. Amount of Claim as of Date Case Filed:** $ See Exhibit A, Attached

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2. Basis for Claim:** See Exhibit A, Attached
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**_____
**3a** Debtor may have scheduled account as:_____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:_____
Value of Property: $_____ Annual Interest Rate _____% 
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection:_____
Amount of Secured Claim: $_____ Amount Unsecured: $_____

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
(See instruction #6 on reverse side.)

**7. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(5).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(2).

Amount entitled to priority:

FOR COURT USE ONLY

$

---

| Date: <br><br> 9/22/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. <br><br> By: _[signature]_ <br> Howard S. Steel, Esq., Attorney for Ålandsbanken Sverige AB (publ) |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**EXHIBIT A**

**ADDENDUM TO PROOF OF CLAIM OF ÅLANDSBANKEN SVERIGE AB**

1.      Certain customers (the "Noteholders") have directly or indirectly acquired securities (the "Securities") through Ålandsbanken Sverige AB (publ) ("ÅBS"). The Securities are identified on the "Lehman Program Securities" list pursuant to those certain issuances with the following ISIN numbers: XS0277538681 dated 2 March 2007, XS0282145969 dated 10 April 2007, XS0289028085 dated 14 May 2007, XS0292822771 dated 11 June 2007, XS0309103546 dated 11 July 2007, XS0372634195 dated 2 July 2008, XS0294123830 dated 16 April 2007, XS0345204613 dated 14 February 2008, SE0002379271 dated 11 March 2008, SE0002419242 dated 15 April 2008, CH0027120846, XS0286179923 and XS0286181077.  The Noteholders' Securities are, with some few exceptions registered on their various custody accounts at ÅBS pursuant to custodian agreements Depå-/kontoavtal in ÅBS's standard form (the "Custodian Agreement").  ÅBS is in the process of translating the Custodian Agreement into English and will file such translations as supplements to this Proof of Claim.

2.      ÅBS hereby asserts a claim against Lehman Brothers Holdings Inc. ("LBHI") for contribution for, including, but not limited to, any costs, losses, or damages incurred by ÅBS resulting from, including, but not limited to, any claims, causes of action or judgments brought by the Noteholders or other persons/entities against ÅBS related to the Securities.

3.      As the damages described above are contingent, unliquidated and likely to continue, the exact amount of ÅBS's total claim as set forth herein is unknown at this

time. ÅBS reserves the right to amend or supplement this Proof of Claim from time to time hereafter as it may deem necessary and proper.

4.      ÅBS reserves all of its rights and defenses, whether under title 11 of the United States Code or other applicable law, as to any claims that may be asserted against ÅBS by LBHI, including, without limitation, any rights of setoff and/or recoupment not expressly observed above. ÅBS reserves the right to amend and/or supplement this Proof of Claim and any Exhibit attached hereto at any time and in any manner. ÅBS reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents. ÅBS reserves the right to file additional proofs of claim for administrative expenses or other claims entitled to priority. ÅBS reserves the right to file claims for the payment of interest (subject to applicable law) and for the reimbursement of all reasonable expenses (including attorneys' fees and collection fees) incurred by ÅBS in connection with the claims described herein. ÅBS further reserves all of its rights as against the other debtors in these Chapter 11 proceedings and against other Lehman entities, including Lehman Brothers Inc. and Lehman Brothers International (Europe), in any other Lehman proceeding in the United States or overseas.

5.      This Proof of Claim is filed under the compulsion of the bar date set in this case and is filed to protect ÅBS from forfeiture of its claim by reason of said bar date. The filing of this Proof of Claim shall not constitute: (a) a waiver, release, or limitation of ÅBS's rights against any person, entity or property (including, without limitation, LBHI or any other person or entity that is or may become a debtor in a case pending in this Court) in which ÅBS has a security interest or lien, (b) a consent by ÅBS to the jurisdiction or venue of this Court or any other court with respect to the

proceedings, if any, commenced in any case against or otherwise involving ÅBS with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving ÅBS, (c) a waiver, release, or limitation of the right of ÅBS to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the U.S. Constitution, (d) a consent by ÅBS to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise, (e) a waiver, release, or limitation of ÅBS's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a U.S. District Court Judge, (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving ÅBS, (g) a consent to the termination of LBHI's liability to ÅBS by any particular court, including, without limitation, this Court, (h) a consent to the final determination or adjudication of any claim or right pursuant to 28 U.S.C. § 157(c), or (i) an election of remedies.  No judgment has been rendered on this claim. This claim is not subject to any setoff or counterclaim rights by LBHI.

6.      All notices and distributions in respect of this claim should be forwarded

to:  Ålandsbanken Sverige AB, c/o Brown Rudnick LLP, Nina E. Andersson-Willard,

Esq., One Financial Center, Boston, MA 02111.

**ADMIT ONE**
STAPLES

7370649

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

TP.

_____
**RECEIVED BY:**

_____
**DATE**

3:30

_____
**TIME**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                                :        **Chapter 11 Case No.**
                                                     :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,         :        **08-13555 (JMP)**
                                                     :
                            **Debtors.**             :        **(Jointly Administered)**
-------------------------------------------------------------------x

## ORDER GRANTING THE FOUR HUNDRED
## FORTY-NINTH OMNIBUS OBJECTION TO CLAIMS (510(b) CLAIMS)

Upon the four hundred forty-ninth omnibus objection to claims, dated December 20, 2013 (the "Four Hundred Forty-Ninth Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), section 510(b) of the Bankruptcy Code, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664] (the "Procedures Order"), seeking to subordinate the Underwriter Claims and the Broker Claims, all as more fully described in the Four Hundred Forty-Ninth Omnibus Objection to Claims; and due and proper notice of the Four Hundred Forty-Ninth Omnibus Objection to Claims having been provided; and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Four Hundred Forty-Ninth Omnibus Objection to Claims is in the best interests of LBHI, its creditors, and all parties in interest, and that the legal and factual bases set forth in the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Four Hundred Forty-Ninth Omnibus Objection to Claims.

Four Hundred Forty-Ninth Omnibus Objection to Claims establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Four Hundred Forty-Ninth Omnibus

Objection to Claims is granted to the extent provided herein; and it is further

ORDERED that the Underwriter Claims and the Broker Claims listed on

Exhibit 1 annexed hereto are subordinated pursuant to section 510(b) of the Bankruptcy Code;

and it is further

ORDERED that the Plan Administrator is authorized to (a) classify in LBHI Class

11 each Underwriter Claim and Broker Claim, or portion thereof, that is subordinated pursuant to

this Order, to the extent such claim, or portion thereof, relates in the judgment of the Plan

Administrator to a debt security of LBHI; and (b) classify in LBHI Class 12 each Underwriter

Claim and Broker Claim, or portion thereof, that is subordinated pursuant to this Order, to the

extent such claim, or portion thereof, relates in the judgment of the Plan Administrator to an

equity security of LBHI; and it is further

ORDERED that this Order has no res judicata, estoppel, or other affect on the

validity, allowance, or disallowance of, and all rights to object and defend on any basis are

expressly reserved with respect to any claim listed on Exhibit A to the Four Hundred Forty-Ninth

Omnibus Objection to Claims that does not appear on Exhibit 1 annexed hereto; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2014
　　　　New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

2