Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In re:

5                                    08-13555(JMP)

6    LEHMAN BROTHERS HOLDINGS INC.,     (Jointly Administered)

7    et al.,

8                    Debtors.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   In re:

11                                   08-01420(JMP)(SIPA)

12   LEHMAN BROTHERS INC.,

13                    Debtor.

14   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15

16                    U.S. Bankruptcy Court

17                    One Bowling Green

18                    New York, New York

19

20                    December 19, 2013

21                    10:05 AM

22

23   B E F O R E :

24   HON JAMES M. PECK

25   U.S. BANKRUPTCY JUDGE

Page 2

1    Hearing re:  Debtors' One Hundred Seventeenth Omnibus

2    Objection to Claims [ECF No. 15363]

3

4    Hearing re:  Debtors' Two Hundred Fifty-Fourth Omnibus

5    Objection to Claims [ECF No. 25059]

6

7    Hearing re:  Debtors' Two Hundred and Sixty-Seventh Omnibus

8    Objection to Claims [ECF no. 26087]

9

10   Hearing re:  Four Hundred Twenty-Ninth Omnibus Objection to

11   Claims [ECF No. 39355]

12

13   Hearing re:  Motion of EFETnet B.V. to Authorize Late-Filed

14   Proof of Claim and/or Permit Amendment of Informal Proof of

15   Claim Against Lehman Brothers Commodity Services, Inc. [ECF

16   No. 40004]

17

18   Hearing re:  Thirteenth Application of Hughes Hubbard & Reed

19   LLP for Allowance of Interim Compensation for Services

20   Rendered and Reimbursement of Actual and Necessary Expenses

21   Incurred from March 1, 2013 through June 30, 2013 [LBI ECF

22   No. 7481]

23

24

25   Transcribed by:  Dawn South

Page 3

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorneys for the Debtors

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:   MAURICE HORWITZ, ESQ.

8         ERIKA DEL NIDO, ESQ.

9

10   WEIL, GOTSHAL & MANGES LLP

11        Attorney for the Debtors

12        1300 Eye Street NW, Suite 900

13        Washington, DC 20005-3314

14

15   BY:   RALPH I. MILLER, ESQ.

16

17   HUGHES HUBBARD & REED LLP

18        Attorney for the SIPC Trustee

19        One Battery Park Plaza

20        New York, NY 10004-1482

21

22   BY:   JAMES B. KOBAK, JR., ESQ.

23

24

25

Page 4

1    RICH MICHAELSON MAGALIFF MOSER, LLP

2         Attorney for EFETnet B.V.

3         340 Madison Avenue, 19th Floor

4         New York, NY 10173

5

6    BY:  ROBERT N. MICHAELSON, ESQ.

7

8    SECUTIRIES INVESTOR PROTECTION CORPORATION

9         Attorney for SIPC

10        805 15th St., N.W., Suite 800

11        Washington, DC 20005-2215

12

13   BY:  KENNETH J. CAPUTO, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2            THE COURT:  Be seated, please.  Good morning.

3            MR. KOBAK:  Good morning, Your Honor, James Kobak,

4   Hughes Hubbard & Reed on behalf of Mr. Giddens, the SIPA

5   Trustee.

6            Your Honor, we have one matter on the calendar for

7   this morning, which is our thirteenth interim fee

8   application.

9            The -- and I would like to say one thing when we

10  conclude that if it's all right with Your Honor.

11           THE COURT:  Sure.

12           MR. KOBAK:  Your Honor, the period covered by this

13  application is March to June of this year, a four-month

14  period, during which we expended approximately 24,470 hours

15  of services.  Several very important things were

16  accomplished during this period, including the final

17  settlements with Libby and with LBHI and it's related

18  entities, the allocation motion, and those things together

19  have put us in the position where we're able to pay

20  customers 100 percent, which is a great achievement I think

21  as everyone agrees.

22           Also several important customer matters were

23  briefed and decided during the period, including the Repo

24  decision and the Barclays appeal was briefed and argued in

25  the Second Circuit.

Page 6

1          Our application has been reviewed by Mr. Caputo

2    and his colleagues at SIPC.  As a result of that we have

3    taken certain write off -- we did certain write offs of our

4    own and additional write offs as a result of that review.

5          Our application reflects a -- our customary ten

6    percent discount, also includes a holdback of ten percent.

