UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                                                   :

In re                                                      :        Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :        08-13555 (JMP)

                         Debtors.                  :        (Jointly Administered)

---------------------------------------------------------------x

**STIPULATION, AGREEMENT, AND ORDER BETWEEN ISRAEL DISCOUNT BANK LTD. AND LEHMAN BROTHERS HOLDINGS INC. PROVIDING FOR LIMITED RELIEF FROM THE AUTOMATIC STAY AND RELATED RELIEF**

This stipulation, agreement, and order (the "Stipulation, Agreement and Order") is entered into by and between Israel Discount Bank Ltd. ("IDB") and Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"). LBHI and IDB are collectively referred to in this Stipulation, Agreement and Order as the "Parties" and each a "Party."

RECITALS

A.    Commencing on September 15, 2008 (as applicable, the "Commencement Date") and periodically thereafter, LBHI and certain of its affiliates (collectively, the "Chapter 11 Estates") commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

B.    On July 2, 2009, the Bankruptcy Court entered an order setting forth the procedures and deadlines for filing proofs of claim in the Chapter 11 Cases (ECF No. 4271) (the "Bar Date Order").

C.    On September 22, 2009, IDB filed a proof of claim against LBHI in the amount of

$34,293,500.00 (Claim No. 31695), which it amended on October 28, 2009 (Claim No. 50470), on account of certain notes held by IDB that were issued by LBHI prior to the Commencement Date (as amended, the "Claim"). Specifically, the Claim is comprised of (i) $27,454,493.00 relating to five series of notes issued by LBHI under an indenture between LBHI and Wilmington Trust Company (the "Indenture Trustee"), dated September 1, 1987 (CUSIP Nos. 52517PR78, 52517P2K6, 52517PE23, 52517PK83, and 52517PL33) (the "Trustee Notes") and (ii) $6,839,008.00 relating to one unrelated series of notes issued by LBHI bearing ISIN No. XS0224346592 (the "Non-Trustee Notes"). The Non-Trustee Notes are held through Euroclear by ISRAEL DISC BK/N02, TELAVIV, as participant (the "Participant"), on behalf of IDB. IDB bifurcated the Claim into a general unsecured claim in the amount of $28,643,306.00 and a secured claim arising from a right of setoff against $5,650,195.00 (the "Setoff Amount") owed to LBHI that, as of the Commencement Date, was in an LBHI account at IDB bearing account number 950092 (the "LBHI Account").

    D. On March 22, 2010, the Bankruptcy Court entered an order (the "LPS Clarification Order") authorizing and directing LBHI to disregard proofs of claim based on certain LBHI-issued securities and, instead, to rely upon and utilize the records of certain clearing agencies (ECF No. 7702). The Non-Trustee Notes are included among the LBHI-issued securities subject to the LPS Clarification Order.

    E. On February 14, 2011, LBHI objected to that portion of the Claim that relates to the Trustee Notes as duplicative of claims filed by the Indenture Trustee on behalf of noteholders, including IDB. As it pertained to IDB, the objection was limited to the Trustee Notes and did not apply to that portion of the Claim relating to the Non-Trustee Notes or IDB's right of setoff relating thereto. By order of the Bankruptcy Court, dated March 31, 2011 (ECF

2

No. 15520), the Claim was expunged and disallowed as to the Trustee Notes only, resulting in a reduced Claim reflecting amounts owed by LBHI in connection with the Non-Trustee Notes and an asserted right of setoff in connection therewith.

F.      Pursuant to the LPS Clarification Order, the filed amount of the Claim is disregarded and IDB has a remaining claim on account of the Non-Trustee Notes, as reduced, in the amount of $7,152,179.00 (the "Non-Trustee Claim").

G.      IDB represents that, as of the Commencement Date, the LBHI Account had a balance of ILS 22,529,697.21 (the "Prepetition Balance"). IDB represents further that the balance of the LBHI Account, as of December 1, 2013 and including net accrued interest, was ILS22,755,961.00. The difference between the Prepetition Balance and the balance of the LBHI Account as of September 17, 2013 is attributable to amounts received into the LBHI Account subsequent to the Commencement Date (such amounts, plus any additional amounts received into the LBHI Account during the period from December 1, 2013 through the Effective Date, shall be referred to herein as the "Postpetition Accruals").

H.      On December 6, 2011, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan (ECF No. 23023). The Plan became effective on March 6, 2012.

I.      Pursuant to the Plan, LBHI made interim distributions to IDB in April and October of 2012 and again in April and October of 2013 in the aggregate amount of $1,469,970.37 on account of the principal amount of the Non-Trustee Claim. The amount of the Non-Trustee Claim has, therefore, been reduced to $5,682,208.63.

