# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                    :

In re                             :

                                :  **Case No. 13-cv-07481 (LGS)**

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :

                                :

              Debtors.        :

                                :

-------------------------------------------------------------------x

**Lehman Brothers Holdings Inc.'s Memorandum of Law in
Opposition to the Motion of the Federal Housing Finance Agency
and the Federal Home Loan Mortgage Corporation to Withdraw the Reference**

> WEIL, GOTSHAL & MANGES LLP
> 767 Fifth Avenue
> New York, New York 10153
> Telephone: (212) 310-8000
> Facsimile: (212) 310-8007
> David J. Lender
> Lori R. Fife
> Alfredo R. Pérez
>
> *Attorneys for*
> Lehman Brothers Holdings Inc., as
> Plan Administrator for Lehman
> Brothers Holdings Inc. and Certain
> of Its Affiliates

# TABLE OF CONTENTS

                                                                                    Page

Preliminary Statement ............................................................................................1

Background ..............................................................................................................3
    A.    Chapter 11 Case Background ................................................................3
    B.    The Prepetition Lending Relationship Between Freddie Mac and LBHI ...............4
    C.    The Claim and the Plan Stipulation ....................................................5
    D.    Prior Proceedings in Respect of the Claim ..........................................7

Argument .................................................................................................................9
    I.    The Motion to Withdraw the Reference should be denied because the
        determination of a threshold bankruptcy issue renders any interpretation of
        HERA merely academic ........................................................................9
    II.    Even if a limited interpretation of HERA is required — which it is not —
        the Motion to Withdraw the Reference should be denied because
        bankruptcy issues dominate ..............................................................15

Alternative Relief ..................................................................................................18

Conclusion .............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.)*,
    388 B.R. 131 (S.D.N.Y. 2008) ........................................................................13, 15

*In re Fairfield Sentry Ltd.*,
    No. 10-7340 *et seq.*, 2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010) ......................14

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
    980 F.2d 125 (2d Cir. 1992) .........................................................................12, 17

*Hassett v. Bancohio Nat'l Bank (In re CIS Corp.)*,
    172 B.R. 748 (S.D.N.Y. 1994) ......................................................................13, 16

*Howard Delivery Serv. v. Zurich Am. Ins. Co.*,
    547 U.S. 651 (2006) ............................................................................................10

*Jahn v. FDIC*,
    828 F. Supp. 2d 305 (D.D.C. 2011) ....................................................................16

*Keene Corp. v. Williams, Bailey & Wesner, LLP (In re Keene Corp.)*,
    182 B.R. 379 (S.D.N.Y. 1995) ..............................................................................9

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.*
    *Holdings Inc.)*,
    480 B.R. 179 (S.D.N.Y. 2012) ............................................................................14

*Nathanson v. NLRB*,
    344 U.S. 25 (1952) ..............................................................................................10

*Picard v. JPMorgan Chase & Co.*,
    454 B.R. 307 (S.D.N.Y. 2011) ......................................................................17, 18

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
    922 F.2d 984 (2d Cir. 1990) ..................................................................................9

*In re Texaco, Inc.*,
    84 B.R. 911 (S.D.N.Y. 1988) ...............................................................9, 10, 13, 15

*Trs. of Amalgamated Ins. Fund. v. McFarlin's, Inc.*,
    789 F.2d 98 (2d Cir. 1986) ..................................................................................10

*Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*,
    No. 09-8851 (BSJ), 2009 WL 4496051 (S.D.N.Y. Dec. 3, 2009) ........................14

*In re White Motor Corp.*,
    42 B.R. 693 (N.D. Ohio 1984) ............................................................................13

**DOCKETED OPINIONS, COURT FILINGS & TRANSCRIPTS**

*Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank* (*In re Lehman Bros. Holdings Inc.*),
    No. 13-3373 (LTS) (S.D.N.Y. Aug. 8, 2013), ECF No. 11 ...................................14

*Lehman Bros. Holdings Inc. v. Ford Global Treasury, Inc. (In re Lehman Bros. Holdings Inc.)*,
    No. 12-8201 (RA) (S.D.N.Y. Apr. 8, 2013), ECF No. 7 .......................................15

Hearing Transcript, *In re Lehman Bros. Holdings Inc.*,
    No. 08-13555 (Bankr. S.D.N.Y. Oct. 24, 2013) ............................................ *passim*

Mot. to Withdraw the Reference, Hearing Transcript, *Mich. State Hous. Dev. Auth. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*,
    No. 11-3392 (JGK) (S.D.N.Y. Sept. 14, 2011), ECF No. 18 ................................14

Mot. to Withdraw the Reference, Hearing Transcript, *Wong v. HSBC USA Inc. (In re Lehman Bros. Holdings Inc.)*,
    No. 09-6841 (LTS) (S.D.N.Y. Oct. 14, 2009) ......................................................15

**STATUTES & RULES**

11 U.S.C. § 362 ........................................................................................................17

