# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

          Debtors.

---

FEDERAL HOUSING FINANCE AGENCY, individually and as Conservator of Federal Home Loan Mortgage Corporation,

          Plaintiff,

v.

LEHMAN BROTHERS HOLDINGS INC.,

          Defendant.

13 Civ. 07481 (LGS)

## REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF THE FEDERAL HOUSING FINANCE AGENCY AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION TO WITHDRAW THE REFERENCE

| | |
|---|---|
| LANDMAN CORSI BALLAINE & FORD P.C.<br>120 Broadway<br>New York, New York 10271<br>Telephone: (212) 238-4800<br>Facsimile: (212) 238-4848<br>Mark S. Landman<br><br>*Attorneys for the Federal Home Loan Mortgage Corporation* | ARNOLD & PORTER LLP<br>399 Park Avenue<br>New York, New York 10022<br>Telephone: (212) 715-1000<br>Facsimile: (212) 238-4848<br>Michael J. Canning<br>Richard M. Alexander<br>Nancy G. Milburn<br><br>*Attorneys for the Federal Housing Finance Agency as Conservator of the Federal Home Loan Mortgage Corporation* |

# TABLE OF CONTENTS

| | Page |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| A.  LBHI's Claim that the Court Need Only Consider Section 507 is Meritless | 2 |
| B.  No Examination of the Plan or Plan Stipulation Is Necessary | 5 |
| C.  The Bankruptcy Court's Familiarity with Non-Title 11 Laws Is Not a Factor in Adjudicating Mandatory Withdrawal of the Reference | 7 |
| D.  The Motions to Withdraw Cited by LBHI Were All Permissive | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Tel. & Tel. Co. v. Chateauguay Corp.*,
88 B.R. 581 (S.D.N.Y. 1988).................................................................................................1

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)..........................................................................7

*In re Hartley*,
55 B.R. 781 (Bankr. N.D. Ohio 1985)...................................................................................7

*In re Ionosphere Clubs*,
922 F.2d 984 (2d Cir. 1990)..................................................................................................1

*In re Texaco Inc.*,
84 B.R. 911 (S.D.N.Y. 1988)............................................................................................2, 3

*Koch Supply & Trading, LP v. Giddens (In re MF Global Inc)*,
484 B.R. 18 (S.D.N.Y. 2012).................................................................................................8

*Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank*,
No. 13-3373 (LTS) (S.D.N.Y. Aug. 8, 2013) .......................................................................9

*Lehman Bros. Holdings Inc. v. Ford Global Treasury, Inc.*,
No. 12-8201 (RA) (S.D.N.Y. Apr. 8, 2013) .........................................................................9

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*,
480 B.R. 179 (S.D.N.Y. 2012)..............................................................................................9

*Lehman Bros. Holdings, Inc. v. U.S.*,
No. 10-6200 (RMB) (S.D.N.Y. Nov. 9, 2010) .....................................................................9

*Mich. State Hous. Dev. Auth. v. Lehman Bros. Holdings Inc.*,
No. 11-3392 (JGK) (S.D.N.Y. Sept. 14, 2011).....................................................................9

*Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*,
2009 WL 4496051 (S.D.N.Y. Dec. 3, 2009) ........................................................................9

*Wong v. HSBC USA Inc.*,
No. 09-6841 (LTS) (S.D.N.Y. Oct. 14, 2009) ......................................................................9

**STATUTES**

11 U.S.C. § 507............................................................................................................... *passim*

12 U.S.C. § 1821(d)(17) ...................................................................................................... 3, 4

12 U.S.C. § 4617(b)(15) ............................................................................................................. *passim*

28 U.S.C. § 157(d) ...........................................................................................................1, 7, 8, 9

As FHFA and Freddie Mac demonstrated in their moving brief, the Court must withdraw the reference under 28 U.S.C. § 157(d) if it "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."[1] It is settled law that withdrawal of the reference is mandatory where "substantial and material consideration of non-Bankruptcy federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs*, 922 F.2d 984, 995 (2d Cir. 1990) (internal quotation marks and citations omitted). Here, resolution of LBHI's Motion to Classify will require substantial and material consideration of the Housing and Economic Recovery Act of 2008 (HERA), a non-bankruptcy federal statute.

