HEARING DATE AND TIME: January 28, 2014 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Lori R. Fife
Alfredo R. Pérez

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**   :    08-13555 (JMP)
                                                   :
                          Debtors.                 :    (Jointly Administered)
----------------------------------------------------------------x

**SUMMARY OF ARGUMENTS IN SUPPORT OF
MOTION TO CLASSIFY AND ALLOW THE CLAIM FILED BY THE FEDERAL
HOME LOAN MORTGAGE CORPORATION (CLAIM NO. 33568) IN LBHI CLASS 3**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

In accordance with the Court's instructions, Lehman Brothers Holdings Inc.

("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1] files this summary of the

arguments in support of its motion, dated September 13, 2013 [ECF No. 40066] (the

"Classification Motion"), seeking to classify and allow in LBHI Class 3 claim number 33568

(the "Claim"), which was filed by the Federal Home Loan Mortgage Corporation ("Freddie

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Mac") at the direction of the Federal Housing Finance Agency (the "FHFA" or "Conservator" and together with Freddie Mac, "Claimants"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Claimants filed the Claim in the approximate amount of $1.2 billion based upon LBHI's failure to repay two short-term unsecured loans made by Freddie Mac to LBHI in August 2008. Claimants assert that the Claim is entitled to priority status against LBHI pursuant to 12 U.S.C. § 4617 of the Housing and Economic Recovery Act of 2008 ("HERA"), which provides the Conservator with certain avoidance powers.

2. As detailed more fully below, Claimants' assertion of a priority claim is unfounded for each of the following reasons:

   a) Claims based on the Conservator's avoidance powers under HERA are not listed in section 507(a) of title 11 of the United States Code (the "Bankruptcy Code"). Accordingly, the Bankruptcy Code does not grant the Claim priority treatment;

   b) HERA does not grant Claimants an independent statutory right to a priority claim against LBHI, nor does HERA amend, whether expressly or by implication, the priority scheme established by the Bankruptcy Code; and

   c) The avoidance powers granted to the Conservator under HERA do not provide a basis for the Claim, and, therefore, Claimants have nothing more than a non-priority claim based on the non-payment of the unsecured loans. First, even assuming that Claimants were able to avoid allegedly fraudulent transfers made by LBHI to third parties, HERA would grant Claimants a right of recovery only from the third-party transferees, not from LBHI, the alleged transferor. Second, even assuming that Claimants were able to avoid LBHI's obligation to repay the $1.2 billion in unsecured loans, the avoidance of this obligation would render it unenforceable. The avoidance would not grant Claimants a recovery right against LBHI. Third, Claimants cannot avoid and, therefore, cannot recover the initial $1.2 billion transfer to LBHI because Claimants do not allege that employees of Freddie Mac made such transfer with fraudulent intent.

Accordingly, the Plan Administrator requests that the Court report and recommend:

(i) classifying and allowing the Claim as a non-priority claim in LBHI Class 3 pursuant to the

Plan, sections 502, 1122(a), and 1142(b) of the Bankruptcy Code, and Rule 3013 of the Federal Rules of Bankruptcy Procedure; and (ii) releasing the Priority Reserve (as defined below).

3. Unless the relief requested herein is granted, LBHI will continue to be required to maintain, on an interim basis, a reserve of over $1.2 billion in cash on account of the Claim (the "Priority Reserve"), pursuant to the Plan and a stipulation with Claimants (the "Plan Stipulation"). The Priority Reserve is prejudicial to the thousands of creditors holding allowed claims against LBHI. Indeed, these creditors are being deprived of their *pro rata* share of the hundreds of millions of dollars that would be made available for distribution upon proper classification of the Claim.

## BACKGROUND[2]

4. Freddie Mac had been making significant overnight and short-term loans to LBHI since February 2005. (*See* Pérez Declaration at Ex. 1, p. 8 of Ex. G.) The monthly loans that were outstanding on September 15, 2009 – *i.e.*, the day LBHI commenced its bankruptcy case (the "Commencement Date") – were made on August 19th and 20th in the amounts of $450,000,000 and $750,000,000, respectively (together, the "Unsecured Loans"). (*Id.* at Ex. 1, p. 9 of Ex. G.) The Unsecured Loans were due to be repaid at 9:30 a.m. on September 15, 2008. (*See id.*) Because LBHI commenced its bankruptcy case at approximately 2:00 a.m. on the morning of September 15, 2008, the Unsecured Loans were not repaid and by law could not have been repaid.