7          As you know SIPC's approval is entitled to great

8    deference, and unless Your Honor has any questions I would

9    move that our application be approved.

10          THE COURT:  It's approved and I like to give

11    SIPC's review great deference.

12          MR. KOBAK:  So the one other matter I wanted to

13    mention was of course we've read the announcement of Your

14    Honor's retirement with great interest, and I wanted to just

15    take this opportunity to express my gratitude, the trustee's

16    gratitude, I think indirectly the gratitude of all our

17    customers and creditors for the efficient and effective way

18    this complex and sometimes frustrating proceeding has been

19    administered by Your Honor.

20          I think the case is in good shape for Judge

21    Chaplin to continue, and we all wish you well on your

22    retirement.

23          THE COURT:  Thank you very much, I appreciate

24    those comments.

25          MR. KOBAK:  Thank you, Your Honor.

Page 7

1          THE COURT:  I think that ends this portion of the

2     agenda, so if you wish to be excused you may --

3          MR. KOBAK:  If we may, Your Honor.

4          THE COURT:  -- and I wish you all a happy holiday

5     season and a good New Year.

6          UNIDENTIFIED SPEAKER:  Same.  Happy holidays.

7          UNIDENTIFIED SPEAKER:  Happy New Year.

8       (Pause)

9          THE COURT:  Good morning, Mr. Miller, how are you?

10         MR. MILLER:  Good morning, Your Honor.  I'm fine,

11    thank you.

12         May it please the Court, I'm Ralph Miller with

13    Weil, Gotshal & Manges here on behalf of Lehman Brothers

14    Holdings Inc., which I will call LBHI or the plan

15    administrator.

16         Your Honor, the first four items on the agenda

17    deal with eight specific claims from the one hundred and

18    seventeenth, two hundred and fifty-fourth, two hundred and

19    sixty-seventh, and four hundred and twenty-ninth objection.

20         The original notice was for 11 claims, but 2

21    claims, 1681 and 15580 have been adjourned by agreement, and

22    claim 33549 was withdrawn by the claimant.

23         The legal issue in all of these claims is the same

24    as the issue that we considered in a hearing on

25    November 22nd.

1          Specifically that legal issue is the standing of

2    LBI employees in the brokerage business of Lehman Brothers

3    Inc. to bring compensation claims against LBHI based on a

4    group of theories that we characterize as alter ego, veil

5    piercing, or similar.  This includes claims of under

6    capitalization, domination of the subsidiary by the parent,

7    or the status of LBI has a wholly-owned subsidiary.

8          Now while some of these claimants have phrased

9    their grounds for relief in slightly different ways, the

10   plan administrator believes that the results should be

11   exactly the same as your ruling on November 22nd, and we ask

12   that these be denied.

13          And it might be helpful, Your Honor, if we got

14   appearances to see who else is here if we have -- since

15   we've not already done so.

16          THE COURT:  Let's do that.  We'll start with

17   people who are in the courtroom.  Are there any individuals

18   or their attorneys present in the courtroom that are

19   claimants affected by the proposed relief sought by the plan

20   administrator today?  There's no response as to people in

21   the courtroom.

22          Let me ask to the extent that there are people

23   participating in this hearing through CourtCall, if there

24   are any individuals or counsel participating on the

25   telephone who are either claimants or representing claimants

Page 9

1    affected by the proposed relief?  There's no response.

2              MR. MILLER:  All right, thank you, Your Honor.

3              I think that's helpful, because I wanted to assure

4    the Court that we made all of the claimants aware of your

5    November 22nd ruling by sending them courtesy copies of your

6    orders and the transcript and a claims form if they wanted

7    to withdraw their claim.

8              One claimant represented by a lawyer has asked to

9    have his claim adjourned because the lawyer was unable to

10   consult with his client on this withdrawal issue.  One pro

11   se claimant did withdraw the claim.  And one pro se claimant

12   asked for an adjournment by reason of illness in his family,

13   and of course LBHI agreed to that, that was Mr. Stipo,

14   15580.

15             We think the eight remaining claimants are pro se.

16   We recognize that they may not be choosing to go forward.

17   There was one claimant that originally had other counsel

18   listed on the claim form, but when we called that counsel

19   listed we were advised the law firm no longer represented

20   that claimant.  So we believe that the other eight are all

21   pro se.

22             As I understand it there has been no communication

23   from any of the other eight claimants.  We do have

24   affidavits of service available to show that they received

25   notice.