J.      IDB seeks to partially resolve the Non-Trustee Claim by effectuating a setoff against the amount it owes LBHI with respect to the LBHI Account. The Plan Administrator does not dispute the validity of IDB's asserted right of setoff.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE PARTIES, AND, UPON BANKRUPTCY COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT**:

1. The recitals set forth above are incorporated as if fully set forth herein.

2. Upon entry of an order by the Bankruptcy Court approving this Stipulation, Agreement and Order (the "Effective Date"), the automatic stay pursuant to section 362(a) of the Bankruptcy Code and paragraph 54 of the Confirmation Order (the "Automatic Stay") shall be modified solely to the extent necessary to permit IDB to set off the Setoff Amount against the Non-Trustee Claim. Following effectuation of the setoff described in this paragraph, the Parties agree that the outstanding balance of the Non-Trustee Claim shall be €20,000 in nominal principal amount (the "Remaining Claim"). Except as provided for herein, the provisions of the Automatic Stay, including, without limitation, those provisions prohibiting any act to collect, assess, or recover a claim that arose before the Commencement Date from the Chapter 11 Estates and/or their assets or property (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect.

3. Within three (3) business days following the Effective Date, IDB shall (i) turn over to LBHI the Post-Petition Accruals and any other amounts remaining in the LBHI Account following the effectuation of the setoff described in paragraph 2 above; and (ii) cause the LBHI Account to be closed. All amounts due to LBHI pursuant to this paragraph shall be converted by IDB to United States Dollars using the prevailing conversion rate as of September 15, 2008. ($1 = ILS3.5598).

4. IDB represents and warrants to the Plan Administrator that, as of the Effective Date, it (i) is the legal owner and holder of the Non-Trustee Claim and/or the Remaining Claim, as applicable, (ii) owns and holds all right, title and interest therein free and clear of all liens,

4

claims or encumbrances, and (iii) has not previously assigned, sold, or transferred the Non-Trustee Claim and/or the Remaining Claim or any interest therein.

5.  Within three (3) business days following the Effective Date, or such time period as otherwise agreed to by the Parties, IDB shall take all necessary actions including, but not limited to, causing the Participant to provide to Euroclear an instruction SWIFT MT599 (containing the ISIN code, account, amount and request for cancellation) and any other necessary instructions, requests, documentation and other information to effect a markdown of IDB's portion of the Non-Trustee Notes by €4,980,000 in nominal principal amount to result in the Remaining Claim of €20,000 in nominal principal amount.  The Plan Administrator acknowledges that it shall take all necessary actions to effectuate the markdown initiated by IDB in such SWIFT MT599 or other required instruction.

6.  Upon (i) the effectuation of the setoff provided for in paragraph 2, (ii) LBHI's receipt of the amounts set forth in paragraph 3, and (iii) the effectuation of the markdown of the Non-Trustee Notes as set forth in paragraph 5, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross

5

negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Non-Trustee Notes and/or the LBHI Account; <u>provided</u>, <u>however</u>, that nothing contained herein shall release the Released Parties from their respective obligations or waive the rights of the Released Parties set forth in this Stipulation, Agreement and Order.

7. All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the release in paragraph 6. Section 1542 of the California Civil Code reads as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."'**

8. The terms of this Stipulation, Agreement and Order are subject to the approval of the Bankruptcy Court and in the event that the Bankruptcy Court does not approve this Stipulation, Agreement and Order, it shall be null and void and of no force and effect.

9. This Stipulation, Agreement and Order is solely for the benefit of the Parties and not for any other person or entity and no such person or entity shall be entitled to the benefit of (or be entitled to rely upon) this Stipulation, Agreement and Order.

10. This Stipulation, Agreement and Order can only be amended or otherwise modified by a signed writing executed by the Parties.

11. Each person who executes the Stipulation, Agreement and Order by or on behalf of a Party represents and warrants that he or she has been duly authorized and empowered to

execute and deliver this Stipulation, Agreement and Order on behalf of such Party.

13. 12.    This Stipulation, Agreement and Order may be executed in counterparts, each of which shall be deemed an original but both of which shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement and Order to present any copy, copies, or facsimiles signed by the Parties here to be charged.

13.    This Stipulation, Agreement and Order shall be effective immediately upon its entry by the Bankruptcy Court and the requirements of Bankruptcy Rule 4001(a)(3) are waived.

14.    This Stipulation, Agreement and Order shall be interpreted, construed and enforced exclusively in accordance with the laws of the State of New York.

15. The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation, Agreement and Order.

| | |
|---|---|
| Dated: December 23, 2013<br>New York, New York | Dated: December 26, 2013<br>New York, New York |
| SEWARD & KISSEL LLP | WEIL, GOTSHAL & MANGES LLP |
| By: /s/ Ronald L. Cohen | By: /s/ Jacqueline Marcus |
| Ronald L. Cohen, Esq.<br>One Battery Park Plaza<br>New York, NY 1000<br>Tel: 212-574-1375<br>Fax: 212-480-8421 | Jacqueline Marcus, Esq.<br>767 Fifth Avenue<br>New York, New York 10153<br>Tel: 212-310-8000<br>Fax: 212-310-8007 |
| *Attorneys for Israel Discount Bank LTD.* | *Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates* |

**SO ORDERED:**



Dated: New York, New York
           January 10, 2014

/s/ James M. Peck
_____
Honorable James M. Peck
United States Bankruptcy Judge

8