11 U.S.C. § 507 ................................................................................................. *passim*

11 U.S.C. § 548 ........................................................................................................16

11 U.S.C. § 550 ........................................................................................................16

12 U.S.C. § 1821 ................................................................................................12, 16

12 U.S.C. § 4617 ..........................................................................................11, 12, 16

28 U.S.C. § 157(d) ...............................................................................................9, 13

Crime Control Act of 1990 ......................................................................................12

Housing and Economic Recovery Act of 2008 ................................................ *passim*

Fed. R. Bankr. P. 1015(b) .........................................................................................3

US_ACTIVE:\44353390\17\58399.0011

**OTHER AUTHORITIES**

Comprehensive Crime Control Act of 1990, H.R. Rep. No. 101-681(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472 ...................................................................................11

iv

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this objection to the motion of the Federal Housing Finance Agency (the "FHFA" or "Conservator") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and together with the FHFA, the "Movants") to withdraw the reference [ECF No. 1] (the "Motion to Withdraw the Reference") to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and respectfully represents as follows:

## PRELIMINARY STATEMENT

The Motion to Withdraw the Reference should be denied because it seeks relief that is not supported by case law within this district, which unequivocally holds that withdrawal of the reference must be denied where a threshold issue of bankruptcy law must be decided before any issues of federal non-bankruptcy law arise. The threshold issue that must be decided is whether Freddie Mac's claim is entitled to priority under title 11 of the United States Code (the "Bankruptcy Code"). In order for a claim to be entitled to priority status, it must be listed in section 507 of the Bankruptcy Code, which provides an exhaustive list of claims entitled to priority. A claim under the Housing and Economic Recovery Act of 2008 ("HERA"), which Movants argue entitles Freddie Mac to a priority claim, is not one of the enumerated claims. There is no authority for Movants' argument that a claim can be afforded priority status if it is not listed in section 507 of the Bankruptcy Code. Even Movants admit that section 507 does not entitle Freddie Mac to a priority claim. The motion pending before the Bankruptcy Court can be resolved based solely upon bankruptcy law, and no issues of federal non-bankruptcy law need to be determined. This ground alone is sufficient to deny the Motion to Withdraw the Reference.

Moreover, under the Bankruptcy Code, the classification scheme in a chapter 11 plan must be consistent with the priority scheme in the Bankruptcy Code. The Plan, which was confirmed by the Bankruptcy Court and with which the Bankruptcy Court is intimately familiar, established twelve classes of claims and interests against LBHI. Where a claim is classified under a plan determines the amount that a creditor is entitled to recover from the bankruptcy estate. Movants objected to the confirmation of the Plan, and the objection was resolved by a stipulation pursuant to which LBHI reserved the right to object to the classification of Freddie Mac's claim under the Plan. Accordingly, the Court must interpret the Plan and related stipulation to decide the appropriate classification for Freddie Mac's claim under the Plan. This is a second, albeit related, threshold bankruptcy issue that must be decided before any issue of federal non-bankruptcy law arises. Based upon this additional ground, the Motion to Withdraw the Reference should be denied.

Movants principally argue that withdrawal of the reference is mandatory because of the "interplay" between federal non-bankruptcy law and the Bankruptcy Code. However, the law within this district holds that issues of federal non-bankruptcy law must <u>predominate</u> to warrant mandatory withdrawal of the reference. It is not enough that issues of bankruptcy law and federal non-bankruptcy law merely intersect. Here, analysis of federal non-bankruptcy law is not required. However, even if it were, the law in question is analogous to fraudulent transfer law under the Bankruptcy Code, so bankruptcy law — not federal non-bankruptcy law — would predominate. As such, the Motion to Withdraw the Reference should be denied.

The issues of priority and classification are predominantly questions of bankruptcy law, which require an application of the priority scheme set forth in section 507 of the Bankruptcy Code and the terms of the Plan. The chapter 11 cases of LBHI and its affiliates (the "<u>Debtors</u>")

2

are the largest cases in history. Following the commencement of these cases, creditors filed approximately 69,000 proofs of claim asserting $1.3 trillion in liabilities against the Debtors. The Bankruptcy Court approved procedures for the expeditious, efficient, and consistent litigation and settlement of claims, including monthly hearings at which the Bankruptcy Court hears matters regarding claims filed against the Debtors. To date, more than 64,500 claims asserting more than $1.2 trillion have been resolved. Issues of the priority of claims under the Bankruptcy Code and the classification of claims under the Plan are routinely resolved by the Bankruptcy Court. The Bankruptcy Court has reclassified thousands of claims into different priorities under the Bankruptcy Code and classifications under the Plan. The Bankruptcy Court, with its vast knowledge and history of the Debtors, is uniquely qualified to deal with the claims in these chapter 11 cases. It is a proven, experienced, and efficient forum for resolving the issues of priority and classification of Freddie Mac's claim. Accordingly, the Plan Administrator requests that the Court deny the Motion to Withdraw the Reference or, in the alternative, requests that the issues of priority and classification be sent to the Bankruptcy Court for issuance of a report and recommendation.