LBHI's Motion to Classify addresses Section 4617(b)(15) of HERA at length, including: whether the superior rights granted to FHFA entitle it to a priority recovery over other creditors in a bankruptcy proceeding, *see* Mot. to Classify at 8-11, Reply to Mot. to Classify at 10-15, 19-21; whether FHFA is entitled to a priority recovery from the LBHI bankruptcy estate or whether, as LBHI contends, its rights under HERA are limited to recovery of proceeds of avoidance actions against transferees, *see* Mot. to Classify at 8-11, Reply to Mot. to Classify at 11, 17-20; and whether FHFA is entitled to recover monies under HERA owed to it based upon the avoidance of an obligation incurred to Freddie Mac by LBHI. *See* Mot. to Classify at 2-4, 8-11, Reply to Mot. to Classify at 10-16. The resolution of all of these issues, as specifically posed by LBHI in its Motion to Classify, will require "substantial and material consideration" of HERA. Withdrawal of the reference is therefore required.

---

[1] *See Am. Tel. & Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 584 (S.D.N.Y. 1988) (where the issues in question require a "significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge[,] [the] district court *does not have discretion* to deny a petition for withdrawal") (citations omitted) (emphasis added).

LBHI raises several arguments in an effort to evade a decision by this Court concerning the Motion to Classify. All are without merit.

**A. LBHI's Claim that the Court Need Only Consider Section 507 is Meritless**

LBHI argues first that a "threshold bankruptcy issue" exists because Section 507 of the Bankruptcy Code does not expressly refer to a claim under HERA, and therefore, the Court need not even reach the question whether FHFA is entitled to a priority under HERA. Opp. at 9-11. This argument is obviously wrong, since, by asking a court to determine whether HERA's grant to FHFA of rights "superior to any rights of a trustee or any other party . . . under Title 11" entitles FHFA to priority rights of recovery in a bankruptcy, LBHI has necessarily asked the court to decide whether HERA grants a priority independent of the Bankruptcy Code. LBHI's framing of the issue demonstrates that analysis of HERA, and thus withdrawal, is mandatory.

LBHI principally relies on *In re Texaco Inc.*, 84 B.R. 911 (S.D.N.Y. 1988), claiming that *Texaco* forecloses mandatory withdrawal of the reference because here, as in *Texaco*, there are threshold bankruptcy issues that render "academic" any consideration of non-bankruptcy federal law. But *Texaco* is readily distinguishable. In *Texaco*, the State of Louisiana challenged Texaco's assumption of certain oil and gas leases. The State moved to withdraw the reference, arguing that in the event that the leases were deemed to be assumable, the Natural Gas Policy Act of 1978 (NGPA) should be considered to determine the appropriate cure amounts. The court found, and all parties agreed, that the initial question to be resolved was whether, under Section 365 of the Bankruptcy Code and applicable state law, the leases could be assumed. The possible application of the NGPA arose only if the leases were found to be assumable, and even then the NGPA was only one of a number of possible methods by which to determine the requisite cure amounts. Indeed, even if consideration of the NGPA proved necessary, the parties did not dispute the meaning of the NGPA, just its application to calculate cure amounts. Based on these

- 2 -

factors, the court concluded that consideration of the NGPA was speculative and denied the motion to withdraw.[2]

Here, by contrast, HERA is the sole statutory basis for the superior rights, and the priority, asserted by FHFA in regard to the HERA Priority Claim. Unlike *Texaco*, where the NPGA was one of several methods of calculation if the court reached the issue of cure damages, here consideration of FHFA's rights under HERA is essential to resolving whether the provisions of HERA trump the priority scheme of the Bankruptcy Code. Consideration of HERA is not contingent or speculative. Nor does consideration of Section 507 obviate the need to reach HERA. Analysis of Section 507 cannot answer the question whether Congress' grant to FHFA of rights "superior" to any rights of any party in a bankruptcy entitles FHFA to a priority recovery over other creditors with respect to the HERA Priority Claim. The only way to determine that issue is by interpreting Section 4617(b)(15) of HERA.

In arguing that the Court need not look beyond Section 507, LBHI points to Congress' amendment of Section 507 in the Crime Control Act of 1990 to add subsection (a)(9), which provides a priority recovery to FDIC for claims for defaults under capital maintenance agreements entered into by bank holding companies in support of their wholly-owned federally insured banks. Opp. at 12. LBHI argues that Congress' failure to amend Section 507 also to grant a priority for FDIC's avoidance powers under Section 1821(d)(17) of FIRREA, which

---

[2] LBHI misquotes *In re Texaco* to argue that the motion to withdraw the reference should be denied because "bankruptcy issues dominate." Opp. at 15. The full quote from *In re Texaco* states that withdrawal is mandatory when either "a determination of issues requires significant interpretation of federal laws that congress would have intended to have decided by a district judge rather than a bankruptcy judge," or "where issues arising under non-title 11 laws dominated those arising under title 11." 84 B.R. at 921 (citations omitted). Nowhere does *Texaco* state that withdrawal must be denied if bankruptcy issues dominate, as LBHI claims. In fact, the court states the converse: that mandatory withdrawal is required when *non*-bankruptcy issues dominate.

grants avoidance and superior rights to FDIC that are virtually identical to those granted to FHFA under Section 4617(b)(15), shows that Congress did not intend to give FDIC under FIRREA, and by analogy FHFA under HERA, a priority with respect to its avoidance powers.