---

[2] A summary of the procedural history of this litigation is provided in the Declaration of Alfredo R. Pérez (the "Pérez Declaration"), dated January 10, 2014. The orders entered by the District Court for the Southern District of New York (the "District Court") in respect of this litigation are attached as exhibits to the Pérez Declaration, as are certain documents filed by LBHI and Claimants with the District Court.

3

5.  In their proof of claim, Claimants reserved the right to assert priority treatment for the Claim based on section 4617(b)(15) of HERA.  Claimants now assert that HERA converts the Claim from a non-priority claim into a priority claim because Freddie Mac will establish that: (i) LBHI fraudulently incurred the Unsecured Loans, and/or (ii) LBHI made transfers to certain third parties with the intent to hinder or delay the repayment of the Unsecured Loans.  (*See* Claimants' Objection to the Classification Motion at ¶¶ 4-6, *In re Lehman Bros. Holdings Inc.*, No. 08-13555, (Bankr. S.D.N.Y. Oct. 17, 2013), ECF No. 40550 (the "Objection")).

6.  Claimants have not commenced an action to avoid any transfers or obligations related to the origination or non-payment of the Unsecured Loans.  Moreover, Claimants have not even provided LBHI with any evidence to support their contention that LBHI made transfers or incurred obligations in respect of the Unsecured Loans with the intent to hinder, delay, or defraud Freddie Mac.  But even assuming that Claimants were able to establish that LBHI incurred obligations or made transfers with the requisite fraudulent intent – which Claimants cannot do – the Claim is *not* entitled to priority for the reasons discussed below.

## SUMMARY OF ARGUMENTS

### A.  The Bankruptcy Code Does Not Grant Freddie Mac A Priority Claim

7.  In order for a claim to be entitled to priority status, it must be listed in section 507(a) of the Bankruptcy Code, which provides an exhaustive list of the types of claims that are afforded priority status.  Since the enactment of section 507 of the Bankruptcy Code, no court has ever granted priority status to a claim unless such claim was expressly listed in section 507(a).  Claimants themselves cannot cite a single case in which a claim was granted priority status other than pursuant to the priority scheme of the Bankruptcy Code.  (*See* Hr'g Tr. at 28:12-17, *In re Lehman Bros. Holdings Inc.*, No. 08-13555, (Bankr. S.D.N.Y. Oct. 24, 2013).)

8.       It is undisputed that claims based on the FHFA's avoidance powers are not listed in section 507(a). On this basis alone, the Claim must be classified as a non-priority claim. This result is mandated by Supreme Court and Second Circuit jurisprudence, which requires courts to "narrowly construe" statutory priorities. *See Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006); *Nathanson v. NLRB*, 344 U.S. 25, 29 (1952); *Trs. of Amalgamated Ins. Fund. v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986).

### B.       HERA Does Not Grant Freddie Mac A Priority Claim

9.       Claimants have argued that they need not rely on section 507(a) to assert a priority claim against LBHI because HERA itself grants Claimants an independent right to a priority claim. Even if Claimants were able to overcome both the plain language of section 507(a) and the Supreme Court and Second Circuit jurisprudence cited above, nothing in HERA grants Claimants an independent right to a priority claim.

10.      Section 4617(b)(15) of HERA, which is titled "fraudulent transfers," is an avoidance action statute that has nothing to do with the priority of the FHFA's claims in a bankruptcy case. Although subparagraph 4617(b)(15)(D) grants the FHFA certain "superior" rights, the FHFA previously conceded in the *Residential Capital* case that its "superior" rights relate to its ability to recover the proceeds of avoidance actions, notwithstanding the competing claims of other parties to such proceeds. As stated *by the FHFA*:

> . . . [HERA grants the FHFA] first priority, ahead of all stakeholders, to recoveries of certain estate avoidance actions preserved under the Plan.
> . . .
> . . . To the extent the Preserved Avoidance Actions constitute actions to avoid actual fraudulent conveyances made by the Subject Debtors, FHFA is entitled to priority recovery therefrom.
> . . .
> . . . even if the Debtors succeed in subordinating FHFA's Proofs of Claim, FHFA nonetheless is entitled to first recoveries, ahead of all

5



> other stakeholders, from Preserved Avoidance Actions covered by
> . . . HERA.

Objection of the FHFA to Approval of Proposed Disclosure Statement at ¶¶ 15-24, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 13, 2013), ECF No. 4587.