Page 10

1          Very briefly, Your Honor, as the Court said in the

2    November 22nd hearing, quote:

3          "The employees of LBI have whatever rights they

4    have in that proceeding, they have no rights in the LBHI

5    case unless they of course have other grounds to assert

6    claims other than their status as LBI employees."

7          We believe that governs.

8          The claimants before the Court today have not

9    denied that they worked as LBI employees.  Although they

10   have phrased their claims in several ways they're all

11   variations of a claim that LBHI should be responsible for

12   the debts of its subsidiary.

13         Paragraphs 5 through 15 of our reply contains

14   summaries of the various theories asserted, they include

15   three of the claims merely relying on the status of LBI as a

16   wholly-owned subsidiary.  Those would be the Abernathy claim

17   described in paragraph 5, the Newhouse claim in paragraph 7,

18   and the Oh, that's O-H claim in paragraphs 9 and 10, the

19   Murray claim described in paragraph 11 asserts that quote,

20   "LBHI as for all intents and purposes the alter ego of LBI."

21   Close quote.  The Nehman claim described in paragraph 9

22   states there was a "strong bond" between LBI and LBHI when

23   compensation plans were established, and the Tilles claim,

24   summarized in paragraph 14, asserts that LBHI "managed and

25   completely dominated LBI causing it to operate without

Page 11

1    adequate capital to maintain its operations."

2           Although only one of these remaining claims

3    actually uses the term alter ego, they all rest solely on

4    legal theories that arise from the general corporate

5    relationship between LBI and LBHI, they don't have any

6    specific claims that they were employees directly of LBHI,

7    although they had dealings with LBHI, and thus the SIPA

8    trustee would have exclusive standing under Second Circuit

9    precedent that is in the briefing that we discussed on the

10   22nd to assert these claims.

11          And as the record shows the SIPA trustee has

12   released LBHI in a settlement from all claims of this type.

13          A number of these claimants, not all of them, have

14   in fact made claims in the LBI bankruptcy, which is public

15   record.

16          For these reasons LBHI as the plan administrator

17   respectfully requests that these eight objections should be

18   granted, and we have submitted an order for that purpose for

19   the Court's consideration.

20          THE COURT:  Just a point of clarification on that

21   last comment you made about quote, "a number of the

22   employees," close quote, have made claims in the LBI SIPA

23   proceeding.  Do we know if all of the affected claimants

24   have in effect made claims --

25          MR. MILLER:  We don't --

Page 12

```
 1              THE COURT:  -- in LBI as well as claims in the

 2    LBHI case?

 3              MR. MILLER:  We don't believe they all have, Your

 4    Honor.  We know some of them have and have had those claims

 5    allowed for amounts very close to what they claimed.

 6              I have a summary I believe of the status if you'd

 7    like for me to go over what I do know about the claimants,

 8    Your Honor.

 9              THE COURT:  It doesn't affect the outcome, I'm

10    just interesting in knowing whether or not this

11    determination has a material financial impact upon all of

12    the claimants.

13              MR. MILLER:  Well again, Your Honor, we don't know

14    that for certain.

15              THE COURT:  Okay.

16              MR. MILLER:  But obviously if they -- if they

17    sought to have some late filing in the LBI proceeding that

18    would be a matter with the LBI SIPA trustee and the Court to

19    deal with.

20              THE COURT:  Okay.

21              MR. MILLER:  I'd be happy to answer any questions,

22    otherwise that's all I have.

23              THE COURT:  I really don't have any questions.

24              This is for all intents and purposes a replay of

25    the very same argument that took place toward the end of the
```

Page 13

1    calendar on November 22 when we dealt with questions of

2    standing of these claimants to pursue claims against LBHI

3    under theories of alter ego liability, veil piercing, or

4    other comparable claims of potential liability of LBHI for

5    the acts of LBI.

6         At that time I made various statements from the

7    bench indicating that employees of LBI, or for that matter

8    any claimants in the LBI case, would lack standing to pursue

9    such claims in the LBHI case in light of the separate nature

10   of those proceedings.

11        Additionally, having reviewed the papers submitted

12   by the plan administrator in connection with today's hearing

13   I'm satisfied that as a matter of settled Second Circuit law

14   these individual claimants lack standing not only because

15   the claims, if any, would belong to the trustee in the SIPA

16   case of LBI, but also a settlement agreement between the LBI

17   estate and the LBHI estate has been approved by the Court

18   that clearly resolves all issues of alter ego and veil

19   piercing liability that might otherwise have been asserted

20   by that estate.