## BACKGROUND

### A.    Chapter 11 Case Background

Commencing on September 15, 2008 (the "Commencement Date"), and periodically thereafter, LBHI and certain of its subsidiaries commenced with the Bankruptcy Court voluntary cases (the "Chapter 11 Cases") under the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered by the Bankruptcy Court pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

On December 6, 2011, the Bankruptcy Court entered an order confirming the Plan [Bankr. ECF No. 23023] (the "Confirmation Order"). The Plan became effective on March 6,

3

2012.  The Plan classifies "Priority Non-Tax Claims" in LBHI Class 1 and "Senior Unsecured Claims" in LBHI Class 3.  *See* Plan at § 3.1.

## B.    The Prepetition Lending Relationship Between Freddie Mac and LBHI

Freddie Mac had been making significant overnight and short-term loans to LBHI since February 2005.  *See* FHFA's Office of Inspector General's "*Case Study: Freddie Mac's Unsecured Lending to Lehman Brothers Prior to Lehman Brothers' Bankruptcy*," dated March 14, 2013 (the "FHFA Report") at 8.[1]  Beginning in January 2008, the loans were made for terms of up to one month, and they often rolled over as they became due.  *Id.*  For example, "the loans made in May 2008 were rolled over in June 2008; they were again rolled over in July, and then again in August.  Each time the principal and interest on such loans were repaid by [LBHI], the funds were re-sold (lent) by Freddie Mac to [LBHI] for an additional term."  *Id.*  Since April 2008, Freddie Mac had been making these monthly loans in the aggregate principal amount of $1.2 billion, and each loan had an interest rate of 2.55%, the prevailing "Fed Funds" rate at the time.  *Id.* at 8-9.

The monthly loans that were outstanding on the Commencement Date were made on August 19th and 20th in the amounts of $450,000,000 and $750,000,000, respectively (together, the "Unsecured Loans").  Despite the magnitude of the Unsecured Loans, they were not governed by a formal written agreement.  *See* Report of Anton R. Valukas, Examiner at 1954, *In re Lehman Bros. Holdings Inc.,* No. 08-13555 (Bankr. S.D.N.Y. Mar. 11, 2010), ECF No. 7531 (the "Examiner's Report").[2]  According to certain trade tickets for the Unsecured Loans, the

---

[1] Relevant excerpts from the FHFA Report are attached as Exhibit 1 to the Declaration of Alfredo R. Pérez (the "Pérez Declaration").  The FHFA Report is published by the FHFA's Office of Inspector General and is a public record available at:  http://www.fhfaoig.gov/Content/Files/EVL-2013-03_1.pdf.

[2] The excerpts of the Examiner's Report referred to herein were attached as Exhibit E to the Declaration of Nancy G. Milburn filed in support of the Motion to Withdraw the Reference [ECF No. 2] (the "Milburn Declaration").

4

Unsecured Loans were due to be repaid at 9:30 a.m. on September 15, 2008. *See* Claim (defined below) at Ex. A.[3] Because LBHI commenced its Chapter 11 Case at approximately 2:00 a.m. on the morning of September 15, 2008, the Unsecured Loans were not repaid and by law could not have been repaid at 9:30 a.m. on September 15, 2008.

Although Freddie Mac has suggested that LBHI's incurrence of its obligation to repay the Unsecured Loans was somehow fraudulent, Freddie Mac has failed to provide LBHI with any theory to support or suggest that LBHI acted with the actual intent to defraud Freddie Mac. *See* Hr'g Tr. 30:8-13, *In re Lehman Bros. Holdings Inc.,* No. 08-13555 (Bankr. S.D.N.Y. Oct. 24, 2013).[4] Meanwhile, the FHFA Report concluded that the origination of the Unsecured Loans did not involve fraud. FHFA Report at 19. Indeed, in a section titled "Findings," the FHFA Report stated: "[t]he $1.2 billion loss on the Lehman loans was facilitated by a corporate culture at Freddie Mac that overrode existing written policies and procedures. . . . As a consequence, Freddie Mac did not move to revoke Lehman's short-term unsecured credit with [Freddie Mac] until Lehman filed for bankruptcy and it was too late." *Id.*

## C.     The Claim and the Plan Stipulation

On September 6, 2008, the FHFA was appointed as Conservator for Freddie Mac pursuant to HERA. On September 22, 2009, Freddie Mac filed a proof of claim against LBHI asserting a claim in the approximate amount of $1.2 billion based upon LBHI's failure to repay the Unsecured Loans (the "Claim"). LBHI does not dispute that Freddie Mac holds a general

---

[3] The Claim was attached as Exhibit C to the Milburn Declaration.