LBHI's argument is misguided. There is no basis for inferring from the absence of Congressional action in Section 507 that FHFA's rights under HERA should be limited as LBHI suggests. Congress did not amend Section 507 to add references to the priorities under Section 1821(d)(17) and Section 4617(b)(15) because those statutes represent distinct insolvency schemes by which FDIC and FHFA are independently authorized to resolve their respective regulated entities. FIRREA is a distinct statutory framework established to address federally insured banks in conservatorship or receivership, independent of the Bankruptcy Code, and confers broad rights and powers on FDIC, including the right to avoid obligations incurred and transfers made by third parties with the intent to hinder, delay, or defraud the government, and these rights are expressly superior to the rights of a Chapter 11 trustee or any other party. HERA creates a similar separate statutory scheme to resolve Freddie Mac, including broad avoidance and superior rights and powers to FHFA independent of the Bankruptcy Code. Congress did not amend Section 507 to reference the FDIC's (or FHFA's) statutorily superior rights and powers to avoid fraudulent transfers and obligations incurred because the superiority of those rights is already clearly expressed in Section 1821(d)(17) of FIRREA and Section 4617(b)(15) of HERA, respectively.

When Congress amended Section 507 to add subsection (a)(9), that addition was unrelated to FDIC's rights to address fraudulent acts against the government. Rather, that provision was added to protect FDIC's contractual rights under a defaulted capital maintenance agreement against a failed bank holding company that was a debtor in a bankruptcy proceeding,

08-13555-mg    Doc 42019-9    Filed 01/10/14    Entered 01/10/14 16:40:43    Exhibit I
Pg 10 of 16
Case 9:13-cv-07481-LGS    Document 15    Filed 11/11/13    Page 9 of 15

and not otherwise subject to FDIC's receivership provisions, by providing that FDIC would get a priority recovery in that bankruptcy in respect of its damage claim. And such damage claim was not otherwise accorded superior rights under FIRREA. Therefore, Congress amended Section 507 to give FDIC a priority recovery in the bankruptcy proceeding of a bank holding company on account of any defaulted capital maintenance agreement, and provided in FIRREA Section 1821(d)(17) separate, superior rights to recover in respect of fraudulent acts against the regulated entities under FIRREA. In HERA, Congress granted FHFA the same superior rights and powers to address wrongful conduct against Freddie Mac as it provided to FDIC regarding federally insured banks, but there was no need to amend Section 507 as there is no concept of a third-party capital maintenance agreement or similar executory contract supporting Freddie Mac in the bankruptcy context that requires protection, as required for FDIC.

### B. No Examination of the Plan or Plan Stipulation Is Necessary

LBHI argues that in order to determine whether FHFA is entitled to a priority, a court must first interpret LBHI's Plan, and the Plan Stipulation entered into between the parties. Opp. at 15. Notably, LBHI does not identify any provision of the Plan that must be interpreted in order to reach the statutory construction of HERA, and there is none.

Section 1.127 of the Plan defines a "Priority Non-Tax Claim" as "any Claim . . . entitled to priority in payment under section 507(a) of the Bankruptcy Code *or* 12 U.S.C. § 4617(b)(15)" (emphasis added). Section 4.1(b) of the Plan provides that Priority Non-Tax Claims are entitled to 100 per cent recovery under the Plan.[3] Thus, the Plan is clear: If FHFA has a valid claim

---

[3] Section 4.1 LBHI Class 1 - Priority Non-Tax Claims Against LBHI
. . .
(b) *Distributions*. Except to the extent that the holder of an Allowed Claim in LBHI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBHI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon

under Section 4617(b)(15), it will be entitled to full recovery. The issue is not whether a priority right to recovery under HERA qualifies under Section 507, but whether HERA grants FHFA a separate priority right of recovery. If it does, it is entitled to 100 per cent recovery as a Priority Non-Tax Claim under the Plan. Thus, the sole question raised by the Motion to Classify is just that— whether HERA grants FHFA a separate priority right of recovery. That is a matter requiring substantial and material consideration of HERA, not of the Plan.