11.     As illustrated by the foregoing excerpt, having a "priority" right to recover proceeds of an avoidance action is vastly different than having a "priority claim" against a debtor in a chapter 11 case. The FHFA recognized this distinction when it stated in *Residential Capital* that "even if the Debtors succeed in *subordinating* FHFA's Proofs of Claim, FHFA nonetheless is entitled to first recoveries . . . from Preserved Avoidance Actions." *Id*. at ¶ 24 (emphasis added). In other words, the FHFA recognized that its bankruptcy claims in *Residential Capital* might be subordinated – *i.e.*, might lack priority under the Bankruptcy Code – and yet the Conservator would still retain certain "superior" rights under HERA. Here, as in *Residential Capital*, HERA does not require Freddie Mac's claim to be afforded priority status. Rather, HERA grants Claimants certain "superior" rights to the proceeds of avoidance actions, notwithstanding other parties' competing claims to such proceeds. (*See* LBHI's Reply in Support of Classification Motion at ¶¶ 14-16, *In re Lehman Bros. Holdings Inc.*, No. 08-13555, (Bankr. S.D.N.Y. Oct. 22, 2013), ECF No. 40630 (the "Reply").)

12.     Reading subparagraph 4617(b)(15)(D) of HERA as granting Freddie Mac a priority claim would not only run counter to HERA's express terms and the FHFA's prior interpretation of the statute, but it would create a new category of priority bankruptcy claims that Congress never intended to create. Historically, when Congress wanted to grant priority treatment to new categories of claims, it did so explicitly by amending section 507(a). For example, Congress amended section 507(a) to grant the Federal Deposit Insurance Corporation (the "FDIC") a priority claim based on capital maintenance commitments. *See* 11 U.S.C. §

6

507(a)(9).  Significantly, Congress granted the FDIC this priority as part of the same legislation that provided the FDIC conservator with avoidance powers identical to those granted to the FHFA in HERA.  *See* Comprehensive Crime Control Act of 1990, H.R. Rep. No. 681(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6584-90.  Had Congress wanted to grant the FDIC conservator a priority claim in respect of its avoidance powers, it would have amended section 507(a), as it did for claims based on capital maintenance commitments.  Congress chose not to do so.  Similarly, had Congress wanted to grant the FHFA Conservator a priority claim, it knew how to amend section 507(a) to accomplish such a result.  Again, Congress chose not to do so.  (*See* Reply at ¶ 12-13.)

13.  The fact that Congress never intended for HERA to grant the FHFA a priority claim against a bankruptcy estate is further evidenced by posing the following question: if HERA were to grant the FHFA a priority claim, where would such claim fall within the waterfall of priority claims established by section 507(a) of the Bankruptcy Code?  Section 507(a) of the Bankruptcy Code lists a waterfall of ten types of priority claims in order of their priority.  11 U.S.C. § 507(a).  For example, administrative expense claims have third-highest priority, whereas certain tax claims, including those of the Internal Revenue Service (the "IRS"), have eighth-highest priority.  *Id.*  Subparagraph 4617(b)(15)(D) of HERA states that "the rights under this paragraph of the conservator . . . shall be superior to *any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11*."  12 U.S.C. § 4617(b)(15)(D) (emphasis added).  If this section grants the Conservator a priority claim against a bankruptcy estate as suggested by Claimants, then such claim must be superior to "any other party . . . under Title 11," which would include the administrative expense claims of a debtor's professionals.  Simultaneously, under Claimants' interpretation of HERA, the same

7

HERA-based claim must not be superior to the claims of "any party which is a Federal agency," such as the claims of the IRS.[3]  In other words, if this Court were to adopt Claimants' reading of HERA and hold that HERA grants the FHFA a priority claim, such claim would somehow have to be senior to administrative expense claims, (which are granted third-highest priority), but not senior to certain claims of the IRS, (which are granted eighth-highest priority).  Such an absurd and impossible result was clearly not intended by Congress when it enacted HERA.  (*See* Pérez Declaration at Ex. F, p. 11.)

14.     As the foregoing paragraph illustrates, by asserting a priority claim under HERA, Claimants in effect contend that Congress implicitly amended section 507(a) of the Bankruptcy Code when it enacted HERA.  Because Claimants have failed to show that Congress intended to amend the carefully constructed priority scheme established by section 507(a), binding precedent requires this Court to classify the Claim as an unsecured, non-priority claim.  *See U.S. v. Pacelli*, 491 F.2d 1108, 1113 (2d Cir. 1974) ("It is well settled that repeals (or amendments) by implication are not favored and will be given effect only upon a clear showing of Congressional intent . . . ."); *see also FDIC v. Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125, 132-33 (2d Cir. 1992) ("It is also presumed that Congress legislates with knowledge of former related statutes, and will expressly designate the provisions whose application it wishes to suspend . . . .").

---

[3] The IRS is a federal agency.  *See Greene v. IRS*, 348 Fed. Appx. 625, 626 (2d Cir. 2009) ("[T]he district court committed no clear error in finding that the IRS is a federal agency.").