21        Under the circumstances as a matter of law all of

22   these claimants lack standing and their claims are

23   disallowed.

24        MR. MILLER:  Thank you for your time, Your Honor.

25        If I might have just a moment of -- for personal

Page 14

1   state myself I hope perhaps I will see you on the 28th, if I

2   don't I want to express my personal appreciation for the

3   time and attention and guidance that you have provided to

4   all of us, to the creditors of the LBHI and its related

5   estates, and to wish you well, Your Honor.

6           THE COURT:  Thank you so much, Mr. Miller, the

7   same to you, and have a great holiday.

8           MR. MILLER:  Thank you, Your Honor.

9           MR. HORWITZ:  Good morning, Your Honor, Maurice

10  Horwitz, Weil, Gotshal & Manges on behalf of Lehman Brothers

11  Holdings Inc.

12          The last item on the agenda this morning is the

13  motion of -- I'm going attempt to pronounce it -- EFETnet

14  B.V., it's an authorized late-filed proof of claim and/or

15  permitted amendment of informal proof of claim against

16  Lehman Brothers Commodity Services, Inc.  I'll turn the

17  podium over to movants.

18          THE COURT:  Maybe it's EFETnet.

19          MR. HORWITZ:  EFETnet?

20          THE COURT:  I don't know, but maybe it is.  That's

21  how I would pronounce it.

22          MR. MICHAELSON:  It's EFETnet actually, Your

23  Honor.

24          THE COURT:  EFETnet?

25          MR. MICHAELSON:  Good morning, Your Honor, Rich

Page 15

1    Michaelson of Rich Michaelson Magaliff Moser.  We represent

2    the movant in this case.

3            The movant is indisputably a creditor of Lehman

4    Brothers Commodity Services, Inc.

5            The proof of claim filed in this case was filed on

6    a preprinted form that was provided to EFETnet, which is a

7    foreign entity.  The proof --

8            THE COURT:  I read the papers.

9            MR. MICHAELSON:  You did?

10           THE COURT:  And I understand what's going on here.

11   A couple of questions.

12           MR. MICHAELSON:  Yes.

13           THE COURT:  Why did it take four years to present

14   the motion for a late-filed claim?  That's question one.

15           MR. MICHAELSON:  Yes.

16           THE COURT:  Question two, it's a foreign entity

17   but it's in Amsterdam, the Netherlands, a very sophisticated

18   jurisdiction --

19           MR. MICHAELSON:  Correct.

20           THE COURT:  -- and English is basically a second

21   language there.  This enterprise knew that it was doing

22   business with Lehman Brothers Commodity Services --

23           MR. MICHAELSON:  Correct.

24           THE COURT:  -- not doing being with Lehman

25   Brothers Inc.

Page 16

```
 1              I don't understand how people who are obviously

 2    sophisticated could have made the mistake in understanding

 3    who that contract counterparty was.

 4              MR. MICHAELSON:  Uh-huh.

 5              THE COURT:  And finally, I don't understand how

 6    you overcome the fact that there is an amended declaration

 7    from Epiq clarifying that there was in fact a mistake made,

 8    the mistake was corrected, and the proof of claim was mailed

 9    to the proper address in the Netherlands, which is pretty

10    hard to overcome.

11              MR. MICHAELSON:  Well, all of that is correct,

12    Your Honor.  Let me respond, and much of this is addressed

13    in a declaration of Mr. Hugh Brunswick.

14              There was a presumption, an incorrect presumption,

15    that if a preprinted form was received addressed to them

16    that it was intended that that would reflect claims against

17    not only LBI, which was the name that appeared at the top of

18    the page, but affiliates or subsidiaries or companies that

19    were all part of some larger or reorganization process.

20              Now there is no question that that was an

21    incorrect presumption.  Our submission is it was a

22    reasonable presumption, and I appreciate the fact that these

23    are sophisticated individuals, these are not people without

24    knowledge of the financial industry, nevertheless this was

25    the presumption they made.
```

```
 1              And I would add to that the notion that there is

 2      some -- to the extent that there was a form provided that

 3      had the incorrect name -- debtor name on it I believe

 4      there's some culpability here on the part of the debtor in

 5      transmitting a form that had the name LBI rather than the

 6      name of the correct debtor to this particular claimant.

 7              THE COURT:  If I could just break in and give you

 8      my immediate reaction to that argument.

 9              MR. MICHAELSON:  Certainly.

10              THE COURT:  These are different proceedings

11      altogether, and as you just heard, and I'm sure as you

12      independently know, the LBI estate is being separately

13      administered under the provisions of the SIPA statute, the

14      LBHI bankruptcy cases have been separately administered

15      under a Chapter 11, and I just ruled from the bench that

16      claimants in the LBI case have no standing in the LBHI case

17      under any theories of alter ego liability or veil piercing

18      or other kinds of domination and control.

19              So the notion that a properly addressed notice of

20      bar date from one estate somehow is culpable is a curious

21      assertion.  I don't think there's any culpability here, it's

22      just what happened in this case.  And in fact --

23              MR. MICHAELSON:  Right.

24              THE COURT:  -- on a worldwide basis there were

25      notices of the obligation to file proofs of claim --
```