[4] The transcript from the October 24, 2013 hearing in which the Honorable James M. Peck denied Movants' motion to stay the Classification Motion (defined below) pending this Court's resolution of the Motion to Withdraw the Reference is attached as Exhibit 2 to the Pérez Declaration.

senior unsecured prepetition claim against LBHI for unpaid principal and interest in an amount that approximates $1.2 billion.

Despite the unsecured nature of the Unsecured Loans, in its proof of claim, Freddie Mac asserted the Claim as a "priority" claim.  In support of its claimed priority status, Freddie Mac merely reserved its rights under HERA to avoid certain unidentified transfers made by LBHI "to the extent such transfer[s] [were] made with the intent to hinder or delay the 'early return' payment of the [Unsecured Loans]."  Claim at ¶ 3.  Freddie Mac now asserts that it intends to avoid not only certain unspecified transfers made by LBHI to third party transferees, but also the transfer of funds to LBHI as part of the Unsecured Loans.  According to Freddie Mac, the avoidance of these transfers under HERA would result in Freddie Mac having a priority claim under LBHI's confirmed Plan, despite the fact that section 507 of the Bankruptcy Code does not list claims based on the avoidance powers of the Conservator.

Freddie Mac was an active participant in the Plan confirmation process.  Indeed, in connection with confirmation of the Plan, Freddie Mac and LBHI entered into a stipulation concerning, among other things, the amount LBHI would be required to reserve for the Claim under the Plan [Bankr. ECF No. 22998] (the "Plan Stipulation").[5]  The Plan Stipulation was incorporated into the Plan and expressly approved by the Bankruptcy Court in the Confirmation Order.  Confirmation Order at ¶ 60.

The Plan Stipulation includes a broad reservation of rights section that, among other things, expressly permits LBHI to contest the asserted priority and classification of the Claim.  Plan Stipulation at ¶ 3.  Specifically, the reservation of rights section of the Plan Stipulation provides as follows:

---

[5] The Plan Stipulation was attached as Exhibit F to the Milburn Declaration.

6

> [T]he Parties hereby reserve all rights of the Parties and FHFA relating to the amount, allowance, *classification and/or priority* of the Claims for all purposes, including in connection with any *distributions* under the Third Amended Plan or otherwise in respect of these Bankruptcy Cases. . . . [N]othing in this Stipulation, the [Plan], the Confirmation Order, or any other pleadings or documents filed in connection therewith, *shall (i) have any effect on or prejudice [LBHI] in respect of the Claims*, including the amount, allowance, *classification and/or priority* of such Claims, or in respect of *distributions on account thereof*, and nothing herein shall be deemed an admission, release or waiver of [LBHI's] rights with respect to such Claims.

Plan Stipulation at ¶ 3 (emphasis added).

**D.      Prior Proceedings in Respect of the Claim**

On September 13, 2013, LBHI filed a motion in the Bankruptcy Court, seeking to classify and allow the Claim as a Senior Unsecured Claim in LBHI Class 3 pursuant to the Plan [Bankr. ECF No. 40066] (the "Classification Motion").[6]  On October 17, 2013, Movants objected to the Classification Motion, asserting that the Claim was entitled to priority treatment and should be classified in LBHI Class 1, "Priority Non-Tax Claims," under the Plan [Bankr. ECF No. 40550] (the "Objection").[7]  LBHI filed a reply to the Objection on October 22, 2013 [Bankr. ECF No. 40630] (the "Reply").[8]

On October 18, 2013, Movants filed (i) the Motion to Withdraw the Reference, arguing that the Classification Motion requires substantial and material analysis of HERA, and (ii) a motion seeking to stay the hearing on the Classification Motion pending a decision on the

---

[6] The Classification Motion was attached as Exhibit A to the Milburn Declaration.

[7] The Objection was attached as Exhibit B to the Milburn Declaration.

[8] The Reply is attached as Exhibit 3 to the Pérez Declaration.

US_ACTIVE:\44353390\17\58399.0011

Motion to Withdraw the Reference (the "Stay Motion") [Bankr. ECF No. 40570], to which LBHI

objected (the "Stay Motion Objection") [Bankr. ECF No. 40642].[9]

After a full hearing on the Stay Motion, the Bankruptcy Court denied the Stay Motion,

noting that "in the history of this bankruptcy case, to my knowledge, there has never been a

[non-consensual] withdrawal of the reference, despite various efforts to achieve that over the last

five years," and adjourned the hearing on the Classification Motion to November 22, 2013.  Hr'g

Tr. 21:20-23, 51:22, 119:4-8.  In denying the Stay Motion, the Bankruptcy Court concluded that

the dispute involved fundamental principles of bankruptcy law so it was "more likely than not,

that a district court considering the pending motion to withdraw the reference will conclude that

under the circumstances of the Lehman bankruptcy case in particular, the bankruptcy tribunal is

the most logical place for claims to be resolved, even claims that involve the potential

application of the HERA statute."  *Id.* at 51: 11-17.  Among other things, the Bankruptcy Court

characterized "the claims process in the Lehman bankruptcy cases to be somewhat unique."  *Id.*

at 49:20.  In discussing the confirmation of the Plan, the Bankruptcy Court noted that "FHFA

was an objector, whose objection was resolved by means of a stipulation, which stipulation

provided for reserved rights on the parts of the debtor to object to the classification of the claim,

[which] takes this dispute out of the category of mandatory withdrawal of the reference."  *Id.* at

50:14-20.  In essence, the Bankruptcy Court recognized that, since the resolution of the dispute

requires interpretation of the Plan and section 507 of the Bankruptcy Code, the dispute

predominantly arises under the Bankruptcy Code and weighs against withdrawal of the

reference.