LBHI's argument that adjudication of its Motion to Classify requires an interpretation of the Plan Stipulation that precludes withdrawal of the reference is similarly flawed. Prior to Plan confirmation, LBHI and Freddie Mac entered into the Plan Stipulation to resolve Freddie Mac's and FHFA's objections to the Plan. The Plan Stipulation provided for a modification of the Plan to include a separate reference to a claim under Section 4617(b)(15) as one being entitled to treatment as a Priority Non-Tax Claim, as noted above. The Plan Stipulation further provided that the parties broadly reserved their rights, with Freddie Mac and FHFA reserving their rights to assert a priority recovery under HERA, and LBHI reserving its rights to object to the priority and classification of the HERA Priority Claim. LBHI exercised its rights under the Plan Stipulation to object to classification of the HERA Priority Claim by filing its Motion to Classify. So too have Freddie Mac and FHFA exercised their rights, and because the Motion to Classify will require substantial consideration of HERA, withdrawal is mandatory. The parties' reservation of rights does not change this fact. Nor does the reservation of rights act as a forfeiture by Freddie Mac or FHFA of their rights to mandatory withdrawal of the reference. To

---

thereafter as is practicable, *each holder of an Allowed Claim in LBHI Class 1 shall be paid by LBHI in Cash in full.*
Plan §4.1(b) (emphasis added).

the contrary, Freddie Mac and FHFA expressly reserved their rights to object to the jurisdiction of the Bankruptcy Court.

### C. The Bankruptcy Court's Familiarity with Non-Title 11 Laws Is Not a Factor in Adjudicating Mandatory Withdrawal of the Reference

LBHI argues that Section 4617(b)(15) of HERA presents issues of claim priority and classification that "the Bankruptcy Court routinely addresses" and that are resolved by "the plain language of the Bankruptcy Code." Opp. at 16. LBHI's argument presupposes its own conclusion. LBHI is only able to conclude that the Bankruptcy Code "resolves" the priority under HERA if LBHI ignores the "superior rights" language of HERA and assumes that Section 507 trumps HERA. If LBHI is wrong, and the rights "superior to any right of a trustee or any other party . . . under Title 11" grants a priority over other creditors, "the plain language of the Bankruptcy Code" is irrelevant. A court addressing the issues raised in the Motion to Classify must give substantial and material consideration to the language of HERA, and address any potential interplay between HERA and the Bankruptcy Code. Thus, withdrawal is mandatory.

Whether a determination involves traditional bankruptcy issues or a "core" bankruptcy issue is irrelevant to mandatory withdrawal of the reference under Section 157(d). *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 337667 at *2 (S.D.N.Y. Feb. 10, 2006) (mandatory withdrawal does not depend "on whether the statutory interpretation [falls] within the bankruptcy court's core or non-core jurisdiction.") (citations omitted).[4]

LBHI also cites the Bankruptcy Court's observation that HERA is "very closely analogous to bankruptcy law [regarding fraudulent transfers]," and that analysis of HERA would

---

[4] *See also In re Hartley*, 55 B.R. 781, 784-5 (Bankr. N.D. Ohio 1985) ("the mere fact that traditional bankruptcy issues are raised with non-code federal statutes does not permit the bankruptcy court to take jurisdiction in light of § 157(d)").

be based upon the Bankruptcy Code's fraudulent transfer provision. Opp. at 9. A bankruptcy judge's familiarity with non-bankruptcy federal law is not a factor under the mandatory withdrawal prong of Section 157(d). *See Koch Supply & Trading, LP v. Giddens* (*In re MF Global Inc.*), 484 B.R. 18, 22 (S.D.N.Y. 2012).

Frankly, Section 4617(b)(15) is not a restatement or reformulation of Sections 548 and 550 of the Bankruptcy Code. HERA is a separate, stand-alone statute that, as applicable, expressly sets forth Congress' delegation of the powers and privileges it deemed required for resolving conservatorships and receiverships of FHFA regulated entities. Accordingly, HERA is wholly different in purpose, structure, and operation from the Bankruptcy Code and must be read on its own. To that end, Section 4617(b)(15)(A) grants FHFA the right to avoid any obligation incurred by a third party debtor of the regulated entity (here, Freddie Mac), or any transfers made by such debtor that preclude the timely repayment of such obligation, if the obligation was incurred or the transfers made with the intent to hinder, delay, or defraud Freddie Mac or FHFA. And upon the avoidance of such obligation incurred or transfers made, the parties must be returned to the position they were in before the fraud—here, under Section 4617(b)(15)(D), FHFA is entitled to recover on a priority basis the $1.2 billion wrongly taken from Freddie Mac and FHFA, together with applicable interest accrued up to the date of recovery.