C.  **The Avoidance Powers Granted To The Conservator Under HERA
Do Not Provide A Basis For The Claim, And, As Such, Claimants Have
Nothing More Than A Non-Priority Claim Based On The Unsecured Loans**

15.    Freddie Mac contends that HERA grants it a priority claim because the following transactions are avoidable by the Conservator: (i) LBHI's alleged transfer of funds to various third-parties immediately priority to the Commencement Date; and (ii) LBHI's incurrence of the obligation to repay the Unsecured Loans.  (*See* Objection at ¶¶ 4-6.)  As explained below, even if the Conservator could avoid such transfers and obligations, HERA would not grant Claimants a right of recovery – *i.e.*, a claim – against LBHI.  (*See generally* Reply at ¶¶ 20-38.)  Because Claimants lack a claim against LBHI under HERA, Claimants have nothing more than a mere unsecured, non-priority claim arising from the non-payment of the Unsecured Loans.[4]

16.    With respect to LBHI's allegedly fraudulent transfers to third parties, even assuming that Freddie Mac were able to avoid a transfer made by LBHI, the Conservator would not have a right of recovery from LBHI.  Under its plain and unambiguous terms, HERA grants the Conservator a right of recovery only from a "transferee," not from an alleged transferor, such as LBHI.  (*See* Classification Motion at ¶ 24; Reply at ¶ 38.)  Accordingly, HERA does not grant Freddie Mac a claim against LBHI in respect of LBHI's allegedly fraudulent transfers to third parties.

17.    With respect to LBHI's allegedly fraudulent incurrence of the obligation to repay the Unsecured Loans, nothing in HERA grants the Conservator a right of recovery in respect of

---

[4] Claimants argue that "pursuant to the Plan Stipulation, LBHI acknowledged Freddie Mac's and FHFA's right to a priority recovery if the HERA Priority Claim is determined to be valid under HERA by amending the Plan to specifically include such claim in the definition of 'Priority Non-Tax Claim,' which claims are entitled to a 100% recovery under the Plan."  (Objection at ¶ 39.)  Claimants' reading of the Plan Stipulation conveniently ignores a page-long reservation of rights section wherein the parties broadly reserved all their rights with respect to the Claim, including LBHI's right to challenge the asserted classification and priority of the Claim for all purposes, including in connection with any distributions under the Plan.  (*See* Reply at ¶ 17-19.)

9

avoided obligations. (*See* Reply at ¶¶ 31, 35-36.) Rather, HERA expressly limits the Conservator's recovery rights to situations in which "*a transfer*" is avoided. 12 U.S.C. § 4617(b)(15)(B) (emphasis added). This interpretation of HERA is both mandated by HERA's express terms and consistent with courts' interpretations of sections 548 and 550 of the Bankruptcy Code. (*See* Reply at ¶¶ 24-32, 35-36 (citing *In re Asia Global Crossing Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005); *SIPC v. Stratton Oakmont, Inc.* 234 B.R. 293, 312 (Bankr. S.D.N.Y. 1999)).) Because HERA does not grant Freddie Mac the right to recover property after avoiding an obligation, HERA cannot grant Freddie Mac a claim against LBHI in respect of LBHI's allegedly fraudulent incurrence of the obligation to repay the Unsecured Loans.

18. Finally, to the extent Claimants argue that they should be entitled to recover the initial transfer of $1.2 billion to LBHI, under the plain and unambiguous terms of HERA, the Conservator has the right to avoid this transfer only if such transfer was made by an "entity-affiliated party" – *i.e.*, an officer, director, or employee *of Freddie Mac* – with the intent to hinder, delay, or defraud Freddie Mac or the Conservator. (*See* Reply at ¶¶ 33-34.) Here, Claimants do not allege that any "entity-affiliated party" made the transfer of $1.2 billion in funds to LBHI with the actual "intent to hinder, delay, or defraud" Freddie Mac. (*See id.*) Accordingly, the Conservator cannot avoid and, therefore, cannot recover the initial transfer of funds. (*See id.*) Again, HERA does not grant Claimants a claim against LBHI.

## CONCLUSION

WHEREFORE, for the reasons discussed above and in the Classification Motion and Reply, the Plan Administrator respectfully requests that the Court report and recommend entering the Proposed Order attached to the Classification Motion.

Dated: January 10, 2014
      New York, New York

                                    /s/ Alfredo R. Pérez
                                    David J. Lender
                                    Lori R. Fife
                                    Alfredo R. Pérez

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Lehman Brothers Holdings Inc.
                                     and Certain of Its Affiliates

US_ACTIVE:\44398022\12\58399.0011