Page 18

1          MR. MICHAELSON:  Uh-huh.

2          THE COURT:  -- in the SIPA case, and notices of

3     the obligation to file proofs of claim in the Chapter 11

4     cases.  It went out to many of the same parties because of

5     the nature of the transactions within the Lehman family.

6          MR. MICHAELSON:  Your Honor, that is very clear

7     from my involvement in the case.  As you know I'm involved

8     in other matters.

9          THE COURT:  I know you are.

10          MR. MICHAELSON:  I'm acutely aware of these

11     distinctions.  I think these distinctions are sometimes

12     taken for granted perhaps by those of us who are involved in

13     the case, but others who are less familiar with it would not

14     necessarily be able to make the distinctions quite as

15     easily.

16          And I might also add that to the extent that there

17     was something that was received and received by the wrong

18     entity, while there is no affirmative duty to then say this

19     belongs in box B rather than box A, I do think that there is

20     a certain equity involved in this issue.

21          The lawyers who are involved this these cases are

22     involved in both cases to some extent.  There's a cross

23     over, there's much -- a lot of communication and many

24     counsel, but I think that fairness would dictate that if a

25     claim is obviously filed in the wrong case and it's known

Page 19

1   that there'd be some duty.  Now it's not an affirmative

2   duty, but some duty to say we're sorry but you must have

3   been mistaken, this doesn't belong here.

4          Now this is an administratively complex case,

5   counsel for the debtor had so many things that they had to

6   deal with that perhaps it could be argued that that

7   shouldn't be the responsibility.  I'm doing what -- I always

8   prefer to argue the law, but in this particular case I'm

9   relegated to argue the equity, and I'm hoping that the Court

10  would recognize that under these circumstances the claimant

11  did what it thought it should do.  It was mistaken, it was

12  received, and there's ultimately no prejudice to the estate.

13         THE COURT:  But can you comment at all -- I mean

14  this is coming up pretty late in the -- the game.  I mean

15  it's five and a third years since the commencement of both

16  the LBHI case and the SIPA case for LBI.  The Lehman

17  bankruptcy as a global event is notorious, particularly in

18  the Netherlands, where Lehman Brothers Treasury was a very

19  significant affiliate in proceedings domestically within

20  that country.

21         I can't understand if we're dealing with an

22  excusable negligent standard how you deal with what seems to

23  be an unconscionable long delay quite apart from all the

24  other issues that are present here, including the fact that

25  there is an affidavit of service --

Page 20

1              MR. MICHAELSON:  Uh-huh.

2              THE COURT:  -- indicating that service was in fact

3      made in the Netherlands of the bar date notice.

4              MR. MICHAELSON:  That is true, Your Honor, and

5      that's indisputable.

6              The only explanation I can provide to you is the

7      explanation provided in Mr. Brunswick's declaration, which

8      is once having filed the claim there was a presumption, it's

9      proven to be an unfortunate false presumption, that that was

10     all that needed to be done and it was simply a matter of

11     time of waiting to either be paid or to have Lehman respond.

12     Beyond that there's no -- there's no other explanation.

13             THE COURT:  All right.

14             MR. MICHAELSON:  It's really quite that simple.

15             THE COURT:  Okay.  I take it you are familiar with

16     my decision from I think it's 2010 dealing with excusable

17     neglect standards particularly in the context of the Lehman

18     case?