---

[9] The Stay Motion and the Stay Motion Objection are attached as Exhibits 4 and 5, respectively, to the Pérez
Declaration.

Furthermore, the Bankruptcy Court found that "the provisions of the HERA statute are not arcane or unusual from the perspective of a bankruptcy tribunal." *Id.* at 50:22-24. Regardless of whether HERA is analyzed, "we are dealing with claim priority questions, and in the case of the HERA statute itself, we're dealing with priorities associated with avoidance powers." *Id.* at 50:24, 51:1-4. Thus, "the non-bankruptcy federal law in question is very closely analogous to bankruptcy law. I believe for that reason, that this is one of those circumstances where mandatory withdrawal of the reference makes no sense." *Id.* at 51:5-9.

## ARGUMENT

### I.     The Motion to Withdraw the Reference should be denied because the determination of a threshold bankruptcy issue renders any interpretation of HERA merely academic.

Mandatory withdrawal pursuant to 28 U.S.C. § 157(d) is "narrowly" applied. *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990); *Keene Corp. v. Williams, Bailey & Wesner, LLP* (*In re Keene Corp.*), 182 B.R. 379, 382 (S.D.N.Y. 1995). Movants bear the burden of demonstrating that a matter <u>requires</u> "substantial and material consideration" or "significant interpretation" of federal non-bankruptcy law. *Ionosphere*, 922 F.2d at 995; *see also In re Keene Corp.*, 182 B.R. at 382; *In re Texaco, Inc.*, 84 B.R. 911, 921 (S.D.N.Y. 1988).

A request for withdrawal of the reference will be denied where a "threshold issue" of bankruptcy law must be determined before an issue of non-bankruptcy law might arise. *Id.* at 914. In *Texaco*, a debtor moved to assume certain oil and gas leases. *Id.* at 913. The counterparties sought withdrawal of the reference to the Bankruptcy Court, arguing that consideration of the assumption motion required analysis of federal natural gas law. *Id.* The matter was referred to the Bankruptcy Court for issuance of a report and recommendation. *Id.* The Bankruptcy Court issued a recommendation that the withdrawal of the reference be denied

9

because, among other things, (i) "[t]here are threshold issues which may render academic any consideration of [federal natural gas law]," including defenses to assumption that arise under section 365 of the Bankruptcy Code, and (ii) "the application of the [federal natural gas law] to this proceeding does not require any substantial and material interpretation of the [federal natural gas law] but merely *pro forma* application of the [federal natural gas law] to the facts of this case." *Id.* at 913-14, 916. The District Court agreed with the Bankruptcy Court's interpretation of the issues, adopted its recommendations, and denied the motions seeking withdrawal of the reference. *Id.* at 914.

Here, the Classification Motion can be decided based on a threshold bankruptcy issue — whether a claim must fall within the list in section 507(a) of the Bankruptcy Code in order for such claim to be entitled to priority treatment. Section 507(a) of the Bankruptcy Code provides an exhaustive list of the types of claims that are afforded priority status. Claims based on the FHFA's avoidance powers are not listed in section 507(a), nor are they mentioned in any other section of the Bankruptcy Code.

Movants cannot cite a single case in which a court has found that a creditor is entitled to priority other than pursuant to the priority scheme of the Bankruptcy Code. *See* Hr'g Tr. 28:12-13. Moreover, both the Supreme Court and Second Circuit have directed courts to "narrowly construe" statutory priorities. *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) ("[P]referential treatment of a class of creditors is in order only when clearly authorized by Congress.") (emphasis added); *Nathanson v. NLRB*, 344 U.S. 25, 29 (1952) ("The theme of the Bankruptcy Act is 'equality of distribution'; and if one claimant is to be preferred over others, the purpose should be clear from the statute.") (internal citation omitted); *Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the

10

presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed"). As such, as a matter of bankruptcy law, the Claim must be classified as an unsecured, non-priority claim.

Moreover, as a practical matter, Movants' argument that Freddie Mac is entitled to a priority claim, even though such priority is not provided in section 507(a) of the Bankruptcy Code, is unworkable. Not all priority claims are created equal, and section 507(a) of the Bankruptcy Code lists a waterfall of ten types of priority claims in order of their priority. For example, administrative expense claims have a higher priority than employee wage claims, which have a higher priority than certain enumerated personal injury claims. Movants concede that the claim for which they seek priority is not included in section 507(a) of the Bankruptcy Code.