Indeed, as noted in the Motion to Withdraw, LBHI's bankruptcy-influenced reading of HERA to the contrary necessarily leads to absurd results never intended by Congress—such as FHFA's right to avoid LBHI's fraudulent incurrence of the August Loans but no right to a priority recovery (or any recovery!) absent subsequent fraudulent transfers to third parties—thereby rendering FHFA's "superior rights" under HERA over all other parties in a bankruptcy meaningless.

Thus, Sections 548 and 550 of the Bankruptcy Code are neither controlling nor dispositive of the interpretation of HERA's Section 4617(b)(15), which operates outside of the Bankruptcy Code and must be interpreted based on its own statutory language, and any alleged similarity to the Bankruptcy Code of the avoidance powers and "superior rights" granted FHFA under Section 4617(d)(15) provides no basis to exempt HERA's consideration from the clear language of 28 U.S.C. § 157(d). If anything, the possibility that a Bankruptcy Court might ignore the critical differences between HERA and the Bankruptcy Code, and treat HERA as identical to the Bankruptcy Code, is further reason why withdrawal of the reference is appropriate and required.

### D. The Motions to Withdraw Cited by LBHI Were All Permissive

LBHI argues there has never been a non-consensual withdrawal of the reference in the LBHI bankruptcy proceeding and cites to six instances in which the district court denied a withdrawal motion. Opp. at 14. LBHI's argument is misleading. None of the six cases cited involved a motion for mandatory withdrawal.[5] Indeed, review of the docket shows that in the only other instance in which a mandatory withdrawal motion was made in the LBHI bankruptcy proceedings, the parties agreed to a consensual withdrawal of the reference. *See* Admin Order, *Lehman Bros. Holdings, Inc. v. U.S.*, No. 10-6200 (RMB) (S.D.N.Y. Nov. 9, 2010), ECF No. 22.

---

[5] *See* Mem. Order at 4, *Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank*, No. 13-3373 (LTS) (S.D.N.Y. Aug. 8, 2013), ECF No. 11 (addressing *Stern v. Marshall* and permissive withdrawal); *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*, 480 B.R. 179, 188 (S.D.N.Y. 2012) (noting that "[t]he parties do not contend that this case presents a matter of mandatory withdrawal under 28 U.S.C. § 157(d). Rather, it presents a matter of permissive withdrawal . . .); Hr'g Tr. 55, *Mich. State Hous. Dev. Auth. v. Lehman Bros. Holdings Inc.*, No. 11-3392 (JGK) (S.D.N.Y. Sept. 14, 2011), ECF No. 18 (addressing permissive withdrawal of the reference); *Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*, 2009 WL 4496051, at *1 (S.D.N.Y. Dec. 3, 2009) (arguing the district court should exercise its discretion to withdraw the reference related to a breach of contract action); Hr'g Tr. 30:15-22, *Wong v. HSBC USA Inc.*, No. 09-6841 (LTS) (S.D.N.Y. Oct. 14, 2009) (addressing permissive withdrawal); Mem. Order at 2, *Lehman Bros. Holdings Inc. v. Ford Global Treasury, Inc.*, No. 12-8201 (RA) (S.D.N.Y. Apr. 8, 2013), ECF No. 7 ("[d]efendant does not appear to allege that withdrawal is mandatory in this case.").

Thus, in the one other case in which resolution of a dispute required significant interpretation of a federal non-bankruptcy statute, the reference was withdrawn and the matter considered by the district court. That same result should apply here.[6]

## CONCLUSION

For the foregoing reasons, FHFA and Freddie Mac respectfully request that the Court grant their motion for withdrawal of the reference to the Bankruptcy Court of LBHI's Motion to Classify the HERA Priority Claim as a senior unsecured claim, and grant such other relief as the Court may deem just and proper.

Dated:  New York, New York
        November 11, 2013

/s/ Michael J. Canning
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

*Attorneys for the Federal Housing Finance Agency as Conservator of the Federal Home Loan Mortgage Corporation*

---

[6] LBHI's requested alternative relief, reference to the Bankruptcy Court for a Report and Recommendation, would not serve judicial efficiency. The case presents significant issues of first impression which, as this Court recognized at the status conference, will be addressed by the district court in any event as the non prevailing party is likely to appeal. Having two courts consider the issues presented in the Motion to Classify is inefficient and will not serve interests of judicial economy.

- 10 -

/s/ Mark S. Landman
Mark S. Landman
LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York  10271
Telephone:  (212) 238-4800
Facsimile:  (212) 238-4848

*Attorneys for the Federal Home Loan Mortgage Corporation*

- 11 -