19             MR. MICHAELSON:  I am, Your Honor, yes.

20             THE COURT:  All right, fine.

21             MR. MICHAELSON:  I'm familiar with the history of

22     the case and I'm aware of that.

23             THE COURT:  Okay, fine.  Thank you.

24             MR. MICHAELSON:  Okay.

25             MR. HORWITZ:  Good morning, Your Honor, Maurice

Page 21

1    Horwitz, Weil, Gotshal & Manges on behalf of Lehman Brothers

2    Holdings Inc. as the plan administrator in these cases on

3    behalf -- who acts on behalf of LBCS.

4         Your Honor, I think as this Court has acknowledged

5    or eluded to the movant has not rebutted the presumption of

6    receipt of the bar date notice.  The Court eluded to the

7    corrected affidavit of service of Herb Baer, which is ECF

8    No. 93995, which states that the movant was served at its

9    address in the Netherlands in the City of Amsterdam.

10         The Courts in the Second Circuit require clear and

11   convincing evidence of an objective nature to overcome the

12   presumption of delivery.  The movant has not provided this

13   evidence.

14         As we state in your papers the Court -- the Second

15   Circuit -- courts in the Second Circuit require more than a

16   mere denial of receipt.

17         Notably, Your Honor, the declaration of Hugh

18   Brunswick, which was submitted in support of the movant's

19   motion, barely even rises to the level of denying receipt.

20   In fact it states at paragraph 6 of the declaration, which

21   is ECF No. 41546, that Mr. Brunswick has no recollection or

22   record of receiving any proof of claim notice, but as he

23   says, even if I had received separate notice from the

24   debtors I most likely would have discarded it on the

25   apparently erroneous assumption that EFETnet sincerely

Page 22

1    believed that it had already complied by filing a proof of

2    claim against LBI.

3            In other words, Your Honor, the movant admits in

4    fact states in paragraph 1 of its reply it cannot definitely

5    rule out the possibility that notice may have arrived and

6    acknowledges that the presumption of receipt is attendant to

7    the corrected affidavit of Mr. Herb Baer.

8            With respect to the Pioneer factors, Your Honor,

9    the only argument the movant is left with is after a delay

10   of four years is that it assumed that their filing a proof

11   of claim against LBI was sufficient to preserve its rights

12   against LBCS.

13           Your Honor just eluded to the Court's decision --

14   recorded decision from 2010 in which this Court stated:

15           "Neglect in filing a claim before the expiration

16   of a clear bar date is excusable when the creditor, after

17   conducting a reasonable amount of diligence, is justifiably

18   confused or uncertain as to whether a particular transaction

19   giving rise to a claim is or is not subject to the bar date

20   order."

21           A reasonable amount of diligence, Your Honor,

22   presumes at a bare minimum that a creditor reads the bar

23   date notice that is served upon it.

24           In this case a reasonable amount of diligence

25   would include reading the contract that allegedly forms the

Page 23

1    basis of the movant's claim or asserted claim and noting

2    that the counterparty, as this Court pointed out, is LBCS

3    and not LBI.

4              A reasonable amount of diligence requires more

5    than merely assuming that filing a proof of claim against a

6    completely separate entity in a separately administered case

7    is sufficient to preserve its rights.

8              Movant admits that it conducted no diligence at

9    all and has provided no evidence that would support a

10   finding of excusable neglect.

11             Finally, Your Honor, as we state in our papers,

12   the proof of claim filed by movant against LBI cannot be

13   treated as an informal proof of claim, and the debtors in

14   this case could not have, as the movant just suggested --

15   movant's counsel just suggested, move the box from A to B

16   because it fails to meet the first critical requirement for

17   that form of relief.

18             As noted in our papers the requirement is that the

19   purported evidence of a claim be filed in the Bankruptcy

20   Court and become part of the judicial record.

21             The proof of claim in this case never became part

22   of the record because these Chapter 11 cases are separately

23   administered cases.

24             This document cannot evidence the claimant's

25   intent to hold LBCS liable, the fourth requirement for

Page 24

1    finding that a document is an informal proof of claim,

2    because there's no reason that LBCS would ever have known

3    about the claimant's intent.

4           Here LBI's liquidation is a separately

5    administered case and the claims register in that case was

6    not even publicly available to anyone outside of the LBI

7    estate, including LBCS until June of 2013.  That's to say

8    that none of the debtors, including LBCS, had any insight

9    into what claims had been filed against LBI.  As such

10   there's no way LBCS could have ever known that the movant

11   intended to hold it liable for any debt.