Because HERA does not amend, or even mention section 507(a), it is impossible to know where the FHFA's alleged priority should fit within the statutory waterfall provided by section 507(a). HERA merely provides that a conservator's limited avoidance rights, which are different than having a claim, "shall be superior to *any rights* of a trustee or any other party (*other than any party which is a Federal agency*) under Title 11." 12 U.S.C. § 4617(b)(15)(D) (emphasis added). Section 507(a)(9) provides that the Federal Deposit Insurance Corporation, another federal agency, is entitled to a priority claim only after eight other types of priority claims set forth in sections 507(a)(1)-(8) are satisfied, including administrative expenses and employee priority claims. A HERA-related claim could not simultaneously fall *after* the ninth type of priority claim, which is granted to a federal agency other than the FHFA, but *before* the first through eighth types of priority claims. Therefore, Movants' proposal that HERA somehow grants Freddie Mac a priority claim is illogical and unworkable. In summary, a HERA-related

11

claim is not listed in section 507 of the Bankruptcy Code, and HERA itself does not even mention claims — only avoidance powers.

"It is also presumed that Congress legislate[s] with knowledge of former related statutes, and will expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction." *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 132-33 (2d Cir. 1992) (citations and internal quotation marks omitted). Historically, Congress has amended section 507 of the Bankruptcy Code when it sought to entitle additional types of claims to priority classification. For example, Congress amended section 507 of the Bankruptcy Code by adding section 507(a)(9), which grants a priority to any "allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution." 11 U.S.C. 507(a)(9); *see* Comprehensive Crime Control Act of 1990, H.R. Rep. No. 101-681(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6584-90 (amending section 507 of the Bankruptcy Code).

The Crime Control Act of 1990 was also the same legislation that granted a conservator acting on behalf of an insured depository institution avoidance powers that are identical to the avoidance powers asserted by the FHFA in this case. *Compare* 12 U.S.C. § 4617(b)(15) *with* 12 U.S.C. § 1821(d)(17). Had Congress intended for the FDIC conservator's avoidance powers to result in the FDIC obtaining a priority claim, Congress would have amended section 507, as it did with respect to the FDIC's claims for capital maintenance commitments. Similarly, had Congress wanted HERA to grant the FHFA a priority claim against debtors under chapter 11, it

12

would have needed to amend the Bankruptcy Code to specify where such claims would fall in the carefully crafted waterfall established by section 507(a).

Based on the foregoing, to resolve the priority of the Claim, a court must determine, as a threshold bankruptcy matter, whether a claim must be listed in section 507(a) of the Bankruptcy Code in order for such claim to be entitled to priority treatment.  This analysis does not require any interpretation of HERA.   Therefore, because a threshold bankruptcy issue may render any interpretation of HERA a mere academic exercise, the Motion to Withdraw the Reference should be denied.

Courts in this district have rejected motions to withdraw the reference where, as here, "the withdrawal motion is based upon speculation about federal issues which may or may not arise and may or may not be germane to resolution of core Code proceedings" as "inconsistent with the purposes underlying the Bankruptcy Code" because they "would encourage forum shopping in a manner Congress disdained when it sought to avoid 'creating a multiplicity of forums for the adjudication of part of a bankruptcy case.'"  *In re Texaco*, 84 B.R. at 921 (internal citations omitted); *see also Hassett v. Bancohio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 754 (S.D.N.Y. 1994) ("[The movant] can hardly suggest that this Court is required to withdraw the reference in order to scrutinize whether there *might* be a conflict between the federal law and Title 11 when it has not identified the substance of conflict."); *see also Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.)*, 388 B.R. 131, 141 (S.D.N.Y. 2008); *In re White Motor Corp.*, 42 B.R. 693, 705 (N.D. Ohio 1984) (holding that "speculation about [federal law] issues which may or may not arise" was insufficient to warrant a withdrawal of the reference).  Courts are "suspicious of forum-shopping" and seek to prevent the use of section 157(d) as an "escape

13

hatch" from the Bankruptcy Court. *In re Fairfield Sentry Ltd.*, No. 10-7340 *et seq.*, 2010 WL 4910119, at *4 (S.D.N.Y. Nov. 22, 2010).