12          LBI has only recently begun focusing its efforts

13   on the claims that were filed against it, Your Honor.  We

14   don't know how many other claimants will discover after four

15   or five or six years that their claims should have been

16   filed in these Chapter 11 cases as opposed to LBI, and for

17   these reasons, Your Honor, I think that in addition to the

18   reason for the delay the factor of prejudice to the debtors

19   is a significant one here.

20          A finding in favor of the movant here would

21   significantly prejudice the debtors' endeavors to administer

22   the claims that were filed in these cases.  That impact at

23   this time can't be quantified and poses too great a risk.

24          For these reasons, Your Honor, and for the

25   arguments set forth in the plan administrator's objection to

Page 25

1   the motion, which is at ECF 40545, the plan administrator

2   requests that the Court deny the motion with prejudice.

3            THE COURT:  Thank you.

4            Any further comment?

5            MR. MICHAELSON:  No further comment, Your Honor.

6            THE COURT:  All right.

7            This is one in a long line of claimants that have

8   sought permission to have late-filed claims deemed timely

9   for purposes of participating in distributions from the LBHI

10  and related debtors Chapter 11 cases.

11           Not only is this one the latest, but it is also

12  the least.  This is a situation in which notice of the bar

13  date is presumed to have been given and received based upon

14  Mr. Baer's affidavit and where the claimant had actual

15  knowledge that it was dealing with Lehman Brothers Commodity

16  Services and not with Lehman Brothers Inc.

17           Moreover, the presumption or assumption that a

18  proof of claim filed in the LBI SIPA case in effect took

19  care of all claims against related parties was a

20  fundamentally flawed presumption.

21           The delay in presenting this motion is inexcusable

22  and may be explained by the fact that in relative terms the

23  claim at issue here is a very small one.  Not only is it

24  small in the context of the claims in this bankruptcy case,

25  but it may also be relatively inconsequential to the

Page 26

1    claimant itself.  This is speculation, but that could be an

2    explanation for why greater attention was not paid to the

3    filing of the proof of claim against LBCS.

4            I believe that the published decision of the Court

5    relating to excusable neglect applies here with equal force

6    and that there is no equitable ground for an exception.

7            So under the circumstances this motion for leave

8    to file a late claim is denied.

9            There's nothing more for today then.  We're

10   adjourned.

11           MR. MICHAELSON:  Off the record, Your Honor, best

12   of luck.

13           THE COURT:  Thanks a lot, appreciate it.

14       (Whereupon the designation of record was concluded at

15   10:40 AM)

16

17

18

19

20

21

22

23

24

25

```
 1                          I N D E X

 2

 3                          RULINGS

 4                                        Page      Line

 5    Thirteenth Application of Hughes Hubbard &

 6    Reed LLP for Allowance of Interim

 7    Compensation for Services Rendered and

 8    Reimbursement of Actual and Necessary

 9    Expenses Incurred from March 1, 2013 through

10    June 30, 2013 [LBI ECF No. 7481]          6        10

11

12    Debtors' One Hundred Seventeenth Omnibus

13    Objection to Claims [ECF No. 15363]      12        24

14

15    Debtors' Two Hundred Fifty-Fourth Omnibus

16    Objection to Claims [ECF No. 25059]      12        24

17

18    Debtors' Two Hundred and Sixty-Seventh

19    Omnibus Objection to Claims [ECF no. 26087] 12     24

20

21    Four Hundred Twenty-Ninth Omnibus Objection

22    to Claims [ECF No. 39355]                12        24

23

24    Motion of EFETnet B.V. to Authorize

25    Late-Filed Proof of Claim and/or Permit
```

Page 28

1    Amendment of Informal Proof of Claim Against

2    Lehman Brothers Commodity Services, Inc.

3    [ECF No. 40004]                                    25            7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 29

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6        Dawn          Digitally signed by Dawn South
                        DN: cn=Dawn South, o, ou,
                        email=digital1@veritext.com,
7        South          c=US
                        Date: 2013.12.20 17:20:36 -05'00'

8

9    AAERT Certified Electronic Transcriber CET**D-408

10

11   Veritext

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15   Date:  December 20, 2013

16

17

18

19

20

21

22

23

24

25