Here, denying the Motion to Withdraw the Reference is consistent with the practice of courts when faced with mere speculation regarding non-bankruptcy issues and consistent with previous decisions in the Chapter 11 Cases. In this bankruptcy case, there has never been a non-consensual withdrawal of the reference, despite multiple attempts. *See* Hr'g Tr. 21:20-23. Instead, on six separate occasions, the District Court for the Southern District of New York has denied motions to withdraw the reference that were filed in this case. *See* Mem. Order at 8-9, *Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank* (*In re Lehman Bros. Holdings Inc.*), No. 13-3373 (LTS) (S.D.N.Y. Aug. 8, 2013), ECF No. 11 (Swain, J.) ("efficiency concerns also weigh strongly in favor of the denial of the motion to withdraw the reference" because, *inter alia*, the Bankruptcy Court's "expertise in the interpretation of the Bankruptcy Code provides . . . an important opportunity for highly informed initial analysis of the core issues presented here"); *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 196 (S.D.N.Y. 2012) (Sullivan, J.) ("[T]he bankruptcy court's involvement with not only this proceeding but also with the administration of the entire Lehman bankruptcy . . . has been . . . extensive."); Mot. to Withdraw the Reference, Hr'g Tr. 62:10-13, *Mich. State Hous. Dev. Auth. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, No. 11-3392 (JGK) (S.D.N.Y. Sept. 14, 2011) (Koeltl, J.), ECF No. 18 ("The bankruptcy court is familiar with the myriad financial transactions involved in the Lehman bankruptcy and with how the provisions of the Code implicated here fit into those transactions."); *Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*, No. 09-8851 (BSJ), 2009 WL 4496051, at *2 (S.D.N.Y. Dec. 3, 2009) (Jones, J.) ("[T]he Bankruptcy Court may be best equipped to adjudicate the present

14

dispute due to its exposure to [the Debtor's] business, the contract terms at issue here, the

complex type of transaction at issue here, and the practices of the swap industry."); Mot. to

Withdraw the Reference, Hr'g Tr. 32:19-33:1, *Wong v. HSBC USA Inc. (In re Lehman Bros.*

*Holdings Inc.)*, No. 09-6841 (LTS), (S.D.N.Y. Oct. 14, 2009) (Swain, J.) (denying motion to

withdraw the reference because "these types of instruments and the many different contracts that

are involved in their existence and administration of the rights thereunder will be significant

issues within the context of the bankruptcy proceeding of the Lehman entities as a whole, and the

bankruptcy court has become and will necessarily become more knowledgeable of the intricacies

of these arrangements and their relationship to the estate"); *Lehman Bros. Holdings Inc. v. Ford*

*Global Treasury, Inc. (In re Lehman Bros. Holdings Inc.)*, No. 12-8201 (RA), at 5 (S.D.N.Y.

Apr. 8, 2013), ECF No. 7 (Abrams, J.) ("Given the size and complexity of the Lehman

bankruptcy, . . . the bankruptcy court's familiarity with the underlying facts . . . including

[Lehman's] derivatives portfolio, as well as its expertise in bankruptcy law, [the]

consideration[s] of efficiency weigh[s] against withdrawing the reference.").

## II.    Even if a limited interpretation of HERA is required — which it is not — the Motion to Withdraw the Reference should be denied because bankruptcy issues dominate.

In construing the meaning of "substantial and material consideration" of non-bankruptcy

law, courts have held that such criteria are fulfilled when "issues arising under non-title 11 laws

dominated those arising under title 11." *Texaco*, 84 B.R. at 921 (emphasis added); *accord In re*

*Enron Corp.*, 388 B.R. at 136 (a "'bare contention' that non-bankruptcy law is dispositive or in

conflict with the Bankruptcy Code is not sufficient.") (internal citation omitted); *see also* Hr'g

Tr. 21:1-5.  Here, the Classification Motion raises issues of claim priority and classification,

which require interpretation of the Bankruptcy Code, the Plan, and a Plan-related stipulation that

reserves certain rights.  Such issues are commonly resolved by Bankruptcy Courts and draw

15

upon knowledge of LBHI's case administration. *See* Hr'g Tr. 19:20-23. In fact, the Bankruptcy

Court has reclassified thousands of claims into different priorities under the Bankruptcy Code

and classifications under the Plan.

Even if analysis of HERA was required — which it is not — bankruptcy law concepts

would still dominate such analysis. Specifically, the sections of HERA that Movants claim are

applicable are analogous to section 548 of the Bankruptcy Code, which discusses fraudulent

transfers, and section 550 of the Bankruptcy Code, which discusses liability of transferees of

avoided transfers. *Compare* 12 U.S.C. § 4617(b)(15)(A), (D) *with* 11 U.S.C. §§ 548, 550; *see*

*also Jahn v. FDIC*, 828 F. Supp. 2d 305, 312-13 (D.D.C. 2011) (analogizing 12 U.S.C.

§ 1821(d)(17)(A), (D), which is nearly identical to the avoidance provision of HERA, to 11

U.S.C. §§ 548, 550); Hr'g Tr. 51:5-6. The Bankruptcy Court is the most efficient forum for

adjudicating the Classification Motion because it has specialized expertise in the areas of law

that dominate — claim priority, classification under the Plan, and arguably, fraudulent transfers.

*See* Hr'g Tr. 20:22-25, 21:1.

Movants argue that withdrawal of the reference is particularly appropriate due to the lack

of case law on the issues being raised. Movants' argument is misplaced. The Bankruptcy Court

routinely addresses issues of claim priority and classification, and the plain language of the

Bankruptcy Code resolves such issues. *See In re CIS Corp.*, 172 B.R. at 753 (denying

withdrawal where nothing more than "straightforward application or routine interpretation" of

federal non-bankruptcy law was required of the court). In fact, the claims reconciliation process

has been ongoing in LBHI's bankruptcy case for several years, and every claim of every

description has been subjected to the same regime. *See* Hr'g Tr. 21:6-11. Because the

Bankruptcy Court routinely addresses claim priority and classification, uniformity also militates against withdrawal of the reference.

Movants argue that *dicta* from a footnote in *Colonial* supports their argument for withdrawal of the reference. *See In re Colonial Realty Co.*, 980 F.2d at 128 n.5. In *Colonial*, the court was presented with an issue of first impression regarding an alleged conflict between the Federal Deposit Insurance Act and the Bankruptcy Code — specifically, whether certain provisions of the Federal Deposit Insurance Act implicitly partially repeal or otherwise limit the automatic stay provision in section 362 of the Bankruptcy Code. In a footnote, the Second Circuit commented that a prior motion seeking to withdraw the reference should have been granted given the conflict between the Bankruptcy Code and other federal non-bankruptcy law. *Id.* at 128 n.5. *Colonial* is "inapposite" because, in this case, there is no conflict between the Bankruptcy Code and HERA. *See* Hr'g Tr. 39:10-15; 52:1-4. Rather, the Bankruptcy Code is the final authority on the priority of bankruptcy claims against LBHI.

Similarly, *Picard v. JPMorgan Chase & Co.*, 454 B.R. 307, 316 (S.D.N.Y. 2011) is also inapposite. In that case, the trustee appointed under the Securities Investor Protection Act ("SIPA") brought certain claims against the defendants, and the defendants sought withdrawal of the reference. The court held that mandatory withdrawal of the reference was appropriate because all the issues in question required significant interpretation of federal securities laws and SIPA, which is a federal non-bankruptcy law. *Id.* at 312. As a preliminary matter, the trustee in *Picard* conceded that permissive withdrawal of the reference was appropriate. *Id.* at 312. Furthermore, in *Picard*, there was no threshold bankruptcy law issue. The parties disputed whether SIPA constituted a federal non-bankruptcy law for purposes of withdrawal of the reference. *Id.* at 316. There was no question that SIPA needed to be interpreted, so once it was

17

Case 9:13-cv-07431-LGS    Document 42    Filed 1/04/13    Page 25 of 24

determined that SIPA constituted federal non-bankruptcy law, the dispute fell away.  Unlike

*Picard*, in this case, the question is whether HERA must be interpreted, and LBHI argues that it

does not.  Moreover, also unlike *Picard*, in this case, issues concerning the interpretation of the

Bankruptcy Code and the Plan predominate over any interpretation of federal non-bankruptcy

law.

Movants cite several additional cases where withdrawal of the reference was granted;

however, each of those cases involved a federal non-bankruptcy statute that is "arcane or

foreign" to the Bankruptcy Court, including tax, environmental, and securities law statutes.  *See*

Hr'g Tr. 20:24-25, 21:1-4.  In contrast, the issues raised in the Classification Motion are issues of

bankruptcy priority.  Even the fraudulent transfer issues that Movants allege arise under HERA

are bankruptcy-related concepts that are best handled by the Bankruptcy Court, due to its

specialized expertise with respect to such regimes.  *See* Hr'g Tr. 34:19-20.

Because case law does not support Movants' position, the Motion to Withdraw the

Reference should be denied.

## ALTERNATIVE RELIEF

In the alternative, the Plan Administrator requests that the Bankruptcy Court be required

to issue a report and recommendation with respect to the Classification Motion.

The bankruptcy cases of LBHI and its affiliates are the largest bankruptcy cases in

history, and the Plan that was confirmed by the Bankruptcy Court in these cases is unique in its

incorporation of settlements and stipulations.  The Bankruptcy Court holds regularly scheduled,

monthly hearings that are solely dedicated to tackling claims-related issues, including priority

and classification.  Additionally, the Bankruptcy Court has the background knowledge as well as

the capacity on its docket to hear claims matters and issue orders expeditiously.  Here, judicial

economy will be best served by having the Bankruptcy Court decide issues with which it is more familiar and which it has previously reviewed.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons discussed above, the Plan Administrator respectfully requests that the Court deny the Motion to Withdraw the Reference, or in the alternative, request that the Bankruptcy Court issues a report and recommendation with respect to the Classification Motion, and grant the Plan Administrator such other and further relief as is just.

Dated: November 4, 2013
      New York, New York

                  /s/ Alfredo R. Pérez
                  David J. Lender
                  Lori R. Fife
                  Alfredo R. Pérez

                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York 10153
                  Telephone: (212) 310-8000
                  Facsimile: (212) 310-8007

                  Attorneys for Lehman Brothers Holdings Inc.
                  and Certain of Its Affiliates